# **EXHIBIT A**

February 7, 2002

Puerto Rico Highway and Transportation Authority

$700,855,000 Puerto Rico Highway and Transportation Authority
Transportation Revenue Bonds (Series D)

and

$284,405,000 Puerto Rico Highway and Transportation Authority
Transportation Revenue Refunding Bonds (Series E)

and

$118,615,000 Puerto Rico Highway and Transportation Authority
Transportation Revenue Refunding Bonds (Series F)

## TABLE OF CONTENTS

|  | ITEM NO. |
|---|---|
| Certificate of an Assistant Secretary of State concerning the Secretary of Transportation and Public Works. | 1. |
| Certificate of Secretary of the Authority with respect to certain officials of the Authority and their terms of office. | 2. |
| Certified copy of Act No. 74, et al. of the Legislature of Puerto Rico. | 3. |
| Certified copy of the By-Laws of the Authority. | 4. |
| Certified copy of Resolution No. 98-06, as amended. | 5. |
| Certified copy of Resolution No. 68-18, as amended. | 6. |
| Certified copy of Resolution No. 2002-04, passed and adopted by the Secretary of Transportation and Public Works, authorizing, among other things, the issuance and details of $700,855,000 Puerto Rico Highway and Transportation Authority Transportation Revenue Bonds (Series D), $284,405,000 Puerto Rico Highway and Transportation Authority Transportation Revenue Refunding Bonds (Series E) and $118,615,000 Puerto Rico Highway and Transportation Authority Transportation Revenue Refunding Bonds (Series F) (collectively, the "Bonds"). | 7. |
| Certified copy of Resolution 7736, adopted by the Board of Directors of Government Development Bank for Puerto Rico, approving the details of the Bonds. | 8. |

380874.8 024312 CLD

| | ITEM NO. |
|---|---|
| Officers and Seal Certificate of Government Development Bank for Puerto Rico. | 9. |
| Certified copy of Preliminary Official Statement. | 10. |
| Certified copy of Official Statement. | 11. |
| Certified copy of the Contract of Purchase. | 12. |
| Certified copy of the Forward Delivery Bond Purchase Agreement. | 13. |
| Certified copy of Continuing Disclosure Agreement. | 14. |
| Executed copies of Reserve Fund Investment  Agreement and guarantee thereof, together with opinions of counsel. | 15. |
| Certificate of Secretary of Transportation and Public Works as to the accuracy of the Official Statement. | 16. |
| Certificate of Secretary of the Treasury of the Commonwealth of Puerto Rico, pursuant to Section 5(c)(6) of the Contract of Purchase and Section 12(a)(xiii) of the Forward Delivery Bond Purchase Agreement. | 17. |
| Certificate of the Executive Vice President of Government Development Bank for Puerto Rico, pursuant to Section 5(c)(7) of the Contract of Purchase. | 18. |
| Certificate of Executive Director of the Authority, pursuant to Section 208(c) of Resolution 98-06. | 19. |
| Reserved. | 20. |
| Opinion of counsel to the Authority, pursuant to Sections 208(d) and 209(c) of Resolution 98-06. | 21. |
| Certificate of Executive Director of the Authority as to Financing Expenses. | 22. |
| Transmittal letter of Executive Director. | 23. |
| Certification of General Counsel to the Authority with respect to no adverse legislation. | 24. |
| Opinions of Hawkins, Delafield & Wood approving the Bonds. | 25(a). |
| Opinion of Hawkins, Delafield & Wood  pursuant to Sections 12(a)(iv) and 12(a)(v) of the Forward Delivery Bond Purchase Agreement. | 25(b). |
| Reliance Letters of Hawkins, Delafield & Wood, addressed to the Fiscal Agent, to Financial Security Assurance Inc and Salomon Smith Barney Inc. | 25(c). |
| Supplemental opinions of Hawkins, Delafield & Wood, pursuant to Section 5(c)(1)(C) of the Contract of Purchase. | 26. |

380874.8 024312 CLD

CONFIDENTIAL                                      HTA_STAY0045395

| | ITEM NO. |
|---|---|
| Opinions of general counsel to the Authority, pursuant to Section 5(c)(2) of the Contract of Purchase and Section 12(a)(vi) of the Forward Delivery Bond Purchase Agreement. | 27. |
| Opinion of Pietrantoni Méndez & Alvarez, pursuant to Section 5(c)(3) of the Contract of Purchase and Section 12(a)(viii) of the Forward Delivery Agreement. | 28. |
| Certificate of Secretary of Transportation and Public Works and Secretary of the Authority, pursuant to Section 5(c)(4) of the Contract of Purchase. | 29. |
| Certificate of Secretary of Transportation and Public Works and the Deputy Executive Director for Administration and Finance of the Authority, pursuant to Section 5(c)(5) of the Contract of Purchase. | 30. |
| Certificate of Executive Director of the Authority and the Deputy Executive Director for Administration and Finance of the Authority, pursuant to Section 12(a)(vii) of the Forward Delivery Bond Purchase Agreement. | 31. |
| Signed Letter of Roy Jorgensen Associates, Inc. (the "Traffic Engineers"), pursuant to Section 5(c)(10) of the Contract of Purchase. | 32. |
| Signed Letter of the Traffic Engineers, pursuant to Section 5(c)(11) of the Contract of Purchase. | 33. |
| Letters of Ernst & Young, LLP, pursuant to Sections 5(c)(12) and 5(c)(14) of the Contract of Purchase and Section 12(a)(x) of the Forward Delivery Bond Purchase Agreement. | 34(a). |
| Letters of Deloitte & Touche, LLP, pursuant to Section 12(a)(xii) of the Forward Delivery Bond Purchase Agreement. | 34(b). |
| Verification report of Causey Demgen & Moore Inc. | 35. |
| Tax Certificate. | 36. |
| Form 8038-G — Information Return for Tax Exempt Government Bond Issues. | 37. |
| Signature certificate. | 38. |
| Incumbency certificate of Fiscal Agent. | 39. |
| Certificate of Authentication as to the Bonds. | 40. |
| Fiscal Agent's Certificate of Delivery and Payment. | 41. |
| Delivery Instructions of Underwriters as to the Bonds. | 42. |
| Certificate Concerning Payment of Notes. | 43. |
| Specimen Bonds. | 44. |

3

380874.8 024312 CLD

|  | ITEM NO. |
|---|---|
| Escrow Deposit Agreements for Series E (MBIA and Non-MBIA) and Escrow Reinvestment Agreements (MBIA and Non-MBIA). | 45. |
| Certificate of an Assistant Secretary of State of the Commonwealth of Puerto Rico, as to rules relating to the acceptance of collateral securities to guarantee public funds. | 46. |
| Preliminary Blue Sky Survey. | 47. |
| Agreement Among Underwriters. | 48. |
| Ratings Services Letters, pursuant to Section 5(c)(13) of the Contract Purchase and Section 12(a)(ix) of the Forward Delivery Agreement. | 49. |
| Reserved. | 50. |
| Certificate of Representative as to Filing of Official Statement With Nationally Recognized Municipal Securities Information Repositories And the MSRB. | 51. |
| Opinions of General Counsel of the Authority, counsel to the Fiscal Agent and counsel to the Provider  required by Escrow Reinvestment Agreements. | 52. |
| Authority's DTC Blanket Letter of Representations. | 53. |
| Reserved. | 54. |
| Letter from the Authority to the Fiscal Agent concerning the performance of its duties under the investment agreements. | 55. |
| Opinions of Gould & Wilkie LLP, counsel to Fiscal Agent, as to Escrow Deposit Agreements. | 56. |
| Security Agreement between the Authority and the Fiscal Agent, as of closing date, along with a copy of the UCC-1 filing. | 57. |
| **Bond Insurance** | |
| Financial guaranty insurance policy issued by Financial Security Assurance Inc., pursuant to Section 5(c)(16) of the Contract of Purchase. | 58. |
| Financial Security Assurance Inc. Certificate. | 59. |
| Opinion of counsel to Financial Security Assurance Inc. | 60. |
| Letters from Moody's Investors Service, Inc. rating insured bonds. | 61. |
| Letters from Standard & Poor's Ratings Services rating insured bonds. | 62. |

380874.8 024312 CLD

CONFIDENTIAL

HTA_STAY0045397

**<u>Tab 7</u>**

(7)

### CERTIFICATE OF SECRETARY OF THE AUTHORITY
### AS TO RESOLUTION 2002-04

I, Hector E. Pabón Vega, Secretary of Puerto Rico Highway and Transportation Authority (the "Authority") , DO HEREBY CERTIFY that attached hereto is a true and correct copy of Resolution No. 2002-04 fixing the details and covering other matters relating to the issuance of $700,855,000 Puerto Rico Highway and Transportation Authority Transportation Revenue Bonds (Series D), $284,405,000 Puerto Rico Highway and Transportation Authority Transportation Revenue Refunding Bonds (Series E) and $118,615,000 Puerto Rico Highway and Transportation Authority Transportation Revenue Refunding Bonds (Series F) (collectively, the "Bonds") of the Authority, which was adopted by the Secretary of Transportation and Public Works on January 25, 2002. I DO FURTHER CERTIFY that said Resolution No. 2002-04 and Resolution No. 98-06, adopted by the Secretary of Transportation and Public Works on February 26, 1998, as amended, are the only resolutions of the Secretary of Transportation and Public Works relating to the Bonds and that said resolutions have not since January 25, 2002 been in any way amended, annulled, rescinded or revoked and the same are still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the Authority this 7th day of February, 2002.

(SEAL)

Secretary
Puerto Rico Highway
and Transportation Authority

HTA_STAY0044419

[Authority Resolution]

RESOLUTION NO. 2002-04

A RESOLUTION AUTHORIZING THE ISSUANCE OF
$700,855,000 PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY TRANSPORTATION
REVENUE BONDS (SERIES D) PURSUANT TO SECTION 208
OF RESOLUTION NO. 98-06, ADOPTED BY SAID
AUTHORITY ON FEBRUARY 26, 1998, AS AMENDED, AND
$284,405,000 PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY TRANSPORTATION
REVENUE REFUNDING BONDS (SERIES E) AND
$118,615,000 PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY TRANSPORTATION
REVENUE REFUNDING BONDS (SERIES F) PURSUANT TO
SECTION 209 OF SAID RESOLUTION NO. 98-06, FIXING THE
DETAILS OF EACH SERIES OF BONDS, DESCRIBING THE
NOTES TO BE PAID AND THE TRANSPORTATION
FACILITIES TO BE FINANCED WITH THE PROCEEDS OF
SAID SERIES D BONDS AND THE HIGHWAY REVENUE
BONDS AND TRANSPORTATION REVENUE BONDS TO BE
REFUNDED BY SAID SERIES E BONDS AND SAID SERIES
F BONDS, ESTABLISHING THE REDEMPTION PROVISIONS
FOR SAID BONDS, AWARDING SAID BONDS,
AUTHORIZING THE EXECUTION AND DIRECTING THE
AUTHENTICATION AND DELIVERY OF SAID BONDS,
APPROVING THE FORM AND RATIFYING THE
DISTRIBUTION BY THE UNDERWRITERS OF A
PRELIMINARY OFFICIAL STATEMENT, APPROVING THE
FORM OF THE OFFICIAL STATEMENT RELATING TO SAID
BONDS AND AUTHORIZING THE EXECUTIVE DIRECTOR
TO SIGN THE OFFICIAL STATEMENT, AUTHORIZING THE
EXECUTION AND DELIVERY OF CONTRACTS OF
PURCHASE WITH SAID UNDERWRITERS, ONE OR MORE
CONTINUING DISCLOSURE AGREEMENTS, A MUNICIPAL
BOND INSURANCE COMMITMENT AND INVESTMENT
AGREEMENTS RELATING RESPECTIVELY TO MONEYS ON
DEPOSIT IN THE ESCROW FUNDS AND THE SENIOR BOND
RESERVE ACCOUNT, MAKING A TAX COVENANT,
AUTHORIZING OTHER NECESSARY ACTION AND
PROVIDING FOR THE EFFECTIVE DATE OF THIS
RESOLUTION.

381381.6 024312 RES

CONFIDENTIAL

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Section 1.  Issuance of Series D Bonds | 2 |
| Section 2.  Transportation Facilities. | 3 |
| Section 3.  Refunding Findings and Determinations. | 4 |
| Section 4.  Issuance of Series E Bonds and Series F Bonds | 5 |
| Section 5.  Redemption | 6 |
| Section 6.  Execution and Form of Bonds | 7 |
| Section 7.  Preliminary Official Statement | 7 |
| Section 8.  Official Statement | 7 |
| Section 9.  Contracts of Purchase | 7 |
| Section 10.  Principal Underwriters | 8 |
| Section 11.  Delivery of Bonds | 8 |
| Section 12.  Application of Proceeds | 8 |
| Section 13.  Additional Contracts | 9 |
| Section 14.  Legal Opinion | 10 |
| Section 15.  Tax Covenant | 10 |
| Section 16.  Continuing Disclosure | 10 |
| Section 17.  Municipal Bond Insurance | 12 |
| Section 18.  Further Authorization | 12 |
| Section 19.  Severability of Invalid Provisions | 13 |
| Section 20.  Amendments and Supplements | 13 |
| Section 21.  Effective Date | 13 |
| APPENDIX A—BOND FORMS | A-1 |
| APPENDIX B—CERTAIN PROVISIONS RELATING TO FSA | B-1 |
| APPENDIX C—QUALIFIED INVESTMENTS | C-1 |

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044421

WHEREAS, Act No. 74 of the Legislature of Puerto Rico, approved June 23, 1965, as amended (hereinafter sometimes called the "Enabling Act"), created Puerto Rico Highways and Transportation Authority (formerly Puerto Rico Highway Authority and hereinafter sometimes called the "Authority") as a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") for the purpose of continuing the government program of providing highways to facilitate the movement of vehicular traffic, relieve hazards and handicaps on the congested roads and highways of the Commonwealth and to meet the increasing demand for additional traffic and transportation facilities resulting from the continuing economic development of the Commonwealth; and

WHEREAS, by Reorganization Plan No. 6 of 1971 submitted by the Governor to the Legislature of Puerto Rico pursuant to the Reorganization Act of 1968 (Act No. 113 of the Legislature of Puerto Rico, approved June 21, 1968) and approved by the Legislature, the Department of Public Works of the Commonwealth was reorganized as a central organization in charge of the transportation program of the Commonwealth and was redesignated the Department of Transportation and Public Works; and

WHEREAS, by said Reorganization Plan No. 6, the Authority was attached to the Department of Transportation and Public Works effective January 2, 1973, and all of the powers and duties of said Authority were transferred from the Board of Directors of the Authority to the Secretary of Transportation and Public Works; and

WHEREAS, under the authority of the Enabling Act, the Authority on February 26, 1998, adopted Resolution No. 98-06 (said Resolution No. 98-06, as amended and supplemented, being hereinafter called the "Bond Resolution") authorizing the issuance of transportation revenue bonds for the purpose of providing funds for use by the Authority for continuing the Government program of providing highways and other transportation facilities for the movement of vehicular and other traffic, and pursuant to the provisions of the Bond Resolution the Authority has heretofore issued the following amounts of bonds outstanding (the "Series A Bonds", "Series 1998 Bonds", "Series B Bonds" and "Series C Bonds" and, collectively, the "Transportation Revenue Bonds"), in the indicated amounts:

| Issue | Date | Amount Outstanding (as of 7/1/01) |
|---|---|---|
| Series A (Senior) | March 19, 1998 | $1,081,427,049 |
| Series 1998 (Subordinate) | August 6, 1998 | $75,050,000 |
| Series B (Senior) | June 8, 2000 | $558,460,000 |
| Series C (Senior) | June 8, 2000 | $14,880,000 |

WHEREAS, for the purpose of providing funds to finance the cost of the highway and mass transit construction programs of the Authority, the Authority has heretofore issued its notes pursuant to a line of credit with Government Development Bank for Puerto Rico (said notes and any additional notes issued under said line of credit prior to the issuance of the Bonds hereinafter

381381.6 024312 RES

mentioned being hereinafter called the "Outstanding Notes") to Government Development Bank for Puerto Rico ("Development Bank") and such notes are now outstanding and unpaid; and

WHEREAS, under authority of the Enabling Act, the Authority has heretofore issued its Highway Revenue Bonds (the "Highway Revenue Bonds") under authority of its Resolution No. 68-18 adopted by the Authority on June 13, 1968, as amended and supplemented; now, therefore,

I, JOSE M. IZQUIERDO ENCARNACIÓN, Secretary of Transportation and Public Works, DO HEREBY DETERMINE AND RESOLVE, as follows:

Section 1. <u>Issuance of Series D Bonds</u>. For the purpose of providing funds to pay the costs of Transportation Facilities (as defined in the Bond Resolution), including the payment of a portion of the Outstanding Notes, bonds of the Authority in the aggregate principal amount of Seven Hundred Million Eight Hundred Fifty-Five Thousand Dollars ($700,855,000) are hereby authorized to be issued pursuant to the provisions of Section 208 of the Bond Resolution. Said bonds shall be designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds (Series D)" (hereinafter sometimes called the "Series D Bonds"), shall be dated their date of delivery, shall be in the denominations of $5,000 and any multiple thereof, shall be numbered from RD-1 upwards, shall bear interest from their date until their payment at the rates hereinafter provided, payable semi-annually on January 1 and July 1 of each year commencing July 1, 2002, and shall be stated to mature, subject to the right of prior redemption, as follows:

Said Bonds shall be Term Bonds and stated to mature and bearing the interest rates as follows: $84,990,000 principal amount of said Term Bonds shall be stated to mature on the 1st day of July, 2027 and shall bear interest at the rate of 5.00% per annum; $196,320,000 principal amount of said Term Bonds shall be stated to mature on the 1st day of July, 2032 and shall bear interest at the rate of 5.00% per annum; $142,665,000 principal amount of said Term Bonds shall be stated to mature on the 1st day of July, 2036 and shall bear interest at the rate of 5.375% per annum; $129,890,000 principal amount of said Term Bonds shall be stated to mature on the 1st day of July, 2038 and shall bear interest at the rate of 5.25% per annum; $146,990,000 principal amount of said Term Bonds shall be stated to mature on the 1st day of July, 2041 and shall bear interest at the rate of 5.75% per annum.

The Amortization Requirements (as defined in the Bond Resolution) for said Term Bonds maturing July 1, 2027 shall be the following amounts in the following fiscal years, respectively:

| Fiscal Year Ending June 30 | Amount |
|---|---|
| 2024 | $ 9,140,000 |
| 2025 | 18,520,000 |
| 2026 | 19,445,000 |
| 2027 | 37,885,000 |

The Amortization Requirements for said Term Bonds maturing July 1, 2032 shall be the following amounts in the following fiscal years, respectively:

2

CONFIDENTIAL

| Fiscal Year Ending June 30 | Amount |
|---|---|
| 2028 | $39,780,000 |
| 2029 | 41,765,000 |
| 2030 | 43,860,000 |
| 2031 | 46,050,000 |
| 2032 | 24,865,000 |

The Amortization Requirements for said Term Bonds maturing July 1, 2036 shall be the following amounts in the following fiscal years, respectively:

| Fiscal Year Ending June 30 | Amount |
|---|---|
| 2033 | $26,105,000 |
| 2034 | 27,510,000 |
| 2035 | 28,990,000 |
| 2036 | 60,060,000 |

The Amortization Requirements for said Term Bonds maturing July 1, 2038 shall be the following amounts in the following fiscal years, respectively:

| Fiscal Year Ending June 30 | Amount |
|---|---|
| 2037 | $63,285,000 |
| 2038 | 66,605,000 |

The Amortization Requirements for said Term Bonds maturing July 1, 2041 shall be the following amounts in the following fiscal years, respectively:

| Fiscal Year Ending June 30 | Amount |
|---|---|
| 2039 | $70,110,000 |
| 2040 | 37,365,000 |
| 2041 | 39,515,000 |

The Series D Bonds maturing July 1 of the years 2027 and 2032 (collectively, the "Series D Insured Bonds") are insured by Financial Security Assurance Inc. ("FSA" or the "Bond Insurer").

Section 2. <u>Transportation Facilities</u>. The Transportation Facilities which are to be financed in part by the Series D Bonds are hereby designated as the "Transportation Facilities" under the Bond Resolution. To the extent determined by the Secretary of Transportation and Public Works or the Executive Director, up to the outstanding principal amount of the Outstanding Notes shall be paid from proceeds of the Series D Bonds.

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044424

Section 3.   <u>Refunding Findings and Determinations</u>.   I hereby make the following findings and determinations:

A.   The Authority has heretofore issued its serial Highway Revenue Bonds (Series 1992 V), maturing July 1, 2004, July 1, 2005 and July 1, 2008 and bearing interest at the rate of 6.375% per annum (the "HRB 2004 Bonds", "HRB 2005 Bonds" and "HRB 2008 Bonds").

B.   The Authority has heretofore issued its term Highway Revenue Bonds (Series 1992V), maturing July 1, 2007 and bearing interest at the rate of 6.375% per annum (the "HRB 2007 Bonds").

C.   The Authority has heretofore issued its term Highway Revenue Bonds (Series 1992V), maturing July 1, 2012 and bearing interest at the rate of 6.625% per annum (the "HRB 2012 Bonds").

D.   The Authority has heretofore issued its term Highway Revenue Bonds (Series 1992V) maturing July 1, 2018 and bearing interest at the rate of 5.75% per annum (the "HRB 2018 Bonds").

E.   The Authority has heretofore issued its serial Transportation Revenue Bonds (Series 2000 B) maturing July 1, 2011 and bearing interest at the rate of 5.375% (the "TRB 2011 Bonds").

F.   The Authority has heretofore issued its serial Transportation Revenue Bonds (Series 2000 B) maturing July 1, 2012 and bearing interest at the rate of 6.00% (the "TRB 2012 Bonds").

G.   The Authority has heretofore issued its serial Transportation Revenue Bonds (Series 2000 B) maturing July 1, 2013 and July 1, 2014 and bearing interest at the rate of 5.50% (the "TRB 2013 Bonds" and the "TRB 2014 Bonds").

H.   The Authority has heretofore issued its serial Transportation Revenue Bonds (Series 2000 B) maturing July 1, 2015 and bearing interest at the rate of 5.625% (the "TRB 2015 Bonds").

I.   The Authority has heretofore issued its serial Transportation Revenue Bonds (Series 2000 B) maturing July 1, 2016 and July 1, 2017 and bearing interest at the rate of 5.75% (the "TRB 2016 Bonds" and the "TRB 2017 Bonds").

J.   The Authority has heretofore issued its serial Transportation Revenue Bonds (Series 2000 B) maturing July 1, 2027 and bearing interest at the rate of 6.50% (the "TRB 2027 Bonds").

4

381381.6 024312 RES

CONFIDENTIAL

K.  The Authority has heretofore issued its term Transportation Revenue Bonds (Series 2000 B) maturing July 1, 2031 and July 1, 2039 and bearing interest at the rate of 6.00% (the "TRB 2031 Bonds" and the "TRB 2039 Bonds").

L.  Representatives of Development Bank have advised me that the principal Underwriters referred to in Section 10 of this Resolution have recommended the refunding of (i) $7,090,000 of the TRB 2011 Bonds, $7,470,000 of the TRB 2012 Bonds, $7,920,000 of the TRB 2013 Bonds, $8,355,000 of the TRB 2014 Bonds, $8,815,000 of the TRB 2015 Bonds, $9,310,000 of the TRB 2016 Bonds, $9,845,000 of the TRB 2017 Bonds, $17,470,000 of the TRB 2027 Bonds, $81,390,000 of the TRB 2031 Bonds and $129,100,000 of the TRB 2039 Bonds (collectively, the "Series 2000B Bonds") and (ii) $995,000 of the HRB 2004 Bonds, $1,060,000 of the HRB 2005 Bonds, $13,305,000 of the HRB 2008 Bonds, $8,015,000 of the HRB 2007 Bonds, $62,480,000 of the HRB 2012 Bonds and $39,785,000 of the HRB 2018 Bonds (collectively, the "HRB Series 1992V Bonds" and, together with the Series 2000B Bonds described in clause (i), the "Refunded Bonds").

M.  In consultation with Development Bank and said Underwriters, the Authority has determined to issue its transportation revenue refunding bonds to refund the Refunded Bonds.

Section 4.  Issuance of Series E Bonds and Series F Bonds.  (A) *Series E Bonds*.  For the purpose of providing funds to refund the above-referenced Series 2000 B Bonds, bonds of the Authority in the aggregate principal amount of not to exceed Two Hundred Eighty Four Million Four Hundred Five Thousand Dollars ($284,405,000) are hereby authorized to be issued pursuant to the provisions of Section 209 of the Bond Resolution.  Said bonds shall be designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series E)" (hereinafter sometimes called the "Series E Bonds"), shall be dated the date of delivery thereof, shall be in the denominations of $5,000 and any multiple thereof, shall be numbered from RE-1 upwards, shall bear interest from their date until their payment at the rate hereinafter provided, payable semiannually on January 1 and July 1 of each year commencing July 1, 2002, and shall be stated to mature, subject to the right of prior redemption, as follows:

Said Bonds shall be Serial Bonds and shall be stated to mature in annual installments on July 1, in the years and amounts, as follows:

5

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044426

| Year of Maturity | Amount | Interest Rate | Year of Maturity | Amount | Interest Rate |
|---|---|---|---|---|---|
| 2011 | $21,780,000 | 5.500% | 2018 | $19,260,000 | 5.500% |
| 2012 | 33,045,000 | 5.500 | 2019 | 13,450,000 | 5.500 |
| 2013 | 34,860,000 | 5.500 | 2020 | 14,185,000 | 5.500 |
| 2014 | 18,625,000 | 5.500 | 2021 | 14,970,000 | 5.500 |
| 2015 | 19,650,000 | 5.500 | 2022 | 15,790,000 | 5.500 |
| 2016 | 22,145,000 | 5.500 | 2023 | 16,660,000 | 5.500 |
| 2017 | 31,550,000 | 5.500 | 2024 | 8,435,000 | 5.750 |

The Series E Bonds maturing July 1 of the years 2011 through 2023 (collectively, the "Series E Insured Bonds") are to be insured by FSA.

(B) *Series F Bonds*. For the purpose of providing funds to refund the above-referenced HRB Series 1992V Bonds, bonds of the Authority in the aggregate principal amount of not to exceed One Hundred Eighteen Million Six Hundred Fifteen Thousand Dollars ($118,615,000) are hereby authorized to be issued pursuant to the provisions of Section 209 of the Bond Resolution. Said bonds shall be designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series F)" (hereinafter sometimes called the "Series F Bonds" and, together with the Series D Bonds and the Series E Bonds, the "Bonds"), shall be dated the date of delivery thereof, shall be in the denominations of $5,000 and any multiple thereof, shall be numbered from RF-1 upwards, shall bear interest from their date until their payment at the rate hereinafter provided, payable semiannually on January 1 and July 1 of each year commencing July 1, 2002, and shall be stated to mature, subject to the right of prior redemption, as follows:

Said Bonds shall be Serial Bonds and shall be stated to mature in annual installments on July 1, in the years and amounts, as follows:

| Year of Maturity | Amount | Interest Rate | Year of Maturity | Amount | Interest Rate |
|---|---|---|---|---|---|
| 2003 | $ 6,030,000 | 5.000% | 2008 | $20,855,000 | 5.000% |
| 2004 | 7,320,000 | 5.000 | 2009 | 21,895,000 | 5.250 |
| 2005 | 7,690,000 | 5.000 | 2010 | 23,040,000 | 5.250 |
| 2006 | 10,785,000 | 5.000 | 2011 | 9,570,000 | 5.250 |
| 2007 | 11,430,000 | 5.000 | | | |

Section 5. <u>Redemption</u>. (i) The Series D Bonds, and the Series E Bonds due July 1, 2024, at the time outstanding may be redeemed prior to their respective maturities on or after July 1, 2012 at the option of the Authority from any available moneys (other than moneys deposited in the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund (the "Senior Bond Sinking Fund") in respect of an Amortization Requirement) on any date either (a) in whole or (b) in part, in such order of maturity as the Authority may direct, at 100% of the principal amount of the Bonds of such maturities to be redeemed, together with the interest accrued thereon to the date fixed for redemption, and (ii) the Series F Bonds may

6

CONFIDENTIAL

not be redeemed prior to their maturity at the option of the Authority; provided, however, that an amount of the term Bonds equal to the respective Amortization Requirements therefor set out in Section 1 above may be redeemed from moneys in the Senior Bond Sinking Fund on the succeeding July 1 in each year at par and accrued interest without premium.

Section 6.  Execution and Form of Bonds.  The Bonds shall bear the facsimile signatures of the Secretary of Transportation and Public Works and the Executive Director and the Secretary or an Assistant Secretary of the Authority and a facsimile of the corporate seal of the Authority shall be imprinted on the Bonds.  The Bonds and the certificate of authentication to be endorsed thereon shall be, respectively, substantially in the forms contained in Appendix A hereto.

Section 7.  Preliminary Official Statement.  The Preliminary Official Statement of the Authority, dated January 14, 2002, relating to the Bonds is hereby approved in the form presented to me this day and filed in the records of the Authority, and the distribution of said Preliminary Official Statement to the prospective purchasers and other investors in connection with the offering of the Bonds is hereby in all respects ratified, confirmed and approved.

Section 8.  Official Statement.  The Official Statement of the Authority, dated January 25, 2002, relating to the Bonds is hereby approved substantially in the form presented to me this day and filed in the records of the Authority, with such changes, insertions, and omissions as may be approved by the Executive Director of the Authority, his signing of said Official Statement to be conclusive evidence of his approval of any such changes, and the purchasers to which the Bonds are awarded are hereby authorized to use said Official Statement in connection with the offering and sale of the Bonds.

Section 9.  Contracts of Purchase.  The proposals submitted by Salomon Smith Barney Inc., acting on behalf of themselves and each of the other Underwriters referred to in the Contract of Purchase (with respect to the Series D Bonds and the Series E Bonds), and in the Forward Delivery Bond Purchase Agreement (with respect to the Series F Bonds), in the respective forms of said Contract of Purchase and Forward Delivery Bond Purchase Agreement presented to me this day and filed in the records of the Authority, offering to purchase the Series D Bonds and Series E Bonds at a price of $997,913,202.27, equal to the face amount of $985,260,000 plus net premium of $19,346,891.30 less underwriters' discount of $6,693,689.03, and offering to purchase the Series F Bonds at a price of $124,574,283.72, equal to the face amount of $118,615,000 plus net premium of $6,642,165.35 less underwriters' discount of $682,881.63, are hereby accepted, and the Bonds are hereby awarded to the Underwriters at said prices, upon the terms and conditions set forth in the Contract of Purchase and the Forward Delivery Bond Purchase Agreement, respectively.

The Secretary of Transportation and Public Works, the Executive Director or any Vice President of the Government Development Bank as agent for the Authority is hereby authorized and directed, in the name of and on behalf of the Authority, to execute and deliver the Contract of Purchase and the Forward Delivery Bond Purchase Agreement in the forms presented to me this day with such changes, insertions and omissions as may be approved by me or such Vice President of the Government Development Bank, such signing of the Contract of Purchase and

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044428

the Forward Delivery Bond Purchase Agreement to be conclusive evidence of the approval of such changes, insertions or omissions.

Section 10. <u>Principal Underwriters</u>. Salomon Smith Barney Inc., Lehman Brothers, Inc., Morgan Stanley & Co. Incorporated, ABN AMRO Financial Services, Inc., Banc of America Securities LLC, Bear, Stearns & Co., Inc., First Union National Bank, Goldman, Sachs & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and UBS PaineWebber Inc. are hereby named as the principal Underwriters under the provisions of the Bond Resolution.

Section 11. <u>Delivery of Bonds</u>. The Executive Director of the Authority is hereby authorized and directed, upon the execution of the Bonds in the form and manner set forth in the Bond Resolution and in this Resolution, to deposit the Bonds with the Fiscal Agent for authentication, and the Fiscal Agent is hereby authorized and directed to authenticate and deliver the Bonds to or upon the order of the principal Underwriters named in Section 10 of this Resolution upon payment of said respective purchase prices.

Section 12. <u>Application of Proceeds</u>. (a) The proceeds of the Series D Bonds shall be applied by the Fiscal Agent as follows:

A. such sum as may be specified by the Executive Director of the Authority in a certificate of the Executive Director delivered upon the date of issuance of the Series D Bonds shall be applied to the repayment of moneys advanced to the Authority and represented by the Outstanding Notes, upon the cancellation of said principal amount of Outstanding Notes and the delivery thereof to the Authority;

B. the Fiscal Agent shall pay to Development Bank such amount as may be requested by the Executive Director of the Authority in a certificate filed with the Fiscal Agent for the payment of such expenses incident to the financing as shall be approved by the Executive Director of the Authority;

C. such sum as may be specified by the Executive Director of the Authority in a certificate of the Executive Director delivered upon the date of issuance of the Series D Bonds shall be deposited to the credit of the Senior Bond Reserve Account in the Senior Bond Sinking Fund; and

D. the balance, if any, of said proceeds shall be paid to the Authority for deposit to the credit of the Construction Fund.

(b) The proceeds of the Series E Bonds shall be applied by the Fiscal Agent as follows:

A. such amount as shall be specified in a certificate of the Executive Director delivered upon the date of issuance of the Series E Bonds, shall be deposited into special escrow pursuant to one or more Escrow Deposit Agreements in customary form as shall be approved by the Executive Director or the Secretary of Transportation and Public Works (collectively, the "Series E Escrow Deposit Agreement"), as to which the Fiscal Agent is hereby appointed to act as Escrow Agent, in order to refund the Series 2000B Bonds referenced above;

8

381381.6 024312 RES

B.      the Fiscal Agent shall pay to Development Bank such amount as may be requested by the Executive Director of the Authority in a certificate filed with the Fiscal Agent for the payment of such expenses incident to the financing as shall be approved by the Executive Director of the Authority; and

C.      such amount as shall be specified in a certificate of the Executive Director delivered upon the date of issuance of the Series E Bonds, shall be deposited to the credit of the Senior Bond Reserve Account in the Senior Bond Sinking Fund.

(c)      The proceeds of the Series F Bonds shall be applied by the Fiscal Agent as follows:

A.      such amount as shall be specified in a certificate of the Executive Director delivered upon the date of issuance of the Series F Bonds, shall be deposited into special escrow pursuant to one or more Escrow Deposit Agreements in customary form as shall be approved by the Executive Director or the Secretary of Transportation and Public Works (collectively, the "Series F Escrow Deposit Agreement"), as to which the Fiscal Agent is hereby appointed to act as Escrow Agent, in order to refund the HRB 1992V Bonds referenced above;

B.      the Fiscal Agent shall pay to Development Bank such amount as may be requested by the Executive Director of the Authority in a certificate filed with the Fiscal Agent for the payment of such expenses incident to the financing as shall be approved by the Executive Director of the Authority; and

C.      such amount as shall be specified in a certificate of the Executive Director delivered upon the date of issuance of the Series F Bonds, shall be deposited to the credit of the Senior Bond Reserve Account in the Senior Bond Sinking Fund.

Section 13.  Additional Contracts.  The proposed float forward or similar contract relating to the reinvestment of maturing amounts in the escrow funds (the "Escrow Fund Investment Agreements"), having terms substantially similar to the terms set forth in the request for bids, dated January 23, 2002, prepared by Chambers, Dunhill, Rubin & Co., presented to me this day and filed in the records of the Authority, and the proposed debt reserve fund investment agreement (the "Reserve Investment Agreement" and, together with the Escrow Fund Investment Agreements, the "Investment Agreements"), having terms substantially similar to the terms set forth in the request for bids, dated January 23, 2002, prepared by Chambers, Dunhill, Rubin & Co., presented to me this day and filed in the records of the Authority, are hereby approved, and the Executive Director is hereby authorized and directed to negotiate the terms of such Investment Agreements in conformity with each of said requests, the Escrow Agent's execution or his execution, as appropriate, of such Investment Agreements to be conclusive evidence of his and its approval of the terms thereof, including any such changes, insertions and omissions from the requests for bids. The municipal bond insurance commitment, dated January 23, 2002, from FSA to the Authority, relating to the Series D Insured Bonds and the Series E Insured Bonds (the "Insurance Commitment") and the continuing disclosure agreements, dated as of the respective dates of delivery of the Bonds (collectively, the "Continuing Disclosure Agreement"), between the Authority and the Commonwealth of Puerto Rico acting through the Secretary of the Treasury, are hereby approved in the respective forms presented to me this day and filed in the records of

9

381381.6 024312 RES

the Authority, with such appropriate changes, insertions and omissions as may be approved by the Executive Director of the Authority, and said Executive Director is hereby authorized and directed to execute and deliver the Insurance Commitment and the Continuing Disclosure Agreement, his execution to be conclusive evidence of his approval of any such changes, insertions and omissions.

Section 14. <u>Legal Opinion</u>. If the Bonds are issued as other than book-entry-only bonds through a securities depository or its nominee or the book-entry-only system is terminated as to the Bonds and definitive Bonds are issued, there may be included on each of said definitive bonds the legal opinion of Hawkins, Delafield & Wood respecting the validity of said Bonds and, immediately following such legal opinion, a certificate executed with the facsimile signature of the Executive Director of the Authority, said certificate to be in substantially the following form:

> "I HEREBY CERTIFY that the foregoing is a true and correct copy of the legal opinion upon the Bonds therein described which was manually signed by Hawkins, Delafield & Wood, New York, New York, and was dated the date of delivery of and payment for the Bonds therein described.
>
>                              <u>[Facsimile Signature]</u>
>
>                   Executive Director, Puerto Rico
>                   Highways and Transportation Authority".

Section 15. <u>Tax Covenant</u>. The Authority hereby covenants and agrees that it shall comply with the requirements of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder so that the interest on the Bonds will remain exempt from existing federal income taxes to which it is not subject on the date of the issuance of the Bonds.

Section 16. <u>Continuing Disclosure</u>. (a) In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the United States Securities and Exchange Commission (the "Commission"), the Authority hereby covenants for the benefit of the persons who from time to time are the owners of the Bonds for federal income tax purposes (the "beneficial owners"):

(A)     to file, within 305 days after the end of each fiscal year, commencing the fiscal year ending June 30, 2002, with each nationally recognized municipal securities information repository ("NRMSIR") and with any Commonwealth information depository ("SID") core financial information and operating data for the prior fiscal year, including (i) the Authority's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) on the Authority, and information as to revenues, expenditures, financial operations and indebtedness of the Authority, in each case, generally found or incorporated by reference in the Official Statement; and

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044431

    (B)     to file, in a timely manner, with each NRMSIR or with the Municipal Securities Rulemaking Board (the "MSRB") and with any Commonwealth SID, notice of any failure by the Authority to comply with paragraph (A) above and notice of the occurrence of any of the following events with respect to the Bonds, if material:

    (1)     principal and interest payment delinquencies;

    (2)     non-payment related defaults;

    (3)     unscheduled draws on debt service reserves reflecting financial difficulties;

    (4)     unscheduled draws on credit enhancements reflecting financial difficulties;

    (5)     substitution of credit or liquidity providers, or their failure to perform;

    (6)     adverse opinions or events affecting the tax-exempt status of the Bonds;

    (7)     modifications to rights of the holders (including beneficial owners) of the Bonds;

    (8)     Bond calls;

    (9)     defeasances;

    (10)    release, substitution, or sale of property securing repayment of the Bonds; and

    (11)    rating changes.

The Authority does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the Authority applies for or participates in obtaining the enhancement.

The Authority does not undertake to provide the above-described event notice of a mandatory scheduled redemption, not otherwise contingent upon the occurrence of an event, if the terms, dates and amounts of redemption are set forth in detail in the Official Statement the only open issue is which Bonds will be redeemed in the case of a redemption of less than all of the Bonds and notice of redemption is given in accordance with the terms of the Bond Resolution and the Bonds being redeemed.

The Authority may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Authority, such other events are material with respect to the Bonds, but the Authority does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

381381.6  024312  RES

CONFIDENTIAL

HTA_STAY0044432

(b)     No beneficial owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of the foregoing covenants (the "Covenants") or for any remedy for breach thereof, unless such beneficial owner shall have filed with the Authority written notice of any request to cure such breach, and the Authority shall have refused to comply within a reasonable time. All Proceedings shall be instituted only in a Commonwealth court located in the Municipality of San Juan for the equal benefit of all beneficial owners of the outstanding Bonds, and no remedy shall be sought or granted other than specific performance of any of the Covenants at issue.

(c)     The Covenants may only be amended if:

(A)     the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Authority, or type of business conducted; the Covenants, as amended, would have complied with the requirements of the Rule at the time of award of the Bonds, after talking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of beneficial owners, as determined by parties unaffiliated with the Authority; or

(B)     all or any part of the Rule, as interpreted by the staff of the Commission at the date of the authentication and delivery of the Bonds, ceases to be in effect for any reason, and the Authority elects that the Covenants shall be deemed amended accordingly.

The Authority further agrees in conjunction with any such amendment that the annual financial information containing the amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

(d)     Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described above.

Section 17.  Municipal Bond Insurance.  So long as the municipal bond insurance policy issued by the Bond Insurer shall be in full force and effect with respect to the Series D Insured Bonds and the Series E Insured Bonds (the "Bond Insurance Policy"), and in accordance with the Insurance Commitment, the terms of Appendices B and C hereto are hereby adopted and approved, and shall be binding upon the Authority, with such changes and additions thereto as the Executive Director shall direct in connection with any further negotiations with the Bond Insurer.

Section 18.  Further Authorization.  The officers of the Authority and the officers and agents of the Fiscal Agent are hereby authorized and directed to do all acts and things required of them by the provisions of the Bonds, the Investment Agreements, the Insurance Commitment, the Series E Escrow Deposit Agreement, the Series F Escrow Deposit Agreement, the Continuing Disclosure Agreement and the Bond Resolution for the full, punctual and complete performance of all the terms, covenants, provisions and agreements of the Bonds, the Investment Agreements, the Insurance Commitment, the Series E Escrow Deposit Agreement, the Series F Escrow Deposit

12                          381381.6 024312 RES

Agreement, the Continuing Disclosure Agreement and the Bond Resolution and also to do all acts and things required of them by the provisions of this Resolution.

Section 19.  <u>Severability of Invalid Provisions</u>. If any one or more of the provisions, covenants or agreements in this Resolution on the part of the Authority to be performed should be contrary to law, then such provision or provisions, covenant or covenants or agreement or agreements shall be deemed separable from the remaining provisions, covenants and agreements herein and shall in no way affect the validity of the other provisions of this Resolution or of the Bonds.

Section 20.  <u>Amendments and Supplements</u>.  The Executive Director of the Authority is hereby authorized to effect any amendments and supplements to this Resolution as he shall determine are necessary or appropriate and as shall not be inconsistent with the intent and purpose hereof.

Section 21.  <u>Effective Date</u>.  The provisions of this Resolution shall become effective immediately upon its adoption.

PASSED AND ADOPTED             January 25, 2002

_____
Secretary of Transportation and Public Works

13

381381.6 024312 RES

APPENDIX A

(Form of Series D Bonds]

No. RD-___                                                    $_____

United States of America

Commonwealth of Puerto Rico

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

Transportation Revenue Bond (Series D)

| Maturity Date | Interest Rate | Cusip No. |
|---|---|---|
| | | |

REGISTERED OWNER:  CEDE & CO.

PRINCIPAL AMOUNT:                               DOLLARS

     Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor Bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on June 15 or December 15 next preceding an interest payment date, by check mailed to such person at his address as it appears on the registration books of the Authority, interest on said Principal Amount from the date hereof or from January 1 or July 1 next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest being payable on January 1 and July 1 in each year, commencing July 1, 2002, at the Interest Rate per annum specified above until payment of said Principal Amount.  All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

A-1

381381.6 024312 RES

HTA_STAY0044435

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such political subdivisions shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

This bond is one of a duly authorized series of revenue bonds of the Authority (herein called the "Bonds") designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds (Series D)", aggregating Seven Hundred Million Eight Hundred Fifty-Five Thousand Dollars ($700,855,000), issued by the Authority for the purpose of paying the cost of constructing highways and other traffic and transportation facilities, as such term is defined in the Enabling Act hereinafter mentioned, including payment of notes heretofore issued by the Authority for such purpose. The Resolution provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional Bonds for any lawful purpose of the Authority.

All of the Bonds are issued pursuant to Resolution No. 98-06 adopted by the Authority on February 26, 1998 (said resolution, together with all supplemental resolutions therein permitted, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the collection and disposition of revenues, the funds charged with and pledged to the payment of the interest on and the principal of the Bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the Bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution. A certified copy of the Resolution is on file at the corporate trust office of JPMorgan Chase Bank, fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the Borough of Manhattan, City and State of New York.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the creation of a special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Fund" (the "Revenue Fund"), and, subject to the limitations of the next two sentences of this paragraph, for the deposit to the credit of said special fund of all moneys received by the Authority (a) from the taxes on crude oil and derivative products ("petroleum products") heretofore allocated to the Authority by Act No. 34, approved July 16, 1997, as amended, (b) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by Subtitle B of Act No. 120, approved October 31, 1994, as amended, (c) from certain receipts of annual motor vehicle license fees allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960, as amended), (d) from any tolls or other charges imposed by the Authority for the use of any Transportation Facilities (other than until the 1968 Resolution is repealed and cancelled, any such Facilities financed under the 1968 Resolution and any extensions, improvements or betterments thereof however financed or otherwise paid for (such Facilities being herein called the "Existing Toll Facilities")) and (e) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other

A-2

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044436

obligations issued by the Authority and which are pledged by the Authority to the payment of the principal of and interest on bonds or other obligations issued under the provisions of the Resolution. The proceeds of the taxes on petroleum products so allocated to the Authority by said Act No. 34, the proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Act No. 120, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose. The 1968 Resolution provides for the prior deposit to the credit of a special fund designated "Puerto Rico Highways and Transportation Authority Construction Fund" (herein called the "1968 Construction Fund") of the moneys referred to in clauses (b), (c) and, with respect to the Existing Toll Facilities, (d) after the required deposits of such moneys have been made to the credit of the Puerto Rico Highways and Transportation Authority Highway Revenue Bonds Interest and Sinking Fund. In the Resolution, the Authority has covenanted to deposit monthly to the credit of the Revenue Fund until the outstanding 1968 Resolution Bonds (hereinafter mentioned) have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, all unencumbered moneys held to the credit of the 1968 Construction Fund.

The Resolution provides for the creation of another special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Revenue Fund to pay the principal of and the interest on all Senior Bonds (as defined in the Resolution) issued under the Resolution, including the Bonds, as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the premium, if any, and the interest on the Senior Bonds.

The Authority has heretofore issued under the provisions of the 1968 Resolution Puerto Rico Highways and Transportation Authority Highway Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1968 Resolution, called the "1968 Resolution Bonds"). Until all of the 1968 Resolution Bonds have been paid or provision shall have been made for their payment and the repeal and cancellation of the 1968 Resolution, the moneys referred to in clauses (b), (c) and to the extent therein specified, (d) of the second preceding paragraph are pledged to the extent required to the payment of the principal of and the premium, if any, and the interest on the outstanding 1968 Resolution Bonds.

The Bonds are subject to redemption prior to maturity as set forth in the Resolution.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The Bonds are issuable only as fully registered Bonds in denominations of $5,000 and any multiple thereof. At the corporate trust office of the Fiscal Agent, in the manner and subject to

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044437

the conditions provided in the Resolution and without cost to the registered owners thereof except for any tax or other governmental charge, Bonds may be exchanged for an equal aggregate principal amount of Bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The transfer of this bond is registrable and this bond may be exchanged by the registered owner hereof in person or by his attorney or legal representative at the corporate trust office of the Fiscal Agent but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for this bond a new Bond or Bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate. No fee or service charge shall be made to any Bondholder for any such exchange or registration of transfer, but the Authority or the Fiscal Agent may make a reasonable service charge to such Bondholder for every such exchange or registration sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer.

Subject to the provisions for registration contained in the Resolution, nothing contained in this bond or in the Resolution shall affect or impair the negotiability of this bond. As declared by the Enabling Act, this bond shall be negotiable in accordance with the meaning and for all intents and purposes of the negotiable instruments law of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to be signed by or to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and Secretary of Puerto Rico Highways and Transportation Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the ____ day of _____, 2002.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

A-4                                    381381.6  024312 RES

By: _____
   Secretary of Transportation
   and Public Works

(SEAL)

By: _____
   Executive Director

By: _____
   Secretary

A-5

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044439

CERTIFICATE OF AUTHENTICATION

This is one of the Bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

JPMorgan Chase Bank,
as Fiscal Agent


By: _____
Authorized Officer


Date of authentication: _____

A-6

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044440

[Form of Assignment]

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto _____

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints _____ his attorney to register the transfer of the within bond on the books kept for registration thereof with full power of substitution in the premises.

Dated: _____        Signature: _____

NOTICE:    The   signature   on   this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Social Security Number or
Employer Identification Number
of Transferee:

Signature Guaranteed:

NOTICE: Signatures must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or a trust company.

A-7

381381.6 024312 RES

CONFIDENTIAL

[Form of Series E Bonds]

No. RE-___                                                                $_____

United States of America

Commonwealth of Puerto Rico

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

Transportation Revenue Refunding Bond (Series E)

| Maturity Date | Interest Rate | Cusip No. |
|---|---|---|
| | % | _____ |

REGISTERED OWNER:  CEDE & CO.

PRINCIPAL AMOUNT:                                                       DOLLARS

Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor Bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on June 15 or December 15 next preceding an interest payment date, by check mailed to such person at his address as it appears on the registration books of the Authority, interest on said Principal Amount from the date hereof or from January 1 or July 1 next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest being payable on January 1 and July 1 in each year, commencing July 1, 2002, at the Interest Rate per annum specified above until payment of said Principal Amount. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such

A-8

381381.6 024312 RES

CONFIDENTIAL                                                                 HTA_STAY0044442

political subdivisions shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

This bond is one of a duly authorized series of revenue bonds of the Authority (herein called the "Bonds") designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series E"), aggregating Two Hundred Eighty-Four Million Four Hundred Five Thousand Dollars ($284,405,000) issued by the Authority for the purpose of refunding a portion of the Authority's outstanding bonds, issued for the purpose of paying or refinancing the cost of constructing highways and other traffic and transportation facilities, as such term is defined in the Enabling Act hereinafter mentioned. The Resolution provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional Bonds for any lawful purpose of the Authority (together with the Bonds, the "Resolution Bonds").

All of the Bonds are issued pursuant to Resolution No. 98-06 adopted by the Authority on February 26, 1998 (said resolution, together with all supplemental resolutions therein permitted, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the collection and disposition of revenues, the funds charged with and pledged to the payment of the interest on and the principal of the Bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the Bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution. A certified copy of the Resolution is on file at the corporate trust office of JPMorgan Chase Bank, fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the Borough of Manhattan, City and State of New York.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the creation of a special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Fund" (the "Revenue Fund"), and, subject to the limitations of the next two sentences of this paragraph, for the deposit to the credit of said special fund of all moneys received by the Authority (a) from the taxes on crude oil and derivative products ("petroleum products") heretofore allocated to the Authority by Act No. 34, approved July 16, 1997, as amended, (b) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by Subtitle B of Act No. 120, approved October 31, 1994, as amended, (c) from certain receipts of annual motor vehicle license fees allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960, as amended), (d) from any tolls or other charges imposed by the Authority for the use of any Transportation Facilities (other than until the 1968 Resolution is repealed and cancelled, any such Facilities financed under the 1968 Resolution and any extensions, improvements or betterments thereof however financed or otherwise paid for (such Facilities being herein called the "Existing Toll Facilities")) and (e) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the

A-9

381381.6 024312 RES

 HTA_STAY0044443

principal of and interest on bonds or other obligations issued under the provisions of the Resolution. The proceeds of the taxes on crude oil and derivative products so allocated to the Authority by said Act No. 34, the proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Act No. 120, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose. The 1968 Resolution provides for the prior deposit to the credit of a special fund designated "Puerto Rico Highways and Transportation Authority Construction Fund" (herein called the "1968 Construction Fund") of the moneys referred to in clauses (b), (c) and, with respect to the Existing Toll Facilities, (d) after the required deposits of such moneys have been made to the credit of the Puerto Rico Highways and Transportation Authority Highway Revenue Bonds Interest and Sinking Fund. In the Resolution, the Authority has covenanted to deposit monthly to the credit of the Revenue Fund until the outstanding 1968 Resolution Bonds (hereinafter mentioned) have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, all unencumbered moneys held to the credit of the 1968 Construction Fund.

The Resolution provides for the creation of another special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Revenue Fund to pay the principal of and the interest on all Senior Bonds (as defined in the Resolution) issued under the Resolution, including the Bonds, as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the premium, if any, and the interest on the Senior Bonds.

The Authority has heretofore issued under the provisions of the 1968 Resolution Puerto Rico Highways and Transportation Authority Highway Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1968 Resolution, called the "1968 Resolution Bonds"). Until all of the 1968 Resolution Bonds have been paid or provision shall have been made for their payment and the repeal and cancellation of the 1968 Resolution, the moneys referred to in clauses (b), (c) and to the extent therein specified, (d) of the second preceding paragraph are pledged to the extent required to the payment of the principal of and the premium, if any, and the interest on the outstanding 1968 Resolution Bonds.

The Bonds are subject to redemption prior to maturity as set forth in the Resolution.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The Bonds are issuable only as fully registered Bonds in denominations of $5,000 and any multiple thereof. At the corporate trust office of the Fiscal Agent, in the manner and subject to the conditions provided in the Resolution and without post to the registered owners thereof except

A-10

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044444

for any tax or other governmental charge, Bonds may be exchanged for an equal aggregate principal amount of Bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The transfer of this bond is registrable and this bond may be exchanged by the registered owner hereof in person or by his attorney or legal representative at the corporate trust office of the Fiscal Agent but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond. Upon any such registration of transfer the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for this bond a new Bond or Bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate. No fee or service charge shall be made to any Bondholder for any such exchange or registration of transfer, but the Authority or the Fiscal Agent may make a reasonable service charge to such Bondholder for every such exchange or registration sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer.

Subject to the provisions for registration contained in the Resolution, nothing contained in this bond or in the Resolution shall affect or impair the negotiability of this bond. As declared by the Enabling Act, this bond shall be negotiable in accordance with the meaning and for all intents and purposes of the negotiable instruments law of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

A-11

381381.6 024312 RES

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to be signed by or to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and Secretary of Puerto Rico Highways and Transportation Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the _____ day of _____, 2002.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
        Secretary of Transportation
        and Public Works

(SEAL)

By: _____
        Executive Director

By: _____
        Secretary

A-12

381381.6 024312 RES

CONFIDENTIAL

CERTIFICATE OF AUTHENTICATION

This is one of the Bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

JPMorgan Chase Bank,
as Fiscal Agent

By: _____
　　　　　Authorized Officer

Date of authentication: _____

A-13

381381.6 024312 RES

[Form of Assignment]

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto _____

the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints _____ his attorney to register the transfer of the within bond on the books kept for registration thereof with full power of substitution in the premises.

Dated: _____     Signature: _____

NOTICE:   The   signature   on   this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Social Security Number or
Employer Identification Number
of Transferee:

Signature Guaranteed:

NOTICE: Signatures must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or a trust company.

A-14

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044448

[Form of Series F Bonds]

No. RF-___                                                                    $_____

United States of America

Commonwealth of Puerto Rico

PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY

Transportation Revenue Refunding Bond (Series F)

| Maturity Date | Interest Rate | Cusip No. |
|---|---|---|
| | % | |
| | | _____ |

REGISTERED OWNER:  CEDE & CO.

PRINCIPAL AMOUNT:                                                    DOLLARS

Puerto Rico Highways and Transportation Authority (hereinafter sometimes called the "Authority"), a body corporate and politic constituting a public corporation and government instrumentality of the Commonwealth of Puerto Rico, for value received, hereby promises to pay, solely from the special fund provided therefor as hereinafter set forth, to the Registered Owner shown above, or registered assigns or legal representative, on the Maturity Date specified above (or earlier as hereinafter referred to), upon the presentation and surrender hereof at the corporate trust office of the Fiscal Agent (hereinafter mentioned), the Principal Amount shown above and premium, if any, and to pay, solely from said special fund, to the person in whose name this bond (or one or more predecessor Bonds, as defined in the Resolution hereinafter mentioned) is registered at the close of business on June 15 or December 15 next preceding an interest payment date, by check mailed to such person at his address as it appears on the registration books of the Authority, interest on said Principal Amount from the date hereof or from January 1 or July 1 next preceding the date of authentication hereof to which interest shall have been paid, unless such date of authentication is January 1 or July 1 to which interest shall have been paid, in which case from such date, such interest being payable on January 1 and July 1 in each year, commencing July 1, 2002, at the Interest Rate per annum specified above until payment of said Principal Amount. All such payments shall be made in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

This bond shall not be deemed to constitute a debt of the Commonwealth of Puerto Rico or of any of its political subdivisions, and neither the Commonwealth of Puerto Rico nor any such

A-15                                                      381381.6 024312 RES

CONFIDENTIAL                                                 HTA_STAY0044449

political subdivisions shall be liable thereon, nor shall this bond or the interest thereon be payable out of any funds other than those pledged for the payment thereof pursuant to the Resolution.

This bond is one of a duly authorized series of revenue bonds of the Authority (herein called the "Bonds") designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series F"), aggregating One Hundred Eighteen Million Six Hundred Fifteen Thousand Dollars ($118,615,000) issued by the Authority for the purpose of refunding a portion of the Authority's outstanding bonds, issued for the purpose of paying or refinancing the cost of constructing highways and other traffic and transportation facilities, as such term is defined in the Enabling Act hereinafter mentioned. The Resolution provides for the issuance, from time to time, under the conditions, limitations and restrictions therein set forth, of additional Bonds for any lawful purpose of the Authority (together with the Bonds, the "Resolution Bonds").

All of the Bonds are issued pursuant to Resolution No. 98-06 adopted by the Authority on February 26, 1998 (said resolution, together with all supplemental resolutions therein permitted, being herein called the "Resolution"), reference to which is hereby made for the provisions, among others, with respect to the collection and disposition of revenues, the funds charged with and pledged to the payment of the interest on and the principal of the Bonds, the nature and extent of the security, the rights, duties and obligations of the Authority and of the Fiscal Agent under the Resolution and the rights of the holders of the Bonds, and, by the acceptance of this bond, the Registered Holder hereof assents to all of the provisions of the Resolution. A certified copy of the Resolution is on file at the corporate trust office of JPMorgan Chase Bank, fiscal agent (said fiscal agent and any successor fiscal agent under the Resolution being herein called the "Fiscal Agent"), in the Borough of Manhattan, City and State of New York.

This bond is issued and the Resolution was adopted under and pursuant to the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, particularly Act No. 74, approved June 23, 1965, as amended (said Act as amended being herein called the "Enabling Act"). The Resolution provides for the creation of a special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Fund" (the "Revenue Fund"), and, subject to the limitations of the next two sentences of this paragraph, for the deposit to the credit of said special fund of all moneys received by the Authority (a) from the taxes on crude oil and derivative products ("petroleum products") heretofore allocated to the Authority by Act No. 34, approved July 16, 1997, as amended, (b) from the taxes on gasoline and gas oil and diesel oil heretofore allocated to the Authority by Subtitle B of Act No. 120, approved October 31, 1994, as amended, (c) from certain receipts of annual motor vehicle license fees allocated to the Authority by the Vehicle and Traffic Law of Puerto Rico (Act No. 141, approved July 20, 1960, as amended), (d) from any tolls or other charges imposed by the Authority for the use of any Transportation Facilities (other than until the 1968 Resolution is repealed and cancelled, any such Facilities financed under the 1968 Resolution and any extensions, improvements or betterments thereof however financed or otherwise paid for (such Facilities being herein called the "Existing Toll Facilities")) and (e) from the proceeds of any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority and expressly authorizes the Authority to pledge to the payment of the principal of and interest on bonds or other obligations issued by the Authority and which are pledged by the Authority to the payment of the

A-16

381381.6 024312 RES

principal of and interest on bonds or other obligations issued under the provisions of the Resolution. The proceeds of the taxes on crude oil and derivative products so allocated to the Authority by said Act No. 34, the proceeds of the taxes on gasoline and gas oil and diesel oil so allocated to the Authority by said Act No. 120, the proceeds of the license fees so allocated to the Authority by said Vehicle and Traffic Law of Puerto Rico and any other taxes, fees or charges which the Legislature of Puerto Rico may allocate to the Authority are subject to first being applied to the payment of interest and amortization of the public debt in accordance with the provisions of Section 8 of Article VI of the Constitution of Puerto Rico if needed for such purpose, but only to the extent that other available revenues of the Commonwealth referred to in said Section 8 are insufficient for such purpose. The 1968 Resolution provides for the prior deposit to the credit of a special fund designated "Puerto Rico Highways and Transportation Authority Construction Fund" (herein called the "1968 Construction Fund") of the moneys referred to in clauses (b), (c) and, with respect to the Existing Toll Facilities, (d) after the required deposits of such moneys have been made to the credit of the Puerto Rico Highways and Transportation Authority Highway Revenue Bonds Interest and Sinking Fund. In the Resolution, the Authority has covenanted to deposit monthly to the credit of the Revenue Fund until the outstanding 1968 Resolution Bonds (hereinafter mentioned) have been paid or provision has been made for their payment and the repeal and cancellation of the 1968 Resolution, all unencumbered moneys held to the credit of the 1968 Construction Fund.

The Resolution provides for the creation of another special fund designated "Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund" (herein called the "Sinking Fund") and for the deposit into the Sinking Fund of a sufficient amount of the funds on deposit to the credit of the Revenue Fund to pay the principal of and the interest on all Senior Bonds (as defined in the Resolution) issued under the Resolution, including the Bonds, as the same become due and payable and to create a reserve for such purpose, which special fund is pledged to and charged with the payment of the principal of and the premium, if any, and the interest on the Senior Bonds.

The Authority has heretofore issued under the provisions of the 1968 Resolution Puerto Rico Highways and Transportation Authority Highway Revenue Bonds (herein, with any additional bonds which hereafter may be issued under the provisions of the 1968 Resolution, called the "1968 Resolution Bonds"). Until all of the 1968 Resolution Bonds have been paid or provision shall have been made for their payment and the repeal and cancellation of the 1968 Resolution, the moneys referred to in clauses (b), (c) and to the extent therein specified, (d) of the second preceding paragraph are pledged to the extent required to the payment of the principal of and the premium, if any, and the interest on the outstanding 1968 Resolution Bonds.

The Bonds are subject to redemption prior to maturity as set forth in the Resolution.

Modifications or alterations of the Resolution or of any resolution supplemental thereto may be made only to the extent and in the circumstances permitted by the Resolution.

The Bonds are issuable only as fully registered Bonds in denominations of $5,000 and any multiple thereof. At the corporate trust office of the Fiscal Agent, in the manner and subject to the conditions provided in the Resolution and without post to the registered owners thereof except

A-17

381381.6 024312 RES

HTA_STAY0044451

for any tax or other governmental charge, Bonds may be exchanged for an equal aggregate principal amount of Bonds of the same series and maturity, of authorized denominations and bearing interest at the same rate.

The transfer of this bond is registrable and this bond may be exchanged by the registered owner hereof in person or by his attorney or legal representative at the corporate trust office of the Fiscal Agent but only in the manner and subject to the limitations and conditions provided in the Resolution and upon surrender and cancellation of this bond.  Upon any such registration of transfer the Authority shall execute and the Fiscal Agent shall authenticate and deliver in exchange for this bond a new Bond or Bonds, registered in the name of the transferee, of authorized denominations, in aggregate principal amount equal to the principal amount of this bond, of the same series and maturity and bearing interest at the same rate.  No fee or service charge shall be made to any Bondholder for any such exchange or registration of transfer, but the Authority or the Fiscal Agent may make a reasonable service charge to such Bondholder for every such exchange or registration sufficient to reimburse it for any tax or other governmental charge required to be paid with respect to such exchange or registration of transfer.

Subject to the provisions for registration contained in the Resolution, nothing contained in this bond or in the Resolution shall affect or impair the negotiability of this bond.  As declared by the Enabling Act, this bond shall be negotiable in accordance with the meaning and for all intents and purposes of the negotiable instruments law of Puerto Rico.

All acts, conditions and things required by the Puerto Rican Federal Relations Act and the Constitution and laws of the Commonwealth of Puerto Rico, including the Enabling Act, and the rules and regulations of the Authority to happen, exist and be performed precedent to and in the issuance of this bond and the adoption of the Resolution have happened, exist and have been performed as so required.

This bond is issued with the intent that the laws of the Commonwealth of Puerto Rico shall govern its construction.

This bond shall not be valid or become obligatory for any purpose or be entitled to any lien, benefit or security under the Resolution until the certificate of authentication endorsed hereon shall have been duly executed by the Fiscal Agent.

A-18

381381.6 024312 RES

CONFIDENTIAL

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority has caused this bond to be signed by or to bear the facsimile signatures of the Secretary of Transportation and Public Works of the Commonwealth of Puerto Rico and of the Executive Director and Secretary of Puerto Rico Highways and Transportation Authority and a facsimile of its corporate seal to be imprinted hereon, all as of the _____ day of _____, 2002.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
     Secretary of Transportation
     and Public Works

(SEAL)

By: _____
     Executive Director

By: _____
     Secretary

A-19

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044453

## CERTIFICATE OF AUTHENTICATION

This is one of the Bonds of the series designated therein and issued under and secured by the provisions of the within mentioned Resolution.

JPMorgan Chase Bank,
as Fiscal Agent


By: _____
Authorized Officer


Date of authentication: _____

A-20

381381.6  024312  RES

[Form of Assignment]

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers unto _____

_____
the within bond and all rights thereunder, and hereby irrevocably constitutes and appoints
_____ his attorney to register the transfer of the within bond on the books kept for registration thereof with full power of substitution in the premises.

Dated: _____        Signature: _____

_____

NOTICE:    The   signature   on   this assignment must correspond with the name as it appears on the face of the within bond in every particular, without alteration or enlargement or any change whatever.

Social Security Number or
Employer Identification Number
of Transferee:

Signature Guaranteed:

_____

NOTICE:  Signatures must be guaranteed by a member firm of the New York Stock Exchange or a commercial bank or a trust company.

A-21

381381.6 024312 RES

CONFIDENTIAL

**APPENDIX B**

## CERTAIN PROVISIONS RELATING TO FSA

As long as (a) the Insured Bonds remain outstanding under the Resolution; (b) the Bond Insurer is not in default in its payment obligations under the Bond Insurance Policy; (c) the Bond Insurance Policy is in effect; (d) the Bond Insurer has not asserted that the Bond Insurance Policy is not in effect, and (e) the Bond Insurer has not provided written notice that it waives its rights hereunder or consents to variations from the terms hereof, the following provisions, which are by this Resolution approved by the Secretary of Transportation and Public Works, including such changes as have been agreed upon between the Executive Director and FSA, shall apply:

Section 1.    Definitions.

(a)    "Bond Insurance Policy" shall mean the insurance policy issued by the Bond Insurer guaranteeing the scheduled payment of principal of and interest on the Insured Bonds when due.

(b)    "Bond Insurer" shall mean Financial Security Assurance Inc., a New York stock insurance company, or any successor thereto.

(c)    "Insured Bonds" shall mean the Puerto Rico Highways and Transportation Authority Transportation Revenue Bonds (Series D) maturing on July 1 of the years 2027 and 2032 and the Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series E) maturing on July 1 of the years 2011 through 2023, inclusive.

Section 2.    Subrogation.

(a)    The Bond Insurer shall, to the extent it makes any payment of principal of (or, in the case of Capital Appreciation Bonds, accreted value) or interest on the Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Bond Insurance Policy.

(b)    The rights granted to the Bond Insurer under the Resolution to request, consent to or direct any action are rights granted to the Bond Insurer in consideration of its issuance of the Bond Insurance Policy. Any exercise by the Bond Insurer of such rights is merely an exercise of the Bond Insurer's contractual rights and shall not be construed or deemed to be taken for the benefit or on behalf of the Bondholders nor does such action evidence any position of the Bond Insurer, positive or negative, as to whether Bondholder consent is required in addition to consent of the Bond Insurer. The obligations to the Bond Insurer shall survive discharge or termination of the Bond Resolution.

Section 3.    Amounts Paid by Bond Insurer Continue to be Outstanding.

(a)    Amounts in respect of the Insured Bonds paid by the Bond Insurer under the Bond Insurance Policy shall not be deemed paid for purposes of the Bond Resolution and shall

B-1

381381.6 024312 RES

CONFIDENTIAL

remain outstanding and continue to be due and owing until paid by the Authority in accordance with the Bond Resolution.

(b) Notwithstanding payment of the Insured Bonds from amounts made available by the Bond Insurer, the Insured Bonds shall continue to be deemed "Outstanding" under the Bond Resolution and the Bond Resolution shall not be discharged until all amounts due or to become due to the Bond Insurer have been paid.

Section 4. Priority of Pledge of Trust Estate; 1968 Construction Fund; Subordination of Certain Payments. The Authority covenants and agrees:

(a) To take such action as is necessary from time to time to perfect or otherwise preserve the priority of the pledge of the trust estate under applicable law;

(b) Once moneys are on deposit in the 1968 Construction Fund, the Authority shall not encumber such amounts for any purpose other than those disclosed to Insured Bondholders in connection with the offering of the Insured Bonds; and

(c) That its obligation to pay any termination payments under any Swap Agreement shall be subordinate to its obligation to make payments of principal and interest with respect to Bonds to the extent that any such payments are secured by Revenues.

Section 5. Claims Upon Bond Insurance Policy and Payments by and to Bond Insurer. The Fiscal Agent and the Authority shall comply with the following provisions:

(a) If, on the third business day prior to the related scheduled interest payment date or principal payment date ("Payment Date") there is not on deposit with the Fiscal Agent, after making all transfers and deposits required under the Bond Resolution, moneys sufficient to pay the principal of and interest on the Insured Bonds due on such Payment Date, the Fiscal Agent shall give notice to the Bond Insurer and to its designated agent (if any) (the "Insurer's Fiscal Agent") by telephone or telecopy of the amount of such deficiency by 12:00 noon, New York City time, on such Business Day. If, on the second Business Day prior to the related Payment Date, there continues to be a deficiency in the amount available to pay the principal of and interest on the Insured Bonds due on such Payment Date, the Fiscal Agent shall make a claim under the Bond Insurance Policy and give notice to the Bond Insurer and the Bond Insurer's Fiscal Agent by telephone of the amount of such deficiency, and the allocation of such deficiency between the amount required to pay interest on the Insured Bonds and the amount required to pay principal of the Insured Bonds, confirmed in writing to the Bond Insurer and the Bond Insurer's Fiscal Agent by 12:00 noon, New York City time, on such second business day by filling in the form of Notice of Claim and Certificate delivered with the Bond Insurance Policy.

(b) In the event the claim to be made is for mandatory sinking fund redemption installment, upon receipt of the moneys due, the Fiscal Agent shall authenticate and deliver to affected Bondholders who surrender their Insured Bonds a new Bond or Bonds in an aggregate principal amount equal to the unredeemed portion of the Insured Bond surrendered. The Fiscal Agent shall designate on its books any portion of payment of principal on Insured Bonds paid by

B-2

381381.6 024312 RES

the Bond Insurer, whether by virtue of mandatory redemption or maturity as a reduction in the principal amount of Insured Bonds registered to the then current Bondholder, whether DTC or its nominee or otherwise, and shall issue a replacement Insured Bond to the Bond Insurer, registered in the name of Financial Security Assurance Inc., in a principal amount equal to the amount of principal so paid (without regard to authorized denominations); provided that the Fiscal Agent's failure so to designate any payment or issue any replacement Insured Bond shall have no effect on the amount of principal or interest payable by the Authority on any Insured Bond or the subrogation rights of the Bond Insurer.

(c)     The Fiscal Agent shall keep a complete and accurate record of all funds deposited by the Bond Insurer into the Policy Payments Account hereinafter mentioned and the allocation of such funds to payment of interest on and principal paid in respect of any Insured Bond. The Bond Insurer shall have the right to inspect such records at reasonable times upon reasonable notice to the Fiscal Agent.

(d)     Upon payment of a claim under the Bond Insurance Policy the Fiscal Agent shall establish a separate special purpose trust account for the benefit of Insured Bondholders referred to herein as the "Policy Payments Account" and over which the Fiscal Agent shall have exclusive control and sole right of withdrawal. The Fiscal Agent shall receive any amount paid under the Bond Insurance Policy in trust on behalf of Insured Bondholders and shall deposit any such amount in the Policy Payments Account and distribute such amount only for purposes of making the payments for which a claim was made. Such amounts shall be disbursed by the Fiscal Agent to Insured Bondholders in the same manner as principal and interest payments are to be made with respect to the Insured Bonds under the sections of the Bond Resolution regarding payment of Bonds. It shall not be necessary for such payments to be made by checks or wire transfers separate from the check or wire transfer used to pay debt service with other funds available to make such payments. Notwithstanding anything to the contrary set forth in the Bond Resolution, and to the extent permitted by law, in the event amounts paid under the Bond Insurance Policy are applied to claims for payment of principal of or interest on the Insured Bonds, interest on such principal of and interest on such Insured Bonds shall accrue and be payable from the date of such payment at the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank or its successor at its principal office in the City of New York, as the prime or base lending rate plus 3% and (ii) the then applicable rate of interest on the Insured Bonds; provided, however, that in no event shall such rate exceed the maximum rate permissible under applicable usury or other laws limiting interest rates.

(e)     Funds held in the Policy Payments Account shall not be invested by the Fiscal Agent and may not be applied to satisfy any costs, expenses or liabilities of the Fiscal Agent. Any funds remaining in the Policy Payments Account following an Insured Bond payment date shall promptly be remitted to the Bond Insurer.

Section 6.     Notification and Reporting Requirements.     The Authority shall provide the Bond Insurer with the following information:

(a)     Annual audited financial statements within 180 days after the end of the Authority's Fiscal Year (together with an Authority certification to the effect that it is not aware

CONFIDENTIAL                                                                HTA_STAY0044458

of any material default under the Bond Resolution or, if there is any such default, specifying the nature and extent of such default) and the Authority's annual budget within 30 days after the approval thereof;

      (b)    Notice of any draw upon the Senior Bond Reserve Account within two business days after knowledge thereof other than (i) withdrawals of amounts in excess of the Senior Reserve Requirement and (ii) withdrawals in connection with a refunding of bonds;

      (c)    Notice of any default known to the Fiscal Agent (or the Authority) within five business days after knowledge thereof;

      (d)    Notice of the advance refunding or redemption of any of the Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;

      (e)    Notice of the resignation or removal of the Fiscal Agent, Paying Agent and Bond Registrar and the appointment of, and acceptance of duties by, any successor thereto;

      (f)    The commencement of any proceeding by or against the Authority commenced under the United States Bankruptcy Code or any other applicable bankruptcy, insolvency, receivership, rehabilitation or similar law (an "Insolvency Proceeding");

      (g)    The making of any claim in connection with any Insolvency Proceeding seeking the avoidance as a preferential transfer of any payment of principal of, or interest on, the Insured Bonds;

      (h)    A full original transcript of all proceedings relating to the execution of any amendment or supplement to the Bond Resolution (not including series resolutions that authorize the issuance of Bonds and do not amend the Bond Resolution);

      (i)    All reports, notices and correspondence to be delivered under the terms of the Bond Resolution;

      (j)    Copies of any modifications or amendments (not including series resolutions that authorize the issuance of bonds and do not amend the Bond Resolution) to the Bond Resolution or any other Related Document shall be sent by the Authority to Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or any successors thereto at least ten (10) days prior to the effective date thereof; and

      (k)    The notice address of the Bond Insurer is: Financial Security Assurance Inc., 350 Park Avenue, New York, New York 10022-6022, Attention: Managing Director -- Surveillance. -- Re: Policy No. 28452-N Telephone: (212) 826-0100; Telecopier: (212) 339-3556. In each case in which notice or other communication refers to a default under the Bond Resolution then a copy of such notice or other communication shall also be sent to the attention of General Counsel and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044459

Section 7.    Qualified Investments.  Except to the extent otherwise agreed by the Bond Insurer, funds and accounts pledged to the payment of Insured Bonds shall be invested in Qualified Investments, but only to the extent that each such investment is permitted by the Bond Resolution.  Qualified Investments shall conform to the requirements set forth in Appendix C. Qualified Investments shall not include corporate debt other than commercial paper rated in the highest category by the rating agencies.  A portion (determined in accordance with the next succeeding sentence) of investments purchased with funds on deposit in the Debt Service Reserve Fund may have an average aggregate weighted term to maturity not greater than fifteen (15) years (any investment agreement, surety bond or letter of credit being deemed to have a term to maturity of 30 days).  At the election of the Authority, either an amount equal to the portion of the Senior Bond Reserve Requirement funded from the proceeds of Series D and Series E Bonds or a portion equal to 30% of the entire Senior Bond Reserve Requirement shall be invested in accordance with the preceding sentence.

Section 8.    Defeasance.

(a)    With respect to Insured Bonds, only (1) cash, (2) non-callable direct obligations of the United States of America ("Treasuries"), (3) evidences of ownership of proportionate interests in future interest and principal payments on Treasuries held by a bank or trust company as custodian, under which the owner of the investment is the real party in interest and has the right to proceed directly and individually against the obligor and the underlying Treasuries are not available to any person claiming through the custodian or to whom the custodian may be obligated, (4) pre-refunded municipal obligations rated "AAA" and "Aaa" by Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. or any successors thereto and Moody's Investors Service, Inc. or any successors thereto, respectively (or any combination thereof), or (5) securities eligible for "AAA" defeasance under then existing criteria of Standard & Poor's Ratings Services or any combination thereof, shall be authorized to be used to effect defeasance of the Insured Bonds, unless the Bond Insurer otherwise approves.

(b)    To accomplish defeasance of any Insured Bonds, the Authority shall cause to be delivered (i) a report of an independent firm of nationally recognized certified public accountants or such other accountant as shall be acceptable to the Bond Insurer ("Accountant") verifying the sufficiency of the escrow established to pay the Insured Bonds in full on the maturity date or redemption date ("Verification"), (ii) an escrow deposit agreement or escrow instructions (which shall be acceptable in form and substance to the Bond Insurer), (iii) an opinion of nationally recognized bond counsel to the effect that the Insured Bonds are no longer "Outstanding" under the Bond Resolution; and (iv) if there is a Fiscal Agent for the Insured Bonds, a certificate of discharge of the Fiscal Agent with respect to the Insured Bonds, each Verification and defeasance opinion shall be acceptable in form and substance, and addressed, to the Authority, the Fiscal Agent and the Bond Insurer. The Bond Insurer shall be provided with final drafts of the above-referenced documentation not less than five business days prior to the funding of the escrow.

(c)    Bonds shall be deemed "Outstanding" under the Bond Resolution unless and until they are in fact paid and retired or the above criteria are met.

B-5

381381.6 024312 RES

CONFIDENTIAL

Section 9.     Reserve Account Insurance Policy; Reserve Account Letter of Credit. The issuer of any Reserve Account Insurance Policy or Reserve Account Letter of Credit shall be, respectively, a municipal bond insurer or a banking association, bank or trust company or branch thereof whose long term obligations or short term obligations are rated at the time of deposit to the credit of the Reserve Account, in the highest rating category of Moody's Investors Service, Inc. or any successors thereto and Standard & Poor's Ratings Group, a division of The McGraw-Hill Companies or any successors thereto (without regard to gradation within such category).

Section 10.     Deposit into Debt Service Reserve Fund.     The prior written consent of the Bond Insurer shall be a condition precedent to the deposit of any credit instrument provided in lieu of a cash deposit into the Debt Service Reserve Fund other than one which matures no earlier than the final stated maturity of the Insured Bonds and is rated by Standard & Poor's Ratings Services and Moody's Investors Service in their highest long-term rating category. Notwithstanding anything to the contrary set forth in the Resolution, amounts on deposit in the Debt Service Reserve Fund shall be applied solely to the payment of debt service on the Insured Bonds.

Section 11.     Bond Insurer To Have Bondowners' Rights. The Bond Insurer shall be deemed to be the sole holder of the Insured Bonds for the purpose of exercising any voting right or privilege or giving any consent or direction or taking any other action that the holders of the Insured Bonds are entitled to take pursuant to defaults and remedies under the Bond Resolution and by law. The Bond Insurer shall be a third party beneficiary to the Bond Resolution. No amendment or supplement to this Resolution or the Bond Resolution which would adversely affect the rights and security of the Bond Insurer may become effective except upon obtaining the prior written consent of the Bond Insurer. The Bond Insurer shall be considered the sole owner of the Insured Bonds in lieu of the registered or beneficial owners thereof for purposes of obtaining any such consents of owners of Insured Bonds, except for those amendments or supplements that require the consent of the owners of all of the bonds outstanding under the Bond Resolution.

Section 12.     Default Events.

(a)     Unless the Bond Insurer otherwise directs, upon the occurrence and continuance of an event under the Bond Resolution which constitutes a material violation by the Authority of its obligations and covenants thereunder, including any non-payment of Bonds (each, a "Default Event"), Bond proceeds shall not be disbursed or expended except for the payment of debt service or redemption price of the Bonds.

(b)     Notwithstanding satisfaction of other conditions to the issuance of additional bonds contained in the Bond Resolution, no such issuance may occur should any Default Event have occurred and be continuing unless such Default Event shall be cured upon such issuance.

Section 13.     Extraordinary or Special Redemption. Upon the occurrence of an extraordinary optional or special or extraordinary mandatory redemption in part, the selection of Bonds to be redeemed shall be subject to the approval of the Bond Insurer.

B-6

381381.6 024312 RES

Section 14. <u>Authority to Pay Fees and Costs of Bond Insurer</u>. The Authority shall pay or reimburse the Bond Insurer for any and all charges, fees, costs and expenses which the Bond Insurer may reasonably pay or incur in connection with (i) the administration, enforcement, defense or preservation of any rights or security in respect of the Bond Resolution; (ii) the pursuit of any remedies under the Bond Resolution or any other Related Document or otherwise afforded by law or equity; (iii) any substantial amendment, waiver or other action with respect to, or related to, the Bond Resolution whether or not executed or completed; (iv) the violation by the Authority of any law, rule or regulation, or any judgement, order or decree applicable to it or (v) any litigation or other dispute in connection with the Bond Resolution or the transactions contemplated thereby, other than amounts resulting from the failure of the Bond Insurer to honor its obligations under the Bond Insurance Policy. The Bond Insurer reserves the right to charge a reasonable fee as a condition to executing any substantial amendment, waiver or consent proposed in respect of the Bond Resolution.

Section 15. <u>Additional Bonds Test.</u> Unless the Bond Insurer consents otherwise, "Revenues" for the purposes of the additional bonds test in Section 208 of the Bond Resolution must be revenues of and originating in the Commonwealth of Puerto Rico, not subject to appropriation or impairment by the Commonwealth, and in effect until all Insured Bonds have been paid; provided, however, that "Revenues" as of the date of issuance of the Insured Bonds or any revenues of the character of "Revenues" as of the date of issuance of the Insured Bonds shall not require the Bond Insurer's consent. Federal grant revenues may not be included as "Revenues" for purposes of the additional bonds test in Section 208 of the Bond Resolution without the Bonds Insurer's consent.

Section 16. <u>No Impairment.</u> The Authority shall not enter into any contract or take any action by which the rights of the Bond Insurer or security for or sources of payment of the Bonds would be impaired in any material respect other than any issuance of indebtedness in accordance with the terms of the Bond Resolution, except upon obtaining the prior written consent of the Bond Insurer.

B-7

381381.6 024312 RES

CONFIDENTIAL

APPENDIX C

## QUALIFIED INVESTMENTS

THESE ARE BROAD GUIDELINES BASED ON S&P PARAMETERS. OTHER
INVESTMENTS DESIRED BY THE OBLIGOR MAY BE INCLUDED IN THE BOND
RESOLUTION SUBJECT TO BOND INSURER APPROVAL

1.  Direct obligations (other than an obligation subject to variation in principal repayment) of
    the United States of America ("United States Treasury Obligations"), (b) obligations fully
    and unconditionally guaranteed as to timely payment of principal and interest by the
    United States of America, (c) obligations fully and unconditionally guaranteed as to timely
    payment of principal and interest by any agency or instrumentality of the United States of
    America when such obligations are backed by the full faith and credit of the United States
    of America, or (d) evidences of ownership of proportionate interests in future interest and
    principal payments on obligations described above held by a bank or trust company as
    custodian, under which the owner of the investment is the real party in interest and has the
    right to proceed directly and individually against the obligor and the underlying
    government obligations are not available to any person claiming through the custodian or
    to whom the custodian may be obligated.

2.  Federal Housing Administration debentures

3.  The listed obligations of government-sponsored agencies which are not backed by the full
    faith and credit of the United States of America

    -Federal Home Loan Mortgage Corporation (FHLMC)
    Participation certificates (excluded are stripped mortgage
    securities which are purchased at prices exceeding their principal
    amounts)
        Senior Debt obligations
    -Farm Credit Banks (formerly: Federal Land Banks, Federal
    Intermediate Credit Banks and Banks for Cooperatives)
        Consolidated system-wide bonds and notes
    -Federal Home Loan Banks (FHL Banks)
        Consolidated debt obligations
    -Federal National Mortgage Association (FNMA)
        Senior debt obligations
        Mortgage-backed securities (excluded are stripped
        mortgage securities which are purchased at prices
        exceeding their principal amounts)
    -Student Loan Marketing Association (SLMA)
        Senior debt obligations (excluded are securities that do not
        have a fixed par value and/or whose terms do not promise
        a fixed dollar amount at maturity or call date)

C-1

381381.6 024312 RES

-Financing Corporation (FICO)
Debt obligations
-Resolution Funding Corporation (REFCORP)
Debt obligations

4.  Unsecured certificates of deposit, time deposits, and bankers' acceptances (having maturities of not more than 30 days) of any bank the short-term obligations of which are rated "A-1" or better by S&P.

5.  Deposits the aggregate amount of which are fully insured by the Federal Deposit Insurance Corporation (FDIC) in banks which have capital and surplus of at least $5 million.

6.  Commercial paper (having original maturities of not more than 270 days) rated "A-1+" by S&P and "Prime-1" by Moody's.

7.  Money market funds rated "AAm" or "AAm-G" by S&P, or better.

8.  "State Obligations", which means:

    A.  Direct general obligations of any state of the United States of America or any subdivision or agency thereof to which is pledged the full faith and credit of a state the unsecured general obligation debt of which is rated "A3" by Moody's and "A" by S&P, or better, or any obligation fully and unconditionally guaranteed by any state, subdivision or agency whose unsecured general obligation debt is so rated.

    B.  Direct general short-term obligations of any state agency or subdivision or agency thereof described in (A) above and rated "A-1+" by S&P and "MIG-1" by Moody's.

    C.  Special Revenue Bonds (as defined in the United States Bankruptcy Code) of any state, state agency or subdivision described in (A) above and rated "AA" or better by S&P and "Aa" or better by Moody's.

9.  Pre-refunded municipal obligations rated "AAA" by S&P and "Aaa" by Moody's meeting the following requirements:

    A.  the municipal obligations are (1) not subject to redemption prior to maturity or (2) the Fiscal Agent for the municipal obligations has been given irrevocable instructions concerning their call and redemption and the issuer of the municipal obligations has covenanted not to redeem such municipal obligations other than as set forth in such instructions;

    B.  the municipal obligations are secured by cash or United States Treasury Obligations which may be applied only to payment of the principal of, interest and premium on such municipal obligations;

C-2

381381.6 024312 RES

C.    the principal of and interest on the United States Treasury Obligations (plus any cash in the escrow) has been verified by the report of independent certified public accountants to be sufficient to pay in full all principal of, interest, and premium, if any, due and to become due on the municipal obligations ("Verification");

D.    the cash or United States Treasury Obligations serving as security for the municipal obligations are held by an escrow agent or Fiscal Agent in trust for owners of the municipal obligations;

E.    no substitution of a United States Treasury Obligation shall be permitted except with another United States Treasury Obligation and upon delivery of a new Verification; and

F.    the cash or United States Treasury Obligations are not available to satisfy any other claims, including those by or against the Fiscal Agent or escrow agent.

10.    Repurchase agreements

With (1) any domestic bank, or domestic branch of a foreign bank, the long-term debt of which is rated at least "A" by S&P and Moody's, or (2) any broker-dealer with "retail customers" or a related affiliate thereof which broker-dealer has, or the parent company (which guarantees the provider) of which has, long-term debt rated at least "A" by S&P and Moody's, which broker-dealer falls under the jurisdiction of the Securities Investors Protection Corporation, or (3) any other entity rated "A" or better by S&P and Moody's and acceptable to the Bond Insurer, provided that:

A.    The market value of the collateral is maintained at levels and upon such conditions as would be acceptable to S&P and Moody's to maintain an "A" rating in an "A" rated structured financing (with a market value approach);

B.    The Fiscal Agent or a third party acting solely as agent therefor or for the Authority (the "Holder of the Collateral") has possession of the collateral or the collateral has been transferred to the Holder of the Collateral in accordance with applicable state and federal laws (other than by means of entries on the transferor's books);

C.    The repurchase agreement shall state and an opinion of counsel shall be rendered at the time such collateral is delivered that the Holder of the Collateral has a perfected first priority security interest in the collateral, any substituted collateral and all proceeds thereof (in the case of bearer securities, this means the Holder of the Collateral is in possession);

D.    All other requirements of S&P in respect of repurchase agreements shall be met;

E.    The repurchase agreement shall provide that if during its term the provider's rating by either Moody's or S&P is withdrawn or suspended or falls below "A-" by S&P

C-3

381381.6 024312 RES

HTA_STAY0044465

or "A3" by Moody's, as appropriate, the provider must, at the direction of the Authority or the Fiscal Agent (who shall give such direction if so directed by the Bond Insurer), within 10 days of receipt of such direction, repurchase all collateral and terminate the agreement, with no penalty or premium to the Authority or Fiscal Agent.

Notwithstanding the above, if a repurchase agreement has a term of 270 days or less (with no evergreen provision), collateral levels need not be as specified in (A) above, so long as such collateral levels are 103% or better and the provider is rated at least "A" by S&P and Moody's, respectively.

11. Investment agreements with a domestic or foreign bank or corporation (other than a life or property casualty insurance company) the long-term debt of which, or, in the case of a guaranteed corporation the long-term debt, or, in the case of a financial guaranty insurance company, claims paying ability, of the guarantor is rated at least "AA" by S&P and "Aa" by Moody's; provided that, by the terms of the investment agreement:

   A. interest payments are to be made to the Fiscal Agent at times and in amounts as necessary to pay debt service (or, if the investment agreement is for the construction fund, construction draws) on the Bonds,

   B. the invested funds are available for withdrawal without penalty or premium, at any time upon not more than seven days' prior notice; the Authority and the Fiscal Agent hereby agree to give or cause to be given notice in accordance with the terms of the investment agreement so as to receive funds thereunder with no penalty or premium paid,

   C. the investment agreement shall state that it is the unconditional and general obligation of, and is not subordinated to any other obligation of, the provider thereof or, if the provider is a bank, the agreement or the opinion of counsel shall state that the obligation of the provider to make payments thereunder ranks pari passu with the obligations of the provider to its other depositors and its other unsecured and unsubordinated creditors.

   D. the Authority or the Fiscal Agent receives the opinion of domestic counsel (which opinion shall be addressed to the Authority and the Bond Insurer) that such investment agreement is legal, valid, binding and enforceable upon the provider in accordance with its terms and of foreign counsel (if applicable) in form and substance acceptable, and addressed to, the Bond Insurer,

   E. the investment agreement shall provide that if during its term

      i) the provider's rating by either S&P or Moody's falls below "AA-" or "Aa3", respectively, the provider shall, at its option, within 10 days of receipt of publication of such downgrade, either (i) collateralize the investment agreement by delivering or transferring in accordance with

C-4

381381.6 024312 RES

                                                        HTA_STAY0044466

applicable state and federal laws (other than by means of entries on the provider's books) to the Authority, the Fiscal Agent or a third party acting solely as agent therefor (the "Holder of the Collateral") collateral free and clear of any third-party liens or claims the market value of which collateral is maintained at levels and upon such conditions as would be acceptable to S&P and Moody's to maintain an "A" rating in an "A" rated structured financing (with a market value approach); or (ii) repay the principal of and accrued but unpaid interest on the investment, and

    ii)    the provider's rating by either S&P or Moody's is withdrawn or suspended or falls below "A-" or "A3", respectively, the provider must, at the direction of the Authority or the Fiscal Agent (who shall give such direction if so directed by the Bond Insurer), within 10 days of receipt of such direction, repay the principal of and accrued but unpaid interest on the investment in either case with no penalty or premium to the Authority or Fiscal Agent; and

F.    the investment agreement shall state and an opinion of counsel shall be rendered, in the event collateral is required to be pledged by the provider under the terms of the investment agreement, at the time such collateral is delivered, that the Holder of the Collateral has a perfected first priority security interest in the collateral, any substituted collateral and all proceeds thereof (in the case of bearer securities, this means the Holder of the Collateral is in possession); and

G.    the investment agreement must provide that if during its term

    i)    the provider shall default in its payment obligations, the provider's obligations under the investment agreement shall, at the direction of the Authority or the Fiscal Agent (who shall give such direction if so directed by the Bond Insurer), be accelerated and amounts invested and accrued but unpaid interest thereon shall be repaid to the Authority or Fiscal Agent, as appropriate; and

    ii)    the provider shall become insolvent, not pay its debts as they become due, be declared or petition to be declared bankrupt, etc. ("event of insolvency"), the provider's obligations shall automatically be accelerated and amounts invested and accrued but unpaid interest thereon shall be repaid to the Authority or Fiscal Agent, as appropriate.

381381.6 024312 RES

CONFIDENTIAL

HTA_STAY0044467

**<u>Tab 8</u>**



**GOVERNMENT
DEVELOPMENT
BANK FOR
PUERTO RICO**
COMMONWEALTH OF PUERTO RICO

PO Box 42001
San Juan, PR 00940-2001
Telephone (787) 722-2525

## CERTIFICATE AS TO RESOLUTION

I, **OLGA L. ORTIZ,** Secretary of the Board of Directors of Government Development

Bank for Puerto Rico, **DO HEREBY CERTIFY,** that attached hereto is a true and correct copy

of **Resolution 7736** which was duly adopted by the Board of Directors of this Bank at a meeting

duly called and held on January 25, 2002 at which a quorum was present and acting throughout.

Said resolution has not been repealed, revoked, rescinded or amended, and is in full force

and effect.

### RESOLUTION 7736

**RESOLUTION APPROVING THE DETAILS OF $700,855,000
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
TRANSPORTATION REVENUE BONDS (SERIES D), $284,405,000
PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY
TRANSPORTATION REVENUE REFUNDING BONDS (SERIES E) AND
$118,615,000 PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY TRANSPORTATION REVENUE REFUNDING BONDS
(SERIES F).**

**WHEREAS,** Puerto Rico Highways and Transportation Authority (the "Authority") has
authorized the issuance of $700,855,000 Puerto Rico Highways and Transportation Authority
Transportation Revenue Bonds (Series D) (the "Series D Bonds"), pursuant to the provisions of
Section 208 of Resolution No. 98-06, adopted by the Authority on February 26, 1998, as
amended (the "Resolution"), for the purpose of repaying certain notes of the Authority, the
proceeds of which have been used by the Authority to finance a portion of the cost of various
capital improvements, and paying a portion of the cost of various other capital improvements of
the Authority;

**WHEREAS,** the Authority has authorized the issuance of $284,405,000 Puerto Rico
Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series E)
and $118,615,000 Puerto Rico Highways and Transportation Authority Transportation Revenue
Refunding Bonds (Series F) (the "Series E Bonds" and "Series F Bonds", respectively; the
Series D Bonds, the Series E Bonds and the Series F Bonds herein collectively called the

CONFIDENTIAL

Certificate as to Resolution 7736
GDB Board of Directors
Page 2 of 2
January 25, 2002

"Bonds"), pursuant to the provisions of Section 209 of the Resolution, for the purpose of refunding a portion of the Authority's outstanding Highways Transportation Bonds and Transportation Revenue Bonds;

**WHEREAS,** Government Development Bank for Puerto Rico (the "Bank") has determined that the form of the issues of the Bonds, including the maturity schedules and principal amounts, the redemption privileges and premiums therefore, the interest rates, the prices for which the Bonds were sold and all other essential factors of the Bonds (including investments), all as described in the Official Statement, dated January 25, 2002, relating to the Bonds and attached hereto as Exhibit A, are in the best interest of the Authority and the Commonwealth of Puerto Rico and will best serve the People of Puerto Rico; and

**NOW, THEREFORE, BE IT RESOLVED,** by the Board of Directors of Government Development Bank for Puerto Rico that the form of the issues of the Bonds, including the maturity schedules and principal amounts, the redemption privileges and premiums therefore, the interest rates, the prices for which the Bonds were sold and all other essential factors of the Bonds, is hereby approved.

This resolution shall take effect immediately upon its adoption.

**IN WITNESS WHEREOF I SET** my hand and the corporate seal of Government Development Bank for Puerto Rico, this 7th day of February, 2002.

**OLGA L. ORTIZ**
**SECRETARY**



#10483 v1 - 7736 RESOLUTION

HTA_STAY0044469