# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. WANDA VÁZQUEZ GARCED; and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY<br><br>Defendants. | Adv. Proc. No. _____ in 17 BK 3283-LTS |

## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND WRIT OF MANDAMUS AGAINST GOVERNOR OF PUERTO RICO AND PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747), and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

**To the Honorable United States District Judge Laura Taylor Swain**:

Plaintiff the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), for itself and as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), hereby brings this complaint against defendants Governor Wanda Vázquez Garced (the "Governor"), in her official capacity, and The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" by its Spanish acronym) (together, the "Defendants").

## NATURE OF THE ACTION

1.     This action seeking injunctive relief and a writ of mandamus is brought pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241 ("PROMESA").

2.     This action relates to the Defendants' failure and refusal to produce to the Oversight Board certain documents and information regarding the Commonwealth Government's (the "Government") procurement and negotiation of contracts to purchase COVID-19 testing equipment and other medical supplies.  Congress established the Oversight Board to "provide a method for [Puerto Rico] to achieve fiscal responsibility and access to capital markets." PROMESA § 101.  As part of that mandate, PROMESA gives the Oversight Board authority to review and approve certain proposed governmental contracts to ensure such contracts "promote market competition and are not inconsistent with the approved Fiscal Plan" and to, among other things, "increase the public's faith in the government procurement and contracting process." *Id.* §§ 204(b)(2)-(3).  PROMESA also gives the Oversight Board the right to obtain documents and information from the Government necessary for the Oversight Board to carry out its responsibilities under PROMESA.  *Id.* § 104(c)(2).

3.      In March 2020, in light of the COVID-19 pandemic, the Governor sought unfettered power to enter into any contract to combat the COVID-19 emergency, circumventing the Oversight Board's contract review policy and existing Government procurement procedures. After discussions between the Oversight Board and representatives of the Government, including the Governor and AAFAF, the Oversight Board agreed to a temporary relaxation of these protocols if a copy of each contract was immediately transmitted to the Oversight Board and accompanied by a certification regarding the contractor's political contributions.  On March 16, 2020, the Governor signed Executive Order 2020-024 (the "<u>Executive Order</u>"), establishing these special emergency procurement procedures permitting expedited execution of COVID-19 related contracts which could be valid for up to 60 days.  This temporary measure did not supersede the existing contract review policy, which remains in place.

4.      After the Executive Order was signed, certain Government entities and various purported suppliers of medical equipment entered into procurement contracts and/or agreements for COVID-19 test kits and other medical equipment.  The contracting Government entities included the Department of Health ("<u>DOH</u>") and the Puerto Rico Emergency Management Agency ("<u>PREMA</u>").  The purported suppliers of medical equipment included Apex General Contractors LLC ("<u>Apex</u>"), 313 LLC ("<u>313</u>"), Maitland 175, Inc. ("<u>Maitland</u>"), and Puerto Rico Sales & Medical Services ("<u>Puerto Rico Sales</u>").

5.      In early April 2020, local Puerto Rico news outlets alerted the public to certain Government contracts for COVID-19 test kits that raised questions and concerns about the Government's actions.  These outlets reported the Government entered into procurement contracts for COVID-19 test kits with Apex (owned by a regular donor to the Governor's New Progressive Party ("<u>PNP</u>")) and 313, neither of which had previous experience supplying medical products.

2

The reports also suggested the Government overpaid for the test kits and the test kits had not been delivered.  Like the test kits, these contracts were also undelivered to the proper party despite the fact the Executive Order required the Government to contemporaneously report each contract to the Oversight Board, a requirement which the Oversight Board specifically mandated.

6.      Shortly thereafter, federal and territorial entities, including the United States Senate, the Commission on Health of the Puerto Rico House of Representatives (the "Commission"), the Federal Bureau of Investigation ("FBI"), and the Food and Drug Administration ("FDA") reportedly requested information concerning the contracts.  Pursuant to its mandate as set forth in PROMESA, the Oversight Board has sought for two months without success to obtain information and documents from the Government concerning the negotiation and procurement process for these contracts.

7.      Throughout the months of April and May 2020, the Oversight Board sent a series of letters and information requests (letters dated April 9, April 12, April 15, April 28, May 15, and May 29, 2020) to the Governor and AAFAF, seeking among other things the following:

    a.  The purchase agreements involving Apex, 313, Maitland, and Puerto Rico Sales, regardless of whether they had been cancelled (the "COVID-19 Contracts");

    b.  Any contracts, including, but not limited to purchase orders, that had not been submitted to the Oversight Board, for example, copies of documentation regarding purchases from 313;

    c.  Any written communications, whether electronic or otherwise, regarding the negotiation, execution, and performance of the contract for test kits with Apex; and

3

      d.   Copies of all materials pertaining to communications with any and all vendors during the negotiation and procurement of the Apex, 313, Maitland, and Puerto Rico Sales contracts (together, with the requests enumerated in the letters listed in ¶ 7, and ¶¶ 7(a), 7(b), and 7(c), the "Contract Documents").

8.     Notwithstanding PROMESA's requirement that the Government provide certain information and documentation to enable the Oversight Board to fulfill its statutory duties, the Government failed and refused to comply.  Specifically, in response to the Oversight Board's requests, the Government provided an incomplete set of documents which itself raised additional concerns, including regarding transactions involving Maitland and Puerto Rico Sales.

9.     In light of the Government's repeated failure to comply with the Executive Order and various sections of PROMESA, including sections 104(c) and 204(b), the Oversight Board informed the Governor and AAFAF that if they did not comply with the Oversight Board's requests, the Oversight Board would take steps to enforce PROMESA, including seeking this Court's intervention.

10.    In May 2020, at the invitation of the Governor and AAFAF, the Oversight Board issued information requests directly to the Government entities involved in the contracting process, specifically DOH, PREMA, and Office of Management and Budget ("OMB"), with copies to the Governor and AAFAF.  These requests, like the requests sent previously to the Governor and AAFAF, sought information including the Contract Documents.  PREMA has not even responded to the Oversight Board's letters.  OMB and DOH have provided incomplete documentation, and both have requested extensions to complete their productions.

11.    The Governor and AAFAF are responsible for ensuring the Oversight Board obtains the information necessary to carry out its Congressionally-mandated responsibilities.  The

Governor is the head of the Executive Branch and its component agencies, including the DOH, PREMA, and OMB; AAFAF is the "reporting agent of all entities of the Government" and "the government entity responsible for the collaboration, communication, and cooperation between the Government of Puerto Rico and [the Oversight Board]." P.R. Act No. 2-2017, § 5(a) (*Certified Translation attached as* **Exhibit 1**); *see also* **Exhibits 2** (*Puerto Rico Const. Art. IV, § 6 (DOH)*); **3** (*23 L.P.R.A. § 102 (OMB)*); and **4** (*Certified Translation of §§ 3641-3642 (PREMA)*).

12.     Defendants have violated PROMESA by failing and refusing to timely submit the Contract Documents, including the COVID-19 Contracts.

13.     As a result, the Oversight Board seeks injunctive relief compelling the Governor and AAFAF to comply with PROMESA and provide to the Oversight Board the Contract Documents.

14.     Additionally, the Oversight Board seeks a writ of mandamus, ordering the Governor and AAFAF to comply with their ministerial duties under PROMESA by providing the Oversight Board the Contract Documents, including the COVID-19 Contracts, or providing a representative of the Oversight Board onsite access to all its information systems containing the Contract Documents to enable the Oversight Board to carry out its responsibilities under PROMESA.

**PARTIES**

15.     Plaintiff Oversight Board is an entity within the Commonwealth Government established pursuant to PROMESA section 101.

16.     Defendant Governor Wanda Vázquez Garced is the Governor of Puerto Rico, vested with the executive power and the obligation to execute the laws. P.R. Const. Art. IV, §§ 1, 4. Plaintiff sues the Governor, and any successors thereto, in her official capacity.

17.     Defendant AAFAF is a Puerto Rico public corporation.  It is, under Commonwealth law, the "fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico," with responsibility "for the collaboration, communication, and cooperation between the Government of Puerto Rico and the [Oversight Board]."  P.R. Act No. 2-2017, § 5(a) (*Certified Translation attached as* **Exhibit 1**).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under PROMESA raising federal questions.  This Court also has subject-matter jurisdiction over this action pursuant to PROMESA section 106(a) because this action arises out of PROMESA, and pursuant to PROMESA section 306(a)(2) because this action relates to the Commonwealth Title III case and it has a connection to, or likelihood of interference with, such Title III case.

19.     This Court has personal jurisdiction over the Governor and AAFAF pursuant to PROMESA section 306(c) and because they are, respectively, an officer and an agency of the Government of Puerto Rico, are located in the United States, and have performed acts giving rise to the claims in this action in Puerto Rico.

20.     Venue is proper in this District pursuant to PROMESA section 106(a) because this action arises out of PROMESA.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events or omissions giving rise to this action occurred in this District.  Venue is also proper in this District pursuant to PROMESA section 307.

21.     This Court has authority to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a), which states that "all courts established by Act of Congress may issue all

writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  This Court may also issue a writ of mandamus under its supplemental jurisdiction to enforce Article 649 of the Puerto Rico Code of Civil Procedure.  *See* 32 L.P.R.A. § 3421; *see also* 28 U.S.C. § 1367 (supplemental jurisdiction).

## FACTS

22.    In 2016, the Congress of the United States enacted PROMESA and created the Oversight Board in an effort to stabilize Puerto Rico's economy by establishing oversight of the Government's budget and fiscal policies, and by providing a way for the Commonwealth to modify or restructure its debts.  PROMESA § 101(a).  As Congress found, a "combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing [] created a fiscal emergency in Puerto Rico." PROMESA § 405(m)(1).  Congress enacted PROMESA as a comprehensive measure to address Puerto Rico's fiscal, management, and structural problems through the Oversight Board's independent oversight of the Commonwealth's fiscal and budgetary policies.     PROMESA §§ 405(m), (n).

23.    PROMESA requires the Oversight Board to monitor and review Government activities to ensure compliance with certified fiscal plans and certified budgets for the Commonwealth and its instrumentalities.  PROMESA §§ 203, 204.

24.    PROMESA section 204(b)(2) states the Oversight Board may establish policies to require prior Oversight Board approval of certain contracts that are proposed to be executed by the Government to ensure such proposed contracts promote market competition and are not inconsistent with the approved fiscal plan.

7

25.     The Oversight Board has enacted policies pursuant to PROMESA section 204(b)(2) regarding review of contracts.  The current contract review policy (the "Policy") became effective as of July 3, 2018, and covers "any contract that is proposed to be entered into by the Commonwealth (which includes the Executive, Legislative and Judicial branches of government) or any covered instrumentality."[2]  (*Attached as* **Exhibit 5**).

26.     The Policy requires Oversight Board review and approval of "[a]ll contracts or series of related contracts, inclusive of any amendments, modifications, or extensions, with an aggregate expected value of $10 million or more" *prior* to execution.  *See id.* at 2.  The Oversight Board may "exercise any . . . powers granted to it under PROMESA" to effectuate the Policy.  *Id.*

27.     Under the Policy, the Oversight Board may select "in its sole discretion" contracts below $10 million for review "to assure that they promote market competition and are not inconsistent with the approved fiscal plan."  *Id.*

28.     The Policy is intended, among other things, to make the government contracting process more effective and to increase the public's faith in the contracting process.  *Id.* at 1.

29.     PROMESA section 104(c)(2) gives the Oversight Board the "right to secure copies, whether written or electronic, of such records, documents, information, data, or metadata from the territorial government necessary to enable the Oversight Board to carry out its responsibilities under this Act."  Therefore, "[a]t the request of the Oversight Board, the Oversight Board shall be granted direct access to such information systems, records, documents, information, or data as will enable the Oversight Board to carry out its responsibilities under this Act."  PROMESA § 104(c)(2).  Section 104(c)(2) further provides that "[t]he head of the entity of the territorial government responsible shall provide the Oversight Board with such information and assistance

---

[2] The original version of the Policy was adopted on November 6, 2017.

8

(including granting the Oversight Board direct access to automated or other information systems) as the Oversight Board requires."

## COVID-19 and Emergency Declaration

30.     On March 11, 2020, the World Health Organization declared COVID-19, the novel coronavirus disease, a pandemic.

31.     On March 12, 2020, the Governor signed Executive Order No. 2020-020 (the "Emergency Order"), declaring a state of emergency in Puerto Rico.  (*Certified Translation attached as* **Exhibit 6**).

32.     The Emergency Order empowers the Secretary of the Treasury and Executive Director of OMB "to establish from any funds available, including the Emergency Fund, a special budget to defray any expenditures necessary to prevent the spreading of the virus on the [i]sland." *See id.* at 2.

## Executive Order No. 2020-024

33.     Given COVID-19's rapid expansion across the United States, including the Commonwealth, the Government sought a method to swiftly acquire medical supplies, equipment, and test kits necessary to protect the people of Puerto Rico.

34.     On March 6, 2020, AAFAF submitted a proposed executive order ("Proposed Order") to the Oversight Board on behalf of the Governor.  (*Attached as* **Exhibit 7**).  It purported to relax contracting requirements for executive agencies when procuring supplies necessary to fight COVID-19.  Notably, the Proposed Order effectively sought a total waiver of compliance with the Policy, permitting the execution of government contracts without prior Oversight Board review.  *See* **Exhibit 7** at 1 (proposing to permit entry into COVID-19 related contracts "without the need to follow bidding or other ordinary legal procedures").

9

35.    The Oversight Board reviewed the Proposed Order pursuant to its policy governing

review of proposed rules, regulations, and executive orders issued on October 31, 2019 (the

"<u>Executive Order Review Policy</u>")[3], in accordance with PROMESA § 204(b)(4).  (*Attached as*

**Exhibit 8**).

36.    Pursuant to the Executive Order Review Policy, the Oversight Board recognized

the need for temporary, streamlined contracting procedures in light of the COVID-19 pandemic,

but had concerns about the impact of the Proposed Order's changes to the Government's

procurement practices on the fiscal plan and the public's faith in its procurement practices.  As

such, the Oversight Board mandated the inclusion of strong contemporaneous reporting and anti-

fraud provisions.

37.    The Oversight Board replied to AAFAF's proposal on March 11, 2020, attaching a

revised version of the Proposed Order.  (*Attached as* **Exhibits 9** (*March 11, 2020 Oversight Board*

*Letter Regarding Proposed Order*) and **10** (*Revised Version of Proposed Order*)).  The Oversight

Board required several revisions including the following mandates: (i) any contract executed under

the Proposed Order must be submitted to the Oversight Board on the date of its execution; and (ii)

any such contract must be accompanied by a certification that all of the contractor's political

contributions were made in accordance with applicable law.

38.    On March 16, 2020, the Governor signed the Executive Order (Executive Order

No. 2020-024), which was consistent with the Oversight Board's revisions to the Proposed Order.

(*Certified Translation attached as* **Exhibit 11**).  The Executive Order, which did not supersede or

eliminate the Policy, established special emergency procurement procedures to acquire products

and materials the DOH declared necessary in connection with the prevention of COVID-19.

---

[3] The original version of the Executive Order Review Policy was adopted on December 21, 2018.

39.     Specifically, the Executive Order provided "agencies will have a period of sixty (60) days as of the promulgation of this Executive Order to execute contracts without requiring the documents or complying with any requirements established by law, regulation, administrative order, or applicable guidelines." *Id.* at 3.

40.     The Executive Order included accountability provisions the Oversight Board demanded as part of the review process.  Notwithstanding the Executive Branch's exemption from the typical contracting requirements, the Executive Order provides "the terms and conditions of the acquisition of such services must be done in writing and must include the following:  (a) [t]he date of execution of the contract, (b) the term of the obligation, (c) the object of the obligation, and (d) the amount of the obligation, and (e) the signatures of the persons authorized to execute it." *Id.* at 2.  In addition, the Executive Order instructs "as required by the . . . Oversight Board, the agencies must include as an attachment to all contracts perfected a certification executed by the contractor."  *Id.* at 3.  The certification "must indicate that the contractor recognizes that any contribution, as defined by the *Law to Oversee the Financing of Political Campaigns in Puerto Rico*, Law 222-2011, made by the contractor and in the case of a corporation, by its shareholders, members, or owners, will be made in strict compliance with said statute." *Id*.

41.     Further, the Executive Order requires any contract executed according to its provisions be remitted to the Oversight Board "on the date on which the same is executed." *Id.* at 2.  Any contracts entered into under the Executive Order can only be valid for a period of sixty days.  The Executive Order was effective for sixty days and expired on May 15, 2020.

### COVID-19 Contracts

42.     On March 12, 2020, the DOH requested the acquisition of COVID-19 rapid test kits.  (*Certified Translation attached as* **Exhibit 12**).

11

43.     On March 26, 2020, the Puerto Rico General Services Administration, on behalf of PREMA, entered into a purchase order agreement with Apex for 1 million Promedical COVID-19 test kits at a total price of $38 million.  (*Certified Translation attached as* **Exhibit 13**).  The purchase order indicated the kits were being purchased for use by DOH.  *Id.*

44.     Around March 27, 2020, the Treasury Department wired $19 million to Apex as a deposit for the test kits.  *See* **Exhibit 14** (*Certified Translation of Contract Quote with Delivery Schedule and Routing Information*)*; see also* **Exhibit 15** (*April 6, 2020 Credit Advice*)*.*

45.     When the test kits were purchased, the Government had no guarantee the FDA would authorize their use in Puerto Rico.  *See* **Exhibit 16** at 6 (*Certified Translation of April 15, 2020 Noticel Article*).

46.     Defendants failed to submit the Apex contract and any related documentation or communications to the Oversight Board on March 26, 2020, as required by PROMESA, the Policy, and the Executive Order.

47.     The test kits were to be delivered on March 31, 2020.  *See* **Exhibit 14** at 2.  Apex failed to deliver the kits as scheduled.  *See* **Exhibit 17** (*Certified Translation of April 2, 2020 PREMA Letter Terminating Apex Contract and Requesting Refund of Deposit*).

48.     On April 2, 2020, following Apex's failure to deliver the test kits, PREMA sent a letter to Apex terminating the contract and asking for the return of the $19 million deposit.  (*Certified Translation attached as* **Exhibit 17**).  At that time, the Government had not informed the Oversight Board of the Apex contract, nor had the Government provided any documentation to the Oversight Board concerning the contract, as required by the Executive Order, the Policy, and PROMESA.

12

49.    On April 6, 2020, Apex purportedly returned the $19 million deposit to the Government.  *See* **Exhibit 15** (*April 6, 2020 Credit Advice*); *see also* **Exhibit 18** at 1 (*April 9, 2020 AAFAF Letter*).

## Media Coverage Reveals Lack of Accountability in Government Procurement and Contracting, Signals Potential Pay for Play at the Expense of Puerto Rico's Citizens

50.    On April 6, 2020, *El Nuevo Día* published an article revealing the cancelled Apex contract, reporting Apex was owned by Robert Rodríguez López, who is a regular donor to the Governor's political party, PNP.[4]  (*Attached as* **Exhibit 19**).  Additionally, the article indicated the Government contracted to purchase 101,500 COVID-19 test kits from 313 for a total of $3.6 million.  *Id.* at 6-7.

51.    *El Nuevo Día* noted both companies, Apex and 313, had "been linked to Grupo Lemus, a consulting and lobbying firm founded in 2018" by "PNP activist" Juan Suárez Lemus, who reportedly has "close ties to top political figures in the community."  *Id.* at 3-4.

52.    *El Nuevo Día* reported that neither Apex nor 313 had previously dealt in medical products prior to the COVID-19 pandemic.  *Id.* at 2-3.  According to the article, until days before entering into the Government contract, 313 dealt in "computer, technology, construction, infrastructure restoration, and maintenance services."  *Id.* at 3.

53.    Further, according to the April 6, 2020 article, "[t]he two companies sold the equipment to the government for substantially higher prices than these tests cost in the market, and even at a cost up to three times higher than another Puerto Rican company with extensive

---

[4] PNP is the party of the Governor and Senate President Thomas Rivera Schatz, among many other key Government officials.

experience in the field of medical products, which also did business with Puerto Rican authorities in the past few days."[5]  *Id.* at 4.

### Oversight Board's Repeated and Unsuccessful Attempts to Obtain Information from the Governor and AAFAF

54.     Beginning on April 6, 2020, based on the information obtained from various news reports, the Oversight Board sent numerous and repeated requests to the Governor and AAFAF for information about the contracts and the negotiation process.

55.     To date, the Governor and AAFAF have failed to comply with the Oversight Board's requests in violation of PROMESA, providing either deficient documentation or no documentation at all.

56.     On April 6, 2020, the Oversight Board sent a letter to the Governor seeking information about the Apex and 313 contracts.  (*Attached as* **Exhibit 20**).  The Oversight Board's letter indicated the Government violated PROMESA, the Policy, and the Executive Order by failing to submit the Apex and 313 contracts for review and approval by the Oversight Board.  *See id.*  The Oversight Board emphasized the importance of complying with such processes "during a state of emergency to ensure that critical resources are used efficiently and effectively."  *See id.* at 2.  In response to this request, neither the Governor nor AAFAF provided any information related to the 313 contract.

57.     On April 9, 2020, AAFAF informed the Oversight Board the Government issued a purchase order for Promedical COVID-19 rapid kit tests for $38 million.  *See* **Exhibit 18** (*April 9, 2020 AAFAF Letter*).  Promedical was the same Australian company from which Apex had

---

[5] A subsequent news report indicated the Government had a proposal from Glovex for 500,000 kits at $10 per unit when it contracted with Apex for one million tests at $38 per unit.  *See* **Exhibit 16** at 1 (*Certified Translation of April 15, 2020 Noticel Article*).

allegedly planned to purchase test kits.  Promedical had also come under media scrutiny following the collapse of the Apex deal.  According to a story in *The Guardian*, Promedical had no diagnostic experience and the company was "not sanctioned to supply tests in Australia."  (*Attached as* **Exhibit 21**).  Prior to the outbreak of the COVID-19 pandemic, Promedical's main business was "selling fat-freezing technology, ultrasound vaginal rejuvenation, erectile dysfunction machines[,] and 'biohacking' devices."  *Id.* at 6.

58.     On April 9, 2020, the Oversight Board sent a letter reminding AAFAF it still had not adequately responded to the Oversight Board's request for information regarding the Apex and 313 contracts, and directed AAFAF once again to "submit for . . . review the purchase agreements at issue not later than April 13, 2020, regardless of whether they ha[d] been cancelled."  (*Attached as* **Exhibit 22**).  The Oversight Board received no response to this letter.

59.     On April 12, 2020, the Oversight Board sent another letter to AAFAF requesting the Government provide information related to contracts for the purchase of COVID-19 materials. (*Attached at* **Exhibit 23**).  The Oversight Board noted that, despite its requests, it had not received documentation regarding the contract with 313 or the negotiation of the Apex contract.  The Oversight Board requested these documents no later than April 15, 2020.  On April 14, 2020, AAFAF declined to provide the requested information and instead offered to make available certain Government officials for an oral explanation of the transactions.  (*Attached as* **Exhibit 24**).

60.     By letter dated April 15, 2020 to AAFAF, the Oversight Board reiterated its requests dated April 6, April 9, and April 12 for information related to COVID-19 Contracts with 313 and Apex.  (*Attached as* **Exhibit 25**).  The Oversight Board directed AAFAF to provide the requested information no later than April 20, 2020 to avoid an unnecessary and costly judicial process.  On April 20, 2020, AAFAF acknowledged the Oversight Board's continued requests for

15

documentation and suggested the Oversight Board to reach out to the agencies directly.  (*Attached as* **Exhibit 26**).

61.     On April 28, 2020, the Oversight Board again wrote to AAFAF to address numerous deficiencies in the materials provided to the Oversight Board and to continue its efforts to obtain documents pertaining to the Government's negotiation and procurement of contracts for COVID-19 materials.  (*Attached as* **Exhibit 27**).  The Oversight Board also noted (again) that no documentation regarding purchases from 313 had been produced.  The April 28, 2020 letter also provided a detailed list of the outstanding documents, and extended the time for AAFAF and the Government to produce the materials requested until 4:00 pm AST on May 2, 2020.  The Oversight Board further indicated it had become aware that "multiple Government agencies ha[d] compiled significant volumes of information concerning the procurement and execution of the Apex and 313 LLC Contracts and produced the same to the House of Representatives."  *Id.* at 2.

62.     On May 2, 2020, AAFAF sent a letter to the Oversight Board indicating that AAFAF was forwarding information received from PREMA and OMB during the course of that day.  (*Attached as* **Exhibit 28**).  AAFAF also recommended the Oversight Board send its information requests directly to the agencies and instrumentalities that are the custodians of the materials at issue.

63.     The materials provided by AAFAF were incomplete and insufficient in several respects, including the following:

>    a.   AAFAF provided no information regarding the negotiations leading to the Apex agreement. Specifically, AAFAF's submission contained no documentation prior to March 26, 2020, the date on which the Apex contract was executed. *See* **Exhibit 29** at 3 (*May 15, 2020 Oversight Board Letter*).

b. AAFAF provided no materials documenting either of the Government's contracts with 313. *Id*. at 2-3.

64. In addition, upon reviewing these materials, the Oversight Board discovered references to certain purchase orders made by PREMA with Maitland for the acquisition of COVID-19 test kits and other equipment, involving purchases of more than $13 million. *See id.* at 3. The contracts were not submitted to the Oversight Board as required by PROMESA, the Policy, and the Executive Order.

65. On May 15, 2020, the Oversight Board wrote to Commissioner José R. Burgos of PREMA, Secretary Lorenzo González of the DOH, and Director Iris Santos Díaz of OMB (collectively, the "Department Heads") to notify OMB, DOH and PREMA of the deficiencies in the documents produced to the Oversight Board. (*Attached as* **Exhibit 29**). For example, the agencies provided no documentation or communications prior to March 26, 2020 – the date on which the Apex contract was executed. *Id.* at 2. In addition, AAFAF failed to furnish all necessary documents in connection with the 313 and Maitland contracts. *See id.* at 2-3.

66. The Oversight Board's May 15, 2020 letter further requested copies of all materials pertaining to communications with any and all competitor vendors during the negotiation and procurement of the Apex, 313, and Maitland contracts. *Id* at 3-4. The Oversight Board also included a detailed list of the outstanding documents. *Id.* at 7-12. The Oversight Board requested these agencies provide the documents no later than May 22, 2020.

67. On May 21, 2020, OMB sent a letter to the Oversight Board purporting to respond to the Oversight Board's requests. (*Attached as* **Exhibit 30**). The Oversight Board determined that OMB's response was insufficient in part because it contained inadequate information about the Apex and Maitland contracts. *Id.*

17

68.     On May 29, 2020, the Oversight Board sent another letter to the Department Heads. (*Attached as* **Exhibit 31**).  The Oversight Board observed that PREMA and DOH had failed to respond at all to the Oversight Board's May 15, 2020 letter.  The Oversight Board informed OMB its response was inadequate because, among other things, OMB's newly delivered documents did not include materials pertaining to Apex or Maitland.  The May 29, 2020 letter noted "[w]hile OMB may not possess the requested information, PREMA and DOH undoubtedly participated in negotiating and procuring these contracts and have failed to deliver any information requested by the Oversight Board in order to fulfill its Congressionally-mandated duties."  *Id.* at 3.

69.     The May 29, 2020 letter indicated the Oversight Board viewed "the failure of DOH, PREMA, and OMB to respond adequately (or at all) to [its] document requests [as] a violation of PROMESA."  *Id.*  The May 29, 2020 letter directed the Department Heads to deliver the requested information as soon as possible and no later than June 1, 2020.

70.     To date, the Oversight Board has received no response to its May 29, 2020 letter from PREMA.

71.     On June 1, 2020, the Oversight Board received an extension request from OMB. On June 5, 2020, OMB send a letter to the Oversight Board, accompanied by document submissions pertaining to, among other things, Government contracts with Maitland and Puerto Rico Sales.  Upon review, the Oversight Board determined these document submissions did not satisfy the Oversight Board's requests, as the submissions did not include all outstanding contracts pertaining to both Maitland and Puerto Rico Sales and failed to include any documents regarding the negotiation and procurement of the COVID-19 Contracts.

72.     On June 5, 2020, DOH sought an extension of time to respond to the Oversight Board's document requests.

## Federal and State Concern Over the COVID-19 Contracts

73.    After *El Nuevo Día*'s report, other news outlets increased their coverage of these questionable contracts.  In addition to attracting the attention of the Oversight Board, a DOH official confirmed to one media outlet that the FBI and FDA asked him to "safeguard email accounts" with information regarding several COVID-19 agreements.  *See* **Exhibit 32** (*April 6, 2020 Caribbean Business article*).

74.    In a letter dated April 20, 2020, Senator Charles Grassley requested the Governor provide information regarding these COVID-19 agreements.  (*Attached as* **Exhibit 33**).  Senator Grassley wrote, "[i]t appears that procurement and contracting in Puerto Rico often passes through a filter of political connections before resources intended for the people of Puerto Rico actually reach them and achieve the intended use, depriving the people of Puerto Rico the primacy that they deserve." *Id.* at 1.

75.    Senator Grassley called the revelations regarding the COVID-19 contracts "the latest in a steady stream of evidence demonstrating similar faults in the government of Puerto Rico's rebuilding efforts following the largest municipal debt default in U.S. history and a string of devastating natural disasters." *Id.*

76.    The Governor responded to Senator Grassley on April 27, 2020 and provided the Senator with a number of Contract Documents.  (*Attached as* **Exhibit 34**) (*April 27, 2020 Gov. Vázquez Garced Letter*).

77.    As noted above, *see supra ¶* 61, while the Governor and AAFAF have failed to comply with the Oversight Board's requests for the Contract Documents, the Government appears to have produced significant amounts of such materials to the Puerto Rico House of Representatives.

78.     In mid-May 2020, the Commission held closed hearings related to the failed purchase of the COVID-19 test kits during which Apex's owner (and PNP donor), Robert Rodríguez López, and his lawyer, Juan Maldonado de Jesús testified.  *See* **Exhibit 35** (*May 20, 2020 The Weekly Journal Article*); **Exhibit 36** (*Certified Translation of May 11, 2020 Noticel Article*).  Reportedly, during his testimony, Maldonado de Jesús – the former director of Puerto Rico's Maritime Transportation Authority and a participant in the Apex contract negotiations – invoked his Fifth Amendment right against self-incrimination.  *See* **Exhibit 36** (*Certified Translation of May 11, 2020 Noticel Article*).

79.     When Rodríguez López testified before the Commission on May 18, 2020, text messages he exchanged with Maldonado de Jesús regarding the contract were released to the Committee, some of which were subsequently leaked to news outlets.  *See* **Exhibit 35** *(May 20, 2020 The Weekly Journal article)*; **Exhibit 37** (*Certified Translation of May 19, 2020 El Nuevo Día Article*).

80.     On May 19, 2020, *El Nuevo Día* published excerpts from some of the text messages Rodríguez López provided to the Commission.  *See* **Exhibit 37**.  The text messages summarized in the article included a reported exchange dated March 26, 2020 in which Maldonado de Jesús stated "[t]he virus was productive," to which Rodríguez López replied "[t]oo many millions for a single Puerto Rican."  *Id.* at 2.

81.     On May 20, 2020, *The Weekly Journal* published additional text messages between Rodríguez López and Maldonado de Jesús.  *See* **Exhibit 35**.  According to the article, these messages indicated Rodríguez López and Maldonado de Jesús were in contact with Alex López, the Governor's legislative advisor, and Thomas Rivera Schatz, the President of the Puerto Rico

Senate and PNP party member, around the time the Government purportedly cancelled Apex's $38 million contract.

82.     According to the article, in one such message on or after April 1, 2020, Rodríguez López informed Maldonado de Jesús that someone would put them in contact with Alex López. *Id.* at 2.  In another message sent shortly thereafter, according to the article, Rodriquez López wrote to Maldonado de Jesús, "Tommy (Rivera Schatz) asks who canceled the order.  Urgent." Maldonado de Jesús replied, "Mariel Rivera from [DOH] and Yara Torres from [PREMA]." *Id.*

83.     Moreover, according to *The Weekly Journal*'s May 20, 2020 story, "Rodríguez [López] reportedly denied to the representatives [on the Commission] that [the Governor] had canceled the Apex contracts, as was claimed at a press conference on April 16." *Id.* at 3.

84.     The Oversight Board is entitled to this information, as well as the Contract Documents, as requested in its letters set forth above, pursuant to PROMESA section 104(c).  The Oversight Board is also entitled to the Contract Documents, including the COVID-19 Contracts pursuant to the Executive Order, its Policy, and PROMESA section 204(b).  The Governor and AAFAF's failure to provide the information is unlawful and violates PROMESA.  As such, the Oversight Board in entitled to the relief set forth below.

## COUNT I

### MANDATORY PERMANENT INJUNCTION ORDERING THE GOVERNOR AND AAFAF TO SUBMIT ALL COVID-19 CONTRACTS ENTERED INTO BY THE COMMONWEALTH PURSUANT TO PROMESA § 204(b), THE POLICY, AND THE EXECUTIVE ORDER
### (PROMESA § 104(k))

85.     The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 84 above as if set forth in full herein.

86.     PROMESA section 204(b) provides the Oversight Board with the authority to review certain Government contracts prior to execution pursuant to policies established by the Oversight Board to ensure such contracts promote market competition and are not inconsistent with applicable fiscal plans.

87.     The Oversight Board established the Policy pursuant to PROMESA section 204(b) which requires Oversight Board review and approval of "[a]ll contracts or series of related contracts, inclusive of any amendments, modifications, or extensions, with an aggregate expected value of $10 million or more" prior to execution.  *See* **Exhibit 5** at 2.  Under the Policy, the Oversight Board may also select "in its sole discretion" contracts below $10 million for review "to assure that they promote market competition and are not inconsistent with the approved fiscal plan."  *Id*.

88.     The Executive Order requires any contract executed according to its provisions be remitted to the Oversight Board "on the date on which the same is executed" in order to permit the Oversight Board the ability to timely review the contracts under its Policy.  *See* **Exhibit 11** at 2.

89.     Defendants violated PROMESA section 204(b)(2), the Policy, and the Executive Order by failing to submit the COVID-19 Contracts on a timely basis to the Oversight Board for review.  *See* **Exhibits 5, 11**; PROMESA §§ 204(b)(2), (3).  Defendants have interfered with, and/or otherwise denied, the Oversight Board's right to review the COVID-19 Contracts.

90.     In so doing, Defendants are acting in contempt of PROMESA section 204(b)(2), the Policy, and the Executive Order by refusing to provide to the Oversight Board all of the COVID-19 Contracts.

91.     The Oversight Board seeks equitable relief in the form of a mandatory permanent injunction ordering Defendants to comply with PROMESA section 204(b), the Policy, and the Executive Order and provide the Oversight Board with all of the COVID-19 Contracts.

92.     The Oversight Board has exhausted all available extrajudicial avenues of redress to obtain the documents it seeks from Defendants.  Based on the clear and plain language of PROMESA section 204(b), the Policy, and the Executive Order, the Oversight Board is entitled to obtain the COVID-19 Contracts.

93.     In violation of PROMESA section 204(b)(2), the Policy, and the Executive Order, Defendants' actions (and inaction) are causing immediate irreparable harm to the Oversight Board and the Commonwealth.  Specifically, by refusing to comply with the Oversight Board's information requests, Defendants are undermining the Oversight Board's authority to review the COVID-19 Contracts to ensure they promote market competition, are not inconsistent with the approved fiscal plan, and increase the public's faith in the government contracting process.  *See* PROMESA § 204(b); *see also* **Exhibits 5, 11**.  Additionally, without a mandatory permanent injunction, the Oversight Board will be unable to review the COVID-19 Contracts, thereby further endangering the financial future of the Commonwealth and its residents and causing irreparable harm.

94.     There is no adequate remedy at law to compensate the Oversight Board or the Commonwealth for the injury caused by Defendants' actions.  Unless Defendants are ordered to comply with PROMESA section 204(b)(2), the Policy, and the Executive Order and provide the Oversight Board with the COVID-19 Contracts, Defendants will continue to undermine the Oversight Board's authority.  In addition, an award of monetary damages will not serve to compensate the Oversight Board or the Commonwealth for the injuries caused by the Defendants'

actions because monetary damages can provide no substitute for the documents the Oversight Board seeks. In addition, an award of monetary damages will only cause further harm to the people of Puerto Rico because the payment of any award would come out of the Commonwealth's resources making less money available for public programs.

95.     The balance of hardship favors the Oversight Board. Defendants will not be harmed by providing the Oversight Board with the COVID-19 Contracts. And Defendants' failure to do so will impinge on the Oversight Board's oversight authority.

96.     The public interest, as defined in PROMESA, would be well-served by the entry of a mandatory permanent injunction. In particular, an injunction, ordering Defendants to comply with PROMESA section 204(b)(2), the Policy, and the Executive Order and provide the Oversight Board with the COVID-19 Contracts, will allow the Oversight Board to ensure the COVID-19 Contracts promote market competition, are not inconsistent with the approved fiscal plan, and do not undermine the public's faith in the government contracting process.

97.     PROMESA section 104(k) permits the Oversight Board to "seek judicial enforcement of its authority to carry out its responsibilities" under PROMESA, including its right, notwithstanding any other provision of law, to review COVID-19 Contracts pursuant to PROMESA section 204(b).

98.     Therefore, the Oversight Board is entitled to a mandatory permanent injunction ordering Defendants to comply with PROMESA section 204(b)(2), the Policy, and the Executive Order and provide the Oversight Board with the COVID-19 Contracts in order to enable the Oversight Board to carry out its responsibilities under PROMESA.

## COUNT II

### MANDATORY PERMANENT INJUNCTION ORDERING THE GOVERNOR AND AAFAF TO COMPLY WITH THE OVERSIGHT BOARD'S DOCUMENT REQUESTS FOR THE CONTRACT DOCUMENTS PURSUANT TO PROMESA § 104(c), THE POLICY, AND THE EXECUTIVE ORDER
### (PROMESA § 104(k))

99.    The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 98 above as if set forth in full herein.

100.    Under PROMESA section 104(c), the Oversight Board has the "right to secure copies, whether written or electronic, of such records, documents, information, data, or metadata from the territorial government necessary to enable the Oversight Board to carry out its responsibilities under this Act."  The Governor and AAFAF, as the "head[s] of the entity of the territorial government responsible," *i.e.*, the Government of the Commonwealth of Puerto Rico, are required to provide the Oversight Board with the information requested pursuant to PROMESA § 104(c).

101.    Defendants have repeatedly failed to comply with their obligation under PROMESA section 104(c)(2) to provide the Oversight Board with the Contract Documents (as requested in its letters dated April 9, April 12, April 15, April 28, May 15, and May 29, 2020). While Defendants have produced a limited set of documents, the Oversight Board has explained in writing why the documentation is insufficient and does not provide the information sought by the Oversight Board.

102.    Defendants have interfered with, and/or otherwise denied, the Oversight Board's right to secure copies of records, documents, information, data, or metadata concerning the Contract Documents, including the COVID-19 Contracts, in violation of PROMESA section 104(c)(2).

25

103.    By not providing the Contract Documents, Defendants have breached their obligations to "provide the Oversight Board with such [requested] information and assistance . . . as the Oversight Board requires under [PROMESA § 104(c)(2)]."  PROMESA § 104(c)(2).

104.    In so doing, Defendants are acting in contempt of PROMESA section 104(c), the Policy, and the Executive Order by refusing to provide to the Oversight Board all of the Contract Documents.

105.    The Oversight Board seeks equitable relief in the form of a mandatory permanent injunction ordering Defendants to comply with PROMESA section 104(c)(2) and provide the Oversight Board with the Contract Documents.

106.    The Oversight Board has exhausted all available extrajudicial avenues of redress to obtain the Contract Documents it seeks from Defendants.  Based on the clear and plain language of PROMESA section 104(c), the Oversight Board is entitled to obtain the Contract Documents.

107.    In violation of PROMESA section 104(c)(2), Defendants' actions (and inaction) are causing immediate irreparable harm to the Oversight Board and the Commonwealth. Specifically, by refusing to comply with the Oversight Board's information requests, Defendants are undermining the Oversight Board's responsibility under PROMESA to ensure the COVID-19 Contracts promote market competition, are not inconsistent with the approved fiscal plan, do not undermine the public's faith in the government contracting process, and the terms of and process by which the COVID-19 Contracts were negotiated and consummated are transparent and do not reflect management inefficiencies PROMESA seeks to end.  *See* PROMESA §§ 204(b), 405(m). Additionally, without a mandatory permanent injunction, the review of the information requested will be further delayed, or otherwise impeded, thereby further endangering the financial future of the Commonwealth and its residents and causing irreparable harm.

26

108.    There is no adequate remedy at law to compensate the Oversight Board or the Commonwealth for the injury caused by the Defendants' actions.  Unless Defendants are ordered to comply with PROMESA section 104(c)(2) and provide the Oversight Board with (or grant direct access to) the Contract Documents, the Defendants will continue to undermine the Oversight Board's authority and responsibility under PROMESA.  An award of monetary damages will not serve to compensate the Commonwealth for the injuries caused by the Defendants' actions because monetary damages can provide no substitute for the documents the Oversight Board seeks.  In addition, an award of monetary damages will only cause further harm to the people of Puerto Rico because the payment of any award would come out of the Commonwealth's resources making less money available for public programs.

109.    The balance of hardship favors the Oversight Board.  Defendants will not be harmed by providing the Oversight Board with (or granting direct access to) the Contract Documents.  And Defendants' failure to do so will impinge on the Oversight Board's oversight authority.

110.    The public interest, as defined in PROMESA, would be well-served by the entry of a mandatory permanent injunction.  In particular, an injunction, ordering Defendants to comply with PROMESA section 104(c)(2) and provide the Oversight Board with (or grant direct access to) the Contract Documents, would allow the Oversight Board to ensure the COVID-19 Contracts promote market competition, are not inconsistent with the approved fiscal plan, do not undermine the public's faith in the government contracting process, and the terms of and process by which the COVID-19 Contracts were negotiated and consummated are transparent and do not reflect management inefficiencies PROMESA seeks to end.  *See* PROMESA §§ 204(b), 405(m).

111.    PROMESA section 104(k) permits the Oversight Board to "seek judicial enforcement of its authority to carry out its responsibilities" under PROMESA, including its right, notwithstanding any other provision of law, to secure copies, records, documents, information, data, or metadata from the Government.

112.    Therefore, the Oversight Board is entitled to a mandatory permanent injunction ordering Defendants to comply with PROMESA section 104(c)(2) and provide the Oversight Board with (or grant direct access to) the Contract Documents in order to enable the Oversight Board to carry out its responsibilities under PROMESA.

## COUNT III

**WRIT OF MANDAMUS COMPELLING THE GOVERNOR AND AAFAF TO FULFILL
MINISTERIAL DUTIES UNDER PROMESA § 104(c)
(32 .P.R.A. § 3421; 28 U.S.C. § 1367)**

113.    The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 112 above as if set forth in full herein.

114.    The Oversight Board seeks equitable relief in the form of a writ of mandamus compelling Defendants to comply with their ministerial duties and comply with PROMESA section 104(c)(2) and provide the Oversight Board with the Contract Documents, including the COVID-19 Contracts, in order to enable the Oversight Board to carry out its responsibilities under PROMESA, including to ensure the COVID-19 Contracts promote market competition, are not inconsistent with the approved fiscal plan, do not undermine the public's faith in the government contracting process, and the terms of and process by which the COVID-19 Contracts were negotiated and consummated are transparent and do not reflect management inefficiencies PROMESA seeks to end.  *See* PROMESA §§ 204(b), 405(m).

115.    Defendants have the power to provide such documents.

28

116.    Complying with the Oversight Board's requests under PROMESA section 104(c) are not discretionary acts for Defendants; rather, compliance is mandated by PROMESA.

117.    Other than obtaining the Contract Documents, including the COVID-19 Contracts from Defendants, the Oversight Board has no adequate remedy.

118.    Thus, the Oversight Board seeks a writ of mandamus to compel the Governor and AAFAF to fulfill their ministerial duties under PROMESA by providing the Contract Documents (as requested in the Oversight Board's letters dated April 9, April 12, April 15, April 28, May 15, and May 29, 2020), including the COVID-19 Contracts.

119.    The efforts by the Oversight Board to obtain the Contract Documents, including the COVID-19 Contracts, from Defendants have been met with Defendants' unlawful refusal to provide the requested information.

120.    The public interest will be served by the issuance of a writ of mandamus because access to the Contract Documents is vital to the Oversight Board's purpose under PROMESA, including ensuring the COVID-19 Contracts promote market competition, are not inconsistent with the approved fiscal plan, do not undermine the public's faith in the government contracting process, and the terms of and process by which the COVID-19 Contracts were negotiated and consummated are transparent and do not reflect management inefficiencies PROMESA seeks to end.  *See* PROMESA §§ 204(b), 405(m).

121.    Mandamus is an appropriate writ to assure the Governor and AAFAF exercise their nondiscretionary legal duties to provide the information requested by the Oversight Board.

122.    Therefore, the Oversight Board is entitled to a writ of mandamus compelling the Governor and AAFAF to fulfill their ministerial duties under section 104(c)(2) of PROMESA.

## PRAYER FOR RELIEF

WHEREFORE the Oversight Board prays that Judgment be entered for the Oversight Board and against Defendants, and for the following relief:

A.     A mandatory permanent injunction compelling the Governor and AAFAF to comply with the Oversight Board's requests for the Contract Documents as requested in its letters dated April 9, April 12, April 15, April 28, May 15, and May 29, 2020, including the COVID-19 Contracts;

B.     A writ of mandamus, ordering the Governor and AAFAF to fulfill their legal obligation under PROMESA and to immediately provide to the Oversight Board the Contract Documents, including the COVID-19 Contracts, or to provide a representative of the Oversight Board onsite access to AAFAF, DOH, PREMA, and OMB's information systems; and

C.     Granting the Oversight Board such further relief, in law and/or equity, as is just and proper.

Dated: June 8, 2020
San Juan, Puerto Rico

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner  (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Hadassa R. Waxman (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
         sratner@proskauer.com
         tmungovan@proskauer.com
         hwaxman@proskauer.com

*/s/ Guy Brenner*
Guy Brenner (*pro hac vice*)
**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel:     (202) 416-6800
Fax:     (202) 416-6899
Email:  gbrenner@proskauer.com

## VERIFICATION

I am the Executive Director of the Financial Oversight and Management Board for Puerto Rico.  I have read the foregoing Complaint and know the contents thereof, and, based on my personal knowledge, I verify under penalty of perjury that the same are true and correct.

Executed on June 8, 2020

Natalie A. Jaresko
Executive Director
Financial Oversight and Management Board
for Puerto Rico