<u>CERTIFIED TRANSLATION</u>                                            BY OLGA M. ALICEA, FCCI, NJITCE-S

Legislature

## Juan Maldonado invokes the Fifth Amendment

*During his testimony before the House of Representatives, he accepted that APEX did not have a contract with the test distributor when he did business with the Department of Health.*

**By:** Adriana De Jesús Salamán ✉
**Posted:** May 11, 2020  04:16 PM
**Updated:** May 11, 2020 09:05 PM



The former director of the Maritime Transport Authority and attorney Juan Maldonado served as liaison between the Apex General Contractors company and the government.
Photo: Nahira Montcourt

When Apex General Contractors (APEX) submitted a proposal for available products available to the Department of Health to address the coronavirus COVID-19 emergency, it did not yet have a contractual relationship with who was supposed to provide it with the inventory of that merchandise, according to its representative, attorney Juan Maldonado de Jesús.

APEX is the company contracted for the failed purchase of one million rapid tests to detect COVID-19 for $38 million, even though the corporation did not have experience selling health products, rather in construction.

Maldonado de Jesús revealed this and other inconsistencies during his testimony under oath before the Commission on Health of the House of Representatives, during which he pled under the Fifth Amendment of the Constitution of the United States, when asked

<u>*CERTIFIED TRANSLATION*</u>               BY OLGA M. ALICEA, FCCI, NJITCE-S

about the signature that appears in one of the documents required to process the millions of dollars purchase order with the Government of Puerto Rico.

The deponent reported that, prior to signing the agreement with the pertinent agencies, a corporate resolution was issued to allow businessman Aaron Vick to become the person authorized to sign emergency contracts on behalf of APEX.

When asked whether the resolution, which he notarized, was signed in his presence by APEX President Robert Rodríguez, Maldonado de Jesús invoked the Fifth Amendment. For government contracting purposes, corporate resolutions must be notarized.

"I invoke the Fifth Amendment and my right to not incriminate myself," the attorney replied, when being deposed under oath.

Maldonado de Jesús was accompanied by his attorney, Mayra López Mulero.

What the person who invokes the Fifth Amendment of the Constitution of the States asks is that his testimony not be used against him in a possible criminal process.

The position of Puerto Rican Independence Party (PIP) Representative Denis Márquez Lebrón, and of the president of the Commission on Health Juan Oscar Morales Rodríguez, of the New Progressive Party (NPP), is that Maldonado de Jesús violated Articles 2 and 60 of the Notarial Act, as well as the Canons 18, 35, and 38 of the Attorneys Canon of Ethics.

In the representatives' opinion, APEX' contract with the government is void because the resolution was not completed in accordance with current laws. However, Maldonado de Jesús argued that the contract would not be void on its face, but voidable.

Maldonado de Jesús met and established a friendship with Vick when he directed the Maritime Transport Authority (MTA). At that time, Vick acted as contractor of the agency through the Fortress Maritime company.

**Read also**: Australian company was deceptive about its relationship with Apex and rapid tests order

Vick is the one who appears as a signatory in the contract with the General Services Administration (GSA), the agency that centralizes purchases by law, as processed in this case by Health and the Emergency Management and Disaster Administration Bureau (NMEAD, *by its Spanish acronym*). Eventually the company returned the advance payment of $19 million received for the tests that would be shipped to the Island by an Australian supplier.

<u>CERTIFIED TRANSLATION</u>         BY OLGA M. ALICEA, FCCI, NJITCE-S

"Sometimes using an American last name works better. Second, Mr. Vick's specialty is everything having to do with logistics and we consider that given the emergency, if we needed someone to physically go and bring the shipment, he was the person," explained Maldonado de Jesús.

The attorney and former CEO of the MTA added that he did not want to use his own name in the transaction because he tries to "take a back seat" in his interactions with the government, so that they do not "torpedo" his efforts for political reasons. Maldonado de Jesús resigned from his position at the MTA in February 2019 and he reiterated during the hearing that he is a member of the NPP.

At the public hearing, Maldonado de Jesús pointed out that Vick would generate a type of profit from this transaction, but he could not specify a figure because, in his opinion, that information was covered by the attorney-client relationship.

If the deal had been completed, Maldonado de Jesús would have received a slice, since he confirmed that APEX's profit margin in this deal was close to $10 million (or 27 percent of the total).

"False representations" everywhere

Based on his testimony, Maldonado de Jesús made a false representation to Health by ensuring that the million tests to detect COVID-19 were already in the United States, although he was not aware through his own personal knowledge.

However, that affirmation was based on the misinformation offered by the intermediary company, 501 Nutrition, whose existence was not mentioned to Health either. The corporation sent them a video with the products in a warehouse.

"We represent what is represented to us," exclaimed Maldonado de Jesús.



Ms. Mayra López Mulero is Juan Maldonado's lawyer.
Photo: Nahira Montcourt

*Translation page 3 of 5*

*CERTIFIED TRANSLATION*    BY OLGA M. ALICEA, FCCI, NJITCE-S

The 501 Nutrition company is based in the state of Arizona, however, the products in its catalog would come from Australia, through a company called Promedical Equipment.

Contact with this company came through Troy King, whom he did not describe nor did he explain where he knows him from. The relationship came about in a conference call among King, William Tress, another person about whom he did not enter into detail, and Andrew Bochel, the authorized 501 Nutrition distributor.

In his deposition, Maldonado de Jesús pointed out that by March 26 – the date on which he sent the proposal of available products to Health – he did not yet have a contractual relationship with 501 Nutrition, which would supply the products to APEX, but "the representation that they had given to us" is that APEX would be the exclusive local distributor.

"We did the typical necessary 'due diligence' [due process] within the emergency situation, we verified the distributor, that they did business previously with the Government of Puerto Rico, [the information] about Promedical, inquiry was made and the evidence of the product, which was made available to the Commission on Health, and the merchandise that was ready to be delivered," declared Maldonado de Jesús.

According to Maldonado de Jesús, the representation and understanding between the parties was that if the payment arrived on the agreed upon date, the shipment could arrive from Puerto Rico to Australia in less than five days.

"We made it clear to the Department of Health that the delivery date that was being given was at the airport, so we anticipated that there was a delay in releasing the product. I discussed that with Mariel [Rivera]. It seems to me that this is in writing in one of the documents," said Maldonado of Jesús.

However, the attorney reiterated that Mariel Rivera, the procurement analyst from Health, asked APEX to halt the process that had already been set off because the public agency wanted to reevaluate the purchase.

This request came up on March 31, the date by which the company had already committed to deliver the cargo, thus it does not explain the reason for the delay in the delivery. Days later, although they were in constant communication, according to Maldonado de Jesús, the contract was canceled due to breach.

Maldonado de Jesús detailed that he had three written communications with General José Burgos, NMEAD commissioner, where he specified that a no time was it required of APEX that the serology tests that would be provided have the approval of the Federal Food and Drug Administration (FDA).

<u>CERTIFIED TRANSLATION</u>                                          BY OLGA M. ALICEA, FCCI, NJITCE-S

In the reason for the cancellation, Burgos had indicated that it was due to the non-compliance with the FDA requirement and for not being delivered on time.

In the same way, Maldonado de Jesús stressed that after the contractual relationship with the government was agreed, and in order to seek alternate options to comply with what was promised deliver, he offered tests of other providers at $7, $12, and $18 each, compared to the $38 per unit the government paid for the first order of one million.

Maldonado de Jesús said that the final cancellation occurred on April 3. However, Representative Morales Rodríguez assured that the Commission on Health has emails that indicate that the Department of the Treasury had already initiated the processes to those ends since April 1.

To be contracted, APEX went through a chain that started with an initial contact by Maldonado de Jesús to former legislative adviser Eduardo "Tito" Laureano, who connected him with the director of the Medical "Task Force" to advise on this emergency, Dr. Segundo Rodríguez Quilichini.

From there, the doctor sent him the contact of Mabel Cabeza Rivera, whom he identified as head of personnel at Health. Maldonado de Jesús then contacted Laureano again, who connected him to Dr. Roberto Rosso.

Subsequently, Cabeza Rivera informed him that his information would be processed with the then assistant secretary of Health, Adil Rosa Rivera and procurement analyst Rivera Rivera.

**[Photo] Adriana De Jesus Salamán**
> Journalist who covers government, court and political issues. She is also interested in sports, movies and music.  She is a former student of the University of Puerto Rico, Río Piedras Campus.

© 360 TELECOM CORPORATION

---

**CERTIFICATION**

I, Olga M. Alicea, an English-Spanish Interpreter and Translator certified to that effect by the Administrative Office of the U.S. Courts and by the National Association of Judiciary Interpreters & Translators (NAJIT), do hereby certify that I have personally translated the foregoing document from Spanish to English and that the translation is true and accurate to the best of my knowledge and abilities.

| S/ Olga M. Alicea | May 31, 2020 |
|---|---|
| Olga M. Alicea, FCCI, NJITCE-S | Date |
| Fed. Cert. No. 98-005 | Ref.: P1701.841(CGB) |