## NATBONY REPLY DECLARATION
## EXHIBIT 21 - PART 1

CONFIDENTIAL

1

```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF PUERTO RICO


--------------------------- X
In re:                     :
                           : PROMESA
THE FINANCIAL OVERSIGHT    : TITLE III
AND MANAGEMENT BOARD       :
FOR PUERTO RICO,           : Case No.
                           : 17 BK 3283-LTS
   as representative of    :
                           : (Jointly
THE COMMONWEALTH OF        :  Administered)
PUERTO RICO,               :
                           :
        Debtor.            :
--------------------------- X
In re:                     :
                           : PROMESA
THE FINANCIAL OVERSIGHT    : TITLE III
AND MANAGEMENT BOARD       :
FOR PUERTO RICO,           : Case No.
                           : 17 BK 3567-LTS
   as representative of    :
                           :
THE COMMONWEALTH OF        : CONFIDENTIAL
PUERTO RICO, et al.,       : PURSUANT TO
                           : PROTECTIVE ORDER
        Debtor.            :
--------------------------- X VOL. I OF II
```

        Videotaped deposition of TIMOTHY H.

AHLBERG, conducted virtually, pursuant to the

Federal Rules of Civil Procedure for the United

States District Courts pertaining to the taking

of depositions, reported stenographically by

Cynthia J. Conforti, CSR, RPR, CRR, commencing

at the hour of 9:30 a.m. CST, on the 21st day

of April, 2020.

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

2 (Pages 2 to 5)

**2**

A P P E A R A N C E S :
FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, as representative of the
COMMONWEALTH OF PUERTO RICO:
    PROSKAUER ROSE LLP
    Eleven Times Square
    (Eighth Avenue & 41st Street)
    New York, New York 10036-8299
    212.969.3000
    BY:  DAVID A. MUNKITTRICK, ESQ.
    dmunkittrick@proskauer.com
    MICHAEL T. MERVIS, ESQ.
    mmervis@proskauer.com

    BY:  ELLIOT STEVENS, ESQ.
    estevens@proskauer.com
    One International Place
    Boston, Massachusetts 02110-2600
    617.526.9600

FOR AMBAC ASSURANCE CORPORATION:
    MILBANK LLP
    55 Hudson Yards
    New York, New York 10001-2163
    212.530.5000
    BY:  CAELAINN CARNEY, ESQ.
    ccarney@milbank.com
    WILL DENKER, ESQ.
    wdenker@milbank.com
    JOHN HUGHES, ESQ.
    jughes2@milbank.com
    KEVIN MAGGIO, ESQ.
    kmaggio@milbank.com
    GRANT MAINLAND, ESQ.
    gmainland@milbank.com
    DAVID MARCOU, ESQ.
    dmarcou@milbank.com
    ATARA MILLER, ESQ.
    amiller@milbank.com
    ALEXANDRA PASLAWSKY, ESQ.
    apaslawsky@milbank.com
    KEVIN WESTERMAN, ESQ.
    kwesterman@milbank.com

**4**

A P P E A R A N C E S :  (Continued)
    MARINI PIETRANTONI MUÑIZ LLC
    250 Avenue Ponce de Leon
    Suite 900
    San Juan, Puerto Rico 00918
    787.705.2171
    BY:  IVÁN GARAU GONZÁLEZ, ESQ.
    igarau@mpmlawpr.com

ON BEHALF OF ASSURED GUARANTY CORP. and ASSURED
GUARANTY MUNICIPAL CORP.:
    CADWALADER, WICKERSHAM & TAFT LLP
    200 Liberty Street
    New York, New York 10281
    212.504.6000
    BY:  THOMAS J. CURTIN, ESQ.
    thomas.curtin@cwt.com
    BILL NATBONY, ESQ.
    bill.natbony@cwt.com
    CASEY JOHN SERVAIS, ESQ.
    casey.servais@cwt.com
    JACLYN A. HALL, ESQ.
    jaclyn.hall@cwt.com

FOR FINANCIAL GUARANTY INSURANCE COMPANY:
    BUTLER SNOW LLP
    The Pinnacle at Symphony Place
    Suite 1600
    150 3rd Avenue South
    Nashville, Tennessee 37201
    615.651.6700
    BY:  JASON W. CALLEN, ESQ.
    jason.callen@butlersnow.com
    BY:  ADAM M. LANGLEY, ESQ.
    adam.langley@butlersnow.com
    6075 Poplar Avenue
    Suite 500
    Memphis, Tennessee 38119
    901.680.7200

**3**

A P P E A R A N C E S :  (Continued)

FOR NATIONAL PUBLIC FINANCE GUARANTEE CORP.:

    WEIL GOTSHAL & MANGES LLP

    767 Fifth Avenue
    New York, New York 10153-0119
    212.310.8000
    BY:  ROBERT S. BEREZIN, ESQ.
    robert.berezin@weil.com
    CHRISTINE CALABRESE, ESQ.
    christine@calabrese@weil.com
    CAROLYN DAVIS, ESQ.
    carolyn.davis@weil.com
    GASPARD RAPPOPORT, ESQ.
    gaspard.rappoport@weil.com

FOR THE PUERTO RICO FISCAL AGENCY AND FINANCIAL
ADVISORY AUTHORITY:

    O'MELVENY & MYERS LLP

    1625 Eye Street, NW
    Washington, DC 20006
    202.383.5300
    BY:  MOSHE A. FINK, ESQ.
    mfink@omm.com
    PETER FRIEDMAN, ESQ.
    pfriedman@omm.com

    BY:  ELIZABETH L. McKEEN, ESQ.
    emckeen@omm.com
    ASHLEY PAVEL, ESQ.
    apavel@omm.com
    JOSEPH L. ROTH, ESQ.
    jroth@omm.com
    610 Newport Center Drive
    17th Floor
    Newport Beach, California 92660
    949.823.6900
    - also -

**5**

A P P E A R A N C E S :  (Continued)

FOR CANTOR-KATZ COLLATERAL MONITOR LLC, as
Collateral Monitor for GDB DEBT RECOVERY
AUTHORITY:

    ORRICK, HERRINGTON & SUTCLIFFE LLP

    51 W 52nd Street
    New York, New York 10019
    212.506.5000
    BY:  DAVID LITTERINE-KAUFMAN, ESQ.
    dlitterinekaufman@orrick.com

FOR THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS:

    PAUL HASTINGS LLP

    MetLife Building
    200 Park Avenue
    New York, New York 10166
    212.318.6000
    BY:  ZACHARY S. ZWILLINGER, ESQ.
    zacharyzwillinger@paulhastings.com

FOR AMERINATIONAL COMMUNITY SERVICES, LLC, as
servicer for the GDB DEBT RECOVERY AUTHORITY:
    MCCONNELL VALDÉS LLC
    270 Muñoz Rivera Avenue
    Hato Rey, Puerto Rico 00918
    787.759.9292
    BY:  NAYUAN ZOUAIRABANI TRINIDAD, ESQ.
    nzt@mcvpr.com
ALSO PRESENT:
    Hira Baig, Weil Gotshal & Manges LLP
    Alexa Savino, Milbank LLP
    Alexander Whitelaw, Weil Gotshal & Manges LLP
    Anthony Micheletto, Videographer

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

3 (Pages 6 to 9)

---

**6**

INDEX

TESTIMONY OF TIMOTHY H. AHLBERG          PAGE

Examination by Mr. Natbony:          13

DEPOSITION EXHIBITS

| NUMBER | MONOLINE | INTRODUCED |
|--------|----------|-----------|
| Exhibit 1 | 23 | |
| Exhibit 2 | 25 | |
| Exhibit 3 | 27 | |
| Exhibit 4 | 44 | |
| Exhibit 5 | 47 | |
| Exhibit 6 | 76 | |
| Exhibit 7 | 80 | |
| Exhibit 8 | 98 | |
| Exhibit 9 | 108 | |
| Exhibit 10 | 111 | |
| Exhibit 11 | 115 | |
| Exhibit 12 | 120 | |
| Exhibit 13 | 122 | |
| Exhibit 14 | 140 | |
| Exhibit 15 | 162 | |
| Exhibit 16 | 173 | |
| Exhibit 17 | 187 | |
| Exhibit 18 | 208 | |

** EXHIBITS RETAINED BY ATTORNEY NATBONY **

---

**7**

1          THE VIDEOGRAPHER:  We are now on
2     the record.
3          Welcome to the deposition of
4     Timothy H. Ahlberg.  My name is Anthony
5     Micheletto.  I'm the videographer and the
6     conference call host for Henderson Legal
7     Services.  Today's date is April 21, 2020.  The
8     time is 9:42 a.m.
9          It's my understanding that there
10    are approximately 44 attorneys attending
11    telephonically.  Please keep disruptions at a
12    minimum.  I will be muting all telephones
13    except the witness, taking attorney and
14    opposing counsel, who will dial *6 so they can
15    be heard.
16          In addition, if you are not
17    speaking, please make sure you turn off your
18    camera on the LiveLitigation.  You should
19    receive the video stream through your computer
20    and audio through your phone.  Periodically,
21    during your break, I will communicate to
22    everyone how long we have been on the record.
23          Our court reporter today is
24    Cynthia Conforti.  Please read the
25    stipulations.

---

**8**

1          THE REPORTER:  There is an agreed
2     stipulation, so I am swearing the witness over
3     the video conference.
4          Can you raise your right hand,
5     please, sir?
6          MR. NATBONY:  I think we've
7     reached standard stipulations that we've agreed
8     and that have been exchanged by the parties,
9     right?
10          THE REPORTER:  Yes.
11          MS. McKEEN:  That's correct.
12          THE REPORTER:  Can everybody --
13          MR. NATBONY:  Standard
14    stipulations apply, right?
15          MS. McKEEN:  I'm unsure what
16    standing stipulations you may have.
17          (Simultaneous speaking.)
18          THE REPORTER:  There was a
19    stipulation that I received yesterday from
20    Henderson that I will be swearing the witness
21    over the video conference.
22          Can you raise your right hand,
23    sir.
24          (Witness sworn.)
25          THE WITNESS:  I do.

---

**9**

1          THE REPORTER:  Thank you.
2          MR. NATBONY:  Thank you.  And,
3     Ms. McKeen, I'm just confirming that we have
4     three stipulations that we've agreed to, one
5     relating to authenticity of certain documents,
6     the other relating to deposition logistics, and
7     the other relating to cash restriction analysis
8     issues, correct?
9          MS. McKEEN:  I believe we have
10    agreed with you to the stipulation regarding
11    the deposition logistics.
12          I believe the parties are still in
13    the process of commenting on the stipulation
14    regarding the authenticity of documents and
15    regarding the cash restriction analysis.
16          I don't think those stipulations
17    have been agreed upon yet.  I believe the
18    parties are in the process of reaching an
19    agreement.
20          MR. NATBONY:  Okay.  Is it fair to
21    say that we don't anticipate any issues on
22    those drafts with respect to general
23    authenticity issues and the general assumptions
24    on cash restriction?
25          MS. McKEEN:  So, with respect to

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

4 (Pages 10 to 13)

---

**10**

1  the stipulation regarding the authenticity of
2  documents, my understanding is that the parties
3  appear to have reached sufficient agreement
4  regarding the core concepts embodied in that
5  stipulation, that we shouldn't have any issue
6  proceeding with the deposition, and that any
7  issues that remain outstanding can be resolved
8  after the deposition.
9          With respect to the cash
10 restriction stipulation, that's in Proskauer's
11 hands, so I would ask Mr. Mervis to unmute
12 himself and speak to that, please.
13         MR. MERVIS:  Sure.  So I think --
14 can you hear me?
15         MS. McKEEN:  Yes.
16         MR. MERVIS:  Great.
17         So I think the answer, Bill, is
18 that we would agree with the stipulation that
19 we sent to you.  We don't necessarily agree
20 with the markup, but I haven't had time to run
21 it up the flag pole internally.  But I think --
22 and maybe this will help.  The -- the
23 assertions or the statements in that
24 stipulation about what the document says and
25 the assumptions that apply, those are -- those

---

**11**

1  are, in fact, representations of the board, if
2  that helps.  So that -- I think that's as far
3  as I can get today.
4          MR. NATBONY:  Okay.  Thank you,
5  Mike.  My guess if there are --
6          MR. MERVIS:  Sorry, Bill, before I
7  mute myself, can we just agree, so there's
8  not -- any objections that an objection by Liz
9  will be valid as to the Oversight Board as
10 well?
11         MR. NATBONY:  I have no problem
12 with that.
13         MR. MERVIS:  Thanks.
14         MR. NATBONY:  And just as far as
15 authenticity, though, I don't anticipate any
16 issues.  If we have some disagreement, we are
17 just going to reserve any rights that we have
18 to reopen if necessary, but I don't see an
19 issue arising.
20         Okay.  Well, good morning,
21 everybody.  I hope everybody is safe
22 and getting through these difficult times.
23 My name is William Natbony, from
24 the law firm of Cadwalader, Wickersham & Taft,
25 counsel for Assured in this case.  I'll be

---

**12**

1  asking some questions today on behalf of the
2  movants, the Monolines.
3          My questions will first be of a
4  general nature and then focus on HTA.  Others
5  of my colleagues will be asking questions
6  relating to CCDA.
7          So, first, let me recognize on the
8  record that all appearing counsel and the
9  witness are at separate locations due to the
10 obvious difficult circumstances.  The
11 deposition is being conducted remotely.  I hope
12 we can all be cognizant of the entire technical
13 difficulties this brings.  Let's all try not to
14 talk over each other, treat each other with
15 professional courtesy so we can all get through
16 this sufficiently and expeditiously as
17 reasonably as possible.
18         As to exhibits, when I refer to an
19 exhibit, my colleague Jaclyn Hall will be
20 marking it and immediately publishing it to all
21 participants, each of whom can access and
22 review the document independently by retrieving
23 the documents from the submitted documents
24 grouping on the system.
25         During any questioning concerning

---

**13**

1  an exhibit, the document should appear on
2  everyone's screen as well.  Both the witness
3  and the questioner will have the opportunity to
4  control scrolling through and magnifying the
5  document on the screen.  Meanwhile, everyone
6  will see on the screen what the witness is
7  seeing.
8          TIMOTHY H. AHLBERG,
9  having been duly sworn, was examined and
10 testified as follows:
11             EXAMINATION
12 BY MR. NATBONY:
13     Q.     So good morning to the witness.
14 Could you please state your name for the
15 record.
16     A.     Good morning.  My name is Timothy
17 Ahlberg.
18     Q.     Have you ever been deposed before?
19     A.     No.
20     Q.     Have you ever given trial
21 testimony before?
22     A.     No.
23     Q.     Do you understand today that you
24 are testifying under oath?
25     A.     Yes.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

5 (Pages 14 to 17)

---

**14**

1    Q.    You understand that -- is there
2    anything that would prevent you from doing
3    that, for example, taking any medications of
4    any sort?
5    A.    No.
6    Q.    So let's start with a few
7    preliminary instructions. So today I'm going
8    to ask you some questions. If at any point you
9    don't understand a question, let me know, and I
10   will try and rephrase, okay?
11   A.    Okay.
12   Q.    And please try to answer all
13   questions verbally so your answers will be
14   picked up by the court reporter even though we
15   are on video. Please wait until I finish the
16   question, and I'll try, and wait for your
17   answer to be completed so that the court
18   reporter and videographer can take down a clean
19   record, okay?
20   A.    Okay.
21   Q.    Now, I understand today that you
22   are here representing several entities, so I am
23   going to assume that your answers are on behalf
24   of all of the entities unless you advise
25   differently, okay?

---

**15**

1    A.    Okay.
2    Q.    And you're here today testifying
3    on behalf of The Commonwealth of Puerto Rico,
4    correct?
5    A.    Correct.
6    Q.    And you're also here today
7    representing the Puerto Rico Highways and
8    Transportation Authority, otherwise known as
9    HTA?
10   A.    Correct.
11   Q.    And you're also here today
12   representing The Puerto Rico Tourism Company?
13   A.    Correct.
14   Q.    And you're also here today
15   representing the Puerto Rico Infrastructure
16   Financing Authority, otherwise known as PRIFA?
17   A.    Correct.
18   Q.    Okay. You might hear some
19   objections made after questions that I ask.
20   You are required to answer the question, even
21   though objections are made, unless your
22   attorney directs you to not answer the
23   question. Do you understand that?
24   A.    Yes.
25   Q.    And who is representing you today

---

**16**

1    in this deposition?
2    A.    Elizabeth McKeen.
3    Q.    Now, if you need a break, let me
4    know, and I will accommodate you as soon as
5    possible but not in the middle of a question
6    unless you need to confer with counsel
7    regarding a privilege issue. Is that
8    understood?
9    A.    Understood.
10   Q.    Do you speak Spanish?
11   A.    I do speak Spanish.
12   Q.    And do you read Spanish?
13   A.    I do read Spanish.
14   Q.    Do you consider yourself fluent in
15   Spanish and able to understand documents that
16   are written in Spanish?
17   A.    I consider myself to be
18   professionally proficient but by no means
19   consider myself bilingual.
20   Q.    Okay. Do you understand
21   accounting terms in Spanish?
22   A.    Generally, yes.
23   Q.    I'm going to go over some
24   definitions with you just to make sure that
25   we're on the same page.

---

**17**

1    When I refer to the Commonwealth,
2    I'll be referring to the Commonwealth of
3    Puerto Rico, okay?
4    A.    Okay.
5    Q.    And if I refer to AAFAF,
6    A-A-F-A-F, I'll be referring to the Puerto Rico
7    Fiscal Agency and Financial Advisory Authority,
8    okay?
9    A.    Okay.
10   Q.    And if I refer to the FOMB,
11   F-O-M-B, or the Oversight Board, I'll be
12   referring to the Financial Oversight and
13   Management Board for Puerto Rico, okay?
14   A.    Okay.
15   Q.    And if I refer to HTA, I'll be
16   referring to the Puerto Rico Highways and
17   Transportation Authority, okay?
18   A.    Okay.
19   Q.    If I use the term "pledged
20   revenues," for HTA, I will be using that word
21   to include toll revenues and excise taxes,
22   which would include taxes on gasoline, diesel,
23   crude oil, cigarettes and other special excise
24   taxes elected by the Commonwealth including
25   motor vehicle licenses. Do you understand how

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

6 (Pages 18 to 21)

---

**18**

1    I use the term?
2        A.    I understand how you use the term.
3        Q.    And if I use the words "flow of
4    funds," I'll be referring to the path,
5    including deposits and transfers into and out
6    of any account or Fund relating to their
7    collection by the Commonwealth.  Do you
8    understand that?
9        A.    I understand that as your
10   definition of flow of funds.
11       Q.    Thank you.
12             What did you do generally to
13   prepare for this deposition?
14       A.    Generally to prepare for this
15   deposition --
16       Q.    Without revealing communications
17   with your counsel.
18       A.    I'm sorry.  Could you repeat that?
19       Q.    Without revealing any
20   communications with your counsel.
21       A.    Okay.  Excluding dealings with
22   counsel, that was just confirming you -- the
23   question again.
24       Q.    Let me rephrase.
25             What did you do generally to

---

**19**

1    prepare for this deposition, but I'm not asking
2    you to reveal communications you had with your
3    counsel.
4        A.    Okay.  Thank you for clarifying.
5        Q.    Sure.
6        A.    Generally preparations included
7    conversations with employees at the relevant
8    entities and agencies, conversations as well as
9    phone calls, in-person review of bank
10   statements, transfer details, et cetera.
11       Q.    Did you have any conversations or
12   meetings with employees of agencies without
13   counsel present?
14       A.    Not in preparation for this
15   deposition.
16       Q.    Okay.  Who were the employees at
17   the various agencies that you either met with
18   or spoke with in preparation for deposition?
19       A.    There were various.  Would you
20   mind being specific to one entity?
21       Q.    Sure.  For the Commonwealth.
22       A.    For the Commonwealth, the main
23   points of contacts would have been Jehra Pelle
24   (phonetic) the auxiliary subsecretary of the
25   Department of Treasury of Puerto Rico, as well

---

**20**

1    as Hector Gomez, who works in the Treasury area
2    at the direction of Jehra.
3        Q.    And who -- which employees of HTA
4    did you meet with or have conversations with in
5    preparation for the deposition?
6        A.    HTA, that would be Sergio, I think
7    his last name is Gonzalez, as well as -- and
8    he's in a managerial position at HTA as well as
9    Angel Bulik, who works in the accounting
10   department at HTA in addition to Rebecca.
11   Those are the ones I can remember off the top
12   of my head.
13       Q.    Thank you.
14             And which employees did you have
15   meetings or discussions with in preparation for
16   this deposition from the Puerto Rico Tourism
17   Company?
18       A.    The main point of contact for the
19   Department of Tourism that I worked with was a
20   man named Gustavo.  His last name eludes me at
21   the moment.
22       Q.    And how about with respect to
23   PRIFA?
24       A.    The main contact there would have
25   been a woman named Sylvia.

---

**21**

1        Q.    Approximately how much time do you
2    think you spent preparing for this deposition
3    in these meetings and discussions in total?
4        A.    Without, you know, reviewing
5    specific time entries and everything, I would
6    estimate between, you know, 20, 20 to -- 20 to
7    30 hours generally.
8        Q.    Aside from the meetings that you
9    had with various representatives of the
10   agencies and with counsel, did you do anything
11   on your own to prepare for the deposition?
12       A.    Yes.
13       Q.    What did you do?
14       A.    I helped in a lot of the document
15   production as well as putting together the Flow
16   of funds documents that we -- that you should
17   be familiar with, I believe.  A lot of my time
18   was spent in diligencing those presentations
19   and making sure that we had the flow of funds
20   accurately recorded.
21       Q.    And then when you say you helped
22   with document production, what do you mean by
23   that?
24       A.    Helping with document production
25   became a lot of things.  It could just mean

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

7 (Pages 22 to 25)

| 22 | 24 |
|---|---|
| 1 pointing someone in the direction of a right<br>2 context to ask for documents.<br>3     Q.   Were you involved in determining<br>4 what documents to look for in response to the<br>5 movant's document requests?<br>6     **A.**   **I was not specifically tasked with**<br>7 **determining every piece of information or not**<br>8 **to produce.**<br>9     Q.   Is it fair to say that you worked<br>10 with counsel in determining what documents<br>11 would be produced?<br>12     **A.**   **Certainly I would have spoken with**<br>13 **counsel about documents that were being**<br>14 **produced.**<br>15     Q.   That would be on behalf of each of<br>16 the entities that you're here today<br>17 representing?<br>18     **A.**   **That's correct.**<br>19     Q.   Do you have any documents with you<br>20 today that you intend to make reference to<br>21 during your testimony?<br>22     **A.**   **No.**<br>23     Q.   Do you have any notes in front of<br>24 you?<br>25     **A.**   **No.** | 1 language in the document (indiscernible).<br>2 BY MR. NATBONY:<br>3     Q.   Do you see the sentence that<br>4 starts that "AAFAF has not located"?<br>5     **A.**   **I do see that sentence.**<br>6     Q.   Okay. What is your understanding<br>7 of that statement?<br>8     MS. McKEEN: Objection.<br>9     THE WITNESS: I don't know. I'm<br>10 not an attorney. I did not draft this letter.<br>11 BY MR. NATBONY:<br>12     Q.   Well, do you know what documents<br>13 the -- AAFAF was looking for with respect to<br>14 this particular statement?<br>15     **A.**   **The document says that it has not**<br>16 **located records that map to the account**<br>17 **designations found in the bond document.**<br>18     Q.   And what were the entities<br>19 particularly looking for, what kinds of<br>20 documents?<br>21     MS. McKEEN: Objection.<br>22     THE WITNESS: That's not clear to<br>23 me from this document.<br>24 BY MR. NATBONY:<br>25     Q.   Are you familiar with what efforts |

| 23 | 25 |
|---|---|
| 1     MR. NATBONY: If we could pull up<br>2 tab 39, let's mark that as Monoline Exhibit 1.<br>3     (Monoline Exhibit 1 is<br>4     introduced for the record.)<br>5     MR. NATBONY: Can you pull that<br>6 up? I don't see anything on the screen. Thank<br>7 you.<br>8 BY MR. NATBONY:<br>9     Q.   Do you see something on your<br>10 screen, Mr. Ahlberg?<br>11     **A.**   **Yes, I do see something.**<br>12     Q.   Okay. So directing your attention<br>13 to the first page of that document, fourth line<br>14 from the bottom, the document says:<br>15     AAFAF has not located records that<br>16 met the account designations found in the bond<br>17 documents for HTA -- and I'll do a dot, dot,<br>18 dot -- to corresponding deposit account<br>19 numbers.<br>20     Do you see that language?<br>21     **A.**   **Oh, where are you reading from?**<br>22     Q.   Fourth line from the bottom,<br>23 starts with the words "AAFAF has not located."<br>24     MS. McKEEN: Object to the form of<br>25 the question to the extent it belies other | 1 were made to locate these kinds of documents?<br>2     MS. McKEEN: Same objection.<br>3     THE WITNESS: I'm generally<br>4 familiar with the process to try and obtain<br>5 documents for this deposition.<br>6 BY MR. NATBONY:<br>7     Q.   I understand, but my particular<br>8 question is are you aware of what efforts were<br>9 made to look for documents that map the account<br>10 designations found in the bond documents to<br>11 corresponding deposit account?<br>12     MS. McKEEN: Object to the form.<br>13     THE WITNESS: I'm not aware of the<br>14 specific methodology used there.<br>15 BY MR. NATBONY:<br>16     Q.   Okay. Did you make any specific<br>17 inquiries with respect to these types of<br>18 documents with anyone at the agencies?<br>19     **A.**   **I personally did not.**<br>20     MR. NATBONY: Okay. Let's pull up<br>21 tab 1 and mark that as Exhibit 2.<br>22     (Monoline Exhibit 2 is<br>23     introduced for the record.)<br>24 BY MR. NATBONY:<br>25     Q.   Showing you what's been marked as |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

8 (Pages 26 to 29)

---

**26**

1  Monoline Exhibit 2, can you identify that
2  document?
3      A.    The text is actually too small for
4  me to read, but I do recognize this screen
5  shot.
6      Q.    I believe that you can magnify it
7  by using the controls at the bottom.  There
8  should be a magnifying glass that you can click
9  on.
10     A.    Yes, that works.  Thank you.
11     Q.    Does that help?
12     A.    Yes.
13     Q.    Do you recognize this document?
14 I'm sorry.
15     A.    Yes.
16     Q.    Is this your bio at your current
17 place of employment, Conway MacKenzie?
18     A.    Yes.
19     Q.    Were you involved in drafting this
20 bio?
21     A.    I was involved in drafting the
22 bio.
23     Q.    To the best of your knowledge,
24 does it accurately reflect your professional
25 experience?

---

**27**

1      A.    Would you allow me a minute to
2  review the document?
3      Q.    Of course.  You can also move to a
4  second page if there is one, though I believe
5  this is a one-page document.
6      A.    I finished reviewing.
7      Q.    And does this accurately reflect
8  your professional experience?
9      A.    It does, with the exception that I
10 no longer serve on the finance committee that
11 reports to the APPP Board of Trustees.
12     Q.    Thank you for that clarification.
13           Let's pull up tab 2 and mark that
14 as Monoline Exhibit 3.
15           (Monoline Exhibit 3 is
16           introduced for the record.)
17 BY MR. NATBONY:
18     Q.    Do you recognize this document as
19 your LinkedIn profile?
20     A.    Yes.
21     Q.    And you were involved in drafting
22 this profile?
23     A.    Yes.
24     Q.    And certainly I'll give you an
25 opportunity to look through it, but the

---

**28**

1  question is does it accurately reflect your
2  professional experience?
3      A.    Yes.
4      Q.    Okay.  Now, Mr. Ahlberg, you
5  attended undergraduate college at North Park
6  University School of Business in non-profit
7  management; is that correct?
8      A.    That's correct.
9      Q.    You attained a bachelor of science
10 degree, correct?
11     A.    Correct.
12     Q.    You took three semesters of MBA
13 coursework, correct?
14     A.    Correct.
15     Q.    Where was that?
16     A.    That was in Mexico, at the
17 Instituto Tecnológico y de Estudios Superiores
18 de Monterrey campus, Santa Fe.
19     Q.    Was that in person or online?
20     A.    In person in Mexico City.
21     Q.    How many courses per semester did
22 you take there?
23     A.    I can't recall specifically, but I
24 think two classes per semester.
25     Q.    Did you take any government

---

**29**

1  accounting or government funding courses while
2  you were there?
3      A.    Not while I was in -- taking MBA
4  classes.
5      Q.    Did you ever obtain a graduate
6  student degree?
7      A.    No.
8      Q.    Do you have any professional
9  licenses?
10     A.    No.
11     Q.    Any professional certifications?
12     A.    No.
13     Q.    You're not an attorney, correct?
14     A.    Correct.
15     Q.    Fair to say you have no formal
16 legal training?
17     A.    Correct.
18     Q.    Now, you currently work at Conway
19 MacKenzie; is that correct?
20     A.    Correct.
21     Q.    And prior to Conway, you were an
22 experienced associate at PricewaterhouseCoopers
23 in the private company services assurance
24 practice; is that correct?
25     A.    That's correct.

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                April 21, 2020

9 (Pages 30 to 33)

---

**30**

1    Q.    And you performed financial
2  statement audits and other services for
3  nonpublic corporations in various industries;
4  is that correct?
5    A.    That's correct.
6    Q.    So at that time your focus was not
7  on governmental accounting or Governmental Fund
8  accounting, correct?
9    A.    Correct.
10   Q.    Have you ever been employed by any
11 Puerto Rico entities personally?
12   A.    No.
13   Q.    Other than your work for the State
14 Department, have you ever been employed by any
15 governmental entity?
16   A.    I interned for a congressman in
17 Boston/DC.  That's it.
18   Q.    Now, you have worked for various
19 Puerto Rico entities through Conway MacKenzie,
20 correct?
21   A.    Correct.
22   Q.    Can you describe generally the
23 work that you've been doing for the
24 Commonwealth with Conway MacKenzie?
25   A.    For -- generally at Conway

---

**31**

1  MacKenzie, in my work in Puerto Rico on the --
2  what I'll call the Puerto Rico engagement, my
3  main focus has been liquidity management and
4  cash reporting.
5    Q.    What do you mean by "liquidity
6  management"?
7    A.    By liquidity management, more
8  specifically, I mean building cash flow models.
9  We looked at -- yes, look at what the data of
10 cash flow models might tell us.
11   Q.    Okay.  Now, in the various
12 productions that have been provided by the
13 Puerto Rico entities, we have seen various TSA
14 cash flow reports.  Were you involved in
15 drafting those?
16        MS. McKEEN:  Objection to the form
17 of the question.
18        THE WITNESS:  I have been involved
19 at various times in drafting certain TSA cash
20 flow reports.
21 BY MR. NATBONY:
22   Q.    Now, you also said you were
23 involved in debt reporting [sic].  What did you
24 mean by that?
25        MS. McKEEN:  Objection.

---

**32**

1        THE WITNESS:  Would you mind
2  rephrasing your question?
3  BY MR. NATBONY:
4    Q.    Before you answer, the transcript
5  says debt reporting.  My question was asset
6  reporting.
7        MS. McKEEN:  The transcript -- but
8  when you say the transcript says debt
9  reporting, I believe the witness originally
10 testified that he was involved in cash
11 reporting.  That was the nature of my objection
12 to the question.
13 BY MR. NATBONY:
14   Q.    Okay.  Well, did you say that you
15 were involved in cash reporting or asset
16 reporting?
17        MS. McKEEN:  Objection.
18        THE WITNESS:  I said cash
19 reporting.
20 BY MR. NATBONY:
21   Q.    Okay.  So maybe I misheard, I
22 apologize.
23        What did you mean by you were
24 involved in cash reporting activities?
25   A.    For example, there is the TSA cash

---

**33**

1  flow report that is published on the AAFAF
2  website every week, and I would be involved in
3  the analysis and production of that report.
4    Q.    And how long have you been
5  involved in doing work for the weekly cash flow
6  reports?
7    A.    In some capacity, for two years or
8  more.
9    Q.    There were also monthly cash flow
10 reports; is that correct?
11   A.    Correct.
12   Q.    Now, were you involved in
13 providing information for those reports as
14 well?
15   A.    Depending on the monthly report, I
16 may be involved in the report's production.
17   Q.    Can you -- have you been doing any
18 specific work relating to HTA as part of the
19 engagement with Conway MacKenzie?
20   A.    Yes.
21   Q.    Can you tell me generally what
22 you've been doing with respect to HTA?
23   A.    Just to clarify, are you referring
24 to Conway MacKenzie in general or me
25 specifically?

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

10 (Pages 34 to 37)

34

1  Q.   Well, you specifically at Conway
2  MacKenzie.
3  A.   Me specifically at Conway
4  MacKenzie?  I have been involved in developing
5  the 30-year fiscal plan for HTA.
6  Q.   What have you been doing with
7  respect to the 30-year fiscal plan for HTA?
8  A.   Mainly, I am the chief financial
9  modeler in control of the master financial
10 model.
11 Q.   Are you familiar with the term
12 "governmental accounting"?
13 A.   I am familiar with the term.
14 Q.   What do you understand it to mean?
15 A.   Not being a CPA, I'm not sure
16 exactly, but I do generally understand that
17 government accounting can differ from other
18 kinds of accounting.
19 Q.   Do you understand how it differs
20 from other types of accounting?
21 A.   Not being a CPA, I do not know the
22 specifics of how they differ.
23 Q.   Are you familiar with GASB,
24 G-A-S-B, standards and regulations?
25 A.   I am generally familiar with

35

1  that -- with those entities that you listed to
2  have separate accounting regulations.
3  Q.   And as part of your work, do you
4  refer to GASB standards and regulations?
5  A.   No.
6  Q.   Are you familiar with the term
7  "Government Funds," with a capital F,
8  F-U-N-D-S?
9  A.   I'm generally familiar with the
10 term.
11 Q.   So are you familiar with what
12 types of Governmental Funds must be reported in
13 accordance with GASB?
14 A.   Not being a CPA, no, not
15 specifically.
16 Q.   Are you familiar with the term
17 "Proprietary Funds"?
18 A.   I'm generally familiar with the
19 term.
20 Q.   Would you agree that they include
21 Enterprise Funds, Fiduciary Funds?
22 MS. McKEEN:  Objection to form,
23 compound.
24 BY MR. NATBONY:
25 Q.   Okay.  Would you agree that

36

1  Proprietary Funds include Enterprise Funds?
2  A.   I don't know, not being a CPA.
3  Q.   Would you agree that Proprietary
4  Funds include Fiduciary Funds?
5  A.   I don't know one way -- one way or
6  the other, not being a CPA.
7  Q.   Do you have an understanding as to
8  what the term "Enterprise Fund" means?
9  A.   I have a general understanding of
10 the term "Enterprise Funds."
11 Q.   What's -- sorry, I did not mean to
12 interrupt you.  What is your general
13 understanding of the term?
14 A.   My understanding of the term is in
15 the context of cash flow reporting.
16 Q.   Well, what is your understanding
17 of the term Enterprise Funds?
18 MS. McKEEN:  Bill, just for the
19 record, can we pause quickly?  The transcript
20 (indiscernible).
21 MR. NATBONY:  I'm sorry, Liz.  Did
22 you want to go off the record?
23 MS. McKEEN:  No, I don't.  Just
24 the witness's prior answer on the transcript,
25 "the actual reporting," when the witness

37

1  testified "cash flow reporting," and I just
2  want to make sure that is clear on the
3  transcript.
4  MR. NATBONY:  Okay.  Thank you,
5  Liz.
6  MS. McKEEN:  Thanks, Bill.
7  BY MR. NATBONY:
8  Q.   Would you like me to repeat my
9  question, Mr. Ahlberg?
10 A.   Please.
11 Q.   What was your understanding of
12 "Enterprise Fund" in that context?
13 A.   In the context of my work in cash
14 flow reporting, typically that just means that
15 I wouldn't pay attention to Enterprise Funds.
16 That would be kind of outside my cash flow work
17 with Conway MacKenzie.
18 Q.   Do you know whether there is an
19 HTA Enterprise Fund at the present time?
20 A.   Could you repeat the question?
21 Q.   Do you know whether there is an
22 HTA Enterprise Fund at the Commonwealth?
23 THE REPORTER:  I'm sorry, the end
24 of the question dropped off.  This is the
25 reporter.

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

11 (Pages 38 to 41)

---

**38**

1    THE WITNESS:  Not being a CPA, I'm
2  not certain if there is a — I don't know if
3  that is an Enterprise Fund or not.
4  BY MR. NATBONY:
5    Q.    For HTA?
6    A.    For HTA.
7    Q.    Are you familiar with GAAFR,
8  GAAFR, that's the Governmental Account Auditing
9  and Financial Reporting Standards?
10    A.    I am aware of those standards.
11    Q.    Do you work with those standards
12  as part of your work at Conway MacKenzie?
13    A.    No.
14    Q.    Do you consider GAAFR, G-A-A-F-R,
15  authoritative standards for government
16  accounting procedures?
17    MS. McKEEN:  Object to form.
18    THE WITNESS:  I don't know, not
19  being a CPA.
20  BY MR. NATBONY:
21    Q.    Do you consider GAAP, G-A-A-P,
22  authoritative standards for government
23  (indiscernible) procedures?
24    THE REPORTER:  I'm sorry.  The
25  question was garbled, Counsel.

---

**39**

1    MR. NATBONY:  I'll repeat the
2  question.
3  BY MR. NATBONY:
4    Q.    Do you consider GAAP, G-A-A-P,
5  authoritative accounting standards for
6  government accounting agencies?
7    MS. McKEEN:  Same objection.
8    THE WITNESS:  I don't know, not
9  being a CPA.
10  BY MR. NATBONY:
11    Q.    Well, you understood my question
12  to refer to GAAP, G-A-A-P, correct?
13    A.    I'm having trouble hearing you.
14    Q.    Have you understood my question to
15  refer to GAAP, G-A-A-P, correct?
16    THE REPORTER:  I'm sorry, Counsel,
17  Somebody needs to mute.
18    THE WITNESS:  I'm really sorry.
19    MR. NATBONY:  I'll repeat it
20  again.
21  BY MR. NATBONY:
22    Q.    Have you understood my prior
23  question to refer to GAAP, G-A-A-P?
24    A.    That is not what I heard when you
25  previously asked the question.

---

**40**

1    Q.    Then let me repeat it.
2    Do you consider GAAP, G-A-A-P, to
3  be authoritative accounting standards for
4  government accounting procedures?
5    MS. McKEEN:  Objection.
6    THE WITNESS:  I don't know, not
7  being a CPA.
8  BY MR. NATBONY:
9    Q.    Okay.  You are currently a
10  director at Conway; is that correct?
11    A.    Yes.
12    Q.    You just became a director in
13  January, correct?
14    A.    Correct.
15    Q.    Prior to that, you were a senior
16  associate?
17    A.    Correct.
18    Q.    And just so I understand the
19  structure at Conway, there are managing
20  directors above you, correct?
21    A.    Correct.
22    Q.    And there's senior managing
23  directors above you, correct?
24    A.    Correct.
25    Q.    What percentage of your work at

---

**41**

1  Conway has involved governmental entities?
2    A.    A rough estimation would be
3  greater than 90 percent.
4    Q.    And what percentage of your work
5  at Conway has involved Puerto Rico and its
6  instrumentalities?
7    A.    Same answer, greater than
8  90 percent.
9    Q.    Now, Conway currently has an
10  agreement with a FAS for professional services,
11  correct?
12    A.    Yes, that's correct.
13    Q.    Under that, Conway has anticipated
14  being paid $800,000 a month; is that correct?
15    A.    I do not know the specifics of our
16  contract.
17    Q.    Do you have any reason to dispute
18  that the fee is approximately $800,000 a month?
19    MS. McKEEN:  Objection, form.
20    THE WITNESS:  I don't have enough
21  information to speculate one way or the other.
22  BY MR. NATBONY:
23    Q.    Would you agree that AAFAF is a
24  significant client of Conway?
25    A.    It depends.  That would be

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                                April 21, 2020

12 (Pages 42 to 45)

**42**

subjective.

Q.    You don't have an opinion one way
or the other?

**A.    I don't have an opinion one way or
the other.**

Q.    Were you involved at all in
negotiating the fee arrangement between AAFAF
and Conway?

**A.    No.**

Q.    Have you ever seen the agreement
between AAFAF and Conway?

**A.    No.**

Q.    How many people sit above you on
the Puerto Rico AAFAF engagement on the team?

        MS. McKEEN:  Object to the form.

        THE WITNESS:  By that, do -- do
you mean how many people in positions that are
higher than director?

BY MR. NATBONY:

Q.    Yes.

**A.    Between four and six.**

Q.    Okay.  Are you personally being
paid for your appearance today?

**A.    No.**

Q.    Is your appearance today in the

**43**

preparation part of the engagement with Conway
MacKenzie?

**A.    Yes.**

Q.    What is your hourly rate?

**A.    I can't recall off the top of my
head.**

Q.    It's 475, isn't it?

**A.    I'm not certain if that is the
most recent figure or not.**

Q.    It's at least 475?

**A.    I can't recall specifically.**

Q.    Do you have any reason to dispute
that your current rate is at least $475 an
hour?

        MS. McKEEN:  Objection.

        THE WITNESS:  I'm not certain one
way or the other.

BY MR. NATBONY:

Q.    Do you know how much you're
charging for your appearance and cooperation on
an hourly basis?

        MS. McKEEN:  Objection, asked and
answered.

        THE WITNESS:  I do not know
specifically.

**44**

        MR. NATBONY:  Okay.  Let's pull up
tab 6, please.  This will be Monoline
Exhibit 4.

                (Monoline Exhibit 4 is
                introduced for the record.)

BY MR. NATBONY:

Q.    Okay.  I'm going to represent that
that is a document that has been provided to
us, which is the agreement for professional
services between AAFAF and Conway MacKenzie.

        I'm going to ask Jaclyn to move
this 38 page (indiscernible).  There's a
listing there of links to (indiscernible).

**A.    I see the page.**

Q.    And do you see the rate which is
475 an hour?

**A.    I see that.**

Q.    Do you have any reason to dispute
that that was your rate as expressed in the
agreement between Conway and AAFAF?

        MS. McKEEN:  Objection, document
speaks for itself.

        THE WITNESS:  The document says
what it says.

**45**

BY MR. NATBONY:

Q.    You have no independent knowledge
to dispute that number, do you?

**A.    Would you repeat the question?**

Q.    You have no independent knowledge
to dispute that number, do you?

        THE REPORTER:  Somebody needs to
mute.

        THE WITNESS:  I don't have enough
information to say one way or the other.

BY MR. NATBONY:

Q.    Okay.  Now, in looking at a lot of
the documents that have been produced, there
are a number of terms that I wanted to go over
so we can make sure we're on the same page.
Many of the documents have the words "Treasury
Single Account," or TSA?

        MS. McKEEN:  Bill, you're really
cutting out.

        THE WITNESS:  There's a lot of --
yeah.  Go ahead.

BY MR. NATBONY:

Q.    Would you agree that the Treasury
Single Account or TSA is the main operational
bank accounts for the Commonwealth?

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

13 (Pages 46 to 49)

---

**46**

1      A.    It sounds plural.  Did you say
2   account with an "s"?
3      Q.    I did.
4      A.    Okay.
5      Q.    So you would agree that the TSA is
6   a series of main operational accounts for the
7   Commonwealth, correct?
8      A.    The TSA is a collection of
9   accounts.
10      Q.    And the TSA would include amounts
11   held in custody by the Secretary of Treasurers
12   to the benefit of the Commonwealth's Fiduciary
13   Funds, right?
14      MS. McKEEN:  I didn't get half
15   that question.  Can you repeat it?
16      THE WITNESS:  Same here.  There's
17   a lot of background.  I don't know if that's on
18   you or somebody else.
19      MR. NATBONY:  Somebody needs to
20   mute.
21      MS. McKEEN:  Do we need to remute
22   everybody blind?  I'm not -- there is a ton of
23   background noise.
24      MR. NATBONY:  Okay.  Let's pull up
25   tab 13 and mark that Exhibit 5.

---

**47**

1      (Monoline Exhibit 5 is
2      introduced for the record.)
3      MS. HALL:  Apologies, this is
4   Jaclyn.  I'm not getting the exhibit option.
5   Is someone else showing an exhibit?
6      MR. NATBONY:  No.  Were you able
7   to bring it up?
8      MS. HALL:  No, I'm not getting the
9   exhibit option.  It's blocked out.
10      MS. McKEEN:  So do we need to take
11   a break so you guys can adjust the tech issue?
12   How would you like to proceed?
13      MR. NATBONY:  Well, I guess so.
14   Let's do that.  Let's take 5 minutes.  Let's go
15   off the record.
16      THE VIDEOGRAPHER:  We are off the
17   record at 10:37 a.m.
18      (Recess taken.)
19      THE VIDEOGRAPHER:  We are back on
20   the record at 10:45 a.m.
21      MR. NATBONY:  Thank you.
22   BY MR. NATBONY:
23      Q.    Looks like we were able to fix the
24   problem.  So tab 13, which is now Monoline
25   Exhibit 5, is up on the screen.

---

**48**

1      Mr. Ahlberg, do you recognize this
2   form of document?
3      A.    Yes.
4      Q.    This is one of the Treasury Single
5   Account cash flow statements you were referring
6   to before, correct?
7      A.    One of the cash flow reports, yes.
8      Q.    And let's turn to page 3.  There
9   are a series of definitions on that page.
10      So in particular, I would like to
11   refer you to the -- a few of the definitions on
12   this page.  First, there is a definition for
13   TSA at the bottom.
14      Do you see that?
15      A.    Yes, I see it.
16      Q.    And reading that definition, would
17   you agree with the definition set forth
18   therein?
19      A.    I understand this definition.
20      Q.    And would you agree with the
21   definition?
22      A.    I would agree that the TSA is the
23   Treasury Single Account, the Commonwealth's
24   main operational bank account.
25      Q.    Do you have any reason to question

---

**49**

1   anything else in the definition?
2      MS. McKEEN:  Object to form.
3      THE WITNESS:  I don't know one way
4   or the other what was intended by the author.
5   BY MR. NATBONY:
6      Q.    There's another definition of
7   "Special Revenue Funds."
8      Do you see that?
9      A.    I see the definition.
10      Q.    Would you agree with the
11   definition of "Special Revenue Funds" as used
12   by the Commonwealth?
13      MR. MERVIS:  Objection to the
14   form.
15      THE REPORTER:  I'm sorry.  Who
16   objected?
17      MR. MERVIS:  Mervis, Michael
18   Mervis.
19      THE WITNESS:  In the context of
20   this report, I understand this definition.
21   BY MR. NATBONY:
22      Q.    Okay.  My question was do you
23   understand this definition for Special Revenue
24   Funds to be a definition that the Commonwealth
25   uses?

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

14 (Pages 50 to 53)

---

**50**

1  MS. McKEEN: Objection.
2  THE WITNESS: I don't know who
3  uses or doesn't use this particular definition
4  of "Special Revenue Fund."
5  BY MR. NATBONY:
6  Q.  Well, the definition appears in a
7  type of report that you have been responsible
8  for preparing, right?
9  **A.  I may have not been involved in**
10 **specifically preparing this exact report.**
11 Q.  Do you know one way or the other?
12 **A.  Do I know what one way or the**
13 **other?**
14 Q.  Whether you were involved in
15 preparing this report.
16 **A.  I can't recall if I was**
17 **specifically involved in creating this exact**
18 **report.**
19 Q.  Do you agree with the definition
20 of "Special Revenue Fund" used on this page in
21 the report?
22 MS. McKEEN: Objection.
23 THE WITNESS: This definition is,
24 you know, being used in the context of this
25 report.

---

**51**

1  BY MR. NATBONY:
2  Q.  My question is: Do you have any
3  reason to dispute the definitions contained in
4  this report of the term "Special Revenue Fund"?
5  MS. McKEEN: Objection.
6  THE WITNESS: I don't dispute it
7  one way or another.
8  BY MR. NATBONY:
9  Q.  Well, for instance, the definition
10 says that:
11 Special Revenue Funds are not
12 subject to annual appropriation.
13 Would you agree with that?
14 MS. McKEEN: Objection.
15 THE WITNESS: It depends.
16 BY MR. NATBONY:
17 Q.  What does it depend on?
18 **A.  It depends on the type of Funds in**
19 **question.**
20 Q.  Are you disputing that generally
21 Special Revenue Funds are not subject to annual
22 appropriation?
23 MS. McKEEN: Object to the form.
24
25

---

**52**

1  THE WITNESS: I think the
2  definition says what it says here.
3  BY MR. NATBONY:
4  Q.  And are you disputing this
5  definition in any way?
6  UNIDENTIFIED SPEAKER: Objection
7  to the form.
8  THE WITNESS: I'm not disputing or
9  confirming this definition.
10 BY MR. NATBONY:
11 Q.  So you don't know one way or the
12 other, do you?
13 **A.  I don't know what was intended by**
14 **the author of this definition at this time.**
15 Q.  Okay. The definition of "Special
16 Revenue Funds" in this document also indicates
17 that it includes Funds that have, quote:
18 Specific uses established by their
19 respective enabling legislation.
20 Do you see that language?
21 **A.  Yes, I see that language.**
22 Q.  Do you agree with that?
23 UNIDENTIFIED SPEAKER: Objection.
24
25

---

**53**

1  THE WITNESS: I don't agree one
2  way or the other with this definition.
3  BY MR. NATBONY:
4  Q.  Okay. There's another definition
5  of "General Fund" on that page.
6  Do you see that definition?
7  **A.  I do see the definition.**
8  Q.  Do you agree with that definition?
9  **A.  I don't agree one way or the other**
10 **with the definition.**
11 Q.  In governmental accounting, is
12 there a difference between what is called a
13 Fund and a bank account?
14 **A.  I don't know in government**
15 **accounting.**
16 Q.  Well, in the Commonwealth -- in
17 the Commonwealth, there are bank accounts and
18 there are also things called Funds, correct?
19 **A.  That is correct.**
20 Q.  And there are different Funds,
21 F-U-N-D-S, capitalized, that are part of the
22 TSA; is that correct?
23 MS. McKEEN: Objection to the
24 form.
25 THE WITNESS: That's not really

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I
April 21, 2020

15 (Pages 54 to 57)

---

**54**

1   how I think about the TSA.
2   BY MR. NATBONY:
3   Q.    Okay. Well, there are things
4   called the General Fund. Are you familiar with
5   that?
6   A.    **I am familiar with the General**
7   **Fund.**
8   Q.    Is the General Fund a designation
9   of monies that are contained in the TSA?
10  A.    **The General Fund designation does**
11  **not necessarily mean Funds are contained within**
12  **the TSA.**
13  Q.    Okay. What's the difference
14  between a Fund and an account, in your
15  understanding, of how they are used in the
16  Commonwealth?
17  A.    **Generally, in my work with the**
18  **Commonwealth, including management and tax**
19  **reporting, I understand accounts as having**
20  **balances, bank accounts, and Funds do not have**
21  **a -- do not -- do not correspond with the bank**
22  **account.**
23  Q.    But Funds do have balances in
24  them; is that correct?
25  MS. McKEEN:  Object to the form.

---

**55**

1   THE WITNESS:  Can you rephrase the
2   question?
3   BY MR. NATBONY:
4   Q.    Funds have balances that are
5   associated with them at any particular time,
6   correct?
7   A.    **I'm not certain if Funds,**
8   **individual Fund balances have -- or that -- I'm**
9   **not certain that Funds have balances like that.**
10  Q.    Well, for instance, you understood
11  there was a General Fund, correct?
12  A.    **There is the concept of General**
13  **Fund, yes.**
14  Q.    Well, there is something that
15  exists in the designation of the Commonwealth
16  that is called General Fund, correct?
17  A.    **There is a designation of General**
18  **Fund within the Commonwealth.**
19  Q.    If you look at the definition on
20  page 3, again, of the Monoline Exhibit 5,
21  General Fund is defined as the Principal
22  Operating Fund of the Commonwealth.
23  Do you see that?
24  A.    **I do see that.**
25  Q.    Is the Commonwealth able to

---

**56**

1   determine at any time what amount of monies are
2   designated part of the General Fund?
3   A.    **That question doesn't really make**
4   **sense to me.**
5   Q.    Why doesn't it make sense to you?
6   A.    **Because I've taken it into**
7   **context, you know, in my work and in the**
8   **context of the TSA, TSA Cash Flow Funds are**
9   **irrelevant.**
10  Q.    Have you ever worked with
11  determining the amount of monies in the General
12  Fund?
13  A.    **It's not the way that I really**
14  **think about the General Fund.**
15  Q.    Have you ever had to determine
16  what amount of monies were designated part of
17  the General Fund?
18  A.    **No, because the question doesn't**
19  **really make sense to me.**
20  Q.    Why does the question not make
21  sense to you?
22  A.    **Because in the context of the TSA**
23  **report that we're viewing in the cash account,**
24  **you would have to say that the cash balance in**
25  **the TSA corresponds to X, Y, Z funds.**

---

**57**

1   Q.    Do you know whether or not the
2   Commonwealth is able to determine at any
3   particular time how much money has been
4   designated part of the General Fund?
5   A.    **I'm not sure I understand what**
6   **you're saying with "designated part of the**
7   **General Funds."**
8   Q.    Well, there are -- there are
9   monies that are designated as part of the
10  General Fund in the Commonwealth, correct?
11  A.    **There are Funds that are**
12  **designated as General -- General Fund Funds.**
13  Q.    How do you -- how would the
14  Commonwealth go about determining at any
15  particular time what the amount of those monies
16  are?
17  A.    **That's not an exercise that I have**
18  **ever done nor that we do at the Commonwealth.**
19  Q.    Okay. There's also a Fund called
20  Fund 278. Are you familiar with that?
21  A.    **I am familiar with Fund 278.**
22  Q.    What is Fund 278?
23  A.    **Fund 278 is a specific Fund number**
24  **within the PRIFAS system, Puerto Rico**
25  **Information and Financial Accounting System,**

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

16 (Pages 58 to 61)

---

58

what I'll refer to as PRIFAS going forward, is
a Fund number within the PRIFAS system used to
classify revenue at this time.
        Q.      And what kind of revenue is
classified as part of Fund 278?
        A.      Part of Fund 278 are -- revenues
that would be classified with Fund 278 would be
Funds -- or revenues that had previously been
allocated to HTA.
        Q.      And those would include, for
instance, the HTA excise taxes?
        A.      Correct.
        Q.      Now, at any particular time, how
would the Commonwealth go about determining
what monies are classified as part of Fund 278?
        A.      Again, we don't really think about
Funds in that way.
        Q.      Well, what's the purpose of having
a Fund designation?
        A.      I'm not certain what -- I don't
know what the ultimate purpose or intents of
Fund designations are for.
        Q.      Well, there's got to be some
purpose or you wouldn't be doing it, right?
        A.      Is that a question?

---

59

        Q.      Yeah.
        A.      I don't know.
        Q.      So you don't know what the purpose
is of creating separate Funds within the
Commonwealth, correct?
        A.      I know that Funds are -- different
Funds are used to record different revenues.
        Q.      And why would you want to record
particular revenues by the use of a Fund?
        A.      By using one Fund number or
another, you can distinguish between a revenue
earning.
        Q.      Have you ever asked anyone at the
Commonwealth why they maintain Funds to record
different revenues?
        A.      I did not ask that specific
question.
        Q.      Would you agree that the purpose
of using Funds in the Commonwealth is to
segregate financial information for the purpose
of carrying on specific activities and offering
certain objectives in accordance with
regulations, restrictions and limitations?
        MS. McKEEN:  Object to the form.
        THE WITNESS:  I don't agree one

---

60

way or the other with that definition.
BY MR. NATBONY:
        Q.      As a matter of accounting
practice, do Funds usually have a
self-balancing set of accounts?
        A.      I don't know.  That's not
something that I -- we -- or I would consider
in developing the TSA cash flow report that
we're looking at.
        Q.      Now, when you were talking about
revenues that were classified in Fund 278, when
they are so classified, are they on deposit in
the TSA?
        A.      Maybe I don't understand your
question.  Could you maybe try rephrasing it?
        Q.      Well, you said before that certain
revenues, including the HTA excise taxes, are
classified within Fund 278.  Do you remember
that testimony?
        A.      Yes.
        Q.      At the time that they are
classified as Fund 278, where do the actual
dollars fit?  Are they in the TSA?
        MS. McKEEN:  Object to form.
        THE WITNESS:  When the Fund number

---

61

is recorded, it's recording that deposit
receipt into the existing sweep account called
Collecteria.
BY MR. NATBONY:
        Q.      So at this time that excise
revenues come into a collection account at the
Commonwealth, that's when they're given the
designation?
        A.      When they enter it into the
collection sweep account called Collecteria,
they receive that designation.
        Q.      And is there a time that the
Fund 278 designation gets removed?
        A.      So Collecteria, the sweep account
that I mentioned, collects other various taxes
every day besides the excise taxes in question.
        At the end of every day, there
would be a sweeping transfer to the TSA
operational account.  That transfer would be a
batch transfer of all the Funds collected that
day, and there would be no Fund designation
associated with that transfer.
        Q.      But when that transfer or sweep,
as you have indicated, occurs, is a deduction
made to the Fund 278 classification amount?

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                      April 21, 2020

17 (Pages 62 to 65)

---

**62**

1    MS. McKEEN:  Object to the form.
2    THE WITNESS:  I've seen no
3    evidence of that, but I would follow the cash
4    in my work.
5    BY MR. NATBONY:
6    Q.    So it's possible that that
7    Fund 278 designation remains, you know, even
8    though the Funds were transferred into the TSA,
9    correct?
10   MS. McKEEN:  Objection.
11   THE WITNESS:  That designation
12   does not remain once the Funds are comingled
13   into the TSA.
14   BY MR. NATBONY:
15   Q.    So once the Funds are comingled
16   into the TSA, is there some deduction from the
17   Fund 278 classification amount that occurs?
18   A.    I've seen no evidence of that.
19   Q.    Well, if -- if the classification
20   disappears, doesn't there have to be some
21   accounting entry to indicate that the amount of
22   classified Funds has decreased?
23   A.    Not being a CPA, I'm not sure what
24   the correct accounting entries would be there.
25   Q.    Now, with respect to the

---

**63**

1    Commonwealth's General Fund, AAFAF, does that
2    classification remain during the course of the
3    time that Funds are in the Commonwealth's
4    possession?
5    MS. McKEEN:  Object to form.
6    THE WITNESS:  That -- that's not
7    how I think about Funds.
8    BY MR. NATBONY:
9    Q.    How do you think about Funds?
10   MS. McKEEN:  Object to the form.
11   THE WITNESS:  Depends on the
12   context of the work I'm performing.
13   BY MR. NATBONY:
14   Q.    Well, how do you think about the
15   Fund 278 Fund?
16   MS. McKEEN:  Object to the form.
17   THE WITNESS:  Do you have a more
18   specific question than just how do I think
19   about it?
20   BY MR. NATBONY:
21   Q.    Well, you said that -- you keep
22   saying my question isn't how you think about
23   it.  Well, I'm trying to figure out what you
24   understand the Fund 278 to be.
25   MS. McKEEN:  Objection.

---

**64**

1    THE WITNESS:  I don't think of
2    Fund types as having actual cash balances.
3    BY MR. NATBONY:
4    Q.    Well, what's the purpose of having
5    a Fund designation?
6    A.    The Fund designation records the
7    revenues in certain increments.
8    Q.    Right, because the Commonwealth
9    wants to record and track certain revenues,
10   correct?
11   A.    The Commonwealth does record and
12   track revenues.
13   Q.    Right.  And using a Fund like
14   Fund 278 or the General Fund is a way that the
15   Commonwealth uses to track particular monies,
16   correct?
17   A.    It is not a way that they use to
18   track money.  It is a way that they use to
19   track revenue.
20   Q.    Okay.  So revenues that come in,
21   the Fund designations are used to track
22   particular types of revenues, correct?
23   A.    Correct.
24   Q.    So with respect to Fund 278, for
25   instance, that would be a way for the

---

**65**

1    Commonwealth to track excise tax revenues when
2    they come in, correct?
3    A.    That is how they track excise tax
4    revenues when they're received into the sweep
5    account.
6    Q.    Why does the Commonwealth want to
7    track the amount of HTA excise revenues?
8    MS. McKEEN:  Objection, it's
9    outside the scope.  Can you rephrase the
10   question, Counsel?
11   BY MR. NATBONY:
12   Q.    What is the reason that the
13   Commonwealth tracks revenues such as the HTA
14   excise taxes through Fund 278?
15   MS. McKEEN:  Counsel, I think
16   that's outside the scope of the topics.  I
17   think the Court's order made pretty clear that
18   the witness wasn't going to be asked to testify
19   about the Commonwealth's subjective
20   understanding or why certain actions were
21   taken.
22   So, again, to the extent that's
23   what your question is asking, why the
24   Commonwealth did something, that's outside the
25   scope of the topics.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

18 (Pages 66 to 69)

### 66

1  MR. NATBONY:  Well, I disagree.
2  Are you directing him not to answer?
3      MS. McKEEN:  You can answer.
4      (Simultaneous speaking.)
5      MS. McKEEN:  What's the basis for
6  your disagreement that this is not part of the
7  scope?
8      MR. NATBONY:  Are you directing
9  him not to answer, yes or no?
10     MS. McKEEN:  I mean, if we need to
11 go to the Court, we can, Bill.  But I think you
12 very clearly asked him why the Commonwealth did
13 something, and I think that's outside the scope
14 of what the Court has said is proper here.
15     MR. NATBONY:  Liz, are you
16 directing him not to answer?
17     MS. McKEEN:  I — I guess I'm
18 still waiting for you to explain to me why you
19 think this is —
20     (Simultaneous speaking.)
21     MS. McKEEN:  Bill, I'm trying to
22 figure out if we need to go to Juge Dein sooner
23 than later.
24     (Simultaneous speaking.)
25     MR. NATBONY:  Are you directing

### 67

1  him not to answer?  If you're not directing him
2  not to answer —
3      MS. McKEEN:  Can you stop
4  interrupting, please?
5      MR. NATBONY:  Go ahead, I'll let
6  you speak first.
7      MS. McKEEN:  If you're not willing
8  to articulate your position, I think it makes
9  it really difficult for us to try to move
10 forward here.
11     MR. NATBONY:  The simple fact is
12 that we're trying to understand, as the Court
13 said, the designations of particular monies and
14 the transmittal of monies.
15     The designation was one of the
16 things the Court talked about, trying to
17 understand those type of — maybe he just
18 doesn't know why there are these designations.
19     Now, if you're going to direct him
20 not to answer, then do so.
21     MS. McKEEN:  So, Bill, let me
22 clarify my answer.
23     To the extent you're asking the
24 witness what actions were and weren't taken by
25 the Commonwealth, that's fine, I'll allow him

### 68

1  to testify, but if you are asking him to
2  testify about the Commonwealth's state of mind,
3  its understanding or why certain actions were
4  taken, I'll direct the witness not to answer
5  because it's outside the scope.
6      MR. NATBONY:  Okay.  Can the court
7  reporter repeat the question that I asked,
8  please?
9      (Record read as requested.)
10     "What is the reason that the
11     Commonwealth tracks revenues
12     such as the HTA excise taxes
13     through Fund 278?"
14     MS. McKEEN:  So I'm going to
15 instruct the witness not to answer the question
16 because the Court very clearly stated that
17 discovery is not authorized into the main
18 reasons for the Commonwealth decision.
19     MR. NATBONY:  Okay.
20 BY MR. NATBONY:
21     Q.   Now, Mr. Ahlberg, when you
22 testified previously that the designation of
23 the excise taxes does not remain when a
24 transfer is made to the TSA, how do you know
25 that?

### 69

1      A.   By reviewing the full daily sweep
2  transfers from the sweep account to the TSA
3  operational account.
4      Q.   And by looking at those documents,
5  can you tell whether the Fund 278 designation
6  has remained in place?
7      A.   No.
8      Q.   So, again, what is the basis of
9  your testimony that the Fund 278 designation
10 does not remain when the transfer is made to
11 the TSA account?
12     A.   Could you repeat the question all
13 together?
14     Q.   Well, I asked you, how do you know
15 that the Fund 278 designation does not remain
16 when the transfer to the operational account
17 occurs.  I'm trying to understand how you know
18 that.
19     A.   Right.  So at the end of the day,
20 when the sweep account sweeps to the TSA
21 operational account, comes to it, one -- one
22 transfer which groups revenues that have been
23 received in the sweep account that may not be
24 the HTA excise tax as well.
25     Q.   Is there some report that you look

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                April 21, 2020

19 (Pages 70 to 73)

---

**70**

at that shows that the amount designated for
Fund 278 has been reduced?
   A.   No.
   Q.   Is there any report that you're
aware of that you can run for the Commonwealth
that would show on any particular day how much
money is designated as Fund 278 money?
   A.   No.
   Q.   Is there any report that the
Commonwealth could run on any particular day to
show how much money has been designated part of
the Commonwealth's General Fund?
   A.   I don't know how to answer that
question.  I can't answer that question in
that it doesn't make sense to me.
   Q.   Why doesn't it make sense?
   A.   Because I don't think about the
TSA cash balance by Fund type.
   Q.   If you wanted to determine what
monies were in the Commonwealth's General Fund
today, what would you do?  Well, strike that
question.
          If you wanted to determine what
monies were designated as part of the
Commonwealth's General Fund today, what would

---

**71**

you do to determine that?
   A.   Yeah, I don't -- the way the
question is asked doesn't make sense to me.
   Q.   So is it fair that you don't know
of a way to determine today how much is sitting
in the General Fund?
   A.   The General Fund is not a bank
account in which monies get --
   Q.   Do you -- can you determine today
what monies, what revenues are designated as
part of the General Fund today?
   A.   You can determine as of today how
much General Fund revenue was earned.
   Q.   How would you go about doing that?
   A.   There are -- Treasury generates a
report, generates a report that states how much
revenue has been earned.  I think even the
general number of --
   Q.   Is --
   A.   Go ahead.
   Q.   Is there a way to determine what
revenues today remain designated as Fund 278?
          MS. McKEEN:  Object to the form.
          THE WITNESS:  The way the
question's asked doesn't make sense.

---

**72**

          All revenues that were earned in
Fund 278 are earned under Fund 278.
BY MR. NATBONY:
   Q.   Right.  And how would you -- how
would you, if you wanted to, go about
determining what revenues today are designated
part of Fund 278?
          MS. McKEEN:  Same objection.
          THE WITNESS:  You can determine
how many revenues were earned in Fund 278, but
the part about designation does not make sense
to me.
BY MR. NATBONY:
   Q.   How would you go about determining
what revenues were earned as part of Fund 278
today?
   A.   I would run -- or I would use data
to look at the Collecteria account transactions
data.
   Q.   Is that a complicated report to
run?
   A.   That's subjective.
   Q.   Well, how long would it take to
run a report like that?
   A.   Assuming a Funds field is included

---

**73**

within the transactional data, you could run a
Fund formula in a matter of minutes.
   Q.   Now, Fund 278 is a separate Fund
than the General Fund, correct?
   A.   Fund 278 is a different Fund
number than Fund numbers of the General Fund.
   Q.   All right.  So if revenues like
tax collections are reported in the General
Fund, they would be reported in Fund 278 as
well, correct?
   A.   Correct.
   Q.   And the opposite is true as well,
right?  That is, some revenues that are
reported in Fund 278, they wouldn't be in the
General Fund as well, right?
   A.   Subject to any potential
reclassifications, that is correct.
   Q.   Do you have an understanding of
the term "Special Revenue Funds"?
   A.   I have a general understanding
based upon my work with the Commonwealth.
   Q.   What's your general understanding
based on your work with the Commonwealth?
   A.   In my work with the Commonwealth
and liquidity reporting and cash management,

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                  April 21, 2020

20 (Pages 74 to 77)

---

**74**

1    **Special Revenue Funds, A, means any Funds that**
2    **are not General Funds or Federal Funds.**
3        Q.    And is it fair to say that Special
4    Revenue Funds generally have some specific use
5    for purposes established by either law or
6    legislation?
7            MS. McKEEN:  Object to the form of
8    the question.
9            THE WITNESS:  I'm not an attorney,
10   so I don't know for certain.
11   BY MR. NATBONY:
12       Q.    Well, you said before that there
13   was -- I think you used the word
14   "reclassification."  Are you aware of any
15   reclassification of revenue earned in Fund 278
16   for the General Fund or otherwise?
17       A.    No.
18       Q.    Why would -- strike that.
19            What is the difference between a
20   Special Revenue Fund and a General Fund, in
21   your opinion?
22       A.    **In the context of my work with the**
23   **Commonwealth, specifically with the TSA, the**
24   **General Fund to me means all General Funds**
25   **dollars will pass through the TSA, and special**

---

**75**

1    **revenues means that special revenues may or may**
2    **not pass through the TSA.**
3        Q.    Are Special Revenue Funds
4    generally created because they're in some
5    special purpose for the Funds, for the money
6    for the revenues in those Funds?
7            MS. McKEEN:  Object to the form.
8            Are you asking him why Special
9    Revenue Funds are created?
10           MR. NATBONY:  I think my question
11   stands.
12           MS. McKEEN:  Okay.  Well, if
13   you're asking him why the Commonwealth took a
14   certain action, I'm going to instruct the
15   witness not to answer for the same reasons we
16   previously stated.  You're free to ask the
17   witness what was or wasn't done but not the
18   reasoning behind it.
19   BY MR. NATBONY:
20       Q.    Let's talk a little bit about the
21   TSA cash flow reports that we have seen before.
22            Is it fair that these cash flow
23   reports are revenues that have been collected
24   by the Commonwealth Treasury?
25       A.    **Yes.**

---

**76**

1        Q.    And is it fair that these reports
2    separate revenues as either being General Fund
3    collection or special revenue collections?
4        A.    **It is true that the report**
5    **separates both.**
6        Q.    And the HTA excise taxes, those
7    have been reported as special revenue
8    collections, correct?
9        A.    **I would need to check that**
10   **specific page of the document to make sure.**
11       Q.    Okay.
12           MR. NATBONY:  Let's pull up tab 5.
13   Let's mark that as Monoline Exhibit 6.
14           (Monoline Exhibit 6 is
15           introduced for the record.)
16   BY MR. NATBONY:
17       Q.    While that is being pulled up, let
18   me ask you this question:
19           When revenues are transferred from
20   a collections account to the TSA operational
21   account, are they classified as General Fund
22   revenues?
23           MS. McKEEN:  Object to the form of
24   the question.
25           THE WITNESS:  Would you repeat the

---

**77**

1    question?
2    BY MR. NATBONY:
3        Q.    When revenues are transferred from
4    the Commonwealth's collection account to this
5    operational account, CF TSA, are they
6    classified as General Fund revenues?
7        A.    **There's no --**
8            MS. McKEEN:  Object to the form of
9    the question.
10           THE WITNESS:  There's no
11   classification -- there's no classification at
12   the time of that transfer.
13   BY MR. NATBONY:
14       Q.    We brought up onto the screen what
15   has now been marked as Monoline Exhibit 6.  I'm
16   going to ask -- you recognize this as another
17   TSA cash flow report, correct?
18       A.    **Having just seen the cover page**
19   **here, that's what it looks like.**
20       Q.    I guess if you could turn to
21   page 7 of that document.
22       A.    **Give me a second here.**
23       Q.    Looking at page 7, do you see that
24   there are separate categories of General Fund
25   and Special Revenue Funds?  Do you see that?

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                              April 21, 2020

---

**78**

1    A.    Yes, I see that.
2    Q.    And looking at this or anything
3  else in the TSA report, can you determine
4  whether HTA excise tax revenues are reported as
5  part of the General Fund or part of the special
6  revenue?
7         MS. McKEEN:  Bill, is it --
8         THE WITNESS:  This --
9         MS. McKEEN:  Hold on for a second.
10      Bill, does the witness have
11  control of the documents so he can page through
12  it if he needs?  Thank you.
13         THE WITNESS:  In this report, the
14  HTA excise taxes would be included in line 13
15  on this page.
16  BY MR. NATBONY:
17    Q.    That would be the special -- under
18  Special Revenue Funds, correct?
19    A.    In this document, that is correct.
20    Q.    Do you have any reason to believe
21  that the HTA excise taxes were reported at any
22  time under the General Fund category?
23    A.    No.
24    Q.    Give me a second here.
25         On behalf of the Commonwealth in

---

**79**

1  HTA, do you have an understanding as to the
2  term "special deposit"?
3    A.    I'm not familiar with that term.
4    Q.    Have you used the term "special
5  deposit" in any of your work with respect to
6  the Commonwealth?
7    A.    I can't recall a time personally
8  where I used that phrase.
9    Q.    Looking back at Monoline
10  Exhibit 6, the page that we were talking about
11  before with respect to special revenues and
12  general revenues, the revenues that you refer
13  to in line 13, do they correspond to actual
14  dollars?
15    A.    This report would capture cash
16  receipts.  It's not a revenue report.
17    Q.    What do you mean by "asset
18  receipts"?
19    A.    Cash -- cash receipts.
20    Q.    Cash receipts.
21    A.    Yes.
22    Q.    Do you know whether the
23  Commonwealth has any bank accounts known as
24  special deposit accounts?
25    A.    I'm not certain of specific

---

**80**

1  accounts that may or may not be referred to in
2  that way.
3         MR. NATBONY:  Okay.  Let's bring
4  up tab 19 and mark that as Monoline's dep.
5         (Monoline Exhibit 7 is
6         introduced for the record.)
7  BY MR. NATBONY:
8    Q.    Let's turn to page 2 of this
9  document, which is a chart, and I will
10  represent to you that this has been taken from
11  the governing parties' opposition to the HTA
12  lift-stay motion as Exhibit A to that
13  opposition.
14         UNIDENTIFIED SPEAKER:  I think
15  it's the Oversight Board's brief, but there is
16  a joinder, I think.
17         MR. NATBONY:  I see it.  I'll
18  accept that amendment.
19  BY MR. NATBONY:
20    Q.    Are you able to see that chart?
21    A.    I can see the chart.
22    Q.    And hopefully you're able to blow
23  it up sufficiently so that you can look at it.
24         Have you seen this document
25  before?

---

**81**

1    A.    I have seen this document before.
2    Q.    Do you know who prepared this
3  exhibit?
4    A.    I believe counsel for the
5  Oversight Board did.
6    Q.    Were you involved in preparing
7  this exhibit?
8    A.    I was not involved.
9    Q.    So do you know what documents were
10  used to prepare this exhibit?
11    A.    I do not know all the documents
12  that were used to prepare this exhibit.
13    Q.    Do you know anything about how
14  this document was prepared?
15    A.    I know that in preparation of this
16  document, it involves review of laws and
17  statutes.
18    Q.    How do you know that?
19    A.    Based on conversation, having
20  reviewed this document before.
21    Q.    Looking at the language on the
22  right side about three-quarters down, that
23  says:
24         HTA imposes and collects toll
25  revenues.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

22 (Pages 82 to 85)

---

**82**

1    Do you see that language?
2    **A.    I see that language.**
3    Q.    So is it fair to say that under
4  this exhibit, toll revenues do not touch any
5  Commonwealth account; is that correct?
6    MS. McKEEN:  Object.  Objection.
7    THE WITNESS:  This diagram -- this
8  does not appear to me from this diagram.
9  BY MR. NATBONY:
10    Q.    So it does not appear to you from
11  this diagram that toll revenues touch any
12  Commonwealth bank account, correct?
13    MS. McKEEN:  Object to the form of
14  the question.
15    THE WITNESS:  It's not clear to me
16  one way or the other reviewing this document.
17  BY MR. NATBONY:
18    Q.    Well, you did draft some flow of
19  funds documents relating to the toll revenues
20  as separate and apart from this exhibit, did
21  you not?
22    **A.    Correct.**
23    Q.    And is it your recollection that
24  when you looked at the flow of funds that with
25  respect to toll revenues they never touched any

---

**83**

1  Commonwealth bank account?
2    **A.    That's correct.**
3    MR. NATBONY:  Okay.  Let's pull up
4  tab 39.  Let's mark that as -- I think we
5  already marked it as Monoline Exhibit 1, so
6  let's bring it up.
7    Let's turn to page 5.
8  BY MR. NATBONY:
9    Q.    This is a letter, Mr. Ahlberg,
10  that we received from your counsel, Ms. McKeen,
11  on March 13th of 2020.
12    I'm looking at page 5.  I'd like
13  you to take a look at the language about
14  three-quarters of the way down the page that
15  starts with the word "Fondo."
16    Do you see that?
17    **A.    I do.  Would you give me a minute**
18  **to page through the rest of this document?**
19    Q.    Surely.
20    MS. McKEEN:  I don't want to
21  interrupt your flow, but as we get closer to
22  1 o'clock Eastern, I think it might make sense
23  to take some form of a lunch break or a half
24  hour break or something, whatever makes sense,
25  when you get through this document or however

---

**84**

1  you want to do it.
2    MR. NATBONY:  I thought we were
3  working on Central time, but if you folks want
4  to do lunch at 1, I have no problem doing that.
5  We have not been going for that long.  It'll be
6  an earlier lunch.
7    MS. McKEEN:  I don't care if
8  anyone actually eats.  I just think if we could
9  take a break around 1 o'clock, that would be
10  great.
11    MR. NATBONY:  Okay.  I'll do my
12  best.  Right around there is fine.
13    MS. McKEEN:  Thanks.
14  BY MR. NATBONY:
15    Q.    Let me know when you're ready,
16  Mr. Ahlberg.
17    **A.    Ready.**
18    Q.    So looking at the language that I
19  referred you to, would you agree that Funds in
20  Treasury's accounting system are both fiscal
21  and accounting entities?
22    **A.    That's what the document says.**
23    Q.    But do you agree with that
24  statement?
25    **A.    Yes.**

---

**85**

1    Q.    The next sentence says:
2    Funds segregate financial
3  information for the purpose of carrying on
4  specific activities and attaining certain
5  objectives in accordance with regulations,
6  restrictions and limitation.
7    Do you agree with that language?
8    **A.    Yes.**
9    Q.    What were the objectives for the
10  Fund 278 designation?
11    MS. McKEEN:  Objection.  What --
12  are you asking what the Commonwealth's
13  objections were -- objectives were with the
14  designation?
15    MR. NATBONY:  Yes.
16    MS. McKEEN:  Okay.  That sounds a
17  lot like asking him why the Commonwealth did
18  something, so it's the exact same instruction
19  as when you asked the question previously, and
20  I'm going to instruct the witness not to
21  answer.
22  BY MR. NATBONY:
23    Q.    Okay.  The next line is:
24    Fund 278 is one of the many Fund
25  numbers used to designate Special Revenue Funds

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

23 (Pages 86 to 89)

---

**86**

1   within the Treasury systems.
2          Do you agree with that statement?
3      A.    Yes.
4      Q.    The next line is:
5          Separate Fund numbers exist to
6   designate Federal Funds under Puerto Rico
7   General Fund.
8          Do you agree with that statement?
9      A.    Yes.
10     Q.    Okay.  The next paragraph talks
11  about the value post 660000, referring to HTA
12  within PRIFAS, P-R-I-F-A-S.
13         Do you agree with that statement?
14     A.    Yes.
15     Q.    In the course of your work with
16  AAFAF, have you ever seen any written reports
17  concerning Fund 278?
18     A.    Could you clarify what you mean by
19  "written reports"?
20     Q.    Any reports that talk about Funds
21  that -- that concern Fund 278.
22         MS. McKEEN:  Objection, object to
23  the form.
24         THE WITNESS:  As previously
25  mentioned, it is possible to run reports on the

---

**87**

1   collections received into the Collecteria
2   accounts and extract Fund designation from
3   there.
4   BY MR. NATBONY:
5      Q.    Have you seen those types of
6   reports in preparation for the deposition
7   today?
8      A.    I have.
9      Q.    Have you seen any reports that
10  show withdrawals from the Fund 278
11  designations?
12         UNIDENTIFIED SPEAKER:  Object to
13  the form.
14         MR. NATBONY:  I'll rephrase it.
15  BY MR. NATBONY:
16     Q.    Have you seen any reports
17  indicating withdrawals from Fund 278?
18         MS. McKEEN:  Same objection.
19         UNIDENTIFIED SPEAKER:  Same
20  objection.
21         THE WITNESS:  I have seen reports
22  prepared by HTA management that does have the
23  word "withdrawals" on it.
24  BY MR. NATBONY:
25     Q.    Now, you mentioned PRIFAS before,

---

**88**

1   so tell me what PRIFAS is.
2      A.    PRIFAS is the Puerto Rico
3   Information and Financial Accounting System.
4      Q.    And what is SURI, S-U-R-I?
5      A.    That's a Spanish acronym, like the
6   unified collection system -- I apologize,
7   that's mis -- misphrased, but (indiscernible).
8      Q.    And what is SURI used for?
9      A.    SURI is a revenue -- collection
10  revenue recognition platform.
11     Q.    Is SURI used for the collection of
12  HTA excise taxes?
13     A.    No.
14     Q.    Does the PRIFAS accounting system
15  maintain historical records of all accounting
16  entries for the Commonwealth?
17     A.    There is accounting information
18  stored within PRIFAS.  I don't know if it
19  maintains every accounting entry.
20     Q.    Does PRIFAS maintain records by
21  Fund?
22     A.    There are historical records in
23  PRIFAS that include a Fund-type designation.
24     Q.    And Fund 278 is a Fund designation
25  maintained in PRIFAS, right?

---

**89**

1      A.    Correct.
2      Q.    Does Treasury maintain any ledgers
3   for each Fund?
4      A.    I'm not certain of the specifics
5   of the accounting ledgers.
6      Q.    Do you know whether any ledgers
7   that are maintained for Fund 278 are done in
8   accordance with GASB standards?
9          MS. McKEEN:  Object to the form.
10         THE WITNESS:  Not being a CPA, I'm
11  not sure of the Treasury standards, but also
12  not sure about the first part of your question
13  as well.
14  BY MR. NATBONY:
15     Q.    Do you know whether Treasury does
16  any reconciliations for the various Funds?
17  "Funds" is capitalized.
18     A.    I do know that Treasury monitors
19  transactions.  I'm not aware of any specific
20  ledger tracking.
21     Q.    How do they monitor transactions
22  getting to Fund 278?
23     A.    I would include -- I mean, just
24  downloading the information from Collecteria
25  with all the transactions that were tagged with

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

24 (Pages 90 to 93)

**90**

1  278 would be a first step in that process.
2      Q.     Are there other steps that the
3  Commonwealth can take to monitor transactions
4  with respect to Fund 278?
5      A.     There's interaction between
6  Treasury and HTA to agree upon amounts.
7      Q.     What do you mean by:
8  "There's interaction between
9  Treasury and HTA to agree upon amounts"?
10     A.     I just meant that -- I just meant
11 that HTA and Treasury are in communication.
12     Q.     What are they in communication
13 about with respect to Fund 278?
14     A.     I don't know of any specific
15 Fund 278, you know, interaction, but HTA
16 typically receives a transfer from Treasury on
17 a monthly basis, so there is -- there would be
18 a phone call before that transfer is made.
19     Q.     Is that a phone call you would
20 make?
21     A.     No.
22     Q.     Who would be making that phone
23 call?
24     A.     I'm not certain who would be
25 making that phone call.

**91**

1      Q.     What is the BPPR collection
2  system?
3      A.     That -- is there a specific
4  location where that phrase is used, because I
5  think it depends on the context.
6      Q.     Well, is that an automated system
7  that reports collections including, for
8  instance, things like excise taxes?
9             MS. McKEEN:  Objection.
10            THE WITNESS:  Could you clarify
11 what you mean by "BPPR collection system"?
12 BY MR. NATBONY:
13     Q.     Well, is there some automated
14 system within the Commonwealth that reports
15 collections for things like excise taxes?
16     A.     There are no automated reports for
17 excise taxes.
18     Q.     How does the Commonwealth track
19 excise tax revenues -- well, strike that.
20            Is collections data of excise
21 taxes provided to PRIFAS, P-R-I-F-A-S?
22     A.     I don't -- I'm not sure the way
23 you're using, like, "provided to PRIFAS." That
24 doesn't really make sense to me.
25     Q.     Well, the collection of excise tax

**92**

1  revenues does have to be input somehow to the
2  PRIFAS system, right?
3      A.     Collections would interface with
4  PRIFAS.
5      Q.     So that PRIFAS is able to issue
6  reports on collections, including excise taxes,
7  right?
8             MS. McKEEN:  Object to form.
9             THE WITNESS:  The report that I
10 previously mentioned where you would take Fund
11 278 from Collecteria collections, transactional
12 detail, that is extracting data, cash
13 transaction data from that account.  That is
14 not extracting data from PRIFAS.
15 BY MR. NATBONY:
16     Q.     Where does it extract from?
17     A.     It extract data from Collecteria
18 bank accounts.
19            Now, that information does
20 interface with PRIFAS, but I just -- I don't
21 extract that information from PRIFAS for
22 purposes of cash reporting, because my focus
23 would be on cash, so I would go to the actual
24 cash accounts and pull those numbers.
25     Q.     But the information in Collecteria

**93**

1  would be in PRIFAS, would it not?
2             MS. McKEEN:  Object to the form.
3             THE WITNESS:  The collections
4  received into Collecteria are recorded into
5  PRIFAS.
6  BY MR. NATBONY:
7      Q.     So would reports be able to be run
8  through PRIFAS that show the amounts of excise
9  taxes collected over various periods of time?
10     A.     Reports from PRIFAS would show the
11 amount of revenue earned, not necessarily cash
12 collected.
13     Q.     But you would be able to run
14 reports under PRIFAS for amounts of revenue
15 earned, for example, HTA excise taxes?
16     A.     Correct.
17            MR. NATBONY:  Okay.  It's a little
18 after 1.  You wanted to take a break, Liz, so
19 I'm happy to do that at this time.  Do we want
20 to reconvene at 1:30, 1:35?
21            MS. McKEEN:  That works great for
22 us.
23            MR. NATBONY:  All right.  Thank
24 you very much, Mr. Ahlberg, and we'll be
25 reconvening at 1:35.  People are going to stay

94

on, I guess, and not disconnect. We'll come back at 1:35, all right?
THE WITNESS: That's my question. What -- do I hang up and end now, or do we just go on mute and hide video and wait to come back?
MS. McKEEN: Tim, I think you should hang up your phone and hide video.
THE WITNESS: Okay.
MS. McKEEN: I think that will be sufficient.
MR. NATBONY: Okay. Thank you, everybody.
THE VIDEOGRAPHER: We are off the record at 12:05 p.m.
(Recess taken.)
AFTERNOON SESSION
THE VIDEOGRAPHER: We are back on the record at 12:37 p.m.
MR. NATBONY: Thank you.
BY MR. NATBONY:
Q. Good afternoon, Mr. Ahlberg. We will continue our questioning.
When we left off, we were talking about Fund 278 reports.

95

**A. Excuse me. Is your camera on? I can't see your box.**
Q. It's on, yes.
**A. I can only see myself and Liz.**
Q. I'll just turn it off and turn it on again, see if that works.
My camera is on. I see the three of us. Do you not see me?
**A. Okay. Now, I'm seeing everyone.**
Q. Okay. Okay. So based on your work with the Commonwealth, what Commonwealth systems can run reports concerning Fund 278?
**A. Off the top of my head, I think that you could run a cash collections report for Fund 278, mining data from the transaction details from the Collecteria sweep account.**
**Additionally, within PRIFAS, you may be able to collect a Fund -- Fund designation and run a report that would show eamed revenues for that Fund number during the discrete time period specified by the query.**
Q. Are there any reports that you're aware of that can be run showing the current balance of Fund 278?
MS. McKEEN: Object to the form.

96

THE WITNESS: Not from the PRIFAS system.
BY MR. NATBONY:
Q. Are you aware of any system that would be able to run such a report?
**A. No.**
Q. Is it your testimony that you know there is no such ability, or you just don't know?
**A. I didn't catch the last -- I didn't catch the phrasing of the question.**
Q. Is it your testimony that you know there is no ability to run such a report, or you just don't know?
**A. I've never seen the capability of the system to do that.**
Q. Well, do you know whether or not there is an ability to run a report that would show what is the current balance in Fund 278?
MS. McKEEN: Objection.
THE WITNESS: I'm not aware of a report that you could run that would show that within PRIFAS.
BY MR. NATBONY:
Q. And again, I just want to be

97

clear. Is it that you're just not aware of any or you know for sure that there is none?
**A. There are no ongoing reports that are -- that are typically generated in the course of business like this.**
Q. I'm not asking you that question.
I'm asking you whether you know definitively whether or not a report can be created that would show the current balance in Fund 278.
MS. McKEEN: Objection.
THE WITNESS: I don't think so.
BY MR. NATBONY:
Q. Now, you mentioned that there was a couple of different types of reports that you could obtain. What information can you obtain in a report relating to Fund 278 aside from earned revenues?
**A. Earned revenues or cash collection at the point of receipt into the Collecteria account.**
Q. Does the Commonwealth engage in any activities to reconcile revenues earned to revenues collected with respect to Fund 278?
**A. I didn't hear the first part of**

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

26 (Pages 98 to 101)

**98**

1  your question.
2      Q.    Does the Commonwealth do anything
3  to reconcile revenues earned to revenues
4  collected with respect to Fund 278?
5      A.    Yeah, that would involve making
6  sure that cash collection is assigned to the
7  appropriate accrual accounting period.
8      Q.    How would you do that?
9      A.    I'm not certain how those entries
10  get entered into the system.
11      Q.    But there would be a way to do it,
12  right?
13      A.    A way to do what?
14      Q.    Reconcile revenues earned to
15  revenues collected for Fund 278.
16      A.    We can certainly compare cash
17  collection to earned revenue.  I understand the
18  differences between the two.
19          MR. NATBONY:  Okay.  Let's pull up
20  tab 37, which will be Monoline Exhibit 8.
21          (Monoline Exhibit 8 is
22          introduced for the record.)
23  BY MR. NATBONY:
24      Q.    Do you see it?
25      A.    I see that document now.

**99**

1      Q.    Okay.  Great.
2          Take a look at this four-page
3  document, and I will let you know that there is
4  an English -- certified English translation
5  that follows it, but happy for you to just look
6  at the exhibit, first four pages, if you
7  understand Spanish.
8          Have you seen this document --
9          MS. McKEEN:  Bill, I'd like to see
10  the certified English translation.
11          MR. NATBONY:  It's there.  It's
12  right attached to it.
13          MS. McKEEN:  Thank you.
14  BY MR. NATBONY:
15      Q.    Looking at the first four pages of
16  this document, have you seen this document
17  before?
18      A.    Will you give me one minute to
19  review the document, please?
20      Q.    Sure.
21      A.    I have not seen this document
22  before.
23      Q.    Okay.  This is a document that was
24  produced to us.  Do you have any idea what the
25  relationship of Ernst & Young is to HTA?

**100**

1      A.    I believe they were the auditing
2  firm of HTA.
3      Q.    So they were the auditors for HTA
4  in 2016?
5      A.    I'm not certain of the years that
6  EY was the auditor of HTA.
7      Q.    Well, the date of this letter is
8  2016, and you would agree with me that this is
9  a response to a Request For Information by
10  Ernst & Young, correct?
11          MS. McKEEN:  Object to the form.
12          THE WITNESS:  That's what the
13  document says.
14  BY MR. NATBONY:
15      Q.    Okay.  Is it fair to say that
16  Ernst & Young was seeking a list of payouts
17  that the HTA maintained in Treasury?
18          MS. McKEEN:  Objection.
19          THE WITNESS:  It's not clear to me
20  from this document.
21  BY MR. NATBONY:
22      Q.    Okay.  What do you understand this
23  letter to be?
24      A.    This letter appears to be a
25  request for certification of the information

**101**

1  related to the accounts with the
2  authority below.
3      Q.    All right.  And it's asking for
4  accounts that are maintained at Treasury,
5  correct?
6          MS. McKEEN:  Objection, document
7  speaks for itself.
8  BY MR. NATBONY:
9      Q.    You can answer.
10      A.    It's not clear to me that this
11  department refers to Treasury.
12      Q.    Do you have any personal knowledge
13  about this letter or the response that was made
14  to -- sorry.
15          Do you have any personal knowledge
16  as to the request that came from Ernst & Young
17  for this response that was provided to Ernst &
18  Young?
19          MS. McKEEN:  Object to the form of
20  the question.
21          THE WITNESS:  No.
22  BY MR. NATBONY:
23      Q.    In looking at the heading of the
24  letter, it is from the Treasury, right?
25      A.    That is what the header says.

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

27 (Pages 102 to 105)

---

**102**

1  Q.  So it is a letter from -- it is a
2  letter from the Treasury (indiscernible),
3  correct?
4  MS. McKEEN:  Objection.  Bill,
5  you're also cutting out.
6  MR. NATBONY:  Sorry.
7  THE WITNESS:  You want to -- you
8  want to break for a moment?  You want to go on
9  mute?
10 BY MR. NATBONY:
11 Q.  So the letter is a letter from the
12 Treasury providing information to Ernst &
13 Young, correct?
14 MS. McKEEN:  Objection.
15 THE WITNESS:  That's what the
16 document says.
17 BY MR. NATBONY:
18 Q.  And you do agree with me that this
19 is a response that talks about accounts that
20 are maintained at Treasury by HTA?
21 MS. McKEEN:  Same objection.
22 THE WITNESS:  That's what the
23 document says.
24 BY MR. NATBONY:
25 Q.  And if you look at pages 2 to 4 of

---

**103**

1  the document, they have various Fund 278
2  accounts.
3  MS. McKEEN:  Object to the form of
4  the question.
5  THE WITNESS:  Are you referring to
6  pages 6 and 7 of the certified English
7  translation?
8  BY MR. NATBONY:
9  Q.  No, I'm talking pages 2 to 4 of
10 the Spanish version that you're looking at.
11 The question is the --
12 A.  Could you repeat the question?
13 Q.  Sure.  These are listings of the
14 Fund 278 tabs that HTA was maintaining at
15 Treasury, correct?
16 MS. McKEEN:  I'm just going to
17 object to questioning of the witness about the
18 Spanish portions of the document when he had
19 asked about pages 6 and 7 of the translation.
20 If the witness would prefer to work in the
21 English version, I'd ask that we do that.
22 MR. NATBONY:  He can look at
23 whichever version he wants, Liz.  I have no
24 objection.
25

---

**104**

1  BY MR. NATBONY:
2  Q.  So let me ask the question again.
3  Following the first page of this
4  letter, there are several pages, and those
5  pages list Funds (indiscernible) that HTA was
6  making from the Treasury, correct?
7  MS. McKEEN:  Objection.
8  THE WITNESS:  It's not clear to me
9  from this document that Fund 278 is noted
10 anywhere in the document.
11 BY MR. NATBONY:
12 Q.  Okay.  Well, let's look at the
13 second page.  Are you going to look at the
14 Spanish or the English version?
15 A.  English.
16 Q.  English?  So looking at the second
17 page of the document, which is HTA 0028472,
18 there are numbers at the top of the page that
19 say 278-0660000 and other numbers.  Do you see
20 that?
21 A.  Yes, I do see that.
22 Q.  Doesn't that indicate to you
23 Fund 278?
24 MS. McKEEN:  Objection to the form
25 of the question.

---

**105**

1  THE WITNESS:  I do see Fund 278
2  there that I did not see before.
3  BY MR. NATBONY:
4  Q.  Okay.  And you also see it all
5  throughout pages 2 to 4, right?  Several times
6  on page 2 and several times on page 3 and
7  several times on page 4, correct?
8  MS. McKEEN:  Objection to the
9  form.
10 THE WITNESS:  It is true that the
11 number 278 appears various times on those
12 pages.
13 BY MR. NATBONY:
14 Q.  And you understand that to relate
15 to Fund 278, correct?
16 A.  That is my understanding.
17 Q.  And the second part of each
18 account number, the 0660000 number, is a number
19 associated with HTA, correct?
20 A.  That is the HTA department ID
21 within the PRIFAS system.
22 Q.  For each account listed here, it
23 gives a description of the source of revenue
24 for each account, right?
25 MS. McKEEN:  Objection.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

28 (Pages 106 to 109)

---

**106**

1    THE WITNESS:  There are sources of
2  revenues listed.
3  BY MR. NATBONY:
4    Q.    Right.  And those sources of
5  revenues include gasoline taxes, right?
6    A.    That's what the document says.
7    Q.    Diesel taxes?
8    A.    That's what the document says.
9    Q.    Vehicle license fee?
10   A.    Are you referring to motor
11 registration?
12   Q.    Yes, sir.
13   A.    I see that.
14   Q.    Crude oil, petroleum taxes?
15   A.    I see those on the document.
16   Q.    Toll fines?
17   A.    I see those on the document.
18   Q.    And on page 3, cigarette taxes
19 also, correct?
20   A.    Cigarette taxes is listed.
21   Q.    Now, I'm going to ask you, if you
22 can, just to -- do you have a pencil handy?
23   A.    I do have a pencil handy but no
24 paper.
25   Q.    No?  Well, maybe you can try just

---

**107**

1  to jot down a couple of figures that are listed
2  on page 1 of the -- two exhibits on the screen,
3  which I think would save time.
4    But if you could mark just how
5  many amounts of revenue listed in the 278 Funds
6  for gasoline, diesel and motor vehicle license
7  fees on page 1, that would be helpful.
8    So the gasoline taxes are
9  approximately 157 million --
10   A.    Will you allow me a minute here to
11 grab a piece of paper?
12   Q.    Sure.
13   A.    Okay.  I have paper.
14   Q.    Okay.  Did you jot down those
15 three numbers for gasoline taxes, diesel oil
16 taxes and motor vehicle licenses?
17   A.    No.  Which -- which pages, which
18 numbers?
19   Q.    One -- in the Heading A, there are
20 three numbers.
21   A.    Can you see that circle?  Are
22 these the numbers that you want?
23   Q.    It's the 157 million, 10 million.
24   A.    I see that, sir.
25   Q.    Correct.  Thank you for doing

---

**108**

1  that.
2    Let me know when you're done.
3    A.    Okay.
4    Q.    Okay.
5    MR. NATBONY:  Now, let's bring up
6  1029, which we'll mark as Monoline Exhibit 9.
7    (Monoline Exhibit 9 is
8    introduced for the record.)
9  BY MR. NATBONY:
10   Q.    Okay.  Looking at that document,
11 at least by the cover, do you recognize it to
12 be the audited financials for HTA for fiscal
13 year 2014 to '15?
14   A.    Just looking at the cover, yeah.
15   Q.    And the numbers that we just
16 looked at in the prior document were for that
17 same period, correct?
18   A.    Correct.
19   Q.    Let's take a look at page 25, PDF
20 page 25 -- I should say the 25th page, which is
21 really page 23.
22    So looking at that listing of
23 revenues, is it fair to say that the revenue
24 amounts listed in the financial statements for,
25 for example, gasoline, diesel, and motor

---

**109**

1  vehicle license fees, generally matched
2  deposits in the Fund 278 accounts that Treasury
3  disclosed to Ernst & Young?
4    A.    The numbers are generally close.
5    Q.    So Fund 278, you know, is the Fund
6  that records HTA's revenues, right?
7    MS. McKEEN:  Objection.
8    THE WITNESS:  That is the Fund
9  number used to identify and record these
10 revenues.
11 BY MR. NATBONY:
12   Q.    And therefore, those same numbers,
13 the Fund 278 numbers, were used to report HTA's
14 revenues to the public, right?
15   A.    Could you repeat that?
16   Q.    And those...
17    And, therefore, those same
18 numbers, the Fund 27 -- Fund 287 numbers were
19 used to report HTA's revenues to the public,
20 correct?
21   A.    I believe you may have just
22 misspoken.  You said 287 instead of 278.
23   Q.    You're absolutely right.  I think
24 I was reading 27 in the transcript.  So I will
25 repeat the question.

---

Case:17-03283-LTS Doc#:13378-14 Filed:06/08/20 Entered:06/08/20 23:36:49 Desc:
Exhibit 21 - Part 1 Page 31 of 82

So is it fair to say that those same numbers, the Fund 278 numbers, were used to report HTA's revenues in the audited financial statement released to the public?
A. **I don't know how EY generated those numbers for this document and if they used the Fund number or not.**
Q. But they are generally the same, correct?
A. **They are generally similar.**
Q. What is an SC 735 payment voucher?
A. **Off the top of my head, I'm unsure what you're referring to.**
Q. Are there vouchers that serve as requests for transfers of Funds from Commonwealth accounts?
A. **In some cases, yes.**
Q. Are you familiar with the designation SC 735 as a type of that voucher?
A. **I'm not familiar with that specific type of voucher.**
Q. Has HTA had the ability to direct transfers from Fund 278?
MS. McKEEN: Objection.
THE WITNESS: I'm not sure who

directs the transfers.
BY MR. NATBONY:
Q. Okay. Well, based on your knowledge, if you don't know, you don't know, but is it your understanding that HTA has had the authority to direct transfers of Funds from Fund 278?
A. **That is not my understanding.**
Q. Okay. Do you have an understanding as to whether HTA has had the authority to do so?
A. **You broke up slightly in that question.**
Q. What is your understanding as to whether HTA has had the authority to direct transfers from Fund 278?
MS. McKEEN: Objection.
THE WITNESS: I don't know one way or the other the historical authority of HTA there.
MR. NATBONY: Okay. Let's pull up tab 44. And let's mark this as Exhibit 10.
(Monoline Exhibit 10 is introduced for the record.)

BY MR. NATBONY:
Q. While that's coming up, do you know an individual by the name of Cesar M. Gandiaga Texidor?
A. **The name does not ring a bell, but it's possible that I might know this person.**
Q. Has HTA ever had the ability to direct transfers of monies from the TSA based on reported revenues in Fund 278?
A. **No.**
MS. McKEEN: Objection.
BY MR. NATBONY:
Q. Is it that you're sure it's no or you just don't know one way or the other?
A. **Could you repeat the question?**
Q. Has HTA ever had the ability to direct transfers of monies from the TSA based on reported revenues in Fund 278?
MS. McKEEN: Same objection.
THE WITNESS: Yeah, I'm not aware of the historical authority to effectuate transfers.
BY MR. NATBONY:
Q. One way or the other, correct?
A. **One way or the other.**

Q. Looking at Monoline Exhibit 10, which is now up on the screen, have you ever seen this Treasury circular letter before?
A. **Would you please give me a minute to scroll through the document?**
Q. Of course.
A. **Do you have a certified translation?**
Q. I do. It follows. I don't think there -- is there one there?
A. **I have not received this document previously.**
Q. Okay. Do you understand this document to be a request for -- I'm sorry, strike that.
Would you agree with me that as set forth on page 1 of this document that the purpose is to share instructions to be followed by the agencies for which data entry has been delegated, as well as to approve certain financial transfers?
MS. McKEEN: Objection.
THE WITNESS: That's what the document says.

114

BY MR. NATBONY:
Q. Okay. And if you look at Appendix 3, which is page 13 of the appendix, SC 735 payment vouchers are listed as one of the payment vouchers whose approval is delegated to the agencies, correct?
MS. McKEEN: Objection.
THE WITNESS: That is what the document says.
BY MR. NATBONY:
Q. Okay. So basically for SC 735 vouchers, HTA had an ability to approve such vouchers, correct?
MS. McKEEN: Objection.
BY MR. NATBONY:
Q. You can answer.
**A. The document --**
MS. McKEEN: Please look at the document.
BY MR. NATBONY:
Q. I'm sorry?
**A. The document says that documents for which data entry and approval have been delegated to the agencies.**
Q. Right, and HTA is one of the

115

agencies, correct?
**A. It's not clear to me from this document.**
Q. Well, HTA is one of the Commonwealth's agencies, correct?
**A. It depends.**
Q. What do you mean by "it depends"?
**A. I don't refer to HTA as an agency of the government. I refer to it as a component unit or instrumentality.**
Q. Sitting here today, do you have any reason to think that Exhibit 10 does not apply to HTA?
**A. I don't have enough information to say one way or the other based on this document.**
MR. NATBONY: Let's pull up tab 25, and we'll mark that as Exhibit 11.
(Monoline Exhibit 11 is introduced for the record.)
BY MR. NATBONY:
Q. One second. Okay. Looking at this series of documents -- and I believe the first two pages are out of order, which is why I paused for a moment.

116

I think the second page belongs right before the first page, but if you look -- just so you know, there are these documents and also a certified translation in the back, if you wanted to refer to it.
But looking at the first page, which is really the second page, the one with 466 at the bottom, this is out of order. Just give me one second.
Okay. Can you tell me what that document is, the 466 document?
**A. I'm trying to find the -- do you know which page the certified English translation is on?**
Q. I can check for you.
I believe it would be -- I can't tell you what PDF number it is. It's about halfway through the document.
Are you not able to tell from the Spanish version just basically what form this is?
MR. NATBONY: Jaclyn, on the form, it should be page 28.
THE WITNESS: Thank you.

117

BY MR. NATBONY:
Q. So 28 is the letter and -- and who's moving the document here? Just a minute.
And 29 is the -- 28 is the letter, and 27 is the accompanying form. But looking at PDF page 27, which is marked HTA-STA0000467, what is that document?
**A. I have not seen this specific document before.**
Q. Okay. Well, looking at the top, would you agree with me that it says SC 735, so this is an SC 735 voucher?
**A. I see the document says Model SC 735.**
Q. Okay. And looking at the two pages that are related, second page is related to the first. It contains the same voucher number, right?
MS. McKEEN: Objection.
THE WITNESS: Where?
BY MR. NATBONY:
Q. The page you were just looking at has a voucher number on it, doesn't it? Under invoice number, it says 15, then it has a few zeroes, 1500021? Do you see that?

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

31 (Pages 118 to 121)

---

**118**

1      A.      I do see that.
2      Q.      Now, the accompanying letter
3  refers to the same voucher number, correct?  Go
4  one page back.
5              Jaclyn is telling me it should be
6  on page 28, sir.
7      A.      I see the same voucher number
8  there.
9      Q.      So these documents, is it fair to
10  say, show the transfer of $6 million of
11  gasoline tax proceeds from Treasury's
12  operational account, that's 0006, to an HTA
13  account at Oriental Bank?
14      A.      That is what this document says.
15      Q.      Okay.  And the voucher itself that
16  you were looking at shows that the money
17  withdrawn from Treasury's operational account
18  comes from Fund 278, doesn't it?
19      A.      The document does list Fund 278
20  there.
21      Q.      Okay.  And by the way, who was the
22  individual that authorized this voucher
23  authorizing the transfer from the Treasury's
24  operational account?
25      A.      That's not clear to me from this

---

**119**

1  document.
2      Q.      Well, looking at the signature on
3  the right that says:
4              I certify --
5      A.      I see that.
6      Q.      -- that the above transfer was
7  made following procedures established by law
8  and existing regulations, which I have not
9  previously approved for which I authorized.
10              Do you see that?
11      A.      Yes, I do see that.
12      Q.      And there's a signature underneath
13  there, correct?
14      A.      An electronic signature, yes.
15      Q.      Okay.  And do you know who that
16  person is?
17      A.      I do not know who that individual
18  is.
19      Q.      Okay.  He was the executive -- the
20  Deputy Executive Director of Administration and
21  Finance at HTA, wasn't he?
22      A.      I'm not positive.  I don't have a
23  relationship with this individual.
24              MR. NATBONY:  Let's pull up tab
25  23.  We'll mark that as Exhibit 12.

---

**120**

1              (Monoline Exhibit 12 is
2              introduced for the record.)
3  BY MR. NATBONY:
4      Q.      And let's go to page 28 of that
5  document.  Just looking at that single page, do
6  you see where it says Mr. Texidor is the
7  director and (indiscernible) administration and
8  finance with respect to HTA?
9      A.      It does not say HTA on this
10  document.
11      Q.      The document itself is from the
12  Highway Transportation Authority, isn't it?
13      A.      The header of the document is an
14  HTA header.
15      Q.      Right.  And the DV language, that
16  means from, right?
17      A.      That does mean from.
18      Q.      So this is from Mr. Texidor, who
19  identifies himself as the -- as the Executive
20  Director of Administration and Finance of HTA,
21  correct?
22      A.      Again, it does not specify that he
23  is the executive director for HTA on that
24  document.
25      Q.      Do you have any reason to dispute

---

**121**

1  that he is the executive director or was an
2  executive director of HTA at the time?
3      A.      No.
4      Q.      Let's go back to tab 25, which was
5  Exhibit 11.
6              So looking again at the page with
7  the markings 467 at the bottom, this is a
8  transfer from the Commonwealth's operational
9  account that was authorized by Mr. Texidor,
10  correct?
11      A.      That is what this document says.
12      Q.      And if you scroll through the
13  further documents in this set of documents, you
14  would agree that there are other similar
15  transfers from Commonwealth operation accounts
16  relating to Fund 78 [sic] to HTA accounts
17  authorized by Mr. Texidor, correct?
18      A.      From Fund 278, just to clarify.
19      Q.      Yes.
20              Are you looking through the
21  document?  My question was -- I'll repeat it --
22  do the remaining documents within this exhibit
23  reflect similar transfer vouchers for excise
24  tax revenues from TSA operating (indiscernible)
25  to (indiscernible) authorized by Mr. Texidor,

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

32 (Pages 122 to 125)

---

**122**

1  correct?
2          MS. McKEEN:  Object to the form.
3          THE WITNESS:  So I think I was on
4  mute.  Sorry.
5          There are other transfers within
6  this document of vouchers that appear similar
7  and also signed by Mr. Texidor, as was the
8  other document we looked at.
9  BY MR. NATBONY:
10         Q.     Thank you.  And these also reflect
11 that they are transfers relating to Fund 278
12 related to HTA, correct?
13         A.     Yeah, from -- from the other ones
14 that I just looked at, yes.
15         MR. NATBONY:  Okay.  Let's pull up
16 tab 42 and mark that as Monoline Exhibit 13.
17         (Monoline Exhibit 13 is
18          introduced for the record.)
19         MR. NATBONY:  I just lost Liz
20 McKeen video.
21         Liz, are you still on?
22         UNIDENTIFIED SPEAKER:  I also have
23 lost her.
24         MR. NATBONY:  Okay.  By agreement,
25 I'm going to hold the questioning until I see

---

**123**

1  Liz back on the screen.
2          THE WITNESS:  Okay.
3          UNIDENTIFIED SPEAKER:  Liz was
4  disconnected.  She'll be back on in a moment.
5  She texted.  We just wanted to you to know she's
6  aware, and she'll be back on momentarily.
7          MR. NATBONY:  Okay.  Jaclyn, you
8  can pull up tab 42 while we're waiting.
9          Hi, Liz, are you here?
10         MS. McKEEN:  I am seemingly back.
11 Can you guys hear me?
12         MR. NATBONY:  Yes, we did hold
13 questioning because I noticed I'd lost your
14 feed.
15         MS. McKEEN:  I did my best to
16 make --
17         MR. NATBONY:  That's fine.
18         (Simultaneous speaking.)
19         MR. NATBONY:  As soon as I saw
20 your picture disappear, I stopped questioning.
21         MS. McKEEN:  Sounds good.  Much
22 appreciated.  Thank you.  I'm back.
23         MR. NATBONY:  Okay.
24 BY MR. NATBONY:
25         Q.     Will you look at what's been

---

**124**

1  marked as Monoline Exhibit 13.  Have you seen
2  this document before?
3          Did you answer?  I'm sorry, I
4  couldn't hear.
5          A.     Yes.
6          Q.     Okay.  This and the accompanying
7  flow of funds charts attached to it are
8  documents you drafted; is that correct?
9          MS. McKEEN:  Object.
10         THE WITNESS:  That is correct.
11 BY MR. NATBONY:
12         Q.     And what did you use to draft
13 these documents?
14         A.     In general, review of bank
15 statements and transfer details and vouchers
16 would inform this presentation.
17         Q.     Okay.  What was used to determine
18 that excise taxes were received into
19 collections accounts?
20         A.     That would be a bank statement or
21 bank transaction statement.
22         Q.     Anything else?
23         A.     To determine what again?  Would
24 you repeat it?
25         Q.     To determine what taxes, excise

---

**125**

1  taxes were received into collections accounts.
2          A.     Right.  You could use a download
3  of all the transactions, the bank transactions
4  into that collection account.
5          Q.     Okay.  And what documents did you
6  use to determine what transfers were made from
7  the collections accounts to the Commonwealth's
8  operational accounts?
9          A.     Also bank statement detail.
10         Q.     Anything else?
11         A.     Any -- any vouchers that would
12 have existed or transfer detail.
13         Q.     What documents would you have
14 looked at to determine whether excise taxes
15 were transferred from the operational account
16 to other TSA accounts?
17         A.     The way that you asked the
18 question, there's -- it's not possible.
19         Q.     Well, there were never any
20 transfers from the TSA operational account to
21 other TSA accounts?
22         A.     There were transfers out of the
23 TSA accounts to other accounts.
24         Q.     Okay.  And how would you determine
25 if there were such transfers?

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

33 (Pages 126 to 129)

---

**126**

1  A.   What kinds of transfers are you
2  referring to?
3  Q.   Well, transfers that would be
4  reflected on your flow of funds chart.
5  A.   We would look at voucher details
6  or bank statements, transaction data when
7  possible.
8  Q.   And what documents would you use
9  to determine whether excise tax revenues were
10  transferred from Commonwealth bank accounts to
11  HTA bank accounts or other accounts outside of
12  the Commonwealth?
13  A.   It's hard to say because, again,
14  as a concept, those -- those revenues are not
15  separately identifiable as a balance within the
16  TSA account.
17  Q.   Well, your flow of funds charts do
18  indicate movement of monies from Commonwealth
19  to HTA bank accounts in certain circumstances,
20  right?
21  A.   Correct.
22  Q.   How did you determine that that
23  occurred?
24  A.   One instance would be looking at
25  voucher details like the ones we just reviewed

---

**127**

1  together.
2  Q.   Like SC 735 vouchers?
3  A.   I'm not certain of that
4  classification of the vouchers reviewed.
5  Q.   Well, were there other kinds of
6  vouchers other than SC 735 that you looked at?
7  A.   The kind of voucher would not have
8  been a consideration that I would have looked
9  at.
10  Q.   My question was whether you looked
11  at vouchers that were different than the SC 735
12  vouchers.
13  A.   I did not specifically note the
14  kind of voucher while putting together Fiscal
15  Funds.
16  Q.   Did you look at any information
17  relating to Fund 278 when you drafted these
18  Flow of Fund charts?
19  A.   Yes.
20  Q.   What information did you look at
21  regarding Fund 278?
22  A.   That would include reviewing the
23  bank transaction detail from a collections
24  account that would have been identified with
25  Fund 278.

---

**128**

1  Q.   Any other documents or information
2  relating to Fund 278 that you used in drafting
3  these flow of funds charts?
4  A.   I can't recall off the top of my
5  head if there was another Fund, a 278 document
6  that informed --
7  Q.   Did you see that -- did the Flow
8  of Fund charts go through different drafts?
9  A.   The flow of funds charts did go
10  through different drafts.
11  Q.   And again, without revealing any
12  conversations with counsel, did you have any
13  discussions with anyone other than counsel
14  regarding the draft flow of funds charts?
15  A.   Yes, we discussed flow of funds
16  charts with -- the specific HTA flow of funds
17  chart would have been discussed with HTA
18  management as well as folks at Department of
19  Treasury.
20  Q.   Okay.  And did you have any
21  conversations regarding the HTA flow of funds
22  chart with Treasury or HTA personnel outside of
23  the presence of counsel?
24  A.   Not in preparation for this
25  deposition.

---

**129**

1  Q.   What about in drafting the flow of
2  funds charts?
3  A.   No.
4  Q.   Okay.  Not including any
5  conversations you had with counsel, was there
6  any disagreement with respect to what should be
7  involved in the flow of funds charts -- set
8  forth in the flow of funds charts?
9  A.   I don't know if I would use the
10  term "disagreement."  It was normal work
11  relationships of iterating a document.
12  Q.   Was there any consideration about
13  making any entries relating to Fund 278 to any
14  of the flow of funds charts?
15  A.   Would you repeat that question?
16  Q.   Was there consideration of
17  mentioning or putting any information about
18  Fund 278 into any of the charts?
19  A.   No.
20  Q.   Now, looking at the various flow
21  of funds charts, you identified account numbers
22  only using the last four digits of account
23  numbers, correct?
24  A.   In the flow of funds documents,
25  that is correct.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

34 (Pages 130 to 133)

---

130

1  Q.    And just so we're clear, there
2  were no account numbers that you were aware of
3  that had duplicate last four digits, right?
4      A.    I'm not aware of any accounts with
5  duplicate last four digits.
6      Q.    All right.  And so each of the
7  four-digit account numbers applies to only one
8  specific account, correct?
9      A.    Yes.
10     Q.    Okay.  Looking at page 1 of
11 Exhibit -- well, Exhibit 13, there's a footnote
12 that says:
13         HTA allocable revenue excludes
14 gas, petroleum, diesel, cigarette, and motor
15 vehicle license ex-tax -- excise tax revenue
16 collected by the Commonwealth of Puerto Rico
17 pursuant to Act 30 and 31.
18         Do you see that?
19     A.    I see the text.  I think you may
20 have said "excludes" when the document reads
21 "consists."
22     Q.    Okay.  But you see the footnote?
23     A.    I do see the footnote.
24     Q.    Why was this exclusion made?
25     A.    What exclusion, given that the

---

131

1  document says "consists"?
2      Q.    The footnote says:
3          Excludes gas, petroleum, diesel,
4  cigarette and motor vehicle tax revenue.
5          Do you see that?
6      A.    That is not what I see on my
7  screen.
8      Q.    The footnote on the first page of
9  the document, cover page?
10     A.    Oh, you're referring to the second
11 sentence here.  I see.
12     Q.    Do you see the exclusion relating
13 to gas, petroleum, diesel, cigarette and --
14     A.    Yes.  Sorry.  I was focused on the
15 first part of the --
16     Q.    But were these tax revenue -- yes,
17 you said?
18     A.    Yes, I see the footnote.
19     Q.    Why was that exclusion made?
20     A.    Those were excluded from the
21 allocable revenues.  I was directed by counsel
22 which revenues to focus on for this
23 presentation.
24     Q.    Okay.  Let's turn to the next page
25 of this exhibit, relating to the period

---

132

1  January 2015 to mid-September of 2015, correct?
2      A.    That's what this slide says.
3      Q.    What do the blue boxes signify?
4      A.    Those boxes are the HTA accounts
5  into which the flow of funds is presented here.
6      Q.    So these were accounts in the name
7  of HTA?
8      A.    HTA's name is on the bank
9  statements.
10     Q.    Okay.  How did you determine that
11 that was the case?
12     A.    By reviewing the bank statement.
13     Q.    And what do the white boxes
14 signify?
15     A.    Those boxes indicate that those
16 would be TSA accounts or Commonwealth accounts.
17     Q.    I didn't mean to interrupt you.
18 Go ahead.
19     A.    Commonwealth accounts.
20     Q.    So accounts in the name of the
21 Commonwealth?
22     A.    I believe the Commonwealth's name
23 would be on those bank statements.
24     Q.    And then you determined that by
25 looking at the bank statements as well?

---

133

1      A.    Correct.
2      Q.    Okay.  Now, looking at BPPR 5191,
3  is that a Commonwealth collections account?
4      A.    Yes, that is the Collecteria sweep
5  account.
6      Q.    So that's the account that you
7  said you could run reports on to determine what
8  revenues are collected, right?
9      A.    Correct.
10     Q.    Now, throughout the entire period
11 reflected in these -- in this chart, from
12 January 2015 to mid-September 2015, is it true
13 that Fund 278 would have shown the amount of
14 excise taxes received and deposited into the
15 Commonwealth bank accounts?
16         MS. McKEEN:  Object to the form.
17         THE WITNESS:  Fund 278 would be
18 used to tag the cash receipts into Account
19 5191.
20 BY MR. NATBONY:
21     Q.    And once funds are removed from
22 5191, is there an entry made into the Fund 278
23 records to indicate a change in some way of the
24 designation?
25     A.    No.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                      April 21, 2020

35 (Pages 134 to 137)

---

**134**

1    Q.    And when funds are transferred
2  from the 0006 account to HTA accounts, is there
3  some change in the Fund 278 designation?
4          MS. McKEEN:  Object to the form.
5          THE WITNESS:  Can we go -- can you
6  ask your previous question again, please?  Not
7  the one you just asked, the one that I just
8  answered?
9  BY MR. NATBONY:
10   Q.    "And when funds are removed from
11 Fund 5191, is there an entry made into the
12 Fund 278 records to indicate a change in some
13 way of the designation?"
14         And you responded:  No.
15   **A.    So I -- I think that question is**
16 **confusing, and that -- I think that I would**
17 **prefer a different question to -- to answer.**
18   Q.    What's confusing about it?
19   **A.    You asked about the change in the**
20 **designation of Fund type, Fund number.**
21   Q.    Well, in other words, when the
22 transfer is made from BPPR 5191 to GDB 0006, is
23 there any entry or deduction made to Fund 278?
24         MS. McKEEN:  Object to form.
25         THE WITNESS:  No, the entry to

---

**135**

1  Fund 278 would be made on recognition of those
2  receipts -- or receipt of the cash into 5191.
3  BY MR. NATBONY:
4    Q.    Right.  But let's say there's a
5  recognition of a million dollars of funds
6  brought into 5191.
7          At any point along the process
8  reflected in your Flow of Fund chart from
9  January 2015 to mid-September 2015, would the
10 amount of funds designated as part of 278
11 change?
12   **A.    The amount that was designated as**
13 **Fund 278, when received into Account 5191, does**
14 **not change, but those funds that was 27 --**
15 **Fund 278 are swept at the end of every day**
16 **together with other revenues in 5191 to account**
17 **006 in one batch transfer that does not**
18 **maintain the integrity of Fund number**
19 **information.**
20   Q.    So the Fund designation amount
21 doesn't change on that transfer, correct?
22         MS. McKEEN:  Objection.
23         THE WITNESS:  The Fund designation
24 has nothing to do with that transfer.
25

---

**136**

1  BY MR. NATBONY:
2    Q.    So throughout the entire period of
3  January 2015 to mid-September of 2015, is it
4  fair to say that the Fund 278 designation
5  amount remains the same?
6          MS. McKEEN:  Objection.
7          THE WITNESS:  I'm not certain just
8  within the PRIFAS system in the time period the
9  Fund 278 remains the same, but it did -- it --
10 revise that.  I mean -- could you ask the
11 question again?  I apologize.
12 BY MR. NATBONY:
13   Q.    The question was:
14         So throughout the period of
15 January 2015 to mid-September of 2015, is it
16 fair to say that the Fund 278 designation
17 amount remains the same?
18         MS. McKEEN:  Objection.
19         THE WITNESS:  I don't understand
20 the question as the Fund designation amounts
21 remaining the same.  That concept does not make
22 sense.
23 BY MR. NATBONY:
24   Q.    So you can't answer my question.
25

---

**137**

1          MS. McKEEN:  Objection.
2  BY MR. NATBONY:
3    Q.    You cannot answer my question the
4  way it's phrased?
5    **A.    Not the way it's phrased.  I'm**
6  **happy to answer a more specific question you**
7  **may have.**
8    Q.    So under this chart, the excise
9  taxes, after being received in BPPR 5191, are
10 then transferred to GDB 0006, correct?
11   **A.    Correct.**
12   Q.    Is 0006 the operational or
13 concentration account for the TSA?
14   **A.    During this time period, that**
15 **account is the TSA's main operating**
16 **disbursement account -- or main operating**
17 **account, rather.**
18   Q.    All right.  During the period
19 reflected by this particular chart page, does
20 the revenue amount recorded in Fund 278 change
21 throughout the period?
22         MS. McKEEN:  Objection.
23         THE WITNESS:  There may be
24 revenues recorded daily.  So throughout this
25 time period, the amount of revenue changes

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

36 (Pages 138 to 141)

---

**138**

daily.
BY MR. NATBONY:
    Q.    So it would change for additional
revenues received, correct?
    **A.    Only in terms of the amount of**
**revenue recognized as received into 5191 during**
**that time period.**
    Q.    Do you know what a Fund balance
is?
    **A.    I am aware of the concept of a**
**Fund balance.**
    Q.    What do you understand that to be?
    **A.    It honestly depends.**
    Q.    As to what? I'm sorry.
    **A.    It depends.**
    Q.    You don't have an understanding as
to what the term "Fund balance" means?
    MS. McKEEN: Objection. It's not
what he said.
    THE WITNESS: It depends what you
mean by "Fund balance."
BY MR. NATBONY:
    Q.    Well, if there are any revenues
that are expended, would that change the Fund
balance with respect to 278?

**139**

    MS. McKEEN: Objection.
    THE WITNESS: That -- that's not
how I think about Funds in terms of balances.
BY MR. NATBONY:
    Q.    Well, do you have an understanding
as to what the term "Fund balance" means in the
context of Fund 278?
    **A.    Again, I have a general**
**understanding of "Fund balance." It depends on**
**how you are using the term "Fund balance."**
    Q.    I'm asking you whether you have an
understanding as to what the term "Fund
balance" means in the context of 278. If you
don't, you don't.
    **A.    It's not a concept that we would**
**consider.**
    Q.    I just want to be clear, and I
apologize if it's a repetitive question, but
under this chart, once the excise tax is moved
to GDB 0006, is there any change or adjustment
that is made to the Fund 278 record?
    **A.    No.**
    MR. NATBONY: Let's pull up tab
49. Let's mark that as Exhibit 14.

**140**

    (Monoline Exhibit 14 is
    introduced for the record.)
BY MR. NATBONY:
    Q.    Now, while that's coming up,
Mr. Ahlberg, you say -- you use the word "we" a
lot; that's not something we would do or we
would consider.
    Who is the "we" when you say it?
    **A.    I was referring to Department of**
**Treasury and my work in liquidity management**
**for cash reporting with Department of Treasury.**
    Q.    Okay. So now looking at what's
been brought up as Exhibit 14, are you familiar
with this document?
    **A.    I am familiar with this document.**
    Q.    And what is it?
    **A.    I believe that this was prepared**
**by HTA -- HTA.**
    Q.    All right. And you're here today
representing HTA, right?
    **A.    Yes.**
    Q.    Okay. So what -- what is this
document?
    **A.    The document says that it is the**
**278 Fund Accreditation.**

**141**

    Q.    What is a Fund accreditation?
    **A.    I'm not certain what that exact**
**word means.**
    Q.    Okay. Well, it's some report
relating to Fund 278 for fiscal year 2014 to
'15, right?
    **A.    Correct.**
    Q.    And the first two pages, pages 1
and 2 show Fund 278 revenues for fiscal year
2014 and '15, correct?
    **A.    Taking a look at the document,**
**that's what it shows.**
    Q.    Okay. And that would include gas,
diesel, license tolls, cigarette and toll
taxes, right?
    **A.    That's what's shown on the**
**document.**
    Q.    On the second page of the
document, around a third of the way down on the
left, it has an entry called Fund Withdrawals.
    Do you see that?
    **A.    Yes.**
    Q.    Now, at what point would such
withdrawals be entered into the system?
    **A.    It's not clear to me from this**

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

37 (Pages 142 to 145)

---

142

1  document that this actually represents a
2  withdrawal from a system.
3      Q.    Well, from what system is this
4  document produced?
5      A.    This document was produced
6  manually from the HTA team.
7      Q.    If you look at the bottom
8  right-hand corner of page 2, it says:
9            Prepared by Hector Melendez,
10 Accountant, Treasury Office, correct?  So it
11 was prepared by the Treasury office, wasn't it?
12     A.    That's what it says.
13     Q.    Okay.  Now, why do you think this
14 is not reflective of Fund withdrawals?  Well,
15 strike that.
16           What is your basis for your
17 statement that you're not sure that this
18 relates to Fund withdrawals?
19     A.    It's not clear from this document
20 what the data source is here, nor am I certain
21 of the author of this document's intent by
22 using the phrase "Fund withdrawals" there.
23     Q.    Did anyone tell you what it means?
24     A.    No.
25     Q.    Did you have any discussions with

---

143

1  anybody about what it means other than counsel?
2      A.    I did not discuss this specific
3  line of this report.
4      Q.    Okay.  And sitting here today, do
5  you -- can you tell me when entries would have
6  been made in this system that would have
7  reflected the Fund withdrawals that show up in
8  this report?
9            MS. McKEEN:  Objection.  Which
10 system?
11           MR. NATBONY:  Whatever system came
12 out of this report.  Whatever system is
13 referred to now.
14           THE WITNESS:  It's not clear from
15 this document that this is a downloadable
16 number from a system.
17 BY MR. NATBONY:
18     Q.    Okay.  Do you know one way or the
19 other?
20     A.    Do I know one way or the other
21 what?
22     Q.    Do you know one way or the other
23 whether this document comes from a system or
24 whether it was independently prepared?
25     A.    I believe this document was

---

144

1  independently prepared.
2      Q.    What's your basis for saying that?
3      A.    Having discussed with Treasury,
4  this is the Fund withdrawals that was -- was
5  not something that was recognized as a -- the
6  data point pullable from the system.
7      Q.    All right.  So you did have
8  discussions with someone about this -- Fund
9  withdrawals, right?
10     A.    I don't know if we discussed
11 specifically the Fund withdrawals that is
12 documented right here in this document, which
13 is what I said before.
14     Q.    Sitting here today, do you know
15 from where the data came that reflected the
16 Fund withdrawals noted on page 2 of Exhibit 14?
17     A.    Having reviewed hundreds of
18 documents in preparation for this deposition,
19 I'm unsure about the data source of this
20 specific line item at the moment.
21     Q.    Okay.  In looking at pages 1 to 2
22 and 4 to 8, there's a heading at the top of
23 each page, right?
24     A.    If you give me a minute to flip
25 through here.

---

145

1            Are you guys having an issue with
2  the document loading?
3      Q.    No.
4      A.    Everyone's video is frozen, and my
5  screen is not showing the document.  I'm going
6  to turn off and on video real quick to see if
7  that works.
8      Q.    Thank you.
9            MS. McKEEN:  And we can still hear
10 you, but your video is also frozen, so if we
11 end up needing to have you disconnect and
12 reconnect to your web browser, we can always
13 break and do that.
14           THE WITNESS:  Okay.  I think we
15 might have to do that because everyone is still
16 frozen here.
17           MS. McKEEN:  Bill, why don't we
18 just take, like, a 10-minute break.  Does that
19 work for you?
20           MR. NATBONY:  Sure.
21           THE WITNESS:  Confirming before I
22 restart here, we said that there was going to
23 be a 10-minute break?
24           MR. NATBONY:  That's correct.
25           THE WITNESS:  Okay.  Thank you.

---

## 146

1  MS. McKEEN: So do we need to go
2  off the record?
3  MR. NATBONY: Yes, we are going
4  off the record.
5  THE VIDEOGRAPHER: We are going
6  off the record at 2:07 p.m.
7  (Recess taken.)
8  THE VIDEOGRAPHER: We are back on
9  the record at 2:53 p.m.
10 BY MR. NATBONY:
11 Q. Okay. So let me go to a couple
12 cleanup questions, and then we'll go back to
13 the document that was on the screen, which was
14 Exhibit 14.
15 MR. NATBONY: Jaclyn, if you'd
16 download that for us.
17 BY MR. NATBONY:
18 Q. Mr. Ahlberg, we spoke before about
19 Fund balance, and I guess you were asking for a
20 more specific definition of what I was looking
21 for, so let me try it this way:
22 With respect to a Government Fund,
23 do you understand the term "Fund balance" to
24 mean the difference between (indiscernible)?
25 A. There's a lot of background noise

## 147

1  there. Can you finish your question?
2  MR. NATBONY: Okay. Everybody
3  please mute.
4  BY MR. NATBONY:
5  Q. With respect to the term "Fund,"
6  do you have an understanding as to such meaning
7  the difference between assets and liabilities
8  in a Government Fund?
9  A. I understand that that could be
10 one definition for Fund balance.
11 Q. Now, we talked also previously
12 about reports that might be available under
13 PRIFA with respect to Fund 278.
14 What reports, if any, do you know
15 are available with respect to excise taxes with
16 respect to HTA that can be run on PRIFA?
17 A. I'm sorry. Your question is about
18 PRIFA or HTA?
19 Q. The question is:
20 What reports in PRIFA can be run
21 with respect to HTA excise taxes?
22 A. Oh, I'm – okay. Just to clarify,
23 we're talking PRIFAS -- the PRIFAS system, not
24 PRIFAS HTA?
25 Q. PRIFAS system.

## 148

1  A. Okay. Thank you. Okay.
2  Within the PRIFAS system, you
3  could run a report that would show, yeah, the
4  revenues associated with 278 over a discrete
5  time period of your choice.
6  Q. Other than the report you just
7  mentioned, is there any other report that would
8  be available to run relating to HTA excise
9  taxes under the PRIFAS system?
10 A. I'm not aware of any other reports
11 that can be run there.
12 Q. All right. Now, turning back to
13 Exhibit 14, which is now back on the system,
14 were you aware of any other similar reports
15 that the Commonwealth might have with respect
16 to Fund 278 other than this one?
17 MS. McKEEN: Objection.
18 THE WITNESS: Well, we -- we just
19 mentioned reports that are possible to -- to
20 look at the Collecteria account with Fund 278.
21 BY MR. NATBONY:
22 Q. Other than that, anything else
23 that you would be aware of the Commonwealth
24 might be able to produce with respect to
25 Fund 278?

## 149

1  A. No.
2  Q. Now, looking at Exhibit 14, I
3  think as we left off and got disconnected, I
4  was suggesting to you that on almost all of the
5  pages, there is a heading. And, for example,
6  Puerto Rico Highway and Transportation
7  Authority's, apostrophe S, Fund 278, do you see
8  those headings?
9  A. I do see these headings.
10 Q. And those headings are possessory,
11 correct?
12 A. In this document, that is how it
13 appears.
14 Q. So it would appear that at least
15 the drafter of this document believed that the
16 revenues here belonged to HTA, correct?
17 UNIDENTIFIED SPEAKER: Objection.
18 MS. McKEEN: Objection.
19 THE WITNESS: It's unclear to me
20 what the author of that heading's intent was
21 there.
22 BY MR. NATBONY:
23 Q. But you do agree that all the
24 headings are in the possessive, correct?
25 A. The headings on page 1 and 2 of

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

39 (Pages 150 to 153)

---

**150**

this exhibit are possessive.
Q.    Henceforth, to 8 as well, correct?
A.    The possessive is used on pages 4 through 8.
Q.    Now, pages 9 to 14 list the revenues by voucher number, correct?
A.    The document is showing a list of voucher numbers.
Q.    All right. And would these voucher numbers relate to revenues received or withdrawals from Fund 278?
A.    The header of this document says that -- it says gasoline, diesel, petroleum, tolls (indiscernible) account withdrawals.
Q.    So they would be with -- the vouchers reflect withdrawals, correct?
A.    That's what the document says.
Q.    And is it your understanding that these are withdrawals that would be done, for example, through Voucher SC 735, that we spoke about earlier?
A.    The type of voucher, again, is not something that I usually consider.
Q.    So you're just not familiar with them?

**151**

A.    Come again?
Q.    You're not familiar whether these vouchers would be the types of vouchers such as SC 735?
A.    I'm not certain of the type of vouchers that these may or may not be. It's unclear from the document.
Q.    I'm looking at the -- we need to mark HTA-STA 207 at the bottom. SC. I'll try to move it for you right there.
          You can see that there's a summary at the bottom of that titled Account Withdrawals, right?
A.    I see that on the document.
Q.    All right. Do you know what account this document is referring to?
A.    It's not clear to me from this document what account that is referring to.
Q.    This is a document -- the entire document relates to Fund 278, right?
          UNIDENTIFIED SPEAKER:  Objection.
BY MR. NATBONY:
Q.    You can answer.
A.    It's not clear to me from the document.

**152**

Q.    Not clear to you that this document relates to Fund 278?
          MS. McKEEN:  Objection.
BY MR. NATBONY:
Q.    Is that your testimony?
A.    There are names of revenue concepts on this document that are associated with Fund 278.
Q.    And, in fact, the first page of the document is entitled Puerto Rico Highway and Transportation Authority's Fund 278; isn't that correct?
A.    That is the title of the first page of this document.
Q.    And this document is a 278 Fund Accreditation, right?
A.    That's what the header says.
          MS. McKEEN:  Objection.
BY MR. NATBONY:
Q.    Now, let's go back to what was Exhibit 13. Let's pull that document up on the screen. Let's go to the second page.
          So, again, this was the chart we were looking at before for the period January 2015 to mid-September 2015, and I think

**153**

we left off at the transfer to GDB 0006, correct?
A.    Yes, we were discussing this slide before.
Q.    So at the time of the transfer to GDB 0006, Treasury would still know the amount of excise taxes it has because Fund 278 would show that, correct?
A.    Fund 278 would show the amounts earned.
Q.    Well, Fund 278 would show the amount that was collected into the Collecteria, correct?
A.    Correct.
Q.    So at the time, once it is transferred into GDB 0006, Treasury would still know what was in Fund 278. That wouldn't change, right?
A.    Again, that's not how I think about it. I don't think about Funds being within a Fund number.
Q.    So at the time these funds were transferred to GDB 0006, the Treasury would still know what has been designated as part of Fund 278, correct?

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

40 (Pages 154 to 157)

---

**154**

1     A.    They would know the amount that
2  **was earned and collected into 5191 tagged with**
3  **Fund Number 278.**
4     Q.    And they would also know, then,
5  what amount in 0006 had been transferred
6  (indiscernible) excise taxes, correct?
7     A.    **Apologies. There was some dings**
8  **and noises there when you asked that question.**
9     Q.    And they would also know, then,
10  the amount of excise taxes that was transferred
11  from 5191 to 0006 because it would be reflected
12  in Fund 278, correct?
13     MS. McKEEN: Same objection.
14     THE WITNESS: I don't think about
15  Funds being reflected within a Fund number.
16  BY MR. NATBONY:
17     Q.    Well, how would you know how much
18  to transfer from BPPR 5191 to GDB 0006 for
19  excise taxes?
20     A.    **That determination doesn't even**
21  **need to be made because the entirety of that**
22  **account balance is transferred over to 0006 at**
23  **the end of every day.**
24     Q.    And you would know what was in
25  that entire Fund balance because you have a

---

**155**

1  record of it, right?
2     MS. McKEEN: Objection.
3     THE WITNESS: You would know how
4  many -- how much revenue was earned under
5  Fund 278 in -- as it was received into 5191.
6  BY MR. NATBONY:
7     Q.    And you would know how much excise
8  tax revenue was therefore sent to GDB 0006,
9  right?
10     A.    **You can know how much of the**
11  **revenues were earned and received into 5191 by**
12  **identifying the Fund number.**
13     Q.    Now, the next transfer of cash on
14  this charge is from the operational account
15  0006 to GDB 4276, right?
16     A.    **Correct.**
17     Q.    How did you determine that there
18  was a transfer of excise taxes from GDB 0006 to
19  4276?
20     A.    **We determined that the source of**
21  **funds of that transfer was Fund 278 revenues by**
22  **looking at the voucher.**
23     Q.    So at the time of the transfer
24  from 0006 to 4276, there was a voucher that
25  reflected that it was related to Fund 278; is

---

**156**

1  that correct?
2     A.    **I believe vouchers will have a**
3  **designation on them.**
4     Q.    And therefore, you can use the
5  Fund number on vouchers to determine what the
6  source of the revenue was, correct?
7     A.    **That is correct.**
8     Q.    And that would be the same for the
9  transfer from GDB 4276 to Oriental 9874?
10     A.    **Yes.**
11     Q.    Now, during this period of time
12  reflected by page 2 of Exhibit 14, were there
13  any excise taxes that were being held in the
14  Commonwealth's General Fund as opposed to
15  Fund 278?
16     MS. McKEEN: Objection.
17     UNIDENTIFIED SPEAKER: Objection.
18     THE WITNESS: I don't think about
19  funds -- holding funds.
20  BY MR. NATBONY:
21     Q.    Okay. Well, the General Fund has
22  a separate Fund number, correct? Strike that.
23     A.    **There is --**
24     Q.    The General Fund has a separate
25  Fund number than 278, correct?

---

**157**

1     A.    **There are separate Fund numbers**
2  **that indicate General Funds.**
3     Q.    And during the period of
4  January 2015 to mid-September of 2015, were any
5  of the HTA excise taxes designated under a Fund
6  number other than 278?
7     A.    **There are no excise taxes that**
8  **would have been reported other than in Fund 278**
9  **and Collecteria Account 5191.**
10     Q.    Okay. Would that be true for all
11  periods, by the way?
12     A.    **Would what be true for all**
13  **periods?**
14     Q.    The same, that it would -- that
15  HTA excise taxes would only be recorded in
16  Fund 278 rather than in other Funds.
17     MS. McKEEN: Objection.
18     THE WITNESS: During the -- I
19  mean, from January '15 to present, yes.
20  BY MR. NATBONY:
21     Q.    Thank you.
22     Okay. Let's turn the page, go to
23  the next period, which is mid-September 2015 to
24  November 2015.
25     And just so I'm clear with respect

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

41 (Pages 158 to 161)

---

**158**

1  to all of your flow of funds charts, the same
2  color scheme for the boxes apply, correct?
3      A.    I can't see the document anymore,
4  guys.
5      Q.    Neither can I.
6      A.    I think Liz may have popped out.
7  Oh, no, there's Liz.
8          (Simultaneous speaking.)
9  BY MR. NATBONY:
10     Q.    And so let me ask the general
11 question first.
12         With respect to all of these flow
13 of funds chart documents, the color scheme that
14 we previously talked about, the same box color
15 scheme applies, right?
16     A.    In terms of gray boxes, meaning
17 that the Commonwealth's name will be on the
18 bank statement, and the blue box meaning that
19 HTA's name will be on the bank statement.
20     Q.    Correct. That's correct, yes?
21     A.    Yes.
22     Q.    Now, compared to the prior page,
23 GDB 4276 has now switched to GDB 3466. Do you
24 see that?
25         MS. McKEEN: Object to the form.

---

**159**

1          THE WITNESS: I think it's a
2  mischaracterization to say that they switched.
3  BY MR. NATBONY:
4      Q.    Okay. Well, there's no longer a
5  transfer into 4276. Now there's a transfer
6  into 3466, correct?
7      A.    During this time period, that's
8  correct.
9      Q.    Why did that flow change?
10         MS. McKEEN: Objection. My
11 objection is the same issue as before. This is
12 outside the scope of why -- why the flow of
13 funds changed.
14         MR. NATBONY: The decision on why
15 the flow of funds changed is not outside the
16 scope. We need to understand of flow of funds
17 and why they -- they were flowing that way.
18         MS. McKEEN: I think that's
19 outside the scope why the Commonwealth took
20 certain action. He can testify as to how it
21 was different during the time period but not
22 what the reasoning was.
23 BY MR. NATBONY:
24     Q.    How was the flow different between
25 the first period and this period mid-September

---

**160**

1  2015 to November 2015?
2      A.    From January '15 to
3  September 2015, funds would be transferred from
4  the TSA operational account 006 to HTA account
5  at GDB 4276 and then to the Oriental account at
6  HTA, which is our main disbursement account,
7  main operational disbursement account, as
8  compared to in September 2015 to November 2015
9  the funds no longer flow to the main
10 operational disbursement account as they
11 previously did before going to multiple zoning
12 accounts.
13     Q.    Who made the decision to change
14 that flow of funds?
15         MS. McKEEN: I'm going to object
16 to that.
17         Go ahead. You can answer if you
18 know, but it's outside the scope.
19         THE WITNESS: I don't know who
20 made that decision.
21 BY MR. NATBONY:
22     Q.    And to make my record, why was the
23 flow of funds changed from the period
24 January 2015 to mid-September 2015 to the next
25 period of mid-September 2015 to November 2015?

---

**161**

1          MS. McKEEN: And I'll make the
2  same objection, which is the Court's order
3  makes clear that the bases for decisions like
4  that are not the proper subject of inquiry in
5  this deposition.
6          MR. NATBONY: Are you directing
7  him not to answer?
8          MS. McKEEN: I am.
9  BY MR. NATBONY:
10     Q.    Have you gone back and looked at
11 the -- the Fund opening statements for GDB 3466
12 in preparation for this deposition?
13     A.    I've reviewed hundreds of
14 documents and various account opening and
15 closing statements. I can't recall
16 specifically if this account was one of those.
17     Q.    Are you aware of Account 3466
18 being an account relating to antiterrorist
19 payments?
20     A.    I'm not aware of this account
21 being affiliated with antiterrorist payments or
22 not.
23     Q.    Do you have any understanding as
24 to why an account that was labeled with respect
25 to antiterrorist payments would be receiving

---

162

1  these funds?
2      A.    Where do you see that this account
3  was affiliated in that way?
4          MR. NATBONY:  Let's pull up tab
5  36, and we'll mark this as Exhibit 15.
6          (Monoline Exhibit 15 is
7          introduced for the record.)
8  BY MR. NATBONY:
9      Q.    And just for the record, I'll let
10 you know that these are account opening
11 documents that were produced to us in the
12 course of this discovery, and there is also an
13 English translation certified directly
14 following the actual documents.
15         Jaclyn, tab 36 we are trying to
16 download.
17         I just heard from her that it says
18 "processing exhibit."  If for some reason you
19 can't do it, let's try 33.
20         Just received a note from Jaclyn
21 that it's still processing.
22 BY MR. NATBONY:
23     Q.    While that's processing, let me
24 ask you this question:
25         You previously testified with

163

1  respect to the prior period that you were able
2  to determine that excise taxes were transferred
3  from account to account because you were able
4  to look at vouchers that mentioned Fund 278.
5          Would that be for this period as
6  well?
7          MS. McKEEN:  You cut out there,
8  Bill.
9          THE WITNESS:  Yeah.
10         MS. McKEEN:  Can you repeat your
11 question?  I don't think the witness heard you.
12 I think the "yeah" on the record agreed with me
13 that your voice just cut out, not an answer to
14 your question.
15         MR. NATBONY:  That's correct.
16 Thank you, Liz.
17         Okay.  I will ask it.
18 BY MR. NATBONY:
19     Q.    You previously testified with
20 respect to the prior period that you were able
21 to determine that excise taxes were transferred
22 from account to account because you were able
23 to look at vouchers that listed Fund 278.
24 Would that be the same for this period as well?
25     A.    It would be true that we would

164

1  also review voucher information to understand
2  those transfers.
3      Q.    And because the vouchers for the
4  transfers would make a reference to Fund 278,
5  that's how you would determine that there were
6  transfers of excise revenues, correct?
7          MS. McKEEN:  Objection.
8          THE WITNESS:  Yeah.  The presence
9  or not -- no presence of Fund 278, usually
10 there's other information on the voucher as
11 well that you would use to know that they're
12 excise taxes.
13 BY MR. NATBONY:
14     Q.    But, generally, the vouchers would
15 mention Fund 278, as you previously testified,
16 correct?
17     A.    Vouchers may have Fund 278 listed
18 on them.
19     Q.    And if they do list Fund 278, that
20 would tell you that they were excise tax
21 revenues, correct?
22         MS. McKEEN:  Objection.
23
24
25

165

1          THE WITNESS:  That would tell me
2  that the source of funds was the revenue earned
3  into the Collecteria Account 5191.
4  BY MR. NATBONY:
5      Q.    Fund 278 specifically was related
6  to excise tax revenues, correct?
7      A.    Correct.
8      Q.    If the voucher indicates that the
9  source is Fund 278, that would be that the --
10 strike that.
11         If the voucher indicated Fund 278,
12 then the source of the transferred revenues
13 would be excise tax revenues from HTA, correct?
14     A.    The source would be the revenue
15 recorded as earned in Account 5191 under
16 Fund 278.
17     Q.    Which would be HTA's excise taxes,
18 correct?
19     A.    That's a correct characterization
20 of Fund 278 revenues.
21         MR. NATBONY:  Jaclyn, are we still
22 having exhibit problems here for 33 of 36?
23         She tells me yes.  She's going to
24 try to switch to 33 now.
25

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                     April 21, 2020

43 (Pages 166 to 169)

---

**166**

BY MR. NATBONY:

Q.    Okay.  Looking now what's marked (indiscernible) tab 33 as Exhibit 15, we're going (indiscernible) tab 33 (indiscernible) Exhibit 15.

If I direct your attention to this document, Mr. Ahlberg, you'll see that it refers to the 3466 account number on top.  Do you see that?

A.    **I do see that account number listed here.**

Q.    And the account name is Peregos Unidad (indiscernible) Terrorista.

Do you see that?

A.    **I do see that on the document.**

Q.    So I'll ask my question again.

Do you have an understanding as to why this account was used to receive revenues in the flow of funds for the period mid-September 2015 through September 2015?

UNIDENTIFIED SPEAKER:  Objection.

BY MR. NATBONY:

Q.    You can answer.

MS. McKEEN:  Yeah, I think this is the same objection as before, Bill.  You're

---

**167**

asking why a particular action was taken.  I'm not going to allow the witness to testify about it.

MR. NATBONY:  Are you directing him not to answer?

MS. McKEEN:  To the extent you're asking him why certain actions were taken by the Commonwealth as opposed to whose actions were, then yes, I think the Court order makes clear that that is not the proper subject of deposition testimony there.  I think the order was very clear.

MR. NATBONY:  My question stands as it was.  Are you directing him not to answer?

MS. McKEEN:  Yes, Bill.  If you would like, we can take it up with Judge Dein.  I'm happy to —

MR. NATBONY:  Did you have — I want to reserve my right to do that, but I want to get through my question.

MS. McKEEN:  If you could not cut me off while I'm talking, that would be great.  I have a record to make too, Bill.

MR. NATBONY:  Are you finished?

---

**168**

MS. McKEEN:  I want to make clear that we are willing to go to Juge Dein on this issue now.  If you'd like to resolve this now, we're happy to do that.

MR. NATBONY:  I understand, and I'll reserve my right to do so.

BY MR. NATBONY:

Q.    Let's go to the next page of this chart, which was tab 49, which is Exhibit 14.

I'm sorry, tab 42, Exhibit 13.

Let's pull up Exhibit 13.  We'll go to the next page.

The next page of your flow of funds -- Fund -- flow of funds charts goes from November 2015 to March 2016, correct?

A.    **Correct.**

Q.    And what is the difference between the flow of funds here and the flow of funds for the immediately prior period?

MS. McKEEN:  Objection.

THE WITNESS:  The main difference in slide 4 from slide 3 is that funds no longer pass through an HTA account.

BY MR. NATBONY:

Q.    And do you know who directed the

---

**169**

change in this flow of funds?

A.    **I do not know who directed the change in this flow of funds.**

Q.    And do you know why the flow of funds changed for this period?

MS. McKEEN:  Same objections, Bill.

MR. NATBONY:  Are you directing him not to answer?

MS. McKEEN:  I am.  I'm happy for him to answer questions that the Court has said are within the scope --

MR. NATBONY:  You made your — sorry, go ahead.

MS. McKEEN:  Bill, I'm not finished talking.

MR. NATBONY:  I said go ahead.

MS. McKEEN:  To the extent you keep asking the witness questions that are expressly outside the scope that the Court has ordered are outside the scope, it's a waste of the witness's time, and we are going to take that into account as we consider how much time we're willing to let the witness continue to answer questions, so please keep that in mind.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

44 (Pages 170 to 173)

---

### 170

1    MR. NATBONY: Okay. Well, the
2  major argument -- especially, we may have to
3  (indiscernible).
4  BY MR. NATBONY:
5    Q.    Let's take a look at the next
6  page, April 2016 to June 2016.
7    Can you tell me what the main
8  features are between this flow and the flow
9  from the immediately prior (indiscernible)?
10    THE REPORTER: Bill, could you ask
11  the question again? It was actually a little
12  garbled.
13  BY MR. NATBONY:
14    Q.    Can you tell me what the
15  difference is between this flow and the flow
16  from the immediately prior period?
17    A.    **The main difference is that the**
18  **flow of funds from the April 2016 to June 2016**
19  **period ends at BPPR Account 9857.**
20    Q.    Without telling me why, do you
21  know why a change was made for the flow of
22  funds?
23    MS. McKEEN: I'm sorry. Can you
24  repeat the question?
25

---

### 171

1  BY MR. NATBONY:
2    Q.    Without telling me why, do you
3  have knowledge as to why the flow of funds
4  changed for this period as compared to the
5  prior period?
6    MS. McKEEN: I'll allow that.
7  Sounds like a yes-or-no question to me.
8    MR. NATBONY: Just trying to see
9  if we have an issue.
10    THE WITNESS: Yes.
11  BY MR. NATBONY:
12    Q.    Okay. And for the prior periods
13  that we discussed, do you also have knowledge
14  as to why the flow of funds changed? And
15  again, don't tell me why.
16    A.    **General knowledge, yes.**
17    Q.    And, again, with respect to all of
18  these transfers from account to account, what
19  did you look at to determine that there were
20  actual transfers of HTA excise taxes?
21    A.    **We would look at bank statements,**
22  **transfer details or vouchers.**
23    Q.    And when you say "vouchers," you
24  would include vouchers that would reflect
25  Fund 278 designations, correct?

---

### 172

1    Are you thinking? I'm not sure I
2  heard an answer.
3    A.    **I was thinking. Sorry.**
4    **I don't think there are**
5  **vouchers --**
6    MS. McKEEN: Objection.
7    THE WITNESS: -- I think that
8  represent these transfers that would have a
9  Fund 278 noted on it.
10  BY MR. NATBONY:
11    Q.    Why not?
12    A.    **Hold on. That -- could we rewind?**
13  **What was your specific question again?**
14    Q.    I'll try and summarize. I asked
15  you what you looked at to determine that there
16  were in fact transfers of excise taxes between
17  these accounts for the period April 2016 to
18  June 2016, and I believe you testified you
19  looked at bank statements and vouchers, amongst
20  other things.
21    I then asked you:
22    And would that include vouchers
23  that would reflect the entry related to
24  Fund 278?
25    A.    **So, I can't recall the specific**

---

### 173

1  vouchers reviewed for these transactions here.
2    Q.    Thank you.
3    Do you have reason to believe that
4  there would not be vouchers with a notation of
5  Fund 278 during this period of time of
6  April 2016 to June 2016?
7    A.    **I can't speculate one way or the**
8  **other.**
9    MR. NATBONY: Let's pull up tab 4
10  and mark it as Exhibit 16.
11    (Monoline Exhibit 16 is
12    introduced for the record.)
13  BY MR. NATBONY:
14    Q.    While that is coming up, let me
15  try and ask the following questions:
16    During the period of April 2016 to
17  June 2016, when transfers were being made
18  between BPPR accounts, when those transfers of
19  excise taxes were made, were there any
20  accounting changes done to Fund 278?
21    MS. McKEEN: Objection.
22    THE WITNESS: I'm not aware of any
23  accounting adjustments that were made to
24  Fund -- to Account Fund No. 278 during that
25  time.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                April 21, 2020

45 (Pages 174 to 177)

---

**174**

1   MR. NATBONY:  Are we having a
2  problem again?
3       THE WITNESS:  We're waiting for an
4  exhibit.
5       MR. NATBONY:  Yeah, Exhibit 4,
6  tab 4, which will be Exhibit 6.
7       I think we're going to have to try
8  and fix this problem because I have a couple
9  more exhibits.
10      Let me try a few more questions
11 until it comes up.
12 BY MR. NATBONY:
13  Q.   During the period of April 2016 to
14 June 2016, when there were transfers between
15 various BPPR Commonwealth accounts, is it
16 correct that the source of monies, at least in
17 part, for the transfers was from excise taxes
18 of HTA?
19  A.   Yes.
20  Q.   And you determined that based on
21 your review of vouchers and bank statements,
22 correct?
23  A.   Correct.
24      MR. NATBONY:  This is still not
25 working here.  Do we need to go off the record

---

**175**

1  and try and get it fixed?  I don't want to
2  waste time here, but I do have more exhibits.
3       MS. McKEEN:  Yeah, if you need to
4  go off the record, we can call and do that.
5  Obviously, if you need an exhibit, you need an
6  exhibit.
7       MR. NATBONY:  Okay.  Let's take
8  5 minutes.
9       Jaclyn, try and -- wait.  I think
10 it's the system processing the image.  Don't
11 know a way to speed it up.
12      MS. McKEEN:  All right.
13      MR. NATBONY:  Let's try to wait
14 for it for a minute.  Not that light of a
15 document.  Apparently the realtime is not
16 working either, I've just been told.
17      THE REPORTER:  Can you-all see it
18 on the screen?  Because I can see it on my
19 connection to the deposition.
20      MR. NATBONY:  Mr. Berezin says he
21 cannot see realtime.
22      THE REPORTER:  Okay.  Then if
23 you-all don't mind taking a break, I can just
24 going to back out of everything and go back in,
25 but I can see it on my screen.

---

**176**

1   MR. NATBONY:  All right.
2       Let's take 5 and hopefully Jaclyn
3  can see what's going on with these exhibits.
4  Let's go off the record.
5       THE REPORTER:  I'm sorry, Tony.
6  Can you say that again?  I didn't hear you
7  going off.
8       THE VIDEOGRAPHER:  We went off the
9  record at 3:44 p.m.
10      (Recess taken.)
11      THE VIDEOGRAPHER:  We are back on
12 the record at 3:53 p.m.
13      MR. NATBONY:  Awesome.
14 BY MR. NATBONY:
15  Q.   Thank you.
16      Before we go to Exhibit 18,
17 Mr. Ahlberg, have you been involved at all in
18 creating the budgets?
19  A.   There's a lot of background noise.
20 Can we get everybody to go to mute again?
21  Q.   My question was:
22      Have you been involved at all in
23 assisting HTA and creating its annual budget?
24  A.   I have not.
25  Q.   Have you been involved at all in

---

**177**

1  creating HTA's financial statements?
2   A.   No.
3   Q.   Have you been involved in creating
4  the Commonwealth's financial statements?
5   A.   No.
6   Q.   Okay.  Taking a look at again --
7  at Monoline Exhibit 16, I'm just going to ask
8  you to refer to the 26th page.  There's a chart
9  there I'd like you to take a look at.  Can you
10 see the chart?
11  A.   I can see the chart.
12  Q.   Is this something that you
13 prepared?
14  A.   No.
15  Q.   Have you seen this chart before?
16      (Simultaneous speaking.)
17      MS. McKEEN:  Yeah.  Bill, before
18 you go further, I just want to object on the
19 grounds that the restriction analysis is
20 outside the scope of the topics to which this
21 witness has been designated to testify on
22 behalf of the entities.
23      Obviously, if you want to ask him
24 about whether he has personal knowledge, I'll
25 allow that, but this is outside the scope of

---

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

---

### 178

1  the topics for this witness.
2          MR. NATBONY:  My questions, Liz,
3  are going to be related to the flow of funds in
4  this chart and not the cash restriction
5  analysis in this chart.
6  BY MR. NATBONY:
7      Q.    So we talked about the TSA early
8  on.  And you would agree with the statement the
9  TSA is actually a series of multiple tabs,
10  correct?
11      A.    Correct.
12      Q.    The TSA includes various accounts
13  that are called TSA sweep accounts, correct?
14      A.    There are sweep accounts that
15  sweep into the TSA.
16      Q.    Okay.  And at least according to
17  this chart, they seem to be referred to as TSA
18  sweep accounts.
19          Do you see that on the left side?
20      A.    I do see that.
21      Q.    All right.  And the BPPR Account
22  5191, that is one of the TSA sweep accounts,
23  right?
24      A.    That is the Collecteria account
25  number.

---

### 179

1      Q.    All right.  And that -- and that
2  was one of the accounts that sweep monies --
3  sweeps money into TSA's operational accounts,
4  for example, Account 9458, correct?
5      A.    Correct.
6      Q.    What does the sweep account do?
7          MS. McKEEN:  Object to the form.
8          THE WITNESS:  The balance in the
9  sweep account is transferred to the TSA
10  operational account at the end of every
11  business day.
12  BY MR. NATBONY:
13      Q.    And would the sweep accounts
14  therefore include funds that were designated as
15  Fund 278 funds?
16      A.    The sweep account would -- would
17  include funds that were received and recorded
18  under the 278 identifier.
19      Q.    Now, there's also a sweep account
20  noted that is BPPR 3488, and it says it's an
21  account for Special Revenue Funds to account
22  for excise tax on petroleum.
23          Do you see that?
24      A.    I'm zooming in and trying to find
25  it.  One second.

---

### 180

1      Q.    It's the sweep account all the way
2  to the right, Hacienda Incremento Petroleum.
3      A.    I see that box, yes.
4      Q.    Was that account used with respect
5  to the flow of funds for the HTA excise taxes?
6          MS. McKEEN:  Object to form.
7          THE WITNESS:  We can flip back to
8  the HTA flow of funds presentation and review
9  it for this account number to be certain.
10  BY MR. NATBONY:
11      Q.    Okay.  Well, you'll remember,
12  then, that it's Account 3488, right?
13      A.    3488.
14      Q.    Let's go back to tab 42, which is
15  Exhibit 13.  So I'll ask my question again,
16  which is:
17          Was BPPR Account 3488 used with
18  respect to the flow of funds for HTA excise
19  tax?
20      A.    No.  That was the time period of
21  January 2015 to present.
22      Q.    All right.  What was the purpose
23  of BPPR Account 3488 then?
24          MS. McKEEN:  I'll object that it's
25  outside the scope, but you can answer if you

---

### 181

1  know.
2          THE WITNESS:  I'm not certain of
3  the purpose of that exact account.
4  BY MR. NATBONY:
5      Q.    Let's take a look at the last page
6  of Exhibit 13.  This is the flow of funds for
7  the period July 2016 to present.  For the
8  BPPR 5191, that's a TSA sweep account, right?
9      A.    Correct.
10      Q.    And it's your testimony that on a
11  daily basis funds are swept from 59 -- 5191
12  into BPPR 9478, which is the Commonwealth's
13  operational account; is that true?
14          MS. McKEEN:  Bill, just for the
15  record, you're asking questions about the
16  July 2016 file; is that right?
17          MR. NATBONY:  Yes.
18          MS. McKEEN:  Okay.  Thank you.
19  BY MR. NATBONY:
20      Q.    Is that correct, Mr. Ahlberg?
21      A.    Would you repeat the question?  I
22  thought we were on a different slide.
23      Q.    Sure.  We are on the July 2016 to
24  present slide.  My question was -- first, I'll
25  go back and do a different slide.

---

Ahlberg, Timothy H. - Vol. I                          April 21, 2020

47 (Pages 182 to 185)

---

**182**

1  So the BPPR 5191 is a TSA sweep
2  account, right?
3      A.   Correct, that is the Collecteria
4  account.
5      Q.   And the -- and is it your
6  testimony that on a daily basis revenues are
7  swept from BPPR 5191 into BPPR 9458, which is
8  the TSA operational account?
9      A.   Yes, understanding that the TSA
10  operational account is a different account
11  number during a different time period.
12     Q.   Okay.  How did you determine that,
13  in fact, HTA excise taxes were so transferred?
14     A.   Understanding that the Fund 278
15  would be used to record an excise tax as they
16  were received into Account 5191, and thus
17  understanding that the entirety of the balance
18  of 5191 is transferred to 9458 at the end of
19  every day.  Therefore, those amounts are
20  included, and we look at bank statements to
21  validate that -- the entirety of that transfer.
22     Q.   But at the time of the transfer
23  from 5191 to 9458, the Commonwealth would have
24  records as to what was recorded into 5191 as
25  HTA excise taxes, correct?

---

**183**

1      A.   Correct.
2      Q.   Now, the cash flow in -- for the
3  July 2016 to present period stops at BPPR 9458.
4  Does that mean that the funds remained in this
5  account?
6      A.   There's no ability to tell of the
7  funds in BPPR 9458 which are remaining 278
8  revenues.
9      Q.   Why is there no ability
10  (indiscernible)?
11     A.   I don't think about Funds having
12  balances within accounts.
13     Q.   Well, were there any transfers of
14  funds made out of BPPR 9458 after funds were
15  transferred from 5191?
16     A.   There are transfers out of 9458
17  every day for Fund operating expenses of the
18  Commonwealth.
19     Q.   Is there any way to determine
20  whether any of those transfers out were
21  transfers of Fund 278 designated monies?
22     A.   Would you repeat the question?
23     Q.   Is there any way to determine
24  whether any of the transfers out of BPPR 9458
25  included excise tax revenues?

---

**184**

1      A.   Is there -- I apologize.  I was
2  thinking there.  Would you mind repeating the
3  question one more time?
4      TELEPHONIC VOICE:  Hello.  There
5  doesn't appear to be any activity in this
6  meeting.  If you would like to say on the line
7  until others join, please press 1.  If not,
8  I'll end the meeting.
9      THE WITNESS:  Did you guys hear
10  that?
11     THE REPORTER:  Yes.  I just heard
12  something about --
13     THE VIDEOGRAPHER:  This is the
14  videographer.  Did you guys hear that
15  recording?
16     MR. NATBONY:  Yes, I pushed 1.
17     THE WITNESS:  Were we supposed to
18  press something on that message?
19     MS. McKEEN:  I think it's okay.
20     THE WITNESS:  Okay.
21     MS. WHITE:  This is Karen from
22  Henderson.  I pressed 1, and I will reach out
23  to Soundpath.
24  BY MR. NATBONY:
25     Q.   Let me go back.  So, again, my

---

**185**

1  question is:
2      Is there any way to determine
3  whether the transfers out of 9458 included
4  excise tax monies?
5      A.   No, because dollars are
6  indistinguishable from revenue source once
7  they're in the TSA operational account.
8      Q.   Okay.  Well, would you be able to
9  determine at the time of transfers out of 9458
10  whether there was any balance of excise tax
11  revenues in BPPR 9458?
12     A.   Again, I don't think of cash
13  balances having Fund balances.
14     Q.   Irrespective of how you think
15  about it, was there any way to determine as of,
16  past the date of transfers out of 9458, whether
17  there were Fund balances in Fund 278?
18     A.   You can run a report that shows
19  revenue earned, and that would have been
20  recorded in Account 5191 for a discrete time
21  period of your choosing.
22     Q.   In Account 9458, are there other
23  funds in 9458 other than excise taxes such as
24  federal funds or other restricted funds?
25     MS. McKEEN:  Objection to form.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                   April 21, 2020

48 (Pages 186 to 189)

---

**186**

                THE WITNESS:  All kinds of funds
would be transferred into and out of Account
9458.
BY MR. NATBONY:
    Q.    Okay.  And turning back a page for
the April 2016 to June 2016 period, I see again
that the (indiscernible) Fund stops with BPPR
9857.  Does that mean that the funds are still
in 9857?
    A.    There are certain allocable
revenues that were transferred to and remain in
9857.
    Q.    Okay.  Are you able to determine
whether any of them are HTA excise tax
revenues?
    A.    I would have to follow up on that.
    Q.    So you don't know whether you can
or not?
    A.    I would have to follow up to be
sure.
    Q.    What would you do to follow up?
    A.    I would review the information
and -- I would review the same kind of
information that we reviewed for alternate
(indiscernible) i.e., bank statements or any

---

**187**

vouchers or transfer details available.
            MR. NATBONY:  Okay.  Let's pull up
tab 32.  I'm sorry.  I'm sorry.  Let's pull up
tab 27.  I just got confused, Jaclyn.
            We'll mark tab 27 as
Exhibit 16 -- 17.  18, sorry.
            (Monoline Exhibit 17 is
            introduced for the record.)
            MR. NATBONY:  So tab 27 will be
Exhibit 18 -- 17.
BY MR. NATBONY:
    Q.    Okay.  Showing you what's been
marked as Exhibit 17, and I will tell you that
there is a translation following it if you want
to look at that.
            Would you agree with me that this
is a group of debit authorizations from
transfers from Account (indiscernible) to
certain Treasury accounts?
            MS. McKEEN:  Sorry, Bill, you cut
out.  Can you repeat your question, please?
            MR. NATBONY:  Yes.
BY MR. NATBONY:
    Q.    Would you agree with me that this
is a group of debit authorizations for

---

**188**

transfers from Account 0006 to certain Treasury
accounts?
    A.    I agree that that's what the page
that we are currently looking at is.
    Q.    Okay.  And if you would turn to
the third page, this document shows in December
of 2015 a transfer from Account 0006 to a
clawback of the Treasury, correct?
    A.    That's what the document says.
    Q.    And when that transfer occurred,
it was a transfer that was recognized as,
quote, withheld funds of the Highway's
authority, correct?
    A.    That's what the document says.
    Q.    And you don't have any reason to
dispute that when a document says that
transfers are being made of withheld funds of
the Highway Authority, that they are, in fact,
withheld funds of the Highway Authority, do
you?
            UNIDENTIFIED SPEAKER:  Objection.
            MS. McKEEN:  Form.
            THE WITNESS:  I'm not a lawyer
but -- of the Highway Authority.  I'm not
certain there, not being an attorney.

---

**189**

BY MR. NATBONY:
    Q.    You don't know one way or the
other, right?
    A.    I'm not -- I do not know one way
or the other.
    Q.    Let's go back, if we can, to tab
4, which was exhibit -- just give me a second.
            Let's go back to tab 42 for a
minute, which would be Exhibit 13.
            Now, I believe you testified
previously with respect to the most recent
period that remained July 2016 to the present,
once you got to BPPR 9458, you couldn't
determine whether transfers included excise tax
monies because the dollars were
indistinguishable.  Was that your testimony?
    A.    That's correct.
    Q.    So turn back to the
November '15 -- November 2015 to March 2016
period.  How was it determined by you that
excise taxes were transferred out of the
operational account?
            Well, let's strike that.  Let me
go back.
            GDB 6048, is that an operational

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

49 (Pages 190 to 193)

---

190

account?

A. No, that's a separate account.

Q. What is that account for?

A. I'm not sure what all the uses of that account are for.

Q. Okay. But GDB 0006, that's a comingled account; is that correct?

A. Correct.

Q. And GDB 6048, that's a comingled account, right?

A. Correct.

Q. So how did you determine that excise tax revenue was transferred out of GDB 0006 to GDB 6048 between the series of (indiscernible) through March 2016?

A. There would be a review of the specific transfer detail to inform the knowledge of that transfer.

Q. You said you would have to review?

A. By reviewing the transfer details. And you can -- tracking the transfers of equivalent amounts, you were able to -- or we -- I was able to identify.

Q. How were you able to identify that GDB 0006 was a comingled account?

---

191

A. GDB 0006 is a comingled account in the transfer detail from 0006 to 6048, and there would be an indication of the original revenue source.

Q. So wouldn't that indication of original source revenue exist during the most recent period for BPPR 5191?

A. I'm sorry. What's the question?

Q. Would, in fact, the indication of original source revenue that you just spoke of exist during the most recent period for BPPR 9458?

A. That information doesn't exist with a bank account. That information exists with a transfer.

Q. And did you look at transfers out of 9458 for the most recent period?

A. There are thousands and thousands of transfers out of that account in any given period.

Q. Okay. My question is:

Did you look at them to determine whether you could see where excise tax revenues went?

A. No, because excise tax revenues

---

192

would be indistinguishable from other dollars in the TSA account.

Q. How do you know they would be indistinguishable unless you looked at the transfer records to determine whether there was any information in them that would help you?

A. What's -- what's the question there?

Q. How would you know whether the funds would be indistinguishable unless you looked at the transfer records out of BPPR 9458 to determine whether there was any information in those transfers that would help you determine whether there were excise tax revenues being transferred?

A. Again, a cash -- cash balances, discrete cash balances in an account will not be identifiable by different subitems.

Q. Okay. But going back to the November 2015 to March 2016 period, you were able to determine by looking at transfer records from GDB 0006 that excise tax revenues were transferred to 6048, correct?

A. Correct.

Q. And you were able to determine

---

193

from GDB 6048 that there were further transfers of excise taxes into -- back into GDB 0006, right?

A. Correct.

Q. And you said you did that by reviewing transfer records, correct?

A. Transfers records and bank statements, yes.

Q. And my question is -- because I still don't have an answer -- did you look at transfer records and bank statements for transfers out of BPPR 9458 for the July 2016 to present period?

UNIDENTIFIED SPEAKER: Objection.

THE WITNESS: I have reviewed disbursements out of that account.

BY MR. NATBONY:

Q. Did you review the same type of records that you reviewed with respect to 0006 for the November 2015 to March 2016 period?

A. We would have had the same kind of records available for us for both --

Q. Did you -- did you review them?

A. Yes, we reviewed outposts from -- from the TSA account.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

50 (Pages 194 to 197)

---

**194**

1    Q.    You reviewed the vouchers and
2 transfer documents out of BPPR 9458 for the
3 period July 2016 to the present to determine
4 whether there was any information that could
5 help you identify whether there were further
6 transfers of excise tax revenues?
7    **A.    We did review that information.**
8    Q.    But you said previously there were
9 thousands and thousands of transfers.  You
10 looked at all of those.
11    MS. McKEEN:  Objection.
12    THE WITNESS:  Using software
13 and -- and data manipulation.
14 BY MR. NATBONY:
15    Q.    What do you mean by "software and
16 data manipulation"?
17    **A.    I personally utilized the business**
18 **intelligence platform called QlikView.  It is a**
19 **data aggregator similar to Tableau or Microsoft**
20 **Power BI.**
21    Q.    So you didn't look at the actual
22 documents, you looked at some summary of them
23 from a program; is that correct?
24    **A.    The -- you know, the review was**
25 **not limited to just information or data from**

---

**195**

1 **a -- from a program.**
2    Q.    What else did you look at?
3    **A.    We would look at bank statements**
4 **and potentially transfer details.**
5    Q.    Just so I understand, you did not
6 look at the actual transfer documents; you
7 looked at some summary of them in a program
8 that you described, correct?
9    **A.    I'm not -- I'm not certain which**
10 **time period or which transactions you're**
11 **referring to at this point.**
12    Q.    Well, then for the July 2016 to
13 the present period.
14    MS. McKEEN:  I'd like to take a
15 break and go off the record, Bill.
16    MR. NATBONY:  Well, no.  I want
17 to -- I want to finish this line of inquiries.
18 There will be a few more questions.
19    MS. McKEEN:  I'd like to take a
20 break and go off the record.
21    MR. NATBONY:  Well, a question is
22 still pending.  I asked whether July --
23    MS. McKEEN:  I'm sorry.
24    (Simultaneous speaking.)
25    MS. McKEEN:  What's the question

---

**196**

1 pending?  So he just told you he's confused
2 about your line of inquiry.  There's no pending
3 question.
4    MR. NATBONY:  There is a pending
5 question, and I'll --
6    MS. McKEEN:  Okay.  Let's finish
7 the question, and then we'll take a break.
8    MR. NATBONY:  Let me go back.
9 BY MR. NATBONY:
10    Q.    You testified:
11    I personally reviewed the build
12 intelligence platform called QlikView, which is
13 a data aggregator.
14    And then I said later on:
15    But I understand you did not look
16 at the actual transfer documents.  You looked
17 at some summary of them in a program that you
18 described, correct?
19    And then you weren't sure for the
20 period, and I said:
21    For the July 2016 period.
22    So the question is:
23    For the July 2016 to present
24 period, did you actually look at
25 trans- -- original transfer documents to

---

**197**

1 determine whether there were transfers out of
2 BPPR 9458 that included HTA taxes, excise tax
3 revenues?
4    It's a yes-or-no question.
5    UNIDENTIFIED SPEAKER:  Same
6 objection.
7    THE WITNESS:  We reviewed
8 disbursement detail out of Account 9458.
9 BY MR. NATBONY:
10    Q.    Still don't have an answer to my
11 question.
12    Did you look at the actual
13 transfer documents, yes or no?
14    **A.    The actual transfer documents for**
15 **what transfers?**
16    Q.    For transfers out of 94 -- 9458
17 for the period July 2016 to present.
18    **A.    It would have been unreasonable to**
19 **look at every single transfer document out of**
20 **that account given that billions of dollars**
21 **passed through that account.**
22    MR. NATBONY:  If you want to take
23 your break, we'll take 5 minutes.
24    THE VIDEOGRAPHER:  We are off the
25 record at 4:30 p.m.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                                    April 21, 2020

---

**198**

1     (Recess taken.)
2           THE VIDEOGRAPHER:  We are back on
3  the record at 4:45 p.m.
4  BY MR. NATBONY:
5     Q.    Okay.  Mr. Ahlberg, we talked a
6  lot about the TSA operational account.
7           Does the TSA operational account
8  have within it what might be considered
9  restricted funds such as federal funds or
10 fiduciary funds?
11          UNIDENTIFIED SPEAKER:  I object to
12 the form of the question.
13 BY MR. NATBONY:
14    Q.    You can answer.
15    **A.    Federal funds certainly pass**
16 **through the TSA operational account.  Not being**
17 **an attorney, the level of restriction or not**
18 **there, I am not certain of.**
19    Q.    Okay.  Are there other what I
20 would call restricted funds, like fiduciary
21 funds, that are held in the TSA operational
22 account?
23          UNIDENTIFIED SPEAKER:  Objection.
24          THE WITNESS:  Not being an
25 attorney, I'm not -- I don't know about

---

**199**

1  restriction versus not restriction.
2  BY MR. NATBONY:
3     Q.    Okay.  Well, with respect to
4  federal funds, for instance, does the
5  Commonwealth have an ability to trace what
6  federal funds are within the operational
7  account even though the account is comingled?
8     **A.    The -- the Commonwealth -- would**
9  **you mind repeating the question?**
10    Q.    Yes.
11          Does the Commonwealth have an
12 ability to determine how much federal funds are
13 in the operational account, even though it is
14 comingled?
15    **A.    I'm thinking.  One second, please.**
16 **Federal funds are received into**
17 **the TSA via one specific -- one specific sweep**
18 **account, and so federal funds are separately**
19 **identified as federal funds and received into**
20 **the TSA.**
21    Q.    Are there any other Special
22 Revenue Funds other than the Fund 278 that gets
23 swept into the TSA operational account?
24          MS. McKEEN:  Object to the form of
25 the question.

---

**200**

1           THE WITNESS:  There are revenues
2  from other Fund types -- or Fund numbers,
3  rather, that are recorded in 5191 that are
4  swept to TSA operational account.
5  BY MR. NATBONY:
6     Q.    And does the Commonwealth have any
7  way to base the amounts of any of those funds
8  within the operational account as to their
9  transfer into 5191?
10    **A.    My apologies.  You kind of broke**
11 **up there at the beginning of your question.**
12    Q.    And does the Commonwealth have any
13 way to determine the amounts of any of those
14 funds within the operational account after they
15 are transferred from 5191?
16    **A.    No federal funds would be**
17 **transferred from Account 5191 to the TSA**
18 **operational account.**
19    Q.    I wasn't asking about federal
20 funds.  I was asking about any Special -- any
21 other Special Revenue Funds.
22    **A.    Okay.  And could you repeat the**
23 **question understanding that it's not in the**
24 **context of federal funds?**
25    Q.    Does the Commonwealth have any way

---

**201**

1  to determine the amounts of any of those Funds
2  within the operational account after they are
3  transferred from 5191?
4     **A.    Again, I don't think about Fund**
5  **numbers having balances within the TSA.**
6     Q.    Irrespective of what -- how you
7  think of it, is there any mechanism that you're
8  aware of that the Commonwealth has to determine
9  the amount of Special Revenue Funds for any
10 particular Fund after it had been transferred
11 to the operational accounts from 5191?
12          MS. McKEEN:  Objection.
13 BY MR. NATBONY:
14    Q.    And if you don't know, that's
15 fine.  I'm just asking whether you know.
16    **A.    The answer is no.**
17    Q.    How do you know?
18    **A.    Would you repeat the question with**
19 **the "how do you know" in front of it, just so I**
20 **have the whole question?**
21    Q.    I'll...
22          Are there any -- are you familiar
23 with the phrase "Act 30 and 31 revenues"?
24    **A.    I'm unfamiliar with that term used**
25 **around the Commonwealth.**

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                         April 21, 2020

52 (Pages 202 to 205)

---

202

1   Q.    Is it true that Act 30/31 revenues
2   of a -- of the excise taxes are still flowing
3   to HTA today?
4         MS. McKEEN:  Objection.
5         THE WITNESS:  I'll need to
6   review -- refresh exactly which revenues are
7   Acts 30/31 revenues.
8   BY MR. NATBONY:
9   Q.    Cigarette taxes, for instance, are
10  those flowing directly still to HTA?
11        MS. McKEEN:  Objection.
12  BY MR. NATBONY:
13  Q.    You can answer.
14  A.    **Cigarette taxes are used to fund**
15  **an operational transfer to HTA, but it's not a**
16  **transfer directly of cigarette tax revenues.**
17  Q.    So they still flow to HTA,
18  correct?
19  A.    **I think that's a**
20  **mischaracterization of what I just said.**
21  Q.    What do you mean by "an
22  operational transfer to HTA"?
23  A.    **There's a monthly operational --**
24  **or monthly transfer to HTA from the**
25  **Commonwealth to fund operations.  And this --**

---

203

1   **the source of revenues that would fund that**
2   **transfer would be certain 278 revenues but that**
3   **the revenues from the appropriation, they are**
4   **not transferred directly as a direct**
5   **one-for-one passthrough.**
6   Q.    Does HTA (indiscernible) the
7   cigarette tax revenues, irrespective of whether
8   you call it an operational transfer or some
9   other (indiscernible), correct?
10        THE REPORTER:  Bill, I'm sorry.  I
11  didn't catch your question.  It was a little
12  garbled.
13        MR. NATBONY:  I'll try to repeat
14  it.
15        THE REPORTER:  Thank you.
16  BY MR. NATBONY:
17  Q.    But HTA does obtain the cigarette
18  tax revenues, irrespective of whether you call
19  it an operational transfer or something else,
20  correct?
21  A.    **I think that's a**
22  **mischaracterization of the operational**
23  **transfer.**
24  Q.    And why do you think it's a
25  mischaracterization?

---

204

1   A.    **The operational transfer is -- is**
2   **established and will be made in the approximate**
3   **same amount regardless of revenues for that**
4   **period.**
5   Q.    How do you know that it's the
6   cigarette taxes and not other HTA excise taxes
7   that are being sent to HTA as part of the
8   operational transfer?
9         MS. McKEEN:  Object to the form.
10        THE WITNESS:  Would you please
11  kindly repeat the question?
12  BY MR. NATBONY:
13  Q.    Well, the operation of the account
14  is comingled, so how do you know that it's the
15  cigarette tax revenues as opposed to other HTA
16  excise taxes that are being sent to HTA out of
17  this operational transfer?
18  A.    **Because we use the Fund code to**
19  **identify the source of funds, not necessarily**
20  **to tag exact dollars in the TSA that are**
21  **transferred.**
22  Q.    But if excise taxes have gone from
23  account to account to account and remain
24  comingled, I guess your testimony is that the
25  Fund designations still provide a mechanism for

---

205

1   you to determine the source of revenues?
2   A.    **The source of revenues would**
3   **always be recorded the same in Account 5191,**
4   **and that would be the information used.**
5   Q.    So if funds have gone from 5191 to
6   one operation account to another operation
7   account, you'll still be able to trace back the
8   amount of funds by using whatever Fund
9   designation applies, correct?
10  A.    **It depends.  Is there a specific**
11  **scenario in which you have that question about?**
12  Q.    No, generally.
13  A.    **It depends.**
14  Q.    What does it depend on?
15  A.    **I've lost track of your question**
16  **there.**
17  Q.    Well, you said that whether you
18  can use the Fund designation to trace the
19  source back depends.  What does it depend on?
20  A.    **It would depend on the Fund number**
21  **used and when it was recorded within 5191.**
22  Q.    And I want to go back to your
23  discussion about what you looked at in
24  determining if the July 2016 to present period,
25  whether there were further transfers of excise

---

Ahlberg, Timothy H. - Vol. I                                      April 21, 2020

---

**206**

tax revenues out of BPPR 9458, the last account
on your flow of funds.
        THE REPORTER:  Hi.  This is the
court reporter.
        I just said this is the court
reporter.  My call had dropped off.
        MR. NATBONY:  Okay.  Are you back
then?
        THE REPORTER:  I am.
        MS. McKEEN:  We stopped for you.
        THE REPORTER:  Thank you.
BY MR. NATBONY:
    Q.    Okay.  So to repeat the question,
it was going back to the July 2016 to present
period, which, if you recall, hinted the flow
of funds at BPPR 9458.
        And we were discussing what
documents you had looked at to determine
whether there were further transfers of excise
tax revenues out of that Fund.  Do you recall
that discussion?
    A.    Yes.
    Q.    Is it fair to say that after
looking at whatever records you looked at
concerning transfers out of BPPR 9458, you are

---

**207**

not able to say that any of those transfers
were of excise taxes for HTA?
        UNIDENTIFIED SPEAKER:  Objection.
BY MR. NATBONY:
    Q.    You can answer.
    A.    **Can you rephrase the question in**
**the affirmative?**
    Q.    Sure.  Is it your position that
after looking at all the records -- strike
that.
        Is it your position that after
looking at whatever records you looked at with
respect to transfers out of BPPR 9458, you
cannot say that any of the transfers were of
excise taxes relating to HTA?
        MS. McKEEN:  Form.
        THE WITNESS:  I cannot say that
transfers -- any transfers out of that account
during this time period would have been excise
taxes.
BY MR. NATBONY:
    Q.    Now, when you talk about sweeps to
the TSA operational account, there are also
sweeps to other accounts, aren't there, like
the TSA cash concentration account, correct?

---

**208**

    A.    **I'm uncertain if that**
**characterizes a TSA sweep account or not.**
    Q.    Well, there's not only one account
that excise taxes get swept into, right?  They
could be swept into a number of different TSA
accounts, right?
    A.    **Even if funds are comingled at the**
**point of entry into the TSA operational**
**account, it would mean that funds are comingled**
**in the other TSA account.**
    Q.    Right.  And there could be sweeps
from the TSA operational account into other
accounts as well, right?
    A.    **There could be transfers from one**
**TSA account to another TSA account.**
        MR. NATBONY:  Can you pull up
tab 32?  Let's mark that as Exhibit -- what are
we up to?  18, I think?  Yeah.
        (Monoline Exhibit 18 is
        introduced for the record.)
BY MR. NATBONY:
    Q.    I'll now show you what's been
marked as Monoline Exhibit 18.  Get out my
trusty binder.
        Have you seen this document

---

**209**

before, sir?
    A.    **Yes.**
    Q.    Did you see it in preparation for
your deposition today?
    A.    **I can't recall.  It's possible**
**I've seen it prior.**
    Q.    Do you know who prepared this?
    A.    **I'm not certain which individual**
**prepared this.**
    Q.    Do you know what -- what entity
prepared it?
    A.    **I believe this was prepared by**
**HTA.**
    Q.    Okay.  How do you have that
belief -- sorry, strike that.
        Where do you get that belief from?
    A.    **Having asked the Department of**
**Treasury about -- not certain if it was**
**specifically about this document, but documents**
**similar to these and them having no -- them**
**acknowledging to me that this was not in their**
**document production.**
    Q.    But you didn't ask the Department
of Treasury specifically about this document,
correct?

---

Ahlberg, Timothy H. - Vol. I

April 21, 2020

54 (Pages 210 to 213)

---

**210**

1    A.    I don't recall specifically asking
2  Treasury about this particular document.
3    Q.    How would you describe this
4  document?
5         MS. McKEEN:  Object to form.
6         THE WITNESS:  The document says it
7  is a 278 Fund accreditation for fiscal year
8  '15-'16.
9  BY MR. NATBONY:
10   Q.    All right.  And what -- what do
11 you on behalf of HTA and the Commonwealth
12 understand this to be?
13   A.    It's a report that includes 278
14 revenues.
15   Q.    And Fund withdrawals?
16        MS. McKEEN:  Objection.
17 BY MR. NATBONY:
18   Q.    And Fund withdrawals, not side
19 withdrawals, right?
20        THE REPORTER:  Thank you.
21        MR. NATBONY:  I got you.
22        MS. McKEEN:  Same objection.
23        THE WITNESS:  That's not clear to
24 me -- oh, okay.  I see that the document does
25 say "Fund withdrawals" on it.

---

**211**

1  BY MR. NATBONY:
2    Q.    Now, you'll see that this
3  document, if you go to the last page, goes
4  through September of 2019, correct?
5    A.    That's what this page of the
6  document says.
7    Q.    All right.  So does this document
8  state the amount of pledged revenues that were
9  collected into Fund 278 between the period
10 November 2015 and December 2019?
11        MS. McKEEN:  Objection.
12        THE WITNESS:  I'm not certain that
13 this document includes any information on
14 pledging or not pledging.
15 BY MR. NATBONY:
16   Q.    Okay.  Well, does this document
17 reflect the amount of revenues?  Let me
18 rephrase.
19        Does this document reflect the
20 amount of excise tax revenues collected between
21 November 2015 and October 2019?
22   A.    This document does show revenues
23 from July through November -- or sorry --
24 July 2015 to September 2019.
25   Q.    And these are HTA excise tax

---

**212**

1  revenues that were a designated part of Fund
2  278, correct?
3    A.    That's what the document says.
4    Q.    Okay.  And it also reflects
5  withdrawals during that period, correct?
6    A.    That's what the document says.
7    Q.    And is it fair to say that from
8  the period of November 20 -- I'm sorry -- from
9  July 2015 through October 2019 -- give me a
10 second here.
11        Can you determine from this
12 document the total amount of revenues that have
13 been collected through September of 2019?
14   A.    I could determine how much this
15 document says is 278 revenues from
16 July (indiscernible).
17   Q.    And what --
18   A.    -- for 2019.
19   Q.    I apologize.
20        THE REPORTER:  I'm sorry,
21 Mr. Witness.  You dropped off at the end.
22 BY MR. NATBONY:
23   Q.    You said -- why don't you repeat
24 your answer:
25        "I could determine how much this

---

**213**

1  document says" what?
2    A.    I could determine how much this
3  document says is 278 revenues from July 2015 to
4  September 2019.
5    Q.    And what is that amount?
6    A.    I would need a calculator or Excel
7  spreadsheet to add that up.
8    Q.    Well, take a look at the last
9  page.  There is a Total column.  Maybe that
10 will help you.
11   A.    Is this total summing all of the
12 years in this document?
13   Q.    Well, that is a question for you.
14 Is it?
15        MS. McKEEN:  Objection.  The
16 witness does not have a calculator --
17        MR. NATBONY:  He is here for the
18 Commonwealth and this is a shared Commonwealth
19 document.
20        MS. McKEEN:  I understand, but
21 that doesn't make him into a calculator.  Are
22 you asking him to perform this calculation?
23        MR. NATBONY:  No.  I'm asking
24 him -- I'm asking him whether to confirm that
25 up to September 2019, there were over

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                      April 21, 2020

55 (Pages 214 to 217)

---

**214**

1  $2.7 million [sic] of excise tax revenue
2  collected relating to Fund 278.
3  BY MR. NATBONY:
4  Q.    Is that correct?
5       UNIDENTIFIED SPEAKER:  Objection.
6       MR. NATBONY:  Billion, not
7  million, for the court reporter.
8       THE REPORTER:  Thank you.
9       THE WITNESS:  That's what this
10  document says.
11  BY MR. NATBONY:
12  Q.    And of that 2.7 billion, none of
13  that revenue would have been held in the
14  Commonwealth's General Fund, correct?
15  A.    I don't think about the General
16  Fund or any Fund in billions of dollars, as you
17  just expressed.
18  Q.    So none of the $2.7 billion was
19  designated to a separate Fund designation
20  relating to the General Fund, correct?
21  A.    No.
22  Q.    Not correct or it is correct?
23  A.    That you phrased it, that is
24  correct.
25  Q.    Okay.  Thank you.  Sorry for the

---

**215**

1  confusion.
2       Is it fair to say that further
3  excise tax revenues have been collected by the
4  Commonwealth since September of 2019?
5  A.    Yes.
6  Q.    So is it possible to run an
7  updated report that shows Fund 278
8  accreditation through the present?
9       MS. McKEEN:  Objection.
10       THE WITNESS:  I can't speculate
11  one way or the other.
12  BY MR. NATBONY:
13  Q.    Well, you're here representing HTA
14  and the Commonwealth, right?  You don't know
15  whether you can update this particular document
16  to the present?
17  A.    I would have to check on that and
18  get back to you.
19  Q.    Do you know the current amount of
20  any excise tax revenues that are currently held
21  by the Commonwealth?
22  A.    I don't know anything about the
23  Commonwealth holding any specific kind of
24  revenue.
25  Q.    Well, the Commonwealth has

---

**216**

1  collected HTA tax -- excise tax revenues and
2  still does, correct?
3  A.    Correct.
4  Q.    How much in HTA excise taxes is
5  the -- is currently in the Commonwealth's
6  possession that was collected?
7  A.    As mentioned before, that's not
8  determinable.
9  Q.    And it's not determinable because
10  you've -- because the Commonwealth has swept
11  all the money into its operational account,
12  right?
13  A.    It's not determinable because
14  funds are comingled in the TSA.
15  Q.    Right.  And it's the Commonwealth
16  that comingled the money into the TSA, correct?
17  A.    The comingling first happened in a
18  TSA account.
19  Q.    Right.  So, but for the
20  comingling, the Commonwealth would be able to
21  determine precisely how much excise tax
22  revenues is in its possession, correct?
23  A.    Correct.
24       MS. McKEEN:  Objection.
25       THE WITNESS:  Hypothetical

---

**217**

1  question.
2  BY MR. NATBONY:
3  Q.    Right.  And what's the answer?
4       MS. McKEEN:  Objection.
5       THE WITNESS:  I don't know since
6  it's a hypothetical question.
7  BY MR. NATBONY:
8  Q.    If today one wanted to know --
9  strike that.
10       Do you know what the
11  Commonwealth's current plans are with respect
12  to excise taxes that it's currently collecting?
13       MS. McKEEN:  Objection.
14       THE WITNESS:  Outside of my
15  understanding that the flow of funds has
16  documented within the presentation that the --
17  the present, my understanding is the process
18  remains the same even to this day.
19  BY MR. NATBONY:
20  Q.    So is it your position that the
21  excise -- HTA excise taxes from the
22  Commonwealth's perspective are going to
23  continue to be placed in a TSA operational
24  account and not sent to HTA?
25  A.    I didn't (indiscernible).

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                              April 21, 2020

---

**218**

1    MS. McKEEN:
2    Objection (indiscernible).
3    Hang on, Tim. I'm going to object
4    because it's outside the scope of the topics.
5    You can answer if you know.
6    BY MR. NATBONY:
7    Q.    You may answer.
8    A.    **I expect the flow of funds to**
9    **continue as documented with the to-present**
10   **slide on the flow of funds presentation.**
11   Q.    That would be the last slide
12   relating to July 2016 to present?
13   A.    **Without having that document in**
14   **front of me, I believe those are the dates.**
15   Q.    Do collected revenues that are
16   received by the Commonwealth result in cash to
17   the Commonwealth?
18   A.    **Revenue collection is cash**
19   **collection.**
20   MR. NATBONY: Just give me a
21   minute here, and I may be ready to transfer
22   questioning to my colleagues.
23   Mr. Ahlberg, I want to thank you
24   for your time, at least with me, today. I'm
25   going to transfer to my colleagues on the other

---

**219**

1    credits.
2    I am going to reserve rights on
3    the questions that you've directed the witness
4    not to answer. I know we are meeting again
5    Thursday.
6    We'll have a discussion between
7    us -- us lawyers between now and then on
8    whether to proceed to the judge on that issue.
9    Reserving that right, at least for
10   the moment, I have no further questions and
11   transfer to -- I believe it might be
12   Ms. Miller.
13   THE WITNESS: Thank you, sir.
14   MR. NATBONY: Thank you,
15   Mr. Ahlberg.
16   The court reporter can remove me
17   from the screen if you wish.
18   THE REPORTER: Oh, I don't want to
19   touch anything.
20   (Discussion off the record.)
21   MS. HALL: Hi, Bill. It's Jaclyn.
22   I think if you turn off your camera, you'll
23   drop out of the video screen for everyone.
24   MS. MILLER: Just for the record,
25   Atara Miller from Milbank on behalf of Ambac.

---

**220**

1    Liz, I know that you have a hard
2    stop at about -- or someone on your team has a
3    hard stop in about half an hour.
4    I'm happy to start now and go as
5    far as we can or to just pick up with that on
6    Thursday, whatever you think is best.
7    MS. McKEEN: I think however you'd
8    like to proceed is fine with us, but before I
9    do, I'd like to check in with the witness.
10   It's obviously been a long day, and so I'd like
11   it to be up to Tim.
12   Tim, would you like to go for the
13   next half hour, or would you prefer to call it
14   a day and resume on Thursday morning? It's
15   completely up to you.
16   THE WITNESS: If there's no
17   preference among the group, I would prefer to
18   go to Thursday morning.
19   MS. McKEEN: Okay. Great. Let's
20   do that, then, if you don't mind, Atara, okay?
21   MS. MILLER: Okay. That's fine
22   with us.
23   MS. McKEEN: Great.
24   Tim, thanks for your time. I
25   assume that Atara will get other links to )

---

**221**

1    Thursday's session.
2    MS. MILLER: Yeah, I think we
3    already got them for Thursday. So we'll just
4    double-check that and make sure that it's all
5    set up.
6    MR. NATBONY: Before we hang up,
7    did someone want to make a designation or a
8    statement of confidentiality?
9    MS. McKEEN: We probably should.
10   I think until we've had time to
11   review the transcript and designate particular
12   portions of it confidential, it probably makes
13   sense that the whole thing be designated
14   confidential pursuant to the protective order
15   if others are amenable to that.
16   MS. MILLER: We have no objection.
17   MR. NATBONY: Same here.
18   MS. MILLER: So I think if the
19   videographer could take us off the record and
20   close for the day, we'll meet back on Thursday
21   morning.
22   MR. NATBONY: Thanks, everybody.
23   THE VIDEOGRAPHER: We are off the
24   record at 5:24 p.m. This adjourns today's
25   video deposition.

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                      April 21, 2020

57 (Pages 222 to 224)

---

**222**

1    (Deposition adjourned at
2    5:24 p.m. and continued to
3    April 23, 2020, at 9:30 a.m.)
4
5
6
7
8         ACKNOWLEDGMENT OF DEPONENT
9
10        I, _____, do hereby
11   acknowledge that I have read and examined the
12   foregoing testimony, and the same is a true, correct
13   and complete transcription of the testimony given by
14   me, and any corrections appear on the attached Errata
15   Sheet signed by me.
16
17
18   _____    _____
19   (DATE)          (SIGNATURE)
20
21
22
23
24
25

---

**223**

1    STATE OF ILLINOIS  )
2                       ) SS:
3    COUNTY OF C O O K  )
4
5         I, Cynthia J. Conforti, a notary public
6    within and for the County of Cook and State of
7    Illinois, do hereby certify that heretofore,
8    to-wit, on the 21st day of April, 2020,
9    virtually appeared TIMOTHY H. AHLBERG, in a
10   cause now pending and undetermined in the
11   United States District Court for the District
12   of Puerto Rico, IN RE: THE FINANCIAL OVERSIGHT
13   AND MANAGEMENT BOARD FOR PUERTO RICO, AS
14   REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO
15   RICO, et al., DEBTORS.
16        I further certify that the said witness
17   was first duly sworn to testify the truth, the
18   whole truth and nothing but the truth in the
19   cause aforesaid; that the testimony then given
20   by said witness was reported stenographically
21   by me in the presence of the said witness, and
22   afterwards reduced to typewriting by
23   Computer-Aided Transcription, and the foregoing
24   is a true and correct transcript of the
25   testimony so given by said witness as

---

**224**

1    aforesaid.
2         I further certify that the signature to
3    the foregoing deposition was not waived by
4    counsel for the respective parties.
5         I further certify that I am not counsel
6    for nor in any way related to the parties to
7    this suit, nor am I in any way interested in
8    the outcome thereof.
9         IN TESTIMONY WHEREOF:  I have hereunto
10   set my hand and affixed my notarial seal this
11   22nd day of April, 2020.
12
13
14
15
16        Cynthia J. Conforti, CSR, CRR
17        CSR License No. 084-003064
18
19
20
21
22
23
24
25

---

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

1

**A-A-F-A-F**
17:6
**a.m** 1:24 7:8
47:17,20
222:3
**AAFAF** 17:5
23:15,23
24:4,13 33:1
41:23 42:7
42:11,14
44:10,20
63:1 86:16
**ability** 96:8,13
96:18 110:22
112:7,16
114:12 183:6
183:9 199:5
199:12
**able** 16:15
47:6,23
55:25 57:2
80:20,22
92:5 93:7,13
95:18 96:5
116:19
148:24 163:1
163:3,20,22
185:8 186:13
190:22,23,24
192:21,25
205:7 207:1
216:20
**absolutely**
109:23
**accept** 80:18
**access** 12:21
**accommodate**
16:4
**accompanyi...**
117:5 118:2
124:6
**account** 18:6

23:16,18
24:16 25:9
25:11 38:8
45:17,24
46:2 48:5,23
48:24 53:13
54:14,22
56:23 61:2,6
61:10,14,19
65:5 69:2,3
69:11,16,20
69:21,23
71:8 72:18
76:20,21
77:4,5 82:5
82:12 83:1
92:13 95:16
97:21 105:18
105:22,24
118:12,13,17
118:24 121:9
125:4,15,20
126:16
127:24
129:21,22
130:2,7,8
133:3,5,6,18
134:2 135:13
135:16
137:13,15,16
137:17
148:20
150:14
151:12,16,18
154:22
155:14 157:9
160:4,4,5,6,7
160:10
161:14,16,17
161:18,20,24
162:2,10
163:3,3,22
163:22 165:3

165:15 166:8
166:10,12,18
168:23
169:23
170:19
171:18,18
173:24
178:21,24
179:4,6,9,10
179:16,19,21
179:21 180:1
180:4,9,12
180:17,23
181:3,8,13
182:2,4,8,10
182:10,16
183:5 185:7
185:20,22
186:2 187:18
188:1,7
189:22 190:1
190:2,3,5,7
190:10,25
191:1,14,19
192:2,17
193:16,25
197:8,20,21
198:6,7,16
198:22 199:7
199:7,13,18
199:23 200:4
200:8,14,17
200:18 201:2
204:13,23,23
204:23 205:3
205:6,7
206:1 207:18
207:23,25
208:2,3,9,10
208:12,15,15
216:11,18
217:24
**Accountant**

142:10
**accounting**
16:21 20:9
29:1 30:7,8
34:12,17,18
34:20 35:2
38:16 39:5,6
40:3,4 53:11
53:15 57:25
60:3 62:21
62:24 84:20
84:21 88:3
88:14,15,17
88:19 89:5
98:7 173:20
173:23
**accounts**
45:25 46:6,9
53:17 54:19
54:20 60:5
79:23,24
80:1 87:2
92:18,24
101:1,4
102:19 103:2
109:2 110:16
121:15,16
124:19 125:1
125:7,8,16
125:21,23,23
126:10,11,11
126:19 130:4
132:4,6,16
132:16,19,20
133:15 134:2
160:12
172:17
173:18
174:15
178:12,13,14
178:18,22
179:2,3,13
183:12

187:19 188:2
201:11
207:24 208:6
208:13
**accreditation**
140:25 141:1
152:16 210:7
215:8
**accrual** 98:7
**accurately**
21:20 26:24
27:7 28:1
**acknowledge**
222:11
**acknowledg...**
209:21
**ACKNOWLE...**
222:8
**acronym** 88:5
**Act** 130:17
201:23 202:1
**action** 75:14
159:20 167:1
**actions** 65:20
67:24 68:3
167:7,9
**activities**
32:24 59:21
85:4 97:23
**activity** 184:5
**Acts** 202:7
**actual** 36:25
60:22 64:2
79:13 92:23
162:14
171:20
194:21 195:6
196:16
197:12,14
**ADAM** 4:21
**adam.langle...**
4:21
**add** 213:7

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

2

**addition** 7:16
20:10
**additional**
138:3
**Additionally**
95:17
**adjourned**
222:1
**adjourns**
221:24
**adjust** 47:11
**adjustment**
139:20
**adjustments**
173:23
**Administered**
1:7
**administrati...**
119:20 120:7
120:20
**advise** 14:24
**Advisory** 3:11
17:7
**affiliated**
161:21 162:3
**affirmative**
207:7
**affixed** 224:10
**aforesaid**
223:19 224:1
**afternoon**
94:22
**agencies** 19:8
19:12,17
21:10 25:18
39:6 113:19
114:6,24
115:1,5
**agency** 3:11
17:7 115:8
**aggregator**
194:19
196:13

**agree** 10:18,19
11:7 35:20
35:25 36:3
41:23 45:23
46:5 48:17
48:20,22
49:10 50:19
51:13 52:22
53:1,8,9
59:18,25
84:19,23
85:7 86:2,8
86:13 90:6,9
100:8 102:18
113:16
117:11
121:14
149:23 178:8
187:16,24
188:3
**agreed** 8:1,7
9:4,10,17
163:12
**agreement**
9:19 10:3
41:10 42:10
44:9,20
122:24
**ahead** 45:21
67:5 71:20
132:18
160:17
169:14,17
**Ahlberg** 1:19
6:2 7:4 13:8
13:17 23:10
28:4 37:9
48:1 68:21
83:9 84:16
93:24 94:22
140:5 146:18
166:7 176:17
181:20 198:5

218:23
219:15 223:9
**al** 1:14 223:15
**Alexa** 5:23
**Alexander**
5:24
**ALEXANDRA**
2:23
**allocable**
130:13
131:21
186:10
**allocated** 58:9
**allow** 27:1
67:25 107:10
167:2 171:6
177:25
**alternate**
186:24
**Ambac** 2:13
219:25
**amenable**
221:15
**amendment**
80:18
**AMERINATI...**
5:15
**amiller@mil...**
2:23
**amount** 56:1
56:11,16
57:15 61:25
62:17,21
65:7 70:1
93:11 133:13
135:10,12,20
136:5,17
137:20,25
138:5 153:6
153:12 154:1
154:5,10
201:9 204:3
205:8 211:8

211:17,20
212:12 213:5
215:19
**amounts**
46:10 90:6,9
93:8,14
107:5 108:24
136:20 153:9
182:19
190:22 200:7
200:13 201:1
**analysis** 9:7
9:15 33:3
177:19 178:5
**Angel** 20:9
**annual** 51:12
51:21 176:23
**answer** 10:17
14:12,17
15:20,22
32:4 36:24
41:7 66:2,3,9
66:16 67:1,2
67:20,22
68:4,15
70:13,14
75:15 85:21
101:9 114:16
124:3 134:17
136:24 137:3
137:6 151:23
160:17 161:7
163:13
166:23 167:5
167:15 169:9
169:11,25
172:2 180:25
193:10
197:10
198:14
201:16
202:13 207:5
212:24 217:3

218:5,7
219:4
**answered**
43:23 134:8
**answers** 14:13
14:23
**Anthony** 5:25
7:4
**anticipate** 9:21
11:15
**anticipated**
41:13
**antiterrorist**
161:18,21,25
**anybody** 143:1
**anymore** 158:3
**apart** 82:20
**apaslawsky...**
2:24
**apavel@om...**
3:19
**apologies** 47:3
154:7 200:10
**apologize**
32:22 88:6
136:11
139:18 184:1
212:19
**apostrophe**
149:7
**Apparently**
175:15
**appear** 10:3
13:1 82:8,10
122:6 149:14
184:5 222:14
**appearance**
42:23,25
43:20
**appeared**
223:9
**appearing**
12:8

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

3

| | | | | |
|---|---|---|---|---|
| appears 50:6 | 42:7 | assume 14:23 | 38:15,22 | Awesome |
| 100:24 | articulate 67:8 | 220:25 | 39:5 40:3 | 176:13 |
| 105:11 | ASHLEY 3:18 | Assuming | authority 3:11 | |
| 149:13 | aside 21:8 | 72:25 | 5:3,16 15:8 | **B** |
| appendix | 97:17 | assumptions | 15:16 17:7 | bachelor 28:9 |
| 114:3,3 | asked 39:25 | 9:23 10:25 | 17:17 101:2 | back 47:19 |
| applies 130:7 | 43:22 59:13 | assurance | 111:6,11,15 | 79:9 94:2,6 |
| 158:15 205:9 | 65:18 66:12 | 2:13 29:23 | 111:19 | 94:18 116:5 |
| apply 8:14 | 68:7 69:14 | Assured 4:6,6 | 112:21 | 118:4 121:4 |
| 10:25 115:13 | 71:3,25 | 11:25 | 120:12 | 123:1,4,6,10 |
| 158:2 | 85:19 103:19 | Atara 2:22 | 188:13,18,19 | 123:22 146:8 |
| APPP 27:11 | 125:17 134:7 | 219:25 | 188:24 | 146:12 |
| appreciated | 134:19 154:8 | 220:20,25 | Authority's | 148:12,13 |
| 123:22 | 172:14,21 | attached 99:12 | 149:7 152:11 | 152:20 |
| appropriate | 195:22 | 124:7 222:14 | authorizations | 161:10 |
| 98:7 | 209:17 | attained 28:9 | 187:17,25 | 175:24,24 |
| appropriation | asking 12:1,5 | attaining 85:4 | authorized | 176:11 180:7 |
| 51:12,22 | 19:1 65:23 | attended 28:5 | 68:17 118:22 | 180:14 |
| 203:3 | 67:23 68:1 | attending 7:10 | 119:9 121:9 | 181:25 |
| approval | 75:8,13 | attention | 121:17,25 | 184:25 186:5 |
| 114:5,23 | 85:12,17 | 23:12 37:15 | authorizing | 189:6,8,18 |
| approve | 97:6,7 101:3 | 166:6 | 118:23 | 189:24 |
| 113:20 | 139:11 | attorney 6:25 | automated | 192:19 193:2 |
| 114:12 | 146:19 167:1 | 7:13 15:22 | 91:6,13,16 | 196:8 198:2 |
| approved | 167:7 169:19 | 24:10 29:13 | auxiliary 19:24 | 205:7,19,22 |
| 119:9 | 181:15 | 74:9 188:25 | available | 206:7,14 |
| approximate | 200:19,20 | 198:17,25 | 147:12,15 | 215:18 |
| 204:2 | 201:15 210:1 | attorneys 7:10 | 148:8 187:1 | 221:20 |
| approximately | 213:22,23,24 | audio 7:20 | 193:22 | background |
| 7:10 21:1 | assertions | audited 108:12 | Avenue 2:5 | 46:17,23 |
| 41:18 107:9 | 10:23 | 110:3 | 3:4 4:2,18,22 | 146:25 |
| April 1:25 7:7 | asset 32:5,15 | auditing 38:8 | 5:12,18 | 176:19 |
| 170:6,18 | 79:17 | 100:1 | aware 25:8,13 | Baig 5:22 |
| 172:17 173:6 | assets 147:7 | auditor 100:6 | 38:10 70:5 | balance 56:24 |
| 173:16 | assigned 98:6 | auditors 100:3 | 74:14 89:19 | 70:18 95:24 |
| 174:13 186:6 | assisting | audits 30:2 | 95:23 96:4 | 96:19 97:9 |
| 222:3 223:8 | 176:23 | authenticity | 96:21 97:1 | 126:15 138:8 |
| 224:11 | associate | 9:5,14,23 | 112:20 123:6 | 138:11,17,21 |
| area 20:1 | 29:22 40:16 | 10:1 11:15 | 130:2,4 | 138:25 139:6 |
| argument | associated | author 49:4 | 138:10 | 139:9,10,13 |
| 170:2 | 55:5 61:22 | 52:14 142:21 | 148:10,14,23 | 146:19,23 |
| arising 11:19 | 105:19 148:4 | 149:20 | 161:17,20 | 147:10 |
| arrangement | 152:7 | authoritative | 173:22 201:8 | 154:22,25 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

3

| | | | | |
|---|---|---|---|---|
| **appears** 50:6 | 42:7 | **assume** 14:23 | 38:15,22 | **Awesome** |
| 100:24 | **articulate** 67:8 | 220:25 | 39:5 40:3 | 176:13 |
| 105:11 | **ASHLEY** 3:18 | **Assuming** | **authority** 3:11 | |
| 149:13 | **aside** 21:8 | 72:25 | 5:3,16 15:8 | **B** |
| **appendix** | 97:17 | **assumptions** | 15:16 17:7 | **bachelor** 28:9 |
| 114:3,3 | **asked** 39:25 | 9:23 10:25 | 17:17 101:2 | **back** 47:19 |
| **applies** 130:7 | 43:22 59:13 | **assurance** | 111:6,11,15 | 79:9 94:2,6 |
| 158:15 205:9 | 65:18 66:12 | 2:13 29:23 | 111:19 | 94:18 116:5 |
| **apply** 8:14 | 68:7 69:14 | **Assured** 4:6,6 | 112:21 | 118:4 121:4 |
| 10:25 115:13 | 71:3,25 | 11:25 | 120:12 | 123:1,4,6,10 |
| 158:2 | 85:19 103:19 | **Atara** 2:22 | 188:13,18,19 | 123:22 146:8 |
| **APPP** 27:11 | 125:17 134:7 | 219:25 | 188:24 | 146:12 |
| **appreciated** | 134:19 154:8 | 220:20,25 | **Authority's** | 148:12,13 |
| 123:22 | 172:14,21 | **attached** 99:12 | 149:7 152:11 | 152:20 |
| **appropriate** | 195:22 | 124:7 222:14 | **authorizations** | 161:10 |
| 98:7 | 209:17 | **attained** 28:9 | 187:17,25 | 175:24,24 |
| **appropriation** | **asking** 12:1,5 | **attaining** 85:4 | **authorized** | 176:11 180:7 |
| 51:12,22 | 19:1 65:23 | **attended** 28:5 | 68:17 118:22 | 180:14 |
| 203:3 | 67:23 68:1 | **attending** 7:10 | 119:9 121:9 | 181:25 |
| **approval** | 75:8,13 | **attention** | 121:17,25 | 184:25 186:5 |
| 114:5,23 | 85:12,17 | 23:12 37:15 | **authorizing** | 189:6,8,18 |
| **approve** | 97:6,7 101:3 | 166:6 | 118:23 | 189:24 |
| 113:20 | 139:11 | **attorney** 6:25 | **automated** | 192:19 193:2 |
| 114:12 | 146:19 167:1 | 7:13 15:22 | 91:6,13,16 | 196:8 198:2 |
| **approved** | 167:7 169:19 | 24:10 29:13 | **auxiliary** 19:24 | 205:7,19,22 |
| 119:9 | 181:15 | 74:9 188:25 | **available** | 206:7,14 |
| **approximate** | 200:19,20 | 198:17,25 | 147:12,15 | 215:18 |
| 204:2 | 201:15 210:1 | **attorneys** 7:10 | 148:8 187:1 | 221:20 |
| **approximately** | 213:22,23,24 | **audio** 7:20 | 193:22 | **background** |
| 7:10 21:1 | **assertions** | **audited** 108:12 | **Avenue** 2:5 | 46:17,23 |
| 41:18 107:9 | 10:23 | 110:3 | 3:4 4:2,18,22 | 146:25 |
| **April** 1:25 7:7 | **asset** 32:5,15 | **auditing** 38:8 | 5:12,18 | 176:19 |
| 170:6,18 | 79:17 | 100:1 | **aware** 25:8,13 | **Baig** 5:22 |
| 172:17 173:6 | **assets** 147:7 | **auditor** 100:6 | 38:10 70:5 | **balance** 56:24 |
| 173:16 | **assigned** 98:6 | **auditors** 100:3 | 74:14 89:19 | 70:18 95:24 |
| 174:13 186:6 | **assisting** | **audits** 30:2 | 95:23 96:4 | 96:19 97:9 |
| 222:3 223:8 | 176:23 | **authenticity** | 96:21 97:1 | 126:15 138:8 |
| 224:11 | **associate** | 9:5,14,23 | 112:20 123:6 | 138:11,17,21 |
| **area** 20:1 | 29:22 40:16 | 10:1 11:15 | 130:2,4 | 138:25 139:6 |
| **argument** | **associated** | **author** 49:4 | 138:10 | 139:9,10,13 |
| 170:2 | 55:5 61:22 | 52:14 142:21 | 148:10,14,23 | 146:19,23 |
| **arising** 11:19 | 105:19 148:4 | 149:20 | 161:17,20 | 147:10 |
| **arrangement** | 152:7 | **authoritative** | 173:22 201:8 | 154:22,25 |

Ahlberg, Timothy H. - Vol. I

April 21, 2020

4

179:8 182:17
185:10
**balances**
54:20,23
55:4,8,9 64:2
139:3 183:12
185:13,13,17
192:16,17
201:5
**bank** 19:9
45:25 48:24
53:13,17
54:20,21
71:7 79:23
82:12 83:1
92:18 118:13
124:14,20,21
125:3,9
126:6,10,11
126:19
127:23 132:8
132:12,23,25
133:15
158:18,19
171:21
172:19
174:21
182:20
186:25
191:14 193:7
193:11 195:3
**base** 200:7
**based** 73:21
73:23 81:19
95:10 111:3
112:8,17
115:15
174:20
**bases** 161:3
**basically**
114:11
116:20
**basis** 43:21

66:5 69:8
90:17 142:16
144:2 181:11
182:6
**batch** 61:20
135:17
**Beach** 3:21
**beginning**
200:11
**behalf** 4:6 12:1
14:23 15:3
22:15 78:25
177:22
210:11
219:25
**belief** 209:15
209:16
**belies** 23:25
**believe** 9:9,12
9:17 21:17
26:6 27:4
32:9 78:20
81:4 100:1
109:21
115:23
116:16
132:22
140:17
143:25 156:2
172:18 173:3
189:10
209:12
218:14
219:11
**believed**
149:15
**bell** 112:5
**belonged**
149:16
**belongs** 116:1
**benefit** 46:12
**Berezin** 3:6
175:20

**best** 26:23
84:12 123:15
220:6
**BI** 194:20
**bilingual** 16:19
**Bill** 4:11 10:17
11:6 36:18
37:6 45:18
66:11,21
67:21 78:7
78:10 99:9
102:4 145:17
163:8 166:25
167:16,24
169:7,15
170:10
177:17
181:14
187:20
195:15
203:10
219:21
**bill.natbony...**
4:12
**billion** 214:6
214:12,18
**billions** 197:20
214:16
**binder** 208:24
**bio** 26:16,20
26:22
**bit** 75:20
**BK** 1:6,12
**blind** 46:22
**blocked** 47:9
**blow** 80:22
**blue** 132:3
158:18
**board** 1:5,11
2:2 11:1,9
17:11,13
27:11 81:5
223:13

**Board's** 80:15
**bond** 23:16
24:17 25:10
**Boston** 2:11
**Boston/DC**
30:17
**bottom** 23:14
23:22 26:7
48:13 116:8
121:7 142:7
151:9,12
**box** 95:2
158:14,18
180:3
**boxes** 132:3,4
132:13,15
158:2,16
**BPPR** 91:1,11
133:2 134:22
137:9 154:18
170:19
173:18
174:15
178:21
179:20
180:17,23
181:8,12
182:1,7,7
183:3,7,14
183:24
185:11 186:7
189:13 191:7
191:12
192:11
193:12 194:2
197:2 206:1
206:16,25
207:13
**break** 7:21
16:3 47:11
83:23,24
84:9 93:18
102:8 145:13

145:18,23
175:23
195:15,20
196:7 197:23
**brief** 80:15
**bring** 47:7
80:3 83:6
108:5
**brings** 12:13
**broke** 111:12
200:10
**brought** 77:14
135:6 140:13
**browser**
145:12
**budget** 176:23
**budgets**
176:18
**build** 196:11
**building** 5:11
31:8
**Bulik** 20:9
**business** 28:6
97:5 179:11
194:17
**BUTLER** 4:16

**C** 2:1 3:1 4:1
5:1 223:3
**Cadwalader**
4:8 11:24
**CAELAINN**
2:16
**CALABRESE**
3:7
**calculation**
213:22
**calculator**
213:6,16,21
**California** 3:21
**call** 7:6 31:2
90:18,19,23

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                      April 21, 2020

5

| | | | | |
|---|---|---|---|---|
| 90:25 175:4 | 32:10,15,18 | 90:24 98:9 | 171:4,14 | 130:14 131:4 |
| 198:20 203:8 | 32:24,25 | 100:5 113:20 | **changes** | 131:13 |
| 203:18 206:6 | 33:5,9 36:15 | 126:19 127:3 | 137:25 | 141:14 202:9 |
| 220:13 | 37:1,13,16 | 136:7 141:2 | 173:20 | 202:14,16 |
| **called** 53:12 | 48:5,7 56:8 | 142:20 151:5 | **characteriza...** | 203:7,17 |
| 53:18 54:4 | 56:23,24 | 159:20 167:7 | 165:19 | 204:6,15 |
| 55:16 57:19 | 60:8 62:3 | 180:9 181:2 | **characterizes** | **cigarettes** |
| 61:2,10 | 64:2 70:18 | 186:10 | 208:2 | 17:23 |
| 141:20 | 73:25 75:21 | 187:19 188:1 | **charge** 155:14 | **circle** 107:21 |
| 178:13 | 75:22 77:17 | 188:25 195:9 | **charging** | **circular** 113:3 |
| 194:18 | 79:15,19,19 | 198:18 203:2 | 43:20 | **circumstanc...** |
| 196:12 | 79:20 92:12 | 209:8,18 | **chart** 80:9,20 | 12:10 126:19 |
| **CALLEN** 4:19 | 92:22,23,24 | 211:12 | 80:21 126:4 | **City** 28:20 |
| **calls** 19:9 | 93:11 95:14 | **certainly** 22:12 | 128:17,22 | **Civil** 1:20 |
| **camera** 7:18 | 97:19 98:6 | 27:24 98:16 | 133:11 135:8 | **clarification** |
| 95:1,7 | 98:16 133:18 | 198:15 | 137:8,19 | 27:12 |
| 219:22 | 135:2 140:11 | **certification** | 139:19 | **clarify** 33:23 |
| **campus** 28:18 | 155:13 178:4 | 100:25 | 152:23 | 67:22 86:18 |
| **CANTOR-K...** | 183:2 185:12 | **certifications** | 158:13 168:9 | 91:10 121:18 |
| 5:2 | 192:16,16,17 | 29:11 | 177:8,10,11 | 147:22 |
| **capability** | 207:25 | **certified** 99:4 | 177:15 178:4 | **clarifying** 19:4 |
| 96:15 | 218:16,18 | 99:10 103:6 | 178:5,17 | **classes** 28:24 |
| **capacity** 33:7 | **catch** 96:10,11 | 113:7 116:4 | **charts** 124:7 | 29:4 |
| **capital** 35:7 | 203:11 | 116:13 | 126:17 | **classification** |
| **capitalized** | **categories** | 162:13 | 127:18 128:3 | 61:25 62:17 |
| 53:21 89:17 | 77:24 | **certify** 119:4 | 128:8,9,14 | 62:19 63:2 |
| **capture** 79:15 | **category** 78:22 | 223:7,16 | 128:16 129:2 | 77:11,11 |
| **care** 84:7 | **cause** 223:10 | 224:2,5 | 129:7,8,14 | 127:4 |
| **CARNEY** 2:16 | 223:19 | **Cesar** 112:3 | 129:18,21 | **classified** 58:5 |
| **CAROLYN** 3:8 | **ccarney@mi...** | **cetera** 19:10 | 158:1 168:14 | 58:7,15 |
| **carolyn.davi...** | 2:17 | **CF** 77:5 | **check** 76:9 | 60:11,12,18 |
| 3:8 | **CCDA** 12:6 | **change** 133:23 | 116:15 | 60:22 62:22 |
| **carrying** 59:21 | **Center** 3:20 | 134:3,12,19 | 215:17 220:9 | 76:21 77:6 |
| 85:3 | **Central** 84:3 | 135:11,14,21 | **chief** 34:8 | **classify** 58:3 |
| **case** 1:5,12 | **certain** 9:5 | 137:20 138:3 | **choice** 148:5 | **clawback** |
| 11:25 132:11 | 31:19 38:2 | 138:24 | **choosing** | 188:8 |
| **cases** 110:17 | 43:8,16 55:7 | 139:20 | 185:21 | **clean** 14:18 |
| **CASEY** 4:12 | 55:9 58:20 | 153:18 159:9 | **CHRISTINE** | **cleanup** |
| **casey.servai...** | 59:22 60:16 | 160:13 169:1 | 3:7 | 146:12 |
| 4:13 | 64:7,9 65:20 | 169:3 170:21 | **christine@c...** | **clear** 24:22 |
| **cash** 9:7,15,24 | 68:3 74:10 | **changed** | 3:7 | 37:2 65:17 |
| 10:9 31:4,8 | 75:14 79:25 | 159:13,15 | **cigarette** | 82:15 97:1 |
| 31:10,14,19 | 85:4 89:4 | 160:23 169:5 | 106:18,20 | 100:19 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

6

101:10 104:8
115:2 118:25
130:1 139:17
141:25
142:19
143:14
151:17,24
152:1 157:25
161:3 167:10
167:12 168:1
210:23
**clearly** 66:12
68:16
**click** 26:8
**client** 41:24
**close** 109:4
221:20
**closer** 83:21
**closing** 161:15
**code** 204:18
**cognizant**
12:12
**Collateral** 5:2
5:3
**colleague**
12:19
**colleagues**
12:5 218:22
218:25
**collect** 95:18
**collected**
61:20 75:23
93:9,12
97:24 98:4
98:15 130:16
133:8 153:12
154:2 211:9
211:20
212:13 214:2
215:3 216:1
216:6 218:15
**Collecteria**
61:3,10,14

72:18 87:1
89:24 92:11
92:17,25
93:4 95:16
97:20 133:4
148:20
153:12 157:9
165:3 178:24
182:3
**collecting**
217:12
**collection** 18:7
46:8 61:6,10
76:3 77:4
88:6,9,11
91:1,11,25
97:19 98:6
98:17 125:4
218:18,19
**collections**
73:8 76:3,8
76:20 87:1
91:7,15,20
92:3,6,11
93:3 95:14
124:19 125:1
125:7 127:23
133:3
**collects** 61:15
81:24
**college** 28:5
**color** 158:2,13
158:14
**column** 213:9
**come** 61:6
64:20 65:2
94:1,5 151:1
**comes** 69:21
118:18
143:23
174:11
**coming** 112:2
140:4 173:14

**comingled**
62:12,15
190:7,9,25
191:1 199:7
199:14
204:14,24
208:7,9
216:14,16
**comingling**
216:17,20
**commencing**
1:23
**commenting**
9:13
**committee** 5:9
27:10
**Commonwe...**
1:7,14 2:3
15:3 17:1,2
17:24 18:7
19:21,22
30:24 37:22
45:25 46:7
49:12,24
53:16,17
54:16,18
55:15,18,22
55:25 57:2
57:10,14,18
58:14 59:5
59:14,19
61:7 64:8,11
64:15 65:1,6
65:13,24
66:12 67:25
68:11,18
70:5,10
73:21,23,24
74:23 75:13
75:24 78:25
79:6,23 82:5
82:12 83:1
85:17 88:16

90:3 91:14
91:18 95:11
95:11 97:22
98:2 110:16
121:15
126:10,12,18
130:16
132:16,19,21
133:3,15
148:15,23
159:19 167:8
174:15
182:23
183:18 199:5
199:8,11
200:6,12,25
201:8,25
202:25
210:11
213:18,18
215:4,14,21
215:23,25
216:10,15,20
218:16,17
223:14
**Commonwe...**
46:12 48:23
63:1,3 65:19
68:2 70:12
70:20,25
77:4 85:12
115:5 121:8
125:7 132:22
156:14
158:17 177:4
181:12
214:14 216:5
217:11,22
**communicate**
7:21
**communicat...**
90:11,12
**communicat...**

18:16,20
19:2
**COMMUNITY**
5:15
**company** 4:15
15:12 20:17
29:23
**compare**
98:16
**compared**
158:22 160:8
171:4
**complete**
222:13
**completed**
14:17
**completely**
220:15
**complicated**
72:20
**component**
115:10
**compound**
35:23
**computer** 7:19
**Computer-A...**
223:23
**concentration**
137:13
207:25
**concept** 55:12
126:14
136:21
138:10
139:15
**concepts** 10:4
152:7
**concern** 86:21
**concerning**
12:25 86:17
95:12 206:25
**conducted**
1:19 12:11

Henderson Legal Services, Inc.

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

7

| | | | | |
|---|---|---|---|---|
| confer 16:6 | contained | 4:7 | 109:20 110:9 | 189:17 190:7 |
| conference | 51:3 54:9,11 | CORPORATI... | 112:24 114:6 | 190:8,11 |
| 7:6 8:3,21 | contains | 2:13 | 114:13 115:1 | 192:23,24 |
| confidential | 117:17 | corporations | 115:5 118:3 | 193:4,6 |
| 1:14 221:12 | context 22:2 | 30:3 | 119:13 | 194:23 195:8 |
| 221:14 | 36:15 37:12 | correct 8:11 | 120:21 | 196:18 |
| confidentiality | 37:13 49:19 | 9:8 15:4,5,10 | 121:10,17 | 202:18 203:9 |
| 221:8 | 50:24 56:7,8 | 15:13,17 | 122:1,12 | 203:20 205:9 |
| confirm | 56:22 63:12 | 22:18 28:7,8 | 124:8,10 | 207:25 |
| 213:24 | 74:22 91:5 | 28:10,11,13 | 126:21 | 209:25 211:4 |
| confirming 9:3 | 139:7,13 | 28:14 29:13 | 129:23,25 | 212:2,5 |
| 18:22 52:9 | 200:24 | 29:14,17,19 | 130:8 132:1 | 214:4,14,20 |
| 145:21 | continue | 29:20,24,25 | 133:1,9 | 214:22,22,24 |
| Conforti 1:23 | 94:23 169:24 | 30:4,5,8,9,20 | 135:21 | 216:2,3,16 |
| 7:24 223:5 | 217:23 218:9 | 30:21 33:10 | 137:10,11 | 216:22,23 |
| 224:16 | continued 3:1 | 33:11 39:12 | 138:4 141:7 | 222:12 |
| confused | 4:1 5:1 222:2 | 39:15 40:10 | 141:10 | 223:24 |
| 187:4 196:1 | contract 41:16 | 40:13,14,17 | 142:10 | corrections |
| confusing | control 13:4 | 40:20,21,23 | 145:24 | 222:14 |
| 134:16,18 | 34:9 78:11 | 40:24 41:11 | 149:11,16,24 | correspond |
| confusion | controls 26:7 | 41:12,14 | 150:2,6,16 | 54:21 79:13 |
| 215:1 | conversation | 46:7 48:6 | 152:12 153:2 | correspondi... |
| congressman | 81:19 | 53:18,19,22 | 153:8,13,14 | 23:18 25:11 |
| 30:16 | conversations | 54:24 55:6 | 153:25 154:6 | corresponds |
| connection | 19:7,8,11 | 55:11,16 | 154:12 | 56:25 |
| 175:19 | 20:4 128:12 | 57:10 58:12 | 155:16 156:1 | counsel 7:14 |
| consider | 128:21 129:5 | 59:5 62:9,24 | 156:6,7,22 | 11:25 12:8 |
| 16:14,17,19 | Conway 26:17 | 64:10,16,22 | 156:25 158:2 | 16:6 18:17 |
| 38:14,21 | 29:18,21 | 64:23 65:2 | 158:20,20 | 18:20,22 |
| 39:4 40:2 | 30:19,24,25 | 73:4,10,11 | 159:6,8 | 19:3,13 |
| 60:7 139:16 | 33:19,24 | 73:17 76:8 | 163:15 164:6 | 21:10 22:10 |
| 140:7 150:23 | 34:1,3 37:17 | 77:17 78:18 | 164:16,21 | 22:13 38:25 |
| 169:23 | 38:12 40:10 | 78:19 82:5 | 165:6,7,13 | 39:16 65:10 |
| consideration | 40:19 41:1,5 | 82:12,22 | 165:18,19 | 65:15 81:4 |
| 127:8 129:12 | 41:9,13,24 | 83:2 89:1 | 168:15,16 | 83:10 128:12 |
| 129:16 | 42:8,11 43:1 | 93:16 100:10 | 171:25 | 128:13,23 |
| considered | 44:10,20 | 101:5 102:3 | 174:16,22,23 | 129:5 131:21 |
| 198:8 | Cook 223:6 | 102:13 | 178:10,11,13 | 143:1 224:4 |
| consists | cooperation | 103:15 104:6 | 179:4,5 | 224:5 |
| 130:21 131:1 | 43:20 | 105:7,15,19 | 181:9,20 | County 223:3 |
| contact 20:18 | core 10:4 | 106:19 | 182:3,25 | 223:6 |
| 20:24 | corner 142:8 | 107:25 | 183:1 188:8 | couple 97:15 |
| contacts 19:23 | CORP 3:2 4:6 | 108:17,18 | 188:13 | 107:1 146:11 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                 April 21, 2020

8

174:8
course 27:3
63:2 86:15
97:5 113:6
162:12
courses 28:21
29:1
coursework
28:13
court 1:1 7:23
14:14,17
66:11,14
67:12,16
68:6,16
167:9 169:11
169:20 206:4
206:5 214:7
219:16
223:11
Court's 65:17
161:2
courtesy 12:15
Courts 1:21
cover 77:18
108:11,14
131:9
CPA 34:15,21
35:14 36:2,6
38:1,19 39:9
40:7 62:23
89:10
created 75:4,9
97:9
creating 50:17
59:4 176:18
176:23 177:1
177:3
CREDITORS
5:9
credits 219:1
CRR 1:23
224:16
crude 17:23

106:14
CSR 1:23
224:16,17
CST 1:24
current 26:16
43:13 95:23
96:19 97:9
215:19
217:11
currently
29:18 40:9
41:9 188:4
215:20 216:5
217:12
CURTIN 4:10
custody 46:11
cut 163:7,13
167:22
187:20
cutting 45:19
102:5
Cynthia 1:23
7:24 223:5
224:16

_____ D _____

daily 69:1
137:24 138:1
181:11 182:6
data 31:9
72:17,19
73:1 91:20
92:12,13,14
92:17 95:15
113:19
114:23 126:6
142:20 144:6
144:15,19
194:13,16,19
194:25
196:13
date 7:7 100:7
185:16

222:19
dates 218:14
DAVID 2:7,21
5:7
DAVIS 3:8
day 1:24 61:16
61:17,21
69:19 70:6
70:10 135:15
154:23
179:11
182:19
183:17
217:18
220:10,14
221:20 223:8
224:11
DC 3:14
de 4:2 28:17
28:18
dealings 18:21
debit 187:17
187:25
debt 5:3,16
31:23 32:5,8
Debtor 1:9,15
DEBTORS
223:15
December
188:6 211:10
decision 68:18
159:14
160:13,20
decisions
161:3
decreased
62:22
deduction
61:24 62:16
134:23
defined 55:21
definition
18:10 48:12

48:16,17,19
48:21 49:1,6
49:9,11,20
49:23,24
50:3,6,19,23
51:9 52:2,5,9
52:14,15
53:2,4,6,7,8
53:10 55:19
60:1 146:20
147:10
definitions
16:24 48:9
48:11 51:3
definitively
97:8
degree 28:10
29:6
Dein 66:22
167:17 168:2
delegated
113:20 114:6
114:24
DENKER 2:17
dep 80:4
department
19:25 20:10
20:19 30:14
101:11
105:20
128:18 140:9
140:11
209:17,23
depend 51:17
205:14,19,20
Depending
33:15
depends 41:25
51:15,18
63:11 91:5
115:6,7
138:13,15,20
139:9 205:10

205:13,19
DEPONENT
222:8
deposed 13:18
deposit 23:18
25:11 60:12
61:1 79:2,5
79:24
deposited
133:14
deposition
1:18 6:4 7:3
9:6,11 10:6,8
12:11 16:1
18:13,15
19:1,15,18
20:5,16 21:2
21:11 25:5
87:6 128:25
144:18 161:5
161:12
167:11
175:19 209:4
221:25 222:1
224:3
depositions
1:22
deposits 18:5
109:2
Deputy 119:20
describe 30:22
210:3
described
195:8 196:18
description
105:23
designate
85:25 86:6
221:11
designated
56:2,16 57:4
57:6,9,12
70:1,7,11,24

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                     April 21, 2020

9

71:10,22
72:6 135:10
135:12
153:24 157:5
177:21
179:14
183:21 212:1
214:19
221:13
**designation**
54:8,10
55:15,17
58:19 61:8
61:11,13,21
62:7,11 64:5
64:6 67:15
68:22 69:5,9
69:15 72:11
85:10,14
87:2 88:23
88:24 95:19
110:19
133:24 134:3
134:13,20
135:20,23
136:4,16,20
156:3 205:9
205:18
214:19 221:7
**designations**
23:16 24:17
25:10 58:22
64:21 67:13
67:18 87:11
171:25
204:25
**detail** 92:12
125:9,12
127:23
190:17 191:2
197:8
**details** 19:10
95:16 124:15

126:5,25
171:22 187:1
190:20 195:4
**determinable**
216:8,9,13
**determination**
154:20
**determine**
56:1,15 57:2
70:19,23
71:1,5,9,12
71:21 72:9
78:3 124:17
124:23,25
125:6,14,24
126:9,22
132:10 133:7
155:17 156:5
163:2,21
164:5 171:19
172:15
182:12
183:19,23
185:2,9,15
186:13
189:14
190:12
191:22 192:5
192:12,14,21
192:25 194:3
197:1 199:12
200:13 201:1
201:8 205:1
206:18
212:11,14,25
213:2 216:21
**determined**
132:24
155:20
174:20
189:20
**determining**
22:3,7,10

56:11 57:14
58:14 72:6
72:14 205:24
**developing**
34:4 60:8
**diagram** 82:7
82:8,11
**dial** 7:14
**diesel** 17:22
106:7 107:6
107:15
108:25
130:14 131:3
131:13
141:14
150:13
**differ** 34:17,22
**difference**
53:12 54:13
74:19 146:24
147:7 168:17
168:21
170:15,17
**differences**
98:18
**different** 53:20
59:6,7,15
73:5 97:15
127:11 128:8
128:10
134:17
159:21,24
181:22,25
182:10,11
192:18 208:5
**differently**
14:25
**differs** 34:19
**difficult** 11:22
12:10 67:9
**difficulties**
12:13
**digits** 129:22

130:3,5
**diligencing**
21:18
**dings** 154:7
**direct** 67:19
68:4 110:22
111:6,15
112:8,17
166:6 203:4
**directed**
131:21
168:25 169:2
219:3
**directing**
23:12 66:2,8
66:16,25
67:1 161:6
167:4,14
169:8
**direction** 20:2
22:1
**directly** 162:13
202:10,16
203:4
**director** 40:10
40:12 42:18
119:20 120:7
120:20,23
121:1,2
**directors**
40:20,23
**directs** 15:22
111:1
**disagree** 66:1
**disagreement**
11:16 66:6
129:6,10
**disappear**
123:20
**disappears**
62:20
**disbursement**
137:16 160:6

160:7,10
197:8
**disburseme...**
193:16
**disclosed**
109:3
**disconnect**
94:1 145:11
**disconnected**
123:4 149:3
**discovery**
68:17 162:12
**discrete** 95:21
148:4 185:20
192:17
**discuss** 143:2
**discussed**
128:15,17
144:3,10
171:13
**discussing**
153:3 206:17
**discussion**
205:23
206:21 219:6
219:20
**discussions**
20:15 21:3
128:13
142:25 144:8
**dispute** 41:17
43:12 44:18
45:3,6 51:3,6
120:25
188:16
**disputing**
51:20 52:4,8
**disruptions**
7:11
**distinguish**
59:11
**District** 1:1,1
1:21 223:11

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

10

223:11
**dlitterinekau...**
    5:7
**dmarcou@...**
    2:22
**dmunkittric...**
    2:7
**document**
    10:24 12:22
    13:1,5 21:14
    21:22,24
    22:5 23:13
    23:14 24:1
    24:15,17,23
    26:2,13 27:2
    27:5,18 44:8
    44:21,23
    48:2 52:16
    76:10 77:21
    78:19 80:9
    80:24 81:1
    81:14,16,20
    82:16 83:18
    83:25 84:22
    98:25 99:3,8
    99:16,16,19
    99:21,23
    100:13,20
    101:6 102:16
    102:23 103:1
    103:18 104:9
    104:10,17
    106:6,8,15
    106:17
    108:10,16
    110:6 113:5
    113:11,14,17
    113:24 114:9
    114:17,19,22
    115:3,16
    116:11,11,18
    117:3,7,9,13
    118:14,19

119:1 120:5
120:10,11,13
120:24
121:11,21
122:6,8
124:2 128:5
129:11
130:20 131:1
131:9 140:14
140:15,23,24
141:11,17,19
142:1,4,5,19
143:15,23,25
144:12 145:2
145:5 146:13
149:12,15
150:7,12,17
151:7,14,16
151:18,19,20
151:25 152:2
152:7,10,14
152:15,21
158:3 166:7
166:15
175:15 188:6
188:9,14,16
197:19
208:25
209:19,22,24
210:2,4,6,24
211:3,6,7,13
211:16,19,22
212:3,6,12
212:15 213:1
213:3,12,19
214:10
215:15
218:13
**document's**
    142:21
**documented**
    144:12
    217:16 218:9

**documents**
    9:5,14 10:2
    12:23,23
    16:15 21:16
    22:2,4,10,13
    22:19 23:17
    24:12,20
    25:1,5,9,10
    25:18 45:13
    45:16 69:4
    78:11 81:9
    81:11 82:19
    114:22
    115:23 116:4
    118:9 121:13
    121:13,22
    124:8,13
    125:5,13
    126:8 128:1
    129:24
    144:18
    158:13
    161:14
    162:11,14
    194:2,22
    195:6 196:16
    196:25
    197:13,14
    206:18
    209:19
**doing** 14:2
    30:23 33:5
    33:17,22
    34:6 58:24
    71:14 84:4
    107:25
**dollars** 60:23
    74:25 79:14
    135:5 185:5
    189:15 192:1
    197:20
    204:20
    214:16

**dot** 23:17,17
    23:18
**double-check**
    221:4
**download**
    125:2 146:16
    162:16
**downloadable**
    143:15
**downloading**
    89:24
**draft** 24:10
    82:18 124:12
    128:14
**drafted** 124:8
    127:17
**drafter** 149:15
**drafting** 26:19
    26:21 27:21
    31:15,19
    128:2 129:1
**drafts** 9:22
    128:8,10
**Drive** 3:20
**drop** 219:23
**dropped** 37:24
    206:6 212:21
**due** 12:9
**duly** 13:9
    223:17
**duplicate**
    130:3,5
**DV** 120:15

――――― E ―――――

**E** 2:1,1 3:1,1
    4:1,1 5:1,1
    94:17,17
**earlier** 84:6
    150:21
**early** 178:7
**earned** 71:13
    71:17 72:1,2

72:10,15
74:15 93:11
93:15 95:20
97:18,19,23
98:3,14,17
153:10 154:2
155:4,11
165:2,15
185:19
**earning** 59:12
**Eastern** 83:22
**eats** 84:8
**effectuate**
    112:21
**efforts** 24:25
    25:8
**Eighth** 2:5
**either** 19:17
    74:5 76:2
    175:16
**elected** 17:24
**electronic**
    119:14
**Eleven** 2:5
**Elizabeth** 3:17
    16:2
**ELLIOT** 2:9
**eludes** 20:20
**embodied**
    10:4
**emckeen@o...**
    3:18
**employed**
    30:10,14
**employees**
    19:7,12,16
    20:3,14
**employment**
    26:17
**enabling** 52:19
**ends** 170:19
**engage** 97:22
**engagement**

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

11

| | | | | |
|---|---|---|---|---|
| 31:2 33:19 | 172:23 208:8 | 85:18 141:2 | 172:16 | 6:16,17,18 |
| 42:14 43:1 | **equivalent** | 181:3 204:20 | 173:19 | 6:19,20,21 |
| **English** 99:4,4 | 190:22 | **exactly** 34:16 | 174:17 | 6:22,23 |
| 99:10 103:6 | **Ernst** 99:25 | 202:6 | 179:22 180:5 | 12:19 13:1 |
| 103:21 | 100:10,16 | **Examination** | 180:18 | 23:2,3 25:21 |
| 104:14,15,16 | 101:16,17 | 6:3 13:11 | 182:13,15,25 | 25:22 26:1 |
| 116:13 | 102:12 109:3 | **examined** 13:9 | 183:25 185:4 | 27:14,15 |
| 162:13 | **Errata** 222:14 | 222:11 | 185:10,23 | 44:3,4 46:25 |
| **enter** 61:9 | **especially** | **example** 14:3 | 186:14 | 47:1,4,5,9,25 |
| **entered** 98:10 | 170:2 | 32:25 93:15 | 189:14,21 | 55:20 76:13 |
| 141:24 | **ESQ** 2:7,8,9,16 | 108:25 149:5 | 190:13 | 76:14 77:15 |
| **Enterprise** | 2:17,18,19 | 150:20 179:4 | 191:23,25 | 79:10 80:5 |
| 35:21 36:1,8 | 2:20,21,22 | **Excel** 213:6 | 192:14,22 | 80:12 81:3,7 |
| 36:10,17 | 2:23,24 3:6,7 | **exception** 27:9 | 193:2 194:6 | 81:10,12 |
| 37:12,15,19 | 3:8,9,15,16 | **exchanged** 8:8 | 197:2 202:2 | 82:4,20 83:5 |
| 37:22 38:3 | 3:17,18,19 | **excise** 17:21 | 204:6,16,22 | 98:20,21 |
| **entire** 12:12 | 4:4,10,11,12 | 17:23 58:11 | 205:25 | 99:6 108:6,7 |
| 133:10 136:2 | 4:13,19,21 | 60:17 61:5 | 206:19 207:2 | 111:22,23 |
| 151:19 | 5:7,13,19 | 61:16 65:1,3 | 207:15,19 | 113:1 115:12 |
| 154:25 | **established** | 65:7,14 | 208:4 211:20 | 115:18,19 |
| **entirety** | 52:18 74:5 | 68:12,23 | 211:25 214:1 | 119:25 120:1 |
| 154:21 | 119:7 204:2 | 69:24 76:6 | 215:3,20 | 121:5,22 |
| 182:17,21 | **estevens@p...** | 78:4,14,21 | 216:1,4,21 | 122:16,17 |
| **entities** 14:22 | 2:10 | 88:12 91:8 | 217:12,21,21 | 124:1 130:11 |
| 14:24 19:8 | **estimate** 21:6 | 91:15,17,19 | **excluded** | 130:11 |
| 22:16 24:18 | **estimation** | 91:20,25 | 131:20 | 131:25 |
| 30:11,19 | 41:2 | 92:6 93:8,15 | **excludes** | 139:24 140:1 |
| 31:13 35:1 | **Estudios** | 121:23 | 130:13,20 | 140:13 |
| 41:1 84:21 | 28:17 | 124:18,25 | 131:3 | 144:16 |
| 177:22 | **et** 1:14 19:10 | 125:14 126:9 | **Excluding** | 146:14 |
| **entitled** 152:10 | 223:15 | 130:15 | 18:21 | 148:13 149:2 |
| **entity** 19:20 | **everybody** | 133:14 137:8 | **exclusion** | 150:1 152:21 |
| 30:15 209:10 | 8:12 11:21 | 139:19 | 130:24,25 | 156:12 162:5 |
| **entries** 21:5 | 11:21 46:22 | 147:15,21 | 131:12,19 | 162:6,18 |
| 62:24 88:16 | 94:13 147:2 | 148:8 153:7 | **Excuse** 95:1 | 165:22 166:3 |
| 98:9 129:13 | 176:20 | 154:6,10,19 | **executive** | 166:5 168:9 |
| 143:5 | 221:22 | 155:7,18 | 119:19,20 | 168:10,11 |
| **entry** 62:21 | **everyone's** | 156:13 157:5 | 120:19,23 | 173:10,11 |
| 88:19 113:19 | 13:2 145:4 | 157:7,15 | 121:1,2 | 174:4,5,6 |
| 114:23 | **evidence** 62:3 | 163:2,21 | **exercise** 57:17 | 175:5,6 |
| 133:22 | 62:18 | 164:6,12,20 | **exhibit** 6:6,7,8 | 176:16 177:7 |
| 134:11,23,25 | **ex-tax** 130:15 | 165:6,13,17 | 6:9,10,11,12 | 180:15 181:6 |
| 141:20 | **exact** 50:10,17 | 171:20 | 6:13,14,15 | 187:6,7,10 |

Henderson Legal Services, Inc.

Ahlberg, Timothy H. - Vol. I                          April 21, 2020

12

| | | | | |
|---|---|---|---|---|
| 189:9 208:17 208:19,23 | F-U-N-D-S 35:8 53:21 | fees 107:7 109:1 | firm 11:24 100:2 | 128:15,16,21 129:1,7,8,14 |
| exhibits 6:4,25 12:18 107:2 174:9 175:2 176:3 | fact 11:1 67:11 152:9 172:16 182:13 188:18 191:9 | fiduciary 35:21 36:4 46:12 198:10 198:20 | first 12:3,7 23:13 48:12 67:6 89:12 90:1 97:25 99:6,15 | 129:20,24 132:5 135:8 158:1,12 159:9,12,15 159:16,24 |
| exist 86:5 191:6,11,13 | fair 9:20 22:9 29:15 71:4 74:3 75:22 | field 72:25 Fifth 3:4 figure 43:9 | 104:3 115:24 116:2,6 | 160:9,14,23 166:19 168:13,14,18 |
| existed 125:12 existing 61:2 119:8 | 76:1 82:3 100:15 | 63:23 66:22 figures 107:1 | 117:17 131:8 131:15 141:8 152:9,13 | 168:18 169:1 169:3,4 170:8,8,15 |
| exists 55:15 191:14 | 108:23 110:1 118:9 136:4 136:16 | file 181:16 finance 3:2 27:10 119:21 | 158:11 159:25 181:24 | 170:15,18,21 171:3,14 178:3 180:5 |
| expect 218:8 expeditiously 12:16 | 206:23 212:7 215:2 | 120:8,20 financial 1:4 1:11 2:2 3:11 | 216:17 223:17 | 180:8,18 181:6 183:2 |
| expended 138:24 | familiar 21:17 24:25 25:4 34:11,13,23 | 4:15 17:7,12 30:1 34:8,9 38:9 57:25 | fiscal 3:11 17:7 34:5,7 84:20 108:12 | 202:17 206:2 206:15 217:15 218:8 |
| expenses 183:17 experience 26:25 27:8 28:2 | 34:25 35:6,9 35:11,16,18 38:7 54:4,6 57:20,21 | 59:20 85:2 88:3 108:24 110:4 113:21 177:1,4 | 127:14 141:5 141:9 210:7 fit 60:23 | 218:10 flowing 159:17 202:2,10 fluent 16:14 |
| experienced 29:22 | 79:3 110:18 110:20 | 223:12 financials | fix 47:23 174:8 fixed 175:1 | focus 12:4 30:6 31:3 |
| explain 66:18 expressed 44:19 214:17 | 140:13,15 150:24 151:2 201:22 | 108:12 Financing 15:16 | flag 10:21 flip 144:24 180:7 | 92:22 131:22 focused 131:14 |
| expressly 169:20 | far 11:2,14 220:5 | find 116:12 179:24 | Floor 3:21 flow 18:3,10 | folks 84:3 128:18 |
| extent 23:25 65:22 67:23 167:6 169:18 | FAS 41:10 Fe 28:18 features 170:8 | fine 67:25 84:12 123:17 201:15 220:8 | 21:15,19 31:8,10,14 31:20 33:1,5 | follow 62:3 186:16,19,21 followed |
| extract 87:2 92:16,17,21 | federal 1:20 74:2 86:6 185:24 198:9 | 220:21 fines 106:16 finish 14:15 | 33:9 36:15 37:1,14,16 48:5,7 56:8 | 113:18 following 104:3 119:7 |
| extracting 92:12,14 EY 100:6 110:5 | 198:15 199:4 199:6,12,16 199:18,19 | 147:1 195:17 196:6 finished 27:6 | 60:8 75:21 75:22 77:17 82:18,24 | 162:14 173:15 187:14 |
| Eye 3:13 | 200:16,19,24 fee 41:18 42:7 106:9 | 167:25 169:16 FINK 3:15 | 83:21 124:7 126:4,17 127:18 128:3 | follows 13:10 99:5 113:9 |
| F | feed 123:14 | | 128:7,9,14 | |
| F 35:7 94:17 F-O-M-B 17:11 | | | | |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

13

| | | | | |
|---|---|---|---|---|
| **FOMB** 17:10 | **found** 23:16 | 64:14,14,21 | 129:13,18 | 173:20,24,24 |
| **Fondo** 83:15 | 24:17 25:10 | 64:24 65:14 | 133:13,17,22 | 179:15 |
| **footnote** | **four** 42:21 | 68:13 69:5,9 | 134:3,11,12 | 182:14 |
| 130:11,22,23 | 99:6,15 | 69:15 70:2,7 | 134:20,20,23 | 183:17,21 |
| 131:2,8,18 | 129:22 130:3 | 70:12,18,20 | 135:1,8,13 | 185:13,17,17 |
| **foregoing** | 130:5 | 70:25 71:6,7 | 135:15,18,20 | 186:7 199:22 |
| 222:12 | **four-digit** | 71:11,13,22 | 135:23 136:4 | 200:2,2 |
| 223:23 224:3 | 130:7 | 72:2,2,7,10 | 136:9,16,20 | 201:4,10 |
| **form** 23:24 | **four-page** 99:2 | 72:15 73:2,3 | 137:20 138:8 | 202:14,25 |
| 25:12 31:16 | **fourth** 23:13 | 73:3,4,5,5,6 | 138:11,17,21 | 203:1 204:18 |
| 35:22 38:17 | 23:22 | 73:6,9,9,14 | 138:24 139:6 | 204:25 205:8 |
| 41:19 42:15 | **free** 75:16 | 73:15 74:15 | 139:7,9,10 | 205:18,20 |
| 48:2 49:2,14 | **FRIEDMAN** | 74:16,20,20 | 139:12,21 | 206:20 210:7 |
| 51:23 52:7 | 3:16 | 74:24 76:2 | 140:25 141:1 | 210:15,18,25 |
| 53:24 54:25 | **front** 22:23 | 76:21 77:6 | 141:5,9,20 | 211:9 212:1 |
| 59:24 60:24 | 201:19 | 77:24 78:5 | 142:14,18,22 | 214:2,14,16 |
| 62:1 63:5,10 | 218:14 | 78:22 85:10 | 143:7 144:4 | 214:16,19,20 |
| 63:16 71:23 | **frozen** 145:4 | 85:24,24 | 144:8,11,16 | 215:7 |
| 74:7 75:7 | 145:10,16 | 86:5,7,17,21 | 146:19,22,23 | **Fund-type** |
| 76:23 77:8 | **full** 69:1 | 87:2,10,17 | 147:5,8,10 | 88:23 |
| 82:13 83:23 | **fund** 18:6 30:7 | 88:21,24,24 | 147:13 | **funding** 29:1 |
| 86:23 87:13 | 36:8 37:12 | 89:3,7,22 | 148:16,20,25 | **funds** 18:4,10 |
| 89:9 92:8 | 37:19,22 | 90:4,13,15 | 149:7 150:11 | 21:16,19 |
| 93:2 95:25 | 38:3 50:4,20 | 92:10 94:25 | 151:20 152:2 | 35:7,12,17 |
| 100:11 | 51:4 53:5,13 | 95:12,15,18 | 152:8,11,15 | 35:21,21 |
| 101:19 103:3 | 54:4,7,8,10 | 95:18,20,24 | 153:7,9,11 | 36:1,1,4,4,10 |
| 104:24 105:9 | 54:14 55:8 | 96:19 97:10 | 153:17,21,25 | 36:17 37:15 |
| 116:20,22 | 55:11,13,16 | 97:17,24 | 154:3,12,15 | 46:13 49:7 |
| 117:5 122:2 | 55:18,21,22 | 98:4,15 | 154:25 155:5 | 49:11,24 |
| 133:16 134:4 | 56:2,12,14 | 103:1,14 | 155:12,21,25 | 51:11,18,21 |
| 134:24 | 56:17 57:4 | 104:9,23 | 156:5,14,15 | 52:16,17 |
| 158:25 179:7 | 57:10,12,19 | 105:1,15 | 156:21,22,24 | 53:18,20 |
| 180:6 185:25 | 57:20,21,22 | 109:2,5,5,8 | 156:25 157:1 | 54:11,20,23 |
| 188:22 | 57:23,23 | 109:13,18,18 | 157:5,8,16 | 55:4,7,9 56:8 |
| 198:12 | 58:2,5,6,7,15 | 110:2,7,23 | 161:11 163:4 | 56:25 57:7 |
| 199:24 204:9 | 58:19,22 | 111:7,16 | 163:23 164:4 | 57:11,12 |
| 207:16 210:5 | 59:9,10 | 112:9,18 | 164:9,15,17 | 58:8,17 59:4 |
| **formal** 29:15 | 60:11,18,22 | 118:18,19 | 164:19 165:5 | 59:6,7,14,19 |
| **formula** 73:2 | 60:25 61:13 | 121:16,18 | 165:9,11,16 | 60:4 61:20 |
| **forth** 48:17 | 61:21,25 | 122:11 | 165:20 | 62:8,12,15 |
| 113:17 129:8 | 62:7,17 63:1 | 127:17,18,21 | 168:14 | 62:22 63:3,7 |
| **forward** 58:1 | 63:15,15,24 | 127:25 128:2 | 171:25 172:9 | 63:9 72:25 |
| 67:10 | 64:2,5,6,13 | 128:5,8 | 172:24 173:5 | 73:19 74:1,1 |

Henderson Legal Services, Inc.

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

14

| | | | | |
|---|---|---|---|---|
| 74:2,2,4,24 | 188:12,17,19 | 131:3,13 | 73:22 74:2 | 223:19,25 |
| 75:3,5,6,9 | 192:10 198:9 | 141:13 | 74:16,20,24 | **gives** 105:23 |
| 77:25 78:18 | 198:9,10,15 | **GASB** 34:23 | 74:24 76:2 | **glass** 26:8 |
| 82:19,24 | 198:20,21 | 35:4,13 89:8 | 76:21 77:6 | **gmainland@...** |
| 84:19 85:2 | 199:4,6,12 | **gasoline** 17:22 | 77:24 78:5 | 2:21 |
| 85:25 86:6 | 199:16,18,19 | 106:5 107:6 | 78:22 79:12 | **go** 16:23 36:22 |
| 86:20 89:16 | 199:22 200:7 | 107:8,15 | 86:7 124:14 | 45:14,21 |
| 89:17 104:5 | 200:14,16,20 | 108:25 | 139:8 156:14 | 47:14 57:14 |
| 107:5 110:15 | 200:21,24 | 118:11 | 156:21,24 | 58:14 66:11 |
| 111:6 124:7 | 201:1,9 | 150:13 | 157:2 158:10 | 66:22 67:5 |
| 126:4,17 | 204:19 205:5 | **GASPARD** 3:9 | 171:16 | 71:14,20 |
| 127:15 128:3 | 205:8 206:2 | **gaspard.rap...** | 214:14,15,20 | 72:5,14 |
| 128:9,14,15 | 206:16 208:7 | 3:9 | **generally** | 92:23 94:5 |
| 128:16,21 | 208:9 216:14 | **GDB** 5:3,16 | 16:22 18:12 | 102:8 118:3 |
| 129:2,7,8,14 | 217:15 218:8 | 134:22 | 18:14,25 | 120:4 121:4 |
| 129:21,24 | 218:10 | 137:10 | 19:6 21:7 | 128:8,9 |
| 132:5 133:21 | **further** 121:13 | 139:20 153:1 | 25:3 30:22 | 132:18 134:5 |
| 134:1,10 | 177:18 193:1 | 153:6,16,23 | 30:25 33:21 | 146:1,11,12 |
| 135:5,10,14 | 194:5 205:25 | 154:18 155:8 | 34:16,25 | 152:20,22 |
| 139:3 153:20 | 206:19 215:2 | 155:15,18 | 35:9,18 | 157:22 |
| 153:22 | 219:10 | 156:9 158:23 | 51:20 54:17 | 160:17 168:2 |
| 154:15 | 223:16 224:2 | 158:23 160:5 | 74:4 75:4 | 168:8,11 |
| 155:21 | 224:5 | 161:11 | 109:1,4 | 169:14,17 |
| 156:19,19 | | 189:25 190:6 | 110:8,10 | 174:25 175:4 |
| 157:2,16 | —— 🄖 —— | 190:9,14,14 | 164:14 | 175:24 176:4 |
| 158:1,13 | **G-A-A-F-R** | 190:25 191:1 | 205:12 | 176:16,20 |
| 159:13,15,16 | 38:14 | 192:22 193:1 | **generated** | 177:18 |
| 160:3,9,14 | **G-A-A-P** 38:21 | 193:2 | 97:4 110:5 | 180:14 |
| 160:23 162:1 | 39:4,12,15 | **general** 9:22 | **generates** | 181:25 |
| 165:2 166:19 | 39:23 40:2 | 9:23 12:4 | 71:15,16 | 184:25 189:6 |
| 168:14,14,18 | **G-A-S-B** 34:24 | 33:24 36:9 | **getting** 11:22 | 189:8,24 |
| 168:18,22 | **GAAFR** 38:7,8 | 36:12 53:5 | 47:4,8 89:22 | 195:15,20 |
| 169:1,3,5 | 38:14 | 54:4,6,8,10 | **give** 27:24 | 196:8 205:22 |
| 170:18,22 | **GAAP** 38:21 | 55:11,12,16 | 77:22 78:24 | 211:3 220:4 |
| 171:3,14 | 39:4,12,15 | 55:17,21 | 83:17 99:18 | 220:12,18 |
| 178:3 179:14 | 39:23 40:2 | 56:2,11,14 | 113:4 116:9 | **goes** 168:14 |
| 179:15,17,21 | **Gandiaga** | 56:17 57:4,7 | 144:24 189:7 | 211:3 |
| 180:5,8,18 | 112:4 | 57:10,12,12 | 212:9 218:20 | **going** 11:17 |
| 181:6,11 | **GARAU** 4:4 | 63:1 64:14 | **given** 13:20 | 14:7,23 |
| 183:4,7,11 | **garbled** 38:25 | 70:12,20,25 | 61:7 130:25 | 16:23 44:7 |
| 183:14,14 | 170:12 | 71:6,7,11,13 | 191:19 | 44:11 58:1 |
| 185:23,24,24 | 203:12 | 71:18 73:4,6 | 197:20 | 65:18 67:19 |
| 186:1,8 | **gas** 130:14 | 73:8,15,20 | 222:13 | 68:14 75:14 |

CONFIDENTIAL

Case: 1:17-cv-08283-LTS   Doc #: 133-35   Filed: 05/08/20   Entered: 05/08/20 13:36:49   Desc:
Exhibit AE - Part 2   Page 74 of 99

Ahlberg, Timothy H. - Vol. I                                April 21, 2020

77:16 84:5
85:20 93:25
103:16
104:13
106:21
122:25 145:5
145:22 146:3
146:5 160:11
160:15
165:23 166:4
167:2 169:22
174:7 175:24
176:3,7
177:7 178:3
192:19
206:14
217:22 218:3
218:25 219:2
**Gomez** 20:1
**Gonzalez** 20:7
**GONZÁLEZ**
4:4
**good** 11:20
13:13,16
94:22 123:21
**Gotshal** 3:3
5:22,24
**governing**
80:11
**government**
28:25 29:1
34:17 35:7
38:15,22
39:6 40:4
53:14 115:9
146:22 147:8
**governmental**
30:7,7,15
34:12 35:12
38:8 41:1
53:11
**grab** 107:11
**graduate** 29:5

**GRANT** 2:20
**gray** 158:16
**great** 10:16
84:10 93:21
99:1 167:23
220:19,23
**greater** 41:3,7
**grounds**
177:19
**group** 187:17
187:25
220:17
**grouping**
12:24
**groups** 69:22
**GUARANTEE**
3:2
**GUARANTY**
4:6,7,15
**guess** 11:5
47:13 66:17
77:20 94:1
146:19
204:24
**Gustavo** 20:20
**guys** 47:11
123:11 145:1
158:4 184:9
184:14

--- H ---

**H** 1:18 6:2 7:4
13:8 223:9
**Hacienda**
180:2
**half** 46:14
83:23 220:3
220:13
**halfway**
116:18
**Hall** 4:13 12:19
47:3,8
219:21

**hand** 8:4,22
224:10
**hands** 10:11
**handy** 106:22
106:23
**hang** 94:4,8
218:3 221:6
**happened**
216:17
**happy** 93:19
99:5 137:6
167:18 168:4
169:10 220:4
**hard** 126:13
220:1,3
**HASTINGS**
5:10
**Hato** 5:18
**head** 20:12
43:6 95:13
110:12 128:5
**header** 101:25
120:13,14
150:12
152:17
**heading**
101:23
107:19
144:22 149:5
**heading's**
149:20
**headings**
149:8,9,10
149:24,25
**hear** 10:14
15:18 97:25
123:11 124:4
145:9 176:6
184:9,14
**heard** 7:15
39:24 162:17
163:11 172:2
184:11

**hearing** 39:13
**Hector** 20:1
142:9
**held** 46:11
156:13
198:21
214:13
215:20
**Hello** 184:4
**help** 10:22
26:11 192:6
192:13 194:5
213:10
**helped** 21:14
21:21
**helpful** 107:7
**Helping** 21:24
**helps** 11:2
**Henceforth**
150:2
**Henderson** 7:6
8:20 184:22
**heretofore**
223:7
**hereunto**
224:9
**HERRINGTON**
5:4
**Hi** 123:9 206:3
219:21
**hide** 94:5,8
**higher** 42:18
**Highway**
120:12 149:6
152:10
188:18,19,24
**Highway's**
188:12
**Highways** 15:7
17:16
**hinted** 206:15
**Hira** 5:22
**historical**

**88:15,22**
111:19
112:21
**hold** 78:9
122:25
123:12
172:12
**holding**
156:19
215:23
**honestly**
138:13
**hope** 11:21
12:11
**hopefully**
80:22 176:2
**host** 7:6
**hour** 1:24
43:14 44:16
83:24 220:3
220:13
**hourly** 43:4,21
**hours** 21:7
**HTA** 12:4 15:9
17:15,20
20:3,6,8,10
23:17 33:18
33:22 34:5,7
37:19,22
38:5,6 58:9
58:11 60:17
65:7,13
68:12 69:24
76:6 78:4,14
78:21 79:1
80:11 81:24
86:11 87:22
88:12 90:6,9
90:11,15
93:15 99:25
100:2,3,6,17
102:20
103:14 104:5

Ahlberg, Timothy H. - Vol. I                                April 21, 2020

16

| | | | | |
|---|---|---|---|---|
| 104:17 | 216:4 217:21 | **image** 175:10 | 132:15 | 85:3 88:3,17 |
| 105:19,20 | 217:24 | **immediately** | 133:23 | 89:24 92:19 |
| 108:12 | **HTA's** 109:6 | 12:20 168:19 | 134:12 157:2 | 92:21,25 |
| 110:22 111:5 | 109:13,19 | 170:9,16 | **indicated** | 97:16 100:9 |
| 111:10,15,19 | 110:3 132:8 | **imposes** 81:24 | 61:24 165:11 | 100:25 |
| 112:7,16 | 158:19 | **in-person** 19:9 | **indicates** | 102:12 |
| 114:12,25 | 165:17 177:1 | **include** 17:21 | 52:16 165:8 | 115:14 |
| 115:4,8,13 | **HTA-STA** | 17:22 35:20 | **indicating** | 127:16,20 |
| 118:12 | 151:9 | 36:1,4 46:10 | 87:17 | 128:1 129:17 |
| 119:21 120:8 | **HTA-STA00...** | 58:10 88:23 | **indication** | 135:19 164:1 |
| 120:9,14,20 | 117:6 | 89:23 106:5 | 191:3,5,9 | 164:10 |
| 120:23 121:2 | **Hudson** 2:15 | 127:22 | **indiscernible** | 186:22,24 |
| 121:16 | **HUGHES** 2:18 | 141:13 | 24:1 36:20 | 191:13,14 |
| 122:12 | **hundreds** | 171:24 | 38:23 44:12 | 192:6,12 |
| 126:11,19 | 144:17 | 172:22 | 44:13 88:7 | 194:4,7,25 |
| 128:16,17,21 | 161:13 | 179:14,17 | 102:2 104:5 | 205:4 211:13 |
| 128:22 | **hypothetical** | **included** 19:6 | 120:7 121:24 | **informed** |
| 130:13 132:4 | 216:25 217:6 | 72:25 78:14 | 121:25 | 128:6 |
| 132:7 134:2 | | 182:20 | 146:24 | **Infrastructure** |
| 140:18,18,20 | ⌐⌐⌐⌐ J ⌐⌐⌐⌐ | 183:25 185:3 | 150:14 154:6 | 15:15 |
| 142:6 147:16 | **i.e** 186:25 | 189:14 197:2 | 166:3,4,4,13 | **input** 92:1 |
| 147:18,21,24 | **ID** 105:20 | **includes** 52:17 | 170:3,9 | **inquiries** |
| 148:8 149:16 | **idea** 99:24 | 178:12 | 183:10 186:7 | 25:17 195:17 |
| 157:5,15 | **identifiable** | 210:13 | 186:25 | **inquiry** 161:4 |
| 160:4,6 | 126:15 | 211:13 | 187:18 | 196:2 |
| 165:13 | 192:18 | **including** | 190:15 203:6 | **instance** 51:9 |
| 168:23 | **identified** | 17:24 18:5 | 203:9 212:16 | 55:10 58:11 |
| 171:20 | 127:24 | 54:18 60:17 | 217:25 218:2 | 64:25 91:8 |
| 174:18 | 129:21 | 91:7 92:6 | **indistinguis...** | 126:24 199:4 |
| 176:23 180:5 | 199:19 | 129:4 | 185:6 189:16 | 202:9 |
| 180:8,18 | **identifier** | **Incremento** | 192:1,4,10 | **Instituto** 28:17 |
| 182:13,25 | 179:18 | 180:2 | **individual** 55:8 | **instruct** 68:15 |
| 186:14 197:2 | **identifies** | **increments** | 112:3 118:22 | 75:14 85:20 |
| 202:3,10,15 | 120:19 | 64:7 | 119:17,23 | **instruction** |
| 202:17,22,24 | **identify** 26:1 | **independent** | 209:8 | 85:18 |
| 203:6,17 | 109:9 190:23 | 45:2,5 | **industries** | **instructions** |
| 204:6,7,15 | 190:24 194:5 | **independently** | 30:3 | 14:7 113:18 |
| 204:16 207:2 | 204:19 | 12:22 143:24 | **inform** 124:16 | **instrumenta...** |
| 207:15 | **identifying** | 144:1 | 190:17 | 41:6 |
| 209:13 | 155:12 | **INDEX** 6:1 | **information** | **instrumenta...** |
| 210:11 | **II** 1:16 | **indicate** 62:21 | 22:7 33:13 | 115:10 |
| 211:25 | **III** 1:4,11 | 104:22 | 41:21 45:10 | **INSURANCE** |
| 215:13 216:1 | **Illinois** 223:1,7 | 126:18 | 57:25 59:20 | 4:15 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

17

integrity
  135:18
intelligence
  194:18
  196:12
intend 22:20
intended 49:4
  52:13
intent 142:21
  149:20
intents 58:21
interaction
  90:5,8,15
interested
  224:7
interface 92:3
  92:20
internally
  10:21
International
  2:10
interned 30:16
interrupt 36:12
  83:21 132:17
interrupting
  67:4
introduced 6:5
  23:4 25:23
  27:16 44:5
  47:2 76:15
  80:6 98:22
  108:8 111:24
  115:20 120:2
  122:18 140:2
  162:7 173:12
  187:8 208:20
invoice 117:24
involve 98:5
involved 22:3
  26:19,21
  27:21 31:14
  31:18,23
  32:10,15,24

33:2,5,12,16
34:4 41:1,5
42:6 50:9,14
50:17 81:6,8
129:7 176:17
176:22,25
177:3
involves 81:16
irrelevant 56:9
irrespective
  185:14 201:6
  203:7,18
issue 10:5
  11:19 16:7
  47:11 92:5
  145:1 159:11
  168:3 171:9
  219:8
issues 9:8,21
  9:23 10:7
  11:16
It'll 84:5
item 144:20
iterating
  129:11
IVÁN 4:4

            J
J 1:23 4:10
  223:5 224:16
Jaclyn 4:13
  12:19 44:11
  47:4 116:22
  118:5 123:7
  146:15
  162:15,20
  165:21 175:9
  176:2 187:4
  219:21
jaclyn.hall@...
  4:14
January 40:13
  132:1 133:12

135:9 136:3
136:15
152:25 157:4
157:19 160:2
160:24
180:21
JASON 4:19
jason.callen...
  4:20
Jehra 19:23
  20:2
JOHN 2:18
  4:12
join 184:7
joinder 80:16
Jointly 1:7
JOSEPH 3:19
jot 107:1,14
jroth@omm....
  3:20
Juan 4:3
judge 167:17
  219:8
Juge 66:22
  168:2
jughes2@mi...
  2:19
July 181:7,16
  181:23 183:3
  189:12
  193:12 194:3
  195:12,22
  196:21,23
  197:17
  205:24
  206:14
  211:23,24
  212:9,16
  213:3 218:12
June 170:6,18
  172:18 173:6
  173:17
  174:14 186:6

            K
K 223:3
Karen 184:21
keep 7:11
  63:21 169:19
  169:25
KEVIN 2:19,24
kind 37:16
  58:4 127:7
  127:14
  186:23
  193:21
  200:10
  215:23
kindly 204:11
kinds 24:19
  25:1 34:18
  126:1 127:5
  186:1
kmaggio@m...
  2:20
know 14:9
  16:4 21:4,6
  24:9,12
  34:21 36:2,5
  37:18,21
  38:2,18 39:8
  40:6 41:15
  43:19,24
  46:17 49:3
  50:2,11,12
  50:24 52:11
  52:13 53:14
  56:7 57:1
  58:21 59:2,3
  59:6 60:6
  62:7 67:18
  68:24 69:14
  69:17 70:13
  71:4 74:10
  79:22 81:2,9
  81:11,13,15
  81:18 84:15

88:18 89:6
89:15,18
90:14,15
96:7,9,12,14
96:17 97:2,7
99:3 108:2
109:5 110:5
111:4,4,18
112:3,6,14
116:3,13
119:15,17
123:5 129:9
138:8 143:18
143:20,22
144:10,14
147:14
151:15 153:6
153:17,24
154:1,4,9,17
154:24 155:3
155:7,10
160:18,19
162:10
164:11
168:25 169:2
169:4 170:21
175:11 181:1
186:17 189:2
189:4 192:3
192:9 194:24
198:25
201:14,15,17
201:19 204:5
204:14 209:7
209:10
215:14,19,22
217:5,8,10
218:5 219:4
220:1
knowledge
  26:23 45:2,5
  101:12,15
  111:4 171:3

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

18

171:13,16
177:24
190:18
**known** 15:8,16
79:23
**kwesterman...**
2:25

---

**L**

**L** 3:17,19
**labeled** 161:24
**LANGLEY**
4:21
**language**
23:20 24:1
52:20,21
81:21 82:1,2
83:13 84:18
85:7 120:15
**law** 11:24 74:5
119:7
**laws** 81:16
**lawyer** 188:23
**lawyers** 219:7
**ledger** 89:20
**ledgers** 89:2,5
89:6
**left** 94:24
141:20 149:3
153:1 178:19
**legal** 7:6 29:16
**legislation**
52:19 74:6
**Leon** 4:2
**let's** 12:13
14:6 23:2
25:20 27:13
44:1 46:24
47:14,14,14
48:8 75:20
76:12,13
80:3,8 83:3,4
83:6,7 98:19

104:12 108:5
108:19
111:21,22
115:17
119:24 120:4
121:4 122:15
131:24 135:4
139:23,24
152:20,21,22
157:22 162:4
162:19 168:8
168:11 170:5
173:9 175:7
175:13 176:2
176:4 180:14
181:5 187:2
187:3 189:6
189:8,23
196:6 208:17
220:19
**letter** 24:10
83:9 100:7
100:23,24
101:13,24
102:1,2,11
102:11 104:4
113:3 117:2
117:4 118:2
**level** 198:17
**lgarau@mp...**
4:5
**liabilities**
147:7
**Liberty** 4:9
**license** 106:9
107:6 109:1
130:15
141:14
224:17
**licenses** 17:25
29:9 107:16
**lift-stay** 80:12
**light** 175:14

**limitation** 85:6
**limitations**
59:23
**limited** 194:25
**line** 23:13,22
78:14 79:13
85:23 86:4
143:3 144:20
184:6 195:17
196:2
**LinkedIn** 27:19
**links** 44:13
220:25
**liquidity** 31:3,5
31:7 73:25
140:10
**list** 100:16
104:5 118:19
150:5,7
164:19
**listed** 35:1
105:22 106:2
106:20 107:1
107:5 108:24
114:4 163:23
164:17
166:11
**listing** 44:13
108:22
**listings** 103:13
**LITTERINE-...**
5:7
**little** 75:20
93:17 170:11
203:11
**LiveLitigation**
7:18
**Liz** 11:8 36:21
37:5 66:15
93:18 95:4
103:23
122:19,21
123:1,3,9

158:6,7
163:16 178:2
220:1
**LLC** 4:2 5:2,15
5:17
**LLP** 2:4,14 3:3
3:12 4:8,16
5:4,10,22,23
5:24
**loading** 145:2
**locate** 25:1
**located** 23:15
23:23 24:4
24:16
**location** 91:4
**locations** 12:9
**logistics** 9:6
9:11
**long** 7:22 33:4
72:23 84:5
220:10
**longer** 27:10
159:4 160:9
168:22
**look** 22:4 25:9
27:25 31:9
55:19 69:25
72:18 80:23
83:13 99:2,5
102:25
103:22
104:12,13
108:19 114:2
114:18 116:3
123:25 126:5
127:16,20
141:11 142:7
148:20 163:4
163:23 170:5
171:19,21
177:6,9
181:5 182:20
187:15

191:16,22
193:10
194:21 195:2
195:3,6
196:15,24
197:12,19
213:8
**looked** 31:9
82:24 108:16
122:8,14
125:14 127:6
127:8,10
161:10
172:15,19
192:4,11
194:10,22
195:7 196:16
205:23
206:18,24
207:12
**looking** 24:13
24:19 45:12
60:9 69:4
77:23 78:2
79:9 81:21
83:12 84:18
99:15 101:23
103:10
104:16
108:10,14,22
113:1 115:22
116:6 117:5
117:10,15,22
118:16 119:2
120:5 121:6
121:20
126:24
129:20
130:10
132:25 133:2
140:12
144:21
146:20 149:2

Ahlberg, Timothy H. - Vol. I                                April 21, 2020

19

| | | | | |
|---|---|---|---|---|
| 151:8 152:24 | 88:15,20 | **MARINI** 4:2 | 41:19 42:15 | 124:9 133:16 |
| 155:22 166:2 | 89:2 135:18 | **mark** 23:2 | 43:15,22 | 134:4,24 |
| 188:4 192:21 | **maintained** | 25:21 27:13 | 44:21 45:18 | 135:22 136:6 |
| 206:24 207:9 | 88:25 89:7 | 46:25 76:13 | 46:14,21 | 136:18 137:1 |
| 207:12 | 100:17 101:4 | 80:4 83:4 | 47:10 49:2 | 137:22 |
| **looks** 47:23 | 102:20 | 107:4 108:6 | 50:1,22 51:5 | 138:18 139:1 |
| 77:19 | **maintaining** | 111:22 | 51:14,23 | 143:9 145:9 |
| **lost** 122:19,23 | 103:14 | 115:18 | 53:23 54:25 | 145:17 146:1 |
| 123:13 | **maintains** | 119:25 | 59:24 60:24 | 148:17 |
| 205:15 | 88:19 | 122:16 | 62:1,10 63:5 | 149:18 152:3 |
| **lot** 21:14,17,25 | **major** 170:2 | 139:24 151:9 | 63:10,16,25 | 152:18 |
| 45:12,20 | **making** 21:19 | 162:5 173:10 | 65:8,15 66:3 | 154:13 155:2 |
| 46:17 85:17 | 90:22,25 | 187:5 208:17 | 66:5,10,17 | 156:16 |
| 140:6 146:25 | 98:5 104:6 | **marked** 25:25 | 66:21 67:3,7 | 157:17 |
| 176:19 198:6 | 129:13 | 77:15 83:5 | 67:21 68:14 | 158:25 |
| **lunch** 83:23 | **man** 20:20 | 117:6 124:1 | 71:23 72:8 | 159:10,18 |
| 84:4,6 | **management** | 166:2 187:13 | 74:7 75:7,12 | 160:15 161:1 |
| | 1:5,11 2:2 | 208:23 | 76:23 77:8 | 161:8 163:7 |
| ─── **M** ─── | 17:13 28:7 | **marking** 12:20 | 78:7,9 82:6 | 163:10 164:7 |
| **M** 4:21 112:3 | 31:3,6,7 | **markings** | 82:13 83:10 | 164:22 |
| **MacKenzie** | 54:18 73:25 | 121:7 | 83:20 84:7 | 166:24 167:6 |
| 26:17 29:19 | 87:22 128:18 | **markup** 10:20 | 84:13 85:11 | 167:16,22 |
| 30:19,24 | 140:10 | **Massachuse...** | 85:16 86:22 | 168:1,20 |
| 31:1 33:19 | 223:13 | 2:11 | 87:18 89:9 | 169:6,10,15 |
| 33:24 34:2,4 | **managerial** | **master** 34:9 | 91:9 92:8 | 169:18 |
| 37:17 38:12 | 20:8 | **matched** 109:1 | 93:2,21 94:7 | 170:23 171:6 |
| 43:2 44:10 | **managing** | **matter** 60:3 | 94:10 95:25 | 172:6 173:21 |
| **MAGGIO** 2:19 | 40:19,22 | 73:2 | 96:20 97:11 | 175:3,12 |
| **magnify** 26:6 | **Manges** 3:3 | **MBA** 28:12 | 99:9,13 | 177:17 179:7 |
| **magnifying** | 5:22,24 | 29:3 | 100:11,18 | 180:6,24 |
| 13:4 26:8 | **manipulation** | **MCCONNELL** | 101:6,19 | 181:14,18 |
| **main** 19:22 | 194:13,16 | 5:17 | 102:4,14,21 | 184:19 |
| 20:18,24 | **manually** | **McKEEN** 3:17 | 103:3,16 | 185:25 |
| 31:3 45:24 | 142:6 | 8:11,15 9:3,9 | 104:7,24 | 187:20 |
| 46:6 48:24 | **map** 24:16 | 9:25 10:15 | 105:8,25 | 188:22 |
| 68:17 137:15 | 25:9 | 16:2 23:24 | 109:7 110:24 | 194:11 |
| 137:16 160:6 | **March** 83:11 | 24:8,21 25:2 | 111:17 | 195:14,19,23 |
| 160:7,9 | 168:15 | 25:12 31:16 | 112:11,19 | 195:25 196:6 |
| 168:21 170:7 | 189:19 | 31:25 32:7 | 113:22 114:7 | 199:24 |
| 170:17 | 190:15 | 32:17 35:22 | 114:14,18 | 201:12 202:4 |
| **MAINLAND** | 192:20 | 36:18,23 | 117:19 122:2 | 202:11 204:9 |
| 2:20 | 193:20 | 37:6 38:17 | 122:20 | 206:10 |
| **maintain** 59:14 | **MARCOU** 2:21 | 39:7 40:5 | 123:10,15,21 | 207:16 210:5 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                   April 21, 2020

20

| | | | | |
|---|---|---|---|---|
| 210:16,22 | meetings | 157:23 | 2:8 | 108:7 111:23 |
| 211:11 | 19:12 20:15 | 159:25 | model 34:10 | 113:1 115:19 |
| 213:15,20 | 21:3,8 | 160:24,25 | 117:13 | 120:1 122:16 |
| 215:9 216:24 | Melendez | 166:20 | modeler 34:9 | 122:17 124:1 |
| 217:4,13 | 142:9 | middle 16:5 | models 31:8 | 140:1 162:6 |
| 218:1 220:7 | Memphis 4:23 | Mike 11:5 | 31:10 | 173:11 177:7 |
| 220:19,23 | mention | Milbank 2:14 | moment 20:21 | 187:7 208:19 |
| 221:9 | 164:15 | 5:23 219:25 | 102:8 115:25 | 208:23 |
| mean 21:22,25 | mentioned | Miller 2:22 | 123:4 144:20 | Monoline's |
| 31:5,8,24 | 61:15 86:25 | 219:12,24,25 | 219:10 | 80:4 |
| 32:23 34:14 | 87:25 92:10 | 220:21 221:2 | momentarily | Monolines |
| 36:11 42:17 | 97:14 148:7 | 221:16,18 | 123:6 | 12:2 |
| 54:11 66:10 | 148:19 163:4 | million 107:9 | money 57:3 | Monterrey |
| 79:17 86:18 | 216:7 | 107:23,23 | 64:18 70:7,7 | 28:18 |
| 89:23 90:7 | mentioning | 118:10 135:5 | 70:11 75:5 | month 41:14 |
| 91:11 115:7 | 129:17 | 214:1,7 | 118:16 179:3 | 41:18 |
| 120:17 | Mervis 2:8 | mind 19:20 | 216:11,16 | monthly 33:9 |
| 132:17 | 10:11,13,16 | 32:1 68:2 | monies 54:9 | 33:15 90:17 |
| 136:10 | 11:6,13 | 169:25 | 56:1,11,16 | 202:23,24 |
| 138:21 | 49:13,17,17 | 175:23 184:2 | 57:9,15 | morning 11:20 |
| 146:24 | 49:18 | 199:9 220:20 | 58:15 64:15 | 13:13,16 |
| 157:19 183:4 | message | minimum 7:12 | 67:13,14 | 220:14,18 |
| 186:8 194:15 | 184:18 | mining 95:15 | 70:20,24 | 221:21 |
| 202:21 208:9 | met 19:17 | minute 27:1 | 71:8,10 | MOSHE 3:15 |
| meaning 147:6 | 23:16 | 83:17 99:18 | 112:8,17 | motion 80:12 |
| 158:16,18 | methodology | 107:10 113:4 | 126:18 | motor 17:25 |
| means 16:18 | 25:14 | 117:3 144:24 | 174:16 179:2 | 106:10 107:6 |
| 36:8 37:14 | MetLife 5:11 | 175:14 189:9 | 183:21 185:4 | 107:16 |
| 74:1,24 75:1 | Mexico 28:16 | 218:21 | 189:15 | 108:25 |
| 120:16 | 28:20 | minutes 47:14 | monitor 5:2,3 | 130:14 131:4 |
| 138:17 139:6 | mfink@om... | 73:2 175:8 | 89:21 90:3 | movant's 22:5 |
| 139:13 141:3 | 3:15 | 197:23 | monitors | movants 12:2 |
| 142:23 143:1 | Michael 2:8 | mis 88:7 | 89:18 | move 27:3 |
| meant 90:10 | 49:17 | mischaracte... | Monoline 6:5 | 44:11 67:9 |
| 90:10 | Micheletto | 159:2 202:20 | 23:2,3 25:22 | 151:10 |
| mechanism | 5:25 7:5 | 203:22,25 | 26:1 27:14 | moved 139:19 |
| 201:7 204:25 | Microsoft | misheard | 27:15 44:2,4 | movement |
| medications | 194:19 | 32:21 | 47:1,24 | 126:18 |
| 14:3 | mid-Septem... | misphrased | 55:20 76:13 | moving 117:3 |
| meet 20:4 | 132:1 133:12 | 88:7 | 76:14 77:15 | multiple |
| 221:20 | 135:9 136:3 | misspoken | 79:9 80:5 | 160:11 178:9 |
| meeting 184:6 | 136:15 | 109:22 | 83:5 98:20 | MUNICIPAL |
| 184:8 219:4 | 152:25 157:4 | mmervis@p... | 98:21 108:6 | 4:7 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                          April 21, 2020

21

**MUÑIZ** 4:2
**MUNKITTRI...**
  2:7
**Muñoz** 5:18
**mute** 11:7
  39:17 45:8
  46:20 94:5
  102:9 122:4
  147:3 176:20
**muting** 7:12
**MYERS** 3:12

**N**

**N** 2:1 3:1 4:1
  5:1 94:17,17
  94:17
**name** 7:4
  11:23 13:14
  13:16 20:7
  20:20 112:3
  112:5 132:6
  132:8,20,22
  158:17,19
  166:12
**named** 20:20
  20:25
**names** 152:6
**Nashville** 4:18
**Natbony** 4:11
  6:3,25 8:6,13
  9:2,20 11:4
  11:11,14,23
  13:12 23:1,5
  23:8 24:2,11
  24:24 25:6
  25:15,20,24
  27:17 31:21
  32:3,13,20
  35:24 36:21
  37:4,7 38:4
  38:20 39:1,3
  39:10,19,21
  40:8 41:22

42:19 43:18
44:1,6 45:1
45:11,22
46:19,24
47:6,13,21
47:22 49:5
49:21 50:5
51:1,8,16
52:3,10 53:3
54:2 55:3
60:2 61:4
62:5,14 63:8
63:13,20
64:3 65:11
66:1,8,15,25
67:5,11 68:6
68:19,20
72:3,13
74:11 75:10
75:19 76:12
76:16 77:2
77:13 78:16
80:3,7,17,19
82:9,17 83:3
83:8 84:2,11
84:14 85:15
85:22 87:4
87:14,15,24
89:14 91:12
92:15 93:6
93:17,23
94:12,20,21
96:3,24
97:13 98:19
98:23 99:11
99:14 100:14
100:21 101:8
101:22 102:6
102:10,17,24
103:8,22
104:1,11
105:3,13
106:3 108:5

108:9 109:11
111:2,21
112:1,12,23
114:1,10,15
114:20
115:17,21
116:22 117:1
117:21
119:24 120:3
122:9,15,19
122:24 123:7
123:12,17,19
123:23,24
124:11
133:20 134:9
135:3 136:1
136:12,23
137:2 138:2
138:22 139:4
139:23 140:3
143:11,17
145:20,24
146:3,10,15
146:17 147:2
147:4 148:21
149:22
151:22 152:4
152:19
154:16 155:6
156:20
157:20 158:9
159:3,14,23
160:21 161:6
161:9 162:4
162:8,22
163:15,18
164:13 165:4
165:21 166:1
166:22 167:4
167:13,19,25
168:5,7,24
169:8,13,17
170:1,4,13

171:1,8,11
172:10 173:9
173:13 174:1
174:5,12,24
175:7,13,20
176:1,13,14
178:2,6
179:12
180:10 181:4
181:17,19
184:16,24
186:4 187:2
187:9,11,22
187:23 189:1
193:17
194:14
195:16,21
196:4,8,9
197:9,22
198:4,13
199:2 200:5
201:13 202:8
202:12
203:13,16
204:12 206:7
206:12 207:4
207:21
208:16,21
210:9,17,21
211:1,15
212:22
213:17,23
214:3,6,11
215:12 217:2
217:7,19
218:6,20
219:14 221:6
221:17,22
**NATIONAL** 3:2
**nature** 12:4
  32:11
**NAYUAN** 5:19
**necessarily**

10:19 54:11
93:11 204:19
**necessary**
  11:18
**need** 16:3,6
  46:21 47:10
  66:10,22
  76:9 146:1
  151:8 154:21
  159:16
  174:25 175:3
  175:5,5
  202:5 213:6
**needing**
  145:11
**needs** 39:17
  45:7 46:19
  78:12
**negotiating**
  42:7
**Neither** 158:5
**never** 82:25
  96:15 125:19
**New** 2:6,6,15
  2:15 3:5,5
  4:9,9 5:6,6
  5:12,12
**Newport** 3:20
  3:21
**noise** 46:23
  146:25
  176:19
**noises** 154:8
**non-profit**
  28:6
**nonpublic**
  30:3
**normal** 129:10
**North** 28:5
**notarial**
  224:10
**notary** 223:5
**notation** 173:4

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                    April 21, 2020

22

**note** 127:13
162:20
**noted** 104:9
144:16 172:9
179:20
**notes** 22:23
**noticed** 123:13
**November**
157:24 160:1
160:8,25
168:15
189:19,19
192:20
193:20
211:10,21,23
212:8
**number** 6:5
45:3,6,14
57:23 58:2
59:10 60:25
71:18 73:6
95:20 105:11
105:18,18,18
109:9 110:7
116:17
117:18,23,24
118:3,7
134:20
135:18
143:16 150:6
153:21 154:3
154:15
155:12 156:5
156:22,25
157:6 166:8
166:10
178:25 180:9
182:11
205:20 208:5
**numbers**
23:19 73:6
85:25 86:5
92:24 104:18

104:19
107:15,18,20
107:22
108:15 109:4
109:12,13,18
109:18 110:2
110:2,6
129:21,23
130:2,7
150:8,10
157:1 200:2
201:5
**NW** 3:13
nzt@mcvpr....
5:20

**O**
**O** 94:17,17,17
223:3,3
**o'clock** 83:22
84:9
**O'MELVENY**
3:12
**oath** 13:24
**object** 23:24
25:12 38:17
42:15 49:2
51:23 54:25
59:24 60:24
62:1 63:5,10
63:16 71:23
74:7 75:7
76:23 77:8
82:6,13
86:22 87:12
89:9 92:8
93:2 95:25
100:11
101:19 103:3
103:17 122:2
124:9 133:16
134:4,24
158:25

160:15
177:18 179:7
180:6,24
198:11
199:24 204:9
210:5 218:3
**objected** 49:16
**objection** 11:8
24:8,21 25:2
31:16,25
32:11,17
35:22 39:7
40:5 41:19
43:15,22
44:21 49:13
50:1,22 51:5
51:14 52:6
52:23 53:23
62:10 63:25
65:8 72:8
82:6 85:11
86:22 87:18
87:20 91:9
96:20 97:11
100:18 101:6
102:4,14,21
103:24 104:7
104:24 105:8
105:25 109:7
110:24
111:17
112:11,19
113:22 114:7
114:14
117:19
135:22 136:6
136:18 137:1
137:22
138:18 139:1
143:9 148:17
149:17,18
151:21 152:3
152:18

154:13 155:2
156:16,17
157:17
159:10,11
161:2 164:7
164:22
166:21,25
168:20 172:6
173:21
185:25
188:21
193:14
194:11 197:6
198:23
201:12 202:4
202:11 207:3
210:16,22
211:11
213:15 214:5
215:9 216:24
217:4,13
218:2 221:16
**objections**
11:8 15:19
15:21 85:13
169:6
**objectives**
59:22 85:5,9
85:13
**obtain** 25:4
29:5 97:16
97:16 203:17
**obvious** 12:10
**obviously**
175:5 177:23
220:10
**occurred**
126:23
188:10
**occurs** 61:24
62:17 69:17
**October**
211:21 212:9

**offering** 59:21
**office** 142:10
142:11
**OFFICIAL** 5:9
**oh** 23:21
131:10
147:22 158:7
210:24
219:18
**oil** 17:23
106:14
107:15
**okay** 9:20 11:4
11:20 14:10
14:11,19,20
14:25 15:1
15:18 16:20
17:3,4,8,9,13
17:14,17,18
18:21 19:4
19:16 23:12
24:6 25:16
25:20 28:4
31:11 32:14
32:21 35:25
37:4 40:9
42:22 44:1,7
45:12 46:4
46:24 49:22
52:15 53:4
54:3,13
57:19 64:20
68:6,19
75:12 76:11
80:3 83:3
84:11 85:16
85:23 86:10
93:17 94:9
94:12 95:9
95:10,10
98:19 99:1
99:23 100:15
100:22

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

23

| | | | | |
|---|---|---|---|---|
| 104:12 105:4 | 198:5,19 | 179:3,10 | 191:6,10 | 76:10 77:18 |
| 107:13,14 | 199:3 200:22 | 181:13 182:8 | 196:25 | 77:21,23 |
| 108:3,4,10 | 206:7,13 | 182:10 185:7 | originally 32:9 | 78:11,15 |
| 111:3,9,21 | 209:14 | 189:22,25 | ORRICK 5:4 | 79:10 80:8 |
| 113:13 114:2 | 210:24 | 198:6,7,16 | outcome | 83:7,12,14 |
| 114:11 | 211:16 212:4 | 198:21 199:6 | 224:8 | 83:18 104:3 |
| 115:22 | 214:25 | 199:13,23 | outposts | 104:13,17,18 |
| 116:10 | 220:19,20,21 | 200:4,8,14 | 193:24 | 105:6,6,7 |
| 117:10,15 | once 62:12,15 | 200:18 201:2 | outside 37:16 | 106:18 107:2 |
| 118:15,21 | 133:21 | 201:11 | 65:9,16,24 | 107:7 108:19 |
| 119:15,19 | 139:19 | 202:15,22,23 | 66:13 68:5 | 108:20,20,21 |
| 122:15,24 | 153:15 185:6 | 203:8,19,22 | 126:11 | 113:17 114:3 |
| 123:2,7,23 | 189:13 | 204:1,8,17 | 128:22 | 116:1,2,6,7 |
| 124:6,17 | one-for-one | 207:23 208:8 | 159:12,15,19 | 116:13,23 |
| 125:5,24 | 203:5 | 208:12 | 160:18 | 117:6,16,22 |
| 128:20 129:4 | one-page 27:5 | 216:11 | 169:20,21 | 118:4,6 |
| 130:10,22 | ones 20:11 | 217:23 | 177:20,25 | 120:4,5 |
| 131:24 | 122:13 | operations | 180:25 | 121:6 130:10 |
| 132:10 133:2 | 126:25 | 202:25 | 217:14 218:4 | 131:8,9,24 |
| 140:12,22 | ongoing 97:3 | opinion 42:2,4 | outstanding | 137:19 |
| 141:4,13 | online 28:19 | 74:21 | 10:7 | 141:18 142:8 |
| 142:13 143:4 | opening | opportunity | Oversight 1:4 | 144:16,23 |
| 143:18 | 161:11,14 | 13:3 27:25 | 1:11 2:2 11:9 | 149:25 152:9 |
| 144:21 | 162:10 | opposed | 17:11,12 | 152:14,22 |
| 145:14,25 | operating | 156:14 167:8 | 80:15 81:5 | 156:12 |
| 146:11 147:2 | 55:22 121:24 | 204:15 | 223:12 | 157:22 |
| 147:22 148:1 | 137:15,16 | opposing 7:14 | | 158:22 168:8 |
| 148:1 156:21 | 183:17 | opposite | P | 168:12,13 |
| 157:10,22 | operation | 73:12 | P 2:1,1 3:1,1 | 170:6 177:8 |
| 159:4 163:17 | 121:15 | opposition | 4:1,1 5:1,1 | 181:5 186:5 |
| 166:2 170:1 | 204:13 205:6 | 80:11,13 | P-R-I-F-A-S | 188:3,6 |
| 171:12 175:7 | 205:6 | option 47:4,9 | 86:12 91:21 | 211:3,5 |
| 175:22 177:6 | operational | order 1:15 | p.m 94:15,19 | 213:9 |
| 178:16 | 45:24 46:6 | 65:17 115:24 | 146:6,9 | pages 99:6,15 |
| 180:11 | 48:24 61:19 | 116:8 161:2 | 176:9,12 | 102:25 103:6 |
| 181:18 | 69:3,16,21 | 167:9,12 | 197:25 198:3 | 103:9,19 |
| 182:12 | 76:20 77:5 | 221:14 | 221:24 222:2 | 104:4,5 |
| 184:19,20 | 118:12,17,24 | ordered | page 6:2 16:25 | 105:5,12 |
| 185:8 186:5 | 121:8 125:8 | 169:21 | 23:13 27:4 | 107:17 |
| 186:13 187:2 | 125:15,20 | Oriental | 44:12,14 | 115:24 |
| 187:12 188:5 | 137:12 | 118:13 156:9 | 45:15 48:8,9 | 117:16 141:8 |
| 190:6 191:21 | 155:14 160:4 | 160:5 | 48:12 50:20 | 141:8 144:21 |
| 192:19 196:6 | 160:7,10 | original 191:3 | 53:5 55:20 | 149:5 150:3 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

24

| | | | | |
|---|---|---|---|---|
| 150:5 | **PASLAWSKY** | **period** 95:21 | 28:20 112:6 | **PIETRANTONI** |
| **paid** 41:14 | 2:23 | 98:7 108:17 | 119:16 | 4:2 |
| 42:23 | **pass** 74:25 | 131:25 | **personal** | **Pinnacle** 4:17 |
| **paper** 106:24 | 75:2 168:23 | 133:10 136:2 | 101:12,15 | **place** 2:10 |
| 107:11,13 | 198:15 | 136:8,14 | 177:24 | 4:17 26:17 |
| **paragraph** | **passed** 197:21 | 137:14,18,21 | **personally** | 69:6 |
| 86:10 | **passthrough** | 137:25 138:7 | 25:19 30:11 | **placed** 217:23 |
| **Park** 5:12 28:5 | 203:5 | 148:5 152:24 | 42:22 79:7 | **plan** 34:5,7 |
| **part** 33:18 35:3 | **path** 18:4 | 156:11 157:3 | 194:17 | **plans** 217:11 |
| 38:12 43:1 | **PAUL** 5:10 | 157:23 159:7 | 196:11 | **platform** 88:10 |
| 53:21 56:2 | **pause** 36:19 | 159:21,25,25 | **personnel** | 194:18 |
| 56:16 57:4,6 | **paused** 115:25 | 160:23,25 | 128:22 | 196:12 |
| 57:9 58:5,6 | **PAVEL** 3:18 | 163:1,5,20 | **perspective** | **please** 7:11,17 |
| 58:15 66:6 | **pay** 37:15 | 163:24 | 217:22 | 7:24 8:5 |
| 70:11,24 | **payment** | 166:19 | **pertaining** | 10:12 13:14 |
| 71:11 72:7 | 110:11 114:4 | 168:19 169:5 | 1:21 | 14:12,15 |
| 72:11,15 | 114:5 | 170:16,19 | **PETER** 3:16 | 37:10 44:2 |
| 78:5,9 89:12 | **payments** | 171:4,5 | **petroleum** | 67:4 68:8 |
| 97:25 105:17 | 161:19,21,25 | 172:17 173:5 | 106:14 | 99:19 113:4 |
| 131:15 | **payouts** | 173:16 | 130:14 131:3 | 114:18 134:6 |
| 135:10 | 100:16 | 174:13 | 131:13 | 147:3 169:25 |
| 153:24 | **PDF** 108:19 | 180:20 181:7 | 150:13 | 184:7 187:21 |
| 174:17 204:7 | 116:17 117:6 | 182:11 183:3 | 179:22 180:2 | 199:15 |
| 212:1 | **Pelle** 19:23 | 185:21 186:6 | **pfriedman@...** | 204:10 |
| **participants** | **pencil** 106:22 | 189:12,20 | 3:16 | **pledged** 17:19 |
| 12:21 | 106:23 | 191:7,11,17 | **phone** 7:20 | 211:8 |
| **particular** | **pending** | 191:20 | 19:9 90:18 | **pledging** |
| 24:14 25:7 | 195:22 196:1 | 192:20 | 90:19,22,25 | 211:14,14 |
| 48:10 50:3 | 196:2,4 | 193:13,20 | 94:8 | **plural** 46:1 |
| 55:5 57:3,15 | 223:10 | 194:3 195:10 | **phonetic** | **point** 14:8 |
| 58:13 59:9 | **people** 42:13 | 195:13 | 19:24 | 20:18 97:20 |
| 64:15,22 | 42:17 93:25 | 196:20,21,24 | **phrase** 79:8 | 135:7 141:23 |
| 67:13 70:6 | **percent** 41:3,8 | 197:17 204:4 | 91:4 142:22 | 144:6 195:11 |
| 70:10 137:19 | **percentage** | 205:24 | 201:23 | 208:8 |
| 167:1 201:10 | 40:25 41:4 | 206:15 | **phrased** 137:4 | **pointing** 22:1 |
| 210:2 215:15 | **Peregos** | 207:19 211:9 | 137:5 214:23 | **points** 19:23 |
| 221:11 | 166:12 | 212:5,8 | **phrasing** | **pole** 10:21 |
| **particularly** | **perform** | **Periodically** | 96:11 | **Ponce** 4:2 |
| 24:19 | 213:22 | 7:20 | **pick** 220:5 | **Poplar** 4:22 |
| **parties** 8:8 | **performed** | **periods** 93:9 | **picked** 14:14 | **popped** 158:6 |
| 9:12,18 10:2 | 30:1 | 157:11,13 | **picture** 123:20 | **portions** |
| 224:4,6 | **performing** | 171:12 | **piece** 22:7 | 103:18 |
| **parties'** 80:11 | 63:12 | **person** 28:19 | 107:11 | 221:12 |

Henderson Legal Services, Inc.

position 20:8
67:8 207:8
207:11
217:20
positions
42:17
positive
119:22
possession
63:4 216:6
216:22
possessive
149:24 150:1
150:3
possessory
149:10
possible 12:17
16:5 62:6
86:25 112:6
125:18 126:7
148:19 209:5
215:6
post 86:11
potential
73:16
potentially
195:4
Power 194:20
practice 29:24
60:4
precisely
216:21
prefer 103:20
134:17
220:13,17
preference
220:17
preliminary
14:7
preparation
19:14,18
20:5,15 43:1
81:15 87:6

128:24
144:18
161:12 209:3
preparations
19:6
prepare 18:13
18:14 19:1
21:11 81:10
81:12
prepared 81:2
81:14 87:22
140:17 142:9
142:11
143:24 144:1
177:13 209:7
209:9,11,12
preparing 21:2
50:8,10,15
81:6
presence
128:23 164:8
164:9 223:21
present 5:21
19:13 37:19
157:19
180:21 181:7
181:24 183:3
189:12
193:13 194:3
195:13
196:23
197:17
205:24
206:14 215:8
215:16
217:17
218:12
presentation
124:16
131:23 180:8
217:16
218:10
presentations

21:18
presented
132:5
press 184:7,18
pressed
184:22
pretty 65:17
prevent 14:2
previous
134:6
previously
39:25 58:8
68:22 75:16
85:19 86:24
92:10 113:12
119:9 147:11
158:14
160:11
162:25
163:19
164:15
189:11 194:8
Pricewaterh...
29:22
PRIFA 15:16
20:23 147:13
147:16,18,20
PRIFAS 57:24
58:1,2 86:12
87:25 88:1,2
88:14,18,20
88:23,25
91:21,23
92:2,4,5,14
92:20,21
93:1,5,8,10
93:14 95:17
96:1,23
105:21 136:8
147:23,23,24
147:25 148:2
148:9
Principal

55:21
prior 29:21
36:24 39:22
40:15 108:16
158:22 163:1
163:20
168:19 170:9
170:16 171:5
171:12 209:6
private 29:23
privilege 16:7
probably
221:9,12
problem 11:11
47:24 84:4
174:2,8
problems
165:22
Procedure
1:20
procedures
38:16,23
40:4 119:7
proceed 47:12
219:8 220:8
proceeding
10:6
proceeds
118:11
process 9:13
9:18 25:4
90:1 135:7
217:17
processing
162:18,21,23
175:10
produce 22:8
148:24
produced
22:11,14
45:13 99:24
142:4,5
162:11

production
21:15,22,24
33:3,16
209:22
productions
31:12
professional
12:15 26:24
27:8 28:2
29:8,11
41:10 44:9
professionally
16:18
proficient
16:18
profile 27:19
27:22
program
194:23 195:1
195:7 196:17
PROMESA 1:4
1:10
proper 66:14
161:4 167:10
Proprietary
35:17 36:1,3
PROSKAUER
2:4
Proskauer's
10:10
protective
1:15 221:14
provide
204:25
provided
31:12 44:8
91:21,23
101:17
providing
33:13 102:12
public 3:2
109:14,19
110:4 223:5

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                     April 21, 2020

| | | | | |
|---|---|---|---|---|
| **published** 33:1 | 221:14 | 111:13 | 12:25 94:23 | 45:18 53:25 |
| **publishing** 12:20 | **pushed** 184:16 | 112:15 | 103:17 | 56:3,13,19 |
| **Puerto** 1:1,5,8 | **putting** 21:15 | 121:21 | 122:25 | 58:16 67:9 |
| 1:12,14 2:2,3 | 127:14 | 125:18 | 123:13,20 | 91:24 108:21 |
| 3:11 4:3 5:18 | 129:17 | 127:10 | 218:22 | 116:7 |
| 15:3,7,12,15 | | 129:15 134:6 | **questions** | **realtime** |
| 17:3,6,13,16 | **QlikView** | 134:15,17 | 12:1,3,5 14:8 | 175:15,21 |
| 19:25 20:16 | 194:18 | 136:11,13,20 | 14:13 15:19 | **reason** 41:17 |
| 30:11,19 | 196:12 | 136:24 137:3 | 146:12 | 43:12 44:18 |
| 31:1,2,13 | **query** 95:21 | 137:6 139:18 | 169:11,19,25 | 48:25 51:3 |
| 41:5 42:14 | **question** 14:9 | 147:1,17,19 | 173:15 | 65:12 68:10 |
| 57:24 86:6 | 14:16 15:20 | 154:8 158:11 | 174:10 178:2 | 78:20 115:12 |
| 88:2 130:16 | 15:23 16:5 | 162:24 | 181:15 | 120:25 |
| 149:6 152:10 | 18:23 23:25 | 163:11,14 | 195:18 219:3 | 162:18 173:3 |
| 223:12,13,14 | 25:8 28:1 | 166:16 | 219:10 | 188:15 |
| **pull** 23:1,5 | 31:17 32:2,5 | 167:13,21 | **quick** 145:6 | **reasonably** |
| 25:20 27:13 | 32:12 37:9 | 170:11,24 | **quickly** 36:19 | 12:17 |
| 44:1 46:24 | 37:20,24 | 171:7 172:13 | **quote** 52:17 | **reasoning** |
| 76:12 83:3 | 38:25 39:2 | 176:21 | 188:12 | 75:18 159:22 |
| 92:24 98:19 | 39:11,14,23 | 180:15 | | **reasons** 68:18 |
| 111:21 | 39:25 45:4 | 181:21,24 | **R** 2:1 3:1 4:1 | 75:15 |
| 115:17 | 46:15 48:25 | 183:22 184:3 | 5:1 94:17 | **Rebecca** 20:10 |
| 119:24 | 49:22 51:2 | 185:1 187:21 | **raise** 8:4,22 | **recall** 28:23 |
| 122:15 123:8 | 51:19 55:2 | 191:8,21 | **RAPPOPORT** | 43:5,11 |
| 139:23 | 56:3,18,20 | 192:7 193:9 | 3:9 | 50:16 79:7 |
| 152:21 162:4 | 58:25 59:17 | 195:21,25 | **rate** 43:4,13 | 128:4 161:15 |
| 168:11 173:9 | 60:15 61:16 | 196:3,5,7,22 | 44:15,19 | 172:25 |
| 187:2,3 | 63:18,22 | 197:4,11 | **reach** 184:22 | 206:15,20 |
| 208:16 | 65:10,23 | 198:12 199:9 | **reached** 8:7 | 209:5 210:1 |
| **pullable** 144:6 | 68:7,15 | 199:25 | 10:3 | **receipt** 61:2 |
| **pulled** 76:17 | 69:12 70:14 | 200:11,23 | **reaching** 9:18 | 97:20 135:2 |
| **purpose** 58:18 | 70:14,22 | 201:18,20 | **read** 7:24 | **receipts** 79:16 |
| 58:21,24 | 71:3 74:8 | 203:11 | 16:12,13 | 79:18,19,20 |
| 59:3,18,20 | 75:10 76:18 | 204:11 | 26:4 68:9 | 133:18 135:2 |
| 64:4 75:5 | 76:24 77:1,9 | 205:11,15 | 222:11 | **receive** 7:19 |
| 85:3 113:18 | 82:14 85:19 | 206:13 207:6 | **reading** 23:21 | 61:11 166:18 |
| 180:22 181:3 | 89:12 94:3 | 213:13 217:1 | 48:16 109:24 | **received** 8:19 |
| **purposes** 74:5 | 96:11 97:6 | 217:6 | **reads** 130:20 | 65:4 69:23 |
| 92:22 | 98:1 101:20 | **question's** | **ready** 84:15,17 | 83:10 87:1 |
| **pursuant** 1:14 | 103:4,11,12 | 71:25 | 218:21 | 93:4 113:11 |
| 1:19 130:17 | 104:2,25 | **questioner** | **real** 145:6 | 124:18 125:1 |
| | 109:25 | 13:3 | **really** 39:18 | 133:14 |
| | | **questioning** | | 135:13 137:9 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

27

| | | | | |
|---|---|---|---|---|
| 138:4,6 | 14:19 23:4 | 88:15,20,22 | 172:23 | 131:12,25 |
| 150:10 155:5 | 25:23 27:16 | 109:6 133:23 | 211:17,19 | 141:5 148:8 |
| 155:11 | 36:19,22 | 134:12 | **reflected** | 161:18 |
| 162:20 | 44:5 47:2,15 | 182:24 192:5 | 126:4 133:11 | 207:15 214:2 |
| 179:17 | 47:17,20 | 192:11,22 | 135:8 137:19 | 214:20 |
| 182:16 | 59:7,8,14 | 193:6,7,11 | 143:7 144:15 | 218:12 |
| 199:16,19 | 64:9,11 68:9 | 193:19,22 | 154:11,15 | **relationship** |
| 218:16 | 76:15 80:6 | 206:24 207:9 | 155:25 | 99:25 119:23 |
| **receives** 90:16 | 94:15,19 | 207:12 | 156:12 | **relationships** |
| **receiving** | 98:22 108:8 | **RECOVERY** | **reflective** | 129:11 |
| 161:25 | 109:9 111:24 | 5:3,16 | 142:14 | **released** 110:4 |
| **Recess** 47:18 | 115:20 120:2 | **reduced** 70:2 | **reflects** 212:4 | **relevant** 19:7 |
| 94:16 146:7 | 122:18 | 223:22 | **refresh** 202:6 | **remain** 10:7 |
| 176:10 198:1 | 139:21 140:2 | **refer** 12:18 | **regarding** 9:10 | 62:12 63:2 |
| **reclassificat...** | 146:2,4,6,9 | 17:1,5,10,15 | 9:14,15 10:1 | 68:23 69:10 |
| 74:14,15 | 155:1 160:22 | 35:4 39:12 | 10:4 16:7 | 69:15 71:22 |
| **reclassificat...** | 162:7,9 | 39:15,23 | 127:21 | 186:11 |
| 73:17 | 163:12 | 48:11 58:1 | 128:14,21 | 204:23 |
| **recognition** | 167:24 | 79:12 115:8 | **regardless** | **remained** 69:6 |
| 88:10 135:1 | 173:12 | 115:9 116:5 | 204:3 | 183:4 189:12 |
| 135:5 | 174:25 175:4 | 177:8 | **registration** | **remaining** |
| **recognize** 12:7 | 176:4,9,12 | **reference** | 106:11 | 121:22 |
| 26:4,13 | 181:15 | 22:20 164:4 | **regulations** | 136:21 183:7 |
| 27:18 48:1 | 182:15 187:8 | **referred** 80:1 | 34:24 35:2,4 | **remains** 62:7 |
| 77:16 108:11 | 195:15,20 | 84:19 143:13 | 59:23 85:5 | 136:5,9,17 |
| **recognized** | 197:25 198:3 | 178:17 | 119:8 | 217:18 |
| 138:6 144:5 | 208:20 | **referring** 17:2 | **relate** 105:14 | **remember** |
| 188:11 | 219:20,24 | 17:6,12,16 | 150:10 | 20:11 60:18 |
| **recollection** | 221:19,24 | 18:4 33:23 | **related** 101:1 | 180:11 |
| 82:23 | **recorded** | 48:5 86:11 | 117:16,16 | **remotely** |
| **reconcile** | 21:20 61:1 | 103:5 106:10 | 122:12 | 12:11 |
| 97:23 98:3 | 93:4 137:20 | 110:13 126:2 | 155:25 165:5 | **remove** 219:16 |
| 98:14 | 137:24 | 131:10 140:9 | 172:23 178:3 | **removed** |
| **reconciliatio...** | 157:15 | 151:16,18 | 224:6 | 61:13 133:21 |
| 89:16 | 165:15 | 195:11 | **relates** 142:18 | 134:10 |
| **reconnect** | 179:17 | **refers** 101:11 | 151:20 152:2 | **remute** 46:21 |
| 145:12 | 182:24 | 118:3 166:8 | **relating** 9:5,6 | **reopen** 11:18 |
| **reconvene** | 185:20 200:3 | **reflect** 26:24 | 9:7 12:6 18:6 | **repeat** 18:18 |
| 93:20 | 205:3,21 | 27:7 28:1 | 33:18 82:19 | 37:8,20 39:1 |
| **reconvening** | **recording** 61:1 | 121:23 | 97:17 121:16 | 39:19 40:1 |
| 93:25 | 184:15 | 122:10 | 122:11 | 45:4 46:15 |
| **record** 7:2,22 | **records** 23:15 | 150:16 | 127:17 128:2 | 68:7 69:12 |
| 12:8 13:15 | 24:16 64:6 | 171:24 | 129:13 | 76:25 103:12 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

28

| | | | | |
|---|---|---|---|---|
| 109:15,25 | 109:19 110:3 | 86:25 87:6,9 | 9:25 10:9 | 199:1,1 |
| 112:15 | 141:4 143:3 | 87:16,21 | 20:22 24:13 | **restrictions** |
| 121:21 | 143:8,12 | 91:7,14,16 | 25:17 33:22 | 59:23 85:6 |
| 124:24 | 148:3,6,7 | 92:6 93:7,10 | 34:7 62:25 | **result** 218:16 |
| 129:15 | 185:18 | 93:14 94:25 | 64:24 79:5 | **resume** 220:14 |
| 163:10 | 210:13 215:7 | 95:12,22 | 79:11 82:25 | **RETAINED** |
| 170:24 | **report's** 33:16 | 97:3,15 | 90:4,13 | 6:25 |
| 181:21 | **reported** 1:22 | 133:7 147:12 | 97:24 98:4 | **retrieving** |
| 183:22 | 35:12 73:8,9 | 147:14,20 | 120:8 129:6 | 12:22 |
| 187:21 | 73:14 76:7 | 148:10,14,19 | 138:25 | **reveal** 19:2 |
| 200:22 | 78:4,21 | **represent** 44:7 | 146:22 147:5 | **revealing** |
| 201:18 | 112:9,18 | 80:10 172:8 | 147:13,15,16 | 18:16,19 |
| 203:13 | 157:8 223:20 | **representati…** | 147:21 | 128:11 |
| 204:11 | **reporter** 7:23 | 11:1 | 148:15,24 | **revenue** 49:7 |
| 206:13 | 8:1,10,12,18 | **representative** | 157:25 | 49:11,23 |
| 212:23 | 9:1 14:14,18 | 1:6,13 2:2 | 158:12 | 50:4,20 51:4 |
| **repeating** | 37:23,25 | 223:14 | 161:24 163:1 | 51:11,21 |
| 184:2 199:9 | 38:24 39:16 | **representati…** | 163:20 | 52:16 58:3,4 |
| **repetitive** | 45:7 49:15 | 21:9 | 171:17 180:4 | 59:11 64:19 |
| 139:18 | 68:7 170:10 | **representing** | 180:18 | 71:13,17 |
| **rephrase** | 175:17,22 | 14:22 15:7 | 189:11 | 73:19 74:1,4 |
| 14:10 18:24 | 176:5 184:11 | 15:12,15,25 | 193:19 199:3 | 74:15,20 |
| 55:1 65:9 | 203:10,15 | 22:17 140:20 | 207:13 | 75:3,9 76:3,7 |
| 87:14 207:6 | 206:3,4,6,9 | 215:13 | 217:11 | 77:25 78:6 |
| 211:18 | 206:11 | **represents** | **respective** | 78:18 79:16 |
| **rephrasing** | 210:20 | 142:1 | 52:19 224:4 | 85:25 88:9 |
| 32:2 60:15 | 212:20 214:7 | **request** 100:9 | **responded** | 88:10 93:11 |
| **report** 33:1,3 | 214:8 219:16 | 100:25 | 134:14 | 93:14 98:17 |
| 33:15 49:20 | 219:18 | 101:16 | **response** 22:4 | 105:23 107:5 |
| 50:7,10,15 | **reporting** 31:4 | 113:14 | 100:9 101:13 | 108:23 |
| 50:18,21,25 | 31:23 32:5,6 | **requested** | 101:17 | 130:13,15 |
| 51:4 56:23 | 32:9,11,15 | 68:9 | 102:19 | 131:4,16 |
| 60:8 69:25 | 32:16,19,24 | **requests** 22:5 | **responsible** | 137:20,25 |
| 70:4,9 71:16 | 36:15,25 | 110:15 | 50:7 | 138:6 152:6 |
| 71:16 72:20 | 37:1,14 38:9 | **required** 15:20 | **rest** 83:18 | 155:4,8 |
| 72:24 76:4 | 54:19 73:25 | **reserve** 11:17 | **restart** 145:22 | 156:6 165:2 |
| 77:17 78:3 | 92:22 140:11 | 167:20 168:6 | **restricted** | 165:14 |
| 78:13 79:15 | **reports** 27:11 | 219:2 | 185:24 198:9 | 179:21 185:6 |
| 79:16 92:9 | 31:14,20 | **Reserving** | 198:20 | 185:19 |
| 95:14,19 | 33:6,10,13 | 219:9 | **restriction** 9:7 | 190:13 191:4 |
| 96:5,13,18 | 48:7 75:21 | **resolve** 168:3 | 9:15,24 | 191:6,10 |
| 96:22 97:8 | 75:23 76:1 | **resolved** 10:7 | 10:10 177:19 | 199:22 |
| 97:17 109:13 | 86:16,19,20 | **respect** 9:22 | 178:4 198:17 | 200:21 201:9 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

29

| | | | | |
|---|---|---|---|---|
| 214:1,13 | 183:8,25 | **revise** 136:10 | 151:10,13,15 | 147:20 148:3 |
| 215:24 | 185:11 | **rewind** 172:12 | 151:20 | 148:8,11 |
| 218:18 | 186:11,15 | **Rey** 5:18 | 152:16 | 185:18 215:6 |
| **revenues** | 191:23,25 | **Rico** 1:1,5,8,12 | 153:18 155:1 | |
| 17:20,21 | 192:15,22 | 1:14 2:2,3 | 155:9,15 | |
| 58:6,8 59:7,9 | 194:6 197:3 | 3:11 4:3 5:18 | 158:15 | **s** 2:1 3:1,6 4:1 |
| 59:15 60:11 | 200:1 201:23 | 15:3,7,12,15 | 167:20 168:6 | 5:1,13 46:2 |
| 60:17 61:6 | 202:1,6,7,16 | 17:3,6,13,16 | 175:12 176:1 | 94:17,17,17 |
| 64:7,9,12,20 | 203:1,2,3,7 | 19:25 20:16 | 178:21,23 | 149:7 |
| 64:22 65:1,4 | 203:18 204:3 | 30:11,19 | 179:1 180:2 | **S-U-R-I** 88:4 |
| 65:7,13 | 204:15 205:1 | 31:1,2,13 | 180:12,22 | **safe** 11:21 |
| 68:11 69:22 | 205:2 206:1 | 41:5 42:14 | 181:8,16 | **San** 4:3 |
| 71:10,22 | 206:20 | 57:24 86:6 | 182:2 189:3 | **Santa** 28:18 |
| 72:1,6,10,15 | 210:14 211:8 | 88:2 130:16 | 190:10 193:3 | **save** 107:3 |
| 73:7,13 75:1 | 211:17,20,22 | 149:6 152:10 | 208:4,6,11 | **Savino** 5:23 |
| 75:1,6,23 | 212:1,12,15 | 223:12,13,15 | 208:13 | **saw** 123:19 |
| 76:2,19,22 | 213:3 215:3 | **right** 8:4,9,14 | 210:10,19 | **saying** 57:6 |
| 77:3,6 78:4 | 215:20 216:1 | 8:22 22:1 | 211:7 215:14 | 63:22 144:2 |
| 79:11,12,12 | 216:22 | 46:13 50:8 | 216:12,15,19 | **says** 10:24 |
| 81:25 82:4 | 218:15 | 58:24 64:8 | 217:3 219:9 | 23:14 24:15 |
| 82:11,19,25 | **review** 12:22 | 64:13 69:19 | **right-hand** | 32:5,8 44:23 |
| 91:19 92:1 | 19:9 27:2 | 72:4 73:7,13 | 142:8 | 44:24 51:10 |
| 95:20 97:18 | 81:16 99:19 | 73:15 81:22 | **rights** 11:17 | 52:2,2 81:23 |
| 97:19,23,24 | 124:14 164:1 | 84:12 88:25 | 219:2 | 84:22 85:1 |
| 98:3,3,14,15 | 174:21 180:8 | 92:2,7 93:23 | **ring** 112:5 | 100:13 |
| 106:2,5 | 186:22,23 | 94:2 98:12 | **Rivera** 5:18 | 101:25 |
| 108:23 109:6 | 190:16,19 | 99:12 101:3 | **ROBERT** 3:6 | 102:16,23 |
| 109:10,14,19 | 193:18,23 | 101:24 105:5 | **robert.berez...** | 106:6,8 |
| 110:3 112:9 | 194:7,24 | 105:24 106:4 | 3:6 | 113:24 114:9 |
| 112:18 | 202:6 221:11 | 106:5 109:6 | **ROSE** 2:4 | 114:22 |
| 121:24 126:9 | **reviewed** | 109:14,23 | **ROTH** 3:19 | 117:11,13,24 |
| 126:14 | 81:20 126:25 | 114:25 116:2 | **rough** 41:2 | 118:14 119:3 |
| 131:21,22 | 127:4 144:17 | 117:18 119:3 | **RPR** 1:23 | 120:6 121:11 |
| 133:8 135:16 | 161:13 173:1 | 120:15,16 | **Rules** 1:20 | 130:12 131:1 |
| 137:24 138:4 | 186:24 | 125:2 126:20 | **run** 10:20 70:5 | 131:2 132:2 |
| 138:23 141:9 | 193:15,19,24 | 130:3,6 | 70:10 72:17 | 140:24 142:8 |
| 148:4 149:16 | 194:1 196:11 | 133:8 135:4 | 72:21,24 | 142:12 |
| 150:6,10 | 197:7 | 137:18 | 73:1 86:25 | 150:12,13,17 |
| 155:11,21 | **reviewing** 21:4 | 140:19,20 | 93:7,13 | 152:17 |
| 164:6,21 | 27:6 69:1 | 141:6,15 | 95:12,14,19 | 162:17 |
| 165:6,12,13 | 82:16 127:22 | 144:7,9,12 | 95:23 96:5 | 175:20 |
| 165:20 | 132:12 | 144:23 | 96:13,18,22 | 179:20 188:9 |
| 166:18 182:6 | 190:20 193:6 | 148:12 150:9 | 133:7 147:16 | 188:14,16 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

30

210:6 211:6
212:3,6,15
213:1,3
214:10
**SC** 110:11,19
114:4,11
117:11,12,14
127:2,6,11
150:20 151:4
151:9
**scenario**
205:11
**scheme** 158:2
158:13,15
**School** 28:6
**science** 28:9
**scope** 65:9,16
65:25 66:7
66:13 68:5
159:12,16,19
160:18
169:12,20,21
177:20,25
180:25 218:4
**screen** 13:2,5
13:6 23:6,10
26:4 47:25
77:14 107:2
113:2 123:1
131:7 145:5
146:13
152:22
175:18,25
219:17,23
**scroll** 113:5
121:12
**scrolling** 13:4
**seal** 224:10
**second** 27:4
77:22 78:9
78:24 104:13
104:16
105:17

115:22 116:1
116:7,9
117:16
131:10
141:18
152:22
179:25 189:7
199:15
212:10
**Secretary**
46:11
**see** 11:18 13:6
23:6,9,11,20
24:3,5 44:14
44:15,17
48:14,15
49:8,9 52:20
52:21 53:6,7
55:23,24
77:23,25
78:1 80:17
80:20,21
82:1,2 83:16
95:2,4,6,7,8
98:24,25
99:9 104:19
104:21 105:1
105:2,4
106:13,15,17
107:21,24
117:13,25
118:1,7
119:5,10,11
120:6 122:25
128:7 130:18
130:19,22,23
131:5,6,11
131:12,18
141:21 145:6
149:7,9
151:11,14
158:3,24
162:2 166:7

166:9,10,14
166:15 171:8
175:17,18,21
175:25 176:3
177:10,11
178:19,20
179:23 180:3
186:6 191:23
209:3 210:24
211:2
**seeing** 13:7
95:9
**seeking**
100:16
**seemingly**
123:10
**seen** 31:13
42:10 62:2
62:18 75:21
77:18 80:24
81:1 86:16
87:5,9,16,21
96:15 99:8
99:16,21
113:3 117:8
124:1 177:15
208:25 209:6
**segregate**
59:20 85:2
**self-balancing**
60:5
**semester**
28:21,24
**semesters**
28:12
**senior** 40:15
40:22
**sense** 56:4,5
56:19,21
70:15,16
71:3,25
72:11 83:22
83:24 91:24

136:22
221:13
**sent** 10:19
155:8 204:7
204:16
217:24
**sentence** 24:3
24:5 85:1
131:11
**separate** 12:9
35:2 59:4
73:3 76:2
77:24 82:20
86:5 156:22
156:24 157:1
190:2 214:19
**separately**
126:15
199:18
**separates** 76:5
**September**
160:3,8
166:20 211:4
211:24
212:13 213:4
213:25 215:4
**Sergio** 20:6
**series** 46:6
48:9 115:23
178:9 190:14
**SERVAIS** 4:12
**serve** 27:10
110:14
**servicer** 5:16
**services** 5:15
7:7 29:23
30:2 41:10
44:10
**session** 221:1
**set** 48:17 60:5
113:17
121:13 129:7
221:5 224:10

**share** 113:18
**shared** 213:18
**she'll** 123:4,6
**Sheet** 222:15
**shot** 26:5
**show** 70:6,11
87:10 93:8
93:10 95:19
96:19,22
97:9 118:10
141:9 143:7
148:3 153:8
153:9,11
208:22
211:22
**showing** 25:25
47:5 95:23
145:5 150:7
187:12
**shown** 133:13
141:16
**shows** 70:1
118:16
141:12
185:18 188:6
215:7
**sic** 31:23
121:16 214:1
**side** 81:22
178:19
210:18
**signature**
119:2,12,14
222:19 224:2
**signed** 122:7
222:15
**significant**
41:24
**signify** 132:3
132:14
**similar** 110:10
121:14,23
122:6 148:14

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

31

| | | | | |
|---|---|---|---|---|
| 194:19 | 102:6 113:14 | 16:10,11 | 90:14 91:3 | 8:13 |
| 209:20 | 114:21 122:4 | 67:6 | 110:21 117:8 | **standards** |
| **simple** 67:11 | 124:3 131:14 | **SPEAKER** | 128:16 130:8 | 34:24 35:4 |
| **Simultaneous** | 138:14 | 52:6,23 | 137:6 143:2 | 38:9,10,11 |
| 8:17 66:4,20 | 147:17 | 80:14 87:12 | 144:20 | 38:15,22 |
| 66:24 123:18 | 168:10 | 87:19 122:22 | 146:20 | 39:5 40:3 |
| 158:8 177:16 | 169:14 | 123:3 149:17 | 172:13,25 | 89:8,11 |
| 195:24 | 170:23 172:3 | 151:21 | 190:17 | **standing** 8:16 |
| **single** 45:17 | 176:5 187:3 | 156:17 | 199:17,17 | **stands** 75:11 |
| 45:24 48:4 | 187:3,6,20 | 166:21 | 205:10 | 167:13 |
| 48:23 120:5 | 191:8 195:23 | 188:21 | 215:23 | **start** 14:6 |
| 197:19 | 203:10 | 193:14 197:5 | **specifically** | 220:4 |
| **sir** 8:5,23 | 209:15 | 198:11,23 | 22:6 28:23 | **starts** 23:23 |
| 106:12 | 211:23 212:8 | 207:3 214:5 | 31:8 33:25 | 24:4 83:15 |
| 107:24 118:6 | 212:20 | **speaking** 7:17 | 34:1,3 35:15 | **state** 13:14 |
| 209:1 219:13 | 214:25 | 8:17 66:4,20 | 43:11,25 | 30:13 68:2 |
| **sit** 42:13 | **sort** 14:4 | 66:24 123:18 | 50:10,17 | 211:8 223:1 |
| **sitting** 71:5 | **Soundpath** | 158:8 177:16 | 74:23 127:13 | 223:6 |
| 115:11 143:4 | 184:23 | 195:24 | 144:11 | **stated** 68:16 |
| 144:14 | **sounds** 46:1 | **speaks** 44:22 | 161:16 165:5 | 75:16 |
| **six** 42:21 | 85:16 123:21 | 101:7 | 209:19,24 | **statement** |
| **slide** 132:2 | 171:7 | **special** 17:23 | 210:1 | 24:7,14 30:2 |
| 153:3 168:22 | **source** 105:23 | 49:7,11,23 | **specifics** | 84:24 86:2,8 |
| 168:22 | 142:20 | 50:4,20 51:4 | 34:22 41:15 | 86:13 110:4 |
| 181:22,24,25 | 144:19 | 51:11,21 | 89:4 | 124:20,21 |
| 218:10,11 | 155:20 156:6 | 52:15 73:19 | **specified** | 125:9 132:12 |
| **slightly** 111:12 | 165:2,9,12 | 74:1,3,20,25 | 95:21 | 142:17 |
| **small** 26:3 | 165:14 | 75:1,3,5,8 | **specify** 120:22 | 158:18,19 |
| **SNOW** 4:16 | 174:16 185:6 | 76:3,7 77:25 | **speculate** | 178:8 221:8 |
| **software** | 191:4,6,10 | 78:5,17,18 | 41:21 173:7 | **statements** |
| 194:12,15 | 203:1 204:19 | 79:2,4,11,24 | 215:10 | 10:23 19:10 |
| **somebody** | 205:1,2,19 | 85:25 179:21 | **speed** 175:11 | 48:5 108:24 |
| 39:17 45:7 | **sources** 106:1 | 199:21 | **spent** 21:2,18 | 124:15 126:6 |
| 46:18,19 | 106:4 | 200:20,21 | **spoke** 19:18 | 132:9,23,25 |
| **soon** 16:4 | **South** 4:18 | 201:9 | 146:18 | 161:11,15 |
| 123:19 | **Spanish** 16:10 | **specific** 19:20 | 150:20 | 171:21 |
| **sooner** 66:22 | 16:11,12,13 | 21:5 25:14 | 191:10 | 172:19 |
| **sorry** 11:6 | 16:15,16,21 | 25:16 33:18 | **spoken** 22:12 | 174:21 177:1 |
| 18:18 26:14 | 88:5 99:7 | 52:18 57:23 | **spreadsheet** | 177:4 182:20 |
| 36:11,21 | 103:10,18 | 59:16,21 | 213:7 | 186:25 193:8 |
| 37:23 38:24 | 104:14 | 63:18 74:4 | **Square** 2:5 | 193:11 195:3 |
| 39:16,18 | 116:20 | 76:10 79:25 | **SS** 223:2 | **states** 1:1,21 |
| 49:15 101:14 | **speak** 10:12 | 85:4 89:19 | **standard** 8:7 | 71:16 223:11 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

32

| | | | | |
|---|---|---|---|---|
| **statutes** 81:17 | 72:22 | 221:4 | 91:2,6,11,14 | **take** 14:18 |
| **stay** 93:25 | **submitted** | **Surely** 83:19 | 92:2 96:2,4 | 28:22,25 |
| **stenographi...** | 12:23 | **SURI** 88:4,8,9 | 96:16 98:10 | 47:10,14 |
| 1:22 223:20 | **subsecretary** | 88:11 | 105:21 136:8 | 72:23 83:13 |
| **step** 90:1 | 19:24 | **SUTCLIFFE** | 141:24 142:2 | 83:23 84:9 |
| **steps** 90:2 | **sufficient** 10:3 | 5:4 | 142:3 143:6 | 90:3 92:10 |
| **STEVENS** 2:9 | 94:11 | **swearing** 8:2 | 143:10,11,12 | 93:18 99:2 |
| **stipulation** 8:2 | **sufficiently** | 8:20 | 143:16,23 | 108:19 |
| 8:19 9:10,13 | 12:16 80:23 | **sweep** 61:2,10 | 144:6 147:23 | 145:18 |
| 10:1,5,10,18 | **suggesting** | 61:14,23 | 147:25 148:2 | 167:17 |
| 10:24 | 149:4 | 65:4 69:1,2 | 148:9,13 | 169:22 170:5 |
| **stipulations** | **suit** 224:7 | 69:20,23 | 175:10 | 175:7 176:2 |
| 7:25 8:7,14 | **Suite** 4:3,17,22 | 95:16 133:4 | **systems** 86:1 | 177:9 181:5 |
| 8:16 9:4,16 | **summarize** | 178:13,14,15 | 95:12 | 195:14,19 |
| **stop** 67:3 | 172:14 | 178:18,22 | | 196:7 197:22 |
| 220:2,3 | **summary** | 179:2,6,9,13 | **T** | 197:23 213:8 |
| **stopped** | 151:11 | 179:16,19 | **T** 2:8 94:17 | 221:19 |
| 123:20 | 194:22 195:7 | 180:1 181:8 | **tab** 23:2 25:21 | **taken** 47:18 |
| 206:10 | 196:17 | 182:1 199:17 | 27:13 44:2 | 56:6 65:21 |
| **stops** 183:3 | **summing** | 208:2 | 46:25 47:24 | 67:24 68:4 |
| 186:7 | 213:11 | **sweeping** | 76:12 80:4 | 80:10 94:16 |
| **stored** 88:18 | **Superiores** | 61:18 | 83:4 98:20 | 146:7 167:1 |
| **stream** 7:19 | 28:17 | **sweeps** 69:20 | 111:22 | 167:7 176:10 |
| **Street** 2:5 3:13 | **supposed** | 179:3 207:22 | 115:18 | 198:1 |
| 4:9 5:5 | 184:17 | 207:24 | 119:24 121:4 | **talk** 12:14 |
| **strike** 70:21 | **sure** 7:17 | 208:11 | 122:16 123:8 | 75:20 86:20 |
| 74:18 91:19 | 10:13 16:24 | **swept** 135:15 | 139:23 162:4 | 207:22 |
| 113:15 | 19:5,21 | 181:11 182:7 | 162:15 166:3 | **talked** 67:16 |
| 142:15 | 21:19 34:15 | 199:23 200:4 | 166:4 168:9 | 147:11 |
| 156:22 | 37:2 45:15 | 208:4,5 | 168:10 173:9 | 158:14 178:7 |
| 165:10 | 57:5 62:23 | 216:10 | 174:6 180:14 | 198:5 |
| 189:23 207:9 | 76:10 89:11 | **switch** 165:24 | 187:3,4,5,9 | **talking** 60:10 |
| 209:15 217:9 | 89:12 91:22 | **switched** | 189:6,8 | 79:10 94:24 |
| **structure** | 97:2 98:6 | 158:23 159:2 | 208:17 | 103:9 147:23 |
| 40:19 | 99:20 103:13 | **sworn** 8:24 | **Tableau** | 167:23 |
| **student** 29:6 | 107:12 | 13:9 223:17 | 194:19 | 169:16 |
| **subitems** | 110:25 | **Sylvia** 20:25 | **tabs** 103:14 | **talks** 86:10 |
| 192:18 | 112:13 | **Symphony** | 178:9 | 102:19 |
| **subject** 51:12 | 142:17 | 4:17 | **Taft** 4:8 11:24 | **tasked** 22:6 |
| 51:21 73:16 | 145:20 172:1 | **system** 12:24 | **tag** 133:18 | **tax** 54:18 65:1 |
| 161:4 167:10 | 181:23 | 57:24,25 | 204:20 | 65:3 69:24 |
| **subjective** | 186:20 190:4 | 58:2 84:20 | **tagged** 89:25 | 73:8 78:4 |
| 42:1 65:19 | 196:19 207:8 | 88:3,6,14 | 154:2 | 91:19,25 |

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

33

| | | | | |
|---|---|---|---|---|
| 118:11 | 147:15,21 | 171:15 183:6 | 96:7,12 | **thing** 221:13 |
| 121:24 126:9 | 148:9 153:7 | 187:13 | 152:5 167:11 | **things** 21:25 |
| 130:15 131:4 | 154:6,10,19 | **telling** 118:5 | 181:10 182:6 | 53:18 54:3 |
| 131:16 | 155:18 | 170:20 171:2 | 189:16 | 67:16 91:8 |
| 139:19 155:8 | 156:13 157:5 | **tells** 165:23 | 204:24 | 91:15 172:20 |
| 164:20 165:6 | 157:7,15 | **Tennessee** | 222:12,13 | **think** 8:6 9:16 |
| 165:13 | 163:2,21 | 4:18,23 | 223:19,25 | 10:13,17,21 |
| 179:22 | 164:12 | **term** 17:19 | 224:9 | 11:2 20:6 |
| 180:19 | 165:17 | 18:1,2 34:11 | **Texidor** 112:4 | 21:2 28:24 |
| 182:15 | 171:20 | 34:13 35:6 | 120:6,18 | 52:1 54:1 |
| 183:25 185:4 | 172:16 | 35:10,16,19 | 121:9,17,25 | 56:14 58:16 |
| 185:10 | 173:19 | 36:8,10,13 | 122:7 | 63:7,9,14,18 |
| 186:14 | 174:17 180:5 | 36:14,17 | **text** 26:3 | 63:22 64:1 |
| 189:14 | 182:13,25 | 51:4 73:19 | 130:19 | 65:15,17 |
| 190:13 | 185:23 | 79:2,3,4 | **texted** 123:5 | 66:11,13,19 |
| 191:23,25 | 189:21 193:2 | 129:10 | **thank** 9:1,2 | 67:8 70:17 |
| 192:14,22 | 197:2 202:2 | 138:17 139:6 | 11:4 18:11 | 71:17 74:13 |
| 194:6 197:2 | 202:9,14 | 139:10,12 | 19:4 20:13 | 75:10 80:14 |
| 202:16 203:7 | 204:6,6,16 | 146:23 147:5 | 23:6 26:10 | 80:16 83:4 |
| 203:18 | 204:22 207:2 | 201:24 | 27:12 37:4 | 83:22 84:8 |
| 204:15 206:1 | 207:15,20 | **terms** 16:21 | 47:21 78:12 | 91:5 94:7,10 |
| 206:20 | 208:4 216:4 | 45:14 138:5 | 93:23 94:12 | 95:13 97:12 |
| 211:20,25 | 217:12,21 | 139:3 158:16 | 94:20 99:13 | 107:3 109:23 |
| 214:1 215:3 | **team** 42:14 | **Terrorista** | 107:25 | 113:9 115:12 |
| 215:20 216:1 | 142:6 220:2 | 166:13 | 116:24 | 116:1 122:3 |
| 216:1,21 | **tech** 47:11 | **testified** 13:10 | 122:10 | 130:19 |
| **taxes** 17:21,22 | **technical** | 32:10 37:1 | 123:22 145:8 | 134:15,16 |
| 17:24 58:11 | 12:12 | 68:22 162:25 | 145:25 148:1 | 139:3 142:13 |
| 60:17 61:15 | **Tecnológico** | 163:19 | 157:21 | 145:14 149:3 |
| 61:16 65:14 | 28:17 | 164:15 | 163:16 173:2 | 152:25 |
| 68:12,23 | **telephones** | 172:18 | 176:15 | 153:19,20 |
| 76:6 78:14 | 7:12 | 189:10 | 181:18 | 154:14 |
| 78:21 88:12 | **TELEPHONIC** | 196:10 | 203:15 | 156:18 158:6 |
| 91:8,15,17 | 184:4 | **testify** 65:18 | 206:11 | 159:1,18 |
| 91:21 92:6 | **telephonically** | 68:1,2 | 210:20 214:8 | 163:11,12 |
| 93:9,15 | 7:11 | 159:20 167:2 | 214:25 | 166:24 167:9 |
| 106:5,7,14 | **tell** 31:10 | 177:21 | 218:23 | 167:11 172:4 |
| 106:18,20 | 33:21 69:5 | 223:17 | 219:13,14 | 172:7 174:7 |
| 107:8,15,16 | 88:1 116:10 | **testifying** | **thanks** 11:13 | 175:9 183:11 |
| 124:18,25 | 116:17,19 | 13:24 15:2 | 37:6 84:13 | 184:19 |
| 125:1,14 | 142:23 143:5 | **testimony** 6:2 | 220:24 | 185:12,14 |
| 133:14 137:9 | 164:20 165:1 | 13:21 22:21 | 221:22 | 201:4,7 |
| 141:15 | 170:7,14 | 60:19 69:9 | **thereof** 224:8 | 202:19 |

Henderson Legal Services, Inc.

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

34

203:21,24
208:18
214:15
219:22 220:6
220:7 221:2
221:10,18
**thinking** 172:1
172:3 184:2
199:15
**third** 141:19
188:6
**THOMAS** 4:10
**thomas.curt...**
4:11
**thought** 84:2
181:22
**thousands**
191:18,18
194:9,9
**three** 9:4 28:12
95:7 107:15
107:20
**three-quarters**
81:22 83:14
**Thursday**
219:5 220:6
220:14,18
221:3,20
**Thursday's**
221:1
**Tim** 94:7 218:3
220:11,12,24
**time** 7:8 10:20
21:1,5,17
30:6 37:19
52:14 55:5
56:1 57:3,15
58:3,13
60:21 61:5
61:12 63:3
77:12 78:22
79:7 84:3
93:9,19

95:21 107:3
121:2 136:8
137:14,25
138:7 148:5
153:5,15,22
155:23
156:11 159:7
159:21
169:22,23
173:5,25
175:2 180:20
182:11,22
184:3 185:9
185:20
195:10
207:19
218:24
220:24
221:10
**times** 2:5
11:22 31:19
105:5,6,7,11
**Timothy** 1:18
6:2 7:4 13:8
13:16 223:9
**title** 1:4,11
152:13
**titled** 151:12
**to-present**
218:9
**to-wit** 223:8
**today** 7:23
11:3 12:1
13:23 14:7
14:21 15:2,6
15:11,14,25
22:16,20
42:23,25
70:21,25
71:5,9,11,12
71:22 72:6
72:16 87:7
115:11

140:19 143:4
144:14 202:3
209:4 217:8
218:24
**today's** 7:7
221:24
**told** 175:16
196:1
**toll** 17:21
81:24 82:4
82:11,19,25
106:16
141:14
**tolls** 141:14
150:14
**ton** 46:22
**Tony** 176:5
**top** 20:11 43:5
95:13 104:18
110:12
117:10 128:4
144:22 166:8
**topics** 65:16
65:25 177:20
178:1 218:4
**total** 21:3
212:12 213:9
213:11
**touch** 82:4,11
219:19
**touched** 82:25
**Tourism** 15:12
20:16,19
**trace** 199:5
205:7,18
**track** 64:9,12
64:15,18,19
64:21 65:1,3
65:7 91:18
205:15
**tracking** 89:20
190:21
**tracks** 65:13

68:11
**training** 29:16
**trans-** 196:25
**transaction**
92:13 95:15
124:21 126:6
127:23
**transactional**
73:1 92:11
**transactions**
72:18 89:19
89:21,25
90:3 125:3,3
173:1 195:10
**transcript** 32:4
32:7,8 36:19
36:24 37:3
109:24
221:11
223:24
**transcription**
222:13
223:23
**transfer** 19:10
61:18,19,20
61:22,23
68:24 69:10
69:16,22
77:12 90:16
90:18 118:10
118:23 119:6
121:8,23
124:15
125:12
134:22
135:17,21,24
153:1,5
154:18
155:13,18,21
155:23 156:9
159:5,5
171:22
182:21,22

187:1 188:7
188:10,11
190:17,18,20
191:2,15
192:5,11,21
193:6,11
194:2 195:4
195:6 196:16
196:25
197:13,14,19
200:9 202:15
202:16,22,24
203:2,8,19
203:23 204:1
204:8,17
218:21,25
219:11
**transferred**
62:8 76:19
77:3 125:15
126:10 134:1
137:10
153:16,23
154:5,10,22
160:3 163:2
163:21
165:12 179:9
182:13,18
183:15 186:2
186:11
189:21
190:13
192:15,23
200:15,17
201:3,10
203:4 204:21
**transfers** 18:5
69:2 110:15
110:23 111:1
111:6,16
112:8,17,22
113:21
121:15 122:5

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I                                    April 21, 2020

35

122:11 125:6
125:20,22,25
126:1,3
164:2,4,6
171:18,20
172:8,16
173:17,18
174:14,17
183:13,16,20
183:21,24
185:3,9,16
187:18 188:1
188:17
189:14
190:21
191:16,19
192:13 193:1
193:7,12
194:6,9
197:1,15,16
205:25
206:19,25
207:1,13,14
207:18,18
208:14
**translation**
99:4,10
103:7,19
113:8 116:4
116:14
162:13
187:14
**transmittal**
67:14
**Transportati...**
15:8 17:17
120:12 149:6
152:11
**Treasurers**
46:11
**Treasury**
19:25 20:1
45:16,23

48:4,23
71:15 75:24
86:1 89:2,11
89:15,18
90:6,9,11,16
100:17 101:4
101:11,24
102:2,12,20
103:15 104:6
109:2 113:3
128:19,22
140:10,11
142:10,11
144:3 153:6
153:16,23
187:19 188:1
188:8 209:18
209:24 210:2
**Treasury's**
84:20 118:11
118:17,23
**treat** 12:14
**trial** 13:20
**TRINIDAD**
5:19
**trouble** 39:13
**true** 73:12 76:4
105:10
133:12
157:10,12
163:25
181:13 202:1
222:12
223:24
**Trustees**
27:11
**trusty** 208:24
**truth** 223:17
223:18,18
**try** 12:13 14:10
14:12,16
25:4 60:15
67:9 106:25

146:21 151:9
162:19
165:24
172:14
173:15 174:7
174:10 175:1
175:9,13
203:13
**trying** 63:23
66:21 67:12
67:16 69:17
116:12
162:15 171:8
179:24
**TSA** 31:13,19
32:25 45:17
45:24 46:5,8
46:10 48:13
48:22 53:22
54:1,9,12
56:8,8,22,25
60:8,13,23
61:18 62:8
62:13,16
68:24 69:2
69:11,20
70:18 74:23
74:25 75:2
75:21 76:20
77:5,17 78:3
112:8,17
121:24
125:16,20,21
125:23
126:16
132:16
137:13 160:4
178:7,9,12
178:13,15,17
178:22 179:9
181:8 182:1
182:8,9
185:7 192:2

193:25 198:6
198:7,16,21
199:17,20,23
200:4,17
201:5 204:20
207:23,25
208:2,5,8,10
208:12,15,15
216:14,16,18
217:23
**TSA's** 137:15
179:3
**turn** 7:17 48:8
77:20 80:8
83:7 95:5,5
131:24 145:6
157:22 188:5
189:18
219:22
**turning** 148:12
186:5
**two** 28:24 33:7
98:18 107:2
115:24
117:15 141:8
**type** 50:7
51:18 67:17
70:18 110:19
110:21
134:20
150:22 151:5
193:18
**types** 25:17
34:20 35:12
64:2,22 87:5
97:15 151:3
200:2
**typewriting**
223:22
**typically** 37:14
90:16 97:4

─── U ───

**ultimate** 58:21
**uncertain**
208:1
**unclear** 149:19
151:7
**undergradu...**
28:5
**underneath**
119:12
**understand**
13:23 14:1,9
14:21 15:23
16:15,20
17:25 18:2,8
18:9 25:7
34:14,16,19
40:18 48:19
49:20,23
54:19 57:5
60:14 63:24
67:12,17
69:17 98:17
99:7 100:22
105:14
113:13
136:19
138:12
146:23 147:9
159:16 164:1
168:5 195:5
196:15
210:12
213:20
**understandi...**
7:9 10:2 24:6
36:7,9,13,14
36:16 37:11
54:15 65:20
68:3 73:18
73:20,22
79:1 105:16
111:5,8,10
111:14

Henderson Legal Services, Inc.

138:16 139:5
139:9,12
147:6 150:18
161:23
166:17 182:9
182:14,17
200:23
217:15,17
**understood**
16:8,9 39:11
39:14,22
55:10
**undetermined**
223:10
**unfamiliar**
201:24
**Unidad** 166:13
**UNIDENTIFI...**
52:6,23
80:14 87:12
87:19 122:22
123:3 149:17
151:21
156:17
166:21
188:21
193:14 197:5
198:11,23
207:3 214:5
**unified** 88:6
**unit** 115:10
**United** 1:1,20
223:11
**University**
28:6
**unmute** 10:11
**unreasonable**
197:18
**UNSECURED**
5:9
**unsure** 8:15
110:12
144:19

**update** 215:15
**updated** 215:7
**use** 17:19 18:1
18:2,3 50:3
59:9 64:17
64:18 72:17
74:4 124:12
125:2,6
126:8 129:9
140:5 156:4
164:11
204:18
205:18
**uses** 49:25
50:3 52:18
64:15 190:4
**usually** 60:4
150:23 164:9
**utilized** 194:17

---
**V**
---

**VALDÉS** 5:17
**valid** 11:9
**validate**
182:21
**value** 86:11
**various** 19:17
19:19 21:9
30:3,18
31:11,13,19
61:15 89:16
93:9 103:1
105:11
129:20
161:14
174:15
178:12
**vehicle** 17:25
106:9 107:6
107:16 109:1
130:15 131:4
**verbally** 14:13
**version** 103:10

103:21,23
104:14
116:20
**versus** 199:1
**video** 7:19 8:3
8:21 14:15
94:5,8
122:20 145:4
145:6,10
219:23
221:25
**videographer**
5:25 7:1,5
14:18 47:16
47:19 94:14
94:18 146:5
146:8 176:8
176:11
184:13,14
197:24 198:2
221:19,23
**Videotaped**
1:18
**viewing** 56:23
**virtually** 1:19
223:9
**voice** 163:13
184:4
**VOL** 1:16
**voucher**
110:11,19,21
117:12,17,23
118:3,7,15
118:22 126:5
126:25 127:7
127:14 150:6
150:8,10,20
150:22
155:22,24
164:1,10
165:8,11
**vouchers**
110:14 114:4

114:5,12,13
121:23 122:6
124:15
125:11 127:2
127:4,6,11
127:12
150:16 151:3
151:3,6
156:2,5
163:4,23
164:3,14,17
171:22,23,24
172:5,19,22
173:1,4
174:21 187:1
194:1

---
**W**
---

**W** 4:19 5:5
**wait** 14:15,16
94:5 175:9
175:13
**waiting** 66:18
123:8 174:3
**waived** 224:3
**want** 36:22
37:2 59:8
65:6 83:20
84:1,3 93:19
96:25 102:7
102:8,8
107:22
139:17
167:20,20
168:1 175:1
177:18,23
187:14
195:16,17
197:22
205:22
218:23
219:18 221:7
**wanted** 45:14

70:19,23
72:5 93:18
116:5 123:5
217:8
**wants** 64:9
103:23
**Washington**
3:14
**wasn't** 65:18
75:17 119:21
142:11
200:19
**waste** 169:21
175:2
**way** 36:5,5
41:21 42:2,4
43:17 45:10
49:3 50:11
50:12 51:7
52:5,11 53:2
53:9 56:13
58:17 60:1
64:14,17,18
64:25 71:2,5
71:21,24
80:2 82:16
83:14 91:22
98:11,13
111:18
112:14,24,25
115:15
118:21
125:17
133:23
134:13 137:4
137:5 141:19
143:18,20,22
146:21
157:11
159:17 162:3
173:7 175:11
180:1 183:19
183:23 185:2

CONFIDENTIAL

Ahlberg, Timothy H. - Vol. I

April 21, 2020

37

185:15 189:2
189:4 200:7
200:13,25
215:11 224:6
224:7
**wdenker@m...**
2:18
**we'll** 93:24
94:1 108:6
115:18
119:25
146:12 162:5
168:11 187:5
196:7 197:23
219:6 221:3
221:20
**we're** 16:25
45:15 56:23
60:9 67:12
123:8 130:1
147:23 166:3
168:4 169:24
174:3,7
**we've** 8:6,7 9:4
221:10
**web** 145:12
**website** 33:2
**week** 33:2
**weekly** 33:5
**Weil** 3:3 5:22
5:24
**Welcome** 7:3
**went** 176:8
191:24
**weren't** 67:24
196:19
**WESTERMAN**
2:24
**WHEREOF**
224:9
**whichever**
103:23
**white** 132:13

184:21
**Whitelaw** 5:24
**Wickersham**
4:8 11:24
**William** 11:23
**willing** 67:7
168:2 169:24
**wish** 219:17
**withdrawal**
142:2
**withdrawals**
87:10,17,23
141:20,24
142:14,18,22
143:7 144:4
144:9,11,16
150:11,14,16
150:19
151:13
210:15,18,19
210:25 212:5
**withdrawn**
118:17
**withheld**
188:12,17,19
**witness** 7:13
8:2,20,24,25
12:9 13:2,6
13:13 24:9
24:22 25:3
25:13 31:18
32:1,9,18
36:25 38:1
38:18 39:8
39:18 40:6
41:20 42:16
43:16,24
44:23 45:9
45:20 46:16
49:3,19 50:2
50:23 51:6
51:15 52:1,8
53:1,25 55:1

59:25 60:25
62:2,11 63:6
63:11,17
64:1 65:18
67:24 68:4
68:15 71:24
72:9 74:9
75:15,17
76:25 77:10
78:8,10,13
82:7,15
85:20 86:24
87:21 89:10
91:10 92:9
93:3 94:3,9
96:1,21
97:12 100:12
100:19
101:21 102:7
102:15,22
103:5,17,20
104:8 105:1
105:10 106:1
109:8 110:25
111:18
112:20
113:23 114:8
116:24
117:20 122:3
123:2 124:10
133:17 134:5
134:25
135:23 136:7
136:19
137:23
138:20 139:2
143:14
145:14,21,25
148:18
149:19
154:14 155:3
156:18
157:18 159:1

160:19 163:9
163:11 164:8
165:1 167:2
168:21
169:19,24
171:10 172:7
173:22 174:3
177:21 178:1
179:8 180:7
181:2 184:9
184:17,20
186:1 188:23
193:15
194:12 197:7
198:24 200:1
202:5 204:10
207:17 210:6
210:23
211:12
212:21
213:16 214:9
215:10
216:25 217:5
217:14 219:3
219:13 220:9
220:16
223:16,20,21
223:25
**witness's**
36:24 169:22
**woman** 20:25
**word** 17:20
74:13 83:15
87:23 140:5
141:3
**words** 18:3
23:23 45:16
134:21
**work** 29:18
30:13,23
31:1 33:5,18
35:3 37:13
37:16 38:11

38:12 40:25
41:4 54:17
56:7 62:4
63:12 73:21
73:23,24
74:22 79:5
86:15 95:11
103:20
129:10
140:10
145:19
**worked** 20:19
22:9 30:18
56:10
**working** 84:3
174:25
175:16
**works** 20:1,9
26:10 93:21
95:6 145:7
**wouldn't** 37:15
58:24 73:14
153:17 191:5
**written** 16:16
86:16,19

---

**X**

**X** 1:3,9,16
56:25

---

**Y**

**y** 28:17 56:25
**Yards** 2:15
**yeah** 45:21
59:1 71:2
98:5 108:14
112:20
122:13 148:3
163:9,12
164:8 166:24
174:5 175:3
177:17
208:18 221:2
**year** 108:13

141:5,9
210:7
**years** 33:7
100:5 213:12
**yes-or-no**
171:7 197:4
**yesterday** 8:19
**York** 2:6,6,15
2:15 3:5,5
4:9,9 5:6,6
5:12,12
**you-all** 175:17
175:23
**Young** 99:25
100:10,16
101:16,18
102:13 109:3

---
**Z**
---

**Z** 56:25
**ZACHARY**
5:13
**zacharyzwill...**
5:14
**zeroes** 117:25
**zoning** 160:11
**zooming**
179:24
**ZOUAIRABA...**
5:19
**ZWILLINGER**
5:13

---
**0**
---

**0006** 118:12
134:2,22
137:10,12
139:20 153:1
153:6,16,23
154:5,11,18
154:22 155:8
155:15,18,24
188:1,7
190:6,14,25

191:1,2
192:22 193:2
193:19
**0028472**
104:17
**006** 135:17
160:4
**00918** 4:3 5:18
**02110-2600**
2:11
**0660000**
105:18
**084-003064**
224:17

---
**1**
---

**1** 6:6 23:2,3
25:21 83:5
83:22 84:4,9
93:18 107:2
107:7 113:17
130:10 141:8
144:21
149:25 184:7
184:16,22
**1:30** 93:20
**1:35** 93:20,25
94:2
**10** 6:15 107:23
111:22,23
113:1 115:12
**10-minute**
145:18,23
**10:37** 47:17
**10:45** 47:20
**10001-2163**
2:15
**10019** 5:6
**10036-8299**
2:6
**10153-0119**
3:5
**10166** 5:12

**10281** 4:9
**1029** 108:6
**108** 6:14
**11** 6:16 115:18
115:19 121:5
**111** 6:15
**115** 6:16
**12** 6:17 119:25
120:1
**12:05** 94:15
**12:37** 94:19
**120** 6:17
**122** 6:18
**13** 6:3,18
46:25 47:24
78:14 79:13
114:3 122:16
122:17 124:1
130:11
152:21
168:10,11
180:15 181:6
189:9
**13th** 83:11
**14** 6:19 139:24
140:1,13
144:16
146:14
148:13 149:2
150:5 156:12
168:9
**140** 6:19
**15** 6:20 108:13
117:24 141:6
141:10
157:19 160:2
162:5,6
166:3,5
189:19
**15-'16** 210:8
**150** 4:18
**1500021**
117:25

**157** 107:9,23
**16** 6:21 173:10
173:11 177:7
187:6
**1600** 4:17
**162** 6:20
**1625** 3:13
**17** 1:6,12 6:22
187:6,7,10
187:13
**173** 6:21
**17th** 3:21
**18** 6:23 176:16
187:6,10
208:18,19,23
**187** 6:22
**19** 80:4

---
**2**
---

**2** 6:7 25:21,22
26:1 27:13
80:8 102:25
103:9 105:5
105:6 141:9
142:8 144:16
144:21
149:25
156:12
**2.7** 214:1,12
214:18
**2:07** 146:6
**2:53** 146:9
**20** 21:6,6,6
212:8
**200** 4:9 5:12
**20006** 3:14
**2014** 108:13
141:5,10
**2015** 132:1,1
133:12,12
135:9,9
136:3,3,15
136:15

152:25,25
157:4,4,23
157:24 160:1
160:1,3,8,8
160:24,24,25
160:25
166:20,20
168:15
180:21 188:7
189:19
192:20
193:20
211:10,21,24
212:9 213:3
**2016** 100:4,8
168:15 170:6
170:6,18,18
172:17,18
173:6,6,16
173:17
174:13,14
181:7,16,23
183:3 186:6
186:6 189:12
189:19
190:15
192:20
193:12,20
194:3 195:12
196:21,23
197:17
205:24
206:14
218:12
**2019** 211:4,10
211:21,24
212:9,13,18
213:4,25
215:4
**202.383.5300**
3:14
**2020** 1:25 7:7
83:11 222:3

223:8 224:11
**207** 151:9
**208** 6:23
**21** 7:7
**212.310.8000**
3:5
**212.318.6000**
5:13
**212.504.6000**
4:10
**212.506.5000**
5:6
**212.530.5000**
2:16
**212.969.3000**
2:6
**21st** 1:24
223:8
**22nd** 224:11
**23** 6:6 108:21
119:25 222:3
**25** 6:7 108:19
108:20
115:18 121:4
**250** 4:2
**25th** 108:20
**26th** 177:8
**27** 6:8 109:18
109:24 117:5
117:6 135:14
187:4,5,9
**270** 5:18
**278** 57:20,21
57:22,23
58:5,6,7,15
60:11,18,22
61:13,25
62:7,17
63:15,24
64:14,24
65:14 68:13
69:5,9,15
70:2,7 71:22

72:2,2,7,10
72:15 73:3,5
73:9,14
74:15 85:10
85:24 86:17
86:21 87:10
87:17 88:24
89:7,22 90:1
90:4,13,15
92:11 94:25
95:12,15,24
96:19 97:10
97:17,24
98:4,15
103:1,14
104:9,23
105:1,11,15
107:5 109:2
109:5,13,22
110:2,23
111:7,16
112:9,18
118:18,19
121:18
122:11
127:17,21,25
128:2,5
129:13,18
133:13,17,22
134:3,12,23
135:1,10,13
135:15 136:4
136:9,16
137:20
138:25 139:7
139:13,21
140:25 141:5
141:9 147:13
148:4,16,20
148:25 149:7
150:11
151:20 152:2
152:8,11,15

153:7,9,11
153:17,25
154:3,12
155:5,21,25
156:15,25
157:6,8,16
163:4,23
164:4,9,15
164:17,19
165:5,9,11
165:16,20
171:25 172:9
172:24 173:5
173:20,24
179:15,18
182:14 183:7
183:21
185:17
199:22 203:2
210:7,13
211:9 212:2
212:15 213:3
214:2 215:7
**278-0660000**
104:19
**28** 116:23
117:2,4
118:6 120:4
**287** 109:18,22
**29** 117:4

___

**3** 6:8 27:14,15
48:8 55:20
105:6 106:18
114:3 168:22
**3:44** 176:9
**3:53** 176:12
**30** 21:7 130:17
201:23
**30-year** 34:5,7
**30/31** 202:1,7
**31** 130:17

201:23
**32** 187:3
208:17
**3283-LTS** 1:6
**33** 162:19
165:22,24
166:3,4
**3466** 158:23
159:6 161:11
161:17 166:8
**3488** 179:20
180:12,13,17
180:23
**3567-LTS** 1:12
**36** 162:5,15
165:22
**37** 98:20
**37201** 4:18
**38** 44:12
**38119** 4:23
**39** 23:2 83:4
**3rd** 4:18

___

**4** 6:9 44:3,4
102:25 103:9
105:5,7
144:22 150:3
168:22 173:9
174:5,6
189:7
**4:30** 197:25
**4:45** 198:3
**41st** 2:5
**42** 122:16
123:8 168:10
180:14 189:8
**4276** 155:15
155:19,24
156:9 158:23
159:5 160:5
**44** 6:9 7:10
111:22

**466** 116:8,11
**467** 121:7
**47** 6:10
**475** 43:7,10,13
44:16
**49** 139:24
168:9

___
**5**

**5** 6:10 46:25
47:1,14,25
55:20 76:12
83:7,12
175:8 176:2
197:23
**5:24** 221:24
222:2
**500** 4:22
**51** 5:5
**5191** 133:2,19
133:22
134:11,22
135:2,6,13
135:16 137:9
138:6 154:2
154:11,18
155:5,11
157:9 165:3
165:15
178:22 181:8
181:11 182:1
182:7,16,18
182:23,24
183:15
185:20 191:7
200:3,9,15
200:17 201:3
201:11 205:3
205:5,21
**52nd** 5:5
**55** 2:15
**59** 181:11

___
**6**

Ahlberg, Timothy H. - Vol. I                                        April 21, 2020

| | |
|---|---|
| **6** 6:11 7:14 | **9** 6:14 108:6,7 |
| 44:2 76:13 | 150:5 |
| 76:14 77:15 | **9:30** 1:24 |
| 79:10 103:6 | 222:3 |
| 103:19 | **9:42** 7:8 |
| 118:10 174:6 | **90** 41:3,8 |
| **6048** 189:25 | **900** 4:3 |
| 190:9,14 | **901.680.7200** |
| 191:2 192:23 | 4:23 |
| 193:1 | **92660** 3:21 |
| **6075** 4:22 | **94** 197:16 |
| **610** 3:20 | **9458** 179:4 |
| **615.651.6700** | 182:7,18,23 |
| 4:19 | 183:3,7,14 |
| **617.526.9600** | 183:16,24 |
| 2:11 | 185:3,9,11 |
| **660000** 86:11 | 185:16,22,23 |
| | 186:3 189:13 |
| **7** | 191:12,17 |
| **7** 6:12 77:21 | 192:11 |
| 77:23 80:5 | 193:12 194:2 |
| 103:6,19 | 197:2,8,16 |
| **735** 110:11,19 | 206:1,16,25 |
| 114:4,11 | 207:13 |
| 117:11,12,14 | **9478** 181:12 |
| 127:2,6,11 | **949.823.6900** |
| 150:20 151:4 | 3:22 |
| **76** 6:11 | **98** 6:13 |
| **767** 3:4 | **9857** 170:19 |
| **78** 121:16 | 186:8,9,12 |
| **787.705.2171** | **9874** 156:9 |
| 4:4 | |
| **787.759.9292** | |
| 5:19 | |
| | |
| **8** | |
| **8** 6:13 98:20 | |
| 98:21 144:22 | |
| 150:2,4 | |
| **80** 6:12 | |
| **800,000** 41:14 | |
| 41:18 | |
| | |
| **8** | |