# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>                          Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>                          Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**REPLY TO OVERSIGHT BOARD'S RESPONSE TO INFORMATIVE MOTION OF HTA MOVANTS SUBMITTING 2002 HTA BONDS' CLOSING TRANSCRIPT AND RELATED DOCUMENTATION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company (collectively, "Movants") respectfully submit this reply to FOMB's "response" (ECF No. 841 in Case No. 17-3567-LTS) (the "Response" or "R.").[2]

**ARGUMENT**

1. At the June 4, 2020 lift stay preliminary hearing and following a colloquy with the Court, Movants' counsel confirmed the existence of resolutions approving the 2002 HTA bond transaction. Movants offered to provide the Court with copies of such resolutions and the Court asked Movants to submit copies of resolutions approving the 2002 HTA bond transaction, including the supplemental 2002 Security Agreement, through an informative motion (ECF No. 13377, the "Informative Motion"). After reviewing, FOMB was to file its objections, if any. 6/4/20 Hearing Tr. at 144:13-15. Rather than lodging an "objection" to the submission of the resolutions, however, FOMB responded with a five page brief, raising new arguments about the significance of the resolutions. The Response is an unauthorized sur-sur-sur-reply, exceeding the scope of the "objection" that this Court permitted, and should therefore not be considered. Nonetheless, to the extent the Court considers FOMB's additional arguments, Movants will briefly respond to them.

2. FOMB contends that the 2002 Security Agreement was unauthorized because, in FOMB's view, the Enabling Act requires the adoption of a resolution approving a

---

[2] Unless otherwise indicated, references to ECF numbers in this reply refer to the docket in Case No. 17-3283-LTS. Capitalized terms used, but not otherwise defined, herein shall have the meanings given to them in Movants' stay relief motion (ECF No. 10102) and/or reply (ECF Nos. 12994, 12996, "Reply") in support of the stay relief motion. FOMB's surreply (ECF No. 13157) is referred to herein as "SR", and Movants' response (ECF No. 13223) to FOMB's surreply is referred to herein as "SRR". FOMB appears to have filed the Response only in HTA's Title III case (Case No. 17-3567-LTS) and not in the Commonwealth's Title III case (Case No. 17-3283-LTS), for which reason the Response does not constitute part of the record in the Commonwealth's Title III case and should have no bearing on any relief requested in the Commonwealth's Title III case.

security agreement. The Enabling Act says no such thing. Section 2012 of the Enabling Act merely states that HTA "*may*" issue bonds by a resolution and that any resolution "authorizing any bonds *may*" contain provisions, including negative covenants, amortization provisions, and pledges. 9 L.P.R.A. § 2012 (emphasis added).[3] Section 2012 does not provide that any grant of a security interest "*shall* be" or "*must* be" authorized by resolution, much less that any security agreement or other ancillary agreement securing such bonds must be authorized by resolution. Indeed, other provisions of the Enabling Act already grant HTA the power to "secure repayment of bonds" through a revenue pledge or any other lien, and to "make contracts and to execute all instruments necessary or incidental in the exercise of any of its powers." *Id.* § 2004(h), (l). Here, HTA exercised the power that it already had. Nothing more was required under the Enabling Act.

3. Based on the false premise that a resolution was required, FOMB then asserts that the 2002 Security Agreement is unauthorized under the Enabling Act, because Resolution 2002-04 "does not provide for expanding the collateral" and because Resolution 2002-04 does not expressly authorize the Executive Director to execute the 2002 Security Agreement. R. ¶ 1. This too is incorrect. Multiple resolutions in the 2002 closing binder authorized the 2002 bond closing documents and the terms of the Bonds, and expressly state that the revenues were pledged to secure the Bonds. *See, e.g.*, Informative Motion, Ex. A (Resolution 2002-04 §§ 3-5) (approving the terms of the bonds, including for amortization and redemption); *id.* § 6 (approving forms of bonds, which expressly state that revenues were pledged to secure the bonds); *id.* Ex. A ("the moneys referred to in clauses (b),(c), and . . . (d) *are pledged to the extent required"* to pay principal, interest, and premiums (if any) on the bonds); *id.* § 18 (authorizing the officials of HTA

---

[3] These provisions merely contain discretionary, but not mandatory, language. *See Haig v. Agee*, 453 U.S. 280, n. 26 (1981) (noting the distinction between "may" and "shall").

to take all actions needed to carry out the Bonds and Bond Resolutions); *see also* Resolution 7736 ("the form of the issues of the Bonds . . . ***and all other essential factors of the bonds is hereby approved***") (emphasis added). The 2002 Security Agreement—which FOMB conveniently ignores mentioning is at Tab 57 in the 2002 closing binder[4]—was thus squarely authorized. It pledges the revenues and was an "essential factor of the bonds" expressly approved by Resolution 2002-04. Further, Resolution 2002-04 explicitly vests with the Executive Director the power to "effect any amendments and supplements to this Resolution as he shall determine are necessary or appropriate." Informative Motion, Ex. A. (Resolution 2002-04 § 20). Thus, even if the Executive Director had not otherwise had the authority to execute the 2002 Security Agreement (which he did), Resolution 2002-04 granted him that authority.[5]

        4. FOMB's assertions that the 2002 Security Agreement could not "expand" the bondholders' collateral beyond the Sinking and Revenue Funds (Response ¶¶ 1, 2) are legally unsound and, in any event, assume facts at odds with the record before the Court. Not only is the collateral in the 1968 and 1998 Resolutions *not* limited to those Funds, but, as Movants previously disclosed, HTA has also adopted supplemental resolutions that explicitly pledge "all" and the "full amount" of the proceeds of excise taxes and tolls. *See* Reply (ECF No. 12994) ¶ 44, Natbony

---

[4] *See* Informative Motion, Ex. A at 5.

[5] FOMB asserts a series of new arguments concerning the scope of the Executive Director's powers. These arguments would properly be considered in a merits proceeding, not in the context of this lift-stay proceeding. In any event, FOMB's arguments are, once again, misplaced. FOMB argues that the 2002 resolutions did not specifically reference the 2002 Security Agreement, which therefore "is ineffective." R. ¶ 1 n. 6; *id.* ¶ 4. However, the resolutions approved the Bonds, related documentation, "and all other essential factors", and Resolution 2002-04 explicitly delegated to the Executive Director the power to "effect any amendments and supplements to this Resolution as he shall determine are necessary or appropriate." Resolution 2002-04 § 20; Resolution 7736. FOMB's new arguments concerning whether, as a factual matter, certain powers were delegated to the Executive Director are simply not issues that should be addressed in the context of a preliminary lift stay hearing—especially without the benefit of complete discovery. Notably, FOMB identifies no documents establishing that HTA's Board was first required to specifically approve individual ancillary documents, including all of the documents identified in Resolution 2002-04, before such documents could be signed by the Executive Director.

Reply Decl. Exs. 54, 55 (ECF No. 13004). Notably, there isn't even a reference in those supplemental resolutions to accounts held by the fiscal agent or monies on deposit in such accounts.[6] The 2002 Security Agreement is entirely consistent with the scope of the collateral offered to the bondholders in the Resolutions and supplemental resolutions—all Revenues were pledged to secure the Bonds, not merely monies deposited with the fiscal agent. Resolution 68-18 § 601 (ECF No. 10107-2); Resolution 98-08 (ECF No. 13004-55); Resolution 83-01 (ECF No. 13004-54). The supplemental resolutions contained no requirement that the excise taxes be received by HTA: they pledged the "full amount of the proceeds" of the excise taxes, not merely what HTA received. *E.g.,* Resolution 83-01 (ECF No. 13004-54).

5. Moreover, as Movants already articulated in prior briefing and at the June 4, 2020 preliminary hearing, HTA *is* receiving the excise taxes as a factual matter,[7] including when such excise taxes are covered into HTA-specific sub-accounts of Fund 278 constituting a "special deposit in the name and for the benefit of HTA."[8] 13 L.P.R.A. § 31751(a)(1)(D) (Natbony Decl. Ex. E, ECF No. 10107); 9 L.P.R.A. § 5681; *see also* 9 L.P.R.A. § 2021. FOMB's arguments to the contrary are mere fact disputes that do not undermine the "colorable claim" Movants have shown.

---

[6] This also forecloses FOMB's arguments that the collateral is properly characterized as a "deposit account" (as defined in Article 9 of the UCC), because the collateral plainly is identified in the supplemental resolutions (as in the 1968 and 1998 Resolutions) as the Revenues, not just accounts or monies deposited with the Fiscal Agent. Furthermore, the "Puerto Rico Highway and Transportation Authority Transportation Revenue Bonds Interest and Sinking Fund" and "Puerto Rico Highway and Transportation Authority Transportation Revenue Fund" referenced in the 2002 Security Agreement are themselves not deposit accounts, but instead are expressly identified in the 1998 Resolution as "special funds." Natbony Decl. Ex. D (ECF No. 10107) § 401; *see also, e.g.*, SRR (ECF No. 13223) n. 27 (describing treatment of special funds under municipal finance law).

[7] FOMB claims that "Movants do not claim a security interest in HTA's rights, if any, to receive the HTA Allocable Revenues." R. ¶ 3. Movants did claim that security interest (which is supported by the underlying documents), and indeed, the UCC financing statements accurately identify the collateral as HTA's "right, title, and interest" in the Revenues. Natbony Decl. Ex. N (ECF No. 10107); *see also, e.g.*, Reply (ECF No. 12994) ¶ 5; Tr. of Hearing, at 142:15-19.

[8] *See, e.g.*, Natbony Reply Decl. Ex. 28 (ECF No. 13004) (Treasury letter to HTA's auditors referring to the Fund 278 "accounts that the Authority [*i.e.* HTA] maintains in this Department.").

6. Finally, FOMB's Response raises new factual issues that are beyond the scope of the preliminary hearing and that pertain to governance issues at HTA, including the scope of the Executive Director's powers. These are material issues of disputed fact that should be heard and decided by a court unconstrained by Section 305 and consistent with due process. This is a preliminary hearing on a lift stay motion, which does not adjudicate the validity of liens, with only very limited and narrow discovery permitted. *See, e.g. Grella v. Salem Five Cent. Sav. Bank*, 42 F.3d 26, 32-33 (1st Cir. 1994); *Matter of Vitreous Steel Products*, 911 F.2d 1223 (7th Cir. 1990) ("[A] hearing on a motion to lift the automatic stay under § 362(d) is limited in scope. ***Questions of the validity of liens are not generally at issue in a § 362 hearing***, but only whether there is a *colorable* claim of a lien on property of the estate."). Movants established that they have a colorable claim to the toll revenues and excise taxes. To the extent that FOMB's arguments in the Response have any relevance (and they do not), these issues are more appropriately addressed in the context of a final hearing, when discovery is completed and following additional briefing.

| | |
|---|---|
| Dated  New York, New York<br>June 10, 2020 | Respectfully submitted, |
| **CASELLAS ALCOVER & BURGOS P.S.C.** | **CADWALADER, WICKERSHAM & TAFT LLP** |
| By: */s/ Heriberto Burgos Pérez*<br>  Heriberto Burgos Pérez<br>  USDC-PR 204809<br>  Ricardo F. Casellas-Sánchez<br>  USDC-PR 203114<br>  Diana Pérez-Seda<br>  USDC-PR 232014<br>  P.O. Box 364924<br>  San Juan, PR 00936-4924<br>  Telephone: (787) 756-1400<br>  Facsimile: (787) 756-1401<br>  Email: hburgos@cabprlaw.com<br>     rcasellas@cabprlaw.com<br>     dperez@cabprlaw.com<br><br>*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | By: */s/ Mark C. Ellenberg*<br>  Howard R. Hawkins, Jr.*<br>  Mark C. Ellenberg*<br>  William J. Natbony*<br>  Ellen M. Halstead*<br>  Thomas J. Curtin*<br>  Casey J. Servais*<br>  200 Liberty Street<br>  New York, NY 10281<br>  Telephone: (212) 504-6000<br>  Facsimile: (212) 504-6666<br>  Email: howard.hawkins@cwt.com<br>     mark.ellenberg@cwt.com<br>     bill.natbony@cwt.com<br>     ellen.halstead@cwt.com<br>     thomas.curtin@cwt.com<br>     casey.servais@cwt.com<br><br>*Admitted pro hac vice<br><br>*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

-2-

| | |
|---|---|
| **ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC** | **WEIL, GOTSHAL & MANGES LLP** |
| By:/s/ *Eric Perez-Ochoa*<br>　Eric Pérez-Ochoa<br>　USDC-PR No. 206,314<br>　E-mail:　epo@amgprlaw.com | By:/s/ *Robert Berezin*<br>　Jonathan Polkes\*<br>　Gregory Silbert\*<br>　Robert Berezin\*<br>　Kelly Diblasi\*<br>　Gabriel A. Morgan\*<br>　767 Fifth Avenue<br>　New York, New York 10153<br>　Tel.:　(212) 310-8000<br>　Fax:　(212) 310-8007<br>　Email:　jonathan.polkes@weil.com<br>　　　gregory.silbert@weil.com<br>　　　robert.berezin@weil.com<br>　　　kelly.diblasi@weil.com<br>　　　gabriel.morgan@weil.com |
| By:*/s/Luis A. Oliver-Fraticelli*<br>　Luis A. Oliver-Fraticelli<br>　USDC-PR NO. 209,204<br>　E-mail:　loliver@amgprlaw.com<br><br>　208 Ponce de Leon Ave., Suite 1600<br>　San Juan, PR 00936<br>　Tel.:　(787) 756-9000<br>　Fax:　(787) 756-9010 | |
| *Attorneys for National Public Finance Guarantee Corp.* | \* admitted *pro hac vice*<br><br>*Attorneys for National Public Finance Guarantee Corp.* |

-3-

| **FERRAIUOLI LLC** | **MILBANK LLP** |
|---|---|
| By:*/s/ Roberto Cámara-Fuertes*<br>    ROBERTO CÁMARA-FUERTES<br>    USDC-PR NO. 219,002<br>    E-mail:  rcamara@ferraiuoli.com<br><br>By:*/s/ Sonia Colón*<br>    SONIA COLÓN<br>    USDC-PR NO. 213809<br>    E-mail:  scolon@ferraiuoli.com<br><br>221 Ponce de Leon Ave., 5th Floor<br>San Juan, PR 00917<br>Tel.:    (787) 766-7000<br>Fax:    (787) 766-7001<br><br>*Counsel for Ambac Assurance Corporation* | By:*/s/ Atara Miller*<br>    DENNIS F. DUNNE*<br>    ATARA MILLER*<br>    GRANT R. MAINLAND*<br>    JOHN J. HUGHES*<br>55 Hudson Yards<br>New York, New York 10001<br>Tel.:    (212) 530-5000<br>Fax:    (212) 530-5219<br>Email:  ddunne@milbank.com<br>            amiller@milbank.com<br>            gmainland@milbank.com<br>            jhughes2@milbank.com<br><br>*admitted pro hac vice*<br><br>*Counsel for Ambac Assurance Corporation* |

**ARENT FOX LLP**

By: /s/ *David L. Dubrow*
    DAVID L. DUBROW*
    MARK A. ANGELOV*
    1301 Avenue of the Americas
    New York, New York 10019
    Tel.:    (212) 484-3900
    Fax:    (212) 484-3990
    Email:    david.dubrow@arentfox.com
                mark.angelov@arentfox.com

By: /s/ *Randall A. Brater*
    RANDALL A. BRATER*
    1717 K Street, NW
    Washington, DC 20006
    Tel.:    (202) 857-6000
    Fax:    (202) 857-6395
    Email:    randall.brater@arentfox.com

*admitted pro hac vice

*Counsel for Ambac Assurance Corporation*

-5-

| **REXACH & PICÓ, CSP** | **BUTLER SNOW LLP** |
|---|---|
| By: */s/ María E. Picó*<br>María E. Picó<br>USDC-PR 123214<br>802 Ave. Fernández Juncos<br>San Juan PR 00907-4315<br>Telephone: (787) 723-8520<br>Facsimile: (787) 724-7844<br>E-mail: mpico@rexachpico.com<br><br>*Attorney for Financial Guaranty Insurance Company* | By: */s/ Martin A. Sosland*<br>Martin A. Sosland (*pro hac vice*)<br>5430 LBJ Freeway, Suite 1200<br>Dallas, TX 75240<br>Telephone: (469) 680-5502<br>Facsimile: (469) 680-5501<br>E-mail: martin.sosland@butlersnow.com<br><br>*\*Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*<br><br>Jason W. Callen<br>150 3rd Ave., S., Suite 1600<br>Nashville, TN 37201<br>Telephone: 615-651-6774<br>Facsimile: 615-651-6701<br>Email: jason.callen@butlersnow.com<br><br>*\*Admitted pro hac vice in Case No. 17-BK-03283-LTS and Case No. 17-BK-03567-LTS*<br><br>*Attorneys for Financial Guaranty Insurance Company* |

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, the 10th day of June, 2020.

By: /s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
*Admitted pro hac vice