**Hearing Date: July 29, 2020, at 9:30AM (Atlantic Time)**
**Response Deadline: July 14, 2020 at 4:00PM (Atlantic Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                           Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and HTA.** |

### ONE HUNDRED NINETY-EIGHTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO DUPLICATIVE CLAIMS ASSERTED BY CERTAIN HTA BONDHOLDERS

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways

and Transportation Authority ("HTA," and together with the Commonwealth, the "Debtors"), by

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth and HTA pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this omnibus objection (the "One Hundred Ninety-Eighth Omnibus Objection") seeking to disallow in their entirety the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based on bonds and is duplicative of one or more master proofs of claim filed against the Commonwealth and/or HTA on behalf of the holders of certain bonds.  In support of the One Hundred Ninety-Eighth Omnibus Objection, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "HTA Title III Case" and together with the Commonwealth Title III

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

B.      **HTA Bond Debt Master Proofs of Claim**

5.      HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.

6.      The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

"Resolution Bonds"): (i) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"),
and (ii) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution," and with the
1968 Resolution, the "Resolutions").  As of the Petition Date, approximately $830 million in
principal amount of bonds issued under the 1968 Resolution remain outstanding, and
approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain
outstanding.

7.     Certain HTA bonds have been insured by one of several municipal bond insurers,
either on the primary market or on the secondary market.  Municipal bond insurance is obtained
on the primary market when the municipality issuing the bonds engages an insurance company to
underwrite an insurance policy for that series of bonds.  In the event that a bond is not insured on
the primary market, holders of such uninsured bonds may elect to obtain insurance via the
secondary market.  Holders of uninsured bonds who seek to obtain insurance in the secondary
market contract directly with a municipal bond insurer and the original issuer is not part of this
contract process.  When a holder of an uninsured bond obtains an insurance policy on the
secondary market, a new CUSIP number is issued which corresponds to the original CUSIP
numbers assigned to the bonds at the time of issuance.  Certain bonds issued by HTA have been
insured on the secondary market and, accordingly, have been issued new CUSIP numbers which
correspond to bonds issued by HTA bearing original CUSIP numbers (the "HTA Secondarily
Insured Bonds").

8.     The Bank of New York Mellon ("BNYM") serves as fiscal agent with respect to
the Resolution Bonds.  On behalf of the holders of the Resolution Bonds, BNYM filed three master
proofs of claim in the HTA Title III Case (collectively, the "BNYM HTA Master Proofs of
Claim"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968

Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

9.      Each of the BNYM Master Proofs of Claim asserted, with respect to the Resolution Bonds at issue, "[a]ny and all claims, rights and/or remedies the Fiscal Agent and/or the Owners may have under or in connection with" the 1968 Resolution or 1998 Resolution, as applicable, along with "[a]ny and all claims, rights, and/or remedies the Fiscal Agent and/or the Owners may have arising at law or in equity based upon" the 1968 Resolution or 1998 Resolution, as applicable, "including, but not limited to, claims for breach of contract, specific performance, indemnification, contribution, recession, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, alter ego, reimbursement and/or subrogation related to, or arising from or on account of any and all part, present, or future litigations, actions, or transactions by, among, or involving the Fiscal Agent, the Owners, and/or [HTA]." *See* Addendum to Proof of Claim No. 32622, ¶ 17; Addendum to Proof of Clam No. 37245, ¶ 19; Addendum to Proof of Clam No. 38574, ¶ 18.

10.     In addition, on behalf of the holders of HTA Bonds, BNYM also filed three master proofs of claim in the Commonwealth Title III Case (the "<u>BNYM CW Master Claim</u>," and together with the BNYM HTA Master Claims, the "<u>BNYM Master Claims</u>"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶

15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶

15.[4]

## C.    Proofs of Claim Filed, Omnibus Objection Procedures, and Claim Objections

11.    To date, approximately 174,000 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.    Of the proofs of claim filed, approximately 111,300 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth.  Approximately 2,240 proofs of claim

have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the

terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from

some other flaw, such as being subsequently amended, not putting forth a claim for which the

Debtors are liable, being duplicative of other proofs of claim, or failing to provide information

necessary for the Debtors to determine whether the claim is valid.

13.    In order to efficiently resolve as many of the unnecessary proofs of claim as

possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order*

*(A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of*

*Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus

Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion

by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection*

*Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting*

*Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively,

---

[4] While BNYM initially filed three proofs of claim logged by Prime Clerk, LLC as Proofs of Claim
Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos.
121053, 120982, and 115380.

the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English

and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions

of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

14.     In the continued interest of resolving any unnecessary proofs of claims in an

efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking,

among other things, to allow the Debtors to file omnibus objections on substantive bases, to further

expand the number of claims that may be included on an objection, and to approve additional

forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus

Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving

Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019,

the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection

Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional

Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus

Objection Procedures").

15.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus

Objection Procedures, the Court has held hearings related to one hundred-fifty seven omnibus

objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("COFINA"), HTA, and/or ERS, as well as thirty-three individual objections.  After hearings held

on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September

11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-

two individual objections, resulting in thousands of proofs of claim filed against the

Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of

other claims being reclassified to be asserted against another of the Debtors. Twenty non-substantive omnibus objections and two substantive omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard on December 11, 2019. Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020, and thirty omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and granted on March 4 and March 5, 2020. Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

16.     This One Hundred Ninety-Eighth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

### OBJECTIONS TO PROOFS OF CLAIM

17.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). While a properly executed and filed proof of claim constitutes prima facie evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

18.     The Amended Omnibus Objection Procedures allow the Commonwealth and HTA to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule

of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the

Amended Omnibus Objection Procedures.

19.     The One Hundred Ninety-Eighth Omnibus Objection seeks to disallow, in

accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus

Objection Procedures, claims that are duplicative of one or more master proofs of claim filed in

the Commonwealth Title III Case and/or the HTA Title III Case, on behalf of the holders of certain

bonds, each as set forth in **Exhibit A** hereto (collectively, the "Duplicative Claims").

20.     Each of the Duplicative Claims asserts liabilities associated with HTA Secondarily

Insured Bonds.  The CUSIP numbers associated with such HTA Secondarily Insured Bonds

correspond to bonds issued by HTA bearing original CUSIP numbers. Those original CUSIP

numbers, which reflect bond issuances in which the claimants hold ownership interests, are listed

in one or more BNYM Master Claims. Therefore, the HTA Secondarily Insured Bonds assert

liabilities associated with bonds issued by HTA that are duplicative of liabilities asserted by one

or more BNYM Master Claims.

21.     Additionally, as provided on **Exhibit A**, certain of the Claims to Be Disallowed

also purport to assert, in part, liability against the Commonwealth and/or HTA associated with one

or more bonds bearing CUSIP numbers that are duplicative of the CUSIP numbers asserted by

BNYM Master Claims, which as described above were filed in the Commonwealth Title III Case

and/or the HTA Title III Case on behalf of the holders of certain bonds issued by HTA.

22.     Any failure to disallow the Claims to Be Disallowed will result in the applicable

claimants potentially receiving an unwarranted double recovery against the Commonwealth and/or

HTA, to the detriment of other stakeholders in the Title III Cases.  The holders of the Claims to

Be Disallowed will not be prejudiced by the disallowance of those portions of their claims asserting

duplicative liabilities because the liabilities associated are subsumed within one or more Master Claims.

23.    In support of the foregoing, the Commonwealth and HTA rely on the *Declaration of Jay Herriman in Support of the One Hundred Ninety-Eighth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico and Puerto Rico Highways and Transportation Authority to Claims Asserted by Certain HTA Bondholders*, dated June 11, 2020, attached hereto as **Exhibit B**.

## NOTICE

24.    In accordance with the Amended Omnibus Objection Procedures, the Commonwealth and HTA are providing notice of this One Hundred Ninety-Eighth Omnibus Objection to (a) the individual creditors subject to this One Hundred Ninety-Eighth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Twelfth Amended Case Management Procedures* [ECF No. 13383-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this One Hundred Ninety-Eighth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the One Hundred-Ninety Eighth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties. The Commonwealth and HTA submit that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

25.    This One Hundred Ninety-Eighth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the

validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim

on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to

assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy

Code; or (a) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other

applicable law.

## **NO PRIOR REQUEST**

26.     No prior request for the relief sought in this One Hundred Ninety-Eighth Omnibus

Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Commonwealth and HTA respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth and HTA such other and further relief as is just.

Dated: June 11, 2020
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority*

Fecha de la vista: 29 de julio de 2020, a las 09:30 a.m. (AST)
Fecha límite para responder: 14 de julio de 2020, a las 04:00 p.m. (AST)

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

*In re*:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

    como representante

DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, *et al.*,

                       Deudores.[1]

PROMESA
Título III

Núm. 17 BK 3283-LTS

(Administrado Conjuntamente)

**La presente radicación guarda relación con el ELA y la ACT.**

---

**CENTÉSIMA NONAGÉSIMA OCTAVA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES DUPLICADAS RADICADAS POR CIERTOS TENEDORES DE BONOS ACT**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT" y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA y la ACT conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican la presente objeción global (la "Centésima nonagésima octava objeción global") buscando rechazar en su totalidad las evidencias de reclamaciones que figuran en el **Anexo A** del presente, cada una de las cuales pretende basarse en bonos y es duplicativa de una o más evidencias maestras de reclamaciones presentadas contra el ELA y/o la ACT en nombre de los tenedores de ciertos bonos. En apoyo de la Centésima nonagésima octava objeción global, los Deudores respetuosamente manifiestan lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.      Órdenes de fecha límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la

---

[2]  PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

sección 304(a) de PROMESA, iniciando un caso de Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017 (LA "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT conforme a la sección 304(a) de PROMESA, iniciando un caso de Título III de dicho cuerpo legal (el "Caso de Título III de la ACT", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.     El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.     Evidencias maestras de reclamaciones de deuda de bonos ACT**

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

5.     La ACT es una corporación pública e instrumentalidad del ELA que constituye una entidad corporativa y política independiente y aparte del ELA, creada conforme a la Ley Núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley Habilitadora de la ACT"). La ACT es responsable de la construcción, operación y mantenimiento de carreteras y otros sistemas de transporte en el ELA. *Véase* 9 L.P.R.A § 2002.

6.     La Ley Habilitadora de la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004 (g), (h), (l). Conforme a ello, la ACT emitió varias series de bonos bajo dos resoluciones diferentes (los "Bonos Emitidos por Resolución"): (i) la Resolución Núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y (ii) la Resolución No 98-06, adoptado el 26 de febrero de 1998 (la "Resolución de 1998" y junto con la Resolución de 1968, las "Resoluciones"). A la Fecha de Petición, aproximadamente $830 millones del capital de los bonos emitidos bajo la Resolución de 1968 continúan pendientes, y aproximadamente $3.4 mil millones del capital de los bonos emitidos bajo la Resolución de 1998 continúan pendientes.

7.     Ciertos Bonos ACT han sido asegurados por una de varias aseguradoras de bonos municipales, ya sea en el mercado primario o en el mercado secundario. El seguro de bonos municipales se obtiene en el mercado primario cuando el municipio que emite los bonos contrata a una compañía de seguros para suscribir una póliza de seguro para esa serie de bonos. En el caso de que un bono no esté asegurado en el mercado primario, los tenedores de dichos bonos no asegurados pueden optar por obtener un seguro a través del mercado secundario. Los tenedores de bonos no asegurados que buscan obtener un seguro en el mercado secundario contratan directamente con una aseguradora de bonos municipales y el emisor original no forma parte de este proceso contractual. Cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números

CUSIP originales asignados a los bonos en el momento de la emisión. Ciertos bonos emitidos por la ACT han sido asegurados en el mercado secundario y, en consecuencia, se les ha emitido nuevos números CUSIP que corresponden a bonos emitidos por la ACT que ostentan números CUSIP originales (los "Bonos ACT Asegurados en el Mercado Secundario").

8.    El Bank of New York Mellon ("BNYM") sirve como agente fiscal con respecto a los Bonos Emitidos por Resolución. El BNYM, actuando en nombre de los tenedores de Bonos Emitidos por Resolución, radicó tres evidencias maestras de reclamaciones en el marco del Caso de Título III de la ACT (colectivamente, las "Evidencias Maestras de Reclamaciones ACT de BNYM"): la Evidencia de Reclamaciones núm. 37245, que reclama en nombre de los tenedores de bonos emitidos según la Resolución de 1968 aproximadamente $847 millones en obligaciones más montos no liquidados; la Evidencia de Reclamaciones núm. 38574, que reclama en nombre de los tenedores de bonos emitidos según la Resolución de 1998 aproximadamente $3.2 mil millones en obligaciones más montos no liquidados; y la Evidencia de Reclamaciones núm. 32622, que reclama en nombre de los tenedores de bonos subordinados emitidos según la Resolución de 1998 aproximadamente $279 millones en obligaciones más montos no liquidados.

9.    Con respecto a los Bonos Emitidos por Resolución en cuestión, cada una de las Evidencias Maestras de Reclamaciones de BNYM alegaba, "[c]ualquier y toda reclamación, derecho y/o recurso que el Agente Fiscal y/o los Propietarios puedan tener según o en relación con" la Resolución de 1968 o la Resolución de 1998, según corresponda, junto con "[c]ualquier y toda reclamación, derecho y/o recurso que el Agente Fiscal y/o los Propietarios puedan tener de acuerdo a derecho o en equidad, basados en" la Resolución de 1968 o la Resolución de 1998, según corresponda, "incluyendo, entre otros, reclamaciones por incumplimiento de contrato, cumplimiento forzoso, indemnización, contribución, recesión, fraude, inducción fraudulenta,

transmisión fraudulenta, tergiversación, *alter ego*, reembolso y/o subrogación, relacionadas con o que surjan de cualquier y todo litigio, acción o transacción ya sean pasados, presentes o futuros, entre, o involucrando al Agente Fiscal, los Propietarios, y/o [la ACT]." *Véase* Anexo a Evidencia de Reclamaciones Núm. 32622, ¶ 17; Anexo a Evidencia de Reclamaciones Núm. 37245, ¶ 19; Anexo a Evidencia de Reclamaciones Núm. 38574, ¶ 18.

10. Además, actuando en nombre de los tenedores de Bonos ACT, el BNYM también radicó tres evidencias maestras de reclamaciones en el marco del Caso de Título III del ELA (la "Reclamación Maestra ELA de BNYM" y junto con las Reclamaciones Maestras ACT de BNYM, las "Reclamaciones Maestras de BNYM"), cada una de las cuales alega una "reclamación garantizada, contingente y no liquidada contra el ELA por cualquier y toda reclamación, causa de acción, derecho y/o recurso que el Agente Fiscal o los Propietarios puedan tener en contra del ELA de acuerdo a derecho o en equidad . . . ." *Véase* Anexo a Evidencia de Reclamaciones Núm. 121053, ¶ 15; Anexo a Evidencia de Reclamaciones Núm. 120982, ¶ 15; Anexo a Evidencia de Reclamaciones Núm. 115380, ¶ 15.[4]

## C. Evidencias de reclamación radicada, procedimientos relativos a objeción global y objeciones a reclamación

11. Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

---

[4] Si bien BNYM inicialmente radicó tres evidencias de reclamaciones registradas por Prime Clerk, LLC como Evidencias de Reclamaciones Núm. 21286, 26541 y 35277, estas fueron reemplazadas y modificadas por las Evidencias de Reclamaciones Núm. 121053, 120982 y 115380.

12.     De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 2,240 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

13.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos Relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales Relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales Relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y*

*en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la
"Orden de Notificación").

14.      En aras del interés constante de resolver eficazmente cualesquiera evidencias de
reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a
procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar
objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que
pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de
vista en relación con una Orden A) que apruebe Procedimientos Enmendados Relativos a
Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de
Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*
[ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio
de la *Orden A) que aprueba Procedimientos Enmendados Relativos a Objeciones Globales, B)
exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas
de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados Relativos a Objeciones Globales").

15.      Conforme a los Procedimientos Iniciales Relativos a Objeciones Globales y los
Procedimientos Enmendados Relativos a Objeciones Globales, el Tribunal celebró vistas
vinculadas con 157 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés
Apremiante de Puerto Rico ("COFINA"), la ACT y/o el SRE, así como con 33 objeciones
individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de
abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30
de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo
cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el

SRE y/o COFINA fueran rechazadas y suprimidas, y cientos de otras reclamaciones fueran reclasificadas como radicadas contra otros Deudores. Veinte objeciones globales no sustantivas y 2 objeciones globales sustantivas a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas el 11 de diciembre de 2019. Además, 27 objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020, y 30 objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas los días 4 y 5 de marzo de 2020. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban más de $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos de Título III una vez dictadas las órdenes finales.

16. Esta Centésima nonagésima octava objeción global se radica de conformidad con los Procedimientos Enmendados Relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

17. Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Si bien una evidencia de reclamación debidamente ejecutada y radicada constituye evidencia *prima facie* de la validez de la reclamación, *véase* Fed. R. Bankr. P. 3001(f), hecho aplicable a este caso por la sección 310 de PROMESA, la parte que objeta puede superar esta evidencia *prima facie* con evidencia que, de creerse, refutaría por lo menos una de las alegaciones esenciales para el reclamo. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2° Cir.), *aff'd*, 242 F.3d 367 (2° Cir. 2000); *véase también Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1° Cir.

B.A.P. 2001) ("[U]na reclamación se presume válida hasta que una parte objetante haya presentado evidencia suficiente para refutar el caso *prima facie* del reclamante." (Cita omitida)).

18.     Los Procedimientos Enmendados Relativos a Objeciones Globales permiten al ELA y la ACT radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados Relativos a Objeciones Globales.

19.     La Centésima nonagésima octava objeción global pretende que se rechacen, de conformidad con la regla 3007(d)(1) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados Relativos a Objeciones Globales, reclamaciones que estén sustancialmente duplicadas con respecto a una o más evidencias maestras de reclamaciones radicadas en el marco del Caso de Título III del ELA y/o el Caso de Título III de la ACT, en nombre de los tenedores de ciertos bonos, cada uno de ellos según lo establecido en el **Anexo A** del presente (colectivamente, las "Reclamaciones Duplicadas").

20.     Cada una de las Reclamaciones Duplicadas alega obligaciones asociadas con los Bonos ACT Asegurados en el Mercado Secundario. Los números CUSIP asociados con dichos Bonos ACT Asegurados en el Mercado Secundario corresponden a bonos emitidos por la ACT que ostentan números CUSIP originales. Esos números CUSIP originales, los cuales reflejan emisiones de bonos en los que las demandantes tienen intereses de propiedad, se encuentran enumerados en una o más Reclamaciones Maestras de BNYM. Por lo tanto, los Bonos ACT Asegurados en el Mercado Secundario reclaman obligaciones asociadas con bonos emitidos por la ACT que son duplicados de obligaciones alegadas en una o más de las Reclamaciones Maestras de BNYM.

21.     Además, según se dispone en el **Anexo A**, algunas de las "Reclamaciones que han de ser rechazadas" también pretenden alegar, en parte, responsabilidad contra el ELA y/o la ACT asociada con uno o más bonos que ostentan números CUSIP que son duplicados de los números CUSIP alegados por las Reclamaciones Maestras de BNYM, que como se describió anteriormente se radicaron en el marco del Caso de Título III del ELA y/o el Caso de Título III de la ACT en nombre de los titulares de ciertos bonos emitidos por la ACT.

22.     Si las Reclamaciones que han de ser rechazadas no son rechazados, ello resultaría en que las correspondientes demandantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA y/o la ACT en detrimento de otras partes interesadas en los Casos de Título III. Los tenedores de las Reclamaciones que han de ser rechazadas no se verán perjudicados por el hecho de que se rechacen aquellas porciones de sus reclamaciones que reclaman obligaciones duplicadas ya que las obligaciones asociadas se encuentran incluidas dentro de una o más de las Reclamaciones Maestras.

23.     En apoyo de lo anterior, el ELA y la ACT invocan la *Declaración de Jay Herriman en apoyo de la Centésima nonagésima octava objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico y la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones radicadas por ciertos tenedores de bonos ACT*, de fecha 11 de junio de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

24.     De conformidad con los Procedimientos Enmendados Relativos a Objeciones Globales, el ELA y la ACT notifican la presente Centésima nonagésima octava objeción global a) a los acreedores individuales objeto de esta Centésima nonagésima octava objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de Administración de Casos Enmendados núm. 12* [ECF núm. 13383-1]), disponibles en el sitio web

de casos de los Deudores, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Centésima nonagésima octava objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Centésima nonagésima octava objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA y la ACT sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

25.     La presente Centésima nonagésima octava objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos que asisten a los Deudores a oponerse a cualesquiera reclamaciones sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

1.      No se ha radicado ninguna solicitud de remedio previa a la presente Centésima nonagésima octava objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA y la ACT solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA y la ACT cualesquiera otros remedios que se consideren justos.

Fecha: 11 de junio de 2020
San Juan (Puerto Rico)

Respetuosamente sometida,

*[Firma en la versión en ingles]*
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en ingles]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico como representante del Estado Libre Asociado de Puerto Rico y la Autoridad de Carreteras y Transportación.*