**Hearing Date: July 29, 2020, at 9:30AM (Atlantic Time)**
**Response Deadline: July 14, 2020 at 4:00PM (Atlantic Time)**

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

### TWO HUNDRED FIFTEENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATIVE CLAIMS ASSERTED BY CERTAIN PBA BONDHOLDERS

---

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative

of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and*

*Economic Stability Act* ("PROMESA"),[2] file this omnibus objection (the "Two Hundred Fifteenth

Omnibus Objection") seeking to disallow in their entirety the proofs of claim listed on **Exhibit A**

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

hereto, each of which purports to be based on bonds and is duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds issued by the Puerto Rico Public Buildings Authority ("PBA") that have been secondarily insured.  In support of the Two Hundred Fifteenth Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of

the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs*

*of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with

the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at

4:00 p.m. (Atlantic Time).

### B.    Bond Debt Master Proofs of Claim – Commonwealth Title III Case

5.    Pursuant to the Initial Bar Date Order, the indenture trustees, fiscal agents, or any

similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-

debtor may file a master proof of claim against the applicable debtor on behalf of themselves and

all holders of bond claims for the respective series of bonds for obligations arising under the

respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

6.    The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution")

became effective in 1952.  The P.R. Constitution created the Commonwealth as the central

government of Puerto Rico, "republican in form" and divided into three branches: legislative,

judicial and executive.  See P.R. Const., Art. I, §§ 1, 2.  The P.R. Constitution authorizes the

Commonwealth to issue debt, subject to various limitations, including on the ability of the

Commonwealth to pledge its revenues.  *See* P.R. Const. Art. VI § 2.  In 1961, Section 2 of Article

VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of

the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

7.    Master proofs of claim have been filed in the Commonwealth Title III Case on

behalf of the holders of certain bonds issued by, among others, the PBA.

8.    *PBA* - PBA purportedly issued bonds to finance office buildings and other facilities

leased to various departments, public agencies and instrumentalities of the Commonwealth.  U.S.

Bank National Association ("US Bank") and US Bank National Trust Association ("US Bank Trust") serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Proof of Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833. The PBA Master Proof of Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ." Rider to PBA Master Proof of Claim, ¶¶ 19-21.

9.      Certain PBA bonds have been insured by one of several municipal bond insurers, either on the primary market or on the secondary market. Municipal bond insurance is obtained on the primary market when the municipality issuing the bonds engages an insurance company to underwrite an insurance policy for that series of bonds. In the event that a bond is not insured on the primary market, holders of such uninsured bonds may elect to obtain insurance via the secondary market. Holders of uninsured bonds who seek to obtain insurance in the secondary market contract directly with a municipal bond insurer and the original issuer is not part of this contract process. When a holder of an uninsured bond obtains an insurance policy on the secondary market, a new CUSIP number is issued which corresponds to the original CUSIP numbers assigned to the bonds at the time of issuance. Certain bonds issued by PBA have been insured on the secondary market and, accordingly, have been issued new CUSIP numbers which

4

correspond to bonds issued by PBA bearing original CUSIP numbers (the "Secondarily Insured Bonds").

**C.    Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

10.    To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

11.    Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

12.    In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

13.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

14.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held hearings related to one hundred fifty-seven omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Highways and Transportation Authority ("HTA"), and/or the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), as well as thirty-three individual objections.  After hearings held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-two individual objections, resulting in thousands of proofs of claim filed against the Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be

asserted against another of the Debtors.  Twenty non-substantive omnibus objections and two substantive omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard on December 11, 2019.  Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020, and thirty omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and granted on March 4 and March 5, 2020.  Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

15.     This Two Hundred Fifteenth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

16.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). While a properly executed and filed proof of claim constitutes prima facie evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

17.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of

Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Two Hundred Fifteenth Omnibus Objection seeks to disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, respectively, claims that are duplicative of one or more master proofs of claim filed in the Commonwealth Title III Case, on behalf of the holders of certain bonds, each as set forth in **Exhibit A** hereto (collectively, the "Duplicative Claims").

19.     Each of the Duplicative Claims asserts liabilities associated with Secondarily Insured Bonds.  The CUSIP numbers associated with such Secondarily Insured Bonds correspond to bonds issued by PBA bearing original CUSIP numbers. Those original CUSIP numbers, which reflect bond issuances in which the claimants hold ownership interests, are listed in one or more Master Claims.  Therefore, the Secondarily Insured Bonds assert liabilities associated with bonds issued by PBA that are duplicative of liabilities asserted by one or more Master Claims.

20.     Any failure to disallow the Duplicative Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Title III Cases.  The holders of the Duplicative Claims will not be prejudiced by the disallowance of their claims because the liabilities associated are subsumed within one or more Master Claims.

21.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Fifteenth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Duplicative Claims Asserted by Certain PBA Bondholders* dated June 12, 2020, attached hereto as **Exhibit B**.

## NOTICE

22.     In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this Two Hundred Fifteenth Omnibus Objection to (a) the individual creditors subject to this Two Hundred Fifteenth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Twelfth Amended Case Management Procedures* [ECF No. 13383-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.   A copy of the notice for this Two Hundred Fifteenth Omnibus Objection is attached hereto as **Exhibit C**.   Spanish translations of the Two Hundred Fifteenth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties. The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

23.     This Two Hundred Fifteenth Omnibus Objection is limited to the grounds stated herein.   Accordingly, it is without prejudice to the rights of the Debtors to object to the Duplicative Claims or any other claims on any ground whatsoever.   The Debtors expressly reserve all further substantive or procedural objections.   Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition

agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (a) a waiver of

the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

24.    No prior request for the relief sought in this Two Hundred Fifteenth Omnibus

Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: June 12, 2020
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico as representative for
the Commonwealth of Puerto Rico*

**Fecha de la vista: 29 de julio de 2020, a las 09:30 a.m. (AST)**
**Fecha límite para responder: 14 de julio de 2020, a las 04:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>     como representante<br><br>DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, *et al.*,<br><br>                              Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

**DUCENTÉSIMA DECIMOQUINTA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DUPLICADAS RADICADAS POR CIERTOS TENEDORES DE BONOS AEP**

El Estado Libre Asociado de Puerto Rico (el "ELA"), a través de la Junta de Supervisión

y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del

ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad*

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

*Económica de Puerto Rico* ("PROMESA"),[2] radica la presente objeción global (la "Ducentésima decimoquinta objeción global") buscando rechazar en su totalidad las evidencias de reclamaciones que figuran en el **Anexo A** del presente, cada una de las cuales pretende basarse en bonos y es duplicativa de una o más evidencias maestras de reclamaciones presentadas contra el ELA en nombre de los tenedores de ciertos bonos emitidos por la Autoridad de Edificios Públicos ("AEP"). En apoyo de la Ducentésima decimoquinta objeción global, el ELA respetuosamente manifiesta lo siguiente:

## JURISDICCIÓN

1. El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2. La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.    Órdenes de fecha límite

3. El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la sección 304(a) de PROMESA, iniciando un caso de Título III de dicho cuerpo legal (el "Caso de Título III del ELA").[3]

4. El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije*

---

[2]  PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

2

*fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Evidencias maestras de reclamaciones de deuda de bonos**

5.    Conforme a la Orden Inicial de Fecha Límite, los fideicomisarios, agentes fiscales o cualquier agente o designado similar para cada serie de bonos respectiva emitida por uno de los Deudores o un no deudor podrán radicar una evidencia maestra de reclamaciones contra el deudor aplicable en nombre de ellos mismos y de todos los tenedores de reclamaciones de bonos para las series de bonos respectivas por obligaciones derivadas de los respectivos acuerdos de fideicomiso, resoluciones o documentos de bonos similares. Orden Inicial de Fecha Límite, ¶ 5 (a).

6.    La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de P.R.") entró en vigencia en 1952. La Constitución de P.R. creó al ELA como el gobierno central de Puerto Rico, "de forma republicana" y dividido en tres poderes: legislativo, judicial y ejecutivo. *Véase* Const. P.R., Art. I, §§ 1, 2. La Constitución de P.R. autoriza al ELA a emitir deuda, sujeto a varias limitaciones, incluyendo la capacidad del ELA de empeñar sus ingresos. *Véase* Const.

3

P.R. Art. VI § 2. En 1961, la Sección 2 del Artículo VI de la Constitución de P.R. fue enmendada para limitar el endeudamiento del ELA en función de la cantidad de servicio de la deuda que el ELA tendría que pagar en relación con sus ingresos históricos.

7.      Se han radicado evidencias maestras de reclamaciones en el Caso de Título III del ELA a nombre de los tenedores de ciertos bonos emitidos por, entre otros, la AEP.

8.      *AEP* - La AEP supuestamente emitió bonos para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e instrumentalidades del ELA. El U.S. Bank National Association (el "US Bank") y el US Bank National Trust Association ("US Bank Trust") sirven como agentes fiscales para ciertos bonos de ingresos emitidos por la AEP, según se identifica en la Nota de Pie 3 de la Evidencia de Reclamación núm. 62833 (los "Bonos AEP"), y actuando en nombre de los tenedores de Bonos AEP, radicaron una evidencia maestra de reclamaciones en el marco del Caso de Título III del ELA para todos los montos adeudados pendientes (la "Evidencia Maestra de Reclamaciones AEP"), la cual fue registrada por Prime Clerk, LLC, como Evidencia de Reclamaciones núm. 62833. La Evidencia Maestra de Reclamaciones de la AEP alega reclamaciones liquidadas de aproximadamente $4 mil millones en capital presuntamente impago, $160 millones en intereses presuntamente impagos, y el reembolso de los honorarios y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes para todos y cada uno de los montos adeudados "a causa de todas y cada una de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las obligaciones de Bonos pendientes, ya sean conocidas o desconocidas, contra el ELA y todos aquellos que digan actuar en nombre del ELA. . . ."  Cláusula Adicional de la Evidencia Maestra de Reclamaciones de la AEP, ¶¶ 19-21.

9.      Ciertos Bonos AEP han sido asegurados por una de varias aseguradoras de bonos

4

municipales, ya sea en el mercado primario o en el mercado secundario. El seguro de bonos municipales se obtiene en el mercado primario cuando el municipio que emite los bonos contrata a una compañía de seguros para suscribir una póliza de seguro para esa serie de bonos. En el caso de que un bono no esté asegurado en el mercado primario, los tenedores de dichos bonos no asegurados pueden optar por obtener un seguro a través del mercado secundario. Los tenedores de bonos no asegurados que buscan obtener un seguro en el mercado secundario contratan directamente con una aseguradora de bonos municipales y el emisor original no forma parte de este proceso contractual. Cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de la emisión. Ciertos bonos emitidos por la AEP han sido asegurados en el mercado secundario y, en consecuencia, se les ha emitido nuevos números CUSIP que corresponden a bonos emitidos por la AEP que ostentan números CUSIP originales (los "Bonos Asegurados en el Mercado Secundario").

C.     **Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

10.     Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

11.     De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA.  De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido

enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

12.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos Relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales Relativos a Objeciones Globales").  El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales Relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

13.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que

pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados Relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba Procedimientos Enmendados Relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados Relativos a Objeciones Globales").

14.     Conforme a los Procedimientos Iniciales Relativos a Objeciones Globales y los Procedimientos Enmendados Relativos a Objeciones Globales, el Tribunal celebró vistas vinculadas con 157 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") y/o el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"), así como con 33 objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30 de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el SRE y/o COFINA fueran rechazadas y suprimidas, y cientos de otras reclamaciones fueran reclasificadas como radicadas contra otros Deudores. Veinte objeciones globales no sustantivas y 2 objeciones globales sustantivas a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas el 11 de diciembre de 2019.  Además, 27 objeciones globales a reclamaciones radicadas contra el ELA, la

7

ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020, y 30 objeciones

globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas

los días 4 y 5 de marzo de 2020.  Sobre la base de las resoluciones y órdenes del Tribunal dictadas

hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban más de $43 billones en

responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del

registro de reclamaciones en el marco de los procedimientos de Título III una vez dictadas las

órdenes finales.

15.     Esta Ducentésima decimoquinta objeción global se radica de conformidad con los

Procedimientos Enmendados Relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

16.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en

virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., §

502(b)(1). Si bien una evidencia de reclamación debidamente ejecutada y radicada constituye

evidencia *prima facie* de la validez de la reclamación, *véase* Fed. R. Bankr. P. 3001(f), hecho

aplicable a este caso por la sección 310 de PROMESA, la parte que objeta puede superar esta

evidencia *prima facie* con evidencia que, de creerse, refutaría por lo menos una de las alegaciones

esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2° Cir.), *aff'd*, 242 F.3d

367 (2° Cir. 2000); *véase también Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1°

Cir. B.A.P. 2001) ("[U]na reclamación se presume válida hasta que una parte objetante haya

presentado evidencia suficiente para refutar el caso *prima facie* del reclamante." (Cita omitida)).

17.     Los Procedimientos Enmendados Relativos a Objeciones Globales permiten al

ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las

bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de

Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados Relativos a Objeciones Globales.

18. La Ducentésima decimoquinta objeción global pretende que se rechacen, de conformidad con la regla 3007(d)(1) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados Relativos a Objeciones Globales, respectivamente, reclamaciones que estén sustancialmente duplicadas con respecto a una o más evidencias maestras de reclamaciones radicadas en el marco del Caso de Título III del ELA, en nombre de los tenedores de ciertos bonos, cada uno de ellos según lo establecido en el **Anexo A** del presente (colectivamente, las "Reclamaciones Duplicadas").

19. Cada una de las Reclamaciones Duplicadas alega obligaciones asociadas con los Bonos Asegurados en el Mercado Secundario. Los números CUSIP asociados con dichos Bonos Asegurados en el Mercado Secundario corresponden a bonos emitidos por la AEP que ostentan números CUSIP originales. Esos números CUSIP originales, los cuales reflejan emisiones de bonos en los que las demandantes tienen intereses de propiedad, se encuentran enumerados en una o más Reclamaciones Maestras. Por lo tanto, los Bonos Asegurados en el Mercado Secundario reclaman obligaciones asociadas con bonos emitidos por la AEP que son duplicados de obligaciones alegadas en una o más de las Reclamaciones Maestras.

20. Si las Reclamaciones Duplicadas no son rechazadas, ello resultaría en que las correspondientes demandantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA en detrimento de otras partes interesadas en los Casos de Título III. Los tenedores de Reclamaciones Duplicadas no se verán perjudicados por el hecho de que se rechacen sus reclamaciones ya que las obligaciones asociadas se encuentran incluidas dentro de una o más de las Reclamaciones Maestras.

9

21.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Ducentésima decimoquinta objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones Duplicadas radicadas por ciertos tenedores de bonos AEP* de fecha 12 de junio de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

22.     De conformidad con los Procedimientos Enmendados Relativos a Objeciones Globales, el ELA notifica la presente Ducentésima decimoquinta objeción global a) a los acreedores individuales objeto de esta Ducentésima decimoquinta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de Administración de Casos Enmendados núm. 12* [ECF núm. 13383-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Ducentésima decimoquinta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima decimoquinta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

23.     La presente Ducentésima decimoquinta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a las Reclamaciones Duplicadas o a cualesquiera otras reclamaciones sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objeto, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones

contra los Deudores; b) constituyan una renuncia a los derechos que asisten a los Deudores a

oponerse a cualesquiera reclamaciones sobre la base de los motivos que fuere; c) constituyan una

promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización

a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo

365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los

Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal

aplicable.

### AUSENCIA DE SOLICITUDES PREVIAS

24.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima

decimoquinta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*.]

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 12 de junio de 2020          Respetuosamente sometida,
      San Juan (Puerto Rico)

*[Firma en la versión en ingles]*
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

*[Firma en la versión en ingles]*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico como representante del Estado Libre Asociado de Puerto Rico*