# EXHIBIT 2

LEY **82** -20 **19**

### GOBIERNO DE PUERTO RICO
**SENADO DE PUERTO RICO**
**EL CAPITOLIO**
**SAN JUAN, PUERTO RICO 00901**

Yo, **Lcda. Cristina Córdova Ponce**, Secretaria Interina del Senado de Puerto Rico,

## CERTIFICO:

Que el **P. del S. 218 (Conferencia)**, titulado:

## "LEY

Para crear la "Ley Reguladora de los Administradores de Beneficios y Servicios de Farmacia", a los fines de establecer la Oficina del Comisionado Regulador de los Administradores de Beneficios y Servicios de Farmacia, Departamento de Salud; instaurar sus funciones, poderes y facultades de supervisar y fiscalizar a los Manejadores de Beneficios de Farmacia (*Pharmacy Benefit Manager* 'PBM', por sus siglas en inglés), los Administradores de Servicios de Farmacias (*Pharmacy Benefit Administrators* 'PBA', por sus siglas en inglés); y cualquier entidad similar que contrate los servicios con las Farmacias en Puerto Rico; enmendar los incisos (e) y (g) del Artículo 30.020 del Capítulo 30, conocido como "Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud", de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como "Código de Seguros de Puerto Rico", con el fin de incluir a los PBMs, PBAs y entidades a fines de cumplir con el pago de reclamaciones; añadir un nuevo inciso (k) al Artículo 3 y enmendar el inciso (g) del Artículo 7 de la Ley 77-2013, según enmendada, conocida como la "Ley de la Oficina del Procurador del Paciente", con el fin de brindarle jurisdicción a esta dependencia para atender querellas relacionadas con los Manejadores de Beneficios de Farmacia (*Pharmacy Benefit Manager* 'PBM', por sus siglas en inglés), los Administradores de Servicios de Farmacias (*Pharmacy Benefit Administrators* 'PBA', por sus siglas en inglés); y cualquier entidad similar que contrate los servicios con las Farmacias en Puerto Rico; y para otros fines relacionados."

ha sido aprobado por el Senado de Puerto Rico y la Cámara de Representantes en la forma que expresa el ejemplar que se acompaña.

**PARA QUE ASI CONSTE**, y para notificar al Gobernador de Puerto Rico, expido la presente en mi oficina en el Capitolio, San Juan, Puerto Rico, el día tres (3) del mes de julio del año dos mil diecinueve y estampo en ella el sello del Senado de Puerto Rico.

**Lcda. Cristina Córdova Ponce**
Secretaria Interina del Senado

Los PBMs y PBAs tienen un gran impacto en la política pública de atención a la salud, ya que administran la cobertura del plan de medicamentos a miles de pacientes en la Isla a través de contrataciones con las farmacias.

A nivel local, este renglón empresarial carece de regulación a pesar de que estos intermediarios constituyen uno de los eslabones más importantes en la cadena de servicios de salud, pues a través de ellos el paciente obtiene acceso a los medicamentos y tratamientos para su condición. Esta falta de regulación ha sido un factor en los resultados y limitaciones que los pacientes experimentan en el acceso a los medicamentos que conforman su tratamiento de salud.

Igualmente, se ha identificado un problema serio en la relación de estas empresas y las farmacias, específicamente en lo que respecta a pagos por concepto de medicamentos. En este caso los PBMs de forma unilateral imponen y determinan, a su criterio, el precio a pagar por los medicamentos adquiridos por las farmacias para ser provistos al paciente. En muchas ocasiones los pagos que se hacen a las farmacias están por debajo del costo de adquisición del medicamento. No cabe duda, que en la medida en que la farmacia no puede recobrar el costo del medicamento, asume pérdidas sustanciales que, siendo una pequeña empresa proveedora de salud, no puede asumir ni absorber. Esto hace que dichas farmacias se vean en la obligación de no adquirir ciertos medicamentos y sufran pérdidas económicas significativas.

Otro problema en la relación Farmacias -PBMs es la falta de transparencia en los procesos y en la divulgación del MAC o *"Máximum Allowance Cost"* que apoye la verificación del costo final del medicamento. A esto, se une la revisión y actualización de los precios de medicamentos. En la medida en que esta práctica de imposición unilateral de precios continúe, el país se expone a una crisis de salud poniendo en riesgo inminente miles de vidas.

Las farmacias son un componente crítico en la dispensación de medicamentos a los ciudadanos, al contribuir activamente en la orientación y educación del paciente, con el objetivo de mejorar la calidad de vida de la ciudadanía puertorriqueña. Esta relación estrecha permite que la población a la cual atienden reciba sus medicamentos a tiempo, continúe su tratamiento sin interrupción alguna, y reciba satisfactoriamente las repeticiones de sus medicamentos, según la terapia recomendada mediante orden médica. Las farmacias realizan una labor extraordinaria en la sociedad y generan aportaciones significativas a las finanzas del Gobierno. Sobre todo, son facilidades de salud necesarias para proteger al paciente.

Al presente más de una treintena de estados de la Nación Norteamericana tienen en vigor un estatuto regulador dirigido a los PBMs y PBAs. Algunos de los estados que poseen regulación sobre estas empresas son: Alabama, Arkansas, Missouri, New México, California, New York, Colorado, North Carolina, Connecticut, North Dakota, Florida, Oklahoma, Georgia, Oregon, Hawaii, Rhode Island, Indiana, South Carolina, Iowa, Kansas, Tennessee, Kentucky, Texas, Louisiana, Utah, Vermont, Massachusetts, Virginia, Minnesota, Washington, Mississippi y Maine, entre otros. Este último fue el

primer estado en establecer regulación sobre estas empresas, la cual fue rebatida por el sector de PBMs en los tribunales de justicia federal, prevaleciendo el estado y la regulación aprobada. Cabe destacar que la regulación de Maine y la implementada por otros estados son más restrictivas que la propuesta en la presente medida.

Según surge de nuestro estudio, las jurisdicciones que han implementado un ente regulador de los PBMs y PBAs no han experimentado aumento en los costos de salud, asociado a la implementación de dicho ente regulador. Al contrario, se ha percibido una disminución en costos y un mayor acceso a medicamentos en beneficio de miles de pacientes. En la medida en que la relación Farmacia-PBM se atienda de forma adecuada se salvaguarda el acceso a medicamentos y se minimizan eventos de descompensación del paciente, complicaciones de salud, hospitalizaciones y la generación de otras condiciones que provocan de forma directa un aumento en el costo de salud que finalmente paga la ciudadanía.

La falta de regulación uniforme de estas entidades pudiese acarrear un problema de salud pública en el país. Todo el andamiaje de la cadena de salud corre por diferentes canales. Así pues, en la medida que las farmacias no puedan recobrar el costo de compra del producto dejarán prontamente de ordenarlos a los suplidores. Al suplidor no recibir orden alguna dejará de traerlo a Puerto Rico, provocando de esta forma una escasez de medicamentos.

Es de conocimiento general que el tema de la salud encierra un interés y responsabilidad primaria del Estado resultando ser una obligación apremiante sobre cualquier otra consideración, incluyendo aquella de índole económica.

Sobre este particular nuestra Constitución confiere a la Asamblea Legislativa, de forma expresa, la facultad de promulgar y aprobar legislación dirigida a regular la conducta de personas naturales y jurídicas en aras de promover la protección de la vida, salud y bienestar público. El promulgar y aprobar normativa en vías de regular estas empresas (PBMs) constituye un ejercicio legítimo de esta Asamblea Legislativa, para el cual posee amplia autoridad. En dicho ejercicio, la Asamblea Legislativa debe sopesar que el objetivo perseguido esté amparado en un interés legítimo del Estado. No cabe duda de que la legislación ante nos es una de tipo socioeconómico y de salud a la cual le reviste una presunción constitucional.

Se ha mencionado que el impacto fiscal que pudiese tener el implementar una oficina reguladora sería alrededor de $25 millones. En lo que respecta a esta aseveración, debemos exponer que estas cantidades no están sustentadas en data empírica alguna. Por tanto, no resultaría responsable que esta Asamblea Legislativa acoja alegaciones no justificadas en estudios, más aún cuando se trata de la vida y salud de miles de pacientes, donde las consideraciones económicas no pueden ni deben ir por encima de aquellas relacionadas a la preservación de la vida de un ciudadano.

Otra alegación presentada en contra de la medida es que podría aumentar los costos de servicios de salud y de medicamentos para el paciente. Esta alegación no resulta cónsona con la realidad. Estudios asociados al tema no han identificado o

demostrado la existencia de una correlación entre el establecer una ley reguladora y el aumento en costos de medicamentos. De ser así más de una treintena de estados de la Nación Norteamericana no tendrían un estatuto regulador para estas empresas. Sobre este particular, es importante destacar que algunos de estos PBMs llevan operando por años en jurisdicciones donde al presente los PBMs se encuentran altamente regulados. A pesar de la regulación estricta en estos estados, los PBMs han continuado haciendo negocios en estas regiones de forma exitosa.

En todos estos estados la Comisión Federal de Comercio (FTC, por sus siglas en inglés) ha manifestado que no es necesario regular el mercado de los PBMs y se ha opuesto a la implementación de algún tipo de regulación. Sin embargo, debido a la limitada regulación federal aplicable a este sector y la diversidad de conductas de índole anticompetitiva y perjudicial que se ha levantado sobre la operación de los PBMs, la gran mayoría de los estados ha determinado aprobar regulación extensible a la divulgación de información de estas empresas al Gobierno, implementación de exámenes y auditorías estrictas, y requerimientos de documentos de negocios y contractuales.

La regulación de estas entidades por parte de los estados tiene como base que alegadamente los PBMs han incurrido en conducta anticompetitiva o engañosa que perjudica en última instancia a los consumidores, los planes de cuidado de salud y las farmacias. De hecho, en varios estados algunos PBMs han enfrentado acciones legales estatales y federales por alegaciones de fraude, presentación de declaraciones falsas, representaciones erróneas y enriquecimiento injusto mediante esquemas de descuentos secretos y sobornos. (*Mark Meador, Squeezing the Middleman: Ending Underhanded Dealing in the Pharmacy Benefit Management Industry through Regulation, 20 Annals of Health Law 77, 79 (2011).*

Por ello, esta Asamblea Legislativa entiende necesario reglamentar a los Manejadores de Beneficios de Farmacia, los Administradores de Servicios de Farmacias y cualquier entidad similar que tenga operaciones y ofrezca servicios en la jurisdicción de Puerto Rico, incluyendo las que contraten servicios con las Farmacias en Puerto Rico y aseguradores. La reglamentación es necesaria para facilitar la prestación de servicios de salud y proteger al paciente.

**DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:**

Artículo 1.- Título de la Ley

Esta Ley se conocerá y podrá citarse como "Ley Reguladora de los Administradores de Beneficios y Servicios de Farmacia".

Artículo 2.- Definiciones

Para fines de esta Ley, los siguientes términos, frases y palabras tendrán el significado y alcance que se expresan a continuación:

a) Administración de Seguros de Salud de Puerto Rico (ASES)- es la corporación pública responsable de implantar, administrar y negociar, mediante contratos con aseguradores, y/u organizaciones de servicios de salud, un sistema de seguros de salud que brinde a los residentes de Puerto Rico acceso a cuidados médico-hospitalarios.

b) Administrador de Beneficio de Farmacia - también conocidos como *Pharmacy Benefit Administrator* o PBA"– significa una persona, persona jurídica, ente u organización que apoya u ofrece las necesidades administrativas y de sistemas de información de los programas de beneficios de prescripción, como, pero sin limitarse a: la elegibilidad, procesamiento y adjudicación de reclamaciones sobre medicamentos recetados de forma similar a lo que las organizaciones de servicios administrativos (ASO por sus siglas en inglés), que también pueden ofrecer servicios en el área de gastos médicos mayores asociados a hospitalizaciones y enfermedades serias para un auspiciador o persona que le contrate o utilice sus servicios. Se podrá hacer referencia en esta Ley como PBA e incluye entidades afines que no se hagan llamar o se identifiquen como PBA. La definición también incluye a cualquier persona o entidad ofreciendo los servicios y productos que el PBA contrató con la farmacia. Significa personas o grupo de personas que son dueños o controlan subsidiarias que proveen administración de reclamaciones de farmacia, diseño y manejo de beneficios, manejo de redes de farmacias, negociación y administración de descuento de productos, *rebates*, y otros beneficios acumulados al "PBM" u otras drogas recetadas o servicios de equipos a terceros administradores.

c) Comisionado Regulador – significa la persona a cargo de la Oficina Reguladora de los Administradores de Beneficios y Servicios de Farmacias.

d) Costo de Adquisición – significa el costo en que la farmacia adquiere los medicamentos de las droguerías o manufactureras.

e) Costo de Dispensación – significa el reembolso pagado a la farmacia por despachar el medicamento. Este reembolso refleja el costo de los servicios profesionales del farmacéutico y el costo para dispensar los medicamentos a un beneficiario. Los costos farmacéuticos incluyen, pero no se limitan a, los costos razonables relacionados con el tiempo invertido en la obtención de información sobre cubierta médica, revisión del perfil del paciente, utilización de medicamentos, revisión del listado de medicamentos del plan médico, componer la mezcla del medicamento, etiquetado, frascos utilizados, consejería farmacéutica y entrega, entre otros relacionados.

f) Costo Máximo Permitido ("*Maximum Allowable Cost*", MAC) – significa la unidad de precio más alto en que se basa el PBM para pagar o reembolsar a una farmacia el costo de adquisición de medicamentos, medicamentos genéricos o bioequivalentes ("*Multi-Source Brands*").

g) Droga o Medicamento– significa cualquier sustancia de origen animal, vegetal, mineral o sintética, o combinación de éstas: (1) reconocida en el compendio oficial de la Farmacopea de los Estados Unidos, Formulario Nacional, o Farmacopea Homeopática de los Estados Unidos; o (2) para ser usada en el diagnóstico, cura, alivio, tratamiento o

prevención de una enfermedad, lesión o cualquier otra condición que afecte la salud del ser humano u otro animal; o (3) para, sin ser alimento, ser usada para afectar o evaluar la estructura o función del cuerpo del ser humano o de otro animal; o (4) los componentes de cualquiera de las anteriores.

h) Dispensación o despacho – significa la acción llevada a cabo por el farmacéutico de recibir, verificar, evaluar e interpretar una receta, seleccionar o componer, envasar, rotular y entregar el medicamento o artefacto al paciente o a su representante autorizado, incluyendo orientarle y aconsejarle acerca de la utilización adecuada del mismo. Disponiéndose, que el técnico de farmacia, el interno de técnico de farmacia, así como el interno de farmacia, podrá ejecutar algunas de estas funciones bajo la supervisión del farmacéutico, con excepción de verificar la receta y orientar al paciente. En el caso de medicamentos para uso en los animales, se procederá conforme a lo dispuesto en la Ley Núm. 194 de 4 de agosto de 1979, según enmendada, conocida como "Ley de la Práctica de la Medicina Veterinaria de Puerto Rico."

i) Farmacéutico – significa toda persona debidamente autorizada, de acuerdo con la Ley 247-2004, según enmendada, conocida como "Ley de Farmacia de Puerto Rico", para ejercer la profesión de farmacia en Puerto Rico.

j) Farmacia – significa establecimiento de servicio de salud, ubicado físicamente en la jurisdicción de Puerto Rico, autorizado y registrado de conformidad con las disposiciones de esta Ley, para dedicarse a la prestación de servicios farmacéuticos, que incluye: la dispensación de medicamentos de receta, medicamentos sin receta, artefactos y otros productos relacionados con la salud, la prestación de cuidado farmacéutico y otros servicios dentro de las funciones del farmacéutico establecidas en esta Ley. Disponiéndose, que la farmacia podrá ofrecer al público otros servicios y productos de lícito comercio, según las leyes aplicables, o su representante legal o autorizado.

k) Identificador de Producto Genérico ("*Generic Product Identifier*", GPI)- significa un sistema de clasificación jerárquica que identifica los medicamentos desde su uso terapéutico primario hasta el producto intercambiable único, independientemente del tamaño del fabricante o del empaque.

l) Manejador de Servicios de Farmacia también conocido como "*Pharmacy Benefit Manager*s o PBM"- significa una persona, persona jurídica, ente u organización dedicada a proveer servicios de manejo, administración, revisión, asesoría de beneficios de medicamentos recetados para auspiciadores ("*plan sponsors*") como los patronos, patronos auto asegurados, organizaciones de servicios de salud, planes de salud, administradores de terceros, grupos sindicales y otras personas que contratan dichos servicios para realizar alguna o varias de las siguientes actividades, entre otras: administrar servicios o cubierta de farmacia del auspiciador, procesamiento de recetas y reclamaciones, manejo de beneficios de servicios de medicamentos, programas de adhesión al uso de medicamentos ("*drug adherence management*"), programa de interacción de medicamentos, programa de utilización de medicamentos, formulario de medicamentos, comité y asesoría de formularios de medicamentos y su manejo,

programas de utilización de genéricos e incentivos; análisis de datos médicos y de medicamentos, servicios de revisión de la utilización de medicamentos (*"drug utilization review"*), servicios de pre-autorización de medicamentos, manejo de programas de repeticiones de medicamentos, manejo de terapia médica (*"medical theraphy management"* o *"MTM"*), manejo de bienestar, contratación de red de proveedores de servicios de farmacia, centros de servicio al cliente y de llamadas, manejo de servicios de farmacia por correo, contrataciones con manufactureros de medicamentos y terceros relacionados a sus servicios, informes, servicios actuariales, servicios de informática y procesamiento, manejo de la terapia de medicamentos de enfermedades y asesoría y utilización de farmacéuticos clínicos. Se podrá hacer referencia en esta Ley como PBM e incluyen entidades afines que no se hagan llamar o se identifiquen como PBM. La definición también incluye a cualquier persona o entidad ofreciendo los servicios y productos que el PBM contrató con la farmacia.

m)     Oficina – significa la Oficina del Comisionado Regulador de los Administradores de Beneficios y Servicios de Farmacia.

n) Organización de Seguros de Salud o Asegurador – significa una entidad sujeta a las leyes y reglamentos de seguros de Puerto Rico o sujeta a la jurisdicción de la Oficina del Comisionado de Seguros, que contrata o se ofrece a contratar para proveer, suministrar, tramitar o pagar los costos de servicios de cuidado de salud o reembolso, incluyendo cualquier corporación con o sin fines de lucro de servicios hospitalarios y de salud, las organizaciones de servicios de salud y cualquier otra entidad que provea planes de beneficios, servicios o cuidado de la salud.

o) Pago por Medicamento – significa la cantidad pagada por el "PBM" a la farmacia contratada, por el costo de la droga dispensada a un paciente. Este pago no incluye el pago por la labor del farmacéutico al dispensar una receta o *"dispensing fee"*.

p) Plan médico – significa un contrato de seguro, póliza, certificado, o contrato de suscripción con una organización de seguros de salud, organización de servicios de salud o cualquier otro asegurador, provisto en consideración o a cambio del pago de una prima, o sobre una base pre pagada, mediante el cual la organización de seguros de salud, organización de servicios de salud o cualquier otro asegurador se obliga a proveer o pagar por la prestación de determinados servicios médicos, de hospital, gastos médicos mayores, servicios dentales, servicios de salud mental, o servicios incidentales a la prestación de éstos.

q) Precio Mayorista Promedio (*"Average Wholesale Price"*, AWP)- significa la lista que tiene el precio sugerido por el manufacturero a la droguería para los medicamentos de marca o biosimilares, según publicado por First Databank, Medi-Span, sus sucesores o entidades similares de uso general en la industria de la farmacia.

Artículo 3.- Creación de la Oficina

Se crea la Oficina del Comisionado Regulador de los Administradores de Beneficios y Servicios de Farmacia la cual estará adscrita al Departamento de Salud y tendrá a su

cargo el reglamentar todo lo relacionado a los PBMs, PBAs y entidades afines. El Secretario de Salud supervisará la operación de la Oficina y estará facultado para aprobar los reglamentos que contendrán los criterios y normas que regirán sus funciones. A tales fines, designará un funcionario de confianza, quien fungirá como Comisionado Regulador, que le asistirá en la ejecución e implementación de la Oficina. El referido funcionario podrá ser un Secretario Auxiliar o cualquier otro funcionario dentro de la estructura gerencial del Departamento de Salud. No obstante, ello no podrá implicar que se delegue en tal funcionario la facultad de despedir o nombrar personal, ni la facultad de aprobar reglamentación.

El Comisionado Regulador devengará el sueldo anual que le sea fijado por el Secretario de acuerdo a las normas que rigen para el cargo de igual o similar nivel en el Gobierno de Puerto Rico.

Será deber de la Administración de Seguros de Salud (ASES) promulgar y adoptar toda reglamentación u orden administrativa, al amparo de su Ley habilitadora, que establezca los procedimientos para atender los asuntos comprendidos en esta ley sobre los PBMs, PBAs y entidades afines que estén contratadas por la ASES para brindar servicios al Plan de Salud del Gobierno de Puerto Rico. Tal reglamentación deberá aprobarse de conformidad con lo establecido en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" y con la Ley 48-2018, conocida como "Ley de la Revisión e Implementación de Reglamentos Administrativos".

Artículo 4.- Requisitos del cargo de Comisionado Regulador

El Comisionado Regulador:

a) Será una persona de reconocida probidad moral.

b) Podrá ser un abogado admitido al ejercicio de la profesión por el Tribunal Supremo de Puerto Rico, o un Contador Público Autorizado (CPA), o poseer un mínimo de diez (10) años de experiencia en administración de servicios de salud.

c) No podrá haber desempeñado cargo alguno en una aseguradora, farmacia, PBM, PBA, cinco (5) años previos al nombramiento.

Artículo 5.- Derechos de Presentación, Licencia y otros

Para poder operar y ofrecer servicios en Puerto Rico los PBMs, PBAs y entidades similares tienen que cumplir con los siguientes requisitos:

a.  Obtener una licencia emitida por la Oficina creada en esta Ley.

b.  Tener una oficina en Puerto Rico, ser una entidad jurídica autorizada por el Departamento de Estado del Gobierno de Puerto Rico y contar en todo momento dentro de su equipo de trabajo con personal que pueda comunicarse en inglés y español. El personal que hable español estará disponible en todo momento para atender cualquier asunto relacionado a las farmacias contratadas en Puerto Rico. Entre estos asuntos se

encuentran, pero no se limitan a: llamadas de servicio al cliente, procesos de reclamaciones, auditoría y cualquier otro asunto entre las partes.

c. Remitir, por concepto de la licencia, un pago anual de veinte mil dólares ($20,000.00) pagadero al Secretario de Hacienda. Estas partidas, sin que constituya una limitación para la asignación de cantidades adicionales según lo determine el Secretario, serán utilizadas de forma exclusiva para sustentar la operación del Comisionado Regulador.

d. La licencia que emita la Oficina tendrá vigencia de un (1) año y su solicitud de renovación deberá presentarse con al menos cuarenta y cinco (45) días calendario antes de la fecha de vencimiento, acompañada de un cheque certificado por la cantidad de veinte mil dólares ($20,000.00) a nombre del Secretario de Hacienda. El Comisionado Regulador tendrá treinta (30) días calendario desde que se reciba la solicitud de renovación para expedir la licencia o indicar la razón por la que no la expide, otorgando un término de quince (15) días calendario para que el PBM, PBA o entidad afín, subsane las deficiencias. De no subsanar las deficiencias en el término otorgado la solicitud no será aprobada.

e. La solicitud para otorgar la licencia a los Manejadores de Servicios de Farmacia (PBM's) y de Administradores de Beneficios de Farmacia (PBA's) tendrá la siguiente información:

1. Nombre completo del dueño (sea persona natural o persona jurídica), incluyendo número de teléfono, celular, facsímile, dirección postal y física de las oficinas y el lugar de trabajo y su correo electrónico.

2. Nombre del representante autorizado, incluyendo los dos (2) apellidos, número de teléfono, celular, facsímile, dirección postal y física de las oficinas, lugar de trabajo y correo electrónico.

3. Nombre y dirección del PBM, PBA o entidad afín.

4. Proveer el *"Federal Employer Identification Number"*, también conocido como el *"Employer Identification Number"* (EIN).

5. Registro de Cumplimiento (*"good standing"*) del Departamento de Estado; copia certificada de los estados financieros auditados del año anterior; certificaciones del CRIM con respecto a propiedad mueble e inmueble, Certificado de Registro de Comerciante, Patente Municipal y cualquier otra documentación aplicable a la operación de sus instalaciones en Puerto Rico. En caso de ofrecer servicios a la Administración de Seguros de Salud (ASES) o a cualquier otra agencia del Gobierno, deberá presentar evidencia de que puede ofrecerle servicios de acuerdo a los requisitos aplicables exigidos por dicha agencia.

f. Para ofrecer sus servicios o beneficios, los PBMs, PBAs o entidades afines, no podrán operar una farmacia o droguería en Puerto Rico, mediante convenio, arreglo, contrato, esquema corporativo operacional con cualquier farmacia o droguería o

persona natural o jurídica, a través de la corporación o por medio de un ejecutivo o empleado de la empresa, o familiar por lazos de consanguinidad dentro del cuarto grado.

g. A los PBMs, PBAs o entidades afines que a la fecha que se haga efectiva esta Ley, se encuentren ofreciendo sus servicios o beneficios dentro de la jurisdicción de Puerto Rico, no les será de aplicación el inciso (f) de este Artículo.

Artículo 6.- Funciones y Poderes del Comisionado Regulador

El Comisionado Regulador tendrá las siguientes funciones, deberes y responsabilidades:

a) El Comisionado Regulador estará a cargo de hacer cumplir las disposiciones de esta Ley y podrá suspender por justa causa o revocar la licencia emitida a un PBM, PBA o entidad afín. Para efectos de este inciso constituirá justa causa para revocar la licencia cuando el PBM , PBA o entidad afín haya: cometido fraude; provisto información falsa intencionalmente; se le haya revocado o suspendido su licencia previamente; cometido delitos afines o relacionados con la apropiación ilegal, malversación de fondos, fraude y falsedad ideológica o de documentos e; incumplido con cualquiera de los requisitos en esta Ley o de aquellos que imponga el Secretario o el Comisionado Regulador mediante reglamento.

b) Fiscalizar que los PBMs, PBAs, o entidades afines cumplan con los pagos a los proveedores de farmacia en un término que no exceda de treinta (30) días calendario, así como el cumplimiento con esta Ley y su reglamento.

c) Investigar, auditar o examinar las operaciones, transacciones, cuentas, archivos, documentos y capital de los PBMs, PBAs o entidades afines de sus operaciones en Puerto Rico para verificar su cumplimiento con esta Ley y su reglamento. Dicho proceso se llevará a cabo no menos de una vez cada dos (2) años.

d) Verificar que los contratos entre los PBMs, PBAs o entidades afines y las farmacias cumplen con lo siguiente:

1) que no son arbitrarios o discriminatorios;

2) el reembolso por el medicamento y el costo por dispensación deberá ser consistente con los estándares en el mercado, por lo que no debe ser reducido de manera unilateral, arbitraria o discriminatoria; tampoco debe tener propósitos retaliatorios;

3) que no se establezca el pago de los medicamentos por debajo de los costos de adquisición, siempre y cuando la farmacia provea la factura de compra del producto despachado;

4) que se haya efectuado una evaluación del contenido de las compensaciones ofrecidas;

5) la actualización de la lista con el precio "MAC" para productos genéricos o bioequivalentes y la AWP para productos de marca o biosimilares; y

6) que sean en español o inglés.

e) Adjudicar controversias sobre violaciones a esta Ley o su reglamento, cumpliendo para ello con el procedimiento dispuesto en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

f) Administrar juramentos y afirmaciones, citar testigos, compeler su comparecencia, recibir o tomar evidencia, emitir órdenes y requerir la presentación de libros, papeles, correspondencia, apuntes, convenios u otros documentos o registros que el Comisionado Regulador estime necesarios.

g) Hacer recomendaciones al Secretario de Justicia a través del Secretario de Salud, en aquellos casos en que cualquier PBMs, PBAs o entidades afines incumplan con esta Ley.

h) Representar al Departamento de Salud en toda acción judicial, criminal o civil, en primera instancia o en apelación, y en aquellos procedimientos ante las autoridades federales, administrativas o judiciales, en que el Gobierno de Puerto Rico esté interesado y que se relacionen con el cumplimiento de esta Ley.

i) Cumplir con todas las demás encomiendas que para la ejecución de esta Ley le haga el Secretario y rendirle a dicho funcionario los informes que éste le requiera.

j) Atender las querellas radicadas por cualquier incumplimiento a esta Ley o sus reglamentos.

k) El Comisionado Regulador podrá ser asesorado por el personal del Departamento de Salud y/o de la Oficina del Comisionado de Seguros, a quien éste le solicite asesoría o ayuda de éstos, al igual que de otras agencias estatales y federales.

Artículo 7.- Precio de Máximo Costo Permitido o "Maximum Allowable Cost" (MAC, por sus siglas en inglés)

a. El PBM, PBA o cualquier entidad afín usará el MAC para fijar el pago máximo a los proveedores de servicios a las farmacias en medicamentos genéricos, manufacturados o distribuidos por múltiples suplidores. Cualquier producto genérico que tenga un solo suplidor o manufacturero, se regirá por el MAC, considerando que este producto tiene un solo suplidor como fórmula de pago. Todo PBM, PBA o entidad afín divulgará a los proveedores de servicios de farmacia la lista MAC.

b. Para colocar una droga o medicamento en la lista MAC, el PBM, PBA o entidad afín, debe asegurarse que la droga está listada con un "rating" de A o B en la versión más reciente del U.S. Federal Food and Drug Administration (FDA) "Approved Drug Products with Therapeutic Equivalence Evaluations", conocida como el "Orange Book" o "Purple Book" o tener un NR o NA "rating" o "rating" similar por una Referencia

Nacional Reconocida y la droga deberá estar generalmente disponible para comprar por la farmacia.

c. El PBM, PBA o entidad afín, deberá asegurarse que el pago por dispensación de receta o *"dispensing fee"*, no sea incluido dentro de la fórmula del cálculo del precio MAC pagado a los proveedores de servicios de farmacia.

d. Para cada medicamento que los PBMs, PBAs o entidades afines incluyan en su lista MAC, deberán remitir al Comisionado Regulador la siguiente información:

1. Hacer disponible la lista de drogas sujeta al precio MAC y la lista actual con el precio MAC e información de identificación en el compendio de precio nacional de la droga *("National Drug Code"*, NDC por sus siglas en ingles*).*

2. Revisar y actualizar cada siete (7) días los precios de la lista MAC.

3. Hacer disponible a las farmacias las actualizaciones de las drogas sujeta a la lista MAC y su precio MAC y el *Generic Product Identifier*, GPI.

Artículo 8.- Reembolso de pago de medicamentos por debajo del costo de adquisición.

a. Si al procesar una receta de medicamentos el PBM, PBA o entidad afín paga por debajo del costo de adquisición, la farmacia tendrá noventa (90) días calendario, a partir de la notificación del pago por debajo del costo de adquisición del PBM, PBA o entidad afín, para someter la reclamación.

b. Los PBMs, PBAs o entidades afines tendrán disponible en su portal de Internet, el formulario de reclamación de pago.

c. Los PBMs, PBAs o entidades afines, proveerán el nombre de la persona que atenderá la reclamación, el correo electrónico y número de teléfono o extensión directa. La persona deberá dominar y comunicarse correctamente en el idioma español, tanto por escrito, como de manera verbal.

d. La farmacia completará la solicitud de reclamación e incluirá la factura de la droguería que indique los costos de adquisición del medicamento y tramitará la misma a la persona indicada por el PBM, PBA o entidad afín. Los PBMs, PBAs o entidades afines tendrán cuarenta y cinco (45) días calendario para verificar la información y determinar sobre la misma. Si la reclamación es válida, notificará por escrito y permitirá a la farmacia reversar la receta del medicamento en disputa de forma inmediata. Si transcurriese el término antes expuesto sin que el PBM, PBA o entidad afín hubiese evaluado y notificado determinación, se considerará que la reclamación ha sido aprobada.

e. Si el PBM, PBA o entidad afín, deniega la reclamación de la receta en disputa, resuelve parcialmente o tomase cualquier decisión sobre la misma, notificará su determinación por escrito exponiendo las razones específicas, dentro del término establecido en el inciso (d). En caso de que la determinación del PBM, PBA o entidad afín fuere adversa o no satisfactoria para la farmacia, esta podrá someter una querella

ante el Comisionado Regulador, dentro de treinta (30) días calendario a partir de la fecha de notificación. La decisión del Comisionado Regulador será una final basada en el expediente administrativo.

f. En la querella ante el Comisionado Regulador, la farmacia enviará la factura comercial de la droguería y evidencia del pago recibido por el PBM, PBA o entidad afín del medicamento pagado por debajo del costo de adquisición. El Comisionado Regulador tendrá treinta (30) días calendario, contados a partir del recibo de la querella, para considerar y resolver la misma y notificar su determinación por escrito a la farmacia. El Comisionado tendrá facultad y podrá solicitar directamente a la droguería y/o distribuidor que vendió a la farmacia que apela el precio, evidencia de factura comercial.

g. Si la querella es denegada o aprobada, el Comisionado Regulador debe proveer por escrito la razón para denegar o aprobar la misma, e identificar el código nacional de droga de productos y el nombre y lugar del distribuidor, mayorista o la droguería donde se puede comprar la droga al costo menor. Para su evaluación, el Comisionado Regulador podrá solicitar al distribuidor mayorista o a las droguerías, el costo del medicamento objeto de apelación para ese periodo y para esa farmacia.

h. El Comisionado Regulador podrá permitir que los ajustes en pago a la farmacia sean retroactivos a la fecha de transmisión de la reclamación, si se determina que el pago recibido por la farmacia ha sido aplicado incorrectamente o pago por debajo del precio disponible en el mercado de Puerto Rico, siempre y cuando la farmacia provea la factura de compra del producto despachado.

i. En caso de que el PBM, PBA o entidad afín haya pagado un producto incorrectamente o por debajo del precio disponible en el mercado de Puerto Rico en algún periodo, el Comisionado Regulador deberá publicar electrónicamente para beneficio de las farmacias.

j. Todo proceso de reclamación podrá ser tramitado por escrito y a través de medios electrónicos o envío por facsímile. Se prohíbe que tales procesos se ventilen exclusivamente por vía telefónica o cualquier otro medio cuya naturaleza no permita una constancia escrita de las gestiones realizadas.

Artículo 9.- Informes trimestrales sobre reembolsos de pagos y medicamentos denegados

a) Todo PBM, PBA o entidad afín estará obligada a someter al Comisionado Regulador, informes trimestrales en los cuales consignará, de la manera proscrita por el Comisionado Regulador mediante reglamento, y tomando las precauciones necesarias para proteger la identidad de los asegurados, el número total de los reembolsos de pagos y medicamentos denegados, la justificación para dicha determinación y cualquier información adicional pertinente que se establezca mediante reglamento. Además, incluirán la información de todas las reclamaciones que se encuentren en proceso de apelación.

b) Los plazos trimestrales para la radicación de los informes exigidos en este Artículo comenzarán a discurrir noventa (90) días calendario a partir del término establecido en el Artículo 23 de esta Ley. Para dicho término, el Comisionado Regulador deberá tener disponible los formularios necesarios para recopilar la información requerida en los informes. Estos formularios se remitirán a todos los obligados a rendir dichos informes.

c) La dilación o inacción del Comisionado Regulador en cuanto a la preparación, tanto de reglamentación como de los formularios para requerir la información, no será, sin embargo, justificación para que los PBMs, PBAs o entidades afines obligadas a rendir estos informes, no provean la información requerida a partir del primer trimestre.

d) El Comisionado Regulador será responsable de mantener en su página cibernética, todos los informes que en cumplimento de este Artículo sean sometidos, así como los nombre de aquellos PBMs, PBAs o entidades afines que no provean, en el plazo requerido, la información correspondiente.

Artículo 10.- Auditorías

Las auditorías a las farmacias por parte de los PBMs, PBAs o entidades afines o cualquier entidad actuando en su representación, deberán cumplir con el siguiente procedimiento:

a) Una notificación escrita, treinta (30) días calendario previo al comienzo de la auditoría, la cual no puede exceder la cantidad de trescientas (300) recetas del universo de recetas procesadas por la farmacia en un año. Las recetas a auditar no pueden ser bajo un listado enmascarado, deben ser identificadas previamente.

b) El periodo de tiempo cubierto por la auditoría no excederá de tres (3) años de la fecha en que la reclamación fuere sometida o adjudicada por los PBMs, PBAs o entidades afines, excepto cuando legislación federal requiera un periodo de tiempo diferente bajo la sospecha de fraude.

c) Si la auditoría es en la farmacia, o a través de correo electrónico, facsímile o cualquier método que no requiera la presencia del auditor en la farmacia (también conocida como auditorías de escritorio), debe ser notificada con diez (10) días calendario de antelación al proveedor de servicios de farmacia. Los PBMs, PBAs o entidades afines deben proveer un listado de las recetas a ser auditadas para que la farmacia lo tenga listo o lo pueda enviar por correo electrónico cuando así le sea solicitado al auditor o su representante.

d) En la eventualidad que la auditoría requiera de conocimiento profesional, tanto los PBMs, PBAs o entidades afines, así como la farmacia, se deberá nombrar un farmacéutico debidamente licenciado en Puerto Rico, para que dichos profesionales puedan discutir los asuntos relacionados a la auditoría.

e) En el caso que se identifique una receta que se haya sobrepagado, los PBMs, PBAs o entidades afines no incluirán dentro del ajuste el costo de dispensación de la receta.

f) Los PBMs, PBAs o entidades afines no podrán requerir sistemas de récord más estrictos a las farmacias que los que se requieren por las leyes estatales y federales.

g) Los PBMs, PBAs o entidades afines, (o cualquier entidad actuando en su representación), someterán a la farmacia un informe de discrepancia inicial dentro de un periodo de treinta (30) días calendario, a partir de la fecha de la auditoría. La farmacia tendrá treinta (30) días calendario, contados a partir de la fecha del recibo del informe para solicitar la reconsideración de los señalamientos ante el PBM, PBA o entidad afín. A su vez, los PBMs, PBAs o entidades afines tendrán un periodo de treinta (30) días calendario, a partir del recibo de la solicitud de reconsideración de la farmacia, para evaluar y emitir una determinación sobre el particular. Si luego de atendida la solicitud de reconsideración la farmacia no está de acuerdo con la determinación o le fuera adversa, o en aquellos casos que el PBM, PBA o entidad afín no emitiese una determinación sobre la reclamación de la farmacia dentro del término concedido en este inciso, la farmacia podrá solicitar una revisión administrativa ante el Comisionado Regulador para su determinación final, dentro de un periodo no mayor de treinta (30) días calendario, a partir del recibo de la notificación del PBM, PBA o entidad afín o a partir de la expiración del término concedido en esta Ley, lo que ocurra primero. El Comisionado Regulador tendrá treinta (30) días calendario, a partir del recibo de la apelación, para evaluar y determinar sobre la misma.

h) Si el Comisionado Regulador sostiene la determinación del PBM, PBA o entidad afín, entonces someterá una notificación por escrito con el monto que la farmacia debe pagar por concepto de auditoría y la farmacia tendrá treinta (30) días calendario, contados a partir de la determinación final del Comisionado Regulador, para pagarla o establecer un plan de pago. Si el Comisionado Regulador resuelve a favor de la farmacia, el PBM, PBA, o entidad afín no podrá cobrar la notificación de deficiencia.

i) En la eventualidad que los resultados de auditoría culminen en la identificación de cualquier error administrativo o error de mantenimiento de récord (errores tipográficos, error de computadora, entre otros), en el requerimiento de récord o documentos, se notificará por escrito a la farmacia, haciendo alusión a los errores específicos y se otorgará un término de treinta (30) días calendario, contados a partir de la notificación, para subsanar dicho error. De la farmacia no subsanar el error dentro del término aquí establecido, estará sujeta al recobro de fondos pagados por los PBMs, PBAs o entidades afines por el costo de medicamentos despachados, a menos que:

1. El PBM, PBA o entidad afín pueda proveer prueba de intento de cometer fraude.

2. El error de la farmacia causó daño financiero significativo al PBM, PBA o entidad afín. Esta determinación estará basada en estudio económico llevado a cabo por un contador público autorizado y será determinado por el Comisionado Regulador.

3. Los PBMs, PBAs o entidades afines (o cualquier entidad actuando en su representación), no podrán utilizar la extrapolación u otras técnicas de expansión estadística para calcular la cantidad de repago o penalidad que resulte de la auditoría de la farmacia.

Artículo 11.- Término para el pago de reclamaciones y pago puntual

Los pagos por los servicios rendidos por los proveedores de servicios de farmacia se pagarán de la siguiente manera:

a) Una vez el proveedor de servicios de farmacia someta sus reclamaciones de pago por servicios prestados al PBM, PBA o entidad afín, éstos estarán obligados a pagar en su totalidad toda la reclamación procesable para pago dentro del término no mayor de treinta (30) días calendario, a partir de la fecha en que el PBM, PBA o cualquier entidad afín, procese o adjudique las reclamaciones vía conducto electrónico en tiempo real. No obstante, el PBM, PBA o entidad afín deberá evaluar, procesar y determinar sobre la reclamación de pago y notificar por escrito a la farmacia sobre su determinación, ya sea de aprobación o en el caso de haber rechazado el pago de alguna partida contenida en la reclamación, exponiendo las razones para tal denegación. Este inciso será de aplicación a cualquier tercero que tenga una relación contractual con algún PBM, PBA o entidad afín.

b) Si algún medicamento se pagó por debajo del costo de adquisición, el proveedor de servicio de farmacia podrá hacer una reclamación a los PBMs, PBAs o entidades afines, según se dispone en esta Ley. Se prohíbe en el contrato entre el proveedor de servicios de farmacia y los PBMs, PBAs o entidades afines, cualquier cláusula que contravenga lo expresado sobre el término para el pago o el derecho a someter reclamaciones y el pago de éstas, una vez el PBM, PBA o cualquier entidad afín haya realizado la debida evaluación.

Artículo 12.- Cambios de Medicamentos en la Lista de Medicamentos

En el caso de que una aseguradora, administradores de beneficios de farmacia, o cualquier entidad actuando en su representación , decida remover un medicamento de mantenimiento previamente incluido en la lista de medicamentos seleccionados por el Comité de Farmacia y Terapéutica de una aseguradora, ésta tendrá la obligación de continuar proveyendo dicho medicamento bajo la cubierta de farmacia por un periodo de treinta (30) días calendario según regulación federal y noventa (90) días calendario para la ASES, a partir de la notificación de su remoción. De esta manera, los pacientes pueden continuar recibiendo dicho el medicamento removido mientras se realiza, por parte del profesional de la salud, el cambio de medicamento que sea necesario para continuar con el tratamiento del paciente afectado por la remoción.

Artículo 13.- Terminación o no renovación de servicios a proveedores de servicio de Farmacia

Toda terminación, cancelación o no renovación de un contrato o acuerdo entre el PBM, PBA o cualquier entidad afín con un proveedor de servicios de farmacia deberá

ser por justa causa. Excepto en casos de sospecha de fraude, abuso o desperdicio relacionado al Plan de Salud del Gobierno de Puerto Rico, en toda terminación, cancelación o no renovación del contrato o acuerdo, será obligación del PBM, PBA o cualquier entidad afín emitir una notificación por escrito a la farmacia con no menos de noventa (90) días calendario, previo a la fecha establecida para la terminación o cancelación, exponiendo las causas específicas para la misma.

Artículo 14.- Prácticas prohibidas a los PBMs, PBAs y entidades afines

Se prohíbe a los PBMs, PBAs y entidades afines:

a) Interferir o alterar unilateralmente a los pacientes las prescripciones de medicamentos, equipos, pruebas clínicas, terapias, procedimientos u otros servicios realizados por profesionales de salud, según establecido en el Capítulo 4 sobre Manejo de Medicamentos de Receta del Código de Seguros de Salud. Se dispone además, que una vez un medicamento sea debidamente aprobado y autorizado por un PBM, PBA o entidad afín, las repeticiones de dicho medicamento o nuevas recetas no podrán ser denegadas, siempre y cuando se trate de la misma dosificación excepto cuando el protocolo clínico lo indique. La aprobación de los medicamentos no podrá exceder de veinticuatro (24) horas si es urgente o expedito y no mayor de setenta y dos (72) horas en los demás casos.

b) Realizar acto, acción o práctica que se encuentre prohibida para un asegurador al amparo de la Ley 194-2011, según enmendada, conocida como "Código de Seguros de Salud de Puerto Rico", o al amparo de cualquier legislación.

c) Discriminar en cuanto a los requisitos de elegibilidad para ofrecer su servicio a los proveedores contratados por éste.

d) Dar por terminado un contrato suscrito con una corporación, negocio, persona, aseguradora, con otra organización de servicios de salud o proveedor autorizado en Puerto Rico sin justa causa, según dispuesto por el reglamento promulgado por esta Ley, y sin antes proveer una explicación de las razones por las cuales termina o cancela el mismo antes de la fecha de terminación. Esta disposición no aplicará a los casos de terminación por fraude y abuso, violación de ley o reglamento aplicable o para terminaciones requeridas por disposición de alguna ley estatal, federal o normativa aplicables.

e) No implementar y cumplir con las disposiciones del inciso (b) de la Sección 6005 de la Ley Pública Núm. 11-148 de 23 de marzo de 2010, según enmendada, conocida como "Patient Protection and Affordable Care Act". Dicha divulgación de información será remitida al Departamento de Salud. Si la ley federal sufriera enmiendas, las mismas serán aplicables de igual manera.

g) No cumplir con las leyes estatales y federales de pronto pago, así como con cualquier otra ley relacionada con los servicios administrados por ésta. En tal caso deberán notificar por escrito toda práctica de negocios que identifiquen que represente conflicto de intereses.

h) Omitir actualizar cada siete (7) días el precio en los medicamentos cuando ocurra un aumento o disminución, notificando a las farmacias y atemperando estos precios en sus sistemas.

i) Incumplir con cualquier otro requerimiento del Departamento de Salud.

j) No divulgar al asegurador todos los cargos, honorarios y comisiones por concepto de todos los servicios administrativos prestados, incluyendo los honorarios o comisiones pagadas por aseguradores que provean reaseguro.

k) Facturar a las farmacias por el servicio de emitirles sus pagos o retener cantidad alguna de pago conforme a su volumen de negocios o métodos de pagos elegidos.

1) Incluir en sus contratos con las farmacias, el que éstas no puedan informar a los pacientes si existen medicamentos o tratamientos más económicos.

Artículo 15.- Penalidades

1) Toda persona natural o jurídica que infrinja por primera vez las disposiciones de esta Ley será responsable de una multa administrativa no mayor de cinco mil (5,000) dólares, según las disposiciones de la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico". En el caso de incurrir nuevamente en violación a esta Ley en un periodo de tiempo de un (1) año, la multa impuesta podrá ser aumentada hasta un máximo de diez mil dólares ($10,000). Además, el tribunal podrá imponer pena de restitución.

2) Las penalidades aquí establecidas no limitan los derechos de terceros a recobrar daños y perjuicios o penalidades en acciones independientes a las establecidas por el Comisionado Regulador.

3) El Comisionado Regulador podrá suspender o cancelar la licencia emitida en aquellos casos de contumacia, tomando en consideración el periodo de un (1) año.

Artículo 16.- Revisión Administrativa

La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días calendario desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. El Comisionado Regulador, dentro de los quince (15) días calendario de haberse presentado la moción, deberá considerar la misma. Si la rechazare de plano o no actuare dentro de los quince (15) días calendario, el término para solicitar revisión comenzará a discurrir nuevamente desde que se notifique la denegatoria o desde que expiren los quince (15) días calendario, según sea el caso. Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución del Comisionado Regulador resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días calendario siguientes a la radicación de la moción de reconsideración. Si la agencia acoge la moción de reconsideración pero deja de tomar

alguna acción con relación a la moción dentro de los noventa (90) días calendario de haber sido presentada, perderá jurisdicción y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días calendario, salvo que el Comisionado Regulador, por justa causa y dentro de esos noventa (90) días calendario, prorrogue el término para resolver por un período que no excederá de treinta (30) días calendario adicionales.

Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

Artículo 17.- Revisión Judicial

Una parte adversamente afectada por una orden o resolución final del Comisionado Regulador y que haya agotado todos los remedios de revisión administrativa, podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico", cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión al Comisionado Regulador y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. Disponiéndose, que si la fecha de archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.

El recurso de revisión judicial será atendido por el panel o paneles designados para atender los asuntos que se originen en la región judicial o regiones judiciales correspondientes al lugar donde se planifique, se esté llevando a cabo o se haya llevado a cabo la actividad o incidente que hubiera dado lugar a la controversia; o el lugar de trámite y adjudicación de una subasta; o por los paneles designados para atender recursos por su materia o características, conforme lo dispuesto en el Reglamento del Tribunal de Apelaciones.

Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. Sin embargo, la disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.

La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa, sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

Artículo 18.- Se enmiendan los incisos (e) y (g) del Artículo 30.020 del Capítulo 30, de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como "Código de Seguros de Puerto Rico" para que lea como sigue:

"Artículo 30.020.- Definiciones:

A los fines de este Capítulo, los siguientes términos y frases tendrán el significado que se indica a continuación:

a) 'Asegurador'...

b) ...

c) ...

d) ...

e) 'Proveedor Participante': significa todo médico, hospital, centro de servicios primarios, centro de diagnóstico y tratamiento, dentista, laboratorio, farmacia, servicios médicos de emergencia pre-hospitalarios o cualquier otra persona autorizada en Puerto Rico para proveer servicios de cuidado de salud, que bajo contrato con un Asegurador u Organización de Servicio de Salud, PBM, PBA o entidad afín, preste servicios de salud a suscriptores o beneficiarios de un plan de cuidado de salud o seguro de salud.

f) ...

g) 'Organización de Servicios de Salud': significa cualquier persona, incluyendo a los PBMs, PBAs, o entidades afines que ofrezca o se obligue a proveer, a uno o más suscriptores de planes de cuidado de salud, conforme a la Ley Núm. 77 de 19 de junio de 1957, según, enmendada, conocida como "Código de Seguros de Puerto Rico".

..."

Artículo 19.- Se añade un nuevo inciso (k) al Artículo 3 de la Ley 77-2013, según enmendada, conocida como "Ley del Procurador del Paciente del Estado Libre Asociado de Puerto Rico", para que lea como sigue:

"Artículo 3.– Definiciones

(a) ...

(b) ...

(c) ...

(d) ...

(e) ...

(f) ...

(g) ...

(h) ...

(i) ...

(j) ...

(k) "Manejador de Servicios de Farmacia" también conocidos como "Pharmacy Benefit Managers o PBMs" - se refiere a una persona, persona jurídica, ente u organización dedicada a proveer servicios de manejo, administración, revisión, asesoría de beneficios de medicamentos recetados para auspiciadores ("plan sponsors") como los patronos, patronos autoasegurados, organizaciones de servicios de salud, planes de salud, administradores de terceros, grupos sindicales y otras personas que contratan dichos servicios para realizar alguna o varias de las siguientes actividades, entre otras: administrar servicios o cubierta de farmacia del auspiciador, procesamiento de recetas y reclamaciones, manejo de beneficios de servicios de medicamentos, programas de adhesión al uso de medicamentos ("drug adherence management"), programa de interacción de medicamentos, programa de utilización de medicamentos, formulario de medicamentos, comité y asesoría de formularios de medicamentos y su manejo, programas de utilización de genéricos e incentivos; análisis de datos médicos y de medicamentos, servicios de revisión de la utilización de medicamentos ("drug utilization review"), servicios de pre-autorización de medicamentos, manejo de programas de repeticiones de medicamentos, manejo de terapia médica ("medical therapy management o MTM"), manejo de bienestar, contratación de red de proveedores de servicios de farmacia, centros de servicio al cliente y de llamadas, manejo de servicios de farmacia por correo, contrataciones con manufactureros de medicamentos y terceros relacionados a sus servicios, informes, servicios actuariales, servicios de informática y procesamiento, manejo de la terapia de medicamentos de enfermedades y asesoría y utilización de farmacéuticos clínicos. Se podrá hacer referencia en esta Ley como PBMs e incluyen entidades afines que no se hagan llamar o se identifiquen como PBMs. La definición también incluye a cualquier persona o entidad ofreciendo los servicios y productos que el PBM contrató con la farmacia."

Artículo 20.- Se enmienda el inciso (g) del Artículo 7 de la Ley 77-2013, según enmendada, conocida como "Ley del Procurador del Paciente del Estado Libre Asociado de Puerto Rico", para que lea como sigue:

"Artículo 7.- Responsabilidad del Procurador

El Procurador será responsable de la organización y funcionamiento de la Oficina, para lo cual tendrá las siguientes facultades y deberes:

(a)...

(b)...

(c) ...

(d) ...

(e) ...

(f) ...

(g) Procesar, evaluar y adjudicar querellas presentadas por los pacientes, sus padres o tutores, farmacéuticos o médicos en protección de los intereses de sus pacientes relacionadas con las entidades privadas y agencias públicas que son proveedores y que prestan servicios de salud, así como contra las entidades aseguradoras a quienes se les ha pagado la prima correspondiente a dichos pacientes, incluyendo aquellas relacionadas al acceso del paciente a sus medicamentos y los Manejadores de Beneficios de Farmacia, según se define en esta Ley. Aquellos casos que se refieran a querellas contra médicos en el ejercicio de su profesión, el Procurador referirá las mismas a la Junta de Licenciamiento y Disciplina Médica. Para ello se autoriza al amparo de esta Ley a emitir órdenes para la comparecencia y declaración de testigos, requerir la presentación o reproducción de cualesquiera papeles, libros, documentos, expedientes u otra evidencia pertinente a una investigación o querella ante su consideración, emitir órdenes y determinaciones dirigidas a estas entidades públicas o privadas, así como imponer cualquier sanción por incumplimiento con las mismas."

…"

Artículo 21.- Disposiciones sobre movilidad y traslado de empleados

Al amparo del concepto de Empleador Único, establecido en la Ley 8-2017, según enmendada, conocida como "Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico", el Comisionado Regulador podrá reclutar internamente personal que tenga el peritaje necesario para propiciar el cumplimiento con las disposiciones de esta Ley. De efectuarse el reclutamiento interno de personal este o cualquier otro organismo gubernamental debe hacerse sin menoscabar los servicios que ofrecen estos organismos.

Artículo 22.- Cláusula de Separabilidad

Si algún artículo o párrafo o sección de esta Ley, o cualquiera de sus partes, fuera declarada ilegal, nula o inconstitucional por un tribunal o un organismo con jurisdicción y competencia, el remanente de esta Ley o de sus partes, artículos, párrafos o secciones continuarán en toda su fuerza y vigor como si el artículo o párrafo o sección de esta Ley, o cualquiera de sus partes, que fue declarada ilegal, nula o inconstitucional nunca hubiese existido.

Artículo 23.- Reglamentación

Se conceden ciento veinte (120) días calendario al Secretario del Departamento de Salud para promulgar y aprobar toda reglamentación, orden administrativa, carta circular o boletín informativo que entienda pertinente para dar cumplimiento a las disposiciones de esta Ley, una vez comience a regir. Las normas que a tales fines se aprueben deberán ser remitidas a la Asamblea Legislativa para su ratificación final. Además, tal reglamentación deberá aprobarse de conformidad con lo establecido en la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" y con la Ley 48-2018, conocida como "Ley de la Revisión e Implementación de Reglamentos Administrativos".

Artículo 24.- Vigencia

Los Artículos 18, 19 y 20 de esta Ley entrarán en vigor inmediatamente después de su aprobación, y sus restantes disposiciones entrarán a los ciento veinte (120) días calendario después de su aprobación.

_____
Presidente del Senado

_____
Presidente de la Cámara

Aprobada en Julio 30, 2019

Gobernador

Este P. de ___3___ Núm __218__

Fue recibida por el Gobernador

Hoy __16__ de __julio__

De _2019_ A las ___3:57 P.4___

_A firmar_