## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                   Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| HON. WANDA VÁZQUEZ GARCED (in her official capacity), and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>               Plaintiffs,<br><br>  v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>              Defendant. | <br><br><br><br><br>Adv. Pro. No. 20-_____-LTS |

## ADVERSARY COMPLAINT FOR
## DECLARATORY RELIEF RELATED TO ACT 90

Plaintiffs Hon. Wanda Vázquez Garced, in her official capacity as the Governor of the

Commonwealth of Puerto Rico (the "Governor"), and the Puerto Rico Fiscal Agency and Financial

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Advisory Authority ("AAFAF," together with the Governor, the "Plaintiffs"), hereby bring this *Adversary Complaint for Declaratory and Injunctive Relief Related to Act 90* (the "Complaint")[2] against Defendant the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "Board"), and allege as follows:

## NATURE OF THE ACTION

1.     By this Complaint, Plaintiffs seek declaratory relief to stop the Oversight Board's unlawful (and wasteful) attempts to nullify a duly enacted law of the Commonwealth—Act No. 90 of 2019 ("Act 90")—under the false pretense of non-compliance with the 2019 Fiscal Plan (defined below).

2.     Over the past several months, the Oversight Board has attempted to use the fiscal plan compliance certification process in section 204(a) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. §§ 2101-2241 ("PROMESA") to undermine the Government's lawful enactment and certification of statutes in conformity with PROMESA. This Complaint deals with the Oversight Board's wrongful efforts to nullify the Government's policy concerning certain pay rate and service provider contract protections in the healthcare industry. In so doing, the Oversight Board is abusing its authority in an attempt to micromanage every aspect of Puerto Rico's governance. If the Board's improper actions are allowed to stand, Puerto Rico would be prohibited from adopting badly needed Medicare reforms to help stem the flight of talented physicians and other medical professionals from the Commonwealth, thereby helping to ensure the health and wellbeing of Puerto Rico's people. The Board's efforts to foil the

---

[2] As used in this Complaint, (i) "Government" means the government of the Commonwealth of Puerto Rico, but not the Oversight Board; (ii) "Commonwealth" means the Commonwealth of Puerto Rico; and (iii) "Legislature" means the Legislative Assembly of the Commonwealth of Puerto Rico.  Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

Government's policy-making authority exceed the Board's lawful powers under PROMESA; this Court should declare them null and void.

3.    PROMESA established the Oversight Board to help Puerto Rico "achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a); 48 U.S.C. § 2121(a). The Oversight Board derives its power solely from the statutory authority Congress granted it under PROMESA. While Congress gave the Board certain powers, Congress respected Puerto Rico's framework of self-government. Congress thus created an Oversight Board of limited power and preserved the democratically-elected Government's powers. While PROMESA grants the Oversight Board broad fiscal powers (including the sole power to certify fiscal plans and budgets and monitor compliance with them), PROMESA preserves to the Government the political and governmental power and discretion to make good-faith policy decisions by, among other things, enacting new legislation.

4.    PROMESA granted the Oversight Board authority to establish parameters to bring fiscal responsibility to Puerto Rico and monitor Puerto Rico's progress, such as the power to approve and certify fiscal plans for both the Commonwealth and its territorial instrumentalities. *See* PROMESA §§ 201(c)(3), (e); 48 U.S.C. §§ 2141(c)(3), (e). The Oversight Board also has authority to monitor and review certain government actions for compliance with certified fiscal plans, but these compliance powers are narrowly circumscribed to give the Government latitude to enact new laws that reflect its public policies designed to address the ever-changing needs of a modern society. *See* PROMESA §§ 203(a)-(c), 204(a); 48 U.S.C. §§ 2143(a)–(c), 2144(a). Although this Court has held that the Oversight Board can embed certain public policy choices in its certified fiscal plans (a decision that is now the subject of a petition for *certiorari* before the United States Supreme Court), the Oversight Board cannot legislate nor unilaterally determine that

any newly enacted law is inconsistent with the applicable fiscal plan and then prevent the application of such law. *See* PROMESA §§ 204(a) (permitting the Oversight Board to prevent the enforcement of new laws only if the Government fails to provide a cost estimate and certification that the new law is "not significantly inconsistent" with the applicable fiscal plan), 303; 48 U.S.C. §§ 2145(a), 2163.

5.      Here, the Oversight Board attempts to do what it cannot: prevent a newly enacted law's enforcement simply based on a disagreement with the law's underlying public policy, even though the Government has complied with the cost estimate and certification requirements prescribed under PROMESA section 204(a). The Board has attempted to achieve this aim by confecting a dispute over the adequacy of the section 204(a) estimate and certification accompanying the new law.

6.      Act 90 amended section 19.150 of Act No. 77 of June 19, 1957, also known as the Insurance Code of Puerto Rico (the "Insurance Code"), to prohibit Medicare Advantage health services organizations from, among other things (i) agreeing to accept fees lower than those established for Puerto Rico by the Centers for Medicare and Medicaid Services ("CMS"); and (ii) terminating or rescinding a contract with a provider or health professional without just cause. These reforms are critical to help stem the mass exodus of medical professionals from Puerto Rico.

7.      Between 2009 and 2014, an average of 472 physicians and 347 medical specialists left Puerto Rico every year. In 2016 alone, nearly 600 physicians cancelled their Puerto Rico licenses to move to the United States. A key driver of this outmigration of medical professionals is Medicare reimbursement rates based on CMS' Geographic Pricing Cost Index ("GPCI"). Although Puerto Rico's GPCI is the lowest of any U.S. jurisdiction, Medicare Advantage insurers do not honor the providers' fees for procedures and services and have established rates below the

GPCI fee schedule. Eliminating this practice helps ensure that medical professionals are adequately compensated for their services and is a critical reform necessary to (i) reduce the number of physicians leaving Puerto Rico and (ii) protect the public health and welfare of Puerto Rico's citizens.

8.    Not only are the Oversight Board's actions unreasonable from a public policy standpoint and unwarranted under PROMESA, but if the Oversight Board's improper actions are not checked, the people of Puerto Rico will be disenfranchised because their locally elected Government will be stripped of its policymaking powers. The Oversight Board's improper usurpation of the Government's role will also prevent the Government from directly addressing the needs of the people, which may further increase outmigration, thereby reducing the tax base and worsening Puerto Rico's economic and humanitarian problems. This Court must prevent the Oversight Board from overstepping its carefully delineated, statutory bounds.

## PARTIES

9.    Plaintiff Governor Wanda Vázquez Garced is the Governor of Puerto Rico.

10.    Plaintiff AAFAF is a public corporation created under section 5(a) of the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Law No. 2 of January 18, 2017, "for the purpose of acting as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing." Non-party Mr. Omar J. Marrero Diaz, Esq. serves as AAFAF's executive director (the "AAFAF Executive Director").

11.    Defendant Oversight Board is an entity within the Government that Congress created under PROMESA. *See* PROMESA § 101(b)(1), (c)(1); 48 U.S.C. § 2121(b)(1), (c)(1). Under PROMESA, the Oversight Board must maintain (and does in fact maintain) an office in

Puerto Rico. Plaintiffs do not seek damages with respect to the Oversight Board. Non-party Ms. Natalie A. Jaresko serves as the Oversight Board's executive director (the "Oversight Board Executive Director").

## JURISDICTION AND VENUE

12.     This Court has federal question jurisdiction under 28 U.S.C. § 1332 because the action arises under PROMESA, a federal statute. In addition, PROMESA section 106(a) vests federal courts with exclusive jurisdiction to hear disputes against the Oversight Board, or any action otherwise arising out of PROMESA. *See* 48 U.S.C. § 2126(a). This Court also has jurisdiction over this matter under PROMESA section 306(a)(2) because this action relates to the Commonwealth's PROMESA Title III case in that any plan of adjustment in the Commonwealth's Title III case must be consistent with a certified fiscal plan. *See* PROMESA § 314(b)(7); 48 U.S.C. § 2174(b)(7).

13.     This Court has personal jurisdiction over the Oversight Board because the Board is an entity within the Government and maintains an office in Puerto Rico. This Court also has personal jurisdiction over the Oversight Board under PROMESA section 306(c).

14.     Venue is proper in this District under PROMESA sections 106(a) and 307, and 28 U.S.C. § 1391. *See* 48 U.S.C. §§ 2126(a), 2167.

15.     This is an appropriate action for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202. Declaratory relief is proper here because there exists an actual, justiciable controversy between the parties concerning the Oversight Board's unilateral efforts to prevent the enforcement or application of Act 90 under PROMESA sections 204(a) and 108(a).

# FACTS

## I.    PROMESA's Carefully Balanced Division of Powers

16.    Effective June 30, 2016, the U.S. Congress enacted PROMESA to stabilize Puerto Rico's economy by establishing oversight of the Government's budget and fiscal policies and by providing a mechanism for the Commonwealth to restructure its debts. *See* PROMESA § 201(b)(2); 48 U.S.C. §2141(b)(2).

17.    To that end, PROMESA created the Oversight Board, whose express purpose is "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a), (b)(1); 48 U.S.C. § 2121(a), (b)(1). The Board is structured to provide oversight to help Puerto Rico achieve these goals, but not to supplant the Government or override its public policy priorities.

18.    Consistent with its purpose, the Oversight Board's powers include:

- certifying fiscal plans for the Commonwealth and its instrumentalities, *see* PROMESA § 201, 48 U.S.C. § 2141;

- certifying annual budgets for the Commonwealth and its instrumentalities, *see* PROMESA § 202, 48 U.S.C. § 2142;

- collecting information from the federal government, the Puerto Rican Government, and creditors, *see* PROMESA § 104(c) –(d), 48 U.S.C. § 2124(c)–(d);

- subpoenaing information from others, *see* PROMESA § 104(f), 48 U.S.C. § 2124(f);

- investigating disclosure and sales practices for Puerto Rico government bonds, *see* PROMESA § 104(o), 48 U.S.C. § 2124(o);

- certifying voluntary agreements under Title VI, filing Title III petitions on behalf of the Commonwealth or any of its instrumentalities, or submitting plans of adjustment in a Title III case, *see* PROMESA § 104(i)–(j), 48 U.S.C. § 2124(i)–(j);

- enforcing Puerto Rico's laws barring public sector employees from striking, *see* PROMESA § 104(h), 48 U.S.C. § 2124(h); and

- various other administrative powers, *see* PROMESA §104(a), 48 U.S.C. § 2124(a) (hold hearings, receive evidence and administer oaths), (e) (receive gifts and bequests), (g) (enter into contracts), (k) (institute litigation to enforce its powers), and (n) (use administrative support services from the federal government), among others.

19.     While PROMESA grants the Oversight Board significant powers, Congress struck a careful balance in the statute designed to preserve the Government's political and governmental powers. To that end, "the Oversight Board [was] not given the power to affirmatively legislate," *Rosselló Nevares v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 330 F.Supp.3d 685, 701 (D.P.R. 2018), and Congress preserved certain "policies and actions that can be adopted and pursued only with the Governor's approval." *Vázquez Garced v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 945 F.3d 3, 7 (1st Cir. 2019).

20.     This balance was intended to protect all stakeholders, but most of all the people of Puerto Rico, who are entitled to a functioning government that can provide essential services and preserve their "life, health and general welfare." P.R. CONST., art. II § 19. As PROMESA's legislative history makes clear, "In general, the oversight board . . . will provide guardrails for the Puerto Rico government, but will not supplant or replace the territory's elected leaders, who will retain primary control over budgeting and fiscal policymaking."  H.R. Rep. 114-602(l), 2016 WL 3124840, at *112 (2016).

21.     In PROMESA section 405, Congress states that the Board's purpose is to "provide the Government of Puerto Rico with the resources and tools it needs to address an immediate existing and imminent crisis," PROMESA § 405(n)(1), "provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring," *id.* § 405(n)(3), and "benefit the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its

longstanding fiscal governance issues and return to economic growth." *Id.* § 405(n)(5).  The import

of PROMESA's plain language is that Congress intended the Oversight Board to assist, support,

and encourage the Government, not to supplant or control it.

22.     Consistent with this intent, PROMESA section 204(a) provides a unique process

for ensuring that the elected Government's newly enacted laws do not run roughshod over Board-

certified fiscal plans while providing the elected Government with flexibility to implement public

policies that the elected Government believes are in the best interests of the people of Puerto Rico.

Importantly, section 204(a) does not wholly negate the Government's right to legislate.

### A.      PROMESA's Fiscal Plan Compliance Certification Process

23.     PROMESA section 204(a) establishes a detailed procedure for the Oversight Board

to review the Government's newly enacted laws and ensure ongoing compliance with certified

fiscal plans. Under this procedure, the Governor must submit every new law to the Oversight Board

within seven business days of its enactment. *See* PROMESA § 204(a)(1); 48 U.S.C. § 2144(a)(1).

In addition, the Governor's submission must be accompanied by a compliance certification that

includes:  (A) "a *formal estimate* prepared by an appropriate entity of the territorial government

with expertise in budgets and financial management of the impact, if any, that the law will have

on *expenditures and revenues*;" and (B) a certification that that the new law either "is *not

significantly inconsistent* with the Fiscal Plan for the fiscal year" or "is significantly inconsistent

with the Fiscal Plan for the fiscal year." *See* PROMESA § 204(a)(2); 48 U.S.C. § 2144(a)(2)

(emphasis added).

24.     As this Court has held, to comply with section 204(a)'s requirements, the

Government must make a "good faith" effort to determine the new law's financial effects and

consistency with the existing fiscal plan. *See The Fin. Oversight & Mgmt. Bd. for Puerto Rico v.

Vázquez Garced (In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, Adv. Pro. No. 19-00393

(LTS), 2020 WL 1873380, at *7 (D.P.R. Apr. 15, 2020) (the "Act 29 Op. II") ("Congress expected

the Governor and the relevant territorial entity to comply with the statutory predicates in good

faith.") (quoting *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re The*

*Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 403 F.Supp.3d 1, 13 (D.P.R. 2019) (the "Act 29

Op. I"). In addition, the cost estimate must cover the entire fiscal plan period and cannot be based

on "incomplete, inaccurate, or false documentation." Act 29 Op. I, at 13; *see also* Act 29 Op. II,

at *7 ("[T]he Governor's formal estimate and certification were required to address the fiscal

impact of Law 29 on the entire period covered by the 2019 Fiscal Plan."). But this Court has not

empowered the Board to nitpick every assumption underlying the estimate and certification,

require legal analysis (as opposed to financial analysis), or demand any particular model or method

to determine a new law's financial effects. So long as the elected Government's estimate and

certification are in good faith and based on reasonably complete and accurate information, they

satisfy section 204(a)'s requirements.

25.      After receiving a new law and compliance certification, the Board must send a

notification to the Governor and Legislature if the Government (A) fails to submit a "formal

estimate" that satisfies PROMESA section 204(a)(2)(A), (B) fails to submit a certification that the

new law is "not significantly inconsistent" with the applicable fiscal plan, or (C) submits a

certification that the new law is "significantly inconsistent" with the applicable fiscal plan. *See*

PROMESA § 204(a)(3); 48 U.S.C. § 2144(a)(3). If any one of these three situations apply and the

Board sends the required notification, then "the Oversight Board may direct the Governor to

provide the missing estimate or certification (as the case may be), in accordance with such

procedures as the Oversight Board may establish." PROMESA § 204(a)(4)(A); 48 U.S.C.

§ 2144(a)(4)(A).

26. In addition, if the Board's notification is based on a Government compliance certification stating that the new law is "significantly inconsistent" with the applicable fiscal plan under PROMESA section 204(a)(3)(C), then the Oversight Board must direct the Government to (i) "correct the law to eliminate the inconsistency;" or (ii) "provide an explanation for the inconsistency that the Oversight Board finds reasonable and appropriate." PROMESA § 204(a)(4)(B); 48 U.S.C. § 2144(a)(4)(B).

27. PROMESA section 204(a)(5) empowers the Board to "take such actions as it considers necessary, consistent with this chapter, to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law." PROMESA § 204(a)(5); 48 U.S.C. § 2144(a)(5). This power applies only "[i]f the territorial government *fails to comply with a direction given by the Oversight Board under paragraph (4)* with respect to the law" (*i.e.*, a direction to provide a "missing" cost estimate or certification). *Id.*

### B. Enforcement Mechanism under PROMESA Section 108(a)(2)

28. PROMESA section 108(a)(2) provides that "neither the Governor nor the Legislature may . . . (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board." PROMESA § 108(a)(2); 48 U.S.C. § 2128(a)(2). PROMESA section 108(a)(2) thus provides the Board with its sole enforcement mechanism for "preventing the enforcement or application" of a new law to the extent permitted under PROMESA section 204(a)(5).

29. On April 15, 2020, this Court explained that "the plain language of section 108 allows the Oversight Board to challenge statutes that it has determined impair or defeat the purposes of PROMESA," but "section 108(a) does not itself authorize the Oversight Board to nullify legislation." Act 29 Op. II at *11. In addition, this Court found that "Congress did not, in

section 108 of PROMESA, enable the Oversight Board to take unilateral, unreviewable action in preventing the enactment, implementation, or enforcement of statutes that the Oversight Board has determined would impair or defeat the purposes of PROMESA." *Id.* Instead, PROMESA "requires that the Oversight Board seek judicial enforcement of its section 108(a)(2) determinations [as permitted under section 104(k) of PROMESA], thus subjecting those determinations to review by this Court." *Id.*

## II.     Act 90 and the Fiscal Plan Compliance Certification Process

### A.     The Oversight Board Certifies the 2019 Fiscal Plan.

30.     On May 9, 2019, the Oversight Board certified its own fiscal plan for the Commonwealth under PROMESA section 201(e)(2) (the "2019 Fiscal Plan").[3] That same day, the Oversight Board delivered a compliance certification letter (the "2019 Fiscal Plan Certification Letter") and a copy of the certified 2019 Fiscal Plan to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico as required under PROMESA section 201(e)(2). A true and correct copy of the 2019 Fiscal Plan Certification Letter and 2019 Fiscal Plan is attached hereto as **Exhibit 1**.

31.     The 2019 Fiscal Plan includes a five-year baseline revenue and expenditure forecast through fiscal year 2024. Between fiscal years 2019 and 2024, the 2019 Fiscal Plan projected baseline revenues to range between approximately $20 billion and $23.3 billion annually. *See* 2019 Fiscal Plan at 27. For the same period, the 2019 Fiscal Plan projected baseline expenditures to range between approximately $20.5 billion and $21.3 billion. *See id.* at 33. As a result, the 2019

---

[3] The 2019 Fiscal Plan was subsequently updated and replaced with a new 2020 Fiscal Plan for Puerto Rico, as certified by the Oversight Board on May 27, 2020 (the "2020 Fiscal Plan"). The 2020 Fiscal Plan includes substantial changes to the 2019 Fiscal Plan to reflect the negative economic effects of the COVID-19 pandemic. But at all relevant times related to the enactment and certification of Act 90, the 2019 Fiscal Plan was the then-effective fiscal plan for purposes of satisfying the PROMESA section 204(a) compliance certification requirements.

Fiscal Plan projected a short-term cumulative surplus from fiscal year 2019 to fiscal year 2024 of approximately $13.7 billion. *See id.* at 39.

    **B.**    **The Government Enacts Act 90 and Certifies that It Is "Not Significantly Inconsistent" with the 2019 Fiscal Plan.**

    32.    On August 1, 2019, then-Governor Ricardo Rosselló Nevares signed into law Act 90 to amend section 19.150 of the Insurance Code by, among other things, (i) prohibiting Medicare Advantage health service organizations from entering into service provider agreements for lower service rates than those established by CMS and (ii) preventing such health service organizations from terminating their contracts with healthcare providers without just cause. Without Government intervention, Medicare Advantage insurers would continue their practice of undercutting the minimum GPCIs established by CMS for the benefit of its providers, which has already caused medical professionals to leave Puerto Rico in droves. Through Act 90, the Government is incentivizing doctors to stay in Puerto Rico, strengthening Puerto Rico's health sector, and improving access to healthcare in Puerto Rico. A true and correct copy of Act 90 is attached hereto as **Exhibit 2**.[4]

    33.    Upon assuming office on August 7, 2019, Governor Vázquez Garced established a practice and policy of ensuring compliance with PROMESA, including compliance with the section 204(a) certification requirements for newly enacted laws. Governor Vázquez Garced formally implemented this policy on October 25, 2019 by adopting Executive Order OE-2019-057. That executive order established rigorous procedures to comply with section 204(a) and ordered cooperation from all Government agencies, instrumentalities, and public corporations to comply promptly. Executive Order OE-2019-057 also established that only AAFAF, the Puerto

---

[4] As of filing this Complaint, an official certified English translation of Act 90 was not available. Contemporaneously herewith, the Plaintiffs will file a motion seeking leave to obtain and submit a certified English translation of Act 90.

Rico Department of Treasury ("Treasury"), and the Puerto Rico Office of Management and Budget ("OMB") are "appropriate entities of the territorial government" to issue compliance certifications under PROMESA section 204(a). A true and correct copy of Executive Order OE-2019-057 (including a certified English translation) is attached hereto as **Exhibit 3**.

34. On August 31, 2019, the Government submitted to the Board a section 204(a) compliance certification for Act 90 (the "Act 90 Certification"), which estimated that Act 90 would have "no impact on expenditures and revenues," and concluded that Act 90 is "not significantly inconsistent" with the 2019 Fiscal Plan. Act 90 has no effect on expenditures and revenues because it simply prohibits Medicare Advantage from harming Puerto Rico's healthcare industry by undercutting Medicare Advantage rates and depriving medical professionals of reasonable fees for their services. Act 90 requires no additional overhead to implement or enforce. A true and correct copy of the Act 90 Certification is attached hereto as **Exhibit 4**.

35. On November 15, 2019, the Oversight Board Executive Director stated in a letter to Governor Vázquez Garced (the "November 15 Letter") that the Act 90 Certification "fail[ed] to provide the formal estimate of the fiscal impact as required under [PROMESA section 204(a)(2)(A)]" because it did not include "the impact on the government's medical health insurance plan ('Vital').["][5] *See* November 15 Letter at 2. The Oversight Board Executive Director also argued that Act 90 may be "preempted by the statutory provisions of Title 42 of the U.S. Code and related Code of Federal Regulations" and requested an analysis of "corresponding federal statutes to ascertain there are no conflicting provisions that may jeopardize the grant of federal funds to the [Puerto Rico Department of Health]." *Id.* The Oversight Board Executive Director

---

[5] Vital is the Government's medical health insurance plan that provides coverage to those who cannot afford traditional medical plans while allowing patients to choose their preferred insurance company and healthcare providers. Further information regarding Vital can be obtained at https://www.sssvital.com/en/.

reserved the right to prevent Act 90's enforcement "should the Oversight Board determine that

you have failed to comply with our directive under Section 204(a)(4)(A), or that [Act 90] impairs

or defeats the purposes of PROMESA, as determined by the Oversight Board." *Id.* A true and

correct copy of the November 15 Letter is attached hereto as **Exhibit 5**.

36.     In a November 22, 2019 letter (the "November 22 Letter"), the AAFAF Executive

Director responded to the Board's November 15 Letter. The AAFAF Executive Director noted that

PROMESA section 204(a)(3) authorizes the Board to send notifications only in limited

circumstances (i.e., if no estimate or certification is sent, or if the Government certifies that the

enacted law is "significantly inconsistent" with the fiscal plan), but nothing in PROMESA section

204(a) authorizes the Board to seek additional explanations from the Government, such as the

preemption analysis requested by the Board in its November 15 Letter. This, of course, is entirely

consistent with this Court's decision in *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez

Garced (In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 403 F.Supp.3d 1 (D.P.R. 2019),

which requires only a good-faith financial analysis based on reasonably accurate information. *See*

Act 29 Op. I at 13 ("Congress expected the Governor and the relevant territorial entity to comply

with the statutory predicates in good faith," which requires an analysis that is not based on

"incomplete, inaccurate, or false documentation."). A true and correct copy of the November 22

Letter is attached hereto as **Exhibit 6**.

37.     The Oversight Board responded in a December 18, 2019 letter (the "December 18

Letter"), reiterating the Board's view that a federal preemption analysis was required for Act 90

to determine "whether any conflicts jeopardize the grant of federal funds." *See* December 18 Letter

at 2. The Board also contended that the preemption analysis it demanded was necessary because

"any enacted law [that] negatively impacts the Commonwealth's budget because of conflicts with

federal statutes . . . would not be consistent with the certified Fiscal Plan." *Id.* A true and correct copy of the December 18 Letter is attached hereto as **Exhibit 7**.

38.     On December 27, 2019, AAFAF responded in a letter (the "December 27 Letter") explaining that PROMESA section 204(a) does not authorize the Board to require an analysis that Act 90 is preempted by federal law because only a federal court can determine preemption issues, such that a preemption analysis would be entirely speculative and of no use for determining the cost of the statute. A true and correct copy of the December 27 Letter is attached hereto as **Exhibit 8**.

### C.     The Oversight Board Notifies the Governor and Legislature and Threatens Nullification of Act 90.

39.     On April 27, 2020, the Oversight Board Executive Director sent another letter to the AAFAF Executive Director (the "April 27 Letter"). A true and correct copy of the April 27 Letter is attached hereto as **Exhibit 9**.

40.     The April 27 Letter demanded that the Government submit a revised Act 90 Certification because "the Government has so far failed to confirm that its analysis took into account germane factors" pertaining to Act 90. *See* April 27 Letter at 2. In particular, the Oversight Board Executive Director maintained that, to be compliant, the estimate must address two specific questions related to Act 90:

- "Does AAFAF anticipate the reimbursement floor (i.e., the level of payments by Medicare Advantage plans to providers that equal the Medicare Fee For Service rates) will increase costs of Medicare Advantage Plans for the federal government?" *Id*.

- "Has AAFAF considered the potential for increased costs to cause higher Part B premiums in Puerto Rico?" *Id.*

41.     In addition, the Oversight Board Executive Director asserted that (i) "the Oversight Board has determined implementation of [Act 90] prior to the satisfaction of the requirements of

Section 204 would impair and defeat the purposes of PROMESA;" and (ii) "the Oversight Board reserves the right to take such actions as it deems necessary, consistent with Sections 104(k), 108(a) and 204(a)(2), including seeking remedies for preventing the enforcement of [Act 90]." *Id.* at 3. The Oversight Board Executive Director did not explain how a program that would not expend any funds or reduce revenues *at all* could conceivably be "significantly inconsistent" with a fiscal plan that covered tens of billions of dollars in expenditures and revenues. This is part and parcel with the Board's pattern and practice of reading the term "significantly inconsistent" out of PROMESA and treating even the slightest, most speculative deviation from a fiscal plan as a basis for nullifying statutes.

42.      The AAFAF Executive Director responded to the Board in a May 8, 2020 letter (the "May 8 Letter"), that explained yet again why a revised Act 90 Certification was not required, namely because: (i) the Act 90 Certification included all of the required elements under PROMESA section 204(a)(2) and was provided in good faith; (ii) in demanding a preemption analysis, the Board was impermissibly requiring a legal, not financial, analysis; and (iii) Act 90 cannot "impair or defeat the purposes of PROMESA" because the Board has not identified any fiscal effect of Act 90 that would be inconsistent with the 2019 Fiscal Plan. *See* May 8 Letter at 2-3. A true and correct copy of the May 8 Letter is attached hereto as **Exhibit 10**.

43.      On June 5, 2020, AAFAF received another letter (the "June 5 Letter") from the Oversight Board Executive Director, asserting that "proceeding to go forward with . . . significantly inconsistent legislation notwithstanding objections from the Oversight Board grounded in PROMESA, will lead the Oversight Board to have no choice but to seek judicial relief." *See* June 5 Letter at 2. A true and correct copy of the June 5 Letter is attached hereto as **Exhibit 11**.

44.    None of the foregoing actions and allegations asserted in the Board's various letters are proper exercises of the Board's powers under PROMESA or permitted by PROMESA itself. Instead, they represent overreach by the Board.

45.    PROMESA section 204(a) is focused solely on financial and budgetary concerns, requiring the certification to describe only the "impact" on "expenditures and revenues"—not legal issues. Nothing in PROMESA requires the Government to provide the Board with a legal opinion. And even if there were such an obligation, the preemption analysis that the Board demanded would shed no light on whether Act 90 is significantly inconsistent with the operative fiscal plan because preempted laws are nullified and have no effect whatsoever. *See Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 92 (1st Cir. 2013) (noting that where a federal law preempts state law, "the Supremacy Clause nullifies state laws that interfere with, or are contrary to, federal laws enacted by Congress") (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210–11, 6 L.Ed. 23 (1824)) (internal quotations omitted). In other words, assuming that Act 90 were preempted, the effect on the operative fiscal plan would be zero.

46.    The Board's actions also infringe the powers reserved to the Government under PROMESA and the Puerto Rico Constitution, which is also federal law approved by Congress. *See* P.R. Const., Pub.L. 82–447, 66 Stat. 327 (enacted July 3, 1952). Such rights cannot be preempted by the Board under PROMESA, which merely states that PROMESA "shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]." PROMESA § 4; 48 U.S.C. § 2103. Here, the Board is trying to usurp power that belongs to the Government and thereby exercise governmental and political powers that the Board itself lacks under PROMESA.

## COUNT I[6]

### DECLARATORY JUDGMENT THAT THE ACT 90 CERTIFICATION
### SATISFIES PROMESA'S REQUIREMENTS
### (PROMESA § 204(a))

47.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-46 as if fully set forth herein.

48.     As the statute that creates the Oversight Board, PROMESA defines the limits of the Oversight Board's powers. While PROMESA grants the Oversight Board broad powers to approve fiscal plans, it limits the Oversight Board's power with respect to policy-making matters implemented through new legislation. This prevents the Oversight Board from usurping the political and governmental power of the Government of Puerto Rico.

49.     To control Government policy after the Board's certification of the 2019 Fiscal Plan, the Oversight Board has threatened to prevent implementation of Act 90 on improper public policy grounds, even though the Government submitted a fully compliant Act 90 Certification that included both a cost estimate and Government determination that Act 90 was "not significantly inconsistent" with the 2019 Fiscal Plan. This use of the Board's legislative review powers circumvents Congress' express preservation of the Commonwealth's political and governmental power to the Government under PROMESA section 303. As such, the Oversight Board cannot prevent the implementation of Act 90 on public policy grounds even though the law's fiscal effects are not significantly inconsistent with the governing fiscal plan.

50.     Plaintiffs are therefore entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Government's cost estimate in the Act 90

---

[6] Plaintiffs reserve the right to amend this complaint, or to file additional complaints, to assert causes of action relative to any other recently enacted laws and compliance certifications that the Board similarly claims do not comply with the requirements of PROMESA section 204(a).

Certification satisfies the "formal estimate" requirement under PROMESA section 204(a)(2)(A) and, as a result, the Oversight Board lacked authority to (i) send a notification for failure to provide an estimate pursuant to PROMESA section 204(a)(3)(A), or (ii) direct the Governor to provide a "missing" estimate pursuant to PROMESA section 204(a)(4)(A).

51.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Government's determination that Act 90 is "not significantly inconsistent" with the 2019 Fiscal Plan as provided in the Act 90 Certification satisfies the requirement under PROMESA section 204(a)(2)(B) and, as a result, the Oversight Board lacked authority to (i) send a notification for failure to provide a certification pursuant to PROMESA section 204(a)(3)(B), or (ii) direct the Governor to provide a "missing" certificate pursuant to PROMESA section 204(a)(4)(A).

52.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Oversight Board cannot "take such actions as it considers necessary, consistent with [PROMESA], to ensure that the enactment of [Act 90] will not adversely affect the [Government's] compliance with the [2019 Fiscal Plan], including preventing the enforcement or application of the law," pursuant to PROMESA section 204(a)(5).

### COUNT II

### DECLARATORY JUDGMENT THAT THE
### OVERSIGHT BOARD CANNOT UNLATERALLY ENJOIN THE
### IMPLEMENTATION AND ENFORCEMENT OF NEW LAWS, INCLUDING ACT 90
### (PROMESA § 108(a)(2))

53.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-46 and 48-52 as if fully set forth herein.

54.     As the statute that creates the Oversight Board, PROMESA defines the limits of the Oversight Board's powers. While PROMESA grants the Oversight Board broad powers to approve

fiscal plans, it limits the Oversight Board's power with respect to policy-making matters implemented through new legislation. This prevents the Oversight Board from usurping the political and governmental power of the Government of Puerto Rico.

55.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Board's invocation of PROMESA section 108(a)(2) is and was of no force and is and was without any effect with respect to the validity and enforcement of Act 90.

## PRAYER FOR RELIEF

WHEREFORE the Plaintiffs pray that judgment be entered for them and against the Defendants as follows:

A.     Declaring that the Government's Act 90 Certification complies with the cost estimate and fiscal plan compliance certification requirements under PROMESA section 204(a);

B.     Declaring that the Oversight Board lacks the authority to send a notification directing the Government to revise its cost estimate and/or fiscal plan compliance certification pursuant to PROMESA section 204(a)(3) and (a)(4) if the Government complies with the requirements of PROMESA section 204(a)(2).

C.     Declaring that the Oversight Board cannot take additional actions under PROMESA section 204(a)(5), including acts to prevent the enforcement or application of Act 90, because the Act 90 Certification complies with the requirements of PROMESA section 204(a);

D.     Declaring that the Oversight Board must seek judicial enforcement under PROMESA section 104(k) in exercising any powers that it may have under PROMESA section 204(a)(5), and any unilateral determinations of non-compliance with PROMESA section 204(a) are non-binding on the Government and do not need to be implemented by the Government; and

E.      Declaring that any Board action to invalidate or prevent the enforcement of Act 90 without first seeking judicial approval of such action, exceeds the Board's powers under PROMESA section 108(a)(2) and would be unlawful, and are null and void; and

F.      Granting such other and further relief as the Court deems just and proper.

Dated: June 12, 2020
        San Juan, Puerto Rico

Respectfully submitted,

/s/ *John J. Rapisardi*                              /s/ *Luis C. Marini-Biaggi*

John J. Rapisardi                                     Luis C. Marini-Biaggi
William J. Sushon                                     USDC No. 222301
(Admitted *Pro Hac Vice*)                             Email: lmarini@mpmlawpr.com
**O'MELVENY & MYERS LLP**
7 Times Square                                        Carolina Velaz-Rivero
New York, New York 10036                              USDC No. 300913
Tel:   (212) 326-2000                                 Email: cvelaz@mpmlawpr.com
Fax:  (212) 326-2061

 -and-                                                **MARINI PIETRANTONI MUÑIZ LLC**
                                                      250 Ponce de León Ave., Suite 900
Peter Friedman                                        San Juan, Puerto Rico 00917
(Admitted *Pro Hac Vice*)                             Tel:  (787) 705-2171
1625 Eye Street, NW                                   Fax:  (787) 936-7494
Washington, D.C. 20006
Tel:  (202) 383-5300                                  *Co-attorneys for Governor Vázquez Garced*
Fax: (202) 383-5414                                   *and the Puerto Rico Fiscal Agency and*
                                                      *Financial Advisory Authority*
*Attorneys for Governor Vázquez Garced*
*and the Puerto Rico Fiscal Agency and*
*Financial Advisory Authority*