# EXHIBIT 2

LEY __90__ -20__19__

**GOBIERNO DE PUERTO RICO**
*SENADO DE PUERTO RICO*
*EL CAPITOLIO*
*SAN JUAN, PUERTO RICO 00901*

Yo, **Manuel A. Torres Nieves**, Secretario del Senado de Puerto Rico,

**CERTIFICO:**

Que el **P. del S. 841**, titulado:

## "LEY

Para enmendar el Artículo 19.150 de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como "Código de Seguros de Puerto Rico", a los efectos de establecer como una práctica prohibida que una organización de servicios de salud de *Medicare Advantage* o su representante acuerde con un proveedor de servicios el pago de una tarifa menor a la establecida para ese año por los Centros de Servicios Medicare y Medicaid Services (CMS) para Puerto Rico por los servicios provistos como proveedor de *Medicare Advantage*; así como establecer la prohibición a toda organización de servicios de salud de Medicare Advantage o su representante, incluyendo los manejadores y administradores de beneficios, de cancelar o terminar un contrato debidamente establecido con un proveedor o profesional de la salud sin justa causa; y para otros fines relacionados."

ha sido aprobado por el Senado de Puerto Rico y la Cámara de Representantes en la forma que expresa el ejemplar que se acompaña.

**PARA QUE ASI CONSTE**, y para notificar al Gobernador de Puerto Rico, expido la presente en mi oficina en el Capitolio, San Juan, Puerto Rico, el día veintiocho (28) del mes de junio del año dos mil diecinueve y estampo en ella el sello del Senado de Puerto Rico.

Manuel A. Torres Nieves
Secretario del Senado

# (P. del S. 841)

## LEY

Para enmendar el Artículo 19.150 de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como "Código de Seguros de Puerto Rico", a los efectos de establecer como una práctica prohibida que una organización de servicios de salud de *Medicare Advantage* o su representante acuerde con un proveedor de servicios el pago de una tarifa menor a la establecida para ese año por los Centros de Servicios Medicare y Medicaid Services (CMS) para Puerto Rico por los servicios provistos como proveedor de *Medicare Advantage*; así como establecer la prohibición a toda organización de servicios de salud de Medicare Advantage o su representante, incluyendo los manejadores y administradores de beneficios, de cancelar o terminar un contrato debidamente establecido con un proveedor o profesional de la salud sin justa causa; y para otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

Nuestro Gobierno está consciente del éxodo masivo de la clase médica de nuestro archipiélago. Para el periodo del 2009 al 2014, el número de médicos en Puerto Rico reflejó una pérdida promedio de 472 médicos por año y en el caso de los médicos especialistas la pérdida promedio es de 347 por cada año. En el 2016, cerca de 600 médicos cancelaron sus licencias en Puerto Rico para mudarse a Estados Unidos. Además, de los médicos que se están graduando menos de 100 permanecen en su tierra. Para finales del 2017, el Colegio de Médicos Cirujanos pronosticó que la pérdida de galenos rebasaría los 700, es decir, una merma que equivale a 2 médicos por día.

La salida de la clase médica de Puerto Rico repercute en una crisis de salud pública que impide el uso adecuado de los servicios básicos y especializados que nuestros ciudadanos necesitan. Las razones para la emigración de estos profesionales de salud son variadas. Entre ellas, se reclama un abuso de los planes médicos, la falta de seguros de impericia médica y la brecha económica e inequidad que conlleva quedarse a trabajar en Puerto Rico.

En torno a las tasas de reembolso que recibe la clase médica por sus servicios, es importante destacar que durante años se han hecho esfuerzos para que los Centros de Servicios de Medicare and Medicaid Services (por sus siglas en inglés, CMS) mejoren las tarifas que se pagan. En atención a ese reclamo, en el 2016 CMS aumentó los componentes de la fórmula del Índice de Costo de Práctica Geográfica (*Geographic Pricing Cost Index*, por sus siglas en inglés, GPCI). Históricamente, el GPCI calculado para Puerto Rico es el más bajo de cualquier jurisdicción americana, por lo que nuestros médicos reciben la tasa de reembolso más baja de Medicare que los médicos en cualquier otro estado o territorio de Estados Unidos. Esto se refleja cuando las tarifas que se pagan en Puerto Rico son 39% más bajas que el estado de Hawaii e inclusive 26% más bajas que las tarifas de las Islas Vírgenes Americanas.

2

El CMS reembolsa a los médicos bajo el GPCI que es una fórmula que consta de tres componentes. Este es un índice de costo de fijación de precios geográfico con el propósito de atender las variaciones territoriales en el costo de la práctica de la medicina en las diferentes regiones de la nación. El primer componente del GPCI es el de trabajo médico (*physician work*), que refleja el tiempo y esfuerzo asociado en proveer un servicio particular. En segundo componente, el gasto de la práctica médica (*practice expense*), el cual proyecta el costo de mantener la misma, tales como el alquiler de espacio de oficinas, la compra de materiales y equipo, y el pago de personal. Por último, se considera el gasto relacionado con los seguros de impericia médica (*malpractice*).

A pesar del cambio aprobado en CMS para beneficio de los médicos, este no se reflejó en los desembolsos recibidos por estos, ya que las aseguradoras de *Medicare Advantage* no honran las tarifas por procedimientos y servicios a proveedores así establecidas y continúan pagando por debajo de las tarifas mínimas aprobadas por CMS al regirse por aquellas aprobadas para periodos anteriores que establecen pagos más bajos.

Tal actuación ha sido denunciada y representa un obstáculo a los proveedores de salud que siguen ofreciendo servicios a los puertorriqueños. Asimismo, agudiza el éxodo de médicos a otras jurisdicciones.

Es un compromiso firmemente establecido de este Gobierno el atender con prioridad el sector de la salud y acelerar su recuperación con el fin principal de mejorar la calidad de vida de nuestro pueblo. En atención a ello, resulta necesario erradicar la práctica de las aseguradoras de no regirse por el mínimo establecido por el CMS para el GPCI en beneficio de sus proveedores. Tales actuaciones contravienen la salud pública de nuestros ciudadanos y el interés apremiante del Estado de retener a los médicos que se están yendo de Puerto Rico.

Ese interés apremiante y legítimo del Gobierno nos permite interferir racionalmente con este tipo de práctica. Por ello, aunque la Constitución de Puerto Rico establece una garantía a las relaciones contractuales al disponer que "[n]o se aprobarán leyes que menoscaben las obligaciones contractuales". Art. II, Sec. 7, Const. ELA, LPRA, Tomo I, esta es limitada. Ciertamente, la garantía constitucional restringe la intervención del gobierno con obligaciones contractuales entre partes privadas y aquellas contraídas por el Estado. Con el propósito de asegurar la estabilidad de las relaciones contractuales. Domínguez Castro *et al.* v. ELA I, 178 DPR 1, 80 (2010); Trinidad Hernández *et al.* v. ELA *et al.*, 188 DPR 828, 834 (2013). Empero, la protección constitucional de menoscabo de obligaciones contractuales no es absoluta, ni sirve de obstáculo en beneficio del interés público. Por tanto, no todo menoscabo implica la inconstitucionalidad del estatuto. Es norma reiterada que esa garantía constitucional "debe ser armonizada con el poder del Estado en beneficio del interés público." Íd. Véase, además, AMPR *et als.* v. Sist. Ret. Maestros V, 190 DPR 854, 869 (2014).

En lo concerniente a contratos privados, para determinar si se viola la cláusula de menoscabo de obligaciones contractuales es necesario determinar si existe una relación contractual y si su modificación representa un menoscabo sustancial o severo. Trinidad Hernández *et al.* v. ELA *et al.*, *supra*, pág. 834; Domínguez Castro *et al.* v. ELA I, *supra*,

81; Warner Lambert Co. v. Tribunal Superior, 101 DPR 378, 395 (1973). El solo hecho de que pueda existir un menoscabo severo no conlleva que se decrete el estatuto inconstitucional. Para ello, resulta necesario evaluar si la interferencia gubernamental responde a un interés legítimo del Estado y si está racionalmente relacionada con la consecución de dicho objetivo. Trinidad Hernández et al. v. ELA et al., supra, págs. 834-835. Es decir, estamos ante un escrutinio de razonabilidad que considera cuán sustancial es el interés público promovido y la extensión del menoscabo. AMPR et als. v. Sist. Ret. Maestros V, supra.

El éxodo máximo de los profesionales médicos no se debe exclusivamente a áreas relacionadas con la salud, sino que también responde a varios factores, por lo que este Gobierno se comprometió a no limitarse en las alternativas para la retención de estos profesionales tratándose de un interés legítimo el velar por la salud de nuestros ciudadanos. En consecuencia, toda cláusula contractual que no honre como mínimo el reembolso de tarifa determinado por CMS para ese año será considerada como nula y no puesta por ser contraria al orden público.

**DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:**

Artículo 1.- Se añade el inciso 7 al Artículo 19.150 de la Ley Núm. 77 de 19 de junio de 1957, según enmendada, para que se lea:

"Artículo 19.150 - Prácticas prohibidas

(1) Ninguna organización de servicios de salud o su representante podrá usar o permitir el uso de anuncios inciertos o engañosos, solicitudes que sean inciertas o engañosas o cualquier formulario de evidencia de cubierta que sea engañosa. Para propósitos de esta Ley:

(a) Una declaración o artículo informativo puede ser considerada como incierta (o) si la misma no corresponde a hechos que son o pueden ser significativos para el suscriptor o persona que interese acogerse a un plan de servicios de cuidado de salud.

(b) ...

(c) ...

(2) Las disposiciones de este Código sobre prácticas desleales serán interpretadas para que apliquen a las organizaciones de servicios de salud, plan de cuidado de salud y evidencia de cubierta, hasta el límite que el Comisionado determine que las mismas les son aplicables a la organización de servicios de salud, planes de cuidado de salud y evidencia de cubierta.

(3) No se podrá cancelar, modificar o renovar la evidencia de cubierta a un suscriptor excepto por la falta de pago de las tarifas para la cubierta, o por otras razones que determine el Comisionado, entendiéndose que existirá un período de gracia de treinta (30) días para realizar el pago.

(4) Ninguna organización de servicios de salud puede usar en su nombre, contrato o literatura ninguna de las palabras "seguro", "contingencia", "garantía",

"mutua" o cualquier otra palabra descriptiva de seguro, contingencia o negocio de garantía o engañosamente similar al nombre o descripción de cualquier corporación de seguros o garantía que haga negocios en Puerto Rico.

(5) Ningún proveedor podrá contratar la provisión de servicios de cuidado de salud con una organización de servicios de salud a menos que ésta esté autorizada conforme a lo requerido por este capítulo.

(6) Ninguna póliza de seguros de servicios de salud, ni ningún plan de cuidado de salud que ofrezca cubierta para los hijos en una unidad familiar, podrá excluir hijos de crianza de dicha unidad familiar. Para fines de esta disposición el término "hijos de crianza" tendrá el significado que se establece en el Artículo 16.330 de este Código.

(7) Ningún acuerdo, contrato, *addendum* o estipulación entre una organización de servicios de salud de Medicare Advantage o su representante, incluyendo los manejadores y administradores de beneficios y un proveedor de servicios con relación a los servicios ofrecidos para Medicare Advantage contendrá cláusula alguna que establezca un pago menor o sea menos favorable al proveedor de servicios de lo que establecen los Centros de Servicios de Medicare y Medicaid Services (CMS) para Puerto Rico como tarifa de reembolso para cada año para los servicios.

En aquellos casos en el que el acuerdo, contrato, *addendum* o estipulación entre una organización de servicios de salud de Medicare Advantage o su representante y un proveedor de servicios establezca una tarifa menor a la establecida para los servicios ofrecidos a Medicare Advantage conforme a lo dispuesto en esta Ley, se entenderá que la tarifa mínima será la establecida por los Centros de Servicios de Medicare y Medicaid Services (CMS).

Cualquier condición, estipulación o convenio en contravención con este Artículo se entenderá como nula, sin que tal nulidad afecte la validez de las demás disposiciones contractuales.

Ninguna organización de servicios de salud de Medicare Advantage o su representante podrá revocar con carácter retroactivo ningún acuerdo, contrato, *addendum* o estipulación con un proveedor de servicio por razón de la política pública aquí establecida.

(8) Ninguna organización de servicios de salud de Medicare Advantage o su representante, incluyendo los manejadores y administradores de beneficios, podrá cancelar o terminar un contrato debidamente establecido con un proveedor o profesional de la salud sin justa causa. Tampoco podrá integrar a un acuerdo, contrato, *addendum* o estipulación con el proveedor o profesional de servicios de salud cláusula alguna que establezca la terminación o cancelación de contrato o acuerdo sin justa causa. Dichos contratos deberán especificar los causales para su cancelación o terminación. Para propósitos de esta Sección el término justa causa será

interpretado de conformidad como se interpreta dicha norma en la doctrina del Código Civil de Puerto Rico. Cualquier condición, estipulación o convenio en contravención con este Artículo se entenderá como nula, sin que tal nulidad afecte la validez de las demás disposiciones contractuales."

Artículo 2.- Salvedad

Las disposiciones de esta Ley entrarán en vigor mientras éstas no sean campo ocupado por disposiciones en las leyes o reglamentos de las agencias pertinentes del Gobierno de los Estados Unidos de América. Toda interpretación judicial vinculante o cambios a dichas normas deberá ser evaluada por el Comisionado de Seguros, al momento de establecer normas administrativas para la implantación de la presente.

Artículo 3.- Separabilidad.

Si cualquier cláusula, párrafo, sección, artículo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha sentencia quedará limitado a la cláusula, párrafo, sección, artículo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo, sección, artículo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias en las que se pueda aplicar válidamente.

Artículo 4.-Vigencia.

Esta Ley entrará en vigor inmediatamente después de su aprobación.

_____
Presidente del Senado

_____
Presidente de la Cámara

Aprobada en Agosto 1, 2019

_____
Gobernador

Este P. de ____S____ Num __841__

Fue recibida por el Gobernador

Hoy __16__ de __julio__

De __2019__ A las __3:57 P.M__

_____
Asesor