# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors. [1] | |
| HON. WANDA VÁZQUEZ GARCED (in her official capacity), and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, | |
| Plaintiffs, | Adv. Pro. No. 20-_____-LTS |
| v. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| Defendant. | |

# ADVERSARY COMPLAINT FOR
# DECLARATORY RELIEF RELATED TO ACT 176

Plaintiffs Hon. Wanda Vázquez Garced, in her official capacity as the Governor of the

Commonwealth of Puerto Rico (the "Governor"), and the Puerto Rico Fiscal Agency and Financial

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Advisory Authority ("AAFAF," together with the Governor, the "Plaintiffs"), hereby bring this *Adversary Complaint for Declaratory and Injunctive Relief Related to Act 176* (the "Complaint")[2] against Defendant the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "Board"), and allege as follows:

## NATURE OF THE ACTION

1.      By this Complaint, Plaintiffs seek declaratory relief to stop the Oversight Board's unlawful (and wasteful) attempts to nullify a duly enacted law of the Commonwealth—Act No. 176 of 2019 ("Act 176")—under the false pretense of non-compliance with the 2019 Fiscal Plan (defined below).

2.      Over the past several months, the Oversight Board has attempted to use the fiscal plan compliance certification process in section 204(a) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. §§ 2101-2241 ("PROMESA") to undermine the Government's lawful enactment and certification of statutes in conformity with PROMESA.  This Complaint deals with the Oversight Board's wrongful efforts to nullify the Government's policy of permitting employees to accrue additional vacation days and sick days per calendar month while maintaining the existing cap on total vacation and sick days that any individual employee may accrue. In so doing, the Oversight Board is abusing its authority in an attempt to micromanage every aspect of Puerto Rico's governance. If the Board's improper actions are allowed to stand, Puerto Rico would be prohibited from implementing a policy designed to improve family life and public employee morale in Puerto Rico as the people continue to sustain substantial hardships caused by natural disasters and the COVID-19 pandemic. The Board's efforts to foil the

---

[2] As used in this Complaint, (i) "Government" means the government of the Commonwealth of Puerto Rico, but not the Oversight Board; (ii) "Commonwealth" means the Commonwealth of Puerto Rico; and (iii) "Legislature" means the Legislative Assembly of the Commonwealth of Puerto Rico.  Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

Government's policy-making authority exceed the Board's lawful powers under PROMESA; this Court should declare them null and void.

3.    PROMESA established the Oversight Board to help Puerto Rico "achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a); 48 U.S.C. § 2121(a). The Oversight Board derives its power solely from the statutory authority Congress granted it under PROMESA. While Congress gave the Board certain powers, Congress respected Puerto Rico's framework of self-government. Congress thus created an Oversight Board of limited power and preserved the democratically-elected Government's powers. While PROMESA grants the Oversight Board broad fiscal powers (including the sole power to certify fiscal plans and budgets and monitor compliance with them), PROMESA preserves to the Government the political and governmental power and discretion to make good-faith policy decisions by, among other things, enacting new legislation.

4.    PROMESA granted the Oversight Board authority to establish parameters to bring fiscal responsibility to Puerto Rico and monitor Puerto Rico's progress, such as the power to approve and certify fiscal plans for both the Commonwealth and its territorial instrumentalities. *See* PROMESA §§ 201(c)(3), (e); 48 U.S.C. §§ 2141(c)(3), (e). The Oversight Board also has authority to monitor and review certain government actions for compliance with certified fiscal plans, but these compliance powers are narrowly circumscribed to give the Government latitude to enact new laws that reflect its public policies designed to address the ever-changing needs of a modern society. *See* PROMESA §§ 203(a)-(c), 204(a); 48 U.S.C. §§ 2143(a)–(c), 2144(a). Although this Court has held that the Oversight Board can embed certain public policy choices in its certified fiscal plans (a decision that is now the subject of a petition for *certiorari* before the United States Supreme Court), the Oversight Board cannot legislate nor unilaterally determine that

any newly enacted law is inconsistent with the applicable fiscal plan and then prevent the application of such law. *See* PROMESA §§ 204(a) (permitting the Oversight Board to prevent the enforcement of new laws only if the Government fails to provide a cost estimate and certification that the new law is "not significantly inconsistent" with the applicable fiscal plan), 303; 48 U.S.C. §§ 2145(a), 2163.

5.      Here, the Oversight Board attempts to do what it cannot: prevent a newly enacted law's enforcement simply based on a disagreement with the law's underlying public policy, even though the Government has complied with the cost estimate and certification requirements prescribed under PROMESA section 204(a). The Board has attempted to achieve this aim by confecting a dispute over the adequacy of the section 204(a) estimate and certification accompanying the new law.

6.      In 2017, Act 8-2017 and Act 26-2017 were enacted to, among other things, decrease the accumulation of vacation and sick day benefits for public employees. Since the enactment of these laws, however, the people of Puerto Rico have experienced substantial hardships as a result of the destruction caused by Hurricanes Irma and Maria (and now with ongoing earthquakes and the COVID-19 pandemic). The Government determined that these hardships were severely affecting family life in Puerto Rico through the reduced amount of time public employees had to share with their loved ones. In response and to improve employee morale, the Government enacted Act 176 to increase the accrual rates for vacation days and sick days, but also limited the ability of employees to liquidate such benefits consistent with the existing caps under Act 26-2017.

7.      Not only are the Oversight Board's actions unreasonable from a public policy standpoint and unwarranted under PROMESA, if the Oversight Board's improper actions are not checked, the people of Puerto Rico will be disenfranchised because their locally elected

4

Government will be stripped of its policymaking powers. The Oversight Board's improper usurpation of the Government's role will also prevent the Government from directly addressing the needs of the people, which may further increase outmigration, thereby reducing the tax base and worsening Puerto Rico's economic and humanitarian problems. This Court must prevent the Oversight Board from overstepping its carefully delineated, statutory bounds and let the Government regulate its public employee benefit programs.

## PARTIES

8.      Plaintiff Governor Wanda Vázquez Garced is the Governor of Puerto Rico.

9.      Plaintiff AAFAF is a public corporation created under section 5(a) of the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Law No. 2 of January 18, 2017, "for the purpose of acting as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing." Non-party Mr. Omar J. Marrero Diaz, Esq. serves as AAFAF's executive director (the "AAFAF Executive Director").

10.     Defendant Oversight Board is an entity within the Government that Congress created under PROMESA. *See* PROMESA § 101(b)(1), (c)(1); 48 U.S.C. § 2121(b)(1), (c)(1). Under PROMESA, the Oversight Board must maintain (and does in fact maintain) an office in Puerto Rico. Plaintiffs do not seek damages with respect to the Oversight Board. Non-party Ms. Natalie A. Jaresko serves as the Oversight Board's executive director (the "Oversight Board Executive Director").

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction under 28 U.S.C. § 1332 because the action arises under PROMESA, a federal statute. In addition, PROMESA section 106(a) vests federal courts with exclusive jurisdiction to hear disputes against the Oversight Board, or any action otherwise arising out of PROMESA. *See* 48 U.S.C. § 2126(a). This Court also has jurisdiction over this matter under PROMESA section 306(a)(2) because this action relates to the Commonwealth's PROMESA Title III case in that any plan of adjustment in the Commonwealth's Title III case must be consistent with a certified fiscal plan. *See* PROMESA § 314(b)(7); 48 U.S.C. § 2174(b)(7).

12.     This Court has personal jurisdiction over the Oversight Board because the Board is an entity within the Government and maintains an office in Puerto Rico. This Court also has personal jurisdiction over the Oversight Board under PROMESA section 306(c).

13.     Venue is proper in this District under PROMESA sections 106(a) and 307, and 28 U.S.C. § 1391.  *See* 48 U.S.C. §§ 2126(a), 2167.

14.     This is an appropriate action for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.  Declaratory relief is proper here because there exists an actual, justiciable controversy between the parties concerning the Oversight Board's unilateral efforts to prevent the enforcement or application of Act 176 under PROMESA sections 204(a) and 108(a).

## FACTS

### I.    PROMESA's Carefully Balanced Division of Powers

15.     Effective June 30, 2016, the U.S. Congress enacted PROMESA to stabilize Puerto Rico's economy by establishing oversight of the Government's budget and fiscal policies and by

providing a mechanism for the Commonwealth to restructure its debts. *See* PROMESA § 201(b)(2); 48 U.S.C. §2141(b)(2).

16.     To that end, PROMESA created the Oversight Board, whose express purpose is "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a), (b)(1); 48 U.S.C. § 2121(a), (b)(1). The Board is structured to provide oversight to help Puerto Rico achieve these goals, but not to supplant the Government or override its public policy priorities.

17.     Consistent with its purpose, the Oversight Board's powers include:

- certifying fiscal plans for the Commonwealth and its instrumentalities, *see* PROMESA § 201, 48 U.S.C. § 2141;

- certifying annual budgets for the Commonwealth and its instrumentalities, *see* PROMESA § 202, 48 U.S.C. § 2142;

- collecting information from the federal government, the Puerto Rican Government, and creditors, *see* PROMESA § 104(c) –(d), 48 U.S.C. § 2124(c)–(d);

- subpoenaing information from others, *see* PROMESA § 104(f), 48 U.S.C. § 2124(f);

- investigating disclosure and sales practices for Puerto Rico government bonds, *see* PROMESA § 104(o), 48 U.S.C. § 2124(o);

- certifying voluntary agreements under Title VI, filing Title III petitions on behalf of the Commonwealth or any of its instrumentalities, or submitting plans of adjustment in a Title III case, *see* PROMESA § 104(i)–(j), 48 U.S.C. § 2124(i)–(j);

- enforcing Puerto Rico's laws barring public sector employees from striking, *see* PROMESA § 104(h), 48 U.S.C. § 2124(h); and

- various other administrative powers, *see* PROMESA §104(a), 48 U.S.C. § 2124(a) (hold hearings, receive evidence and administer oaths), (e) (receive gifts and bequests), (g) (enter into contracts), (k) (institute litigation to enforce its powers), and (n) (use administrative support services from the federal government), among others.

18.     While PROMESA grants the Oversight Board significant powers, Congress struck a careful balance in the statute designed to preserve the Government's political and governmental powers. To that end, "the Oversight Board [was] not given the power to affirmatively legislate," *Rosselló Nevares v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 330 F.Supp.3d 685, 701 (D.P.R. 2018), and Congress preserved certain "policies and actions that can be adopted and pursued only with the Governor's approval." *Vázquez Garced v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 945 F.3d 3, 7 (1st Cir. 2019).

19.     This balance was intended to protect all stakeholders, but most of all the people of Puerto Rico, who are entitled to a functioning government that can provide essential services and preserve their "life, health and general welfare." P.R. CONST., art. II § 19. As PROMESA's legislative history makes clear, "In general, the oversight board . . . will provide guardrails for the Puerto Rico government, but will not supplant or replace the territory's elected leaders, who will retain primary control over budgeting and fiscal policymaking."  H.R. Rep. 114-602(l), 2016 WL 3124840, at *112 (2016).

20.     In PROMESA section 405, Congress states that the Board's purpose is to "provide the Government of Puerto Rico with the resources and tools it needs to address an immediate existing and imminent crisis," PROMESA § 405(n)(1), "provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring," *id.* § 405(n)(3), and "benefit the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its longstanding fiscal governance issues and return to economic growth." *Id.* § 405(n)(5).  The import

of PROMESA's plain language is that Congress intended the Oversight Board to assist, support, and encourage the Government, not to supplant or control it.

21.     Consistent with this intent, PROMESA section 204(a) provides a unique process for ensuring that the elected Government's newly enacted laws do not run roughshod over Board-certified fiscal plans while providing the elected Government with flexibility to implement public policies that the elected Government believes are in the best interests of the people of Puerto Rico. Importantly, section 204(a) does not wholly negate the Government's right to legislate.

### A.     PROMESA's Fiscal Plan Compliance Certification Process

22.     PROMESA section 204(a) establishes a detailed procedure for the Oversight Board to review the Government's newly enacted laws and ensure ongoing compliance with certified fiscal plans. Under this procedure, the Governor must submit every new law to the Oversight Board within seven business days of its enactment. *See* PROMESA § 204(a)(1); 48 U.S.C. § 2144(a)(1). In addition, the Governor's submission must be accompanied by a compliance certification that includes:  (A) "a *formal estimate* prepared by an appropriate entity of the territorial government with expertise in budgets and financial management of the impact, if any, that the law will have on *expenditures and revenues*;" and (B) a certification that that the new law either "is *not significantly inconsistent* with the Fiscal Plan for the fiscal year" or "is significantly inconsistent with the Fiscal Plan for the fiscal year." *See* PROMESA § 204(a)(2); 48 U.S.C. § 2144(a)(2) (emphasis added).

23.     As this Court has held, to comply with section 204(a)'s requirements, the Government must make a "good faith" effort to determine the new law's financial effects and consistency with the existing fiscal plan. *See The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, Adv. Pro. No. 19-00393 (LTS), 2020 WL 1873380, at *7 (D.P.R. Apr. 15, 2020) (the "Act 29 Op. II") ("Congress expected

the Governor and the relevant territorial entity to comply with the statutory predicates in good faith.") (quoting *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 403 F.Supp.3d 1, 13 (D.P.R. 2019) (the "Act 29 Op. I"). In addition, the cost estimate must cover the entire fiscal plan period, and cannot be based on "incomplete, inaccurate, or false documentation." Act 29 Op. I, at 13; *see also* Act 29 Op. II, at *7 ("[T]he Governor's formal estimate and certification were required to address the fiscal impact of Law 29 on the entire period covered by the 2019 Fiscal Plan."). But this Court has not empowered the Board to nitpick every assumption underlying the estimate and certification, require legal analysis (as opposed to financial analysis), or demand any particular model or method to determine a new law's financial effects. So long as the elected Government's estimate and certification are in good faith and based on reasonably complete and accurate information, they satisfy section 204(a)'s requirements.

24.     After receiving a new law and compliance certification, the Board must send a notification to the Governor and Legislature if the Government (A) fails to submit a "formal estimate" that satisfies PROMESA section 204(a)(2)(A), (B) fails to submit a certification that the new law is "not significantly inconsistent" with the applicable fiscal plan, or (C) submits a certification that the new law is "significantly inconsistent" with the applicable fiscal plan. *See* PROMESA § 204(a)(3); 48 U.S.C. § 2144(a)(3). If any one of these three situations apply and the Board sends the required notification, then "the Oversight Board may direct the Governor to provide the missing estimate or certification (as the case may be), in accordance with such procedures as the Oversight Board may establish." PROMESA § 204(a)(4)(A); 48 U.S.C. § 2144(a)(4)(A).

10

25. In addition, if the Board's notification is based on a Government compliance certification stating that the new law is "significantly inconsistent" with the applicable fiscal plan under PROMESA section 204(a)(3)(C), then the Oversight Board must direct the Government to (i) "correct the law to eliminate the inconsistency;" or (ii) "provide an explanation for the inconsistency that the Oversight Board finds reasonable and appropriate." PROMESA § 204(a)(4)(B); 48 U.S.C. § 2144(a)(4)(B).

26. PROMESA section 204(a)(5) empowers the Board to "take such actions as it considers necessary, consistent with this chapter, to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law." PROMESA § 204(a)(5); 48 U.S.C. § 2144(a)(5). This power applies only "[i]f the territorial government *fails to comply with a direction given by the Oversight Board under paragraph (4)* with respect to the law" (*i.e.*, a direction to provide a "missing" cost estimate or certification). *Id.*

**B.    Enforcement Mechanism under PROMESA Section 108(a)(2)**

27. PROMESA section 108(a)(2) provides that "neither the Governor nor the Legislature may . . . (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board." PROMESA § 108(a)(2); 48 U.S.C. § 2128(a)(2). Accordingly, PROMESA section 108(a)(2) provides the Board with its only enforcement mechanism for "preventing the enforcement or application" of a new law to the extent permitted under PROMESA section 204(a)(5).

28. On April 15, 2020, this Court explained that "the plain language of section 108 allows the Oversight Board to challenge statutes that it has determined impair or defeat the purposes of PROMESA," but "section 108(a) does not itself authorize the Oversight Board to nullify legislation." Act 29 Op. II at \*11. In addition, this Court found that "Congress did not, in

11

section 108 of PROMESA, enable the Oversight Board to take unilateral, unreviewable action in preventing the enactment, implementation, or enforcement of statutes that the Oversight Board has determined would impair or defeat the purposes of PROMESA." *Id.* Instead, PROMESA "requires that the Oversight Board seek judicial enforcement of its section 108(a)(2) determinations [as permitted under section 104(k) of PROMESA], thus subjecting those determinations to review by this Court." *Id.*

## II.    Act 176 and the Fiscal Plan Compliance Certification Process

### A.    The Oversight Board Certifies the 2019 Fiscal Plan.

29.    On May 9, 2019, the Oversight Board certified its own fiscal plan for the Commonwealth under PROMESA section 201(e)(2) (the "2019 Fiscal Plan").[3] That same day, the Oversight Board delivered a compliance certification letter (the "2019 Fiscal Plan Certification Letter") and a copy of the certified 2019 Fiscal Plan to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico as required under PROMESA section 201(e)(2). A true and correct copy of the 2019 Fiscal Plan Certification Letter and 2019 Fiscal Plan is attached hereto as **Exhibit 1**.

30.    The 2019 Fiscal Plan includes a five-year baseline revenue and expenditure forecast through fiscal year 2024. Between fiscal years 2019 and 2024, the 2019 Fiscal Plan projected baseline revenues to range between approximately $20 billion and $23.3 billion annually. *See* 2019 Fiscal Plan at 27. For the same period, the 2019 Fiscal Plan projected baseline expenditures to range between approximately $20.5 billion and $21.3 billion. *See id.* at 33. As a result, the 2019

---

[3] The 2019 Fiscal Plan was subsequently updated and replaced with a new 2020 Fiscal Plan for Puerto Rico, as certified by the Oversight Board on May 27, 2020 (the "2020 Fiscal Plan"). The 2020 Fiscal Plan includes substantial changes to the 2019 Fiscal Plan to reflect the negative economic effects of the COVID-19 pandemic. But at all relevant times related to the enactment and certification of Act 176, the 2019 Fiscal Plan was the then-effective fiscal plan for purposes of satisfying the PROMESA section 204(a) compliance certification requirements.

Fiscal Plan projected a short-term cumulative surplus from fiscal year 2019 to fiscal year 2024 of approximately $13.7 billion. *See id.* at 39.

> **B.     The Government Enacts Act 176 and Certifies that It Is "Not Significantly Inconsistent" with the 2019 Fiscal Plan.**

31.     Upon assuming office on August 7, 2019, Governor Vázquez Garced established a practice and policy of ensuring compliance with PROMESA, including compliance with the section 204(a) certification requirements for newly enacted laws. Governor Vázquez Garced formally implemented this policy on October 25, 2019 by adopting Executive Order OE-2019-057. That executive order established rigorous procedures to comply with section 204(a) and ordered cooperation from all Government agencies, instrumentalities, and public corporations to comply promptly. Executive Order OE-2019-057 also established that only AAFAF, the Puerto Rico Department of Treasury ("Treasury"), and the Puerto Rico Office of Management and Budget ("OMB") are "appropriate entities of the territorial government" to issue compliance certifications under PROMESA section 204(a). A true and correct copy of Executive Order OE-2019-057 (including a certified English translation) is attached hereto as **Exhibit 2**.

32.     On December 16, 2019, Governor Vázquez Garced signed into law Act 176, which amended section 9.1 of Act 8-2017 and section 2.04 of Act 26-2017 to allow Government employees to accrue an additional 2.5 vacation days and 1.5 sick days per calendar month, while maintaining the existing 60-day cap on vacation days and 90-day cap on sick days. In 2017, Act 8-2017 and Act 26-2017 were enacted to, among other things, decrease the accumulation of vacation and sick day benefits for public employees. Since the enactment of these laws, however, the people of Puerto Rico have experienced substantial hardships as a result of the destruction caused by Hurricanes Irma and Maria (and now with ongoing earthquakes and the COVID-19 pandemic). The Government determined that these hardships were severely affecting family life

13

in Puerto Rico by reducing the amount of time public employees (who are often central to efforts to rebuild the island's infrastructure and provide critical relief services to its citizens) could share with their loved ones. To address this important concern and improve employee morale, the Government enacted Act 176 to increase the accrual rates for vacation days and sick days, thereby affording public employees the opportunity to spend more time with family.  Importantly, Act 176 does not change the cap on the number of vacation and sick days an employee may accumulate, and so it does not increase the Government's payment obligations when public employees leave their jobs and cash out their accrued benefits. A true and correct copy of Act 176 is attached hereto as **Exhibit 3**.[4]

33.    On December 26, 2019, the Government submitted to the Board a section 204(a) compliance certification for Act 176 (the "Act 176 Certification"), which estimated that Act 176 would have no effect on revenues or expenditures—and, therefore, would not be "significantly inconsistent" with the 2019 Fiscal Plan—because Act 176 "merely adjusts the accretion of vacation and sick days for public employees . . . while strictly adhering to the liquidation prohibitions established in the [2019 Fiscal Plan] and Act 26-2017." Act 176 does not affect expenditures because it (i) retains existing limitations on the liquidation of vacation days, which cannot be paid until the employee no longer works for the Government and only up to the existing 60-day statutory limit; and (ii) does not allow for the liquidation of sick days at all. In addition, the accrual rates for vacation and sick days will not change the wages of Government employees. Indeed, the 2019 Fiscal Plan provides for the liquidation of accrued vacation days up to the 60-day limit and Act 176 does not alter that expenditure in any way whatsoever. A true and correct copy of the Act 176 Certification is attached hereto as **Exhibit 4**.

---

[4] As of filing this Complaint, an official certified English translation of Act 176 was not available. Contemporaneously herewith, the Plaintiffs will file a motion seeking leave to obtain and submit a certified English translation of Act 176.

**C.     The Oversight Board Notifies the Governor and Legislature that the Act 176
          Certification Is Deficient and Threatens Nullification of Act 176.**

34.     On May 11, 2020, the Oversight Board Executive Director sent a letter (the "May
11 Letter") to Governor Vázquez Garced, Senate President Thomas Rivera Schatz, and House
Speaker Carlos J. Méndez Núñez. A true and correct copy of the May 11 Letter is attached hereto
as **Exhibit 5**.

35.     By the May 11 Letter, the Oversight Board Executive Director argued that the Act
176 Certification was deficient because "the estimate fail[ed] to account for Act 176's impact on
employee productivity." *See* May 11 Letter at 1-2. The Board then directed the Government to
provide a "complete formal estimate . . . taking lost productivity into account" by May 19, 2020.
*Id.* at 2. In addition, the Oversight Board Executive Director asserted that Act 176 was
"significantly inconsistent" with the 2019 Fiscal Plan and would "impair and defeat the purposes
of PROMESA," and reserved its rights under PROMESA sections 204(a)(5) and 108(a)(2) to seek
remedies for preventing the enforcement of Act 176. *Id*. The Oversight Board Executive Director
did not explain how a program that provides higher vacation and sick day accrual rates but retains
existing limits on the ability to liquidate accrued vacation and sick days would negatively impact
expenditures (other than a nebulous claim of reduced "employee productivity" that has no direct
effect on expenditures). Nor did the Executive Director explain how, in light of the fact that Act
176 would require no additional expenditures, the Act could conceivably be "significantly
inconsistent" with the operative fiscal plan. This is part and parcel with the Board's pattern and
practice of reading the term "significantly inconsistent" out of PROMESA and treating even the
slightest, most speculative deviation from a fiscal plan as a basis for nullifying statutes.

36.     The AAFAF Executive Director responded to the Board in a May 19, 2020 letter
(the "May 19 Letter"), reiterating that Act 176 has no effect on revenues and expenditures and

explaining that PROMESA does not require a section 204(a) compliance certification to account for any speculative decrease in "employee productivity" as the Board requested. *See* May 19 Letter at 2. In addition, the AAFAF Executive Director explained that the Board's attempt to prevent the implementation of Act 176 under PROMESA section 108(a) was improper because the Board failed to identify any fiscal effect of the law that would undermine fiscal responsibility or hinder Puerto Rico's access to the capital markets (i.e., the dual purposes of PROMESA). A true and correct copy of the May 19 Letter is attached hereto as **Exhibit 6**.

37.     On June 5, 2020, AAFAF received another letter (the "June 5 Letter") from the Oversight Board Executive Director, asserting that "proceeding to go forward with . . . significantly inconsistent legislation notwithstanding objections from the Oversight Board grounded in PROMESA, will lead the Oversight Board to have no choice but to seek judicial relief." *See* June 5 Letter at 2. A true and correct copy of the June 5 Letter is attached hereto as **Exhibit 7**.

38.     None of the foregoing actions and allegations asserted in the Board's various letters are proper exercises of the Board's powers under PROMESA or permitted by PROMESA itself. Instead, they represent overreach by the Board.

39.     PROMESA section 204(a) is focused solely on financial and budgetary concerns, requiring the certification to describe only the "impact" on "expenditures and revenues." The Act 176 Certification does exactly that. Act 176 has no impact on expenditures because the law merely adjusts the accretion of vacation and sick days for public employees. Moreover, the additional vacation and sick day accruals will not affect expenditures because Act 176 (i) retains existing limitations on the liquidation of vacation days, which cannot be paid until the employee no longer works for the Government and only up to the existing 60-day statutory limit; and (ii) does not

allow for the liquidation of sick days at all. Under Act 176, employees will be paid the same regardless of the accrual rate for vacation and sick days, and any expenditures made to departing Government employees for their unused vacation and sick days cannot exceed the limits established under Act 26-2017. The 2019 Fiscal Plan provides for these expenditures, and, in such regard, Act 176 does not alter them in any whatsoever.

40.     Similarly, the Act 176 Certification also states that "Act 176 has no impact on revenues." The rationale for that conclusion is quite straightforward: nothing in Act 176 prevents or otherwise prohibits the Government from continuing to collect revenue in the ordinary course of its operations. The accrual of additional vacation and sick days each month has no impact on the Government's revenue collection processes.

41.     Nothing in PROMESA section 204(a) requires the Government to speculate about unlikely outcomes or analyze every possible effect of a law, no matter how remote. The Board's assertion that Act 176 could result in employee productivity loss of 5% (or the equivalent of losing the productivity of 2,400 public employees) is both speculative and incorrect. This could happen only if all public employees used every single accrued vacation and sick day, which does not occur in practice and is expressly prohibited under Act 176, in any event. The Board ignores a key consideration in the Act 176 Certification. All governmental entities must create strict personnel vacation plans for each fiscal year to prevent the accumulation of excess vacation days and ensure the continuity of uninterrupted government services. This internal control measure protects against potential abuse of the accrual policy, which appears to be the root of the Board's employee productivity concerns.

42.     The Board's actions also infringe the powers reserved to the Government under PROMESA and the Puerto Rico Constitution, which is also federal law approved by Congress.

17

*See* P.R. Const., Pub.L. 82–447, 66 Stat. 327 (enacted July 3, 1952). Such rights cannot be preempted by the Board under PROMESA, which merely states that PROMESA "shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]." PROMESA § 4; 48 U.S.C. § 2103. Here, the Board is trying to usurp power that belongs to the Government and thereby exercise governmental and political powers that the Board itself lacks under PROMESA.

### COUNT I[5]

### DECLARATORY JUDGMENT THAT THE ACT 176 CERTIFICATION SATISFIES PROMESA'S REQUIREMENTS (PROMESA § 204(a))

43.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-42 as if fully set forth herein.

44.     As the statute that creates the Oversight Board, PROMESA defines the limits of the Oversight Board's powers. While PROMESA grants the Oversight Board broad powers to approve fiscal plans, it limits the Oversight Board's power with respect to policy-making matters implemented through new legislation. This prevents the Oversight Board from usurping the political and governmental power of the Government of Puerto Rico.

45.     To control Government policy after the Board's certification of the 2019 Fiscal Plan, the Oversight Board has threatened to prevent implementation of Act 176 on improper public policy grounds, even though the Government submitted a fully compliant Act 176 Certification that included both a cost estimate and Government determination that Act 176 was "not significantly inconsistent" with the 2019 Fiscal Plan. This use of the Board's legislative review

---

[5] Plaintiffs reserve the right to amend this complaint, or to file additional complaints, to assert causes of action relative to any other recently enacted laws and compliance certifications that the Board similarly claims do not comply with the requirements of PROMESA section 204(a).

powers circumvents Congress' express preservation of the Commonwealth's political and
governmental power to the Government under PROMESA section 303. As such, the Oversight
Board cannot prevent the implementation of Act 176 on public policy grounds even though the
law's fiscal effects are not significantly inconsistent with the governing fiscal plan.

46.     Plaintiffs are therefore entitled to a judicial declaration under 28 U.S.C. § 2201, as
well as further relief under 28 U.S.C. § 2202, that the Government's cost estimate in the Act 176
Certification satisfies the "formal estimate" requirement under PROMESA section 204(a)(2)(A)
and, as a result, the Oversight Board lacked authority to (i) send a notification for failure to provide
an estimate pursuant to PROMESA section 204(a)(3)(A), or (ii) direct the Governor to provide a
"missing" estimate pursuant to PROMESA section 204(a)(4)(A).

47.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as
further relief under 28 U.S.C. § 2202, that the Government's determination that Act 176 is "not
significantly inconsistent" with the 2019 Fiscal Plan as provided in the Act 176 Certification
satisfies the requirement under PROMESA section 204(a)(2)(B) and, as a result, the Oversight
Board lacked authority to (i) send a notification for failure to provide a certification pursuant to
PROMESA section 204(a)(3)(B), or (ii) direct the Governor to provide a "missing" certificate
pursuant to PROMESA section 204(a)(4)(A).

48.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as
further relief under 28 U.S.C. § 2202, that the Oversight Board cannot "take such actions as it
considers necessary, consistent with [PROMESA], to ensure that the enactment of [Act 176] will
not adversely affect the [Government's] compliance with the [2019 Fiscal Plan], including
preventing the enforcement or application of the law," pursuant to PROMESA section 204(a)(5).

## COUNT II

### DECLARATORY JUDGMENT THAT THE
### OVERSIGHT BOARD CANNOT UNLATERALLY ENJOIN THE
### IMPLEMENTATION AND ENFORCEMENT OF NEW LAWS, INCLUDING ACT 176
### (PROMESA § 108(a)(2))

49.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-42 and

44-48 as if fully set forth herein.

50.     As the statute that creates the Oversight Board, PROMESA defines the limits of the

Oversight Board's powers. While PROMESA grants the Oversight Board broad powers to approve

fiscal plans, it limits the Oversight Board's power with respect to policy-making matters

implemented through new legislation. This prevents the Oversight Board from usurping the

political and governmental power of the Government of Puerto Rico.

51.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as

further relief under 28 U.S.C. § 2202, that the Board's invocation of PROMESA section 108(a)(2)

is and was of no force and is and was without any effect with respect to the validity and

enforcement of Act 176.

### PRAYER FOR RELIEF

WHEREFORE the Plaintiffs pray that judgment be entered for them and against the

Defendants as follows:

A.     Declaring that the Government's Act 176 Certification complies with the cost

estimate and fiscal plan compliance certification requirements under PROMESA section 204(a);

B.     Declaring that the Oversight Board lacks the authority to send a notification

directing the Government to revise its cost estimate and/or fiscal plan compliance certification

pursuant to PROMESA section 204(a)(3) and (a)(4) if the Government complies with the

requirements of PROMESA section 204(a)(2).

C.      Declaring that the Oversight Board cannot take additional actions under PROMESA section 204(a)(5), including acts to prevent the enforcement or application of Act 176, because the Act 176 Certification complies with the requirements of PROMESA section 204(a);

D.      Declaring that the Oversight Board must seek judicial enforcement under PROMESA section 104(k) in exercising any powers that it may have under PROMESA section 204(a)(5), and any unilateral determinations of non-compliance with PROMESA section 204(a) are non-binding on the Government and do not need to be implemented by the Government; and

E.      Declaring that any Board action to invalidate or prevent the enforcement of Act 176 without first seeking judicial approval of such action, exceeds the Board's powers under PROMESA section 108(a)(2) and would be unlawful, and are null and void; and

F.      Granting such other and further relief as the Court deems just and proper.


*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Dated: June 12, 2020
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *John J. Rapisardi*

John J. Rapisardi
William J. Sushon
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, New York 10036
Tel:　(212) 326-2000
Fax:　(212) 326-2061

-and-

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, D.C. 20006
Tel:　(202) 383-5300
Fax: (202) 383-5414

*Attorneys for Governor Vázquez Garced
and the Puerto Rico Fiscal Agency and
Financial Advisory Authority*

/s/ *Luis C. Marini-Biaggi*

Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00917
Tel:　(787) 705-2171
Fax: (787) 936-7494

*Co-attorneys for Governor Vázquez Garced
and the Puerto Rico Fiscal Agency and
Financial Advisory Authority*