# EXHIBIT 6

**GOVERNMENT OF PUERTO RICO**

Puerto Rico Fiscal Agency and Financial Advisory Authority

**VIA ELECTRONIC MAIL**

May 19, 2020

Ms. Natalie A. Jaresko
Executive Director
The Financial Oversight and Management Board for Puerto Rico
P.O. Box 192018
San Juan, Puerto Rico 00919-2018

*Re:   Your letters dated as of May 11, 2020 regarding Acts 176-2019 and 181-2019 (the "Letters");*

Dear Ms. Jaresko:

The purpose of this letter is to respond to your Letters regarding Acts 176-2019 and 181-2019 (the "Acts"), which, with all due respect, we believe are counterproductive and undermine the Government's efforts to work cooperatively with the Financial Oversight and Management Board (the "Board") for the people of Puerto Rico.

For the reasons explained herein, we are of the opinion that the Board's efforts to prohibit legislation that complies with the operative fiscal plan and budget is at odds with PROMESA and the Title III Court's orders. Let's discuss.

*Act 176-2019*

Act 176-2019 amends section 9.1 of Act 8-2017 and section 2.04 of Act 26-2017 to allow government employees to accrue an additional 2.5 vacation days and 1.5 sick days per calendar month, while maintaining the existing 60-day cap on vacation days and 90-day cap on sick days.  The corresponding letter contends that the compliance certificate for Act 176-2019 is deficient because it "fails to account for Act 176's impact on employee productivity."  A requirement inexistent within the legal contours of PROMESA.

Contrary to the implied contention, there is no requirement that the certification account for any speculative decrease in "employee productivity."  As we have explained in prior letters regarding issuance of compliance certificates for new laws, PROMESA



PO Box 42001  •  San Juan, PR 00940-2001  •  Telephone (787) 722-2525

# GOVERNMENT OF PUERTO RICO

**Puerto Rico Fiscal Agency and Financial Advisory Authority**

section 204(a) requires only that the Government provide a "formal estimate . . . of the impact, if any, that the law will have on *expenditures and revenues*."[1]

Consequently, the Government's compliance certificate for Act 176-2019 does exactly that. As explained therein, "Act 176 has no impact on expenditures" because the law "merely adjusts the accretion of vacation and sick days for public employees." Moreover, the additional vacation and sick day accruals will not affect expenditures because Act 176-2019: (i) retains existing limitations on the liquidation of vacation days, which cannot be paid until the employee no longer works for the Government and only up to the existing 60-day statutory limit; and (ii) does not allow for the liquidation of sick days at all. Under Act 176-2019, employees will be paid the same regardless of the accrual rate for vacation and sick days, and any expenditures made to departing Government employees for their unused vacation and sick days cannot exceed the limits established under Act 26-2017. The Board's May 2019 Commonwealth Fiscal Plan provides for these expenditures, and, in such regard, Act 176-2019 does not alter them in any whatsoever.

Similarly, the Act 176-2019 compliance certificate also states that "Act 176 has no impact on revenues." The rationale for such conclusion is quite straightforward: nothing in Act 176-2019 prevents or otherwise prohibits the Government from continuing to collect revenue in the ordinary course of its operations. The accrual of additional vacation and sick days each month has no impact on the Government's revenue collection processes.

Nothing in PROMESA section 204(a) requires the Government to speculate about unlikely outcomes or analyze every possible effect of a law, no matter how remote. The Board's assertion that Act 176-2019 could result in employee productivity loss of 5% (or the equivalent of losing the productivity of 2,400 public employees) is both speculative and incorrect. This could happen only if all public employees used every single accrued vacation and sick day, which does not occur in practice and is expressly prohibited under Act 176-2019, in any event. The Board ignores a key consideration in the Act 176-2019 compliance certificate: all governmental entities must create strict personnel vacation plans for each fiscal year to prevent the accumulation of excess vacation days and ensure the continuity of uninterrupted government services.[2] This internal control measure protects against potential abuse of the accrual policy, which appears to be the root of the Board's

---

[1] 48 U.S.C. § 2144(a)(2)(A) (emphasis added).

[2] *See* Act 176-2019 Compliance Certificate ("[E]very governmental entity and instrumentality is required to formulate and manage a personnel vacation plan for each calendar year, which shall be strictly complied with by all employees, in order to ensure that said employees do not accumulate excess vacation days, while ensuring that the services provided by the corresponding governmental entities and instrumentalities are not interrupted.").



PO Box 42001 • San Juan, PR 00940-2001 • Telephone (787) 722-2525

# GOVERNMENT OF PUERTO RICO
**Puerto Rico Fiscal Agency and Financial Advisory Authority**

employee productivity concerns. PROMESA does not mandate the analysis the Board has required *ultravires*, and the certificate for Act 176-2019 is sufficient.

### *Act 181-2019*

Act 181-2019, enacted on December 26, 2019, provides a $125 per month pay increase to members of the Bureau of the Fire Department of Puerto Rico. On January 23, 2020, the Government provided a formal estimate of Act 181-2019's impact on expenditures and revenues. Such estimate indicates that the cumulative annual additional expenditure resulting from this pay increase will be $2,809,386.84, and funded through a 3% tax on fire and allied lines insurance policies.

Nevertheless, your letter contends that the foregoing certification is inadequate under PROMESA section 204(a) because the estimates are "based on hypothetical facts" and "grounded in uncertainty." Such contention is quite shocking to say the least. By definition, an **estimate** of future expenditures and revenues is a projection based on hypothetical facts and is uncertain.[3] It represents only a "rough or approximate calculation."[4] Section 204(a) requires nothing more.[5] As the Title III Court recently made clear in *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, Adv. Proc. No. 19-00393 (LTS), 2020 WL 1873380 (D.P.R. Apr. 15, 2020) (the "Act 29 Order"), PROMESA section 204(a) requires only a "good faith" effort to determine the new law's financial effects and consistency with the existing fiscal plan.[6] The Letters do not contend—nor could they—that the

---

[3] *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1213 (1st Cir. 1996) (noting that the uncertain nature of "forecasts, estimates, opinions, or projections" raise the "possibility that actual results or events may turn out differently"); *In re Biogen Inc. Sec. Litig.*, 193 F.Supp.3d 5, 40 (D. Mass. 2016) (following *Shaw* and noting that statements of projected earnings and future economic performance—couched in terms of "expected" and "approximate" results—were not materially misleading even though the projections turned out to be wrong).

[4] *Cox v. SNAP, Inc.*, 859 F.3d 304, 310 (4th Cir. 2017) (quoting Webster's Third New International Dictionary 779 (1993)); *see also Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Carolina Trim LLC*, No. 17-6485 (VSB), 2020 WL 915815, at *5 (S.D.N.Y. Feb. 26, 2020) ("[A]n estimate is 'a rough or approximate calculation.'") (quoting Merriam-Webster.com Dictionary); *Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1135 (D.C. Cir. 2013) (noting that "an estimate, by definition, will not accurately account for every variable."); *Mowat Const. Co. v. Dorena Hydro, LLC*, Case No. 14-00094-AA, 2015 WL 5665302, at *8 (D. Or. Sept. 23, 2015) ("Estimate is a term that, by its very nature, connotes inexactness [and] is a mere approximation [that] precludes accuracy.") (internal citations and quotations omitted).

[5] *See* 48 U.S.C. §2144(a)(2)(A) (requiring a "formal *estimate* . . . of the impact, if any, that the law *will* have on expenditures and revenues").

[6] *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, Adv. Proc. No. 19-00393 (LTS), 2020 WL 1873380, at *7 (D.P.R. Apr. 15, 2020) ("Congress expected the Governor and the relevant territorial entity to comply with the statutory predicates in good





**GOVERNMENT OF PUERTO RICO**

**Puerto Rico Fiscal Agency and Financial Advisory Authority**

certifications for Act 176-2019 and Act 181-2019 were prepared in anything other than good faith.

As mentioned, in compliance with Section 204(a) of PROMESA, AAFAF provided a *Section 204 Certificate* for Act 181-2019. The certificate established that the new tax established by Section 6 of said Act, would provide approximately $6,987,360.00 in new revenue according to data corresponding to 2018 and contained in a report prepared by the Office of the Commissioner of Insurance (the "OCI"). Additionally, the new tax would have provided new revenue of $4,119,030.00 according to insurance policies subscribed during year 2017.[7] Furthermore, the surcharge imposed by Act 181-2019 would have produced average new revenue for $5,714,010.00 if we take into account data ranging from 2011-2018.[8] And, since the budgetary impact of the salary increase was estimated on $2,809,386.84, the Government estimates Act 181-2019 could have a positive impact from a fiscal standpoint given that we can estimate that the tax increase is more than sufficient to cover for the budgetary increase.

*The Section 108(a)(2) "Injunctions"*

The Letters also states that "implementation of [the Acts] prior to satisfaction of all section 204 requirements would impair and defeat the purposes of PROMESA."[9] Since the Act 29 Order, the Board has repeated this blanket incantation in every letter to the Government alleging that a section 204(a) certification is inadequate.[10] Such repeated

---

faith.") (quoting *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 403 F. Supp. 3d 1, 13 (D.P.R. 2019)).

[7] See Exhibit 1 attached to this electronic mail.

[8] From the report we may conclude that the new tax would have produced the following new revenue for:
- 2016: $4,797,960.00
- 2015: $5,273,520.00
- 2014: $6,198,300.00
- 2013: $5,945,550.00
- 2012: $5,888,280.00
- 2011: $6,502,080.00

[9] *Id.*

[10] *See* Letter from N. Jaresko to Hon. Wanda Vázquez Garced, Hon. Thomas Rivera Schatz, and Hon. Carlos J. Méndez Núñez Regarding Act 181-2019 (May 11, 2020), at 2; Letter from N. Jaresko to Hon. Wanda Vázquez Garced, Hon. Thomas Rivera Schatz, and Hon. Carlos J. Méndez Núñez Regarding Act 176-2019 (May 11, 2020), at 2; Letter from N. Jaresko to O. Marrero Díaz Regarding Joint Resolution 16-2020 (May 8, 2020), at 2; Letter from N. Jaresko to O. Marrero Díaz Regarding Acts 82-2019, 90-2019 and 138-2019 (Apr. 27, 2020), at 3.



**GOVERNMENT OF PUERTO RICO**

Puerto Rico Fiscal Agency and Financial Advisory Authority

assertions not only misread the Court's order, but also undermine any effort to work together collaboratively.

The Court's order requires the Board, in exercising its discretion under PROMESA section 108(a)(2), to demonstrate a "rational basis" for its determinations.[11] To satisfy this standard, the Board's determination "must have a logical connection to legitimate governmental interests invoked to justify it."[12] The determination will be overturned if it "lacks a rational basis . . . or if the decision was not based on consideration of the relevant factors."[13] The Board's determinations in these recent letters fail to satisfy even this lenient standard.

As you know, the Board's express purpose under PROMESA is "to provide a method for a covered territory to achieve *fiscal responsibility and access to the capital markets*."[14] Judge Swain found Act 29-2019 unenforceable in large part because she determined that the Act would "deprive[] the Commonwealth of hundreds of millions of dollars, . . . thereby diminishing market access."[15] Unlike the Act 29 Order, the Board's recent letters make no attempt to identify *any* effect that would undermine fiscal responsibility or hinder Puerto Rico's access to the capital markets:

- The May 11 letter regarding Act 176-2019 raises only unspecified concerns about employee productivity, but identifies no effect on expenditures or revenues, nor on PROMESA's dual purposes to promote fiscal responsibility and access to the capital markets.

- The May 11 letter regarding Act 181-2019 merely contends that the Act 181-2019 compliance certificate is excessively "hypothetical" without identifying any fiscal effect the Board believes Act 181-2019 will have on the fiscal plan or budget.

- In its May 8, 2020 letter, the Board declares JR-16-2020 "unenforceable and of no effect" because, in the Oversight Board's opinion, JR-16-2020 is inconsistent with the fiscal plan and budget. But the letter ignores that the

---

[11] *Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 2020 WL 1873380, at *12.

[12] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

[13] *Puerto Rico Tel. Co. v. T-Mobile Puerto Rico LLC*, 678 F.3d 49, 65 (1st Cir. 2012).

[14] 48 U.S.C. § 2121(a) (emphasis added).

[15] *Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 2020 WL 1873380, at *11.





## GOVERNMENT OF PUERTO RICO

**Puerto Rico Fiscal Agency and Financial Advisory Authority**

Government already identified accounts to fund its proposal consistently with the Board-approved budget, such that JR-16-2020 would be fiscally neutral.

- The Board's April 27, 2020 letter regarding Acts 82-2019, 90-2019, and 138-2019 requests the Government's legal opinion regarding three healthcare laws and requests additional information to complete its analysis. Again, nothing in the letter suggests that these laws threaten Puerto Rico's fiscal responsibility or capital-markets access.

In summary, the Oversight Board's failure to identify any fiscal effect of the laws it challenges in the Letters violates PROMESA by requesting information beyond the statutory language of Section 204(a). Moreover, by declaring in a vacuum or through speculative means that laws impair and defeat the purposes of PROMESA, the Board shows that there is no rational basis for its formulaic conclusions in these matters.

Very truly yours,

Omar J. Marrero Diaz, Esq.
Executive Director

