# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| HON. WANDA VÁZQUEZ GARCED (in her official capacity), and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>Plaintiffs,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Defendant. | Adv. Pro. No. 20-_____-LTS |

# ADVERSARY COMPLAINT FOR
# DECLARATORY RELIEF RELATED TO ACT 47

Plaintiffs Hon. Wanda Vázquez Garced, in her official capacity as the Governor of the

Commonwealth of Puerto Rico (the "Governor"), and the Puerto Rico Fiscal Agency and Financial

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Advisory Authority ("AAFAF," together with the Governor, the "Plaintiffs"), hereby bring this *Adversary Complaint for Declaratory and Injunctive Relief Related to Act 47* (the "Complaint")[2] against Defendant the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "Board"), and allege as follows:

## NATURE OF THE ACTION

1.     By this Complaint, Plaintiffs seek declaratory relief to stop the Oversight Board's unlawful (and wasteful) attempts to nullify a duly enacted law of the Commonwealth—Act No. 47 of 2020 ("Act 47")—under the false pretense of non-compliance with the 2019 Fiscal Plan (defined below).

2.     Over the past several months, the Oversight Board has attempted to use the fiscal plan compliance certification process, as contemplated by section 204(a) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. §§ 2101-2241 ("PROMESA"), to undermine the Government's lawful enactment and certification of statutes in conformity with PROMESA. This Complaint deals with the Oversight Board's wrongful efforts to nullify the Government's policy of rewarding healthcare professionals with a tax incentive under Act 47 in recognition of their heroic efforts in combating the global health crisis caused by COVID-19. In so doing, the Oversight Board is abusing its authority in an attempt to micromanage every aspect of Puerto Rico's governance. If the Board's improper actions are allowed to stand, Puerto Rico would be prohibited from preserving and protecting Puerto Rico's healthcare system by creating incentives keep healthcare professionals in Puerto Rico when they are needed most. The Board's

---

[2] As used in this Complaint, (i) "Government" means the government of the Commonwealth of Puerto Rico, but not the Oversight Board; (ii) "Commonwealth" means the Commonwealth of Puerto Rico; and (iii) "Legislature" means the Legislative Assembly of the Commonwealth of Puerto Rico.  Unless otherwise specified, all emphasis is added, and all citations and quotations are omitted.

efforts to foil the Government's policy-making authority exceed the Board's lawful powers under
PROMESA; this Court should declare them null and void.

3.     PROMESA established the Oversight Board to help Puerto Rico "achieve fiscal
responsibility and access to the capital markets."  PROMESA § 101(a); 48 U.S.C. § 2121(a).  The
Oversight Board derives its power solely from the statutory authority Congress granted it under
PROMESA. While Congress gave the Board certain powers, Congress respected Puerto Rico's
framework of self-government. Congress thus created an Oversight Board of limited power and
preserved the democratically-elected Government's powers. While PROMESA grants the
Oversight Board broad fiscal powers (including the power to certify fiscal plans and budgets and
monitor compliance with them), PROMESA preserves to the Government the political and
governmental power and discretion to make good-faith policy decisions by, among other things,
enacting new legislation.

4.     PROMESA granted the Oversight Board authority to establish parameters to bring
fiscal responsibility to Puerto Rico and monitor Puerto Rico's progress, such as the power to
approve and certify fiscal plans for both the Commonwealth and its territorial instrumentalities.
*See* PROMESA §§ 201(c)(3), (e); 48 U.S.C. §§ 2141(c)(3), (e). The Oversight Board also has
authority to monitor and review certain government actions for compliance with certified fiscal
plans, but these compliance powers are narrowly circumscribed to give the Government latitude
to enact new laws that reflect its public policies designed to address the ever-changing needs of a
modern society. *See* PROMESA §§ 203(a)-(c), 204(a); 48 U.S.C. §§ 2143(a)–(c), 2144(a).
Although this Court has held that the Oversight Board can embed certain public policy choices in
its certified fiscal plans (a decision that is now the subject of a petition for *certiorari* before the
United States Supreme Court), the Oversight Board cannot legislate nor unilaterally determine that

any newly enacted law is inconsistent with the applicable fiscal plan and then prevent the application of such law. *See* PROMESA §§ 204(a) (permitting the Oversight Board to prevent the enforcement of new laws only if the Government fails to provide a cost estimate and certification that the law is "not significantly inconsistent" with the applicable fiscal plan), 303; 48 U.S.C. §§ 2145(a), 2163.

5.      Here, the Oversight Board attempts to do what it cannot: prevent a newly enacted law's enforcement simply based on a disagreement with the law's underlying public policy, even though the Government has complied with the cost estimate and certification requirements prescribed under PROMESA section 204(a). The Board has attempted to achieve this aim by confecting a dispute over the adequacy of the section 204(a) estimate and certification accompanying the new law.

6.      Over the last decade, Puerto Rico has experienced substantial outmigration to the mainland United States and this mass exodus has also included vital healthcare professionals, such as doctors, nurses, and technicians. As a result, Puerto Rico entered the COVID-19 pandemic with a severely weakened healthcare system as compared to many U.S. states. The Government thus enacted Act 47 to provide a tax incentive for healthcare professionals to stay in Puerto Rico and ensure that there are sufficient healthcare workers to combat a widespread outbreak of COVID-19 on the Island, which would wreak havoc on Puerto Rico's fragile healthcare system. And the Government enacted Act 47 only after receiving assurances from a Board official that the Board would not oppose the law. But a few weeks after its enactment, the Board changed its position and threatened to nullify Act 47.

7.      Not only are the Oversight Board's actions unreasonable from a public policy standpoint and unwarranted under PROMESA, if the Oversight Board's improper actions are not

checked, the people of Puerto Rico will be disenfranchised because their locally elected Government will be stripped of its policymaking powers. The Oversight Board's improper usurpation of the Government's role will also prevent the Government from directly addressing the needs of the people, which may further increase outmigration, thereby reducing the tax base and worsening Puerto Rico's economic and humanitarian problems. This Court must prevent the Oversight Board from overstepping its carefully delineated, statutory bounds and let the Government provide appropriate tax incentives to protect the health and welfare of Puerto Rico's citizens.

## PARTIES

8.     Plaintiff Governor Wanda Vázquez Garced is the Governor of Puerto Rico.

9.     Plaintiff AAFAF is a public corporation created under section 5(a) of the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Law No. 2 of January 18, 2017, "for the purpose of acting as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing." At all relevant times, non-party Mr. Omar J. Marrero Diaz, Esq. has served as AAFAF's executive director (the "AAFAF Executive Director").

10.     Defendant Oversight Board is an entity within the Government that Congress created under PROMESA. *See* PROMESA § 101(b)(1), (c)(1); 48 U.S.C. § 2121(b)(1), (c)(1). Under PROMESA, the Oversight Board must maintain (and does in fact maintain) an office in Puerto Rico. Plaintiffs do not seek damages with respect to the Oversight Board. Non-party Ms. Natalie A. Jaresko serves as the Oversight Board's executive director (the "Oversight Board Executive Director").

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction under 28 U.S.C. § 1332 because the action arises under PROMESA, a federal statute. In addition, PROMESA section 106(a) vests federal courts with exclusive jurisdiction to hear disputes against the Oversight Board, or any action otherwise arising out of PROMESA. *See* 48 U.S.C. § 2126(a). This Court also has jurisdiction over this matter under PROMESA section 306(a)(2) because this action relates to the Commonwealth's PROMESA Title III case in that any plan of adjustment in the Commonwealth's Title III case must be consistent with a certified fiscal plan. *See* PROMESA § 314(b)(7); 48 U.S.C. § 2174(b)(7).

12.     This Court has personal jurisdiction over the Oversight Board because the Board is an entity within the Government and maintains an office in Puerto Rico. This Court also has personal jurisdiction over the Oversight Board under PROMESA section 306(c).

13.     Venue is proper in this District under PROMESA sections 106(a) and 307, and 28 U.S.C. § 1391.  *See* 48 U.S.C. §§ 2126(a), 2167.

14.     This is an appropriate action for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.  Declaratory relief is proper here because there exists an actual, justiciable controversy between the parties concerning the Oversight Board's unilateral efforts to prevent the enforcement or application of Act 47 under PROMESA sections 204(a) and 108(a).

## FACTS

### I.     PROMESA's Carefully Balanced Division of Powers

15.     Effective June 30, 2016, the U.S. Congress enacted PROMESA to stabilize Puerto Rico's economy by establishing oversight of the Government's budget and fiscal policies and by

providing a mechanism for the Commonwealth to restructure its debts. *See* PROMESA § 201(b)(2); 48 U.S.C. §2141(b)(2).

16.    To that end, PROMESA created the Oversight Board, whose express purpose is "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a), (b)(1); 48 U.S.C. § 2121(a), (b)(1). The Board is structured to provide oversight to help Puerto Rico achieve these goals, but not to supplant the Government or override its public policy priorities.

17.    Consistent with its purpose, the Oversight Board's powers include:

- certifying fiscal plans for the Commonwealth and its instrumentalities, *see* PROMESA § 201, 48 U.S.C. § 2141;

- certifying annual budgets for the Commonwealth and its instrumentalities, *see* PROMESA § 202, 48 U.S.C. § 2142;

- collecting information from the federal government, the Puerto Rican Government, and creditors, *see* PROMESA § 104(c) –(d), 48 U.S.C. § 2124(c)–(d);

- subpoenaing information from others, *see* PROMESA § 104(f), 48 U.S.C. § 2124(f);

- investigating disclosure and sales practices for Puerto Rico government bonds, *see* PROMESA § 104(o), 48 U.S.C. § 2124(o);

- certifying voluntary agreements under Title VI, filing Title III petitions on behalf of the Commonwealth or any of its instrumentalities, or submitting plans of adjustment in a Title III case, *see* PROMESA § 104(i)–(j), 48 U.S.C. § 2124(i)–(j);

- enforcing Puerto Rico's laws barring public sector employees from striking, *see* PROMESA § 104(h), 48 U.S.C. § 2124(h); and

- various other administrative powers, *see* PROMESA §104(a), 48 U.S.C. § 2124(a) (hold hearings, receive evidence and administer oaths), (e) (receive gifts and bequests), (g) (enter into contracts), (k) (institute litigation to enforce its powers), and (n) (use administrative support services from the federal government), among others.

18.     While PROMESA grants the Oversight Board significant powers, Congress struck a careful balance in the statute designed to preserve the Government's political and governmental powers. To that end, "the Oversight Board [was] not given the power to affirmatively legislate," *Rosselló Nevares v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 330 F.Supp.3d 685, 701 (D.P.R. 2018), and Congress preserved certain "policies and actions that can be adopted and pursued only with the Governor's approval." *Vázquez Garced v. The Fin. Oversight & Mgmt. Bd. for Puerto Rico (In re the Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 945 F.3d 3, 7 (1st Cir. 2019).

19.     This balance was intended to protect all stakeholders, but most of all the people of Puerto Rico, who are entitled to a functioning government that can provide essential services and preserve their "life, health and general welfare." P.R. CONST., art. II § 19. As PROMESA's legislative history makes clear, "In general, the oversight board . . . will provide guardrails for the Puerto Rico government, but will not supplant or replace the territory's elected leaders, who will retain primary control over budgeting and fiscal policymaking." H.R. Rep. 114-602(l), 2016 WL 3124840, at *112 (2016).

20.     In PROMESA section 405, Congress states that the Board's purpose is to "provide the Government of Puerto Rico with the resources and tools it needs to address an immediate existing and imminent crisis," PROMESA § 405(n)(1), "provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring," *id.* § 405(n)(3), and "benefit the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its longstanding fiscal governance issues and return to economic growth." *Id.* § 405(n)(5). The import

8

of PROMESA's plain language is that Congress intended the Oversight Board to assist, support, and encourage the Government, not to supplant or control it.

21.     Consistent with this intent, PROMESA section 204(a) provides a unique process for ensuring that the elected Government's newly enacted laws do not run roughshod over Board-certified fiscal plans while providing the elected Government with flexibility to implement public policies that the elected Government believes are in the best interests of the people of Puerto Rico. Importantly, section 204(a) does not wholly negate the Government's right to legislate.

### A.     PROMESA's Fiscal Plan Compliance Certification Process

22.     PROMESA section 204(a) establishes a detailed procedure for the Oversight Board to review the Government's newly enacted laws and ensure ongoing compliance with certified fiscal plans. Under this procedure, the Governor must submit every new law to the Oversight Board within seven business days of its enactment. *See* PROMESA § 204(a)(1); 48 U.S.C. § 2144(a)(1). In addition, the Governor's submission must be accompanied by a compliance certification that includes:  (A) "a *formal estimate* prepared by an appropriate entity of the territorial government with expertise in budgets and financial management of the impact, if any, that the law will have on *expenditures and revenues*;" and (B) a certification that that the new law either "is *not significantly inconsistent* with the Fiscal Plan for the fiscal year" or "is significantly inconsistent with the Fiscal Plan for the fiscal year." *See* PROMESA § 204(a)(2); 48 U.S.C. § 2144(a)(2) (emphasis added).

23.     As this Court has held, to comply with section 204(a)'s requirements, the Government must make a "good faith" effort to determine the new law's financial effects and consistency with the existing fiscal plan. *See The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, Adv. Pro. No. 19-00393 (LTS), 2020 WL 1873380, at *7 (D.P.R. Apr. 15, 2020) (the "Act 29 Op. II") ("Congress expected

9

the Governor and the relevant territorial entity to comply with the statutory predicates in good faith.") (quoting *The Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Vázquez Garced (In re The Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 403 F.Supp.3d 1, 13 (D.P.R. 2019) (the "Act 29 Op. I"). In addition, the cost estimate must cover the entire fiscal plan period and cannot be based on "incomplete, inaccurate, or false documentation." Act 29 Op. I at 13; *see also* Act 29 Op. II at *7 ("[T]he Governor's formal estimate and certification were required to address the fiscal impact of Law 29 on the entire period covered by the 2019 Fiscal Plan."). But this Court has not empowered the Board to nitpick every assumption underlying the estimate and certification, require legal analysis (as opposed to financial analysis), or demand any particular model or method to determine a new law's financial effects. So long as the elected Government's estimate and certification are in good faith and based on reasonably complete and accurate information, they satisfy section 204(a)'s requirements.

24.    After receiving a new law and compliance certification, the Board must send a notification to the Governor and Legislature if the Government (A) fails to submit a "formal estimate" that satisfies PROMESA section 204(a)(2)(A), (B) fails to submit a certification that the new law is "not significantly inconsistent" with the applicable fiscal plan, or (C) submits a certification that the new law is "significantly inconsistent" with the applicable fiscal plan. *See* PROMESA § 204(a)(3); 48 U.S.C. § 2144(a)(3). If any one of these three situations apply and the Board sends the required notification, then "the Oversight Board may direct the Governor to provide the missing estimate or certification (as the case may be), in accordance with such procedures as the Oversight Board may establish." PROMESA § 204(a)(4)(A); 48 U.S.C. § 2144(a)(4)(A).

25.     In addition, if the Board's notification is based on a Government compliance certification stating that the new law is "significantly inconsistent" with the applicable fiscal plan under PROMESA section 204(a)(3)(C), then the Oversight Board must direct the Government to (i) "correct the law to eliminate the inconsistency;" or (ii) "provide an explanation for the inconsistency that the Oversight Board finds reasonable and appropriate." PROMESA § 204(a)(4)(B); 48 U.S.C. § 2144(a)(4)(B).

26.     PROMESA section 204(a)(5) empowers the Board to "take such actions as it considers necessary, consistent with this chapter, to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law." PROMESA § 204(a)(5); 48 U.S.C. § 2144(a)(5). This power applies only "[i]f the territorial government *fails to comply with a direction given by the Oversight Board under paragraph (4)* with respect to the law" (*i.e.*, a direction to provide a "missing" cost estimate or certification). *Id.*

**B.     Enforcement Mechanism under PROMESA Section 108(a)(2)**

27.     PROMESA section 108(a)(2) provides that "neither the Governor nor the Legislature may . . . (2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board." PROMESA § 108(a)(2); 48 U.S.C. § 2128(a)(2). Accordingly, PROMESA section 108(a)(2) provides the Board with its only enforcement mechanism for "preventing the enforcement or application" of a new law to the extent permitted under PROMESA section 204(a)(5).

28.     On April 15, 2020, this Court explained that "the plain language of section 108 allows the Oversight Board to challenge statutes that it has determined impair or defeat the purposes of PROMESA," but "section 108(a) does not itself authorize the Oversight Board to nullify legislation." Act 29 Op. II at *11. In addition, this Court found that "Congress did not, in

11

section 108 of PROMESA, enable the Oversight Board to take unilateral, unreviewable action in preventing the enactment, implementation, or enforcement of statutes that the Oversight Board has determined would impair or defeat the purposes of PROMESA." *Id.* Instead, PROMESA "requires that the Oversight Board seek judicial enforcement of its section 108(a)(2) determinations [as permitted under section 104(k) of PROMESA], thus subjecting those determinations to review by this Court." *Id.*

## II.     Act 47 and the Fiscal Plan Compliance Certification Process

### A.     The Oversight Board Certifies the 2019 Fiscal Plan.

29.     On May 9, 2019, the Oversight Board certified its own fiscal plan for the Commonwealth under PROMESA section 201(e)(2) (the "2019 Fiscal Plan").[3] That same day, the Oversight Board delivered a compliance certification letter (the "2019 Fiscal Plan Certification Letter") and a copy of the certified 2019 Fiscal Plan to the Governor, the President of the Senate of Puerto Rico, and the Speaker of the House of Representatives of Puerto Rico as required under PROMESA section 201(e)(2). A true and correct copy of the 2019 Fiscal Plan Certification Letter and 2019 Fiscal Plan is attached hereto as **Exhibit 1**.

30.     The 2019 Fiscal Plan includes a five-year baseline revenue and expenditure forecast through fiscal year 2024. Between fiscal years 2019 and 2024, the 2019 Fiscal Plan projected baseline revenues to range between approximately $20 billion and $23.3 billion annually. *See* 2019 Fiscal Plan at 27. For the same period, the 2019 Fiscal Plan projected baseline expenditures to range between approximately $20.5 billion and $21.3 billion. *See id.* at 33. As a result, the 2019

---

[3] The 2019 Fiscal Plan was subsequently updated and replaced with a new 2020 Fiscal Plan for Puerto Rico, as certified by the Oversight Board on May 27, 2020 (the "2020 Fiscal Plan"). The 2020 Fiscal Plan includes substantial changes to the 2019 Fiscal Plan to reflect the negative economic effects of the COVID-19 pandemic. But at all relevant times related to the enactment and certification of Act 47, the 2019 Fiscal Plan was the then-effective fiscal plan for purposes of satisfying the PROMESA section 204(a) compliance certification requirements.

Fiscal Plan projected a short-term cumulative surplus from fiscal year 2019 to fiscal year 2024 of approximately $13.7 billion. *See id.* at 39.

      **B.**     **The Government Enacts Act 47 and Certifies that It Is "Not Significantly Inconsistent" with the 2019 Fiscal Plan.**

    31.     Upon assuming office on August 7, 2019, Governor Vázquez Garced established a practice and policy of ensuring compliance with PROMESA, including compliance with the section 204(a) certification requirements for newly enacted laws. Governor Vázquez Garced formally implemented this policy on October 25, 2019 by adopting Executive Order OE-2019-057. That executive order established rigorous procedures to comply with section 204(a) and ordered cooperation from all Government agencies, instrumentalities, and public corporations to comply promptly. Executive Order OE-2019-057 also established that only AAFAF, the Puerto Rico Department of Treasury ("Treasury"), and the Puerto Rico Office of Management and Budget ("OMB") are "appropriate entities of the territorial government" to issue compliance certifications under PROMESA section 204(a). A true and correct copy of Executive Order OE-2019-057 (including a certified English translation) is attached hereto as **Exhibit 2**.

    32.     On March 11, 2020, the World Health Organization declared the disease caused by a novel coronavirus, known as COVID-19, a global pandemic.

    33.     The elected Government's response to the pandemic was swift and effective. On March 12, 2020, Governor Vázquez Garced signed Executive Order OE-2020-020 declaring a state of emergency in Puerto Rico. Then, on March 15, 2020, Governor Vázquez Garced signed Executive Order OE-2020-023, which directed the closure of certain businesses in Puerto Rico and implemented an island-wide curfew designed to reduce the spread of COVID-19 and minimize the strain of the pandemic on Puerto Rico's healthcare system. Governor Vázquez Garced acted earlier than the Governor of any other state, including states that experienced the first significant

COVID-19 outbreaks such as California (which implemented its stay-at-home order on March 19, 2020), New York (which implemented its stay-at-home order on March 20, 2020), and Washington (which implemented its stay-at-home order on March 23, 2020). This swift and decisive action has helped keep Puerto Rico's rate of infection lower than that of any of the 50 states. *See* Bill Scher, "Coronavirus vs. Governors: Ranking the Best and Worst State Leaders," *Politico* (Apr. 1, 2020), *available at* https://www.politico.com/news/magazine/2020/04/01/coronavirus-state-governors-best-worst-covid-19-159945 (last visited Jun. 11, 2020). As of June 11, 2020, Puerto Rico's infection rate was approximately 1,580 cases per million people, well below the U.S. average of 6,306 cases per million and New York's 20,665 cases per million. *See* Compiled Data, https://www.worldometers.info/coronavirus/country/us/ (last visited Jun. 11, 2020).

34.     In the ensuing weeks, the Government coordinated with the Oversight Board on potential COVID-19 response legislation, such as Act 47, to ensure that the Board would support such measures. On or about April 27, 2020, the Oversight Board's director of municipal affairs and legislative review stated on a phone call with a Government official that the Board had "no problem" with Act 47.

35.     On April 28, 2020, as a further measure to reinforce efforts to contain the pandemic and treat those stricken with COVID-19 and with assurances from the Board, Governor Vázquez Garced signed into law Act 47. That Act amended Act No. 60 of 2019 by introducing technical adjustments to the Puerto Rico Incentives Code to provide tax relief to health professionals, whose personal and professional sacrifices have been integral to protecting Puerto Ricans' health, safety, and welfare during the COVID-19 pandemic. A true and correct copy of Act 47 is attached hereto as **Exhibit 3**.[4]

---

[4] As of filing this Complaint, an official certified English translation of Act 47 was not available. Contemporaneously herewith, the Plaintiffs will file a motion seeking leave to obtain and submit a certified English translation of Act 47.

36.     On May 4, 2020, the Government timely submitted to the Board a section 204(a)

compliance certification for Act 47 (the "Act 47 Certification"), which estimated that Act 47 would

have no effect on expenditures, but could have an annual revenue reduction effect of $25.7 million

depending on various factors. These factors included: (1) the number of medical professionals that

request tax incentives; (2) the number of medical professionals ultimately approved to receive such

incentives after satisfying certain prerequisites; and (3) the amount of income ultimately reported

by the qualified professionals. Of course, these are not numbers that can, in advance, be determined

with any degree of certainty; instead, the estimate provided the elected Government's best

projection of the anticipated figures. The Act 47 Certification also concluded that Act 47 was "not

significantly inconsistent" with the 2019 Fiscal Plan. A true and correct copy of the Act 47

Certification is attached hereto as **Exhibit 4**.

### C.     The Oversight Board Notifies the Governor and Legislature that the Act 47 Certification is Deficient and Threatens Nullification of Act 47.

37.     On May 21, 2020, the Oversight Board Executive Director sent a letter (the "May

21 Letter") to Governor Vázquez Garced, Senate President Thomas Rivera Schatz, and House

Speaker Carlos J. Méndez Núñez. A true and correct copy of the May 21 Letter is attached hereto

as **Exhibit 5**.

38.     By its May 21 Letter, the Board notified the Government that (i) the Governor

allegedly "failed to provide the formal estimate of the impact [Act 47] will have on expenditures

and revenues," *see* May 21 Letter at 1; and (ii) the Act 47 Certification was "deficient" under

PROMESA section 204(a) because Act 47 "will reduce revenue by tens of millions of dollars per

year, without any corresponding cut in spending or proposal to increase revenues from other

sources," such that Act 47 cannot be "anything other than significantly inconsistent with" the 2019

Fiscal Plan. *Id.* at 3. The Board asserted that, to ensure revenue neutrality, "revenue reductions

15

must be accompanied by specific offsetting savings and/or increase in revenue measures of a

sufficient amount identified in the enabling legislation." *Id.* The May 21 Letter further contended

that Act 47 is "grossly overbroad" by "provid[ing] exemptions for several classes of health

practitioners . . . whose services do not appear implicated by the COVID-19 pandemic . . . and

does not assist the Commonwealth in addressing the pandemic." *Id.* at 2 n.1.

39.     By the May 21 Letter, the Board also directed the Government to provide a revised

formal estimate for Act 47 by May 28, 2020 to address five specific data points in the cost estimate:

- "The total number of medical practitioners who are eligible to seek approval for the tax incentive;

- Minimum and maximum estimates of the percentage of medical practitioners applying for this incentive;

- The number of medical practitioners by each area of specialty or sub-specialty who are eligible to seek approval for the tax incentive;

- Minimum and maximum estimates of these medical practitioners' estimated income, listed by each area of specialty or sub-specialty; and

- Minimum and maximum estimates of the Act's impact on the certified Fiscal Plan based on the income reported by such practitioners in previous years." *Id.* at 2.

40.     In addition, Oversight Board Executive Director asserted that (i) "the Oversight

Board has determined implementation of [Act 47] prior to the satisfaction of all Section 204

requirements would impair and defeat the purposes of PROMESA . . . [and] therefore, must not

be implemented at this time;" and (ii) "the Oversight Board reserves the rights to take such actions

as it considers necessary, consistent with Section 204(a)(5), 204(c) and 108(a)(2), including

preventing and seeking remedies for the enforcement or application of [Act 47]." *Id.* at 3.

41.     On May 28, 2020, the AAFAF Executive Director—on behalf of the Governor and

AAFAF—responded to the Board (the "May 28 Letter"). A true and correct copy of the May 28

Letter is attached hereto as **Exhibit 6**.

42.     In the May 28 Letter, AAFAF's Executive Director explained that PROMESA section 204(a) requires only (i)  an "estimate" of annual fiscal effect, which by its very nature will be uncertain and based on hypothetical facts, (ii) an analysis of the financial effect on the 2019 Fiscal Plan, not the wisdom of any particular public policy of the duly elected Government, and (iii) a certification that the new law is "not significantly inconsistent" with the operative fiscal plan (here, the 2019 Fiscal Plan), such that new laws *may* be inconsistent with the 2019 Fiscal Plan as long as they are not *significantly* inconsistent. *See* May 28 Letter at 1-3. The AAFAF Executive Director also explained that the 2019 Fiscal Plan provided for projected revenues in excess of $20 billion per fiscal year, but the original estimated annual revenue effect of Act 47 was $25.7 million, representing less than 0.128% of the 2019 Fiscal Plan's annual revenue projections. In its May 21 Letter, the Oversight Board Executive Director did not explain how a program that would potentially affect approximately 0.128% of projected revenues could conceivably be "significantly inconsistent" with the fiscal plan. This is part and parcel with the Board's pattern and practice of reading the term "significantly inconsistent" out of PROMESA and treating even the slightest, most speculative deviation from a fiscal plan as a basis for nullifying statutes.

43.     AAFAF nevertheless provided additional information and, in the interest of transparency, a slightly revised cost estimate for Act 47, including the following data points:

- According to records and data provided by the Puerto Rico Department of Treasury, there are approximately 9,222 medical practitioners in Puerto Rico and the Government estimates that about 7,188 of them could be eligible to seek the Act 47 tax incentives, although not all of them will necessarily qualify.

- Based on these estimates, the Government projects that Act 47 could have an estimated revenue impact for fiscal year 2020 ranging from $540,000 to $40,100,000.

- The revised estimate differs from the Act 47 Certification because it now includes a broader group of health professionals included in the NAICS registry, as opposed to the less inclusive SURI Merchants Registry used for the Act 47 Certification. *See* May 28 Letter at 2-3.

17

44.     In addition, the May 28 Letter noted that the Board's formulaic conclusion that Act 47 impairs or defeats PROMESA's purposes—without identifying the *significantly* inconsistent fiscal effect of Act 47 on the 2019 Fiscal Plan—shows that there is no rational basis for preventing the implementation of Act 47.

45.     But the Board was still not satisfied. On June 5, 2020, the Oversight Board Executive Director responded to AAFAF's May 28 Letter (the "June 5 Letter"). A true and correct copy of the June 5 Letter is attached hereto as **Exhibit 7**.

46.     In the June 5 Letter, the Oversight Board Executive Director argued that the determination of whether a new law is "significantly" inconsistent with the 2019 Fiscal Plan should only be based on the financial costs of the new law on the "Commonwealth's own-source revenues . . . not on all revenues received by the Commonwealth"—a standard not found anywhere in the statute.  *See* June 5 Letter at 1. The Board also incorrectly assumed that the Government's revised estimate would cost approximately $200 million over five years and, thus, concluded that Act 47 is "significantly" inconsistent with both the 2019 Fiscal Plan and 2020 Fiscal Plan. *See id.* In addition, the Board contended that it may rely on public policy justifications for preventing the implementation of new laws because "no court has decided that the Oversight Board lacks the authority under PROMESA to prevent implementation of new laws based solely on the Oversight Board's disagreement with the Government's public policy decisions." *Id.* at 2.

47.     For the reasons discussed in its May 21 Letter and June 5 Letter, the Oversight Board Executive Director stated that the Board "strongly desires and expects the Government to revise or forego Act 47" and "continuing to implement Act 47 . . . will lead the Oversight Board to have no choice but to seek judicial relief." *Id.* at 2.

48.     None of the foregoing actions and allegations asserted in the Board's various letters are proper exercises of the Board's powers under PROMESA or permitted by PROMESA itself. Instead, they represent overreach by the Board.

49.     PROMESA section 204(a) requires only an "estimate" of a new law's anticipated effect on "expenditures and revenues." By definition, an "estimate" of future expenditures and revenues is a projection based on hypothetical facts and is uncertain. *See Cox v. SNAP, Inc.*, 859 F.3d 304, 310 (4th Cir. 2017) (quoting Webster's Third New International Dictionary 779 (1993)); *see also Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Carolina Trim LLC*, No. 17-6485 (VSB), 2020 WL 915815, at *5 (S.D.N.Y. Feb. 26, 2020) ("[A]n estimate is 'a rough or approximate calculation.'") (quoting Merriam-Webster.com Dictionary); *Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115, 1135 (D.C. Cir. 2013) (noting that "an estimate, by definition, will not accurately account for every variable."); *Mowat Const. Co. v. Dorena Hydro, LLC*, Case No. 14-00094-AA, 2015 WL 5665302, at *8 (D. Or. Sept. 23, 2015) ("Estimate is a term that, by its very nature, connotes inexactness [and] is a mere approximation [that] precludes accuracy.") (internal citations and quotations omitted). Although the estimate must be made in good faith, PROMESA section 204(a) requires nothing more. Here, the Board has not contended— nor could it—that the Government failed to provide an estimate in good faith.

50.     In addition, PROMESA section 204(a) authorizes the Board to challenge a compliance certification based solely on the new law's financial effect on the fiscal plan, not the public policy of the duly elected Government. While the Board and the Government can certainly discuss differences of opinion on issues of public policy, PROMESA does not grant the Board unilateral authority to prevent the implementation of new laws simply because the Board disagrees

with the Government's public policy decisions. The Government's foremost responsibility is to protect the health, safety, and welfare of the people of Puerto Rico, and the Board cannot act in a way that would usurp these powers.

51.     The Board's actions also infringe the powers reserved to the Government under PROMESA and the Puerto Rico Constitution, which is also federal law approved by Congress. *See* P.R. Const., Pub.L. 82–447, 66 Stat. 327 (enacted July 3, 1952). Such rights cannot be preempted by the Board under PROMESA, which merely states that PROMESA "shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with [PROMESA]." PROMESA § 4; 48 U.S.C. § 2103. Here, the Board is trying to usurp power that belongs to the Government and thereby exercise governmental and political powers that the Board itself lacks under PROMESA.

## COUNT I[5]

### DECLARATORY JUDGMENT THAT THE ACT 47 CERTIFICATION SATISFIES PROMESA'S REQUIREMENTS (PROMESA § 204(a))

52.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-51 as if fully set forth herein.

53.     As the statute that creates the Oversight Board, PROMESA defines the limits of the Oversight Board's powers. While PROMESA grants the Oversight Board broad powers to approve fiscal plans, it limits the Oversight Board's power with respect to policy-making matters implemented through new legislation. This prevents the Oversight Board from usurping the political and governmental power of the Government of Puerto Rico.

---

[5] Plaintiffs reserve the right to amend this complaint, or to file additional complaints, to assert causes of action relative to any other recently enacted laws and compliance certifications that the Board similarly claims do not comply with the requirements of PROMESA section 204(a).

54.    To control Government policy after the Board's certification of the 2019 Fiscal Plan, the Oversight Board has threatened to prevent the implementation of Act 47 on improper public policy grounds, even though the Government submitted a fully compliant Act 47 Certification that included both a cost estimate and Government determination that Act 47 was "not significantly inconsistent" with the 2019 Fiscal Plan. This use of the Board's legislative review powers circumvents Congress' express preservation of the Commonwealth's political and governmental power to the Government under PROMESA section 303. As such, the Oversight Board cannot prevent the implementation of Act 47 on public policy grounds even though the law's fiscal effects are not significantly with the governing fiscal plan.

55.    Plaintiffs are therefore entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Government's cost estimate in the Act 47 Certification (as updated and revised in the May 28 Letter) satisfies the "formal estimate" requirement under PROMESA section 204(a)(2)(A) and, as a result, the Oversight Board lacked authority to (i) send a notification for failure to provide an estimate pursuant to PROMESA section 204(a)(3)(A), or (ii) direct the Governor to provide a "missing" estimate pursuant to PROMESA section 204(a)(4)(A).

56.    Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Government's determination that Act 47 is "not significantly inconsistent" with the 2019 Fiscal Plan as provided in the Act 47 Certification satisfies the requirement under PROMESA section 204(a)(2)(B) and, as a result, the Oversight Board lacked authority to (i) send a notification for failure to provide a certification pursuant to PROMESA section 204(a)(3)(B), or (ii) direct the Governor to provide a "missing" certificate pursuant to PROMESA section 204(a)(4)(A).

57.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Oversight Board cannot "take such actions as it considers necessary, consistent with [PROMESA], to ensure that the enactment of [Act 47] will not adversely affect the [Government's] compliance with the [2019 Fiscal Plan], including preventing the enforcement or application of the law," pursuant to PROMESA section 204(a)(5).

## COUNT II

### DECLARATORY JUDGMENT THAT THE
### OVERSIGHT BOARD CANNOT UNLATERALLY ENJOIN THE
### IMPLEMENTATION AND ENFORCEMENT OF NEW LAWS, INCLUDING ACT 47
### (PROMESA § 108(a)(2))

58.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-51 and 53-57 as if fully set forth herein.

59.     As the statute that creates the Oversight Board, PROMESA defines the limits of the Oversight Board's powers. While PROMESA grants the Oversight Board broad powers to approve fiscal plans, it limits the Oversight Board's power with respect to policy-making matters implemented through new legislation. This prevents the Oversight Board from usurping the political and governmental power of the Government of Puerto Rico.

60.     Plaintiffs are entitled to a judicial declaration under 28 U.S.C. § 2201, as well as further relief under 28 U.S.C. § 2202, that the Board's invocation of PROMESA section 108(a)(2) is and was of no force and is and was without any effect with respect to the validity and enforcement of Act 47.

### PRAYER FOR RELIEF

WHEREFORE the Plaintiffs pray that judgment be entered for them and against the Defendants as follows:

22

A.      Declaring that the Government's Act 47 Certification complies with the cost estimate and fiscal plan compliance certification requirements under PROMESA section 204(a);

B.      Declaring that the Oversight Board lacks the authority to send a notification directing the Government to revise its cost estimate and/or fiscal plan compliance certification pursuant to PROMESA section 204(a)(3) and (a)(4) if the Government complies with the requirements of PROMESA section 204(a)(2).

C.      Declaring that the Oversight Board cannot take additional actions under PROMESA section 204(a)(5), including acts to prevent the enforcement or application of Act 47, because the Act 47 Certification complies with the requirements of PROMESA section 204(a);

D.      Declaring that the Oversight Board must seek judicial enforcement under PROMESA section 104(k) in exercising any powers that it may have under PROMESA section 204(a)(5), and any unilateral determinations of non-compliance with PROMESA section 204(a) are non-binding on the Government and do not need to be implemented by the Government; and

E.      Declaring that any Board action to invalidate or prevent the enforcement of Act 47 without first seeking judicial approval of such action, exceeds the Board's powers under PROMESA section 108(a)(2) and would be unlawful, and are null and void; and

F.      Granting such other and further relief as the Court deems just and proper.


*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

Dated: June 12, 2020
        San Juan, Puerto Rico

Respectfully submitted,

/s/ *John J. Rapisardi*                              /s/ *Luis C. Marini-Biaggi*

John J. Rapisardi                                    Luis C. Marini-Biaggi
William J. Sushon                                    USDC No. 222301
(Admitted *Pro Hac Vice*)                            Email: lmarini@mpmlawpr.com
**O'MELVENY & MYERS LLP**
7 Times Square                                       Carolina Velaz-Rivero
New York, New York 10036                             USDC No. 300913
Tel:  (212) 326-2000                                 Email: cvelaz@mpmlawpr.com
Fax:  (212) 326-2061

-and-                                                **MARINI PIETRANTONI MUÑIZ LLC**
                                                     250 Ponce de León Ave., Suite 900
Peter Friedman                                       San Juan, Puerto Rico 00917
(Admitted *Pro Hac Vice*)                            Tel:  (787) 705-2171
1625 Eye Street, NW                                  Fax:  (787) 936-7494
Washington, D.C. 20006
Tel:  (202) 383-5300                                 *Co-attorneys for Governor Vázquez Garced*
Fax: (202) 383-5414                                  *and the Puerto Rico Fiscal Agency and*
                                                     *Financial Advisory Authority*
*Attorneys for Governor Vázquez Garced*
*and the Puerto Rico Fiscal Agency and*
*Financial Advisory Authority*