# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.₁ | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered)<br><br>**RE: ECF No. 12897** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III |
| LESLIE JAY BONILLA SAUDER,<br><br>    Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Respondent. | |

## OBJECTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO MOTION REQUESTING ALLOWANCE OF POST PETITION TORT CLAIM AS PRIORITY CLAIM

---

₁ The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA" and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................3

ARGUMENT .....................................................................................................................5

    I.      Movant's Asserted Claim is a Prepetition Claim Barred by the Bar Date
           Order. ..............................................................................................................5

           A.     Movant's Asserted Claim Arose Prepetition ...............................................5

           B.     Movant's Actual Knowledge of the Title III Cases ....................................7

           C.     Movant's Asserted Prepetition Claim is Outside the Scope of
               *Reading* ........................................................................................................9

    CONCLUSION...................................................................................................................11

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

Cases

*Abercrombie v. Hayden Corp. (In re Abercrombie)*,
   139 F.3d 755 (9th Cir. 1998) ................................................................10

*Butner v. United States*,
   440 U.S. 48 (1979).................................................................................5

*Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*,
   536 F.2d 950 (1st Cir. 1976) ................................................................10

*Doble Seis Sport TV, Inc. v. Depto. de Hacienda*,
   190 D.P.R. 763 (P.R. 2014) ..................................................................6

*In re CD Realty Partners*,
   205 B.R. 651 (Bankr. D. Mass. 1997) ..................................................5

*Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*,
   114 F.3d 379 (2nd Cir. 1997).................................................................5

*Papasan v. Allain*,
   478 U.S. 265 (1986)...............................................................................6

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
   507 U.S. 380 (1993)...............................................................................9

*Reading Co. v. Brown*,
   391 U.S. 471 (1968)....................................................................2, 5, 9, 10

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996).................................................................................6

*Vil v. Poteau*,
   No. 11-cv-11622-DJC, 2013 U.S. Dist. LEXIS 104943 (D. Mass. July 26,
   2013) ...................................................................................................5, 6

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989).................................................................................6

*Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*,
   954 F.2d 1 (1st Cir. 1992)..................................................................10, 11

Statutes

11 U.S.C. § 101(5) .................................................................................4, 5

34 L.P.R.A. § 1724p ...............................................................................................6

34 L.P.R.A. § 1724q ...............................................................................................6

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9006(b)(1).................................................................................8

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's sole representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),1 hereby files this objection (the "Objection") to the *Motion Requesting Allowance of Post Petition Tort Claim as Priority Claim Pursuant the Fundamental Fairness Doctrine in* Reading Co. v. Brown*, 391 US 471 (1968)* [ECF No. 12897]2 (the "Motion").3 In support of this Objection, the Oversight Board respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Movant requests the ability to file a proof of claim and to obtain immediate payment based on the Commonwealth's prepetition confiscation and the subsequent postpetition auction and sale of Movant's confiscated vehicle. In support therefor, and realizing the prepetition nature of it all, Movant alleges that Movant and Movant's counsel did not receive formal notice of the prevailing bar date and Movant's obligation to file a proof of claim pursuant to this Court's order and the permitted extension.  Such position is undermined by the fact that (a) Movant appeared before the Court several months before the bar date to request the Court lift the automatic stay as to Movant's confiscation proceedings and (b) Movant's counsel showed it had actual knowledge of the bar date when it filed an informative motion with the Court minutes before the bar date deadline notifying the Court of an inability to file proofs of claim as to dozens of other clients because of an alleged issue with the claims website.  In such motion, counsel explicitly observed

---

1  PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

2  References to the docket are to Case No. 17-BK-3283-LTS, unless otherwise specified.

3  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

that the "Court moved the statute of limitation to file the proof of claims until today, [June 29, 2018,] 4pm." ECF No. 3385 ¶ 2. The Commonwealth furthermore published its bar date notice in no less than five publications in both Spanish and English, and aired numerous advertisements over the radio. Accordingly, Movant's contention that neither he nor his counsel were informed of the obligation to file a proof of claim for the obvious prepetition activity is not plausible. Moreover, Movant does not even attempt to establish excusable neglect, as required by applicable law, to avoid the application of the Bar Date Order, as defined below.

2.      In an effort to sidestep such obvious deficiencies, Movant requests application of *Reading Co. v. Brown*, 391 U.S. 471 (1968), to designate his claim as having administrative priority. However, as noted more fully below, Movant's claim arises from a prepetition occurrence and, therefore, falls outside the scope of *Reading*. There is no dispute that Movant's claim arose on March 4, 2017, two months prior to the Commonwealth's filing of its Title III petition, the date Movant alleges the Commonwealth illegally confiscated Movant's vehicle. Although the Commonwealth subsequently auctioned Movant's vehicle postpetition, such auction was conducted pursuant to the Uniform Forfeiture Act of 2011, 34 L.P.R.A. § 1724 *et seq.* (the "UFA"), which specifically provides for the auction of confiscated property and the process and remedy for property that is determined to have been confiscated improperly. Specifically, if auctioned property is later found to have been confiscated improperly, the Act provides a monetary remedy— the sum that Movant seeks allowance and payment of as an administrative expense claim.

3.      Consistent with the general requirement for administrative priority that the liability at issue arise from postpetition transactions with debtors, *Reading* does not extend to transactions that have a prepetition genesis, as is the case here. Furthermore, *Reading* does not permit the creation of a cause of action where one does not exist. Here, where the UFA already provided the

2

remedy for improper vehicle confiscation, allowing administrative priority on a theory of tort or illegality pursuant to *Reading*'s fundamental fairness doctrine would create an independent cause of action that does not exist and to which the Commonwealth has not consented. This would abrogate the Commonwealth's sovereignty and violate the U.S. Constitution's Eleventh Amendment.

4.       For these reasons, as more fully detailed below, the Motion should be denied.

## BACKGROUND

5.       On April 24, 2017, Movant initiated an action (the "Prepetition Action") in the Court of First Instance in the Municipality of Aibonito (the "Commonwealth Court") against the Commonwealth challenging the forfeiture of Movant's vehicle as a result of a criminal intervention by law enforcement agents. In the Prepetition Action, Movant alleged that his automobile was improperly seized on March 4, 2017. Mot. ¶ 3 n.3.

6.       On May 3, 2017 (the "Petition Date"), the Commonwealth filed a petition pursuant to Title III of PROMESA to commence its Title III case.

7.       On July 10, 2017, the Commonwealth Court stayed the Prepetition Action.

8.       On August 16, 2017, Movant filed a motion (the "Stay Motion") seeking relief from the automatic stay to proceed with the Prepetition Action. *Motion for Relief from Automatic Stay [ECF No. 1048]*. On August 30, 2017, the Commonwealth filed a response thereto (the "Response") consenting to the partial modification of the automatic stay solely to allow Movant to proceed with the Prepetition Action to contest the forfeiture of his vehicle. *Response of The Commonwealth to Motion for Relief from Automatic Stay Filed by Leslie Jay Bonilla Sauder [ECF No. 1048]* [ECF No. 1214]. In the Response, however, the Commonwealth explicitly declined to consent to satisfaction of liability that may result from the forfeiture proceedings. Response ¶ 2

3

(". . . in no event shall the Commonwealth be required to satisfy any liability to Movant in any way whatsoever with respect to the Forfeiture Action").  Movant did not reply to the Response.

9.    On September 13, 2017, this Court entered an order (the "Lift Stay Order") modifying the automatic stay to allow "the Lawsuit to proceed for necessary forfeiture determination proceedings prior to entry and enforcement of any judgment for money damages[,]" but keeping the stay "in place with respect to any claim for damages, and execution and enforcement of any judgment for damages."  *Memorandum Order Granting in Part Motion of Leslie Jay Bonilla Sauder for Relief from Automatic Stay (Docket Entry No. 1048)* [ECF No. 1290] at 3–4.

10.    On February 15, 2018, the Court entered the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Bar Date Order").  The Bar Date Order established May 29, 2018 as the deadline (the "Bar Date") to file proofs of claim (as defined pursuant to Bankruptcy Code section 101(5)).  Bar Date Order ¶ 3(a).  Pursuant to an order, dated May 25, 2018, the Court subsequently extended the Bar Date to June 29, 2018. *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (the "Bar Date Extension Order").  The Bar Date Order and Bar Date Extension Order also directed the Debtors, as soon as practicable after the orders' entry, to publish the applicable bar date notice in five publications, including both English and Spanish-language publications,[4] and to air multiple advertisements over the radio.[5]

---

[4]  Specifically, in (a) *El Nuevo Día* in Spanish (primary circulation is in Puerto Rico), (b) *Caribbean Business* in English (primary circulation is in Puerto Rico), (c) *El Diario* and *El Nuevo Herald*, both in Spanish (primary circulation is in New York and Miami, respectively), and (d) *The Bond Buyer*.

[5]  Specifically, in (a) WMEG FM (contemporary hit radio) in Spanish and (b) WKAQ AM (Spanish language talk radio) in Spanish.

11.     Movant has not filed a proof of claim in accordance with the dictates of the Bar Date Order or the Bar Date Extension Order.

12.     On April 20, 2020, Movant filed the Motion, alleging that the Commonwealth is liable for "illegal and negligent" auctioning of Movant's automobile. Mot. ¶ 6–7.

## ARGUMENT

13.     Movant requests an order "allowing movant to file a proof of claim as a priority administrative claim in the minimum amount of $16,500.00 and to be treated as such consistently" with the fundamental fairness doctrine articulated in *Reading Co. v. Brown*, 391 U.S. 471 (1968). Mot. at 5.  For the reasons discussed below, Movant's request should be denied.

**I.     Movant's Asserted Claim is a Prepetition Claim Barred by the Bar Date Order.**

**A.     Movant's Asserted Claim Arose Prepetition**

14.     Bankruptcy Code section 101 defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5). The substantive right of payment is established by local law.  *See Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Property interests [in connection with a Bankruptcy proceeding] are created and defined by state law"); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387 (2nd Cir. 1997) ("[T]he [Bankruptcy] Code does not determine parties' rights regarding the contract and subsequent breach. To determine these rights, we must turn to state law.").  Generally, a claim arises when the acts giving rise to the debtor's alleged liability occur.  *Vil v. Poteau*, No. 11-cv-11622-DJC, 2013 U.S. Dist. LEXIS 104943, at *28 (D. Mass. July 26, 2013) (citing cases); *see In re CD Realty Partners*, 205 B.R. 651, 656 (Bankr. D. Mass. 1997).

15.     Pursuant to Puerto Rico law, Movant's asserted claim arose prior to the Petition Date.  The basis for Movant's asserted claim is the alleged illegal seizure of his vehicle pursuant

5

to the UFA, which Movant recognizes occurred prior to the Petition Date on March 4, 2017. Mot.
¶ 3 n.3. Section 19 of the UFA offers an exclusive[6] remedy to a claimant if it is later determined
that the seizure was unjustified: (a) the return of the seized vehicle, or (b) if the vehicle has been
disposed of, payment of the value of the vehicle:

> In the event the court holds a forfeiture to be illegal, the Board shall return the
> forfeited property to the complainant. **If the Board has already disposed of said
> property, the Government of Puerto Rico shall pay an amount equal to the
> appraisal value at the time of the seizure, or the amount for which it was sold,
> whichever is higher**, plus the prevailing legal interest pursuant to the Rules of Civil
> Procedure, as amended, based on the appraisal value at the time of the seizure.

34 L.P.R.A. § 1724p (emphasis added).

16.     Movant appears cognizant of this remedy as the asserted claim is limited to the
$16,500 obtained in the sale of Movant's vehicle. *See* Mot. ¶ 6, *id.* at 5. Movant is thus seeking
the remedy already provided for an illegal confiscation pursuant to the UFA.

17.     Furthermore, the UFA expressly contemplates that the Commonwealth may
dispose of any vehicles in its custody. 34 L.P.R.A. § 1724q ("The Board may dispose of vehicles
under its custody by sale, auction, or exchange with the general public, as provided by regulations
to such effect."). Accordingly, the auction of Movant's vehicle is not "negligent and illegal" as
Movant asserts. Rather, it was squarely within the process laid out by the UFA described above
that began when Movant's vehicle was seized prior to the Petition Date.[7]

---

[6] Pursuant to Puerto Rico law, any tort claim against the Commonwealth based on the seizure of Movant's vehicle,
under Act 111-2011, would be barred pursuant to *Doble Seis Sport TV, Inc. v. Depto. de Hacienda*, 190 D.P.R. 763
(P.R. 2014) (barring torts claim against the Commonwealth due to improper asset forfeiture).

[7] Among other things, Movant's request to pursue an independent tort action against the Commonwealth is barred by
the Eleventh Amendment, and the Commonwealth has not waived its immunity. It is well established that the Eleventh
Amendment prohibits suits against a nonconsenting state. *E.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54
(1996); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Papasan v. Allain*, 478 U.S. 265, 276 (1986).

### B.   Movant's Actual Knowledge of the Title III Cases

18.     Movant states that neither Movant nor Movant's counsel received formal notice, and therefore were not informed, of the right or obligation to file a proof of claim.  Mot. ¶ 8. However, Movant and Movant's counsel had actual knowledge of this proceeding and of the Bar Date.

19.     Notice of the Bar Date was served on Movant via First Class Mail, as evidenced by the *Certificate of Service* filed on March 2, 2018.  ECF No. 2656 (listing Movant with his counsel's address on page 750 of Exhibit D, and page 766 of Exhibit E).  The Commonwealth also published notice of the extended Bar Date in at least five publications in Puerto Rico and the United States and aired numerous advertisements on the radio.  *See* Affidavit of Publication [ECF No. 2890] (certifying airing of 26 radio advertisements in aggregate in February and March 2018); Affidavit of Publication [ECF No. 2979] (certifying publication of bar date notice on April 19, 2018 in five publications); Affidavit of Publication [ECF No. 3334] (certifying publication of bar date in five publications over the period from June 1, 2018 through and including June 14, 2018); Affidavit of Publication [ECF No. 3743] (certifying airing of 27 radio advertisements in aggregate over the period from June 6, 2018 through and including June 20, 2018); *accord* Extended Bar Date Order ¶¶ 3–4.

20.     Furthermore, on August 16, 2017, months before the Bar Date was established, Movant appeared before this Court seeking relief from the automatic stay to proceed with the Prepetition Action.    *See* Stay Motion.  Movant clearly had actual knowledge of the Commonwealth's Title III proceeding at that time. Movant and Movant's counsel were specifically informed of Movant's potential status as a prepetition unsecured creditor in the Commonwealth's Response to the Stay Motion.  *See* Response ¶ 3 ("As a potential prepetition, unsecured creditor

of the Commonwealth, Movant's claims for damages are subject to the claim resolution process
that will be undertaken in the Title III case.").

21.     Additionally, on June 29, 2018, counsel filed a *Motion Informing Collapse of the
PROMESA Proof of Claim Filing System and Requesting Permission to File Claims in the Docket
to Interrupt the Statute of Limitation* [ECF No. 3385] (the "Informative Motion"), informing the
Court of an issue with the ability to file claims electronically through the claims website and,
noting that the Bar Date deadline would occur within a few hours, requesting that proofs of claim
filed by counsel on the docket preserve the timeliness of proofs of claim once able to be filed again.
The Informative Motion observes that the "Court moved the statute of limitation to file the proof
of claims until today, [June 29, 2018,] 4pm." *Id.* ¶ 2.  The Informative Motion refers to several
dozen creditors and their associated proofs of claim. Accordingly, counsel to Movant had actual
knowledge of the Bar Date.  The contention that counsel and Movant were not informed of the Bar
Date is not plausible.

22.     In some cases, courts have permitted the late filing of a proof of claim filed after
the bar date based on claimant's "excusable neglect."  *See* Fed. R. Bankr. P. 9006(b)(1) ("the court
for cause shown may at any time in its discretion . . . permit the act to be done where the failure to
act was the result of excusable neglect.").  Although Movant has not requested leave to file a late
proof of claim, even if he did, Movant's circumstances would not meet the requirements
established by the United States Supreme Court.  A court assessing whether to grant a motion
under Rule 9006(b) to have a late-filed proof of claim deemed timely must evaluate "the danger
of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings,
the reason for the delay, including whether it was within the reasonable control of the movant, and

whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

23.    With respect to prejudice to the Debtors, it must be noted that over 177,000 proofs of claim have been filed against Debtors in these Title III cases.  The Debtors continue to reconcile such proofs of claim and, upon entry of orders with respect to omnibus objections which the Court has already granted, many have been reconciled or are slotted for reconciliation pursuant to the "ACR" and "ADR" processes that the Court has authorized.  Even then, over 17,000 additional proofs of claim would remain to be reconciled by the Court.  Allowing the filing of a late proof of claim in these circumstances would prejudice the Debtors by opening the floodgates for the filing of other late proofs of claim and essentially restart the claims filing process and overwhelm the Debtors and the Court.

24.    Movant's attempt to remedy the failure to file a proof of claim comes nearly two years after the Bar Date—a delay in the reasonable control of the Movant. Movant's apparent explanation for the delay is alleged lack of notice, but, as shown by the various certificates of service and affidavits of publication referenced in paragraph 19 above and Movant's counsel's Informative Motion, Movant and Movant's counsel had actual knowledge of the Bar Date and of the obligation to file a proof of claim.  Accordingly, Movant should not now be permitted to timely file a late proof of claim.

**C.    Movant's Asserted Prepetition Claim is Outside the Scope of *Reading***

25.    Since Movant's asserted claim arose prepetition, it falls outside of the scope of *Reading Co. v. Brown*. In *Reading*, a trustee's alleged negligence led to a fire that damaged a non-debtor third party, who then asserted an administrative expense claim.  *Reading*, 391 U.S. at 473. The United States Supreme Court held, pursuant to the Bankruptcy Act (in effect then), that damages caused by the actions of a trustee operating a business in a chapter XI arrangement give

9

rise to "actual and necessary costs" of preserving the bankruptcy estate.  *Id.* at 479–83.  The

Supreme Court based its decision on the fact that, in a chapter XI case, the "business [is] operating

under a Chapter XI arrangement for the benefit of creditors" to increase their recovery, *id.* at 479,

and that, as the only purpose of continuing to operate the debtor was to increase prepetition

creditors' recoveries, it was only fair to give innocent third parties that "had an insolvent business

thrust upon [them] by operation of law" administrative priority. *Id.* at 478.

26.      *Reading* illustrates that, where a chapter 11 debtor operating a business postpetition

harms a person or entity—through negligence or violation of the law—with whom the debtor had

no prepetition relationship, an administrative expense claim may be owed.  The First Circuit

repeatedly has declined to apply *Reading* to postpetition conduct by debtors harming claimants

with respect to prepetition obligations.  *See Woburn Assocs. v. Kahn (In re Hemingway Transp.,

Inc.)*, 954 F.2d 1, 6–7 (1st Cir. 1992) (finding claim for attorney fees based on postpetition lawsuit

that was based on prepetition contract did not fall under *Reading* because "its prepetition genesis

ultimately distinguishes it from the postpetition losses accorded priority in *Reading* and

*Charlesbank*"); *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.),* 536 F.2d 950, 955

(1st Cir. 1976) ("It is only when the debtor-in-possession's actions themselves—that is, considered

apart from any obligation of the debtor—give rise to a legal liability that the claimant is entitled to

the priority of a cost and expense of administration."); *see also Abercrombie v. Hayden Corp. (In

re Abercrombie)*, 139 F.3d 755, 759 (9th Cir. 1998) (*Reading* exception is inapplicable where "the

source of the estate's obligation remains the prepetition fee provision" even where debtor's actions

continued postpetition).

27.      Here, Movant's asserted claim is based on the alleged illegal confiscation of

Movant's vehicle that occurred prepetition, and the subsequent actions were pursuant to the

10

administrative process specifically and exclusively enumerated as remedies for such confiscation

under the UFA. As a result, Movant's asserted claim has a "prepetition genesis" that takes it outside

the *Reading* doctrine.  *See In re Hemingway Transp.*, 954 F.2d at 7.

## CONCLUSION

28.     For the reasons set forth herein, the Oversight Board requests the Court deny the

Motion and the relief requested therein in their entirety.

Dated: June 18, 2020
       San Juan, Puerto Rico

Respectfully submitted,

*/s/ Brian S. Rosen*

Martin J. Bienenstock*
Brian S. Rosen*
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
        brosen@proskauer.com

* admitted *pro hac vice*

*Attorneys for the Financial Oversight and
Management Board and as representative of the
Commonwealth*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Co-Attorneys for the Financial Oversight and
Management Board and as representative of the
Commonwealth*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I filed this document electronically with the Clerk

of the Court using the CM/ECF System, which will send notification of such filing to all parties

of record and CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
