# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS & TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17- BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

      Plaintiff,

v.

AMBAC ASSURANCE CORPORATION,
ASSURED GUARANTY CORP., FINANCIAL
GUARANTY INSURANCE COMPANY, and U.S.
BANK TRUST NATIONAL ASSOCIATION, as
Trustee,

      Defendants.

Adv. Proc. No. 20-00003-LTS

PROMESA
Title III

---

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

      Plaintiff,

v.

AMBAC ASSURANCE CORPORATION,
ASSURED GUARANTY CORPORATION,
FINANCIAL GUARANTY INSURANCE
COMPANY, and THE BANK OF NEW YORK
MELLON, as Fiscal Agent,

      Defendants.

Adv. Proc. No. 20-00004-LTS

PROMESA
Title III

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO,

Plaintiff,

v.

AMBAC ASSURANCE CORPORATION,
ASSURED GUARANTY CORP., ASSURED
GUARANTY MUNICIPAL CORP., NATIONAL
PUBLIC FINANCE GUARANTEE
CORPORATION, FINANCIAL GUARANTY
INSURANCE COMPANY, PEAJE INVESTMENTS
LLC, and THE BANK OF NEW YORK MELLON,
as Fiscal Agent,

Defendants.

Adv. Proc. No. 20-00005-LTS
PROMESA

Title III

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY<br><br>and<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA AND PBA),<br><br>Plaintiffs,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent,<br><br>Defendants. | Adv. Proc. No. 20-00007-LTS<br><br>PROMESA<br>Title III |

**DECLARATION OF ROBERTO CÁMARA-FUERTES IN SUPPORT OF MONOLINES' URGENT MOTION TO CLARIFY REQUIREMENTS OF THE SEALED PROCEDURES ORDER AND THE AMENDED PROTECTIVE ORDER**

I, Roberto Cámara-Fuertes, hereby declare, pursuant to 28 U.S.C. § 1746:

1.      I am an attorney with the law firm Ferraiuoli LLC, counsel to Ambac Assurance Corporation ("Ambac") in the above-captioned proceedings (these "Proceedings").  I am admitted to practice before this Court in these Proceedings.

2.      I submit this declaration on behalf of Ambac, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company (collectively, the "Monolines") in support of the *Monolines' Urgent Motion to Clarify Requirements of the Sealed Procedures Order and the Amended Protective Order* (the "Urgent Motion").

3.      I am a resident of Puerto Rico, and duly authorized to practice law in this jurisdiction, which I have done uninterruptedly for almost twenty (20) years.  In the course of my career as an attorney, I have handled hundreds of requests for access to public information under Puerto Rico's public records law.

4.      In my experience, in some cases, public documents produced in response to such requests are redacted based on assertions of attorney client privilege, work product privilege, deliberative process privilege, and/or inter-agency communications privilege.

5.      In my experience across hundreds of public records requests, I have never encountered an instance in which an ink signature of a government employee (at any level within the government) has been redacted.

6.      Additionally, in my experience, materials produced in response to public records requests can be (and often are) widely disseminated, often online, and can receive significant scrutiny.  For instance, in 2019 the Center for Investigative Journalism sued the Commonwealth for access to documents regarding the implementation of measures to comply with the fiscal plans.

The documents obtained were published online. *Rosselló Administration Delayed in Restructuring Puerto Rico Government*, CENTRO DE PERIODISMO INVESTIGATIVO (May 28, 2019).

7.     The signatures that AAFAF has redacted from the public docket and that were filed under seal were reviewed at my direction.   This review revealed that numerous signatures of individuals whose signatures were redacted and filed under seal, pursuant to AAFAF's confidentiality designations and sealing requests, are in fact readily available online (in the vast majority of cases, the signatures are available on public web sites controlled by the Commonwealth or one of its instrumentalities).   Among others, I identified publicly available signatures online for the following individuals:

| Name | ECF Nos. Where Signature Is Redacted | Public Signature Available |
|---|---|---|
| Francisco Peña Montañez | ECF No. 13229-1, at PDF p. 6. | Yes, on Commonwealth-controlled web site (Puerto Rico Treasury Department) |
| Samuel Sierra Rivera | ECF No. 13315-3, at PDF p. 2; ECF No. 13315-18, at PDF pp. 2, 6, 32, 35. | Yes, on Commonwealth-controlled web site (Puerto Rico Department of State) |
| José Guillermo Dávila | ECF No. 13315-24, at PDF p. 6. | Yes, on Commonwealth-controlled web site (Puerto Rico Office of Management and Budget) |
| Ana García Noya | ECF No. 13384-6, at PDF pp. 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27; ECF No. 13384-9, at PDF p. 4; ECF No. 13384-10 at PDF p. 3, 5, 7, 9, 11, 13, 15, 17; ECF No. 13384-11 at PDF pp. 3, 5, 12, 15; ECF No. 13384-12, at PDF p. 5; ECF No. 13384-14, at PDF pp. 2-3; ECF No. 13384-17, at PDF pp. 2, 4, 8, 10, 12, 14, 16, 18, 20, 24, 26, 28, 30, 32, 34-38. | Yes, on Commonwealth-controlled web site (Puerto Rico Government Transition Law:   Comptroller's Office Audit of Department of Labor and Human Resources) |
| José R. Pérez Torrellas | ECF No. 13384-11, at PDF pp. 13-14; 13384-16, at PDF | Yes, on Commonwealth-controlled web site (Puerto |

| | | |
|---|---|---|
| | p. 18. | Rico Government Transition Law: Manual of Administrative and Operational Systems and Procedures-Highway and Transportation Authority) |
| Angela Soto Toro | ECF No. 13384-13, at PDF p. 27. | Yes, on Commonwealth-controlled web site (Puerto Rico House of Representatives) |
| Javier E. Ramos Hernández | ECF No. 13384-18, at PDF pp. 2, 4, 22. | Yes, on Commonwealth-controlled web site (Puerto Rico Government Transition 2016-2017: Highway and Transportation Authority) |
| Yasmin M. Santiago Zayas | ECF No. 13384-18, at PDF pp. 6, 19-21. | Yes, on Commonwealth-controlled web site (Puerto Rico Department of State) |
| Miguel A. Torres Díaz | ECF No. 13384-18, at PDF pp. 6, 19. | Yes, on Commonwealth-controlled web site (Highway and Transportation Authority) |

8.      In addition, I determined that several signatures of Commonwealth employees that have not yet been filed, but for which AAFAF has declined to remove confidentiality designations, are similarly available online.

9.      I am unaware of any factual basis for suggesting that making signatures public would be detrimental to the Commonwealth's official functions.  Such a contention is belied by the fact that, under Puerto Rico law and court rules, public documents, such as trial and appellate court filings, must be signed.[2]  In my experience, such filings often include ink signatures of the parties and/or counsel on the public docket, including cases in which Commonwealth employees' signatures have been filed publicly.  I am unaware of any instance in which the public filing of signatures has led to identity theft.

---

[2] For example, see Rule 9.1 of the Commonwealth's Rules of Civil Procedure, 32 L.P.R.A. Ap. V, R. 9.1.

10.     Attached hereto as **<u>Exhibit 1</u>** is a true and correct copy of e-mail correspondence between the Monolines and AAFAF memorializing the parties' meet-and-confer regarding confidentiality designations.

11.     Attached hereto as **<u>Exhibit 2</u>** is a true and correct copy of a certified translation of Law No. 141 of Aug. 1, 2019, *Transparency Law and Expedited Procedure for Access to Public Information* ("<u>Act 141</u>"), Art. 3.

I declare, under penalty of perjury, that the foregoing statements are true and correct.

Executed:       San Juan, Puerto Rico
                June 30, 2020


                                        By: */s/ Roberto Cámara-Fuertes*
                                        Roberto A. Cámara-Fuertes

- 4 -

# **EXHIBIT 1**

**Testani, Lou**

| | |
|---|---|
| **From:** | Pavel, Ashley <apavel@omm.com> |
| **Sent:** | Monday, June 29, 2020 1:41 PM |
| **To:** | Hughes, John; McKeen, Elizabeth L.; Mervis, Michael T.; Munkittrick, David A. |
| **Cc:** | Berezin, Robert; Natbony, Bill; Servais, Casey; Hall, Jaclyn; Sosland, Martin; Jason Callen; Langley, Adam; Miller, Atara; Mainland, Grant; Ohring, Jonathan; Friedman, Peter; Roth, Joseph L. |
| **Subject:** | [EXT] RE: Follow Up re Confi Issue for SJ Filing |

Thank you John.  We agree that the parties are at an impasse regarding the confidentiality of signatures and employee non-work contact information.  As we have discussed, AAFAF will not waive confidentiality.  Judge Dein has already agreed that redaction of signatures and non-work contact information is appropriate for the reasons stated in her June 2, 2020 order and AAFAF's brief in support of sealed treatment.

In addition, as I noted on our call, employee signatures appear principally in account opening materials and other documents authorizing financial transactions. The government's interest in avoiding widespread dissemination of the wet-ink signature as a fraud-protection measure is especially important under these circumstances.  Moreover, the signatures are of no relevance to the revenue bond litigation and there is no public interest in their widespread dissemination—the accountability issues you raised, which AAFAF disputes, could conceivably apply to the identity of the employee, but not to the form of his or her signature.

The monolines' opposition to redaction is not based in the substance of the issues before the Court (indeed they did not object to AAFAF's sealed treatment request in the lift-stay litigation), but rather upon their desire to avoid the procedural inconvenience of filing documents under seal.  Accordingly, AAFAF believes that the most efficient solution would be to seek an order from the Court allowing redactions of non-work contact information and signatures on future submissions without leave of court for the reasons stated in the June 2, 2020 order.   AAFAF will consent to that request, but will oppose any attempt to re-litigate the merits of the confidentiality designations requested in AAFAF's unopposed brief in support of sealed treatment and approved in the Court's June 2, 2020 order.

Best,
Ashley

---

**From:** Hughes, John <JHughes2@milbank.com>
**Sent:** Friday, June 26, 2020 8:20 AM
**To:** Pavel, Ashley <apavel@omm.com>; McKeen, Elizabeth L. <emckeen@omm.com>; Mervis, Michael T. <MMervis@proskauer.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Natbony, Bill <Bill.Natbony@cwt.com>; Servais, Casey <Casey.Servais@cwt.com>; Hall, Jaclyn <Jaclyn.Hall@cwt.com>; Sosland, Martin <martin.sosland@butlersnow.com>; Jason Callen <Jason.Callen@butlersnow.com>; Langley, Adam <Adam.Langley@butlersnow.com>; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Ohring, Jonathan <JOhring@milbank.com>; Friedman, Peter <pfriedman@omm.com>; Roth, Joseph L. <joeroth@omm.com>
**Subject:** RE: Follow Up re Confi Issue for SJ Filing

[EXTERNAL MESSAGE]

Ashley,

Thank you for speaking with me yesterday regarding the confidentiality dispute.  Here is a summary of what we discussed and the follow-up request we had on which you're going to check AAFAF's position:

**Scope of Dispute.**  AAFAF's email referred to two kinds of non-Rule 9037 redactions—employee signatures and employee non-work contact information—but the specific documents at issue here do not appear to contain any non-work contact information, only signatures.  You confirmed that your email was intended to set out the categories of redactions AAFAF is seeking with respect to the discovery generally, and that only employee signatures are at issue in the specific documents that we are discussing.

**Requirements of Protective Order.**  We discussed AAFAF's position on whether employee signatures qualify as confidential under paragraph 2 of the protective order:

- **Document "has not generally been made available to the public."**  The monolines noted that employees signatures do not qualify for confidentiality protection because they are publicly available when documents are produced pursuant to the Commonwealth's public records law.  AAFAF did not disagree that documents with employee signatures are available under the public records law but noted that AAFAF believes that there is a distinction between documents being available in response to a public records request and documents being filed on ECF in this high-profile litigation.  The monolines' view is that the mere fact that otherwise publicly available information will receive greater public scrutiny because it is filed in a high-profile court proceeding is generally not a basis for redaction or sealing; I understand AAFAF disagrees.
- **Production "would be detrimental to the conduct of the Producing Party's business or official functions."**  AAFAF's basis for asserting this requirement is satisfied are the concerns about employee identity theft, as articulated in AAFAF's prior submission to the court requesting such sealing.  You indicated that you're not aware of any case in which the public filing of documents with signatures has resulted in identity theft, in the Commonwealth or elsewhere.  AAFAF's position is also that there is no public interest in seeing the employee signatures; the monolines disagreed, noting that the signatures of Commonwealth employees on official documents prepared in the course of their duties promote political accountability and public understanding of the specific Commonwealth officials and employees responsible for handling and signing off on transactions involving governmental funds.

**Alternative Proposal.**  AAFAF's interpretation of the court's orders is that filing new documents with redactions of signatures (or employee non-work contact information) requires a separate motion for each such filing.  I asked if AAFAF would object to the monolines seeking alternative relief in the form of a modification to the court's order to permit redactions without leave of the court, if there will be no corresponding sealed version (*e.g.*, because the redacted portion of the document is not material to the point for which the document is cited in the litigation).  You agreed to check and confirm that AAFAF would not object to this alternative or fallback proposal.  I'd be grateful if you can get back to us by Monday on that.

**Impasse.**  The parties agreed that we are at an impasse on the request to remove the confidentiality designations on non-Rule 9037 redactions, and the meet-and-confer process is concluded with respect to that issue (subject to receiving AAFAF's position on the alternative proposal discussed above).

Best,
John

John J. Hughes, III | Milbank | Special Counsel
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5127 | M: +1 917.520.7190
jhughes2@milbank.com | milbank.com

**From:** Hughes, John
**Sent:** Thursday, June 25, 2020 4:51 PM
**To:** 'Pavel, Ashley' <apavel@omm.com>; McKeen, Elizabeth L. <emckeen@omm.com>; Mervis, Michael T. <MMervis@proskauer.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>

**Cc:** Berezin, Robert <robert.berezin@weil.com>; Natbony, Bill <Bill.Natbony@cwt.com>; Servais, Casey <Casey.Servais@cwt.com>; Hall, Jaclyn <Jaclyn.Hall@cwt.com>; Sosland, Martin <martin.sosland@butlersnow.com>; Jason Callen <Jason.Callen@butlersnow.com>; Langley, Adam <Adam.Langley@butlersnow.com>; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Ohring, Jonathan <JOhring@milbank.com>; Friedman, Peter <pfriedman@omm.com>; Roth, Joseph L. <joeroth@omm.com>
**Subject:** RE: Follow Up re Confi Issue for SJ Filing

Ashley,

Thank you for your response.  Can you advise regarding your availability for a meet-and-confer today or tomorrow.

Thanks,
John

John J. Hughes, III | Milbank | Special Counsel
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5127 | M: +1 917.520.7190
jhughes2@milbank.com | milbank.com

---

**From:** Pavel, Ashley <apavel@omm.com>
**Sent:** Thursday, June 25, 2020 12:39 PM
**To:** Hughes, John <JHughes2@milbank.com>; McKeen, Elizabeth L. <emckeen@omm.com>; Mervis, Michael T. <MMervis@proskauer.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Natbony, Bill <Bill.Natbony@cwt.com>; Servais, Casey <Casey.Servais@cwt.com>; Hall, Jaclyn <Jaclyn.Hall@cwt.com>; Sosland, Martin <martin.sosland@butlersnow.com>; Jason Callen <Jason.Callen@butlersnow.com>; Langley, Adam <Adam.Langley@butlersnow.com>; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Ohring, Jonathan <JOhring@milbank.com>; Friedman, Peter <pfriedman@omm.com>; Roth, Joseph L. <joeroth@omm.com>
**Subject:** [EXT] RE: Follow Up re Confi Issue for SJ Filing

John-

AAFAF consents to public filing of the documents, provided that the monolines redact from the publicly filed versions (1) financial account numbers, taxpayer-identification numbers, and social security numbers, except for the last four digits as required by Fed. R. Bankr. P. 9037(a); and (2) employee non-work contact information and employee signatures.

While I understand from our conversation on Friday and your email below that the monolines would prefer avoid sealed filings, Judge Dein has already approved the redaction criteria AAFAF asserts here:

> With respect to the remaining Confidential Filings, AAFAF requests that they be publicly filed with reductions of 'financial account numbers, taxpayer-identification numbers, and social security numbers (for each, except for the last four digits), consistent with Federal Rule of Bankruptcy Procedure 9037(a), and that employee non-work contact information and employee signatures be redacted as well . . . to protect government personnel from the risk of forgery, identify theft, or invasion of privacy that could result from the widespread dissemination of their signatures or non-work contact information.' (AAFAF Response ¶ 6). The Court agrees and hereby directs movants to re-file the following Confidential Filings with financial account numbers, taxpayer-identification numbers, and social security numbers (for each, except for the last four digits), and employee non-work contact information and employee signatures redacted

*See* ECF No. 13351 at 4-5.

AAFAF will not waive these court-approved confidentiality assertions simply because they involve additional procedural requirements for the monolines to follow.


Best,
Ashley

---

**From:** Hughes, John <JHughes2@milbank.com>
**Sent:** Wednesday, June 24, 2020 8:14 PM
**To:** Pavel, Ashley <apavel@omm.com>; McKeen, Elizabeth L. <emckeen@omm.com>; Mervis, Michael T. <MMervis@proskauer.com>; Munkittrick, David A. <DMunkittrick@proskauer.com>
**Cc:** Berezin, Robert <robert.berezin@weil.com>; Natbony, Bill <Bill.Natbony@cwt.com>; Servais, Casey <Casey.Servais@cwt.com>; Hall, Jaclyn <Jaclyn.Hall@cwt.com>; Sosland, Martin <martin.sosland@butlersnow.com>; Jason Callen <Jason.Callen@butlersnow.com>; Langley, Adam <Adam.Langley@butlersnow.com>; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Ohring, Jonathan <JOhring@milbank.com>
**Subject:** RE: Follow Up re Confi Issue for SJ Filing


<span style="color:red">[EXTERNAL MESSAGE]</span>

Ashley,

Do you have time to touch base tomorrow regarding the request below?  While I recognize that we have additional time before the summary judgment briefs go in, we nevertheless would like to get the confi issues out of the way, and we have a meet-and-confer deadline tomorrow pursuant to the Amended Protective Order.  Please let me know if there's a time when you're free to touch base and I can give you a call.

I'm also sending along three additional de-designation requests, listed below.

Best,
John

**Confidential Documents – Not Previously Filed**
- CCDA bond documents, CCDA_STAY0002233 through CCDA_STAY0003968
- Statement for FirstBank Account -3961, dated March 31, 2018, CCDA_STAY0000772-CCDA_STAY0000784
- Statement for Banco Popular Account No. -9458, dated March 31, 2018, CW_STAY0008494

John J. Hughes, III | Milbank | Special Counsel
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5127 | M: +1 917.520.7190
jhughes2@milbank.com | milbank.com

---

**From:** Hughes, John
**Sent:** Saturday, June 20, 2020 10:29 AM
**To:** 'Pavel, Ashley' <apavel@omm.com>; 'emckeen@omm.com' <emckeen@omm.com>; 'Mervis, Michael T.' <MMervis@proskauer.com>; 'Munkittrick, David A.' <DMunkittrick@proskauer.com>
**Cc:** 'Berezin, Robert' <robert.berezin@weil.com>; 'Natbony, Bill' <Bill.Natbony@cwt.com>; 'Servais, Casey' <Casey.Servais@cwt.com>; 'Hall, Jaclyn' <Jaclyn.Hall@cwt.com>; 'Sosland, Martin' <martin.sosland@butlersnow.com>; 'Jason Callen' <Jason.Callen@butlersnow.com>; 'Langley, Adam' <Adam.Langley@butlersnow.com>; Miller, Atara <AMiller@milbank.com>; Mainland, Grant <GMainland@milbank.com>; Ohring, Jonathan <JOhring@milbank.com>
**Subject:** Follow Up re Confi Issue for SJ Filing

Ashley,

By way of follow up on our call yesterday, I'm writing, pursuant to paragraph 17 of the Amended Protective Order (ECF No. 13,461), to request that AAFAF remove the confidentiality designation on certain documents listed below (except for information protected under Federal Rule of Bankruptcy Procedure 9037).  These are two lists:  (1) documents that previously have been filed publicly but that have non-Rule 9037 redactions (specifically, redactions of ink signatures), (2) documents that were not previously part of the lift stay record but may be cited in our summary judgment oppositions.

With respect to documents on the first list, we are asking that redactions not allowed under Rule 9037 (specifically, the ink signatures) be de-designated.  The reason for this request is that the recently entered *Joint Standing Order on Sealing and Redacting* (ECF No. 13,396) requires parties to file a separate motion in order "to file a document under seal *or with redactions*, other than permissible redactions specified in Fed. R. Bankr. P. 9037."  (Emphasis added.)  The Lift Stay Movants would like to avoid the need to file sealing motions going forward, solely for the purpose of redacting ink signatures (which are not covered under Rule 9037).

We understand that the government has raised concerns about "protect[ing] government personnel from the risk of forgery, identify theft, or invasion of privacy."  (ECF No. 13,173.)  As we discussed, in many cases, lawyers and judges file stipulations, correspondence, and other papers on the public docket with ink signatures.  The ECF rules in the Southern District of New York specifically require ink signatures on litigation documents from parties and witnesses (in our experience, such ink signatures are routinely filed on the public docket).  *See* ECF Rules & Instructions ¶¶ 8.4, 8.5 13.15, *available at* https://www.nysd.uscourts.gov/sites/default/files/pdf/ecf_rules/ECF%20Rules%204020120%20-%20COVID%20v2.pdf.  We also read the Court's recent order on sealing issues as suggesting that Rule 9037 should be the parties' guiding principle in determining what redactions may be made routinely as a matter of course.  Separate and apart from the Court's order, we think Rule 9037 strikes an appropriate balance between the need for public access and protecting truly sensitive information that could present legitimate identity theft concerns (such as Social Security numbers and account numbers).

Please let us know if AAFAF can agree to this request.  If it's unable to agree to this, please let us know your availability for a meet-and-confer next week.

Best,
John

\*               \*               \*

**Documents with Redactions Not Permitted Under Rule 9037**
- Documents reflecting Treasury's receipt of Rum Tax Remittances (with Certified English Translation), PRIFA_STAY0001065 (ECF No. 13311-14)
- Transmittal information of Rum Tax Remittance from the Lockbox Bank to Treasury, PRIFA_STAY0001515 (ECF No. 13311-16)
- "Comprobante de Remesa" (Proof of Remittance) (with Certified English Translation), PRIFA_STAY0001572 (ECF No. 13161-1)
- Transmittal information of Rum Tax Remittance from Lockbox Bank to Treasury, PRIFA_STAY0001344 (ECF No. 13229-1)
- GDB -9758 Transmittal Authorization Document, CCDA_STAY0004005 (ECF No. 13315-3)
- GDB -9758 Account Opening Documents, CCDA_STAY0006780-6786 (ECF No. 13315-24)
- GDB -9758 Transmittal Authorization Document, CCDA_STAY0004297 (ECF No. 13315-18)
- Treasury letter to HTA's auditors (with Certified English Translation), HTA_STAY0028471 (ECF No. 13384-5)
- Transfer Authorizations dated January-March 2015 (with Certified English Translation), HTA_STAY0000467 (ECF No. 13384-6)
- Transfer Authorizations dated June 2015, (with Certified English Translation), HTA_STAY0000513 (ECF No. 13384-9)

- Transfer Authorizations dated May-June 2015 (with Certified English Translation), HTA_STAY0000516 (ECF No. 13384-10)
- Transfer Authorizations dated July-October 2015 (with Certified English Translation), HTA_STAY0000532 (ECF No. 13384-11)
- Transfer Authorizations dated July-August 2015 (with Certified English Translation), HTA_STAY0000546 (ECF No. 13384-12)
- Transfer Authorizations dated January-June 2015 (with Certified English Translation), HTA_STAY0000556 (ECF No. 13384-13)
- Transfer Authorizations dated December 2015-March 2016, (with Certified English Translation), HTA_STAY0000603 (ECF No. 13384-14)
- Transfer Authorizations dated June 2015-December 2016 (with Certified English Translation), HTA_STAY0000628 (ECF No. 13384-16)
- Transfer Authorizations dated November 2014-July 2016 (with Certified English Translation), HTA_STAY0007985 (ECF No. 13384-17)
- Letter signed by Assistant Executive Director for HTA dated December 4, 2014 (with Certified English Translation), HTA_STAY0028880 (ECF No. 13384-18)
- Transfer Activity Report dated May 2, 2016, HTA_STAY0001027 (ECF No. 13384-20)

**Confidential Documents – Not Previously Filed & Need to be De-Designated**
- January 2020 FirstBank -3961 Account Statement, CCDA_STAY0013934-0013035
- Scotiabank -5142 July 2016 Account Statement, CCDA_STAY0000679-CCDA_STAY0000684
- BPPR -2306 September 2016 Account Statement, CCDA_STAY0000646- CCDA_STAY0000647
- BPPR -2306 April 2017 Account Statement, CCDA_STAY0000675-CCDA_STAY0000676
- BPPR -2306 January 2020 Account Statement, CCDA_STAY0007384-CCDA_STAY0007387
- Scotiabank -5138 May 2017 Account Statement, CCDA_STAY0009770-CCDA_STAY0009871
- Oriental Bank -5138 January 2020 Account Statement, CCDA_STAY0012669-CCDA_STAY0012741
- BPPR -9458 September 2018 Account Statement, CW_STAY0008656-CW_STAY0008714
- BPPR -9458 February 2018 Account Statement, CW_STAY0032171-CW_STAY0032268
- FirstBank -2984 April 2019 Account Statement, CCDA_STAY0007470-CCDA_STAY0007471
- FirstBank -2984 February 2020 Account Statement, CCDA_STAY0014185-CCDA_STAY0014188
- Scotiabank -5144 December 2019 Account Statement, CCDA_STAY0006757-CCDA_STAY0006763
- Oriental Bank -5144 February 2020 Account Statement, CCDA_STAY0006772-CCDA_STAY0006779
- GDB -9758 January 2015 Account Statement, CCDA_STAY0001694 – CCDA_STAY0001695
- GDB -9947 January 2015 Account Statement, CCDA_STAY0007396
- GDB -9758 August 2015 Account Statement, CCDA_STAY0000006-09
- GDB -9758 April 2015 Account Statement, CCDA_STAY0001700-01
- FirstBank -3961 March 2018 Account Statement, CCDA_STAY0013958- CCDA_STAY0013960
- Resolution of Committee to the Puerto Rico Tourism Company (Resolution 2018-01), CCDA_STAY0001185 - CCDA_STAY0001187.
- August 2014 GDB -0006 Account statement, CW_STAY0032678
- December 18, 2014 exemplar transfer orders, PRIFA_STAY0003472

John J. Hughes, III | Milbank | Special Counsel
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5127 | M: +1 917.520.7190
jhughes2@milbank.com | milbank.com

============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that

any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


============================================================

This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

# **EXHIBIT 2**

[CERTIFIED TRANSLATION]

## "*Transparency and Expedited Procedure for Access to Public Information Act*"

### Act No. 141 of August 1, 2019

To adopt the "Transparency and Expedited Procedure for Access to Public Information Act," in order to establish a public policy on access to public information; to order, organize and establish simple, speedy and inexpensive procedural mechanisms that grant actual access to public information and documents; to establish principles and instruments to guarantee such access; to order Information Officers to be designated in every government entity; and for other related purposes.

### STATEMENT OF PURPOSE

In the context of federal agencies, the Freedom of Information Act (FOIA), 5 United States Code § 552, acknowledges the right of citizens to access information and establishes time frames for the Government to reply to requests for public information. However, in Puerto Rico this right is of a constitutional nature, falling under the right of freedom of speech. At present, we do not have state regulations that establish a uniform procedure to obtain public information that is generated or kept by government entities. This is despite the fact that the Supreme Court of Puerto Rico has repeatedly acknowledged the right of access to public information as a necessary corollary to the rights of freedom of speech, press and association, which are explicitly promulgated by Article II § 4 of the Constitution of Puerto Rico and the First Amendment of the Constitution of the United States of America. The underlying premise between access to public information and the right to freedom of speech is that if citizens are not properly informed about how public administration is conducted, then their freedom to express, by voting, or otherwise, their satisfaction or dissatisfaction with the individuals, rules and processes governing them will be restricted. Ortiz v. Bauermeister, 152 D.P.R. 161 (2000). "This intrinsically entails guaranteeing and facilitating to every citizen of our country the right to examine the contents of files, reports and documents compiled as part of the government's administration and kept at State agencies." Id, page 175.

In Puerto Rico, both citizens and the media, when requesting public information, are subject to discretional court processes, which are expensive and can take months. Even though this right is laid down in the Constitution, since there is no procedural mechanism to exercise it, the right is often violated. Regulating rights that are laid down in the Constitution through laws is normal and often imperative. For example, the Constitution of Puerto Rico acknowledges the right to unionize in the private sector and in public corporations and various state laws regulate the right, in order for workers to be able to exercise it, which avoids leaving this at the discretion of the employer. The same occurs with other rights, such as free public education, fair compensation, the right to a speedy trial, bail, among others. In relation to access to public information, it is vital to understand

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

that the lack of a mechanism to eliminate the excessive discretion that the Government and judges have today will not foster transparency in public administration.

In view of the foregoing, there is no doubt that in Puerto Rico, there is a right of access to public information as a corollary to the right of freedom of speech. Such right of access to public information, however, depends on whether the information being requested is really public. To that effect, Article 1(b) of the Puerto Rico Public Document Act, provides that the following shall be deemed public:

"[a]ny document originated, preserved or received in any office of the Commonwealth of Puerto Rico, in accordance with the law, or in relation to the management of public affairs, and which, in accordance with the provisions of section 1002 of this title is permanently or temporarily preserved as evidence of transactions or for its legal value. This shall also include documents that are produced electronically and meet the requirements established by laws and regulations."

Precisely, the Supreme Court held that "in order to acknowledge the right of access to public information, what is requested must necessarily qualify to be classified as a public document." Acevedo Hernández, Ex parte, 191 DPR 410 (2014). If a document falls within one of the categories cited in the definition above, it is considered to be of a public nature. Therefore, any citizen has the right to access it. Nevertheless, our Supreme Court has established that this right is not absolute and must be overridden in cases of imperative public interest. López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987); Soto v. Secretario de Justicia, 112 D.P.R. 477 (1982). In keeping with this, the Supreme Court has acknowledged situations in which the state can -validly- claim confidentiality in relation to documents or information, namely: "(1) when it is so declared by law; (2) when the communication is protected by an evidentiary privilege; (3) when disclosing the information can harm the fundamental rights of third parties; (4) when the document or information deals with the identity of an informer, Rule 32 of Evidence and; (5) when it involves official information" pursuant to Rule 514 of Evidence. Santiago v. Bobb y El Mundo, Inc., 117 DPR 153 (1986); Angueira Navarro v. Junta de Libertad Bajo Palabra, 150 DPR 10 (2000).

However, when we are not dealing with one of the aforementioned exceptional circumstances, the State cannot capriciously refuse to grant access to information that is in the hands of the Government. Ortiz v. Bauemeister, supra; Silva Iglesia v. Panel sobre el FEI, 137 D.P.R. 821 (1995); López Vives v. Policía de Puerto Rico, supra. "Therefore, such refusal must be well supported and justified. Under such circumstances, it would be legitimate for the State to restrict a citizen's access to a document of a public nature." Colón Cabrera v. Caribbean Petroleum, 170 D.P.R. 582 (2007).

Moreover, the Supreme Court of Puerto Rico has acknowledged that a petition for writ of mandamus is the current mechanism available to petition a Court to order the disclosure, inspection and reproduction of a public document. A petition for writ of mandamus has been the appropriate appeal mechanism to compel compliance with any duty, as is the case when access to public information is requested. Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1960). Nevertheless, such appeal process has turned out to be a long and expensive process, despite the claimant's right to turn directly to the court to claim his right. See, Ortiz v. Panel sobre el FEI, 155 D.P.R. 219 (2001). Some of the determining factors for issuing a writ of mandamus are: 1) the potential impact that the writ may have on the public interests involved; 2) the avoidance of wrongful interference with proceedings of the Executive Power; and 3) that the action not be

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

confusable or harmful to the rights of third parties. See, <u>Noriega v. Hernández Colón,</u> 135 D.P.R. 406 (1994).

Thus, it is clear that since the beginning of the eighties, the Supreme Court of Puerto Rico has unequivocally acknowledged that the right of access to public information is a fundamental constitutional right. This right is based on the democratic principle that citizens must be informed, oversee and express their opinion on the actions of the State. In other words, the right of access to information is the right that gives citizens the power to demand that the government account for its actions, which is essential in achieving greater government transparency. In order for citizens to exercise this right fully, the Government of Puerto Rico has the obligation to establish clear, inexpensive, simple and expedited rules and procedures to access public information. Furthermore, it is very important for the rules governing public information to be based on the principle of transparency in government administration.

As part of the Plan for Puerto Rico, we undertook to guarantee and promote transparency in government administration and to regulate the fundamental right of access to public information in the Government of Puerto Rico. The objective of this Act is to comply with the aforementioned commitment; to foster an unequivocal culture of open Government action; to establish a proactive policy on the Government's duty to account for its actions; to discourage acts of corruption or against ethics; to promote citizen involvement and establish clear, speedy and inexpensive rules and principles for citizens to fully exercise their right of access to public information. As we implement these rules, we intend to also achieve much-needed uniformity in all government entities, which include the Legislative Branch, the Judicial Branch and the Executive Branch, as well as all the government entities, public corporations and municipalities. Citizens need to regain confidence and deserve a transparent, responsible government that oversees its processes. The People of Puerto Rico need to receive clear and reliable information and to remain well-informed of the decisions made, as these affect the development of communities and the future of Puerto Rican families.

Many governments have promised transparency, but have never been bound to ensure this. That is one of the factors that has contributed to the deterioration of the people's trust in their government, as the government has become a complex, bureaucratic structure that lacks transparency in its decisions. Thus, for this administration, it is very important to establish, as a public policy that has the force of law, a process to guarantee the adequate exercise of this constitutional right of access to information, so that all public officers understand that it is an obligation of the Government to inform and educate people about the principle and practice of government transparency. In order to implement the aforementioned public policy, all government entities shall designate, among their staff, Information Officers, who shall be in charge of producing the public information requested in an expedited manner for same to be inspected, reproduced, or both, as requested. These Information Officers shall be trained about the scope of this Act and case law established by our Supreme Court with regard to access to public information.

Likewise, the processes established for requesting information shall be rigid for compliance purposes. The public information must be delivered as quickly as possible and immediately if it exists. Any denial of this right shall require a legal explanation and a speedy

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

process, free of charge, before a court, to question such action on the part of the government. Courts shall also resolve these disputes in a speedy manner.

Our Government wishes to implement an access to public information that is characterized by simple, speedy, inexpensive and expedited procedures that foster transparency. In doing so, we promote the rendering of accounts, citizen participation and controls in government administration. It is important that there be an environment of respect, transparency and effective communication between the government and citizens. Maintaining order is important and government transparency is even more important. Citizens have the right to know how the Government handles public funds and how the Government makes decisions that will affect the future of Puerto Rico and its people.

*To be decreed by the Legislative Assembly of Puerto Rico:*

### Article 1. — Name

This Act shall be known as the "Transparency and Expedited Procedure for Access to Public Information Act."

### Article 2. — Applicability

The provisions of this Act are applicable to the Government of Puerto Rico, that is, the Legislative Branch, the Judicial Branch and the Executive Branch, including all of the government entities, public corporations and municipalities. These also apply to third parties who are custodians of public documents or information.

### Article 3. — Public Policy

The following is established as the public policy of the Government of Puerto Rico:
1)    Information and documentation produced by the Government are assumed to be public and equally accessible to all.
2)    Information and documentation produced by the Government of Puerto Rico as part of its studies, transactions and exercise of public authority, either directly or by delegation, are part of the heritage and memory of the people of Puerto Rico.
3)    The constitutional right of access to information requires government transparency.
4)    Any information or document originated, preserved or received in an office of the Government, even if it is in the custody of a third party, is presumed to be public and must be accessible to the People and the press.
5)    The right of access to public information is a constitutional pillar and a fundamental human right.
6)    Access to public information and documentation must be speedy, inexpensive and expedited.
7)    Every person has the right to obtain public information and documentation, subject to applicable rules and exceptions.

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

8)     The Government of Puerto Rico hereby establishes a policy that will ensure that its information and documentation will be open, which shall include the availability of technology and the necessary advances to guarantee that individuals who request such information or documentation will be able to access same in a timely, objective, real, complete, reusable and processable manner that is available in accessible, unaltered and complete formats.

## Article 4. — Routine Disclosure of Information

The Government of Puerto Rico shall facilitate access to public information and shall routinely disclose, through its official websites and other means of communication, information about its operations, actions and results of its actions. Every government entity has the duty to disclose on its official website, in a periodic, proactive and updated manner, information about its operations, performance and control of delegated functions, as well as any and all public documentation generated by the entity routinely. Personnel files or any information of such nature shall not be public information.

In addition, the government shall establish adequate mechanisms to facilitate the accessibility, quality and reutilization of the information published electronically, as well as the identification and location thereof.

## Article 5. — Information Officers

Every government agency or entity constituting the Government of Puerto Rico shall, except for good cause, identify at least three (3) public servants who form part of their existing staff, of which two (2) shall be career employees. The employees identified shall be the ones designated and certified as Information Officers in each government entity. When the organizational structure, functional complexity or size of an entity requires a greater or lower number of Information Officers, this shall be justified in writing and notified to the Office of the Secretary of Public Affairs of the Office of the Governor, or a similar office, who shall then determine whether or not the request is well-founded. As to the Legislative Branch and the Judicial Branch, these must assign the personnel that they deem pertinent as Information Officers and establish the internal process that they deem pertinent to evaluate the number of Officers to be designated.

Information Officers shall be trained about the contents of this Act, regulations, applicable procedures and their legal obligations as the employees responsible for compliance with this Act. They shall also be trained about the case law established by the Supreme Court on the subject matter of access to public information. They shall share the responsibility of ensuring compliance with this Act with the officer in charge of the government entity.

Information Officers shall have the obligation to receive requests for information, process these and facilitate access to the documents in the requested format, within the time frames established hereunder. Information Officers shall register information requests in the order that they are received and number them. The number assigned shall be the reference number used in any process or procedure to review the request. These Officers shall also provide the necessary

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

assistance to any citizen who wishes to make a request for information.

Information Officers shall also be the central contact person in the government entity that are assigned to for purposes of receiving requests for information and providing assistance to individuals who request information. The foregoing shall by no means limit the option that citizens and the press have to ask other officers of an entity for information, including a government entity's Press Officer. The names and contact information of Information Officers shall be available on the official website of each and every corresponding government entity, the Office of Management and Budget (OMB) and La Fortaleza [Governor's Mansion]. These must also be available on paper at the integrated services centers located throughout Puerto Rico.

Information Officers shall submit monthly reports on the number of requests received, the type of information requested, and the status of the requests. The requester's personal information shall not be disclosed. These reports shall be made public on the website of every government entity.

## Article 6. — Requests

Any person may request public information by written or electronic request, without the need to certify any particular or legal interest. The Information Officer shall be responsible for notifying, by email, fax or regular mail, individuals who request public information or documentation that their request has been received, also providing the request identification number.

Information requests shall include at least one address or email address where the requester wishes to receive notifications, which format they wish to receive the information in, and a description of the information requested.

## Article 7. — Time Granted to Deliver, or Make Available, Public Information

Subject to the provisions of this Act, the Information Officers of a government entity shall produce public information for inspection, reproduction, or both, at the request of any person, within a period no greater than ten (10) business days. In the case of the Executive Branch, the Office at the central level of the government entity or agency shall comply with the aforementioned time frame. Nevertheless, if the request is made directly at the level of a regional office of the government entity or agency, the time granted to deliver the information shall not be greater than fifteen (15) business days. In this case, the Information Officer at the regional level shall, diligently and within a period no greater than forty-eight (48) hours, inform the central level by email of the request received in order to determine the process to be followed, as applicable. The period to deliver the information shall begin to run on the date when the requester sent his information request to the government entity, as shown in the email message, the postmark, or fax receipt. If the government entity does not answer within the established time, it shall be understood that the entity has denied the request, in which case the requesting party may then turn to the Court. This time frame can be extended for one single period of ten (10) business days, as long as the Information Officer informs the requesting party of such request for extension of time within the

initial term established and sets forth in the request the reason why he needs additional time to deliver the information or documentation requested.

Any decision to refuse to disclose public information must specify in writing the legal grounds for such refusal or denial to deliver the information within the established time.

Information Officers shall meet the parameters of this Act if, based on the preferences of the requesting party, they perform one of the following actions:

**a)** If they make the information available to the person requesting it at the offices of the government entity for inspection and reproduction;

**b)** If they send the information to the requesting party by email;

**c)** If they send a copy of the information by First Class mail, as long as, the requesting party is willing to pay for the stamps and other associated costs; or

**d)** If they provide to the requesting party an internet (URL) address of a website with instructions on how to access the information requested.

## Article 8. — Fees

As a general rule, the right of access to or inspection of public documents shall be permanent and free of charge. The issuance of noncertified and certified copies, recordings and reproductions shall be subject to the payment of reasonable fees and charges. The corresponding charges shall be established by regulations or administrative order. The payment of the direct costs of reproduction, the cost of sending the information by regular mail and the fees expressly authorized by law shall be deemed reasonable. Despite the foregoing, any person who demonstrates indigence, as regulated by regulation or administrative order, shall be exempted from the payment of fees or charges for such information request. In the Executive Branch, the Office of the Secretary for Public Affairs or similar office shall establish uniform guidelines on these administrative regulations that shall demand strict compliance with what is established in this Act, and may also establish a Code of Conduct to govern Information Officers in the performance of their duties. As to the Judicial Branch and Legislative Branch, these shall determine internally how they will create the uniform guidelines and Code of Conduct mentioned above.

The public information requested shall be delivered in the requested format through the means specified by the requesting party, as long as this does not entail a cost greater than delivery on paper or in the format that the government entity usually uses and does not jeopardize the completeness of the document. If the delivery of the requested information entails an extraordinary expense, the concerned government entity shall disclose same in the format that it has available or that costs less. The concerned government entity shall establish a way to certify effective delivery of the requested information.

## Article 9. — Special Appeal for Judicial Review by the Court of First Instance

Any person who is notified by a government entity of the decision not to deliver the information requested or to whom the entity has failed to deliver the information within the established term or extension thereof shall have the right to file, either pro se, or through legal counsel, with the Court of First Instance of the Judicial Region of San Juan, a Special Appeal on Access to Public Information.

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

For purposes of such appeals, the Judicial Branch shall create and have available to the public a simple format to fill out. Filing such an appeal shall not require the cancellation of stamps or fees. Furthermore, except in the event of duly supported, extraordinary circumstances, no citizen shall be required to hire an attorney in order to file such an appeal and no citizen may be prevented from processing his case pro se. It is recommended that the Supreme Court establish a process for the random selection of judges to hear these cases.

Government entities shall be notified of such appeals by the Court itself, at no cost. To that effect, the Clerk of the Court of First Instance where the appeal is filed shall issue a notification to the government entity that has informed the requesting party of the decision not to deliver the information or that has failed to deliver the information within the established deadline in order for the entity to appear in writing, advising the entity that its failure to appear shall be construed to mean that it has accepted the allegations made in the complaint and that the Court will issue the remedy sought, in accordance with this Act, without further summoning or hearing the entity.

The appeal in question shall be filed within the period of strict compliance of thirty (30) days, starting on the date when the government entity notified its decision not to deliver the information requested or the date when the period granted to do so expired, in the event that there was no answer.

A government entity notified of an appeal under this Act shall be bound to appear in writing within a period of ten (10) business days, except for good cause, in which case the period granted shall be no greater than five (5) business days of the date of the notification issued to that effect by the Clerk of the Court of First Instance. The Court shall have discretion to shorten the ten (10) day period established when it believes that there is good cause to do so in order to protect the interests of the requesting party.

The Court shall hold a hearing within three (3) business days of receiving an answer from the government entity if it believes that the particular circumstances of the case and the information requested so require.

The Court shall then decide on the dispute in writing through a resolution based on the law, granting or denying the request to produce public information within a period of ten (10) days of the date when the government entity issued its answer to the court or when the hearing was held, if one is held.

**Article 10. — Protection Against Retaliation**

Any person who reports a violation or attempt to evade compliance with the obligations established in this Act and who testifies in an administrative, legislative or judicial procedure shall have the broadest protection available in his workplace and against any form of retaliation, in the event that the person is the object of persecution or harassment of any nature on the part of the government or in the workplace. The provisions of this Article shall supplement any current provisions providing protection to informers, under our legal code, and shall not undermine the exercise thereof.

Any person who in any way retaliates, either by persecution or by harassment on the part of the government or in the workplace, against an informer or witness, in accordance with the provisions of this Article, shall be committing a felony and, if convicted, shall be subject to a fine

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

of five thousand (5,000) dollars or a term of imprisonment of three (3) years or both, at the discretion of the court. There shall be no statute of limitation on such offenses.

## Article 11. — Regulations

Every government entity of the Government of Puerto Rico shall amend or pass the necessary regulations, administrative orders or circular letters to ensure strict compliance with this Act.

## Article 12. — Interpretation Clause

The rights mentioned above shall not be interpreted restrictively or be construed to exclude other rights and procedures related to people who request public information that are not specifically mentioned here, such as the traditional petition for writ of mandamus.

This Act shall be interpreted in the most liberal and favorable manner for persons who request public information. In the event of conflict between the provisions of this Act and that of any other legislation, the one that is most favorable for parties requesting public information and documentation shall prevail.

## Article 13. — Transition Clause

The process that currently exists for citizens to request information in the Branches of Government shall remain in effect until the various Branches of Government take the pertinent actions to implement the processes established herein. The Branches of Government shall have a period of six (6) months to complete any and all necessary processes to comply with the provisions of this Act.

## Article 14. — Severability Clause

In the event that any clause, paragraph subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading or part of this Act is annulled or declared unconstitutional, the resolution, ruling or judgment issued to that effect shall not affect, undermine or invalidate the rest of this Act. The effect of such judgment shall be limited to the clause, paragraph subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading or part thereof that is so annulled or declared unconstitutional. If the application to a person or circumstance of any clause, paragraph subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading or part of this Act is invalidated or declared unconstitutional, the resolution, ruling or judgment issued to that effect shall not affect or invalidate the application of the rest of this Act to persons or circumstances where same can be validly applied. It is the express and unequivocal intent of the Legislative Assembly that the courts enforce the provisions and application of this Act to the greatest possible extent even if any part hereof is annulled, invalidated, affected or declared unconstitutional, or even if the application hereof to any particular person or circumstance is annulled, invalidated or

"Transparency and Expedited Procedure for Access to Public Information Act" [Act 141-2019]

declared unconstitutional. This Legislative Assembly would have passed this Act regardless of the determination of severability that the Court may make.

**Article 15. — Effective Period.** This Act shall take effect immediately once it is passed.

Note. This document was compiled by personnel of the **Office of Management and Budget** of the Government of Puerto Rico, as a means to inform people who use our Library of the latest amendments passed in relation to this Act. Although we have made our best efforts to prepare the foregoing, this is not an official compilation and may not be completely free of involuntary errors; which, once noted, are immediately corrected. All of the amendments made to the law are incorporated herein to facilitate consultation. For precision and accuracy, refer to the original texts of the Act and to the collection of Laws of Puerto Rico Annotated L.P.R.A. The annotations included in cursive or in brackets in the text do not form part of the Act. These are only included in cases where a law was repealed and superseded by another law that remains in effect. The internet links are only a link to government sources. Links to amending laws belong to the website of the **Office of Legislative Services** of the Legislative Assembly of Puerto Rico. Links to federal laws belong to the website of the **US Government Publishing Office GPO** of the United States of America. Links to Regulations and Executive Orders of the Governor belong to the website of the **Department of State** of the Government of Puerto Rico. Compiled by the Library of the Office of Management and Budget.

See also the **Original Version of this Act**, just as it was passed by the Legislature of Puerto Rico.

⇒⇒⇒ Verify in the Virtual Library of the OMB the **Last Copy Revised** (Rev.) for this compilation.

Go to: **www.ogp.pr.gov** ⇒ Virtual Library        ⇒ Reference Laws —PUBLIC DOCUMENTS.

CERTIFICATION OF TRANSLATION

I, Carol G. Terry, a US-Court-Certified-Interpreter, Certificate No. 03-001, and translator with an MA in Translation from the University of Puerto Rico, do hereby certify that, to the best of my knowledge and abilities, the foregoing TEN (10) PAGES are a true and correct translation of the original document in Spanish.

Carol G. Terry

## "Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública"

Ley Núm. 141 de 1 de agosto de 2019

Para adoptar la "Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública", a los fines de establecer una política pública de acceso a la información pública; ordenar, organizar y pautar mecanismos procesales sencillos, ágiles y económicos de acceso real a los documentos e información pública; consignar principios e instrumentos de garantía al acceso; ordenar la designación de Oficiales de Información en cada entidad gubernamental; y para otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

En el contexto de las agencias federales, el Freedom of Information Act (FOIA), 5 United States Code § 552, reconoce el derecho del ciudadano a la información y establece los términos que posee el Gobierno para responder a una solicitud de información pública. Sin embargo, en Puerto Rico dicho derecho es de estirpe constitucional como parte del derecho de libertad de expresión.  Actualmente, no contamos con una reglamentación estatal que establezca un procedimiento uniforme para obtener la información pública que se genera o custodia en las entidades gubernamentales. Ello, a pesar de que el Tribunal Supremo de Puerto Rico ha reconocido reiteradamente el derecho de acceso a información pública como corolario necesario de los derechos de libertad de expresión, prensa y asociación, que explícitamente promulga el Art. II § 4 de la Constitución de Puerto Rico y la Primera Enmienda de la Constitución de Estados Unidos de América.  La premisa que subyace la relación entre el acceso a la información pública y el derecho a la libertad de expresión es que, si el ciudadano no está debidamente informado sobre la forma en que se conduce la gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, reglas y procesos que le gobiernan. Ortiz v. Bauermeister, 152 D.P.R. 161 (2000). "Ello conlleva intrínsecamente asegurar y facilitar a todos los ciudadanos de nuestro país el derecho a examinar el contenido de los expedientes, informes y documentos que se recopilan en la gestión de gobierno y que constan en las agencias del Estado". Íd, pág. 175.

En Puerto Rico, la ciudadanía y los medios de prensa cuando solicitan información pública están sujetos a procesos discrecionales en los tribunales que son costosos y pueden tardar meses. A pesar de que el derecho está en la Constitución, al no existir un mecanismo procesal para ejercerlo, la violación del mismo ocurre en muchas ocasiones. La regulación mediante ley de los derechos consagrados en la Constitución es algo normal que muchas veces es imperativo. Por ejemplo, la Constitución de Puerto Rico reconoce un derecho a la sindicalización en el sector privado y corporaciones públicas y varias leyes estatales son las que regulan dicho derecho para que los trabajadores puedan ejercitarlo evitando la discreción del patrono. Igualmente ocurre con otros derechos como la educación pública gratuita, la justa compensación, el juicio rápido, la fianza, entre otros. En relación al acceso de información pública, es vital entender que la ausencia

de un mecanismo que quite la excesiva discreción que tiene hoy el Gobierno y los jueces no fomentará la transparencia de la gestión pública.

Conforme a lo anterior, no cabe duda que en Puerto Rico existe un derecho de acceso a información pública como corolario del derecho a la libertad de expresión. Ese derecho de acceso a información pública, sin embargo, depende de que lo que se solicite sea verdaderamente público. A esos efectos, el Artículo 1(b) de la "Ley de Documentos Públicos de Puerto Rico", dispone que será público:

"[t]odo documento que se origine, conserve, o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de asuntos públicos y que de conformidad con lo dispuesto en la sección 1002 de éste título se haga conservar permanentemente o temporalmente como prueba de las transacciones o por su valor legal.  Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos."

Precisamente, el Tribunal Supremo resolvió que "para poder reconocer el derecho de acceso a la información pública, es necesario que lo solicitado pueda clasificarse como un documento público". Acevedo Hernández, Ex parte, 191 DPR 410 (2014). Una vez un documento se ubica dentro de una de las categorías citadas en la definición, se considera de carácter público, por lo que cualquier ciudadano tiene derecho de acceso al mismo.  No obstante, nuestro Tribunal Supremo ha establecido que tal derecho no es absoluto y debe ceder en casos de imperativo interés público. López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987); Soto v. Secretario de Justicia, 112 D.P.R. 477 (1982).  A tono con ello, el Tribunal Supremo ha reconocido supuestos en los que el estado puede -válidamente- reclamar la confidencialidad de documentos o información, a saber:  "(1) cuando una ley así lo declara; (2) cuando la comunicación está protegida por alguno de los privilegios evidenciarios; (3) cuando revelar la información pueda lesionar derechos fundamentales de terceros; (4) cuando se trate de la identidad de un confidente, Regla 32 de Evidencia y; (5) cuando se trate de información oficial" conforme la Regla 514 de Evidencia. Santiago v. Bobb y El Mundo, Inc., 117 DPR 153 (1986); Angueira Navarro v. Junta de Libertad Bajo Palabra, 150 DPR 10 (2000).

Ahora bien, cuando no estamos ante una de las circunstancias excepcionales mencionadas, el Estado no puede negarse caprichosamente a permitir acceso a información en manos del Gobierno. Ortiz v. Bauemeister, supra;  Silva Iglesia v. Panel sobre el FEI, 137 D.P.R. 821 (1995); López Vives v. Policía de Puerto Rico, supra.  "Por tanto, dicha negativa debe estar fundamentada y justificada.  De darse estas circunstancias, el Estado estaría legitimado para restringir el acceso de los ciudadanos a documentos de carácter público". Colón Cabrera v. Caribbean Petroleum, 170 D.P.R. 582 (2007).

Por otro lado, el Tribunal Supremo de Puerto Rico ha reconocido que el recurso de mandamus resulta el vehículo actual para requerir del Tribunal que ordene la divulgación, inspección y reproducción de documentos públicos. El mandamus ha sido el recurso apropiado para compeler al cumplimiento de un deber, como ocurre cuando se solicita acceso a información pública.  Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1960). No obstante, este recurso ha resultado ser costoso y largo. Esto, aun con el derecho de acudir al Tribunal directamente para la vindicación del derecho. Véase, Ortiz v. Panel sobre el FEI, 155 D.P.R. 219 (2001). Entre los factores determinantes para la expedición del recurso, se encuentran los siguientes:  1) el posible impacto que el recurso pueda tener sobre los intereses públicos que puedan estar involucrados; 2) evitar intromisiones indebidas en los procedimientos del Poder Ejecutivo; y 3) que el acto no se

preste a confusión o perjuicio de los derechos de terceras personas.  Véase, Noriega v. Hernández Colón, 135 D.P.R. 406 (1994).

Resulta claro entonces que desde principios de la década de los años ochenta, el Tribunal Supremo de Puerto Rico ha reconocido inequívocamente que el derecho de acceso a la información pública es uno fundamental de rango constitucional.  Este derecho se sostiene en el principio democrático de que los ciudadanos deben conocer, fiscalizar y pasar juicio sobre las gestiones del Estado.  En otras palabras, el derecho de acceso a la información es el derecho que faculta a la ciudadanía a exigirle al gobierno que rinda cuentas sobre su gestión, lo que resulta esencial para lograr una mayor transparencia gubernamental. Para que la ciudadanía pueda ejercer este derecho a plenitud, es obligación del Gobierno de Puerto Rico establecer normas y procedimientos claros, económicos, sencillos y expeditos para acceder a la información pública.  Además, es de suma importancia que las normas sobre información pública estén fundamentadas en el principio de transparencia en la gestión gubernamental.

A través del Plan para Puerto Rico nos comprometimos a garantizar y promover la transparencia en la gestión gubernamental y a regular el derecho fundamental de acceso a la información pública en el Gobierno de Puerto Rico.  Esta Ley tiene como objetivo dar cumplimiento al referido compromiso, fomentar una cultura inequívoca de apertura sobre las gestiones del Gobierno, establecer una política proactiva sobre rendición de cuentas a la ciudadanía, desalentar los actos de corrupción o antiéticos, promover la participación ciudadana e instituir normas y principios claros, ágiles y económicos para el ejercicio pleno del derecho de acceso a la información pública. A su vez, pretendemos que al implementar esta normativa se logre la uniformidad necesaria en todas las entidades gubernamentales, lo cual incluye la Rama Legislativa, la Rama Judicial y la Rama Ejecutiva, así como a todas las entidades gubernamentales, corporaciones públicas y municipios.  Los ciudadanos necesitan recuperar nuevamente la confianza y merecen un gobierno transparente, responsable y fiscalizador.  El pueblo de Puerto Rico necesita recibir información clara, confiable y estar al tanto de las decisiones que se toman, pues las mismas afectan el desarrollo de las comunidades y el futuro de las familias puertorriqueñas.

Han sido muchos los gobiernos que han prometido transparencia pero nunca se han obligado a ello. Esto es uno de los factores que han contribuido al deterioro de la confianza del pueblo hacia su gobierno, pues el mismo se ha convertido en una estructura compleja, burocrática y poco transparente en sus decisiones. Por ello, para esta administración es de suma importancia establecer como política pública y con la fuerza de una ley, el proceso para garantizar el ejercicio adecuado del derecho constitucional de acceso a la información, de modo que todos los funcionarios públicos comprendan que constituye obligación del gobierno informar y educar sobre el principio y la práctica de la transparencia gubernamental. A los fines de implementar la mencionada política pública, todas las entidades gubernamentales deberán designar de entre sus empleados funcionarios como Oficiales de Información, quienes se encargarán de producir la información pública solicitada de manera expedita para ser inspeccionada, reproducida o ambas, según se solicite.  Estos Oficiales de Información deberán ser adiestrados sobre el alcance de esta Ley y sobre la jurisprudencia establecida por nuestro Tribunal Supremo en el área de acceso a la información pública.

De igual forma, los procesos para solicitar la información serán rígidos para su cumplimiento. La información pública tiene que entregarse en el menor tiempo posible y de inmediato si existe. Denegar este derecho amerita una explicación legal y un proceso expedito y

"Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública" [Ley 141-2019]

gratis ante un tribunal para cuestionar la actuación gubernamental.  Los tribunales también deben resolver estas controversias de forma expedita.

Nuestro Gobierno aspira a que exista un acceso a la información pública caracterizado por procedimientos sencillos, ágiles, económicos y rápidos, que propicien la transparencia. Con ello promovemos la rendición de cuentas, la participación ciudadana y el control en la gestión gubernamental. Es importante que entre el gobierno y la ciudadanía exista un ambiente de respeto, transparencia y comunicación efectiva. Mantener el orden es importante y la transparencia de un gobierno aún más; la ciudadanía tiene el derecho de saber cómo se manejan los fondos públicos y cómo se toman las decisiones que afectarán el futuro de Puerto Rico y de sus habitantes.

*Decrétase por la Asamblea Legislativa de Puerto Rico:*

## Artículo 1. — Nombre

Esta Ley se conocerá como "Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública".

## Artículo 2. — Aplicabilidad

Las disposiciones de esta Ley son aplicables al Gobierno de Puerto Rico, entiéndase la Rama Legislativa, Rama Judicial y Rama Ejecutiva, incluyendo en esta a todas las entidades gubernamentales, corporaciones públicas y los municipios. De igual forma aplica a terceros custodios de información o documentos públicos.

## Artículo 3. — Política Pública

Se establece como política pública del Gobierno de Puerto Rico lo siguiente:
1)      La información y documentación que produce el gobierno se presume pública y accesible a todas las personas por igual.
2)      La información y documentación que produce el gobierno en sus estudios, transacciones y en el ejercicio de la autoridad pública, de manera directa o delegada, son patrimonio y memoria del pueblo de Puerto Rico.
3)      El derecho constitucional de acceso a la información requiere la transparencia gubernamental.
4)      Toda información o documento que se origine, conserve o reciba en cualquier dependencia del Gobierno, aunque se encuentre bajo la custodia de un tercero, se presume público y debe estar accesible al Pueblo y la prensa.
5)      El derecho de acceso a la información pública es un pilar constitucional y un derecho humano fundamental.
6)      El acceso a la documentación e información pública tiene que ser ágil, económico y expedito.
7)      Toda persona tiene derecho a obtener la información y documentación pública, sujeto a las normas y excepciones aplicables.

**8)**     El Gobierno de Puerto Rico establece en la presente Ley una política de apertura a la información y documentación, que incluya la disponibilidad de la tecnología y de los avances necesarios para hacer valer el derecho de los solicitantes a acceder a la información y documentación pública de forma oportuna, objetiva, veraz, completa, reutilizable, procesable y disponible en formatos accesibles, inalterados e íntegros.

## Artículo 4. — Divulgación rutinaria de la información

En el Gobierno de Puerto Rico se facilitará el acceso a la información pública y se divulgará rutinariamente a través de sus páginas electrónicas oficiales y mediante otros medios de comunicación la información sobre su funcionamiento, acciones y los resultados de su gestión. La entidad gubernamental tiene el deber de divulgar en su página electrónica oficial, de forma periódica, proactiva y actualizada, la información sobre su funcionamiento, la ejecución y control de las funciones delegadas, así como toda documentación pública que sea realizada por la entidad de forma rutinaria. No serán información pública los expedientes de personal o cualquier información de esta índole.

Además, establecerá mecanismos adecuados para facilitar la accesibilidad, calidad y reutilización de la información publicada electrónicamente, así como su identificación y localización.

## Artículo 5. — Oficiales de Información

Cada una de las agencias o entidades gubernamentales que componen el Gobierno de Puerto Rico deberá, salvo justa causa, identificar al menos tres (3) servidores públicos entre los empleados existentes, de los cuales dos (2) serán de carrera. Los empleados identificados serán los designados y certificados como Oficiales de Información en cada una de las entidades gubernamentales. Cuando la estructura organizativa, complejidad funcional o tamaño de la entidad requiera un número mayor o menor de Oficiales de Información, se deberá justificar por escrito y notificar a la Oficina del Secretario de Asuntos Públicos de la Oficina del Gobernador u oficina análoga, quien determinará si procede o no la solicitud. En cuanto a la Rama Legislativa y la Rama Judicial las mismas deberán asignar el personal que entiendan pertinente como Oficiales de Información y establecer el proceso interno que entiendan pertinente para evaluar la cantidad de Oficiales a designarse.

Los Oficiales de Información deberán ser adiestrados sobre el contenido de esta Ley, la reglamentación, los procedimientos aplicables y sus obligaciones jurídicas como responsables del cumplimiento de esta Ley. A su vez, deberán recibir adiestramientos sobre la jurisprudencia establecida por el Tribunal Supremo en materia de acceso a la información pública. Compartirán la responsabilidad de velar por el cumplimiento de esta Ley con el funcionario a cargo de la entidad gubernamental.

Los Oficiales de Información tendrán la obligación de recibir las solicitudes de información, tramitar las mismas y facilitar el acceso a los documentos en el formato solicitado, dentro de los términos establecidos en esta Ley. Los Oficiales de Información registrarán las solicitudes de información en el orden en el que son recibidas y serán numeradas, siendo este número el elemento de referencia en cualquier trámite o proceso de revisión de la solicitud. De

igual forma, los Oficiales deberán proveer la ayuda necesaria a cualquier ciudadano que desee realizar una solicitud de información.

Los Oficiales de Información serán además el contacto central en la entidad gubernamental para la recepción de solicitudes de información y para la asistencia a los individuos que solicitan información. Lo anterior no limitará de forma alguna la opción de los ciudadanos y de la prensa para solicitar información a otros funcionarios de la dependencia, incluyendo al Oficial de Prensa de la entidad gubernamental. Los nombres e información de contacto de los Oficiales de Información estarán disponibles en las páginas cibernéticas oficiales de cada una de las entidades gubernamentales correspondientes, de la Oficina de Gerencia y Presupuesto (OGP) y de La Fortaleza, de igual forma deberán estar disponibles en documento impreso en los centros de servicios integrados distribuidos en Puerto Rico.

Los Oficiales de Información deberán rendir informes mensuales sobre el número de solicitudes recibidas, sobre el tipo de información que se solicitaba y sobre el estatus de la solicitud. No se podrá revelar la información personal del solicitante. Los informes deberán hacerse públicos en la página web de cada entidad gubernamental.

## Artículo 6. — Solicitudes

Cualquier persona podrá solicitar información pública mediante solicitud escrita o por vía electrónica, sin necesidad de acreditar algún interés particular o jurídico. El Oficial de Información tendrá la responsabilidad de notificar, por email, fax o correo regular, a todo peticionario de información o documentación pública que su solicitud fue recibida y el número de identificación de la misma.

La solicitud de información deberá incluir al menos una dirección o correo electrónico para recibir notificaciones, el formato en que desea recibir la información y una descripción de la información que solicita.

## Artículo 7. — Término para hacer entrega o disponible la información pública

Sujeto a las disposiciones de esta Ley, los Oficiales de Información de una entidad gubernamental deberán producir cualquier información pública para su inspección, reproducción o ambos, a petición de cualquier solicitante, en un término no mayor de diez (10) días laborables. En el caso de la Rama Ejecutiva, la Oficina a nivel central de la agencia o entidad gubernamental, deberá cumplir con el término antes indicado. No obstante, si la solicitud se hace directamente a nivel de una Oficina regional de la agencia o entidad gubernamental el término para entregar la información no podrá ser mayor de quince (15) días laborables. En el caso anterior, el Oficial de Información a nivel regional deberá de forma diligente en un periodo de no mayor de cuarenta y ocho (48) horas informar mediante correo electrónico a nivel central la solicitud recibida para así determinar el trámite a seguir, según corresponda. El término para entregar la información comenzará a decursar a partir de la fecha en que el solicitante haya enviado su solicitud de información a la entidad gubernamental, según conste en el correo electrónico, el matasellos del correo postal o el recibo del facsímil. Si la entidad gubernamental no contesta dentro del término establecido, se entenderá que ha denegado la solicitud y el solicitante podrá recurrir al Tribunal. Este término es prorrogable por un término único de diez (10) días laborables, si el Oficial de Información notifica la solicitud de prórroga al solicitante dentro del término inicial establecido y

expone en la solicitud la razón por la cual requiere contar con tiempo adicional para entregar la información o documentación solicitada.

Toda decisión de denegar la divulgación de información pública tiene que especificar por escrito los fundamentos jurídicos en los que se basa la denegatoria o negativa de entregarla en el término establecido.

Los Oficiales de Información cumplen con los parámetros de esta Ley si, según las preferencias del solicitante, realizan una de estas acciones:

a)      Hacen la información disponible al solicitante en las oficinas de la entidad gubernamental para su inspección y reproducción;

b)      Envían información al solicitante por correo electrónico;

c)      Envían copia de la información por correo federal (First Class), siempre y cuando, el solicitante esté dispuesto a pagar por sello y otros costos asociados; o

d)      Proveen al solicitante una dirección de internet (URL) de una página web con instrucciones para acceder a la información solicitada.

## Artículo 8. — Cobro de cargos

Como regla general, el derecho de acceso o de inspección de un documento público será permanente y gratuito. La expedición de copias simples o certificadas, grabaciones y reproducciones estará sujeta al pago de derechos y cargos razonables. Los cargos correspondientes se establecerán por reglamento u orden administrativa. Se entenderá razonable el pago de los costos directos de reproducción, el costo de envío por correo regular y los derechos expresamente autorizados en ley. No obstante lo anterior, toda persona que demuestre indigencia según se regule por reglamento u orden administrativa, será eximida del pago de derechos o cargos por la solicitud de información. En la Rama Ejecutiva, la Oficina del Secretario de Asuntos Públicos u oficina análoga establecerá unas guías uniformes para estas regulaciones administrativas que exijan el cumplimiento fiel de lo establecido en esta Ley, de igual forma podrá establecer el Código de conducta que regirá a los Oficiales de Información en el cumplimiento de sus funciones. En cuanto a la Rama Judicial y la Rama Legislativa, las mismas determinarán internamente cómo crearán las guías uniformes y el Código de conducta antes indicado.

La información pública solicitada se entregará en el formato solicitado y por el medio que el solicitante haya señalado, siempre que ello no suponga un costo mayor que la entrega en papel o en el formato que usualmente utiliza la entidad gubernamental, ni suponga un riesgo para la integridad del documento.  Si la entrega de la información requerida implica un gasto extraordinario, la entidad gubernamental divulgará la misma en el formato disponible o de menor costo. La entidad gubernamental establecerá la forma de acreditar la entrega efectiva de la información solicitada.

## Artículo 9. — Recurso Especial de Revisión Judicial ante el Tribunal de Primera Instancia

Cualquier persona a la cual una entidad gubernamental le haya notificado su determinación de no entregar la información solicitada o que no haya hecho entrega de la información dentro del término establecido o su prórroga, tendrá derecho a presentar, por derecho propio o a través de su representación legal, ante la sala del Tribunal de Primera Instancia de la Región Judicial de San Juan, un Recurso Especial de Acceso a Información Pública.

"Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública" [Ley 141-2019]

Para la radicación del recurso, la Rama Judicial deberá crear y tener disponible al público un formato simple para cumplimentar. La radicación del recurso no conllevará la cancelación de sellos ni aranceles. De igual forma, salvo circunstancias extraordinarias específicamente fundamentadas no se le requerirá a ningún ciudadano la contratación de un abogado para poder radicar el recurso y no se le podrá impedir tramitar su caso por derecho propio. Se le recomienda al Tribunal Supremo establecer un proceso aleatorio para seleccionar los jueces que atenderán estos casos.

La notificación del recurso a la entidad gubernamental deberá ser realizada por el propio Tribunal sin costo alguno. Para esto, el Secretario del Tribunal de Primera Instancia en que se haya presentado el recurso, emitirá una notificación a la entidad gubernamental que haya notificado al solicitante su determinación de no entregar la información o que no haya hecho entrega de la información dentro del término establecido para que esta comparezca por escrito, apercibiéndole que si así no lo hiciere, se estaría allanando a las alegaciones de la demanda y se procedería a expedir el remedio solicitado que proceda conforme a esta Ley, sin más citarle ni oírle.

El recurso en cuestión deberá presentarse dentro del término de cumplimiento estricto de treinta (30) días, contados a partir de la fecha en que la entidad gubernamental haya notificado su determinación de no entregar la información solicitada o de la fecha en que venció el término disponible para ello si no hubo contestación.

La entidad gubernamental notificada con un recurso bajo esta Ley, vendrá obligada a comparecer por medio de su escrito, en un término de diez (10) días laborables, salvo justa causa en cuyo caso no podrá ser un término menor a cinco (5) días laborables, contados a partir de la fecha de la notificación emitida a tales efectos por el Secretario del Tribunal de Primera Instancia. El Tribunal ostentará discreción para acortar el término de diez (10) días establecido siempre que entienda que existe justa causa para así hacerlo en protección de los intereses del solicitante.

El Tribunal tendrá que celebrar una vista dentro del término de tres (3) días laborables de recibir la contestación de la entidad gubernamental de entender que las circunstancias particulares del caso y de la información solicitada así lo requieren.

El Tribunal deberá resolver por escrito la controversia, mediante resolución fundamentada en derecho declarando con o sin lugar la solicitud de producción de información pública en un término de diez (10) días contados desde que la entidad gubernamental emitió su contestación al tribunal o desde que se celebró la vista, de haberse celebrado la misma.

**Artículo 10. — Protección contra represalias**

Toda persona que informare de cualquier violación o tentativa de evasión al cumplimiento de las obligaciones que se establezcan por esta Ley, o que testifique en un procedimiento administrativo, legislativo o judicial, disfrutará de la más amplia protección en el empleo y contra represalias en el caso de que fuere objeto de persecución u hostigamiento gubernamental o laboral de cualquier índole. Lo dispuesto en este Artículo complementa cualquier otra disposición protectora para los informantes y confidentes vigente en nuestro ordenamiento y no menoscabará su ejercicio.

Toda persona que tome represalias de cualquier índole ya sea mediante persecución u hostigamiento gubernamental o laboral contra un informante o testigo a tenor con lo establecido en este Artículo, incurrirá en delito grave y convicta que fuere será sancionada con pena de multa

de cinco mil (5,000) dólares o pena de reclusión por un término fijo de tres (3) años, o ambas penas a discreción del tribunal. Este delito no prescribirá.

## Artículo 11. — Reglamentación

Toda entidad gubernamental del Gobierno de Puerto Rico deberá enmendar o aprobar cualquier reglamentación, orden administrativa, o carta circular para dar fiel cumplimiento a esta Ley.

## Artículo 12. — Cláusula de Interpretación

La enumeración de derechos que antecede no se entenderá de forma restrictiva, ni supone la exclusión de otros derechos y procedimientos pertenecientes a las personas solicitantes de información pública y no mencionados específicamente como lo es el recurso de mandamus tradicional.

Esta Ley deberá interpretarse en la forma más liberal y beneficiosa para la persona solicitante de información pública. En caso de conflicto entre las disposiciones de esta Ley y la de cualquier otra legislación, prevalecerá aquella que resulte más favorable para la persona solicitante de información y documentación pública.

## Artículo 13. — Cláusula de Transición

El proceso que existe actualmente para que los ciudadanos soliciten información en las Ramas de Gobierno permanecerá vigente hasta tanto las diferentes Ramas de Gobierno realicen las acciones pertinentes para implementar los procesos que aquí se establecen. Las Ramas de Gobierno tendrán un periodo de seis (6) meses para finalizar todos los trámites necesarios para cumplir con lo establecido en esta Ley.

## Artículo 14. — Cláusula de Separabilidad

Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha sentencia quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta Ley en la mayor medida posible, aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a alguna persona o circunstancia. Esta

"Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública" [Ley 141-2019]

Asamblea Legislativa hubiera aprobado esta Ley sin importar la determinación de separabilidad que el Tribunal pueda hacer.

**Artículo 15. — Vigencia.** Esta Ley comenzará a regir de forma inmediata luego de su aprobación.

Nota. Este documento fue compilado por personal de la **Oficina de Gerencia y Presupuesto** del Gobierno de Puerto Rico, como un medio de alertar a los usuarios de nuestra Biblioteca de las últimas enmiendas aprobadas para esta Ley. Aunque hemos puesto todo nuestro esfuerzo en la preparación del mismo, este no es una compilación oficial y podría no estar completamente libre de errores inadvertidos; los cuales al ser tomados en conocimiento son corregidos de inmediato. En el mismo se han incorporado todas las enmiendas hechas a la Ley a fin de facilitar su consulta. Para exactitud y precisión, refiérase a los textos originales de dicha ley y a la colección de Leyes de Puerto Rico Anotadas L.P.R.A.. Las anotaciones en letra cursiva y entre corchetes añadidas al texto, no forman parte de la Ley; las mismas solo se incluyen para el caso en que alguna ley fue derogada y ha sido sustituida por otra que está vigente. Los enlaces al Internet solo se dirigen a fuentes gubernamentales. Los enlaces a las leyes enmendatorias pertenecen a la página web de la **Oficina de Servicios Legislativos** de la Asamblea Legislativa de Puerto Rico. Los enlaces a las leyes federales pertenecen a la página web de la **US Government Publishing Office GPO** de los Estados Unidos de Norteamérica. Los enlaces a los Reglamentos y Ordenes Ejecutivas del Gobernador, pertenecen a la página web del **Departamento de Estado** del Gobierno de Puerto Rico. Compilado por la Biblioteca de la Oficina de Gerencia y Presupuesto.

Véase además la **Versión Original de esta Ley**, tal como fue aprobada por la Legislatura de Puerto Rico.

⇒⇒⇒ Verifique en la Biblioteca Virtual de OGP la **Última Copia Revisada** (Rev.) para esta compilación.

Ir a: www.ogp.pr.gov ⇒ Biblioteca Virtual ⇒ Leyes de Referencia—DOCUMENTOS PÚBLICOS.