UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>   Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

*Caption Continued on Following Page*

---

[1] The debtors in these Title III cases, along with each debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Fourt Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE COMMONWEALTH OF PUERTO RICO and PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Movants,<br><br>-v-<br><br>AMBAC ASSURANCE CORPORATION,<br><br>Respondent. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## AMBAC ASSURANCE CORPORATION'S NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Ambac Assurance Corporation ("Ambac"), by and through its undersigned counsel, hereby appeals to the United States Court of Appeals for the First Circuit from (i) the Court's June 16, 2020 Memorandum Order granting the Financial Oversight and Management Board of Puerto Rico's motion for an order directing Ambac to withdraw its Complaint (Dkt. No. 1 in Case No. 20-1094) (the "Complaint") and file proof of such withdrawal on the docket of Case Nos. 17-3283 and 17-3567 (Dkt. No. 13447 in Case No. 17-3283); and (ii) the Court's determination that Ambac's Complaint violates the automatic stay and is therefore declared, void *ab initio*.

Dated: New York, New York
       June 30, 2020

        FERRAIUOLI LLC
          By: */s/ Roberto Cámara-Fuertes*
          Roberto A. Cámara-Fuertes
          USDC P.R. No. 219002
          221 Ponce de León Avenue, 5th Floor
          San Juan, PR 00917
          Telephone: (787) 766-7000
          Facsimile: (787) 766-7001
          Email: rcamara@ferraiuoli.com

        KASOWITZ BENSON TORRES LLP
          Andrew K. Glenn (admitted *pro hac vice*)
          Olga Lucia Fuentes-Skinner (admitted *pro hac vice*)
          Marissa E. Miller (admitted *pro hac vice*)
          Shai Schmidt (admitted *pro hac vice*)
          1633 Broadway
          New York, New York 10019
          Telephone: (212) 506-1700
          Facsimile: (212) 506-1800
          Email: aglenn@kasowitz.com
                  ofuentes@kasowitz.com
                  memiller@kasowitz.com
                  sschmidt@kasowitz.com

        *Attorneys for Ambac Assurance Corporation*

To: *Attorneys for the Financial Oversight and Management Board as representative of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

        Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY,

        Debtor.

PROMESA
Title III

No. 17 BK 3567-LTS

------------------------------------------------------------x

MEMORANDUM ORDER GRANTING MOTION OF FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(A) AND 362 FOR ORDER DIRECTING AMBAC TO WITHDRAW COMPLAINT

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is the *Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* (Docket Entry No. 12569 in Case No. 17-3283[2] and Docket Entry No. 756 in Case No. 17-3567, the "Motion"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"). The Oversight Board, acting on behalf of the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA" and, collectively with the Commonwealth, the "Debtors"), seeks entry of an order pursuant to sections 105(a) and 362 of the Bankruptcy Code (the "Code"[3]) directing Ambac Assurance Corporation ("Ambac"), an insurer and holder of bonds issued by HTA, to withdraw its complaint in Ambac Assurance Corporation v. Autopistas Metropolitanas de Puerto Rico, LLC, Civil No. 3:20-cv-01094-PAD (the "Metropistas Litigation"). Ambac initiated the lawsuit in the United States District Court for the District of Puerto Rico against Autopistas Metropolitanas de Puerto Rico, LLC ("Metropistas"[4]), seeking to rescind a Toll Road Concession Agreement between Metropistas and HTA that Ambac contends is fraudulent as to HTA's creditors, to recover damages from Metropistas on an unjust enrichment theory, and to obtain a declaration that Ambac has a lien on toll revenues transferred to and collected by Metropistas pursuant to the terms of the Agreement. In the Motion, the Oversight Board argues that, by asserting claims that interfere with property of HTA, seeking to enforce a lien against HTA's property, and effectively attempting to collect prepetition debt allegedly owed by HTA,

---

[2] All docket entry references are to entries in Case No. 17-3283, unless otherwise noted.
[3] Sections 105(a) and 362 are among the Code provisions made applicable to these Title III cases by section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2161(a).
[4] Metropistas filed a joinder in support of the Oversight Board's Motion. (See Docket Entry No. 12578.)

Ambac has violated the automatic stay imposed by section 362(a) of the Bankruptcy Code and the Metropistas Litigation is void *ab initio*.

The Court heard argument on the Motion on June 3, 2020 (the "Hearing"), and has considered carefully all of the arguments and submissions made in connection with the Motion.[5] The Court has subject matter jurisdiction of this contested matter pursuant to 48 U.S.C. § 2166(a)(2). For the reasons that follow, the Motion is granted.

BACKGROUND

The following facts are undisputed, unless otherwise indicated.

In 2009, the Legislative Assembly of Puerto Rico enacted the Public-Private Partnership Act (Act No. 29-2009, the "PPP Act"), codified at 27 L.P.R.A. §§ 2601-2623. The PPP Act authorizes HTA "to establish partnerships and to execute partnership contracts in

---

[5] In addition to the Motion, the Court has thoroughly reviewed the following submissions: the *Memorandum of Law in Support of Motion of Financial Oversight and Management Board Pursuant to Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* (Docket Entry No. 12570, the "Memorandum of Law" or "MOL"); the *Joinder of Autopistas Metropolitanas de Puerto Rico, LLC to Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* (Docket Entry No. 12578); *Ambac Assurance Corporation's Opposition to Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* (Docket Entry No. 12964, the "Opposition"); the *Reply in Support of Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* (Docket Entry No. 13251, the "Reply"); the *Declaration of Michael A. Firestein Regarding Reply in Support of Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* (Docket Entry No. 13252); and the *Informative Motion of Financial Oversight and Management Board Relating to Reply in Support of Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* (Docket Entry No. 13264, the "Supplemental Informative Motion").

connection with any function, service or facility for which they are responsible under the provisions of their organic acts or the applicable special laws, pursuant to the provisions of this chapter." (Mot. ¶ 5 (citing 27 L.P.R.A. § 2603).) Section 17 of the PPP Act vests the Governor of Puerto Rico (the "Governor") with the sole power to decide, in consultation with the Government Development Bank for Puerto Rico and the Office of Management and Budget, how to allocate the proceeds of a privatization transaction, and authorizes the Governor to direct the proceeds of a privatization transaction to a wide range of purposes of the Commonwealth, including paying Commonwealth debts. (Id. ¶ 6.)

On June 27, 2011, HTA and Metropistas entered into a Toll Road Concession Agreement (the "Concession Agreement"). (Id. ¶ 7.) Pursuant to the terms of the Concession Agreement, HTA granted Metropistas a forty-year concession to operate two Puerto Rican highways (the "Toll Roads") from 2011 through 2051 and to provide certain toll road services, and assigned certain toll revenues to Metropistas in exchange for an approximately $1.1 billion up-front concession fee. (Id.) The Concession Agreement also provided that other toll revenues generated through a specific dynamic-pricing system (the "BRT/DTL Toll Revenues") would be split equally between HTA and Metropistas. (Id.)

On or about April 21, 2016, HTA and Metropistas entered into an Agreed Modifications and Amendment Agreement No. 5 (the "Concession Extension Agreement"). (Id. ¶ 8.) Pursuant to the terms of the Concession Extension Agreement, HTA agreed to extend Metropistas's concession rights in the Toll Roads for an additional ten years, from 2051 through 2061, and to increase Metropistas's allocated share of the BRT/DTL Toll Revenues from 50% to 75% (the "Toll Share Increase") in exchange for a total payment by Metropistas to HTA of $115

million (the "Lump Sum Payment"[6]). (Id.) Metropistas also agreed in the Concession Extension Agreement to make investments in new tolling gantries and to share 30% of certain incremental revenues derived therefrom with HTA. (Id.)

Ambac commenced a federal lawsuit against HTA related to the Concession Extension Agreement on May 10, 2016. (See Ambac Assurance Corp. v. P.R. Highways & Trans. Auth., Civil No. 3:16-cv-01893-FAB, the "Prior Ambac Litigation.") In the Prior Ambac Litigation, Ambac generally asserts that HTA breached its fiduciary duties to its bondholders, and, by extension, Ambac, by entering into the Concession Extension Agreement knowing that the Governor, rather than HTA, would control the proceeds of the transaction pursuant to the PPP Act. (Opp. ¶ 12.) Ambac did not challenge the terms of the Concession Extension Agreement directly in the Prior Ambac Litigation, but it sought the appointment of a receiver and the imposition of a temporary restraining order in order to prevent the Governor from utilizing the PPP Act to direct the Lump Sum Payment to the payment of obligations other than the bonds insured or held by Ambac. (See Mot. ¶¶ 9-10; Compl. ¶ 55.)

On May 13, 2016, the Governor announced that nearly all of the proceeds from the Concession Extension Agreement would be used to pay suppliers of the Commonwealth's essential services and would not be transferred to HTA.[7] (Opp. ¶ 13.) Ambac's request for a temporary restraining order was denied, and the Prior Ambac Litigation was stayed after the

---

[6] The Concession Extension Agreement specifically provided for the payment of $100 million to HTA, with the possibility of an additional $15 million upon satisfaction of certain conditions related to improvements to the Toll Roads by Metropistas. (See Docket Entry No. 1 in Civil No. 3:20-cv-01094-PAD, the "Complaint," ¶ 51.) The Oversight Board represents that Metropistas has already made the additional $15 million payment to HTA. (Supp. Informative Mot., Docket Entry No. 13264, ¶ 2.)

[7] Approximately $5 million of the original $100 million Lump Sum Payment was used for the benefit of HTA. (See Opp. ¶ 14; Compl. ¶ 62 ("virtually all" of Metropistas's Lump Sum Payment was diverted from HTA to the Commonwealth).)

Debtors' subsequent Title III filings. (Mot. ¶¶ 11-12.)

On February 19, 2020, Ambac commenced the Metropistas Litigation by filing the Complaint. In the Metropistas Litigation, Ambac characterizes the Concession Extension Agreement as a fraudulent transaction and alleges generally that "Metropistas knew or recklessly disregarded that the Commonwealth would divert the proceeds, and [HTA] -- the entity that owned the concession rights as of 2051 -- would not receive reasonably equivalent value for the valuable rights it transferred." (Compl. ¶ 4.) Ambac asserts claims for three types of relief in the Complaint: (i) rescission of the Concession Extension Agreement "to the extent necessary to satisfy [Ambac's] claims against" HTA (id. ¶ 80), (ii) Ambac's recovery of restitution from Metropistas, as well as a disgorgement to Ambac of all profits and benefits obtained by Metropistas from the Concession Extension Agreement, on the basis of alleged unjust enrichment of Metropistas at the expense of Ambac (id. ¶¶ 89-90), and (iii) a declaration that Ambac has a "valid, continuing lien on the toll revenues collected by Metropistas for its own account that are generated by . . . the Toll Roads from 2051 to 2061, and . . . the Toll Share Increase" (id. ¶ 95).

## DISCUSSION

The Oversight Board filed the Motion on March 31, 2020. On behalf of the Debtors, the Oversight Board seeks entry of an order declaring the Metropistas Litigation void and requiring the withdrawal of the Complaint, arguing that that the Metropistas Litigation (i) interferes with the Debtors' property rights, in violation of section 362(a)(3) of the Bankruptcy Code, (ii) seeks to enforce a lien against HTA, in violation of section 362(a)(4) of the Code, and (iii) seeks to recover a claim against HTA that arose before the commencement of HTA's Title

III case, in violation of section 362(a)(1) and (a)(6) of the Code. (MOL ¶ 2.[8]) The Oversight Board requests that the Court issue an order pursuant to section 105(a) of the Code directing Ambac to withdraw the Complaint. Ambac, opposing the Motion, argues that the relief it seeks against Metropistas would affect only Metropistas's property and not the Debtors' property, that the Oversight Board abandoned the avoidance claims Ambac asserts in the Complaint by failing to pursue such claims within the two-year statutory period prescribed by section 546(a) of the Code, and that the Oversight Board has failed to demonstrate why Ambac may not pursue its unjust enrichment claim against Metropistas.

### A. First Claim for Relief: Rescission

In its First Claim for Relief, Ambac "seeks an order rescinding the [Concession] Extension Agreement to the extent necessary to satisfy its claims against [HTA]." (Compl. ¶ 80.) The Oversight Board argues that the First Claim for Relief violates section 362(a)(3) of the Code, which stays "any act to obtain possession of property of the [debtor] or of property from the [debtor] or to exercise control over property of the [debtor],"[9] in that it seeks to deprive HTA of valuable contract rights and to interfere with HTA's interests in the Concession Extension Agreement. (MOL ¶ 7 (citing 11 U.S.C.A. § 362(a)(3) (Westlaw through P.L. 116-142)).) The

---

[8] The Oversight Board also argues that the avoidance claims asserted by Ambac in the Complaint are property of HTA that have not been abandoned by HTA. (MOL ¶ 12.) In light of the following disposition of the Motion, the Court need not address the parties' respective abandonment and reversion arguments in resolving the Motion. The Court assumes for purposes of this Motion that Ambac has standing to bring the claims for relief asserted in the Complaint.

[9] There is no "estate" in the PROMESA context; instead, "property of the estate" means "property of the debtor." Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 939 F.3d 340, 349 (1st Cir. 2019); see also 48 U.S.C.A. § 2161(c)(5) (Westlaw through P.L. 116-142) ("The term 'property of the estate', when used in a section of Title 11 made applicable in a case under this subchapter by [section 301(a)], means property of the debtor.").

200616 ORD GRANTING FOMB MOT RE METROPISTAS WITHDRAWAL VERSION JUNE 16, 2020

Oversight Board also asserts that the Metropistas Litigation, by seeking rescission of the Concession Extension Agreement, implicates HTA's property interest in the proceeds of that Agreement, including the Lump Sum Payment, HTA's rights to future toll revenues, and the benefits of Metropistas's investments in improved toll gantries. (Id. ¶ 8.) Ambac argues in its Opposition that there has been no stay violation because Ambac "does not seek to rescind [HTA's] contractual rights under the Concession Agreement or the [Concession Extension Agreement]," but instead "seeks money damages from Metropistas measured by Metropistas's failure to pay reasonably equivalent value to [HTA] for the concession rights it received." (Opp. ¶ 28.) Ambac mischaracterizes its own Complaint, and its argument that the claim asserted does not violate the automatic stay fails for the following reasons.

As noted above, section 362(a)(3) of the Code provides that the automatic stay applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C.A. § 362(a)(3) (Westlaw through P.L. 116-142). Contract rights are among the property interests protected by this provision. See MMM Healthcare, Inc. v. Santiago (In re Santiago), 563 B.R. 457, 472 (Bankr. D.P.R. 2017); 3 Collier on Bankruptcy ¶ 362.03[5][a] (Richard Levin & Henry J. Sommer eds., 16th ed. 2020) ("Executory contracts . . . are considered a form of property of the estate. As property of the estate, the debtor's interests in such contracts . . . are protected against termination or other interference that would have the effect of removing or hindering the debtor's rights in violation of section 362(a)(3)."). In paragraph 80 of its Complaint, "Ambac seeks an order rescinding the [Concession] Extension Agreement to the extent necessary to satisfy its claims against [HTA]." (Compl. ¶ 80.) Rescission, under Puerto Rico law, "obliges the return of the things which were the objects of the contract, with their fruits and the price with interest." 31 L.P.R.A. § 3496. In

other words, the effect of rescission under Puerto Rico law is to "wipe out the contract and put the parties back where they were before the contract was made." Casanova v. Puerto Rican-American Ins. Co., 160 D.P.R. 689, 968, 1978 WL 48889 (P.R. 1978). Rescission in this context would therefore require that HTA and Metropistas unwind the Concession Extension Agreement, including the allocation of BRT/DTL Toll Revenues and revenues derived from Metropistas's improvements to the Toll Roads, and would also require that the Commonwealth return the portion of the Lump Sum Payment that it received. Ambac's assertion of the First Claim for Relief thus seeks to "exercise control over property" of HTA and the Commonwealth in contravention of section 362(a)(3) of the Bankruptcy Code.

Ambac's assertion in its Opposition that it does not seek to unwind or rescind the Concession Extension Agreement, but "seeks only monetary recovery from Metropistas," is inconsistent with the plain language of the Complaint. (See Compl. ¶ 80.) The assertion that Ambac would be entitled to damages in lieu of its rescission cause of action as a matter of Puerto Rico law also appears facially inconsistent with the statute upon which Ambac relies. Even if the statute were applicable, the demand for damages would still constitute an effort to obtain or exercise control over HTA's property rights because Ambac's claims necessarily implicate the integrity of the Concession Extension Agreement and HTA's actions thereunder. Section 3499 of Title 31 of the L.P.R.A. provides that "[a]ny person who may have acquired in bad faith things alienated in fraud of creditors must indemnify the latter for the losses and damages caused to them by the alienation whenever, for any reason whatsoever, it should be impossible for him to return them." 31 L.P.R.A. § 3499. To succeed on a damages claim, the statute requires proof that the target of the claim acted in bad faith and that property of the debtor was alienated in fraud of creditors, clearly implicating the integrity of the underlying contract and its

performance. More fundamentally, the remedy is not available unless it is "impossible" for the target of the action to return the property to the original transferor – in other words, actual rescission must be impossible for a damages remedy to be available. Ambac has failed to demonstrate that it would be "impossible" to rescind the Concession Extension Agreement and, in the absence of impossibility, rescission under Puerto Rico law "obliges the return of the things which were the objects of the contract, with their fruits and the price with interest." Id. § 3496.

At the Hearing, counsel for Ambac argued that the automatic stay makes rescission impossible and the damages remedy available. (See Docket Entry No. 13372, Hr'g Tr., at 45:21-25 ("The Court: What makes [rescission] impossible here? I understand it would be complicated, painful, and have far reaching implications, but why does that make it impossible? Mr. Glenn: Because it's barred by the automatic stay.").) This somewhat paradoxical argument disproves both the claim that the Metropistas Litigation does not run afoul of the automatic stay, since it acknowledges that rescission would necessarily involve an exercise of control over property of the Debtor, and the claim that rescission is impossible, since the barrier Ambac claims entitles it to damages is one that has a statutory mechanism for seeking relief.

By seeking to exercise control over property of HTA and the Commonwealth, to which certain of the proceeds of the Concession Extension Agreement were transferred, Ambac's First Claim for Relief violates section 362(a)(3) of the Code.

B. Second Claim for Relief: Unjust Enrichment

In its Second Claim for Relief, Ambac asserts that, as "a direct and proximate cause of Metropistas's misconduct . . . , Metropistas was unjustly enriched at the expense of Ambac." (Compl. ¶ 89.) Ambac "seeks restitution from Metropistas, as well as a disgorgement

of all profits and benefits obtained by Metropistas from the fraudulent transfers." (Id. ¶ 90.) The Oversight Board argues that, to the extent that an unjust enrichment claim lies against Metropistas, any such claim would be HTA's property rather than Ambac's property because Ambac seeks to avoid a contract between HTA and Metropistas pursuant to which HTA transferred certain rights to Metropistas in exchange for consideration paid to HTA. (Reply ¶ 27.) Ambac's Second Claim for Relief is, the Oversight Board asserts, necessarily derivative of claims belonging to HTA and violative of section 362(a)(3) of the Code. (Id.)

Although Ambac asserts in its Opposition that Metropistas was unjustly enriched at the expense of Ambac as a direct and proximate cause of Metropistas's misconduct and argues that it therefore has a claim independent of any that could be asserted by HTA (see Opp. ¶ 64), Ambac's unjust enrichment claim is clearly premised on its position as an HTA creditor and that, as such, it is entitled to benefit from the property that HTA transferred to Metropistas. Ambac points to no independent relationship with Metropistas or claim to assets in Metropistas's control. Ambac thus seeks, in violation of the automatic stay, to obtain possession of property it believes is rightly HTA's and burdened by HTA's obligations to Ambac. Furthermore, even if Ambac had an independent right to bring an unjust enrichment claim against Metropistas, because any such action would require proof undermining the integrity of the Concession Extension Agreement and HTA's relationship with its counterparty under a long-term contractual relationship, Ambac's pursuit of its Second Claim for Relief seeks to exercise control over the Concession Extension Agreement, which is property of HTA. The Second Claim for Relief thus violates section 362(a)(3) of the Bankruptcy Code.

C. Third Claim for Relief: Declaratory Relief

In its Third Claim for Relief, Ambac "seeks a declaration that it has a valid, continuing lien on the toll revenues collected by Metropistas for its own account that are generated by (i) the Toll Roads from 2051 through 2061, and (ii) the Toll Share Increase." (Compl. ¶ 95.) The Oversight Board argues that, because HTA is the only entity that granted bondholders a lien in connection with the bonds on which Ambac's claim is based, Ambac is unquestionably seeking a declaration that it holds a lien on property in which HTA has an interest. (MOL ¶ 17.) Ambac contends that it does not seek to enforce a lien against HTA's property, but instead seeks a declaration that it has a lien on toll revenues collected by Metropistas, which are not the property of HTA. (Opp. ¶ 34.)

Section 362(a)(4) of the Bankruptcy Code stays all actions to "create, perfect, or enforce any lien against property of the [debtor]." 11 U.S.C.A. § 362(a)(4) (Westlaw through P.L. 116-142). In the Third Claim for Relief, Ambac is effectively seeking a declaration that it has a lien against certain property of HTA that has been transferred to Metropistas. Indeed, the Complaint alleges that "Ambac . . . has a lien on the [HTA] Pledged Revenues, including the Toll Revenues." (Compl. ¶ 18.) Ambac's Third Claim for Relief therefore raises the question of whether and to what extent HTA granted Ambac a lien. This claim violates section 362(a)(4) of the Bankruptcy Code because it seeks to enforce a lien against the property of HTA.

\*\*\*

Each cause of action asserted by Ambac in the Metropistas Litigation also violates sections 362(a)(1) and 362(a)(6) of the Bankruptcy Code. In the First Circuit, unauthorized post-petition proceedings are void. See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir. 1997). The Court, which has authority under section 105(a) of the Code to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," therefore orders Ambac to withdraw the Complaint in its entirety. See 11 U.S.C.A. § 105(a) (Westlaw through P.L. 116-142).

CONCLUSION

For the foregoing reasons, the Motion is granted. Because the Complaint violates the automatic stay, it is hereby declared void *ab initio*. Ambac is directed to withdraw the Complaint on or before June 23, 2020, and to file proof of such withdrawal on the docket of the above-captioned Title III cases.

This Memorandum Order resolves Docket Entry No. 12569 in Case No. 17-3283 and Docket Entry No. 756 in Case No. 17-3567.

SO ORDERED.

Dated: June 16, 2020

                                           /s/ Laura Taylor Swain
                                           LAURA TAYLOR SWAIN
                                           United States District Judge