# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v. | PROMESA<br>Title III<br><br>Adv. Proc. No. 20-00003-LTS |

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

AMBAC ASSURANCE CORPORATION, ASSURED
GUARANTY CORP., FINANCIAL GUARANTY
INSURANCE COMPANY and U.S. BANK TRUST
NATIONAL ASSOCIATION, as Trustee

Defendants.

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

          Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, ASSURED
GUARANTY CORPORATION, FINANCIAL
GUARANTY INSURANCE COMPANY and THE
BANK OF NEW YORK MELLON, as Trustee

Defendants.

PROMESA
Title III

Adv. Proc. No. 20-00004-LTS

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as a representative of

THE COMMONWEALTH OF PUERTO RICO,

     Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, ASSURED
GUARANTY CORP., ASSURED GUARANTY
MUNICIPAL CORP., NATIONAL PUBLIC
FINANCE GUARANTEE CORPORATION,
FINANCIAL GUARANTY INSURANCE
COMPANY, PEAJE INVESTMENTS LLC, and THE
BANK OF NEW YORK MELLON, as Fiscal Agent

Defendants.

PROMESA
Title III

Adv. Proc. No. 20-00005-LTS

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as a representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

    and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS

(OTHER THAN COFINA AND PBA)

    Plaintiffs,

v.

AMBAC ASSURANCE CORPORATION, ASSURED
GUARANTY CORP., ASSURED GUARANTY
MUNICIPAL CORP., NATIONAL PUBLIC
FINANCE GUARANTEE CORPORATION,
FINANCIAL GUARANTY INSURANCE
COMPANY, PEAJE INVESTMENTS LLC, and THE
BANK OF NEW YORK MELLON, as Fiscal Agent

    Defendants.

PROMESA
Title III

Adv. Proc. No. 20-00007-LTS

**AAFAF'S RESPONSE TO MONOLINES' URGENT MOTION TO CLARIFY
REQUIREMENTS OF THE SEALED PROCEDURES' ORDER AND THE AMENDED
PROTECTIVE ORDER [ECF 13513]**

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as fiscal agent for the Commonwealth of Puerto Rico ("Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Convention Center District Authority ("CCDA"), respectfully submits this Response to the *Monolines' Urgent Motion to Clarify Requirements of the Sealed Procedures' Order and the Amended Protective Order* [ECF 13513][2] ("the Motion").[3]

## PRELIMINARY STATEMENT

1.      AAFAF has requested redactions of only wet-ink signatures (not employees' identities) to mitigate the risk of fraud and/or identity theft associated with their widespread dissemination in connection with the public filing of account opening and financial documents approving transactions—redactions this Court has already approved.  The Monolines have filed a motion challenging this practice because they claim that following this Court's sealing procedures is unduly burdensome.  Their motion should be denied.

2.      At issue are roughly 40 documents the Monolines seek to attach as exhibits to their forthcoming oppositions to the summary judgment motions of the Financial Oversight and Management Board ("Oversight Board") in three separate adversary proceedings.  *See* Declaration of Robert Cámara-Fuertes ("Cámara-Fuertes Decl."), Ex. 1, at 5-6 (ECF 13513-1).   These documents consist primarily of account-opening materials, account statements (some with images of checks appended), and funds transmittal and transfer authorizations.  *Id.*  AAFAF disagrees with the Monolines' contention that filing documents under seal is onerous, but does not oppose their request for an order clarifying that leave from the Court is not required to file redacted documents

---

[2] Unless otherwise provided, references to "ECF" refer to docket entries in Case No. 17-3283 (D.P.R.).
[3] Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to them in the Amended Protective Order in the above-captioned proceedings, ECF 13513 ("Amended Protective Order") and the Motion.

if the parties do not intend to submit unredacted copies under seal for the Court's review.

3.      The Monolines' challenge to signature redactions this Court has already approved, and to which the Monolines did not previously object, is meritless and a waste of this Court's time. The Monolines argue that redaction of government employee wet-ink signatures on financial documents is inappropriate because 1) they have been able to locate some of these signatures after scouring public websites looking for the identified employees' signatures, 2) unredacted copies of these documents could be requested under Puerto Rico's public records law, 3) some courts require wet-ink signatures of counsel or witnesses on legal pleadings, and 4) the public has a generalized interest in unredacted signatures to hold the government accountable. The Monolines are missing the point. AAFAF never argued that the form of an employee's wet-ink signature is secret. Rather, the government determined that the widespread dissemination of account opening documents and other financial documents together with the form of the wet-ink signature of authorized signers posed a risk of fraud or identity theft, and therefore requested this Court's permission to redact those signatures. *See* ECF 13173. This Court agreed. ECF 13351. There is no reason to re-visit that decision. Moreover, the Monolines' accountability argument is equally unavailing where AAFAF has not sought to redact the employee's name or identity but merely the form of their wet-ink signature.

4.      The Monolines' contention that the obligation to request sealed treatment of signatures is overly burdensome is similarly erroneous. The Monolines contend that they did not take a position on AAFAF's original request to redact signatures because the burden was on AAFAF at the time to justify the request, but that the *Joint Standing Order on Sealing and Redacting* (June 10, 2020) (ECF 13396) ("Joint Standing Order") now places the burden on them to justify sealed treatment of the Government's documents. AAFAF does not read the Joint

Standing Order to place the burden on litigants to justify sealed treatment of their adversary's documents, nor would that reading be workable as a practical matter.  Rather, the order "reiterates" the process for filing documents under seal.  *Id.* at 1.  Accordingly, the Monolines would be required to do no more than inform the Court of AAFAF's confidentiality claim, and AAFAF would thereafter submit a statement justifying sealed treatment following issuance of an *Order Granting Motion to Seal for Limited Duration and for Supplemental Briefing*.  *See, e.g.*, ECF 13016 (motion to seal); ECF 13029 (order granting motion to seal for limited duration and for supplemental briefing); ECF 13173 (supplemental briefing); ECF 13351 (order on motion to seal).

5.       The Monolines' assertion that redacting signatures is too burdensome is meritless.  Putting aside that the procedural inconvenience of redacting documents is not an undue burden, an order disallowing signature redaction would not make any material difference, given all but four of the documents at issue (*see* Cámara-Fuertes Decl., Ex. 1, at 5-6) with wet-ink signatures also contain financial account numbers or other information the Monolines are already indisputably required to redact under Fed. R. Bankr. P. 9037(a).  The additional burden of redacting signatures alongside other required redactions is negligible.  Moreover, as explained below, the Monolines could avoid upwards of 97% of the redactions of which they complain by submitting excerpts of monthly account statements that omit images of checks appended to the statements.  *See infra* ¶ 16.

6.       Given this Court has already recognized the fraud risk that widespread dissemination of wet-ink signatures on financial documents would pose, and the Monolines cannot articulate any credible reason for it to reverse course, this Court's *Order on Motions to Seal* (ECF 13351) approving signature redactions should stand.

## ARGUMENT

**I.      AS THIS COURT HAS ALREADY RECOGNIZED, REDACTING WET-INK
SIGNATURES FROM GOVERNMENT FINANCIAL DOCUMENTS IS AN
APPROPRIATE MEANS TO MITIGATE FRAUD RISK.**

7.      AAFAF requests redaction of wet-ink signatures from the account statements,
transfer orders, account opening materials, and other similar financial documents the Monolines
intend to submit in connection with their forthcoming summary judgment opposition briefs in
order to mitigate against the forgery and fraud risks to the Government and its employees that
widespread dissemination of the signatures poses.

8.      This Court has broad discretion to grant AAFAF's requested relief.  11 U.S.C.
§ 107(c)(1) (incorporated by PROMESA § 301) (Court may prevent the disclosure of information
that "would create undue risk of identity theft"); *In re Khan*, 2013 WL 6645436, at *4 (B.A.P. 9th
Cir. Dec. 17, 2013) ("[Section] 107(c) gives the bankruptcy court broad discretion to protect an
individual facing the subject circumstances . . . the types of information that can be protected by
the court are unlimited."); *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 756
(D. Del. 2018) (what risk is "undue" is within the court's discretion).

9.      Courts have recognized that an individual's signature is unique information that, if
placed into the wrong hands, could lead to the theft of the individual's identity.  In *Korte v. Dollar
Tree Stores, Inc.*, the court permitted the protection of personally identifying information,
including signatures, finding that "sealing or redaction is obviously warranted," given that the
public exposure would "increase[] individuals' risk of identity theft," and the information "has no
relevance to the outcome of the lawsuit."  2013 WL 2604472, at *16.  In *United States v. Reyes-
Romero*,[4] the court redacted government employees' signatures from forms the court appended to

---

[4] Disapproved of on other grounds, 959 F.3d 80 (3d Cir. 2020).

its opinion, noting that "the publication of complete signatures could pose an identity theft issue

to those involved" and that "[t]he appearance of those signatures is not germane to the issues here."

327 F. Supp. 3d 855, 870 n.3 (W.D. Pa. 2018).  Similarly, in *United States v. Gatto*, the court found

the redaction of signatures to be "routine and non-controversial," given that "the identity of the

signor is disclosed" and "this is not the type of information" that the public would be interested in.

2019 WL 4194569, at *8 n.64 (S.D.N.Y. Sept. 3, 2019).[5]

      10.    This Court has previously agreed with this position, and already allowed redaction

of signatures from 17 of the 40 documents at issue here.  ECF 13351 (order on motion to seal).

Moreover, the Monolines did not oppose sealed treatment in their motion to seal, *see* ECF 13016,

¶ 5 (Monolines' motion to seal) ("Movants take no position on whether the information designated

by the Government Parties is in fact confidential or whether it should remain under seal."), did not

oppose AAFAF's supplemental briefing in support of sealed treatment, ECF 13173, and did not

object to this Court's order granting the motion to seal, ECF 13351.  The remaining 23 documents

are no different in kind from the original set, and there is no reason to treat them differently.

      11.    The Monolines, however, contend that this Court was wrong to recognize the risk

of identity theft attendant to widespread dissemination of wet-ink signatures on financial

documents.  Motion ¶ 3 ("AAFAF argues that publicly filing ink signatures exposes employees to

a risk of identity theft.  This assertion is meritless.").  The Monolines contend they should be

permitted to disseminate employee signatures because (a) some of the signatures at issue can be

located (in other contexts) on government websites or are potentially available through public

---

[5] *See also* Amanda Conley et. al., Sustaining Privacy and Open Justice in the Transition to Online Court Records: A
Multidisciplinary Inquiry, 71 Md. L. Rev. 772, 782–83 (2012) (noting that publicly exposing signatures "increases
the risk of identity theft"); Andy Opsahl, Government Technology (July 8, 2008), *available at*
https://www.govtech.com/security/Privacy-Agencies-Struggle-to-Redact-Personal.html (calling publicly exposed
signatures "red meat for identity thieves and stalkers").

records requests, and (b) that various court rules require wet-ink signatures of legal pleadings. Motion ¶¶ 11-17.[6]  The problem with these arguments is that they focus on whether or not ink signatures are ever made available—whereas the proper legal standard is whether, in light of the specific circumstances, disclosure of the information would create an undue risk.  *In re Motions*, 585 B.R. at 756.

12.     The Monolines' citation to *Cooperativa de Ahorro y Credito Abraham Rosa v. Public Corp. for the Supervision & Ins. of Cooperatives of P.R.*, 406 F. Supp. 3d 180, 187 (D.P.R. 2019), is wholly unpersuasive.  The *Cooperativa* case dealt with plaintiff-credit unions' attempt to seal their complaint and all subsequent filings in the case, claiming that public awareness of their insolvency could trigger a run on credit unions' deposits, and invoking § 107(b)'s provisions protecting from disclosure confidential commercial information and scandalous matter.  *See id.* at 185.  But unlike the protection of confidential information and scandalous matter under section 107(b), which is to be construed more narrowly, the mitigation of risk of identity theft under section 107(c) affords the court broad discretion to protect information.  *See In re Stone*, 587 B.R. 678, 682 (Bankr. S.D. Ohio 2018) ("Unlike Section 107(b), Section 107(c) gives the bankruptcy court broad discretion to protect an individual facing [identity theft]."); *In re Khan*, 2013 WL 6645436, at *4 ("The types of information that can be protected by the court [under § 107(c)] are unlimited.").

13.     As AAFAF explained in its previous motion supporting sealed treatment of wet-ink employee signatures (ECF 13173, ¶ 6), the widespread dissemination of wet-ink signatures on financial documents in high-profile bankruptcy cases poses an undue risk of identity theft.  This

---

[6] The Monolines also suggest that redaction of signatures is unjustified because AAFAF has not named a specific instance of resulting identity theft.  Motion ¶ 12.  AAFAF has no such obligation.  *See In re Motions*, 585 B.R. at 751 ("Section 107(c) references 'risk,' and assessment of risk is forward-looking. . . . [T]he standard does not require evidence of injury having occurred in the past or under similar circumstances.").

Court has already agreed, and, as explained below, the Monolines offer no credible justification for reversing course (ECF 13351, at 4).

## II.     THE MONOLINES' CLAIMED COUNTERVAILING INTERESTS ARE UNPERSUASIVE.

14.     The Monolines assert three countervailing interests to support their challenge to the redaction of employee wet-ink signatures: (1) that redacting signatures and filing sealing or redaction motions is burdensome, Motion ¶¶ 5, 8, (2) that the public has a general interest in seeing the signatures, *id.* ¶ 18 n.8, and (3) that the public has a specific interest in the signatures because they are pertinent to the merits of this case, *id.* All these assertions are unpersuasive.

15.     ***First***, "[t]he added administrative burden of filing the document[s] under seal . . . is not sufficient reason to alter [a] Protective Order." *Pittston Co. v. United States*, 2002 WL 32158052, at *3 (E.D. Va. Oct. 2, 2002), *aff'd*, 368 F.3d 385 (4th Cir. 2004). The Monolines contend that they did not object to AAFAF's original request to redact signatures because the burden was on AAFAF at the time to justify the request, but the Joint Standing Order now places that burden on them. Motion ¶ 19. But the Joint Standing Order did not change the standard for requesting sealed treatment; it simply "reiterate[d] the process" for filing documents under seal or with redactions. Joint Standing Order at 1. The Joint Standing Order should not be read to require the Government to entrust protection of documents and information it provided pursuant to a confidentiality agreement to its litigation adversaries.

16.     The Monolines' contention that simply too many redactions are required of them is similarly meritless. AAFAF has already redacted for public filing nearly half of the documents at issue—the Monolines could simply re-file those copies. In the 21 additional documents raised in the Motion (*see* Cámara-Fuertes Decl., Ex. 1, at 5-6), there are 640 individual signatures, 621 of which signatures appear on scanned images of checks compiled at the end of bank statements.

Given the image of the check has no relevance to the issues before the Court, the Monolines could

easily avoid over 97% of the redactions they claim are too burdensome by filing an excerpt of the

bank statements that omits the check images.  This would also relieve the Monolines of the equally

burdensome, but uncontestable, obligation to redact the full financial account numbers that appear

on those images.

17.     ***Second***, the Monolines claim that the public has a generalized interest in unredacted

signatures for the purpose of "identifying and making politically accountable the Commonwealth

officials and employees who approved transactions involving billions in dollars of Commonwealth

funds."  Motion ¶ 18 n.8.  While this argument could conceivably apply to the identity of an

employee (which AAFAF has not sought to redact), it does not apply to the form of an employee's

signature.  *See Gatto*, 2019 WL 4194569, at *8 n.64 (permitting redaction of signatures "where

the identity of the signor is disclosed"); *Hulstein v. Drug Enf't Admin.*, 671 F.3d 690, 696 (8th Cir.

2012) ("A citizen's right to be informed about their Government's actions is not fostered by

disclosure of information about private citizens that reveals little or nothing about an agency's own

conduct.").  The public has no interest in seeing an employee's personal information that is

immaterial to the merits of the case.  *See Korte*, 2013 WL 2604472, at *16; *Gatto*, 2019 WL

4194569, at *8 n.64; *Reyes-Romero*, 327 F. Supp. 3d at 870; *Boggs v. United States*, 143 Fed. Cl.

508, 520 (2019).  This assertion does not warrant the public release of signatures here, where the

government's interest in preventing widespread dissemination of only the wet-ink signature (as

opposed to the identity of the employee) as a fraud protection measure is especially important

because the employee signatures appear in account opening documents, checks, and other financial

documents authorizing transactions.

18.     ***Third***, the Monolines assert that the exposure of employee signatures is pertinent

to the merits of these proceedings.  *See* Motion ¶ 18 n.8 ("[T]he signatures are relevant because the parties have made legal arguments about which official signed documents approving transfers of funds; accordingly, the existence and form of the signatures are directly relevant to the public's understanding of the arguments . . . .").  This argument is inapposite as AAFAF has sought to redact only the form of the wet-ink signature, not the identity or institutional affiliation of the signer.  Moreover, the paragraphs the Monolines cite pertain to the parties' dispute about which entity (HTA or the Commonwealth) had ultimate authority to approve money transfers from the Commonwealth to HTA.  *See* ECF 13157, ¶¶ 5, 28 & n.46; ECF 13223, ¶ 10.  The parties do not dispute "which official" signed the relevant documents, but disagree as to the legal effect of that signature.

## CONCLUSION

19.    For the reasons stated above, the Motion's request to de-designate the confidentiality of government employee wet-ink signatures should be denied.  AAFAF consents to the Motion's request for relief to permit parties to file redactions without leave of Court when there is no sealed filing of an unredacted version.

*[Remainder of Page Intentionally Left Blank]*

Dated: July 6, 2020
San Juan, Puerto Rico

/s/ *Elizabeth L. McKeen*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com
**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 6, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

*<u>/s/ Luis C. Marini-Biaggi</u>*