Objection Deadline: July 14, 2020
Hearing Date: July 29, 2020

IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCING OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>COMMOMWEALTH OF PUERTO RICO,<br><br>Debtor. | |

**<u>MOTION OF SALUD INTEGRAL EN LA MONTAÑA, CORPORACIÓN DE SERVICIOS DE SALUD Y MEDICINA AVANZADA, NEOMED CENTER, MIGRANT HEALTH CENTER, HPM FOUNDATION, MOROVIS COMMUNITY HEALTH CENTER, AND CONCILIO DE SALUD INTEGRAL DE LOIZA FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM, OR IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................... 2

ARGUMENT .................................................................................................................................. 7

    I.    Enforcement of Stipulation ................................................................................................. 7

    II.    Relief from Stay ................................................................................................................ 10

CONCLUSION............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Cases**

*Asociación de Salud Primaria de Puerto Rico, Inc., et al. v. Estado Libre Asociado de Puerto Rico, et al.*, Civil No. KPE02-1037 (P.R. Ct. of 1st Instance, San Juan Div.) ............................ 3

*Atlantic Health Ctr., et al., v. Commonwealth of Puerto Rico, et al.*, Civil Action No. 06-1291-GAG (D.P.R.) ................................................................................................................................ 4

*Back v. AM Gen. Corp. (In re: Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y 1997) ............ 10

*Fernos-Lopez v. United States Dist. Court*, 599 F.2d 1087, 1091 (1st Cir. 1979) ......................... 9

*Gurabo Community Health Center, et. al. v. Hon. Rosa Perez-Perdomo*, Civil Action No. 06-1524 (D.P.R.) ............................................................................................................................. 4

*Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006) .......................... 10

*In re: Cordova Gonzalez*, 99 B.R. 188, 191 (Bankr. P.R. 1989) .................................................... 9

*In re: Dana Corp.*, 351 B.R. 96 (Bankr. S.D.N.Y. 2006) .............................................................. 11

*In re: Fin. Oversight & Mgmt. Bd. For P.R.,* Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) .. 12

*In re: Global Products, LLC*, 369 B.R. 778 (Bankr. Delaware 2007) .......................................... 11

*In re: N.Y. Med. Grp., P.C.*, 256 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) .................................... 12

*In re: Sonnax Indus. Inc.*, 907 F.2d 1280 (2d Cir. 1990) .............................................................. 11

*In re: Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993) ....................................................... 11, 12

*Municipality of San Juan v. Puerto Rico*, 919 F.3d 565 (1st Cir. 2019) ......................................... 6

*Río Grande Comm. Health Ctr., et al., v. Hon. Johnny Rullán*, Civil Action No. 03-1640-GAG (D.P.R.) ................................................................................................................................... 4

*Rio Grande Community Health Center, Inc., et al. v. Hon. Rafael Rodriguez Mercado, Secretary, Department of Health Commonwealth of Puerto Rico*, Case No. 03-1640 ............................... 4

*Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215 .......................................................... 11

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd., (In re: McLean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986) ........................................................................................................... 9

*Woburn Assocs. v. Kahn (In re: Hemmingway Transp.)*, 954 F.2d 1, 5 (1st Cir. 1992) ................ 8

Case:17-03283-LTS   Doc#:13582   Filed:07/07/20   Entered:07/07/20 19:41:13   Desc: Main
Document   Page 4 of 18

**Statutes**

11 U.S.C. § 105 ............................................................................................................................ 12

11 U.S.C. § 362(d)(1) ............................................................................................................. 5, 14

11 U.S.C. § 503(b)(1) ............................................................................................................. 5, 11

42 U.S.C. § 1396a(bb)(2) .............................................................................................................. 6

42 U.S.C. § 1396a(bb)(3) .............................................................................................................. 6

42 U.S.C. § 1396a(bb)(5) .......................................................................................................... 5, 7

42 U.S.C. § 1396a(bb). .................................................................................................................. 6

42 U.S.C. § 1396d(l)(2)(B). .......................................................................................................... 6

42 U.S.C. § 254b ........................................................................................................................... 6

42 U.S.C. 1396a(bb) ..................................................................................................................... 7

48 U.S.C. § 2161 ........................................................................................................................... 5

48 U.S.C. § 2161(a) ..................................................................................................................... 13

48 U.S.C. § 2165 ......................................................................................................................... 13

**Other Authorities**

H.R. REP. NO. 95-595 ................................................................................................................ 13

Salud Integral en la Montaña ("SIM"), Corporación de Servicios de Salud y Medicina Avanzada ("COSSMA"), NeoMed Center, Migrant Health Center, HPM Foundation (d/b/a HealthproMed), Morovis Community Health Center, and Concilio de Salud Integral de Loiza ("CSILO") ("Movants"), by and through the undersigned counsel, move this Court for an order pursuant to 11 U.S.C. § 503(b)(1) for the allowance of administrative claims, or in the alternative, for stay relief pursuant to 11 U.S.C. § 362(d)(1) of the United States Bankruptcy Code (the "Code"), made applicable to the above-captioned cases by Section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 ("PROMESA"), 48 U.S.C. § 2161. In support of this motion, Movants state the following:

**PRELIMINARY STATEMENT**

By stipulation entered in connection with that certain *Eleventh Omnibus Order Granting Relief from the Automatic Stay* dated August 19, 2019 (Docket # 8499), the Commonwealth of Puerto Rico (the "Commonwealth" or "Debtor") agreed with Movants to begin making estimated quarterly payments required under 42 U.S.C. § 1396a(bb)(5) using the parties' previously agreed-upon payment formula and applying newly set rates set forth in that stipulation. The modified payments were to be effective beginning with the quarterly payment due for the first quarter of 2019. Attached as Exhibit 1 hereto is a copy of the fully executed stipulation. The Commonwealth failed to comply with the stipulation for payments due for calendar year 2019. Employing a unilaterally imposed modification to the calculation of amounts due, the Commonwealth reduced payments otherwise due to Movants for the period of January 1, 2019 to December 31, 2019 by $11,699,116.70 in the aggregate. Attached as Exhibit 3 hereto is a spreadsheet received from the Commonwealth demonstrating the modified calculations.

1

Further, the Federal Oversight and Management Board ("FOMB"), for and on behalf of the Commonwealth has already entered into a Stipulation providing for the payment of similar claims asserted by similarly situated FQHCs and is required to make payment of same no later than July 13, 2020. *See* Docket No. 13279. There is no rational basis for treating similarly situated FQHCs in disparate manners.

## FACTUAL AND PROCEDURAL BACKGROUND

Each of the Movants is designated as a "community health center" within the meaning of Section 330 of the Public Health Service Act ("PHS Act"), codified at 42 U.S.C. § 254b. As such, each Movant is charged with providing primary health care services to residents of the Commonwealth who are indigent, uninsured, under-insured, and/or otherwise medically under-served.

The Section 330 PHS Act designation also means that each Movant is a "Federally-qualified Health Center" ("FQHC") within the meaning of Title XIX of the Social Security Act. *See* 42 U.S.C. § 1396d(l)(2)(B). In exchange for the services it renders to the Puerto Rico Medicaid population as an FQHC, each Movant is entitled to receive payment representing an approximation of its total cost of services on a per visit basis. *See* 42 U.S.C. § 1396a(bb).

Section 1396a(bb) requires that jurisdictions participating in Medicaid pay FQHCs for their Medicaid services according to a "prospective payment system" ("PPS") using a per-visit rate calculated by dividing total allowable costs by total visits during a relevant time period. *See* 42 U.S.C. § 1396a(bb)(2). Federal law further requires a State's prospective payment system to account for changes in the scope – *i.e.*, type, duration, intensity, or amount – of services that an FQHC provides during a particular fiscal year. 42 U.S.C. § 1396a(bb)(3).

2

In those jurisdictions implementing their Medicaid programs under a managed care model, an FQHC is entitled to supplemental payments – also known as "wraparound" payments – from the State to cover the difference, if any, between the amount the FQHC receives from a managed care organization ("MCO") and the FQHC's total Medicaid costs based on its PPS rate multiplied by Medicaid visits. *See* 42 U.S.C. § 1396a(bb)(5). The Commonwealth of Puerto Rico is one such jurisdiction.

Movants, together with several other Puerto Rico FQHCs, filed suit against the Commonwealth of Puerto Rico in both Puerto Rico Commonwealth court and in federal court alleging that the Commonwealth had failed to meet its wraparound payment obligations under 42 U.S.C. 1396a(bb).

Movants filed their initial complaint in 2002 in the Court of First Instance for San Juan styled *Asociación de Salud Primaria de Puerto Rico, Inc., et al. v. Estado Libre Asociado de Puerto Rico, et al.*, Civil No. KPE02-1037 (P.R. Ct. of 1st Instance, San Juan Div.) (the "State Action"). That lawsuit sought to recover amounts due, owing and unpaid to Movants in connection with the delivery of Medicaid services for the period between 1997 and 2002. For reasons set forth below, the State Action now covers the period between 1997 and 2010.

In 2003 and 2006, Movants and others filed suit in the United States District Court for the District of Puerto Rico seeking injunctive relief requiring the Commonwealth to make all future payments in strict accordance with applicable federal law.[2] That matter is styled *Rio Grande*

---

[2] Movants CSILO and HealthproMed filed suit in 2003 in *Río Grande Comm. Health Ctr., et al., v. Hon. Johnny Rullán*, Civil Action No. 03-1640-GAG (D.P.R.), while the remaining Movants filed suit in 2006 in either *Atlantic Health Ctr., et al., v. Commonwealth of Puerto Rico, et al.*, Civil Action No. 06-1291-GAG (D.P.R.) or *Gurabo Community Health Center, et. al. v. Hon. Rosa Perez-Perdomo*, Civil Action No. 06-1524 (D.P.R.).

3

*Community Health Center, Inc., et al. v. Hon. Rafael Rodriguez Mercado, Secretary, Department of Health Commonwealth of Puerto Rico*, Case No. 03-1640 (Consolidated with Case Nos. 06-1291, 06-1524), in the United States District Court for the District of Puerto Rico (the "Federal Action").[3]

The District Court determined in January 2009 that the Commonwealth was not in compliance with its statutory payment obligations to Movants and that Movants had otherwise satisfied the criteria for preliminary injunctive relief. *See generally* R. 180 (Civil Action No. 06-1260). The court ultimately concluded that Movants were entitled to the relief they requested and entered a preliminary injunction on November 8, 2010. That order requires the Commonwealth to pay the wraparound amounts due to Movants on a quarterly basis. In order to ensure that Movants receive payments in a timely manner, the court directed the Commonwealth to make interim payments calculated using a set formula, which would then be subject to later reconciliation. *See id.*; *see also* R. 809 (Civil Action No. 06-1260), R. 812 (Civil Action No. 06-1260). Such reconciliation would be based on actual Medicaid visits and MCO payment data for the period subject to reconciliation.

Against this backdrop, Movants have continuously provided critical services to medically-needy individuals and families in Puerto Rico. The services and outreach of the FQHCs are not limited to day-to-day primary health care. During Hurricane Maria, the FQHCs, including Movants, remained open and were the chief providers of health services throughout the island for weeks (if not months) following the storm. Similarly, the responsibility for providing primary

---

[3] Note that all of the cases in the District Court (Case Nos. 03-1640, 06-1291, and 06-1524) were consolidated under the lead case 06-1260 from 2008 until 2015, at which point the trial judge severed 06-1260 as the sole plaintiff in that matter had reached a settlement with the Commonwealth. The lead case post-severance is 03-1640.

4

health care to the population left homeless by the earthquakes in southern Puerto Rico has fallen largely if not exclusively to the FQHCs, including Movants. This is on top of the increased demand for Movants' services in the wake of Hurricane Maria. Further, Movants are the "tip of the spear" in the Puerto Rico response to the COVID-19 contagion by serving as the central testing locations for the communities in which they operate.

Notwithstanding almost twenty years of disputes over the reimbursement of Medicaid expenses incurred, the FQHCs, specifically including Movants, have conscientiously and continuously performed their ethical and statutory duty to provide medical services to the indigent, underserved and most vulnerable residents of Puerto Rico.

On March 19, 2019, the court in the Federal Action entered an order adopting the agreement between Movants and the Commonwealth regarding each Movant's payment rates applicable to the Medicaid wraparound payments beginning January 1, 2019. *See* D. 1195 in 03-1640. Whether such rates would be applicable to periods prior to January 1, 2019 is a question that remains unresolved and is currently pending before the United States Court of Appeals for the First Circuit in Appeal Nos. 17-1731 and 19-1336.

On March 21, 2019, the First Circuit Court of Appeals rendered its opinion in *Municipality of San Juan v. Puerto Rico*, 919 F.3d 565 (1st Cir. 2019), holding that the automatic stay under PROMESA applied to the Federal Action. Following the issuance of the mandate in that appeal, the parties set about negotiating a stipulation partially to lift the stay "to the limited extent necessary to allow . . . the pending appeals before the United States Court of Appeals for the First Circuit in Appeal Nos. 17-1731, 17-1812, and 19-1336 to proceed to judgment," and to continue periodic payments to Movants calculated "using the Parties' previously agreed upon estimated payment formula and according to the District Court's previous orders in the Prepetition Action

5

construing the Commonwealth's obligations under 42 U.S.C. § 1396a(bb)," and based on Movants' updated rates. *See* Exhibit 1 at 3-4. The parties executed the stipulation on July 29, 2019, and the Court entered that stipulation by order dated August 19, 2019 (Docket #8499).

Commencing with the first calendar quarter of 2019, the Commonwealth made payments in amounts greater than in previous quarters. The Commonwealth deposited further quarterly payments with the court in the Federal Action on July 17, 2019 (covering Q.2 2019), October 17, 2019 (covering Q.3 2019), and January 17, 2020 (covering Q.4 2019).

The amounts paid for each of these quarters, however, fell short of what the parties' agreed-upon formula and updated rates should have yielded. Upon receipt of the automatic electronic notice of the October 17, 2019 deposit, Movants requested that the Commonwealth provide both a plaintiff-by-plaintiff breakdown of the amount deposited, as well as the calculations underlying the deposit with the court. Movants requested the latter specifically "in order to determine whether the payments are consistent with the terms of the lift stay stipulations filed with the Title III court."

By e-mail dated November 13, 2019, the Commonwealth provided a spreadsheet clearly demonstrating that the Commonwealth had failed to comply with the terms of the lift stay stipulation. *See* Exhibit 2; *see also* Exhibit 3. The Commonwealth included in its calculations a factor not contemplated in the parties' agreements and/or prior court orders that artificially reduces Movants' quarterly payments. Rather than simply apply the updated rates to the parties' formula, the Commonwealth averaged the calculations under the stipulation with the amounts paid in earlier calendar quarters based on Movants' unadjusted rates. As a consequence, the payments issued to Movants for 2019 were materially less than what would have resulted from adherence to the stipulation.

6

Based upon the Commonwealth's own numbers, underpayments attributable to Movants as the direct result of the implementation of the averaging method during calendar 2019 aggregates to $11,699,116.70 (the "Shortfall"):

| | |
|---|---|
| HealthproMed | $665,967.63 |
| COSSMA | $626,604.18 |
| NeoMed | $492,036.88 |
| CSILO | $1,601,106.54 |
| Migrant | $759,207.99 |
| SIM | $7,327,425.85 |
| Morovis | $226,767.67 |
| **Total for All Movants:** | **$11,699,116.70** |

On May 30, 2020, FOMB, for and on behalf of the Commonwealth, entered a Stipulation for the payment of shortfall amounts due for the calendar year 2019 to similarly situated FQHCs, all of whom are also parties plaintiff to the Federal Action. *See Docket #13279*.

## ARGUMENT

### I.  Enforcement of Stipulation

Medicaid wraparound payments due to Movants for calendar 2019 fall clearly into the category of administrative claims under 11 U.S.C. § 503(b)(1)(A). This Code section has been described as a means of enabling the debtor estate to acquire the requisite post-petition credit with which to preserve itself after the filing of the petition. Preservation of the estate includes protection of the assets of the estate, as well as post-petition operation of the business of the debtor. *Woburn Assocs. v. Kahn (In re: Hemmingway Transp.)*, 954 F.2d 1, 5 (1st Cir. 1992).

There can be no serious dispute but that the services rendered by Movants are post-petition services as they were performed entirely in calendar 2019. Neither can there be any serious dispute that the services performed were part of the post-petition continuation of the "business of the

7

debtor." Similarly, the obligation of the Commonwealth to make payment for the services so rendered likewise accrued post-petition. Although the obligations of the Commonwealth to make appropriate payments are statutory, the precise scope and nature of those obligations could be and have been the subject of decades of dispute. Happily, the Court does not need to plumb the depths of that dispute in order to reach a swift conclusion in this matter. There is a post-petition written contract, fully executed by the parties and enshrined in an Order of this Court that defines precisely what the Commonwealth must do to meet its statutory obligations for calendar 2019.

Under the stipulation, there is no provision that requires or even allows the amounts due to be averaged with anything. Rather, the stipulation specifically requires prospective payments to be calculated:

> pursuant to the Order, dated June 5, 2015, in the Prepetition Action [Case No. 03-1640-GAG, ECF No. 647] and the Order dated November 8, 2010 in the Prepetition Action [former Lead Case No. 16-1260-GAG, ECF No. 743], using the Parties' previously agreed upon estimated payment formula and according to the District Court's previous orders in the Prepetition Action construing the Commonwealth's obligations under 42 U.S.C §1396a(bb), adjusted with the newly set rates listed in Exhibit A attached hereto . . . .

*See* Exhibit 1 at 4.

Movants assert that neither the stipulation, nor any of the orders, laws, agreements, or understandings referenced therein provide any precedent for "averaging" wraparound payments. Movants are confident that if pressed for the authority under which it implemented the averaging scheme, the Commonwealth will produce none.

This Court has the inherent authority to enforce its own orders. *See Fernos-Lopez v. United States Dist. Court*, 599 F.2d 1087, 1091 (1st Cir. 1979); *In re: Cordova Gonzalez*, 99 B.R. 188, 191 (Bankr. P.R. 1989); *U.S. Lines, Inc. v. GAC Marine Fuels, Ltd., (In re: McLean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986). This fundamental power is codified in 11 U.S.C. § 105

and incorporated into PROMESA by 48 U.S.C. § 2161(a). *Cf. Back v. AM Gen. Corp. (In re: Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y 1997) (discussing Bankruptcy Code Section 105 and noting the bankruptcy court's inherent power to enforce its own orders).

To the extent that 48 U.S.C. § 2165 (Limitation on Jurisdiction and Powers of Court) may enter the analysis regarding this Court's power to enforce the stipulation approved by the Eleventh Omnibus Order and Stipulation (Docket No. 8499), it must be noted that the consent of the Financial Oversight and Management Board should be inferred from its sponsorship of the Motion for Approval of same (Docket No. 8435).

Finally, FOMB, on behalf of the Commonwealth, has already agreed to make payment to other, similarly situated FQHC claimants, all of whom are also parties plaintiff to the Federal Action. *See* Docket No. 13279. Movants attempted to get a similar treatment from the Commonwealth but were ignored. This type of discrimination cannot stand. The Supreme Court, in *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006), stated:

> In holding that claims for workers' compensation insurance premiums do not qualify for §507(a)(5) priority, we are mindful that the Bankruptcy Code aims, in the main, to secure equal distribution among creditors. See *Kothe* v. *R. C. Taylor Trust,* 280 U. S. 224, 227 (1930); *Kuehner* v. *Irving Trust Co.,* 299 U. S. 445, 451 (1937). We take into account, as well, the complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress. See *Nathanson* v. *NLRB,* 344 U. S. 25, 29 (1952); *United States* v. *Embassy Restaurant, Inc.,* 359 U. S. 29, 31 (1959).

In the same vein, *Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219 (1941) noted "the theme of the Bankruptcy Act is equality of distribution." *See also* H.R. REP. NO. 95-595, at 177–78 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6138. We can see this same theme in cases interpreting Sec. 503(c) of the Code. In the case of *In re: Global Products, LLC*, 369 B.R. 778 (Bankr. Delaware 2007), the court analyzed whether the plan proposed discriminated unfairly.

9

*See also In re: Dana Corp.*, 351 B.R. 96 (Bankr. S.D.N.Y. 2006). Hence, this discrimination cannot stand.

## II. Relief from Stay

In the event that the Court concludes that it does not have the power or jurisdiction to order the Commonwealth's compliance with the Stipulation, the Movants are forced to seek alternative relief in the form of Stay Relief "for cause" pursuant to 11 U.S.C. § 362(d)(1).

"Cause" is not defined in the Bankruptcy Code. *See, e.g. In re: Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993). However, as this Court has recognized, the factors used in the District of Puerto Rico to determine whether cause exists for lifting the stay are those enumerated in *In re: Sonnax Indus. Inc.*, 907 F.2d 1280 (2d Cir. 1990). *See* Memorandum and Order at 2. *In re: Fin. Oversight & Mgmt. Bd. For P.R.,* Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) [Dkt. No. 600]; *see also Unanue-Casual*, 159 B.R. at 95-96 (analyzing the *Curtis* factors, which are adopted in *Sonnax*). "Not all of the [*Sonnax*] factors are relevant in every case and the court need not assign equal weight to each factor." *In re: N.Y. Med. Grp., P.C.*, 256 B.R. 408, 413 (Bankr. S.D.N.Y. 2001). "Generally, courts have relied only on a few factors . . . to determine that sufficient cause existed to lift the stay." *Unanue-Casual*, 159 B.R. at 96.

The *Sonnax* factors that are applicable here are: (1) "whether relief would result in a partial or complete resolution of the issues;" (2) the "lack of any connection with or interference with the bankruptcy case;" (3) "whether the parties are ready for trial in the other proceeding;" (4) "the interests of judicial economy and the expeditious and economical resolution of litigation;" and (5) the "impact of the stay on the parties and the balance of harms." *Sonnax*, 907 F.2d at 1286.

Considering the circumstances under which the *Sonnax* factors would come under scrutiny, the question presented is relatively simple – Are the post-petition obligations of the

10

Commonwealth enforceable, and if so, by whom? Assuming this Court determines that it is without the power to order the performance of the Commonwealth's post-petition obligations, the *only* means by which the issue can be resolved is by recourse to a forum that unquestionably has the jurisdiction and authority to compel the Commonwealth's compliance with not only its voluntary post-petition agreement, but also with applicable non-PROMESA federal law. As the issue in this instance is a relatively narrow one, any court of competent jurisdiction can easily resolve the matter completely. Thus, the first of the relevant *Sonnax* factors is resolved in favor of Movants.

The *Sonnax* factor requiring examination of the "connection with or interference with" these proceedings does not really apply under these circumstances. However, with respect to that factor, Movants assert that proceedings under Title III of PROMESA are directed to the adjustment and resolution of the pre-petition debts and obligations of the Commonwealth. By contrast, what Movants seek here is the enforcement of the Commonwealth's voluntarily acknowledged post-petition obligations to them. To request that a court of competent jurisdiction enforce those post-petition obligations is not connected to the adjustment and resolution of the Commonwealth's pre-petition debts, nor can it possibly interfere with the process of doing so. Accordingly, to the extent is can be seen to apply at all, the second relevant *Sonnax* factor is resolved in favor of Movants.

As to whether the parties are ready for trial in the other proceeding, the answer is "No," because there will be no trial. If the analysis has gotten this far, this Court will have already decided that it cannot enter an order requiring the Commonwealth to comply with its post-petition obligations. Therefore, the only remaining issue is finding a court of competent jurisdiction that can do so. To the best of Movants' collective knowledge, there is no legitimate question about the meaning of the terms of the Stipulation or the circumstances under which it was executed and

11

subsequently approved by this Court under the Eleventh Omnibus Order and Stipulation (Docket No. 8499). There are no facts to be found, nor law to interpret. There is no need for either of the parties to expend substantial resources in effecting the remedy sought by Movants. Accordingly, the third relevant *Sonnax* factor is resolved in favor of Movants.

The interests of judicial economy and the expeditious and economical resolution of litigation would best be served by this Court allowing Movants' administrative expense claims and ordering them paid with all deliberate speed. Failing that, however, the most efficient and expeditious recourse, indeed the *only* recourse, is to the United States District Court for the District of Puerto Rico, where the Federal Action is already pending. Accordingly, the fourth relevant *Sonnax* factor is resolved in favor of Movants.

Finally, there is the question of "the balance of the harms." Again, the question here is whether the Commonwealth shall be permitted to renege on its acknowledged post-petition obligations to Movants as memorialized and solemnified in the Eleventh Omnibus Order and Stipulation (Docket No. 8499). Can requiring the Commonwealth to honor its obligations be classified as a "harm" to it? If so, can it even compare to the potential harm done to Movants, all of which are FQHCs continuing to serve and deliver health care services to the indigent and most vulnerable residents of the Commonwealth? Clearly not, because the harm inflicted by the Commonwealth's non-performance is not primarily upon the FQHCs (although there is pain enough there as well) but on their constituents whom the FQHCs serve on behalf of the Commonwealth. Accordingly, the fifth relevant *Sonnax* factor is resolved in favor of Movants.

## CONCLUSION

For the reasons set forth herein, the Court should allow Movants' claims for administrative expenses for their services provided post-petition and/or lift the automatic stay of litigation and

remand to the District Court in the Federal Action for enforcement of the Commonwealth's payment obligations to Movants.

Respectfully submitted,

Date: July 7, 2020

/s/ Iyen A. Acosta
Iyen Acosta*
Reno & Cavanaugh, PLLC
455 Massachusetts Avenue, N.W.
Suite 400
Washington, DC 20001
Tel: (202) 349-2470
E-mail: iacosta@renocavanaugh.com

Thomas Pennington*
Reno & Cavanaugh, PLLC
24 Church Street, Suite 2910
Nashville, TN 37219
Tel: (615) 866-2322
E-mail: tpennington@renocavanaugh.com

/s/ María Celeste Rodríguez Miranda
María Celeste Rodríguez Miranda
D.P.R. Bar No. 213113
Bufete Rodríguez Miranda, C.S.P.
P.O. Box 365072
San Juan, PR 00936-5072
Tel: (787) 408-0808
E-mail: mcrm100@msn.com

*Admitted *pro hac vice*

Counsel for Movants

/s/ John E. Mudd
John E. Mudd
Bar Number: 201102
LAW OFFICES JOHN E. MUDD
P. O. BOX 194134
SAN JUAN, P.R. 00919
Tel: (787) 413-1673
Fax. (787) 753-2202
E-mail: johnmuddlaw@gmail.com

Counsel for Movant SIM

13

**CERTIFICATION OF COMPLIANCE WITH CASE MANAGEMENT PROCEDURES**

I HEREBY CERTIFY: that this Motion is in full compliance with the Lift Stay Protocol in paragraph III(R) of the Case Management Order entered in these Title III Cases.

Specifically, on November 15, 2019, the Movants provided notice to counsel for the Oversight Board and AAFAF of its intention to seek relief from the automatic stay to file. Thereafter, the parties met and conferred and attempted to resolve the Movants' request for relief from the automatic stay. As demonstrated in the exhibits attached hereto, these communications were reasonable and were made in good faith. Despite the Movants' attempts to resolve the dispute through discussions with the Commonwealth, the parties were unable to reach a resolution.

Respectfully submitted,

Date: July 7, 2020

/s/ Iyen A. Acosta
Iyen Acosta*

*Admitted *pro hac vice*