**Objection Deadline**: July 14, 2020, 4:00pm AST
**Hearing Date**: July 29, 2020, 9:30am AST

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

## PREPA'S MOTION FOR ENTRY OF AN ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR COMPENSATION FOR FRONT-END TRANSITION SERVICES UNDER PUERTO RICO TRANSMISSION AND DISTRIBUTION SYSTEM OPERATION AND MAINTENANCE AGREEMENT WITH LUMA ENERGY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 2

JURISDICTION AND VENUE ............................................................................................... 5

BACKGROUND .................................................................................................................... 6

    A.    PREPA Operations and Management ..................................................... 6

    B.    Overview of the T&D Transformation Process ...................................... 7

    C.    The Selection Process ........................................................................... 9

    D.    The Contract Approval Process .............................................................. 9

    E.    LUMA Energy's Services Under T&D Contract .................................. 11

    F.    Front-End Transition ............................................................................ 12

RELIEF REQUESTED .......................................................................................................... 17

BASIS FOR RELIEF ........................................................................................................... 17

NOTICE ................................................................................................................................ 21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 1701 Commerce, LLC*,
   No. 12-41748-DML-11, 2014 WL 4657314 (Bankr. N.D. Tex. Sept. 17, 2014) ...................18

*In re Craig Cty. Hosp. Auth.*,
   572 B.R. 340 (Bankr. N.D. Okla. 2017) .........................................................................19, 20

*In re Jeans.com*,
   491 B.R. 16 (Bankr. D.P.R. 2013) ..................................................................................17, 18

*In re Mammoth Mart, Inc.*,
   536 F.2d 950 (1st Cir. 1976) .................................................................................................17

STATUTES

48 U.S.C. §§ 2101-2241 ....................................................................................................................1

11 U.S.C. § 105(a) .....................................................................................................................1, 17

11 U.S.C. § 503 ..............................................................................................................1, 5, 6, 17

11 U.S.C. § 503(b) ...........................................................................................................................21

11 U.S.C. § 503(b)(1)(A) ..........................................................................................................17, 19

11 U.S.C. § 507(a)(2) .......................................................................................................1, 5, 6, 17, 21

PROMESA § 204(b)(2) ..................................................................................................................10

PROMESA § 301 ............................................................................................................................17

PROMESA § 301(a) ...............................................................................................................1, 5, 6

PROMESA § 304(a) ..........................................................................................................................6

PROMESA § 306(a) ..........................................................................................................................5

PROMESA § 307(a) ..........................................................................................................................5

PROMESA § 310 ..............................................................................................................................5

PROMESA § 314(b)(4) .....................................................................................................................6

Puerto Rico Electric Power System Transformation Act,
    Act No. 120-2018,...........................................................................................................................2

Puerto Rico Private-Public Partnerships Act,
    Act No. 29-2009....................................................................................................................1, 3

Puerto Rico Energy Public Policy Act,
    Act No. 17-2019.................................................................................................................2, 3, 8

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (PREPA, the Oversight Board and AAFAF are referred to collectively as the "Government Parties"), respectfully submit this joint motion (the "Motion"), pursuant to sections 105(a), 503 and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this case pursuant to PROMESA section 301(a), for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**: (a) allowing an administrative claim in favor of LUMA Energy, LLC and LUMA Energy ServCo, LLC (collectively, "LUMA Energy") for any accrued and unpaid Front-End Transition Obligations (defined below) that are due or become due from PREPA under that certain Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement, dated June 22, 2020, entered into by and among PREPA, the Puerto Rico Public-Private Partnerships Authority (the "P3 Authority"), and LUMA Energy, as approved by the Oversight Board and the Government of Puerto Rico pursuant to the procedures set forth in the Puerto Rico Private-Public Partnerships Act, Act No. 29-2009 (as amended, "Act 29-2009"), as supplemented (the "T&D Contract"[3]), a copy of which is attached hereto as **Exhibit B** to the *Declaration of Omar J. Marrero* (the "Marrero Declaration" or "Marrero Decl.") filed contemporaneously herewith; and (b)

---

[2]    PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]    The term "T&D Contract" as used in this Motion includes this supplemental agreement dated June 22, 2020, entered into by and among PREPA, the P3 Authority, and LUMA Energy, which is also included as part of Exhibit B to the Marrero Declaration.

providing any additional relief required to effectuate the foregoing. In support of this Motion, the Government Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Government of Puerto Rico and the Oversight Board have determined that a complete transformation of Puerto Rico's energy system is necessary to deliver the safe, reliable, and affordable energy service that the people and businesses of Puerto Rico deserve. *See* Puerto Rico Electric Power System Transformation Act, Act No. 120-2018 ("Act 120-2018"), Statement of Motives; 2020 Fiscal Plan for the Puerto Rico Electric Power Authority (Jun. 29, 2020) ("PREPA 2020 Fiscal Plan");[4] *see also* Puerto Rico Energy Public Policy Act, Act 17-2019 (requiring the unbundling of the electric system through the transfer of operation and maintenance responsibilities of PREPA's transmission, distribution and generation assets to private operators). Transitioning the operation of PREPA's aging and outdated Transmission and Distribution System (the "T&D System") to a qualified and experienced private operator is widely acknowledged as key to the success of PREPA's Transformation.

2.      To that end, the Government of Puerto Rico has secured a contract with LUMA Energy, formed by a superbly qualified consortium of industry-leading companies to work with PREPA to revitalize Puerto Rico's T&D System and ultimately assume its operations.  This agreement is the culmination of two years of collective efforts by the P3 Authority, PREPA, AAFAF and the Oversight Board.  The T&D Contract has been separately reviewed and approved by the Oversight Board, the P3 Authority, PREPA, the Puerto Rico Energy Bureau ("PREB"),

---

[4]    *Available at* https://drive.google.com/file/d/1paRgy0dJBkUH4-5eev7z2SuR0diil8g9/view

PREPA's independent regulator, and the Government of Puerto Rico pursuant to the procedures set forth in Act 29-2009.

3.       Under the T&D Contract, LUMA Energy will ultimately assume responsibility for day-to-day operations of the T&D System, including executing the T&D System modernization and assisting with the deployment of related federal funding.  LUMA Energy's overall objective will be to address and correct many of the operational and infrastructure deficiencies that have hampered PREPA's operations over the last decades in order to improve service quality and deliver safe, reliable energy service at affordable prices.  *See* PREPA 2020 Fiscal Plan at 30.

4.       The T&D Contract requires confirmation that any accrued and unpaid Front-End Transition Obligations have administrative expense priority as a condition to LUMA Energy agreeing to begin the Front-End Transition Services, under which LUMA Energy will provide the necessary, substantial investment of time, expertise, and resources in PREPA to transform the T&D System.  The Front-End Transition Services—which include, among other things, mobilizing LUMA Energy's transition team, developing and transitioning information technology systems, transitioning management, mobilizing employees, establishing benefit plans for employees of LUMA Energy, developing a system remediation plan (as defined in the T&D Contract), developing initial operating and capital budgets, preparing take over plans for  all aspects of PREPA T&D, including customer service operations, billing and other financial management functions, preparing to manage federal funding (including preparation of a Federal Funding Procurement Manual), increasing emergency response preparedness, preparing the legally mandated separation of generation and T&D operations[5] (including completion of the GenCo

---

[5]     *See* Puerto Rico Energy Policy Act, Act No. 17-2019, § 1.8.

3

Shared Services Agreement), preparing various plans and manuals (including but not limited to emergency response plan, non-federal funding procurement plan, physical security plan, data security plan, vegetation management plan, and system operation principles) and assessing the fuel and power supply chain—are essential to facilitate the transfer of operation and maintenance of the T&D system. *See* Ex. B, Annex II.

5.      While PREPA intends to satisfy its obligations under the T&D Contract on a timely basis and in the ordinary course, the Government Parties seek an order granting to LUMA Energy an allowed administrative expense claim for any accrued, due, and unpaid Front-End Transition Obligations.  The T&D Contract requires payment of the Front-End Transition Obligations in exchange for LUMA Energy's performance of Front-End Transition Services that are required to set the groundwork for modernization of the power grid and allow LUMA Energy to assume control over the operation and maintenance of the T&D System. Without these Front-End Transition Services, PREPA and its stakeholders cannot realize the benefits of the T&D Contract, which is a key component in PREPA's ongoing transformation.  LUMA estimates that the total potential Front-End Transition Obligations, and therefore the maximum that could be allowed as an administrative expense claim, will be approximately $136,351,930, of which approximately $59,374,000[6] has been deposited in a reserve account at PREPA from which the Front-End Transition Obligations will be paid and which will be replenished in the ordinary course of PREPA's business.

6.      The T&D Contract is a critical step in transforming Puerto Rico's energy sector and modernizing its power grid.  A more efficient and cost-effective PREPA will not only be important

---

[6] This amount was calculated pursuant to section 4.6(c) of the T&D Contract, which requires PREPA to fund 4.5 months of the Front-End Transition Service Fee in advance into a designated account upon the execution of the agreement.

for the Commonwealth's macro-economic stability, but will also support PREPA's restructuring and exit from Title III.  By incurring the Front-End Transition Obligations, PREPA is able to obtain the substantial benefits of the T&D Contract.  In addition, as stated, the Front-End Transition Services confer additional benefits to PREPA beyond the mere transition of operations.  These benefits include, among others, identifying and implementing cost-savings measures, improving the fuel supply chain, and supporting privatization efforts for PREPA's generation assets.  *See* Marrero Decl. ¶¶ 17-23.  Further, LUMA Energy has identified several opportunities that will benefit PREPA early in the contract term, including assisting PREPA with applications for FEMA Funding, reviewing and executing emergency response drills and plans, breaking ground on a new lineworkers college at its own expense, and improving grid reliability and customer service.  *Id.* ¶ 23.

7.      For these reasons, and as explained more fully below, the Government Parties respectfully request that this Court enter an order, substantially in the form of Exhibit A allowing an administrative expense claim in favor of LUMA Energy.

## JURISDICTION AND VENUE

8.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Motion pursuant to PROMESA section 306(a).

9.      Venue is proper in this district pursuant to PROMESA section 307(a).

10.     The statutory predicates for the relief sought herein are section 503 and 507(a)(2) of the Bankruptcy Code, made applicable to this case by PROMESA sections 301(a) and 310, respectively.

## BACKGROUND[7]

11.     On July 2, 2017, the Oversight Board filed a voluntary petition for relief for PREPA

pursuant to section 304(a) of PROMESA, commencing a case under Title III thereof (the "Title III

Case").

12.     PROMESA section 301(a) incorporates sections 503 and 507(a)(2) of the

Bankruptcy Code, which provide for the allowance of administrative expenses that are given

priority over other unsecured claims in a Title III case.  PROMESA section 314(b)(4) further

provides that administrative expenses are required to be paid upon the effective date of a plan of

adjustment unless the claimholder agrees to different treatment.

### A.  *PREPA Operations and Management*

13.     Throughout its history, PREPA has operated as a government instrumentality and

vertically integrated monopoly.  Since 1981, PREPA has been the sole energy distribution service

provider in Puerto Rico. PREPA currently serves approximately 1.5 million customers, (91%

residential, 9% commercial, and <1% industrial). PREPA 2020 Fiscal Plan § 2.6. PREPA serves

its clients through the extensive T&D System with approximately 2,700 miles of transmission and

sub-transmission lines, over 32,000 miles of primary and secondary voltage distribution lines, and

roughly 340 utility-owned substations.  *Id*. § 2.4.  Electricity is supplied by PREPA-owned

generation plants and also procured from independent power producers under power purchase

agreements. *Id.* § 2.5.

---

[7]   The Government Parties are only seeking allowance of an administrative expense claim for the Front-End
Transition Obligations, not approval of the T&D Contract from the Title III Court as no such approval is required
under PROMESA (or under the T&D Contract).  Similarly, the process through which LUMA Energy was selected
as the winning bidder and information regarding approval of the T&D Contract by the Oversight Board, the P3
Authority, PREPA, PREB, and the Government of Puerto Rico pursuant to Puerto Rico law are set forth herein to
provide the Court with background information.  A more detailed recitation of the process is available in the
Partnership Committee Report attached as Exhibit A to the Marrero Declaration.

6

14.     PREPA has historically faced operational, strategic and financial challenges. Marrero Decl. ¶ 9.  The cumulative effect of these challenges has negatively impacted customers, the environment, and the Puerto Rico economy.  *See id.*  The catastrophic damage Puerto Rico suffered from Hurricane Irma and Hurricane Maria, which hit the island within weeks of each other in 2017, only exacerbated these historical challenges. The effects of the hurricanes left Puerto Rico's infrastructure, including energy systems, substantially damaged and in need of critical recovery.  *See* Marrero Decl. ¶ 9.[8]  The series of earthquakes in December 2019 and January 2020 further damaged PREPA's energy infrastructure.  *See* PREPA 2020 Fiscal Plan at § 2.8.1.

15.     Recognizing these issues, the Government of Puerto Rico and the Oversight Board have long been aligned in their determination that a complete transformation of the T&D system is required to bring safe, reliable, and modern T&D System services to PREPA's ratepayers to move Puerto Rico's electric system and broader economy forward.  *See* Marrero Decl. ¶ 10; PREPA 2020 Fiscal Plan § 3.1.  On January 22, 2018, the Oversight Board and then Governor Rosselló announced plans for the transformation of Puerto Rico's electric power system into one that is modern, sustainable, reliable, efficient, cost-effective, and more resilient to the ravages of nature.[9]

## B.  Overview of the T&D Transformation Process

16.     On June 21, 2018, Act 120-2018, also known as the Puerto Rico Electric Power System Transformation Act, was enacted.  Act 120-2018 authorizes the legal framework required

---

[8]     *See also Transformation and Innovation in the Wake of Devastation an Economic and Disaster Recovery Plan for Puerto Rico*, CENTRAL OFFICE FOR RECOVERY, RECONSTRUCTION AND RECOVERY (August 8, 2018); *Puerto Rico One Year after Hurricanes Irma and María*, FEDERAL EMERGENCY MANAGEMENT AGENCY (September 6, 2018), (last visited Jun 24, 2020).

[9]     *See* Message to the People on Energy Transformation, La Fortaleza (Jan. 22, 2018), *available at* https://www.fortaleza.pr.gov/content/message-people-energy-transformation (last accessed Jun. 26, 2020).

7

for the sale, disposition, and/or transfer of the assets, operations, functions, and services of PREPA, including a transaction under which operations of the T&D System would be assumed by a private manager with ownership remaining at PREPA.  The Act also establishes the necessary safeguards to ensure a fair and transparent process for obtaining bids for the private operation and management of the T&D System.

17.     Act 120-2018 designates the P3 Authority as the government entity responsible for the functions, services, or facilities for which public-private partnerships in the electric sector would be established.  *See* Act 120-2018 § 5(a).  The P3 Authority established the Partnership Committee in accordance with Act 120-2018, to evaluate and select qualified bidders and to negotiate the terms and conditions of any public-private partnerships in the electric sector.  *See id.* § 5(c); *see also* Marrero Decl. ¶¶ 3, 5.

18.     Pursuant to this legislative authority and working in collaboration with the Oversight Board, on June 5, 2018, the P3 Authority launched a process for awarding a long-term contract to a qualified operation and maintenance service provider for the T&D System. The competitive transaction process was designed to follow, and has followed, an objective and transparent set of bidding and evaluation procedures.  Bidders were able to perform thorough due diligence and evaluation of the opportunity to serve as Puerto Rico's T&D System operator.  The Partnership Committee—which consists of the Executive Director of AAFAF, the Executive Director of PREPA, the President of PREPA's Governing Board, the Chairman of the Puerto Rico Energy Bureau, and the Executive Director of the Central Office of Recovery, Reconstruction and Resilience ("COR3")—evaluated the bids in accordance with legal requirements, including the comprehensive energy policy enacted in the Puerto Rico Energy Public Policy Act, Act No. 17-2019.  *See* Marrero Decl. ¶¶ 5-7 & Ex. A.

8

### C.  The Selection Process

19.     On October 31, 2018, the P3 Authority issued the *Request for Qualifications: Puerto Rico Electric Power Transmission and Distribution System (RFQ 2018-2)* (the "RFQ") pursuant to Section 5 of Act 120-2018 and Section 3 of Act 29-2009.  The RFQ sought statements of qualification ("SOQs") from entities interested in managing and operating Puerto Rico's T&D System, including the administration of federal disaster recovery funding.

20.     After the RFQ process concluded, on January 17, 2019, the Partnership Committee selected four experienced and reputable respondents (each such party, a "Qualified Respondent") to participate in the next stage of the process.  *See* Marrero Decl. Ex. A at 34–36.

21.     The P3 Authority then initiated the RFP process—a robust, competitive, and transparent procurement process carried out in accordance with Act 120-2018 and its corresponding regulations—which concluded on January 11, 2020.  *See id.* at 37–57.  The Partnership Committee selected a consortium comprised of ATCO Ltd. (succeeded by its affiliate, Canadian Utilities Limited), Quanta Services, Inc., and Innovative Emergency Management, Inc. as the preferred proponent to engage in exclusive discussions and negotiations with the P3 Authority pursuant to Act 120-2018.  *Id.* ¶ 6.  This consortium formed LUMA Energy, which was designated to be the T&D Contract counterparty and the entity that acts as "Operator" under the contract.

### D.  The Contract Approval Process

22.     Pursuant to PROMESA and applicable Puerto Rico law, the T&D Contract, once negotiated and approved by the Partnership Committee, was subject to further approval of (i) the Board of Directors of the P3 Authority, (ii) the Governing Board of PREPA, (iii) the Oversight Board, (iv) PREB, and (v) the Government of Puerto Rico pursuant to the procedures set forth in

Act 29-2009.

23.     On January 17, 2020, the Partnership Committee approved the final proposal of

LUMA Energy and the form of the T&D Contract.  Marrero Decl. Ex. A at 59.   On March 3, 2020,

the P3 Authority submitted that form of the T&D Contract to the Oversight Board for approval.

24.     Pursuant to, among others, PROMESA section 204(b)(2) (the "Contract Review

Policy"),[10] and in accordance with PREPA's certified Fiscal Plan, the Oversight Board reviewed

the form T&D Contract with the P3 Authority and suggested certain revisions, including a

supplement to the T&D Contract that contemplates, to the extent necessary, LUMA Energy

assuming operation and maintenance services, for a limited duration, prior to the emergence from

the Title III Case.  On April [14], 2020, the Oversight Board voted to approve the updated T&D

Contract pursuant to its Contract Review Policy.

25.     Following Oversight Board approval, on May 18, 2020, the P3 Authority filed the

final T&D Contract with PREB for the required regulatory approval. On June 17, 2020, PREB

issued a resolution and order (the "PREB Resolution and Order"[11]) approving the T&D Contract.

The PREB Resolution and Order explained that PREB had "carefully analyzed and evaluated the

[Partnership Committee Report[12]], the Preliminary Contract (as modified), taking into

consideration the energy public policy and regulatory framework of Puerto Rico" and determined

"the Proposed Contract (as modified) complies with Puerto Rico Energy Public Policy and the

regulatory framework."  PREB Resolution and Order at 9.

26.     Thereafter, on June 22, 2020, the PREPA Governing Board and the Government of

---

[10]  Contract Review, THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
https://oversightboard.pr.gov/contract-review/ (last visited Mar 29, 2020).

[11]  *Available at* https://energia.pr.gov/wp-content/uploads/2020/06/Resolution-and-Order-NEPR-AP-2020-0002.pdf

[12]  See Marrero Decl. Ex. A.

Puerto Rico, pursuant to the procedures set forth in Act 29-2009, each approved the T&D Contract. Following these approvals, the T&D Contract was then signed by the parties on June 22, 2020 and the process immediately shifted to the "Front-End Transition" phase (as described below) to begin transitioning the T&D System functions to LUMA Energy in a structured and phased approach.

### E. LUMA Energy's Services Under T&D Contract

27.     Pursuant to the T&D Contract, LUMA Energy will assume responsibility for the management, operation, maintenance, repair, restoration, and replacement and other related services for the T&D System, including electric transmission, distribution and load serving, long-term planning, dispatch, asset management, community and media relations, public and employee safety, billing and collection, reporting and record keeping, finance and accounting, emergency response, and customer service, among others (collectively, the "O&M Services").  T&D Contract § 5.1 and Annex I.

28.     In addition to the day-to-day operations and maintenance functions, and as part of the O&M Services, LUMA Energy will play an integral role in executing PREPA's energy-grid-modernization strategy, as well as actively participating and assisting in the deployment of federal funding for grid reconstruction.  *See id.* § 5.9.  The role of LUMA Energy is strategically important given its proven experience and capacity to manage large federally-funded projects as well as its associated project management capacity needed to execute important reconstruction work on the island's grid.  Marrero Decl. ¶ 14. LUMA Energy's role in this regard should reassure federal agencies that there is an operator with proven and verifiable experience to deploy grid modernization plans effectively, efficiently, and in a compliant manner.  *Id.*  Delivering major grid-modernization capital projects on time and on budget is important to protect Puerto Rico from future devastation from hurricanes and other natural disasters.  *Id.*  No less critical, the O&M

11

Services should also help improve everyday service quality, safety, and reliability. *Id.*

29.     The O&M Services should benefit PREPA and its customers by putting PREPA's power grid on a path to becoming a more modern, sustainable, reliable, efficient, cost-effective, and resilient T&D System. *Id.* ¶¶ 9-16. The transition of control over PREPA's T&D System to LUMA Energy is the crucial first step in the overall transformation of Puerto Rico's energy sector and will lead to a wholesale change of this sector by dismantling and reorganizing the current vertically integrated corporation – and the historic challenges that it has faced. *See id.* ¶ 11.

30.     The Government Parties' overarching mission is to transform Puerto Rico's energy system into a modern, sustainable, reliable, efficient, cost-effective, and resilient one. Consistent with the foregoing, the parties intend and expect the T&D Contract to help achieve the following:

- Transform PREPA's T&D System into a modern, sustainable, reliable, efficient, cost-effective, and resilient electric system consistent with prudent utility practices in order to increase electric service quality;

- Deliver low-cost electricity to ratepayers of Puerto Rico;

- Increase T&D System resiliency, achieving performance in line with codes, specifications and standards consistent with mainland U.S. electric utilities;

- Increase T&D System reliability;

- Deploy new technologies; and

- Implement industry best practices and operational excellence through managerial continuity and long-term planning.

Marrero Decl. ¶ 12 & Ex. A at 27–29.

### F. *Front-End Transition*

31.     Prior to assuming full operational control over PREPA and commencing the O&M Services, the T&D Contract contemplates a "Front-End Transition Period" during which LUMA Energy will provide front-end transition services (the "<u>Front-End Transition Services</u>") to ensure

12

an orderly transition of the responsibility for the management, operation, maintenance, repairs, restoration and replacement of the T&D System to LUMA Energy.  The services to be provided by LUMA Energy during this period are extensive, and include (i) mobilization of the LUMA Energy transition team, (ii) transition of management, (iii) employee hiring and establishment of benefit plans for employees of LUMA Energy, (iv) information technology transition and development, (v) development of a system remediation plan and initial operating and capital budgets, (vi) preparation to take over customer services and billing and other financial management functions, (vii) preparation for management of federal funding, (viii) increasing emergency response preparedness, and (ix) assessment of the chain of supply for fuel and power. A plan describing these services in greater detail is set forth in Annex II of the T&D Contract. These services are an essential prerequisite to LUMA Energy's ability to assume full control over the operation and maintenance of the T&D System and PREPA gaining the full benefits the Government Parties expect to achieve under the T&D Contract.  *See* T&D Contract, Annex II; Marrero Decl. ¶¶ 17–21.  Importantly, during the Front-End Transition Period, and even before LUMA begins full O&M Services, PREPA expects to realize significant benefits from the Front-End Transition Services, including: (i) locating inefficiencies in the T&D System; (ii) identifying and implementing non-personnel related cost-saving measures; (iii) preparing for management of federal funding; (iv) assessing and improving the chain of supply for fuel and power; (v) supporting privatization efforts regarding PREPA's generation assets. Marrero Decl. ¶ 22.

32.     Examples of key deliverables that are part of the Front-End Transition Services and will benefit PREPA above and beyond the transition of operations include:

- A System Remediation Plan that will serve as a plan or blueprint to achieve a safe, stabilized T&D System. The System Remediation Plan will detail the scope, resources, timelines, milestones, cost estimates and achievement criteria for each activity or project

13

required to enable the Operator to perform the O&M Services in compliance with Contract Standards, including the schedule by which each such activity or project shall be fully implemented.  *See* T&D Contract § 4.1(d).

- A Federal Funding Procurement Manual that describes the procurement guidelines to be applied to, and contractual provisions to be included in, any contract involving Federal Funding and procedures for contract administration and oversight.  *Id*. § 4.1(e)

- A Non-Federal Funding Procurement Manual that describes the procurement guidelines to be applied to, and contractual provisions to be included in, any contract for a Non-Federal Funded Capital Improvement and procedures for contract administration and oversight.  *Id*. § 4.1(f)

- System Operation Principles for operating the T&D system in a safe and reliable manner, using Economic Dispatch principles, and using Prudent Utility Practices to operate the system as economically as possible consistent with system constraints and Power Purchase and Operating Agreement ("PPOA") obligations.  *Id*. § 4.1(h) & Annex I, Schedule 1

- A set of Performance Metrics for each of: (i) Customer Satisfaction; (ii) Technical, Safety and Regulatory, and (iii) Financial performance, with an explanation of the basis and target for each metric, including a baseline, target, and minimum performance level.  *Id.* § 4.2(f)

- An Emergency Response Plan that outlines the procedures and actions necessary for responding to any emergency affecting or reasonably likely to affect the T&D System after the Service Commencement Date, including fire, weather, environmental, health, safety and other potential emergency conditions.  The emergency response plan, among other things, must establish measures that facilitate coordinated emergency response actions by all appropriate Governmental Bodies, specifically include outage minimization and response measures, and assure the timely availability of all personnel required to respond to any emergency.  *Id*. § 4.2(g).

- A Physical Security Plan that outlines the procedures and actions necessary for maintaining the physical security of the T&D System.  *Id*. § 4.2(h).

- A Data Security Plan that outlines the procedures and actions necessary for maintaining the data security, cyber security and information security relating to the T&D System.  *Id*.

- A comprehensive Vegetation Management Plan. *Id*.

- Assessment of existing T&D customer service, with a focus on customer experience quality and operational efficiency. *Id.* Annex II § IV.

33.    In addition, LUMA Energy's services will benefit PREPA early in the contract term, by assisting with FEMA funding and emergency preparedness, breaking ground on a lineworkers' college at its own expense to share best practices and improving reliability and

14

customer service.  *Id.* ¶ 23.  These improvements in the operation of the T&D system that LUMA Energy will bring to PREPA during the Front-End Transition Period and early in the contract period will improve PREPA's operations and financial condition to the benefit of all stakeholders. *Id.* ¶ 24.

34.     The T&D Contract provides for payment by PREPA of the "Front-End Transition Service Fee" to LUMA Energy.  T&D Contract § 4.6.  The Front-End Transition Service Fee consists of: (i) a one-time fixed amount of $60 million (payable in twelve monthly installments of $5 million starting at the commencement of the Front-End Transition Period); plus (ii) (a) the hourly rate for each category of employee of LUMA Energy providing Front-End Transition Services, as listed in Annex V of the T&D Contract, multiplied by (b) the number of hours worked by each employee in providing Front-End Transition Services;  plus (iii) all other reasonable costs and expenses incurred by LUMA Energy that are necessary and reasonable in the course of providing the Front-End Transition Services and satisfying certain conditions precedent to handover of the operation of the T&D System to LUMA Energy.  The T&D Contract also provides that PREPA will indemnify LUMA Energy and its affiliates primarily for any claims or damages arising from PREPA's operation of the utility.  T&D Contract at § 18.2.

35.     The parties executed the T&D Contract on June 22, 2020, which commenced the Front-End Transition Period.  LUMA Energy has estimated that the Front-End Transition Period will last approximately twelve months and that the total aggregate amount of the Front-End Transition Service Fee (including the fixed fee component) will be $136,351,930.  Marrero Decl. ¶ 19.  Pursuant to Section 4.6(c) of the T&D Contract, PREPA is obligated to fund 4.5 months of the Front-End Transition Service Fee in advance into a designated account upon the execution of the agreement.  On June 22, 2020, PREPA funded the amount of $59,374,000 to a designated

15

reserve account for use towards this payment.  Marrero Decl. ¶ 19.  PREPA is required to replenish this account on a monthly basis to maintain the 4.5 month estimated balance throughout the Front-End Transition Period.  PREPA currently estimates that the balance of the Front-End Transition Service Fee net of this reserve is approximately $77 million, which amount might be higher or lower depending on several factors, including whether LUMA Energy, PREPA , and the P3 Authority are prepared to have LUMA Energy commence O&M Services within less than one year, or commencement is delayed beyond one year.  *Id.* The accrued and unpaid Front-End Transition Service Fee, as well as any accrued indemnification obligations and any other amounts[13] required to be paid by PREPA to LUMA Energy under the T&D Contract during the Front-End Transition Period (collectively, the "Front-End Transition Obligations") are the subject of this Motion.

36.    Section 4.1(c)(i) of the T&D Contract provides that "[n]o later than ten (10) Business Days after the [contract is executed, PREPA] shall file a motion with the Title III Court seeking administrative expense treatment for any accrued and unpaid amounts required to be paid by [PREPA] under [the T&D Contract] during the Front-End Transition Period, including the Front-End Transition Service Fee."  *See* T&D Contract §4.1(c)(i).  Pursuant to Section 4.1(c)(ii), LUMA Energy may terminate the T&D Contract upon 30 days' prior written notice if such motion is not granted within 90 days after filing, subject to a 45-day extension by the P3 Authority, or such later date as LUMA Energy and the P3 Authority agree.

---

[13]   Such other obligations primarily include any interest accrued on late payments owed to LUMA Energy (at a rate of Prime plus 2%) (T&D Contract § 20.7), and expenses relating to LUMA Energy's demobilization if it terminates the T&D Contract during the Front-End Transition Period (T&D Contract § 4.8(b)(vi)(B)).  These obligations, along with PREPA's indemnification obligations, are contingent as the Movants intend for PREPA to honor all of its obligations under the T&D Contract on a timely basis.

## RELIEF REQUESTED

37.     By this Motion, the Government Parties seek entry of an order allowing an administrative expense claim in favor of LUMA Energy in the amount of any accrued and unpaid Front-End Transition Obligations owed to LUMA Energy from time to time under the T&D Contract, pursuant to sections 105(a), 503, and 507(a)(2) of the Bankruptcy Code, made applicable to this proceeding by section 301 of PROMESA, and granting such other relief as is just and proper.  To be clear, the approval sought by this Motion is not approval of the T&D Contract itself, but rather allowance of LUMA Energy's accrued and unpaid Front-End Transition Obligations as administrative expenses as required by the T&D Contract and to the extent that PREPA does not timely satisfy its obligations in the ordinary course.

## BASIS FOR RELIEF

38.     Bankruptcy Code section 503(b)(1)(A), made applicable by PROMESA section 301, provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).  In the First Circuit, allowance of administrative claims is determined by a narrow two prong test. "The first prong asks whether the 'transaction' arose between the creditor and the bankruptcy estate post-petition; the second prong inquires as to whether the incurred expense benefitted the estate in some demonstrable way." *In re Jeans.com*, 491 B.R. 16, 23 (Bankr. D.P.R. 2013) (citing I*n re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976)).

39.     The Front-End Transition Services manifestly meet this test.  *First*, the Front-End Transition Obligations will be incurred post-petition and the Front-End Transition Services provided by LUMA Energy will all be performed post-petition.

17

40.     *Second*, the Front-End Transition Services will materially benefit PREPA and its customers, as they will start PREPA's power grid on a path to becoming a more modern, sustainable, reliable, efficient, cost-effective, and resilient T&D System.  *Id*; *see, also, In re 1701 Commerce, LLC*, No. 12-41748-DML-11, 2014 WL 4657314, at *8 (Bankr. N.D. Tex. Sept. 17, 2014) (finding that operation and management of the "Debtor's largest asset" were actual and necessary expenses of preserving the estate under section 503(b)(1)).  The services LUMA Energy will provide in exchange for the Front-End Transition Service Fees are extensive, and include, among others, mobilization of the LUMA Energy transition team, transition of management, transition  of employees and establishment of benefit plans for employees of LUMA Energy, information technology transition and development, development of system remediation plans and initial operating and capital budgets, preparation to take over customer services and billing and other financial management functions, preparation to manage federal funding, increased emergency response preparedness, and assessment of the chain of supply for fuel and power. Marrero Decl. ¶ 20.  These services provide substantial, immediate benefits to PREPA including: (i) locating inefficiencies in the T&D System; (ii) identifying and implementing cost saving measures; (iii) preparing for management of federal funding; (iv) assessing and beginning to improve the chain of supply for fuel and power; and (v) supporting privatization efforts regarding PREPA's generation assets.  *Id.* ¶ 22.  In addition, the role of LUMA Energy is strategically important to depoliticize PREPA and provide continuity and professional management centered on planning and execution of initiatives in the energy sector.  *Id.* ¶ 14

41.     Significantly, until the Front-End Transition Services are provided and the Front-End Transition Period is concluded, the O&M Services cannot commence and the complete shift to private, professional operation of the T&D System will not occur.  *Id.* ¶ 21.  Implementation of

18

the O&M Services, in turn, is a crucial component of PREPA's operational restructuring.  Marrero
Decl. ¶¶ 17-24.  This transformation is a structural reform required under the Board-certified Fiscal
Plan for PREPA.  *See* PREPA 2020 Fiscal Plan, Ch. 3.  Transformation includes not only the
transfer of operation and maintenance of the T&D System to a private operator, but also, among
other things, (i) transfer of the responsibilities for the operation and maintenance of PREPA's
existing generation assets to one or more qualified, professional and experienced private operators;
(ii) modernization of PREPA's generation fleet; (iii) identification of funding for necessary grid
resilience investments, including finalization and funding of the plan for system hardening and
mitigation projects by federal authorities; (iv) effective deployment of capital investments for grid
strengthening and modernization; and (v) restructuring of legacy obligations through Title III.  *See
id.* § 3.1.

42.     In the chapter 9 context, an administrative expense claim is also appropriate where
(1) the services are actual and necessary to preserve the operations of the debtor, and (2) the debtor
consents to payment of the claim as an administrative expense.  In *In re Craig Cty. Hosp. Auth.*,
572 B.R. 340 (Bankr. N.D. Okla. 2017), the court was faced with the issue of whether claims that
comprised "actual and necessary costs and expenses of preserving the operations of the Hospital
Trust during the pendency of the Chapter 9 case" (*id.* at 346) could be afforded administrative
priority status under a confirmed plan of adjustment in light of Bankruptcy Code section
503(b)(1)(A), which provides administrative status for the "the actual, necessary costs and
expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A).  The court reasoned that reliance
on the statutory text alone (given the absence of an "estate" in chapter 9) was misplaced where the
parties had "expressed an intention to give administrative priority status to post-petition claimants
that conferred actual benefit on the Hospital Trust during the course of this case."  *Craig*, at 572

19

B.R. at 350.  It was thus an "equitable result" to afford such claims administrative status, as any other rule would effectively create a procedure where "no claimants would qualify for priority treatment." *Id.*

43.    Here, too, the Front-End Transition Services meet this test as (i) they are a necessary step to LUMA Energy's assumption of full control of PREPA's T&D operations and realization of the full benefits of the T&D transformation transaction (Marrero Decl. ¶ 21), and (ii) PREPA consents to providing an administrative claim for any accrued and unpaid amounts.

44.    Additionally, the T&D Contract requires the Front-End Transition Obligations to be paid to LUMA Energy for the performance of the Front-End Transition Services.  LUMA Energy requires confirmation from this Court that the Front-End Transition Obligations will have administrative expense priority as a condition to agreeing to provide the necessary, substantial investment of time and capital in PREPA, which is in the midst of its Title III case, and whose financial condition has been compounded by numerous natural disasters.  The T&D Contract will be a critical step in transforming Puerto Rico's energy sector and modernizing its power grid. Marrero Decl. ¶¶ 9–16.  LUMA Energy is uniquely equipped to meet the host of challenges PREPA faces and help transform PREPA into a customer-centric and financially sustainable utility that provides affordable, reliable, resilient services to the citizens of Puerto Rico.  *Id.* ¶ 13 & Ex. A at 3.

45.    A more efficient and cost-effective PREPA will not only be important for the Commonwealth's macro-economic stability, but will also support PREPA's restructuring and exit from Title III.

46.     For all the reasons outlined herein, the Front-End Transition Obligations qualify as an administrative expense under the provisions of sections 503(b) and 507(a) (2) of the Bankruptcy Code.

## NOTICE

47.     PREPA has provided notice of this Motion to (collectively, the "Notice Parties"): (i) LUMA Energy; (ii) the Office of the United States Trustee for the District of Puerto Rico; (iii) the indenture trustees and/or agents, as applicable, for PREPA's bonds; (iv) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain Trade Finance Facility Agreement, dated as of July 20, 2012; (v) the statutory unsecured claimholders' committee appointed in this Title III Case; (vi) the Office of the United States Attorney for the District of Puerto Rico; (vii) counsel to AAFAF; (viii) the Puerto Rico Department of Justice; and (ix) all other parties who have sought notice of filings in PREPA's Title III case.

WHEREFORE, the Government Parties respectfully request the Court enter the Proposed

Order (a) granting the Motion, and (b) granting PREPA such other relief as is just and proper.

Dated:  July 7, 2020
         San Juan, Puerto Rico

Respectfully submitted,

**PROSKAUER ROSE LLP**

*/s/ Paul V. Possinger*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S. Desatnik *(pro hac vice)*
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth of Puerto Rico and the Puerto
Rico Electric Power Authority*


**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis Marini*
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Co-counsel for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*


**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
*Co-Attorneys for the Financial Oversight and
Management Board as representative of the
Debtor*

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
Nancy A. Mitchell
Maria J. DiConza
7 Times Square
New York, New York 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor

22

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

*/s/ Katiuska Bolaños*
Katiuska Bolaños
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.:  (787) 395-7133
Fax:  (787) 497-9664

*Counsel for Puerto Rico Electric Power Authority*

Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

23

## **Exhibit A**

Proposed Order

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br> (Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>      Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF No. [x]**<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

## ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR COMPENSATION FOR FRONT-END TRANSITION SERVICES UNDER THE PUERTO RICO TRANSMISSION AND DISTRIBUTION SYSTEM <u>OPERATION AND MAINTENANCE AGREEMENT WITH LUMA ENERGY</u>

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon PREPA's *Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (the "Motion");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found that the Front-End Transition Obligations meet all applicable requirements for an administrative expense claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and made applicable to this Title III case pursuant to section 301(a) of PROMESA; and that the relief requested in the Motion is in the best interests of PREPA, its creditors, and other parties in interest; and the Court having found that PREPA provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard the statements of counsel in support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein,

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED** as set forth herein.

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2.      Pursuant to sections 503 and 507(a)(2) of the Bankruptcy Code, made applicable in this Title III Case pursuant to section 301(a) of PROMESA, upon entry of this Order, LUMA Energy shall have an allowed administrative expense claim for any accrued and unpaid Front-End Transition Obligations incurred by PREPA under the T&D Contract.

3.      Notwithstanding any applicability of any Bankruptcy Rule to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4.      To the extent required, PREPA and the Oversight Board, as PREPA's representative in this Title III case, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted in this Order in accordance with the Motion and without further order of this Court.

5.      The Court shall retain exclusive jurisdiction to hear and determine any and all disputes related to or arising from the implementation, interpretation, and enforcement of this Order.

Dated: [___ ___], 2020

_____
HONORABLE LAURA TAYLOR SWAIN