# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**URGENT MOTION OF NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AMBAC ASSURANCE CORPORATION, AND FINANCIAL GUARANTY INSURANCE COMPANY TO ADJOURN DEADLINES FOR CERTAIN CONFLICT MOTIONS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, and Financial Guaranty Insurance Company (collectively, the "Bondholders") respectfully submit this urgent motion (the "Urgent Motion") requesting entry of an order, substantially in the form of Exhibit A, adjourning the deadlines to file certain Conflict Motions regarding plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims,[2] as set forth in the Court's March 10, 2020 Final Case Management Order for Revenue Bonds (ECF No. 12186) ("Revenue Bond Order").[3]

Counsel for the UCC has advised that the UCC will not take a position on this motion. As of the time of this filing, FOMB and AAFAF have not responded to requests that they consent to the relief requested herein.

## INTRODUCTION

1. On February 28, 2020, FOMB filed a motion to approve a disclosure statement, solicitation packages and distribution procedures, forms of ballots, voting and election procedures, and vote tabulation procedures for a proposed Commonwealth plan of adjustment (ECF No. 11950, the "Disclosure Statement Motion"). Soon after, the Court on March 10 issued scheduling orders that allowed disputes regarding conflicts of interest to be litigated in the following sequence: first, parties would file their objections to the Disclosure Statement and voting procedures; second, parties could move for relief to address conflicts of interest arising from the FOMB and the

---

[2] In referring to "HTA's clawback claims" and "the resolution of such claims," the Bondholders are simply using terminology used in the Revenue Bond Order and reserve the right to contest the accuracy of that terminology, including insofar as it could be interpreted to suggest that the relationship of the Commonwealth to HTA is exclusively that of debtor to creditor.

[3] All capitalized terms not defined herein shall have the meanings ascribed to them in the Revenue Bond Order.

2

Government of Puerto Rico's acting for both the Commonwealth and HTA ("Conflict Motions"); third, those Conflict Motions would be heard shortly before or at the Disclosure Statement Hearing, which was scheduled for June 3 and 4. This sequencing allowed the Bondholders to consider the Disclosure Statement and voting procedures, together with any objections, in deciding whether a Conflict Motion was needed to address issues regarding plan voting, plan objections relating to HTA's clawback claims, or the resolution of such claims.

2. Since March 10, delays in the plan and disclosure statement process have disrupted that natural sequence. The Disclosure Statement Hearing is nowhere in sight, having since been adjourned *sine die* at FOMB's request. FOMB has suggested that the proposed plan and disclosure statement are subject to further amendment, without offering any indication when an amended plan and disclosure statement will be filed. Yet the deadline for Conflict Motions has not moved commensurately: under the March 10 Revenue Bond Order, all Conflict Motions are due *imminently* on July 17 (*i.e.*, 15 days after the Court issued its July 2 Opinion and Order in connection with the preliminary hearing on the HTA Lift Stay Motion). Thus, contrary to the Court's intended sequence, Conflict Motions that address plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims are now due *before* the operative plan and voting procedures are submitted, and well before any objections to the disclosure statement would be due. Indeed, all Conflict Motions are currently due even before any schedule for approving a disclosure statement has been established.

3. This inverted sequence of litigation is unnecessary, prejudicial to the Bondholders, wasteful of judicial resources, and contrary to the Court's intent when it issued the March 10 scheduling orders. First, with no upcoming hearing, no disclosure statement, and no plan, there is no reason to require the Bondholders to file all Conflict Motions by July 17—particularly those

Case:17-03283-LTS Doc#:13606 Filed:07/10/20 Entered:07/10/20 15:29:19 Desc: Main
Document Page 4 of 19


aimed at plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims. Rather, a motion to approve a Disclosure Statement and voting procedures is a necessary predicate to such Conflict Motions. Second, the Bondholders cannot know how FOMB will amend the previous disclosure statement, proposed plan, and proposed voting procedures. The Bondholders will be prejudiced if they must litigate plan voting issues without an opportunity to evaluate HTA's classification and treatment under the amended disclosure statement and proposed voting procedures that the FOMB will eventually file for the Court's approval. Indeed, until a current disclosure statement and voting-procedures motion is filed, Conflict Motions that address voting issues or plan objections relating to HTA's clawback claims might be dismissed as unripe. Third, given the likelihood of overlapping issues in the Disclosure Statement Motion and any such Conflict Motions, judicial economy would be served by addressing these motions together or in close proximity, as the Court originally envisioned.

4. The Revenue Bond Order specifically noted that the Court would "entertain timely requests to extend [the Conflict Motion deadline] upon a showing of good cause." Revenue Bond Order at 7. To ensure efficient administration of the Title III Cases and avoid prejudice to the Bondholders, the Court should enter an order substantially in the form of Exhibit A, adjourning the deadline for Conflict Motions regarding plan voting, plan objections relating to HTA's clawback claims, or the resolution of such claims. The parties could meet and confer to propose a new schedule for such Conflict Motions *after* FOMB files its motion to approve an amended disclosure statement and voting procedures. This would restore the Court's original sequence of litigation.

5. In seeking this necessarily urgent relief, the Bondholders are not requesting that the Court extend the deadline for Conflict Motions brought under Section 926 of the Bankruptcy Code.

The Bondholders previously asked FOMB to adjourn *all* Conflict Motion deadlines, including motions under Section 926 to appoint a trustee to pursue avoidance actions on HTA's behalf, and to agree to toll the statute of limitations for avoidance actions. FOMB did not consent to that request. Because FOMB has not consented to toll the statute of limitations, the Bondholders must file Section 926 motions by the current deadline, to avoid the risk that avoidance actions will be time-barred.

## BACKGROUND

6. On February 10, 2020, the Mediation Team issued an Amended Report and Recommendation, ECF No. 10756 (the "Mediation Report" or "Med. Rep."), which recommended a schedule and sequencing of issues relevant to confirmation of plans of adjustment in the Title III Cases. The Report recognized that the question of whether FOMB operates under a conflict of interest by acting for both the Commonwealth and HTA is a gating issue that should be resolved before the Court approves an Amended Disclosure Statement and solicitation on an amended plan begins. Med. Rep. 12–13. As the Mediation Report noted, the existence of a conflict "could affect how claims of HTA against the Commonwealth may be settled or voted in connection with the Amended Plan." *Id.* at 13. Accordingly, the Mediation Team recommended a schedule that linked the timing of Conflict Motions to the Disclosure Statement Hearing. *See id.* at 14.

7. On February 28, 2020, FOMB filed its Disclosure Statement Motion, through which it sought the Court's approval of a Disclosure Statement, solicitation packages and distribution procedures, forms of ballots, voting and election procedures, and vote tabulation procedures.

8. On March 10, 2020, the Court entered both the Revenue Bond Order and the Order Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, ECF No. 12187 (the "Hearing Order"). The Revenue Bond Order set the HTA Lift-

5

Stay preliminary hearing for April 2, 2020, and the deadline for filing Conflict Motions at 15 days following the Court's ruling in connection with that preliminary hearing. *See* Revenue Bond Order at 5, 7. The Hearing Order set April 24 as the deadline for Disclosure Statement Objections, and scheduled the Disclosure Statement Hearing for just over a month later on June 3 and June 4, 2020. The Court was likely to take several weeks to issue its ruling in connection with the preliminary hearing on the HTA Lift Stay Motion (which it ultimately did), meaning that Conflict Motions would likely be due *after* the deadline for Disclosure Statement Objections.

9. Thus, consistent with the Mediation Team's recommendations, these orders together established a sequence in which the Conflict Motions would be due after briefing on the Disclosure Statement Motion, in the weeks preceding the Disclosure Statement Hearing. With that sequencing, the Bondholders would have the opportunity to review the proposed plan, voting procedures, and Disclosure Statement, along with all Objections to the Disclosure Statement, before deciding to file a Conflict Motion that addressed voting issues with the proposed plan, plan objections relating to HTA's clawback claims, or the resolution of such claims.

10. This sequencing has not held, however. The Court issued its Opinion and Order in connection with the Preliminary Lift-Stay Hearing on July 2. No. 17-3567, ECF No. 853 ("Preliminary Lift-Stay Order"). Accordingly, under the Revenue Bond Order, Conflict Motions are now due on July 17. But the Disclosure Statement Hearing is no longer on the calendar: on March 23, 2020, FOMB requested an adjournment of that hearing, *see* ECF No. 12485, and on March 27, the Court adjourned the Disclosure Statement Hearing and related deadlines, *see* ECF No. 12459. In its most recent Status Report on May 1, 2020, FOMB stated that it was not yet prepared to even propose a schedule for the Debtors' plan and disclosure statement process, and that it must first assess the impact of the COVID-19 pandemic and revise the Commonwealth fiscal

6

plan before the plan of adjustment and disclosure statement process can move forward. *See* Status Rep. ¶ 13, ECF No. 13018. The Court then directed FOMB to file another joint status report by July 15, 2020. Order, ECF No. 13023.

## ARGUMENT

11. The Revenue Bond Order provides that the Court "will entertain timely requests to extend [the Conflict Motion deadline] upon a showing of good cause." Revenue Bond Order at 7. The Bondholders have good cause to extend the current July 17, 2020 deadline for Conflict Motions that address plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims. That deadline should be adjourned until *after* FOMB has submitted a new motion to approve an amended plan and disclosure statement—thereby restoring the Court's original sequencing of the issues.

12. *First*, a motion seeking approval of a disclosure statement and voting procedures is a necessary predicate to any Conflict Motion that addresses plan voting, plan objections relating to HTA's clawback claims, or the resolution of such claims. The sequencing envisioned by the Mediation Team and the Court recognized this. When the Court issued the March 10 orders, the Disclosure Statement Motion was pending. The orders scheduled the preliminary hearing on the HTA Lift-Stay Motion for April 2, the deadline for objections to the Disclosure Statement for April 24, and the Disclosure Statement Hearing for June 3 and 4. That schedule contemplated the Conflict Motions being filed *after* the objections to the Disclosure Statement Motion, and heard close to or at the Disclosure Statement Hearing. This sequencing enabled the Bondholders to review the plan's proposed classification scheme and voting procedures, together with any objections to the Disclosure Statement Motion, and to then file a Conflict Motion in response to those papers. But the Disclosure Statement Hearing has since been adjourned to allow FOMB to reevaluate the proposed plan and Disclosure Statement, and the deadlines for objections to the

7

Disclosure Statement Motion have been lifted. Thus, there is no operative motion before the Court, and no disclosure statement and proposed plan for the Bondholders to consider in evaluating conflicts of interest. Indeed, a Conflict Motion pertaining to voting may not even be ripe by July 17, 2020 because there is no motion seeking approval of voting procedures pending, and vote solicitation will not have begun. The same is true for any Conflict Motion addressing plan objections relating to HTA's clawback claims brought before a disclosure statement is filed.

13. *Second*, because the Bondholders do not know how FOMB intends to modify the Disclosure Statement, voting procedures, and proposed plan, the Bondholders will be prejudiced if required to file Conflict Motions pertaining to plan voting under the current schedule. In its May 1 Status Report, FOMB indicated that it intends for its resumed discussions with creditors to be "informed by the latest projections," and that, "[a]ccordingly, the Oversight Board is unprepared at this time to propose a schedule for the plan and disclosure statement process." Status Rep. ¶ 13. These statements suggest that the Commonwealth Plan and Disclosure Statement are subject to further amendment based on the FOMB's revised projections and assessment of the pandemic's impact on the Commonwealth. Thus, the current schedule would require the Bondholders to file all Conflict Motions—including those that address plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims—without having an opportunity to review the disclosure statement, proposed voting procedures, and plan of adjustment that FOMB will ultimately submit for the Court's approval. Nor would the Bondholders be able to review the objections that parties in interest file to the Disclosure Statement and proposed voting procedures. But to fairly evaluate the effect on the proposed plan and plan voting of the conflicts of interest that arise from FOMB's representation of the Commonwealth and HTA, the Bondholders must first understand the relationship between the Commonwealth and HTA contemplated under the

8

proposed plan of adjustment, including HTA's classification (if any) and its proposed treatment under the plan, as well as the proposed voting procedures.

14. *Third*, if Conflict Motions addressing voting, plan objections relating to HTA's clawback claims, or the resolution of such claims are heard now, and not in conjunction with a motion for approval of a Disclosure Statement and voting procedures, judicial resources would be wasted. Any such Conflict Motion will raise issues that overlap with those the Court must consider in evaluating a Disclosure Statement and proposed voting procedures. Judicial economy will be served by having such Conflict Motions considered in connection with the Disclosure Statement and proposed voting procedures.

15. To preserve the Bondholders' right to raise conflict issues, to avoid unfair prejudice to the Bondholders, and to promote judicial economy, the Court should extend the deadline for Conflict Motions regarding plan voting, plan objections relating to HTA's clawback claims, or the resolution of such claims to align with the new disclosure statement schedule, if any, that is ultimately entered by the Court.

## **CONCLUSION**

16. For the foregoing reasons, the Court should enter an order, substantially in the form of Exhibit A, (1) adjourning without date the deadline for Conflict Motions that address plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims, and (2) requiring the parties to submit a proposed schedule for such Conflict Motions within seven (7) days after FOMB moves for approval of a new disclosure statement and voting procedures.

17. In addition, the Bondholders respectfully request a bridge order extending the deadline for Conflict Motions regarding voting, plan objections relating to HTA's clawback claims, or the resolution of such claims, while the Court is considering this Urgent Motion.

**Certification of Compliance with
Local Rule 9013-1 and Tenth Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the *Tenth Amended Notice, Case Management and Administrative Procedures*, the undersigned counsel hereby certify that they have (a) carefully examined the matter and concluded that there is a true need for an urgent decision; (b) not created the urgency through any lack of due diligence; and (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

*[Remainder of page intentionally left blank]*

Dated: July 10, 2020
San Juan, Puerto Rico

CASELLAS ALCOVER & BURGOS P.S.C.     CADWALADER, WICKERSHAM & TAFT LLP

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    USDC-PR 204809
    Ricardo F. Casellas-Sánchez
    USDC-PR 203114
    Diana Pérez-Seda
    USDC-PR 232014
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
            rcasellas@cabprlaw.com
            dperez@cabprlaw.com

*Attorneys for Assured Guaranty Corp.
and Assured Guaranty Municipal Corp.*

By: */s/ Mark C. Ellenberg*
    Howard R. Hawkins, Jr.*
    Mark C. Ellenberg*
    William J. Natbony*
    Ellen M. Halstead*
    Thomas J. Curtin*
    Casey J. Servais*
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
            mark.ellenberg@cwt.com
            bill.natbony@cwt.com
            ellen.halstead@cwt.com
            thomas.curtin@cwt.com
            casey.servais@cwt.com

* Admitted *pro hac vice*

*Attorneys for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

| | |
|---|---|
| ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC | WEIL, GOTSHAL & MANGES LLP |
| By:/s/ *Eric Perez-Ochoa*<br>Eric Pérez-Ochoa<br>USDC-PR No. 206,314<br>E-mail:  epo@amgprlaw.com<br><br>By:*/s/Luis A. Oliver-Fraticelli*<br>Luis A. Oliver-Fraticelli<br>USDC-PR NO. 209,204<br>E-mail:  loliver@amgprlaw.com<br><br>208 Ponce de Leon Ave., Suite 1600<br>San Juan, PR 00936<br>Tel.:  (787) 756-9000<br>Fax:  (787) 756-9010<br><br>*Attorneys for National Public Finance Guarantee Corp.* | By:/s/ *Robert Berezin*<br>Jonathan Polkes*<br>Gregory Silbert*<br>Robert Berezin**<br>Kelly Diblasi*<br>Gabriel A. Morgan*<br>767 Fifth Avenue<br>New York, New York 10153<br>Tel.:  (212) 310-8000<br>Fax:  (212) 310-8007<br>Email:  jonathan.polkes@weil.com<br>    gregory.silbert@weil.com<br>    robert.berezin@weil.com<br>    kelly.diblasi@weil.com<br>    gabriel.morgan@weil.com<br><br>* admitted *pro hac vice*<br>**pro hac vice* application forthcoming<br><br>*Attorneys for National Public Finance Guarantee Corp.* |

| | |
|---|---|
| FERRAIUOLI LLC | MILBANK LLP |
| By: /s/ *Roberto Cámara-Fuertes* <br> ROBERTO CÁMARA-FUERTES <br> USDC-PR NO. 219,002 <br> E-mail: rcamara@ferraiuoli.com <br><br> By: */s/ Sonia Colón* <br> SONIA COLÓN <br> USDC-PR NO. 213809 <br> E-mail: scolon@ferraiuoli.com <br><br> 221 Ponce de Leon Ave., 5th Floor <br> San Juan, PR 00917 <br> Tel.: (787) 766-7000 <br> Fax: (787) 766-7001 <br><br> *Counsel for Ambac Assurance Corporation* | By: /s/ *Atara Miller* <br> DENNIS F. DUNNE* <br> ATARA MILLER* <br> GRANT R. MAINLAND* <br> JOHN J. HUGHES* <br> 55 Hudson Yards <br> New York, New York 10001 <br> Tel.: (212) 530-5000 <br> Fax: (212) 530-5219 <br> Email: ddunne@milbank.com <br> amiller@milbank.com <br> gmainland@milbank.com <br> jhughes2@milbank.com <br><br> *admitted pro hac vice <br><br> *Counsel for Ambac Assurance Corporation* |

ARENT FOX LLP


By: /s/ *David L. Dubrow*
    DAVID L. DUBROW*
    MARK A. ANGELOV*
    1301 Avenue of the Americas
    New York, New York 10019
    Tel.:    (212) 484-3900
    Fax:    (212) 484-3990
    Email:    david.dubrow@arentfox.com
              mark.angelov@arentfox.com


By: /s/ *Randall A. Brater*
    RANDALL A. BRATER*
    1717 K Street, NW
    Washington, DC 20006
    Tel.:    (202) 857-6000
    Fax:    (202) 857-6395
    Email:    randall.brater@arentfox.com

        *admitted pro hac vice

        *Counsel for Ambac Assurance Corporation*

| | |
|---|---|
| REXACH & PICÓ, CSP | BUTLER SNOW LLP |
| By: /s/ *María E. Picó* <br> María E. Picó <br> USDC-PR 123214 <br> 802 Ave. Fernández Juncos <br> San Juan PR 00907-4315 <br> Telephone: (787) 723-8520 <br> Facsimile: (787) 724-7844 <br> E-mail: mpico@rexachpico.com <br><br> *Attorneys for Financial Guaranty Insurance Company* | By: /s/ *Martin A. Sosland* <br> Martin A. Sosland (pro hac vice) <br> 5430 LBJ Freeway, Suite 1200, <br> Dallas, TX 75240 <br> Telephone: (469) 680-5502 <br> Facsimile: (469) 680-5501 <br> E-mail: martin.sosland@butlersnow.com <br><br> Jason W. Callen (pro hac vice) <br> 150 3rd Avenue, South, Suite 1600 <br> Nashville, TN 37201 <br> Telephone: (615) 651-6774 <br> Facsimile: (615) 651-6701 <br> E-mail: jason.callen@butlersnow.com <br><br> *Attorneys for Financial Guaranty Insurance Company* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2020 I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

New York, New York

July 10, 2020

<div style="text-align:right">

By: */s/ Robert Berezin*
Robert Berezin*
* Admitted *pro hac* v*ice*

</div>

# **EXHIBIT A**

17

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[4] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**[PROPOSED] ORDER GRANTING URGENT MOTION TO ADJOURN DEADLINES FOR CERTAIN CONFLICT MOTIONS**

---

[4] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THIS MATTER is before the Court on an Urgent Motion filed by National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, and Financial Guaranty Insurance Company (collectively, the "Bondholders") to adjourn the deadlines for certain Conflict Motions regarding plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims, as set forth in the Court's March 10, 2020 Final Case Management Order for Revenue Bonds (ECF No. 12186) ("Revenue Bond Order").[5]

UPON CONSIDERATION of the Urgent Motion, the relevant portions of the docket, and being otherwise fully advised in the matter it is hereby **ORDERED** that:

1. The Urgent Motion is **GRANTED** as set forth herein.

2. The deadline to file Conflict Motions that address plan voting issues, plan objections relating to HTA's clawback claims, or the resolution of such claims is hereby **ADJOURNED** until further order of the Court.

3. The parties shall file a proposed schedule for Conflict Motions that address plan voting, plan objections relating to HTA's clawback claims, or the resolution of such claims within seven (7) days after a motion seeking approval of a Disclosure Statement and voting procedures has been filed.

Dated: _____, 2020         SO ORDERED:

_____
Honorable Laura Taylor Swain
United States District Court Judge

---

[5] All capitalized terms not defined herein shall have the meanings ascribed to them in the Revenue Bond Order.

19