# COMPOSITE EXHIBIT "A"

## *(Filed Proof of Claims)*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

**Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☒ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

## Modified Official Form 410 / Formulario Oficial 410 Modificado
# Proof of Claim / Evidencia de reclamación

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

Filers **must leave out or redact** information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

Quienes presenten la documentación deben **omitir o editar** información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

**1. Who is the current creditor?**

**¿Quién es el acreedor actual?**

Tradewinds Energy Vega Baja, LLC

Name of the current creditor (the person or entity to be paid for this claim)
Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)

Other names the creditor used with the debtor
Otros nombres que el acreedor usó con el deudor

**2. Has this claim been acquired from someone else?**

¿Esta reclamación se ha adquirido de otra persona?

☒ No / No

☐ Yes. From whom?

Sí. ¿De quién? _____

---

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

¿A dónde deberían enviarse las notificaciones al acreedor?

Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g

| Where should notices to the creditor be sent? ¿A dónde deberían enviarse las notificaciones al acreedor? | Where should payments to the creditor be sent? (if different) ¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente) |
|---|---|
| Tradewinds Energy Vega Baja, LLC c/o John Arrastia, Esq. Mariaelena Gayo-Guitian, Esq. Genovese Joblove & Battista, P.A. 100 SE 2nd Street, Suite 4400 Miami, FL 33131<br><br>305-349-2300<br>Contact phone / Teléfono de contacto<br><br>jarrastia@gjb-law.com<br>Contact email / Correo electrónico de contacto | <br><br><br><br><br><br><br>Contact phone / Teléfono de contacto<br><br><br>Contact email / Correo electrónico de contacto |

---

**4. Does this claim amend one already filed?**

¿Esta reclamación es una enmienda de otra presentada anteriormente?

☒ No / No

☐ Yes.  Claim number on court claims registry (if known)

Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____

Filed on / Presentada el _____(MM /DD/YYYY) / (DD/MM/AAAA)

---

**5. Do you know if anyone else has filed a proof of claim for this claim?**

¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación?

☒ No / No

☐ Yes. Who made the earlier filing?

Sí. ¿Quién hizo la reclamación anterior?_____

---

**Part 2 / Parte 2:**   Give Information About the Claim as of the Petition Date

Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.

---

**6. Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?**

¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico?

☐ No / No

☒ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)

Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/.)

Puerto Rico Electric Power Authority

---

**7. Do you supply goods and / or services to the government?**

¿Proporciona bienes y / o servicios al gobierno?

☒ No / No

☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:

Vendor / Contract Number | Número de proveedor / contrato: _____

List any amounts due after the Petition Date (listed above) but before June 30, 2017:

Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____

---

| 8. **How much is the claim?**<br><br>¿Cuál es el importe de la reclamación? | $ 13,600,000.00 _____ . **Does this amount include interest or other charges?**<br>**¿Este importe incluye intereses u otros cargos?**<br>☒ No / No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).<br>Sí. Adjunte un balance con intereses detallados, honorarios, gastos u otros cargos exigidos por la Norma de Quiebras 3001(c)(2)(A). |
|---|---|

| 9. **What is the basis of the claim?**<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>Breach of contract relating to two Power Purchase and Operating Agreements for Wind Power Project Nos. 2012-P00028 and 2012-P00030 |
|---|---|

| 10. **Is all or part of the claim secured?**<br><br>¿La reclamación está garantizada de manera total o parcial? | ☒ No / No<br>☐ Yes. The claim is secured by a lien on property.<br>Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br>**Nature of property / Naturaleza del bien:**<br>☐ Motor vehicle / Vehículos<br><br>☐ Other. Describe:<br>Otro. Describir: _____<br><br>**Basis for perfection / Fundamento de la realización de pasos adicionales:**<br><br>_____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br>Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.)<br><br>**Value of property / Valor del bien:** $_____<br><br>**Amount of the claim that is secured /**<br>**Importe de la reclamación que está garantizado:** $_____<br><br>**Amount of the claim that is unsecured /**<br>**Importe de la reclamación que no está garantizado:** $_____<br>(The sum of the secured and unsecured amounts should match the amount in line 7.)<br>(La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br>**Amount necessary to cure any default as of the Petition Date /**<br>**Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :**<br><br>$_____<br><br>**Annual Interest Rate** (on the Petition Date)<br>**Tasa de interés anual** (cuando se presentó el caso)_____%<br>☐ Fixed / Fija<br>☐ Variable / Variable |
|---|---|

| 11. **Is this claim based on a lease?**<br><br>¿Esta reclamación está basada en un arrendamiento? | ☒ No / No<br>☐ Yes. **Amount necessary to cure any default as of the Petition Date.**<br>Sí. **Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso**<br>$_____ |
|---|---|

| 12. **Is this claim subject to a right of setoff?**<br><br>**¿La reclamación está sujeta a un derecho de compensación?** | ☒ No / No<br><br>☐ Yes. Identify the property /<br>Sí. Identifique el bien: _____ |
|---|---|
| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>**¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☒ No / No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**       $ _____<br><br>Sí. **Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación.** |

| **Part 3 / Parte 3:** | Sign Below / Firmar a continuación |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

Check the appropriate box / Marque la casilla correspondiente:

☐ I am the creditor. / Soy el acreedor.

☒ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Signature:  *Mariaelena Gayo-Guitian*
Mariaelena Gayo-Guitian (Apr 30, 2018)

Signature / Firma _____   **Email:** mguitian@gjb-law.com

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

Name       Mariaelena Gayo-Guitian, Esq.
           First name / Primer nombre   Middle name / Segundo nombre   Last name / Apellido

Title / Cargo   Attorney for Tradewinds Energy Vega Baja, LLC

Company / Compañía   Genovese Joblove & Battista, P.A.
           Identify the corporate servicer as the company if the authorized agent is a servicer.
           Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección   100 SE 2nd Street Suite 4400
           Number / Número        Street / Calle

           Miami                          FL        33131
           City / Ciudad                  State / Estado   ZIP Code / Código postal

Contact phone / Teléfono de contacto  305-349-2300   Email / Correo electrónico  jarrastia@gjb-law.com

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ **have supporting documentation.**
   **(attach below)**

☐ I do **not** have supporting documentation.

 Attachment

**PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.**

**IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.**

**A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel. Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk of the Court discover that personal identifier data or information concerning a minor individual has been included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to redact all such information from the text of the filing and make an entry indicating the correction.**

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

## How to fill out this form

- **Fill in all of the information about the claim as of the petition date.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form or contact the Claims and Noticing Agent at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), or by email at puertoricoinfo@primeclerk.com. You may view a list of filed claims in the Title III cases by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/puertorico.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the petition date, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the petition date. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy or confidential information. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

---

**Do not file these instructions with your form**

---

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**If by overnight courier or hand delivery:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

# Instrucciones para la Evidencia de reclamación

Tribunal de Quiebras de los Estados Unidos                                                                12/15

**Estas instrucciones y definiciones explican la ley de forma general. En ciertas circunstancias, tales como casos de quiebra que los deudores no presentan de forma voluntaria, se pueden aplicar excepciones a estas normas generales. Debe considerar la posibilidad de obtener el asesoramiento de un abogado, en especial si no conoce el proceso de quiebra y las reglamentaciones de privacidad.**

## Cómo completar este formulario

- **Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

- **Complete el título en la parte superior del formulario.**

- **Si la reclamación se ha adquirido de otra persona, indique la identidad de la última parte** que fue propietaria de la reclamación o fue titular de la reclamación y que la transfirió a usted antes de que se presente la reclamación inicial.

- **Adjunte cualquier documento de respaldo a este formulario.**
  Adjunte copias editadas de cualquier documento que demuestre que la deuda existe, que un gravamen garantiza la deuda, o ambos. (Ver la definición de *edición* en la siguiente página).

  También adjunte copias editadas de cualquier documento que demuestre el perfeccionamiento de un derecho de garantía o cualquier cesión o transferencia de la deuda. Además de los documentos, puede agregarse un resumen. Norma federal del procedimiento de quiebra (denominada "Norma de quiebra") 3001(c) y (d).

- **No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de examinarlos.**

- **Si la reclamación se basa en la prestación de bienes o servicios de atención médica, no divulgue información de atención médica confidencial. Omita o edite la información confidencial tanto en la reclamación como en los documentos adjuntos.**

- **El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo el año de la fecha de nacimiento de una persona.** Ver la Norma de quiebra 9037.

- **En el caso de un menor, complete solamente las iniciales del menor y el nombre completo y la dirección del padre o madre o el tutor del menor.** Por ejemplo, escriba *A.B., un menor* (*John Doe, padre, calle 123, ciudad, estado*). Ver la Norma de quiebra 9037.

## Confirmación de que se ha presentado la reclamación

Para recibir una confirmación de que se ha presentado la reclamación, puede adjuntar un sobre autodirigido y estampillado y una copia de este formulario o comunicarse con el representante de reclamaciones y notificaciones al (844) 822-9231 (número gratuito para EE. UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), o por correo electrónico a puertoricoinfo@primeclerk.com. Para ver una lista de las reclamaciones presentadas en los casos del Título III, visite el sitio web del representante de reclamaciones y notificaciones en https://cases.primeclerk.com/puertorico.

## Comprenda los términos utilizados en este formulario

**Gastos administrativos:** En términos generales, gastos que se generan luego de presentar un caso de quiebra en relación con el manejo, la liquidación o la distribución del patrimonio de la quiebra.
Título 11 § 503 del Código de los Estados Unidos (U.S.C.).

**Reclamación:** El derecho de un acreedor a recibir un pago por una deuda del deudor a la fecha en la que el deudor solicitó la quiebra. Título 11 §101 (5) del U.S.C. Una reclamación puede estar garantizada o no garantizada.

**Reclamación de conformidad con el Título 11 § 503(b)(9) del U.S.C.:** Una reclamación que surge del valor de cualquier bien recibido por el Deudor dentro de los 20 días anteriores a la fecha en la que se presentó el caso , en el que los bienes se han vendido al Deudor en el transcurso normal de los negocios del Deudor. Adjunte la documentación que respalde dicha reclamación.

**Acreedor:** Una persona, una sociedad anónima u otra entidad con la que el deudor tiene una deuda que se contrajo en la fecha en la que el deudor solicitó la quiebra o con anterioridad. Título 11 § 101 (10) del U.S.C.

**Deudor:** Una persona, una sociedad anónima u otra entidad que está en quiebra. Utilice el nombre del deudor y el número de caso tal como se muestran en el aviso de quiebra que recibió. Título 11 § 101 (13) del U.S.C.

**Prueba de pasos adicionales:** La prueba de la realización de pasos adicionales para hacer valer un derecho de garantía puede incluir documentos que demuestren que se ha presentado o registrado un derecho de garantía, tal como una hipoteca, un derecho de retención, un certificado de propiedad o una declaración de financiamiento.

**Información que debe mantenerse en privado:** El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo las iniciales del nombre de un menor y el año de la fecha de nacimiento de una persona. Si una reclamación se basa en la prestación de bienes o servicios de atención médica, limite la divulgación de los bienes o servicios a fin de evitar la incomodidad o la divulgación de información de atención médica confidencial. Es posible que, más adelante, se le solicite que brinde más información si el síndico u otra persona de interés se opone a la reclamación.

**Evidencia de reclamación:** Un formulario que detalla el monto de la deuda que el deudor mantiene con un acreedor a la fecha de la presentación. El formulario debe ser presentado en el distrito donde el caso se encuentra pendiente de resolución.

**Edición de información:** Ocultamiento, corrección, o eliminación de cierta información para proteger la privacidad o la información confidencial. Quienes presenten la documentación deben editar u omitir información sujeta a **privacidad** en el formulario de *Evidencia de reclamación* y en cualquier documento adjunto.

**Reclamación garantizada en virtud del Título 11 § 506(a) del U.S.C.:** Una reclamación respaldada por un derecho de retención sobre un bien en particular del deudor. Una reclamación está garantizada en la medida que un acreedor tenga el derecho a recibir un pago proveniente del bien antes de que se les pague a otros acreedores. El monto de una reclamación garantizada generalmente no puede ser mayor que el valor del bien en particular sobre el cual el acreedor mantiene un derecho de retención. Cualquier monto adeudado a un acreedor que sea mayor que el valor del bien generalmente se lo considera una reclamación no garantizada. Sin embargo, existen excepciones; por ejemplo, el Título 11 § 1322(b) del U.S.C., y la oración final de § 1325(a).

Algunos ejemplos de derechos de retención sobre bienes incluyen una hipoteca sobre un inmueble o un derecho de garantía sobre un automóvil. Un derecho de retención puede ser otorgado de manera voluntaria por un deudor o puede obtenerse a través de un procedimiento judicial. En algunos estados, una resolución judicial puede ser un derecho de retención.

**Compensación:** Ocurre cuando un acreedor se paga a sí mismo con dinero que pertenece al deudor y que mantiene en su poder, o cuando el acreedor cancela una deuda que mantiene con el deudor.

**Reclamación no garantizada:** Una reclamación que no cumple con los requisitos de una reclamación garantizada. Una reclamación puede no estar garantizada en parte en la medida que el monto de la reclamación sea mayor que el valor del bien sobre la cual un acreedor tiene un derecho de retención.

## Ofrecimiento de compra de una reclamación

Algunas entidades compran reclamaciones por un monto menor que su valor nominal. Estas entidades pueden contactar a acreedores para ofrecerles la compra de sus reclamaciones. Algunas comunicaciones por escrito de estas entidades pueden confundirse fácilmente con documentación judicial oficial o con comunicaciones del deudor. Estas entidades no representan al tribunal de quiebras, al síndico de la quiebra, ni al deudor. Un acreedor no tiene obligación alguna de vender su reclamación. Sin embargo, si decide hacerlo, cualquier transferencia de esa reclamación está sujeta a la Norma de Quiebras 3001(e), a las correspondientes disposiciones del Código de Quiebras (Título 11 § 101 y subsiguientes del U.S.C.) y a cualquier resolución del tribunal de quiebras que corresponda al caso.

### Envíe la(s) Evidencia(s) de reclamación completa(s) a:

**Si por correo de primera clase:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**Si por el mensajero de una noche o la entrega de mensajero a mano:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

---

**No presente estas instrucciones con su formulario**

---

**Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS)**

**STATEMENT OF CLAIM**

Claimant, TRADEWINDS ENERGY BARCELONETA, LLC ("TRADEWINDS BARCELONETA") files this statement of claim on its behalf and on behalf of its affiliate, TRADEWINDS ENERGY VEGA BAJA, LLC ("TRADEWINDS VEGA BAJA")(Tradewinds Barceloneta and Tradewinds Vega Baja collectively referred to as "TRADEWINDS") in support of certain claims asserted against Debtor, PUERTO RICO ELECTRIC POWER AUTHORITY ('PREPA") for breach of contract.

TRADEWINDS BARCELONETA and TRADEWINDS VEGA BAJA are each a party to (2) Power and Operating Agreements ("Agreements") identified a (i) Wind Power Project No. 2012-P00028 dated October 19, 2011 and (ii) Wind Power Project No. 2012-P00030 (the "Wind Power Projects") dated October 20, 2011,[1] pursuant to which the TRADEWINDS companies agreed to build wind turbine facilities generating 125 megawatts of clean power. In return, PREPA contractually agreed to buy the electricity from the TRADEWINDS companies. A key element of these contracts for capital infrastructure projects was PREPA's good faith in performing its obligations and cooperation so that TRADEWINDS could perform, obtain financing, and construct the wind turbine facilities. TRADEWINDS required minimal, but essential, cooperation: (i) PREPA had to acknowledge its agreements with TRADEWINDS and (ii) provide the Puerto Rican permitting agency with the authorization to issue the necessary permits.

---

[1] On or about November 22, 2011, Tradewinds Energy, LLC assigned its interest in the two Agreements to newly formed entities: Tradewinds Vega Baja for Wind Power Project 2012-P00028 and Tradewinds Barceloneta Wind Power Project 2012-P00030.

Contrary to the obligations of the Agreements, PREPA withheld its authorization, avoiding its contractual promises and ignoring TRADEWINDS' repeated pleas for the most basic cooperation.  These authorizations would cost nothing and would not expand PREPA's commitment – it was merely a restatement of the promises already made, the deals already struck, and the contracts already signed.  Nonetheless, for some unexplained reason, PREPA refused to cooperate, ignoring TRADEWINDS' repeated requests.  At a meeting of the parties, PREPA personnel acknowledged that it would not cooperate with its contractual obligations in order to ensure the projects were not completed.

As a result of PREPA's breach of the Agreements, the TRADEWINDS companies initiated arbitration on January 18, 2016, in San Juan Puerto Rico. The matter was scheduled for Arbitration before Arbitrator Jorge Jimenez in September 2017. A copy of the Demand for Arbitration is attached as **Exhibit "A"**.

The Claims asserted by Tradewinds are as follows -

TRADEWINDS ENERGY BARCELONETA LLC:          $20,400.000

TRADEWINDS ENERGY VEGA BAJA LLC:            $13,600.000

**TOTAL:**                                  **$34,000.000**

# EXHIBIT "A"

**In the Matter of the Arbitration**
**Between**

**TRADEWINDS ENERGY BARCELONETA,**
**LLC; and TRADEWINDS ENERGY VEGA**
**BAJA, LLC,**

        **Claimant,**

**v.**

**PUERTO RICO ELECTRIC POWER**
**AUTHORITY.**

        **Respondent.**

_____/

**DEMAND FOR ARBITRATION**

Claimants, TRADEWINDS ENERGY BARCELONETA, LLC ("TRADEWINDS BARCELONTA") and TRADEWINDS ENERGY VEGA BAJA, LLC ("TRADEWINDS VEGA BAJA") (collectively, "TRADEWINDS") file this Arbitration Demand against Respondent, PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA") for damages and specific performance arising from written contracts, and states the following:

> **TRADEWINDS INITIATES ARBITRATION OF THE IDENTIFIED DISPUTE PURSUANT TO ARTICLE 22.26 "DISPUTE RESOLUTION" OF THE AGREEMENTS BETWEEN THE PARTIES FOR DAMAGES OR SPECIFIC PERFORMANCE.   A COPY OF ARTICLE 22.26 IS ATTACHED.**

**I.**    <u>**SUMMARY**</u>

Claimants TRADEWINDS BARCELONETA and TRADEWINDS VEGA BAJA are each party to a contract with PREPA, in which TRADEWINDS would invest money, jobs, and resources in Puerto Rico to build wind turbine facilities generating 125 megawatts of clean power.  In return, PREPA contractually agreed to buy the electricity from TRADEWINDS. A

1

key element of these capital infrastructure projects was PREPA's good faith in performing its obligations and cooperation so that TRADEWINDS could perform its obligations, obtain financing, and construct the wind turbine facilities.  TRADEWINDS required minimal, but essential, cooperation: PREPA had to acknowledge its agreements with TRADEWINDS and provide the Puerto Rican permitting agency with the authorization to provide the necessary permits.

Even after TRADEWINDS paid hundreds of thousands of dollars, PREPA withheld its authorization, avoiding its contractual promises and ignoring TRADEWINDS' repeated pleas for the most basic cooperation.  These authorizations would cost nothing and would not expand PREPA's commitment – it was merely a restatement of the promises already made, the deals already struck, and the contracts already signed.  Nonetheless, for some unexplained reason, PREPA refused to cooperate, ignoring TRADEWINDS' requests.

When TRADEWINDS would initiate the contractually-mandated period of good-faith negotiations, PREPA would ignore the demands, sidestepping the request to cooperate.  To add insult to frustration, PREPA finally directly responded to TRADEWINDS' invocation of the contractual dispute resolution mechanism and dodged the issue by saying that there was no dispute; therefore there was no need to address it.  As far as PREPA was concerned, the issue was over, except to continue to string along TRADEWINDS with a series of empty half-promises.

This arbitration demand ensues, pursuant to Article 22.26 of the Parties' Agreements.

## II.   CHRONOLOGY OF FACTS

1.   This dispute arises from those two certain Power Purchase and Operating Agreements ("Agreements"), one of which is identified as being for Wind Power Project No.

2012-P00028 and the other for Wind Power Project No. 2012-P00030 ("Wind Power Projects").
Pursuant to these agreements, PREPA agreed to purchase a certain amount of electricity from
TRADEWINDS ENERGY, LLC at a certain price and the Agreement further contemplated that
TRADEWINDS ENERGY, LLC would build and operate two wind turbine facilities to produce
the electricity.

2.     On or about October 19, 2011, PREPA entered into that certain Power Purchase
and Operating Agreement with TRADEWINDS ENERGY, LLC for 2012-P00028.   This
Agreement provides that TRADEWINDS ENERGY, LLC will "construct, own, operate and
maintain an approximately 50 megawatts Qualifying Facility consisting of approximately 25
Wind Turbine Generators in the city of Manati, Puerto Rico" ("Wind Power Project").   The
Agreement further provides that TRADEWINDS ENERGY LLC will "sell exclusively to
PREPA and PREPA will purchase the electric energy produced by" TRADEWINDS ENERGY,
LLC, who is identified as "Seller" in the Agreement.

3.     On or about October 20, 2011, PREPA entered into a Power Purchase and
Operating Agreement with TRADEWINDS ENERGY, LLC for 2012-P00030. This Agreement
provides that TRADEWINDS ENERGY, LLC will "construct, own, operate and maintain an
approximately 75 megawatt Qualifying Facility consisting of approximately 35 Wind Turbine
Generators in the vicinity of Barceloneta, Puerto Rico" ("Wind Power Project"). The Agreement
further provides that TRADEWINDS ENERGY LLC will sell its electricity exclusively to
PREPA and PREPA will purchase the electric energy produced by Seller by TRADEWINDS
ENERGY, LLC, who is identified as "Seller" in the Agreement.

4.     On or about November 22, 2011, TRADEWINDS ENERGY, LLC assigned its
interest in the two Agreements to newly formed entities: TRADEWINDS VEGA BAJA for

Wind Power Project 2012-P00028 and TRADEWINDS BARCELONETA Wind Power Project 2012-P00030. The Agreements were assigned simply to facilitate financing, with the ownership and management team remaining intact.   TRADEWINDS VEGA BAJA and TRADEWINDS BARCELONETA are collectively referred to as TRADEWINDS.

### A.  Contractual Provisions

5.      Both of the Agreements share several material provisions that are relevant to the Parties' dispute – most specifically the issues of permitting, the duties of cooperation, and the dispute resolution process. The provisions are as follow:

### 1)  The Deal

6.      TRADEWINDS agreed to build wind turbine electricity generating plants and sell the resulting energy to PREPA.  In turn, PREPA agreed to purchase the electricity produced. This sort of agreement is standard, because a party will not undertake such a large capital infrastructure project unless it have a buyer for the resulting output.

a.      TRADEWINDS agreed to "construct, own, operate and maintain" a Quailifying Facility of a certain approximate number of Wind Turbine Generators producing a certain amount of megawatts. Agreement at p.2.

b.      TRADEWINDS, as "Seller", agreed to sell and PREPA, as "Buyer", agreed to accept delivery of and purchase the electrical output from TRADEWINDS wind turbine facilities. Agreement at Article 2.1.

### 2)  Permits Required

c.      In order to trigger PREPA's obligation to purchase the electricity, TRADEWINDS was required to provide copies of all material permits needed to construct and operate the facility and its Interconnection Facilities." Article 2.2 (d); Article 2.3.

### 3)  Cooperation

d.      The duties for the parties to cooperate were an essential element of the relationship. The importance of reasonably commercial cooperation is evidenced by the fact that it was repeated throughout the Agreement. In Article 4.5, the Agreements state

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

> To the extent legally permitted, the Parties agree to cooperate reasonably and in good faith in the mutually beneficial endeavor to obtain (i) control of, or other required access and rights to, the real property upon which the Facility Interconnection Facilities will be located, (ii) financing for the Facility and Interconnection Facilities and (iii) all necessary Permits, endorsements and approvals for sighting and construction of the Facility and the Interconnection Facilities.

Agreement at Article 4.5.

  e.  Later in the Agreement, the duty of good faith is repeated. Article 22.13 of the Agreements states:

> Each Party to this Agreement warrants that, except to the extent that a particular provision of this Agreement expressly creates a different standard, it will be reasonable with respect to the substance and timing of any exercise of its respective rights, obligations, duty and discretions in implementing this Agreement, including, without limitation, the making of and satisfying of request, the issuance and withholding of consensus and findings of acceptability or satisfaction, the incurrence of costs that are the responsibility of the other party, and the provision of notice to the other Party and the Project Lenders if applicable.

Agreement at Article 22.13

  f.  The provision of Article 22.13 was so important to PREPA, who drafted the Agreements, that the exact same paragraph is repeated verbatim at Article 22.29.

## 4)  Term

  g.  The Parties agreed that the Agreements would have an initial term of 20 years. Agreement at Article 5.1. That initial term could be extended by mutual agreement for up to two consecutive periods of 5 years, for a total extension of 10 years.  Article 5.2.

## 5)  Breach and Dispute Resolution

  h.  The Agreements specifically provide that a "breach of this Agreement shall be deemed to exist upon the occurrence of any one of the following: ... (ii) the failure by either Party to perform in any material respect its obligations under this Agreement, subject to the provision of Section 17.3." Article 17.3 provides that if "either

5

Party believes the other Party has breached this Agreement pursuant to Section 17.1 (ii) above, the non-breaching Party shall provide the other Party with written notice ...". The section goes on to state that if the breaching party disputes in writing that a "breach has occurred, the parties may pursue a resolution by the Dispute Resolution process provided for in Section 22.25."[1] That provision provides that in the event of a "dispute or controversy" arising between the Parties relating to any aspect of the Agreement, then the "Party" raising the Dispute shall give written notice to the other Parties setting forth in reasonable detail of the scope and nature of such dispute, including without limitation and identification the provisions of this Agreement under which Dispute arises".

    i.    The Agreement reflects the Parties' intent that the dispute arising under the terms of the Agreements would be "resolved as expeditiously as possible, either by mutual negotiations or an amendment to the Agreement or, failing such, in accordance with provisions of the Dispute Resolution section." The Parties were obligated to enter into negotiations in order to resolve the dispute. Article 22.26(b). PREPA was obligated to "negotiate in good faith." *Id.*

    j.    After the expiration of 60 days, if the dispute is not resolved through negotiations, the Parties would proceed to Arbitration. *See id* at Article 22.26(c). The Parties agreed to attempt to agree on one arbitrator "with special knowledge and expertise with respect to the dispute". If the Parties cannot agree on an Arbitrator within (10) ten days, each will then appoint one neutral person to serve as an Arbitrator and the two thus appointed shall select a third Arbitrator ..." *Id*. The Dispute Resolution provision further outlines the method in which the Arbitration is to be conducted.

---

[1] The reference to Section 22.25 must be a typographical error because the Section entitled "Dispute Resolution" is found in Section 22.26.

6

### B. PREPA's Continued Breaches of Duty

7.    After the Agreements were executed, TRADEWINDS proceeded, to fulfill their obligations pursuant to the Agreement.

8.    On or about February 24, 2012, TRADEWINDS BARCELONETA made a payment in the amount of $375,000.00 to PREPA for a necessary Interconnection Point Study, as required by Article 9.6 of the Agreement.

9.    On September 29, 2012, PREPA issued a letter to Claimants regarding the assignment of Agreements, which stated that "a written consent is required for the valid assignment of the Agreement to a third party." The letter then goes on to cite the provisions of the Agreements.

10.    On February 12, 2013, TRADEWINDS sent PREPA a letter regarding the assignment of the Agreements which, among other things, requested that PREPA acknowledge the assignment of the Agreements from TRADEWINDS ENERGY, LLC.

11.    On March 8, 2013, TRADEWINDS sent a letter to PREPA summarizing their March 6, 2013 meeting that week with PREPA representatives, Ms. Cruz Gonzalez and Mr. Soto Suarez, and further stating that TRADEWINDS VEGA BAJA was ready, willing, and able to make the Interconnection Point Study payment, but noting that PREPA had indicated it best to wait until it confirmed the changes to the proposed project before making the payment.

12.    On March 11, 2013, TRADEWINDS contracted with ATKINS Caribe, LLP to assist in retaining environmental studies and permits required for the Wind Energy Projects. TRADEWINDS also authorized ATKINS Caribe, LLP to represent it in the filing of permit applications and related transactions.

13.    On June 5, 2013, TRADEWINDS wrote two letters to memorialize its June 4, 2013 meeting with PREPA's Head of Planning, Mrs. Cruz, in which the parties discussed the

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

assignment of the Agreements to TRADEWINDS from TRADEWINDS ENERGY.  In that correspondence, TRADEWINDS attached the Assignments and requested PREPA's acknowledgement and the necessary changes to the official records.

14.     On January 10, 2014, the Puerto Rico permitting office, Oficina de Gerencia de Permisos ("OGPe") issued correspondence to TRADEWINDS that the application had been received but more information was necessary.

15.     On September 29, 2014, the OGPe issued another correspondence to TRADEWINDS stating that they required a letter of authority from PREPA in order to finalize the permitting process and providing Claimants with (30) thirty day deadline for completion.

16.     On October 29, 2014, OGPe issued correspondence to TRADEWINDS notifying it of the cancellation of the permitting application for failure to provide the previously requested letter of authority from PREPA.

17.     During that time ATKINS, as the representative of TRADEWINDS, met with the OGPe during which time the representatives of that office stated that it would not proceed with the issuance of permits absent authorization from PREPA.

18.     On January 15, 2015, TRADEWINDS issued a letter to PREPA Executive Director Alicia-Flores reiterating that they had

> completed all necessary requirements for the submittal of its application for issuance of Environmental Permits required for the [Wind Power Projects] with the Oficina de Gerencia de Permisos ("OGPe"), however, due to active efforts by PREPA, the OGPe has not proceeded to review the application, and has instead, due again to inaction by PREPA, canceled such application for Environmental Permits.  OGPe indicated that it would require a letter from PREPA indicating that the [Agreements] with [Tradewinds] was "active"

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

19.     That letter also requested, among other things, that: a) PREPA issue an acknowledgement that the Agreements were "active and constitutes a valid obligation of PREPA", which acknowledgement must be sent to OGPe; and b) PREPA acknowledge the assignment of the Agreements from TRADEWINDS ENERGY to TRADEWINDS BARCELONETA and TRADEWINDS VEGA BAJA.

20.     On January 21, 2015, TRADEWINDS sent a letter to PREPA outlining proposals to resolve all pending issues regarding the Wind Energy Projects.  The letter noted that "Tradewinds has undertaken, in good will, all necessary efforts, and incurred all necessary expenses to make the Tradewinds projects outlined above a reality.  Both projects are ripe and ready for environmental permits. We hope that through this effort we can reach a solution that is realistic to both Tradewinds and PREPA."

21.     On or about March 31, 2015, TRADEWINDS entered into a Letter of Intent with Goldwind USA, Inc. ("Goldwind"), to enter into an agreement to provide TRADEWINDS with the wind turbine and project financing. Goldwind then communicated directly with PREPA, requesting information concerning the Agreements and permitting and informing PREPA that the financing would be dependent on the permitting.

22.     On April 9, 2015, TRADEWINDS sent another letter to PREPA requesting a meeting to discuss the status of the Wind Power Projects.  That letter specifically references that the financing secured for the project is based on successful permitting.

23.     On April 13, 2015, TRADEWINDS sent another letter to PREPA Executive Director Alicea-Flores, requesting a meeting.  An identical letter was sent to Mr. Colberg Toro, Secretario de Asuntos Publicos Gobernación, Estado Libre Asociado de Puerto Rico., requesting a meeting with Governor Garcia Padilla.  Both letters indicated that TRADEWINDS would be

making a significant investment in Puerto Rico, injecting 125 megawatts to the electrical grid on the island, powering the economy and bringing new technical jobs to the island, both during construction and the operation of the Wind Power Projects, as well as the possibility of manufacturing wind turbines on the island, "creating hundreds of new jobs."

24.    On April 15, 2015, TRADEWINDS sent correspondence to PREPA Executive Director Mr. Alicia-Flores requesting the initiation of the (60) sixty day negotiation period set forth under the Dispute Resolution provisions of the Agreements.  Specifically, the letter states:

> Please be advised that due to the difficulties encountered by Tradewinds Energy Vega Baja, LLC and Tradewinds Energy Barceloneta, LLC in securing the necessary permits to allow them to perform under the above identified contracts, difficulties that are being deliberately caused by AEE [Autoridad de Energia Electrica] in blocking the permitting process outlined by the OGPe, we hereby seek the commence [sic] of that 60-day period of negotiations outlined and set forth under Article 22.26 of the PPOA [Agreement]. . . .Should the 60-day negotiation period not result I an amicable resolution of the dispute between the parties, the same Article 22.26 allows for arbitration of the various dispute between the parties after conclusion of the 60-day negotiation period.  Please note that the 60-day period shall commence from the date this letter is delivered to the AEE.

25.    On July 15, 2015, TRADEWINDS sent correspondence to the PREPA Interim Director Mr. Castro, which repeated the very same demand and language as the April 15, 2015 correspondence to Mr. Alicia-Flores.

26.    On August 31, 2015, TRADEWINDS sent correspondence to the new PREPA Executive Director Mr. Quintana Mendes, which repeated the very same demand and language as the April 15, 2015 correspondence to Mr. Alicia-Flores and the July 15, 2015 correspondence to Interim Director Castro.

27.    As evidenced in its monthly progress reports,  TRADEWINDS reiterated that the OGPe was unable to finalize the permit application process for the Wind Power Projects because

10

PREPA was not providing a letter indicating that the Agreements were still active. Yet again, Claimants requested that PREPA send the Letter of Authority to the Puerto Rican Permitting Office.

28.     In September 2015, Claimants' representatives had a meeting with the newest director of PREPA, Mr. Quintana Mendes. At that meeting, Mr. Quintana Mendes said he was new on the job and needed time to look over the documentation so a second meeting was set. At that second meeting, director of planning Sonia Miranda was present along with director Mr. Quintana Mendes. At this second meeting, TRADEWINDS was told that PREPA had over 100 energy contracts and that the current electrical network could not handle the power output from all the energy providers. Director Sonia Miranda informed Claimants at that meeting that the Board of PREPA created a list of (18) eighteen pre-selected energy providers that they provided to use out of the over 100 contracts in to which PREPA had entered. According to director Sonia Miranda, all (18) eighteen of the secretly selected, pre-approved contractors were solar energy. She stated at that meeting that of the list of the (18) eighteen, there was a possibility that some of the companies would be removed and that Claimants would be informed if they would be allowed on this list, notwithstanding their contract. On or about October 28, 2015 PREPA sent a letter to TRADEWINDS unilaterally deciding that there was no "dispute" and, in their mind, closing the matter.

29.     Shortly thereafter, on October 30, 2015, TRADEWINDS wrote to Mr. Zuleta of the Oficina De Genercia de Permisos ("OGPe"), requesting the continued and expedited issuance of the application for an environmental license.  TRADEWINDS included PREPA's October 28, 2015     correspondence     which,     according     to     PREPA,     indicated

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

that OGPe had not requested information and that no dispute existed. TRADEWINDS again requested OGPe to issue the necessary permits.

30.     On November 20, 2015, TRADEWINDS responded to PREPA's October 28, 2015 correspondence and wrote to PREPA's Executive Director Quintana Mendez, stating that PREPA's articulated position was inconsistent with the position OGPe had provided in October 2014. TRADEWINDS reiterated that OGPe indicated it would not proceed with the issuance of permits absent authorization from PREPA. TRADEWINDS again asked that "we proceed immediately with a dispute resolution meeting …." Absent an agreement "we will have no choice but to proceed to arbitration as set forth" in the Agreements.

31.     On or about December 14, 2015, Claimants' representatives met with director Mr. Quintana Mendes of PREPA. During that meeting, the director said that only (14) fourteen of the list of (18) eighteen secretly selected energy contracts were going forward. He reiterated the possibility that Claimants could be added to the list.

## III.    CLAIMS AND DAMAGES[2]

32.     PREPA has breached the Agreements through a continual and systematic course of ignoring its contractual and lawful duty to cooperate with TRADEWINDS in effecting the terms of the Agreements, which include, but are not limited to cooperation and a duty of good faith and fair dealing.

33.     In engaging in these wrongful actions and inactions, PREPA knew that without its cooperation, TRADEWINDS could not obtain the permits necessary to construct the Wind Project Projects. Thus, PREPA interfered with and obstructed TRADEWINDS' contractually required efforts to obtain the required permits.

---

[2] While arbitration utilizes a very relaxed standard of pleading and stating a claim, if the Tribunal so desires a specified statement of claim, one will be provided.

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

34.     PREPA never honestly informed TRADEWINDS why it was undermining the Agreement, whether it was a shift in the political winds, or a technical inability to honor the contract, or just bureaucratic ineptitude.  But that reason does not matter in the least bit.

35.     PREPA was contractually obligated to honor its promises.

36.     TRADEWINDS relied on those promises, expending hundreds of thousands of dollars, time, effort, expertise, and other resources to perform under the Agreements, only to be hamstrung by its partner in bringing clean, cheap, and renewable energy to Puerto Rico.

37.     The full extent of PREPA's breaches of duties, whether in contract or tort, are not yet known, but may include tortious interference in the lawful relationship with OCPe, misrepresentation, and other bad acts.

**38.**     Due to its breaches, TRADEWINDS has been damaged in an amount that is **not less than $30,000,000.**

39.     If the breaches can be rectified, and TRADEWINDS has not so ascertained, then in the alternative, PREPA should be required to fully perform under the Agreements, to provide TRADEWINDS with the benefit of the bargain.

40.     TRADEWINDS reserves the right to assert a claim for **punitive damages** against PREPA, as a result of additional evidence obtained in discovery.

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

WHEREFORE, Claimants, TRADEWINDS ENERGY BARCELONETA, LLC and TRADEWINDS ENERGY VEGA BAJA, LLC request that this Honorable Tribunal enter an award against Respondent, PUERTO RICO ELECTRIC POWER AUTHORITY for damages to exceed **$30,000,000,** interest, costs, and the expenses of this arbitration, or alternatively, the enforcement and performance of the Agreement and any damages and interest resulting from delay, costs, and the expenses of this arbitration.

Dated: January 18, 2016

John Arrastia, Jr.
ARRASTIA CAPOTE PARTNERS LLP
Miami Tower
100 SE 2nd Street, Ste. 4505
Miami, FL 33131
Phone: (786) 871-5680
Fax: (786) 866-6358
John@acplegal.com

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

<u>COMPLIANCE WITH NOTICE REQUIREMENTS</u>

I HEREBY CERTIFY that on this date, I forwarded this Arbitration Demand to by certified mail

to:

Puerto Rico Electric Power Authority
G.P.O. Box 364267
San Juan, Puerto Rico 00936-4267
Attn: Director of Planning and Environmental

(no telecopier number provided despite request)

and

Jaiver Quintana Mendez
Executive Director
PREPA
G.P.O Box 364267
San Juan, Puerto Rico 00936-4267
and additionally via email <u>Javier.quintana@aeepr.com</u>  and telefax at 787.521.4665

15

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 80

22.26 Dispute Resolution: If a dispute or controversy arises between the Parties relating to the effectiveness, validity, interpretation, implementation, termination, cancellation, performance of, or enforcement of this Agreement, then the Party raising the Dispute shall give written notice to the other Party setting forth in reasonable detail the scope and nature of such Dispute, including without limitation an identification of the provisions of this Agreement under which such Dispute arises.

(a) It is the Parties' Intent that disputes arising under the terms of this Agreement be resolved as expeditiously as possible, either by mutual negotiation or an amendment to the Agreement or, failing such, in accordance with the provisions set forth in this Section 22.26.

(b) If any dispute arises, the person designated by Seller, shall, as soon as is practicable, enter into negotiations with the representative designated by PREPA to resolve such dispute. Both PREPA and Seller will negotiate in good faith.

(c) If within sixty (60) days the dispute is not resolved through negotiations pursued diligently and in good faith, the Parties shall attempt to agree on a person with special knowledge and expertise with respect to the dispute to serve as arbitrator.  If the Parties cannot agree on an arbitrator within ten (10) days, each shall then appoint one neutral person to serve as an arbitrator and the two thus appointed shall select

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 81

a third arbitrator with such special knowledge and expertise to serve as chairman of the panel of arbitrators; and such three arbitrators shall determine all matters by majority vote provided, however, if the two arbitrators appointed by the Parties are unable to agree upon the appointment of the third arbitrator within five (5) days after their appointment, both shall give written notice of such failure to agree to the Parties, and, if the Parties fail to agree upon the selection of such third arbitrator within five (5) days thereafter, then either of the Parties upon written notice to the other may require such appointment from a Court of Competent Jurisdiction.  The Parties shall have sixty (60) days to perform discovery and present evidence and argument to the arbitrators.  During that period, the arbitrators shall be available to receive and consider all such evidence as is relevant and, within reasonable limits due to the restricted time period, to hear as much argument as is feasible, giving a fair allocation of time to each Party to the arbitration.  The arbitrators shall use all reasonable means to expedite discovery and to sanction noncompliance with reasonable discovery requests or any discovery order.  The arbitrators shall not consider any evidence or argument not presented during such period and shall not extend such period except by the written consent of both

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 82

Parties.  At the conclusion of such period, the arbitrators shall have forty-five (45) days to reach a determination.

(d) The arbitrators shall have the right only to interpret and apply the terms and conditions of this Agreement and to order any remedy allowed by this Agreement, but may not change any term or condition of this Agreement, deprive either Party of any right or remedy expressly provided hereunder, or provide any right or remedy that has been excluded hereunder.

(e) The arbitrators shall give a written decision to the Parties stating their findings of fact, conclusions of law and order, and shall furnish to each Party a copy thereof signed by them within five (5) days from the date of their determination.

(f) Any actual determination made by the arbitrators shall be conclusive and binding upon the Parties and not subject to judicial review, except on the grounds of fraud or bias and may be presented to any Court of Competent Jurisdiction as a stipulation of the Parties.  Any conclusions and any order issued by the arbitrators shall be subject to review in any Court of Competent Jurisdiction, provided however, that any order issued by the arbitrators shall be effective and enforceable unless and until a stay of the order is issued by the arbitrators or by such court

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 83

               under the prevailing standards for issuing stays, or such court enjoins, modifies or reverses the order of the arbitrators.

(g)    The Parties shall each pay fifty percent (50%) of the cost of arbitrator or arbitrators.

(h)    The dispute resolution process will be carried out in San Juan, PR, in the English language.

22.27 PREPA hereby irrevocably and unconditionally, for itself and for any Person claiming by or through PREPA: (a) agrees that the execution, delivery and performance by it of this Agreement does and will constitute private and commercial acts done and performed for private and commercial purposes; (b) waives any and all rights, claims, defenses and immunities it or any of its assets has or may in the future have in any jurisdiction based on sovereign immunity or any similar rights, claims or defenses, in each case in respect of any claims or proceedings, the receipt of notice, service of process, compliance with judgments or orders or the enforcement of any such judgment, award or order in each case arising in respect of this Agreement or transactions contemplated in this Agreement; and (c) consents generally in respect of the enforcement of any judgment, award or order against it or its assets in any such proceedings to the giving of any relief or the issue of any process in any jurisdiction in connection with such claims or proceedings.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

**Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación).**

| | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☐ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☒ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

## Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario. Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.**

Quienes presenten la documentación deben omitir o editar información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

Fill in all the information about the claim as of the Petition Date.

**Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

| | |
|---|---|
| 1.  **Who is the current creditor?**<br><br>**¿Quién es el acreedor actual?** | **Tradewinds Energy Barceloneta, LLC**<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br>Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)<br><br>Other names the creditor used with the debtor<br>Otros nombres que el acreedor usó con el deudor |

| | |
|---|---|
| 2. **Has this claim been acquired from someone else?**<br><br>**¿Esta reclamación se ha adquirido de otra persona?** | ☒ No / No<br>☐ Yes. From whom?<br>Sí. ¿De quién? _____ |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>**¿A dónde deberían enviarse las notificaciones al acreedor?**<br><br>Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g | **Where should notices to the creditor be sent?**<br>**¿A dónde deberían enviarse las notificaciones al acreedor?**<br><br>Tradewinds Energy Barceloneta, LLC<br>c/o John Arrastia, Esq.<br>Mariaelena Gayo-Guitian, Esq.<br>Genovese Joblove & Battista, P.A.<br>100 SE 2nd Street, Suite 4400<br>Miami, FL 33131<br><br>305-349-2300<br>Contact phone / Teléfono de contacto<br><br>jarrastia@gjb-law.com<br>Contact email / Correo electrónico de contacto | **Where should payments to the creditor be sent?** (if different)<br>**¿A dónde deberían enviarse los pagos al acreedor?** (En caso de que sea diferente)<br><br><br><br><br><br><br><br>Contact phone / Teléfono de contacto<br><br><br>Contact email / Correo electrónico de contacto |

| 4. **Does this claim amend one already filed?**<br><br>**¿Esta reclamación es una enmienda de otra presentada anteriormente?** | ☒ No / No<br>☐ Yes.  Claim number on court claims registry (if known)<br>Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>Filed on / Presentada el _____(MM /DD/YYYY) / (DD/MM/AAAA) |

| 5. **Do you know if anyone else has filed a proof of claim for this claim?**<br><br>**¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación?** | ☒ No / No<br>☐ Yes. Who made the earlier filing?<br>Sí. ¿Quién hizo la reclamación anterior?_____ |

**Part 2 / Parte 2:**   Give Information About the Claim as of the Petition Date

Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.

| 6. **Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?**<br><br>**¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico?** | ☐ No / No<br>☒ Yes.  Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí.  Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/.)<br><br>Puerto Rico Electric Power Authority |

| 7. **Do you supply goods and / or services to the government?**<br><br>**¿Proporciona bienes y / o servicios al gobierno?** | ☒ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

8. **How much is the claim?**

   **¿Cuál es el importe de la reclamación?**

   $ 20,400,000.00_____ . **Does this amount include interest or other charges?**
   **¿Este importe incluye intereses u otros cargos?**

   ☒ No / No

   ☐ Yes. Attach statement itemizing interest, fees, expenses, or other
   charges required by Bankruptcy Rule 3001(c)(2)(A).
   Sí. Adjunte un balance con intereses detallados, honorarios,
   gastos u otros cargos exigidos por la Norma de Quiebras
   3001(c)(2)(A).

9. **What is the basis of the claim?**

   **¿Cuál es el fundamento de la reclamación?**

   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit
   disclosing information that is entitled to privacy, such as health care information.

   Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u
   homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la
   reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que
   reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.

   Breach of contract relating to two Power Purchase and Operating Agreements for Wind Power
   Project Nos. 2012-P00028 and 2012-P00030_____

10. **Is all or part of the claim secured?**

    **¿La reclamación está garantizada de manera total o parcial?**

    ☒ No / No

    ☐ Yes. The claim is secured by a lien on property.
    Sí. La reclamación está garantizada por un derecho de retención sobre un bien.

    **Nature of property / Naturaleza del bien:**
    ☐ Motor vehicle / Vehículos

    ☐ Other. Describe:
    Otro. Describir: _____

    **Basis for perfection / Fundamento de la realización de pasos adicionales:**

    _____

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for
    example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has
    been filed or recorded.)
    Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales
    para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un
    certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha
    presentado o registrado un derecho de retención.)

    **Value of property / Valor del bien:** $_____

    **Amount of the claim that is secured /**
    **Importe de la reclamación que está garantizado:** $_____

    **Amount of the claim that is unsecured /**
    **Importe de la reclamación que no está garantizado:** $_____
    (The sum of the secured and unsecured amounts should match the amount in line 7.)
    (La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)

    **Amount necessary to cure any default as of the Petition Date /**
    **Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso :**

    $_____

    **Annual Interest Rate** (on the Petition Date)
    **Tasa de interés anual** (cuando se presentó el caso)_____%
    ☐ Fixed / Fija
    ☐ Variable / Variable

11. **Is this claim based on a lease?**

    **¿Esta reclamación está basada en un arrendamiento?**

    ☒ No / No

    ☐ Yes. **Amount necessary to cure any default as of the Petition Date.**
    Sí. **Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso**
    $_____

| 12. **Is this claim subject to a right of setoff?**<br><br>**¿La reclamación está sujeta a un derecho de compensación?** | ☒ No / No<br><br>☐ Yes. Identify the property /<br>Sí. Identifique el bien: _____ |
|---|---|

| 13. **Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>**¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☒ No / No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**<br><br>Sí. **Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación.** | $ _____ |

---

### Part 3 / Parte 3:

Sign Below / Firmar a continuación

| **The person completing this proof of claim must sign and date it.** FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha.** FRBP 9011(b).<br><br>Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma. | Check the appropriate box / Marque la casilla correspondiente:<br><br>☐ I am the creditor. / Soy el acreedor.<br><br>☒ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.<br><br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.<br><br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.<br><br>I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda.<br><br>I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.<br><br>He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.<br><br>I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto. |

Signature: *Mariaelena Gayo-Guitian*
Mariaelena Gayo-Guitian (Apr 30, 2018)

Signature / Firma _____  **Email:** mguitian@gjb-law.com

**Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:**

Name _____ Mariaelena Gayo-Guitian, Esq _____
First name / Primer nombre    Middle name / Segundo nombre    Last name / Apellido

Title / Cargo _____ Attorney for Tradewinds Energy Barceloneta, LLC

Company / Compañía _____ Genovese Joblove & Battista, P.A.
Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

Address / Dirección _____ 100 SE 2nd Street, Suite 4400
Number / Número    Street / Calle

_____ Miami _____ FL _____ 33131
City / Ciudad    State / Estado    ZIP Code / Código postal

Contact phone / Teléfono de contacto __ 305-349-2300 __ Email / Correo electrónico __ jarrastia@gjb-law.com

**Attach Supporting Documentation** (limited to a single PDF attachment that is less than 5 megabytes in size and under 100 pages):

☒ have supporting documentation.
   (attach below)                    ☐ I do **not** have supporting documentation.

📎 Attachment

PLEASE REVIEW YOUR PROOF OF CLAIM AND SUPPORTING DOCUMENTS AND REDACT
ACCORDINGLY PRIOR TO UPLOADING THEM. PROOFS OF CLAIM AND ATTACHMENTS
ARE PUBLIC DOCUMENTS THAT WILL BE AVAILABLE FOR ANYONE TO VIEW ONLINE.

IMPORTANT NOTE REGARDING REDACTING YOUR PROOF OF CLAIM AND SUPPORTING
DOCUMENTATION When you submit a proof of claim and any supporting documentation you must show
only the last four digits of any social-security, individual's tax-identification, or financial-account number,
only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on
the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid
embarrassment or the disclosure of confidential health care information.

A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain
information. The responsibility for redacting personal data identifiers (as defined in Federal Rule of
Bankruptcy Procedure 9037) rests solely with the party submitting the documentation and their counsel.
Prime Clerk and the Clerk of the Court will not review any document for redaction or compliance with this
Rule and you hereby release and agree to hold harmless Prime Clerk and the Clerk of the Court from the
disclosure of any personal data identifiers included in your submission. In the event Prime Clerk or the Clerk
of the Court discover that personal identifier data or information concerning a minor individual has been
included in a pleading, Prime Clerk and the Clerk of the Court are authorized, in their sole discretion, to
redact all such information from the text of the filing and make an entry indicating the correction.

# Instructions for Proof of Claim

United States Bankruptcy Court                                                                                                    12/15

**These instructions and definitions generally explain the law. In certain circumstances, such as bankruptcy cases that debtors do not file voluntarily, exceptions to these general rules may apply. You should consider obtaining the advice of an attorney, especially if you are unfamiliar with the bankruptcy process and privacy regulations.**

## How to fill out this form

- **Fill in all of the information about the claim as of the petition date.**

- **Fill in the caption at the top of the form.**

- **If the claim has been acquired from someone else, then state the identity of the last party** who owned the claim or was the holder of the claim and who transferred it to you before the initial claim was filed.

- **Attach any supporting documents to this form.**
  Attach redacted copies of any documents that show that the debt exists, a lien secures the debt, or both. (See the definition of *redaction* on the next page.)

  Also attach redacted copies of any documents that show perfection of any security interest or any assignments or transfers of the debt. In addition to the documents, a summary may be added. Federal Rule of Bankruptcy Procedure (called "Bankruptcy Rule") 3001(c) and (d).

- **Do not attach original documents because attachments may be destroyed after scanning.**

- **If the claim is based on delivering health care goods or services, do not disclose confidential health care information. Leave out or redact confidential information both in the claim and in the attached documents.**

- **A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, individual's tax identification number, or financial account number, and only the year of any person's date of birth.** See Bankruptcy Rule 9037.

- **For a minor child, fill in only the child's initials and the full name and address of the child's parent or guardian.** For example, write *A.B., a minor child* (*John Doe, parent, 123 Main St., City, State*). See Bankruptcy Rule 9037.

## Confirmation that the claim has been filed

To receive confirmation that the claim has been filed, either enclose a stamped self-addressed envelope and a copy of this form or contact the Claims and Noticing Agent at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), or by email at puertoricoinfo@primeclerk.com. You may view a list of filed claims in the Title III cases by visiting the Claims and Noticing Agent's website at https://cases.primeclerk.com/puertorico.

## Understand the terms used in this form

**Administrative expense:** Generally, an expense that arises after a bankruptcy case is filed in connection with operating, liquidating, or distributing the bankruptcy estate. 11 U.S.C. § 503.

**Claim:** A creditor's right to receive payment for a debt that the debtor owed on the date the debtor filed for bankruptcy. 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Claim Pursuant to 11 U.S.C. § 503(b)(9):** A claim arising from the value of any goods received by the Debtor within 20 days before the petition date, in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business. Attach documentation supporting such claim.

**Creditor:** A person, corporation, or other entity to whom a debtor owes a debt that was incurred on or before the date the debtor filed for bankruptcy. 11 U.S.C. § 101 (10).

**Debtor:** A person, corporation, or other entity who is in bankruptcy. Use the debtor's name and case number as shown in the bankruptcy notice you received. 11 U.S.C. § 101 (13).

**Evidence of perfection:** Evidence of perfection of a security interest may include documents showing that a security interest has been filed or recorded, such as a mortgage, lien, certificate of title, or financing statement.

**Information that is entitled to privacy:** A *Proof of Claim* form and any attached documents must show only the last 4 digits of any social security number, an individual's tax identification number, or a financial account number, only the initials of a minor's name, and only the year of any person's date of birth. If a claim is based on delivering health care goods or services, limit the disclosure of the goods or services to avoid embarrassment or disclosure of confidential health care information. You may later be required to give more information if the trustee or someone else in interest objects to the claim.

**Proof of claim:** A form that shows the amount of debt the debtor owed to a creditor on the petition date. The form must be filed in the district where the case is pending.

**Redaction of information:** Masking, editing out, or deleting certain information to protect privacy or confidential information. Filers must redact or leave out information entitled to **privacy** on the *Proof of Claim* form and any attached documents.

---

**Do not file these instructions with your form**

---

**Secured claim under 11 U.S.C. § 506(a):** A claim backed by a lien on particular property of the debtor. A claim is secured to the extent that a creditor has the right to be paid from the property before other creditors are paid. The amount of a secured claim usually cannot be more than the value of the particular property on which the creditor has a lien. Any amount owed to a creditor that is more than the value of the property normally may be an unsecured claim. But exceptions exist; for example, see 11 U.S.C. § 1322(b) and the final sentence of § 1325(a).

Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment may be a lien.

**Setoff:** Occurs when a creditor pays itself with money belonging to the debtor that it is holding, or by canceling a debt it owes to the debtor.

**Unsecured claim:** A claim that does not meet the requirements of a secured claim. A claim may be unsecured in part to the extent that the amount of the claim is more than the value of the property on which a creditor has a lien.

## Offers to purchase a claim

Certain entities purchase claims for an amount that is less than the face value of the claims. These entities may contact creditors offering to purchase their claims. Some written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court, the bankruptcy trustee, or the debtor. A creditor has no obligation to sell its claim. However, if a creditor decides to sell its claim, any transfer of that claim is subject to Bankruptcy Rule 3001(e), any provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.) that apply, and any orders of the bankruptcy court that apply.

## Please send completed Proof(s) of Claim to:

**If by first class mail:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**If by overnight courier or hand delivery:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

# Instrucciones para la Evidencia de reclamación

Tribunal de Quiebras de los Estados Unidos                                                                     12/15

**Estas instrucciones y definiciones explican la ley de forma general. En ciertas circunstancias, tales como casos de quiebra que los deudores no presentan de forma voluntaria, se pueden aplicar excepciones a estas normas generales. Debe considerar la posibilidad de obtener el asesoramiento de un abogado, en especial si no conoce el proceso de quiebra y las reglamentaciones de privacidad.**

## Cómo completar este formulario

- **Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

- **Complete el título en la parte superior del formulario.**

- **Si la reclamación se ha adquirido de otra persona, indique la identidad de la última parte** que fue propietaria de la reclamación o fue titular de la reclamación y que la transfirió a usted antes de que se presente la reclamación inicial.

- **Adjunte cualquier documento de respaldo a este formulario.**
  Adjunte copias editadas de cualquier documento que demuestre que la deuda existe, que un gravamen garantiza la deuda, o ambos. (Ver la definición de *edición* en la siguiente página).

  También adjunte copias editadas de cualquier documento que demuestre el perfeccionamiento de un derecho de garantía o cualquier cesión o transferencia de la deuda. Además de los documentos, puede agregarse un resumen. Norma federal del procedimiento de quiebra (denominada "Norma de quiebra") 3001(c) y (d).

- **No adjunte documentos originales, ya que es posible que los documentos adjuntos se destruyan luego de examinarlos.**

- **Si la reclamación se basa en la prestación de bienes o servicios de atención médica, no divulgue información de atención médica confidencial. Omita o edite la información confidencial tanto en la reclamación como en los documentos adjuntos.**

- **El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo el año de la fecha de nacimiento de una persona.** Ver la Norma de quiebra 9037.

- **En el caso de un menor, complete solamente las iniciales del menor y el nombre completo y la dirección del padre o madre o el tutor del menor.** Por ejemplo, escriba *A.B., un menor* (*John Doe, padre, calle 123, ciudad, estado*). Ver la Norma de quiebra 9037.

## Confirmación de que se ha presentado la reclamación

Para recibir una confirmación de que se ha presentado la reclamación, puede adjuntar un sobre autodirigido y estampillado y una copia de este formulario o comunicarse con el representante de reclamaciones y notificaciones al (844) 822-9231 (número gratuito para EE. UU. y Puerto Rico) o al (646) 486-7944 (para llamadas internacionales), o por correo electrónico a puertoricoinfo@primeclerk.com. Para ver una lista de las reclamaciones presentadas en los casos del Título III, visite el sitio web del representante de reclamaciones y notificaciones en https://cases.primeclerk.com/puertorico.

## Comprenda los términos utilizados en este formulario

**Gastos administrativos:** En términos generales, gastos que se generan luego de presentar un caso de quiebra en relación con el manejo, la liquidación o la distribución del patrimonio de la quiebra.
Título 11 § 503 del Código de los Estados Unidos (U.S.C.).

**Reclamación:** El derecho de un acreedor a recibir un pago por una deuda del deudor a la fecha en la que el deudor solicitó la quiebra. Título 11 §101 (5) del U.S.C. Una reclamación puede estar garantizada o no garantizada.

**Reclamación de conformidad con el Título 11 § 503(b)(9) del U.S.C.:** Una reclamación que surge del valor de cualquier bien recibido por el Deudor dentro de los 20 días anteriores a la fecha en la que se presentó el caso , en el que los bienes se han vendido al Deudor en el transcurso normal de los negocios del Deudor. Adjunte la documentación que respalde dicha reclamación.

**Acreedor:** Una persona, una sociedad anónima u otra entidad con la que el deudor tiene una deuda que se contrajo en la fecha en la que el deudor solicitó la quiebra o con anterioridad. Título 11 § 101 (10) del U.S.C.

**Deudor:** Una persona, una sociedad anónima u otra entidad que está en quiebra. Utilice el nombre del deudor y el número de caso tal como se muestran en el aviso de quiebra que recibió. Título 11 § 101 (13) del U.S.C.

**Prueba de pasos adicionales:** La prueba de la realización de pasos adicionales para hacer valer un derecho de garantía puede incluir documentos que demuestren que se ha presentado o registrado un derecho de garantía, tal como una hipoteca, un derecho de retención, un certificado de propiedad o una declaración de financiamiento.

**Información que debe mantenerse en privado:** El formulario de *Evidencia de reclamación* y los documentos adjuntos solo deben mostrar los últimos 4 dígitos de un número de seguridad social, el número de identificación tributaria de una persona o un número de cuenta financiera, y solo las iniciales del nombre de un menor y el año de la fecha de nacimiento de una persona. Si una reclamación se basa en la prestación de bienes o servicios de atención médica, limite la divulgación de los bienes o servicios a fin de evitar la incomodidad o la divulgación de información de atención médica confidencial. Es posible que, más adelante, se le solicite que brinde más información si el síndico u otra persona de interés se opone a la reclamación.

**Evidencia de reclamación:** Un formulario que detalla el monto de la deuda que el deudor mantiene con un acreedor a la fecha de la presentación. El formulario debe ser presentado en el distrito donde el caso se encuentra pendiente de resolución.

**Edición de información:** Ocultamiento, corrección, o eliminación de cierta información para proteger la privacidad o la información confidencial. Quienes presenten la documentación deben editar u omitir información sujeta a **privacidad** en el formulario de *Evidencia de reclamación* y en cualquier documento adjunto.

**Reclamación garantizada en virtud del Título 11 § 506(a) del U.S.C.:** Una reclamación respaldada por un derecho de retención sobre un bien en particular del deudor. Una reclamación está garantizada en la medida que un acreedor tenga el derecho a recibir un pago proveniente del bien antes de que se les pague a otros acreedores. El monto de una reclamación garantizada generalmente no puede ser mayor que el valor del bien en particular sobre el cual el acreedor mantiene un derecho de retención. Cualquier monto adeudado a un acreedor que sea mayor que el valor del bien generalmente se lo considera una reclamación no garantizada. Sin embargo, existen excepciones; por ejemplo, el Título 11 § 1322(b) del U.S.C., y la oración final de § 1325(a).

Algunos ejemplos de derechos de retención sobre bienes incluyen una hipoteca sobre un inmueble o un derecho de garantía sobre un automóvil. Un derecho de retención puede ser otorgado de manera voluntaria por un deudor o puede obtenerse a través de un procedimiento judicial. En algunos estados, una resolución judicial puede ser un derecho de retención.

**Compensación:** Ocurre cuando un acreedor se paga a sí mismo con dinero que pertenece al deudor y que mantiene en su poder, o cuando el acreedor cancela una deuda que mantiene con el deudor.

**Reclamación no garantizada:** Una reclamación que no cumple con los requisitos de una reclamación garantizada. Una reclamación puede no estar garantizada en parte en la medida que el monto de la reclamación sea mayor que el valor del bien sobre la cual un acreedor tiene un derecho de retención.

## Ofrecimiento de compra de una reclamación

Algunas entidades compran reclamaciones por un monto menor que su valor nominal. Estas entidades pueden contactar a acreedores para ofrecerles la compra de sus reclamaciones. Algunas comunicaciones por escrito de estas entidades pueden confundirse fácilmente con documentación judicial oficial o con comunicaciones del deudor. Estas entidades no representan al tribunal de quiebras, al síndico de la quiebra, ni al deudor. Un acreedor no tiene obligación alguna de vender su reclamación. Sin embargo, si decide hacerlo, cualquier transferencia de esa reclamación está sujeta a la Norma de Quiebras 3001(e), a las correspondientes disposiciones del Código de Quiebras (Título 11 § 101 y subsiguientes del U.S.C.) y a cualquier resolución del tribunal de quiebras que corresponda al caso.

## Envíe la(s) Evidencia(s) de reclamación completa(s) a:

**Si por correo de primera clase:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk LLC
Grand Central Station, PO Box 4708
New York, NY 10163-4708

**Si por el mensajero de una noche o la entrega de mensajero a mano:**
Commonwealth of Puerto Rico
Claims Processing Center
c/o Prime Clerk, LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

> ## No presente estas instrucciones con su formulario

**Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS)**

**STATEMENT OF CLAIM**

Claimant, TRADEWINDS ENERGY BARCELONETA, LLC ("TRADEWINDS BARCELONETA") files this statement of claim on its behalf and on behalf of its affiliate, TRADEWINDS ENERGY VEGA BAJA, LLC ("TRADEWINDS VEGA BAJA")(Tradewinds Barceloneta and Tradewinds Vega Baja collectively referred to as "TRADEWINDS") in support of certain claims asserted against Debtor, PUERTO RICO ELECTRIC POWER AUTHORITY ('PREPA") for breach of contract.

TRADEWINDS BARCELONETA and TRADEWINDS VEGA BAJA are each a party to (2) Power and Operating Agreements ("Agreements") identified a (i) Wind Power Project No. 2012-P00028 dated October 19, 2011 and (ii) Wind Power Project No. 2012-P00030 (the "Wind Power Projects") dated October 20, 2011,[1] pursuant to which the TRADEWINDS companies agreed to build wind turbine facilities generating 125 megawatts of clean power.  In return, PREPA contractually agreed to buy the electricity from the TRADEWINDS companies.  A key element of these contracts for capital infrastructure projects was PREPA's good faith in performing its obligations and cooperation so that TRADEWINDS could perform, obtain financing, and construct the wind turbine facilities.  TRADEWINDS required minimal, but essential, cooperation: (i) PREPA had to acknowledge its agreements with TRADEWINDS and (ii) provide the Puerto Rican permitting agency with the authorization to issue the necessary permits.

---

[1] On or about November 22, 2011, Tradewinds Energy, LLC assigned its interest in the two Agreements to newly formed entities: Tradewinds Vega Baja for Wind Power Project 2012-P00028 and Tradewinds Barceloneta Wind Power Project 2012-P00030.

Contrary to the obligations of the Agreements, PREPA withheld its authorization, avoiding its contractual promises and ignoring TRADEWINDS' repeated pleas for the most basic cooperation.  These authorizations would cost nothing and would not expand PREPA's commitment – it was merely a restatement of the promises already made, the deals already struck, and the contracts already signed.  Nonetheless, for some unexplained reason, PREPA refused to cooperate, ignoring TRADEWINDS' repeated requests.  At a meeting of the parties, PREPA personnel acknowledged that it would not cooperate with its contractual obligations in order to ensure the projects were not completed.

As a result of PREPA's breach of the Agreements, the TRADEWINDS companies initiated arbitration on January 18, 2016, in San Juan Puerto Rico. The matter was scheduled for Arbitration before Arbitrator Jorge Jimenez in September 2017. A copy of the Demand for Arbitration is attached as **Exhibit "A"**.

The Claims asserted by Tradewinds are as follows -

TRADEWINDS ENERGY BARCELONETA LLC:            $20,400.000

TRADEWINDS ENERGY VEGA BAJA LLC:             $13,600.000

**TOTAL:**                                    **$34,000.000**

# EXHIBIT "A"

**In the Matter of the Arbitration
Between**

**TRADEWINDS ENERGY BARCELONETA,
LLC; and TRADEWINDS ENERGY VEGA
BAJA, LLC,**

       **Claimant,**

**v.**

**PUERTO RICO ELECTRIC POWER
AUTHORITY.**

       **Respondent.**

_____/

**<u>DEMAND FOR ARBITRATION</u>**

Claimants, TRADEWINDS ENERGY BARCELONETA, LLC ("TRADEWINDS BARCELONTA") and TRADEWINDS ENERGY VEGA BAJA, LLC ("TRADEWINDS VEGA BAJA") (collectively, "TRADEWINDS") file this Arbitration Demand against Respondent, PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA") for damages and specific performance arising from written contracts, and states the following:

       **TRADEWINDS INITIATES ARBITRATION OF THE IDENTIFIED DISPUTE PURSUANT TO ARTICLE 22.26 "DISPUTE RESOLUTION" OF THE AGREEMENTS BETWEEN THE PARTIES FOR DAMAGES OR SPECIFIC PERFORMANCE.    A COPY OF ARTICLE 22.26 IS ATTACHED.**

**I.**    **<u>SUMMARY</u>**

Claimants TRADEWINDS BARCELONETA and TRADEWINDS VEGA BAJA are each party to a contract with PREPA, in which TRADEWINDS would invest money, jobs, and resources in Puerto Rico to build wind turbine facilities generating 125 megawatts of clean power.  In return, PREPA contractually agreed to buy the electricity from TRADEWINDS. A

1

key element of these capital infrastructure projects was PREPA's good faith in performing its obligations and cooperation so that TRADEWINDS could perform its obligations, obtain financing, and construct the wind turbine facilities.  TRADEWINDS required minimal, but essential, cooperation: PREPA had to acknowledge its agreements with TRADEWINDS and provide the Puerto Rican permitting agency with the authorization to provide the necessary permits.

Even after TRADEWINDS paid hundreds of thousands of dollars, PREPA withheld its authorization, avoiding its contractual promises and ignoring TRADEWINDS' repeated pleas for the most basic cooperation.  These authorizations would cost nothing and would not expand PREPA's commitment – it was merely a restatement of the promises already made, the deals already struck, and the contracts already signed.  Nonetheless, for some unexplained reason, PREPA refused to cooperate, ignoring TRADEWINDS' requests.

When TRADEWINDS would initiate the contractually-mandated period of good-faith negotiations, PREPA would ignore the demands, sidestepping the request to cooperate.  To add insult to frustration, PREPA finally directly responded to TRADEWINDS' invocation of the contractual dispute resolution mechanism and dodged the issue by saying that there was no dispute; therefore there was no need to address it.  As far as PREPA was concerned, the issue was over, except to continue to string along TRADEWINDS with a series of empty half-promises.

This arbitration demand ensues, pursuant to Article 22.26 of the Parties' Agreements.

## II.   CHRONOLOGY OF FACTS

1.   This dispute arises from those two certain Power Purchase and Operating Agreements ("Agreements"), one of which is identified as being for Wind Power Project No.

2

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE• 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

2012-P00028 and the other for Wind Power Project No. 2012-P00030 ("Wind Power Projects"). Pursuant to these agreements, PREPA agreed to purchase a certain amount of electricity from TRADEWINDS ENERGY, LLC at a certain price and the Agreement further contemplated that TRADEWINDS ENERGY, LLC would build and operate two wind turbine facilities to produce the electricity.

2.      On or about October 19, 2011, PREPA entered into that certain Power Purchase and Operating Agreement with TRADEWINDS ENERGY, LLC for 2012-P00028.   This Agreement provides that TRADEWINDS ENERGY, LLC will "construct, own, operate and maintain an approximately 50 megawatts Qualifying Facility consisting of approximately 25 Wind Turbine Generators in the city of Manati, Puerto Rico" ("Wind Power Project").   The Agreement further provides that TRADEWINDS ENERGY LLC will "sell exclusively to PREPA and PREPA will purchase the electric energy produced by" TRADEWINDS ENERGY, LLC, who is identified as "Seller" in the Agreement.

3.      On or about October 20, 2011, PREPA entered into a Power Purchase and Operating Agreement with TRADEWINDS ENERGY, LLC for 2012-P00030. This Agreement provides that TRADEWINDS ENERGY, LLC will "construct, own, operate and maintain an approximately 75 megawatt Qualifying Facility consisting of approximately 35 Wind Turbine Generators in the vicinity of Barceloneta, Puerto Rico" ("Wind Power Project"). The Agreement further provides that TRADEWINDS ENERGY LLC will sell its electricity exclusively to PREPA and PREPA will purchase the electric energy produced by Seller by TRADEWINDS ENERGY, LLC, who is identified as "Seller" in the Agreement.

4.      On or about November 22, 2011, TRADEWINDS ENERGY, LLC assigned its interest in the two Agreements to newly formed entities: TRADEWINDS VEGA BAJA for

3

Wind Power Project 2012-P00028 and TRADEWINDS BARCELONETA Wind Power Project 2012-P00030. The Agreements were assigned simply to facilitate financing, with the ownership and management team remaining intact.   TRADEWINDS VEGA BAJA and TRADEWINDS BARCELONETA are collectively referred to as TRADEWINDS.

### A. **Contractual Provisions**

5.      Both of the Agreements share several material provisions that are relevant to the Parties' dispute – most specifically the issues of permitting, the duties of cooperation, and the dispute resolution process. The provisions are as follow:

#### 1)  The Deal

6.      TRADEWINDS agreed to build wind turbine electricity generating plants and sell the resulting energy to PREPA.  In turn, PREPA agreed to purchase the electricity produced. This sort of agreement is standard, because a party will not undertake such a large capital infrastructure project unless it have a buyer for the resulting output.

a.      TRADEWINDS agreed to "construct, own, operate and maintain" a Quailifying Facility of a certain approximate number of Wind Turbine Generators producing a certain amount of megawatts. Agreement at p.2.

b.      TRADEWINDS, as "Seller", agreed to sell and PREPA, as "Buyer", agreed to accept delivery of and purchase the electrical output from TRADEWINDS wind turbine facilities. Agreement at Article 2.1.

#### 2)  Permits Required

c.      In order to trigger PREPA's obligation to purchase the electricity, TRADEWINDS was required to provide copies of all material permits needed to construct and operate the facility and its Interconnection Facilities." Article 2.2 (d); Article 2.3.

#### 3)  Cooperation

d.      The duties for the parties to cooperate were an essential element of the relationship. The importance of reasonably commercial cooperation is evidenced by the fact that it was repeated throughout the Agreement. In Article 4.5, the Agreements state

4

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

> To the extent legally permitted, the Parties agree to cooperate reasonably and in good faith in the mutually beneficial endeavor to obtain (i) control of, or other required access and rights to, the real property upon which the Facility Interconnection Facilities will be located, (ii) financing for the Facility and Interconnection Facilities and (iii) all necessary Permits, endorsements and approvals for sighting and construction of the Facility and the Interconnection Facilities.

Agreement at Article 4.5.

e.  Later in the Agreement, the duty of good faith is repeated. Article 22.13 of the Agreements states:

> Each Party to this Agreement warrants that, except to the extent that a particular provision of this Agreement expressly creates a different standard, it will be reasonable with respect to the substance and timing of any exercise of its respective rights, obligations, duty and discretions in implementing this Agreement, including, without limitation, the making of and satisfying of request, the issuance and withholding of consensus and findings of acceptability or satisfaction, the incurrence of costs that are the responsibility of the other party, and the provision of notice to the other Party and the Project Lenders if applicable.

Agreement at Article 22.13

f.  The provision of Article 22.13 was so important to PREPA, who drafted the Agreements, that the exact same paragraph is repeated verbatim at Article 22.29.

## 4)  Term

g.  The Parties agreed that the Agreements would have an initial term of 20 years. Agreement at Article 5.1. That initial term could be extended by mutual agreement for up to two consecutive periods of 5 years, for a total extension of 10 years.  Article 5.2.

## 5)  Breach and Dispute Resolution

h.  The Agreements specifically provide that a "breach of this Agreement shall be deemed to exist upon the occurrence of any one of the following: … (ii) the failure by either Party to perform in any material respect its obligations under this Agreement, subject to the provision of Section 17.3." Article 17.3 provides that if "either

5

Party believes the other Party has breached this Agreement pursuant to Section 17.1 (ii) above, the non-breaching Party shall provide the other Party with written notice …". The section goes on to state that if the breaching party disputes in writing that a "breach has occurred, the parties may pursue a resolution by the Dispute Resolution process provided for in Section 22.25."[1]   That provision provides that in the event of a "dispute or controversy" arising between the Parties relating to any aspect of the Agreement, then the "Party" raising the Dispute shall give written notice to the other Parties setting forth in reasonable detail of the scope and nature of such dispute, including without limitation and identification the provisions of this Agreement under which Dispute arises".

    i.    The Agreement reflects the Parties' intent that the dispute arising under the terms of the Agreements would be "resolved as expeditiously as possible, either by mutual negotiations or an amendment to the Agreement or, failing such, in accordance with provisions of the Dispute Resolution section." The Parties were obligated to enter into negotiations in order to resolve the dispute. Article 22.26(b). PREPA was obligated to "negotiate in good faith." *Id.*

    j.    After the expiration of 60 days, if the dispute is not resolved through negotiations, the Parties would proceed to Arbitration. *See id* at Article 22.26(c). The Parties agreed to attempt to agree on one arbitrator "with special knowledge and expertise with respect to the dispute". If the Parties cannot agree on an Arbitrator within (10) ten days, each will then appoint one neutral person to serve as an Arbitrator and the two thus appointed shall select a third Arbitrator …" *Id.* The Dispute Resolution provision further outlines the method in which the Arbitration is to be conducted.

---

[1] The reference to Section 22.25 must be a typographical error because the Section entitled "Dispute Resolution" is found in Section 22.26.

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

### B. PREPA's Continued Breaches of Duty

7.      After the Agreements were executed, TRADEWINDS proceeded, to fulfill their obligations pursuant to the Agreement.

8.      On or about February 24, 2012, TRADEWINDS BARCELONETA made a payment in the amount of $375,000.00 to PREPA for a necessary Interconnection Point Study, as required by Article 9.6 of the Agreement.

9.      On September 29, 2012, PREPA issued a letter to Claimants regarding the assignment of Agreements, which stated that "a written consent is required for the valid assignment of the Agreement to a third party." The letter then goes on to cite the provisions of the Agreements.

10.      On February 12, 2013, TRADEWINDS sent PREPA a letter regarding the assignment of the Agreements which, among other things, requested that PREPA acknowledge the assignment of the Agreements from TRADEWINDS ENERGY, LLC.

11.      On March 8, 2013, TRADEWINDS sent a letter to PREPA summarizing their March 6, 2013 meeting that week with PREPA representatives, Ms. Cruz Gonzalez and Mr. Soto Suarez, and further stating that TRADEWINDS VEGA BAJA was ready, willing, and able to make the Interconnection Point Study payment, but noting that PREPA had indicated it best to wait until it confirmed the changes to the proposed project before making the payment.

12.      On March 11, 2013, TRADEWINDS contracted with ATKINS Caribe, LLP to assist in retaining environmental studies and permits required for the Wind Energy Projects. TRADEWINDS also authorized ATKINS Caribe, LLP to represent it in the filing of permit applications and related transactions.

13.      On June 5, 2013, TRADEWINDS wrote two letters to memorialize its June 4, 2013 meeting with PREPA's Head of Planning, Mrs. Cruz, in which the parties discussed the

Arrastia Capote Partners LLP
Miami Centre • 100 SE 2d Street, Suite 4505 • Miami, Florida 33130 • (786) 871-5680 • Fax: (786) 866-6358

assignment of the Agreements to TRADEWINDS from TRADEWINDS ENERGY.  In that correspondence, TRADEWINDS attached the Assignments and requested PREPA's acknowledgement and the necessary changes to the official records.

14.    On January 10, 2014, the Puerto Rico permitting office, Oficina de Gerencia de Permisos ("OGPe") issued correspondence to TRADEWINDS that the application had been received but more information was necessary.

15.    On September 29, 2014, the OGPe issued another correspondence to TRADEWINDS stating that they required a letter of authority from PREPA in order to finalize the permitting process and providing Claimants with (30) thirty day deadline for completion.

16.    On October 29, 2014, OGPe issued correspondence to TRADEWINDS notifying it of the cancellation of the permitting application for failure to provide the previously requested letter of authority from PREPA.

17.    During that time ATKINS, as the representative of TRADEWINDS, met with the OGPe during which time the representatives of that office stated that it would not proceed with the issuance of permits absent authorization from PREPA.

18.    On January 15, 2015, TRADEWINDS issued a letter to PREPA Executive Director Alicia-Flores reiterating that they had

> completed all necessary requirements for the submittal of its application for issuance of Environmental Permits required for the [Wind Power Projects] with the Oficina de Gerencia de Permisos ("OGPe"), however, due to active efforts by PREPA, the OGPe has not proceeded to review the application, and has instead, due again to inaction by PREPA, canceled such application for Environmental Permits.  OGPe indicated that it would require a letter from PREPA indicating that the [Agreements] with [Tradewinds] was "active"

19.     That letter also requested, among other things, that: a) PREPA issue an acknowledgement that the Agreements were "active and constitutes a valid obligation of PREPA", which acknowledgement must be sent to OGPe; and b) PREPA acknowledge the assignment of the Agreements from TRADEWINDS ENERGY to TRADEWINDS BARCELONETA and TRADEWINDS VEGA BAJA.

20.     On January 21, 2015, TRADEWINDS sent a letter to PREPA outlining proposals to resolve all pending issues regarding the Wind Energy Projects.   The letter noted that "Tradewinds has undertaken, in good will, all necessary efforts, and incurred all necessary expenses to make the Tradewinds projects outlined above a reality.   Both projects are ripe and ready for environmental permits. We hope that through this effort we can reach a solution that is realistic to both Tradewinds and PREPA."

21.     On or about March 31, 2015, TRADEWINDS entered into a Letter of Intent with Goldwind USA, Inc. ("Goldwind"), to enter into an agreement to provide TRADEWINDS with the wind turbine and project financing. Goldwind then communicated directly with PREPA, requesting information concerning the Agreements and permitting and informing PREPA that the financing would be dependent on the permitting.

22.     On April 9, 2015, TRADEWINDS sent another letter to PREPA requesting a meeting to discuss the status of the Wind Power Projects.   That letter specifically references that the financing secured for the project is based on successful permitting.

23.     On April 13, 2015, TRADEWINDS sent another letter to PREPA Executive Director Alicea-Flores, requesting a meeting.   An identical letter was sent to Mr. Colberg Toro, Secretario de Asuntos Publicos Gobernación, Estado Libre Asociado de Puerto Rico.,  requesting a meeting with Governor Garcia Padilla.  Both letters indicated that TRADEWINDS would be

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

making a significant investment in Puerto Rico, injecting 125 megawatts to the electrical grid on the island, powering the economy and bringing new technical jobs to the island, both during construction and the operation of the Wind Power Projects, as well as the possibility of manufacturing wind turbines on the island, "creating hundreds of new jobs."

24.     On April 15, 2015, TRADEWINDS sent correspondence to PREPA Executive Director Mr. Alicia-Flores requesting the initiation of the (60) sixty day negotiation period set forth under the Dispute Resolution provisions of the Agreements.  Specifically, the letter states:

> Please be advised that due to the difficulties encountered by Tradewinds Energy Vega Baja, LLC and Tradewinds Energy Barceloneta, LLC in securing the necessary permits to allow them to perform under the above identified contracts, difficulties that are being deliberately caused by AEE [Autoridad de Energia Electrica] in blocking the permitting process outlined by the OGPe, we hereby seek the commence [sic] of that 60-day period of negotiations outlined and set forth under Article 22.26 of the PPOA [Agreement]. . . .Should the 60-day negotiation period not result I an amicable resolution of the dispute between the parties, the same Article 22.26 allows for arbitration of the various dispute between the parties after conclusion of the 60-day negotiation period.  Please note that the 60-day period shall commence from the date this letter is delivered to the AEE.

25.     On July 15, 2015, TRADEWINDS sent correspondence to the PREPA Interim Director Mr. Castro, which repeated the very same demand and language as the April 15, 2015 correspondence to Mr. Alicia-Flores.

26.     On August 31, 2015, TRADEWINDS sent correspondence to the new PREPA Executive Director Mr. Quintana Mendes, which repeated the very same demand and language as the April 15, 2015 correspondence to Mr. Alicia-Flores and the July 15, 2015 correspondence to Interim Director Castro.

27.     As evidenced in its monthly progress reports,  TRADEWINDS reiterated that the OGPe was unable to finalize the permit application process for the Wind Power Projects because

10

PREPA was not providing a letter indicating that the Agreements were still active. Yet again, Claimants requested that PREPA send the Letter of Authority to the Puerto Rican Permitting Office.

28.     In September 2015, Claimants' representatives had a meeting with the newest director of PREPA, Mr. Quintana Mendes. At that meeting, Mr. Quintana Mendes said he was new on the job and needed time to look over the documentation so a second meeting was set. At that second meeting, director of planning Sonia Miranda was present along with director Mr. Quintana Mendes. At this second meeting, TRADEWINDS was told that PREPA had over 100 energy contracts and that the current electrical network could not handle the power output from all the energy providers. Director Sonia Miranda informed Claimants at that meeting that the Board of PREPA created a list of (18) eighteen pre-selected energy providers that they provided to use out of the over 100 contracts in to which PREPA had entered. According to director Sonia Miranda, all (18) eighteen of the secretly selected, pre-approved contractors were solar energy. She stated at that meeting that of the list of the (18) eighteen, there was a possibility that some of the companies would be removed and that Claimants would be informed if they would be allowed on this list, notwithstanding their contract. On or about October 28, 2015 PREPA sent a letter to TRADEWINDS unilaterally deciding that there was no "dispute" and, in their mind, closing the matter.

29.     Shortly thereafter, on October 30, 2015, TRADEWINDS wrote to Mr. Zuleta of the Oficina De Genercia de Permisos ("OGPe"), requesting the continued and expedited issuance of the application for an environmental license.  TRADEWINDS included PREPA's October 28, 2015     correspondence     which,     according     to     PREPA,     indicated

11

that OGPe had not requested information and that no dispute existed. TRADEWINDS again requested OGPe to issue the necessary permits.

30.     On November 20, 2015, TRADEWINDS responded to PREPA's October 28, 2015 correspondence and wrote to PREPA's Executive Director Quintana Mendez, stating that PREPA's articulated position was inconsistent with the position OGPe had provided in October 2014. TRADEWINDS reiterated that OGPe indicated it would not proceed with the issuance of permits absent authorization from PREPA. TRADEWINDS again asked that "we proceed immediately with a dispute resolution meeting ...." Absent an agreement "we will have no choice but to proceed to arbitration as set forth" in the Agreements.

31.     On or about December 14, 2015, Claimants' representatives met with director Mr. Quintana Mendes of PREPA. During that meeting, the director said that only (14) fourteen of the list of (18) eighteen secretly selected energy contracts were going forward. He reiterated the possibility that Claimants could be added to the list.

## III.   CLAIMS AND DAMAGES[2]

32.     PREPA has breached the Agreements through a continual and systematic course of ignoring its contractual and lawful duty to cooperate with TRADEWINDS in effecting the terms of the Agreements, which include, but are not limited to cooperation and a duty of good faith and fair dealing.

33.     In engaging in these wrongful actions and inactions, PREPA knew that without its cooperation, TRADEWINDS could not obtain the permits necessary to construct the Wind Project Projects. Thus, PREPA interfered with and obstructed TRADEWINDS' contractually required efforts to obtain the required permits.

---

[2] While arbitration utilizes a very relaxed standard of pleading and stating a claim, if the Tribunal so desires a specified statement of claim, one will be provided.

34.     PREPA never honestly informed TRADEWINDS why it was undermining the Agreement, whether it was a shift in the political winds, or a technical inability to honor the contract, or just bureaucratic ineptitude. But that reason does not matter in the least bit.

35.     PREPA was contractually obligated to honor its promises.

36.     TRADEWINDS relied on those promises, expending hundreds of thousands of dollars, time, effort, expertise, and other resources to perform under the Agreements, only to be hamstrung by its partner in bringing clean, cheap, and renewable energy to Puerto Rico.

37.     The full extent of PREPA's breaches of duties, whether in contract or tort, are not yet known, but may include tortious interference in the lawful relationship with OCPe, misrepresentation, and other bad acts.

**38.**     Due to its breaches, TRADEWINDS has been damaged in an amount that is **not less than $30,000,000.**

39.     If the breaches can be rectified, and TRADEWINDS has not so ascertained, then in the alternative, PREPA should be required to fully perform under the Agreements, to provide TRADEWINDS with the benefit of the bargain.

40.     TRADEWINDS reserves the right to assert a claim for **punitive damages** against PREPA, as a result of additional evidence obtained in discovery.

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

WHEREFORE, Claimants, TRADEWINDS ENERGY BARCELONETA, LLC and

TRADEWINDS ENERGY VEGA BAJA, LLC request that this Honorable Tribunal enter an

award against Respondent, PUERTO RICO ELECTRIC POWER AUTHORITY for damages to

exceed **$30,000,000,** interest, costs, and the expenses of this arbitration, or alternatively, the

enforcement and performance of the Agreement and any damages and interest resulting from

delay, costs, and the expenses of this arbitration.

Dated: January 18, 2016

John Arrastia, Jr.
ARRASTIA CAPOTE PARTNERS LLP
Miami Tower
100 SE 2nd Street, Ste. 4505
Miami, FL 33131
Phone: (786) 871-5680
Fax: (786) 866-6358
John@acplegal.com

14

<u>COMPLIANCE WITH NOTICE REQUIREMENTS</u>

I HEREBY CERTIFY that on this date, I forwarded this Arbitration Demand to by certified mail

to:

Puerto Rico Electric Power Authority
G.P.O. Box 364267
San Juan, Puerto Rico 00936-4267
Attn: Director of Planning and Environmental

(no telecopier number provided despite request)

and

Jaiver Quintana Mendez
Executive Director
PREPA
G.P.O Box 364267
San Juan, Puerto Rico 00936-4267
and additionally via email <u>Javier.quintana@aeepr.com</u>  and telefax at 787.521.4665

ARRASTIA CAPOTE PARTNERS LLP
MIAMI CENTRE • 100 SE 2D STREET, SUITE 4505 • MIAMI, FLORIDA 33130 • (786) 871-5680 • FAX: (786) 866-6358

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 80

22.26 Dispute Resolution: If a dispute or controversy arises between the Parties relating to the effectiveness, validity, interpretation, implementation, termination, cancellation, performance of, or enforcement of this Agreement, then the Party raising the Dispute shall give written notice to the other Party setting forth in reasonable detail the scope and nature of such Dispute, including without limitation an identification of the provisions of this Agreement under which such Dispute arises.

(a)     It is the Parties' Intent that disputes arising under the terms of this Agreement be resolved as expeditiously as possible, either by mutual negotiation or an amendment to the Agreement or, failing such, in accordance with the provisions set forth in this Section 22.26.

(b)     If any dispute arises, the person designated by Seller, shall, as soon as is practicable, enter into negotiations with the representative designated by PREPA to resolve such dispute. Both PREPA and Seller will negotiate in good faith.

(c)     If within sixty (60) days the dispute is not resolved through negotiations pursued diligently and in good faith, the Parties shall attempt to agree on a person with special knowledge and expertise with respect to the dispute to serve as arbitrator.  If the Parties cannot agree on an arbitrator within ten (10) days, each shall then appoint one neutral person to serve as an arbitrator and the two thus appointed shall select

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 81

a third arbitrator with such special knowledge and expertise to serve as chairman of the panel of arbitrators; and such three arbitrators shall determine all matters by majority vote provided, however, if the two arbitrators appointed by the Parties are unable to agree upon the appointment of the third arbitrator within five (5) days after their appointment, both shall give written notice of such failure to agree to the Parties, and, if the Parties fail to agree upon the selection of such third arbitrator within five (5) days thereafter, then either of the Parties upon written notice to the other may require such appointment from a Court of Competent Jurisdiction.  The Parties shall have sixty (60) days to perform discovery and present evidence and argument to the arbitrators.  During that period, the arbitrators shall be available to receive and consider all such evidence as is relevant and, within reasonable limits due to the restricted time period, to hear as much argument as is feasible, giving a fair allocation of time to each Party to the arbitration.  The arbitrators shall use all reasonable means to expedite discovery and to sanction noncompliance with reasonable discovery requests or any discovery order.  The arbitrators shall not consider any evidence or argument not presented during such period and shall not extend such period except by the written consent of both

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 82

Parties.  At the conclusion of such period, the arbitrators shall have forty-five (45) days to reach a determination.

(d)   The arbitrators shall have the right only to interpret and apply the terms and conditions of this Agreement and to order any remedy allowed by this Agreement, but may not change any term or condition of this Agreement, deprive either Party of any right or remedy expressly provided hereunder, or provide any right or remedy that has been excluded hereunder.

(e)   The arbitrators shall give a written decision to the Parties stating their findings of fact, conclusions of law and order, and shall furnish to each Party a copy thereof signed by them within five (5) days from the date of their determination.

(f)   Any actual determination made by the arbitrators shall be conclusive and binding upon the Parties and not subject to judicial review, except on the grounds of fraud or bias and may be presented to any Court of Competent Jurisdiction as a stipulation of the Parties.  Any conclusions and any order issued by the arbitrators shall be subject to review in any Court of Competent Jurisdiction, provided however, that any order issued by the arbitrators shall be effective and enforceable unless and until a stay of the order is issued by the arbitrators or by such court

Power Purchase Operating Agreement between Tradewinds Energy LLC and PREPA
Page 83

                                        under the prevailing standards for issuing stays, or such court enjoins, modifies or reverses the order of the arbitrators.

(g)    The Parties shall each pay fifty percent (50%) of the cost of arbitrator or arbitrators.

(h)    The dispute resolution process will be carried out in San Juan, PR, in the English language.

22.27 PREPA hereby irrevocably and unconditionally, for itself and for any Person claiming by or through PREPA:  (a) agrees that the execution, delivery and performance by it of this Agreement does and will constitute private and commercial acts done and performed for private and commercial purposes; (b) waives any and all rights, claims, defenses and immunities it or any of its assets has or may in the future have in any jurisdiction based on sovereign immunity or any similar rights, claims or defenses, in each case in respect of any claims or proceedings, the receipt of notice, service of process, compliance with judgments or orders or the enforcement of any such judgment, award or order in each case arising in respect of this Agreement or transactions contemplated in this Agreement; and (c) consents generally in respect of the enforcement of any judgment, award or order against it or its assets in any such proceedings to the giving of any relief or the issue of any process in any jurisdiction in connection with such claims or proceedings.