**Hearing Date**: August 4, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: October 28, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

----------------------------------------------------------------------- x
                                          :

In re:                                     :

                                       :

THE FINANCIAL OVERSIGHT AND       :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :    Title III

                                       :

      as representative of                :    Case No. 17-BK-3283 (LTS)

                                       :

THE COMMONWEALTH OF PUERTO RICO, *et al.*,   :    (Jointly Administered)

                                       :

      Debtors.[1]                           :

----------------------------------------------------------------------- x

**NOTICE OF HEARING ON NINTH INTERIM FEE APPLICATION OF PAUL
HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
<u>FOR PERIOD FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020</u>**

       **PLEASE TAKE NOTICE** that a hearing on the annexed *Ninth Interim Fee Application*

*of Paul Hastings LLP, as Counsel to Official Committee of Unsecured Creditors, for Services*

*Rendered and Reimbursement of Expenses for Period from February 1, 2020 through May 31,*

*2020* (the "<u>Application</u>") filed by Paul Hastings LLP, pursuant to section 1103(a)(1) of the

Bankruptcy Code, made applicable to these cases by section 301 of the Puerto Rico Oversight,

Management and Economic Stability Act of 2016 or "PROMESA," will be held before the

Honorable Laura Taylor Swain, United States District Judge, at the United States District Court

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4)
digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico
(the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii)
Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four
Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy
Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of
the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last
Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case
No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings
Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III
case numbers are listed as Bankruptcy Case numbers due to software limitations).

for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, Office
150, San Juan, Puerto Rico 00918-1767 on **October 28, 2020 at 9:30 a.m. (ET) / 9:30 a.m.
(AST)** (the "Hearing").

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections")
to the Application by any party other than the Fee Examiner shall be in writing, shall conform to
the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of
Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court,
including attorneys admitted *pro hac vice*, electronically in accordance with rule 5 of the Local
Rules for the District of Puerto Rico, and (b) by all other parties in interest, by submitting a hard
copy via mail to the Clerk's Office, United States District Court, Room 150 Federal Building,
San Juan, PR 00918-1767 or by hand delivery to the Clerk's Office, United States District Court,
150 Carlos Chardon Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall
be served in accordance with the *Second Amended Order Setting Procedures for Interim
Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3269] (the "Interim
Compensation Order"), so as to be so filed and received by the Notice Parties (as defined in the
Interim Compensation Order) no later than **August 4, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)**
(the "Objection Deadline").


               [*Remainder of page intentionally left blank.*]

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Interim

Compensation Order, if no Objections are timely filed, and if the Fee Examiner issues the Fee

Examiner Report (as defined in the Interim Compensation Order) recommending approval of the

Application in full or in part, the Court may grant the Application without a hearing.

Dated:  July 15, 2020                                  */s/ Luc A. Despins*

                                        PAUL HASTINGS LLP
                                        Luc A. Despins, Esq. (Pro Hac Vice)
                                        James R. Bliss, Esq. (Pro Hac Vice)
                                        Nicholas A. Bassett, Esq. (Pro Hac Vice)
                                        G. Alexander Bongartz, Esq. (Pro Hac Vice)
                                        200 Park Avenue
                                        New York, New York 10166
                                        Telephone:  (212) 318-6000
                                        lucdespins@paulhastings.com
                                        jamesbliss@paulhastings.com
                                        nicholasbassett@paulhastings.com
                                        alexbongartz@paulhastings.com

                                        *Counsel to the Official Committee of Unsecured
                                        Creditors*

                                        - and -

                                        */s/ Juan J. Casillas Ayala*

                                        CASILLAS, SANTIAGO & TORRES LLC
                                        Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
                                        Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
                                        Juan C. Nieves González, Esq. (USDC - PR 231707)
                                        Cristina B. Fernández Niggemann, Esq. (USDC - PR
                                        306008)
                                        PO Box 195075
                                        San Juan, PR 00919-5075
                                        Tel.: (787) 523-3434 Fax: (787) 523-3433
                                        jcasillas@cstlawpr.com
                                        ifernandez@cstlawpr.com
                                        jnieves@cstlawpr.com
                                        cfernandez@cstlawpr.com

                                        *Local Counsel to the Official Committee of Unsecured
                                        Creditors*

**Hearing Date**: August 4, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: October 28, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
                                          :

In re:                                       :

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | Case No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------------------ x

## NINTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020

### SUMMARY COVER SHEET

| | |
|---|---|
| Name of applicant: | Paul Hastings LLP ("Paul Hastings") |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors (the "Committee")[2] |
| Date of retention: | Order entered August 10, 2017, effective as of June 26, 2017 [Docket No. 999] |
| Period for which compensation and reimbursement are sought: | February 1, 2020 through and including May 31, 2020 (the "Application Period") |

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]    The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

| | |
|---|---|
| Amount of interim compensation sought as actual, reasonable, and necessary: | $4,788,916.50 / $3,831,133.20[3] |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $139,072.95 |
| Are your fee or expense totals different from the sum of previously-served monthly statements for the Application Period? | No. |
| Total compensation approved by interim order to date: | $50,222,129.49 |
| Total expenses approved by interim order to date: | $1,660,781.86 |
| Total allowed compensation paid to date: | $40,791,951.65 |
| Total allowed expenses paid to date: | $1,660,781.82 |
| Blended rate in this Application for all attorneys: | (a) $1,117/hour; (b) $893 /hour[5] |
| Blended rate in this Application for all timekeepers: | (a) $1,020 /hour; (b) $816 /hour[4] |
| Compensation sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $2,676,151.60 |
| Expenses sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $90,852.30 |
| The total time expended for fee application preparation during the Application Period: | Approximately 50 hours |
| The total compensation requested for fee application preparation during the Application Period: | Approximately $51,576 |

---

[3]   While Paul Hastings seeks allowance of all of its fees incurred during the Application Period, the firm only seeks payment, at this time, of fees in the amount of $3,831,133.20 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of $4,788,916.50.  By the time of the hearing on this Application, this amount should have long been paid by the Debtors pursuant to the Interim Compensation Order (as defined below), and Paul Hastings reserves its rights to seek relief from the Court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[4]   The calculation of the blended hourly rates reflected in (a) does not take into account Paul Hastings' agreement to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  The impact of the 20% end of the case write-off on the blended hourly rates cannot be calculated at this time.  However, for illustrative purposes only, we have reflected in (b) the blended hourly rate after accounting for the 20% reduction for all attorneys and for all timekeepers.

| | |
|---|---|
| Number of professionals included in this Application: | 25 |
| If applicable, number of professionals in this Application not included in a staffing plan approved by the client: | Not applicable. |
| If applicable, difference between fees budgeted and compensation sought for the Application Period: | Not applicable. |
| Number of professionals billing fewer than 15 hours to the case during the Application Period: | 4 |
| Are any timekeeper's hourly rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed in the retention application: | Yes.[5] When calculated at the rates in effect during the initial fee period (June 26, 2017 through September 30, 2017), total fees for the Application Period would have been $3,983,477.00 (compared to $4,788,916.50 under the current rates).  The rate adjustments reflect not only Paul Hastings' across-the-board increases in its rate scale, but also step increases due to advancing seniority.  While $805,439.50 of Paul Hastings' fees for the Application Period are attributable to periodic changes in rates, $166,686.50 of this amount is attributable to step increases due to advancing seniority.[6]  Thus, only $638,753.00 of the fees in the Application Period are attributable to changes in the firm's rate scale since the date of retention. |

---

[5]   As is customary, and as permitted pursuant to paragraph 2 of Paul Hastings' retention order [Docket No. 999], every year Paul Hastings reviews its rate structure and, when appropriate, adjusts its hourly rates based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.  As detailed in the notice filed on January 16, 2020 [Docket No. 10099], Paul Hastings raised its rates for certain timekeepers working on the Puerto Rico matter as of February 1, 2020, which adjustments apply across-the-board to all Paul Hastings clients.  The Committee approved the rate adjustment on a timekeeper-by-timekeeper basis.  As a courtesy to the Committee, Paul Hastings voluntarily agreed not to increase, on February 1, 2020, the hourly rate of Luc A. Despins and John F. Hilson for the Puerto Rico matter.  Absent such agreement, their hourly rate would have been increased to $1,280 from $1,200 and $1,240 from $1,120, respectively (in each case, adjusted to reflect, on a *pro forma* basis, the 20% end-of-case reduction).  As an additional courtesy to the Committee, Paul Hastings increased its rates as of February 1, 2020, instead of the customary effective date of such increase of January 1.  As a result, Paul Hastings' January fees totaled $961,055.40, an amount that is $74,024.80 less than the amount of $1,035,080.20 that would have been charged under the new rates (in each case, adjusted to reflect, on a *pro forma* basis, the 20% end-of-case reduction).

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| **First Interim Fee Period (June 26, 2017 through September 30, 2017)** | | | | | | |
| 8/25/17 | 6/26/17 - 7/31/17 | $2,612,026.60 | $128,519.42 | $2,612,026.20 | $128,519.42 | $653,006.65 |
| 10/20/17 | 8/1/17- 8/31/17 | $2,742,786.60 | ($35,965.44) | $2,742,786.60 | ($35,965.44) | $685,696.65 |
| 12/5/17 | 9/1/17 - 9/30/17 | $2,121,569.60 | $40,716.24 | $2,121,569.60 | $40,716.24 | $530,392.40 |
| **Total** | | **$7,476,382.80** | **$133,270.22** | **$7,476,382.40** | **$133,270.22** | **$1,869,095.70** |
| | | | | | | |
| **Second Interim Fee Period (October 1, 2017 through January 31, 2018)** | | | | | | |
| 12/23/17 | 10/1/17 - 10/31/17 | $915,475.60 | $14,567.93 | $915,475.60 | $14,567.90 | $228,868.90 |
| 1/5/18 | 11/1/17 - 11/30/17 | $1,445,414.80 | $27,705.47 | $1,445,414.80 | $27,705.47 | $361,353.70 |
| 1/12/18 | 12/1/17 - 12/31/17 | $1,467,883.60 | $22,557.50 | $1,467,883.60 | $22,557.50 | $366,970.90 |
| 3/16/18 | 1/1/18 - 1/31/18 | $1,824,040.20[7] | $30,631.53[8] | $1,822,932.20 | $17,909.03 | $455,733.05 |
| **Total** | | **$5,652,814.20** | **$95,462.43** | **$5,651,706.20** | **$82,739.90** | **$1,412,926.55** |
| | | | | | | |

---

[6]   Under the U.S. Trustee's Appendix B Guidelines, rate increases "exclude step increases historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion.")

[7]   This amount reflects a credit of $13,507.00 for fee reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

[8]   This amount reflects a credit of $21,926.16 for expense reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

| Third Interim Fee Period (February 1, 2018 through May 31, 2018) | | | | | |
|---|---|---|---|---|---|
| 4/18/18 | 2/1/18 - 2/28/18 | $2,015,455.20 | $87,789.71 | $2,015,455.20 | $87,789.71 | $503,863.80 |
| 5/9/18 | 3/1/18 - 3/31/18 | $2,416,111.40 | $53,500.42 | $2,416,111.40 | $53,500.42 | $604,027.85 |
| 6/15/18 | 4/1/18 - 4/30/18 | $1,357,280.60 | $408,763.80 | $1,357,280.60 | $408,763.80 | $339,320.15 |
| 7/13/18 | 5/1/18 - 5/31/18 | $1,152,043.00 | $36,939.73 | $1,152,043.00 | $36,939.73 | $288,010.75 |
| **Total** | | **$6,940,890.20** | **$586,993.66** | **$6,940,890.20** | **$586,993.66** | **$1,735,222.55** |
| | | | | | | |
| Fourth Interim Fee Period (June 1, 2018 through September 30, 2018) | | | | | |
| 9/6/18 | 6/1/18 - 6/30/18 | $983,056.20 | $45,319.10 | $983,056.20 | $45,319.10 | $245,764.05 |
| 10/8/18 | 7/1/18 - 7/31/18 | $1,061,831.60 | $77,376.40 | $1,061,831.60 | $77,376.40 | $265,457.90 |
| 11/2/18 | 8/1/18 - 8/31/18 | $1,288,866.00 | $39,833.17 | $1,288,866.00 | $39,833.17 | $322,216.50 |
| 11/15/18 | 9/1/18 - 9/30/18 | $1,302,462.40 | $39,196.98 | $1,302,462.40 | $39,196.98 | $325,615.60 |
| **Total** | | **$4,636,216.20** | **$201,725.65** | **$4,636,216.20** | **$201,725.65** | **$1,159,054.05** |
| | | | | | | |
| Fifth Interim Fee Period (October 1, 2018 through January 31, 2019) | | | | | |
| 12/19/18 | 10/1/18 – 10/31/18 | $968,238.40 | $17,300.41 | $968,238.40 | $17,300.41 | $242,059.60 |
| 01/07/19 | 11/1/18 – 11/30/18 | $695,795.40 | $9,071.96 | $695,795.40 | $9,071.96 | $173,948.85 |
| 02/20/19 | 12/1/18 – 12/31/18 | $932,751.60 | $24,110.50 | $932,751.60 | $24,110.50 | $233,187.90 |
| 03/15/10 | 1/1/19 – 1/31/19 | $1,040,883.79[9] | $38,921.42[10] | $1,040,883.79 | $38,921.42 | $260,220.95 |
| **Total** | | **$3,637,669.19** | **$89,404.29** | **$3,637,669.19** | **$89,404.29** | **$909,417.30** |
| | | | | | | |

---

[9]   This amount reflects a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

[10]   This amount reflects a credit of $6,033.82 for expense reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

| Sixth Interim Fee Period (February 1, 2019 through May 31, 2019) | | | | | |
|---|---|---|---|---|---|
| 06/13/19 | 2/1/19 – 2/28/19 | $1,098,711.60 | $30,746.31 | $1,098,711.60 | $30,746.31 | $274,677.90 |
| 06/13/19 | 3/1/19 – 3/31/19 | $1,453,006.40 | 25,745.44 | $1,453,006.40 | $25,745.44 | $363,251.60 |
| 07/03/19 | 4/1/19 – 4/30/19 | $1,852,132.00 | $64,731.53 | $1,852,132.00 | $61,317.34 | $463,033.00 |
| 07/15/19 | 5/1/19 – 5/31/19 | $2,143,294.80 | $61,317.34 | $2,143,294.80 | $61,317.34 | $535,823.70 |
| **Total** | | **$6,547,144.80** | **$182,540.62** | **$6,547,144.80** | **$179,126.43** | **$1,636,786.20** |
| | | | | | | |
| Seventh Interim Fee Period (June 1, 2019 through September 30, 2019) | | | | | |
| 08/21/19 | 6/1/19 – 6/30/19 | $1,841,416.66[11] | $300,689.64 | $1,841,416.66 | $300,689.64 | $478,122.60 |
| 09/27/19 | 7/1/19 – 7/31/19 | $1,955,942.80 | $380,030.21 | $1,955,942.80 | $380,030.21 | $488,985.70 |
| 10/31/19 | 8/1/19 – 8/31/19 | $1,051,966.00 | $127,240.87 | $1,051,966.00 | $127,240.87 | $262,991.50 |
| 11/14/19 | 9/1/19 – 9/30/19 | $1,052,167.20 | $92,968.55[12] | $1,052,167.20 | $92,968.55 | $263,041.80 |
| **Total** | | **$5,901,492.71** | **$900,929.27** | **$5,901,492.66** | **$900,929.27** | **$1,493,141.60** |
| | | | | | | |
| Eighth Interim Fee Period (October 1, 2019 through January 31, 2020) | | | | | |
| 12/19/20 | 10/1/19 – 10/31/19 | $1,911,593.40 | $113,178.50 | $1,911,593.40 | $113,178.50 | $477,898.35 |
| 01/09/20 | 11/1/19 – 11/30/19 | $830,350.40 | $68,843.54 | $830,350.40 | $68,843.54 | $207,587.60 |
| 02/28/20 | 12/1/19 – 12/31/19 | $811,470.37[13] | $54,148.03[14] | $811,470.37 | $54,148.0$3 | $202,867.59 |
| 03/13/20 | 1/1/20 – 1/31/20 | $961,055.40 | $44,734.48 | $961,055.40 | $44,734.48 | $240,263.85 |
| **Total** | | **$4,514,469.57** | **$280,904.55** | **$4,514,469.57** | **$280,904.55** | **$1,128,617.39** |
| | | | | | | |

---

[11] This amount reflects a credit of $88,842.17 for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[12] This amount reflects a credit of $606.96 for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[13] This amount reflects a credit of $145,627.04 for fee reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

[14] This amount reflects a credit of $227.93 for expense reductions pursuant to the order approving Paul Hastings' Sixth Interim Fee Application.

| Ninth Interim Fee Period (February 1, 2020 through May 31, 2020) | | | | | |
|---|---|---|---|---|---|
| 04/27/20 | 2/1/19 – 2/29/20 | $1,537,133.80 | $64,790.53 | $1,537,133.80 | $64,790.53 | $384,283.45 |
| 05/15/20 | 3/1/20 – 3/31/20 | $1,230,017.80 | $26,061.77 | $1,230,017.80 | $26,061.77 | $307,504.45 |
| 06/05/20 | 4/1/20 – 4/30/20 | $665,122.80 | $30,205.99 | $0.00 | $0.00 | $166,280.70 |
| 07/10/20 | 5/1/20 – 5/31/20 | $398,858.80 | $18,014.66 | $0.00 | $0.00 | $99,714.70 |
| **Total** | | **$3,831,133.20** | **$139,072.95** | **$2,767,151.60** | **$90,852.30** | **$957,783.30** |

## PRIOR INTERIM FEE APPLICATIONS

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 12/15/17 Docket No. 2040 | 6/26/17 - 9/30/17 | $9,345,478.50 | $133,270.22 | Docket No. 2685 | Allowed: $9,264,712.49 Paid: $7,476,382.40 Authorized to be paid: $7,465,577.20[15] | Allowed: $111,344.06 Paid: $133,270.22 Authorized to be paid: $111,344.06[16] |
| 3/19/18 Docket No. 2735 | 10/1/17 – 1/31/18 | $7,066,017.75 | $95,462.43 | Docket No. 3279 | Allowed: $6,960,689.25 Paid: $5,651,706.20 Authorized to be paid: $5,651,706.20 | Allowed: $104,666.09[17] Paid: $82,739.90 Authorized to be paid: $82,739.93 |
| 7/16/18 Docket No. 3568 | 2/1/18 – 5/31/18 | $8,676,112.75 | $586,993.66 | Docket No. 5654 | Allowed: $8,576,523.01 Paid: $6,940,890.20 Authorized to be paid: $6,861,218.41[18] | Allowed: $583,256.46 Paid: $586,993.66 Authorized to be paid: $583,256.46[19] |

---

[15]   Reflects fee reductions in the amount of 80% of $13,507.00 (or $10,806.40), which was credited against amounts payable under the January 2018 fee statement.

[16]   Reflects expense reductions in the amount of $21,926.16, which was credited against amounts payable under the January 2018 fee statement.

[17]   Prior to application of a $21,926.16 credit for expense reductions pursuant to order approving Paul Hastings' First Interim Fee Application.

[18]   Reflects fee reductions in the amount of 80% of $99,589.74 (or $79,671.79), which was credited against amounts payable under the January 2019 fee statement.

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 11/16/18 Docket No. 4325 | 6/1/18 – 9/30/18 | $5,795,270.25 | $201,725.65 | Docket No. 5654 | Allowed: $5,736,730.98 Paid: $4,636,216.20 Authorized to be paid: $4,589,384.78[20] | Allowed: $199,429.03 Paid: $201,725.65 Authorized to be paid: $199,429.03[21] |
| 4/18/2019 Docket No. 5822 | 10/1/18 – 1/31/19 | $4,705,215.50 | $95,438.11 | Docket No. 8189 | Allowed: $4,509,478.17 Paid: $3,637,669.19[22] Authorized to be paid: $3,566,595.46[23] | Allowed: $94,831.15 Paid: $89,404.29[24] Authorized to be paid: $88,797.33[25] |
| 7/15/19 Docket No. 8004 | 2/1/19 – 5/31/19 | $8,183,931.00 | $182,540.62 | Docket No. 9687 | Allowed: $7,842,124.12 Paid: $6,547,144.80 Authorized to be paid: $6,430,643.17[26] | Allowed: $182,312.69 Paid: $182,312.69 Authorized to be paid: $182,084.76[27] |

[19]   Reflects expense reductions in the amount of $3,737.20, which was credited against amounts payable under the January 2019 fee statement.

[20]   Reflects fee reductions in the amount of 80% of $58,539.27 (or $46,831.42), which was credited against amounts payable under the January 2019 fee statement.

[21]   Reflects expense reductions in the amount of $2,296.62, which was credited against amounts payable under the January 2019 fee statement.

[22]   After giving effect to credits for fee reductions in the aggregate amount of 80% of $158,129.01 (or $126,503.21) pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[23]   Reflects fee reductions in the amount of 80% of $88,842.16 (or $71,073.73), which was credited against amounts payable under the June 2019 fee statement.  Also, amount authorized to be paid is net of $126,503.21 in credits for fee reductions pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[24]   After giving effect to credits for expense reductions in the aggregate amount of $6,033.82 pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[25]   Reflects expense reductions in the amount of $606.96, which was credited against amounts payable under the September 2019 fee statement.  Also, amount authorized to be paid is net of $6,033.82 in credits for expense reductions pursuant to the orders approving Paul Hastings' Third and Fourth Interim Fee Applications.

[26]   Reflects fee reductions in the amount of 80% of $145,627.04 (or $116,501.63), which was credited against amounts payable under the December 2019 fee statement.

[27]   Reflects expense reductions in the amount of $227.93, which was credited against amounts payable under the December 2019 fee statement.

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 11/15/19<br><br>Docket No. 9219 | 6/1/19 – 9/30/19 | $7,465,708.00 | $901,536.23 | Docket No. 12861 | Allowed: $7,135,691.63<br><br>Paid: $5,901,492.66[28]<br><br>Authorized to be paid: $5,733,012.71[29] | Allowed: $384,942.38<br><br>Paid: $900,929.27[30]<br><br>Authorized to be paid: $385,549.34[31] |
| 3/16/20<br><br>Docket No. 12395 | 10/1/19 – 1/31/20 | $5,788,714.00 | $281,132.48 | Not applicable | Allowed: TBD | Allowed: TBD |

---

[28]  After giving effect to credits for fee reductions in the amount of $88,842.17 (or $71,073.74 after 20% reduction) pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[29]  Reflects (a) fee reductions in the amount of 80% of $99,027.94 (or $79,222.35), which will be credited against the amounts payable under the June 2020 fee statement and (b) deferral of fees in the amount of 80% of $111,572.00 (or $89,257.60), as agreed between Paul Hastings and the Fee Examiner.  Also, amount authorized to be paid is net of $71,073.73 in credits for fee reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[30]  After giving effect to credits for expense reductions in the amount of $606.96 pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

[31]  Reflects (a) expense reductions in the amount of $548.31, which will be credited against amounts payable under the June 2020 fee statement and (b) deferral of expenses in the amount of $515,438.58, as agreed between Paul Hastings and the Fee Examiner.  Also, amount authorized to be paid is net of $606.96 in credits for expense reductions pursuant to the order approving Paul Hastings' Fifth Interim Fee Application.

**Hearing Date**: August 4, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: October 28, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x
                                                  :

In re:                                       :

                                                :

THE FINANCIAL OVERSIGHT AND           :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,      :   Title III

                                                :

           as representative of                   :   Case No. 17-BK-3283 (LTS)

                                                :

THE COMMONWEALTH OF PUERTO RICO, *et al.*,    :   (Jointly Administered)

                                                  :

           Debtors.[1]                                 :

------------------------------------------------------------------------ x

### NINTH INTERIM APPLICATION OF PAUL HASTINGS LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM <u>FEBRUARY 1, 2020 THROUGH MAY 31, 2020</u>

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 8

COMPENSATION AND REIMBURSEMENT REQUEST ....................................... 14

SUMMARY OF SERVICES ........................................................................................ 18

    I.     Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico
         (Matter ID 00002) ................................................................................... 19

    II.    Communications with Creditors (other than Committee Members) / Website
         (Matter ID 00004) ................................................................................... 28

    III.   PREPA (Matter ID 00006) ..................................................................... 29

    IV.   HTA (Matter ID 00007) .......................................................................... 31

    V.    ERS (Matter ID 00008) ........................................................................... 31

    VI.   Other Adversary Proceedings (Matter ID 00009) ................................. 33

    VII.  Mediation (Matter ID 00010) ................................................................. 35

    VIII. GO Bond Debt Issues (Matter ID 00011) ............................................. 35

    IX.   Creditors Committee Meetings (Matter ID 00012) ............................... 36

ATTENDANCE AT HEARINGS ................................................................................ 36

REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND
COMMITTEE .............................................................................................................. 37

ACTUAL AND NECESSARY DISBURSEMENTS ................................................. 39

REQUESTED COMPENSATION SHOULD BE ALLOWED ................................. 40

CONCLUSION ............................................................................................................. 44

## SUPPORTING DECLARATION, EXHIBITS, AND SCHEDULES

SUPPORTING DECLARATION OF LUC A. DESPINS

| EXHIBIT A | CUSTOMARY AND COMPARABLE COMPENSATION DISCLOSURES |
|---|---|
| EXHIBIT B | SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION |
| EXHIBIT C | BUDGETS AND STAFFING PLANS FOR APPLICATION PERIOD |
| EXHIBIT C-1 | BUDGETS |
| EXHIBIT C-2 | STAFFING PLANS |
| EXHIBIT D | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY |
| EXHIBIT D-1 | SUMMARY OF COMPENSATION REQUESTED BY PROJECT CATEGORY AS COMPARED TO BUDGET |
| | FURTHER BREAKDOWN OF COMPENSATION REQUESTED BY PROJECT CATEGORY AND BY MATTER |
| EXHIBIT D-2 | SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY CATEGORY |
| EXHIBIT E | BREAKDOWN OF COMPENSATION AND EXPENSE REIMBURSEMENT REQUESTED BY DEBTOR AND BY WHETHER SERVICES WERE RENDERED IN PUERTO RICO OR OUTSIDE PUERTO RICO |
| SCHEDULE 1 | LIST OF PROFESSIONALS BY MATTER |
| SCHEDULE 2 | MONTHLY STATEMENTS COVERED IN APPLICATION |
| SCHEDULE 3 | PROPOSED ORDER |

To the Honorable United States District Judge Laura Taylor Swain:

Paul Hastings LLP ("Paul Hastings"), counsel to the Official Committee of Unsecured

Creditors (the "Committee"),[1] for its ninth application (the "Application"), pursuant to

sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act

of 2016 ("PROMESA"),[2] section 503(b) of Title 11, United States Code (the "Bankruptcy

Code") as made applicable to these cases by section 301(a) of PROMESA, Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules"), and Rule 2016-1

of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto

Rico (the "Local Rules"), for the interim allowance of compensation for professional services

performed by Paul Hastings for the period from February 1, 2020 through and including May 31,

2020 (the "Application Period"), and for reimbursement of its actual and necessary expenses

incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application Period, Paul Hastings continued to handle numerous

matters that were of critical importance to the interests of the Debtors and their creditors,

including as it relates to the amended Commonwealth plan of adjustment filed by the Oversight

Board on February 28, 2020 (the "Amended Plan") and the related disclosure statement (the

"Disclosure Statement").  However, while the first half of the Application Period was marked by

intense activity in that regard, the scope of work decreased significantly following the onset of

the COVID-19 health crisis and the adjournment of the hearing on the Disclosure Statement and

---

[1]     Prior to August 25, 2017, the Committee was the official committee of unsecured creditors for the
        Commonwealth's Title III case only.  On August 25, 2017, the U.S. Trustee expanded the Committee's role to
        also include the Title III cases of HTA, ERS, and PREPA.

[2]     References to PROMESA are references to 48 U.S.C. §§ 2101 *et seq.*

related deadlines (the "COVID-19 Adjournment").  Moreover, litigation related to the PREPA

restructuring support agreement (the "PREPA RSA") and the motion to approve same (the

"PREPA RSA Motion") has similarly been put on hold in the aftermath of the COVID-19 crisis

and other issues.   As a result, during the second half of the Application Period, the Committee's

focus shifted to litigation that continued to move forward during that time, including the

Committee's challenges to $3 billion of ERS bondholder claims (the "ERS Claim Objections")

and the litigation related to the claims of certain holders of revenue bonds issued by HTA and

certain other instrumentalities (the "Revenue Bonds" and holders and insurers of such bonds, the

"Revenue Bondholders").  Indeed, the monthly average of Paul Hastings' fees during the month

of April and May 2020 was approximately **64% lower** than the monthly average of Paul

Hastings' fees during the prior 33 months in these Title III cases.

2.      One of the most important tasks during the Application Period was the

preparation of the Committee's response to the Mediation Team's report with respect to the

sequencing of confirmation-related issues, filed on February 20, 2020 (the "Mediation Team

Report").  In that regard, Paul Hastings was required to devote significant time analyzing the

Amended Plan and the plan support agreement entered into between the Oversight Board and

certain supporting bondholders (the "Bondholder PSA"), as well as preparing and executing the

Committee's strategy in response thereto.  This task was vital given that the Amended Plan

contemplates only miniscule recoveries to unsecured creditors while (a) richly rewarding holders

of bonds issued or guaranteed by the Commonwealth ("GO Bonds," and holders of such bonds,

the "GO Bondholders") and (b) releasing or abandoning the Committee's challenges to the

validity and purported priority of GO Bondholder claims (the "GO Bond Claim Objections").  In

addition, during the Application Period, Paul Hastings also prepared the Committee's motion

under Bankruptcy Rule 3013 seeking to classify general unsecured claims against the Commonwealth in the same class as retiree claims (the "Rule 3013 Motion").  While the Court denied the motion without prejudice, the Court indicated that the Committee's claim classification issues will be resolved at the disclosure statement stage, prior to solicitation of a Commonwealth plan of adjustment.

3.     In addition to its plan-related work, Paul Hastings also represented the Committee in connection with the relief from stay motions filed by certain Revenue Bondholders (the "Revenue Bond Stay Relief Motions") and the adversary proceedings challenging Revenue Bondholder Claims (the "Revenue Bond Adversary Proceedings").  Paul Hastings also devoted significant time to the ERS Claim Objections (including related discovery matters), which litigation continued to move forward during the Application Period.  In both the Revenue Bonds-related litigation and ERS Claim Objection litigation, the Committee sought to minimize fees, to the greatest extent practicable, by filing limited joinders to other parties' pleadings whenever possible (as opposed to drafting entire stand-alone motions, objections, or replies).

4.     Furthermore, Paul Hastings continued to represent the Committee with respect to PREPA's Title III case—although at a much lower rate of activity (compared to recent prior fee applications) in light of the continuing adjournment of the PREPA RSA Motion.  For example, Paul Hastings represented the Committee in its appeal of the January 2020 order of the Court dismissing the Committee's objection to PREPA bond claims and continued to analyze issues and take part in discovery related to the PREPA RSA Motion.  Paul Hastings also continued to analyze PREPA-related contracts and administrative claims to ensure the interests of unsecured creditors were protected.

5.      Moreover, during the Application Period, Paul Hastings prepared the

Committee's motion seeking additional disclosures under Bankruptcy Rule 2019 (the "Rule 2019

Motion").  The Rule 2019 Motion was highly successful, attracting support from other parties,

and, ultimately, resulting in the Court granting the motion and requiring even greater disclosure

than the Committee had requested.

6.      All the while, Paul Hastings has continued to advise the Committee on all issues

bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to

protect their rights, including by:

     a.    reviewing the Oversight Board's proposed orders for alternative
dispute resolution ("ADR") procedures and administrative
claims reconciliation ("ACR") procedures;

     b.    responding, as needed, to the Oversight Board's requests to
adjourn pending matters in order to express the Committee's
views on the appropriate sequencing and scheduling of
litigation;

     c.    analyzing the nature and extent of the unsecured claims pool, as
well as reviewing omnibus claim objections;

     d.    submitting comments to the Puerto Rico legislature (at its
request) regarding proposed legislation dealing with the
treatment of unsecured creditor claims;

     e.    analyzing creditor requests for relief from stay and certain
Oversight Board settlements thereof, as well as supporting
certain relief from stay requests, where appropriate, in the
interests of unsecured creditors;

     f.    maintaining the Committee's website as well as distributing
informational emails to unsecured creditors;

     g.    holding regular Committee meetings and communicating
regularly with Committee members regarding ongoing matters
in the Title III cases; and

     h.    monitoring hearings, pleadings filed, and orders entered in the
Title III cases and related adversary proceedings (including,

-4-

where appropriate, filing objections), and representing the
Committee in hearings before the Court.

7.       Paul Hastings has continued to perform these services in an economic, effective,

and efficient manner commensurate with the complexity and importance of the issues involved.

For example, the work performed by Paul Hastings was carefully assigned to appropriate

professionals or paraprofessionals according to the experience and level of expertise required for

each particular task.  Moreover, whenever possible, Paul Hastings sought to minimize the costs

of Paul Hastings' services to the Committee by utilizing talented junior attorneys and

paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the

extent practicable, questions of Puerto Rico law to local counsel.  In fact, a number of matters,

such as the estimation of unsecured claims against the Commonwealth, were delegated primarily

to local counsel to the Committee.

8.       In addition, a small core group of Paul Hastings attorneys was utilized for the vast

majority of the work in these Title III cases to minimize the costs of intra-Paul Hastings

communication and education about the cases.  Notably, as a general matter, no more than two

Paul Hastings attorneys telephonically attended the various hearings held during the Application

Period, thereby minimizing not only the time billed on these hearings but also the cost of travel

and lodging.  This is to be contrasted with other firms that have several partners attending such

hearings.

9.       Moreover, to the extent appropriate, Paul Hastings sought to work closely with

counsel to the Oversight Board, counsel to the Oversight Board's Special Claims Committee (the

"Special Claims Committee"), counsel to the Puerto Rico Fiscal Agency and Financial Advisory

Authority ("AAFAF"), and counsel for the official committee of retirees (the "Retiree

Committee") in order to eliminate unnecessary duplication and allocate tasks in an efficient

manner.  For example, with limited exceptions (such as the stay relief motions filed by holders

and/or insurers of Revenue Bonds, to which motions the Committee responded by filing limited

joinders in support of the Oversight Board's oppositions), the Committee did not become

involved in addressing stay relief requests and, instead, deferred these matters to representatives

of the Debtors.  In addition, to the extent appropriate, the Committee joined in the relief sought

by other parties (as opposed to incurring the cost of preparing its own standalone motions) or

concluded that no pleading was necessary at all.  The Committee has also continued to be very

judicious in determining in which adversary proceedings to intervene, despite the First Circuit's

ruling affirming the Committee's unconditional right to intervene in adversary proceedings.[3]

       10.     Finally, we note that the blended attorney hourly rate ($893 after 20% reduction)

for the Application Period is not comparable to the average hourly rate of other professionals in

these Title III cases.  Importantly, our blended attorney hourly rate does not reflect the numerous

cost-saving measures that we put in place, including deferring a variety of matters to the

Committee's local counsel, Casillas, Santiago & Torres LLC ("CST"), and the Committee's

special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB"), which have significantly

lower rates than Paul Hastings.  For example, Paul Hastings determined (with Committee

approval) that all garden-variety avoidance actions should be handled by CST.  Moreover,

certain other adversary proceedings (such as the complaint against certain PREPA fuel suppliers)

are being handled by GJB, even where Paul Hastings does not have a conflict.  Furthermore,

Paul Hastings submits that concentrating work in small teams (that naturally involve more senior

---

[3]    Finally, we note that Paul Hastings has agreed to reduce its total fees by an amount equal to 20% of the firm's
case fees (with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in
its sole discretion) in connection with the final fee application process).  For the avoidance of doubt, at this
time, Paul Hastings seeks allowance of $4,788,916.50 (*i.e.*, 100% of fees for services rendered during the
Application Period), but payment of fees in the amount of $3,831,133.20 (to the extent such amount has not
been paid before the hearing scheduled on this Application).

attorneys at higher rates) is more cost-efficient than spreading work out across large teams with numerous junior attorneys (which would have the effect of artificially lowering the blended hourly rate).  By comparison, on average, the Paul Hastings core teams are half the size of other firms' core team.

11.     In sum, Paul Hastings respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases.  The results obtained to date have benefited not only the Committee but also the Debtors and their creditors.  Accordingly, in light of the nature and complexity of these Title III cases, Paul Hastings' charges for professional services performed and expenses incurred are reasonable under applicable standards.  For all these reasons, Paul Hastings respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

12.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines").  To the extent necessary, Paul Hastings requests a waiver for cause shown of any requirements not met by this Application.[4]

---

[4]     The Committee and Paul Hastings reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

13.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of Paul Hastings' timekeepers included in this Application.

- Exhibit C-1 contains the budgets for Paul Hastings' services during the Application Period.

- Exhibit C-2 contains the staffing plans for Paul Hastings' services during the Application Period.

- Exhibit D-1 contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the Application Period, and (b) a further breakdown of the compensation requested by project category and matter number.

- Exhibit D-2 contains a summary of the expense reimbursements requested by category.  An itemized schedule of all such expenses is included in Paul Hastings' monthly statements.

- Exhibit E contains a breakdown of compensation and expense reimbursement requested by Debtor and by whether the services were rendered in Puerto Rico or outside Puerto Rico.

- Schedule 1 contains a list of the professionals providing services during the Application Period by matter.

- Schedule 2 includes the monthly fee statements covered in this Application.

- Schedule 3 includes the proposed order approving this Application.

## **BACKGROUND**

14.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304(a) of PROMESA (the "Commonwealth Title III Case").  Thereafter, the Oversight Board commenced a Title III case for each of COFINA, the Employees Retirement System of the

Government of the Commonwealth of Puerto Rico (the "ERS Title III Case"), the Puerto Rico

Highways and Transportation Authority (the "HTA Title III Case"), and the Puerto Rico Electric

Power Authority (the "PREPA Title III Case," and, together with the Commonwealth Title III

Case, the ERS Title III Case, and the HTA Title III Case, the "Title III Cases").[5]  By orders dated

June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the

joint administration of the Title III Cases.

15.     On June 15, 2017, the Office of the United States Trustee for the District of

Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured

Creditors* [Docket No. 338].  On June 26, 2017, the Committee selected Paul Hastings as counsel

to the Committee.

16.     On July 10, 2017, the Committee filed an application to retain and employ Paul

Hastings as counsel, effective June 26, 2017 [Docket No. 610] (the "Retention Application").

By order of this Court entered August 10, 2017 [Docket No. 999] (the "Retention Order"),

incorporated herein by this reference, Paul Hastings' retention as counsel to the Committee was

approved effective as of June 26, 2017.

17.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim

Compensation and Reimbursement of Expenses of Professionals* (as amended, the "Interim

Compensation Order").[6]

18.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of

Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the

Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and

---

[5]     Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III
Case.

[6]     The Interim Compensation Order was most recently amended on June 6, 2018.

the PREPA Title III Case.  Paul Hastings' retention extends to the representation of the
Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the
PREPA Title III Case.  In particular, the Retention Order provided that "[t]he retention of Paul
Hastings, as counsel to the Committee, shall be deemed to apply to the representation of the
Committee if ever enlarged to include unsecured creditors of other debtors, without the need to
obtain a modification of this Order."

19.     The Retention Order authorized Paul Hastings to be compensated on an hourly
basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to sections 316
and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court
may direct.[7]  The Retention Order further provides that "[p]ursuant to Bankruptcy Code
section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Paul
Hastings under this Order shall be an administrative expense."  In addition, as provided in the
Retention Order, the Oversight Board has consented to the Debtors' payment of Paul Hastings'
allowed fees and expenses.

20.     Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total
case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul
Hastings (in its sole discretion) in connection with the final fee application process.  For that
reason, at this time Paul Hastings seeks payment of only 80% of its fees incurred during the
Application Period, but allowance of 100% of such fees.  Paul Hastings agreed to this reduction
in reliance on the fact that the timing of the payment of Paul Hastings' fees and expenses would

---

[7]     Paragraph 2 of the Retention Order provides, among other things, that "Paul Hastings will charge its regular
hourly rates in effected from time to time; as such rates may be increased periodically, annually or otherwise."

be governed by Court orders which contained strict procedures and deadlines, and that such

order would be complied with.

21.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA*

*Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and*

*Related Relief* [Docket No. 1416] (the "Fee Examiner Order").  The Court appointed Brady

Williamson as the Fee Examiner in the Title III Cases.

22.     On December 15, 2017, Paul Hastings filed its first interim fee application with

respect to the period from June 26, 2017 through September 30, 2017 [Docket No. 2040] (the

"First Interim Fee Application").  In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the First Interim

Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in

its requested fees and expenses.[8]  On March 7, 2018, the Court approved the First Interim Fee

Application, with the agreed-upon adjustments.

23.     On March 19, 2018, Paul Hastings filed its second interim fee application with

respect to the period from October 1, 2017 through January 31, 2018 [Docket No. 2735] (the

"Second Interim Fee Application").  In accordance with the Interim Compensation Order, Paul

Hastings received a preliminary report from the Fee Examiner with respect to the Second Interim

Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in

---

[8]     These agreed-upon adjustments consisted of (a) fee reductions in the amount of  $67,259.01 to be included
within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee
application, (b) additional fee reductions in the amount of $13,507.00 (which amount was credited against Paul
Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $21,926.16 (which amount
also was credited against Paul Hastings' January 2018 fee statement).

its requested fees and expenses.[9]  On June 8, 2018, the Court approved the Second Interim Fee Application, with the agreed-upon adjustments.

24.     On July 16, 2018, Paul Hastings filed its third interim fee application with respect to the period from February 1, 2018 through May 31, 2018 [Docket No. 3568] (the "Third Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[10]  On March 14, 2019, the Court approved the Third Interim Fee Application, with the agreed-upon adjustments.

25.     On November 16, 2018, Paul Hastings filed its fourth interim fee application with respect to the period from June 1, 2018 through September 30, 2018 [Docket No. 4325] (the "Fourth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[11]  On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

---

[9]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $103,943.50 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $1,385.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $12,722.50 (which amount also was credited against Paul Hastings' January 2018 fee statement).

[10]  These agreed-upon adjustments consisted of (a) fee reductions in the amount of $125,338.14 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $99,589.74 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $3,737.20 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[11]  These agreed-upon adjustments consisted of (a) fee reductions in the amount of $69,137.26 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $58,539.27 (which amount was credited against Paul

-12-

26.     On March 18, 2019, Paul Hastings filed its fifth interim fee application with respect to the period from October 1, 2018 through January 31, 2019 [Docket No. 5822] (the "Fifth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[12]  On July 23, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

27.     On July 15, 2019, Paul Hastings filed its sixth interim fee application with respect to the period from February 1, 2019 through May 31, 2019 [Docket No. 8004] (the "Sixth Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[13]  On January 2, 2020, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

28.     On November 15, 2019, Paul Hastings filed its seventh interim fee application with respect to the period from June 1, 2019 through September 30, 2019 [Docket No. 9219] (the "Seventh Interim Fee Application").  In accordance with the Interim Compensation Order, Paul

---

Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $2,296.62 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[12]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $106,895.16 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $88,842.17 (which amount was credited against Paul Hastings' June 2019 fee statement), and (c) expense reductions in the amount of $606.96 (which amount also was credited against Paul Hastings' September 2019 fee statement).

[13]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $196,179.84 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $145,627.04 (which amount was credited against Paul Hastings' December 2019 fee statement), and (c) expense reductions in the amount of $227.93 (which amount also was credited against Paul Hastings' December 2019 fee statement).

Hastings received a preliminary report from the Fee Examiner with respect to the Seventh

Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain

adjustments in its requested fees and expenses.[14]  On April 17, 2020, the Court approved the

Seventh Interim Fee Application, with the agreed-upon adjustments.

29.     On March 16, 2020, Paul Hastings filed its eighth interim fee application with

respect to the period from October 1, 2019 through January 31, 2020 [Docket No. 12395] (the

"Eighth Interim Fee Application").  Paul Hastings has not yet received a preliminary report from

the Fee Examiner with respect to the Eighth Interim Fee Application.

## COMPENSATION AND REIMBURSEMENT REQUEST

30.     By this Application, Paul Hastings seeks allowance of compensation for

professional services rendered to the Committee during the Application Period in the aggregate

amount of $4,789,716.00[15] and expense reimbursements in the aggregate amount of

$139,072.95.[16]  These amounts are allocated among the Commonwealth Title III Case, the HTA

Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

---

[14]   These agreed-upon adjustments consisted of (a) fee reductions in the amount of $119,416.43 to be included
within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee
application, (b) additional fee reductions in the amount of $99,027.94 (which amount will be credited against
Paul Hastings' June 2020 fee statement), and (c) expense reductions in the amount of $548.31 (which amount
also will be credited against Paul Hastings' June 2020 fee statement).  In addition, Paul Hastings and the fee
examiner agreed to provisionally defer (a) $111,572.00 in Paul Hastings' fees related to the expert report
prepared by London Economics International, LLC ("LEI") and (b) $515,438.58 in expenses related to the
expert report prepared by LEI.

[15]   As noted, Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total case fees, with the
precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in
connection with the final fee application process.  Accordingly, the firm only seeks payment, at this time, of
fees in the amount of $3,831,133.20, which is 80% of $4,788,916.50.

[16]   At this time, Paul Hastings is not seeking allowance of $799.50 in fees incurred during the Application Period
in connection with the preparation of the expert report (the "LEI Report") prepared by LEI. Paul Hastings
believes that it was justified in retaining the services of an expert to provide an analysis on issues germane to
the PREPA RSA Motion.  However, in light of the fact that the Court referred this matter to the Fee Examiner
and that the Fee Examiner has not yet reached a conclusion with respect to the fees and expenses incurred in
connection with the LEI Report, Paul Hastings has not sought payment, and is not seeking allowance at this
time, of the fees and costs incurred during the Application Period in connection with the LEI Report. Paul

-14-

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $3,912,357.50 | $93,070.04 | $4,005,427.54 |
| HTA Title III Case | $57,074.50 | $1,641.83 | $58,716.33 |
| ERS Title III Case | $473,445.50 | $19,539.18 | $492,984.68 |
| PREPA Title III Case | $346,039.00 | $24,821.90 | $370,860.90 |
| **Total** | **$4,788,916.50** | **$139,072.95** | **$4,927,989.45** |

31.     The Committee has approved the amounts requested by Paul Hastings for services performed and expenses incurred in each of the monthly statements submitted to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee during the Application Period.  All services for which compensation is requested herein were performed for or on behalf of the Committee.  Moreover, as detailed on Exhibit D hereto, the aggregate amount of fees incurred by Paul Hastings during the Application Period was well below the fees budgeted.

32.     To date, Paul Hastings has received payments totaling $2,858,003.90 for services rendered during the Application Period, which amount consists of $2,767,151.60 (representing 80% of the fees for services invoiced during the period from February 1, 2020 through March 31, 2020) and $90,852.30 (representing 100% of expenses invoiced for the same period).  As of the date of this Application, the amount of $1,112,202.25 (reflecting 80% of fees and 100% of expenses for services rendered in April 1, 2020 through May 31, 2020) remains unpaid.[17]

33.     Other than payments made in accordance with the Interim Compensation Order, Paul Hastings has received no payment and no promises of payment from any source for services rendered during the Application Period.  By this Application, Paul Hastings requests allowance

---

Hastings believes that these fees and expenses were reasonable and reserves the right to seek the allowance thereof at a later time.

[17]   The deadline to object to Paul Hastings' April 2020 fee statement expired on June 15, 2020, without any objections, and payment on the April 2020 fee statement was due on July 1, 2020.  The deadline to object to the May 2020 fee statement is July 20, 2020.  No objections to the May 2020 fee statement have been received as of the filing of this Application.

of all fees and expenses incurred for services rendered during the Application Period.  At this time, however, Paul Hastings seeks payment of only (a) 80% of the fees for services invoiced during the Application Period and (b) 100% of expenses invoiced during the Application Period.

34.      In addition, as a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period Paul Hastings voluntarily waived fees totaling $34,803.50.  The time billed by these timekeepers was reasonable, and Paul Hastings reserves the right to seek allowance and payment of these fees based on the facts and circumstances of these cases, including, without limitation, if objections are interposed to the allowance or payment of Paul Hastings' fees and expenses.  Paul Hastings also voluntarily waived expenses totaling $1,126.89 as a courtesy to the Committee during the Application Period.  For details regarding the waived fees and expenses, please see the Declaration of Luc A. Despins filed concurrently herewith.

35.      There is no agreement or understanding between Paul Hastings and any other person other than the attorneys, employees, and staff of Paul Hastings, for the sharing of compensation to be received for services rendered in these cases.

36.      Paul Hastings maintains computerized records, in the form of monthly statements, of the time spent by all Paul Hastings' attorneys and paraprofessionals in connection with its representation of the Committee.  The monthly statements are in the same form regularly used by Paul Hastings to bill its clients for services rendered and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

37.      The fees charged by Paul Hastings in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period with the

following exception: as a courtesy to the Committee and based on circumstances unique to the

Title III Cases, Paul Hastings agreed to charge reduced rates for the services of the following

attorneys during the Application Period (in each case, adjusted to reflect, on a *pro forma* basis,

the 20% end-of-case reduction):

| Attorney | Standard 2020 Rate (adjusted to reflect 20% end-of-case reduction) | Reduced 2020 Rate (adjusted to reflect 20% end-of-case reduction) |
|---|---|---|
| Luc A. Despins | $1,280.00 | $1,200.00 |
| John Hilson | $1,240.00 | $1,120.00 |
| Pedro Jimenez | $1,120.00 | $1,088.00 |
| Nicholas Bassett | $1,040.00 | $1,028.00 |

Subject to the foregoing exception, the rates Paul Hastings charges for the services rendered by

its professionals and paraprofessionals in the Title III Cases are comparable to the rates Paul

Hastings charges for professional and paraprofessional services rendered in comparable

nonbankruptcy related matters.  Moreover, when Paul Hastings' restructuring professionals and

paraprofessionals work on nonbankruptcy matters, the firm generally charges their standard rate.

Such fees are reasonable based on the customary compensation charged by comparably skilled

practitioners in comparable nonbankruptcy cases in a competitive national legal market.

38.     Paul Hastings' rates are set at a level designed to fairly compensate Paul Hastings

for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expenses.

Paul Hastings operates in a complicated national marketplace for legal services in which rates are

driven by multiple factors relating to the individual lawyer, his or her area of specialization, the

firm's expertise, performance and reputation, the nature of the work involved, and other factors.

Accordingly, Paul Hastings set its rates for attorneys and paraprofessionals both in the

restructuring group and other practice groups within the firm by reference to market information

and market adjustments by firms considered to be industry peers.  Based on this and reviews of

contemporaneous time records and fee applications filed in other cases, Paul Hastings endeavors

to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its

principal competitor firms.

39.     Paul Hastings' professional services during the Application Period required an

aggregate expenditure of 4,694.70 recorded hours by Paul Hastings' attorneys and

paraprofessionals, broken down as follows: partners (472.80 hours), counsel (1,650.90 hours),

associates (2,003.90 hours), and paraprofessionals (567.10 hours).  During the Application

Period, Paul Hastings' billing rates for attorneys rendering services in this matter ranged from

$465.00 to $1,500.00 per hour (before the application of any fee reductions).

40.     To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Application Period, but were not processed before the

preparation of this Application, or Paul Hastings has for any other reason not sought

compensation or reimbursement with respect to such services or expenses, Paul Hastings

reserves the right to request additional compensation for such services, and reimbursement of

such expenses, in a supplemental or future application.

## **SUMMARY OF SERVICES**

41.     During the Application Period, Paul Hastings assisted and advised the Committee

on a regular basis regarding legal matters relating to the restructuring of the Debtors, including

related adversary proceedings, and all other matters arising in the performance of the

Committee's duties.  In addition, Paul Hastings has prepared various motions, applications,

orders, and other pleadings submitted to the Court for consideration, and has performed the

necessary professional services that are described below and in the monthly statements attached

hereto as <u>Schedule 2</u>.[18]  For ease of reference and transparency purposes, Paul Hastings created

several matter numbers for its representation of the Committee.  The matter numbers are divided

by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 00002 | Official Committee of Unsecured Creditors |
| 00004 | Communications with Creditors (other than Committee Members) |
| 00006 | PREPA |
| 00007 | HTA |
| 00008 | ERS |
| 00009 | Other Adversary Proceedings |
| 00010 | Mediation |
| 00011 | GO Bond Debt Issues |
| 00012 | Creditors' Committee Meetings |
| 00014 | Constitutional Issues |
| 00017 | PBA |

**I.    Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 00002)**

42.    During the Application Period, Paul Hastings addressed a number of key matters

as Committee counsel with respect to Matter ID 00002.  In fact, the majority of Paul Hastings'

fees during the Application Period—$2,912,201.00 out of the $4,788,916.50 fee total across all

matters and task codes—were incurred in connection with Matter ID 00002, of which

$1,333,009.00 was related to representing the Committee in connection with matters related to

the Commonwealth plan of adjustment.

43.    Prior to the COVID-19 Adjournment, Paul Hastings was required to devote

significant time preparing the Committee's response to the Mediation Team Report, analyzing

---

[18]    The description of services in this Application is limited to those matters in which Paul Hastings provided five (5) or more hours of service during the Application Period.

the Amended Plan and the related Bondholder PSA, as well as formulating and executing the

Committee's strategy regarding the Amended Plan.  This task was vital given that (a) the

Amended Plan would provide general unsecured creditors of the Commonwealth with only a

miniscule recovery while settling, releasing, or abandoning the GO Bond Claim Objections, (b)

the Mediation Team Report proposed the stay of the GO Bond Claim Objections pending

confirmation of the Amended Plan, and (c) prior to the COVID-19 Adjournment, the Oversight

Board pursued an accelerated schedule for litigating the Amended Plan and Disclosure

Statement.

44.      The terms of the Amended Plan (which incorporated the terms of the Bondholder

PSA) threatened the interests of unsecured creditors and demanded a strong response from the

Committee.  Among other things:

- General unsecured creditors would receive a miniscule recovery of 3.9%, while GO Bondholders would obtain recoveries of upwards of 77% of the face amount of their GO Bonds.

- Supporting GO Bondholders would receive hundreds of millions of dollars of consent fees to be paid by the Commonwealth simply for agreeing to support the Amended Plan, along with a "break-up fee" of $100 million.

- GO Bondholders would receive broad releases from all challenges to the validity of their GO Bond claims, including the Committee's objections to billions of dollars of GO Bonds on the grounds that they were issued in violation of Puerto Rico's constitutional debt limit.

45.      Moreover, the Mediation Team Report proposed the stay of the GO Bond Claim

Objections while simultaneously proposing that other matters, such as the Revenue Bond

litigation (which involved the same key issues), be allowed to go forward.  The Committee did

not agree that the GO Bond Claim Objections should be stayed pending confirmation of the

Amended Plan, and, for that reason (and others), Paul Hastings prepared the Committee's

objection to the Mediation Team Report.  That objection also opposed the Oversight Board's

proposed accelerated schedule for a hearing on the approval of the Disclosure Statement.  The

Court ultimately granted the stay of the GO Bond Claim Objections and, moreover, scheduled

the Disclosure Statement hearing for early June 2020 (although that hearing has since been

adjourned as a result of the COVID-19 Adjournment).

46.     In addition, Paul Hastings prepared the Committee's Rule 3013 Motion, which

successfully put the Committee's claim classification issues on the Court's agenda prior to an

eventual solicitation process.  Paul Hastings also researched and analyzed numerous plan issues

relevant to unsecured creditors.

47.     In addition to its plan-related work, Paul Hastings also devoted significant time on

the Revenue Bond Stay Relief Motions, general motion practice (such as the Committee's

successful motion for additional disclosure under Bankruptcy Rule 2019), the handling of

claims-related matters, and other matters in connection with the Commonwealth's Title III case.

(a)     Case Administration (Task Code B110)
        Fees:   $96,877.00     Total Hours:   174.10

48.     During the Application Period, Paul Hastings continued to advise the Committee

on general case administration.  In order to efficiently track deadlines, organize documents, and

manage work streams, Paul Hastings maintained a global task list and case calendar.  Further,

Paul Hastings coordinated internally and with the Committee's financial advisor, Zolfo Cooper

LLP ("Zolfo Cooper") regarding Committee communications, case strategy, and work streams.

49.     In addition, during the Application Period, Paul Hastings continued to implement

interim and long-term strategies to maximize recoveries for general unsecured creditors.  Paul

Hastings also communicated with certain Committee members and others in connection with the

administration of the Title III Cases, and reviewed and analyzed documents produced in

connection with Revenue Bond-related litigation.

50.     Furthermore, Paul Hastings worked to execute a variety of other tasks related to

case administration, including, among other things, preparing verified statements under

Bankruptcy Rule 2019 and analyzing issues in connection therewith, monitoring the Bankruptcy

Rule 2019 disclosures of other creditor groups, and handling administrative matters in

connection with the filing and service of pleadings.

    (b)    <u>Pleadings Review (Task Code B113)</u>
            Fees:  $26,540.00    Total Hours:   52.00

51.     During the Application Period, Paul Hastings continued to review and prepare

summaries of pleadings filed and orders entered in the Title III Cases for internal review and

review by the Committee.

    (c)    <u>Relief from Stay / Adequate Protection Proceedings (Task Code B140)</u>
            Fees:  $291,367.50        Total Hours:   261.20

52.     During the Application Period, Paul Hastings prepared the Committee's limited

joinders in support of the Oversight Board's objections to the Revenue Bond Stay Relief

Motions.  In addition, Paul Hastings also prepared the Committee's limited joinders in support of

the Oversight Board's sur-replies in opposition to these stay relief motions.  Of particular note, in

the interest of minimizing fees and to avoid the duplication of work, the Committee did not

prepare its own standalone objections or sur-replies with respect to these lift stay motions, but

instead coordinated with counsel to the Oversight Board prior to the filing deadlines, including

by requesting advance drafts of the Oversight Board's oppositions and sur-replies, providing

comments on the drafts (some of which were incorporated), and ultimately filing limited joinders

to such oppositions and sur-replies.  While Paul Hastings performed research and analysis of the

legal issues raised in the Revenue Bond Stay Relief Motions (in order to, among other things,

determine the extent of the Committee's joinders in the Oversight Board's oppositions and sur-replies), Paul Hastings' approach saved substantial fees compared to preparing standalone oppositions to these lift stay motions.  Moreover, Paul Hastings followed the same efficient approach in preparing and filing the Committee's limited joinder to the Oversight Board's response to the response to the pleading filing by the "DRA Parties" (AmeriNational Community Services, LLC and Cantor-Katz Collateral Monitor LLC) in connection with the Revenue Bond Stay Relief Motion.  Paul Hastings also participated in the discovery related to the Revenue Bond Stay Relief Motions, including by analyzing produced documents and participating in a deposition.

53.     In addition, Paul Hastings analyzed stay issues in connection with, among other things, the Oversight Board's contemplated settlement with the plaintiffs in the *Gracia-Gracia v. Commonwealth of Puerto Rico* litigation, and the motion for relief from stay filed by the Atlantic Medical Center, Inc. ("Atlantic Medical") and other health service providers.  Paul Hastings prepared and filed the Committee's statement in partial support of Atlantic Medical's relief from stay motion in order to highlight the importance, from the perspective of unsecured creditors generally, of the prompt liquidation of claims (while leaving the treatment of such claims for the plan stage).

(d)     Meetings of and Communications with Creditors (Task Code B150)
Fees:   $271,558.50          Total Hours:   276.70

54.     During the Application Period, Paul Hastings continued to prepare reports and summaries to keep the Committee apprised of relevant developments in the Title III Cases and related adversary proceedings.[19]

---

[19]     Meetings and calls with the Creditors' Committee were recorded separately under Matter ID 00012 (Creditors' Committee Meetings).

(e)    Court Hearings (Task Code B155)
          Fees:  $113,882.00          Total Hours:  101.80

55.      During the Application Period, Paul Hastings attended (a) the March 4-5, 2020

omnibus hearing in San Juan, at which hearing Paul Hastings addressed the Court in connection

with the Oversight Board's motion for pre-solicitation procedures and the Mediation Team

Report, as well as related issues in connection with the scheduling of litigation and the

confirmation process; and (b) the April 22, 2020 omnibus hearing, held remotely, at which

hearing Paul Hastings addressed the Court in connection with the Committee's Rule 3013

Motion.

56.      In preparation for these hearings, as well as in preparation for the hearing held on

June 3-4, 2020, shortly after the end of the Application Period, Paul Hastings also reviewed

relevant issues raised in the parties' pleadings, prepared materials for the hearings, and filed the

requisite informative motions to be heard.

(f)    Fee/Employment Applications (Paul Hastings) (Task Code B160)
          Fees:  $200,301.00          Total Hours: 222.40

57.      During the Application Period, Paul Hastings prepared, among other things, five

monthly fee statements for services provided during the months of December 2019 through April

2020, as well as the Eighth Interim Fee Application for the period from October 1, 2019 through

January 31, 2020 and portions of this Application.  In addition, Paul Hastings continued to

identify possible connections between the firm and parties in interest in the Title III Cases and

prepared two supplemental declarations of Luc A. Despins regarding the firm's retention as

Committee counsel (one of these supplemental declarations was filed during the Application

Period, while the other was worked on, but not completed, during the Application Period).  Paul

Hastings also reviewed reports and correspondence from the Fee Examiner and engaged in

discussions with the Fee Examiner and his counsel to address questions regarding Paul Hastings'

interim fee applications.

      (g)     <u>Budget (Task Code B161)</u>
            Fees:   $7,800.00            Total Hours: 6.00

58.     During the Application Period, Paul Hastings prepared and revised monthly fee

budgets.

      (h)     <u>Fee/Employment Applications for Other Professionals (Task Code B165)</u>
            Fees: $18,190.00            Total Hours: 23.80

59.     During the Application Period, Paul Hastings assisted the Committee's

communications advisor, Kroma Advertising, Inc. ("<u>Kroma</u>") and handled Committee member

expense reimbursement requests.  Paul Hastings also handled other matters related to the

employment of other professionals, including reviewing the fee statements of certain

professionals retained by the Oversight Board and AAFAF.

      (i)     <u>Other Contested Matters (Task Code B190)</u>
            Fees:   $173,786.50        Total Hours: 167.40

60.     During the Application Period, Paul Hastings prepared, among other things, the

Committee's Rule 2019 Motion (which sought additional disclosures from Rule 2019 groups), a

reply in support of said motion, and a statement in support of the separate motion for additional

Bankruptcy Rule 2019 disclosures that was filed by certain bond insurers.  The Rule 2019

Motion was highly successful, attracting support from other parties and resulting in the Court

granting the motion per an order issued on May 26, 2020 that required even greater disclosure

than the Committee had requested.  Paul Hastings also analyzed and prepared an informative

motion in response to the Court's proposed changes to the *Notice, Case Management and

Administrative Procedures* arising from its ruling on the Rule 2019 Motion, which informative

motion was filed on June 2, 2020, shortly after the end of the Application Period.

61.     In addition to the Rule 2019 Motion, Paul Hastings also handled certain other

contested matters, including participating in the meet and confer process related to Ambac's

motion seeking discovery under Bankruptcy Rule 2004.

    (j)    <u>Non-Working Travel (Task Code B195) (billed at ½ rate)</u>
        Fees:   $14,585.00          Total Hours: 21.10

62.     During the Application Period, two Paul Hastings professionals traveled to and

from San Juan to attend the omnibus hearing held on March 3-4, 2020.  In accordance with Local

Rule 2016-2(d)(viii), Paul Hastings billed for one-half the total time that Paul Hastings

professionals spent on non-working travel.

    (k)    <u>Claims Administration and Objections (Task Code B310)</u>
        Fees:   $362,236.00          Total Hours: 353.90

63.     During the Application Period, Paul Hastings, with the assistance of CST and

Zolfo Cooper, continued to analyze proofs of claims in order to better understand the size and

nature of the unsecured claims pool.  This continued to be a critical task during the Application

Period given the importance of advocating for improvements to the dismal recovery for general

unsecured creditors contemplated under the Amended Plan.  As mentioned in prior fee

applications, in contrast to bondholders' claims, the unsecured claims pool is comprised of

thousands of claims that are difficult to quantify because they are often based on pending

litigation.  As part of this claim review process, Paul Hastings continued to analyze, with the

assistance of local counsel CST, the merits and the potential allowed amounts of certain claims

asserted by unsecured creditors against the Debtors.  Paul Hastings also reviewed claim

objections filed by the Debtors (as well as responses thereto) and continued to analyze complex

issues related to the treatment of claims.

64.     Further, Paul Hastings also reviewed the Oversight Board's proposed order for

ACR procedures as well as the Oversight Board's proposed order for ADR procedures.  Paul

Hastings also prepared and filed the Committee's reservation of rights in connection with the proposed ACR order.

65.      Paul Hastings also undertook a number of other tasks related to the resolution of claims against the Commonwealth.  For example, Paul Hastings conducted research and analysis of issues related to claims asserted by holders and/or insurers of Revenue Bonds, including analysis of bond documentation and related materials.  Paul Hastings also prepared a draft of the Committee's objection to Revenue Bond claims, which will be filed in due course.

(l)      Plan and Disclosure Statement (including Business Plan) (Task Code B320)
Fees: $ 1,333,009.00          Total Hours: 1,270.90

66.      During the Application Period, Paul Hastings handled numerous tasks related to the plan process.  First, as discussed above, Paul Hastings advised the Committee in connection with the Bondholder PSA, the Amended Plan, and the Disclosure Statement.  Paul Hastings carefully analyzed these documents in order to advise the Committee with respect thereto and worked to develop the Committee's strategy with respect to the Amended Plan.  As part of these efforts, Paul Hastings conducted extensive research and analysis of a variety of plan-related issues, including issues related to confirmation requirements, essential services, classification and priority of claims, settlement issues, and unfair discrimination.

67.      In addition, Paul Hastings prepared the Committee's objection to the Mediation Team Report regarding the sequencing of confirmation-related issues.  The objection argued, among other things, that the Court should resolve the GO Bond Claim Objections prior to the confirmation of the Amended Plan (as opposed to allowing the settlement of the GO Bond Claim Objections to go forward as a term of the Amended Plan subject to challenge only at confirmation).

68.     In addition, Paul Hastings also prepared the Committee's Rule 3013 Motion and reply in support thereof, which ultimately resulted in the Court's allowing the classification issues raised in the Rule 3013 Motion to be decided prior to solicitation of the Amended Plan.

69.     Finally, Paul Hastings also undertook a variety of other plan-related tasks, including:

- preparing the Committee's limited response to the Oversight Board's motion regarding pre-solicitation information requests to request that retirement benefit claimants be given more time to respond to such requests;

- analyzing the Oversight Board's proposed settlement regarding the guarantee claim asserted by holders of certain Puerto Rico Infrastructure Financing Authority (PRIFA) bond anticipation notes (BANs) and preparing a reservation of rights with respect thereto;

- preparing a statement expressing the Committee's views regarding the ongoing stay of the GO Bond Claim Objections;

- handling discovery matters related to expected litigation regarding the approval of the Disclosure Statement (which litigation was paused as a result of the COVID-19 Adjournment); and

- at the request of the Puerto Rico legislature, commenting on proposed legislation regarding the treatment of unsecured claims.

## II.    Communications with Creditors (other than Committee Members) / Website (Matter ID 00004)

(a)     Meetings of and Communications with Creditors (Task Code B150)
        Fees:   $94,628.50          Total Hours: 80.40

70.     During the Application Period and prior to the COVID-19 Adjournment, Paul Hastings prepared and updated, with the assistance of Kroma, the Committee's website regarding the Title III Cases, including updates on hearings, recent Court orders, and other developments in the Title III Cases.  In this regard, Paul Hastings also prepared and updated the Spanish-language sections of the website.  Paul Hastings also worked with Kroma to draft and distribute multiple informational emails to unsecured creditors.  These emails contained links to the Committee's

website and case information and updates, including among others updates on the treatment of

creditors under the Amended Plan and the COVID-19 Adjournment.

## III.    PREPA (Matter ID 00006)

(a)     Case Administration (Task Code B110)
Fees:   $2,018.00          Total Hours: 6.10

71.      During the Application Period, Paul Hastings continued to handle administrative

matters in connection with the PREPA Title III Case, including filing and service of pleadings.

(b)     Assumption/Rejection of Leases and Contracts (Task Code B185)
Fees:   $46,838.50         Total Hours: 38.20

72.      During the Application Period, Paul Hastings analyzed legal issues, pleadings,

and other documents in connection with PREPA's motion to assume certain natural gas supply

contracts and advised the Committee with respect to same.

(c)     General Litigation (Task Code B191)
Fees:   $7,535.50          Total Hours: 8.80

73.      During the application period, Paul Hastings represented the Committee in

connection with Adversary Proceeding Number 19-396 and prepared a response to the plaintiffs'

motion to adjourn same.

(d)     Claims Administration and Objections (Task Code B310)
Fees:   $158,012.50        Total Hours: 142.20

74.      During the Application Period, Paul Hastings continued to represent the

Committee in connection with its appeal of the Court's January 2020 order terminating (without

prejudice) the Committee's objection to PREPA bond claims.  In connection with this appeal,

which was filed to preserve the Committee's appellate rights, Paul Hastings, among other things,

prepared a pleading (i) responding to the Oversight Board's motion to dismiss the appeal and (ii)

conditionally cross-moving to hold the appeal in abeyance.  Paul Hastings subsequently

negotiated the consensual abeyance of the appeal with counsel to the Oversight Board and

conducted legal research and analysis regarding the renewal of its claim objection and other legal issues arising from the termination without prejudice of the claim objection.

75.      In addition to the above, Paul Hastings analyzed the renewed request for the allowance and payment of certain administrative expense claims filed by Cobra Acquisition LLC and communicated with counsel to PREPA with respect thereto.  Paul Hastings also continued to communicate with counsel to PREPA regarding the motion for allowance and payment of administrative expense claims filed by Consul-Tech Caribe, Inc.

(e)      Restructurings (Task Code B420)
Fees:   $116,916.50          Total Hours: 111.40

76.      During the Application Period, Paul Hastings continued to represent the Committee with respect to the PREPA RSA Motion.  Among other things, Paul Hastings analyzed legal issues related to the PREPA RSA Motion, including those arising from the First Circuit Court of Appeals' January 30, 2020 decision on section 552 of the Bankruptcy Code and related issues in connection with ERS's Title III case—this analysis was critical given the significant common legal issues related to ERS and PREPA bonds.  Paul Hastings also analyzed issues related to the relationship between the PREPA RSA and PREPA's fuel supply contracts, as well as strategic and procedural considerations in connection with the ongoing adjournment of the hearing on the PREPA RSA Motion.  In addition Paul Hastings communicated with counsel to PREPA, AAFAF, and the Oversight Board regarding RSA-related matters and the Committee's views with respect to same, and prepared (a) the Committee's response to the Government Parties' motion for a bridge order staying their reply deadline in connection with the PREPA RSA Motion and (b) the Committee's response to the Oversight Board's status report regarding the PREPA RSA filed in May of 2020.  In addition, Paul Hastings continued to handle

discovery matters related to the litigation of the PREPA RSA Motion, including the analysis of supplemental document production and related legal issues.[20]

## IV.    HTA (Matter ID 00007)

    (a)    General Litigation (Task Code B191)
        Fees:   $56,294.50         Total Hours: 49.60

77.    During the Application Period, Paul Hastings continued to represent the Committee in connection with Revenue Bond Adversary Proceeding No. 20-007, in which the Oversight Board and Committee (as co-plaintiff with respect to certain counts) challenged the claims of certain Revenue Bondholders against HTA.  Among other things, Paul Hastings prepared the Committee's motion to intervene in the adversary proceeding and analyzed related documents and issues, including draft pleadings prepared by the Oversight Board.

## V.    ERS (Matter ID 00008)

    (a)    Case Administration (Task Code B110)
        Fees:   $24,227.00         Total Hours: 72.20

78.    During the Application Period, Paul Hastings continued to review and analyze materials related to the ERS Title III Case, including document production received in connection with the ERS Claim Objection.  Paul Hastings also handled administrative tasks in connection with the filing and service of pleadings related to ERS.

---

[20]    At this time, Paul Hastings is not seeking allowance of $799.50 in expenses incurred during the Application Period in connection with the preparation of the LEI Report.  Paul Hastings believes that it was justified in retaining the services of an expert to provide an analysis on issues germane to the PREPA RSA Motion. However, in light of the fact that the Court referred this matter to the Fee Examiner and that the Fee Examiner has not yet reached a conclusion with respect to the fees and expenses incurred in connection with the LEI Report, Paul Hastings has **not** sought payment, and is **not** seeking allowance at this time, of the fees and costs incurred during the Application Period in connection with the LEI Report.  Paul Hastings believes that these fees and expenses were reasonable and reserves the right to seek the allowance thereof at a later time.

    (b)    <u>General Litigation (Task Code B191)</u>
            Fees:  $99,704.50        Total Hours: 85.60

79.     During the Application Period, Paul Hastings continued to represent the

Committee in connection with the litigation of the ERS lien scope challenge and *ultra vires*

issues, including by, among other things, handling the discovery process (including depositions

and deposition prep) and scheduling issues, analyzing related legal issues, working to identify

and retain potential experts, and analyzing the motions to dismiss filed by ERS bondholders in

April 2020.  In handling these matters, Paul Hastings worked closely with counsel to the other

parties objecting to the ERS bonds, *i.e.*, the Oversight Board, the Special Claims Committee, and

the Retiree Committee (collectively, the "ERS Co-Objectors").

    (c)    <u>Non-Working Travel (Task Code B195) (billed at ½ rate)</u>
            Fees:  $13,205.50        Total Hours: 24.20

80.     During the Application Period, (a) one Paul Hastings professional travelled to and

from New York to attend a February 20, 2020 litigation scheduling meeting with the mediator

and other parties; (b) two Paul Hastings professionals travelled to and from New York to attend

depositions held on February 27-28, 2020; and (c) two Paul Hastings professionals travelled to

and from New York to attend a deposition held on March 3, 2020.  In accordance with Local

Rule 2016-2(d)(viii), Paul Hastings billed for one-half the total time that Paul Hastings

professionals spent on non-working travel.

    (d)    <u>Claims Administration and Objections (Task Code B310)</u>
            Fees:  $334,807.00      Total Hours: 288.30

81.     During the Application Period, Paul Hastings continued its work representing the

Committee in connection with the litigation of the ERS Claim Objections, in which the

Committee and the ERS Co-Objectors challenged over $3 billion of ERS bonds as invalid based

on the theory that they were issued *ultra vires*, as well as related matters.  Among other things,

Paul Hastings handled discovery matters including document production and depositions,

-32-

research and analysis of legal issues related to discovery disputes, and mediation in connection

with same.  Paul Hastings also worked with counsel for the ERS Co-Objectors to prepare and file

a joint motion to compel deposition testimony as well as other documents.  Furthermore, Paul

Hastings analyzed the motions to dismiss the ERS Claim Objection filed by ERS bondholders

and prepared and filed the Committee's limited joinder to ERS Co-Objectors' motions to

disallow and dismiss ERS bondholder claims.  As in other instances, the Committee filed a

limited joinder instead of its own stand-along motion to disallow and dismiss claims, in the

interest of minimizing fees and to avoid the duplication of work.

82.    In addition to the above, Paul Hastings also continued to handle administrative

tasks required under the Court's October 7, 2019 order approving revised, agreed-upon

procedures to allow for the coordinated litigation of the ERS Claim Objections and other

challenges to the claims of ERS bondholders.

## VI.   Other Adversary Proceedings (Matter ID 00009)[21]

(a)    <u>Court Hearings (Task Code B113)</u>
Fees:   $3,877.50            Total Hours: 11.70

83.    During the Application Period, Paul Hastings reviewed pleadings filed and orders

entered in adversary proceedings related to the Title III Cases for internal review and review by

the Committee.

(b)    <u>General Litigation (Task Code B191)</u>
Fees:   $277,443.50         Total Hours: 272.90

84.    During the Application Period, Paul Hastings monitored the progress of a number

of adversary proceedings and related matters, advising the Committee as appropriate.  In order to

---

[21]    To the extent practicable, Paul Hastings tracked work in respect of PREPA-related adversary proceedings under
Matter ID 00006, HTA-related adversary proceedings under Matter ID 00007, and ERS-related adversary
proceedings under Matter ID 00008.

track deadlines, organize documents, and notify the Committee of upcoming matters, Paul
Hastings reviewed these dockets to maintain its litigation tracking charts.

85.     Paul Hastings also represented the Committee in connection with the Revenue
Bond Adversary Proceedings.  Among other things, Paul Hastings prepared and filed the
Committee's motions to intervene in the Revenue Bond Adversary Proceedings, the replies in
support of such motions, and the Committee's objections to the Court's report and
recommendation in connection with same.  Paul Hastings also prepared the Committee's limited
joinders in support of the Oversight Board's motions for summary judgment in the Revenue
Bond Adversary Proceedings.  As with the Oversight Board's objections to the Revenue Bond
Stay Relief Motions, in the interest of minimizing fees and to avoid the duplication of work, the
Committee did not prepare its own standalone summary judgment motions, but instead
coordinated with counsel to the Oversight Board prior to the filing deadlines, including by
requesting advance drafts of the Oversight Board's summary judgment motions, providing
comments on the drafts (some of which were incorporated), and ultimately filing limited joinders
to such summary judgment motions.

86.     In addition to the above, Paul Hastings also handled other matters, including
among other things analyzing certain high level issues in connection with ongoing avoidance
actions, preparing and filing a limited joinder to the Oversight Board's motion to dismiss the
*Cooperativa de Ahorro y Crédito Abraham Rosa v. Commonwealth of Puerto Rico* adversary
proceeding (Adv. Proc. No. 18-028), and analyzing the complaint filed by Ambac Assurance
Corporation with respect to the Uniformity Clause of the United States Constitution (Adv. Proc.
No. 20-068).

**VII.   Mediation (Matter ID 00010)**[22]

  (a)   Relief from Stay/Adequate Protection Proceedings (Task Code B140)
      Fees:   $11,340.00          Total Hours: 8.00

87.      During the Application Period, Paul Hastings represented the Committee in

mediation with respect to the Revenue Bond Stay Relief Motions.

**VIII.   GO Bond Debt Issues (Matter ID 00011)**

  (a)   General Creditor Inquiries (Task Code B110)
      Fees:   $2,624.00          Total Hours: 6.10

88.      During the Application Period, Paul Hastings handled administrative matters in

connection with the GO Bond Claim Objections, including filing and service of pleadings.

  (b)   Claims Administration and Objections (Task Code B310)
      Fees:   $458,411.00          Total Hours: 407.00

89.      During the Application Period, Paul Hastings continued to represent the

Committee in connection with the GO Bond Claim Objections asserting that GO Bonds were

issued in violation of the constitutional debt limit (the "GO Debt Limit Objections"), including

by analyzing and beginning to prepare responses to the motions to dismiss the GO Debt Limit

Objections (which responses would have come due by March 18, 2020, absent the Court staying

the GO Bond Claim Objections on March 3, 2020).  As part of this process, Paul Hastings

researched and analyzed numerous complex legal issues raised in these objections.

90.      In addition, Paul Hastings prepared and filed the Committee's GO Bond Claim

Objection challenging GO Bond priority (the "GO Priority Objection") and analyzed related

legal issues.  Paul Hastings also prepared a procedural motion and notice documents in

---

[22]   Due to mediation confidentiality restrictions, Paul Hastings cannot publicly disclose the substance of the issues
addressed in mediation.  Moreover, Paul Hastings has redacted all references to specific mediation issues in its
monthly fee statements attached to this Application.  Paul Hastings will submit unredacted versions of such
statements for the Court's review, if the Court so requests.  The Fee Examiner has received unredacted versions
of such statements.

connection with the GO Priority Objection, as well as a reply in support of such proposed

procedures.  Paul Hastings also analyzed legal issues with respect to the Court's March 2020

order staying the litigation of the GO Bond Claim Objections.

**IX.    Creditors Committee Meetings (Matter ID 00012)**

      (a)    <u>Meetings of and Communications with Creditors (Task Code B150)</u>
              Fees:   $136,237.50          Total Hours: 118.80

91.    During the Application Period, Paul Hastings continued to hold regular telephonic

conferences with the Committee to provide the Committee with updates on the progress of the

Title III Cases as well as to discuss case strategy and next steps.  In preparation for these

telephonic conferences, Paul Hastings (a) reviewed relevant pleadings filed in the Title III Cases

and related adversary proceedings, (b) prepared presentations for these meetings, and (c)

prepared proposed agenda letters for the Committee's consideration.

* * *

92.    The foregoing professional services were necessary and appropriate to the

administration of the Title III Cases and were in the best interests of the Committee, the Debtors,

the creditors, and other parties in interest.

<u>**ATTENDANCE AT HEARINGS**</u>

93.    In accordance with the presumptions set forth in the *Order on Fee Examiner's*

*Motion* to *Impose Presumptive Standards and Timeliness Requirements for Professional Fee*

*Applications* [Docket No. 3932] (the "<u>Presumptive Standards Order</u>"), Paul Hastings provides

the following summary regarding the attendance of Paul Hastings professionals at Court

hearings:[23]

- March 4-5, 2020:  The March 4-5, 2020 omnibus hearing was attended by Mr.
  Despins (speaking role) and Mr. Bongartz in person, with Mr. Maza (for a portion
  of the hearing) attending by telephone.  The omnibus hearing addressed, among
  other things, the Mediation Team Report in connection with the scheduling of
  litigation and the disclosure statement and plan confirmation process.  Therefore,
  Paul Hastings submits that the attendance (for a portion of the hearing) of an
  additional attorney by phone (Mr. Maza) who is extensively involved in plan
  litigation matters is reasonable under the circumstances.

- April 22, 2020:  The April 22, 2020 omnibus hearing, which was held remotely,
  was attended by Mr. Despins (speaking role), as well as Mr. Bongartz and Mr.
  Maza (for a portion of the hearing).  The omnibus hearing addressed, among other
  things, the Committee's Rule 3013 Motion regarding the classification of claims.
  Therefore, Paul Hastings submits that the attendance (for a portion of the hearing)
  of an additional attorney (Mr. Maza) who was extensively involved in preparing
  the Rule 3013 Motion is reasonable under the circumstances.

**REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND
COMMITTEE**

94.     As requested by the Fee Examiner, we set forth below the status of the various

proceedings and motions jointly commenced by the Oversight Board or its Special Claims

Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for

the joint prosecution of causes of action or claims objections.

- GO Bond Claim Objections: Pursuant to Judge Swain's stay order dated March
  10, 2020 [Docket No. 12189] (the "Final Stay Order"), the GO Bond Claim
  Objections are stayed pending the Court's decision regarding confirmation of the
  Amended Plan.

- Adversary Proceeding Against Underwriters, etc.: GJB, the Committee's special
  litigation counsel, represents the Committee with respect to the adversary
  proceeding against various underwriters and other parties involved in the issuance
  of Commonwealth bonds [Adv. Proc. No. 19-280].  Paul Hastings has no

---

[23]   Among other things, the Presumptive Standards Order provides that "[f]or attendance at hearings in which a
professional anticipates a speaking role, fees and expenses incurred for attendance by timekeepers other than
those with meaningful speaking roles (plus one additional timekeeper per speaker) are not compensable."

involvement in this adversary proceeding.  Moreover, pursuant to the Final Stay Order, the underwriter litigation is stayed pending the Court's decision regarding confirmation of the Amended Plan.

- <u>Garden-Variety Avoidance Actions</u>:  CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions [Adv. Proc. Nos. 19-041 to 19-279, and Adv. Proc. Nos. 19-347 to 19-354].  Paul Hastings' involvement in these avoidance actions is limited to reviewing and commenting on draft forms of pleadings or "case management" pleadings, and providing high-level oversight and direction with respect to these adversary proceedings.[24]

- <u>Other Stayed Co-Plaintiff Adversary Proceedings</u>: Pursuant to the Final Stay Order, the following co-plaintiff adversary proceedings are stayed pending the Court's decision regarding confirmation of the Amended Plan:

  - Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288]; and

  - Seven adversary proceedings challenging liens asserted by certain holders of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc. No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc. No. 19-296, and Adv. Proc. No. 19-297].

  - Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

- <u>ERS-Related Co-Plaintiff Adversary Proceedings</u>: On October 24, 2019, the Court approved a scheduling order regarding discovery and summary judgment briefing on the lien scope issues and *ultra vires* issues with respect to the ERS bonds.  Accordingly, (a) the lien scope litigation, *i.e.*, Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367 and (b) count I of the complaints seeking to recover fraudulent transfers made on account of ERS bonds that were not validly issued, *i.e.*, Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361, were unstayed.

---

[24]   We also note that, on July 12, 2019, the Court approved certain procedures establishing a framework for streamlined execution of settlement agreements and procedures and guidelines for resolving the avoidance actions through a voluntary mediation process.

    o  Proskauer Rose LLP, counsel for the Oversight Board, has primary responsibility for the lien scope adversary proceedings.  Accordingly, Paul Hastings is not expending significant time on these adversary proceedings.[25]

    o  Moreover, GJB, the Committee's special litigation counsel, represents the Committee with respect to count I of the recovery actions.  Thus, GJB is handling the *ultra vires* issues as they relate to count I of the recovery actions.

- Currently Stayed HTA Revenue Bond Co-Plaintiff Adversary Proceeding: Pursuant to the Court's *Final Case Management Order for Revenue Bonds* [Docket No. 12186], Adv. Proc. No. 20-007 is currently stayed.

95.    The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2 hereto, respectively.  As shown on Exhibit D-1, actual hours incurred on the above matters were well below budget.

## ACTUAL AND NECESSARY DISBURSEMENTS

96.    As set forth in Exhibit D-2 hereto, Paul Hastings disbursed $139,072.95 as expenses incurred in providing professional services during the Application Period.  This amount includes $21,956.78 in expenses payable to Trustpoint International, LLC, which provided e-discovery services, including maintaining a database of discovery documents that were critical to Paul Hastings' discovery tasks in connection with the litigation of the PREPA RSA Motion.

97.    Paul Hastings also disbursed additional amounts in connection with other minor expenses such as the translation of documents and the use of CourtSolutions.

98.    Further, because Paul Hastings believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes,

---

[25]   To be clear, Paul Hastings is fully involved in the discovery and briefing as it relates to the Committee's ERS Claim Objection, which objection was not brought jointly with any other party.  Given that the *ultra vires* issues and the lien scope issues are being litigated in tandem, Paul Hastings is coordinating its litigation efforts with the other objectors (including the Retiree Committee) in the interest of minimizing duplication of efforts.

Paul Hastings encourages computerized legal research even though it is not a profit center for Paul Hastings.

99.     The time constraints imposed by the circumstances of the matters handled by Paul Hastings during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee.  These extraordinary services were essential to meet deadlines, timely respond to inquiries on a daily basis, and satisfy the Committee's needs and demands.  Attorneys and other Paul Hastings employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules and firm policy.  Paul Hastings' regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

100.    Further, Paul Hastings believes the rates for charges incurred are the market rates that the majority of law firms charge clients for such services.  In addition, Paul Hastings believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

## REQUESTED COMPENSATION SHOULD BE ALLOWED

101.    Section 316 of PROMESA provides for the compensation of professionals. Specifically, section 316 provides that a court may award a professional employed by a committee under section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  PROMESA

§ 316(a).  Section 316 also sets forth the criteria for the award of such compensation and

reimbursement:

> (a)     In determining the amount of reasonable compensation to be awarded
> to a professional person, the court shall consider the nature, the extent,
> and the value of such services, taking into account all relevant factors,
> including:
>
> > (i)      the time spent on such services;
> >
> > (ii)     the rates charged for such services;
> >
> > (iii)    whether the services were necessary to the administration of, or
> > beneficial at the time at which the service was rendered toward
> > the completion of, a case under this chapter;
> >
> > (iv)     whether the services were performed within a reasonable
> > amount of time commensurate with the complexity, importance,
> > and nature of the problem, issue, or task addressed;
> >
> > (v)      with respect to a professional person, whether the person is
> > board certified or otherwise has demonstrated skill and
> > experience in the restructuring field; and
> >
> > (vi)     whether the compensation is reasonable based on the customary
> > compensation charged by comparably skilled practitioners in
> > cases other than cases under this title or title 11, United States
> > Code.

102.    PROMESA § 316(c).  Further, section 317 of PROMESA provides that "a

committee . . . may apply to the court not more than once every 120 days . . . for such

compensation for services rendered . . . ."

103.    In the instant case, Paul Hastings respectfully submits that the services for which

it seeks compensation in this Application were, at the time rendered, believed to be necessary for

and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to

protect, preserve, and maximize value for unsecured creditors during the pendency of the

Title III Cases.  The services rendered to the Committee were performed in an economic,

effective, and efficient manner commensurate with the complexity and importance of the issues

involved.  The results obtained to date have benefited not only the Committee but also the

Debtors, their stakeholders, and other interested parties.  Accordingly, the compensation

requested herein is reasonable in light of the nature, extent, and value of such services to the

Committee, the Debtors, and all parties in interest.

104.    The work conducted was carefully assigned to appropriate professionals or

paraprofessionals according to the experience and level of expertise required for each particular

task.  Whenever possible, Paul Hastings sought to minimize the costs of Paul Hastings' services

to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more

routine aspects of the assignments.  A small group of the same Paul Hastings attorneys was

utilized for the vast majority of the work in order to minimize the costs of intra-Paul Hastings

communication and education about the Title III Cases.  As demonstrated by this Application,

Paul Hastings spent its time economically and without unnecessary duplication.  Accordingly,

approval of the compensation sought herein is warranted.

## **NOTICE**

105.    In accordance with the Interim Compensation Order, Paul Hastings will provide

notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and

O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial

Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the

Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the

Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián,

C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson;

and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC.

In addition, the notice of hearing with respect to this Application will be served on all parties that

have filed a notice of appearance in the Title III Cases.

[*Remainder of page intentionally left blank.*]

## <u>CONCLUSION</u>

WHEREFORE, Paul Hastings respectfully requests entry of an order, substantially in the

form attached hereto as <u>Schedule 3</u>, (i) allowing interim compensation for professional services

rendered during the Application Period in the amount of $4,788,916.50, representing 100% of

the fees billed during the Application Period, and reimbursement of $139,072.95, representing

100% of the actual and necessary expenses incurred during the Application Period,

(ii) authorizing and directing the Debtors' payment of the difference between (a) the sum of 80%

of the fees allowed (after taking into account any credits) and 100% of the expenses allowed and

(b) the amounts previously paid by the Debtors pursuant to the Interim Compensation Order, (iii)

allowing such compensation and payment for professional services rendered and reimbursement

of actual and necessary expenses incurred be without prejudice to Paul Hastings' right to seek

such further compensation and/or payment for the full value of services performed and expenses

incurred, and (iv) granting Paul Hastings such other and further relief as is just.

Dated:  July 15, 2020

_/s/ Luc A. Despins_

PAUL HASTINGS LLP
Luc A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------- x
                                               :
In re:                                         :
                                               :
THE FINANCIAL OVERSIGHT AND                    :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,              :   Title III
                                               :
       as representative of                    :   Case No. 17-BK-3283 (LTS)
                                               :
THE COMMONWEALTH OF PUERTO RICO, et al.,       :   (Jointly Administered)
                                               :
       Debtors.¹                               :
------------------------------------------------------------------------- x
```

## DECLARATION OF LUC A. DESPINS IN SUPPORT OF NINTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), I, Luc A. Despins, declare that the following is true to the best of my knowledge, information, and belief:

1.      I am an attorney admitted and in good standing to practice in the State of New York.  I am a partner with the law firm of Paul Hastings LLP ("Paul Hastings"), located at, among other offices worldwide, 200 Park Avenue, New York, New York 10166, and am duly authorized to make this Declaration on behalf of Paul Hastings.  I make this Declaration in

---

[1]     The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

support of the *Ninth Interim Application of Paul Hastings LLP, Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for the Period from February 1, 2020 through May 31, 2020* (the "Application").[2]

2.      The facts set forth in this Declaration are based upon my personal knowledge, discussions with other Paul Hastings attorneys, and the firm's client/matter records that were reviewed by me or other Paul Hastings attorneys acting under my supervision and direction.

3.      I hereby certify that I have read the Application and, to the best of my knowledge, information, and belief, formed after reasonable inquiry, (a) the compensation and reimbursement of expenses sought in the Application conform with the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and the Local Rules, and (b) the compensation and reimbursement of expenses are billed at rates no less favorable to the Debtors than those customarily employed by Paul Hastings generally.

4.      Paul Hastings provides the following response to the request for information set forth in the U.S. Trustee Guidelines:

| | |
|---|---|
| Question: | Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees, or terms for services pertaining to this engagement that were provided during the Application Period? |
| Response: | Yes.  As a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period Paul Hastings agreed to the following voluntary fee reductions and expense write-offs: |
| | For services rendered during the Application Period, Paul Hastings reduced the rates charged for the following attorneys: |

---

[2]     Capitalized terms used but not defined herein have the meanings set forth in the Application.

| Attorney | Standard Rate (after 20% end-of-case reduction) | Reduced Rate (after 20% end-of-case reduction) |
|---|---|---|
| Luc A. Despins | $1,280.00 | $1,200.00 |
| John Hilson | $1,240.00 | $1,120.00 |
| Pedro Jimenez | $1,120.00 | $1,088.00 |
| Nicholas Bassett | $1,040.00 | $1,028.00 |

In addition, Paul Hastings waived expenses totaling $1,126.89, as follows:

(i)      We waived all charges with respect to late-work, in-office meals (even though the Fee Examiner guidelines permit in-office meal charges of up to $20.00 per meal). At a $20.00 cap per meal, this translates into a total write-off of $219.00;

(ii)      We capped car service charges at $100.00 resulting in a write-off of $206.39 and

(iii)      To comply with Local Rule 2016-1(b)(1), we reduced color photocopy charges by 50% from 50 cents per page to 25 cents per page (even though the Fee Examiner's guidelines permit color photocopy charges of 50 cents per page), resulting in a write-off of $701.50.

The aggregate amount of the foregoing reductions/write-offs is $35,930.39.

Question:      If the fees sought in this application as compared to the fees budgeted for the Application Period are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:      Not applicable.

Question:      Have any of the professionals included in this application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:      No.

Question:      Does the application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

<u>Response</u>:      The Application includes approximately 36.5 hours and associated fees of approximately $47,450 related to preparing, reviewing, and revising Paul Hastings' fee statements (which translates into an average of less than 9.2 hours for each of the four monthly fee statements prepared during the Application Period).

<u>Question</u>:      Does this application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

<u>Response</u>:      No.

<u>Question</u>:      If the application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation consistent with ABA Formal Ethics Opinion 11-458?

<u>Response</u>:      As is customary, Paul Hastings adjusts its hourly rates periodically based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.  Effective February 1, 2018, July 1, 2018, January 1, 2019, and February 1, 2020, in each case with the Committee's approval, Paul Hastings adjusted its hourly rates in accordance with the Retention Order, the Retention Application, and the *Declaration of Mark Richard* in support of the Retention Application.  The Retention Order provides that Paul Hastings will charge its regular hourly rates in effect from time to time, as such rates may be increased periodically, annually or otherwise.  As detailed in the *Declaration of Mark Richard* [Docket No. 610-3], the Committee was advised of the foregoing.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable

inquiry, the foregoing is true and correct.

Executed this 15th day of July 2020

                                  */s/  Luc A. Despins*           
                                    Luc A. Despins