**Hearing Date**: August 4, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: October 28, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---

```
------------------------------------------------------------------- x
In re:                                              :
                                                    :
THE FINANCIAL OVERSIGHT AND                         : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                   : Title III
                                                    :
As representative of                                : Case No. 17-BK-3283 (LTS)
                                                    :
THE COMMONWEALTH OF PUERTO RICO, et al.,            : (Jointly Administered)
                                                    :
Debtors.¹                                           :
------------------------------------------------------------------- x
```

## NINTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES <u>FOR THE PERIOD FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020</u>

### SUMMARY COVER SHEET

Name of Applicant: <u>Casillas, Santiago & Torres, LLC</u>

Authorized to Provide Professional Services to: <u>Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")</u>

Date of retention: <u>July 20, 2017</u>

Period for which compensation and reimbursement is sought: <u>February 1, 2020 through and including May 31, 2020 (the "Application Period")</u>

Amount of interim compensation sought as actual, reasonable, and necessary: <u>$401,341.50</u>

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: <u>$6,163.75</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Are your fee or expense totals different from the sum of previously served monthly statements?
_ Yes X No

Blended rate in this application for all attorneys: $241.27/hour

Blended rate in this application for all timekeepers: $238.17/hour

This is an ***interim*** application.

The total time expended for fee application preparation for the Interim Fee Period is approximately 30.20 hours, and the corresponding compensation requested is approximately $5,866.50.

| MONTHLY FEE REQUESTS TO DATE | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Date Submitted** | **Monthly Period Covered** | **Fees** | **Requested Fees (90%)** | **Requested Expenses (100%)** | **Fees Paid** | **Expenses Paid** | **10% Fee Holdback** |
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |
| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |

|  |  | Total | $294,120.50 | $264,708.45 | $12,052.09 | $294,120.50 | $12,052.09 | $0.00 |
|---|---|---|---|---|---|---|---|---|
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | | | |
| 8/27/2018 | 06/01/2018 - 06/30/2018 | | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
|  | **Total** | | $250,762.00 | $225,685.80 | $12,468.62 | $250,647.00 | $12,468.62 | $0.00 |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 01/01/2019 - 01/31/2019 | | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
|  | **Total** | | $237,277.00 | $213,549.30 | $6,690.07 | $236,172.00 | $6,690.07 | $0.00 |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | | | |
| 5/15/2019 | 02/01/2019 - 02/28/2019 | | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 03/01/2019 - 03/31/2019 | | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |
| 7/3/2019 | 04/01/2019 - 04/30/2019 | | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |

| 7/15/2019 | 05/01/2019 - 05/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |
|---|---|---|---|---|---|---|---|
| **Total** | | **$498,096.50** | **$448,286.85** | **$16,319.32** | **$495,172.50** | **$16,319.32** | **$0.00** |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | | |
| 8/22/2019 | 06/01/2019 - 06/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $184,745.00 | $4,880.90 | $0.00 |
| 9/27/2019 | 07/01/2019 - 07/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $174,819.50 | $4,727.49 | $0.00 |
| 11/5/2019 | 08/01/2019 - 08/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $142,114.00 | $892.94 | $0.00 |
| 11/14/2019 | 09/01/2019 - 09/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $167,571.50 | $2,428.26 | $0.00 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$669,250.00** | **$12,929.59** | **$0.00** |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | | |
| 12/20/2019 | 10/01/2019 - 10/31/2019 | $190,159.00 | $171,143.10 | $6,048.82 | $171,143.10 | $6,048.82 | $19,015.90 |
| 1/10/2020 | 11/01/2019 - 11/30/2019 | $137,688.50 | $123,919.65 | $4,921.19 | $123,919.65 | $4,921.19 | $13,768.85 |
| 2/28/2020 | 12/01/2019 - 12/31/2019 | $108,319.50 | $97,487.55 | $269.24 | $97,487.55 | $269.24 | $10,831.95 |
| 3/12/2020 | 01/01/2020 - 01/31/2020 | $123,391.00 | $111,051.90 | $1,760.40 | $111,051.90 | $1,760.40 | $12,339.10 |
| **Total** | | **$559,558.00** | **$503,602.20** | **$12,999.65** | **$503,602.20** | **$12,999.65** | **$55,955.80** |
| **Ninth Interim Fee Period (February 1, 2020 through May 31, 2020)** | | | | | | | |
| 4/23/2020 | 02/01/2020 - 02/29/2020 | $135,274.50 | $121,747.05 | $715.53 | $119,920.84 | $715.53 | $13,527.45 |

| Date | Period | Requested | Allowed A | Expense | Allowed B | Expense B | Holdback |
|---|---|---|---|---|---|---|---|
| 5/14/2020 | 03/01/2020 - 03/31/2020 | $116,499.00 | $104,849.10 | $4,599.42 | $103,276.36 | $4,599.42 | $11,649.90 |
| 6/4/2020 | 04/01/2020 - 04/30/2020 | $71,601.50 | $64,441.35 | $773.90 | $0.00 | $0.00 | $7,160.15 |
| 7/9/2020 | 05/01/2020 - 05/31/2020 | $77,966.50 | $70,169.85 | $74.90 | $0.00 | $0.00 | $7,796.65 |
| **Total** | | **$401,341.50** | **$361,207.35** | **$6,163.75** | **$223,197.20** | **$5,314.95** | **$40,134.15** |

**PRIOR INTERIM FEE APPLICATIONS**

| Date [Docket No.] | Interim Fee Period ("IFP") Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |
| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |

| 11/15/2019 [Docket No. 9220] | 06/01/2019 - 09/30/2019 | $669,949.50 | $12,929.59 | $669,250.00 | $12,929.59 |
|---|---|---|---|---|---|
| 03/16/2020 [Docket No. 12397] | 10/01/2019 - 01/31/2020 | $559,558.00 | $12,999.65 | Allowed: TBD | Allowed: TBD |
| **Total fees and expenses approved by interim orders to date:** | | | | **$2,563,382.00** | **$87,940.44** |

Number of professionals with time included in this application: <u>14</u>

Number of professionals billing fewer than 15 hours to the case in this application: <u>3</u>

If applicable, number of professionals in this application not included in a staffing plan approved by the client: <u>N/A</u>

If applicable, difference between fees budgeted and compensation sought for this period: <u>N/A</u>

Are any timekeeper's hourly rates higher than those charged and approved upon retention: <u>No</u>

**Hearing Date**: August 4, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: October 28, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

Debtors.[1]

------------------------------------------------------------------------ x

: PROMESA
: Title III
:
: Case No. 17-BK-3283 (LTS)
:
: (Jointly Administered)
:
:

## NINTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM FEBRUARY 1, 2020 THROUGH MAY 31, 2020

## TABLE OF CONTENTS

Preliminary Statement.................................................................................4

Background ...............................................................................................15

Compensation and Reimbursement Request ............................................15

Summary of Services ................................................................................18

      General (Matter ID: 396-00002).........................................................19
      COFINA (Matter ID: 396-00003)........................................................23
      PREPA (Matter ID: 396-00006) ..........................................................24
      HTA (Matter ID: 396-00007) ..............................................................27
      ERS (Matter ID: 396-00008) ...............................................................28
      Fee Application (Matter ID: 396-00015)..............................................30
      Commonwealth Claims Review (Matter ID: 396-00017) ....................30

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Avoidance Actions (Matter ID: 396-00018)..........................................................33

Attendance at Hearings..........................................................................................36

Report on Matters Jointly Pursued by Oversight Board and Committee.....................37

Actual and Necessary Disbursements........................................................................39

Requested Compensation Should be Allowed............................................................40

Notice..................................................................................................................42

Conclusion............................................................................................................42

## <u>SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE</u>

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

> C-1.   Budgets

> C-2.   Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

> D-1.   Summary of Compensation Requested by Project Category as Compared to Budget

> Further Breakdown of Compensation Requested by Project Category and by Matter

> D-2.   Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

**To the Honorable United States District Judge Laura Taylor Swain:**

Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its ninth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST for the period from February 1, 2020 through and including May 31, 2020 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application Period, CST continued to assist Paul Hastings in handling numerous matters that were of critical importance to the interests of the Debtors and their creditors, including with respect to matters related to the Amended Commonwealth Plan of Adjustment filed by the Financial Oversight and Management Board (the "Oversight Board") on February 28, 2020 (the "Amended Plan") and the related Disclosure Statement (the "Disclosure Statement"). While the first half of the Application Period was marked by intense activity, the scope of work decreased significantly toward the onset of the COVID-19 health crisis and the adjournment of the hearing on the Disclosure Statement and related deadlines (the "COVID-19 Adjournment"). Furthermore, litigation related to the PREPA restructuring support agreement (the "PREPA RSA") and the

---

[2] References to PROMESA are references to 48 U.S.C. §§2101 *et. seq.*

motion to approve same (the "PREPA RSA Motion") was likewise put on hold in the aftermath of the COVID-19 crisis. As such, during the second half of the Application Period, the focus shifted to litigation-related matters that continued to move forward during that time, including the Committee's challenges to $3 billion of ERS bondholder claims (the "ERS Claim Objections") and the litigation related to the claims of certain holders of revenue bonds issued by the Highways and Transportation Authority ("HTA") and certain other instrumentalities (the "Revenue Bonds") and holders and insurers of such bonds (the "Revenue Bondholders").

2.     During the Application Period, CST also collaborated with and assisted Paul Hastings with the preparation of the Committee's response to the Mediation Team's report with respect to the sequencing of confirmation-related issues, filed on February 20, 2020 (the "Mediation Team Final Report"). CST spent a significant amount of time assisting Paul Hastings in analyzing the Amended Plan and the plan support agreement entered into between the Oversight Board and certain supporting bondholders (the "Bondholder PSA"), as well as assisting Paul Hastings with preparing and executing the Committee's strategy in response thereto. This task was of utmost importance given that the Amended Plan contemplates only miniscule recoveries to unsecured creditors while (a) richly rewarding holders of bonds issued or guaranteed by the Commonwealth ("GO Bonds") and holders of such bonds (the "GO Bondholders") and (b) releasing or abandoning the Committee's challenges to the validity and purported priority of GO Bondholder claims (the "GO Bond Claim Objections"). CST also collaborated with Paul Hastings in connection with the Committee's motion under Bankruptcy Rule 3013 seeking to classify general unsecured claims against the Commonwealth in the same class as retiree claims (the "Rule 3013 Motion"). While the Court denied the motion without prejudice, the Court ruled that the

Committee's claim classification issues will be resolved at the disclosure statement stage, prior to any solicitation of a Commonwealth plan of adjustment.

3.      During the Application Period and in addition to its plan-related work, CST also represented the Committee and assisted Paul Hastings in connection with the relief from stay motions filed by certain Revenue Bondholders (the "Revenue Bond Stay Relief Motions") and adversary proceedings challenging Revenue Bondholder Claims (the "Revenue Bond Adversary Proceedings") and devoted time to the ERS Claim Objections (including assisting Paul Hastings with related research and discovery matters), which litigation continued to move forward during the Application Period. In both the Revenue Bonds-related litigation and ERS Claim Objection litigation, the Committee sought to minimize fees, to the greatest extent practicable, by filing limited joinders to other parties' pleadings whenever possible (as opposed to drafting entire stand-alone motions, objections, or replies).

4.      Similarly, CST provided assistance to Paul Hastings during the Application Period and represented the Committee with respect to PREPA's Title III case – albeit at a lower rate of activity (compared to prior fee applications) in light of the continuing adjournment of the PREPA RSA Motion. Among others, CST collaborated with Paul Hastings in continuing to analyze and research issues of local law and take part in discovery related to the PREPA RSA Motion and continued to analyze PREPA-related contracts and administrative claims to ensure the interests of unsecured creditors were protected.

5.      CST also collaborated with Paul Hastings in connection with the Committee's motion seeking additional Bankruptcy Rule 2019 disclosures (the "Rule 2019 Motion"), which proved to be highly successful, attracting support from other parties and resulting in the Court granting the motion and requiring even greater disclosure than the Committee had requested.

6.     Also, during the Application Period, CST continued to assist Paul Hastings and advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

a. reviewing the Oversight Board's proposed orders for alternative dispute resolution ("ADR") procedures and administrative claims reconciliation ("ACR") procedures;

b. continuing to analyze the nature and extent of the unsecured claims pool, including conducting exhaustive research on matters related to local law and reviewing related pleadings;

c. assisting Paul Hastings in preparing and submitting comments to the Puerto Rico Legislature regarding proposed legislation dealing with the treatment of unsecured creditor claims;

d. analyzing creditor requests for relief from stay and certain Oversight Board settlements thereof, as well as supporting certain relief from stay requests, where appropriate, in the interests of unsecured creditors;

e. attending Committee meetings and communicating regularly with Committee members regarding ongoing matters in the Title III cases;

f. monitoring hearings, pleadings filed, and orders entered in the Title III cases and related adversary proceedings;

g. continuing to represent the Committee in connection with the Informal Resolution Process while attempting to resolve hundreds of garden variety avoidance actions, as stated below.

7.     Additionally, during the Application Period, CST continued to represent the Committee with respect to the "garden-variety" avoidance actions initiated against over 300 vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers made to fuel oil suppliers of PREPA and related parties.

8.      CST is counsel for the Committee and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST continued to work closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, during the Application Period in the gathering of information and interfacing with hundreds of vendors and their counsel and analyzing select documents and data submitted by vendors and counsel, while simultaneously responding to related communications and requests from vendors and their counsel and pursuing and conducting settlement negotiations in connection with nearly twenty 90-day preference claims. Additionally, CST has collaborated and worked closely with Brown Rudnick, counsel for the Special Claims Committee, with analysis of local law matters pertaining to the Avoidance Actions, and review of omnibus motions related to the Informal Resolution Process, as requested. Paul Hastings and Zolfo Cooper continued to provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process.

9.      CST has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by CST was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico

law to local counsel. In addition, a small core group of CST attorneys was utilized for most of the work in these Title III cases to minimize the costs of intra-CST communication and education about the cases.

10.     Notably, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings. Likewise, generally, CST professionals do not travel for Court appearances outside of PR only though the remote video-conference service in San Juan.

11.     In addition, as further detailed below, CST along with Paul Hastings has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee. For example, the co-plaintiffs have sought, and obtained, temporary stays of numerous of these adversary proceedings, while the Committee is represented in the garden-variety avoidance actions by CST, and in certain other litigation by special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB").

12.     CST respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these Title III cases, CST's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, CST respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

13. This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, CST requests a waiver for cause shown of any requirements not met by this Application.[3]

14. In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of CST's timekeepers included in this Application.

- Exhibit C-1 contains the budgets for CST's services during the application period

- Exhibit C-2 contains the staffing plans for CST's services during the application period

- Exhibit D-1 contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- Exhibit D-2 contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST's monthly statements.

- Exhibit E contains a breakdown of compensation and expenses requested by Debtor.

- Exhibit F contains a list of the professionals providing services during the application period by matter.

- Exhibit G includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

---

[3] The Committee and CST reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Schedule 1</u> includes the proposed order approving this application.

## BACKGROUND

15.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "<u>Commonwealth Title III Case</u>"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS Title III Case</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA Title III Case</u>"), and the Puerto Rico Electric Power Authority ("<u>PREPA Title III Case</u>") (and together with the Commonwealth Title III Case, the "<u>Title III Cases</u>").[4] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

15.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "<u>U.S. Trustee</u>") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On July 21, 2017, the Committee selected CST as local counsel to the Committee.

16.     On August 4, 2017, the Committee filed an application to retain and employ CST, effective July 21, 2017 [Docket No. 884] (the "<u>Retention Application</u>"). By order of this Court entered October 6, 2017 [Docket No. 1414] (the "<u>Retention Order</u>"), incorporated herein by this reference, CST's retention as Local Counsel to the Committee was approved effective as of July 21, 2017.

---

[4] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

17.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Interim Compensation Order").[5]

18.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. CST's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

19.     The Retention Order authorized CST to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA Section 301(a), the fees and expenses of CST under this Order  shall be  an administrative  expense." In addition, as provided in the Retention  Order,  the  Oversight Board  has  consented  to  the  Debtors'  payment  of  CST allowed fees and expenses.

20.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing A Fee Examiner and Related Relief* (the "Fee Examiner Order") [Docket No. 1416]. The Court  appointed  Brady Williamson as the Fee Examiner in the Title III Cases.

21.     On December 15, 2017, CST filed its first interim fee application with respect to the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "First Interim Fee

---

[5] The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018, the court approved the First Interim Fee Application.

22.     On March 19, 2018, CST filed its second interim fee application with respect to the period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On March 7, 2018, the court approved the Second Interim Fee Application.

23.     On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Second Interim Compensation Order").

24.     On July 16, 2018, CST filed its third interim fee application, covering the period from February 1, 2018 through May 31, 2018 [Docket No. 3562]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

25.     On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST agreed to

certain minimal adjustments in its requested fees and expenses.[6] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

26.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[7] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

27.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[8] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

28.     On November 15, 2019, CST filed its seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019 [Docket No. 9220]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Seventh Interim Fee Application. Per the Fee Examiner's request, CST agreed to

---

[6] The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.
[7] The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.
[8] The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.

certain minimal adjustments in its requested fees and expenses.[9] On March 6, 2020, the Court approved the Seventh Interim Fee Application, with the agreed-upon adjustments.

29.     On March 16, 2020, CST filed its eighth interim fee application, covering the period from October 1, 2019 through January 31, 2020 [Docket No. 12397]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eighth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period.

30.     This is CST's ninth interim fee application, covering the period from February 1, 2020 through May 31, 2020. All services for which compensation is requested were performed for or on behalf of the Committee.

## COMPENSATION AND REIMBURSEMENT REQUEST

31.     By this Application, CST seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $401,341.50; and (b) expense reimbursements in the aggregate amount of $6,163.75. These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $315,437.50 | $6,114.35 | $321,551.85 |
| PREPA Title III Case | $23,571.00 | $18.50 | $23,589.50 |
| HTA Title III Case | $7,271.00 | $0.40 | $7,271.40 |

---

[9] The agreed-upon adjustment consisted of a fee reduction in the amount of $699.50.

| | | | |
|---|---|---|---|
| ERS Title III Case | $55,062.00 | $30.50 | $55,092.50 |
| **Total** | **$401,341.50** | **$6,163.75** | **$407,505.25** |

32.     The Committee has approved the amounts requested by CST for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were well below the monthly budgets.

33.     As of today, CST has not been paid any amounts pertaining to its invoices for April and May 2020, for which it requests payment pursuant to this Fee Application.

34.     Also, to date, CST has received payments totaling $228,512.15 for services rendered during the Application Period excluding April and May 2020, which amount consists of $223,197.20 (representing 90% of the fees for services invoiced during the period of February 1, 2020 through March 31, 2020) and $5,314.95 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $175,594.15 remains unpaid.

35.     Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

36.     By this Application, CST requests payment of all outstanding fees and expenses for services rendered during the Application Period.

37.     There is no agreement or understanding between CST and any other person other than the attorneys, employees, and staff of CST, for the sharing of compensation to be received for services rendered in these cases.

38.     CST maintains computerized records, in the form of monthly statements, of the time spent by all of CST's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

39.     The fees charged by CST in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

40.     CST's rates are set at a level designed to fairly compensate CST for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST set its rates for attorneys and paraprofessionals within the firm by reference to market information and market

adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

41.    CST's professional services during the Application Period required an aggregate expenditure of 1,685.10 recorded hours by CST's attorneys and paraprofessionals, broken down as follows: Partners (962.20 hours), Members (5.10 hours), Counsels (29.70 hours), Junior Partners (69.80 hours), Senior Associates (447.50 hours), Associates (135.10 hours), and Paraprofessionals (35.70 hours). During the Application Period, CST's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

42.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed before the preparation of this Application, or CST has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

### SUMMARY OF SERVICES

43.    During the Application Period, CST assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional

services that are described below and in the monthly statements attached hereto as <u>Exhibit F</u>.[10]
For ease of reference and transparency purposes, CST created several matter numbers for its
representation of the Committee. The matter numbers are divided by Debtor and/or large tasks
the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 396-00002 | General |
| 396-00003 | COFINA |
| 396-00004 | Communications w/ Creditors/ Website (other than Committee Members) |
| 396-00005 | Plan Fiscal Analysis |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00008 | ERS |
| 396-00009 | Other Adversary Proceedings |
| 396-00010 | Mediation |
| 396-00011 | GO Bond Debt Issues |
| 396-00012 | Document Review |
| 396-00013 | GDB |
| 396-00014 | PBAPR |
| 396-00015 | Fee Application |
| 396-00016 | Analysis of Kobre & Kim's Puerto Rico Debts Reports |
| 396-00017 | Commonwealth Claims Review |
| 396-00018 | Avoidance Actions |

**I.     General (Matter ID: 396-00002)**

(a)     <u>Case Administration (Task Code: B110)</u>

   Hours:     26.60          Fees:     $5,003.00

44.     During the Application Period, CST, along with Paul Hastings, continued to advise

the Committee on general case administration. In order to efficiently track deadlines, organize

---

[10] The description of services in this Application is limited to those matters in which CST provided 5 or more hours of
service during the Application Period.

documents, and manage work streams, CST maintained a global task list and case calendar, including a tracking chart for all adversary proceedings and non-Title III litigation. To minimize duplication of services, CST developed procedures for allocating responsibilities among various CST team members.

45.     In addition, during the Application Period, CST continued to implement interim and long-term strategies to maximize recoveries for general unsecured creditors and held internal team conference calls and occasional meetings to discuss the status of the Title III Cases and to manage work streams.

46.     Furthermore, along with Paul Hastings, CST worked to execute a variety of other tasks related to case administration including, among other things, translations, requests for transcripts of court proceedings, handling of logistics prior to local meetings and/or hearings, creation of information packages for meetings and/or public dissemination, research and analysis of local law, and provide status reports of current events that affect the legal issues litigated.

(b)     Pleading Reviews (Task Code: B113)

        Hours:     232.50        Fees:   $58,865.00

47.     During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST took into account various crucial issues like the PRIFA Rum Tax, CCDA Hotel Tax and HTA Revenue Bond Lift Stay litigation, and certain discovery motions related thereto; the continued GO and PBA Bonds Claim Objection litigation; the Committee's Motion for Reclassification pursuant to Fed. R. of Bkcy. Pro. 3013; the Municipal Revenue Collection Center Act 29 litigation; and the continuing developments as to the Board's Amended Plan of Adjustment and the Disclosure Statements related thereto.

48.     CST also kept abreast on the issues on appeal before the First Circuit and Supreme Courts.

(c)     Relief from Stay/Adequate Protection Proceedings (Task Code: B140)

Hours:     8.90        Fees:   $2,361.00

49.     During the Application Period, CST assisted Paul Hastings with certain litigation for relief from the Title III's automatic stay. The most contentious of these were certain Monoline Insurers seeking relief specifically targeting PRIFA Rum Tax, CCDA Hotel Tax and HTA Revenue Bonds. This litigation included disputed discovery proceedings.

(d)     Meeting of and Communications with Creditors (Task Code: B150)

Hours:     30.00       Fees:   $8,006.00

50.     During the Application Period, CST assisted in the preparation of various documents to keep the Committee apprised of relevant developments in the Title III Cases, related adversary proceedings, mediation process, and current events – local and mainland, that have an effect on the Title III proceedings. Also, CST participated in various telephone conferences and communications with the Committee for the same purposes.

(e)     Court Hearings (Task Code: B155)

Hours:     14.20       Fees:   $3,449.00

51.     During the Application Period, CST attended as local counsel to all hearings that Paul Hastings attended. To minimize costs, only one CST attorney appeared in the hearings – either personal or telephone appearances, accompanying Paul Hastings' attorneys.

52.     In preparation for these hearings, CST reviewed relevant issues raised in the parties' pleadings and prepared materials for the hearings.

(f)     Other Contested Matters (Task Code: B190)

Hours:     94.20       Fees:   $22,194.00

53.     During the Application Period, CST aided Paul Hastings conducting research on various first-impression issues of Puerto Rico Law. Furthermore, CST assisted Paul Hastings in the analysis and drafting of the Committee's response to contesting pleadings filed in connection with a wide variety of matters in these Title III proceedings, such as: proposed plans of adjustment and their amendments, cash restriction analysis, liquidity, matters before the appellate courts of the United States, validity of contracts, lift of stays, debt prioritization and Constitutional debt limit, alternative dispute resolution and mediation procedures, claim objections and claim reclassification, and discovery objections. CST assisted Paul Hastings in the legal analysis associated to these contested issues, and our extensive research was instrumental in developing the Committee's strategy for these matters.

(g)     General Litigation (Task Code: B191)

      Hours:     287.10          Fees:   $68,183.50

54.     During the Application Period, CST aided Paul Hastings in various tasks, such as research and analysis of legal issues in connection with debt prioritization, unjust enrichment, government budget-management-contracting procedures, nonrecourse and non-impairment provisions, lien challenges, retroactive and prospective effect of remedies, and equitable estoppel. All this in addition to CST's ongoing assistance with the matters associated with the proposed plan of adjustment, claim assessment, objections and procedures, and discovery disputes. CST provides unique specialized insight into the local issues that have an effect on the litigation.

(h)     Claims Administration and Objections (Task Code: B310)

      Hours:     92.50          Fees:   $17,450.00

55.     During the Application Period, CST kept abreast of the Debtors' objections to hundreds of Proofs of Claims, and the subsequent replies of the creditors. As part of CST's efforts

assisting in the development of the Committee's strategy for this matter, CST performed tasks such as legal research and analysis related to the government's budget management, repayment procedures, and debt prioritization.

(i)    <u>Plan and Disclosure Statement (Task Code: B320)</u>

        Hours:    15.20      Fees:  $4,104.00

56.    The Oversight Board filed its First Plan of Adjustment back in September 2019, and later filed an amended plan on February 28, 2020. During the Application Period CST assisted Paul Hastings in its analysis of the amended plan and subsequent disclosures, in addition to providing a unique local perspective into the issues that affect the Committee and its possible recoveries under the proposed plan.

(j)    <u>Restructurings (Task Code: B420)</u>

        Hours:    17.00      Fees:  $4,590.00

57.    During the Application Period, the Oversight Board amended their first proposed Plan of Adjustment for the Commonwealth. During this time, CST provided specialized insight and support to Committee members and other unsecured creditors on the particulars of the proposed plan that have an effect on creditors' interests and outcome in these Title III litigations. CST's ongoing participation in meetings and outreach efforts continue to be instrumental in the development of the Committee's strategy.

## II.    COFINA (Matter ID 396-00003)

(a)    <u>Pleadings Review (Task Code: B13)</u>

        Hours:    5.20      Fees:  $1,404.00

58.    During the Application Period, CST kept abreast on the proceedings before the First Circuit related to the COFINA appeal by the cooperative bank coalition, in order to be adequately

prepared to provide services to the Committee. This in compliance with the applicable Rules of Professional Conduct

### III.    PREPA (Matter ID 396-00006)

59.    For this Fee Application Period, the litigation of PREPA's restructuring support agreement ("PREPA RSA") is still the most important matter in PREPA's Title III case. PREPA faces a strong comprehensive opposition from the Committee, beginning with arguing that the government parties failed to exercise due care while entering into the proposed agreement, followed by countering the illusory alleged benefits to Debtor and creditors, including the in-depth analysis of the illegal terms and conditions encompassed in the agreement that are not in the best interest of Debtor. The PREPA RSA is an unprecedented and highly complex transaction that raises a multitude of legal and factual issues requiring extensive research and analysis. This issue is paramount in the eventual resolution of this Title III case and for Puerto Rico.

60.    During the Application Period, as it did during the Seventh and Eighth Interim Application Period, CST continued to assist in the Committee's response strategy to the PREPA RSA Motion—in addition to its regular duties representing the Committee in connection with the PREPA Title III Case.[11] As part of its efforts, CST provided back up to Paul Hastings as it engaged in intensive legal research and analysis, discovery, and discovery-related litigation pertaining to the Committee's PREPA RSA Objection filed back in October 2019, and the ongoing adversary litigation with certain of PREPA's Fuel Line Lenders.

61.    As further explained in the PREPA RSA Objection, the Committee strongly opposes the PREPA RSA Motion because the Committee believes the settlement embodied in the RSA is an improvident transaction for PREPA and its unsecured creditors that is far too generous

---

[11] *See* Docket No. 1235 in Case No. 17-4780 (LTS).

to bondholders given the weakness of bondholders' legal entitlements. Most notably, as detailed

in the PREPA RSA Objection, the $8.5 billion in PREPA bonds were secured only by

approximately $8.8 million of collateral, as of the PREPA petition date, and, moreover, are not

entitled to any unsecured deficiency claim, given that they are non-recourse bonds. Nevertheless,

the RSA provides PREPA bondholders with consideration allowing them to eventually recover

86% of the face amount of their claims (and, under certain conditions, even greater than 90%). The

Committee also objects to the PREPA RSA Motion for a number of additional reasons, including

that:

- the various benefits alleged to flow from the RSA, such as confirmation of PREPA's plan, PREPA's transformation/privatization, and improved macroeconomic conditions for PREPA and Puerto Rico, are so speculative as to be illusory;

- the proposed settlement is not in the interests of PREPA's creditors, as it was the result of a one-sided negotiation process from which the Committee and other non-bondholder creditors were excluded, it appears to impermissibly restrict PREPA's ability to pay other, non-bondholder creditors, and no creditors or other parties in interest that are not bondholders support the proposed settlement;

- the RSA constitutes an impermissible *sub rosa* plan that dictates the contents of PREPA's Title III plan of adjustment without providing the various protections for creditors, including rights to receive certain disclosures and to vote on confirmation, that are required as part of the plan process; and

- the proposed settlement contains a number of terms and conditions that are illegal and/or not in PREPA's best interests, such as (a) the allowance of administrative expense claims of hundreds of millions of dollars of post-petition interest for the PREPA bondholders supporting the PREPA RSA, even though, they are undersecured, (b) waiver and support fees for such supporting holders in the amount of approximately $151 million, and (c) the absence of a "fiduciary out" provision that would allow the Oversight Board, AAFAF, and PREPA (collectively, the "Government Parties") to terminate the RSA if they determine it is detrimental to PREPA.

62.     CST is duty bound, as counsel to the Committee, to engage in a comprehensive and

urgent effort to litigate the PREPA RSA Motion. This approach is necessary because of the

importance of the PREPA RSA Motion and the binding effect of the RSA following an eventual

approval by the Court, as well as the complexity of the issues raised by the RSA. As part of this

litigation, it is also critical to efficiently support Paul Hastings in its discovery efforts related to the varied challenges to the PREPA RSA Motion, and file pleadings in connection with issues related to evidence, discovery, and potential implementation relevant to the PREPA RSA litigation that arose during the Application Period. Thus, during the Application Period, CST assisted Paul Hastings in its discovery efforts, and in the analysis of the various and complex local legal issues associated with the potential implementation of the proposed RSA. Notably, all this work was necessary given the volume and complexity of the matter, and such work remained urgent given constantly shifting deadlines. On November 1, 2019 the hearing was set for January 14, 2020, *see* Case No. 17-4780, Docket No. 1716; on December 17, 2019, the January 14, 2020 hearing date was vacated, *see* Case No. 17-4780, Docket No. 1834; on January 7, 2020 the hearing date was set for March 31, 2020, *see* Case No. 17-4780, Docket No. 1858; the hearing was then moved to June 17, 2020 per order entered on February 18, 2020, *see* Case No. 17-4780, Docket No. 1914; however, due to the Covid-19 emergency, the hearing was adjourned and no date has been set yet.

63. In addition to opposing the PREPA RSA directly, CST collaborated in other actions to protect the interests of PREPA's unsecured creditors and the rights of the Committee: the Committee's objection to the proof of claim filed by the PREPA bond trustee and related pleadings dealing with standing and timing issues in connection with that claim objection, as well as the appellate proceeding of the order terminating that objection; and the ongoing litigation with the Fuel Line Lenders. CST continues to support the lead taken by Paul Hastings attorneys during the general and discovery-related litigation supporting the Committee's position in these issues.

(a)    Pleadings Review (Task Code: B113)

Hours:    53.80        Fees:   $13,912.00

26

64.      During the Application Period, CST reviewed a n d  a n a l y z e d  various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct.

(b)      General Litigation (Task Code: B191)

> Hours:      9.70          Fees:   $2,257.00

65.      CST was heavily involved in the ongoing litigious discovery connected to PREPA's 9019 Motion. Particularly, CST assisted in the contentions related to the disclosure of the London Economics International Report ("LEI Report"), and, its particular expertise in local law and government groundwork, provided analysis paramount in the establishment of the Committee's strategy.

(c)      Restructurings (Task Code: B420)

> Hours:      22.60          Fees:   $5,104.00

66.      During the Application Period, CST assisted Paul Hastings in the in-depth analysis of the executed PREPA RSA, in order to advise the Committee regarding key terms of the deal and its effects on the Committee's interests. CST provided specialized insight into local governance matters that directly affect the litigation – and possible implementation, of the RSA. This analysis was instrumental in the development of the Committee's strategy for its continuing objection to the RSA.

**IV.     HTA (Matter ID: 396-00007)**

(a)      Pleadings Review (Task Code: B113)

> Hours:      10.50          Fees:   $2,606.00

67.     During the Application Period, CST continued to represent the Committee as co-plaintiff along with the Oversight Board, in the Revenue Bond Adversary Proceeding No. 20-007, challenging the claims of certain holders and/or insurers of Revenue Bonds against HTA. CST also reviewed pleadings associated with other contentions to the Debtor, in order to provide a more rounded assistance to Paul Hastings.

(b)     General Litigation (Task Code: B191)

      Hours:     9.60          Fees:   $2,508.00

68.     During the Application Period, CST was substantially involved in the legal analysis and research used for the Committee's intervention and position in the Monoline Insurers' litigation for relief from the Title III's automatic stay, specifically targeting HTA's tax revenues.

## V.     ERS (Matter ID: 396-00008)

69.     After the successful formulation of procedures to administer the ERS Claim Objection Procedures litigation, during the Application Period, CST continued assisting Paul Hastings in connection with the litigation of the Committee's Omnibus Objection to the claims asserted by certain ERS bondholders and provided support in the adversary proceedings related to the main litigation, including the retention of an expert witness. Furthermore, CST assisted Paul Hastings in the analysis and strategizing in connection with the appellate procedures that arose from the renewed attempts of appointment of a trustee engaged by certain secured creditors. Also, CST worked closely with Paul Hastings in the ongoing discovery litigation related to pension funds.

(a)     Pleadings Review (Task Code: B113)

      Hours:     32.00          Fees:   $8,571.00

70. During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee and assist Paul Hastings in its representation of the Committee. In particular, CST reviewed and analyzed numerous pleadings and Court rulings to be adequately prepared and provide a comprehensive legal analysis of the various matters litigated. This in compliance with the applicable Rules of Professional Conduct.

(b)     Other Contested Matters (Task Code: B190)

     Hours:    46.60     Fees:  $12,451.00

71. During the Fee Application, CST attorneys assisted Paul Hastings in the legal analysis and research in connection with bond issuance, the continued ERS Claim Objection litigation and related legal issues on aspects of local law, legislative history, government contracting, and debt prioritization and repayment. CST's extensive research was instrumental in developing the Committee's strategy for these matters.

(c)     General Litigation (Task Code: B191)

     Hours:    108.40     Fees:  $28,019.00

72. CST worked with Paul Hastings in the ongoing discovery of the ERS-related clawback actions and the ensued counterclaims. CST provided legal analysis of local law and case law, reviewed documents produced during discovery, provided translations, assisted in the responses to propounded discovery, and engaged in witness identification and expert discovery efforts.

(d)     Claims Administration and Objections (Task Code: B310)

     Hours:    18.90     Fees:  $5,103.00

73. During the Application Period, CST kept abreast of the Debtors' objections to hundreds of Proofs of Claims, and the subsequent replies of the creditors. As part of CST's efforts

assisting in the development of the Committee's strategy for its objection and as to the matter in general, CST performed provided legal analysis of the government parties' position on certain claims asserted, and how this position impacts the Committee's interests.

## VI.    Fee Application (Matter ID: 396-00015)

(a)    <u>Fee / Employment Applications (Task Code: B160)</u>

      Hours:     39.60      Fees:  $8,592.00

74.    Pursuant to the Fee Examiner's request, CST has established a matter to keep track of the time incurred per the Fee Examiner's requests. The time spent in the Application Period pertains to the time spent in compliance with the Fee Examiner's requests including communications with the examiner, and the time it took to prepare the Eighth Interim Application.

(b)    <u>Budgeting (Task Code: B161)</u>

      Hours:     6.70      Fees:  $1,809.00

75.    During the Application Period, CST prepared budgets and staffing plans pursuant to Fee Examiner's request and communicated with the Committee and the Examiner regarding this matter.

## VII.    Commonwealth Claims Review (Matter ID: 396-00017)

76.    During the Application Period, CST continued working closely with Paul Hastings in the review of claims filed against the Commonwealth and other Debtors by unsecured creditors. CST spent a considerable amount of time reviewing and providing deeper analysis of Proof of Claims (POCs) and the supporting evidence and documents submitted in order to gain a better understanding of the claims against the Debtors, the size and nature of the unsecured claims pool, conduct an assessment, and determine the potential exposure of the Debtor. Most of these claims entailed aspects of – for example, tax, corporate, employment, constitutional (Takings Clause),

eminent domain laws, complex wage class action lawsuits involving thousands of plaintiffs, civil rights and torts litigation in local courts and before the U.S. District Court for the District of Puerto Rico as well as in administrative agencies, which made it necessary to integrate several members from CST to conduct the necessary review of pleadings filed before administrative agencies and local courts (first instance as well as Court of Appeals and Supreme Court) and thorough analysis. Given the substantial aspects of local law and the fact that most documents reviewed were in the Spanish language, CST's participation and involvement in the review of the claims submitted against the Debtors by unsecured creditors was substantial. For the most part, this stage of the review process consisted of second and/or third-level assessment and in-depth analysis of various large claims - including claims with partial or final judgments against the Commonwealths and/or stipulations involving Debtors, which served as a valuable tool when assessing the size, liability and potential exposure of the Commonwealth and in making determinations concerning the underlying merits of a substantial amount of claims submitted by unsecured creditors. This information, in turn, was instrumental for the Committee in advocating for improvements to the Amended Plan which threatened the interests of unsecured creditors by proposing a miniscule and dismal recovery of 3.9% for general unsecured creditors while GO Bondholders would obtain recoveries of upwards of 77% of the face amount of their GO Bonds

77.    In contrast to bondholders' claims, the unsecured pool is comprised of thousands of claims that are difficult to quantify because they are often based on pending litigation, many of which involved thousands of plaintiffs and commenced more than 30 years ago, or on litigation that concluded but the amount at issue is not clearly spelled out in any particular document contained in the case file, thus requiring substantial and in-depth review and analysis of all documents contained thereto. As part of this claims review process, CST provided updates as to

some of these proceedings in order to continue the analysis of their viability against the Debtors. CST also assisted in the analysis of the complex issues related to treatment of claims, including, among others, the treatment of claims based on violations of the United States Constitution (alleged by various creditor groups), including whether such claims are subject to be discharged as part of a plan of adjustment.

78.     Specifically, as to PREPA, CST reviewed and provided more in-depth analysis of the largest claims filed by creditors against PREPA. This assessment of potential liability and exposure proved to be paramount in the Committee's strategy responding to related motions by Debtors, including PREPA.

(a)     General Litigation (Task Code: B191)

   Hours:     6.90         Fees:   $1,863.00

79.     CST conducted a comprehensive and in-depth revision of several litigation based POCs casefiles, to update the assessments of the viability of these, and drafted thorough communications and memoranda to Paul Hastings.

(b)     Claims Administration and Objections (Task Code: B310)

   Hours:     107.80        Fees:   $25,483.00

80.     During the Application Period, CST provided updated in-depth analysis of many large-sum POCs, including conducting legal research on some of the matters asserted against the Debtors. At times the detailed review of claims involving large or unspecified quantities of monies entailed securing new relevant documents, to provide an updated assessment as to the viability of such claims.

(c)     Restructurings (Task Code: B420)

   Hours:     8.20         Fees:   $2,200.00

81.     As previously mentioned, CST also, assisted in the analysis of the complex issues related to treatment of claims, including, among others, the treatment of claims based on violations of the United States Constitution (alleged by various creditor groups), including whether such claims are subject to be discharged as part of a plan adjustment.

## VIII.   Avoidance Actions (Matter ID: 396-00018)

82.     During the Application Period CST, who represents the Committee with respect to the garden variety avoidance actions and in the Informal Resolution Process, continued to be heavily involved in the review and resolution of garden-variety avoidance actions against hundreds of vendors of the Debtors, *i.e.* Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and Adv. Proc. Nos. 19-380 to 19-383. As local counsel to the Committee, CST continued to interface with the defendants in these actions and provided counsel with respect to the Information Exchange Process as part of the Informal Resolution Protocol ("IR Protocol") developed closely with the law firm of Brown Rudnick ("BR"), counsel for the Special Claims Committee of the Oversight Board, to review and resolve the garden-variety avoidance actions.

83.     During the Application Period and in light of unforeseen circumstances that unfortunately delayed the informal resolution process, such as the seismic activity in Puerto Rico in early 2020 and the difficulty in reaching and communicating with various vendors and their counsel, on March 5, 2020, the Special Claims Committee and the Committee filed a Second Omnibus Motion to extend deadlines in the Procedures Order as follows: a) for engaged defendants, co-plaintiffs sought the following relief: (i) extend response due date to August 13, 2020; (ii) extend motion to dismiss response date to October 13, 2020; and (iii) extend the reply deadline to November 13, 2020 (the "Second Extended Litigation Deadlines"); and (b) for non-engaged defendants, co-plaintiffs sought the following relief: (i) extend the motion to dismiss

response date to June 13, 2020; and (ii) extend the extended reply deadline to August 13, 2020 (the "Non-Engaged Defendant Extended Deadlines"). [Docket No. 12116]. On March 25, 2020, the Court entered an "Order Granting Omnibus Motion to Extend Deadlines in Order Granting Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, acting by and through the Members of the Special Claims Committee and the Official Committee of Unsecured Creditors to (i) Establish Litigation Case Management Procedures and (ii) Establish Procedures for Approval of Settlements." Accordingly, the Response Due Date was extended to August 13, 2020, the Motion to Dismiss Response Date was extended to October 13, 2020 and the Reply Deadline was extended to November 13, 2020. With the approval of the Second Omnibus Motion, CST's involvement and participation in the Informal Resolution Process during the Application Period continued to be substantial in spite of the pandemic, considering the amount of avoidance actions, the fact that the majority of the vendors engaged local and mainland counsel, and the fact that many of the documents are naturally in Spanish which at times required substantial involvement by local counsel.

84.    On multiple occasions during the Application Period, counsel for CST, working actively in the informal resolution process, regularly met or had teleconferences with counsel for vendors to discuss the scope of the information requested by co-plaintiffs in connection with the garden variety avoidance actions, to discuss related legal matters, to discuss the viability of modifying or tailoring the requests for information and to discuss and negotiate NDAs, among others. CST also participated in the discussions and determinations pertaining to the dismissal of various garden variety avoidance actions and worked closely with Brown Rudnick and DGC, while consulting related matters with Paul Hastings and Zolfo Cooper.

85.     Likewise, on multiple occasions during the Application Period, CST worked closely with DGC, Brown Rudnick, Paul Hastings and Zolfo Cooper in the analysis of over 20 vendor preference claims in order to explore settlements with vendors and to discuss recommendations to dismiss multiple garden variety avoidance actions.

86.     During the referenced period CST also provided support to GJB in connection with "clawback actions" – adversary proceeding against various underwriters, law firms, accounting firms, and other parties involved in the issuance of securities and bonds. CST's role included providing translations, research and analysis of local law, and provide status reports on events related to the legal issues litigated.

(a)     <u>Case Administration (Task Code: B110)</u>

     Hours:     31.40          Fees:     $6,794.50

87.     CST also spent a considerable amount of time reviewing the complaints (and responses) filed against various vendors of the PROMESA Title III debtors, as well as reviewing tolling agreements offered to vendors, while interfacing with vendors in connection with the Information Exchange Process. CST developed and implemented strategies to streamline the workflow associated with the administration of each action, including staff meetings, shared information matrix, and the creation of databases.

(b)     <u>Avoidance Action Analysis (Task Code: B180)</u>

     Hours:     230.10          Fees:     $51,361.00

88.     CST served as first-level review of the data produced by vendors. Specifically, CST reviewed Spanish-language documents – *e.g.* service contracts, to assist DGC in their assessment of the data. After DGC collected and analyzed the data provided by vendors, CST spent

considerable amount of time assessing DGC's recommendation in order to counsel Plaintiffs as to how to proceed in the IR Protocol approved by the Court.

(c)  Other Contested Matters (Task Code: B190)

      Hours:    68.70       Fees:   $14,748.00

92.      As part of CST's intermediary role between DGC and vendors, CST worked with *pro se* vendors and vendors' counsel negotiating modifications to the information requested pursuant to sampling recommendations from DGC. These modifications resulted in concentrated data that facilitated and advanced its analysis.

(d)  General Litigation (Task Code: B191)

      Hours:    7.00       Fees:   $1,610.00

93.      CST was heavily involved negotiating and working along vendor defendants drafting NDAs in a per-case basis. Additionally, as part of the Informal Resolution Process, CST interfaced with counsel for vendors in order to gather and analyze data submitted by them, as need be, and in order to be in a position to make recommendations to the Committee regarding dismissals and/or whether to pursue litigation.

*****

94.      The foregoing professional services were necessary and appropriate to the administration of the Title III Cases and were incurred upon in the best interests of the Committee, the Debtors, the creditors, and other parties in interest.

**ATTENDANCE AT HEARINGS**

95.      In accordance with the presumptions set forth in the Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST provides the following

summary regarding the attendance of CST professionals at Court hearings, as local counsel to the

Official Committee of Unsecured Creditors:

- March 4-5, 2020:  This omnibus hearing addressed, among other things, the Mediation Team's Final Report in connection with the scheduling of litigation and the disclosure statement and plan confirmation process. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- April 22, 2020:   Among other matters, the omnibus hearing addressed, the Committee's Rule 3013 Motion regarding the classification of claims. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

### REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

96.    As requested by the Fee Examiner, we set forth below the status of the various

proceedings and motions jointly commenced by the Oversight Board or its Special Claims

Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for

the joint prosecution of causes of action or claims objections.

- Omnibus Objection of Oversight Board and Committee to Certain GO Bond Claims [Docket No. 4784] (the "Omnibus Claims Objection"): Pursuant to Judge Swain's stay order dated March 10, 2020 [Docket No. 12189] (the "Final Stay Order"), the Omnibus Claims Objection is stayed pending the Court's decision regarding confirmation of the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. [Docket No. 11946] (the "Amended Plan").

- Adversary Proceeding against Underwriters, etc.: GJB, the Committee's special litigation counsel, represents the Committee with respect to the adversary proceeding against various underwriters and other parties involved in the issuance of Commonwealth bonds [Adv. Proc. No. 19-280]. CST is the Committee's local counsel and represents the Committee, along with GJB. Moreover, pursuant to the Final Stay Order, the underwriter litigation is stayed pending the Court's decision regarding confirmation of the Amended Plan.

- Garden-Variety Avoidance Actions: CST, the Committee's local counsel, represents the Committee with respect to the "garden-variety" avoidance actions initiated against vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers made to fuel oil suppliers of PREPA and related parties.

- CST is counsel for the UCC and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST has worked closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, in the gathering of information and interfacing with over 170 vendors and their counsel on a daily basis and analyzing select documents and data submitted by vendors and counsel, while simultaneously responding to related communications and requests from vendors and their counsel. Additionally, CST has collaborated and worked closely with Brown Rudnick, counsel for the Special Claims Committee, with analysis of local law matters pertaining to the Avoidance Actions, as requested. Paul Hastings and Zolfo Cooper provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process.

- <u>Currently Stayed Co-Plaintiff Adversary Proceedings</u>: Pursuant to the Final Stay Order, the following co-plaintiff adversary proceedings are stayed pending the Court's decision regarding confirmation of the Amended Plan:

  - o Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288]; and

  - o Seven adversary proceedings challenging liens asserted by certain holders of GO bonds [Adv. Proc. No. 19-291, Adv. Proc. No. 19-292, Adv. Proc. No. 19-293, Adv. Proc. No. 19-294, Adv. Proc. No. 19-295, Adv. Proc. No. 19-296, and Adv. Proc. No. 19-297].

  - o Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

  In light of the stay orders, CST is not expending any significant time on these adversary proceedings, other than minor administrative and/or procedural work.

- <u>ERS-Related Adversary Proceedings</u>: On October 24, 2019, the Court approved a scheduling order regarding discovery and summary judgment briefing on the lien scope issues and *ultra vires* issues with respect to the ERS bonds. Accordingly, (a) the lien scope litigation, *i.e.*, Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367 and (b) count I of the complaints seeking to recover fraudulent transfers made on account of ERS bonds that were not validly issued, *i.e.*, Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361, were unstayed.

- o Proskauer Rose LLP, counsel for the Oversight Board, has primary responsibility for the lien scope adversary proceedings. Accordingly, CST is not expending significant time on these adversary proceedings.

- o Moreover, GJB, the Committee's special litigation counsel, represents the Committee with respect to count I of the recovery actions. Thus, GJB is handling the *ultra vires* issues as they relate to count I of the recovery actions. CST, the Committee's local counsel, represents the Committee with respect to count I of the recovery actions and assists GJB with the ultra vires issues as they relate to count I of the recover actions given that there are issues pertaining to local law.

- Currently Stayed HTA Revenue Bond Co-Plaintiff Adversary Proceeding: Pursuant to the Court's Final Case Management Order for Revenue Bonds [Docket No. 12186], Adv. Proc. No. 20-007 is currently stayed.

97.     The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

## ACTUAL AND NECESSARY DISBURSEMENTS

98.     As described in Exhibit D hereto, CST disbursed $6,163.75 as expenses incurred in providing professional services during the Application Period.

99.     Because CST believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST encourages computerized legal research even though it is not a profit center for CST.

100.     The time constraints imposed by the circumstances of the matters handled by CST during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to daily inquiries, and satisfy the Committee's needs and demands. Attorneys and other CST employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules and firm policy. CST's regular

practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

101.    CST believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges as well as the Puerto Rico Code of Ethics.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

102.    Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a Court may award a professional employed by a committee under Section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and reimbursement for actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA also sets forth the criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (i) the time spent on such services;
>
> (ii) the rates charged for such services;
>
> (iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

> (v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
>
> (vi) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may apply to the court not more than once every 120 days… for such compensation for services rendered…"

103.    In the instant case, CST respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of the Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors and their stakeholders. Accordingly, the compensation requested herein is reasonable considering the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

104.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same CST's attorneys was utilized for the vast majority of the work in this case, to minimize the costs of intra- CST's communication and education about

the Title III Cases. As demonstrated by this Application, CST spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

105.    In accordance with the Interim Compensation Order, CST will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST respectfully requests entry of an order, substantially in the form attached hereto as <u>Schedule 1</u>, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $401,341.50 and expense reimbursements in the amount of $6,163.75; (ii) authorizing and directing the Debtors' payment of the amounts allowed and; (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to CST's right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting CST such other and further relief as is just.

Date: July 15, 2020

*/s/Juan J. Casillas-Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Luis F. Llach Zúñiga, Esq. (USDC – PR 223112)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434
Fax: (787) 523-3433
jcasillas@cstlawpr.com
lllach@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*