## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>　　　　　　Debtors | PROMESA<br><br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br><br><br>(Jointly Administered) |
| HON. WANDA VÁZQUEZ GARCED (in her official capacity), and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　　　　Defendant. | Adv. Pro. No. 20-00080-LTS |

**AMICUS BRIEF OF COOPHARMA IN SUPPORT OF PLAINTIFFS'
ADVERSARY COMPLAINT FOR DECLARATORY RELIEF
RELATED TO ACT 82 OF JULY 2019**

　　　　　　　　　　Angel A. Valencia-Aponte
　　　　　　　　　　USDC-PR 123905
　　　　　　　　　　Cancio, Nadal & Rivera, L.L.C.
　　　　　　　　　　Attorneys and Counsellors At Law
　　　　　　　　　　403 Muñoz Rivera Avenue
　　　　　　　　　　Hato Rey, Puerto Rico
　　　　　　　　　　00918-3345
　　　　　　　　　　Telephone: 787-767-9625, Ext. 1202
　　　　　　　　　　Fax 787-622-2230
　　　　　　　　　　Mobile: (787) 245-0009
　　　　　　　　　　E-mail: avalencia@aavalaw.com
　　　　　　　　　　　　　　angel.valencia@cnr.law

**Table of Contents**

|  |  | Page |
|---|---|---|
| I. | Introduction | 2 |
| II. | Coopharma's Mission | 3 |
| III. | Coopharma's Interest in the Instant Declaratory Relief Proceeding | 3 |
| IV. | The Impact of Law No. 82 on the Citizenry of Puerto Rico | 6 |
| V. | Applicable Law | 9 |
| VI. | The Oversight Board Cannot Thwart the Democratic Mandate of the American Citizens Residing in Puerto Rico to Establish Policies for their Protection | 11 |
| VII. | Conclusion | 13 |

**Table of Authorities**

|  | Page |
|---|---|
| United States v. Michigan, 116 F.D.R. 655, 660 (W.D. Michigan 1987) | 2 |
| Strasser v. Doorley, 432 F.2d 567, 569 (1st Cir. 1970) | 2 |
| Fin. Oversight & Mgmt. Bd. v. Garced (In re Fin. Oversight & Mgmt. Bd.), 2020 U.S. Dist. LEXIS 68114 (D.C.P.R. 2020) | 13 |
| Trafalgar Capital Assocs., Inc., 159 F.3d 21 (1st Cir. 1998) | 13 |
| Puerto Rico ACT 82 of July 2019, *Regulatory Act for Pharmacy Services and Benefits Administrators* | 2, 5, 6, 8, 9, 10, 12, 13 |
| Puerto Rico Law 8-2017 | 9 |
| 48 U.S.C. § 2144 | 2, 12, 13 |
| 48 USCS § 2144(a)(1) | 10 |
| 48 USCS § (a)(2)(A) | 10, 11 |
| 48 USCS § (a)(2)(B) | 10, 11 |

| | |
|---|---|
| Civil Local Rule 7, District Court Civil Local Rules | 3 |
| Federal Rule of Appellate Procedure 29 | 2 |
| Federal Rules of Bankruptcy Procedure 7012 | 3 |
| Federal Rules of Bankruptcy Procedure 8017 | 3 |
| National Conference of State Legislatures, https://www.ncsl.org/research/health/pbm-state-legislation.aspx | 3, 8 |
| Lack of Fiscal Impact and Potential Economic Benefit of Public Law No.82 of 2019, Advantage Business Consulting, Juan Lara, PhD, February 19, 2019 | 7 |
| PBM State Legislation, *National Conference of State Legislatures*, May 16, 2019, https://www.ncsl.org/research/health/pbm-state-legislation.aspx | 8 |
| Executive Order on Improving Price and Quality Transparency in American Healthcare to Put Patients First*, The White House,* June 29, 2019 | 8 |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| HON. WANDA VÁZQUEZ GARCED (in her official capacity), and THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,<br><br>Plaintiffs,<br>   v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Defendant. | Adv. Pro. No. 20-00080-LTS |

### AMICUS BRIEF OF COOPHARMA IN SUPPORT OF PLAINTIFFS' ADVERSARY COMPLAINT FOR DECLARATORY RELIEF RELATED TO ACT 82 OF JULY 2019

Now comes *Cooperativa de Farmacias Puertorriqueñas* (COOPHARMA), hereinafter Coopharma, and very respectfully submits the instant *Amicus Brief*, in support

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

of the Governor of Puerto Rico and the Commonwealth Fiscal Agency and Financial Advisory Authority's Adversary Complaint No. 20-00080, as follows:

**I.     Introduction**

There is no Federal rule or statute controlling the filing of an *amicus curie* at the district court level.  Differently, *Federal Rule of Appellate Procedure* 29 provides for such filing at the Court of Appeals level.  At the district court level, the determination to allow participation as *amicus* depends on the sole discretion of the court.  United States v. Michigan, 116 F.D.R. 655, 660 (W.D. Michigan 1987).  Thus, allowing the filing of an *amicus brief* in the district court, basically depends on whether the *amicu*s has a "*special interest that justifies* [*its*] *having a say*."  Strasser v. Doorley, 432 F.2d 567, 569 (1st Cir. 1970).  Coopharma will fully demonstrate that it has a special interest in the approval of the underlying Act 82.  Moreover, Coopharma will demonstrate a compelling public interest that will assist the Court in adequately weighing the critical issues at hand. Additionally, Coopharma's *Amicus Brief* will assist in the discussion of the law concerning the application of PROMESA's 48 U.S.C. § 2144 to the facts in the instant case. The *amicus brief* will supply an ingredient about the *impact of Act 82 on real people*, be it the patients-consumer served by community-based pharmacies throughout Puerto Rico as well as the management of those pharmacies. That information should be valuable to the Honorable Court in order to weigh the Plaintiffs' request for declaratory relief in contrast with the unreasonableness of the Oversight Board's position. Strasser, *Id*. ("[B]*y the nature of things an amicus is not normally impartial"*).  Accordingly, Coopharma respectfully prays and requests this Honorable Court to allow it to file the following *Amicus Brief*.

Coopharma also bases its request to file an *amicus brief* in the proceeding at hand on *Civil Local Rule* 7, *District Court Civil Local Rules* and *Federal Rules of Bankruptcy Procedure* 7012 and 8017.

## II. Coopharma's Mission

*Cooperativa de Farmacias Puertorriqueñas* (COOPHARMA) was organized as a non-profit entity and commercial consumer cooperative on May 24, 2002, under the then applicable *General Cooperative Associations Act*. Coopharma groups hundreds of community-based pharmacies throughout the Island of Puerto Rico, including Vieques Island. Its overriding mission is to provide mutual aid and protection to its members pharmacies with regard to commercial operations and to provide mechanisms to jointly engage in business transactions to facilitate the purchase and distribution among the Puerto Rico citizenry of medicines and drugs at affordable prices. Even though Coopharma initially organized with merely 28 member pharmacies, today Coopharma has close to 600 member pharmacies throughout the Commonwealth of Puerto Rico.

## III. Coopharma's Interest in the Instant Declaratory Relief Proceeding

Coopharma was in the forefront of the support for the enactment of Law 82 of July 30, 2019. At center stage of the underlying thrust in the approval of this statute was the urgent need to regulate the *Pharmacy Benefit Managers* (PBM)[2] and *Pharmacy*

---

[2] Pharmacy benefit managers [PBM] are third-party administrators of prescription drug coverage for insurers and employers who pay a fee to the PBM for their services. These services include developing and maintaining formularies, processing claims and negotiating discounts and rebates. PBMs manage plans for millions of Americans who have health insurance from a variety of sponsors including commercial health plans, self-insured employer plans, Medicare Part D plans, state government employee plans, and Medicaid managed care organization (MCO) plans. According to the Drug Channel Institute, as of 2018, the three largest PBMs, ExpressScripts, CVS Caremark and OptumRx, controlled over 70% of the market. *National Conference of State Legislatures*, https://www.ncsl.org/research/health/pbm-state-legislation.aspx

3

*Benefit Administrators* (PBA) entities. PBMs and PBAs are intermediaries among the drug producer enterprises and the health insurance companies, including the Government when it acts as provider, as well as the citizens-consumers who, in the end, defray the costs of drugs and medicines either as heath plan participants or directly through purchase at big drug dispensing chain stores and/or community based pharmacies.

Coopharma had been advocating for a more sensible process based on the foundation of transparency to prevent abuses in the purchase and administration and sale of drugs and medicines. Armed with the weapon of the cooperative model, Coopharma has been advocating regulation of the PBMs and PBAs in order to facilitate patient access to needed medicines and therapeutic treatment to address their particular health conditions. PBMs and PBAs have been an epicenter of dubious practices that have resulted in unnecessary barriers preventing citizens from obtaining access to medicines and therapeutics in an efficient fashion and at affordable and fair prices. Complete lack of regulation, however, has breed a culture of speculation and greed where the patient-citizen is exploited and relegated to the last element of a depleted supply chain.

These unregulated entities (PBMs and PBAs) negotiate the services and medicine and drug costs between the drug producer enterprises and the medical plans and medical care providers. In doing so, these entities operate with no bounds or within no strictures. What is worst, they impose the procedures and the processes clouded in secrecy, with total lack of transparency. They control the processing of claims to the pharmacies, the process of revision of prescribed drugs, the development of forms to implement those processes, the negotiation with drug producers for the discount of prescribed medicines, the processes of mailing of medicines, the mechanism of substitution of medicines and the reimbursement to providers and patients.

These entities unilaterally establish the costs of medicines to be paid by the patient, as dispensed by pharmacies. This practice has allowed the overpricing of medicine over the actual cost to the PBA or PBM and also that pharmacies end up paying more for the acquisition of drugs than what the can really charge the patient, resulting in an economic loss to the small business pharmacy operator and a windfall for the controlling PBAs and PBMs. This disparity in pricing further results in the small business pharmacy owner being squeezed, thus scaling back its inventory and wholeness of medicines and drugs in order to stay afloat economically. Again, in this process, the PBMs and PBAs have an unfettered choice about setting pricing without transparency. Indeed, on other occasions, the negotiated price with the health insurance companies or Government health provider is higher than the actual consumer price of the drug but the pharmacy is prevented from apprising the patient-consumer who ends up paying more for the co-pay that the basic price for the drug or medicine itself.

Coopharma spearheaded approval of Law 82 by the Commonwealth of Puerto Rico's Legislature as part of its efforts to protect the small business pharmacy owners to guarantee their survival, as well as the recipient patient, who ultimately pays the price of a system torn by an unregulated landscape of pitfalls, legholds and deception. In filing this *Amicus Brief*, Coopharma is interested in supporting Law 82 because it addresses and tackles the undue concentration of power by PBAs and PBMs, shielded by lack of transparency. Law 82 is an absolutely necessary effort by the People of Puerto Rico to curtail the abuses and the exploitation of the people's need for access to health care and drugs and medicines. About 39 other mainland states have enacted similar statutes. The People of Puerto Rico must guard their democratic right to have statutes enacted by its elected legislature to protect its citizenry from abuses. Prohibiting such a statute from coming into effect, despite its approval by the Commonwealth's Legislature, on the

5

excuse of a non-existing fiscal issue, is a travesty to the People of Puerto Rico's aspiration to full democracy. Simply put, the Financial Oversight and Management Board's Opposition to this statute should not be allowed to stand.

Coopharma's interest in filing the instant *Amicus Brief* is to alert the Honorable Court of the significant damage that would be inflicted to the numerous pharmacies along the Island, that would be deprived of a very effective tool to fight systemic abuses with the weapon of transparency. Coopharma seeks to uncover the injustice and the abuses and to act in the space created by Law 82 for the benefit of the hundreds of small business pharmacies and the patient-consumer. Without the protective shield created by Law 82, the PBMs and PBAs will continue their path of excessive profits and abuses, to the detriment of the People of Puerto Rico.

### IV. The Impact of Law Number 82 on the Citizenry of Puerto Rico

Rather than a statute or regulations to impose added burdens to the free flow of commerce, Law Number 82 was enacted to incentivize and energize commerce within the health care industry by supplying the ingredient of transparency. The central idea is that a transparent process of information and costs provides for more informed and equitable transactions to benefit all the components in the health services industry, including the patient-consumer. The Act addresses the medullar deficiency of the current system, which is that the PBMs and the PBAs, as intermediaries, have the power to withhold information on costs and prices from the parties in the chain. In that vein, the mandated transparency seeks to prevent excessive charges to the government health plan and the several private insurers within Puerto Rico, realizing that these excessive charges results in higher costs to the patient-consumer and lack of access to certain medications.

An analysis of Law 82 shows that it is aimed at thwarting unfair common practices by the PBMs and PBAs that result in unsustainable high prices for medications.

Again, the genesis of the problem appears to be the different degrees of information that the multiple parties in this market process have access to. As stated *ante*, the transparency in operations seeks to promote healthy and free market practices.

Several practices by the PBMs and PBAs have been identified[3] as the most pervasive in destroying the fair practices in the operations, as: (a) gag clauses, (b) spread pricing, (c) pharmacy audits, and (d) co-pay claw backs. In the gag clause situation the PBM inserts a contractual clause in its relationship with the pharmacy that prohibits the latter from disclosing to customers-patients that a particular medication is cheaper when purchased cash than when obtained through a medical plan. The result is that the lack of transparency, impacts both, the insurers and the insured, that unknowingly are bound to higher prices than the same medication in the regular market. The gag clause usually operates hand in hand with the "co-pay claw backs" practices. In the co-pay claw back, the co-pay amount paid by the buyer of the medicine is, standing alone, higher than the cost to the pharmacy and to the PBM. Again, the pharmacy is forbidden from disclosing this information to the patient.

Leading the effort to lower drug prices by curving PBMs practices, "[o]n May 11, 2018, the Trump Administration announced a report that includes more than 25 elements such as, "Incentives for Lower List Prices and Lower out-of-pocket Costs," and restricting gag clauses for future federal action." Moreover, the "U.S. Congress Passe[d] Gag Clause Bills; Signed by Pres. Trump — [] the Patient Right to Know Drug Prices Act" to "end practices that prohibit pharmacists from telling customers that they could save money by paying cash out-of-pocket rather than using their insurance." Likewise, Congress also approved [the] "Know the Lowest Price Act of 2018" that bans gag clauses

---

[3] See *Lack of Fiscal Impact and Potential Economic Benefit of Public Law No.82 of 2019*, Advantage Business Consulting, Juan Lara, PhD, February 19, 2019.

7

in Medicare." Upon signing the legislation, President Trump touted that it would "*completely end these unjust gag clauses once and for all*." See PBM State Legislation, *National Conference of State Legislatures*, May 16, 2019, https://www.ncsl.org/research/health/pbm-state-legislation.aspx

The other noted practices are the *spread pricing* and the *pharmacy audits*. The spread pricing is the most direct result of the lack of transparency. In this practice, the PBM keeps the difference in pricing between what it charges to the health insurance provider and the price that it reimburses the pharmacy. Because the parties in the process lack the information about what is called the "price spreads", the spread becomes inflated resulting in excessive profits for the PBM at the expense of the insurers and the pharmacies. The pharmacy audits have been identified as a prevalent tool of abuse because the unwarranted audit process is weaponized to result in vicious fines and penalties.

In enacting Law 82, the Commonwealth of Puerto Rico followed the lead of the *National Coalition of State Legislatures*, enacting regulatory response to tackle the systemic abuses created by the uncontrolled PBMs and PBAs, as well as following the lead of President Donald J. Trump in lowering drug prices for the benefit of the People of the United States. See more recently "*Executive Order on Improving Price and Quality Transparency in American Healthcare to Put Patients First*" issued by President Trump on June 24, 2019 ("*Opaque pricing structures may benefit powerful special interests groups, such as large hospitals systems and insurance companies, but they generally leave patients and taxpayers worse off than would a more transparent system.*")

Due to the large percentage of the population in Puerto Rico that depends on Government Health Plan, the prevention of the described abuses will, in all likelihood, result in added savings to the Government. It will also result in avoiding overpayment by

8

the Government Health Plan and associated agency [ASES] from overpayment for medications. The assertion of regulation in this context does not block or impede commerce because the aim of the regulation is to promote transparency and the enforcement of such transparency. It is not a burden adding regulatory process but a refreshing statute to level the playing field with the aim of benefiting the patient-consumer at the end of the chain.

Additionally, the statute's structure directs that its implementation must be effectuated with current, existing personnel and resources from the Department of Health, thus ensuring no incremental cost pursuant to the Financial Oversight and Management Board for Puerto Rico directives. For example, at its Article 5, the statute directs an annual fee of $20,000 to PBAs and PBMs in order to be able to operate within Puerto Rico. These fees may help defray any fiscal impact created by the statute. Articles 3 and 21 provide that the "Regulatory Commissioner" position created to regulate the PBMs and PBAs may be designated by the Secretary of Health from among the Department's Auxiliary Secretaries or other member of the managerial staff and that any need for employees to implement the regulatory scheme shall be effectuated through the exercise of Law 8-2017 from within the existing Commonwealth's workforce. Accordingly, the fiscal impact of the implementation of Law 82 may be negligible at best. The language of the statute enables sufficient mechanisms for its implementation with low administration costs.

V. **Applicable Law**

Act 82 of 2019 was duly enacted by the Commonwealth of Puerto Rico as the "*Regulatory Act for Pharmacy Services and Benefits Administrators*." The applicable statute in the matter at hand, the *Puerto Rico Oversight, Management and Economic Stability Act*, directs that "no later than 7 business days after a territorial government duly

9

enacts any law during any fiscal year in which the Oversight Board is in operation, the Governor shall submit the law to the Oversight Board." 48 USCS § 2144(a)(1). The statute also directs that "[t]he Governor shall include with each law submitted to the Oversight Board . . . [a] *formal estimate* prepared by an *appropriate entity of the territorial government with expertise in budgets and financial management* of the impact, if any, that the law will have on expenditures and revenues" § 2144 (a)(2)(A). (Italics supplied). Moreover, the statute reads that "if the appropriate entity described in subparagraph (A) finds that the law is not significantly inconsistent with the Fiscal Plan for the fiscal year, it shall issue a certification of such finding." § 2144(a)(2)(B). The statute does not include any qualifiers with regard to the mandated "*formal estimate*".

On November 18, 2019, the Puerto Rico Fiscal Agency and Financial Advisory Authority delivered to the Oversight Board a "Certificate of New Law Pursuant to 48 U.S.C. § 2144(2)(B)" (See Doc# 13437-5, Adversary Complaint). The document tendered contains the headings of the Commonwealth's Office of Management and Budget [OGP], the Department of the Treasury and the Fiscal Agency and Financial Advisory Authority [FAFAA]. In compliance with 48 U.S.C. § 2144(a)(2)(A), the certification stated:

> *Estimate of Impact* of the Legislative Measure on Expenditures and Revenues:
>
> - Act 82 has an *approximate impact of $475,131.47* in the Department of health's budget. However, Act 82 *will be implemented using budgeted resources*. If reprogramming of budgeted resources is needed, the appropriate agency will submit to the FOMB a formal request.
>
> - *Act 82 has no impact on revenues*. (Italics supplied)

Moreover, in compliance with 48 U.S.C. § 2144(a)(2)(B), the certification stated: "Determination of the Legislative Measure's Compliance with the Fiscal Plan: Act 82 *is*

10

*not significantly inconsistent* with the 2019 Fiscal Plan for Puerto Rico." (Italics supplied).

A dispassionate reading of the Certification [Doc# 13437-5] issued by three relevant Commonwealth's agencies demonstrates that the Commonwealth fully complied with 48 U.S.C. § 2144(a)(2)(A) and (B) by submitting a: (1) **formal estimate,** (2) by an **appropriate entity of the territorial government with expertise in budgets and financial management,** and (3) by certifying that **the law is not significantly inconsistent with the Fiscal Plan for the fiscal year.** (Emphasis supplied) Accordingly, the Governor of Puerto Rico and her appropriate agencies, as mandated by the statute itself, complied with the spirit and the letter of the law of the land. It must also be noted that on October 25, 2019, the Governor issued Executive Order OE-2019-057 [Doc# 13437-3] clearly identifying and designating the Commonwealth's agencies with the "*expertise in budgets and financial management*" that would be responsible for issuing the certification of a formal estimate in compliance with 48 U.S.C. § 2144(a)(2)(A) and (B). Those agencies, i. e. the Department of the Treasury, the Office of Management and Budget and the Fiscal Agency and Financial Advisory Authority, were, in fact, the agencies that issued the **formal estimate** in the matter at hand.

### VI. The Oversight Board Cannot Thwart the Democratic Mandate of the American Citizens Residing in Puerto Rico to Establish Policies for their Protection

Despite the Commonwealth Governor's complete compliance with PROMESA's 48 U.S.C. § 2144, on November 15, 2009, the Financial Oversight and Management Board (FOMB) requested from the Governor an "explanation as to why Act 82-2019 is not preempted [by an unidentified Federal statute]." See Doc# 13437-4. To compound FOMB's unwarranted requests, on December 18, 2019 it delivered a letter to FAFAA labeling the Governor's "formal estimate" as not formal. FOMB's Executive Director N.

11

Jaresko stated that "[e]ven though a Section 204 (a) certificate for Act 82-2019 was submitted, it is our understanding the estimate is not 'formal' and not accurate because it provides only an 'approximate impact' of the law on the Department of Health's budget." [See Doc# 13437-7]. FOMB's Jaresko doubled down on her requests in a letter dated April 27, 2020 [Doc# 13437-9], demanding from the Governor and FAFAA a "federal preemption analysis" and "complete formal estimates" for Act 82 and thereafter threatened with "seek[ing] judicial relief on yet another letter date June 5, 2020. Jaresko did not provide any further basis for her extraneous requests other than pushing ahead with her unreasonable demands, clearly beyond the bounds of PROMESA's 48 U.S.C. § 2144. Left with no other alternative in the face of FOMB's Jaresko's approach, the Commonwealth Governor and FAFAA filed the instant Adversary Proceeding.

A careful review of the basic facts exposed above, along with the timing of the exchange of letters and the tenor and selection of words of the several positions, but particularly those of FOMB's Jaresko, should lead any unbiased observer to perceive bundles of arbitrary and capricious conduct. As John Adams stated, facts are stubborn things. Despite the deference that the Courts have stated that the actions of the Oversight Board is entitled to, the FOMB should never forget that the Governor represents millions of American citizens whose population size is as much as almost half of the current American states. That community of American citizens in Puerto Rico, represented by their elected Governor, even though trapped by the Territorial Clause, also deserve deference. Arbitrary and capricious conduct should never be the norm in this relationship. The Honorable Court should be able to identify arbitrariness and capriciousness, and should never "rubber stamp" such conduct. *See generally* Fin. Oversight & Mgmt. Bd. v. Garced (In re Fin. Oversight & Mgmt. Bd.), 2020 U.S. Dist. LEXIS 68114 (D.C.P.R. 2020) ("*This deference, however, is not blind or*

12

unconstrained. *See Trafalgar Capital Assocs., Inc., 159 F.3d at 26* (stating that this standard of review, while highly deferential, is not a 'rubber stamp'"). Some internal citations excluded.

### VII. Conclusion

It is evident that the Financial Oversight and Management Board for Puerto Rico, with regard to the PROMESA proceedings of Act 82 of 2019, has acted in a despotic, arbitrary and capricious fashion. The Oversight Board's managing of the issues and processes concerning Act 82 has been unreasonable and completely unsupported. The Oversight Board's unilateral finding that the "formal estimate" submitted by the Governor was not formal at all, without more, and its subsequent requirement that a legal opinion be produced on a purported preemption issue that was not identified, finds no support in PROMESA. Accordingly, the Oversight Board's insistence on those issues is simply capricious and abusive. Moreover, the lack of regard for the Commonwealth of Puerto Rico's elected officials and elected bodies is foreign to the American tradition and well beyond the bounds of reasonableness.

Accordingly, Coopharma, as *amicus*, respectfully recommends to the Honorable Court to grant Plaintiffs' request for declaratory relief pursuant to the Adversary Complaint filed at Doc# 13437 and that the Honorable Court issue Declaratory Judgment that Commonwealth of Puerto Rico's Act 82 complies with the cost estimate and fiscal plan compliance certification requirements under PROMESA, 48 USCS § 2144.

### Certificate of Service

I hereby certify that today, I electronically filed the above *Amicus Brief* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to participants identified on the Notice of Electronic Filing.

13

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 17th day of July 2020.

*s/ Angel A. Valencia-Aponte*
Angel A. Valencia-Aponte
USDC-PR 123905
Counsel for COOPHARMA

Cancio, Nadal & Rivera, L.L.C.
Attorneys and Counsellors At Law
403 Muñoz Rivera Avenue
Hato Rey, Puerto Rico
00918-3345
Telephone: 787-767-9625, Ext. 1202
Fax 787-622-2230
Mobile: (787) 245-0009
E-mail: avalencia@aavalaw.com
angel.valencia@cnr.law

14