# EXHIBIT 5

**ASSURED GUARANTY.**
Assured Guaranty Corp.
1325 Avenue of the Americas
New York, NY 10019
t. 212.974.0100
www.assuredguaranty.com

#620247

## Financial Guaranty Insurance Policy

| | | | |
|---|---|---|---|
| Issuer: | Puerto Rico Highways and Transportation Authority | Policy No. | D-2007-27 |
| Bonds: | $269,795,000 Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series N) maturing July 1, 2034 and July 1, 2036 | Premium: | $5,367,464.30 |
| Effective Date: | March 6, 2007 | Term: | The period from and including the Effective Date to and including the date on which all Insured Payments (including Avoided Payments) have been paid. |

Assured Guaranty Corp., a Maryland insurance company ("Assured Guaranty"), in consideration of the payment of the premium set forth above and subject to the terms of this financial guaranty insurance policy (the "Policy"), hereby unconditionally and irrevocably agrees to pay to The Bank of New York, as paying agent (the "Paying Agent") (as set forth in the documentation providing for the issuance of and securing the above-referenced Bonds (the "Bonds"; such documentation, the "Transaction Documentation")) for the benefit of the holders of the Bonds (the "Holders"), and in any case subject to the terms of this Policy, that portion of the principal of and interest on the Bonds that shall become Due for Payment (as hereinafter defined) but shall be unpaid by reason of Nonpayment by the Issuer (as hereinafter defined; such portion of principal and interest, hereinafter the "Insured Payments"). Insured Payments shall not include any additional amounts owing by the Issuer solely as a result of the failure by the Paying Agent to pay such amount when due and payable, including without limitation any such additional amounts as may be attributable to penalties or to interest accruing at a default rate, to amounts payable in respect of indemnification, or to any other additional amounts payable by the Paying Agent by reason of such failure. *Capitalized terms used in this Policy are used with the meanings ascribed thereto elsewhere herein.*

Assured Guaranty will make such Insured Payments to the Paying Agent on the later to occur of (i) the date applicable principal or interest becomes Due for Payment, or (ii) the Business Day next following the day on which Assured Guaranty shall have Received a completed notice of claim in the form attached hereto as Exhibit A. Payment by Assured Guaranty to the Paying Agent for the benefit of the Holders shall discharge the obligation of Assured Guaranty under this Policy to the extent of such payment. The Paying Agent will disburse the Insured Payments to the Holders in accordance with the terms of the Transaction Documentation only upon receipt by the Paying Agent, in form reasonably satisfactory to it, of (i) evidence of the Holder's right to receive such payments, and (ii) evidence, including any appropriate instruments of assignment, that all of the Holder's rights to payment of such principal or interest Due for Payment shall thereupon vest in Assured Guaranty. Upon such disbursement, Assured Guaranty shall become the Holder of the Bond, appurtenant coupon thereto, or right to payment of principal or interest thereon, and shall be fully subrogated to all of the Holder's right, title and interest thereunder, including without limitation the right to payment thereof.

This Policy is non-cancelable for any reason. The premium on this Policy is not refundable for any reason, including without limitation any payment of the Bonds prior to maturity. This Policy does not insure against loss of any prepayment premium which may be payable with respect to all or any portion of any Bond at any time, or the failure of the Paying Agent to remit amounts received hereunder to the Holder in accordance with the terms of the Transaction Documentation. No payment shall be made under this Policy in excess of the Policy Limit. No payment shall be made under this Policy with respect to a Bond if the Holder is the Issuer of such Bond.

At any time during the Term of the Policy, Assured Guaranty may appoint a fiscal agent (the "Fiscal Agent") for purposes of this Policy by written notice to the Paying Agent, specifying the name and notice address of such Fiscal Agent. From and after the date of receipt of such notice by the Paying Agent, copies of all notices and documents required to be delivered to Assured Guaranty pursuant to this Policy shall be simultaneously delivered to the Fiscal Agent and to Assured Guaranty. All payments required to be made by

Assured Guaranty under this Policy may be made directly by Assured Guaranty or by the Fiscal Agent on behalf of Assured Guaranty. The Fiscal Agent is the agent of Assured Guaranty only, and the Fiscal Agent shall in no event be liable to Paying Agent for any acts of the Fiscal Agent or any failure of Assured Guaranty to deposit, or cause to be deposited, sufficient funds to make payments due under this Policy.

### *Certain Defined Terms*

"Avoided Payment" means any amount that is paid, credited, transferred or delivered to a Holder in respect of any Insured Payment by the Paying Agent, which amount has been rescinded or recovered from or otherwise required to be returned or repaid by such Holder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with a final, nonappealable order of a court having competent jurisdiction that such payment constitutes an avoidable preference with respect to such holder.

"Business Day" means any day other than (i) a Saturday or Sunday, (ii) any day on which the offices of the Paying Agent or Assured Guaranty are closed, or (iii) any day on which banking institutions are authorized or required by law, executive order or governmental decree to be closed in New York City or in the States of Maryland or New York.

"Due for Payment" means, when referring to the principal of a Bond, the stated maturity date thereof, or the date on which such Bond shall have been duly called for mandatory sinking fund redemption, and does not refer to any earlier date on which payment is due by reason of a call for redemption (other than by mandatory sinking fund redemption), acceleration or other advancement of maturity (unless Assured Guaranty in its sole discretion elects to make any principal payment, in whole or in part, on such earlier date) and means, when referring to interest on a Bond, the stated date for payment of such interest.

"Nonpayment" in respect of a Bond means the failure of the Issuer to have provided sufficient funds to the Paying Agent for payment in full of all principal and interest Due for Payment on such Bond. It is further understood that the term "Nonpayment" in respect of a Bond includes any Avoided Payment.

"Notice" means a written notice from a Holder or the Paying Agent mailed by registered mail or personally delivered or telecopied to Assured Guaranty at 1325 Avenue of the Americas, New York, NY 10019, Telephone Number: (212) 974-0100, Facsimile Number: (212) 581-3268, Attention: Risk Management, with a copy to the General Counsel, or to such other address as shall be specified by Assured Guaranty to the Paying Agent in writing.

"Policy Limit" means $269,795,000, together with interest thereon at the rate or rates set forth in the Transaction Documentation; provided, however, that nothing set forth herein shall be construed to include in the coverage provided by this Policy interest calculated at a default rate.

"Receipt" or "Received" means actual receipt or notice of or, if notice is given by overnight or other delivery service, or by certified or registered United States mail, by a delivery receipt signed by a person authorized to accept delivery on behalf of the person to whom the notice was given.

To the fullest extent permitted by applicable law, Assured Guaranty agrees not to assert, and hereby waives, for the benefit of the Holders only, all rights and defenses to the extent that such rights and defenses may be available to Assured Guaranty to avoid payment of claims made under this Policy in accordance with its terms.

This Policy sets forth in full the undertaking of Assured Guaranty with respect to the subject matter hereof, and may not be modified, altered or affected by any other agreement or instrument, including without limitation any modification thereto or amendment thereof.

This Policy will be governed by, and shall be construed in accordance with, the laws of the State of New York (other than with respect to its conflicts of laws principles).

This Policy is not covered by the Property/Casualty Insurance Security Fund specified in Article 76 of the New York Insurance Law.

2

IN WITNESS WHEREOF, Assured Guaranty has caused this Policy to be affixed with its corporate seal and to be signed by its duly authorized officer to become effective and binding upon Assured Guaranty by virtue of such signature.



ASSURED GUARANTY CORP.

By: _____
John Trahan
Managing Director

Signature attested to by:

_____
Counsel

EASTERN AMERICA INSURANCE AGENCY, INC.
Countersignature:

_____
Licensed Resident Agent

3

EXHIBIT A

NOTICE OF CLAIM

Assured Guaranty Corp.
1325 Avenue of the Americas
New York, New York 10019
Attention: General Counsel

The undersigned, [a duly authorized officer of [PAYING AGENT] [a Holder of the Bonds] (the "Paying Agent" or the "Holder"), hereby certifies to Assured Guaranty Corp. (the "Insurer") with reference to Financial Guaranty Insurance Policy No. _____ (the "Policy"), that:

(i) The deficiency with respect to the Insured Payment Due for Payment and unpaid by reason of Nonpayment by the Issuer on [insert applicable payment date] is $[insert applicable amount] (the "Defaulted Amount").

(ii) The [Paying Agent][Holder] is making a claim under the Policy for the Defaulted Amount to be applied to the payment of the above-described Insured Payment.

(iii) The [Paying Agent][Holder] agrees that, following payment by the Insurer made with respect to the Defaulted Amount which is the subject of this Notice of Claim, it (a) will cause such amounts to be applied directly to the payment of the applicable Insured Payment; (b) will insure that such funds are not applied for any other purpose; and (c) will cause an accurate record of such payment to be maintained with respect to the appropriate Insured Payment(s), the corresponding claim on the Policy, and the proceeds of such claim.

(iv) [If the undersigned is the Paying Agent] Payment should be made by credit to the following account:

_____

_____

Upon payment of the applicable Defaulted Amount(s), the Insurer shall be subrogated to the rights of the Paying Agent and the Holder of the Bonds with respect to such payment.

Any person who knowingly and with the intention to defraud submits false information in an insurance application or submits, helps to submit or submits through third parties a fraudulent claim for the payment of a loss or other benefits, or submits more than one claim for the same damage or loss, will be guilty of a felony and, if convicted, will be sanctioned for each violation with a fine of not less than five thousand (5,000) dollars nor more than ten thousand (10,000) dollars, or prison for a fixed term of three (3) years, or both penalties. Should there be extenuating circumstances, the established fixed penalty may be increased up to a maximum of five (5) years; should there be mitigating circumstances, it may be reduced to a minimum of two (2) years.

Capitalized terms used in this Notice of Claim and not otherwise defined herein shall have the respective meanings ascribed thereto in the Policy.

This Notice of Claim may be revoked at any time by written notice of such revocation by the [Paying Agent][Holder] to the Insurer, if and only to the extent that moneys are actually received prior to any such revocation from a source other than the Insurer with respect to the Defaulted Amount set forth herein.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Notice of Claim as of the ___ day of _____ of 20___.

[PAYING AGENT /HOLDER]

By:_____
    Name:
    Title:

1



Assured Guaranty Corp.
1325 Avenue of the Americas
New York, NY 10019
212-974-0100
www.assuredguaranty.com

## Endorsement to Financial Guaranty Insurance Policy
### (Puerto Rico Governing Law)

| Issuer: | Puerto Rico Highways and Transportation Authority | Policy No. | D-2007-27 |
|---|---|---|---|
| Obligations: | $269,795,000 Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series N) maturing July 1, 2034 and July 1, 2036 | Effective Date: | March 6, 2007 |

Notwithstanding the terms and provisions contained in the Policy, it is further understood that the insurance provided by the Policy to which this endorsement is attached and of which it forms a part shall be governed by, and shall be construed in accordance with, the laws of the Commonwealth of Puerto Rico (other than with respect to its conflicts of laws principles).

Nothing herein shall be construed to waive, alter, reduce or amend coverage in any other section of the Policy. If found contrary to the Policy language the terms of this endorsement shall supersede the Policy language.

**IN WITNESS WHEREOF,** Assured Guaranty has caused this endorsement to be affixed with its corporate seal, to be signed by its duly authorized officer and to become effective and binding upon Assured Guaranty on the Effective Date listed above by virtue of such signature.

ASSURED GUARANTY CORP.

By: _____
John Trahan
Managing Director

Signature attested to by:

_____
Counsel

Countersignature:

EASTERN AMERICA INSURANCE AGENCY, INC.
_____
Licensed Resident Agent

Form E-PR (06/06)



Assured Guaranty Corp.
1325 Avenue of the Americas
New York, NY 10019
212-974-0100
www.assuredguaranty.com

## Endorsement to Financial Guaranty Insurance Policy
### (Insurance Code of Puerto Rico)

| Issuer: | Puerto Rico Highways and Transportation Authority | Policy No. | D-2007-27 |
|---|---|---|---|
| Obligations: | $269,795,000 Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series N) maturing July 1, 2034 and July 1, 2036 | Effective Date: | March 6, 2007 |

Notwithstanding the terms and provisions contained in the Policy, it is further understood that Assured Guaranty agrees to comply with Section 27.162 of the Insurance Code of Puerto Rico, and Office of the Commissioner of Insurance Ruling number N-OE-02-54-93.

Nothing herein shall be construed to waive, alter, reduce or amend coverage in any other section of the Policy. If found contrary to the Policy language, the terms of this endorsement shall supersede the Policy language.

IN WITNESS WHEREOF, Assured Guaranty has caused this endorsement to be affixed with its corporate seal, to be signed by its duly authorized officer and to become effective and binding upon Assured Guaranty on the Effective Date listed above by virtue of such signature.

ASSURED GUARANTY CORP.

By: _____
John Trahan
Managing Director

Signature attested to by:

_____
Counsel

Countersignature:
EASTERN AMERICAN INSURANCE AGENCY, INC.
_____
Licensed Resident Agent

Form E-PR (06/06)

Case:17-03283-LTS Doc#:13711-5 Filed:07/17/20 Entered:07/17/20 16:04:47 Desc:
Exhibit 5 Page 8 of 17

## AGREEMENT REGARDING BOND INSURANCE

THIS AGREEMENT REGARDING BOND INSURANCE, dated March 6, 2007, is entered into by and between the PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (the "Authority") and THE BANK OF NEW YORK, as Fiscal Agent under Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "1998 Resolution"), pursuant to which the Authority is issuing $1,502,904,943.95 aggregate principal amount of Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series N) (the "Series N Bonds").

### WITNESSETH:

WHEREAS, the Authority has determined to issue the Series N Bonds and, in connection therewith, to obtain a municipal bond insurance policy (the "Assured Guaranty Insurance Policy") to be issued by Assured Guaranty Corp. ("Assured Guaranty"), insuring the payment when due of principal of and interest on the Series N Bonds maturing July 1 of the years 2034 and 2036 (collectively, the "Assured Insured Bonds").

WHEREAS, as a condition to the issuance of the Assured Guaranty Insurance Policy, Assured Guaranty has requested that the Authority and the Fiscal Agent agree to certain provisions; and

WHEREAS, the Authority and the Fiscal Agent are willing to abide by the requirements of Assured Guaranty for so long as the Assured Guaranty Insurance Policy is in effect and Assured Guaranty is not in default thereunder, all as more specifically provided in this Agreement;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein set forth, the Authority and the Fiscal Agent hereby agree as follows:

Section 1.   Defined Terms. All terms used herein in capitalized form and not defined shall have the meanings ascribed to such terms in the 1998 Resolution or, if not defined therein, in Resolution No. 2007-08, adopted by the Authority on February 15, 2007.

Section 2.   Notices and Other Information. (a) Any notice that is required to be given to holders of the Assured Insured Bonds (the "Bondholders"), nationally recognized municipal securities information repositories or state information depositories pursuant to Rule 15c2-12(b)(5) adopted by the Securities and Exchange Commission or to the Fiscal Agent pursuant to the 1998 Resolution shall also be provided to Assured Guaranty, simultaneously with the sending of such notices.

(b)   To the extent that the Authority has entered into a continuing disclosure agreement with respect to the Assured Insured Bonds, all information furnished pursuant to such agreement shall also be provided to Assured Guaranty, simultaneously with the furnishing of such information. All notices required to be given to Assured Guaranty shall be in writing and shall be sent by registered or certified mail addressed to Assured Guaranty Corp., 1325 Avenue of the Americas, New York, New York 10019, Attention: General Counsel, with a copy to

Assured Guaranty, Attention: Risk Management Department - Public Finance Surveillance, Policy No. D-2007-27.

(c) Assured Guaranty shall have the right to receive such additional information as it may reasonably request.

(d) The Authority will permit Assured Guaranty to discuss the affairs, finances and accounts of the Authority or any information Assured Guaranty may reasonably request regarding the security for the Assured Insured Bonds with appropriate officers of the Authority, and will use best efforts to enable Assured Guaranty to have access to the facilities, books and records of the Authority on any business day upon reasonable prior notice.

(e) The Fiscal Agent shall notify Assured Guaranty of any failure of the Authority to provide notices, certificates and other information under the 1998 Resolution.

Section 3. _Defeasance_. (a) In order to defease Assured Guaranty Insured Bonds, the Authority must deliver or cause to be delivered the following items:

(i) An opinion of counsel that the defeasance will not adversely impact the exclusion from gross income for federal income tax purposes of interest on the Assured Insured Bonds or refunded bonds.

(ii) An escrow agreement and an opinion of counsel regarding the validity and enforceability of the escrow agreement.

(iii) The escrow agreement shall provide that:

a) Any substitution of securities shall require verification by an independent certified public accountant and the prior written consent of Assured Guaranty.

b) The Authority will not exercise any optional redemption of Assured Insured Bonds secured by the escrow agreement or any, other redemption other than mandatory sinking fund redemptions unless (i) the right to make any such redemption has been expressly reserved in the escrow agreement and such reservation has been disclosed in detail in the official statement for the refunding bonds, and (ii) as a condition of any such redemption there shall be provided to Assured Guaranty a verification of an independent certified public accountant as to the sufficiency of escrow receipts without reinvestment to meet the escrow requirements remaining following such redemption.

c) The Authority shall not amend the escrow agreement or enter into a forward purchase agreement or other agreement with respect to rights in the escrow without the prior written consent of Assured Guaranty.

(b) In the event that the principal and/or interest due on the Assured Insured Bonds shall be paid by Assured Guaranty pursuant to the Assured Guaranty Insurance Policy, the

- 2 -

Assured Insured Bonds shall remain outstanding for all purposes, not be defeased or otherwise satisfied and not be considered paid by the Authority, and the assignment and pledge of the trust estate and all covenants, agreements and other obligations of the Authority to the registered owners shall continue to exist and shall run to the benefit of Assured Guaranty, and Assured Guaranty shall be subrogated to the rights of such registered owners including, without limitation, any rights that such owners may have in respect of securities law violations arising from the offer and sale of the Assured Insured Bonds.

Section 4.  Payment Procedure Under the Assured Guaranty Insurance Policy.

(a) At least two (2) business days prior to each payment date on the Assured Insured Bonds, the Fiscal Agent, will determine whether there will be sufficient funds to pay all principal of and interest on the Assured Insured Bonds due on the related payment date and shall immediately notify Assured Guaranty or its designee on the same business day by telephone or electronic mail, confirmed in writing by registered or certified mail, of the amount of any deficiency. Such notice shall specify the amount of the anticipated deficiency, the Assured Insured Bonds to which such deficiency is applicable and whether such Assured Insured Bonds will be deficient as to principal or interest or both. If the deficiency is made up in whole or in part prior to or on the payment date, the Fiscal Agent shall so notify Assured Guaranty or its designee.

(b) The Fiscal Agent, shall after giving notice to Assured Guaranty as provided above, make available to Assured Guaranty and, at Assured Guaranty's direction, to any Fiscal Agent, the registration books of the Authority maintained by the Fiscal Agent and all records relating to the funds maintained under the 1998 Resolution.

(c) The Fiscal Agent shall provide Assured Guaranty and any Fiscal Agent with a list of registered owners of Assured Insured Bonds entitled to receive principal or interest payments from Assured Guaranty under the terms of the Assured Guaranty Insurance Policy, and shall make arrangements with Assured Guaranty, the Fiscal Agent or another designee of Assured Guaranty to (i) mail checks or drafts to the registered owners of Assured Insured Bonds entitled to receive full or partial interest payments from Assured Guaranty and (ii) pay principal upon Assured Insured Bonds surrendered to Assured Guaranty, the Fiscal Agent or another designee of Assured Guaranty by the registered owners of Assured Insured Bonds entitled to receive full or partial principal payments from Assured Guaranty.

(d) The Fiscal Agent, shall, at the time it provides notice to Assured Guaranty of any deficiency pursuant to paragraph (a) above, notify registered owners of Assured Insured Bonds entitled to receive the payment of principal or interest thereon from Assured Guaranty (i) as to such deficiency and its entitlement to receive principal or interest, as applicable, (ii) that Assured Guaranty will remit to them all or a part of the interest payments due on the related payment date upon proof of its entitlement thereto and delivery to Assured Guaranty or any Fiscal Agent, in form satisfactory to Assured Guaranty, of an appropriate assignment of the registered owner's right to payment, (iii) that, if they are entitled to receive partial payment of principal from Assured Guaranty, they must surrender the related Assured Insured Bonds for payment first to the Fiscal Agent, which will note on such Assured Insured Bonds the portion of the principal paid by the Fiscal Agent and second to Assured Guaranty or its designee, together

- 3 -

10322812.2

with the an appropriate assignment, in form satisfactory to Assured Guaranty, to permit ownership of such Assured Insured Bonds to be registered in the name of Assured Guaranty, which will then pay the unpaid portion of principal, and (iv) that, if they are entitled to receive full payment of principal from Assured Guaranty, they must surrender the related Assured Insured Bonds for payment to Assured Guaranty or its designee, rather than the Fiscal Agent, together with the an appropriate assignment, in form satisfactory to Assured Guaranty, to permit ownership of such Assured Insured Bonds to be registered in the name of Assured Guaranty.

(e) In addition, if the Fiscal Agent has notice that any holder of the Assured Insured Bonds has been required to disgorge payments of principal or interest on the Assured Insured Bonds previously Due for Payment pursuant to a final non-appealable order by a court of competent jurisdiction that such payment constitutes an avoidable preference to such holder within the meaning of any applicable bankruptcy laws, then the Fiscal Agent shall notify Assured Guaranty or its designee of such fact by telephone or electronic notice, confirmed in writing by registered or certified mail.

(f) The Fiscal Agent will be hereby irrevocably designated, appointed, directed and authorized to act as attorney-in-fact for holders of the Assured Insured Bonds as follows:

(i) If and to the extent there is a deficiency in amounts required to pay interest on the Assured Insured Bonds, the Fiscal Agent shall (a) execute and deliver to Assured Guaranty, in form satisfactory to Assured Guaranty, an instrument appointing Assured Guaranty as agent for such holders in any legal proceeding related to the payment of such interest and an assignment to Assured Guaranty of the claims for interest to which such deficiency relates and which are paid by Assured Guaranty, (b) receive as designee of the respective holders (and not as Fiscal Agent) in accordance with the tenor of the Assured Guaranty Insurance Policy payment from Assured Guaranty with respect to the claims for interest so assigned, and (c) disburse the same to such respective holders; and

(ii) If and to the extent of a deficiency in amounts required to pay principal of the Assured Insured Bonds, the Fiscal Agent shall (a) execute and deliver to Assured Guaranty, in form satisfactory to Assured Guaranty, an instrument appointing Assured Guaranty as agent for such holder in any legal proceeding related to the payment of such principal and an assignment to Assured Guaranty of the Assured Insured Bond surrendered to Assured Guaranty in an amount equal to the principal amount thereof as has not previously been paid or for which moneys are not held by the Fiscal Agent and available for such payment (but such assignment shall be delivered only if payment from Assured Guaranty is received), (b) receive as designee of the respective holders (and not as Fiscal Agent) in accordance with the tenor of the Assured Guaranty Insurance Policy payment therefore from Assured Guaranty, and (c) disburse the same to such holders.

(g) Payments with respect to claims for interest on and principal of Assured Insured Bonds disbursed by the Fiscal Agent from proceeds of the Assured Guaranty Insurance Policy shall not be considered to discharge the obligation of the Authority with respect to such Assured Insured Bonds, and Assured Guaranty shall become the owner of such unpaid Assured

Insured Bond and claims for the interest in accordance with the tenor of the assignment made to it under the provisions of this subsection or otherwise.

(h) Irrespective of whether any such assignment is executed and delivered, the Authority and the Fiscal Agent hereby agree for the benefit of Assured Guaranty that:

(i) they recognize that to the extent Assured Guaranty makes payments directly or indirectly (e.g., by paying through the Fiscal Agent), on account of principal of or interest on the Assured Insured Bonds, Assured Guaranty will be subrogated to the rights of such holders to receive the amount of such principal and interest from the Authority, with interest thereon as provided and solely from the sources stated in the 1998 Resolution and the Assured Insured Bonds; and

(ii) they will accordingly pay to Assured Guaranty the amount of such principal and interest, with interest thereon as provided in the 1998 Resolution and the Assured Insured Bonds, but only from the sources and in the manner provided herein for the payment of principal of and interest on the Assured Insured Bonds to holders, and will otherwise treat Assured Guaranty as the owner of such rights to the amount of such principal and interest.

(i) The Authority hereby agrees to pay or reimburse Assured Guaranty (A) for all amounts paid by Assured Guaranty under the terms of the Assured Guaranty Insurance Policy, and (B) any and all charges, fees, costs and expenses which Assured Guaranty may reasonably pay or incur, including, but not limited to, fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, in connection with (i) any accounts, established to facilitate payments under the Assured Guaranty Insurance Policy, (ii) the administration, enforcement, defense or preservation of any rights in respect of the 1998 Resolution including defending, monitoring or participating in any litigation or proceeding (including any bankruptcy proceeding in respect of the Authority or any affiliate thereof) relating to this Agreement or the 1998 Resolution, any party to this Agreement or the 1998 Resolution or the transaction contemplated by the 1998 Resolution, (iii) the foreclosure against, sale or other disposition of any collateral securing any obligations under this Agreement or the 1998 Resolution, or the pursuit of any remedies under this Agreement or the 1998 Resolution, to the extent such costs and expenses are not recovered from such foreclosure, sale or other disposition, or (iv) any amendment, waiver or other action with respect to, or related to, this Agreement or the 1998 Resolution whether or not executed or completed; costs and expenses shall include a reasonable allocation of compensation and overhead attributable to time of employees of Assured Guaranty spent in connection with the actions described in clauses (ii) - (iv) above. In addition, Assured Guaranty reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver or consent proposed in respect of this Agreement or any the 1998 Resolution. The Authority will pay interest on the amounts owed in this paragraph from the date of any payment due or paid, at the per annum rate of interest publicly announced from time to time by JP Morgan Chase Bank, National Association at its principal office in New York, New York as its prime lending rate (any change in such prime rate of interest to be effective on the date such change is announced by JPMorgan Chase Bank, National Association) plus three percent (3%) per annum (the "Reimbursement Rate"). The Reimbursement Rate shall be calculated on the basis of the actual number of days elapsed over a 360-day year. In the event

JPMorgan Chase Bank ceases to announce its prime rate publicly, the prime rate shall be the publicly announced prime rate or base lending rate of such national bank, as Assured Guaranty shall specify.

(j) In addition to any and all rights of reimbursement, subrogation and any other rights pursuant hereto or under law or in equity, the Authority agrees to pay or reimburse Assured Guaranty any and all charges, fees, costs, claims, losses, liabilities (including penalties), judgments, demands, damages, and expenses which Assured Guaranty or its officers, directors, shareholders, employees, agents and each Person, if any, who controls Assured Guaranty within the meaning of either Section 15 of the Securities Act of 1933 or Section 20 of the Securities Exchange Act of 1934 may reasonably pay or incur, including, but not limited to, fees and expenses of attorneys, accountants, consultants and auditors and reasonable costs of investigations, of any nature in connection with, in respect of or relating to the transactions contemplated by this Agreement or the 1998 Resolution by reason of:

(i) any omission or action (other than of or by Assured Guaranty) in connection with the offering, issuance, sale, remarketing or delivery of the Assured Insured Bonds;

(ii) the negligence, bad faith, willful misconduct, misfeasance, malfeasance or theft committed by any director, officer, employee or agent of the Authority in connection with any transaction arising from or relating to this Agreement or the 1998 Resolution;

(iii) the violation by the Authority of any law, rule or regulation, or any judgment, order or decree applicable to it;

(iv) the breach by the Authority of any representation, warranty or covenant under this Agreement or the 1998 Resolution or the occurrence, in respect of the Authority, under this Agreement or the 1998 Resolution of any event of default or any event which, with the giving of notice or lapse of time or both, would constitute any event of default; or

(v) any untrue statement or alleged untrue statement of a material fact contained in any official statement, if any, or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, except insofar as such claims arise out of or are based upon any untrue statement or omission in information included in an official statement, if any, and furnished by Assured Guaranty in writing expressly for use therein.

(k) In addition, Assured Guaranty shall to the extent it makes any payment of principal or interest on the Assured Insured Bonds become subrogated to the rights of the recipients of such payments in accordance with the terms of the Assured Guaranty Insurance Policy, and to evidence such subrogation (i) in the case of claims for interest, the Fiscal Agent shall note Assured Guaranty's rights as subrogee on the registration books of the Authority maintained by the Fiscal Agent, upon receipt of proof of payment of interest thereon to the registered holders of the Assured Insured Bonds, and (ii) in the case of claims for principal, the

Fiscal Agent, if any, shall not Assured Guaranty's rights as subrogee on the registration books of the Authority maintained by the Fiscal Agent, upon surrender of the Assured Insured Bonds together with receipt of proof of payment of principal thereof.

Section 5. Control Rights. (a) Assured Guaranty shall be deemed to be the holder of all of the Assured Insured Bonds for purposes of (i) exercising all remedies and directing the Fiscal Agent to take actions or for any other purposes following an event of default under the 1998 Resolution, and (ii) granting any consent, direction or approval or taking any action permitted by or required under the indenture, resolution or ordinance, as the case may be, to be granted or taken by the holders of such Assured Insured Bonds.

(b) Anything in the 1998 Resolution to the contrary notwithstanding, upon the occurrence and continuance of an event of default under the 1998 Resolution, Assured Guaranty shall be entitled to control and direct the enforcement of all rights and remedies granted to the Bondholders or the Fiscal Agent for the benefit of the Bondholders under the 1998 Resolution.

Section 6. Consent Rights of Assured Guaranty. (a) Any provision of the 1998 Resolution expressly recognizing or granting rights in or to Assured Guaranty may not be amended in any manner that affects the rights of Assured Guaranty hereunder without the prior written consent of Assured Guaranty.

(b) Wherever the 1998 Resolution require the consent of Bondholders, Assured Guaranty's consent shall also be required.

(c) Any reorganization or liquidation plan with respect to the Authority must be acceptable to Assured Guaranty. In the event of any reorganization or liquidation, Assured Guaranty shall have the right to vote on behalf of all Bondholders who hold Assured Insured Bonds guaranteed by Assured Guaranty, absent a default by Assured Guaranty under the Assured Guaranty Insurance Policy.

Section 7. Amendments and Supplements. With respect to amendments or supplements to the 1998 Resolution which do not require the consent of the Bondholders, Assured Guaranty must be given notice of any such amendments or supplements. With respect to amendments or supplements to the 1998 Resolution, which require the consent of the Bondholders, Assured Guaranty's prior written consent is required. Copies of any amendments or supplements to the 1998 Resolution which are consented to by Assured Guaranty shall be sent to the rating agencies that have assigned a rating to the Assured Insured Bonds. Notwithstanding any other provision of the 1998 Resolution, in determining whether the rights of Bondholders will be adversely affected by any action taken pursuant to the terms and provisions thereof, the Fiscal Agent shall consider the effect on the Bondholders as if there were no Assured Guaranty Insurance Policy.

Section 8. Fiscal Agent. (a) Assured Guaranty shall receive prior written notice of any name change of the Fiscal Agent or the resignation or removal of the Fiscal Agent.

(b) Every successor Fiscal Agent shall be appointed in accordance with the provisions of the 1998 Resolution.

10322812.2

Section 9. <u>Assured Guaranty as Third Party Beneficiary.</u> To the extent that the 1998 Resolution confer upon or give or grant to Assured Guaranty any right, remedy or claim under or by reason of the 1998 Resolution, the Assured Guaranty is explicitly recognized as being a third party beneficiary thereunder and may enforce any such right, remedy or claim conferred, given or granted thereunder.

Section 10. <u>Applicability of this Agreement.</u> Notwithstanding anything to the contrary contained herein, the Authority and the Fiscal Agent shall be bound by, and required to comply with the provisions of, this Agreement only for so long as the Assured Guaranty Insurance Policy is in effect and Assured Guaranty is not in default thereunder.

Section 11. <u>Counterparts.</u> This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

[Balance of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the Puerto Rico Highways and Transportation Authority and THE BANK OF NEW YORK, as Fiscal Agent, have caused this Agreement to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
Authorized Signatory

THE BANK OF NEW YORK,
as Fiscal Agent

By: _____
Authorized Officer

Acknowledged and agreed
to by ASSURED GUARANTY CORP.
this 6th day of March, 2007.

ASSURED GUARANTY CORP.

By: *[signature: Kathleen Evers]*

Kathleen Evers
Managing Director

- 9 -

10322812.2