# EXHIBIT 11

## AGREEMENT REGARDING BOND INSURANCE

THIS AGREEMENT REGARDING BOND INSURANCE, dated October 4, 2005, is entered into by and between the Puerto Rico Highways and Transportation Authority (the "Authority") and JPMorgan Chase Bank, N.A., as Fiscal Agent under Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "1998 Resolution"), pursuant to which the Authority is issuing $598,285,000 aggregate principal amount of Puerto Rico Highways and Transportation Authority Transportation Revenue Refunding Bonds (Series L) (the "Series L Bonds").

### WITNESSETH:

WHEREAS, the Authority has determined to issue the Series L Bonds and, in connection therewith, to obtain a municipal bond insurance policy (the "Bond Insurance Policy") to be issued by Financial Guaranty Insurance Company ("FGIC"), insuring the payment when due of principal of and interest on the Series L Bonds maturing July 1 of the years 2021, 2022, and 2030 (collectively, the "FGIC Insured Bonds");

WHEREAS, as a condition to the issuance of the Bond Insurance Policy (as defined herein), the Bond Insurer has requested that the Authority and the Fiscal Agent agree to certain provisions; and

WHEREAS, the Authority and the Fiscal Agent are willing to abide by the requirements of the Bond Insurer for so long as the Bond Insurance Policy is in effect and the Bond Insurer is not in default thereunder, all as more specifically provided in this Agreement;

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants herein set forth, the Authority and the Fiscal Agent hereby agree as follows:

Section 1. <u>Defined Terms</u>. All terms used herein in capitalized form and not defined shall have the meanings ascribed to such terms in the 1998 Resolution or, if not defined therein, in Resolution No. 2005-28, adopted by the Authority on September 22, 2005 (the "1998 Series Resolution"). In addition, the following terms shall have the following meanings:

(a) "Bond Insurance Policy" shall mean the municipal bond new issue insurance policy issued by the Bond Insurer that guarantees payment of principal of and interest on the FGIC Insured Bonds.

(b) "Bond Insurer" shall mean Financial Guaranty Insurance Company, a New York stock insurance company, or any successor thereto.

Section 2. <u>Notices</u>. (a) Any notices required to be given by the Authority or the Fiscal Agent under the 1998 Resolution shall also be given to the Bond Insurer. Any notice required to be given to the Bond Insurer pursuant to the immediately preceding sentence, and any other notice required to be given to the Bond Insurer or to the FGIC Fiscal Agent (as defined in Section 3) shall be addressed as follows:

Miami/14986.3

    (i)    if to the Bond Insurer

        Financial Guaranty Insurance Company
        125 Park Avenue
        New York, New York 10017
        Attention: Risk Management

    (ii)    if to the FGIC Fiscal Agent

        U.S. Bank Trust National Association
        100 Wall Street, 19th Floor
        New York, New York 10005
        Attention: Corporate Trust Department

    (b)    In addition to the notices required by (a) above, the Bond Insurer shall be provided with the following:

    (i)    Notice of the redemption, other than mandatory sinking fund redemption, of any of the FGIC Insured Bonds, or of any advance refunding of the FGIC Insured Bonds, including the principal amount, maturities and CUSIP numbers thereof;

    (ii)    Notice of the downgrading by any rating agency of the Authority's underlying public rating, or the underlying rating on the FGIC Insured Bonds or any parity obligations, to "non-investment grade";

    (iii)    Notice of any rate covenant violation with respect to the FGIC Insured Bonds;

    (iv)    Notice of any material events pursuant to Rule 15c2-12 under the Securities Exchange Act of 1934, as amended; and

    (v)    Such additional information as the Bond Insurer may reasonably request from time to time.

    Section 3.    Claim Procedures. (a) If, on the third day preceding any interest payment date for the FGIC Insured Bonds there is not on deposit with the Fiscal Agent sufficient moneys available to pay all principal of and interest on the FGIC Insured Bonds due on such date, the Fiscal Agent shall immediately notify the Bond Insurer and U.S. Bank Trust National Association, New York, New York or its successor, in its capacity as fiscal agent to the Bond Insurer (the "FGIC Fiscal Agent") of the amount of such deficiency. If, by said interest payment date, the Authority has not provided the amount of such deficiency, the Fiscal Agent shall simultaneously make available to the Bond Insurer and to the FGIC Fiscal Agent the registration books for the FGIC Insured Bonds maintained by the Fiscal Agent. In addition:

    (i)    The Fiscal Agent shall provide the Bond Insurer with a list of the bondholders entitled to receive principal or interest payments from the Bond Insurer under the terms of the Bond Insurance Policy and shall make arrangements for the Bond Insurer and its FGIC Fiscal Agent (1) to mail checks or drafts to bondholders entitled to

2

receive full or partial interest payment from the Bond Insurer and (2) to pay principal of the FGIC Insured Bonds surrendered to the FGIC Fiscal Agent by the bondholders entitled to receive full or partial principal payments from the Bond Insurer; and

(ii) The Fiscal Agent shall, at the time it makes the registration books available to the Bond Insurer pursuant to (i) above, notify bondholders entitled to receive the payment of principal of or interest on the FGIC Insured Bonds from the Bond Insurer (1) as to the fact of such entitlement, (2) that the Bond Insurer will remit to them all or part of the interest payments coming due subject to the terms of the Bond Insurance Policy, (3) that, except as provided in paragraph (b) below, in the event that any bondholder is entitled to receive full payment of principal from the Bond Insurer, such bondholder must tender his FGIC Insured Bond with the instrument of transfer in the form provided on the FGIC Insured Bond executed in the name of the Bond Insurer, and (4) that, except as provided in paragraph (b) below, in the event that such bondholder is entitled to receive partial payment of principal from the Bond Insurer, such bondholder must tender his FGIC Insured Bond for payment first to the Fiscal Agent, which shall note on such FGIC Insured Bond the portion of principal paid by the Fiscal Agent, and then, with an acceptable form of assignment executed in the name of the Bond Insurer, to the FGIC Fiscal Agent, which will then pay the unpaid portion of principal to the bondholder subject to the terms of the Bond Insurance Policy.

(b) In the event that the Fiscal Agent has notice that any payment of principal of or interest on a FGIC Insured Bond has been recovered from a bondholder pursuant to the United States Bankruptcy Code by a trustee in bankruptcy in accordance with the final, nonappealable order of a court having competent jurisdiction, the Fiscal Agent shall, at the time it provides notice to the Bond Insurer, notify all bondholders that in the event that any bondholder's payment is so recovered, such bondholder will be entitled to payment from the Bond Insurer to the extent of such recovery, and the Fiscal Agent shall furnish to the Bond Insurer its records evidencing the payments of principal of and interest on the FGIC Insured Bonds which have been made by the Fiscal Agent and subsequently recovered from bondholders, and the dates on which such payments were made.

(c) The Bond Insurer shall, to the extent it makes payment of principal of or interest on the FGIC Insured Bonds, become subrogated to the rights of the recipients of such payments in accordance with the terms of the Bond Insurance Policy and, to evidence such subrogation, (i) in the case of subrogation as to claims for past due interest, the Fiscal Agent shall note the Bond Insurer's rights as subrogee on the registration books maintained by the Fiscal Agent upon receipt from the Bond Insurer of proof of the payment of interest thereon to the bondholders of such FGIC Insured Bonds and (ii) in the case of subrogation as to claims for past due principal, the Fiscal Agent shall note the Bond Insurer's rights as subrogee on the registration books for the FGIC Insured Bonds maintained by the Fiscal Agent upon receipt of proof of the payment of principal thereof to the bondholders of such FGIC Insured Bonds. Notwithstanding anything in this authorizing document or the FGIC Insured Bonds to the contrary, the Fiscal Agent shall make payment of such past due interest and past due principal directly to the Bond Insurer to the extent that the Bond Insurer is a subrogee with respect thereto.

3

Section 4. *Events of Default*. (a) In determining whether a payment default has occurred or whether a payment on the FGIC Insured Bonds has been made under the 1998 Resolution, no effect shall be given to payments made under the Bond Insurance Policy.

(b) The Bond Insurer shall receive immediate notice of any payment default and notice of any other default known to the Fiscal Agent or the Issuer within 30 days of the Fiscal Agent's or the Authority's knowledge thereof.

(c) For all purposes of the 1998 Resolution governing events of default and remedies, except the giving of notice of default to Bondholders, the Bond Insurer shall be deemed to be the sole holder of the FGIC Insured Bonds for so long as it has not failed to comply with its payment obligations under the Bond Insurance Policy.

(d) Any waiver of an event of default as to the FGIC Insured Bonds by the Fiscal Agent shall be subject to the prior written consent of the Bond Insurer.

Section 5. *Events of Defaults and Remedies*. FIGC shall be recognized as the registered owner of each FIGC Insured Bond for purposes of exercising all rights and privileges available to the registered owners of the FIGC Insured Bonds. With respect to any FIGC Insured Bonds, FIGC shall have the right to institute any suit, action or proceeding at law or in equity under the same terms as a bondholder in accordance with the applicable provisions of the 1998 Resolution.

Section 6. *Party in Interest*. The Bond Insurer shall be included as a party in interest and as a party entitled to (i) notify the parties of the occurrence of an event of default as to the FGIC Insured Bonds under the 1998 Resolution and (ii) request the Fiscal Agent to intervene in judicial proceedings that affect the FGIC Insured Bonds or the security therefor. The Fiscal Agent shall be required to accept notice of an event of default as to the FGIC Insured Bonds from the Bond Insurer.

Section 7. *Amendments and Supplements*. Any amendment or supplement to the 1998 Resolution affecting the FGIC Insured Bonds shall be subject to the prior written consent of the Bond Insurer. In addition, FGIC shall have the right to consent in lieu of the owners of the FGIC Insured Bonds to all agreements supplemental to the 1998 Resolution to which the owners of FGIC Insured Bonds have the right to consent. Any rating agency rating the FGIC Insured Bonds must receive notice of each amendment and a copy thereof at least 15 days in advance of its execution or adoption. The Bond Insurer shall be provided with a full transcript of all proceedings relating to the execution of any such amendment or supplement.

Section 8. *Successor Fiscal Agents*. No resignation or removal of the Fiscal Agent shall become effective until a successor has been appointed and has accepted the duties of trustee. The Bond Insurer shall be furnished with written notice of the resignation or removal of the Fiscal Agent and the appointment of any successor thereto.

Section 9. *Defeasance of FGIC Insured Bonds*. Only cash, direct non-callable obligations of the United States of America and securities fully and unconditionally guaranteed as to the timely payment of principal and interest by the United States of America, to which direct obligation or guarantee the full faith and credit of the United States of America has been

4

Miami/14986.3

pledged, Refcorp interest strips, CATS, TIGRS, STRPS, or defeased municipal bonds rated AAA by S&P or Aaa by Moody's (or any combination of the foregoing) shall be used to effect defeasance of the FGIC Insured Bonds unless the Bond Insurer otherwise approves. In the event of an advance refunding, the Authority shall cause to be delivered a verification report of an independent nationally recognized entity having favorable repute for the preparation of such reports. If a forward supply contract is employed in connection with the refunding, (i) such verification report shall expressly state that the adequacy of the escrow to accomplish the refunding relies solely on the initial escrowed investments and the maturing principal thereof and interest income thereon and does not assume performance under or compliance with the forward supply contract, and (ii) the applicable escrow agreement shall provide that in the event of any discrepancy or difference between the terms of the forward supply contract and the escrow agreement (or the authorizing document, if no separate escrow agreement is utilized), the terms of the escrow agreement or authorizing document, if applicable, shall be controlling.

Section 10. *Redemption Notices*. Notice of any redemption of FGIC Insured Bonds shall either (i) explicitly state that the proposed redemption is conditioned on there being on deposit in the applicable fund or account on the redemption date sufficient money to pay the full redemption price of the FGIC Insured Bonds to be redeemed, or (ii) be sent only if sufficient money to pay the full redemption price of the FGIC Insured Bonds to be redeemed is on deposit in the applicable fund or account.

Section 11. *Reimbursement of Expenses*. The Authority shall pay or reimburse the Bond Insurer for any and all charges, fees, costs and expenses that the Bond Insurer may reasonably pay or incur in connection with the following: (i) the administration, enforcement, defense, or preservation of any rights or security under the 1998 Resolution or under any other transaction document; (ii) the pursuit of any remedies under the 1998 Resolution, under any other transaction document, or otherwise afforded by law or equity, (iii) any amendment, waiver, or other action with respect to or related to the 1998 Resolution, this Agreement or any other transaction document whether or not executed or completed; (iv) the violation by the Authority of any law, rule, or regulation or any judgment, order or decree applicable to it; (v) any advances or payment made by the Bond Insurer to cure an event of default of the Authority under the 1998 Resolution as to the FGIC Insured Bonds; or (vi) any litigation or other dispute in connection with this Agreement, any other transaction document, or the transactions contemplated hereby or thereby, other than amounts resulting from the failure of the Bond Insurer to honor its payment obligations under the Bond Insurance Policy. The Bond Insurer reserves the right to charge a reasonable fee as a condition to executing any amendment, waiver, or consent proposed in respect of the 1998 Resolution, this Agreement or any other transaction document. The obligations of the Authority to the Bond Insurer shall survive discharge and termination of the 1998 Resolution and this Agreement.

Section 12. *Additional Information*. For so long as the FGIC Insured Bonds are outstanding, the Authority agrees to provide to the Bond Insurer such additional information as the Bond Insurer may reasonably request from time to time.

Section 13. *Applicability of this Agreement*. Notwithstanding anything to the contrary contained herein, the Authority and the Fiscal Agent shall be bound by, and required to comply

5

Miami/14986.3

with the provisions of, this Agreement only for so long as the Bond Insurance Policy is in effect and the Bond Insurer is not in default thereunder.

Section 14.   Counterparts.   This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

[Balance of Page Intentionally Left Blank]

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority and JPMorgan Chase Bank, N.A., as Fiscal Agent, have caused this Agreement to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
    Executive Director

JPMORGAN CHASE BANK, N.A.,
Fiscal Agent

By: _____
    Authorized Officer

Acknowledged and agreed
to by FINANCIAL GUARANTY
INSURANCE COMPANY,
as of this 4th day of October, 2005.

FINANCIAL GUARANTY
INSURANCE COMPANY

By: _____*Karen Daly*_____
Name: Karen Daly
Title: Managing Director – Public Finance

IN WITNESS WHEREOF, Puerto Rico Highways and Transportation Authority and JPMorgan Chase Bank, N.A., as Fiscal Agent, have caused this Agreement to be executed by their authorized officers, all as of the day and year first above written.

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY

By: _____
      Executive Director

JPMORGAN CHASE BANK, N.A.,
Fiscal Agent

By: _____
      Authorized Officer

Acknowledged and agreed
to by FINANCIAL GUARANTY
INSURANCE COMPANY,
as of this 4th day of October, 2005.

FINANCIAL GUARANTY
INSURANCE COMPANY

By: _____
    Name:
    Title:

7

Miami/14986 3