# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**DRA PARTIES' JOINDER TO URGENT MOTION FOR BRIDGE ORDER, AND MOTION FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926, OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

4126-4020-9189

**COME NOW** AmeriNational Community Services, LLC (hereafter the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds issued by the DRA pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018 and the approved Qualifying Modification for the Government Development Bank for Puerto Rico[2] under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act* (the "Collateral Monitor" and with the Servicer, the "DRA Parties"), by and through the undersigned legal counsel, and respectfully submit this joinder (the "Joinder") to the *Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* [Case No. 17-3283-LTS, Dkt. No. 13708; Case No. 17-3567-LTS, Dkt. No. 871] (the "Motion").[3]

## BACKGROUND

1.  As this Court is aware, the DRA succeeded the GDB as the lender of more than $1.7 billion in principal loans to HTA and the holder of more than $200 million of principal in Series 1998 HTA bonds—likely rendering it the largest creditor of HTA. *See* Offering Memorandum for GDB Debt Recovery Authority Bonds (Taxable) due 2040, dated as of November 7, 2018, at 128–29.

---

[2] *See* Dkt. No. 270 of Civil Case No. 18-01561 (LTS).

[3] Capitalized terms used herein and otherwise not defined shall have the definition ascribed to such term in the Motion.

1

4126-4020-9189

2. As set forth in prior submissions, the DRA's credits are collateralized by certain tax and revenue fees that were transferred from the Commonwealth to HTA so that HTA could pay debt service under the loan agreements and the Series 1998 HTA Bonds (collectively, the "Excise Tax Revenues"). *See, e.g.*, *The DRA Parties' Motion and Memorandum of Law in Support of their Motion for Relief from the Automatic Stay, or in the Alternative, Ordering Payment of Adequate Protection* [Dkt. No. 7643] (the "DRA Parties' Lift Stay Motion") ¶¶ 5-16.[4] The Excise Tax Revenues are the same revenues that the Movants in the Motion and DRA Parties contend have been improperly diverted from HTA by the Commonwealth in contravention of Puerto Rico law. *See generally* Motion ¶¶ 11-16, 19-23; DRA Parties' Lift Stay Motion ¶¶ 25-34.

## JOINDER

3. The DRA Parties have a direct stake in the resolution of any avoidance actions brought on behalf of HTA against the Commonwealth, as they are HTA's most significant creditor. The DRA Parties believe that that the FOMB's failure to bring such actions—which have been ripe since 2015, *see, e.g.*, Motion ¶ 13—reflects the FOMB's irretrievable conflict of interest in simultaneously representing the Commonwealth and HTA, therefore warranting the appointment of a Section 926 trustee.

**I. Section 926 of the Bankruptcy Code Permits a Title III Court to Appoint a Trustee to Pursue Avoidance Actions on Behalf of the Debtor.**

4. Section 926 of the Bankruptcy Code provides that "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of [the Bankruptcy Code], then on request of a creditor, the court may appoint a trustee to pursue such cause of

---

[4] Unless otherwise noted, docket citations shall correspond to Case No. 17-3283-LTS.

2

action." 11 U.S.C. § 926(a); *see* 48 U.S.C. § 2161(a) (incorporating Section 926(a) into PROMESA). As this Court has explained, the appointment of a Section 926 trustee depends on "the particular circumstances of the case." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 432 F. Supp. 3d 25, 29 (D.P.R. 2020) (the "ERS Section 926 Decision"), *aff'd*, 954 F.3d 1 (1st Cir. 2020).

5. Additionally, when considering a request seeking appointment of a Commonwealth trustee pursuant to Section 926, "decisions analyzing the authority of creditors of private entities to initiate adversary proceedings on behalf of a chapter 11 estate are instructive." *Id.* (citing *In re STN Enters.*, 779 F.2d 901, 904 (2d Cir. 1985); *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 514-15 (Bankr. S.D.N.Y. 2016)). In such cases, courts generally require a movant to establish that: "(i) there are colorable claims for relief that on appropriate proof would support a recovery, and (ii) the debtor unjustifiably failed to bring suit." *Id.*

6. A debtor unjustifiably fails to bring suit—requiring appointment of a trustee under Section 926—when the debtor acts under the influence of conflicts of interest. *See generally* 6 *Collier on Bankruptcy* ¶ 926.02 (16th ed. rev. 2018) ("The reason for section 926(a) derives from the possible reluctance of a debtor to bring an action against one of its creditors during the course of a chapter 9 case," whether because "the debtor actually favors the transfer rather than opposes it" or because the debtor is unwilling, "while it is attempting to negotiate a plan, to antagonize its creditors."); *see also In re Gibson Grp., Inc.*, 66 F.3d 1436, 1441 (6th Cir. 1995) (noting that a debtor abuses its discretion and acts unjustifiably where it "acts under the influence of conflicts of interest" and "favor[s] certain creditors over others").

7. Although this Court has previously acknowledged authority cautioning against the appointment of a trustee under Section 926 in municipal bankruptcies given constitutional and

3

federalism concerns, *see* ERS Section 926 Decision at 29 (citing *In re New York City Off-Track Betting Corp.*, No. 09-17121-MG, 2011 WL 309594, at *4 (Bankr. S.D.N.Y. Jan. 25, 2011)), this Court nevertheless has noted that "the considerations [underpinning the need to appoint a trustee under Section 926] are important in the PROMESA context as well." *Id.* To that end, the pending Title III cases require a "holistic approach" that considers both the governmental debtors' "ability to meet the needs of the Commonwealth's residents" and also "proper recompense of creditors." *Id.* at 30.

## II. FOMB Has Unjustifiably Failed to Bring the Avoidance Actions

8. As detailed in the Motion, the FOMB has failed to bring an array of potential avoidance actions that would maximize value to the HTA estate. *See* Motion ¶¶ 4-7, 28, 57-59. The avoidance actions pertain to repeated transfers of HTA property that the Commonwealth has diverted improperly from HTA and the pursuit of which would clearly benefit HTA and its creditors. To establish *prima facie* evidence of the lack of justification for the FOMB's failure to pursue avoidance actions, the Movants need not plead specific "facts showing the debtor-in-possession's motive or reason for not filing the avoidance action." *Gibson Grp., Inc.*, 66 F.3d at 1441. Here, the FOMB will likely argue that its failure is justified by the purported political and oversight concerns of the FOMB and the Commonwealth. This is the precise type of conflict that gives rise to the need for appointment of a trustee. *See id.*

9. The FOMB has failed to take any action with respect to the Commonwealth's efforts to divert assets and property away from HTA.[5] *See* Motion ¶¶ 4-7, 28, 57-59. The Puerto

---

[5] The Court's *Opinion and Order in Connection with Preliminary Hearing* [Dkt. No. 13541] (the "Preliminary Hearing Opinion") does not address HTA's ownership of the Excise Taxes that were diverted from the Commonwealth nor was such question before the Court as part of the Monolines' amended lift stay motion. *See* Motion ¶ 3. The Court's opinion addressed only the conclusions that could be drawn from "the Commonwealth's and HTA's cash management

Rico Constitution does not permit the Commonwealth to divert the HTA's revenues whenever it wishes and to do with them whatever it pleases. To the contrary, it permits the diversion of available resources only to pay interest and amortization of the GO bonds of the Commonwealth and only in a fiscal year where funds are not sufficient to satisfy the obligations for that year. *See* P.R. CONST. art. VI, § 8. In the absence of any such extraordinary circumstances, the Excise Tax Revenues must continue to be transferred to HTA pursuant to Article VI, Section 9 of the Puerto Rico Constitution. *See* P.R. CONST. art. VI, § 9.

10. But as stated in the DRA Parties' Lift Stay Motion and the Motion, the Commonwealth has taken actions to improperly use HTA pledged revenues for satisfaction of expenses beyond the repayment of the GO debt obligations. *See* DRA Parties' Lift Stay Motion ¶¶ 24-34; Motion ¶¶ 12-16, 19-22. This unlawful usage diminishes the value of funds that the Commonwealth is required to send to HTA. That the Commonwealth is using the Excise Tax Revenues for other purposes also diminishes the value of the DRA's lien on those revenues by materially and substantially increasing the risk that they will not be sufficient to repay the obligations owed to the DRA.

11. The DRA Parties also note that the FOMB's conflict will inherently affect the Commonwealth's ultimate debt adjustment plan, to the detriment of HTA and its creditors. Indeed, the FOMB's conflict is glaringly evident in the current formulation of the plan, which proposes to settle over $5.7 billion of "CW/HTA Claims" against the Commonwealth on account of the Commonwealth's improper diversion of revenues for a mere 3.9%. *See Disclosure Statement for the Amended Title III Plan of Adjustment of the Commonwealth of Puerto Rico, et*

---

practices," and avoided the question of who owns the Excise Taxes, finding only that the Monolines lacked "liens or other property interests in Revenues other than those that have been deposited in the Resolution Funds." Preliminary Hearing Opinion at 27-28.

*al.* [Dkt. No. 11947] at 29. This treatment substantially favors other Commonwealth creditors over HTA, thus warranting a Section 926 trustee to serve as a voice for HTA. *See In re Gibson Grp., Inc.*, 66 F.3d at 1441 (debtor abuses its discretion and acts unjustifiably where it favors certain creditors over others).

12. For these reasons and those set forth in the Motion, *see generally* Motion ¶¶ 1-7, 35-75, the DRA Parties join the Movants in their request for the appointment of a Trustee pursuant to Section 926 of the Bankruptcy Code to prosecute the causes of action under Sections 544, 548 and 549 of the Bankruptcy Code on behalf of HTA against the Commonwealth detailed in the proposed complaint annexed to the Motion.

13. The DRA Parties, given their interest in HTA's assets, request that the Court appoint an *independent* trustee to preserve the interests of all HTA creditors. The DRA Parties request that the Court hold a subsequent hearing to select an independent trustee and require the Monolines and the DRA Parties to coordinate and recommend an appropriate trustee for designation by the Court. Moreover, if the Court permits the filing of the Proposed Complaint, then consistent with the Motion, *see* Motion ¶ 8 n.5, the DRA Parties respectfully request that the independent trustee be permitted to modify, amend or supplement the Proposed Complaint in coordination with the Monolines and the DRA Parties, as needed.

## CONCLUSION

14. WHEREFORE, the DRA Parties respectfully request that the Court (i) grant the Motion, (ii) modify the Proposed Order to provide for the appointment of an independent trustee, and (iii) grant any such other and further relief as is just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, today July 17, 2020.

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile: 787-759-9225

By: /s/Arturo J. García-Solá
Arturo J. García-Solá
USDC No. 201903
Email: ajg@mcvpr.com

By: /s/Nayuan Zouairabani
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com

*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority*

**C. CONDE & ASSOC. LAW OFFICES**

By: /s/ Carmen D. Conde Torres

Carmen D. Conde Torres
(USDC No. 207312)
254 San José Street
Suite 5
San Juan, PR 00901-1523
Tel. 787-729-2900
Fax. 787-729-2203
E-Mail: condecarmen@condelaw.com

-and-

**ORRICK, HERRINGTON & SUTCLIFFE LLP**

By: /s/ Douglas S. Mintz
Douglas S. Mintz (admitted pro hac vice)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
E-mail: dmintz@orrick.com

and

Laura Metzger (pro hac vice pending)
Peter Amend (admitted pro hac vice)
David Litterine-Kaufman (admitted pro hac vice)
Monica Perrigino (admitted pro hac vice)
51 West 52nd Street
New York, N.Y. 10019
Telephone: (212) 506-5000
E-mail: lmetzger@orrick.com
pamend@orrick.com
dlitterinekaufman@orrick.com
mperrigino@orrick.com

*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*

7