# **EXHIBIT A**

# Milbank

**JOHN J. HUGHES III**

*Special Counsel*

55 Hudson Yards | New York, NY 10001-2163

T: 212.530.5127

Jhughes2@milbank.com | milbank.com

June 9, 2020

**VIA EMAIL**

| | |
|---|---|
| Elizabeth L. McKeen, Esq. | Margaret A. Dale, Esq. |
| Ashley Pavel, Esq. | Julia D. Alonzo, Esq. |
| O'Melveny & Myers LLP | Proskauer Rose LLP |
| 610 Newport Center Drive, 17th Floor | Eleven Times Square |
| Newport Beach, CA 92660 | New York, NY 10036 |

  Re: <u>May 11, 2020 Meet and Confer: Commonwealth Assets and Cash Rule 2004 Requests</u>

Counsel:

  I write on behalf of Ambac Assurance Corporation ("<u>Ambac</u>") to memorialize and follow up on our telephonic meet-and-confer on May 11, 2020 (the "<u>May 11 Meet and Confer</u>") concerning *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "<u>Assets Rule 2004 Motion</u>") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "<u>Cash Rule 2004 Motion</u>," and collectively with the Assets Rule 2004 Motion, the "<u>Rule 2004 Motions</u>").[1]

  During the May 11, 2020 Meet and Confer, the Parties discussed the items outstanding from the telephonic meet-and-confers held on April 9, 2020 (the "<u>April 9 Meet and Confer</u>") and March 16, 2020 (the "<u>March 16 Meet and Confer</u>") as well as potential topics for, and the timing of, Rule 30(b)(6) depositions. I address each item of discussion in turn.

<u>Assets Rule 2004 Motion</u>

  *(1) Category No. 1: Assets (current and transferred/encumbered)*

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Rule 2004 Motions.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 9, 2020

**Inventory of Real Property Assets.** During the telephonic meet-and-confer on February 25, 2020 (the "February 25 Meet and Confer"), AAFAF agreed to investigate when the Commonwealth's official inventory of real property assets was created, when it was last updated, and whether any instrumentalities did not contribute to it. At the May 11 Meet and Confer, AAFAF advised that it recently received information related to the Commonwealth's online database and would soon investigate the responsiveness of that information. AAFAF also advised that it is still endeavoring to identify the best contact person to assist in fulfilling this request and the availability of additional materials.

In a letter to Ambac dated May 19, 2020 (the "May 19 Letter"), AAFAF provided an update to its efforts to produce information related to the online database. It directed Ambac to two publicly available inventories and highlighted several documents it produced in its production dated May 15, 2020 (the "May 15 Production"). AAFAF further agreed to provide other, similar publicly available databases (to the extent they exist), and stated that it is continuing to work to determine what additional information regarding the official inventory is available.

**Prioritized Commonwealth Assets.** During the March 16 Meet and Confer, AAFAF agreed to consider producing valuation, alienation, and encumbrance documents related to the narrowed list of Commonwealth and instrumentality assets that Ambac provided on March 16. During the April 9 Meet and Confer, AAFAF stated that it was investigating what responsive documents may exist, and that it did not object to producing documents related to the list of properties Ambac provided, but would update Ambac if AAFAF's position changed.

At the May 11 Meet and Confer, AAFAF advised that its position had not changed from the April 9 Meet and Confer. AAFAF further advised that it received information that it believed would aid its investigation and agreed to provide Ambac with an update. In the May 19 Letter, AAFAF objected to the request as drafted on the grounds that it is overly broad, but that it was still working to determine what information is available and accessible.

**AAFAF Assets Review.** On May 15 AAFAF produced, *inter alia*, an internal memorandum, bearing Bates number ASSETS_2004_0000601, from the Executive Director of AAFAF to all heads of agencies, instrumentalities, and public corporations of the Government of Puerto Rico, requesting a list of all real property assets owned by such agencies, instrumentalities, and public corporations. Ambac requests production of all documents submitted in response to the memorandum bearing Bates number ASSETS_2004_0000601 and any follow-up communications or analysis.

**HTA Assets Committee.** Ambac understands that an HTA committee has been developing a list of properties for potential sale since 2019. Ambac respectfully requests that documents relevant to this HTA committee, including (without limitation) any policies or procedures concerning the identification or disposition of such properties, be included in forthcoming Assets Category No. 1 productions.

Ambac's review of the publicly available information and May 15 Production is ongoing. Please provide an update regarding the status of AAFAF's efforts to respond to Asset Category No. 1. Ambac would like AAFAF to commit to determining by June 30 what responsive

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 9, 2020

information exists for the inventory of real property assets and the prioritized Commonwealth assets and to be prepared to meet-and-confer promptly thereafter regarding any objections AAFAF may have to producing the information. Please advise if AAFAF can commit to meeting this timeframe.

> **(2) Category No. 2: August 2019 Report – 23 Properties**
>
> - *A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*
> - *Documents sufficient to show*
>   - *how those properties were identified for sale or potential sale; and*
>   - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*

On April 22, 2020, AAFAF made a production of documents containing certain appraisal information (the "April 22 Production"). At the May 11 Meet and Confer, AAFAF stated that this production encompassed the universe of materials it expected to produce in response to Asset Category No. 2. AAFAF stated its willingness to address follow-up inquiries from Ambac.

Ambac conducted additional review of the documents in the April 22 Production in light of AAFAF's comments at the May 11 Meet and Confer. In so doing, Ambac determined that the April 22 Production does not contain information sufficient to identify the individual or entity that received consideration for the sale of the properties identified. Please advise whether AAFAF has documents sufficient to identify the individual or entity that received consideration.

Further, while the April 22 Production identifies the specific properties identified for sale in the August 2019 report, these documents do not explain the process of how HTA conducted its review—in particular, "how those properties were identified for sale or potential sale" and "the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale." Please advise whether AAFAF has documents responsive to the process components of the request.

> **(3) Category No. 3: Real Property Valuation and Disposal Committee (the "Committee")**
>
> - *Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*
> - *Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 9, 2020

***Transactions Approved.*** During the February 25 Meet and Confer, AAFAF agreed to produce a list of transactions approved by the Real Property Valuation and Disposal Committee (the "Committee"). As part of the April 22 Production, AAFAF produced two documents (in PDF format) which identified transactions approved by the Committee.

Please advise whether AAFAF intends to make further productions of documents listing transactions approved by the Committee, or whether it considers its production in response to this request complete. To the extent available, Ambac requests these lists be produced in Excel format or other native file.

***Transactions Under Consideration.*** At the February 25 Meet and Confer, AAFAF advised that it would confer internally and provide an update regarding its production of documents related to strategies, proposals, and transactions currently under consideration by the Committee, as well as documents related to Committee deliberations. During the March 16 Meet and Confer and the April 9 Meet and Confer, AAFAF informed Ambac that it continued to view such documents as irrelevant but was in the process of determining whether any such documents exist and, if so, whether AAFAF would stand on its objection. AAFAF reaffirmed its position in the May 19 Letter.

At the May 11 Meet and Confer, AAFAF advised that in the next week it would begin production of resolutions that the Committee passed for approved sales reflected in the two documents produced as part of its April 22 Production. AAFAF also reiterated its position that it did not agree that any communications would be relevant or produced, but that it was still endeavoring to identify whether such communications exist and agreed to update Ambac when its investigation was complete. Ambac appreciates AAFAF's May 15 production of certain resolutions that the Committee passed for approved sales reflected in the two documents produced as part of its April 22 Production, and Ambac's review of the May 15 Production is ongoing. However, Ambac requests confirmation that the resolutions produced in the May 15 Production constitute all resolutions from Committee proceedings, or if AAFAF anticipates that it will continue producing documents responsive to this portion of Assets Category No. 3.

At the May 11 Meet and Confer, AAFAF indicated it had produced documents reflecting "process materials, guidelines, and regulations" related to the Committee's work within the April 22 Production. Please identify the documents AAFAF was referring to by Bates number. Ambac has not located any such documents in the April 22 Production.

Ambac would like AAFAF to commit to determining by June 30 what responsive information exists for the transactions under consideration, and to be prepared to meet-and-confer promptly thereafter regarding any objections AAFAF may have to producing the information. Please advise if AAFAF can commit to meeting this timeframe.

**(4) Category No. 4: Municipal Revenue Collection Center ("CRIM")**

- *A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which*

-4-

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 9, 2020

> *of those properties were subsequently sold by the Commonwealth (and for how much).*
> - *All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*

At the May 11 Meet and Confer, AAFAF advised that it had identified regulations responsive to Assets Category No. 4 and agreed to produce such regulations.

With respect to the remaining information requested in Asset Category No. 4, AAFAF indicated that, consistent with its position on the February 25 Meet and Confer, the March 16 Meet and Confer, and April 9 Meet and Confer, AAFAF is endeavoring to identify whether additional documents exist. AAFAF reaffirmed its position in the May 19 Letter.

Ambac would like AAFAF to commit to determining by June 30 what responsive information exists for this request, and to be prepared to meet-and-confer promptly thereafter regarding any objections AAFAF may have to producing the information. Please advise if AAFAF can commit to meeting this timeframe.

Cash Rule 2004 Motion

> ***(1) Category Nos. 1 and 2: Presentation and Investigation Documents***
>
> - *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
> - *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

At the May 11 Meet and Confer, and in its letter to Ambac dated May 11, 2020 (the "May 11 Letter"), the Oversight Board advised that it had produced the "Master Database" used to prepare the cash restriction analysis and other Excel files in dynamic form. Ambac responded at the May 11 Meet and Confer that it would confer internally and reach out to the Oversight Board with follow up questions.

By way of follow up, Ambac has determined that certain tables in the Cash Restriction Analysis dated October 2, 2019 and the Duff & Phelps Report dated March 12, 2019, cannot readily be reproduced. This includes, for example, the table labelled "Sources of Cash: 6/30/19 Measurement Date" on page 5 of the Cash Restriction Analysis presentation, and "Table 2" on page 15 of the Duff & Phelps Report dated March 12, 2019. Ambac's understanding is that these tables or charts were prepared in Excel or another computer program, and Ambac needs the computer files (Excel spreadsheets or otherwise) used to create the charts in those reports.

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 9, 2020

In a letter to Ambac dated April 7, 2020 (the "April 7 Letter"), the Oversight Board agreed to re-produce the factual source materials and raw data underlying the October 2, 2019 presentations that were previously uploaded to the IntraLinks Data Room, and produce additional factual source materials and raw data for the unrestricted and restricted accounts held by the Title III debtors that fell within the scope of the Oversight Board's cash analysis. At the May 11 Meet and Confer, the Oversight Board advised that it was currently reviewing these materials and expected to produce responsive materials on a rolling basis, beginning at the end of the month. Ambac inquired as to when the Oversight Board expected to complete the production. The Oversight Board indicated it was not in a position to commit to a timeframe but agreed to provide an update once its review was further underway.

### *(2) Category No. 3: Commonwealth's Necessary Operating Expenses*

- *All documents related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.*

During the April 9 Meet and Confer, the Oversight Board asserted that the Commonwealth does not perform specific analyses as to whether unrestricted cash exceeds necessary operating expenses. In its April 21 Letter, Ambac questioned that representation, noting that the "Bank Account Analysis: Status Update – June 30, 2019 Balances" presentation, dated as of October 2, 2019 (the "Bank Account Analysis") specifically contemplated that the Oversight Board would be analyzing that issue. At the May 11 Meet and Confer, the Oversight Board stated that the Bank Account Analysis was addressed in an informative motion filed solely by AAFAF in 2017 (not the Oversight Board). At the May 11 Meet and Confer, AAFAF further explained that, after the Oversight Board engaged Duff & Phelps, AAFAF decided not to undertake the third or fourth step of the five-step review process referenced in the Bank Account Analysis. The Oversight Board reiterated its breadth objections, suggesting that the information being sought related much of the work performed by the Oversight Board.

In light of the Oversight Board's position, in order to resolve this discovery request, Ambac is going to draft a stipulation memorializing the representations that the Oversight Board has made in the course of the meet-and-confer process. Ambac reserves all other rights to follow up with respect to these discovery requests.

### *(3) Category No. 4: Document Key*

- *A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (i.e., Bates numbers).*

The parties' discussion of this request is summarized above ("Category Nos. 1 and 2: Presentation and Investigation Documents").

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 9, 2020

Rule 30(b)(6) Depositions

      In its April 7 Letter, the Government Parties requested that Ambac provide a list of topics as to which it seeks Rule 30(b)(6) testimony. In the interest of advancing the Parties' negotiations regarding the propriety and scope of Rule 30(b)(6) depositions, Ambac provided a preliminary list of deposition topics in its April 8 Letter.

      At the May 11 Meet and Confer and in the May 11 and May 19 Letters, the Government Parties advised Ambac of its view that the deposition topics were exceedingly broad, and that consideration of a Rule 30(b)(6) deposition was premature at this time, given that document discovery was ongoing. The Government Parties suggested that the parties consider deposition topics after the documents had been reviewed, reserving its right to object to further deposition topics. Ambac responded that one objective of the Rule 30(b)(6) deposition would be to help formulate more targeted, particularized document requests. Ambac expressed that it would be reluctant to schedule a Rule 30(b)(6) deposition only after all document discovery was complete, but that it would be willing to wait until additional documents are produced before seeking to schedule this deposition. Ambac reserves its rights with respect to Rule 30(b)(6) deposition testimony, and expects that the parties will revisit this topic in future meet-and-confers.

Very truly yours,

/s/ *John J. Hughes, III*
John J. Hughes, III


cc:    Grant Mainland
        Atara Miller
        Laura Stafford
        Martin A. Sosland
        Robert S. Berezin
        William Natbony
        Nicholas A. Bassett
        John E. Mudd