# **<u>EXHIBIT B</u>**

# Milbank

**JOHN J. HUGHES III**

*Special Counsel*

55 Hudson Yards | New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com | milbank.com

June 18, 2020

## VIA EMAIL

| | |
|---|---|
| Elizabeth L. McKeen, Esq. | Margaret A. Dale, Esq. |
| Ashley Pavel, Esq. | Julia D. Alonzo, Esq. |
| O'Melveny & Myers LLP | Proskauer Rose LLP |
| 610 Newport Center Drive, 17th Floor | Eleven Times Square |
| Newport Beach, CA 92660 | New York, NY 10036 |

Re:    <u>June 10, 2020 Meet and Confer: Commonwealth Assets and Cash Rule 2004 Requests</u>

Counsel:

I write on behalf of Ambac Assurance Corporation ("<u>Ambac</u>") to memorialize and follow-up on our telephonic meet-and-confer on June 10, 2020 (the "<u>June 10 Meet and Confer</u>"), and our follow-up conversation on June 16, 2020, concerning *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "<u>Assets Rule 2004 Motion</u>") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "<u>Cash Rule 2004 Motion</u>," and collectively with the Assets Rule 2004 Motion, the "<u>Rule 2004 Motions</u>").[1]

During the June 10, 2020 Meet and Confer, the parties discussed the items outstanding from the telephonic meet-and-confer held on May 11, 2020 (the "<u>May 11 Meet and Confer</u>"), and follow-up items identified in John J. Hughes, III's letter to the Government Parties, dated June 9, 2020 (the "<u>June 9 Letter</u>"). Each item of discussion is addressed below.

Assets Rule 2004 Motion

### *(1) Category No. 1: Assets (current and transferred/encumbered)*

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Rule 2004 Motions.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 18, 2020

***Inventory of Real Property Assets.***  During the June 10 Meet and Confer, AAFAF advised that its efforts to investigate when the Commonwealth's official inventory of real property assets was created, when it was last updated, and whether any instrumentalities did not contribute to it are ongoing but have been hampered by restrictions imposed due to the COVID-19 pandemic. Ambac advised that a rough estimate of when the inventory was created and updated would be helpful, though Ambac seeks more specific information if it is available.  AAFAF agreed to confer internally about whether it can provide a rough estimate of when the inventory was created and last updated and continue to search for more specific information.

***Prioritized Commonwealth Assets.***  During the June 10 Meet and Confer, AAFAF advised that some sources of information potentially responsive to this request are not remotely accessible and its efforts to respond to this request have been hampered by restrictions imposed due to the COVID-19 pandemic.  However, AAFAF advised that it has identified additional publicly available databases that contain information responsive to this request and would identify those databases in its forthcoming response to the June 9 Letter.  AAFAF further advised that it has not yet located any materials related to the valuation of the prioritized Commonwealth assets Ambac identified but continues to investigate whether such information exists and will produce responsive materials it is able to locate.

***AAFAF Assets Review.***  The Parties discussed Ambac's June 9 request for documents submitted in response to the memorandum bearing Bates number ASSETS_2004_0000601 and any follow-up communications or analysis related thereto.  AAFAF advised that it anticipated this request would be made and is in the process of collecting materials submitted in response to the memorandum.  AAFAF advised that it hopes to produce remotely accessible responsive materials quickly.

### (2) Category No. 2: August 2019 Report – 23 Properties

- *A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*
- *Documents sufficient to show*
  - *how those properties were identified for sale or potential sale; and*
  - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*

During the June 10 Meet and Confer, AAFAF requested clarification of Ambac's June 9 request for documents relevant to the HTA Assets Committee responsible for developing a list of HTA properties for potential sale and advised that AAFAF consulted with HTA and was informed that no such committee exists.  Ambac clarified that the August 2019 Report[2] references an

---

[2] "August 2019 Report" refers to the *Proposed PRHTA Reporting Templates by the FOMB*, published in September 2019, summarizing the progress made by HTA in executing its FY20 certified fiscal plan for the month of August 2019 and available at http://www.aafaf.pr.gov/assets/prhta-reporting-package-september-2019.pdf.

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 18, 2020

"internal working team" responsible for preparing an inventory of such properties (August 2019 Report at 39).

With regard to Ambac's request for materials related to the processes used to identify the 23 properties in the August 2019 Report, AAFAF advised that it produced the relevant regulation on May 20, 2020 and offered to identify that regulation by Bates number in its forthcoming response to the June 9 Letter.  AAFAF further advised that is has been informed that no additional materials related to the process used to identify these properties are available.  Ambac noted that produced documents have indicated that members of the public inquired about purchasing some of the properties identified in the August 2019 Report and asked whether the identification and sale of those properties were driven by requests from the public.  AAFAF advised that its current understanding is that the process was in fact driven by requests from the public, but it will continue to investigate this issue and provide confirmation in its forthcoming response to the June 9 Letter.

AAFAF also requested clarification regarding Ambac's June 9 request for documents sufficient to identify the individual or entity that received consideration in connection with the sale of the 23 properties in the August 2019 Report.  Ambac advised that, for those properties that have been sold, Ambac seeks information regarding the buyer, seller, sale price, and recipient of the proceeds of the sale.  AAFAF advised that the list it produced contains some of this information and it will identify that information by Bates number in its forthcoming response to the June 9 Letter.  AAFAF also agreed to investigate whether additional documents responsive to this request are available.

### (3)  Category No. 3: Real Property Valuation and Disposal Committee (the "__Committee__")

- *Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*
- *Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*

**Transactions Approved.**  During the June 10 Meet and Confer, AAFAF advised that it would investigate whether two produced PDF files identifying transactions approved by the Committee are available in Excel format or other native file.  In response to Ambac's June 9 inquiry as to whether AAFAF's production of materials in response to this request is complete, AAFAF advised that it has produced all resolutions related to approved transactions.  However, AAFAF agreed to update its production as needed due to the passage of time.

**Transactions Under Consideration.**  In response to Ambac's request for documents related to strategies, proposals, and transactions currently under consideration by the Committee, AAFAF advised that the Committee's process is governed by the statutes and regulations produced to date

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 18, 2020

rather than internal procedures.  AAFAF offered to identify the produced statutes and regulations by Bates number in its forthcoming response to the June 9 Letter.  AAFAF further advised that it has not yet identified any internal work product associated with the transactions under consideration beyond the resolutions produced to date but will continue to investigate whether additional materials exist.  Additionally, AAFAF reiterated that it objects to conducting custodian and term searches of emails in response to this request but would investigate whether additional responsive materials are available in centralized files.  Ambac reiterated that it reserves all rights to pursue additional discovery in connection with this request but appreciates AAFAF's efforts to identify additional responsive materials.

### *(4) Category No. 4: Municipal Revenue Collection Center ("CRIM")*

- *A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which of those properties were subsequently sold by the Commonwealth (and for how much).*
- *All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*

During the June 10 Meet and Confer, AAFAF advised that it has determined that there is no pre-existing list identifying all properties that have been foreclosed upon, but it is working with CRIM to compile such a list based on existing records and files.  AAFAF further advised that its efforts to collect this information have been hindered due to restrictions in place due to the COVID-19 pandemic.

*                *                *

The parties discussed timing for AAFAF's responses on certain pending meet-and-confer questions.  AAFAF advised that restrictions in place due to the COVID-19 pandemic are still impeding AAFAF's efforts to identify potentially responsive information because the Commonwealth's employees still have not been able to access files in their offices.  Ambac explained that it understands and is sympathetic to the challenges that the COVID-19 pandemic has presented and requested an update from AAFAF when Commonwealth employees are able to return to work or otherwise obtain access to hard copy records that are not available remotely.

<u>Cash Rule 2004 Motion</u>

### *(1) Category Nos. 1 and 2: Presentation and Investigation Documents*

- *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 18, 2020

- *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

**Underlying Factual Source Materials and Raw Data.**  In response to Ambac's request for an update regarding the Oversight Board's production of the factual source materials and raw data underlying the October 2, 2019 presentations, the Oversight Board advised that it began producing such materials on May 29, 2020, intends to make an additional production by no later than early next week,[3] and will continue to produce responsive materials on a rolling basis thereafter.  The Oversight Board advised that it currently expects to complete its production by the end of July, subject to any issues that arise in the course of the Oversight Board's review of potentially responsive materials.

**Dynamic Charts and Tables.**  During the June 10 Meet and Confer, the Oversight Board requested clarification regarding Ambac's request for Excel or dynamic versions of certain charts and tables in the Cash Restriction Analysis dated October 2, 2019 and the Duff & Phelps Report dated March 12, 2019.  Ambac advised that it has been unable to reproduce those charts and tables using the Master Database and requires the computer files (Excel spreadsheets or otherwise) used to create these charts and tables.  The Oversight Board agreed to investigate whether such computer files exist.

The Oversight Board requested a follow-up conversation, and on June 16, 2020, the Parties briefly discussed this issue further.  The Oversight Board advised that its position is that the Excel spreadsheets or other dynamic versions of the charts and tables in the Cash Restriction Analysis and Duff & Phelps Report are work product and thus cannot be disclosed.  Ambac noted that the documents at issue have been disclosed publicly, so any work product protection that might have applied has been waived.  Following a discussion, the Oversight Board agreed to confer internally regarding this request.

Ambac notes that it has made two related requests regarding the Cash Restriction Analysis and the Duff & Phelps report:  (1) process documents, meaning documents and communications reflecting the processes, assumptions, and methodologies used to classify accounts as restricted or unrestricted; and (2) the underlying calculations, meaning Excel or dynamic versions of the charts and tables themselves that contain the mechanical calculations underlying the amounts included in those charts and tables.  With regard to the first request, for process documents, the Oversight Board previously reported that it has no responsive documents.  Ltr. from J. Hughes, Esq. to E. McKeen, Esq. and M. Mervis, Esq., dated Feb. 24, 2020, at 4 ("Movants inquired whether any explanatory memoranda, instructions, or other documents exist that may shed light on those designations [in the Cash Restriction Analysis], and the Oversight Board indicated that it believed no such documents are available for production but would confirm."); Ltr. from E McKeen, Esq. and M. Mervis, Esq. to J. Hughes, Esq., *et al.*, dated Feb. 28, 2020, at 2 ("Upon reasonable inquiry,

---

[3] An additional production of factual source materials and raw data underlying the October 2, 2019 presentations was made by the Oversight Board on June 12, 2020.  Ambac's review and analysis of these documents is ongoing.

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 18, 2020

we do not believe there are any documents, other than the CRA itself, that explain the restriction designations in those line items."). Ambac's understanding from the parties' June 16, 2020, discussion is that there are responsive documents, but they are the subject of a "work product" objection. Please confirm that this is the case. Ambac reserves its rights with respect to these process documents.

With respect to underlying calculations, Ambac does not perceive any basis on which those could be the subject of a work product objection, given that the Oversight Board voluntarily chose to waive any work product protection by reporting the results of those calculations in the Cash Restriction Analysis and the Duff & Phelps report. It is well-settled that privilege cannot be used as a sword and a shield, and the rule of completeness would require that the Board, having waived any work product protection as to various numbers included in these reports, cannot assert such protection to preclude discovery into the calculations and analysis that supported the publicly reported numbers. *Cf. Town of Grafton v. Pulte Homes of New Eng., LLC*, No. 12–10524–TSH, 2014 WL 2155035, at *4–5 (D. Mass. May 21, 2014) (holding plaintiff's calculations used to produce the results of a published report were not protected from disclosure as work product, given that plaintiff sought to introduce the report into evidence and that it would be an "issue[] of fundamental fairness" to allow plaintiff to introduce the report into evidence without allowing defendants an opportunity to adequately test the report's conclusion and findings); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 72 (D.P.R. 2018) (Dein, Mag. J.) (holding movants entitled to seek discovery to be used at the plan confirmation stage of "all information that bears on how the Fiscal Plan was developed, ***what assumptions, projections and data were used, and what assumptions, projections and data were rejected.***" (emphasis added)), *remanded on other grounds*, No. 17 BK 3283-LTS, 2018 WL 9708897 (D.P.R. Apr. 24, 2018).

### (2) Category No. 3: Commonwealth's Necessary Operating Expenses

- *All documents related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.*

During the June 10 Meet and Confer, Ambac reiterated that it would draft a stipulation memorializing the representations that the Oversight Board has made in the course of the meet-and-confer process, reserving all rights to follow up with respect to these discovery requests.

### (3) Category No. 4: Document Key

- *A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (*i.e., *Bates numbers).*

During the June 10 Meet and Confer, the Oversight Board advised that its production of materials related to the October 2, 2019 presentations is organized by account number, which it hopes will alleviate the need for a separate "key." The Oversight Board indicated that it is willing to meet and confer further on this request as appropriate.

Elizabeth L. McKeen, Ashley Pavel, Margaret A. Dale, Julia D. Alonzo
June 18, 2020

*       *       *

On March 20, 2020, the Oversight Board produced documents bearing Bates numbers Ambac_Cash_2004_0000002 through Ambac_Cash_2004 0009089.  However, no document bearing Bates number Ambac_Cash_2004_0000001 has been produced.  Ambac requests clarification as to whether a document bearing Bates number Ambac_Cash_2004_0000001 exists and, if so, production of that document.

Rule 30(b)(6) Depositions

During the June 10 Meet and Confer, Ambac noted that it remains willing to wait until additional documents are produced before seeking to schedule a Rule 30(b)(6) Deposition, reserving its rights with respect to Rule 30(b)(6) deposition testimony.

Very truly yours,


/s/ *John J. Hughes, III*
John J. Hughes, III


cc:    Grant Mainland
       Atara Miller
       Laura Stafford
       Martin A. Sosland
       Robert S. Berezin
       William Natbony
       Nicholas A. Bassett
       John E. Mudd