# **EXHIBIT C**

**O'Melveny**

O'Melveny & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, CA 92660-6429

T: +1 949 823 6900
F: +1 949 823 6994
omm.com

June 19, 2020

<u>**VIA E-MAIL**</u>

John Hughes, III
Atara Miller
Grant Mainland
MILBANK LLP
55 Hudson Yards
New York, New York 10001

Re: <u>*In re Fin. Oversight & Mgmt. Bd., No. 17-BK-3283-LTS –Commonwealth Assets Rule 2004 Requests*</u>

Counsel:

I write in response to John Hughes III's June 9, 2020 letter ("<u>June 9 Letter</u>") and June 18, 2020 letter ("<u>June 18 Letter</u>") written on behalf of Ambac Assurance Corporation ("<u>Ambac</u>") and to follow up on the parties' June 10, 2020 meet and confer regarding the document requests in Ambac's Commonwealth Assets Rule 2004 Motion [ECF No. 9022] (the "<u>Assets 2004 Motion</u>"). AAFAF's responses are below.

**I.** <u>**Category 1 (Assets)**</u>

- "Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities"
- "A list of the Commonwealth's current assets"

<u>Inventory of Real Property Assets</u>

The June 9 Letter requests an update following the May 11, 2020 meet and confer regarding AAFAF's efforts to provide information regarding the Commonwealth's official inventory of real property assets ("<u>Official Inventory</u>").

On May 15, 2020, AAFAF produced information relevant to the Official Inventory that it referred to in the May 11, 2020 meet and confer.[1] AAFAF is continuing to investigate what other materials may be available that may bear on the completeness or "as of" date of various entities' submissions to the Official Inventory. As discussed during the parties' June 10 meet and confer, and as referenced in the June 18 Letter, AAFAF will also investigate whether anyone with relevant knowledge could give an approximate "as of" date in the event that documents are

---

[1] ASSETS_2004_000291, ASSETS_2004_000601 - ASSETS_2004_000628.

O'Melveny

not available.

*Prioritized Commonwealth Assets*

AAFAF continues to object to Ambac's request for valuation, alienation, and encumbrance documents for the properties on Ambac's March 16, 2020 list because it is overbroad and unduly burdensome, but AAFAF is nonetheless working to determine what information is readily accessible. AAFAF has located the below-listed public registries as potentially containing responsive information regarding encumbrances.

- Comptroller Registry (https://consultacontratos.ocpr.gov.pr).
- Real Property Registry (https://karibe.ridpr.pr.gov/client/#login).
- CRIM Property Registry (https://catastro.crimpr.net/cdprpc/).

AAFAF directs Ambac to these repositories consistent with AAFAF's agreement to share any publicly available repositories it locates. AAFAF is investigating what readily accessible materials may exist regarding encumbrances on the properties listed in your letter.

AAFAF is in contact with the relevant instrumentalities and has not located remotely any property valuations for properties on your list but efforts are still ongoing.

*AAFAF Assets Review*

The June 9 Letter requests production of any documents submitted in response to the November 2019 letter issued to all instrumentalities on behalf of CEDBI requesting information about their real estate holdings.[2] As discussed at the June 10 meet and confer, and as referenced in the June 18 Letter, AAFAF is currently working to collect any responsive materials that are accessible remotely.

*HTA Assets Committee*

The June 9 Letter requests for the first time documents regarding "an HTA committee [that] has been developing a list of properties for potential sale," including "any policies or procedures concerning the identification or disposition of such properties." June 9 Letter at 2. During our June 10 meet and confer, Ambac clarified that this request was included in Category 1 in error and was intended to be included as part of the "process" materials in Category 2, which are discussed below.

  II.  **Category 2 (23 Properties in August 2019 HTA Report)**

- "*A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*"

---

[2] ASSETS_2004_0000601.

2

O'Melveny

- "*Documents sufficient to show*:
  - *how those properties were identified for sale or potential sale; and*
  - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*"

With respect to the first part of this request, AAFAF produced the list of properties on April 22, 2020, along with materials relating to those proposed transactions.[3] The June 9 Letter requests for the first time that AAFAF produce documents sufficient to "identify the individual or entity that received consideration for the sale of the properties identified." June 9 Letter at 3. As discussed at the June 10, 2020 meet and confer, the list AAFAF produced indicates that many of the properties have not yet been sold, and thus there was no "consideration" exchanged. Moreover, AAFAF's production did identify that HTA is the party that would be selling the properties.[4] Furthermore, sales contracts and similar documents were included with respect to 5 of the 8 properties listed as sold.[5] AAFAF further directs Ambac's attention to the contract registry of the Puerto Rico Comptroller, where the sales contracts are publicly available:

- https://consultacontratos.ocpr.gov.pr/.

For Ambac's convenience, AAFAF will produce the contracts corresponding to the properties for which transactions have completed.

With respect to "process" materials, AAFAF has produced the HTA regulation that sets forth the processes by which HTA properties are selected for sale.[6] Aside from that regulation, there were not additional policy or procedure documents for selecting the 23 properties, nor are there applicable policy or procedure documents for the HTA "internal working team" referenced in the June 18 Letter. Rather, interested members of the public filled out the application (which is attached to the regulation) and the process then proceeded as provided in the regulation. These property sales are part of the fiscal plan initiate to generate ancillary revenues. HTA's Property Administration Office handles negotiation of potential real property transactions, which ultimately need to be approved by CEDBI.

### III. Category 3 (Real Property Valuation and Disposal Committee)

- "*Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*"

---

[3] ASSETS_2004_0000011 to ASSETS_2004_0000290, ASSETS_2004_0000629.
[4] ASSETS_2004_0000239.
[5] ASSETS_2004_0000011, ASSETS_2004_0000113, ASSETS_2004_0000138, ASSETS_2004_0000168, ASSETS_2004_0000205.
[6] ASSETS_2004_0000629.

Case:17-03283-LTS Doc#:13723-3 Filed:07/17/20 Entered:07/17/20 21:37:01 Desc: Exhibit C - AAFAFs letter to Ambac June 19 2020 Page 5 of 6

O'Melveny

- "*Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*"

*Transactions Approved*

The June 9 Letter asks whether AAFAF intends to make further productions of documents listing transactions approved by CEDBI and requests that the lists already produced be made available in Excel format or other native file, if available.

AAFAF has produced the approved transaction lists it received from CEDBI but will investigate whether updated lists are available. AAFAF will also investigate whether the PDFs that AAFAF produced are available in Excel or other native format.

*Transactions Under Consideration*

The June 9 letter requests "confirmation that the resolutions produced in the May 15 Production constitute all resolutions from Committee proceedings, or if AAFAF anticipates that it will continue producing documents responsive to this portion of Assets Category No. 3." June 9 Letter at 4. AAFAF never agreed to produce resolutions from "all . . . Committee proceedings." Rather, as the June 18 Letter references, AAFAF collected and provided the resolutions through which CEDBI approved purchases, which were responsive to Ambac's request for documents sufficient to identify approved transactions. AAFAF is working to determine what additional resolutions regarding approved transactions are available.

AAFAF reiterates its objection that Ambac's requests for transactions under evaluation are beyond the scope of permissible discovery. Nevertheless, in the spirit of compromise, AAFAF is continuing to investigate what written materials may exist concerning transactions under consideration.

*Process Materials, Guidelines, and Regulations*

AAFAF produced the CEDBI statute and current CEDBI regulation,[7] and as noted, produced relevant CEDBI resolutions.[8] Earlier CEDBI regulations are available on AAFAF's website,[9] and AAFAF will produce those as well. AAFAF will also produce the checklist and application regarding school buildings in disuse available on the website.[10] After conferring with the relevant personnel at CEDBI, AAFAF has not located any other "process materials" or "guidelines."

---

[7] ASSETS_2004_0000291 - ASSETS_2004_0000402.
[8] ASSETS_2004_0000403 - ASSETS_2004_0000540.
[9] http://aafaf.pr.gov/administrative-documents.html#committeedocs.
[10] *Id.*

O'Melveny

IV. **Category 4 (CRIM)**

- "*A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which of those properties were subsequently sold by the Commonwealth (and for how much).*"
- "*All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*"

AAFAF is continuing to investigate what documents exist that are responsive to this request, and continues to object to these requests as irrelevant and beyond the scope of permissible 2004 discovery. At this time, AAFAF has not located any centralized list of CRIM foreclosures, but AAFAF has been working with CRIM to determine if such a list could be complied based on readily accessible records and files. AAFAF, however, has not agreed to perform this undertaking or produce any resulting work product, and reserves all rights in that respect.

V. **30(b)(6) Deposition**

AAFAF understands that Ambac is reserving all rights with respect to its request for 30(b)(6) depositions. AAFAF reiterates its position that proceeding with initial efforts to obtain information through correspondence, rather than through a 30(b)(6) deposition, would be more efficient and more constructive.

VI. **Timetable to Determine Responsive Materials**

AAFAF is working diligently to collect responsive information under challenging circumstances. As we have discussed, in light of the ongoing COVID-19 pandemic, government employees' access to records has been and continues to be limited. The relevant employees continue to work remotely and therefore have access only to those resources that are available remotely. Although – in connection with Executive Order 2020-44 – only employees in positions of trust could begin working at their agencies on June 16, 2020, control measures are still being implemented. Telework is recommended until the necessary measures are put in place and tests are performed to the employees.

AAFAF will continue to collect as much responsive material as it can expeditiously, but given ongoing restrictions, it cannot commit to determining what documents are responsive by June 30, 2020. In addition, there is no case-driven urgency for the materials Ambac seeks. No plan of adjustment hearing is scheduled and there is not currently any timetable for the Oversight Board's submission of an amended plan of adjustment. AAFAF will provide an update on anticipated timing after the relevant personnel regain regular access to their offices. We appreciate your flexibility.

Sincerely,

/s/ *Elizabeth L. McKeen*

Elizabeth L. McKeen