# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ x
                                                  :
In re:                                            :
                                                  :
THE FINANCIAL OVERSIGHT AND                       :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                 :    Title III
                                                  :
          as representative of                    :    Case No. 17-BK-3283 (LTS)
                                                  :
THE COMMONWEALTH OF PUERTO RICO, et al.,          :    (Jointly Administered)
                                                  :
                                                  :
          Debtors.[1]                             :
------------------------------------------------------------------------ x
```

## URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO LIFT STAY TO ALLOW COMMITTEE TO PURSUE OBJECTION TO GO PRIORITY

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 7

JURISDICTION AND VENUE ............................................................................. 11

RELIEF REQUESTED ......................................................................................... 11

ARGUMENT ....................................................................................................... 12

A.     Allowing GO Priority Objection to Move Forward at This Time Will Not Cause
       Hardship to Commonwealth ..................................................................... 12

B.     Continuing Stay of GO Priority Objection Will Prejudice General Unsecured
       Creditors ................................................................................................. 16

C.     Continuing Stay of GO Priority Objection Does Not Represent Most Economical
       Use of Party and Judicial Resources ........................................................ 18

CONCLUSION .................................................................................................... 18

NOTICE .............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brief of Defendants-Appellees, ACP Master, LTD. v. Puerto Rico*,
No. 18-1108 (1st Cir. Jul. 2, 2018) ....................................................13, 14

*Brief of Defendants-Appellees, Peaje Inves. LLC v. The Fin. Oversight &Mgmt.
Bd. for P.R.*,
No. 17-2165 (1st Cir. Apr. 23, 2018) ..........................................................14

*Landis, v. N. American Co.*,
299 U.S. 248 (1936) ....................................................................................15

*Villafañe-Colon v. B Open Enterprises, Inc.*,
932 F.Supp.2d 274 (D.P.R. 2013) ..............................................................12

**Statutes**

PROMESA
§ 306(a) ................................................................................................1, 11
§ 307(a) ................................................................................................1, 11
§ 310...........................................................................................................1
§ 4............................................................................................................14

Bankruptcy Code
§ 501...........................................................................................................5
§ 502................................................................................................1, 5, 15
§ 507(a)(2) Title III ............................................................................*passim*
§ 704(a) ......................................................................................................5
§ 1106(a) ....................................................................................................5
§ 1106(a)(1) ......................................................................................5, 15

Bankruptcy Rule
3007...........................................................................................................1
3013...........................................................................................................1

Fed. R. Civ. P.
12(b)(1) and 12(b)(6) .................................................................................13

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby files this urgent motion (the "Motion") requesting entry of an order, substantially in the form attached hereto as **Exhibit A**, modifying the *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [Docket No. 12189] (the "Stay Order") so as to allow the Committee to pursue the *Omnibus Objection of the Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors* [Docket No. 10638] (the "GO Priority Objection").[3]  In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.     On March 10, 2020, this Court entered the Stay Order staying, among other things, all pending objections to claims based on bonds issued or guaranteed by the Commonwealth (the "GO Bonds"), including the Committee's GO Priority Objection, pending the Court's decision regarding confirmation of the Oversight Board's proposed *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 11946] (the "Plan of Adjustment").  As the Court made clear at the March 3, 2020 omnibus hearing, the fundamental premise of the stay was that the Oversight Board had reached a settlement with GO bondholders to resolve these objections through the Plan of Adjustment and that "it is not

---

[2]     The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3]     For the avoidance of doubt, the Committee is not seeking, at this time, to modify the stay as to any of the other objections and adversary proceedings related to the GO Bonds.  The Committee is only seeking to move forward with its GO Priority Objection which seeks to resolve a single, discrete legal issue, namely whether the alleged constitutional priority of GO Bonds applies in Title III.

prudent to continue litigating GO-PBA issues that will be resolved if the Plan of adjustment is ultimately confirmed."[4]  Now, more than four months after entry of the Stay Order, it is abundantly clear that the premise of the Stay Order, namely the settlement of certain GO-PBA issues through the proposed Plan of Adjustment, has evaporated.  Accordingly, and as the Committee had previewed in the statement it filed in response to the Oversight Board's prior status report [Docket No. 13167], the Committee submits that the stay should now be lifted to allow the Committee to move forward with its GO Priority Objection.

2.      The new economic reality post-COVID-19 is that the Commonwealth cannot afford to distribute nearly $14 billion in value to holders of GO Bonds as contemplated under the proposed Plan of Adjustment on the basis of a dubious constitutional GO priority.  This observation is not mere conjecture, but is grounded in the Oversight Board's own assessment of the Commonwealth's fiscal condition, as detailed in the Oversight Board's recently certified fiscal plan for the Commonwealth.  In particular, compared to the certified fiscal plan in effect at the time the Plan of Adjustment was filed (*i.e.*, the fiscal plan, dated May 9, 2019), total cumulative surplus over the next 20 years[5] (*i.e.*, fiscal years 2020 through 2039) before debt service has decreased ***from a surplus of approximately*** <u>***$22.3 billion***</u> ***(in nominal dollars) to a deficit of approximately*** <u>***$49 million***</u> ***(in nominal dollars)***.[6]  Given this new economic reality, the Oversight Board's plan support agreement with the GO bondholders, as implemented in the proposed Plan of Adjustment, has now been reduced to a zombie: even though it may not have technically been terminated (yet), it is practically dead.

---

[4]   March 4, 2020 H'g Tr. at 215:2-4.

[5]   The term of the new GO bonds to be issued under the Plan of Adjustment is 20 years.

[6]   To be clear, the Committee is ***not*** adopting the revenue and expense projections in the fiscal plan certified on May 27, 2020.  The Committee solely references the projections in fiscal plan because they represent the Oversight Board's position regarding the Commonwealth's fiscal condition.

3.     While the Oversight Board has steadfastly avoided admitting that the Plan of

Adjustment, as currently structured, has no future,[7] it has acknowledged in its May 1, 2020

Status Report that:

> [b]efore the Debtors' plan of adjustment and disclosure statement
> process can move forward, the Oversight Board must assess the
> pandemic's impact and the extremely difficult recovery ahead for
> Puerto Rico.  As part of that process, and as noted above, the
> Oversight Board anticipates completing the process of revising the
> Commonwealth fiscal plan by the end of May, 2020.  **When that is
> done, discussions with creditors can be informed by the latest
> projections.  Accordingly, the Oversight Board is unprepared at this
> time to propose a schedule for the Debtors' plan and disclosure
> statement process** . . .[8]

And more recently, in its July 15, 2020 Status Report, the Oversight Board stated that:

> [h]aving completed the process of certifying the Commonwealth fiscal
> plan and corresponding budget, the Oversight Board has resumed
> discussions with AAFAF concerning the terms of a plan of adjustment
> and what, if any, modifications or amendments need to be proposed to
> the plan of adjustment and disclosure statement filed with the Court on
> February 28, 2020.  The Oversight Board anticipates that, in the
> coming weeks, **the Oversight Board and AAFAF shall entertain
> discussions with creditors** (those party to the Plan Support Agreement,
> as amended on March 13, 2020 and April 1, 2020, as well as other
> parties in interest), with the guidance of the mediation team led by the

---

[7]     At the Oversight Board's May 27, 2020 public meeting, the Oversight Board's Executive Director, Natalie
Jaresko, repeatedly declined to answer questions regarding the impact of the new fiscal plan on a revised plan of
adjustment.  *See Oversight Board Unanimously Certifies 2020 Commonwealth Fiscal Plan*, Reorg Research
(May 27, 2020, 12:28 PM), attached here to as **Exhibit B** (reporting that Jaresko "continued to decline to
address the impact of the [fiscal plan] projections on the proposed commonwealth plan of adjustment");
*Oversight Board Certifies 2020 Fiscal Plan with Sharply Narrower Projected Surplus, Discusses Importance of
Title III Exit*, Reorg Research (May 27, 2020, 4:51 PM), attached here to as **Exhibit C** (reporting that Jaresko
"declined to look ahead at potential impacts on the debt restructuring").  Indeed, responding to the question of
whether, given the newly certified fiscal plan, a new plan of adjustment would be filed, Jaresko stated that "we
won't be answering any questions about the plan of adjustment," disclosing only that "we will, of course, on the
basis of this new fiscal plan, work with the government, the mediators, and the creditors to determine next
steps."  Video of May 27, 2020 Public Hearing, Fin. Oversight & Mgmt. Bd. for P.R., segment beginning at
2:02, available at  https://oversightboard.pr.gov/live-oversight-board/.  Shortly thereafter, responding to the
question of whether recoveries of general obligation bondholders would be lowered or stay the same in a future
plan of adjustment, Jaresko again declined to answer, stating "we're not prepared to answer questions about a
future plan of adjustment at this time."  *Id.* segment beginning at 2:05.

[8]     *Status Report of the Financial Oversight and Management Board for Puerto Rico Regarding the COVID-19
Pandemic and Proposed Disclosure Statement Schedule*, dated May 1, 2020 [Docket No. 13018] (the "May 1,
2020 Status Report")     13 (emphasis added).

Honorable Judge Barbara J. Houser, ***to address the new reality created
by the COVID-19 pandemic***.[9]

4.     In addition, individual members of the Oversight Board have publicly stated that

the Plan of Adjustment will require substantial revisions.  For example, the Chair of the

Oversight Board, Mr. José B. Carrión, stated in late March 2020 that, in regard to the proposed

plan of adjustment, the "logical implication [of recent events] is that the Puerto Rico we live in,

and its capacity to pay debt, is not the same as it was a week ago," that the plan of adjustment

would not move forward as "currently structured," and that a majority of the Oversight Board

would "share" his understanding that "everything has to be re-evaluated including the debt cut

and the pension issue."[10]

5.     For all these reasons, there can be little argument that the current settlement with

the GO bondholders is no longer viable and that, accordingly, the fundamental premise

underlying the Stay Order is gone.[11]  This remains true notwithstanding the Oversight Board's

desire to restart discussions with GO bondholders in the coming weeks in the hope of reaching a

new settlement.  Such hopes and desires do not form a legal basis to bar the Committee

indefinitely from pursuing its GO Priority Objection.  If that were the case, then every debtor

would surely request at the outset of a bankruptcy case that all plan-related matters be stayed

pending confirmation of a plan.  Nor should the Court condone the Oversight Board's effort to

transform what was originally a stay of limited duration pending confirmation of the Plan of

---

[9]     *Status Report of the Financial Oversight and Management Board for Puerto Rico Regarding the COVID-19
Pandemic and Proposed Disclosure Statement Schedule*, dated July 15, 2020 [Docket No. 13660] (the "July 15,
2020 Status Report")    17 (emphases added).

[10]    *See Oversight Board Stresses Covid-19 Focus as Carrión Foresees Changes to Plan of Adjustment as
'Currently Structured,' Reorg Research*, March 24, 2020, a copy of which is attached hereto as **Exhibit D**.  The
Committee recognizes that, since Mr. Carrion's reported statements, Natalie Jaresko is reported to have said that
Mr. Carrion was offering his personal impressions on the matter.

[11]    In any event, it is the Oversight Board's burden, and not the Committee's, to demonstrate that it intends to
implement the existing settlement with the GO bondholders through the Plan of Adjustment.  If that is, in fact,
the Oversight Board's intention (which the Committee sincerely doubts), the Oversight Board should say so.

Adjustment (which was expected to occur in the fall of this year) into a stay of unlimited

duration until the Oversight Board reaches a new settlement with GO bondholders at some

unknowable point in the future.[12]

6.      To be clear, the Committee is not trying to rush the Oversight Board into agreeing

to an imprudent modified settlement.  The Oversight Board should take the appropriate time to

explore and evaluate the potential paths forward—which would also include further analysis of

the Commonwealth's economic outlook.  However, the Oversight Board should not be allowed

to convert a defunct settlement with GO bondholders into a shield to bar the Committee from

exercising its right to object to the claims of GO bondholders.  In fact, section 502 of the

Bankruptcy Court provides that every party in interest, which includes, of course, the

Committee, has the right to object to claims.[13]  And while section 1106(a)(1) of the Bankruptcy

Code (through its incorporation by reference of section 704(a) of the Bankruptcy Code) may

limit that right in a chapter 11 case to the debtor in possession or a trustee,[14] section 1106(a) is

**not** incorporated into Title III of PROMESA.  In other words, Congress chose not to confer upon

the Oversight Board the exclusive right to object to claims, and the Oversight Board should not

---

[12]   In that regard, the Committee also seriously questions whether a new settlement is even realistic over the near to
medium term, given the upcoming elections in Puerto Rico and the anticipated turnover in the Oversight Board
membership.  In particular, on July 1, 2020, the Oversight Board announced that (a) its Chair, Mr. José B.
Carrión, will not be available for re-nomination for a second term as member of the Oversight Board and that
Mr. Carrión's last day on the job will be October 5, 2020, or when the President and Congress appoint a
successor, whichever happens first and (b) member Carlos M. García will not be available to serve a second
term and will only remain on the Oversight Board until August 31, 2020.

[13]   *See* 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed
allowed, unless a ***party in interest*** . . . objects.") (emphasis added).

[14]   *See* 11 U.S.C. § 1106(a)(1) (requiring a trustee to perform the duties specified in, among others, paragraph (5)
of section 704(a), which require that the trustee "if a purpose would be served, examine proofs of claims and
object to the allowance of any claim that is improper").

be allowed to accomplish indirectly (*i.e.*, barring the Committee from pursuing its objection to the alleged GO priority) what Title III of PROMESA does not allow it to do directly.

7.      Nor would litigating the GO Priority Objection at this time jeopardize the Commonwealth's emergence from Title III.  Indeed, given the narrow scope of the objection, it may not even delay emergence, as the current pause in the plan process could be utilized to judicially resolve the objection.  Moreover, a ruling that the alleged GO priority is preempted by Title III could provide the much-needed clarity for building a broad coalition of creditor support—beyond Wall Street hedge funds that purchased GO bonds in the secondary market at steep discounts—for a new plan of adjustment that provides equitable treatment for all unsecured creditors.  At a minimum, allowing the GO Priority Objection to proceed at this time would force GO bondholders to face the reality that pressing forward with the current Plan of Adjustment is simply not a feasible option for the Commonwealth.

8.      Finally, and contrary to the suggestion of Oversight Board's counsel at the June 3 omnibus hearing, the COVID-19 pandemic does not control the issue here (*i.e.*, whether the stay should continue indefinitely).[15]  In fact, the Oversight Board has already had more than three years to seek a judicial resolution of the GO priority issue, but never filed an objection in that regard.  The Oversight Board should not be heard now to complain that the Court cannot deal with the GO Priority Objection because of the effects of the COVID-19 pandemic.

---

[15]    At the June 3 omnibus hearing, counsel for the Oversight Board noted that "[the Board] does not believe that COVID-19 is a legally cognizable ground to provide the Committee control over a claim objection." June 3, 2020 H'g Tr. at 17:15-17

9.      For all these reasons, and as further detailed below, the Committee hereby

requests, in accordance with the Stay Order,[16] that the Court modify the stay so as to allow the

Committee to proceed with its GO Priority Objection.

## BACKGROUND

10.      On February 3, 2020, the Committee filed its GO Priority Objection, which seeks

a ruling that GO Bond claims are not entitled to priority over general unsecured claims because

any payment priority under the Puerto Rico Constitution in favor of GO Bonds is preempted by

Title III of PROMESA.

11.      On February 9, 2020, the Oversight Board entered into the Plan Support

Agreement (the "GO Plan Support Agreement") with certain holders of GO Bonds.  Under the

GO Plan Support Agreement, holders of GO Bond would receive **96.4%** of the total

consideration to be distributed under a Commonwealth plan of adjustment (not counting retiree

benefits), *i.e.*, $13.95 billion out of $14.48 billion.[17]

12.      On February 28, 2020, the Oversight Board filed its proposed Plan of Adjustment

and the related disclosure statement [Docket No. 11947] (the "Disclosure Statement").  The Plan

of Adjustment provides, among other things, the settlements set forth in the Plan Support

Agreement, dated as of February 9, 2020 (the "GO Bondholder PSA"), between the Oversight

Board and certain holders of GO Bonds.  The Plan of Adjustment effectively treats GO Bond

claims as having priority over other unsecured creditors.  According to the Oversight Board's

estimates, the Plan of Adjustment would provide holders of GO Bond claims with a recovery

---

[16]    The Stay Order expressly provides that "[p]arties may seek relief from any stay imposed by [the Stay Order]
upon a showing of good cause."  Stay Order    5.

[17]    *See* Commonwealth of Puerto Rico Title III Case: Plan Support Agreement, dated February 9, 2020 (the
"Oversight Board Presentation") at 11.  A copy of the Oversight Board Presentation is attached hereto as
**Exhibit E**.

between 65.4% and 77.6% (depending on the year of issuance).[18]  In contrast, general unsecured

creditors would receive a recovery of approximately 3.9%.[19]

13.      On March 10, 2020, the Court entered the Stay Order, staying contested matters

relating to validity, priority, and secured status of GO Bond claims, including the Committee's

GO Priority Objection, pending a decision on confirmation of the Plan of Adjustment.  As the

Court explained on the record at the March 3, 2020 omnibus hearing:

> [T]he Amended Plan of Adjustment is the means that the Oversight
> Board has chosen to propose to resolve the Title III cases of the
> Commonwealth, ERS and PBA. Whether this proposed amended plan
> and the settlement of GO-PBA issues that are embedded in it will pass
> scrutiny is an issue for another day.  ***But it is not prudent to continue
> litigating GO-PBA issues that will be resolved if the Plan of
> adjustment is ultimately confirmed.***
>
> The Court further finds that the hardship resulting from continuing
> litigation is significant.  There is only one proposal on the table that
> would potentially provide a means by which the Commonwealth, PBA
> and ERS can adjust their debts and emerge from the Title III process.
> ***That proposal rests on settlement of certain of the GO-PBA issues.
> Requiring resolution of those issues judicially would likely disrupt the
> deal and send parties back to the drawing board***, potentially placing
> the Commonwealth, PBA and ERS in a worse position than they're
> in.[20]

The Stay Order similarly provides that the stay of the GO Priority Objection (and the other

objections to the GO Bonds) "serves the interest of conservation of resources and judicial

efficiency, as it will help avoid the unnecessary litigation of issues that will be resolved if the

Amended Plan is ultimately confirmed."[21]

---

[18]   *Id.* at 14.  The Committee believes that the Oversight Board's recovery estimates for the GO Bond claims
understate the actual recovery rates (including because (a) the GO Bond claims include unmatured original
issue discount and (b) the Oversight Board's recovery estimates do not include the $400 million consent fees).

[19]   Disclosure Statement at 17.

[20]   March 4, 2020 H'g Tr. at 215:22-216:14 (emphases added).

[21]   Stay Order   1.

14.     Also on March 10, 2020, the Court granted the Oversight Board's request to set June 3 and 4, 2020 as the hearing (the "Disclosure Statement Hearing") to consider the adequacy of the information contained in the Disclosure Statement.

15.     On March 23, 2020, the Oversight Board filed its *Urgent Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and Related Deadlines* [Docket No. 12485] (the "Adjournment Motion"), requesting that the Disclosure Statement Hearing and related deadlines be adjourned because "COVID-19 and the economic effects therefrom, including from the closure of all non-essential businesses on Puerto Rico, cannot be calculated at this time and the attention of the Government is dedicated to addressing the pandemic."  Adjournment Motion ¶ 4.  The adjournment requested by the Oversight Board "should be *limited in length* and be subject to the submission of a status report . . . to apprise the Court of the relief efforts and economic situation on-island."  *Id.* ¶ 10 (emphasis added).

16.     The Court granted the Adjournment Motion on March 27, 2020 [Docket No. 12549], adjourning the Disclosure Statement Hearing without date and directing the Debtors to file a status report by May 1, 2020 to set forth the measures being taken to address the pandemic and a proposed schedule for the Disclosure Statement Hearing.

17.     On May 1, 2020, the Oversight Board filed the May 1, 2020 Status Report.  The report stated that before a plan of adjustment and disclosure statement could move forward, the Oversight Board would have to assess the pandemic's impact and that, as part of that process, the Oversight Board anticipated certifying a revised fiscal plan by the end of May, 2020.  Of particular note, the Oversight went on to say that: "[w]hen that is done, discussions with

creditors can be informed by the latest projections."[22]  The Oversight Board did not propose a

schedule for the Debtors' plan and disclosure statement process and requested that it be

permitted to provide the Court with an updated status report by July 15, 2020.  *Id.*  The Court

granted the Oversight Board's request on May 1, 2020 [Docket No. 13023].

18.     On May 18, 2020, the Committee filed a statement of position with respect to the

May 1, 2020 Status Report [Docket No. 13167], expressing its views that the May 1, 2020 Status

Report indicated that the Oversight Board had abandoned the settlement with GO bondholders,

as implemented in the Plan of Adjustment, and that, absent confirmation that the Oversight

Board intends to move forward with the Plan of Adjustment, the stay should be lifted to allow

the Committee to pursue its GO Priority Objection.

19.     On May 27, 2020, the Oversight Board certified the fiscal plan for the

Commonwealth of Puerto Rico (the "May 2020 Fiscal Plan").  The May 2020 Fiscal Plan

projects that for fiscal year 2020 through 2039 the cumulative surplus will be a ***negative $49

million*** (in nominal dollars) or ***$2.7 billion*** (in present value terms, using a 5% discount rate),

prior to any debt payments.  This is to be contrasted with the total cumulative surplus under the

prior certified fiscal plan for the Commonwealth (the "May 2019 Fiscal Plan"), *i.e.*, the fiscal

plan in effect at the time of the GO Plan Support Agreement and the filing of the Plan of

Adjustment.  The May 2019 Fiscal Plan projected a cumulative surplus of ***$22.3 billion*** (in

nominal dollars) or ***$16.7 billion*** (in present value terms, using a 5% discount rate), prior to any

debt payments.  In other words, compared to the May 2019 Fiscal Plan, the cumulative surplus

under the May 2020 Fiscal Plan has shrunk by more than ***$22 billion*** (in nominal dollars) or ***$14

billion*** (in present value terms, using a 5% discount rate).

---

[22]     May 1, 2020 Status Report    13.

20.     On July 15, 2020, the Oversight Board filed the July 15, 2020 Status Report.  The

report stated that

> [h]aving completed the process of certifying the Commonwealth fiscal
> plan and corresponding budget, the Oversight Board has resumed
> discussions with AAFAF concerning the terms of a plan of adjustment
> and what, if any, modifications or amendments need to be proposed to
> the plan of adjustment and disclosure statement filed with the Court on
> February 28, 2020.  The Oversight Board anticipates that, in the coming
> weeks, the Oversight Board and AAFAF shall entertain discussions
> with creditors (those party to the Plan Support Agreement, as amended
> on March 13, 2020 and April 1, 2020, as well as other parties in
> interest), with the guidance of the mediation team led by the Honorable
> Judge Barbara J. Houser, to address the new reality created by the
> COVID-19 pandemic.[23]

Moreover, the Oversight Board stated that it is not prepared at this time to propose a Disclosure

Statement schedule, noting that it "is mindful that the uncertainty of the cessation of the ongoing

COVID-19 pandemic, fiscal and economic determinations announced by authorities, and the

challenges presented by the severe drought conditions require that the fiscal plan's assumptions

be tested in the coming months."[24]

## JURISDICTION AND VENUE

21.     The Court has jurisdiction over this Motion pursuant to section 306(a) of

PROMESA.  Venue is proper in this district pursuant to section 307(a) of PROMESA.

## RELIEF REQUESTED

22.     The Committee respectfully requests entry of an order, substantially in the form

attached hereto as **Exhibit A**, to modify the Stay Order so as to allow the Committee to pursue

its GO Priority Objection at this time.

---

[23]   July 15, 2020 Status Report   17.

[24]   *Id.*   18.

**ARGUMENT**

23.     As detailed on the record at the March 3, 2020 omnibus hearing, the Court's

decision to stay the GO-PBA litigation matters was guided by consideration of the three elements

set forth in *Villafañe-Colon v. B Open Enterprises, Inc.*, 932 F.Supp.2d 274 (D.P.R. 2013),

namely (1) the hardship resulting from not staying a proceeding, (2) the potential prejudice to

parties if the stay is granted, and (3) the economical use of party and judicial resources.  At the

time, the Court concluded that each of these elements weighed in favor of granting a stay of the

GO-PBA issues.  In light of developments over the last four months, the Committee submits that

each of these elements now strongly weighs in favor of lifting the stay to allow the GO Priority

Objection to move forward.

**A.**     **Allowing GO Priority Objection to Move Forward at This Time Will Not Cause
Hardship to Commonwealth**

24.     The Court previously found that because the Oversight Board proposed to resolve

the GO-PBA issues through a plan settlement, "[r]equiring resolution of the GO-PBA issues

judicially would likely disrupt the deal and send parties back to the drawing board, potentially

placing the Commonwealth, PBA and ERS in a worse position than they're in."[25]  However,

allowing the GO Priority Objection to go forward at this time does not, and cannot, disrupt the

settlement with the GO bondholders because, for practical purposes, there is no longer any such

settlement.

25.     Given that, under the May 2020 Fiscal Plan, the entire projected surplus over the

next 20 years is eliminated, the Commonwealth plainly cannot afford to pay out almost $14

billion in value to GO bondholders, as the proposed Plan of Adjustment contemplates, on the

---

[25]     March 4, 2020 Hr'g Tr. at 216:10-14.

basis of the alleged GO priority.[26]  For that simple reason, the settlement with the GO

bondholders is effectively dead (even if it has not been formally terminated).  To put it

differently, the parties are already "back at the drawing board."  Under these circumstances, and

especially in light of the present pause in the plan process, litigating the GO Priority Objection

would not be a disruption—to the contrary, a judicial resolution of that objection could provide

much-needed clarity to help advance plan negotiations, and may force parties to re-adjust their

expectations.

26.     The Committee anticipates that the Oversight Board will argue that the GO

Priority Objection could threaten their efforts to renegotiate a new plan settlement with GO

bondholders while they try to salvage certain aspects of the old settlement.  The Court should

reject such an argument.  For one, the relief sought by the Committee is quite limited, namely the

ability to seek judicial resolution of a single, discrete legal issue—an issue on which,

paradoxically, the Oversight Board fully agrees with the Committee.  In fact, from the beginning

of these Title III cases, the Oversight Board has consistently argued that "nowhere in PROMESA

does it import state law priorities."[27]  To the contrary, in the words of the Oversight Board, "Title

III preempts territorial priorities."[28]  As the Oversight Board has explained, PROMESA

---

[26]   The Court should also reject any argument by the Oversight Board that the projections in the May 2020 Fiscal
Plan are somehow meaningless because the fiscal plan may need to be revised further as additional information
regarding the impact of COVID-19 pandemic becomes available.  *See* June 3 H'g Tr. at 20:5-8 (counsel to
Oversight Board noting that the certification of the May 2020 Fiscal Plan "was a certification without the Board
or anyone, for that matter, having enough data to know the crux of the ultimate impact of COVID-19 on the
economy of Puerto Rico").  The Committee acknowledges that the projections in the recently certified fiscal
plan are uncertain, but that is the case for all projections in the Oversight Board's fiscal plans.  And whether
new information could result in an improved fiscal outlook is simply unknowable at this time.  What is certain,
however, is that the Oversight Board has certified, in its best judgment, a fiscal plan for the Commonwealth,
based on all information available at this time.  That fiscal plan projects there will be no cumulative surplus (in
nominal dollars) over the next 20 years.

[27]   *See* Aug. 9, 2017 Hr'g Tr. at 165:19-20.

[28]   *See Defendant's Reply in Support of Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and
12(b)(6), ACP Master, LTD. v. Puerto Rico*, Adv. Proc. No. 17-189-LTS (Bankr. D.P.R. Nov. 13, 2017)
[Docket No. 78] at 5.

"incorporates only one priority into Title III:  Bankruptcy Code § 507(a)(2), which grants

priority to administrative claims.  No other priorities exist in Title III."[29]  Accordingly, the

Oversight Board has consistently taken the position that PROMESA's directive that the

Oversight Board respect lawful priorities when certifying a fiscal plan "does not override powers

to . . . restructure debt in PROMESA."[30]  Indeed, even after settling the GO priority issue with

the GO bondholders, the Oversight Board has continued to argue in the revenue bond litigation

that "**in** Title III . . . all nonbankruptcy law requiring full payment of prepetition obligation is

preempted by bankruptcy law,"[31] that "PROMESA Title III recognizes no priority claims other

than administrative claims provided by Bankruptcy Code section 507(a)(2),"[32] and that the

"caselaw on preemption is extensive and incontestable."[33]  In that context, the Oversight Board

has also made clear that the preemption issue is a pure legal issue that does not require any

---

[29]   *See Brief of Defendants-Appellees*, *ACP Master, LTD. v. Puerto Rico,* No. 18-1108 (1st Cir. Jul. 2, 2018).

[30]   *See Brief of Defendants-Appellees*, *Peaje Inves. LLC v. The Fin. Oversight &Mgmt. Bd. for P.R.,* No. 17-2165
(1st Cir.  Apr. 23, 2018).

[31]   *Supplemental Opposition of Commonwealth of Puerto Rico to Amended PRIFA Bondholder Motion to Lift
Automatic Stay [ECF No. 10602]* [Docket No. 10611] ¶ 2.

[32]   *Id.* ¶ 75.

[33]   *Id.* at 37, n. 39.  *See also Opposition of Financial Oversight and Management Board for Puerto Rico to Motion
of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National
Public Finance Guarantee Corporation, and Financial Guarantee Insurance Company for Relief from
Automatic Stay or, in the Alternative, Adequate Protection [ECF No. 673]* [Docket No. 10613] ¶ 87
("PROMESA does not recognize that any claim arising from an appropriation statute has priority.  Simply put,
if statutes purporting to appropriate moneys to instrumentalities are not preempted, they would block any
possible restructuring."); *Complaint Objecting to Defendants' Claims and Seeking Related Relief* [Docket No. 1
in Adv. Proc. No. 20-003] ¶¶ 156 -57, 279 ("Any Commonwealth laws purporting to recognize priority claims
other than those included in PROMESA Title III (and the incorporated Bankruptcy Code provisions) are
preempted pursuant to PROMESA section 4;" "[n]one of Defendants' claims qualify for priority under
PROMESA Title III's sole priority claim in Bankruptcy Code section 507(a)(2) for administrative expenses;"
"even if Ambac had a priority under Commonwealth law (not based on a lien), such a priority is not recognized
in PROMESA Title II"); *Complaint Objecting to Defendants' Claims and Seeking Related Relief* [Docket No. 1
in Adv. Proc. No. 20-005] ¶ 177 ("Neither PROMESA nor the Bankruptcy Code provisions incorporated into
Title III grant any of Defendants' unsecured claims any priority over general unsecured claims against the
Commonwealth.").

discovery.[34]  It strains credulity that resolving this narrow legal issue now, while the Oversight

Board is renegotiating a plan of adjustment, somehow jeopardizes discussions with creditors.

27.     More fundamentally though, it is not legally relevant that the Oversight Board

may hope to conduct these discussions without any potential "interference" from the Committee.

Whatever the merits of granting a stay of litigation in order to preserve an actual plan settlement

and allow the Oversight Board to seek confirmation thereof,[35] the mere hope that a new

settlement may be reached at some point in the future is no legal basis to bar the Committee from

seeking to protect the rights of its constituents (*i.e.*, general unsecured creditors) who, under the

proposed Plan of Adjustment, effectively would be subordinated to the GO bondholders, even

though, as the Committee is ready to demonstrate, the alleged GO priority is preempted by Title

III of PROMESA.

28.     Worse, the indefinite stay sought by the Oversight Board would effectively allow

it to accomplish indirectly what Title III of PROMESA does not allow it to do directly, namely

barring a party in interest from pursuing objections to claims.  As noted above, pursuant to

section 502 of the Bankruptcy Court, every party in interest has the right to object to claims.

And while section 1106(a)(1) of the Bankruptcy Court may limit that right in a chapter 11 case to

a debtor in possession or a trustee, that section is ***not*** incorporated into Title III of PROMESA.

---

[34]   *See Opposition of the of Financial Oversight and Management Board for Puerto Rico to Urgent Motion of
Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public
Finance Guarantee Corporation, and Financial Guarantee Insurance Company to Adjourn Hearing on Motions
for Relief From Automatic Stay and Extend Deadline for Replies in Support of Motions for Relief From
Automatic Stay* [Docket No. 10958] ¶ 8 (". . . the requirement to send the revenue streams to PRIFA, HTA, and
CCDA is inconsistent with the express priorities in Title III and the power of the Oversight Board in Title II to
determine what to do with the revenues.  Thus, the statutes are preempted.  ***No discovery can change those
basic facts***.") (emphasis added).

[35]   Even if there is a settlement, a settlement that affects the rights of third party litigants should only be granted in
rare circumstances.   Indeed, the Supreme Court recognized a long time ago that "[o]nly in rare circumstances
will a litigant in one cause be compelled to stand aside when a litigant in another settles the rules of law that
will define the rights of both."  *Landis, v. N. American Co.*, 299 U.S. 248, 255 (1936).  In such circumstances, a
stay is appropriate only where the failure to grant one would be "a scandal to the administration of justice."  *Id.*

29.     For all these reasons, the Committee believes that allowing the GO Priority Objection to move forward at this time will not cause hardship to the Commonwealth.

**B.**     **Continuing Stay of GO Priority Objection Will Prejudice General Unsecured Creditors**

30.     At the March 3, 2020 omnibus hearing, the Court also found that the Committee had "not demonstrated a countervailing risk of prejudice"[36] of staying the GO-PBA issues because the Committee retained its right to object to the Plan of Adjustment and also has "the opportunity to accept the proposed settlement, and if the Plan is confirmed, receive the distributions contemplated thereunder."[37]  In the absence of an actual settlement, and given that the plan process has been put on indefinite hold, these rights are now illusory.  Continuing to stay the GO Priority Objection without offering a clear strategy as to when and how the Plan of Adjustment will be presented for confirmation severely prejudices the rights of the Committee and general unsecured creditors who are left without any remedy: unable to oppose a non-existent settlement and unable to press the GO Priority Objection.

31.     In this regard, it is particularly troubling that the stay has now become completely *divorced from any confirmation timetable*.  When the Court granted the stay back in March 2020, there was not only a plan proposal on the table, but it was also clear that the Oversight Board intended to present the plan for confirmation by the end of 2020.  In fact, the Mediation Team's report recommended a detailed schedule as to how to sequence the resolution of legal issues leading up to a confirmation hearing by the end of 2020, including a recommendation that the disclosure statement hearing take place on June 3, 2020 (which recommendation the Court adopted).  While the Mediation Team did not express a view on the Oversight Board's proposed

---

[36]     March 4, 2020 Hr'g Tr. at 216:15-16.
[37]     March 4, 2020 Hr'g Tr. at 216:18-20.

confirmation schedule (with a confirmation hearing to occur in mid to late October 2020), it
made clear that it viewed that schedule as "directionally correct."[38]  In fact, at the March 3, 2020
hearing, Judge Houser, the Mediation Team Leader, repeatedly impressed upon the Court the
need to "start down the confirmation path on a specific schedule"[39] and not "hold up the process
indefinitely."[40]

32.     In short, the stay was not merely premised on the existence of a plan settlement,
but also on the prospect that such settlement would be put before the Court for consideration in
the near future, so as to allow parties to vote on, object to, and, if confirmed, receive distributions
under, such plan.  This larger context seems to have now been completely lost on the Oversight
Board.  While the Oversight Board's initial request for an adjournment of the disclosure
statement hearing was styled as "limited," the Oversight Board has now on two occasions (in the
May 1, 2020 Status Report and the July 15, 2020 Status Report) sought to further adjourn the
disclosure statement hearing without any indication as to when the plan process would be
restarted.  The Oversight Board should not be allowed to use a defunct plan settlement to
transform what was originally a stay of limited duration into a stay of unlimited duration for as
long as the Oversight Board desires a settlement and continues talking to creditors.  Indeed, from
a due process perspective, the continued imposition of an indefinite stay, for which the
underlying factual premise (*i.e.*, a settlement with GO bondholders) is no longer present, is
effectively a denial of the Committee's GO Priority Objection.

33.     For all these reasons, continuing to stay the GO Priority Objection will prejudice
the Committee and the Commonwealth's general unsecured creditors.

---

[38]     Amended Report and Recommendation of the Mediation Team [Docket No. 10756] at 24.

[39]     March 4, 2020 Hr'g Tr. at 73:21-22.

[40]     March 4, 2020 Hr'g Tr. at 73:8-10.

**C.   Continuing Stay of GO Priority Objection Does Not Represent Most Economical Use of Party and Judicial Resources**

34.    The Court previously observed that in light of the Oversight Board having

proposed to resolve the GO-PBA issues through a settlement embedded in the Plan of

Adjustment, "it is not prudent to continue litigating GO-PBA issues that will be resolved if the

Plan of Adjustment is ultimately confirmed."[41]  As noted above, given the Commonwealth's

current fiscal outlook, the plan settlement with the GO bondholders is now effectively dead.  It is

thus inevitable that substantial modifications will need to be made to the Plan of Adjustment,

which will require renewed negotiations with the Commonwealth's creditors.  Thus, whatever

the savings may have been of staying litigation in light of a pending plan settlement, in the

absence of such a settlement any such savings are speculative.

35.    In any event, the Committee is not seeking to lift the stay as to all GO-PBA

issues, but only the GO Priority Objection.  As noted, that objection raises a narrow and discrete

legal issue that will not require any discovery, and, accordingly, the Committee believes that this

matter can be teed up and resolved in a timeframe of no more than a few months.  Nor would

litigation of the GO Priority Objection "compete" with resources that would otherwise be spent

on the plan confirmation process, as that process is currently on pause.  Indeed, resolving the GO

Priority Objection during this pause could provide much-needed clarity to advance plan

negotiations.

**CONCLUSION**

36.    What was initially framed as a request for "limited" adjournment has now

transformed, in effect, into an indefinite pause of the plan process.  The Committee does not

object to such a pause—to the contrary, the Oversight Board should take the appropriate time to

---

[41]    March 4, 2020 Hr'g Tr. at 216:2-4.

evaluate its options in light of the changed circumstances.  However, in the absence of a

settlement with GO bondholders, the Committee submits that the stay should be lifted at this

time to allow the Committee to pursue its GO Priority Objection.

<u>**NOTICE**</u>

37.     Notice of this Motion has been provided to the following entities, or their counsel,

if known: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of

Puerto Rico; and (iii) all parties that have filed a notice of appearance in the above-captioned

Title III cases.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: July 19, 2020

By: */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*