# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

## MOVANTS' CONSOLIDATED SUPPLEMENTAL BRIEF
## REGARDING REVENUE BOND LIFT STAY MOTIONS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT .........................................................................................................................2

    I.       DUE PROCESS MANDATES THE STAY BE LIFTED. ...................................2

          A.      This Court is Precluded from Adjudicating Movants'
                  Constitutional and Statutory Arguments.......................................................3

          B.      Due Process Requires a Lifting of the Stay .................................................4

          C.      Movants Have Colorable Causes of Action....................................................6

    II.      "CAUSE" EXISTS TO LIFT THE STAY UNDER THE *SONNAX*
          FACTORS. .....................................................................................................14

          A.      Because of Section 305, Only Stay Relief Can Achieve a Complete
                  Resolution of the Issues. ............................................................................15

           B.      Lifting the Stay Will Not Interfere with the Title III Case. .......................15

          C.      The Interests of Judicial Economy Favor Stay Relief. .............................17

          D.      Stay Relief Will Not Prejudice the Interests of Other Creditors................17

          E.      The Balance of Harms Favors Stay Relief..................................................18

    III.     THE STAY MUST BE LIFTED TO ALLOW THE CCDA
          MOVANTS TO PURSUE THEIR SECURITY INTERESTS IN
          ANOTHER FORUM. ....................................................................................18

          A.      CCDA Movants Are Entitled to Stay Relief Under 11 U.S.C.
                  § 362(d)(2) Because the Commonwealth Lacks Equity in the
                  Transfer Account Monies and They Are Not Necessary to an
                  Effective Reorganization. ..........................................................................18

          B.      There Is Additional "Cause" to Lift the CCDA Stay Under 11
                  U.S.C. § 362(D)(1) Because Movants Lack Adequate Protection. ..........22

          C.      The Board's CCDA Adversary Proceeding Will Not Fully
                  Adjudicate Movants' Rights to the Transfer Account Monies and
                  Cannot Substitute for Movants' Statutory Right to Stay Relief. ...............25

    CONCLUSION ....................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AM Int'l v. Datacard Corp.*,
106 F.3d 1342 (7th Cir. 1997) ...................................................................16

*Ambac Assurance Corp. v. Commonwealth of P.R. (In re Fin. Oversight & Mgmt.
Bd. for Puerto Rico)*,
927 F.3d 597 (1st Cir. 2019) ....................................................1, 2, 3, 25

*Ambac Assurance Corp. v. Commonwealth of P.R. (In re Fin. Oversight & Mgmt.
Bd. for Puerto Rico)*,
297 F. Supp. 3d 269 (D.P.R. 2018) ........................................................8, 11

*Armstrong v. Manzo*,
380 U.S. 545 (1965) ..................................................................................4

*Armstrong v. United States*,
364 U.S. 40 (1960) ...................................................................................13

*Assured Guaranty Corp. v. García-Padilla*,
214 F. Supp. 3d 117 (D.P.R. 2016) ............................................................6

*State ex rel. Barnett v. Exch. Nat'l. Bank of Tulsa*,
45 P.2d 759 (Okla. 1935) ..........................................................................24

*Bartlett v. Bowen*,
816 F.2d 695 (D.C. Cir. 1987) ....................................................................6

*C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.*,
369 B.R. 87 (D.P.R. 2007) ........................................................................17

*Chizzali v. Gindi (In re Gindi)*,
642 F.3d 865 (10th Cir. 2011), ..................................................................19

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .................................................................................13

*Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers Pension Trust for S.
Cal.*,
508 U.S. 602 (1993) ...................................................................................5

*Edward J. Berwind, Inc. v. Chicago Park Dist.*,
65 N.E.2d 785 (Ill. 1946) ..........................................................................12

*Equity Lifestyle Properties, Inc. v. City of Albuquerque*,
   No. CIV 06–69 MCA/LFG, 2008 WL 619188 (D.N.M. Jan. 31, 2008) ...............................15

*Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In
   re Fin. Oversight & Mgmt. Bd. for P.R.)*,
   899 F.3d 13 (1st Cir. 2018)........................................................................................3

*Franklin California Tax-Free Tr. v. P.R.*,
   85 F. Supp. 3d 577 (D.P.R. 2015)..........................................................7, 9, 12, 16

*Germany v. Vance*,
   868 F.2d 9 (1st Cir. 1989)........................................................................................4

*Goldberg v. Kelly*,
   397 U.S. 254 (1970)...............................................................................................13

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. (In re Fin Oversight & Mgmt. Bd.
   for P.R.)*,
   939 F.3d 340 (1st Cir. 2019)..........................................................14, 15, 19, 25

*Hoffman v. City of Warwick*,
   909 F.2d 608 (1st Cir. 1990)..................................................................................13

*Louisiana ex rel. Hubert v. City of New Orleans*,
   215 U.S. 170 (1909).................................................................................................9

*In re Arnott*,
   512 B.R. 744 (Bankr. S.D.N.Y. 2014)...................................................................14

*In re Boston Language Institute, Inc.*,
   593 B.R. 381 (Bankr. D. Mass 2018) ....................................................................14

*In re Chatham Parkway Self Storage, LLC*,
   No. 12-42153, 2013 WL 1898058 (Bankr. S.D. Ga. Apr. 25, 2013)......................23

*In re City of Columbia Falls, Mont., Special Improvement Dist. No. 25*,
   143 B.R. 750 (Bankr. D. Mont. 1992) ...................................................................22

*In re Fuchs*,
   No. 05-36028-BJH-7, 2006 WL 6543977 (Bankr. N.D. Tex. Jan. 26, 2006).....................4, 14

*In re The Ground Round, Inc.*,
   326 B.R. 23 (Bankr. D. Mass. 2005) .....................................................................16

*In re Guzman*,
   513 B.R. 202 (Bankr. D.P.R. 2014)........................................................................14

*In re Haines*,
309 B.R. 668 (D. Mass 2004 .......................................................................6

*In re Horn*,
No. 12-50207, 2012 WL 1978287 (Bankr. M.D.N.C. June 1, 2012) .........................5

*In re Hurvitz*,
554 B.R. 35 (Bankr. D. Mass. 2016) ................................................15, 16

*In re LaFemina*,
No. 14-CV-43362-nhl, 2017 WL 4404254 (Bankr. E.D.N.Y. Sept. 30, 2017) ...............15, 16

*In re Lally*,
38 B.R. 622 (Bankr. N.D. Iowa 1984) .............................................22

*In re Mach I Aviation, Inc.*,
No. SV-10-14811-VK, 2011 WL 5838520 (B.A.P. 9th Cir. Sept. 15, 2011) ..................16

*In re Mark IV Indus., Inc.*,
438 B.R. 460 (Bankr. S.D.N.Y. 2010) .....................................................16

*In re Martin*,
761 F.2d 472 (8th Cir. 1985) ..................................................23

*In re Medlar*,
No. 11-17909, 2013 WL 6152324 (Bankr. N.D. Ohio Nov. 22, 2013) ...............4, 14

*In re Udell*,
18 F.3d 403 (7th Cir. 1994) ..............................................14, 16

*In re Worldcom, Inc., et. al.*,
No. 02-13533 (AJG), 2003 WL 22025051 (Bankr. S.D.N.Y. Jan. 30, 2003) ..................24

*Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Com. of Mass.*,
666 F.2d 618 (1st Cir. 1981) .......................................................9, 10

*Lynch v. United States*,
292 U.S. 571 (1934) ...................................................12

*McKinney v. Pate*,
20 F.3d 1550 (11th Cir. 1994) ..............................................16

*Mercado-Boneta v. Administración del Fondo de Compensación al Paciente ex rel. Ins. Comm'r of P.R.*,
125 F.3d 9 (1st Cir. 1997) .....................................................6

*Mission Prod. Holdings v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)*,
602 B.R. 798 (B.A.P. 1st Cir. 2019) ....................................................................19

*Peaje Investments LLC v. García–Padilla*,
845 F.3d 505 (1st Cir. 2017) ...............................................................................24

*Pierce County v. State*,
148 P. 3d 1002 (Wash. 2006) .................................................................................8

*Sonnax Industries v. Tri. Components Products Corp. (In re Sonnax Industries)*,
907 F. 2d 1280 (2d Cir. 1990) ..................................................................2, 14, 17

*U.S. Tr. Co. of New York v. New Jersey*,
431 U.S. 1 (1977) .....................................................................................7, 9, 10

*United States v. Sec. Indus. Bank*,
459 U.S. 70 (1982) ..........................................................................................13, 17

*United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*,
842 F.3d 201 (3d Cir. 2016) ................................................................................10

*Vázquez-Velázquez v. P.R. Highway & Transp. Auth.*,
No. 15-CV-1727 (MEL), 2016 WL 183653 (D.P.R. Jan. 14, 2016) ....................13

*Von Hoffman v. City of Quincy*,
71 U.S. 535 (1866) ..................................................................................................7

*Webster v. Doe*,
486 U.S. 592 (1988) .................................................................................................6

**Statutes**

3 L.P.R.A. § 1913 ............................................................................................................7

3 L.P.R.A. § 9443 ............................................................................................................8

9 L.P.R.A. § 2019 ............................................................................................................7

9 L.P.R.A. § 2021 ............................................................................................................7

9 L.P.R.A. § 5681 ............................................................................................................7

13 L.P.R.A. § 2271 ....................................................................................................7, 21

13 L.P.R.A. § 31751 .........................................................................................................7

23 L.P.R.A. § 6450 ....................................................................................................7, 21

11 U.S.C. § 101 ............................................................................................................15

11 U.S.C. § 361 ............................................................................................................23

11 U.S.C. § 362 ............................................................................................3, 5, 14, 18, 22

11 U.S.C. § 903 ............................................................................................................11

11 U.S.C. § 904 ..............................................................................................................3

48 U.S.C. § 2142 ............................................................................................................8

48 U.S.C. § 2163 ....................................................................................................ـ *passim*

48 U.S.C. § 2165 ..........................................................................................1, 3, 4, 18, 19

**Other Authorities**

12 C.F.R. § 330.11 ........................................................................................................24

BLACK'S LAW DICTIONARY  (9th ed. 2009) ..............................................................11

As directed by the Court (ECF No. 13607), Movants submit this supplemental brief regarding the Lift Stay Motions.[2]  Movants respectfully state as follow:

## PRELIMINARY STATEMENT

1.      Movants appreciate the Court's attention to the Preliminary Hearing issues, and while Movants respectfully disagree with several of the Court's conclusions, notwithstanding those conclusions, there remains ample basis to lift the automatic stay.

2.      *First*, as the First Circuit recognized in *Ambac Assurance Corp. v. Commonwealth*, 927 F.3d 597 (2019), Movants have a due process right to bring constitutional and statutory causes of action for declaratory and injunctive relief.  Movants have colorable causes of action under the Contract Clause, Due Process Clause, and Takings Clause, and for declaratory relief based on the invalidity, under PROMESA § 303, of the Clawback Orders, Moratorium Laws, Moratorium Orders, the Compliance Law, and the Board's fiscal plans and budgets ("Territorial Legislation"). The First Circuit concluded that, since PROMESA § 305 precludes this Court from adjudicating these issues, to protect Movants' due process rights, this Court should lift the stay so Movants can pursue their causes of action in a non-Title III court, where PROMESA § 305 does not apply.

---

[2] Unless otherwise indicated, all ECF numbers referenced in this supplemental brief refer to the docket in Case No. 17-3283-LTS.  Capitalized terms not defined herein shall have the meanings given to them in ECF Nos. 10102 (the "HTA Lift Stay Motion"); 12994 (the "HTA Lift Stay Reply"); 13223 (the "HTA Lift Stay Sur-Reply Response"); 13397 (the "HTA Lift Stay Supplemental Submission"); 10104 (the "CCDA Lift Stay Motion"); 13313 (the "CCDA Lift Stay Reply"); 13225 (the "CCDA Lift Stay Sur-Reply Response"); 10602 (the "PRIFA Lift Stay Motion"); 13310 (the "PRIFA Lift Stay Reply"); and/or 13228 (the "PRIFA Lift Stay Sur-Reply Response") (collectively, "Lift Stay Motions").  All of the arguments advanced in the Lift Stay Motions are reincorporated herein by reference and not waived.  The prefix HTA, PRIFA, and CCDA will be added to defined terms when necessary to distinguish between defined terms used in one of the respective Lift Stay Motions.  For purposes of this submission, "Movants" shall refer to any party defined as a Movant in any of the Lift Stay Motions.  In light of the Court's order directing consolidated supplemental briefing, Movants respectfully incorporate by reference the briefs, declarations, and exhibits that Movants previously submitted on any of the Lift Stay Motions; papers previously submitted in connection with any Lift Stay Motion are cited herein as part of the record on all of them.  "Pledged Revenues" shall refer collectively to the HTA Pledged Revenues, the PRIFA Pledged Rum Taxes, and the CCDA Pledged Hotel Taxes.  "Moratorium Laws," "Moratorium Orders," and "Compliance Law" shall have the meanings ascribed in the HTA Lift Stay Motion. *See also Natbony Decl.* (ECF No. 10107) Ex. AA (Moratorium Orders), Ex. BB (Moratorium Laws), Ex. DD (Compliance Law).  "Clawback Orders" refers to both Exhibit 4 of the PRIFA Lift-Stay Motion (the "First Clawback Order") as well as Administrative Bulletin OE-2015-49 (the "Second Clawback Order").

Movants have sought this exact relief.  (*See* HTA Lift Stay Motion Argument § IV.C; CCDA Lift Stay Motion Argument § II.B.2; PRIFA Lift Stay Motion Argument § III.B.)

3.      ***Second***, additional "cause" exists under the *Sonnax* factors endorsed by the First Circuit.  Movants seek to bring actions that cannot be addressed in the Title III process, so the Commonwealth will not be prejudiced by litigation of these issues elsewhere.

4.      ***Finally***, the CCDA Movants are entitled to stay relief under Sections 362(d)(1) and (d)(2).  Stay relief is appropriate under Section 362(d)(2) because the Commonwealth has no equity in the property at issue.  As the Court found, CCDA Movants have a colorable claim to a security interest on the property—and the debt secured greatly exceeds the value of the property, a classic case in which the debtor has no equity.  CCDA Movants can show additional "cause" under Section 362(d)(1), because their property interest is not adequately protected.

5.      The Court asked whether the CCDA adversary proceeding obviated the need for stay relief.  It does not because, *inter alia*, PROMESA § 305 precludes this Court from adjudicating the causes of action that CCDA Movants are entitled to bring.  Stay relief is thus warranted.

## ARGUMENT

## I.      DUE PROCESS MANDATES THE STAY BE LIFTED.

6.      As the First Circuit has previously recognized, Movants are entitled to stay relief to have a forum in which they can present "constitutional and statutory arguments" that otherwise would be precluded by PROMESA § 305.  *Ambac*, 927 F.3d at 605.  In *Ambac*, the First Circuit held that PROMESA § 305 bars the Title III Court from issuing declaratory judgment regarding, *inter alia*, the legality of the Territorial Legislation.  *Id.* at 601.  Recognizing that denying Movants any forum in which to challenge the Territorial Legislation would have due process implications, the First Circuit rested on stay relief as the safety valve:

> At oral argument, counsel for Ambac also raised the possibility that our interpretation of section 305 would raise due process concerns because Ambac would be left without a venue in which to bring its constitutional claims.  But nothing in our holding today suggests that Ambac cannot seek traditional stay relief pursuant to 11 U.S.C. § 362 and raise its constitutional and statutory arguments in a separate action.  As we explained in *PREPA*, section 305 "only bar[s] the Title III court itself from directly interfering with the debtor's powers or property."  It does not, however, impose any such restraint on another court.

*Id.* at 605 (citing *Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 899 F.3d 13 (1st Cir. 2018) ("PREPA") (citation omitted).

The First Circuit's *Ambac* holding makes plain that stay relief must be granted.

### A.   This Court is Precluded from Adjudicating Movants' Constitutional and Statutory Arguments.

7.     The First Circuit has made clear that PROMESA § 305, 48 U.S.C. § 2165, precludes the Title III Court (but not any other court) from adjudicating Movants' constitutional and statutory arguments regarding the invalidity of the Territorial Legislation.   Section 305, modeled on 11 U.S.C. § 904, prohibits this Court from "directly interfering with the debtor's powers or property." *PREPA*, 899 F.3d at 21.  "On its face, the text of section 305 bars the Title III court from granting" Movants declaratory and injunctive relief for the Commonwealth and the Board's unlawful conduct "absent consent from the Oversight Board[.]"  *Ambac*, 927 F.3d at 602–03.  This holding extends to both statutory and constitutional causes of action.  *Id*. at 601.

8.     The Board has withheld its consent to this Court's adjudication of Movants' causes of action, maintaining that it "expressly does not consent pursuant to Section 305, to orders interfering with the validity of fiscal plans or budgets certified by the Oversight Board for the Commonwealth and/or its territorial instrumentalities, the validity of Commonwealth statutes or executive orders (including the Moratorium Laws and the Fiscal Compliance Act)[.]"  ECF No. 9493 (hereinafter "FOMB Consent Statement"), ¶ 17; *see also Interim Case Management Order for Revenue Bonds*, ECF No. 9620, at 6-7.

9.     The Board's position turns the pending revenue bond adversary proceedings (Adv. Proc. Nos. 20-3-LTS, 20-4-LTS, & 20-5-LTS, the "Adversary Proceedings") into a "heads I win, tails you lose" litigation:  If the Court rules in favor of the Board, the Board will accept the decision. But if the Court were to reject the Board's arguments, or find the Territorial Legislation unconstitutional or illegal in any respect, the Court would be barred from granting Movants any relief.  This situation deprives creditors of their constitutional rights—and improperly puts a thumb on the scale in a manner that the federal judiciary should not countenance.

**B.      Due Process Requires a Lifting of the Stay.**

10.     The due process implications of the Board's approach are manifest—and present the precise concerns that led the First Circuit to conclude that Movants should obtain stay relief to present their arguments in a non-Title III court.  At least three due process issues arise:

11.     *First*, absent stay relief, Movants would be deprived of any forum in which to present their arguments.  Denying a person "adequate, effective, and meaningful access [to the courts]" violates due process.  *Germany v. Vance*, 868 F.2d 9, 14 (1st Cir. 1989); *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("It is an opportunity which must be granted at a meaningful time and in a meaningful manner.").  The Court should avoid this unconstitutional result by exercising its § 362(d) authority, as the First Circuit contemplated.  To the extent PROMESA deprives Movants of effective access to a judicial forum, it is unconstitutional.

12.     In other contexts, bankruptcy courts have found no need to balance the equities if the bankruptcy court "lacks jurisdiction."  *In re Medlar*, No. 11-17909, 2013 WL 6152324, at *3 (Bankr. N.D. Ohio Nov. 22, 2013); *In re Fuchs*, No. 05-36028-BJH-7, 2006 WL 6543977, at *3 (Bankr. N.D. Tex. Jan. 26, 2006) ("this Court has no choice but to conclude that cause exists" because it had "no jurisdiction to hear and determine" the lift stay movant's causes of action).  This includes cases where the court could exercise jurisdiction only with consent that has not been

provided.  *See In re Horn*, No. 12–50207, 2012 WL 1978287, at \*2 (Bankr. M.D.N.C. June 1,

2012) (granting stay relief where action "[could not] be litigated in the bankruptcy court absent

consent").  While these cases involved different limitations than PROMESA § 305, the underlying

principle applies with equal force here:  Where the Title III court is precluded from adjudicating a

dispute, it must grant stay relief so the parties can litigate in a forum that is not similarly precluded.

13.    *Second*, requiring Movants to litigate solely in the one-sided Adversary

Proceedings violates due process because the structure of those proceedings violates the neutrality

requirement of the Due Process Clause.  As discussed, the Board has taken the tack of selectively

waiving PROMESA § 305, consenting to an adjudication—but only to the extent the Court rules

in its favor.  This compromises the neutrality of the Title III court because the Court's very

authority to hear the case turns on the outcome.  *Concrete Pipe & Products of Cal., Inc. v. Constr.*

*Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 617 (1993) ("[D]ue process requires a

'neutral and detached judge in the first instance.'" (quoting *Ward v. Monroeville,* 409 U.S. 57, 61-

62, (1972))).  Courts have an interest in issuing rulings that substantively resolve the issues before

them.  But here, to the extent that the Title III court wishes to issue a substantive ruling, it can rule

only for one side.  Proceeding to adjudicate the Adversary Proceedings while denying stay relief,

moreover, puts the Title III court in the untenable position of appearing to have prejudged the

merits, because the Adversary Proceedings can result in a ruling for only one side.  Stay relief is

necessary to avoid this result.[3]

---

[3] To the extent that the Board proposes for this Court to adjudicate the Adversary Proceedings first and to lift the stay
only if the Board is unsuccessful, that proposal is also unworkable because (i) it would violate Movants' right to a
prompt determination of their Lift Stay Motions under 11 U.S.C. § 362(e), (ii) Movants' secured status cannot be
determined until the validity of the Territorial Legislation has first been resolved (which can occur only in a non-
Title III forum), and (iii) sequencing the proceedings would impermissibly tilt the playing field.  Movants would need
to prevail on the merits *twice* to obtain relief, before two separate courts.  If Movants succeed in defending the
Adversary Proceedings, only then would they obtain stay relief, at which point they would need to make their
arguments entirely anew.

14.     *Third*, PROMESA cannot constitutionally "deny any judicial forum for a colorable constitutional claim."  *Webster v. Doe*, 486 U.S. 592, 603 (1988) (citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 n.12 (1986)); *Bartlett v. Bowen*, 816 F.2d 695, 707 (D.C. Cir. 1987).  As shown below, Movants have colorable causes of action.

### C.     Movants Have Colorable Causes of Action.

15.     Movants, Assured and Ambac, brought constitutional challenges to early iterations of the Territorial Legislation in 2016.  The district court denied a motion to dismiss, finding that Assured and Ambac had "properly assert[ed] Equal Protection, Due Process, Taking, and Contract Clause violations."  *Assured Guaranty Corp. v. García-Padilla*, 214 F. Supp. 3d 117, 124 (D.P.R. 2016).  In subsequent litigation, this Court dismissed Ambac's adversary complaint partially on the merits, but the First Circuit did not affirm on that basis (instead ruling solely on § 305 grounds).  Movants reserve the right to update the Previous Complaints to add new facts and more recent events, but the allegations in the Previous Complaints give an indication of the causes of action Movants assert.[4]

### 1.     Movants Have Colorable Contract Clause Causes of Action.

16.     Movants have much more than "colorable" Contract Clause causes of action.  *In re Haines*, 309 B.R. 668, 674 (D. Mass. 2004).  The threshold issue in a Contract Clause analysis is "whether [a] change in state law has operated as a substantial impairment of a contractual relationship."  *Mercado-Boneta v. Administración del Fondo de Compensación al Paciente ex rel. Ins. Comm'r of P.R.*, 125 F.3d 9, 12-13 (1st Cir. 1997) (internal quotation marks and citation

---

[4] *See Declaration of Atara Miller in Support of Movants' Consolidated Supplemental Brief Regarding Lift Stay Motions* (cited herein as the "Miller Decl.") Ex. 59, Adversary Proceeding No. 17-159-LTS (ECF No. 1, ¶¶ 174-82, 204-11) ("Ambac Complaint"), Exs. 60-61, Adversary Proceeding No. 18-59-LTS (ECF No. 1, ¶¶ 169-212, 294-97), and 19-363-LTS (ECF No. 4 ¶¶ 263-74) ("Assured/FGIC Complaint" and together with the Ambac Complaint, the "Previous Complaints") (Ambac, Assured, and/or FGIC's previous complaints and counterclaims asserting, in part, violations of the Contract Clause of the U.S. and Puerto Rico Constitutions).

omitted).  If so, the law will be upheld only "if it is reasonable and necessary to an important public purpose."  *Id.* at 13.

>    **a.   A Change in State Law Substantially Impaired a Contractual Relationship.**

17.     The threshold issue "is broken down into three distinct parts: [1] whether there is a contractual relationship, [2] whether a change in law impairs that contractual relationship, and [3] whether the impairment is substantial."  *Id.* at 12-13.  Each element exists here.

18.     ***There is a Contractual Relationship.***  As evidenced by the Bond Resolutions, Trust Agreements, and the applicable statutes, including the enabling acts and statutory covenants (collectively the "Bond Documents"), Movants have contractual relationships with the Commonwealth and the relevant instrumentalities.  The Bond Resolutions and Trust Agreements are quintessential contractual relationships.   The Commonwealth's statutory covenants create direct contractual relationships with bondholders.  "[A] statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature[.]"  *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 17 n.14 (1977).  Covenants functionally identical to those in the applicable statutes have been held to evidence intent to contract.  *See* 3 L.P.R.A. § 1913; 9 L.P.R.A. §§ 2019, 2021, 5681; 13 L.P.R.A. §§ 2271v(a), 31751(a)(1)(C)(D); 23 L.P.R.A. § 6450; *see also Franklin California Tax-Free Tr. v. P.R.*, 85 F. Supp. 3d 577 (D.P.R. 2015).  The legally binding statutory obligations "which subsist[ed] at the time and place of the making of" the Bond Resolutions and Trust Agreements are thereby incorporated therein.  *See Von Hoffman v. City of Quincy*, 71 U.S. 535, 550 (1866).[5]

---

[5] Movants' arguments regarding contractual rights are without prejudice to their contentions that the Bond Documents and statutes transfer property rights in the Pledged Revenues.

19.     ***The Relationship Was Impaired by Territorial Law.***   The Territorial Legislation constituted an exercise of direct or delegated legislative powers.   The Moratorium Laws and Compliance Act are, of course, conventional territorial laws.   This Court has previously recognized that Movants sufficiently pled that the Moratorium Orders constitute an exercise of delegated legislative power.   *Ambac Assurance Corp. v. Commonwealth of P.R. (In re Fin. Oversight & Mgmt. Bd. for Puerto Rico)*, 297 F. Supp. 3d 269, 286 (D.P.R. 2018) (Swain, J.).[6]   While this Court has held that fiscal plans are not legislative acts (a conclusion with which Movants respectfully disagree), at a minimum, the Board's budgets (premised on the fiscal plans) are legislative acts as they are either expressly approved or "deemed approved" by the Governor and Legislature.   PROMESA § 202(3)(A).   The Board itself has argued that its budgets constitute legislation.   (*See* ECF No. 8164 ¶ 41.)

20.     ***The Impairment Was Substantial.***   That the impairments to Movants' contractual rights are "substantial" is beyond dispute.   Movants collectively are owed billions on their bonds.   The Territorial Legislation diverted the Pledged Revenues that otherwise would pay those bonds— and will injure Movants even after the bankruptcy ends by allowing changes to lawful payment priorities.   *See* 3 L.P.R.A. § 9443.   "[T]he financial framework of a bond contract is detrimentally affected and bond obligations are impaired when a law put into effect after bonds were issued diminishes a tax source . . . that was pledged to support repayment of the bonds," and such an "impairment is substantial."   *Pierce County v. State*, 148 P. 3d 1002, 1011, 1013 (Wash. 2006).

---

[6] The Moratorium Act and Moratorium Orders impair Bondholders' contractual rights by, among other things: (i) expressly prohibiting any payment of principal or interest on CCDA, HTA, and PRIFA bonds; (ii) staying all litigation arising from such nonpayment; (iii) halting the Commonwealth's obligation to transfer revenues to CCDA, HTA, and PRIFA; (iv) halting CCDA, HTA, and PRIFA's obligation to transfer funds to the relevant bond trustees or fiscal agent; and (v) denying Bondholders the right to pursue legal remedies for violation of the terms of the pertinent contracts.   *See* Act No. 21-2016 ("First Moratorium Law") at § 201.

### b.     The Impairment Cannot Be "Justified as Reasonable and Necessary."

21.     Movants have much more than colorable arguments that the impairment here (complete cessation of payment and diversion of the source of funds for several years, perhaps permanently, and the destruction of Movants' remedies) is not "reasonable and necessary to serve an important public purpose."  (Ambac Complaint ¶¶ 115-21; Assured/FGIC Complaint ¶¶ 175-212.)  When assessing whether an impairment is reasonable and necessary, a "stricter 'review'" is applied to "state laws in the 'financial' area" or "laws which impair a state's 'financial obligations.'" *Local Div. 589, Amalgamated Transit Union, AFL-CIO, CLC v. Com. of Mass.*, 666 F.2d 618, 642 (1st Cir. 1981); *U.S. Tr. Co.*, 431 U.S. at 26 ("[C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake.").  The Commonwealth cannot survive this "stricter" review for several reasons:

22.     *First*, in general, a government cannot simply repudiate its commitment to collect revenues for bondholders.  Such a commitment "becomes a trust which the donor cannot annul, and which the donee is bound to execute." *Von Hoffman*, 71 U.S. at 555; *Louisiana ex rel. Hubert v. City of New Orleans*, 215 U.S. 170, 177-78 (1909).

23.     *Second*, the mere fact that a state or territory is in financial distress does not permit it to avoid obligations to creditors.  A state "cannot refuse to meet its legitimate financial obligations simply because it would prefer to spend the money to promote the public good rather than the private welfare of its creditors." *U.S. Tr. Co.*, 431 U.S. at 29.  "If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *Id.* at 26.

24.     *Third*, "repeal of [a statutory] covenant" is impermissible where "a less drastic modification" could achieve the state's objective. *Id.* at 29-30; *Franklin California Tax-Free Tr.*,

85 F. Supp. 3d at 609.  Movants have pled myriad less drastic alternatives (Ambac Complaint ¶¶ 116-122, 178-183; Assured/FGIC Complaint ¶¶ 180-209), and the Commonwealth and its instrumentalities have always had resources to pay some (if not all) of their debts.  *See* PRIFA Lift Stay Reply, Ex. A (Holder Report) at ¶¶ 50-54.

25.     *Fourth*, where, as here, the "public concern[s]" at issue (the possibility that the Commonwealth would have insufficient resources) were well-known when the covenant was made and specifically addressed (through a waterfall of payments, and an agreement that bondholders would have "last dollars" protection), it is unreasonable to modify the contract retroactively.  *U.S. Tr. Co.*, 431 U.S. at 30; *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 214 (3d Cir. 2016) ("precarious" financial condition of Virgin Islands was known at the time a collective bargaining agreement was negotiated, so the fact the Virgin Islands' "financial condition became increasingly dire is not" justification for impairing the contract).  This case "present[s] a paradigm of the type of protection that the Contract Clause was designed to offer—a protection given to those who invested money, time and effort against loss of their investment through explicit repudiation."  *See Local Div. 589, Amalgamated Transit Union,* 666 F.2d at 642.

### 2.     Movants Have Colorable Claims That the Territorial Legislation Is Invalid and Preempted by PROMESA.

26.     Movants also have more than a colorable right to a declaratory judgment that the Territorial Legislation is invalid and/or preempted by PROMESA § 303.

27.     ***PROMESA § 303(1).***  The Territorial Legislation is self-evidently invalid under PROMESA § 303(1), which expressly prohibits any territorial laws "prescribing a method of composition of indebtedness" or "moratorium law[s]."  The Territorial Legislation prohibits the payment of principal or interest on the revenue bonds, either directly through express prohibitions

on bond payments or indirectly by diverting the revenues from which such payments could be made. *See, e.g.*, First Moratorium Law at § 201; Natbony Decl. Ex. AA, Administrative Bulletin OE-2016-18; Administrative Bulletin OE-2016-30; Administrative Bulletin OE-2016-31.

28.     Although this Court has ruled that PROMESA § 303(1) did not preempt the original Moratorium Laws and Moratorium Orders, on the grounds that they were merely "temporary suspensions or extensions of the debtor's payment obligations," *Ambac Assurance Corp.*, 297 F. Supp. 3d at 291, time has proven otherwise. The Moratorium Laws and Moratorium Orders have been extended repeatedly, leaving them in place continuously since April 6, 2016 (more than four years and three months). Thus, even applying the Court's prior analysis, these laws must be deemed preempted, as these renewals evidence the Commonwealth's intent to implement these actions permanently.

29.     Moreover, Movants respectfully disagree with the Court's prior holding, which the First Circuit did not address on appeal. A "moratorium" is a "postponement . . . in the deadline for paying a debt or performing an obligation." Black's Law Dictionary 1101 (9th ed. 2009); Assured/FGIC Complaint ¶¶ 160-61. There is no requirement that a "moratorium" be permanent. Interpreting the Territorial Legislation not to be preempted under PROMESA § 303(1) would render meaningless Congress's deliberate inclusion of the term "moratorium law[s]." Section 303(1)'s prohibition on laws creating "a method of composition of indebtedness" already precludes any laws which affect the "ultimate payment of principal and interest." 11 U.S.C. § 903.

30.     ***PROMESA § 303(3).*** The Moratorium Orders are preempted by § 303(3) because they are executive orders; they are "unlawful" under pre-existing Commonwealth law (including the enabling legislation for the HTA, CCDA, and PRIFA bonds, and the Commonwealth's statutory non-impairment covenants to bondholders) and the Constitution; and they "modify rights

of holders of any debt" by depriving bondholders of their contractual and statutory rights, *see, e.g.*, Natbony Decl. Ex. AA Administrative Bulletin OE-2016-18 at 6 (suspending causes of action against HTA), or requiring the diversion of Pledged Revenues in a manner inconsistent with the Bond Documents, *id*. at 5 (suspending transfer of pledged revenues).

### 3.   Movants Have a Colorable Takings Clause Cause of Action.

31.     Even accepting the Court's conclusion that Movants have no property interest under the Bankruptcy Code, Movants have a colorable claim that the Commonwealth and Board have taken a constitutionally protected property interest in the Pledged Revenues without compensation.

32.     *First*, the diversion of monies from special funds pledged to bondholders is a taking, as at least one court has held.  *Edward J. Berwind, Inc. v. Chicago Park Dist.*, 65 N.E.2d 785, 789 (Ill. 1946) ("taking" occurred when money "was deposited in the general fund instead of the 1929 tax levy fund" pledged to bondholders).  Movants know of no court that has held otherwise.

33.     *Second*, the statutory covenants between the Commonwealth and bondholders granted bondholders a property right in specific revenues that cannot be impaired.  *See Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States."); *Franklin California Tax-Free Tr.*, 85 F. Supp. 3d at 612 (holding that statutory and contractual rights to appoint a receiver were property of PREPA bondholders).

34.     *Third*, to the extent Movants' security interests are not attaching to the Pledged Revenues, it is only because the Territorial Legislation took those monies.  The destruction of Movants' liens is a quintessential "taking" giving rise to a right to just compensation.

35.     *Fourth*, Movants' substantive rights under the Bond Documents amount to a protected "property" right under the Fifth Amendment (even if Movants do not have a "security interest" or other property interest under the Bankruptcy Code).  "[F]ederal constitutional law

determines whether the interest created by the state rises to the level of 'property,' entitled to the various protections of the Fifth and Fourteenth Amendments." *Hoffman v. City of Warwick*, 909 F.2d 608, 615 (1st Cir. 1990); *Vázquez-Velázquez v. P.R. Highway & Transp. Auth.*, No. 15-CV-1727 (MEL), 2016 WL 183653, at *4 (D.P.R. Jan. 14, 2016).  The relevant question is whether Movants' rights under pre-petition territorial law amounted to "property" as a matter of federal constitutional law.  Under pre-PROMESA law, there was no difference between the substantive *rights* Movants enjoyed to the pledged revenues and the rights an actual lienholder would have. *Cf. Armstrong v. United States*, 364 U.S. 40, 48 (1960) (liens are protected "property" under the Fifth Amendment).  Movants had the right to compel transfer of the Pledged Revenues, and to obtain possession of them in the event of nonpayment.  Because the substantive rights pre-PROMESA were identical to the rights of a lienholder, Movants' rights were constitutionally protected property.

36.     PROMESA cannot impair property rights.  It is unconstitutional if it purports to do so. *United States v. Sec. Indus. Bank*, 459 U.S. 70, 75 (1982) ("The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation.").

**4.     Movants Have a Colorable Due Process Clause Cause of Action.**

37.     At a minimum, the Bond Documents create a "property" right under the Due Process Clause.  The scope of "property" protected under the Due Process Clause is broad, extending even to such things as welfare benefits. *Goldberg v. Kelly*, 397 U.S. 254, 261-64 (1970).

38.     The Territorial Legislation at issue deprived Movants of property without any pre-deprivation notice or hearing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'"). The effect of the Territorial Legislation is to deprive Movants of their perfected security interests,

even under the Board and the Debtors' analysis.  Moreover, the Board claims that its enactment of budgets preempted Movants' rights.  ECF No. 10611 ¶¶ 71-80, ECF No. 10613 ¶¶ 83-88, ECF No. 10615 ¶¶ 77-80.  Because there was no pre-deprivation notice or hearing, the Board's purported preemption of Movants' rights to property would violate due process.

## II.    "CAUSE" EXISTS TO LIFT THE STAY UNDER THE *SONNAX* FACTORS.

39.    In light of the First Circuit's holding in *Ambac*, a traditional "cause" analysis under 11 U.S.C. § 362(d)(1) is not necessary.  *Cf. In re Medlar*, 2013 WL 6152324, at *3; *In re Fuchs*, 2006 WL 6543977, at *3.  Movants' due process rights make stay relief a constitutional imperative. Even if the Court were to conduct a traditional "cause" analysis, such an analysis would reveal further, independent "cause."  (HTA Lift Stay Motion Argument § IV.D; PRIFA Lift Stay Motion Argument § III.C; CCDA Lift Stay Motion Argument § II.B.)  "Although Section 362(d)(1) includes lack of adequate protection . . . as a cause to modify the automatic stay, there are other bases for a cause finding. . . .  For instance, relief [from the automatic stay] also may be granted when necessary to permit litigation to be concluded in another forum."  *In re Guzman*, 513 B.R. 202, 208 (Bankr. D.P.R. 2014) (internal quotation marks omitted).  The First Circuit has pointed to the *Sonnax* factors as "a helpful framework."  *Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. (In re Fin Oversight & Mgmt. Bd. for P.R.)*, 939 F.3d 340, 347 (1st Cir. 2019) (citing *Sonnax Industries v. Tri. Components Products Corp. (In re Sonnax Industries)*, 907 F. 2d 1280, 1286 (2d Cir. 1990)).

40.    "Not all of the [*Sonnax*] factors are relevant in every case, and cause is a broad and flexible concept that must be determined on a case-by-case basis."  *In re Arnott*, 512 B.R. 744, 754 (Bankr. S.D.N.Y. 2014) (quotation marks omitted); *see also In re Boston Language Institute, Inc.*, 593 B.R. 381, 396 n.5 (Bankr. D. Mass 2018) (citing *In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986)); *In re Udell*, 18 F.3d 403, 410 (7th Cir. 1994).  The *Sonnax* factors relevant here

are: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case . . . (7) whether litigation in another forum would prejudice the interests of other creditors . . . (10) the interests of judicial economy and the expeditious and economical resolution of litigation . . . and (12) impact of the stay on the parties and the balance of harms." *Gracia-Gracia*, 939 F.3d at 347.

### A. Because of Section 305, Only Stay Relief Can Achieve a Complete Resolution of the Issues.

41. As set forth above, absent stay relief, it is impossible to resolve Movants' rights, because crucial threshold issues, such as the validity of the Territorial Legislation, cannot be effectively addressed by the Title III court.

### B. Lifting the Stay Will Not Interfere with the Title III Cases.

42. ***The Contract Clause, Due Process Clause, and PROMESA § 303 causes of action are not dischargeable "claims."*** Because these causes of actions are not dischargeable "claims," "[n]o prejudice will result" from allowing Movants to pursue them. *In re Hurvitz*, 554 B.R. 35 at 40 (Bankr. D. Mass. 2016) (lifting the stay to permit enforcement of non-compete clause that was not dischargeable in bankruptcy); *In re LaFemina*, No. 14-CV-43362–nhl, 2017 WL 4404254, at *6-7 (Bankr. E.D.N.Y. Sept. 30, 2017) (same).

43. A "claim" is defined as "a right to payment" or a right to an "equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5). These causes of action are not "claims" because the only remedy Movants seek is recognition of the invalidity of unconstitutional laws—not damages or another right to payment. *Equity Lifestyle Properties, Inc. v. City of Albuquerque*, No. CIV 06–69 MCA/LFG, 2008 WL 619188, *7 (D.N.M. Jan. 31, 2008) ("claims under the contracts clauses generally are limited to the situation where a party is seeking a declaratory judgment or injunctive relief to strike down the state law"); *see, e.g.*,

*Von Hoffman*, 71 U.S. at 554 (a law that "impair[s] substantial rights" is "within the prohibition of the [Contract Clause of the] Constitution, and to that extent *void*" (emphasis added)); *Franklin California Tax-Free Tr.*, 85 F. Supp. 3d at 594 (noting that the court, if it accepts plaintiffs' Contract Clause arguments will "nullify the Recovery Act, restoring plaintiffs' statutory and contractual rights"); *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) ("In procedural due process cases . . . the primary relief sought is equitable.").

44.     Suits seeking injunctive or declaratory relief do not present "claims" that can be addressed in the bankruptcy. *In re Udell*, 18 F.3d 403 (7th Cir. 1994) (employer's request for injunction enforcing non-compete covenant not a claim dischargeable in bankruptcy); *In re Mach I Aviation, Inc.*, No. SV-10-14811-VK, 2011 WL 5838520, at *8 (B.A.P. 9th Cir. Sept. 15, 2011) (declaratory relief and equitable remedies "do not constitute claims within the meaning of § 101 (5)(B)" where they "have no precise or viable damages alternatives"); *In re Mark IV Indus., Inc.*, 438 B.R. 460, 465 (Bankr. S.D.N.Y. 2010) ("where a creditor does not have the option to accept money in lieu of the equitable remedy, the equitable obligation is not a 'claim' and is not dischargeable in bankruptcy"); *In re The Ground Round, Inc.*, 326 B.R. 23, 30 (Bankr. D. Mass. 2005) (language in the lease did not provide for a right to payment, and therefore, the rights of the landlord did not constitute a claim); *AM Int' v. Datacard Corp.*, 106 F.3d 1342 (7th Cir. 1997) (environmental clean-up order not a claim if it cannot be converted into a right to payment).

45.     Movants' request for a declaration invalidating the Territorial Legislation is therefore not a "claim" and (i) cannot be resolved through the Title III claims resolution process, which is limited to monetary payments, and (ii) cannot be discharged under a plan.  For those reasons, the Commonwealth will not be prejudiced by litigating these rights elsewhere. *See In re Hurvitz*, 554 B.R. at 40; *In re LaFemina*, 2017 WL 4404254, at *6.

46.     ***The Commonwealth cannot be prejudiced by an adjudication of the Takings Clause claim, because such claims cannot be impaired in bankruptcy.***  While Movants' Takings Clause claim is a "claim," litigating that claim outside the Title III court cannot prejudice the Commonwealth because the claim cannot be impaired in bankruptcy.  *See Sec. Indus. Bank*, 459 U.S. at 75.  A timely adjudication of these claims, if anything, will facilitate the Title III process by providing clarity regarding the scope of Movants' constitutional rights.  (And even if the Court found that Movants could not bring their Takings Clause claim outside of Title III, stay relief still should be granted with respect to the causes of actions that are not "claims.")

### C.     The Interests of Judicial Economy Favor Stay Relief.

47.     "[T]he interests of judicial economy and the expeditious and economical resolution of litigation," *In re Sonnax*, 907 F.2d at 1286, favor stay relief.  Adjudicating these issues in advance of plan confirmation and achieving finality will facilitate an orderly resolution to the Title III cases.  *See C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.*, 369 B.R. 87, 95 (D.P.R. 2007) (lifting the stay where state court action would "give finality to the" creditor's action and thereby "help the Bankruptcy Court in the administration and determination of [debtor's] estate").

### D.     Stay Relief Will Not Prejudice the Interests of Other Creditors.

48.     Lifting the stay will in no way "prejudice the interests of other creditors."  *In re Sonnax*, 907 F.2d at 1286.  The small number of creditors who have intervened in the Adversary Proceedings could seek intervention (under the applicable rules) in any non-Title III litigation. And the litigation would not determine any issue of relative priorities among creditors; it would simply establish whether the Commonwealth's conduct was constitutional or violated the law.  The implications of that ruling on the Title III proceeding would still be addressed in this Court.

### E.     The Balance of Harms Favors Stay Relief.

49.     The balance of harms favors stay relief, because a failure to lift the stay will deny Movants their due process rights and leave them subject to ongoing harm from laws that Movants contend are void without giving them any ability to contest the validity of those laws in federal court.  Indeed, denial of stay relief would harm not only Movants, but the restructuring process as a whole.   The validity of the Territorial Legislation should be adjudicated as promptly as practicable to ensure that the restructuring is based only on valid Puerto Rico laws.

50.     The only "harm" that will affect the Debtors if the stay is lifted is that they might have to defend the legality of their actions in court, rather than hiding behind procedural barriers like PROMESA § 305.  Movants' due process rights outweigh Debtors' non-existent interest in thwarting a merits determination on these issues.

51.     Even if the Debtors could show harm, moreover, the Debtor cannot be heard to complain when hardship results from the Debtor's strategic decision not to waive PROMESA § 305.  Movants asked the Board to waive PROMESA § 305 so these issues could be litigated, and it refused.  "[C]oncerns about moving the locus of the [Commonwealth's] protections outside the Title III court are greatly ameliorated by the fact that the Oversight Board itself [could have opted] for a regime held more tightly within the federal forum's direct control."  *PREPA*, 899 F. 3d at 22.

### III.     THE STAY MUST BE LIFTED TO ALLOW THE CCDA MOVANTS TO PURSUE THEIR SECURITY INTERESTS IN ANOTHER FORUM.

### A.     CCDA Movants Are Entitled to Stay Relief Under 11 U.S.C. § 362(d)(2) Because the Commonwealth Lacks Equity in the Transfer Account Monies and They Are Not Necessary to an Effective Reorganization.

52.     Where, as here, "the debtor does not have an equity in [the] property" and "[the] property is not necessary to an effective reorganization," stay relief must be granted.  11 U.S.C. § 362(d)(2).  The First Circuit has made clear that the Court cannot consider "prudential" factors

under § 362(d)(2).  Because the Commonwealth has no equity in Pledged Hotel Taxes that were previously deposited in, are currently held in, or in the future are deposited in, the Transfer Account (the "Transfer Account Monies"), and does not need them for reorganization, CCDA Movants are entitled to stay relief without regard to other considerations.  *Gracia-Gracia*, 939 F.3d at 350.

### 1.    The Commonwealth Has No Equity in The Transfer Account Monies.

53.    The Commonwealth lacks equity in the Transfer Account Monies because (1) the debt owed greatly exceeds the value of those monies, leaving the Commonwealth no equity, and (2) the Transfer Account Monies that have been actually collected and deposited into the Transfer Account (or which may be deposited therein in the future) are not owned by the Commonwealth.

### a.    The Transfer Account Monies Are Security for A Debt That Greatly Exceeds the Value of the Property, Leaving The Commonwealth With No Equity Therein.

54.    The value of the debt secured by the Transfer Account Monies greatly exceeds the value of the Transfer Account Monies, leaving the Commonwealth with no equity in them.  *See Mission Prod. Holdings v. Schleicher & Stebbins Hotels, L.L.C. (In re Old Cold, LLC)*, 602 B.R. 798, 829 (B.A.P. 1st Cir. 2019) (citing *In re Shoney*, LLC, No. 16-13905-JNF, 2017 WL 474314, at *3 (Bankr. D. Mass. Feb. 3, 2017)) ("A debtor lacks equity in the property for purposes of § 362(d)(2) when the debts secured by liens on the property exceed the value of the property."); *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 875 (10th Cir. 2011) (debtor had no equity in the funds where the lien exceeded the value of the account), *overruled on other grounds, TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

55.    As shown in the declaration attached hereto, the unpaid principal amount of the CCDA bonds is $335.6 million.  (Miller Decl. ¶ 20.)  As of this writing, principal and interest payments to bondholders in excess of $110 million have been missed (*id*. ¶ 14), and more than

$139 million in required transfers that are currently due and owing under the CCDA Bond Documents have not been made (*id.* ¶ 13).

56.     The Commonwealth has no equity in the Transfer Account Monies, because the Scotiabank -5142 account contained only $6 million as of January 31, 2020, the most recent date for which bank account statements were produced in discovery.  (*Id.* ¶ 18.)  Adding the $94.2 million held in the FirstBank -3961 account (which passed through the Transfer Account and thus became subject to CCDA Movants' lien) as of January 31, 2020, the amount owed to CCDA Movants still exceeds the value of the property.  (*See id.* ¶ 20.)[7]

> **b.     The Commonwealth Does Not Own or Have Any Interest In the Transfer Account Monies.**

57.     CCDA Movants understand, and respectfully reserve their rights regarding, the Court's conclusion that the Hotel Taxes (meaning the revenue stream, both past and future collections) are owned by the Commonwealth.  The Court's conclusion on that point does not, however, establish that the Commonwealth owns the *Transfer Account Monies*—meaning those Pledged Hotel Taxes that either currently are in the Transfer Account or were deposited into that account at some point (or any that may be deposited in the future).  Even assuming *arguendo* the Commonwealth owns the Hotel Taxes revenue stream itself, the Commonwealth does not own the Transfer Account Monies.  As to those specific monies, bondholders' lien has attached, and the Commonwealth does not hold legal or equitable title.

---

[7] As addressed in more detail in the Miller Declaration, CCDA Movants' lien cannot be precisely calculated without additional discovery, particularly since CCDA Movants' request for discovery and an opportunity to meet-and-confer on a schedule for addressing the factual issues was denied. (Miller Decl. ¶¶ 5-9.)  CCDA Movants understand the Court's order (ECF No. 13607) as reflecting the Court's intent to resolve the CCDA Lift Stay Motion as a matter of law.  To the extent that the Court rules solely as a matter of law on the basis of pure legal issues, CCDA Movants do not require an oral argument to address pure legal issues.  However, CCDA Movants respectfully maintain that, in light of the Court's finding that CCDA Movants have a colorable claim at least to the Transfer Account Monies, there are factual issues that require discovery and a final evidentiary hearing.

58.     It is beyond dispute that the Commonwealth does not hold legal title to most of the Transfer Account Monies because the monies are in bank accounts controlled solely by the Tourism Company.  The Commonwealth is not a signatory or account holder on the Scotiabank -5142 account, nor on the FirstBank -3961 account.  Moreover, the Hotel Occupancy Tax Act (which remains on the books and is applicable to the full time period for which Transfer Account Monies have been collected) provides directions on how the Tourism Company is to dispose of the Hotel Taxes.  For the fiscal years at issue here, the Commonwealth did not direct that any of the Hotel Taxes be paid to the Commonwealth itself (or, indeed, to any Title III debtor).  13 L.P.R.A. § 2271v.  The Commonwealth thus authorized (indeed, required) that the Hotel Taxes collected for these fiscal years be transferred in accordance with § 2271v.[8]  The Assignment Agreement confirms the Tourism Company's ownership of the Transfer Account Monies, noting that the Tourism Company "irrevocably pledges, assigns, transfers, conveys, grants and sets over to GDB" its rights in the Transfer Account Monies.  CCDA Lift Stay Motion Ex. 3 (Assignment Agreement § 6).  The Tourism Company was designated an agent of the Commonwealth for purposes of the CCDA bond issuance, and the Commonwealth agreed to comply with the Assignment Agreement, so this agreement was effective to transfer any rights the Commonwealth might have had in the Transfer Account Monies.  13 L.P.R.A. § 2271v; 23 L.P.R.A. § 6450.

59.     The only basis on which the Commonwealth could assert any "equity," notwithstanding its explicit transfers of rights, is Article VI, Section 8.  But factually, the Commonwealth has not applied Transfer Account Monies to general obligation debt service for the applicable fiscal years (a necessary prerequisite of Article VI, Section 8).  And in any case, the

---

[8] While the Moratorium Acts and Moratorium Orders purported to suspend Tourism Company's transfer obligation, they were preempted by PROMESA § 303 (and the Moratorium Acts and Moratorium Orders did not direct that the money be transferred to the Commonwealth in any event).

conditions precedent for Article VI, Section 8 do not exist.  The Commonwealth's available

resources for fiscal year 2019 were over $10.6 billion.  (Miller Decl. ¶ 22.)  CCDA Movants have

"last dollars" protection; thus, the triggering conditions for clawing back property in which they

have a lien plainly have not been satisfied.  (CCDA Lift Stay Motion Argument § I.C; CCDA Lift

Stay Reply Argument § I.A; CCDA Lift Stay Sur-Reply Response § I.)

60.     At a minimum, because Movants have a colorable claim that the conditions of

Article VI, Section 8 have not been triggered, the stay should be lifted so that a non-Title III court

can resolve any relevant disputes.  It is not for this Court to resolve fact disputes.  To the extent

that the Court does wish to entertain such disputes, CCDA Movants would need discovery.

### 2.     The Property Is Not Necessary To An Effective Reorganization.

61.     Where, as here, the property at issue is cash, not tangible property, and the debtor

lacks equity in it, the property is not necessary—and indeed cannot be used at all—in the debtor's

reorganization.  *See In re City of Columbia Falls, Mont., Special Improvement Dist. No. 25*, 143

B.R. 750, 762 (Bankr. D. Mont. 1992).  Given that the Commonwealth lacks equity in this cash

property, it is "difficult to imagine" how the Commonwealth could meet its burden to demonstrate

that the Transfer Account Monies are needed for an effective reorganization.  *In re Lally*, 38 B.R.

622, 626 (Bankr. N.D. Iowa 1984) ("cause exist[ed] to justify termination of the stay" because

debtors lacked "equity" in the property), *aff'd*, 51 B.R. 204 (N.D. Iowa 1985).

### B.     There Is Additional "Cause" to Lift the CCDA Stay Under 11 U.S.C. § 362(D)(1) Because CCDA Movants Lack Adequate Protection.

62.     In addition to the "cause" set forth above, additional "cause" exists with respect to

CCDA because CCDA Movants "lack . . . adequate protection of an interest in property." 11

U.S.C. § 362(d)(1).  "[A]dequate protection may be provided by" (i) requiring a cash payment or

series of cash payments, (ii) providing an additional or replacement lien, or (iii) granting other

relief (besides administrative expense priority) that will "result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(1)–(3).

63.     The Commonwealth has not made any cash payments or provided any additional or replacement lien or collateral to CCDA Movants or the CCDA bondholders, so the only basis on which the Commonwealth could argue that CCDA Movants are adequately protected is by proving that they have received "the indubitable equivalent" of the value of their property rights. 11 U.S.C. § 361(3).  Courts consider the indubitable equivalence standard to be satisfied when, "as nearly as possible under the circumstances of the case [it] provide[s] the creditor with the value of his bargained for rights."  *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985).

64.     The Commonwealth cannot carry its burden of showing that CCDA Movants enjoy "the indubitable equivalent" of the value of its property rights.  11 U.S.C. § 361(3).  Under the status quo, the Board remains free to dissipate the property at will.  *In re Chatham Parkway Self Storage, LLC*, No. 12-42153, 2013 WL 1898058, at *6 (Bankr. S.D. Ga. Apr. 25, 2013) ("The Debtor may not use any of the [secured property] to administer his bankruptcy or for other general purposes, because for each dollar in [secured property] he spends, he deprives [the creditor] of the adequate protection of that dollar.").  There is no legal protection whatsoever ensuring that any funds will be available to Movants.

65.     Indeed, at least $15 million of Transfer Account Monies were transferred out of a Tourism Company account (the FirstBank -3961 account) to a Commonwealth account and spent for general Commonwealth purposes—which left insufficient funds to pay the amounts currently due and owing to Movants.  (*See Hughes Decl.* (ECF No. 13315), Ex. 44 (Ahlberg Tr. 538:8-20).) The limited discovery provided in connection with the CCDA Lift Stay Motion shows that money is freely transferred between and among Tourism Company accounts, and that there have been

numerous withdrawals from the Scotiabank -5142, BPPR -2306, Scotiabank -5138, FirstBank -2984, and Scotiabank -5144 accounts.  In many instances, the Commonwealth has no records showing the disposition of the funds; millions have gone missing.  (*See id.* ¶ 11.)

66.    CCDA Movants are not adequately protected for the additional reason that the amount owed to them exceeds the value of the property, and there is no "equity cushion" protecting them from loss.  *In re Worldcom, Inc., et al*., No. 02-13533 (AJG), 2003 WL 22025051, at *7 (Bankr. S.D.N.Y. Jan. 30, 2003).  This issue is made more serious by the way the Tourism Company is managing the property (holding it in uninsured accounts at high-risk banks). Scotiabank recently transferred its Puerto Rico accounts to Oriental Bank, such that Oriental Bank now maintains the -5142 account.  *See Hughes Decl*. (ECF No. 13315), Ex. 45 (Letter from E. McKeen, dated March 31, 2020).  Both Oriental Bank and First Bank have "junk" credit ratings on their debt, and the amounts held in these "junk"-rated banks are not government insured (such insurance covers only $250,000 per bank, *see* 12 C.F.R. § 330.11).  Although CCDA Movants have not had discovery into this issue, it appears that the uninsured accounts are general deposit accounts, not special deposits, which can be lost in a bank failure.  *See State ex rel. Barnett v. Exch. Nat'l. Bank of Tulsa*, 45 P.2d 759 (Okla. 1935) (bondholders incurred loss where municipality improperly held funds in a general deposit account, rather than a special deposit). The manner in which the property is being held creates substantial risk of loss.[9]

---

[9] In contrast to *Peaje Investments LLC v. García–Padilla*, 845 F.3d 505 (1st Cir. 2017), where the court found no lack of adequate protection where a creditor had an interest in a perpetual revenue stream, the Court's ruling here is that Movants' lien is limited to revenues deposited into a specific account (the Transfer Account), meaning the lien will not necessarily attach to future revenues in perpetuity.  Because Movants' collateral (as defined in the Court's preliminary ruling) is not a perpetual revenue stream, the *Peaje* analysis is inapplicable.

C.     **The Board's CCDA Adversary Proceeding Will Not Fully Adjudicate Movants' Rights to the Transfer Account Monies and Cannot Substitute for Movants' Statutory Right to Stay Relief.**

67.     The Court asked the parties to address whether Adversary Proceeding No. 20-004 obviates the need for stay relief.  *See Order Scheduling Further Proceedings In Connection With The Revenue Bond Stay Relief Motions*, Case No. 17-3283, Dkt No. 13607.  It does not.

68.     As an initial matter, the Court cannot consider prudential factors if it finds that CCDA Movants have established the requirements of § 362(d)(2).  *See Gracia-Gracia*, 939 F.3d at 347.  The plain text of the statute makes clear that the Court "shall" grant stay relief if the requirements of § 362(d)(2) are satisfied.  Congress allowed no exceptions.  Stay relief is also mandatory if CCDA Movants show "the lack of adequate protection of an interest in property."

69.     Even to the extent the Court finds that CCDA Movants qualify for relief only under a broader analysis of "cause" under § 362(d)(1), under which the Court arguably can consider a broader range of factors, the adversary proceeding does not obviate the need for stay relief because of the PROMESA § 305 bar.  *Ambac*, 927 F.3d at 605.  The Board could have consented to a broad waiver, but it did not.  Instead, it expressly did *not* consent to any "orders interfering with or ordering the turnover of revenue or other property to Claimants or any other party."  (*Revenue Bond Order*, Case No. 17-3283, Dkt. No. 9620 (Dec. 19, 2019).)  Deferring resolution of the CCDA Stay Motion while adjudicating the adversary proceeding would also violate § 362(e) and the Due Process Clause, and improperly compromise the neutrality of the federal judiciary.  *See supra* § I.B.

## CONCLUSION

70.     For the reasons stated herein, the Court should (i) grant the Lift Stay Motions to the extent of allowing Movants to bring their Contract Clause, Due Process Clause, Takings Clause, and PROMESA § 303 causes of action, and (ii) grant the CCDA Lift Stay Motion.

Dated: July 20, 2020
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By:     */s/ Roberto Cámara-Fuertes*
        Roberto Cámara-Fuertes (USDC-PR No. 219002)
        Sonia Colón (USDC-PR No. 213809)
        221 Ponce de León Avenue, 5th Floor
        San Juan, PR 00917
        Telephone: (787) 766-7000
        Facsimile: (787) 766-7001
        Email:    rcamara@ferraiuoli.com
                  scolon@ferraiuoli.com


**MILBANK LLP**

By:     */s/ Atara Miller*
        Dennis F. Dunne (admitted *pro hac vice*)
        Atara Miller (admitted *pro hac vice*)
        Grant R. Mainland (admitted *pro hac vice*)
        John J. Hughes, III (admitted *pro hac vice*)
        55 Hudson Yards
        New York, NY 10001
        Telephone: (212) 530-5000
        Facsimile:  (212) 530-5219
        Email: ddunne@milbank.com
                  amiller@milbank.com
                  gmainland@milbank.com
                  jhughes2@milbank.com


*Attorneys for Ambac Assurance Corporation*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corp.*

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Ellen M. Halstead (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        ellen.halstead@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
5430 LBJ Freeway, Suite 1200
Dallas, TX 75240
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com
Jason W. Callen (admitted *pro hac vice*)
150 3rd Ave., S., Suite 1600
Nashville, TN 37201
Telephone: (615) 651-6774
Facsimile: (615) 651-6701
Email: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

**RIVERA, TULLA AND FERRER, LLC**

By: */s/ Eric A. Tulla*
    Eric A. Tulla
    (USDC-DPR No. 118313)
    Email: etulla@ riveratulla.com
    Iris J. Cabrera-Gómez
    (USDC-DPR No. 221101)
    Email: icabrera@ riveratulla.com
    Rivera Tulla & Ferrer Building
    50 Quisqueya Street
    San Juan, PR 00917-1212
    Telephone: (787) 753-0438
    Facsimile: (787) 767-5784

**HOGAN LOVELLS US LLP**

By: */s/ Robin E. Keller*
    Robin E. Keller, Esq.
    Ronald Silverman, Esq.
    390 Madison Avenue
    New York, NY 10017
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    robin.keller@hoganlovells.com
    ronald.silverman@hoganlovells.com

*Attorneys for U.S. Bank National
Association, in its Capacity as Trustee
to PRIFA Bondholders*

**SEPULVADO, MALDONADO & COURET**

By: */s/ Albéniz Couret Fuentes*
    Albéniz Couret Fuentes
    (USDC-PR No. 222207)
    304 Ponce de León Ave. Suite 990
    San Juan, PR 00918
    Telephone: (787) 765-5656
    Facsimile: (787) 294-0073
    Email: acouret@smclawpr.com

**REED SMITH LLP**

By: */s/ Eric A. Schaffer*
    Eric A. Schaffer (admitted *pro hac vice*)
    Luke A. Sizemore (admitted *pro hac vice*)
    Jared S. Roach (admitted *pro hac vice*)
    225 Fifth Avenue, Suite 1200
    Pittsburgh, PA 15222
    Telephone: (412) 288-3131
    Facsimile: (412) 288-3063
    Email: eschaffer@reedsmith.com
        lsizemore@reedsmith.com
        jroach@reedsmith.com

*Attorneys for The Bank of New York Mellon, in
its Capacity as Trustee to CCDA Bondholders*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com