**Objection Deadline: September 21, 2020 at 4:00 p.m. (AST)**
**Hearing Date: September 28, 2020 at 9:30 a.m. (AST)**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | PROMESA Title III |
| AS REPRESENTATIVE OF | Case No. 17BK3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO | |
| Debtor[1] | |

## MED CENTRO INC.'S MOTION FOR RELIEF FROM THE
## AUTOMATIC STAY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

I.   COMPLIANCE WITH THE CASE MANAGEMENT ORDER…………………………..……...5

II.   PROCEDURAL BACKGROUND……………………………………………..………7

III.   THE MEDICAID FRAMEWORK…………………………………………….………11

IV.   MEDICAID AND THE COMMONWEALTH'S HEALTH PLAN…………………..14

V.   THE COMMONWEALTH'S FAILURE TO COMPLY WITH THE SETTLEMENT AGREEMENT……………………………………………………………………………...15

VI.   GROUNDS FOR RELIEF FROM THE AUTOMATIC STAY AND REMANDING THE CASE TO THE DISTRICT COURT…………………………………………………………..18

VII.   REQUESTED RELIEF………………………………………………………...…………...20

2

## TABLE OF AUTHORITIES

### Cases

*Atlantic Medical Center, Inc. v. Commonwealth of Puerto Rico*,
   06-cv-1291 (GAG)……………………………………………………………...…..8

*Concilio de Salud Integral de Loiza v. Perez-Perdomo*,
   551 F.3d 10, 17 (1st Cir. 2008)…………………………………………………….7, 8

*Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*,
   625 F.3d 15 (1st Cir. 2010)………………………………………………………...8

*Consejo de Salud v. Gonzalez-Feliciano*,
   695 F.3d 83 (1st Cir. 2012)…………………………………………………….……8

*Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*,
   465 F.3d 33 (1st Cir. 2006)………………………………………………………...…8

*Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*,
   488 F.3d 11 (1st Cir. 2007)…………………………………………...…………8

*Gurabo Community Health Center, Inc. et. al. v. Secretary of Health*,
   06-cv-1524 (GAG)………………………………………………………………....7

*In re Sonnax Indus., Inc.*,
   907 F. 2d 1280 (2d Cir. 1990)……………………………………………………19

*Municipality of San Juan v. Migrant Health Ctr., Inc.*
   919 F.3d 565 (1st Cir. 2019)…………………………….……………………………8

*Rio Grande Community Health Center, Inc. v. Armendariz*,
   792 F.3d 229, n. 1 (1st Cir. 2015)……………………………………………………8

*Rio Grande Community Health Center, Inc. v. Rullan*,
   397 F.3d 56 (1st Cir. 2005)………………………………………………...…8

*Rio Grande Community Health Center, Inc., et. al. v. Commonwealth of Puerto Rico, et. al.*,
   03-cv-1640 (GAG)……………………………………………………………………7

*Three Lower Counties v. Maryland*,
   498 F.3d 295, 297 (4th Cir. 2007)………………………………………………12, 16

### Statutes

11 U.S.C. § 362 (a)……………………………………………………………………..18

11 U.S.C. §362(d) ……………………………………………………………...……5

42 U.S.C. §1396a(bb)…………………………………………………………5, 7, 13, 16

42 U.S.C. §1396a(bb)(5)……………………………………………...……7, 14, 15

42 U.S.C. §1301(a)(8)(A)-(B)……………………………………………….…11

42 U.S.C. §1396a(a)(10)(A)……………………………...…………………12

42 U.S.C. § 1396d(l)(2)………...……………………………………………12

42 U.S.C. §254b……………………………………………………...………12

## Rules

42 C.F.R. §405.2469………………………………………………...……15

COMES NOW, Med Centro, Inc. (formerly Consejo de la Salud de la Comunidad de la Playa de Ponce, Inc.) ("Movant"), through its undersigned counsel, and respectfully moves for relief from the automatic stay pursuant to 11 U.S.C. §362(d) to allow it to pursue in case 06-cv-1260 (GAG) (Case No. 06cv1260) before the United States District Court for the District of Puerto Rico (the "District Court"): (1) the enforcement of one Confidential Settlement Agreement[2] (the "Settlement Agreement") entered in that case on October 7, 2011; (2) enforce compliance with the wraparound provisions included in the Medicaid statute at 42 U.S.C. §1396a(bb)(3) (commonly known as "PPS" or "Wraparound Payments"); and, (3) for the District Court to extend its enforcement jurisdiction over the Settlement Agreement beyond its current expiration date of October 7, 2020 (the "Claims"). (**Docket Nos. 989** and **1281**).

## I.      COMPLIANCE WITH THE CASE MANAGEMENT ORDER

1. On April 15, 2020, and in compliance with the amended case management order entered by this Court on February 28, 2020 (the "CMO") (**Docket No. 11885-1**), counsel for Movant wrote to the attorneys for the Commonwealth of Puerto Rico (the "Commonwealth"), the Financial Oversight Management Board of Puerto Rico ("FOMB") and Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") (collectively referred to as "Respondents") informing them of Movant's intent to seek relief from the automatic stay provisions of Section 362(a) of the Bankruptcy Code to prosecute the Claims and in light of the CMO and the lockdown resulting from the COVID-19 pandemic, suggested a telephone conference to discuss the possibility of filing a stipulation with the Court for Movant to be able to do so (the "Lift of Stay Notice") (**Exhibit A**).

---

[2] See: Docket No. 987, exh. 2 (Excepting the Docket Number of the CMO and as otherwise stated, reference to Docket Numbers are to those in Case No. 06cv1260(GAG).

2. Failing to receive a response within the time indicated in the Lift of Stay Notice, on May 7, 2020, Movant forwarded a letter to Respondents granting them until May 12, 2020 to respond to its initial letter, prior to moving this Court for relief. (**Exhibit B**).

3. On May 13, 2020, the Commonwealth on behalf of itself, FOMB and AAFAF rejected the Lift of Stay Notice, categorizing the same as seeking "improper remedies" on the erroneous basis that Case No. 06cv1260 had been "dismissed with prejudice" and that the District Court retained jurisdiction solely to enforce the Settlement Agreement for a period of four (4) years "which expired in 2015", "[a]s a result, the District Court no longer has jurisdiction over the Case and there are no remedies to be prosecuted therein in the absence of the automatic stay" (the "Denial") (**Exhibit C**).

4. In a further effort to dispose of the matter consensually, preventing waste of the valuable resources of this Court and unnecessary attorney's fees, and proving Respondents wrong as to the basis of the Denial, on May 14, 2020, Movant requested their reconsideration, underscoring "that on February 12, 2015 the District Court entered an order extending its enforcement jurisdiction for five years until October 7, 2020, without prejudice of further extensions" (**Exhibit D**).

5. Having been hoisted on their own petards, on May 18, 2020, the Commonwealth contumaciously denied Movant's request for reconsideration by stating that it had "determined in coordination with FOMB's and AAFAF's legal representatives to deny your request for modification of the stay as detailed in your Lift of Stay Notice since the remedies sought are not within the scope of the "Settlement Agreement", dated as of October 6, 2011, among the parties. While the District Court retained jurisdiction to enforce the Settlement Agreement until October 7, 2020, the Lift Stay Notice does not seek enforcement of the Settlement Agreement but, instead, a rebasing of the Prospective Payment System ("PPS") rates, which is not contemplated in the

6

Settlement Agreement (as you recognized in your April 15, 2020 letter) and outside the scope of the District Court's enforcement jurisdiction". (**Exhibit E**).

6. Respondents were wrong.  Federal law and the Settlement Agreement are clear that Wraparound Payments to Movant must be made in "the amount specified in 42 U.S.C. §1396a(bb)(5)…" (**Docket No. 987**, Exh. 2, ¶24.)  The District Court made clear that its enforcement jurisdiction included "non-compliance with the settlement, as well as any collateral, related issues that on occasion arise." (**Docket No. 1294**) at 06-cv-1260.  It is also the law in this Circuit that "[a]n FQHC[3] suing under § 1983 may enforce not only its right to receive Wraparound Payments but also its right to have those payments properly calculated." *Concilio de Salud Integral de Loiza v. Perez-Perdomo*, 551 F.3d 10, 17 (1st Cir. 2008).

7. As explained in greater detail *infra*, the Commonwealth has only made preliminary Wraparound Payments to Movant since the First Quarter 2018.  These preliminary payments do not comply with federal law, nor with the Settlement Agreement.  Movant seeks that the Wraparound Payments due thereto from the first quarter 2018 onwards for health care services provided thereby to Medicaid patients enrolled in the Commonwealth's Health Care Plan ("*Plan Vital*") be reimbursed in accordance with the statutorily established calculations, under Medicaid's PPS established for FQHCs and codified in 42 U.S.C. §1396a(bb)(3).

## II.     PROCEDURAL BACKGROUND

8.     Beginning in 2003 FQHC's in Puerto Rico have taken their claims for Wraparound Payments owed thereto under the Medicaid program to the federal courts. Several FQHCs joined as co-plaintiffs and their claims were filed in the case styled *Rio Grande Community Health*

---

[3] Federally Qualified Health Centers.

*Center, Inc., et. al. v. Commonwealth of Puerto Rico, et. al.,* 03-cv-1640 (GAG); *Gurabo Community Health Center, Inc. et. al. v. Secretary of Health,* 06-cv-1524 (GAG); and *Atlantic Medical Center, Inc. v. Commonwealth of Puerto Rico*, 06-cv-1291 (GAG).

9.   Movant did not to join the other FQHCs in those cases and filed its claim in Case No. 06-cv-1260.

10.   The cases proceeded along discrete tracks until the District Court consolidated them during February 2009 in Case No. 06-1260 and named Movant (then known as Consejo de Salud Playa de Ponce, Inc.) as the lead plaintiff.  (**Docket No. 191**)

11.   It is underscored that the First Circuit has issued nine opinions addressing the Commonwealth's failure to meet its statutorily required payments to the FQHCs.  See: *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56 (1st Cir. 2005); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33 (1st Cir. 2006); *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11 (1st Cir. 2007); *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10 (1st Cir. 2008) ("Perez-Perdomo"); *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 625 F.3d 15 (1st Cir. 2010); *Consejo de Salud v. Gonzalez-Feliciano*, 695 F.3d 83 (1st Cir. 2012); *Rio Grande Community Health Center, Inc. v. Armendariz*, 792 F.3d 229, n. 1 (1st Cir. 2015); *Municipality of San Juan v. Migrant Health Ctr., Inc.* 919 F.3d 565 (1st Cir. 2019).

12.   On October 7, 2011 Movant and the Commonwealth entered into the Settlement Agreement (**Docket No. 987-2**).  The District Court retained enforcement jurisdiction for a term of four (4) years.  (**Docket No. 990**).  Movant was the only FQHC to settle its claims with the Commonwealth, all others proceeded with their litigation, which continue to this date.

13.     Noting the Commonwealth's continued non-compliance with the Settlement

Agreement and federal law, [4] on February 12, 2015, the District Court extended its enforcement

jurisdiction for a term of five (5) additional years until October 7, 2020.  The Court noted that this

"term may be again extended." (**Docket No. 1281**)

14.     On April 28, 2015 the District Court ordered the severance of cases 03-1640(GAG),

06-1524(GAG) and 06-1291(GAG) from Case No. 06-1260 noting that, as to Movant, it "retained

its enforcement jurisdiction until October 7, 2020.  At this time, the issues that arise as to Plaintiff

Consejo are unique to it, and pertain to non-compliance with the settlement, <u>as well as any

collateral, related issues that on occasion arise</u>." (Underlined for emphasis.) (**Docket No. 1294**)

15.     On May 1, 2019, Movant filed a *Motion for Contempt* against the Secretary of

Health for the Commonwealth for his failure to make the <u>preliminary</u> Wraparound Payments due

for the first quarter 2019, related to the reimbursement of *post-petition* medical services provided

by Movant to Medicaid patients during January to March 2019 (**Docket No. 413**)

16.     The next day the District Court issued an Order to Show Cause stating;

Defendant shall show cause … as to why plaintiff's motion should not be granted,

and in the alternative, the court should not order any other remedy, such as a

---

[4] In denying without prejudice Movant's petition to hold the Secretary of Health in contempt, the
District Court ordered the immediate payment of all amounts owed stating that the "Court does
not want to hear any excuses for non-compliance and expects the Commonwealth to comply with
its obligation as per the terms of the settlement which it freely negotiated.  The court further
advances that it is contemplating its enforcement jurisdiction, given the pattern of delayed
payments.  To this effect, Plaintiffs Consejo *is invited to file the corresponding motion." (Italics
added.)* (**Docket No. 1272**).

The Commonwealth did not comply with the District Court mandated deadline and sought an
extension of time.  The District Court denied the Commonwealth's request and added the
following: "The Commonwealth has been on notice of the payments due and its <u>unflagging
obligation</u> to comply with federal law. The Court also advances that it has no choice but to extend
its enforcement jurisdiction." (**Docket No. 1278**)

garnishment. If relying on PROMESA, defendant must explain why up to present it has continued to make wraparound payments under the settlement agreement up to recently, even almost two years after PROMESA was enacted, and now has opted not to. In, turn, defendant shall explain why now it has taken a different posture, more so when the health and well-being of plaintiff's patient is at stake. Likewise, defendant has paid other 330 centers. (**Docket No. 1415**)

17.     After some procedural incidents, Movant and the Commonwealth agreed to file a Joint Notice to Seek Relief from the Automatic Stay in the captioned case (the "Stipulation") (**Docket No. 1434**). Most relevant to the matter at hand, the Commonwealth agreed to modify the automatic stay "solely to the limited extent necessary to allow the Commonwealth to continue to issue the prospective quarterly Wraparound Payments … to Movant pursuant to the Settlement Agreement <u>in the same manner the distributions have been made up to the fourth quarter of 2018…</u> ." D. 1434-1 at 06-1260, p. 3.

18.     As discussed in greater detail below, the Commonwealth's commitment to make future Wraparound Payments "in the same manner" as before means that the Commonwealth would only make preliminary payments pursuant to Section III(C)(1) of the Settlement Agreement which are based on the average of the two previous quarters. (**Docket No. 987-1**, p. 10)

19.     However, the Settlement Agreement requires the Commonwealth to make a second reconciled payment within sixty (60) after issuing the preliminary payment.  The reconciled payment calculates the total amount Movant is owed inserting actual data into the statutorily-established calculations by Medicaid's PPS and codified at 42 U.S.C. §1396a(bb)(5).  In particular: Medicaid billable visits and a current PPS rate that takes into account inflation and changes in scope.  (**Docket No. 987-1**, p. 10)

20.     The reconciled payment bridges the gap between the *preliminary* payment and what Movant is entitled to receive under the PPS. The preliminary payment is just that – preliminary.

21.     The Commonwealth has not issued a reconciled payment since the first quarter of 2018, only forwarding quarterly preliminary payments, for the same amount every quarter consisting of the average of the two previous equal payments, in violation of 42 U.S.C. §1396a(bb)(3), because the payments are not based on actual Medicaid visits, nor do they account for inflation and changes in the scope of services provided by Movant.

22.     The Commonwealth's continued failure to *fully* compensate Movant magnifies and perpetuates the gap between what Movant receives and what it is entitled to receive.  Movant estimates that, on the average, the Commonwealth has failed to compensate Movant for services rendered to Puerto Rico's Medicaid patients in an amount exceeding $1,200,000 per quarter since the first quarter of 2018.

### III.     THE MEDICAID FRAMEWORK

23.     The federal Medicaid program provides financial assistance to states that choose to participate and requires them to reimburse FQHCs who provide services to Medicaid enrollees. *See: e.g.,* 42 U.S.C. §1301(a)(8)(A)-(B).  Medicaid provides health coverage to millions of Americans, including eligible low-income adults, children, pregnant women, elderly persons and persons with disabilities.  Medicaid is administered by states, according to federal requirements.[5]

24.     States are not obligated to participate in Medicaid but must rigidly comply with federal requirements if they opt to do so.  *Rullan,* 397 F.3d at 61.

---

[5] https://www.medicaid.gov/medicaid/index.html

25.     Crucial to this discussion, participating states must offer "federally qualified health services," 42 U.S.C. §1396a(a)(10)(A), which may only be provided by FQHCs, such as Movant.

26.     FQHCs are defined as health centers that receive or meet the requirements for receiving grants under § 330 of the Public Health Service Act. ("PHS Act") *Id.* § 1396d(*l*)(2). Movant is therefore not only a "health center" receiving funds under the PHS Act but also, by definition, a FQHC receiving funds under the federal Medicaid program. *See, e.g., Three Lower Counties v. Maryland,* 498 F.3d 295, 297 (4th Cir. 2007).

27.     FQHCs are non-profit, community-based providers of primary health care services and fall under the oversight authority the Health Resources & Service Administration ("HRSA"), an agency of the U.S. Department of Health and Human Services. HRSA is the primary federal agency for improving health care to persons who are geographically isolated, economically or medically vulnerable.[6]   As an FQHC, Movant focuses on providing comprehensive and affordable primary and preventive health care to individuals who are uninsured or underinsured, as well as other vulnerable population.   Movant must provide these services regardless of a patient's ability to pay.

28.     Federal grants awarded under section 330 of the PHS Act are to be used solely for poor patients who lack health insurance, are not covered by Medicaid, and cannot obtain care from private sectors physicians or clinics.  These funds may not cover the costs of services that are paid for by public assistance (i.e. Medicaid) or other sources. 42 U.S.C. §254b.

29.     FQHCs are entitled to reimbursement for services they provide to Medicaid patients.  42 U.S.C. §1396a(bb)(1).  Reimbursement payments owed by a participating state to

---

[6] https://www.hrsa.gov/about/index.html

FQHCs are assessed through statutorily established calculations established by Medicaid's PPS. *Gonzalez-Feliciano*, 695 F.3d at 87. "[U]nder the PPS, the reimbursement for a given year is calculated by multiplying the number of visits by Medicaid patients to [an] FQHC in that year by the average cost per patient visit in fiscal years 1999 and 2000, adjusting to account for an FQHC's <u>change in services</u> **and** inflation." *Perez-Perdomo*, 625 F.3d at 17 (citing 42 U.S.C. §1396a(bb)(3)). (Underlined for emphasis.)

30.    For subsequent years that initial PPS per visit rate is to be adjusted by (1) the percentage increase in the Medicare Economic Index ("MEI") and (2) taking "into account any increase or decrease in the scope of services". 42 U.S.C. §1396a(bb)(3).

31.    Congress' purpose in passing the PPS reimbursement requirement is to ensure that health centers receiving funds under § 330 of the PHS Act would not have to divert PHS Act funds to cover the cost of serving Medicaid patients. The report of the House Budget Committee accompanying the 1989 legislation describes this payment guarantee specifically as follows:

> Medicaid payment levels to Federally-funded health centers cover less than 70 percent of the costs incurred by the centers in serving Medicaid patients. The role of [these health centers] . . . is to deliver comprehensive primary care services to underserved populations or areas without regard to ability to pay. To the extent that the Medicaid program is not covering the cost of treating its own beneficiaries, it is compromising the ability of the centers to meet the primary care needs of those without any public or private coverage whatsoever.
>
> * * *
>
> To ensure that Federal [Public Health Service] Act grant funds are not used to subsidize health center or program services to Medicaid beneficiaries, States would be required to make payment for these [FQHC] services at 100 percent of the costs which are reasonable and related to the cost of furnishing those services. *Maryland*,

13

498 F.3d at 297-98 (citing H.R. Rep. No. 101-247, *reprinted in* 1989 U.S.C.C.A.N.
1906, 2118-19).

32.     The PPS payment methodology is central to the successful relationship between
FQHCs and Medicaid as, unlike other providers, FQHCs cannot and do not restrict how many
Medicaid patients they care for if payment is too low.  Therefore, adequate Medicaid payments are
essential to Movant's ability to continue providing comprehensive high quality care to its patients,
regardless of their insurance status or ability to pay for services.

33.     The law in this Circuit is clear:

> Federal law, 42 U.S.C. § 1396a(bb)(5) requires not only that the Commonwealth
> set up a system for making wraparound payments but that these payments be
> properly calculated and made. Defendant cannot be in compliance with the statute
> unless the system she has implemented employs an appropriate methodology.
> *Perez-Perdomo*, 551 F.3d at 17.

## IV.     MEDICAID AND THE COMMONWEALTH'S HEALTH PLAN

34.     The Commonwealth opted to operate its Medicaid system by contracting with
manage care organizations ("MCOs").  The Commonwealth pays the MCOs a fixed monthly fee
and the MCOs either make a profit or suffer a loss depending on whether the costs of provided
services are less or greater than the fixed fee they receive from the Commonwealth.  *Gonzalez-
Feliciano*, 695 F.3d at 87.

35.     Since MCOs typically do not own facilities, they must routinely subcontract with
FQHCs to provide medical services. In practice, an MCO will commonly contract with a FQHC
for it to provide certain services to Medicaid beneficiaries for a fixed per-patient price or

14

"capitation." *Id.* To the extent that MCO's capitated payments to an FQHC are less than what the FQHC is entitled to under the PPS methodology, the Commonwealth is statutorily required to pay the FQHC a supplemental "wraparound" payment to make up for the difference. *Gonzalez-Feliciano*, 695 F.3d at 87. 42 U.S.C. §1396a(bb)(5), 42 C.F.R. §405.2469.

36.     These supplemental payments "shall be made . . . in no case less frequently than every 4 months." *Id.* § 1396a(bb)(5)(B). Thus, even when a State relies upon a managed care system to administer its Medicaid program, FQHCs are protected and must receive the full per-visit rate calculated pursuant to the methodology outlined in the Medicaid Act.   *Gonzalez-Feliciano*, 695 F.3d at 88. *Maryland*, 498 F.3d at 299.

## V.  THE COMMONWEALTH'S FAILURE TO COMPLY WITH THE SETTLEMENT AGREEMENT

37.     As indicated above, under the terms of the Settlement Agreement, the Commonwealth makes preliminary Wraparound Payments to Movant within thirty (30) days of the end of each quarter, consisting of the average of the payments for the two previous quarters. Within sixty (60) days, the Commonwealth is required to calculate the final Wraparound Payment using actual data for the quarter and in accordance with the PPS methodology codified at 42 U.S.C. §1396a(bb)(5). (**Docket No. 987-2**, p. 10)

38.     Since the first quarter 2018 the Commonwealth has only made preliminary payments to Movant, calculated on the average of the two previous payments, which have remained constant since then.

39.     The Commonwealth's preliminary payments do not comply with federal law because they:

15

a.      Are not based on a properly calculated PPS rate per visit.

b.      Do not take into account the actual billable Medicaid visits.

c.      Do not take into account inflation and do not adjust the per visit rate by the percentage increase in the Medicare Economic Index ("MEI").

d.      And, they do not "take into account any increase or decrease in the scope of services". 42 U.S.C. §1396a(bb)(3).

40.      In *Three Lower Counties v. Maryland,* 498 F.3d 295, 297 (4th Cir. 2007) the Fourth Circuit encountered a similar situation.  In that case Maryland adopted a practice where it would pay the FQHCs a portion of their Wraparound Payments in advance, labeling the PPS payments as "interim supplemental payment," and the remaining portion six to nine months after the end of the quarter labeling the balance as payments in "reconciliation" of the account, *Id.*at 299.

41.       The Fourth Circuit found that Maryland did not comply with its wraparound obligation under federal law stating:

> In arguing that it can make an *interim* supplemental payment with a frequency satisfying the four-month requirement and a reconciliation payment a year later, Maryland suggests a scheme that frustrates the very purpose for supplemental payments.  In enacting §1396a(bb)(5), Congress addressed its concern that the FQHCs be *fully and promptly* compensated for the services they render to Medicaid enrollees so that FQHCs could perform their vital function in delivering healthcare to underserved population in accordance with their §330 grants under the Public Health Service Act.  *Id*. at 303. (Italics in the original.)

42. The Settlement Agreement requires the Commonwealth to make Wraparound Payments to Movant in "the amount specified in 42 U.S.C. §1396(a)(bb)(5)…" This means that the Commonwealth's Wraparound Payments to Movant must account for (1) actual Medicaid visits,

(2) based on a PPS per visit rate adjusted for inflation and taking into account changes in the scope of service provided (i.e. type, duration, intensity, or amount of services provided by Movant).

43.    After all, "[a]n FQHC suing under §1983 may enforce not only its right to receive Wraparound Payments but also its right to have those payments properly calculated". *Perez-Perdomo*, 551 F. 3d. at 17.

44.    Finally, the Commonwealth's inconsistency in this case is underscored by recognizing its obligation to adjust the PPS per visit rate for changes in scope in the parallel litigations prosecuted by the remaining FQHCs in Puerto Rico.  Specifically, the Special Master in 06-cv-1640 (GAG) recognized at **Docket No. 946** that:

> [t]he center's current PPS rates are based on data that is now outdated. In the interim, the centers have experienced multiple changes in the scope of services they provide, as well as changes to their service delivery models and populations, e.g., extended hours and adoption of electronic health record systems. The current rates therefore do not reflect any increase of decrease in center costs associated with these scope changes.
>
> **The cumulative effect of such changes should be addressed through a rebasing, whereby the PPS rates are recalculated using cost and visit data from the two most recent audited fiscal years.** (Emphasis added)

45.    The Special Master went on to calculate new re-based rates using data from 2014 and 2015. The Plaintiffs and the Commonwealth agreed with the newly re-based PPS rates and the Court adopted them on March 19, 2019.  Case No. 03-cv-1640 (GAG), (**Docket Nos. 1195** and **949**).

17

## VI.  GROUNDS FOR RELIEF FROM THE AUTOMATIC STAY AND REMANDING THE CASE TO THE DISTRICT COURT

46.     Prospective compliance with federal law requires that the Commonwealth fulfills its wraparound obligations to Movant "*fully and promptly.*" *Maryland*, 498 F.3d at 303. (Italics in the original.) Movant is required to provide health services to any and all Medicaid beneficiaries and the Commonwealth is required to reimburse Movant in accordance with federal law.  Since the Commonwealth has failed to comply with its wraparound obligations beginning on the first quarter 2018 and given the limited nature of the Stipulation to make future Wraparound Payments "in the same manner," we must a *fortiori* conclude that the Commonwealth will continue to flaunt federal law unless relief from the stay provisions of 11 U.S.C. § 362 (a) is granted to allow Movant to prosecute the Claims.

47.     In view thereof, the Settlement Agreement as to which the District Court reserved enforcement jurisdiction includes ensuring the Commonwealth's continued compliance with its Wraparound Payments obligations under 42 U.S.C. §1396(a)(bb)(5).

48.     As an alternative, the Lift of Stay Notice is to be taken as a request for relief from stay to prosecute compliance with 42 U.S.C. §1396(a)(bb)(5) (PPS) in a new case before the District Court.

49.     11 U.S.C. §362(d)(1) states:

(d)     On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-For cause, including the lack of adequate protection of an interest in property of such party in interest.

50.     For the reasons stated herein there is cause for this Court to relieve Movant from the stay provisions of 11 U.S.C. 11 §362(a).

18

51.     In *In re Sonnax Indus., Inc.*, 907 F. 2d 1280 (2d Cir. 1990), the Court enumerated the following factors to be analyzed for purposes of evaluating relief from the automatic stay:

a.  Whether relief would result in a partial or complete resolution of the issues;

b.  Lack of any connection with or interference with the bankruptcy case;

c.  Whether the proceeding involves the debtor as a fiduciary;

d.  Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action.

e.  Whether the debtor's insurer has assumed full responsibility for defending it.

f.  Whether the action primarily involves third parties.

g.  Whether litigation in another forum would prejudice the interest of other creditors.

h.  Whether the judgment claim arising from the other action is subject to equitable subordination.

i.  Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor.

j.  The interests of judicial economy and the expeditious and economical resolution of litigation.

k.  Whether the parties are ready for trial in the other proceeding; and

l.  Impact of the stay on the parties and the balance of harms.

52.     There is cause for relieving Movant from the stay provisions of 11 U.S.C. § 362 as it meets the Sonnax factors: (a) relief will result in complete resolution of the issues; (b) Case No. 06-01260 lacks any connection with or interference with the Title III Petition (c) Case No. 06-

19

01260 doesn't involve Respondents as fiduciaries; (d) the District Court has ample experience with the Medicaid PPS provisions since it has presided over all FQHC cases since 2003; (e) there is no insurance applicable to Case No. 06-1260; (f) compliance with federal law by the Commonwealth will not prejudice the interests of other creditors; (g) Movant's right to be paid pursuant to the Medicaid Statute is not subject to equitable subordination; (h) the requested rebasing will not result in a judicial lien avoidable by the Commonwealth; (i) the interests of judicial economy and the expeditious and economical resolution of the relief requested herein warrant that it be heard by the District Court due to its familiarity with Case No. 06-01260 and the other FQHC cases; (j) the impact of the stay on Movant outweighs any impact or harm to the Commonwealth.

### VII. REQUESTED RELIEF

**WHEREFORE**, it is respectfully requested that an order in the form attached as **Exhibit E** hereto be entered granting Movant relief from the automatic stay of 11 U.S.C. § 362(a)(1) in order to proceed with Case No. 06-cv-1260 and seek (1) the enforcement of the Settlement Agreement; (2) compliance with the Wraparound Payments provisions included in the Medicaid statute at 42 U.S.C. §1396a (bb)(3), from the first quarter 2018 onwards; and (3) for the District Court to extend its enforcement jurisdiction of the Settlement Agreement beyond October 7, 2020.

**CERTIFICATE OF SERVICE:**   We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing and to all CM/ECF participants.

San Juan, Puerto Rico, this July 21, 2020.

20

*s*/**CHARLES A. CUPRILL-HERNANDEZ**
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel: 787-977-0515
Fax: 787-977-0518
E-mail:  ccuprill@cuprill.com


*s*/***Ignacio Fernández de Lahongrais***
Ignacio Fernández de Lahongrais
USDC - PR 211603
Capital Center Sur, Suite 202
Avenida Arterial Hostos #239
San Juan, Puerto Rico 00918-1475
Tel. 787-923-5789
ignacio@bufetefernandezalcaraz.com