**CHARLES A. CUPRILL, P.S.C., LAW OFFICES**   Exhibit A

*356 Fortaleza Street*   *Tels., (787) 977-0515*
*Second Floor*   *(787) 977-0516*
*San Juan, PR 00901*   *Fax. (787) 977-0518*

<u>Charles A. Cuprill-Hernández, Esq. – cacuprill@cuprill.com</u>

April 15, 2020

| | |
|---|---|
| Luis C. Marini Biaggi<br>Marini Pietrantoni Muñiz, LLC<br>MCS Plaza, 255 Ponce de León Ave. Ste. 500<br>San Juan, PR 00917<br>Switchboard: 787-705-2171<br>Direct: 787-705-2173<br>E: lmarini@mpmlawpr.com | Hermann Bauer<br>O'Neill & Borges, LLC<br>250 Ave. Muñoz Rivera, Ste. 800<br>San Juan, PR 00918-1813<br>D. 787-282-5723<br>T. 787-764-8181<br>E: hermann.bauer@oneillborges.com |
| Carolina Velaz Rivera<br>Marini Pietrantoni Muñiz, LLC<br>MCS Plaza, 255 Ponce de Leon Ave. Ste. 500<br>San Juan, PR 00917<br>Switchboard: 787-705-2171<br>Direct: 787-705-2173<br>E: cvelaz@mpmlawpr.com | Ubaldo M. Fernandez Berrera<br>O'Neill & Borges, LLC<br>250 Ave. Muñoz Rivera, Ste. 800<br>San Juan, PR 00918-1813<br>D. 787-282-5723<br>T. 787-764-8181<br>E: ubaldo.fernandez@oneillborges.com |
| Marcia I. Perez-Llavona<br>P.O. Box 9020192<br>San Juan, PR 00902-0192<br>T. 787-223-7932<br>F. 787-723-9188<br>E: marperez@justicia.pr.gov | Diana M. Perez<br>E: dperez@omn.com |
| Susana I. Peñagaricano-Brown<br>Puerto Rico Department of Justice<br>P.O. Box 9020192<br>San Juan, PR 00902-0192<br>penagaricanobrownusdc@gmail.com | |

**RE: Consejo de la Salud de la Comunidad la Playa de Ponce, Inc., now Med Centro Inc. v. Hon. Lorenzo Gonzalez as Secretary of the Department of Health of the Commonwealth of Puerto Rico (the "Commonwealth"), Case No. 06-1260 (GAG)**

On July 31, 2019, a stipulation modifying the automatic stay between the Commonwealth of Puerto Rico (the "Commonwealth") and Comunidad de la Playa De Ponce, Inc., now Med Centro, Inc. ("Med Centro") was filed in the Commonwealth's Title III proceedings under the

Puerto Rico Oversight Management and Economic Stability Act ("PROMESA"), filed by the Financial Oversight Management Board of Puerto Rico on May 3, 2017, Case No. !7 BK 3283-LTS (the "Stipulation") {EC, The Stipulation was filed pursuant to 11 U.S.C. §362(a), made applicable by Section 301 of PROMESA to the Commonwealth's Title III proceedings (the "Automatic Stay") in order for the Commonwealth to continue issuing to Med Centro. the estimated quarterly wraparound payments (the "Quarterly Payments") corresponding to supplemental payments under Title XIX of the Social Security Act, 42 U.S.C. §1396 et. seq. (the "Medicaid Statute"), under a Settlement Agreement reached in the case of reference on October 6, 2011, commencing with the first quarter of 2019.

The Medicaid Statute requires a state, in our case the Commonwealth, prospective payment system ("PPS") to account for changes in the scope i.e. type, duration, intensity, or amount of services that a federal qualified health center ("FQHC"), such as Med Centro, provides. 42 U.S.C. §1396 (a) (bb) (3).

Medicaid payment rules differ from those of other providers because federal law has established a PPS stating how FQHCs are to be paid for each Medicaid patient's visit. States were required to set a per visit payment rate for each FQHC based on the average of the center's costs incurred during 1999 and 2000 (the "base years"), costs which must be "reasonable" and "related" to the cost of providing the covered services.

In the case of Medicaid managed care plans, such as Puerto Rico's Plan Vital, the state's Medicaid Agency contracts with managed care organizations ("MCOs") for health care services to Medicaid patients. To the extent that MCO's capitated payments to an FQHC are less than what the FQHC is entitled to under the PPS methodology, a state must pay the FQHC a supplemental payment to make up for the difference. 42 U.S.C. §1396a(bb)(5), 42 C.F.R. §405 2469.

2

Pursuant to the Settlement Agreement, the base years used to calculate the PPS per visit rate to Med Centro were 2007 and 2008 **[ECF 391]**. For subsequent years that initial per visit PPS rate to be adjusted by (1) the percentage increase in the Medicare Economic Index ("MEI") and (2) "to take into account any increase or decrease in the scope of services". 42 U.S.C. §1396a(bb)(3). The Medicaid Statute does not provide any definition for what would qualify as a change in scope or the process to make such change. In 2001, the Centers for Medicare and Medicaid Services ("CMS") issued guidance defining a change in scope as a "change in the type, intensity, duration and/or the amount of services".

In Case Number 03cv1640 (GAG) filed by other FQHCs in Puerto Rico with the United States District Court for the District of Puerto Rico, the Special Master recognized at **ECF 946** that:

> [t]he center's current PPS rates are based on data that is now outdated. In the interim, the centers have experienced multiple changes in the scope of services they provide, as well as changes to their service delivery models and populations, e.g., extended hours and adoption of electronic health record systems. The current rates therefore do not reflect any increase of decrease in center costs associated with these scope changes.
>
> The culminative effect of such changes should be addressed through a rebasing, whereby the PPS rates are recalculated using cost and visit data from the two most recent audited fiscal years.

The Special Master went on to calculate new rates using data from 2014 and 2015. His Report and Recommendation was adopted in its entirety by the Court on October 13, 2016 **[ECF 949]**.

It must be noted that the aforesaid change in scope is not the same thing as a 330 grant change in scope (although a 330 change of scope may be the driver of a FQHC's PPS rate change in scope). As indicated above, CMS refers to changes in the "scope of services" for adjusting the

3

per visit reimbursement rate of an FQHC as a "change in the type, intensity duration, and/or amount of services". The Health Resources and Services Administration's approved change in scope modifies the services or sites in the FQHC's project scope for the section 330 grant; it does not approve a "change in the scope of services" for state Medicaid reimbursement purposes.

"An FQHC suing under §1983 may enforce not only its right to receive wraparound payments but also its right to have those payments properly calculated". *Concilio de Salud Integral de Loiza v. Pérez-Perdomo*, 551 F. 3d. 10, 17 (1st Cir. 2008).

The Settlement Agreement requires the Department of Health for the Commonwealth to pay Med Centro wraparound payments in "the amount specified in 42 U.S.C. §1396a(bb)5…" Thus, although the Settlement Agreement is silent as to the issue of the re basing, it specifically recognizes that wraparound payments must be made pursuant to the formula established in §1396 a(bb) as indicated above.

In line with the above and pursuant to the Eleventh Amended Notice Case Management and Administrative Procedures (the "CMO") of February 28, 2020 **[ECF 11885-1]** we are writing to advise you of Med Centro's intent to seek relief from the Automatic Stay for the purpose of prosecuting in Case No. 06-1260 (GAG) a request for the calculation of its PPS per visit rate, utilizing the applicable adjustable PPS per visit rate from 2009 forward pursuant to 42 U.S.C. §1396 (b) (b) (3) and CMS' 2001 guidance, including the corresponding wraparound payments, the cuase for which is indicated above. Med Centro would like to obtain the modification of the Automatic Stay for that purpose under a stipulation with the Commonwealth, the Oversight Board and AFFAF.

As indicated in the CMO and considering the local lockdown, we should confer telephonically to attempt to resolve Med Centro's request within fifteen (15) days from the date hereof. I can be reached at 787-412-1300. Failure to do so will result in the filing by Med Centro of a motion for relief from stay for the aforesaid purposes.

4

Cordially,

Charles A. Cuprill-Hernández

cc. Mr. Allan Cintrón Salichs

   Ignacio Fernández de Lahongrais, Esq.

   MVB

5