# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | )    PROMESA |
| THE FINANCIAL OVERSIGHT AND | )    Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) |
| | )    Case No. 17-bk-03283 (LTS) |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | ) |
| | ) |
| Debtors.[1] | ) |
| | X |

| | |
|---|---|
| In re: | ) |
| | )    PROMESA |
| THE FINANCIAL OVERSIGHT AND | )    Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | )    Case No. 17-bk-3567 (LTS) |
| as representative of | ) |
| | )    **Re:  ECF No. 871** |
| PUERTO RICO HIGHWAYS AND | ) |
| TRANSPORTATION AUTHORITY, | )    Case No. 17-bk-03283 (LTS) |
| | ) |
| - and - | )    **Re:  ECF No. 13708** |
| | ) |
| THE FINANCIAL OVERSIGHT AND | )    ***This Pleading Relates to HTA and*** |
| MANAGEMENT BOARD FOR PUERTO RICO | )    ***the Commonwealth Only, and*** |
| | )    ***Should Be Filed in Both Dockets.*** |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | X |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

—————————————————————— )

AMBAC ASSURANCE CORPORATION, ASSURED )
GUARANTY CORP., ASSURED GUARANTY )
MUNICIPAL CORP., FINANCIAL GUARANTY )
INSURANCE COMPANY, AND NATIONAL PUBLIC )
FINANCE GUARANTEE CORPORATION., )
)
)
Movants, )
)
v. )
)
THE FINANCIAL OVERSIGHT AND )
MANAGEMENT BOARD FOR PUERTO RICO, )
)
as representative of )
)
PUERTO RICO HIGHWAYS AND )
TRANSPORTATION AUTHORITY, )
)
- and - )
)
THE FINANCIAL OVERSIGHT AND )
MANAGEMENT BOARD FOR PUERTO RICO )
)
as representative of )
)
THE COMMONWEALTH OF PUERTO RICO, )
)
Respondents. )
————————————————————————— X

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................... 1

PROCEDURAL BACKGROUND............................................................................................... 4

ARGUMENT ................................................................................................................................ 5

    I.    MOVANTS SEEK EXTRAORDINARY RELIEF FROM AN
"EMERGENCY" OF THEIR OWN MAKING, AND THE COURT
SHOULD DENY THEIR REQUEST. .................................................................... 5

    II.    MOVANTS' MOTION IS NONSENSICAL, AS THEY WILL
APPEAL THE LIFT STAY ORDER. .................................................................. 11

    III.    MOVANTS ASSERT NO COLORABLE AVOIDANCE CLAIMS
TO JUSTIFY GRANTING EXTRAORDINARY INTERIM RELIEF. .............. 11

    IV.    THE COURT LACKS AUTHORITY TO "PRELIMINARILY
APPOINT" § 926 TRUSTEES. ........................................................................... 13

    V.    MOVANTS' RELIANCE ON THE APPOINTMENT OF CO-
TRUSTEES IN THE COFINA TITLE III CASE IS MISPLACED. ................... 14

CONCLUSION........................................................................................................................... 15

CERTIFICATE OF SERVICE .................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andalusian Global Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for
P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
954 F.3d 1 (1st Cir. 2020)....................................................................................2, 5, 9

*Caporicci v. Devine*,
No. 15-cv-3559 (FB) (LB), 2015 U.S. Dist. LEXIS 83418 (E.D.N.Y. June 26,
2015) ......................................................................................................................... 6-7

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
432 F. Supp. 3d 25 (D.P.R. 2020), *aff'd sub nom. Andalusian Global
Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin.
Oversight & Mgmt. Bd. for P.R.)*, 954 F.3d 1 (1st Cir. 2020) ......................9, 12, 13

*Max-Planck Gesellschaft zur Forderung der Wissenschaften E.V. v. Whitehead
Inst. for Biomedical Research*,
650 F. Supp. 2d 114 (D. Mass. 2009) ..................................................................6, 8

*Nat'l Council of Arab Am. v. City of New York*,
331 F. Supp. 2d 258 (S.D.N.Y. 2004).......................................................................6

*Nken v. Holder*,
556 U.S. 418 (2009).....................................................................................................8

*Penobscot Valley Hosp. v. Carranza (In re Penobscot Valley Hosp.)*,
No. 19-10034 ...............................................................................................................8

*Respect Maine PAC v. McKee*,
622 F.3d 13 (1st Cir. 2010).........................................................................................6

*Rosario-Urdaz v. Rivera-Hernandez*,
350 F.3d 219 (1st Cir. 2003)........................................................................................8

*Tough Traveler, Ltd. v. Outbound Prods.*,
60 F.3d 964 (2d Cir. 1995)....................................................................................6, 10

STATUTES

11 U.S.C. § 926(a) .................................................................................................7, 10, 13

48 U.S.C. §§ 2101–2241...................................................................................................1

**OTHER AUTHORITIES**

Collier on Bankruptcy ¶ 926.02 (16th ed. 2020) .........................................................................10

### OPPOSITION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO URGENT MOTION FOR BRIDGE ORDER

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA," and together with the Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' sole Title III representative pursuant to § 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submit this opposition (the "Opposition") to the *Urgent Motion for Bridge Order, and for Appointment as Trustees under 11 U.S.C. § 926* [Case No. 17-bk-3283, ECF No. 13708; Case No. 17-bk-3567, ECF No. 871] (the "Motion" or "Mot."), filed by Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, the "Movants").

In accordance with the Court's order [Case No. 17-bk-3283, ECF No. 13724; Case No. 17-bk-3567, ECF No. 875], this Opposition solely addresses Movants' request for entry of the proposed form of order attached as Exhibit A to the Motion (the "Bridge Order"). The Oversight Board reserves it right to oppose other relief sought in the Motion on any grounds.

### PRELIMINARY STATEMENT[3]

1.      Movants litigated and lost the threshold issue underlying the avoidance actions they want permission to prosecute—whether revenues undisputedly collected and retained by the Commonwealth and subject to clawback even if they were transferred to HTA, are property of

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] All capitalized terms not defined herein have the meanings ascribed to them in the Motion.

HTA in which Movants hold a property interest.  Nevertheless, Movants now ask to be appointed HTA's trustee to prosecute those actions, just in case they prevail on appeal and obtain a contrary judgment.  Pursuant to the Motion and the proposed Bridge Order, Movants ask the Court to "preliminarily appoint" them as trustees under Bankruptcy Code § 926 to file a complaint that will be immediately stayed while they litigate through the United States Supreme Court the threshold ruling they lost and the merits of their motion under Bankruptcy Code § 926.  This unprecedented request for extraordinary relief fails for five reasons.

2.      *First*, Movants do not meet the standard to seek extraordinary equitable relief on an emergency basis.  Movants could have filed a § 926 motion at any point during the last several years, but failed even to demand HTA pursue their proposed avoidance actions until January 2020.  After HTA promptly explained its reasons for declining to pursue those claims, including the reason that the claims lack merit, Movants waited nearly six (6) months to file the Motion.  Putting aside Movants' self-inflicted emergency through their own calculated delay, they cannot show any likelihood of success on the merits because this Court has already determined the disputed monies Movants would seek to recover through the proposed avoidance actions—Excise Tax Revenues— are not HTA's property and they have no security interest in them when collected by the Commonwealth.  And, in any event, Movants cannot establish irreparable harm to their "rights" under § 926 in the absence of interim relief because they have *no rights* under § 926.  The First Circuit has ruled the use of the word "may" shows the relief is discretionary.  *Andalusian Global Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 954 F.3d 1, 7 (1st Cir. 2020).  Moreover, the very issues Movants seek to litigate through their § 926 motion are being litigated even now through lift stay motions, adversary proceedings, and, notably, Ambac's own proof of claim, which specifically asserts the Commonwealth is liable

to Ambac for fraudulent conveyance.  Case No. 17-bk-3283, Claim No. 122277, Annex ¶ 69(f).
There is simply no reason to grant Movants control over avoidance actions and commence yet
another set of litigations under the circumstances.  Notably, Movants not only request the
appointment of a Section 926 trustee; they request appointment of themselves and do not even
divulge how they will govern themselves as co-trustees.

3.     *Second*, Movants' Motion makes no sense.  Movants admit they will appeal the
rulings that the Excise Tax Revenues are Commonwealth property and are not encumbered by
Movants' security interest until transferred to HTA and deposited into a certain account.  If
Movants prevail, they will have Fifth Amendment claims for takings of their collateral, albeit
subject to various defenses such as the revenues being subject to clawback.  They will not,
however, need avoidance actions, which as a practical matter would also be subject to the clawback
defense that the General Obligation debt will be paid less than in full  from the clawback revenues
(as the currently proposed plan of adjustment provides), among other monies.

4.     *Third*, Movants' request for emergency relief in the form of the Bridge Order
should be denied because the proposed avoidance claims have already been determined not to
achieve the level of "colorable," as the revenues at issue were determined to be Commonwealth
property, not HTA property.  And in any event, appointment of a "preliminary" § 926 trustee
would conflict directly with the Oversight Board's mandate to take a holistic approach to resolve
the fiscal crisis in Puerto Rico.  As Movants well know, once they are in place as trustees, the
Oversight Board would be unable to control and resolve the purported avoidance actions separately
or as part of a plan of adjustment.  Thus, the fact that Movants say the avoidance actions would be
stayed immediately, is no solution.

5.      *Fourth*, even if the Court were inclined to enter the Bridge Order, it cannot do so because § 926 does not permit the "preliminary" appointment of § 926 trustees.  Section 926 gives courts discretion to appoint trustees to pursue avoidance actions, but does not provide a legal basis for "preliminary" appointments of § 926 trustees.  The Bridge Order thus exposes Movants' request for entry of the Bridge Order for what it is:  an improper attempt to use § 926 to circumvent purportedly expiring statutes of limitation, all in an effort to gain bargaining leverage in the Debtors' Title III cases.  The Court lacks authority to grant the interim relief Movants seek under § 926, and should deny Movants' request to enter the Bridge Order for that independent reason.

6.      *Finally*, Movants' reference to the COFINA Title III case in which the Oversight Board proposed and appointed agents to represent its interests in the COFINA and Commonwealth contest over ownership of sales and use taxes, is unavailing.  While Movants claim the agent appointments demonstrate conflict, the Court-approved stipulation proves the opposite.  The stipulation reserved to the Oversight Board the power to propose its own settlement of the ownership contest in a plan of adjustment, *see* Case No. 17-bk-3283, ECF No. 996, regardless of the agents' recommendations.

## PROCEDURAL BACKGROUND

7.      On March 10, 2020, the Court entered the *Final Case Management Order for Revenue Bonds* [Case No. 17-bk-3283, ECF No. 12186; Case No. 17-bk-3567, ECF No. 729] ("Final CMO"), which set the deadline—that is, the *last* day—to file any motions seeking relief concerning "alleged continuing conflicts of interest of the Oversight Board and the Government of Puerto Rico acting for both the Commonwealth and HTA" (the "Conflict Motions") as "the later of (i) 15 days after the Court's ruling in connection with the preliminary hearing on the HTA Lift Stay Motion, and (ii) 15 days after issuance of the First Circuit's decision resolving the appeal of the Court's *Memorandum Opinion and Order Denying Renewed Motion of Certain Secured*

4

*Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as Trustees Under 11 U.S.C. § 926* (Docket Entry No. 9712 in Case No 17-3283)." *Id.* at 7.

8.      On March 19, 2020, the First Circuit affirmed this Court's decision denying the ERS Bondholders' motion to appoint a trustee under 11 U.S.C. § 926. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 954 F.3d at 5.

9.      On July 2, 2020, this Court denied Movants' Lift Stay Motion insofar as Movants sought stay relief or adequate protection for revenues other than monies in the Resolution Funds. Case No. 17-bk-3567, ECF No. 853 (the "Lift Stay Order"). Among other things, the Court found neither Movants nor HTA has a colorable claim to the Excise Tax Revenues not deposited in the certain specific accounts (defined therein as the "Resolution Funds"). *Id.* at 7. The Court also found that no statutory lien existed and no security interest existed on non-deposited Excise Tax Revenues because such revenues "are within the possession and control of the Commonwealth." *Id.* at 24, 33. Further, the Court found the Excise Tax Statutes provided only a commitment to transfer certain revenues "but do not go so far as to purport to grant property rights in the Revenues before they are transferred," *id.* at 26, and that "[n]either the Bond Resolutions nor the Excise Tax Statutes promise the Bondholders that the Commonwealth will pay them[.]" *Id.* The Excise Tax Statutes also "expressly provide[] that the Commonwealth is not liable for HTA's Bond obligations." *Id.*

## **ARGUMENT**

### I.      MOVANTS SEEK EXTRAORDINARY RELIEF FROM AN "EMERGENCY" OF THEIR OWN MAKING, AND THE COURT SHOULD DENY THEIR REQUEST.

10.      Movants seek unusual and extraordinary equitable relief through entry of the Bridge Order, which would "preliminarily" appoint them as § 926 trustees to file a complaint asserting

avoidance claims but then immediately stay those claims, nevertheless leaving Movants in control of the claims and preventing the Oversight Board from resolving them inside or outside a plan of adjustment.  Movants contend this "emergency relief" is "eminently equitable" and necessary "[t]o maintain the status quo and prevent irreparable harm to HTA and its Bondholders[.]"  Mot. ¶ 4. Of course, it does not preserve the status quo.  It puts Movants in control of avoidance action claims, whether the actions are stayed or not.  Movants' request is properly characterized as a request for temporary injunctive relief, but Movants do not meet the standard to obtain such relief

11.     *First*, Movants cannot obtain "emergency relief" in equity where they created the emergency.  Courts facing urgent demands for extraordinary relief decline to grant it where the moving party created the exigency motivating the request.  *See Respect Maine PAC v. McKee*, 622 F.3d 13, 16 (1st Cir. 2010) (denying injunction pending appeal in part because appellants' asserted "'emergency' is largely one of their own making"); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ("Where plaintiff seeking immediate, emergency relief delays in bringing suit, such delay may preclude emergency relief because "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.") (internal quotation omitted); *Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Research*, 650 F. Supp. 2d 114, 123 (D. Mass. 2009) ("A party cannot delay the initiation of litigation and then use an 'emergency' created by its own decisions concerning timing to support a motion for preliminary injunction."); *Nat'l Council of Arab Am. v. City of New York*, 331 F. Supp. 2d 258, 265–66 (S.D.N.Y. 2004) ("To a significant degree, the emergency created by this preliminary injunction application is of Plaintiffs' making[,]" and finding "Plaintiffs' delay is one of the equities that argues strongly against granting a preliminary injunction"); *Caporicci v. Devine*, No. 15-cv-3559

(FB) (LB), 2015 U.S. Dist. LEXIS 83418, at *2 (E.D.N.Y. June 26, 2015) (finding "by waiting until the eleventh hour to bring this action, Plaintiffs essentially created the exigency which they argue entitles them to emergency relief," and denying motion for preliminary injunction).

12.     Here, Movants alone created the so-called "emergency" motivating their application for the Bridge Order.  Movants complain the limitations period for avoidance actions will expire on August 14, 2020, but nothing precluded Movants from seeking appointment as § 926 trustees during the last several years.  Section 926 requires a debtor's refusal to pursue avoidance claims as a prerequisite to trigger a creditor's right to request appointment of a § 926 trustee, 11 U.S.C. § 926(a), but, here, Movants waited until January 15, 2020 even to demand HTA pursue avoidance claims against the Commonwealth.  Case No. 17-bk-3283, ECF No. 13711-1. After the Oversight Board, on behalf of HTA, promptly declined to pursue those claims on January 29, 2020 [Case No. 17-bk-3283, ECF No. 13711-2] and explained why the purported avoidance actions lacked merit, Movants waited nearly six (6) months to file the Motion.  Movants' delay— whether measured in *years* during which they could have filed the Motion or months since their demand was declined—alone defeats their request for entry of the Bridge Order.

13.     Movants imply they could not have sought earlier appointment as § 926 trustees because the Court, in the Final CMO, "ordered that conflict motions, *including Section 926 motions*, be filed by 15 days after the [Lift Stay Order]."  Mot. ¶ 33 (emphasis added).  That is false.  The Final CMO merely established the *outside* date for any Conflict Motions to be filed, not the *earliest* date for those motions, and said nothing about a date to seek § 926 relief.  Even assuming the Court intended to set a deadline for § 926 motions in the Final CMO (it plainly did not), nothing precluded Movants from filing a § 926 motion sooner.

14.     In short, Movants' request for emergency relief is the result of their strategic decision to pursue stay relief first, and then seek a second bite at the apple through a last-minute request for appointment as § 926 trustees to pursue, in significant part, the same relief they were denied.  Movants cannot "delay the initiation of litigation and then use an 'emergency' created by [their] own decisions concerning timing to support a motion for" injunctive relief.  *See Whitehead Inst. for Biomedical Research*, 650 F. Supp. 2d at 123.  Movants' request for entry of the Bridge Order should be denied.

15.     *Second*, putting aside the self-inflicted nature of Movants' alleged emergency, Movants do not meet the standard to obtain temporary injunctive relief.  Courts asked to grant such relief consider "(1) the probability of the movant's success on the merits, (2) the prospect of irreparable harm absent the injunction, (3) the balance of the relevant equities (focusing on the hardship to the movant if an injunction does not issue as contrasted with the hardship to the nonmovant if it does), and (4) the effect of the court's action on the public interest."  *Penobscot Valley Hosp. v. Carranza (In re Penobscot Valley Hosp.)*, No. 19-10034, Adv. Proc. No. 20-1005, 2020 Bankr. LEXIS 1213, at *6 (Bankr. D. Me. May 1, 2020) (quoting *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 221 (1st Cir. 2003)); *see also Nken v. Holder*, 556 U.S. 418, 428 (2009).

16.     Movants cannot satisfy that standard.[4]  Movants have no likelihood of success on the merits of their Motion for appointment as § 926 trustees because, as described below (*see infra*

[4] Even if the Court were to construe the request for entry of the Bridge Order as a request for a "stay" rather than an injunction—which it should not do, as a stay merely "operates upon the judicial proceeding itself" rather than "directing the conduct of a particular actor," *Nken v. Holder*, 556 U.S. 418, 428 (2009)—the standard for a stay runs parallel to the standard to grant injunctive relief.  *See id.* at 428 (stay factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."). Thus, for the same reasons as outlined above, Movants cannot satisfy the requirements for the entry of a stay.

Section III), the avoidance claims they seek to assert are not colorable in view of the Lift Stay

Order. Movants may "disagree" with the Lift Stay Order and be "hopeful" it will be reversed on

appeal (Mot. ¶ 3), and Movants may have visions of the Supreme Court of the United States taking

up their cause (Mot. ¶ 4), but disagreement and hope do not show any likelihood their proposed

avoidance claims will become colorable. Further, the premise of Movants' request—the Oversight

Board's purported "conflict" arising from its Congressionally mandated role as the sole Title III

representative of the Commonwealth and HTA—is false: there is no such conflict, and this Court

has already rejected that argument in the ERS Title III case. *In re Fin. Oversight & Mgmt. Bd. for

P.R.*, 432 F. Supp. 3d 25,  29-30 (D.P.R. 2020), *aff'd sub nom. Andalusian Global Designated

Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,

954 F.3d 1 (1st Cir. 2020); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 954 F.3d at 8 n.6.

Notably, Movants' specific reference to appeals through the Supreme Court, Mot. ¶ 4, demonstrate

their intent to take control of the avoidance actions for as long as humanly possible, even without

achieving any success whatsoever along the way.

17.     Nor can Movants demonstrate irreparable harm that they apparently did not view

as sufficiently irreparable to move earlier. Movants claim preliminary appointment as a § 926

trustee is necessary "to preserve their rights under Section 926," Mot. ¶ 3, but Movants *have no

rights* under § 926 other than to ask the Court, in its discretion, to appoint a trustee to pursue certain

avoidance claims. *See* 11 U.S.C. § 926(a). As such, entry of the Bridge Order will not "maintain

the status quo," Mot. ¶ 4, but instead, would grant inchoate affirmative relief the Court has no

power to grant. *See infra* Section II. As explained above, the Bridge Order does not maintain the

status quo. To the contrary, it transfers to Movants control over the litigation and settlement of

the purported avoidance actions, thereby interfering with the Oversight Board's powers to

9

restructure debt of HTA and the Commonwealth. Further, Movants' delay in filing the Motion belies any claim of immediate irreparable harm necessary to obtain extraordinary relief. *See Tough Traveler, Ltd.*, 60 F.3d at 968 (where plaintiff seeking immediate, emergency relief delays in bringing suit, such delay may preclude emergency relief because "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.") (internal quotation omitted). Movants not only waited years to ask HTA to pursue avoidance claims against the Commonwealth as required under § 926(a), but then waited nearly six (6) months after HTA declined to bring those claims to file the Motion. Case No. 17-bk-3283, ECF No. 13711-2. Movants also cannot claim irreparable harm to non-existent "rights" under § 926 arising from the Lift Stay Order: Likewise, Movants cannot claim "irreparable" harm should the Court decline to enter the Bridge Order, as briefing will be complete and the Motion will be under submission in advance of their alleged expirations of the limitations period.

18.     The two remaining factors weigh heavily against Movants. The balance of equities favors the Oversight Board: Movants have no rights under § 926, but "preliminarily" appointing them § 926 trustees would cloud both the Commonwealth's and HTA's Title III cases with lingering potential avoidance claims that would remain *stayed for years*, evidently until Movants are done petitioning the Supreme Court for relief. *See* Mot. ¶ 4. Likewise, there is no legitimate public interest in entering the Bridge Order, not only because appointment of a "preliminary" § 926 trustee is unprecedented and self-defeating, *see infra* Section II, but because entry of the Bridge Order would "permit a motion for a trustee to be used by creditors as a bargaining lever in negotiations over the plan," Collier on Bankruptcy ¶ 926.02 (16th ed. 2020), upsetting the plan process indeterminately. The Motion should be denied.

## II.    MOVANTS' MOTION IS NONSENSICAL, AS THEY WILL APPEAL THE LIFT STAY ORDER.

19.    The relief Movants seek through the Bridge Order also makes no sense.

20.    Movants admit they will appeal the Lift Stay Order to challenge the rulings that the Excise Tax Revenues are Commonwealth property and not encumbered by Movants' security interest until transferred into the Resolution Accounts.  If Movants prevail, they will then assert Fifth Amendment claims for takings of their collateral (subject to various defenses, such as the Excise Tax Revenues being subject to clawback).  But, then, Movants would not need avoidance actions, which as a practical matter would also be subject to the clawback defense that the General Obligation debt will be paid less than in full from clawback revenues, among other monies, as provided in the currently proposed plan of adjustment.

21.    As such, even assuming Movants prevail on appeal of the Lift Stay Order, they do not need avoidance actions, and cannot benefit from them.

## III.    MOVANTS ASSERT NO COLORABLE AVOIDANCE CLAIMS TO JUSTIFY GRANTING EXTRAORDINARY INTERIM RELIEF.

22.    Movants seek to bring four avoidance claims to recover Excise Tax Revenues pursuant to Bankruptcy Code §§ 544, 548, and 549.  Motion, Ex. C ¶¶ 137–171.  None of those claims is colorable, and as a result, the Court should not grant Movants' request for extraordinary interim relief.[5]

23.    As this Court recognized previously in the ERS Title III case, the inquiry to determine whether a creditor has standing to sue on a debtor's behalf generally begins (but

---

[5] In accordance with this Court's order [Case No. 17-bk-3283, ECF No. 13724; Case No. 17-bk-3567, ECF No. 875], the Oversight Board only addresses this issue in response to Movants' request for entry of the Bridge Order.  The Oversight Board reserves its right to oppose the Motion more fully and on any grounds in an opposition to the merits of the Motion should the Court deny Movants' request for the Bridge Order.

certainly does not end) with the movant establishing "there are colorable claims for relief that on appropriate proof would support a recovery[.]" *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d 25, 29 (D.P.R. 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020).

24.    Movants already litigated and lost the threshold issue to prove colorability.  The proposed claims are not colorable  because the disputed monies Movants would seek to recover as § 926 trustees (viz. Excise Tax Revenues) were never property of HTA or Movants.  Lift Stay Order at 23, 27.  Not having been HTA's property, HTA has no actions to avoid its transfers of such revenues.  There can be no successful avoidance actions where the disputed monies are not debtor property and cannot be "clawed back" as a matter of law.  As such, the Court should not "preliminarily appoint" Movants as § 926 trustees to pursue their baseless proposed claims.

25.    Even if Movants' proposed avoidance claims were colorable (which they are not), the cost to the Debtor of any "preliminary" appointment of § 926 trustees under the Bridge Order— a "preliminary" appointment designed to last for years while accomplishing nothing—would significantly outweigh any benefit.  The Bridge Order would cast a pall over the Title III cases by allowing Movants, through their "preliminary" appointment, to hold those claims outstanding and beyond resolution indefinitely.  Movants' request for the Bridge Order therefore is not only abusive, but designed to interfere with the Debtors' effort to emerge from Title III.

26.    Preliminary appointment as § 926 trustees would also interfere with the Oversight Board's mandate to develop a holistic approach to the Title III cases.  As this Court recognized previously, and as affirmed by the First Circuit, "the 'primary purpose' of governmental insolvency proceedings 'is not future profit, but rather continued provision of public services,'" and as a result,  "[t]he goal of these PROMESA cases thus is not merely to maximize creditors' recoveries" but instead "require a more holistic approach that focuses on the continuation and

future of a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well as provide proper recompense of creditors." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 30. Any "preliminary" appointment of § 926 trustees empowered to freeze resolution of purported avoidance claims flies in the face of that mandate.

## IV. THE COURT LACKS AUTHORITY TO "PRELIMINARILY APPOINT" § 926 TRUSTEES.

27. Even if the Court were inclined to grant Movants' request for extraordinary relief, it could not do so because it has no power to "preliminarily appoint" § 926 trustees as contemplated by the Bridge Order. Movants' underlying request for relief is therefore improper, and the Court should deny it for that independent reason.

28. Section 926(a) permits the Court to "appoint" a § 926 trustee "*to pursue*" certain avoidance claims where a debtor refuses to do so. 11 U.S.C. § 926(a) (emphasis added). Section 926, however, does not provide for the "preliminary" appointment of a trustee, and by its plain terms does not contemplate appointment of a trustee—preliminarily or otherwise—that is not empowered to pursue proposed avoidance actions.

29. Here, Movants ask the Court to appoint them as trustees barred *ab initio* from pursuing any avoidance actions by design. Motion, Ex. A. That is impermissible under the plain terms of § 926, which contemplates neither appointment of "preliminary" trustees nor appointment of trustees barred from pursuing any claims. Put differently, Movants are requesting appointment as § 926 trustees for the express purpose of taking control over the purported avoidance actions, not to prosecute them. Movants cite no authority providing for the "preliminary" appointment of a § 926 trustee, and the Oversight Board has located no such authority.

13

30.    The lack of support for a preliminary appointment of § 926 trustees betrays Movants' true purpose:  they seek to use § 926 as an improper procedural means to sit on potential claims as bargaining leverage, and to circumvent the statutory limitations periods on the avoidance claims they seek to assert.  Entry of the Bridge Order would not only exceed the relief available to Movants under § 926, but would invite future § 926 claimants to sleep on their rights only to seek belated appointment as trustees on a "preliminary" basis and unilaterally toll the relevant statutes of limitations to bring avoidance actions.  Congress plainly did not intend § 926 to be used for such procedural gamesmanship, and therefore did not provide for "preliminary" appointments of trustees that *might* pursue claims should future opinions and appeals reverse laws of the case and shake out in their favor.[6]

31.    The Court should deny Movants' request for entry of the Bridge Order because, by its plain terms, Section 926 does not permit the relief Movants seek.

## V.    MOVANTS' RELIANCE ON THE APPOINTMENT OF CO-TRUSTEES IN THE COFINA TITLE III CASE IS MISPLACED.

32.    Finally, Movants' reference to the appointment of co-trustees in the COFINA Title III case (Mot. ¶ 6), in which the Oversight Board proposed and appointed agents to represent its interests in the COFINA and Commonwealth contest over ownership of sales and use taxes, is unavailing.  That stipulation did not concern § 926.  Movants claim the stipulation indicates conflict (Mot. ¶ 6), but the stipulation, approved by the Court, demonstrates the opposite:  it reserved to the Oversight Board the power to propose its own settlement of the ownership contest

---

[6] Movants' request also contrasts starkly with appointment of co-trustees by stipulation and consent by the representative of the debtor.  *Cf.* Case No. 17-bk-3283, ECF No. 7749 (order entering stipulation between Special Claims Committee of the Oversight Board and the Official Committee of Unsecured Creditors). Whether something is done by agreement or consent is a far cry from a finding that the statute in question confers such rights.

in a plan of adjustment [*see* Case No. 17-bk-3283, ECF No. 996], regardless of the agents' recommendations.  Further, as noted above (*supra* note 6), there is a significant difference between an agreement to appoint trustees, and a finding a statute confers such rights.

## **CONCLUSION**

33.     For the foregoing reasons, the Court should deny Movants' request for entry of the Bridge Order.[7]

*[Remainder of Page Intentionally Left Blank]*

---

[7] As for the DRA Parties' Joinder [Case No. 17-bk-3283, ECF No. 13718; Case No. 17-bk-3567, ECF No. 873], none of the arguments raised therein supports entry of the Bridge Order.

Dated: July 22, 2020
San Juan, Puerto Rico

Respectfully submitted,

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Julia D. Alonzo (*pro hac vice*)
William D. Dalsen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: brosen@proskauer.com
Email: mdale@proskauer.com
Email: jalonzo@proskauer.com
Email: wdalsen@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth of Puerto Rico and the
Puerto Rico Highways and Transportation
Authority*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 22, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
