# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO ("ERS"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>**Re: ECF No. 838, 871, 891, 893, 923** |

**AAFAF'S REPLY TO CLAIMANTS' BRIEF IN OPPOSITION TO MOTIONS TO DISMISS CLAIMANTS' PROOFS OF CLAIM AND MOTIONS FOR ALLOWANCE OF <u>ADMINISTRATIVE EXPENSE CLAIMS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); and (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

1. The 2017 PayGo Legislation[1] has been in effect for more than three years and operates as intended—the Commonwealth assumed ERS's pension payment obligations, pensions have been paid to retirees without interruption and on a timely basis, and 401(k) accounts for government employees are now operational. The Bondholders' opposition (the "Response") recycles several arguments claiming the PayGo Legislation violated the automatic stay, notwithstanding the plain language of PROMESA sections 303 and 305. None has merit.[2]

## ARGUMENT

**I.  PROMESA Sections 303 and 305 Do Not Have a "Financial Relations" Exception.**

2. The Court should reject the Bondholders' argument that sections 303 and 305 exempt "the Commonwealth's financial relations with its instrumentalities," Response at 34-35. The Bondholders have asserted this position before, which the First Circuit and this Court implicitly rejected in their respective decisions denying the Bondholders' demand to appoint a trustee under Bankruptcy Code section 926. These decisions held that this Court could take into account sections 303 and 305 in deciding whether to appoint a trustee. *Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd.)*, 954 F.3d 1, 8-9 (1st Cir. 2020); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-3283, 2020 U.S. Dist. LEXIS 7992, at *13 (D.P.R. Jan. 7, 2020). Just as there is no "financial relations" exception that would bar the Court from considering sections 303 and 305 in deciding whether to appoint a

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as stated in the *AAFAF Statement and Supplemental Memorandum in Support of Motion of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Disallow and Dismiss Claims Asserted or Filed by ERS Bondholders and the ERS Fiscal Agent Pursuant to Bankruptcy Rules 3007(B) & 7012(B)* [Case No. 17-bk-3283, ECF No. 13058; Case No. 17-bk-3566, ECF No. 893] (the "Statement in Support") or the *Motion of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Disallow and Dismiss Claims Asserted or Filed by ERS Bondholders and the ERS Fiscal Agent Pursuant to Bankruptcy Rules 3007(b) & 7012(b)* [Case No. 17-bk-3283, ECF No. 13054; Case No. 17-bk-3566, ECF No. 891] (the "Motion").

[2] Indeed, if there were any meritorious basis to challenge the PayGo Legislation, the Bondholders would have sought an injunction three years ago.

trustee, no such exception bars the Court from considering sections 303 and 305 in deciding whether the automatic stay has been violated. If such an exception existed, then the prior decisions could not have relied on sections 303 and 305. But they did.

3. The lack of a "financial relations" exception is evident from the statute's text. Section 303 states:

> Subject to the limitations set forth in subchapters I and II of this chapter, this subchapter does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality, including expenditures for such exercise, but whether or not a case has been or can be commenced under this title . . .

[The provision goes on to list three exceptions inapplicable here.]

48 U.S.C. § 2163.

4. The Bondholders offer no authority that would justify ignoring the statute's plain language, which expressly protects "expenditures" for the exercise of political or governmental powers. And, given that section 303 has specific exceptions (inapplicable here), no additional exceptions exist. *See, e.g.*, *Sunshine Dev. Inc. v. FDIC*, 33 F.3d 106, 116 (1st Cir. 1994) ("When, as now, a law itself contains an enumeration of applicable exemptions, the maxim 'expressio unius est exclusio alterius' ordinarily applies. Under that maxim, a legislature's affirmative description of certain … exemptions implies denial of nondescribed … exemptions.") (citations omitted).[3] Indeed, because "financial relations" is so broad a term, there would be no need for the more specific exceptions in section 303, thereby rendering them redundant—an interpretation the Court

---

[3] On its face, "financial relations" encompasses a broad swath of legislative activity. Given the roughly 140 covered entities under PROMESA and the number of entities in Title III and VI proceedings, much of the Legislative Assembly's activity necessarily affects financial relations with instrumentalities. For example, passing a budget that allocates funds to a public corporation or municipality, or passing a law that directly or indirectly affects taxes or other revenue streams, or that creates, expands, terminates, or contracts various government programs, departments, public corporations, or other government entities could all be stay violations if there were a "financial relations" exception. The workings of the government would grind to a halt.

2

must avoid. *See United States v. Alaska*, 521 U.S. 1, 59 (1997) (noting that "the Court will avoid an interpretation of a statute that 'renders some words altogether redundant.'"); *Lopez-Soto v. Hawayek*, 175 F.3d 170, 173 (1st Cir. 1999) ("It is a time-honored tenet that '[a]ll words and provisions of statutes are intended to have meaning and are to be given effect, and no construction should be adopted which would render statutory words or phrases meaningless, redundant, or superfluous.'").

5. Likewise, no "financial relations" exception appears in PROMESA section 305, which, by its terms, deals with property, revenues, and income—*i.e.*, financial relations:

> Subject to the limitations set forth in titles I and II of this Act, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with— (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income producing property.

48 U.S.C. § 2165.

6. The Court's analysis should end here. Barred by the text, the Bondholders instead point to inapposite case law to assert that "'political or governmental powers' under [sections] 303 and 305 encompass only 'basic matters of the organization and operation of government that are incidents of sovereignty' and 'do not extend to financial relations between the state and its municipalities.'" Response at 35 (quoting *In re City of Stockton, California*, 526 B.R. 35, 54 (Bankr. E.D. Cal. 2014). The Bondholders have advanced this argument before, unsuccessfully. *Stockton* does not create a "financial relations" exception and does not apply to this case.

7. In their litany of gripes about the alleged ill intent and wrongful effects of the PayGo Legislation, *see* Response at 36-37, what the Bondholders are really saying is that their view of the PayGo Legislation should supplant the judgment of Puerto Rico's elected

3

representatives.[4] But that is exactly why section 303 exists—to permit the Commonwealth to exercise its political and governmental powers without interference from provisions of the Bankruptcy Code. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-BK-3283 (LTS) (D.P.R. Sept. 18, 2018), ECF No. 3941 ("Order Denying Stay") (denying request for application of the automatic stay to GDB restructuring legislation, in part due to the powers reserved to the government under PROMESA sections 303 and 305).[5]

8. The Bondholders next make the straw-man argument that Congress's purported abrogation of the Commonwealth's sovereign immunity with respect to section 362 "would have no meaning if any time it was accused of violating an automatic stay, the Commonwealth could deploy [section] 303 as an absolute defense to its actions." Response at 37-38. The Commonwealth is not arguing for sovereign immunity and has not asserted an "absolute defense" that would immunize all its actions. The Commonwealth is invoking the specific powers that Congress preserved for the government in section 303. Even those powers are not absolute. For example, an effort to collect a contract debt or to continue a lawsuit on a purely commercial basis between two government entities might not be covered by section 303. The only issue here is whether section 303 exempts the PayGo Legislation from the automatic stay, which it does.

---

[4] The Bondholders state in passing that "discovery will establish" that the PayGo Legislation was not an exercise of political or governmental powers, Response at 37, but this makes no sense. PayGo is, on its face, an exercise of control by the Commonwealth over ERS and with respect to the Commonwealth's pension systems. This is evident from the PayGo statute itself. Discovery is irrelevant as to whether or not political or governmental powers were exercised or what the Legislative Assembly intended. Moreover, the Bondholders already obtained discovery from ERS, the Commonwealth, and AAFAF into the PayGo Legislation. In 2019, they received thousands of pages of documents and even took 30(b)(6) depositions of AAFAF, the Commonwealth, and ERS regarding the PayGo Legislation, yet they have nothing to show for it.

[5] The Bondholders try to diminish the Court's analysis by arguing that "while the court invoked [sections] 303 and 305 generally, it never interpreted the specific meaning of 'political or governmental powers ….'" Response at 37, n.25. Not so. The Court made clear that the "political or governmental powers" protected by sections 303 and 305 encompass "the GDB Restructuring Act, which creates new entities, authorizes asset transfers, and curtails certain causes of action of the Commonwealth and the instrumentality debtors." Order Denying Stay at 6. This means the Court found that legislation affecting the Commonwealth's financial relations with its instrumentalities falls within the meaning of "political or governmental powers."

9. The Bondholders' final argument is that section 305 should not bar an order declaring that the Commonwealth violated the automatic stay because such an order "would not interfere with property of the Commonwealth; it would instead restore property to ERS that was taken from it."[6] Response at 38. This is a non-sequitur. Section 305 exists to protect the Commonwealth's political and governmental powers as a debtor and not just its property, notwithstanding that it consented to ERS's Title III filing. Moreover, the Bondholders miss that such an order would also interfere with *ERS's* governmental powers, as a debtor, to control its property. ERS has not objected to the use of its property (to the extent its property is being used under PayGo), and ERS's consent cannot be overridden by a creditor seeking to invoke the automatic stay on ERS's behalf.

## II. Bankruptcy Code Section 362(b)(4) Applies to the PayGo Legislation.

10. Even if PROMESA sections 303 and 305 did not exist, Bankruptcy Code section 362(b)(4) would also protect the PayGo Legislation. The Bondholders contend section 362(b)(4)'s "police power" exception to the automatic stay does not apply to legislative acts, Response at 39-40, *citing In re Albion Disposal, Inc.*, 217 B.R. 394, 398 (W.D.N.Y. 1997), but *Albion* is no longer good law in light of the 1998 amendment to section 362(b)(4).

11. In *Albion*, the chapter 11 debtors brought an adversary proceeding against the defendant town and town board for violation of the automatic stay under Bankruptcy Code section 362(a)(3).[7] The court addressed "whether, assuming that the allegations set forth in the Amended

---

[6] Contrary to the Bondholders' accusation, ERS shares a common interest with the Commonwealth regarding pension reform and is a willing participant in implementing the PayGo Legislation. *See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-BK-3283 (LTS), 2019 U.S. Dist. LEXIS 145076, at *7-8 (D.P.R. May 6, 2019) (Magistrate Judge order finding ERS, the Commonwealth, and Oversight Board share "a common interest in effective pension reform for the benefit of pensioners."); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 390 F. Supp. 3d 311, 322–23 (D.P.R. 2019) (overruling objections to Magistrate Judge order).

[7] Section 362(a)(3) provides, in pertinent part, that unless the Bankruptcy Code expressly provides otherwise, the filing of a petition for reorganization operates as a stay, applicable to "all entities," of "any act . . . ***to exercise control over property of the estate***." 11 U.S.C. § 362(a)(3) (emphasis added).

Complaint are true, the defendants have committed **an act to exercise control over property of the estate**." *Albion*, 217 B.R. at 403 (emphasis added). The court concluded that the defendant town had, in fact, attempted to exercise control over property of the estate, and therefore it had violated the stay under section 362(a)(3). *Id.* at 409–10.

12. But the court's analysis would likely have led to the opposite result under the 1998 amendment to section 362(b)(4). That amendment "combined paragraphs (4) and (5) of subsection (b) into a single paragraph (4), [and] **expanded the scope of the exception to activities that are stayed under subsections (a)(3)** or (a)(6) of section 362[.]"[8] 3 Collier on Bankruptcy P 362.05 (16th 2020) (emphasis added). In other words, the amendment expanded section 362(b)(4) to encompass a government "action or proceeding" that falls within the scope of section 362(a)(3)—which is exactly what the town ordinance did according to the *Albion* court. Such conduct would thus be exempted under the amended section 362(b)(4).[9]

13. The Bondholders also fail to distinguish *In re Lacoquille Investment Co., Inc.*, 44 B.R. 731, 733 (Bankr. S.D. Fla. 1984), where a town ordinance was "expressly exempt" from the automatic stay. The Bondholders argue that "[w]hile the court noted in dicta that if the ordinance were ruled to be an 'action or proceeding against the debtor' it would nonetheless be covered by § 362(b)(4), the court did not purport to rule that the legislation falls within the exception." Response

---

[8] Section 362(b)(4), as amended, reads in pertinent part: "The filing of a petition . . . does not operate as a stay . . . under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power[.]" 11 U.S.C. § 362(b)(4).

[9] Even apart from the 1998 amendment, *Albion* is questionable authority for the proposition that section 362(b)(4) never applies to legislation. Although the court found that the city ordinances at issue were not an "action or proceeding" under section 362(b)(4), the single paragraph stating this finding rests on an observation that all the cases cited by the Town of Albion involved a "lawsuit or administrative proceeding." *Albion*, 217 B.R. at 410. That the exception often applies to lawsuits and administrative proceedings does not mean the exception applies only in those circumstances.

at 42. Not so. The *Lacoquille* court's analysis consisted of two parts, both of them essential to the decision: (1) the automatic stay under section 362(a)(1) likely did not apply to the town's enactment of the ordinance, but even if the stay did apply, (2) the town's enactment "was necessarily an action or proceeding to enforce the town's police or regulatory power, and, therefore, expressly exempt under § 362(b)(4)." *Lacoquille*, 44 B.R. at 733. Thus, the court found that the town's enactment of the ordinance was not subject to the stay, regardless of whether section 362(a)(1) applies, because it fell within section 362(b)(4). *Id.*[10]

14. Notwithstanding *Lacoquille*, the Bondholders argue that an "action or proceeding" in section 362(b)(4) is a "narrow phrase" that does not encompass legislation. Response at 40. The phrase "action or proceeding," however, is not qualified by the terms "judicial" or "administrative," which Congress uses in other sections of the Bankruptcy Code and PROMESA when making clear that the phrase should be narrowly construed. *See, e.g.*, 11 U.S.C. § 362(a)(1) ("judicial, administrative, or other action or proceeding"); 11 U.S.C. § 922(a)(1) ("judicial, administrative, or other action or proceeding"); 48 U.S.C. § 2194(b)(1) ("a judicial, administrative, or other action or proceeding."). It should be presumed that Congress "act[ed] intentionally and purposely" when "includ[ing] particular language in one section of a statute but omit[ting] it in another." *Russello v. United States*, 464 U.S. 16, 23 (1983). Without any limiting language to "action or proceeding," the police and regulatory exception under section 362(b)(4) is broad to

---

[10] In explaining its holding, the *Lacoquille* court stated: "Without question, the purpose of chapter 11 is to permit successful rehabilitation of debtors, as my colleague notes. However, this purpose does not exempt a debtor from the exercise of municipal legislative authority or any other exercise of its police or regulatory power. Nor does it vest this court with the authority to supplant the municipal governing body." *Lacoquille*, 44 B.R. at 733.

The Bondholders also fail to distinguish *Parkview Adventist Med. Ctr. v. United States*, 842 F.3d 757, 763 (1st Cir. 2016), which made clear that for public policy reasons a variety of acts and actions designed to "protect the public safety and welfare" are exempt under section 362(b)(4). Nor does the fact that *In re McMullen*, 386 F.3d 320 (1st Cir. 2004) dealt with a regulatory proceeding call for a different result here. The court's reasoning centered on the public policy rationale for the exception, including threats to public safety and welfare. *Id.* at 324–35. This policy rationale applies equally to legislative acts, and there is no principled reason to treat them differently.

encompass legislative actions. *See Lacoquille*, 44 B.R. at 733.

15. The Bondholders' narrow reading of section 362(b)(4) leads to a nonsensical result from a public policy perspective. If, as the Bondholders claim, the exception does not encompass legislation, then judicial and regulatory actions or proceedings by a government to enforce "any act to obtain possession of property of the estate … or to exercise control over property of the estate" would be exempt from the automatic stay, if the government did so as an exercise of its police and regulatory power. 11 U.S.C. §§ 362(a)(3) and 362(b)(4). But a government cannot, under the Bondholders' reading, enact legislation that constitutes the "act to obtain possession of property … or to exercise control over property" even if such enactment is an exercise of the government's same police and regulatory power. Such a distinction is arbitrary, inconsistent with section 362(b)(4)'s purpose, and should be rejected.

16. Finally, the Bondholders mischaracterize the PayGo Legislation to argue that under the "pecuniary purpose" and "public policy" tests, the Commonwealth enacted the PayGo Legislation to enrich itself rather than protect public safety and welfare. Response at 42-43. As discussed, the PayGo Legislation protected public safety and welfare by ensuring the viability of Puerto Rico's failing pension systems, upon which thousands of people rely. This required imposing on the Commonwealth a new and massive financial duty—payment of billions in pension payments. It defies logic to say such an obligation enriched the Commonwealth. And even if ERS's assets are eventually transferred to the Commonwealth as a part of a plan of adjustment, those assets would hardly cover the cost of the ongoing pension payments the Commonwealth must make. Beyond rank speculation about the Legislative Assembly's intent, the Bondholders cannot point to anything that would justify treating the PayGo Legislation as improper.[11] Plaintiffs

---

[11] The Bondholders cite *In re Nortel Networks, Inc.*, 669 F.3d 128 (3d Cir. 2011), which involved proceedings to determine liability for a financial shortfall of a private pension plan. The proceedings were not exempt under

8

must plead facts that "raise a right to relief above the speculative level" and "naked assertion[s] devoid of 'further factual enhancement' will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Smearing the motives of Puerto Rico's democratically elected representatives is not sufficient to survive a motion to dismiss.

## CONCLUSION

17. The PayGo Legislation presents a paradigmatic exercise of political and governmental powers by the Commonwealth and falls squarely within the automatic stay protections afforded by PROMESA sections 303 and 305. The Bondholders offer no authority that would justify a contrary finding. But even if one could be mustered, Bankruptcy Code section 362(b)(4) also shields the legislation from the automatic stay. AAFAF respectfully requests that the Court find that the PayGo Legislation did not violate the automatic stay and dismiss the Bondholders' claims to invalidate legislation that has transformed the Commonwealth's pension systems to the benefit of the public.

---

section 362(b)(4) because they served the pecuniary interest of the private pension fund, rather than the public interest. *Id*. at 142. Here, the purpose of the PayGo Legislation is to ensure continued viability of the Commonwealth's public pension systems, not to serve the financial interest of a private entity.

|  |  |
|---|---|
| Dated: July 22, 2020<br>New York, NY | Respectfully submitted,<br><br>*/s/ Madhu Pocha*<br><br>John J. Rapisardi<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>7 Times Square<br>New York, NY 10036<br>Tel: (212) 326-2000<br>Fax: (212) 326-2061<br><br>Peter Friedman<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>1625 Eye Street, NW<br>Washington, DC 20006<br>Tel: (202) 383-5300<br>Fax: (202) 383-5414<br><br>Madhu Pocha<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>1999 Ave. of the Stars, Suite 800<br>Los Angeles, CA 90067<br>Tel: (310) 246-8588<br>Fax: (310) 246-6779<br><br>*/s/ Luis C. Marini-Biaggi*<br>Luis C. Marini-Biaggi<br>USDC No. 222301<br>Email: lmarini@mpmlawpr.com<br>Carolina Velaz-Rivero<br>USDC No. 300913<br>Email: cvelaz@mpmlawpr.com<br>**MARINI PIETRANTONI MUÑIZ LLC**<br>250 Ponce de León Ave., Suite 900<br>San Juan, Puerto Rico, 00918<br>Tel: (787) 705-2171<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |