**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Debtor.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY,<br><br>     Debtor. | PROMESA<br>Title III<br><br><br>No. 17 BK 3567-LTS |

**REPLY IN FURTHER SUPPORT OF URGENT MOTION FOR BRIDGE ORDER OF**
**AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED**
**GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE**
**COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION**

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Movants[2] respectfully submit this Reply in further support of their Urgent Motion for entry
of a bridge order (ECF No. 13708) and in response to FOMB's Opposition to the same (ECF No.
13765, "Opposition or "Opp.").

### INTRODUCTION

1.      The Urgent Motion and Proposed Bridge Order became necessary for only one
reason: FOMB's refusal to further toll the statute of limitations for HTA's avoidance actions
pending a final determination of HTA's property interests in the Excise Taxes, an issue that will
affect the merits of the avoidance actions and is already being litigated elsewhere.  Preserving
HTA's rights to bring potentially meritorious avoidance actions is something that any responsible
steward of that public debtor should want to do.  Yet FOMB has gone to great lengths to let those
rights expire.  Not only does FOMB oppose the very limited and reasonable bridge relief that
Movants request on HTA's behalf, but also FOMB concurrently seeks Court approval of a tolling
stipulation that would expressly *exclude* the HTA claims at issue here.  See ECF No. 13719.

2.      The Opposition ties itself in knots to justify this course of action and to paper over
FOMB's blatant conflicts of interest as an HTA representative set on destroying HTA's rights.  It
mischaracterizes the Proposed Bridge Order as "injunctive" relief subject to the preliminary-
injunction standard, when in fact Movants' request is well within the Court's discretion under the
Bankruptcy Code and would do nothing more than preserve HTA's existing rights.  It disparages
the rightful pursuit of HTA's claims as mere "leverage" and "gamesmanship," when in fact the
underlying question of HTA's interest in the Excises Taxes is still being litigated and will be
critical to the confirmation of any proposed plan of adjustment for HTA or the Commonwealth.
And it unfairly points the finger of blame at Movants, *both* for bringing the HTA 926 Motion *and*

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the Urgent Motion.

for not bringing it earlier, when in fact Movants were simply doing their best to follow the Court's
preferred sequencing of the issues to avoid an unnecessary proliferation of proceedings.

3.     None of FOMB's arguments has merit.  The relief requested in the Urgent Motion
is reasonable and unobtrusive, and the Court should exercise its discretion to grant it.  By
provisionally appointing Movants as co-trustees—solely to allow them to file an avoidance action
for HTA that will be immediately stayed pending a final determination of HTA's property interests
on appeal or otherwise—the Court can temporarily preserve important rights for HTA that FOMB,
due to its conflicts, irresponsibly refuses to pursue or preserve.

## ARGUMENT

### I.     The Court Has Discretionary Authority Under Section 926 to Provisionally Appoint Movants as Co-Trustees

4.     FOMB's Opposition erroneously applies the standard for a preliminary injunction
to Movants' request for a bridge order provisionally appointing them as co-trustees to file the
Proposed Complaint.  Movants are not seeking injunctive relief.  Rather, the Urgent Motion asks
the Court to: (1) exercise is discretionary authority under Bankruptcy Code Section 926 and its
equitable powers under Section 105 to appoint Movants as co-trustees on a provisional basis to
allow them to file the Proposed Complaint, thereby protecting HTA's right to purse an avoidance
action; and (2) stay the avoidance action pursuant to the Court's inherent power to control its
docket.  In short, Movants seek only the authority to file the Proposed Complaint to preserve
HTA's rights, and to do nothing further since the avoidance action will be immediately stayed.

5.     FOMB itself admits that the Court's authority under Section 926 of the Code is
"discretionary."  Opp. ¶ 2.  Section 926 provides that the Court "*may* appoint a trustee to pursue
[a cause of action under section 544, 545, 547, 548, 549(a), or 550]."  11 U.S.C. § 926(a) (emphasis
added).  The plain text of Section 926(a) imposes no limitation on that discretionary authority.

Further, PROMESA § 301 incorporates Bankruptcy Code § 105, which authorizes the Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The authority to appoint a trustee on a provisional basis, and to later determine whether that trustee's role should continue and on what terms, inheres in the Court's broad discretionary authority to appoint a trustee under Section 926 and equitable powers under Section 105(a). FOMB cites no authority to the contrary.

6.      Moreover, the Court, as part of its inherent power to manage its own docket, has discretion to stay the proceedings immediately upon Movants' filing of the Proposed Complaint. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . .").

7.      FOMB misconstrues the relief Movants seek. First, FOMB incorrectly asserts, without explanation, that the Urgent Motion is "properly characterized as a request for temporary injunctive relief." Opp. ¶ 10. Based on this error, FOMB proceeds to apply the standard for a preliminary injunction in asserting that Movants have not made the showing needed for the relief requested in the Urgent Motion. See Opp. ¶¶ 11–18. That standard does not apply here, and the cases FOMB cites are not relevant,[3] because Movants are not seeking injunctive relief. Indeed, Movants are not asking the Court to order FOMB, HTA, or the Commonwealth to do anything or refrain from doing anything. Rather, as noted, Movants are asking the Court only to exercise its discretion under Section 926 to allow Movants to file the Proposed Complaint, and to immediately stay those proceedings. The purpose of this relief is to preserve potential avoidance actions, which

---

[3] In suggesting that the court should consider the probability of success on the merits, the prospect of irreparable harm, the balance of equities, and the effect of the relief on the public interest, Opp. ¶ 15, FOMB cites In re Penobscot Valley Hospital, No. 19-10034, 2020 WL 2201943 (Bankr. D. Me. May 1, 2020) and Nken v. Holder, 556 U.S. 418 (2009). But neither case involved the appointment of a trustee under Section 926. In Penobscot, the plaintiff sought a temporary restraining order preventing a bank from refusing certain loans sought by a debtor. 2020 WL 2201943, at *5. In Nken, the court considered a defendant's request for the court of appeals to stay a district court's alien removal proceeding pending resolution of the defendant's appeal. 556 U.S. at 422–23.

belong to HTA, pending a final determination on appeal or otherwise of certain gating issues on which the avoidance actions depend.

8.      Second, FOMB incorrectly suggests that Movants are seeking a determination that they are the appropriate trustee to pursue avoidance actions on HTA's behalf.  Opp. ¶ 2 (asserting that Movants "not only request the appointment of a Section 926 trustee; they request appointment of themselves and do not even divulge how they will govern themselves as co-trustees"); id. ¶ 29 (speculating that Movants seek appointment as trustees for the purpose of "taking control over the purported avoidance actions").  Not so.  The Proposed Bridge Order would only appoint Movants today, temporarily, to preserve HTA's right to pursue an avoidance action by taking the limited step of filing the Proposed Complaint before the statute of limitations runs.  The Urgent Motion does not seek Movants' permanent appointment as trustees or exclusive control of the avoidance action.  There is no need at this juncture for Movants to show they are the right parties to serve as trustees in prosecuting HTA's avoidance actions, or to propose a trustee plan to show how they will "govern themselves as trustees."  The bridge order sought can restrict the temporary trustees' actions to filing and serving the Proposed Complaint, and with the avoidance action stayed, no further action will occur until the Court enters its final ruling on the HTA 926 Motion.

## II.     The Bridge Order Will Not "Freeze" Resolution of Avoidance Actions or Give Movants Leverage in Plan Negotiations

9.      FOMB is also wrong in asserting that Movants' preliminary appointment as co-trustees would allow them to "hold those claims outstanding and beyond resolution indefinitely" and interfere with the Debtors' emergence from Title III.  Opp. ¶ 25.  As FOMB itself recognizes, the merits of the HTA 926 Motion rest in part on issues that are subject to an appeal of the Lift Stay Order, including the extent of HTA's property interest in the Excise Tax Revenues.  See Opp. ¶¶ 1, 2, 24 ("[T]he very issues Movants seek to litigate through their § 926 motion are being

litigated even now through lift stay motions . . . .").  All Movants seek to obtain through their provisional appointment as co-trustees is to prevent the expiration of the statute of limitations for HTA's avoidance claims so that, if HTA is ultimately determined to have a property interest in the Excise Taxes, HTA may vindicate its rights.

10.     Thus, FOMB's concern that the Proposed Bridge Order will "freeze" resolution of the avoidance claims, Opp. ¶ 26, is unfounded.  As FOMB recognizes, the property-interest issues that are predicates to the HTA 926 Motion and the proposed avoidance action will continue to be addressed in this Court and on appeal in connection with the HTA Lift-Stay Motion.  Nothing about the Proposed Bridge Order will obstruct the ongoing adjudication of HTA's property interests through the lift-stay proceedings and otherwise.[4]

11.     FOMB further argues that Movants will have no need to bring avoidance actions on HTA's behalf if they prevail in an appeal of the Lift Stay Order.  Opp. ¶ 20.  The First Circuit, however, could rule that HTA beneficially owns the Excise Taxes diverted by the Commonwealth, but that the Bondholders do not share that ownership or do not have a security interest in those funds.  Such a ruling would establish that HTA has property rights that need to be vindicated

---

[4] Although this Court's Lift Stay Order addressed in that context whether Movants demonstrated a colorable claim that they have property interests in Excise Taxes not yet deposited in certain special funds, it is not clear that the Court reached any holding as to *HTA's* property interests.  Indeed, the scope of the preliminary hearing and the Lift Stay Order was limited to "whether the *movants* have standing to sue and security or other property interests in the relevant revenues." ECF No. 12186, ¶ 1.d (emphasis added).  And even if the Court did reach a holding (as opposed to observations in *dicta*) regarding HTA's interests, the Court expressly recognized that the Lift Stay Order "does not fully and finally adjudicate the merits of the parties' underlying claims of security or beneficial interests."  EFC No. 13541 at 16.  Accordingly, the Lift Stay Order does not have preclusive effect in subsequent adversary proceedings.  See Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 31-32 (1st Cir. 1994) (holding that lift-stay ruling had no preclusive effect in a subsequent adversary proceeding because "the hearing on a motion for relief from stay is meant to be a summary proceeding" and does not "involve a full adjudication on the merits of claims, defenses, or counterclaims").  Yet FOMB's assertion here that Movants claim is not "colorable" rests on the mistaken assumption that any findings in the Lift Stay Order as to HTA's property interests *would* have preclusive effect.  Further, FOMB's argument that the Excise Taxes are within the "possession and control" of the Commonwealth rather than HTA is based entirely on invalid territorial laws, see, e.g., ECF No. 13744, and HTA will challenge the validity of those laws if the HTA 926 Motion is granted.  *See* Proposed Complaint.  A final determination as to the Commonwealth's purported "possession and control" of the Excise Taxes therefore cannot be reached without final adjudication of the validity of these laws in a merits proceeding, which has yet to occur.

through avoidance actions.  But FOMB, despite its claim to be HTA's responsible steward, is doing everything it can to let those rights expire.  For this reason, an appeal of the Lift Stay Order alone is inadequate to safeguard HTA's rights: FOMB's abdication of its responsibility to pursue (or at least preserve) avoidance actions on HTA's behalf demonstrates the need for a trustee.

12.    Finally, FOMB's contention that Movants fail to present "colorable" avoidance action claims is wrong.  Opp. ¶ 22–24.  If the Excise Taxes ultimately are held to be HTA's property, then the HTA 926 Motion clearly establishes that HTA's claims under sections 544, 548, and 549 are colorable.  Movants will not further address here the merits of those claims, or of FOMB's passing and unfounded assertions that it does not operate under a conflict of interest, but will do so in their Reply in support of the HTA 926 Motion under the schedule ordered by the Court.  *See* ECF No. 13724.

### III.    FOMB, Not Movants, Is the Party Engaging in "Gamesmanship" by Agreeing to Preserve Nearly All Avoidance Claims *Except* Those At Issue Here

13.    The Proposed Bridge Order—which would merely preserve and stay HTA's avoidance action pending a final determination of predicate issues on appeal or otherwise—poses no harm whatsoever to the legitimate interests of any debtor.  Indeed, FOMB has already *agreed* to toll and preserve most other avoidance actions implicated by its Title III proceedings:  Just last week, after refusing to toll the HTA claims at issue here, FOMB filed an urgent motion seeking the Court's approval of a broad tolling stipulation that would extend for another six months the statute of limitations for avoidance actions regarding transfers among the Commonwealth, HTA, ERS, PREPA, and more than four dozen other government entities.  See Urgent Motion for Entry of an Order Approving Second Amended Stipulation (July 17, 2020) (ECF No. 13719, the "Tolling Stipulation").  That Tolling Stipulation would have covered HTA's claims here with respect to the Excise Taxes, were it not for FOMB's explicit carve-out that puts those claims uniquely at risk of

being time-barred.[5]

14.      In light of FOMB's proposed Tolling Stipulation, there should be no question which party is engaged in "gamesmanship" and "leverage" tactics (Opp. ¶ 30).  Having agreed to preserve nearly all other avoidance actions on behalf of the Title III debtors against government entities, FOMB now spends fifteen pages *opposing* Movants' request for essentially the same relief to preserve HTA's claims to the Excise Taxes, on the purported basis that "lingering potential avoidance claims" would "cloud both the Commonwealth's and HTA's Title III cases" and "upset[] the plan process indeterminately."  Opp. ¶ 18.  None of that is true, and FOMB's willingness to preserve *all* the other avoidance actions is the proof.  Indeed, without any schedule in place for the proposal of a disclosure statement and amended plan—and with FOMB's next status report on these matters pushed off until September, see ECF No. 13733—there is sufficient time for this Court and the First Circuit to resolve the question of HTA's interest in the Excise Taxes prior to confirmation.  That important gating issue is one on which HTA's avoidance action and any plan of adjustment both depend.  Accordingly, Movants intend to support an expedited appeal of that issue in the lift-stay context, and FOMB should too: as representative of both the Commonwealth and HTA, FOMB should not seek confirmation of a Commonwealth plan that the First Circuit may decide is being financed with HTA's property, in violation of PROMESA.

15.      In short, FOMB fails to offer any legitimate, coherent reason for failing to preserve HTA's potentially meritorious avoidance action pending a final determination of HTA's property interests in the Excise Taxes.  The Proposed Bridge Order would preserve those rights for HTA, but as an alternative, so would modifying the Tolling Stipulation to include HTA's claims related

---

[5] See Tolling Stipulation at Ex. A, ¶ 6 ("Notwithstanding anything contained in this Stipulation to the contrary . . . nothing in this Stipulation shall affect the Statutory Deadlines set forth in . . . *Second Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority Regarding the Tolling of Statute of Limitations and Consent Order* [ECF No. 9722] . . . .").  In other words, nothing in FOMB's latest Tolling Stipulation shall affect the previously-stipulated deadlines for the HTA claims at issue here, which are about to expire.

to the Excise Taxes.  Accordingly, Movants intend to propose an appropriate modification to the

Tolling Stipulation through a limited objection that they will file on July 27, pursuant to the Court's

briefing schedule (ECF No. 13728).  Indeed, if the statute of limitations for HTA's avoidance

actions were tolled until after HTA's property interests are finally determined, then neither the

HTA 926 Motion nor the Proposed Bridge Order would be needed at this time, and Movants would

be willing to withdraw them without prejudice.

**IV.**    **Movants Did Not Cause This Emergency, and Bridge Relief on HTA's Behalf Should
Be Granted Regardless**

16.    Though it should not affect the Court's decision, Movants were extremely diligent

in preserving potential avoidance actions on HTA's behalf, and FOMB's contention that Movants

created a "self-inflicted emergency" through "calculated delay" is groundless.  Opp. ¶ 2.  As

described in the opening brief, Movants timely demanded that FOMB pursue HTA's avoidance

actions, and they worked cooperatively with FOMB to enter two prior tolling stipulations so that

gating issues regarding HTA's property interests could be litigated first.  See HTA 926 Motion

¶¶ 28-30.  The Court's case management order for revenue bonds likewise contemplated that those

gating issues should be litigated first.  See ECF No. 12186 ¶ 3 (setting the deadline for Section

926 motions "15 days after the Court's ruling in connection with the preliminary hearing on the

HTA Lift Stay Motion").  FOMB's suggestion that Movants should have filed the HTA 926

Motion well in advance of the Court's own deadline makes no sense; doing so would have upended

the Court's preferred sequencing of the issues, as recommended by the Mediation Team.

17.    Moreover, filing the HTA 926 Motion earlier would have been contrary to the First

Circuit's instructions "to seek to avoid a proliferation of actions seeking essentially the same

remedy," because "[e]ach such proceeding potentially drains assets which could be put to other

uses."  Andalusian Glob. Designated Activity Co. v. FOMB, 954 F.3d 1, 11 (1st Cir. 2020).  FOMB

contradicts itself within the Opposition by criticizing Movants for proliferating actions while, at the same time, asserting that Movants should have brought their HTA 926 Motion earlier.  See Opp. ¶ 2 ("[T]he very issues Movants seek to litigate through their § 926 motion are being litigated even now through lift stay motions, adversary proceedings, and, notably, Ambac's own proof of claim . . . There is simply no reason to . . . commence yet another set of litigations under the circumstances.").  In keeping with the First Circuit's guidance, Movants avoided as long as possible any proliferation of actions; ultimately, however, they were required by the deadline in the case management order and the threatened expiration of the statute of limitations to bring the HTA 926 Motion when they did.  The fact that FOMB incoherently criticizes Movants both for bringing their motion and for not bringing it illustrates the competing concerns that Movants had to balance in determining when to bring their HTA 926 Motion, and it further demonstrates that Movants' timing and course of action were reasonable under the circumstances.

18.     But FOMB's focus on Movants' diligence here is a red herring.  The Proposed Bridge Order aims to preserve claims and rights that belong *to HTA*, not to the Movants.[6]  As HTA's steward, FOMB should be seeking to preserve those claims and rights too.  The fact that FOMB instead seeks so zealously to destroy them only confirms that a trustee is needed and that the Proposed Bridge Order should be entered.

---

[6] Moreover, each case FOMB cites in suggesting that Movants are not entitled to emergency relief "where they created the emergency" is irrelevant because, unlike here, each case involved a party seeking *injunctive relief* to restrain a defendant or compel an action.  *See* Opp. ¶ 11; Respect Me. PAC v. McKee, 622F.3d 13, 16 (1st Cir. 2010) (plaintiffs sought injunction preventing State of Maine from implementing allegedly unconstitutional provisions of its election laws); Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995) (plaintiff sought preliminary injunction against defendants' sale of products that infringed trademarks); Max-Planck-Gesellschaft zur Forderung der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Research, 650 F. Supp. 2d 114, 123 (D. Mass. 2009) (plaintiff sought preliminary injunction preventing defendants from prosecuting patent application and from paying issuance fees); Nat'l Council of Arab Am. v. City of New York, 331 F. Supp. 2d 258, 265–66 (S.D.N.Y. 2004) (plaintiffs sought preliminary injunction *directing* New York City Parks Department to grant a permit enabling plaintiffs to hold a demonstration); Caporicci v. Devine, No. 15-cv-3559, 2015 U.S. Dist. LEXIS 83418, at *1 (E.D.N.Y. June 26, 2015) (plaintiffs sought preliminary injunction adjourning hearings in which they planned to contest benefits determinations under a state program).

## <u>CONCLUSION</u>

19.     For the foregoing reasons and those set forth in the Movants' opening brief, the

Urgent Motion should be granted.

Dated: July 23, 2020
San Juan, Puerto Rico

CASELLAS ALCOVER & BURGOS P.S.C.     CADWALADER, WICKERSHAM & TAFT LLP

By: */s/ Heriberto Burgos Pérez*                By: */s/ Mark C. Ellenberg*
     Heriberto Burgos Pérez                          Howard R. Hawkins, Jr.*
     USDC-PR 204809                                  Mark C. Ellenberg*
     Ricardo F. Casellas-Sánchez                     William J. Natbony*
     USDC-PR 203114                                  Ellen M. Halstead*
     Diana Pérez-Seda                                Thomas J. Curtin*
     USDC-PR 232014                                  Casey J. Servais*
     P.O. Box 364924                                 200 Liberty Street
     San Juan, PR 00936-4924                         New York, NY 10281
     Telephone:   (787) 756-1400                     Telephone:   (212) 504-6000
     Facsimile:   (787) 756-1401                     Facsimile:   (212) 504-6666
     Email:       hburgos@cabprlaw.com               Email:       howard.hawkins@cwt.com
                  rcasellas@cabprlaw.com                          mark.ellenberg@cwt.com
                  dperez@cabprlaw.com                             bill.natbony@cwt.com
                                                                  ellen.halstead@cwt.com
     *Attorneys for Assured Guaranty Corp.*                       thomas.curtin@cwt.com
     *and Assured Guaranty Municipal Corp.*                       casey.servais@cwt.com

                                                      * Admitted *pro hac vice*

                                                      *Attorneys for Assured Guaranty Corp. and
                                                      Assured Guaranty Municipal Corp.*

ADSUAR MUNIZ GOYCO
SEDA & PEREZ-OCHOA PSC

WEIL, GOTSHAL & MANGES LLP

By:/s/ *Eric Perez-Ochoa*
    Eric Pérez-Ochoa
    USDC-PR No. 206314
    E-mail:    epo@amgprlaw.com

By:*/s/Luis A. Oliver-Fraticelli*
    Luis A.  Oliver-Fraticelli
    USDC-PR NO. 209204
    E-mail:    loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Tel.:    (787) 756-9000
    Fax:    (787) 756-9010

*Attorneys for National Public Finance
Guarantee Corp.*

By:/s/ *Robert Berezin*
    Jonathan Polkes*
    Gregory Silbert*
    Robert Berezin*
    Kelly Diblasi*
    Gabriel A. Morgan*
    767 Fifth Avenue
    New York, New York 10153
    Tel.:    (212) 310-8000
    Fax:    (212) 310-8007
    Email:    jonathan.polkes@weil.com
              gregory.silbert@weil.com
              robert.berezin@weil.com
              kelly.diblasi@weil.com
              gabriel.morgan@weil.com

* admitted *pro hac vice*

*Attorneys for National Public Finance
Guarantee Corp.*

11

FERRAIUOLI LLC

MILBANK LLP

By: /s/ *Roberto Cámara-Fuertes*
    ROBERTO CÁMARA-FUERTES
    USDC-PR NO. 219,002
    E-mail:    rcamara@ferraiuoli.com


By: /s/ *Sonia Colón*
    SONIA COLÓN
    USDC-PR NO. 213809
    E-mail:    scolon@ferraiuoli.com

    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001

*Counsel for Ambac Assurance Corporation*

By: /s/ *Atara Miller*
    DENNIS F. DUNNE*
    ATARA MILLER*
    GRANT R. MAINLAND*
    JOHN J. HUGHES*
    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:    ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com

*admitted pro hac vice

*Counsel for Ambac Assurance Corporation*

ARENT FOX LLP


By:/s/ *David L. Dubrow*
    DAVID L. DUBROW*
    MARK A. ANGELOV*
    1301 Avenue of the Americas
    New York, New York 10019
    Tel.:     (212) 484-3900
    Fax:     (212) 484-3990
    Email:    david.dubrow@arentfox.com
            mark.angelov@arentfox.com


By:/s/ *Randall A. Brater*
    RANDALL A. BRATER*
    1717 K Street, NW
    Washington, DC 20006
    Tel.:     (202) 857-6000
    Fax:     (202) 857-6395
    Email:    randall.brater@arentfox.com

*admitted pro hac vice

*Counsel for Ambac Assurance Corporation*

REXACH & PICÓ, CSP

By: /s/ *María E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com

*Attorneys for Financial Guaranty Insurance Company*

BUTLER SNOW LLP

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (pro hac vice)
    5430 LBJ Freeway, Suite 1200,
    Dallas, TX 75240
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com

    Jason W. Callen (pro hac vice)
    150 3rd Avenue, South, Suite 1600
    Nashville, TN 37201
    Telephone: (615) 651-6774
    Facsimile: (615) 651-6701
    E-mail: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.


New York, New York

July 23, 2020


By: */s/ Robert Berezin*
Robert Berezin*
* Admitted *pro hac* v*ice*