**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

        Debtors.[1]

------------------------------------------------------------x

YASHEI ROSARIO, *et al.*

        Movants,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO,

        Respondent.

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 13597**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OBJECTION OF FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO TO MOTION FOR RELIEF
FROM STAY FILED BY YASHEI ROSARIO AND DEVELOPMENT
<u>SOCIOECONOMIC SUSTAINABLE FIDEICOMISO OF VIEQUES, CODESU, INC.</u>**

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................ 1

PROCEDURAL HISTORY .................................................................................................... 3

ARGUMENT .......................................................................................................................... 9

    I.     THE AUTOMATIC STAY APPLIES TO THE UNDERLYING
          PROCEEDING AND ITS APPEAL. .................................................................. 9

    II.    NO CAUSE EXISTS TO LIFT THE AUTOMATIC STAY. ............................ 11

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
  217 F. Supp. 3d 508 (D.P.R. 2016)....................................................................13, 14

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
  369 B.R. 87 (D.P.R. 2007).......................................................................................13

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
  28 B.R. 324 (Bankr. S.D.N.Y. 1983).......................................................................17

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*,
  899 F.3d 13 (1st Cir. 2018).......................................................................................14

*Goya Foods v. Unanue-Casal (In re Unanue-Casal)*,
  159 B.R. 90 (D.P.R. 1993), *aff'd without opinion sub nom. Unanue v. Unanue-Casal (In re Inanue-Casal)*, 23 F.3d 395 (1st Cir. 1994) .............................. 12, 13-14

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
  2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006).........................................17

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,
  997 F.2d 581 (9th Cir. 1993) ...................................................................................11

*In re 234-6 West 22nd St. Corp.*,
  214 B.R. 751 (Bankr. S.D.N.Y. 1997). Bankruptcy ................................................12

*In re Birmingham Cosmetic Surgery, P.L.L.C.*,
  No. 14-58784, 2015 WL 1038801 (Bankr. E.D. Mich. Mar. 5, 2015) ...................14

*In re Breitburn Energy Partners LP*,
  571 B.R. 59 (Bankr. S.D.N.Y. 2017).......................................................................14

*In re City of Stockton*,
  484 B.R. 372 (Bankr. E.D. Cal. 2012)......................................................................19

*In re Cummings*,
  221 B.R. 814 (Bankr. N.D. Ala. 1998) ....................................................................15

*In re Lahman Mfg. Co.*,
  31 B.R. 195 (Bankr. D.S.D. 1983)...........................................................................17

*In re Motors Liquidation Co.*,
  No. 09-50026, 2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010)...................................19

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Murrin*,
477 B.R. 99 (D. Minn. 2012) ..................................................................................15

*In re Residential Capital, LLC*,
2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012) ....................................17

*In re Taub*,
413 B.R. 55 (Bankr. E.D.N.Y. 2009) ....................................................................15

*Mazzeo v. Lenhart (In re Mazzeo)*,
167 F.3d 139 (2d Cir. 1999) ..................................................................................14

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
474 U.S. 494 (1986) ..............................................................................................12

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
537 B.R. 128 (Bankr. D.P.R. 2015) ......................................................................10

*Peaje Invs. LLC v. Garcia-Padilla*,
Nos. 16-2365 (FAB), 16-2384 (FAB), 16-2696 (FAB), 2016 U.S. Dist. LEXIS
153711 (D.P.R. Nov. 2, 2016), *aff'd*, 845 F.3d 505 (1st Cir. 2017) .......................14

*Ramos v. Banco Popular de P.R. (In re Ramos)*,
493 B.R. 355 (Bankr. D.P.R. 2013) ......................................................................11

*Soares v. Brockton Credit Union (In re Soares)*,
107 F.3d 969 (1st Cir. 1997) ................................................................................12

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990) ................................................................................13

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty
Prod., Inc.)*,
311 B.R. 551 (Bankr. C.D. Cal. 2004) ..................................................................19

*United States v. Moore-Bush*,
963 F.3d 29 (1st Cir. 2020) ....................................................................................9

**Statutes**

11 U.S.C. § 101(27) ......................................................................................................11

11 U.S.C. § 362(a) .................................................................................................10, 11

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

11 U.S.C. § 362(b) .................................................................................................11

11 U.S.C. § 362(d) .................................................................................................12

48 U.S.C. §§ 2101-2241 ..........................................................................................1

52 U.S.C. § 10301 *et seq.* .......................................................................................4

Foraker Act, Ch. 191, 31 Stat. 77 (1900) ...............................................................5

Jones Act - Puerto Rico Federal Relations Act, Ch. 145, 39 Stat. 951 (1917) ...............5

**Other Authorities**

P.R. Const. art. I, § 3 .......................................................................................12, 21

P.R. Const. art. VII, § 1 ........................................................................................21

P.R. Const. art. VIII, § 1 ..................................................................................12, 21

3 Collier on Bankruptcy ¶ 362.05 (16th ed. 2020) ................................................11

P.R. Elections Code of 2020, Art. 11.1 of Act 58-2020 ........................................21

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Motion of Stay Relief Based on Modern Legal Genocide* [ECF No. 13597] (the "Motion"), filed by Yashei Rosario ("Rosario") and Development Socioeconomic Sustainable Fideicomiso of Vieques, CODESU, Inc. ("CODESU" and, together with Rosario, "Movants"), who are parties in the case captioned *Rosario, et al. v. Commonwealth of Puerto Rico, et al.*, Civil No. 17-2320 (the "Underlying Proceeding"), for an order requiring, among other things, a territorial referendum be held on the secession of the municipality of Vieques from the Commonwealth, dismissed by the United States District Court for the District of Puerto Rico (the "District Court"), and thereafter appealed to the United States Court of Appeals for the First Circuit (the "First Circuit"), Case No. 18-1782 (the "Appellate Proceeding"), which court determined the appeal was automatically stayed and directed Movants to request stay relief if desired. The Commonwealth respectfully requests the Court deny the Motion for the reasons set forth below:

## SUMMARY OF ARGUMENT

1.     Movants are an individual and non-profit corporation requesting termination of the automatic stay to pursue an appeal of the dismissal of the Underlying Proceeding, which litigation sought at least two forms of relief: (1) an order compelling the Commonwealth to hold a referendum on the political status of the island municipality of Vieques (the "Referendum") in light of the Commonwealth's alleged mismanagement of Vieques, and (2) unspecified reparations

---

[2]     PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

from the Commonwealth to remedy such alleged mismanagement.[3]   On appeal of the District

Court order dismissing the Underlying Proceeding, the First Circuit held the Title III stay applied

and stayed the case.  In reaching this decision, the First Circuit further ruled that, should Movants

desire to proceed with the Appellate Proceeding, Movants should seek stay relief from the Title III

Court.  Thereafter, Movants filed another complaint in the District of Puerto Rico, which was

construed as a motion for stay relief and transferred to the Title III Court for further consideration.[4]

The Title III Court then ordered briefing on the Motion.  Movants contend the stay should not

apply to their claims (and, in particular, the Appellate Proceeding) because their action seeks the

determination of the voting rights of the people of Vieques.  Over Movants' opposition, the First

Circuit already ruled the automatic stay applies after reviewing briefing from Movants and the

Commonwealth on the issue.  Thus, in the absence of showing appropriate "cause" (which

Movants cannot demonstrate), the requested stay relief should be denied.

   2.  Movants have not established, or even attempted to demonstrate, that "cause" exists

to lift the automatic stay.  Although the Motion does not address the *Sonnax* factors, those factors

weigh heavily against lifting the stay.  The Underlying Proceeding threatens to interfere with the

Commonwealth's property and the Title III restructuring because Movants' proposed Referendum,

if approved, would potentially remove an entire municipality from the Commonwealth, and in

addition, proposes that project approvals and federal funds assignments be conditioned on the

approval of Plaintiffs' non-profit community board.  Simply put, Movants can pursue their

---

[3] The procedural history of this matter is complicated and the Motion is unclear as to the precise
relief sought from the Title III Court.  However, as described herein, it does appear as if the
relief sought should be limited to whether the automatic stay of the appeal of the dismissal of
the Underlying Proceeding should be terminated.

[4] As discussed *infra* ¶ 20, this filing generally alleges the same grievances, and makes the same
demands, as set forth in the complaint initiating the Underlying Proceeding.

interests through the political process, rather than through litigation, while the stay remains in place. Specifically, the stay does not prevent Movants from petitioning the Legislative Assembly of Puerto Rico to pass a resolution to hold a special referendum on the secession of Vieques, or pursuing any other proper political path they so choose to achieve their goal. Accordingly, for the reasons stated herein, the Motion should be denied in its entirety.

## PROCEDURAL HISTORY

**A.     The Underlying Proceeding Seeks an Order Requiring a Referendum on the Political Status of the Municipal Island of Vieques, Puerto Rico.**

3.      On November 27, 2017, Movants filed a *pro se* complaint with the District Court against the Commonwealth, the President of the Puerto Rico House, Carlos Johnny Méndez, the President of the Puerto Rico Senate, Thomas Rivera-Schatz, and then-Governor Ricardo Rosselló. Underlying Proceeding, ECF No. 2 (the "Complaint").[5]

4.      The Complaint asserts the Commonwealth has historically mismanaged the island municipality of Vieques and failed to represent its interests, and alleges, *inter alia*, the following:

a.      The use of a portion of the municipality as a United States naval training facility, operating from 1940 to 2003, occurred without the consent of the local population. Complaint ¶¶ 1-4;

---

[5]   Movants previously filed a similar action with the District Court on July 11, 2017. *See Development Socioeconomic Sustainable Trust of Vieques v. Commonwealth of Puerto Rico*, Case No. 17-1940. Unlike the Underlying Proceeding, the previous action explicitly demanded $250,000 in addition to remedies similar to those sought here. On July 18, 2017, the Court, in a text-only order, "[took] judicial notice of Title III of PROMESA and its bankruptcy-like stay provisions" and administratively closed the case, noting that it may be reopened "upon the lifting of the stay or the conclusion of the bankruptcy proceedings, whichever shall first occur." ECF No. 6, Case No. 17-1940. It does not appear that Movants took further steps in that action along the lines suggested in the District Court's order.

b.      Economic development and infrastructure improvements should
have occurred in the municipality as recognition for hosting the naval training
facility.  *Id.* ¶¶ 3-4, 27-28, 53-57, 94;

c.      The Commonwealth and its politicians have neglected the
municipality of Vieques, ignored its needs, and as a result, it suffers from
inadequate economic development and poor infrastructure.  *Id.* ¶¶ 30-31, 66-72, 74.
Consequently, Movants claim that Vieques residents must travel to the Main Island
to go shopping and seek certain medical care by means of an inadequate ferry
service.  *Id.* ¶¶ 67-70; and,

d.      The Commonwealth poorly administered disaster relief for the
municipality.  *Id.* ¶¶ 34, 36, 37, 40.

5.      Movants allege the Commonwealth is in violation of the Voting Rights Act, 52
U.S.C. § 10301 *et seq.*  (*id.* ¶¶ 21, 32, 50, 82), and violated Movants' First Amendment rights, *id.*
¶ 46, by "abridg[ing] their voices in Congress," *id.* ¶ 4.

6.      To remedy those alleged violations, the Complaint seeks an order compelling the
Commonwealth to hold the Referendum regarding the political status of the municipality of
Vieques.[6]  As proposed therein,[7] the Referendum would present three options to voters:

---

[6]    In particular, Movants explain, "the Case is about requesting an amendment to the Foraker
Law, for Vieques to pull apart of the Puerto Rico Territory, as earned for the 63 years to become
the 6th Insular U.S. Territory."  *Id.* ¶ 54.  They seek to accomplish this by holding the
Referendum, which would offer separation as an option.  The Foraker Act, ch. 191, 31 Stat. 77
(1900), since superseded by the Jones Act - Puerto Rico Federal Relations Act, ch. 145, 39
Stat. 951 (1917), established a civil government in Puerto Rico.  Movants, however, do not
specify as to which parts of the Foraker Act they seek to amend, or if those provisions still
exist in the current body of law.

[7]    The precise options available to voters in the Referendum vary across the pleadings.  In each
instance, however, the Referendum seeks a determination as to the political status of Vieques.

4

(1) Vieques would remain a municipality while "becoming State 51 with the Commonwealth of
P.R."; (2) Vieques would remain a municipality and become "State 51" along with the
Commonwealth, in addition to "[reactivating] the Naval Training Range" with benefits and
monetary compensation afforded to the residents and "Native Viequenses"; or (3) Vieques would
become a separate territory of the United States independent of the Commonwealth, and the
CODESU Governance Community Board[8] would have the power to approve or disapprove federal
funds and other government projects.  *Id.* ¶ 43.

7.     The Complaint also seeks certain relief to facilitate the Referendum, as well as
monetary relief.  Specifically, it seeks an order (i) "establish[ing] the sum to be paid for the Vieques
Sovereignty Insular Referendum," and (ii) ordering the acting U.S. Attorney for Puerto Rico and
"Federal Authorities" to supervise the Referendum because "Plaintiffs fear the Commonwealth's
politicians."  *Id.* ¶¶ 15, 45.  The Complaint also appears to request "reparations" to remedy the
Commonwealth's alleged neglect of the municipality, although no amount is specified.  *See id.* ¶
96 ("Reparations may also be applied to other situations where one party must pay for damages
inflicted upon another party. 1940 - 2003 - 2017: Non-Development Damage Claim.").

8.     Furthermore, the Complaint alleges the relief it seeks is not related to the Title III
cases because Movants will "pay the Electoral Commission of Puerto Rico" for the Referendum's
costs.  *Id.* ¶ 16.  In furtherance of their intent to pay for the Referendum, Movants authorize the
Court to "place a lien on [Rosario's] Property Title for the Court fees $400.00 [] and the sum" that
the Court establishes must be paid for the costs of the Referendum.  *Id.* ¶¶ 18-19.

9.     On December 8, 2017, Movants filed a motion requesting the District Court to issue
an order prohibiting Commonwealth agencies "holding properties in land in Vieques" from selling

---

[8]   It is not clear what entities comprise the CODESU Governance Community Board.

that land.  Underlying Proceeding, ECF No. 5.  According to Movants, the requested order was necessary to prevent the Commonwealth from selling land that would otherwise be owned by the proposed, separate U.S. territory of Vieques.  *Id.* at 2-3.  If so ordered, Movants requested federal authorities "take charge" of the land until the Referendum could be held.  *Id.* at 3.  The District Court did not rule on this request.

10.     On December 29, 2017, Movants filed a motion for class certification (although the Complaint was not styled as a class action).  Underlying Proceeding, ECF No. 6.  In support, Movants reference a petition attached to the Complaint containing 200 signatures of Vieques residents who, according to Movants, support the proposed Referendum.  *Id.* at 2.

11.     On April 20, 2018, and without any filed opposition, the District Court denied Movants' motion for class certification because Movants could not provide sufficient information to conduct the certification analysis.  Underlying Proceeding, ECF No. 13.  In so ruling, the Court observed Movants compiled 200 signatures but "ma[d]e no showing of how many of these individuals would have valid claims" and did not specify any common issues of law or fact.  *Id.* at 2.

**B.     The District Court Dismisses, and on Appeal the First Circuit Stays, the Underlying Proceeding.**

12.     On June 29, 2018, the District Court dismissed the Complaint without prejudice for failing to file proofs of service.  Underlying Proceeding, ECF No. 16.  Movants subsequently appealed to the First Circuit.  Underlying Proceeding, ECF No. 21.

13.     On September 24, 2018, the First Circuit entered an order directing the parties to show cause whether the automatic stay, extant pursuant to the Commonwealth's filing of a Title III case, applied to all or any part of the appeal.  Appellate Proceeding, Doc. No. 00117342930.

14.      On October 9, 2018, Movants responded to the order to show cause, asserting the automatic stay does not apply to the case because the relief sought "does not involve any budgetary nor financial request from the Commonwealth."  Appellate Proceeding, Doc. No. 00117349408 ("Plaintiff Stay Response") at 12.  According to Movants, the Complaint does not affect the Commonwealth's assets because Rosario has offered her "Property Title" "for all the fees that the Electoral Commission . . . may establish."[9]  *Id.*  Subsequently, Movants filed a *Motion Requesting 90 days for Fundraising Events & Recognition of Property Title as Payment Guaranteed 2018 Freedom Revival 1865 Voting Right Act, 1965*.  Appellate Proceeding, Doc. No. 00117355080 (the "Fundraising Motion").  The Fundraising Motion appears to request the First Circuit refrain from issuing its ruling on the applicability of the stay for a period of 90 days, during which time Movants would organize fundraising efforts in order to pay for the Referendum.

15.      On October 16, 2018, the Commonwealth and Governor Rosselló filed their response in compliance with the order to show cause.  Appellate Proceeding, Doc. No. 00117352678 ("Commonwealth Response").  In pertinent part, the Commonwealth Response states:

> Although Plaintiffs framed their complaint as seeking merely an order to perform a referendum, their cause of action is in reality one for equitable and injunctive relief. In requesting such remedies, Plaintiffs are seeking to exercise at least some degree of control over the Commonwealth's resources, and litigation of the allegations of the Complaint force the Commonwealth to spend funds. Their complaint does not fall under any of the exceptions to the bankruptcy stay set forth in Section 362 (b). Accordingly, it is stayed by Section 362 of the Bankruptcy code, as incorporated by reference under Section 301(a) of PROMESA.

*Id.* ¶ 7.

---

[9]      Here, Movants' argument contradicts their demand for reparations.  Complaint ¶ 96.  Further, the Referendum itself proposes to alter or remove the Commonwealth's property rights by, for example, relinquishing its control of Vieques.  *Id.* ¶ 43.

16.     On November 27, 2018, the First Circuit summarily ordered the appeal stayed "[i]n view of the petition to restructure its debts filed by the Commonwealth of Puerto Rico . . . ." Appellate Proceeding, Doc. No. 00117369929 (the "Stay Order").  The Stay Order also directed the parties to file periodic status reports.  *Id.*

17.     Following entry of the Stay Order, Movants filed a series of status reports and motions for reconsideration that requested the First Circuit lift the stay.  Appellate Proceeding, Doc Nos.  00117375912,  00117423368,  00117465539,  00117478546,  00117476891, 00117487811, 00117502183, 00117523690, and 00117561412.

18.     The First Circuit denied Movants' various requests for reconsideration.  Appellate Proceeding, Doc. Nos. 00117392598, 00117526563, and 00117570613.  In its most recent order denying reconsideration, entered March 26, 2020, the First Circuit directed Movant to "the Title III court to seek stay relief if such relief is desired."  Appellate Proceeding, Doc. No. 00117570613.

**C.      Movants File the Motion Seeking Stay Relief.**

19.     On June 30, 2020, and presumably in response to the First Circuit's directive, Movants filed a complaint with the District of Puerto Rico, which was styled as a "Motion of Stay Relief Based on Modern Legal Genocide."  Case No. 20-1307, ECF No. 3 (the "20-1307 Complaint").  On July 9, 2020, Chief Judge Gelpi entered an order explaining that it will "construe the [20-1307] Complaint's request for stay relief as a motion for relief from the automatic stay" and "transfer it to Case No. 17-3283 for consideration as a contested matter in the Commonwealth's Title III case."  Case No. 20-1307, ECF No. 7.  The Motion was subsequently docketed in the Title III case as ECF No. 13597.  The Title III court then issued a briefing schedule regarding the Motion.  Case No. 17-3283, ECF No. 13598.

20.     In their Motion, Movants reiterate the allegations made in the Complaint that Vieques's lack of autonomy violates Movants' "Voting Rights."  Mot. at 1-6.  Movants further

allege the stay interfered with those rights, and such interference is a "federal crime." *Id.* at 1.

Movants also claim this lack of autonomy infringes upon their rights under the First Amendment,

*id.* at 16, and the Fifteenth Amendment, *id.* at 6.   According to Movants, these violations

necessitate implementing the Referendum. *Id*. at 6-7.  The Motion states the stay should not apply

because Movants are not creditors and the Referendum will be paid for "by [the] Community." *Id.*

at 7.

## ARGUMENT

**I.    THE AUTOMATIC STAY APPLIES TO THE UNDERLYING PROCEEDING
AND ITS APPEAL.**

21.    Movants contend the automatic stay does not apply to the Underlying Proceeding

(and particularly the Appellate Proceeding) because (1) Movants are not creditors of the

Commonwealth, and (2) the Underlying Proceeding does not seek any monetary relief from the

Commonwealth. *See, e.g.*, Plaintiff Stay Response at 12.  Movants are incorrect.

22.    As an initial matter, the First Circuit already determined the automatic stay applies

based on numerous motions and resulting orders regarding same. *See* Stay Order at 1.  The First

Circuit's determination is binding. *United States v. Moore-Bush*, 963 F.3d 29, 37 (1st Cir. 2020)

("[C]ircuit court decisions control federal district courts in their circuits.").

23.    But, even if viewing this in the first instance, this Court should reach the same

conclusion.  The automatic stay, made applicable here by PROMESA section 301, applies in all

of the circumstances enumerated in 11 U.S.C. § 362(a), including any actions seeking "the

commencement or continuation…of a judicial…action or proceeding against the debtor," "to

recover a claim against a debtor," "to obtain possession of property" of the debtor, or "to exercise

control over property of" the debtor.  The automatic stay is "extremely broad and . . . 'applies to

almost any'" actions brought directly against the debtor. *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citation omitted).

24.  The Underlying Proceeding falls within the ambit of 11 U.S.C. § 362(a) in at least four respects.  First, the Underlying Proceeding is a judicial action against the Commonwealth. Second, the requested Referendum, if approved, could remove the entire municipality of Vieques from the Commonwealth's control.  Eliminating a municipality would unquestionably affect the Commonwealth's revenues, impacting the Commonwealth's fiscal plan.  Third, the Underlying Proceeding asks the District Court to enjoin the Commonwealth's agencies from any dispositions of land in Vieques, which would impair the Commonwealth's ability to make determinations as to the use of its property.  Underlying Proceeding, ECF No. 5.[10]  There can be little doubt that such requests are each an "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Fourth, the Underlying Proceeding requests reparations for a "Non-Development Damage Claim" for the period 1940–2017, (Complaint ¶ 96), clearly an "action or proceeding against the debtor . . . to recover a claim against the debtor that arose before the commencement of the case under [PROMESA]."  11 U.S.C. § 362(a)(1).

25.  Although the Bankruptcy Code incorporates certain limited exceptions to the automatic stay, no such exception applies.  Those exceptions, including the criminal proceeding exception, (11 U.S.C. § 362(b)(1)), or the police and regulatory exception, (*id.* § 362(b)(4)), which are set forth in Bankruptcy Code 362(b), are "precise and intentional and must be carefully

---

[10]  In addition to violating the automatic stay, Movants' requested relief may also violate PROMESA section 305, which prohibits the court from issuing any stay, order, or decree interfering with "(1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property."

considered in light of the inclusive nature of section 362(a)."  3 Collier on Bankruptcy ¶ 362.05

(16th ed. 2020).  Accordingly, the exceptions are "read narrowly" and the precise wording of the

stay and its exceptions must be emphasized.  *Ramos v. Banco Popular de P.R. (In re Ramos)*, 493

B.R. 355, 362 (Bankr. D.P.R. 2013) (citing *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*,

997 F.2d 581, 590 (9th Cir. 1993)).

26.    Here, although the Motion alleges criminal violations, there is no pending criminal

proceeding; the Underlying Proceeding is a civil case brought by an individual and non-profit

corporation seeking injunctive, equitable and monetary relief.  Accordingly, the exception for

criminal actions is inapplicable.  *See* 11 U.S.C. § 362(b)(1).  The Underlying Proceeding likewise

does not fall within the police and regulatory power exception, because Movants are not a

"governmental unit."  *See* 11 U.S.C. § 362(b)(4) (the automatic stay does not apply to "the

commencement or continuation of an action or proceeding by a *governmental unit* . . .") (emphasis

added); 11 U.S.C. § 101(27) (enumerating the entities that are a "governmental unit" including a

municipality and its instrumentalities, but not a non-profit corporation).  No other enumerated

exception to the stay is applicable here.  Accordingly, as the First Circuit already determined

(several times), the automatic stay applies.

## II.    NO CAUSE EXISTS TO LIFT THE AUTOMATIC STAY.

27.    The Motion should also be denied because "cause" does not exist to lift the

automatic stay.  *See* 11 U.S.C. § 362(d).  As a practical matter, nothing prevents Movants from

petitioning the Legislature to hold the Referendum or take whatever steps might otherwise be

required to pursue Movants' apparent political agenda.  Rather than pursue the political process,

however, Movants want a court to order the Legislature to do something the Puerto Rico

Constitution leaves to the will of the Legislature.  Significantly, Article I, Section 3 of the Puerto

Rico Constitution establishes the political authority of the Commonwealth extends to the Island of

Puerto Rico and its "adjacent islands," including Vieques, and Article VIII, Section 1 of the Puerto Rico Constitution places the municipality of Vieques in the senatorial district of Humacao (it has since been relocated to the district of Carolina pursuant to the redistricting process established by the Puerto Rico Constitution). Any change to the status of Vieques would thus need legislative approval and a Constitutional amendment—a process which Movants seem to acknowledge.

28.     Movants also provide no authority for the proposition the territory of Puerto Rico can tell the United States it will make itself into two territories, or declare statehood.

29.     "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). Accordingly, an order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *Goya Foods v. Unanue-Casal (In re Unanue-Casal)*, 159 B.R. 90, 95-96 (D.P.R. 1993), *aff'd without opinion sub nom. Unanue v. Unanue-Casal (In re Inanue-Casal)*, 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1)     whether relief would result in complete or partial resolution of the issues;

(2)     the lack of any connection with or interference with the bankruptcy case;

(3)     whether the foreign proceeding involves the debtor as fiduciary;

(4)     whether a specialized tribunal has been established to hear the cause of action at issue;

(5)  whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)  whether the action essentially involves third parties rather than the debtor;

(7)  whether the litigation could prejudice the interest of other creditors;

(8)  whether a judgment in the foreign action is subject to equitable subordination;

(9)  whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of harm."

*In re Sonnax Indus.,* 907 F.2d at 1286.

30.     Courts in the First Circuit have adopted the "*Sonnax* factors."  *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-95 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95-96;  *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in <u>Sonnax</u> and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.");  *Peaje Invs. LLC v. Garcia-Padilla*, Nos. 16-2365 (FAB), 16-2384 (FAB), 16-2696 (FAB), 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016), *aff'd*, 845 F.3d 505 (1st Cir. 2017).  "Application of the Sonnax factors is a matter within the bankruptcy court's discretion; not all of the factors are applicable in every case, nor are they entitled to equal weight."

*In re Birmingham Cosmetic Surgery, P.L.L.C.*, No. 14-58784, 2015 WL 1038801, at *2 (Bankr. E.D. Mich. Mar. 5, 2015) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)).

31.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 518. Movants bear the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

32.     The Motion does not explain, nor attempt to establish, why "cause" exists to lift the stay. Nevertheless, it is plain that the *Sonnax* factors squarely support maintaining the automatic stay.

33.     ***Sonnax* Factor 1:**   The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against modifying the automatic stay. This factor asks whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g.*, *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012). *See In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

34.     Here, Movants ask the Court to lift the automatic stay to resume the Appellate Proceeding, and ultimately, continue the Underlying Proceeding, aimed at forcing the

Commonwealth to hold the Referendum.  Mot. at 7.  Resuming Movants' case would neither solve any open issues in the Debtor's case nor assist the Debtor in pursuing the confirmation of a plan. On the contrary, by raising the possibility that one of the Commonwealth's municipalities might secede, resumption of the case would only create a host of *additional* complexities.  In the event the Underlying Proceeding results in an order compelling the Commonwealth to conduct the Referendum, the Commonwealth would then need to arrange its implementation.  That process would necessarily raise additional, complex legal questions regarding the relative rights and legal status of contract counterparties, citizens, and governmental units.  It is not hard to imagine significant additional litigation following.  Because the Underlying Proceeding would only multiply, rather than resolve, the open issues in the Debtor's case, the first *Sonnax* factor weighs heavily against lifting the stay.

35.   ***Sonnax* Factor 2**:  The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay here.  Movants' case could interfere with Commonwealth property and the management of its Title III Case.  If the relief requested in the Underlying Proceeding were granted, the Commonwealth's ability to manage Vieques's affairs and to dispose of land on the island could be restricted, and the island of Vieques could be removed from the Commonwealth's control.  Furthermore, the Referendum also proposes requiring CODESU's prior authorization for the use of federal funds and for project approval—a result that interferes with the Oversight Board's exclusive power of budgetary review and certification.  *See* PROMESA § 202.  Moreover, the Underlying Proceeding appears to pursue damages in the form of reparations.  Although the amount of damages sought is not specified, any amount that the Commonwealth is ordered to pay as a result of the case would impact the orderly adjustment of the Commonwealth's debts.  Such action would clearly have an impact on the

15

Commonwealth's property, over which this Court has exclusive jurisdiction.  *See* PROMESA § 306.  Lastly, if the stay were lifted, the Commonwealth would be required to devote resources to defend against Movants' claims, which would interfere with its Title III case and overall restructuring by diverting critical funds and government officers from its recovery efforts.  *See, e.g.*, *Memorandum Order Denying Eliezer Santana Báez's Motion For Relief From The Automatic Stay (Docket Entry No. 12516)*, ECF No. 13379 at 5-6.  Thus, *Sonnax* factor 2 weighs in favor of denying the Motion.

36.     **_Sonnax_ Factor 4**:[11]  The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion.  This factor favors lifting the stay only where a specialized tribunal is needed (such as a tax court or an administrative law judge) to properly adjudicate the stayed proceedings.  No specialized tribunal has been established, or will be needed, to hear the case.  The District Court is neither a specialized tribunal, nor the type of court that is "highly experienced" in the particular issues raised by the Movants.  *See In re Lahman Mfg. Co.,* 31 B.R. 195, 199 (Bankr. D.S.D. 1983) (finding *Sonnax* factor 4 did not support lifting the stay because the District Court was not a specialized tribunal "with particular expertise" in dealing with the issues present in the underlying action).  Nor do Movants proffer any facts that would demonstrate otherwise.  Because no specialized tribunal or highly experienced court exists, this factor weighs in favor of denying the Motion.

37.     **_Sonnax_ Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—also does not support

---

[11]   *Sonnax* factors 3 (whether the foreign proceeding involves the debtor as fiduciary); 8 (whether a judgment in the foreign action is subject to equitable subordination); and 9 (whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in connection with Movants' claims, nor any eventual judgment related thereto, and Movants do not allege any facts to the contrary.

38.     **_Sonnax_ Factor 6**: The sixth _Sonnax_ factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather, whether the prepetition action primarily involves third parties _rather than_ the debtor. _See In re Residential Capital, LLC_, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth _Sonnax_ Factor if the debtor is the main party to the litigation."); _Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)_, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties.").

39.     Here, the case targets the Commonwealth and its elected officials directly, and will require them to expend their own funds to defend against Movants' claims. _See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)_, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").  There is no indication that any third parties are involved, let alone that such third parties' interests outweigh the interests of the debtor.  Therefore, _Sonnax_ factor 6 weighs in favor of denying the Motion.

40.     **_Sonnax_ Factor 7**: The seventh _Sonnax_ factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The Underlying Proceeding seeks the ability, and therefore has the potential, to fundamentally alter the

Commonwealth's property rights and obligate it to divert scarce resources to implement the Referendum itself.

41.     Indeed, the Referendum's proposals would have a substantial impact on the rights of creditors.  The Commonwealth's right to dispose of property would be diminished by the proposed installation of a new Vieques governance board that has the power to control federal funds and other projects.  Mot. at 7.  More fundamentally, the Referendum seeks to extinguish the Commonwealth's interests and property within Vieques, thereby diminishing the Commonwealth's assets and revenues, to the detriment of all Commonwealth creditors.  *Id.*

42.     Furthermore, Movants' assertions to the contrary notwithstanding, the Commonwealth would be required to divert its scarce resources to fund the Referendum and ensure its compliance with relevant laws and regulations.  The Motion vaguely asserts such costs will be borne by the "Community."  *Id.*  To the extent Movants are stating they will bear these costs, such a claim is unduly optimistic.  Movant has stated that CODESU "has no bank account nor funds." Complaint ¶ 11.  Additionally, Rosario has not presented sufficient evidence demonstrating she is able to personally fund the effort.  As such, it is likely the Commonwealth itself would need to expend time, effort, and funds to implement the Referendum.

43.     Additionally, the Commonwealth's already limited resources available for Commonwealth creditors would be impacted if it were required to expend resources to defend against Movants' claims at this time.  Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation.  *See, e.g.*, *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prod., Inc.)*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the

interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09-50026, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury"). Additionally, Movants' apparent pursuit of unspecified damages in the Underlying Proceeding would impact the rights of other creditors. Accordingly, *Sonnax* factor 7 weighs heavily against granting the Motion.

44.   ***Sonnax* Factor 10:**   The interest of judicial economy and the expeditious and economical determination of litigation for the parties favors denial of the Motion.  While lifting the stay might result in faster adjudication of Movants' claims (although there seem to be numerous pleading defects that would continue to delay any proceeding on the merits), Movants have identified no reason it is more economical or more efficient to proceed in litigating their claims at this time.  In fact, the opposite is true.  If certain of the Referendum's proposals are approved before the resolution of the Title III case, any rights and obligations the Debtor and creditors might have with respect to property or parties located in Vieques would be affected.  In particular, if Vieques separates from the Commonwealth, it could extinguish the Commonwealth's property rights within the municipality.  Additionally, the proposed conditioning of development plans and federal funds assignments on the approval of a new governance board would impair the Commonwealth's ability to direct the use of its funds.  These changes would force the parties in the Title III case to reassess their obligations or rights to recovery, causing significant delay and confusion.  Accordingly, *Sonnax* factor 10 does not support granting the Motion.

45.     ***Sonnax* Factor 11:**  The Underlying Proceeding is still in its nascent stages— in fact, it has been dismissed before any responsive pleading was filed and remains on appeal regarding such dismissal —and the parties are far from being trial-ready.  The pending procedural issue before the First Circuit is whether the District Court properly dismissed the case for Movants' failure to file proofs of service of the Complaint.  As noted, in the Underlying Proceeding, an answer or motion to dismiss still has yet to be filed.  As such, *Sonnax* factor 11 favors denying the Motion.

46.     ***Sonnax* Factor 12:**  Balancing of the harms clearly favors denial of the Motion.  If the Motion were granted, the impact on the Commonwealth far outweighs any harm Movants would suffer if the automatic stay remains in place.  As noted above, if the stay were lifted, the Commonwealth would be forced to divert resources to defend against Movants' claims at a time when the Commonwealth must continue to focus on progressing its restructuring objectives.  And, if the Referendum were allowed, it is likely the Commonwealth would incur expenses related to its implementation.  The Commonwealth would also face the risks associated with the Referendum itself, namely the extinguishment or modification of the Commonwealth's property and its subsequent impact on the Debtors' restructuring and rights of creditors.  Accordingly, the Underlying Proceeding impacts the fiscal plan and the restructuring, and could easily have a domino effect.

47.     The Commonwealth is mindful of the grievances Movants raise.  Those grievances, however, are political in nature, and political processes through which Movants may seek redress remain available.  Nothing prevents Movants from petitioning the Legislature to implement their proposed Referendum.  At present, Article I, Section 3, of the Puerto Rico Constitution establishes the Commonwealth's political authority over the Island of Puerto Rico and "adjacent islands,"

including Vieques, and Article VIII, Section 1 locates Vieques in the senatorial district of Carolina (it has since been relocated to the district of Carolina pursuant to the redistricting process established by the Puerto Rico Constitution).  Pursuant to Article VII, section 1, the Puerto Rico Constitution may be amended via a process that starts with a resolution of the Legislature.  P.R. Const. art. VII, § 1.  Moreover, for a referendum to be held, the Legislature must approve a law ordering it.  Article 11.1 of Act 58-2020, known as the Puerto Rico Elections Code of 2020 provides that, "[e]very referendum, consultation, or plebiscite held in Puerto Rico shall be governed by the special law approved to such purposes."  Accordingly, Movants may petition the Legislature to pass a resolution to hold a special referendum on the political status of Vieques, while the automatic stay remains in place.   Because political avenues that do not implicate the automatic stay are open to Movants, the harm to Movants is outweighed by the harm the Commonwealth will suffer if the stay is lifted and Movants are allowed to proceed in litigating their claims.

48.     On balance, *Sonnax* factor 12 weighs in favor of denying the Motion.

## CONCLUSION

49.     For the foregoing reasons, the Court should deny the Motion.


Dated: July 23, 2020
        San Juan, Puerto Rico


                                        Respectfully submitted,

                                        */s/ Hermann D. Bauer*
                                        Hermann D. Bauer
                                        USDC No. 215205
                                        **O'NEILL & BORGES LLC**
                                        250 Muñoz Rivera Ave., Suite 800
                                        San Juan, PR 00918-1813
                                        Tel: (787) 764-8181

                                        21

Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
Email: carla.garcia@oneillborges.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
Email: tmungovan@proskauer.com
Email : brosen@proskauer.com


*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of the Commonwealth of Puerto Rico*