## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

## <u>JOINT STATUS REPORT</u>

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

On July 7, 2020, the Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of PREPA in these Title III cases pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government Parties"), filed *PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* [ECF No. 2053] (the "Administrative Expense Motion").  On July 14, 2020, the Court entered its *Order Extending and Establishing Certain Deadlines Applicable to PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement With LUMA Energy* [ECF No. 2068] (the "Scheduling Order").

In the Scheduling Order, the Court directed the Government Parties to confer with anticipated objectors to the Administrative Expense Motion and to file a joint status report (this "Joint Status Report") by July 28, 2020 at 5:00 p.m. (A.S.T.).  This Joint Status Report is being submitted by the following:

(i)     The Government Parties; and,

(ii)    The Official Committee of Unsecured Creditors of all Title III Debtors (except COFINA and PBA) ("UCC"); the Fuel Line Lenders;[2] Unión de Trabajadores de la

---

[2] The Fuel Line Lenders are Cortland Capital Market Services LLC, as successor administrative agent under a Credit Agreement, dated May 4, 2012, among PREPA, Scotiabank de Puerto Rico and certain lenders (the "Scotiabank Credit Agreement").

Industria Eléctrica y Riego ("UTIER") and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE"); and Whitefish Energy Holdings, LLC ("Whitefish"). The UCC, Fuel Line Lenders, UTIER, SREAEE, and Whitefish are referred to collectively as the "Anticipated Objectors."[3]

## I.    Procedural Background[4]

1.    On July 7, 2020, the Government Parties filed the Administrative Expense Motion on behalf of PREPA.

2.    The Scheduling Order required all discovery requests in connection with the Administrative Expense Motion be served on or before July 24, 2020. Scheduling Order ¶ 3. In addition, the Court ordered the Government Parties and the Anticipated Objectors to meet and confer regarding any discovery disputes, and if any disputes remained unresolved, to file this Joint Status Report by 5:00 p.m. (A.S.T.) on July 28, 2020.[5] *Id.* The Court directed the parties to "describe the categories of documents and other discovery that have been agreed upon, and all issues in dispute with full position statements on each such issue." *Id.*

3.    On July 23, 2020, UTIER and SREAEE's counsel propounded discovery requests ("UTIER Discovery Requests"), consisting of 11 interrogatories and 10 requests for production of documents, upon PREPA and the Oversight Board. The UTIER Discovery Requests are attached hereto as Exhibit 1.

---

[3] In identifying the foregoing parties as "Anticipated Objectors," the Government Parties do not concede that any Anticipated Objector has standing to object to the Administrative Expense Motion or to intervene in this contested matter.

[4] Unless defined herein, capitalized terms shall have the meanings ascribed to them in the Administrative Expense Motion.

[5] On July 28, 2020, the Parties filed an *Urgent Unopposed Joint Motion to Adjourn Deadline for Joint Status Report Concerning Discovery Disputes Related to LUMA Energy Administrative Expense Motion* [ECF No. 2101], seeking to extend this deadline until 12:00 p.m. (A.S.T.) on July 29, 2020.

4.      On July 24, 2020, the UCC's counsel propounded identical discovery requests ("UCC Discovery Requests"), consisting of 2 requests for production and a Rule 30(b)(6) Notice requesting testimony on 3 topics, upon PREPA, AAFAF, the Puerto Rico Public-Private Partnership Authority ("P3"), and the Oversight Board.  The UCC Discovery Requests to the Oversight Board are attached hereto as Exhibit 2.     The UCC has also requested copies of all documents produced to other parties.

5.      On July 24, 2020, the Fuel Line Lenders' counsel propounded their discovery requests ("FLL Discovery Requests") upon the Oversight Board, PREPA, and AAFAF.  The FLL Discovery Request only seeks the production of all documents produced to the UCC or to UTIER.

6.      On July 24, 2020, Whitefish's counsel propounded discovery requests ("Whitefish Discovery Requests"), consisting of 10 interrogatories and 6 requests for production of documents upon PREPA and the Oversight Board.[6]  The Whitefish Discovery Requests are attached hereto as Exhibit 3.

7.      On Monday, July 27, 2020, counsel for the Oversight Board sent an email, attached hereto as Exhibit 4, to the Anticipated Objectors, which email (1) listed documents the Government Parties were prepared to produce in response to the Anticipated Objectors' Discovery Requests; (2) objected to certain requests the Government Parties deemed overly broad; (3) attached a proposed protective order governing the production of confidential information in this contested matter; and (4) requested that the Parties meet and confer.

---

[6] Collectively the UTIER Discovery Request, the UCC Discovery Request, the FLL Discovery Request, and the Whitefish Discovery Request are referred to as (the "Anticipated Objectors' Discovery Requests").

8.     Also, on Monday, July 27, 2020, the Parties[7] met and conferred regarding the Anticipated Objectors' Discovery Requests.

## II.     The Government Parties' Position Regarding Documents They Will Agree to Produce[8]

9.     The competitive procurement process to select a private partner to operate PREPA's T&D assets through the T&D Contract (the "RFP Process") was designed to ensure transparency.  P3 oversaw the RFP Process and the negotiation of the T&D Contract with LUMA. P3 published an over 300-page report (including exhibits) of the Partnership Committee detailing the process of selecting LUMA Energy as the winning proponent for the T&D Contract and the negotiation of the T&D Contract with LUMA Energy.  A copy of that Partnership Committee Report is on P3's website,[9] and was attached to the Declaration of Omar Marrero in support of the Motion.  As explained in the Partnership Committee Report, the RFP Process was designed to ensure transparency, and therefore all communications between P3 and LUMA Energy during the RFP Process were through the Power Advocate platform.[10]  *See Declaration of Omar J. Marrero in Support of PREPA's Motion for Entry of an Order Allowing Admin. Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (the "*Marrero*

---

[7] The "Parties" consist of the Anticipated Objectors, the Government Parties, and P3.

[8] The statements and characterizations of events in this section are solely those of the Government Parties and are not adopted by the other Parties.

[9] http://www.p3.pr.gov/assets/20-0520-02-partnership-committee-report-r18.pdf

[10] The Government Parties do not intend to review or produce the contents of a data room containing largely confidential due diligence materials related to the RFP Process, including almost 18,000 documents and totaling about 149,000 megabytes of data, which are irrelevant to the Administrative Expense Motion.  *See Marrero Decl.*, Ex. A at 43-44.  However, to the extent the Anticipated Objectors demand production of these voluminous materials, not only would any such production be conditioned on entry of an appropriate and acceptable protective order, but for the avoidance of doubt, the considerable time required to review and produce any such documents should not serve as a basis for further extending the deadlines for the Administrative Expense Motion.

*Decl.*"), Ex. A at 42-46.  P3 (including PREPA's and AAFAF's representatives on the Partnership Committee and P3 Board) did not substantively communicate with LUMA Energy via any other media, including email communications, during the RFP Process.  The Government Parties offered to produce the following documents, to the extent responsive to the Anticipated Objectors' Discovery Requests:

    a.  communications and documents made available to and received from LUMA Energy via PowerAdvocate,[11] including:

        i.  messages and attachments thereto;

       ii.  various drafts of a term sheet and the T&D Contract;

      iii.  comments from LUMA Energy to the drafts of a term sheet and the T&D Contract, including issues lists summarizing the comments;

      iv.  memoranda to LUMA Energy from P3 summarizing comments from LUMA that were accepted in the drafts of the term sheet and the T&D Contract;

    b.  minutes of Partnership Committee meetings and written resolutions of the Partnership Committee.

10.     The UCC's discovery requests consist of discovery related to the Supplemental Agreement.  The Supplemental Agreement was negotiated by the Oversight Board, with input from time to time from P3.  Although the Oversight Board believes the Supplemental Agreement is not relevant to the issues presented by the Administrative Expense Motion or the relief requested

---

[11] PowerAdvocate is a digital platform specifically designed for competitive procurement in the energy industry. *See* Marrero Decl., Ex. A at  42 n.13 [ECF No. 2053-2].

from the Court, in the interest of avoiding a dispute, the Oversight Board has offered to produce drafts of the Supplemental Agreement that were exchanged among the parties. The Oversight Board reserves its right to object to the use of the Supplemental Agreement or any drafts thereof on any grounds, including relevance.[12]

11.     In light of the fact that all substantive communications between LUMA Energy and P3 (including PREPA's and AAFAF's representatives on the Partnership Committee and P3 Board, including Mr. Marrero) took place via the PowerAdvocate platform, the Government Parties do not intend to conduct a review of email or other electronic communications, except as discussed in section III.A.1 below.

12.     As a condition to the production of the above documents, the Government Parties would require the Anticipated Objectors to enter into a protective order acceptable to the Government Parties, and substantively similar to previous protective orders entered into in these Title III cases.[13]

**III.     Matters in Dispute**

    **A.     UCC Discovery Requests**

        **1.     Government Parties' Statement**

13.     The UCC Discovery Requests to the Oversight Board, PREPA, AAFAF, and P3 seek discovery related to the provisions of the Supplemental Agreement. The Government Parties and P3 object to the UCC Discovery Requests as negotiations related to the Supplemental

---

[12] The Government Parties have not conceded and expressly reserve objections on relevance (and all other) grounds concerning all documents they agree to produce.

[13] *See Stipulation and Order in Connection with Discovery Regarding the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(A)(I) and 9019 for Order Approving Settlements Embodies in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [ECF No. 1295].

Agreement are not relevant to the approval of an administrative expense for the Front End
Obligations.  However, the Oversight Board, which negotiated the Supplemental Agreement, has
agreed to produce drafts of the Supplemental Agreement.  The UCC Discovery Requests also seek,
in addition to drafts of the Supplemental Agreement, (1) communications regarding the
Supplemental Agreement, as well as (2) deposition testimony regarding the Supplemental
Agreement.  The Oversight Board, PREPA, AAFAF and P3 have not agreed to produce any email
communications regarding the Supplemental Agreement or attaching drafts of the Supplemental
Agreement; however, the Oversight Board has agreed to further consider the UCC's request.  The
Government Parties and the UCC have agreed to defer discussions regarding any deposition
testimony until after document productions have been made.  Further, AAFAF has informed the
UCC that it did not negotiate the Supplemental Agreement and, accordingly, any information
AAFAF may have would be cumulative of what the Oversight Board could provide.  AAFAF has
therefore requested that the UCC withdraw its requests to AAFAF.  PREPA similarly does not
anticipate that it has any responsive documents beyond what the Oversight Board would provide.
AAFAF, PREPA, and P3 believe that any production of documents from them concerning the
Supplemental Agreement would either (i) be duplicative of any discovery from the Oversight
Board (which took the lead on negotiating the Supplemental Agreement), or (ii) target
communications which would be subject to privileges.

2.     **UCC's Statement**

14.     The UCC's document requests and deposition topics are narrowly focused on two
specific aspects of the T&D Contract with the Operator, LUMA:  (1) the requirement in Section
6.1 of the Supplemental Agreement that a Title III Plan and confirmation order be "reasonably
acceptable to Operator," and (2) the "Operator Termination Fee," as that term is defined in the

7

Supplemental Agreement.  These requests are limited to the aspects of the T&D Contract that are most concerning to the UCC due to the level of control they would potentially cede to the Operator over these Title III cases and the value such Operator stands to receive from PREPA.  In seeking allowance of an administrative expense claim for services to be performed under the T&D Contract, the Government Parties have put the Court in the role of a gatekeeper.  If the Court grants the Motion, the Government Parties will be able to move forward with implementation and execution of the T&D Contract.  If the Court denies the Motion, the contract may not be consummated in its current form, because the allowance of the administrative expense claims is required to avoid creating a termination right for the Operator.  Given the Court's gatekeeper role, it should understand, before ruling on the Administrative Expense Motion, that there are aspects of the deal that are problematic for PREPA and its creditors.  The UCC's requests are thus relevant to the Administrative Expense Motion.

15.    The UCC appreciates that the Government Parties are willing to produce select categories of responsive documents and that the Oversight Board is willing to continue meeting and conferring with the UCC regarding a further search for additional responsive communications, including emails.  To the extent the other Government Parties—specifically,  AAFAF, PREPA, and P3—are refusing to search for and produce communications other than those located on the PowerAdvocate platform, the UCC objects to such refusal.   P3 was admittedly involved in negotiating the Supplemental Agreement, and PREPA is a signatory to such agreement.  Moreover, although P3 has said it communicated with the Operator exclusively through the PowerAdvocate platform, it has not stated that it has no email or other electronic communications either internally or with other parties, including the other Government Parties.  Although the Government Parties have asserted that AAFAF "did not negotiate the Supplemental Agreement," Omar Marrero,

AAFAF's Executive Director, who submitted a declaration in support of the motion, also serves as the Chairman of the Governing Board of P3, is a member of the Partnership Committee, and was formerly the Executive Director of P3. Accordingly, Mr. Marrero and individuals working on his behalf are likely to have responsive documents as representatives of P3 if not as representatives of AAFAF.

16.     To the extent the Government Parties do search for emails and other communications in response to the UCC's requests, the burden imposed on them should be limited in light of the requests' very narrow scope. The UCC is, of course, willing to meet and confer with the Government Parties to discuss appropriate custodians, date ranges, and search terms, so that the review and production process is efficient and will fit within the schedule set by the Court. The UCC is not, however, willing to forego entirely its request for responsive communications at this stage from all parties other than the Oversight Board.

17.     The UCC is willing to defer discussion regarding depositions at this time as to all Government Parties until the UCC has a greater understanding of the role each Government Party played in negotiating and approving the relevant transactions and has begun receiving document productions.

     **B.**     **UTIER's Discovery Requests**

     1.     **Government Parties' Statement**

18.     Certain of the UTIER Discovery Requests seek non-confidential document productions and interrogatory responses from the Oversight Board and PREPA regarding the impact of the Administrative Expense Motion on other stakeholders in PREPA's Title III case. The Oversight Board and PREPA object to the UTIER Discovery Requests as overbroad insofar as they seek discovery regarding issues that are not relevant to the issues presented by the

9

Administrative Expense Motion or the relief requested from the Court, that are outside the scope

of the Administrative Expense Motion, and/or that are not proportional to the needs of the case,

specifically and primarily the alleged impact of the requested administrative claim on other

creditors and parties-in-interest in PREPA's Title III case. *See, e.g.*, July 11, 2019 Hrg. Tr. 11:18-

24 (holding that "impact of full RSA implementation on [PREPA's] operations and PREPA's

ability to address the costs thereof are [] ones whose logistical impact on these narrowly focused

9019 proceedings would outweigh substantially any probative value in connection with the

decision the Court must make"); *Memorandum Order Granting Motion for Protective Order and*

*Order in Limine Precluding Evidence in Connection with 9019 Motion* [ECF No. 1543] (holding

that evidence regarding "the long-term impact of full implementation of the RSA is outside the

scope of the 9019 Motion" and excluding evidence regarding the potential impact of the RSA on

other creditors). As set forth below, UTIER asserts the standard for allowance of an administrative

expense claim in PREPA's Title III case is whether the expense will benefit the debtor's "estate,"

which it defines to include the debtor's creditors. That position is wrong in the context of a

municipal bankruptcy case, including this Title III case, where there is no "estate." Instead, an

administrative expense claim is appropriate where (1) the services are necessary to preserve the

operations of the debtor (i.e. to provide services to the public and carry out its mission), and (2)

the debtor consents to payment of the claim as an administrative expense. *In re Craig Cty. Hosp.*

*Auth.*, 572 B.R. 340 (Bankr. N.D. Okla. 2017). The benefit of the services to creditor recoveries,

therefore, is not material to the Administrative Expense Motion.

19.     Accordingly, the Oversight Board and PREPA will not conduct a custodian and

search term review to locate documents or communications regarding the impact of the

Administrative Expense Motion on other stakeholders in PREPA's Title III case, and will not

10

substantively respond to interrogatories seeking information regarding that same issue.  However,

to the extent the categories of documents the Government Parties have already agreed to collect

and produce contain documents responsive to these requests, the Oversight Board and PREPA will

not withhold documents solely on the basis that they contain information responsive to such

requests.

2.   **UTIER's and SREAEE's Statement**

20.   While the Oversight Board and PREPA consider that discovery on the impact of

the administrative expense priority on other claims is irrelevant, UTIER and SREAEE maintain

that the requested discovery is proper and squarely within the scope of review for this contested

matter. The Oversight Board and PREPA are improperly narrowing the scope of discovery in this

case.

21.   The Oversight Board and PREPA seek administrative expenses priority under 11

U.S.C. § 503(b)(1)(A). Under this section, "[t]he burden of proving entitlement to priority payment

as an administrative expense rests with the party requesting it as the traditional presumption

favoring **ratable** distribution among all unsecured creditors requires strict construction of

provisions governing requests for priority payment of administrative expenses." In re Malden Mills

Industries, Inc., 303 B.R. 688, 707 (B.A.P. 1st Cir. 2004)citations omitted) (emphasis added).

22.   The standard requires benefit to the estate, which means benefit to the creditors,

who are the intended beneficiaries of a bankruptcy estate. See, for example, Matter of Bay Broad.,

Inc., 182 B.R. 369, 374 (D.P.R. 1995)("The words 'actual and necessary' have been construed to

require the debt **to benefit the estate and creditors**."(emphasis added)(citation omitted)). See,

also, In re PMC Mktg. Corp., 09-02048, 2013 WL 3367500, at *7 (Bankr. D.P.R. 2013)("A survey

of case law reveals that the terms 'actual' and 'necessary' found in the statute are to be narrowly

construed. Therefore, to qualify as an administrative expense entitled to priority, the expense must be an actual and necessary cost **of preserving the estate for the benefit of its creditors**."(emphasis added)(citations omitted)).

23.     Thus, all of UTIER's Discovery Requests regarding the impact of the administrative expense priority on PREPA's creditors are wholly relevant. These requests center on the following topics: (1) the justification for the administrative expense priority and the amount; (2) the impact of the administrative expense priority on PREPA's finances, and (3) the impact of the administrative expense priority on PREPA's ability to pay its unsecured creditors. In order to determine if PREPA has met the standard for an administrative expense priority, we need to know if the claim provides **a demonstratable benefit to the bankruptcy estate**. See In re Malden Mills Industries, Inc., 303 B.R. at 706. Benefit to the estate means benefit to PREPA's unsecured creditors. See, also, In re PMC Mktg. Corp., 09-02048, 2013 WL 3367500, at *7 (Bankr. D.P.R. 2013).

24.     Thus, it is essential for the Objectors to have access to any information regarding the impact the administrative expense claim has on PREPA's creditors. If the priority negatively affects PREPA's finances and, by consequence or directly, the unsecured creditors, without providing any monetary benefit in return, then there is no doubt that the claim only has the effect of depleting the estate, not benefiting it. The only way to ascertain which of these scenarios exists is with access to the information that UTIER and SREAEE have requested regarding that impact.

25.     The impact on stakeholders and creditors of approving this administrative expense is fundamental to determining the benefit of the contract to the state, particularly when PREPA's budget certified by the Oversight Board on June 30, 2020, has a deficit of $125,663,000.00 due to

the cost of the LUMA contract.[14]

C.    **Whitefish Discovery Requests**

1.    **Government Parties' Statement**

26.    The Whitefish Discovery Requests seek document productions and interrogatory responses from the Oversight Board and PREPA regarding (*i*) administrative claims asserted against PREPA and (*ii*) other documentation associated with services purportedly provided to PREPA by Whitefish.   The Oversight Board and PREPA object to the Whitefish Discovery Requests because neither of these issues has any bearing on the Administrative Expense Motion or the relief requested therein.   As set forth in further detail below, Whitefish contends that the Whitefish Discovery Requests are relevant because, according to Whitefish, the Court must consider whether allowance of LUMA's administrative expense claim would render PREPA administratively insolvent.  Not so.  This Court has already held that "PROMESA does not refer to or incorporate a concept of administrative insolvency in connection with a Title III debtor's payment of administrative expenses or otherwise . . ."  *Order Overruling Cobra Acquisitions LLC's Omnibus Objection to Fee Applications Filed by Professionals and Request to Increase Holdback Amount*, ECF No. 1931, at 2.  Accordingly, the Oversight Board and PREPA will not respond to Whitefish's interrogatories and will not conduct separate searches for documents responsive to the Whitefish Discovery Requests.  The Government Parties will provide Whitefish with the documents produced in response to UTIER and the UCCs' requests and will not withhold documents produced to UTIER and the UCC solely on the basis that they contain information

---

[14] See PREPA's Fiscal Plan p. 10 at https://drive.google.com/file/d/1paRgy0dJBkUH4-5eev7z2SuR0diil8g9/view:
(…the 2020 Fiscal Plan projects a deficit of $132 million in FY2021, which is due to the front-end transition fee to the T&D operator…), and Certified Budget at:
https://drive.google.com/file/d/1yIV664F009bi3UeE9WBHi3J6U6r42tFQ/view

responsive to Whitefish's requests.

2.     **Whitefish's Statement**

27.     Whitefish is an administrative creditor of PREPA, and is currently owed in excess

of $136 million for work it performed in the immediate aftermath of Hurricanes Maria and Irma

in 2017. Of that amount, $106 million is the amount outstanding for the work and the remaining

$30 million is for Finance Charges that have accrued and continue to accrue at a rate of $1 million

per month because PREPA has not made any payments in the past 30 months. Furthermore, despite

repeated emails and phone calls from Whitefish's counsel, counsel for PREPA and the Oversight

Board have provided no information regarding the status of FEMA's review of Whitefish's

invoices.

28.     Whitefish served limited interrogatories and requests for production of documents

(the "Discovery Requests") on PREPA and the Oversight Board generally concerning (1) any

consideration or analysis of the impact of granting an administrative claim to LUMA Energy on

other existing and unpaid administrative claims and (2) the status of FEMA's review and

reimbursement of WEH's invoices. PREPA and the Oversight Board object to these requests in

their entirety as outside the scope of the Motion, and are refusing to respond to them in any manner

whatsoever.

29.     All of WEH's Discovery Requests relate to the issue of the status of PREPA's

current outstanding administrative claims, which in turn impact any analysis of whether the Court

should approve further administrative claims such as the ones sought in the Motion. With respect

to the Discovery Requests relating to the consideration of the impact of awarding the LUMA

Energy Administrative claims on other administrative claims, these are relevant because

administrative expenses are to be narrowly construed, given their impact on other claims against

14

the estate. This is even more true with respect to other administrative claims that have already been incurred and will have to be paid in the same manner. In order to be allowed, administrative claims must be necessary and beneficial to the estate. That analysis should include consideration of whether allowance of the LUMA Energy administrative claims will render the estate administratively insolvent. This is particularly true where PREPA has admitted its revenues have declined as a result of the COVID-19 pandemic. *See Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion* (the "COVID-19 Status Report") [Dkt. No. 1992], ¶6 (stating that PREPA's revenue is only 70% of pre-pandemic forecasts through May 8). While the Government parties quibble with the phrase "administrative insolvency," the fact remains that in order to confirm a plan of adjustment PREPA will be required to pay all administrative expenses in full. 48 U.S.C. §2174(b)(4). The allowance of further administrative expenses may jeopardize that requirement and information regarding analysis of that issue is relevant to the Court's determination of the Motion.

30.     With respect to the Discovery Requests regarding the status of FEMA's review of WEH's invoices, they are relevant because to the extent such amounts are paid by FEMA, the amount of PREPA's outstanding administrative claims is reduced dollar-for-dollar. Such payments would be beneficial to the estate and other creditors, including other administrative creditors, by substantially reducing the amount of administrative claims to be paid upon plan confirmation. This information will assist the Court and the parties in determining whether it is in the best interests of the estate to grant administrative priority to LUMA Energy. Therefore, WEH believes the Discovery Requests are reasonable and within the scope of the Motion.

**D.     Fuel Line Lenders' Statement**

31.     The Fuel Line Lenders have not sought any document discovery beyond documents

produced to other parties in connection with the Administrative Expense Motion.  After the recent meet-and-confer, Fuel Line Lenders understand from the Government Parties that they will receive documents produced to any other parties, including the UCC, UTIER, and Whitefish.

32.     The Fuel Line Lenders reserve all rights with respect to the legal standard to be applied to the Administrative Expense Motion, including whether administrative expenses under section 503(b)(1)(A) "for the actual and necessary costs of preserving the estate" may be awarded in a case under PROMESA.  The Fuel Line Lenders understand that other parties have argued that "benefit to the estate" is the applicable standard on this motion for the grant of an administrative expense, and the Fuel Line Lenders do not object to this Court resolving discovery disputes among those parties accordingly, but request that any such application of that standard be without prejudice to the Fuel Line Lenders being heard on the merits of whether section 503(b)(1)(A) and the "benefit to the estate" test is applicable here.

## IV.     Joint Proposal for Process to Reach Agreement on Discovery in Light of the Proposed Amended Order

33.     The Parties are engaged in productive dialogue regarding the Anticipated Objectors' Discovery Requests.  Accordingly, the Parties propose they submit a further joint status report describing remaining issues in dispute on or before August 4, 2020.


*[Remainder of page intentionally left blank]*

Dated:  July 29, 2020
      San Juan, Puerto Rico

Respectfully submitted,

**PROSKAUER ROSE LLP**

*/s/ Paul V. Possinger*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Daniel S. Desatnik *(pro hac vice*)
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

Jennifer L. Jones (*pro hac vice*)
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 284-4509
Fax: (310) 557-2193

Laura E. Stafford (*pro hac vice*)
1 International Place
Boston, MA 02130
Tel: (617) 526-9714
Fax: (617) 526-9899
*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth of Puerto Rico and the Puerto
Rico Electric Power Authority*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis Marini*
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
*Co-Attorney for the Financial Oversight and
Management Board as representative of the
Debtor*

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi (*pro hac vice*)
Nancy A. Mitchell (*pro hac vice*)
Maria J. DiConza (*pro hac vice*)
7 Times Square
New York, New York 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman  (*pro hac vice*)
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

-and-

Elizabeth L. McKeen (*pro hac vice*)
Ashley M. Pavel (*pro hac vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency*

17

Fax:  (787) 936-7494

*Co-counsel for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

*/s/ Katiuska Bolaños*
Katiuska Bolaños
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.:  (787) 395-7133
Fax:  (787) 497-9664

*Counsel for Puerto Rico Electric Power
Authority*

*/s/ Juan J. Casillas Ayala*
Juan J. Casillas Ayala
USDC-PR No. 218312
Israel Fernández Rodríguez
USDC-PR No. 225004
Juan C. Nieves González
USDC-PR No. 231707
Cristina B. Fernández Niggemann
USDC-PR No. 306008
**CASILLAS, SANTIAGO & TORRES LLC**
PO Box 195075
San Juan, PR 00919-5075
Telephone: (787) 523-3434
Facsimile: (787) 523-3433
Email: jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*/s/ Nayuan Zouariabani*
Nayuan Zouairabani
USDC-PR No. 226411
**MCCONNELL VALDÉS LLC**
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, Puerto Rico 00936-4225

*and Financial Advisory Authority and Puerto
Rico Electric Power Authority*

*/s/ Luc A. Despins*
Luc A. Despins (admitted *pro hac vice*)
Nicholas A. Bassett (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Email: lucdespins@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of
Unsecured Creditors*

*/s/ Emil A. Kleinhaus*
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019

Telephone: (787) 250-5604
Facsimile: (787) 759-9225
Email: nzt@mcvpr.com

Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: rgmason@wlrk.com
arwolf@wlrk.com
eakleinhaus@wlrk.com
mhcassel@wlrk.com

*Attorneys for Cortland Capital Market
Services LLC, as Administrative Agent*

/s/ Jessica E. Méndez-Colberg
Rolando Emmanuelli-Jiménez
USDC-PR No. 214105
Jessica E. Méndez-Colberg
USDC-PR No. 302108
**BUFETE EMMANUELLI, C.S.P.**
472 Tito Castro Ave.,
Marvesa Building Suite 106
Ponce, PR 00716
Telephone: (787) 848-0666
Facsimile: (787) 977-0323
Email: rolando@bufete-emmanuelli.com
jessica@bufete-emmanuelli.com
*Attorneys for Unión de Trabajadores de la
Industria Eléctrica y Riego and Sistema de
Retiro de los Empleados de la Autoridad de
Energía Eléctrica*

/s/ Ann Marie Uetz
Ann Marie Uetz (*pro hac vice*)
**FOLEY & LARDNER LLP**
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone (313) 234-7100
Facsimile (313) 234-2800
auetz@foley.com
*Counsel for WEH*

and

**C. CONDE & ASSOC.**
*/s/Carmen D. Conde Torres*
Carmen D. Conde Torres, Esq.
USDC 207312
*/s/Luisa S. Valle Castro*
Luisa S. Valle Castro, Esq.

19

USDC No. 215611
254 San José Street, 5th Floor
Old San Juan, Puerto Rico 00901
Telephone: 787-729-2900
Facsimile: 787-729-2203
E-Mail: condecarmen@condelaw.com
ls.valle@condelaw.com
*Counsel for WEH*

20