> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

## TWO HUNDRED TWENTY-FIFTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to Section 315(b) of the *Puerto Rico Oversight,*

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred twenty-fifth

omnibus objection (the "Two Hundred Twenty-Fifth Omnibus Objection") to the duplicate proofs

of claim listed on **Exhibit A** hereto, each of which is duplicative, in part, of one or more master

proofs of claim asserted against the Commonwealth on behalf of the holders of certain bonds, and

in support of the Two Hundred Twenty-Fifth Omnibus Objection, respectfully represents as

follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section

306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a),

commencing a case under Title III thereof (the "Commonwealth Title III Case," or the "Title III

Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing

Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of

Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines

and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice*

---

[2]      PROMESA is codified at 48 U.S.C. §§ 2101-2241.

*Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.   Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.   Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

6.   The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution") became effective in 1952.  The P.R. Constitution created the Commonwealth as the central government of Puerto Rico, "republican in form.".  *See* P.R. Const., Art. I, §§ 1, 2.  The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including on the ability of the Commonwealth to pledge its revenues.  *See* P.R. Const., Art. VI, § 2.  In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

7.   Master proofs of claim have been filed in the Commonwealth Title III Case (the "Master Proofs of Claim") against the Commonwealth on behalf of the holders of certain bonds

issued by, among others, the Puerto Rico Highways and Transportation Authority ("HTA"); the

Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS");

Puerto Rico Public Buildings Authority ("PBA"); Puerto Rico Aqueduct and Sewer Authority

("PRASA"); Puerto Rico Convention Center District Authority ("PRCCDA"); Puerto Rico

Industrial Development Company ("PRIDCO"); the Puerto Rico Infrastructure Financing

Authority ("PRIFA"); Puerto Rico Public Financing Corporation ("PRPFC"); and University of

Puerto Rico ("UPR").

8.    *ERS*—ERS is a trust established by the Commonwealth in 1951 for the economic

well-being of public employees.  ERS is an agency of the government, separate and apart from the

Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.  Purportedly

pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and

certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the

"ERS Bonds") in the aggregate original principal amount of approximately $2.9 billion.[3]  BNYM

serves as the fiscal agent with respect to the ERS Bonds.   On behalf of the holders of the ERS

Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS-CW

Master Proof of Claim"), asserting claims against ERS based on, among other things, the

enactment of Joint Resolution 188 and Law 106, which together created a "pay as you go"

---

[3] On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

retirement system whereby pensioners are paid from the general funds of the Commonwealth, instead of Employers' Contributions, which is alleged to be collateral for the Bonds.  BNYM initially filed one proof of claim that was logged by Prime Clerk, LLC ("Prime Clerk"), on May 24, 2018 as Proof of Claim No. 16775, and then filed an amended claim, on May 25, 2018, that was logged by Prime Clerk as Proof of Claim No. 32004.[4]

9.     *HTA*—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.  On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured,

---

[4]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent* (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this Two Hundred Twenty-Fifth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ."  *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[5]

10.   **_PBA_**—PBA purportedly issued bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  U.S. Bank National Association ("US Bank") and US Bank National Trust Association ("US Bank Trust") serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and, on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Proof of Claim"), which was logged by Prime Clerk as Proof of Claim No. 62833.  The PBA Master Proof of Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."  Rider to PBA Master Proof of Claim, ¶¶ 19-21.

11.   **_PRASA_**—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds"), under the

---

[5]  While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, *Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico*, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk as Proof of Claim No. 22620 (the "PRASA Master Claim").  The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto."  Addendum to PRASA Master Claim, ¶ 9.

12.     ***PRCCDA***—The Bank of New York Mellon ("BNYM") serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by PRCCDA (the "PRCCDA Bonds"), and on behalf of the holders of PRCCDA Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 37319 (the "PRCCDA Master Proof of Claim"). The PRCCDA Master Claim asserts a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity." Addendum to PRCCDA Master Proof of Claim, ¶ 11.

13.     ***PRIDCO***—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the

Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 13445 (the "PRIDCO
Master Claim,").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the
Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all
claims the Trustee has or may have relating to the outstanding Bond obligations, whether known
or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's
behalf, whether presently asserted or to be asserted, including without limitation claims for or
based upon the breach or violation of the Bond Documents, lease agreements or other contractual
obligations relating to the underlying collateral, any other covenants or other contractual
obligations contained therein, or claims arising from the improper diversion of PRIDCO's
revenues or any other property securing the payment of the Bonds under the Bond Documents, as
a matter of relevant Commonwealth, state or federal law, including without limitation constructive
trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary
obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal
or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

14.    ***PRIFA***—PRIFA is an affiliate of the Government Development Bank ("GDB")
and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act
No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other
types of assistance to the Commonwealth, its public corporations and other instrumentalities
responsible for developing and operating infrastructure facilities.  On behalf of the holders of
various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of
claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by
BNYM, US Bank, and UMB Bank, N.A.  US Bank filed a master proof of claim with respect to
certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf

of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.

15.    ___PRPFC___—PRPFC is a subsidiary corporation of GDB created pursuant to Resolution No. 5044 of the Board of Directors of GDB, as amended ("Resolution No. 5044"), adopted pursuant to the authority granted under Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended.  It provides government agencies, instrumentalities, municipalities and other subdivisions of the Commonwealth with alternative mechanisms to meet their financing needs.  PRPFC has the capacity to borrow money and issue debt through the issuance of bonds and other obligations.  U.S. Bank Trust serves as trustee for certain Series 2012A and Series 2011A and B bonds issued by the PRPFC (the "PRPFC Bonds").  On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth, which was logged by Prime Clerk as Proof of Claim No. 13374.

16.    ___UPR___—UPR allegedly is "a public corporation of the Commonwealth constituting an organic system of higher education," pursuant to Act No. 1 of the Legislature of Puerto Rico, approved January 20, 1966 (18 L.P.R.A. §§ 601-614).  Rider to Proof of Claim No. 13382, ¶ 5. US Bank serves as trustee for certain University System Revenue Refunding Bonds Series P and Q issued by UPR, and filed a master proof of claim, logged by Prime Clerk as Proof of Claim No. 13382 (the "UPR Master Claim").  The UPR Master Claim asserts "contingent, unliquidated

9

claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Trust Agreement, or pursuant to other applicable documents or law, including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future." *Id.* ¶ 12.

### C. Proofs of Claim Filed in the Title III Case, the Omnibus Objection Procedures, and Claim Objections

17.     To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

18.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

19.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English

and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions*

*of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

20.     In the continued interest of resolving any unnecessary proofs of claims in an

efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking,

among other things, to allow the Debtors to file omnibus objections on substantive bases, to further

expand the number of claims that may be included on an objection, and to approve additional

forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus*

*Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving*

*Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019,

the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus

Objection Procedures").

21.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus

Objection Procedures, the Court has held hearings related to one hundred fifty-seven omnibus

objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("COFINA"), the HTA, and/or ERS, as well as thirty-three individual objections. After hearings

held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019,

September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections

and thirty-two individual objections, resulting in thousands of proofs of claim filed against the

Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of

other claims being reclassified to be asserted against another of the Debtors. Twenty-two omnibus

objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on December 11, 2019. Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020, and thirty omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and granted on March 4 and March 5, 2020. Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS, have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

22. This Two Hundred Twenty-Fifth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

23. The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

24. The Two Hundred Twenty-Fifth Omnibus Objection seeks to partially disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, claims that, in part, are duplicative of other proofs of claim filed in the Title III Case.

25. Each claim identified in **Exhibit A** hereto (collectively, the "Partially Duplicate Bond Claims") purports, in part, to assert liability against the Commonwealth associated with one or more bonds that are duplicative of one or more Master Proofs of Claim, which as described above were filed in the Commonwealth Title III Case by the fiscal agent and/or trustee for certain bonds issued by HTA, ERS, PFC, PBA, PRIFA, PRIDCO, PRASA, CCDA, and/or UPR. As a

result, any failure to disallow these portions of the Partially Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth to the detriment of other stakeholders in the Title III Case.  The holders of the Partially Duplicate Bond Claims will not be prejudiced by the disallowance of this portion of their claims because the liabilities associated with this portion of their claims are subsumed within one or more Master Proofs of Claim.

26.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Two Hundred Twenty-Fifth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Duplicate Bond Claims*, dated July 31, 2020, attached hereto as **Exhibit B**.

## NOTICE

27.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth has provided notice of this Two Hundred Twenty-Fifth Omnibus Objection to (a) the individual creditors subject to this Two Hundred Twenty-Fifth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this Two Hundred Twenty-Fifth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Two Hundred Twenty-Fifth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

28.     No prior request for the relief sought in this Two Hundred Twenty-Fifth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: July 31, 2020
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial*
*Oversight and Management Board for*
*Puerto Rico, as representative of the*
*Commonwealth of Puerto Rico*

**Fecha de la vista: 16 de septiembre de 2020 a las 9:30 a.m. (AST)**
**Fecha límite para responder: 1 de septiembre de 2020 a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS
ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S)
RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: | PROMESA |
| | Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | |
| | Núm. 17 BK 3283-LTS |
| como representante del | |
| | (Administrado Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., | |
| | **La presente radicación guarda relación con el ELA.** |
| Deudores.[1] | |

---

**DUCENTÉSIMA VIGÉSIMA QUINTA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL
ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES
DUPLICADAS POR BONOS**

---

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor

Swain:

---

[1]     Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta ducentésima vigésima quinta objeción global (la "Ducentésima vigésima quinta objeción global") a evidencias de reclamaciones duplicadas que aparecen en el **Anexo A** del presente documento, cada una de las cuales está duplicada, en parte, con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos, y en apoyo de la Ducentésima vigésima quinta objeción global respetuosamente manifiesta lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.      Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA" o el "Caso de Título III").

---

[2]      PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Por la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

5.      Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamaciones principal contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a).

6.      La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de Puerto Rico") entró en vigor en 1952. La Constitución de Puerto Rico creó el ELA como el

Gobierno central de Puerto Rico, de "forma republicana". *Véase* Const. de Puerto Rico, artículo I,

§§ 1, 2. La Constitución de Puerto Rico autoriza al ELA a emitir deuda, con sujeción a

determinadas limitaciones, incluida la capacidad del ELA de empeñar sus rentas. *Véase* Const. de

Puerto Rico, artículo VI § 2. En 1961, la sección 2 del artículo VI de la Constitución de Puerto

Rico fue modificada para limitar la contracción de la deuda por parte del ELA sobre la base del

monto de la deuda que el ELA tuviera que haber pagado en relación con sus rentas históricas.

7.    En el marco del Caso de Título III del ELA, se radicaron Evidencias de

reclamaciones principales (las "Evidencias de reclamaciones principales") contra el ELA en

nombre de los tenedores de determinados bonos emitidos, entre otros, por la Autoridad de

Carreteras y Transportación de Puerto Rico (la "ACT"); el Sistema de Retiro de los Empleados del

Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"); la Autoridad de Edificios Públicos

de Puerto Rico (la "AEP"); la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la

"AAA"); la Autoridad del Distrito del Centro de Convenciones de Puerto Rico (la "ADCC"); la

Compañía de Fomento Industrial de Puerto Rico (la "PRIDCO"); la Autoridad para el

Financiamiento de la Infraestructura de Puerto Rico (la "AFI"); La Corporación para el

Financiamiento Público de Puerto Rico (la "CFP"); y la Universidad de Puerto Rico (la "UPR").

8.    *SRE*: el SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar

económico de los empleados públicos. El SRE es un organismo gubernamental, separado e

independiente del Gobierno del ELA y de otros de sus órganos. *Véase* 3 L.P.R.A § 775.

Presuntamente, conforme a la *Resolución sobre bonos para el financiamiento de pensiones*,

adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió unos bonos

preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del SRE"), por un

4

monto total del principal de aproximadamente $2900 millones.[3] BNYM actúa como agente fiscal con respecto a los Bonos del SRE. En nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamaciones principal en el marco del Caso de Título III del ELA (la "Evidencia de reclamaciones principal SRE-ELA"), alegando reclamaciones contra el SRE entre otras cosas sobre la base de la adopción de la Resolución conjunta 188 y la Ley 106, que juntas crearon un sistema de retiro "pay as you go" en virtud del cual los pensionados reciben pagos de los fondos generales del ELA, en lugar de las Contribuciones de los empleadores, que presuntamente constituye garantía de los Bonos. BNYM radicó inicialmente una evidencia de reclamaciones que fue registrada por Prime Clerk, LLC ("Prime Clerk"), el 24 de mayo de 2018, como Evidencia de reclamaciones núm. 16775, y posteriormente radicó una reclamación enmendada, el 25 de mayo de 2018, que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 32004.[4]

9.   ***ACT***: la ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm.

---

[3] El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE* [Causa núm. 17-3566, ECF núm. 381], sobre el motivo de que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al Código de Quiebras, artículo 502, y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [núm. ECF 6482], sobre el motivo, entre otros, de que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[4] El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de reclamaciones principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Ducentésima vigésima quinta objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, lo que incluye cualesquiera derechos a intervenir, que quedan reservados.

74-1965 de la Asamblea Legislativa del ELA ("Ley para crear la ACT"). La ACT se encarga de la
construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en
el ELA. *Véase* 9 L.P.R.A § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos.
*Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias
series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i*) Resolución
núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y *ii*) Resolución núm. 98-06,
adoptada el 26 de febrero de 1998 (la "Resolución 1998"). Desde el 21 de mayo de 2017, la fecha
de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos emitidos
conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones
del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente
pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT. En
nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones
principales en el marco del Caso de Título III del ELA (la "Reclamaciones principales ACT-ELA",
cada una de las cuales alegaba "una reclamación garantizada, contingente y no liquidada contra el
ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que
el Agente Fiscal o los Propietarios puedan tener contra el ELA, en virtud de la ley o equidad. . . .
" *Véase* Adenda de la Evidencia de reclamaciones núm. 121053, ¶ 15; Adenda de la Evidencia de
reclamaciones núm. 120982, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 115380, ¶ 15.[5]

    10.   **_AEP_**: la AEP presuntamente emitió bonos para financiar edificios de oficinas y
otras instalaciones arrendadas a varios departamentos, agencias públicas y organismos del ELA.
U.S. Bank National Association ("US Bank") y US Bank National Trust Association ("US Bank

---

[5]  Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime Clerk como
Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las
Evidencias de reclamaciones núms. 121053, 120982 y 115380.

Trust") actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamaciones núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia de reclamaciones principal en el marco del Caso de Título III del ELA por todos los montos pendientes de pago adeudados (la "Evidencia de reclamaciones principal de la AEP"), que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 62833. La Evidencia de reclamaciones principal de la AEP reivindica reclamaciones liquidadas por aproximadamente $4000 millones en concepto de capital principal presuntamente impagado, $160 millones en concepto de intereses presuntamente impagados y por reembolso de comisiones y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las Obligaciones de bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA. . . ." Cláusula de la Evidencia de reclamaciones principal de la AEP, ¶¶ 19-21.

11.     *AAA*: la AAA es propietaria y se encarga de los sistemas de suministro público de agua y de aguas residuales en Puerto Rico. La AAA emitió determinados bonos de renta (los "Bonos de la AAA"), conforme a la Resolución de la Autoridad de Acueductos y Alcantarillados de Puerto Rico núm. 1583, *por la que se garantizan los bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico avalados por el Estado Libre Asociado de Puerto Rico*, y algunas resoluciones complementarias. El Banco Popular de Puerto Rico ("Banco Popular") actúa como fideicomisario en relación con los Bonos de la AAA, y radicó una evidencia de reclamaciones principal contra el ELA en nombre de los tenedores de los Bonos de la AAA, que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 22620 (la "Reclamación principal de la

7

AAA"). La Reclamación principal de la AAA alega "una reclamación contingente contra el ELA en relación con los Bonos por un importe de al menos $284,755,000, además de todos los intereses y primas generados sobre los Bonos a partir de la Fecha de petición, así como la totalidad de las tasas, costos y gastos u otros cargos acumulados que hayan devengado o sean cobrables en relación de tales Bonos". Adenda de la Evidencia de reclamaciones de la AAA, ¶ 9.

12.    _**ADCC**_: el Bank of New York Mellon ("BNYM") actúa como fiduciario en relación con determinados Bonos de rentas de impuestos relativos a la ocupación de hoteles, emitidos por la ADCC (los "Bonos de la ADCC"), y en nombre de los tenedores de los Bonos de la ADCC radicó una evidencia de reclamaciones principal contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 37319 (la "Evidencia de reclamaciones principal de la ADCC"). La Reclamación principal de la ADCC reivindica una "reclamación contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Fiduciario o los Propietarios puedan tener contra el ELA en virtud de la ley o equidad". Adenda de la Evidencia de reclamaciones principal de la ADCC, ¶ 11.

13.    _**PRIDCO**_: PRIDCO fue creada por la Ley núm. 188 de 1942, codificada como 23 L.P.R.A. §§ 271 _et seq._, para fomentar el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales en arrendamiento o venta a empresas privadas fabricantes. US Bank actúa como fideicomisario en relación con determinados Bonos relativos a rentas de fines generales y rentas de refinanciamiento, series 1997 A series 2003 (los "Bonos de PRIDCO"), y en nombre de los tenedores de los Bonos de PRIDCO radicó una evidencia de reclamaciones principal contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 13445 (la "Reclamación principal de PRIDCO"). La Reclamación principal de PRIDCO alega reclamaciones contingentes y no liquidadas contra el ELA y procura la "recuperación de la

8

totalidad de los montos adeudados en razón de todas las reclamaciones que el Fiduciario tenga o

pueda tener en relación con las obligaciones pendientes por Bonos, conocidos o por conocer,

contra el ELA y aquellos que pretendan actuar en nombre del ELA, alegadas en la actualidad o por

alegar, lo que incluye, entre otras cosas, reclamaciones por o basadas en el incumplimiento o la

violación de los Documentos de los bonos, acuerdos de arrendamiento u otras obligaciones

contractuales relativas a la garantía subyacente, cualesquiera otros pactos u otras obligaciones

contractuales derivadas del presente documento, o reclamaciones surgidas por el desvío indebido

de las rentas de PRIDCO o de cualesquiera otros bienes que garanticen el pago de los Bonos en

virtud de los Documentos de los bonos, conforme a la normativa legal pertinente del ELA, estatal

o federal, lo que incluye, entre otras cosas, fideicomiso ficto, transmisión fraudulenta o

transferencia fraudulenta, incumplimiento de deberes y obligaciones contractuales y fiduciarias,

vulneración de pactos implícitos justos y de buena fe, u otras reclamaciones en ley o equidad".

Cláusula de la Reclamación principal de PRIDCO, ¶¶ 12-13.

14.    _**AFI**_: la AFI es una filial del Banco Gubernamental de Fomento (el "BGF") y

constituye una dependencia del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley

núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y

de otro tipo al ELA, a sus corporaciones públicas y a otras dependencias encargadas del desarrollo

y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés

emitidos por la AFI (conjuntamente, "Bonos de la AFI"), se radicaron evidencias de reclamaciones

principales contra el ELA (conjuntamente, las "Reclamaciones principales de la AFI") por parte

de BNYM, US Bank y UMB Bank, N.A. US Bank radicó una evidencia de reclamaciones principal

en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia

de reclamaciones núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a

impuestos sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006B), alegando "reclamaciones por montos contingentes y no liquidados en relación con los intereses pagaderos a futuro, intereses acumulados y que se acumulen en el futuro en lo referente al principal adeudado en el pasado y las reclamaciones por intereses, tarifas, costos e indemnización del Fiduciario en los que se incurra en el futuro en virtud de los Documentos de bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las Obligaciones de bonos pendientes, monto mínimo de $249,099,446.17. . . ." Cláusula de la Evidencia de reclamaciones núm. 13386, ¶ 26.

15.    *CFP*: la CFP es una corporación subsidiaria del BGF creada conforme a la Resolución núm. 5044 de la Junta Directiva del BGF, en su versión enmendada (la "Resolución núm. 5044"), adoptada de conformidad con la autoridad concedida en virtud de la Ley núm. 17 de la Asamblea Legislativa de Puerto Rico, aprobada el 23 de septiembre de 1948, en su versión enmendada. Proporciona a los organismos públicos, dependencias, municipios y a otras subdivisiones del ELA mecanismos alternativos para que puedan satisfacer sus necesidades de financiamiento. La CFP tiene la facultad de tomar en préstamo fondos y emitir deuda a través de bonos y otras obligaciones. U.S. Bank Trust actúa como fiduciario en relación con unos bonos, serie 2012A y series 2011A y B, emitidos por la CFP (los "Bonos de la CFP"). En nombre de los tenedores de los Bonos de la CFP, US Bank Trust radicó una evidencia de reclamaciones contra el ELA, que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 13374.

16.    *UPR*: la UPR es presuntamente "una corporación pública del ELA que integra un sistema orgánico de educación superior", conforme a la Ley núm. 1 de la Asamblea Legislativa de Puerto Rico, aprobada el 20 de enero de 1966 (18 L.P.R.A. §§ 601 a 614). Cláusula de la Evidencia de reclamaciones núm. 13382, ¶ 5. US Bank actúa como fideicomisario en relación con

determinados Bonos de renta de refinanciamiento del sistema universitario, series P y Q emitidos

por la UPR, y radicó una evidencia de reclamaciones principal, que fue registrada por Prime Clerk

como Evidencia de reclamaciones núm. 13382 (la "Reclamación principal de la UPR"). La

Reclamación principal de la UPR alega "reclamaciones contingentes y no liquidadas contra el ELA

por todos los derechos y titularidades que U.S. Bank como Fiduciario tenga o pueda tener, de la

naturaleza o tipo que fueran, en relación con el Acuerdo de Fideicomiso, o de conformidad con

otros documentos o leyes aplicables, lo que incluye incumplimiento de pactos o desviación

potencial de rentas empeñadas para el pago de los Bonos, en la actualidad o en el futuro". *Idem*. ¶

12.

### C. Evidencias de reclamaciones radicadas en el marco del Caso de Título III, a los Procedimientos relativos a objeciones globales y a las Objeciones a reclamaciones

17.    Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de

reclamaciones, y se han registrado por Prime Clerk, contra los Deudores. Dichas evidencias de

reclamaciones ascienden a un total de $43.6 billones en reclamaciones radicadas contra los

Deudores, además de los montos no liquidados reclamados.

18.    De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que

haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido

enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,

estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información

necesaria para que los Deudores determinen si la reclamación es válida.

19.    Para resolver eficazmente el mayor número posible de las evidencias de

reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su

*Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

20.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio

de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

21.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal celebró vistas vinculadas con 157 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT y/o el SRE, así como con 33 objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30 de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otras reclamaciones fueron reclasificadas como radicadas contra otros Deudores. Veintidós objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 11 de diciembre de 2019. Además, 27 objeciones globales a reclamaciones radicados contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020, y 30 objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas los días 4 y 5 de marzo de 2020. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

22.     La presente Ducentésima vigésima quinta objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

23.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

24.     La Ducentésima vigésima quinta objeción global pretende que se rechacen parcialmente, de conformidad con la regla 3007(d)(1) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que estén parcialmente duplicadas con respecto a otras evidencias de reclamaciones radicadas en el marco del Caso de Título III.

25.     Cada reclamación identificada en el **Anexo A** del presente (conjuntamente, las "Reclamaciones parcialmente duplicadas por bonos") pretende alegar, en parte, responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados con respecto a una o más Evidencias de reclamaciones principales que, como se indicó anteriormente, fueron radicadas en el marco del Caso de Título III del ELA por el agente fiscal y/o fiduciario en relación con determinados bonos emitidos por la ACT, el SRE, la CFP, la AEP, la AFI, PRIDCO, la AAA, la ADCC y/o la UPR. En consecuencia, si dichas partes de las Reclamaciones parcialmente duplicados por bonos no son rechazadas, ello resultaría en que las correspondientes demandantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III. Los tenedores de las Reclamaciones parcialmente duplicadas por bonos no se verán perjudicados por el hecho de que se rechace esta

14

parte de sus reclamaciones, puesto que las responsabilidades vinculadas con esta parte de sus reclamaciones figuran en una o más Evidencias de reclamaciones principales.

26.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Ducentésima vigésima quinta objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones duplicadas por bonos*, de fecha 31 de julio de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

27.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA ha notificado la presente Ducentésima vigésima quinta objeción global a) a los acreedores individuales objeto de esta Ducentésima vigésima quinta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Ducentésima vigésima quinta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima vigésima quinta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## AUSENCIA DE SOLICITUDES PREVIAS

28.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima vigésima quinta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio

solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se

consideren justos.

Fecha:  31 de julio de 2020
         San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la
Junta de Supervisión y Administración
Financiera para Puerto Rico, como
representante del
Estado Libre Asociado de Puerto Rico*

16