**Hearing Date:  September 16, 2020, at 9:30AM (Atlantic Standard Time)**
**Response Deadline:  September 1, 2020, at 4:00PM (Atlantic Standard Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

## TWO HUNDRED TWENTY-EIGHTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS ASSERTED BY HOLDERS OF CERTAIN PRASA BONDS AND HTA BRIDGE BONDS

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor"), by and

through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as the Commonwealth's representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred twenty-eighth omnibus objection (the "Two Hundred Twenty-Eighth Omnibus Objection") to claims asserting, in part, liabilities associated with certain bonds issued by the Puerto Rico Aqueducts and Sewers Authority ("PRASA") and by the Puerto Rico Highways and Transportation Authority ("HTA"), each as set forth on **Exhibit A** hereto, and in support of the Two Hundred Twenty-Eighth Omnibus Objection, respectfully represents as follows:

## JURISDICTION

1.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.     The Bar Date Orders**

3.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case," or the "Title III Case").[3]

4.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.      Bond Debt Issued by the Puerto Rico Aqueducts and Sewers Authority**

5.        PRASA was established pursuant to Act Number 40 on May 1, 1945.  PRASA is a government-owned corporation in Puerto Rico and was created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 144.

6.        The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").  In 2008, PRASA issued $1,316,204,456 principal amount of Series A revenue bonds (the "2008 Senior Series A Bonds").   Additionally, in 2012, PRASA concurrently issued $1,800,450,00 principal amount of Series 2012 A revenue bonds (the "2012 Senior Series A Bonds"), as well as $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012 Senior Series B Bonds," together with the 2012 Senior Series A Bonds and the 2008 Senior Series A Bonds, the "PRASA Senior Lien Bonds").

7.        Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed to holders of the PRASA Bonds in full as they become due and owing.

Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the PRASA Senior Lien Bonds.[4]  The Commonwealth has not guaranteed repayment of the Senior Lien Bonds.

8.      Moreover, certain bonds issued by PRASA have matured and been paid in full.  For example, bonds issued by PRASA bearing CUSIP number 745160RV5 matured and were paid on full on July 1, 2018 (the "PRASA Matured Bonds").[5]

**C.      Bond Debt Issued by the Puerto Rico Highways and Transportation Authority**

9.      HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  In accordance with the HTA Enabling Act, in 2003 HTA issued a series of Special Facility Revenue Refunding Bonds to facilitate the financing of the Teodoro Moscoso Bridge (the "HTA Bridge Bonds").

10.      Holders of HTA Bridge Bonds have received and continue to receive all payments owed to holders of the HTA Bridge Bonds in full as they become due and owing.  The Commonwealth has not guaranteed repayment of the HTA Bridge Bonds, and each of the offering statements issued in connection with the HTA Bridge Bonds states "the [HTA Bridge] Bonds are not a debt of the Commonwealth of Puerto Rico or any of its political subdivisions, other than the

---

[4]*See, e.g.*,
https://emma.msrb.org/Security/Details/A8732657A6C93CD1A69D07EC167ADD6EC;
https://emma.msrb.org/Security/Details/A083128E37E8B50C9A1A4233A4FBBC9D5.

[5] *See* https://emma.msrb.org/Security/Details/AAE7971318165D9CB0928DEA2AAEFBC91.

Authority, and neither the Commonwealth of Puerto Rico nor any of its subdivision, other than the Authority, is required to pay the Bonds."[6]

**D.      Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

11.      To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.      Of the proofs of claim filed, over 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

13.      In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English

---

[6] *See, e.g.*,
https://emma.msrb.org/Security/Details/A0BC2E92D13DB872F5E9451D490A58D23.

and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions*

*of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "<u>Notice Order</u>").

14.     In the continued interest of resolving any unnecessary proofs of claim in an efficient

manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other

things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the

number of claims that may be included on an objection, and to approve additional forms of notice.

*Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court

granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,*

*(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice,*

*and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus Objection</u>

<u>Procedures</u>").

15.     Pursuant to the Initial Omnibus Objection Procedures and the Amended Omnibus

Objection Procedures, the Court has held hearings related to one hundred fifty-seven omnibus

objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("<u>COFINA</u>"), HTA, and/or the Employees Retirement System of the Government of the

Commonwealth of Puerto Rico ("<u>ERS</u>"), as well as thirty-three individual objections.  After

hearings held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019,

September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections

and thirty-two individual objections, resulting in thousands of proofs of claim filed against the

Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of

other claims being reclassified to be asserted against another of the Debtors. Twenty non-substantive omnibus objections and two substantive omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard on December 11, 2019. Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020, and thirty omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and granted on March 4 and March 5, 2020. Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

16.     This Two Hundred Twenty-Eighth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

17.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Two Hundred Twenty-Eighth Omnibus Objection seeks to partially disallow, in accordance with the Amended Omnibus Objection Procedures, portions of claims that seek recovery for amounts for which the Commonwealth is not liable because (*i*) the claim seeks recovery, in part, for liabilities owed by PRASA, which is not a Title III Debtor, for amounts which neither the Commonwealth nor any other Title III Debtor have guaranteed repayment; and/or (*ii*) the claim is based, in part, on PRASA Matured Bonds, which have already matured and been paid in full.

19.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1).  Each of the claims identified in **Exhibit A** hereto (collectively, the "Claims to Be Partially Disallowed") seek recovery, in part, for liabilities associated with bonds issued by PRASA or HTA.

20.     In addition, certain of the Claims to Be Partially Disallowed assert, in part, liabilities associated with Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Commonwealth, and for which the Commonwealth has not guaranteed repayment. Each of the Claims to Be Disallowed fails to comply with the applicable rules, however, because it does not assert a basis for asserting a claim against the Commonwealth for bonds issued by PRASA that are not guaranteed by the Commonwealth.  Because of this failure to comply with the applicable rules, neither the Debtors nor the Court are able to determine the validity of the Claims to Be Disallowed.

21.     Furthermore, certain of the Claims to Be Partially Disallowed assert CUSIP numbers associated with a PRASA Matured Bond.  Because the PRASA Matured Bonds have already matured and been paid in full, the claimant's original investment in the PRASA Matured Bonds has already been returned in full to the claimant.  Accordingly, holders of PRASA Matured Bonds no longer have a valid claim against the Commonwealth or any other Title III debtor, and the Claims to Be Partially Disallowed should be disallowed with respect to those portions of the claims for which the Commonwealth is not liable.

22.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Twenty-Eighth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Asserted by Holders of Certain PRASA Bonds and HTA Bridge Bonds*, dated July 31, 2020, attached hereto as **Exhibit B**.

## NOTICE

23.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth is providing notice of this Two Hundred Twenty-Eighth Omnibus Objection to (a) the individual creditors subject to this Two Hundred Twenty-Eighth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Commonwealth's case website at https://cases.primeclerk.com/puertorico.  The notice for this Two Hundred Twenty-Eighth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Two Hundred Twenty-Eighth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.   The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

24.     This Two Hundred Twenty-Eighth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Commonwealth or the rights of any other party in interest in the Title III Case to object to the Claims to Be Partially Disallowed or any other claims on any ground whatsoever.  The Commonwealth expressly reserves all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as:  (a) an admission as to the validity of any claim against the Commonwealth; (b) a waiver of the rights of the Commonwealth or any other party in interest in the Title III Case to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the

Commonwealth or any other party in interest in the Title III Case under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

25.     No prior request for the relief sought in this Two Hundred Twenty-Eighth Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth further relief as is just.

Dated: July 31, 2020
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative for the
Commonwealth of Puerto Rico*

**Fecha de la vista: 16 de septiembre de 2020 a las 9:30 a.m. (AST)**
**Fecha límite para responder: 1 de septiembre de 2020 a las 4:00 p.m. (AST)**

| REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES). |
| --- |

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

| | |
| --- | --- |
| *In re*: | PROMESA |
| | Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | |
| | Núm. 17 BK 3283-LTS |
| como representante del | |
| | (Administrado Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., | **La presente radicación guarda relación con el ELA.** |
| Deudores.[1] | |

**DUCENTÉSIMA VIGÉSIMA OCTAVA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES RADICADAS POR LOS TENEDORES DE DETERMINADOS BONOS DE LA AAA Y LOS BONOS RELATIVOS AL PUENTE DE LA ACT**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica esta ducentésima vigésima octava objeción global (la "Ducentésima vigésima octava objeción global") a reclamaciones que alegan, en parte, responsabilidades vinculadas con determinados bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA") y por la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), según se mencionan en el **Anexo A** del presente documento, y en apoyo de la Ducentésima vigésima octava objeción global respetuosamente manifiesta lo siguiente:

## JURISDICCIÓN

1.       El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.       La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.       Órdenes de Fecha Límite**

3.       El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso

---

[2] PROMESA ha sido codificada en el título 48 U.S.C., §§ 2101 a 2241.

conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA" o el "Caso de Título III").[3]

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

5.      La AAA fue creada de conformidad con la Ley núm. 40 el 1 de mayo de 1945. La AAA es una corporación del Gobierno de Puerto Rico y fue creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 144.

6.      La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7 de marzo de 2008 (la "Resolución núm. 1583"). En 2008, la AAA emitió unos bonos de renta, Serie A, por un monto del principal de $1,316,204,456 (los "Bonos prioritarios serie A"). Además en 2012, la AAA emitió simultáneamente unos bonos de renta, Serie 2012 A, por un monto del principal de $1,800,450,00 (los "Bonos prioritarios serie A 2012") y unos bonos de renta, Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos prioritarios serie B 2012", y junto con los Bonos prioritarios serie A 2012 y los Bonos prioritarios serie A 2008, los "Bonos de Gravamen Prioritarios de la AAA").

7.    Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de la AAA, cuando tales bonos hayan sido pagaderos. En consecuencia, en el EMMA se indica que la AAA no ha enviado ninguna notificación de incumplimiento en relación con los Bonos de Gravamen Prioritarios de la AAA.[4]  El ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios.

8.    Además, determinados bonos emitidos por la AAA han vencido y han sido pagados en su totalidad. Por ejemplo, los bonos emitidos por la AAA con el número CUSIP 745160RV5 vencieron y fueron pagados en su totalidad el 1 de julio de 2018 (los "Bonos Vencidos de la AAA").[5]

---

[4] *Véase, por ejemplo*,
https://emma.msrb.org/Security/Details/A8732657A6C93CD1A69D07EC167ADD6EC;
https://emma.msrb.org/Security/Details/A083128E37E8B50C9A1A4233A4FBBC9D5.

[5] *Véase* https://emma.msrb.org/Security/Details/AAE7971318165D9CB0928DEA2AAEFBC91.

C.      **Deuda de los bonos emitidos por la Autoridad de Carreteras y Transportación de Puerto Rico**

9.      La ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley para crear la ACT"). La ACT se encarga de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A § 2002. De conformidad con la Ley habilitante de la ACT, la ACT emitió en 2003 una serie de Bonos relativos a rentas de instrumentos financieros especiales para facilitar el financiamiento del puente de Teodoro Moscoso (los "Bonos relativos al puente de la ACT").

10.     Los tenedores de los Bonos relativos al puente de la ACT han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos relativos al puente de la ACT, cuando tales bonos hayan sido pagaderos. El ELA no ha garantizado repago de los Bonos relativos al puente de la ACT, y cada una de las declaraciones de ofrecimiento emitidas en conexión con los Bonos relativos al puente de la ACT provee que "los Bonos [relativos al puente de la ACT] no son una deuda del ELA o alguna de sus subdivisiones políticas, que no sea la Autoridad, ni el ELA ni ninguna de sus subdivisiones, que no sea la Autoridad, están obligados a pagar los Bonos.[6]

D.      **Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y Objeciones a reclamaciones**

11.     Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas

---

[6] *Véase, por ejemplo*,
https://emma.msrb.org/Security/Details/A0BC2E92D13DB872F5E9451D490A58D23.

evidencias de reclamaciones ascienden a un total de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

12.     De las evidencias de reclamaciones radicadas, más de 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

13.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden a) que aprueba procedimientos limitados relativos a objeciones globales, b) declara la renuncia al requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron*

*las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "<u>Orden de Notificación</u>").

14.      En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "<u>Procedimientos Enmendados relativos a Objeciones Globales</u>").

15.      Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal celebró vistas vinculadas con 157 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("<u>COFINA</u>"), la ACT y/o el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "<u>SRE</u>"), así como con 33 objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30 de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo

cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otras reclamaciones fueron reclasificadas como radicadas contra otros Deudores. El 11 de diciembre de 2019, se atendió a 20 objeciones globales no sustantivas y a 2 objeciones globales sustantivas a reclamaciones radicadas contra el ELA, la ACT y el SRE. Además, 27 objeciones globales a reclamaciones radicados contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020, y 30 objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas los días 4 y 5 de marzo de 2020. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

16.     La presente Ducentésima vigésima octava objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

17.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas federales del procedimiento de quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

18.     La Ducentésima vigésima octava objeción global pretende que se desestimen parcialmente, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, partes de las reclamaciones que pretenden recuperar montos por los que el ELA no tiene responsabilidad porque *i*) la reclamación pretende la recuperación, en parte, por responsabilidades

adeudadas por la AAA, que no es un Deudor de Título III, de montos cuyo reembolso no lo ha

garantizado ni el ELA ni ningún otro Deudor de Título III; y/o *ii*) la reclamación se basa, en parte,

en los Bonos Vencidos de la AAA, que ya han vencido y han sido pagados en su totalidad.

19.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en

virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., §

502(b)(1). Cada una de las reclamaciones identificadas en el **Anexo A** del presente documento

(conjuntamente, las "Reclamaciones que han de ser rechazadas parcialmente") pretenden la

recuperación, en parte, por responsabilidades vinculadas con los bonos emitidos por la AAA o la

ACT.

20.     Además, determinadas Reclamaciones que han de ser rechazadas parcialmente

alegan, en parte, responsabilidades vinculadas con los Bonos de Gravamen Prioritarios emitidos

por la AAA, que no es un Deudor de Título III, y es una entidad separada y jurídicamente

independiente del ELA, y en relación con la cual el ELA no ha garantizado el reembolso. Sin

embargo, ninguna de las Reclamaciones que han de ser rechazadas cumple con las normas

aplicables, ya que no proporciona un fundamento para alegar una reclamación contra el ELA por

los bonos emitidos por la AAA que no están garantizados por el ELA. Como consecuencia de

dicho incumplimiento de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar

la validez de las Reclamaciones que han de ser rechazadas.

21.     Es más, en algunas de las Reclamaciones que han de ser rechazadas parcialmente

se alegan números CUSIP vinculados con un Bono Vencidos de la AAA. Puesto que los Bonos

Vencidos de la AAA ya han vencido y han sido pagados en su totalidad, la inversión original de

la demandante en los Bonos Vencidos de la AAA ya le ha sido devuelta plenamente. En

consecuencia, los tenedores de los Bonos Vencidos de la AAA ya no tienen una reclamación válida

contra el ELA o cualquier otro deudor de Título III, por lo que las Reclamaciones que han de ser rechazadas parcialmente deben rechazarse en relación con esas partes de las reclamaciones por las que el ELA no tiene responsabilidad.

22.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Ducentésima vigésima octava objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones radicadas por los tenedores de determinados Bonos de la AAA y Bonos relativos al puente de la ACT*, de fecha 31 de julio de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

23.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Ducentésima vigésima octava objeción global a) a los acreedores individuales objeto de esta Ducentésima vigésima octava objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos del ELA, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Ducentésima vigésima octava objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima vigésima octava objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

24.     La presente Ducentésima vigésima octava objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos del ELA, o de los derechos de cualesquiera otras partes interesadas en el Caso de Título III, a objetar

a las Reclamaciones que han de ser rechazados parcialmente o a cualesquiera otras reclamaciones que fuere. El ELA se reserva expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra el ELA; b) constituyan una renuncia a los derechos del ELA, o de cualesquiera otras partes interesadas en el Caso de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten al ELA, o a cualesquiera otras partes interesadas en el Caso de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## **AUSENCIA DE SOLICITUDES PREVIAS**

25.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima vigésima octava objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

11

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en

la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el

remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios

que se consideren justos.

Fecha: 31 de julio de 2020
San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la*
*Junta de Supervisión y Administración*
*Financiera para Puerto Rico, como*
*representante del*
*Estado Libre Asociado de Puerto Rico*