**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) |
| | ) Case No. 17-bk-3283 (LTS) |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | ) |
| | ) |
| Debtors.[1] | ) |
| | X |
| In re: | ) |
| | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | ) Case No. 17-bk-3567 (LTS) |
| as representative of | ) |
| | ) **Re:  ECF No. 871** |
| PUERTO RICO HIGHWAYS AND | ) |
| TRANSPORTATION AUTHORITY, | ) Case No. 17-bk-3283 (LTS) |
| | ) |
| - and - | ) **Re:  ECF No. 13708** |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) *This Pleading Relates to HTA and* |
| MANAGEMENT BOARD FOR PUERTO RICO | ) *the Commonwealth Only, and* |
| | ) *Should Be Filed in Both Dockets.* |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| | X |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

_____

)

AMBAC ASSURANCE CORPORATION, ASSURED   )
GUARANTY CORP., ASSURED GUARANTY   )
MUNICIPAL CORP., FINANCIAL GUARANTY   )
INSURANCE COMPANY, AND NATIONAL PUBLIC   )
FINANCE GUARANTEE CORPORATION.,   )

)

)

Movants,   )

)

v.   )

)

THE FINANCIAL OVERSIGHT AND   )
MANAGEMENT BOARD FOR PUERTO RICO,   )

)

as representative of   )

)

PUERTO RICO HIGHWAYS AND   )
TRANSPORTATION AUTHORITY,   )

)

- and -   )

)

THE FINANCIAL OVERSIGHT AND   )
MANAGEMENT BOARD FOR PUERTO RICO   )

)

as representative of   )

)

THE COMMONWEALTH OF PUERTO RICO,   )

)

Respondents.   )

_____   X

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................... 1

RELEVANT BACKGROUND .................................................................. 3

    A.    Movants' Litigation Concerning Excise Tax Revenues ......................... 3

    B.    Procedural History ........................................................... 8

LEGAL STANDARD .......................................................................... 11

ARGUMENT ............................................................................... 13

I.    Movants' Proposed Avoidance Claims Are Not Colorable. ........................... 13

    A.    The Lift Stay Order Acknowledges, and Movants Concede, HTA Has
        No Property Interest in Excise Tax Revenues Not Transferred
        to HTA. ................................................................... 13

    B.    The Lift Stay Order Demonstrates the Commonwealth's Strong
        Defenses to the Proposed Avoidance Actions. .............................. 16

II.    The Oversight Board Does Not Suffer Any "Conflict of Interest" by
   Fulfilling its Statutory Mandate. ................................................ 18

III.    Appointment of Movants as § 926 Trustees is Unnecessary and Would Be
   Improper Under PROMESA. ..................................................... 22

    A.    Movants Are Already Seeking the Relief They Would Seek as Trustee
        in Other Proceedings. ..................................................... 23

    B.    PROMESA Does Not Champion § 926 Trustees to Sue Affiliated
        Governmental Parties. ..................................................... 25

        1.    PROMESA Recognizes the Oversight Board's Role in
            Providing a Holistic Approach to Restructuring All Debtors'
            Obligations. ......................................................... 25

        2.    The First Circuit's Decision in *Andalusian* Compels Denying
            the Motion. .......................................................... 27

        3.    Denying the Motion Would Not Result in Substantive
            Consolidation. ....................................................... 30

C.      Movants' Comparison to the Commonwealth/COFINA Dispute
Procedures Is Inapposite. ...................................................................................... 32

CONCLUSION................................................................................................................... 33

CERTIFICATE OF SERVICE ............................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R.*
    *(In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
    954 F.3d 1 (1st Cir. 2020) ............................................................................ passim

*Commodity Futures Trading Commission v. Weintraub*,
    471 U.S. 343 (1985) ............................................................................................ 19

*Fin. Oversight & Mgmt. Bd. for P.R. v. Andalusian Glob. Designated Activity Co.*
    *(In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
    948 F.3d 457 (1st Cir. 2020) ............................................................ 15, 17, 30, 31

*Haig v. Agee*,
    453 U.S. 280 (1981) ............................................................................................ 11

*In re Augie/Restivo Baking Co.*,
    860 F.2d 515 (2d Cir. 1988) ............................................................................... 31

*In re Fin. Mgmt. & Oversight Bd. for P.R.*,
    432 F. Supp. 3d 25 (D.P.R. 2020), *aff'd sub nom Andalusian Glob.*
    *Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin.*
    *Oversight & Mgmt. Bd. for P.R.)*, 954 F.3d 1 (1st Cir. 2020) ........................ passim

*In re New York City Off-Track Betting Corp.*,
    No. 09–17121(MG), 2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) ............ 12, 20, 21, 27

*In re Richmond Unified School Dist.*,
    133 B.R. 221 (Bankr. N.D. Cal. 1991) ......................................................... 13, 27

*In re Sarner*,
    No. 10-17487-JNF, 2010 WL 3282589 (Bankr. D. Mass. Aug. 19, 2010) ............................ 31

*In re WHET, Inc.*,
    750 F.2d 149 (1st Cir. 1984) ............................................................................... 20

*In re WM Distribution, Inc.*,
    571 B.R. 866 (Bankr. D.N.M. 2017) ................................................................. 20

*K'Mart Corp. v. Oriental Plaza, Inc.*,
    875 F.2d 907 (1st Cir. 1989) ............................................................................... 21

*Rossello v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt.*
    *Bd. for P.R.)*,
    330 F. Supp. 3d 685 (D.P.R. 2018), *aff'd sum nom Vazquez-Garced v. Fin.*
    *Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
    945 F.3d 3 (1st Cir. 2019) ........................................................................17

*United States v. Aponte-Guzman*,
    696 F.3d 157 (1st Cir. 2012) ....................................................................11

*Woods v. City National Bank & Trust Company*,
    312 U.S. 262 (1941) ..................................................................................20

**STATUTES**

11 U.S.C. § 323 ................................................................................................20

11 U.S.C. § 544 ................................................................................................17

11 U.S.C. § 544(b) ............................................................................................9

11 U.S.C. § 548 ................................................................................................9

11 U.S.C. § 549 ........................................................................................9, 14, 17

11 U.S.C. § 904 ................................................................................................21

11 U.S.C. § 926 ........................................................................................ passim

48 U.S.C. § 2121(a) ....................................................................................19, 28

48 U.S.C. § 2161(a) ..........................................................................................20

48 U.S.C. § 2163 ..............................................................................................17

48 U.S.C. § 2165 ....................................................................................17, 25, 28

48 U.S.C. § 2172 ..............................................................................................25

48 U.S.C. § 2175(a) ..........................................................................................20

48 U.S.C. § 2175(b) ....................................................................................19, 25

PROMESA § 101 ..............................................................................................28

PROMESA § 104(b) ........................................................................................32

PROMESA § 202 ..............................................................................................17

PROMESA § 303 ......................................................................................17, 29

iv

PROMESA § 305 .................................................................................................................17, 28

PROMESA § 315(b) ...........................................................................................................19, 25

**OTHER AUTHORITIES**

S. Rep. No. 95-989 (1978), 1978 U.S.C.C.A.N. 5787 .............................................................26

COLLIER ON BANKRUPTCY ¶ 926.02 (16th ed. 2020) ......................................................12, 20, 21

**OPPOSITION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO TO MOTION FOR APPOINTMENT AS
<u>TRUSTEES UNDER 11 U.S.C. § 926</u>**

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") and the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>," and together with the Commonwealth, the "<u>Debtors</u>"), by and through the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as the Debtors' sole Title III representative pursuant to § 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("<u>PROMESA</u>"),[2] respectfully submit this opposition (the "<u>Opposition</u>") to the *Urgent Motion for Bridge Order, and Motion for Appointment as Trustees under 11 U.S.C. § 926* [Case No. 17-bk-3283, ECF No. 13708; Case No. 17-bk-3567, ECF No. 871] (the "<u>Motion</u>" or "<u>Mot.</u>"), filed by Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, the "<u>Movants</u>").[3]

## <u>PRELIMINARY STATEMENT</u>[4]

1.      In respect of Movants' request for stay relief against the Commonwealth to allow them to seize certain revenues (the "<u>Excise Tax Revenues</u>"), this Court conducted a preliminary hearing to determine whether Movants had a security interest or other property interest in the revenues.   This Court determined Movants had no interest in such revenues because the Commonwealth had chosen not to transfer or to make them available to HTA, and Movants only

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[3] This Court denied Movants' *Urgent Motion for Bridge Order* on July 24, 2020 following separate briefing. Case No. 17-bk-3283, ECF No. 13825; Case No. 17-bk-3567, ECF No. 889.  This opposition only addresses the *Motion for Appointment as Trustees under 11 U.S.C. § 926*.

[4] All capitalized terms not defined herein have the meanings ascribed to them *infra* in the Relevant Background section.

have a security interest in revenues that HTA receives and deposits into a certain account.  Here, Movants want a trustee (themselves) appointed to sue the Commonwealth to avoid HTA's transfer of the Excise Tax Revenues to the Commonwealth.  But, this Court already determined the Commonwealth never transferred or made them available to HTA.  Therefore, HTA had nothing to transfer to the Commonwealth and there are no transfers to avoid.

2.      Indeed, in their urgent motion dated July 17, 2020, Movants conceded the avoidance actions can only exist if this Court's ruling is reversed, and they requested control of such putative avoidance actions while they pursue appellate remedies up through the Supreme Court.  Put differently, Movants want control of the actions to put a cloud over any plan of adjustment for as long as they hold out or until the Supreme Court rules.

3.      Nevertheless, Movants assert HTA has colorable avoidance actions even though the monies Movants seek to recover never belonged to HTA.  Movants also claim—in a near-repeat of a failed § 926 motion in the ERS Title III case—the Oversight Board unreasonably refused to pursue Movants' purported avoidance actions because it suffers from a conflict of interest in performing its Congressionally-mandated role as the sole representative of each Title III debtor.  The Motion fails at its inception and should be denied for at least three reasons.

4.      *First*, as explained above, there are no avoidance actions to bring because HTA had nothing to transfer.

5.      *Second*, the Oversight Board does not and cannot suffer from a "conflict of interest" by fulfilling its role as the sole representative of each Title III debtor under PROMESA.  Movants do not even attempt to address this Court's and the First Circuit's reasoning rejecting the same "conflict" arguments certain ERS Bondholders made in the ERS Title III case.  Instead, Movants assert the Oversight Board owes *Movants* fiduciary duties by analogizing the Oversight Board to

a debtor-in-possession's board of directors, ignoring this Court's and the First Circuit's recognition and affirmance of the Oversight Board's unique statutory role and the obvious differences between a corporate restructuring and a municipal restructuring.  HTA and the Commonwealth are not two corporate entities entitled to attack one another.  They are both integral components of the territory of Puerto Rico that must function for the benefit of its people.  The First Circuit's decision in *Andalusian* affirming this Court's denial of a § 926 motion by certain ERS Bondholders compels denying the Motion, and doing so will not result in any "substantive consolidation" of the Title III cases.

6.      *Third*, appointing Movants as § 926 trustees would conflict with PROMESA's purpose and goals.  Movants have pursued, and continue to pursue, access or entitlement to Excise Tax Revenues through multiple ongoing litigations separate from this Motion.  Denial of the Motion will not prejudice them whatsoever.  Indeed, Movants claim those very revenues in their respective proofs of claim.

7.      The Court should deny the Motion in its entirety.

## RELEVANT BACKGROUND

### A.      Movants' Litigation Concerning Excise Tax Revenues

8.      As noted in the *Opposition of Financial Oversight and Management Board for Puerto Rico to Urgent Motion to Bridge Order* [Case No. 17-bk-3283, ECF No. 13765 (the "Bridge Order Opposition")], the issues Movants propose to litigate if they are appointed § 926 trustees for HTA are the subject of Movants' own proofs of claim, past and present adversary proceedings, and contested matters before the Title III Court.

9.      *First*, Movants' proofs of claim against the Commonwealth and HTA squarely put forward their contention that certain revenues, including the Excise Tax Revenues, are property of HTA.  Claim No. 107643, filed by Ambac Assurance Corporation (the "Ambac Proof of Claim")

¶¶ 7–8 (describing purported statutory liens and security interests securing HTA's bonds to the benefit of HTA and its bondholders); Claim No. 29581, filed by Assured Guaranty Corp., at 9 ("Upon collection, the Secretary of Treasury is required by statute to hold the [Excise Tax Revenues] in a segregated account for the benefit of [HTA] and [HTA's bondholders]."); Claim No. 31427, filed by Assured Municipal Guaranty Corp. (collectively with Assured Guaranty Corp., "Assured"), at 9 (same); Claim No. 109975, filed by Financial Guaranty Insurance Co., ¶ 8; Claim No. 23459, filed by National Public Finance Corp. ("National"), ¶ 6 ("The Secretary of Treasury of the Commonwealth is statutorily required to transfer the [Excise Tax Revenues] to [HTA] each month for the benefit of [HTA] bondholders, and by statute the [Excise Tax Revenues] constitute trust funds that are property of [HTA]."). Moreover, the proof of claim filed by Ambac specifically asserts a fraudulent conveyance claim in relation to these revenues. Ambac Proof of Claim ¶ 30(d). These proofs of claim, having been duly filed, will be litigated in due course.

10. *Second*, on August 23, 2019, Assured and National filed a motion for adequate protection or, in the alternative, relief from the automatic stay. *See* ECF No. 8536. In this motion, Assured and National asserted the Excise Tax Revenues are "the exclusive property of HTA and its bondholders and the statutes creating the excise taxes restrict their use to payment of HTA's bonds." *Id.* ¶ 1. Pursuant to the scheduling orders issued by the Court relating to various revenue bond proceedings, ECF No. 9620 at 4–5, the Court set a timeline for this motion to be amended. On January 16, 2020, all of the Movants filed an amended motion for relief from the automatic stay. *See* ECF No. 10102 (the "HTA Lift Stay Motion"). Movants once again asserted "there is no question that the Excise Tax[] [Revenues] constitute property of the HTA, not the Commonwealth." *Id.* ¶ 52.

11.     Following briefing on the HTA Lift Stay Motion, on June 4, 2020, the Court held a preliminary hearing on the issues of whether Movants had standing and security or other property interests in the relevant revenues.  On July 2, 2020, the Court issued an order squarely holding Movants had not established a colorable claim to ownership of the Excise Tax Revenues because they had not shown HTA has a property interest in the Excise Tax Revenues before they are transferred from the Commonwealth to HTA.  Case No. 17-bk-3283, ECF No. 13541 (the "Lift Stay Order"), at 23 ("The HTA Movants are not able to enforce their alleged statutory lien *in rem* against property in the hands of the Commonwealth, because that property has not been made available by the Commonwealth to HTA."); *id.* at 24 ("The Excise Tax[] [Revenues] are not able to be used or obtained by HTA nor are they at HTA's disposal; they are within the possession and control of the Commonwealth."); *id.* at 26 (the statutes establishing the Excise Tax Revenues "do not go so far as to purport to grant property rights in the [Excise Tax] Revenues before they are transferred" from the Commonwealth to HTA); *id.* at 27 (Movants "have not demonstrated a legal basis for their assertion that Fund 278 monies are actually owned by HTA.").  As Movants note in connection with this Motion, they "disagree" with the Court's ruling on the HTA Lift Stay Motion "and are hopeful it will be reversed on appeal."  Mot. ¶ 3.

12.     *Third*, on January 16, 2020, pursuant to the schedule set in the Final CMO, the Oversight Board filed two adversary proceedings against Movants and other creditors of the Commonwealth and HTA objecting to their claims against those Debtors and seeking related relief. *See* Adv. Proc. No. 20-005-LTS [ECF No. 1] (objecting to proofs of claim filed against the Commonwealth) (the "Commonwealth Complaint"); Adv. Proc. No. 20-007-LTS [ECF No. 1] (objecting to proofs of claim filed against HTA) (the "HTA Complaint").  These complaints rely

on allegations that go to the heart of Movants' proposed claims here—namely, the claimed ownership by Movants of the Excise Tax Revenues and other HTA revenues.

13.     More specifically, the HTA Complaint seeks the following relief:  (*i*) disallowance of Movants' claims asserting their HTA bonds are secured by a statutory lien;[5] (*ii*) disallowance of Movants' claims asserting their bonds are secured by an equitable lien;[6] (*iii*) disallowance of Movants' claims asserting they hold an ownership interest in the Excise Tax Revenues and other HTA revenues;[7] (*iv*) disallowance of Movants' claims asserting security interests in any HTA revenues—including the Excise Tax Revenues—other than revenues received by HTA and deposited in the 1968 Sinking Fund and the 1998 Resolution Funds (as defined therein) held by HTA's fiscal agent, and avoiding and preserving for the benefit of HTA any such security interests;[8] (*v*) disallowance of Movants' claims asserting their bonds are secured by special revenues;[9] and (*vi*) disallowance of Movants' claims asserting security interest against HTA revenues—including the Excise Tax Revenues—received postpetition.[10] All of these counts in the HTA Complaint address the question that underlies Movants' entire Proposed Complaint here—namely, what party owns the Excise Tax Revenues.

---

[5] Counts II, XXXIV, LXVI, XCVIII, CXXIV, CL, CLXXXII, CCVII.

[6] Counts III, XXXV, LXVII, XCIX, CXXV, CLI, CLXXXIII, CCVIII, CCXXXII, CCLVI, CCLXXX.

[7] Counts IV, XXXVI, LXVIII, C, CXXVI, CLII, CLXXXIV, CCIX, CCXXXIII, CCLVII, CCLXXXI.

[8] Counts V, VI, VII, VIII, XI, XII, XXXVII, XXXVIII, XXXIX, XL, XLIII, XLIV, LXIX, LXX, LXXI, LXXII, LXXV, LXXVI, CI, CII, CIV, CXXVII, CXXVIII, CXXX, CLIII, CLIV, CLV, CLVI, CLIX, CLX, CLXXXV, CLXXXVI, CLXXXVIII, CCX, CCXI, CCXIII, CXXVIII CCXXXIV, CCXXXV, CCXXXVII, CCLVIII, CCLIX, CCLXI, CCLXXXII, CCLXXXIII, CCLXXXV, and CCLXXXVI.

[9] Counts XVI, XLVIII, LXXX, CVII, CXXXIII, CLXIV, CXCI, CCXVI, CCXL, CCLXIV, CCLXXXVIII.

[10] Counts XV, XLVII, LXXIX, CVI, CXXXII, CLXIII, CXC, CCXV, CCXXXIX, CCLXIII, CCLXXXVII.

14.     Similarly, the Commonwealth Complaint seeks the disallowance of Movants'
claims to the extent predicated on supposed unlawful retention by the Commonwealth of certain
HTA revenues—including the Excise Tax Revenues—because, for among other reasons:  (*i*) such
retention was authorized by the Commonwealth Constitution;[11] (*ii*) the Commonwealth statutes
creating an obligation of the Commonwealth to appropriate and transfer certain HTA revenues to
HTA were preempted by PROMESA and were never enforceable because one legislature cannot
bind a subsequent legislature;[12] (*iii*) the Commonwealth was not bound by any contractual
obligations to transfer such revenues to HTA;[13] and (*iv*) the Commonwealth's retention of such
revenues was lawful under pre-PROMESA laws and PROMESA.[14]   The Commonwealth
Complaint also seeks a judgment disallowing Movants' claims because Movants do not hold a
valid secured claim against the Commonwealth because they were not granted any security
interest, nor do they hold any statutory liens against any property in which the Commonwealth has
an interest.[15]

15.     The Commonwealth Complaint specifically addresses the Ambac Proof of Claim's
assertion of a fraudulent conveyance claim against the Commonwealth:

> 224.    [The Ambac Proof of Claim's] claim[] of . . . fraudulent
> conveyance . . . fail[s] because (*i*) [it is] not alleged with specificity,
> (*ii*) the Commonwealth did not make any material misstatements of
> fact, (*iii*) the Commonwealth did not engage in any fraudulent
> conduct, and (*iv*) the required elements of such fraud-based claims
> are not alleged. Statements made in [HTA's bond offering and

---

[11] Counts IV, VIII, XXVII, XXXI, L, LIV, LXXIII, LXXVII, XCVI, C, CXVII, CXXII, CXL, CXLIV, CLXI, CLXV, CLXXXII, CLXXXVI.

[12] Counts V, XXVIII, LI, LXXIV, XCVII, CXIX, CXLI, CLXII, CLXXXII.

[13] Counts VI, XXIX, LII, LXXV, XCVIII, CXX, CXLII, CLXIII, CLXXXIV.

[14] Counts VII, XXX, LIII, LXXVI, XCIX, CXXI, CXLIII, CLXIV, CLXXXV.

[15] Counts XVII, XL, LXIII, LXXXVI, CIX, CXXXI, CLIII, CLXXIV, CXCV.

supporting documents] were truthful when made. [The Ambac Proof of Claim] also fails to allege any facts regarding the required elements of fraudulent conveyance, including, without limitation, (*i*) the date, amount, transferor and transferee of any purported fraudulent conveyance, (*ii*) whether the transferor was solvent, (*iii*) whether the transferor received reasonably equivalent value, (*iv*) whether the transferor acted with actual intent to hinder, delay or defraud creditors, and (*v*) whether the transferor acted in good faith.

225.   [The Ambac Proof of Claim's] claim[] of . . . fraudulent conveyance . . . fail[s] because the [statutes creating an obligation of the Commonwealth to appropriate and transfer certain HTA revenues to HTA] are legislative pronouncements and do not constitute statements of fact for purposes of a fraud claim or a misrepresentation claim.

*See* Commonwealth Complaint Count VII.

16.   On March 10, 2020, the Court entered the *Final Case Management Order for Revenue Bonds* [Case No. 17-bk-3283, ECF No. 12186; Case No. 17-bk-3567, ECF No. 729] ("Final CMO"), which provided, among other things, a schedule for the parties to submit limited summary judgment motions on various counts in the Commonwealth Complaint. Several of these counts directly relate to whether HTA or the Commonwealth owns the Excise Tax Revenues, and in particular, whether the Commonwealth statutes creating a supposed obligation of the Commonwealth to appropriate and transfer certain revenues to HTA were preempted by PROMESA, and whether Movants hold a secured claim against the Commonwealth. *See* Final CMO at 6–7. As Movants well know, briefing on these summary judgment motions is currently underway, with a hearing on these motions scheduled for September 23, 2020. *See* ECF No. 13568 at 3.

## B.   Procedural History

17.   On January 7, 2020, this Court denied a motion to appoint § 926 trustees filed by certain ERS Bondholders in the ERS Title III case. *In re Fin. Mgmt. & Oversight Bd. for P.R.*,

432 F. Supp. 3d 25 (D.P.R. 2020), *aff'd sub nom Andalusian Glob. Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 954 F.3d 1 (1st Cir. 2020).

18.    On January 15, 2020, Movants asked the Oversight Board to pursue certain avoidance actions on behalf of HTA against the Commonwealth concerning the Excise Tax Revenues pursuant to sections 544(b), 548, and 549 of the Bankruptcy Code, on the grounds the Commonwealth was required by statute to collect those revenues and transfer them to HTA.  Case No. 17-bk-3283, ECF No. 13711-1.  Movants also contended the Oversight Board suffered from a conflict of interest through its simultaneous representation of the Commonwealth and HTA.  *Id.* at 3.  Movants requested the Oversight Board's response no later than January 29, 2020.  *Id.*

19.    On January 29, 2020, the Oversight Board declined in writing to pursue Movants' requested avoidance actions on the grounds they lacked merit, and, in particular, because the Excise Tax Revenues at issue were not HTA property.  Case No. 17-bk-3283, ECF No. 13711-2.  The Oversight Board also stated the statutes conditionally requiring the Commonwealth to transfer Excise Tax Revenues to HTA were preempted by PROMESA, and the Oversight Board, particularly in view of this Court's January 7, 2020 ruling on the ERS Bondholders' § 926 motion, did not suffer any conflict of interest.  *Id.* at 3.

20.    On March 10, 2020, the Court entered the Final CMO and set the deadline—that is, the *last* day—to file any motions seeking relief concerning "alleged continuing conflicts of interest of the Oversight Board and the Government of Puerto Rico acting for both the Commonwealth and HTA" (the "Conflict Motions") as "the later of (i) 15 days after the Court's ruling in connection with the preliminary hearing on the HTA Lift Stay Motion, and (ii) 15 days after issuance of the First Circuit's decision resolving the appeal of the Court's *Memorandum*

*Opinion and Order Denying Renewed Motion of Certain Secured Creditors of the Employees*
*Retirement System of the Government of the Commonwealth of Puerto Rico for Appointment as*
*Trustees Under 11 U.S.C. § 926* (Docket Entry No. 9712 in Case No 17-3283)." *Id.* at 7.[16]

21.     On March 19, 2020, the First Circuit affirmed this Court's decision denying the
ERS Bondholders' motion to appoint a trustee under 11 U.S.C. § 926. *Andalusian Glob.*
*Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd.*
*for P.R.)*, 954 F.3d 1, 5 (1st Cir. 2020) (hereinafter, *Andalusian*).

22.     On July 2, 2020, this Court denied Movants' Lift Stay Motion insofar as Movants
sought stay relief or adequate protection for revenues other than monies in the Resolution Funds.
Case No. 17-bk-3567, ECF No. 853 (the "Lift Stay Order").  Among other things, the Court found
neither Movants nor HTA has a colorable claim to the Excise Tax Revenues not transferred to
HTA.  *Id.* at 7.  The Court also found that no statutory lien existed and no security interest existed
on non-deposited Excise Tax Revenues because such revenues "are within the possession and
control of the Commonwealth."  *Id.* at 24, 33.  Further, the Court found the Excise Tax Statutes
provided only a commitment to transfer certain revenues "but do not go so far as to purport to
grant property rights in the Revenues before they are transferred," *id.* at 26, and that "[n]either the
Bond Resolutions nor the Excise Tax Statutes promise the Bondholders that the Commonwealth
will pay them[.]"  *Id.*  The Excise Tax Statutes also "expressly provide[] that the Commonwealth
is not liable for HTA's Bond obligations."  *Id.*

---

[16] The Court later extended the deadline to file Conflict Motions that address plan voting issues, the
provisions of or the authority of any proponent of a plan of adjustment, and the resolution of HTA's
allocable revenue until further order of the Court.  Case No. 17-bk-3567, ECF No. 885, at 3.  However, that
Order "does not address any issues of time limits or potential waiver associated with non-assertion of
conflict issues" in "litigation other than litigation associated with a plan of adjustment and the process
required for confirmation of a plan."  *Id.* at 3 n.5.

23.     On July 17, 2020, Movants filed the Motion.  The proposed complaint attached to

the Motion (Mot. Ex. C) (hereinafter, "Proposed Complaint") identifies four proposed avoidance

claims, though Movants expressly seek to pursue additional, unidentified avoidance actions they

claim to be "similar or related" to their proposed claims.  *See* Mot. ¶ 8 n.5 ("Movants further

reserve their rights to bring claims related to those set forth in the Proposed Complaint"); ¶ 35

(identifying "at least four" causes of action); ¶ 76 (requesting order to bring proposed claims "and

any similar or related claims"); Mot. Ex. B ¶ 2 (proposed order to bring "any similar or related

claims").

24.     Also on July 17, 2020, the Court ordered briefing solely with respect to Movants'

*Urgent Motion for Bridge Order*.  Case No. 17-bk-3283, ECF No. 13724; Case No. 17-bk-3567,

ECF No. 875.

25.     On July 24, 2020, this Court denied Movants' *Urgent Motion for Bridge Order*

seeking preliminary appointment of Movants as § 926 trustees following separate briefing on that

issue.  Case No. 17-bk-3283, ECF No. 13825; Case No. 17-bk-3567, ECF No. 889.

## LEGAL STANDARD

26.     Section 926 gives courts broad discretion to decide whether to appoint a trustee to

pursue an avoidance action.  11 U.S.C. § 926(a) ("the court *may* appoint a trustee to pursue such

cause of action.") (emphasis added); *Haig v. Agee*, 453 U.S. 280, 294 n.26 (1981) ("'may'

expressly recognizes substantial discretion."); *United States v. Aponte-Guzman*, 696 F.3d 157, 160

(1st Cir. 2012) ("By using the precatory term 'may,' rather than the directory term 'shall,' Congress

indicated its intent to make [sentencing reductions] discretionary, not a matter of right.").

Likewise, the Court has broad discretion to determine which factors to consider when deciding

whether to appoint a trustee under § 926.  *Andalusian*, 954 F.3d at 7 ("Nothing in the text of § 926

11

limits or even discusses the factors a court may take into consideration" to decide whether to appoint a § 926 trustee).

27.     As a threshold matter, courts should be very reluctant to appoint § 926 trustees. *Andalusian*, 954 F.3d at 7 ("'courts should be very hesitant to appoint a trustee.'") (quoting COLLIER ON BANKRUPTCY ¶ 926.02 (16th ed. 2020) (hereinafter, COLLIER)); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 29 ("In the context of a municipal bankruptcy case, at least one court has cautioned that '[c]ourts should be loath to appoint a trustee [under Section 926] given that the court's limited powers in a chapter 9 case are best understood as operating within the context of constitutional and federalism concerns.') (quoting *In re New York City Off-Track Betting Corp.*, No. 09–17121(MG), 2011 WL 309594, at *4 (Bankr. S.D.N.Y. Jan. 25, 2011)). The "obvious differences" between governmental bankruptcy proceedings and commercial private party bankruptcies require "a 'more holistic approach'" than meeting commercial-bankruptcy standards for appointment of a trustee. *See Andalusian*, 954 F.3d at 7; *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 29.

28.     Particularly in view of the Oversight Board's "sole authority to propose a plan of adjustment," "[c]aution" in appointing a trustee is particularly warranted lest creditors use a motion to appoint a trustee "as a bargaining lever in negotiations over the plan . . . [and] the process should not be taken out of the debtor's hands by the appointment of a trustee to upset the delicate balance among competing interests that must be preserved for successful plan negotiation, formulation, and solicitation.'" *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 29 (quoting COLLIER ¶ 926.02). PROMESA provides for "significant deference to the prerogatives of the governmental debtors and of their statutory representative." *Id.* at 29–30.

29.    While not found anywhere in the text of PROMESA or Bankruptcy Code § 926, some courts have imported the standard for obtaining derivative standing when examining creditor requests for a § 926 trustee.  "Generally, to obtain derivative standing to sue on a private debtor's behalf, courts require a movant to establish that: (i) there are colorable claims for relief that on appropriate proof would support a recovery, and (ii) the debtor unjustifiably failed to bring suit."  *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 29; *see also Andalusian*, 954 F.3d at 7.  In particular, finding that a debtor "unjustifiably" failed to bring suit is a very high bar.  Given PROMESA's genesis in Chapter 9, which "was drafted to assure that application of the federal bankruptcy power would not infringe upon the sovereignty, powers and rights of the states, including, presumably, states alleged to have a conflict of interest," *id.* at 30 (citing *In re Richmond Unified School Dist.*, 133 B.R. 221, 224–26 (Bankr. N.D. Cal. 1991)), even the existence of a conflict of interest (which there is not) would not deprive governmental debtors of governmental powers, including declining to bring suit which may interfere with the government debtor's ability to dispose of its assets.  *See In re Fin. Mgmt. & Oversight Bd. for P.R.*, 432 F. Supp. 3d at 30; *see also Andalusian*, 954 F.3d at 8 n.6 (citing *In re Richmond Unified School Dist.*, 133 B.R. 221, 224–26 (Bankr. N.D. Cal. 1991)).

## **ARGUMENT**

## I.    **MOVANTS' PROPOSED AVOIDANCE CLAIMS ARE NOT COLORABLE.**

### A.    **The Lift Stay Order Acknowledges, and Movants Concede, HTA Has No Property Interest in Excise Tax Revenues Not Transferred to HTA.**

30.    The premise of the Motion is that HTA has a property interest in Excise Tax Revenues, *see, e.g.*, Mot. ¶ 1 ("strip HTA of its property"); Mot. ¶ 2 ("restore HTA's property"); Mot. ¶ 12 ("property of HTA"); Mot. ¶ 23 ("HTA's property"), and in turn, each of Movants' proposed avoidance actions presumes HTA to have a property interest in Excise Tax Revenues

lest there be no property to "claw back." *See* Mot. ¶ 40 (§ 549(a) requires a "transfer" of "property

of the debtor"); Mot. ¶ 46 (§ 544(b)(1) requires "transfer of an interest of the debtor in property");

¶ 50 (fraudulent transfer of debtor property).[17]  That premise is false.

31.     Movants have already litigated and lost on their contention HTA has a property

interest in the Excise Tax Revenues, which were not transferred to HTA.  Movants concede this.

They acknowledge the Lift Stay Order is a "ruling in regards to HTA's property interest" they will

challenge on appeal.  Mot. ¶¶ 5, 57, 59, 60.  They also acknowledge not only that the Motion

"rest[s] in part on issues that are subject to an appeal of the Lift Stay Order, *including the extent

of HTA's property interest in the Excise Tax Revenues*,"  ECF No. 13814, ¶ 9 (emphasis added),

but that Movants' *assumption* they will prevail on appeal is a "predicate[]" of the Motion.  *Id.* ¶

10.  In view of the Lift Stay Order, the Court should not exercise its discretion to appoint a § 926

trustee because, as HTA has no property interest in those revenues, there can be no "transfers" of

HTA property to "avoid."

32.     Movants make two arguments to suggest the Court left open the issue of whether

HTA has a property interest in Excise Tax Revenues, both of which are meritless.

33.     *First*, Movants contend the Court decided only that HTA has no property interest

in the "context" of a lift-stay motion (Mot. ¶ 3).  That is wrong.  Movants requested stay relief on

the grounds there was "no question that the Excise Tax Revenues constitute property of HTA, not

---

[17] As noted above, Movants have not even identified all claims they intend to pursue.  *See* Mot. ¶ 8 n.5
("Movants further reserve their rights to bring claims related to those set forth in the Proposed Complaint");
¶ 35 (identifying "at least four" causes of action and seeking to assert "at least these [four] claims against
the Commonwealth"); ¶ 76 (requesting order to bring proposed claims "and any similar or related claims");
Mot. Ex. B ¶ 2 (proposed order to bring "any similar or related claims").  In view of § 926's plain language
requiring a debtor to "refuse[] to pursue a cause of action" as a condition precedent to seeking appointment
as a § 926 trustee, Movants' request for leave to file unidentified claims should be denied.  *See* 11 U.S.C.
§ 926(a).

the Commonwealth," and that HTA was the "beneficial owner[]" of the Excise Tax Revenues without regard for whether they were transferred to HTA.  Case No. 17-bk-3283, ECF No. 10102 ¶ 52.  The Court, however, rejected that argument.  Lift Stay Order at 24 (Excise Tax Revenues "are within the possession and control of the Commonwealth"); *id.* at 26 (Excise Tax Statutes provided only a commitment to transfer certain revenues "but do not go so far as to purport to grant property rights in the Revenues before they are transferred," "[n]either the Bond Resolutions nor the Excise Tax Statutes promise the Bondholders that the Commonwealth will pay them," and Excise Tax Statutes also "expressly provide[] that the Commonwealth is not liable for HTA's Bond obligations.").  In short, HTA's mere "expectancy" it would receive Excise Tax Revenues does not create a property interest in them.  *See Fin. Oversight & Mgmt. Bd. for P.R. v. Andalusian Glob. Designated Activity Co. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 948 F.3d 457, 468 (1st Cir. 2020).

34.    *Second*, Movants try an about-face, claiming the Court decided only *Movants'* interests in Excise Tax Revenues but that "it is not clear that the Court reached any holding as to *HTA's* property interests" in the Lift Stay Order.  Case No. 17-bk-3283, ECF No. 13814 ¶ 10 n.4. That is not only contrary to Movants' statements in the Motion, but false in view of the Court's clear ruling in the Lift Stay Order noted just above.

35.    Put simply, Movants may "disagree" with the Lift Stay Order (Mot. ¶ 3), remain "hopeful" it will be reversed (Mot. ¶ 57), and have visions of the Supreme Court of the United States taking up their cause (Mot. ¶ 4).  But, hope they may "ultimately" [Case No. 17-bk-3283, ECF No. 13814 ¶ 12] obtain a ruling HTA has a property interest in Excise Tax Revenues does not render a claim colorable.

**B.      The Lift Stay Order Demonstrates the Commonwealth's Strong Defenses to the Proposed Avoidance Actions.**

36.      The Court found the Commonwealth levies and collects the revenues and has not transferred them to HTA.  There are no indicia of ownership left that HTA has that can be claimed. Even if the Court left open the possibility HTA has a property interest in Excise Tax Revenues not transferred to HTA (it did not),[18] the Commonwealth has strong defenses to the proposed avoidance claims, including for the reasons presented in the Lift Stay Order and the Oversight Board's arguments in response to Movants' request for stay relief.

37.      The strength of proposed avoidance claims is relevant to determine whether to appoint a § 926 trustee where the parties requesting that relief are pursing the same ultimate relief through other litigation.  *Andalusian*, 954 F.3d at 9–10 ("Claims may be colorable but not strong, and that is surely relevant at least where, as here, the Bondholders have other actions pending seeking the same relief as would be sought if the motion had been granted"); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 30 ("Against that backdrop [concerning the different purpose of governmental insolvency proceedings], and taking into account the potentially strong defenses to the Bondholders' claims laid out in the briefs opposing the Motion, the Oversight Board's unwillingness to pursue the claims pleaded in the Bondholders' proposed complaint is neither unjustified nor unreasonable.").

38.      Here, the Lift Stay Order demonstrates the strength of a dispositive defense to the proposed claims—the Excise Tax Revenues Movants seek to "recover" through avoidance actions are not HTA property at all if not transferred to HTA.  As noted above, a mere promise to pay and

---

[18] In addition to the strong defenses addressed herein for the Excise Tax Revenues, which were not transferred to HTA, the Commonwealth may also have a claim under the Puerto Rico Constitution and the allocable revenue statutes for excise tax revenues that were transferred to HTA.

"expectancy" of payment arising under the Excise Tax Statutes does not create a property right. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 948 F.3d at 468; *see also* Commonwealth Memorandum of Law in Support of Summary Judgment, Adv. Proc. 20-005-LTS [ECF No. 56] ¶ 134 ("[T]he Commonwealth's statutory promise to transfer HTA Allocable Revenues to HTA for its corporate purposes does not transfer ownership of revenues to HTA . . ."). Further, as this Court and the First Circuit have already held, pre-PROMESA appropriations statutes—including the Excise Tax Statutes Movants rely on to claim HTA has a "property interest" in revenues the Commonwealth collects and controls—are preempted by PROMESA § 202. *Rossello v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 330 F. Supp. 3d 685, 701 (D.P.R. 2018), *aff'd sum nom Vazquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 945 F.3d 3 (1st Cir. 2019).

39.     Moreover, even if there were a "transfer" of Excise Tax Revenues to the Commonwealth (which there was not), the Court cannot avoid a "transfer" that would interfere with the Commonwealth's political and governmental powers under PROMESA §§ 303 and 305. *See* 48 U.S.C. §§ 2163, 2165.  Movants not only seek reinstatement of preempted appropriation statutes, but effectively seek retroactive modification of those preempted statutes to require Excise Tax Revenues to be transferred to HTA.  In any event, one legislature's allocations cannot bind the next.  And, the First Circuit has already recognized that PROMESA §§ 303 and 305, while not creating a "per se" rule against a section 926 trustee, "support[] a consideration of the unique interests and needs of the government debtor" and present a strong defense on the underlying merits of the proposed avoidance action.  *Andalusian*, 954 F.3d at 9 n.7.  As such, even if a "transfer" of Excise Tax Revenues occurred, it was authorized by Title III (and thereby defeats any claim under Bankruptcy Code §§ 544 and 549) because PROMESA § 202 preempted the

conditional appropriation statutes Movants rely on to claim HTA has a "property interest" in those revenues.

40.      Those strong defenses warrant denying the Motion, *see Andalusian*, 954 F.3d at 9–10, particularly where Movants continue to litigate this issue not only on their anticipated appeal of the Lift Stay Order but as part of their summary judgment briefing currently underway in the revenue bond adversary proceedings, further litigation relating to the HTA lift stay motion, and the assertions made in Movants' own proofs of claim (which will be before the Court in their own right as part of a forthcoming confirmation hearing on the Commonwealth plan of adjustment). *See also infra* Section III.A.

## II.   THE OVERSIGHT BOARD DOES NOT SUFFER ANY "CONFLICT OF INTEREST" BY FULFILLING ITS STATUTORY MANDATE.

41.      Movants claim the Oversight Board's refusal to bring the proposed avoidance actions is unjustified because it suffers from a "conflict of interest" that "disables" it from deciding whether to pursue those actions.  Mot. ¶ 6.  Specifically, Movants contend the Oversight Board has an "intractable" conflict due to its "simultaneous representation of both HTA and the Commonwealth in these Title III cases" (Mot. ¶ 5), and argue the Oversight Board's "role in diverting HTA's funds to the Commonwealth" has "disregard[ed] HTA's status" as a separate entity (Mot. ¶ 58).  Movants' argument fails for three reasons.

42.      *First*, Movants wholly ignore the Oversight Board's unique role in PROMESA's statutory scheme and this Court's reasoning rejecting the same "conflict" arguments in the ERS Title III case.  In ERS, this Court recognized "the significance of the unique statutory scheme crafted by Congress to govern these proceedings and the unique nature of the debtors that are the subject of these Title III cases," including the Oversight Board's role as the sole statutory representative of each Title III debtor.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp.

3d at 29.  The Oversight Board's mandate "is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  48 U.S.C. § 2121(a).  As this Court has recognized, "PROMESA provides for the appointment of a single Oversight Board that will act as the sole statutory representative of a territory and each of its covered territorial instrumentalities in their Title III cases."  432 F. Supp. 3d at 29; *see also* 48 U.S.C. § 2175(b) ("The Oversight Board in a case under this [title III] is the representative of the debtor.").

43.      Movants ignore this Court's reasoning rejecting the same "conflict" arguments in the ERS Title III case.  While Movants attempt to distinguish the Motion from *Andalusian* (and fail, *see infra* Section III.B.2), Movants do not mention, let alone distinguish, this Court's reasoning rejecting the same "conflict" arguments rooted in the Oversight Board's Congressionally mandated representation of a covered territory and its instrumentalities in Title III.  Likewise, Movants do not even cite, let alone discuss, PROMESA § 315(b), which establishes the Oversight Board as the representative of each Title III debtor.  Movants' failure to explain how a "conflict" could exist in view of Congress's clear mandate is inexplicable, particularly in view of this Court's prior ruling and the First Circuit's affirmance.

44.      Instead, Movants attempt to sidestep this Court's prior decision by claiming the Oversight Board is conflicted because it owes fiduciary duties *to Movants*, evidently on the grounds of a pre-Title III decision which supposedly "recogniz[ed] HTA's 'fiduciary duties' to HTA Bondholders" and that such duties are automatically imputed to the Oversight Board.  Mot. ¶ 59 (characterizing and quoting *Ambac Assurance Corp. v. HTA*, No. 16-1893 (PAD), 2016 WL 2930924, at *2 (D.P.R. May 19, 2016)).  That is wrong in every respect.[19]  The decision Movants

_____

[19] Movants cite two cases in a footnote to support their "fiduciary duty" argument (Mot. ¶ 59 n.12), both of which are inapposite.  Movants cite *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 355 (1985) apparently to analogize the Oversight Board to a corporate debtor-in-possession's board of directors, which makes no sense and ignores the differences between governmental and private commercial

cite denied Ambac's motion for a temporary restraining order, and far from "recognizing" HTA's fiduciary duties to bondholders, the court—evaluating whether to grant extraordinary injunctive relief just 3 days after Ambac filed its complaint—stated Ambac's filing "*suggests likely* . . . infringement of fiduciary duties," but plainly did not "recognize" such duties existed. *See id.* at *2 (emphasis added).  Even if it had, it has nothing to do with imputing those duties to the representative of the debtor under PROMESA.[20]

45.     *Second*, Movants are flatly wrong that the alleged "existence of a conflict of interest is sufficient reason to appoint a trustee." Mot. ¶ 37.  Movants' argument is a near-verbatim copy of the same paragraph from the ERS Bondholders' brief asserting the same argument the Court has already rejected.  *Compare* Mot. ¶ 37 *with* Case No. 17-bk-3283, ECF No. 9260 at 11–12.

46.     After lifting this failed argument from the ERS Bondholders, Movants double down, contending an alleged conflict is not just "ample reason" to appoint a trustee (as the ERS Bondholders put it) but "*sufficient* reason" to do so, citing *Off-Track Betting* and Collier. *Compare* Mot. ¶ 37 *with* Case No. 17-bk-3283, ECF No. 9260 at 11–12 (emphasis added).  That is plainly false.  The quoted portion from *Off-Track Betting* is addressing whether a debtor *must consent* to appointment of a § 926 trustee in a chapter 9 case, not whether the existence of an alleged conflict alone justifies appointment.  2011 WL 309594, at *6 ("NYRA's contention that

---

bankruptcies.  Movants then cite *In re WHET, Inc.*, 750 F.2d 149, 149 (1st Cir. 1984), apparently to suggest the Oversight Board is analogous to a trustee under 11 U.S.C. § 323 as in that case, even though PROMESA does not incorporate 11 U.S.C. § 323, *see* 48 U.S.C. § 2161(a), and the Oversight Board is not a "trustee" but the sole representative of each Title III debtor, 48 U.S.C. § 2175(a).

[20] Movants' citation to *Woods v. City National Bank & Trust Company* and *In re WM Distribution, Inc.* (Mot. ¶ 59 n.13) is puzzling, as both concerned whether to disallow claims for compensation where counsel simultaneously represented adverse parties in chapter 11 proceedings.  *Woods*, 312 U.S. 262, 263–64 (1941); *In re WM Distribution, Inc.*, 571 B.R. 866, 868 (Bankr. D.N.M. 2017).  Neither stands for the proposition the Oversight Board owes fiduciary duties to Movants, and neither remotely concerns PROMESA's unique statutory structure.

section 904 prohibits a court from appointing a trustee *without the consent of the debtor* renders section 926 mere surplusage.") (emphasis added).  Movants' selective quotation does not convert *Off-Track Betting* into a case about an alleged conflict.  As for COLLIER, the quoted section says nothing about "conflicts," but instead addresses circumstances where a debtor would favor the transfer or not want to antagonize creditors—not a situation, as here, where a creditor alleges the debtor's representative has a conflict by representing *another debtor*.  COLLIER ¶ 926.02.[21]

47.     *Third*, even putting aside the above, Movants' conflict argument is barred by laches.  Laches "bars assertion of a claim where a party's delay in bringing suit was 1) unreasonable, and 2) resulted in prejudice to the opposing party."  *K'Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989).  Movants' delay satisfies both prongs.

48.     Movants have had years to object to the Oversight Board's simultaneous representation of the Commonwealth and HTA and multiple opportunities to do so.  They did not object to the Oversight Board's representation of both the Commonwealth and HTA in their prior litigation challenging the Fiscal Plans as "illegal" or during their prior Contracts Clause litigation.  *See* Adv. Proc. No. 17-155-LTS (action brought by Assured); Adv. Proc. No. 17-159-LTS (action brought by Ambac).  They did not object to the Oversight Board's role in the lift-stay litigation on behalf of the Commonwealth and HTA.  They did not object to the Oversight Board's role in bringing revenue bond complaints on behalf of both the Commonwealth and HTA.  And, contrary to Movants' suggestion (Mot. ¶ 33), Movants were not barred from bringing a conflicts motion sooner as a result of the Final CMO setting an *outside date* to bring them.

---

[21] Even if a conflict existed (it does not), this Court and the First Circuit have suggested the Commonwealth and HTA would remain permitted to control disposition of their assets and causes of actions, in light of the holistic approach PROMESA requires.  *See supra* ¶ 29.

21

49.     Movants' conflict argument asserted at this late date would also result in prejudice to the Oversight Board, HTA, and the Commonwealth.  The Oversight Board has worked for years under its statutory mandate as the sole representative of the Commonwealth as a covered territory, and HTA as a covered instrumentality.  Movants' last-minute attempt to question the Oversight Board's Congressionally-mandated role exposes the Motion for what it is:  an improper attempt to use § 926 to gain bargaining leverage in the Debtors' Title III cases.  Further, Movants only bring this motion now, after certain ERS Bondholders litigated and lost the same arguments, and after Movants litigated and lost the threshold issue of whether HTA has a property interest in the Excise Tax Revenues.  The Court should reject Movants' conflict argument as time-barred.

## III.     APPOINTMENT OF MOVANTS AS § 926 TRUSTEES IS UNNECESSARY AND WOULD BE IMPROPER UNDER PROMESA.

50.     Beyond its numerous other deficiencies explained above, the Motion is an unnecessary and improper attempt to usurp the Oversight Board's Congressionally-appointed role as representative of the Debtors.  Movants have numerous other means of achieving the same relief they seek here, including currently pending proceedings in which they are litigating for the same revenues they seek in the Proposed Complaint.  Appointment of Movants to litigate their claims in these circumstances would retard progress because the Oversight Board would lose control over the purported avoidance actions Movants want to prosecute.  Finally, the COFINA situation supports the Oversight Board's powers to represent HTA and the Commonwealth.  There, while separate agents of the Oversight Board were appointed to litigate and negotiate, each agent served as the Oversight Board's agent and the Oversight Board reserved the right to impose a settlement in its discretion.

A. **Movants Are Already Seeking the Relief They Would Seek as Trustee in Other Proceedings.**

51.     The Proposed Complaint seeks to recover funds Movants contend were fraudulently transferred from HTA to the Commonwealth, in violation of Commonwealth statutes providing for such funds to be used by HTA (including for payment of HTA's bonds).  In their numerous other attempts to recover the Excise Tax Revenues, Movants have elsewhere sought— and continue to seek—this exact same relief.  Because Movants have other avenues to litigate their claims against the Commonwealth, the First Circuit's decision in *Andalusian* counsels denial of the Motion, even though different legal theories would apply.  *Andalusian*, 954 F.3d at 10 (noting bondholders brought other Title III court actions they "concede seek the same relief as would be sought in the proposed avoidance actions").

52.     Movants cannot deny that underlying their Proposed Complaint is a single assumption necessary for there to be an avoidance action:  the Excise Tax Revenues are property of HTA before they are transferred to HTA, and Movants hold a lien over such revenues.  This allegation is ever-present throughout their claims for relief.  *See, e.g.*, Proposed Complaint ¶¶ 139 ("The Excise Tax[] [Revenues] are property of HTA and the HTA Bondholders."), 151 ("Through the diversion of funds, the Commonwealth emptied HTA's coffers without assuming HTA's obligations—including those owed to the HTA Bondholders."), 157 (noting the "impact of the Commonwealth's misappropriation of *HTA's assets*") (emphasis added), 162 (alleging "the Commonwealth and HTA were aware . . . of the harm diversion of *HTA's funds* would cause to the HTA Bondholders") (emphasis added), 169 ("The transfers of *HTA's funds* . . . rendered HTA insolvent and unable to pay the HTA Bonds.") (emphasis added).

53.     However, Movants are elsewhere seeking this exact same relief, as they acknowledge repeatedly throughout their Motion.  They admit "a final determination of HTA's

23

property interests in the Excise Tax[] [Revenues" is "an issue that will affect the merits of the avoidance actions *and is already being litigated elsewhere*." Mot. ¶ 1 (emphasis added). They also concede "the underlying question of HTA's interest in the Excises [sic] Taxes is *still being litigated*," *id.* ¶ 2 (emphasis added), and reference "the *ongoing adjudication* of HTA's property interests through the lift-stay proceedings and otherwise," *id.* ¶ 10 (emphasis added). The "otherwise" is extensive, and includes the comprehensive summary judgment briefing currently underway in connection with the Commonwealth Complaint, in which Movants have filed thousands of pages addressing their alleged ownership of the Excise Tax Revenues. Moreover, following disposition of these summary judgment motions, the other claims in the Commonwealth and HTA complaints will need to be dealt with, as they also address issues of entitlement to the funds in question. Beyond these proceedings, Movants are engaging in further litigation relating to the HTA Lift Stay Motion, and the parties will need to litigate the assertions made in Movants' own proofs of claim (which will be before the Court in their own right as part of a forthcoming confirmation hearing on the Commonwealth plan of adjustment). Indeed, the Ambac Proof of Claim expressly asserts a fraudulent conveyance claim related to the Excise Tax Revenues (at ¶ 30(d)), and the others reserve their rights to assert fraudulent conveyance claims at a later point during the adjudication in connection with a confirmation proceeding.

54.     As the First Circuit held in *Andalusian*, this Court may "consider the existence of the [Movants'] other actions pursuing the same ultimate relief as a factor [to] support[] its decision not to appoint a trustee under § 926." 954 F.3d at 10 n.10. In fact, the Court should do so here. If Movants prevail in those other proceedings, they will obtain the same results as they would obtain by asserting the claims in their Proposed Complaint, namely, the ability to receive whatever revenues are subject to their valid liens. Indeed, Movants fail to explain how a favorable outcome

on their appeal of the Lift Stay Order will not grant them the relief they seek here.  Furthermore,

Movants' actions in these currently pending proceedings demonstrate they are capable of

protecting themselves, and do not need the Oversight Board—or an appointment of a trustee.

Because these proceedings "will continue in due course," *In re Fin. Oversight & Mgmt. Bd. for*

*P.R.*, 432 F. Supp. 3d at 31, Movants, if successful, will be granted any appropriate relief in the

Commonwealth's Title III case to which they are entitled, and a fraudulent transfer action could

be rendered unnecessary.  Therefore, under *Andalusian*, the existence of these other proceedings

negate Movants' need to be appointed as § 926 trustee.

> **B.      PROMESA Does Not Champion § 926 Trustees to Sue Affiliated
> Governmental Parties.**

> **1.      PROMESA Recognizes the Oversight Board's Role in Providing a
> Holistic Approach to Restructuring All Debtors' Obligations.**

55.      Congress empowered the Board to serve as the sole representative of each Title III

debtor.  *See* 48 U.S.C. § 2175(b) (PROMESA § 315(b)).  In Title III cases, the Oversight Board

alone may consent to any judicial interference with the Title III debtors' property and the exercise

of the debtors' political or governmental powers, *see* 48 U.S.C. §§ 2165, 2172, and the Board alone

may propose plans of adjustment for the debtors, 48 U.S.C. § 2172.  Congress did not view the

Board's simultaneous representation of different debtors as a problematic conflict of interest that

requires the appointment of a trustee, but rather, as the means of recognizing all parts of the

Territory must work together, not against one another, to achieve a complete resolution of the

Commonwealth's economic crisis.  Here, the underlying question is whether the creditors have a

valid property interest—a question that has been answered once and is being adjudicated further

in multiple other proceedings.

56.      Given the Oversight Board's role as the sole statutory representative of all Title III

debtors, the Board may exercise its discretion in determining whether one Title III debtor should

sue another.  As this Court has recognized, the primary purpose of Title III, unlike Chapter 11 but like Chapter 9 of the Bankruptcy Code, "is not future profit, but rather continued provision of public services."  *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 30 (quoting *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 (Bankr. D. Colo. 1999)).  As such, Title III cases "require a more holistic approach that focuses on the continuation and future of a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well as provide proper recompense of creditors.  *Id.*  A decision by the Oversight Board that the overall fiscal recovery in Puerto Rico would be hampered by having one debtor sue another is therefore entitled to significant deference.

57.     Moreover, the appointment of a trustee would also be inconsistent with § 926's legislative history, which shows that the provision was intended to apply to avoidance actions a governmental debtor could bring against *non-governmental* third parties.  Congress found § 926 "necessary" because a municipal debtor "might, by reason of political pressure or desire for future good relations with a particular creditor or class of creditors, make payments to such creditors in the days preceding the petition to the detriment of all creditors," making it "very awkward" for the debtor "to turn around and demand the return of the payments following the filing of the petition." S. Rep. No. 95-989, at 111 (1978), 1978 U.S.C.C.A.N. 5787, 5897.  The clear suggestion is that Congress incorporated § 926 into Title III to address a situation where a debtor transferred funds to a third party in the days before filing a Title III petition.  Here, in contrast, Movants seek to reinstate non-binding and preempted appropriation statutes, and then modify them to require the Commonwealth retroactively and prospectively transfer the Excise Tax Revenues to HTA.  This runs contrary to the stated intent of § 926.[22]

---

[22] Not only does Movants' requested relief not comport with § 926's focus on transfers to private parties, but it also runs contrary to § 926's purpose of addressing transfers made in the days preceding the petition,

### 2. The First Circuit's Decision in *Andalusian* Compels Denying the Motion.

58. As noted above (*see supra* Section I.B), in *Andalusian*, the First Circuit recognized the presence of strong defenses to proposed avoidance actions supports denying a motion to appoint a § 926 trustee. In addition, *Andalusian* does not support Movants' assertions that the Oversight Board suffers from an "untenable conflict of interest" (Mot. ¶ 2) rendering it incapable of serving as statutory representative for HTA, or that PROMESA would be served by appointing Movants as HTA's § 926 trustee.

59. In *Andalusian*, the First Circuit rejected the ERS Bondholders' substantially similar argument that the Oversight Board suffers from a conflict of interest requiring the appointment of a § 926 trustee. As here, the ERS Bondholders claimed that the Oversight Board's decision not to appoint a trustee was inherently unreasonable because of the Board's conflict of interest due to its contemporaneous representation of ERS and the Commonwealth in their respective Title III cases. In disposing of this argument, the Court looked to "the obvious differences between governmental bankruptcies and commercial private party bankruptcies," and noted that, "[u]nlike a commercial bankruptcy, which attempts to balance the rights of creditors and debtors, the principle purpose of chapter 9, and by analogy PROMESA, is to allow municipal debtors the opportunity to continue operations while adjusting or refinancing their creditor obligations." *Andalusian*, 954 F.3d at 7–8 (quoting *In re N.Y. City Off-Track Betting*, 2011 WL 309594, at *5). The First Circuit also favorably cited *In re Richmond Unified School District*, 133 B.R. 221 (Bankr. N.D. Cal. 1991), in which the bankruptcy court granted the school district debtor's motion to dismiss its chapter 9

---

as it seeks to recoup Excise Tax Revenues collected *years* before the debtors entered Title III proceedings. *See* Proposed Compl. ¶ 39 ("*Beginning in 2015*, the Commonwealth has engaged in a series of actions that diverted the [Excise Tax Revenues] from the payment of the HTA Bonds and destroyed the value of these revenues to HTA and the HTA Bondholders.") (emphasis added).

case, "even assuming that the dismissal would harm the creditors and a conflict of interest existed." 954 F.3d at 8 n.6 (citing 133 B.R. at 224–26).

60.     Movants make five arguments in an attempt to distinguish *Andalusian* from their facts and show how their appointment would achieve PROMESA's stated purposes.  All fail.

61.     *First*, Movants contend a trustee is necessary to support PROMESA's purpose of "provid[ing] a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  Mot. ¶ 63 (second brackets in original).  However, in making this argument, Movants apparently do not realize that their brief quotes not from PROMESA's statement of motives, but *from the specific statutory mandate of the Oversight Board* in PROMESA § 101.  48 U.S.C. § 2121(a) ("The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets.").  It is impermissible, and would be inconceivable, for this Court to appoint a § 926 trustee to do the work Congress *exclusively* delegated to the Oversight Board as sole statutory representative of each Title III debtor.

62.     *Second*, Movants assert their appointment as trustees pursuant to § 926 would specifically help reduce what they deem to be unnecessary government spending.  Mot. ¶ 64.  This makes little sense.  Even if appointed trustees, Movants would not be authorized to direct how and where funds should be spent on behalf of the Commonwealth or its instrumentalities; such is the express role of the Oversight Board, and decisions regarding the Debtors' use of income or political powers are subject to the Board's consent.  48 U.S.C. § 2165.  Notably, PROMESA § 305 does not contain any reference to the consent of a § 926 trustee.

63.     *Third*, Movants argue their appointment and seizure of the Excise Tax Revenues will help HTA pay its debts and thereby achieve better standing in capital markets.  Mot. ¶ 65.  As this Court well knows, that is not Movants' primary aim.  Rather than seek these monies out of a

desire to help HTA regain its position in the capital markets, Movants wish to jump the line ahead of other Commonwealth creditors with priority claims and obtain compensation on their own debts, to the detriment of all other Commonwealth (and HTA) creditors, and the Commonwealth's ability to regain access to capital markets. The Oversight Board's position as the debtors' statutory representative eliminates the inherent conflict presented by a creditor acting as the trustee of the debtor from whom it is seeking recompense.

64.      *Fourth*, Movants acknowledge that filing their Proposed Complaint would result in the "proliferation of actions seeking essentially the same remedy" the First Circuit sought to avoid in *Andalusian* (Mot. ¶ 69), but claim this concern "weigh[s] differently here, where Movants have taken all reasonable steps to avoid pursuing avoidance actions as trustees while their other actions remain pending" (*id.* ¶ 70). This explanation is meaningless. Notably, Movants were not granted the emergency relief they sought in being preliminarily appointed § 926 trustees. Should Movants be successful in their other pending proceedings, they will be entitled to the same Excise Tax Revenues that are at issue here. Under *Andalusian*, the "reasonable steps to avoid pursuing avoidance actions as trustees" would be to let those actions proceed as set by the Title III Court, and obtain any revenues to which they are entitled at the point it is granted.

65.      *Fifth*, Movants incorrectly assert that *Andalusian* suggests their appointment as § 926 trustees would respect Puerto Rico law as required by PROMESA § 303. Mot. ¶¶ 67–68. The predicate of Movants' argument is that HTA has a property interest in the Excise Tax Revenues, which it does not, as established by this Court in its HTA Lift Stay Order. Accordingly, it is simply false for Movants to assert the statutes establishing the Excise Tax Revenues "prohibit the Commonwealth's confiscation of HTA's assets" (*id.* ¶ 68) when the Excise Tax Revenues are not HTA's assets at all. If anything, all Movants have demonstrated is merely an expectancy in

Excise Tax Revenues, and under Puerto Rico law, Movants are not entitled to ownership of such revenues pursuant to a mere expectancy. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 948 F.3d at 468 n.8 ("Puerto Rico law recognizes that the mere expectancy of property is not itself a property interest.").

66.     Contrary to Movants' attempts to show otherwise, *Andalusian* actually requires denial of the Motion.  At bottom, Movants seek relief based *entirely* on the false premise they are entitled to property that is not theirs.  Like the ERS Bondholders, Movants assert that the Oversight Board's "simultaneous representation" of two Title III debtors "constitutes an unresolvable conflict of interest," *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 28, despite the clear instructions of PROMESA that such simultaneous representation is acceptable.  Like the ERS Bondholders, Movants are in the process of litigating these issues in several other adversary proceedings and contested matters, and allowing Movants to file their Proposed Complaint would result in a "proliferation of actions seeking essentially the same remedy."  *Andalusian*, 954 F.3d at 11.  And like the ERS Bondholders, Movants plainly seek to use § 926 to their advantage—and to gain leverage over the Commonwealth's plan of adjustment—by taking control over their proposed avoidance actions to cloud both the Commonwealth and HTA Title III cases for years to come.

### 3.     Denying the Motion Would Not Result in Substantive Consolidation.

67.     Movants' assertion that the Motion should be granted because PROMESA cannot authorize "substantive consolidation of the case of affiliated debtors" is similarly based on their faulty premise that "[t]he assets belonging to one Debtor are simply being taken and used to pay the creditors of a different affiliated Debtor."  Mot. ¶ 71.  This argument is flawed as Movants falsely state that the First Circuit concluded no substantive consolidation occurred in *Andalusian* "because the disputed legislation advanced ERS's own interest in achieving economy and

efficiency in the Commonwealth government." *Id.* This is an incorrect reading of the issues before

the First Circuit in *Andalusian*. There, the First Circuit found "the Title III court's consideration

of the governance interests of the public debtors does not amount to 'substantive consolidation.'"

954 F.3d at 8. Only after reaching that conclusion did the First Circuit evaluate the ERS

Bondholders' alternative argument—that their motion should be evaluated solely from the

perspective of ERS—and rejected it, reiterating "PROMESA's prohibition of 'substantive

consolidation' does not rewrite the text of § 926 or cause us to ignore the clear differences between

governmental and commercial bankruptcies." *Id.* Movants wholly ignore this distinction.

68.     Moreover, Movants disregard the critical point in both *Andalusian* and here, namely

that the creditors seeking appointment contend the debtor had a right to property it did not have

and could not transfer. In *Andalusian*, the ERS Bondholders argued PayGo fees belonged to them

because those fees were proceeds of prepetition collateral—a contention this Court rejected, and

the First Circuit confirmed. *See* 948 F.3d at 468–70. Here, Movants contend HTA owns the

Excise Tax Revenues, an argument that this Court has rejected in the HTA Lift Stay Opinion, and

which Movants apparently intend to appeal. Thus, in both cases, would-be § 926 trustees had

multiple other litigations seeking the same relief—namely, recovery of what they claim is

collateral subject to their liens. The distinctions that Movants attempt to draw between the instant

case and *Andalusian* are illusory.[23]

---

[23] Movants' authorities concerning substantive consolidation are inapposite. Both *In re Sarner* and *In re Augie/Restivo Baking Company* discussed factors to determine whether substantive consolidation is permissible in a non-PROMESA context, not whether it has occurred. *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988); *In re Sarner*, No. 10-17487-JNF, 2010 WL 3282589, at *4 (Bankr. D. Mass. Aug. 19, 2010). In any event, neither support the proposition the failure to appoint a § 926 trustee has any bearing on that inquiry.

C.     **Movants' Comparison to the Commonwealth/COFINA Dispute Procedures Is Inapposite.**

69.     In an even farther-reaching attempt, Movants analogize their contested Motion to the Oversight Board's prior appointment of independent representatives of COFINA and the Commonwealth because, in Movants' view, the Oversight Board was "in the throes of an irreconcilable dispute" between the two debtors that it could not adjudicate. Mot. ¶ 6. The process by which these agents were appointed, however, could not be further from what Movants are attempting to do here, and further underscores that the Oversight Board is best positioned to determine when it does or does not need to appoint representatives for its debtors.

70.     Movants are correct that two agents were appointed as separate representatives for COFINA and the Commonwealth to adjudicate whether certain funds constituted property of COFINA or the Commonwealth under applicable law (the "Commonwealth-COFINA Dispute"). Movants ignore that the Oversight Board retained the power to impose its own resolution of the Commonwealth-COFINA Dispute in a plan of adjustment. The retention of two agents was not an admission of conflict or because of a conflict. Movants incorrectly state the Oversight Board "ultimately requested the appointment" of these agents. Mot. ¶ 6. Rather, the Oversight Board, as the statutory representative of both debtors, "*authorize[d]*" the appointment of their agents. *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute*, Case No. 17-3283-LTS [ECF No. 996] (the "Commonwealth-COFINA Dispute Stipulation"), ¶¶ 4(a), 4(b). It did so pursuant to PROMESA § 104(b), which expressly permits the Oversight Board to designate agents to take any action the Oversight Board is authorized to take. *Id*. ¶ 2. In such appointment, the Oversight Board set out the procedures by which the Commonwealth-COFINA Dispute would be adjudicated, including which other parties may intervene in the dispute and the deadline for such dispute to be resolved. *Id.* ¶ 4(f). Because the Oversight Board retained

32

the power to impose its own resolution in a COFINA plan of adjustment, when the Commonwealth agent declined to enter into a settlement agreement on the Commonwealth's behalf the Oversight Board did so by itself and without the agent.[24]

### **CONCLUSION**

71.     For the foregoing reasons, the Court should deny the Motion.


*[Remainder of Page Intentionally Left Blank]*

---

[24] Movants also complain the Oversight Board has refused to toll the specific limitations period at issue for HTA's avoidance action claims. Mot. ¶ 70. Yet, the Oversight Board is not required to toll *any* limitations period. In any event, Movants could have filed their motion and sought appointment as § 926 trustees at any point during the last *three years*. Yet they waited until January 2020 to demand HTA pursue avoidance claims in the first place. *Id.* ¶ 29; *see also* Mot. Decl. Ex. 1 (dated January 15, 2020). After the Oversight Board promptly rejected this demand based on its analysis that there were no valid avoidance actions, *see* Mot. Decl. Ex. 2 (dated January 29, 2020), Movants waited *another six months* to file the Motion and seek their requested relief. Movants have also waited years to object to the Oversight Board's simultaneous representation of the Commonwealth and HTA in multiple proceedings. The Oversight Board is not responsible for Movants' delay, and therefore the Oversight Board's decision not to toll the limitations period should not be considered in connection with Movants' request for relief.

Dated: July 31, 2020
San Juan, Puerto Rico

Respectfully submitted,

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Julia D. Alonzo (*pro hac vice*)
William D. Dalsen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: brosen@proskauer.com
Email: mdale@proskauer.com
Email: jalonzo@proskauer.com
Email: wdalsen@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth of Puerto Rico and the
Puerto Rico Highways and Transportation
Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 31, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer