UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

**AAFAF'S OPPOSITION TO URGENT MOTION FOR BRIDGE ORDER, AND MOTION FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926, OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARD ....................................................................................................................... 4

ARGUMENT ................................................................................................................................... 5

    I.    SECTION 303 OF PROMESA PROHIBITS APPOINTMENT OF A TRUSTEE TO FORCE THE COMMONWEALTH TO TRANSFER ITS REVENUES TO HTA. ..................................................................................... 5

        A.    The Retention Orders and Retention Legislation Are Exercises of Political and Governmental Powers Protected from Interference in Title III. ................................................................................................. 6

        B.    The Retention Orders and Retention Legislation Are Not Preempted by PROMESA Section 303 ...................................................... 7

    II.    MOVANTS' PROPOSED AVOIDANCE CLAIMS ARE FUTILE. .................... 8

        A.    HTA Never Made an Avoidable Transfer. ................................................ 9

        B.    Movants Lack a Colorable Section 549 Claim Because Any Purported "Transfer" Would Have Been Authorized Under Title III ............................................................................................................ 10

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Ambac Assurance Corp. v. Commonwealth of Puerto Rico*,
297 F. Supp. 3d 269 (D.P.R. 2018) .................................................................................. 3, 8

*Andalusian Global Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R.*,
954 F.3d 1 (1st Cir. 2020) ................................................................................................ passim

*In re Alicea Casanova*,
595 B.R. 616 (Bankr. D.P.R. 2018) ....................................................................................... 10

*In re City of Stockton*,
486 B.R. 194 (Bankr. E.D. Cal. 2013) ................................................................................... 12

*In re Costas*,
555 F.3d 790 (9th Cir. 2009) ................................................................................................... 9

*In re Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders*,
899 F.3d 13 (1st Cir. 2018) .................................................................................................... 11

*In re Fin. Oversight & Mgmt. Bd. for P.R.*, --- B.R. ---,
2020 WL 3816135 (D.P.R. July 2, 2020) ............................................................................ 3, 9

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
432 F. Supp. 3d 25 (D.P.R. 2020) ................................................................................... passim

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
No. 17-03283-LTS, Dkt. No. 3941 at 5-6 (D.P.R. Sept. 18, 2018) .................................... 6, 12

*In re Jefferson Cty.*,
474 B.R. 228 (Bankr. N.D. Ala. 2012) .................................................................................... 5

*In re LiTenda Mortg. Corp.*,
246 B.R. 185 (Bankr. D.N.J. 2000) ....................................................................................... 10

*In re McMullen*,
386 F. 3d 320 (1st Cir. 2004) ................................................................................................ 13

*In re Messia*,
184 B.R. 176 (Bankr. D. Mass. 1995) ................................................................................... 10

*In re New York City Off-Track Betting Corp.*,
434 B.R. 131 (Bankr. S.D.N.Y. 2010) .................................................................................... 5

*In re Sabine Oil & Gas Corp.*,
547 B.R. 503 (Bankr. S.D.N.Y. 2016) *aff'd,* 562 B.R. 211 (S.D.N.Y. 2016) .......................... 9

*In re Sanitary & Improv. Dist. No. 7*,
96 B.R. 967 (Bankr. D. Neb. 1989) ................................................................................... 4, 11

*In re Smith*,
910 F.3d 576 (1st Cir. 2018) .................................................................................................. 12

ii

**Statutes**

11 U.S.C. § 362 ............................................................................................................................. 12

11 U.S.C. § 362(b)(4) ................................................................................................................... 12

11 U.S.C. § 363 ............................................................................................................................. 11

11 U.S.C. § 544 ............................................................................................................................... 9

11 U.S.C. § 549 ............................................................................................................................. 10

13 L.P.R.A. § 31751(a)(1)(C) ...................................................................................................... 10

48 U.S.C. § 2161 ........................................................................................................................... 10

48 U.S.C. § 2161(a) ...................................................................................................................... 11

48 U.S.C. § 2161(d) ...................................................................................................................... 10

48 U.S.C. § 2163 ......................................................................................................................... 2, 6

48 U.S.C. § 2163(1) ........................................................................................................................ 8

48 U.S.C. § 2165 ....................................................................................................................... 2, 11

9 L.P.R.A. § 2002 ........................................................................................................................... 1

Compliance Law, Statement of Motives at 8 .................................................................................. 7

Fiscal Responsibility Act (Act 5-2017), §§ 202-203, 206 .............................................................. 8

Moratorium Act, § 102 .................................................................................................................... 7

Moratorium Act, § 201(a) ............................................................................................................... 8

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), as fiscal agent for the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways & Transportation Authority ("HTA"), respectfully submits this opposition to the Monolines' motion to appoint a trustee for HTA. [ECF 13708] (the "Trustee Motion"). In support of this opposition, AAFAF respectfully states as follows:

## INTRODUCTION

1. Movants[2] seek an order pursuant to Bankruptcy Code section 926 appointing themselves as trustee for HTA, a public corporation and government instrumentality of the Commonwealth. 9 L.P.R.A. § 2002. Movants want to force HTA to initiate fraudulent transfer claims against the Commonwealth regarding the Excise Taxes. But these are not simple fraudulent transfer claims: they are an effort by unaccountable private actors to use PROMESA and the Bankruptcy Code to force HTA to declare war on the Commonwealth by having HTA challenge measures the elected Government and the Oversight Board agree are necessary and appropriate exercises of governmental power. Specifically, the proposed complaint seeks to bring fraudulent transfer lawsuits to invalidate the Moratorium Act and the Fiscal Plan Compliance Law (the "Retention Legislation"), certain Executive Orders (the "Retention Orders"), and Board-certified Fiscal Plans and Budgets. *See* Trustee Motion ¶¶ 22, 41-43; Proposed Adversary Complaint ("Proposed Compl.") ¶¶ 142, 158, 163, 170, ECF 13708-1. As explained below, the Court should exercise its substantial discretion to prevent Movants from undermining the protections of governmental and political powers granted to the Debtors under PROMESA sections 303 and 305. *See Andalusian Global Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R.*, 954 F.3d

---

[2] Defined terms used herein have the same meaning as that in the Trustee Motion, unless otherwise specified.

1 (1st Cir. 2020) (affirming this Court's order denying similar relief to ERS Bondholders).

2. As this Court and the First Circuit have recognized, the purpose of these Title III proceedings is to "allow municipal debtors the opportunity to continue operations while adjusting or refinancing their creditor obligations," not solely to serve the interests of financial creditors. *Andalusian*, 954 F.3d at 7-8; *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d 25, 30-31 (D.P.R. 2020) ("ERS Trustee Order"). As such, "these restructuring cases require a more holistic approach that focuses on the continuation and future of a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well as provide proper recompense of creditors." *ERS Trustee Order*, 432 F. Supp. 3d at 30. To that end, "PROMESA provides for significant deference to the prerogatives of the governmental debtors and of their statutory representative and makes clear that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets." *Id.*; *see also* 48 U.S.C. §§ 2163, 2165. Movants ignore these governing principles and conjure illusory distinctions between this case and *Andalusian*. None holds water. The significant deference provided to governmental debtors precludes both Movants' request for appointment as trustee and the relief the trustee would ultimately seek.

3. *First*, section 303 of PROMESA necessitates denying the Trustee Motion. Decisions regarding Excise Taxes are protected exercises of the Government's political and governmental authority over HTA, and section 303 bars using other sections of the Bankruptcy Code to undermine such protected actions. *See infra* Section I.A. Movants cannot sidestep section 303 by claiming the Retention Legislation and Retention Orders (or Budgets or Fiscal Plans for that matter) are preempted by sections 303(1) and 303(3). As this Court has already held, the Retention Legislation and Retention Orders are not within the scope of section 303(1) because

2

they do not purport to preclude eventual payment to Movants nor do they purport to reduce any outstanding obligations. *Ambac Assurance Corp. v. Commonwealth of Puerto Rico*, 297 F. Supp. 3d 269, 291 (D.P.R. 2018) ("*Ambac I*"). Moreover, even if the Retention Legislation and Retention Orders fell within the scope of section 303(1) (and they do not), they would not be preempted as Movants contend. Section 303(1) is not preemptive; it only precludes binding creditors of the territory or territorial instrumentality *without their consent*. Here, the trustee would stand in HTA's shoes, and HTA would be the relevant creditor for purposes of section 303.[3] And HTA, through AAFAF and the Oversight Board as the debtor's representative, consents to the Commonwealth's retention of revenues. A trustee would be bound by that consent, precluding any application of section 303(1). *See infra* Section I.B.

4. *Second*, the proposed avoidance actions are not colorable. A fraudulent transfer claim must involve a debtor's transfer of its interest in property. But in light of this Court's holding that the Excise Taxes at issue belong to the Commonwealth, not HTA, HTA's property has not been transferred. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, --- B.R. ---, 2020 WL 3816135, at *12 (D.P.R. July 2, 2020) (the "HTA Stay Order") ("Movants have not demonstrated a legal basis for their assertion that Fund 278 monies are actually owned by HTA.") On that basis alone, the Trustee Motion should be denied. Even if HTA had a property interest, the Commonwealth's retention of Excise Taxes does not constitute a transfer by HTA. Indeed, the Proposed Complaint does not allege a transfer by HTA to the Commonwealth; the entire gravamen of the Proposed Complaint is about the Commonwealth's conduct, not HTA's. *See infra* Section II.A.

5. *Third*, even if HTA actually transferred an interest in its property (which it did not), Movants' proposed Bankruptcy Code section 549 claim is futile. Bankruptcy Code section 549

---

[3] AAFAF does not concede that HTA is a creditor of the Commonwealth and only raises this point to demonstrate the flaw in Movants' arguments.

3

does not apply here because any post-petition transfer from HTA would have been authorized by Title III of PROMESA, which reserves to the debtor the power to use its property as it sees fit. By its terms, section 549 is concerned only with a debtor's authority to use its property under Title III. To the extent HTA transferred its property to the Commonwealth, it did not need authority to do so under Title III or permission from the Court. HTA's transfer therefore was authorized for purposes of section 549. That is the essence of PROMESA section 305. *See In re Sanitary & Improv. Dist. No. 7*, 96 B.R. 967, 972 (Bankr. D. Neb. 1989) (rejecting Bankruptcy Code section 549 claim as inconsistent with governmental and political powers reserved to Chapter 9 debtor). Moreover, because the Commonwealth's retention of the Excise Taxes was an exercise of its governmental police power, it is categorically exempt from the automatic stay. *See infra* Section II.B.

6. Accordingly, for the reasons set forth more fully below and the independent reasons stated in the Oversight Board's Objection,[4] AAFAF respectfully requests that the Court deny the Trustee Motion in its entirety.[5]

## LEGAL STANDARD

7. The Court has "substantial discretion" in deciding whether to appoint a trustee, but

---

[4] In keeping with past practice, AAFAF does not join in with the Oversight Board's arguments regarding the preemptive effect of Title II of PROMESA and does not believe the Court needs to reach that issue here in light of the overwhelming number of reasons to deny the relief sought.

[5] Judicial efficiency concerns weigh strongly against appointment of a trustee. The theories the Proposed Complaint relies on—takings clause claims, contract clause claims, fraudulent transfer claims, and claims of violations of state law—are part and parcel of the Monolines' proofs of claim and the HTA revenue bond adversary proceeding being litigated in these Title III cases. *See* Claim No. 122277, Annex, ¶¶ 69(b), (f) (Ambac proof of claim asserting claims against the Commonwealth in connection with the HTA revenue bonds for alleged violations of the U.S. Constitution and Puerto Rico Constitution, fraudulent conveyance, and violations of Puerto Rico law); Claim No. 33081, Annex at 3-4, 10 (similar Assured proof of claim asserting claims against the Commonwealth for alleged violations of the U.S. and Puerto Rico Constitutions and violations of Puerto Rico law); Claim No. 30114, Addendum ¶¶ 14, 20 (similar National proof of claim); Claim No. 101243, Addendum, ¶¶ 52, 81 (similar FGIC proof of claim); *Fin. Oversight & Mgmt. Bd. for P.R.*, No. 20-00005 (D.P.R.). For that reason alone, the Trustee Motion should be denied. *See Andalusian*, 954 F.3d at 11 (1st Cir. 2020) ("[I]t was not an abuse of discretion for the Title III court to seek to avoid a proliferation of actions seeking essentially the same remedy.").

"should be very hesitant to appoint a trustee" in governmental bankruptcies. *Andalusian*, 954 F.3d at 7; *ERS Trustee Order*, 432 F. Supp. 3d at 29.

## ARGUMENT

### I. SECTION 303 OF PROMESA PROHIBITS APPOINTMENT OF A TRUSTEE TO FORCE THE COMMONWEALTH TO TRANSFER ITS REVENUES TO HTA.

8. PROMESA section 303 is a bedrock protection of the Commonwealth's authority to exercise its political and governmental powers over its instrumentalities notwithstanding that the Commonwealth and HTA filed Title III petitions. *See, e.g.*, *In re Jefferson Cty.*, 474 B.R. 228, 276 (Bankr. N.D. Ala. 2012) ("What is at the heart of § 903 is state control over a municipality's 'political or governmental powers.'"); *In re N.Y. City Off-Track Betting Corp.*, 434 B.R. 131, 144 (Bankr. S.D.N.Y. 2010). Section 303 provides, in relevant part:

> Subject to the limitations set forth in [PROMESA Titles I and II], [PROMESA Title III] does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality, including expenditures for such exercise, but whether or not a case has been or can be commenced under this subchapter—
>
> (1) a territory law prescribing a method of composition of indebtedness or a moratorium law, but solely to the extent that it prohibits the payment of principal or interest by an entity not described in section 109(b)(2) of Title 11, may not bind any creditor of a covered territory or any covered territorial instrumentality thereof that does not consent to the composition or moratorium;
>
> . . .
>
> (3) unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this chapter.

48 U.S.C. § 2163.

9. By providing Title III of PROMESA "does not limit or impair" the Commonwealth's "political or governmental powers" to "control, by legislation or otherwise, the

5

territory or any territorial instrumentality thereof," Congress recognized that provisions of the Bankruptcy Code it incorporated into PROMESA cannot be invoked to impair governmental powers absent government consent. 48 U.S.C. § 2163; *see also ERS Trustee Order*, 432 F. Supp. 3d at 30 ("Section 303 of PROMESA—which is modeled on Section 903 of the Bankruptcy Code—preserves the authority of territories to exercise 'political or governmental powers.'").

10. Simply put, provisions like Bankruptcy Code section 926 cannot be invoked to prevent the Government from exercising protected powers. As this Court held in describing the "sovereign character" of Title III debtors:

> The Title III Debtors are governmental entities. The commencement of a Title III case does not strip a governmental entity of the power to exercise substantial independence in its decision-making.

*In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-03283-LTS, Dkt. No. 3941 at 5-6 (D.P.R. Sept. 18, 2018) ("GDB Order").

11. Section 303's protections are subject only to the limitations in Titles I and II of PROMESA, and no provision of those titles (which are only enforceable by the Oversight Board) allows the relief requested here. As a consequence, the plain language of section 303 makes clear that Bankruptcy Code sections cannot be invoked to impair or limit the Commonwealth's exercise of its governmental power. *See ERS Trustee Order*, 432 F. Supp. 3d at 30-31. Thus, the Trustee Motion cannot be granted because it would interfere with the Commonwealth's exercise of its governmental powers: its express aim is to force HTA to seek to undo the Commonwealth's control of it, and to invalidate numerous Commonwealth laws, Fiscal Plans, and certified Budgets.

    A. **The Retention Orders and Retention Legislation Are Exercises of Political and Governmental Powers Protected from Interference in Title III.**

12. The Retention Legislation and the Retention Orders fall within the ambit of Section 303's protections. For instance, the Moratorium Act included legislative findings that "[t]he

6

people of Puerto Rico are faced with a humanitarian crisis" and that this "grave fiscal emergency" threatened Puerto Rico's "ability to honor its outstanding obligations while protecting the health, safety and welfare of the inhabitants of Puerto Rico." Moratorium Act, § 102. It was enacted "in the exercise of [the Government's] police powers, to provide essential government services and safeguard the interest of all the Commonwealth's stakeholders, including its creditors." *Id*. Similarly, the Fiscal Plan Compliance Law was enacted to give the Commonwealth the tools "to comply with the Fiscal Plan imposed under the provisions of PROMESA." Compliance Law, Statement of Motives at 8.[6]

13. These are all exercises of the Commonwealth's governmental and political powers to address an ongoing fiscal crisis and to ensure compliance with the Oversight Board-certified Commonwealth Fiscal Plan. Accordingly, section 303 of PROMESA precludes Movants from using Bankruptcy Code section 926 to undermine the Government's decision-making.

### B. The Retention Orders and Retention Legislation Are Not Preempted by PROMESA Section 303.

14. Movants seek to evade the impact of section 303 by arguing that it does not apply here because the exceptions in section 303(1) and 303(3) mean that the Retention Legislation, Retention Orders, HTA's Fiscal Plans, or HTA's budgets are illegal moratorium acts that are preempted by PROMESA and thus fall outside of section 303's protections. This Court has

---

[6] The Retention Orders were similarly issued to ensure the continuation of essential public services. *See, e.g.*, Executive Order "OE" 2016-030 [ECF 13711-16] (extending among other things the suspension of HTA's obligation to transfer revenues to the Fiscal Agent for bond repayment in light of the fiscal crisis, which made it a necessity "to take extraordinary measures . . . to ensure the continuation of essential government operations"); OE-2016-031 [ECF 13711-16] (continuing among other things the effect of OE-2016-030 "to ensure the continuation of essential government operations"); OE-2017-031 [ECF 13711-16] (extending executive orders passed under authority of Act 21-2016 in order to allow "for the continued provision of essential services to the People of Puerto Rico"); OE-2017-076, OE-2018-023, OE-2018-053 & OE-2019-030 [ECF 13711-16] (each extending the emergency period "to have the tools needed to work with the fiscal challenges the Government of Puerto Rico and its instrumentalities are facing"); OE-2019-066 & OE-2020-050 [ECF 13711-16] (each extending the emergency period "in order to continue . . . providing services to the residents of Puerto Rico").

7

already rejected that argument on the merits; when Ambac asserted materially identical preemption arguments in its own name, this Court held that section 303(1) "was enacted to bar territories from establishing their own bankruptcy-like debt restructuring process." *Ambac I*, 297 F. Supp. 3d at 291. The Retention Legislation and the Retention Orders do not fall within the scope of section 303(1) because they "do not empower the Commonwealth to discharge, cancel or force surrender of any bonds" and "neither prohibit the payment of principal and interest nor purport to bind creditors to any reduction of the outstanding obligations." *Id.* at 291-92.[7] The Retention Orders are similarly not "unlawful" within the meaning of section 303(3) because they were issued pursuant to duly enacted Puerto Rico statutes. *See* Moratorium Act, § 201(a); Fiscal Responsibility Act (Act 5-2017), §§ 202-203, 206.

15. But even assuming that the Retention Legislation and Retention Orders (or Fiscal Plans or Budgets) fall within the scope of PROMESA sections 303(1) and 303(3), which they do not, these provisions still would not support the Trustee Motion. Section 303(1) does not "preempt" any Commonwealth laws, Fiscal Plans or Budgets—"[i]t only declares that prohibitions of interest or principal payments do not have binding effects on creditors," *Ambac I*, 297 F. Supp. 3d at 291, if the creditor "does not consent to the composition or moratorium," 48 U.S.C. § 2163(1). Here, if there is a relevant creditor, it is HTA (not Movants), as Movants seek to stand in HTA's shoes. But AAFAF and the Oversight Board as HTA's representatives do not object to the Commonwealth's retention of the Excise Taxes. HTA is bound by that consent, and the appointment of a trustee under Bankruptcy Code Section 926 cannot undo that consent.

## II. MOVANTS' PROPOSED AVOIDANCE CLAIMS ARE FUTILE.

16. To justify appointment of a trustee, Movants have the burden to demonstrate that

---

[7] In addition, the Retention Orders are not "territory laws" subject to section 303(1).

8

the avoidance claims the trustee would pursue are viable. *See, e.g.*, 6 Collier on Bankr. ¶ 926.02 ("In order for a judge to make the decision required by section 926, the requesting creditor will be required to present a substantial showing, both factual and legal, of the likelihood of the existence of a voidable transfer."); *see also In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 515 (Bankr. S.D.N.Y. 2016) (a party seeking derivative standing must "present[] colorable claims for relief 'that on appropriate proof would support a recovery'" (citation omitted)), *aff'd,* 562 B.R. 211 (S.D.N.Y. 2016). Movants cannot make this showing.

### A. HTA Never Made an Avoidable Transfer.

17. Each of Movants' proposed avoidance claims requires a showing that HTA has transferred an interest in its property to the Commonwealth. *See* 11 U.S.C. § 544 (trustee may avoid certain "transfer[s] of property of the debtor" that is voidable by law) (allowing trustee to avoid certain pre-petition "transfer[s] of an interest of the debtor in property"); *id.* § 549 (allowing trustee to avoid certain post-petition "transfer[s] of property of the estate"). Fundamentally, there has been no transfer of anything by HTA, or even the Commonwealth. Per the Court's prior ruling, the Excise Taxes at issue were the Commonwealth's property and have remained the Commonwealth's property. *See* HTA Stay Order at 12.[8]

18. Because the Excise Taxes do not belong to HTA, HTA could not have "transferred" its property interest in them to the Commonwealth. *See, e.g.*, *In re Costas*, 555 F.3d 790, 793 (9th Cir. 2009) ("[A]s the definition [under the Bankruptcy Code] makes clear, a 'transfer' cannot occur

---

[8] For the same reason, Movants' argument that the Trustee Motion must be granted to remedy a substantive consolidation is a non-sequitur. Trustee Motion ¶¶ 58, 71-75. Substantive consolidation involves mixing property between two or more debtors based on application of a variety of equitable factors, including creditor expectations, lack of corporate formalities, and the impossibility of disentangling the assets and liabilities of each debtor. Here, the Court ruled that the Excise Taxes are not HTA's property based on consideration of statutory provisions, creditor expectations, equitable considerations, and commingling that had nothing to do with the Court's decision. *A fortiori*, the Commonwealth's retention of Excise Taxes cannot constitute a substantive consolidation between HTA and the Commonwealth.

9

without 'property' or 'an interest in property.'"); *In re Alicea Casanova*, 595 B.R. 616, 618 (Bankr. D.P.R. 2018) ("[F]or a debtor to transfer property, the debtor must first have an interest in that property."). Similarly, the Commonwealth's use of its own property is not a "transfer" of an interest in HTA's property to anyone. *See, e.g.*, *In re Messia*, 184 B.R. 176, 177 (Bankr. D. Mass. 1995) ("Inherent in the [Bankruptcy Code definitions of 'transfer'] is a requirement that a 'transfer' include the acquisition of an interest by a third party."). The Commonwealth's previous allocation of Excise Taxes to HTA was always subject to the Commonwealth's right to retain the revenues. *See, e.g.*, 13 L.P.R.A. § 31751(a)(1)(C) (making allocation to HTA subject to section 8 of Article VI of the Puerto Rico Constitution). The Commonwealth's exercising that right is not a "transfer" from HTA. *See, e.g.*, *In re LiTenda Mortg. Corp.*, 246 B.R. 185, 191 (Bankr. D.N.J. 2000) (holding that Freddie Mac's exercising its contractual option to terminate debtor's mortgage servicing rights was not a "transfer" within the meaning of the Bankruptcy Code).

      **B.**      **Movants Lack a Colorable Section 549 Claim Because Any Purported "Transfer" Would Have Been Authorized Under Title III.**

      19.      Bankruptcy Code section 549 provides that a debtor may avoid a post-petition transfer of its property that is not authorized by Title III or the Title III Court. 11 U.S.C. § 549; 48 U.S.C. § 2161. Movants argue that section 549's requirement that a transfer be authorized means that if they assert any theory upon which a transfer is illegal, it was automatically "unauthorized." Not so; section 549 is much narrower. A transfer is only invalid under section 549 if it was unauthorized under "this title." 11 U.S.C. §549. "This title" refers only to Title III of PROMESA. *See* 48 U.S.C. § 2161(d) ("[R]eference to 'this title' . . . in a section of title 11 made applicable in a case under this subchapter . . . shall be deemed to be a reference to this subchapter."). Thus, even if the Commonwealth's retention of the Excise Taxes could be deemed a transfer of an interest in HTA's property to the Commonwealth (and it cannot), a trustee would

10

still lack a colorable Bankruptcy Code section 549 claim because the transfer would be authorized by Title III.

20. Title III reserves to a debtor the power to use its property as it sees fit without any need for affirmative authorization. Here, to the extent HTA transferred away its property (and it has not), no authorization was needed from the Court. As this Court has recognized, Title III "provides for significant deference to the prerogatives of the governmental debtors and of their statutory representative and makes clear that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets." *ERS Trustee Order*, 432 F. Supp. 3d at 30. For instance, PROMESA does not incorporate Bankruptcy Code Section 363, which requires a debtor to obtain court permission to use its property. 48 U.S.C. § 2161(a); 11 U.S.C. § 363. This is made explicit by section 305, which precludes court interference with a debtor's use of property without Oversight Board consent. 48 U.S.C. § 2165; *see, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders*, 899 F.3d 13, 21 (1st Cir. 2018) ("[W]e read Section 305 as respectful and protective of the status of the Commonwealth and its instrumentalities as governments . . . ."); *Andalusian*, 954 F.3d at 9 (agreeing that appointment of a trustee "to undo a transfer in the exercise of the debtor's political or governmental functions, or in control of its income or property may constitute an interference with those powers or with that property" prohibited by section 305 (internal quotation marks omitted)). Accordingly, in the absence of an express provision precluding a particular use of property (for instance, an interim compensation payment in contravention of section 317), the debtor's use of its property is authorized by Title III. *See In re Sanitary & Improv. Dist. No. 7*, 96 B.R. at 972 (denying section 549(a) claim in chapter 9, explaining "[s]ince this Court has no right to interfere with the governmental or political operations of the debtor or to interfere with debtor's use of its property,

11

except in the confirmation process, any use of debtor's property by debtor is 'authorized under this title.' The debtor is free to use its property and the bankruptcy court cannot approve or disapprove of such use."). Thus, to the extent any transfer from HTA to the Commonwealth took place, that transfer was authorized by Title III.

21. Movants' contention that HTA's transfer of the Excise Taxes constitutes a stay violation and is therefore not authorized by Title III is meritless. *See* Trustee Motion ¶ 23. To the extent Movants contend the Commonwealth's retention of its own property is a violation of HTA's automatic stay, that argument should be rejected. In retaining its own revenues, the Commonwealth has not taken any action against HTA or HTA's property to which the automatic stay could apply. *See* 11 U.S.C. § 362; *see also In re Smith*, 910 F.3d 576, 578 (1st Cir. 2018) ("The filing of a petition for bankruptcy stays collection actions against the debtor, the debtor's property, and property of the bankruptcy estate"). Even assuming HTA transferred funds to the Commonwealth, and it did not, to read Bankruptcy Code section 362 as precluding HTA from making those transfers would violate PROMESA sections 303 and 305. *See, e.g.*, *In re City of Stockton*, 486 B.R. 194, 198-99 (Bankr. E.D. Cal. 2013) ("[T]he bankruptcy court cannot prevent a chapter 9 debtor from spending its money for any reason, even foolishly or in a manner that disadvantages other creditors, unless the municipality consents to such judicial oversight."). Moreover, because the Retention Legislation and the Retention Orders were enacted and issued as an exercise of the Commonwealth's police power to ensure the continuation of public services in order to protect the health, safety, and welfare of the citizens of Puerto Rico (*see supra* Section I.A), they are categorically exempt from the automatic stay both under PROMESA section 303 and under Bankruptcy Code section 362. *See, e.g.*, GDB Order at 5-7 (automatic stay cannot be construed to restrict exercise of powers reserved to the Government under sections 303 and 305);

12

11 U.S.C. § 362(b)(4) (exempting government exercise of police and regulatory power from the stay); *In re McMullen*, 386 F. 3d 320, 325 (1st Cir. 2004) (governmental acts "designed primarily to protect the public safety and welfare" are exempt from the automatic stay).

## CONCLUSION

22. The Movants' request to appoint a trustee under section 926 of the Bankruptcy Code should be denied for the reasons set forth above.

Dated: July 31, 2020
      San Juan, Puerto Rico

Respectfully submitted,

| /s/ Peter Friedman | /s/ Luis C. Marini-Biaggi |
|---|---|
| John J. Rapisardi<br>Nancy Mitchell<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>7 Times Square<br>New York, New York 10036<br>Tel: (212) 326-2000<br>Fax: (212) 326-2061 | Luis C. Marini-Biaggi<br>USDC No. 222301<br>Email: lmarini@mpmlawpr.com<br><br>Carolina Velaz-Rivero<br>USDC No. 300913<br>Email: cvelaz@mpmlawpr.com |
| -and-<br><br>Peter Friedman<br>(Admitted *Pro Hac Vice*)<br>1625 Eye Street, NW<br>Washington, D.C. 20006<br>Tel: (202) 383-5300<br>Fax: (202) 383-5414 | **MARINI PIETRANTONI MUÑIZ LLC**<br>250 Ponce de León Ave., Suite 900<br>San Juan, Puerto Rico 00918<br>Tel: (787) 705-2171<br>Fax: (787) 936-7494<br><br>*Co-attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |
| -and-<br><br>Elizabeth L. McKeen<br>Ashley M. Pavel<br>(Admitted *Pro Hac Vice*)<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 823-6900<br>Fax: (949) 823-6994<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* | |