# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | (Jointly Administered) |
| Debtors.[1] | |

**URGENT MOTION REQUESTING A RULING OR ENTRY OF COMFORT ORDER AS TO THE NON-APPLICABILITY OF THE AUTOMATIC STAY TO A LIMITED CONTROVERSY WITH THE COMMONWEALTH OF PUERTO RICO ARISING POST-PETITION AND HAVING POST-PETITION EFFECTS BUT PARTIALLY BASED ON A PRE-PETITION JUDGMENT INCORPORATING MILK REGULATIONS ESTABLISHED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO AND NOT INVOLVING <u>PROPERTY OF THE DEBTOR OR ITS ESTATE</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Table of Contents**

| | | |
|---|---|---|
| I. | SUMMARY OF ARGUMENT | 1 |
| II. | ARGUMENT | 3 |
| III. | CERTIFICATION AS TO URGENCY OF MATTER | 8 |

# TABLE OF AUTHORITIES
## CASES

*Cf. Matter of M. Frenville, Inc.,* 744 F.2d 332 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). ...................................................................................................................................... 7
*Acevedo v. Van Dorn Plastic Machinery Co.,* 68 B.R. 495 (Bankr.E.D.N.Y.1986) ................................ 7
*In re A.H. Robins Co.,* 63 B.R. 986 (Bankr.E.D.Va.1986) ..................................................................... 7
*In re Black,* 70 B.R. 645 (Bankr.D.Utah 1986) ...................................................................................... 6
*In re Edge,* 60 B.R. 690 (Bankr.M.D.Tenn.1986) .................................................................................. 7
*In re Financial Oversight & Management Bd. For Puerto Rico*, 919 F.3d 121 (2019) ........................... 7
*In re Johns–Manville Corp.,* 57 B.R. 680 (S.D.N.Y.1986) .................................................................... 7
*In re McMullen,* 386 F.3d 320, 330 (1st Cir.2004) ................................................................................ 6
*In re Soares,* 107 F.3d at 975 ................................................................................................................. 6
*Laboy v. Doral Mortg. Corp. (In re Laboy),* 647 F.3d 367, 374 (1st Cir.2011) ..................................... 6
*LF Rothschild & Co., Inc. v. Angier*, 84 B.R. 274, 277 (D. Mass. 1988) ............................................... 6
*Matter of Baldwin–United Corp.,* 48 B.R. 901 (Bankr.S.D.Ohio 1985) ................................................ 7
*Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 971 (1st Cir.1997) .............................. 6

## FEDERAL STATUTES

11 U.S.C. 363(a)(3) ............................................................................................................................ 7, 11
362(a) ........................................................................................................................................................ 5
48 U.S.C. § 2101 .................................................................................................................................... 12
48 U.S.C. § 2101, et seq .......................................................................................................................... 5
48 U.S.C. § 2161 .................................................................................................................................. 5, 7

## PUERTO RICO RULES AND REGULATIONS

Regulation No. 1 of June 11, 1957 ........................................................................................................... 3

## TREATISES

Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2015) ...................... 8

## ADMINISTRATIVE ORDERS

Administrative Order 2020-22 .......................................................................................................... 4, 5, 6

## PUERTO RICO LAWS

5 L.P.R.A. Sec 1092(i) ............................................................................................................................. 5
5 P.R. Laws Ann. §§ 1092-1125 .............................................................................................................. 3

COMES NOW, creditor Suiza Dairy Corp. ("Suiza"), represented by the undersigned attorneys, and very respectfully avers and prays as follows:

I. **SUMMARY OF ARGUMENT**

Suiza is one of only two fresh milk processors in Puerto Rico. Suiza serves the biggest portion of that market. In 2004, Suiza successfully challenged in federal court the constitutionality, as implemented, of the laws and regulations that govern the milk industry in Puerto Rico, particularly the Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§ 1092-1125 ("Act 34") and Regulation No. 1 of June 11, 1957 ("Milk Regulation No. 1") as subsequently amended, under the Takings Clause of the Constitution of the United States. On October 29, 2013 the parties to the action filed their Final Settlement Agreement And Memorandum Of Understanding Between The Parties (the "Settlement Agreement") (D.E. 2322). The Settlement Agreement was incorporated into the final federal judgment ("Judgment") entered in Civil Case No. 04-1840.

The Judgment against the Commonwealth of Puerto Rico also incorporates a set of regulations to cover many aspects of the milk industry which the court found at the time to be in disarray due to discriminatory and arbitrary regulation. One of those provisions defined the key concept of "surplus milk" and referenced the "balance plant" Indulac, the then government entity in charge of using milk for derivative products of lesser margin for the dairy farmer. Said regulations deal with the way of disposing of said milk by the fresh milk processors and the balance plant. In essence, no milk goes to the balance plant until the demand for it by the fresh milk processors is satisfied.

1

By July 10, 2020, Mr. Jorge A. Campos Merced, as Administrator of the Office of Regulation of the Milk Industry (Spanish acronym "ORIL"), issued Administrative Order 2020-22 ("Administrative Order") changing the Judgment's definition of surplus milk from milk produced in excess of the needs for the market for **fresh** milk to milk exceeding the demand for **fluid** milk. With that pretext the Administrative Order amended the established regulatory scheme to order delivery of raw milk to Indulac that is needed by Suiza, who pays a higher price for it than Indulac.

The action by ORIL has had a detrimental effect on Suiza, by setting up Indulac, as a direct competitor to Suiza while purchasing, at substantially lower prices, the raw milk needed by Suiza, thus causing damages to Suiza and the dairy farmers.

In an abundance of caution, Suiza seeks a ruling or comfort order from this Court, before initiating a proceeding with the sole purpose of enforcing the Judgment and its regulations against the Commonwealth of Puerto Rico. We seek an order holding that the events giving rise to Suiza's enforcement of action constitute post-petition events, with post-petition effects, although they run afoul of holdings in a pre-petition federal judgment. More specifically, Suiza seeks a finding that it is not acting in contravention of the automatic stay provisions of Sections 362(a) and 922(a) of the Bankruptcy Code, incorporated by 48 U.S.C. § 2161 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, et seq, in pursuing its enforcement action against the Commonwealth. Suiza clarifies that it is not attempting to pursue collection of a pre-petition debt or pre-petition breach by pursuing its cause of action more fully described below, nor it is attempting to exercise control or possession over property of the estate, since the milk involved belongs to the dairy farmers and not the Commonwealth.

2

**II. ARGUMENT**

Suiza successfully challenged in federal court against the Commonwealth of Puerto Rico, the constitutionality, as implemented, of the laws and regulations that govern the milk industry in Puerto Rico, particularly Act 34 and Regulation No. 1, as subsequently amended, under the Takings Clause of the Constitution of the United States Suiza sought declaratory and injunctive relief before the United States District Court for the District of Puerto Rico Civil Case No. 04-01840 (DRD). On July 13, 2007, the district court entered its Amended Opinion and Order Granting Preliminary Injunction (D.E. No. 480).

On October 29, 2013, the parties to the action filed their Settlement Agreement (D.E. 2322). The same was incorporated into the Judgment.

Among the many milk industry governance provisions of the Judgment, the same contains a definition of surplus milk as milk exceeding the demands for fresh milk as contemplated by Act 34. See 5 L.P.R.A. Sec 1092(i), which defines surplus milk as […milk produced in excess of the needs for the market for **fresh milk**…" (emphasis added) and used to produce derivative products.

On July 10, 2020, Mr. Jorge A. Campos Merced, as Administrator of the Office of Regulation of the Milk Industry (Spanish acronym "ORIL"), issued the Administrative Order. *See,* Ex. 1. Under the newly issued Administrative Order, the statutory and regulatory definition of surplus milk was changed from milk produced in excess of the needs for the market for **fresh** milk to milk exceeding the demand for **fluid** milk. Moreover, the Administrative Order amended the established regulatory scheme of the Judgment to order delivery of raw milk to the balance plant Indulac that is needed by Suiza, who pays a higher price for it than Indulac. By giving Indulac milk that the fresh milk processors need, the Administrative Order illegally changed the "balance plant" nature of Indulac contemplated in the Judgment. As a result, it places Indulac in square

3

competition with Suiza by receiving raw milk that Suiza could use, and moreover at a lesser price than that paid by Suiza. The net result is that the milk producing farmers receive less from Indulac than from Suiza and Suiza's business operations would suffer substantial economic loss under the unilateral and illegal action undertaken by ORIL. Under the statutory and regulatory scheme prior to the issuance of the Administrative Order, Indulac had no access to milk until the same became lawfully surplus, that is, until the fresh processors demand was satisfied. The Administrative Order unlawfully altered the established and accepted distribution order. The actions by ORIL were undertaken in violation of the Judgment. Suiza seeks to correct ORIL's illegal conduct by seeking enforcement of the Judgment in federal court.

It is the intention of Suiza to take the appropriate actions to defend its rights to rational non-discriminatory and non-arbitrary regulation before the United States District Court for the District of Puerto Rico in Civil Case No. 04-01840 (DRD), using all available remedies in its favor, in order to stem the substantial damages that will be suffered by the implementation of Administrative Order by ORIL. Suiza's intended post-petition action does not seek to obtain control or possession of property of the estate. *See*, 11 U.S.C. 363(a)(3). The milk belongs to the dairy farmers, not the Commonwealth. To the contrary, it will increase the benefit to the estate since the government will ultimately benefit from the acquisition of raw milk by Suiza at higher prices than Indulac. In an abundance of caution, Suiza first seeks the entry of an Order by this Honorable Court finding that no violation of the automatic stay under Sections 362(a) and 922(a) of the Bankruptcy Code, incorporated by 48 U.S.C. § 2161, will take place if Suiza defends its interests as stated above.

11 U.S.C. § 362(a) provides as follows:

4

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
> (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
> (8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

As it pertains to 11 U.S.C. § 922(a), it provides as follows:

> (a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor; and
> (2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor.

The automatic stay in 11 U.S.C. § 362(a) is one of the basic protections under the Bankruptcy Code and becomes operative by the filing of the bankruptcy petition. *Soares v.*

5

*Brockton Credit Union (In re Soares),* 107 F.3d 969, 971 (1st Cir.1997). The automatic stay is extremely broad in scope and, "aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." Alan N. Resnick & Henry J. Sommer, 3 *Collier on Bankruptcy* ¶ 362.03 (16th ed. 2015). Furthermore, the automatic stay also protects creditors since it prevents the "dismemberment of a debtor's assets by individual creditors levying on the property. This promotes the bankruptcy goal of equality of distribution" *Id.* The automatic stay provides debtors with one of the cornerstone protections under bankruptcy law, giving debtors a "breathing room" from the pressures of their creditors. *See In re Soares,* 107 F.3d at 975. Given its utmost importance in the bankruptcy system, courts "must display a certain rigor in reacting to violations of the automatic stay." *In re Soares,* 107 F.3d. at 975–976.

The First Circuit in *Laboy v. Doral Mortg. Corp. (In re Laboy),* 647 F.3d 367, 374 (1st Cir.2011) stated the following regarding whether a violation is deemed "willful:" "[a] violation is 'willful' if a 'creditor's conduct was intentional (as distinguished from inadvertent), and committed with knowledge of the pendency of the bankruptcy case.' " *In re Laboy,* 647 F.3d. at 374 citing *In re McMullen,* 386 F.3d 320, 330 (1st Cir.2004).

In *LF Rothschild & Co., Inc. v. Angier*, 84 B.R. 274, 277 (D. Mass. 1988) the court stated that *"*Relying upon Congress' expansive definition of "claim", courts have applied bankruptcy discharges and automatic stays to post-petition claims arising out of the debtor's pre-petition conduct, even when the debtor's cause of action was not mature under state law until after the bankruptcy filing. *See In re Black,* 70 B.R. 645 (Bankr.D.Utah 1986) (automatic stay applied to cross-claim for indemnification or contribution arising out of pre-petition business transaction, even when, under state law, claimant's cause of action would first arise upon commencement of

6

Case:17-03283-LTS Doc#:13938 Filed:08/03/20 Entered:08/03/20 16:09:17 Desc: Main
Document Page 10 of 13

litigation against it); *Acevedo v. Van Dorn Plastic Machinery Co.,* 68 B.R. 495 (Bankr.E.D.N.Y.1986) (indemnity and contribution actions stemming from pre-petition tort were pre-petition claims subject to bankruptcy court jurisdiction); *In re A.H. Robins Co.,* 63 B.R. 986 (Bankr.E.D.Va.1986) (whether a claim arises pre- or post-petition depends on when debtor's conduct, on which the claim is based, occurred; thus, Dalkon Shield claim arose, for bankruptcy purposes, when product was inserted, and not when claimant first became aware of her injury); *In re Edge,* 60 B.R. 690 (Bankr.M.D.Tenn.1986) (under the Bankruptcy Code, a claim against a Chapter 7 debtor "arises at the time of the negligent act, notwithstanding that access to the courts or the running of the statute of limitation may be timed from some other point in the relationship between tortfeasor and victim"); *In re Johns–Manville Corp.,* 57 B.R. 680 (S.D.N.Y.1986) (since Congress intended "claim" to include "remote or contingent" obligations, a claim arises, for bankruptcy purposes, at the time when the acts giving rise to the alleged liability were performed, and the automatic stay applies to indemnification or contribution actions based on such claims); *Matter of Baldwin–United Corp.,* 48 B.R. 901 (Bankr.S.D.Ohio 1985) (automatic stay applied to post-petition claim for contribution or indemnity based on pre-petition conduct). *Cf. Matter of M. Frenville, Inc.,* 744 F.2d 332 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985)."

Section 922(a) expands the scope of the Section 362 automatic stay in Chapter 9 cases to "action[s] or proceeding[s] against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor," and to "enforcement of a lien on or arising out of taxes or assessments owed to the debtor." 11 U.S.C. § 922(a). In re *Financial Oversight & Management Bd. For Puerto Rico*, 919 F.3d 121 (2019).

7

The cause of action to be pursued by Suiza arises out of post-petition events, and has solely post-petition effects, therefore it does not run contrary to the stay provisions stated in Sections 362(a) and 922(a) cited above. Moreover, Suiza is not claiming against an officer of the Commonwealth for a pre-petition claim or breach by the government, therefore Section 922(a) is inapplicable. Suiza's intended action does not seek to obtain control or possession of property of the estate. See, 11 U.S.C. 363(a)(3). To the contrary, it will increase the benefit to the estate since the government will ultimately benefit from the acquisition of raw milk by Suiza at higher prices than Indulac. The remedies to be sought by applicant herein do not involve the collection by Suiza of any monetary remedy in its favor determined in the pre-petition judgment, nor the advancement of any pre-petition collection of money action or breach of contract cause of action against the Commonwealth or ORIL. Suiza intends to get redress for the post-petition actions taken by ORIL, which have solely post-petition effects, will cause actual damages, to Suiza.

As stated above, the relief to be sought at the district court in Civil Case No. 04-01840 (DRD) does not involve either a claim against property of the debtor or the estate, nor an action against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor or to enforce a lien on or arising out of taxes or assessments owed to the debtor. Thus, the declaratory or comfort order remedy being sought in the instant motion is proper.

### III. CERTIFICATION AS TO URGENCY OF MATTER

Pursuant to LBR 9013-1(a), the undersigned certify that they have carefully examined the matter and have concluded that there is a true need for an urgent hearing, the urgency has not been crested through a lack of due diligence, they have made a bona fide effort to resolve the matter without a hearing but due to the nature of the relief sought no agreement is possible. *See*, Ex. II.

8

(Letter to Mr. Jorge A. Campos Merced and Certified Translation), and Ex. III (Motion to Reconsider before ORIL and Certified Translation).

WHEREFORE, Suiza respectfully requests that the Court:

A. enter a ruling or comfort order finding that Suiza is not acting in contravention of the automatic stay provisions of Sections 362(a) and 922(a) of the Bankruptcy Code, incorporated by 48 U.S.C. § 2161 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, et seq., nor is attempting to exercise control over or obtain possession over property of the estate in pursuing the cause of action stated in this motion;

B. set a response time of 14 days for the Financial Oversight and Management Board to file its response, if applicable;

C. schedule the matter at its earliest date outside the scheduled omnibus hearing dates; and,

D. that the Court provide any other relief in favor of Suiza it deems proper.

**RESPECTFULLY SUBMITTED.**

*(Signatures in next page.)*

9

Dated: August 3, 2020

REICHARD & ESCALERA, LLC
*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

*/s/Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/Fernando Van Derdys
Fernando Van Derdys
USDC-PR 201913
fvander@reichardescalera.com

*/s/ Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

## CERTIFICATE OF SERVICE

I hereby certify that, on August 3, 2020, I filed the instant motion through the Court's CM/ECF system, which will send notification of such filing to all CM/ECF participants, in compliance with the case management order in the case.

/s/Alana M. Vizcarrondo-Santana

10