# Exhibit II

# Reichard & Escalera LLC
## Attorneys and Counsellors at Law

MCS PLAZA BUILDING
TENTH FLOOR
255 PONCE DE LEON AVENUE
SAN JUAN, PUERTO RICO 00917-1913
TELEPHONE (787) 777-8888

P.O. BOX 364148
SAN JUAN, PR 00936-4148
FAX (787) 765-4225
http://www.reichardescalera.com
counsellors@reichardescalera.com

**RAFAEL ESCALERA-RODRÍGUEZ**
escalera@reichardescalera.com
Direct Dial (787) 777-8877

July 17th, 2020

Agro. Jorge A. Campos-Merced    jcampos@agricultura.pr.gov
Administrator
Oficina de Reglamentación de Industria Lechera
Apdo. 10163
San Juan, PR 00908-1163

Dear Mr. Campos-Merced:

We write to you on behalf of and as legal counsels to Suiza Dairy Corp. ("Suiza") in connection with your recent Administrative Order No. 2020-22 ("Order"). The same changes the statutory and regulatory definition of surplus milk and orders delivery of raw milk to Indulac that is needed by Suiza who pays a higher price for it than Indulac. By giving Indulac milk that the fresh milk processors need you are illegally changing the "balance plant" nature of Indulac. All this is done in violation of the applicable local law, existing regulations and the judgment of the federal court in case 04-1840.

It is the position of Suiza that the Order is illegal, null and void for several reasons that we outline below. This is a formal petition for you to withdraw said Order and prevent Suiza from seeking judicial redress for the protection of its rights. We begin by addressing your violations of local law, despite the fact that your violations of a federal Judgment may be even more serious.

1. **Local Law Violations**

*First*, your Order illegally changes the clear definition of surplus milk contained (as you yourself indicated at page 2 of your Order) in Law No. 34 of June 11, 1957, as amended ("Law No. 34"). See 5 L.P.R.A. Sec 1092(h). According to Law No. 34, "surplus milk is milk produced in excess of the needs for the market for **fresh milk...**" (emphasis added) and used to produce derivative products. Your Order defines surplus milk as that exceeding the demand for **fluid** milk. Despite your review of multiple regulations, subsequent laws and even the judgment of the federal court in Case No. 04-1840 ("Judgment"), there is nothing that indicates that the clear definition of the law that persists today can be overruled by an order of the Administrator of ORIL. No administrative body can go against the law of Puerto Rico. The Supreme Court of Puerto Rico has

**Reichard & Escalera LLC**

Agro. Jorge A. Campos-Merced
July 17th, 2020
2

made that elementary principle clear. We cite in the original Spanish language: ("[C]uando la legislatura delega en una agencia el poder para promulgar reglamentos, éstos, para ser válidos, no pueden estar en conflicto con las normas establecidas en la propia ley... [Una] actuación administrativa claramente en conflicto, o en contra de la ley, es nul[a]...**[E]l texto de una ley jamás debe entenderse modificado o suplantado por el reglamentario, por lo que, de existir cualquier conflicto entre el texto de la ley y su reglamento, debe prevalecer el de la ley.**" *Yiyi Motors, Inc. v. E.L.A.* 177 D.P.R. 230, 248 (2009)). (Emphasis added).

*Second*, there is no doubt that Indulac is a "balance plant" that handles only surplus (as defined by law) once the fresh milk processing plants have satisfied their demand for raw milk. In other words, Indulac receives only the milk that the fresh milk processors do not retain. The Order requires delivery to Indulac of milk that Suiza would otherwise retain.

Regulation 10 which you yourself cite at page 6 of the Order indicates that milk produced in Puerto Rico will be used in order of priority first by the fresh milk processors and the surplus by the processing plants and Indulac specifically identified therein as the "balance plant". See Sec. 8(b). Indulac has no access to milk until the same becomes lawfully surplus that is until the fresh processors demand is satisfied.

ORIL cannot under the pretext of an interpretative ruling change a legislative regulation disregarding completely, the rulemaking process established by law. See 3 L.P.R.A. §2121-2123; 3 L.P.R.A. §2102; *Mun. de San Juan v. J. C. A.*, 152 D.P.R. 673, 690–691, 695, 698 (2000). Again in Spanish: ("[S]e ha establecido que una regla legislativa es aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley... Si lo establecido en la resolución referida es consistente con lo que fijan los reglamentos en cuestión, la resolución sólo tendría carácter interpretativo. En cambio, si la resolución modifica lo que los reglamentos disponen, tendría carácter legislativo... [cuando] se trata [...] de una regla legislativa, [debe ser] aprobada mediante el procedimiento establecido por la LPAU para la aprobación de reglamentación administrativa. [Cuando es] aprobada en violación a lo dispuesto por la LPAU, la resolución [...] es nula.").

Regulation 10 also provides that no milk would be used for a product that results in a lesser profit margin for the farmer when a use with a higher margin is available. As shown hereinbelow when discussing federal violations, Suiza pays a higher price for the raw milk than Indulac does.

2. **Violations of the Federal Judgment**

We turn now to your violations of the federal Judgment. Needless to say, ORIL has no authority to disobey or disregard a federal Judgment against it. See *Feliciano v. Vila*, 2007 WL 4404730 (D.P.R. 2007). ("[A public official] is like a corporate official in that he must do all that what he reasonably can to see that a court order is obeyed." You should note that the United States district courts have the inherent authority and duty to protect and effectuate their

**Reichard & Escalera LLC**

Agro. Jorge A. Campos-Merced
July 17th, 2020
3

judgments and to punish disobedience of or resistance to their lawful orders and decrees. *Morales Feliciano v. Roselló González*, 124 F. Supp. 2d 774, 784 (D.P.R. 2000), citing, *First Sec. Nat. Bank and Trust v. U.S.*, 382 U.S. 34, 35 (1965).

*Third*, when at page 7 you refer to the federal Judgment that binds you, you omit to indicate that the regulations that were adopted and made a part of the same (Regulation 12) clearly contain the same definition of surplus milk you attempt to discard now. Sec. 4(22) of said regulation at page 4 of Dkt. No. 2322-1 reads as follows:

> Surplus - part of the raw milk production that is **not retained** by the processing plants to process **fresh milk**. (Emphasis added).

Thus, by attempting to change this definition in your Order you violate not only local law but the federal Judgment.

*Fourth*, the federal court repeatedly and throughout the judicial process took the position as advanced by Indulac that the latter was nothing more than a "balance plant" that received the surplus milk that the fresh milk processors did not want. That position is contained in too many dockets to cite in full here. See as way of example only, a filing by Indulac itself, Document: 00116665884, 1st Cir. Case No. 14-1132. ("As a balancing plant, INDULAC's existence is paramount to the public policy pursued under Act No. 34 which primarily seeks to (i) guarantee a year round supply of raw milk to meet the demand for fresh milk in Puerto Rico, and (ii) ensure an adequate and cost effective disposition of surplus milk generated as a result thereof. See 5 LPRA §1092(i) & §1096(b)(4).") and Dkt. 84[1], Civil No. 17-1885, where the Federal Court for the District of Puerto Rico refers to Indulac as a "balance plant".

This reality has also been recognized in Sec. 9 of the Judgment's Regulation 12, Dkt. No. 2322-1, page 30 where it says:

> **After exhausting the supply of the fresh milk processing plants**, the surplus shall be used to process other products by the fresh milk processing plants and the **balance plant**. (Emphasis added).

Clearly a balance plant receives no milk, as has always been the case with Indulac, when all the milk is retained for their own use by the fresh milk processors.

*Fifth*, it is clear from Sec. 9 of Regulation 12 incorporated into the Judgment that the priority in the use of milk will be in descending order from those of more economic benefit to the farmer to those of less benefit.[2] No milk will be used for a product of lesser margin when demands for a product of higher margin exists.

---

[1] As amended at Dkt. 126, Civil No. 17-1885.
[2] As indicated above, this echoes Regulation 10 Sec. 8(b).

**Reichard & Escalera LLC**

Agro. Jorge A. Campos-Merced
July 17th, 2020
4

In violation of paragraph 16 of the Settlement Agreement that was incorporated into the Judgment in Case 04-1840, Dkt. No. 2322 p. 5 (requiring uniform pricing for the same product) you have for years allowed Indulac to buy raw milk from the farmers for processing at a price lower than that paid by Suiza for the same product. Now you attempt to give them milk at a reduced price when demand for it at a higher price exists. No matter how you define surplus milk, the point is that Suiza pays full price for the milk it processes resulting in a payment of 78.8¢ (net of government subsidies) for each quart of milk it retains.

In contrast, and no matter how you calculate the average price paid to the farmer by Indulac, that price is lower than that paid by Suiza as shown in the chart below:

| Concept | Average Price Paid | |
|---|---|---|
| | Suiza | Indulac |
| All Milk (including cream & exports) | 0.788 | 0.682 |
| Fluid Milk (including exports) | 0.785 | 0.752 |
| Fluid Milk (excluding exports) | 0.785 | 0.763 |

Source: ORIL Liquidation ending July 8, 2020.

You have no authority to force the farmers to receive a lesser price for their milk when a higher price is available.

*Sixth*, it is telling that after approving a unilateral non-competitive transaction that placed Indulac in private hands over the objection of several third parties willing to offer better terms for it you now issue an Order against the mandate of the federal court and clear local law attempting to redefine surplus milk with the only purpose of transforming Indulac from a balancing plant into a full-fledged competitor albeit ones with no investment in a collection and distribution fleet. This full-fledged competitor is subsidized by a price structure approved by you in contravention to the Judgment Dkt. No. 2322, page 5, par. 16 that requires uniform pricing for raw milk among processors for the same product and/or marketing purpose.

All of this you do not only at the expense of Suiza but also of the farmer that would receive for any quart of milk passed on to Indulac a lesser price than they would receive if the milk is processed by Suiza. What are your real reasons for this arbitrary and discriminatory treatment in favor of the privately controlled Indulac is a matter for another day.

In view of all of the above, please be advised that Suiza will retain all the milk it needs to satisfy its demand for all products paid to the farmer at prices higher than those paid by Indulac. All surplus milk that Suiza cannot pay at a higher price than Indulac because of lack of demand will be passed on to Indulac as customary.

Please be also advised that Suiza considers the intention behind your Order to favor the privatized Indulac at any cost as illegitimate and transparent. Suiza trusts that you will desist from this course of action and make it unnecessary for Suiza to seek proper remedy in court. This

Reichard & Escalera LLC

Agro. Jorge A. Campos-Merced
July 17th, 2020
5

is not an exhaustive list of Suiza's legal objections to your Order. Suiza hereby expressly reserves all rights.

Sincerely,

RAFAEL ESCALERA RODRIGUEZ

C: Hon. Wanda Vázquez-Garced, Governor of Puerto Rico mreyes@fortaleza.pr.gov
Hon. Carlos Flores-Ortega, Secretary of Agriculture cflores@agricultura.pr.gov
Mr. Edward Hill, Esq. ehill@hillgonzalezlaw.com

RER/ivm

CERTIFIED TRANSLATION

[tr. note: This page is in English and therefore does not require translation.]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

[tr. note: This page is in English and therefore does not require translation, with the exception o the following excerpts:]

[First paragraph:]

("[W]hen the legislature delegates the power to enact regulations to an agency, they, in order to be valid, cannot be in conflict with the rules established in the law itself…[An] administrative action clearly in conflict or against the law is null and void**…[T]he text of a law should never be understood to be modified or replaced by any regulation, wherefore, should any conflict exist between the text of the law and its regulation that of the law must prevail."** *Yiyi Motors, Inc. v. Commonwealth 177 D.P.R. 230, 248 (2009)).* (Emphasis added.)

[Fourth paragraph:]

("[I]t has been established that a legislative rule is one that creates rights, imposes obligations, and establishes a pattern of conduct that has force of law…If that established in the aforesaid ruling is consistent with that established by the regulations in question, the ruling would only have an interpretive role…[when] it is […] a legislative rule, [it must be] approved by way of the procedure established by UAPA for the passing of the administrative regulation. [When] it is passed in violation of that provided by UAPA, the ruling […] is null and void.").

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

[tr. note: This page is in English and therefore does not require translation.]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

[tr. note: This page is in English and therefore does not require translation.]



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

[tr. note: This page is in English and therefore does not require translation.]



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.