# Exhibit III

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE AGRICULTURA
OFICINA DE REGLAMENTACIÓN DE LA INDUSTRIA LECHERA
APARTADO 10163
SAN JUAN, PUERTO RICO 00908-1163

| | |
|---|---|
| IN RE: INTERPRETACIÓN OFICIAL DE LA DEFINICIÓN DE LECHE EXCEDENTE | ORDEN ADM. NÚM. 2020-22  |

## SOLICITUD DE RECONSIDERACIÓN
## DE ORDEN ADMINISTRATIVA NÚM. 2022-22[1]

**AL OFICIAL EXAMINADOR:**

**COMPARECE SUIZA DAIRY, CORPORATION ("Suiza")**, por conducto de la representación legal suscribiente y respetuosamente **EXPONE y SOLICITA**:

**I. TRASFONDO**

El pasado 10 de julio de 2020 esta Oficina de la Reglamentación de la Industria Lechera ("ORIL"), por conducto de su Administrador, Agro. Jorge Campos Merced, emitió la Orden Administrativa Núm. 2020-22 (en adelante, "Orden 22"). Sostenemos que dicha orden es nula e ilegal y solicitamos su reconsideración y anulación.

Por un lado, la Orden 22 cambia la definición estatutaria y reglamentaria del importante concepto de "leche excedente" y ordena, en rutas específicas, la entrega a Industria Lechera de Puerto Rico, Inc. ("Indulac") de leche cruda por la que Suiza paga un precio más alto que Indulac. En ese sentido la Orden 22 cambia radicalmente, no solo lo que dispone la Ley 34, *infra*, sino aquello que disponen los reglamentos pertinentes[2], incluyendo un decreto judicial federal que gobierna el asunto en cuestión en cuanto a lo que constituye "leche excedente". Además, la Orden 22 modifica la naturaleza reglamentaria de Indulac como planta de balance, en violación de los reglamentos aplicables y el mandato federal.

---

[1] La presente moción no constituye una renuncia por parte de Suiza a recurrir al Tribunal Federal en búsqueda de un remedio en contra de ORIL por los incumplimientos que las actuaciones que surgen de la Orden 22 que aquí se discute constituyen de la Sentencia dictada en el Caso Civil Núm. 04-1840.

[2] Como explicaremos, tampoco puede cambiarse la ley con ningún mecanismo procesal que no sea su enmienda por la Asamblea Legislativa.

Case:17-03283-LTS Doc#:13938-3 Filed:08/03/20 Entered:08/03/20 16:09:17 Desc: Exhibit Ex III Motion for Reconsideration before ORIL Page 3 of 17

Solicitud de Reconsideración
Orden Núm. 2020-22
PÁGINA 2

La Orden 22 no es una mera regla interpretativa consistente con los reglamentos de la ORIL, sino que modifica todos los reglamentos en los que se hace referencia al concepto de "leche excedente"; y entre otras cosas, ordena que, en función de la definición modificada de "leche excedente", Suiza dedique dos rutas diarias de recogido de leche cruda a Indulac con una cantidad mínima de 22,000 cuartillo por termo de leche cruda. Es decir, la Orden 22 crea derechos e impone obligaciones. Lo anterior se hace en total abstracción del proceso que dispone la Ley de Procedimiento Administrativo Uniforme, *infra,* para implantar reglas legislativas.

Por entender que la Orden 22 crea una ventaja competitiva indebida e intencional a favor de Indulac, en contravención con la ley, reglamentos e inclusive un mandato federal, y que la Orden 22 vulnera los derechos de Suiza, procede que se revoque la Orden 22, y así lo solicitamos.

## II. DISCUSIÓN

### Una orden del Administrador de ORIL no puede ser contraria a lo claramente dispuesto por ley.

La ley de Puerto Rico contiene una sola y clara definición de lo que es leche excedente. La Ley Núm. 34 de Junio 11, 1957, según enmendada ("Ley Núm. 34"), 5 L.P.R.A. Sec. 1092(i) define esta como la leche producida en exceso de la demanda para **leche fresca**. La Orden 22 de forma ilegal define la leche excedente como aquella que exceda la demanda por **leche fluida**. Este cambio fundamental es la base de todo lo que ordena hacer la Orden 22. Pero lo cierto es que ningún organismo administrativo puede bajo ningún pretexto ir en contra del claro mandato de ley.

El Tribunal Supremo de Puerto Rico ha sido indisputablemente inequívoco en este sentido. En *Yiyi Motors, Inc. v. ELA*, 177 D.P.R. 230, 248 (2009) dijo el tribunal:

> [C]uando la legislatura delegue en una agencia el poder para promulgar reglamentos, estos, para ser válidos, no pueden estar en conflicto con las normas establecidas en la propia ley... [Una] actuación administrativa claramente en conflicto o en contra de la ley es nul[a]. . . **[E]l texto de una ley jamás debe entenderse modificado o suplantado por el reglamentario, por lo que, de existir cualquier conflicto entre el texto de la ley y su reglamento debe prevalecer el de la ley. (Énfasis suplido).**

Ese principio esencial de derecho administrativo es corolario de la norma de que los organismos administrativos no tienen más poderes que aquellos que les haya delegado la legislatura. *López Salas v. Junta de Planificación,* 80 D.P.R. 646 (1958); *Comité Vecinos Pro Mejoramiento, Inc. v. Junta de Planificación,* 147 D.P.R. 750 (1999) y *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400 (1980) ("[U]n reglamento o actuación administrativa claramente en

Case:17-03283-LTS Doc#:13938-3 Filed:08/03/20 Entered:08/03/20 16:09:17 Desc:
Exhibit Ex III Motion for Reconsideration before ORIL Page 4 of 17

Solicitud de Reconsideración
Orden Núm. 2020-22
PÁGINA 3

conflicto o en contra de la ley es nulo"). Puesto que estos organismos administrativos están delimitados por la ley en su campo de acción no hay subterfugio que puedan utilizar para ir en contra de esta, mucho menos y como veremos abajo, el recurso de la opinión interpretativa.

### A. La Reglamentación que se pretende alterar por la Orden 22 dispone que Indulac es una "planta de balance" que solo recibe leche luego de que quede satisfecha la demanda de las plantas procesadoras de leche fresca, solo si produce el mayor rendimiento.

No hay duda alguna de que la reglamentación vigente define a Indulac como una "planta de balance" que maneja excedente (según definido por la ley) una vez las plantas procesadoras de leche fresca han satisfecho su demanda por leche cruda. En otras palabras, y como siempre ha ocurrido, Indulac solo recibe leche que los procesadores VTM y Suiza no retengan. La Orden 22 es contraria a la reglamentación vigente en la medida en que obliga a entregar leche cruda a Indulac que Suiza de otra forma retendría.

El Reglamento 8657, Sec. 8(b), conocido como Reglamento 10 ("Reglamento 10") limita la facultad de canalización de leche del Administrador, indicando que la leche se utilizará en orden de prioridad para la elaboración de leche fresca y solamente entonces, agotada dicha demanda para la elaboración de otros productos por las procesadoras y por ". . . Indulac, como planta de balance". Por otro lado, aun con el excedente, el reglamento establece prioridad de uso a base del rendimiento económico para el ganadero, comenzando con los de mayor rendimiento y continuando en escala descendiente con los restantes. Todas las elaboradoras tendrán acceso al excedente a un mismo precio conforme al uso que se le dará al mismo. De lo anterior surgen tres cosas claras del Reglamento 10. **Número uno**, ahí se define a Indulac como una planta de balance que recibe leche excedente según definida por ley, solamente cuando se satisfaga la demanda de leche fresca. **En segundo lugar**, al excedente tiene acceso tanto las plantas elaboradoras de leche fresca como la planta de balance Indulac. **Tercero**, el orden de prioridad de asignación de producto dependerá exclusivamente de quien pague más por ella. Todo el mundo tiene derecho a un mismo precio conforme al uso que dará al excedente. El discrimen por precio en el uso del excedente no está permitido.

### B. La Orden 22 viola prácticamente todos estos preceptos del Reglamento 10 bajo el pretexto de ser "interpretativa".

Solicitud de Reconsideración
Orden Núm. 2020-22
PÁGINA 4

En primer lugar, la Orden 22 cambia la definición de leche excedente del Reglamento 10 que sigue fielmente la definición estatutaria. En segundo lugar, elimina el carácter de planta de balance de Indulac al darle acceso a leche cruda independientemente de las necesidades de los procesadores de leche fresca. Tercero, permite acceso a Indulac a leche cruda para que pague por la UHT que elabora a un precio promedio menor al que paga Suiza. Cuarto, viola el precepto reglamentario de dar acceso a todas las plantas a excedente legal y reglamentario al mismo precio para el mismo uso.[3]

La Orden 22 hace claro que se trata de una orden interpretativa. Véase p. 3, ("El Administrador suscribiente interpreta la definición rezagada de excedente. . ."). Es igualmente indiscutible que bajo el pretexto de una orden interpretativa no se puede cambiar un reglamento[4] obviando el proceso de reglamentación dispuesto en la Ley de Procedimientos Administrativos Uniforme ("LPAU"), 3 L.P.R.A. Sec. 2121-2223; y 3 L.P.R.A. Sec. 2102. Véase *Municipio de San Juan v. JCA*, 152 D.P.R. 673, 690, 691, 695, 698 (2000). ("[S]e ha establecido que una regla legislativa es aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley. . . Si lo establecido en la resolución referida es consistente con lo que fijan los reglamentos en cuestión, la resolución tendría solo carácter interpretativo. En cambio, si la resolución modifica lo que los reglamentos disponen, tendría carácter legislativo. . . **[cuando] se trata [. . .] de una regla legislativa, [debe ser] aprobada mediante el procedimiento establecido por la LPAU para la aprobación de reglamentación administrativa.** [Cuando es] aprobada en violación a lo dispuesto por la LAPAU, la resolución [...] es nula"). (**Énfasis suplido**)

En otras palabras, en todo lo que se refiere al proceso reglamentario, los poderes de ORIL están limitados por las exigencias procesales dispuestas en la LPAU. Esta regula el procedimiento reglamentario de entidades como ORIL en su Capítulo II. Dicho capítulo contiene veinte sub-incisos que disponen todo lo relativo al proceso de reglamentación de las agencias administrativas y aplica siempre que la agencia pretenda enmendar una regla o reglamento. Véase 3 L.P.R.A. Sec. 9611 a 9630. Ninguno de esos requisitos procesales ha sido seguido para cambiar la norma

---

[3] La Orden 22 deja en efecto la estructura de precios existente que como demostraremos abajo permite a Indulac pagar en promedio por su leche menos de lo que Suiza paga.

[4] Como explicaremos tampoco puede cambiarse la ley con ningún mecanismo procesal que no sea su enmienda por la Asamblea Legislativa.

Case:17-03283-LTS Doc#:13938-3 Filed:08/03/20 Entered:08/03/20 16:09:17 Desc:
Exhibit Ex III Motion for Reconsideration before ORIL Page 6 of 17

Solicitud de Reconsideración
Orden Núm. 2020-22
PÁGINA 5

reglamentaria que hemos citado contenida en el Reglamento 10 y otros. La Orden 22 se limita a decir que se interpretarán los lenguajes reglamentarios contrarios como se dice en dicha Orden, en efecto derogando reglamentos debidamente aprobados.

Una directriz interpretativa como la Orden 22 no puede alterar los derechos ni las obligaciones de los individuos. *Municipio de Toa Baja v. DRNA*, 185 D.P.R. 684, 696 (2012). En fin, las obligaciones que impone la Orden 22 son inconsistentes con el Reglamento 10 y el rol de planta de balance de Indulac que allí se dispone. En la medida en que se alteran los derechos y obligaciones de las partes concernidas, la misma es nula por no haber cumplido con los requisitos de la LPAU. El intento de derogar reglamentos que contiene la Orden 22 es nulo.

### C. Violación por ORIL a la sentencia federal en el caso 04-1840.

Es axiomático que ORIL no tiene autoridad para desobedecer o descartar la sentencia federal que recayó contra este organismo en el caso aludido. *Feliciano v. Vila*, 2007WL 4404730 (D.P.R. 2007) ("[A public official is like a corporate official in that he must do all that he reasonably can to see that a court order is obeyed."). Las cortes federales tienen no solamente la autoridad inherente, sino también el deber de proteger y poner en efecto sus sentencias y castigar a los que desobedecen o ponen resistencia a sus órdenes. Véase *Morales Feliciano v. Rosselló González*, 124 F. Supp. 2d 774, 784 (D.P.R. 2000), citando *First Sec. Nat. Bank and Trust vs. US*, 382 US 34, 35 (1965).

La sentencia aludida incorpora como parte de esta, el Reglamento 12 que contiene la misma definición de leche excedente que tiene la ley de Puerto Rico y el Reglamento 10 y que la Orden 22 pretende descartar. La Sec. 4(22) de ese reglamento a la p. 4 del Dkt. No. 3322-1 del caso federal civil núm. 04-1840, lee como sigue:

> Surplus – part of the raw milk production that is **not retained** by the processing plants to process fresh milk. (**Énfasis suplido**).

En otras palabras, la Orden 22 no solamente viola la ley de Puerto Rico sino que viola el mandato federal que tiene preminencia en vista de la cláusula de supremacía de la Constitución de los Estados Unidos. Véase Art. VI, Cl. 2, Const. EE.UU.; *Rodríguez v. Srio de Hacienda,* 135 D.P.R. 219, 241 (1994).

### D. El Reglamento 12 reconoce a Indulac como una planta de balance solamente, carácter que es alterado por la Orden 22.

Case:17-03283-LTS Doc#:13938-3 Filed:08/03/20 Entered:08/03/20 16:09:17 Desc:
Exhibit Ex III Motion for Reconsideration before ORIL Page 7 of 17

Solicitud de Reconsideración
Orden Núm. 2020-22
PÁGINA 6

La corte federal repetidamente y a través de todo el proceso judicial adoptó la posición adelantada por Indulac y por ORIL de que la primera no era otra cosa que una "planta de balance" que recibía leche excedente que los procesadores de leche fresca no querían. Esa posición se encuentra recogida en muchas radicaciones en ese caso. A manera de ejemplo solamente, Indulac mismo se clasificó como planta de balance ante el Tribunal de Apelaciones del Primer Circuito diciendo: "**As a balancing plant**, Indulac's existense is paramount to the public policy pursued under Act No. 34. . ."[5]. (**Énfasis suplido**).

Tan temprano como el Dkt. No. 84 p. 10 en el caso civil 17-1885, la corte federal se refirió a Indulac como una "planta de balance".

Pero lo más importante es que esa realidad fue recogida en la Sec. 9 del Reglamento 12 que forma parte de la Sentencia al Dkt. No. 2322-1 p. 30 donde dice claramente:

> After exhausting the supply of the fresh **milk processing plants**, the surplus shall be used to process other products by the fresh milk processing plants and the **balance plant**. (**Énfasis suplido**).

Claramente una planta de balance no recibe leche, como siempre ha sido el caso de Indulac, cuando la misma es retenida para su propio uso por los procesadores de leche fresca. La Orden 22 elimina el carácter de planta de balance de Indulac en contravención con la sentencia federal al ordenar que se le entregue leche cruda que Suiza desea retener.

Queda claro de la Sec. 9 del Reglamento 12 que forma parte de la Sentencia que la prioridad en el uso de la leche cruda va en orden descendiente desde los productos que más beneficio económico le producen al ganadero a aquellos que le producen menos beneficio. Ese es el mismo principio del Reglamento 10 Sec. 8(b). En otras palabras, no se podrá utilizar leche que produzca un menor margen al ganadero cuando exista demanda para un producto de mayor margen.

El párr. 16 del acuerdo de transacción que fue incorporado a la Sentencia en el caso 04-1840 Dkt. No. 2322 p. 5 requiere un precio uniforme entre todas las procesadoras por la leche que se vaya a usar para el mismo producto. En violación de esa disposición, ORIL ha permitido por años a Indulac comprar leche cruda pagando un precio menor que el que paga Suiza por el mismo producto. Puesto que Indulac tiene un precio preferencial, la leche que ahora se le pretende

---

[5] Document: 00116665884, 1st Cir. Case No. 14-1132

Case:17-03283-LTS Doc#:13938-3 Filed:08/03/20 Entered:08/03/20 16:09:17 Desc:
Exhibit Ex III Motion for Reconsideration before ORIL Page 8 of 17

Solicitud de Reconsideración
Orden Núm. 2020-22
PÁGINA 7

entregar por la Orden 22 será pagada a un precio menor que el que pagaría Suiza reteniendo la misma.

La tabla que incluimos a continuación demuestra que no importa cómo se calcule el precio promedio pagado al ganadero por Indulac por la leche cruda, ese precio es menor que el que paga Suiza.

| Concept | Average Price Paid | |
|---|---|---|
| | Suiza | Indulac |
| All Milk (including cream & exports) | 0.784 | 0.567 |
| Fluid Milk (including exports) | 0.781 | 0.714 |
| Fluid Milk (excluding exports) | 0.782 | 0.764 |

Source: ORIL Liquidations ending July 8, 2020; June 24, 2020; June 10, 2020; May 27, 2020; May 13, 2020; and April 29, 2020.

En síntesis, ORIL no tiene autoridad para forzar a los ganaderos a recibir menos dinero por su leche cuando un precio más alto está disponible.

La Orden 22 no solo perjudica a Suiza, sino a los ganaderos que son forzados a recibir una cantidad menor por la leche cruda que se quiere forzar a Suiza a entregar a Indulac. Aun cuando se tratara de un ejercicio legítimo de discreción (cosa que como demostramos no es el caso) esta sería una actuación claramente arbitraria. " [U]na agencia no puede ejercitar su discreción de manera arbitraria y caprichosa". *Asoc. Fcias. Com. V. Depto. De Salud*, 756 D.P.R. 105, 130 (2002).

### III. CONCLUSIÓN

La nulidad absoluta de la Orden 22, tanto por razones locales como federales es evidente. Esta orden debe ser reconsiderada y anulada.

Suiza tiene un compromiso con la salud de la industria lechera en la que tanto esfuerzo y recursos ha invertido. A pesar de que al día de hoy ORIL se ha negado a ser transparente (como le exigió el tribunal local) en los detalles de la transacción que convirtió a Indulac de una entidad poseída por el Fondo de Fomento de la Industria Lechera a una entidad en manos privadas, Suiza ha seguido cooperando voluntariamente con Indulac y enviándole la leche para la cual no tiene uso a un rendimiento mayor al ganadero del que podría proveerle Indulac. A pesar de las actuaciones regulatorias ilegales aquí descritas ese compromiso persiste. Suiza está disponible a cooperar con Indulac para que este proceso de entrega fluya lo más eficientemente posible. Lo que Suiza no

Solicitud de Reconsideración
Orden Núm. 2020-22
PÁGINA 8

puede aceptar es una violación crasa de la ley, de la sentencia federal y de los derechos que le asisten como planta procesadora de leche ante Indulac como planta de balance.

**POR TODO LO CUAL**, la compareciente solicita de la ORIL que reconsidere y anule su Orden 22.

En San Juan, Puerto Rico, a 23 de julio de 2020.

**CERTIFICO** haber notificado copia fiel y exacta de esta moción al Sr. Francisco Orama Irizarry, Presidente Ejecutivo de Indulac, por conducto de su representante legal, el Lcdo. Rafael Santiago, P. O. Box 190095, San Juan, Puerto Rico, 00919-0095, rsantiago@mhlex.com; al representante legal del Sr. Orlando González Nuñez, Gerente General-Vaquería Tres Monjitas, P.O. Box 191017, San Juan, Puerto Rico, 00919-1017, enassar@enrassociates.com y al Lcdo. Ed Hill, representante legal de la ORIL, PMB 248 La Cumbre 273 Sierra Morena, San Juan, Puerto Rico, 00926, ehill@hillgonzalezlaw.com

**REICHARD & ESCALERA LLC**
**Abogados de Suiza Dairy Corp.**
MCS Plaza, Suite 1,000, 255 Ave. Ponce de León
Hato Rey, Puerto Rico 00917
P O Box 364148, San Juan, Puerto Rico 00936-4148
Tel (787) 777-8888 / Fax (787) 765-4225
counsellors@reichardescalera.com

**LCDO. RAFAEL ESCALERA RODRÍGUEZ**
escalera@reichardescalera.com
RUA Núm. 5,310

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**DEPARTMENT OF AGRICULTURE**
**OFFICE OF DAIRY INDUSTRY REGULATION**
**P.O. BOX 10163**
**SAN JUAN, PUERTO RICO 00908-1163**

| | |
|---|---|
| IN RE: OFFICIAL INTERPRETATION OF THE DEFINITION OF SURPLUS MILK | ADMINISTRATIVE ORDER NO. 2020-22<br><br>[ink stamp:] *Office of Dairy Industry Regulation; JUL 23 2020;* [hw:] *2:12pm* [initials]; *RECEIVED* |

**REQUEST FOR RECONSIDERATION**
**OF ADMINISTRATIVE ORDER NO. 2022-22[1]**

**TO THE EXAMINING OFFICER:**

**NOW COMES SUIZA DAIRY, CORPORATION ("Suiza"),** by and through the undersigned legal counsel and respectfully **STATES and PRAYS:**

**I.     BACKGROUND**

This past July 10, 2020, this Office of Dairy Industry Regulation ("ORIL"), by and through its Administrator, Jorge Campos Merced, issued Administrative Order 2020-22 (hereinafter, "Order 22"). We uphold that said order is null, void, and illegal, and we request its reconsideration and repeal.

On the one hand, Order 22 changes the statutory and regulatory definition of the important concept of "surplus milk" and orders, on specific routes, the delivery to Industria Lechera de Puerto Rico, Inc. ("Indulac") of raw milk for which Suiza pays a higher price than Indulac. In that sense, Order 22 radically changes not only that provided by Law 34, *infra*, but also that provided by the pertinent regulations[2], including a federal judicial decree governing the matter in question with regard to what constitutes "surplus milk." Moreover, Order 22 modifies the regulatory nature of Indulac as a balance plant, in violation of the applicable regulations and the federal order.

---

[1] This motion does not constitute a waiver on the part of Suiza to recur to the Federal Court to seek a remedy against ORIL for the breaches that the actions arising from Order 22 discussed herein constitute with regard to the Judgment issued in Civil Case No. 04-1840.

[2] As we will explain, neither can the law be changed with any procedural mechanism other than its amendment by the Legislative Assembly.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**Request for Reconsideration**
**Order No. 2020-22**
**PAGE 2**

Order 22 is not a mere interpretative rule consistent with the regulations of ORIL, but rather it modifies all the regulations in which reference is made to the concept of "surplus milk"; and among other things, orders that, according to the modified definition of "surplus milk," Suiza devotes two daily raw milk pickup routs to Indulac with a minimum amount of 22,000 quarts per tank of raw milk. That is, Order 22 creates rights and imposes obligations. The foregoing is made in total abstraction of the process provided for by the Uniform Administrative Procedure Act, *infra*, for implementing legislative rules.

Due to understanding that Order 22 creates an undue and intentional competitive advantage in favor of Indulac, in violation of the law, regulations, and even a federal order, and that Order 22 infringes on Suiza's rights, the proper course of action is to revoke Order 22, and we request such.

**II.    DISCUSSION**

**An order by the Administrator of ORIL cannot go against what is clearly provided by law.**

The law of Puerto Rico contains one single and clear definition of what surplus milk is. Law 34 of June 11, 1957, as amended ("Law 34"), 5 L.P.R.A. Sec. 1092(i) define this as the milk produced in excess of the demand for **fresh milk**. Order 22 illegally defines surplus milk as that which exceeds the demand for **fluid milk**. This fundamental change is the basis for everything that Order 22 orders to be done. But the truth is that no administrative body and under any pretext go against a clear mandate of law.

The Supreme Court of Puerto Rico has been indisputably unequivocal in this sense. In *Yiyi Motors, Inc. v. Commonwealth*, 177 D.P.R. 230, 248 (2009), the court stated:

> [W]hen the legislature delegates the power to enact regulations to an agency, they, in order to be valid, cannot be in conflict with the rules established in the law itself…[An] administrative action clearly in conflict or against the law is null and void**…[T]he text of a law should never be understood to be modified or replaced by any regulation, wherefore, should any conflict exist between the text of the law and its regulation that of the law must prevail. (Emphasis supplied.)**

That essential principle of administrative law is a corollary of the rule that administrative bodies do not have more powers than those that have been delegated to them by the legislature. *López Salas v. Planning Board*, 80 D.P.R. 646 (1958); *Comité Vecinos Pro Mejoramiento, Inc. v. Planning Board*, 147 D.P.R. 750 (1999), and *P.S.P. v. State Elections Commission*, 110 D.P.R. 400 (1980) ("[A] regulation or administrative action clearly in conflict



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Request for Reconsideration
Order No. 2020-22
PAGE 3

or against the law is null and void"). Given that these administrative bodies are delimited by the law in their field of action, there is no subterfuge that they can use to go against it, much less and as we see below, through interpretative opinion.

**A. The Regulation that is sought to be altered by Order 22 provides that Indulac is a "balance plant" that only receives milk after the demand of the fresh milk processing plants has been satisfied, only if it produces the greatest yield.**

There is no doubt that the current regulation defines Indulac as a "balance plant" that handles surplus (as defined by law) once the fresh milk processing plants have satisfied their demand for raw milk. In other words, and as has always occurred, Indulac only receives milk that the processors VTM and Suiza do not retain. Order 22 is contrary to the current regulations insomuch as it requires delivering raw milk to Indulac that Suiza would otherwise retain.

Regulation 8657, Sec. 8(b), known as Regulation 10 ("Regulation 10") limits the Administrator's power to channel milk, stating that the milk will be used in order of priority for the processing of fresh milk and only then, having exhausted said demand for the manufacturing of other products by the processors and by "…Indulac, as the balance plant." On the other hand, even with the surplus, the regulation establishes priority of use based on financial performance for dairy farmers, beginning with the one with the greatest yield and continuing on a descending scale with the rest. All processors will have access to the surplus at the same price depending on how it will be used. From the foregoing, three things are made clear by Regulation 10. **Number one**, there Indulac is defined as a balance plant that receives surplus milk as defined by law, only when the demand for fresh milk is satisfied. **Secondly,** the fresh milk processing plants as well as the balance plant Indulac have access to the surplus. **Thirdly,** the order of priority of allocating the product will depend exclusively on who pays more for it. Everyone is entitled to the same price depending on how the surplus will be used. Price-based discrimination in the use of surplus is not permitted.

**B. Order 22 violates practically all these precepts of Regulation 10 under the pretext of being "interpretive."**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**Request for Reconsideration**
**Order No. 2020-22**
**PAGE 4**

In the first place, Order 22 changes the definition of surplus milk from Regulation 10, which faithfully follows the statutory definition. In the second place, it eliminates Indulac's role as a balance plant by giving it access to raw milk regardless of the needs of the fresh milk processors. Thirdly, it permits Indulac access to raw milk to pay for the UHT that it manufactures at a lower average price than that paid by Suiza. Fourth, it violates the regulatory precept of providing access to all the plants to legal, regulatory surplus at the same price for the same use.[3]

Order 22 makes it clear that it is an interpretive order. See p. 3, ("The undersigning Administrator interprets the excluded definition of surplus…"). It is equally inarguable that under the pretext of an interpretive order, a regulation cannot be changed[4] by ignoring the process of regulation provided in the Uniform Administrative Procedure Act ("UAPA"), 3 L.P.R.A. Sec. 2121-2223; and 3 L.P.R.A. Sec. 2102. See *Municipality of San Juan v. JCA*, 152 D.P.R. 673, 690, 691, 695, 698 (2000). ("[I]t has been established that a legislative rule is one that creates rights, imposes obligations, and establishes a pattern of conduct that has force of law…If that established in the aforesaid ruling is consistent with that established by the regulations in question, the ruling would only have an interpretive role…**[when] it is […] a legislative rule, [it must be] approved by way of the procedure established by UAPA for the passing of the administrative regulation.** [When] it is passed in violation of that provided by UAPA, the ruling […] is null and void."). (**Emphasis supplied**)

In other words, in all that makes reference to the regulatory process, the powers of ORIL are limited by the procedural requirements provided for in UAPA. This regulates the regulatory procedure of entities such as ORIL in its Chapter II. Said chapter contains twenty subsections that provide for all that relating to the process of regulation of administrative agencies and is applicable whenever the agency seeks to amend a rule or regulation. See 3 L.P.R.A. Sec. 9611 to 9630. None of those procedural requirements have been followed to change the regulatory rule that we

---

[3] Order 22 leaves the existing pricing structure in place, which as we will demonstrate later on, allows Indulac to pay on average less for its milk than what Suiza pays.

[4] As we will explain, neither can the law be changed with any procedural mechanism other than its amendment by the Legislative Assembly.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Request for Reconsideration
Order No. 2020-22
PAGE 5

have cited contained in Regulation 10 and others. Order 22 is limited to stating that the contradictory regulatory language will be interpreted as is stated in said Order, in effect repealing duly passed regulations.

An interpretive guideline such as Order 22 cannot alter the rights or obligations of individuals. *Municipality of Toa Baja v. DRNA*, 185 D.P.R. 684, 696 (2012). In short, the obligations imposed by Order 22 are inconsistent with Regulation 10 and Indulac's role as a balance plant that is provided therein. Insomuch as the rights and obligations of the concerned parties are altered, it is null and void due to not having met the requirements of UAPA. The attempt to repeal regulations contained in Order 22 is null and void.

**C. Violation by ORIL of the federal judgment in the case 04-1840.**

It is axiomatic that ORIL does not have the authority to disobey or discard the federal judgment that fell against this body in the alluded case. *Feliciano v. Vila,* 2007WL 4404730 (D.P.R. 2007) ("[A public official is like a corporate official in that he must do all that he reasonably can to see that a court order is obeyed.") The federal courts have not only the inherent authority, but also the duty to protect and enforce their judgments and punish those that disobey or resist their orders. See *Morales Feliciano v. Rosselló González,* 124 F. Supp. 2d 774, 784 (D.P.R. 2000), citing *First Sec. Nat. Bank and Trust vs. US,* 382 US 34, 35 (1965).

The aforesaid judgment incorporates as part of this Regulation 12, which contains the same definition of surplus milk that the law of Puerto Rico and Regulation 10 have and which Order 22 seeks to discard. Sec. 4(22) of that regulation on p. 4 of Dkt. No. 3322-1 of federal civil case no. 04-1840, reads as follows:

Surplus – part of the raw milk production that is **not retained** by the processing plants to process fresh milk.

(**Emphasis supplied**.)

In other words, Order 22 not only violates the law of Puerto Rico, but it also violates the federal order that holds preeminence in view of the supremacy clause of the United States Constitution. See Art. VI, Cl. 2, U.S. Const.; *Rodríguez v. Secretary of the Treasury*, 135 D.P.R. 219, 241 (1994).

**D. Regulation 12 recognizes Indulac solely as a balance plant, a role that is altered by Order 22.**



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**Request for Reconsideration**
**Order No. 2020-22**
**PAGE 6**

The federal court repeatedly and throughout the entire judicial process adopted the position forwarded by Indulac and by ORIL that the former was nothing other than a "balance plant" that received surplus milk that the fresh milk processors did not want. That position is encompassed in many filings in the case. Just as an example, Indulac itself classified itself as a balance plant before the First Circuit Court of Appeals stating: "As a balancing plant, Indulac's existence is paramount to the public policy pursued under Act No. 34…"[5]. (**Emphasis supplied**).

As early as Dkt. No. 84 p. 10 in civil case 17-1885, the federal court referred to Indulac as a "balance plant."

But the most important aspect is that in reality it was encompassed in Sec. 9 of Regulation 12 that forms part of the Judgment from Dkt. No. 2322-1 p. 30 where it clearly states:

> After exhausting the supply of the fresh **milk processing plants**, the surplus shall be used to process other products by the fresh milk processing plants and the **balance plant**. (**Emphasis supplied**).

Clearly a balance plant does not receive milk, as has always been the case of Indulac, when it is retained for its own use by the fresh milk processors. Order 22 eliminates Indulac's role as a balance plant in contravention of the federal judgment by ordering that raw milk that Suiza wishes to retain be delivered to it.

It is clear from Sec. 9 of Regulation 12 that forms part of the Judgment that the priority in the use of raw milk goes in descending order from the products that provide dairy farmers the greatest financial benefit to those that produce the least benefit. That is the same principle from Regulation 10 Sec. 8(b). In other words, milk that produces a lesser margin for the dairy farmer cannot be used when demand exists for a product with a greater margin.

Paragraph 16 of the settlement agreement that was incorporated into the Judgment in the case 04-1840 Dkt. No. 2322 p. 5 requires a uniform price among all the processors for milk that is going to be used for the same product. In violation of that provision, ORIL has for years allowed Indulac to buy raw milk paying a lower price than that paid by Suiza for the same product. Given that Indulac has a preferential price, the milk that is now intended to be delivered

---

[5] Document: 00116665884, 1st Cir. Case No. 14-1132

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

to it by Order 22 will be paid at a lower price than that which Suiza would pay when retaining it.

The table that we include below shows that it does not matter how the average price paid to the dairy farmer by Indulac for raw milk is calculated, that price is lower than that paid by Suiza.

| Concept | Average Price Paid | |
|---|---|---|
| | Suiza | Indulac |
| All Milk (including cream & exports) | 0.784 | 0.567 |
| Fluid Milk (including exports) | 0.781 | 0.714 |
| Fluid Milk (excluding exports) | 0.782 | 0.764 |

Source: ORIL Liquidations ending July 8, 2020; June 24, 2020; June 10, 2020; May 27, 2020; May 13, 2020; and April 29, 2020.

In sum, ORIL does not have the authority to force dairy farmers to receive less money for their milk when a higher price is available.

Order 22 is not only to the detriment of Suiza, but also to dairy farmers that are forced to receive a lower amount for the raw milk that Suiza is being forced to deliver to Indulac. Even when it is a legitimate exercise of discretion (something that we demonstrated is not the case), this would be a clearly arbitrary action. "[A]n agency cannot exercise its discretion in an arbitrary and capricious manner." *Assoc. Fcias. Com. V. Dept. of Health*, 756 D.P.R. 105, 130 (2002).

### III. CONCLUSION

The absolute nullity of Order 22, both for local as well as federal reasons, is evident. This order must be reconsidered and repealed.

Suiza has a commitment to the health of the dairy industry in which it has invested so much effort and resources. Despite the fact that today ORIL has refused to be transparent (as the local court required it to be) in the details of the transaction that transformed Indulac from an entity held by the Dairy Industry Development Fund to a privately held entity, Suiza has continued to voluntarily cooperate with Indulac and to send it milk for which it has no use at a greater yield for dairy farmers than Indulac could provide them. In spite of the illegal regulatory actions described herein, that commitment remains. Suiza is willing to cooperate with Indulac in order for this delivery process to flow as efficiently as possible. What Suiza cannot accept is a blatant violation of the law, of the federal judgment,



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

and of the rights that it has as a milk processing plant against Indulac as a balance plant.

**IN WITNESS WHEREOF**, the appearing party requests that ORIL reconsider and repeal its Order 22.

In San Juan, Puerto Rico, on July 23, 2020.

**I HEREBY CERTIFY** having provided notice through a true and accurate copy of this motion to Mr. Francisco Orama Irizarry, Executive President of Indulac, by and through his legal counsel, Atty. Rafael Santiago, P.O. Box 190095, San Juan, Puerto Rico, 00919-0095, rsantiago@mhlex.com; to the legal counsel of Mr. Orlando González Núñez, General Manager – Vaquería Tres Monjitas, P.O. Box 191017, San Juan, Puerto Rico, 00919-1017, enassar@enrassociates.com, and to Atty. Ed Hill, legal counsel of ORIL, PMB 248 La Cumbre 273 Sierra Morena, San Juan, Puerto Rico, 00926, ehill@hillgonzalezlaw.com.

**REICHARD & ESCALERA LLC**
**Counsel for Suiza Dairy Corp.**
MCS Plaza, Suite 1,000, 255 Ave. Ponce de León
Hato Rey, Puerto Rico 00917
P.O. Box 364148, San Juan, Puerto Rico 00936-4148
Tel (787) 777-8888 / Fax (787) 765-4225
counsellors@reichardescalera.com

[signature]

RAFAEL ESCALERA RODRÍGUEZ, ESQ.
escalera@reichardescalera.com
Unique Attorney Registry No. 5,310



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.