**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 13748**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO
MED CENTRO INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

      **Page**

PRELIMINARY STATEMENT ................................................................................................1
  A. Factual and Procedural Background ...............................................................................1
  B. The Commonwealth's Response..................................................................................... 4

OBJECTION..................................................................................................................................3
    I.     MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT
          THE STAY ...........................................................................................................3

CONCLUSION.............................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
　F. Supp. 3d 508 (D.P.R. 2016) ......................................................................................... 6,7

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
　369 B.R. 87, 94-5 (D.P.R. 2007) ......................................................................................... 7

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
　28 B.R. 324 (Bankr. S.D.N.Y. 1983) ................................................................................. 10

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
　2006 U.S. Dist. LEXIS 55284, (S.D.N.Y. Aug 4, 2006) .................................................... 10

*In re 234-6 West 22nd St. Corp.*,
　214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ......................................................................... 5

*In re Breitburn Energy Partners LP*,
　No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017) ............................... 7,8

*In re City of Stockton*,
　484 B.R. 372 (Bankr. E.D. Cal. 2012) ........................................................................... 9, 12

*In re Cuba Electric & Furniture Corp.*,
　430 F. Supp. 689 (D.P.R. 1977) .......................................................................................... 7

*In re Cummings*,
　221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ....................................................................... 8

*In re Motors Liquidation Co.*,
　No. 09- 50026, 2010 WL 4630327 (S.D.N.Y. 2010) ........................................................ 11

*In re Mu'min*,
　374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) .......................................................................... 7

*In re Murrin*,
　477 B.R. 99, 109 (D. Minn. 2012) ....................................................................................... 8

*In re Residential Capital, LLC*,
　No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012) ......................... 9,10,11

*In re Taub*,
　413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) ............................................................................ 8

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Unanue-Casal*,
    159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ..............................6,7

*Matter of Garofalo's Finer Foods, Inc.*,
    186 B.R. 414 (Bankr. N.D. Ill. 1995) ...............................................................................11

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
    907 F.2d 1280 (2d Cir. 1990).....................................................................6,7,8,9,10,12,13

**STATUTES**

11 U.S.C. § 362(d)(1) .................................................................................................5,6,11

42 U.S.C. § 1396 (b)(b)(3)....................................................................................................3

42 U.S.C. § 1396 a (bb)(1-5) ................................................................................................1

42 U.S.C. § 1396 a (bb)(3)....................................................................................................3

PROMESA § 301(a) .............................................................................................................5

PROMESA § 315(b) .............................................................................................................1

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 13748] (the "Motion"), filed by Med Centro, Inc. (the "Movant"), plaintiff in the case *Consejo de Salud Playa de Ponce v. Lorenzo González Feliciano, et al.*, Case No. 06-1260 (GAG) (the "Prepetition Action"), before the United States District Court for the District of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

**Preliminary Statement**

    A.    **Factual and Procedural Background**

**The Prepetition Action & Prepetition Settlement Agreement**

1. On April 13, 2006, Movant, a federally qualified health center ("FQHC"), commenced the Prepetition Action against the Commonwealth, the Department of Health of Puerto Rico ("DOH"), an entity of the Commonwealth, and Lorenzo González Feliciano, Secretary of DOH, among other defendants, seeking injunctive relief with respect to the Commonwealth's obligation to issue wraparound payments pursuant to the Medicaid Act, 42 U.S.C. §1396 a (bb)(1-5). Prepetition Action, ECF No. 1. The District Court consolidated the Prepetition Action with certain cases brought by other FQHCs and named Movant (known at that time as *Consejo de Salud Playa de Ponce*) as the lead plaintiff. Prepetition Action, ECF No. 191.

2. On October 8, 2010, the District Court entered a *Preliminary Injunction* in the Prepetition Action, requiring the Commonwealth "to issue prospective payments to the 15

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

FQHCs as per the Court's formula," including Movant. Prepetition Action, ECF No. 743, at 2, n.1 (the "Preliminary Injunction").

3. On October 7, 2011, following litigation over the calculation of the prospective wraparound payments, the Commonwealth and Movant entered into the *Confidential Settlement Agreement* (the "Prepetition Settlement Agreement") to dispose of "all claims that have been raised or could have been raised" by the Movant regarding the prospective calculation of wraparound payments and any amounts owed by the Commonwealth after reaching an agreement, which was approved by the District Court. Prepetition Action, ECF Nos. 987, 989.

4. Pursuant to the Prepetition Settlement Agreement, on October 7, 2011, the District Court dismissed the Prepetition Action, with prejudice, vacated the Preliminary Injunction, and retained jurisdiction to enforce the Prepetition Settlement Agreement for a term of four (4) years. Prepetition Action, ECF No. 990. The District Court later extended its jurisdiction to enforce the Prepetition Settlement Agreement for five (5) additional years, until October 7, 2020. Prepetition Action, ECF Nos. 1274, 1279 & 1281.

5. On April 28, 2015, the Prepetition Action was deconsolidated from the cases related to the non-settling FQHCs, because Movant was the only entity to settle all of its claims with the Commonwealth and "the issues that arise as to Plaintiff Consejo are unique to it, and pertain to non-compliance with the settlement, as well as any collateral, related issues that on occasion arise." Prepetition Action, ECF No. 1294.

**The Lift Stay Stipulation**

6. On June 30, 2019, Movant and the Commonwealth entered into that certain *Stipulation Modifying the Automatic Stay Between the Commonwealth of Puerto Rico and Consejo de Salud de Comunidad de Playa de Ponce, Inc.* (the "Lift Stay Stipulation"). *See*

2

*Eleventh Omnibus Order Granting Relief from the Automatic Stay*, ECF No. 8499-1, Ex. 1. The Lift Stay Stipulation allowed the Commonwealth to "continue to issue the prospective quarterly wraparound payments . . . directly to Movant pursuant to the Settlement Agreement in the same manner the distributions have been made up to the fourth quarter of 2018, beginning with the Quarterly Payment due for the first quarter of 2019." *Id.* Since entry, the Commonwealth has complied with all of the terms of the Lift Stay Stipulation, and Movant had not made any allegations as to the adequacy or correctness of the quarterly wraparound payments until the filing of the Motion.

**The Lift Stay Notice & the Motion**

7. On April 15, 2020, Movant forwarded to the Commonwealth a lift stay notice (the "Lift Stay Notice"), seeking relief from the automatic stay "for the purpose of prosecuting in Case No. 06-1260 (GAG) [the Prepetititon Action] a request for the calculation of its PPS per visit rate, utilizing the applicable adjustable PPS per visit rate from 2009 forward pursuant to 42 U.S.C. §1396 (b) (b) (3) and CMS' 2001 guidance, including the corresponding wraparound payments, the cause for which is indicated above." *See Motion*, ECF No. 13748-1. Movant recognized in its Lift Stay Notice that ". . . the Settlement Agreement is silent as to the issue of the re basing . . . ." Lift Stay Notice at 4.

8. On July 21, 2020, Movant filed its Motion ***seeking for the first time relief not originally requested in its Lift Stay Notice***. In particular, in the Motion, Movant seeks relief from the automatic stay "to proceed with [the Prepetition Action] and seek (1) the enforcement of the Settlement Agreement; (2) compliance with the Wraparound Payments provisions included in the Medicaid Statute at 42 U.S.C. §1396a (bb)(3), from the first quarter 2018 onwards; and (3) for the District Court to extend its enforcement jurisdiction of the Settlement

3

Agreement beyond October 7, 2020." Motion at 18. While Movant appears to seek relief from the automatic stay to pursue a rebasing of its Prospective Payment System ("PPS") rate in the Prepetition Action, the Motion raised for the first time the allegation that the Commonwealth has failed to reconcile (beginning the first quarter of 2018) the estimated quarterly wraparound payments it has been currently making pursuant to the Prepetition Settlement Agreement, and the request to extend the District Court's enforcement jurisdiction.

### B. *The Commonwealth's Response*

9. Movant's request to modify the automatic stay to allow it to seek a rebasing of its PPS rate should be denied because it is unnecessary for Movant to pursue such rebasing through litigation in the Prepetition Action when an administrative process for seeking a rebasing of PPS rates is available to FQHCs. Indeed, Movant recognizes that the Prepetition Settlement Agreement does not address the process for rebasing its PPS rate. *See* Lift Stay Notice at 4 (". . . the Settlement Agreement is silent as to the issue of the re basing . . . ."). Pursuant to the Puerto Rico Department of Health's *Reimbursement Manual for Federally Qualified Health Centers* (attached hereto as **Exhibit A**) (the "PPS Manual"), the PPS rate may be rebased upon request by the FQHC. The PPS Manual provides that the "FQHC is responsible for notifying the Medicaid Program, in writing, of any change in the scope." PPS Manual § 7. The PPS Manual also provides procedures to resolve appeals of the PPS Office's decisions. *Id.* § 9. Movant has not availed itself of this administrative process, and litigation of the issue of rebasing Movant's PPS rate would deplete the Commonwealth's limited resources through unnecessary litigation.

10. With respect to Movant's request to seek to enforce payment of reconciled quarterly wraparound payments, Movant has failed to comply with the meet and confer process detailed in *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1] (the "Lift Stay Protocol"), having raised the allegation and request ***for the first time*** in its Motion.

4

Nonetheless, the Prepetition Settlement Agreement provides procedures for the out-of-court resolution of disputes regarding the amount of a quarterly wraparound payment. Prepetition Settlement Agreement § III.D. If the parties are unable to consensually resolve the dispute, the Prepetition Settlement Agreement provides procedures for intervention by the District Court and special master. *Id.* Movant's request should be addressed through such procedures before seeking court intervention, and, accordingly, Movant's request to seek enforcement of reconciled payments should be denied, without prejudice.

11. With respect to Movant's request to seek an extension of the term of the District Court's enforcement jurisdiction over the Prepetition Settlement Agreement, while the Commonwealth notes that Movant failed to comply with the Lift Stay Protocol, the Commonwealth consents to modify the automatic stay to allow Movant to seek such an extension;[3] provided, however, the Commonwealth reserves all rights, arguments, and objections with respect to Movant's request for an extension of the term of the District Court's enforcement jurisdiction over the Settlement Agreement; and, provided, further, that the automatic stay shall remain in effect in all other respects, including, without limitation, with respect to the issue of the Commonwealth's compliance with the Prepetition Settlement Agreement.

## Objection

### I.  MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY

12. Movant has not established that cause exists to lift the automatic stay. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for

---

[3] For the avoidance of doubt, the Commonwealth does not consent to the extension of the term of the District Court's enforcement jurisdiction over the Settlement Agreement.

cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

> (1) whether relief would result in complete or partial resolution of the issues;
>
> (2) the lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the foreign proceeding involves the debtor as fiduciary;
>
> (4) whether a specialized tribunal has been established to hear the cause of action at issue;
>
> (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
>
> (6) whether the action essentially involves third parties rather than the debtor;
>
> (7) whether the litigation could prejudice the interest of other creditors;
>
> (8) whether a judgment in the foreign action is subject to equitable subordination;
>
> (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;
>
> (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
>
> (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
>
> (12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.*, 907 F.2d at 1286.

13. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts,

6

including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

14. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

15. Movant has not established that cause exists to lift the automatic stay. Instead, Movant is seeking to enforce the Prepetition Settlement Agreement to obtain the disbursement of additional amounts it alleges the Commonwealth owes, circumventing the process already prescribed in such agreement approved by the District Court to reconcile differences with regards to the wraparound payments and/or by seeking to file a new case against the Commonwealth, which would undermine the purpose of the automatic stay "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets."). The *Sonnax* factors point squarely toward maintaining the automatic stay and against the relief Movant seeks.

7

16. ***Sonnax* Factor 1:** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—militates against the lifting of the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

17. Here, Movant does not identify any bankruptcy issue related to the Title III cases that would be resolved by allowing Movant to enforce the Prepetition Settlement Agreement and/or file a new litigation against the Commonwealth. Indeed, as noted above, pursuant to the PPS Manual and the Prepetition Settlement Agreement, there are procedures for out-of-court resolution of Movant's request to rebase its PPS rate and to resolve disputes regarding the payment of quarterly wraparound payments. Movant merely argues that "relief will result in complete resolution of the issues." Motion at 19, ¶ 52. Movant bear the burden of establishing cause, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Therefore, the first *Sonnax* factor does not support granting the Motion.

18. ***Sonnax* Factor 2***: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay. The Commonwealth would be required to disburse funds unnecessarily to litigate the enforcement of the Prepetition Settlement Agreement, while Movant has failed to seek out-of-court resolution of disputed quarterly wraparound payments and PPS rate rebasing pursuant the Prepetition Settlement Agreement's dispute resolution procedures and the procedures outlined the PPS Manual. The Commonwealth would also be required to defend itself from a new complaint which Movant alleges it intends to file, which would interfere with its Title III case and overall restructuring by diverting critical funds from its recovery efforts.

19. Thus, the second *Sonnax* factor weighs in favor of denying the Motion. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *In re City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (denying lift-stay motion where it would consume the time and attention of the debtor's officers).

20. ***Sonnax* Factor 4***: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal has been established to hear the Prepetition Action. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

21. ***Sonnax* Factor 5***: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed full or indeed any financial

9

responsibility for compliance with the Settlement Agreement. Thus, *Sonnax* factor 5 does not support granting the Motion.

22. ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

23. Here, the Prepetition Action does not involve third parties. The Prepetition Action solely concerns the Commonwealth, the Department of Health as an entity of the Commonwealth, and the Secretary of Health, the latter for which the Commonwealth would be required to expend its own funds to defend and indemnify. Therefore, Sonnax factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

24. ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—weighs in favor of denying the Motion. First, lifting the automatic stay would give Movant an unfair and undue advantage over other creditors. Movant

10

seeks to lift the automatic stay to enforce a prepetition agreement. The Prepetition Settlement Agreement is subject to rejection in the Commonwealth's Title III case and any resulting claims would treated in the claims resolution process in the Commonwealth's Title III case and ultimately a plan of adjustment, as with all other similarly situated claims. Allowing Movant to proceed now would be in sharp contrast to Bankruptcy Code section 362's purpose to provide the debtor temporary relief while it conducts an orderly adjustment of its debts. *See Matter of Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ("[The automatic stay] protects all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims."). Movant proffers no adequate reason that it should be prioritized over other creditors and granted such an unfair advantage, nor why the purpose of the automatic stay should be ignored in their case.

25. Second, any time and money expended by the Commonwealth to litigate the compliance with Prepetition Settlement Agreement, is time and money diverted from the overall recovery and reorganization of the Commonwealth and from the ultimate distribution to other creditors (especially when procedures pursuant to the Prepetition Settlement Agreement and the PPS Manual for out-of-court dispute resolution are available), a factor that numerous courts have recognized counsels against the lifting of a bankruptcy stay. *See, e.g., In re Residential Capital*, 2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to

11

defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. at 379 (declining to lift stay in part because it "will deplete the coffers of the City treasury"). Accordingly, *Sonnax* factor 7 does not support granting the Motion.

26. ***Sonnax* Factor 10:** The tenth *Sonnax* factor— the interest of judicial economy and the expeditious and economical determination of litigation for the parties—weighs against granting the Motion. As noted above, lifting the automatic stay to allow Movant to pursue litigation in the Prepetition Action or commence a new action is unnecessary and wasteful when procedures for out-of-court resolution of the issues Movant raise are available pursuant to the Prepetition Settlement Agreement and the PPS Manual. Accordingly, modifying the automatic stay to allow Movant to pursue litigation would not result in the expeditious and economical determination of the issues for the parties. Movant has not met their burden of showing how lifting the automatic stay would advance the interest of judicial economy, but rather, merely makes the conclusory statement that "the interests of judicial economy and the expeditious and economical resolution of the relief requested herein warrant that it be heard by the District Court due to its familiarity with Case No. 06-01260 and the other FQHC cases." Motion at 20, ¶ 52. Thus, *Sonnax* factor 10 weighs in favor of denying the Motion.

27. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. As previously noted, the Commonwealth would be required to disburse a substantial amount of funds to litigate the compliance with the Prepetition Settlement Agreement and defend the filing of a new complaint against the Commonwealth. The diversion of the Commonwealth's resources would in turn prejudice the interests of other similarly situated creditors. On the other hand, any harm Movant

12

would suffer from delay in collection of their asserted claim is similarly shared with all other creditors of the Commonwealth. Maintaining the automatic stay would simply preserve the status quo pending the Commonwealth's restructuring and recovery efforts under Title III. Movant's claims will be addressed in the claims resolution process and a plan of adjustment in the Commonwealth's Title III case. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.[4]

## CONCLUSION

28. Movant has failed to establish cause to justify lifting the automatic stay in the Commonwealth's Title III case to allow the enforcement of the Prepetition Settlement Agreement and/or the filing of a new complaint against the Commonwealth. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: August 4, 2020
      San Juan, Puerto Rico            Respectfully submitted,

**INÉS DEL CARMEN CARRAU MARTÍNEZ**
Secretary of Justice

**WANDYMAR BURGOS VARGAS**
Deputy Secretary in Litigation

**SUSANA PEÑAGARÍCANO-BROWN**
Director of Legal Affairs
Federal Litigation and Bankruptcy Division

*s/ Michel Mir-Martínez*
**Michel Mir Martínez, Esq.**

---

[4] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor; and (11) whether the foreign proceedings have progressed to the point where parties are prepared for trial) are not addressed as they are inapplicable here.

USDC No. 305904
Email: mmir@justicia.pr.gov
Phone: 787-721-2900, Ext. 1415

Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2900 Ext. 2500, 2501

*Attorneys for the Commonwealth of Puerto Rico*

14