# Reimbursement Ruling Federally Qualified Health Centers (FQHC)

## MEDICAID PROGRAM

**PUERTO RICO DEPARTMENT OF HEALTH**

2019

# Reimbursement Ruling

1. GENERAL PROVISIONS .................................................................................................................. 2

   1.2   DEFINITIONS & SCOPE OF SERVICE .................................................................. 3-4

   1.3   Federally Qualified Health Centers ………………………………………………… 4-5

2. PUERTO RICO FQHC REIMBURSEMENT ................................................................... 5

   2.1   FQHC REIMBURSEMENT FOR SERVICES TO DUAL ELIGIBLE INDIVIDUALS ..................................... 6

3. WRAPAROUND PAYMENT DETERMINATION – FORMULA ................................................. 7-8

   3.1   MULTIPLE PROVIDER NUMBERS .................................................................................. 9

4. COMPONENTS OF THE WRAPAROUND PAYMENT FORMULA ................................................. 9

   4.1   NUMBER OF MEDICAID BENEFICIARIES VISITS .................................................... 9-12

   4.2   PROSPECTIVE PAYMENT SYSTEM (PPS) RATE ...................................................... 12-22

   4.3   INCOME RELATED TO MEDICAID BENEFICIARIES ................................................ 22-23

5. TIMELINE SCHEDULE FOR DOCUMENTATION ............................................................. 24–25

6. RECORD KEEPING ........................................................................................................ 25

7. CHANGES IN SERVICE ................................................................................................. 26

8. OTHER CHANGES ........................................................................................................ 27

9. APPEALS ...................................................................................................................... 28

10. RECOUPMENT OF OVERPAYMENT ................................................................................ 28

11. VALIDITY CLAUSE ...................................................................................................... 28

12. Ruling Authority ...................................................................................................... 29

13. Contact Information .................................................................................................. 29

# 1. General Provisions

## 1.1    Background

Federally qualified health centers (FQHCs) are primary care clinics first established in 1965 as part of President Lyndon Johnson's War on Poverty. Located in underserved areas, they maintain an "open door" policy, providing care regardless of an individual's ability to pay. Consequently, they serve a disproportionate share of uninsured individuals and Medicaid beneficiaries.

In 1975, the federal authorities passed a special Community Health Center program which was authorized under Section 330 of the Public Health Service Act. This program included a few points that helped the public understand the basic purpose of these centers and this clarification helped the centers understand their rights and duties. These facilities were defined as sites for comprehensive primary care. The centers were supposed to involve the local community and deliver high-quality primary care with the help of qualified, trained professional staff.

FQHCs include community health centers, migrant health centers, health care for the homeless health centers, public housing primary care centers, and health center program "look-alikes." They also include outpatient health programs or facilities operated by a tribe or tribal organization or by an urban Indian organization. FQHCs are paid based on the FQHC Prospective Payment System (PPS) for medically-necessary.

On December 21, 2000 the President of the United States signed the "Medicare, Medicaid, and SCHIP Benefits Improvement Act of 2000" (BIPA). This Act brought forth a prospective payment methodology (PPS) to establish a minimum Medicaid per visit rate.[1]

The Prospective Payment System (PPS) established by BIPA required that FQHCs be reimbursed at a minimum rate provided to Medicaid beneficiaries. The previous cost-based reimbursement systems made payments to the health centers after the service had been performed. The new PPS established a payment rate for a service before the service is delivered. This PPS rate is determined individually for each FQHC. The Act also established that this base rate would be adjusted yearly by the percentage increase in the Medicare Economic Index (MEI) and adjusted to take into account any increase or decrease in the scope of services provided by the Center.[2]

---

1 42 USC 1396a(bb)(1-3).
2 42 USC 1396a(bb)(3)(a-b)

2

## 1.2    Definitions

The following words and terms, when use in this chapter, shall have the following meanings, unless the context indicates otherwise:

**"HEALTH CENTER" -** An entity that serves a population that is medically underserved, or a special medically underserved population comprised of migratory and seasonal agricultural workers, the homeless, and residents of public housing, by providing, either through the staff and supporting resources of the center or through contracts or cooperative arrangements.

**"THE PROSPECTIVE PAYMENT SYSTEM (PPS)"** –is a method of reimbursement in which Medicare payment is made based on a predetermined, fixed amount. The payment amount for a particular service is derived based on the classification system of that service (for example, diagnosis-related groups for inpatient hospital services). CMS uses separate PPSs for reimbursement to acute inpatient hospitals, home health agencies, hospice, hospital outpatient, inpatient psychiatric facilities, inpatient rehabilitation facilities, long-term care hospitals, and skilled nursing facilities.

**"INDEPENDENT CLINIC" –** Includes, but not limited to, clinic such as ambulatory care facility, ambulatory surgical center, ambulatory care/family planning clinic and federally qualified center.

**"ENCOUNTER"** - An encounter is defined as a face to face event between a patient and an FQHC provider of health care services who exercises independent judgment when providing health services to the patient. A rendering practitioner may be a physician, clinical psychologist, psychiatrist, dentist, or clinical social worker employed by or holding a contract directly with the FQHC and providing a service as defined in 42 U.S.C §1396d(a)(2)(C).

**"VISIT"** - A visit is defined as <u>one or more</u> related encounters. Related encounters may or may not occur on the same day. For a health service to be defined as a Medicaid/CHIP visit, it must be included in the FQHC's defined scope of services as approved by Puerto Rico and billed under the FQHC's provider number. All services must be documented in the beneficiary's medical record in order to qualify for a visit. An FQHC cannot obtain reimbursement for more than one (1) visit per day for each beneficiary unless there are two (2) separate visits with two (2) separate diagnoses. Ancillary services provided without a face-to-face visit as defined above, do not constitute a visit.

**"ASES"** – Administración de Seguros de Salud de Puerto Rico as it's known by its Spanish – language acronym.

## 1.2 Scope of Service

This booklet describes the ruling for the Prospective Payment System (PPS) program for the Medicaid Program in Puerto Rico.

Medically necessary services provided in an independent clinic setting shall meet all applicable state and Federal Medicaid laws, and all applicable policies, rules and regulations as specified in the appropriated provides service manual for the PR Medicaid Program. Failure to comply with the mentioned regulations could delay payments as required, cancellations, and any other guideline that the law may provide PR Medicaid Program to exercise.

## 1.3    Federally Qualified Health Centers

In 1989, Congress amended the Social Security Act to include a new provider type known as the Federally Qualified Health Center (FQHC or the Center).[3] FQHCs qualify for enhanced reimbursement from Medicare and Medicaid, as well as other benefits. FQHCs must fall under one of the following categories:

    a.   receiving grants under Title 42, Chapter 6A, Subchapter II, Part D, subpart I, section 254b of the U.S. Code (formerly known as Section 330 of the Public Health Services Act);

    b.   receiving the grants referenced above based on the recommendation of the Health Resources and Services Administration within the Public Health Service, as determined by the Secretary, to meet the requirements for receiving such a grant, or

    c.   a tribe or tribal organization operating outpatient health programs or facilities under the Indian Self-Determination Act.

An FQHC is unique only in the way it is paid for services eligible for a visit payment, not by the scope of coverage for which it is paid. An entity with multiple sites may be designated as a single FQHC, or each site may be designated as an individual FQHC, depending on the designation by the US Department of Health & Human Services (DHHS).

Participation in the FQHC program is voluntary. Puerto Rico allows only DHHS designated FQHCs to participate in its FQHC program. Participating FQHCs receive payment only for services provided to clients enrolled in Title XIX (Medicaid) or Title XXI (CHIP). Nonparticipating DHHS designated FQHCs receive reimbursement on a fee for service basis.

The Health Centers Consolidation Act of 1996 consolidated and reauthorized provisions relating to health centers. It defines health centers as an entity that serves a population that is medically underserved, or a special medically underserved population comprised of migratory and seasonal workers, the homeless, and residents of public housing, by providing a set of required services, either through the staff and supporting resources of the center, through contracts or other cooperative arrangements.[4] In Puerto Rico, several municipalities have been designated as medically

---

2     Federal Community Health Centers and State Health Policies: A Primer for Policy Makers, June
      2008. 4 Section 330(a)(1) of the Health Centers Consolidation Act of 1996.

underserved areas since 1978.[5] In 1993, the first Federally Qualified Health Center was established in Puerto Rico.[6]

## 2. Puerto Rico FQHC

The Puerto Rico Department of Health is responsible for developing, implementing, and managing the State Plan that defines the PR Medicaid Program. Within the Department of Health, the PR Medicaid Program administers and is responsible for determining beneficiary eligibility as well as investigating beneficiary fraud and abuse. In 1993, Puerto Rico passed legislation authorizing an island-wide managed care program predominantly for low income citizens, including Medicaid beneficiaries. As part of this legislation, an interagency collaborative agreement was established to delegate implementation of the law to a new government entity, the Puerto Rico Health Insurance Administration (ASES). ASES was given the responsibility for contracting with insurance companies and overseeing the operations of the Commonwealth's managed care program.

Through ASES, Puerto Rico then provides services to Medicaid beneficiaries through a contract with a Managed Care Organization (MCOs). An MCO is a health plan insurance company with its own group of physicians and other providers that work together to provide medical services to its members. Puerto Rico contracts health insurance companies to whom it pays a fixed monthly rate per Medicaid beneficiary. The health insurance company will then cover all authorized (WAP). Wraparound payments are to be made pursuant to a payment schedule agreed by Puerto Rico and the FQHC, but in no case less frequently than every four (4) months.[7] Puerto Rico pays wraparound payments quarterly.

The PPS Office, at the PR Medicaid Program, determines FQHC reimbursement based on the Medicaid State Plan approved by CMS. The services covered are for outpatient ambulatory services included in each FQHC's approved scope of services. CMS only permits reimbursement based upon reasonable costs for services defined in the Puerto Rico Title XIX State Plan for outpatient ambulatory services as defined in Section 1861 (aa)(1) (A) − (C) of the Social Security Act which lists FQHC required core services. Reimbursement is <u>not</u> permitted for costs of health care services not in the Puerto Rico Title XIX State Plan; as defined in the FQHC required core services; as approved in each FQHC's scope of services.

---

[5] See http://muafind.hrsa.gov/index.aspx for a complete list of Medically Underserved Areas (MUA) in Puerto Rico and their year of designation.
[6] Prospective Payment System Manual, Department of Health, May 1996.
[7] 42 USC 1396a(bb)(5b).

Under BIPA, Puerto Rico is obliged to make supplemental payments to the FQHCs for the difference between the payment received by the FQHC for treating the MCO enrollee and the payment to which the FQHC would be entitled for these visits under the PR Medicaid Program of PPS.[8] This supplemental payment is also known as a wraparound payment.

## 2.1   FQHC reimbursement (Dual eligible individuals)

FQHCs are entitled to PPS reimbursement for services provided to any individual eligible for Medicaid regardless of the existence of third partythird-party liability including Medicare. However, regular third partythird-party liability collections and payments still apply and reduce the amount of PPS payments due from Puerto Rico. Generally, Medicaid managed care providers must first request Medicare interim payments and reconciliations to then request Medicaid PPS payment and reconciliations once Medicare has paid for its services. If the provider participates with an MCO that is a Medicaid plan as well as a Medicare Advantage (MA) plan, then there are two separate reconciliations that must occur for each FQHC.

Generally, in Medicare fee-for-service delivery systems, Medicare pays providers an interim payment that is based on the all-inclusive rate per visit established by the Medicare Fiscal Intermediary (FI). The rate is paid, subject to the Medicare deductible and coinsurance requirements, for each covered visit with a Medicare beneficiary. No Medicare deductible applies to FQHC services provided at FQHCs. Only FQHC services are exempt from the deductible.[9] At the end of the reporting period, RHCs/FQHCs receive an annual reconciliation payment from the FI.[10] Because of Medicare payment limits, it is possible that the Medicare per visit cost reconciliation amount is less than the Medicaid PPS per visit payment amount and Medicaid would pay the difference between the PPS rate and Medicare rate.

In Medicare Advantage health delivery systems, an FQHC is only eligible to receive a supplemental payment when FQHC services are provided during a face-to-face visit between a Medicare Advantage (MA) enrollee and one or more of the following FQHC covered core practitioners: physicians, nurse practitioners, physician assistants, certified

---

8 42 USC 1396a(bb)(5)(a) and a letter from Mr. Timothy M. Westmoreland, CMS Director, to State PR Medicaid Program Director dated January 19, 2001 regarding initial guidance on the new Medicaid PPS methodology.

9 The Medicare payment rate is calculated, in general, by dividing the total allowable cost by the number of total visits for RHC/FQHC services.

10 The FQHCs report to the FI actual allowable costs and actual visits for RHC/FQHC services for the reporting period. Also RHCs/FQHCs submit any other information as may be required. After reviewing the report, the FI divides actual allowable costs by the number of actual visits to determine a final rate for the period. Both the final rate and the interim rate are subject to screening guidelines for evaluating the reasonableness of the clinic's productivity, a payment limit, and psychiatric services limit. The FQHC payment methodology also includes one urban and one rural payment limit above which the FI will not pay. The FI compares the total payment due with the total payments made for services furnished during the reporting period. If the total payment due exceeds the total payments made, the RHC/FQHC has been underpaid. The underpayment is made up by a lump sum payment. If the total payment due is less than the total payments made, the RHC/FQHC has been overpaid for services furnished to Medicare patients. Overpayments are deducted from future payments or invoiced to the FQHC, if no further payment is due.

nurse midwives, clinical psychologists, or clinical social workers. The supplemental payment is made directly to each qualified FQHC through the Medicare FI. Each FQHC seeking the supplemental payment is responsible for submitting a claim for each qualifying visit to the FI for the amount of the interim supplemental payment rate (FQHC interim all-inclusive rate − estimated average payment from the MA plan plus any beneficiary cost sharing = billed amount > 0). Any receipts from Medicare for a Medicaid dual eligible individual - whether for an interim payment, an annual reconciliation, or a Medicare Advantage wraparound payment - must be reported in the Medicaid reconciliation and must offset the PR Medicaid Program PPS payments for which the FQHC is entitled.

## 3. Payment Determination (Formula)

At the end of each quarter, the PR Medicaid Program will make a wraparound payment and a subsequent reconciliation wraparound payment to each FQHC. These payments will be determined using the wraparound payment formula. This formula has both cost and income components. The following is the wraparound payment formula that will be used by the PR Medicaid Program to determine if a wraparound payment is needed:

| Cost | | | |
|---|---|---|---|
| Visits for the Period (#) | x | PPS Rate ($) | = Total Costs related to Medicaid Beneficiaries |
| **Income** | | | |
| Net Capitation Payment for the Period + Fee for Services received by the FQHC as a Provider + Other Payments Received to offset direct costs of providing FQHC services | x | % of Medicaid Beneficiaries assigned to the Center | = Total Income related to Medicaid Beneficiaries |
| **Wraparound Payment** | | | |
| Total Costs related to Medicaid Beneficiaries | > | Total Income to Medicaid Beneficiaries | = The excess of Costs over Income represents the Wraparound Payment |

| Total Costs related to Medicaid Beneficiaries | < | Total Income to Medicaid Beneficiaries | = | No Wraparound Payment |
|---|---|---|---|---|

Each quarter, the PR Medicaid Program will pay the FQHCs a preliminary wraparound payment based on the average of the two previous quarter's wraparound payments. This payment must be made no later than thirty (30) days after the end of the quarter.

The PR Medicaid Program will then calculate the actual wraparound payment due for that given quarter within one hundred and twenty (120) days (4 months) of the end of the quarter, to allow data to complete. For this reconciliation, the wraparound formula will be the same except that an additional step will be added to the computation to consider preliminary payment. This additional step is as follows:

| **Wraparound Payment** **Additional Step for Reconciliation Purposes** | | | | |
|---|---|---|---|---|
| Excess of Costs over Income | > | Initial Payment | = | Wraparound payment as a result of the Reconciliation. |
| Excess of Costs over Income | < | Initial Payment | = | The excess of Initial Payment represents an amount owed by the FQHC and reimbursable to The PR Medicaid Program |
| Excess of Income over Costs | | | | If a payment was made to the FQHC during the initial computation, the total amount should be reimbursed to The PR Medicaid Program. |

Once the WAP is determined the FQHC will be notified of the amount. If the preliminary payment:

- Exceeds the actual WAP, the PR Medicaid Program will deduct any excess form future payments or invoiced to the FQHC if no further payment is due.
- Is less than the actual WAP, the PR Medicaid Program will pay the difference to the FQHC within thirty (30) days of the notification.

When unusual and infrequent circumstances so require or in the case that the MCO has failed to provide the necessary documentation, the PR Medicaid Program will have an additional thirty (30) days to calculate the WAP due.

## 3.1    Multiple Provider Numbers

Each FQHC will be assigned a provider number. If an FQHC has several clinic sites, a provider number may be issued for each site. An FQHC **must use** appropriate the provider number(s) when billing to receive payment under the FQHC visit reimbursement system. Regardless of the number of sites or provider numbers assigned to each site, the FQHC will be considered a single entity for reimbursement purposes and all services provided by all entities under that FQHC will be reimbursed at the single PPS rate applicable to that FQHC.

## 4.  Components of the Wraparound Payment Formula

The following section describes each component of the wraparound formula. The components are:

- Number of Medicaid Beneficiaries Visits
- Prospective Payment System (PPS) Rate and Medicare Economic Index
- Income related to Medicaid Patients and Allocation for Medicaid Beneficiaries

## 4.1    Number of Medicaid Beneficiaries Visits

The FQHC reimbursement structure is based on a per visit basis, with individual visit rates established for each FQHC. For reimbursement purposes, a provider receives the Prospective Payment System (PPS) rate payment when a **visit** occurs, not to be confused with an **encounter.** The reimbursement is made for costs related to Medicaid's patient visits. That is why is important to define the difference between an encounter and a visit as it pertains to the calculation of the PPS rate and the wraparound payment.

## 4.1.1   How do I determine whether an encounter is a visit?

To determine whether an encounter with a patient meets the visit definition, all the following criteria must be met:

1. Independent Judgment: The provider must make an independent judgment. The provider must act independently and not assist another provider.

    Examples:

    - Visit: A primary care physician (i.e., internal medicine, pediatrician, etc.) sees a patient to monitor physiological signs and to provide medication.

    - Not a Visit: A nurse assists a physician during a physical examination by taking vital signs, history, or drawing a blood sample.

2. Documentation: All services provided must be documented in the patient's medical record. The patient's medical visit does not have to be documented with a full and complete health record to meet the  visit

criteria. It is acceptable to simply document the services provided in the patient's medical record. Emergency services may be billed as a visit when minimal services are provided even though a complete health record is not created.

3.  Each individual provider is limited to one type of visit per day for each patient, regardless of the services provided.

    Example: A physician may not bill for a medical visit and a mental health visit for the same patient on the same day. When an all-inclusive service (e.g., CPT code 59400) is billed, the subsequent visit cannot be billed with an Evaluation and Management (E/M) code and visit. (CPT procedure codes and descriptions are copyrighted by the American Medical Association [2006].)

    A dental visit and a physician visit can be billed separately on the same day by using separate diagnoses codes. In addition, if a patient visits a health center, more than one visit will be allowed if there are two different practitioners with two different specialties performing the services.

4.  Serving Multiple Patients Simultaneously - When a provider renders services to several patients simultaneously, the provider can count a visit for each patient if the services are documented in each patient's health record. This also applies to family therapy and family counseling sessions. The provider must bill each service for each patient on separate claim forms.

## 4.1.2  For what types of services may a visit be documented?

The health service provided during the visit must constitute an allowable outpatient ambulatory service under the PR Medicaid Program of State Plan; as defined in Section 1861 (aa) (1) (A)-(C) of the SSA which lists FQHC required core services; as approved by Puerto Rico in the FQHC's approved scope of services for:

- The ongoing, continuous, or repetitive management of the patient's health care, inclusive of services and supplies; and

- The overall coordination of all services provided to the patient.

| FQHC Services in Statute | Puerto Rico Medicaid Coverage |
| --- | --- |
| **Preventive Services** | |
| Preventive Services | To extent covered in Medicaid Program State Plan |
| **FQHC Core Services** | |
| Physician Services | Included |
| Mid-Level Practitioner (Physician Assistants (Pas), Advanced Registered Nurse Practitioners (ARNPs), and Certified Nurse Midwives (CNM)) Services | PAs, ARNPs, and CNM licenses do not exist in Puerto Rico |

| FQHC Services in Statute | Puerto Rico Medicaid Coverage |
| --- | --- |
| Clinical Psychologist Services | Included |
| Clinical Social Worker Services (CSWs) | Included |
| Services and Supplies "Incident to" Covered Services | Included (Do not result in a separate visit). |
| Visiting Nurse Home Health Services (in designated areas where there is a designated shortage of home health agencies) | Home Health Service is not a Medicaid covered services in Puerto Rico |
| **Other Services** | |
| Hospital Care | As covered in State Plan for outpatient ambulatory services |
| Nursing Home Care | Nursing Home Care is not a Medicaid service in Puerto Rico |
| Other Ambulatory Services | "Other ambi" services include: blood draws, lab tests, x-rays, prescriptions, and optical services (Do not result in a separate visit). Dental (may be billed as a visit) |
| Diabetes Self-Management Training Services and Medical Nutrition Therapy Services | As covered in State Plan as outpatient ambulatory services |
| EPSDT | Included |

## 4.1.3  Types of services that do NOT qualify as visits

Any service reimbursed outside of Medicaid/Chip including, but not limited to, health services provided to patients under Puerto Rico-only programs (e.g., "Vital"). There are services that are not visits in and of themselves, but these services may be provided in addition to other medical services as part of a visit.

**Note:** Record an appropriate visit for ALL eligible patient claims (e.g., Medicaid/CHIP, Medicare, Commonwealth, private pay).

## 4.1.4  FQHC-Related Activities NOT  covered

The following activities and costs are **NOT** covered by Medicaid/CHIP and **CANNOT** be billed as a visit:

1. Participation in a community meeting or group session that is not designed to provide health services.
   Examples: Informational sessions for prospective patients, health presentations to community groups, high school classes, PTAs, etc. or informational presentations about available FQHC health services.

2. Health services provided as part of a large-scale effort.

Examples: Mass-immunization program, screening program, or a community-wide service program (e.g., a health fair).

### 4.1.5  Medicaid Beneficiaries Visits

The FQHC will provide the number of visits from Medicaid beneficiaries during the period under analysis. For verification purposes, the PR Medicaid Program requests the same information to the MCO. Note that the FQHC is the primary responsible party to provide the visits.

### 4.2  Prospective Payment System (PPS) Rate

Beginning January 1, 2001, States were mandated by BIPA to pay FQHCs using a new prospective payment system based on financial information pertaining to fiscal years 1999 and 2000. The PPS rate formula provides an average cost per visit that is later adjusted in subsequent years by the Medicare Economic Index (MEI).

The rebasing formula would be as follows:

(Total Costs FY A and FY B Minus Third Party Reforma/Vital/Other Unallowable Costs FY A and FY B)
Divided By (Total Visits FY A and FY B) = Rebased PPS Rate

The allow ability of costs is presented in section 4.2.2.2.

### 4.2.1   Existing  FQHCs

To determine the baseline rate for existing FQHCs prior to January 1, 2001, each Center's 1999 and 2000 allowable costs were totaled and divided by the total number of Medicaid beneficiaries' visits for the same years. The baseline calculation included all Medicaid services provided by the FQHC regardless of existing methods of reimbursement for said services. Effective January 1 of each year, the PPS rates will be increased by the percentage change in the Medicare Economic Index (MEI) for that period.

If two or more FQHCs merge, a weighted average (using total visits) of the Centers' visit rates will be used as the visit rate for the consolidated FQHC. PPS rates for services calculated on the basis of based on this cost information are FQHC wide and apply to all locations.

### 4.2.2     New FQHCs

FQHCs receiving their initial designation after January 1, 2001, will be paid on an interim basis, an average visit rate of other FQHCs located in the same or adjacent area with similar caseloads until their permanent rates are determined. The new FQHC will receive this rate for the remainder of the calendar year in which it is established and will receive annual increases thereafter consistent with the PPS payment methodology.

Within two (2) years of receiving its initial designation, the FQHC must demonstrate its actual costs using standard cost reporting methods, to establish its base visit rate. Among the information needed to support its base visit rate the FQHCs must provide the following information or any other information requested by the PPS Office as deemed appropriate corresponding to the previous two (2) fiscal years:

- Audited Financial Statements in accordance with Generally Accepted Accounting Principles ("GAAP") and supplementary information, including notes and schedules issued by a Certified Public Accountant ("CPA") with license to practice in the Commonwealth of Puerto Rico. Single Audit Report in accordance with the Office of Management and Budget ("OMB") Uniform Guidance and/or 2 CFR 200 Uniform Guidance. The CPA must provide his current peer review and/or other credentials required for the audit of federal programs, contracts, awards, and grants.
- Audited Financial Statements and supplementary information, including notes and schedules. Single Audit must be provided.
- Trial Balances
- Detail General Ledger. This document should include at least the following columns:
    - Date of the journal entry
    - Description of the transaction
    - Reference
    - Account number
    - Account description/name
    - Debit amount
    - Credit Amount

The FQHC will also provide evidence of the Medicaid beneficiaries' visits for the same two (2) years. Puerto Rico may audit or review the new FQHC's cost information to ensure the costs are reasonable and necessary.

Once the total allowable costs and visits for the base years are determined then the total allowable and reasonable costs will be divided by the total number of Medicaid beneficiaries' visits in order to determine the baseline rate for the FQHC.

### 4.2.2.1    Allowable4.2.2.1 Allowable Visits for Baseline PPS Rate

Total (on-call and regular) staff expenses must be included in reported allowable cost information. The total visits for all patients seen by staff (both regular and on-call) must be reported and used in calculating the visit rate.

To verify the number of patients and associated number of visits that physicians and other independent practitioners have seen, the clinic must maintain records that substantiate the number of visits for:

- Practitioners who receive additional compensation for their on-call time; and

- Contract practitioners during on-call time.

### 4.2.2.2    Allowable Cost Considerations for Baseline PPS Rate

To determine the PPS rates, the following are typically considered in the determination of allowable costs:

#### –Cost Information for Cost Determination

The following guidelines are the standards recommended to consider for application to the FQHC cost information used for the establishment of PPS rates, including scope of service changes to PPS rates, and should be applied in the hierarchy listed:

- 42 CFR Section 413;

- The PR Medicaid Program policies and definitions including all billing instructions (including this manual);

- OMB Uniform Guidance[11]Circular A-122 "Cost Principles for Nonprofit Organizations;", and

- Medicare Provider Reimbursement Manual (MPRM).

#### –Allowable Direct Health Services Costs

Allowable costs are costs after any cost adjustment; cost disallowances; reclassifications; or reclassifications to unallowable costs which are necessary, proper, ordinary and related to the care of medical care clients, and are not expressly declared unallowable by applicable statutes, regulations or policies. Costs are ordinary if they are of the nature and magnitude which prudent and cost-conscious management would pay consistent with the regulations and policies above.

Direct health services costs must be directly related to patient care and identified specifically with a particular cost center.

The health services provided must constitute an allowable service under the PR Medicaid Program of State Plan [Social Security Act Section 1905(a)(2)(A)] and be approved in the FQHC's approved scope of services. This generally

---

[11] Office of Management and Budget issued the final Guidance that supersedes requirements from OMB Circulars A-21, A-87, A-110, and A-122 (which have been placed in 2 C.F.R. Parts 220, 225, 215, and 230); Circulars A-89, A-102, and A-133; and the guidance in Circular A-50 on Single Audit Act follow-up.

includes services defined in Section 1861 (aa)(3)(A)-(C); (gg) and (vv) of the Social Security Act which lists FQHC-required core services for:

- The ongoing, continuous or repetitive management of a patient's health care, inclusive of services and supplies; and
- The overall coordination of all services provided to the patient.

All services must be provided by PR Medicaid Program of State Plan' authorized providers. Services and supplies "incident to" professional services of health care practitioners are those commonly furnished in connection with these professional services, generally furnished in a physician or dentist's office and ordinarily rendered without charge or included in the practice bill, such as ordinary medications and other services and supplies used in patient primary care services. "Incident to" services must be provided by a clinic employee and must be provided under the direct, personal supervision of the health care practitioner, meaning that the health care practitioner must be physically present in the building and immediately available for consultation.[12]

FQHC core services include those professional services provided in the office, other medical facility, the patient's place of residence (including nursing homes) or elsewhere, but not the institutional costs of the hospital, nursing facility, etc. Core services are covered for Medicaid beneficiaries.

The following are covered services to the extent they are covered in PR Medicaid Program of State Plan and any approved Medicaid waivers, and costs for these services provided to PR Medicaid Program beneficiaries are allowable in the cost information:

- Preventive services
- FQHC core services
  
  –Physician services, including costs for contracted physician services, Contracted physicians must be identified in the FQHC's Core Provider Agreement. The contracted physician must be a preferred provider and receive an identification number from the Provider Enrollment Section at HRSA.
  
  –Mid-Level Practitioner services –, including costs for contracted mid-level practitioner services.
- Dentist services
- Clinical Psychologist services
- Psychiatrist services
- Clinical Social Worker services (CSWs)
- Emergency Room Services Dentist services

---

[12] "Incident to" is defined at 1861 (aa)(3)(A)-(C); (gg) and (vv) of the Social Security Act).

- Clinical Social Worker services (CSWs)
- Other Ambulatory Services
  - Blood draws;
  - Laboratory tests;
  - X-rays;
  - Pharmacy (Note: Pharmacy service costs that are not "referred services" or subcontracted services and are reimbursable under the PR Medicaid Program of State Plan would be included under direct costs in the cost information including 340B costs directly incurred by the clinics. All pharmacy costs should be included in the medical cost center of the cost information);
  - Optical services;
  - Dental *Note: all policy references in this Section to medical services include dental services as covered under the Medicaid State Plan.*
  - Other mental health practitioners eligible under the mental health benefit.
- Diabetes Self-Management Training Services and Medical Nutrition Therapy services
- EPSDT.
- Paper medical record costs including pharmacy and dental records. Because there is new funding available for electronic health records (EHR) under the American Recovery and Reinvestment Act (ARRA), all funds, credits and grants to pay for EHR should be reflected in the cost information and offset against appropriate costs. Only the unreimbursed portion of EHR is allowable. EMH costs that are not capitalized, such as monthly service costs, *are* allowable in Allowable Direct Service Costs. Hardware, software and other EHR costs meeting MPRM CMS Publication 15-1 capitalization requirements must be capitalized and depreciated (net of credits, grants, etc.); the allowable depreciation may be included in Allowable Direct Service Costs. FQHCs will place the depreciation of EHR into Allowable Direct Service Costs to result in a similar treatment of EHR to paper records and medical equipment that allows for the non-payment of costs of EHR unrelated to PR Medicaid Program.

**Documentation** – Documentation must be available for review, including support for all allowable costs and related services. Until a chart or Medicaid identification number is established for a newborn, when a practitioner sees the baby, the visit must be clearly documented in the mother's record.

### *UnAllowAble Direct HeAlth Services Costs*

The PR Medicaid Program will only pay a visit rate for services provided to an eligible Medicaid/CHIP beneficiary. Visits for any individual other than an eligible Medicaid/CHIP beneficiary are <u>not</u> reimbursed including any out-of-territory

16

Medicaid/CHIP, Medicare, private pay or uninsured services. Costs are not allowable if not documented, necessary, ordinary, and related to the delivery of care and services to eligible Medicaid/CHIP patients. Costs for services provided to Medicaid/CHIP beneficiaries that are offered by the FQHC, but not included in the Medicaid/CHIP State Plan or delivered consistent with the PR Medicaid Program State Plan and any approved waivers are unallowable, including but not limited to:

- Women, Infants and Children (WIC) Program – reimbursements for nutritional evaluation and/or nutritional counseling in the WIC program only apply when the service is part of the EPSDT program. Costs for nutritional assessment and/or nutritional counseling are allowed under the following circumstances only:

- Staff education, except for training and staff development, required to enhance job performance for employees of the clinic. Student loan reimbursements are considered to be unallowable education expenses.

- Beneficiary outreach and outreach to potential clients, except for the following type of activities: informing the target population of available services, such as telephone yellow pages, brochures, and handouts. Excluded outreach costs include but are not limited to advertising, participation in health fairs, and other activities designed to increase the number of individuals served or the number of services received by individuals accessing services.

- Assisting other health care professionals in the provision of off-site training, such as dental screening, blood pressure checks, etc.

- Public relations dedicated to maintaining the image or maintaining or promoting understanding and favorable relations with any segment of the public. For example, costs of meetings, conventions, convocations, or other events related to other activities of the non-profit organization, including: costs of displays, demonstrations, and exhibits; costs of meeting rooms, hospitality suites, and other special facilities used in conjunction with shows and other special events; and salaries and wages of employees engaged in setting up and displaying exhibits, making demonstrations, and providing briefings; costs of promotional items and memorabilia, including models, gifts, and souvenirs; and costs of advertising and public relations designed solely to promote the non-profit organization.

- Community services, such as health presentations to community groups, schools, etc.

- Environmental activities designed to protect the public from health hazards such as toxic substances, contaminated drinking water and shellfish.

- Research.

- Costs associated with the use of temporary health care personnel.

- Costs for subcontracted services (referred services) other than subcontracted physicians and independent practitioners who may bill for separate visits. For example: costs for laboratory, x-ray, and pharmacy

subcontracts that the clinic has for performance of support services. The laboratory, x-ray facility or pharmacy bills directly to and is reimbursed directly from MCO or the PR Medicaid Program.

- Institutional services such as hospital care, skilled nursing care, home health services, rehabilitative services, inpatient or outpatient mental health services that are provided on an inpatient or outpatient basis, excluding the professional component (which may be included in the cost information).

- Services that are not directly provided by the clinic.

- Services by alternative providers not covered in the PR Medicaid Program (PPS Office) State Plan (i.e., acupuncturists).

### *Overhead Costs* [13]

Overhead costs are those that have been incurred for common or joint objectives and cannot be readily identified with a particular final cost objective. Allocated overhead costs must be clearly segregated from other functions and identified as a benefit to a direct service. Costs that can be included in the overhead cost center consistent with the regulations and policies are:

- Space costs, which are defined as building depreciation, mortgage interest and facility lease costs. The FQHC is required to have a reasonable floor space allocation plan that adequately documents facility usage. At least 25 percent of the facility must be used for a direct cost function (i.e., medical). Depreciation in the Medicaid Cost Report must be consistent with that claimed on the clinic's Medicare cost report. Guidelines may be found in the Medicare Provider Reimbursement Manual CMS publication 15-1. The FQHC will utilize its Medicare depreciation schedule for all items and maintain documentation of that schedule for Medicaid auditors.

- Financing costs (including interest) to acquire, construct, or replace capital assets, subject to the conditions of the OMB Uniform Guidance section 200.

- Billing department costs that are separate and distinct functions of the FQHC for the purpose of billing for medical/behavioral/dental care only. Staff must be solely dedicated to medical billing and duties must be assigned in advance.

- Medical receptionist, program registration, and intake costs.

- Supplies, telephones, Electronic Practice Management, and copy machines.

---

[13] Direct cost of minor amounts may be treated as indirect costs as described below. Because of the diverse characteristics and accounting practices of non-profit organizations, it is not possible to specify the types of direct costs which may be classified as indirect costs in all situations. However, typical examples of direct costs that may be treated as indirect costs for many non-profit organizations may include depreciation or use allowances on buildings and equipment, the costs of operating and maintaining facilities, and general administration and general expenses, such as the salaries and expenses of executive officers, personnel administration, and accounting.

- Dues for personnel to professional organizations that are directly related to the individual's scope of practice. **Limited to one professional organization per professional**.

- Utilization and referral management costs.

- Credentialing.

- Clinical management costs.

- Dues to industry organizations. Limited to those dues that are not grant funded or used by organizations for lobbying activities. **Limited to one industry organization per clinic**. Note: this includes memberships in business, technical, and professional organizations.

- Costs associated with employees who verify Medicaid eligibility.

- Data processing expenses (not including computers, software or databases not used solely for patient care or clinic administration purposes).

- Finance and Audit Department costs.

- Human Resources Department costs.

- Administration and disaster recovery and preparedness costs.

- Facility and phone costs for out-stationed financial workers.

- Per Circular OMB A-122OMB Uniform Guidance, maintenance costs incurred for necessary maintenance, repair or upkeep of buildings and equipment (including Federal property unless otherwise provided for), which neither add to the permanent value of the property nor appreciably prolong its intended life, but life but keep it in an efficient operating condition. Costs incurred for improvements which add to the permanent value of the buildings and equipment or appreciably prolong their intended life shall be treated as capital expenditures.

- Per Circular OMB A-122OMB Uniform Guidance, security costs and necessary and reasonable expenses incurred for routine and homeland security to protect facilities, personnel, and work products, are allowable. Such costs include, but are not limited to: wages and uniforms of personnel engaged in security activities, equipment, barriers, contractual security services, consultants, etc.

### *Unallowable Overhead Costs And Other Expenses*

Unallowable costs, as noted in Federal regulations at 42 CFR 413, should be removed from Medicaid cost information. Other unallowable overhead costs and expenses consistent with the regulations and policies stated above include but are not limited to the following:

- **Costs not related to patient care.**

- **Indirect costs allocated to unallowable direct health service costs** are also unallowable per Circular OMB A-122OMB Uniform Guidance. The costs of certain activities are unallowable as charges to Federal awards (for example, fundraising costs). However, even though these costs are unallowable for purposes of computing charges to Federal awards, a share must be allocated to the organization's indirect costs if they represent activities which (1) include the salaries of personnel, (2) occupy space, and (3) benefit from the organization's indirect costs.

- **Interest** – costs incurred for interest on borrowed capital, temporary use of endowment funds, or the use of the non-Federal entity's own funds are unallowable as per Uniform Guidance section 200.449.

- **Entertainment** (e.g., office parties/social functions, costs for flowers, cards for illness and/or death, retirement gifts and/or parties/social functions, meals and lodging) are unallowable. This includes amusement, diversion, and social activities and any costs directly associated with such costs (such as tickets to shows or sports events, meals, lodging, rentals, transportation, and gratuities). These costs are unallowable and cannot be included as a part of employee benefits.

- **Board of Director Fees** – Travel expenses related to mileage, meal and lodging for conferences; and registration fees for meetings not related to operating the clinic (e.g., clinic-sponsored annual meetings, retreats, and seminars). Allowable travel would include attending a standard Board of Directors' meeting. The reimbursement level for allowed travel is based on the lesser of actual costs or Puerto Rico travel regulations.

- **Federal, territory, and other income taxes and excise taxes.**

- **Medical Licenses** – Costs of medical personnel professional licenses.

- **Donations, services, goods and space** except those allowed in Circular A-122OMB Uniform Guidance and the MPRM.

- **Fines and penalties.**

- **Bad debts,** including losses (whether actual or estimated), arising from uncollectable accounts and other claims, related collection costs, and related legal costs

- **Advertising**, except for the recruitment of personnel, procurement of goods and services, and disposal of medical equipment and supplies.

- **Contributions to a contingency reserve** or any similar provision made for events, the occurrence of which cannot be foretold with certainty as to time, intensity, or with an assurance of their happening. The term "contingency reserve" excludes self-insurance reserves, pension funds, and reserves for normal severance pay.

- **Over-funding contributions to self-insurance funds** that do not represent payments based on current liabilities. Self-insurance is a means by which a provider independently or as part of a group

undertakes the risk of protecting itself against anticipated liabilities by providing funds in an amount equal to anticipated liabilities, rather than by purchasing insurance coverage. Accrued liabilities related to contributions to a self-insurance program that are systematically made to a funding agency and that cover malpractice and comprehensive general liability, unemployment compensation, workers' compensation insurance losses or employee health benefits, must be liquidated within 75 days after the close of the cost reporting period.

- **Legal, accounting, and professional services** incurred in connection with hearings and re-hearings, arbitrations, or judicial proceedings against the Department. This is in addition to the unallowable costs listed for similar costs in connection with any criminal, civil or administrative proceeding in A-122OMB Uniform Guidance.

- **Fund raising costs.**

- **Amortization of goodwill.**

- **Membership dues for public relations**, except for those allowed as a direct health care covered cost or overhead cost. For example, costs of membership in any civic or community organization, country club or social or dining club or organization are unallowable.

- **Political contributions and lobbying expenses** or other prohibited activity under A-122OMB Circular Guidance.

- **Costs allocable to the use of a vehicle or other company equipment for personal use**, as well as any personal expenses not directly related to the provision of covered services; mileage expense exceeding the current reimbursement rate set by the federal government for its employee travel; or out of territory travel expenses not related to the provision of covered services, except out-of-territory travel expenses for training courses that increase the quality of medical care or the operating efficiency of the FQHC.

- **Costs applicable to services, facilities and supplies** furnished by a related organization in excess of the lower of cost to the related organization or the price of comparable service. Circular A-122 addresses consulting directly related to services rendered.

- **Vending machine expenses.**

- **Charitable contributions.**

- **Restricted grants.** Grants for specific purposes are to be offset against allowable expenses including costs paid for by specific grants or contributions (e.g. supplies, salaries, equipment, etc.) This does not include grants received under Section 330 of the Public Health Services Act. When a provider receives a payment from any source prior to the submission of a claim, the amount of the payment must be shown as a credit on the claim in the appropriate field.

- **Unallowable costs** noted in 42 CFR 413, Circular A-122 and the Medicare Reimbursement Manual (MPRM).

### 4.2.3    Adjustment of Rate

PPS Rates are adjusted as of every January 1st utilizing the published Medicare Economic Index (MEI) as prescribed in Section 1902(bb)(3)(A) of the Social Security Act.

## 4.3    Income related to Medicaid Beneficiaries

The wraparound payment to FQHCs is one of supplemental nature to make up for the difference between the income the FQHC is receiving for Medicaid beneficiaries visits and for what the FQHC is entitled to via the detailed PPS methodology. Therefore, any amount paid by the MCO or any other entity, related to Medicaid beneficiaries, has to be deducted from the wraparound computation. These payments could be made in the form of net capitation payments, fee for services and other concepts (such as Emergency Room 3rd Shift Subsidy provided by the Department of Health of Puerto Rico).

### 4.3.1    Net Capitation Payments

The managed care health plan provides services to Medicaid beneficiaries through contracted MCOs and their provider network, including FQHCs. The MCO administers its network of providers and compensates them through a capitation payment arrangement based on a predetermined rate per service. The capitation payment amount to be used in the wraparound calculation should be net of payments to third parties. [14]

The monthly capitation payments made to the FQHC can be found in the capitation reports provided by the MCO. The total capitation payments received by the FQHC must be adjusted by the percentage of the total population of the FQHC that corresponds to Medicaid beneficiaries. The sum of all payments made in the quarter adjusted by the Medicaid population breakdown percentage must be included as part of the income component of the wraparound formula.

### 4.3.2    Fee for Services

The MCO assigns the FQHC a capitation payment based on the Center's monthly membership. This payment includes all outpatient primary and preventive services that the FQHC must provide. When the FQHC cannot

---

[14] We must note that the MCO establishes a monthly payment per beneficiary that covers all services included in the contract between the FQHC and the MCO. If any of the services that must be provided by the FQHC is provided by a third party the MCO pays for this service and discounts it from the capitation payment made to the FQHC. Therefore, the FQHC receives a capitation payment net of all payments to third parties.

provide one of these required services, and refers the Medicaid beneficiaries to a third party, the MCO discounts this payment from the monthly capitation paid to the FQHC. In some of these cases, the patients are referred to other providers that the FQHC administers itself. For these services the MCO pays the FQHC as if it were a third party. These payments are known as a fee for services (FFS) paid to the FQHC as a provider (or third party). The sum of all payments made in the quarter adjusted by the Medicaid visits breakdown percentage and they must be included as part of the income component in the wraparound formula.

### 4.3.3     Other Payments Received

The FQHC can receive other payments related to all the patients served. If the Department of Health of Puerto Rico or another governmental entity makes this payment, but are not consider in the wraparound payment computation, the income of the FQHC will be underestimated, which will overstate the wraparound payment. Therefore, other payments such as Emergency Room 3rd Shift Subsidy provided by the Department of Health of Puerto Rico needs to be included in the formula.

### 4.3.4     Allocation for Medicaid  beneficiaries

The payments received by the FQHC and mentioned above, cover services to all patients treated by the Center and not just Medicaid beneficiaries. In order to determine the portion of the payments received corresponding to Medicaid beneficiaries, the monthly membership of the FQHC will be established. The MCO provides the PR Medicaid Program with a report that includes the total members per category assigned to the FQHC each of the months corresponding to the quarter under analysis. The different categories of patients assigned to the FQHCs are:

- Federal Medicaid
- Chips
- State Medicaid

The total Federal Medicaid and Chips patients divided by the total members assigned to the FQHC will represent the percentage of income received by the FQHC related to Medicaid beneficiaries.

## 5. Timeline Schedule for documentation

All necessary data will be collected by the PPS Office and ASES. The table below shows the timeline to submit the necessary information in order for the PR Medicaid Program, PPS Office to timely disburse any wraparound payment, when applicable.

| Document Needed | Responsible Entity | Purpose | Due Date |
|---|---|---|---|
| Medicaid Beneficiaries assigned to the FQHC (Population) | From MCO to ASES to Medicaid | Determine population Multiplier | 15 calendar days following the end of each calendar quarter |
| Visits for the Period (#) | From MCO to ASES to Medicaid FQHC | Determine:<br>(1) Number of visits from qualifying beneficiaries during the quarter<br>(2) Costs of services<br>(3) Visits Multiplier | 15 calendar days following the end of each calendar quarter Revised information should be provided 60 calendar days following the end of each calendar quarter |
| Visits for the Period | From FQHC to Medicaid | For validation purposes | 15 calendar days following the end of each calendar quarter |
| Net Capitation Payment for the Period | From MCO to ASES to Medicaid MCO | Determine income for the quarter | 15 calendar days following the end of each calendar quarter |
| Fee for Services received by the FQHC as a Provider | From MCO to ASES to Medicaid MCO | Determine income for the quarter | 15 calendar days following the end of each calendar quarter |
| Other Payments received by the Center FQHC | Department of Health of Puerto Rico and/or any other responsible entity | Determine income for the quarter | 15 calendar days following the end of each calendar quarter |

All information should be FQHCs shall submit their reconciliation request and supporting information within 15 calendar days following the end of each calendar quarter. The PR Medicaid Program will review the information and request any clarification within thirty (30) days of receipt of the information. The wraparound payment formula and any amount owed shall be disbursed within thirty (30) days of receiving all information and explanation of any all doubts (no later than sixty (60) days from receiving the information for the first time).

The timely payment of the wraparound payment is subject to the FQHC cooperation providing the correct information on the period required.

## 6. Record Keeping

The FQHC must maintain all clinical and fiscal records in accordance with written policies and procedures. The records must distinguish one type of service from another. A designated professional staff must be responsible for maintaining the records to ensure that they are complete, accurate, readily accessible, and organized.

The FQHC is responsible for:

- Maintaining adequate financial and statistical records in the form that contains the data required by the PPS Office.
- Making the records available for verification and audit by the PPS Office or its contracted auditing agent, and
- Maintaining financial data on an accrual basis, unless it is part of a governmental institution that uses a cash basis accounting.

The FQHC must maintain the confidentiality of records, provide safeguards against loss, destruction or unauthorized use, govern removal of records from the Center and the conditions for release of information. The recipient's written consent must be obtained before the release of information not authorized by law.

Reimbursement may be suspended if the FQHC does not maintain records that provide an adequate basis to support payments. The suspension will continue until the FQHC demonstrates to the satisfaction of the PPS Offices it does, and will continue to, maintain adequate records.

Records must be retained for at least seven (7) years from the date of service or longer as required by Puerto Rico's statute.

## 7. Changes in Service

Puerto Rico will adjust the PPS rate for any changes in services that qualify as scope of service changes. A scope of service change is defined as a change in the type, intensity, duration and/or amount of services provided by the FQHC. Changes in costs alone shall not be considered changes in the scope of services.

The FQHC is responsible for notifying the PR Medicaid Program, in writing, of any change in the scope. When such an evaluation of the PPS rate is necessary due to a change in the scope of services, the following procedure will be followed:

- The FQHC will provide to the PR Medicaid Program sufficient and necessary documentation for any approved scope of service change, including:
  a. A full description of the change and the date the new or deleted services are effective.
  b. Evidence that the new service is under contract with the MCO.
  c. Projected cost for the new/deleted service with related projected impact in the number of visits
  d. Anticipated impact on the overall FQHC costs and visits (e.g. facility costs, administrative allocations, etc.)
  e. Any other information the PR Medicaid Program deems appropriate to perform an accurate estimate of the impact of the change in scope

- Upon receipt of all required information, the P R Medicaid Program will establish an interim rate for any approved scope of service change

- The interim rate will be effective on either the date the new/deleted service began or sixty (60) days   prior to the date the PR Medicaid Program received written notice of the scope of service change, whichever is later.

- Within eighteen (18) months of approval of the effective date, the Center must submit twelve (12) months of cost and visit information reflecting actual costs of the new/deleted service and the impact to overall FQHC costs and total visits.

- The PR Medicaid Program will review the information to determine if the costs are reasonable and necessary, and adjust the interim rate by the allowable cost-per-visit to establish a final visit rate. The final new visit rate will be implemented retroactively back to the effective date.

This procedure may be triggered by the FQHC or the PR Medicaid Program through a formal letter send to the other party notifying the scope of change.

## Categorizations of Scope changes

| Type | Categorization | Example |
|------|----------------|---------|
| Type A | Scope change would incorporate the majority of costs (e.g., is primarily characterized as uncapped administration). | New expenses due to paper medical records and depreciation associated with Electronic Health Records, medical receptionists and telephones related to practice management |
| Type B | Scope change that some but not all costs would be incorporated (e.g., is primarily characterized as capped administration), | Billing department expenses; data processing expenses; finance and audit department costs; human resource costs; maintenance; space costs devoted to administration and not to medical care |
| Type C | Scope change that would increase the number of encounters and could affect the average costs (e.g., additional volume of substantially different services) | Adding vision services to the clinic when none had previously been provided. Note: this could result in a decrease in PPS rate if the service added has less average cost than the historic services provided. |
| Type D | Scope change that primarily would increase the number of encounters without affecting the average costs (e.g., additional volume of similar or existing services). In this case very little if any of the additional costs would be reflected in an increased PPS rate. | Adding more capacity for primary care providers such as mid-level practitioners or a new site providing primary care |
| Type E | whether the request results in a scope change that is primarily non-allowable costs | Beneficiary outreach and non-covered services such as acupuncturists |

## 8. Other Changes

FQHCs are required to notify the PR Medicaid Program, in writing, within seven (7) working days of any of the following changes:

- Loss of FQHC status,
- Opening(s) and/or closing(s) of any satellite center(s),
- Change in ownership

When there is a change in ownership, PR Medicaid Program must be notified within thirty (30) calendar days of the date of the FQHC ownership change.

## 9.  Appeals

It is the policy of PPS Office at PR Medicaid Program to negotiate all conflicts in a professional and organized manner. All FQHCs will have up to sixty (60) days after receiving notice of its wraparound payment to submit to the PPS Office any objections as to the amount. The FQHC must provide a detailed claim, including copy of all the evidence that supports the FQHC allegation.

Once the PPS office receives the claim it will have an additional thirty (30) days to review the FQHC's claim and communicate its decision to the FQHC. If the PPS office discovers an error and determines that an additional payment is due, PR Medicaid Program will have fifteen (15) days following such determination to pay the FQHC the amount due. If the PPS Office concludes that the wraparound calculation is correct, and no additional payment is due, a notification will be send to the FQHC on that regard.

Any unresolved conflict or controversy between any FQHC and PR Medicaid Program or PPS Office will be handled in first instance according to the administrative guideline number 85 of the Puerto Rico Department of Health **"Reglamento del Secretario de Salud para Regular los Procedimientos Adjudicativos en el Departamento de Salud y sus Dependencias"** and by the Law number 38 from June 30, 2017, **"Ley de Procedimientos Administrativos Uniforme del Gobierno de Puerto Rico (LPAU)".**

## 10.  Recoupment of Overpayment

Each FQHC is individually liable for any payments received and must ensure that it receives payments only for eligible visits and services. FQHCs supporting documentation for wraparound payments are subject to audit by the PR Medicaid Program of PPS Office, and FQHCs are responsible to repay any overpayments complete by mistake, misleading, misinformation, fraud or any other underserved payment made on the wrong belief of accurate information. Upon petition, complete and legible documentation must be made available to PR Medicaid Program of PPS Office on the time frame requested.

## 11.  Validity Clause

If any provision of this Ruling is declared invalid or unconstitutional by a competent court, such determination will not affect the validity of the remaining provisions thereof.

## 12.     Ruling Authority

This Ruling repeals any previously regulation on this matter made by PR Medicaid Program. This Regulation will enter into force immediately after approval by the PR Medicaid Program Executive Director and/or by the Secretary of the Department of Health of Puerto Rico.

_____                    _____
**PR Medicaid Program Director**                         **Secretary of the Department of Health of PR**

## 13.     Contact Information

All correspondence shall be directed to:

**Attn: PPS Officer**

PR Medicaid Program (PPS

Office)

PR Department of Health

PO Box 70184

San Juan, PR 00936-8184

Telephone: 787-765-2929 x 6700