# EXHIBIT 3

**PREPA and FOMB's Responses and Objections to UTIER's Discovery Requests**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br><br>Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17-BK-4780-LTS |

## RESPONSES AND OBJECTIONS OF THE PUERTO RICO ELECTRIC POWER AUTHORITY AND THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO THE FIRST REQUEST FOR PRODUCTION OF DOCUMENTS OF UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO INC. AND SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGÍA ELÉCTRICA

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable to this proceeding by section 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") (48 U.S.C. § 2170) and Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, the Local Rules of the United States Bankruptcy Court for the District of Puerto Rico, and the presiding Court's chambers practices and case management orders (collectively, the "Governing Rules"), the Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB"), as PREPA's representative pursuant to section 315(b) of PROMESA, and the Oversight Board on its own behalf, by and through undersigned counsel, hereby respond and object to the *First Request For Production Of Documents To Debtor Puerto Rico Electric Power Authority And FOMB* served by the Unión de Trabajadores de la Industria Eléctrica y Riego Inc. ("UTIER") and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") dated July 23, 2020 (the "Requests for Production," and each individual request for production of documents a "Request"), as follows:

## PRELIMINARY STATEMENT

The Oversight Board's responses and objections to the Requests for Production (the "Responses and Objections") are made on its behalf and on behalf of PREPA and are without prejudice to the right to amend or supplement the response herein if necessary at a later date.[2]  Within the compressed timeframe under which the parties are working, the Oversight Board has made reasonable efforts to respond to the Requests for Production, to the extent not objected to, as the Oversight Board understands and interprets the Requests for Production. If UTIER and SREAEE subsequently assert an interpretation of the Requests for Production that differs from that of the Oversight Board's, the Oversight Board reserves the right to supplement its objections.   By making

---

[2]  Any and all responses and objections made by the Oversight Board herein are asserted on its behalf and on behalf of PREPA.

the objections below, the Oversight Board does not waive and expressly reserves its right to make additional objections.

## <u>GENERAL OBJECTIONS</u>

1.     The Oversight Board objects to the Requests for Production, and to each and every Request, as irrelevant, overbroad, and unduly burdensome to the extent they seek information neither necessary nor proportionate to the narrow question whether to approve the *Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (Case No. 17-BK-4780-LTS, ECF No. 2053) (the "<u>Administrative Expense Motion</u>").

2.     The Oversight Board objects to the Requests for Production, and to each and every Request, to the extent (i) they exceed the legitimate scope of discovery in connection with the instant Administrative Expense Motion; and/or (ii) the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in controversy, and the parties' resources.

3.     The production of any document pursuant to the Requests for Production does not constitute an admission by the Oversight Board that such document is relevant or material to the issues before the Court or is admissible.  The Oversight Board may produce documents that are irrelevant and inadmissible, but does so solely to expedite the process without any concession that such Requests are relevant or material to the instant contested matter.

4.     The Oversight Board objects to the Requests for Production, and to each and every Request, to the extent they seek documents without restrictions as to date.  The Oversight Board will not produce documents or communications that pre-date February 1, 2019, or otherwise seek documents outside the timeframe relevant to the instant contested matter.

5.     The Oversight Board objects to the Definitions, the Instructions, and the Requests

for Production, and to each and every Request, to the extent they purport to impose burdens on the Oversight Board inconsistent with, or not otherwise authorized by, or seek to impose obligations that exceed those imposed by, the Governing Rules.  In responding to these Requests, and unless otherwise noted, the Oversight Board will construe all words in accordance with their ordinary English meaning, as informed by the Governing Rules.  The Oversight Board will construe and respond to the Requests for Production and each Request in a manner consistent with its obligations under the Governing Rules, and not otherwise.

6.      The Oversight Board objects to the Requests for Production, and to each and every Request, to the extent the information sought is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Oversight Board intends to and does assert any and all such privileges with respect to all such information.     Nothing in these Responses is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.

7.      The Oversight Board objects to the Requests for Production, and to each and every Request, as unduly burdensome to the extent they request the Oversight Board produce documents outside the Oversight Board's possession, custody or control.   The Oversight Board further objects to the Requests for Production, and to each and every Request, to the extent they call for information publicly available, unreasonably cumulative or duplicative, or obtainable from another source more convenient, less burdensome, or less expensive, including documents in the possession of UTIER and SREAEE.

8.      The Oversight Board objects to the Requests for Production as unduly burdensome because they are cumulative or duplicative of other discovery requests served on other entities.  The

Oversight Board will not produce documents more readily obtained from, or being produced by, other entities.  Subject to the other general and specific objections set forth herein, the Oversight Board will use reasonable diligence to obtain responsive documents in its possession, custody or control based on an examination of those files reasonably expected to yield responsive documents not likely to be duplicative of documents in the possession, custody or control of other entities, but will not undertake to obtain documents that are publicly available, unreasonably cumulative or duplicative, or obtainable from another source more convenient, less burdensome, or less expensive, including information known to UTIER and SREAEE.

9.      The Oversight Board objects to the Requests for Production, and to each and every Request, to the extent they seek documents containing information confidential or proprietary in nature, or otherwise constituting protected commercial, strategic, financial or competitively sensitive or trade secret information.

10.      The Oversight Board objects to the Requests, and to each and every Request, to the extent they (i) imply the existence of facts or circumstances that do not or did not exist, or (ii) state or assume legal or factual conclusions.  By providing these Responses and Objections, the Oversight Board does not admit any factual or legal premise in the Requests.

11.      The Oversight Board objects to the Requests, and to each and every Request, as overbroad and unduly burdensome to the extent they purport to require the Oversight Board to

provide "each," "all" or "any" document or communication concerning a topic, so as to make it impossible to identify the limits of the inquiry, and to make the topics so overbroad as to be impossible to reasonably address.

12.      The Oversight Board objects to the definition of the terms "Document" and "Documents" to the extent it imposes duties on the Oversight Board that differ from or exceed those imposed by the Governing Rules.  The Oversight Board further objects to searching or producing any

6

text messages, instant messages, web messages, WhatsApp messages, social media messages, telegrams, cables, facsimiles, summaries or records or notes of personal conversations or interviews, diaries, calendars, forecasts, statistical statements, accountants work papers, graphs, charts, maps, diagrams, blue prints, tables, indexes, pictures, recordings, tapes, microfilm, charge clips, accounts, analytical records, reports and/or summaries of investigations, brochures, pamphlets, circulars, trade letters, press releases, stenographic, handwritten, or any other notes, projections, working papers, federal and state income tax returns, checks, front and back, check stubs or receipts, shipping documents, manifests, invoice vouchers, computer printouts and computer disks and tapes, tape data sheets or data processing cards or disks or any other written, recorded, transcribed, punched, taped, filmed or graphic matters; however produced or reproduced, which would be unduly burdensome and not proportionate to the needs of the case.  To the extent the Oversight Board agrees to search for and produce documents regarding a particular topic, the Oversight Board will use reasonable diligence to conduct a search proportionate to the needs of the case to locate readily accessible documents in those files in which it reasonably expects to find responsive documents.

13.     The Oversight Board objects to the definitions of "relating to," "relate to," "related to," "referred to," "refer to," "reference," "referring to," and "concerning" to the extent they are overly broad, vague, and ambiguous.

14.     The Oversight Board objects to the definition of the terms "Person" and "Persons" as vague and overly broad.

15.     The Oversight Board objects to the definition of the terms "Communication" and "Communications" to the extent it imposes duties on the Oversight Board that differ from or exceed those imposed by the Governing Rules.  The Oversight Board further objects to searching or producing any text messages, web messages, or other forms of instant messaging, or to "words transmitted by telephone, radio, or any method of voice recording," which would be unduly

burdensome and not proportionate to the needs of the case.  To the extent the Oversight Board agrees to search for and produce communications regarding a particular topic, the Oversight Board will use reasonable diligence to conduct a search proportionate to the needs of the case to locate readily accessible documents in those files in which it reasonably expects to find responsive documents.

16.      The Oversight Board objects to the definition of the term "Identify" as vague, overly broad, and unduly burdensome.

17.      The Oversight Board objects to the definition of the term "Indicate" as vague, overly broad, and unduly burdensome.

18.      The Oversight Board objects to the definition of the term "PREPA" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Requests, the Oversight Board will construe "PREPA" to mean PREPA and its employees, officers, directors, and known agents reasonably likely to possess information relevant to the Administrative Expense Motion.

19.      The Oversight Board objects to the definition of the term "UTIER" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Interrogatories, the Oversight Board will construe "UTIER" to mean Unión de Trabajadores de la Industria Eléctrica Y Riego Inc. and its employees, officers, and directors.

20.      The Oversight Board objects to the definition of the term "SREAEE" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Interrogatories, the Oversight Board will construe "SREAEE" to mean Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica and its employees, officers, and directors.

21.      The Oversight Board objects to the definition of the term "P3" as overbroad because

it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Requests, the Oversight Board will construe "P3" to mean the Puerto Rico Public-Private Partnerships Authority and its employees, officers, directors, and known agents reasonably likely to possess information relevant to the Administrative Expense Motion.

22.     The Oversight Board objects to the definition of the term "Luma Energy" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Requests, the Oversight Board will construe "Luma Energy" to mean LUMA Energy, LLC and LUMA Energy ServCo, LLC and their employees, officers, directors, and known agents reasonably likely to possess information relevant to the Administrative Expense Motion.

23.     The above General Objections are incorporated into each of the following specific Responses and Objections.

## SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 1:

Any and all non-confidential communications by and between P3, PREPA, Luma Energy and the FOMB regarding the impact of the Luma Contract on PREPA's Title III unsecured creditors, bondholders and pension obligations.

### RESPONSE TO REQUEST NO. 1:

The Oversight Board objects to this Request as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services[3] benefit the debtor; therefore, discovery

---

[3]     Capitalized terms not defined herein or in the Requests for Production have the meaning provided for in the Luma Contract.

regarding "the impact of the Luma Contract on PREPA's Title III unsecured creditors, bondholders and pension obligations" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  Moreover, the Administrative Expense Motion does not seek approval of the entire Luma Contract but only approval of an administrative expense priority claim for any accrued and unpaid Front-End Transition Obligations.  Thus, discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Request on the ground that the request to produce "any and all" documents on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the needs of this contested matter.  The Oversight Board further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

In light of the General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will not conduct a search for the documents sought in this Request, but to the extent such documents are included in what the Oversight Board intends to produce in responses to other Requests, such documents will not be withheld from production.

**REQUEST NO. 2:**

Any and all non-confidential documents that contain the analysis of the impact of the Luma Contract on PREPA's Title III unsecured creditors, bondholders and pension obligations.

**RESPONSE TO REQUEST NO. 2:**

The Oversight Board objects to this Request as overbroad and unduly burdensome in that it

seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding "the impact of the Luma Contract on PREPA's Title III unsecured creditors, bondholders and pension obligations" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  Moreover, the Administrative Expense Motion does not seek approval of the entire Luma Contract but only approval of an administrative expense priority claim for any accrued and unpaid Front-End Transition Obligations.  Thus, discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Request on the ground that the request to produce "any and all" documents on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the needs of this contested matter.  The Oversight Board further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

In light of the General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will not conduct a search for the documents sought in this Request, but to the extent such documents are included in what the Oversight Board intends to produce in responses to other Requests, such documents will not be withheld from production.

**REQUEST NO. 3:**

Any and all non-confidential documents that contain the analysis of the impact of the Front-End Transition payments on PREPA's ability to provide adequate funding to SREAEE.

**RESPONSE TO REQUEST NO. 3**

The Oversight Board objects to this Request as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding "the impact of the Front-End Transition payments on PREPA's ability to provide adequate funding to SREAEE" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Request on the ground that the phrase "provide adequate funding" is vague and ambiguous in this context.  The Oversight Board further objects to this Request on the ground that the request to produce "any and all" documents on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the needs of this contested matter.  The Oversight Board further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

In light of the General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will not conduct a search for the documents sought in this Request, but to the extent such documents are included in what the Oversight Board intends to produce in responses to other Requests, such documents will not be withheld from production.

**REQUEST NO. 4:**

Any and all non-confidential documents that contain the analysis of the impact of the Luma Contract on SREAEE's ability to pay its pension obligations.

**RESPONSE TO REQUEST NO. 4**

The Oversight Board objects to this Request as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding "the impact of the Luma Contract on SREAEE's ability to pay its pension obligations" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  Moreover, the Administrative Expense Motion does not seek approval of the entire Luma Contract but only approval of an administrative expense priority claim for any accrued and unpaid Front-End Transition Obligations.  Thus, discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Request on the ground that the request to produce "any and all" documents on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the needs of this contested matter.  The Oversight Board further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

In light of the General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will not conduct a search for the documents sought in this Request, but to the extent such documents are included in what the Oversight Board intends to produce in responses to other Requests, such documents will not be withheld from production.

**REQUEST NO. 5:**

Any and all non-confidential documents and communications by and between P3, PREPA, Luma Energy and the FOMB concerning the $136,351,930 projected budget of the Front-End Transition. [Docket No. 2053-1]

**RESPONSE TO REQUEST NO. 5**

The Oversight Board objects to this Request on the ground that the request to produce "any and all" documents on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the needs of this contested matter.  The Oversight Board further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the Oversight Board's General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will produce or coordinate production of communications and documents made available to and received from LUMA Energy via PowerAdvocate, which includes: (i) versions of terms sheets and contracts sent to potential bidders for the transformation of PREPA's transmission and distribution system; (ii) comments from LUMA on the term sheets and draft contracts, together with issues lists; and (iii) memoranda to LUMA from P3 regarding LUMA's comments on the term sheets and draft contracts, all of which may contain information responsive to this request.  In addition, in an effort to locate additional responsive materials, the Oversight Board will coordinate a reasonable search for:  (i) presentations made to the Oversight Board regarding the status of the Front-End Transition; (ii) financial analyses regarding the Front-End Transition, if any; (iii) non-confidential portions of LUMA's proposal, including non-confidential updates thereto; and (iv) meeting minutes, written resolutions and report of P3's Partnership Committee regarding the Luma

14

Contract.  The information sought by this Request will be produced to the extent it is contained in

the foregoing categories of documents.  If, after review of the documents produced, UTIER and

SREAEE wish to request further searches of documents for information potentially responsive to

this Request, the Oversight Board is willing to meet and confer.

**REQUEST NO. 6:**

Any and all non-confidential documents and communications related to the underlying data used to
estimate the initial deposit of $59,374,000. [Docket No. 2053-1]

**RESPONSE TO REQUEST NO. 6**

The Oversight Board objects to this Request on the ground that the request to produce "any

and all" documents on a particular subject matter is overly broad, unduly burdensome, and

disproportionate to the needs of this contested matter.  The Oversight Board further objects to this

Request to the extent it seeks information protected from disclosure by the attorney-client privilege,

the attorney work-product doctrine, the executive and deliberative process privileges, the common

interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or

immunities protecting information from disclosure.

Subject to the Oversight Board's General Objections, each of which is specifically

incorporated into this Response, and the specific objections above, the Oversight Board will

produce or coordinate production of communications and documents made available to and

received from LUMA Energy via PowerAdvocate, which includes: (i) versions of terms sheets and

contracts sent to potential bidders for the transformation of PREPA's transmission and distribution

system; (ii) comments from LUMA on the term sheets and draft contracts, together with issues

lists; and (iii) memoranda to LUMA from P3 regarding LUMA's comments on the term sheets and

draft contracts, all of which may contain information responsive to this request.  In addition, in an

effort to locate additional responsive materials, the Oversight Board will coordinate a reasonable

search for:  (i) presentations made to the Oversight Board regarding the status of the Front-End

Transition; (ii) financial analyses regarding the Front-End Transition, if any; (iii) non-confidential

portions of LUMA's proposal, including non-confidential updates thereto; and (iv) meeting

minutes, written resolutions and report of P3's Partnership Committee regarding the Luma

Contract.  The information sought by this Request will be produced to the extent it is contained in

the foregoing categories of documents.  If, after review of the documents produced, UTIER and

SREAEE wish to request further searches of documents for information potentially responsive to

this Request, the Oversight Board is willing to meet and confer.

**REQUEST NO. 7:**

Any and all non-confidential documents that contain the analysis of the impact of the Luma
Contract on PREPA's budget.

**RESPONSE TO REQUEST NO. 7**

The Oversight Board objects to this Request as overbroad and unduly burdensome in that it

seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection

with the Court's consideration of the Administrative Expense Motion.  The Administrative Expense

Motion does not seek approval of the entire Luma Contract but only approval of an administrative

expense priority claim for any accrued and unpaid Front-End Transition Obligations.  Thus,

discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of

resolving any potential objections to the Administrative Expense Motion.  The Oversight Board

further objects to this Request on the ground that the request to produce "any and all" documents

on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the

needs of this contested matter.  The Oversight Board further objects to this Request to the extent it

seeks information protected from disclosure by the attorney-client privilege, the attorney work-

product doctrine, the executive and deliberative process privileges, the common interest privilege,

the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting

information from disclosure.

Subject to the Oversight Board's General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will produce or coordinate production of communications and documents made available to and received from LUMA Energy via PowerAdvocate, which includes: (i) versions of terms sheets and contracts sent to potential bidders for the transformation of PREPA's transmission and distribution system; (ii) comments from LUMA on the term sheets and draft contracts, together with issues lists; and (iii) memoranda to LUMA from P3 regarding LUMA's comments on the term sheets and draft contracts, all of which may contain information responsive to this request.  In addition, in an effort to locate additional responsive materials, the Oversight Board will coordinate a reasonable search for:  (i) presentations made to the Oversight Board regarding the status of the Front-End Transition; (ii) financial analyses regarding the Front-End Transition, if any; (iii) non-confidential portions of LUMA's proposal, including non-confidential updates thereto; and (iv) meeting minutes, written resolutions and report of P3's Partnership Committee regarding the Luma Contract.  The information sought by this Request will be produced to the extent it is contained in the foregoing categories of documents.  If, after review of the documents produced, UTIER and SREAEE wish to request further searches of documents for information potentially responsive to this Request, the Oversight Board is willing to meet and confer.  In addition, the Oversight Board directs UTIER and SREAEE to the statements regarding the Luma Contract in the publicly available 2020 Fiscal Plan for the Puerto Rico Electric Power Authority certified on June 29, 2020,[4] which among other things states "PREPA is expected to pay [the T&D operator] fee from cash on hand . . . ."

**REQUEST NO. 8:**

Any and all non-confidential documents related to Luma Energy's managerial expenses under the

---

[4] https://www.aafaf.pr.gov/wp-content/uploads/2020-PREPA-Fiscal-Plan-as-Certified-by-FOMB-on-June-29-2020.pdf.

Luma Contract during the Front-End Transition.

**RESPONSE TO REQUEST NO. 8**

The Oversight Board objects to this Request on the ground that the request to produce "any and all" documents on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the needs of this contested matter.  The Oversight Board further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the Oversight Board's General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will produce or coordinate production of communications and documents made available to and received from LUMA Energy via PowerAdvocate, which includes: (i) versions of terms sheets and contracts sent to potential bidders for the transformation of PREPA's transmission and distribution system; (ii) comments from LUMA on the term sheets and draft contracts, together with issues lists; and (iii) memoranda to LUMA from P3 regarding LUMA's comments on the term sheets and draft contracts, all of which may contain information responsive to this request.  In addition, in an effort to locate additional responsive materials, the Oversight Board will coordinate a reasonable search for:  (i) presentations made to the Oversight Board regarding the status of the Front-End Transition; (ii) financial analyses regarding the Front-End Transition, if any; (iii) non-confidential portions of LUMA's proposal, including non-confidential updates thereto; and (iv) meeting minutes, written resolutions and report of P3's Partnership Committee regarding the Luma Contract.  The information sought by this Request will be produced to the extent it is contained in the foregoing categories of documents.  If, after review of the documents produced, UTIER and

18

SREAEE wish to request further searches of documents for information potentially responsive to this Request, the Oversight Board is willing to meet and confer.

**REQUEST NO. 9:**

Any and all non-confidential documents related to the costs that Luma Energy has already incurred in the Front-End Transition, including but not limited to invoices and time sheets.

**RESPONSE TO REQUEST NO. 9**

The Oversight Board objects to this Request on the ground that the request to produce "any and all" documents on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the needs of this contested matter.  The Oversight Board further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the Oversight Board's General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will produce or coordinate production of non-privileged, non-duplicative responsive documents, if any, located after a reasonable search.  As of the date of these Responses and Objections, PREPA has not received any invoices or timesheets from LUMA.

**REQUEST NO. 10:**

Any and all non-confidential documents related to PREPA's financial projections as a result of the Luma Contract.

**RESPONSE TO REQUEST NO. 10**

The Oversight Board objects to this Request as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The Administrative Expense

Motion does not seek approval of the entire Luma Contract but only approval of an administrative

expense priority claim for any accrued and unpaid Front-End Transition Obligations.  Thus,

discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of

resolving any potential objections to the Administrative Expense Motion.  The Oversight Board

further objects to this Request on the ground that the request to produce "any and all" documents

on a particular subject matter is overly broad, unduly burdensome, and disproportionate to the

needs of this contested matter.  The Oversight Board further objects to this Request to the extent it

seeks information protected from disclosure by the attorney-client privilege, the attorney work-

product doctrine, the executive and deliberative process privileges, the common interest privilege,

the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting

information from disclosure.

Subject to the Oversight Board's General Objections, each of which is specifically

incorporated into this Response, and the specific objections above, the Oversight Board will

produce or coordinate production of communications and documents made available to and

received from LUMA Energy via PowerAdvocate, which includes: (i) versions of terms sheets and

contracts sent to potential bidders for the transformation of PREPA's transmission and distribution

system; (ii) comments from LUMA on the term sheets and draft contracts, together with issues

lists; and (iii) memoranda to LUMA from P3 regarding LUMA's comments on the term sheets and

draft contracts, all of which may contain information responsive to this request.  In addition, in an

effort to locate additional responsive materials, the Oversight Board will coordinate a reasonable

search for:  (i) presentations made to the Oversight Board regarding the status of the Front-End

Transition; (ii) financial analyses regarding the Front-End Transition, if any; (iii) non-confidential

portions of LUMA's proposal, including non-confidential updates thereto; and (iv) meeting

minutes, written resolutions and report of P3's Partnership Committee regarding the Luma

Contract.  The information sought by this Request will be produced to the extent it is contained in the foregoing categories of documents.  If, after review of the documents produced, UTIER and SREAEE wish to request further searches of documents for information potentially responsive to this Request, the Oversight Board is willing to meet and confer.

[*Remainder of page intentionally left blank*]

Dated:  August 3, 2020

**PROSKAUER ROSE LLP**

*/s/ Margaret A. Dale*

Martin J. Bienenstock (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
mbienenstock@proskauer.com
ebarak@proskauer.com
mdale@proskauer.com

Paul V. Possinger (*pro hac vice*)
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel: (312) 962-3550
Fax: (312) 962-3551
ppossinger@proskauer.com

Jennifer L. Jones (*pro hac vice*)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 284-4509
Fax: (310) 557-2193
jljones@proskauer.com

Laura E. Stafford (*pro hac vice*)
1 International Place
Boston, MA 02130
Tel: (617) 526-9714
Fax: (617) 526-9899
lstafford@proskauer.com

*Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Commonwealth of Puerto Rico and the Puerto*
*Rico Electric Power Authority*

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorney for the Financial Oversight and*
*Management Board as representative of the*
*Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I caused copies of the foregoing documents to be
served on the following counsel of record:

**PAUL HASTINGS LLP**
Luc A. Despins (admitted *pro hac vice*)
Nicholas A. Bassett (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Email: lucdespins@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of
Unsecured Creditors*

**FOLEY & LARDNER LLP**
Ann Marie Uetz (*pro hac vice*)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone (313) 234-7100
Facsimile (313) 234-2800
auetz@foley.com

*Counsel for WEH*

**C. CONDE & ASSOC.**
*/s/Carmen D. Conde Torres*
Carmen D. Conde Torres, Esq.
USDC 207312
*/s/Luisa S. Valle Castro*
Luisa S. Valle Castro, Esq.
USDC No. 215611
254 San José Street, 5th Floor
Old San Juan, Puerto Rico 00901
Telephone: 787-729-2900
Facsimile: 787-729-2203
E-Mail: condecarmen@condelaw.com
ls.valle@condelaw.com

*Counsel for WEH*

**BUFETE EMMANUELLI, C.S.P.**
Rolando Emmanuelli-Jiménez
USDC-PR No. 214105
Jessica E. Méndez-Colberg
USDC-PR No. 302108
472 Tito Castro Ave.,
Marvesa Building Suite 106
Ponce, PR 00716
Telephone: (787) 848-0666
Facsimile: (787) 977-0323
Email: rolando@bufete-emmanuelli.com
jessica@bufete-emmanuelli.com

*Attorneys for Unión de Trabajadores de la
Industria Eléctrica y Riego and Sistema de
Retiro de los Empleados de la Autoridad de
Energía Eléctrica*

**WACHTELL, LIPTON, ROSEN & KATZ**
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: rgmason@wlrk.com
arwolf@wlrk.com
eakleinhaus@wlrk.com
mhcassel@wlrk.com

*Attorneys for Cortland Capital Market
Services LLC, as Administrative Agent*

1

**O'MELVENY & MYERS LLP**
John J. Rapisardi (*pro hac vice*)
Nancy A. Mitchell (*pro hac vice*)
Maria J. DiConza (*pro hac vice*)
7 Times Square
New York, New York 10036
Tel:  (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman  (*pro hac vice*)
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

-and-

Elizabeth L. McKeen (*pro hac vice*)
Ashley M. Pavel (*pro hac vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority and Puerto
Rico Electric Power Authority*

**MARINI PIETRANTONI MUÑIZ LLC**
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Co-counsel for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**
Katiuska Bolaños
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.:  (787) 395-7133
Fax:  (787) 497-9664

*Counsel for Puerto Rico Electric Power
Authority*

*/s/  Jennifer L. Jones*
Jennifer L. Jones

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17-BK-4780-LTS |

## RESPONSES AND OBJECTIONS OF THE PUERTO RICO ELECTRIC POWER AUTHORITY AND THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO FIRST SET OF INTERROGATORIES OF UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO INC. AND SISTEMA DE RETIRO DE LOS EMPLEADOS DE LA AUTORIDAD DE ENERGÍA ELÉCTRICA

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable to this proceeding by section 310 of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") (48 U.S.C. § 2170) and Federal Rules of Bankruptcy Procedure 7026, 7033, and 9014, the Local Rules of the United States Bankruptcy Court for the District of Puerto Rico, and the presiding Court's chambers practices and case management orders (collectively, the "Governing Rules"), the Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB"), as PREPA's representative pursuant to section 315(b) of PROMESA, and the Oversight Board on its own behalf, by and through undersigned counsel, hereby respond and object to the *First Set of Interrogatories to Debtor Puerto Rico Electric Power Authority and Financial Oversight and Management Board for Puerto Rico* served by the Unión de Trabajadores de la Industria Eléctrica y Riego Inc.  ("UTIER") and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") dated July 23, 2020 (the "Interrogatories," and each individual interrogatory an "Interrogatory"), as follows:

## PRELIMINARY STATEMENT

The Oversight Board's response and objections to the Interrogatories (the "Responses and Objections") are made on its behalf and on behalf of PREPA and are without prejudice to the Oversight Board's right to amend or supplement the response herein if necessary at a later date.[2] Within the compressed timeframe under which the parties are working, the Oversight Board has made reasonable efforts to respond to the Interrogatories, to the extent not objected to, as the Oversight Board understands and interprets the Interrogatories.   If UTIER and SREAEE subsequently assert an interpretation of the Interrogatories that differs from that of the Oversight

---

[2]   Any and all responses and objections made by the Oversight Board herein are asserted on its behalf and on behalf of PREPA.

Board's, the Oversight Board reserves the right to supplement its objections.  By making the objections below, the Oversight Board does not waive and expressly reserves its right to make additional objections.

## **GENERAL OBJECTIONS**

1.      The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, as irrelevant, overbroad, and unduly burdensome to the extent they seek information neither necessary nor proportionate to the narrow question whether to approve the *Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (Case No. 17-BK-4780-LTS, ECF No. 2053) (the "Administrative Expense Motion").

2.      The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent (i) they exceed the legitimate scope of discovery in connection with the instant Administrative Expense Motion; and/or (ii) the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in controversy, and the parties' resources.

3.      The response to any Interrogatory does not constitute an admission by the Oversight Board that the information requested by the Interrogatory or the information contained in the Oversight Board's response is relevant or material to the issues before the Court or is admissible. The Oversight Board may respond to interrogatories that are irrelevant and inadmissible, but does so solely to expedite the process without any concession that such Interrogatories are relevant or material to the instant contested matter.

4.      The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they seek documents without restrictions as to date.  The Oversight Board

will not provide responses to Interrogatories seeking information that pre-dates February 1, 2019, or otherwise seeking information outside the timeframe relevant to the instant contested matter.

5.     The Oversight Board objects to the Definitions, the Instructions, and the Interrogatories, and to each and every Interrogatory, to the extent they purport to impose burdens on the Oversight Board inconsistent with, or not otherwise authorized by, or seek to impose obligations exceeding those imposed by the Governing Rules.  In responding to these Interrogatories, and unless otherwise noted, the Oversight Board will construe all words in accordance with their ordinary English meaning, as informed by the Governing Rules.  The Oversight Board will construe and respond to the Interrogatories in a manner consistent with its obligations under the Governing Rules, and not otherwise.

6.     The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent the information sought is protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Oversight Board intends to and does assert any and all such privileges with respect to all such information.  Nothing in these Responses and Objections is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.

7.     The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, as unduly burdensome to the extent they request the Oversight Board respond to topics beyond its knowledge.  The Oversight Board further objects to the Interrogatories, and to each and every Interrogatory, to the extent they call for information publicly available, unreasonably cumulative or duplicative, or obtainable from another source more convenient, less burdensome, or less expensive, including information known to UTIER and SREAEE.

4

8.    The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, as unduly burdensome to the extent they are cumulative or duplicative of other Interrogatories served on other entities in connection with the Administrative Expense Motion or to the extent they are duplicative of other Interrogatories served by any other objector to the Administrative Expense Motion.

9.    The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they seek information confidential or proprietary in nature, or otherwise constituting protected commercial, strategic, financial or competitively sensitive or trade secret information.

10.    The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, to the extent they (i) imply the existence of facts or circumstances that do not or did not exist, or (ii) state or assume legal or factual conclusions.  By providing these Responses and Objections, the Oversight Board does not admit any factual or legal premise in the Interrogatories.

11.    The Oversight Board objects to the Interrogatories, and to each and every Interrogatory, as overbroad and unduly burdensome to the extent they purport to require the Oversight Board to provide "each," "all" or "any" information concerning a topic, so as to make it impossible to identify the limits of the inquiry, and to make the topics so overbroad as to be impossible to reasonably address.

12.    The Oversight Board objects to the definition of the terms "Document" and "Documents" to the extent it imposes duties on the Oversight Board that differ from or exceed those imposed by the Governing Rules.

13.    The Oversight Board objects to the definition of the terms "Person" and "Persons" as vague and overly broad.

14.     The Oversight Board objects to the definition of the terms "Communication" and "Communications" to the extent it imposes duties on the Oversight Board that differ from or exceed those imposed by the Governing Rules.

15.     The Oversight Board objects to the definition of the term "Identify" as vague, overly broad, and unduly burdensome.

16.     The Oversight Board objects to the definition of the term "Indicate" as vague, overly broad, and unduly burdensome.

17.     The Oversight Board objects to the definition of the term "PREPA" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Interrogatories, the Oversight Board will construe "PREPA" to mean PREPA and its employees, officers, directors, and known agents reasonably likely to possess information relevant to the Administrative Expense Motion.

18.     The Oversight Board objects to the definition of the term "UTIER" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Interrogatories, the Oversight Board will construe "UTIER" to mean Unión de Trabajadores de la Industria Eléctrica Y Riego Inc. and its employees, officers, and directors.

19.     The Oversight Board objects to the definition of the term "SREAEE" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Interrogatories, the Oversight Board will construe "SREAEE" to mean Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica and its employees, officers, and directors.

20.     The Oversight Board objects to the definition of the term "P3" as overbroad because it includes individuals and entities without regard to their connection or relevance to the

Administrative Expense Motion.  In responding to these Interrogatories, the Oversight Board will construe "P3" to mean P3 and its employees, officers, directors, and known agents reasonably likely to possess information relevant to the Administrative Expense Motion.

21.     The Oversight Board objects to the definition of the term "Luma Energy" as overbroad because it includes individuals and entities without regard to their connection or relevance to the Administrative Expense Motion.  In responding to these Interrogatories, the Oversight Board will construe "Luma Energy" to mean LUMA Energy, LLC and LUMA Energy ServCo, LLC and their employees, officers, directors, and known agents reasonably likely to possess information relevant to the Administrative Expense Motion.

22.     The Oversight Board objects to the Instructions to the extent they impose duties on the Oversight Board that differ from or exceed those imposed by the Governing Rules.

23.     The Oversight Board objects to the Interrogatories to the extent that they exceed the permissible limit of 25 written interrogatories when all discrete subparts are included in the tally.

24.     The above General Objections are incorporated into each of the following specific Responses and Objections.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Explain whether, how and by whom the impact of the Luma Contract on PREPA's Title III obligations, including its ability to pay its unsecured creditors, bondholders and pension obligations, was considered before officially executing the Luma Contract.

   a.     If it was considered, explain the impact of the Luma Contract on PREPA's Title III obligations, including its ability to pay unsecured creditors, bondholders and pension obligations.

   b.     If it was not considered, explain why.

### RESPONSE TO INTERROGATORY NO. 1:

   The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in

connection with the Court's consideration of the Administrative Expense Motion.  The issue for the

Court to decide is whether the Front-End Transition Services[3] benefit the debtor; therefore,

discovery regarding "the impact of the Luma Contract on PREPA's Title III obligations, including

its ability to pay its unsecured creditors, bondholders and pension obligations" is irrelevant and

disproportionate to the needs of resolving any potential objections to the Administrative Expense

Motion.  Moreover, the Administrative Expense Motion does not seek approval of the entire Luma

Contract but only approval of an administrative expense priority claim for any accrued and unpaid

Front-End Transition Obligations.  Thus, discovery regarding the Luma Contract as a whole is

irrelevant and disproportionate to the needs of resolving any potential objections to the

Administrative Expense Motion.  The Oversight Board further objects to this Interrogatory to the

extent it seeks information protected from disclosure by the attorney-client privilege, the attorney

work-product doctrine, the executive and deliberative process privileges, the common interest

privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities

protecting information from disclosure.

**INTERROGATORY NO. 2:**

Explain whether, how and by whom the impact of the Front-End Transition payments specifically
on PREPA's Title III obligations, including its ability to pay its unsecured creditors, bondholders
and pension obligations, was considered before officially requesting the administrative expense
priority.

    a.    If it was considered, explain the impact of the Front-End Transition payments on
           PREPA's Title III unsecured creditors, bondholders and pension obligations.

    b.    If it was not considered, explain why.

**RESPONSE TO INTERROGATORY NO. 2:**

        The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in

that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in

---

[3]      Capitalized terms not defined herein or in the Interrogatories have the meaning provided for in the Luma
Contract.

connection with the Court's consideration of the Administrative Expense Motion. The issue for the

Court to decide is whether the Front-End Transition Services benefit the debtor; therefore,

discovery regarding "the impact of the Front-End Transition payments specifically on PREPA's

Title III obligations, including its ability to pay its unsecured creditors, bondholders and pension

obligations" is irrelevant and disproportionate to the needs of resolving any potential objections to

the Administrative Expense Motion. The Oversight Board further objects to this Interrogatory to

the extent it seeks information protected from disclosure by the attorney-client privilege, the

attorney work-product doctrine, the executive and deliberative process privileges, the common

interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or

immunities protecting information from disclosure.

**INTERROGATORY NO. 3:**

Explain whether, how and by whom the impact of the Front-End Transition payments specifically
on PREPA's ability to provide adequate funding to SREAEE was considered before officially
requesting the administrative expense priority.

   a.   If it was considered, explain the impact of the Front-End Transition payments on
        PREPA's ability to provide adequate funding to SREAEE.

   b.   If it was not considered, explain why.

**RESPONSE TO INTERROGATORY NO. 3:**

      The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in

that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in

connection with the Court's consideration of the Administrative Expense Motion. The issue for the

Court to decide is whether the Front-End Transition Services benefit the debtor; therefore,

discovery regarding "the impact of the Front-End Transition payments specifically on PREPA's

ability to provide adequate funding to SREAEE" is irrelevant and disproportionate to the needs of

resolving any potential objections to the Administrative Expense Motion. The Oversight Board

further objects to this Interrogatory on the ground that the phrase "provide adequate funding" is

vague and ambiguous in this context.  The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

**INTERROGATORY NO. 4:**

Explain whether, how and by whom the impact of the Front-End Transition payments specifically on SREAEE's ability to pay its pension obligations.

    a.    If it was considered, explain the impact on SREAEE's ability to pay its pension obligations.

    b.    If it was not considered, explain why.

**RESPONSE TO INTERROGATORY NO. 4:**

       The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding "the impact of the Front-End Transition payments specifically on SREAEE's ability to pay its pension obligations" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Interrogatory on the ground that it is unintelligible.  The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

**INTERROGATORY NO. 5:**

Explain whether, how and by whom the impact of the Covid-19 pandemic on energy demand and

the electric system was considered before officially executing the Luma Contract.

    a.    If it was considered, explain the impact of the Covid-19 pandemic on energy demand and the electric system was considered before officially executing the Luma Contract.

    b.    If it was not considered, explain why.

## RESPONSE TO INTERROGATORY NO. 5:

The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion. The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding "the impact of the Covid-19 pandemic on energy demand and the electric system" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion. Moreover, the Administrative Expense Motion does not seek approval of the entire Luma Contract but only approval of an administrative expense priority claim for any accrued and unpaid Front-End Transition Obligations. Thus, discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion. The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

## INTERROGATORY NO. 6:

Explain whether, how and by whom the impact of the Luma Contract on the RSA was considered before officially executing the Luma Contract and seeking administrative expense priority.

    a.    If it was considered, explain the impact of the Front-End Transition payments on the RSA.

    b.    If it was not considered, explain why.

**RESPONSE TO INTERROGATORY NO. 6:**

The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in

that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in

connection with the Court's consideration of the Administrative Expense Motion.  The issue for the

Court to decide is whether the Front-End Transition Services benefit the debtor; therefore,

discovery regarding "the impact of the Luma Contract on the RSA"[4] is irrelevant and

disproportionate to the needs of resolving any potential objections to the Administrative Expense

Motion.  Moreover, the Administrative Expense Motion does not seek approval of the entire Luma

Contract but only approval of an administrative expense priority claim for any accrued and unpaid

Front-End Transition Obligations.  Thus, discovery regarding the Luma Contract as a whole is

irrelevant and disproportionate to the needs of resolving any potential objections to the

Administrative Expense Motion.  The Oversight Board further objects to this Interrogatory to the

extent it seeks information protected from disclosure by the attorney-client privilege, the attorney

work-product doctrine, the executive and deliberative process privileges, the common interest

privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities

protecting information from disclosure.

**INTERROGATORY NO. 7:**

The Luma Contract "will lead to a wholesale change of this sector by dismantling and reorganizing
the current vertically integrated corporation . . . ."  [Docket No. 2053-1 at 16 ¶ 29]. Explain how
that "dismantling" will alter the composition of PREPA and its position as a debtor in terms of
rights, assets and obligations to pay its Title III creditors.

**RESPONSE TO INTERROGATORY NO. 7:**

The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in

that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in

---

[4]      The Oversight Board construes the RSA to refer to the Restructuring Support Agreement that is the subject of
ECF No. 1235 in Case No. 17-BK-47890-LTS.

connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding the effect of the Luma Contract on "the composition of PREPA and its position as a debtor in terms of rights, assets and obligations to pay its Title III creditors" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  Moreover, the Administrative Expense Motion does not seek approval of the entire Luma Contract but only approval of an administrative expense priority claim for any accrued and unpaid Front-End Transition Obligations.  Thus, discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Interrogatory on the ground that the phrase "composition of PREPA" is vague and ambiguous in this context.  The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will not provide a response to the inquiry regarding the impact of the Luma Contract on PREPA's Title III obligations but directs UTIER and SREAEE to ¶¶ 11 *et seq.* of the July 7, 2020 Declaration of Omar Marrero (Case No. 17-BK-4780-LTS, ECF No. 2053-2), which among other things provides further detail regarding the quoted assertion from the Administrative Expense Motion.

**INTERROGATORY NO. 8:**

Explain whether there are any direct financial benefits that PREPA will receive from the Front-End Transition.

13

a.   If there are, explain how those benefits will be passed on to PREPA's ratepayers and creditors.

b.   If there are not, explain what direct non-monetary benefits the Front-End Transition has for PREPA's ratepayers and creditors.

## RESPONSE TO INTERROGATORY NO. 8:

The Oversight Board objects to subparts a and b of this Interrogatory as overbroad and unduly burdensome in that they seek irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding the effect of the Front-End Transition on "PREPA's ratepayers and creditors" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Interrogatory on the ground that the phrases "direct financial benefits" and "direct non-monetary benefits" are vague and ambiguous in this context.  The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board responds as follows:  The Front-End Transition Services will confer numerous benefits on PREPA, its ratepayers, and the economy, including, among other things, identifying and implementing cost-savings measures, improving the fuel supply chain, and supporting privatization efforts for PREPAs generation assets, as further set forth in the July 7, 2020 Declaration of Omar Marrero (the "Declaration"), which is incorporated herein by reference.  As discussed in more detail in the Administrative Expense Motion and the

Declaration, the Front-End Transition Services provide substantial and immediate benefits to PREPA including: (i) locating inefficiencies in the T&D System; (ii) identifying and implementing non-personnel related cost-saving measures; (iii) preparing for management of federal funding; (iv) assessing and improving the chain of supply for fuel and power; (v) supporting privatization efforts regarding PREPA's generation assets.  The Front-End Transition also will enable PREPA to begin the transition of operations that is critical to realize the full benefits of the Luma Contract, which is a key component to PREPA's ongoing transformation of its transmission and distribution system— a critical step in transforming Puerto Rico's energy sector and modernizing its power grid which ultimately will result in a more efficient and cost-effective PREPA.  In addition, LUMA Energy has committed to building and managing, at its cost and expense, a lineworkers college in Puerto Rico, which will create significant value for PREPA and the people of Puerto Rico through training and knowledge transfer.

## INTERROGATORY NO. 9:

Explain how the budgetary deficit (recognized by FOMB in the 2020 Fiscal Plan and in FY2021 Budget as caused by the Luma Contract) affects PREPA's Title III obligations, including its ability to pay its unsecured creditors, bondholders and pension obligations.

## RESPONSE TO INTERROGATORY NO. 9:

The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the Administrative Expense Motion.  The issue for the Court to decide is whether the Front-End Transition Services benefit the debtor; therefore, discovery regarding how the Luma Contract "affects PREPA's Title III obligations, including its ability to pay its unsecured creditors, bondholders and pension obligations" is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  Moreover, the Administrative Expense Motion does not seek approval of the entire Luma Contract but only approval of an administrative expense priority claim for any accrued and unpaid

Front-End Transition Obligations.  Thus, discovery regarding the Luma Contract as a whole is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Interrogatory as argumentative and improper on the ground that it incorrectly presumes a "budgetary deficit" was "caused by the Luma Contract."  The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

Subject to the General Objections, each of which is specifically incorporated into this Response, and the specific objections above, the Oversight Board will not provide a response to the inquiry regarding the impact of the Luma Contract on PREPA's Title III obligations but directs UTIER and SREAEE to the publicly available 2020 Fiscal Plan for the Puerto Rico Electric Power Authority certified on June 20, 2020,[5] which among other things states "PREPA is expected to pay [the T&D operator] fee from cash on hand . . . ."

## INTERROGATORY NO. 10:

Explain the consequences for PREPA if Luma Energy exceeds the projected budget or deadlines for the Front-End Transition.

## RESPONSE TO INTERROGATORY NO. 10:

The Oversight Board objects to this Interrogatory on the ground that the phrase "consequences for PREPA" is vague and ambiguous in this context.  The Oversight Board objects to this Interrogatory on the ground that it calls for speculation regarding a hypothetical scenario in which Luma Energy "exceeds the projected budget or deadlines for the Front-End Transition."  At

---

[5] https://www.aafaf.pr.gov/wp-content/uploads/2020-PREPA-Fiscal-Plan-as-Certified-by-FOMB-on-June-29-2020.pdf.

this time, the Oversight Board has no expectation that Luma Energy will exceed the projected

budget or deadlines, and it cannot speculate what the "consequences for PREPA" would be,

particularly without knowing by what extent, if at all, the budget or deadlines for the Front-End

Transition potentially would be exceeded.  The Oversight Board further objects to this

Interrogatory to the extent it seeks information protected from disclosure by the attorney-client

privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the

common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or

immunities protecting information from disclosure.

Subject to the General Objections, each of which is specifically incorporated into this

Response, and the specific objections above, the Oversight Board directs UTIER and SREAEE to

the Luma Contract (Case No. 17-BK-4780-LTS, ECF No. 2053-4).  If, after review of the Luma

Contract, UTIER and SREAEE seek further explanation regarding this Interrogatory, the Oversight

Board is willing to meet and confer.

## INTERROGATORY NO. 11

Explain whether PREPA will be requesting an administrative expense priority for debts accrued in
the "Interim Period" as defined in Article 3 of the Supplemental Agreement of the Luma Contract,
including but not limited to the $115,000,000 service fee contemplated in Section 3.3 of the
Supplemental Agreement of the Luma Contract.

## RESPONSE TO INTERROGATORY NO. 11:

The Oversight Board objects to this Interrogatory as overbroad and unduly burdensome in

that it seeks irrelevant information beyond the scope of legitimate or necessary discovery in

connection with the Court's consideration of the Administrative Expense Motion.  The issue for the

Court to decide is whether the Front-End Transition Services benefit the debtor; therefore,

discovery regarding potential administrative priority for debts unrelated to the Front-End Transition

Services is irrelevant and disproportionate to the needs of resolving any potential objections to the

Administrative Expense Motion.  Moreover, the Administrative Expense Motion does not seek

approval of the entire Luma Contract; but only approval of an administrative expense priority claim for any accrued and unpaid Front-End Transition Obligations.  Thus, discovery regarding the Supplemental Agreement, which will not take effect unless and until the Front-End Transition Period concludes, is irrelevant and disproportionate to the needs of resolving any potential objections to the Administrative Expense Motion.  The Oversight Board further objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, the executive and deliberative process privileges, the common interest privilege, the mediation privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

*[Remainder of page intentionally left blank]*

Dated:  August 3, 2020

**PROSKAUER ROSE LLP**

*/s/ Margaret A. Dale*

Martin J. Bienenstock (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
mbienenstock@proskauer.com
ebarak@proskauer.com
mdale@proskauer.com

Paul V. Possinger (*pro hac vice*)
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel: (312) 962-3550
Fax: (312) 962-3551
ppossinger@proskauer.com

Jennifer L. Jones (*pro hac vice*)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 284-4509
Fax: (310) 557-2193
jljones@proskauer.com

Laura E. Stafford (*pro hac vice*)
1 International Place
Boston, MA 02130
Tel: (617) 526-9714
Fax: (617) 526-9899
lstafford@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth of Puerto Rico and the Puerto
Rico Electric Power Authority*

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:   (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorney for the Financial Oversight and
Management Board as representative of the
Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I caused copies of the foregoing documents to be served on the following counsel of record:

**PAUL HASTINGS LLP**
Luc A. Despins (admitted *pro hac vice*)
Nicholas A. Bassett (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Email: lucdespins@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

**FOLEY & LARDNER LLP**
Ann Marie Uetz (*pro hac vice*)
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone (313) 234-7100
Facsimile (313) 234-2800
auetz@foley.com

*Counsel for WEH*

**C. CONDE & ASSOC.**
*/s/Carmen D. Conde Torres*
Carmen D. Conde Torres, Esq.
USDC 207312
*/s/Luisa S. Valle Castro*
Luisa S. Valle Castro, Esq.
USDC No. 215611
254 San José Street, 5th Floor
Old San Juan, Puerto Rico 00901
Telephone: 787-729-2900
Facsimile: 787-729-2203
E-Mail: condecarmen@condelaw.com
ls.valle@condelaw.com

*Counsel for WEH*

**BUFETE EMMANUELLI, C.S.P.**
Rolando Emmanuelli-Jiménez
USDC-PR No. 214105
Jessica E. Méndez-Colberg
USDC-PR No. 302108
472 Tito Castro Ave.,
Marvesa Building Suite 106
Ponce, PR 00716
Telephone: (787) 848-0666
Facsimile: (787) 977-0323
Email: rolando@bufete-emmanuelli.com
jessica@bufete-emmanuelli.com

*Attorneys for Unión de Trabajadores de la Industria Eléctrica y Riego and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica*

**WACHTELL, LIPTON, ROSEN & KATZ**
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: rgmason@wlrk.com
arwolf@wlrk.com
eakleinhaus@wlrk.com
mhcassel@wlrk.com

*Attorneys for Cortland Capital Market Services LLC, as Administrative Agent*

1

**O'MELVENY & MYERS LLP**
John J. Rapisardi (*pro hac vice*)
Nancy A. Mitchell (*pro hac vice*)
Maria J. DiConza (*pro hac vice*)
7 Times Square
New York, New York 10036
Tel:   (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman  (*pro hac vice*)
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

-and-

Elizabeth L. McKeen (*pro hac vice*)
Ashley M. Pavel (*pro hac vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority and Puerto
Rico Electric Power Authority*

**MARINI PIETRANTONI MUÑIZ LLC**
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Co-counsel for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**
Katiuska Bolaños
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.:  (787) 395-7133
Fax:  (787) 497-9664

*Counsel for Puerto Rico Electric Power
Authority*

*/s/  Jennifer L. Jones*
Jennifer L. Jones

## **VERIFICATION**

I am the Director of Infrastructure for the Financial Oversight and Management Board for Puerto Rico. I have read the foregoing *Responses and Objection of the Puerto Rico Electric Power Authority and the Financial Oversight and Management Board for Puerto Rico to First Set of Interrogatories of Unión de Trabajadores de la Industria Eléctric y Riego Inc. and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica* and know the contents thereof, and the same are true to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on August 4th, 2020.    _____

Alejandro Figueroa Ramírez