UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:                                                                              PROMESA
                                                                                        Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of                                       No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO                     (Jointly Administered)
et al.,

                Debtors.[1]

-------------------------------------------------------------x

MEMORANDUM ORDER DENYING MOTION OF YASHEI ROSARIO FOR
RELIEF FROM THE AUTOMATIC STAY (DOCKET ENTRY NO. 13597)

Before the Court is the *Motion of Stay Relief Based on Modern Legal Genocide*

(Docket Entry No. 13597 in Case No. 17-3283,[2] the "Motion"), filed by Yashei Rosario[3] (the

"Movant"), which the Court construes as a motion seeking relief from the automatic stay

imposed by the commencement of the above-captioned Title III case on the case captioned

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]     All docket entry references are to entries in Case No. 17-3283, unless otherwise noted.

[3]     It is unclear whether Development Socioeconomic Sustainable Fideicomiso of Vieques, CODESU, Inc. is a movant with respect to the Motion. For the avoidance of doubt, the Motion is denied in its entirety.

Rosario v. Commonwealth of Puerto Rico, Case No. 17-cv-2320 in the United States District Court for the District of Puerto Rico (the "2017 Civil Action"), and the appeal therefrom currently pending before the United States Court of Appeals for the First Circuit, Case No. 18-1782 (the "Appeal").

The Court has considered carefully all of the parties' submissions. For the following reasons, the Motion is denied.

BACKGROUND

On May 3, 2017, the Oversight Board commenced a debt adjustment proceeding on behalf of the Commonwealth under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").[4]

On November 27, 2017, Movant and the Development Socioeconomic Sustainable Fideicomiso of Vieques, CODESU, Inc. (collectively, the "Plaintiffs") commenced the 2017 Civil Action and named as defendants the Commonwealth of Puerto Rico (the "Commonwealth") and certain elected leaders of the Commonwealth. Plaintiffs' complaint (Docket Entry No. 2 in Case No. 17-2320, the "2017 Complaint") alleges that the island of Vieques is a "double colony" because it is a "colony of Puerto Rico" which is itself a "colony of the United States." (2017 Compl. ¶ 5.) As a result of that status, the 2017 Complaint alleges, Vieques has suffered more than seventy-six years of "non-development," mismanagement, neglect, and a lack of political rights and self-rule. (See, e.g., 2017 Compl. ¶¶ 1, 5, 36-41, 67, 75, 84.) As a remedy, the 2017 Complaint seeks a "Vieques Sovereignty Insular Referendum" whereby the people of Vieques would be able to vote as to whether they will remain a

---

[4] PROMESA is codified at 48 U.S.C. §§ 2101 et seq. References to "PROMESA" sections herein are to the uncodified version of the statute.

Commonwealth municipality or become a separate United States territory. (2017 Compl. ¶ 6.) The 2017 Complaint also requests that the court "establish the sum to be paid for the Vieques Sovereignty Insular Referendum," and order the United States federal government to supervise the plebiscite. (2017 Compl. ¶ 15, 45.)[5]

On June 29, 2018, Judge Cerezo entered an order dismissing the 2017 Civil Action. (Docket Entry No. 16 in Case No. 17-2320.) Plaintiffs filed a notice of appeal on August 3, 2018. (Docket Entry No. 21 in Case No. 17-2320.)

On September 24, 2018, the United States Court of Appeals for the First Circuit entered an order directing the parties to the Appeal to "to show cause within fourteen days of the date of this order whether the automatic stay applies to all or any part of this appeal." (See Doc. No. 00117342930 in Case No. 18-1782.) On November 27, 2018, the First Circuit entered an order staying the Appeal "[i]n view of the petition to restructure [the Commonwealth's] debts filed by the Commonwealth of Puerto Rico." (See Doc. No. 00117369929 in Case No. 18-1782.) On December 5, 2019, Plaintiffs filed a status report requesting that the First Circuit lift the stay. (See Doc. No. 00117523690 in Case No. 18-1782.) On December 11, 2019, the First Circuit denied that request and "directed [Plaintiffs] to the Title III court to seek stay relief if such relief

---

[5] Although the Oversight Board is correct that the 2017 Complaint refers to "damages," including a "Non-Development Damage Claim," (see, e.g., Opp. ¶ 24 (quoting 2017 Compl. ¶ 96)), the 2017 Complaint does not appear to seek a monetary recovery. Plaintiffs appear to be using the term "damages" to describe an alleged injury rather than to describe the remedy sought for that injury. (See e.g., 2017 Compl. ¶ 5 ("76 years of non-development damages are more than enough, to understand that the Commonwealth does not have the capacity to manage 78 municipalities."); ¶ 14 (". . . Plaintiffs will raise the funds to pay for the proceedings to the Electoral Commission of Puerto Rico."); ¶ 24 ("[T]he petitioners pursue from the Honorable Court for a 'Non-Monetary Governmental Redress of Grievances . . . , the Sovereignty Insular Referendum, as the settlement for the 76 years of Non-Development Damages."); see also Reply at 16 ("[C]ould the Honorable Court consider granting the Community of Vieques . . . their Voting Rights . . . as long as the Plaintiffs paid the proceedings . . . ?").)

is desired." (See Doc. No. 00117526563 in Case No. 18-1782.) The First Circuit reiterated that instruction on March 26, 2020, in response to Plaintiffs' request that the First Circuit reconsider its ruling concerning the applicability of the automatic stay. (See Doc. No. 00117570613 in Case No. 18-1782.)

On June 30, 2020, Movant commenced a civil action captioned Rosario v. Financial Oversight and Management Board for Puerto Rico, Case No. 20-cv-1307 (the "2020 Civil Action") in the United States District Court for the District of Puerto Rico. The complaint in the 2020 Civil Action (Docket Entry No. 3 in Case No. 20-cv-1307, the "2020 Complaint") argues in relevant part that the 2017 Civil Action should not be stayed because (i) the length of the stay applicable to actions against the Commonwealth has exceeded the amount of time provided in PROMESA (2020 Compl. at 7-8), (ii) a stay of the 2017 Civil Action violates the Voting Rights Act of 1965 and the Fifteenth Amendment to the United States Constitution (2020 Compl. at 1, 6-8), and (iii) Plaintiffs are not creditors or collection companies seeking a monetary recovery from the Commonwealth. (2020 Compl. at 7.)

On July 9, 2020, the judge presiding over the civil action entered an order "constru[ing] the [2020] Complaint's request for stay relief as a motion for relief from the automatic stay . . . , and transfer[ring] it to Case No. 17-3283 for consideration as a contested matter in the Commonwealth's Title III case." (Docket Entry No. 3 in Case No. 20-cv-1307.)

The Oversight Board filed a response in opposition to the Motion on July 23, 2020 (Docket Entry No. 13816, the "Opposition"). In its response, the Oversight Board argues that the automatic stay imposed by section 362 of the Bankruptcy Code applies to the 2017 Civil Action. The Oversight Board contends that the First Circuit has already determined that the automatic stay is applicable (Opp. ¶ 22), and that the stay applies to judicial actions against

debtors regardless of whether the proceeding seeks a monetary recovery. (Opp. ¶¶ 23-26.) Additionally, the Oversight Board argues that Movant has failed to demonstrate that cause exists to lift the automatic stay. The Oversight Board contends that continuation of the 2017 Civil Action would burden the Commonwealth and raise complex issues that present the potential for interference with the Commonwealth's property and the administration of the Commonwealth's Title III case. (Opp. ¶¶ 34-35.)

Movant filed a reply on July 24, 2020 (Docket Entry No. 13864, the "Reply"). The Reply reiterates Movant's allegations concerning the historical mistreatment and neglect of Vieques and the political status underlying that history. The Reply provides specific examples of individuals who allegedly died or were injured in Vieques as a result of inadequately developed infrastructure or lack of medical facilities. (Reply at 10-12.) The Reply also reiterates Movant's argument that the length of the stay has exceeded the length allowed by the terms of PROMESA (Reply at 15) and that individuals have been deprived of their rights under the Voting Rights Act and the Fifteenth Amendment to the United States Constitution. (Reply at 15-16.)

## DISCUSSION

Applicability of the Automatic Stay

Movant's contention that the automatic stay does not apply to the Appeal has already been rejected by the First Circuit in no fewer than three orders. (See Doc. No. 00117369929 in Case No. 18-1782 ("In view of the petition to restructure its debts filed by the Commonwealth of Puerto Rico, this appeal is stayed."); Doc. No. 00117526563 in Case No. 18-1782 (denying Plaintiffs' "request that this court lift the PROMESA-based stay of the appeal");

Doc. No. 00117570613 in Case No. 18-1782 (denying Plaintiffs' motion to reconsider order denying request to lift stay).)

"Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending . . . and the bankruptcy court supervising the reorganization."  In re Baldwin-United Corp. Litig., 765 F.2d 343, 347 (2d Cir. 1985); see Municipality of San Juan v. Commonwealth of Puerto Rico, 919 F.3d 565, 575 (1st Cir. 2019) ("In the ordinary bankruptcy context, a district court has concurrent jurisdiction with a bankruptcy court to decide whether the automatic stay provision of Section 362 applies to its own proceedings. . . . And we see no basis for concluding that the rule is otherwise with respect to the District Court, the Title III Court, and the PROMESA automatic stay.").  Here, the First Circuit has determined that the stay is applicable.  Although the First Circuit directed Movant to this Court to seek relief from the automatic stay, there is no indication in the First Circuit's orders that it provided leave for Movant to collaterally attack the determination that the automatic stay is applicable to the Appeal.

In any event, Movant's contention that the automatic stay imposed by Title III of PROMESA has expired is incorrect.  PROMESA incorporates by reference two automatic stay provisions from the Bankruptcy Code into Title III.  48 U.S.C. § 2161(a).  Those provisions of the Bankruptcy Code impose broad stays of certain kinds of proceedings and actions against Title III debtors and their property, and those stays remain in force following the commencement of the Commonwealth's Title III case.  See 11 U.S.C. §§ 362, 922.  Movant's assertion that the stay has expired appears to conflate those provisions with a separate and distinct stay that was imposed by Section 405 of PROMESA upon enactment of the statute and establishment of the

Oversight Board. See 48 U.S.C. § 2194(b). The Section 405 stay expired more than three years ago, pursuant to the terms of PROMESA. See 48 U.S.C. § 2194(d).

Movant's argument that the automatic stay does not apply because the 2017 Civil Action does not seek a monetary recovery is incorrect as a matter of law. The automatic stay operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case." 11 U.S.C.A. § 362(a)(1) (Westlaw through P.L. 116-150). The 2017 Civil Action is a judicial action that was commenced prior to the commencement of the Commonwealth's Title III case, and it therefore falls within the scope of the automatic stay.

Relief from the Automatic Stay

Section 362(d)(1) of the Bankruptcy Code, made applicable in these proceedings by Section 301 of PROMESA, 48 U.S.C. § 2161, permits a court to grant relief from the automatic stay "for cause." To determine whether cause exists to lift the automatic stay, courts in this circuit examine the factors enumerated by the United States Court of Appeals for the Second Circuit in In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990) ("Sonnax"). See Autonomous Municipality of Ponce v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 939 F.3d 356, 362 (1st Cir. 2019) ("The Title III court properly looked to the Sonnax factors outlined by the Second Circuit as a helpful guide to granting or denying relief from a stay."). Of particular relevance to the instant case are the following factors identified in the Sonnax decision: "whether relief would result in a partial or complete resolution of the issues," "lack of any connection with or interference with the bankruptcy case," "whether litigation in another forum would prejudice the interests of other creditors," "the interests of

Case:17-03283-LTS Doc#:13990 Filed:08/05/20 Entered:08/05/20 14:50:46 Desc: Main
Document Page 8 of 9

judicial economy and the expeditious and economical resolution of litigation," "whether the parties are ready for trial in the other proceeding," and the "impact of the stay on the parties and the balance of harms." Sonnax, 907 F.2d at 1286.

Movant has failed to demonstrate that the Sonnax criteria weigh in Movant's favor. Lifting the automatic stay would not result in the resolution of issues that would aid the Title III Cases. Instead, stay relief would require the Commonwealth to expend some of its limited resources to litigate the 2017 Civil Action, including the Appeal. Moreover, other litigants may seek to participate in that litigation (which is in its infancy) or may commence separate litigation concerning the terms of the plebiscite or the outcome of the plebiscite. To the extent that the plebiscite were to result in the secession of a municipality from the Commonwealth, that outcome could complicate the Commonwealth's path forward in the Title III cases and divert the Commonwealth's attention and resources from the Title III process. The use of litigation resources in that manner, and the potential separation of a municipality from the Commonwealth, may be prejudicial to the interests of the Commonwealth's creditors and other stakeholders.

The Court understands that Movant's concerns regarding the political status of Vieques and the quality of life on Vieques are of great importance to Movant and may be of great concern to other residents on the island. Many of these concerns are principally political concerns; Movant has not proffered facts or legal authority in support of the contention that the operation of the automatic stay abridges residents' rights under the Voting Rights Act or the Fifteenth Amendment to the Constitution of the United States. Significantly, moreover, the automatic stay does not preclude Movant or other residents of Vieques from raising grievances concerning the political status of Vieques and the economic development of the island through

established political processes. Movant is not precluded from raising the issues described in the 2017 Civil Action and the Motion with political officials at the local, Commonwealth, and national levels.

Maintenance of the automatic stay will delay resolution of the 2017 Civil Action and Movant's requests for judicial relief therein. However, the Court must weigh those considerations against the burden that stay relief would impose on the Commonwealth. The Court must consider that the Commonwealth's ability to restructure a broad range of its debt obligations successfully is essential to ensuring the overall fiscal health of Puerto Rico, addressing the renewal of critical infrastructure, and providing appropriate care for the population of Puerto Rico. Accordingly, while it is understandable that Movant wishes to resolve expeditiously the claims raised in the 2017 Civil Action, diversion of the resources that would be required to attend to separate litigation of all such claims would impede the Commonwealth's progress toward achieving financial stability.

Accordingly, the Court concludes that Movant has failed to demonstrate that cause exists for relief from the automatic stay.

### CONCLUSION

For the foregoing reasons, the Motion is denied in its entirety. This Memorandum Order resolves Docket Entry No. 13597.

SO ORDERED.

Dated: August 5, 2020

                                                            /s/ Laura Taylor Swain
                                                          LAURA TAYLOR SWAIN
                                                          United States District Judge