## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY ("HTA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

## CONSOLIDATED SUPPLEMENTAL REPLY IN SUPPORT OF MOVANTS'
## REVENUE BOND LIFT STAY MOTIONS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.      THE GOVERNMENT'S ARGUMENTS THAT MOVANTS HAVE
              BEEN AFFORDED DUE PROCESS MISCONSTRUE THE PRIOR
              PROCEEDINGS. ..............................................................................................2

           A.     The Title III Cases Cannot Afford Movants Due Process of Law,
                       as the First Circuit Has Already Recognized. .............................................2

                  1.     This Court's *Ambac Decision* Did Not Afford Due Process
                            or Resolve the Merits, Because the First Circuit Held the
                            Rulings in the *Ambac Decision* Exceeded the Court's
                            Authority. ...............................................................................2

                  2.     Movants' Constitutional and Preemption Causes of Actions
                              Do Not Give Rise to Monetary Damages and Thus Are Not
                            "Claims" that Can Be Resolved in the Title III Cases. ...................3

                  3.     The Government Misconstrues the First Circuit's *Ambac*
                            Ruling, Which Makes Clear that Stay Relief Is Necessary
                            to Protect Movants' Due Process Rights........................................5

           B.     Movants Have Colorable Causes of Action.................................................6

    II.     THE GOVERNMENT FAILS TO REFUTE MOVANTS' SHOWING
              OF "CAUSE" TO LIFT THE AUTOMATIC STAY. ......................................8

    III.    THE RESPONSE CONFIRMS THAT THE CCDA STAY MOTION
              REQUIRES FURTHER PROCEEDINGS. .....................................................9

            A.     The Government Fails to Rebut CCDA Movants' Showing that the
                       Commonwealth Lacks Equity in the Transfer Account Monies.................9

            B.     The Government Tacitly Concedes that CCDA Movants Lack
                       Adequate Protection Under the Status Quo. .............................................10

            C.     The CCDA Adversary Proceeding Will Not Fully Adjudicate
                       Movants' Rights and Cannot Substitute for Movants' Right to Stay
                       Relief. .....................................................................................................12

CONCLUSION ........................................................................................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.J. Lane & Co. v. BSC Grp. (In re A.J. Lane & Co.)*,
    115 B.R. 738 (Bankr. D. Mass. 1990) .................................................................................4

*ACP Master, Ltd. v. P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
    300 F. Supp. 3d 328 (D.P.R. 2018) ..................................................................................6

*Ambac Assurance Corp. v. P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*,
    927 F.3d 597 (1st Cir. 2019) ................................................................... 1, 2, 3, 5

*Ambac Assurance Corp. v. Commonwealth of Puerto Rico (In re Fin. Oversight &*
    *Mgmt. Bd. for P. R.)*,
    297 F. Supp. 3d 269 (D.P.R. 2018) ............................................................... 1, 2, 6

*Ash Creek Min. Co. v. Lujan*,
    969 F.2d 868 (10th Cir. 1992) .........................................................................................2

*Assoc. of Retired Emps v. City of Stockton (In re City of Stockton, Cal.)*,
    478 B.R. 8 (Bankr. E.D. Cal. 2012) .................................................................................7

*Bexar Cty. Hosp. Dist. v. Crosby*,
    327 S.W.2d 445 (Tex. 1959) .............................................................................................8

*Charlie's Project, LLC v. T2B, LLC*,
    2019 WL 608838 (D. Mass. Feb. 13, 2019) ...................................................................3

*Cobb v. City of Stockton (In re City of Stockton, Cal.)*,
    909 F.3d 1256 (9th Cir. 2018) ....................................................................................5, 7

*Edward J. Berwind, Inc. v. Chicago Park Dist.*,
    65 N.E.2d 785 (Ill. 1946) ..................................................................................................7

*Field v. Mans*,
    157 F.3d 35 (1st Cir. 1998) ...............................................................................................2

*Ford v. Skorich (In re Skorich)*,
    482 F.3d 21 (1st Cir. 2007) ..............................................................................................4

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) .............................................................................................................7

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &*
    *Mgmt. Bd. for P.R.)*,
    939 F.3d 340 (1st Cir. 2019) ..........................................................................................11

*Griffin v. Burns*,
570 F.2d 1065 (1st Cir. 1978) ............................................................................... 2

*In re City of Detroit*,
524 B.R. 147 (Bankr. E.D. Mich. 2014) ................................................................. 5

*In re City of San Bernardino Cal.*,
499 B.R. 776 (Bankr. C.D. Cal. 2013) ................................................................... 4

*In re City of Vallejo*,
2008 WL 4180008 (Bankr. E.D. Cal. Sept. 5, 2008) ............................................. 4

*In re Corner Pockets of Sw., Inc.*,
85 B.R. 559 (Bankr. D. Mont. 1988) .................................................................... 12

*In re Diaconx Corp.*,
69 B.R. 333 (Bankr. E.D. Pa. 1987) ..................................................................... 12

*In re New Era Co.*,
125 B.R. 725 (S.D.N.Y. 1991) .............................................................................. 11

*In re Ram Mfg., Inc.*,
32 B.R. 969 (Bankr. E.D. Pa. 1983) ..................................................................... 12

*In re WorldCom, Inc.*,
2003 WL 22025051 (Bankr. S.D.N.Y. Jan. 30, 2003) .......................................... 11

*Kercado-Melendez v. Aponte-Roque*,
829 F.2d 255 (1st Cir. 1987) ................................................................................. 7

*Ky. Emps. Ret. Sys. v. Seven Ctys. Servs.*,
2020 WL 4049752 (6th Cir. July 20, 2020) ........................................................... 4

*Lopez v. Pompeo*,
923 F.3d 444 (5th Cir. 2019) ................................................................................. 2

*Louisville Joint Stock Land Bank v. Radford*,
295 U.S. 555 (1935) .............................................................................................. 5

*Martin v. Henley*,
452 F.2d 295 (9th Cir. 1971) ................................................................................. 2

*Mazzeo v. Lenhart (In re Mazzeo)*,
167 F.3d 139 (2d Cir. 1999) .................................................................................. 8

*Ohio v. Kovacs*,
469 U.S. 274 (1985) .............................................................................................. 4

*Pa. Dep't of Pub. Welfare v. Davenport*,
  495 U.S. 552 (1990) .................................................................................................4

*Poinsett Lumber & Mfg. Co. v. Drainage Dist. No. 7 of Poinsett Cty.*,
  119 F.2d 270 (8th Cir. 1941) ....................................................................................5

*Rabo Agrifinance Inc. v. Terra XXI Ltd.*,
  257 F. App'x 732 (5th Cir. 2007) ...........................................................................10

*Rhude v. Belknap Cty. NH*,
  2000 WL 1745119 (D.N.H. Oct. 31, 2000) ..............................................................7

*Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &
  Mgmt. Bd. for P.R.)*,
  330 F. Supp. 3d 685 (D.P.R. 2018) ..........................................................................6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
  484 U.S. 365 (1988) ...............................................................................................11

*U.S. v. Sec. Indus. Bank*,
  459 U.S. 70 (1982) ...................................................................................................5

**Constitutions, Statutes, and Rules**

P.R. Const. art. VI, § 8 ..........................................................................................9, 10

3 L.P.R.A. § 1913 .........................................................................................................6

9 L.P.R.A. § 2019 .........................................................................................................6

23 L.P.R.A. § 6450 .......................................................................................................6

11 U.S.C. § 362...........................................................................................................12

11 U.S.C. § 101.............................................................................................................4

48 U.S.C. § 2126 (PROMESA § 106) .........................................................................6

48 U.S.C. § 2163 (PROMESA § 303) ..................................................................6, 7, 12

48 U.S.C. § 2165 (PROMESA § 305) .................................................................*passim*

First Moratorium Law § 201 ........................................................................................7

Fed. R. Evid. 801 .......................................................................................................10

Fed. R. Evid. 803 .......................................................................................................10

- iv -

**Other Authorities**

Admin. Bulletin OE-2016-18 ................................................................................................7

H.R. Rep. No. 102-996 (1992) .........................................................................................12

Movants submit this reply (the "Reply") in further support of the Lift Stay Motions and to address the "Response" (ECF No. 13905) of the Board and AAFAF (collectively, the "Government") to Movants' "Supplemental Brief" (ECF No. 13744). Capitalized terms not defined herein have the meanings used in the Supplemental Brief. Movants state as follows:

## PRELIMINARY STATEMENT

1.      Each of the Government's arguments requires this Court to ignore the First Circuit's *Ambac* decision. The Government argues that Movants received due process because this Court considered related issues in *Ambac Assurance Corp. v. Commonwealth of P.R.*, 297 F. Supp. 3d 269 (D.P.R. 2018) ("Ambac Decision"). But the First Circuit held that those issues were not properly before this Court. The First Circuit's affirmance of this Court's judgment does not make it law of the case. Even setting aside that the decision addressed a different action with non-identical parties and was based on the sufficiency of allegations in a different complaint, the First Circuit affirmed on procedural grounds only. *Ambac Assurance Corp. v. Commonwealth of P.R.*, 927 F.3d 597, 603-05 (1st Cir. 2019) ("*Ambac*"). When an appellate court affirms only on procedural grounds, the district court's other rulings have no preclusive effect in later proceedings. Ultimately, unable to reconcile its position with *Ambac*, the Government glibly asks the Court to ignore it—claiming it "adds nothing." (Resp. ¶ 12.)

2.      The Government likewise errs in repeatedly misconstruing the relief Movants seek. The Government erects a straw man, claiming that Movants seek through this litigation to seize Commonwealth funds, enforce payments, and "jump the line" over other creditors. Movants have limited their request in this supplemental briefing to specific constitutional and statutory violations embodied in Territorial Legislation. The remedies are nonmonetary. Stay relief is thus warranted.

3.      With respect to the CCDA Lift Stay Motion, after contending that it could be resolved summarily, the Government now admits there are many "complex issues" and factual

disputes.  (Resp. ¶ 48 n.44.)  But the Government proffers no evidence to support its position on

these disputes.  As the record stands, the Court must rule for CCDA Movants and lift the stay.

## <u>ARGUMENT</u>

I.    **THE GOVERNMENT'S ARGUMENTS THAT MOVANTS HAVE BEEN AFFORDED DUE PROCESS MISCONSTRUE THE PRIOR PROCEEDINGS.**

   A.    **The Title III Cases Cannot Afford Movants Due Process of Law, as the First Circuit Has Already Recognized.**

      1.    **This Court's *Ambac Decision* Did Not Afford Due Process or Resolve the Merits, Because the First Circuit Held the Rulings in the *Ambac Decision* Exceeded the Court's Authority.**

4.    The Government argues (Resp. ¶¶ 4-5, 19-22) that Movants obtained due process

through the *Ambac Decision*.  But that decision involved only HTA (and only some Movants) and

thus cannot have preclusive effect here.  *Griffin v. Burns*, 570 F.2d 1065, 1071 (1st Cir. 1978).  On

appeal, the First Circuit squarely held that this Court could not decide the issues it had reached.

*Ambac*, 927 F.3d at 603.  While the First Circuit affirmed this Court's *judgment of dismissal*, it did

so on purely procedural grounds—leaving the merits for subsequent proceedings.  *Id.* at 605.

5.    The Government argues that the reasons for affirmance do "not matter."  (Resp.

¶ 21.)  But where, as here, an appeals court affirms on purely procedural grounds, the lower court's

decision on other issues has no preclusive effect.  *See, e.g.*, *Lopez v. Pompeo*, 923 F.3d 444, 446-

47 (5th Cir. 2019); *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 872-73 (10th Cir. 1992).

6.    The "law of the case" doctrine does not apply because the rulings at issue here were

"disapproved on review."  *Martin v. Henley*, 452 F.2d 295, 300 (9th Cir. 1971), *cited in* Resp. ¶ 21

n.24; *Field v. Mans*, 157 F.3d 35, 42 (1st Cir. 1998) ("A court that refuses to address an issue on

procedural grounds cannot reasonably be said to have decided the merits . . . even implicitly.").

Moreover, the *Ambac Decision* merely dismissed on grounds of jurisdiction and the sufficiency of

factual allegations in a specific complaint.  *Ambac Decision*, 297 F. Supp. 3d at 289, 297.  Any

pleading here would include additional facts curing any deficiencies previously identified. *Cf.
Charlie's Project, LLC v. T2B, LLC*, 2019 WL 608838, at *2 (D. Mass. Feb. 13, 2019) ("the law
of the case doctrine does not apply if [a party's] amended pleading differs meaningfully from the
pleading upon which the court has already ruled").

7.      The Government's claim that "Movants concede the ongoing vitality of the *Ambac
Decision* by affirmatively relying on" it is meritless.  (Resp. ¶ 21.)  Movants cite the *Ambac
Decision* as persuasive evidence that Movants have at least colorable Contract Clause causes of
action (Supp. Br. ¶ 19)—not to suggest that the decision has preclusive effect on either party.

8.      Finally, the Board's accusation that Movants are undertaking a "ploy . . . to break
their claims into little pieces and request abstract advisory rulings on each piece" (Resp. ¶ 2)
flagrantly misrepresents Movants' actions.  Movants raised these issues in proofs of claim not
because they are "claims" (as the Board insinuates, *see* Resp. ¶ 18 & n.17), but as a precaution and
because Movants wanted to substantively litigate all issues ("claims" and non-"claims" alike) here.
(*See, e.g.*, Claim Nos. 27427, 57622 (reserving right to argue these are not "claims").)  The First
Circuit's § 305 ruling makes clear that Movants cannot do so.  *Ambac*, 927 F.3d at 603.  That
ruling, and *the Board's* strategic decision not to waive § 305, has left Movants no choice but to
seek to litigate their causes of action in a forum with authority to decide them.  Movants also are
not seeking "advisory rulings."  The Commonwealth clearly views the Territorial Legislation as
important; it has extended the Moratorium Laws several times, as recently as June 2020.

**2.      Movants' Constitutional and Preemption Causes of Actions Do Not
Give Rise to Monetary Damages and Thus Are Not "Claims" that Can
Be Resolved in the Title III Cases.**

9.      In an attempt to create the misimpression that Movants' causes of action will be
resolved in the Title III proceedings, the Government repeatedly misconstrues the actions Movants
seek to bring—claiming that Movants seek (i) "to compel [the Commonwealth] to transfer funds

to its instrumentalities and effectively 'jump the line'" (Resp. ¶ 8), (ii) "to seize the [Commonwealth's] funds" (*id.* ¶ 10), (iii) to obtain "a right to payment" (*id.* ¶ 17), (iv) to "act against Commonwealth revenues" (*id.* ¶ 28), or (v) to "obtain declarations that the retained revenues . . . should be used to pay their claims, ahead of all other claimholders" (*id.* ¶ 31).

10.     Each of these contentions is false.  Movants' causes of actions would resolve the constitutionality and validity of the Territorial Legislation—not result in monetary damages.  As Movants have shown (Supp. Br. ¶¶ 42-45), the remedy under a Contract Clause, Due Process Clause, or preemption cause of action is invalidation of the challenged act, not money damages.[2]

11.     The Government is also wrong to suggest that these causes of action "stem from the Commonwealth's failure to appropriate or transfer certain revenues." (Resp. ¶ 17.)  The Due Process Clause cause of action stems from the deprivation of Movants' property rights *without pre-deprivation notice or hearing*.  The Contract Clause and preemption causes of action stem not from a mere breach but from Territorial Legislation that deprives Movants of their *remedy* to sue for breach and that changes payment priorities on a go-forward basis.  (Supp. Br. n.4.)

12.     Only Movants' Takings Clause claim (which can be evaluated separately from the other causes of action) involves a right to payment.  But stay relief is appropriate for that claim

---

[2] *In re Skorich*, 482 F.3d 21, 26 (1st Cir. 2007) (Section 101(5)(B) does not apply where requested remedy is not for a "breach of performance"); *In re A.J. Lane & Co. Inc.*, 115 B.R. 738, 742 (Bankr. D. Mass. 1990) (Section 101(5)(B) "includes an equitable remedy as a claim only if the underlying breach 'gives rise to a right of payment'" (quoting 124 Cong. Rec. H11,090 (daily ed. Sept. 28, 1978); 124 Cong. Rec. S17,406 (daily ed. Oct. 6, 1978))).

The Government's contention that the Commonwealth is free to violate statutes in bankruptcy (Resp. ¶ 17) is meritless. Municipal debtors must comply with the law like everyone else.  *In re City of Vallejo*, 2008 WL 4180008 at *5-9 (Bankr. E.D. Cal. Sept. 5, 2008) (debtor could not use restricted funds), *aff'd* 408 B.R. 280, 285 (B.A.P. 9th Cir. 2009); *In re City of San Bernardino*, 499 B.R. 776, 789 (Bankr. C.D. Cal. 2013) ("City was legally prohibited . . . from using Water Department funds"); *In re City of Detroit*, No. 13-53846, ECF No. 2521 (Jan. 16, 2014 Hearing Tr.) (due to restrictions in Michigan gaming law, casino revenues could not be used); *see also Ky. Emps. Ret. Sys. v. Seven Ctys. Servs.*, 2020 WL 4049752, at *3-5 (6th Cir. July 20, 2020) (statutory obligation to make employer contributions must be complied with even in bankruptcy).  *Ohio v. Kovacs*, 469 U.S. 274 (1985) and *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990) are not to the contrary.  (Resp. ¶ 17 n.15.)  They dealt with prepetition orders equivalent to money judgments, not the debtor's obligation to comply with statutes.

because a constitutionally protected property interest cannot be impaired in bankruptcy. *U.S. v. Sec. Indus. Bank*, 459 U.S. 70, 75 (1982); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935); *In re City of Detroit*, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014).[3]

> **3.    The Government Misconstrues the First Circuit's *Ambac* Ruling, Which Makes Clear that Stay Relief Is Necessary to Protect Movants' Due Process Rights.**

13.    The Government tries to minimize the First Circuit's *Ambac* ruling, arguing that it "adds nothing new to the § 305 jurisprudence." (Resp. ¶ 12 (citing *Ambac*, 927 F.3d at 605).) The Government argues that the citation to *PREPA* shows the decision broke no new ground. But the First Circuit cited *PREPA* to support the point that § 305 limits the power of the Title III court but not any other court. What is novel in the First Circuit's *Ambac* opinion is the conclusion that stay relief is the safety valve to provide due process. The First Circuit recognized that § 305 would raise due process issues if stay relief were not readily available.

14.    The First Circuit plainly did not approve of using § 305, as the Board has, to improperly slant the litigation and compromise the neutrality of federal judiciary—a problem that the Response only worsens. Ambac already tried to litigate these issues in the Title III Court and was unable to. The Board now hints that it might not stick to its position on § 305 at all, and seems

---

[3] Neither case the Government cites is to the contrary. *Poinsett Lumber & Mfg. Co. v. Drainage Dist. No. 7 of Poinsett Cty.* did not involve a Fifth Amendment "taking" at all. 119 F.2d 270, 271 (8th Cir. 1941). The plaintiff there complained of water damage (an unsecured claim, like any other tort), and the court did not find a Fifth Amendment "taking." *In re City of Stockton, Cal.* also did not involve any Fifth Amendment protected property interest. 909 F.3d 1256, 1267 (9th Cir. 2018). There, the appellant accepted the appraised value of the property in cash, consented to "g[i]ve up all rights to the property," and thus "did *not* possess a right to the property protected by the Fifth Amendment. It had been extinguished." *Id.* at 1267 (emphasis added). Due to a procedural quirk arising from the city's failure to finalize its eminent domain action, the appellant obtained the right to a "*statutory* monetary claim for greater compensation." *Id.* at 1261, 1267 (emphasis added). But in bankruptcy, the appellant did not object to the classification of this claim as unsecured. In a split decision, the court noted in *dicta* that the appellant's California state law *statutory* claim was not a federally protected property interest—but ultimately ruled on forfeiture and equitable mootness grounds. *Id.* at 1267-69 ("One cannot play possum during bankruptcy proceedings and then claim some new interest after a plan has been confirmed."). This decision has no relevance here. Movants have timely asserted constitutionally protected property rights.

to invite the Court to hold a hearing at which the Court either would issue some sort of conditional advisory ruling—or presumably intimate, through questioning or otherwise, how it might rule. The Board envisions that it could then decide at the hearing or after whether to waive § 305. (Resp. ¶¶ 7 n.11, 13.) This brazen attempt to get an advisory ruling and strategic litigation advice from the Court lays bare how fundamentally the Board's selective waiver compromises the neutrality of the judiciary. (Supp. Br. ¶ 13.) The judicial role is to decide neutrally the cases and controversies actually presented for resolution—not offer advisory opinions, conditional rulings, or strategic advice. *See ACP Master, Ltd. v. P.R.*, 300 F. Supp. 3d 328, 336-37 (D.P.R. 2018), *aff'd*, 919 F.3d 638, 645-46 (1st Cir. 2019). The Court should reject the Board's invitation to play such games. The Board has made its position on § 305 clear in a lengthy colloquy with the Court. It could have consented to jurisdiction over these claims then, or refined its position in the Response. It chose not to.

### B.   Movants Have Colorable Causes of Action.

15.   ***Contract Clause***. The Government's hodgepodge of theories are all meritless. *First*, PROMESA § 106(e) "does not . . . deprive the Court of jurisdiction to entertain" constitutional challenges. *Ambac Decision*, 297 F. Supp. 3d at 284.[4] *Second*, Movants are bondholders, and subrogated to bondholders' rights, and thus are "parties" to the Commonwealth's statutory covenants (Resp. ¶ 24).[5] *Third*, that the Commonwealth is in Title III (Resp. ¶ 8) does not authorize it to adopt *its own* laws impairing contracts. Even the case the Government cites

---

[4] Where, as here, the "questions before the Court implicate the impact, rather than the propriety, of the certification of the Fiscal Plan and Budget . . . their determination is not precluded by Section 106(e)." *Rosselló Nevares v. Fin. Oversight & Mgmt. Bd. for P.R.*, 330 F. Supp. 3d 685, 695 (D.P.R. 2018). PROMESA § 106(e) also does not bar challenges under § 303, nor where the Board exceeds its statutory authority and thus fails to make a "certification determination. *See* Assured/FGIC Complaint ¶¶ 243; 244, 255-59; HTA Lift Stay Reply ¶ 105.

[5] *E.g.*, 3 L.P.R.A. § 1913 ("The Commonwealth pledges and agrees with the holders of any bonds"); 9 L.P.R.A. § 2019 ("with, any person . . . acquiring bonds"); 23 L.P.R.A. § 6450 ("with the holders of any bonds").

makes this plain.  *See In re City of Stockton*, 478 B.R. 8, 16 (Bankr. E.D. Cal. 2012) ("a state cannot make a law impairing the obligation of contract, [but] Congress can do so"), *cited in* Resp. ¶ 14.  In *Stockton*, contractual remedies were only impaired by federal bankruptcy law.  Movants challenge here *Territorial* Legislation that unconstitutionally impairs contractual remedies.

16.     ***Preemption Under PROMESA § 303.***  The Government's claim that the Territorial Legislation amounts to a mere breach of contract is wrong.  (Resp. ¶¶ 2, 8, 25.)  The legislation, *inter alia*, seizes Movants' *remedies*, *see, e.g.*, First Moratorium Law § 201(b)(ii); OE-2016-18 ¶ 4, and unlawfully modifies statutory payment priorities with prospective effect.  The Government also had no answer to Movants' contention that the Moratorium Laws have been extended indefinitely and ultimately may become permanent.  (Supp. Br. ¶ 28.)

17.     ***Due Process Clause.***  The Government's contention that the Title III process cures the *Government's* undisputed failure to provide pre-deprivation notice and a hearing (Resp. ¶ 27) is meritless.  *Post hoc* judicial process cannot cure a due process violation by the executive branch. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972); *Kercado-Melendez v. Aponte-Roque*, 829 F.2d 255, 263 (1st Cir. 1987); *Rhude v. Belknap Cty. NH*, 2000 WL 1745119, at *4 (D.N.H. Oct. 31, 2000).

18.     ***Takings Clause.***  The Government's contention that Movants lack a property right (Resp. ¶ 26) ignores the distinction between property protected under the Bankruptcy Code and the broader set of interests protected under the Fifth Amendment.  (Supp. Br. ¶ 35.)  The Government is also wrong to suggest that *Security Industrial Bank* was limited to Bankruptcy Code secured claims (Resp. ¶ 18 n.19); its logic extends to all constitutionally protected property.

19.     The Government also could not distinguish *Edward J. Berwind, Inc. v. Chicago Park Dist.*, 65 N.E. 2d 785 (Ill. 1946).  There was no more explicit "assignment" there than here.  That the pledges here "were made by the instrumentalities, not by the Commonwealth" (Resp. ¶ 18

n.19) is of no consequence because the Commonwealth authorized the pledges and covenanted to comply with them.  Indeed, other cases have held that, where a main government and one of its subunits pledge revenues to bonds, *both* the main government and the subunit hold the revenues in trust.  *E.g.*, *Bexar Cty. Hosp. Dist. v. Crosby*, 327 S.W.2d 445, 448 (Tex. 1959).

## II.   THE GOVERNMENT FAILS TO REFUTE MOVANTS' SHOWING OF "CAUSE" TO LIFT THE AUTOMATIC STAY.

20.     A traditional "cause" analysis only shows further "cause" for stay relief:

21.     ***Complete Resolution (Factor 1) and Judicial Economy (Factor 10).*** Contrary to the Government's claim (Resp. ¶ 29), the parties *cannot* obtain a complete resolution in this Court because of PROMESA § 305 and the Government's refusal to waive it.  (*Supra* § I.A; Supp. Br. ¶¶ 2, 6-14, 41.)  Only a non-Title III court can award relief to either prevailing party.  Litigating the issues here, only to then litigate them again elsewhere, is plainly duplicative and wasteful.

22.     ***Lack of Prejudice to Other Creditors (Factor 7).*** Contrary to the Board's arguments (Resp. ¶ 31), there will be no prejudice to other creditors because "core" bankruptcy issues like relative priorities between creditors will still be resolved in this Court.  The proposed proceedings will merely resolve threshold issues concerning the validity of Territorial Legislation.

23.     ***Balance of Harms (Factor 12).*** The Government conflates its view of the merits with the question of relative hardship.  (Resp. ¶ 33.)  Movants face dramatic hardship from the stay because Movants are deprived entirely of judicial redress.  If the Government is right that Movants' arguments are without merit, then the non-Title III court will resolve them in the Government's favor.  But if Movants' arguments are meritorious and stay relief is denied, Movants cannot obtain any remedy.  The balance of hardships thus tilts heavily toward Movants.

24.     The remaining factors the Government addresses summarily (Resp. ¶ 30, 32) are not relevant and do not weigh in either party's favor.  *Mazzeo v. Lenhart*, 167 F.3d 139, 142-43

(2d Cir. 1999) ("Not all of these factors will be relevant in every case.").

## III.   THE RESPONSE CONFIRMS THAT THE CCDA STAY MOTION REQUIRES FURTHER PROCEEDINGS.

25.     After previously arguing that CCDA issues could be resolved summarily (ECF No. 13601, ¶ 18), the Government now raises myriad fact disputes—on both adequate protection (Resp. ¶ 37) and equity (Resp. ¶ 48 n.44).  Because the Government offers no evidentiary support for its assertions, the CCDA Stay Motion must be granted based on CCDA Movants' unrebutted evidence.  If the Court does wish to allow the Government to present facts, the CCDA parties should be directed to meet-and-confer regarding discovery and a full factual hearing.

### A.   The Government Fails to Rebut CCDA Movants' Showing that the Commonwealth Lacks Equity in the Transfer Account Monies.

26.     The Response confirms that the Government's sole basis for claiming equity is Art. VI, § 8.  (Resp. ¶¶ 42, 44, 48-49.)  The Government's arguments thereunder are unavailing:

27.     *First*, the Government argues that the statutory "last dollars" protection is irrelevant because the Constitution sets the "***sole*** condition precedent" to the Commonwealth's rights.  (Resp. ¶ 48.)  But Section 8 says "interest on the public debt and amortization thereof shall first be paid, and *other disbursements shall thereafter be made in accordance with the order of priorities established by law*."  P.R. Const. art. VI, § 8 (emphasis added).  The "last dollars" protection is thus incorporated into Art. VI, § 8.

28.     *Second*, the Government argues that, for the relevant years, the available revenues including surplus were insufficient to meet the appropriations made if the Court counts *hypothetical* appropriations that *would have* been made if control over appropriations had not been transferred to the Board.  (Resp. ¶ 48 n.44.)  This is nonsensical.  The Board controls the "appropriations made" in any years in which it is in existence.  CCDA Movants simply observed that a government's refusal to appropriate funds does not discharge or defeat its legal obligations.

29.    The Government offers no evidence to support its assertion that these hypothetical appropriations exceed available resources in any case.  (Resp. ¶ 48 n.44.)  The Miller Declaration is based on simple arithmetic from the Commonwealth's public statements (admissible under Fed. R. Evid. 801(d)(2) and 803(8)) and discovery (admissible by stipulation, *see* Hughes Decl., Ex. 20, ECF No. 13007).  Bald assertions do not rebut this evidence.  The Government also makes factual mistakes—claiming, for instance, that CCDA Movants did not "account for debt acceleration." (Resp. ¶ 48 n.44.)  The GO bonds do not have acceleration provisions, and thus the "interest on and amortization of the public debt" under Art. VI, § 8 does not change with a bankruptcy filing. *Cf. Rabo Agrifinance Inc. v. Terra XXI Ltd.*, 257 F. App'x 732, 734 (5th Cir. 2007).

30.    *Finally*, the Government argues that the Commonwealth has equity because "GO bondholders are not getting paid in full."  (Resp. ¶ 48.)  But the Government had no answer to the fact that (i) the Transfer Account Monies have not been applied to GO debt in the relevant years (setting aside four months in 2015-16, the status of which is disputed), and (ii) the Commonwealth is paying subordinated expenses like pensions.  Miller Decl., Ex. 62 (acknowledging that "pension payments are subordinated").   Because the Government is not complying with the Section 8 priorities requiring bonds to be paid first, it cannot rely on Section 8 as a source of equity.

31.    Movants' showing that "the value of the" collateral is less than "the amount due" (Resp. ¶ 46) is undisputed.  (Miller Decl. ¶¶ 14-20; Supp. Br. ¶¶ 53-56.)  The Commonwealth thus lacks equity.  The Government's claim that the funds are needed for its reorganization relies solely on the same Art. VI, § 8 theory (Resp. ¶ 50) and fails for the same reasons.

**B.    The Government Tacitly Concedes that CCDA Movants Lack Adequate Protection Under the Status Quo.**

32.    The Government tacitly concedes that CCDA Movants lack adequate protection, offering to "affirmatively commit" not to spend the Transfer Account Monies "until all ownership

issues are resolved in the Adversary Proceeding." (Resp. ¶ 36.)  This does not suffice.

33.    The monies at issue are held in the Tourism Company bank accounts.  The Government has not shown that this Court even has jurisdiction over the Tourism Company, which has legal title to and control over the relevant accounts, nor offered to make any commitment on behalf of the Tourism Company.  A commitment by the Commonwealth (or the Board as its representative) would leave open the risk of dissipation of the collateral by the Tourism Company.

34.    Claiming that "historical dissipation" is irrelevant, the Government offers to restrict only First Bank -3961. (Resp. ¶¶ 36, 40.)  But CCDA Movants' property interest is not confined to that account.  CCDA Movants have a lien on at least $139 million in funds that flowed through the Scotiabank / Oriental Bank -5142 account—including (i) all money currently in that account, (ii) any funds in *other* accounts that received transfers, directly or indirectly, from that account, and (iii) any funds that may be deposited in the future in that account.  CCDA Movants thus have a property right to *at least* $42 million (beyond the $97 million in First Bank -3961), which can be traced from Scotiabank / Oriental Bank -5142.  *Cf. Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R.*, 939 F.3d 340, 351 (1st Cir. 2019).  The Government is not offering to protect these funds.

35.    The Government fails to prove that there is protection "against diminution of value." (Resp. ¶ 37); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, Ltd., 484 U.S. 365, 370 (1988).  Movants need not show that the Tourism Company's banks "are in imminent danger of failure." (Resp. ¶ 38); *In re New Era Co.*, 125 B.R. 725, 730 (S.D.N.Y. 1991) (adequate protection needed where "mismanagement of the property create[d] a substantial risk [to] the property's value"); *cf. In re WorldCom, Inc.*, 2003 WL 22025051, at *6 (Bankr. S.D.N.Y. Jan. 30, 2003) ("decline in value—or the threat of a decline" makes a *prima facie* case).  It is undisputed that the money is in uninsured deposits at "junk"-rated banks. (Supp. Br. ¶ 66.)  In the

pandemic economy, some such banks may fail.  CCDA Movants are entitled to avoid that risk.

36.     There is also no dispute that CCDA Movants lack an equity cushion, which (contrary to the Government's claims, Resp. ¶ 39 n.40) is sufficient "cause."  *In re Ram Mfg., Inc.*, 32 B.R. 969, 971 (Bankr. E.D. Pa. 1983) (lack of equity cushion "sufficient for granting relief under § 362(d)(1)"); *In re Diaconx Corp.*, 69 B.R. 333, 338 (Bankr. E.D. Pa. 1987) ("lack of equity, is a basis for concluding that [creditor's] claim is not adequately protected").

### C.     The CCDA Adversary Proceeding Will Not Fully Adjudicate Movants' Rights and Cannot Substitute for Movants' Right to Stay Relief.

37.     The Government does not dispute that the Court must grant stay relief if the Commonwealth lacks equity or CCDA Movants lack adequate protection.  (Supp. Br. ¶¶ 67-69.)

38.     Even if an open-ended "cause" inquiry is needed, stay relief is still necessary.  The adversary proceeding is not "the most efficient forum."  (Resp. ¶ 51.)  If CCDA Movants prevail, the litigation would need to be repeated elsewhere.  Stay relief cannot cause any "irreparable injury"; the Commonwealth will have the right to present its defenses in the non-Title III forum.

39.     The suggestion that the Court indefinitely defer decision is improper.  The § 362(e) timeframe has already expired; the Court cannot allow further delay.  And "compelling circumstances" means only things such as "the bona fide illness of any party or the judge or the occurrence of an event beyond the parties' control."  H.R. Rep. No. 102-996 (1992) ("an extension should not be available where the debtor was merely seeking to delay"); *In re Corner Pockets of Sw., Inc.*, 85 B.R. 559, 561 (Bankr. D. Mont. 1988) ("Section 362(e) was enacted to prevent the practice . . . of 'injunction by continuance.'").

### CONCLUSION

40.     The Court should (i) allow Movants to bring the Contract Clause, Due Process Clause, Takings Clause, and PROMESA § 303 actions, and (ii) grant the CCDA Lift Stay Motion.

Dated: August 5, 2020
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By:    */s/ Roberto Cámara-Fuertes*
        Roberto Cámara-Fuertes (USDC-PR
        No. 219002)
        Sonia Colón (USDC-PR No. 213809)
        221 Ponce de León Avenue, 5th Floor
        San Juan, PR 00917
        Telephone: (787) 766-7000
        Facsimile: (787) 766-7001
        Email: rcamara@ferraiuoli.com
             scolon@ferraiuoli.com

**MILBANK LLP**

By:    */s/ Atara Miller*
        Dennis F. Dunne (admitted *pro hac
        vice*)
        Atara Miller (admitted *pro hac vice*)
        Grant R. Mainland (admitted *pro hac
        vice*)
        John J. Hughes, III (admitted *pro hac
        vice*)
        55 Hudson Yards
        New York, NY 10001
        Telephone: (212) 530-5000
        Facsimile:  (212) 530-5219
        Email: ddunne@milbank.com
             amiller@milbank.com
             gmainland@milbank.com
             jhughes2@milbank.com

*Attorneys for Ambac Assurance Corporation*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Ellen M. Halstead (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        ellen.halstead@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com


**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    5430 LBJ Freeway, Suite 1200
    Dallas, TX 75240
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com
    Jason W. Callen (admitted *pro hac vice*)
    150 3rd Ave., S., Suite 1600
    Nashville, TN 37201
    Telephone: (615) 651-6774
    Facsimile: (615) 651-6701
    Email: jason.callen@butlersnow.com


*Attorneys for Financial Guaranty Insurance Company*

**RIVERA, TULLA AND FERRER, LLC**

By:  */s/ Eric A. Tulla*
    Eric A. Tulla
    (USDC-DPR No. 118313)
    Email: etulla@ riveratulla.com
    Iris J. Cabrera-Gómez
    (USDC-DPR No. 221101)
    Email: icabrera@ riveratulla.com
    Rivera Tulla & Ferrer Building
    50 Quisqueya Street
    San Juan, PR 00917-1212
    Telephone: (787) 753-0438
    Facsimile: (787) 767-5784

**SEPULVADO, MALDONADO & COURET**

By:  */s/ Albéniz Couret Fuentes*
    Albéniz Couret Fuentes
    (USDC-PR No. 222207)
    304 Ponce de León Ave. Suite 990
    San Juan, PR 00918
    Telephone: (787) 765-5656
    Facsimile: (787) 294-0073
    Email: acouret@smclawpr.com

**HOGAN LOVELLS US LLP**

By:  */s/ Robin E. Keller*
    Robin E. Keller, Esq.
    Ronald Silverman, Esq.
    390 Madison Avenue
    New York, NY 10017
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    robin.keller@hoganlovells.com
    ronald.silverman@hoganlovells.com

*Attorneys for U.S. Bank National
Association, in its Capacity as Trustee
to PRIFA Bondholders*

**REED SMITH LLP**

By:  */s/ Eric A. Schaffer*
    Eric A. Schaffer (admitted *pro hac vice*)
    Luke A. Sizemore (admitted *pro hac vice*)
    Jared S. Roach (admitted *pro hac vice*)
    225 Fifth Avenue, Suite 1200
    Pittsburgh, PA 15222
    Telephone: (412) 288-3131
    Facsimile: (412) 288-3063
    Email: eschaffer@reedsmith.com
          lsizemore@reedsmith.com
          jroach@reedsmith.com

*Attorneys for The Bank of New York
Mellon, in its Capacity as Trustee to CCDA
Bondholders*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com