## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS |

## REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926 OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID:  9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID:  3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID:  3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ..................................................................................................................................4

I.    This Court Can Preserve HTA's Rights Without Reaching the Merits of the HTA
      926 Motion At This Time or Causing Prejudice to Any Party ...........................................4

II.   FOMB's Conflict of Interest Supports the Appointment of a Trustee Under
      Section 926 to Recover the Excise Taxes for HTA and Its Bondholders...........................6

      A.    FOMB's Unjustified Refusal to Bring Avoidance Actions on HTA's
            Behalf Arises From an Irreconcilable Conflict of Interest.......................................7

      B.    FOMB May Not Invoke Laches to Defend and Maintain Its Conflict of
            Interest.......................................................................................................................9

      C.    The Plain Language of Section 926 Encompasses Avoidance Actions
            Against Government Entities ..................................................................................11

III.  Andalusian Does Not Support Denying the HTA 926 Motion.........................................12

      A.    The HTA 926 Motion Is Not Duplicative and Would Not Result in a
            Needless Proliferation of Actions ..........................................................................13

      B.    FOMB Fails to Rebut Movants' Argument That Denying the HTA 926
            Motion Would Result in Substantive Consolidation ..............................................14

      C.    FOMB's Other Extrapolations from Andalusian and the Objectives of
            PROMESA Are Unpersuasive .................................................................................15

IV.   HTA's Avoidance Claims Are Not Only Colorable, But Strong......................................17

      A.    The Preliminary Ruling Is Not Preclusive, And the Debtors Fail to Dispute
            HTA's Clear Property Interests ..............................................................................17

      B.    The Excise Tax Statutes Are Not Preempted..........................................................21

      C.    The Debtors Made Avoidable Transfers..................................................................22

      D.    Section 303 Preempts the Territorial Laws.............................................................25

      E.    Section 305 Supports Granting the HTA 926 Motion .............................................28

      F.    The Postpetition Transfers Were Not Authorized, And Section 549
            Applies .....................................................................................................................29

CONCLUSION ..............................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

Ambac Assurance Corp. v. Commonwealth,
   927 F.3d 597 (2019)..................................................................................................29

Andalusian Global Designated Activity Company, et al. v. FOMB,
   954 F.3d 1 (1st Cir. 2020).................................................................... *passim*

In re Antex, Inc.,
   397 B.R. 168 (B.A.P 1st Cir. 2008) ...........................................................19

In re Anton Noll, Inc.,
   277 B.R. 875 (B.A.P 1st Cir. 2002) ...........................................................19

Aqueduct & Sewer Auth. of P.R. v. Union Empleados A.A.A.,
   5 P.R. Offic. Trans. 602 (P.R. 1976)..........................................................30

Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio
   v. Flores Galarza,
   484 F.3d 1 (1st Cir. 2007)..........................................................................20

Assured Guar. Corp. v. García-Padilla,
   Case No. 16-cv-01037 (D.P.R. Oct. 14, 2016) ........................................25

In re Bajgar,
   104 F.3d 495 (1st Cir. 1997).......................................................................22

In re Blast Fitness Grp., LLC,
   603 B.R. 219 (Bankr. D. Mass. 2019) ......................................................24

Bostock v. Clayton Cty., Georgia,
   140 S. Ct. 1731 (2020)...............................................................................12

In re Butler,
   377 B.R. 895 (Bankr. D. Utah 2006) .........................................................23

In re C-T of Virginia, Inc.,
   124 B.R. 700 (W.D. Va. 1990) ..................................................................24

In re Cabrini Medical Center,
   489 B.R. 7 (S.D.N.Y. 2012).......................................................................30

Cent. States, Se. & Sw. Areas Pension Fund v. The Kroger Co.,
   No. 01 C 2680, 2004 WL 2452737 (N.D. Ill. Nov. 1, 2004)....................10

In re City of San Bernardino,
    499 B.R. 776 (Bankr. C.D. Cal. 2013) ................................................................18

In re City of Stockton,
    526 B.R. 35 (Bankr. E.D. Cal.), aff'd in part, dismissed in part on other
    grounds, 542 B.R. 261 (B.A.P. 9th Cir. 2015) ...................................................28

In re City of Vallejo,
    2008 WL 4180008 (Bankr. E.D. Cal. Sept. 5, 2008), aff'd 408 B.R. 280 (9th
    Cir. BAP 2009) ...................................................................................................18

In re Clouse,
    446 B.R. 690 (Bankr. E.D. Pa. 2010) .................................................................30

Commerzanstalt v. Telewide Sys., Inc.,
    790 F.2d 206 (2d Cir. 1986).................................................................................29

In re Comprehensive Power, Inc.,
    578 B.R. 14 (Bankr. D. Mass. 2017) ...................................................................24

In re Delta Investments & Dev. LLC,
    2019 WL 137578 (Bankr. S.D. Miss. 2019) ........................................................29

Ferris v. United States,
    27 Ct. Cl. 542 (1892) ...........................................................................................22

In re Fin. Oversight & Mgmt. Bd. for P.R.,
    330 F. Supp. 3d 685 (D.P.R. 2018), aff'd, 945 F.3d 3 (1st Cir. 2019) ................21

In re Fin. Oversight & Mgmt. Bd. for P.R.,
    361 F.Supp.3d 203 (D.P.R. 2019)........................................................................15

Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Investment LLC,
    140 S. Ct. 1649 (2020)..........................................................................................22

In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,
    432 F. Supp. 3d 25 (D.P.R. 2020).................................................................7, 12

In re Forman Enterprises, Inc.,
    273 B.R. 408 (Bankr. W.D. Pa. 2002) .................................................................23

Franklin Cal. Tax-Free Tr. v. P.R.,
    805 F.3d 322 (1st Cir. 2015).................................................................................30

In re Gibson Grp., Inc.,
    66 F.3d 1436 (6th Cir. 1995) ..................................................................................9

Grella v. Salem Five Cent Savings Bank,
　　42 F.3d 26 (1st Cir. 1994) ..................................................................................17

Ky. Employees Retirement Sys. v. Seven Countries Services,
　　2020 WL 4049752 (6th Cir. July 20, 2020) .......................................................18

Maine Cmty. Health Options v. United States,
　　140 S. Ct. 1308 (2020) .......................................................................................22

In re Montreal, Maine & Atl. Ry., Ltd.,
　　888 F.3d 1 (1st Cir. 2018) ...................................................................................19

In re Mullarkey,
　　410 B.R. 338 (Bankr. D. Mass. 2009) .................................................................10

In re N.Y.C. Off-Track Betting Corp.,
　　434 B.R. 131 (Bankr. S.D.N.Y. 2010) ................................................................28

Matter of Pease,
　　195 B.R. 431 (Bankr. D. Neb. 1996) ..................................................................30

Petrella v. Metro-Goldwyn-Mayer, Inc.,
　　572 U.S. 663 (2014) ...........................................................................................10

Puerto Rico v. Franklin California Tax-Free Trust,
　　136 S.Ct. 1938 (2016) ...................................................................................25, 26

Rubin v. Manufacturers Hanover Tr. Co.,
　　661 F.2d 979 (2d Cir. 1981) ...............................................................................24

San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico,
　　967 F.2d 683 (1st Cir. 1992) ...............................................................................20

In re Superior Stamp & Coin Co.,
　　223 F.3d 1004, 1009 (9th Cir. 2000) ...................................................................19

In re Skorich,
　　482 F.3d 21 (1st Cir. 2007) .................................................................................26

U.S. Tr. Co. of N.Y. v. N.J.,
　　431 U.S. 1 (1977) ...............................................................................................21

United States v. Rivera,
　　131 F.3d 222 (1st Cir. 1997) ...............................................................................12

Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R.,
　　945 F.3d 3 (1st Cir. 2019) ...................................................................................22

## Federal Statutes

11 U.S.C. § 101(54) ........................................................................................................22, 24

11 U.S.C. § 362 ..............................................................................................................29, 30

11 U.S.C. § 544 ....................................................................................................................11

11 U.S.C. § 545 ....................................................................................................................11

11 U.S.C. § 548 ....................................................................................................................11

11 U.S.C. § 549 ...................................................................................................4, 11, 14, 29

11 U.S.C. § 903(1) ....................................................................................................25, 26, 27

11 U.S.C. § 904 ....................................................................................................................28

11 U.S.C. § 926 ............................................................................................................. *passim*

11 U.S.C. § 926(a) ................................................................................................................11

11 U.S.C. § 926(b) ...............................................................................................................11

PROMESA § 101(a) .............................................................................................................15

PROMESA § 201(b)(1)(M) .............................................................................................12, 28

PROMESA § 202 ..................................................................................................................21

PROMESA § 209 ..................................................................................................................15

PROMESA § 303 .............................................................................................17, 25, 26, 28, 29

PROMESA § 303(1) ....................................................................................................25, 26, 27

PROMESA § 303(3) .........................................................................................................12, 27

PROMESA § 304(f) ..........................................................................................................14, 15

PROMESA § 305 ...........................................................................................................4, 28, 29

PROMESA § 315(b) .............................................................................................................7, 8

## Federal Legislative Authorities

H.R. Rep. No. 95-595 (1977) ................................................................................................23

H.R. Rep. No. 114-602 (2016)...................................................................................27

S. Rep. No. 95-989 (1978)......................................................................................23

**Puerto Rico Statutes**

9 L.P.R.A. § 2004(f) ...............................................................................................28

9 L.P.R.A. § 2004(g)...............................................................................................29

9 L.P.R.A. § 2004(l)................................................................................................29

13 L.P.R.A. § 31751(a)(1)(C)..................................................................................21

26 L.P.R.A. § 8055(j)..............................................................................................20

**Other Authorities**

Black's Law Dictionary (9th ed. 2009)....................................................................27

Jan. 16 Hearing Transcript, In re City of Detroit,
     Case No. 13-53846, ECF No. 2521 ................................................................18

Peter Spero, Fraudulent Transfer, Prebankruptcy Planning and Exemptions § 1:20
     (2018)..............................................................................................................24

Restatement (Third) of Trusts (2003) .................................................................18, 26

Movants[2] respectfully submit this Reply in further support of their motion for appointment as trustees under 11 U.S.C. § 926 (ECF No. 13708, "HTA 926 Motion" or "Mot.") and in response to the objections by FOMB (ECF No. 13929, "F.Opp.") and AAFAF ("ECF No. 13930, "A.Opp.").

## PRELIMINARY STATEMENT

1.      FOMB and AAFAF deliberately miscast the HTA 926 Motion as merely another bid for bondholder relief, lacking both merit and purpose in light of Movants' simultaneous efforts to lift the automatic stay to protect their property interests in the Excise Taxes.  But the HTA 926 Motion is different: it will become most relevant specifically if the First Circuit agrees with this Court that Movants *lack* a property interest in Excise Taxes held by the Commonwealth, but nonetheless concludes that those funds are property of HTA, held in trust by the Commonwealth. HTA then would be indisputably entitled to the Excise Taxes, which would at last enable HTA properly to maintain its operations, repair critical transportation infrastructure, and regain access to the capital markets, as PROMESA and Commonwealth law envision and prescribe.  However, unless a trustee is appointed under Section 926, there will be no one willing to pursue those rights for HTA—least of all FOMB, which, despite its statutory duty to represent HTA's interests, has instead forsaken them at every turn.  Rather than do the hard work of leading the Commonwealth to fiscal responsibility, FOMB seeks to finance a plan on the backs of HTA and its stakeholders, driving HTA straight to financial ruin.  This violates both Commonwealth law and PROMESA.

2.      The HTA 926 Motion is nothing more, and nothing less, than Movants' good-faith effort to preserve HTA's right to seek the return of the Excise Taxes from the Commonwealth in the event they are ultimately determined to be HTA's property.  That goal should be embraced by those charged with representing HTA's interests.  But FOMB, due to its conflicts, would have

---

[2] All capitalized terms not defined herein shall have the meanings ascribed to them in the HTA 926 Motion (ECF No. 13708).

HTA forfeit those rights before they are fully adjudicated—even going so far as to carve HTA's claims to the Excise Taxes *out* of a tolling stipulation (the "Proposed HTA Stipulation") that would otherwise *preserve* avoidance actions between HTA and the Commonwealth.[3]   FOMB's unjustified refusal to preserve HTA's avoidance claims to the Excise Taxes, at least until the underlying property issues have been finally determined, leaves Movants with no choice but to invoke Section 926 *now*.   Waiting for the First Circuit to resolve the property questions, or for other determinations of HTA's rights, would risk HTA's claims becoming time-barred, thus imperiling its property, financial health, and ability to function as Commonwealth law intended.

3.      This Court can protect HTA and its creditors where FOMB, AAFAF, and HTA itself have all failed, and it can do so on very narrow grounds without harming any party in interest. Simply by refusing to so-order FOMB's Proposed HTA Stipulation unless it deletes the improper carve-out (as Movants have separately requested, *see* Limited Objection at Ex. A), HTA's avoidance claims to the Excise Taxes could be temporarily preserved pending a final determination of the underlying property issues, and this HTA 926 Motion could then be withdrawn, deferred, or denied without prejudice.   Alternatively, as requested in the HTA 926 Motion, Movants could be *provisionally* appointed as trustees pending a final determination of the property issues, and their Proposed Complaint could be immediately stayed upon its timely filing.   Either way, potentially valuable rights that are critical to HTA's mission would be reprieved, legal and judicial resources would be conserved, and an efficient and orderly resolution of issues predicate to plan confirmation would proceed.   The Government Parties' proposal—that this Court do nothing while FOMB eviscerates a Title III debtor's rights for no good reason, even before ownership of the

---

[3] See *Limited Objection of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation to Urgent Motion for Approval of Tolling Stipulation*, Aug. 4, 2020 (ECF No. 13948) ("Limited Objection") (objecting to the carve-out from the Proposed HTA Stipulation submitted by FOMB for the Court's approval).

Excise Taxes has been fully litigated—is contrary to law, and it jeopardizes HTA's ability to recover its revenues once its ownership has been established.

4.     Although the Court can preserve HTA's rights without reaching the merits at this time, there is already sufficient support for granting the motion.  FOMB's conflict in representing HTA, while also being the architect and sole proponent of a Commonwealth plan that robs HTA of its assets and its ability to function as required by the Enabling Act, has caused FOMB to refuse unreasonably to bring avoidance actions on HTA's behalf to recover the Excise Taxes from the Commonwealth.  FOMB now argues that it cannot be conflicted because PROMESA entrusts it to represent each Title III debtor.  But PROMESA also assumes that assets of one Commonwealth entity will not be taken by another, and it does not allow FOMB to facilitate the opposite by failing to adopt governance measures (*e.g.*, appointing neutral agents) widely used to remedy conflicts of interest. Movants' argument is *not* that FOMB cannot generally represent both HTA and the Commonwealth in the Title III proceeding, but rather that measures must be taken when the FOMB finds itself in a specific irreconcilable conflict, such as determining whether to recover HTA's Excise Taxes.  FOMB's argument that this relief is already barred by laches is not remotely credible.  And there is no question that the Court has authority to grant the relief sought here: contrary to FOMB's argument, Section 926 plainly permits the appointment of a trustee to pursue avoidance actions against *any* transferee, including another governmental entity.

5.     Further, while FOMB seeks to benefit from the First Circuit's decision affirming denial of the ERS bondholders' 926 motion in <u>Andalusian Global Designated Activity Company, et al. v. FOMB</u>, 954 F.3d 1 (1st Cir. 2020) ("<u>Andalusian</u>"), FOMB's attempt to square the facts of <u>Andalusian</u> with this case fall flat.  Critically, the analysis that led the First Circuit to conclude that consideration of the Commonwealth's governmental interests was appropriate in evaluating the ERS bondholders' motion does not apply here, where the actions taken violate Commonwealth

law and PROMESA, and where HTA has been rendered insolvent and incapable of fulfilling its

mission under its own Enabling Act.  FOMB's other efforts to deploy <u>Andalusian</u> to its advantage

rest largely on the mistaken assumption that appointment of a trustee would needlessly duplicate

other litigations involving the HTA bondholders' rights.  That is simply not true here: existing

litigation may not necessarily yield a determination as to HTA's property interests, and given

FOMB's refusal to extend the limitations period for HTA's claims against the Commonwealth for

Excise Taxes, this Motion may be the only means to preserve HTA's avoidance actions.  When

appointing a trustee is correctly understood as a means to preserve and vindicate the rights and

interests of HTA, not its bondholders, <u>Andalusian</u> unmistakably calls for the Court to do so.

6.      Finally, HTA's rights to recover the Excise Taxes from the Commonwealth are not

only colorable, but strong.  The Court's preliminary lift-stay ruling is not preclusive on the issue

of HTA's property interests, and the Excise Tax Statutes giving rise to those property interests are

not "preempted," as FOMB wrongly asserts.  <u>See</u> <u>infra</u> §§ IV.A-B.  PROMESA expressly preempts

the territorial laws that FOMB and the Commonwealth have tried to use to *destroy* HTA's interests

(§ IV.D).  Moreover, the debtors indisputably made avoidable transfers (§ IV.C), and Section 305

supports authorizing HTA to use its powers to avoid those transfers (§ IV.E).  Finally, AAFAF's

efforts to read Section 549 out of the statute fail, because the relevant postpetition transfers were

unauthorized under Title III (§ IV.F).

## <u>ARGUMENT</u>

## I.      <u>This Court Can Preserve HTA's Rights Without Reaching the Merits of the HTA 926 Motion At This Time or Causing Prejudice to Any Party</u>

7.      FOMB and AAFAF repeatedly insist that HTA's alleged lack of a property interest

in the Excise Taxes dooms both the HTA 926 Motion and any avoidance action to recover those

funds.  What they refuse to acknowledge, however, is that no final merits determination has been

made with respect to HTA's property interests, and even the issue of Movants' property interests is still being litigated—including in connection with the HTA Lift-Stay Motion (ECF No. 10102), which is now fully briefed and, if denied by this Court, will be subject to a request for expedited appeal.[4] Further, if it is finally determined that Movants lack property interests in the Excise Taxes (and otherwise are not entitled to lift-stay relief), then the HTA 926 Motion and Proposed Complaint could become the only vehicle for HTA to recover the revenues that have been raided by the Commonwealth—revenues that HTA desperately needs to function and to maintain essential transportation infrastructure as Puerto Rico law requires.  See Mot. ¶¶ 1, 8, 11, 24-26.

8.      Movants merely ask the Court to preserve these avoidance claims for HTA until the underlying property-interest issues have been finally determined.  Otherwise, the effectiveness of any relief granted by this Court or the First Circuit in HTA's favor could be significantly impaired.  Indeed, the only reason Movants bring the HTA 926 Motion now—rather than awaiting the final resolution of the property issues that is already underway—is to comply with the Court's case management order (ECF No. 12186) and avert the risk of HTA's claims becoming time-barred.  As noted above, FOMB' refusal to toll the statute of limitations pending a final determination of HTA's property interests has forced Movants' hand: they must act now or watch helplessly as HTA's conflicted representative willfully allows HTA's rights potentially to lapse.

9.      Fortunately, there are at least two ways that narrow rulings by this Court could maintain the status quo and preserve HTA's avoidance claims pending a final resolution of the underlying property issues—all without even reaching the merits of the HTA 926 Motion or causing prejudice to any party.  *First*, in response to FOMB's Urgent Motion to approve its Proposed HTA Stipulation (ECF No. 13892), and as requested in Movants' Limited Objection to

---

[4] Ownership of the Excise Taxes is also at issue in Adversary Proceedings 20-0005 and 20-0007, the former of which is subject to a pending motion for partial summary judgment.  See Adv. Proc. No. 20-0005-LTS, ECF No. 55.

the same (ECF No. 13948), the Court could condition its approval of that tolling stipulation upon FOMB's agreement to *include* HTA's claims to the Excise Taxes among the other claims that are already being tolled.  See supra ¶ 2.  Indeed, if the HTA claims in Movants' Proposed Complaint were no longer at risk of expiring, then the HTA 926 Motion could be withdrawn, deferred, or denied without prejudice while the underlying property issues that may determine its fate are being litigated elsewhere.  ***Second***, in the alternative, the Court could provisionally appoint Movants as trustees to allow the Proposed Complaint to be timely filed and immediately stayed, pending a final determination of HTA's property interests.  See Mot. ¶ 4.

10.    Either option would temporarily protect vital claims for HTA without harming any other party.  Though FOMB accuses Movants of attempting to gain leverage in Commonwealth plan negotiations by using the HTA 926 Motion to delay and "cloud" the Title III cases, FOMB is dead wrong.  See F.Opp. ¶¶ 49, 66.  An avoidance action would be stayed pending appeal.  It would disrupt nothing.  Any "cloud" that exists here has been caused by FOMB's disregard of Commonwealth law and HTA's property interests, not by efforts to mitigate the damage wrought by FOMB's mismanagement and failed stewardship of these Title III cases.  Moreover, confirmation of a Commonwealth plan is nowhere in sight, and another month will pass before FOMB is required even to submit a status report that may or may not shed light on the timing of an amended disclosure statement.  See ECF No. 13733.  Thus, there is ample time to resolve HTA's interest in the Excise Taxes and, critically, to ensure that HTA's property is not misused.  Only the confirmation of a lawful, successful Commonwealth plan will serve everyone's interests.

II.    **FOMB's Conflict of Interest Supports the Appointment of a Trustee Under Section 926 to Recover the Excise Taxes for HTA and Its Bondholders**

11.    If the Court is nonetheless inclined to reach the merits now, FOMB clearly will try to prevent HTA from pursuing an avoidance action to recover its Excise Taxes unless the Court

grants the HTA 926 Motion and appoints a trustee.  FOMB's arguments for ignoring its blatant
conflict of interest with respect to the Excise Taxes all miss the mark.

**A.    FOMB's Unjustified Refusal to Bring Avoidance Actions on HTA's Behalf
Arises From an Irreconcilable Conflict of Interest**

12.    Movants showed in their opening brief that FOMB's conflict of interest in
representing both HTA and the Commonwealth with respect to the question of interests in and
treatment of the Excise Taxes led to FOMB's unjustified refusal to bring avoidance actions to
recover Excise Taxes that belong to HTA.  This conflict arises because FOMB is the proponent of
a Commonwealth Plan that purports to confiscate the Excise Taxes, and has for years led the effort
to enable the Commonwealth to unlawfully divert HTA's property.  FOMB's actions have driven
HTA—an otherwise fiscally viable instrumentality of the Commonwealth with important
responsibilities for creating and maintaining roadways for the people of Puerto Rico—into
financial ruin.  This conflict calls for the appointment of a trustee to recover the Excise Taxes from
the Commonwealth on HTA's behalf; indeed, recovery of those unlawfully diverted funds is
critical to HTA's survival.  FOMB utterly fails to show that appointment of a trustee is *not* critical.

13.    FOMB first argues that its simultaneous representation of HTA and the
Commonwealth cannot create a conflict because FOMB is "fulfilling its statutory mandate" under
PROMESA.  See F.Opp. ¶¶ 42–43.  FOMB seems to believe that, because PROMESA § 315(b)
established FOMB to represent each Title III debtor and because FOMB is the "sole statutory
representative of a territory and each of its covered territorial instrumentalities," id. ¶ 42 (quoting
In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 432 F. Supp. 3d 25, 29 (D.P.R. 2020), no
conflict could exist.  But PROMESA does not excuse all conflicts, nor has any court so concluded.

14.    PROMESA § 315(b) establishes only that FOMB represents each Title III debtor.
That authority does not license FOMB, contrary to many other provisions in PROMESA, to allow

the Commonwealth to strip another debtor, HTA, of its assets.  Nor does section 315(b) authorize FOMB to allow the Commonwealth to violate its own laws and contravene numerous other provisions of PROMESA, all at the expense of another Title III debtor that FOMB represents. Rather, even though PROMESA contemplates FOMB's having a role as representative of each Title III debtor, specific disputes may nonetheless present conflicts that require FOMB to employ commonsense measures such as independent representation to fairly resolve them.  COFINA was a clear example of this, notwithstanding the insignificant differences FOMB raises in its response.[5] As in a corporate bankruptcy, where debtors routinely appoint independent directors to investigate avoidance actions in the event of a conflict (e.g., between affiliated debtors), a trustee is needed here to independently pursue HTA's avoidance actions.  That is the purpose of Section 926.

15.     FOMB fails to grasp the specific nature of the conflict that requires a trustee in this case.  Movants do not argue that FOMB should not generally represent both HTA and the Commonwealth, as PROMESA provides.  Nor do they suggest that FOMB's joint representation creates an inherent conflict that touches all aspects of the Title III proceedings.  The conflict here is limited and issue-specific: FOMB, despite serving as HTA's representative, has wholly abandoned HTA's rights to the Excise Taxes to advance a plan of adjustment for the Commonwealth.  In doing so, FOMB has actively enabled the Commonwealth to siphon the Excise Taxes from HTA in violation of applicable law, laying waste to HTA's finances and jeopardizing HTA's capacity to serve its statutory function.  This exposes an irreconcilable but particularized

---

[5] FOMB contends that COFINA does not demonstrate the importance of independent representation where a conflict arises because FOMB itself authorized appointment of the agents and "set out the procedures by which the Commonwealth-COFINA Dispute would be adjudicated."  F.Opp. ¶ 70.  But even if both agents reported to FOMB, this argument simply ignores that there are several means for addressing a conflict.  By setting ground rules, appointing agents, and not interfering with the agents' exercise of duties, FOMB demonstrated one means for addressing a conflict.  FOMB's decision to reserve the right to override the agents in resolving the Commonwealth-COFINA dispute in a plan of adjustment was simply a reasonable safeguard in case the agents failed to fulfill their duties.  In any event, FOMB offers no explanation why it could not employ similar procedures to mitigate the conflict here.

conflict of interest, which any responsible steward of HTA would have recognized and addressed. FOMB's refusal to remedy the conflict, as it did in COFINA, supports the appointment of a trustee.

16.     FOMB also incorrectly asserts that Movants rely on FOMB's fiduciary duty to the bondholders as a basis to seek appointment of a trustee.  F.Opp. ¶ 44.  FOMB's suggestion that it owes no fiduciary duty to bondholders is irrelevant here.  FOMB admittedly represents and is the agent of *HTA*, and FOMB has breached its duties to *HTA* by failing to preserve HTA's claims, pursue recovery of the Excise Taxes, or appoint a neutral agent to do so.

17.     FOMB next argues that a conflict of interest alone does not warrant appointment of a trustee.  F.Opp. ¶¶ 45–46.  But FOMB misreads *Collier on Bankruptcy*, asserting that the treatise addresses only circumstances "where a debtor would favor the transfer or not want to antagonize creditors," and that it does not specifically reference a situation "where a creditor alleges the debtor's representative has a conflict by representing another debtor."  F.Opp. ¶ 46.  This argument misses the point.  Though *Collier* does not specifically refer to a "conflict," the displays of favoritism it references undeniably reflect the existence of a conflict that Section 926 is designed to address.  Moreover, FOMB wholly ignores the obvious precedent from derivative standing cases, which hold that a debtor's acts are unjustified when it acts "under the influence of conflicts of interest."  Mot. ¶ 37; In re Gibson Grp., Inc., 66 F.3d 1436, 1441 (6th Cir. 1995).

**B.     FOMB May Not Invoke Laches to Defend and Maintain Its Conflict of Interest**

18.     Incredibly, FOMB invokes laches, an *equitable* doctrine, to defend its own extraordinary breach of its duties to HTA.  F.Opp. ¶¶ 47-49.  Though FOMB argues that the HTA 926 Motion comes too late, FOMB should have appointed a neutral agent to pursue HTA's rights to the Excise Taxes, to ensure that the Commonwealth and its creditors do not essentially abscond with them, leaving HTA insolvent and unable to fulfill its most essential functions.  Now, tainted by its own inequitable conduct, FOMB may not appeal to equity on a directly related issue.  See

In re Mullarkey, 410 B.R. 338 (Bankr. D. Mass. 2009) ("The unclean hands doctrine is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . .").

19.     In any event, FOMB's assertion of laches against Movants is wholly without merit. The "principal application" of laches is in situations where there "was, and remains . . . no fixed time limitation." Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 678 (2014). Thus, laches is generally unavailable when an action is filed *within* the statute of limitations. Id. at 680. Here, FOMB consented to not one but *two* tolling agreements extending the statute of limitations for HTA to bring avoidance actions against the Commonwealth, and the time allowed under the second agreement has not yet expired. Mot. ¶¶ 27-32. Moreover, FOMB did not object to the fixed deadline for Section 926 conflict motions in the Court's *Final Case Management Order for Revenue Bonds* (ECF No. 12186), which Movants undisputedly observed here. Mot. ¶ 33; F.Opp. ¶¶ 20, 22-23. It is absurd for FOMB to suggest that Movants behaved unreasonably by timely filing their motion in compliance with deadlines ordered by this Court and consented to by FOMB. Indeed, a party "cannot claim prejudice . . . stemming from [its] agreement to delay [a] cause of action. That was a conscious choice, made for . . . convenience and with . . . full knowledge of the risks inherent" in agreeing. Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co., No. 01 C 2680, 2004 WL 2452737, at *11 (N.D. Ill. Nov. 1, 2004) (laches did not bar claim where parties mutually agreed to toll the statute of limitations). Whether Movants had "multiple opportunities" to bring the HTA 926 Motion earlier, as FOMB asserts, is irrelevant. F.Opp. ¶ 48.[6]

20.     Equally irrelevant is FOMB's observation that it represented both the

---

[6] In any event, the supposed "opportunities" that FOMB identifies involved situations where bondholders and the Monolines could litigate on behalf of themselves and HTA and attempt to protect their own rights and interests, along with those of HTA, without needing FOMB to act on HTA's behalf. Thus, even if a conflict was present in those circumstances, there was no need for the parties to challenge it.

Commonwealth and HTA "for years" without objection.  F.Opp. ¶ 49.  One vehicle to raise such

an objection is a 926 motion, which, as noted, Movants timely filed under the Court's deadline.

Another vehicle is a conflict motion in connection with a proposed plan of adjustment—which, as

the Court recently recognized, would be more appropriately filed *after* FOMB seeks approval of

an amended disclosure statement.  See ECF No. 13806 at 3 (adjourning conflict motion deadline).

### C.    The Plain Language of Section 926 Encompasses Avoidance Actions Against Government Entities

21.    FOMB seeks to artificially limit the scope of Section 926, arguing that a trustee can

be appointed to pursue avoidance actions only against *non*-governmental parties.   But this

argument ignores basic principles of statutory interpretation, requiring FOMB to bypass the

statutory language and instead cherry-pick from the legislative history of Chapter 9.  According to

FOMB, because a Senate Report illustrated the importance of Section 926 with an example

involving prepetition transfers to non-governmental transferees, the statute should be interpreted

to cover *only* such transfers.  F.Opp. ¶ 57.  But that is not what the statute says: PROMESA and

Section 926 plainly permit avoidance actions by a trustee on behalf of a government debtor against

*any* transferee:  "If the debtor refuses to pursue a cause of action under section 544, 545, 547, 548,

549(a), or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue

such cause of action."  11 U.S.C. § 926(a).  Only Section 926(b), which has no application here,

limits the avoiding powers of the trustee, thus showing that Congress was explicit when it intended

to limit the scope of Section 926.  Neither Section 926 nor the Code provisions it references narrow

the types of actors against whom an avoidance action may be brought.

22.    Indeed, even if the legislative history of Section 926 did not specifically describe a

scenario in which a governmental debtor sought to avoid transfers made to another government

entity, that history would be no reason to impose fabricated limitations on the plain text of Section

926.  A lawmaker's inability to foresee every context in which a law might be applied does not command a limit to its scope.  See Bostock v. Clayton County, 140 S. Ct. 1731, 1749 (2020) ("[T]he fact that [a statute] has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates [the] breadth of a legislative command.") (internal quotation marks omitted); United States v. Rivera, 131 F.3d 222, 227 (1st Cir. 1997) (refusing to impose an artificial limit on statutory language where court found "no unequivocal statement of legislative intent that would permit us to insert a limitation").

23.    Moreover, PROMESA elsewhere corroborates the application of Section 926 to inter-debtor claims, by prohibiting one Title III debtor from diverting the funds of another.  See PROMESA § 201(b)(1)(M) (Fiscal Plan must ensure that assets of a territorial instrumentality are not "transferred to . . . a covered territory or another covered territorial instrumentality of a covered territory" except under limited exceptions); id. § 303(3) (preempting "unlawful executive orders that . . . divert funds from one territorial instrumentality to another or to the territory . . .").  Additionally, inter-debtor claims under Section 926 advance the objectives of Title III.  As this Court has recognized, one purpose of municipal restructuring, including Title III, is the "continued provision of public services."  In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 432 F. Supp. 3d at 30.  Here, an avoidance action by a trustee on HTA's behalf would promote this objective: as a Title III debtor, HTA needs to recover Excise Taxes in order to regain access to capital markets and perform its public services of operating and maintaining the roadways in Puerto Rico.

## III.    Andalusian Does Not Support Denying the HTA 926 Motion

24.    In their opening brief, Movants showed that the First Circuit's reasoning in Andalusian, 954 F.3d 1 (1st Cir. 2020), supports appointment of a trustee here to protect HTA's interests.  None of FOMB's observations about Andalusian undermine that conclusion.

A.     **The HTA 926 Motion Is Not Duplicative and Would Not Result in a Needless Proliferation of Actions**

25.     FOMB relies on <u>Andalusian</u>'s observation that a court may consider the existence of other actions seeking the same ultimate relief in determining whether to appoint a trustee. F.Opp. ¶¶ 51–54.  But here, the HTA 926 Motion is not duplicative of other litigation and is in fact necessary to advance HTA's unique interests.  Unlike the Lift Stay Motion or any potential future litigation over the Movants' proofs of claim, this Motion is not a vehicle for pursuing bondholders' rights.  Movants seek appointment of a trustee to vindicate the rights and interests of HTA, and their motion is predicated on an understanding of Commonwealth law and PROMESA that, if accepted, proves FOMB's refusal to recover HTA's Excise Taxes to be indefensible.  The motion aims to remedy the Commonwealth's diversion of revenues that has devastated HTA's finances and stymied its operations.  The existence or possibility of separate bondholder litigation targeted at this remedy matters only if HTA has no independent reason to pursue such relief.  But of course, HTA has every reason to recover the Excise Taxes independent of its bondholders' interests.

26.     Moreover, the HTA 926 Motion can succeed under circumstances in which the HTA Lift-Stay Motion would not.  For example, on an appeal of the Lift-Stay Motion, the First Circuit may find that HTA *does* have a property interest in the Excise Taxes, but still deny relief based on the purportedly limited scope of the bondholders' liens.  That result, while recognizing HTA's property interest in the revenues, would not be self-effectuating.  The HTA 926 Motion forges a path to recovery for HTA based on HTA's *own* interest in the Excise Taxes, without relying on the bondholders' interests.

27.     FOMB's speculation that Movants might in the future litigate proofs of claim asserting fraudulent conveyance is as irrelevant as it is unavailing.  Like the HTA Lift-Stay Motion, any litigation over the bondholders' proofs of claim would rely on the bondholders' rights, not the

-13-

independent rights of HTA.  And in any event, there is no such litigation pending.  Moreover, the

Proposed Complaint asserts causes of action *other* than fraudulent conveyance that rest on different

legal elements—for example, the Section 549 claims for postpetition transfers require no showing

of fraudulent intent.  See 11 U.S.C. § 549.  It is far more appropriate for the Court to appoint a

trustee to assert avoidance actions to recover property if the First Circuit determines that it belongs

to HTA.  A trustee's avoidance action brought now on behalf of HTA will provide clarity as to the

ownership of the Excise Taxes and help inform the Commonwealth plan of reorganization.

28.     Finally, Movants did not "acknowledge" that filing their Proposed Complaint

would cause a proliferation of actions.  F.Opp. ¶ 64.  On the contrary, Movants have consistently

endeavored to avoid a proliferation of actions by refraining from seeking appointment of a trustee

until it became absolutely necessary.  Mot. ¶¶ 69-70.  FOMB's own refusal to extend the deadline

for this motion and the limitations period for HTA's claims is what has compelled Movants to seek

appointment of a trustee now on HTA's behalf.  See supra ¶¶ 2, 8.

### B.     FOMB Fails to Rebut Movants' Argument That Denying the HTA 926 Motion Would Result in Substantive Consolidation

29.     FOMB casts no doubt on Movants' showing that, by allowing the Commonwealth

to raid HTA's assets, FOMB has effectuated a substantive consolidation of two distinct Title III

debtors in violation of PROMESA § 304(f).  As Movants explained, the Court must evaluate

FOMB's refusal to pursue avoidance actions from HTA's perspective alone and respect HTA's

distinct juridical identity.  Mot. ¶¶ 71–75.  In response, FOMB relies on inappropriate inferences

that it purports to draw from the ordering of sentences in one paragraph of Andalusian.  F.Opp.

¶¶ 67–68.  FOMB seems to believe that the First Circuit's holding that consideration of governance

interests did *not* result in substantive consolidation was purely axiomatic, and that the court's

conclusion did not flow from its analysis of the specific ERS bondholder arguments that

-14-

immediately followed.  FOMB misreads the decision.  The court's ultimate conclusion—that consideration of Commonwealth governance interests did not yield a substantive consolidation—was rooted in the subsequent analysis: specifically, that the ERS Enabling Act established ERS *to further the efficiency of the Commonwealth government's administration*, and thus that Commonwealth governance interests inhered in analysis of ERS's own interests.  This same insight led the court to observe that PROMESA § 304(f) does not "cause us to ignore the clear differences between governmental and commercial bankruptcies." Andalusian, 954 F.3d at 8.  But there is no equivalent language in the HTA Enabling Act.  Where Commonwealth law assigns not only an independent juridical identity to a Title III debtor like HTA, but also an independent purpose—to provide the people of Puerto Rico with roads and means of transportation—those interests cannot be cast aside to pay creditors of another Title III debtor.[7]

### C.   FOMB's Other Extrapolations from Andalusian and the Objectives of PROMESA Are Unpersuasive

30.   As discussed in Movants' opening brief, the express purpose of PROMESA is to "provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." Mot. ¶ 63; PROMESA § 101(a).  FOMB now argues that this language reflects only *FOMB's* purpose, not PROMESA's purpose, because it appears in a section of the statute that outlines FOMB's mandate. F.Opp. ¶ 61.  That is nonsense.  PROMESA uses FOMB to carry out the statute's objectives, and it provides that FOMB should be disbanded once those ends are achieved.  See PROMESA § 209.  PROMESA assigned the objective of achieving fiscal responsibility and access to capital markets to FOMB because the statute seeks to achieve that end. See, e.g., In re the Financial Oversight and Management Board for Puerto Rico, 360 F. Supp. 3d

---

[7] Remarkably, while FOMB views HTA and the Commonwealth as a single entity for purposes of accounting and transfers of HTA's assets, it has repeatedly emphasized the juridical independence of HTA and the Commonwealth for purposes of evaluating the Commonwealth's own obligations—arguing in response to the HTA Lift Stay Motion, for example, that the Commonwealth is not liable for the debts of HTA.  FOMB cannot have it both ways.

65, 69 (D.P.R. 2019) (recognizing "*PROMESA's* goals of achieving fiscal responsibility and access to capital markets") (emphasis added). FOMB's abdication of its responsibility to help HTA regain access to the capital markets clearly demonstrates the need for a trustee. As an independent Title III debtor, HTA's own access to the capital markets depends on the flow of Excise Taxes assigned to it under Commonwealth law.

31.    FOMB also disputes Movants' showing that HTA's avoidance action would impose fiscal discipline on the Commonwealth, arguing that Movants would not be able to direct how the Commonwealth spends its funds. F.Opp. ¶ 62. This ignores the fact that the avoidance action would restrain the Commonwealth's spending by requiring it to return control of the Excise Taxes to HTA. By denying the Commonwealth a surplus of illegally diverted revenues, the avoidance actions would require the Commonwealth to exercise prudent fiscal judgment.

32.    Demonstrating a fundamental misunderstanding of the purpose of appointing a trustee under Section 926—which here is to preserve and vindicate HTA's lawful interests in Excise Taxes—FOMB next speculates that Movants' interests are not aligned with HTA's. F.Opp. ¶ 63. But whatever interests Movants might have as bondholders are irrelevant to the Motion. The only operative question is whether the relief to be sought by the trustee is in HTA's best interests, and whether FOMB has unreasonably refused to pursue that relief. Tellingly, FOMB does not deny that recovery of revenues would aid HTA in regaining solvency and capital markets access.

33.    Finally, FOMB has given the Court no reason to respect the Commonwealth's illegal diversion of HTA's Excise Taxes. F.Opp. ¶ 65. The First Circuit in Andalusian affirmed denial of the 926 motion there because revenues were transferred under the Legislature's "enactment of a Puerto Rico joint resolution and statute," Andalusian, 954 F.3d at 9, whereas FOMB's diversion of HTA's revenues was effectuated under "moratorium laws" and executive orders that have been preempted by PROMESA § 303, as well as *ultra vires* fiscal plans, see Mot.

Document   Page 24 of 43

¶ 68.  FOMB does not even attempt to argue that the transfers were effectuated under valid Commonwealth law, as was the case in <u>Andalusian</u>, and relies entirely on the claim that HTA does not have a property interest in the Excise Taxes.  F.Opp. ¶ 65.  But as demonstrated in Point IV below, HTA does in fact have a strong claim to the Excise Taxes.

## IV.    HTA's Avoidance Claims Are Not Only Colorable, But Strong

### A.    The Preliminary Ruling Is Not Preclusive, And the Debtors Fail to Dispute HTA's Clear Property Interests

34.    FOMB and AAFAF assert that HTA's proposed avoidance actions are not "colorable" (F.Opp. § I, A.Opp. ¶ 4), but their arguments rest on the faulty premise that the Court's preliminary ruling (ECF No. 13541, the "Preliminary Ruling") on limited issues related to the HTA Lift Stay Motion decided HTA's property interests.  Their arguments further assume that the Preliminary Ruling is somehow binding and preclusive with respect to the HTA 926 Motion and the Proposed Complaint.  <u>See, e.g.</u>, F.Opp. ¶¶ 11, 22, 31, 33; A.Opp. ¶ 4.  Those premises are misguided because the scope of the Preliminary Ruling was expressly limited to "whether the *movants* [as opposed to HTA] have standing to sue and security or other property interests in the relevant revenues."  ECF No. 12186, ¶ 1.d (emphasis added).  FOMB suggests that the Court ruled on HTA's property interests because Movants made statements about HTA's property rights in their lift-stay moving papers (see F.Opp. ¶ 33), but Movants' contentions cannot broaden the scope of the Court's narrow ruling, and the language from the Preliminary Ruling that FOMB quotes did not directly address HTA's property interests.  Moreover, even with respect to Movants, the Court expressly recognized that the Preliminary Ruling "does not fully and finally adjudicate the merits of the parties' underlying claims of security or beneficial interests."  EFC No. 13541 at 16.  Accordingly, the Preliminary Ruling does not have preclusive effect.  <u>See Grella v. Salem Five Cent Sav. Bank</u>, 42 F.3d 26, 31-32 (1st Cir. 1994) (holding that lift-stay ruling had no preclusive

effect in a subsequent adversary proceeding because "the hearing on a motion for relief from stay is meant to be a summary proceeding" and does not "involve a full adjudication on the merits of claims, defenses, or counterclaims").

35.     The Debtors, distracted by the Preliminary Ruling, ignore the Motion and Proposed Complaint's arguments establishing that HTA does have property interests in the Pledged Revenues, beginning with the fact that the Excise Tax Statutes expressly require the Secretary of Treasury to hold the Excise Taxes in a "special deposit in the name and for the benefit of [HTA]" (Mot. ¶ 12; Proposed Complaint ¶ 3, 25), thereby establishing a trust, agency, or other fiduciary relationship in favor of HTA.  See Proposed Complaint ¶ 26 ("The Commonwealth's financial statements define 'special deposit fund' as a fund with respect to which the Commonwealth acts in a fiduciary capacity, and the term includes revenue and agency accounts for which the Commonwealth acts in an agent's capacity."); see also, e.g., Restatement (Third) of Trusts § 13 cmt. B, illus. 1 (2003) (where owner of bonds declares that he holds those bonds "for the benefit of B," owner "holds the bonds in trust for B").  Importantly, the Excise Tax Statutes creating this trust/fiduciary relationship remain binding law in the Title III cases, and the Debtors are not at liberty to simply disregard or violate these statutes.[8]

36.     As set forth in the Proposed Complaint, the Commonwealth has always recognized the Excise Taxes as being held in the statutorily-mandated "special deposit" by recording them in HTA-specific sub-accounts of "Fund 278."  See Proposed Complaint ¶¶ 29, 30, 31.  The Commonwealth's accounting practices corroborate what is already clear from the face of the

---

[8] See In re City of Vallejo, 2008 WL 4180008 at *5-9 (Bankr. E.D. Cal. Sept. 5, 2008) (debtor could not use restricted funds), aff'd, 408 B.R. 280, 285 (BAP 9th Cir. 2009); In re City of San Bernardino, 499 B.R. 776, 789 (Bankr. C.D. Cal. 2013) ("City was legally prohibited . . . from using Water Department funds"); In re City of Detroit, Case No. 13-53846, ECF No. 2521 (Jan. 16, 2014 Hearing Tr.) (due to restrictions in Michigan gaming law, casino revenues could not be used); Ky. Emps. Ret. Sys. v. Seven Countries Sers., Inc., 2020 WL 4049752, at *3-5 (6th Cir. July 20, 2020) (statutory obligation to make employer contributions must be complied with even in bankruptcy).

Excise Tax Statutes: the Excise Taxes are the beneficial property of HTA.

37.    FOMB argues that the Excise Taxes are the Commonwealth's property because they "are within the possession and control of the Commonwealth" (see, e.g., F.Opp. ¶¶ 22, 33). But the Commonwealth does not "control" the Excise Taxes in the relevant sense.  Control is an indicium of ownership only to the extent there is some legal basis for that control.  Indeed, "a principal does not have 'dominion and control' over funds unless he or she has 'legal dominion and control,' in other words, the 'right to put those funds to one's own purpose.' The mere power of a principal to direct the allocation of corporate resources does not amount to legal dominion and control."  In re Antex, Inc., 397 B.R. 168, 173 (B.A.P 1st Cir. 2008) (citations omitted); see also In re Anton Noll, Inc., 277 B.R. 875, 881 (B.A.P 1st Cir. 2002) ("dominion and control . . . means legal, not physical dominion and control of the funds") (emphasis in original).  Consistent with these principles, the mere fact that an entity, such as the Commonwealth, manages to divert assets from their legally-prescribed purposes, including because the entity holds such assets in its own bank accounts, does not amount to "control" in the legally relevant sense.  See, e.g., In re Superior Stamp & Coin Co., 223 F.3d 1004, 1009 (9th Cir. 2000).  For the same reasons, even if an entity has "possession" of funds in the colloquial sense of, e.g., holding them in its own bank account, this does not give the entity "control" in any legally relevant sense where, as a legal matter, the entity has no discretion as to how it may use the funds.  See In re Montreal, Me. & Atl. Ry., Ltd., 888 F.3d 1, 9-11 (1st Cir. 2018).  Here, the Commonwealth has no legally meaningful "control" of the Excise Taxes, because the Excise Tax Statutes give the Commonwealth no discretion in its handling of those moneys, and FOMB does not even deny in its Opposition that the various Moratorium Laws, Moratorium Orders, fiscal plans, and budgets (collectively, the "Territorial Laws") pursuant to which the Commonwealth purports to exercise control over the Excise Taxes are nullities for the reasons set forth in the Proposed Complaint.

-19-

38.     FOMB also claims that the Excise Taxes "are not HTA property at all if not transferred to HTA."   F.Opp. ¶ 38.   But that assertion defies the First Circuit's decision in Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 29 (1st Cir. 2007).   There, a Commonwealth statute similar to the Excise Tax Statutes ("Law 253")[9] required the Commonwealth Treasury to collect certain insurance premiums and transfer them to an association of private insurers (the "JUA").   In violation of Law 253, the Commonwealth attempted to retain the premiums it collected and use them for its own purposes, arguing that "Law 253 'does not entitle JUA to ownership of the collected premiums until they are transferred to [JUA] by [the Secretary of Treasury]."   Id. at 29.   The First Circuit rejected the Commonwealth's argument, holding instead that the JUA had a property interest because "Law 253 . . . provides that . . . the Secretary [of Treasury] 'shall transfer' these premiums to the JUA." Id.   In other words, the First Circuit has rejected FOMB's theory that the Commonwealth can deprive an entity of ownership of funds simply by failing to effectuate a statutorily-mandated transfer.   To the extent this Court recognized otherwise in the Preliminary Ruling, Movants respectfully believe the Court should reconsider in the new context of the HTA 926 Motion.

39.     FOMB further asserts that HTA has only a "mere 'expectancy'" of receiving the Excise Taxes, F.Opp. ¶¶ 33, 38, an argument neither addressed nor adopted in the Preliminary Ruling.   FOMB bases this argument on a flawed analogy to Andalusian, 948 F.3d 457 (1st Cir. 2020), which concerned ERS's interest in employer contributions funded through discretionary legislative appropriations from the General Fund.   By contrast, the HTA Excise Tax Statutes make

---

[9] Despite the general similarity between Law 253 and the Excise Tax Statutes, one notable difference is that Law 253 under some circumstances permits insurance premiums to be transferred "to the General Fund" to be used for the Commonwealth's general purposes. See 26 L.P.R.A. § 8055(j). For that reason, the Law 253 insurance premiums more closely resemble a general Commonwealth tax than do the Excise Taxes. See, e.g., San Juan Cellular Tel. Co. v. Pub. Serv. Comm'n of Puerto Rico, 967 F.2d 683, 685 (1st Cir. 1992) ("The classic 'tax' . . . raises money, contributed to a general fund, and spent for the benefit of the entire community . . . .").

-20-

no reference to annual appropriations and specifically prohibit the Excise Taxes from being deposited in the General Fund or included in the General Fund budget.  The statutes also afford the Commonwealth and HTA no discretion with regard to the use of the Excise Taxes, and instead require the Excise Taxes to be used "solely" to pay the HTA Bonds "in the amount that may be necessary."  See 13 L.P.R.A. § 31751(a)(1)(C) (Mot. Decl. Ex. 13).

### B.   The Excise Tax Statutes Are Not Preempted

40.   Resurrecting yet another argument not adopted in the Preliminary Ruling, FOMB erroneously characterizes the Excise Tax Statutes as "appropriations statutes" that are preempted under section 202 of PROMESA.  F.Opp. ¶ 38.  But the Excise Tax Statutes do not "appropriate" funds—they require the Excise Taxes to be covered into a special deposit that, by definition, is "not subject to annual appropriation."  See Proposed Complaint ¶ 26.

41.   In any event, the Excise Tax Statutes are not preempted.  Except where PROMESA expressly preempted the Territorial Laws (see infra § IV.D.), PROMESA preempts only laws that are "inconsistent" with PROMESA.  PROMESA § 4.  Nothing in the Excise Tax Statutes is inconsistent with PROMESA, and numerous provisions of PROMESA expressly preserve HTA's rights to the Excise Taxes.   See, e.g., PROMESA §§ 201(b)(1)(A)(i), (M), (N); 407.[10] Furthermore, it is undisputed that FOMB never properly implemented the Title II fiscal plan and budget process and never made any "certification determination" with respect to any Commonwealth or HTA fiscal plan or budget, meaning that FOMB's purported fiscal plans and

---

[10] FOMB also asserts that "one legislature's allocations cannot bind the next" (F.Opp. ¶ 39), but the Legislature has not repealed the Excise Tax Statutes, and FOMB does not have the power to repeal them. See In re Fin. Oversight & Mgmt. Bd. for P.R., 330 F. Supp. 3d 685, 701 (D.P.R. 2018), aff'd, 945 F.3d 3 (1st Cir. 2019). In any event, this "non-entrenchment" doctrine does not permit governments to evade their debt obligations. See, e.g., U.S. Tr. Co. of N.Y. v. N.J., 431 U.S. 1, 24 n.22 (1977) (collecting cases and stating that "the Court has regularly held that the States are bound by their debt contracts").

budgets, which in any event merely constitute territorial rather than federal legislation,[11] cannot have any preemptive effect.  See Proposed Complaint § III.  In addition, it is axiomatic that a government cannot escape its legal obligations by simply failing to appropriate funds to satisfy the obligation.  See, e.g., Me. Cmty. Health Options v. United States, 140 S. Ct. 1308, 1319 (2020); Ferris v. United States, 27 Ct. Cl. 542, 546 (1892).[12]

### C.    The Debtors Made Avoidable Transfers

42.    FOMB further relies on the Preliminary Ruling to argue that because "HTA has no property interest in [the Excise Taxes], there can be no 'transfers' of HTA property to 'avoid.'" F.Opp. ¶ 31.   But FOMB fails to appreciate the breadth of the Bankruptcy Code's definition of "transfer," a point not addressed in the Preliminary Ruling.  That definition includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with – (i) property; or (ii) an interest in property."  11 U.S.C. § 101(54); see also In re Bajgar, 104 F.3d 495, 498 (1st Cir. 1997) ("[T]he word 'transfer' has always had a most comprehensive meaning under the bankruptcy laws.").  Based on this definition, even if FOMB were correct that HTA's property interests were conditional on the statutorily-mandated transfer of the Excise Taxes to an HTA bank account (which Movants dispute), that HTA "parted with" that conditional "interest in property" would qualify as an avoidable "transfer."

43.    Similarly, the term "transfer" includes all "transactions in which title to property is changed in a way that could affect creditors, although ultimate ownership remains intact as well as transactions in which the debtor terminates or modifies intangible property rights, such as

---

[11] See Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Investment LLC, 140 S. Ct. 1649, 1662 (2020) (holding that FOMB's budgetary and fiscal powers are "quintessentially local," as they "concern[] the finances of the Commonwealth, not of the United States").

[12] FOMB's reliance on Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R., 945 F.3d 3 (1st Cir. 2019) (F.Opp. ¶ 38), is misplaced. That case concerned a conflict between two competing budgetary powers: the Governor's powers under Act 230 to reprogram funds and FOMB's power to develop a General Fund budget. The Excise Taxes are not subject to FOMB's budget powers and are not part of the General Fund.

contract rights or releases of causes of action."  2 Collier on Bankruptcy ¶ 101.54 (16th ed. 2020).

Therefore, even if FOMB were correct (which it is not) that HTA's statutory rights to receive the

Excise Taxes were merely equivalent to contract rights, that HTA "parted with" those contract

rights would constitute an avoidable "transfer."

44.      The term "transfer" also includes "a transfer of possession, custody, or control even

if there is no transfer of title[.]"  S. Rep. No. 95-989, at 27 (1978), reprinted in 1978 U.S.C.C.A.N.

5787, 5813; H.R. Rep. No. 95-595, at 314 (1977); see also In re Butler, 377 B.R. 895, 917-18

(Bankr. D. Utah 2006).  It is undisputed that, at least prior to the enactment of the Territorial Laws,

HTA exercised control over the Excise Taxes (see, e.g., Proposed Complaint ¶ 31), and to the

extent FOMB is correct that the Commonwealth now controls them (which Movants dispute), that

exercise of control by the Commonwealth is an avoidable "transfer."

45.      Furthermore, FOMB does not contest HTA's ownership of the Toll Revenues, but

the Compliance Law purports to authorize the transfer of Toll Revenues from HTA to the

Commonwealth for no consideration.  See, e.g., Mot. ¶ 20; Proposed Complaint ¶¶ 3, 96.  Any

such transfers therefore constitute avoidable transfers, as does the Compliance Law itself.

46.      AAFAF, meanwhile, argues that "[e]ven if HTA had a property interest, the

Commonwealth's retention of Excise Taxes does not constitute a transfer *by HTA*," and that "the

Proposed Complaint is about the Commonwealth's conduct, not HTA's."  A.Opp. ¶ 4 (emphasis

added).  Even accepting AAFAF's argument that HTA took no affirmative actions to divert the

revenues (which Movants do not), merely "*[p]ermitting* a prohibited transfer or concealment to

occur is likewise sufficient" to give rise to an avoidable transfer; "no affirmative act of transfer . . .

is required."  In re Butler, 377 B.R. at 918, n.44 (emphasis in original); see also In re Forman

Enters., Inc., 273 B.R. 408, 416 (Bankr. W.D. Pa. 2002) ("Nowhere is there any indication in the

Bankruptcy Code that action, as opposed to inaction, by a debtor is required for there to be a

transfer.").  Similarly, merely relinquishing control of property constitutes a "transfer."  Peter

Spero, Fraudulent Transfer, Prebankruptcy Planning and Exemptions § 1:20 (2018) ("[O]nce

control is relinquished, the transfer has occurred.").  Here, AAFAF admits that "HTA . . . consents

to the Commonwealth's retention of [the Pledged Revenues]."  A.Opp. ¶ 3.  HTA's inaction or

complicity in relinquishing its rights to the Pledged Revenues give rise to an avoidable "transfer".

See In re Comprehensive Power, Inc., 578 B.R. 14, 34 (Bankr. D. Mass. 2017) (finding fraudulent

transfer where "Debtor was complicit in the transfer of its assets [and] in relinquishing rights.").

See also 11 U.S.C. § 101(54)(D) ("transfer" can be either "voluntary or involuntary").

47.     The Commonwealth's exercise of financial control through its affirmative actions

in diverting HTA revenues can also be imputed to HTA.  Where, as here, another entity (the

Commonwealth) uses its control over a debtor to effectuate a transfer of the debtor's property, the

controlling entity's intent to make the transfer is imputed to the debtor.   See, e.g., In re

Comprehensive Power, Inc., 578 B.R. at 34 (where debtor allowed the transfer to take place, trustee

"alleged sufficient facts to state a plausible claim that [secured creditor's] intent should be imputed

to the Debtor through its 'control'"); see also In re Blast Fitness Grp., LLC, 603 B.R. 219, 240

(Bankr. D. Mass. 2019) ("Courts . . . permit a finding of intent to defraud where a transferee is in

a position of dominance or control over a debtor's disposition of property . . . .").

48.     Furthermore, as set forth in the Proposed Complaint (§ V), the Commonwealth has

apparently purported to use some of HTA's Excise Taxes to pay the Commonwealth's own

expenses or debts.  Use of HTA's assets to pay the Commonwealth's creditors constitutes an

avoidable fraudulent transfer where, as here, HTA received no reasonably equivalent value for

those transfers.  See, e.g., In re C-T of Va., Inc., 124 B.R. 700, 702 (W.D. Va. 1990) ("It is well-

established that a bankruptcy trustee may avoid transfers made by the bankrupt to pay valid debts

of a corporate affiliate."); Rubin v. Mfrs. Hanover Tr. Co., 661 F.2d 979, 991 (2d Cir. 1981) ("[A]

conveyance by a corporation for the benefit of an affiliate (should not) be regarded as given for fair consideration as to the creditors of the conveying corporations."). Neither FOMB nor AAFAF so much as allege that HTA received reasonably equivalent value for these transfers.

49.     In addition, although not yet reflected in the Proposed Complaint, it appears that the Commonwealth (through FOMB) may have re-designated some portion of the Excise Taxes as part of the General Fund in its most recent fiscal year 2021 budget. See Declaration of William J. Natbony, Aug. 7, 2020 ("Reply Decl."), Ex. A at 3. Any such purported re-designation of Excise Taxes as part of the General Fund rather than as a "special deposit in the name and for the benefit of HTA" would constitute an avoidable transfer (and could be added to the Proposed Complaint).

50.     Finally, AAFAF suggests, without support, that HTA's transfer of the Excise Taxes to the Commonwealth is not avoidable because it occurred pursuant to a "clawback" under Article VI, Section 8. A.Opp. ¶ 18. But the Proposed Complaint (¶ 34 n.3) shows that the "clawback" conditions were never satisfied, and AAFAF does nothing to refute this. Moreover, the Commonwealth only invoked Article VI, Section 8 (albeit invalidly) in the 2015 Clawback Order, not the later Moratorium Laws. Indeed, in 2016, the Commonwealth admitted that it was no longer purporting to claw back revenues under Article VI, Section 8, but rather through "other measures," i.e., the Moratorium Laws. See Notice of Automatic Stay ¶¶ 6-8, Assured Guar. Corp. v. García-Padilla, Case No. 16-cv-01037 (D.P.R. Oct. 14, 2016) (ECF No. 59).

### D.     Section 303 Preempts the Territorial Laws

51.     As alleged in the Proposed Complaint, Section 303 of PROMESA preempts all of the Territorial Laws. See Proposed Complaint § VII. AAFAF argues that "Section 303(1) is not preemptive" (see A.Opp. ¶¶ 3, 15), but the Supreme Court held in Puerto Rico v. Franklin Cal. Tax-Free Tr., 136 S.Ct. 1938 (2016) that Section 903(1) of the Bankruptcy Code, on which Section 303(1) was modelled, was an "express pre-emption provision" (id. at 1945) and that "this provision

-25-

pre-empts" the Puerto Rico Corporation Debt Enforcement and Recovery Act (the "Recovery Act"). Id. at 1944. Section 303 expressly preempts the Territorial Laws, just as Section 903 expressly preempted their predecessor, the Recovery Act.

52.    AAFAF is also mistaken when it suggests that "HTA, through AAFAF and the Oversight Board," can "consent" to the Moratorium Laws and bind a Section 926 trustee to that consent. See A.Opp. ¶¶ 3, 15. The whole reason a Section 926 trustee is needed is because AAFAF and FOMB are disloyal representatives of HTA, and once a Section 926 trustee has been appointed, it will be up to that non-conflicted trustee (with the Court's guidance) to determine what avoidance actions to bring, including actions challenging the validity of the Moratorium Laws.

53.    AAFAF is similarly wrong in asserting that "HTA would be the relevant creditor for purposes of section 303," such that HTA's purported "consent" to the Moratorium Laws (through its disloyal representatives, AAFAF and FOMB) would rescue the Moratorium Laws from preemption. See A.Opp. ¶¶ 3, 15. But even if HTA consents to the Moratorium Laws, its creditors do not, which is sufficient for Section 303 to preempt them. See Franklin, 136 S.Ct. at 1943 (holding that Recovery Act was generally preempted where "investment funds" brought suit alleging that the Bankruptcy Code "prohibited Puerto Rico from implementing its own municipal bankruptcy scheme"). Furthermore, HTA is not a mere "creditor" of the Commonwealth; it is the beneficial owner of the Pledged Revenues. See supra § IV.A; see also, e.g., In re Skorich, 482 F.3d 21, 25 (1st Cir. 2007) (equitable interest is not a "claim" and equitable owner is not a "creditor"); Restatement (Third) of Trusts § 5 cmt. k (trust relationship not a debtor/creditor relationship). The Moratorium Orders themselves confirm this by correctly assuming that HTA owns and controls the Pledged Revenues, and merely directing HTA's use of its revenues. See Mot. Decl. Ex. 16 (ECF No. 13711-16); OE-2016-18 (Reply Decl. Ex. B).

54.    AAFAF also argues that the Moratorium Laws and Moratorium Orders "are not

within the scope of section 303(1) because they do not purport to preclude eventual payment to
Movants nor do they purport to reduce any outstanding obligations."   A.Opp. ¶ 3.   But the
legislative history of PROMESA shows that Congress enacted Section 303(1) precisely because
"Puerto Rico's local politicians [had] accelerated the [alleged] crisis on the island through the
passage of harmful legislation, including [the recent debt moratorium]."   H.R. Rep. No. 114-602
at 40 (2016); Proposed Complaint ¶ 123.   Accordingly, while Section 303(1) was generally
modeled on Section 903(1), Section 903 does not contain Section 303(1)'s references to a
"moratorium law," which Congress added specifically to target the First Moratorium Law, the
Moratorium Orders, and any similar laws for preemption.   See Proposed Complaint ¶ 124.

55.     In any event, a "moratorium" is defined as "[a] temporary prohibition of an
activity"[13] or as "[a]n authorized postponement . . . in the deadline for paying a debt or performing
an obligation."   Black's Law Dictionary 1101 (9th ed. 2009) (emphasis added); see Proposed
Complaint ¶¶ 125-26.   There is no requirement for a moratorium law to "purport to preclude
eventual payment" or "purport to reduce any outstanding obligations."   And if a law does do either
of those things, then it is a "composition of indebtedness" and is likewise preempted under 303(1).

56.     AAFAF also asserts that the Moratorium Orders "are . . . not 'unlawful' within the
meaning of section 303(3) because they were issued pursuant to duly enacted Puerto Rico statutes"
(A.Opp. ¶ 14).   However, the Moratorium Laws are not "duly enacted," they are preempted and
void.   And the Proposed Complaint sets forth some of the myriad other ways in which the
Moratorium Orders are also "unlawful."   See Proposed Complaint § VII.B.   AAFAF neither denies
nor refutes any of those allegations and arguments.

---

[13] Oxford Living Dictionary: English, https://en.oxforddictionaries.com/definition/moratorium.

E.      **Section 305 Supports Granting the HTA 926 Motion**

57.     Both FOMB and AAFAF mischaracterize the relief requested in the Proposed
Complaint as potentially interfering with the Commonwealth's political and governmental powers
in contravention of Section 305 (see F.Opp. ¶ 39, A.Opp. ¶¶ 1, 21).  To the contrary, Section 305
supports a grant of the requested relief.

58.     First, "political or governmental powers" encompass only "basic matters of the
organization and operation of government that are incidents of sovereignty" and "do not extend to
financial relations between the state and its municipalities."  In re City of Stockton, 526 B.R. 35,
54 (Bankr. E.D. Cal.), aff'd in part, dismissed in part on other grounds, 542 B.R. 261 (B.A.P. 9th
Cir. 2015).

59.     Second, the Territorial Laws are nullities for the reasons set forth in the Proposed
Complaint.  An act under color of the Territorial Laws would violate the Excise Tax Statutes, and
neither Section 904 nor Section 305 authorizes debtors to violate state or territorial law.  In re
N.Y.C. Off-Track Betting Corp., 434 B.R. 131, 141-44 (Bankr. S.D.N.Y. 2010).

60.     Third, AAFAF concedes that "Section 303's protections are subject . . . to the
limitations in Titles I and II of PROMESA."  A.Opp. ¶ 11.  Section 201(b)(1)(M) of Title II
prohibits the unlawful transfer or use of "assets, funds, or resources of a territorial instrumentality."
That prohibition binds the Commonwealth, as it acknowledged in enacting the Compliance Law.
See Mot. Decl. Ex. 20 (ECF No. 13711-20) § 4.04.  Section 201(b)(1)(M) is also incorporated into
and enforceable under Title III through the cross-references to Title II in Sections 303 and 305.

61.     Fourth, while FOMB and AAFAF object to purported "interference" with the
Commonwealth's powers, they ignore HTA's political and governmental powers.  HTA's powers
include the power to (i) "have complete control and supervision over the character of . . . all of its
expenditures and the manner in which they shall be . . . paid" (9 L.P.R.A. § 2004(f)); (ii) "sue and

-28-

be sued, complain and defend in all courts of justice" (id. § 2004(g)); and (iii) "secure payment of bonds and interest thereon by pledge of, or other lien on, all or any of its . . . revenues or other income" (id. § 2004(l)).  Denial of the HTA 926 Motion would interfere with HTA's ability to exercise these powers by bringing the HTA Avoidance Action.

62.     Finally, to the extent Section 305 would bar any of the relief HTA will request in the HTA Avoidance Action, HTA, through its Section 926 trustees, can "seek traditional stay relief" to pursue the HTA Avoidance Action in a non-Title-III forum where Section 305 does not apply.  Ambac Assurance Corp. v. Commonwealth, 927 F.3d 597, 605 (2019).  Section 305 therefore poses no obstacle to the relief requested in the HTA Avoidance Action.

### F.     The Postpetition Transfers Were Not Authorized, And Section 549 Applies

63.     As set forth in the Motion and Proposed Complaint, the postpetition transfers that HTA would seek to avoid under 11 U.S.C. § 549 are unauthorized under Title III, because, among other reasons, they violated the automatic stay.  See, e.g., Mot. ¶ 23; Proposed Complaint § VIII. AAFAF argues that the automatic stay does not apply because of Sections 303 and 305 (A.Opp. ¶ 21).  Section 305, however, limits only "stay[s], order[s], or decree[s]" entered by the Court—it does not limit the effect of statutes like Section 362.  See PROMESA § 305.  Moreover, the Moratorium Laws and Orders do not "fall within the ambit of Section 303's protections" (A.Opp. ¶ 12); on the contrary, they are expressly preempted by Section 303.  See supra § IV.D.

64.     Furthermore, Section 362 precludes HTA from unilaterally authorizing the transfer of funds to the Commonwealth.  The automatic stay imposed under that section "is not solely for the debtor's protection" and thus cannot be unilaterally waived by the debtor.  Commerzanstalt v. Telewide Sys., Inc., 790 F.2d 206, 207 (2d Cir. 1986); see also In re Delta Invs. & Dev., LLC, 2019 WL 137578, at *13 (Bankr. S.D. Miss. Jan. 8, 2019) (stating that "a debtor may not unilaterally waive the automatic stay" because "[t]he stay protects both debtors and creditors, and

[section 362] grants the bankruptcy court the exclusive authority to grant relief from the stay"); <u>In re Clouse</u>, 446 B.R. 690, 697 (Bankr. E.D. Pa. 2010) ("nothing in Section 362 authorizes a debtor to waive the automatic stay unilaterally . . . the automatic stay is intended, at least in part, to protect creditors . . . , and not merely a debtor."). Because "a debtor may neither unilaterally waive nor limit the scope of the automatic stay . . . relief from the effect of the automatic stay [] must be sought from the bankruptcy court." <u>Id.</u>; <u>see also</u> <u>In re Cabrini Med. Ctr.</u>, 489 B.R. 7, 23 (S.D.N.Y. 2012) ("the debtor may neither unilaterally waive, nor limit, the scope of the automatic stay."); <u>In re Pease</u>, 195 B.R. 431, 433 (Bankr. D. Neb. 1996) (same). HTA never sought any such relief.

65. Finally, the Moratorium Laws and Moratorium Orders that AAFAF asserts to be an "exercise of [the Government's] police powers" (A.Opp. ¶ 12) are preempted and void. <u>See</u> <u>supra</u> § IV.D. They are not an "exercise" of anything. In any event, the Commonwealth's powers are limited to those "specifically granted to it by Congress under its constitution." <u>Franklin Cal. Tax-Free Tr. v. P.R.</u>, 805 F.3d 322, 344-45 (1st Cir. 2015). The Puerto Rico Constitution nowhere authorizes the Commonwealth to repudiate or impair debt contracts.[14] And as the Proposed Complaint alleges, the Moratorium Laws and Moratorium Orders were not enacted "to protect the health, safety, and welfare of the citizens" (A.Opp. ¶ 21), but to hinder, delay, and defraud HTA's creditors. <u>See, e.g.</u>, Proposed Complaint ¶¶ 39-40. As such, the Moratorium Laws and Orders are not a legitimate exercise of any "police power" and are not exempt from the automatic stay.

## **CONCLUSION**

66. For the foregoing reasons and those set forth in Movants' opening brief, the HTA 926 Motion should be granted.

---

[14] Section 18 of Article II, if it grants any powers at all, merely relates to the government's ability to limit certain labor activities. See <u>Aqueduct & Sewer Auth. of P.R. v. Union Empleados A.A.A.</u>, 5 P.R. Offic. Trans. 602 (P.R. 1976).

Dated: August 7, 2020
San Juan, Puerto Rico

CASELLAS ALCOVER & BURGOS P.S.C.     CADWALADER, WICKERSHAM & TAFT LLP

By: _/s/ Heriberto Burgos Pérez_____     By: _/s/ Mark C. Ellenberg_____
    Heriberto Burgos Pérez         Howard R. Hawkins, Jr.*
    USDC-PR 204809         Mark C. Ellenberg*
    Ricardo F. Casellas-Sánchez         William J. Natbony*
    USDC-PR 203114         Ellen M. Halstead*
    Diana Pérez-Seda         Thomas J. Curtin*
    USDC-PR 232014         Casey J. Servais*
    P.O. Box 364924         200 Liberty Street
    San Juan, PR 00936-4924         New York, NY 10281
    Telephone:   (787) 756-1400         Telephone:   (212) 504-6000
    Facsimile:   (787) 756-1401         Facsimile:   (212) 504-6666
    Email:   hburgos@cabprlaw.com         Email:   howard.hawkins@cwt.com
        rcasellas@cabprlaw.com             mark.ellenberg@cwt.com
        dperez@cabprlaw.com             bill.natbony@cwt.com
                     ellen.halstead@cwt.com
*Attorneys for Assured Guaranty Corp.*             thomas.curtin@cwt.com
*and Assured Guaranty Municipal Corp.*             casey.servais@cwt.com

    * Admitted *pro hac vice*

    *Attorneys for Assured Guaranty Corp. and*
    *Assured Guaranty Municipal Corp.*

**ADSUAR MUNIZ GOYCO**
**SEDA & PEREZ-OCHOA PSC**
208 Ponce de León Avenue, Suite 1600
San Juan, PR 00936
Telephone: 787.756.9000
Facsimile: 787.756.9010
Email:  epo@amgprlaw.com
       loliver@amgprlaw.com
       acasellas@amgprlaw.com
       larroyo@amgprlaw.com

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Tel.: (212) 310-8000
Fax: (212) 310-8007
Email: jonathan.polkes@weil.com
       gregory.silbert@weil.com
       robert.berezin@weil.com
       kelly.diblaso@weil.com
       gabriel.morgan@weil.com

By:   */s/ Eric Pérez-Ochoa*
      Eric Pérez-Ochoa
      USDC-PR No. 206314

      */s/ Luis Oliver-Fraticelli*
      Luis Oliver-Fraticelli
      USDC-PR No. 209204

      */s/ Alexandra Casellas-Cabrera*
      Alexandra Casellas-Cabrera
      USDC-PR No. 301010

      */s/ Lourdes Arroyo-Portela*
      Lourdes Arroyo Portela
      USDC-PR No. 226501

*Attorneys for National Public Finance*
*Guarantee Corp.*

By: /s/ *Robert Berezin*
    Jonathan Polkes*
    Gregory Silbert*
    Robert Berezin**
    Kelly Diblasi*
    Gabriel A. Morgan*

* admitted *pro hac vice*
**pro hac vice* application forthcoming

*Attorneys for National Public Finance*
*Guarantee Corp.*

FERRAIUOLI LLC

By:/s/ *Roberto Cámara-Fuertes*
    ROBERTO CÁMARA-FUERTES
    USDC-PR NO. 219,002
    E-mail:    rcamara@ferraiuoli.com


By:/s/ *Sonia Colón*
    SONIA COLÓN
    USDC-PR NO. 213809
    E-mail:    scolon@ferraiuoli.com

    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001

*Counsel for Ambac Assurance Corporation*

MILBANK LLP

By:/s/ *Atara Miller*
    DENNIS F. DUNNE*
    ATARA MILLER*
    GRANT R. MAINLAND*
    JOHN J. HUGHES*
    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:    ddunne@milbank.com
            amiller@milbank.com
            gmainland@milbank.com
            jhughes2@milbank.com

*admitted pro hac vice

*Counsel for Ambac Assurance Corporation*

ARENT FOX LLP


By: /s/ *David L. Dubrow*
    DAVID L. DUBROW*
    MARK A. ANGELOV*
    1301 Avenue of the Americas
    New York, New York 10019
    Tel.:    (212) 484-3900
    Fax:    (212) 484-3990
    Email:    david.dubrow@arentfox.com
            mark.angelov@arentfox.com


By: /s/ *Randall A. Brater*
    RANDALL A. BRATER*
    1717 K Street, NW
    Washington, DC 20006
    Tel.:    (202) 857-6000
    Fax:    (202) 857-6395
    Email:    randall.brater@arentfox.com

*admitted pro hac vice

*Counsel for Ambac Assurance Corporation*

REXACH & PICÓ, CSP

By: /s/ *María E. Picó*
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com

*Attorneys for Financial Guaranty Insurance Company*

BUTLER SNOW LLP

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (pro hac vice)
    5430 LBJ Freeway, Suite 1200,
    Dallas, TX 75240
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com

    Jason W. Callen (pro hac vice)
    150 3rd Avenue, South, Suite 1600
    Nashville, TN 37201
    Telephone: (615) 651-6774
    Facsimile: (615) 651-6701
    E-mail: jason.callen@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Puerto Rico by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

New York, New York
August 7, 2020

By: */s/ Robert Berezin*
Robert Berezin*
* Admitted *pro hac v*ice