# EXHIBIT B

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**LA FORTALEZA**
**SAN JUAN, PUERTO RICO**

**Boletín Administrativo Núm. OE-2016-018**

**ORDEN EJECUTIVA DEL GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, AL AMPARO DE LOS ARTÍCULOS 201 Y 202 DE LA LEY NÚM. 21-2016, CONOCIDA COMO LA "LEY DE MORATORIA DE EMERGENCIA Y REHABILITACIÓN FINANCIERA DE PUERTO RICO", PARA DECLARAR UN PERIODO DE EMERGENCIA PARA LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO (LA "ACT") HASTA EL 30 DE JUNIO DE 2016, SUSPENDER LA OBLIGACIÓN DE LA ACT DE TRANSFERIR O DEPOSITAR EN INSTITUCIONES FINANCIERAS O CUALQUIER OTRA ENTIDAD QUE ACTÚE COMO AGENTE FISCAL LOS INGRESOS DE LOS PEAJES Y CUALQUIER OTRO INGRESO RECIBIDO, Y ORDENAR LA IMPLEMENTACIÓN DE OTRAS MEDIDAS RAZONABLES Y NECESARIAS PARA LA CONTINUACIÓN DE LA PRESTACIÓN DE LOS SERVICIOS ESENCIALES PARA PROTEGER LA SALUD, LA SEGURIDAD Y EL BIENESTAR DE LOS RESIDENTES EN EL ESTADO LIBRE ASOCIADO DE PUERTO RICO.**

**POR CUANTO:** El 6 de abril de 2016, firmé la Ley 21-2016, conocida como la "Ley de Moratoria de Emergencia y Rehabilitación Financiera de Puerto Rico" (la "Ley"). Los términos que comienzan en mayúscula en esta Orden Ejecutiva y que no están definidos aquí tendrán los significados que se le concedieron en la Ley.

**POR CUANTO:** El Artículo 108 de la Ley establece que durante el Periodo Cubierto el Gobernador debe darle prioridad a los servicios esenciales sobre el pago de la deuda no sólo para proveer para la salud, la seguridad y el bienestar de los residentes en el Estado Libre Asociado de Puerto Rico (el "ELA") pero también para evitar una contracción económica adicional y la crisis fiscal y humanitaria que en última instancia materialmente empeoraría el recobro de los acreedores de los bonos de Puerto Rico.

**POR CUANTO:** El 8 de abril de 2016, al amparo de los Artículos 201 y 203 de la Ley, aprobé el Boletín Administrativo Núm. OE-2016-10 (la "OE-2016-10") para declarar un Periodo de Emergencia para el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"), establecer restricciones al retiro de depósitos del BGF e implantar otras medidas razonables y necesarias para permitir al BGF continuar llevando a cabo sus operaciones. El 30 de abril de 2016, al amparo de los Artículos 201 y

202 de la Ley, aprobé el Boletín Administrativo Núm. OE-2016-14 (la "OE-2016-14") para declarar una moratoria en el pago de ciertas obligaciones del BGF e implementar otras medidas razonables y necesarias para continuar la prestación de servicios esenciales para proteger la salud, la seguridad y el bienestar de los residentes en el ELA, entre otras cosas.

**POR CUANTO:** La crisis fiscal del ELA ha afectado sustancialmente varias entidades e instrumentalidades públicas, incluyendo, sin limitarse a la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT").

**POR CUANTO:** Históricamente la ACT ha contado con distintas fuentes de ingresos y liquidez para la prestación de servicios esenciales a los residentes en el ELA, que incluyen el mantenimiento y la operación de las carreteras, puentes y autopistas del ELA. Dichas fuentes de ingresos y liquidez consistían principalmente en: (1) ingresos derivados de los peajes y otros cargos impuestos por la ACT por el uso de sus instalaciones de tránsito (en inglés *traffic facilities*) (los "Ingresos de Peajes" y en inglés *Toll Revenues*); (2) ingresos recibidos del impuesto a la gasolina que se destina a la ACT a tenor con la Ley Núm. 75 de 23 de junio de 1965; (3) ingresos recibidos de ciertos impuestos sobre la gasolina, *gas oil* y *diesel oil* que se destina a la ACT a tenor con la Ley Núm. 223 de 30 de noviembre de 1995; (4) ingresos recibidos de un cargo especial anual sobre la licencia para los vehículos de motor destinado a la ACT a tenor con la Ley Núm. 9 de 12 de agosto de 1982, según enmendada; (5) ingresos recibidos del impuesto al crudo destinado a la ACT a tenor con la Ley Núm. 34 de 16 de julio de 1997 (los ingresos referidos en los incisos anteriores (1) al (5) de este Por Cuanto, en conjunto denominados en adelante, los "Ingresos de las Resoluciones 68/98"); (6) ingresos derivados de impuestos a los cigarrillos, cargos sobre licencias de vehículos de motor y excesos de impuestos al petróleo destinados a la ACT de conformidad con las Leyes Núm. 30 y 31, ambas aprobadas el 25 de junio de 2013 (en conjunto, los "Ingresos de las Leyes 30-31"); (7) liquidez proveniente de un acuerdo con el BGF mediante el cual el BGF concedía préstamos a la ACT; (8) fondos recibidos por la ACT del Gobierno federal por conducto de programas de asistencia federal de carreteras del Título 23 del *United States Code* (los "Ingresos Federales de Carreteras"); y (9) fondos recibidos por la ACT del Gobierno federal por conducto de programas de asistencia

2

federal de tránsito del Título 23 del *United States Code* (los "Fondos Federales de Tránsito"). Como consecuencia de la crisis fiscal del ELA, la disponibilidad de estos ingresos, fondos y fuentes de liquidez ha disminuido significativamente en los pasados seis (6) meses.

**POR CUANTO:** La ACT previamente emitió bonos al amparo de la Resolución de la Autoridad de Carreteras de Puerto Rico Núm. 68-18, aprobada el 13 de junio de 1968 (la cual autoriza y garantiza los *HTA's Highways Revenue Bonds*) y la Resolución de la ACT Núm. 98-06, aprobada el 26 de febrero de 1998 (la cual autoriza y garantiza los *HTA's Transportation Revenue Bonds*) (conjuntamente, las "Resoluciones 68/98"). El 30 de noviembre de 2015, al amparo de la Sección 8 del Artículo VI de la Constitución del ELA, aprobé el Boletín Administrativo Núm. OE-2015-046 (la "OE-2015-046"), mediante el cual, entre otras cosas, se le ordenó al Secretario de Hacienda de Puerto Rico a retener los ingresos asignados a la ACT y redirigirlos para el pago de la deuda pública del ELA y para garantizar los servicios esenciales de los residentes en el ELA (los "Fondos Retenidos de la ACT"). El principal e interés de los bonos emitidos al amparo de las Resoluciones 68/98 están garantizados en parte y son pagaderos en parte de los Fondos Retenidos de la ACT. Los Ingresos de Peajes, los cuales no son fondos retenidos sujetos a la OE-2015-046, también garantizan parte del pago de la deuda emitida al amparo de las Resoluciones 68/98. De conformidad con las Resoluciones 68/98, cualquier exceso relacionado con los Fondos Retenidos de la ACT y los Ingresos de Peajes luego de los depósitos requeridos y el repago del servicio de la deuda debían ser devueltos a la ACT para el pago de sus gastos operacionales. Tras la aprobación de la OE-2015-046, la cual ordena la retención de los Fondos Retenidos de la ACT, la ACT experimentó una disminución significativa en su liquidez, que se exacerbó por el hecho de que la ACT, en cumplimiento con las Resoluciones 68/98, continuó remitiendo la totalidad de los Ingresos de Peajes al fiduciario de los bonos para el servicio de la deuda emitida al amparo de las Resoluciones 68/98.

**POR CUANTO:** La ACT y el BGF son partes de cierto *Loan Agreement*, con fecha del 28 de agosto de 2013, mediante el cual la ACT obtuvo una línea de crédito no rotativa del BGF (el "Préstamo del BGF"). Como condición para el Préstamo del BGF, la ACT y el BGF otorgaron cierto *Assignment and Security Agreement*, pactado el mismo día, mediante el cual la ACT cedió

3

al BGF sus derechos de recibir los Ingresos de las Leyes 30-31 con el fin de garantizar el repago del Préstamo del BGF y otras cantidades debidas al BGF. En un esfuerzo por atender la crisis de liquidez de la ACT y de garantizar la continuidad de la provisión de los servicios esenciales de la ACT para proteger la salud, la seguridad y el bienestar de los residentes en el ELA, el BGF y la ACT entraron en un acuerdo mediante el cual el BGF se comprometió a transferir a la ACT ciertos fondos para cubrir los costos operacionales y gastos de la ACT. El 1 de abril de 2016, el BGF informó a la ACT que no tenía la capacidad financiera de continuar la transferencia de dichos fondos creando un problema de liquidez mayor para la ACT, amenazando la continuidad de la provisión de los servicios esenciales para proteger la salud, la seguridad y el bienestar de los residentes en el ELA y poniendo en riesgo la elegibilidad de la ACT para recibir los Ingresos Federales de Carreteras y los Fondos Federales de Tránsito.

**POR CUANTO:** El 19 de abril de 2016, la ACT enmendó el Contrato de Alianza de las Autopistas PR-22 y PR-5 con Autopistas Metropolitanas de Puerto Rico, LLC (el "Concesionario") para conceder ciertos derechos al Concesionario. A cambio de esos derechos, el Concesionario hizo un pago inicial de $100 millones (el "Pago Inicial") y hará un pago diferido de $15 millones pagadero al momento en que se implementen ciertos carriles bidireccionales o al 30 de junio 2017, lo que ocurra primero. De conformidad con el Artículo 17 de la Ley Núm. 29-2009, según enmendada ("Ley de las APP"), la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (la "AAFAF"), luego de consultarlo con la Oficina de Gerencia y Presupuesto (la "OGP"), sometió ante la consideración del Gobernador una misiva recomendando los usos del Pago Inicial. El BGF también cursó una recomendación sobre los potenciales usos de estos dineros. El 9 de mayo de 2016, luego de evaluar detenidamente las recomendaciones de la OGP, el BGF y la AAFAF, considerando la complicada situación de liquidez que enfrentan el ELA, el BGF y otras entidades gubernamentales, y en virtud de la facultad conferida en los Artículos 9(g)(iv) y 17 de la Ley de las APP, el Gobernador autorizó que los fondos fueran utilizados para el pago de servicios esenciales, según propuesto por la AAFAF y OGP.

4

**POR CUANTO:** Esta situación ha provocado una situación de emergencia pública que amerita la declaración, al amparo del Artículo 201 de la Ley, de un periodo de emergencia para la ACT y suspender ciertas obligaciones de la ACT para garantizar la prestación de servicios esenciales relacionados con la salud, la seguridad y el bienestar de los residentes en el ELA. Esta declaración de emergencia tendrá la breve duración aquí dispuesta y no afectará los derechos de cobro de ningún acreedor de la ACT, pues el fiduciario de los bonos emitidos al amparo de las Resoluciones 68/98 ha recibido y tiene ya depositados por adelantado suficientes fondos para cubrir los pagos vencederos hasta el próximo año.

**POR TANTO:** Yo, ALEJANDRO J. GARCÍA PADILLA, Gobernador del Estado Libre Asociado, en virtud de los poderes inherentes a mi cargo y de la autoridad que me ha sido conferida por la Constitución del Estado Libre Asociado, por la presente dispongo lo siguiente:

**PRIMERO:** Conforme al Artículo 201 de la Ley, por la presente declaro un estado de emergencia para la ACT y el comienzo de un Periodo de Emergencia para la ACT hasta el 30 de junio de 2016, de manera que se proteja la salud, la seguridad y el bienestar de los residentes en el ELA.

**SEGUNDO:** Esta Orden Ejecutiva no declara un Periodo de Emergencia para ninguna Entidad Gubernamental excepto la ACT y no impone una moratoria a ninguna obligación de la ACT. Esta Orden Ejecutiva no autoriza a una Entidad Gubernamental a utilizar fondos que se hayan depositado previo a la fecha de esta Orden Ejecutiva con un fiduciario u otro custodio para el pago de una Obligación Cubierta ni pretende impedir el uso de dichos fondos ya depositados para el pago de dicha Obligación Cubierta.

**TERCERO:** Conforme al Artículo 201 (d) de la Ley, por la presente ordeno la suspensión de toda obligación de la ACT de transferir a, o depositar con, cualquier institución financiera o autoridad que actúe como agente fiscal al amparo de cualquier resolución mediante la cual los bonos en circulación de la ACT hayan sido emitido los Ingresos de Peajes y cualquier otro ingreso asignado o recibido por la ACT. Lo anterior incluye los Ingresos de Peajes correspondientes a bonos emitidos bajo las Resoluciones 68/98, independientemente de cuándo dichos fondos

5

hayan sido recolectados. En adelante se autoriza a la ACT a utilizar los Ingresos de Peajes y cualquier otro ingreso asignado o recibido por la ACT para la continuación de la prestación de servicios esenciales para proteger la salud, la seguridad y el bienestar de los residentes en el ELA. No se afectan por esta Orden Ejecutiva los fondos necesarios para el pago de las obligaciones mencionadas en este párrafo que han sido transferidos o depositados por la ACT a los fiduciarios pertinentes para responder por los pagos vencederos hasta el próximo año.

**CUARTO:** Conforme al Artículo 201 (b) de la Ley, no se tomará acción alguna y no se comenzará o continuará reclamación o procedimiento alguno en alguna corte de cualquier jurisdicción que esté relacionado con o que surja bajo una Obligación Cubierta de la ACT, incluyendo acciones o procedimientos relacionados con las obligaciones mencionadas en el párrafo TERCERO de esta Orden Ejecutiva.

**QUINTO:** Se ordena a la Directora Ejecutiva de la ACT a remitir un informe semanal al Gobernador en el cual se detalle el flujo de efectivo de la entidad.

**SEXTO:** SEPARABILIDAD. Esta Orden Ejecutiva deberá ser interpretada de tal manera que pueda mantener su validez, en la medida que sea posible, conforme a la Constitución del Estado Libre Asociado y la Constitución de los Estados Unidos. Si cualquier cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva fuese declarada inconstitucional por un tribunal con jurisdicción, la orden emitida por dicho tribunal a esos efectos no afectará ni invalidará el resto de esta Orden Ejecutiva. El efecto de dicha orden estará limitado a la cláusula, párrafo, subpárrafo, disposición o parte de esta Orden Ejecutiva declarada inconstitucional y solamente con respecto a la aplicación de la misma a la obligación particular sujeta a dicha controversia.

**SÉPTIMO:** RATIFICACIÓN DE LA OE-2016-10 Y OE-2016-14. Por la presente se ratifica y confirma la OE-2016-10, según enmendada por la OE-2016-14 y la OE-2016-14 en todos sus aspectos, según modificada por esta Orden Ejecutiva, y se dispone que ambas expirarán al final del Periodo Cubierto.

**OCTAVO:** DEROGACIÓN. Se deja sin efecto cualquier otra Orden Ejecutiva que en todo o en parte sea incompatible con esta, hasta donde existiera tal incompatibilidad.

**NOVENO:** VIGENCIA Y PUBLICACIÓN. Esta Orden Ejecutiva entrará en vigor inmediatamente y permanecerá en vigor hasta (i) el 30 de junio de 2016 o (ii) la fecha en la que la misma sea revocada por escrito por el Gobernador, lo que ocurra primero. Se ordena su más amplia publicación y divulgación.

EN TESTIMONIO DE LO CUAL, expido la presente Orden Ejecutiva bajo mi firma y hago estampar en esta el Gran Sello del Estado Libre Asociado de Puerto Rico, en San Juan, Puerto Rico, hoy 17 de mayo de 2016.

ALEJANDRO J. GARCÍA PADILLA
GOBERNADOR

Promulgada de acuerdo a la ley, hoy 17 de mayo de 2016.

VÍCTOR A. SUÁREZ MELÉNDEZ
SECRETARIO DE ESTADO DESIGNADO

7

**COMMONWEALTH OF PUERTO RICO**
**LA FORTALEZA**
**SAN JUAN, PUERTO RICO**

**Administrative Bulletin No. OE-2016-018**

**EXECUTIVE ORDER OF THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, HON. ALEJANDRO J. GARCIA PADILLA, UNDER ARTICLES 201 AND 202 OF LAW 21-2016, KNOWN AS THE "PUERTO RICO EMERGENCY MORATORIUM AND FINANCIAL REHABILITATION ACT," TO DECLARE A STATE OF EMERGENCY FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (THE "HTA") UNTIL JUNE 30, 2016, SUSPENDING THE OBLIGATION OF THE ACT TO TRANSFER OR DEPOSIT IN FINANCIAL INSTITUTIONS OR ANY OTHER ENTITY ACTING AS A FISCAL AGENT ANY REVENUE FROM TOLLS OR ANY OTHER REVENUE RECEIVED, AND AUTHORIZES THE IMPLEMENTATION OF ANY OTHER REASONABLE AND NECESSARY MEASURES FOR THE CONTINUED PROVISION OF ESSENTIAL SERVICES TO PROTECT THE HEALTH, SAFETY, AND WELL-BEING OF THE RESIDENTS OF THE COMMONWEALTH OF PUERTO RICO.**

**WHEREAS:** On April 6, 2016, I signed Law 21-2016, known as the "Puerto Rico Emergency Moratorium and Financial Rehabilitation Act" (the "Law"). The terms that are capitalized in this Executive Order but are not defined herein shall have the meaning assigned to such terms in the Law.

**WHEREAS:** Article 108 of the Law establishes that during the Covered Period the Governor shall prioritize the essential services over the payment of debt not only to provide for the health, security, and well-being of the residents of the Commonwealth of Puerto Rico (the "Commonwealth") but also to avoid further economic contraction and additional fiscal and humanitarian crises which would materially worsen the repayment of Puerto Rico's bondholders.

**WHEREAS:** On April 8, 2016, pursuant to Articles 201 and 203 of the Law, I approved Administrative Bulletin No. OE-2016-10 ( "OE-2016-10") to declare a State of Emergency for the Government Development Bank (the "GDB"), stabilize restrictions on withdrawals from the GDB and implement other reasonable and necessary measures to allow GDB to continue carrying on its business operations. On April 30, 2016, under Article 201 and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

|  |  |
|---|---|
|  | 202 of the Law, I approved Administrative Bulletin No. OE-2016-14 ( "OE-2016-14") to declare a moratorium on the payment of certain obligations of the GDB and to implement other reasonable and necessary measures to continue essential lending services to protect the health, security, and well-being of the residents of the Commonwealth, among other things. |
| **WHEREAS:** | The fiscal crisis of the Commonwealth has substantially affected various public entities and instrumentalities, including, but not limited to the Puerto Rico Highways and Transportation Authority (the "HTA"). |
| **WHEREAS:** | Historically, the HTA has relied on different sources of revenue and liquidity for the provision of essential services to the residents of the Commonwealth, which includes the maintenance and operation of the roads, bridges, and highways of the Commonwealth. The reference revenue and liquidity principally consists of: (1) revenue derived from tolls and other charges imposed by the HTA for the use of its transit facilities (in English *traffic facilities*) (the "Toll Revenues" and in English *Toll Revenues*); (2) revenue received from the gasoline tax earmarked for the HTA under Law Number 75 of June 23, 1965; (3) revenue received from certain gasoline taxes, *gas oil and diesel oil* that is earmarked for the HTA pursuant to Law 223 of November 30, 1995; (4) revenue received from a special annual fee on motor vehicle licenses earmarked for the ACT pursuant to Law 9 of August 12, 1982, as amended; (5) revenue received from taxes imposed on crude oil earmarked for the HTA under Law 34 of July 16, 1997(the revenue referred to in section (1) through (5) under this Clause, collectively referred to as, the "Revenue from Resolutions 68/98"); (6) revenue derived from taxes imposed on cigarettes, fees on vehicle licenses, and surpluses from petroleum taxes earmarked for the HTA pursuant to Laws 30 and 31, both passed on June 25, 2013 (collectively referred to as, the "Revenue from Laws 30-31"); (7) liquidity from an agreement with the GDB according to which the GDB issues loans to the HTA; (8) funds received by the HTA from the federal Government for conducting federal highway assistance programs under Title 23 of the *United States Code* (the "Federal Highway Revenue"); and (9) funds received by the HTA from the federal Government for conducting transit assistance programs |

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

|  |  |
|---|---|
|  | under Title 23 of the *United State Code* (the "Federal Transit Funds"). As a result of the Commonwealth's fiscal crisis, the availability of this revenue, funds and liquidity has significantly diminished in the past six (6) months. |
| **WHEREAS:** | The HTA previously issued bonds under Puerto Rico Highway and Transportation Authority Resolution No. 68-18, passed on June 13, 1968 (which authorizes and guarantees the *HTA's Highways Revenue Bonds*) and Resolution of the HTA Number 98-06, approved February 26, 1998 (which authorizes and guarantees the *HTA's Transportation Revenue Bonds*) (collectively, "Resolutions 68/98"). On November 30, 2015, under Section 8 of Article VI of the Constitution of the Commonwealth, I approved Administrative Bulletin No. OE-2015-046 ( "OE-2015-046"), through which, among other things, the Secretary of the Treasury of Puerto Rico was ordered to retain the revenues assigned to the HTA and reallocate them to the payment of the Commonwealth's public debt and to guaranteeing essential services for the residents of the Commonwealth (the "HTA's Retained Funds.") The principal and interest of the bonds issued under the 68/98 Resolutions are guaranteed in part and are paid in part from the HTA's Retained Funds. The Toll Revenues, which are not retained funds subject to OE-2015-046, also guarantee part of the payment of the debt issued under Resolutions 68/98. In accordance with the 68/98 Resolutions, whatever excess related to the HTA's Retained Funds and the Toll Revenues after the required deposits and the repayment of services of the debt shall be returned to the HTA for the payment of its expenses and operations. After the approval of OE-2015-046, which orders the retention of the HTA's Retained Funds, the HTA experimented with a significant decrease in its liquidity, which was exacerbated by the fact that the HTA, in complying with Resolutions 68/98, continued to remit the entirety of the Toll Revenues to the bond trustee for the servicing of the debt issued under Resolutions 68/98. |
| **WHEREAS:** | The HTA and the GDB are parties to that certain *Loan Agreement*, dated August 28, 2013, through which the HTA obtained a revolving line of credit from the GDB (the "GDB Loan"). As a condition of the GDB Loan, the HTA and the GDB granted certain *Assignment and Security Agreement*, agree the same day, through which the HTA transferred to the GDB its |

3

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

rights to receive the Revenue from Laws 30-31 as a way to guarantee the repayment of the GDB Loan and other amounts owed to the GDB. In its attempts to deal with the liquidity crisis of the HTA and to guarantee the continued provision of the essential services of the HTA to protect the health, security and the wellbeing of the residents of the Commonwealth, the GDB and the HTA entered into an agreement through which the GDB has promised to transfer to the HTA certain funds to cover the operational costs and expenses of the HTA. On April 1, 2016, the GDB informed the HTA that it did not have the financial capacity to continue to transfer said funds, thus creating a major liquidity problem for the HTA, threatening the continued provision of the essential services to protect the health, security and the wellbeing of the residents of the State and placing under risk the HTA's ability to receive the Federal Highway Revenue and the Federal Transit Funds.

**WHEREAS:** On April 19, 2016, the HTA amended its Highway Alliance Contracts PR-22 and PR-5 with Autopistas Metropolitanas de Puerto Rico, LLC (the "Concessionaire") to assign certain rights to the Concessionaire. In exchange for those rights, the Concessionaire made an initial $100 million (the "Initial Payment") and will make a $15 million deferred payment upon the implementation of certain multidirectional lanes or on June 30, 2017, whichever occurs first. In accordance with Article 17 of Law 29-2009, as amended ("APP Law), the Financial Advisory Authority and Tax Agency of Puerto Rico (the "AAFAF"), after consulting with the Office of Management and Budget (the "OGP"), submitted for consideration by the Governor a missive list of recommendations for the use of the Initial Payment. The GDB also made a recommendation regarding the potential uses of these funds. On May 9, 2016, after thoroughly evaluating the recommendations of the OGP, the GDB and the AAFAF, considering the complicated situation regarding liquidity facing the Commonwealth, the GDB and other government entities, by virtue of the power granted under Articles 9(g)(iv) and 17 of the APP Laws, the Governor authorized that the funds be used for the payment of essential services, as proposed by the AAFAF and the OGP.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

| | |
|---|---|
| **WHEREAS:** | This situation has provoked a state of public emergency that warrants the declaration, under Article 201 of the Law, for a state of emergency for the HTA and suspending certain obligations of the HTA to guarantee the benefit of essential services related to the health, safety, and well-being of the residents of the Commonwealth. This state of emergency shall have a brief duration stated herein and shall not affect the collection rights of any creditor of the HTA, as the trustee of the bonds issued under Resolutions 68/98 has received and has at its disposal sufficient funds to pay its debts until next year. |
| **WHEREFORE:** | I, ALEJANDRO J. GARCIA PADILLA, Governor of this Commonwealth, under the powers inherent to my position and the authority vested in me by the Constitution of the Commonwealth, hereby provide for the following: |
| **ONE:** | In accordance with Article 201 of the Law, I hereby declare a state of emergency for the HTA and state an Emergency Period for the HTA until June 30, 2016, so as to protect the health, security, and well-being of the residents of the Commonwealth. |
| **TWO:** | This Executive Order does not declare an Emergency Period for any Government Entity except the HTA and does not impose a moratorium on any obligation of the HTA. This Executive Order does not authorize any Government Entity to utilize funds that have been deposited prior to the date of this Executive Order with a trustee or other custodian for the payment of the Covered Obligation nor does it pretend to prevent the use of said funds already deposited for the payment of said Covered Obligation. |
| **THREE:** | Pursuant to Article 201 (d) of the Law, I hereby order the suspension of all obligations of the HTA to transfer to, or deposit with, any financial institution or authority acting as a fiscal agent under any resolution by way of which any bonds of the HTA in circulation have been issued, the Toll Revenues, and any other revenue assigned or received by the HTA. The foregoing includes Toll Revenues corresponding to the bonds issued under Resolutions 68/98, without regard to when said funds were collected. |

5

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

|              | I hereby authorize the HTA to utilize the Toll Revenues and whatever other revenue assigned or received by the HTA for the continuation of provision of the essential services for the protection of the health, security, and well-being of the residents of the Commonwealth. This Executive Order does not affect the funds necessary for the payment of the stated obligations in this paragraph that have been transferred or deposited by the HTA to the pertinent trustees to account for the outstanding payments until next year. |

**FOUR:** Pursuant to Article 201(b) of the Law, no actions shall be commenced and no claims or proceedings shall be initiated or continued in any court of any jurisdiction that is related to or arises under a Covered Obligation of the HTA, including actions or proceedings related to the obligations stated in the paragraph THREE of this Executive Order.

**FIVE:** The Executive Director of the HTA is ordered to submit a weekly report to the Governor itemizing the cash flow of the entity.

**SIX:** SEVERABILITY. This Executive Order shall be interpreted in such a way so as to maintain its validity, to the extent possible, in accordance with the Constitution of the Commonwealth and the Constitution of the United States. If any clause, paragraph, subparagraph, provision, or part of this Executive Order is declared unconstitutional by any court or jurisdiction, the order issued by said court to that effect shall not affect or invalidate the remainder of this Executive Order. The effect of said order shall be limited to the clause, paragraph, subparagraph, disposition, or part of this Executive Order declared unconstitutional and only with respect to the application of the same to the obligation subject to said dispute.

**SEVEN:** RATIFICATION OF OE-2016-10 AND OE-2016-14. OE-2016-10, as amended by the OE-2016-14 and the OE-2016-14 is hereby ratified and confirmed in all aspects, as modified by this Executive Order, and it is hereby provided that both shall expire at end of the Covered Period.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**EIGHT:** <u>REPEAL</u>. Any other Executive Order that is fully or partially incompatible with this order is hereby repealed to the extent to which such incompatibility exists.

**NINE:** <u>EXPIRATION AND PUBLICATION</u>. This Executive Order shall enter into force immediately and shall remain in force until (i) June 30, 2016 or (ii) the date upon which this order shall be revoked in writing by the Governor, whichever occurs first. It is ordered that this shall be published and disseminated as broadly as possible.

IN WITNESS WHEREOF, I hereby issue this Executive Order under my signature and stamp in this Great Seal of the Commonwealth of Puerto Rico, San Juan, Puerto Rico, today, May 17, 2016.

[affixed seal]

[signature]
ALEJANDRO J. GARCÍA PADILLA
GOVERNOR

Promulgated pursuant to the law, today May 17, 2016.

[signature]
VÍCTOR A. SUÁREZ MELÉNDEZ
DESIGNATED SECRETARY OF STATE

7

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.