# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　　as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY,<br><br>　　　　　　Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3567-LTS<br><br>(Jointly Administered) |

**REPLY TO MONOLINES' LIMITED OBJECTION TO URGENT MOTION FOR ENTRY OF AN ORDER APPROVING THIRD AMENDED STIPULATION BETWEEN THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY REGARDING THE TOLLING OF STATUTE OF LIMITATIONS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA"), each in its capacity as a Title III Debtor,[2] by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth and HTA pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," together with the Oversight Board, the "Moving Parties") as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and the government entity responsible for collaboration, communication, and cooperation with the Oversight Board pursuant to Puerto Rico Act 2-2017, respectfully submit this reply to the *Limited Objection of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation to Urgent Motion for Approval of Tolling Stipulation* [ECF No. 13948] (the "Objection") filed by the monoline insurers (collectively, the "Monolines").

1.  The crux of the Objection is the assertion that "the Proposed HTA Stipulation was drafted to expressly carve out avoidance actions that would vindicate HTA's rights to excise tax and other revenues that were wrongfully transferred to the Commonwealth." Objection ¶ 2. Not so. The Stipulation merely reflects the reality that this Court and the First Circuit have rejected the Monolines' claims time and time again. The Moving Parties are under no obligation to continue

---

[2] Defined terms not otherwise defined herein shall have the same meaning ascribed to them in the *Urgent Motion for Entry of an Order Approving Third Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority Regarding the Tolling of Statute of Limitations* [ECF No. 13892] (the "Urgent Motion") and the stipulation attached as Exhibit A to the Urgent Motion (the "Stipulation").

2

incurring litigation costs so that the Monolines can re-litigate the same failed claims. The Court should overrule the Monolines' Objection for the following reasons.

2. *First*, the Court should reject the Monolines' unsupported assertion that while the Stipulation would allow the Commonwealth "to preserve *all* of its potential avoidance actions against HTA," HTA is "giving up the opportunity to preserve [] [the] most valuable avoidance actions against the Commonwealth." *Id.* ¶ 3 (emphasis in original). The HTA Revenue Causes of Action are far from valuable. They are based on the presumption that HTA owned the excise taxes the Commonwealth had previously conditionally allocated to HTA[3]—a contention this Court has already rejected.[4] *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, --- B.R. ---, 2020 WL 3816135, at *12 (D.P.R. July 2, 2020) (holding that the Monolines did not demonstrate a legal basis for their assertion that certain excise taxes are actually owned by HTA); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 297 F. Supp. 3d 269, 296 (D.P.R. 2018), *aff'd*, 927 F.3d 597 (1st Cir. 2019), *cert. denied sub nom. Ambac Assurance Corp. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 140 S. Ct. 856, 205 L. Ed. 2d 459 (2020) (concluding that one of the Monolines could not plausibly support an inference that HTA, through its resolutions, conferred a full and exclusive ownership interest to HTA's bondholders in certain sinking funds holding excise tax revenues).

---

[3] The Commonwealth's previous allocation of excise taxes to HTA was always subject to the Commonwealth's right to retain the revenues. *See, e.g.*, 13 L.P.R.A. § 31751(a)(1)(C) (making allocation to HTA subject to section 8 of Article VI of the Puerto Rico Constitution).

[4] The Monolines claim such excise taxes, which HTA never owned, were then "wrongfully transferred to the Commonwealth." Objection ¶ 2. This is impossible. Fundamentally, there has never been a transfer of anything by HTA, because the excise taxes at issue were always the Commonwealth's property. *See, e.g.*, *In re Costas*, 555 F.3d 790, 793 (9th Cir. 2009) ("[A]s the definition [under the Bankruptcy Code] makes clear, a 'transfer' cannot occur without 'property' or 'an interest in property.'"); *In re Alicea Casanova*, 595 B.R. 616, 618 (Bankr. D.P.R. 2018) ("[F]or a debtor to transfer property, the debtor must first have an interest in that property."). Similarly, the Commonwealth's use of its own property is not a "transfer" of an interest in HTA's property to anyone. *See, e.g.*, *In re Messia*, 184 B.R. 176, 177 (Bankr. D. Mass. 1995) ("Inherent in the [Bankruptcy Code definitions of 'transfer'] is a requirement that a 'transfer' include the acquisition of an interest by a third party.").

3

There is no need to extend the limitations period so that the Monolines can continue to assert duplicative claims this Court has already rejected.

3. Allowing the statute of limitations to expire would not harm the Monolines in any way for the additional reason that they will continue to assert entitlement to the excise tax revenues as part of the plan confirmation process. As evidenced by the Monolines' recently filed trustee motion,[5] these "new" claims—takings clause claims, contract clause claims, fraudulent transfer claims, and claims of violations of state law—are part and parcel of the Monolines' proofs of claim and the HTA revenue bond adversary proceeding before this Court. *See* Claim No. 122277, Annex, ¶¶ 69(b), (f) (Ambac proof of claim asserting claims against the Commonwealth in connection with the HTA revenue bonds for alleged violations of the U.S. Constitution and Puerto Rico Constitution, fraudulent conveyance, and violations of Puerto Rico law); Claim No. 33081, Annex at 3-4, 10 (similar Assured proof of claim asserting claims against the Commonwealth for alleged violations of the U.S. and Puerto Rico Constitutions and violations of Puerto Rico law); Claim No. 30114, Addendum ¶¶ 14, 20 (similar National proof of claim); Claim No. 101243, Addendum, ¶¶ 52, 81 (asserting similar FGIC claims against Commonwealth); *Fin. Oversight & Mgmt. Bd. for P.R.*, No. 20-00005 (D.P.R.).

4. It is hardly unfair for HTA to decide against extending the limitations period to allow the Monolines to bring yet another round of expensive litigation seeking recycled remedies. *See Andalusian Global Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R.*, 954 F.3d 1, 11 (1st Cir. 2020) (affirming this Court's order denying certain ERS bondholders' motion and stating that "it was not an abuse of discretion for the Title III court to seek to avoid a proliferation of actions seeking essentially the same remedy."). The Oversight Board and AAFAF do not wish

---

[5] [Case No. 17-3283, ECF No. 13708, and Case No. 17-3567, ECF No. 871].

to—and should not have to—continue litigating the same meritless claims. *See In re City of Stockton,* 486 B.R. 194, 198-99 (Bankr. E.D. Cal. 2013) ("[T]he bankruptcy court cannot prevent a chapter 9 debtor from spending its money for any reason . . . unless the municipality consents to such judicial oversight."). In comparison, through the Stipulation, the Commonwealth *did* agree to toll the limitations periods for HTA's Causes of Action that have *not* been subject to the same exhaustive process. Simply put, there is no reason to further delay the Title III Debtors' restructuring efforts and consume this Court's time and limited resources. For this reason alone, the Objection should be denied.

5. *Second*, contrary to the Monolines' assertion that "neither the Commonwealth nor HTA would be prejudiced if . . . [the] carve-outs are removed," both Title III Debtors would, *in fact*, be prejudiced if the Stipulation included the HTA Revenue Causes of Action. *Id.* ¶ 7. The decision not to extend the limitations period with respect to the HTA Revenue Causes of Action falls within the scope of the Title III Debtors' right to use their property as they deem appropriate. *See* 48 U.S.C. § 2163 (recognizing the Bankruptcy Code sections incorporated into PROMESA cannot be invoked to impair governmental powers absent government consent); 48 U.S.C. § 2165 (precluding court interference with a debtor's use of property without Oversight Board consent). HTA is under no obligation to extend any Statutory Deadlines for the benefit of any particular parties or for any claims, let alone meritless claims that have been extensively investigated and litigated. For instance, the Title III Debtors did not choose to extend the Statutory Deadlines set forth in the *Supplemental Stipulation Between the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico Regarding the Tolling of Statute of Limitations and Order* [ECF No. 10293], which have expired. As this Court has recognized, Title III of PROMESA "provides for significant deference to the

5

prerogatives of the governmental debtors and of their statutory representative and makes clear that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d 25, 30 (D.P.R. 2020); *see also In re Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders*, 899 F.3d 13, 21 (1st Cir. 2018) ("[W]e read Section 305 as respectful and protective of the status of the Commonwealth and its instrumentalities as governments."). The Stipulation furthers the prerogatives of the Commonwealth, HTA, and their statutory representatives by preserving the rights to bring certain avoidance claims that have not been broadly investigated or litigated, while excluding the claims that have been the subject of extensive investigation and litigation (and in some instances, as described above, continue to be subject to litigation).

6. *Third*, given that the Monolines have been on notice of the Oversight Board's rejection of their demand to pursue the HTA Revenue Causes of Action since January, the Objection's "lack of notice" argument does not pass muster. On January 15, 2020, the Monolines demanded that HTA pursue avoidance claims against the Commonwealth. *See* ECF No. 13711-1. On January 29, 2020, the Oversight Board, on behalf of HTA, promptly declined to pursue those claims and explained that the alleged avoidance actions lacked merit. *See* ECF No. 13711-2. Nothing precluded the Monolines from moving for appointment as § 926 trustees during the last several months, let alone the last several years. "A party cannot delay the initiation of litigation and then use an 'emergency' created by its own decisions concerning timing to support a motion." *Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Research*, 650 F. Supp. 2d 114, 123 (D. Mass. 2009). In light of the Oversight Board's unequivocal rejection to pursue the HTA Revenue Causes of Action against the Commonwealth, it would be foolish for the Monolines to rely on the Moving Parties to further extend the limitations

period for those claims. Moreover, the Monolines do not object to extending the limitations period for the claims covered by the stipulation for any claimed prejudice due to lack of notice—they affirmatively consented to extending the limitations period for the claims covered by the stipulation. *See* Objection ¶ 2 ("[T]he Monolines do not object to extending the statute of limitations for the avoidance actions that are covered by the Proposed HTA Stipulation"). Rather, the Monolines misuse the 30-day notice provision in a cynical ploy to force the Government Parties to extend the limitations period on HTA Revenue Causes of Action. *See Id.* ¶ 7 ("[T]he Monolines agree to waive the 30-day notice requirement solely to the extent the Proposed HTA Stipulation is entered *without* the improper carve-out of the HTA Revenue Causes of Action."). Because the Monolines do not actually oppose extension of the limitations period for the claims covered by the Stipulation, their feigned notice objection should be overruled.

**WHEREFORE**, for the reasons detailed herein, the Moving Parties respectfully request that the Court overrule the Objection and enter an order approving the Stipulation attached as Exhibit A to the Urgent Motion.

[*Remainder of this page intentionally left blank.*]

Dated: August 7, 2020
      San Juan, Puerto Rico

| | |
|---|---|
| */s/ Martin J. Bienenstock* | */s/ Hermann D. Bauer* |
| Martin J. Bienenstock<br>Brian S. Rosen<br>(Admitted *Pro Hac Vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as Representative for the Debtors* | Hermann D. Bauer<br>USDC No. 215205<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Co-Attorneys for the Financial Oversight and Management Board as Representative for the Debtors* |
| */s/ Peter Friedman* | */s/ Luis C. Marini-Biaggi* |
| John J. Rapisardi<br>Nancy Mitchell<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 326-2000<br>Fax: (212) 326-2061<br><br>-and-<br><br>Peter Friedman<br>(Admitted *Pro Hac Vice*)<br>1625 Eye Street, NW<br>Washington, D.C. 20006<br>Tel: (202) 383-5300<br>Fax: 202) 383-5414<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* | Luis C. Marini-Biaggi<br>USDC No. 222301<br>Carolina Velaz-Rivero<br>USDC No. 300913<br>**MARINI PIETRANTONI MUÑIZ LLC**<br>250 Ponce De León Ave., Suite 900<br>San Juan, Puerto Rico 00917<br>Tel: (787) 705-2171<br>Fax: (787) 936-7494<br><br>*Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |