UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

    Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY,

    Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3567-LTS

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR APPOINTMENT AS
TRUSTEES UNDER 11 U.S.C. § 926 OF AMBAC ASSURANCE CORPORATION, ASSURED
GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL
GUARANTY INSURANCE COMPANY, AND NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION

---

[1]     The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court is the *Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* (Docket Entry No. 871 in Case No. 17-3567 and Docket Entry No. 13708 in Case No. 17-3283,[2] the "Motion"). In the Motion, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (collectively, the "Movants") seek entry of an order appointing Movants as co-trustees under section 926 of the Bankruptcy Code, 11 U.S.C. § 926, to pursue certain avoidance claims on behalf of the Puerto Rico Highways and Transportation Authority ("HTA") against the Commonwealth of Puerto Rico (the "Commonwealth").[3]

The Court has carefully and thoroughly reviewed all of the submissions made in connection with the Motion.[4] The Court has subject matter jurisdiction of this contested matter pursuant to 48 U.S.C. § 2166(a). For the reasons that follow, the Motion is denied.

---

[2] All docket entry references herein are to entries in Case No. 17-3283, unless otherwise specified.

[3] In the Motion, Movants also sought entry of a bridge order preliminarily appointing them as co-trustees for HTA and authorizing Movants to commence an avoidance action on HTA's behalf on or before August 14, 2020, subject to certain conditions. (See Mot. ¶ 4.) The Court scheduled briefing on the bridge order and section 926 components of the Motion separately, and thereafter denied Movants' request for a bridge order. (See Docket Entry No. 13825.) This Memorandum Opinion and Order therefore addresses only the section 926 component of the Motion.

[4] In addition to the Motion, the Court has carefully reviewed the *DRA Parties' Joinder to Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* (Docket Entry No. 13718), the *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion for Appointment as Trustees Under 11 U.S.C. § 926* (Docket Entry No. 13929), *AAFAF's Opposition to Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11*

BACKGROUND

The following facts are undisputed, unless otherwise indicated.

HTA was established as a public corporation by Act No. 74-1965 (the "HTA Enabling Act") to construct highways and other transportation systems in Puerto Rico. (Mot. ¶ 11.) Pursuant to the HTA Enabling Act, HTA has issued bonds (the "HTA Bonds") that Movants maintain are secured by certain pledged revenues, including (i) revenues derived from HTA's toll facilities (the "Toll Revenues"), and (ii) special excise taxes (the "Excise Tax Revenues" and, together with the Toll Revenues, the "Revenues"). (Id.) Movants insure approximately $2.9 billion of HTA Bonds. (Id. ¶ 10.)

On November 30, 2015, the former Governor of Puerto Rico, Alejandro García Padilla, issued Administrative Bulletin No. EO-2015-46, which directed the Secretary of the Treasury of the Commonwealth to retain the Excise Tax Revenues for payment of the Commonwealth's public debt rather than payment of HTA Bond obligations. (Id. ¶ 14.) Governor García Padilla signed into law the Puerto Rico Emergency Moratorium and Rehabilitation Act, Act No. 21-2016 (the "Moratorium Act"), which authorized the Governor to declare a state of emergency for the Commonwealth or any of its instrumentalities, including

---

U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation (Docket Entry No. 13930), the *Reply in Further Support of Motion for Appointment as Trustees Under 11 U.S.C. § 926 of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* (Docket Entry No. 14002), the *DRA Parties' Reply and Reservation of Rights in Support of Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* (Docket Entry No. 14001), and the declarations and exhibits filed in connection with the aforementioned pleadings.

HTA, on April 6, 2016. (Id. ¶ 15.) The Moratorium Act prevented the payment of principal or interest by HTA on HTA Bonds. (Id.) Governor García Padilla thereafter issued a series of Administrative Bulletins (the "Moratorium Orders" and, together with the Moratorium Act, the "Moratorium Laws") that effectively prevented the payment of principal and interest on HTA Bonds. (Id. ¶ 16.)

The Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") was enacted on June 30, 2016, to address the fiscal emergency in Puerto Rico that had been created by a "combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing." 48 U.S.C.A. § 2194(m)(1) (Westlaw through P.L. 116-152).[5] PROMESA provides for the appointment of a single Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") that acts as the sole statutory representative of a territory and each of its covered territorial instrumentalities in their respective Title III debt adjustment cases. See id. §§ 2162, 2175. The Oversight Board commenced a Title III case on behalf of HTA on May 21, 2017, and thereafter certified a number of fiscal plans and budgets that provide for the use of the Toll Revenues to fund HTA's operating expenses and the retention of the Excise Tax Revenues by the Commonwealth for purposes other than payment of obligations on the HTA Bonds. (See Mot. ¶¶ 18-22.)

On January 16, 2020, Movants filed the *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection* (Docket Entry No. 10102, the "HTA

---

[5]   PROMESA is codified at 48 U.S.C. §§ 2101 et seq.

Stay Relief Motion"), asserting generally that the Revenues constitute property of HTA rather than the Commonwealth. The Court held a preliminary hearing on the issues of standing and secured status in connection with the HTA Stay Relief Motion on June 4, 2020. On July 2, 2020, the Court issued its *Opinion and Order in Connection with Preliminary Hearing Regarding Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from Automatic Stay, or, in the Alternative, Adequate Protection (Docket Entry No. 10102)* (Docket Entry No. 13541, the "HTA Preliminary Stay Relief Order"). In the HTA Preliminary Stay Relief Order, the Court explained its conclusion that Movants had failed to establish a colorable claim to ownership of or other property interest in the Revenues other than those held in certain designated funds. In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17 BK 3283-LTS, No. 17 BK 3567-LTS, 2020 WL 3816135, at *11 (D.P.R. July 2, 2020). The Court reasoned that Movants had not demonstrated a colorable legal basis for the assertion that HTA's bondholders have a lien or other property interest in the Revenues before those Revenues are actually received by HTA and deposited in certain funds established pursuant to the relevant bond resolutions. Id. at *13-14. Additionally, the Court held that Movants failed to establish a prima facie case that they have a security interest in the Revenues and that Movants failed to demonstrate that HTA or HTA's bondholders have a colorable claim to ownership of Revenues held by the Commonwealth. Id. at *11, *14.

Movants filed the Motion on July 17, 2020. As Exhibit C to the Motion, Movants filed a *[Proposed] Adversary Complaint* pleading four causes of action. (See Docket Entry No.

13708-1, the "Proposed Avoidance Action."[6]) The four proposed claims for relief (the "Proposed Avoidance Claims") seek avoidance, pursuant to sections 549(a), 554(b), and 548(a)(1)(A)-(B) of the Bankruptcy Code, of what Movants characterize as transfers of Excise Tax Revenues from HTA to the Commonwealth.

DISCUSSION

A. Section 926 Motion

Section 926(a) of the Bankruptcy Code provides that, "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of [the Bankruptcy Code], then on request of a creditor, the court may appoint a trustee to pursue such cause of action." 11 U.S.C.A. § 926(a) (Westlaw through P.L. 116-152). "It is clear from the text of § 926 – 'the court may appoint' – that Congress intended to provide the [] court with substantial discretion" in deciding whether to appoint a trustee pursuant to section 926. Andalusian Global Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 954 F.3d 1, 7 (1st Cir. 2020). A court may appoint a trustee under section 926 in response to a debtor's reluctance to bring avoidance actions, but courts should generally be "very hesitant to appoint a trustee." Andalusian, 954 F.3d at 7 (citing 3 COLLIER ON BANKRUPTCY ¶ 926.02 (Richard Levin & Henry J. Sommer eds., 16th ed. 2020)).

Decisions analyzing the authority of creditors of private entities to initiate adversary proceedings on behalf of a chapter 11 estate identify factors relevant to the evaluation of whether appointment of a section 926 trustee is appropriate. In re Fin. Oversight & Mgmt.

---

[6] The Proposed Avoidance Action is, according to Movants, "in draft form and subject to revision." (Mot. ¶ 8 n.5.) Movants reserve the right to revise the *[Proposed] Adversary Complaint*. (Id.)

Bd. for P.R., 432 F. Supp. 3d 25, 29 (D.P.R. 2020) (citing Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 904 (2d Cir. 1985); In re Sabine Oil & Gas Corp., 547 B.R. 503, 514-15 (Bankr. S.D.N.Y. 2016)), aff'd sub nom., Andalusian Global Designated Activity Co. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 954 F.3d 1 (1st Cir. 2020). To obtain derivative standing to sue on a private debtor's behalf, courts require a movant to establish that: (i) there are colorable claims for relief that on appropriate proof would support a recovery, and (ii) the debtor unjustifiably failed to bring suit. Id. Although these factors are instructive for purposes of the court's analysis, the court may consider the particular circumstances of a case more broadly in determining whether appointment of a trustee under section 926 is appropriate. Indeed, the court has wide-ranging discretion to decide which factors to consider in making that determination. Andalusian, 954 F.3d at 7 ("Nothing in the text of § 926 limits or even discusses the factors a court may take into consideration.").

In the context of these Title III proceedings, it is appropriate for the court to consider "the structure and purpose of PROMESA which, like Chapter 9 of the Bankruptcy Code, affords a degree of protection and respect to the decisions of governmental entities that is not afforded to the decisions of private debtors, who are subject to more extensive court control." In re Fin. Oversight & Mgmt. Bd. for P.R., 432 F. Supp. at 29. Courts should be "loath to appoint a trustee" under section 926 in the context of a municipal bankruptcy case "given that the court's limited powers in a chapter 9 case are best understood as operating within the context of constitutional and federalism concerns." In re New York City Off-Track Betting Corp., No. 09-17121(MG), 2011 WL 309594, at *4 (Bankr. S.D.N.Y. Jan. 25, 2011). Collier on Bankruptcy warns that, in addressing a motion under section 926, courts should not "permit a motion for a

trustee to be used by creditors as a bargaining lever in negotiations over the plan. . . . [T]he process should not be taken out of the debtor's hands by the appointment of a trustee to upset the delicate balance among competing interests that must be preserved for successful plan negotiation, formulation, and solicitation." 6 COLLIER ON BANKRUPTCY ¶ 926.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2020). Caution in this regard is particularly warranted in these cases brought under Title III of PROMESA, which gives the Oversight Board sole authority to propose plans of adjustment. See 48 U.S.C. § 2172(a).

Here, Movants seek appointment as co-trustees in order to pursue certain avoidance claims on behalf of HTA with the purpose of avoiding the alleged transfer of the Excise Tax Revenues to the Commonwealth. The Proposed Avoidance Claims are premised on Movants' assertion, also advanced in their HTA Stay Relief Motion, that the Excise Tax Revenues belong to HTA and the Commonwealth has no enforceable interest in them. In contrast, the Oversight Board has taken the position in the preliminary stay relief motion practice and in opposing the instant section 926 Motion that neither Movants nor HTA has a colorable claim to Excise Tax Revenues that have not been transferred by the Commonwealth to HTA. In seeking appointment as co-trustees under section 926, Movants ask that the Court reject the Oversight Board's position on the respective property rights of HTA and the Commonwealth. The Court was not persuaded to do so in the HTA Preliminary Stay Relief Order, and similarly finds no reason to do so here.

As the Court explained at length in the HTA Preliminary Stay Relief Order, the positions that Movants seek to litigate in the Proposed Avoidance Action are inconsistent with the relevant statutes and documents governing the HTA Bonds. See In re Fin. Oversight & Mgmt. Bd. for P.R., 2020 WL 3816135, at *7-*15. The Court concluded, in relevant part, that

Movants "have not demonstrated a legal basis for their assertion that [the Excise Tax Revenues] are actually owned by HTA." Id. at *12. This conclusion is largely consistent with the Oversight Board's assessment, proffered as justification for its argument that pursuit of the Proposed Avoidance Claims is unwarranted, of the respective ownership interests of HTA and the Commonwealth in the Excise Tax Revenues. The Motion is thus premised on a legal position that the Oversight Board has repeatedly declined to adopt and which the Court, in the HTA Preliminary Stay Relief Order, has found lacking. Movants disagree with this assessment and hope for a different outcome on appeal, but they have failed at this juncture to demonstrate that HTA's alleged property interest in the Excise Tax Revenues is a colorable basis for the Proposed Avoidance Claims.

This Court and the First Circuit have previously recognized that, "unlike the commercial focus of bankruptcy cases of private entities, the 'primary purpose' of governmental insolvency proceedings 'is not future profit, but rather continued provision of public services.'" In re Fin. Oversight & Mgmt. Bd. for P.R., 432 F. Supp. at 30 (citing In re Mount Carbon Metro. Dist., 242 B.R. 18, 34 (Bankr. D. Colo. 1999)); see also Andalusian, 954 F.3d at 7 (recognizing "obvious differences" between governmental bankruptcies and commercial private party bankruptcies). PROMESA designates the Oversight Board as the entity responsible for developing a "holistic approach" to these proceedings that "balance[es] and prioritize[es] the relevant issues and concerns in developing fiscal arrangements and plans of adjustment." In re Fin. Oversight & Mgmt. Bd. for P.R., 432 F. Supp. at 30. PROMESA contemplates substantial deference to the Oversight Board as it formulates its holistic approach. Id. at 31; see also 48 U.S.C. §§ 2128, 2141, 2142, 2172. The Court is not persuaded that the extraordinary relief sought by Movants, which would effectively allow Movants to pursue claims premised on

alleged transfers that the Oversight Board, as the sole representative of HTA, has declined to litigate, is warranted.[7]

Additionally, Movants contend that the Oversight Board's refusal to pursue the Proposed Avoidance Claims is unjustifiable because the Board suffers from an irreconcilable conflict of interest in its representation of both HTA and the Commonwealth. The Court rejects this argument because, as explained above, the Oversight Board's analysis is consistent with the statutes and resolutions governing the respective debtors' rights in the Revenues, and because, as explained by this Court and the First Circuit in evaluating a section 926 motion brought by bondholders of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, the Oversight Board's representation of multiple debtors does not create an automatic, irreconcilable conflict. See Andalusian, 954 F.3d at 8 n.6; In re Fin. Oversight & Mgmt. Bd. for P.R., 432 F. Supp. at 29-30. PROMESA borrows many provisions from Chapter 9 of the Bankruptcy Code, which was "drafted to assure that application of the federal bankruptcy power would not infringe upon the sovereignty, powers and rights of the states, including, presumably, states alleged to have a conflict of interest." In re Fin. Oversight & Mgmt. Bd. for P.R., 432 F. Supp. at 30 (citing In re Richmond Unified Sch. Dist., 133 B.R. 221, 226 (Bankr. N.D. Cal. 1991)). The Oversight Board, as the sole representative of both HTA and the Commonwealth, is entitled to deference as it makes important decisions on behalf of those debtors. The Court is not persuaded that the Oversight Board unjustifiably refused to bring Movants' Proposed Avoidance Claims, and therefore declines to use its discretion to appoint a

---

[7] Given the Court's conclusion that Movants have not made a colorable claim that the Excise Tax Revenues are HTA's property, Movants' other arguments for appointment as co-trustees that are premised on the same legal theory, including arguments regarding the validity of the Moratorium Laws, HTA fiscal plans, and HTA budgets, and the applicability of the automatic stay, are unpersuasive.

creditor or any other trustee to displace the authority granted to the Oversight Board with respect to each debtor under PROMESA.

Under the circumstances of this case, appointment of co-trustees pursuant to section 926 is not warranted. The Oversight Board is statutorily vested with responsibility to represent all of the Title III debtors, has sole responsibility for proposing plans of adjustment, and has determined that the initiation of the Proposed Avoidance Action is unwarranted because its legal analysis has led it to determine that the Revenues are assets of the Commonwealth rather than assets of HTA. Movants' arguments regarding HTA's standalone perspective are misplaced, as HTA is one of several related debtors whose affairs and economic futures are committed to the holistic management of the Oversight Board. The Oversight Board has the responsibility for ensuring provision for public services, such as transportation, that are in the interest of the economic future of the Commonwealth, its residents, and its instrumentalities. Furthermore, Movants' arguments concerning the alleged rights of HTA and its bondholders are already the subject of litigation in these cases. The HTA Stay Relief Motion remains pending, related summary judgment practice in Adversary Proceeding No. 20-00005 is under way, and Movants' proofs of claim have not yet been resolved. As the First Circuit held in Andalusian, "it [is] not an abuse of discretion for the Title III court to seek to avoid a proliferation of actions seeking essentially the same remedy. Each such proceeding potentially drains assets which could be put to other uses." 954 F.3d at 11.

Movants also argue that denial of the Motion would effectuate a substantive consolidation in contravention of section 304(f) of PROMESA. (See Mot. ¶ 62 ("[T]he assets of one Debtor (HTA) are simply being taken to pay the creditors of a different affiliated Debtor (the Commonwealth). That is substantive consolidation, and PROMESA prohibits it.").) Section

304(f), titled "[j]oint filing of petitions and plans permitted," provides that the "Oversight Board, on behalf of debtors under [Title III of PROMESA], may file petitions or submit or modify plans of adjustment jointly if the debtors are affiliates; provided, however, that nothing in [Title III] shall be construed as authorizing substantive consolidation of the cases of affiliated debtors." 48 U.S.C.A. § 2164(f) (Westlaw through P.L. 116-152). Insofar as Movants have failed to demonstrate that HTA owns the assets whose "transfer" Movants seek to avoid, the Oversight Board's determination not to pursue the Proposed Avoidance Action does not portend substantive consolidation, nor has the Board attempted to "merge[] the assets and liabilities of the debtor entities into a unitary debtor estate." (Mot. ¶ 71 n.19 (citing <u>Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)</u>, 954 F.2d 1, 11-12 (1st Cir. 1992)).) The Court need not address Movants' substantive consolidation argument in further detail.

Movants' argument that, if a court were to uphold Movants' view of HTA's rights in Revenues that are in the hands of the Commonwealth, the Proposed Avoidance Claims could result in the recovery of assets for HTA does not provide an appropriate basis, in this Court's view of the record evidence, for the Court to exercise its discretion to appoint a trustee pursuant to section 926 of the Bankruptcy Code. The Motion is therefore denied.

B. <u>Tolling Stipulation Between the Commonwealth and HTA</u>

In a related contested matter, the Oversight Board, on behalf of the Commonwealth and HTA, seeks approval of the *Third Amended Stipulation Between the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority Regarding the Tolling of Statute of Limitations and Consent Order* (Docket Entry No. 13892 at 9, the "Proposed Stipulation"). The commencement of HTA's Title III case on May 21, 2017, triggered statutory deadlines relevant to certain potential causes of action between HTA and the

Commonwealth, including Movants' Proposed Avoidance Claims.[8] The Proposed Stipulation would further extend the statutory deadlines with respect to certain potential causes of action between HTA and the Commonwealth, but would not, however, extend the statutory deadlines applicable to Movants' Proposed Avoidance Claims. (See Proposed Stip. ¶¶ 2-3 ("this Stipulation shall not apply to any Causes of Action asserted by any party . . . [that] arise out of the same facts, transactions, or occurrences as asserted in the [Proposed Avoidance Action] attached as Exhibit C to the monoline insurers' section 926 motion to appoint them as trustees").)

Movants do not object to extending the statute of limitations for the avoidance actions covered by the Proposed Stipulation, but do object to the fact that the Proposed Stipulation "was drafted to expressly carve out avoidance actions that would vindicate HTA's rights to [the Excise Tax Revenues] and other revenues that were wrongfully transferred to the Commonwealth." (*Limited Objection of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation to Urgent Motion for Approval of Tolling Stipulation (ECF No. 13892)*, Docket Entry No. 13948, ¶ 2.) Movants also note that the tolling stipulation that is currently in force provides that the Commonwealth and HTA have the right to extend the statutory tolling period "upon thirty (30) days' prior written notice and service of such

---

[8] Specifically, the Bankruptcy Code provides that actions or proceedings brought under section 549 must be filed "two years after the date of the transfer sought to be avoided," 11 U.S.C.A. § 549(d) (Westlaw through P.L. 116-152). Actions or proceedings brought under sections 544 or 548 of the Bankruptcy Code must be filed within two years of the commencement a Title III case. Id. §§ 546(a), 301(b). Thus, HTA's claims under sections 544 or 548 of the Bankruptcy Code were set to expire no later than May 21, 2019. However, the Court has previously approved two tolling stipulations between the Commonwealth and HTA which provide for the extension of the statutory deadlines for avoidance actions through August 14, 2020. (See Docket Entry No. 6531 (extending statutory deadlines for 270 days, or through February 15, 2020); Docket Entry No. 9722 (extending statutory deadlines for an additional 181 days, or through August 14, 2020).)

notice upon" relevant parties, including Movants (id. ¶ 7), arguing that the Proposed Stipulation should be rejected because it was not noticed in a timely fashion.

The Court overrules Movants' objections to the Proposed Stipulation. Movants' principal objection (i.e., that the Proposed Stipulation carves out the Proposed Avoidance Claims that Movants wish to pursue) is predicated on the same substantive legal theory that the Oversight Board has repeatedly declined to pursue and that the Court has found lacking. Movants' conviction that the law favors their interests does not persuade the Court to compel the Oversight Board, as representative of both the Commonwealth and HTA, to toll the limitations period on the Proposed Avoidance Claims in order to obtain approval of extensions of the limitations period for other potential claims. Furthermore, the Court is not persuaded that approval of the Proposed Stipulation despite the Oversight Board's non-compliance with the relevant notice provision will result in any prejudice to Movants. The clear purpose of the 30-day notice provision is to provide notice to parties *opposing* an extension of the relevant statutory periods rather than, as here, parties *supporting* the proposed extension. (See Docket Entry No. 9722, ¶ 2 (providing that the Commonwealth and HTA shall have the right to extend the tolling period "upon thirty (30) days' prior written notice and service of such notice" upon the relevant parties).) In any event, Movants had ample opportunity to file an objection to the Proposed Stipulation, which the Court has thoroughly considered. Movants have not been prejudiced as a result of the shortened notice period, and the Court will not reject the Oversight Board's decision to toll certain statutory deadlines simply because the Board has declined to toll the statute of limitations for avoidance claims that it reasonably considers to be meritless.

The Court will enter a separate order approving the Proposed Stipulation and overruling Movants' objection.

CONCLUSION

For the foregoing reasons, the Motion is denied. This Memorandum Opinion and Order resolves Docket Entry No. 871 in Case No. 17-3567 and Docket Entry No. 13708 in Case No. 17-3283.

SO ORDERED.

Dated: August 11, 2020

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge