**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>**AS REPRESENTATIVE OF**<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>**Debtor**[1] | PROMESA<br><br>Title III<br><br>Case No. 17BK3283 (LTS) |

**REPLY TO THE COMMONWEALTH OF PUERTO RICO'S OBJECTION TO
MED CENTRO, INC.'S MOTION FOR RELIEF FROM
THE AUTOMATIC STAY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Preliminary Statement | 2 |
| II. | Historical Background | 3 |
| III. | Discussion | 6 |
| IV. | Conclusion | 10 |

# TABLE OF AUTHORITIES

## Cases

*Municipality of San Juan v. Puerto Rico*
   919 F.3d 565 (1st Cir. 2019)..................................................................4, 5, 6, 7

*In re Gull Air, Inc.*
   890 F.2d 1255, 1262 (1st Cir. 1989)....................................................................8

*In re Unanue-Casal*
   159 B.R. 90, (D.P.R. 1993)..............................................................................8, 9

*Peerless Ins. Co. v. Rivera*
   208 B.R. 313, (D.R.I. 1997)................................................................................8

*In re Sonnax Indus.*
   907 F.2d 1280 (2nd Cir. 1990)........................................................................8, 9

*In re Fin, Oversight and Mgmt. Bd. for P.R.*
   Case No. 17-03283 (LTS) (D.P.R. July 7, 2017)................................................8

*In re N.Y. Med. Group, P.C.*
   265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001.........................................................8

## Statutes

11 U.S.C. § 362 (a)...................................................................................................2, 8

11 U.S.C. § 362 (a) (1)...........................................................................................2, 6, 7

42 U.S.C. § 1396a (bb) (1-5)..........................................................................................2

Medicare Act..............................................................................................................6, 8

42 U.S.C. §2161(a).........................................................................................................7

Collier on Bankruptcy §362.03 (16th Ed. 2018)............................................................7

3 Collier on Bankruptcy § 362.03 (c) (16th Ed.)...........................................................8

Bankruptcy Code Section 362 (d)..................................................................................8

48 U.S.C. § 216..................................................................................................................8

11 U.S.C. § 362 (d) (1).......................................................................................................8

PROMESA.............................................................................................................4, 6, 7, 8

42 U.S.C. § 1396 (bb)......................................................................................................10

COMES NOW, Med Centro, Inc. ("Med Centro"), through the undersigned attorneys and respectfully replies to the Commonwealth of Puerto Rico's (the "Commonwealth") objection to Med Centro's motion for relief from the automatic stay provisions of 11 U.S.C. § 362 (a), (the "Motion") as follows:

## I. Preliminary Statement

1. On July 21, 2020, Med Centro (formerly Consejo de la Salud de la Comunidad de la Playa de Ponce, Inc.) filed the Motion for an order granting Med Centro relief from the automatic stay of 11 U.S.C. § 362 (a) (1) in order to proceed with Case No. 06-cv-1260 (GAG), before the United States District Court for the District of Puerto Rico (the "District Court") and seek (1) the enforcement of its Settlement Agreement with the Commonwealth; (2) compliance by the Commonwealth with the Wraparound Payments provided for by the Medicaid Act at 42 U.S.C. § 1396a (bb) (1-5), from the first quarter 2018 onwards; and (3) for the District Court to extend its enforcement jurisdiction of the Settlement Agreement beyond October 7, 2020 [**ECF No. 13748**].

2. On August 4, 2020, the Commonwealth filed its objection to the Motion (the "Objection") [**ECF No. 13952**], averring that the Motion should be denied because (1) Med Centro's request for modification of the stay to pursue the rebasing of the Wraparound Payments through litigation in Case No. 06-cv-1260 (GAG) is unnecessary due to the availability of an administrative process pursuant to the *Puerto Rico Department of Health's Reimbursement Manual for Federally Qualified Health Centers* (the "PPS Manual"); Med Centro's request to enforce payment of reconciled quarterly Wraparound Payments should be denied because Med Centro "*has failed to comply with the meet and confer process detailed in the thirteen* Amended Case Management Procedures [ECF No. 1312-1]" by raising such allegation for the first time in the Motion, adding

2

that nonetheless the Settlement Agreement provides for intervention by the District Court and the Special Master if the parties are unable to consensually resolve their dispute.

3. As to Med Centro's third request, the Commonwealth at paragraph 11 of the Objection consents to the modification of the automatic stay for Med Centro to request the District Court to extend its enforcement jurisdiction over the Settlement Agreement beyond October 7, 2020, while contradictorily indicating at footnote 1 that it "does not consent to the extension of the term of the District Court's enforcement jurisdiction over the Settlement Agreement", "reserving all rights, arguments, and objections with respect to Movant's request for an extension of the term of the District Court's enforcement jurisdiction over the Settlement Agreement; and provided further, that the automatic stay shall remain in effect in all other respects, including, without limitation, with respect to the issue of the Commonwealth's compliance with the Prepetition Settlement".

## II. Historical Background

4. Before bringing to the attention of the Court as to why we are before the Court today, Med Centro would like to address the unwarranted limitations that the Commonwealth seeks to impose on the Settlement Agreement, bearing in mind that it was entered into on October 7, 2011 and therefore instead of its labelling by the Commonwealth as a "Prepetition Settlement Agreement" it is a Post-petition Settlement Agreement with post-petition effects. This is accepted by the Commonwealth at paragraph 3 of the Objection, when referring to its purpose to dispose of "all claims that have been raised or could have been raised by Movant regarding the prospective calculation of wraparound payments and any amounts owed by the Commonwealth after reaching an agreement, which was approved by the Court" [**ECF No. 987, 989**]. (Underlined for Emphasis)

5. On May 1, 2019, Med Centro was forced to file a motion for contempt in Case No. 06-cv-1260 (GAG), [**ECF No. 1413**] in light of the Commonwealth's failure to pay Med Centro the

3

Wraparound Payment due for the first quarter 2019 in the amount of $1,659,548.00 (the "Motion for Contempt").

6. The Commonwealth replied to the Motion for Contempt with a document titled "Notice of Automatic Stay and of Procedures for Filing Motions For Relief From the Automatic Stay In The Commonwealth of Puerto Rico's Title III Case", attaching thereto the Title III Court's Eighth Amended Case Management Procedures, claiming that the automatic stay of Section 362(a)(1) of the Bankruptcy Code applied to the Motion For Contempt [**ECF No. 1414**].

7. The Commonwealth submitted that the opinion and order (the "Opinion") of the United States Court of Appeals for the First Circuit (the "Court of Appeals") in *Municipality of San Juan v. Puerto Rico,* 919 F.3d 565 (1st Cir. 2019) ("*Migrant*"), mandated the stay of proceedings in Case No. 06-cv-1260 (GAG) under PROMESA.

8. On May 2, 2019, the District Court directed the Commonwealth to show cause as why the Motion for Contempt should not be granted, and the District Court ordering any other remedy, such as a garnishment, specifically stating:

> If relying on PROMESA, Defendant must explain why up to present it has continued to make wrapround payments under the settlement agreement up to recently, even almost two years after PROMESA was enacted, and now it has taken a different posture, more so when the health and well-being of plaintiff's patient is at stake. Likewise, defendant has paid other 330 centers. [**ECF No. 1415**]

9. In response to the order of May 2, 2019, the Commonwealth filed a *Motion In Compliance With Court Order* re-arguing the applicability of the automatic stay to the pending proceedings in Case No. 06-cv-1260 (GAG) [**ECF No. 1417**].

10. Med Centro sustained that the automatic stay did not apply since the Wraparound Payment due thereto was related to services rendered to Medicaid patients during the first quarter 2019, just

4

as the requested rebasing sought here corresponded to quarters becoming due well after the filing by the Commonwealth of its Title III petition, and that *Migrant* was inapplicable.

11. The Commonwealth vehemently insisted in the applicability of the automatic stay [**ECF No. 1424**], the District Court directing oral argument by Med Centro and the Commonwealth of their respective positions [**ECF No. 1426**], at which time it suggested for the parties to dispose of the controversy extra-judicially (transcript at pages 21-26 at [**ECF No. 1433**]).

12. In order to avoid further delays and out of abundance of caution, Med Centro decided to enter into settlement negotiations with the Commonwealth and abide by the Lift of Stay Protocol resulting in the *Stipulation Modifying the Automatic Stay Between the Commonwealth of Puerto Rico and Consejo De Salud De Comunidad De Playa De Ponce, Inc.* (now Med Centro) (the "Stipulation"), on June 30, 2019, and approved by the Court [**ECF No. 8499-1**].

13. Under the Stipulation, it was agreed that the automatic stay be modified solely to allow the Commonwealth to continue to make the prospective quarterly Wraparound Payments sought by Med Centro, as provided by the Settlement Agreement, in the same manner they had been made up the fourth quarter of 2018, beginning with the quarterly payment for the first quarter 2019, which was exactly what Med Centro was seeking in Case No. 06-cv-1260 (GAG) at that time.

14. The Stipulation also provides that further requests to modify the automatic stay were to be made in accordance to the Lift of Stay Protocol.

15. For the same reasons as to the entering into the Stipulation, that is to avoid prolonged litigation in Case No. 06-cv-1260 (GAG) and out of abundance of caution as to 11 U.S.C. § 362 (a), Med Centro opted to follow the Lift of Stay Protocol object of the Motion and request relief from the automatic stay to pursue post-petition rebasing of its Wraparound Payments from the first quarter 2018 onwards. This is the reason why we are here today.

5

16. Med Centro's federal right to do so under the Medicare Act can't be trumped by any local legislation and less so by the PPS Manual, which is not even a regulation approved under the laws of Puerto Rico.

17. Embedded in the Motion, as to the rebasing, are the requests for the enforcement of the Judgment approving the Settlement Agreement and the extension of the jurisdiction of the District Court, all of which are logical ingredients thereof.

### III. Discussion

18. The inapplicability of *Migrant* to the facts before the Court and the reasons for following the Lift of Stay Protocol to expedite what Med Centro is entitled to pursue under the Medicare Act and out of abundance of caution, as indicated are evident.

19. *Migrant* makes clear that the question presented for resolution there was "whether the automatic stay applies to certain proceedings to determine the amount of federal court ordered payments" (referred to as Prospective Wraparound Payments) "that the Commonwealth owes the FQHCs per a 2010 injunction" (**entered prior to PROMESA's enactment**). Here there is nothing to determine that may have an effect on any Pre-PROMESA matter and definitely nothing that may fall within the scope of Section 362(a)(1), since as the result of the Settlement Agreement, Med Centro's Prospective Wraparound Payments, are not impeded from been rebased, since Med Centro is not requesting a pre-PROMESA determination thereof which could impact the automatic stay, but that it be paid what is due thereto post PROMESA, not within the scope of Section 362(a)(1).

20. A reading of Section 362(a)(1) underscores Med Centro's position. Section 362(a)(1) in its plain language states:

6

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. §362(a)(1) incorporated in 42 U.S.C. §2161(a)

21. Med Centro's request for rebasing of its Wraparound Payments is not "the commencement or continuation .... of a judicial proceeding" against the Commonwealth that was or could have commenced before PROMESA's Title III proceedings, or to recover a claim against the Commonwealth that arose before the Title III filing.

22. As held in *Migrant* 919 F. 3d at 576 "as soon as a bankruptcy petition is filed, pending litigation against the debtor is stayed automatically", citing 3 Collier on Bankruptcy §362.03 (16th Ed. 2018).

23. The Commonwealth can't assert as it did in *Migrant* that Med Centro's request encompasses a pre-petition claim .... subject to the automatic stay. It simply is not.

24. Med Centro recognizes that the stay provisions of Section 362 (a)(1) are drafted to encompasses all types of legal proceedings against the Commonwealth that were or could have been commenced before the commencement of the Commonwealth's Title III petition filed by the Oversight Board on its behalf. But its broadness notwithstanding the automatic stay is not applicable to the matter at bench.

7

25. The Commonwealth loses sight of the fact that the post-petition Wraparound Payments and their rebasing arise from the Commonwealth's ongoing post Title III obligations under the Medicare Act.

26. As stated in 3 Collier on Bankruptcy § 362.03 (c) (16th Ed.) "[a]ction on claims that arise after the commencement of the case (as here) are not stayed[2]. Such stay would discourage others from dealing with the Trustee or debtor in possession".

27. Assuming *in arguendo* the applicability of the automatic stay to the Motion, Bankruptcy Code Section 362 (d), incorporated into PROMESA by 48 U.S.C. § 216, provides that at the request of a party in interest and after notice and a hearing, a court shall grant relief from the stay imposed under Section 362 (a) "for cause" 11 U.S.C. § 362 (d) (1). "Cause is not defined in the Bankruptcy Code. See *In re Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993), aff'd 23 F. 3d. 395 (1st Cir. 1994). However, "cause is said to exist when the harm that would result from a continuation of the stay would overweigh any harm that might be suffered by the debtor or the debtor's estate if the stay is lifted". *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997)

28. As recognized by this Court, the factors used in the District of Puerto Rico to determine whether cause exists for lifting the stay are those enumerated *in In re Sonnax Indus.*, 907 F.2d 1280 (2nd Cir. 1990). See Memorandum Order at 2, In re Fin, Oversight and Mgmt. Bd. for P.R.; Case No. 17-03283 (LTS) (D.P.R. July 7, 2017) (Docket No. 600); see also *Unanue-Casal*, 159 B.R. at 95-96 analyzing the *curtus* factors, which were adopted in *Sonnax*. "Not all of the (*Sonnax*) factors are relevant in every case and the court need no assign equal weight to each factor. *In re N.Y. Med. Group, P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (citations omitted). "Generally

---

[2] *In re Gull Air, Inc.*, 890 F.2d 1255, 1262 (1st Cir. 1989) cited as footnote 22)

8

courts have relied on only a few factors… to determine that sufficient cause existes to lift the stay". *Unanue-Casal*, 159 B.R. at 96

29. As discussed in the Motion, the relevant *Sonnax* factors are present here to warrant lifting the stay as requested therein.

30. We submit that the exhaustion of administrative proceedings are not relevant to the matter at hand. That is so because the Settlement Agreement provides for the resolution of all controversies between Med Centro and the Commonwealth and the District Court still has enforcement supervision over the Settlement Agreement. Thus, it is the Settlement Agreement, not the PPS Manual that is dispositive of the matter.

31. Pursuant to section II(C)(2) of the Settlement Agreement the Commonwealth has an obligation to reconcile the *preliminary* Wraparound Payment with actual data and then make a final reconciled payment. It states that the Commonwealth "will calculate the Wraparound Payment for that quarter … based" on actual data. *See* 06-cv-1260, **ECF No. 987-2**, p. 10. Under subsection 3 the Commonwealth is then obligated to "notify Consejo de Salud of the amount of the Wraparound payment."

32. Section II(D) of the Settlement Agreement puts the matter to rest when it explicitly states that as long as the District Court retains enforcement jurisdiction all disputes will be resolved according to the appeals process included in the Settlement Agreement. Section II(D) delineates the appeals process culminating in the review of any decision by the Special master appointed by the District Court and, ultimately, the District Court. *See* 06-cv-1260, **ECF No. 987-2**, p. 11-12.

33. The Commonwealth has failed to reconcile all *preliminary* payments since 2018, in direct violation of the Settlement Agreement. The Commonwealth's argument that Med Centro must

9

exhaust administrative proceedings outlined in the PPS Manual is just one more instance of the Commonwealth's continued violation of its federally imposed Wrapround Payment obligations.

## IV. Conclusion

34. Finally, in arguing that Med Centro's request to enforce payment of reconciled quarterly Wraparound Payments should be denied due to Med Centro's failure to comply with the meet and confer process detailed in the Thirteenth Amended Case Management Procedure [**ECF No. 13512-1**] by raising such allegation for the first time in the Motion, the Commonwealth seeks to place form over substance since in the Lift of Stay Notice of April 15, 2020, the Commonwealth was advised of "Med Centro's intent to seek relief from the Automatic Stay for the purpose of prosecuting in Case No. 06-cv-01260 (GAG) a request for the recalculation of the PPS per visit rate, utilizing the applicable adjustable PPS per visit rate from 2009 forward (now from 2018 forward) pursuant to 42 U.S.C. § 1396 (bb) (3) and CMS' 2001 guidance, including the corresponding wraparound payments"..., to be part of the intended stipulation with the Commonwealth to obtain the modification of the stay.

35. The facts before the consideration of the Court, as emphasized by the Settlement Agreement and the applicable principles of law cited above warrant the entry of an order granting Med Centro leave to proceed with Case No. 06-cv-1260 and request (1) the enforcement of the Settlement Agreement; (2) compliance with the Wraparound Payments provisions included in the Medicaid statute at 42 U.S.C. §1396a (bb)(3), from the first quarter 2018 onwards; and (3) for the District Court to extend its enforcement jurisdiction of the Settlement Agreement beyond October 7, 2020.

Respectfully Submitted.

10

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing and to all CM/ECF participants.

San Juan, Puerto Rico, this 11th day of August 2020.

*s/*CHARLES A. CUPRILL-HERNANDEZ
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel: 787-977-0515
Fax: 787-977-0518
E-mail: ccuprill@cuprill.com

*s/Ignacio Fernández de Lahongrais*
Ignacio Fernández de Lahongrais
USDC - PR 211603
Capital Center Sur, Suite 202
Avenida Arterial Hostos #239
San Juan, Puerto Rico 00918-1475
Tel. 787-923-5789
ignacio@bufetefernandezalcaraz.com

11