# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA")<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

**COBRA ACQUISITIONS LLC'S OBJECTION TO PREPA'S
MOTION FOR ENTRY OF AN ORDER ALLOWING ADMINISTRATIVE
EXPENSE CLAIM FOR COMPENSATION FOR FRONT-END TRANSITION
SERVICES UNDER PUERTO RICO TRANSMISSION AND DISTRIBUTION SYSTEM
<u>OPERATION AND MAINTENANCE AGREEMENT WITH LUMA ENERGY</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Cobra Acquisitions LLC ("Cobra"), by and through its counsel, respectfully submits this objection ("Objection") regarding *PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* [Case No. 17-BK-3283-LTS, ECF No. 13583] (the "Motion").[1] In support of this Objection, Cobra respectfully states as follows:

**OBJECTION**

1. The Motion continues PREPA's apparent policy of treating similarly situated creditors unequally. As a condition to LUMA Energy even agreeing to begin the Front-End Transition Services, LUMA Energy insisted that PREPA file the Motion and secure an allowed administrative expense claim in favor of LUMA Energy for the anticipated—but as of now largely unperformed—services. Mot. ¶ 36. If this relief is granted, it would entitle LUMA Energy to an essentially pre-approved, allowed administrative expense claim for "any accrued and unpaid Front-End Transition Obligations," which LUMA Energy estimates will be approximately $136,351,930. *See Id.*, Ex. A (Proposed Order) ¶ 2; *see also* Mot. ¶¶ 5, 13. This allowed administrative expense claim provides LUMA Energy with significant and, in comparison to other similarly situated creditors, unfair protection in this Title III case. Accordingly, Cobra files this Objection as the equities demand that Cobra be treated similarly and be permitted to proceed with demonstrating that its services, like LUMA Energy's, are "actual [and] necessary costs and expenses of preserving" PREPA under section 503(b) of the Bankruptcy Code.[2]

---

[1] Capitalized terms used herein but not defined have the same meaning as in the Motion.

[2] The sections of the Bankruptcy Code cited in this Objection are made applicable to this Title III case by section 301(a) of PROMESA, 48 U.S.C. § 2161(a).

2. Indeed, LUMA Energy's favored treatment contrasts starkly with the treatment afforded to Cobra by PREPA. As all parties are aware, Cobra overcame extremely demanding conditions and successfully *performed* its contracted for services, which restored Puerto Rico's electrical grid and enabled PREPA to operate during its Title III case.[3] Yet Cobra remains uncompensated for approximately $216 million (plus accruing interest, which, as of June 30, 2020, amounted to $57.7 million) in respect of this work. Cobra's contracts, like the T&D Contract, were approved by PREPA after multiple levels of review and at the advice of counsel. But, unlike the T&D Contract or the Front-End Transition Services, Cobra's contracts and performance have been the subject of an intensive, after-the-fact assessment, including an ongoing and *third* analysis by FEMA.[4] Nonetheless, each of FEMA and the RAND Corporation has already affirmed the reasonableness of Cobra's costs and services.[5] Indeed, the RAND Corporation's 77-page report contains extensive findings on the valuable, emergency work performed by Cobra:

- "Cobra was uniquely positioned for rapid response to the crisis, deploying heavy equipment to seaports to barge transports on the day after contract signature (10/20/17). Transmission work on the island began on 10/31/17, two weeks after Cobra was awarded the contract. Furthermore, a fully equipped crew of 463 lineman and 200 support staff arrived on the island within 3 weeks of contract signing (11/13/17). This fully equipped crew was composed of quantities of

---

[3] *See, e.g.*, "PREPA chief: Maria-type strike could lead to blackout of no more than 3 months," Caribbean Business (June 3, 2020) (PREPA Executive Director José Ortiz stating that the "transmission system that crosses the island's mountainous region [that was repaired by Cobra] has been reinforced with towers that can withstand winds reaching 170 miles per hour" and which carries power from the south to the more populous northern regions), *available at* https://caribbeanbusiness.com/prepa-chief-maria-type-strike-could-lead-to-blackout-of-no-more-than-3-months/.

[4] As the Court is aware, the target date for the release of the latest report was May 29, 2020. Cobra understands that FEMA now estimates that it will not complete the analysis of Cobra's contract costs for reasonableness until the end of August 2020 and that FEMA "estimates resolution and closure of the recommendation will not occur until May 2021." *See* FEMA's Public Assistance Grant to PREPA and PREPA's Contracts with Whitefish and Cobra Did Not Fully Comply with Federal Law and Program Guidelines (OIG-20-57) (July 27, 2020), *available at* https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-57-Jul20.pdf.

[5] FEMA had requested that the Homeland Security Operational and Analysis Center, which is operated by the RAND Corporation on behalf of the federal government, "independently review the Cobra contract rates." *See* FEMA's Eligibility Determination of Puerto Rico Electric Power Authority's Contract with Cobra Acquisitions LLC (OIG-19-52), App'x A at 2, *available at* https://www.oig.dhs.gov/sites/default/files/assets/2019-07/OIG-19-52-Jul19.pdf. It took Cobra over a year of requests under the Freedom of Information Act to obtain a copy of the RAND Corporation's report (dated as of March 28, 2019).

2

- linemen and security which greatly exceeded the levels proposed in the MSA. This timely delivery of quantities of work and support labor, in excess of the levels initially proposed quickly (three weeks after the MSA was signed), clearly reflects responsiveness to requirements for both immediate availability and contract flexibility."

- "We conclude that Cobra's blended rates fall within representative ranges for high voltage emergency repair work. This conclusion is delivered from analytical investigation which combined knowledge of work conditions, assumptions into wage burdens, evaluation of the equipment quantities and workforce structures, different assumptions about fuel costs, and inclusion of the best benchmark data and current adjustment factors available at this time."

*See* Mammoth Energy Services, Inc. (Form 8-K) (June 9, 2020), Ex. 99.1 at 22, 48.

3. Despite this indisputably beneficial work, Cobra's unpaid invoices remain stuck in endless rounds of second-guessing, delays and "strained" contractual arguments by PREPA. *See Memorandum Order Denying Cobra Acquisition LLC's Urgent Motion to Modify the Stay Order and Allow the Undisputed Tax Claims* [Case No. 17-BK-4780, ECF No. 2004] ("Although PREPA's contractual arguments may well be strained, PREPA is entitled to make them[.]"). Indeed, almost immediately after Cobra completed its services to PREPA, PREPA began stonewalling Cobra and refusing payment. At first, Cobra sought to resolve PREPA's disputes informally, submitting to PREPA reams of information that went far beyond what the parties' contracts required to substantiate its claims. When those attempts failed, Cobra sought this Court's intervention by seeking an allowed administrative expense claim in respect of the unpaid amounts. That motion remains stayed at PREPA's request.

4. Against this backdrop, it hardly is a surprise that LUMA Energy required its services be granted administrative expense priority in this Title III case as a condition to its work. The disparate treatment between Cobra and LUMA Energy speaks for itself. While PREPA is "entitled" to make its case, *id.* at 10, at every turn PREPA has refused to do so. Time and again, PREPA has hid behind speculative theories of how it may avoid liability or thrown up procedural

3

roadblocks to prevent adjudication of the straightforward question of whether Cobra's services are allowable as administrative expense claims. As a result of these tactics, Cobra has and continues to carry an inequitable burden far in excess of the burden shouldered by LUMA Energy.

5. While certainly unjust, PREPA's lack of serious engagement remains equally mystifying. On the one hand, PREPA appears to have no hesitation arguing that the largely prospective Front-End Transition Services—which appear mostly to entail sundry preparatory tasks—"*will* materially benefit PREPA and its customers" and, thus, should be granted administrative expense priority *now*. Mot. ¶ 40 (emphasis added). On the other hand, PREPA insists on speculating and questioning to the minutest detail whether the *already* performed and undoubtedly beneficial services provided by Cobra are entitled to the same status. PREPA's actions not only substantially prejudice Cobra, but PREPA's other stakeholders, who ultimately may bear the costs, given that Cobra's unpaid claims continue to accrue substantial amounts of interest that will be payable if Cobra prevails and which amounts may affect the outcome of this restructuring. In a similar vein, Cobra's and PREPA's interests presumably are aligned in resolving any issues between PREPA and FEMA, as funding from FEMA may mitigate the costs borne by PREPA.[6] But, once again, PREPA has made clear it would rather delay any substantive proceedings on whether Cobra's services were "actual [and] necessary" costs, even if a resolution ultimately may inure to PREPA and its stakeholders' benefit through the savings on interest expense, the receipt of additional FEMA funding that could cover its costs and the increased certainty for all parties.[7]

---

[6] PREPA's issues with FEMA appear to go beyond Cobra. For example, the Motion emphasizes that LUMA Energy will assist "PREPA with applications for FEMA Funding." Mot. ¶¶ 6, 33.

[7] In this respect, it is notable that the recent resignation of PREPA's executive director, José Ortiz, apparently was in response to concerns over PREPA management and work performance. *See, e.g.*, José Alvarado Vega, "Ortiz hands in resignation as Prepa head amid controversy over power outages, contracts," Caribbean Business (Aug. 3, 2020), *available at* https://caribbeanbusiness.com/puerto-rico-electric-power-authority-chief-resigns-amid-congressional-investigation/.

4

6. For these reasons, Cobra objects to the Motion. If granted, the relief requested will entitle LUMA Energy to an allowed administrative expense claim (based largely on future performance of indeterminate benefits to PREPA) while Cobra remains uncompensated for its expenses in rebuilding the very transmission and distribution system that LUMA Energy will soon operate and maintain. As the case law PREPA itself cites make clear, the law should not tolerate such "bait and switch" tactics. *See In re Craig Cty. Hosp. Auth.*, 572 B.R. 340, 351 (Bankr. N.D. Okla. 2017). Accordingly, Cobra respectfully requests that the Court condition approval of the allowed administrative expense claim in favor of LUMA Energy on Cobra being permitted to proceed now to a showing that its services to PREPA were "actual [and] necessary" under section 503(b) of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 105 ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 242 (4th Cir. 2005) (affirming that "bankruptcy courts have wide latitude in deciding whether to order payments prior to [the effective date of a plan]"); *accord In re Rare Coin Galleries of Am., Inc.*, 72 B.R. 415, 417 (D. Mass. 1987). PREPA's arguments as to the effects of the anticipated future (and now third) report by FEMA or the outcome of the criminal proceeding would be fully preserved. In the interim, however, this relief would permit Cobra to resolve the arguments regarding whether the services provided by Cobra qualify for administrative expense status—like those to be provided by LUMA Energy—and otherwise progress this long-running dispute toward resolution. Basic fairness requires nothing less.

5

**WHEREFORE**, for all the above reasons, Cobra respectfully requests that this Court (i) deny the Motion unless Cobra is permitted to proceed with showing that the services it provided to PREPA are entitled to administrative expense priority under section 503(b) of the Bankruptcy Code in this Title III case and (ii) grant Cobra such other relief that the Court deems just, proper and equitable.

Dated: August 12, 2020

/s/ *Alana Vizcarrondo-Santana*
Rafael Escalera Rodríguez (No. 122609)
Sylvia M. Arizmendi (No. 210714)
Alana Vizcarrondo-Santana (No. 301614)
REICHARD & ESCALERA, LLC
255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888
Email: escalera@reichardescalera.com
 arizmendis@reichardescalera.com
 vizcarrondo@reichardescalera.com
 pabong@reichardescalera.com

Ira S. Dizengoff (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
Philip C. Dublin (*pro hac vice*)
Steven M. Baldini (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Tel: (212) 872-1000
Fax: (214) 872-1002
Email: idizengoff@akingump.com
 aqureshi@akingump.com
 pdublin@akingump.com
 sbaldini@akingump.com

--and--

Thomas P. McLish (*pro hac vice*)
Scott M. Heimberg (*pro hac vice*)
Allison Thornton (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: tmclish@akingump.com
 sheimberg@akingump.com
 athornton@akingump.com

*Attorneys for Cobra Acquisitions LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 12, 2020, I filed the instant motion through the Court's CM/ECF system, which will send notification of such filing to all CM/ECF participants, in compliance with the case management order in the case.

/s/Alana M. Vizcarrondo-Santana