UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
-------------------------------------------------------------- x
                                                               :
In re                                                          :
                                                               :
                                                               :   PROMESA
THE FINANCIAL OVERSIGHT AND                                    :
MANAGEMENT BOARD FOR PUERTO RICO,                              :   Title III
                                                               :
      as representative of                                     :
                                                               :   Case No. 17-BK-3283-LTS
                                                               :
THE COMMONWEALTH OF PUERTO RICO, et                            :
al.                                                            :   Court Filing Relates Only to PREPA
                                                               :
                                                               :
      Debtor.                                                  :
                                                               :
-------------------------------------------------------------- x
                                                               :
In re                                                          :
                                                               :
                                                               :
THE FINANCIAL OVERSIGHT AND                                    :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                              :   Title III
                                                               :
      as representative of                                     :
                                                               :
                                                               :   Case No. 17-04780-LTS
PUERTO RICO ELECTRIC POWER                                     :
AUTHORITY (PREPA),*                                            :   (Jointly Administered)
                                                               :
                                                               :
      Debtor.                                                  :
                                                               :
-------------------------------------------------------------- x
```

**OBJECTION OF THE FUEL LINE LENDERS TO
LUMA ENERGY ADMINISTRATIVE EXPENSE MOTION**

---

\* The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

The Fuel Line Lenders[1] respectfully object to *Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (Docket Entry No. 2053 in Case No. 17-4780, the "Administrative Expense Motion" or "Motion"),[2] and state as follows.

## PRELIMINARY STATEMENT

1. The Fuel Line Lenders generally do not oppose PREPA's plan to transfer the operation of its T&D System to LUMA Energy. Indeed, the Fuel Line Lenders are supportive of efforts to improve PREPA's operations, management and governance. Although the Fuel Line Lenders have concerns about certain provisions of the T&D Contract, the Administrative Expense Motion states that the Government Parties are not seeking this Court's approval for the T&D Contract as a general matter.[3] Thus, while reserving all rights with respect to the T&D Contract, the Fuel Line Lenders are filing only this limited objection.

2. This objection focuses solely on the request in the Administrative Expense Motion for the Court to grant to LUMA Energy "an allowed administrative expense claim for any accrued and unpaid Front-End Transition Obligations incurred by PREPA under the T&D Contract." Motion Ex. A (proposed order) ¶ 2. Tracing through the definitions, the "Front-End Transition Obligations" are defined to mean "[t]he accrued and unpaid Front-End Transition

---

[1] The Fuel Line Lenders are Cortland Capital Market Services LLC ("Cortland"), as successor administrative agent under a Credit Agreement, dated May 4, 2012, among PREPA, Scotiabank de Puerto Rico and certain lenders (the "Scotiabank Credit Agreement").

[2] Capitalized terms have the same meanings as in the Administrative Expense Motion.

[3] *See* Administrative Expense Motion at 6 n.7 ("The Government Parties are only seeking allowance of an administrative expense claim for the Front-End Transition Obligations, not approval of the T&D Contract from the Title III Court as no such approval is required under PROMESA (or under the T&D Contract).").

Service Fee, as well as any accrued indemnification obligations and any other amounts required to be paid by PREPA to LUMA Energy under the T&D Contract during the Front-End Transition Period." *Id*. ¶ 35. The motion estimates that "the balance of the Front-End Transition Service Fee is approximately $77 million, which amount might be higher or lower depending on several factors, including whether LUMA Energy, the P3 Authority and PREPA are prepared to have LUMA Energy commence O&M Services within less than one year, or commencement is delayed beyond one year." *Id. ¶* 19. The motion, accordingly, seeks to grant an administrative claim of $77 million or more, with no apparent fixed cap.

3.  As the movant, the Government Parties have the burden of "proving entitlement to priority payment as an administrative expense." *In re Hemingway Transp., Inc.*, 954 F.2d 1, 5 (1st Cir. 1992). The Fuel Line Lenders respectfully submit that the Government Parties have not met that burden. In the litigation concerning the 9019 Motion,[4] the Fuel Line Lenders objected to the provisions of the proposed settlement that conferred administrative expense priority on the Supporting Holders on the ground that section 503(b)(1)(A) of the Bankruptcy Code is not applicable under PROMESA. *See Fuel Line Lenders Objection to 9019 Motion*, Docket No. 1700 in Case No. 17-4780, at ¶ 203. But that is the only statutory provision on which the Government Parties rely to support the Administrative Expense Motion. The relief sought by the Government Parties is therefore impermissible under PROMESA.

## ARGUMENT

4.  The Government Parties make two legal arguments in support of the Administrative Expense Motion, both of which rely on section 503(b)(1)(A) of the Bankruptcy

---

[4] Docket No. 1235 in Case No. 17-4780.

Code. Those arguments fail, because section 503(b)(1)(A) does not authorize administrative expense treatment for the operational expenses of a debtor under PROMESA.

5. Section 503(b)(1)(A) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including— the actual, necessary costs and expenses of preserving the *estate*." 11 U.S.C. § 503(b)(1)(A) (emphasis added). The Government Parties begin by contending that the Front-End Transition Services qualify under the generally-applicable standard under this section, which they describe as follows:

> In the First Circuit, allowance of administrative claims [under this section] is determined by a narrow two prong test. "The first prong asks whether the 'transaction' arose between the creditor and the bankruptcy estate post-petition; the second prong inquires as to whether the incurred expense benefitted the estate in some demonstrable way." *In re Jeans.com*, 491 B.R. 16, 23 (Bankr. D.P.R. 2013) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)). The Front-End Transition Services manifestly meet this test.

Administrative Expense Motion ¶¶ 38-39.

6. But the Front-End Transition Services cannot meet this test, because, under controlling precedent, there is *no estate* under PROMESA. The First Circuit has held as much in clear terms. *See Gracia-Gracia* v. *Commonwealth of P.R.*, 939 F.3d 340, 349 (1st Cir. 2019) ("there is no 'estate' in the PROMESA context"); *id.* ("the concept of 'the estate' has no role under PROMESA"). This statutory result follows from PROMESA's failure to incorporate section 541 of the Bankruptcy Code, which is the provision of the Code that creates the "estate" in other chapters. *See id.* As explained in *Gracia-Gracia*, the same is true in a chapter 9 case, because chapter 9 also does not incorporate section 541. *See id.*; *see also In re Cty. of Central Falls, R.I.*, 468 B.R. 36, 50 (Bankr. D.R.I. 2012) ("Chapter 9 cases involve no estate.").

7. The Government Parties make no effort to address the lack of an "estate." Instead, they assert that "the Front-End Transition Services will materially benefit PREPA and its customers, as they will start PREPA's power grid on a path to becoming a more modern, sustainable, reliable, efficient, cost-effective, and resilient T&D System." Administrative Expense Motion ¶ 41. But that is irrelevant to the legal question of whether the expenses benefit "the estate," a term which has "no role under PROMESA." *Gracia-Gracia*, 939 F.3d at 349.

8. Faced with the controlling case law holding that there is no "estate" in this case, the Government Parties argue that, "[i]n the chapter 9 context" — unlike in other cases — "an administrative expense claim is also appropriate where (1) the services are actual and necessary to preserve the operations of *the debtor*, and (2) the debtor consents to payment of the claim as an administrative expense." *Id.* ¶ 42 (emphasis added). In short, the Government Parties ask the Court to ignore Section 503(b)(1)(A)'s express requirement of a benefit to the *estate*. But the sole authority the Government Parties offer in support of their position is *In re Craig County Hospital Authority*, 572 B.R. 340 (Bankr. N.D. Okla. 2017). In that case, the Government Parties assert, "the court reasoned that reliance on the statutory text alone (given the absence of an 'estate' in chapter 9) was misplaced where the parties had 'expressed an intention to give administrative priority status to post-petition claimants that conferred actual benefit on the Hospital Trust during the course of this case.'" Administrative Expense Motion ¶ 42 (quoting *Craig*, at 572 B.R. at 350 (alterations in Motion)).

9. The Government Parties' description of *Craig County* is not accurate or complete. In *Craig County*, the court had *already confirmed* a plan of adjustment that provided for administrative expense treatment for post-petition suppliers, and the court made clear that it was only enforcing the provisions of that confirmed plan, *not* interpreting section 503(b)(1)(A) of the

Bankruptcy Code. Indeed, the court began its analysis by stating that "[a] confirmation order is a final judgment in the case, and neither it nor the plan that it confirms may be attacked other than by filing a timely appeal. None of the parties to this matter objected to the terms of the Confirmed Plan, nor did they timely appeal the Confirmation Order." *Id.* at 347. Because of that, the court held that its "sole function in this matter is to interpret the Confirmed Plan." *Id.*

10. In concluding that the *confirmed plan* provided for administrative expense status, the *Craig County* court found the "focus on the statutory language of Chapter 9 to be misplaced," because "the question is not 'what Chapter 9 allows,' **but whether the parties, under the Confirmed Plan, expressed an intention to give administrative, priority status to post-petition claimants that conferred actual benefit on the Hospital Trust during the course of this case**." *Id.* at 350 (emphasis added). Similarly, in finding that allowance of an administrative expense claim was an "equitable result" in that circumstance, the court stated:

> When the Hospital Trust amended its plan to provide a detailed procedure for the allowance of administrative claims, it effectively consented to the payment of valid administrative claims. Were this Court to rule otherwise, it would be countenancing something akin to a "bait and switch" procedure, whereby creditors are enticed to vote for confirmation of a plan with the promise of administrative priority, only to be told "Gotcha! No claims qualify!" when they ultimately seek payment. The Court will not take the rule of law in this jurisdiction down that path.

*Id.* at 351.

In sum, the Government Parties' sole authority directed to the validity of granting administrative expense claims under section 503(b)(1)(A) when there is no "estate" is a case that did not address the key issue at all.

11. Authorities that have squarely addressed the issue, unlike *Craig County*, have held that administrative expense claims under section 503(b)(1)(A) are *not* available under

chapter 9. In *In re New York City Off-Track Betting Corp.*, Judge Glenn comprehensively examined this exact question. 434 B.R. 131, 141-43 (Bankr. S.D.N.Y. 2010). According to Judge Glenn:

> Because a chapter 9 debtor's property remains its own and does not inure into a bankruptcy estate as provided by section 541 of the Bankruptcy Code, there can be no administrative expenses for "the actual and necessary costs of preserving the estate" as contemplated by section 503(b)(1)(A) of the Bankruptcy Code. Both leading bankruptcy treatises concur with this approach. Collier observes that because there is no estate in a chapter 9 case, administrative expense claims under section 503 must be limited to "expenses incurred in connection with the chapter 9 case itself" and not operating expenses. 6 COLLIER ON BANKRUPTCY ¶ 901.04[13][a]. Norton agrees, observing in passing that no operating administrative expenses are permitted in a chapter 9 bankruptcy case. 5 WILLIAM J. NORTON, JR. WILLIAM L. NORTON III, NORTON BANKRUPTCY LAW AND PRACTICE § 90:3.

*Id.* at 142.[5] In other chapter 9 cases, this result has also been accepted without objection from other parties. *See In re City of San Bernardino*, No. 12-bk-28006, Dkt. 2164 (Bankr. C.D. Cal. Feb. 2, 2017) ("The Plan's treatment of claims asserted under Section 503(b)(1)(A) as Class 13 Other Post-petition Claims, rather than as expenses entitled to administrative claim priority, is based upon the City's position that there are no Section 503(b)(1)(A) claims in a chapter 9 case because there is no estate in a chapter 9 case . . . . None of the Objections refuted the City's argument and therefore the court did not explicitly rule on this issue."). This result is also consistent with the First Circuit's holding requiring "strict construction of the Bankruptcy Code

---

[5] Notably, although *Off-Track Betting* is not addressed in the Administrative Expense Motion, the day after the Administrative Expense Motion was filed, the Oversight Board filed an opposition in the Commonwealth cases citing *Off-Track Betting* and Collier for the proposition that there are no administrative expense claims in a chapter 9 case under Section 503(b)(1)(A). *See Opposition to Claimants' Motion Pursuant to Fed. R. Civ. P. 12(c) for Judgment on the Pleadings*, Docket No. 13590 in Case No. 17-3283, at ¶ 68 (July 8, 2020).

provisions governing requests for priority payment of administrative expense." *Hemingway Transp.*, 954 F.2d at 5.

12. In addition, this interpretation accords with other chapter 9 decisions that have declined to automatically substitute "estate" for "debtor" in applicable statutory provisions, instead hewing to the statutory command that only the term "property of the estate" is to be substituted with "property of the debtor." 48 U.S.C. § 2161(c)(5). For example, in *In re Central Falls*, the court found that 28 U.S.C. § 157(b)(2)(A), which grants core jurisdiction to bankruptcy courts to hear "matters concerning the administration of the estate," "cannot apply in a Chapter 9 case because Chapter 9 cases involve no estate." 468 B.R. at 50. Similarly, in *In re Lake Lotawana Community Improvement District*, the court declined to exercise post-confirmation jurisdiction over a chapter 9 case, reasoning that unlike chapter 11, which permits retention of jurisdiction in order to "fully administer" a "Chapter 11 estate," "there is no estate in Chapter 9," and therefore the provisions governing when "a chapter 11 *estate* has been 'fully administered' [are] thus not relevant to completion of administration of a Chapter 9 *case*." 2017 WL 1968282, at *2 (W.D. Mo. May 11, 2017) (emphases in original).

13. PROMESA does not provide any other textual indication that section 503(b)(1)(A) should be construed to apply. It is true that PROMESA, like chapter 9, incorporates section 503 in its entirety. *See* 48 U.S.C. § 2161(a); 11 U.S.C. § 901(a). But a cursory examination reveals that section 503 contains other provisions that would never apply under either PROMESA or chapter 9. For example, the very next section of section 503, section 503(b)(2), provides for administrative expense treatment of "compensation and reimbursement awarded under section 330(a)," but section 330(a) (which deals with compensation for trustees, examiners, and estate professionals) is not incorporated into either PROMESA or chapter 9. In

sum, the plain language, the text, and context all compel the conclusion that the absence of an estate in chapter 9 or PROMESA renders section 503(b)(1)(A) unavailable.

14. For these reasons, the Government Parties have not sustained their burden to demonstrate that the Front-End Transition Obligations should be granted administrative priority under section 503(b)(1)(A).

## CONCLUSION

15. For the foregoing reasons, the Administrative Expense Motion should be denied.

Dated: August 12, 2020

Respectfully submitted,

| | |
|---|---|
| /s/ Nayuan Zouairabani | /s/ Emil A. Kleinhaus |
| Nayuan Zouairabani | Richard G. Mason (admitted *pro hac vice*) |
| USDC-PR No. 226411 | Amy R. Wolf (admitted *pro hac vice*) |
| MCCONNELL VALDÉS LLC | Emil A. Kleinhaus (admitted *pro hac vice*) |
| 270 Muñoz Rivera Avenue, Suite 7 | Michael H. Cassel (admitted *pro hac vice*) |
| Hato Rey, Puerto Rico 00918 | WACHTELL, LIPTON, ROSEN & KATZ |
| P.O. Box 364225 | 51 West 52nd Street |
| San Juan, Puerto Rico 00936-4225 | New York, New York 10019 |
| Telephone: (787) 250-5604 | Telephone: (212) 403-1000 |
| Facsimile: (787) 759-9225 | Facsimile: (212) 403-2000 |
| Email: nzt@mcvpr.com | Email: rgmason@wlrk.com |
| | arwolf@wlrk.com |
| | eakleinhaus@wlrk.com |
| | mhcassel@wlrk.com |

*Attorneys for Cortland Capital Market Services LLC, as Administrative Agent*