UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

**Court Filing Relates Only to PREPA
and Shall Only be Filed in Case No.
17-BK-4780 (LTS)**

---------------------------------------------------------------x

### LIMITED OBJECTION OF WHITEFISH ENERGY HOLDINGS, LLC TO PREPA'S MOTION FOR ENTRY OF AN ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR COMPENSATION FOR FRONT-END TRANSITION SERVICES UNDER PUERTO RICO TRANSMISSION AND DISTRIBUTION SYSTEM OPERATION AND MAINTENANCE AGREEMENT WITH LUMA ENERGY

Whitefish Energy Holdings, LLC ("WEH"), by and through its undersigned counsel, hereby files this limited objection (the "Objection") to the *Motion of PREPA for Entry of an Order*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

4828-12212-0898.1

*Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (the "LUMA Motion"). WEH respectfully requests that this Court require PREPA to disclose how the new administrative claims proposed to be allowed under the LUMA Motion will impact WEH's administrative claims (as well as other existing administrative claims) and/or provide evidence that existing administrative claimants will be paid and not be negatively impacted by the addition of the administrative claims contemplated by the allowance of administrative claims to LUMA.

## INTRODUCTION

Nearly three years ago, in the immediate aftermath of Hurricanes Maria and Irma, WEH was the first transmission line contractor engaged by PREPA in the field in Puerto Rico, working to repair the island-wide blackout. WEH's work has been praised as the most efficient and cost-effective of any contractor working on the island.[2] However, in the last 30 months, WEH has not received a single payment from PREPA on account of the over $138 million owed to it.

WEH's swift action and willingness to provide services in Puerto Rico on an emergency basis, coupled with its unique ability to replace *transmission* lines (rather than just distribution lines), in remote areas accessible only by helicopter, provided necessary support to PREPA to help it survive the catastrophic damage of the hurricanes and the long-term disrepair of the island's power grid. WEH repaired the five (5) transmission line segments assigned by PREPA to WEH in

---

[2] *See, e.g.*, "How the US Turned Hurricane Maria from a Natural Disaster to a Manmade Tragedy, September 21, 2018"; available at: https://www.cnn.com/2018/09/21/us/puerto-rico-hurricane-maria-natural-disaster-human-catastrophe-weir/index.html ("Before leaving the island, the fired Whitefish Energy crews managed to repair five transmission lines faster and cheaper than other contractors, PREPA records show, and were given a 'favorable review' by FEMA's Inspector General and PREPA's new chief, José Ortiz.")

less than two months. <u>These were the most critical transmission lines that facilitated the restoration of power to hospitals, industry, and the City of San Juan.</u>

It is therefore indisputable that the actions of WEH preserved the Debtor's assets and maintained its ability to function as a going concern. However, WEH is still owed in excess of $138 million on an administrative basis by PREPA. It has not received a single payment in over 30 months, causing significant financial strain. Through the Luma Motion, PREPA seeks approval of many millions of dollars of administrative claims, with no plan to pay its *other* administrative creditors. This is true, even as PREPA's revenues are falling due to the effects of the COVID-19 pandemic.

WEH is extremely concerned that the addition of significant new administrative claims being added to the estate through the settlement will impact PREPA's ability to pay its current administrative claimants in full at the time of plan confirmation.[3] PREPA should be required to provide evidence to the Court that the addition of these new administrative claims will not jeopardize their ability to pay all of the outstanding administrative claims as part of *any* contemplated plan of adjustment.

## STATEMENT OF FACTS

*a. WEH's Administrative Claim*

1. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a voluntary petition for relief pursuant to PROMESA section 304(a)

---

[3] PREPA's long-delayed but still-pending motion for a settlement with its bondholder creditors (the "9019 Motion") also seeks to add many millions of dollars in administrative claims. WEH also filed a limited objection to the 9019 Motion [Dkt. No. 8730].

(the "Title III Case"). Following this, the Oversight Board filed Title III cases for various entities, including the Puerto Rico Electric Power Authority ("PREPA") on July 2, 2017.

2. On September 26, 2017, after Puerto Rico was struck by two hurricanes, which severely damaged its electric grid, PREPA entered into a contract with WEH for the repair of the electrical system main structures (the backbone of the system) composed of approximately 200 miles of transmission lines and towers, many of which were located in the mountainous region of Puerto Rico's rugged interior (the "WEH Contract"). PREPA understood that the WEH team had the necessary experience to repair the 230kV transmission lines in remote areas with no access roads.

3. The WEH Contract, as amended, had a ceiling value of $300 million. The WEH Contract obligated PREPA to pay WEH for work PREPA asked it to perform and which work was actually performed on a time-and-materials basis.

4. On October 31, 2017, PREPA terminated the WEH Contract, effective November 30, 2017. The termination was unrelated to WEH's performance under the WEH Contract. In fact, the Office of the Comptroller General of the Commonwealth of Puerto Rico audited the WEH Contract and found no improprieties.

5. Prior to the November 30, 2017 termination date, WEH completed all of the work that had been requested by PREPA including, *inter alia*, the repair of the five (5) transmission line segments assigned by PREPA to WEH, which constitute part of the backbone of the transmission system in the area.[4]

---

[4] The chart detailing the restoration of transmission lines is part of PREPA's September 24, 2018 Disclosures to bondholders and other parties in this case (the "Disclosures"), on page 12. The Disclosure from September 24, 2018 can be found here: https://emma.msrb.org/ES1200256-ES937715-ES1338535.pdf.

6. More specifically, WEH completed the following:

(a) The sum of the Whitefish Energy work covered more than 200 miles of transmission lines. In most areas, Whitefish Energy crews cleared the right-of-ways to reach structures and lines before damage assessment and work could even begin. That preliminary work also involved clearing access roads and helicopter staging areas so that repair equipment and manpower could be transported to repair sites;

(b) Over the course of that 200 miles of transmission line repair work, teams replaced over 50 towers, dismantled a like number of towers and inventoried parts for salvage and reuse, replaced structures, and completed corrective action on at least 200 other transmission structures; and

(c) Whitefish Energy also repaired over 200 miles of critical distribution line infrastructure. Restoring electricity to major residential and industrial areas was PREPA's top priority. Whitefish Energy restored the first electricity to San Juan, Caguas, Manati and Juncos customers. In doing so, Whitefish Energy replaced and repaired several hundred poles and re-wired critical distribution lines.

7. WEH submitted invoices to PREPA for work performed and for mobilization and demobilization costs totaling approximately $142.4 million, which includes amounts owed for work performed by WEH and its subcontractors.

8. As of the date of this Motion, WEH and its subcontractors are still owed $106,423,983.84 (the "Remaining Invoice Amounts")[5], exclusive of interest and fees, which continue to accrue under the WEH Contract. PREPA's April 27, 2020 Weekly Disclosure confirms this amount on Page 11.[6] Therefore, there is no dispute about the amount owed and herein claimed.

---

[5] The Remaining Invoice Amounts are subject to further reconciliation by PREPA and WEH. At this time, WEH understands that a small portion of its invoices are still being reconciled.
[6] The April 27, 2020 Weekly Disclosure is located at https://emma.msrb.org/SS1370527-SS1067513-SS1474133.pdf.

4828-12212-0898.1

9. The federal government has authorized 100% federal cost share for emergency protective measures, including direct federal assistance, for 180 days from the start of the declaration on September 17, 2017.[7] All of the work performed by WEH and its subcontractors was performed within this 180-day period.

10. The WEH Contract acknowledged that, starting on October 25, 2017, Federal Emergency Management Agency ("FEMA") financial assistance will be used to fund the WEH Contract. Notwithstanding the foregoing, the WEH Contract provides, "Any failure to secure approvals or funding from FEMA or some other source . . . shall not relieve PREPA from its obligations for payment under this Contract."[8]

11. PREPA prepared the contract analysis, cost reasonableness analysis, and invoices that are required to seek reimbursement from FEMA for the work performed by WEH (collectively, the "FEMA Documentation").

12. WEH promptly and diligently responded to PREPA's requests for information and documentation to support PREPA's efforts in compiling the FEMA Documentation.

13. As reflected in PREPA's September 24, 2018 Weekly Disclosure, on June 29, 2018, PREPA submitted the FEMA Documentation to the Governor's Authorized Representative ("GAR") for review.

14. The GAR submitted the FEMA Documentation to FEMA on or about August 24, 2018, which is confirmed by the movement of the WEH Project Worksheet from the "pending" to the "submitted" portion of the chart in the August 24, 2018 Disclosure. PREPA then re-submitted

---

[7] https://www.fema.gov/news-release/2017/09/26/president-donald-j-trump-amends-puerto-rico-declaration

[8] The WEH Contract is in the possession of PREPA and is not attached hereto, but WEH will provide a copy to the Court upon request.

6

4828-12212-0898.1

the FEMA Documentation to FEMA on or about November 27, 2018, as indicated in PREPA's December 5, 2018 Disclosure.[9] PREPA's Disclosures, including its most recent Disclosure as of the date of this filing,[10] all reflect that the FEMA Documentation supported a request for reimbursement in the amount of $143.3 million (this amount includes the funds previously paid to WEH in 2017 which are to be reimbursed to PREPA by FEMA). This submission to FEMA by PREPA constitutes an admission by PREPA of what is an accurate statement of fact and a correct statement of the law (with the evidentiary quality of an admission) – that WEH performed the work and is owed payment pursuant to the WEH Contract, as supported by the FEMA Documentation.

15. FEMA has not yet responded to PREPA's submission and PREPA has stopped providing updates to WEH regarding the status of FEMA's review of PREPA's submission of the FEMA Documentation. As a result, WEH does not have an estimated deadline for FEMA's review of PREPA's submission for WEH's work.

16. On July 27, 2020, the Office of Inspector General for the Department of Homeland Security issued a report (the OIG Report") finding that "PREPA complied with Federal procurement requirements for its noncompetitive procurement of the Whitefish contract."[11] OIG Report, p. 4. The OIG Report also noted that FEMA has not issued any PA Grants for WEH's work but has been reviewing information regarding it since November 2018. *Id*. at p. 7.

17. As reflected in PREPA's prior Weekly Disclosures, PREPA paid WEH $36.9 million, with the last payment received in December 2017. However, WEH is still owed the

---

[9] https://emma.msrb.org/ES1221958-ES954127-ES1355088.pdf.
[10] https://emma.msrb.org/SS1370527-SS1067513-SS1474133.pdf.
[11] https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-57-Jul20.pdf

Remaining Invoice Amounts, plus finance charges, which continue to accrue in accordance with the WEH Contract at a rate of 1% per month for all overdue invoices (the "Finance Charges").

18. As of July 15, 2020, the Finance Charges totaled $32,402,782.35. The total amount of the administrative claim as of this date is $138,826,766.19, including $106,423,983.84 of unpaid invoices, and finance charges of $32,402,782.35 as of July 15, 2020, plus additional Finance Charges accruing at a rate of 1% per month on all overdue invoices until the date WEH receives payment in full, as agreed under the terms and conditions of the agreement.

19. In sum, PREPA has failed to pay WEH over $100 million for post-petition work that no one disputes was performed and performed well, and was necessary to the continued operation of PREPA.

*b. The Proposed Administrative Claims to LUMA Energy*

20. On July 7, 2020, PREPA the Motion, seeking this Court's approval to allow and pay LUMA Energy ("LUMA") an administrative claim of up to $136,351,930. PREPA has already funded $59 million of this amount into a reserve account, leaving approximately $77 million in new administrative claims, which will be added to the hundreds of millions PREPA will already be required to pay before its Plan of Adjustment can be confirmed.

21. On July 24, 2020, WEH served its First Requests for Production of Documents and First Set of Interrogatories (the "Discovery Requests") on PREPA and the Oversight Board, seeking information on the status of payment of WEH's administrative claim and PREPA's communications with FEMA regarding it and PREPA and the Oversight Board's analysis of existing unpaid administrative claims and the administrative claims for LUMA. On August 3, 2020, PREPA and the Oversight Board served objections to the Discovery Requests. Chiefly,

8

4828-12212-0898.1

PREPA and the Oversight Board stated that all of the Discovery Requests were irrelevant and that they would not undertake any searches related to them or provide responses to the Interrogatories.

22. However, PREPA and the Oversight Board did provide certain documents to WEH, as well as other parties.

23. A review of the documents produced by PREPA and the Oversight Board demonstrated to WEH that PREPA's financial condition, and its ability to emerge from Title III was a serious concern in the negotiations for the LUMA contract. On August 10, 2020, WEH sent a letter to PREPA and the Oversight Board highlighting the documents produced that were responsive to WEH's inquiries and reiterating its position that PREPA and the Oversight Board must respond to the Discovery Requests and provide responsive documents.

*c. PREPA's Current Financial Situation*

24. PREPA has recently explained to the Court that it is facing reduced revenue and future uncertainty arising from the COVID-19 Pandemic and other natural disasters including a drought and the 2020 hurricane season. *See Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion* (the "COVID-19 Status Report") [Dkt. No. 2111]. Given the ongoing nature of the COVID-19 Pandemic, and its unknown effect on Puerto Rico and PREPA, which has impacted PREPA's ability to move forward to attempt a settlement with its bondholders, this case is likely to remain open without a plan of adjustment for some time, while administrative expenses increase.

## LIMITED OBJECTION

25. Generally, WEH does not oppose the Motion or PREPA's goal of transforming the energy delivery system for Puerto Rico. In fact, WEH does not oppose PREPA incurring further administrative claims. However, there are significant risks to existing administrative claimants when PREPA takes on additional administrative claims with no plan to satisfy the currently outstanding ones and WEH believes that the Court should take these other claimants into consideration when it evaluates the Motion.

26. WEH holds one of the largest administrative claims in this case. As of the filing of this Limited Objection, PREPA owes WEH *over $138 million* in unpaid administrative claims. WEH has not received any payment on account of its administrative claims in *over 30 months*, despite repeated requests to PREPA (which have gone largely unanswered).

27. PREPA argues that LUMA should be entitled to an administrative claim because it requires such assurances before providing necessary services to PREPA, in light of PREPA's financial condition. Motion, ¶44. WEH does not disagree. However, WEH (and other administrative creditors) have already provided PREPA with urgently needed services in the aftermath of a devastating natural disaster, even as PREPA was in bankruptcy. Rather than come to Court to advocate for the allowance and payment of WEH's administrative claims, PREPA has ignored WEH. PREPA relies on equitable arguments to support the payments it proposes to make to LUMA. Equity in the context of the case at hand would include payment to administrative priority creditors, such as WEH, as well.

28. PROMESA requires full payment of administrative claims in order to confirm a plan of adjustment. 48 U.S.C. § 2174(b)(4). However, given PREPA's current financial condition

as outlined in its July 31, 2020 status report, the status of its potential settlement with its bondholders currently in flux. It is inequitable for PREPA to continue to accrue millions of dollars of administrative claims when there is no current plan to pay those amounts, and it does not appear PREPA will make any effort to pay them in the near term. It is particularly painful for smaller companies, such as WEH, who provided emergency services to PREPA when no one else would do so. However, the addition of significant new administrative claims may result in PREPA's inability to pay all of these claims in full. WEH and other pre-existing administrative creditors are being asked to bear the risk of this uncertainty. The $77 million requested in the LUMA Motion only exacerbates this concern.

29. It is not yet clear what the impact of an additional $77 million of administrative claims will have on PREPA's ability to pay its existing outstanding administrative claims. What is clear, however, is that PREPA's financial condition, credit, and its ability to exit this Title III proceeding is of significant concern to LUMA and many other parties. Though PREPA and the Oversight Board objected to all of WEH's Discovery Requests (as well as those of many other parties), they provided certain documents[12] which demonstrated that considerations of credit worthiness of PREPA, the federal payment support process, and the potential for an exit plan under Title III were all considerations in the process of negotiating the contract currently before Court, and therefore the effect of the relief sought on other creditors is already an issue implied in the LUMA Motion. It would be absurd to conclude that the Court need not consider key elements that were part of the purported exercise of PREPA's business judgment.

---

[12] WEH will file the referenced documents under seal at the Court's request.

30. PREPA and the Oversight Board, as well as the other parties that were involved in negotiations with LUMA, at a minimum must have i) discussed and communicated about these issues internally, ii) communicated with LUMA regarding these issues, and iii) ultimately arrived at a mix of contract provisions and administrative claim treatment that satisfied LUMA's concerns. WEH's concerns were likely squarely addressed in these deliberations, particularly because full payment of administrative claims is a prerequisite for a confirmed plan of adjustment (and an exit from Title III). PREPA and the Oversight Board should provide the same information to the Court so that it can evaluate the propriety of allowing administrative claims for LUMA against the backdrop of these other concerns, as well as the equities of the situation, including the effect of further administrative claims on currently unpaid administrative claimants.

## CONCLUSION

As set forth above, WEH respectfully requests that this Court consider the effect of the relief sought through the LUMA Motion on existing administrative claimants, in light of PREPA's current financial situation, and craft relief that addresses the equities as they concern such claimants. WEH reserves the right to further object to the relief sought in the Motion as additional evidence develops.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 12th day of August 2020.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants appearing in said record including the US Trustee, counsel for AAFAF, counsel for

4828-12212-0898.1

the Oversight Board, Counsel for the Creditor's Committee, and Counsel for the Retiree Committee.

                                      Respectfully submitted,

/s/ Ann Marie Uetz
Ann Marie Uetz (*pro hac vice*)
FOLEY & LARDNER LLP
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone (313) 234-7100
Facsimile (313) 234-2800
auetz@foley.com
*Counsel for WEH*

and

**C. CONDE & ASSOC.**
/s/Carmen D. Conde Torres
Carmen D. Conde Torres, Esq.
USDC 207312
/s/Luisa S. Valle Castro
Luisa S. Valle Castro, Esq.
USDC No. 215611

254 San José Street, 5th Floor
Old San Juan, Puerto Rico 00901
Telephone: 787-729-2900
Facsimile: 787-729-2203
E-Mail: condecarmen@condelaw.com
             ls.valle@condelaw.com
*Counsel for WEH*

4828-12212-0898.1