**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>**Re: ECF No. 13817**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780-LTS<br><br>This filing relates only to PREPA and shall only be filed in the lead Case No. 17-3283 and Case No. 17-BK-4780-LTS |

**OBJECTION OF THE PUERTO RICO ELECTRIC POWER
AUTHORITY TO MOTION OF EFRON DORADO, S.E. FOR RELIEF FROM THE
AUTOMATIC STAY AND MOMORANDUM [SIC] OF LAW IN SUPPORT THEREOF**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA") respectfully submits this objection

(the "Objection") to the *Motion of Efron Dorado, S.E. for Relief from the Automatic Stay and*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

*Momorandum* [sic] *of Law in Support Thereof* [ECF No. 13817][2] (the "Motion") filed by Efron Dorado, S.E. ("Movant"), plaintiff in the case captioned *Efron Dorado, S.E. v. Autoridad de Energía Eléctrica de Puerto Rico, et al.*, civil case no. KPE2010-2408 (904) (the "Prepetition Action"), in the Puerto Rico Court of First Instance of San Juan (the "Commonwealth Court"). PREPA respectfully requests that the Court deny the Motion for the reasons set forth below.[3]

## PRELIMINARY STATEMENT

1. The Motion should be denied because (a) Movant does not have standing to seek relief from the automatic stay on behalf of a third party, Association of Condominio 221 Plaza ("Condominio"), under the pretense of enforcing a settlement in the Prepetition Action, which did not involve Condominio (and has nothing to do with the purported reason that Movant is seeking to lift he stay), and (b) notwithstanding Movant's lack of standing, Movant has not met its burden of establishing cause to lift the automatic stay.

2. In 2010, Movant and PREPA entered into a settlement with respect to the Prepetition Action that provided, among other things, that certain disputed electric utility charges would be resolved through an administrative process. In a seemingly unrelated action in 2012, Movant asserts the Commonwealth Court directed PREPA to credit certain consigned rents belonging to Movant to Condominio's utility account.[4] Movant asserts that four years later, in 2016, PREPA reversed such credit to Condomio's account and credited Movant's account against the disputed charges instead. Movant appears to seek relief from the automatic stay on behalf of a third party, Condominio, to be able to reverse such credit to satisfy Condomio's claim against

---

[2] All docket references are to Case No. 17-3283-LTS.

[3] The Financial Oversight and Management Board for Puerto Rico, as the PREPA's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized PREPA to file this Objection on its behalf.

[4] The Commonwealth Court does not have court records available electronically, and due to the COVID-19 pandemic, PREPA has not been able to obtain physical copies of the records.

2

PREPA. Accordingly, Movant does not have standing to seek the relief it requests in the Motion.

3. Nonetheless, Movant failed to make the initial showing that "cause" exists to lift the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") because it has failed to show that the *Sonnax* factors weighs in its favor. Also, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his potential claim, if any, should not be resolved through the claims resolution process to be undertaken in PREPA's Title III case. Lifting the automatic stay would allow Movant to enforce the Judgment (the settlement of the Prepetition Action) or initiate new litigation, thereby causing PREPA to expend resources to defend against such claim at a time when it is focusing on its transformation and also on developing a plan of adjustment to emerge from its Title III case. Furthermore, if the automatic stay were entirely lifted, as requested by Movant, and Movant is able to seek reversal of the credit, Condominio would receive preferential treatment on its asserted prepetition, unsecured claim against the PREPA, while PREPA's other prepetition, unsecured creditors must wait to have their claims treated under a plan of adjustment.

## BACKGROUND

4. On June 24, 2010, Movant commenced the Prepetition Action against PREPA and PREPA's Executive Director, in his official capacity, for events that allegedly occurred before the commencement of the PREPA's Title III case on July 2, 2017 (the "Petition Date").

5. In the Prepetition Action, Movant claimed that PREPA incorrectly applied a retroactive charge of $264,371.60, which includes $4,419.19 in late charges (collectively, the "Disputed Charges"), in Movant's electric utility bill dated May 11, 2009. Motion ¶ 3. Movant objected to the charge pursuant to the procedure established under Law No. 33 of 1985 (the "Law 33 Process") and paid to PREPA $2,686.35. *Id.* Movant also claimed that PREPA cut off power

3

service to the public areas of Movant's shopping center on June 21, 2010 without prior notice. *Id.* ¶ 4.

6. Movant sought in the Prepetition Action (I) a preliminary injunction directing PREPA to (a) reestablish electrical power to Movant's property, and (b) halt of any collection attempt until after the conclusion of Movant's objection to the Disputed Charged pursuant to the Law 33 Process was completed or the Commonwealth Court decided on the nature or legality of the actions of the defendants, (II) a declaratory judgment with a permanent injunction and writ of mandamus ordering PREPA to cease and desist from ignoring or denying Movant's request for administrative review and requiring PREPA to reconnect power to Movant's property, and (III) an order directing PREPA to pay costs, expenses, attorney's fees, and economic damages.[5]

7. On July 2, 2010, the Commonwealth Court approved a settlement of the Prepetition Action and dismissed the Prepetition Action with prejudice (the "Judgment").[6] The Judgment provided that: (a) the Law 33 Process would continue its regular course,[7] (b) Movant would pay the amount of $2,743,87 to PREPA, (c) Movant would allow PREPA to access its premises to read the meters, (d) PREPA would reestablish power that what cutoff, without prejudice to PREPA's ability to enforce any determination in its favor pursuant to the Law 33 Process, and (e) Plaintiff would voluntarily dismiss, with prejudice, the Prepetition Action.

8. On July 2, 2017, the FOMB filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a), commencing a case under Title III thereof. The filing of the Title III case triggered the automatic stay. *See* PROMESA § 301 (incorporating 11 U.S.C. §§ 362 and 922—the automatic stay provisions—into the Title III case).

---

[5] Motion, Exhibit VI to Exhibit A.
[6] Motion, Exhibit A at 40.
[7] PREPA understands that the Law 33 Process has not been closed.

9. On July 23, 2020, Movant filed the Motion seeking relief from the automatic stay to enforce the Judgment. Movant asserts that, in a separate case, the Commonwealth Court directed PREPA to disburse $208,219.69 in consigned rents belonging to Movant to pay Movant's arrears of $24,682.91, and the balance of $183,536.78 to be applied to Condominio's account, where Movant's offices were located. Motion ¶ 12. Movant alleges that, on August 8, 2016, PREPA reversed the credit of $183,536.78 to Condominio, and instead credited such amount to Movant's account. *Id.* Movant asserts that such action was a violation of the Judgment and the Law 33 Process, and seeks to enforce the Judgement to have such amounts credited to Condominio 211 Plaza's account.

10. Movant notes that its attorney filed a proof of claim on behalf of Condominio (Claim No. 84777) against PREPA in the amount of $183,536.78 that was allegedly reversed from Condominio's account. *Id.* ¶ 14.

**OBJECTION**

### I. Movant Lacks Standing to Seek Relief from the Automatic Stay on Behalf of a Third-Party

11. Movant seeks relief from the automatic stay on the pretense of enforcing the Judgment so that amounts credited to its account may be instead credited to a third party, Condominio. In effect, Movant is seeking relief from the automatic stay to enforce the claim of a third party. For this reason, Movant lacks standing. To have standing to seek relief from the automatic stay, Movant must establish that it is a "party in interest" and that it is asserting its rights and not those of another entity. *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008); *In re Maisel*, 378 B.R. 19, 21 (Bankr. D. Mass. 2007) ("The plain language of section 362 of the Bankruptcy Code requires that one be a 'party in interest' to seek relief from stay. . . . The test for whether one is a party in interest in the First Circuit is whether a party has a colorable claim to the

5

property."). The Bankruptcy Code does not define "party in interest" for purposes of Bankruptcy Code section 362. Courts generally require that only a debtor or a creditor may seek relief under Bankruptcy Code section 362(d). *See In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983) (". . . notwithstanding the use of the term 'party in interest', it is only creditors who may obtain relief form the automatic stay. *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 175 (1977) ('Creditors may obtain relief from the stay if their interests would be harmed by continuance of the stay.')." A "creditor" is "an entity who has a claim against the debtor. 11 U.S.C. § 101(10). A "claim" is a right to payment. 11 U.S.C. § 101(5).

12. Movant is not a creditor of PREPA with respect to the asserted $183,536.78 credit alleged owed to Condominio. Indeed, the proof of claim cited by Movant was filed on behalf of Condominio. Proof of Claim No. 84777. Furthermore, the Judgment which Movant seeks to enforce does not require PREPA to credit amounts to Condominio, but, as Movant asserts, a Commonwealth Court order in a *separate case* purported to direct PREPA to credit amounts to Condominio. *See* Motion ¶ 12.[8] Accordingly, Movant does not have a "right to payment" with respect to the $183,536.78 credit and therefore has no standing to seek stay relief to enforce Condominio's asserted claim against PREPA. *See In re Comcoach Corp.*, 698 F.2d at 574 (holding that a bank did not have standing to seek stay relief because the bank had no right to payment from the debtor, and the debtor's duty to pay rent on its lease runs only to a third party).

## II. Movant Fails to Show Cause to Lift the Automatic Stay Under the *Sonnax* Factors

13. Notwithstanding Movant's lack of standing to seek stay relief, Movant has not established that cause exists to lift the automatic stay. An order lifting the automatic stay is an

---

[8] Movant has not raised that it has a claim with respect to the credited amount in this Motion. Notably, Movant is complaining that it received credit that he was not supposed to receive—that is not "a right to payment" pursuant to Bankruptcy Code section 101(5). Even if Movant has a claim, he never filed a proof of claim against PREPA.

6

"extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990):

> (1) whether relief would result in complete or partial resolution of the issues;
>
> (2) the lack of any connection with or interference with the bankruptcy case;
>
> (3) whether the foreign proceeding involves the debtor as fiduciary;
>
> (4) whether a specialized tribunal has been established to hear the cause of action at issue;
>
> (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
>
> (6) whether the action essentially involves third parties rather than the debtor;
>
> (7) whether the litigation could prejudice the interest of other creditors;
>
> (8) whether a judgment in the foreign action is subject to equitable subordination;
>
> (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;
>
> (10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
>
> (11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
>
> (12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

14. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

15. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the initial burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

16. The Sonnax factors analysis clearly weighs against lifting the stay. Movant has similarly failed to establish that cause exists to lift the automatic stay and has not met his initial burden. Instead, Movant is merely seeking preferential treatment on his potential claim by seeking the execution of the Judgment entered in the Prepetition Action, which would undermine the purpose of the automatic stay "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on

collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets."). Furthermore, denying the Motion would further the goal of the automatic stay to prevent creditors from disrupting the Debtors' focus on their restructuring efforts—as it is not clear how enforcement of the Judgment has anything to do with Condominio's asserted right to the return of its credit. *See In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). The *Sonnax* factors point squarely toward maintaining the automatic stay and against the relief Movant seeks:

17. **Sonnax Factor 1**: The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against lifting the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

18. Here, Movant does not identify any bankruptcy issue related to PREPA's Title III

9

case that would be resolved by allowing Movant to enforce the Judgment. Movant makes a blanket statement asserting that relief from stay would "result in a complete resolution of the issues" Motion ¶ 18(a). Movant bears the burden of establishing cause, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

19. Moreover, allowing separate litigation over PREPA's compliance with the Judgment is in conflict with PROMESA's core purpose: "centraliz[ing] all disputes concerning property of the [PREPA] so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings." *In re Fin. Oversight and Mgt. Bd. for Puerto Rico*, 939 F.3d 356, 363, 2019 WL 4667824 (1st Cir. 2019) (confirming the denial of a request to lift stay to compel PREPA to comply with the provisions of a prepetition judgment.). Therefore, the first Sonnax factor supports denying the Motion.

20. **Sonnax Factor 2**: The second Sonnax factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting the stay. PREPA would be required to devote resources to litigate Movant's request to enforce the Judgment and, if Movant prevails, PREPA would have disburse funds. This would interfere with PREPA's Title III case and overall restructuring by diverting critical managerial time and cost from its recovery efforts to transform PREPA and exit Title III.

21. Moreover, as a potential, prepetition, unsecured creditor of PREPA, Movant's claim is subject to the claims resolution process that are being undertaken in the Title III case. Thus, requiring PREPA to defend Movant's claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of

all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

22. Additionally, should every plaintiff with an asserted prepetition claim be given carte blanche to litigate and/or execute their claims, the combined result would have a substantial and negative impact on PREPA's fiscal plan, certified budget, and transformation. This would impede the restructuring process, and thus, should be avoided. *See, e.g.*, *In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). Thus, Sonnax factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

23. In this regard, *In re City of Stockton* is instructive. 484 B.R. 372 (Bankr. E.D. Cal. 2012). There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374. The plaintiff then moved to lift the stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case. *Id*. at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and

11

attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id*. "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id*.

24. Here, PREPA would have to undertake substantial efforts to defend against litigation regarding alleged events that occurred after entry of the Judgment. Furthermore, because such alleged events occurred between ten to four years ago, such litigation would likely involve costly factual discovery.[9] Thus, Sonnax factor 2 weighs in favor of denying the Motion, and Movant's conclusory statement that the Prepetition Action "lacks any connection within or interference with the Title III Petition" (Motion ¶ 18) fails to satisfy Movant's initial burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

25. **Sonnax Factor 4**: The fourth Sonnax factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No

---

[9] Notably, the facts cited in the Motion are puzzling, and given PREPA's limited access to the Commonwealth Court's records during the COVID-19 pandemic, a full picture of the events and proceedings before the Commonwealth Court and the administrative proceedings would require PREPA to expend substantial time and resources.

12

specialized tribunal has been established to hear the Prepetition Action, which was before the Commonwealth Court, or any action to enforce the Judgment. Notably, the Prepetition Action was dismissed with prejudiced in 2010. Judgement ¶ 3. Furthermore, PREPA understands that the Law 33 Process has been closed. Thus, Sonnax factor 4 weighs in favor of denying the Motion.

26. **Sonnax Factor 5:** The fifth Sonnax factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. As Movant acknowledges, no insurer of PREPA has assumed any financial responsibility in connection with the Prepetition Action or the enforcement of the Judgment. Motion ¶ 18. Therefore, all the costs of defending the claim would be borne by PREPA. Thus, Sonnax factor 5 does not support granting the Motion.

27. **Sonnax Factor 6**: The sixth Sonnax factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties rather than the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth Sonnax factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve *third parties*." (emphasis in original)).

28. Here, the Prepetition Action does not involve third parties. PREPA and its Executive Director, in its official capacity, are the only defendants, the latter for which the Commonwealth would be required to expend its own funds to defend and indemnify. Therefore,

13

Sonnax factor 6 weighs in favor of denying the Motion.

29. **Sonnax Factor 7:** The seventh Sonnax factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. PREPA would have to expend considerable time and expense to litigate the enforcement of the Judgment, initiating and finalizing discovery, attending hearings, preparing and filing motions in general. Moreover, other unsecured claimants will be affected because PREPA's funds would be depleted in defending against litigation that could be later disbursed among all of PREPA's unsecured creditors pursuant to a plan of adjustment.

30. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g.*, *In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

31. Here, the depletion of PREPA's resources to defend against the enforcement of the Judgment entered in the Prepetition Action and the diversion of PREPA's attention to proceed expeditiously through its Title III case would inure to the detriment of PREPA's other creditors. Accordingly, Sonnax factor 7 does not support granting the Motion.

32. **Sonnax Factors 10 and 11**: The interests of judicial economy also weigh against stay relief. If Movant has any claim against PREPA arising from the Judgment, such claim would be a prepetition claim that should be addressed in the claims resolution process in PREPA's Title III case, rather than separate, duplicative litigation. Movant fails to meet its burden to show that *Sonnax* factors 10 and 11 favor granting relief from the automatic stay, and merely makes the conclusory statement that lifting the automatic stay is in "the interest of judicial economy and the expeditious and economical resolution of the relief requested herein warrant that it be heard by the state court." Motion, ¶ 18(i). Here, the Prepetition Action was dismissed with prejudiced, *see* Judgement ¶ 3, thus the issues are not pending before a court that is currently adjudicating the matter.

33. Thus, Sonnax factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.*, 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues.").

34. **Sonnax Factor 12**: Balancing of the harms clearly favors denial of the Motion. Movant makes the conclusory claim that the impact that "the stay on Movant outweighs any impact or harm to [PREPA]." Motion ¶ 18(j).

35. However, the impact on PREPA if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The diversion of PREPA's resources to defend Movant's claims relating to events that occurred between ten to four years ago, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this juncture of the Title III case. Furthermore, the preferential treatment of Condominio's asserted claim against PREPA if Movant were to succeed in any action

15

directing PREPA to allocate credits to Condominio's account would prejudice similarly situated creditors who must wait for their claims to be treated pursuant to a plan of adjustment.

36. On the other hand, postponing liquidation of the Movant's or Condominio's claims, if any, is a hardship that is shared with other creditors so PREPA can focus on its restructuring and recovery efforts for the benefit of all creditors and would promote judicial economy. Any claim Movant or Condominio may have can and should be dealt with during the Title III claims process that has already begun, as any other creditor's claims. Given the stage of the Prepetition Action, there is no guaranty that the resolution of the enforcement of the Judgment would come any sooner than the resolution of Movant's or Condominio's purported claims in the Title III case. Thus, on balance, Sonnax factor 12 weighs in favor of denying the Motion.[10]

## **CONCLUSION**

37. Movant does not have standing to seek relief from the automatic stay to enforce Condominio's claims, and nonetheless fails to establish that there is cause to lift the automatic stay to allow it to enforce the Judgment. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Respectfully submitted,
In San Juan, Puerto Rico, this 17th day of August 2020.

---

[10] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

16

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

*/s/ Katiuska Bolaños*
Katiuska Bolaños
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel: (787) 395-7133
Fax: (787) 497-9664

*Counsel for Puerto Rico Electric Power Authority*