# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
-------------------------------------------------------------- X
                                                               :
In re:                                                         :
                                                               :
THE FINANCIAL OVERSIGHT AND                                    :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                              :   Title III
                                                               :
        as representative of                                  :   Case No. 17-BK-3283 (LTS)
                                                               :
THE COMMONWEALTH OF PUERTO RICO et al.,                        :   (Jointly Administered)
                                                               :
        Debtors.[1]                                           :
-------------------------------------------------------------- X
                                                               :
In re:                                                         :
                                                               :
THE FINANCIAL OVERSIGHT AND                                    :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                              :   Title III
                                                               :
        as representative of                                  :   Case No. 17-BK-4780 (LTS)
                                                               :
PUERTO RICO ELECTRIC POWER AUTHORITY                           :
                                                               :
        Debtor.                                               :
-------------------------------------------------------------- X
```

## NOTICE OF HEARING ON MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO TERMINATE BANKRUPTCY RULE 9019 MOTION

**PLEASE TAKE NOTICE** that a hearing on the annexed *Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* (the "Motion") filed by the

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Official Committee of Unsecured Creditors,[2] will be held before the Honorable Laura Taylor Swain, United States District Judge, at the United States District Court for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **September 16, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

  **PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion by any party shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall be served in accordance with the *Thirteenth Amended Case Management Procedures* [Docket No. 13512, Ex. A], so as to be so filed and received no later than **September 1, 2020 4:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection Deadline").

[*Remainder of page intentionally left blank.*]

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

District Court may enter an order granting the relief sought without a hearing pursuant to the

*Thirteenth Amended Case Management Procedures*.


Dated: August 18, 2020              By:  */s/ Luc A. Despins*

                                    PAUL HASTINGS LLP
                                    Luc A. Despins, Esq. *(Pro Hac Vice)*
                                    Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
                                    G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
                                    200 Park Avenue
                                    New York, New York 10166
                                    Telephone:  (212) 318-6000
                                    lucdespins@paulhastings.com
                                    nicholasbassett@paulhastings.com
                                    alexbongartz@paulhastings.com

                                    *Counsel to the Official Committee of Unsecured
                                    Creditors*

                                    By:  */s/ Juan J. Casillas Ayala*

                                    CASILLAS, SANTIAGO & TORRES LLC
                                    Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
                                    Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
                                    Juan C. Nieves González, Esq. (USDC - PR 231707)
                                    Cristina B. Fernández Niggemann, Esq. (USDC - PR
                                    306008)
                                    PO Box 195075
                                    San Juan, Puerto Rico 00919-5075
                                    Telephone: (787) 523-3434 Fax: (787) 523-3433
                                    jcasillas@cstlawpr.com
                                    ifernandez@cstlawpr.com
                                    jnieves@cstlawpr.com
                                    cfernandez@cstlawpr.com

                                    *Local Counsel to the Official Committee of Unsecured
                                    Creditors*

**Hearing Date**: September 16, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: September 1, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------ X
  :
In re:   :
  :
THE FINANCIAL OVERSIGHT AND   :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :   Title III
  :
      as representative of   :   Case No. 17-BK-3283 (LTS)
  :
THE COMMONWEALTH OF PUERTO RICO *et al.*,   :   (Jointly Administered)
  :
      Debtors.[1]   :
------------------------------------------------------------------ X
  :
In re:   :
  :
THE FINANCIAL OVERSIGHT AND   :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :   Title III
  :
      as representative of   :   Case No. 17-BK-4780 (LTS)
  :
PUERTO RICO ELECTRIC POWER AUTHORITY   :
  :
      Debtor.   :
------------------------------------------------------------------ X

# MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
# TO TERMINATE BANKRUPTCY RULE 9019 MOTION

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four
(4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto
Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico
Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of
Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case
No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last
Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case
No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings
Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title
III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 4

MOTION TO TERMINATE .................................................................................. 6

     I.     There Is No Longer Subject Matter Jurisdiction Over the 9019 Motion
           Because the Underlying PREPA RSA Is Effectively Defunct ............................. 6

     II.    Court Should Exercise Discretion to Terminate 9019 Motion ........................... 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Wright*,
  468 U.S. 737 (1984)..................................................................................7

*Braunstein v. McCabe*,
  571 F.3d 108 (1st Cir. 2009)...................................................................12

*In re City of Detroit, Mich.*,
  519 B.R. 673 (Bankr. E.D. Mich. 2014) ................................................13

*City of Erie v. Paps A.M.*,
  529 U.S. 277 (2000)..................................................................................9

*In re Cty. of Orange*,
  219 B.R. 543 (Bankr. C.D. Cal. 1997).....................................................13

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
  45 F. 3d 530 (1st Cir.1995)......................................................................10

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  582 B.R. 579 (D.P.R. 2018), *aff'd*, 919 F.3d 121 (1st Cir. 2019), *cert. denied
  sub nom. Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  140 S. Ct. 855 (2020)..............................................................................6, 7

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  No. 17 BK 3283-LTS, 2020 WL 3816135 (D.P.R. July 2, 2020) ...........14

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
  No. 19-1699, 2020 WL 486163 (1st Cir. Jan. 30, 2020) .........................13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)..................................................................................9

*In re Johnson-Allen*,
  871 F.2d 421 (3d Cir. 1988)......................................................................7

*In re Leslie Fay Companies, Inc.*,
  216 B.R. 117 (Bankr. S.D.N.Y. 1997)......................................................7

*McInnis-Misenor v. Maine Medical Ctr.*,
  319 F. 3d 63 Cir. 2003 ............................................................................10

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*In re Montgomery*,
Nos. 12-70879-BHL-13, 14-57007, 2015 Bankr. LEXIS 1470
(Bankr. S.D. Ind. Apr. 28, 2015) ..............................................................................10

*Official Comm. of Unsecured Creditors v. PREPA*,
No. 20-1122 (1st Cir. Jun. 2, 2020) ..........................................................................12

*In re Parvin*,
538 B.R. 96 (Bankr. W.D. Wash. 2015), *aff'd*, 549 B.R. 268
(W.D. Wash. 2016) .....................................................................................................7

*Simon v. Eastern Kentucky Welfare Rights Organization*,
426 U.S. 26 (1976) ..................................................................................................6, 10

*Warth v. Seldin*,
422 U.S. 490 (1975)....................................................................................................11

*In re Wiley*,
237 B.R. 677 (Bankr. N.D.Ill. 1999) ...........................................................................7

**Statutes**

PROMESA § 301..............................................................................................................13

**Other Authorities**

Jaresko Says PREPA RSA Still Under Evaluation During Pause, Stresses
Importance of 'Consensual' Move to Title III Exit to Curb Court Risks, Reorg
(July 16, 2020, 18:44 PM), https://app.reorg.com/v3/#/items/intel/1869?-
item_id=111030 ............................................................................................................9

PREPA's Ortiz Says Renegotiated RSA Unlikely Until Next Year, Reorg (July
14, 2020, 14:25 PM), https://app.reorg.com/file/217389/Puerto_Rico_-_2020-
07-14_14_25_30_-
_PREPA___s_Ortiz_Says_Renegotiated_RSA_Unlikely_Until_Next_Year-
19188-0.pdf..................................................................................................................2

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[1] respectfully submits
this motion (the "Motion") for entry of an order, substantially in the form attached as **Exhibit A**
hereto (the "Termination Order"), terminating the 9019 Motion for lack of subject matter
jurisdiction or, alternatively, based on the exercise of the Court's discretion, to permit the
Committee to pursue its October 30, 2019 objection to the PREPA bondholders' claims under
section 502 of the Bankruptcy Code[2] (such objection, or any substantially similar objection the
Committee may file after entry of the Termination Order, the "Claim Objection").  In support of
this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.     In their status report filed on July 31, 2020,[3] the Government Parties again
conceded that there are grave doubts about the PREPA RSA's viability, but claimed that
"additional time is required to understand how and if the situation will impact PREPA and to
what extent (if any) they should seek to amend the RSA."[4]  They then sought a two-month
extension—not to propose any concrete steps for the consideration of their fifteen month-old
9019 Motion, but, rather, merely in the "hope[] that they can report on developments regarding
their evaluation of the RSA and 9019 Motion."[5]  On August 5, 2020, the Court entered an order
granting the Government Parties' request to submit a further status report on September 25, 2020

---

[1]   The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and
COFINA.

[2]   *See* Docket No. 1691 in case No. 17-4780.

[3]   *See Status Report of the Government Parties Regarding the Covid-19 Pandemic and the 9019 Motion*, dated
July 31, 2020 [Docket No. 2111 in Case No. 17-4780] (the "July 31 Status Report").  Capitalized terms used but
not otherwise defined herein shall have the meanings given to such terms in the July 31 Status Report.

[4]   July 31 Status Rep. ¶ 25.

[5]   July 31 Status Rep. ¶ 27.

(the "August 5 Order").[6]  As it had in earlier such orders, the Court required that the Government

Parties' upcoming status report "propos[e] next steps with respect to the 9019 Motion."[7]

2.      The Committee respectfully submits that, notwithstanding the Government

Parties' desire to continue indefinitely adjourning their 9019 Motion, unless the Government

Parties unequivocally represent no later than the hearing on this Motion that they are prepared to

immediately move forward with their 9019 Motion, the Court should (i) dismiss the 9019 Motion

for lack of subject matter jurisdiction or, (ii) alternatively, exercise its discretion to terminate the

9019 Motion to permit the Committee to move forward with its Claim Objection.  Both requests

are justified by the fact that all available evidence demonstrates that (i) the RSA—which forms

the sole basis for the case or controversy underlying the relief requested in the 9019 Motion—no

longer exists as a viable agreement and (ii) the Government Parties have no intention of moving

forward with their motion seeking approval of **this** RSA.[8]

3.      Indeed, recent public statements by PREPA leadership could not be clearer that

the parties to the RSA have effectively abandoned the agreement in its current form and intend to

renegotiate it next year.  For example, PREPA's (now former) Executive Director José Ortiz

stated publicly during a high-profile industry conference last month that the RSA "certainly has

to be renegotiated," but that he "**do[es]n't see an RSA being agreed on until next year**."[9]

Other representatives of PREPA and the Oversight Board have made similar statements.  These

---

[6]    *See* Docket No. 2120 in Case No. 17-4780.

[7]    *Id.*

[8]    The Government Parties should not be heard to argue that the August 5 Order forecloses the relief requested
       herein.  For one, the Court did not invite or specify a deadline for responses to the July 31 Status Report prior to
       entry of the August 5 Order.  Moreover, there is no provision of the Bankruptcy Code or the Bankruptcy Rules
       that could have required the Committee to respond to the July 31 Status Report on five days' notice.  In any
       event, the August 5 Order cannot not have mooted or affected the jurisdictional issues raised by this Motion.

[9]    *See* **Exhibit B** ("PREPA's Ortiz Says Renegotiated RSA Unlikely Until Next Year") (emphasis added).

statements demonstrate that the Government Parties are no longer committed to the RSA or the

9019 Motion and that any assertions to the contrary are not credible.

4.      Because there is no longer any settlement with the PREPA bondholders of which

the Government Parties are still seeking approval, the Court should order dismissal of the 9019

Motion for lack of subject matter jurisdiction under the twin doctrines of mootness and ripeness.

To allow the 9019 Motion to remain pending even though the basis for the relief requested no

longer exists would mean that the Court is being asked to render a purely advisory opinion—

which Article III's "case or controversy" requirement does not permit.  The Oversight Board's

statements that it has not made a final decision to terminate the RSA are not evidence of a

remaining case or controversy.  The dispositive question is whether the Government Parties are

going forward with their motion, the answer to which clearly is—and has been for a long time—

a resounding "no."

5.      Even if the Court concludes it still has jurisdiction, it should exercise its discretion

to terminate the current 9019 Motion (without prejudice to the filing of new motion if and when

there is a new agreement with the bondholders or with PREPA's other creditors).  The Court

previously declined to consider the Claim Objection until the 9019 Motion itself is resolved.[10]

Given the status of the RSA, the original rationale for the Court's decision—namely, the

existence of an action and live motion to approve a settlement with the bondholders—no longer

exists.  Accordingly, there is no longer any basis to prevent the Committee from pursuing viable

claim objections, as contemplated by section 502 of the Bankruptcy Code.

6.      Moreover, the Government Parties and the PREPA bondholders benefit from the

pretense that the RSA is still viable.  As explained below, the pretense of a settlement is the only

---

[10]   *See* Docket No. 1855 in Case No. 17-4780.

way that the Oversight Board can obtain control over the claims objection process, a right that—
because Congress did not incorporate section 1106 of the Bankruptcy Code into PROMESA—
they would not otherwise have.  For their part, the PREPA bondholders benefit from the pretense
of a viable RSA because (i) their legal fees get paid while the RSA is in place and (ii) an
indefinite adjournment is their preferred outcome because recent changes in the legal landscape
make clear that it would be suicidal for them to litigate the Claim Objection.  Specifically, the
First Circuit's decision regarding the scope of the ERS bondholders' liens and this Court's even
more recent decision on the preliminary lift stay hearings in HTA show that the Committee has
been prevented by the Government Parties from pursuing meritorious objections.  Those
decisions confirm that the PREPA bondholders do not have even a colorable claim to secured
status beyond *de minimis* amounts held in a particular fund.  Yet the 9019 Motion can only be
justified to the extent it is a reasonable settlement of potentially secured bond claims.  Since the
bondholders' position has been repeatedly and decisively rejected, it is particularly unfair for the
Government Parties to continue to prevent the Committee from pursuing the Claim Objection,
the resolution of which will facilitate the long-delayed progress of this case.

## BACKGROUND

7.      The Government Parties filed the 9019 Motion on May 10, 2019 on an urgent
basis, seeking to settle approximately $8.5 billion in disputed claims pursuant to a restructuring
support agreement (the "RSA") with the PREPA bondholders.  The Government Parties
requested a hearing barely a month after the filing—on June 12, 2019.  The Committee and other
creditors actively opposed the 9019 Motion and, in light of the supposed urgency, litigated the
motion on an expedited basis.

4

8.      Notwithstanding the supposed urgency of the 9019 Motion, the Government
Parties have now adjourned the hearing date many times, resulting in a delay of over fifteen
months.  Even prior to the COVID-19 pandemic, the Government Parties requested as many as
*eleven* adjournments of the hearing on the 9019 Motion.[11]

9.      On March 27, 2020, the Government Parties requested a further adjournment in
"response to the spread of COVID-19."[12]  In light of the public health emergency presented by
COVID-19, the Committee and other parties consented to that request.

10.     Then, on May 15, 2020, the Government Parties sought an indefinite adjournment
of the hearing on the 9019 Motion.[13]  On May 18, 2020, the Committee submitted a response
(the "Committee's Response")[14] to the Government Parties' request, noting that the Government
Parties had failed to say whether they would *ever* be moving forward with the 9019 Motion.  The
Committee therefore asked the Court to terminate the 9019 Motion without prejudice.

11.     On May 22, 2020, the Court entered an order (the "May 22 Order") further
adjourning the hearing on the 9019 Motion over the Committee's objection.[15]  The Court,
however, required the Government Parties to file a further status report by July 31, 2020,
"providing an update on PREPA's financial condition and ***proposing next steps*** with respect to
the 9019 Motion."[16]

---

[11]  *See Eleventh Revised Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement* [Docket No. 1914 in Case No. 17-4780] (D.P.R. Feb. 18, 2020).

[12]  July 31 Status Rep. ¶ 2.

[13]  *Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion* [Docket No. 1992 in Case No. 17-4780].

[14]  *See* Docket No. 1996 in Case No. 17-4780.

[15]  *See* Docket No. 2006 in Case No. 17-4780.

[16]  May 22 Order at 3 (emphasis added).

12.     On July 31, 2020, the Government Parties filed the July 31 Status Report. Notwithstanding this Court's instruction to "propos[e] next steps" regarding the 9019 Motion, the July 31 Status Report contained no additional information beyond the May 15, 2020 Status Report.  Instead, the Government Parties offered to file another status report two months from now, by September 25, 2020, at which "point the Government Parties are ***hopeful*** that they can report on developments regarding their evaluation of the RSA and 9019 Motion."[17]

13.     The Court then entered the August 5 Order, granting the relief requested in the Status Report and instructing the Government Parties to "file a further status report providing an update on PREPA's financial condition and proposing next steps with respect to the 9019 Motion . . . on or before September 25, 2020."[18]

## MOTION TO TERMINATE

**I.     There Is No Longer Subject Matter Jurisdiction Over the 9019 Motion Because Underlying PREPA RSA Is Effectively Defunct**

14.     "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38 (1976) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).  As the Court has noted consistently in these Title III cases, "Article III courts are empowered to hear only actual controversies that are real and substantial [and] admitting of specific relief through a decree of a conclusive character, ***as distinguished from an opinion advising what the law would be upon a hypothetical state of facts***."  *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 582 B.R. 579, 589–90 (D.P.R. 2018),

---

[17]    July 31 Status Rep. ¶ 27 (emphasis added).

[18]    *See* Aug. 5 Order at 2.

*aff'd*, 919 F.3d 121 (1st Cir. 2019), *cert. denied sub nom. Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 140 S. Ct. 855 (2020) (citations omitted) (emphasis added).

15.      Closely related to the "case or controversy" requirement are the "juridicial notions" of ripeness and mootness. *Allen v. Wright*, 468 U.S. 737, 750-51 (1984). "Bankruptcy disputes that become moot are no longer justiciable," *see, e.g.*, *In re Wiley*, 237 B.R. 677, 686 (Bankr. N.D.Ill. 1999); *In re Leslie Fay Companies, Inc.*, 216 B.R. 117, 135-36 (Bankr. S.D.N.Y. 1997), and "disputes that are not sufficiently 'ripe' cannot be determined," and therefore should not be adjudicated. *In re Johnson-Allen,* 871 F.2d 421, 423 (3d Cir. 1988) (subsequent history omitted).

16.      Application of these principles to the 9019 Motion requires its termination. Fifteen months after the 9019 Motion was originally filed (on an urgent basis), there can be no reasonable dispute that the RSA—the agreement underlying the 9019 Motion—is no longer viable in its current form.  PREPA's leadership has openly acknowledged that the agreement will have to be renegotiated—most likely, in 2021 or later.  In these circumstances, the pending 9019 Motion no longer presents an actual settlement for this Court's consideration, and any dispute related to the objections to the 9019 Motion is purely hypothetical and thus outside the jurisdiction of an Article III court.  *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 582 B.R. at 589–90 (D.P.R. 2018) (characterizing as advisory "an opinion advising what the law would be upon a hypothetical state of facts"); *see also In re Parvin*, 538 B.R. 96, 105 (Bankr. W.D. Wash. 2015), *aff'd*, 549 B.R. 268 (W.D. Wash. 2016) ("The issue raised by the Debtor is not now fit for the Court's determination at this time because it assumes uncertain or unknown facts [that have] not occurred and may not occur.  The Court cannot review and determine this issue if the underlying circumstances have not come to pass . . . .").

17.     The Government Parties contended in the July 31 Status Report that "additional
time is required to understand how and if the situation will impact PREPA and to what extent *(if
any)* they should seek to amend the RSA".[19]  This statement, however, is not credible in light of
the overwhelming publicly-available evidence that the RSA is already no longer viable in its
current form.[20]  This evidence includes that:

- Despite initially requesting an urgent hearing on the 9019 Motion, the
  Government Parties subsequently sought numerous postponements of the hearing,
  obtaining a total of *eleven* such adjournments even before the ongoing COVID-19
  global pandemic.  While unforeseen developments may cause limited requests for
  adjournments, requests that number in double digits and seek a combined delay of
  over a year (and, now, an indefinite delay) strongly suggest that the Government
  Parties are reluctant to proceed with their own settlement.

- In the meantime, Puerto Rico legislators have made numerous public statements
  that the legislative approvals necessary to implement the PREPA RSA on its
  current terms will not be forthcoming.[21]

- PREPA's leading officials themselves have openly stated that the PREPA RSA, in
  its current form, is effectively dead.  For example, PREPA's former Executive
  Director Jose Ortiz stated last month at a high-profile industry conference that the
  COVID-19 pandemic has opened "all the doors to rethink" the PREPA RSA, that
  the delay in the hearing on the 9019 motion is "very important" because it is
  "very positive to have a correct negotiation," and that "it may be better to move
  [the PREPA RSA] discussion to next year, and then we'll see the real effects in
  the long-term Covid-19 in Puerto Rico."  These statements by the then-head of
  PREPA effectively acknowledge that there is no meaningful—or even viable—
  settlement agreement right now.[22]

- The director of PREPA's project management office and fiscal affairs and
  restructuring administrator, Fernando Padilla, made similar statements at the same
  industry conference, as did Natalie Jaresko, the Executive Director of the
  Oversight Board.  Mr. Padilla stated that PREPA was "renegotiate[ing]" the

---

[19]   July 31 Status Rep. ¶ 25 (emphasis added).

[20]   In any event, even if taken at face value, the Government Parties' admission that "additional time" of several
months is required simply "to understand *if* the [ongoing] situation" will necessitate the amendment of the RSA
and the extent of that amendment only demonstrates that, at present, there is no active case or controversy
regarding the RSA—and that one may not materialize for at least several months (and even then, only with
respect to a substantially modified RSA).

[21]   Comm.'s Resp. ¶ 3.

[22]   *Id.*

RSA.[23]  And Ms. Jaresko, in response to criticism of the RSA, stated that "I'm not saying that the RSA is feasible today.  We're still evaluating."[24]  When a party states that it is evaluating the feasibility of a deal, there is, in reality, no deal at all until the evaluation has been completed.

- The Government Parties recently agreed that they will not confirm a plan of adjustment that is not "reasonably acceptable" to the operator under PREPA's recently announced T&D Contract in connection with its proposed privatization of PREPA.  This promise makes no sense if the Government Parties have already decided to move forward with the plan contemplated by the PREPA RSA.[25]

18.    These developments demonstrate beyond doubt that whatever plan of adjustment may ultimately be proposed and whatever settlement (with the bondholders or with other creditors) may ultimately be negotiated, it will not be based on the settlement embodied in the RSA and that forms the basis of the current 9019 Motion.  In addition to the foregoing, the Committee reserves the right to seek discovery in support of this Motion and believes such discovery will further demonstrate that the RSA no longer exists.

19.    Under these circumstances, where the settlement forming the basis for the 9019 Motion is effectively dead, the Court's consideration of the 9019 Motion is precluded by the related doctrines of mootness and ripeness.  A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *City of Erie v. Paps A.M.*, 529 U.S. 277, 277 (2000) (internal quotation marks and citations omitted).  The 9019 Motion is moot because the PREPA RSA, in its current form, is indisputably no longer viable, and the parties thereto "plainly lack a continuing interest" in its approval as it currently exists. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).  It matters not

---

[23]    *See* **Exhibit C** ("Jaresko Says PREPA RSA Still Under Evaluation During Pause, Stresses Importance of 'Consensual' Move to Title III Exit to Curb Court Risks").

[24]    *Id.*

[25]    For the avoidance of doubt, the Committee does not concede that granting the operator this effective veto right over PREPA's plan of adjustment is appropriate or should be approved by the Court, and reserves all rights.

that the Oversight Board is "hopeful" of soon recommencing negotiations with the bondholders or that it believes the issues in dispute should be settled and not litigated, because no issue is "live" for the Court's consideration until a new, viable RSA materializes.  As the Supreme Court admonished, "unadorned speculation will not suffice to invoke the federal judicial power."  *Simon*, 426 U.S. at 45 (finding lack of standing where the prospect of the judicially-sought decision affording actual relief was "speculative").

20.     The 9019 Motion is also not ripe for the Court's consideration.  The ripeness analysis involves an inquiry into "'the extent to which resolution of the challenge depends on facts that may not yet be sufficiently developed.'"  *McInnis-Misenor v. Maine Medical Ctr.*, 319 F. 3d 63, 70 1st Cir. 2003) (quoting *Stern v. U.S. Dist. Court*, 214 F. 3d 4, 10 (1st Cir.2000)) (additional citation omitted).  In this inquiry, the "critical question" is "'whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all.'"  *McInnis-Misenor*, 319 F.3d at 70 (quoting *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F. 3d 530, 536 (1st Cir.1995)) (additional citation omitted).  The Government Parties are unable to propose any definitive timeframe for consideration of the 9019 Motion.  In fact, the Government Parties offer nothing more than the mere "hope" that, in two months, they may have more information to share with the Court.[26]  However, the Government Parties cannot bring themselves to represent that they support their own motion.  A matter "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or may not occur at all."  *In re Montgomery*, Nos. 12-70879-BHL-13, 14-57007, 2015 Bankr. LEXIS 1470, at *2-4 (Bankr. S.D. Ind. Apr. 28, 2015); *see also Ernst & Young*, 45 F.3d at 537 ("if a

---

[26]     July 31 Status Rep. ¶ 27.

plaintiff's claim . . . depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe").

21.     The undeniable reality is that the settlement embodied by the current RSA no longer exists and will be renegotiated in 2021, at the earliest.  Because the current RSA is not viable, the constitutional underpinnings for the Court's jurisdiction no longer exist.  Accordingly, unless the Government Parties represent unequivocally prior to a ruling on this Motion that they will immediately prosecute their motion, the Court should terminate the 9019 Motion (without prejudice to a new motion to approve a new settlement).  *See Warth v. Seldin*, 422 U.S. 490, 516-17 (1975) (where the proposed project no longer "remained viable," the court lacked subject matter jurisdiction because there was no "injury … of sufficient immediacy and ripeness to warrant judicial intervention").

## II.     Court Should Exercise Discretion to Terminate 9019 Motion

22.     Even if the Court determines that it has subject matter jurisdiction over the 9019 Motion, it should exercise its discretion and terminate the 9019 Motion.  The 9019 Motion has now been pending for well over a year, the Government Parties (well before the COVID-19 crisis) have repeatedly adjourned the hearing date, and there is no basis to conclude that the RSA remains viable in its current form.  In these circumstances, the Committee respectfully submits that the Court should terminate the 9019 Motion, so as to avoid holding PREPA's bankruptcy case in indefinite limbo.

23.     If the Court instead allows the 9019 Motion to remain pending (but inactive), the Committee (and potentially other parties) will be significantly prejudiced.  As the Court is aware, in 2019, the Committee filed its Claim Objection, which the Court terminated without prejudice pending resolution of the 9019 Motion.  If the Oversight Board is permitted to postpone

consideration of the 9019 Motion indefinitely, the Claim Objection will have been *de facto*

denied without a hearing on the merits or, even, resolution through a non-consensual settlement,

effectively abrogating the Committee's rights under section 502 of the Bankruptcy Code.[27]

While the Court unquestionably has the ability to control its docket, there is no justification for

limiting the statutory rights of the Committee and other parties in this manner simply because the

possibility exists that at some point in the future the Government Parties **may** have a settlement

to present to the Court for approval.

24.     Moreover, both the Government Parties and the PREPA bondholders benefit from

the *status quo* in ways that indicate their motivation for keeping the 9019 Motion on life support

indefinitely is something other than the "hope" of a new settlement at some future point,[28] and

that demonstrate that the numerous adjournment requests are really *de facto* motions to stay the

Claim Objection and obtain a result that is neither legal nor equitable.  For the Oversight Board,

the pretense of a viable and active settlement allows the Oversight Board to control the claims

objection process beyond what Congress intended.  Section 704 of the Bankruptcy Code requires

a chapter 7 trustee to review and, where appropriate, object to claims.  Section 704 is made

applicable to chapter 11 by section 1106(a) of the Bankruptcy Code, which similarly requires the

debtor in possession (or, if one has been appointed, a chapter 11 trustee) to object to claims

where appropriate.[29]  The provisions have led certain courts to hold, in cases under chapter 7 or

---

[27]   The Committee has appealed this Court's termination decision to the First Circuit.  So as to avoid any
jurisdictional cloud over the appeal, the Committee has agreed to hold its appeal in abeyance pending this
Court's resolution of the 9019 Motion and, together with the Government Parties, the Committee filed a joint
motion seeking abeyance, which the First Circuit granted.  *See* Order, *Official Comm. of Unsecured Creditors v.
PREPA,* No. 20-1122 (1st Cir. Jun. 2, 2020).

[28]   To be clear, even if the vague hope that there may be a deal at some future, indeterminate, point was the
Oversight Board's only motivation, the Court should not allow the Oversight Board to keep the 9019 Motion on
permanent life support fifteen months after the motion was originally filed, and should terminate the motion
without prejudice of renewal in the event these vague hopes are ever realized.

[29]   The First Circuit has explained that, in doing so, section 1106 imposes a chapter 7 "trustee's fiduciary duties"
on a debtor in possession.  *See Braunstein v. McCabe*, 571 F.3d 108, 124 (1st Cir. 2009).

chapter 11 of the Bankruptcy Code, that the trustee (or debtor in possession) has the exclusive right to prosecute claim objections.

25.     Because section 1106 is not incorporated into chapter 9 of the Bankruptcy Code or into PROMESA, however, the Oversight Board does not have "all the rights [and] responsibilities of a trustee," *In re Cty. of Orange*, 219 B.R. 543, 557 (Bankr. C.D. Cal. 1997), including, as relevant here, control over the claims objection process.  Therefore, the only way for the Oversight Board to obtain this control is through the pretense of a settlement.[30]

26.     The pretense of a settlement also benefits the PREPA bondholders.  For one, as long as they pretend the RSA remains operative, their professional fees are subject to reimbursement by PREPA under the RSA.[31]

27.     More importantly, the legal landscape has dramatically changed since the 9019 Motion was filed, and these changes demonstrate beyond any doubt that the Committee and the other objectors have meritorious objections to the bondholders' claims.  Specifically, on January 30, 2020, the First Circuit issued its opinion affirming this Court's ruling that certain ERS bondholders did not have an enforceable security interest in future contributions to the ERS retirement system.[32]  In that opinion, the First Circuit explained, at length, that the ERS

---

[30]     Moreover, PROMESA was clearly drafted to ensure that the official creditors' committee has an active role in a title III case.  In the *Detroit* bankruptcy case, the bankruptcy court noted that, even though it is incorporated into chapter 9 through Bankruptcy Code section 901, the requirement in section 1102(a)(1) of the Bankruptcy Code that the "United States trustee shall appoint" an official creditors' committee only applies "after the order for relief under chapter 11 of this title," and held, therefore, that appointment of an official committee of unsecured creditors was not mandatory in a chapter 9 bankruptcy.  *See In re City of Detroit, Mich.*, 519 B.R. 673, 677 (Bankr. E.D. Mich. 2014).  In contrast, section 301 of PROMESA, which similarly incorporates section 1102 of the Bankruptcy Code, provides that the words "Chapter 11" shall be "deemed to be a reference to this title," thereby making clear that the appointment of an official committee of unsecured creditors is mandatory in a case under Title III of PROMESA.

[31]     As the Court is aware, the fee examiner appointed in these cases has objected to the indefinite and unsupervised payment of these fees.  *See Limited Objection and Reservation of Rights by the Fee Examiner with Respect to the PREPA/AAFAF Rule 9019 Motion for PREPA RSA Approval* [Docket No. 9065 in Case No. 17-3283].

[32]     *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 19-1699, 2020 WL 486163, at *1 (1st Cir. Jan. 30, 2020).

bondholders could not have a security interest in funds that, as of the petition date, were future and yet-to-be calculated, explaining that "it is impossible to have a lien on something that does not exist."

28.     The impact of the First Circuit's ruling on the viability of the PREPA bondholders' claims cannot be overstated.  Basic principles of bankruptcy law dictate that claims are determined as of the petition date, which means that the PREPA bondholders' claims (which are non-recourse) would be limited to the approximately $8.8 million in prepetition funds held in accounts in which the bondholders have a security interest.[33]

29.     Even more recently, this Court ruled that HTA bondholders that asserted a lien in certain revenues even before they were deposited in the accounts subject to their security agreement "failed to establish a colorable claim to equitable or beneficial ownership of Revenues that have not been deposited with the Fiscal Agent as contemplated by the Bond Resolutions."[34] This is fatal to the broad liens asserted by PREPA bondholders, whose security interest similarly attaches only once funds are actually deposited in a specific "Sinking Fund."  Indeed, the HTA Trust Agreement is essentially identical in all relevant aspects to the PREPA Trust Agreement; for example, Sections 401 and 601 of the HTA Bond Resolutions (which were the focus of the

---

[33]   To avoid this outcome, the PREPA bondholders argue that they have a security interest in PREPA's future stream of revenues and that such security interest (somehow) existed, and was perfected, as of the petition date. However, this argument is precisely the argument rejected by the First Circuit: because it is impossible to have a lien on something that does not yet exist, there can be no current lien against not yet existing revenues.  Nor can PREPA's future revenues be characterized as the proceeds of a current right to receive those revenues because PREPA's future revenues are entirely dependent on its future sales of electricity, which amount was incapable of being determined as of the petition date (and remains indeterminable).  Moreover, section 928 of the Bankruptcy Code would, at best, only allow the non-recourse bondholders to continue to become perfected in post-petition revenues that are actually collected and deposited into the specified accounts in which the bondholders have a security interest—and even then only on a net basis.  Nothing in section 928, however, serves to accelerate the creation and attachment of these liens in future earnings.  There is, therefore, no basis to allow the non-recourse bondholders to recover anything in excess of that amount, let alone original issue discount, which is disallowed by the Bankruptcy Code, or payment of professional fees, which is available only to oversecured creditors.

[34]   *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17 BK 3283-LTS, 2020 WL 3816135 (D.P.R. July 2, 2020).

Court's determination that the HTA movants had failed to establish even a colorable claim of a security interest in the revenues at issue) are in all relevant respects identical to Sections 507 and 701 of the PREPA Trust Agreement. The Court's ruling in the HTA lift-stay matter is, therefore, dispositive of the issues presented by the Claim Objection: Just as the HTA bondholders did not have even a "colorable" claim to secured status, neither do the PREPA bondholders (expect as to the very limited amounts in the Sinking Fund). Accordingly, it is unsurprising that the PREPA bondholders are willing to play along with the Oversight Board's fiction that the RSA is still viable, as they only gain by avoiding this Court's scrutiny of the RSA (which, they know, would never be approved in light of these developments).

30.     Finally, allowing the 9019 Motion to remain pending could establish a dangerous precedent in future cases, as it would encourage debtors who wish to exert exclusive control over the allowance or disallowance of certain claims to enter into (never prosecuted) "settlements" early in the case for the purpose of "occupying the field" indefinitely.

31.     For all of these reasons, the Court should not permit the Government Parties to continue to suppress the Committee's statutory rights to pursue its meritorious Claim Objection under section 502 of the Bankruptcy Code.[35] The Committee has the right to a resolution of its Claim Objection, and the Court should exercise its discretion to terminate the 9019 Motion so the Committee's objection can move forward.

---

[35]   The Committee anticipates that the Government Parties will claim that allowing the Committee to proceed with its claim objection will hinder settlement negotiations with the PREPA bondholders. That claim is irrelevant and, also, implausible. For one, the Government Parties have already conceded that they are not engaged in discussions with the bondholders. More importantly, fifteen months after the 9019 Motion was filed, it is clear that the parties do not feel any great urgency or pressure to settle, and the Committee's claim objection is likely to result in increased settlement negotiations (after all, it could hardly lead to less). Indeed, this is precisely the role the Committee is supposed to play.

WHEREFORE, the Committee respectfully requests that the Court terminate the 9019 Motion without prejudice to the Government Parties renewing such motion at a later time and grant such other relief as the Court deems just and proper.

Dated: August 18, 2020

By: */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*