# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF Nos. 2050, 2055, 2067, 2100, 2117** |

**PREPA'S OMNIBUS REPLY TO OBJECTIONS TO
PREPA'S URGENT MOTION FOR ENTRY OF AN ORDER
(A) AUTHORIZING PREPA TO REJECT CERTAIN POWER PURCHASE AND
<u>OPERATING AGREEMENTS AND (B) GRANTING RELATED RELIEF</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................. 2
LEGAL STANDARD.................................................................................................................... 3
ARGUMENT .................................................................................................................................. 5
   a. Objectors' Allegations Regarding PREPA's Conduct Are Inaccurate and, More Importantly, Irrelevant ................................................................................................... 5
   b. The Objectors' Attempts to Obfuscate the Standard for Rejection by Alleging "Bad Faith, Whim, or Caprice" Fails .................................................................................... 7
   c. The Rejection Motion Does Not Seek to Preclude Rejection Damage Claims .................... 9
   d. The Court Has Already Determined That Issues Regarding General Energy Policy Are Irrelevant to Assumption or Rejection of Contracts ..................................................... 10
   e. An Evidentiary Hearing Is Not Appropriate ......................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.)*,
360 F.3d 291 (1st Cir. 2004) ................................................................................................6

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
432 F. Supp. 3d. 25 (D.P.R. 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020) ....................................4

*In re Genco Shipping & Trading Ltd.*,
509 B.R. 455 (Bankr. S.D.N.Y. 2014) ..................................................................................3

*In re Malden Brooks Farm LLC*,
435 B.R. 81 (Bankr. D. Mass. 2010) ....................................................................................8

*In re Miller*,
No. 15-61159-12, 2016 WL 1316763 (Bankr. D. Mont. Apr. 1, 2016) .................................7

*In re Mirant*,
378 F.3d 511 (5th Cir. 2004) ...............................................................................................10

*In re Noranda Aluminum, Inc.*,
549 B.R. 725 (Bankr. E.D. Mo. 2016) ..............................................................................8, 9

*In re Old Carco LLC*,
406 B.R. 180 (Bankr. S.D.N.Y. 2009) ..................................................................................4

*In re Pilgrim's Pride Corp*,
403 B.R. 413, 425 (Bankr. N.D. Tex. 2009) .......................................................................10

*In re Pomona Valley Med. Grp., Inc.*,
476 F.3d 665 (9th Cir. 2007) ................................................................................................7

*In re Trans World Airlines, Inc.*,
261 B.R. 103 (Bankr. D. Del. 2001) ...............................................................................4, 11

*In re Vent Alarm Corp.*,
No. 15-09316-MCF11, 2016 WL 1599599 (Bankr. D.P.R. Apr. 18, 2016) ...................3, 11

*In re Wheeling–Pittsburgh Steel Corp.*,
72 B.R. 845 (Bankr. W.D. Pa. 1987) ..............................................................................4, 11

*NLRB v. Bildisco & Bildisco*,
465 U.S. 513 (1984) ............................................................................................................10

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
   4 F.3d 1095 (2d Cir. 1993) ................................................................................................3, 5

**STATUTES**

2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993) ..................................................................3

3 Collier on Bankruptcy ¶ 365.03[2]) ..........................................................................................7

11 U.S.C. § 365 ............................................................................................................................3

11 U.S.C. § 365(a) .......................................................................................................................3

16 U.S.C. § 824(b)(1) ................................................................................................................10

48 U.S.C. §§ 2101-2241 .............................................................................................................1

PROMESA § 301 .........................................................................................................................3

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[3] respectfully submits this omnibus reply (the "Reply") to each of (i) the *Limited Objection and Reservation of Rights of Tradewinds Energy to Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief*, [ECF No. 2067] (the "Tradewinds Objection"), filed by Tradewinds Energy, LLC ("Tradewinds"); (ii) the *Objection of GS Fajardo Solar LLC to Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief*, [ECF No. 2100] (the "GS Fajardo Objection") filed by GS Fajardo Solar ("GS Fajardo"); and (iii) the *Limited Objection and Reservation of Rights of GG Alternative Energy Corp to Omnibus Motion of Puerto Rico Electric Power Authority For Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief (Dockets Entry #2050, #2055)* [ECF No. 2117] (the "GG Alternative Objection"), and together with the GS Fajardo Objection and the Tradewinds Objection, the "Objections"), filed by GG Alternative Energy Corp ("GG Alternative," collectively with Tradewinds and GS Fajardo, the "Objectors"). In further support of the Motion and this Reply, PREPA respectfully represents as follows:

---

[3] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

1

## PRELIMINARY STATEMENT[4]

1. Of the 27 PPOAs PREPA seeks to reject through the Rejection Motion, three counterparties filed objections. One of these, the Tradewinds Objection, is a limited objection essentially reserving rights to assert a rejection damage claim, and objects to the Rejection Motion "solely to the extent that it purports to determine that PREPA can terminate the Tradewinds PPOAs without liability." Tradewinds Limited Objection ¶ 6. The other two objections, the GS Fajardo and GG Alternative Objections, acknowledge the deferential business judgment standard governing PREPA's decision to reject PPOAs, but nevertheless assert allegations of misconduct with respect to their PPOAs – but not the other 24 – they argue should prevent rejection. GS Fajardo Objection ¶ 4; GG Alternative Objection ¶ 1.

2. The Court should overrule the Tradewinds Objection because the Rejection Motion does not seek any finding or ruling that PREPA can terminate or reject any of the PPOAs without liability, and in fact the Proposed Order provides for a bar date for the submission of rejection damage claims. The Court should overrule the GS Fajardo Objection and the GG Alternative Objection because PREPA has concluded the Rejected Contracts are burdensome for the reasons set forth in the Rejection Motion and the Padilla Declaration, and their rejection reflects the considered judgment of PREPA and the Oversight Board. Any allegation that PREPA failed to perform under the Rejected PPOAs, including the GS Fajardo or GG Alternative contracts, is irrelevant to the question of PREPA's business judgment in deciding to reject them and not an indication of bad faith in doing so.[5]

---

[4] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in *Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief*, [ECF No. 2050] (the "Rejection Motion").

[5] No facts or arguments have been introduced that rejection of the twenty-four Rejected PPOAs that are not subject to any of the Objections was made in bad faith, whim or caprice, and, at a minimum, the Court should grant the Motion with respect to those Rejected PPOAs.

3. Ultimately, PREPA and the Oversight Board have reasonably concluded that the Rejected PPOAs, including those of the Objectors, are burdensome contracts because the projects are not close to being ready to generate power for sale to PREPA, and if they ever were ready, the resulting cost for power exceeds current market prices for power from similar sources, and will thus lead to unnecessarily higher rates to PREPA's customers. The Objectors do not refute these facts. Rejection of all of the Rejected PPOAs, including those of Tradewinds, GS Fajardo, and GG Alternative, is therefore appropriate.

## LEGAL STANDARD

4. Under Bankruptcy Code section 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a); PROMESA § 301 (incorporating 11 U.S.C. § 365). Section 365 of the Bankruptcy Code is intended to permit the trustee or debtor in possession to use valuable property of the estate and to "'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

5. In light of this purpose, rejection of an executory contract is subject to review under the business judgment rule. Under this standard, "a debtor must simply put forth a showing that assumption or rejection of the executory contract or unexpired lease will benefit the Debtor's estate." *In re Vent Alarm Corp.*, No. 15-09316-MCF11, 2016 WL 1599599, at *3 (Bankr. D.P.R. Apr. 18, 2016). "A court will generally not second-guess a debtor's business judgment regarding whether the assumption or rejection of a contract will benefit the debtor's estate." *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014). Significantly, the "scope of [a court's] inquiry regarding the business judgment standard . . . does not include an evaluation of whether the Debtors made the best or even a good business decision but merely that the decision

3

was made in an exercise of the Debtors' business judgment." *In re Old Carco LLC*, 406 B.R. 180, 196 (Bankr. S.D.N.Y. 2009); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'") (quoting *In re Wheeling–Pittsburgh Steel Corp.*, 72 B.R. 845, 849-50 (Bankr. W.D. Pa. 1987)).

6. As Objectors recognize, the business judgment standard is "liberal" and "deferential." GS Fajardo Objection ¶¶ 4, 30. This deference is greater in a case under Title III. As the Court and the First Circuit have previously recognized, "unlike the commercial focus of bankruptcy cases of private entities, the 'primary purpose' of governmental insolvency proceedings 'is not future profit, but rather continued provision of public services.'" *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d. 25, 30-31 (D.P.R. 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020). Under PROMESA, the Oversight Board is the entity responsible for developing a "holistic approach" to Title III proceedings and, in doing so, is afforded "substantial deference" in making decisions regarding a debtor's affairs and economic futures, including "ensuring provision for public services…that are in the interest of the economic future of the Commonwealth, its residents, and its instrumentalities." *Memorandum Opinion and Order Denying Motion for Appointment As Trustees Under 11 U.S.C. § 926 of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* [Case No. 17-bk-03283; ECF No. 14012] at 10-11.

# ARGUMENT

### A. Objectors' Allegations Regarding PREPA's Conduct Are Inaccurate and, More Importantly, Irrelevant

7. PREPA strongly disputes the contentions of GG Alternative and GS Fajardo that PREPA's decision to reject their PPOAs is a product of bad faith as a result of allegations that, at most, describe potential pre-rejection breaches of contract. *See* GS Fajardo Objection ¶ 34; GG Alternative Limited Objection ¶ 19. Those allegations, however, have no relevance to the Rejection Motion. The Court's role with respect to a motion to assume or reject an executory contract is not to act as an "arbiter of a disputes between a creditor and a debtor." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4F.3d 1095, 1099 (2d Cir. 1993). Rather, the court acts as an "overseer of wisdom" to whether the contract is burdensome or beneficial to the estate or, in the context of a Title III case, the debtor. *Id.* ("a bankruptcy court reviewing a trustee's or debtor in possession's decision to assume or reject an executory contract should examine [the] contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it"): *see also Memorandum Opinion Regarding PREPA's Urgent Motion for Entry of an Order Authorizing PREPA to Assume Certain Contracts with Ecoeléctrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A.* at 17-18 (ECF No. 13471) (the "*EcoEléctrica Opinion*") (holding that the standard is "a debtor must simply put forth a showing that assumption or rejection of the executory contract or unexpired lease will benefit the Debtor's estate" and that a benefit to PREPA satisfied this standard in Title III, where there is no estate).

8. More specifically, the allegations of GG Alternative and GS Fajardo regarding the history and renegotiation of the PPOAs in no way refute that all of the PPOAs subject to the Rejection Motion, including those of the Objectors, are burdensome to PREPA and its customers.

5

The Objections do not refute PREPA's contention that "none of the projects under the Rejected PPOAs would be ready to supply cost-effective energy to PREPA in the near-term." Padilla Declaration [ECF No. 2051] ¶ 6. Nor do the Objectors contend they have "nearly completed their development activities" or "confirmed willingness and potential ability to commence construction in the relatively near term," the standard PREPA has reasonably used to identify projects for its renegotiation efforts. *Id.* ¶ 2. Finally, neither GG Alternative nor GS Fajardo refutes PREPA's business judgment in seeking prices for renewable energy it could obtain in the current market environment to which neither of them are willing to agree.

9. This Court has previously stated that "[b]y permitting debtors to shed disadvantageous contracts but keep beneficial ones, § 365 advances one of the core purposes of the Bankruptcy Code: to give worthy debtors a fresh start." *See EcoEléctrica Opinion* at 12-13 (quoting *Eagle Ins. Co. v. BankVest Capital Corp. (In re BankVest Capital Corp.)*, 360 F.3d 291, 296 (1st Cir. 2004)).

10. Upon review and analysis of PREPA's obligations under the Rejected PPOAs, PREPA and the Oversight Board have each concluded that the relief requested in this Motion is in the best interests of PREPA and its customers because, as set forth in the Padilla Declaration, not only do all of the Rejected PPOAs provide for energy at rates that are above-market, in the years since execution of the Rejected PPOAs, most of the counterparties have not achieved any meaningful progress toward project completion. Padilla Declaration [ECF No. 2051] ¶¶ 6, 8. Both of these issues apply to the PPOAs with GG Alternative and GS Fajardo, and these grounds are more than sufficient to justify PREPA's business judgment that these PPOAs should be rejected.

### B. The Objectors' Attempts to Obfuscate the Standard for Rejection by Alleging "Bad Faith, Whim, or Caprice" Fails

11. While PREPA disputes the characterization of its actions, the Objectors' allegations do not constitute "bad faith" for purposes of a rejection motion. Even if the allegations of GG Alternative and GS Fajardo were true (and they are not), they wrongfully attempt to conflate allegations of prepetition bad faith with whether PREPA's decision to reject the PPOAs *now* is made in bad faith. Indeed, even assuming *arguendo* that Objectors' contentions had any merit, PREPA's actions would, at most, constitute pre-rejection breaches of the PPOAs that might give rise to an unsecured prepetition claim for contract damages. They would not, however, constitute bad faith in connection with PREPA's decision to reject these PPOAs or grounds to justify this Court's rejection of PREPA's business judgment.

12. Courts are highly deferential to the business judgment of the debtor, and "should presume that the debtor in possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007). Bad faith, whim, or caprice should only be found when the "conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment." *Id.* Alleged bad faith, whim, or caprice that is unrelated to the decision to reject, including prepetition conduct related to the contracts, even if it rises to the level of a breach, is irrelevant to the question of the debtor's business judgment in deciding to reject. Moreover, any "adverse effects on the other contract party is not relevant unless the effect is so disproportionate to the estate's prospective advantage that it shows rejection could not be a sound exercise of business judgment." *In re Miller*, No. 15-61159-12, 2016 WL 1316763, at *4 (Bankr. D. Mont. Apr. 1, 2016) (quoting 3 Collier on Bankruptcy ¶ 365.03[2]).

7

13. Far from "whim or caprice," PREPA's determination to reject the PPOAs has undergone a process beginning nearly seven years ago to evaluate its PPOAs. In addition to PREPA's own process, PREPA's decision to reject the PPOAs has been supplemented with additional level of review as the Oversight Board also considered the potential benefits and burdens of the PPOAs and concluded that rejection was appropriate in this instance.

14. The Objectors' arguments that PREPA has not properly detailed its process or procedure of evaluating the PPOAs in determining to reject the contracts does not establish that the decision was not sound business judgment or was the product of "bad faith, whim, or caprice." "There is no requirement that the debtor lay out the procedure it undertook in making the decision to reject." *In re Malden Brooks Farm LLC*, 435 B.R. 81, 83 (Bankr. D. Mass. 2010). A debtor's conclusion that a contract is not beneficial to the estate because its terms are inconsistent with the current market for similar contracts is "sufficient indication that the debtor's decision to reject was not in bad faith or a gross abuse of its business discretion." *Id.* (allegation that purchase price in prepetition purchase contract for debtor's real estate was less than fair value was sufficient to overcome allegation of bad faith in debtor's decision to reject).

15. GS Fajardo's argument that rejecting the contract creates a bad business precedent (GS Fajardo Objection ¶¶ 55–56) is similarly irrelevant and without merit. The business judgment test "concerns the benefit to the estate of rejecting the burdensome contract; it does not consider the interests of the counterparty to the contract being rejected." *In re Noranda Aluminum, Inc.*, 549 B.R. 725, 733 (Bankr. E.D. Mo. 2016) (finding that the loss of over 575 jobs was "unfortunate," but not relevant to the rejection motion or evidence of bad faith).

16. GS Fajardo also contends that rejection will prevent PREPA from obtaining contracts with other energy providers. PREPA is under no obligation to identify alternative third-

8

parties that will replace GS Fajardo and the other counterparties or even establish that it will be able to secure an alternate agreement. *Id.* (finding that the debtor had satisfied the business judgment standard for rejection "even if that agreement is not replaced by another customer agreement" and "regardless of whether [the debtor] is able to secure an alternate agreement"). PREPA's alleged inability to procure renewable energy at a lower price cannot be considered bad faith, so long as the decision to reject the PPOAs is "based on the fact that they are an unprofitable burden on the estate." *Id.*

17. By rejecting the contracts, PREPA will be able to avoid being locked into buying renewable energy at above market prices that would have to be passed onto ratepayers, and will have the opportunity to negotiate new contracts at a lower cost for the generated power to the extent it is necessary and beneficial.

### C. The Rejection Motion Does Not Seek to Preclude Rejection Damage Claims

18. Arguments going to whether the clauses of the PPOAs permitting PREPA to terminate "without further liability" have been triggered are also outside the scope of inquiry in this matter because they go to the size of the claim, not whether rejection is appropriate. *See Noranda Aluminum,* 549 B.R. at 732–33 (The potential size of rejection damages claims are not a relevant factor for consideration even if the size of debt due unsecured creditors is increased by rejection.). The Proposed Order expressly preserves the rights of all PPOA counterparties to assert rejection and other contract damages claims and would establish a bar date for filing such claims consistent with this Court's prior orders on claims bar dates.[6] The merits of contract claims

---

[6] "Any claims based on the rejection of the Rejected PPOAs, if any, must be filed on or before 4:00 p.m. (Atlantic Standard Time) on the first business day that is thirty-five (35) calendar days after the entry of the Order by the Court authorizing such rejection." Proposed Order ¶ 6.

relating to the Rejected PPOAs should be litigated in conjunction with a potential claim objection, not the Rejection Motion.

### D. The Court Has Already Determined That Issues Regarding General Energy Policy Are Irrelevant to Assumption or Rejection of Contracts

19. There is no basis for application to the Rejection Motion of any standard other than business justification because there is no Federal or Commonwealth policy that would be circumvented by the Court's approval of rejection of the Rejected Contracts. The PPOAs PREPA seeks to reject are not contracts for the transmission or sale of electric energy in interstate commerce and hence are not subject to FERC's jurisdiction under the Federal Power Act. *See* 16 U.S.C. § 824(b)(1). Further, no approval by the Puerto Rico Energy Bureau is required for termination of the contracts. *Cf. NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) and *In re Mirant*, 378 F.3d 511 (5th Cir. 2004). As this Court has recognized, public impact alone does not justify application of a heightened standard of review and there is no support for the argument that energy supply is "a general category requiring heightened scrutiny." *EcoEléctrica Opinion* at 16.

20. Further, GS Fajardo's arguments that the Rejection Motion implicates energy policy necessarily relies on the combined effect of PREPA's rejection of all 27 PPOAs. But GS Fajardo is only counterparty to a single contract. The other counterparties each received notice and have not objected to rejection. GS Fajardo should not be permitted to effectively appoint itself as representative for those counterparties and force PREPA to assume burdensome PPOAs in which it holds no interest.

21. As this Court has previously recognized, consideration of public policy concerns is a vast undertaking, and as such, is neither necessary nor appropriate in consideration of the Rejection Motion. *EcoEléctrica Opinion* at 13 (*quoting In re Pilgrim's Pride Corp.*, 403 B.R. 413, 425 (Bankr. N.D. Tex. 2009) ("If the bankruptcy court must second-guess every choice by a

10

trustee or debtor in possession that may economically harm any given locale, the business judgment rule applicable to contract rejection and many other decisions in the chapter 11 process will be swallowed by a public policy exception.").

### E. An Evidentiary Hearing Is Not Appropriate

22. A motion to assume or reject an executory contract is "a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." *In re Vent Alarm Corp.*, No. 15-09316-MCF11, 2016 WL 1599599, at *3 (Bankr. D.P.R. Apr. 18, 2016); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'") (quoting *In re Wheeling–Pittsburgh Steel Corp.*, 72 B.R. 845, 849-50 (Bankr. W.D. Pa. 1987)).

23. Here, PREPA has met its burden by demonstrating that the PPOAs are burdensome, and that there is a benefit to the debtor and its customers in rejecting those contracts. Indeed, none of the Objectors has presented any argument or evidence that their contracts with PREPA are not burdensome to PREPA or its ratepayers or that their contractual pricing is not materially above current market prices for renewable energy. It would therefore not be an efficient use of the Court's limited time and resources to grant an evidentiary hearing on this summary matter.

## CONCLUSION

24. For the reasons set forth herein and the Rejection Motion, each of the Objections should be overruled and the Rejection Motion should be granted.

WHEREFORE, PREPA respectfully requests the Court (1) overrule the Objections and (2) enter the Proposed Order (a) granting the Rejection Motion, (b) authorizing PREPA to reject the Rejected PPOAs, and (c) granting PREPA such other relief as is just and proper.

| | |
|---|---|
| Dated: August 18, 2020<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Paul V. Possinger*<br>Martin J. Bienenstock (*pro hac vice*)<br>Paul V. Possinger (*pro hac vice*)<br>Ehud Barak (*pro hac vice*)<br>Daniel S. Desatnik (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*<br><br>**LUIS F. DEL VALLE-EMMANUELLI**<br><br>*/s/ Luis F. del Valle-Emmanuelli*<br>Luis F. del Valle-Emmanuelli<br>USDC-PR No. 209514<br>P.O. Box 79897<br>Carolina, Puerto Rico 00984-9897<br>Tel. 787.647.3503<br>Fax N/A<br>dvelawoffices@gmail.com<br><br>OF COUNSEL FOR<br>A&S LEGAL STUDIO, PSC<br>434 Avenida Hostos<br>San Juan, PR 00918<br>Tel. (787) 751-6764/763-0565<br>Fax (787) 763-8260<br><br>*Co-Attorney for the Financial Oversight and Management Board as representative of the Debtor* |