UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

MEMORANDUM ORDER DENYING MOTION REQUESTING
ALLOWANCE OF POST PETITION TORT CLAIM AS PRIORITY CLAIM PURSUANT TO
THE FUNDAMENTAL FAIRNESS DOCTRINE IN *READING CO. V. BROWN*, 391 U.S. 471 (1968)

Movant Leslie Jay Bonilla Sauder (the "Movant") has filed a *Motion Requesting*

*Allowance of Post Petition Tort Claim as Priority Claim Pursuant [to] the Fundamental*

*Fairness Doctrine in* Reading Co. v. Brown, *391 US 471 (1968)* (Docket Entry No. 12897 in

Case No. 17-3283, the "Motion")[2] seeking an order allowing Movant to file a proof of claim in

an amount of no less than $16,500.00, and allowing that claim as an administrative expense.  The

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]     All docket entries referenced herein are to entries in Case No. 17-3283.

claim arises out of the Commonwealth's prepetition confiscation of Movant's 2015 Honda Civic,

which was sold at auction pursuant to the Uniform Forfeiture Act of 2011, 34 L.P.R.A. § 1724 et

seq. (the "UFA"), after the Commonwealth filed its petition under Title III of the Puerto Rico

Oversight, Management, and Economic Stability Act ("PROMESA").[3]  The Court has

considered all of the parties' submissions carefully.  As explained more fully below, the Motion

is denied because it fails to set forth an allowable administrative claim.

BACKGROUND

Except as otherwise indicated, the following undisputed facts are alleged in the

Motion or drawn from the documents cited or annexed therein.  On March 4, 2017, the

Commonwealth confiscated Movant's 2015 Honda Civic, as a result of a criminal intervention

by law enforcement agents claiming a violation of the Commonwealth's Vehicle and Traffic

Law, 9 L.P.R.A. § 5126.  (Mot. ¶ 3 n.3; *Objection of the Financial Oversight and Management*

*Board for Puerto Rico to Motion Requesting Allowance of Post Petition Tort Claim as Priority*

*Claim*, Docket Entry No. 13465, the "Objection," ¶ 5.)  On April 24, 2017, Movant commenced

a proceeding in the Court of First Instance in the Municipality of Aibonito, captioned Leslie Jay

Bonilla Sauder v. ELA, BAC2017-0017 (the "Lawsuit"), to contest the forfeiture of his vehicle,

pursuant to the UFA, as codified in Puerto Rico, 34 L.P.R.A. § 1724.  (Mot. ¶ 3 & n.1; Obj. ¶ 5.)

On May 3, 2017, the Commonwealth filed a Title III petition and, on August 16, 2017, Movant

filed a motion before this Court seeking relief from the automatic stay under 11 U.S.C.

§ 362(d)(1), as permitted by section 301(a) of PROMESA, 48 U.S.C. § 2161(a), to recover his

automobile and pursue other actions.  (Docket Entry No. 1048.)[4]

---

[3]     PROMESA is codified at 48 U.S.C. § 2101 et seq.

[4]     Movant describes himself as a creditor.  (See Mot. ¶ 3.)  The Financial Oversight and
        Management Board for Puerto Rico notes that the Commonwealth refers to Movant's

Movant alleges that, on August 18, 2017, while the Lawsuit was pending, his automobile was auctioned by the Commonwealth to a third party for $16,500.00, and that the Commonwealth did not notify Movant of the sale. (Mot. ¶¶ 5-6.) On August 30, 2017, the Commonwealth filed its response to Movant's stay relief motion, agreeing that Movant should be allowed to proceed with his prepetition action to contest the forfeiture, but stating that the Commonwealth did not consent to adjudication of any liability with respect to the forfeiture action and providing no indication that the vehicle had already been auctioned. (Mot. ¶ 5; Docket Entry No. 1214.) Movant filed no reply. This Court issued an order on September 13, 2017, partially lifting the stay "to allow the Lawsuit to proceed for necessary forfeiture determination proceedings" regarding "whether Movant is entitled to the return of his vehicle," but keeping the stay in place "with respect to any claims for damages, and execution and enforcement of any judgment for damages." In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17 BK 3283-LTS, 2017 WL 7135380, at *1-2 (D.P.R. Sept. 13, 2017).

On February 15, 2018, this Court issued an order establishing a Bar Date of May 29, 2018, for the filing of proofs of claim against the Commonwealth on account of claims arising, or deemed to have arisen, prior to the commencement of the Commonwealth's Title III case; the Court later extended that date to June 29, 2018. (See Docket Entry No. 2521 ¶ 3(a); Docket Entry No. 3160 ¶ 2.) The Bar Date order provided that the Bar Date did not apply to holders of administrative expense claims arising under Bankruptcy Code section 503(b). (Docket Entry No. 2521 ¶ 6.m.) Movant alleges that neither he nor his counsel were informed

---

"potential status as [that of] a prepetition unsecured creditor." (Obj. ¶ 20 (quoting Docket Entry No. 1214 ¶ 3).)

about his right to file a proof of claim prior to the Bar Date. (Mot. ¶¶ 8-9.)[5] On December 3,

2019, months after the Bar Date, Movant allegedly learned from his counsel that his automobile

had been auctioned on August 18, 2017. (Id. ¶ 6.)

On April 20, 2020, Movant filed the instant Motion, alleging that the

Commonwealth had illegally and negligently auctioned his vehicle, and seeking an order

allowing him to file a "proof of claim as a priority administrative claim in the minimum amount

of $16,500.00 and to be treated as such consistently with the fundamental fairness doctrine"

established in Reading Co. v. Brown, 391 U.S. 471 (1968). (Mot. ¶¶ 7, 9, 11; Mot. at 5.) On

June 18, 2020, the Financial Oversight and Management Board for Puerto Rico filed its

Objection, arguing principally that (1) Movant's claim has a prepetition genesis in the

confiscation authorized by the UFA; (2) the auction of the car was consistent with the UFA,

particularly 34 L.P.R.A. § 1724p;[6] and (3) the Reading doctrine does not apply, both because the

narrow rule applies to facts not present here, and because Movant's claim has a prepetition

genesis, whereas the Reading doctrine applies to postpetition claims. (Obj. ¶¶ 1-3, 14-17, 25-

27.) Movant filed a reply on July 23, 2020, arguing that the auction was an independently illegal

and negligent act because it permanently deprived him of the chance to recover the vehicle, and

that Reading applies because the auction was tortious. (Docket Entry 13820 ¶¶ 4-5.)

---

[5]    This assertion is rendered implausible by a number of documents of record, including
documentation of service of the Bar Date Order on Movant through his attorney,
certification of dissemination of widespread public notice of the Bar Date, and filings by
Movant's attorney on Movant's behalf in advance of the Bar Date that reference the
imminent deadline. See, e.g., Docket Entry No. 2656, Exh. D, at 750; Docket Entry No.
2656, Exh. E, at 766; Docket Entry No. 2890; Docket Entry No. 2979; Docket Entry No.
3334, Docket Entry No. 3385, Docket Entry No. 3743.

[6]    The Financial Oversight and Management Board for Puerto Rico also contends that
Movant's theory of tort liability would, if upheld, "abrogate the Commonwealth's
sovereignty and violate the U.S. Constitution's Eleventh Amendment." (Obj. ¶ 3.)

DISCUSSION

A.      Administrative Expense Status

The allowance of administrative expense claims is governed by section 503 of

title 11 of the United States Code (the "Bankruptcy Code"), which is made applicable in this case

by Section 301 of PROMESA. See 11 U.S.C.A. § 503 (Westlaw through P.L. 116-158); 48

U.S.C.A. § 2161(a) (Westlaw through P.L. 116-158). Section 503 of the Bankruptcy Code

provides, in relevant part, that:

> (a)  An entity may timely file a request for payment of an
> administrative expense, or may tardily file such request if
> permitted by the court for cause.
>
> (b)  After notice and a hearing, there shall be allowed administrative
> expenses, other than claims allowed under section 502(f) of this
> title, including—
>
> (1)(A) the actual, necessary costs and expenses of preserving
> the estate . . . .

11 U.S.C.A. § 503 (Westlaw through P.L. 116-158). In Woburn Associates v. Kahn (In re

Hemingway Transport, Inc.), 954 F.2d 1 (1st Cir. 1992), the First Circuit set forth the general

criteria that should be considered to determine whether to allow an administrative expense claim.

The court explained that a request for priority payment of an administrative expense under

Section 503(a) of the Bankruptcy Code "may qualify if (1) the right to payment arose from a

postpetition transaction with the debtor estate, rather than from a prepetition transaction with the

debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of

the debtor." Hemingway Transp., Inc., 954 F.2d at 5. The party asserting the administrative

claim bears the burden of demonstrating the entitlement of its claim to such treatment. Id.

Here, the Movant is seeking leave to "file a proof of claim as a priority

administrative claim" under section 503(b) of the Bankruptcy Code. (Mot. at 5.) To the extent

section 503(b)(1)(A) is implicated, the First Circuit has stated that the subsection exists to allow

"the debtor estate to acquire the requisite postpetition credit with which to preserve itself after

the filing of the petition."  Hemingway Transp., Inc., 954 F.2d at 5.  Thus, the First Circuit has

indicated, (1) "[p]reservation of the estate includes protection of the assets of the estate, as well

as postpetition operation of the business of the debtor," id., and (2) "the consideration supporting

the claimant's right to payment [must be] supplied to and beneficial to the debtor-in-possession

in the operation of the business."  In re La Electronica, Inc., 995 F.2d 320, 322-23 (1st Cir. 1993)

(quoting Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 954 (1st

Cir. 1976)).  Movant has not claimed that his Motion is based on any efforts to preserve the

debtor's assets, nor has he claimed that he supplied consideration beneficial to the debtor,

making section 503(b)(1)(A) inapplicable here.

Moreover, Movant has not demonstrated that his claim originated postpetition.

The forfeiture of the automobile was the operative "transaction" between Movant and the

Commonwealth; the postpetition auction was a statutory consequence of the forfeiture.  34

L.P.R.A. §§ 1724j, 1724q.  Movant's allegation that his Motion sets forth a postpetition claim is

thus unavailing.  Movant did not lose his automobile twice.  The UFA provides that a successful

challenge to the legality of a forfeiture may yield monetary compensation if the property at issue

is sold before the resolution of the contestation.  34 L.P.R.A. § 1724p.[7]  At most, the auction

limited the range of available remedies for a successful challenge to the underlying forfeiture.

---

[7]     "In the event the court holds a forfeiture to be illegal, the Board shall return the forfeited
property to the complainant.  If the Board has already disposed of said property, the
Government of Puerto Rico shall pay an amount equal to the appraisal value at the time
of the seizure, or the amount for which it was sold, whichever is higher, plus the
prevailing legal interest pursuant to the Rules of Civil Procedure, as amended, based on
the appraisal value at the time of the seizure."  34 L.P.R.A. § 1724p.

Moreover, Movant fails to demonstrate that the auction independently violated any specific

provision of the UFA or any other law.  Movant simply uses the conclusory terms "illegal" and

"negligent."  (Mot. ¶¶ 3 n.3, 7, 9, 11.)  The Motion proffers no factual or legal basis for treating

the auction as giving rise to a postpetition administrative expense claim.

Thus, the instant Motion fails to proffer grounds for recognition of a valid

administrative expense claim under section 503 of the Bankruptcy Code.

B.      The Fundamental Fairness Doctrine

Movant also invokes a different, narrower, basis upon which administrative

expense claims that are not explicitly contemplated by the Bankruptcy Code have been allowed.

The "fundamental fairness" doctrine, which has its origins in Reading Co. v. Brown, 391 U.S.

471 (1968), has been interpreted within the First Circuit to support administrative expense claim

priority for two categories of claims that do not otherwise come within the plain language of

section 503(b) of the Bankruptcy Code.  See In re Healthco Intern., Inc., 272 B.R. 510, 513

(B.A.P. 1st Cir. 2002), aff'd, 310 F.3d 9 (1st Cir. 2002).  As the Bankruptcy Appellate Panel for

the First Circuit has explained, "the 'fundamental fairness' exception is recognized when the

debtor's postpetition operations occasion tortious injuries to third parties (*Reading*[]), or when

the claim arises from postpetition actions that deliberately violate applicable law and damage

others (*Charlesbank*[])."  Id.  (emphasis in original) (citing Reading, 391 U.S. 471; Spunt v.

Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200, 203 (1st Cir. 1985)).

The Reading doctrine is inapposite in this case.  The "fundamental fairness"

doctrine is not applicable to prepetition claims, and Movant proffers no legal or factual basis for

finding that the auction fell outside the statutory forfeiture and disposition process authorized by

the UFA.  The First Circuit has restricted the application of the "fundamental fairness" exception

to claims alleging postpetition harms that arise from postpetition events. See, e.g., Hemingway

Transp., Inc., 954 F.2d at 6-7 (noting that, where a chapter 7 trustee's lawsuit might create a

burdensome litigation expense later on, its "prepetition *genesis* ultimately distinguishes it from

the *postpetition* losses accorded priority in *Reading* and *Charlesbank*." (emphasis in original));

Mammoth Mart, Inc., 536 F.2d at 955 ("It is established that a debt is not entitled to priority as a

cost and expense of administration simply because the claimants' right to payment arises after

the debtor-in-possession has taken some action. It is only when the debtor-in-possession's

actions themselves . . . give rise to a legal liability that the claimant is entitled to the priority of a

cost and expense of administration." (internal citations omitted)).[8]  Here, the postpetition sale of

Movant's automobile was a direct consequence of a process, governed by the UFA, that began

with the prepetition forfeiture of Movant's automobile. The prepetition genesis of Movant's

asserted claim therefore places it outside the scope of the Reading doctrine.

       The Reading doctrine is also inapt because, as noted above, Movant proffers no

legal or factual basis for finding that the auction was illegal, or even that it was carried out in a

manner inconsistent with the provisions of the UFA. Movant has therefore failed to establish his

entitlement to an administrative expense claim.

---

[8]    Although Mammoth Mart interpreted § 64(a)(1) of the former Bankruptcy Act, "it ha[s]
been held that 'the body of law that grew up interpreting § 64(a)(1) has value as
precedent in interpreting 11 U.S.C. § 503(b)(1)(A).'"  In re Chateaugay Corp., 102 B.R.
335, 354 (Bankr. S.D.N.Y. 1989) (quoting In re Peninsula Gunite, Inc., 24 B.R. 593, 594
(B.A.P. 9th Cir. 1982)).

CONCLUSION

For the foregoing reasons, the Motion is denied. This Memorandum Order

resolves Docket Entry No. 12897.


SO ORDERED.

Dated: August 21, 2020

                                     /s/ Laura Taylor Swain
                                     LAURA TAYLOR SWAIN
                                     United States District Judge