## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF Nos. 13938, 14051**<br><br>(Jointly Administered) |
| SUIZA DAIRY CORP.,<br><br>Movant,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Respondent. | |

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO URGENT
MOTION REQUESTING A RULING OR ENTRY OF COMFORT ORDER
AS TO THE NON-APPLICABILITY OF THE AUTOMATIC STAY
TO A LIMITED CONTROVERSY WITH THE COMMONWEALTH
OF PUERTO RICO ARISING POST-PETITION AND HAVING
POST-PETITION EFFECTS BUT PARTIALLY BASED ON A PRE-PETITION
JUDGMENT INCORPORATING MILK REGULATIONS ESTABLISHED BY
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO
RICO AND NOT INVOLVING PROPERTY OF THE DEBTOR OR ITS ESTATE**

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

<u>TABLE OF CONTENTS</u>

Page Number

Preliminary Statement.................................................................................................5

Background ...............................................................................................................7

Objection ..................................................................................................................9

    I.   The Automatic Stay Applies to the Enforcement of the
        Prepetition Settlement Agreement ......................................................9

    II.  Movant Fails to Show Cause to lift the Automatic Stay under the Sonnax Factors .........12

Conclusion ...............................................................................................................21

<u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                           Page Number

*Atiles-Gabriel v. Commonwealth of P.R.*, No. 15-2108 (GAG)
2017 WL 2709757 at * 2 (D. P.R. June 23, 2017).................................................10
*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*
217 F. Supp. 3d 508, 518 (D.P.R. 2016).............................................13, 16, 17
*CRS Steam, Inc. v. Engineering Res. Inc.*, *(In re CRS Steam, Inc.)*
225 B.R. 833, 841 (Bankr. D. Mass. 1998).........................................................11
*FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003)............................10
*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*
2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006).......................................18
*In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) .............................12
*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11
2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ......................................16
*In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017) ..........................13
*In re Breitburn Energy Partners LP*, No. 16-10992
2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).................................................15
*In re Chateaugay Corp.*, 102 B.R. 335, 351 (Bankr. S.D.N.Y. 1989) ...............................11
*In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) .........................................16, 19
*In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977)....................................14
*In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ...........................................15
*In re Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) .........................................17
*In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010)............19
*In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) ............................................14
*In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012) .........................................................15
*In re Northwest Airlines Corp.*, No. 05-17930 (ALG)
2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006)..............................................17
*In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004)................19
*In re Residential Capital, LLC*
2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012)....................................18
*In re Residential Capital, LLC*, No. 12-12020
2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ............................................14
*In re Residential Capital, LLC*, No. 12-12020
2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ............................................16
*In re Riodizio, Inc.*, 204 B.R. 417, 424 n.6 (Bankr. S.D.N.Y. 1997) .............................................11
*In re Sonnax Indus.*, 907 F.2d at 1286.......................................................................13
*In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) ......................................................14
*In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), aff'd 23 F.3d 395 (1st Cir. 1994).........12
*In re Unanue-Casal*, 159 B.R. at 95–96.......................................................................13
*Montalvo v. Autoridad de Acueducto y Alcantarillados (In re-Montalvo)*
537 B.R. 128, 140 (Bankr. D.P.R. 2015)........................................................................9
*Oversight and Mgt. Bd. for Puerto Rico*, 939 F.3d 356, 363
2019 WL 4667824 (1st Cir. 2019) .............................................................................15
*Peaje Invs. LLC v. Garcia-Padilla*

*2016 U.S. Dist. LEXIS 153711, at \*13 (D.P.R. Nov. 2, 2016)*.....................................13
*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*
*980 F.2d 110, 117 (2d Cir. 1992)* ...................................................................................16
*Ralls v. Docktor Pet Ctrs., 117 B.R. 420 (D. Mass. 1995)* ............................................11
*Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997)*......9
*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*
*907 F.2d 1280, 1286 (2d Cir. 1990)* ...............................................................................12
*Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*
*369 B.R. 87, 94-5 (D.P.R. 2007)* .....................................................................................13
*Vaqueria Tres Monjitas, Inc., v. Secretary of Agriculture*, Civil Case No. 04-1840......7

## **Puerto Rico Statutes**

Section 362(d) of the Bankruptcy Code......................................................................7

Section 362(a) of the Bankruptcy Code .....................................................................10

Section 365 of the Bankuptcy Code .........................................................................10

Section 922 of the Bankuptcy Code ..........................................................................10

Section 105(a) of the Bankuptcy Code ......................................................................10

Section 101(5) of the Bankruptcy Code .....................................................................6

Section 301(a) of PROMESA, 48 U.S.C. § 2161 .....................................................9

11 U.S.C. § 362(a) ....................................................................................................9

11 U.S.C. § 101(5) .....................................................................................................10

11 U.S.C. § 922.........................................................................................................16

## **Legislative Materials**

H.R. Rep. No. 95–595, at p. 309 (1977) ....................................................................10

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor") respectfully submits this objection (the "Objection") to the *Urgent Motion Requesting A Ruling Or Entry Of Comfort Order As To The Non-Applicability Of The Automatic Stay To A Limited Controversy With The Commonwealth Of Puerto Rico Arising Post-Petition And Having Post-Petition Effects But Partially Based On A Pre-Petition Judgment Incorporating Milk Regulations Established By The United States District Court For The District Of Puerto Rico And Not Involving Property Of The Debtor Or Its Estate* [ECF No. 13938] (the "Motion") filed by Suiza Dairy Corporation ("Movant"). In support of the Objection, the Debtor respectfully avers as follows: [2]

## **Preliminary Statement**

1.  Movant and Vaquería Tres Monjitas ("Vaquerías" and together with Movant, the "Processors") are two of the fresh milk processors in Puerto Rico. In Puerto Rico, as in many States, the milk industry is regulated in order to ensure a consistent supply, quality and stable prices for consumers and producers. Pursuant to a statutory regime in place since the late 1950s, the Office of Milk Industry Regulatory Administration for the Commonwealth ("ORIL") sets both the minimum price at which milk processors buy raw milk from dairy farmers and the maximum price at which those processors may sell fresh milk to the public. *See* P.R. Laws Ann., tit. 5, Sections 1092 to 1118.

2.  Beginning in 2004, the Processors were involved in a long-running litigation concerning the regulation of the Commonwealth milk industry, which the Processors alleged

---

[2]  The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

favored a third processor, Industria Lechera de Puerto Rico Inc. ("Indulac").[3]  This litigation was resolved in 2013 through the Prepetition Settlement Agreement (as defined below).  The terms of the Prepetition Settlement Agreement provided, among other things, for (1) the enactment and enforcement of certain regulations regarding milk price setting, and (2) the payment of certain amounts to the Processors.

3.      Movant seeks to reopen the Prepetition Action (as defined below) to enforce the Prepetition Settlement Agreement in connection with ORIL's alleged postpetition breach of the Prepetition Settlement Agreement through the issuance of Administrative Order 2020-22 (the "Administrative Order"), which Movant asserts is contrary to the requirement pursuant to the Prepetition Settlement Agreement to enact and enforce certain regulations regarding milk price setting.  Movant seeks in the Motion a determination that the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") does not apply to such action to enforce the Prepetition Settlement Agreement, asserting that it is not seeking to enforce a claim against the Commonwealth.

4.      The Motion should be denied because (1) the automatic stay applies to Movant's enforcement of the Prepetition Settlement Agreement, and (2) Movant has failed to show that "cause" exists to modify the automatic stay.  Movant's asserted right to equitable relief to enforce the Prepetition Settlement Agreement is a "claim" pursuant to section 101(5) of the Bankruptcy Code because the Commonwealth's purported breach of the Prepetition Settlement Agreement can be reduced to a right to payment.  At the core of Movant's claim is the asserted economic injury that the implementation of the Administrative Order would cause to Movant.  Furthermore, courts

---

[3]   Contrary to Movant's assertion, Indulac is not and was not a government entity. *See* Motion at 1.  Upon information and belief, Indulac is a domestic corporation owned and operated by a farmers' cooperative known as "Cooperative de Productres de Leche."

have held that a postpetition breach of a prepetition agreement nonetheless gives rise only to prepetition claims.

5.      Movant has failed to make the initial showing that "cause" exists to lift the automatic stay under section 362(d) of the Bankruptcy Code because it has failed to show that application of the *Sonnax* factors weighs in its favor.  Also, Movant has failed to demonstrate the extraordinary circumstances necessary to show why its potential claim, if any, should not be resolved through the claims resolution process in the Commonwealth's Title III case.  Lifting the automatic stay would allow Movant to seek to enforce the Prepetition Settlement Agreement in the Prepetition Action, thereby causing the Commonwealth to expend resources to defend against such claim at a time when it is focusing on its transformation and developing a plan of adjustment to emerge from its Title III case.

## Background

6.      On August 13, 2004, the Processors commenced an action, captioned *Vaqueria Tres Monjitas, Inc., v. Secretary of Agriculture*, Civil Case No. 04-1840 (the "Prepetition Action"), in the United States *District* Court for the District of Puerto Rico (the "District Court"), against the Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico and the Administrator of ORIL seeking, among other relief, declaratory and injunctive relief in connection with the Commonwealth's alleged regulatory taking of Movant's property through the implementation of certain laws and regulations governing the milk industry in Puerto Rico.  The Processors alleged that Puerto Rico's regulatory scheme had deprived them of a reasonable rate of return and impermissibly favored milk produced by a third processor, Indulac, in violation of the Takings, Due Process, Equal Protection, and Commerce Clauses of the United States Constitution.

7.      On October 29, 2013, Movant, Vaquerías, the Secretary of the Department of Agriculture, the Hon. Myrna Comas, in her official capacity and as Acting Administrator of ORIL, and the Commonwealth through the Secretary of Justice of the Commonwealth entered into the *Final Settlement Agreement and Memorandum of Understanding Between the Parties* (the "Prepetition Settlement Agreement"), which, among other things, provided for the settlement of all matters pending in the Prepetition Action and the enactment and enforcement of certain regulations regarding milk price setting.  *See* ECF No. 2322 of Case No. 04-1840.

8.      On November 6, 2013, the District Court entered the *Order and Judgment* (as amended on November 7, 2013, the "Judgment") incorporating the Prepetition Settlement Agreement.  *See* ECF No. 2347 and 2351 of Case No. 04-1840.

9.       Under the terms of the Prepetition Settlement Agreement, as incorporated in the Judgment, raw milk is the "whole milk secretion, excluding the colostrum, which is obtained by milking one or more healthy cows, which have not yet been subjected to any processes." *See* Prepetition Settlement Agreement at 2.  On the other hand, fresh milk refers to milk that has been "pasteurized and homogenized by the processors and is classified within the fluid milk category." *Id.*  Lastly, fluid milk refers to milk that has been subject to "homogenization and pasteurization or ultra-pasteurization and homogenization processing or aseptic processing."  *Id*.

10.      On July 10, 2020, the Administrator of ORIL issued the Administrative Order, which provided, among other things, interpretation that surplus milk was not raw milk produced in excess of fresh milk demand, but in excess of fluid milk demand.

11.      On July 23, 2020, Movant filed with ORIL a motion to reconsider the Administrative Order pursuant the Puerto Rico Uniform Administrative Procedures Act.

8

12.     On August 4, 2020, Movant filed a *Petition for Judicial Review* before the Puerto

Rico Court of Appeals, pursuant to the Puerto Rico Uniform Administrative Procedures Act,

seeking a determination that the Administrative Order is null and void (the "<u>Commonwealth</u>

<u>Action</u>").

13.     On the same day, the Administrator of ORIL granted review of the motion for

reconsideration (the "<u>ORIL Administrative Process</u>").

<u>**Objection**</u>

**I.   <u>The Automatic Stay Applies to the Enforcement of the Prepetition Settlement</u>**
    **<u>Agreement</u>**

14.     The automatic stay applies to the enforcement of the Prepetition Settlement

Agreement in connection with the Commonwealth's alleged breach through the issuance of the

Administrative Order.  Section 362(a) of the Bankruptcy Code, made applicable by Section 301(a)

of PROMESA, 48 U.S.C. § 2161, imposes an automatic stay on "the commencement or

continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . .

to recover a claim against the debtor that arose before the commencement of the cause under this

title." 11 U.S.C. § 362(a)(1); *see also* PROMESA § 301(a) (incorporating Section 362 into Title

III cases).  Similarly, subsection 362(a)(6) automatically stays "any act to collect, assess, or recover

a claim against the debtor" arising before the filing of the bankruptcy petition. 11 U.S.C. §

362(a)(6).

15.     The automatic stay is "one of the cornerstone protections under bankruptcy law,

giving debtors a 'breathing room' from the pressures of their creditors," *see Montalvo v. Autoridad*

*de Acueducto y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citing

*Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997)), and

PROMESA applies it with full force to Title III cases.  *See Order Pursuant to PROMESA Section*

9

*301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of
the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition
Lawsuits, and (III) Application of Contract Protections* [ECF No. 543].  Moreover, the automatic
stay "is extraordinarily broad: it protects the debtor from nearly any act to collect a pre-petition
claim and any action affecting the property of the debtor's estate, subject only to section 362(b)'s
narrow exceptions." *Atiles-Gabriel v. Commonwealth of P.R.*, No. 15-2108 (GAG), 2017 WL
2709757 at * 2 (D. P.R. June 23, 2017) (citation omitted).

16.     Bankruptcy Code section 362(a)(1) stays all actions "to recover a claim against the
debtor." Bankruptcy Code section 101(5) defines "claim" as including a "right to payment,
whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,
matured, disputed, undisputed, legal equitable, secured, or unsecured." 11 U.S.C. § 101(5).
Furthermore, Congress intended a "claim" as defined in the Bankruptcy Code to encompass the
broadest definition available.  *See* H.R. Rep. No. 95–595, at 309 (1977) (noting that the definition
of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter
how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits
the broadest possible relief in the bankruptcy court."); *FCC v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293, 302 (2003) (holding that a "claim" has "the broadest available definition.").

17.     While Movant asserts that the automatic stay does not apply because it is not
seeking any monetary relief, a "claim" pursuant to Bankruptcy Code section 101(5) encompasses
any "right to an equitable remedy for breach of performance if such breach gives rise to a right to
payment . . ." 11 U.S.C. § 101(5).  At the core of Movant's challenge of the Administrative Order
is the alleged economic injury that it would suffer through the implementation of the
Administrative Order that Movant purports is contrary to the requirement pursuant to the

10

Prepetition Settlement Agreement to enact certain regulations regarding milk price setting.  As Movant alleges, the Administrative Order "places Indulac in square competition with Suiza by receiving raw milk that Suiza could use, and moreover at a lesser price than that paid by Suiza. . . .  Suiza's business operations would suffer substantial economic loss under the unilateral and illegal action undertaken by ORIL."  Motion at 3-4.  Accordingly, any damages Movant would suffer from the implementation of the Administrative Order could give rise to a right to payment, notwithstanding that Movant is electing to pursue equitable relief.  *See CRS Steam, Inc. v. Engineering Res. Inc.*, *(In re CRS Steam, Inc.)*, 225 B.R. 833, 841 (Bankr. D. Mass. 1998) ("Where the usual alternative right to payment exists, a claim is present even though, as here, an injunction has already issued."); *Rederford v. US Airways, Inc.*, 589 F.3d 30 (1st Cir. 2009) (holding the fact that equitable relief was available did not save claim form being discharged because equitable claim for reinstatement could give rise to a right to payment).

18.    Critically, while Movant argues that the automatic stay does not apply to its enforcement of the Prepetition Settlement Agreement because the promulgation of the Administrative Order occurred postpetition, courts have held that postpetition breaches of prepetition agreements give rise only to prepetition claims.  *In re Riodizio, Inc.*, 204 B.R. 417, 424 n.6 (Bankr. S.D.N.Y. 1997) ("The postpetition breach of a prepetition contract gives rise only to a prepetition claim." (citations omitted)); *In re Chateaugay Corp.*, 102 B.R. 335, 351 (Bankr. S.D.N.Y. 1989) ("where the debtors' obligations stem from contractual liability, even a post-petition breach will be treated as giving rise to a prepetition liability where the contract was executed prepetition." (citation omitted)); *see also Ralls v. Docktor Pet Ctrs.*, 117 B.R. 420 (D. Mass. 1995) (holding that the action "involving pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising

11

under title 11."). Accordingly, Movant seeks to enforce a potential prepetition claim arising from the Prepetition Settlement Agreement, which is subject to the automatic stay pursuant to Bankruptcy Code section 362.

## II.    Movant Fails to Show Cause to Lift the Automatic Stay under the *Sonnax* Factors

19.    Movant has not established that cause exists to lift the automatic stay. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.*, 907 F.2d at 1286.

20.     Courts in this Circuit have adopted these "*Sonnax* factors."  *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

21.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it.  *Brigade*, 217 F. Supp. 3d at 529 n.12.  Movant bears the initial burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one.  *See In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).

22.     The Sonnax factors analysis clearly weighs against lifting the stay. Movant has similarly failed to establish that cause exists to lift the automatic stay and has not met his initial burden.  Instead, Movant is merely seeking preferential treatment on his potential claim by seeking the enforcement of the Prepetition Settlement Agreement in the Prepetition Action, which would

undermine the purpose of the automatic stay "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets.").   Furthermore, denying the Motion would further the goal of the automatic stay to prevent creditors from disrupting the Debtors' focus on their restructuring efforts—as it is not clear how enforcement of the Judgment has anything to do with Condominio's asserted right to the return of its credit. *See In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").   The *Sonnax* factors point squarely toward maintaining the automatic stay and against the relief Movant seeks:

23.   **Sonnax Factor 1**: The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against lifting the automatic stay.  The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan").  Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See,*

14

*e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr.

N.D. Ala. 1998).

24.     Here, Movant does not identify any bankruptcy issue related to the

Commonwealth's Title III case that would be resolved by allowing Movant to enforce the

Prepetition Settlement Agreement.  Movant bears the burden of establishing cause, and when the

movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high

one.  *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr.

S.D.N.Y. Apr. 14, 2017).

25.     Moreover, allowing separate litigation over the Commonwealth's compliance with

the Prepetition Settlement Agreement is in conflict with PROMESA's core purpose:

"centraliz[ing] all disputes concerning property of the [Commonwealth] so that reorganization can

proceed efficiently, unimpeded by uncoordinated proceedings." *In re Fin. Oversight and Mgt. Bd.

for Puerto Rico*, 939 F.3d 356, 363, 2019 WL 4667824 (1st Cir. 2019) (confirming the denial of a

request to lift stay to compel PREPA to comply with the provisions of a prepetition judgment.).

Therefore, the first Sonnax factor supports denying the Motion.

26.     **Sonnax Factor 2**: The second Sonnax factor—the lack of any connection with or

interference with the bankruptcy case—does not support lifting the stay.  The Commonwealth

would be required to devote resources to litigate Movant's request to enforce the Prepetition

Settlement Agreement.  This would interfere with the Commonwealth's Title III case and overall

restructuring by diverting critical time and cost from its recovery efforts to transform the

Commonwealth and exit Title III.

27.     Moreover, as a potential, prepetition, unsecured creditor of the Commonwealth,

Movant's claim is subject to the claims resolution process that are being undertaken in the Title III

case. Thus, requiring the Commonwealth to defend Movant's claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

28.     Additionally, should every plaintiff with an asserted prepetition claim be given carte blanche to litigate and/or execute their claims, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan, certified budget, and transformation. This would impede the restructuring process, and thus, should be avoided. *See, e.g.*, *In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."). Thus, Sonnax factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause).

29.     In this regard, *In re City of Stockton* is instructive. 484 B.R. 372 (Bankr. E.D. Cal. 2012).  There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374. The plaintiff then moved to lift the stay and

argued that allowing the suit to go forward would not interfere with the Chapter 9 case. *Id*. at 378.
The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and
attention of those two officers during the period in which there is intense focus on the basic
substantive issues in this chapter 9 case." *Id*. "It is apparent to the court that their undivided time
and attention will continue to be required at least for a number of months." *Id*.

30.     Here, the Commonwealth would have to undertake substantial efforts to defend
against litigation that is simultaneously being undertaken through the Puerto Rico Court of Appeals
and ORIL's administrative process.  Thus, Sonnax factor 2 weighs in favor of denying the Motion,
and Movant fails to satisfy its initial burden to establish cause. *See Brigade*, 217 F. Supp. 3d at
529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.*, 117 B.R.
406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed
against debtor, even though stay of litigation would cause hardship to defendant, because granting
relief from stay would, among other things, encourage the filing of "similar requests for relief by
plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL
694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with
respect to this action at this time would prompt similar motions and require the Debtors to spend
an inordinate amount of time and money on litigation and detract from the Debtors' attempts to
restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization."
(citations omitted)).

31.     **Sonnax Factor 4**: The fourth Sonnax factor—whether a specialized tribunal has
been established to hear the cause of action at issue—does not support granting the Motion.  No
specialized tribunal has been established to hear the Prepetition Action, which was before the
District Court.  Thus, Sonnax factor 4 weighs in favor of denying the Motion.

32.   **Sonnax Factor 5:** The fifth Sonnax factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed any financial responsibility in connection with the Prepetition Action or the enforcement of the Prepetition Settlement Agreement. Therefore, all the costs of defending the claim would be borne by the Commonwealth. Thus, Sonnax factor 5 does not support granting the Motion.

33.   **Sonnax Factor 6**:   The sixth Sonnax factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties rather than the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth Sonnax factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

34.   Here, the Prepetition Action does not involve third parties.  The Secretary of the Department of Agriculture for the Commonwealth, and the Administrator of ORIL are the only defendants, the latter two for which the Commonwealth would be required to expend its own funds to defend and indemnify.  Therefore, Sonnax factor 6 weighs in favor of denying the Motion.

35.   **Sonnax Factor 7:** The seventh Sonnax factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The Commonwealth would have to expend considerable time and expense to litigate the enforcement

of the Prepetition Settlement Agreement, in attending hearings, and preparing and filing motions

in general. Moreover, other unsecured claimants will be affected because the Commonwealth's

funds would be depleted in defending against litigation that could be later disbursed among all of

the Commonwealth's unsecured creditors pursuant to a plan of adjustment.

36.     Courts have denied requests to lift the automatic stay where the debtor would be

required to expend its limited resources to defend against litigation. *See, e.g.*, In re Plumberex

Specialty Prod., Inc., 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in

part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum

would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No.

09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where

bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with

the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would

prejudice the interests of other creditors"). *see also In re City of Stockton*, 484 B.R. 372, 379

(Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City

treasury").

37.     Here, the depletion of the Commonwealth's resources to defend against the

enforcement of the Prepetition Settlement Agreement entered in the Prepetition Action and the

diversion of the Commonwealth's attention to proceed expeditiously through its Title III case

would inure to the detriment of the Commonwealth's other creditors. Accordingly, Sonnax factor

7 does not support granting the Motion.

38.     **Sonnax Factors 10 and 11**:  The interests of judicial economy also weigh against

stay relief.  If Movant has any claim against the Commonwealth arising from the Prepetition

Settlement Agreement, such claim would be a prepetition claim that should be addressed in the

claims resolution process in the Commonwealth's Title III case, rather than separate, duplicative litigation. Movant fails to meet its burden to show that *Sonnax* factors 10 and 11 favor granting relief from the automatic stay.

39. Thus, Sonnax factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.*, 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues.").

40. **Sonnax Factor 12**: Balancing of the harms clearly favors denial of the Motion. Movant has sought other remedies through the ORIL Administrative Process and the Puerto Rico Court of Appeals to invalidate the Administrative Order as promulgated in violation of the Puerto Rico Uniform Administrative Procedures Act.[4] Therefore, it has other remedies available to it. Furthermore, any damages Movant would suffer as a result of the promulgation of the Administrative Order are mitigated because it has failed to comply with the Administrative Order. In particular, on August 21, 2020, ORIL issued two orders to show cause (the "Administrative Orders to Show Cause") in the ORIL Administrative Process as to why a penalty should not be imposed against Movant for violating the Administrative Order by failing to deliver to Indulac, on August 20, 2020 and August 21, 2020, the corresponding surplus milk in connection with the minimum daily portion. Movant requested until September 10, 2020 to respond to the Administrative Orders to Show Cause.

---

[4]   Movant has also argued in the ORIL Administrative Process and the action before the Puerto Rico Court of Appeals that the Administrative Order is contrary to the judgment entered in connection with the Prepetition Settlement Agreement. The Commonwealth reserves all arguments, rights, and claims that such action is in violation of the automatic stay.

41.     However, the impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The diversion of the Commonwealth's resources to defend Movant's enforcement action in the Prepetition Action, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this juncture of the Title III case.  Furthermore, the preferential treatment of Movant's asserted claim against the Commonwealth if Movant were to succeed in the Prepetition Action would prejudice similarly situated creditors who must wait for their claims to be treated pursuant to a plan of adjustment.

42.     On the other hand, postponing liquidation of Movant's claims is a hardship that is shared with other creditors so the Commonwealth can focus on its restructuring and recovery efforts for the benefit of all creditors and would promote judicial economy. Any claim Movant may have can and should be dealt with during the Title III claims process that has already begun, as any other creditor's claims. Given the stage of the Prepetition Action, there is no guaranty that the resolution of the enforcement of the Prepetition Settlement Agreement would come any sooner than the resolution of Movant's purported claims in the Title III case.  Thus, on balance, Sonnax factor 12 weighs in favor of denying the Motion.[5]

### Conclusion

43.     The automatic stay applies to any action to enforce the Prepetition Settlement Agreement, and Movant fails to establish that there is cause to lift the automatic stay to allow it to enforce the Prepetition Settlement Agreement.  Accordingly, and for the foregoing reasons, the Court should deny the Motion.

---

[5]   The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

Dated:  August 27, 2020
          San Juan, Puerto Rico

                                        Respectfully submitted,

                                        **INÉS DEL CARMEN CARRAU MARTÍNEZ**
                                        Interim Secretary of Justice

                                        **WANDYMAR BURGOS-VARGAS**
                                        Deputy Secretary in Charge of Litigation

                                        s/Susana I. Peñagarícano-Brown
                                        **SUSANA PEÑAGARÍCANO-BROWN**
                                        USDC-PR No. 219907
                                        Director of Legal Affairs
                                        Federal Litigation and Bankruptcy Division
                                        Department of Justice of Puerto Rico
                                        P.O. Box 9020192
                                        San Juan, Puerto Rico 00902-0192
                                        Email: spenagaricano@justicia.pr.gov
                                        Phone: Phone: (787)721-2900, ext. 1411

                                        *Attorneys for the Commonwealth of Puerto Rico*