# EXHIBIT B

 

# PUERTO RICO ADR PROCEDURES PROPOSAL
# August, 2020

**American Arbitration Association (AAA) and its international division,**
**The International Centre for Dispute Resolution (ICDR)**
**120 Broadway, 21st Floor**
**New York, NY 10271, USA**
**T: +1 212 716 5833**

 

## **Table of Contents**

| | | |
|---|---|---|
| I. | Introduction | 3 |
| II. | Staff Organization and Management | 4 |
| III. | AAA Government and Large-Scale Claims Program Capabilities | 7 |
| IV. | Arbitral Rules and Administrative Procedures | 14 |
| V. | ADR Procedures – Conditions Precedent to Binding Arbitration Phase | 16 |
| VI. | Procedural and Administrative Modifications for Binding Arbitration Phase | 18 |
| VII. | Administrator's Functions | 21 |
| VIII. | Arbitrators | 22 |
| IX. | AAA-ICDR Administrative Fees and Arbitrator Compensation | 23 |
| X. | Financial Controls and Oversight | 24 |
| XI. | Additional Questions and Discussion Points | 25 |
| XII. | AAA's Commercial Arbitration Fee Schedule | Attached |

 

# PROPOSAL

### I.   Introduction

The American Arbitration Association (AAA) and its international division, the International Centre for Dispute Resolution (ICDR), have the institutional knowledge, technological infrastructure, qualified arbitral and staff capabilities to develop and quickly implement an Alternative Dispute Resolution process (the "ADR Procedure") as envisioned by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"). This program shall seek to use alternative dispute resolution (ADR) to resolve certain general unsecured claims including unliquidated litigation claims pending against the Commonwealth of Puerto Rico.

As discussed with members of the Proskauer team (Ms. Laura Stafford and Ms. Ana Vermal) the AAA-ICDR hereby submits this proposal that will provide an overview of the ADR services requested based on the information currently available outlining the AAA-ICDR's services to meet the objectives as envisioned for this program.  This proposal includes elements of the capabilities statement that was previously provided and has added additional sections regarding several components addressing the ADR Procedures with greater specificity regarding our administrative role and details regarding timeframes and logistics.

The AAA-ICDR's approach will employ its tried and tested method for designing and implementing customized ADR programs learned from its 90+ years of specializing in the administration of domestic and international arbitration and mediations on a global scale. The AAA-ICDR has assigned a dedicated team to consider the data obtained regarding this program to date and has reviewed the information that has been furnished thus far in forming the basis for this proposal.

The objective of this program is to minimize the cost, confusion and delay by incorporating the ADR Procedure to resolve certain general unsecured claims from these Title III cases. Using its experience and foundation from having developed customized programs in the past, the AAA-ICDR will provide the following services:

•   Establish, maintain and manage a panel of arbitrators to be assigned to cases proceeding to the Binding Arbitration phase of the ADR Procedure.

•   Applying its Commercial Arbitration Rules, incorporate modified administrative procedures tailored to the requirements of the ADR Procedure.

 

- Manage and administer the ADR Procedure program's Binding Arbitration phase, and provide periodic reports, data, and other information as required.

- Coordinate and work with the Oversight Board during the implementation of these ADR Procedures as needed to monitor the potential case filings along with the expected timeframes, staffing, logistics, financials, reporting and management of this program to ensure that the cases are administered in a timely and efficient manner. The AAA-ICDR will factor in a number of contingencies to be able to identify and deal with the possible fluctuation of case filings as they may arise.

- Identify and develop specialized case administration teams with Spanish language capabilities to administer the arbitrations filed under the ADR Procedure program's Binding Arbitration phase.

- Incorporate the AAA-ICDR's proprietary electronic administrative platforms (AAA-ICDR WebFile and Neutral's e-Center for the administration of these cases.

The end result will be the development and administration of an efficient and well-organized binding arbitration mechanism pursuant to the ADR Procedures for these Title III cases.

AAA-ICDR bases this proposal on the information the Oversight Board's counsel have provided us to date, including the Alternative Dispute Resolution Procedures filed with the bankruptcy court on March 23, 2020. AAA-ICDR reserves the right to amend this proposal and provide our services to the extent that the Alternative Dispute Resolution Procedures are revised or as more information becomes known about the types of claims and potential damages at issue in the cases likely to be arbitrated under the Procedures.

## II.    Staff Organization and Management

The AAA-ICDR currently has assigned staff working in various divisions on the large volume of cases it administers domestically and internationally. In 2019, for example, the AAA-ICDR administered over 300,000 cases under the auspices of government entities

For this initiative, considering the Spanish language requirements, the AAA-ICDR will be designating a team overseen by ICDR Vice President Luis M. Martinez, working under the ICDR's Senior Vice President and General Counsel Eric Tuchmann. Other AAA-ICDR staff members will oversee the design and implementation of this program along with staff from AAA-ICDR's Finance,

 

Legal, Marketing and IT departments. Other phases will involve staff from the AAA-ICDR's administrative teams and the arbitrator panel's team.



### Eric P. Tuchmann, Senior Vice President, General Counsel and Corporate Secretary

Eric P. Tuchmann is Senior Vice President, General Counsel and Corporate Secretary for the AAA and the ICDR. In that capacity, he oversees the ICDR's operations, strategy and policies. In addition, he manages the organization's legal and governance affairs, including litigation and regulatory matters involving the AAA-ICDR and its arbitrators and mediators. Mr. Tuchmann served as counsel of record on amicus curiae briefs filed in various courts and cited by the Supreme Court of the United States, and has been involved in various policy initiatives related to alternative dispute resolution. He analyzes domestic and international legal developments impacting the field, serves as an observer to various UNCITRAL working groups, and speaks frequently on arbitration and mediation topics. Mr. Tuchmann previously served as the AAA's Associate General Counsel and has managed the ICDR and other offices within the organization.

### Luis M. Martinez, Vice President, AAA-International Centre for Dispute Resolution

Luis M. Martinez is Vice President of the International Centre for Dispute Resolution, and is an Honorary President of the Inter-American Commercial Arbitration Commission (IACAC). Mr. Martinez is based in New York and serves as an integral part of the ICDR's international strategy team. He is responsible for international arbitration and mediation business development in various parts of the U.S. and the world. Mr. Martinez oversees the administration of cases that focus on Central and South America along with other cases that include parties that are States and/or State-related entities and cases conducted in Spanish. Mr. Martinez joined the AAA in




1996 as the first attorney hired to staff the newly created ICDR and later served as the ICDR's first director. Mr. Martinez worked as the Vice President responsible for the ICDR's international administrative services and prior to that held the position of staff attorney for the AAA's Office of the General Counsel before assuming his current position. He has had numerous articles published on international arbitration and has appeared as a speaker in programs throughout the world. Mr. Martinez is admitted to practice in New York and New Jersey and is a dual citizen of Spain and the United States. He is fluent in Spanish.

### S. Pierre Paret, AAA Vice President for Government Relations

Mr. Paret has previously worked on a number of issues important to Puerto Rico, both as a Commonwealth official and in the private sector. After working for a federal agency, Mr. Paret was appointed by two agency directors as an Intergovernmental Relations Officer in the Puerto Rico Federal Affairs Administration (PRFAA), which represents the Governor of Puerto Rico in Washington, DC. In this capacity, he served as liaison between various agencies of the executive branch of Puerto Rico and federal and nongovernmental organizations on the mainland. His portfolio in the governor's office included justice and public safety, emergency management and response, and transportation. After leaving government service, Mr. Paret joined a private government relations firm, where he served on a team that represented a number of municipalities, state agencies, and nongovernmental organizations in Puerto Rico. For example, Mr. Paret assisted the Puerto Rico Department of Justice in obtaining federal funds for a major drug interdiction project and he served that agency as liaison to the U.S. Customs Service. He also represented the City of San Juan for a number of years and obtained federal authorization and appropriations for a number of priorities, including the Tren Urbano project and AIDS prevention and treatment initiatives. Mr. Paret holds a Bachelor of Arts degree in international relations from The American University in Washington, D.C., and is fluent in Spanish.

### Thomas M. Ventrone, Vice President, Case Management Center

Mr. Ventrone has been involved in court and private ADR case management, primarily in a supervisory and leadership capacity, for over 25 years. He is presently responsible for the oversight, administration, and management of all cross-border arbitration, mediation and other dispute resolution cases filed within the ICDR and managed under various rules. Mr. Ventrone directly supervises a multi-lingual team of attorneys from jurisdictions throughout the world who are trained to provide high-quality case management services to parties, counsel and participating arbitrators and mediators. Mr. Ventrone also serves on the international strategy team of the ICDR providing leadership and direction in regard to the growth and development of the ICDR's services throughout the world. Prior to joining the ICDR, Mr. Ventrone managed the AAA's New Jersey office overseeing a team responsible for the administration of a large number of commercial, employment and insurance disputes. Mr. Ventrone also serves as a staff facilitator for the ICDR Symposium arbitrator training sessions; speaks and presents about ADR at conferences throughout the world; and trains representatives from arbitral institutions, governments and law firms in case management techniques and ADR processes and procedures.

 

### III.    AAA-ICDR Government and Large-Scale Claims Program Capabilities

The AAA-ICDR not only has the capabilities, technology, and human resources to address these cases, but it also has the ability to quickly design and implement such a program. Responding to the needs of government at all levels, we have previously implemented a number of large-scale and/or urgent ADR programs. Some of our programs, for example, entailed rapid deployment of our capabilities to assist a several states in bringing the benefits of ADR to a large number of cases resulting from major disasters. Some of these programs have had a short, limited timeframe while others are ongoing programs, such as some of our post-disaster programs. We have the technology, staff, and arbitrators to quickly ramp up and deploy the resources necessary to resolve disputes quickly, fairly, and efficiently. The following chart provides an overview of some examples of these cases, which are described in greater detail below.

| Examples of AAA-ICDR High-Volume Caseloads | | |
| --- | --- | --- |
| Caseload | Case Volume | Description |
| New York State Insurance Program | 304,620 cases in 2018 290,486 cases in 2017 | Administered by the AAA for over 40 years under authority of New York Department of Financial Services. |
| Hurricanes Katrina and Rita (for governments of Louisiana and Mississippi) | 17,831 cases total | Louisiana and Mississippi designated the AAA as administrator of their post-disaster claims programs. |
| Automobile Industry Special Binding Arbitration Program | 1,575 cases filed | Authorized by Congress through statute. Program had a 7-month timeframe. |
| Storm Sandy Program – NY State Government | 3,360 | Mediation of post-storm claims. |
| Storm Sandy Program – NJ State Government | 991 | Mediation of post-storm claims. |
| Hurricane Andrew – FL State Government | Over 2,500 claims handled | Florida-mandated program, with a 92% settlement rate. |
| North Carolina Disaster Mediation Program | Varies by disaster | The AAA has worked with the NC Department of Insurance on this program since 2006. |

### AAA-ICDR Background and History

The AAA is a neutral, non-partisan, not-for-profit public service organization with a long history of working with all levels of government in the prevention and resolution of disputes. The cornerstones of the Association's mission are independence, neutrality, service and integrity. On numerous occasions, since our founding in 1926, government has called upon the AAA for advice

 

and assistance in the design, development, and implementation of alternative dispute resolution (ADR) projects. The AAA currently helps resolve hundreds of thousands of disputes yearly under governmental authority, and it stands ready to assist other government agencies in developing programs to leverage the efficiency, speed, and cost- effectiveness of ADR.

As the nation's leading authority on the use of ADR, the AAA has a number of roles. It has developed the highest ethical standards for arbitrators and mediators. It has over 7,000 trained and qualified neutral arbitrators and mediators. It has developed specialized rules and procedures to increase the fairness and efficiency of dispute resolution in different subject areas, such as healthcare, consumer, and employment disputes. It offers professional, independent case administration and state-of-the-art technology. It provides impartial and independent administration and oversight of nongovernmental elections. With offices throughout the United States and one international office, and cooperative agreements with 87 organizations in 54 countries, the AAA is the leading force in the national and international ADR arenas.

The AAA's expertise and qualifications, coupled with our nonprofit status and strong record of accomplishment of delivering results in the governmental and commercial environments, provide governments with the confidence to delegate significant responsibilities to the AAA. The ability to customize and tailor ADR procedures, rules, and timelines can be particularly useful when designing alternative programs in a governmental setting. Through our government dispute resolution services, the burdens on agencies and court systems throughout the country are greatly reduced.

### Examples/Case Studies of AAA Government ADR Programs

Congress and state legislatures, federal and state agencies, and local governments have designated the AAA in statutes, regulations, executive orders, and contracts to resolve a wide range of disputes under government authority. Many of these programs incorporate innovative elements that provide an alternative to traditional administrative or judicial mechanisms. Examples of current and prior AAA government programs include:

### 1. U.S. Department of Justice and FCC Antitrust Settlement

AAA staff worked (under a confidentiality agreement) with the U.S. Department of Justice to develop a AAA binding arbitration mechanism that was incorporated in a proposed settlement of a major antitrust case, and ultimately incorporated in a final judgment by the federal court. The AAA concurrently worked with the Federal Communications Commission on this antitrust matter and developed an arbitration mechanism that agency adopted. Authority: U.S. District Court for the District of Columbia, Modified Final Judgment, Case 1:11-cv-00106.

 

### 2.   AAA Automobile Industry Special Binding Arbitration Program

AAA's experts worked with key members and committees of the U.S. Senate and House of Representatives to design a program to resolve a large number of complex cases resulting from the bankruptcy and reorganization of General Motors and Chrysler on an expedited timeframe. Congress ultimately designated the AAA in a statute, which was signed by the President, to administer a nationwide ADR program that resolved over 1500 disputes through settlement, mediation, and binding arbitration administered by the AAA, and completed within a statutory timeline of approximately seven months. For additional detail and statistical data, please download a copy of A Report to Congress on the Automobile Industry Special Binding Arbitration Program, published by the Association in November 2010 and available on the AAA website. Authority: Consolidated Appropriations Act of 2010, Public Law 111-117, §747 (and related legislative history).

### 3.   U.S. Department of Commerce Privacy Shield Program

The AAA-ICDR (International Centre for Dispute Resolution, the international division of the AAA) was selected by the U.S. Department of Commerce's International Trade Administration to develop and implement the EU-U.S. Privacy Shield program. This current multi-year contract includes development of arbitral rules and procedures, administration of arbitral cases, and administration of the Arbitral Fund, which as of January 2020 has received over $6 million in mandatory contributions from over 7000 U.S. businesses. In 2018, the contract was expanded to include the Swiss-U.S. Privacy Shield program. Authority: Federal contract.

### 4.   AAA Administration of New York State No-Fault Insurance Program

Since 1974, the AAA has been designated by the New York State Insurance Department as the program administrator for resolution of disputed No-Fault, Uninsured Motorist, and SUM (Supplementary Uninsured Motorist) claims. These programs provide for specialized rules, specific qualifications for a roster of permanent arbitrators, extensive case statistic and financial reporting to the New York State Insurance Department, and dedicated Conciliators and Case Managers. In 2019, the AAA administered over 300,000 cases, handling all related logistics, documents, and financials on behalf of the State of New York under this program. Authority: New York State Insurance Law Section 5106; New York State Insurance Department Regulation No. 68 (11 NYCRR 65), Subpart 65-4.

---

 

5. **Florida Department of Insurance—Hurricane Andrew Issues**

In the wake of Hurricane Andrew, the American Arbitration Association worked with the Florida Department of Insurance to implement an alternative dispute resolution program to help resolve disputes between homeowners and insurance carriers through mediation in a quick and cost-efficient manner. The Florida Insurance Commissioner appointed the AAA to administer the program, which was widely regarded as a great success and resolved over 2500 cases. Authority: Emergency Rule 4-166.030 Alternative Procedures for Resolution of Disputed Claims Arising from Hurricane Andrew.

6. **Federal Trade Commission FRAND Disputes**

The FTC, in approving the merger of Google and Motorola Mobility, included an arbitration provision for the resolution of potential disputes regarding Fair, Reasonable, and Non-Discriminatory (FRAND) pricing through the AAA. Authority: FTC Decision and Order, Docket No. C-4410.

7. **AAA Medicare Arbitration Demonstration Project**

The AAA worked with the federal Centers for Medicare & Medicaid Services (CMS) and representatives of the states of Connecticut, Massachusetts, and New York to design and implement a system to resolve certain disputes related to federal reimbursement for home health care expenses incurred by state programs. This multi-year demonstration project incorporated customized rules (the AAA Medicare Demonstration Project Rules) developed with the parties, a special panel of expert neutrals with background in relevant substantive issues, and streamlined administration provided by the AAA's professional case management staff. Authority: CMS statutory authority to conduct Medicare demonstration projects: 42 USC 1395 (b)1. Supplemented by MOUs between CMS and the states of Connecticut, Massachusetts, and New York (entitled Arbitration of Disputed Cases in Home Health Agency Third Party Liability Demonstration), 2007.

8. **Pension Benefit Guaranty Corporation Multiemployer Pension Plan Arbitration**

The PBGC (a federal government agency) included a provision for the resolution through AAA arbitration of certain disputes. The AAA has administered these arbitrations under its Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes since 1981. Authority: regulation, 51 FR 22585.

 

9. **FIFRA Environmental Protection Agency Pesticide Disputes**

The AAA, through an arrangement and regulation issued by the Federal Mediation and Conciliation Service, provides arbitrators to resolve disputes among pesticide producers under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). The AAA also administers these cases under specialized FIFRA Arbitration Rules, which govern these proceedings. The United States Supreme Court upheld the constitutionality of this process in Thomas v. Union Carbide Agricultural Products Co. [105 S. Ct. 3325 (1985)]. Authority: Code of Federal Regulations, 29 CFR 1440(b), which reads "…For the purpose of compliance with the Federal Insecticide, Fungicide, and Rodenticide Act (hereinafter ``the Act''), the roster of arbitrators maintained by the Federal Mediation and Conciliation Service shall be the roster of commercial arbitrators maintained by the American Arbitration Association. Under this Act, arbitrators will be appointed from that roster. The fees of the American Arbitration Association shall apply, and the procedure and rules of the Federal Mediation and Conciliation Service, applicable to arbitration proceedings under the Act, shall be the FIFRA arbitration rules of the American Arbitration Association, which are hereby made a part of this regulation."

10. **New York Storm Sandy Mediation Program**

The AAA was designated by Governor Cuomo and the NY Department of Financial Services in 2012 to administer a voluntary mediation program for disputes between homeowners and insurance companies for claims arising from Storm Sandy, which helped resolve over 3000 disputes. Authority: Fifteenth Amendment to New York Insurance Regulation 64.

11. **New Jersey Storm Sandy Mediation Program**

The AAA was designated by the New Jersey Department of Banking and Insurance to administer a mediation program for disputes between policyholders and insurers for disputes arising from Storm Sandy involving claims against homeowners, automobile and commercial insurance policies. The program resolved nearly 1000 cases. Authority: New Jersey Department of Banking and Insurance Order No. A13-106.

12. **United States Olympic Committee Disputes**

The AAA is designated to resolve disputes arising from United States Olympic Committee (USOC) decisions. In addition, to be recognized by the USOC, amateur sports organizations must require the use of arbitration under the AAA. The Association also provides specialized arbitrators to resolve disputes arising at the various Olympic events throughout the world. Authority: Federal statute, 36 USC 391(b)(3), which reads in part "…agrees to submit, upon demand of the

---




Corporation, to binding arbitration conducted in accordance with the commercial rules of the American Arbitration Association in any controversy involving its recognition as a national governing body, as provided for in section 395 of this title, or involving the opportunity of any amateur athlete, coach, trainer, manager, administrator or official to participate in amateur athletic competition, as provided for in the Corporation's constitution and bylaws…" Also, federal statute, 36 USC 395(c)(1), which reads in part "…The right to review by any party aggrieved by a determination of the Corporation under the requirements of this section or section 391(c) of this title shall be to any regional office of the American Arbitration Association. Such demand for arbitration shall be submitted within 30 days of the determination of the Corporation. Upon receipt of such a demand for arbitration, the Association shall serve notice on the parties to the arbitration and on the Corporation, and shall immediately proceed with arbitration according to the commercial rules of the Association in effect at the time of the filing of the demand…"

### 13. IRS International Tax Treaty Disputes

The Internal Revenue Service contracted the ICDR for the administration of arbitration cases arising from international tax treaties with France, Germany, Belgium, and Canada. The ICDR also served as a financial intermediary, working with foreign governments on behalf of the IRS, to ensure fees, expenses, and arbitrator compensation are paid appropriately. Authority: Federal contracts.

### 14. Federal Communications Commission/AAA Special Communications Arbitration Panel

The FCC designated the American Arbitration Association to resolve certain disputes arising from several major media mergers. In the Orders approving these mergers, the FCC required the arbitration of certain disputes under the AAA's Commercial Rules, with some modifications. The AAA assembled a panel of highly qualified neutrals with experience in media programming contract dispute resolution and knowledge of retransmission consent disputes and regional sports network programming contract disputes. The AAA also administered these cases on a national level. Authority: Federal Communications Commission Memorandum Opinion and Order 11-4, Memorandum Opinion and Order 08-66, Memorandum Opinion and Order 06-105, and Memorandum Opinion and Order 03-330.

### 15. Federal Reserve System

Since 1970, the AAA has been the designated provider to the Federal Reserve System's Labor Relations Panel of several services, including providing neutrals to serve as investigators and hearing officers.  Authority: Code of Federal Regulations, 12 CFR 269b, which reads in part "…the panel may refer the matter, accompanied by a general or particularized request, to the National





Center for Dispute Settlement of the American Arbitration Association (hereinafter referred to as the Center) to make an investigation and to determine whether the charging party has established a prima facie case."

16. **Department of Interior**

Disputes between the Department of Interior and private landowners arising from land valuation claims are to be resolved by arbitrators provided by the AAA and in accordance with AAA rules. Authority: Statutory authority, 43 USC 1716(d)(2), which reads in part "…(2) If within one hundred and eighty days after the submission of an appraisal or appraisals for review and approval by the Secretary concerned, the Secretary concerned and the other party or parties involved cannot agree to accept the findings of an appraisal or appraisals, the appraisal or appraisals shall be submitted to an arbitrator appointed by the Secretary from a list of arbitrators submitted to him by the American Arbitration Association for arbitration to be conducted in accordance with the real estate valuation arbitration rules of the American Arbitration Association."

17. **Environmental Protection Agency—Emissions Disputes**

The AAA is authorized by regulation to help resolve certain disputes between part manufacturers and vehicle manufacturers that arise from warranty claims. These cases are to be arbitrated and administered by the AAA under the AAA's Commercial Arbitration Rules. Authority: Code of Federal Regulations, 40 CFR 85.2117(b)(3), which reads "…(3) Arbitration shall be carried out pursuant to the Arbitration Rules contained in appendix II of this subpart which are based on Commercial Arbitration Rules published by the American Arbitration Association, revised and in effect September 1, 1988."

18. **Environmental Protection Agency—Toxic Substances Control Act Reimbursement Disputes**

The AAA is authorized by EPA regulation to help resolve certain disputes that may arise related to reimbursement for costs incurred under section 4(a) of the TSCA. These cases are to be arbitrated and administered by the AAA under specialized procedures. Authority: Federal regulatory authority, 40 CFR 790-792

19. **Minnesota No-Fault Insurance Disputes**

The American Arbitration Association has been administering the Minnesota No-Fault arbitration system since 1975 and averages approximately 5000 cases per year. Authority: Minnesota's No-Fault arbitration system established under the Minnesota No-Fault Automobile Insurance Act, Section 65B.525, with oversight by the state Supreme Court.





20. **Florida Residential Mortgage Foreclosure Mediation Program**

In 2010, the AAA was chosen by Judicial Circuit Courts in Florida's 8th, 17th, and 18th Circuits as the official mediation administrator for the Residential Mortgage Foreclosure Mediation (RMFM) program. The RMFM program stipulates that all lawsuits involving a residential mortgage foreclosure of an owner- occupied homestead residence will be referred to the AAA. Once the homeowner has been notified, and if they agree to participate in the program, they will first undergo mortgage foreclosure counseling. The homeowner and the lender will then begin the mediation process with the objective of reaching an early and mutually agreeable settlement of their dispute. Authority: Pursuant to Administrative Order AOSC09-54 (12/28/09) of the Florida Supreme Court.

21. **West Virginia Department of Environmental Protection**

In 2003, the AAA began to administer a unique set of cases in West Virginia that were part of an arbitration program created by the state legislature to resolve damage disputes between blasting/coal companies and property owners. The program came about as part of surface mining blasting rules established by legislation in 1999, which call for a two-step process to deal with blasting claims. Under the program, a dispute will first be submitted to the West Virginia Office of Explosives & Blasting, a division of the West Virginia Department of Environmental Protection, for investigation, evidence gathering, and determination by an impartial claims administrator. If one of the parties is not satisfied with the decision, they can move to the second step—arbitration under the auspices of the AAA. Authority: West Virginia Legislative Rule 199-1-6, Arbitration for Blasting Damage Claims.

22. **New York Worker's Compensation Health Insurer's Match Program (HIMP)**

In 1993, the New York Worker's Compensation Board issued a regulation that provided for arbitration of eligible disputed requests for reimbursement by health insurers or health benefits plans from workers compensation carriers for benefits paid for a qualified claimant's treatment. Since then the AAA has administered the arbitration provisions of the regulation. Authority: Subpart 325-6 of Title XII of the official compilation of codes of rules and regulations of the state of New York.

IV.     **Arbitral Rules and Administrative Procedures**

The AAA-ICDR has extensive expertise in the development and customization of arbitral rules and procedures that have been recognized by and withstood scrutiny from the courts. The AAA-ICDR

 

proposes the use of its Commercial Arbitration Rules (Amended and Effective October 1, 2013) as modified by the set of procedural modifications listed below to reflect the requirements of the Binding Arbitration phase of the ADR Procedures as specified in the Court's Order along with other modifications we may suggest that may be beneficial for this process.

The AAA-ICDR's Commercial Arbitration Rules are tried and tested rules that reflect the "best practices" and incorporate the latest provisions that parties, their counsel, and arbitrators expect in an arbitration today. They provide the arbitrators with the framework and powers to render all necessary procedural determinations to bring the process to its conclusion with awards that will be recognized and enforced.

Once approved and finalized, these rules as modified below will be used by the AAA-ICDR to administer any arbitration cases filed under this program in the Binding Arbitration phase.

The AAA-ICDR will provide a set of procedural modifications to be applied in conjunction with the Commercial Arbitration Rules to incorporate the requirements listed in Section 5 of the Binding Arbitration Phase of the Court's Order.

The AAA-ICDR will provide all required administrative services to fulfill the necessary steps from the initiation of the case to the delivery of the final award. The AAA- ICDR administrative role will focus on the following procedural milestones.

- Request for arbitration received at a central point of contact with case filing requirements reviewed in compliance with the terms of this program.

- Case is initiated, with correspondence sent to all parties scheduling an administrative conference call with the parties and the AAA-ICDR administrator.

- Administrative conference call takes place; administrative issues discussed along with the arbitrator selection process.

- Arbitrator selection process conducted. AAA-ICDR to use arbitrators from the panel that will be designated for these cases with Spanish language capabilities based in Puerto Rico and other US cities.

- Arbitrators will be guided through a conflict and disclosure process, and the AAA-ICDR will handle and decide any party challenges to the arbitrator. If AAA-ICDR removes the arbitrator based on a challenge, it will appoint a replacement arbitrator, who will similarly perform a conflicts check and make disclosures. Upon completion of this process, the AAA-ICDR will confirm the arbitrator's (or replacement arbitrator's) appointment.

 

- Preliminary hearing (telephonic if possible) scheduled and agenda prepared. Arbitrator issues a procedural order providing framework and schedule for the arbitration.

- Hearings scheduled, hearing notices prepared and sent to the parties.

- Financials reviewed, deposits for compensation requested as all related costs shared equally between the claimant and the debtors.

- Information-gathering, document exchange phase takes place as required by the ADR Procedures as reflected by the arbitrator's procedural order. AAA-ICDR case administrator maintains strict observance of the calendar for the arbitration.

- Evidentiary hearing take place; facilities are reserved if needed and notice provided.

- Post-hearing submissions (if requested by the arbitrator).

- Award preparation.

- Award issued and case closed – arbitrator financial invoices reviewed and processed.

- Financial reports completed.

The arbitrators will also be required to comply with The AAA-ABA Code of Ethics for Arbitrators in Commercial Disputes, which was originally prepared by a joint committee comprised of the AAA and the American Bar Association.


**V.      ADR Procedures – Conditions Precedent to the Binding Arbitration Phase.**

- ADR Procedures Prior to Binding Arbitration – Offer Exchange Procedures

The following procedures are based on the AAA-ICDR's understanding of the ADR procedures as provided by Proskauer.  If the AAA-ICDR is selected as the administrator, further discussions between the AAA-ICDR and Proskauer regarding any additional modifications will be scheduled prior to the implementation and start-up of this program and then again after the outcome of the initial test cases that may require the possible modifications to this section as drafted below.


Once the Court commences the ADR procedures (100 days following approval), the AAA-ICDR as the administrator, in contact with the Oversight Board, shall be notified of the number of claimants that have received the ADR Transfer Notice and will again be notified when subsequent transmission of the ADR Transfer Notices are made in intervals of 45 days to additional claimants.

 

The Oversight Board shall initially file a smaller number of claims to test the process at the program's commencement. The AAA-ICDR shall establish and coordinate communications with the Oversight Board/Commonwealth for the purpose of obtaining information regarding the number and types of cases that may be headed to the Binding Arbitration phase, including which documents will be provided to the AAA-ICDR such as the ADR Transfer Notice and other information regarding the claims that may be publically available on the Court's docket including status notices.

The Oversight Board shall notify the AAA-ICDR of the Claimants that consent to binding arbitration in responding to the Offer Letter and/or the ADR Transfer Notice. The Oversight Board shall also advise the AAA-ICDR of the Claimants that returned the Offer Letter and/or ADR Transfer Notice without expressly consenting to binding arbitration, as they may consent to arbitration later on. The Oversight Board shall also provide AAA-ICDR copies of the Offer Exchange Impasse Notice, as this will provide the AAA-ICDR with an estimate of the potential number of cases that are moving through this first phase and then proceeding on to the Evaluative Mediation phase.

The estimated timeframe for the Offer Exchange procedures is approximately 150 days if certain options are exercised. The Claimant's response is due within 25 days of the transmission of the ADR Transfer Notice unless it did not contain an offer, in which case Debtor has 60 days to serve the Offer upon the Claimant before the 25 days start to run. The parties may also engage in counteroffers, which may add 30 to 60 days to the Offer Exchange Procedures phase.

- **ADR Procedures Prior to Binding Arbitration – Evaluative Mediation**

In the event that a claim is not resolved through the Offer Exchange process, the claim will proceed to Evaluative Mediation handled by the Title III Court. Information exchanged during the Offer Exchange process shall be provided to the mediator.

The estimated timeframe for the mediation is 77 to 100 days or longer if settlement conferences are held, running from the mediator's appointment. The mediation will be commenced within a reasonable time (to be advised by the Oversight Board) in the event that the claim is not resolved through the Offer Exchange process.

The mediator's evaluation shall be limited to a determination of the monetary value, if any, of the designated claim, and it shall not raise or purport to evaluate any issues relating to the




potential treatment or priority of the claim pursuant to a plan of adjustment. The mediation shall terminate either after the mediator files a Notice of Impasse or the parties have not reached a settlement 75 days after the issuance of the mediator's evaluation. If the mediator fails to issue an evaluation within the time frame established in the ADR Procedures (paragraph C of section 3), the claim shall proceed to binding arbitration if both parties have consented to it.

Within ten days of the termination of the Evaluative Mediation, the Debtor shall serve upon the Claimant a notice describing the opportunity to participate in binding arbitration. If the Claimant and the Debtors have agreed to binding arbitration, as soon as reasonably practicable following the Evaluation Termination Date with respect to Claimant's Claim, the Debtors shall file and serve on the applicable Claimant (or their counsel if known), a notice of arbitration (an "Arbitration Notice").

## VI.    Procedural and Administrative Modifications for the Binding Arbitration Phase

The following procedural and administrative modifications are based on the AAA-ICDR's understanding of the ADR procedures as provided by Proskauer. If the AAA-ICDR is selected as the administrator, further discussions between the AAA-ICDR and Proskauer regarding any additional modifications will be scheduled prior to the implementation and start-up of this program and then again after the outcome of the initial test cases that may require the possible modifications to this section as drafted below.

Arbitration Case Filing and Initiation.  The Debtor shall send the Claimant the Notice of Arbitration and at the same time will provide a copy of the Notice of Arbitration to the AAA-ICDR by email to the AAA-ICDR's case filing email box for this program.  The AAA-ICDR shall create a designated case filing email address ("PuertoRicoADRprogram@adr.org"). We suggest that all these claims be filed through that email by sending the Notice of Arbitration Form with the other filing requirements (along with the documents that Proskauer will determine to provide the arbitrator from the previous ADR processes).  Once AAA-ICDR initiates the case, the parties will access it through the AAA-ICDR WebFile platform. The Notice of Arbitration form will reflect that the Respondent is the Oversight Board/ Commonwealth, although they will be the filing party.

The Debtor will pay the Administrative Fee when they file the Notice of Arbitration. The filing fee along with all costs shall be divided equally between the Debtor and the Claimant. The AAA-ICDR and Proskauer shall have further discussions regarding the use of a draw down account or other methods for the payment of the costs for the binding arbitration proceedings.

 

The AAA-ICDR shall prepare and send to the parties the initiation letter commencing the case when the administrative filing requirements have been met. The initiation letter shall be directed to the Claimant and the Oversight Board/Commonwealth-Debtor; it shall reference the applicable rules and schedule the administrative conference call with the parties (within 14-days from the date of the initiation letter) and the administrator. The AAA-ICDR shall have further discussion with Proskauer as to the exact contents of the initiation letter, for example, will there be any materials shared or made part of the case file from the Offer Exchange Procedures or the Evaluative Mediation? Will the application of the Expedited Procedures or the Procedures for Large Complex Commercial Disputes and their thresholds amounts apply? We suggest that the agenda for the administrative conference call include the place for the arbitration, whether in person in San Juan or another location, conducted by telephonic or video hearings, or based on documents only—which information will be needed for arbitrator selection. The agenda for the administrative conference call shall also include claim specifics, the expertise and qualifications the parties are seeking from a prospective arbitrator, language, time frames, scheduling for the hearings and any additional issues raised by the parties.

The AAA-ICDR will assign the case to one of its dedicated administrative teams with Spanish language capabilities as referenced in the personnel section above.

The AAA-ICDR will identify, establish and maintain a roster of arbitrators that shall be used and appointed for these Binding Arbitrations, see the Arbitrator section below (Modification to R-3).

Answers, Counterclaims, and Changes of Claim. The AAA-ICDR shall discuss further with Proskauer whether it anticipates that Claimants will file an answer.  Section 5(h) of the ADR Procedures provides that Pre-Arbitration Statements are to be exchanged 14 days prior to the arbitration hearing, but the Procedures do not specifically allow (or prohibit) an answer or counterclaims. We expect that the issue of counterclaims and changes of claim will be a focus of the first two phases of the ADR Procedures. Is it anticipated that Claimants will assert new or amended counterclaims in the Binding Arbitration phase? The parties should discuss whether to share the Mediator's Evaluation with the arbitrator, and if so, when (Modification to R-5 and R-6).

The parties shall opt out of the Commercial Rules' mediation requirement. (Modification to R-9).

 

<u>Fixing of Locale</u>. The AAA-ICDR does not have hearing facilities in Puerto Rico, however we will work with our arbitrators and local counsel in Puerto Rico and other jurisdictions to explore using their offices, hotel facilities, or other options as part of the start-up for this program. For hearings that are not taking place in Puerto Rico, the AAA-ICDR has hearing facilities throughout the United States, many with video conferencing capabilities, including New York, Miami, Atlanta, Dallas, Los Angeles, San Francisco, Philadelphia, and several others. Moreover, the ICDR routinely conducts telephonic hearings and, as a consequence of the COVID-19 crisis, parties are opting for virtual hearings via video conferencing platforms. The AAA-ICDR has drafted several guides for the parties and the arbitrators including sample orders for conducting hearings via video conferencing (see https://go.adr.org/covid19.html). The AAA-ICDR shall have further discussions with Proskauer regarding these issues and the potential modification to R-11.

<u>Appointment of the Arbitrator</u>. The AAA-ICDR suggests the use of the list method for the appointment of the arbitrators. As such, Rule R-12 shall apply except that the list will be comprised of five names chosen by the AAA-ICDR from the roster established for these binding arbitrations. In accordance with the ADR Procedures. The AAA-ICDR will appoint one arbitrator unless the parties agree to panel of three arbitrators. (Modification to R-12).

The parties shall opt out of Rules R-13, R-14 and R-16. AAA-ICDR would like further discussion regarding the application of Rule R-15, Nationality of the Arbitrator.

The AAA-ICDR suggests that the appointed arbitrators complete the standard AAA-ICDR Notice of Appointment to disclose any conflicts, interests, and relationships that may have; the AAA-ICDR case administrator would provide the completed Notice of Appointment to the parties. Section 5(c) of the ADR Procedures states that, if the arbitrator identifies a conflict in resolving a claim, that claim shall be reassigned. The AAA-ICDR suggests its robust policies and procedures for handling conflicts and disclosures be applied as set forth in by Rules R-17 and R-18 and the requirements of the AAA-ABA Code of Ethics. In accordance with its Rules, the AAA-ICDR determines whether an arbitrator should be disqualified if a party objects to their appointment, which determination is conclusive. The AAA-ICDR is open to further discussion on these points after Proskauer has reviewed the applicable rules and documents including the appointment package that would be completed by the prospective arbitrator. These documents have been provided to Proskauer and are being reviewed for further discussion.

<u>Preliminary Hearing.</u> The Preliminary Hearing is the first hearing with the parties and the




arbitrator once the arbitrator has been appointed and confirmed. The ADR Procedures (section 5(f)) contemplate that pre-hearing issues are presented to the arbitrator telephonically or in any other manner agreed to. In typical AAA-ICDR cases, we have a proposed preliminary hearing agenda that we send to the arbitrator for editing as needed for the issues in their particular case. Agenda items for these cases could cover the case and hearing schedule, exchange of documents, acknowledgment of the applicable rules, a discussion of the ADR Procedures, venue and all related logistics, specification of all claims and the framework for the arbitration. Additional points to discuss would be the Pre-Arbitration statements and the conduct of the hearings, section 5 (h) and (i) of the ADR Procedures. Proskauer has also requested that the issue of conflicts evaluation and pricing/arbitrator's compensation be raised during this hearing as well. The arbitrator would also reaffirm that they will prepare a short written opinion and award limited to determining the amount of the claim and not determining any issues relating to the treatment or priority of the claim (Modification to R-47). The AAA-ICDR suggests further discussions regarding the proposed agenda for the Preliminary Hearing and the application of the Preliminary Hearing Procedures in section P-1 and P-2 of the Commercial Arbitration Rules.

Limited Discovery, Section 5 (g). The AAA-ICDR suggests further discussions regarding this section. The time frames, logistics for depositions and the schedule for any objections and compliance may delay the arbitration hearing that must be held no later than 75 days following the arbitrator's appointment (section 5 (i)). The Preliminary Hearing also should include a discussion of the limited discovery allowed, and discovery needs of the particular case, and whether the arbitrator (or the parties by agreement) can and will modify these provisions for good cause shown as provided in the ADR Procedures. This may also require modifications to R-22, R-21, R-34 and the Large Complex Case Procedures, if applicable.

Arbitration Awards. ADR Procedures Section 5 (j) provides "Any Arbitration Award shall only determine the amount of Claim and shall not raise or determine any issues relating to the treatment or priority of the Designated Claim" (Modification to R-47).

The AAA-ICDR suggests further discussions regarding several other possible modifications listed below in section XIII.

## VII.    Administrator's Function

The AAA-ICDR will serve as the administrator of any arbitrations filed under this Binding Arbitration phase of the ADR Procedures, providing administrative services to enable efficient,

 

well-organized arbitrations.

Consistent with the final approved ADR Procedures and the Commercial Rules, the AAA-ICDR's functions as the program's administrator will include the following:

- Assist with the initiation and administration of the arbitration cases, including managing the documents submitted by the parties, sending documents to the arbitrator, facilitating communication among the parties and the arbitrator, and maintaining an electronic case file for each case, accessible to the parties, counsel, and the arbitrator through AAA-ICDR WebFile/Neutral's e-Center. The AAA-ICDR will ensure that Binding Arbitration phase moves from initiation to award. AAA-ICDR encourages the parties' use of electronic submissions and communication when appropriate.

- Facilitate the expeditious selection of the arbitrator from the developed panel, including disclosure of relevant circumstances that may impact impartiality. The AAA-ICDR will facilitate the briefing on any party's objection to an arbitrator and will decide any such challenges. The AAA-ICDR will develop from its roster of thousands of experienced arbitrators a specialized Spanish-speaking panel that will have the necessary independence, integrity, expertise and will meet the requirements for this program. The AAA-ICDR will assist in monitoring and ensuring panel members meet the required qualifications.

## VIII.    Arbitrators

The following section on the Arbitrators is based on the AAA-ICDR's understanding of the types of claims as identified by Proskauer that shall be considered for selecting prospective arbitrators for this panel.  If the AAA-ICDR is selected as the administrator further discussions between the AAA-ICDR and Proskauer regarding additional claims may require the possible modifications to this section as drafted below.

- The qualifications for the potential arbitrators need to be finalized and shall be case-dependent. Proskauer is reviewing the types of cases that may be submitted to arbitration and will provide AAA-ICDR with further information relevant to the panel's make-up. Currently, Proskauer has identified claims involving alleged torts, personal injury, civil rights claims and breach of contract, Labor and employment and medical services cases.





- The AAA-ICDR has over 195 arbitrators that are Spanish speaking and admitted to practice in various jurisdictions including Puerto Rico and the U.S. From these lists, once the types of claims have been identified with greater specificity as to the amounts in controversy and the subject matter of the disputes, AAA-ICDR will establish a dedicated panel of arbitrators, who will be trained for this specific caseload. The final number for this panel will be dependent on a number of factors, including the volume of cases, and may be changed or expanded as necessary.

- The AAA-ICDR will facilitate arbitrator fee arrangements, including the collection and timely payment of arbitrator fees and other expenses, through deposits or advances or otherwise, as appropriate.

- The AAA-ICDR will provide arbitrators guidance on the approved ADR Procedures, monitor the performance of the arbitrators, and enforce adherence to the procedures for this program.

### IX.    AAA-ICDR Program Development Fees, Administrative Fees, and Arbitrator Compensation

- An initial program development and set-up fee will be charged for the AAA-ICDR's efforts to develop and implement the start-up for this program. This program fee will incorporate a number of the open items for discussion detailed above, specifically involving an interactive process with Proskauer/Commonwealth in the finalization of the administrative process, the rules, the development of the panel for this program and other "advance" work including translations and training that will require close, cooperative work between the AAA-ICDR and Proskauer/Commonwealth. The program development fee would be USD $15,000.

- The AAA-ICDR would administer the Binding Arbitration phase cases pursuant to the attached Commercial Rules administrative fee schedule, which provides for tiers of the two administrative fees (initial filing fee and final fee) based on the amount of the claim asserted.

- Arbitrator compensation
  - The AAA-ICDR will use its best efforts to identify arbitrators who would agree to a capped compensation fee (of USD $5,000) for the case, assuming it takes no more




than 26 hours in total. The arbitrator compensation shall be divided and paid in three equal installments of $1667.00: (1. After first procedural order is transmitted, 2. after the hearing(s) are concluded, and 3. after the award is transmitted) after submitting their invoice for these amounts after each stage that shall also include the hours worked during the applicable stages. If the case exceeds 26 hours, then additional hours will be compensated at the arbitrator's hourly rate provided that the arbitrator provides an estimate of how many hours are needed to complete the matter and the parties agree to the additional compensation.

o The AAA-ICDR also suggested as an additional option for the arbitrator's compensation its traditional compensation model based completely on the appointed arbitrator's hourly rate. The AAA-ICDR would review the arbitrator's invoices and ensure they comply with the compensation agreement and AAA-ICDR's Billing Guidelines. This is the AAA-ICDR's standard compensation model and the parties can see the arbitrator's hourly rates during the appointment strike and ranking phase thereby objecting to any arbitrators that may be deemed too expensive. Proskauer selected the aforementioned capped compensation fee model in lieu of the traditional compensation model. Please note the AAA-ICDR does not add any case management/administration fees to any arbitrator's compensation model. No portion of the AAA-ICDR's administrative fees are shared with arbitrators. AAA-ICDR arbitrators are not employees and have no ownership or financial interest in the AAA-ICDR.

• If the AAA-ICDR is selected as the administrator further discussions between the AAA-ICDR and Proskauer regarding the projected time from arbitrator appointment through Award will be needed and may necessitate an adjustment to the capped compensation rate. The AAA-ICDR as part of the development of this specialized Spanish-speaking panel will undertake a vetting of those arbitrators that would be willing to serve on these cases for the capped rate of compensation.

## X. Financial Controls and Oversight

• The financial strength of the AAA-ICDR has been firmly established over its 90+ years of operation, and the AAA-ICDR has substantial resources that provide the necessary capital structure to continuously deliver its services.

• AAA-ICDR carefully manages its receivables and any resulting collections using modern accounting systems. In addition to the necessary accounting, reporting, and governance

  

functions, our corporate headquarters' finance department includes an internal audit function to ensure compliance with all policies and procedures. A Chief Financial Officer and two Vice Presidents of Finance manage the Finance Department. In addition, the AAA undergoes a comprehensive annual external audit that is overseen by a fully independent audit committee of the AAA's Board of Directors. Reporting and other communications from the AAA-ICDR will be determined based on continued discussions.

## XI.        Additional Discussion Points.

1. Further discussion/training regarding AAA-ICDR WebFile electronic case platform including further demonstrations. The AAA-ICDR employs an advanced electronic case administration platform and is a leader in administrative technology as well as cybersecurity. These tools are essential for the administration of the large caseloads we handle each year. For additional information, please see https://www.adr.org/TechnologyServices.

2. Further discussion regarding the review of case documents and rules (they have all been provided) including the Notice of Arbitration, the initiation letter, arbitrator appointment package, and preliminary hearing agendas.

3. Further discussion point: Reporting and communicating with the Oversight Board and Proskauer during the course of the program.


Respectfully submitted on behalf of the

AAA-ICDR,


Luis M. Martinez, Esq.

**AMERICAN ARBITRATION ASSOCIATION®**

# COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES
## Administrative Fee Schedules
*Amended and Effective May 1, 2018*

For all cases determined to be international by the AAA–ICDR, the International Fee Schedule shall apply. An international case is generally defined as having either the place of arbitration or performance of the agreement outside the United States, or having an arbitration agreement between parties from different countries. To view the International Fee Schedule, visit info.adr.org/internationalfeeschedule.

The AAA offers parties two options for the payment of administrative fees.

For both schedules, administrative fees are based on the amount of the claim or counterclaim and are to be paid by the party bringing the claim or counterclaim at the time the demand or claim is filed with the AAA. *Arbitrator compensation is not included in either schedule.* Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award.

**Standard Fee Schedule:** A two-payment schedule that provides for somewhat higher initial filing fees but lower overall administrative fees for cases that proceed to a hearing.

**Flexible Fee Schedule:** A three-payment schedule that provides for lower initial filing fee and then spreads subsequent payments out over the course of the arbitration. Total administrative fees will be somewhat higher for cases that proceed to a hearing.

### Standard Fee Schedule

| Amount of Claim | Initial Filing Fee | Final Fee |
|---|---|---|
| Less than $75,000 | $925 | $800 |
| $75,000 to less than $150,000 | $1,925 | $1,375 |
| $150,000 to less than $300,000 | $2,900 | $2,200 |
| $300,000 to less than $500,000 | $4,400 | $3,850 |
| $500,000 to less than $1,000,000 | $5,500 | $6,825 |
| $1,000,000 to less than $10,000,000 | $7,700 | $8,475 |
| $10,000,000 and above | $11,000 plus .01% of the claim amount above $10,000,000 up to $65,000 | $13,750 |
| Undetermined Monetary Claims | $7,700 | $8,475 |
| Nonmonetary Claims* | $3,500 | $2,750 |
| Deficient Filing Fee | $500 | |
| Additional Party Fees | If there are more than two separately represented parties in the arbitration, an additional 10% of each fee contained in these fee schedules will be charged for each additional separately represented party. However, Additional Party Fees will not exceed 50% of the base fees contained in these fee schedules unless there are more than 10 separately represented parties. *See below for additional details.* | |

### Flexible Fee Schedule

| Amount of Claim | Initial Filing Fee | Proceed Fee | Final Fee |
|---|---|---|---|
| Less than $75,000 | Only available for claims $150,000 and above | | |
| $75,000 to less than $150,000 | | | |
| $150,000 to less than $300,000 | $1,825 | $1,875 | $2,200 |
| $300,000 to less than $500,000 | $2,200 | $3,300 | $3,850 |
| $500,000 to less than $1,000,000 | $2,750 | $4,725 | $6,825 |
| $1,000,000 to less than $10,000,000 | $3,850 | $6,275 | $8,475 |
| $10,000,000 and above | $5,500 | $10,000 plus .01% of the claim amount above $10,000,000 up to $65,000 | $13,750 |
| Undetermined Monetary Claims | $3,850 | $6,275 | $8,475 |
| Nonmonetary Claims* | $2,200 | $2,475 | $2,750 |
| Deficient Filing Fee | $500 | | |
| Additional Party Fees | If there are more than two separately represented parties in the arbitration, an additional 10% of each fee contained in these fee schedules will be charged for each additional separately represented party. However, Additional Party Fees will not exceed 50% of the base fees contained in these fee schedules unless there are more than 10 separately represented parties. *See below for additional details.* | | |

AMERICAN ARBITRATION ASSOCIATION®

## Standard Fee Schedule (Cont.)

- The **Initial Filing Fee** is payable in full by a filing party when a claim, counterclaim, or additional claim is filed.

- The **Final Fee** will be incurred for all cases that proceed to their first hearing and is payable in advance at the time the first hearing is scheduled.

- **Fee Modifications:** Fees are subject to increase if the claim or counterclaim is increased after the initial filing date. Fees are subject to decrease if the claim or counterclaim decreases prior to the first hearing.

- **Cases with Three or More Arbitrators** are subject to a minimum Initial Filing Fee of $4,400 and a Final Fee of $3,850.

- **Nonmonetary Claims:** The non-monetary filing fee is the minimum filing fee for any case requesting non-monetary relief. Where a party seeks both monetary damages and non-monetary relief, the higher of the two filing fees will apply.

**Refunds—Standard Fee Schedule:**

**Initial Filing Fees:** Subject to a $500 minimum non-refundable Initial Filing Fee for all cases, refunds of Initial Filing Fees for settled or withdrawn cases will be calculated from the date the AAA receives the demand for arbitration as follows:

- within 5 calendar days of filing—100%.
- between 6 and 30 calendar days of filing—50%
- between 31 and 60 calendar days of filing—25%

However, *no refunds can be made once:*

- any arbitrator has been appointed (including one arbitrator on a three-arbitrator panel).

**Final Fees:** If a case is settled or withdrawn prior to the first hearing taking place, all Final Fees paid will be refunded. However, if the AAA is not notified of a cancellation at least 24 hours before a scheduled hearing date, the Final Fee will remain due and will not be refunded.

## Flexible Fee Schedule (Cont.)

- The **Initial Filing Fee** is payable in full by a filing party when a claim, counterclaim, or additional claim is filed.

- The **Proceed Fee** must be paid within 90 days of the filing of the demand for arbitration or a counterclaim before the AAA will proceed with the further administration of the arbitration, including the arbitrator appointment process.

  - If a Proceed Fee is not submitted within 90 days of the filing of the Claimant's Demand for Arbitration, the AAA will administratively close the file and notify all parties.

  - If the Flexible Fee Schedule is being used for the filing of a counterclaim, the counterclaim will not be presented to the arbitrator until the Proceed Fee is paid.

- The **Final Fee** will be incurred for all cases that proceed to their first hearing and is payable in advance at the time the first hearing is scheduled.

- **Fee Modifications:** Fees are subject to increase if the claim or counterclaim is increased after the initial filing date. Fees are subject to decrease if the claim or counterclaim decreases prior to the first hearing.

- **Cases with Three or More Arbitrators** are subject to a minimum Initial Filing Fee of $2,200, a $3,300 Proceed Fee and a Final Fee of $3,850.

- **Nonmonetary Claims:** The non-monetary filing fee is the minimum filing fee for any case requesting non-monetary relief. Where a party seeks both monetary damages and non-monetary relief, the higher of the two filing fees will apply.

**Refunds—Flexible Fee Schedule:**

Under the Flexible Fee Schedule, **Filing Fees** and **Proceed Fees** are ***non-refundable*** once incurred.

**Final Fees:** If a case is settled or withdrawn prior to the first hearing taking place, all Final Fees paid will be refunded. However, if the AAA is not notified of a cancellation at least 24 hours before a scheduled hearing date, the Final Fee will remain due and will not be refunded.

## Additional Fees Applicable to the Standard Fee and Flexible Fee Schedules

**Additional Party Fees:** Additional Party Fees will be charged as described above, and in addition:

- Additional Party Fees are payable by the party, whether a claimant or respondent, that names the additional parties to the arbitration.

- Such fees shall not exceed 50% of the base fees in the fee schedule, except that the AAA reserves the right to assess additional fees where there are more than 10 separately represented parties.

- An example of the Additional Party Fee is as follows: A single claimant represented by one attorney brings an arbitration against two separate respondents, however, both respondents are represented by the same attorney. No Additional Party Fees are due. However, if the respondents are represented by different attorneys, or if one of the respondents is self-represented and the other is represented by an attorney, an additional 10% of the Initial Filing fee is charged to the claimant. If the case moves to the Proceed Fee stage or the Final Fee stage, an additional 10% of those fees will also be charged to the claimant.

**Incomplete or Deficient Filings:** Where the applicable arbitration agreement does not reference the AAA, the AAA will attempt to obtain the agreement of all parties to have the arbitration administered by the AAA.

- Where the AAA is unable to obtain the parties' agreement to have the AAA administer the arbitration, the AAA will not proceed further and will administratively close the case. The AAA will also return the filing fees to the filing party, less the amount specified in the fee schedule above for deficient filings.

- Parties that file Demands for Arbitration that are incomplete or otherwise do not meet the filing requirements contained in the rules shall also be charged the amount specified above for deficient filings if they fail or are unable to respond to the AAA's request to correct the deficiency.

**Arbitrations in Abeyance:** Cases held in abeyance by mutual agreement for one year will be assessed an annual abeyance fee of $500, to be split equally among the parties. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the arbitration will be administratively closed. All filing requirements, including the payment of filing fees, must be met before a matter will be placed in abeyance.

**Fees for Additional Services:** The AAA reserves the right to assess additional administrative fees for services performed by the AAA that go beyond those provided for in the AAA's rules, but which are required as a result of the parties' agreement or stipulation.

**Hearing Room Rentals:** The fees described above do not cover the cost of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

## Mediation—Administrative Fee Schedules

A $250 non-refundable deposit, which will be applied toward the mediation fee, is required to initiate the AAA's administration of the mediation and appointment of the mediator.

The mediator's fee is stated on his or her resume. The AAA administrative fee, split by the parties, is $75 per hour billed by the mediator with a minimum four hour charge for any mediation held. Expenses referenced in Section M-17 of the Mediation Procedures may also apply.

If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the request to initiate mediation is filed but prior to the mediation conference, the AAA administrative fee is $250 (to which the deposit will be applied) plus any mediator time and expenses incurred. These costs shall be borne by the initiating party unless the parties agree otherwise.

*If you have questions about mediation costs or services, visit* **www.adr.org** *or contact your local AAA office.*