**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------------------ X
:
In re: :
:
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
:
    as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.,* : (Jointly Administered)
:
:
    Debtors.[1] :
------------------------------------------------------------------------ X
:
In re: :
:
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
:
    as representative of : Case No. 17-BK-4780 (LTS)
:
PUERTO RICO ELECTRIC POWER AUTHORITY, : **This filing relates only to**
: **Case No. 17-BK-4780 (LTS)**
:
:
    Debtor. :
------------------------------------------------------------------------ X

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' URGENT MOTION TO
COMPEL DISCOVERY IN CONNECTION WITH MOTION TO TERMINATE
<u>BANKRUPTCY RULE 9019 MOTION</u>**

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1
BACKGROUND .................................................................................................................. 4
ARGUMENT ........................................................................................................................ 6
I.    DOCUMENT REQUEST IS RELEVANT, NARROW, AND NOT UNDULY BURDENSOME ................................................................................................. 7
II.   GOVERNMENT PARTIES' PRIVILEGE CONCERNS ARE UNFOUNDED ............... 9
III.  NOTICED DEPOSITIONS ARE NECESSARY FOR MOTION TO DISMISS ........... 10
CONCLUSION ................................................................................................................... 11

To the Honorable United States Magistrate Judge Judith Gail Dein:

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby submits the following motion (the "Motion") to compel the production of documents and deposition testimony from (i) the Financial Oversight and Management Board for Puerto Rico and its advisors at Citigroup Global Markets, Inc. ("Citi") (collectively, the "Oversight Board"), and (ii) the Puerto Rico Electric Power Authority and its advisors at Ankura Consulting Group, LLC ("Ankura") (collectively, "PREPA", and PREPA together with the Oversight Board, the "Government Parties") in relation to the *Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [Case No. 17-BK-4780-LTS, Dkt. No. 2144] (the "Motion to Dismiss"). In support of this Motion, the Committee respectfully states as follows:

## INTRODUCTION

1. In its Motion to Dismiss, the Committee asks the Court to terminate the 9019 Motion[3] because the Government Parties no longer support the underlying RSA, and therefore the Court lacks subject matter jurisdiction over the dispute. The Committee has cited in support of its position recent public statements from leaders of the Oversight Board and PREPA in which they explain that the RSA must be renegotiated and that such renegotiations are unlikely to begin until sometime in 2021. In contrast to these statements, in their most recent status report, the Government Parties claim they still need additional time to "to understand how and if the situation will impact PREPA and *to what extent (if any) they should seek to amend the RSA*."[4] Thus, there is a clear factual question that must be explored before the Court can decide the Motion to Dismiss: whether or not the Government Parties have already decided that (i) the

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion to Dismiss.

[4] Case No. 17-BK-4780-LTS, Dkt. No. 2111 (the "July 31, 2020 Status Report"), at ¶ 25 (emphasis added).

current RSA is no longer viable and needs to be renegotiated, and (ii) therefore, they do not intend to prosecute the 9019 Motion to seek approval of the current RSA.

2. On August 19, 2020, the day after filing the Motion to Dismiss, the Committee served extremely narrow discovery requests—including only a single document request—on the Government Parties relating to these factual issues. Specifically, the Committee asked the Oversight Board and PREPA (and two of their advisors responsible for the RSA) to produce documents and communications relating to the RSA and 9019 Motion from March 1, 2020 to present. The Committee also sought Rule 30(b)(6) depositions of the Oversight Board and PREPA on the same topic and two fact depositions—one of former PREPA Executive Director Jose Ortiz and another of Oversight Board member David Skeel.

3. The Committee made clear in its email transmitting the requests that it was willing to meet and confer as to custodians, search terms, and other issues to alleviate any burden the discovery may impose on the Government Parties. The Committee reiterated these sentiments during a meet-and-confer conference call with the Government Parties' counsel on August 24, 2019. The Committee also offered to withdraw its discovery requests altogether if the Government Parties would stipulate to the facts that Mr. Ortiz and others have already effectively publicly conceded—*i.e.*, that the RSA must be renegotiated and that the 9019 Motion will not go forward on the basis of the current RSA.

4. The Government Parties responded by flatly refusing to produce *any* documents or make *any* witnesses available for deposition and by rejecting the proposed stipulation. Although the Government Parties claimed that the discovery would be unduly burdensome, they failed to explain the basis for this claim and declined the Committee's repeated invitations to discuss appropriate search terms, limitations on custodians, and narrower date ranges, among

2

other things. The Government Parties also claimed, again without explanation, that many if not most of the documents responsive to the Committee's request would be subject to the attorney-client or deliberative process privileges. While certain of the responsive documents could potentially be subject to privileges, the Government Parties' concerns are largely unfounded given that they previously produced (pursuant to Court order) similar documents relating to the negotiation and consideration of the RSA notwithstanding such concerns.

5. The Government Parties' refusal to respond to the Committee's discovery—or, indeed, even consider responding to it—is unjustified and inappropriate, particularly given their failure to articulate why the discovery is unduly burdensome. Nevertheless, for purposes of this motion, the Committee is willing to further limit its discovery requests as follows to help eliminate any burden they may impose on the Government Parties:

   a. The Committee will limit the date range of its document request to include documents only from June 1, 2020 through the present (instead of March 1, 2020 through the present);

   b. The Government Parties need only search the files of four custodians—Jose Ortiz, David Skeel, Natalie Jaresko, and David Brownstein of Citi—pursuant to a search protocol to be negotiated with the Committee;

   c. The Committee will forego its Rule 30(b)(6) depositions and take only the depositions of Jose Ortiz and David Skeel, which depositions will proceed remotely and be limited to three hours each.

6. Accordingly, by this motion, the Committee respectfully requests that the Court order the Government Parties to comply with these revised requests and to complete the discovery process by no later than September 11, 2020 to give the Committee sufficient time to review results of the discovery in advance of the hearing on the Motion to Dismiss.

3

## BACKGROUND

7. On July 31, 2020, the Government Parties filed their most recent status report regarding the 9019 Motion. Even though the Court had instructed the Government Parties to "propos[e] next steps" regarding the 9019 Motion, the July 31, 2020 Status Report contains no additional information beyond the May 15, 2020 status report. Instead, the Government Parties offered to file another status report two months from then, by September 25, 2020, at which "point the Government Parties are *hopeful* that they can report on developments regarding their evaluation of the RSA and 9019 Motion."[5]

8. On August 5, 2020, the Court entered an order, granting the relief requested in the Status Report and instructing the Government Parties to "file a further status report providing an update on PREPA's financial condition and proposing next steps with respect to the 9019 Motion . . . on or before September 25, 2020."[6]

9. On August 18, 2020, the Committee filed the Motion to Dismiss, which seeks to terminate the 9019 Motion for lack of subject matter jurisdiction or, alternatively, based on the exercise of the Court's discretion, to permit the Committee to pursue its October 30, 2019 objection to the PREPA bondholders' claims under section 502 of the Bankruptcy Code.

10. On August 19, 2020, the Committee served a single document request (the "Document Request") on the Oversight Board[7] and PREPA[8]:

> All documents and communications from March 1, 2020 to present relating to the RSA and/or the 9019 Motion, including without limitation documents relating to the status of the RSA and/or the

---

[5] July 31, 2020 Status Report, at ¶ 27 (emphasis added).

[6] Case No. 17-BK-4780-LTS, Dkt. No. 2120.

[7] *Official Committee of Unsecured Creditors' Document Requests to Financial Oversight and Management Board for Puerto Rico in Connection with Motion to Terminate 9019 Motion*, dated August 19, 2020 (Exhibit 1).

[8] *Official Committee of Unsecured Creditors' Document Requests to Puerto Rico Electric Power Authority in Connection with Motion to Terminate 9019 Motion*, dated August 19, 2020 (Exhibit 2).

4

9019 Motion (including any adjournment of the 9019 Motion), whether the RSA remains viable in its current form, and/or whether the RSA may be renegotiated by the parties.

11. In addition to the Document Requests, the Committee served Rule 30(b)(6) deposition notices on the Oversight Board[9] and PREPA[10], seeking testimony regarding (1) the documents produced in response to the Document Request, and (2) "the RSA and/or the 9019 Motion, including without limitation documents relating to the status of the RSA and/or the 9019 Motion (including any adjournment of the 9019 Motion), whether the RSA remains viable in its current form, and/or whether the RSA may be renegotiated by the parties." The Committee also served deposition notices on (1) former PREPA executive director Jose Ortiz[11] and (2) Oversight Board member David Skeel.[12]

12. On August 22, 2020, counsel for the Government Parties wrote to counsel for the Committee, stating that the Committee's requested discovery "is irrelevant, overwhelmingly seeks information that is subject to the attorney client, attorney work product and deliberative process privileges, is overbroad, unduly burdensome and disproportionate to the needs of the matter, and purports to require response within less than the 30 days provided by the rules."[13] In response, counsel for the Committee noted that the Document Request is "a single, time-limited

---

[9] *Official Committee of Unsecured Creditors' Notice of Deposition to Financial Oversight and Management Board for Puerto Rico in Connection with Motion to Terminate 9019 Motion Pursuant to Fed. R. Civ. P. 30(b)(6)*, dated August 19, 2020 (Exhibit 3).

[10] *Official Committee of Unsecured Creditors' Notice of Deposition to Puerto Rico Electric Power Authority in Connection with Motion to Terminate 9019 Motion Pursuant to Fed. R. Civ. P. 30(b)(6)*, dated August 19, 2020 (Exhibit 4).

[11] *Official Committee of Unsecured Creditors' Notice of Deposition to Jose Ortiz Pursuant to Fed. R. Civ. P. 45*, dated August 19, 2020 (Exhibit 5).

[12] *Official Committee of Unsecured Creditors' Notice of Deposition to David Skeel Pursuant to Fed. R. Civ. P. 45*, dated August 19, 2020 (Exhibit 6). On August 23, 2020, the Committee served the Document Request on Citi and Ankura. See *Official Committee of Unsecured Creditors' Document Requests to Citigroup Global Markets, Inc. in Connection with Motion to Terminate 9019 Motion*, dated August 23, 2020 (Exhibit 7); *Official Committee of Unsecured Creditors' Document Requests to Ankura Consulting Group, LLC in Connection with Motion to Terminate 9019 Motion*, dated August 23, 2020 (Exhibit 8).

[13] *See* Email Chain (Exhibit 9).

5

document request," and that the Committee is "willing to confer about custodians, search terms, and other search parameters," as well as "discuss potential ways to reduce the need to review certain categories of privileged materials."[14] Counsel for the Committee also noted that the time frame for discovery was appropriate in light of the limited nature of the requests.

13. On August 24, 2020, counsel for the Committee and the Government Parties participated in a telephonic meet and confer. During the call, counsel for the Committee reiterated the Committee's willingness to discuss ways to ensure that the production of documents responsive to the Document Request would be reasonable in light of the time available. Counsel for the Committee also proposed that the parties enter into a stipulation to avoid the need for some or all of the requested discovery. Counsel for the Government Parties indicated that they would get back to the Committee with their final position on discovery.

14. On August 27, 2020, counsel for the Government Parties confirmed via email that they would not be responding to *any* of the Committee's discovery requests, nor were they willing to enter into the Committee's proposed stipulation regarding the facts at issue in the Motion to Dismiss.[15] As a result of this total refusal to produce any of the requested discovery or enter into any form of factual stipulation, the Committee was forced to file this Motion.

## ARGUMENT

15. Under the Federal Rules of Civil Procedure, discovery properly extends to "any nonprivileged matter that is relevant to any party's claim or defense [that is] proportional to the needs of the case." Fed. R. Civ. P. 26(b). In this sense, discovery is designed to "cast[] a wide net." *Skytec, Inc. v. Logistic Sys.*, 2018 WL 4372726, at *5 (D.P.R. Sept. 12, 2018). A party's refusal to produce relevant information may be remedied, upon a showing of good cause, by a

---

[14] *Id.*

[15] See Email Chain (Exhibit 9).

6

court order compelling such disclosure. *Diaz-Garcia v. Surillo-Ruiz*, 45 F. Supp. 3d 163, 166 (D.P.R. 2014). The party resisting a request for production bears the burden of establishing the lack of relevancy or undue burden of the request. *Autoridad de Carreteras y Transportacion v. Transcore Atlanic, Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016).

16. The discovery the Committee seeks here is relevant to the Motion to Dismiss, and the Government Parties have not satisfied their burden to show that it would be unduly burdensome to provide. Accordingly, the Court should compel the Government Parties to respond to the requested discovery in the manner described herein.

## I. DOCUMENT REQUEST IS RELEVANT, NARROW, AND NOT UNDULY BURDENSOME

17. There is no question that the Document Request seeks relevant information. As explained in greater detail in the Motion to Dismiss, the Court should dismiss the 9019 Motion because "(i) the RSA—which forms the sole basis for the case or controversy underlying the relief requested in the 9019 Motion—no longer exists as a viable agreement and (ii) the Government Parties have no intention of moving forward with their motion seeking approval of *this* RSA."[16] The Document Request seeks documents that go directly to these issues, and the Government Parties cannot possibly contend otherwise.

18. Indeed, the likely reason the Government Parties have objected to the Document Request is because they *know* harmful emails and other messages exist in which individuals at PREPA and the Oversight Board have conceded that the RSA must be negotiated and cannot be implemented in its current form given the unprecedented events of the last several months and the enormous impact they have had on the Puerto Rico economy. As noted in the Motion to

---

[16] Motion to Dismiss, at ¶ 2 (emphasis in original).

7

Dismiss, Mr. Ortiz has already made these statements publicly,[17] and there is every reason to believe he and others have made similar statements in private. In the past few days, yet another article was published quoting PREPA governing board member Robert Poe as stating that the "RSA that was considered last year [is] a whole different situation" given that interest rates have now plummeted such that "money is almost free at this point."[18] It could not be more clear from these statements that PREPA and the Oversight Board know the RSA has to change. The Committee is entitled to seek discovery of the evidence necessary to prove this point.[19]

19. The Government Parties also object to the Document Request as unduly burdensome, but they have not demonstrated why this is so. During meet and confer discussions, the Committee asked the Government Parties to specify the basis for their position, and they refused. The Committee explained to them that, because the 9019 Motion has been on hold for the last few months and the RSA has purportedly not changed since September 2019 (when it was last amended), there should, in theory, be very few responsive communications during the time period at issue. The Government Parties responded that they do not know the potential volume of responsive documents. This is not an adequate response. *Transcore Atlantic*, 319 F.R.D. at 427 (stating that objections based on burdensomeness must be "stated with specificity" and that "generalized objections to an opponent's discovery requests are insufficient").

---

[17] The Committee asked the Government Parties to stipulate to the accuracy of the quotes that the press has attributed to Mr. Ortiz to avoid the discovery necessary to at least confirm those statements, and they refused.

[18] Reorg Research, *PREPA Governing Board Meeting Touches on 2021 Target for Title III Exit, Clash With Oversight Board on Renewable PPOAs; 'Risks' to T&D Deal Commencement Also Discussed*, dated August 26, 2020 (Exhibit 10).

[19] The discovery that occurred in the 9019 Motion litigation previously shows that the Government Parties' position regarding the RSA will, in fact, be reflected in their (non-privileged) communications, including, for example, in slide decks provided to the Oversight Board or to PREPA's governing board, communications between the Government Parties and their advisors, communications with the PREPA bondholders, and communications among Oversight Board members.

8

20. Even though the Government Parties have failed to explain why responding to the single Document Request would be burdensome, the Committee has offered repeatedly to address their concerns through custodian limitations, search terms, and other search parameters. For example, the Committee proposed excluding from the review population communications solely with outside counsel.[20] The Government Parties flatly refused to engage in these discussions, and so the Committee never made further proposals.

21. Nevertheless, as noted above, for purposes of this motion, the Committee will agree to limit its Document Request, such that the Government Parties need only collect documents from *four custodians*—Natalie Jaresko, David Skeel, Jose Ortiz, and David Brownstein (of Citi)—*since June 1, 2020* (instead of March 1, 2020), pursuant to a search protocol to be agreed upon by the parties. The Government Parties, through their sophisticated counsel, should be able to collect and produce these documents in a matter of days.[21]

## II. GOVERNMENT PARTIES' PRIVILEGE CONCERNS ARE UNFOUNDED

22. The Government Parties cannot avoid producing documents through overly broad privilege claims that the Court has already rejected. In particular, the Government Parties claim that documents relating to the reconsideration or renegotiation of the RSA would be covered by the deliberative process privilege. But the Court has already held that the Government Parties

---

[20] As an accommodation, the Committee is willing to make this concession in this particular contested matter, even though this court has already held that "it is not appropriate to make assumptions of privilege for groups of unreviewed documents." *See Order Granting in Part Renewed Motion to Compel*, dated August 2, 2019 [Case No. 17-BK-4780-LTS, Dkt. No. 1556] ("August 2, 2019 Order"), at ¶ 9.

[21] The Government Parties have also objected to the discovery requests on the basis of their timing, claiming that they are entitled to at least 30 days to respond to the requests. This argument is without merit. The Federal Rules expressly state that a court may order responses to document requests in less than 30 days, *see* Fed. R. Civ P. 34(B)(2)(A), and this happens routinely in contested matters in bankruptcy cases. In any event, given the narrowness of the Committee's requests, there is plenty of time for the Government Parties to comply with them in advance of the September 16 hearing—and there would have been even more time had the Government Parties not delayed in responding to the Committee's meet and confer request and in subsequent email correspondence. Thus, the Committee respectfully submits that it is appropriate in this instance to require the Government Parties to respond to its discovery requests on less than 30 days' notice.

9

are *not* entitled assert a deliberative process privilege over, and must produce, documents concerning their consideration and negotiation of the RSA.[22] There is no reason why documents relating to the *re*consideration or *re*negotiation of the RSA would not also be non-privileged and subject to production. Notably, the Document Request does not seek documents that relate to the Demand Protection Term Sheet or the development of the certified fiscal plan, which were the only two grounds under which the Government Parties were held to be entitled to assert the deliberative process privilege under the Court's prior order.[23]

23. While the Committee suspects that some of the documents responsive to its request may involve communications with outside counsel that are subject to the attorney-client privilege, this is no basis for the Government Parties to refuse to respond to the request altogether. As noted above, the Committee has already offered to exclude such documents from the Government Parties' review in an effort to streamline the process, and this offer still stands.

### III. NOTICED DEPOSITIONS ARE NECESSARY FOR MOTION TO DISMISS

24. In addition to receiving documents, the Committee is entitled to take the depositions it noticed. The Committee has already agreed to conduct the depositions remotely, and has indicated its willingness to discuss limiting the depositions to three hours each. Although the Committee believes that all four of its noticed depositions are appropriate, as noted above, it will agree to forego its two Rule 30(b)(6) depositions for purposes of this Motion and seek only the depositions of Jose Ortiz.and David Skeel.

25. Mr. Ortiz was head of PREPA during the negotiation of the RSA, the 9019 Motion litigation, and most of the pandemic. The Motion to Dismiss is replete with public

---

[22] *See id.* at ¶ 7 ("To the extent that AAFAF and PREPA are claiming a deliberative process privilege over the negotiation of the RSA, it is overruled.").

[23] *See id.* at ¶ 8.

10

comments and statements from Mr. Ortiz regarding his understanding that the RSA will be renegotiated and that those renegotiations will only start in 2021. The Committee is entitled to examine Mr. Ortiz regarding these statements, among other topics.[24] As noted above, the Committee asked the Government Parties to at least stipulate that Mr. Ortiz made the quoted statements and that they are accurate. The Government Parties refused.

26. The Committee is also entitled to take the deposition of Mr. Skeel, who is a member of the Oversight Board. Mr. Skeel was deposed and produced documents previously in the 9019 Motion litigation.[25] As explained in the Committee's objection to the 9019 Motion, Mr. Skeel expressed doubts regarding the existing RSA during his deposition and in documents produced in discovery, including that a recovery of 70-80% is "higher into the range of reasonableness" and that the proposed settlement in the RSA is in the "upper ranges of my comfort zone."[26] Of course, these doubts were expressed long before the COVID-19 pandemic. Testimony from Mr. Skeel is likely to reveal facts surrounding the Oversight Board's current position on the RSA and the 9019 Motion.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court enter an order substantially in the form attached hereto as **Exhibit A** granting the relief requested herein, and granting the Committee such other relief as this Court deems just and proper.

Dated: August 28, 2020

                                   */s/ Luc A. Despins* .
                                   PAUL HASTINGS LLP
                                   Luc A. Despins, Esq. *(Pro Hac Vice)*
                                   200 Park Avenue

---

[24] As the Court will recall, it previously ordered that Mr. Ortiz be a document custodian in the 9019 Motion litigation. August 2, 2019 Order, at ¶ 2.

[25] *Id.* at ¶ 1.

[26] *See* Case No. 17-BK-4780-LTS, Dkt. No. 1921-28, Skeel Tr. at 56:16-58:19.

New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (except COFINA and PBA)* [27]

- and -

*/s/ John Arrastia*
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (except COFINA and PBA) with Respect to Claims against Citi*

- and -

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433

---

[27] Paul Hastings LLP does not represent the Committee with respect to any statements in this Motion regarding Citigroup Global Markets, Inc.

12

jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (except COFINA and PBA)*

13