**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS,

    Movant,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,

    Respondent.

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 13726**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OBJECTION OF FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO TO URGENT
MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
<u>LIFT STAY TO ALLOW COMMITTEE TO PURSUE OBJECTION TO GO PRIORITY</u>**

## TABLE OF CONTENTS

                                                **Page**

**SUMMARY OF ARGUMENT** ............................................................................................... 1

**BACKGROUND** ....................................................................................................................... 3

**ARGUMENT** ............................................................................................................................. 7

    **I.**     **ALLOWING GO PRIORITY OBJECTION TO MOVE FORWARD AT THIS TIME WILL CAUSE HARDSHIP TO THE COMMONWEALTH** .................................................................................. 7

    **II.**     **CONTINUING STAY OF GO PRIORITY OBJECTION WILL NOT PREJUDICE GENERAL UNSECURED CREDITORS** ............................... 10

    **III.**     **CONTINUING STAY OF GO PRIORITY OBJECTION REPRESENTS THE MOST ECONOMICAL USE OF PARTY AND JUDICIAL RESOURCES** ................................................................................ 11

**CONCLUSION** ....................................................................................................................... 13

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection") to the *Urgent Motion of Official Committee of Unsecured Creditors to Lift Stay to Allow Committee to Pursue Objection to GO Priority* [ECF No. 13726] (the "Motion"),[3] filed by the Official Committee of Unsecured Creditors (the "Committee"). The Commonwealth respectfully requests the Court deny the Motion without prejudice for the reasons set forth below:

## SUMMARY OF ARGUMENT

1. Since its appointment, the Oversight Board has been committed to fulfilling the mandates set forth in PROMESA—providing a method for the Commonwealth and related entities and agencies to achieve fiscal responsibility and to gain access to the capital markets. As the Court is well aware, reaching those goals has been hampered by many factors: the devastation caused by Hurricanes Irma and Maria, political upheaval, unceasing earthquakes and aftershocks and the latest, COVID-19. Throughout, the Oversight Board and the Commonwealth have collaborated to ensure the health and welfare of the people of Puerto Rico, to stabilize the economy on-island and navigate towards a plan of adjustment that would address the Commonwealth's economic straits and to provide the Commonwealth with the needed access to the capital markets.

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.
[3] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

2. The Court has realized the sensitivity of the process and the numerous parties in interest attempting to advance disparate and conflicting agendas. In response thereto, the Court appointed a mediation team comprised of federal judges who have facilitated and orchestrated conversation and negotiation. Those efforts have led to a confirmed and consummated plan of adjustment for COFINA and a significantly supported (with almost $11 billion of indebtedness in support) plan of adjustment for the Commonwealth, ERS and PBA.

3. Indeed, the pandemic has cast concern on the fiscal assumptions that form the foundation of the proposed plan of adjustment. However, at this time, none of the parties to the corresponding plan support agreement believes it is in their best interests to jettison the efforts of the Mediation Team or the understandings reached and embodied in the plan of adjustment. Rather, each of the parties has agreed and, as noted in the Status Report filed with Court on July 15, 2020, begun mediation to amend or modify such understandings. While there can be no assurance that a revised agreement will be reached, all parties (being guided by the Mediation Team) are working in good faith to move these Title III cases forward and towards a conclusion, again with the concept that a global compromise and settlement is the best approach.

4. The Committee has never endorsed such efforts. It believes that, rather than a compromise of issues and the sparing of needless expenses by all parties, the parties and the Court should endure massive litigation instead. If the Committee were allowed to pursue its GO Priority Objection (as defined herein), the settlement discussions that are ongoing at this time would simply break down and disorder would ensue, with all parties being dragged into the resulting morass. Indeed, the Committee's Motion amounts to the equivalent of a motion to terminate exclusivity, as the Oversight Board is the only party that can propose a plan of adjustment and the GO Priority

2

Objection specifically targets a material issue that the Oversight Board intends to settle in connection with such a plan.

5. As detailed on the record at the March 3, 2020 omnibus hearing, the Court's decision to issue the Stay Order was guided by consideration of the three elements set forth in *Villafañe-Colon v. B Open Enterprises, Inc.*, 932 F. Supp. 2d 274 (D.P.R. 2013), namely (i) the hardship resulting from not staying a proceeding, (ii) the potential prejudice to parties if the stay is granted, and (iii) the economical use of party and judicial resources. For all of the reasons discussed more fully herein, each of the *Villafañe* factors continues to weigh heavily in favor of staying the GO Priority Objection.

6. Ultimately, the Committee's Motion is premature and should be denied without prejudice. The Oversight Board is making progress towards a renegotiated global settlement, and the Court should not permit the Committee or any other party in interest to derail those efforts. The Oversight Board has been fully transparent about the process in its Status Reports, and the Oversight Board will continue to be transparent by filing additional status reports so long as negotiations continue within a reasonable timeframe under the Mediation Team's guidance. This is simply not the time for the Committee to pursue its narrow self-interest, which would almost certainly lead other parties to follow suit and an inevitable break down of settlement discussions.

## BACKGROUND

7. On February 3, 2020, the Committee filed its *Omnibus Objection to Claims Filed or Asserted Against Commonwealth by Holders of General Obligation Bonds Asserting Priority Over Other Commonwealth Unsecured Creditors* [ECF No. 10638] (the "GO Priority Objection"), seeking a ruling that GO Bond claims are not entitled to priority over the Commonwealth's general unsecured claims.

3

8. On February 9, 2020, the Oversight Board entered into a plan support agreement (the "Plan Support Agreement") with certain holders of GO Bonds. On February 28, 2020, the Oversight Board filed its *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11946] (the "Plan") and related disclosure statement [ECF No. 11947] (the "Disclosure Statement"). To date, holders of almost $11 billion of indebtedness have executed the Plan Support Agreement or joinders thereto.

9. On March 10, 2020, the Court entered the *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 12189] (the "Stay Order"), staying, *inter alia*, contested matters and adversary proceedings relating to the validity, priority, and secured status of GO Bond claims, including the Committee's GO Priority Objection, pending a decision on confirmation of the Plan.

10. On March 23, 2020, the Oversight Board filed its *Urgent Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and Related Deadlines* [ECF No. 12485] (the "Adjournment Motion"), requesting that the hearing to consider the Disclosure Statement (the "Disclosure Statement Hearing") and related deadlines be adjourned because "COVID-19 and the economic effects therefrom, including from the closure of all non-essential businesses on Puerto Rico, cannot be calculated at this time and the attention of the Government is dedicated to addressing the pandemic." Adjournment Motion ¶ 4.

11. On March 27, 2020, the Court granted the Adjournment Motion [ECF No. 12549], adjourning the Disclosure Statement Hearing without scheduling a new date and directing the Debtors to file a status report by May 1, 2020 to set forth the measures being taken to address the pandemic and a proposed schedule for the Disclosure Statement Hearing.

12. On May 1, 2020, the Oversight Board filed the May 1, 2020 Status Report, which noted that, among other things, "[g]iven the continuing uncertainty created by COVID-19 pandemic, the Oversight Board's immediate focus is to ensure the health and well-being of the people of Puerto Rico and to assess the short- and medium-term impact of the pandemic on Puerto Rico's economy . . . . Before the Debtors' plan of adjustment and disclosure statement process can move forward, the Oversight Board must assess the pandemic's impact and the extremely difficult recovery ahead for Puerto Rico." May 1, 2020 Status Report ¶¶ 12-13. The Oversight Board requested in the May 1, 2020 Status Report that it be permitted to provide the Court with an updated status report on the Oversight Board's position on or before July 15, 2020, "which will allow the Oversight Board time to assess a proposed timeline in light of the certified budgets and fiscal plans." *Id.* ¶ 13. On May 1, 2020, the Court granted the Oversight Board's request [ECF No. 13023].

13. On May 27, 2020, the Oversight Board certified the fiscal plan for the Commonwealth of Puerto Rico (the "May 2020 Fiscal Plan").

14. On July 1, 2020, the Oversight Board announced that (a) its Chair, Mr. José B. Carrión, will not be available for re-nomination for a second term as member of the Oversight Board and that Mr. Carrión's last day serving on the Oversight Board will be October 5, 2020, or when the President and Congress appoint a successor, whichever happens first and (b) member Carlos M. García will not be available to serve a second term and would only remain on the Oversight Board until August 31, 2020. Subsequently, Jose Ramon Gonzalez announced his intention not to stand for re-nomination and that he would be leaving the Oversight Board on August 31, 2020.

5

15. On July 15, 2020, the Oversight Board filed the July 15, 2020 Status Report, which noted that, among other things, "[i]n the current absence of a vaccine and/or therapy that cures COVID-19, the Oversight Board continues to believe the primary focus of the Government and the Oversight Board should be directed to protecting the health and welfare of the people of Puerto Rico from the COVID-19 virus, while also slowly and prudently reopening critical businesses as appropriate and providing the people of Puerto Rico with ongoing reasonable, comprehensive, and sustainable solutions." July 15, 2020 Status Report ¶ 7. As for the plan and disclosure statement process, the July 15, 2020 Status Report provided:

> Having completed the process of certifying the Commonwealth fiscal plan and corresponding budget, the Oversight Board has resumed discussions with AAFAF concerning the terms of a plan of adjustment and what, if any, modifications or amendments need to be proposed to the plan of adjustment and disclosure statement filed with the Court on February 28, 2020. The Oversight Board anticipates that, in the coming weeks, the Oversight Board and AAFAF shall entertain discussions with creditors (those party to the Plan Support Agreement, as amended on March 13, 2020 and April 1, 2020, as well as other parties in interest), with the guidance of the mediation team led by the Honorable Judge Barbara J. Houser, to address the new reality created by the COVID-19 pandemic . . . .
>
> While the Oversight Board has resumed plan discussions, because of the fluid situation on the Island, the Oversight Board is unprepared at this time to propose a schedule for the Debtors' plan of adjustment and disclosure statement processes. Although the Commonwealth's fiscal plan has been certified, the Oversight Board is mindful that the uncertainty of the cessation of the ongoing COVID-19 pandemic, fiscal and economic determinations announced by authorities, and the challenges presented by the severe drought conditions require that the fiscal plan's assumptions be tested in the coming months. Furthermore, political and legislative calendars, including the ongoing electoral process and the closure of the current legislative sessions, impact the timing associated with receiving governmental assent and gaining legislative approval for the issuance of indebtedness pursuant to a plan of adjustment.

July 15, 2020 Status Report ¶¶ 17-18.

16. The Oversight Board requested in the July 15, 2020 Status Report that it be permitted to provide the Court with an updated status report on the Oversight Board's position on

or before September 11, 2020, "which will allow the Oversight Board time to assess the fiscal plan's assumptions, and report on the progress (and, hopefully, the completion) of plan discussions with AAFAF, creditors and the Court-appointed mediation team." *Id.* ¶ 19. On July 20, 2020, the Court granted the Oversight Board's request, and scheduled September 9, 2020 as the date for filing the next status report [ECF No. 13733].

17. Since the filing of the July 15, 2020 Status Report, the Oversight Board and parties to the Plan Support Agreement have begun mediation over revised terms to a plan of adjustment under the direction of Judges Houser and Colton and pursuant to the terms of the Mediation Agreement.

**ARGUMENT**

18. As detailed on the record at the March 3, 2020 omnibus hearing, the Court's decision to issue the Stay Order was guided by consideration of the three elements set forth in *Villafañe-Colon v. B Open Enterprises, Inc.*, 932 F. Supp. 2d 274 (D.P.R. 2013), namely (i) the hardship resulting from not staying a proceeding, (ii) the potential prejudice to parties if the stay is granted, and (iii) the economical use of party and judicial resources. The Committee argues that, in light of the developments over the last four months, each of the *Villafañe* factors weighs in favor of lifting the stay to allow the Go Priority Objection to move forward. *See* Motion ¶ 23. The Oversight Board vehemently disagrees—for all of the reasons discussed below, each of the *Villafañe* factors continues to weigh heavily in favor of staying the GO Priority Objection.

I. **ALLOWING THE GO PRIORITY OBJECTION TO MOVE FORWARD AT THIS TIME WILL CAUSE SEVERE HARDSHIP TO THE COMMONWEALTH**

19. The Committee asserts that "allowing the GO Priority Objection to go forward at this time does not, and cannot, disrupt the settlement with the GO bondholders because, for practical purposes, there is no longer any such settlement." Motion ¶ 24. The Committee entirely

7

misses the broader picture in an effort to pursue its narrow self-interest. The Oversight Board is in the middle of a comprehensive renegotiation with its material stakeholders given the incredibly unfortunate global downturn that has ensued after the COVID-19 pandemic began in March of this year. For this Court to allow a third party to reignite litigation with respect to one of the most material issues that affects the Oversight Board's global settlement discussions would be beyond disruptive.

20. The Committee claims that "a judicial resolution of [the GO Priority Objection] could provide much-needed clarity to help advance plan negotiations, and may force parties to re-adjust their expectations." Motion ¶ 25. The Committee also asserts that "the relief sought by the Committee is quite limited, namely the ability to seek judicial resolution of a single, discrete legal issue." Motion ¶ 26. Again, the Committee is missing the forest for the trees. Given the size and complexity of the Commonwealth's restructuring, there are numerous parties in interest attempting to advance disparate and conflicting agendas. If each of the parties in interest were allowed to circumvent the global order instituted by the Stay Order, or even if the Committee alone were allowed to pursue its GO Priority Objection, the settlement discussions that are ongoing at this time would simply break down and disorder would ensue. Indeed, the Committee's Motion amounts to the equivalent of a motion to terminate exclusivity, as the Oversight Board is the only party that can propose a plan of adjustment[4] and the GO Priority Objection specifically targets a material issue that the Oversight Board is hopeful of compromising and settling in connection with a plan of adjustment.

---

[4] *See* PROMESA § 312(a) ("Only the Oversight Board . . . may file a plan of adjustment of the debts of the debtor.").

21. Critically, the Court-appointed Mediation Team is currently overseeing mediation efforts between the Commonwealth and its major stakeholders. The Committee attempts to frame the Stay Order as being of "unlimited" duration now, but the truth is that the Oversight Board and the major stakeholders are trying to quickly make sense of the new economic reality and strike a new global settlement that reflects the latest projections in the May 2020 Fiscal Plan.

22. The Oversight Board was clear in its July 15, 2020 Status Report that the projections in the May 2020 Fiscal Plan would need to be tested in coming months given the fluid situation on the Island. The Committee seems to lack any understanding on this issue as it claims "that the projections in the recently certified fiscal plan are uncertain, but that is the case for all projections in the Oversight Board's fiscal plans. And whether new information could result in an improved fiscal outlook is simply unknowable at this time." Motion ¶ 25 n. 26. The Committee plainly fails to grasp the novelty and the severity of the situation in which the Commonwealth finds itself. The Oversight Board needs more time to continue the mediation sessions and, hopefully, reach another global settlement with its major stakeholders that reflects economic projections that parties in interest believe make sense when taking a long-term perspective. Further, there are additional sources of disruption with which to contend. Specifically, while, as noted above, the Oversight Board and the Commonwealth have worked together for the benefit of the people of Puerto Rico, the Commonwealth has recently concluded a contentious primary battle the result of which is that there will be a change in gubernatorial leadership following the general election in November. Accordingly, the Oversight Board and the Commonwealth are, once again, navigating uncharted waters as they try to reach an economic resolution to the Commonwealth's indebtedness. Moreover, while the parties in interest have begun to better understand the

9

devastating impact that the COVID-19 pandemic has had on the Island, much uncertainty remains as to when a recovery will occur and what shape it will take.

23. Ultimately, the Committee's Motion is premature and should be denied without prejudice. This is simply not the time for the Committee to be allowed to pursue its narrow self-interest, which would almost certainly lead to other parties following suit and an inevitable break down of settlement discussions.

## II. CONTINUING THE STAY OF THE GO PRIORITY OBJECTION WILL NOT PREJUDICE GENERAL UNSECURED CREDITORS

24. At the March 3, 2020 Omnibus Hearing, the Court found that the Committee had "not demonstrated a countervailing risk of prejudice" (March 4, 2020 Hr'g Tr. at 216:15-16) of staying the GO-PBA issues because the Committee retained its right to object to the Plan, and that it also has "the opportunity to accept the proposed settlement, and if the Plan is confirmed, receive the distributions contemplated thereunder" (*id.* at 216:18-20). None of the Court's findings has changed. The GO Priority Objection deals with a material issue in this restructuring, and the Oversight Board and major stakeholders are in the process of renegotiating a global settlement that would resolve all remaining material issues affecting the Commonwealth. Indeed, there is evidence and the parties remain hopeful that the terms of a renegotiated deal will be reached.

25. The Committee argues that "it is particularly troubling that the stay has now become completely divorced from any confirmation timetable." Motion ¶ 31. The Committee also asserts that "[t]he Oversight Board should not be allowed to use a defunct plan settlement to transform what was originally a stay of limited duration into a stay of unlimited duration for as long as the Oversight Board desires a settlement and continues talking to creditors." *Id.* ¶ 32. The Oversight Board is not seeking an unlimited stay—the Oversight Board is simply asking for more time to continue dealing with the incredible disruption that was thrust upon the Island over the past several

10

months. As long as meaningful progress continues to be made during the Court-appointed mediation process and the Oversight Board continues to be transparent about the status of negotiations and the efforts to continue stabilizing the Island during the pandemic, there is no reason to allow the Committee (or any other party) to lift the Stay Order and pursue its narrow self-interest to the detriment of the Commonwealth and its stakeholders as a whole.

### III. CONTINUING THE STAY OF THE GO PRIORITY OBJECTION REPRESENTS THE MOST ECONOMICAL USE OF PARTY AND JUDICIAL RESOURCES

26. The Committee argues that the GO Priority Objection "can be teed up and resolved in a timeframe of no more than a few months. Nor would litigation of the GO Priority Objection 'compete' with resources that would otherwise be spent on the plan confirmation process, as that process is currently on pause." Motion ¶ 35. Any attempt by the Committee to handicap the amount of time that would be required to resolve the GO Priority Objection demonstrates a disregard for how these cases have proceeded in the past. The litigation disputes in this restructuring are anything but orderly, often drawing out for many months and acting as catalysts for unpredictable events. Indeed, if the Committee were allowed to lift the Stay Order to pursue the GO Priority Objection, it is entirely possible that other parties would seek to procure similar relief in order to try to protect their own, narrow self-interests as well.

27. The Stay Order was issued to establish an orderly environment in which the Oversight Board and major stakeholders could propose and seek approval of a global restructuring. *See, e.g., Order Regarding Stay Period and Mandatory Mediation*, dated July 24, 2019 [ECF No. 8244] ("In order to avoid piecemeal litigation of potentially overlapping key issues, and in an effort to identify efficiently the issues that must be litigated or otherwise resolved to achieve confirmation of a plan of adjustment for the Commonwealth . . . , as well as to prioritize such issues and develop efficient approaches to the resolution of such issues, the Court hereby stays the

11

adversary proceedings and contested matters listed . . . ."). The disruptive events that have changed the world order, and the Commonwealth's economic reality with it, in recent months have required all parties in interest to reassess the situation. Given the new reality, the Oversight Board is pleased with the progress made towards a renegotiation of a global settlement, and such progress has been transparently communicated to the Court and the public. Party and judicial resources would be best served by continuing to impose the Stay Order for the foreseeable future.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

28. For the foregoing reasons, the Court should deny the Motion without prejudice.

Dated: September 1, 2020
San Juan, Puerto Rico

        Respectfully submitted,

        */s/ Hermann D. Bauer*
        Hermann D. Bauer
        USDC No. 215205
        **O'NEILL & BORGES LLC**
        250 Muñoz Rivera Ave., Suite 800
        San Juan, PR 00918-1813
        Tel: (787) 764-8181
        Fax: (787) 753-8944
        Email: hermann.bauer@oneillborges.com

        */s/ Martin J. Bienenstock*
        Martin J. Bienenstock (*pro hac vice*)
        Brian S. Rosen (*pro hac vice*)
        **PROSKAUER ROSE LLP**
        Eleven Times Square
        New York, NY 10036
        Tel: (212) 969-3000
        Fax: (212) 969-2900
        Email: mbienenstock@proskauer.com
        Email: brosen@proskauer.com

        *Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico*