**Reply Date:** September 9, 2020 at 4:00 p.m. (AST)
**Hearing Date:** September 16, 2020 at 9:30 a.m. (AST)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF No. 2144**<br><br>**This Pleading relates only to PREPA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and PREPA's Title III case (Case No. 17-BK-4780-LTS)** |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>Movant,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

RICO, as representative of PUERTO RICO ELECTRIC POWER AUTHORITY, and PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,

        Respondents.

**JOINT OBJECTION OF PREPA AND AAFAF
TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED
<u>CREDITORS TO TERMINATE BANKRUPTCY RULE 9019 MOTION</u>**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's sole Title III representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[3] and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF," and together with the Oversight Board and PREPA, the "Government Parties"), as the entity authorized to act on behalf of PREPA pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submit this joint objection (the "Objection") to the *Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion*, [ECF No. 2144] (the "Motion"), filed by the Official Committee of Unsecured Creditors (the "UCC"). In support of the Objection, the Government Parties respectfully represent as follows:

## PRELIMINARY STATEMENT[4]

1. The Motion represents the UCC's latest attempt to take control of the plan of adjustment formulation process through a procedural gambit, much like the attempt this Court rejected three months ago. The UCC's goal is to circumvent PROMESA section 312(a)'s grant to the Oversight Board of the exclusive right to propose a plan of adjustment, by taking control of a central issue whose judicial determination or settlement would control the dominant parameters of PREPA's plan of adjustment. If the Court terminates the 9019 Motion, the UCC would then seek to object to claims settled in the 9019 Motion and thereby take control. The Government Parties

---

[3] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[4] Capitalized terms used herein but not otherwise defined shall have the meaning given to them in the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [ECF No. 1235] (the "9019 Motion").

1

submit the Motion must be denied because (a) termination is simply a dismissal without prejudice, and the absence of the 9019 Motion does not serve any constructive purpose, and (b) there is no basis to grant that relief because the UCC cannot displace the Oversight Board's exclusive right to propose a plan of adjustment by taking control of a key issue.

2. This is not the first time the UCC has tried to use this pause in the process to terminate this settlement. In its May 18, 2020 response to the Government Parties' May 2020 status report,[5] the UCC asserted the RSA "no longer exists in its current form" (¶ 9) and that, unless the Oversight Board unequivocally affirms it is going forward with the RSA, the Court should terminate the 9019 Motion. UCC Status Report Response ¶ 5. After reviewing the Government Parties' submissions, the Court denied the UCC's request, adjourned the hearing on the 9019 Motion and related deadlines, and required submission of a further status report on September 25, 2020.[6] The UCC now repeats the *identical* request the Court has already denied, turning a blind eye to the reality that the island remains in the grip of the COVID-19 pandemic that has affected lives and livelihoods worldwide. The Motion seeks to short-circuit the status report procedure the Court has put in place to evaluate whether continued adjournment is warranted, end-run the pending appeal of the Court's order terminating the UCC's claim objection, while providing a pretense for the UCC to pursue discovery into the Government Parties' ongoing evaluation of the

---

[5] *Official Committee of Unsecured Creditors' (a) Response to Status Report of Government Parties Regarding COVID-19 Pandemic and PREPA 9019 RSA Motion [Docket No. 1992 in Case No. 17- 4780] and (b) Statement of Position Regarding Status Report of Financial Oversight and Management Board for Puerto Rico regarding COVID-19 Pandemic and Proposed Disclosure Statement Schedule [Docket No. 13018 in Case No. 17-3283]* [ECF No. 1996] (the "UCC Status Report Response").

[6] *Order (i) Further Adjourning Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235], and (ii) Adjourning the June 3, 2020, Hearing on the Government Parties' and the Bondholders' Motions to Dismiss Amended Complaints in Adversary Proceedings* [ECF No. 2006] ("May 22, 2020 Adjournment Order").

impact of current events on the prospects of PREPA and the island economy. As such, the Motion, which is devoid of any legal basis or merit,[7] should be denied for the following reasons.

3. *First*, the Motion is premised on the UCC's assertion that the RSA no longer exists in its current form. But the RSA's status is not a matter of opinion or a subject of inquiry, it is an objective fact, and, by its terms, the RSA remains in effect unless and until a termination right is exercised. Whether the RSA continues its course, is renegotiated, or is terminated should not be decided by the UCC, but by the Government Parties after carefully evaluating the situation on the ground. Because the evaluation of the effects of the COVID-19 pandemic remains ongoing, the Government Parties have not reached any conclusions at this time, let alone that the 9019 Motion should be terminated. Accordingly, the Court has subject matter jurisdiction over the 9019 Motion.

4. *Second*, the UCC identifies no basis for the Court to exercise its discretion to terminate a Bankruptcy Rule 9019 Motion. While the Court may exercise its discretion to apply Bankruptcy Rule 7012 to dismiss a contested matter, the UCC has not moved under this rule and it has failed to identify any grounds to dismiss the motion. Instead, the UCC's requested relief would do the opposite: prematurely shift this case from a largely consensual posture into multi-front litigation.[8]

5. *Third*, even if the Court had discretion to terminate the 9019 Motion, it should not exercise it as the UCC requests here. In accordance with the status report procedure, the Government Parties requested, and the Court directed, an adjournment of the 9019 hearing and

---

[7] All the while, in the middle of an historic pandemic, the fees incurred on the UCC's meritless legal gambit are being borne solely by the people of Puerto Rico.

[8] The UCC is concurrently pursuing the same tactic in the Commonwealth's Title III case through its *Urgent Motion of Official Committee of Unsecured Creditors to Lift Stay to Allow Committee to Pursue Objection to GO Priority* [ECF No. 13726], through which it is seeking to bring an end to ongoing settlement discussions with general obligation bondholders and shift the case into a litigation morass.

3

related deadlines so they could evaluate the long term effect of the crisis on the economy and the affordability of power. The UCC suffers no prejudice from continued adjournment: either the 9019 Motion will proceed in its current form or as amended, or it will be withdrawn. In the latter event, no parties' rights will have been compromised due to the adjournment. On the other hand, the Government Parties would be greatly prejudiced by the abrupt termination of the settlement now, as this case could be cast into litigation against their will before they have the ability to make a fulsome evaluation of the effects of the COVID-19 pandemic and recent natural disasters on PREPA's ability to achieve its fiscal targets and its capacity to service debt.

## BACKGROUND

6. On October 30, 2019, the UCC filed an objection seeking disallowance of the PREPA bond trustee's proof of claim. *See Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association, in Its Capacity as Trustee for Non-Recourse PREPA Bonds* [ECF No. 1691] (the "Claim Objection"). The UCC filed its Claim Objection even though the Government Parties had already (i) commenced (and stayed) their own Lien Challenge, and (ii) filed the 9019 Motion to settle the bondholders' claims. The Court terminated the UCC's Claim Objection, holding that the "Committee's Objection should be adjudicated, if at all, after resolution of the 9019 Motion." *Memorandum Order Terminating Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association, in Its Capacity as Trustee for Non-Recourse PREPA Bonds* [ECF No. 1855]. That order is currently under appeal in the First Circuit, which appeal has been stayed at the joint request of the UCC and Oversight Board. *See* Order, *Official Comm. of Unsecured Creditors v. PREPA*, No. 20-1122 (1st Cir. Jun. 2, 2020).

7. On March 27, 2020, the Government Parties filed a motion to adjourn the hearing and remaining deadlines in connection with the 9019 Motion due to, among other things, "[t]he spread of COVID-19 and the economic effects therefrom."[9] That motion was not opposed by the UCC, or anyone else, and was granted on April 2, 2020 [ECF No. 1954].

8. After the Government Parties submitted a status report on May 15, 2020 as directed by the Court, the UCC filed the UCC Status Report Response admitting that "[t]he Oversight Board should take the appropriate time to evaluate potential paths forward," but, nevertheless, declaring that the RSA no longer exists in its current form, and requesting the Court terminate the 9019 Motion absent the Oversight Board confirming it will proceed with the 9019 Motion in its current form. After reviewing that response and the Government Parties' submissions, the Court denied the UCC's requested relief and granted the adjournment of the hearing the Government Parties requested. *See* May 22, 2020 Adjournment Order.

9. In compliance with the May 22, 2020 Adjournment Order, the Government Parties submitted a status report on July 31, 2020, informing the Court that the COVID-19 pandemic was continuing to unfold, and that more time was necessary to understand how and if the situation will impact PREPA. Neither the UCC, nor any other party, filed a response to the status report. The Court ordered the continued adjournment of the deadlines and hearing in connection with the 9019 Motion, and directed the Government Parties to file a status report on September 25, 2020. *Order Setting Deadline for Further Status Report Regarding the COVID-19 Pandemic and the 9019 Motion* [ECF No. 2120] (the "August 5, 2020 Adjournment Order").

---

[9] *See Urgent Joint Motion Of The Government Parties To Adjourn All Deadlines Applicable To The Joint Motion Of Puerto Rico Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(a)(1) And 9019 For Order Approving Settlements Embodied In The Restructuring Support Agreement [ECF No. 1235] [ECF No. 1947].*

10. On August 18, 2020, the UCC filed the Motion.

## ARGUMENT

I. **THE MOTION SHOULD BE DENIED BECAUSE THE RSA, BY ITS TERMS, IS PENDING, AND THEREFORE AN ACTUAL CASE OR CONTROVERSY EXISTS**

11. The UCC argues this Court no longer has subject matter jurisdiction over the 9019 Motion because "there can be no reasonable dispute that the RSA…is no longer viable in its current form." Mot. ¶ 16. Simply and definitively, the RSA has not been terminated. The UCC's invitation to the Court that it ignore that fact and instead reach its own conclusions of the viability of the current RSA should be rejected.

12. Moreover, the Government Parties do not agree there are "grave doubts" about the RSA because they continue to evaluate to what extent, if any, the RSA may need to be amended. *Id.* ¶ 1. While the UCC points to various statements by officials that the RSA may need to be renegotiated as evidence that the RSA is dead (Mot. ¶ 3), those statements do not alter the reality that the RSA remains in full effect in its current form. To the extent the referenced statements have any bearing, it is to affirm that discussions and analyses surrounding the RSA are ongoing. By way of analogy, plan processes move forward all the time even though plans subsequently get amended.[10] Indeed, the RSA itself has already been amended while the 9019 Motion was pending. That amendments to the RSA may occur (and have occurred) is no reason to end the evaluation of the RSA, effectively pulling the plug on the progress made to date and thrusting the case back into a litigation posture.

---

[10] *See* 11 U.S.C. § 1127 (expressly providing that the proponent of a plan "may modify such plan at any time before confirmation").

6

13. Accordingly, because the RSA remains in place and the UCC and others oppose it, an actual case or controversy underlying the 9019 Motion exists.

## II. THE UCC HAS FAILED TO IDENTIFY A LEGAL BASIS TO "TERMINATE" A PENDING RULE 9019 MOTION

14. The UCC, citing no authority, asks the Court that, even if it determines it has subject matter jurisdiction, it should "exercise its discretion and terminate" the pending 9019 Motion. Mot. ¶ 22. The UCC makes this request even though Bankruptcy Rule 9019 expressly requires "notice and a hearing" on the 9019 Motion, and no hearing has been held.[11] And, as explained above, the UCC makes this request so it can attempt to circumvent PROMESA § 312(a).

15. While under certain circumstances a Court may exercise its discretion to consider a motion to dismiss, such motion must be grounded in Bankruptcy Rule 7012, which applies Fed. R. Civ. P. 12(b) to adversary proceedings. Bankruptcy Rule 7012 does not automatically apply in contested matters, and the UCC has not requested that the Court apply it.[12] The Court should only do so if it would advance the overall purpose of the Bankruptcy Rules, "to secure the just, speedy, and inexpensive determination of every case and proceeding." *See* Fed. R. Bankr. P. 1001.

16. The UCC has provided no reason for the Court to depart from the status report procedure it has implemented or to apply Rule 7012 to the 9019 Motion. Through the status reports directed by the Court, the Government Parties have diligently apprised all parties of developments that affect the viability of the RSA and the Government Parties' ongoing evaluation of those

---

[11] Although Bankruptcy Rule 1017 allows "dismissal for want of prosecution," that is not applicable here. Dismissal for failure to prosecute "ordinarily signifies a failure to follow up the case, so that by reason of staleness, or of omission to file proper pleadings, it has become subject to dismissal without a hearing on the merits." *In re Chalfen*, 223 F. 379, 380 (D. Mass. 1915). The Oversight Board has not forgotten about the 9019 Motion, instead it continues to assess the viability of the RSA and to periodically update the Court regarding the same.

[12] Fed. R. Bankr. P. 9014(c) ("The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply" to a contested matter).

7

matters. The Court was well within its discretion[13] to manage its calendar and agree to adjourn the hearing until there is more clarity regarding the effect of COVID on PREPA and the Puerto Rico economy on which its prospects rely. The UCC's continued efforts to interfere with the 9019 Motion only serve to second guess the Oversight Board's and the Court's judgment as to the appropriate administration of the case, which judgment has been supported by AAFAF and PREPA. Termination would not advance the "just, speedy, or inexpensive determination" of PREPA's Title III case. Rather, it would instead unravel the progress made to date on a settlement, and if the UCC has its way, cast the parties back into multi-front litigation regarding the Lien Challenge, Renewed Receiver Motion, and the dispute regarding the UCC's standing to pursue its Claim Objection, not to mention other litigation that may arise as a result of termination.

17. Accordingly, the Motion is not an insignificant procedural detail. The outcome of the Motion impacts whether peace can be maintained while the Oversight Board figures out with the help of AAFAF and others, whether the current deal or an amended version can and should proceed.[14]

### III. THE COURT HAS EXERCISED, AND SHOULD CONTINUE TO EXERCISE, ITS DISCRETION TO ADJOURN THE 9019 HEARING AND REMAINING DEADLINES

18. Because there is no basis for the Court to "terminate" the 9019 Motion, the only inquiry that could properly be before the Court is whether it should exercise its discretion to

---

[13] This Court has recognized, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 335 F. Supp. 3d 256, 262 (D.P.R. 2018) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Generally, courts have the discretionary power to stay an action in the interest of justice and efficiency." *Id.* (quoting *Total Petroleum P.R. Corp. v. T.C. Oil, Corp.*, No. 09-1105 (JP), 2010 WL 11545626, at *1 (D.P.R. May 7, 2010)).

[14] AAFAF and PREPA reserve all rights with regard to any actions taken by the Oversight Board with regard to the RSA, 9019 motion or a plan of adjustment for PREPA.

8

continue to adjourn the 9019 Motion. *See* Fed. R. Bankr. P. 9006. For the reasons the Court has previously determined, it should continue to do so.

19. The Government Parties have no intention of adjourning the 9019 Motion indefinitely, nor have they indicated any desire to do so. The Government Parties have sought, and received, temporary adjournments, while providing periodic status reports to the Court to inform it of where they stand with the assessment of the deal in light of the pandemic. As the pandemic is ongoing, so too is that assessment. Circumstances on the ground are fluid due to an unprecedented convergence of unique occurrences, including the COVID-19 pandemic, severe drought this summer, recent hurricanes and tropical storms, and earthquakes. As a result, the Government Parties continue to assess the situation, the viability of the RSA, and PREPA's ability to comply with the current fiscal plan. For the moment, these matters are a moving target and no one has full visibility as to a sustainable debt load for PREPA in light of current events. Therefore, the current adjournment of the hearing on the 9019 Motion is necessary to ensure that the Government Parties are able to pursue the best possible result for PREPA and the citizens of Puerto Rico. In the event of any near term developments, they will be reported to the Court and interested parties in the required September 25, 2020 status report, or thereafter depending on when they occur.

20. Critically, the UCC suffers no prejudice from continued adjournment. All their arguments regarding supposed prejudice are premised on an absurd fiction whereby the 9019 Motion is adjourned indefinitely. This argument assumes that the Government Parties would let PREPA sit in Title III indefinitely while the Bondholders would be content never realizing any recovery on their Bonds.

21. In no scenario will the UCC be prejudiced by continued adjournment. The UCC's argument that the Oversight Board is using the adjournment to control the claims process (Mot. ¶ 24) is telling because it evinces the UCC's desire to do exactly what we predict, namely attempt to seize control of the pivotal issues bearing on any plan of adjustment. The reality is that the Oversight Board, and not the UCC, has been designated by Congress to represent PREPA and to prosecute and administer the Title III cases. *See, e.g.*, PROMESA §§ 301(c)(7), 315. It alone has been tasked with the responsibility to develop a "holistic approach" to the Title III case that "balances and prioritizes the relevant issues and concerns in developing fiscal arrangements and plans of adjustments."[15] To that end, the Government Parties have chosen to file the 9019 Motion, and the Court has determined that no claim objection should proceed while a settlement motion is pending. While the UCC seeks, yet again, to wrest that control away from the Oversight Board, it would not have standing to prosecute its Claim Objection even if the 9019 Motion is terminated.[16] If the RSA is destined to terminate as the UCC claims, then a claim objection would be litigated

---

[15] *See In re Fin. Oversight & Mgmt. Bd. for P.R.,* 432 F. Supp. 3d 25, 30 (D.P.R. 2020) (citing *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 (Bankr. D. Colo. 1999)).

[16] First Circuit law is clear that absent leave of court, the trustee alone may interpose objections to proofs of claim. *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992); *see also, e.g.*, *In re Chi. Invs., LLC*, 470 B.R. 32, 92 (Bankr. D. Mass. 2012) (applying *In re Thompson*'s rule to chapter 11 case and dismissing objection to claim settled by debtor-in-possession); *Renco Grp., Inc. v. Wilmington Trust, N. A. (In re Magnesium Corp. of Am.)*, 583 B.R. 637, 653 (Bankr. S.D.N.Y. 2018) ("Policy considerations, including the necessity for an orderly and expeditious administration of the estate, have led the majority of courts that have addressed the issue to conclude that as a general rule, absent leave of court, the chapter 7 trustee alone may interpose objections to individual proofs of claim." (citations and internal quotation marks omitted)); *In re Dow Corning Corp.*, 244 B.R. 721, 751 (Bankr. E.D. Mich. 1999), *rev'd on other grounds*, 255 B.R. 445 (E.D. Mich. 2000), *aff'd*, 280 F.3d 648 (6th Cir. 2002) (once debtor-in-possession has filed objection to claim "no useful purpose would be served in allowing [another creditor] to pursue its own objections to these claims. Conversely, allowing such a course of action would waste judicial resources and delay administration of the bankruptcy estate to its and its creditors' detriment with no corresponding benefit to the estate. This would undermine the articulated policy concern of an orderly and efficacious administration of the bankruptcy estate."); *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 182-83 (2d Cir. 2005) (holding that Bankruptcy Code section 1109(b) does not give creditors the "unilateral right to take control of the estate's legal causes," which would conflict with the debtor's exclusive rights pursuant to Rule 9019 and as legal representative of the estate).

10

by the Government Parties through the Lien Challenge (over which the Oversight Board and AAFAF were appointed co-trustees), and not by the UCC.

22. At bottom, if the 9019 Motion proceeds in its current form, it will prove that the UCC's termination request was too hasty. If it is successfully renegotiated, it would likely result in lower recoveries to Bondholders, potentially improving the UCC's relative position (and still proving that the UCC's request was too hasty). If it is terminated, the Government Parties' Lien Challenge (premised on the same arguments set forth in the UCC's Claim Objection) will likely proceed and thus the UCC will not be harmed by an additional temporary adjournment. The Government Parties will need to decide which path this case should take, but they do not yet have the information needed to do so. The Government Parties have ample reason, not the least of which is exiting Title III to allow LUMA Energy to assume full operation of the grid for the 15 year term of the Operation and Maintenance Agreement, to move this case forward when they have the information it needs. The notion that the Government Parties would sit on the 9019 Motion to thwart the UCC's Claim Objection is absurd.

23. While the UCC faces no prejudice from continued adjournment, there is great prejudice to the Government Parties and RSA parties from an unwanted termination. While the UCC wishes to litigate, it ignores other pending litigation matters, such as the Renewed Receiver Motion, Lien Challenge, and potentially other disputes that have not yet been commenced, that will also become live if the 9019 Motion is terminated. The Government Parties would have to litigate these disputes while simultaneously managing PREPA's transformation and the effects of the pandemic. Moreover, the prejudice to PREPA would be material because once the RSA is terminated, the settlement framework would be lost and piecing it together would be an arduous undertaking after the parties have retreated to their litigation stances, especially given the volume

at which the bonds subject to the RSA have changed hands since its execution. Such a path should only be contemplated at the direction of the Oversight Board and AAFAF after a complete analysis of the relevant facts and their impact on the ultimate goal of transformation. The Government Parties should not be forced to a decision merely because the UCC is impatient and wishes to litigate.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Government Parties respectfully request the Court deny the Motion and maintain the September 25, 2020 deadline for submission of a further status report as directed in the August 5, 2020 Adjournment Order, and grant PREPA such other and further relief as is just.

| | |
|---|---|
| Dated: September 1, 2020<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>/s/ Martin J. Bienenstock<br><br>Martin J. Bienenstock (*pro hac vice*)<br>Paul V. Possinger (*pro hac vice*)<br>Ehud Barak (*pro hac vice*)<br>Daniel S. Desatnik *(pro hac vice)*<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth of Puerto Rico and the Puerto Rico Electric Power Authority*<br><br>**O'NEILL & BORGES LLC**<br><br>/s/ Hermann D. Bauer<br><br>Hermann D. Bauer<br>USDC No. 215205<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Co-Attorneys for the Financial Oversight and Management Board as representative of the Debtor* |

| | |
|---|---|
| **O'MELVENY & MYERS LLP** | **MARINI PIETRANTONI MUNIZ, LLC** |
| By: /s/ *Nancy A. Mitchell* | By: /s/ *Luis C. Marini-Biaggi* |
|     John J. Rapisardi* |     Luis C. Marini-Biaggi |
|     Nancy A. Mitchell* |     USDC No. 222301 |
|     Maria J. DiConza* |     250 Ponce de León Ave., Suite 900 |
|     7 Times Square |     San Juan, Puerto Rico 00918 |
|     New York, NY 10036 |     Telephone: (787) 705-2171 |
|     Telephone: (212) 326-2000 |     Facsimile: (787) 936-7494 |
|     Facsimile: (212) 326-2061 |     Email: lmarini@mpmlawpr.com |
|     Email:   jrapisardi@omm.com | |
|                 nmitchell@omm.com | *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |
|                 mdiconza@omm.com | |
| | **DÍAZ & VÁZQUEZ LAW FIRM, P.S.C** |
|     Peter Friedman* | |
|     1625 Eye Street, NW | /s/ *Katiuska Bolaños* |
|     Washington, DC 20006 | Katiuska Bolaños |
|     Telephone: (202) 383-5300 | USDC No. 231812 |
|     Facsimile: (202) 383-5414 | 290 Jesús T. Piñero Ave. |
|     Email:   pfriedman@omm.com | Oriental Tower, Suite 1105 |
| | San Juan, PR 00918 |
|     Elizabeth L. McKeen* | Telephone: (787) 395-7133 |
|     Ashley M. Pavel* | Facsimile: (787) 497-9664 |
|     610 Newport Center Drive, 17th Floor | |
|     Newport Beach, CA 92660 | *Counsel for Puerto Rico Electric Power Authority* |
|     Telephone: (949) 823-6900 | |
|     Facsimile: (949) 823-6994 | |
|     Email:   emckeen@omm.com | |
|                 apavel@omm.com | |

\* admitted pro hac vice

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and the Puerto Rico Electric Power Authority*