UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------- x
:
*In re* :
:
: PROMESA
THE FINANCIAL OVERSIGHT AND :
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of :
: Case No. 17-BK-3283-LTS
:
THE COMMONWEALTH OF PUERTO RICO, *et* :
*al.* : **Court Filing Relates Only to PREPA**
:
:
Debtor. :
:
------------------------------------------------------------- x
:
*In re* :
:
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
:
as representative of :
:
: Case No. 17-04780-LTS
:
PUERTO RICO ELECTRIC POWER :
AUTHORITY (PREPA),[*] : (Jointly Administered)
:
:
Debtor. :
:
------------------------------------------------------------- x

**STATEMENT OF FUEL LINE LENDERS WITH RESPECT
TO MOTION TO TERMINATE RULE 9019 MOTION**

---

[*] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

Cortland Capital Market Services LLC ("Cortland"), as successor administrative agent for the "Fuel Line Lenders"[1] under a Credit Agreement, dated May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and certain lenders (the "Scotiabank Credit Agreement"), respectfully submits this statement and response regarding the *Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* (Docket Entry No. 2144 in Case No. 17-4780, the "Termination Motion" or "Motion"),[2] and states as follows.

## PRELIMINARY STATEMENT

1. The Fuel Line Lenders agree with the Committee's fundamental position: This Title III case cannot be stalled indefinitely on the basis of a pending motion to approve a settlement that the movants do not support. Regardless of whether that unusual situation is best analyzed as a jurisdictional defect, as a failure to prosecute, or under some other legal theory, the Committee has to be correct when it contends that the 9019 Motion should be denied or withdrawn if the Government Parties are no longer actively supporting the settlement embodied in the RSA.

2. Although the Fuel Line Lenders agree with the Committee's position, they suggest that — if the relief sought by the Committee is not granted at the upcoming omnibus hearing — the Court should at least impose a short time limit on the Government Parties to make a clear and definitive decision with respect to the 9019 Motion. The Government Parties' next status report is due on September 25. If the Government Parties do not decide by that time to go forward with the 9019 Motion on a date certain, the motion should be denied.

---

[1] Cortland respectfully refers the Court to the *Objection of Cortland Capital Markets Services LLC, as Administrative Agent, and Solus to PREPA Bondholder Settlement* (Dkt. 1700 in Case No. 17-4780) for detailed background regarding the Fuel Line Lenders and their interests in this case.

[2] Capitalized terms have the same meanings as in the Termination Motion.

3. The Fuel Line Lenders are deeply concerned with the delay associated with this proceeding. The Fuel Line Lenders — who are owed $549,950,000 in principal under the Scotiabank Credit Facility, as well $146,000,000 in principal under a separate Trade Facility Agreement, plus years of accrued interest — were in forbearance since *July 2014*, more than six years ago, and have not received payment of any kind in the three years since this proceeding began.

4. As recent developments have shown, the Government Parties' efforts to settle with the Bondholders[3] — on the terms set forth in the RSA, and over the strong objections of all other constituencies — were ill-conceived. That proposed settlement caused incredible delay and expense for no benefit. At the same time, and in fairness to the Government Parties, the Fuel Line Lenders recognize that other delays in this case have been beyond anyone's control.

5. The time has come to move this case toward resolution. To do that, the Government Parties need to be straightforward with the Court and other parties about the 9019 Motion. The Government Parties also need to engage with all creditors — not just the bondholders — on a plan that recognizes the current legal landscape, including recent decisions of the First Circuit and this Court that have addressed the rights of bondholders in other PROMESA cases.

6. The Fuel Line Lenders want to be part of a solution to this case, rather than engaging in the wasteful, open-ended litigation that followed from the 9019 Motion. The Fuel Line Lenders believe there is an opportunity to move this case forward in a productive, consensual way. But to facilitate such progress, the Government Parties need to move beyond

---

[3] The term "Bondholders" refers to the holders of bonds issued under the 1974 Trust Agreement between PREPA and U.S. Bank, N.A., as successor trustee, except where context indicates otherwise.

the 9019 Motion and pursue alternatives with the Fuel Line Lenders and others. Thus, the Fuel Line Lenders respectfully submit that, if the Termination Motion is not granted in the form presented, it should be resolved by requiring the Government Parties to provide a clear statement in their next status report (or such other near-term date set by the Court) as to whether they intend to withdraw or promptly pursue the 9019 Motion. If the Government Parties are no longer pursuing the 9019 Motion, as appears to be the case, it should be withdrawn or denied.

## BACKGROUND

7. The 9019 Motion was filed on May 10, 2019. *See* Dkt. 1232 in Case No. 17-4780. It sought approval of a Definitive RSA signed the previous week, and arose out of the Preliminary RSA signed by the Ad Hoc Group of PREPA Bondholders more than two years ago, in July 2018.

8. Nearly every other major constituent in this case objected to the 9019 Motion. The Fuel Line Lenders objected on the basis, among others, that the 9019 Motion sought to subvert the particularized interests of the Fuel Line Lenders in enforcing the limitations on the Bondholders' liens and recourse.[4] Under the Trust Agreement, the Bondholders have liens and claims against the Sinking Fund, a fund to which monies can be deposited only *after* the payment of "Current Expenses" (such as the Fuel Lines) from PREPA's General Fund. By contrast, the Fuel Line Lenders have recourse claims against PREPA and its General Fund. The 9019 Motion sought to subvert that structure, expanding the PREPA Bondholders' claims and recourse to the detriment of the Fuel Line Lenders, who lent in reliance on a structure in which their claims had legal and structural priority over the bonds.

---

[4] Fuel Line Objection to 9019 Motion ¶¶ 152-157.

-4-

9. To further buttress those objections, the Fuel Line Lenders brought an adversary proceeding in which, among other things, they objected to the PREPA Bondholders' liens and claims pursuant to sections 502 and sections 506 of the Bankruptcy Code. *See* Dkt. 36 in Adv. Pro. No. 19-396 (Counts 2 and 3 in Amended Complaint); Fed. R. Bankr. P. 3007(b) (permitting claim and lien objections to be brought in an adversary proceeding). Section 502(a) authorizes the Fuel Line Lenders to pursue those objections, stating that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). For its part, the Committee brought a stand-alone objection as a contested matter. *See* Dkt. 1691 in Case No. 17-4780. With respect to the Committee's objection (and without prejudice to the Fuel Line Lenders), this Court ruled that consideration of that objection should await determination of the 9019 Motion. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, Dkt. 1855 in Case No. 17-4780 (Jan. 3, 2020).[5]

10. Since the events summarized above, the legal landscape has shifted further away from the Bondholders in light of the First Circuit's ruling in *Andalusian* and this Court's recent rulings in the Revenue Bond stay litigations.[6] The relevant Trust Agreements in those cases are similar in many relevant respects to the PREPA Trust Agreement. As the Committee has explained in the Termination Motion, those recent decisions provide additional significant grounds to object to the 9019 Motion in its current form.

---

[5] The Committee appealed from that decision, Dkt. 1878 in Case No. 17-4780, and that appeal has been held in abeyance by the First Circuit pending the determination of the 9019 Motion, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 20-1122 (1st Cir. June 2, 2020).

[6] *See Fin. Oversight & Mgmt. Bd.* v. *Andalusian Glob. Designated Activity Co. (In re Fin. Oversight & Mgmt. Bd.)*, 948 F.3d 457 (1st Cir. 2020), *pet. for cert. pending*, No. 20-126 (U.S., docketed Aug. 6, 2020); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, --- B.R. ---, 2020 WL 3791582 (D.P.R. July 2, 2020) (*PRIFA*); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, --- B.R. ---, 2020 WL 3816135 (D.P.R. July 2, 2020) (*HTA*).

## ARGUMENT

11.  It is an unusual situation when the proponent of a motion is unwilling to say whether it supports its own motion, is taking no action to prosecute it, but also will not withdraw it. The Termination Motion makes a powerful argument that there is no subject-matter jurisdiction to consider a settlement when the moving party no longer wishes to pursue it. *See* Termination Motion ¶¶ 19-21. The rubric of failure to prosecute is also applicable in these circumstances. Dismissal without prejudice for failure to prosecute would be appropriate on the basis that the Government Parties are no longer making diligent efforts to pursue their claim for relief. *See, e.g., Cintron-Lorenzo* v. *Departmento de Asuntos del Consumidor*, 312 F.3d 522, 525-26 (1st Cir. 2002); Fed. R. Civ. P. 41(b) (made applicable to this proceeding by Fed. R. Bankr. P. 7041 & 9014(c)).

12.  Regardless of which legal framework is applicable, the Government Parties cannot indefinitely refuse to take a position on their own 9019 Motion. Their failure to do so is causing prejudice to other parties, including the Fuel Line Lenders and the Committee, because (among other things) the maintenance of the 9019 Motion on the docket prevents the objections to the bondholders' secured claims from proceeding. Thus, the Termination Motion should be granted or, at the very least, the Government Parties should be given a very short deadline to make a definitive decision regarding the 9019 Motion.

13.  Given the developments of the last few months, including the lack of support for the 9019 Motion (from other creditors and from the movants themselves), the Fuel Line Lenders are hopeful that the Government Parties will finally adopt a less litigious posture and a more productive approach to resolution of the case as a whole. But for that to happen, the first step is

to drop the pretense that this case is *already* en route to resolution through the RSA. If the Government Parties will not withdraw the 9019 Motion themselves, the Court should intervene.

14. For those reasons, the Fuel Line Lenders submit that — if the Termination Motion is not granted in the form presented by the Committee — the Court should at least require the Government Parties to address the status of the RSA within a short time period. The Government Parties should thus be required to issue a definitive statement on the 9019 Motion not later than their next status report. To be clear, this statement must not simply ask for more time to "evaluate" the 9019 Motion or the like; the 9019 Motion should be denied absent an unequivocal statement from the Government Parties that they support all aspects of the RSA and the 9019 Motion and will promptly move toward a hearing.

Dated: September 1, 2020

Respectfully submitted,

 */s/ Nayuan Zouariabani*
Nayuan Zouairabani
USDC-PR No. 226411
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: (787) 250-5604
Facsimile: (787) 759-9225
Email: nzt@mcvpr.com

 */s/ Emil A. Kleinhaus*
Richard G. Mason (admitted *pro hac vice*)
Amy R. Wolf (admitted *pro hac vice*)
Emil A. Kleinhaus (admitted *pro hac vice*)
Michael H. Cassel (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: rgmason@wlrk.com
           arwolf@wlrk.com
           eakleinhaus@wlrk.com
           mhcassel@wlrk.com

*Attorneys for Cortland Capital Market Services LLC, as Administrative Agent*