## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

## RESPONDENTS' OPPOSITION TO UCC'S URGENT MOTION TO COMPEL DISCOVERY IN CONNECTION WITH MOTION TO TERMINATE BANKRUPTCY RULE 9019 MOTION

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 4

ARGUMENT ....................................................................................................... 8

I.      DOCUMENTS AND COMMUNICATIONS REGARDING THE
GOVERNMENT PARTIES' ONGOING EVALUATION OF THE RSA
ARE PRIVILEGED. .............................................................................. 8

      A.    The UCC's Requests Are Precluded by the Attorney-Client and
Work-Product Privileges. ......................................................... 8

      B.    The Deliberative Process Privilege Precludes the UCC's Demand
for Discovery into the Government Parties' Ongoing Decision-
Making Process. ....................................................................... 9

II.     THE DISCOVERY SOUGHT IS IRRELEVANT AND
DISPROPORTIONATE TO THE NEEDS OF THE CASE .............................. 12

CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blattman v. Scaramellino,*
891 F.3d 1 (1st Cir. 2018) ........................................................................................ 8

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,*
2007 WL 9702475 (S.D. Fla. Apr. 17, 2007) ........................................................... 8

*Cavallaro v. United States,*
284 F.3d 236 (1st Cir. 2002) .................................................................................... 8

*DOI v. Klamath Water Users Prot. Ass'n,*
532 U.S. 1 (2001) ..................................................................................................... 9

*FDIC v. Galan-Alvarez,*
2015 WL 5602342 (D.D.C. Sept. 4, 2015) ............................................................. 14

*FERC v. Silkman,*
2017 WL 6597510 (D. Me. Dec. 26, 2017) ............................................................ 12

*Fernandez & Hnos., Inc. v. Int'l B'hd of Teamsters,*
285 F.R.D. 185 (D.P.R. 2012) ................................................................................ 14

*Hoover Universal, Inc. v. Graham Packaging Corp.,*
1996 WL 907737 (C.D. Cal. Dec. 17, 1996) ........................................................... 8

*In re Fin. Oversight & Mgmt. Bd. for P.R.,*
2019 WL 4723730 (D.P.R. July 29, 2019) ........................................................ 13, 14

*In re Sealed Case,*
121 F.3d 729 (D.C. Cir. 1997) ............................................................................... 12

*NLRB v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975) ...................................................................................... 9, 10, 11

*Redland Soccer Club, Inc. v. Dep't of Army of U.S.,*
55 F.3d 827 (3d Cir. 1995) ..................................................................................... 12

*State of Maine v. U.S. Dep't of Interior,*
298 F.3d 60 (1st Cir. 2002) ...................................................................................... 8

*Town of Norfolk v. U.S. Army Corps of Eng'rs,*
968 F.2d 1438 (1st Cir. 1992) .............................................................................. 9, 10

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................................... 12

# TABLE OF AUTHORITIES

**(continued)**

**Page(s)**

Fed. R. Civ. P. 26(c)(1)(A) ........................................................................................ 12

Fed. R. Civ. P. 34(b)(2)(A) ........................................................................................ 5

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Puerto Rico Electric Power Authority ("PREPA"), by and through the Oversight Board, as PREPA's representative pursuant to section 315(b) of PROMESA, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government Parties"), as PREPA's representative pursuant to Act 2-2017, Ankura Consulting Group, LLC ("Ankura"), Citigroup Global Markets Inc. ("Citi," and together with Ankura, the "Consultants"), David Skeel, and Jose Ortiz (collectively, the "Respondents") respectfully submit this opposition to the *Official Committee of Unsecured Creditors' Urgent Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* (ECF 2155)[2] ("Motion to Compel").  Respondents respectfully request that the Motion to Compel be denied.  For the reasons below, the discovery sought by the UCC, including in connection with the third party subpoenas, should not proceed.

## **INTRODUCTION**

1.      Over the UCC's objections, the Court stayed the 9019 Motion[3] and stayed the UCC Claim Objection.[4]  In an attempt to reargue these decisions by the Court, the UCC now demands a host of discovery, including depositions of an Oversight Board member and PREPA's former executive director, as well as document discovery from the Government Parties and the Consultants regarding the Government Parties' litigation strategy on the 9019 Motion and their pre-decisional, ongoing deliberations with respect to the RSA.  The UCC insists on completing this discovery by September 11, 2020, notwithstanding that the Court has already ordered the

---

[2] Unless otherwise specified, "ECF _" refers to electronic case filings in Case No. 17-04780 (D.P.R.).

[3] All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion to Compel.

[4] *Objection of the Official Committee of Unsecured Creditors to Proof of Claim Number 18449 Filed by U.S. Bank National Association, in its Capacity as Trustee for Non-Recourse PREPA Bonds*, ECF No. 1691.

Government Parties to provide a status report regarding those same efforts two weeks later, on September 25, 2020. The UCC's impatience with the schedule this Court set does not justify invasive discovery into an ongoing decision-making process. In the middle of an ongoing pandemic, and notwithstanding clear orders from this Court on this very issue, the UCC has decided to engage in wasteful legal maneuvers and discovery gambits that are generating unnecessary fees borne exclusively by the people of Puerto Rico. The Motion to Compel is without merit and should be denied in its entirety.

2. *First*, the documents and testimony the UCC seeks are overwhelmingly privileged. The UCC's demand for documents and testimony concerning the Government Parties' ongoing evaluation of the RSA seeks materials protected by the attorney-client privilege and work product doctrine. Any communications by or with anyone with decision-making authority regarding the RSA or litigation of the 9019 motion are highly likely to be with counsel or reflect counsel's advice and litigation strategy or settlement negotiations.

3. The UCC erroneously argues that the Government Parties and the Consultants should be required to produce these communications because they produced communications regarding negotiation of the RSA in connection with the 9019 Motion. In connection with the 9019 Motion, the Government Parties produced communications reflecting their arms' length negotiations with the RSA counterparties before a common interest attached. The Government Parties never produced communications regarding litigation strategy on the 9019 Motion, attorney-client communications discussing restructuring strategy, or post-agreement common interest communications with the RSA parties, all of which are privileged. To the extent any responsive communications exist that would not be protected by the attorney-client privilege, common interest privilege, or work product doctrine, they would nevertheless be protected from

2

disclosure by the deliberative process privilege. The UCC seeks to turn the Government Parties'

ongoing policy deliberations regarding how to proceed with PREPA's RSA and overall

restructuring given the ongoing COVID-19 pandemic into litigation fodder, at Puerto Rico's

taxpayers' expense. This is precisely what the deliberative process privilege precludes.

4. *Second*, the discovery the UCC seeks is irrelevant and not proportional to the

needs of its Motion to Terminate. As a preliminary matter, the UCC's request should be denied

as the discovery is irrelevant and would not be able to support the relief sought in the Motion to

Terminate. In other words, the RSA, by its own terms, has not been terminated and no extrinsic

document or statement can change that. Thus, it is irrelevant what any of the Oversight Board's

advisors, PREPA's executives, or even an Oversight Board member purportedly thought. The

Government Parties all adhere to governance requirements set by applicable law and should the

RSA be terminated there would be resolutions to that effect—no such resolution exists. The

UCC claims it needs this discovery in connection with its Motion to Terminate because certain

individuals affiliated with PREPA and the Oversight Board have made public statements

suggesting the RSA needs to be amended in light of recent developments, including the COVID-

19 pandemic. These statements do not justify allowing the UCC discovery into the Government

Parties' ongoing decision-making process. The discovery request reads more like an

impermissible fishing expedition than a request for discovery intended to support a motion. If

discovery is available simply because the UCC is curious as to the Government Parties'

deliberations, prior to a decision being made, it will chill any policy deliberations. PROMESA,

for example, did not intend that deliberations in the executive session would be made public. *See*

PROMESA § 101(h)(4). The RSA remains and will remain effective unless and until it is

terminated in accordance with its terms. What individuals from the Oversight Board, PREPA, or

anyone else may or may not have said about the viability of the RSA does not change this fact.

5.      For these reasons, and as explained more fully below, Respondents respectfully
request that the Court deny the Motion to Compel.

## **BACKGROUND**

6.      The UCC's discovery demands are just the latest iteration of its continued
disregard for this Court's orders and the UCC's wasteful litigation tactics in opposing the RSA.

7.      The discovery sought by the UCC here is in furtherance of its Motion to
Terminate, which is the UCC's latest attempt to circumvent the Court's orders holding the 9019
litigation deadlines in abeyance while the Government Parties evaluate the economic impact of
the ongoing COVID-19 pandemic, and directing further status reports, by seeking to terminate
the 9019 Motion.  On March 27, 2020, in response to the spread of COVID-19 and its effects on
the people and economy of Puerto Rico, the Government Parties filed the Adjournment Motion
(ECF 1947), in which the Government Parties asked this Court to adjourn all hearing and
briefing deadlines in connection with the 9019 Motion and direct the Government Parties to file
a status report on or before May 15, 2020.  The Court granted the motion on April 2, 2020.  ECF
1954 (the "Adjournment Order").

8.      On May 15, 2020, the Government Parties filed their status report (ECF 1992),
which informed the Court that, among other things, "the Oversight Board still lacks sufficient
visibility into PREPA's prospects to determine the feasibility of the restructuring contemplated
by the RSA" (¶ 7), and requested permission to submit a second status report on July 31, 2020
(¶¶ 8-9).  The UCC responded to the May 15, 2020 status report by requesting to terminate the
9019 Motion.  ECF 1996.  The Government Parties in response argued that "a decision to
terminate a settlement with PREPA's largest creditor constituency that provides a material
discount to over $8 billion in allegedly secured bonds should not be made without the parties

being fully-informed of the alternatives and consequences [and] [t]his information is not yet

available." ECF 2002, ¶ 4.  The Government Parties also warned that a seemingly-random

termination of the RSA could cause affected parties to "revert[] to extensive litigation," and that

a future settlement would be more difficult because "the Government Parties would not be

negotiating with the same group." *Id.* ¶ 5.  Judge Swain declined to dismiss the 9019 motion.

ECF 2006.

        9.      On July 31, 2020, the Government Parties filed their updated status report.  ECF

2111.  The July 31, 2020 status report notified this Court that "[d]ue to the fluid situation on the

Island and the potential medium- and long-term impact of recent events, the pandemic in

particular, on the Puerto Rico economy and on PREPA's long term financial condition, the

Government Parties continue to evaluate the feasibility of the current RSA." *Id.*  ¶ 25.  The

Government Parties explained that "additional time is required to understand how and if the

[COVID-19] situation will impact PREPA and to what extent (if any) they should seek to amend

the RSA" and that "RSA discussions have been postponed due to uncertainty resulting from the

COVID-19 pandemic," *id.* ¶ 25.  The Government Parties therefore requested to file an updated

status report on or before September 25, 2020 to report on developments regarding their

evaluation of the RSA and the 9019 motion.  *Id.* ¶ 27.  On August 5, 2020, this Court ordered the

Government Parties by September 25, 2020 to "provid[e] an update on PREPA's financial

condition and propos[e] next steps with respect to the 9019 Motion."  ECF 2120.

        10.     On August 18, 2020, the UCC filed its Motion to Terminate and noticed it for

hearing on September 16, 2020, nine days in advance of the Court-ordered deadline for a further

status report.  ECF 2144.  The next day, on August 19, 2020, the UCC transmitted document

production requests and deposition notices to counsel for PREPA and the Oversight Board.  The

UCC directed the following document request to both PREPA and the Oversight Board:

> All documents and communications from March 1, 2020 to present relating to the RSA and/or the 9019 Motion, including without limitation documents relating to the status of the RSA and/or the 9019 Motion (including any adjournment of the 9019 Motion), whether the RSA remains viable in its current form, and/or whether the RSA may be renegotiated by the parties.

Motion to Compel, Ex. 1-2.  In contravention of the applicable rules, the UCC demanded written responses and a completed production within 13 days, by September 1, 2020, without even discussing a discovery schedule with the Government Parties.  *Id.*; *see* Fed. R. Civ. P. 34(b)(2)(A) (setting 30-day response deadline for requests for production of documents) (made applicable by Fed. R. Bankr. P. 7034 and 9014 and PROMESA Section 310).

11.    The UCC also noticed 30(b)(6) depositions for PREPA and the Oversight Board for September 7, 2020, and September 8, 2020, respectively, seeking testimony regarding the documents produced in response to the UCC's document request, and "[t]he RSA and/or the 9019 Motion, including without limitation the status of the RSA and/or the 9019 Motion (including any adjournment of the 9019 Motion), whether the RSA remains viable in its current form, and/or whether the RSA may be re-negotiated by the parties."  Motion to Compel, Ex. 3-4. The UCC also transmitted a deposition notice for David Skeel, a member of the Oversight Board, and a deposition subpoena for Jose Ortiz, PREPA's former Executive Director, seeking their individual depositions on September 9, 2020, and September 10, 2020 respectively.  Motion to Compel, Ex. 5-6.  On August 23, 2020, the UCC transmitted document subpoenas to Ankura Consulting Group, LLC with the same request the UCC directed to PREPA and AAFAF.  On August 24, 2020, the UCC transmitted the equivalent subpoena to Citigroup Global Markets Inc. In the case of both Consultants, the UCC set a return date of September 3, 2020.  *Id.*, Ex. 7-8.

12.    After the parties met and conferred by telephone on August 24, 2020, the UCC

subsequently proposed that the Government Parties could obviate the purported need for the

UCC's discovery into their ongoing deliberations by stipulating and agreeing that "(i) the RSA

no longer remains viable in its current form, (ii) they will not ask the Court to approve the RSA

in its current form through the 9019 Motion, and (iii) they do not know whether or when they

will seek approval of a new or revised RSA" and that the statements from Jose Ortiz, Fernando

Padilla, and Natalie Jaresko quoted in the Motion to Terminate are accurate. *Id.*, Ex. 9 (Aug. 25,

2020 email from N. Basset to J. Jones). The UCC sent this communication at 1:37 pm Eastern

time on August 25, 2020 and demanded a response by the end of the day. *Id.* On August 26,

2020, the UCC advised that it was preparing an urgent motion to compel, and would file no later

than Friday, August 28, 2020 unless the parties reached an agreement on discovery by then. *Id.*

(Aug. 26, 2020 email from N. Bassett to A. Pavel). On August 27, 2020, Respondents informed

the UCC they could not agree to the proposed stipulation because it was not accurate, reiterated

their objections to the UCC's discovery requests, and objected that the UCC was manufacturing

a false emergency. *Id.* (Aug. 27, 2020 email from A. Pavel email to N. Bassett).

    13.    The UCC filed the Motion to Compel on August 28, 2020. The Motion to

Compel for the first time waives the UCC's request for 30(b)(6) depositions, but seeks an order

compelling document discovery from the Government Parties and the Consultants and deposition

testimony from Jose Ortiz and David Skeel. *See generally* Motion to Compel.

    14.    The Government Parties are filing their objection to the Motion to Terminate

(ECF 2160) on the same day as this opposition.

## ARGUMENT

**I.    DOCUMENTS AND COMMUNICATIONS REGARDING THE GOVERNMENT PARTIES' ONGOING EVALUATION OF THE RSA ARE PRIVILEGED.**

**A.    The UCC's Requests Are Precluded by the Attorney-Client and Work-Product Privileges.**

15.    The attorney-client privilege safeguards communications between attorney and client that are confidential and that are made for the purpose of seeking or receiving legal advice. *Blattman v. Scaramellino*, 891 F.3d 1, 4 (1st Cir. 2018).  As this Court has recognized, the privilege does not only cover communications with attorneys, but also covers "all the persons who act as the attorney's agents" in communicating legal advice.  Case No. 17-03566, ECF 605, at 22 (quoting *Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002)).  The work product privilege protects from disclosure communications prepared by attorneys in anticipation of litigation.  *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002).

16.    The UCC is not entitled to discovery into the Government Parties' communications as to how to proceed with the 9019 motion, which is an ongoing contested matter.  *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 2007 WL 9702475, at *3 (S.D. Fla. Apr. 17, 2007) ("[P]rivileges are not waived with respect to litigation strategy, and discovery will not be permitted with regard to trial strategy."); *Hoover Universal, Inc. v. Graham Packaging Corp.*, 1996 WL 907737, at *1 (C.D. Cal. Dec. 17, 1996) (to same effect).

17.    Similarly, given the RSA was negotiated by outside counsel for AAFAF and the Oversight Board working closely with financial advisors,[5] to the extent there have been communications regarding evaluation of the RSA, the documents the UCC demands are overwhelmingly likely to consist of attorney-client communications or communications

---

[5] *See* Sobrino Decl., ECF No. 1429 ¶4; Jaresko Decl., ECF No. 1428 ¶ 11.

reflecting legal advice.  The UCC asserts that the Government Parties should be required to

produce these communications because they previously produced documents regarding the RSA

during the May through October 2019 fact discovery period.  Motion to Compel ¶ 4.  The UCC

is wrong.  The Government Parties were only required to produce communications consisting of

their arm's-length negotiations before they reached an agreement and a common interest

attached.  ECF 1652, at 20-22 (Swain, J.) (denying UCC's objection to Magistrate Judge's order

denying motion to compel production of common-interest communications).  The Government

Parties were never required to produce the post-agreement communications reflecting legal

advice or litigation strategy the UCC demands here.  *Id.*[6]

**B.    The Deliberative Process Privilege Precludes the UCC's Demand for
Discovery into the Government Parties' Ongoing Decision-Making Process.**

18.    The deliberative process privilege "rests on the obvious realization that officials

will not communicate candidly among themselves if each remark is a potential item of discovery

and front page news."  *DOI v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8-9 (2001)*; see

also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) ("'[H]uman experience teaches

that those who expect public dissemination of their remarks may well temper candor with a

concern for appearances . . . to the detriment of the decisionmaking process.'" (ellipsis in

original) (citation omitted)).  The deliberative process privilege applies to government

communications that are both "deliberative" and "predecisional."  *Town of Norfolk v. U.S. Army

Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992).  A communication is deliberative if it

---

[6] The UCC claims that it has "offered to exclude [attorney-client privileged] documents from the Government
Parties' review."  Motion to Compel ¶ 23.  But even if such an exclusion could be accomplished as a practical
matter, this does not address the problem with its discovery requests.  Even assuming a small set of non-attorney-
client-privileged documents exists, as explained below, those documents would be protected by the deliberative
process privilege, and would be irrelevant.

"makes recommendations or expresses opinions on legal or policy matters," and a communication is predecisional if the issue under discussion is not yet final. *Id.* Here, the deliberative process privilege squarely applies. No official decision has been made as to how to proceed with respect to the RSA, and the Government Parties' ongoing deliberations as to how to proceed with PREPA's restructuring in light of a global pandemic and the resultant financial impacts on the Commonwealth and PREPA is a public policy decision of the utmost importance.

19.     The UCC's arguments against application of the privilege are not persuasive. The UCC asserts that this Court has already held that "the Government Parties are not entitled [to] assert a deliberative process privilege over, and must produce, documents concerning their consideration and negotiation of the RSA." Motion to Compel ¶ 22. The UCC misconstrues this Court's Order. This Court never held that policy decisions related to the RSA are categorically not protected by the deliberative process privilege. Rather, it noted that the Oversight Board was not asserting a deliberative process privilege over the *negotiation* of the RSA with the supporting holders and held "[t]o the extent that AAFAF and PREPA are claiming a deliberative process privilege over the negotiation of the RSA, it is overruled." ECF No. 1556 ¶ 7. Here, by contrast, the discovery the UCC seeks does not concern the negotiation of the RSA with third parties, but the Government Parties' ongoing policy deliberations regarding whether the RSA remains the best path forward for PREPA given subsequent natural disasters and an ongoing global health crisis that will continue to materially affect the Commonwealth and PREPA's operations and financial condition. These policy decisions require candid debate and are therefore protected from becoming litigation grist as the UCC demands. *Sears, Roebuck & Co.*, 421 U.S. at 150.

20.     The UCC suggests in the Motion to Terminate that it believes a final decision has already been made. But the UCC points to no evidence whatsoever that the Oversight Board or

the governing boards of AAFAF and PREPA have come to any official decision.  The public statements of individuals the UCC relies upon are entirely consistent with an ongoing debate. The UCC cannot invade the Government Parties' deliberative process privilege by making a groundless accusation that the Government Parties are concealing a final decision.  If that were true, litigation adversaries could routinely circumvent the privilege under the guise of needing discovery to test their own otherwise unfounded accusations that the deliberation had completed.

21.     Further, the UCC accuses the Government Parties of objecting to the attempt to invade their ongoing deliberations because the Government Parties purportedly "***know*** harmful emails and other messages exist in which individuals at PREPA and the Oversight Board have conceded that the RSA must be negotiated and cannot be implemented in its current form given the unprecedented events of the last several months and the enormous impact they have had on the Puerto Rico economy."  Motion to Compel ¶ 18 (emphasis in original).  For the reasons stated below and in the Government Parties' opposition to the Motion to Terminate, any such purportedly "harmful" communications would have no relevance whatsoever to the question of whether the 9019 Motion should be dismissed.  More importantly, however, the Government Parties have every right to protect the integrity of their ongoing deliberations, whatever their content.  Whatever any individuals have said, either in favor of or against continuing with the RSA, in the course of candid, ongoing debate is exactly what the deliberative process privilege protects.  *Sears, Roebuck & Co.*, 421 U.S. at 150-51 ("[F]rank discussion of legal or policy matters in writing might be inhibited if the discussion were made public; and that the 'decisions' and 'policies formulated' would be the poorer as a result. . . . The quality of a particular agency decision will clearly be affected by the communications received by the decision-maker on the subject of the decision prior to the time the decision is made." (citation omitted)).

11

22.     To the extent the UCC argues that its purported need for discovery outweighs the
privilege, the UCC has not met its burden to make "a sufficient showing of need." *In re Sealed
Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55
F.3d 827, 854 (3d Cir. 1995) ("The party seeking discovery bears the burden of showing that its
need for the documents outweighs the government's interest.").  The UCC makes no argument
that its needs outweigh the Government Parties' interest in candid debate on an issue of utmost
policy importance—nor could it.  The UCC seeks to invade the Government Parties' deliberative
process privilege so that it can litigate what is essentially a motion for reconsideration of this
Court's scheduling order.  The UCC's impatience with the current litigation schedule is not a
remotely defensible reason to override the deliberative process privilege, particularly when the
UCC will receive a status update regarding the Government Parties' ongoing evaluation of the
RSA on September 25, 2020.

## II.     THE DISCOVERY SOUGHT IS IRRELEVANT AND DISPROPORTIONATE TO THE NEEDS OF THE CASE

23.     Discovery is permissible only if it is relevant to any party's claim or defense and
proportional to the needs of the case considering the burden or expense of the proposed
discovery.  Fed. R. Civ. P. 26(b)(1) (made applicable to this proceeding by Fed. R. Bankr. P.
7026 and 9014).  A party seeking discovery under FRCP 26 must "adequately explain[] the ways
in which the underlying information bears on the issues."  *FERC v. Silkman*, 2017 WL 6597510
(D. Me. Dec. 26, 2017) (overruling objection to magistrate judge order denying discovery on
proportionality grounds).  Where, as here, a party seeks to take discovery that is of limited
probative value relative to the burden it imposes, "[t]he court may, for good cause, issue an order
to protect a party or person from . . . [that] undue burden or expense . . . [including] forbidding
the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(A); *see also In re Fin. Oversight & Mgmt.*

*Bd. for P.R.*, 2019 WL 4723730, at *2 (D.P.R. July 29, 2019) (granting protective order to

preclude deposition in part because probative value "is substantially outweighed by the prospect

of multiplication of the 9019 Motion proceedings") (Swain, J.); *see also* ECF 1652 (Swain, J.)

(overruling UCC objection to order denying UCC motion to compel discovery that was beyond

the scope of the issues before the court); Case No. 17-03283, ECF 12080 (D.P.R. Mar. 5, 2020)

(Dein, J.) (denying motion to compel production of email communication on relevance grounds)

(Dein, J.); ECF 2014 (May 27, 2020) (sustaining PREPA's objections to discovery requests as

unnecessary to litigate the motion before the court).

24.    The UCC's theory of relevance is that it may be able to find statements of

individuals affiliated with the Respondents saying that the RSA should be renegotiated beyond

what is already in the public record.  Motion to Compel ¶ 18.  But absent formal termination, the

RSA remains effective.  One-off statements of individuals about the viability of the RSA do not

change this basic fact.  As this Court explained in denying email discovery to the monoline

insurers in connection with their lift-stay motions in the Commonwealth Title III case, "[n]o one

is arguing ambiguity that's going to be straightened out by some e-mail that somebody sent

someplace along the line.  It is definitely more burdensome to do an e-mail search, and it's just

not necessary." *See* Mar. 4, 2020 Hrg. Tr. 230:22-25.

25.    Here too, the discovery the UCC demands is "just not necessary."  For the reasons

stated in the Government Parties' opposition brief, the Motion to Terminate should be denied

regardless of whatever statements individuals have made regarding the RSA.  The UCC will

receive an update on the status on the Government Parties' review of the RSA when the

Government Parties file their next status report on September 25, 2020, just three weeks from

now.  That the UCC finds these reports "not credible," because it believes, without evidence, that

a final decision has been made, Termination Motion ¶ 17, is not grounds for discovery into the

Government Parties' ongoing deliberations.  As the July 31, 2020 status report explained, the

Government Parties' recent focus has been addressing ongoing emergencies related to the

January 2020 (and recurring) earthquakes, severe drought conditions, recent tropical storms, and

the COVID-19 pandemic.  ECF 2111, ¶¶ 9-10.  The need to conserve judicial resources and

administer the Title III cases efficiently counsel strongly against allowing email discovery and

multiple depositions to second-guess statements in a status report on a procedural motion.  *In re

Fin. Oversight & Mgmt. Bd. for P.R.*, 2019 WL 4723730, at *2 (July 29, 2019) (granting

protective order to preclude deposition of the Oversight Board's economist because the

discovery requested would be unduly burdensome and its probative value "is substantially

outweighed by the prospect of multiplication of the 9019 Motions proceedings," and because

allowing discovery posed a "material risk of unfair prejudice arising from waste of time and

[was] not in the interest of efficient proceedings and use of judicial resources."); ECF 1652, at 11

(denying UCC objection to Judge Dein's order denying UCC motion to compel discovery, where

documents sought were not necessary for Court to rule on pending 9019 motion) (Swain, J.).

26.     In short, in the midst of an historic pandemic, the UCC insists not only on

challenging every scheduling order the Court sets on the 9019 motion, but now also on

demanding email discovery and multiple depositions[7] to support those efforts.  The fees incurred

on the UCC's pointless litigation gambits and unnecessary discovery demands are being borne

---

[7] The UCC's arguments for deposing Jose Ortiz fare no better now than the last time this Court rejected its bid to depose him based on public statements he had made regarding the RSA.  ECF 1640 (Dein, J.) (quashing subpoena as untimely and an improper demand for apex deposition testimony); ECF 1721 (Swain, J.) (overruling UCC objection).  To the extent this Court allows any deposition testimony, the depositions should be limited in scope to March 1, 2020 to the present and not directed to top officials, including Mr. Ortiz and Mr. Skeel, without a good cause showing of need.  *See Fernandez & Hnos., Inc. v. Int'l Bhd. of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012) (apex deposition improper where information would be available through other means); *FDIC v. Galan-Alvarez*, 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015) ("The apex doctrine is no less applicable to former officials than to current officials.").

solely by the people of Puerto Rico.  This Court should put a stop to it.

## **CONCLUSION**

27.     For the reasons stated above, Respondents respectfully request that this Court

deny the Motion to Compel.  No discovery, including discovery in connection with the third-

party subpoenas, should proceed.

Dated:  September 1, 2020
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S. Desatnik *(pro hac vice)*
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

Jennifer L. Jones (*pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 284-4509
Fax: (310) 557-2193
jljones@proskauer.com

Laura E. Stafford (*pro hac vice*)
**PROSKAUER ROSE LLP**
1 International Place
Boston, MA 02130
Tel: (617) 526-9714
Fax: (617) 526-9899
lstafford@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative of the
Debtor, and David Skeel*

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative of the
Debtor, and David Skeel*

16

**O'MELVENY & MYERS LLP**

By: /s/ *Elizabeth L. McKeen*
    John J. Rapisardi (*pro hac vice*)
    Nancy A. Mitchell (*pro hac vice*)
    Maria J. DiConza (*pro hac vice*)
    7 Times Square
    New York, NY 10036
    Tel: (212) 326-2000
    Fax: (212) 326-2061
    Email:    jrapisardi@omm.com
            nmitchell@omm.com
            mdiconza@omm.com

    Peter Friedman (*pro hac vice*)
    1625 Eye Street, NW
    Washington, DC 20006
    Tel: (202) 383-5300
    Fax: (202) 383-5414
    Email:    pfriedman@omm.com

    Elizabeth L. McKeen (*pro hac vice*)
    Ashley M. Pavel (*pro hac vice*)
    610 Newport Center Drive, 17th Floor
    Newport Beach, CA 92660
    Tel: (949) 823-6900
    Fax: (949) 823-6994
    Email:    emckeen@omm.com
            apavel@omm.com

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority, Puerto Rico
Electric Power Authority, Ankura Consulting
Group, LLC, and Jose Ortiz*

**MARINI PIETRANTONI MUÑIZ LLC**

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
Email: lmarini@mpmlawpr.com

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority and Ankura
Consulting Group, LLC*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

/s/ *Katiuska Bolaños*
Katiuska Bolaños
USDC No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel: (787) 395-7133
Fax: (787) 497-9664

*Counsel for Puerto Rico Electric Power
Authority and Jose Ortiz*

**GOODWIN PROCTER LLP**

/s/ *Meghan K. Spillane*
Marshall H. Fishman (*pro hac vice*)
Meghan K. Spillane (*pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
MFishman@goodwinlaw.com
MSpillane@goodwinlaw.com
*Counsel for Citigroup Global Markets Inc.*