UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

as representative of
THE COMMONWEALTH OF PUERTO RICO, *et al.*

Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

# CONSUL-TECH CARIBE INC.'S REPLY TO OBJECTION TO MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Contents**

**PRELIMINARY STATEMENT** .................................................................................................- 1 -

**DISCUSSION** .............................................................................................................................- 2 -

**CONCLUSION** ........................................................................................................................- 14 -

**Federal Cases**

*Benedor Corp. v. Conejo Enterprises (In re Conejo Enterprises)*, 96 F.3d 346 (9th Cir. 1996)..- 9 -
*Goldberg v. Kelly,* 397 U.S. 254, 267 (1970) ................................................................................- 6 -
*In re Arnold*, 471 B.R. 578 (Bankr. C.D. Cal. 2012) ....................................................................- 9 -

**Puerto Rico Cases**

*Jarra Corp. v. Axxis Corp.*, 155 D.P.R. 764, 774-775 (2001) ......................................................- 5 -
*Octagon Consultant Group v. Municipio de Toa Baja*, 2019 WL 4417472 (TCA 2019) ............- 7 -

**Federal Statutes**

11 U.S.C. §503(b) .........................................................................................................................- 9 -
48 U.S.C. § 2165 ...........................................................................................................................- 8 -
PROMESA section 305..................................................................................................................- 1 -
Title III of PROMESA, 48 U.S.C. §§ 2101 *et seq.*,......................................................................- 9 -

**Puerto Rico Statutes**

Act 57-2020 ................................................................................................ - 1 -, - 3 -, - 10 -
PR Civil Code Art. 1068, 31 L.P.R.A. §3043 ..............................................................................- 5 -

**Federal Rules and Regulations**

*Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* of the Federal Office of Management and Budget*, 2 C.F.R. §200, et. seq.*........ - 3 -, - 4 -

**Puerto Rico Regulations**

Regulation 4276 ............................................................................................................................- 6 -
Regulation 4415 ............................................................................................................................- 7 -
Regulation 7040 ............................................................................................................................- 6 -

**Other Authorities**

5 Resnick & Sommer, Collier on Bankruptcy, ¶541.01 ...............................................................- 9 -
*Audit Tips for Managing Disaster-Related Project Costs of the Department of Homeland Security*
................................................................................................................................................- 4 -

TO THE HONORABLE LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE:

COMES NOW Consul-Tech Caribe, Inc. ("Consul-Tech" or "Contractor"), represented by the undersigned attorneys, and submits this reply to the *Objection to Motion for Allowance and Payment of Administrative Expense Claim* [D.E. 14114] ("Reply"):

## PRELIMINARY STATEMENT

On August 26, 2020 the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Commonwealth of Puerto Rico ("Debtor" or "Government") filed its *Objection to Motion for Allowance and Payment of Administrative Expense Claim* [D.E. 14114] ("Objection"). More than an Objection, however, the filing is yet another request for extension of time to respond to the claim while AAFAF prolongs its seven month quest to collect the evidence necessary to validate Consul-Tech's claim and evaluate its defenses.

Despite recognizing that it has yet to complete its investigation, the Debtor takes issue with the validity of Consul-Tech's contract, purports to limit its recovery to certified invoices, and accuses Consul-Tech of not cooperating with it to verify its claim. Moreover, it claims that the immediate relief that Consul-Tech seeks is premature and contrary to section 305 of PROMESA, absent consent from the Oversight Board. In so doing, the Debtor completely ignores its own public policy and legislative mandate of Act 57-2020, to pay its providers whose invoices have been certified for payment.

As will be discussed below, the Court should reject the Debtor's assertions because: (1) the Government cannot eschew its payment obligations by arbitrarily refraining from paying invoices or certifying them for payment; (2) the Government cannot use PROMESA section 305 in an arbitrary and discriminatory manner, affording preferential treatment to certain administrative

- 1 -

creditors over others in the same class; (3) the Government cannot ignore its own statutory mandate to pay Consul-Tech's certified invoices, and should take all necessary steps in this PROMESA process in an effort to achieve compliance.

## DISCUSSION

**I. THE GOVERNMENT CANNOT ESCHEW ITS CONTRACTUAL PAYMENT OBLIGATIONS BY ARBITRARILY REFRAINING FROM CERTIFYING INVOICES FOR PAYMENT**

The Debtor rejects Consul-Tech's right for immediate payment based on its alleged "duty to confirm that the disbursement of public funds only occurs to pay for services actually provided and duly certified under any applicable laws and regulations". In its defense, it points out that the firm that the Government engaged to "confirm that federal and local funds have been accounted for and managed in accordance with disaster relief grant requirements", disputed approximately $2.9 million of the claim. We address this defense next.

**a. As per the Deloitte report, some $2.1 million of the invoices are unquestioned**

The flip side of the Government's argument that the audit it commissioned disputes about $2.9 million of the claim, is that the same audit report validates the difference. That is, the report concludes that there are about $2.1 million in unquestioned costs.

As part of the mutual exchange of documents, on July 9, 2020, AAFAF provided to Consul-Tech the Deloitte Report commissioned by the Government. *See*, Ex. 1, Deloitte Report. Pursuant to the report, there is a total of $2,131,668.75 on account of invoices for services provided by Consul-Tech between September to December 2017, which are undisputed. See, Ex. 1, at p. 9. The Deloitte Report found that those invoices complied with the *Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards* of the Federal Office of Management

- 2 -

and Budget, *2 C.F.R. §200, et. seq.* ("Administrative Requirements"). This amount is undisputed and is due and, according to Act 57-2020, it is also payable.

On June 14, 2020, Governor of Puerto Rico, Wanda Vázquez Garced, signed into law Act 57-2020 to provide relief measures to the commercial sector in Puerto Rico in light of the COVID-19 emergency. See, Ex. 2. Article 5(a) of Act 57 states that "[a]ll accounts payable to contractors, suppliers and vendors of the Government ("Suppliers") accumulated prior to June 14, 2020 and which have already been certified by the government agency or instrumentality for which the service was offered or the goods were delivered, must be paid within 15 calendar days after June 14, 2020." (Translation ours.) Under Article 5(a) of Act 57-2020, the payment of the Certified Invoices is not only the public policy of the Debtor, but it is also the law. Therefore, Consul-Tech is entitled to the immediate payment of the unquestioned costs that have been certified for payment.

As per the Deloitte Report, some $2.8 million were not objected on the grounds that they lacked certification.[2] Conversely, this means these amounts were certified for payment. At least $1 million of those certified invoices is also unquestioned.[3] That amount at least is due and payable now under Act 57.

**b. Of the $2.9 million disputed in the Deloitte report, $1.1 million is disputed solely because the invoices remain uncertified, something the government has arbitrarily refused to do.**

According to the Debtor, the Deloitte Report shows potential objections to the Claim in excess of $2.9 Million. This bold generalization underscores the fact that the Devil is in the details. Of the total amount questioned in the Deloitte Report, approximately $1.1 million is questioned

---

[2]This amount was obtained by subtracting from the unpaid invoices (Remaining Invoiced Amounts at p. 9), the amount of invoices questioned for lack of certification (line 15 of the spreadsheet at Part IV of the report).

[3] This amount was obtained by subtracting from the $2.8 million of certified invoices, the amount of $1.8 million of costs questioned on grounds <u>other than</u> lack of certification. See Exhibit 1, Section IV.

- 3 -

only because the invoices remain uncertified.[4] Otherwise, said amounts comply with the regulatory guidelines set forth in the Administrative Requirements, *supra,* and with the *Audit Tips for Managing Disaster-Related Project Costs of the Department of Homeland Security* that discusses the Federal cost principles (2 C.F.R. §200.400, *et.seq.*) that require that costs claimed under Federal programs be adequately supported by source documentation.[5] It is only as to the difference that the Deloitte Report raises substantive objections.

The above in turn raises the question whether the Debtor can refuse to pay on invoices because they are uncertified, when the failure to certify them is attributable to the Debtor. In fairness and in the law, the answer to this question must be no.

### c. The Debtor must abide by its contractual obligation to pay unobjected invoices or portions thereof

The Contract provides, as it pertains the payment of the services rendered by Consul-Tech, that AEMEAD "shall promptly pay the CONTRACTOR [Consul-Tech] for its services, as specified above, from the date of receipt of the CONTRACTOR'S invoices, subject to review and acceptance of the invoice and the provisions of the FOURTEENTH CLAUSE. If AEMEAD disputes part of an invoice, it shall pay the undisputed part as provided herein, and shall work with the CONTRACTOR to resolve the disputed portion as quickly as possible." *See*, Ex. 3. Contract ¶FOURTH. Therefore, the applicable contractual law between the parties requires an expedited payment procedure for all invoices not subject of dispute.

That an invoice remains uncertified should not be in itself a dispute, when the Debtor has failed to otherwise dispute the invoice on grounds attributable to Consul-Tech. As shown by the

---

[4] We obtained this amount by subtracting from the <u>net</u> questioned costs, the amounts questioned on grounds <u>other than</u> lack of certification for payment. See Exhibit 1 at pp. 7 to 8.

[5] *See,* https://www.oig.dhs.gov/assets/Audit_Tips.pdf

- 4 -

Deloitte Report, only a portion of the $2.9 million in disputed amounts, or approximately $1.8 million, is disputed on such grounds. This means that the remaining $1.1 million are being disputed solely on the grounds of lack of certification for payment.

> **d. Under Puerto Rico Civil Law, compliance with an obligation cannot be left to the whim of a party, which means the obligation of the Debtor to pay cannot be left to the whim of the Debtor to certify invoices for payment**

Absent a valid objection to the invoices on grounds attributable to Consul-Tech, the Government, through its agencies, cannot abstain from certifying invoices for services provided under the Contract and its amendments. The general principle that payment is due for satisfactorily completed work is supported by the Puerto Rico Civil Code. Under civil law principles, performance of an obligation cannot be left to the will of one party without invalidating the contract. *See*, PR Civil Code Art. 1068, 31 L.P.R.A. §3043 ("If the fulfillment of the condition should depend upon the exclusive will of the debtor, the conditional obligation shall be void.") *see also, Jarra Corp. v. Axxis Corp.*, 155 D.P.R. 764, 774-775 (2001) ("[T]he performance of a contract cannot be left to the will of one of the parties.").

Accordingly, an agency cannot arbitrarily refuse to certify or approve invoices for payment, since that is the equivalent of conditioning the obligation to pay upon its whim.

> **e. Agencies cannot deprive providers of payment on their invoices without first providing them due process**

Similarly, an agency cannot arbitrarily refuse to certify invoices for payment because doing so would deprive Consul-Tech of its property without due process of law. Despite multiple efforts by Consul-Tech to obtain the certification of its invoices, however, approximately nine governmental agencies have not yet certified the invoices for the services rendered by Consul-Tech. At least three of them have adopted rules establishing procedures for the certification and

- 5 -

payment of invoices[6]. These procedures generally require that the agency notify the provider in writing if it finds a deficiency that prevents payment of an invoice. And such notice is not only fair but an essential element of due process. Before the Government denies payment to any provider for services rendered, the least it can do is provide the contractor notice of the deficiency and an opportunity to correct it. *See, Goldberg v. Kelly,* 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard")

For example, Regulation 7040, as amended by Reg. 7283 and 7545, of the Department of Education, requires that the payment process be carried out with diligence: "The [Agency's representative] shall ensure that the documents necessary to process payment for a delivered product or a service provided are not stopped at an office or are unnecessarily delayed. In any case that applies, the [Agency's representative] will follow up on the development of the process until payment is made." *See,* Ex. 4, Regulation 7040.

Also, Regulation 4276 of the Puerto Rico Police Department requires that "'[i]f when the invoices are received, the Agency determines that they cannot be processed for payment because what was billed does not correspond to the obligation, the merchandise or the services have not been rendered, or they do not correspond to the specifications agreed on, for lack of information or for any other reason, the Agency will inform the supplier in writing the reasons for not having processed the payment and will ask them to fulfill whatever requirements are needed." *See*, Ex. 5, Reg. 4276, Art. 6. B[7].

---

[6] These agencies are: Department of Education, Department of Housing and the PR Police Department.
[7] See, Motion Requesting Leave to File Documents in Spanish and Request for Extension of Time also filed today.

Similarly, Regulation 4415 of the Department of Housing imposes upon the agency the responsibility of verifying that the services conform to the requirements and of certifying the invoices for payment. *See*, Ex. 6 Regulation 4415, V. 1.[8] Said Regulation also requires that the payment process be completed within 20 days from the receipt of the documents. If the payment cannot be completed because services provided do not meet the applicable standards, the agency must notify the contractor in writing about the situation that is causing the delay. *See*, Ex. 6, V. 1. e.

In this manner, these regulations incorporate the basic tenet of due process that the Government cannot deprive a provider of its property, in this case a payment due for service rendered, without due process of law.

As explained previously, however, the Deloitte Report points at no deficiency regarding $1.1 million of the amounts invoiced, other than that they remain uncertified. Certification, of course, is a requirement that depends on the Debtor honoring its obligation to review and certify invoices for payment. Absent a deficiency attributable to Consul-Tech, the Debtor's refusal to pay on uncertified invoices merely due to its own failure to certify, deprives Consul-Tech of its property without due process of law.

A recent Puerto Rico Court of Appeals decision addressed the question whether a municipality could refuse payment to a contractor on the grounds that it had failed to certify its own invoices. *See,* Ex. 7,*Octagon Consultant Group v. Municipio de Toa Baja*, 2019 WL 4417472 (TCA 2019). There, as here, the municipality denied the contractor's payment based on the lack of certification of invoices that the same municipality arbitrarily refused to certify. Upholding the

---

[8] *Id.*

- 7 -

trial court decision, the Court of Appeals ordered the municipality to pay on the invoices because, among other reasons, the municipality had never before questioned the invoices as deficient. Though the decision is not binding, it is illustrative of the principles outlined above, that agencies are bound by their own invoice processing norms and that, to decline payment, the agency must notify a deficiency.

      **f. THE DEBTOR'S ALLEGATION THAT THE CLAIM INCLUDES AMOUNTS ALREADY PAID IS INCORRECT**

The Government accuses Consul-Tech of double dipping. It alleges that its claim for administrative expenses includes "over $600,000.00 have been paid on the Claim". That is plainly not true. According to the Deloitte Report the Government has already paid $615,211.00 for services provided under the Contract. Said amount was not included in the "Claim" for $5,120,772.50. *See*, D.E. 9845-1. In fact, while the Deloitte Report sets total amounts <u>invoiced</u> by Consul-Tech at $5.8 million, the Claim is only for $5.1 million, as stated before.

**II. THE GOVERNMENT CANNOT USE PROMESA SECTION 305 IN AN ARBITRARY AND DISCRIMINATORY MANNER TO FAVOR CERTAIN ADMINISTRATIVE CREDITORS OVER CONSUL-TECH, WHEN SUCH CREDITORS ARE IN THE SAME CLASS AS CONSUL-TECH, AND WHEN CONSUL-TECH IS ENTITLED TO EXPEDITED PAYMENT UNDER ITS CONTRACT AND UNDER ACT 57-2020**

The Debtor argues that under PROMESA Section 305 (48 U.S.C. § 2165), Consul-Tech is not entitled to payment until the effective date of the future plan of adjustment. Though this is technically correct, it is also true that the Debtor can pay allowed administrative claims before then, with Oversight Board approval. An in fact this something that the Debtor has done as to similarly situated creditors.

- 8 -

### a. PROMESA SECTION 305 should be uniformly applied

The purpose of the Bankruptcy Code is to allow a uniform distribution on similar classes of creditors. The Bankruptcy Code serves two basic functions: to afford honest but unfortunate debtors a chance for a "fresh start," and to promote an equal distribution of a distressed debtor's assets among similarly situated creditors." (5 Resnick & Sommer, Collier on Bankruptcy, ¶541.01; see *In re Arnold*, 471 B.R. 578 (Bankr. C.D. Cal. 2012).) "Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally.  A race…by creditors for the debtor's assets prevents that." (*Benedor Corp. v. Conejo Enterprises (In re Conejo Enterprises)*, 96 F.3d 346 (9th Cir. 1996).). These central tenets of the Bankruptcy Code are applicable under Title III of PROMESA, 48 U.S.C. §§ 2101 *et seq*., since it which incorporates several critical provisions of the Bankruptcy Code regarding distributions to creditors.

Yet, the Commonwealth is using PROMESA Section 305 as an instrument to promote an unfair and discriminatory treatment of certain post-petition creditors claiming the timely payment of administrative claims under 11 U.S.C. §503(b), on account of duly authorized post-petition services rendered to the Commonwealth which ensured the preservation of its bankruptcy estate. In this regard, the Commonwealth alleges that it may defer payment of such unilaterally selected administrative claims until the effective date of an amended plan of adjustment that the Commonwealth has acknowledged it will file at some future, not yet determined date. Meanwhile, it is currently paying some selected administrative claims to the detriment of other administrative creditors in the same class.

The Government has been paying other administrative claimants in the same position as Consul-Tech without undue delay on its part. Such is the case of DMCM, which provided post-petition services to the Commonwealth after the termination of the Consul-Tech contract.  In fact,

- 9 -

DMCM effectively hired Consul-Tech as a subcontractor after the termination of the Consul-Tech contract with the Commonwealth, with the express acquiescence of the Commonwealth, thus attesting to the quality and validity of the professional services rendered by Consul-Tech. This undisputed fact shows that the Commonwealth is discriminating against Consul-Tech, which is in the same administrative creditor class as DMCM. This is an unreasonable and discriminatory use of Section 305 by the Commonwealth, since it fails to treat all similarly situated administrative claims creditors in a uniform manner.

Such a discriminatory and arbitrary use of PROMESA Section 305 by the Commonwealth, to prefer certain administrative creditors over others in the same class, runs contrary to the basic bankruptcy tenets of equal distribution to similarly situated creditors, applicable under PROMESA Title III, and should not be allowed by this Honorable Court.

    **b. Consul-Tech is entitled to prompt payment of at least $1 million in certified invoices not objected by the Deloitte Report, both under its contract and under Act 57-2020**

As explained earlier, the Contract between Consul-Tech and AEMED requires the agency to review its invoices to promptly pay for its services. As to any disputed portions, AEMEAD must resolve the dispute as quickly as possible. *See*, Ex. 3, Contract ¶FOURTH. Therefore, the applicable contractual law between the parties requires an expedited payment procedure for all invoices not subject of dispute.

Similarly, as previously explained, the Debtor's public policy incorporated, in Act 57-2020, also requires expedited payment to suppliers whose accounts payable accumulated prior to June 14, 2020 and which have already been certified by the government agency or instrumentality for which the service was offered or the goods were delivered. Such invoices must be

- 10 -

paid within 15 calendar days after June 14, 2020. As previously stated, under the Deloitte Report, about $1 million of Consul-Tech's invoices fall in this certified category <u>and</u> are also undisputed.[9]

Though the Debtor is admittedly bound by the limitations imposed by PROMESA Section 305 to payments of allowed administrative claims, said section allows it to pay in advance of the effective date of the plan of adjustment with Oversight Board approval. What is missing here is the Debtor's *will* to honor Act 57, which it can do, as it has done for other creditors in the same class as Consul-Tech, by seeking Board approval to pay <u>at least</u> the $1 million in <u>certified and undisputed</u> invoices that result from the Deloitte Report.[10]

### III. CONSUL-TECH HAS FULLY COOPERATED WITH THE GOVERNMENT FOR THE SAKE OF FACILITATING A CONSENSUAL RESOLUTION OF THE CLAIM

The Debtor argues that Consul-Tech has not "cooperated with the Debtor to verify the claim". Consul-Tech takes issue with the statement because it is factually inaccurate and essentially unfair.

In an effort to reach a consensual resolution of the claim, the parties agreed to postpone the Debtor's response to the claim and instead engage in settlement negotiations. To that end, they agreed to exchange documents in support of their respective positions. The Debtor provided Consul-Tech with the Deloitte Report. The Debtor *did not*, however, provide the report's exhibits. Consul-Tech, on the other hand, provided the Debtor with a total of <u>1,097 pages of documentation</u> supporting its claim. Specifically, the documents Consul-Tech produced consisted of a package of

---

[9] This amount was obtained by subtracting from the unpaid invoices (Remaining Invoiced Amounts at p. 9), the amount of invoices questioned for lack of certification (line 15 of the spreadsheet at Part IV of the report), and then subtracting from that result the amount of invoices questioned only on grounds <u>other than</u> lack of certification.

[10] This is not to say that Consul Tech is not entitled to immediate payment of the $2.8 million of certified invoices that arise from the Deloitte report, on the grounds that if they were already certified for payment by the government, Deloitte is not qualified to questions them.

invoices for work performed with their accompanying labor expense summary, certifications of work performed issued by various agencies, communications exchanged (*i.e.* letters), and the Master Agreement and Task Orders.

Consul-Tech agreed to engage in such exchanges in the hopes of avoiding the costs and inconveniences of having to prove its claims in court. In the same vein, it limited these voluntary disclosures to readily available information, declining to produce <u>additional</u> material whose retrieval would have entailed some of the very costs these negotiations sought to avoid.

Moreover, even before filing the Claim Consul-Tech made more than reasonable efforts to obtain payment without resorting to legal action by providing to the Debtor additional documentation to facilitate discussions and to expedite the payment process.[11]

Also, in order to address any issues or concerns that could delay payment to Consul-Tech or approvals of such payments, Consul-Tech undertook additional efforts to coordinate discussions with Jose Marrero, the Governor's Authorized Representative and Director of the Office of Management and Budget; Omar Marrero, Governor's Authorized Representative and Director of the Central Office for Recovery, Reconstruction and Resiliency ("COR3"); Raul Maldonado, Chief of Staff of the Governor, Secretary of the Treasury and Chief Financial Officer of the Commonwealth; and, Carlos Acevedo, Commissioner of AEMEAD. Each of these individuals was directly and intimately involved in addressing the resolution of the payment for services rendered.

These good faith efforts must put to rest the Debtor's naked accusations of lack of cooperation.

---

[11] These efforts and the submission of additional documentation requested by the agencies' representatives negates the Government's allegation that as per the Deloitte Report, Consul-Tech did not produce additional documents to validate the invoices. *See*, Objection at p. 5-6.

### IV. THE TASK ORDERS ARE INDIVIDUAL AGREEMENTS THAT VALIDLY AMENDED THE CONTRACT

Finally, the Government alleges that it has obtained documents showing, among other things, "that the Claim does not comply with Puerto Rico law and contracting requirements to the extent that the Task Orders exceed the amount of the Contract without Consul-Tech having executed an amendment to such Contract under Puerto Rico law". *See*, Objection at p. 7.[12] Consul-Tech preempted these challenges in its *Motion for Allowance of Administrative Expense* [D.E. 9845], as follows.

The Motion for Allowance discussed the validity of the Task Orders as amendments to the Contract as specifically allowed by it. See, Contract ¶EIGHTH ("[The Contract] can be "extended, renewed or amended by mutual agreement of the parties".) *See,* Motion for Allowance [D.E. 9845] at p. 9-13; Ex. 3. Accordingly, the Government of Puerto Rico, duly represented by the Governor's Authorized Representative ("GAR"), approved Task orders 001.1, 003, 006 and 010 which validly amended the Contract by (1) including the services to be provided by Consul Tech and (2) the total amount involved, which exceeded the $800,000.00 initial contract amount.

As amendments, they complied with the requirements under the law (31 L.P.R.A. §§ 3371; 3375), and under Executive Order 2017-053 ("OE-2017-053"), which exempted contractors from complying with the formal requirements established by law, regulations, executive orders or ruling that govern contracts with the Government. *See,* Motion for Allowance [D.E. 9845] at p. 9. For purposes of this Claim, the Task Orders should be considered as separate valid contracts.

---

[12] The Deloitte Report, to which the Debtor apparently refers, does not reach any conclusions as to the validity of the Contract, recognizing it is a legal issue for which the Government should "seek a legal opinion on the appropriateness of Task Orders as an alternative to contract amendments." See, Deloitte Report at p. 2.

- 13 -

**CONCLUSION**

The following conclusions derive from the preceding discussion:

1. Under its contract and under Act 57, Consul Tech is entitled to prompt payment of the $2.1 million as to which Deloitte found no issue or in the alternative, at least of the $1 million invoices that are certified <u>and</u> undisputed according to the Deloitte Report.

2. Under its contract, Civil Law principles and requirements of due process, Consul Tech is entitled to certification and payment of $1.4 million on account of amounts invoiced that the Debtor refused to certify despite the Deloitte Report not questioning them

3. Consul-Tech reserves its right to present evidence to refute the objections raised by the Deloitte Report to the remaining $2.3 million of its claim

4. Under bankruptcy principles that require uniform treatment of creditors in the same class, Consul-Tech is entitled to the government seeking Oversight Board approval to make these payments in advance of the effective date of the plan.

**This conclusion relies exclusively on the evidence provided by the Government, in an effort to show that Consul-Tech is entitled to recover on a significant portion of the Claim on the basis of undisputed facts in the Debtor's possession. Consul-Tech reserves the right to prove that it is entitled to recover on the total amount of its Claim on the basis of facts that the Government deems to be disputed at this point.**

WHEREFORE, Consul-Tech respectfully reiterates its request that this Court allow its claim as an administrative expense claim, and order its immediate payment, with any other appropriate relief.

## CERTIFICATE OF SERVICE

We hereby certify that, on September 2, 2020, we filed the instant motion through the Court's CM/ECF system, which will send notification of such filing to all CM/ECF participants, in compliance with the case management order in the case.

RESPECTFULLY SUBMITTED.

*(Signatures in next page)*

Dated: September 2, 2020

Respectfully submitted,

REICHARD & ESCALERA, LLC
*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

*/s/Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/Fernando Van Derdys
Fernando Van Derdys
USDC-PR 201913
fvander@reichardescalera.com

*/s/ Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888