**EXHIBIT 2**

## *"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"*

Ley Núm. 57 de 14 de junio de 2020

Para establecer la "Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"; establecer política pública específica; establecer programas gubernamentales, medidas económicas o contributivas tales como: programa para el pago expedito de cuentas por pagar a proveedores del Gobierno de Puerto Rico; programa de arrastre de pérdidas netas en operaciones hacia años anteriores; pérdida neta en operaciones a arrastrarse en años contributivos siguientes; exención temporera de servicios rendidos a otros comerciantes y a servicios profesionales designados; posponer temporeramente la contribución mínima tentativa a corporaciones; posponer la radicación de las declaraciones informativas requeridas en las Secciones 1063.01 a la 1063.16 de la [Ley Núm. 1-2011, según enmendada, conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico"](#); posponer temporeramente el Informe de Procedimientos Previamente Acordados o Informe de Cumplimiento; establecer una extensión automática de licencias o permisos que autorizan una actividad comercial; exclusión del ingreso bruto para propósitos de contribución sobre ingresos e ingreso sujeto al pago de patente municipal por cancelación de deuda y recibo de subsidios; cumplimiento automático con requisitos elegibles de decretos de incentivos; eximir del requisito de declaraciones juradas ante notario público; extender radicación de planillas de contribución sobre ingresos para el año contributivo 2019; extender fechas límites de la planilla mensual del impuesto sobre ventas y usos; eliminar el pago de impuesto sobre ventas y usos en la importación y compra de partidas tributables para la reventa; eliminar la retención por servicios profesionales; prohibir desahucios de arrendamientos sobre vivienda principal; programa para usar tarjeta del programa de asistencia nutricional en restaurantes; establecer facultades especiales de reglamentación; y para otros fines relacionados.

## EXPOSICIÓN DE MOTIVOS

El mundo moderno está viviendo un escenario nunca antes conocido, una pandemia de proporciones apocalípticas: el coronavirus o COVID-19 como comúnmente se le conoce.

La Organización Mundial de la Salud (OMS), luego de haber declarado al COVID-19 como una pandemia, está muy preocupada ante los alarmantes niveles de propagación y la inacción de algunos países. De igual manera, reconoció que algunos países están teniendo dificultades para lidiar con la primera pandemia de la historia provocada por un coronavirus. Algunos, por "falta de capacidad", otros por "falta de recursos" y el resto por "falta de decisión".

Por otro lado, ante el crecimiento exponencial del COVID-19, el Centro para el Control y Prevención de Enfermedades de los Estados Unidos ("CDC", por sus siglas en inglés) ha tomado medidas de seguridad y salud pública que nos afectan a nivel nacional. El CDC estableció que el distanciamiento social y la cuarentena ayudan a prevenir la exposición con personas afectadas o que pudiesen estar afectadas con el COVID-19.

Case:17-03283-LTS   Doc#:14168-2   Filed:09/02/20   Entered:09/02/20 22:14:24   Desc:
Exhibit Act 57-2020   Page 3 of 13

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

En Puerto Rico hemos tomado medidas inmediatas y drásticas dirigidas a reducir la propagación de este mortal virus. Para ello, la Gobernadora de Puerto Rico declaró un estado de emergencia el 12 de marzo de 2020 con el fin de llevar a cabo todos los esfuerzos necesarios que permitan salvaguardar la salud, la vida y la seguridad de todos los puertorriqueños. Luego, tras cinco (5) casos confirmados del COVID-19, y considerando las guías nacionales emitidas por el CDC y la recomendación del Departamento de Salud del Gobierno de Puerto Rico, la Gobernadora de Puerto Rico firmó la Orden Ejecutiva 2020-23 ("OE 2020-23") para controlar la propagación del virus. Aquí se establecieron medidas rigurosas de aislamiento social y de cuarentena.  Se ordenó un toque de queda para todos los ciudadanos empezando a las 9:00 pm hasta las 5:00 am, desde el 15 de marzo hasta el 30 de marzo de 2020.

La OE 2020-23, además, ordenó el cierre de todos los comercios en Puerto Rico y de las operaciones gubernamentales, excepto de aquellas relacionadas a servicios esenciales. De igual manera, limitó a los ciudadanos a transitar o caminar por las vías públicas de 5:00 am a 9:00 pm, salvo algunas excepciones, a saber: adquisición de alimentos, productos farmacéuticos y de primera necesidad; citas médicas, asistir a hospitales, laboratorios o centros de servicio médico, hospitalarios; acudir al lugar de trabajo para los empleados públicos y privados que realicen trabajos esenciales; retorno al lugar de residencia habitual en una actividad permitida; acudir a instituciones financieras; entre otras.

Como se puede constatar, la Orden Ejecutiva 2020-23 forzó un distanciamiento social para evitar que se siga propagando el virus en nuestra tierra. De igual manera, el 30 de marzo de 2020, la Gobernadora, mediante la Orden Ejecutiva 2020-29 extendió hasta el 12 de abril del corriente año las medidas tomadas para controlar el riesgo de contagio de este virus COVID-19. Posteriormente, la Gobernadora extendió la fecha de cierre total (lockdown) mediante la Orden Ejecutiva 2020-33. Esta Asamblea Legislativa concurre con las acciones de la Gobernadora en proteger la salud y el bienestar de nuestra población, y más cuando se trata de proteger a nuestros adultos mayores.

Acciones drásticas similares a las que hemos tomado en Puerto Rico, se han empezado a tomar en otros estados de la Nación.  Ahora bien, estos cierres totales tienen un efecto directo y devastador en nuestra economía. Así lo ha reconocido el Presidente del Banco de la Reserva Federal de San Luis, el cual estimó que la tasa de desempleo en los Estados Unidos alcanzará un treinta (30) por ciento en el segundo trimestre del 2020 debido a los cierres ("shutdowns"). Esto provocará una caída de más de un cincuenta (50) por ciento en el Producto Interno Bruto ("GDP", por sus siglas en inglés).

Ante esta proyección, el Presidente de la Reserva Federal de San Luis le solicitó al Gobierno Federal una respuesta fiscal poderosa ("powerful fiscal response") para reemplazar $2.5 trillones de dólares en pérdidas que se estiman para el segundo trimestre del 2020. Sugiere, además, que la meta general de este estímulo gubernamental debe ser el sostener a todos los negocios e industrias y a las familias estadounidenses.

Ante todo este escenario poco alentador, el Congreso Federal aprobó un histórico paquete de medidas de estímulo económico de más de dos (2) trillones de dólares para atender esta crisis provocada por el COVID-19, al aprobar la Ley de Ayuda, Alivio y Seguridad Económica de Coronavirus ("CARES Act"). Según expertos, esta legislación es el paquete de medidas más grande que se ha aprobado en la historia de los Estados Unidos. Entre el paquete de medidas, se resaltan las siguientes: $250 billones de dólares para pagos directos a las familias y a los

Case:17-03283-LTS   Doc#:14168-2   Filed:09/02/20   Entered:09/02/20 22:14:24   Desc:
Exhibit Act 57-2020   Page 4 of 13

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

individuos; $350 billones para préstamos a pequeños negocios; $250 billones en beneficios de seguro de desempleo; $500 billones para compañías severamente afectadas, $130 billones para hospitales, $150 billones para gobiernos locales y estatales, entre otras.

En Puerto Rico, la Gobernadora anunció en días recientes diversas propuestas y acciones ejecutivas dirigidas a usar los recursos públicos para atender la crisis en nuestro Archipiélago como parte del Plan Estratégico para Reactivar Nuestra Economía, Apoyar a Nuestros Comerciantes y Proteger a Nuestros Trabajadores. La expectativa es que estas medidas económicas estatales de $787 millones puedan reactivar a corto plazo nuestra economía. Para ello, esta Asamblea Legislativa aprobó la Resolución Conjunta 23-2020 donde asignó la cantidad de $500 millones con cargo al Fondo General. Además, la Gobernadora podrá utilizar de la Reserva de Emergencia $160 millones para la compra de equipos, materiales y suplidos para atender la crisis del COVID-19. Por último, del Presupuesto del año vigente se estarán reasignado $156.8 millones como parte de esta primera fase del Plan Estratégico. Ciertamente, esto es un primer paso para aliviar los estragos de esta pandemia.

Esta Asamblea Legislativa entiende necesario establecer un segundo paquete de medidas que será complementario al paquete inicial presentado por la Gobernadora. En este segundo paquete se atienden varios asuntos. Primero, se crea un mecanismo para pagar de forma expedita las obligaciones a los contratistas y proveedores del Gobierno de Puerto Rico. De esta manera, las deudas acumuladas actualmente se deben pagar dentro de 15 días calendarios. Las obligaciones nuevas contraídas por el Gobierno se deben pagar dentro de 30 días calendarios. Esta medida, sin duda, ayudará al flujo de efectivo de muchas compañías, contratistas y empresarios que le sirven bien a nuestro Gobierno pero que se tardan en cobrar.

Para aumentar el flujo de efectivo de nuestros negocios, se permite el mecanismo de retrotraer las pérdidas a años anteriores ("carry back"), aumentando así la posibilidad de recibir inmediatamente reintegros por contribuciones pagadas en años anteriores.

Respecto a las ayudas que reciban los individuos o las entidades jurídicas, se aclara que cualquier cantidad que sea condonada o cantidades que se reciban como subsidios o estímulos estarán excluidas del ingreso bruto para propósitos de contribución sobre ingresos, incluyendo la contribución básica alterna o la contribución alternativa mínima, en Puerto Rico o el ingreso sujeto al pago de patente municipal. Esta disposición es análoga a la Sección 1106(i) de la Ley Federal CARES, la cual exime de tributación la condonación de la deuda bajo el Código de Rentas Internas Federal; por lo cual, se deberá interpretar liberalmente a favor del contribuyente.

De igual manera, se elimina por tres (3) meses el impuesto del cuatro (4) por ciento de toda facturación que se presente durante el periodo de exención por los servicios rendidos a otros comerciantes, comúnmente conocido como B2B, y servicios profesionales designados, y se le da la facultad al Secretario de Hacienda de extender esta exención por periodos adicionales de tres (3) meses. También, se elimina temporeramente la contribución mínima tentativa a corporaciones de $500 que establece el Código de Rentas Internas. Para el año contributivo 2019, en caso de que la corporación haya pagado la contribución mínima tentativa de $500, podrá solicitar un reembolso al Departamento de Hacienda.

Además, como anunció la Gobernadora, la radicación de las planillas de contribución sobre ingresos se va a posponer para el 15 de julio de 2020. También, se anunciaron otras medidas que atienden el Impuesto sobre Ventas y Uso en los muelles, la radicación de la planilla del IVU, la retención del diez (10) por ciento por servicios profesionales, entre otros. Esta Asamblea

Case:17-03283-LTS   Doc#:14168-2   Filed:09/02/20   Entered:09/02/20 22:14:24   Desc:
Exhibit Act 57-2020   Page 5 of 13

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

Legislativa eleva a fuerza de ley estas acciones administrativas tomadas por el Ejecutivo. De igual manera, esta pieza legislativa pospone la radicación de las declaraciones informativas, requeridas a los negocios y empresarios, para el 31 de mayo de 2020. Otro de los beneficios a nuestros empresarios pequeños y medianos es que se le elimina el requisito de incluir junto a sus planillas de contribución sobre ingresos el Informe de Procedimientos Previamente Acordados o Informe de Cumplimiento preparado por un Contador Público Autorizado. En sintonía con lo anterior, reconociendo que el cierre total decretado por la Gobernadora desde el 15 de marzo de 2020, pone al país en una pausa donde se detiene toda la actividad comercial, afectando directamente a todos los negocios y los individuos y que la gran mayoría de las oficinas gubernamentales se mantienen cerradas, incluyendo el Departamento de Hacienda, esta Asamblea Legislativa entiende prudente y necesario flexibilizar las fechas límites de vencimientos de las licencias de rentas internas, licencias o permisos expedidas por el Gobierno de Puerto Rico, sus agencias, instrumentalidades o municipios, cuyas fechas de vencimiento caigan a partir del 1 de marzo de 2020.

Con el ánimo de promover la actividad económica, para el año contributivo 2020 (para empresas con año natural o en el caso de años económicos, para años comenzados luego del 31 de diciembre de 2019 y antes del 1 de enero de 2021), se reconoce un cumplimiento automático a los Negocios Exentos que tienen decretos con ciertos requisitos establecidos en el Código de Incentivos de Puerto Rico, en otras leyes de incentivos anteriores y en el propio decreto con el fin de garantizar la continuidad de dichos decretos de exención. Los requisitos o métricas que se entenderán como cumplidos durante este año 2020 o hasta que dure la vigencia de esta Ley, son: creación y retención de empleos, ingreso bruto o volumen de ventas e inversión en maquinaria y equipo. Esto ayudará a que las empresas con decretos de exención se puedan recuperar del impacto económico que ha provocado el COVID-19.

Conforme lo anterior, esta Asamblea Legislativa, y en el ejercicio de su poder de razón de Estado, y de conformidad con la Sección 18 del Artículo III de la Constitución de Puerto Rico, entiende necesario tomar medidas urgentes de acción para atender la prevención, contagio y tratamiento del coronavirus en la Isla.

*Decrétase por la Asamblea Legislativa de Puerto Rico:*

**Artículo 1. — Título.**

Esta Ley se conocerá y podrá ser citada como "Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19".

**Artículo 2. —Política pública.**

La pandemia del Covid-19, está devastando el mundo. Ésta no sólo tiene implicaciones de salud y seguridad pública (y privada), sino además en cuanto al impacto económico y social de sus consecuencias. Por lo tanto, el Gobierno de Puerto Rico declara y reconoce la necesidad de esta legislación especial, debido al estado de necesidad en el que se encuentra nuestra gente.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

Se declara como política pública del Gobierno de Puerto Rico, permitir el mejor uso de sus recursos para atender la pandemia del COVID-19 y sus consecuencias en nuestra economía.

El uso de los recursos públicos para propósitos de proveer mejores condiciones a nuestra economía es una necesidad de nuestra razón de estado, en momentos en que toda nuestra sociedad se enfrenta a las consecuencias de esta pandemia. Una vez ha sido controlada la crisis de salud pública, debemos evitar el colapso de nuestras instituciones, de nuestra economía y de los sectores productivos. Con estas medidas procuramos proteger los empleos y desde luego a quienes dependen de ellos: la familia puertorriqueña.

Por lo tanto, el objetivo específico de esta legislación es servir como puente de rescate para distintos sectores productivos de nuestra economía, para poco a poco ir recuperando la normalidad del intercambio de bienes y servicios al que ha estado acostumbrado la sociedad puertorriqueña en la era moderna. Por lo tanto, se crean programas gubernamentales cuyo propósito fundamental es servir de estímulo económico para impedir una recesión y las gravísimas consecuencias sociales que esta traería. Sirve a su vez para concretizar la aspiración de nuestro Pueblo de tener la más robusta y vibrante economía para procurar un desarrollo socioeconómico de primer orden, a la altura del Siglo XXI.

**Artículo 3. — Definiciones.**

Para propósitos de esta Ley, los siguientes términos tendrán el significado que se expresa a continuación, teniendo presente que las palabras en masculino pueden interpretarse en el género femenino, según corresponda:

**(a) "Código de Rentas Internas para un Nuevo Puerto Rico" o "Código de Rentas Internas"**. — Se refiere a la Ley Núm. 1-2011, según enmendada, conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico".

**(b) "Comisionado de Instituciones Financieras".** — Significa el Comisionado de Instituciones Financieras de Puerto Rico, según se define por la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, conocida como "Ley de la Oficina del Comisionado de Instituciones Financieras."

**(c) "Gobierno de Puerto Rico" o "Gobierno".** — Significa la Rama Ejecutiva de conformidad con el Artículo IV de la Constitución de Puerto Rico, todos sus departamentos, agencias, oficinas, juntas, comisiones, y toda dependencia que ésta controle. Significará también todas las corporaciones públicas e instrumentalidades del Gobierno de Puerto Rico. No obstante, dicho término no incluirá a la Rama Legislativa, ni a la Rama Judicial, ni a los Municipios.

**(d) "Hospital".** – Significa las facilidades privadas de cuidado de salud, centros de diagnóstico y tratamiento, facilidades de diálisis, y cualquiera otra facilidad que pueda ofrecer cuidado y tratamiento médico de urgencia y/o de emergencia.

**(e) "Médicos".** – Significa los facultativos que realizan una labor mediante remuneración, debidamente licenciados y autorizados a ejercer la medicina y telemedicina en Puerto Rico por sí o por sus respectivas corporaciones profesionales.

**(f) "Personal de Enfermería".** — Significa todo aquel personal de salud que labora como empleado de una institución hospitalaria o centro de diagnóstico y tratamiento, debidamente autorizado para ejercer la profesión en Puerto Rico y que recibe compensación por su trabajo.

**(g) "Secretario del Departamento de Asuntos al Consumidor".** — Significa el Secretario del Departamento de Asuntos al Consumidor, según se define por la Ley Núm. 5 de 23 de Abril de

Case:17-03283-LTS   Doc#:14168-2   Filed:09/02/20   Entered:09/02/20 22:14:24   Desc: Exhibit Act 57-2020   Page 7 of 13

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

1973, según enmendada, conocida como "Ley Orgánica del Departamento de Asuntos del Consumidor".
**(h) "Secretario del DDEC". —** Significa el Secretario del Departamento de Desarrollo Económico y Comercio del Gobierno de Puerto Rico, según se define por la Ley Núm. 60-2019, según enmendada, conocida como "Código de Incentivos de Puerto Rico".
**(i) "Secretario de Hacienda". —** Significa el Secretario del Departamento de Hacienda del Gobierno de Puerto Rico.

**Artículo 4. — Responsabilidad Ejecutiva.**

Corresponderá al Secretario del Departamento de Hacienda cumplir y hacer cumplir las disposiciones de esta Ley Especial. Para este propósito podrá requerir la colaboración del Secretario del DDEC, la Junta de Planificación, del Departamento Trabajo, la Oficina del Comisionado de Instituciones Financieras, el Departamento de Asuntos al Consumidor la Oficina de Gerencia y Presupuesto y de cualquier otra entidad de la Rama Ejecutiva cuya información sea necesaria para poder cumplir con los propósitos aquí señalados.

**Artículo 5. — Determinaciones específicas de política contributiva y económica.**

Para lograr los propósitos de esta Ley se determinan la creación de los siguientes programas específicos y medidas económicas o contributivas:
**(a)** *Programa para el Pago Expedito de Cuentas por Pagar a Proveedores del Gobierno de Puerto Rico. —* Las obligaciones o cuentas por pagar a los contratistas, suplidores y proveedores ("proveedor"), ya acumuladas previo a la aprobación de esta Ley y que ya hayan sido certificadas por la agencia o instrumentalidad gubernamental para la cual se le ofreció el servicio o entregado los bienes, deberán ser pagadas durante un término que nunca excederá de quince (15) días calendario, luego de la firma de esta Ley.
  **(1)** Durante la vigencia de esta Ley, toda nueva obligación o cuenta por pagar a algún proveedor que sea certificada por la agencia o instrumentalidad gubernamental, para la cual se le ofreció el servicio o entregado los bienes, deberá ser pagada durante un término que nunca excederá de treinta (30) días calendario desde que se certifique.
**(b)** *Programa para Retrotraer Pérdidas Netas en Operaciones Hacia Años Anteriores ("Carry Back"). —* El Departamento de Hacienda permitirá una deducción especial de pérdidas netas en operaciones incurridas, provocadas directamente por la emergencia del COVID-19, para el año contributivo 2020 a retrotraer a cada uno de los dos (2) años contributivos anteriores, comenzando por el año anterior más antiguo. Dicho arrastre de pérdidas no estará sujeta a la limitación de uso establecida en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas. Nada de lo aquí dispuesto limitará el arrastre de pérdidas dispuesto en la Sección 1033.14 de la Ley Núm. 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico".
  **(1)** El retrotraer pérdidas netas en operaciones hacia años anteriores ("Carry Back") será una elección para aquellas industrias o negocios con un volumen de negocios de diez millones (10,000,000) de dólares o menos.

Case:17-03283-LTS   Doc#:14168-2   Filed:09/02/20   Entered:09/02/20 22:14:24   Desc:
Exhibit Act 57-2020   Page 8 of 13

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

**(2)** En el caso de contribuyentes que sean Grandes Contribuyentes, según definidos en el párrafo (35) del apartado (a) de la Sección 1010.01 del Código de Rentas Internas, no se le permitirá retrotraer pérdidas hacia años anteriores.

**(3)** Limitaciones. - El contribuyente tendrá hasta la fecha de radicación de la planilla de contribución sobre ingresos para el año contributivo 2020, incluyendo prórrogas, para beneficiarse de la retrotracción ("carry-back") establecida en este apartado.

**(A)** La cantidad máxima de pérdidas netas en operaciones a retrotraer hacia años anteriores ("Carry Back") será de doscientos mil (200,000) dólares y el reintegro máximo por las contribuciones pagadas en años anteriores será de cincuenta mil (50,000) dólares.

**(4)** La deducción especial de la retrotracción de las pérdidas aplicará también para computar la contribución básica alterna y la contribución alternativa mínima.

**(c)** *Pérdida Neta en Operaciones a Arrastrarse En Años Contributivos Siguientes*. — Para pérdidas netas incurridas, provocadas directamente por la emergencia del COVID-19, en el año contributivo 2020, el monto a arrastrarse a los años contributivos siguientes no le aplicará la limitación establecida en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas.

**(1)** Orden de la Aplicación de las Pérdidas Neta en Operaciones.

**(i)** El contribuyente reclamará primero las pérdidas incurridas en año contributivos anteriores al año contributivo 2020 sujeto a las limitaciones establecidas en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas.

**(ii)** Si luego de aplicar las pérdidas del sub-inciso (i) del inciso (1) de este apartado la planilla reflejase ingreso neto, podrá tomar una deducción de la pérdida arrastrada generada en el año contributivo 2020, sin las limitaciones establecidas en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas.

**(iii)** Si luego de aplicar las pérdidas del sub-inciso (i) y (ii) del inciso (1) de este apartado la planilla reflejase ingreso neto, podrá tomar una deducción de la pérdida arrastrada generada en los años contributivos posteriores al 2020, conforme a lo dispuesto en este apartado.

**(d)** *Exención Temporera a Servicios Rendidos a Otros Comerciantes y Servicios Profesionales Designados.* — La facturación de los servicios prestados a otros comerciantes y servicios profesionales designados, según definidos en el Subtítulo D del Código de Rentas Internas, no estará sujeta a la tasa de cuatro (4) por ciento durante los meses de abril, mayo y junio de 2020. El Secretario de Hacienda podrá extender esta exención por periodos adicionales de tres (3) meses cada uno, mientras dure el periodo de emergencia, pero nunca será mayor a la fecha en que finaliza la vigencia de esta Ley.

**(e)** *Posposición Temporera de la Contribución Mínima Tentativa a Corporaciones de $500*. — Para años contributivos comenzados luego del 31 de diciembre de 2018 y antes del 1 de enero de 2020 (año contributivo 2019), la contribución mínima tentativa de quinientos dólares ($500) requerida en el apartado (g) de la Sección 1022.03 del Código de Rentas Internas, no estará en vigor.

**(1)** Para aquellas corporaciones que hayan pagado la contribución mínima tentativa de $500 para el año contributivo 2019, podrán solicitar un reembolso por esta cantidad al Departamento de Hacienda, el cual se desembolsará en o antes de cuarenta y cinco (45) días calendarios desde

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

su solicitud. El Secretario de Hacienda adoptará los formularios necesarios para solicitar dicho reembolso, si aplica.

**(f)** *Posposición de Declaraciones Informativas.* — Para años contributivos comenzados luego del 31 de diciembre de 2018 y antes del 1 de enero de 2020, las declaraciones informativas requeridas en las Secciones 1063.01 a la 1063.16 del Código de Rentas Internas podrán ser rendidas en o antes del 31 de mayo de 2020.

**(g)** *Posposición Temporera del Informe de Procedimientos Previamente Acordados o Informe de Cumplimiento.* — Para años contributivos comenzados luego del 31 de diciembre de 2018 y antes del 1 de enero de 2020, se elimina el requisito de incluir junto a la planilla de contribución sobre ingresos un Informe de Procedimientos Previamente Acordados (Agreed Upon Procedures) o Informe de Cumplimiento (Compliance Attestation) preparado por un Contador Público Autorizado (CPA) con licencia vigente para ejercer la profesión en Puerto Rico, según establecido en el inciso (D) del párrafo (2) del apartado (a) de la Sección 1021.02 y en el inciso (B) del párrafo (7) del apartado (a) de la Sección 1022.04 del Código de Rentas Internas.

**(h)** *Extensión Automática de Licencias Para Actividad Comercial.* — Quedan extendidas automáticamente, por un periodo de seis (6) meses, todas las licencias y fianzas bajo el Código de Rentas Internas, licencias o permisos expedidos por la Oficina de Gerencia de Permisos o cualquier otra agencia, instrumentalidad gubernamental o municipio del Gobierno de Puerto Rico, que venzan a partir del 1 de marzo de 2020. Toda licencia o permiso será aquella aprobación escrita autorizando el comienzo de una acción o actividad comercial, expedida por el Gobierno, sus agencias, instrumentalidad gubernamental o municipios.

**(i)** *Exclusión del Ingreso Bruto e Ingreso Sujeto al Pago de Patente Municipal por Cancelación de Deuda y Recibo de Subsidios.* — Se excluirá del ingreso bruto para propósitos de contribución sobre ingresos, incluyendo la contribución básica alterna o la contribución alternativa mínima, y del ingreso sujeto al pago de patente municipal la cancelación de deuda y las cantidades recibidas por concepto de cualquier subsidio o estímulo federal bajo la Ley de Ayuda, Alivio y Seguridad Económica de Coronavirus ("CARES Act") o bajo cualquier otra legislación federal para atender el COVID-19 o bajo un cualquier subsidio o estímulo estatal otorgado a consecuencia del COVID-19, incluyendo los créditos contributivos reembolsables, y otras ayudas económicas dispuestas en esta Ley.

  **(1)** Disponiéndose, además, que el contribuyente podrá reclamar como deducción al ingreso neto los gastos ordinarios y necesarios incurridos en la operación del negocio, aun cuando dichos gastos sean pagados con fondos recibidos por concepto de cualquier subsidio o estímulo federal bajo el CARES Act o bajo cualquier otra legislación federal para atender el COVID-19 o bajo un cualquier subsidio o estímulo estatal otorgado a consecuencia del COVID-19, incluyendo la cancelación de deuda y créditos contributivos reembolsables, y otras ayudas económicas dispuestas en esta Ley.

**(j)** *Programa de Cumplimiento Automático con Requisitos de Decreto bajo el Código de Incentivos de Puerto Rico o Leyes de Incentivos Anteriores.* — Para el año contributivo 2020, todo beneficiario de un decreto de exención bajo la Ley 60-2019, según enmendada, conocida como "Código de Incentivos de Puerto Rico", bajo leyes de incentivos anteriores o bajo una ley especial de incentivos en Puerto Rico, se entenderá que ha cumplido con los siguientes requisitos o métricas contenidos en un Decreto, siempre y cuando la posible falta de cumplimiento se deba directamente a la emergencia provocada por el COVID-19:

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

    **(1)** creación y retención de empleos;
    **(2)** ingreso bruto o volumen de ventas;
    **(3)** inversión en maquinaria y equipo.

Las disposiciones de este apartado no impedirán que el Secretario del DDEC verifique el cumplimiento de otros requisitos contenidos en el Código de Incentivos, las leyes de incentivos anteriores o bajo una ley especial de incentivos en Puerto Rico o en el propio Decreto de Exención. El alcance de las disposiciones contenidas en este apartado se interpretará de manera análoga con los fines promulgados por la Ley 91-2018, conocida como "Ley de Cumplimiento Automático con las Leyes de Incentivos por Emergencia". Para ello, el Secretario del DDEC determinará, para la consecución de los objetivos de apartado, los términos y condiciones aplicables a este programa mediante orden administrativa, carta circular, memorando, documento interpretativo o cualquier otro comunicado de carácter general.

**(k)** *Exención del Uso de Notario Público para Declaraciones Juradas*. – A partir del 1 de abril de 2020 y hasta que termine la emergencia provocada por el COVID-19, las personas o negocios quedarán exentos de presentar cualquier declaración jurada y suscrita ante un notario público de Puerto Rico, que sea requerida por el Código de Renta Internas, por reglamento, por cualquier pronunciamiento administrativo emitido por el Departamento de Hacienda o que sea requerida para solicitar cualquier ayuda o subsidio para atender la emergencia del COVID-19. La persona o negocio presentará, en lugar de la declaración jurada y suscrita ante el notario público, una afirmación bajo pena de perjurio que incluya toda la información que de ordinario hubiese estado en la declaración jurada.

**(l)** *Planillas de Contribución sobre Ingresos para el Año Contributivo 2019*. – A todo tipo de contribuyente, incluyendo entidades conductos, se le extiende la fecha límite hasta el 15 de julio de 2020 para la radicación de la planilla de contribución sobre ingresos requerida bajo el Código para el año contributivo 2019, cuya fecha original de vencimiento sea entre el 15 de marzo y el 15 de junio de 2020. Disponiéndose, además, que cualquier pago de contribución sobre ingresos de dichas planillas quedará extendido hasta la fecha de vencimiento aquí establecida. Se elimina la imposición de intereses, recargos y penalidades siempre y cuando las planillas de contribución sobre ingresos y el pago de la contribución adeudada con dichas planillas sean sometidas en la fecha límite aquí establecida.

    **(1)** Todo contribuyente que tenga la obligación de radicar una planilla de contribución sobre ingresos para el año contributivo 2019, y que a la fecha de radicación establecida para la misma no cuente con los recursos económicos para remitir el balance pendiente de pago que se refleja en dicha planilla, podrá solicitar un plan de pago para liquidar el total de dicha contribución.
    **(2)** Para poder acogerse al pago a plazos, el contribuyente deberá estar al día en sus otras responsabilidades contributivas ante el Departamento de Hacienda.
    **(3)** Todo contribuyente que solicite el pago a plazos deberá comprometerse a pagar la contribución adeudada en plazos mensuales y saldar el monto total adeudado no más tarde del 31 de marzo de 2021. Una vez el contribuyente salde la deuda, el Departamento de Hacienda procederá a eliminar los intereses, recargos y penalidades correspondientes.
    **(4)** Se ordena al Departamento a emitir las reglas, términos y condiciones y el proceso de solicitud que deberá seguir todo contribuyente que interese acogerse al pago a plazos.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

(m) *Extensión de Fechas Límites de la Planilla Mensual del Impuesto sobre Ventas y Usos.* – Para planillas y pagos relacionados con el impuesto sobre ventas y usos no se impondrán intereses, recargos y penalidades, siempre y cuando se cumplan los siguientes requisitos:

(1) Planilla Mensual del Impuesto sobre Ventas y Uso. — La fecha límite de radicación de la planilla mensual del impuesto sobre ventas y uso, y su pago correspondiente, para los periodos de febrero, marzo, abril y mayo de 2020 serán el 20 de abril de 2020, 20 de mayo de 2020, 22 de junio de 2020 y 20 de julio de 2020, respectivamente.

(2) Planilla Mensual de Impuesto sobre Importaciones. — La fecha límite de radicación de la planilla mensual de impuesto sobre importaciones, y su pago correspondiente, para los periodos de marzo, abril y mayo de 2020, serán el 10 de mayo de 2020, el 10 de junio de 2020 y el 10 de julio de 2020, respectivamente.

(3) Pagos del Impuesto sobre Ventas y Usos Quincenal — No se impondrá penalidades por incumplimiento con los pagos del impuesto sobre ventas y uso (IVU) quincenal para los meses de marzo, abril, mayo y junio de 2020, siempre y cuando el total del IVU adeudado para dichos meses sea pagado en su totalidad con la radicación de la Planilla Mensual de IVU de dichos periodos.

(n) *Requisito de Pago de Impuesto sobre Ventas y Usos en la Importación y Compra de Partidas Tributables para la Reventa.* — Durante el periodo de emergencia se faculta al Secretario de Hacienda a establecer lo siguiente:

(1) Otorgar un certificado de exención que permita durante el periodo de exención temporero importar o adquirir partidas tributables para la reventa libre del pago de impuesto sobre ventas y uso (IVU) a todo comerciante que sea un revendedor (según dicho término se define en la Sección 4010.01(ww) del Código), que tenga vigente un Certificado de Revendedor emitido conforme a lo dispuesto en la Sección 4050.04(c) del Código. Para propósitos de este apartado, el "Periodo de Exención Temporero" comprende desde el lunes, 6 de abril de 2020 hasta el martes, 30 de junio de 2020.

(2) Que el Certificado de Exención Temporero le permita al comerciante revendedor importar o adquirir mediante compra en Puerto Rico, partidas tributables que sean adquiridas exclusivamente para la reventa.

(o) *Retención Por Servicios Profesionales* – Desde el 23 de marzo al 30 de junio de 2020, ninguna empresa, agencia o patrono retendrá el diez (10) por ciento de las cantidades pagaderas a contratistas o personas que reciban compensación por servicios profesionales, según dispuesto en la Sección 1062.03 del [Código de Rentas Internas](#).

(1) El relevo de retención dispuesto en este apartado, no exime al receptor del pago de su obligación de tributar sobre dicho ingreso en su planilla de contribución sobre ingresos. Además, el agente retenedor deberá informar dichos pagos en su declaración informativa por servicios prestados.

(2) Para el año contributivo 2019, el individuo, o corporación o cualquier otra entidad, podrá optar por la contribución opcional aunque tenga un balance de contribución a pagar con su planilla de contribución sobre ingresos, siempre y cuando dicho balance sea pagado en su totalidad no más tarde de la fecha límite para radicar la planilla de contribución sobre ingresos, sin considerar solicitud de prórroga.

(3) En el caso de contribuyentes que se acogerán a la Contribución Opcional para el año contributivo 2020, deberán asegurarse de cumplir con su responsabilidad contributiva no más

Case:17-03283-LTS Doc#:14168-2 Filed:09/02/20 Entered:09/02/20 22:14:24 Desc: Exhibit Act 57-2020 Page 12 of 13

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

tarde de la fecha límite para radicar la planilla de contribución sobre ingresos, sin considerar solicitud de prórroga.

**(p)** *Uso de Tarjeta del Programa de Asistencia Nutricional (PAN) en Restaurantes*. – Se le ordena a la Secretaria del Departamento de la Familia para que, dentro de diez (10) días calendarios siguientes a la firma de esta Ley, solicite al Departamento de Agricultura de Estados Unidos que, durante la vigencia de esta Ley o hasta que dure la emergencia provocada por el COVID-19, lo que sea menor, se permita que los beneficiarios de la tarjeta del PAN puedan comprar alimentos preparados en restaurantes.

**Artículo 6. —Reglamentación.**

Para cumplir con los propósitos de esta Ley se autoriza al Departamento de Hacienda a emitir todas las normas, cartas circulares, reglas y reglamentos que entienda prudentes y necesarias. Dicha facultad especial de reglamentación se ejercerá sin sujeción a las disposiciones de la Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico". No obstante las mismas deberán entrar en vigor no más tarde de diez (10) días laborables, contados a partir de la aprobación de esta Ley. Las mismas, así como cualesquiera enmiendas posteriores deberán publicarse en las páginas cibernéticas del Gobierno de Puerto Rico.

**Artículo 7. —Revisión Judicial.**

Para revisar las disposiciones de la presente Ley, así como para los procedimientos de disputa de facturas o para resolver controversias sobre las disposiciones contributivas especiales que ésta crea, tendrá jurisdicción exclusiva, en primera instancia, la Sala Superior de San Juan del Tribunal General de Justicia.

**Artículo 8. —Separabilidad.**

Esta Ley se interpretará de acuerdo a la Constitución de Puerto Rico y la Constitución de Estados Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la orden a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha orden quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional.

**Artículo 9. —Supremacía**

Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición general o específica de cualquier otra ley o reglamento del Gobierno de Puerto Rico que sea inconsistente con esta Ley.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

**Artículo 10. —Vigencia**

Esta Ley entrará en vigor inmediatamente después de su aprobación. Los programas gubernamentales que se crean mediante la presente estarán en vigor mientras sean necesarios para poder mitigar los efectos en la economía que ha producido la pandemia del Covid-19, pero nunca se extenderán más allá del 31 de diciembre de 2021.

Nota. Este documento fue compilado por personal de la **Oficina de Gerencia y Presupuesto** del Gobierno de Puerto Rico, como un medio de alertar a los usuarios de nuestra Biblioteca de las últimas enmiendas aprobadas para esta Ley. Aunque hemos puesto todo nuestro esfuerzo en la preparación del mismo, este no es una compilación oficial y podría no estar completamente libre de errores inadvertidos; los cuales al ser tomados en conocimiento son corregidos de inmediato. En el mismo se han incorporado todas las enmiendas hechas a la Ley a fin de facilitar su consulta. Para exactitud y precisión, refiérase a los textos originales de dicha ley y a la colección de Leyes de Puerto Rico Anotadas L.P.R.A.. Las anotaciones en letra cursiva y entre corchetes añadidas al texto, no forman parte de la Ley; las mismas solo se incluyen para el caso en que alguna ley fue derogada y ha sido sustituida por otra que está vigente. Los enlaces al Internet solo se dirigen a fuentes gubernamentales. Los enlaces a las leyes enmendatorias pertenecen a la página web de la **Oficina de Servicios Legislativos** de la Asamblea Legislativa de Puerto Rico. Los enlaces a las leyes federales pertenecen a la página web de la **US Government Publishing Office GPO** de los Estados Unidos de Norteamérica. Los enlaces a los Reglamentos y Ordenes Ejecutivas del Gobernador, pertenecen a la página web del **Departamento de Estado** del Gobierno de Puerto Rico. Compilado por la Biblioteca de la Oficina de Gerencia y Presupuesto.

Véase además la **Versión Original de esta Ley**, tal como fue aprobada por la Legislatura de Puerto Rico.

⇒⇒⇒ Verifique en la Biblioteca Virtual de OGP la **Última Copia Revisada** (Rev.) para esta compilación.

Ir a: www.ogp.pr.gov ⇒ Biblioteca Virtual ⇒ Leyes de Referencia—EPIDEMIAS.