**EXHIBIT 7**

2019 WL 4417472 (TCA)

OCTAGON CONSULTANT GROUP, CORP., Apelado

v.

MUNICIPIO DE TOA BAJA, Apelante.

TRIBUNAL DE APELACIONES
Civil Núm.: BY2018CV00830
KLAN201900215
En San Juan, Puerto Rico, a 19 de julio de 2019.
July 19, 2019.

APELACION procedente del Tribunal de Primera Instancia, Sala de Bayamón
Cobro de Dinero Incumplimiento de Contrato

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Surén Fuentes y la Jueza Cortés González.

**SENTENCIA**

CINTRÓN CINTRÓN, JUEZA PONENTE

*1 El Municipio de Toa Baja (Municipio) presentó recurso de apelación de la Sentencia sumaria dictada por el Tribunal de Primera Instancia, Sala de Bayamón (TPI), mediante la cual, se declaró con lugar la Demanda sobre cobro de dinero e incumplimiento de contrato, instada por Octagon Consultant Group Corp. (Octagon) en contra del Municipio.
Contamos con el escrito en oposición de Octagon, con cuyo beneficio y al tenor del marco fáctico-jurídico que a continuación delineamos, procedemos a resolver el recurso ante nuestra consideración.

**I.**

El 12 de junio de 2018, Octagon presentó su Demanda sobre cobro de dinero e incumplimiento de contrato en contra del Municipio, alegando que habían pactado varios contratos de servicios profesionales, de los cuales el Municipio le adeudaba $117,940.[1]
El Municipio contestó la Demanda y negó las alegaciones en su contra. Luego el Municipio presentó una moción para que se dictara sentencia sumaria desestimando la Demanda, alegando que las facturas de Octagon no cumplían con los formalismos legales porque no estaban firmadas por un representante autorizado del Municipio, certificando que los servicios se prestaron durante la vigencia de los contratos. La moción de sentencia sumaria del Municipio no estuvo acompañada de declaración jurada o anejo alguno.[2] No obstante, en su moción de sentencia sumaria, el Municipio hizo referencia al menos a dos de los casi cincuenta anejos que Octagon unió a su Demanda.[3]
Octagon presentó escrito de oposición a la solicitud de sentencia sumaria del Municipio, indicando que las facturas fueron certificadas conforme a los contratos y que no procedía el remedio sumario pues existía controversia acerca de si algunos de los servicios se rindieron durante la vigencia de los contratos. Octagon acompañó su moción con una declaración jurada de su presidente, Raimundo Marrero Otero, y otros documentos.[4] En la referida declaración jurada, el presidente expresó sus gestiones de someter las facturas y gestionar el cobro de estas con la representante autorizada del Municipio, Rebecca Rivera Torres, quien las recibía, certificaba y ordenaba su pago.[5]
El 23 de enero de 2019, el TPI dictó Sentencia sumaria declarando Ha Lugar la Demanda y condenando al Municipio a pagarle a Octagon $87,940.[6] El Tribunal consignó las siguientes determinaciones fácticas:

  1. El 17 de septiembre de 2015 el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme

al valor en el mercado de un Centro de Autismo perteneciente al Municipio de Toa Baja, ubicado en DV–1, en la Calle Lago Las Curias en Levittown 5ta Sección, Barrio Sabana Seca en Toa Baja, Puerto Rico. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de tres mil dólares ($3,000.00).

***2** 2. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000361.

3. Conforme al Contrato de Servicios Profesionales del 17 de septiembre de 2015, otorgado entre las partes, Octagon preparó la tasación de la propiedad cita en DV1, en la Calle Lago Las Curias en Levittown 5ta Sección, Barrio Sabana Seca en Toa Baja, Puerto Rico.

4. El día 10 de octubre de 2015 Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Aníbal Vega Borges la factura 2015–05 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionados por la cantidad de $3,000 .00.

5. La cantidad de $3,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de tasación, es una deuda que está vencida es líquida y exigible en su totalidad.

6. El 4 de agosto de 2015, el Sr. Raimundo Marrero Otero en su carácter de Presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a revisar las colindancias de la finca principal con la colindancia de la Comunidad Villa Calma en el Barrio Ingenio a requerimiento de la Autoridad de Agricultura y Autoridad de Tierras, revisaría el plano final para ajustar los solares afectados por el deslinde de las colindancias de las fincas matrices y produciría un plano final para la aprobación de la Junta de Planificación. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de cuarenta y dos mil dólares ($42,000.00).

7. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000236.

8. Conforme al Contrato de Servicios Profesionales del 4 de agosto de 2015, otorgado entre las partes, Octagon revisó las colindancias de la finca principal con la colindancia de la Comunidad Calma, Barrio Ingenio a requerimiento de la Autoridad de Agricultura y Autoridad de Tierras, el plano final fue revisado para ajustar los solares afectados por el deslinde de las colindancias de las fincas matrices y se produjo el plano final para la aprobación de la Junta de Planificación.

9. El día 31 de agosto de 2015, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Aníbal Vega Borges la factura 2015–03 sobre el trabajo contratado por el Municipio de Toa Baja de revisión de plano de agrimensura y producción final de plano para la aprobación de la Junta de Planificación por la cantidad de $42,000.00.

10. Al presente, el Municipio de Toa Baja adeuda aún la cantidad de $12,940.00 por los servicios prestados por Octagon relacionados al contrato antes aludido.

11. La cantidad de $12,940.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de revisión de plano de agrimensura y producción final de plano para la aprobación de la Junta de Planificación, es una deuda que está vencida es líquida y exigible en su totalidad.

***3** 12. El 4 de agosto de 2015, el Sr. Raimundo Marrero Otero en su carácter de Presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un estudio de renta conforme al valor en el mercado de un Terrano Vacante en el Vertedero de Toa Baja perteneciente al Municipio de Toa Baja, ubicado en PR–866, Km. 2.2 Candelaria Arenas, Toa Baja, PR. 00949 y el Gimnasio Municipal de la 6ta. Sección de Levittown en el Municipio de Toa Baja, ubicado en PR–866 6 Sección Levittown Sabana Seca Toa Baja, P.R. 00949. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de mil quinientos dólares ($1,500.00) por cada estudio o sea un total de tres mil dólares ($3,000.00).

13. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000237.

14. Conforme al Contrato de Servicios Profesionales del 4 de agosto de 2015, otorgado entre las partes, Octagon preparó el estudio de renta de la propiedad cita en PR–866, Km. 2.2 Candelaria Arenas, Toa Baja, PR. 00949 y la propiedad cita en PR866 6 Sección Levittown Sabana Seca Toa Baja, P.R. 00949.

15. El día 24 de septiembre de 2015, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Aníbal Vega Borges la factura 2015–04 sobre el trabajo contratado por el Municipio de Toa Baja de estudio de renta antes relacionado por la cantidad de $3,000.00.

16. Al presente, el Municipio de Toa Baja adeuda la cantidad de $3,000.00 por los servicios prestados brindados por Octagon.

17. La cantidad de $3,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de preparar estudio de renta, es una deuda que está vencida es líquida y exigible en su totalidad.

18. El 1 de agosto de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firma un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un Informe de Tasación Comercial, de acuerdo al valor en el mercado de un predio de 8,000 metros cuadrados localizado en el lado Este de PR–866 de Levittown, Sabana Seca, Toa Baja, Puerto Rico, prepararía un plano de agrimensura y un plano de segregación. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de trece mil dólares ($13,000.00).

19. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000116.

20. Conforme al Contrato de Servicios Profesionales del 1 de agosto de 2016, otorgado entre las partes, Octagon preparó el Informe de Tasación sobre la propiedad de 8,000 metros cuadrados antes indicada, preparó el plano de agrimensura y el plano de segregación sobre dicho predio de terreno.

21. El día 3 de noviembre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 61–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación, preparación de planos de agrimensura y planos de segregación antes relacionados por la cantidad de $12,000.00.

*4 22. Al presente, el Municipio de Toa Baja adeuda la cantidad de $12,000.00 por los servicios prestados brindados por Octagon.

23. La cantidad de $12,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de tasación, preparación de planos de agrimensura y planos de segregación, es una deuda que está vencida es líquida y exigible en su totalidad.

24. El 10 de agosto de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme al valor en el mercado del Centro de Diagnóstico y Tratamiento (CDT) ubicado en Intersección Norte de la PR–867 Km. 2.2 y Ave. Sabana Seca, Toa Baja, PR. 00949. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de diez mil dólares ($10,000.00).

25. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000206.

26. Conforme al Contrato de Servicios Profesionales del 10 de agosto de 2016, otorgado entre las partes, Octagon preparó la tasación de la propiedad cita en Intersección Norte de la PR–867 Km. 2.2 y Ave. Sabana Seca, Toa Baja, PR. 00949.

27. El 30 de agosto de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 59–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionado por la cantidad de $10,000.00.

28. El 15 de agosto de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme al valor en el mercado para cada una de las siguientes propiedades pertenecientes al Municipio de Toa Baja: a. Cancha de Baloncesto en el Sector Campanillas, b. Centro "Head Start (Pablito), Levittown, c. Salón de la Fama Sabana Seca y Coliseo Municipal, d. Centro Comunal Grande en el Barrio Ingenio, e. Centro Comunal de la Séptima Sección Levittown, f. Cancha de Baloncesto en Sector Villa Olga, g. Complejo Deportivo Avoli. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de cuarenta y tres mil dólares ($43,000.00).

29. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000231.

30. Conforme al Contrato de Servicios Profesionales del 15 de agosto de 2016 otorgado entre las partes Octagon preparó las siete (7) tasaciones de las propiedades arriba indicadas.

31. El día 4 de octubre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 62–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionado por la cantidad de $43,000.00.

**\*5** 32. El 8 de septiembre de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un Plano de Agrimensura de (59.55 Cdas), un Plano de Segregación de (6.21 Cdas.) y Permisos sobre una propiedad cita en PR–867, Km., 2.2 Ave. Sabana Seca en Toa Baja. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de veinticuatro mil dólares ($24,000.00).

33. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000337.

34. Conforme al Contrato de Servicios Profesionales del 8 de septiembre de 2016, otorgado entre las partes, Octagon preparó los planos de agrimensura y segregación, así como los permisos para la propiedad cita en PR–867, Km. 2.2 Ave. Sabana Seca, Toa Baja.

35. El día 11 de noviembre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 64–16 sobre el trabajo contratado por el Municipio de Toa Baja de los trabajos antes relacionados por la cantidad de $17,000.00.

36. Al presente, el Municipio de Toa Baja adeuda la cantidad de $17,000.00 por los servicios prestados de preparación de planos de agrimensura y de segregación, así como de obtener permisos brindados por Octagon.

37. La cantidad de $17,000.00 adeudada par el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de preparación de planos de agrimensura y de segregación, así como de obtener permisos, es una deuda que está vencida es líquida y exigible en su totalidad.

38. El 1 de noviembre de 2016, el Sr. Raimundo Marrero Otero en su carácter de Presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme al valor en el mercado del Estadio de Toa Baja Primera Sección de Levittown. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de siete mil dólares ($7,000.00).

39. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000499.

40. Conforme al Contrato de Servicios Profesionales del 1 de noviembre de 2016 otorgado entre las partes Octagon preparó la tasación del Estadio de Toa Baja Primera Sección de Levittown.

41. El 7 de octubre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 63–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionado por la cantidad de $7,000.00.

42. Al presente, el Municipio de Toa Baja adeuda la cantidad de $7,000.00 por los servicios prestados de tasación brindados por Octagon.

43. La cantidad de $7,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de tasación, es una deuda que está vencida es líquida y exigible en su totalidad.

**\*6** 44. El 1 de noviembre de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un Plano de Agrimensura de (5.1717 Cdas.) para el Salón de la Fama y Coliseo, y otro Plano de Agrimensura de (6.261 Cdas.) para el Complejo Deportivo sobre una propiedad cita en PR–867, Km., 2.2 Ave. Sabana Seca en Toa Baja. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de diez mil dólares ($10,000.00).

45. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000500.

46. Conforme al Contrato de Servicios Profesionales del 1 de noviembre de 2016 otorgado entre las partes Octagon preparó los dos planos de agrimensura para las dos propiedades antes identificadas.

47. El 14 de noviembre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 67–16 sobre el trabajo contratado por el Municipio de Toa Baja antes relacionados por la cantidad de $10,000.00.

48. Al presente, el Municipio de Toa Baja adeuda la cantidad de $10,000.00 por los servicios prestados brindados por Octagon.

> 49. La cantidad de $10,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de preparar dos planos de agrimensura para las dos propiedades, es una deuda que está vencida es líquida y exigible en su totalidad.

Apéndice del recurso, págs. 9–15.

De las precitadas determinaciones de fácticas se desprende una deuda vencida, líquida y exigible de $64,940.[7] Asimismo, el TPI aclaró en su Sentencia sumaria que, respecto al Contrato de Servicios Profesionales de Tasación para siete propiedades del Municipio, que totaliza $43,000, y con vigencia de 15 de agosto a 15 de septiembre de 2016,[8] Octagon facturó una cantidad de $20,000, luego de expirado el contrato; esto es, 26 y 30 de septiembre de 2016.[9] Por lo cual, la cantidad correcta adeudada por el referido contrato era de $23,000. Sumada esta cuantía ($23,000) al total adeudado que surge de las determinaciones fácticas no controvertidas ($64,940), la deuda total a pagar por el Municipio asciende a $87,940.[10]

El TPI también concluyó en su Sentencia sumaria que los Contratos de Servicios Profesionales cumplieron con la normativa aplicable, toda vez que, fueron reducidos a escrito, se sometieron a la Oficina del Contralor, se emitió copia del registro, y Octagon prestó los servicios pactados. El Tribunal rechazó la teoría del Municipio de que las facturas no habían sido certificadas por un representante autorizado, pues la normativa no dispone requisitos de forma sobre las facturas, sino más bien delega a los municipios la rigurosa responsabilidad de tener controles adecuados de contabilidad.[11]

**\*7** El Municipio solicitó reconsideración y determinaciones adicionales de hechos y derecho, lo cual fue rechazado por el TPI.[12]

Aún inconforme, el Municipio recurrió ante nos mediante la apelación que nos ocupa y le imputó al foro sentenciador los siguientes errores:

> Erró el TPI, al ignorar que las facturas de servicios profesionales por las cuales condenó al Municipio, carecían de la certificación del representante autorizado del Municipio, certificando correcto que el trabajo o los servicios se rindieron.
>
> Erró el TPI, como cuestión de derecho al declarar con lugar la sentencia sumaria a favor de la parte apelada, por entender que no existía controversia sustancial en cuanto a los hechos materiales, y negar la determinación de hecho y derecho adicionales.
>
> Erró el TPI, como cuestión de derecho, al ignorar que los contratos de servicios profesionales firmados entre el apelado y el Municipio requieren que las facturas estén certificadas por un representante autorizado del Municipio, certificando correcto que el trabajo o los servicios profesionales se rindieron.

Oportunamente, Octagon presentó su alegato en oposición.

## II.

### Sentencia Sumaria

La Regla 36 de Procedimiento Civil regula el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Meléndez González v. M. Cuebas,* 193 DPR 100, 109 (2015); *S.L.G. Zapata Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213–214 (2010); *Vera v. Dr. Bravo,* 161 DPR 308, 331–332 (2004); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911 (1994).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1. La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que *permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Ramos Pérez v. Univisión,* supra. págs. 213–214, seguido en *Meléndez González v. M. Cuebas,* supra, pág. 110.

Procede entonces que se dicte sentencia sumaria únicamente cuando surge de manera clara que el promovido por la solicitud no puede prevalecer bajo ningún supuesto de hechos y, que el tribunal tiene a su disposición toda la prueba necesaria para resolver la controversia que tiene ante su consideración. Cualquier duda no es suficiente para denegar la solicitud de sentencia sumaria. Debe tratarse de una duda que permita concluir que existe una verdadera y sustancial controversia sobre hechos relevantes y

pertinentes. *Meléndez González v. M. Cuebas,* supra, pág. 110; *Nieves Díaz v. González Massas,* supra, pág. 848; *Ramos Pérez v. Univisión,* supra, pág. 213–214; *E.L.A. v. Cole,* 164 DPR 608, 625 (2005).

**\*8** Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 727 (1994); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* supra, págs. 913–914.

La parte promovida por una solicitud de sentencia sumaria no puede descansar meramente en las afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva. Por el contrario, está obligada a contestar de forma tan detallada y específica como lo hizo la parte promovente. 32 LPRA Ap. V, R. 36.3(c); *Nieves Díaz v. González Massas,* supra, pág. 848. Además, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Esto es, no debe cruzarse de brazos y descansar en sus alegaciones. *Ramos Pérez v. Univisión,* supra, pág. 215; *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000); *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 576 (1997); *Corp. Presiding Bishop v. Purcell,* 117 DPR 714, 721 (1986). Ahora bien, el Tribunal Supremo ha establecido que el mero hecho de que la parte promovida no presente evidencia que contradiga la presentada por la parte promovente, no implica necesariamente que proceda la sentencia sumaria. *Vera v. Dr. Bravo,* supra, págs. 331–332; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* supra, págs. 912–913.

En *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Como foro apelativo, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo,* supra, pág. 334. Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Meléndez González v. M. Cuebas,* supra, pág. 119.

**Contratación Gubernamental**

La contratación gubernamental se considera un asunto revestido de alto interés público y por eso los preceptos legales que rigen la misma aspiran a promover no sólo una sana y recta administración pública, sino también a prevenir el despilfarro, la corrupción y el amiguismo. *Vicar Builders v. ELA,* 192 DPR 256, 263 (2015); *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 537 (2011). Ante esta realidad, las normas que gobiernan la contratación entre entes privados y público son unas rigurosas y de aplicación restrictiva; así lo ha favorecido nuestra jurisprudencia. *Vicar Builders v. ELA,* supra.

**\*9** Cónsono con lo antes expuesto, la jurisprudencia ha establecido ciertos requisitos de forma que son indispensables para que el negocio jurídico sea válido y exigible; a saber: (1) reducir el contrato a escrito; (2) mantener un registro para establecer su existencia; (3) enviar copia a la Oficina del Contralor de Puerto Rico, y(4) acreditar la certeza de tiempo, a saber, que el contrato se realizó y otorgó quince días antes. Como puede observarse, estas exigencias cumplen el cometido de servir como mecanismo de cotejo para perpetuar el negocio jurídico. Id., pág. 264; *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 54 (1988). Tales exigencias formales deberán ser observadas por los municipios para que sus contratos sean válidos. *Cordero Vélez v. Mun. Guánica,* 170 DPR 237, 248–249 (2007).

Asimismo, la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 et. seq., impulsó un proceso de descentralización con el fin de ampliar la autonomía municipal. *Mun. de Ponce v. A.C. et al.,* 153 DPR 1, 21 (2000). El gobierno municipal está constituido por la Rama Legislativa y la Rama Ejecutiva. 21 LPRA sec. 4003(c). El Art. 3.009, 21 LPRA sec. 4109, establece que el Alcalde es la autoridad máxima de la Rama Ejecutiva del gobierno municipal y en tal capacidad le corresponde su dirección, administración y fiscalización del funcionamiento del municipio. Entre las facultades generales del Alcalde figuran las siguientes:

> [ ... ]
>
> (r) Contratar los servicios profesionales, técnicos y consultivos necesarios, convenientes o útiles para la ejecución de sus funciones, deberes y facultades y para la gestión de los asuntos y actividades de competencia o jurisdicción municipal. [ ... ]
>
> [ ... ]

A su vez, el Art. 2.001(n) de la Ley de Municipios Autónomos, 21 LPRA sec. 4051(n), establece que los municipios estarán facultados para "[c]ontratar los servicios profesionales, técnicos y consultivos que sean necesarios y para realizar las actividades, programas y operaciones municipales o para cumplir con cualquier fin público autorizado por este subcapítulo o por cualquier otra ley que aplique a los municipios. [ ... ]".

Cabe destacar que la Ley Núm. 14–2016 aclaró el lenguaje del Artículo 8.016 de la Ley de Municipios Autónomos, 21 LPRA sec. 4366. Reiteró que los poderes de contratación conferidos, mediante la Ley de Municipios Autónomos, *supra,* eran amplios y perseguían la otorgación de servicios que fueran útiles y necesarios para los ciudadanos. Actualmente, el último párrafo del Art. 8.016, *supra,* reza:

> La facultad para otorgar contratos en virtud de los poderes y facultades provistos a los municipios en las secs. 4051 y 4054 de este título y para la otorgación de contratos de servicios, servicios profesionales, técnicos y consultivos, excepto cuando en la Ley exista disposición expresa en contrario, es exclusiva del Alcalde. No será requerido, excepto cuando la Ley expresamente disponga lo contrario o expresamente requiera la intervención de la Legislatura Municipal, que el Alcalde remita los contratos para ejecutar los poderes y facultades provistos a los municipios en las secs. 4051 y 4054 de este título y los contratos de servicios, servicios profesionales, técnicos y consultivos a la Legislatura Municipal.

**\*10** En fin, la potestad contractual de un municipio está sujeta a los requisitos formales y los límites prudenciales previamente mencionados sobre la sana y responsable administración pública. *Vicar Builders v. ELA,* supra, págs. 263–264; *Cordero Vélez v. Mun. Guánica,* supra, págs. 248–249. A esos fines, la Ley de Municipios Autónomos, *supra,* le impone al alcalde, a funcionarios y empleados en que este delegue, y cualquier representante autorizado de este o del municipio, la responsabilidad de velar por "la legalidad, exactitud, propiedad, necesidad y corrección de los documentos y todos los gastos que se autoricen para el pago de cualquier concepto". 21 LPRA sec. 4355. Asimismo, el Art. 8.010, le exige al municipio, entre otros deberes, mantener un sistema uniforme de contabilidad con controles internos adecuados para verificar y garantizar la corrección de las operaciones financieras. 21 LPRA sec. 4360.

Añádase que el *Reglamento para la Administración Municipal* vigente para la fecha de los hechos del caso, Reglamento 7539 de 18 de julio de 2008, establece que compete al Alcalde o su representante autorizado cerciorarse de que el contratista cumplió con su deberes y responsabilidades contractuales. Igual compete al Director de Finanzas ordenar el pago de los servicios acorde al contrato, luego de recibir la certificación de que los servicios se rindieron conforme al contrato, de manera aceptable. En su Capítulo IV, Sección 23, el Reglamento 7539 provee lo siguiente:

> Sección 23: Pago de Servicios Profesionales y Consultivos
>
> (1) El Alcalde, o su representante autorizado, tomará las providencias necesarias para determinar que la persona contratada cumpla con los deberes y responsabilidades estipuladas en el contrato.
>
> (2) El Director de Finanzas ordenará los pagos por estos servicios de acuerdo con lo estipulado en el contrato y luego de recibir la debida certificación de que los servicios se rindieron, según los términos del contrato y en forma aceptable. Las enmiendas, la resolución y rescisión de los contratos se tramitarán, intervendrán y distribuirán en igual forma que los contratos originales.

### III.

Los tres señalamientos de error del Municipio se resumen en que el TPI no debió dictar sentencia sumaria porque existía controversia sustancial acerca la certificación de facturas por parte de un representante autorizado del Municipio. Conforme al marco jurídico esbozado, analizados los hechos del caso, concluimos que no le asiste la razón al Municipio, por lo cual, el TPI no erró al dictar la Sentencia sumaria aquí apelada.

La principal alegación del Municipio es que no procedía dictar sentencia sumaria a favor de Octagon, por dos razones alternativas:

1. No se probó la deuda pues las facturas no estaban certificadas por un representante autorizado del Municipio, según lo exige la normativa aplicable y el contrato entre las partes.

**\*11** 2. La ausencia de las referidas certificaciones genera una controversia de hechos sustanciales que impide que se disponga sumariamente del caso.

Ninguna de las razones esbozadas es correcta.

En primer lugar, del expediente surge de manera incontrovertida que los contratos entre Octagon y el Municipio cumplieron con la normativa aplicable, esto es: se hicieron por escrito; se mantuvo un registro que garantiza la existencia del contrato; se

registraron en la Oficina del Contralor; y se acreditó la certeza temporal del contrato. *Vicar Builders v. ELA,* supra, págs. 263–264; *Cordero Vélez v. Mun. Guánica,* supra, págs. 248–249.

En segundo lugar, la Ley de Municipios Autónomos no exige lo planteado por el Municipio, pues la ley delega en los municipios, *no en los contratistas,* los controles internos de contabilidad que garanticen un desembolso adecuado del erario para hacer sus compras y pagar sus obligaciones contractuales. 21 LPRA secs. 4355 y 4360. Respecto a sus contratos con el Municipio, Octagon evidenció que rindió sus servicios, sometió las facturas y gestionó su cobro, pero el Municipio no le pagó la totalidad de sus facturas. Incluso, según el presidente de Octagon, en sus gestiones de cobro con otros cuatro representantes de Cuentas por Pagar o Finanzas del Municipio, además de la señora Rebecca Rivera Torres, nunca se le indicó que sus facturas no estaban certificadas o aprobadas para pago, o que carecían de algún requerimiento para ordenar pago.[13]

En tercer lugar, según surge de la Declaración Jurada del presidente de Octagon, la representante autorizada del Municipio, Rebecca Rivera Torres, Directora o persona a cargo del Departamento de Planificación del Municipio, era la persona autorizada por el Alcalde para certificar y aprobar los trabajos y ordenar el pago de las facturas, y en efecto, fue ella, quien certificó, aprobó y ordenó el pago de las facturas de Octagon.[14]

Por último, la moción de sentencia sumaria del Municipio carece de anejos o declaración jurada alguna, que respaldaran su petitorio. Por el contrario, Octagon no sólo refutó la solicitud sumaria del Municipio, sino que proveyó una Declaración Jurada de su presidente y documentación que, aunque con el fin de oponerse a que se dictara sentencia sumaria a favor del Municipio, respaldaban la concesión de sentencia sumaria a favor de Octagon. Entiéndase que Octagon logró establecer que tenía derecho a cobrar una suma total de $87,940 por los servicios rendidos, facturados y aprobados, a favor del Municipio, en virtud y de conformidad con los Contratos de Servicios Profesionales pactados entre las partes entre septiembre de 2015 y noviembre de 2016. Por lo tanto, procede confirmar el dictamen sumario apelado.

**IV.**

En virtud de los enunciados fundamentos jurídicos, confirmamos la Sentencia Sumaria apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.

**\*12** Lcda. Lilia M. Oquendo Solís

Secretaria del Tribunal de Apelaciones

Footnotes

| | |
|---|---|
| 1 | Apéndice del recurso, págs. 53–64; Apéndice del alegato de Octagon, págs. 1–990. |
| 2 | Apéndice del recurso, págs. 42–48. |
| 3 | Apéndice del alegato de Octagon, págs. 1–990. |
| 4 | Id., págs. 991–1025. |
| 5 | Id., págs. 1009–1012. |
| 6 | Apéndice del recurso, págs. 7–23. |
| 7 | Véanse Determinaciones de Hechos 5, 11, 17, 23, 37, 43 y 49. |
| 8 | Véanse Determinaciones de Hechos 28–30. |
| 9 | Se trata de una factura de $6,500 por tasación realizada el 30 de septiembre de 2016, y dos facturas de $4,500 y $9,000, por tasaciones realizadas el 26 de septiembre de 2016; Apéndice del recurso, págs. 21–22. |
| 10 | Apéndice del recurso, págs. 21–23. |
| 11 | Id., págs. 20–21. |
| 12 | Id., págs. 1–6. |
| 13 | Apéndice del alegato de Ocatagon, pág. 1011. |
| 14 | Id., págs. 1009–1012. |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.