# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------- X
                                                                    :
In re:                                                              :
                                                                    :
                                                                    :
THE FINANCIAL OVERSIGHT AND                                         :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                   :  Title III
                                                                    :
       as representative of                                         :  Case No. 17-BK-3283 (LTS)
                                                                    :
THE COMMONWEALTH OF PUERTO RICO et al.,                             :  (Jointly Administered)
                                                                    :
       Debtors.¹                                                    :
------------------------------------------------------------------- X
                                                                    :
In re:                                                              :
                                                                    :
                                                                    :
THE FINANCIAL OVERSIGHT AND                                         :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                   :  Title III
                                                                    :
       as representative of                                         :  Case No. 17-BK-4780 (LTS)
                                                                    :
PUERTO RICO ELECTRIC POWER AUTHORITY,                               :  This filing relates only to
                                                                    :  Case No. 17-BK-4780 (LTS)
                                                                    :
       Debtor.                                                      :
------------------------------------------------------------------- X
```

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY IN SUPPORT OF
URGENT MOTION TO COMPEL DISCOVERY IN CONNECTION WITH MOTION
<u>TO TERMINATE BANKRUPTCY RULE 9019 MOTION</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

                                                                  **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

I. THE DISCOVERY REQUESTS ARE NOT PRECLUDED BY ANY PRIVILEGES.................................................................................................................. 3

      A. Many of the Requested Communications Are Likely Not Covered by the Attorney-Client Privilege or Work Product Doctrine............................................. 4

      B. Common Interest Privilege Will Not Apply to Communications Involving the Renegotiation of the RSA with Bondholders...................................................... 5

      C. Deliberative Process Privilege Does Not Apply to Communications Discussing the Status of the RSA Because Such Communications Are Directly at Issue ....................................................................................................... 7

      D. Government Parties Cannot Use Privileges as Both a Sword and a Shield........... 9

II. THE DISCOVERY REQUESTS ARE NOT DISPROPORTIONATE TO THE NEEDS OF THE DISPUTE ............................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adrian v. Mesirow Fin. Structured Settlements, LLC*,
 647 F. Supp. 2d 126 (D.P.R. 2009) ......................................................................................... 9

*Caparrós v. Lynch*,
 No. 3:15-cv-2229-JL, 2017 U.S. Dist. LEXIS 109041 (D.P.R. June 15, 2017) ........................ 7

*Carroll v. Wells Fargo & Co.*,
 No. 3:15-cv-02321-EMC (KAW), 2016 WL 8673482 (N.D. Cal. Dec. 9,
 2016) ...................................................................................................................................... 12

*Cavallaro v. United States*,
 284 F.3d 236 (1st. Cir. 2002) ................................................................................................ 4, 5

*Columbia Data Prods. v. Autonomy Corp. Ltd.*,
 No. 11-12077-NMG, 2012 U.S. Dist. LEXIS 175920 (D. Mass. Dec. 12,
 2012) ........................................................................................................................................ 4

*Ctr. for Biological Diversity v. United States EPA*,
 279 F. Supp. 3d 121 (D.D.C. 2017) ......................................................................................... 4

*Dahl v. Bain Capital Partners, LLC*,
 714 F. Supp. 2d 225 (D. Mass. 2010) ...................................................................................... 4

*F.D.I.C. v. Ogden Corp.*,
 202 F.3d 454 (1st Cir. 2000) .................................................................................................... 6

*Fairholme Funds, Inc. v. United States*,
 128 Fed. Cl. 410 (2016), *mandamus granted in part and denied in part, In re
 United States*, 678 F. App'x 981 (Fed. Cir. 2017) .................................................................. 7

*Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of New Hampshire*,
 838 F.2d 13 (1st Cir. 1988) ............................................................................................ 6, 9, 10

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*,
 213 F.R.D. 89 (D. Mass. 2002) ................................................................................................ 5

*Khoday v. Symantec Corp.*,
 No. 11–180, 2013 WL 12140484 (D. Minn. Sept. 24, 2013) .................................................. 6

*In re Lincoln Nat'l COI Litig.*,
 No. 16-cv-6605-GJP, No. 17-cv-2592-GJP, 2019 WL 7581176 (E.D. Pa. Dec.
 5, 2019) .................................................................................................................................. 12

# TABLE OF AUTHORITIES
(continued)

Page

*Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. United States*,
 946 F. Supp. 2d 1302 (M.D. Fla. 2013) .................................................................................. 10

*In re Pharm. Indus. Average Wholesale Price Litig.*,
 254 F.R.D. 35 (D. Mass. 2008) ................................................................................................ 7

*Sax v. Sax*,
 136 F.R.D. 542 (D. Mass 1991) ............................................................................................... 9

*Shell Oil Co. v. IRS*,
 772 F. Supp. 202 (D. Del. 1991) .............................................................................................. 9

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
 145 F.3d 1422 .......................................................................................................................... 7

*Texaco P.R., Inc. v. Dep't. of Consumer Affairs*,
 60 F.3d 867 (1st Cir. 1995) ...................................................................................................... 7

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991) ................................................................................................... 9

*United States v. Textron Inc. & Subsidiaries*,
 577 F.3d 21 (1st Cir. 2009) ...................................................................................................... 4

*Velazquez v. City of Chicopee*,
 226 F.R.D. 31 (D. Mass. 2004) ................................................................................................ 7

*Williams v. City of Boston*,
 213 F.R.D. 99 (D. Mass. 2003) ................................................................................................ 7

**Other Authorities**

*Oversight Board Certifies 2020 Fiscal Plan With Sharply Narrower Projected Surplus, Discusses Importance of Title III Exit*, Reorg Research Report, (May 27, 2020, 04:51 PM EDT),
 https://app.reorg.com/v3#/items/intel/1869?item_id=105646 ................................................ 11

To the Honorable United States Magistrate Judge Judith Gail Dein:

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby submits this reply in further support of its *Urgent Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* [Case No. 17-4780, Dkt. No. 2155] (the "Motion to Compel") and in response to the Government Parties'[3] opposition to the Motion to Compel [Case No. 17-4780, Dkt. No. 2164] (the "Opposition"). In support of this Reply, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Committee filed its Motion to Dismiss the RSA in an effort to move this case forward, not backward, after it has languished at the hands of the Government Parties for more than a year, since long before the COVID-19 pandemic began. Contrary to the Government Parties' contentions, the Committee has no desire to cause the Government Parties or anyone else to bear unnecessary fees or engage in wasteful discovery practices in responding to the Motion to Dismiss. For this reason, the Committee framed its discovery requests as narrowly as possible and offered repeatedly to meet and confer with the Government Parties to narrow its discovery even further and help alleviate any burdens associated with it. Instead of engaging in these discussions, however, the Government Parties flatly refused to produce any documents or provide any depositions. Based on the arguments they assert in their Opposition, the Government Parties apparently believe they need not provide any discovery, or even participate in a meaningful meet and confer process, because they are confident the Court will deny the Motion to Dismiss. But the Committee is entitled to discovery to support its position regardless

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion to Compel.

of what the Government Parties think of the merits of the Motion to Dismiss. The Committee, therefore, had no choice but to file the Motion to Compel.

2. Stripped of its rhetoric, the Government Parties' Opposition ultimately asserts that the discovery should not be permitted because: (i) it seeks primarily privileged communications, and (ii) it is disproportionate to the needs of the dispute. Neither argument has merit.

3. First, much of the requested information is likely not privileged. There can be no attorney-client privilege or work product protection over communications between non-lawyers regarding the Government Parties' views as to the continuing viability of the RSA, which is wholly separate from any litigation strategy relating to the 9019 Motion. Similarly, the common interest doctrine applies only to communications that are otherwise privileged and does not attach until the parties have reached a definitive agreement; therefore, no common interest can apply to any renegotiations of the RSA by the Government Parties and the bondholders before they arrive at a new deal. The deliberative process privilege is also inapplicable where, as here, the government's deliberations are squarely at issue in the dispute. In its August 2, 2019 Order, the Court already instructed the Government Parties to produce communications relating to their original consideration of the RSA on this basis.

4. In addition, allowing the Government Parties to assert privileges over their communications under the circumstances of this dispute—where they have placed the alleged non-existence of such communications at issue by arguing that there have been *no* such discussions or negotiations revealing the effective termination of the RSA—would allow them to use the privileges as both a sword and a shield. The law prevents this. The Government Parties cannot refuse to provide discovery on a topic on privilege grounds and then introduce evidence on that same topic to support their position in the dispute.

2

5. <u>Second</u>, the Government Parties have not met their burden to show that the requested discovery is disproportionate to the needs of the dispute, either on the grounds that it is not relevant or that it would be burdensome to provide. In arguing that the discovery is not relevant, the Government Parties essentially tell the Court *it should assume that the factual dispute at issue—i.e., whether or not the Government Parties have decided to terminate or renegotiate the RSA—has already been resolved in their favor.* In other words, they are saying to the Court, "we are going to win, so don't bother with discovery." But this is not how discovery works. Indeed, the entire purpose of the discovery here is to permit the Committee to challenge the Government Parties' assertions concerning the status of the RSA.

6. The Government Parties have also failed to show how the discovery would be burdensome. The Committee's discovery was extremely narrow as drafted and has been limited further in the Motion to Compel. The Committee now seeks documents from only four custodians on one topic over a four-month time period and two limited depositions. The Government Parties have not provided any information as to how many documents they would need to review to respond to this request or any other details regarding the search and collection process. They are therefore unable to meet their burden.

7. The Court should order the Government Parties to respond to the Committee's discovery after meeting and conferring on the document collection process and agreeing upon a mutually convenient time for the requested depositions.

## **REPLY**

**I. THE DISCOVERY REQUESTS ARE NOT PRECLUDED BY ANY PRIVILEGES**

8. The Government Parties contend that the documents the Committee seeks would be covered by the attorney-client and work product privileges, the common interest doctrine, and the deliberative process privilege. While it is possible that some documents could be covered by

3

one or more of these privileges, much of them would not be. The Government Parties impermissibly expand the breadth of these privileges in arguing otherwise.

      A.      <u>Many of the Requested Communications Are Likely Not Covered by the Attorney-Client Privilege or Work Product Doctrine</u>

9.      "For a communication to be covered by the attorney-client privilege, the communication must be made in confidence" and "not be waived." *Cavallaro v. United States*, 284 F.3d 236, 246 (1st. Cir. 2002) (citations omitted). The party seeking to assert the privilege must demonstrate that the documents or communications at issue were made "for the purpose of rendering legal advice, **rather than business advice**." *Dahl v. Bain Capital Partners*, *LLC*, 714 F. Supp. 2d 225, 228 (D. Mass. 2010) (emphasis added). "That a document was shared with or by an attorney does not magically render a communication privileged." *Ctr. for Biological Diversity v. United States EPA*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017).

10.     As for the work product doctrine, this Court has recognized that the doctrine's application in the First Circuit is "narrow." Suppl. Order on Mots. to Compel, at 6 [Case No. 17-3566, Dkt. No. 509,] (citing *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009)). "It is not enough to trigger work product protection that the **subject matter** of a document relates to a subject that might conceivably be litigated . . . . Nor is it enough that the materials were prepared by lawyers or represent legal thinking." *Textron*, 577 F.3d at 29 (emphasis in original). Instead, the documents in question must have been "prepared for use in litigation, whether the litigation was underway or merely anticipated." *Columbia Data Prods. v. Autonomy Corp. Ltd.*, No. 11-12077-NMG, 2012 U.S. Dist. LEXIS 175920, at *35 (D. Mass. Dec. 12, 2012) (quoting *Textron*, 577 F.3d at 29).

11.     In contending that documents the Committee seeks are likely to be covered by the attorney-client privilege or work product doctrine, the Government Parties conflate their

4

litigation strategy regarding the 9019 Motion with their views concerning the ongoing viability of the RSA and whether or not it needs to be renegotiated. Only documents relating specifically to the former—*i.e.*, litigation strategy—would be work product. Documents discussing the status of the RSA or its renegotiation would not be work product and would not be covered by the attorney-client privilege, either, unless they involve a request for legal advice from counsel.

12. The Government Parties assert, without any support, that, "to the extent there have been communications regarding evaluation of the RSA, the documents the UCC demands are overwhelmingly likely to consist of attorney-client communications or communications reflecting legal advice." Opp'n ¶ 17. But history has shown this is not correct. In connection with its earlier discovery into the negotiation and evaluation of the current RSA, the Committee received large amounts of communications by and among non-lawyers, including communications between individual members of the Oversight Board expressing their views, including in text messages, concerning the proposed settlement with the bondholders. Similar communications likely exist regarding the ongoing viability of the deal and its potential renegotiation. These communications are subject to production.

    B.    <u>Common Interest Privilege Will Not Apply to Communications Involving the Renegotiation of the RSA with Bondholders</u>

13. The common interest doctrine is "not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Cavallaro*, 284 F.3d at 250. In the First Circuit, "the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (Dien, M.J.) (quoting *United States v. Bay State Ambulance and Hosp. Rental Serv.*

5

*Inc.*, 874 F.2d 20, 28 (1st Cir. 1989)). In the First Circuit, 'common interest' is narrowly defined as an "***identical (or nearly identical) legal interest*** as opposed to a merely similar interest." *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000) (emphasis added). The common interest doctrine does not extend to parties sharing only business or commercial interests. *See id.*

14. Although the common interest doctrine can apply to communications between the parties to a negotiated agreement, it does not attach to such communications until the parties have reached an agreement and ceased negotiations. *Khoday v. Symantec Corp.*, No. 11–180 (JRT/TNL), 2013 WL 12140484, at *3 (D. Minn. Sept. 24, 2013) ("[T]he common interest doctrine preserves the privilege for parties working towards a common purpose who seek guidance from counsel, rather than for parties negotiating at arms-length who disclose privileged documents to one another in the course of the negotiations."). For this reason, as the Government Parties concede, the Court previously "required [them] to produce communications consisting of their arm's-length negotiations [with the bondholders] before they reached an agreement and a common interest attached." Opp. ¶ 17.

15. Here, the Committee seeks documents concerning whether or not the Government Parties have decided that the RSA is no longer viable and must be renegotiated. Such documents may consist of communications between the Government Parties and the bondholders showing that such renegotiations have already commenced. These communications, if they exist, would not be protected by the common interest doctrine to the extent they reflect arms' length renegotiations of a potential new deal and reveal that the previous deal—over which the parties had a common interest—no longer exists. The earliest date a ***new*** common interest could attach to these communications is the date on which the Government Parties and the bondholders actually settle on the material terms of a revised RSA.

6

      C.    <u>Deliberative Process Privilege Does Not Apply to Communications Discussing the Status of the RSA Because Such Communications Are Directly at Issue</u>

16.    The deliberative process privilege "shields from public disclosure confidential inter-agency memoranda on matters of law of policy." *Texaco P.R., Inc. v. Dep't. of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995). In analyzing whether the deliberative process privilege should be applied, courts consider that the "evidentiary system demands a restrictive interpretation when determining the existence of a privilege." *Bhatia Gautier v. Rossellío Nevares,* 199 D.P.R. 59, 89 (2017).

17.    Importantly, as the D.C. Circuit has observed, "[t]he [deliberative process] privilege was fashioned in cases where the governmental decisionmaking process is ***collateral to the plaintiff's suit***." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424, *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) (emphasis added). Where, however, "'the decision-making process itself is the subject of the litigation,' it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information." *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004); *see also Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) (same) (*citing Burka v. NYC Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986)).[4] Based on this rule, the Court previously ordered the Government Parties to produce communications related to their initial decision to enter into the RSA in 2019. *See* August 2, 2019 Order ¶ 7.

---

[4]    *See also Caparrós v. Lynch*, No. 3:15-cv-2229-JL, 2017 U.S. Dist. LEXIS 109041, at *25 (D.P.R. June 15, 2017) (ordering production of documents that, although at least arguably deliberative, "shed light on the defendant's intent, an issue squarely implicated by the plaintiff's retaliation claim" and thus were not protected by the deliberative process privilege); *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 41-2 (D. Mass. 2008) (notwithstanding claim of deliberative process privilege, holding that defendants had "the right during discovery to see documents reflecting the government's knowledge" where "[g]overnment knowledge could conceivably be relevant to two elements" of the claim at issue); *Fairholme Funds, Inc. v. United States*, 128 Fed. Cl. 410 (2016), *mandamus granted in part and denied in part, In re United States*, 678 F. App'x 981 (Fed. Cir. 2017) (ordering disclosure of government materials when such materials implicate the merits of the case).

7

18. The Government Parties now seek to rewrite history, contending that the Court's prior order required them to produce only external communications with the bondholders regarding the negotiation of the RSA. This is demonstrably untrue. The Court specifically held that the *only* communications the Government Parties could withhold pursuant to the deliberative process privilege were communications relating to (i) the fiscal plan and/or (ii) the demand protection term sheet. All other communications—*including internal communications relating to the government's evaluation of the RSA*—were subject to production. Indeed, the Government Parties themselves admitted as much in their briefing leading up to the August 2019 Order, stating that "the Oversight Board has produced extensive documents regarding the RSA negotiating process*, including materials submitted to the Oversight Board by its advisors in connection with the Board's decision making process*." J. Resp. to Renewed Mot. to Compel, ¶ 51 [Case No. 17-4780, Dkt. No. 1500] (emphasis added); *see also* July 30, 2020 Hr'g Tr. at 73:18-19 ("*We have not been asserting the deliberative process privilege over the decision to enter into the RSA at all*.") (emphasis added).

19. In accordance with the Court's order, the Oversight Board produced extensive amounts of internal communications from the files of the Oversight Board, PREPA, and their advisors revealing their original deliberations regarding the merits of the RSA. To the extent members of the Oversight Board, PREPA management, and/or their advisors have recently had similar communications concerning their ongoing evaluation of the RSA and/or its renegotiation with the bondholders, the Committee is again entitled to them in discovery. This is because the subject matter of the communications is directly at issue in the Motion to Dismiss, and thus the deliberative process privilege cannot shield them from disclosure.

20. Finally, the deliberative process privilege would not apply to any documents shared with outside parties. "If the prior disclosure is voluntary and is made to a third party, the deliberative process privilege is waived, even where the third party had promised not to disclose the information further." *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 207 (D. Del. 1991). Thus, if the Government Parties shared documents otherwise covered by the deliberative process privilege with the bondholders, those documents would lose their privilege.

D. <u>Government Parties Cannot Use Privileges as Both a Sword and a Shield</u>

21. In the First Circuit, the law is clear that an otherwise applicable privilege is waived if a party affirmatively makes arguments that place material facts at issue. *See Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of New Hampshire*, 838 F.2d 13, 20 (1st Cir. 1988) (holding that "the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails"). Put differently, principles of "fairness require[] that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend." *Id*. The reason for this rule is that the privilege "was intended as a shield, not a sword." *Sax v. Sax*, 136 F.R.D. 542, 543, (D. Mass 1991); accord *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Parties cannot "invoke[e] the attorney-client privilege" to suppress "the best, and perhaps only" evidence that their opponent may use to support their case. *Adrian v. Mesirow Fin. Structured Settlements, LLC*, 647 F. Supp. 2d 126, 131 (D.P.R. 2009).

22. In their July 31, 2020 Status Report to the Court and in response to the Motion to Dismiss, the Government Parties assert that they have not decided to terminate the RSA or developed a position on whether or not it needs to be renegotiated. ***By making this argument, the Government Parties have placed directly at issue the very communications they now seek***

9

*to withhold as privileged. The Government Parties cannot have it both ways: they cannot present evidence on an issue while simultaneously preventing the Committee from taking discovery on the issue.* Greater Newburyport, 838 F.2d at 20.

23. Importantly, all of the statements the Government Parties have made to date regarding the current status of the RSA are not "evidence" but rather merely statements of counsel in pleadings filed with the Court. If the Government Parties do not fulfill their discovery obligations to the Committee, they should be precluded from later offering evidence in response to the Motion to Dismiss to substantiate the statements they have made in their pleadings. *See Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. United States*, 946 F. Supp. 2d 1302, 1317 (M.D. Fla. 2013) ("When an abuse has occurred under th[e] [sword and shield] doctrine, courts may invoke a variety of sanctions, including . . . precluding the introduction of evidence previously withheld on privilege grounds . . . or ordering that the party's failure to produce the evidence gives rise to the presumption that the evidence is unfavorable.") (internal citations omitted).

## II. THE DISCOVERY REQUESTS ARE NOT DISPROPORTIONATE TO THE NEEDS OF THE DISPUTE

24. In arguing that the requested discovery is not proportional to the needs of the dispute, the Government Parties argue both that the discovery is not relevant and it would impose unreasonable costs and burdens on the Government Parties. Neither argument is persuasive.

25. The discovery is plainly relevant to the Committee's argument in the Motion to Dismiss that the Government Parties have determined that the RSA is no longer viable and must be renegotiated. The Government Parties contend that, because they have not issued a notice of termination of the RSA, the discovery the Committee seeks is not relevant. But this is not the Committee's argument. Rather, the Committee's position is that, regardless of whether the

10

Government Parties say they have technically terminated the RSA, they have already decided that the deal is no longer viable in the current economic client and that it must be renegotiated. Therefore, the 9019 Motion should be dismissed.

26. The Government Parties erroneously characterize the Committee's search for communications in discovery to substantiate this position as akin to a "fishing expedition." Opp. at 3. Not so. The Committee has more than a good faith basis to believe that the types of communications it seeks in fact exist given the public statements of Natalie Jaresko, Jose Ortiz, and other PREPA personnel regarding their views of the RSA. If the Committee is fishing, these statements show the Committee precisely where to cast its line.[5]

27. The other side of the proportionality inquiry is whether the discovery would be burdensome on the producing party. Here, the Government Parties have no argument. The Committee's requests are limited to a single request to PREPA and the Oversight Board on one topic, and the Committee has agreed to limit the date range from June 1, 2020 to the present. Moreover, the Committee is willing to further meet and confer with the Government Parties to discuss search terms and other parameters. The Committee has also agreed to limit its request for depositions to only two fact witness depositions of three hours each, taking place remotely.

28. The Government Parties have not even attempted to demonstrate with reference to any specific facts how they would be burdened by such limited discovery, nor could they. Although they contend that the apex doctrine precludes a deposition of Mr. Ortiz, their argument is unpersuasive given that Mr. Ortiz possesses unique, non-repetitive knowledge—as

---

[5] In addition to the statements it cited in the Motion to Dismiss, Oversight Board member David Skeel is also likely to have expressed views on the current status of the RSA given his propensity to do so in the past and in connection with other aspects of these title III cases. *See, e.g.*, *Oversight Board Certifies 2020 Fiscal Plan With Sharply Narrower Projected Surplus, Discusses Importance of Title III Exit*, Reorg Research, (May 27, 2020, 04:51 PM EDT), https://app.reorg.com/v3#/items/intel/1869?item_id=105646 (quoting Skeel as describing the plan support agreement in the Commonwealth's title III case as providing the "framework" for a new, confirmable plan of adjustment).

11

demonstrated by the numerous statements he has made concerning the status of the RSA[6]—and is no longer employed by PREPA. *See Carroll v. Wells Fargo & Co.*, No. 3:15-cv-02321-EMC (KAW), 2016 WL 8673482, at *3 (N.D. Cal. Dec. 9, 2016) (ordering deposition of former executive where "depositions of other employees would not necessary overlap with her personal knowledge"). If it turns out that Mr. Ortiz, despite his public statements, does not have much personal knowledge, "the deposition will, presumably, be short." *Id.*

29. In sum, the Government Parties have failed to satisfy their burden of demonstrating that the Committee's discovery is not proportional to the needs of the dispute.

[Remainder of page intentionally left blank]

---

[6] Courts may apply the apex doctrine to preclude depositions where "the matters in dispute in the litigation can be said to be so obviously trivial or far off (or beneath) the radar-screen of a high-ranking executive." *In re Lincoln Nat'l COI Litig.*, No. 16-cv-6605-GJP, No. 17-cv-2592-GJP, 2019 WL 7581176, at *3 (E.D. Pa. Dec. 5, 2019) (noting that, in such cases, "it may reasonably be inferred that such a deposition is sought for purposes of harassment or is otherwise sought in bad faith, and may thus be disallowed on that basis"). Plainly, this is not such a case. The information the Committee seeks to discover falls squarely within his realm of responsibility and involves topics that were plainly on his "radar-screen" at all relevant times, given his public comments.

12

WHEREFORE, the Committee respectfully requests that this Court enter an order granting the relief requested in the Motion to Compel, and granting the Committee such other relief as this Court deems just and proper.

Dated: September 3, 2020

/s/ Luc A. Despins            .
PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (except COFINA and PBA)* [7]

- and -

/s/ John Arrastia
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (except COFINA and PBA) with Respect to Claims against Citi*

---

[7] Paul Hastings LLP does not represent the Committee with respect to any statements in this Motion regarding Citigroup Global Markets, Inc.

13

- and -

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (except COFINA and PBA)*