UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ X
                                                                         :
In re:                                                                   :
                                                                         :
                                                                         :
THE FINANCIAL OVERSIGHT AND                                              :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                        :   Title III
                                                                         :
        as representative of                                             :   Case No. 17-BK-3283 (LTS)
                                                                         :
THE COMMONWEALTH OF PUERTO RICO et al.,                                  :   (Jointly Administered)
                                                                         :
        Debtors.¹                                                        :
                                                                         :
------------------------------------------------------------------------ X
                                                                         :
In re:                                                                   :
                                                                         :
                                                                         :
THE FINANCIAL OVERSIGHT AND                                              :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                        :   Title III
                                                                         :
        as representative of                                             :   Case No. 17-BK-4780 (LTS)
                                                                         :
PUERTO RICO ELECTRIC POWER AUTHORITY                                     :
                                                                         :
        Debtor.                                                          :
------------------------------------------------------------------------ X
```

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
REPLY IN SUPPORT OF
<u>MOTION TO TERMINATE RULE 9019 MOTION</u>**

---

¹ The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

                                          **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 4

    I.     Notional Pendency of RSA Does Not Supply Subject Matter Jurisdiction Where RSA Is Effectively Defunct ........................................................................ 4

    II.    The Court Should Exercise Its Discretion To Terminate Rule 9019 Motion ........ 6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Fn. Oversight & Mgmt. Bd. for Puerto Rico*,
    335 F. Supp. 3d 256 (D.P.R. 2018) ..................................................................................... 8

*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997) ............................................................................................................ 4

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................................... 2, 4, 5

**Statutes**

11 U.S.C. §102(1)(A) .................................................................................................................. 7

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[1] respectfully submits this reply (the "Reply") in support of its *Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [Docket No. 2144 in Case No. 17-4780] (the "Motion to Terminate") for entry of an order terminating the Rule 9019 Motion for lack of subject matter jurisdiction or, alternatively, in the exercise of the Court's discretion to permit the Committee to pursue its objection to the PREPA bondholders' claims under section 502 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

1. The Government Parties filed their Rule 9019 Motion over 15 months ago—on May 10, 2019—and immediately sought an expedited hearing. Since then, the Government Parties have sought as many as 14 adjournments of that hearing. While the Government Parties now profess that their continuing delay is mainly due to the ongoing COVID-19 health crisis, they requested 11 of those adjournments before the pandemic began. Even now, the Government Parties will not commit to moving forward with their Rule 9019 Motion at any specific time. Instead, they merely promise to "report[] to the Court" "[i]n the event of any near term developments" at some future date—either "in the required September 25, 2020 status report, *or thereafter*."[2] Bankruptcy Rule 9019 was not designed to permit the Government Parties to stall indefinitely, though repeated seriatim adjournments, the consideration of the Committee's statutory rights to object to a proposed unfair claim settlement. The Committee does not seek—as the Government Parties contend—to "displace the Oversight Board's exclusive right to

---

[1] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[2] *Joint Objection of PREPA and AAFAF to Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion*, ¶ 19 (emphasis added) [Docket No. 2165 in Case No. 17-4780] (the "Response").

propose a plan of adjustment" under section 312(a) of PROMESA.[3] The Oversight Board has not filed a plan of adjustment, and the Committee does not seek to file its own. Rather, the Committee seeks merely to prevent the Government Parties from abusing the Bankruptcy Rule 9019 process and circumventing this Court's oversight authority.

2. The Government Parties' sole response to the Committee's jurisdictional argument is that, as long as the RSA has not been formally terminated, the Court may not inquire into whether it remains viable to assure itself that the controversy remains live.[4] That is simply not the law. This Court has an independent obligation to ensure it retains subject matter jurisdiction, and if the proposed RSA "remain[s] viable" no longer, there is no "injury … of sufficient immediacy and ripeness to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 516-17 (1975). Moreover, the RSA, as a private contract between the Government Parties and the bondholders, cannot confer subject matter jurisdiction on this Court. Only the Rule 9019 Motion, which is a request for a legal relief from the Court, can do that. Regardless of the formal status of the RSA under its own contractual terms, there is no longer a live case or controversy with respect to Rule 9019 Motion. The Government Parties' suggestion would not only effect an end-run around this Court's authority, but would also encourage abuse by incentivizing debtors to enter into "settlements" with creditors—which they decide later not to pursue but not officially "abandon," either—for the purpose of obtaining exclusive control over the claim allowance process notwithstanding section 502 of the Bankruptcy Code.

3. The Government Parties' challenge to this Court's discretionary authority to terminate the Rule 9019 Motion is without merit. The Government Parties contend that the Court may not terminate the motion until it holds a hearing on the motion, as required by

---

[3] Resp. ¶ 1.
[4] *See* Resp. ¶ 11.

2

Bankruptcy Rule 9019.[5] But—even if that were a requirement (which it is not)—the Government Parties' refusal to proceed to a hearing waives that right. And the Government Parties concede that this Court has authority to terminate the Rule 9019 Motion under the Bankruptcy Rules.[6] In any event, the Court has inherent authority to manage its proceedings.

4. As the Committee demonstrated, exercising this authority is warranted here. The pending Rule 9019 Motion—which no longer reflects any viable settlement agreement—prevents the Committee from pursuing its statutory rights under section 502 of the Bankruptcy Code to object to the PREPA bondholders' asserted claims. The original rationale for this Court's decision to defer the consideration of the Committee's claim objection—namely, the upcoming resolution of the Rule 9019 Motion to approve a settlement with the bondholders—no longer exists and has not existed for a long time. Thus, there is no longer any valid basis to prevent the Committee from pursuing its viable claim objections.

5. Contrary to the Government Parties' contention, the delay in prosecuting the Rule 9019 Motion prejudices the Committee by preventing it from exercising its statutory rights and moving PREPA's title III case forward for the benefit of unsecured creditors, who have been waiting years for a resolution of their claims and of the competing claims of the PREPA bondholders. Conversely, there is no prejudice to the Government Parties. The termination of the Rule 9019 Motion would not result in a "los[s]" of any "settlement framework" for the RSA that may still exist.[7] On the contrary, it could motivate the RSA parties to negotiate a new, viable, settlement expeditiously and to submit it to this Court for approval, thereby furthering judicial efficiency.

---

[5] Resp. ¶ 14.
[6] Resp. ¶¶ 14-15 & 6 n.11.
[7] *See* Resp. ¶ 23.

3

## ARGUMENT

### I. Notional Pendency of RSA Does Not Supply Subject Matter Jurisdiction Where RSA Is Effectively Defunct

6. PREPA's (now former) Executive Director has stated publicly that the RSA "certainly has to be renegotiated," and that the PREPA leaders "don't see an RSA being agreed on until next year."[8] And the Executive Director of the Oversight Board refused to vouch that the RSA "is feasible today," indicating instead that the Oversight Board is "still evaluating" its feasibility.[9] An agreement that is being "renegotiated," and where its signatories are "still evaluating" its feasibility, is not a viable agreement.[10]

7. The Government Parties do not contest those statements (nor could they), nor do they contend that the RSA is viable in its current form. Instead, they claim that, because the RSA has not been formally terminated, the Court may not "reach its own conclusions of the viability of the current RSA."[11] The Supreme Court has resolutely rejected similar attempts to invoke "an empty formalism" in an effort to undermine jurisdictional limitations on federal courts' authority. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) (refusing to permit action to proceed against state officer where it would "undermine the principle" of Constitutional limitations). As the Supreme Court held in *Warth v. Seldin*, where a proposed project no longer "remained viable," the federal court lacked jurisdiction because there was no "injury … of sufficient immediacy and ripeness to warrant judicial intervention." 422 U.S. at 516-17; *see also* Mot. ¶ 21. The focus of the jurisdictional inquiry is on whether there "remain[s] a live, concrete dispute," irrespective of how "vigorous it may once have been."

---

[8] Mot. to Terminate, Ex. B; *see also* Mot. ¶ 3.
[9] Mot. to Terminate, Ex. C; *see also* Mot. ¶ 17.
[10] *See* Mot. to Terminate ¶¶ 16-21.
[11] Resp. ¶ 11.

4

*Warth*, 422 U.S. at 517. The fact that an application or agreement formally remains pending even though it is no longer actively pursued by the parties does not displace that inquiry.

8. The Government Parties' argument also conflates the RSA (a private contract between themselves and the bondholders) and the Rule 9019 Motion (a request for legal relief from this Court). The fact that the RSA notionally remains in place in accordance with its terms does not (and cannot) confer subject matter jurisdiction on the Court; there must exist a live case and controversy with respect to the Rule 9019 Motion. Given that the Government Parties are no longer pursuing the approval of the RSA in its current form, there is no longer an active case or controversy that could supply the Court with subject matter jurisdiction—regardless of the formal status of the RSA as a private contract.

9. The Government Parties contend that the statements by PREPA leadership (and by the Oversight Board's own Executive Director) "do not alter the reality that the RSA remains in full effect in its current form."[12] That claim is refuted by the statements themselves: PREPA's leaders said that the RSA "***certainly has to be renegotiated***," and that they "don't see an RSA being agreed on until next year."[13] The RSA is not like a ratified contract that is being actively performed, and which remains binding unless renegotiated. The RSA depends on the parties' willingness to seek, and secure, the Court's approval for its implementation. Where the RSA's signatories have walked away from it, and would not even guarantee its feasibility, the existing agreement is effectively a dead letter. And even if the RSA itself remains notionally on

---

[12] Resp. ¶ 12.
[13] Mot. to Terminate, Ex. B (emphasis added). The Committee has also sought discovery from the Government Parties to obtain additional evidence—including, for example, admissions in board emails and other official correspondence—that the RSA is no longer viable, but it has thus far been denied that discovery. *See Order on Mot. to Compel* [Docket No. 2177 in Case No. 17-4780]. The Committee intends to object to Magistrate Judge Dein's discovery ruling on an urgent basis to have the objection heard concurrently with the Motion to Terminate.

5

the books, the fact that the parties have effectively abandoned that agreement in its current form means there is no longer any live controversy with respect to the pending Rule 9019 Motion.[14]

10. Notably, the Government Parties do not represent that they are prepared to move forward with seeking the Court's approval for the Rule 9019 Motion. Nor do they provide any concrete timeline for seeking such approval. Instead, the Government Parties only promise to "report[] to the Court" "[i]n the event of any near term developments" at some future date— either "in the required September 25, 2020 status report, *or thereafter*."[15] The Government Parties' admission that their decision whether (and when) to finally present the Rule 9019 Motion for the Court's approval depends on some unknown future developments is effectively a concession that there is no current, live controversy underlying the motion.

11. Bankruptcy Rule 9019 was not designed to permit the Government Parties to stall the approval proceedings indefinitely, nor to evade the jurisdictional requirements of mootness and ripeness. The Court should terminate the Rule 9019 Motion for lack of subject matter jurisdiction.

## II. The Court Should Exercise Its Discretion To Terminate Rule 9019 Motion

12. Even if the Court determines that it has subject matter jurisdiction over the Rule 9019 Motion, it should exercise its discretion and terminate the Rule 9019 Motion. The Rule 9019 Motion has now been pending for over 15 months, and judicial efficiency will be well served by not holding PREPA's title III case in indefinite limbo for an RSA that no longer

---

[14] The Government Parties argue that, "[b]y way of analogy, plan processes move forward all the time even though plans subsequently get amended" and point out that "the RSA itself has already been amended while the [Rule] 9019 Motion was pending." *See* Resp. ¶ 12. These arguments are non-sequiturs, because the RSA has now been abandoned, not amended, and there is no "actual case or controversy" (Resp. ¶ 13) with respect to an agreement that has been abandoned in substance. Although plans do often get amended in bankruptcy, the idea that a plan that has been effectively terminated would remain pending for several months while renegotiations occur is a novel one. If and when the RSA has been renegotiated and amended, the Government Parties can, of course, renew their Rule 9019 Motion and "move forward with its approval." Until then, it must be dismissed.
[15] Resp. ¶ 19 (emphasis added).

6

remains viable in its current form. It is long past time for this case to move forward and to finally put an end the prejudice that PREPA's unsecured creditors—who have been waiting to for years to determine where their claims stand relative to the bondholders'—are suffering as a result of the Government Parties' continuing delays.

13. The Government Parties first challenge this Court's authority to terminate the Rule 9019 Motion. This argument is misplaced. The Government Parties contend that, because Bankruptcy Rule 9019 requires "notice and a hearing," the Court may not terminate the motion until it holds the hearing.[16] The Bankruptcy Code clarifies, however, that "notice and a hearing" only requires an "opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. §102(1)(A). In any event, Bankruptcy Rule 9019 cannot supplant the jurisdictional requirements of Article III or the Constitution. If there is no longer an actual controversy with respect to the Rule 9019 Motion, the Court must dismiss it. Moreover, the Government Parties have effectively waived any right to a hearing on the Rule 9019 Motion by refusing to proceed to it for well over a year. The Government Parties cannot have it both ways.

14. The Government Parties also concede that this Court has authority to terminate the Rule 9019 Motion under Bankruptcy Rule and 7012 and otherwise.[17] They argue that application of Bankruptcy Rule 7012 is unwarranted because it would not advance the "'just, speedy, and inexpensive determination'" of this case.[18] That is incorrect. The case has now been pending for more than three years. The resolution of the Committee's claim objection—which is currently prevented by the Rule 9019 Motion—will finally facilitate progress by determining the nature and extent of the bondholders' claims, including whether or not they are

---

[16] *Id.* ¶ 14.
[17] Resp. ¶¶ 14-15 & 6 n.11.
[18] *Id.* ¶ 15 (quoting Fed. R. Bankr. P. 1001); *see also id.* ¶ 16.

7

secured by meaningful collateral and are non-recourse.[19] Once these key questions have been answered, and PREPA can finally determine whether or not *any* rate increase (much less the rate increase contemplated by the RSA) is necessary, this case should be easy to resolve. In addition, the Court would be within its authority to terminate the Government Parties' motion under Bankruptcy Rules 7041 and 9014(c) for failure to prosecute, as discussed in the Fuel Line Lenders' joinder to the Motion to Terminate.[20] The Government Parties' filing of seriatim status reports (which do not provide any concrete information as to when they expect to seek approval of the Rule 9019 Motion) is not the same as diligently pursuing such approval.[21]

15. This Court should exercise its authority to terminate the Rule 9019 Motion in order to avoid further prejudice to the Committee's statutory rights and to avoid holding PREPA's bankruptcy case in indefinite limbo to the detriment of its unsecured creditors. As the Committee explained, the pending Rule 9019 Motion prevents the Committee from pursuing its statutory rights under section 502 of the Bankruptcy Code to object to the bondholders' claims.[22] This Court originally terminated the Committee's claim objection (without prejudice) deeming it more efficient to consider the Rule 9019 Motion first. Given the Government Parties' continuing deferral of the hearing on their Rule 9019 Motion, that rationale no longer applies, and the continuing delay effectively denies the Committee's objection without a hearing on the merits, in violation of its statutory rights under section 502 of the Bankruptcy Code.[23] Meanwhile,

---

[19] *See* Mot. to Terminate ¶¶ 6, 23-29.
[20] *See Statement of Fuel Line Lenders with Respect to Motion to Terminate Rule 9019 Motion* [Docket No. 2161 in Case No. 17-4780].
[21] In any event, as the Government Parties concede (Resp. ¶ 16 & 7 n.13), the Court has inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *In re Fn. Oversight & Mgmt. Bd. for Puerto Rico*, 335 F. Supp. 3d 256, 262 (D.P.R. 2018) (internal quotation marks and citation omitted).
[22] *See* Mot. to Terminate ¶¶ 22-31.
[23] Contrary to the Government Parties, the Committee does not attempt to "end-run the pending appeal of the Court's order terminating the [Committee's] claim objection." Resp. ¶ 2. The Committee's pending appeal deals with a different issue—namely, whether this Court properly determined, in the first instance, that the Oversight

8

PREPA's unsecured creditors, including local on-island vendors who did business with PREPA for years prepetition, are left holding the bag.

16. The Government Parties' main response is that they "have no intention of adjourning the [Rule] 9019 Motion indefinitely."[24] But this statement is meaningless, as an adjournment of another year or two years is, in theory, not "indefinite." In any event, the Government Parties elevate form over substance. Their seriatim adjournment requests—which report no discernable progress with respect to the RSA negotiations, provide no timeline as to when these negotiations could conclude, and contain no detail as to when the Government Parties could seek Court approval of their Rule 9019 Motion—effectively defer that motion indefinitely. A deprivation of a statutory right done piecemeal—as opposed to all at once—is still a violation of that right. The Government Parties' claim that the Committee "suffers no prejudice from continued adjournment" because the Government Parties are pushing off the hearing on the Rule 9019 Motion only a few months' at a time rings hollow.[25]

17. The Government Parties also resurrect their prior arguments that the Committee will "not have standing to prosecute its Claim Objection even if the [Rule] 9019 Motion is terminated."[26] The Committee has already demonstrated why those arguments are erroneous, and this Court did not decide the issue, having terminated the Committee's claim objection

---

Board can deprive the Committee of its claim objection rights through a non-consensual settlement. The Committee's appeal does not address whether this Court continues to have jurisdiction over the 9019 Motion even though a settlement no longer exists. In any event, the Committee has agreed to stay its appeal pending this Court's resolution of the 9019 Motion at the time when the hearing on the 9019 Motion was expected to take place in June 2020. *See* Mot. to Terminate, at 12 n.27. The Government Parties' continuing delay of that hearing further prejudices the Committee because it delays the consideration and resolution of that appeal.

[24] Resp. ¶ 19.
[25] *Id.* ¶ 20.
[26] *Id.* ¶ 21 & 10 n.16.

9

pending consideration of the Rule 9019 Motion.[27] The Government Parties' belief in the correctness of their position (which this Court is yet to address) is not a reason to discount the prejudice to the Committee from the delayed resolution of its claim objection.[28]

18. Conversely, there is no prejudice to the Government Parties (or the debtors). Contrary to the Government Parties' claim, the termination of the Rule 9019 Motion would not result in a "los[s]" of any "settlement framework" for the RSA that may still exist.[29] By contrast, it could motivate the RSA parties to negotiate a new, viable, settlement expeditiously and then submit it to this Court for approval, thereby furthering judicial efficiency. As the Committee already explained, it is clear now, 15 months after the Rule 9019 Motion was filed, that the parties do not feel any great urgency or pressure to settle.[30] In these circumstances, the Committee's claim objection could very well result in increased settlement negotiations.[31]

19. Nor does the Committee seek—as the Government Parties contend—to "displace the Oversight Board's exclusive right to propose a plan of adjustment" under section 312(a) of PROMESA.[32] The Oversight Board has not filed a plan of adjustment for PREPA, and the Committee is not seeking permission to file its own, nor could it. The Committee wishes only to exercise its statutory right under section 502 of the Bankruptcy Code to object to the bondholders' claims. Section 312(a) of PROMESA does not override the Committee's rights under section 502, which is also incorporated into PROMESA. Allowing the Government

---

[27] *Memorandum Order Terminating Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 filed by U.S. Bank National Association, in Its Capacity as Trustee for Non-Recourse PREPA Bonds* [Docket No. 1855 in Case No. 17-4780].
[28] If the Government Parties' real objective is to obtain a stay of the Committee's claim objection while the RSA is being renegotiated, they should request that relief from this Court, and allow the Court to determine whether such relief is warranted (and permissible under the Bankruptcy Code). Deploying the Rule 9019 Motion that the Government Parties are no longer actively pursuing as a backdoor way to obtain such a stay is an improper use of the Rule 9019 process.
[29] *See* Resp. ¶ 23.
[30] *See* Mot. to Terminate, at 15 n.35.
[31] *Id.*
[32] Resp. ¶ 1.

Parties to suppress the Committee's claim objection rights in this case could encourage future abuses of the Rule 9019 process, as debtors intent on exercising exclusive control over the allowance or disallowance of certain claims could enter into (never prosecuted) "settlements" early in the case for the purpose of "occupying the field" indefinitely.[33] Every debtor "hopes" to settle claims asserted against it; however, the mere "hope" of a settlement does not give the debtor any right under the Bankruptcy Code to preclude claim objections by other parties.

20. Finally, the Committee is not using its Motion to Terminate to "short-circuit the status report procedure the Court has put in place to evaluate whether continued adjournment is warranted."[34] The "procedure" to which the Government Parties refer does not provide for basic due process, as it does not give the Committee or other parties any period of time in which to object to the Oversight Board's status reports or otherwise be heard. While the Committee could conceivably rush to "object" to a status report (as it has tried to do on previous occasions), doing so is hardly a substitute for the Committee's right to seek specific relief after notice and a hearing. In any event, the Court granted the latest adjournment of the Rule 9019 Motion *less than three business days* after the Government Parties filed their July 31 status report. The Committee had no practical choice but to file the instant motion to be heard by the Court.

21. For all of these reasons, the Court should exercise its discretion to terminate the Rule 9019 Motion so the Committee's claim objection can move forward.

[*Remainder of page intentionally left blank.*]

---

[33] *See* Mot. to Terminate ¶ 30.
[34] Resp. ¶ 2.

11

WHEREFORE, the Committee respectfully requests that the Court terminate the Rule 9019 Motion without prejudice to the Government Parties renewing such motion at a later time and grant such other relief as the Court deems just and proper.

Dated: September 9, 2020     By: /s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: /s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*