# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

as representative of
THE COMMONWEALTH OF PUERTO RICO, *et al.*

Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**SUIZA DAIRY'S REPLY TO OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO URGENT MOTION REQUESTING A RULING OR ENTRY OF COMFORT ORDER AS TO THE NON-APPLICABILITY OF THE AUTOMATIC STAY TO A LIMITED CONTROVERSY WITH THE COMMONWEALTH OF PUERTO RICO ARISING POST-PETITION AND HAVING POST-PETITION EFFECTS BUT PARTIALLY BASED ON A PRE-PETITION JUDGMENT INCORPORATING MILK REGULATIONS ESTABLISHED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO AND NOT INVOLVING PROPERTY OF THE <u>DEBTOR OR ITS ESTATE</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Contents

| | | |
|---|---|---:|
| **I.** | **PRELIMINARY STATEMENT** ............................................................................... | 1 |
| **II.** | **ARGUMENT**................................................................................................................ | 4 |
| **III.** | **CONCLUSION** ........................................................................................................... | 10 |

### FEDERAL CASES

*Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770 (1st Cir. 1981) .................................. 6,10
*In re Anderson,* 23 B.R. 174, 175 (Bankr.N.D.Ill.1982) ............................................................... 6
*In re Curtis*, 40 B.R. 795 (Bankr.D. Utah 1984) ........................................................................... 7
*In re Powell*, 27 B.R. 146, 147 (Bankr.W.D.Mo.1983) ................................................................ 6
*In re Sonnax Indus.*, 907 F. 2d 1280 (2d Cir. 1990), ................................................... 6, 7, 8, 9, 10
*In re York*, 13 B.R. 757, 758 (Bankr.D.Me.1981) ....................................................................... 6
*Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 999-1000 (N.D.Ga.1983) 6

### FEDERAL STATUTES

Bankruptcy Code section 101 (5), 11 U.S.C § 101 ........................................................................ 5
Bankruptcy Code section 362 (a), 11 U.S.C. § 362 ..................................................... 3,4, 5, 6, 10
Bankruptcy Code section 362 (b), 11 U.S.C. § 362 ...................................................................... 6
Bankruptcy Code section 362 (d), 11 U.S.C. § 362 ...................................................................... 5
Bankruptcy Code section 922 (a), 11 U.S.C. § 922 ...................................................................... 3
Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §
   2101, et seq .............................................................................................................................. 3
Title III, PROMESA, 48 U.S.C. § 2161 ....................................................................................... 3

### PUERTO RICO STATUTES

Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§ 1092-1125 ..................................................... 1

### PUERTO RICO REGULATIONS

Regulation No. 1 of June 11, 1957 ................................................................................................ 1

### OTHER AUTHORITIES

Administrative Order 2020-22 ............................................................................................... 2, 4, 5

COMES NOW, creditor Suiza Dairy Corp. ("Suiza"), represented by the undersigned attorneys, and very respectfully avers and prays as follows:

## I. PRELIMINARY STATEMENT

The remedy Suiza seeks to pursue is not intended to and cannot in any way result in a monetary award on account of amounts due to Suiza. All Suiza wants is to enforce the regulation that is part of a federal judgment and that defines the concept of surplus milk. The comfort order sought by Suiza can easily provide for that limited action scope.

Suiza is one of only two fresh milk processors in Puerto Rico. Suiza serves the biggest portion of that market. In 2004, Suiza successfully challenged in federal court the constitutionality, as implemented, of the laws and regulations that govern the milk industry in Puerto Rico, particularly the Milk Industry Regulation Act, Act No. 34 of June 11, 1957, 5 P.R. Laws Ann. §§ 1092-1125 ("Act 34") and Regulation No. 1 of June 11, 1957 ("Milk Regulation No. 1") as subsequently amended, under the Takings Clause of the Constitution of the United States. On October 29, 2013 the parties to the action filed their Final Settlement Agreement And Memorandum Of Understanding Between The Parties (the "Settlement Agreement") (D.E. 2322). The Settlement Agreement was incorporated into the final federal judgment ("Judgment") entered in Civil Case No. 04-1840.

The Judgment against the Commonwealth of Puerto Rico also incorporates a set of regulations to cover many aspects of the milk industry which the court found at the time to be in disarray due to discriminatory and arbitrary regulation. One of those provisions defined the key concept of "surplus milk" and referenced the "balance plant" Indulac, the then government entity in charge of using milk for derivative products of lesser margin for the dairy farmer. Said

1

regulations deal with the way of disposing of said milk by the fresh milk processors and the balance plant. In essence, no milk goes to the balance plant until the demand for it by the fresh milk processors is satisfied.

By July 10, 2020, Mr. Jorge A. Campos Merced, as Administrator of the Office of Regulation of the Milk Industry (Spanish acronym "ORIL"), issued Administrative Order 2020-22 ("Administrative Order") changing the Judgment's definition of surplus milk from milk produced in excess of the needs for the market for **fresh** milk to milk exceeding the demand for **fluid** milk. With that pretext the Administrative Order amended the established regulatory scheme to order delivery of raw milk to Indulac that is needed by Suiza, who pays the farmer a higher price for it than Indulac.

The action by ORIL has had a detrimental effect on Suiza by setting up Indulac, as a direct competitor to Suiza while the latter purchases, at substantially lower prices, the raw milk needed by Suiza, thus causing damages to Suiza and the dairy farmers.

In an abundance of caution, on August 3, 2020 (D.E. 13938), Suiza filed its *Urgent Motion Requesting a Ruling or Entry of Comfort Order as to the Non-Applicability of the Automatic Stay to a Limited Controversy with the Commonwealth of Puerto Rico Arising Post-Petition and Having Post-Petition Effects but Partially Based on a Pre-Petition Judgment Incorporating Milk Regulations Established by the United States District Court for the District of Puerto Rico and not Involving Property of the Debtor or its Estate* ("Motion for Comfort Order"). As implied in the title of its motion, Suiza seeks a ruling or comfort order from this Court, before initiating a proceeding in Civil Case No. 04-1840 with the sole purpose of enforcing the Judgment and its regulations against the Commonwealth of Puerto Rico, to wit, maintaining the status quo in the

2

case, not asserting and much less enforcing its prepetition monetary judgment against the Commonwealth.

Suiza seeks an order holding that the events giving rise to Suiza's enforcement of action constitute post-petition events, with post-petition effects, although they run afoul of holdings in a pre-petition federal judgment. More specifically, Suiza sought a finding that it was not acting in contravention of the automatic stay provisions of Sections 362(a) and 922(a) of the Bankruptcy Code, incorporated by 48 U.S.C. § 2161 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2101, *et seq*, in pursuing its enforcement of regulations action against the Commonwealth in Civil Case No. 04-1840. Suiza clarified that it was not attempting to pursue collection of a pre-petition debt or pre-petition breach by pursuing its cause of action more fully described below, nor it is attempting to exercise control or possession over property of the estate.

On August 27, 2020 (D.E. 14118), the Commonwealth filed its Objection to the Motion for Comfort Order (the "Objection to Motion for Comfort Order"). As will be shown below, the Commonwealth misconstrues the nature of the relief being sought by Suiza through its Motion for Comfort Order. A review of Suiza's Motion for Comfort Order shows that <u>Suiza is not attempting to enforce a prepetition monetary judgment notwithstanding the pendency of the Commonwealth's Title III bankruptcy proceeding. To the contrary, Suiza is merely seeking to preserve the *status quo* on its pre-petition non-dischargeable Takings Clause claim against the Commonwealth.</u> Thus, the Objection to Motion for Comfort Order must be denied by this Honorable Court, and the Motion for Comfort Order sought by Suiza should be granted.

3

## II. ARGUMENT

The Objection to Motion for Comfort Order mistakenly assumes, and as such erroneously argues, that Suiza is attempting to enforce its pre-petition non-dischargeable monetary judgment against the Commonwealth, in violation of the automatic stay provisions of 11 U.S.C. § 362(a). As stated in the preceding paragraph, Suiza is solely and exclusively seeking to maintain the *status quo* as it pertains to Civil Case No. 04-1840 before the United States District Court for the District of Puerto Rico. Suiza seeks a ruling setting aside Administrative Order 2020-22 changing the Judgment's definition of surplus milk from milk produced in excess of the needs for the market for **fresh** milk to milk exceeding the demand for **fluid** milk. As stated above, with that pretext the Administrative Order amended the regulatory scheme established in Civil No. 04-1840 to order delivery of raw milk to Indulac that is needed by Suiza, who pays the dairy farmers a higher price for it than Indulac. The actions to be taken by Suiza in Civil No. 14-1840, subject to a prior ruling from this Honorable Court that they do not contravene the automatic stay provisions of 11 U.S.C. § 362(a), do not constitute the enforcement of its pre-petition monetary judgment against the Commonwealth, as erroneously averred by the Commonwealth in its Objection to Motion for Comfort Order(D.E. 14118).

Suiza is not seeking the enforcement, against the debtor or against property of the estate, of a the non-dischargeable monetary judgment in its favor obtained before the commencement of the case under this title. Suiza is not attempting to pursue collection of a pre-petition debt or pre-petition breach. It is not seeking to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. See, 11 U.S.C. § 362(a) (2) & (3). It is merely seeking to maintain the *status quo* in Civil No. 14-1840. Therefore, it is not acting in contravention of the cited automatic stay statutes, and as such the entry of a Comfort Order or

4

ruling by this Honorable Court, confirming the non-applicability of the automatic stay provisions to Suiza Dairy's request in the Motion for Comfort Order, is proper.

The Commonwealth's main arguments supporting its allegation as to the applicability of the automatic stay under 11 U.S.C. § 362(a) are contained at paragraphs 3 & 4 of its Objection to Motion for Comfort Order. At Paragraph Three (3), the Commonwealth asserts that "Movant seeks to reopen the Prepetition Action (as defined below) to enforce the Prepetition Settlement Agreement in connection with ORIL's alleged post-petition breach of the Prepetition Settlement Agreement through the issuance of Administrative Order 2020-22 (the "Administrative Order"), which Movant asserts is contrary to the requirement pursuant to the Prepetition Settlement Agreement to enact and enforce certain regulations regarding regarding milk price setting.[2] Movant seeks in the Motion a determination that the automatic stay under section 362(d) [sic] of title 11 of the United States Code (the "Bankruptcy Code") does not apply to such action to enforce the Prepetition Settlement Agreement, asserting that it is not seeking to enforce a claim against the Commonwealth."

At Paragraph Four (4), the Commonwealth asserts that "The Motion should be denied because (1) the automatic stay applies to Movant's enforcement of the Prepetition Settlement Agreement, and (2) Movant has failed to show that "cause" exists to modify the automatic stay. Movant's asserted right to equitable relief to enforce the Prepetition Settlement Agreement is a "claim" pursuant to section 101(5) of the Bankruptcy Code because the Commonwealth's purported breach of the Prepetition Settlement Agreement can be reduced to a right to payment. At the core of Movant's claim is the asserted economic injury that the implementation of the

---

[2] An examination of the Administrative Order shows that the same has nothing to do with the price of milk. As a matter of fact, the order specifically leaves the price of milk unaltered. *See* D.E. 14076-1 ("It is ORDERED, that all prices established for fluid milk products remain unaltered.").

5

Administrative Order would cause to Movant. Furthermore, courts have held that a postpetition breach of a prepetition agreement nevertheless gives rise only to prepetition claims."

The Commonwealth's assertions contained at Paragraph Nine (9) above are misguided and wrong. Suiza is not attempting to enforce a prepetition monetary claim against the Commonwealth through the relief it intends to seek in Civil 04-1840 with prior leave of this Court. Under 11 U.S.C § (101) (5), The term "<u>claim</u>" means— (A) ***right to payment***, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance ***if such breach gives rise to a right to payment,*** whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. (Emphasis ours). As indicated, Suiza would not be seeking payment of any kind but furthermore a federal court may not award damages against the Commonwealth of Puerto Rico because of the 11th Amendment. See *Ezratty v. The Commonwealth of Puerto Rico*, 648 F. 2d 770 (1st Cir. 1981).

Despite the broad reach of the automatic stay the same, it is not all encompassing. Section 362(b), for example, provides exemptions from the automatic stay. The Code requires that the proceeding stayed "was or could have been commenced" before filing or that the proceeding was based on a claim that arose pre-petition. Sec. 362(a)(1); see *In re York*, 13 B.R. 757, 758 (Bankr.D.Me.1981). Proceedings or claims arising post-petition are not subject to the automatic stay. See, e.g., *Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 999-1000 (N.D.Ga.1983); *In re Powell*, 27 B.R. 146, 147 (Bankr.W.D.Mo.1983); *In re Anderson,* 23 B.R. 174, 175 (Bankr.N.D.Ill.1982); *In re York*, 13 B.R. 757, 758-59 (Bankr.D.Me.1981). Thus, due to the inapplicability of the automatic stay to the situation at bar, the factors contained in *In re Sonnax*

6

*Indus.*, 907 F. 2d 1280 (2d Cir. 1990), for a lifting of stay analysis cited by the Commonwealth in support of its Objection to Motion for Comfort Order, are irrelevant to this case. In any case the Sonnax factors do not favor the position of the Commonwealth.

In re *Sonnax Indus.*, *supra*, cites the factors enumerated in *In re Curtis*, 40 B.R. 795 (Bankr.D. Utah 1984), which catalogued a dozen factors to be weighed in deciding whether litigation should be permitted to continue in another forum. These are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. See *id*. at 799-800.

Of the factors cited in *In re Sonnax*, *supra*, the Commonwealth relies on factors nos. 1, 2, 4, 5, 7, 10, 11 & 12. Even assuming, for the sole purpose of argument that the selected *In re Sonnax*, *supra*, factors cited by the Commonwealth were applicable to the situation at bar, under such scenario lifting of the automatic stay would be proper.

Sonnax Factor 1 cited by the Commonwealth focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. The answer to this proposition

7

is yes. The court in Case No. 14-1840 is much more familiar with the issues involving the Suiza's non-dischargeable Takings Clause Claim against the Commonwealth particularly those regarding applicability of milk regulations. It would be a needless duplication of judicial resources for this Honorable to relitigate the technical milk regulation issues decided in Case No. 14-1840, which was the subject of over a hundred (100) evidentiary hearings and extensive opinions entered by the court therein.

Sonnax Factor 2 cited by the Commonwealth - the lack of connection with or interference with the bankruptcy case - also weighs in favor of granting the relief sought by Suiza. Contrary to the Commonwealth's assertions, more resources from the Commonwealth would have to be used if the Commonwealth were to address the issues raised by Suiza within the Title III case, since it would be duplicating complex and extensive factual and legal issues which were duly litigated and adjudicated in Case No. 14-1840 within the span of several years. Therefore, the preservation of the *status quo* in Case No. 14-1840 would be more efficiently, expeditiously and cost-effectively handled by the court which entertained Case No. 14-1840, resulting in the conservation of valuable and limited judicial resources, and avoidance of extensive duplicative efforts by this Honorable Court.

Sonnax Factor 4 – whether a specialized tribunal has been established to hear the cause of action at issue – also weighs heavily in allowing the court in Case No. 14-1840 to preserve the *status quo*. The fact that complex and extensive factual and legal issues which were duly litigated and adjudicated in Case No. 14-1840 within the span of several years clearly vests the court in Case No. 14-1840 with the specialized knowledge and familiarity with the issues that a specialized tribunal would have, again resulting in the conservation of valuable and limited judicial resources, and avoidance of extensive duplicative efforts by this Honorable Court.

8

Sonnax Factor 6 (involvement of third parties) cited by the Commonwealth is not contrary to the relief being sought by Suiza. Even though the relief being sought by Suiza Dairy seeks to enforce the regulatory portions of the judgment in case No. 14-1840 the fact that Indulac sought intervention here (see D.E. 14049) demonstrates that it and Vaqueria Tres Monjitas would most likely intervene on any related proceeding also. Therefore, Sonnax Factor 6 favors movant.

Sonnax factor 7 cited by the Commonwealth actually supports the relief being sought by Suiza herein. Contrary to the assertions of the Commonwealth in citing Sonnax Factor 7, the Commonwealth would actually have to spend less resources addressing Suizas action to maintain the status quo in Case No. 14-1840, since as stated above, the fact that complex and extensive factual and legal issues which were duly litigated and adjudicated in Case No. 14-1840 within the span of several years clearly vests the court in Case No. 14-1840 with the specialized knowledge and familiarity with the issues that a specialized tribunal would have, again resulting in the conservation of valuable and limited judicial resources, and avoidance of extensive duplicative efforts by this Honorable Court and the litigants.

As to Sonnax Factors 10 and 11 cited by the Commonwealth, again the interests of judicial economy favor the relief being sought by Suiza herein. The relief being sought before this forum does not involve, as the Commonwealth mistakenly asserts, pursuing a claim against the Commonwealth, but rather preserving the *status quo*. As explained above, this matter can be addressed in the most economical manner in Case No. 14-1840, with the preservation of valuable judicial resources. Therefore, Sonnax Factors 10 and 11 cited by the Commonwealth do not apply to the relief being sought by Suiza.

Lastly, as to Sonnax Factor 12 cited by the Commonwealth, by the Commonwealth's own admissions therein, it is evident that the relief being sought by Suiza, to wit, the maintenance of

9

the *status quo* involving the milk regulatory aspects of its non-dischargeable Takings Clause claim against the Commonwealth, doers not have any adverse effect in the structuring or implementation of the Commonwealth's Title III bankruptcy case. Therefore, Sonnax Factor 12 actually weighs in favor of conceding the remedy being sought by Suiza. Moreover, under the Eleventh Amendment of the Constitution of the United States, applicable to the Commonwealth of Puerto Rico pursuant to the ruling in *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770 (1st Cir. 1981), there is no right to request much less obtain any damages against the Commonwealth in Case No. 04-1480 under any of the two (2) scenarios mentioned above. Specific performers of the milk regulation that are part of the judgment of Case No. 04-1840 is all that is possible here.

### III. CONCLUSION

Thus, it is patently clear that, by seeking to preserve the *status quo* on its non-dischargeable Takings Clause Judgment, <u>Suiza is not attempting to collect on a prepetition claim against the Commonwealth nor seeking unavailable damages.</u> Thus, the automatic stay provisions under 11 U.S.C. § 362(a) are not applicable to the facts surrounding Suiza's Motion for Entry of Comfort Order, and as such the same should be granted by this Honorable Court. WHEREFORE, in light of the above stated, Suiza most respectfully prays that this Honorable Court grant its Motion for Entry of Comfort Order, that the Court deny the Commonwealth's Objection to Motion for Comfort Order , and that the Court grant any other relief in favor of Suiza it deems proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 9th day of September, 2020.

*(Signatures in next page.)*

Respectfully submitted,

REICHARD & ESCALERA, LLC
*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

*/s/Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/Fernando Van Derdys
Fernando Van Derdys
USDC-PR 201913
fvander@reichardescalera.com

*/s/ Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 9, 2020, I filed the instant motion through the Court's CM/ECF system, which will send notification of such filing to all CM/ECF participants, in compliance with the case management order in the case.

/s/Alana M. Vizcarrondo-Santana