**Hearing Date: October 28, 2020, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: October 14, 2020, at 4:00PM (Atlantic Standard Time)**

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## TWO HUNDRED FIFTY-SECOND OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO CLAIMS FOR WHICH THE COMMONWEALTH IS NOT LIABLE

---

To the Honorable United States District Court Judge Laura Taylor Swain:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Commonwealth of Puerto Rico (the "Commonwealth," or "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole representative of the Debtor pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred fifty-second omnibus objection (the "Two Hundred Fifty-Second Omnibus Objection") seeking to disallow claims as to which the Commonwealth is not liable, as set forth on **Exhibit A** hereto. In support of the Two Hundred Fifty-Second Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1. The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2. Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.    The Bar Date Orders in the Commonwealth Title III Case**

3. On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4. On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

*Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").[3]  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time).

**B.     Bond Debt Issued by the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority**

5.     The Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") is a public corporation and government instrumentality of the Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved June 27, 1977 (as amended and supplemented and codified as P.R. Laws Ann. tit. 12, § 1251 *et seq.*). P.R. Laws Ann. tit. 12, § 1254.  AFICA facilitates project financing in order to promote the economic development of the Commonwealth, including through the development and construction of new industrial, commercial, tourist, agricultural, educational, medical and environmental control facilities.

6.     In 1999, AFICA issued Industrial Revenue Bonds, 1999 Series A (the "1999 Doral Financial Bonds"), in the aggregate amount of $44,765,000.00, in order to finance, in part, the construction of Doral Financial Center. The 1999 Doral Financial Bonds are payable solely from

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

repayment of a loan agreement entered into between AFICA, on the one hand, and Doral Financial Corporation and Doral Properties, on the other hand. The 1999 Doral Financial Bonds were further "unconditionally guaranteed" by Doral Financial Corporation. The offering statement issued in connection with the 1999 Doral Financial Bonds states that the "[1999 Doral Financial Bonds] do not constitute a debt of the Government of Puerto Rico." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Industrial Revenue Bonds, Series 1999A (Doral Financial Center Project), *available at* https://emma.msrb.org/Security/Details/A3680EBA7C2CF40DB443B3B0E5DA28925.

7.     In 2002, AFICA issued Higher Education Revenue and Revenue Refunding Bonds, 2002 Series A (the "Series 2002 A University Bonds"), in the aggregate amount of $34,330,000.00, in order to provide financing, in part, for (*i*) the construction of certain educational facilities owned or to be owned by the Polytechnic University of Puerto Rico (the "University"), (*ii*) the refunding of certain prior bond issuances, and (*iii*) certain costs incurred in insuring and issuing the 2002 Series A University Bonds. The Series 2002 A University Bonds are payable solely from repayment of a loan agreement entered into between AFICA and the University. The offering statement issued in connection with the Series 2002 A University Bonds states that the bonds "shall not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Higher Education Revenue and Revenue Refunding Bonds, Series 2002 A (Polytechnic University of Puerto Rico Project),                    *available*                    *at* https://emma.msrb.org/Security/Details/AA9A902D905B8AF8265EDFE55EEC98D6E.

8.      In 2011, AFICA issued Industrial Revenue Refunding Bonds, 2011 Series A (the "2011 Series A Galeria Bonds"), in the aggregate amount of $59,649,744.50, in order to finance, in part, the operation of certain office and commercial retail space owned and operated by Caparra Hills, Inc.  The 2011 Series A Galeria Bonds are payable solely from repayment of a loan agreement entered into between AFICA and Caparra Hills, Inc.  The offering statement issued in connection with the 2011 Series A Galeria Bonds states that the bonds "do not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Industrial Refunding Bonds, 2011 Series   A   (Galeria   Tower   at   San   Patricio   Project),   *available   at* https://emma.msrb.org/Security/Details/A95ABBB582ECE40E0D6ED039C687C3542.

9.      Also, in 2011, AFICA issued Tourism Revenue Refunding Bonds, 2011 Series A (the "2011 Series A Trump Golf Club Bonds," and together with the 1999 Doral Financial Bonds, the Series 2002 A University Bonds, and the 2011 Series A Galeria Bonds, the "AFICA Bonds"), in the aggregate amount of $26,355,000.00, in order to, in part, refinance a portion of the construction of the Trump International Golf Club Puerto Rico.  The 2011 Series A Trump Golf Club Bonds are payable solely from repayment of a loan agreement entered into between AFICA and Coco Beach Golf & Country Club, S.E.  The offering statement issued in connection with the 2011 Series A Trump Golf Club Bonds states that the bonds "do not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control

5

Facilities Financing Authority, Offering Statement, Tourism Revenue Refunding Bonds, 2011

Series A (Trump International Golf Club Puerto Rico Project), *available at*

https://emma.msrb.org/Security/Details/A1A77B5F6CEF57494504C49A90359E23A.

### C.    Bond Debt Issued By The Puerto Rico Conservation Trust Fund

10.    The Puerto Rico Conservation Trust Fund ("PRCTF") is a charitable, irrevocable

and perpetual trust fund created under a Deed of Trust dated January 23, 1970. The principal

purpose of PRCTF is to protect and enhance the natural resources and beauty of Puerto Rico.

PRCTF has implemented its purpose through the acquisition, active management and development

of lands in Puerto Rico. On October 2, 2003, PRCTF released its final offering circular for

$100,000,000 worth of 6.30% secured notes with a maturity date of 2033 (the "PRCTF Notes").

The PRCTF Notes were issued as non-recourse debt obligations of PRCTF, payable solely from

and secured solely by a pledge of 6.95% cumulative monthly income trust preferred securities to

be issued by R&G Capital Trust III. The offering statement issued in connection with the PRCTF

Notes states that the "[PRCTF] Notes are obligations solely of Conservation Trust and do not

constitute a debt of the Government of Puerto Rico or any governmental agency . . . ." PRCTF

Notes Offering Statement at 1.

### D.    Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections

11.    To date, approximately 174,000 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC. Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.    Of the proofs of claim filed, approximately 111,300 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth. In accordance with the terms of the Bar

Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw,

such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

13.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion"). The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures"). On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

14.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,*

*(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus Objection Procedures</u>").

15.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held hearings related to one hundred fifty-seven omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>"), the Puerto Rico Highways and Transportation Authority ("<u>HTA</u>"), and/or the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>), as well as thirty-three individual objections.  After hearings held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-two individual objections, resulting in thousands of proofs of claim filed against the Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors.  Twenty-two omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on December 11, 2019.  Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020, and thirty omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and granted on March 4 and 5, 2020.  Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

16.     This Two Hundred Fifty-Second Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

17.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Two Hundred Fifty-Second Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that seek recovery for amounts for which the Commonwealth is not liable because the claim seeks recovery for liabilities owed by either AFICA or PRCTF, neither of which are Title III debtors, and whose liabilities are not guaranteed by the Commonwealth, each as set forth on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed").

19.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). Each of the Claims to Be Disallowed purports to assert various liabilities against the Commonwealth associated with AFICA Bonds or PRCTF Notes. AFICA, however, is not a Title III debtor, and is separate, legally distinct entity from the Commonwealth. Indeed, each of the offering statements issued in connection with the AFICA Bonds states that the AFICA Bonds are not a debt of the Commonwealth or any other Title III debtors. PRCTF is also not a Title III debtor, and is a separate, legally distinct entity from the Commonwealth. The offering statement issued in connection with the PRCTF Notes also states that the PRCTF Notes are not an obligation of the Commonwealth. Moreover, each of the Claims to Be Disallowed does not assert a basis for asserting a claim against the Commonwealth for bonds issued by AFICA or notes issued by

PRCTF that are neither guaranteed by nor a debt of the Commonwealth. Because of this failure to comply with the applicable rules, neither the Debtors nor the Court are able to determine the validity of the Claims to Be Disallowed.

20. In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Fifty-Second Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims for which the Commonwealth is Not Liable*, dated September 11, 2020, attached hereto as **Exhibit B**.

## NOTICE

21. In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Two Hundred Fifty-Second Omnibus Objection to (a) the individual creditors subject to this Two Hundred Fifty-Second Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. The notice for this Two Hundred Fifty-Second Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations of the Two Hundred Fifty-Second Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

22. This Two Hundred Fifty-Second Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other claims on any ground whatsoever. The Debtors expressly reserve all further substantive or procedural objections. Nothing contained herein or any actions taken pursuant to such relief is

intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

23.     No prior request for the relief sought in this Two Hundred Fifty-Second Omnibus Objection has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: September 11, 2020
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico*

**Fecha de la vista: 28 de octubre de 2020, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 14 de octubre de 2020, a las 4:00 p.m. (AST)**

> **REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*, <br><br> Deudores.[1] | PROMESA <br> Título III <br><br> Núm. 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA.** |

**DUCENTÉSIMA QUINCUAGÉSIMA SEGUNDA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES POR LAS QUE EL ELA NO TIENE RESPONSABILIDAD**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante del Deudor conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente ducentésima quincuagésima segunda objeción global (la "Ducentésima quincuagésima segunda objeción global") en la que se solicita que se rechacen reclamaciones por las que el ELA no tiene responsabilidad, como se indica en el **Anexo A** del presente documento. En apoyo de la Ducentésima quincuagésima segunda objeción global, el ELA manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.        El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.        La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.        Órdenes de Fecha Límite en el Caso de Título III del ELA**

3.        El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso de Título III en virtud de dicho cuerpo legal (el "Caso de Título III del ELA").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite").[3] Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Deuda de los bonos emitidos por la Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental**

5.      La Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental de Puerto Rico (la "AFICA") es una corporación pública y organismo gubernamental del ELA creada por la Ley núm. 121 de la Asamblea Legislativa de Puerto Rico, aprobada el 27 de junio de 1977 (en su versión enmendada, complementada y codificada en las Leyes de Puerto Rico, título 12, § 1251 y siguientes.) . Leyes de Puerto Rico, título 12, § 1254. La AFICA facilita el financiamiento de los proyectos para

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

fomentar el desarrollo económico del ELA, lo que incluye medidas para la promoción y construcción de nuevas infraestructuras industriales, comerciales, turísticas, agrícolas, educativas, médicas y de control medioambiental.

6.       En 1999, la AFICA emitió Bonos de Renta Industrial, 1999 Serie A (los "Bonos Doral Financial 1999"), por un monto total de $44,765,000.00, para financiar, en parte, la construcción del Doral Financial Center. Los Bonos Doral Financial 1999 son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA, de una parte, y Doral Financial Corporation y Doral Properties, de la otra. Además, Doral Financial Corporation "garantizó incondicionalmente" los Bonos Doral Financial 1999. La declaración de oferta emitida en relación con los Bonos Doral Financial 1999 dispone que "[los Bonos Doral Financial 1999] no constituyen deuda del Gobierno de Puerto Rico". *Véase, por ejemplo*, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta Industrial, Serie 1999A (Proyecto Doral           Financial           Center),           disponible           en https://emma.msrb.org/Security/Details/A3680EBA7C2CF40DB443B3B0E5DA28925.

7.       En 2002, la AFICA emitió Bonos de Renta y de Renta de Refinanciamiento de Educación Superior, 2002 Serie A (los "Bonos de la Universidad Serie 2002 A"), por un monto total de $34,330,000.00, para proporcionar, en parte, financiamiento para *i)* la construcción de determinados centros educativos pertenecientes, o que pertenecerían, a la Universidad Politécnica de Puerto Rico (la "Universidad"), *ii)* el reembolso de determinados bonos emitidos anteriormente y *iii)* determinados costos relativos al seguro y a la emisión de los Bonos de la Universidad 2002 Serie A. Los Bonos de la Universidad Serie 2002 A son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA y la Universidad. La declaración

de oferta emitida en relación con los Bonos de la Universidad Serie 2002 A dispone que los bonos "no constituirán endeudamiento del ELA ni de ninguna de sus subdivisiones políticas, salvo [la AFICA], y ni el ELA ni ninguna de sus subdivisiones políticas, salvo [la AFICA], será responsable de su pago". *Véase, por ejemplo*, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta y de Renta de Refinanciamiento de Educación Superior Serie 2002 A (Proyecto Universidad Politécnica de Puerto Rico), *disponible en* https://emma.msrb.org/Security/Details/AA9A902D905B8AF8265EDFE55EEC98D6E.

8.     En 2011, la AFICA emitió Bonos de Renta de Refinanciamiento Industrial, 2011 Serie A (los "Bonos Galería 2011 Serie A") por un monto total de $59,649,744.50 para financiar, en parte, el funcionamiento de cierto espacio comercial minorista y de oficinas perteneciente y operada por Caparra Hills, Inc. Los Bonos Galería 2011 Serie A, son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA y Caparra Hills, Inc. La declaración de oferta emitida en relación con los Bonos Galería 2011 Serie A dispone que los bonos "no constituyen endeudamiento del ELA ni de ninguna de sus subdivisiones políticas, salvo [la AFICA], y ni el ELA ni ninguna de sus subdivisiones políticas, salvo [la AFICA], será responsable de su pago". *Véase, por ejemplo*, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta Industrial 2011 Serie A (Proyecto Galería Tower en San Patricio), *disponible en* https://emma.msrb.org/Security/Details/A95ABBB582ECE40E0D6ED039C687C3542.

9.     También en 2011, la AFICA emitió Bonos de Renta de Refinanciamiento Turístico, 2011 Serie A (los "Bonos Trump Golf Club 2011 Serie A", y junto con los Bonos Doral Financial 1999, los Bonos de la Universidad Serie 2002 A y los Bonos Galería 2011 Serie A, los "Bonos

AFICA"), por un monto total de $26,355,000.00, para refinanciar parcialmente parte de la construcción de Trump International Golf Club Puerto Rico. Los Bonos Trump Golf Club 2011 Serie A son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA y Coco Beach Golf & Country Club, S.E. La declaración de oferta emitida en relación con los Bonos Trump Golf Club 2011 Serie A dispone que los bonos "no constituyen endeudamiento del ELA ni de ninguna de sus subdivisiones políticas, salvo [la AFICA], y ni el ELA ni ninguna de sus subdivisiones políticas, salvo [la AFICA], será responsable de su pago". *Véase, por ejemplo*, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta de Refinanciamiento Turístico 2011 Serie A (Proyecto Trump International Golf Club Puerto Rico), *disponible* *en* https://emma.msrb.org/Security/Details/A1A77B5F6CEF57494504C49A90359E23A.

## C. Deuda de los bonos emitidos por el Fondo Fiduciario de Conservación de Puerto Rico

10. El Fondo Fiduciario de Conservación de Puerto Rico (el "FFCPR") es un fondo fiduciario benéfico, irrevocable y perpetuo creado en virtud de un Contrato Fiduciario de fecha 23 de enero de 1970. La finalidad principal del FFCPR es proteger y mejorar los recursos naturales y la belleza de Puerto Rico. El FFCPR ha estado persiguiendo su objetivo a través de la adquisición, gestión activa y desarrollo de terrenos en Puerto Rico. El 2 de octubre de 2003, el FFCPR envió una circular de oferta final relativa a pagarés garantizados con un valor de $100,000,000 al 6.30% con fecha de vencimiento en 2033 (los "Pagarés FFCPR"). Los Pagarés FFCPR fueron emitidos como obligaciones de deuda del FFCPR no susceptibles a recurso, pagaderos y garantizados únicamente mediante una prenda sobre los valores preferentes de fideicomiso acumulativo de

6

ingresos mensuales del 6.95% que ha de emitir R&G Capital Trust III. La declaración de oferta emitida en relación con los Pagarés FFCPR dispone que los "Pagarés [FFCPR] constituyen exclusivamente obligaciones del Fondo Fiduciario de Conservación, por lo que no son deuda del Gobierno de Puerto Rico ni de ningún organismo público". . . ." Declaración de Oferta de los Pagarés FFCPR en 1.

**D.    Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y Objeciones a reclamaciones**

11.    Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

12.    De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

13.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos

Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

14.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*

8

*de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

15.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal celebró vistas vinculadas con 157 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") y/o el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"), así como con 33 objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30 de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otras reclamaciones fueron reclasificadas como radicadas contra otros Deudores. Veintidós objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 11 de diciembre de 2019. Además, 27 objeciones globales a reclamaciones radicados contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020, y 30 objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas los días 4 y 5 de marzo de 2020. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

16.     La presente Ducentésima quincuagésima segunda objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

### OBJECIONES A EVIDENCIAS DE RECLAMACIONES

17.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

18.     La Ducentésima quincuagésima segunda objeción global pretende rechazar, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que pretenden la recuperación de montos por los que el ELA no tiene responsabilidad porque la reclamación pretende la recuperación por obligaciones adeudadas por la AFICA o por el FFCPR, ninguno de los cuales es un deudor de Título III, y cuyas obligaciones no están garantizadas por el ELA, como consta en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas").

19.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Cada una de las Reclamaciones que han de ser rechazadas pretende alegar varias responsabilidades contra el ELA vinculadas con los Bonos AFICA o los Pagarés FFCPR. Sin embargo, la AFICA no es un deudor de Título III y es una entidad separada y jurídicamente independiente del ELA. En efecto, cada una de las declaraciones de oferta emitidas en relación con los Bonos AFICA dispone que los Bonos AFICA no constituyen deuda del ELA ni de ningún otro deudor de Título III. El FFCPR tampoco es un deudor de Título III, y además es una entidad separada y jurídicamente independiente del ELA. La declaración de oferta emitida en relación con

los Pagarés FFCPR también dispone que los Pagarés FFCPR no constituyen una obligación del ELA. Es más, ninguna de las Reclamaciones que han de ser rechazadas proporciona fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AFICA o los pagarés emitidos por el FFCPR, que no están garantizados por el ELA ni constituyen su deuda. Como consecuencia de dicho incumplimiento de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar la validez de las Reclamaciones que han de ser rechazadas.

20.     En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Ducentésima quincuagésima segunda objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones por las que el ELA no tiene responsabilidad*, de fecha 11 de septiembre de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

21.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Ducentésima quincuagésima segunda objeción global a) a los acreedores individuales objeto de esta Ducentésima quincuagésima segunda objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Ducentésima quincuagésima segunda objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima quincuagésima segunda objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

11

## RESERVA DE DERECHOS

22.     La presente Ducentésima quincuagésima segunda objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas en los Casos de Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

23.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima quincuagésima segunda objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 11 de septiembre de 2020
    San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la*
*Junta de Supervisión y Administración*
*Financiera para Puerto Rico, como*
*representante del*
*Estado Libre Asociado de Puerto Rico*