**Hearing Date: October 28, 2020, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: October 14, 2020, at 4:00PM (Atlantic Standard Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

### TWO HUNDRED FIFTY-SIXTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO BONDHOLDER CLAIMS ASSERTING AMOUNTS FOR WHICH THE COMMONWEALTH IS NOT LIABLE

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "<u>Commonwealth</u>"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as representative of

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "<u>Debtors</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred fifty-sixth omnibus objection (the "Two Hundred Fifty-Sixth Omnibus Objection") seeking to disallow in their entirety the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based on indebtedness in whole or in part, for which the Commonwealth is not liable because the claim asserts liability based on (a) an ownership interest in bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA"); (b) an ownership interest in bonds issued by the Government Development Bank of Puerto Rico ("GDB"); (c) an ownership interest in bonds issued by AFICA (as defined below), which is not a Title III debtor, and for amounts which the Commonwealth has not guaranteed repayment; (d) investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth; and/or (e) an ownership interest in bonds issued by the Puerto Rico Aqueducts and Sewers Authority ("PRASA"), which is not a Title III Debtor, for amounts which the Commonwealth has not guaranteed repayment. In support of the Two Hundred Fifty-Sixth Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

### A. The Bar Date Orders

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

3.       On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.       On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "COFINA Title III Case" and together with the Commonwealth Title III Case, the "Title III Cases"). On June 1, 2017, the Court entered an order granting the joint administration of the Commonwealth Title III Case and the COFINA Title III Case, for procedural purposes only. ECF No. 242.[3]

5.       On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

---

[3] Unless otherwise stated, all ECF numbers refers to Case No. 17-bk-3283-LTS.

**B. The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute**

6.      COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth. Pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico Public Finance Corporation (the "COFINA Bonds"). Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

7.      The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019. The Court considered confirmation of the Plan and any objections thereto at a hearing on January 16-17, 2019.

8.      On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute"). *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048]. On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax*

*Financing Corporation* [ECF No. 5045] (the "Settlement Order"). On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order"). The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

**C. The GDB Title VI Proceedings and Qualifying Modification**

9.     GDB is a public corporation and governmental instrumentality of the Commonwealth, which was created by Legislative Assembly in 1948 to aid the government of the Commonwealth (the "Government") in performing its fiscal duties and in more effectively carrying out its responsibility to develop the economy of the Commonwealth. On April 28, 2017, the Oversight Board unanimously certified that certain February 2017 GDB Fiscal Plan, which contemplated an orderly wind-down of the operations of GDB based upon the determination that there was no clear path for the long-term viability of GDB based on its then-current financial condition.

10.     On July 12, 2017, the Oversight Board issued a resolution authorizing GDB, pursuant to Section 601(e) of PROMESA, to avail itself of Title VI of PROMESA. On August 10, 2018, GDB filed an application for approval of a qualifying modification, pursuant to PROMESA section 601(m)(1)(D) (the "Qualifying Modification"), in the United States District Court for the District of Puerto Rico.

11.     On November 7, 2018, the Court approved the Qualifying Modification pursuant to PROMESA section 601(m)(1)(D).  *See* ECF No. 270 in Government Development Bank for Puerto Rico, Case No. 18-1561 (D.P.R. Nov. 7, 2018).  The Qualifying Modification provided for, among other things, (i) the issuance of new bonds by the newly-created GDB Debt Recovery Authority in exchange for the cancellation of, among other things, certain participating bonds and guaranteed bond claims (collectively, the "GDB Bonds"); (ii) the extinguishment of the Commonwealth's guarantee of the guaranteed bonds upon the exchange and cancellation of the guaranteed bonds; and (iii) the release of claims of the holders of GDB Bonds against GDB and its affiliates relating to, among other things, any investment with GDB or the purchase, sale, or transfer of any security or interest of GDB, and any action or omission with respect to any indebtedness or loans to GDB (including any notes issued or deposits held by GDB) or from GDB. Solicitation Statement, at 57-60, ECF No. 1-15 in *Government Development Bank for Puerto Rico*, Case No. 18-1561 (D.P.R. Aug. 10, 2018).

12.     On November 29, 2018, GDB announced the consummation of the Qualifying Modification for GDB.  Press Release, *Government of Puerto Rico Announces Consummation of the GDB Qualifying Modification*, Governor of Puerto Rico (Nov. 29, 2018),  *available at* http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-modification.pdf.

**D.  Bond Debt Issued by the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority**

13.     The Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") is a public corporation and government instrumentality of the Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved June 27, 1977 (as amended and supplemented and codified as P.R. Laws

Ann. tit. 12, § 1251 *et seq.*). P.R. Laws Ann. tit. 12, § 1254. AFICA facilitates project financing in order to promote the economic development of the Commonwealth, including through the development and construction of new industrial, commercial, tourist, agricultural, educational, medical and environmental control facilities.

14.     In 1999, AFICA issued Industrial Revenue Bonds, 1999 Series A (the "1999 Doral Financial Bonds"), in the aggregate amount of $44,765,000.00, in order to finance, in part, the construction of Doral Financial Center. The 1999 Doral Financial Bonds are payable solely from repayment of a loan agreement entered into between AFICA, on the one hand, and Doral Financial Corporation and Doral Properties, on the other hand. The 1999 Doral Financial Bonds were further "unconditionally guaranteed" by Doral Financial Corporation. The offering statement issued in connection with the 1999 Doral Financial Bonds states that the "[1999 Doral Financial Bonds] do not constitute a debt of the Government of Puerto Rico." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Industrial Revenue Bonds, Series 1999A (Doral Financial Center Project), *available at* https://emma.msrb.org/Security/Details/A3680EBA7C2CF40DB443B3B0E5DA28925.

15.     In 2011, AFICA issued Industrial Revenue Refunding Bonds, 2011 Series A (the "2011 Series A Galeria Bonds," and together with the 1999 Doral Financial Bonds, the "AFICA Bonds"), in the aggregate amount of $59,649,744.50, in order to finance, in part, the operation of certain office and commercial retail space owned and operated by Caparra Hills, Inc. The 2011 Series A Galeria Bonds are payable solely from repayment of a loan agreement entered into between AFICA and Caparra Hills, Inc. The offering statement issued in connection with the 2011 Series A Galeria Bonds states that the bonds "do not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the

7

Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Industrial Refunding Bonds, 2011 Series A (Galeria Tower at San Patricio Project), *available at* https://emma.msrb.org/Security/Details/A95ABBB582ECE40E0D6ED039C687C3542.

### E. Bond Debt Issued by the Puerto Rico Aqueducts and Sewers Authority

16.    PRASA was established pursuant to Act Number 40 on May 1, 1945. PRASA is a government-owned corporation in Puerto Rico and was created for the purpose of providing water and sewer services on the island. 22 L.P.R.A. § 144.

17.    The PRASA Enabling Act authorizes PRASA to issue bonds. 22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583"). In 2008, PRASA issued $1,316,204,456 principal amount of Series A revenue bonds (the "2008 Senior Series A Bonds"). Additionally, in 2012, PRASA concurrently issued $1,800,450,00 principal amount of Series 2012 A revenue bonds (the "2012 Senior Series A Bonds"), as well as $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012 Senior Series B Bonds," together with the 2012 Senior Series A Bonds and the 2008 Senior Series A Bonds, the "PRASA Senior Lien Bonds").

18.    Holders of PRASA Senior Lien Bonds have received and continue to receive all payments owed to holders of the PRASA Bonds in full as they become due and owing. The Commonwealth has not guaranteed repayment of the Senior Lien Bonds.

**F. Proofs of Claim Filed Against the Commonwealth, the Omnibus Objection Procedures, and Claim Objections**

19.     To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

20.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

21.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

9

22.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

23.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held hearings related to one hundred twenty-three omnibus objections filed by the Commonwealth, COFINA, the Puerto Rico Highways and Transportation Authority ("HTA"), and/or the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), as well as thirty-three individual objections. After hearings held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-two individual objections, resulting in thousands of proofs of claim filed against the Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors. Twenty-two omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on December 11, 2019. Furthermore, twenty-seven omnibus objections to claims filed against

the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020. Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS, have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

24.     This Two Hundred Fifty-Sixth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

25.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

26.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

27.     The Two Hundred Fifty-Sixth Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, bondholder claims that seek amounts for which

11

the Commonwealth is not liable because the claim asserts liability based on (a) an ownership interest in bonds issued by COFINA; (b) an ownership interest in bonds issued by GDB; (c) an ownership interest in bonds issued by AFICA, which is not a Title III debtor, and which liabilities are not guaranteed by the Commonwealth; (d) investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth; (e) an ownership interest in bonds issued by PRASA, which is not a Title III debtor, and which liabilities are not guaranteed by the Commonwealth. **Exhibit A** hereto further specifies why each of the claims listed on **Exhibit A** hereto (collectively, the "Claims to Be Disallowed") should be disallowed in their entirety.

### A. No Liability for COFINA Bondholder Claims

28.     As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively the "Partial COFINA Bondholder Claims").

29.     As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released. Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute. Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the Partial COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released. Amended

12

Confirmation  Order, ¶ 29(f).[4]  For all of these reasons, the Partial COFINA Bondholder  Claims
should  be disallowed  because these claims based on an alleged ownership  interest in COFINA
Bonds  have  been  satisfied,  released,  and/or  discharged  pursuant  to  the  Settlement  Order,
Settlement  Agreement, Amended Confirmation  Order, and Plan.

**B. No Liability  for GDB Bondholder Claims**

30.    As identified  in **Exhibit A** hereto, some of the Claims  to Be Disallowed  purport  to
assert, in part, claims based on the alleged ownership  of bonds issued by GDB (collectively,  the
"Partial GDB Bondholder  Claims").

31.    Each of the Partial GDB Bondholder  Claims  purport  to be based in part on the
ownership  of GDB Bonds that were subject to the Qualifying  Modification,  which provided  for
the issuance of new securities  in exchange  for the cancellation  of the GDB Bonds and the
extinguishment  of the  Commonwealth's  guarantee  of  certain  GDB  Bonds,  and  thus  the
Commonwealth  is no  longer  liable  for these  claims.    Accordingly,  each  of the  Partial  GDB
Bondholder  Claims  has  been  released  pursuant  to  the  approval  and  consummation  of  the
Qualifying  Modification.    As noted above, the Qualifying  Modification  provides,  among  other
things,  that holders of GDB Bonds shall release GDB and its affiliates  from claims  relating  to the
GDB Bonds and any action or omission  of GDB and its affiliates  with respect to any indebtedness
of or loan to GDB.   GDB is a public  corporation and instrumentality  of the Commonwealth.   The

---

[4] Pursuant to the Plan, "Claim"  is defined as "[a]ny right to payment or performance, whether or
not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,
unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or
asserted  or unasserted; or any right to an equitable remedy for breach or enforcement of
performance, whether or not such right  to an equitable remedy is reduced to judgment, fixed,
contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits,
damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action,
demands, or claims of every kind or nature whatsoever, in law, at equity,  or otherwise."  Plan §
1.53.

13

Commonwealth, thus, is an affiliate of GDB within the scope of the release pursuant to the Qualifying Modification. Accordingly, the Partial GDB Bondholder Claims were released upon the consummation of the Qualifying Modification on November 29, 2018. Because the Partial GDB Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### C. No Liability for Claims Based on AFICA Bonds

32.     As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed purport to assert, in part, claims based on an alleged ownership interest in AFICA Bonds for which the Commonwealth is not liable because AFICA, which is not a Title III debtor, and the asserted AFICA Bonds are not guaranteed by the Commonwealth (collectively the "Partial AFICA Bondholder Claims").

33.     Each of the Partial AFICA Bondholder Claims purports to assert liabilities against the Commonwealth associated with AFICA Bonds not guaranteed by the Commonwealth. AFICA, however, is not a Title III debtor, and is a separate, legally distinct entity from the Commonwealth. Indeed, each of the offering statements issued in connection with the AFICA Bonds states that the AFICA Bonds are not a debt of the Commonwealth or any of its political subdivisions, other than AFICA. Each of the Partial AFICA Bondholder Claims does not assert a basis for asserting a claim against the Commonwealth for bonds issued by AFICA that are neither guaranteed by nor a debt of the Commonwealth. Because the Partial AFICA Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### D.  No Liability for Claims Based on Investments in Mutual Funds

34.       As identified  in **Exhibit A** hereto, some of the Claims  to Be Disallowed  purport to be based in part on investment(s)  in one or more mutual funds that, in turn, may have invested in bonds issued by the Commonwealth  (collectively,  the "Partial Mutual Funds  Claims").

35.       A claimant bears the burden of establishing  standing to file a proof of claim.  *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well-established  that only a creditor or the creditor's authorized  agent has standing to assert a claim.   Fed. R. Bankr.  P. 3001(b); 11 U.S.C. §§ 501(a) ("A creditor or an indenture  trustee may file a proof of claim."); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture  trustee may file a proof of claim.").  Parties with merely derivative  interests lack standing to assert a claim against a debtor's estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding  party with "relationship  with Debtor [that] is not direct, but rather derivative"  was "a stranger to Debtor's bankruptcy proceedings,"  with "no claim against the estate's assets," and "as a general rule has no standing in Debtor's bankruptcy  proceedings");  *see also In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (holding  a trust beneficiary  was not a party in interest); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights  of a party in interest are asserted, those rights  must be asserted by the party in  interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself  as a party in interest "the moving party must be asserting its own rights  and not those belonging  to or derivative  of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing  the "general principle  that 'party in interest standing  does not arise if a party seeks to assert some right that is purely derivative of another party's rights  in the bankruptcy  proceeding'" (quoting  *In re Refco*, 505 F.3d at 115 n. 10)).

15

36.     "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate*,*" rather than "a creditor of one of the debtor's creditors." *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Because, at most, the Partial Mutual Funds Claims were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth, the Partial Mutual Funds Claims were not filed by an actual creditor of the Commonwealth. *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor). Instead, the Partial Mutual Funds Claims are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court. *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings"). Moreover, it is unknown whether the mutual fund still retains ownership of the suspect bonds.

37.     Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *Tr. of March 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor. To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA? MS. STAFFORD: Correct, your Honor. THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *see also Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying*

16

*Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121]. Accordingly, the claimants are not creditors of the Commonwealth and lack standing to assert derivative claims. Because the Commonwealth cannot be held liable for the Partial Mutual Funds Claims, these claims should be disallowed in their entirety.

### E.  No Liability for PRASA Senior Lien Bonds

38.     As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed purport to assert, in part, claims based on the alleged ownership of bonds issued by PRASA (collectively, the "Partial PRASA Bondholder Claims").

39.     Each of the Partial PRASA Bondholder Claims assert liabilities associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Commonwealth. The Commonwealth has not guaranteed repayment for the PRASA Senior Lien Bonds. Each of the Partial PRASA Bondholder Claims does not assert a basis for asserting a claim against the Commonwealth for bonds issued by PRASA that are not guaranteed by the Commonwealth. Because the Partial PRASA Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

40.     Because of one or more of the foregoing reasons, the Commonwealth respectfully requests that the Claims to Be Disallowed be disallowed in their entirety. In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Fifty-Sixth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Bondholder Claims Asserting Amounts for Which the Commonwealth is Not Liable*, dated September 11, 2020, attached hereto as **Exhibit B**.

17

## NOTICE

41.     In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this Two Hundred Fifty-Sixth Omnibus Objection to (a) the individual creditors subject to this Two Hundred Fifty-Sixth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.   The notice for this Two Hundred Fifty-Sixth Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations are being filed and served with this objection of the Two Hundred Fifty-Sixth Omnibus Objection and supporting exhibits attached hereto. The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

42.     This Two Hundred Fifty-Sixth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in these Title III proceedings to object to the Claims to Be Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party

in interest in these Title III proceedings under PROMESA, the Bankruptcy Code or any other applicable law.

## NO PRIOR REQUEST

43.     No prior request for the relief sought in this Two Hundred Fifty-Sixth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: September 11, 2020
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth of Puerto Rico*

**Fecha de la vista: 28 de octubre de 2020, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 14 de octubre de 2020, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*,<br><br>Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

**DUCENTÉSIMA QUINCUAGÉSIMA SEXTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DE LOS BONISTAS QUE RECLAMAN MONTOS POR LOS QUE EL ELA NO TIENE RESPONSABILIDAD**

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente ducentésima quincuagésima sexta objeción global (la "Ducentésima quincuagésima sexta objeción global") en la que se solicita que se rechacen en su totalidad las evidencias de reclamaciones mencionadas en el **Anexo A** del presente documento, cada una de las cuales se basa presuntamente en el endeudamiento en su totalidad o en parte, por los que el ELA no tiene responsabilidad, puesto que la reclamación alega responsabilidad sobre la base de a) una participación patrimonial en bonos emitidos por la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"); b) una participación patrimonial en bonos emitidos por el Banco Gubernamental de Fomento para Puerto Rico (el "BGF"); c) una participación patrimonial en bonos emitidos por la AFICA (según se define abajo), que no es deudor de Título III, y por los montos cuyo reembolso el ELA no ha garantizado; d) inversiones en fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por el ELA; y/o e) una participación patrimonial en bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA"), que no es Deudor de Título III, y por los montos cuyo reembolso el ELA no ha garantizado. En apoyo de la Ducentésima quincuagésima sexta objeción global, el ELA manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

2

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A. Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").

4.      El 5 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para COFINA conforme a la sección 304(a) de PROMESA, iniciando un caso de Título III de dicho cuerpo legal (el "Caso de Título III de COFINA", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 1 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta del Caso de Título III del ELA y el Caso de Título III de COFINA únicamente con fines procesales. ECF núm. 242.[3]

5.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas

---

[3] Salvo disposición en contrario contenida en el presente documento, todas las citas ECF harán referencia al Caso núm. 17-BK-3283-LTS.

límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III del ELA. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B. Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA**

6.      COFINA es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 91 de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias, COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los "Bonos COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los Bonos COFINA.

7.      La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* (el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

8.      El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la conciliación de la controversia sobre si, luego de examinar todas las contestaciones y

4

reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos sobre la venta y uso supuestamente empeñados por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el título III de PROMESA, y B) acontecimiento de la Fecha de Entrada en Vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

**C. Procedimientos conforme al Título VI del BGF y modificación calificada**

9.      El BGF es una entidad pública y organismo gubernamental del ELA, creado por la Asamblea Legislativa en 1948 para ayudar al Gobierno del ELA (el "Gobierno") a llevar a cabo sus tareas fiscales y a desempeñar su responsabilidad con mayor eficacia en relación con el desarrollo de la economía del ELA. El 28 de abril de 2017, la Junta de Supervisión aprobó por unanimidad el Plan fiscal del BGF de febrero de 2017, que contemplaba una terminación ordenada

5

de las actividades del BGF sobre la base de la determinación de que el BGF no era viable a largo plazo dadas sus condiciones financieras vigentes en ese momento.

10.    El 12 de julio de 2017, la Junta de Supervisión dictó una resolución por la que se autorizaba al BGF, conforme a la sección 601(e) de PROMESA, a ampararse en el Título VI de PROMESA. El 10 de agosto de 2018, el BGF radicó una solicitud de aprobación de una modificación calificada, conforme a la sección 601(m)(1)(D) de PROMESA (la "Modificación Calificada"), ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

11.    El 7 de noviembre de 2018, el Tribunal aprobó la Modificación calificada conforme al artículo 601(m)(1)(D) de PROMESA. *Véase* ECF núm. 270 en Banco Gubernamental de Fomento para Puerto Rico, Caso núm. 18-1561 (D.P.R. 7 de nov. de 2018). La Modificación Calificada disponía, entre otras cosas, i) la emisión de nuevos bonos por la Autoridad de Recuperación de Deuda del BGF (*GDB Debt Recovery Authority*) a cambio de la cancelación (entre otras cosas) i) de determinados bonos de participación y reclamaciones de bonos garantizados (conjuntamente, "Bonos del BGF"). ii) la extinción de la garantía del ELA de los bonos garantizados tras el intercambio y cancelación de los bonos garantizados; y iii) la liberación de reclamaciones de los tenedores de los Bonos del BGF contra el BGF y sus afiliados en relación con (entre otras cosas) cualquier inversión con el BGF o una compra, venta o transferencia de cualquier garantía o derecho del BGF, y cualquier acción u omisión con respecto a un endeudamiento o préstamo al BGF (incluidos cualesquiera pagarés emitidos o depósitos poseídos por el BGF) o del BGF. Declaración de solicitación, en 57-60, núm. ECF. 1 en *Banco Gubernamental de Fomento para Puerto Rico*, Caso núm. 18-1561 (D.P.R. 10 de ago. de 2018).

12.    El 29 de noviembre de 2018, el BGF anunció la consumación de la Modificación Calificada relativa al BGF. Nota de prensa, *el Gobierno de Puerto Rico anuncia la consumación*

6

*de la Modificación calificada relativa al BGF*, gobernador de Puerto Rico (29 de nov. de 2018),

disponible   en   http://www.aafaf.pr.gov/assets/gov-pr-announces-consummation-gdb-qualifying-

modification.pdf.

### D. Deuda de los bonos emitidos por la Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental

13.      La Autoridad para el Financiamiento de Facilidades Industriales, Turísticas,

Educativas, Médicas y de Control Ambiental de Puerto Rico (la "AFICA") es una corporación

pública y organismo gubernamental del ELA creada por la Ley núm. 121 de la Asamblea

Legislativa de Puerto Rico, aprobada el 27 de junio de 1977 (en su versión enmendada,

complementada y codificada en las Leyes de Puerto Rico, Título 12, § 1251 y siguientes). Leyes

de Puerto Rico, Título 12, § 1254. La AFICA facilita el financiamiento de los proyectos para

fomentar el desarrollo económico del ELA, lo que incluye medidas para la promoción y

construcción de nuevas infraestructuras industriales, comerciales, turísticas, agrícolas, educativas,

médicas y de control medioambiental.

14.      En 1999, la AFICA emitió Bonos de Renta Industrial, 1999 Serie A (los "Bonos

Doral Financial 1999"), por un monto total de $44,765,000.00, para financiar, en parte, la

construcción del Doral Financial Center. Los Bonos Doral Financial 1999 son pagaderos

únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA, de una

parte, y Doral Financial Corporation y Doral Properties, de la otra. Además, Doral Financial

Corporation "garantizó incondicionalmente" los Bonos Doral Financial 1999. La declaración de

oferta emitida en relación con los Bonos Doral Financial 1999 dispone que "[los Bonos Doral

Financial 1999] no constituyen deuda del Gobierno de Puerto Rico". *Véase, por ejemplo*,

Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y

de Control Ambiental, Declaración de Oferta, Bonos de Renta Industrial, Serie 1999A (Proyecto

7

Doral Financial Center), *disponible en* https://emma.msrb.org/Security/Details/A3680EBA7C2CF40DB443B3B0E5DA28925.

15.     En 2011, la AFICA emitió Bonos de Renta de Refinanciamiento Industrial, 1999 Serie A (los "Bonos Galería 2011 Serie A", y junto con los Bonos Doral Financial 1999, los "Bonos AFICA") por un monto total de $59,649,744.50 para financiar, en parte, el funcionamiento de cierto espacio comercial minorista y de oficinas perteneciente y operada por Caparra Hills, Inc. Los Bonos Galería 2011 Serie A, son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA y Caparra Hills, Inc. La declaración de oferta emitida en relación con los Bonos Galería 2011 Serie A dispone que los bonos "no constituyen endeudamiento del ELA ni de ninguna de sus subdivisiones políticas, salvo [la AFICA], y ni el ELA ni ninguna de sus subdivisiones políticas, salvo [la AFICA], será responsable de su pago". *Véase, por ejemplo*, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta Industrial 2011 Serie A (Proyecto Galería Tower en San Patricio), disponible en https://emma.msrb.org/Security/Details/A95ABBB582ECE40E0D6ED039C687C3542.

**E. Deuda de los bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

16.     La AAA fue creada de conformidad con la Ley núm. 40 el 1 de mayo de 1945. La AAA es una corporación del Gobierno de Puerto Rico y fue creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 144.

17.     La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g). Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7 de marzo de 2008 (la "Resolución núm. 1583"). En 2008, la AAA emitió unos bonos de renta,

Serie A, por un monto del principal de $1,316,204,456 (los "Bonos Prioritarios Serie A 2008").

Además en 2012, la AAA emitió simultáneamente unos bonos de renta, Serie 2012 A, por un monto del principal de $1,800,450,00 (los "Bonos Prioritarios Serie A 2012") y unos bonos de renta, Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos Prioritarios Serie B 2012", y junto con los Bonos Prioritarios Serie A 2012 y los Bonos Prioritarios Serie A 2008, los "Bonos de Gravamen Prioritarios de la AAA").

18.     Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de la AAA, cuando tales bonos hayan sido pagaderos. El ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios.

**F.  Evidencias de reclamaciones radicadas contra el ELA, los Procedimientos relativos a objeciones globales y las Objeciones a reclamaciones**

19.     Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

20.     De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

21.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

22.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de*

*Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

23. Conforme a los Procedimientos originales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal celebró vistas vinculadas con 123 objeciones globales radicadas por el ELA, COFINA, la Autoridad de Carreteras y Transportación de Puerto Rico ("ACT") y/o el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("SRE"), así como con 33 objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30 de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otras reclamaciones fueron reclasificadas como radicadas contra otros Deudores. Veintidós objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 11 de diciembre de 2019. Además, 27 objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en

11

el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

24.    La presente Ducentésima quincuagésima sexta objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

25.    Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamaciones debidamente formalizada y radicada constituye una prueba *prima facie* de validez de la reclamación, *véase* R. R. del Proc. de Quiebr. 3001(f), aplicable al presente procedimiento en virtud de la sección 310 de PROMESA, la parte que radique la objeción podrá superar dicha evidencia *prima facie* con pruebas que, según su criterio, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que la parte que radique la objeción haya introducido evidencias suficientes para refutar el caso *prima facie* de del reclamante". (se omite cita)).

26.    Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

27.    La Ducentésima quincuagésima sexta objeción global pretende que se rechacen, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones

de los bonistas que reclaman montos por los que el ELA no tiene responsabilidad porque en la reclamación se alega responsabilidad por a) una participación patrimonial en bonos emitidos por COFINA; b) una participación patrimonial en bonos emitidos por BGF; c) una participación patrimonial en bonos emitidos por la AFICA, que no es Deudor de Título III, y cuyas responsabilidades no están garantizadas por el ELA; d) inversiones en fondos mutuos que, a su vez, pudieron haber invertido en bonos emitidos por el ELA; e) una participación patrimonial en bonos emitidos por la AAA, que no es Deudor de Título III, y cuyas responsabilidades no están garantizadas por el ELA. El **Anexo A** especifica además por qué cada una de las reclamaciones mencionadas en el **Anexo A** del presente documento (conjuntamente, "Reclamaciones que han de ser rechazadas") debe ser rechazada en su totalidad.

### A. Ausencia de responsabilidad por reclamaciones relativas a los bonistas de COFINA

28.     Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas contienen presuntamente reclamaciones basadas, en parte, en supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones parciales relativas a los bonistas de COFINA").

29.     Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia relativa al ELA y a COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido rechazado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia

13

entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación
Enmendada, este tipo de reclamaciones (por ejemplo, las Reclamaciones parciales relativas a los
bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA,
fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f).[4]  Por todos esos motivos, las
Reclamaciones parciales relativas a los bonistas de COFINA deben rechazarse porque dichas
reclamaciones basadas en una presunta participación patrimonial en los Bonos COFINA han sido
satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de
Conciliación, la Orden de Confirmación Enmendada y el Plan.

**B. Ausencia de responsabilidad por reclamaciones relativas a los bonistas del BGF**

30.     Conforme a lo identificado en el **Anexo A** del presente documento, algunas
Reclamaciones que han de ser rechazadas contienen presuntamente reclamaciones basadas, en
parte, en supuesta participación patrimonial en los bonos emitidos por BGF (conjuntamente, las
"Reclamaciones parciales relativas a los bonistas del BGF").

31.     La totalidad de las Reclamaciones relativas a los bonistas del BGF supuestamente
se basan, en parte, en la participación patrimonial en los Bonos del BGF objeto de la Modificación
Calificada, que dispuso la emisión de nuevos títulos de valores a cambio de la cancelación de los
Bonos del BGF y la extinción de la garantía del ELA relativa a determinados Bonos del BGF, por
lo que el ELA ya no tiene responsabilidad con respecto a dichas reclamaciones. En consecuencia,

---

[4] Conforme al Plan, "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento,
independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, accidental,
vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado,
conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por
incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en
equidad consta en una sentencia, es fijo, accidental, vencido, no vencido, controvertido, no controvertido,
garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y
perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas
radicadas, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de
cualquier otra forma". Plan § 1.53.

cada una de las Reclamaciones parciales relativas a los bonistas del BGF ha sido liberada conforme a la aprobación y la consumación de la Modificación Calificada. Como se señaló anteriormente, la Modificación Calificada dispone, entre otras cosas, que los tenedores de los Bonos del BGF liberarán al BGF y sus afiliados de las reclamaciones relacionadas con los Bonos del BGF, y de cualquier acción u omisión del BGF y sus afiliados con respecto a todo endeudamiento del BGF o préstamo al BGF. El BGF es una entidad y organismo público del ELA. En consecuencia, el ELA es un afiliado del BGF según el ámbito de la liberación conforme a la Modificación Calificada. Por tanto, las Reclamaciones parciales relativas a los bonistas del BGF fueron liberadas tras la consumación de la Modificación Calificada el 29 de noviembre de 2018. Puesto que las Reclamaciones parciales relativas a los bonistas del BGF son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no tiene responsabilidad.

**C.  Ausencia de responsabilidad relativa a reclamaciones basadas en los Bonos AFICA**

32.  Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas contienen presuntamente reclamaciones basadas, en parte, en los Bonos AFICA por los que el ELA no tiene responsabilidad porque la AFICA, que no es deudor de Título III, y los Bonos AFICA alegados no están garantizados por el ELA (conjuntamente, las "Reclamaciones parciales relativas a los bonistas de la AFICA").

33.  Cada una de las Reclamaciones parciales relativas a los bonistas de la AFICA pretende alegar responsabilidades contra el ELA vinculadas con los Bonos AFICA que no están garantizados por el ELA. Sin embargo, la AFICA no es deudor de Título III y es una entidad separada y jurídicamente independiente del ELA. En efecto, cada una de las declaraciones de oferta emitidas en relación con los Bonos AFICA dispone que los Bonos AFICA no constituyen deuda

del ELA ni de ninguna de sus subdivisiones políticas, con la excepción de AFICA. Ninguna de las Reclamaciones parciales relativas a los bonistas de la AFICA proporciona fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AFICA que no están garantizados por el ELA ni constituyen su deuda. Puesto que las Reclamaciones parciales relativas a los bonistas de la AFICA son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no tiene responsabilidad.

### D. Ausencia de responsabilidad relativa a reclamaciones basadas en inversiones en fondos mutuos

34.    Conforme a lo identificado en el **Anexo A** del presente, algunas Reclamaciones que han de ser rechazadas presuntamente se basan, en parte, en inversión(es) en uno o varios fondos mutuos que, a su vez, pudieron haber invertido en los bonos emitidos por el ELA (conjuntamente, "Reclamaciones relativas a fondos mutuos parciales").

35.    Los reclamantes tienen la carga de la prueba para demostrar legitimación a efectos de radicar una evidencia de reclamaciones. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. R. del Proc. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra los bienes de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada" era "persona ajena en relación con el procedimiento de quiebra del Deudor", sin "ninguna posibilidad de

16

reclamar contra los activos" y "como regla general, no tiene legitimación en relación con el procedimiento de quiebra del Deudor"); *véase también In re Tower Park Properties, LLC,* 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era parte interesada); *In re Refco Inc.,* 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López,* 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes,* 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco,* 505 F.3d at 115 n. 10)).

36.    "Un acreedor, conforme al Código [de Quiebras], es el que tiene reclamación *contra el deudor* o los bienes", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores,* 207 B.R. 57, 61 (S.D.N.Y. 1997). Puesto que, a lo sumo, las Reclamaciones relativas a fondos mutuos parciales fueron radicados en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA, las Reclamaciones relativas a fondos mutuos parciales no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann,* 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el destinatario carecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones relativas a fondos mutuos parciales se derivan de las reclamaciones que deben hacerse valer por los fondos mutuos directamente para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman,* 82 B.R. en 896

(donde se concluye que una parte con una relación "derivada" no puede "reclamar los activos" y "como regla general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si el fondo mutuo sigue ostentando la propiedad de los bonos controvertidos.

37.    En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamaciones radicadas contra COFINA por unos inversores en los fondos mutuos que, a su vez, invirtieron presuntamente en los bonos de COFINA, por "carecer de interés individual en los títulos de valores de COFINA". *Tr. del 13 de marzo de 2019 de la aud. ante su señoría, Laura Taylor Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: De modo que, para que lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente los bonos de COFINA, el fondo mutuo sería el reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos de valores de COFINA."); *véase también la Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en las inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470 y 152283* [ECF núm. 9121]. En consecuencia, los reclamantes no son acreedores del ELA y carecen de legitimación para hacer valer reclamaciones derivadas. Puesto que al ELA no se le puede atribuir la responsabilidad por las Reclamaciones relativas a fondos mutuos parciales, dichas reclamaciones deben rechazarse en su totalidad.

**E.  Ausencia de responsabilidad relativa a los Bonos AAA de gravamen prioritarios**

38.     Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas contienen presuntamente reclamaciones basadas, en parte, en supuesta participación patrimonial en los bonos emitidos por la AAA (conjuntamente, las "Reclamaciones parciales relativas a los bonistas de la AAA").

39.     Cada una de las Reclamaciones parciales relativas a los bonistas de la AAA alega responsabilidades vinculadas con los Bonos AAA de gravamen prioritarios emitidos por la AAA, que no es Deudor de Título III, y es una entidad separada y jurídicamente independiente del ELA. El ELA no ha garantizado el reembolso de los Bonos AAA de gravamen prioritarios. Ninguna de las Reclamaciones parciales relativas a los bonistas de la AAA proporciona fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AAA que no están garantizados por el ELA. Puesto que las Reclamaciones parciales relativas a los bonistas de la AAA son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no tiene responsabilidad.

40.     Por uno o más de los motivos mencionados, el ELA solicita respetuosamente que las Reclamaciones que han de ser rechazadas sean rechazados en su totalidad. En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Ducentésima quincuagésima sexta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones de los bonistas que solicitan montos por los que el ELA no tiene responsabilidad*, de fecha 11 de septiembre de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

41.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, el ELA notifica la presente Ducentésima quincuagésima sexta objeción global a) a los acreedores individuales objeto de esta Ducentésima quincuagésima sexta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Ducentésima quincuagésima sexta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima quincuagésima sexta objeción global y de la totalidad de los anexos justificativos que se adjuntan al presente se radican y envían con la presente objeción. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

42.     La presente Ducentésima quincuagésima sexta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas de dichos procedimientos radicados conforme al Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas de dichos procedimientos

radicados conforme Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas de estos procedimientos radicados conforme Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

43.   No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima quincuagésima sexta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 11 de septiembre de 2020
    San Juan (Puerto Rico)                    Respetuosamente sometida,

                                              [*Firma en la versión en inglés*]
                                              Hermann D. Bauer
                                              USDC núm. 215205
                                              Daniel J. Pérez-Refojos
                                              USDC núm. 303909
                                              Gabriel A. Miranda
                                              USDC núm. 306704
                                              **O'NEILL & BORGES LLC**
                                              250 Avenida Muñoz Rivera, local 800
                                              San Juan, PR 00918-1813
                                              Tel.: (787) 764-8181
                                              Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión
y Administración Financiera para
Puerto Rico como representante del
Estado Libre Asociado de Puerto
Rico*

22