Hearing Date: October 28, 2020, at 9:30 AM (Atlantic Standard Time)
Response Deadline: October 14, 2020, at 4:00 PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

                   Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**This filing relates to the Commonwealth.**

## TWO HUNDRED FIFTY-NINTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE AND INCORRECT DEBTOR BONDHOLDER CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as the Commonwealth's representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred fifty-ninth omnibus objection (the "Two Hundred Fifty-Ninth Omnibus Objection") seeking to disallow portions of the proofs of claim listed on **Exhibit A** hereto, each of which purports, in part, to be based on bonds that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds. Additionally, each of the claims listed on **Exhibit A** hereto should be partially reclassified because a portion of the claim identifies the Commonwealth as obligor, when that portion of the claim is properly asserted, if at all, against PREPA. In support of the Two Hundred Fifty-Ninth Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A. The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

## B.  Bond Debt Master Proofs of Claim – Commonwealth Title III Case

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents. Initial Bar Date Order, ¶ 5(a).

6.      The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution") became effective in 1952. The P.R. Constitution created the Commonwealth as the central government of Puerto Rico, "republican in form.". *See* P.R. Const., Art. I, §§ 1, 2. The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

on the ability of the Commonwealth to pledge its revenues. *See* P.R. Const., Art. VI, § 2. In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

7.      As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes issued by Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA").

8.      *HTA*—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.  On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured,

contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[4]

9.      ___ERS___—ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees. ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A § 775. Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds") in the aggregate original principal amount of approximately $2.9 billion.[5]   BNYM serves as the fiscal agent with respect to the ERS Bonds.   On behalf of the holders of the ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS-CW Master Proof of Claim"), asserting claims against ERS based on, among other things, the enactment of Joint Resolution 188 and Law 106, which together created a "pay as you go"

---

[4]  While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

[5]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void. On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*. ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

retirement system whereby pensioners are paid from the general funds of the Commonwealth, instead of Employers' Contributions, which is alleged to be collateral for the Bonds. BNYM initially filed one proof of claim that was logged by Prime Clerk, LLC ("Prime Clerk"), on May 24, 2018 as Proof of Claim No. 16775, and then filed an amended claim, on May 25, 2018, that was logged by Prime Clerk as Proof of Claim No. 32004.[6]

10.    **_PRIFA_**—PRIFA is an affiliate of the Government Development Bank ("GDB") and is a government instrumentality of the Commonwealth. PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act"). PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities. On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A. US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating

---

[6] On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim. *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent* (Claim No. 16775) [ECF No. 7075]. For the avoidance of doubt, this Two Hundred Twenty-Fifth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ." Rider to Proof of Claim No. 13386, ¶ 26.

11.     Certain bonds or notes issued by HTA have been insured by one of several municipal bond insurers, either on the primary market or on the secondary market. Municipal bond insurance is obtained on the primary market when the municipality issuing the bonds engages an insurance company to underwrite an insurance policy for that series of bonds. In the event that a bond is not insured on the primary market, holders of such uninsured bonds may elect to obtain insurance via the secondary market. Holders of uninsured bonds who seek to obtain insurance in the secondary market contract directly with a municipal bond insurer and the original issuer is not part of this contract process. When a holder of an uninsured bond obtains an insurance policy on the secondary market, a new CUSIP number is issued which corresponds to the original CUSIP numbers assigned to the bonds at the time of issuance. Certain bonds issued by HTA have been insured on the secondary market and, accordingly, have been issued new CUSIP numbers which correspond to bonds issued by HTA bearing original CUSIP numbers (the "HTA Secondarily Insured Bonds").

### C. Proofs of Claim Filed Against the Commonwealth, the Omnibus Objection Procedures, and Claim Objections

12.     To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

13.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth. In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable,

being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

14.   In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion"). The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures"). On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

15.   In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "<u>Amended Omnibus</u> <u>Objection Procedures</u>").

16.   Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held hearings related to one hundred twenty-three omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>"), HTA, and/or ERS, as well as thirty-three individual objections.  After hearings held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-two individual objections, resulting in thousands of proofs of claim filed against the Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of other claims being partially reclassified to be asserted against another of the Debtors.  Twenty-two omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on December 11, 2019.  Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020.  Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS, have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

17.   This Two Hundred Fifty-Ninth Partial Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

18.   Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly

executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

19.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

20.     The Two Hundred Fifty-Ninth Omnibus Objection seeks to disallow portions of the proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Partially Disallowed and Partially Reclassified"), each of which is duplicative in part of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds. The remaining portions of the Claims to Be Partially Disallowed and Partially Reclassified should be reclassified because they identify the Commonwealth as obligor when those portions are properly asserted, if at all, against PREPA. **Exhibit A** hereto further specifies why each of the Claims to Be Partially Disallowed and Partially Reclassified should be disallowed in part and reclassified in part.

### A. Partial Duplicate Bond Claims

21.     As set forth in **Exhibit A** hereto, each the Claims to Be Partially Disallowed and Partially Reclassified purport to assert liability, in part, on the basis of bonds issued by, ERS, HTA, and PRIFA (collectively, the "Partial Duplicate Bond Claims").

22.     Each of the Partial Duplicate Bond Claims purports to assert, in part, liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Commonwealth Title III Case on behalf of the holders of certain bonds issued by ERS, HTA, and PRIFA. Any failure to disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case. The holders of the Duplicate Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master Claims.

### B. Partial Duplicate Secondarily Insured Claims

23.     Each of the Claims to Be Partially Disallowed and Partially Reclassified purports to assert, in part, liabilities against the Commonwealth associated with one or more HTA Secondarily Insured Bonds ("Partial Secondarily Insured Bond Claims").

24.     The CUSIP numbers associated with such HTA Secondarily Insured Bonds correspond to bonds issued by HTA bearing original CUSIP numbers. Those original CUSIP numbers, which reflect bond issuances in which the claimants hold ownership interests, are listed in one or more Master Claims. Therefore, the Secondarily Insured Bonds assert liabilities associated with bonds issued by HTA that are duplicative of liabilities asserted by one or more Master Claims. Any failure to disallow the Partial Secondarily Insured Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case. The holders of the Partial Secondarily Insured Bond Claims will not be prejudiced by the partial

disallowance of their claims because the liabilities associated with the Duplicate Bond Claims are subsumed within one or more Master Claims.

### C. Partially Reclassified Bond Claims

25.     Finally, the remaining portion of each of the Claims to Be Partially Disallowed and Partially Reclassified identifies the Commonwealth as the obligor, when such portion is properly asserted, if at all, against PREPA, and asserts liability, in part, on the basis of bonds issued by PREPA (collectively, the "Partially Reclassified Bond Claims").

26.     In each of the Partially Reclassified Bond Claims, the claimant purported to assert, in part, liabilities associated with municipal bond(s), but the proof of claim, supporting documentation provided by the claimant, and/or CUSIP information show that the portions of the liabilities associated with the Partially Reclassified Bond Claims would appropriately be asserted, if at all, against PREPA. Accordingly, the Partially Reclassified Bond Claims should be reclassified, in part, to be asserted against PREPA, the Title III debtor identified in the column titled "Corrected" in **Exhibit A** hereto. The Commonwealth reserves its right to object to any part of the Partially Reclassified Bond Claims on any other grounds whatsoever.

27.     Because of one or more of the foregoing reasons, the Commonwealth respectfully requests that the portions of the Claims to Be Partially Disallowed and Partially Reclassified that are duplicative of one or more master proofs of claim be disallowed, and the portions associated with bonds issued by PREPA be reclassified to the PREPA Title III case. In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Fifty-Ninth Partial Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Duplicate Bondholder and Incorrect Debtor Bondholder Claims*, dated September 11, 2020, attached hereto as **Exhibit B**.

## NOTICE

28.     In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this Two Hundred Fifty-Ninth Partial Omnibus Objection to (a) the individual creditors subject to this Two Hundred Fifty-Ninth Partial Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.     The notice for this Two Hundred Fifty-Ninth Partial Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations are being filed and served with this objection of the Two Hundred Fifty-Ninth Partial Omnibus Objection and supporting exhibits attached hereto.   The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## RESERVATION OF RIGHTS

29.     This Two Hundred Fifty-Ninth Omnibus Objection is limited to the grounds stated herein.   Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in these Title III proceedings to object to the Claims to Be Partially Disallowed and Partially Reclassified or any other claims on any ground whatsoever. The Debtors expressly reserve all further substantive or procedural objections.   Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of

the rights of the Debtors or any other party in interest in these Title III proceedings under PROMESA, the Bankruptcy Code or any other applicable law.

### **NO PRIOR REQUEST**

30.     No prior request for the relief sought in this Two Hundred Fifty-Ninth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: September 11, 2020
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth of Puerto Rico*

**Fecha de la vista: 28 de octubre de 2020, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 14 de octubre de 2020, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: | PROMESA |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | Título III |
| como representante del | Núm. 17 BK 3283-LTS |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*, | (Administrado Conjuntamente) |
| Deudores.[1] | **La presente radicación guarda relación con el ELA.** |

**DUCENTÉSIMA QUINCUAGÉSIMA NOVENA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DE LOS BONISTAS DUPLICADAS Y ALEGADAS CONTRA EL DEUDOR INCORRECTO**

A la Honorable Juez de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente ducentésima quincuagésima novena objeción global (la "Ducentésima quincuagésima novena objeción global") en la que se solicita que se rechacen partes de las evidencias de reclamaciones mencionadas en el **Anexo A** del presente documento, cada una de las cuales pretende basarse parcialmente en los bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos. Además, cada una de las reclamaciones mencionadas en el **Anexo A** del presente documento debe reclasificarse parcialmente, ya que parte de la reclamación identifica al ELA como deudor, cuando lo correcto sería dichas partes de la reclamación se radicaran, en su caso, contra la AEE. En apoyo de la Ducentésima quincuagésima novena objeción global, el ELA manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.  Órdenes de Fecha Límite

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255][3] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III del ELA. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.  Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA**

5.      Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamaciones principal contra el deudor pertinente, en su propio nombre y en el de todos los

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

tenedores de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a).

6.      La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de Puerto Rico") entró en vigor en 1952. La Constitución de Puerto Rico creó el ELA como el Gobierno central de Puerto Rico, de "forma republicana.". *Véase* Const. de Puerto Rico, artículo I, §§ 1, 2. La Constitución de Puerto Rico autoriza al ELA a emitir deuda, con sujeción a determinadas limitaciones, incluida la capacidad del ELA de empeñar sus rentas. *Véase* Const. de Puerto Rico, artículo VI § 2. En 1961, la sección 2 del artículo VI de la Constitución de Puerto Rico fue modificada para limitar la contracción de la deuda por parte del ELA sobre la base del monto de la deuda que el ELA tuviera que haber pagado en relación con sus rentas históricas.

7.      Como se explica más adelante, las evidencias de reclamaciones principales (conjuntamente, la "Reclamaciones Principales") han sido radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos emitidos por la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), el Sistema de Retiro de los Empleados del Gobierno del estado Libre Asociado de Puerto Rico (el "SRE") y la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI").

8.      *ACT*: la ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley para crear la ACT"). La ACT se encarga de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias

4

series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i*) Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y *ii*) Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución 1998"). Desde el 21 de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT. En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III del ELA (la "Reclamaciones principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA, en virtud de la ley o equidad. . . ." *Véase* Adenda de la Evidencia de reclamaciones núm. 121053, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 120982, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 115380, ¶ 15.[4]

9.    **SRE**: el SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar económico de los empleados públicos. El SRE es un organismo gubernamental, separado e independiente del Gobierno del ELA y de otros de sus órganos. *Véase* 3 L.P.R.A. § 775. Presuntamente, conforme a la *Resolución sobre bonos para el financiamiento de pensiones*, adoptada el 24 de enero de 2008, y las resoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados relativos al financiamiento de pensiones (los "Bonos del SRE"), por un

---

[4] Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime Clerk como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

monto total del principal de aproximadamente $2900 millones. [5] BNYM actúa como agente fiscal con respecto a los Bonos del SRE. En nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamaciones principal en el marco del Caso de Título III del ELA (la "Evidencia de reclamaciones principal SRE-ELA"), alegando reclamaciones contra el SRE entre otras cosas sobre la base de la adopción de la Resolución conjunta 188 y la Ley 106, que juntas crearon un sistema de retiro "pay as you go" en virtud del cual los pensionados reciben pagos de los fondos generales del ELA, en lugar de las Contribuciones de los empleadores, que presuntamente constituye garantía de los Bonos. BNYM radicó inicialmente una evidencia de reclamaciones que fue registrada por Prime Clerk, LLC ("Prime Clerk"), el 24 de mayo de 2018, como Evidencia de reclamaciones núm. 16775, y posteriormente radicó una reclamación enmendada, el 25 de mayo de 2018, que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 32004.[6]

---

[5] El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamaciones radicadas por los tenedores de los bonos emitidos por el SRE* [Caso núm. 17-3566, ECF núm. 381], sobre el motivo de que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme al Código de Quiebras, artículo 502, y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [ECF núm. 6482], sobre el motivo, entre otros, de que la emisión de los bonos fue *ultra vires*. El SRE se reserva los derechos a impugnar la emisión de los bonos sobre cualquier motivo, también sobre el motivo de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

[6] El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de reclamaciones principal del SRE. *Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal* (Reclamación núm. 16775) [ECF núm. 7075]. En aras de la claridad, la presente Ducentésima vigésima quinta objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, lo que incluye cualesquiera derechos a intervenir, que quedan reservados.

10.      _**AFI**_: la AFI es una filial del Banco Gubernamental de Fomento (el "BGF") y
constituye una dependencia del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley
núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y
de otro tipo al ELA, a sus corporaciones públicas y a otras dependencias encargadas del desarrollo
y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés
emitidos por la AFI (conjuntamente, "Bonos de la AFI"), se radicaron evidencias de reclamaciones
principales contra el ELA (conjuntamente, las "Reclamaciones principales de la AFI") por parte
de BNYM, US Bank y UMB Bank, N.A. US Bank radicó una evidencia de reclamaciones principal
en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia
de reclamaciones núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a
impuestos sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B,
2005C y serie 2006B), alegando "reclamaciones por montos contingentes y no liquidados en
relación con los intereses pagaderos a futuro, intereses acumulados y que se acumulen en el futuro
en lo referente al principal adeudado en el pasado y las reclamaciones por intereses, tarifas, costos
e indemnización del Fiduciario en los que se incurra en el futuro en virtud de los Documentos de
bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que
tenga o pueda tener el Fiduciario en relación con las Obligaciones de bonos pendientes, monto
mínimo de $249,099,446.17. . . ." Cláusula de la Evidencia de reclamaciones núm. 13386, ¶ 26.

11.      Determinados bonos o pagarés emitidos por la ACT han sido asegurados por una o
más aseguradoras de bonos municipales en el mercado primario o en el secundario. El seguro de
bonos municipales se obtiene en el mercado primario cuando el municipio emisor de los bonos
contrata una compañía de seguros para suscribir una póliza de seguro en relación con dicha serie
de bonos. En el caso de que un bono no se asegure en el mercado primario, los tenedores de tales

bonos no asegurados podrían optar por obtener un seguro a través del mercado secundario. Los tenedores de los bonos no asegurados que pretendan obtener un seguro en el mercado secundario entran en una relación contractual directamente con una aseguradora de bonos municipales, por lo que el emisor original no es parte en dicho proceso de contratación. Cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de su emisión. Determinados bonos emitidos por la ACT han sido asegurados en el mercado secundario y, en consecuencia, se han emitido nuevos números CUSIP que corresponden a los bonos emitidos por la ACT que llevan números CUSIP originales (los "Bonos ACT asegurados en el mercado secundario").

### C.  Evidencias de reclamaciones radicadas contra el ELA, los Procedimientos relativos a objeciones globales y las Objeciones a reclamaciones

12.    Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

13.    De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

14.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

15.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de*

*Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado*
[ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio
de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B)
exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas
de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

16.     Conforme a los Procedimientos originales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal celebró vistas
vinculadas con 123 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés
Apremiante de Puerto Rico ("COFINA"), la ACT y/o el SRE, así como con 33 objeciones
individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de
abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30
de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo
cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el
SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otras reclamaciones fueron
reclasificadas parcialmente como radicadas contra otros Deudores. Veintidós objeciones globales
a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas
oralmente el 11 de diciembre de 2019. Además, 27 objeciones globales a reclamaciones radicadas
contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020.
Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente
56,000 reclamaciones que reivindicaban aproximadamente $43 billones en responsabilidad contra
el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del registro de

reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

17.     La presente Ducentésima quincuagésima novena objeción global parcial se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

### OBJECIONES A EVIDENCIAS DE RECLAMACIONES

18.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamaciones debidamente formalizada y radicada constituye una prueba *prima facie* de validez de la reclamación, *véase* R. R. del Proc. de Quiebr. 3001(f), aplicable al presente procedimiento en virtud de la sección 310 de PROMESA, la parte que radique la objeción podrá superar dicha evidencia *prima facie* con pruebas que, según su criterio, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que la parte que radique la objeción haya introducido evidencias suficientes para refutar el caso *prima facie* de del reclamante". (se omite cita)).

19.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

20.     La Ducentésima quincuagésima novena objeción global pretende que se rechacen partes de las evidencias de reclamaciones que aparecen en el **Anexo A** del presente documento

11

(conjuntamente, las "Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente"), cada una de las cueles constituye un duplicado con respecto a una o más de las evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos. Las partes restantes de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente deben reclasificarse porque identifican al ELA como deudor, cuando lo correcto sería que dichas partes se alegaran, en su caso, contra la AEE. El **Anexo A** especifica además por qué cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente debe ser rechazada parcialmente y reclasificada parcialmente.

### A. Reclamaciones parcialmente duplicadas por bonos

21.     Según se expone en el **Anexo A** del presente documento, cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretende alegar responsabilidad, en parte, sobre la base de los bonos emitidos por el SRE, la ACT y la AFI (conjuntamente, las "Reclamaciones parcialmente duplicadas por bonos").

22.     Cada una de las Reclamaciones parcialmente duplicadas por bonos pretende alegar, en parte, responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos emitidos por el SRE, la ACT y la AFI. Si las Reclamaciones parcialmente duplicadas por bonos no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los autores de las Reclamaciones duplicadas por bonos no se verán perjudicados por el hecho de que se rechacen parcialmente sus

reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones duplicadas por bonos figuran en una o más Reclamaciones Principales.

**B. Reclamaciones parcialmente duplicadas aseguradas en el mercado secundario**

23.      Cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretende alegar, en parte, responsabilidades contra el ELA vinculadas con uno o más Bonos ACT asegurados en el mercado secundario (las "Reclamaciones parciales por bonos asegurados en el mercado secundario").

24.      Los números CUSIP vinculados con dichos Bonos ACT asegurados en el mercado secundario corresponden a bonos emitidos por la ACT que llevan los números CUSIP originales. Dichos números CUSIP originales, que reflejan las emisiones de los bonos en los que los reclamantes tienen participación patrimonial, se mencionan en una o más Reclamaciones Principales. En consecuencia, en los Bonos asegurados en el mercado secundario se alegan responsabilidades vinculadas con bonos emitidos por la ACT que constituyen duplicados en relación las responsabilidades alegadas en una o más Reclamaciones Principales. Si las Reclamaciones parciales por bonos asegurados en el mercado secundario no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los tenedores de las Reclamaciones parciales por bonos asegurados en el mercado secundario no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones duplicadas por bonos figuran en una o más Reclamaciones Principales.

### C. Reclamaciones parcialmente reclasificadas por bonos

25.     Por último, la parte restante de cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente identifica al ELA como el deudor, cuando lo correcto sería que dicha parte se alegara, en su caso, contra la AEE, y alega responsabilidad, en parte, sobre la base de los bonos emitidos por la AEE (conjuntamente, las "Reclamaciones parcialmente reclasificadas por bonos").

26.     En cada una de las Reclamaciones parcialmente reclasificadas por bonos el reclamante pretendió alegar, en parte, responsabilidades vinculadas con unos bono(s) municipal(es), si bien la evidencia de reclamaciones, la documentación justificativa proporcionada por el reclamante y/o la información CUSIP muestran que lo correcto sería (en su caso) alegar las responsabilidades vinculadas con las Reclamaciones parcialmente reclasificadas por bonos contra la AEE. En consecuencia, las Reclamaciones parcialmente reclasificadas por bonos deben reclasificarse, en parte, para alegarse contra la AEE, el deudor de Título III identificado en la columna titulada "Corregidas (*Corrected*)" en el **Anexo A** del presente documento. El ELA se reserva el derecho a objetar a cualquiera de las partes de las Reclamaciones parcialmente reclasificadas por bonos sobre cualquier otro motivo que fuere.

27.     Puesto que por uno o más motivos anteriores, el ELA solicita respetuosamente que las partes de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente, que están duplicadas con respecto a una o más evidencias de reclamaciones principales, sean rechazadas, y que las partes vinculadas con los bonos emitidos por la AEE sean reclasificadas en el marco del Caso de Título III de la AEE. En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Ducentésima quincuagésima novena objeción global parcial (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones de los*

14

*bonistas duplicadas y alegadas contra el deudor incorrecto*, de fecha 11 de septiembre de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

28.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, el ELA notifica la presente Ducentésima quincuagésima novena objeción global parcial a) a los acreedores individuales objeto de esta Ducentésima quincuagésima novena objeción global parcial, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Ducentésima quincuagésima novena objeción global parcial se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima quincuagésima novena objeción global parcial y de la totalidad de los anexos justificativos que se adjuntan al presente se radican y envían con la presente objeción. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

29.     La presente Ducentésima quincuagésima novena objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos procedimientos radicados conforme al Título III, a objetar a las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente o a cualesquiera otras reclamaciones que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan

una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas de dichos procedimientos radicados conforme Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas de estos procedimientos radicados conforme Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

30.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima quincuagésima novena objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

Fecha: 11 de septiembre de 2020
      San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181

16

Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión
y Administración Financiera para
Puerto Rico como representante del
Estado Libre Asociado de Puerto
Rico*

17