**Hearing Date: October 28, 2020, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: October 14, 2020, at 4:00PM (Atlantic Standard Time)**

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## TWO HUNDRED SIXTIETH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE AND NO LIABILITY BONDHOLDER CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as the Commonwealth's representative pursuant to Section 315(b) of the *Puerto Rico Oversight,
Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred sixtieth omnibus
objection (the "Two Hundred Sixtieth Omnibus Objection") seeking to disallow portions of the
proofs of claim listed on **Exhibit A** hereto, each of which purports to be based on bonds and is (*i*)
based in part on amounts for which the Debtors are not liable because the claim asserts liability
based on an ownership interest in bonds issued by AFICA (as defined below), which is not a Title
III debtor, and whose liabilities are not guaranteed by the Commonwealth, and/or (*ii*) duplicative
in part of one or more master proofs of claim filed against the Commonwealth on behalf of the
holders of certain bonds. A portion of each claim listed on **Exhibit A** hereto will remain asserted
against the Commonwealth. In support of the Two Hundred Sixtieth Omnibus Objection, the
Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter
jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section
306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A. The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant
to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the
Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof
(the "Commonwealth Title III Case").

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

### B. Bond Debt Issued by the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority

5.      The Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") is a public corporation and government instrumentality of the Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved June 27, 1977 (as amended and supplemented and codified as P.R. Laws Ann. tit. 12, § 1251 *et seq.*). P.R. Laws Ann. tit. 12, § 1254.  AFICA facilitates project financing in order to promote the economic development of the Commonwealth, including through the development and construction of new industrial, commercial, tourist, agricultural, educational, medical and environmental control facilities.

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

6.      In 2004, AFICA issued Higher Education Revenue Bonds, Series 2004 (the "2004 Higher Education Revenue Bonds"), in the aggregate amount of $36,575,000, in order to, among other things, finance, in part, improvements to the Inter American University of Puerto Rico (the "University").  The 2004 Higher Education Revenue Bonds are payable solely from repayment of a loan agreement entered into between AFICA and the University.  The offering statement issued in connection with the 2004 Higher Education Revenue Bonds states that the bonds "do not constitute an indebtedness of the Commonwealth of Puerto Rico or of any of its political subdivisions, other than [AFICA].  Neither the Commonwealth of Puerto Rico nor any of its political subdivisions, other than [AFICA], is liable for payment of the [2004 Higher Education Revenue Bonds]."  *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Higher Education Revenue Bonds, 2004 Series (Inter American University of Puerto Rico Project), *available at* https://emma.msrb.org/Security/Details/A4746D490388F1256ADFE482216031C89.

7.      In 2011, AFICA issued Hospital Revenue and Refunding Bonds, Series 2011A (the "Series 2011A Hospital Bonds"), in the aggregate amount of $101,035,000.00.  The Series 2011A Hospital Bonds are payable solely from repayment of a loan agreement entered into between AFICA, on the one hand, and Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico and Hospital Español Auxilio Mutuo de Puerto Rico, Inc., on the other hand.  The offering statement issued in connection with the Series 2011A Hospital Bonds states that the bonds "shall not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon."  *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Hospital Revenue

and Refunding Bonds, Series 2011A (Hospital Auxilio Mutuo Obligated Group Project), *available at* https://emma.msrb.org/Security/Details/A67473EB11A22BC6E1032B140BC85CFD1.

8.      In 2012, AFICA issued Higher Education Revenue and Revenue Refunding Bonds, Series 2012 (the "Series 2012 University Bonds," and together with the 2004 Higher Education Revenue Bonds, and the Series 2011A Hospital Bonds, the "AFICA Bonds"), in the aggregate amount of $23,330,000.00, in order to provide financing, in part, for certain educational facilities owned or to be owned by the Universidad de Sagrado Corazón, Inc. (the "University"). The Series 2012 University Bonds are payable solely from (1) repayment of a loan agreement entered into between AFICA and the University and (2) the revenues of the University and any other moneys legally available to the University for payment of the Series 2012 University Bonds. The offering statement issued in connection with the Series 2012 University Bonds states that the bonds "shall not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Higher Education Revenue and Revenue Refunding Bonds Series 2012 (University of the Sacred Heart Project), *available*                                                                                                *at* https://emma.msrb.org/Security/Details/AD037245CADBA4B4D60CA1241E3BA4AD8.

**C.  Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

9.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the

5

respective trust agreements, resolutions, or similar bond documents. Initial Bar Date Order, ¶ 5(a). As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes of the Puerto Rico Highways and Transportation Authority ("HTA") and the Puerto Rico Infrastructure Financing Authority ("PRIFA").

10.     _HTA_—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth. *See* 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution"). As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding. BNYM serves as fiscal agent with respect to the HTA Bonds. On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶

6

15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[4]

11.     Certain bonds or notes issued by HTA have been insured by one of several municipal bond insurers, either on the primary market or on the secondary market.  Municipal bond insurance is obtained on the primary market when the municipality issuing the bonds engages an insurance company to underwrite an insurance policy for that series of bonds.  In the event that a bond is not insured on the primary market, holders of such uninsured bonds may elect to obtain insurance via the secondary market.  Holders of uninsured bonds who seek to obtain insurance in the secondary market contract directly with a municipal bond insurer and the original issuer is not part of this contract process.  When a holder of an uninsured bond obtains an insurance policy on the secondary market, a new CUSIP number is issued which corresponds to the original CUSIP numbers assigned to the bonds at the time of issuance.  Certain bonds issued by HTA have been insured on the secondary market and, accordingly, have been issued new CUSIP numbers which correspond to bonds issued by HTA bearing original CUSIP numbers (the "Secondarily Insured HTA Bonds").

12.     **_PRIFA_**—PRIFA is an affiliate of the Government Development Bank ("GDB") and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other types of assistance to the Commonwealth, its public corporations and other instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of

---

[4] While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank, and UMB Bank, N.A. US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ." Rider to Proof of Claim No. 13386, ¶ 26.

### D. Proofs of Claim Filed Against the Commonwealth, the Omnibus Objection Procedures, and Claim Objections

13.     To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC. Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

14.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth. In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

15.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of*

8

*Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion"). The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures"). On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

16.    In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

17.    Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, the Court has held hearings related to one hundred twenty-three omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("COFINA"), HTA, and/or the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), as well as thirty-three individual objections. After hearings held on January 30, 2019, March 13, 2019, April 24, 2019, June 12, 2019, July 24, 2019, September 11, 2019, and October 30, 2019, the Court sustained seventy-four omnibus objections and thirty-two individual objections, resulting in thousands of proofs of claim filed against the Commonwealth, HTA, ERS, and/or COFINA being disallowed and expunged, and hundreds of other claims being reclassified to be asserted against another of the Debtors. Twenty-two omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on December 11, 2019. Furthermore, twenty-seven omnibus objections to claims filed against the Commonwealth, HTA and ERS were heard and orally granted on January 29, 2020. Based upon rulings and orders of the Court to date, approximately 56,000 claims, asserting approximately $43 trillion in liability against the Commonwealth, HTA, COFINA, and ERS, have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

18.    This Two Hundred Sixtieth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

19.    Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.),

10

*aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

20.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

21.     The Two Hundred Sixtieth Omnibus Objection seeks to disallow portions of the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based on bonds and is either (*i*) based on amounts for which the Commonwealth is not liable because that portion of the claim asserts liability based on an ownership interest in bonds issued by AFICA, which is not a Title III debtor, and whose liabilities are not guaranteed by the Commonwealth, and/or (*ii*) duplicative in part of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds. A portion of the claim will remain asserted against the Commonwealth. **Exhibit A** hereto further specifies why each of the claims (collectively, the "Claims to Be Partially Disallowed") should be disallowed in part.

### A. No Liability for Claims Based on AFICA Bonds

22.     As identified in **Exhibit A** hereto, certain portions of the Claims to Be Partially Disallowed purport to assert claims based on an alleged ownership interest in bonds issued by AFICA, which is not a Title III debtor, and which liabilities are not guaranteed by the Commonwealth (collectively the "Partial AFICA Bondholder Claims").

23.     Each of the Partial AFICA Bondholder Claims purports to assert, in part, various liabilities against the Commonwealth associated with AFICA Bonds not guaranteed by the

11

Commonwealth.  AFICA is not a Title III debtor, and is a separate, legally distinct entity from the Commonwealth.  Moreover, each of the offering statements issued in connection with the AFICA Bonds states that the AFICA Bonds are not a debt of the Commonwealth or any of its political subdivisions, other than AFICA.  Each of the Partial AFICA Bondholder Claims does not assert a basis for asserting a claim against the Commonwealth for bonds issued by AFICA that are neither guaranteed by nor a debt of the Commonwealth.  Accordingly, the Commonwealth is not liable for the Partial AFICA Bondholder Claims.

**B. Duplicate Bond Claims**

24.     As identified in **Exhibit A** hereto, certain portions of the Claims to Be Partially Disallowed purport to assert liability on the basis of bonds issued by HTA and PRIFA (collectively, the "Partial Duplicate Bond Claims").

25.     Each of the Partial Duplicate Bond Claims purports to assert liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Commonwealth Title III Case on behalf of the holders of certain bonds issued by HTA and/or PRIFA. Any failure to partially disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case. The holders of the Partial Duplicate Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated with the Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

**C. Secondarily Insured Bond Claims**

26.     As identified in **Exhibit A** hereto, certain portions of the Claims to Be Partially Disallowed should be disallowed because they assert liabilities associated with HTA Secondarily

Insured Bonds, which correspond to HTA bonds issued by HTA that are duplicative of liabilities asserted by one or more Master Claims (collectively, the "Partial Secondarily Insured Bond Claims").

27.    Each of the Partial Secondarily Insured Bond Claims asserts liabilities associated with Secondarily Insured Bonds. The CUSIP numbers associated with such Secondarily Insured Bonds correspond to bonds issued by HTA bearing original CUSIP numbers. Those original CUSIP numbers, which reflect bond issuances in which the claimants hold ownership interests, are listed in one or more Master Claims. Therefore, the Partial Secondarily Insured Bond Claims assert liabilities associated with bonds issued by HTA that are duplicative of liabilities asserted by one or more Master Claims.

28.    Any failure to partially disallow the Partial Secondarily Insured Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Title III Cases. The holders of the Partial Secondarily Insured Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated are subsumed within one or more Master Claims.

29.    Because of one or more of the foregoing reasons, the Commonwealth respectfully requests that the Claims to Be Partially Disallowed be disallowed in part. In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Sixtieth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Duplicate Bondholder and No Liability Bondholder Claims Bondholder Claims*, dated September 11, 2020, attached hereto as **Exhibit B**.

13

## NOTICE

30.     In  accordance  with  the  Amended  Omnibus  Objection  Procedures,  the
Commonwealth  is providing  notice of this Two Hundred Sixtieth  Omnibus  Objection  to (a) the
individual  creditors subject to this Two Hundred Sixtieth  Omnibus  Objection, (b) the U.S. Trustee,
and  (c)  the  Master  Service  List  (as  defined  by  the  *Thirteenth Amended  Case  Management
Procedures*  [ECF  No.  13512-1]),  which  is  available  on  the  Debtors'  case  website  at
https://cases.primeclerk.com/puertorico.     The  notice  for  this  Two  Hundred  Sixtieth  Omnibus
Objection  is attached hereto as **Exhibit C**.  Spanish translations  are being  filed and served with
this objection of the Two Hundred Sixtieth  Omnibus  Objection and supporting  exhibits  attached
hereto.  The Commonwealth  submits  that, in light  of the nature of the relief requested, no other  or
further notice need be given.

## RESERVATION OF RIGHTS

31.     This Two Hundred Sixtieth  Omnibus  Objection  is limited  to the grounds  stated
herein.  Accordingly,  it is without  prejudice  to the rights  of the Debtors  or the rights  of any other
party in interest in these Title III proceedings  to object to any portion of the Claims to Be Partially
Disallowed  or any other claims  on any ground  whatsoever.  The Debtors  expressly reserve all
further  substantive  or  procedural  objections.    Nothing  contained  herein  or  any  actions  taken
pursuant to such relief is intended or should be construed as: (a) an admission  as to the validity  of
any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest
in these Title III proceedings  to dispute  any claim on any grounds; (c) a promise or requirement to
pay any claim; (d) a request or authorization  to assume any prepetition  agreement, contract, or
lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors

14

or any other party in interest in these Title III proceedings under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

32.     No prior request for the relief sought in this Two Hundred Sixtieth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: September 11, 2020
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico*

**Fecha de la vista: 28 de octubre de 2020, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 14 de octubre de 2020, a las 4:00 p.m. (AST)**

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>    como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*,<br><br>                             Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA.** |

**DUCENTÉSIMA SEXAGÉSIMA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DE LOS BONISTAS DUPLICADAS Y NO RELACIONADAS CON LA RESPONSABILIDAD**

A la atención de su señoría, Juez de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente ducentésima sexagésima objeción global (la "Ducentésima sexagésima objeción global") en la que se solicita que se rechacen partes de las evidencias de reclamaciones mencionadas en el **Anexo A** del presente documento, cada una de las cuales pretende estar basada en bonos *i*) y se basa parcialmente en montos por los que los Deudores no tienen responsabilidad, puesto que la reclamación alega responsabilidad sobre la base de una participación patrimonial en bonos emitidos por la AFICA (según se define abajo), que no es deudor de Título III y cuyas responsabilidades no están garantizadas por el ELA, y/o *ii*) está duplicada parcialmente en relación con una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos. Parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA. En apoyo de la Ducentésima sexagésima objeción global, el ELA manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

2

## ANTECEDENTES

### A. Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255][3] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar Evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [núm. ECF. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III del ELA. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar Evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

### B. Deuda de los bonos emitidos por la Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental

5.      La Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental de Puerto Rico (la "AFICA") es una corporación

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

pública y organismo gubernamental del ELA creada por la Ley núm. 121 de la Asamblea Legislativa de Puerto Rico, aprobada el 27 de junio de 1977 (en su versión enmendada, complementada y codificada en las Leyes de Puerto Rico, Título 12, § 1251 y siguientes.) . Leyes de Puerto Rico, Título 12, § 1254. La AFICA facilita el financiamiento de los proyectos para fomentar el desarrollo económico del ELA, lo que incluye medidas para la promoción y construcción de nuevas infraestructuras industriales, comerciales, turísticas, agrícolas, educativas, médicas y de control medioambiental.

6.      En 2004, la AFICA emitió Bonos de Renta de Educación Superior de 2004 (los "Bonos de Renta de Educación Superior 2004"), por un monto total de $36,575,000, para, entre otras cosas, financiar en parte las mejoras de la Universidad Interamericana de Puerto Rico (la "Universidad"). Los Bonos de Renta de Educación Superior 2004 son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA y la Universidad. La declaración de oferta emitida en relación con los Bonos de Renta de Educación Superior 2004 dispone que los bonos "no constituyen endeudamiento del Estado Libre Asociado de Puerto Rico ni de ninguna de sus subdivisiones políticas, salvo [la AFICA]. Ni el Estado Libre Asociado de Puerto Rico ni ninguna de sus subdivisiones políticas, salvo [la AFICA], tienen la responsabilidad de pagar los [Bonos de Renta de Educación Superior 2004].". *Véase, por ejemplo,* Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta de Educación Superior, Serie 2004 (Proyecto Universidad Interamericana de Puerto Rico), *disponible en* https://emma.msrb.org/Security/Details/A4746D490388F1256ADFE482216031C89.

7.      2011, la AFICA emitió Bonos de Renta y Refinanciamiento de Hospitales, Serie 2011A (los "Bonos de Hospitales Serie 2011A"), por un monto total de $101,035,000.00. Los

Bonos de Hospitales Serie 2011A son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA, de una parte, y Sociedad Española de Auxilio Mutuo y Beneficencia de Puerto Rico y Hospital Español Auxilio Mutuo de Puerto Rico, Inc., por otra. La declaración de oferta emitida en relación con los Bonos de Hospitales Serie 2011A dispone que los bonos "no constituirán endeudamiento del ELA ni de ninguna de sus subdivisiones políticas, salvo [la AFICA], y ni el ELA ni ninguna de sus subdivisiones políticas, salvo [la AFICA], será responsable de su pago". *Véase, por ejemplo*, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta y Refinanciamiento de Hospitales, Serie 2011A (Proyecto Hospital Auxilio Mutuo Obligated                 Group),                 *disponible                 en* https://emma.msrb.org/Security/Details/A67473EB11A22BC6E1032B140BC85CFD1.

8.      En 2012, la AFICA emitió Bonos de Renta y de Renta de Refinanciamiento de Educación Superior, Serie 2012 (los "Bonos de la Universidad Serie 2012", y junto con los Bonos de Renta de Educación Superior 2004 y los Bonos de Hospitales Serie 2011A, los "Bonos AFICA"), por un monto total de $23,330,000.00, para proporcionar, en parte, financiamiento para determinados centros educativos pertenecientes, o que pertenecerían, a Universidad de Sagrado Corazón, Inc. (la "Universidad"). Los Bonos de la Universidad Serie 2012 son pagaderos únicamente 1) a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA y la Universidad y 2) de las rentas de la Universidad y cualesquiera otros fondos disponibles legalmente para la Universidad para el pago de los Bonos de la Universidad Serie 2012. La declaración de oferta emitida en relación con los Bonos de la Universidad Serie 2012 dispone que los bonos "no constituirán endeudamiento del ELA ni de ninguna de sus subdivisiones políticas, salvo [la AFICA], y ni el ELA ni ninguna de sus subdivisiones políticas, salvo [la AFICA], será

responsable de su pago". *Véase, por ejemplo*, Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta y de Renta de Refinanciamiento de Educación Superior Serie 2012 (Proyecto Universidad de Sagrado Corazón), *disponible en* https://emma.msrb.org/Security/Details/AD037245CADBA4B4D60CA1241E3BA4AD8.

### C. Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA

9.          Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamaciones principal contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de las reclamaciones por bonos relacionadas con la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos fiduciarios, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, las evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales") han sido radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés de la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") y la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI").

10.          *ACT*: la ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y separada del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA ("Ley para crear la ACT"). La ACT se encarga de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos.

6

*Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i)* Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución 1968"), y *ii)* Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución 1998"). Desde el 21 de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT. En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III del ELA (la "Reclamaciones principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas radicadas, derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA, en virtud de la ley o equidad. . . ." *Véase* Adenda de la Evidencia de reclamaciones núm. 121053, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 120982, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 115380, ¶ 15.[4]

11.     Determinados bonos o pagarés emitidos por la ACT han sido asegurados por una o más aseguradoras de bonos municipales en el mercado primario o en el secundario. El seguro de bonos municipales se obtiene en el mercado primario cuando el municipio emisor de los bonos contrata una compañía de seguros para suscribir una póliza de seguro en relación con dicha serie de bonos. En el caso de que un bono no se asegure en el mercado primario, los tenedores de tales

---

[4] Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime Clerk como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

bonos no asegurados podrían optar por obtener un seguro a través del mercado secundario. Los tenedores de los bonos no asegurados que pretendan obtener un seguro en el mercado secundario entran en una relación contractual directamente con una aseguradora de bonos municipales, por lo que el emisor original no es parte en dicho proceso de contratación. Cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de su emisión. Determinados bonos emitidos por la ACT han sido asegurados en el mercado secundario y, en consecuencia, se han emitido nuevos números CUSIP que corresponden a los bonos emitidos por la ACT que llevan números CUSIP originales (los "Bonos ACT asegurados en el mercado secundario").

12.     *AFI*: la AFI es una filial del Banco Gubernamental de Fomento (el "BGF") y constituye una dependencia del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras dependencias encargadas del desarrollo y del funcionamiento de las infraestructuras. En nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, "Bonos de la AFI"), se radicaron evidencias de reclamaciones principales contra el ELA (conjuntamente, las "Reclamaciones principales de la AFI") por parte de BNYM, US Bank y UMB Bank, N.A. US Bank radicó una evidencia de reclamaciones principal en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia de reclamaciones núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos sobre el ron (Bonos relativos a rentas de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006), alegando "reclamaciones por montos contingentes y no liquidados en relación con los intereses pagaderos a futuro, intereses acumulados y que se acumulen en el futuro en lo

8

referente al principal adeudado en el pasado y las reclamaciones por intereses, tarifas, costos e

indemnización del Fiduciario en los que se incurra en el futuro en virtud de los Documentos de

bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que

tenga o pueda tener el Fiduciario en relación con las Obligaciones de bonos pendientes, monto

mínimo de $249,099,446.17. . . ." Cláusula de la Evidencia de reclamaciones núm. 13386, ¶ 26.

### D. Evidencias de reclamaciones radicadas contra el ELA, los Procedimientos relativos a objeciones globales y las Objeciones a reclamaciones

13.     Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de

reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas

evidencias de reclamaciones ascienden a un total de $43.6 billones en reclamaciones radicadas

contra los Deudores, además de los montos no liquidados reclamados.

14.     De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que

haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido

enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,

estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información

necesaria para que los Deudores determinen si la reclamación es válida.

15.     Para resolver eficazmente el mayor número posible de las evidencias de

reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su

*Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a*

*objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de*

*Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos

Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales

mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

16.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

10

17.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal celebró vistas vinculadas con 123 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT y/o el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"), así como con 33 objeciones individuales. Tras las vistas celebradas el 30 de enero de 2019, el 13 de marzo de 2019, el 24 de abril de 2019, el 12 de junio de 2019, el 24 de julio de 2019, el 11 de septiembre de 2019 y el 30 de octubre de 2019, el Tribunal concedió 74 objeciones globales y 32 objeciones individuales, lo cual resultó en que miles de las evidencias de reclamaciones radicadas contra el ELA, la ACT, el SRE y/o COFINA fueron rechazadas y suprimidas, y cientos de otras reclamaciones fueron reclasificadas como radicadas contra otros Deudores. Veintidós objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 11 de diciembre de 2019. Además, 27 objeciones globales a reclamaciones radicadas contra el ELA, la ACT y el SRE fueron atendidas y concedidas oralmente el 29 de enero de 2020. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban aproximadamente $43 billones en responsabilidad contra el ELA, la ACT, COFINA y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

18.     La presente Ducentésima sexagésima objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

19.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., §

11

502(b)(1). Aunque una evidencia de reclamaciones debidamente formalizada y radicada constituye una prueba *prima facie* de validez de la reclamación, *véase* R. R. del Proc. de Quiebr. 3001(f), aplicable al presente procedimiento en virtud de la sección 310 de PROMESA, la parte que radique la objeción podrá superar dicha evidencia *prima facie* con pruebas que, según su criterio, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que la parte que radique la objeción haya introducido evidencias suficientes para refutar el caso *prima facie* de del reclamante". (se omite cita)).

20.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

21.     En la Ducentésima sexagésima objeción global se solicita que se rechacen partes de las evidencias de reclamaciones mencionadas en el **Anexo A** del presente documento, cada una de las cuales pretende estar basada en bonos *i*) y se basa en montos por los que el ELA no tienen responsabilidad, puesto que dicha parte de la reclamación alega responsabilidad sobre la base de una participación patrimonial en bonos emitidos por la AFICA, que no es deudor de Título III y cuyas responsabilidades no están garantizadas por el ELA, y/o *ii*) está duplicada parcialmente en relación con una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos. Parte de la reclamación seguirá estando radicada contra el ELA. El **Anexo A** especifica además por qué cada una de las reclamaciones

12

(conjuntamente, "Reclamaciones que han de ser rechazadas parcialmente") debe ser rechazada en parte.

**A. Ausencia de responsabilidad relativa a reclamaciones basadas en los Bonos AFICA**

22.     Conforme a lo identificado en el **Anexo A** del presente documento, determinadas partes de las Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basadas en una presunta participación patrimonial en bonos emitidos por la AFICA, que no es deudor de Título III y cuyas responsabilidades no están garantizadas por el ELA (conjuntamente, las "Reclamaciones parciales relativas a los bonistas de la AFICA").

23.     Cada una de las Reclamaciones parciales relativas a los bonistas de la AFICA pretende alegar, en parte, varias responsabilidades contra el ELA vinculadas con los Bonos AFICA que no están garantizados por el ELA. La AFICA no es deudor de Título III y es una entidad separada y jurídicamente independiente del ELA. Además, cada una de las declaraciones de oferta emitidas en relación con los Bonos AFICA dispone que los Bonos AFICA no constituyen deuda del ELA ni de ninguna de sus subdivisiones políticas, con la excepción de AFICA. Ninguna de las Reclamaciones parciales relativas a los bonistas de la AFICA proporciona fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AFICA que no están garantizados por el ELA ni constituyen su deuda. En consecuencia, el ELA no tiene responsabilidad por las Reclamaciones parciales relativas a los bonistas de la AFICA.

**B. Reclamaciones duplicadas por bonos**

24.     Según se identifica en el **Anexo A** del presente documento, determinadas partes de las Reclamaciones que han de ser rechazadas parcialmente pretende alegar responsabilidad sobre la base de los bonos emitidos por la ACT y la AFI (conjuntamente, las "Reclamaciones parcialmente duplicadas por bonos").

13

25.     Cada una de las Reclamaciones parcialmente duplicadas por bonos pretende alegar responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos emitidos por la ACT y la AFI. Si las Reclamaciones parcialmente duplicadas por bonos no son rechazadas parcialmente, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los tenedores de las Reclamaciones parcialmente duplicadas por bonos no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones parcialmente duplicadas por bonos figuran en una o más Reclamaciones Principales.

### C. Reclamaciones parciales por bonos asegurados en el mercado secundario

26.     Según se identifica en el **Anexo A** del presente documento, determinadas partes de las Reclamaciones que han de ser rechazadas parcialmente deben rechazarse porque alegan responsabilidades vinculadas con los Bonos ACT asegurados en el mercado secundario, que corresponden a los bonos emitidos por la ACT que están duplicados en relación con las responsabilidades alegadas en una o más Reclamaciones Principales (conjuntamente, las "Reclamaciones parciales por bonos asegurados en el mercado secundario").

27.     Cada una de las Reclamaciones parciales por bonos asegurados en el mercado secundario alega responsabilidades vinculadas con los Bonos asegurados en el mercado secundario. Los números CUSIP vinculados con dichos Bonos asegurados en el mercado secundario corresponden a bonos emitidos por la ACT que llevan los números CUSIP originales.

14

Dichos números CUSIP originales, que reflejan las emisiones de los bonos en los que los reclamantes tienen participación patrimonial, se mencionan en una o más Reclamaciones Principales. En consecuencia, en los Reclamaciones parciales por bonos asegurados en el mercado secundario se alegan responsabilidades vinculadas con bonos emitidos por la ACT que constituyen duplicados en relación las responsabilidades alegadas en una o más Reclamaciones Principales.

28.    Si las Reclamaciones parciales por bonos asegurados en el mercado secundario no son rechazadas en parte, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en los Casos de Título III. Los tenedores de las Reclamaciones parciales por bonos asegurados en el mercado secundario no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas figuran en una o más Reclamaciones Principales.

29.    Por uno o más de los motivos mencionados, el ELA solicita respetuosamente que las Reclamaciones que han de ser rechazadas parcialmente sean rechazadas en parte. En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Ducentésima sexagésima objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones de los bonistas duplicadas y no relacionadas con la responsabilidad*, de fecha 11 de septiembre de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

30.    De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, el ELA notifica la presente Ducentésima sexagésima objeción global a) a los acreedores individuales objeto de esta Ducentésima sexagésima objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores,

15

en https://cases.primeclerk.com/puertorico. La notificación relativa a esta Ducentésima sexagésima objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima sexagésima objeción global y de la totalidad de los anexos justificativos que se adjuntan al presente se radican y envían con la presente objeción. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

31.     La presente Ducentésima sexagésima objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas de dichos procedimientos radicados conforme al Título III, a objetar a cualquiera de las partes de las Reclamaciones que han de ser rechazadas parcialmente o a cualesquiera otras reclamaciones que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas de dichos procedimientos radicados conforme Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas de

16

estos procedimientos radicados conforme Título III, conforme a PROMESA, el Código de
Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

32.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima
sexagésima objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en
la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el
remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios
que se consideren justos.

Fecha: 11 de septiembre de 2020
San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local
800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944


[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión
y Administración Financiera para
Puerto Rico como representante del*

17

*Estado Libre Asociado de Puerto
Rico*

18