# Exhibit 26

FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.

ATTORNEYS AND COUNSELORS AT LAW

PO BOX 363507

SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113
FAX (787) 759-3123

254 MUÑOZ RIVERA AVENUE
CORNER CHARDÓN STREET
6TH FLOOR
HATO REY, PR 00918

June 2, 2008

Employees Retirement System of the Government
of the Commonwealth of Puerto Rico
P.O. Box 42003
San Juan, Puerto Rico 00940

The Bank of New York
as Fiscal Agent (the "Fiscal Agent")
under a Bond Resolution (the "Bond Resolution"),
adopted on January 24, 2008, and a Second Supplemental Bond
Resolution (the "Supplemental Resolution," and
together with the Bond Resolution, the "Resolution"),
adopted on May 27, 2008, by the Employees Retirement
System of the Government of the Commonwealth of Puerto Rico
101 Barclay Street, Floor 7 West
New York, NY 10286

Ladies and Gentlemen:

We are acting as Bond Counsel to the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") in connection with its issuance of $1,058,634,613.05 initial aggregate principal amount of Senior Pension Funding Bonds, Series B (the "Bonds").

After having reviewed such documents, statutes, and published decisions as we have deemed appropriate, we are of the opinion that:

(1) the System has the right and power under Act No. 447 of the Legislative Assembly of Puerto Rico, approved May 15, 1951, as amended and supplemented (the "Act"), to adopt the Resolution and the Resolution has been duly and lawfully adopted by the System, is in full force and effect and is valid and binding upon the System and enforceable in accordance with its terms, and no other authorization for the Resolution is required;

(2) the Resolution and the Security Agreement create a valid security interest for the benefit of the Owners of the Bonds on the Pledged Property,

1

subject only to the provisions of the Resolution permitting the application thereof to the purposes and on the terms and conditions set forth in the Resolution; and

(3) the Bonds are valid and binding special limited non-recourse obligations of the System as provided in the Resolution, enforceable in accordance with their terms and the terms of the Resolution (except insofar as the enforceability thereof may be limited by bankruptcy, moratorium, insolvency or other laws affecting creditors' rights or remedies theretofore or thereafter enacted and may be subject to general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law), and entitled to the benefit of the Resolution and of the Act, as amended to the date of this opinion, and such Bonds have been duly and validly authorized, executed and issued in accordance with law, including the Act, and in accordance with the Resolution.

This opinion is given in accordance with Section 202.3 of the Bond Resolution. Capitalized terms used herein and not otherwise defined have the respective meanings ascribed to them in the Resolution.

Yours very truly,

Fiddler, Gonzáles & Rodriguez

2

# Exhibit 27

# FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.

ATTORNEYS AND COUNSELORS AT LAW

PO BOX 363507

SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113
FAX (787) 759-3123

254 MUÑOZ RIVERA AVENUE
CORNER CHARDÓN STREET
6TH FLOOR
HATO REY, PR 00918

June 30, 2008

Employees Retirement System of the Government
 of the Commonwealth of Puerto Rico
P.O. Box 42003
San Juan, Puerto Rico 00940

The Bank of New York
 as Fiscal Agent (the "Fiscal Agent")
 under a Bond Resolution (the "Bond Resolution"),
 adopted on January 24, 2008, and a Third Supplemental Bond
 Resolution (the "Supplemental Resolution," and
 together with the Bond Resolution, the "Resolution"),
 adopted on June 26, 2008, by the Employees Retirement
 System of the Government of the Commonwealth of Puerto Rico
101 Barclay Street, Floor 7 West
New York, NY 10286

Ladies and Gentlemen:

We are acting as Bond Counsel to the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") in connection with its issuance of $300,202,930 initial aggregate principal amount of Senior Pension Funding Bonds, Series C (the "Bonds").

After having reviewed such documents, statutes, and published decisions as we have deemed appropriate, we are of the opinion that:

(1) the System has the right and power under Act No. 447 of the Legislative Assembly of Puerto Rico, approved May 15, 1951, as amended and supplemented (the "Act"), to adopt the Resolution and the Resolution has been duly and lawfully adopted by the System, is in full force and effect and is valid and binding upon the System and enforceable in accordance with its terms, and no other authorization for the Resolution is required;

(2) the Resolution and the Security Agreement create a valid security interest for the benefit of the Owners of the Bonds on the Pledged

Employees Retirement System of the Government
 of the Commonwealth of Puerto Rico
The Bank of New York
June 30, 2008
Page 2

Property, subject only to the provisions of the Resolution permitting the application thereof to the purposes and on the terms and conditions set forth in the Resolution; and

(3) the Bonds are valid and binding special limited non-recourse obligations of the System as provided in the Resolution, enforceable in accordance with their terms and the terms of the Resolution (except insofar as the enforceability thereof may be limited by bankruptcy, moratorium, insolvency or other laws affecting creditors' rights or remedies theretofore or thereafter enacted and may be subject to general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law), and entitled to the benefit of the Resolution and of the Act, as amended to the date of this opinion, and such Bonds have been duly and validly authorized, executed and issued in accordance with law, including the Act, and in accordance with the Resolution.

This opinion is given in accordance with Section 202.3 of the Bond Resolution. Capitalized terms used herein and not otherwise defined have the respective meanings ascribed to them in the Resolution.

Yours very truly,

*Fiddler Gonzáles & Rodríguez, P.S.C.*

PR-ERS-000005194

# Exhibit 28

FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.

ATTORNEYS AND COUNSELORS AT LAW

PO Box 363507

SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113
FAX (787) 759-3123

254 MUÑOZ RIVERA AVENUE
CORNER CHARDÓN STREET
6TH FLOOR
HATO REY, PR 00918

January 31, 2008

The Addressees Listed on
Schedule I Attached Hereto

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
San Juan, Puerto Rico  00918
Attention: José Arias

Ladies and Gentlemen:

We have acted as Bond Counsel in connection with the authorization, issuance
and sale by the Employees Retirement System of the Government of the Commonwealth
of Puerto Rico (the "System") of $1,588,810,799.60 initial aggregate principal amount of
its Senior Pension Funding Bonds, Series A (the "Bonds") as to which you are acting as
underwriters ("Underwriters") pursuant to the amended and restated Purchase Contract,
dated January 30, 2008 (the "Purchase Contract"), between the System and the
Underwriters.

The Bonds are being issued pursuant to a Pension Funding Bond Resolution,
adopted by the System's Board of Trustees on January 24, 2008 (the "Bond Resolution"),
and a First Supplemental Pension Funding Bond Resolution, adopted by the System's
Board of Trustees on January 24, 2008 and amended, restated and readopted on January
29, 2008 (the "Supplemental Resolution," and together with the Bond Resolution, the
"Resolution"), pursuant to which The Bank of New York will act as Fiscal Agent (the
"Fiscal Agent"). Any capitalized terms used herein and not otherwise defined shall have
the meanings ascribed thereto in the Resolution or the Purchase Contract. The Bonds are
being issued for the purpose of (i) increasing the total assets currently available to pay
benefits under the System's largest defined benefit plan, (ii) reducing the unfunded
accrued actuarial pension liability of the benefit plan, and (iii) making deposits in various
funds and accounts established under the Resolution.

In our capacity as Bond Counsel, we have examined and are familiar with (i) Act
No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended ("Act
447"), (ii) certified copies of the Resolution, (iii) certified copies of the resolution
authorizing the issuance and fixing the terms of the Bonds (the "Authorizing

The Addressees Listed on
 Schedule I Attached Hereto
January 31, 2008
Page -2-

Resolution"), approving the Preliminary Official Statement, dated January 11, 2008, in connection with the Bonds (the "Preliminary Official Statement") and approving the Official Statement, dated January 29, 2008, in connection with the issuance of the Bonds (the "Official Statement"), (iv) a certified copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), (v) a certified copy of the Purchase Contract, (vi) a certified copy of the Security Agreement between the System and The Bank of New York (the "Security Agreement"), and (vii) such other proofs as we have deemed necessary as a basis for the opinions hereinafter expressed.

In rendering this opinion, we have assumed the genuineness of all signatures, the authenticity of all documents provided to us as originals and the conformity to authentic original documents of all documents provided to us as certified, conformed or photostatic copies. As to questions of fact material to this opinion, we have relied upon certificates of officers and representatives of the parties to the transactions contemplated by the Purchase Contract and of public officials.

Based upon the foregoing, and subject to the assumptions, limitations and qualifications set forth herein, we are of the opinion that:

(a) The MCDA, the Security Agreement and the Purchase Contract have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability against the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(b) The Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(c) It is not necessary in connection with the public offering and sale of the Bonds to register any security under the Securities Act of 1933, as amended, or to qualify the Resolution nor any other document or instrument under the Trust Indenture Act of 1939, as amended.

(d) The statements contained in the Official Statement as of its date and as of the date hereof under the captions "THE SERIES A BONDS," "SECURITY AND SOURCES OF PAYMENT FOR THE BONDS," "TAX MATTERS," "ERISA CONSIDERATIONS," "LEGAL INVESTMENT," and "CONTINUING DISCLOSURE," and corresponding statements in "SUMMARY STATEMENT," insofar

The Addressees Listed on
Schedule I Attached Hereto
January 31, 2008
Page -3-

as such statements constitute summaries of provisions of the Constitution and statutes of
the Commonwealth, the Bonds, the Bond Resolution, the MCDA, the Security
Agreement or Act 447, or refer to opinions we have rendered, constitute fair and accurate
summaries of the documents and matters of law purported to be summarized therein and
do not contain any untrue statement of a material fact or omit any material fact which, in
our opinion, should be referred to therein so as to make the information or statements
made therein not misleading. References to the Official Statement are to the document
examined by us upon delivery of the Bonds, and not to any physical or electronic
reproduction other than a true copy.

      (e)     The System has full legal right, power and authority to sign the Official
Statement and has duly approved and authorized the signing of the Official Statement.

      We hereby consent to references to us contained in the Official Statement.

      The proposed form of Bond Counsel opinion contained in Appendix VIII to the
Official Statement is substantially in the form of the opinion delivered on the date hereof
by this firm. You may rely on said delivered opinion as if it were addressed to you.

      This opinion is being furnished at your request and is solely for your benefit and
may not be relied upon by any other persons without our prior written consent.

                        Very truly yours,

*Fiddler Gonzalez & Rodriguez, PSC*

PR-ERS-000003668

# Exhibit 29

FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.

ATTORNEYS AND COUNSELORS AT LAW

PO BOX 363507

SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113
FAX (787) 759-3123

254 MUÑOZ RIVERA AVENUE
CORNER CHARDÓN STREET
6TH FLOOR
HATO REY, PR 00918

June 2, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
San Juan, Puerto Rico  00918
Attention:  Jose Arias

Ladies and Gentlemen:

We have acted as Bond Counsel in connection with the authorization, issuance and sale by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") of $1,058,634,613.05 initial aggregate principal amount of its Senior Pension Funding Bonds, Series B (the "Bonds") as to which you are acting as underwriters ("Underwriters") pursuant to the Purchase Contract, dated May 28, 2008 (the "Purchase Contract"), between the System and the Underwriters.

The Bonds are being issued pursuant to a Pension Funding Bond Resolution, adopted by the System's Board of Trustees on January 24, 2008 (the "Bond Resolution"), and a Second Supplemental Pension Funding Bond Resolution, adopted by the System's Board of Trustees on May 27, 2008 (the "Supplemental Resolution," and together with the Bond Resolution, the "Resolution"), pursuant to which The Bank of New York will act as Fiscal Agent (the "Fiscal Agent"). Any capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Resolution or the Purchase Contract. The Bonds are being issued for the purpose of (i) increasing the total assets currently available to pay benefits under the System's largest defined benefit plan, (ii) reducing the unfunded accrued actuarial pension liability of the benefit plan, and (iii) making deposits into the Debt Service Reserve Account as established under the Resolution.

In our capacity as Bond Counsel, we have examined and are familiar with (i) Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended ("Act 447"), (ii) certified

1

PR-ERS-000004341

copies of the Resolution, (iii) certified copies of the resolution authorizing the issuance and fixing the terms of the Bonds (the "Authorizing Resolution"), approving the Official Statement, dated May 28, 2008, in connection with the issuance of the Bonds (the "Official Statement"), (iv) the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), (v) a certified copy of the Purchase Contract, (vi) a certified copy of the Security Agreement between the System and The Bank of New York (the "Security Agreement"), and (vii) such other proofs as we have deemed necessary as a basis for the opinions hereinafter expressed.

In rendering this opinion, we have assumed the genuineness of all signatures, the authenticity of all documents provided to us as originals and the conformity to authentic original documents of all documents provided to us as certified, conformed or photostatic copies. As to questions of fact material to this opinion, we have relied upon certificates of officers and representatives of the parties to the transactions contemplated by the Purchase Contract and of public officials.

Based upon the foregoing, and subject to the assumptions, limitations and qualifications set forth herein, we are of the opinion that:

(a)     The Security Agreement and the Purchase Contract have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability against the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(b)     The Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(c)     It is not necessary in connection with the public offering and sale of the Bonds to register any security under the Securities Act of 1933, as amended, or to qualify the Resolution nor any other document or instrument under the Trust Indenture Act of 1939, as amended.

(d)     The statements contained in the Official Statement as of its date and as of the date hereof under the captions "THE SERIES B BONDS," "SECURITY AND SOURCES OF PAYMENT FOR THE BONDS," "TAX MATTERS," "ERISA CONSIDERATIONS," "LEGAL INVESTMENT," and "CONTINUING DISCLOSURE," and corresponding statements in "SUMMARY STATEMENT," insofar as such statements constitute summaries of provisions of the Constitution and statutes of the Commonwealth, the Bonds, the Bond Resolution, the Supplemental Resolution, the MCDA, the Security Agreement or Act 447, or refer to opinions we have rendered, constitute fair and accurate summaries of the documents and matters of law purported to be summarized therein and do not contain any untrue statement of a material fact or omit any material fact which, in our opinion, should be referred to therein so as to make the

2

information or statements made therein not misleading.  References to the Official Statement are to the document examined by us upon delivery of the Bonds, and not to any physical or electronic reproduction other than a true copy.

(e)    The System has full legal right, power and authority to sign the Official Statement and has duly approved and authorized the signing of the Official Statement.

We hereby consent to references to us contained in the Official Statement.

The proposed form of Bond Counsel opinion contained in Appendix VII to the Official Statement is substantially in the form of the opinion delivered on the date hereof by this firm. You may rely on said delivered opinion as if it were addressed to you.

This opinion is being furnished at your request and is solely for your benefit and may not be relied upon by any other persons without our prior written consent.

Very truly yours,

*Fiddler, Gonzalez & Rodriguez*

3

PR-ERS-000004343

# Exhibit 30

FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.

ATTORNEYS AND COUNSELORS AT LAW

PO Box 363507

SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113
FAX (787) 759-3123

254 MUÑOZ RIVERA AVENUE
CORNER CHARDÓN STREET
6TH FLOOR
HATO REY, PR 00918

June 30, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO
CITIGROUP GLOBAL MARKETS, INC.
EUROBANK MSD
LEHMAN BROTHERS, INC.
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED
ORIENTAL FINANCIAL SERVICES, INC.
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIABANK OF PUERTO RICO
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Attention: Jose Arias

Ladies and Gentlemen:

We have acted as Bond Counsel in connection with the authorization, issuance and sale by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") of $300,202,930.00 initial aggregate principal amount of its Senior Pension Funding Bonds, Series C (the "Bonds") as to which you are acting as underwriters ("Underwriters") pursuant to the Purchase Contract, dated June 26, 2008 (the "Purchase Contract"), between the System and the Underwriters.

The Bonds are being issued pursuant to a Pension Funding Bond Resolution, adopted by the System's Board of Trustees on January 24, 2008 (the "Bond Resolution"), and a Third Supplemental Pension Funding Bond Resolution, adopted by the System's Board of Trustees on June 26, 2008 (the "Supplemental Resolution," and together with the Bond Resolution, the "Resolution"), pursuant to which The Bank of New York will act as Fiscal Agent (the "Fiscal Agent"). Any capitalized terms used herein and not

PR-ERS-000005215

UBS Financial Services Incorporated of Puerto Rico
Popular Securities, Inc.
Santander Securities Corporation
Banco Bilbao Vizcaya Argentaria Puerto Rico
Citigroup Global Markets, Inc.
Eurobank MSD
Lehman Brothers, Inc.
Merrill Lynch, Pierce, Fenner & Smith Incorporated
Oriental Financial Services, Inc.
Samuel A. Ramírez & Co., Inc.
Scotiabank of Puerto Rico
Wachovia Capital Markets, LLC
June 30, 2008
Page 2

otherwise defined shall have the meanings ascribed thereto in the Resolution or the Purchase Contract. The Bonds are being issued for the purpose of (i) increasing the total assets currently available to pay benefits under the System's largest defined benefit plan, (ii) reducing the unfunded accrued actuarial pension liability of the benefit plan, and (iii) making deposits into the Debt Service Reserve Account as established under the Resolution.

In our capacity as Bond Counsel, we have examined and are familiar with (i) Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended ("Act 447"), (ii) certified copies of the Resolution, (iii) certified copies of the resolutions authorizing the issuance and fixing the terms of the Bonds (collectively, the "Authorizing Resolution"), approving the Preliminary Official Statement, dated June 16, 2008, in connection with the Bonds (the "Preliminary Official Statement") and approving the Official Statement, dated June 26, 2008, in connection with the issuance of the Bonds (the "Official Statement"), (iv) a certified copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), (v) a certified copy of the Purchase Contract, (vi) a certified copy of the Security Agreement between the System and The Bank of New York, dated as of June 2, 2008 (the "Security Agreement"), and (vii) such other proofs as we have deemed necessary as a basis for the opinions hereinafter expressed.

In rendering this opinion, we have assumed the genuineness of all signatures, the authenticity of all documents provided to us as originals and the conformity to authentic original documents of all documents provided to us as certified, conformed or photostatic copies. As to questions of fact material to this opinion, we have relied upon certificates of officers and representatives of the parties to the transactions contemplated by the Purchase Contract and of public officials.

Based upon the foregoing, and subject to the assumptions, limitations and qualifications set forth herein, we are of the opinion that:

(a)     The Security Agreement and the Purchase Contract have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability against the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that

2

UBS Financial Services Incorporated of Puerto Rico
Popular Securities, Inc.
Santander Securities Corporation
Banco Bilbao Vizcaya Argentaria Puerto Rico
Citigroup Global Markets, Inc.
Eurobank MSD
Lehman Brothers, Inc.
Merrill Lynch, Pierce, Fenner & Smith Incorporated
Oriental Financial Services, Inc.
Samuel A. Ramírez & Co., Inc.
Scotiabank of Puerto Rico
Wachovia Capital Markets, LLC
June 30, 2008
Page 3

such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(b)     The Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(c)     It is not necessary in connection with the public offering and sale of the Bonds to register any security under the Securities Act of 1933, as amended, or to qualify the Resolution nor any other document or instrument under the Trust Indenture Act of 1939, as amended.

(d)     The statements contained in the Official Statement as of its date and as of the date hereof under the captions "THE SERIES C BONDS," "SECURITY AND SOURCES OF PAYMENT FOR THE BONDS," "TAX MATTERS," "ERISA CONSIDERATIONS,"     "LEGAL     INVESTMENT,"     and     "CONTINUING DISCLOSURE," and corresponding statements in "SUMMARY STATEMENT," insofar as such statements constitute summaries of provisions of the Constitution and statutes of the Commonwealth, the Bonds, the Bond Resolution, the Supplemental Resolution, the MCDA, the Security Agreement or Act 447, or refer to opinions we have rendered, constitute fair and accurate summaries of the documents and matters of law purported to be summarized therein and do not contain any untrue statement of a material fact or omit any material fact which, in our opinion, should be referred to therein so as to make the information or statements made therein not misleading. References to the Official Statement are to the document examined by us upon delivery of the Bonds, and not to any physical or electronic reproduction other than a true copy.

(e)     The System has full legal right, power and authority to sign the Official Statement and has duly approved and authorized the signing of the Official Statement.

We hereby consent to references to us contained in the Official Statement.

3

PR-ERS-000005217

UBS Financial Services Incorporated of Puerto Rico
Popular Securities, Inc.
Santander Securities Corporation
Banco Bilbao Vizcaya Argentaria Puerto Rico
Citigroup Global Markets, Inc.
Eurobank MSD
Lehman Brothers, Inc.
Merrill Lynch, Pierce, Fenner & Smith Incorporated
Oriental Financial Services, Inc.
Samuel A. Ramírez & Co., Inc.
Scotiabank of Puerto Rico
Wachovia Capital Markets, LLC
June 30, 2008
Page 4

The proposed form of Bond Counsel opinion contained in Appendix VII to the Official Statement is substantially in the form of the opinion delivered on the date hereof by this firm. You may rely on said delivered opinion as if it were addressed to you.

This opinion is being furnished at your request and is solely for your benefit and may not be relied upon by any other persons without our prior written consent.

Very truly yours,

*Fiddler González & Rodríguez, P.S.C.*

4

PR-ERS-000005218

# Exhibit 31



Commonwealth of Puerto Rico
Puerto Rico Government and Judiciary Retirement
Employees' Systems Administration
PO Box 42003- Minillas Station
San Juan, Puerto Rico  00940

## OPINION OF GENERAL COUNSEL TO THE SYSTEM

January 31, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO
CITIGROUP GLOBAL MARKETS INC.
LEHMAN BROTHERS, INC.
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED
ORIENTAL FINANCIAL SERVICES, INC.
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIABANK OF PUERTO RICO
TCM CAPITAL, INC.
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico  00918
Attention:  Jose Arias
Ladies and Gentlemen:

        In connection with the issuance and sale by Employees Retirement System of the Government of
the Commonwealth of Puerto Rico (the "System"), a trust created pursuant to Act 447 of May 15, 1951, as
amended (the "Act"), to provide pension and other benefits to retired employees of the central government,
municipalities and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"), of its
$1,588,810,799.60 Senior Pension Funding Bonds, Series A (the "Bonds"), I have, as General Counsel of
the System, examined the Act, certified copies of the Pension Funding Bond Resolution, adopted by the
System on January 24, 2008, and the Amended and Restated First Supplemental Pension Funding Bond
Resolution, adopted by the System on January 29, 2008 (collectively, the "Resolution), certified copies of
the resolutions of the System, adopted on January 24, 2008 and January 29, 2008 (collectively, the
"Authorizing Resolutions"), authorizing, among other things, the issuance and sale of the Bonds,
approving the Preliminary Official Statement, dated January 11, 2008, in connection with the Bonds (the
"Preliminary Official Statement") and approving the Official Statement, dated January 29, 2008, in
connection with the Bonds (the "Official Statement"), the Amended and Restated Purchase Contract, dated
as of January 30, 2008, by and between the Underwriters named therein and the System (the "Purchase
Contract"), the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"),
among the System, the Commonwealth of Puerto Rico and  the Fiscal Agent (hereinafter mentioned), and
the Security Agreement, dated January 31, 2008 (the "Security Agreement," and together with the

OPINION OF GENERAL COUNSEL TO THE SYSTEM
Page 2

Resolution, the Authorizing Resolutions, the Purchase Contract, and the MCDA, the "Agreements"), between the System and The Bank of New York as fiscal agent under the Resolution (the "Fiscal Agent"), and have conducted such other investigations and examined such other proofs as I deemed necessary as a basis for the opinions herein expressed. This opinion is issued pursuant to Section 8(d)(3) of the Purchase Contract. Capitalized terms used and not otherwise defined herein have the meanings assigned to them in the Resolution.

As to certain matters of act material to the opinions expressed herein, I have relied upon the representations and statements of fact made in the Agreements, and certificates, when appropriate, provided by parties thereto other than the System. I have not independently verified the accuracy of the representations and statements so relied upon.

I have assumed the genuineness of all signatures, the authenticity of all documents submitted to me as originals, the conformity and completeness to original documents of all documents submitted to me as certified, photostatic or conformed copies and the authenticity of the originals of all such latter documents.

I have assumed that (a) each party to the Agreements (other than the System) is duly organized and validly existing, has the power and authority to execute, deliver and perform the Agreements to which it is a party, has taken all action necessary to authorize the execution, delivery and performance of those Agreements, and has duly executed and delivered those Agreements, and (b) the Agreements constitute the valid and binding obligations of the parties thereto (other than the System), enforceable against those parties in accordance with their respective terms.

Based on the foregoing, I am of the opinion that:

(a)     Act 447 has been legally enacted in accordance with the laws of the Commonwealth, is in full force and effect and is enforceable in accordance with its terms.

(b)     The Purchase Contract, the Security Agreement and the MCDA have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability thereof against, the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions and legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

(c)     The Resolution and the Authorizing Resolutions have been duly adopted by the System and are in full force and effect and constitute the legal, valid, and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions, or legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

(d)     The Bonds have been duly and validly authorized and issued. When authenticated and delivered by the Fiscal Agent as provided in the Resolution, the Bonds will constitute legally valid and binding obligations of the System.

OPINION OF GENERAL COUNSEL TO THE SYSTEM
Page 3

     (e)    The Resolution creates a valid and binding security interest in the Revenues and other Pledged Property assigned and pledged by the System to the Fiscal Agent pursuant to the Resolution.

     (f)    All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions of the Bonds and to carry out the transactions contemplated by the Purchase Contract, the Official Statement, the Security Agreement, the MCDA, the Authorizing Resolutions and the Resolution are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

     (g)    The System has full legal right, power and authority to sign the Official Statement, has duly approved and authorized the signing of the Official Statement, has ratified the distribution of the Preliminary Official Statement, and has approved the distribution of the Official Statement.

     (h)    No litigation is pending (or, to my knowledge, after reasonable inquiry, threatened) (A) to restrain or enjoin the issuance or delivery of any of the Bonds, (B) in any way contesting or affecting any authority for or the validity of the Act, the application of the proceeds of the Bonds, the Resolution, the Authorizing Resolutions, the Bonds, the MCDA, the Security Agreement or the Purchase Contract, (C) in any way contesting the power of the System to issue the Bonds or the power of the System to sell the Bonds and to apply the proceeds thereof as contemplated by the Official Statement and the Purchase Contract, (D) in any way contesting the pledge of the Employers' Contributions and other items of security for the payment of the principal of and interest on the Bonds, or (E) that could have a material adverse effect on the financial condition of the System.

     (i)    All conditions precedent to the delivery of the Bonds have been fulfilled.

     In addition, I have examined the Preliminary Official Statement and the Official Statement (including the information incorporated therein by reference), and the information as to the System, the Resolution, the MCDA, the Security Agreement and the statutes cited or referred to therein contained or incorporated by reference therein, is correct, and nothing has come to my attention which leads me to believe that such information, as of the respective dates thereof, and as to the Official Statement as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

     The opinions expressed herein are limited to the laws of the Commonwealth and based on an analysis of existing laws, regulations, rulings and court decisions of the Commonwealth. Such opinions may be adversely affected by actions taken or events occurring, including a change in law, regulation or ruling (or in the application or official interpretation of any law, regulation or ruling) after the date hereof. I have not undertaken to determine, or to inform any person about, whether such actions are taken or such events occur, and I have no obligation to update this opinion in light of such actions or events.

     In addition, I express no opinion as to the enforceability of any indemnification or contribution provisions included in any Agreement that may violate any law, rule, regulation or public policy of the United States of America or of the Commonwealth.

     Furthermore, my opinions are subject to bankruptcy, reorganization, insolvency, moratorium, fraudulent conveyance or similar laws, from time to time in effect, affecting the rights and remedies of

OPINION OF GENERAL COUNSEL TO THE SYSTEM
Page 4

creditors generally and other laws, court decisions, or legal or equitable remedies or principles which may affect enforceability.

This opinion letter is rendered for the sole benefit of each addressee hereof, and no other person or entity is entitled to rely hereon.  No attorney-client relationship has existed between me and any rating agency that shall have rated the Bonds or by virtue of this opinion letter.  Copies of this opinion letter may not be furnished to any other person or entity, nor may any portion of this opinion letter be quoted, circulated or referred to in any other document without my prior written consent.

Very truly yours,

Marilyn Cuevas-Silvagnoli, Esq.
General Counsel of the Employees Retirement System
Government of the Commonwealth of Puerto Rico

PR-ERS-000003648

# Exhibit 32



Commonwealth of Puerto Rico
Puerto Rico Government and Judiciary Retirement
Employees' Systems Administration
PO Box 42003- Minillas Station
San Juan, Puerto Rico 00940

## OPINION OF GENERAL COUNSEL TO THE SYSTEM

June 2, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Attention: Jose Arias
Ladies and Gentlemen:

In connection with the issuance and sale by Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), a trust created pursuant to Act 447 of May 15, 1951, as amended (the "Act"), to provide pension and other benefits to retired employees of the central government, municipalities and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"), of its $1,058,634,615.05 Senior Pension Funding Bonds, Series B (the "Bonds"), I have, as General Counsel of the System, examined the Act, certified copies of the Pension Funding Bond Resolution, adopted by the System on January 24, 2008, and the Second Supplemental Pension Funding Bond Resolution, adopted by the System on May 27, 2008 (collectively, the "Resolution"), certified copy of the resolution of the System, adopted on May 27, 2008 (the "Authorizing Resolution"), authorizing, among other things, the issuance and sale of the Bonds, and approving the Official Statement, dated May 28, 2008, in connection with the Bonds (the "Official Statement"), the Purchase Contract, dated as of May 28, 2008, by and between the Underwriters named therein and the System (the "Purchase Contract"), and the Security Agreement, dated June 2, 2008 (the "Security Agreement," and together with the Resolution, the Authorizing Resolutions, and the Purchase Contract, the "Agreements"), between the System and The Bank of New York as fiscal agent under the Resolution (the "Fiscal Agent"), and have conducted such other investigations and examined such other proofs as I deemed necessary as a basis for the opinions herein expressed. This opinion is issued pursuant to Section 8(d)(3) of the Purchase Contract. Capitalized terms used and not otherwise defined herein have the meanings assigned to them in the Resolution.

As to certain matters of fact material to the opinions expressed herein, I have relied upon the representations and statements of fact made in the Agreements, and certificates, when appropriate, provided by parties thereto other than the System. I have not independently verified the accuracy of the representations and statements so relied upon.

I have assumed the genuineness of all signatures, the authenticity of all documents submitted to me as originals, the conformity and completeness to original documents of all documents submitted to me as certified, photostatic or conformed copies and the authenticity of the originals of all such latter documents.

PR-ERS-000004322

I have assumed that (a) each party to the Agreements (other than the System) is duly organized and validly existing, has the power and authority to execute, deliver and perform the Agreements to which it is a party, has taken all action necessary to authorize the execution, delivery and performance of those Agreements, and has duly executed and delivered those Agreements, and (b) the Agreements constitute the valid and binding obligations of the parties thereto (other than the System), enforceable against those parties in accordance with their respective terms.

Based on the foregoing, I am of the opinion that:

(a)     Act 447 has been legally enacted in accordance with the laws of the Commonwealth, is in full force and effect and is enforceable in accordance with its terms.

(b)     The Purchase Contract and the Security Agreement have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability thereof against, the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions, or legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

(c)     The Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal, valid, and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions, or legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

(d)     The Bonds have been duly and validly authorized and issued. When authenticated and delivered by the Fiscal Agent as provided in the Resolution, the Bonds will constitute legally valid and binding obligations of the System.

(e)     The Resolution creates a valid and binding security interest in the Revenues and other Pledged Property assigned and pledged by the System to the Fiscal Agent pursuant to the Resolution.

(f)     All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions of the Bonds and to carry out the transactions contemplated by the Purchase Contract, the Official Statement, the Security Agreement, the Authorizing Resolution and the Resolution are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

(g)     The System has full legal right, power and authority to sign the Official Statement, has duly approved and authorized the signing of the Official Statement, and has approved the distribution of the Official Statement.

(h)     No litigation is pending (or, to my knowledge, after reasonable inquiry, threatened) (A) to restrain or enjoin the issuance or delivery of any of the Bonds, (B) in any way contesting or affecting any authority for or the validity of the Act, the application of the proceeds of the Bonds, the Resolution, the Authorizing Resolution, the Bonds, the Master Continuing Disclosure Agreement, dated as of January 31,

OPINION OF GENERAL COUNSEL TO THE SYSTEM
Page 3

2008 (the "MCDA"), among the System, the Commonwealth of Puerto Rico and the Fiscal Agent, the Security Agreement or the Purchase Contract, (C) in any way contesting the power of the System to issue the Bonds or the power of the System to sell the Bonds and to apply the proceeds thereof as contemplated by the Official Statement and the Purchase Contract, (D) in any way contesting the pledge of the Employers' Contributions and other items of security for the payment of the principal of and interest on the Bonds, or (E) that could have a material adverse effect on the financial condition of the System.

(i)     All conditions precedent to the delivery of the Bonds have been fulfilled.

In addition, I have examined the Official Statement (including the information incorporated therein by reference), and the information as to the System, the Resolution, the MCDA, the Security Agreement and the statutes cited or referred to therein contained or incorporated by reference therein, is correct, and nothing has come to my attention which leads me to believe that such information, as of the respective dates thereof, and as to the Official Statement as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

The opinions expressed herein are limited to the laws of the Commonwealth and based on an analysis of existing laws, regulations, rulings and court decisions of the Commonwealth. Such opinions may be adversely affected by actions taken or events occurring, including a change in law, regulation or ruling (or in the application or official interpretation of any law, regulation or ruling) after the date hereof. I have not undertaken to determine, or to inform any person about, whether such actions are taken or such events occur, and I have no obligation to update this opinion in light of such actions or events.

In addition, I express no opinion as to the enforceability of any indemnification or contribution provisions included in any Agreement that may violate any law, rule, regulation or public policy of the United States of America or of the Commonwealth.

Furthermore, my opinions are subject to bankruptcy, reorganization, insolvency, moratorium, fraudulent conveyance or similar laws, from time to time in effect, affecting the rights and remedies of creditors generally and other laws, court decisions, or legal or equitable remedies or principles which may affect enforceability.

This opinion letter is rendered for the sole benefit of each addressee hereof, and no other person or entity is entitled to rely hereon. No attorney-client relationship has existed between me and any rating agency that shall have rated the Bonds or by virtue of this opinion letter. Copies of this opinion letter may not be furnished to any other person or entity, nor may any portion of this opinion letter be quoted, circulated or referred to in any other document without my prior written consent.

Very truly yours,

Marilyn Cuevas Silvagnoli, Esq.
General Counsel of the Employees Retirement System
of the Government of the Commonwealth of Puerto
Rico

PR-ERS-000004324

# Exhibit 33



Commonwealth of Puerto Rico
Puerto Rico Government and Judiciary Retirement
Employees' Systems Administration
PO Box 42003- Minillas Station
San Juan, Puerto Rico  00940

## OPINION OF GENERAL COUNSEL TO THE SYSTEM

June 30, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO
CITIGROUP GLOBAL MARKETS, INC.
EUROBANK MSD
LEHMAN BROTHERS, INC.
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED
ORIENTAL FINANCIAL SERVICES, INC.
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIABANK OF PUERTO RICO
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
San Juan, Puerto Rico  00918
Attention:  José Arias

Ladies and Gentlemen:

In connection with the issuance and sale by Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), a trust created pursuant to Act 447 of May 15, 1951, as amended (the "Act"), to provide pension and other benefits to retired employees of the central government, municipalities and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"), of its $300,202,930.00 Senior Pension Funding Bonds, Series C (the "Bonds"), I have, as General Counsel of the System, examined the Act, certified copies of the Pension Funding Bond Resolution, adopted by the System on January 24, 2008, and the Third Supplemental Pension Funding Bond Resolution, adopted by the System on June 26, 2008 (collectively, the "Resolution"), certified copy of the resolution of the System, adopted on June 26, 2008 (the "Authorizing Resolution"), authorizing, among other things, the issuance and sale of the Bonds, and approving the Preliminary Official Statement, dated June 16, in connection with the Bonds (the "Preliminary Official Statement"), the Official Statement, dated June 26, in connection with the Bonds (the "Official Statement"), and the Purchase Contract, dated June 26, 2008, by and between the Underwriters named therein and the System (the "Purchase Contract"), and the Security Agreement, dated June 2, 2008 (the "Security Agreement," and together with the Resolution, the Authorizing Resolution, and the Purchase Contract, the "Agreements"), between the System and The Bank of New York as fiscal agent under

Opinion of General Counsel to the System
Page 2

the Resolution (the "Fiscal Agent"), and have conducted such other investigations and examined such other proofs as I deemed necessary as a basis for the opinions herein expressed. This opinion is issued pursuant to Section 8(d)(3) of the Purchase Contract. Capitalized terms used and not otherwise defined herein have the meanings assigned to them in the Resolution.

As to certain matters of fact material to the opinions expressed herein, I have relied upon the representations and statements of fact made in the Agreements, and certificates, when appropriate, provided by parties thereto other than the System. I have not independently verified the accuracy of the representations and statements so relied upon.

I have assumed the genuineness of all signatures, the authenticity of all documents submitted to me as originals, the conformity and completeness to original documents of all documents submitted to me as certified, photostatic or conformed copies and the authenticity of the originals of all such latter documents.

I have assumed that (a) each party to the Agreements (other than the System) is duly organized and validly existing, has the power and authority to execute, deliver and perform the Agreements to which it is a party, has taken all action necessary to authorize the execution, delivery and performance of those Agreements, and has duly executed and delivered those Agreements, and (b) the Agreements constitute the valid and binding obligations of the parties thereto (other than the System), enforceable against those parties in accordance with their respective terms.

Based on the foregoing, I am of the opinion that:

(a)     Act 447 has been legally enacted in accordance with the laws of the Commonwealth, is in full force and effect and is enforceable in accordance with its terms.

(b)     The Purchase Contract and the Security Agreement have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability thereof against, the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions, or legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

(c)     The Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal, valid, and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions, or legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

(d)     The Bonds have been duly and validly authorized and issued. When authenticated and delivered by the Fiscal Agent as provided in the Resolution, the Bonds will constitute legally valid and binding obligations of the System.

Opinion of General Counsel to the System
Page 3

    (e)    The Resolution creates a valid and binding security interest in the Revenues and other Pledged Property assigned and pledged by the System to the Fiscal Agent pursuant to the Resolution.

    (f)    All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions of the Bonds and to carry out the transactions contemplated by the Purchase Contract, the Official Statement, the Security Agreement, the Authorizing Resolution and the Resolution are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

    (g)    The System has full legal right, power and authority to sign the Official Statement, has ratified the distribution of the Preliminary Official Statement, has duly approved and authorized the signing of the Official Statement, and has approved the distribution of the Official Statement.

    (h)    No litigation is pending (or, to my knowledge, after reasonable inquiry, threatened) (A) to restrain or enjoin the issuance or delivery of any of the Bonds, (B) in any way contesting or affecting any authority for or the validity of the Act, the application of the proceeds of the Bonds, the Resolution, the Authorizing Resolution, the Bonds, the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), among the System, the Commonwealth of Puerto Rico and the Fiscal Agent, the Security Agreement or the Purchase Contract, (C) in any way contesting the power of the System to issue the Bonds or the power of the System to sell the Bonds and to apply the proceeds thereof as contemplated by the Official Statement and the Purchase Contract, (D) in any way contesting the pledge of the Employers' Contributions and other items of security for the payment of the principal of and interest on the Bonds, or (E) that could have a material adverse effect on the financial condition of the System.

    (i)    All conditions precedent to the delivery of the Bonds have been fulfilled.

    In addition, I have examined the Preliminary Official Statement, the Official Statement (including the information incorporated therein by reference), and the information as to the System, the Resolution, the MCDA, the Security Agreement and the statutes cited or referred to therein contained or incorporated by reference therein, is correct, and nothing has come to my attention which leads me to believe that such information, as of the respective dates thereof, and as to the Official Statement as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

    The opinions expressed herein are limited to the laws of the Commonwealth and based on an analysis of existing laws, regulations, rulings and court decisions of the Commonwealth. Such opinions may be adversely affected by actions taken or events occurring, including a change in law, regulation or ruling (or in the application or official interpretation of any law, regulation or ruling) after the date hereof. I have not undertaken to determine, or to inform any person about, whether such actions are taken or such events occur, and I have no obligation to update this opinion in light of such actions or events.

Opinion of General Counsel to the System
Page 4

In addition, I express no opinion as to the enforceability of any indemnification or contribution provisions included in any Agreement that may violate any law, rule, regulation or public policy of the United States of America or of the Commonwealth.

Furthermore, my opinions are subject to bankruptcy, reorganization, insolvency, moratorium, fraudulent conveyance or similar laws, from time to time in effect, affecting the rights and remedies of creditors generally and other laws, court decisions, or legal or equitable remedies or principles which may affect enforceability.

This opinion letter is rendered for the sole benefit of each addressee hereof, and no other person or entity is entitled to rely hereon. No attorney-client relationship has existed between me and any rating agency that shall have rated the Bonds or by virtue of this opinion letter. Copies of this opinion letter may not be furnished to any other person or entity, nor may any portion of this opinion letter be quoted, circulated or referred to in any other document without my prior written consent.

Very truly yours,

Marilyn Cuevas Silvagnoli, Esq.
General Counsel of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico

# Exhibit 34



COMMONWEALTH OF PUERTO RICO
*Department of Justice*

**ROBERTO J. SÁNCHEZ RAMOS**
**SECRETARY OF JUSTICE**

January 31, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO
CITIGROUP GLOBAL MARKETS INC.
LEHMAN BROTHERS, INC.
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED
ORIENTAL FINANCIAL SERVICES, INC.
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIABANK OF PUERTO RICO
TCM CAPITAL, INC.
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico  00918
Attention: José Arias

Re:     The issuance and sale of $1,588,810,799.60 by the Employees Retirement System of the
        Government of the Commonwealth of Puerto Rico Senior Pension Funding Bonds, Series
        A

Consulta Núm. 08-182-A

Ladies and Gentlemen:

In connection with the issuance and sale by the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("System") of $1,588,810,799.60 Employees

PR-ERS-000003670

Consulta Núm. 08-182-A
Page 2

Retirement System of the Government of the Commonwealth of Puerto Rico Senior Pension Funding Bonds, Series A ("Bonds"), I have examined the Letter of Representations of the Commonwealth of Puerto Rico, dated January 24, 2008 ("Letter of Representations"), executed by the Acting Secretary of the Treasury.

I have also examined a certified copy of the Master Continuing Disclosure Agreement, dated as of January 1, 2008 ("MCDA"), by and among the System, the Commonwealth of Puerto Rico ("Commonwealth") and The Bank of New York, and such other proofs as I have deemed necessary as a basis for the opinions hereinafter expressed.

Based upon the foregoing, I am of the opinion that:

(a)     The Letter of Representations and the MCDA have been duly authorized, executed and delivered by the Commonwealth and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability thereof against, the other parties thereto, constitute the legal, valid and binding agreements of the Commonwealth, enforceable in accordance with their terms, it being understood that the enforceability thereof may be subject to judicial discretion, the valid exercise of the sovereign immunity of the Commonwealth and valid bankruptcy, insolvency, reorganization, moratorium and other laws affecting creditors' rights.

(b)     All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions and to carry out the transactions contemplated by the Letter of Representations and the MCDA are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

(c)     No litigation is pending (or, to my knowledge, threatened) in any way contesting or affecting any authority for or the validity of the Letter of Representations and the MCDA or that could have a material adverse effect on the financial condition of the Commonwealth.

In addition, I have examined the Preliminary Official Statement and the Official Statement (each as defined in the Letter of Representations) (including the information incorporated therein by reference and the Commonwealth Report included as Appendix IV thereto), and the information contained or incorporated by reference therein relating to the Commonwealth, as well as the factual information appearing under "LITIGATION" in Appendix IV, is correct, and nothing has come to my attention which leads me to believe that such information, as of the respective dates thereof, and as to the Official Statement as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make

PR-ERS-000003671

Consulta Núm. 08-182-A
Page 3

the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

Respectfully submitted,

Roberto J. Sánchez Ramos

PR-ERS-000003672

# Exhibit 35



COMMONWEALTH OF PUERTO RICO
*Department of Justice*

**ROBERTO J. SÁNCHEZ RAMOS**
**SECRETARY OF JUSTICE**

June 2, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Attention: Jose Arias

Consulta Núm. 08-288-A

Ladies and Gentlemen:

In connection with the issuance and sale by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") of $1,058,634,613.05 initial principal amount of Employees Retirement System of the Government of the Commonwealth of Puerto Rico Senior Pension Funding Bonds, Series B (the "Bonds"), I have examined the Letter of Representations of the Commonwealth of Puerto Rico, dated May 28, 2008 (the "Letter of Representations"), executed by the Acting Secretary of the Treasury.

I have also examined a certified copy of the Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), by and among the System, the Commonwealth of Puerto Rico (the "Commonwealth") and The Bank of New York, and such other proofs as I have deemed necessary as a basis for the opinions hereinafter expressed.

Based upon the foregoing, I am of the opinion that:

(a)     The Letter of Representations and the MCDA have been duly authorized, executed and delivered by the Commonwealth and, assuming the due authorization, execution and delivery thereof by, and the validity and

P.O.BOX 9020192, SAN JUAN, PR 00902-0192 Tel. 721-2900 ext. 2100 Fax (787) 724-4770

Consulta Núm. 08-288-A
Page 2

enforceability thereof against, the other parties thereto, constitute the legal, valid and binding agreements of the Commonwealth, enforceable in accordance with their terms, it being understood that the enforceability thereof may be subject to judicial discretion, the valid exercise of the sovereign immunity of the Commonwealth and valid bankruptcy, insolvency, reorganization, moratorium and other laws affecting creditors' rights.

(b)   All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions and to carry out the transactions contemplated by the Letter of Representations and the MCDA are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

(c)   No litigation is pending (or, to my knowledge, threatened) in any way contesting or affecting any authority for or the validity of the Letter of Representations and the MCDA or that could have a material adverse effect on the financial condition of the Commonwealth.

In addition, I have examined the Official Statement (as defined in the Letter of Representations) (including the information incorporated therein by reference), and the information contained or incorporated by reference therein relating to the Commonwealth is correct, and nothing has come to my attention which leads me to believe that such information, as of the date thereof and as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

Cordially,

Roberto J. Sánchez Ramos

# Exhibit 36



COMMONWEALTH OF PUERTO RICO

*Department of Justice*

**ROBERTO J. SÁNCHEZ RAMOS**
**SECRETARY OF JUSTICE**

June 30, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BANCO BILBAO VIZCAYA ARGENTARIA PUERTO RICO
CITIGROUP GLOBAL MARKETS, INC.
EUROBANK MSD
LEHMAN BROTHERS, INC.
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED
ORIENTAL FINANCIAL SERVICES, INC.
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIABANK OF PUERTO RICO
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico  00918
Attention:  Jose Arias

Consulta Núm. 08-317-A

Ladies and Gentlemen:

In connection with the issuance and sale by the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico (the "System") of $300,202,930.00
Employees Retirement System of the Government of the Commonwealth of Puerto Rico Senior
Pension Funding Bonds, Series C (the "Bonds"), I have examined the Letter of Representations
of the Commonwealth of Puerto Rico, dated June 26, 2008 (the "Letter of Representations"),
executed by the Acting Secretary of the Treasury.

PR-ERS-000005219

Consulta Núm. 08-317-A
Page 2

I have also examined a certified copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), by and among the System, the Commonwealth of Puerto Rico (the "Commonwealth") and The Bank of New York, and such other proofs as I have deemed necessary as a basis for the opinions hereinafter expressed.

Based upon the foregoing, I am of the opinion that:

(a)     The Letter of Representations and the MCDA have been duly authorized, executed and delivered by the Commonwealth and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability thereof against, the other parties thereto, constitute the legal, valid and binding agreements of the Commonwealth, enforceable in accordance with their terms, it being understood that the enforceability thereof may be subject to judicial discretion, the valid exercise of the sovereign immunity of the Commonwealth and valid bankruptcy, insolvency, reorganization, moratorium and other laws affecting creditors' rights.

(b)     All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions and to carry out the transactions contemplated by the Letter of Representations and the MCDA are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

(c)     No litigation is pending (or, to my knowledge, threatened) in any way contesting or affecting any authority for or the validity of the Letter of Representations and the MCDA or that could have a material adverse effect on the financial condition of the Commonwealth.

In addition, I have examined the Preliminary Official Statement and the Official Statement (as defined in the Letter of Representations) (including the information incorporated therein by reference), and the information contained or incorporated by reference therein relating to the Commonwealth is correct, and nothing has come to my attention which leads me to believe that such information, as of the date thereof and as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

Cordially,

Roberto J. Sánchez Ramos

# Exhibit 37

**Employees Retirement Commonwealth of the**
**Government of the Commonwealth of Puerto Rico**

**Senior Pension Funding Bonds, Series A**

**LETTER OF REPRESENTATIONS**

San Juan, Puerto Rico
January 30, 2008

Administrator,
Employees Retirement Commonwealth of the
Government of the Commonwealth of Puerto Rico
San Juan, Puerto Rico

UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918

Dear Sirs:

Pursuant to the Contract of Purchase dated the date hereof (the "Purchase Contract") between UBS Financial Services Incorporated of Puerto Rico on behalf of itself and the other underwriters mentioned in the Purchase contract (collectively, the "Underwriters") and Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), the System proposes to issue $1,588,810,799.60 aggregate principal amount of its Senior Pension Funding Bonds, Series A (the "Bonds") pursuant to a resolution, adopted by the System on January 24, 2008 (the "Master Resolution"), and a resolution supplemental thereto, adopted by the System on January 24, 2008 and amended, restated and readopted on the date hereof, fixing the details of the Bonds (the Master Resolution and said supplemental resolution together, the "Bond Resolution"). The proceeds of the Bonds will be used by the System to, among other things, (i) provide funds for deposit with the System to reduce its unfunded accrued actuarial liability, (ii) make a deposit to a debt service reserve fund established under the Bond Resolution, and (iii) pay a portion of the costs of issuing the Bonds. Under the Bond Resolution, the Bonds will be secured by a pledge of, among other items of security, Employers' Contributions (as defined in the Bond Resolution), a substantial part of which are paid by or for the benefit of the Commonwealth of Puerto Rico (the "Commonwealth").

Unless otherwise defined in this letter, capitalized terms which are defined in the Purchase Contract shall have the respective meanings therein specified.

In order to induce you to enter into the Purchase Contract, the terms of which are hereby approved, and to make the offering and sale of the Bonds therein contemplated,

NY1 6382126v.2

the Commonwealth, intending to be legally bound, hereby represents, warrants and agrees with each of you as follows:

(a) The Commonwealth has full legal right, power and authority to enter into this Letter of Representations and the MCDA;

(b) No approval, permit, consent, or authorization of, or registration or filing with, any governmental or public agency or authority not already obtained or made is required by the Commonwealth in connection with the execution, delivery or due performance of its obligations under this Letter of Representations and the MCDA, and any such approvals, permits, consents or authorizations so obtained are in full force and effect.

(c) Except as set forth in the Official Statement, the Commonwealth is not in breach of or default under any applicable constitutional provision, law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States, or any agency or department of either, or any applicable judgment or decree or any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the Commonwealth is a party or to which the Commonwealth or any of its properties or other assets is otherwise subject, and no event has occurred and is continuing relating to bonds, notes or other evidences of indebtedness of the Commonwealth or any Commonwealth guaranty of bonds, notes or other evidences or indebtedness of others which, with the passage of time or the giving of notice, or both, would constitute a default or an event of default under any such instrument; and the execution and delivery of the MCDA and this Letter of Representations (and any other agreement or instrument to which the Commonwealth is a party used or contemplated for use in the consummation of the transactions contemplated hereby or by the Bond Resolution, the MCDA or the Official Statement), and compliance with the provisions on the Commonwealth's part contained herein or therein, do not and will not conflict with any constitutional provision, law (including, without limitation, any administrative rule-making law), administrative regulation, judgment or decree, or constitute a breach of or default under any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the Commonwealth is a party or to which the Commonwealth or any of its properties or other assets is otherwise subject.

(d) Except for the information permitted by the Rule to be excluded therefrom, the information contained or incorporated by reference in Commonwealth Report in the Preliminary Official Statement was as of the date of said Preliminary Official Statement true and correct in all material respects, and such information did not as of its date contain any untrue statement of a material fact or omit to state a material fact which is necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading. The Commonwealth Report was deemed "final" by the Commonwealth for purposes of paragraph (b)(1) of the Rule, except for the omission therefrom of information permitted to be omitted therefrom by the Rule. Except as disclosed in the Official Statement, the Commonwealth has not failed to comply with any prior continuing disclosure undertaking applicable to it.



NY1 6382126v.2

(e) Except as disclosed in the Official Statement, since the date of the basic financial statements of the Commonwealth for fiscal year 2006, which are included or incorporated by reference in the Official Statement, the Commonwealth has not incurred, as of the date hereof, and will not have incurred, on the Closing Date, any material liabilities, direct or contingent, or entered into any material transaction, in each case other than in the ordinary course of its business, and as of the date hereof there has not been, and as of the Closing Date there shall not have been, any material adverse change in the condition, financial or otherwise, of the Commonwealth or its properties or other assets.

(f) There is no action, suit, proceeding, inquiry or investigation, at law or in equity, before or by any court, government agency or public board or body, pending or, to the knowledge of the Commonwealth, threatened, which may affect or which seeks to prohibit, restrain or enjoin the sale, issuance or delivery of the Bonds, or the collection or application of any Employers' Contributions or the pledge thereof contained in the Bond Resolution and as described in the Official Statement, or which in any way contests or affects the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, the Purchase Contract, this Letter of Representations or any of them, or which may result in any material adverse change in the business, properties, other assets or financial condition of the Commonwealth as described in the Official Statement, or which contests in any way the completeness or accuracy of the Preliminary Official Statement or the Official Statement, or which contests the powers of the Commonwealth or any authority or proceedings for the issuance, sale or delivery of the Bonds, the adoption of the Bond Resolution or the execution and delivery of the MCDA, the Purchase Contract or this Letter of Representations, or any of them, nor, to the knowledge of the Commonwealth, is there any basis therefor, wherein an unfavorable decision, ruling or finding would materially adversely affect the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, this Letter of Representations, the Purchase Contract, or any of them.

(g) The MCDA conforms to the description thereof contained in the Official Statement and the references to and summaries of the MCDA contained in the Official Statement fairly reflect the provisions thereof.

(h) At the date hereof and, subject to the provisions of subparagraph (l) of paragraph 6 of the Purchase Contract, at all times subsequent thereto to and including the Closing Date, the information concerning the Commonwealth in or incorporated by reference in the Official Statement does not and will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading.

(i) The Commonwealth authorizes and consents to the use of drafts of the Preliminary Official Statement, the Preliminary Official Statement and drafts of the Official Statement by the Underwriters prior to the availability of the Official Statement for such purposes as such documents may be legally used.

PR-ERS-000003838

(j) If the Official Statement is supplemented or amended pursuant to subparagraph (l) of paragraph 6 of the Purchase Contract prior to the Closing Date, at the time of each supplement or amendment thereto and (unless subsequently supplemented or amended pursuant to such subsection) at all times subsequent thereto to and including the Closing Date, the information concerning the Commonwealth in or incorporated by reference in the Official Statement, as so supplemented or amended, will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(k) If between the date of this Letter of Representations and the date which is twenty-five (25) days after the end of the underwriting period (as such term is defined in paragraph (f)(2) of the Rule) any event shall occur or shall exist which would or might cause the information concerning the Commonwealth in or incorporated by reference in Official Statement, as then supplemented or amended, to contain any untrue statement of a material fact or to omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, the Commonwealth shall notify the Representative thereof. If in the reasonable opinion of the Representative such event requires the preparation and publication of a supplement or amendment to such information in the Official Statement, the Commonwealth will at its expense supplement or amend, or cause to be supplemented or amended, such information in a form and in a manner approved in writing by the Representative, and provide the Underwriters with such copies of such supplement or amendment as the Representative may reasonably request in writing so as to enable the Underwriters to comply with the provisions of paragraph (b)(4) of the Rule. The Commonwealth shall be under no obligation to determine whether the number of copies requested by the Representative of any such amendment of or supplement pursuant to the preceding sentence shall be sufficient to enable the Underwriters to comply with the requirements of said paragraph (b)(4), and the Commonwealth may conclusively rely upon any such request of the Representative.

(l) The financial statements of the Commonwealth included or incorporated by reference in the Official Statement present fairly the financial condition and results of operations of the Commonwealth at the dates and for the periods set forth therein.

(m) The Commonwealth covenants and agrees to enter into the MCDA to provide ongoing disclosure about the Commonwealth for the benefit of the beneficial owners of the Bonds on or before the date of delivery of the Bonds as required under Section (b)(5) of Rule 15c2-12. The MCDA shall be as described in the Preliminary Official Statement with such changes as may be agreed to in writing by the Representative.

This Letter of Representations is made solely for the benefit of the signatories hereto (including the successors or assigns of the Underwriters) and no other person shall acquire or have any right hereunder or by virtue hereof. All representations, warranties and agreements in this Letter of Representations shall remain operative and


NY1 6382126v.2

survive in full force and effect regardless of (a) delivery of and payment for the Bonds under the Purchase Contract, and (b) any termination of the Purchase Contract or this Letter of Representations.

Kindly confirm your acceptance of this Letter of Representations by signing and returning to the Commonwealth a duplicate hereof.

Very truly yours.

COMMONWEALTH OF PUERTO RICO

By: _____
Acting Secretary of the Treasury

ACCEPTED and CONFIRMED as
of the date first above written:

UBS Financial Services Incorporated of Puerto Rico,
Representative(s) of the several Underwriters

By: _____
Managing Director

EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE COMMONWEALTH
OF PUERTO RICO

By: _____
Administrator

NY1 6382126v.2

PR-ERS-000003840

# Exhibit 38

(45)

## Employees Retirement Commonwealth of the Government of the Commonwealth of Puerto Rico

### Senior Pension Funding Bonds, Series B

### LETTER OF REPRESENTATIONS

San Juan, Puerto Rico
June 2, 2008

Administrator,
Employees Retirement Commonwealth of the
Government of the Commonwealth of Puerto Rico
San Juan, Puerto Rico

UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918

Dear Sirs:

Pursuant to the Contract of Purchase dated the date hereof (the "Purchase Contract") between UBS Financial Services Incorporated of Puerto Rico on behalf of itself and the other underwriters mentioned in the Purchase contract (collectively, the "Underwriters") and Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), the System proposes to issue $1,058,634,613.05 aggregate principal amount of its Senior Pension Funding Bonds, Series B (the "Bonds") pursuant to a resolution, adopted by the System on January 24, 2008 (the "Master Resolution"), and a resolution supplemental thereto, adopted by the System on May 27, 2008, fixing the details of the Bonds (the Master Resolution and said supplemental resolution together, the "Bond Resolution"). The proceeds of the Bonds will be used by the System to, among other things, (i) provide funds for deposit with the System to reduce its unfunded accrued actuarial liability, (ii) make a deposit to a debt service reserve fund established under the Bond Resolution, and (iii) pay a portion of the costs of issuing the Bonds. Under the Bond Resolution, the Bonds will be secured by a pledge of, among other items of security, Employers' Contributions (as defined in the Bond Resolution), a substantial part of which are paid by or for the benefit of the Commonwealth of Puerto Rico (the "Commonwealth").

Unless otherwise defined in this letter, capitalized terms which are defined in the Purchase Contract shall have the respective meanings therein specified.

In order to induce you to enter into the Purchase Contract, the terms of which are hereby approved, and to make the offering and sale of the Bonds therein contemplated, the Commonwealth, intending to be legally bound, hereby represents, warrants and agrees with each of you as follows:

1

(a) The Commonwealth has full legal right, power and authority to enter into this Letter of Representations and the MCDA;

(b) No approval, permit, consent, or authorization of, or registration or filing with, any governmental or public agency or authority not already obtained or made is required by the Commonwealth in connection with the execution, delivery or due performance of its obligations under this Letter of Representations and the MCDA, and any such approvals, permits, consents or authorizations so obtained are in full force and effect.

(c) Except as set forth in the Official Statement, the Commonwealth is not in breach of or default under any applicable constitutional provision, law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States, or any agency or department of either, or any applicable judgment or decree or any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the Commonwealth is a party or to which the Commonwealth or any of its properties or other assets is otherwise subject, and no event has occurred and is continuing relating to bonds, notes or other evidences of indebtedness of the Commonwealth or any Commonwealth guaranty of bonds, notes or other evidences or indebtedness of others which, with the passage of time or the giving of notice, or both, would constitute a default or an event of default under any such instrument; and the execution and delivery of the MCDA and this Letter of Representations (and any other agreement or instrument to which the Commonwealth is a party used or contemplated for use in the consummation of the transactions contemplated hereby or by the Bond Resolution, the MCDA or the Official Statement), and compliance with the provisions on the Commonwealth's part contained herein or therein, do not and will not conflict with any constitutional provision, law (including, without limitation, any administrative rule-making law), administrative regulation, judgment or decree, or constitute a breach of or default under any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the Commonwealth is a party or to which the Commonwealth or any of its properties or other assets is otherwise subject.

(d) The Commonwealth Report was deemed "final" by the Commonwealth for purposes of paragraph (b)(1) of the Rule, except for the omission therefrom of information permitted to be omitted therefrom by the Rule. Except as disclosed in the Official Statement, the Commonwealth has not failed to comply with any prior continuing disclosure undertaking applicable to it.

(e) Except as disclosed in the Official Statement, since the date of the basic financial statements of the Commonwealth for fiscal year 2006, which are included or incorporated by reference in the Official Statement, the Commonwealth has not incurred, as of the date hereof, and will not have incurred, on the Closing Date, any material liabilities, direct or contingent, or entered into any material transaction, in each case other than in the ordinary course of its business, and as of the date hereof there has not been, and as of the Closing Date there shall not have been, any material adverse change in the condition, financial or otherwise, of the Commonwealth or its properties or other assets.

(f) There is no action, suit, proceeding, inquiry or investigation, at law or in equity, before or by any court, government agency or public board or body, pending or, to the

2

knowledge of the Commonwealth, threatened, which may affect or which seeks to prohibit, restrain or enjoin the sale, issuance or delivery of the Bonds, or the collection or application of any Employers' Contributions or the pledge thereof contained in the Bond Resolution and as described in the Official Statement, or which in any way contests or affects the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, the Purchase Contract, this Letter of Representations or any of them, or which may result in any material adverse change in the business, properties, other assets or financial condition of the Commonwealth as described in the Official Statement, or which contests in any way the completeness or accuracy of the Official Statement, or which contests the powers of the Commonwealth or any authority or proceedings for the issuance, sale or delivery of the Bonds, the adoption of the Bond Resolution or the execution and delivery of the MCDA, the Purchase Contract or this Letter of Representations, or any of them, nor, to the knowledge of the Commonwealth, is there any basis therefor, wherein an unfavorable decision, ruling or finding would materially adversely affect the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, this Letter of Representations, the Purchase Contract, or any of them.

(g) The MCDA conforms to the description thereof contained in the Official Statement and the references to and summaries of the MCDA contained in the Official Statement fairly reflect the provisions thereof.

(h) At the date hereof and, subject to the provisions of subparagraph (l) of paragraph 6 of the Purchase Contract, at all times subsequent thereto to and including the Closing Date, the information concerning the Commonwealth in or incorporated by reference in the Official Statement does not and will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading.

(i) The Commonwealth authorizes and consents to the use of drafts of the Official Statement by the Underwriters prior to the availability of the Official Statement for such purposes as such documents may be legally used.

(j) If the Official Statement is supplemented or amended pursuant to subparagraph (l) of paragraph 6 of the Purchase Contract prior to the Closing Date, at the time of each supplement or amendment thereto and (unless subsequently supplemented or amended pursuant to such subsection) at all times subsequent thereto to and including the Closing Date, the information concerning the Commonwealth in or incorporated by reference in the Official Statement, as so supplemented or amended, will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(k) If between the date of this Letter of Representations and the date which is twenty-five (25) days after the end of the underwriting period (as such term is defined in paragraph (f)(2) of the Rule) any event shall occur or shall exist which would or might cause the information concerning the Commonwealth in or incorporated by reference in Official Statement, as then supplemented or amended, to contain any untrue statement of a material fact or to omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, the Commonwealth shall notify the

3

Representative thereof. If in the reasonable opinion of the Representative such event requires the preparation and publication of a supplement or amendment to such information in the Official Statement, the Commonwealth will at its expense supplement or amend, or cause to be supplemented or amended, such information in a form and in a manner approved in writing by the Representative, and provide the Underwriters with such copies of such supplement or amendment as the Representative may reasonably request in writing so as to enable the Underwriters to comply with the provisions of paragraph (b)(4) of the Rule.   The Commonwealth shall be under no obligation to determine whether the number of copies requested by the Representative of any such amendment of or supplement pursuant to the preceding sentence shall be sufficient to enable the Underwriters to comply with the requirements of said paragraph (b)(4), and the Commonwealth may conclusively rely upon any such request of the Representative.

(l) The financial statements of the Commonwealth included or incorporated by reference in the Official Statement present fairly the financial condition and results of operations of the Commonwealth at the dates and for the periods set forth therein.

(m) The Commonwealth covenants and agrees to enter into the MCDA to provide ongoing disclosure about the Commonwealth  for the benefit of the beneficial owners of the Bonds on or before the date of delivery of the Bonds as required under Section (b)(5) of Rule 15c2-12. The MCDA shall be as described in the Official Statement with such changes as may be agreed to in writing by the Representative.

This Letter of Representations is made solely for the benefit of the signatories hereto (including the successors or assigns of the Underwriters) and no other person shall acquire or have any right hereunder or by virtue hereof.  All representations, warranties and agreements in this Letter of Representations shall remain operative and survive in full force and effect regardless of (a) delivery of and payment for the Bonds under the Purchase Contract, and (b) any termination of the Purchase Contract or this Letter of Representations.

4

Kindly confirm your acceptance of this Letter of Representations by signing and returning to the Commonwealth a duplicate hereof.

Very truly yours,

COMMONWEALTH OF PUERTO RICO

By: _____
Acting Secretary of the Treasury

ACCEPTED and CONFIRMED as
of the date first above written:

UBS Financial Services Incorporated of Puerto Rico,
Representative(s) of the several Underwriters

By: _____
Managing Director

EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE COMMONWEALTH
OF PUERTO RICO

By: _____
Acting Administrator

5

PR-ERS-000004514

# Exhibit 39

(47)

### Employees Retirement Commonwealth of the Government of the Commonwealth of Puerto Rico

### Senior Pension Funding Bonds, Series C

### LETTER OF REPRESENTATIONS

San Juan, Puerto Rico
June 26, 2008

Administrator,
Employees Retirement Commonwealth of the
Government of the Commonwealth of Puerto Rico
San Juan, Puerto Rico

UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918

Dear Sirs:

Pursuant to the Contract of Purchase dated the date hereof (the "Purchase Contract") between UBS Financial Services Incorporated of Puerto Rico on behalf of itself and the other underwriters mentioned in the Purchase Contract (collectively, the "Underwriters") and Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), the System proposes to issue $300,202,930.00 aggregate principal amount of its Senior Pension Funding Bonds, Series C (the "Bonds") pursuant to a resolution, adopted by the System on January 24, 2008 (the "Master Resolution"), and a resolution supplemental thereto, adopted by the System on June 26, 2008, fixing the details of the Bonds (the Master Resolution and said supplemental resolution together, the "Bond Resolution"). The proceeds of the Bonds will be used by the System to, among other things, (i) provide funds for deposit with the System to reduce its unfunded accrued actuarial liability, (ii) make a deposit to a debt service reserve fund established under the Bond Resolution, and (iii) pay a portion of the costs of issuing the Bonds. Under the Bond Resolution, the Bonds will be secured by a pledge of, among other items of security, Employers' Contributions (as defined in the Bond Resolution), a substantial part of which are paid by or for the benefit of the Commonwealth of Puerto Rico (the "Commonwealth").

Unless otherwise defined in this letter, capitalized terms which are defined in the Purchase Contract shall have the respective meanings therein specified.

In order to induce you to enter into the Purchase Contract, the terms of which are hereby approved, and to make the offering and sale of the Bonds therein contemplated, the Commonwealth, intending to be legally bound, hereby represents, warrants and agrees with each of you as follows:

1

(a) The Commonwealth has full legal right, power and authority to enter into this Letter of Representations and the MCDA;

(b) No approval, permit, consent, or authorization of, or registration or filing with, any governmental or public agency or authority not already obtained or made is required by the Commonwealth in connection with the execution, delivery or due performance of its obligations under this Letter of Representations and the MCDA, and any such approvals, permits, consents or authorizations so obtained are in full force and effect.

(c) Except as set forth in the Official Statement, the Commonwealth is not in breach of or default under any applicable constitutional provision, law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States, or any agency or department of either, or any applicable judgment or decree or any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the Commonwealth is a party or to which the Commonwealth or any of its properties or other assets is otherwise subject, and no event has occurred and is continuing relating to bonds, notes or other evidences of indebtedness of the Commonwealth or any Commonwealth guaranty of bonds, notes or other evidences or indebtedness of others which, with the passage of time or the giving of notice, or both, would constitute a default or an event of default under any such instrument; and the execution and delivery of the MCDA and this Letter of Representations (and any other agreement or instrument to which the Commonwealth is a party used or contemplated for use in the consummation of the transactions contemplated hereby or by the Bond Resolution, the MCDA or the Official Statement), and compliance with the provisions on the Commonwealth's part contained herein or therein, do not and will not conflict with any constitutional provision, law (including, without limitation, any administrative rule-making law), administrative regulation, judgment or decree, or constitute a breach of or default under any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the Commonwealth is a party or to which the Commonwealth or any of its properties or other assets is otherwise subject.

(d) The Commonwealth Report was deemed "final" by the Commonwealth for purposes of paragraph (b)(1) of the Rule, except for the omission therefrom of information permitted to be omitted therefrom by the Rule. Except as disclosed in the Official Statement, the Commonwealth has not failed to comply with any prior continuing disclosure undertaking applicable to it.

(e) Except as disclosed in the Official Statement, since the date of the basic financial statements of the Commonwealth for fiscal year 2006, which are included or incorporated by reference in the Official Statement, the Commonwealth has not incurred, as of the date hereof, and will not have incurred, on the Closing Date, any material liabilities, direct or contingent, or entered into any material transaction, in each case other than in the ordinary course of its business, and as of the date hereof there has not been, and as of the Closing Date there shall not have been, any material adverse change in the condition, financial or otherwise, of the Commonwealth or its properties or other assets.

(f) There is no action, suit, proceeding, inquiry or investigation, at law or in equity, before or by any court, government agency or public board or body, pending or, to the

PR-ERS-000005319

knowledge of the Commonwealth, threatened, which may affect or which seeks to prohibit, restrain or enjoin the sale, issuance or delivery of the Bonds, or the collection or application of any Employers' Contributions or the pledge thereof contained in the Bond Resolution and as described in the Official Statement, or which in any way contests or affects the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, the Purchase Contract, this Letter of Representations or any of them, or which may result in any material adverse change in the business, properties, other assets or financial condition of the Commonwealth as described in the Official Statement, or which contests in any way the completeness or accuracy of the Official Statement, or which contests the powers of the Commonwealth or any authority or proceedings for the issuance, sale or delivery of the Bonds, the adoption of the Bond Resolution or the execution and delivery of the MCDA, the Purchase Contract or this Letter of Representations, or any of them, nor, to the knowledge of the Commonwealth, is there any basis therefor, wherein an unfavorable decision, ruling or finding would materially adversely affect the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, this Letter of Representations, the Purchase Contract, or any of them.

(g) The MCDA conforms to the description thereof contained in the Official Statement and the references to and summaries of the MCDA contained in the Official Statement fairly reflect the provisions thereof.

(h) At the date hereof and, subject to the provisions of subparagraph (l) of paragraph 6 of the Purchase Contract, at all times subsequent thereto to and including the Closing Date, the information concerning the Commonwealth in or incorporated by reference in the Official Statement does not and will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading.

(i) The Commonwealth authorizes and consents to the use of drafts of the Official Statement by the Underwriters prior to the availability of the Official Statement for such purposes as such documents may be legally used.

(j) If the Official Statement is supplemented or amended pursuant to subparagraph (l) of paragraph 6 of the Purchase Contract prior to the Closing Date, at the time of each supplement or amendment thereto and (unless subsequently supplemented or amended pursuant to such subsection) at all times subsequent thereto to and including the Closing Date, the information concerning the Commonwealth in or incorporated by reference in the Official Statement, as so supplemented or amended, will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(k) If between the date of this Letter of Representations and the date which is twenty-five (25) days after the end of the underwriting period (as such term is defined in paragraph (f)(2) of the Rule) any event shall occur or shall exist which would or might cause the information concerning the Commonwealth in or incorporated by reference in Official Statement, as then supplemented or amended, to contain any untrue statement of a material fact or to omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, the Commonwealth shall notify the

3

Representative thereof. If in the reasonable opinion of the Representative such event requires the preparation and publication of a supplement or amendment to such information in the Official Statement, the Commonwealth will at its expense supplement or amend, or cause to be supplemented or amended, such information in a form and in a manner approved in writing by the Representative, and provide the Underwriters with such copies of such supplement or amendment as the Representative may reasonably request in writing so as to enable the Underwriters to comply with the provisions of paragraph (b)(4) of the Rule.   The Commonwealth shall be under no obligation to determine whether the number of copies requested by the Representative of any such amendment of or supplement pursuant to the preceding sentence shall be sufficient to enable the Underwriters to comply with the requirements of said paragraph (b)(4), and the Commonwealth may conclusively rely upon any such request of the Representative.

(l) The financial statements of the Commonwealth included or incorporated by reference in the Official Statement present fairly the financial condition and results of operations of the Commonwealth at the dates and for the periods set forth therein.

(m) The Commonwealth covenants and agrees to enter into the MCDA to provide ongoing disclosure about the Commonwealth for the benefit of the beneficial owners of the Bonds on or before the date of delivery of the Bonds as required under Section (b)(5) of Rule 15c2-12. The MCDA shall be as described in the Official Statement with such changes as may be agreed to in writing by the Representative.

This Letter of Representations is made solely for the benefit of the signatories hereto (including the successors or assigns of the Underwriters) and no other person shall acquire or have any right hereunder or by virtue hereof. All representations, warranties and agreements in this Letter of Representations shall remain operative and survive in full force and effect regardless of (a) delivery of and payment for the Bonds under the Purchase Contract, and (b) any termination of the Purchase Contract or this Letter of Representations.

4

PR-ERS-000005321

Kindly confirm your acceptance of this Letter of Representations by signing and returning to the Commonwealth a duplicate hereof.

Very truly yours,

COMMONWEALTH OF PUERTO RICO

By:_____

Acting Secretary of the Treasury

ACCEPTED and CONFIRMED as
of the date first above written:

UBS Financial Services Incorporated of Puerto Rico,
Representative(s) of the several Underwriters

By:_____

Managing Director

EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE COMMONWEALTH
OF PUERTO RICO

By:_____

Acting Administrator

5

Kindly confirm your acceptance of this Letter of Representations by signing and returning to the Commonwealth a duplicate hereof.

Very truly yours,

COMMONWEALTH OF PUERTO RICO

By:_____
              Acting Secretary of the Treasury

ACCEPTED and CONFIRMED as
of the date first above written:

UBS Financial Services Incorporated of Puerto Rico,
    Representative(s) of the several Underwriters

By:_____
        Managing Director

EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE COMMONWEALTH
OF PUERTO RICO

By:_____
        Acting Administrator

5

PR-ERS-000005323

Kindly confirm your acceptance of this Letter of Representations by signing and returning to the Commonwealth a duplicate hereof.

Very truly yours,

COMMONWEALTH OF PUERTO RICO

By:_____

Acting Secretary of the Treasury

ACCEPTED and CONFIRMED as
of the date first above written:

UBS Financial Services Incorporated of Puerto Rico,
Representative(s) of the several Underwriters

By:_____

Managing Director

EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE COMMONWEALTH
OF PUERTO RICO

By:_____

Acting Administrator

5

PR-ERS-000005324

# Exhibit 40

(6)

## CERTIFICATE OF SECRETARY OF THE SYSTEM
## AS TO MASTER CONTINUING DISCLOSURE AGREEMENT

I, Rosa Castro Rivera, Secretary of the Board of Trustees of Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), **DO HEREBY CERTIFY** that attached hereto is a true and correct copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008, which form of Master Continuing Disclosure Agreement was approved by resolution duly adopted by the Board of Trustees of the System (the "Board") on January 24, 2008.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said System this 31st day of January, 2008.



Rosa Castro Rivera

Secretary of the Board of Trustees
Employees Retirement System of the Government
of the Commonwealth of Puerto Rico

FIDDLER-#703510-v1-4th_draft_Closing_Documents

## EMPLOYEES RETIREMENT SYSTEM
## OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

### CONTINUING DISCLOSURE AGREEMENT

This Master Continuing Disclosure Agreement (the "Disclosure Agreement") is executed and delivered by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") and the Commonwealth of Puerto Rico (the "Commonwealth") in connection with the issuance of the System's Senior Pension Funding Bonds, Series A (the "Series A Bonds"), issued pursuant to a Pension Funding Bond Resolution (the "General Resolution") and an Amended and Restated First Supplemental Pension Funding Bond Resolution (the "First Supplemental Bond Resolution" and, together with the General Resolution, the "Resolution") adopted by the Board of Trustees of the System on January 24, 2008, and January 29, 2008, pursuant to which The Bank of New York will act as Fiscal Agent (the "Fiscal Agent").

The System and the Commonwealth hereby covenant and agree as follows:

SECTION 1. <u>Purpose of the Disclosure Agreement</u>. This Disclosure Agreement is being executed and delivered by the System for the benefit of the Holders of the Series A Bonds and all other bonds issued under the General Resolution (collectively, the "Bonds") in order to assist the Participating Underwriters in complying with the Rule.

SECTION 2. <u>Definitions</u>. The following terms shall have the following meanings for purposes of this Disclosure Agreement:

"Annual Report" shall mean any Annual Report provided by the System pursuant to, and as described in, Sections 3 and 4 of this Disclosure Agreement.

"Dissemination Agent" shall mean the System, acting in its capacity as Dissemination Agent hereunder, or any successor Dissemination Agent designated in writing by the System and which has filed with the System a written acceptance of such designation.

"Fiscal Year" shall mean the twelve-month period at the end of which the financial position of the System and results of its operations for such period are determined. Currently, the System's Fiscal Year begins on July 1 and continues through June 30 of the next year.

"Holder" shall mean any person who is a record owner or beneficial owner of a Bond.

"National Repository" shall mean any Nationally Recognized Municipal Securities Information Repository for purposes of the Rule.

"Participating Underwriter" shall mean any of the original purchasers of the System's Bonds required to comply with the Rule in connection with the offering of such Bonds.

"Repository" shall mean each National Repository and any State Repository.



"Rule" shall mean Rule 15c2-12 adopted by the SEC under the Securities Exchange Act of 1934, as the same may be amended from time to time.

"SEC" means the United States Securities and Exchange Commission.

"State Repository" shall mean any public or private depository or entity designated by the System as a state information depository for purposes of the Rule.

SECTION 3.   Provision of Annual Reports; Audited Financial Statements.

(a)     Not later than 305 days following the end of each Fiscal Year of the System, commencing with the Fiscal Year ending June 30, 2008, each of the System and the Commonwealth shall, or shall cause the Dissemination Agent (if different from the System) to, provide to each Repository an Annual Report which is consistent with the requirements of Section 4 of this Disclosure Agreement.  Not later than 10 days prior to said date, each of the System and the Commonwealth shall provide the Annual Report to the Dissemination Agent (if applicable).  In each case, the Annual Report (i) may be submitted as a single document or as separate documents comprising a package, (ii) may cross-reference other information as provided in Section 4 of this Disclosure Agreement, and (iii) shall include the financial statements described in subsection (b).

(b)     The annual financial statements of the System and of the Commonwealth shall be prepared on the basis of generally accepted accounting principles and will be audited.  Copies of the audited annual financial statements, which may be filed separately from the Annual Report, will be filed with each Repository when they become publicly available.  If the audited annual financial statements have not been previously filed with each Repository when the Annual Report is due, copies of the unaudited financial statements will be filed with the Annual Report.

(c)     If the System or the Commonwealth fails to provide an Annual Report to each Repository by the date required in subsection (a) hereof or to file its audited annual financial statements with each Repository when they become publicly available, the System or the Commonwealth, as applicable, shall send, in a timely manner, an appropriate notice to each National Repository or the Municipal Securities Rulemaking Board and any State Repository in substantially the form attached hereto as Exhibit A hereto.

(d)     The Commonwealth expects to provide the information described above (excluding the audited financial statements) by delivering annually its first official statement that includes its Commonwealth Report for the relevant fiscal year, or, if no such official statement is delivered by the deadline set forth herein, by delivering a separate Commonwealth Report by such

2

deadline. The Commonwealth expects to provide its audited financial statements by filing its Comprehensive Annual Financial Report as a separate document by such deadline.

(e) The System covenants to file in a timely manner, with each National Repository or with the MSRB, and with the Fiscal Agent and any State Depository, notice of the occurrence of any of the following events with respect to the Bonds, if material:

1. principal and interest payment delinquencies;

2. non-payment related defaults;

3. unscheduled draws on debt service reserves reflecting financial difficulties;

4. unscheduled draws on credit enhancements reflecting financial difficulties;

5. substitution of credit or liquidity providers, or their failure to perform;

6. adverse opinions or events affecting the tax-exempt status of the Bonds;

7. modifications to rights of the holders (including beneficial owners) of the Bonds;

8. bond calls;

9. defeasances;

10. release, substitution, or sale of property securing repayment of the Bonds;

11. rating changes; and

12. any failure of the System or the Commonwealth to comply with paragraph (a) above.

(f) The System does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the System applies for or participates in obtaining the enhancement.

(g) The System does not undertake to provide notice of the Listed Event in item (8) above with respect to any scheduled redemption, not otherwise contingent upon the occurrence of an event, if (i) the terms, dates and amounts of such redemption are set forth in the Official Statement relating to the Bonds, (ii) the only open issue is which Bonds will be redeemed in



3

PR-ERS-000003546

the case of a partial redemption, (iii) notice of redemption is given to the Bondholders as required under the terms of the Bonds and the Resolution; and (iv) public notice of redemption is given pursuant to Securities Exchange Act of 1934 Release No. 34-2385 of the Securities and Exchange Commission even if the originally scheduled amounts are reduced by prior optional redemptions or purchases of Bonds.

(h)     The System may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the System, such other events are material with respect to the Bonds, but the System does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

SECTION 4. <u>Content of Annual Reports</u>. Each Annual Report required to be filed hereunder shall include, at a minimum, the information included in the System's Official Statement prepared in connection with the sale of the Series A Bonds as it relates to the System and the Commonwealth, updated to reflect events occurring and information available through the end of the fiscal year covered by the Annual Report. Any or all of such information may be incorporated by reference from other documents, including official statements containing information with respect to the System and the Commonwealth, which have been filed with each Repository or the SEC. No final official statement may be incorporated by reference in the Annual Report unless it is available from the Municipal Securities Rulemaking Board. The System shall clearly identify each such other document so incorporated by reference.

SECTION 5. <u>Termination of Reporting Obligation</u>. The obligations of the System and the Commonwealth under this Disclosure Agreement shall terminate upon the earlier to occur of the legal defeasance and the final retirement of the Bonds.

SECTION 6. <u>Dissemination Agent</u>. Each of the System and the Commonwealth may, from time to time, appoint or engage a Dissemination Agent to assist it in carrying out its obligations under this Disclosure Agreement and may discharge any such Agent, with or without appointing a successor Dissemination Agent. If at any time there is not any other designated Dissemination Agent, the System and the Commonwealth shall be their own Dissemination Agents.

SECTION 7. <u>Amendment</u>. Notwithstanding any other provision of this Disclosure Agreement, the System and the Commonwealth may amend this Disclosure Agreement, if (1) the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the System or the Commonwealth, respectively, or type of business conducted; this Agreement, as amended, would have complied with the requirements of the Rule at the date of the execution and delivery hereof, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of Holders, as determined by parties unaffiliated with the System or the Commonwealth; or (2) all or any part of the Rule ceases to be in effect for any reason, and the System or the Commonwealth, respectively, elects that this Agreement shall be deemed amended accordingly.

4

The System and the Commonwealth further agree that, in connection with any such amendment, the Annual Report will explain, in narrative form, the reasons for the amendment and the impact of the change on the information being provided.

SECTION 8. Additional Information. Nothing in this Disclosure Agreement shall be deemed to prevent the System or the Commonwealth from disseminating any other information, using the means of dissemination set forth in this Disclosure Agreement or any other means of communication, or including any other information in any Annual Report, in addition to that which is required by this Disclosure Agreement. If the System or the Commonwealth chooses to include any information in any Annual Report not specifically required by this Disclosure Agreement, the System or the Commonwealth, as the case may be, shall not have any obligation under this Disclosure Agreement to update such information, and the System or the Commonwealth, as the case may be, shall have no obligation to include it in any future Annual Report.

SECTION 9. Default. (a) Any person referred to in Section 10 of this Disclosure Agreement (other than the System or the Commonwealth) may take such action as may be permitted by law or in equity against the appropriate public official to secure compliance with the obligations of the System and the Commonwealth to file its Annual Report. In addition, holders of not less than a majority in aggregate principal amount of Bonds outstanding may take such actions as may be permitted by law, to challenge the adequacy of any information provided pursuant to this Disclosure Agreement, or to enforce any other obligation of the System or the Commonwealth hereunder. A default under this Disclosure Agreement shall not be deemed an event of default under any applicable resolution, trust agreement, indenture or other debt authorization of the System or the Commonwealth. Nothing in this Section shall be deemed to restrict the rights or remedies of any Holder pursuant to the Securities Exchange Act of 1934, the rules and regulations promulgated thereunder, or other applicable laws.

(b) No Holder may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of this Disclosure Agreement or for any remedy for breach thereof, unless such Holder shall have filed with the System or the Commonwealth, as the case may be, written notice of any request to cure such breach, and the System or the Commonwealth shall have refused to comply within a reasonable time. All Proceedings shall be instituted only in a court of the Commonwealth of Puerto Rico located in the Municipality of San Juan, Puerto Rico, for the equal benefit of all Holders from time to time of the Bonds benefited by this Disclosure Agreement, and no remedy shall be sought or granted other than the specific performance of this Disclosure Agreement.

SECTION 10. Beneficiaries. This Disclosure Agreement shall inure solely to the benefit of the parties, the Participating Underwriters, and Holders from time to time of the Bonds, and shall create no rights in any other person or entity.

5

In witness whereof, the parties have executed this agreement as of the date first written above.

EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

By:
Name:
Title:

**COMMONWEALTH OF PUERTO RICO**

By:
Name:
Title:

Acknowledged as of the date set forth below

**BANK OF NEW YORK**

By:
Name:      JOANNE ADAMIS
Title:      VICE PRESIDENT

Date:  January 31, 2008

6

## EXHIBIT A

### NOTICE OF FAILURE TO FILE ANNUAL REPORT
### [AUDITED ANNUAL FINANCIAL STATEMENTS]

### EMPOYEES RETIREMENT SYSTEM
### OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
in connection with its
Senior Pension Funding Bonds, Series A

CUSIP NO. _____

Dated: _____

NOTICE IS HEREBY GIVEN that [the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System")] [the Commonweal of Puerto Rico] has not provided an Annual Report [Audited Annual Financial Statements] as required by Section 3 of the certain Continuing Disclosure Agreement, which was delivered in connection with the above-named bonds issued by the System on January 31, 2008.  The [System] [Commonwealth] anticipates that the Annual Report [Audited Annual Financial Statements] will be filed by _____ _____.

Dated: _____

> [EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO] [COMMONWEALTH OF PUERTO RICO]
>
> By: _____ _____
> Name:
> Title:

A-1

PR-ERS-000003550

# Exhibit 41

(5)

### CERTIFICATE OF SECRETARY OF THE SYSTEM
### AS TO MASTER CONTINUING DISCLOSURE AGREEMENT

I, Rosa Castro Rivera, Secretary of the Board of Trustees of Employees Retirement

System of the Government of the Commonwealth of Puerto Rico (the "System"), **DO HEREBY**

**CERTIFY** that attached hereto is a true and correct copy of the Master Continuing Disclosure

Agreement, dated as of January 31, 2008, which form of Master Continuing Disclosure

Agreement was approved by resolution duly adopted by the Board of Trustees of the System on

January 24, 2008.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of said

System this 2nd day of June, 2008.



Secretary of the Board of Trustees
Employees Retirement System of the Government
of the Commonwealth of Puerto Rico

PR-ERS-000004217

**EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

### CONTINUING DISCLOSURE AGREEMENT

This Master Continuing Disclosure Agreement (the "Disclosure Agreement") is executed and delivered by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") and the Commonwealth of Puerto Rico (the "Commonwealth") in connection with the issuance of the System's Senior Pension Funding Bonds, Series A (the "Series A Bonds"), issued pursuant to a Pension Funding Bond Resolution (the "General Resolution") and an Amended and Restated First Supplemental Pension Funding Bond Resolution (the "First Supplemental Bond Resolution" and, together with the General Resolution, the "Resolution") adopted by the Board of Trustees of the System on January 24, 2008, and January 29, 2008, pursuant to which The Bank of New York will act as Fiscal Agent (the "Fiscal Agent").

The System and the Commonwealth hereby covenant and agree as follows:

SECTION 1. <u>Purpose of the Disclosure Agreement</u>. This Disclosure Agreement is being executed and delivered by the System for the benefit of the Holders of the Series A Bonds and all other bonds issued under the General Resolution (collectively, the "Bonds") in order to assist the Participating Underwriters in complying with the Rule.

SECTION 2. <u>Definitions</u>. The following terms shall have the following meanings for purposes of this Disclosure Agreement:

"Annual Report" shall mean any Annual Report provided by the System pursuant to, and as described in, Sections 3 and 4 of this Disclosure Agreement.

"Dissemination Agent" shall mean the System, acting in its capacity as Dissemination Agent hereunder, or any successor Dissemination Agent designated in writing by the System and which has filed with the System a written acceptance of such designation.

"Fiscal Year" shall mean the twelve-month period at the end of which the financial position of the System and results of its operations for such period are determined. Currently, the System's Fiscal Year begins on July 1 and continues through June 30 of the next year.

"Holder" shall mean any person who is a record owner or beneficial owner of a Bond.

"National Repository" shall mean any Nationally Recognized Municipal Securities Information Repository for purposes of the Rule.

"Participating Underwriter" shall mean any of the original purchasers of the System's Bonds required to comply with the Rule in connection with the offering of such Bonds.

"Repository" shall mean each National Repository and any State Repository.

"Rule" shall mean Rule 15c2-12 adopted by the SEC under the Securities Exchange Act of 1934, as the same may be amended from time to time.

"SEC" means the United States Securities and Exchange Commission.

"State Repository" shall mean any public or private depository or entity designated by the System as a state information depository for purposes of the Rule.

SECTION 3.  Provision of Annual Reports; Audited Financial Statements.

(a) Not later than 305 days following the end of each Fiscal Year of the System, commencing with the Fiscal Year ending June 30, 2008, each of the System and the Commonwealth shall, or shall cause the Dissemination Agent (if different from the System) to, provide to each Repository an Annual Report which is consistent with the requirements of Section 4 of this Disclosure Agreement.  Not later than 10 days prior to said date, each of the System and the Commonwealth shall provide the Annual Report to the Dissemination Agent (if applicable).  In each case, the Annual Report (i) may be submitted as a single document or as separate documents comprising a package, (ii) may cross-reference other information as provided in Section 4 of this Disclosure Agreement, and (iii) shall include the financial statements described in subsection (b).

(b) The annual financial statements of the System and of the Commonwealth shall be prepared on the basis of generally accepted accounting principles and will be audited.  Copies of the audited annual financial statements, which may be filed separately from the Annual Report, will be filed with each Repository when they become publicly available.  If the audited annual financial statements have not been previously filed with each Repository when the Annual Report is due, copies of the unaudited financial statements will be filed with the Annual Report.

(c) If the System or the Commonwealth fails to provide an Annual Report to each Repository by the date required in subsection (a) hereof or to file its audited annual financial statements with each Repository when they become publicly available, the System or the Commonwealth, as applicable, shall send, in a timely manner, an appropriate notice to each National Repository or the Municipal Securities Rulemaking Board and any State Repository in substantially the form attached hereto as Exhibit A hereto.

(d) The Commonwealth expects to provide the information described above (excluding the audited financial statements) by delivering annually its first official statement that includes its Commonwealth Report for the relevant fiscal year, or, if no such official statement is delivered by the deadline set forth herein, by delivering a separate Commonwealth Report by such

2

PR-ERS-000004219

deadline. The Commonwealth expects to provide its audited financial statements by filing its Comprehensive Annual Financial Report as a separate document by such deadline.

(e) The System covenants to file in a timely manner, with each National Repository or with the MSRB, and with the Fiscal Agent and any State Depository, notice of the occurrence of any of the following events with respect to the Bonds, if material:

1. principal and interest payment delinquencies;

2. non-payment related defaults;

3. unscheduled draws on debt service reserves reflecting financial difficulties;

4. unscheduled draws on credit enhancements reflecting financial difficulties;

5. substitution of credit or liquidity providers, or their failure to perform;

6. adverse opinions or events affecting the tax-exempt status of the Bonds;

7. modifications to rights of the holders (including beneficial owners) of the Bonds;

8. bond calls;

9. defeasances;

10. release, substitution, or sale of property securing repayment of the Bonds;

11. rating changes; and

12. any failure of the System or the Commonwealth to comply with paragraph (a) above.

(f) The System does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the System applies for or participates in obtaining the enhancement.

(g) The System does not undertake to provide notice of the Listed Event in item (8) above with respect to any scheduled redemption, not otherwise contingent upon the occurrence of an event, if (i) the terms, dates and amounts of such redemption are set forth in the Official Statement relating to the Bonds, (ii) the only open issue is which Bonds will be redeemed in



3

the case of a partial redemption, (iii) notice of redemption is given to the
Bondholders as required under the terms of the Bonds and the Resolution;
and (iv) public notice of redemption is given pursuant to Securities
Exchange Act of 1934 Release No. 34-2385 of the Securities and
Exchange Commission even if the originally scheduled amounts are
reduced by prior optional redemptions or purchases of Bonds.

(h)     The System may from time to time choose to provide notice of the
occurrence of certain other events in addition to those listed above if, in
the judgment of the System, such other events are material with respect to
the Bonds, but the System does not undertake to provide any such notice
of the occurrence of any material event except those events listed above.

SECTION 4.  Content of Annual Reports.  Each Annual Report required to be filed
hereunder shall include, at a minimum, the information included in the System's Official
Statement prepared in connection with the sale of the Series A Bonds as it relates to the System
and the Commonwealth, updated to reflect events occurring and information available through
the end of the fiscal year covered by the Annual Report.  Any or all of such information may be
incorporated by reference from other documents, including official statements containing
information with respect to the System and the Commonwealth, which have been filed with each
Repository or the SEC.  No final official statement may be incorporated by reference in the
Annual Report unless it is available from the Municipal Securities Rulemaking Board.  The
System shall clearly identify each such other document so incorporated by reference.

SECTION 5.  Termination of Reporting Obligation.  The obligations of the System and
the Commonwealth under this Disclosure Agreement shall terminate upon the earlier to occur of
the legal defeasance and the final retirement of the Bonds.

SECTION 6.  Dissemination Agent.  Each of the System and the Commonwealth may,
from time to time, appoint or engage a Dissemination Agent to assist it in carrying out its
obligations under this Disclosure Agreement and may discharge any such Agent, with or without
appointing a successor Dissemination Agent.  If at any time there is not any other designated
Dissemination Agent, the System and the Commonwealth shall be their own Dissemination
Agents.

SECTION 7.  Amendment.  Notwithstanding any other provision of this Disclosure
Agreement, the System and the Commonwealth may amend this Disclosure Agreement, if (1) the
amendment is made in connection with a change in circumstances that arises from a change in
legal requirements, change in law, or change in the identity, nature, or status of the System or the
Commonwealth, respectively, or type of business conducted; this Agreement, as amended, would
have complied with the requirements of the Rule at the date of the execution and delivery hereof,
after taking into account any amendments or change in circumstances; and the amendment does
not materially impair the interest of Holders, as determined by parties unaffiliated with the
System or the Commonwealth; or (2) all or any part of the Rule ceases to be in effect for any
reason, and the System or the Commonwealth, respectively, elects that this Agreement shall be
deemed amended accordingly.

4

PR-ERS-000004221

The System and the Commonwealth further agree that, in connection with any such amendment, the Annual Report will explain, in narrative form, the reasons for the amendment and the impact of the change on the information being provided.

SECTION 8.  Additional Information.  Nothing in this Disclosure Agreement shall be deemed to prevent the System or the Commonwealth from disseminating any other information, using the means of dissemination set forth in this Disclosure Agreement or any other means of communication, or including any other information in any Annual Report, in addition to that which is required by this Disclosure Agreement. If the System or the Commonwealth chooses to include any information in any Annual Report not specifically required by this Disclosure Agreement, the System or the Commonwealth, as the case may be, shall not have any obligation under this Disclosure Agreement to update such information, and the System or the Commonwealth, as the case may be, shall have no obligation to include it in any future Annual Report.

SECTION 9.  Default. (a) Any person referred to in Section 10 of this Disclosure Agreement (other than the System or the Commonwealth) may take such action as may be permitted by law or in equity against the appropriate public official to secure compliance with the obligations of the System and the Commonwealth to file its Annual Report.  In addition, holders of not less than a majority in aggregate principal amount of Bonds outstanding may take such actions as may be permitted by law, to challenge the adequacy of any information provided pursuant to this Disclosure Agreement, or to enforce any other obligation of the System or the Commonwealth hereunder.  A default under this Disclosure Agreement shall not be deemed an event of default under any applicable resolution, trust agreement, indenture or other debt authorization of the System or the Commonwealth.  Nothing in this Section shall be deemed to restrict the rights or remedies of any Holder pursuant to the Securities Exchange Act of 1934, the rules and regulations promulgated thereunder, or other applicable laws.

(b)  No Holder may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of this Disclosure Agreement or for any remedy for breach thereof, unless such Holder shall have filed with the System or the Commonwealth, as the case may be, written notice of any request to cure such breach, and the System or the Commonwealth shall have refused to comply within a reasonable time.  All Proceedings shall be instituted only in a court of the Commonwealth of Puerto Rico located in the Municipality of San Juan, Puerto Rico, for the equal benefit of all Holders from time to time of the Bonds benefited by this Disclosure Agreement, and no remedy shall be sought or granted other than the specific performance of this Disclosure Agreement.

SECTION 10. Beneficiaries.  This Disclosure Agreement shall inure solely to the benefit of the parties, the Participating Underwriters, and Holders from time to time of the Bonds, and shall create no rights in any other person or entity.

5

PR-ERS-000004222

In witness whereof, the parties have executed this agreement as of the date first written above.

EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

By:
Name:
Title:

COMMONWEALTH OF PUERTO RICO

By:
Name:
Title:

Acknowledged as of the date set forth below

**BANK OF NEW YORK**

By:
Name:        JOANNE ADAMIS
Title:           VICE PRESIDENT

Date:  January 31, 2008

6

PR-ERS-000004223

## EXHIBIT A

### NOTICE OF FAILURE TO FILE ANNUAL REPORT
### [AUDITED ANNUAL FINANCIAL STATEMENTS]

### EMPOYEES RETIREMENT SYSTEM
### OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
in connection with its
Senior Pension Funding Bonds, Series A


CUSIP NO. _____

Dated: _____


NOTICE IS HEREBY GIVEN that [the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System")] [the Commonweal of Puerto Rico] has not provided an Annual Report [Audited Annual Financial Statements] as required by Section 3 of the certain Continuing Disclosure Agreement, which was delivered in connection with the above-named bonds issued by the System on January 31, 2008.  The [System] [Commonwealth] anticipates that the Annual Report [Audited Annual Financial Statements] will be filed by _____.

Dated: _____


**[EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO]**
**[COMMONWEALTH OF PUERTO RICO]**


By: _____

Name:

Title:


A-1

PR-ERS-000004224

# Exhibit 42

(6)

**CERTIFICATE OF SECRETARY OF THE SYSTEM
AS TO MASTER CONTINUING DISCLOSURE AGREEMENT**

I, Rosa Castro Rivera, Secretary of the Board of Trustees of Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), **DO HEREBY CERTIFY** that attached hereto is a true and correct copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008, which form of Master Continuing Disclosure Agreement was approved by resolution duly adopted by the Board of Trustees of the System on January 24, 2008.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said System this 30th day of June, 2008.

Secretary of the Board of Trustees
Employees Retirement System of the Government
of the Commonwealth of Puerto Rico



(SEAL)

PR-ERS-000005094

## EMPLOYEES RETIREMENT SYSTEM
## OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO

### CONTINUING DISCLOSURE AGREEMENT

This Master Continuing Disclosure Agreement (the "Disclosure Agreement") is executed and delivered by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") and the Commonwealth of Puerto Rico (the "Commonwealth") in connection with the issuance of the System's Senior Pension Funding Bonds, Series A (the "Series A Bonds"), issued pursuant to a Pension Funding Bond Resolution (the "General Resolution") and an Amended and Restated First Supplemental Pension Funding Bond Resolution (the "First Supplemental Bond Resolution" and, together with the General Resolution, the "Resolution") adopted by the Board of Trustees of the System on January 24, 2008, and January 29, 2008, pursuant to which The Bank of New York will act as Fiscal Agent (the "Fiscal Agent").

The System and the Commonwealth hereby covenant and agree as follows:

SECTION 1. Purpose of the Disclosure Agreement. This Disclosure Agreement is being executed and delivered by the System for the benefit of the Holders of the Series A Bonds and all other bonds issued under the General Resolution (collectively, the "Bonds") in order to assist the Participating Underwriters in complying with the Rule.

SECTION 2. Definitions. The following terms shall have the following meanings for purposes of this Disclosure Agreement:

"Annual Report" shall mean any Annual Report provided by the System pursuant to, and as described in, Sections 3 and 4 of this Disclosure Agreement.

"Dissemination Agent" shall mean the System, acting in its capacity as Dissemination Agent hereunder, or any successor Dissemination Agent designated in writing by the System and which has filed with the System a written acceptance of such designation.

"Fiscal Year" shall mean the twelve-month period at the end of which the financial position of the System and results of its operations for such period are determined. Currently, the System's Fiscal Year begins on July 1 and continues through June 30 of the next year.

"Holder" shall mean any person who is a record owner or beneficial owner of a Bond.

"National Repository" shall mean any Nationally Recognized Municipal Securities Information Repository for purposes of the Rule.

"Participating Underwriter" shall mean any of the original purchasers of the System's Bonds required to comply with the Rule in connection with the offering of such Bonds.

"Repository" shall mean each National Repository and any State Repository.

PR-ERS-000005095

"Rule" shall mean Rule 15c2-12 adopted by the SEC under the Securities Exchange Act of 1934, as the same may be amended from time to time.

"SEC" means the United States Securities and Exchange Commission.

"State Repository" shall mean any public or private depository or entity designated by the System as a state information depository for purposes of the Rule.

SECTION 3.   Provision of Annual Reports: Audited Financial Statements.

(a)   Not later than 305 days following the end of each Fiscal Year of the System, commencing with the Fiscal Year ending June 30, 2008, each of the System and the Commonwealth shall, or shall cause the Dissemination Agent (if different from the System) to, provide to each Repository an Annual Report which is consistent with the requirements of Section 4 of this Disclosure Agreement. Not later than 10 days prior to said date, each of the System and the Commonwealth shall provide the Annual Report to the Dissemination Agent (if applicable). In each case, the Annual Report (i) may be submitted as a single document or as separate documents comprising a package, (ii) may cross-reference other information as provided in Section 4 of this Disclosure Agreement, and (iii) shall include the financial statements described in subsection (b).

(b)   The annual financial statements of the System and of the Commonwealth shall be prepared on the basis of generally accepted accounting principles and will be audited. Copies of the audited annual financial statements, which may be filed separately from the Annual Report, will be filed with each Repository when they become publicly available. If the audited annual financial statements have not been previously filed with each Repository when the Annual Report is due, copies of the unaudited financial statements will be filed with the Annual Report.

(c)   If the System or the Commonwealth fails to provide an Annual Report to each Repository by the date required in subsection (a) hereof or to file its audited annual financial statements with each Repository when they become publicly available, the System or the Commonwealth, as applicable, shall send, in a timely manner, an appropriate notice to each National Repository or the Municipal Securities Rulemaking Board and any State Repository in substantially the form attached hereto as Exhibit A hereto.

(d)   The Commonwealth expects to provide the information described above (excluding the audited financial statements) by delivering annually its first official statement that includes its Commonwealth Report for the relevant fiscal year, or, if no such official statement is delivered by the deadline set forth herein, by delivering a separate Commonwealth Report by such

2

PR-ERS-000005096

deadline. The Commonwealth expects to provide its audited financial statements by filing its Comprehensive Annual Financial Report as a separate document by such deadline.

(e)  The System covenants to file in a timely manner, with each National Repository or with the MSRB, and with the Fiscal Agent and any State Depository, notice of the occurrence of any of the following events with respect to the Bonds, if material:

1.  principal and interest payment delinquencies;

2.  non-payment related defaults;

3.  unscheduled draws on debt service reserves reflecting financial difficulties;

4.  unscheduled draws on credit enhancements reflecting financial difficulties;

5.  substitution of credit or liquidity providers, or their failure to perform;

6.  adverse opinions or events affecting the tax-exempt status of the Bonds;

7.  modifications to rights of the holders (including beneficial owners) of the Bonds;

8.  bond calls;

9.  defeasances;

10. release, substitution, or sale of property securing repayment of the Bonds;

11. rating changes; and

12. any failure of the System or the Commonwealth to comply with paragraph (a) above.

(f)  The System does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Bonds, unless the System applies for or participates in obtaining the enhancement.

(g)  The System does not undertake to provide notice of the Listed Event in item (8) above with respect to any scheduled redemption, not otherwise contingent upon the occurrence of an event, if (i) the terms, dates and amounts of such redemption are set forth in the Official Statement relating to the Bonds, (ii) the only open issue is which Bonds will be redeemed in



3

the case of a partial redemption, (iii) notice of redemption is given to the Bondholders as required under the terms of the Bonds and the Resolution; and (iv) public notice of redemption is given pursuant to Securities Exchange Act of 1934 Release No. 34-2385 of the Securities and Exchange Commission even if the originally scheduled amounts are reduced by prior optional redemptions or purchases of Bonds.

(h)     The System may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the System, such other events are material with respect to the Bonds, but the System does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

SECTION 4. Content of Annual Reports. Each Annual Report required to be filed hereunder shall include, at a minimum, the information included in the System's Official Statement prepared in connection with the sale of the Series A Bonds as it relates to the System and the Commonwealth, updated to reflect events occurring and information available through the end of the fiscal year covered by the Annual Report. Any or all of such information may be incorporated by reference from other documents, including official statements containing information with respect to the System and the Commonwealth, which have been filed with each Repository or the SEC. No final official statement may be incorporated by reference in the Annual Report unless it is available from the Municipal Securities Rulemaking Board. The System shall clearly identify each such other document so incorporated by reference.

SECTION 5. Termination of Reporting Obligation. The obligations of the System and the Commonwealth under this Disclosure Agreement shall terminate upon the earlier to occur of the legal defeasance and the final retirement of the Bonds.

SECTION 6. Dissemination Agent. Each of the System and the Commonwealth may, from time to time, appoint or engage a Dissemination Agent to assist it in carrying out its obligations under this Disclosure Agreement and may discharge any such Agent, with or without appointing a successor Dissemination Agent. If at any time there is not any other designated Dissemination Agent, the System and the Commonwealth shall be their own Dissemination Agents.

SECTION 7. Amendment. Notwithstanding any other provision of this Disclosure Agreement, the System and the Commonwealth may amend this Disclosure Agreement, if (1) the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the System or the Commonwealth, respectively, or type of business conducted; this Agreement, as amended, would have complied with the requirements of the Rule at the date of the execution and delivery hereof, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interest of Holders, as determined by parties unaffiliated with the System or the Commonwealth; or (2) all or any part of the Rule ceases to be in effect for any reason, and the System or the Commonwealth, respectively, elects that this Agreement shall be deemed amended accordingly.

4

PR-ERS-000005098

The System and the Commonwealth further agree that, in connection with any such amendment, the Annual Report will explain, in narrative form, the reasons for the amendment and the impact of the change on the information being provided.

SECTION 8. Additional Information. Nothing in this Disclosure Agreement shall be deemed to prevent the System or the Commonwealth from disseminating any other information, using the means of dissemination set forth in this Disclosure Agreement or any other means of communication, or including any other information in any Annual Report, in addition to that which is required by this Disclosure Agreement. If the System or the Commonwealth chooses to include any information in any Annual Report not specifically required by this Disclosure Agreement, the System or the Commonwealth, as the case may be, shall not have any obligation under this Disclosure Agreement to update such information, and the System or the Commonwealth, as the case may be, shall have no obligation to include it in any future Annual Report.

SECTION 9. Default. (a) Any person referred to in Section 10 of this Disclosure Agreement (other than the System or the Commonwealth) may take such action as may be permitted by law or in equity against the appropriate public official to secure compliance with the obligations of the System and the Commonwealth to file its Annual Report. In addition, holders of not less than a majority in aggregate principal amount of Bonds outstanding may take such actions as may be permitted by law, to challenge the adequacy of any information provided pursuant to this Disclosure Agreement, or to enforce any other obligation of the System or the Commonwealth hereunder. A default under this Disclosure Agreement shall not be deemed an event of default under any applicable resolution, trust agreement, indenture or other debt authorization of the System or the Commonwealth. Nothing in this Section shall be deemed to restrict the rights or remedies of any Holder pursuant to the Securities Exchange Act of 1934, the rules and regulations promulgated thereunder, or other applicable laws.

(b) No Holder may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of this Disclosure Agreement or for any remedy for breach thereof, unless such Holder shall have filed with the System or the Commonwealth, as the case may be, written notice of any request to cure such breach, and the System or the Commonwealth shall have refused to comply within a reasonable time. All Proceedings shall be instituted only in a court of the Commonwealth of Puerto Rico located in the Municipality of San Juan, Puerto Rico, for the equal benefit of all Holders from time to time of the Bonds benefited by this Disclosure Agreement, and no remedy shall be sought or granted other than the specific performance of this Disclosure Agreement.

SECTION 10. Beneficiaries. This Disclosure Agreement shall inure solely to the benefit of the parties, the Participating Underwriters, and Holders from time to time of the Bonds, and shall create no rights in any other person or entity.

5

PR-ERS-000005099

In witness whereof, the parties have executed this agreement as of the date first written above.

EMPOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO

By:
Name:
Title:

COMMONWEALTH OF PUERTO RICO

By:
Name:
Title:

Acknowledged as of the date set forth below

BANK OF NEW YORK

By:
Name:      JOANNE ADAMIS
Title:      VICE PRESIDENT

Date: January 31, 2008

6

## EXHIBIT A

### NOTICE OF FAILURE TO FILE ANNUAL REPORT
[AUDITED ANNUAL FINANCIAL STATEMENTS]

### EMPOYEES RETIREMENT SYSTEM
### OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
in connection with its
Senior Pension Funding Bonds, Series A

CUSIP NO. _____

Dated: _____

NOTICE IS HEREBY GIVEN that [the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System")] [the Commonweal of Puerto Rico] has not provided an Annual Report [Audited Annual Financial Statements] as required by Section 3 of the certain Continuing Disclosure Agreement, which was delivered in connection with the above-named bonds issued by the System on January 31, 2008. The [System] [Commonwealth] anticipates that the Annual Report [Audited Annual Financial Statements] will be filed by _____.

Dated: _____

[EMPOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO] [COMMONWONWEALTH OF PUERTO RICO]

By: _____

Name:

Title:

A-1