# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------- X
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

PROMESA
Title III

Case No. 17-BK-03283 (LTS)

------------------------------------------------------------------- X
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO,

    Debtor.

PROMESA
Title III

Case No. 17-BK-03566 (LTS)

------------------------------------------------------------------- X

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

    and

Adv. Proc. No. 19-00356 (LTS)

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "Title III"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

|  |  |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA AND PBA), | : : : |
| as co-trustees of | : |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | : : |
| Plaintiff, | : |
| v. | : |
| DEFENDANT 1M, *et al.*, | : |
| Defendants. | : |
| ------------------------------------------------------------------- X | : |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | : : : : |
|  | Adv. Proc. No. 19-00357 (LTS) |
| and | : |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA AND PBA), | : : : |
| as co-trustees of | : |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | : : |
| Plaintiff, | : |
| v. | : |
| DEFENDANT 1R, *et al.*, | : |
| Defendant. | : |

```
------------------------------------------------------------------------ X
                                                                         :
THE SPECIAL CLAIMS COMMITTEE OF THE                                      :
FINANCIAL OVERSIGHT AND MANAGEMENT                                       :
BOARD FOR PUERTO RICO, ACTING BY AND                                     :   Adv. Proc. No. 19-00359 (LTS)
THROUGH ITS MEMBERS,                                                     :
                                                                         :
      and                                                                :
                                                                         :
THE OFFICIAL COMMITTEE OF UNSECURED                                      :
CREDITORS OF ALL TITLE III DEBTORS                                       :
(OTHER THAN COFINA AND PBA),                                             :
                                                                         :
      as co-trustees of                                                  :
                                                                         :
THE EMPLOYEES RETIREMENT SYSTEM OF THE                                   :
GOVERNMENT OF PUERTO RICO,                                               :
                                                                         :
      Plaintiff,                                                         :
                                                                         :
v.                                                                       :
                                                                         :
DEFENDANT 1H-78H,                                                        :
                                                                         :
      Defendants.                                                        :
                                                                         :
------------------------------------------------------------------------ X
                                                                         :
THE SPECIAL CLAIMS COMMITTEE OF THE                                      :
FINANCIAL OVERSIGHT AND MANAGEMENT                                       :
BOARD FOR PUERTO RICO, ACTING BY AND                                     :
THROUGH ITS MEMBERS,                                                     :   Adv. Proc. No. 19-00361 (LTS)
                                                                         :
      and                                                                :
                                                                         :
THE OFFICIAL COMMITTEE OF UNSECURED                                      :
CREDITORS OF ALL TITLE III DEBTORS                                       :
(OTHER THAN COFINA AND PBA),                                             :
                                                                         :
      as co-trustees of                                                  :
                                                                         :
```

| | |
|---|---|
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | : |
| Plaintiff, | : |
| v. | : |
| DEFENDANT 1G-50G, | : |
| Defendant. | : |

-------------------------------------------------------------------- X

## COMMITTEES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ULTRA VIRES ISSUES

Pursuant to Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056 and Local Rule 56(b), the Official Committee of Unsecured Creditors (the "Committee")[2], the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee"),[3] and the Special Claims Committee (the "SCC") of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or the "Board") (and the SCC together with the Committee and the Retiree Committee, "Movants") hereby submit this statement of undisputed material facts (the "Statement") in support of the *Committees' Motion for Summary Judgment on Ultra Vires Issues* (the "Motion for Summary Judgment") filed concurrently herewith.

A. ERS Enabling Act and Debt Authorization Language

1. ERS is a retirement and benefit system created by Act 447-1951 of the Puerto Rico Legislative Assembly (as amended, the "ERS Enabling Act"). Act No. 447-1951 (codified, as amended, at 3 L.P.R.A. §§ 761-788).

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] The Retiree Committee represents Puerto Rico's approximately 160,000 retirees who collectively hold the single largest claim in these title III cases.

2. ERS was created to provide pension and other benefits to retired employees of the Commonwealth and its instrumentalities and municipalities (collectively, the "Government Employers"). 3 L.P.R.A. § 764.

3. These benefits were to be funded from, among other sources, contributions from the Government Employers as required by the ERS Enabling Act ("Employer Contributions"). 3 L.P.R.A. § 764.

4. When first created in 1951, ERS was not authorized to borrow money. Compare Act No. 447-1951, §19 with Act No. 46-1988 (the "1988 Amendment"), §19.

5. In 1988, the ERS Enabling Act was amended to permit ERS to incur two separate categories of debt, and to secure that debt with ERS's assets. The Official English language translation of this amendment states:

> The Board of Trustees may authorize the Administrator to *seek a loan* from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America *or through the direct placement of debts*, securing said debt with the assets of the System.

Act 46-1988, § 1 (emphasis added).

B. Events Leading to 2008 Bond Issuance

6. In 2006, the Commonwealth considered issuing general obligation ("GO") bonds as an additional means to provide funding to ERS, but that legislation did not pass in the House of Representatives and was never enacted. Ex. 1, Cancel-Alegria Dep. Tr. 59:5-61:10.[4]

7. In 2007, Merrill Lynch issued a formal proposal to ERS recommending that ERS issue $7 billion in bonds.[5]

---

[4] All exhibit references are references to exhibits to the Declaration of Nicholas A. Bassett, filed contemporaneously herewith.

2

    C.    2008 Bond Issuance

    8.    As originally conceived, ERS would issue a total of $7 billion in ERS Bonds. Ex. 3, Series A Official Statement at 17.

    9.    On January 24, 2008, the ERS Board approved the ERS Bond Resolution, which authorized the issuance of the ERS Bonds. Ex. 13, Series A Bond Resolution Section 201.

    10.    Pursuant to the Bond Resolution, in 2008, ERS issued three series of ERS bonds (Series A, B and C) in an underwritten public offerings to investors. The aggregate outstanding principal amount of the ERS Bonds (including accretion on capital appreciation bonds) was approximately $3 billion, instead of the originally planned $7 billion in bonds. *See* Ex. 3, Series A Official Statement; Ex. 4, Series B Official Statement; Ex. 5, Series C Official Statement.

    11.    The ERS Bond were issued in a public offering. This is clear from the facts and circumstances surrounding the issuances themselves.

    12.    The ERS Bonds were rated by all three major rating agencies. *See* Ex. 3, Series A Offering Statement at 4; Ex. 4, Series B Offering Statement at 4; Ex. 5, Series C Offering Statement at 4.

    13.    There were few restrictions on what type of investor could purchase the bonds; for example, there was no requirement that bond purchasers be financial institutions or sophisticated investors, or that they acquire the ERS Bonds solely for investment without an intent to distribute in the public municipal bond market. *See, e.g.*, Ex. 3, Series A Offering Statement.

    14.    The bonds were sold by the typical publicly-offered bond minimum denomination of $5,000 in principal amount (or for capitalized interest Bonds, $5,000 maturity amount), *see,*

---

[5] Ex. 2, Merrill Lynch August 7, 2007 PowerPoint, ERS_0047061-97.

3

*e.g,* Ex. 3, Series A Official Statement at 28; Ex. 4, Series B Official Statement at 30; Ex. 5, Series C Official Statement at 30, instead of the $100,000 minimum denominations more common in direct placements. Ex. 6, Doty Report at 6.

15. The issuances were marketed and sold by underwriting syndicates, led by UBS.[6]

16. ERS did not engage in any direct negotiations with the public investors in setting these terms or establishing bond prices. Instead, ERS provided necessary documentation—ERS's Official Statements, Bond Resolutions and other Bond documentation—to UBS and the other underwriters to use in their direct discussions and negotiations with public investors. Ex. 6, Doty Report at 7.

17. The ERS Bond issuances contemplated that UBS and the underwriting syndicates would fulfill an intermediary function by buying ERS Bonds for resale to public investors. Ex. 6, Doty Report at 19.

18. ERS did not borrow or take a loan from any of the underwriters.

19. None of the relevant documents—including the Letters of Representation to the Underwriters, the Purchase Contracts, Bond Resolution or Supplemental Bond Resolutions, and the Official Statements, or other bond documents—say anything about ERS borrowing any money, or taking a loan from, UBS or any of the other underwriters. *See* Ex. 3-5, 7-18. Instead, they characterize the underwriter's role as "making the offering and sale of the bonds" (*see* Ex.

---

[6] ERS's Series A Bond Official Statement identifies on its cover twelve underwriters as members of the syndicate offering, the Series B Bond Official Statement identifies three underwriters, and the Series C Bond Official Statement identifies twelve underwriters. *See* Series A Offering Statement; Series B Offering Statement; Series C Offering Statement. While there were overlaps in syndicate memberships, and all were led by UBS, no two ERS Bond syndicates were identical. *Id.*

7-9, ERS Series A, B and C Bond Letters of Representations to the Underwriters) or as "to make a bona fide public offering of all of the Bonds."[7]

20. ERS used the underwriting syndicates not as lenders in a "borrowing" or a "loan," but as intermediaries who would distribute and offer the ERS Bonds for sale to the public. Ex. 6, Doty Report at 20.

D. 2011 Amendment to the Enabling Act

21. In 2011, the Puerto Rico legislature amended the ERS Enabling Act to ensure ERS would not engage in another public bond issuance. *See* Ex. 38, Act 116-2011, § 7(d) ("Bond Issues are hereby prohibited as part of the direct placement of debts secured with the assets of the System.").

22. In the statement of motives for the 2011 amendment, the Legislative Assembly recognized that the issuance of the ERS Bonds "was *illegally made* by [ERS] even though such transaction was submitted to the Legislative Assembly for approval and rejected by the House of Representatives for deeming it detrimental to the System."[8]

23. The Puerto Rico legislature amended the ERS Enabling Act to prohibit public bond issuances like the ERS Bonds as part of ERS's ability to engage in "direct placements of debt"—the purported basis for the ERS Bonds—thus clarifying the intent of the original language of the statute. *See* Ex. 38, Act 116-2011.

24. The legislature did not change ERS's ability to "take on a loan [or borrow] from any financial institution." *See* Ex. 38, Act 116-2011, § 7(d).

---

[7] Series A Bond Purchase Contract §4 on page 3. The Series B Bond Purchase Contract §4 on page 3 and Series C Bond Purchase Contract §4 on page 3 contain closely similar provisions.

[8] Ex. 38, Act 116-2011 at Statement of Motives (emphasis added).

5

E. <u>Government Parties Challenge Validity of ERS Bonds</u>

25. On May 21, 2017, the Oversight Board approved and certified the filing of a PROMESA Title III petition for ERS. [Case No. 17-3566, Dkt. No. 1].

26. In the months following the filing of the petition, the Government Parties' advisors in these cases determined that the issuance of the ERS bonds had been *ultra vires* and decided to challenge them on that basis. *See* Ex. 19, Collazo Rodriguez Dep. Tr. 280:12-20.

27. On July 27, 2017, certain ERS bondholders filed parallel adversary proceedings in the Commonwealth and ERS Title III cases challenging the constitutionality of certain post-petition legislation. [Adv. Proc. No. 17-219, Dkt. No. 1 (Commonwealth Title III complaint); Adv. Proc. No. 17-220, Dkt. No. 1 (ERS Title III complaint)] (the "<u>ERS Adversary Proceedings</u>").

28. On November 3, 2017, the Oversight Board raised the *ultra vires* issue with the Court in a motion for summary judgment in connection with a dispute over whether the Bondholders had properly perfected their alleged liens. [Adv. Proc. No. 17-213, Dkt. 91].

29. On November 15, 2017, the Bondholder filed a response brief that acknowledged the *ultra vires* issue. [Adv. Proc. No. 17-213, Dkt. 120, ¶¶70-72]

30. On November 17, 2017, AAFAF filed a motion to dismiss the claims in another adversary proceeding on the basis that the ERS Bonds were issued *ultra vires* and are therefore invalid. *See Government Defendants' Joinder and Supplemental Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended and Supplemented Complaint Pursuant to Fed. R. Civ. P. 12 (b)(6)*, at 11-14 [Adv. Proc. No. 17-219, Dkt. No. 44].

31. On December 20, 2017, the bondholders opposed AAFAF's motion to dismiss. *See Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss*, at 18-20 [Adv. Proc. No. 17-219, Dkt. No. 50].

32. All but two of the current members of the ERS Bondholder group were members of the group at the time of the opposition.[9]

33. The Court never reached the *ultra vires* issue in the ERS Adversary Proceedings because it was mooted by other rulings.

F. ERS Bondholder Group and Its Acquisition of Bonds

34. The Bondholders are comprised of sophisticated financial institutions with billions of dollars of investments under management. *See, e.g.*, Redwood 13F ($8.5 billion[10]); Pentwater 13F ($5.7 billion[11]).

35. Many of the Bondholders have specialized experience in investing in distressed debt. *See* Ex. 22, Centerbridge website ("The credit, distressed strategies & special situations platform currently totals over $12 billion in assets under management[.]"[12]); Ex. 23, 5-28-20 Engman Dep. Tr. 127:5-6 (for Mason, "we like restructuring and we like -- we like distress.");

---

[9] *Verified Statement of the ERS Secured Creditors Pursuant to Bankruptcy Rule 2019*, [Case No. 17-3566, Dkt. 194] (as of December 20, 2017, reflecting current Bondholder group members Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oaktree Opportunities Fund IX Delaware, L.P., Oaktree Opportunities Fun IX (Parallel 2), L.P., Opps Culebra Holdings, L.P., Oaktree Opportunities Fund X Holdings (Delaware), L.P., Oaktree Opps X Holdo Ltd., Oaktree-Forrest Multi-Strategy, LLC (Series B), Ocher Rose, L.L.C., and SV Credit L.P.). Redwood Master Fund td. and the entities represented by Pentwater Merger Arbitrage Master Fund Ltd. (Crown Managed Accounts for an on behalf of Crown/PW SP, LMA SPC for and on behalf of Map 98 Segregated Portfolio, Oceana Master Fund Ltd., PWCM Master Fund Ltd.) are the only two ERS Bondholder group members absent in November 2017.

[10] Ex. 20, Redwood Capital Mgmt. LLC – Assets, Funds, Holdings, AUM 13F, https://aum13f.com/firm/redwood-capital-management-llc

[11] Ex. 21, Redwood Capital Mgmt. LLC – Assets, Funds, Holdings, AUM 13F, https://aum13f.com/firm/pentwater-capital-management-lp

[12] Ex. 22, Our Investment Approach: Credit, Distressed Strategies & Special Situations, Centerbridge, https://www.centerbridge.com/our-strategy/

7

Ex. 24, Mikes Dep. Tr. 27:13-24 (discussing Oaktree's "distressed debt strategy"); Ex. 25, Corning Dep. Tr. 46:10-16 (noting that a "quarter" of Pentwater's "investment focus" is on "distressed debt situations").

36. They also have experience investing in municipal securities, and some have been involved in recent municipal bankruptcies. *See* Ex. 26, Delaney Dep. Tr. 37:8-38:24 (Glendon/Altair, in Jefferson County); Ex. 27, Boyer Dep. Tr. 22:19-23:24; 38:9-39:15 (Redwood, in Jefferson County); Ex. 28, Dowd Dep. Tr. 24:17-25:8 (Ocher Rose, in Jefferson County and Detroit).

37. Each of the Bondholders has had, and continues to have, access to sophisticated counsel. A number of the Bondholders have been represented by Jones Day since at least May 2015 (*see* Ex. 29, Delaney Dep., Ex. 5), and Centerbridge received advice regarding the invalidity of the ERS bonds as early as February 2014. *See* Ex. 30, Cao Dec. ¶ 3.

38. From January 25, 2008 to June 17, 2019, the Bondholders purchased hundreds of millions of dollars in ERS Bonds. *See* Ex. 31, PR Funds Supp. Response to Irog 17; Ex. 32, Jones Day Client Supp. Response to Irog 17; Ex. 29, Delaney Dep., Ex. 5 (for Jones Day clients); *Second Supplemental Verified Statement of the Puerto Rico Funds Pursuant to Bankruptcy Rule 2019* [Case No. 17-3298, Dkt. No. 13555] (for PR Funds).

39. The Bondholders subsequently filed proofs of claim against both the Commonwealth and ERS for payment on the bonds. *See Order Granting Urgent Joint Motion for Entry of a Schedule for Resolution of the ERS Bondholder Claims and Administrative Expense Motions*, at Appendix 2 [Dkt No. 12446].

8

40. In addition, the Bank of New York Mellon, as Fiscal Agent for the ERS Bonds, for and on behalf of itself and all beneficial owners of ERS Bonds, filed proofs of claims against both the Commonwealth and ERS. *See* Claim Nos. 16775, 16777, and 32004.

G. Bondholders' Knowledge of *Ultra Vires* Issue When They Acquired Bonds

41. When they made their purchases, the Bondholders had actual knowledge of facts that gave them reason to know that the ERS Bonds were issued *ultra vires*.

42. As an initial matter, each Bondholder reviewed and relied upon the ERS Bonds' official statements, which cited ERS's ability to borrow money "through the direct placement of debts" as the sole basis for its authority to issue the ERS bonds. *See* Ex. 33, Engman Dep., Ex. 9, response to Irog 6; Ex. 5, Series C Official Statement, at 7. The official statements contained no explanation of how a public bond issuance could be considered a "direct placement of debt." *See id.*

43. Each Bondholder also had actual knowledge of the ERS Enabling Act and the fact that the validity of the ERS Bond issuances depended on them complying with the terms of the ERS Enabling Act. The Bondholders had this knowledge from the Offering Statements and/or the Bond Resolutions, which they reviewed prior to making their first purchase of ERS Bonds.[13] Specifically, these documents state that (i) ERS was created by the ERS Enabling Act, *see* Official Statement at 1 ("the System is a trust created by Act. No. 447 of May 15, 1951"); Bond Resolution, § 102 (same), and (ii) the Bond Resolution was adopted pursuant to the provisions of the [ERS Enabling] Act." Bond Resolution, § 102.

---

[13] *See* Ex. 26, Delaney (Altair/Glendon) Dep. Tr. 87:14-88:11; Ex. 48, Bolin (Andalusian) Dep. Tr. 51:10-14; Ex. 49, 6-11-19 Engman (Mason) Dep. Tr. 33:18-25; Ex. 23, 5-28-20 Engman (Mason) Dep. Tr. 38:7-39:2; Ex. 24, Mikes (Oaktree) Dep. Tr. 133:8-19; Ex. 28, Dowd (Ocher Rose) Dep. Tr. 42:10-23; Ex. 25, Corning (Pentwater) Dep. Tr. 65:19-67:6; Ex. 50, Ramos (Puerto Rico Funds) Dep. Tr. 49:11-12; Ex. 27, Boyer (Redwood) Dep. Tr. 78:17-23; Ex. 51, Cao (SV Credit) Dep. Tr. 33:4-16.

9

44. In addition, as set forth in the Appendix attached hereto and incorporated herein by reference, the Bondholders were aware of: (1) the specific debt authorization language in the ERS Enabling Act (which, on its face, does not authorize public bond issuances); (2) the fact that he Commonwealth initially planned (but failed) to fund ERS by issuing GO Bonds; (3) the Legislative Assembly's statement in 2011 that the ERS bond issuances were "illegally made"; (4) advice from counsel that the ERS bonds may not have been issued with authority or legality (*i.e.*, advice regarding the *ultra vires* issue); and (5) the November 2017 briefing raising the *ultra vires* argument. *See* Appendix II (summarizing what the Bondholders had actual knowledge of regarding the invalidity of the ERS bonds, and when they had such knowledge). This information gave each of the Bondholders' reason to know of the Bonds' invalidity.

45. In February 2014, SV Credit received legal advice from Jones Day regarding the possibility that the ERS Bonds were issued *ultra vires*. Ex. 30, Cao Dec. ¶ 7; Ex. 57, SV Credit Suppl. Priv. Log. BH-ERS-F-PRIV000243. In May 2015, SV Credit and others formed the Bondholder group and retained Jones Day as their counsel. *Fourth Supplemental Verified Statement of the ERS Secured Creditors Purusant to Bankruptcy Rule 2019*, ¶ 1 [Case No. 17-3566, Dkt. 652]. The following chart shows when each Bondholder joined the Bondholder group and the purchases made after that date.

| Bondholder[14] | Date of Jones Day Representation or joined Bondholder Group | Dates of Purchases of Currently Held Bonds After Joining Jones Day Bondholder Group |
|---|---|---|
| Andalusian Global Designated Activity Company | Around May 2017 | 8/11/2017; 8/20/2018; 2/19/2019; 3/5/2019 |
| Crown Managed Accounts for and on behalf of Crown/PW SP | Prior to August 2018 | All Purchases Post Representation |
| LMA SPC on behalf of Map 98 Segregated Portfolio | Prior to August 2018 | All Purchases Post Representation |
| Mason Capital Master Fund LP | At some point between November 2, 2016 - May 26, 2017 | 12/16/2016; 12/19/2016; 12/20/2016; 1/30/2017; 1/31/2017; 2/13/2017; 2/14/2017; 2/15/2017; 2/17/2017; 2/21/2017; 2/28/2017; 3/3/2017; 3/8/2017; 4/12/2017; 4/17/2017; 4/24/2017; 7/10/2017; 7/12/2017; 8/31/2017; 10/4/2017; 10/13/2017; 10/16/2017; 10/25/2017; 3/12/2018; 9/20/2018; 10/17/2018; 10/23/2018; 10/24/2018; 10/25/2018; 10/30/2018; 1/7/2019; 1/10/2019; 1/14/2019; 1/16/2019; 1/17/2019; 1/29/2019; 1/30/2019; 1/31/2019; 2/12/2019; 6/17/2019 |
| Oaktree Funds[15] | 2014 or 2015 | Using the 2014 date, all purchases post representation. |
| Oceana Master Fund Ltd. | Prior to August 2018 | All Purchases Post Representation |

---

[14] The information contained herein also is contained within Appendix II, which provides the relevant factual citations to the record, and Ex. 32.

[15] The Oaktree Funds are: Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; Oaktree Value Opportunities Fund Holdings, L.P.

| Ocher Rose L.L.C. | Prior to May 26, 2017 | 6/1/2017; 6/8/2017; 6/14/2017; 7/20/2017; 7/21/2017; 7/26/2017 |
|---|---|---|
| Pentwater Merger Arbitrage Master Fund Ltd | Prior to August 2018 | All Purchases Post Representation |
| PWCM Master Fund Ltd. | Prior to August 2018 | All Purchases Post Representation |
| SV Credit, L.P. | Prior to July 2014 | All Purchases Post Representation |

46. In addition, the Bondholders became aware of the *ultra vires* issue when the Oversight Board and AAFAF filed briefs raising the issue in the Title III case in November 2017. [Adv. Proc. No. 17-213, Dkt. 91, and Adv. Pro. 17-219, Dkt. 44, at 10-18]. As noted above, certain of the Bondholders, including the Puerto Rico Funds, Altair, Andalusian, Glendon Capital, Mason Capital, Oaktree, Ocher Rose, and SV Credit, filed an opposition to the AAFAF brief on December 20, 2017. [Adv. Pro. 17-219, Dkt. 50].

47. Other Bondholders who did not sign the opposition brief nevertheless became aware of the briefs containing the argument and the Bondholder opposition. For example, Pentwater acknowledged that it received notice of one of the filings on November 15, 2017. Ex. 55, Corning (Pentwater) Dec. ¶ 3 (received the November 3, 2017 filing on November 15, 2017).

48. Ultimately, eight of the Bondholders made purchases of the ERS Bonds after the November 17, 2017 filing, and five of them made *all* of their purchases after that date.

49. To summarize the foregoing, the below chart summarizes when each applicable Bondholder *admits* it was on notice of the *ultra vires* issue and the purchases of ERS Bonds it made after that date.

12

| Bondholder[16] | First Became Aware of Ultra Vires Issue or Sought Advice | Purchases Made After Seeking Legal Advice or Being Made Aware of the Ultra Vires Issue |
|---|---|---|
| Andalusian Global Designated Activity Company | November 4, 2017 | 8/20/2018; 2/19/2019; 3/5/2019 |
| Crown Managed Accounts for and on behalf of Crown/PW SP | November 15, 2017 | All purchases after November 15, 2017. |
| LMA SPC for and on behalf of Map 98 Segregated Portfolio | November 15, 2017 | All purchases after November 15, 2017. |
| Mason Capital Master Fund LP | November 2017 | 3/12/2018; 9/20/2018; 10/17/2018; 10/23/2018; 10/24/2018; 10/25/2018; 1/7/2019; 1/10/2019; 1/14/2019; 1/16/2019; 1/17/2019; 1/29/2019; 1/30/2019; 1/31/2019; 2/12/2019; 6/17/2019 |
| Oceana Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
| Pentwater Merger Arbitrage Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
| PWCM Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
| Redwood Master Fund Ltd. | August 24, 2018 | 9/6/2018; 10/24/2018; 11/28/2018; 12/4/2018; 12/12/2018; 12/13/2018; 1/16/2019; 1/28/2019; 1/29/2019 |
| SV Credit, L.P. | February 2014 | All purchases after February 2014. |

Dated: September 11, 2020  /s/ Luc A. Despins
     San Juan, Puerto Rico  PAUL HASTINGS LLP
                                 Luc A. Despins, Esq. *(Pro Hac Vice)*

---

[16] The information contained herein also is contained within Appendix II, which provides the relevant factual citations to the record, and Ex. 32.

13

James R. Bliss (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*[17]

- and -

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*[18]

- and –

*/s/ John Arrastia* .

---

[17] As it relates to the Committee's omnibus claims objection at Docket No. 5580.

[18] As it relates to the Committee omnibus claims objections at Docket No. 5580 and 5586 and Adversary Proceeding Nos. 19-356, 19-357, 19-359, 19-361.

14

GENOVESE JOBLOVE & BATTISTA, P.A.
John Arrastia, Esq. (*Pro Hac Vice*)
John H. Genovese, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jarrastia@gjb-law.com
jgenovese@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors*[19]

*/s/ Catherine Steege*
JENNER & BLOCK LLP
Robert Gordon (admitted pro hac vice)
Richard Levin (admitted pro hac vice)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted pro hac vice)
Melissa Root (admitted pro hac vice)
Landon Raiford (admitted pro hac vice)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
lraiford@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

*/s/ A.J. Bennazar-Zequeira*
BENNAZAR, GARCÍA & MILIÁN, C.S.P
A.J. Bennazar-Zequeira

---

[19] As it relates to Adversary Proceeding Nos. 19-356, 19-357, 19-359, 19-361.

Héctor M. Mayol Kauffmann
Francisco del Castillo Orozco
Edificio Union Plaza,
1701 Avenida Ponce de León #416
Hato Rey, San Juan
Puerto Rico 00918
ajb@bennazar.org
hector.mayol@bennazar.com
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for the Official Committee of
Retired Employees of Puerto Rico*

*/s/ Sunni P. Beville*    ,
Sunni P. Beville, Esq. (*pro hac vice*)
Tristan G. Axelrod, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and
Management Board, acting through the
members of the Special Claims Committee*

and

*/s/ Alberto Estrella*    ,
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and
Management Board, acting through the members
of the Special Claims Committee*

16