**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Related to ECF Nos. 5580, 6482, 9700, and 9701 |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>Related to ECF Nos. 381, 469, and 757<br><br>*This Pleading Relates to the Commonwealth and ERS Only, and Should Be Filed in Both Dockets.* |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
THE MOTION OF THE BANK OF NEW YORK MELLON,
AS FISCAL AGENT, FOR SUMMARY JUDGMENT PURSUANT TO
<u>FED. R. CIV. P. 56 REGARDING *ULTRA VIRES* CHALLENGE</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to Local Rule 56(b) of the United States District Court for the District of Puerto Rico, The Bank of New York Mellon ("BNYM" or the "Fiscal Agent"), as fiscal agent, presents this statement setting forth the undisputed facts that are material for the Court to decide the *Motion of The Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* (the "Motion") filed contemporaneously herewith. Record evidence that supports each fact is cited throughout, and relevant portions of the record are included in the attached Appendix ("App.").

The following facts are undisputed and material:

**A. ERS Authorization to Issue the Bonds**

1. The Fiscal Agent hereby incorporates by reference the following sections and paragraphs of the *ERS Bondholders' Rule 56(b) Statement of Undisputed Facts in Support of Motion for Summary Judgment on Ultra Vires Issues and Proceedings*, filed September 11, 2020 ("BH Statement of Facts"), together with the record evidence submitted with respect to each paragraph:

    a. Nature of the Litigation, ¶¶ 1-6

    b. ERS, ¶¶ 7-8

    c. The ERS Enabling Act's Debt-Authorizing Provision, ¶¶ 9-20

    d. The Municipal Finance Market, ¶¶ 21-32

    e. The Issuance of the ERS Bonds, ¶¶ 33-63

    f. Post-Issuance Events, ¶¶ 64-80

**B. The Bonds and Ownership by Cede & Co.**

2. In 2008, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS" or the "System") issued Pension Funding Bonds

("Bonds") pursuant to the ERS Pension Funding Bond Resolution, adopted on January 24, 2008 ("Resolution").  *See* App. Ex. 1, Resolution § 201 [PR_ERS 000002836 et seq.].

3. ERS issued the Bonds for the stated purpose of decreasing its unfunded pension liability.  *See id.*, Resolution p. 1 [PR_ERS 000002840].

4. The ERS Enabling Act's debt-authorizing provision does not restrict the purposes for which ERS may borrow funds.  BH Statement of Facts § 17.

5. ERS issued the Bonds in the aggregate amount of nearly $3 billion in three series, pursuant to three Supplemental Bond Resolutions.

6. ERS issued the Series A Bonds, in the amount of $1,588,810,799.60, on or about January 31, 2008, pursuant to the Amended and Restated First Supplemental Pension Funding Bond Resolution Authorizing Senior Pension Funding Bonds, Series A, adopted on January 29, 2008 ("Supplemental Resolution, Series A").  App. Ex. 2, Supplemental Resolution, Series A, § 2.1 [PR-ERS 000003477-3500].

7. ERS issued the Series B Bonds, in the amount of $1,058,634,613.05, on or about June 2, 2008, pursuant to the Second Supplemental Pension Funding Bond Resolution Authorizing Senior Pension Funding Bonds, Series B, adopted on May 27, 2008 ("Supplemental Resolution, Series B").  App. Ex. 3, Supplemental Resolution, Series B, § 2.1 [PR_ERS 000003926-3949].

8. ERS issued the Series C Bonds, in the amount of  $300,202,930.00, on or about June 30, 2008, pursuant to the Third Supplemental Pension Funding Bond Resolution Authorizing Senior Pension Funding Bonds, Series C, adopted on June 26, 2008 ("Supplemental Resolution, Series C," and together with the Supplemental Resolution, Series A and the

Supplemental Resolution, Series B, the "Supplemental Resolutions"). App. Ex. 4, Supplemental Resolution, Series C, § 2.1 [PR_ERS 000004602-4626].

9. BNYM is the Fiscal Agent for the Bonds. App. Ex. 1, Resolution § 801.

10. The Fiscal Agent is empowered to act to protect and enforce the rights of the Bondowners. *Id*. § 1102.

11. The Resolution defines "Bondowner" as "any person who shall be the registered owner of" the Bonds. App. Ex. 1, Resolution Exhibit B, Definition of "Bondowners"; *see also id*., defining "Owner or Owner of Bonds" as "each Bondowner"; Resolution § 1302.2 ("The ownership of Bonds and the amount, numbers and other identification, and date of holding the same shall be proved by the registry books.")

12. The owner of all the Bonds is Cede & Co., as nominee for the Depository Trust Company ("DTC"), and the Bonds are registered in the name of Cede & Co., as nominee for DTC. App. Exs. 2, 3, 4, Supplemental Resolutions § 2.5; App. Ex. 5 , Series A Bonds (PR-ERS-000003673-3768); App. Ex. 6, Series B Bonds (PR-ERS-000004346-4441); App. Ex. 7, Series C Bonds (PR-ERS-000005222-5245).

13. Cede & Co. has been the sole registered owner of the Bonds since inception. App. Ex. 8, Fiscal Agent's Detailed Holder Lists [FA0001776-84]; App. Ex. 9, Declaration of John Faith ("DTC Decl."), ¶ 8.

14. The Resolution—which is a contract between the System and the Bondowner (Resolution § 102)—provides:

> The System and the Fiscal Agent may deem and treat the person in whose name any Bond shall be registered upon the books of the System as the absolute owner of such Bond whether such Bond shall be overdue or not, for the purpose of receiving payment of, or on account of, the principal or Redemption Price, if any, of and interest on such Bond and for all other purposes[.]

App. Ex. 1, Resolution § 305.2.

15. The Supplemental Resolutions provide similarly:

Upon initial issuance, the ownership of the Series A Bonds shall be registered in the registration books of the System maintained by the Fiscal Agent in the name of Cede & Co., as nominee of DTC. The Fiscal Agent and the System may treat DTC (or its nominee) as the sole and exclusive Owner of the Series A Bonds registered in its name for the purposes of payment of the principal or Redemption Price of or interest on the Series A Bonds, selecting the Series A Bonds or portions thereof to be redeemed, giving any notice permitted or required to be given to Owners of the Series A Bonds under the General Resolution or this Supplemental Resolution, registering the transfer of the Series A Bonds, obtaining any consent or other action to be taken by Owners of the Series A Bonds and for all other purposes whatsoever, and neither the Fiscal Agent nor the System shall be affected by any notice to the contrary.

App. Ex. 2, Supplemental Resolution, Series A § 2.5(b); *see also* App. Ex. 3, Supplemental Resolution, Series B § 2.5(b), App. Ex. 4, Supplemental Resolution, Series C § 2.5(b).

16. The Bonds themselves state:

The System and the Fiscal Agent may treat and consider the person in whose name this Series A Bond is registered as the absolute owner hereof for the purpose of receiving payment of, or on account of, the principal or redemption price, if any, hereof and interest due hereon and for all other purposes whatsoever.

App. Ex. 5, Series A Bonds (PR-ERS-000003673-3768); *see* App. Ex. 6, Series B Bonds (PR-ERS-000004346-4441); App. Ex. 7, Series C Bonds (PR-ERS-000005222-5245).

17. The Fiscal Agent makes payments and sends notices solely to DTC. *See* App. Exs. 2, 3, 4, Supplemental Resolutions § 2.5.

18. The Bonds' ownership in the name of Cede & Co., as nominee for DTC, is part of the book-entry system. *See* App. Exs. 2, 3, 4, Supplemental Resolutions § 2.5 ("Book-Entry Provisions").

C. **The Book-Entry System**

19. Appendices to the Official Statement for each of the Bond Series describe the Book-Entry System and DTC's role therein. App. Ex. 10, Official Statement for Series A, Appendix IX [PR-ERS-000003218-20]; App. Ex. 11, Official Statement for Series B, Appendix

- 5 -

VIII [PR-ERS-000004146-48]; App. Ex. 12, Official Statement for Series C, Appendix VIII [PR-ERS-000005054-56] (App. Exs. 10, 11, 12, collectively, the "Book Entry Appendix").

20. DTC, the world's largest depository, is a limited-purpose trust company organized under the New York Banking Law, and, as pertinent here, a "clearing corporation" within the meaning of the Uniform Commercial Code. *Id*., Book Entry Appendix; App. Ex. 9, DTC Decl., ¶ 4.

21. DTC holds, and provides asset servicing for millions of issues of U.S. and non-U.S. equity, corporate, and municipal debt issues, and money market instruments from over 100 countries that DTC's Participants ("Direct Participants") deposit with DTC. The DTC Rules applicable to its Participants are on file with the U.S. Securities & Exchange Commission. App. Exs. 10, 11, 12, Book Entry Appendix. Among the rules that were filed with the SEC are DTC's Operational Arrangements. A copy of the Operational Arrangements in effect in 2008 ("2002 DTC Operational Arrangements") is attached as Exhibit A to the DTC Decl. (App. Ex. 9). *See also* App. Ex. 9, DTC Decl. ¶¶ 11-12; *infra* ¶¶ 30-35.

22. Direct Participants include both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. Access to the DTC system is also available to others such as U.S. and non-U.S. securities brokers and dealers, banks, trust companies, and clearing corporations that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly ("Indirect Participants"). App. Exs. 10, 11, 12, Book Entry Appendix.

23. DTC facilitates the post-trade settlement among Direct Participants of sales and other securities transactions in deposited securities, through electronic computerized book-entry transfers and pledges between Direct Participants' accounts. This eliminates the need for

physical movement of paper securities certificates. *Id*.; *see also* App. Ex. 13, Robert Doty Deposition excerpts, 51:15-19.

24. As applied to the Bonds, DTC acts as securities depository for all the Bonds. The Bonds are issued as fully-registered securities registered in the name of Cede & Co. (DTC's partnership nominee). One fully-registered Bond certificate was issued for each stated maturity of the Bonds, each certificate in the aggregate principal amount of the corresponding maturity. The Book Entry Appendix states in all capitals: "SO LONG AS CEDE & CO. IS THE REGISTERED OWNER OF THE . . . BONDS, AS NOMINEE FOR DTC, REFERENCES HEREIN TO BONDHOLDERS OR OWNERS OF THE . . . BONDS (OTHER THAN UNDER THE CAPTION 'TAX MATTERS') SHALL MEAN CEDE & CO. AND SHALL NOT MEAN THE BENEFICIAL OWNERS OF THE" Bonds. App. Exs. 10, 11, 12, Book Entry Appendix.

25. Purchases of security entitlements in the Bonds under the DTC system are made by or through Direct Participants, which receive a credit for the Bonds on DTC's records. The interest of each entitlement holder of the Bonds ("<u>Beneficial Owner</u>") is in turn recorded on the Direct and Indirect Participants' records. Beneficial Owners do not receive written confirmation from DTC of their purchase. Beneficial Owners are, however, expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which the Beneficial Owner entered into the transaction. *Id*.

26. Transfers of security entitlements in the Bonds are accomplished by entries made on the books of Direct and Indirect Participants acting on behalf of Beneficial Owners. Beneficial Owners do not receive certificates representing their security entitlements in the Bonds. *Id*.

27. To facilitate subsequent transfers, the Bonds deposited by Direct Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co. DTC has no knowledge of the actual Beneficial Owners of the Bonds; DTC's records reflect only the identity of the Direct Participants to whose accounts such Bonds are credited, which may or may not be the Beneficial Owners. The Direct and Indirect Participants remain responsible for keeping account of their holdings on behalf of their customers. *Id*.

28. As for the physical certificates, in the mid-1970s, DTC initiated its "FAST" program. FAST—the Fast Automated Securities Transfer Program—is a contract between DTC and transfer agents that eliminates the movement of physical securities by allowing agents to act as custodians for DTC. *See* https://www.dtcc.com/settlement-and-asset-services/agent-services/fast; U.S. Securities and Exchange Commission, Depository Trust Co., 41 Fed. Reg. 17823 (April 1976).

29. BNYM is a FAST Agent, and as such accepted delivery of and physically holds the Bonds as custodian for DTC. See App. Ex. 14, Receipt and Safekeeping Agreements: Series A, January 31, 2008 [PR-ERS-000003642], Series B, June 2, 2008 [PR-ERS-000004319], Series C, June 30, 2008 [PR-ERS-000005192].

**D. DTC's Operational Arrangements and Relationship with Issuers**

30. Issuers – such as ERS – execute DTC's form of Blanket Letter of Representations ("BLOR"). App. Ex. 9, DTC Decl., ¶ 6. DTC's records reflect that DTC received a BLOR from ERS in connection with the Bond issuance. *Id*., DTC Decl., ¶ 9; *see also* App. Ex. 15, ERS Certification of Resolution 2008-02, § 7, PR-ERS000003596-600 at 599 (authorizing ERS execution of BLOR). The BLOR in effect at the time of the issuance of the Bonds is found at Exhibit C to the 2002 DTC Operational Arrangements (Ex. A to App. Ex. 9). DTC Decl. ¶¶ 6, 11-12.

31. In the BLOR, the Issuer represents to DTC that it will comply with the requirements stated in DTC's Operational Arrangements as they may be amended from time to time. App. Ex. 9, Ex. A, 2002 DTC Operational Arrangements, at 2, 38.

32. The Operational Arrangements expressly provide that DTC does not in any way undertake to, and shall not have any responsibility to, monitor or ascertain the compliance of any transactions in the securities with any local, state, federal, or foreign laws or regulations thereunder. *Id.*, 2002 DTC Operational Arrangements, at 3. The Issuer—here ERS—recognizes this limitation. *See id*.

33. The Operational Arrangements provide that documents do not have to be submitted to DTC until ten (10) business days before the closing; and that DTC will work with underwriters that submit documents closer to the closing. *See id*., 2002 DTC Operational Arrangements, at 1, 36, Ex. A & n.3.

34. The only documents that DTC requires are a "Preliminary offering document (*e.g.*, official statement, prospectus, offering memorandum) which provides issue information (*e.g.*, Issuer name, description of the Security, denominations, paying agent, transfer agent, underwriter, and if applicable, put option/ tender/redemption features, whether the issue is multi-purpose)," and "a completed and signed Eligibility Questionnaire." *See id*., 2002 DTC Operational Arrangements, at Ex. A.

35. If a security satisfies DTC's eligibility requirements as set forth in the Operational Arrangements and is accepted by DTC, it becomes an "Eligible Security." App. Ex. 9, DTC Decl., ¶ 7.

**E. The System Notified DTC That ERS Had Authority To Issue the Bonds**

36. On January 30, 2008, in accordance with the DTC Operational Arrangements, UBS Financial Services Inc. of Puerto Rico ("UBS"), as Underwriter of the Bonds, submitted to

DTC a DTC Eligibility Questionnaire, accompanied by the January 29, 2008 Official Statement ("OS") for the Series A Bonds. The OS included among its Appendices copies of (1) the Resolution (Appendix VI to the OS); (2) the First Supplemental Resolution (Appendix VII to the OS), which included as Exhibit A the Form of the Bonds; (3) the Form of Opinion of Bond Counsel, Fiddler Gonzalez & Rodriguez, P.S.C., dated January 31, 2008 (Appendix VIII to the OS); and (4) DTC's Book Entry System rules (Appendix IX to the OS). App. Ex. 16 [UBS-ERS_Ultra_Vires-0043861-44152.], UBS January 30, 2008 Submission to DTC ("1/30/2008 DTC Submission"). DTC accepted the Series A Bonds as Eligible Securities on January 30, 2008. App. Ex. 9, DTC Decl., ¶ 9. ERS issued the Series A Bonds on January 31, 2008, each in the name of DTC's nominee, Cede & Co. App. Ex. 5, Series A Bonds (PR-ERS-000003673-3768). The bonds are held in the custody of BNYM in its role as DTC's FAST agent. *Supra* ¶ 29.

37. On May 28, 2008, in accordance with the DTC Operational Arrangements, UBS submitted to DTC a DTC Eligibility Questionnaire, accompanied by the May 27, 2008 version of the Preliminary Official Statement ("POS") for the Series B Bonds. The POS included among its Appendices copies of (1) the Form of Opinion of Bond Counsel, Fiddler Gonzalez & Rodriguez, P.S.C., dated June 2, 2008 (Appendix VII to the POS); and (2) DTC's Book Entry System rules (Appendix VIII to the POS). App. Ex. 17 [UBS-ERS_Ultra_Vires-0076149-234], UBS May 28, 2008 Submission to DTC ("5/28/2008 DTC Submission"). DTC accepted the Series B Bonds as Eligible Securities on May 29, 2008. App. Ex. 9, DTC Decl., ¶ 9. ERS issued the Series B Bonds on June 2, 2008, each in the name of DTC's nominee, Cede & Co. App. Ex. 6, Series B Bonds (PR-ERS-000004346-4441). The bonds are held in the custody of BNYM in its role as DTC's FAST agent. *Supra* ¶ 29.

38. On June 16, 2008, in accordance with the DTC Operational Arrangements, UBS submitted to DTC a DTC Eligibility Questionnaire, accompanied by the then-current version of the POS for the Series C Bonds. The POS included among its Appendices copies of (1) the Resolution (Appendix V to the POS); (2) the Form of Opinion of Bond Counsel, Fiddler Gonzalez & Rodriguez, P.S.C., (Appendix VII to the POS); and (3) DTC's Book Entry System rules (Appendix VIII to the POS). App. Ex. 18 [UBS-ERS_Ultra_Vires-0087856-88001], UBS June 16, 2008 Submission to DTC ("6/16/2008 DTC Submission"). On June 26, 2008, in accordance with the DTC Operational Arrangements, UBS submitted to DTC a second DTC Eligibility Questionnaire, accompanied by the June 26, 2008 version of the POS for the Series C Bonds. The June 26, 2008 version of the POS included among its Appendices copies of (1) the Resolution (Appendix V to the POS); (2) the Form of Opinion of Bond Counsel, Fiddler Gonzalez & Rodriguez, P.S.C., dated June 30, 2008 (Appendix VII to the POS); and (3) DTC's Book Entry System rules (Appendix VIII to the POS). App. Ex. 19 [UBS-ERS_Ultra_Vires-0100253-405], UBS June 26, 2008 Submission to DTC ("6/26/2008 DTC Submission"). DTC accepted the Series C Bonds as Eligible Securities on June 26, 2008. App. Ex. 9, DTC Decl., ¶ 9. ERS issued the Series C Bonds on June 30, 2008, each in the name of DTC's nominee, Cede & Co. App. Ex. 7, Series C Bonds (PR-ERS-000005222-5245). The bonds are held in the custody of BNYM in its role as DTC's FAST agent. *Supra* ¶ 29.

39. The various Official Statements, the Resolution and Supplemental Resolutions, and the opinions of counsel state that the bond issuance was authorized. *See infra* ¶¶ 40-43; *see also* BH Statement of Facts ¶¶ 42-46.

40. The Official Statement sent to DTC on January 30, 2008 states that the ERS Enabling Act authorized the issuance of the bonds. *See, e.g.*, App. Ex. 16, 1/30/2008 DTC

- 11 -

Submission, UBS-ERS_Ultra_Vires-0043865 at Official Statement pp. 7 (Bates 43875) ("The Act authorizes the System to borrow money, including through the direct placement of debt, and secure any such borrowing with its assets"), 26 (Bates 43894) ("The Bonds are being issued pursuant to general authority contained in the Act"), 37 (Bates 43905) (same); *see id*. at p. 1 (Bates 43869) (defining Enabling Act as the "Act")).

41. The Resolution, which was attached to the Official Statement as Appendix VI (App. Ex. 16, 1/30/2008 DTC Submission, OS Appendix VI, Bates 44077 *et seq*.), contains among the "Particular Covenants of the System" (*see* VI-14 (Bates 44094), the System's express covenant that is has the authority the issue the bonds:

> SECTION 705. <u>Power to Issue Bonds and Assign Funds and Accounts</u>. The System is duly authorized under the Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution. The Pledged Property is and will be free and clear of any pledge, lien, charge or encumbrance thereon or with respect thereto except as permitted by this Resolution, and all action on the part of the System to that end has been and will be duly and validly taken. The Bonds are and will be the valid and legally binding special obligations of the System, enforceable in accordance with their terms and the terms of this Resolution. The System shall at all times, to the extent permitted by law, defend, preserve and protect the assignment of the Pledged Property and all the rights of the Fiscal Agent, the Beneficiaries and the Bondowners under this Resolution against all claims and demands of all persons whomsoever.

Resolution § 705, VI-15 (Bates 44095); *see also id*. § 101, VI-1 (Bates 44081) ("Authority for this Resolution. This Resolution is adopted pursuant to the provisions of the Act.")

42. The Supplemental Resolutions similarly provide that they are "adopted pursuant to the provisions of the Act and the General Resolution" (Supp. Res.§ 1.4 (App. Ex. 16, 1/30/2008 DTC Submission, 1/30/08 email doc, VII-1 (Bates 44122)). The form of bond attached to the Supplemental Resolution reiterated this authority:

> IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts, conditions and things required by the Constitution and statutes of the Commonwealth and the Resolution to exist, to have happened and to have been performed precedent to and in the issuance of this Series A Bond, exist, have happened and have been performed in due time, form and manner as required by law and that the issue of the Bonds, together with all other indebtedness of the System, is within every debt and other limit prescribed by law.

*Id*., Supp. Res. Ex. A (VII-13 (Bates 44133)); *see also id*., Supp. Res. § 2.6 & Ex. A thereto (VII-7 (Bates 44127) & VII-11-16 (Bates 44131-36)).

43. Further, DTC received the Form of Opinion of Bond Counsel, which stated, "The Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System[.]" (App. Ex. 16, 1/30/08 DTC Submission, VIII-2 (Bates 44144); *see also* App. Ex. 17, 5/28/2008 DTC Submission, VII-2 (Bates 76227) (same regarding Series B); App. Ex. 18, 6/16/2008 DTC Submission (VII) (Bates 87994), App. Ex. 19, 6/26/0808 DTC Submission (VII) (Bates 100398) (same regarding Series C).

44. The only other substantive documents sent to DTC prior to the issuance of each tranche were standard questionnaires. App. Ex. 16, 1/30/2008 DTC Submission, UBS-ERS_Ultra_Vires-0043861-64; App. Ex. 17, 5/28/2008 DTC Submission, UBS-ERS_Ultra_Vires-0076149-52; App. Ex. 18, 6/16/2008 DTC Submission, UBS-ERS_Ultra_Vires-0087856-58; App. Ex. 19, 6/26/2008 Submission, UBS-ERS_Ultra_Vires-0100253-55.

45. DTC's Eligibility Questionnaire instructions confirm that DTC had limited access to documents, as well as only a brief involvement in the issuance process:

> To make a new issue of securities DTC eligible, the completed questionnaire and a copy of the offering statement/prospectus (preliminary or final) must be submitted to DTC's Underwriting Dept. at least 10 business days prior to the issue's closing date. If complete CUSIP INFORMATION (CUSIP numbers, interest rates, and final maturities) is

- 13 -

> not included with the questionnaire, please provide to DTC in writing at least seven business days prior to the closing date.

App. Ex. 16, 1/30/2008 DTC Submission, UBS-ERS_Ultra_Vires-0043862; App. Ex. 17, 5/28/2008 DTC Submission, UBS-ERS_Ultra_Vires-0076150; App. Ex. 18, 6/16/2008 DTC Submission, UBS-ERS_Ultra_Vires-0087857, App. Ex. 19, 6/26/0808 DTC Submission UBS-ERS_Ultra_Vires-0100254.

46. The only documents DTC required to be sent to it prior to issuance were the ones it received: "the completed questionnaire and a copy of the offering statement/prospectus (preliminary or final)" (*supra* ¶ 45; *see supra* ¶¶ 36-38). Those documents do not indicate the Bonds were issued without authority.

47. DTC has recently been informed that certain parties have argued that the ERS Bonds were issued without proper authority. DTC had no notice of any such argument, or any defect going to the validity of the bonds, at the time of issuance. App. Ex. 9, DTC Decl., ¶ 10.

Respectfully submitted.

In San Juan, Puerto Rico, this 11th day of September, 2020.

WE HEREBY CERTIFY that on this same date we electronically filed the forgoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties to their registered e-mail addresses.

*[The remainder of this page was intentionally left blank.]*

Dated: September 11, 2020
      San Juan, Puerto Rico

                **SEPULVADO, MALDONADO & COURET**

By: */s/ Albéniz Couret-Fuentes*
     Albéniz Couret-Fuentes
     USDC-PR Bar No. 222207
     304 Ponce de León Ave. – Suite 990
     San Juan, PR 00918
     Telephone: (787) 765-5656
     Facsimile: (787) 294-0073
     Email: acouret@smclawpr.com

**REED SMITH LLP**

Eric A. Schaffer (*Pro Hac Vice*)
Luke A. Sizemore (*Pro Hac Vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: eschaffer@reedsmith.com
Email: lsizemore@reedsmith.com

C. Neil Gray (*Pro Hac Vice*)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: cgray@reedsmith.com

*Counsel to The Bank of New York Mellon,
as fiscal agent*

- 16 -