## **EXHIBIT 12**

(5)

## CERTIFICATE OF SECRETARY OF THE SYSTEM
## AS TO PURCHASE CONTRACT

I, Rosa Castro Rivera, Secretary of the Board of Trustees of Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), **DO HEREBY CERTIFY** that attached hereto is a true and correct copy of the Purchase Contract, dated June 26, 2008, submitted by UBS Financial Services Incorporated of Puerto Rico, acting on behalf of itself and each of the several underwriters referred to therein, which Purchase Contract was approved by resolution duly adopted by the Board of Trustees of the System on June 26, 2008.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the seal of said System this 30th day of June, 2008.

Secretary of the Board of Trustees
Employees Retirement System of the Government
of the Commonwealth of Puerto Rico



**Employees Retirement System of the
Government of the Commonwealth of Puerto Rico**

**Senior Pension Funding Bonds, Series C**

**PURCHASE CONTRACT**

San Juan, Puerto Rico
June 26, 2008

Administrator
Employees Retirement System of the
Government of the Commonwealth of Puerto Rico
San Juan, Puerto Rico

Dear Sir:

UBS Financial Services Incorporated of Puerto Rico ("UBS") and the other underwriters listed in Schedule A hereto (collectively with UBS, the "Underwriters") for whom UBS is acting as representative as described below, offer to enter into this Purchase Contract with the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), which Contract confirms your agreements with the Underwriters and upon your acceptance of this offer, will be binding upon the System and upon the Underwriters. This offer is made subject to your written acceptance hereof at or before 6:00 p.m., San Juan time, on the date hereof, and, if not so accepted, will be subject to withdrawal by the Underwriters upon notice delivered to you at any time prior to the acceptance hereof.

The Underwriters have designated UBS as their representative (the "Representative"). The Representative has been duly authorized to act hereunder by and on behalf of the other Underwriters and to execute this Purchase Contract. Any action under this Purchase Contract taken by the Representative will be binding upon all the Underwriters.

1.      Purchase and Sale; Details of Bonds.  Upon the terms and conditions and in reliance on the representations, warranties and agreements set forth herein, the Underwriters, jointly and severally, hereby agree to purchase from the System, and the System hereby agrees to sell and deliver to the Underwriters, all (but not less than all) of the $300,202,930.00 initial principal amount of Employees Retirement System of the Government of the Commonwealth of Puerto Rico Senior Pension Funding Bonds, Series C (the "Bonds").

The purchase price for the Bonds shall be $295,519,764.29 (being the principal amount of such bonds, minus $4,683,165.71 of underwriters' discount).

The Bonds shall be dated, shall have the maturities and shall bear interest at the rates per annum set forth or derived from information set forth on the inside cover page of the Official Statement (hereinafter defined).

The Bonds shall be issued in accordance with Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended ("Act 447"), and shall be as described in and issued

NY1 6660699v.4

PR-ERS-000005061

under the provisions of a resolution, adopted by the System on January 24, 2008 (the "Master Resolution"), and a resolution supplemental thereto, adopted by the System on June 26, 2008 fixing the details of the Bonds (the Master Resolution and said supplemental resolution together, the "Bond Resolution"). The Bonds are being issued for the purpose of providing funds, among other things, for deposit into the System to reduce thereby its unfunded accrued actuarial liability and into a debt service reserve account under the Bond Resolution, and to pay certain costs incurred in connection with the issuance of the Bonds. The repayment of the Bonds will be secured by a pledge of Pledged Property (as defined in the Bond Resolution), including Employers' Contributions (as defined in the Bond Resolution).

2. Delivery of Official Statement, etc. The System shall deliver to the Representative at the time of or prior to the acceptance of this Purchase Contract by the System (a) a copy of the Official Statement of the System, dated the date hereof, relating to the Bonds (such Official Statement, including all appendices thereto and financial and statistical information contained or referred to or incorporated by reference therein, and with such supplements and amendments as are approved in writing by the Representative, being herein called the "Official Statement"), duly executed on behalf of the System; (b) a certified copy of the Bond Resolution; (c) letters, dated the date hereof, from Parissi P.S.C. and KPMG LLP consenting to the references to their respective names and to the inclusion of their respective reports on the audited financial statements of the System and of the Commonwealth of Puerto Rico (the "Commonwealth") for fiscal year 2007 and 2006, respectively, in the Preliminary Official Statement (hereinafter defined) and in the Official Statement, and in the case of Parissi P.S.C., setting forth the results of certain agreed upon procedures carried out by it in connection with the Official Statement; (d) a letter, dated the date hereof, from Global Insight, Inc. ("Global Insight") consenting to the references to its name and to the inclusion of its report forecasting the total payroll of those government employees that participate in the System over the fifty years covered by the report (the "GI Report") in the Preliminary Official Statement and in the Official Statement; and (e) an executed letter of representations, dated the date hereof (the "Letter of Representations") addressed to the Underwriters and signed by the Commonwealth. The System will provide to the Representative such additional copies of the Bond Resolution as the Representative may reasonably request. As soon as practicable after the date hereof, but, in any event, not later than seven (7) business days after the date hereof and not less than three (3) business days prior to Closing, if earlier, the System shall deliver to the Underwriters such number of printed copies of the final Official Statement as the Representative may reasonably request in writing so as to enable the Underwriters to comply with the requirements of paragraph (b)(4) of Rule 15c2-12 of the Securities Exchange Act of 1934, as amended (the "Rule"). The System shall be under no obligation to determine whether the number of copies of the Official Statement requested by the Representative pursuant to the preceding sentence shall be sufficient to enable the Underwriters to comply with the requirements of said paragraph (b)(4), and the System may conclusively rely upon any such written request of the Representative. For purposes of this Purchase Contract, "business day" means any day other than a Saturday, Sunday or other day on which commercial banks in New York, New York or San Juan, Puerto Rico are authorized or required by law to close.

The System has previously delivered to the Underwriters a Preliminary Official Statement of the System, dated June 16, 2008, relating to the Bonds (such Preliminary Official

PR-ERS-000005062

Statement, including all appendices thereto, and financial and statistical information included or incorporated by reference therein, being herein called the "Preliminary Official Statement").

3.     Continuing Disclosure.     The System has covenanted in a Master Continuing Disclosure Agreement executed on January 31, 2008 among the System, the Commonwealth and the fiscal agent under the Bond Resolution (the "MCDA"), (i) to provide within 305 days after the end of each fiscal year, beginning with the fiscal year ended June 30, 2008, core financial information and operating data for the prior fiscal year, including the System's audited financial statements prepared in accordance with generally accepted accounting principles, together with material historical quantitative data on the System and its revenues, expenditures, financial operations and indebtedness, in each case generally found in the Official Statement (the "Annual Information") and (ii) to provide in a timely manner, notices of the occurrence of certain enumerated events described the MCDA. This covenant has been made in order to assist the Underwriters in complying with paragraph (b)(5) of the Rule. The Annual Information will be filed by or on behalf of the System with each nationally recognized municipal securities information repository and with any Commonwealth state information depository. The notices of material events will be filed by the System with each nationally recognized municipal securities information repository or with the Municipal Securities Rulemaking Board and with any Commonwealth state information depository.

4.     Public Offering.     The Underwriters agree to make a bona fide public offering of all the Bonds, solely within Puerto Rico, at prices not in excess of the initial public offering prices (or not less than the yields) set forth on the inside cover page of the Official Statement. The Underwriters reserve the right to change such initial public offering prices or yields as they deem necessary in connection with the marketing to such persons of the Bonds. The System hereby authorizes the Underwriters to use the Bond Resolution, the MCDA, the Security Agreement (hereinafter mentioned) and the Official Statement and the information contained therein in connection with the public offering and sale of the Bonds to such persons and agrees not to supplement or amend the Official Statement, the MCDA, the Security Agreement or the Bond Resolution or to cause the Official Statement, the MCDA, the Security Agreement or the Bond Resolution to be supplemented or amended at any time prior to the Closing (as defined below) without the prior written consent of the Representative. The System ratifies and confirms the use by the Underwriters, prior to the date hereof, of the Preliminary Official Statement.

5.     Security Deposit.     The Representative has delivered to the System one or more corporate checks in an aggregate amount equal to 1% of the aggregate principal amount of the Bonds as a security deposit, payable in New York Clearing House Funds to the order of Government Development Bank for Puerto Rico ("Government Development Bank"), as fiscal agent for the System. In the event the System does not accept this offer, such check shall be immediately returned to the Representative uncashed. If this offer is accepted, the check will be held uncashed as a security deposit for the performance by the Underwriters of their obligations to purchase, to accept delivery of, and to pay for the Bonds at the Closing. In the event of the System's failure to deliver the Bonds at the Closing, or if the System shall be unable to satisfy the conditions of the obligations of the Underwriters contained herein, or if the obligations of the Underwriters shall be terminated for any reason permitted by this Purchase Contract, the check shall be immediately returned uncashed to the Representative. In the event that the Underwriters fail (other than for a reason permitted hereunder) to purchase, to accept delivery of, and to pay

3

PR-ERS-000005063

for the Bonds at the Closing, the check may be cashed and the proceeds thereof retained by the System as and for full liquidated damages for such failure and for any defaults hereunder on the part of the Underwriters, and such retention shall constitute a full release and discharge of all claims by the System against the Underwriters arising out of the transactions contemplated hereby.

6. <u>Representations, Warranties and Agreements of the System</u>. The System represents and warrants to and agrees with each of the Underwriters that, as of the date hereof and as of the Closing Date (as defined below):

(a) The System has full legal right, power and authority to adopt the Bond Resolution, to enter into this Purchase Contract, the MCDA and a Security Agreement, dated as of June 30, 2008, between the System and The Bank of New York (the "Security Agreement"), and to issue and deliver the Bonds to the Underwriters as provided herein; by official action of the System taken prior to or concurrently with the acceptance hereof, it has duly adopted the Bond Resolution; the Bond Resolution and Act 447 are in full force and effect and have not been amended, modified or rescinded; the System has duly authorized and approved the execution and delivery of the Bonds, the MCDA, the Security Agreement, the Official Statement and this Purchase Contract; the System has duly authorized and approved the performance of its obligations contained in the Bond Resolution, the MCDA, the Security Agreement, the Official Statement and this Purchase Contract to be performed or consummated at or prior to the Closing; this Purchase Contract has been duly executed and delivered by the System; and the System is and will be in compliance with the provisions of the Bond Resolution and Act 447.

(b) Except for the approval of Government Development Bank, which has already been or will before the Closing be obtained and is or will at the Closing be in full force and effect, no approval, permit, consent, or authorization of, or registration or filing with, any governmental or public agency or authority not already obtained or made is required by the System in connection with the issuance and sale of the Bonds in the Commonwealth of Puerto Rico, or the execution or adoption and delivery by the System of, or the due performance of its obligations under this Purchase Contract, the Bonds, the Bond Resolution, the MCDA and the Security Agreement.

(c) Except as set forth in the Official Statement, the System is not in breach of or default under any applicable constitutional provision, law (including, without limitation, any administrative rule-making law) or administrative regulation of the Commonwealth or the United States, or any agency or department of either, or any applicable judgment or decree or any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the System is a party or to which the System or any of its properties or other assets is otherwise subject, and no event has occurred and is continuing relating to bonds, notes or other evidences of indebtedness of the System or any System guaranty of bonds, notes or other evidences or indebtedness of others which, with the passage of time or the giving of notice, or both, would constitute a default or an event of default under any such instrument; and the execution and delivery of the Bonds, the MCDA, the Security Agreement, the Official Statement and this Purchase Contract and the adoption of the Bond Resolution (and any other agreement or instrument to which the System is a party used or contemplated for use in the consummation of the transactions contemplated hereby or by the Bond Resolution, the MCDA, the Security

4

NYI 6660699v.4

PR-ERS-000005064

Agreement or the Official Statement), and compliance with the provisions on the System's part contained herein or therein, do not and will not conflict with Act 447 or any constitutional provision, law (including, without limitation, any administrative rule-making law), administrative regulation, judgment or decree, or constitute a breach of or default under any loan agreement, indenture, bond, note, resolution, agreement or other instrument to which the System is a party or to which the System or any of its properties or other assets is otherwise subject.

(d) The Bonds, when issued, authenticated and delivered in accordance with the provisions of the Bond Resolution, will be valid, binding and legally enforceable obligations of the System secured by a pledge of Employers' Contributions in accordance with the terms of the Bonds, Act 447 and the Bond Resolution.

(e) Except for the information permitted by the Rule to be excluded therefrom, the information contained in the Preliminary Official Statement was as of the date of said Preliminary Official Statement true and correct in all material respects, and the Preliminary Official Statement did not as of its date contain any untrue statement of a material fact or omit to state a material fact which is necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading. The Preliminary Official Statement was deemed "final" by the System for purposes of paragraph (b)(1) of the Rule, except for the omission therefrom of information permitted to be omitted therefrom by the Rule. Except as disclosed in the Official Statement, the System has not failed to comply with any prior continuing disclosure undertaking of the type described in paragraph 3 hereof.

(f) Except as disclosed in the Official Statement, since the date of the basic financial statements of the System for fiscal year 2007, which are included in the Official Statement, the System has not incurred, as of the date hereof, and will not have incurred, on the Closing Date, any material liabilities, direct or contingent, or entered into any material transaction, in each case other than in the ordinary course of its business, and as of the date hereof there has not been, and as of the Closing Date there shall not have been, any material adverse change in the condition, financial or otherwise, of the System or its properties or other assets.

(g) There is no action, suit, proceeding, inquiry or investigation, at law or in equity, before or by any court, government agency or public board or body, pending or, to the knowledge of the System, threatened, which may affect or which seeks to prohibit, restrain or enjoin the sale, issuance or delivery of the Bonds, or the collection or application of any Employers' Contributions or the pledge thereof contained in the Bond Resolution and as described in the Official Statement, or which in any way contests or affects the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, the Security Agreement, this Purchase Contract, or any of them, or which may result in any material adverse change in the business, properties, other assets or financial condition of the System as described in the Official Statement, or which contests in any way the completeness or accuracy of the Preliminary Official Statement or the Official Statement, or which contests the powers of the System or any authority or proceedings for the issuance, sale or delivery of the Bonds, the adoption of the Bond Resolution or the execution and delivery of the MCDA, the Security Agreement or this Purchase Contract, or any of them, nor, to the knowledge of the System, is there any basis therefor, wherein an unfavorable decision, ruling or finding would materially adversely affect the validity

NY1 6660699v.4

PR-ERS-000005065

or enforceability of Act 447, the Bonds, the Bond Resolution, the MCDA, the Security Agreement, this Purchase Contract, or any of them.

(h)     The System has reviewed the GI Report which report is part of the Official Statement, and believes that the projections made in such report are based on reasonable assumptions.

(i)     The Bonds, the MCDA, the Security Agreement, Act 447 and the Bond Resolution conform to the descriptions thereof contained in the Official Statement and the references to and summaries of the Bonds, the MCDA, the Security Agreement, Act 447 and the Bond Resolution contained in the Official Statement fairly reflect the provisions thereof.

(j)     At the time of the System's acceptance hereof and, subject to the provisions of subparagraph (l) of this paragraph 6, at all times subsequent thereto to and including the Closing Date, the Official Statement does not and will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements contained therein, in the light of the circumstances under which they were made, not misleading. The representations and warranties contained in this paragraph (j) shall not apply to any statements or omissions made in reliance on information furnished in writing by or on behalf of the Underwriters expressly for use in the Official Statement or provided by Government Development Bank for Puerto Rico and DTC.

(k)     If the Official Statement is supplemented or amended pursuant to subparagraph (l) of this paragraph 6 prior to the Closing Date, at the time of each supplement or amendment thereto and (unless subsequently supplemented or amended pursuant to such subsection) at all times subsequent thereto to and including the Closing Date, the Official Statement, as so supplemented or amended, will not contain any untrue statement of a material fact or omit to state a material fact which is necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(l)     If between the date of this Purchase Contract and the date which is twenty-five (25) days after the end of the underwriting period (as such term is defined in paragraph (f)(2) of the Rule) any event shall occur or shall exist which would or might cause the Official Statement, as then supplemented or amended, to contain any untrue statement of a material fact or to omit to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, the System shall notify the Representative thereof. If in the reasonable opinion of the Representative such event requires the preparation and publication of a supplement or amendment to the Official Statement, the System will at its expense supplement or amend, or cause to be supplemented or amended, the Official Statement in a form and in a manner approved in writing by the Representative, and provide the Underwriters with such copies of such supplement or amendment as the Representative may reasonably request in writing so as to enable the Underwriters to comply with the provisions of paragraph (b)(4) of the Rule. The System shall be under no obligation to determine whether the number of copies requested by the Representative of any amendment of or supplement to the Official Statement pursuant to the preceding sentence shall be sufficient to enable the Underwriters to comply with the requirements of said paragraph (b)(4), and the System may conclusively rely upon any such request of the Representative.

NY! 6660699v.4

PR-ERS-000005066

(m)     The financial statements of the System included in the Official Statement present fairly the financial condition and results of operations of the System at the dates and for the periods set forth therein.

(n)     The System has delivered to the Underwriters true, complete and correct copies of the documents required to be delivered pursuant to paragraph 2 hereof, and none of said documents has been amended, supplemented or modified since such delivery.

(o)     The System will apply the proceeds from the sale of the Bonds as provided in and subject to all of the terms and provisions of the Bond Resolution and Act 447.

7.     The Closing.  At 10:00 a.m., Atlantic Standard time, on June 30, 2008, or at such later time as may be mutually agreed upon by the System and the Representative (the "Closing Date"), the System will, subject to the terms and conditions hereof, deliver the Bonds, duly executed and in definitive form, to or for the account of The Depository Trust Company and deliver to the Representative the other documents hereinafter mentioned; and, subject to the terms and conditions hereof, the Underwriters will pay the purchase price of the Bonds as set forth in paragraph 1 hereof in immediately available funds to or for the account of the System (such delivery of and payment for the Bonds is herein called the "Closing") and the check delivered to Government Development Bank pursuant to paragraph 5 hereof shall thereupon be returned to the Representative uncashed.  The Closing shall occur at the offices of Government Development Bank, San Juan, Puerto Rico, or such other place as shall have been mutually agreed upon by the System and the Representative.  Time shall be of the essence, and delivery at the time and place specified pursuant to this Purchase Contract is a further condition of the obligations of the Underwriters hereunder.

8.     Closing Conditions.  The Underwriters have entered into this Purchase Contract in reliance upon the representations, warranties and agreements of the System contained herein, and upon the representations, warranties and agreements of the Commonwealth contained in the Letter of Representations.  Accordingly, the Underwriters' obligations under this Purchase Contract to purchase, to accept delivery of and to pay for the Bonds shall be conditioned upon the performance by the System of its obligations to be performed hereunder at or prior to the Closing, and shall also be subject to the following additional conditions:

(a)     The representations, warranties and agreements of the System contained herein and of the Commonwealth contained in the Letter of Representations shall be true, complete and correct on the date hereof and on and as of the Closing Date, as if made on the Closing Date;

(b)     At the time of the Closing, Act 447 and the Bond Resolution shall be in full force and effect, and shall not have been amended, modified or supplemented since the date hereof, and the Official Statement as delivered to the Representative on the date hereof shall not have been supplemented or amended, except in any such case as may have been approved by the Representative;

(c)     At the time of the Closing, all official action of the System relating to this Purchase Contract, the Bonds, the Bond Resolution, the MCDA, the Security Agreement and Act

7

PR-ERS-000005067

447 taken as of the date hereof shall be in full force and effect and shall not have been amended, modified or supplemented;

   (d) At or prior to the Closing, the Representative shall have received copies of each of the following documents:

    (1) The opinion, dated the Closing Date and addressed to you, of Fiddler González & Rodriguez, P.S.C., Bond Counsel for the System, in substantially the form included as Appendix VII to the Official Statement;

    (2) A supplemental opinion, dated the Closing Date and addressed to the Underwriters, of Fiddler González & Rodríguez, P.S.C., Bond Counsel for the System, in substantially the form attached hereto as Exhibit A;

    (3) Opinions, dated the Closing Date and addressed to the Underwriters, of counsel to the System, and of the Secretary of Justice of the Commonwealth, in substantially the respective forms attached hereto as Exhibits B-1 and B-2;

    (4) Opinions, dated the Closing Date and addressed to the Underwriters, of O'Neill & Borges and of Sidley Austin LLP, counsel to the Underwriters, in substantially the form attached hereto as Exhibit C;

    (5) Certificates, dated the Closing Date, signed by the Administrator of the System and by the acting Secretary of the Treasury of Puerto Rico, in substantially the respective forms attached hereto as Exhibit D;

    (6) A certificate, dated the Closing Date, signed by the President, any Executive Vice President or any Senior Vice President of Government Development Bank, in substantially the form attached hereto as Exhibit E;

    (7) Executed copies, certified by the Administrator of the System, of the MCDA and the Security Agreement;

    (8) A letter, addressed and in form and substance satisfactory to the Underwriters, dated the Closing Date, from Parissi P.S.C. as to its performance of certain agreed upon procedures respecting the information in the Official Statement relating to the System, among other things;

    (9) Evidence of ratings of the Bonds in full force and effect on the Closing Date of "Baa3" by Moody's Investors Service ("Moody's"), "BBB-" by Standard and Poor's Ratings Services ("S&P") and Fitch Ratings Ltd. ("Fitch");

    (10) Letters, each dated the Closing Date, from Parissi P.S.C. and KPMG LLP consenting to references to their respective names in the Official Statement and to the inclusion in the Official Statement of their respective reports on the audited financial statements of the System and of the Commonwealth for the fiscal years ended June 30, 2007 and 2006, respectively;

NY1 6660699v.4

PR-ERS-000005068

(11)     A final copy of the GI Report in the form attached to the Official Statement as Appendix IV, together with the consent of Global Insight to the inclusion of such report in the Official Statement and to the references to them in the Official Statement; and

(12)     Such additional legal opinions, certificates, instruments and other documents as the Representative may reasonably request to evidence the truth and accuracy, as of the date hereof and as of the Closing Date, of the representations and warranties of the System contained herein and of the Commonwealth contained in the Letter of Representations and of the statements and information contained in the Official Statement and the due performance or satisfaction by the System on or prior to the Closing Date of all the respective agreements then to be performed and conditions then to be satisfied by the System.

All of the evidence, opinions, letters, certificates, instruments and other documents mentioned above or elsewhere in this Purchase Contract shall be deemed to be in compliance with the provisions hereof if, but only if, they are in form and substance satisfactory to the Representative with such exceptions and modifications as shall be approved by the Representative and as shall not in the opinion of the Representative materially impair the investment quality of the Bonds. The approving opinion of Fiddler González & Rodríguez, P.S.C., which is referred to in clause (1) of subparagraph 8(d) above shall be deemed satisfactory provided it is substantially in the form included in the Official Statement, and the opinions and certificates referred to in clauses (2), (3), (4), (5) and (6) of such subparagraph shall be deemed satisfactory provided they are substantially in the respective forms attached as exhibits to this Purchase Contract, unless otherwise provided.

If the System shall be unable to satisfy the conditions of the Underwriters to purchase, to accept delivery of and to pay for the Bonds contained in this Purchase Contract, or if the obligations of the Underwriters to purchase, to accept delivery of and to pay for the Bonds shall be terminated for any reason permitted by this Purchase Contract, this Purchase Contract shall terminate and neither the Underwriters nor the System shall be under any further obligation hereunder, except for the return of the security deposit and except that the respective obligations of the System and the Underwriters set forth in paragraph 10 hereof shall continue in full force and effect.

9.     Termination. The Underwriters may terminate this Purchase Contract by notice to the System in the event that on or prior to the Closing Date (a) legislation shall have been introduced in or enacted by the Congress of the United States or the Legislature of the Commonwealth, or legislation pending in the Congress of the United States or the Legislature of the Commonwealth shall have been amended, or legislation shall have been favorably reported for passage to either House of the Congress of the United States by a Committee of such House to which such legislation has been referred for consideration, or a decision by a court of the United States or the Tax Court of the United States shall be rendered, or a ruling, regulation or official statement by or on behalf of the Treasury Department of the United States, the Internal Revenue Service or other governmental agency shall be made, with respect to Federal taxation of interest received on securities of the general character of the Bonds or which would have the effect of changing, directly or indirectly, the Commonwealth income tax consequences of receipt

9

PR-ERS-000005069

of interest on securities of the general character of the Bonds in the hands of the holders thereof, which in the reasonable opinion of the Representative would materially adversely affect the market price of the Bonds; (b) the United States shall become engaged in hostilities that have resulted in a Congressional declaration of war or there shall be a national emergency or there shall have occurred any outbreak of hostilities or an act of terrorism or other national or international calamity or crisis or escalation of any thereof, the effect of which on the financial markets of the United States is, in the reasonable judgment of the Representative, to materially adversely affect the market for the Bonds; (c) there shall be in force a general suspension of trading on the New York Stock Exchange or other national exchanges, or minimum or maximum prices for trading shall have been fixed and be in force, or maximum ranges for prices for securities shall have been required and be in force on the New York Stock Exchange whether by virtue of a determination by that Exchange or by order of the Securities and Exchange Commission or any other governmental authority having jurisdiction; (d) a general banking moratorium shall have been established by Federal, New York or Commonwealth authorities or a major financial crisis or material disruption in commercial banking or securities settlement or clearances services shall have occurred which, in the reasonable judgment of the Representative, would make the marketing of securities of the general character of the Bonds generally impracticable; (e) any event, including any event described in a supplement or amendment to the Official Statement, shall have occurred or shall exist which, in the reasonable opinion of the Representative, makes untrue or incorrect, as of such time, in any material respect, any statement or information contained in the Official Statement, as theretofore supplemented and amended, or which is not reflected in the Official Statement, as theretofore supplemented and amended, but which should be reflected therein in order to make the statements and information contained therein not misleading as of such time; (f) the System fails to deliver the final Official Statement to the Representative within the time period provided in paragraph 2 hereof and such failure affects the Underwriters' marketing and sale of the Bonds or subjects the Underwriters to possible compliance infractions under Securities and Exchange Commission or Municipal Securities Rulemaking Board delivery requirements; (g) any extraordinary event (not otherwise covered above in this paragraph) shall have occurred or shall exist affecting current national or international economic, financial or other conditions or affecting the Commonwealth, which, in the reasonable opinion of the Representative, materially affects the market for the Bonds or the sale, at the contemplated offering prices, by the Underwriters of the Bonds; (h) any rating of the Bonds shall have been downgraded or withdrawn by Moody's or Fitch, and such action, in the reasonable opinion of the Representative, materially adversely affects the market for the Bonds or the sale, at the contemplated offering prices, by the Underwriters of the Bonds; (i) any amendment to the Official Statement is proposed by the System or deemed necessary by Bond Counsel or counsel to the Underwriters which, in the reasonable opinion of the Representative, materially adversely affects the market for the Bonds or the sale, at the contemplated offering prices, by the Underwriters of the Bonds; or (j) the System shall be unable to satisfy the conditions to the obligations of the Underwriters to purchase, to accept delivery of and to pay for the Bonds contained in this Purchase Contract.

10. Expenses. (a) The Underwriters shall be under no obligation to pay, and the System shall pay, any expenses incident to the performance of the obligations of the System hereunder, including, but not limited to: (i) the cost of preparation and printing or other reproduction, if any, of the Bond Resolution; (ii) the cost of preparation and printing of the Bonds; (iii) the cost of preparation, printing and distribution of the Preliminary Official

10

PR-ERS-000005070

Statement and the Official Statement; (iv) the fees and disbursements of Fiddler González & Rodriguez, P.S.C., Bond Counsel for the System, and Sidley Austin LLP and O'Neill & Borges, counsel to the Underwriters; (v) the fees and disbursements of the Parissi P.S.C., of KPMG LLP and of Global Insight in connection with the letters described in paragraph 2 and clauses (8), (10) and (11) of paragraph 8(d), and of any other experts, consultants, or advisers retained by the System in connection with the issuance and sale of the Bonds; and (vi) the fees for rating the Bonds.

      (b)    The Underwriters shall pay: (i) the cost of preparation and reproduction of this Purchase Contract and related underwriting documents; (ii) all advertising expenses in connection with the public offering of the Bonds; and (iii) all other expenses incurred by them or any of them in connection with the public offering of the Bonds.

      (c)    In the event that either the System or the Underwriters shall have paid obligations of the other as set forth in this Section, proper adjustment shall be made.

    11.    Indemnification.  (a)  To the extent permitted by law, the System agrees to indemnify and hold harmless each Underwriter and each person, if any, who controls any Underwriter within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended (collectively, the "Securities Acts"), as follows:

      (i)    against any and all loss, liability, claim, damage and expense whatsoever, joint or several, arising out of any untrue statement or alleged untrue statement of a material fact contained in the Official Statement (or any amendment or supplement thereto) or the omission or alleged omission therefrom of a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading, unless such untrue statement or omission or such alleged untrue statement or omission was made in reliance upon and in conformity with written information furnished to the System by such Underwriter through the Representative expressly for use in the Official Statement.

      (ii)    against any and all loss, liability, claim, damage, and expense whatsoever, joint or several, to the extent of the aggregate amount paid in settlement of any litigation commenced or threatened, or of any claim whatsoever, based upon any such untrue statement or omission, or any such alleged untrue statement or omission, if such settlement is effected with the written consent of the System; and

      (iii)    against any and all expense whatsoever, joint or several, reasonably incurred in investigating, preparing or defending against it any litigation commended or threatened, or any claim whatsoever, based upon any such untrue statement or omission, or any such alleged untrue statement or omission, to the extent that any such expense is not paid under (i) or (ii) above.

      (b)    Each Underwriter agrees to indemnify and hold harmless the System and each person, if any, who controls the System within the meaning of the Securities Acts against

11

PR-ERS-000005071

any and all loss, liability, claim, damage and expense described in the indemnity contained in subsection (a) of this Section (including only such settlements as are effected with the written consent of the Representative), but only with respect to untrue statements or omissions, or alleged untrue statements or omissions, made in the Official Statement in reliance upon and in conformity with written information furnished to the System by such Underwriter through the Representative expressly for use in the Official Statement.

(c)     Each indemnified party shall give prompt notice to each indemnifying party of any action commenced against it in respect of which indemnity may be sought hereunder, but failure so to notify an indemnifying party shall not relieve it from any liability hereunder except to the extent the indemnifying party is prejudiced by such failure, and shall not relieve it from any liability which it may have otherwise than on account of this indemnity agreement.  An indemnifying party may participate at its own expense in the defense of such action.  If it so elects within a reasonable time after receipt of such notice, an indemnifying party, jointly with any other indemnifying parties receiving such notice, may assume the defense of such action with counsel chosen by it and approved by the indemnified parties defendant in such action, unless such indemnified parties reasonably object to such assumption on the ground that there may be legal defenses available to them which are different from or in addition to those available to such indemnifying party.  If an indemnifying party is entitled pursuant to the preceding sentence to assume, and in fact assumes the defense of such action, the indemnifying parties shall not be liable for any fees and expenses of counsel for the indemnified parties incurred thereafter in connection with such action.  In no event shall the indemnifying parties be liable for the fees and expenses of more than one counsel for all indemnified parties in connection with any one action or separate but similar or related actions in the same jurisdiction arising out of the same general allegations or circumstances.

(d)     If the indemnification provided for in subparagraphs (a) or (b) of this Section 11 is unavailable to an indemnified party in respect of any losses, claims, damages or liabilities referred to therein, then each indemnifying party under such paragraph, in lieu of indemnifying such indemnified party thereunder, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities (i) in such proportion as is appropriate to reflect the relative benefits received by the System and the Underwriters from the offering of the Bonds or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of the System and of the Underwriters in connection with the statements or omissions that resulted in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations.  The relative benefits received by the System and the Underwriters shall be deemed to be in the same respective proportions as the net proceeds from the offering (before deducting expenses) received by the System and the total underwriting discounts and commissions received by the Underwriters, bear to the aggregate public offering prices of the Bonds.  The relative fault of the System and the Underwriters shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the System or by the Underwriters and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission.

12

PR-ERS-000005072

The System and the Underwriters agree that it would not be just and equitable if contribution pursuant to this Section were determined by pro rata allocation (even if the Underwriters were treated as one entity for such purpose) or by any other method of allocation that does not take account of the equitable considerations referred to in the immediately preceding paragraph. The amount paid or payable by an indemnified party as a result of the losses, claims, damages and liabilities referred to in the immediately preceding paragraph shall be deemed to include, subject to the limitations set forth above, any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim. Notwithstanding the provisions of this Section 11(d), no Underwriter shall be required to contribute any amount in excess of the amount by which the underwriting discounts or commissions received by it on account of the Bonds sold by it to the public exceeds the amount of any damages that such Underwriter has otherwise been required to pay by reason of such untrue or alleged untrue statement or omission or alleged omission. No person guilty of fraudulent misrepresentation shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation. The Underwriters' obligations to contribute pursuant to this Section are several in proportion to their respective underwriting percentages (as defined in the Agreement Among Underwriters) and not joint.

12. Notices. Any notice or other communication to be given to the System under this Purchase Contract may be given by delivering the same in care of Government Development Bank for Puerto Rico, Roberto Sánchez Vilella Government Center, De Diego Avenue, San Juan, Puerto Rico 00940, Attention: Jorge Irizarry Herráns, President, and any such notice or other communication to be given to the Underwriters (other than the acceptance referred to in paragraph 1 hereof) may be given by delivering the same to UBS Financial Services Incorporated of Puerto Rico, American International Plaza, 250 Muñoz Rivera Avenue, Hato Rey, Puerto Rico 00918 Attention: Jose Arias. All notices or communications hereunder by any party shall be given and served upon each other party.

13. Parties in Interest. This Purchase Contract is made solely for the benefit of the System and the Underwriters (including the successors or assigns of any Underwriter) and no other person shall acquire or have any right hereunder or by virtue hereof. All of the representations, warranties and agreements of the System contained in this Purchase Contract shall remain operative and in full force and effect regardless of: (i) any investigations made by or on behalf of any of the Underwriters; (ii) delivery of and payment for the Bonds pursuant to this Purchase Contract; or (iii) any termination of this Purchase Contract but only to the extent provided by the last paragraph of paragraph 8 hereof.

14. Effectiveness. This Purchase Contract shall become effective upon the execution of the acceptance hereof by the System, shall constitute the entire agreement between us and shall be valid and enforceable at the time of such acceptance.

15. Counterparts. This Purchase Contract may be executed in several counterparts, each of which shall be regarded as an original and all of which together shall constitute one and the same instrument.

16. Puerto Rico Law Governs; Severability. The validity, interpretation and performance of this Purchase Contract shall be governed by the laws of the Commonwealth of

13

PR-ERS-000005073

Puerto Rico. Wherever possible, each provision of this Purchase Contract shall be interpreted in such manner as to be effective under the laws of such State or any other applicable law. In the event that any provision or any portion of any provision, of this Purchase Contract shall be held to be void or unenforceable, the remaining provisions of this Purchase Contract, and the remaining portion of any provision found void or unenforceable in part only, shall continue in full force and effect.

17.   <u>No Oral Change</u>.  This Purchase Contract may not be changed orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

[SIGNATURE PAGE FOLLOWS]

NY1 6660699v.4

PR-ERS-000005074

18.   <u>Headings</u>.   The headings of the sections of this Purchase Contract are inserted for convenience only and shall not be deemed to be part hereof.

Very truly yours,

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
as Representative of the Underwriters listed on Schedule A

By: _____
Name:   Jose G. Arias
Title:   Managing Director

Accepted on or about 6:00 p.m., Atlantic time, on June 26, 2008.

**EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

By: _____
Name: Minia González-Álvarez
Title: Acting Administrator

15

PR-ERS-000005075

**SCHEDULE A**

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BBVA PR MSD
CITI
EUROBANK MSD
LEHMAN BROTHERS
MERRILL LYNCH & CO.
ORIENTAL FINANCIAL SERVICES CORPORATION
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIA CAPITAL
WACHOVIA CAPITAL MARKETS, LLC

NY1 6660699v.4

PR-ERS-000005076

**EXHIBIT A**

OPINION OF BOND COUNSEL
(Pursuant to subparagraph 8(d)(2) of the Purchase Contract)

June 30, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BBVAPR MSD
CITI
EUROBANK MSD
LEHMAN BROTHERS
MERRILL LYNCH & CO.
ORIENTAL FINANCIAL SERVICES CORPORATION
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIA CAPITAL
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico  00918
Attention:  Jose Arias

Ladies and Gentlemen:

We have acted as Bond Counsel in connection with the authorization, issuance and sale by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") of $300,202,930.00 initial aggregate principal amount of its Senior Pension Funding Bonds, Series C (the "Bonds") as to which you are acting as underwriters ("Underwriters"), as representatives of yourselves and the other Underwriters named in the Purchase Contract, dated June 26, 2008 (the "Purchase Contract"), between the System and the Underwriters.

The Bonds are being issued pursuant to a Pension Funding Bond Resolution, adopted by the System's Board of Trustees on January 24, 2008 (the "Bond Resolution"), and a Third Supplemental Pension Funding Bond Resolution, adopted by the System's Board of Trustees on June 26, 2008 (the "Supplemental Resolution," and together with the Bond Resolution, the "Resolution"), pursuant to which The Bank of New York will act as Fiscal Agent (the "Fiscal Agent"). Any capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Resolution or the Purchase Contract. The Bonds are being issued for the purpose of (i) increasing the total assets currently available to pay benefits under the System's largest defined benefit plan, (ii) reducing the unfunded accrued actuarial pension liability of the

A-1

PR-ERS-000005077

benefit plan, and (iii) making deposits in various funds and accounts established under the Resolution.

In our capacity as Bond Counsel, we have examined and are familiar with (i) Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended ("Act 447"), (ii) a certified copy of the Resolution, (iii) a certified copy of the resolution authorizing, among other things, the issuance and fixing the terms of the Bonds (the "Authorizing Resolution"), approving the Preliminary Official Statement, dated June 16, 2008, in connection with the Bonds (the "Preliminary Official Statement") and approving the Official Statement, dated June 26, 2008, in connection with the issuance of the Bonds (the "Official Statement"), (iv) a certified copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), (v) a certified copy of the Purchase Contract, (vi) a certified copy of the Security Agreement between the System and The Bank of New York (the "Security Agreement"), and (vii) such other proofs as we have deemed necessary as a basis for the opinions hereinafter expressed.

In rendering this opinion, we have assumed the genuineness of all signatures, the authenticity of all documents provided to us as originals and the conformity to authentic original documents of all documents provided to us as certified, conformed or photostatic copies. As to questions of fact material to this opinion, we have relied upon certificates of officers and representatives of the parties to the transactions contemplated by the Purchase Contract and of public officials.

Based upon the foregoing, and subject to the assumptions, limitations and qualifications set forth herein, we are of the opinion that:

(a) The MCDA, the Security Agreement and the Purchase Contract have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability against the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(b) The Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal, valid and binding agreements of the System, enforceable against the System in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other laws affecting the enforcement of creditors' rights generally and by the application of general principles of equity.

(c) It is not necessary in connection with the public offering and sale of the Bonds to register any security under the Securities Act of 1933, as amended, or to qualify the Resolution nor any other document or instrument under the Trust Indenture Act of 1939, as amended.

(d) The statements contained in the Official Statement as of its date and as of the date hereof under the captions "THE SERIES C BONDS," "SECURITY AND SOURCES

A-2

PR-ERS-000005078

OF PAYMENT FOR THE BONDS," "TAX MATTERS," "ERISA CONSIDERATIONS," "LEGAL INVESTMENT," and "CONTINUING DISCLOSURE," and corresponding statements in "SUMMARY STATEMENT," insofar as such statements constitute summaries of provisions of the Constitution and statutes of the Commonwealth, the Bonds, the Bond Resolution, the Supplemental Resolution, the MCDA, the Security Agreement or Act 447, or refer to opinions we have rendered, constitute fair and accurate summaries of the documents and matters of law purported to be summarized therein and do not contain any untrue statement of a material fact or omit any material fact which, in our opinion, should be referred to therein so as to make the information or statements made therein not misleading. References to the Official Statement are to the document examined by us upon delivery of the Bonds, and not to any physical or electronic reproduction other than a true copy.

(e)     The System has full legal right, power and authority to sign the Official Statement and has duly approved and authorized the signing of the Official Statement.

We hereby consent to references to us contained in the Official Statement.

The proposed form of Bond Counsel opinion contained in Appendix VII to the Official Statement is substantially in the form of the opinion delivered on the date hereof by this firm. You may rely on said delivered opinion as if it were addressed to you.

This opinion is being furnished at your request and is solely for your benefit and may not be relied upon by any other persons without our prior written consent.

Respectfully submitted,

PR-ERS-000005079

OPINION OF COUNSEL TO THE SYSTEM
(Pursuant to subparagraph 8(d)(3) of the Purchase Contract)

June 30, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BBVAPR MSD
CITI
EUROBANK MSD
LEHMAN BROTHERS
MERRILL LYNCH & CO.
ORIENTAL FINANCIAL SERVICES CORPORATION
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIA CAPITAL
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Attention: Jose Arias

Ladies and Gentlemen:

In connection with the issuance and sale by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), a trust created pursuant to Act 447 of May 15, 1951, as amended (the "Act"), to provide pension and other benefits to retired employees of the central government, municipalities and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"), of $300,202,930.00 initial principal amount of its Senior Pension Funding Bonds, Series C (the "Bonds"), I have, as General Counsel of the System, examined the Act, certified copies of the Pension Funding Bond Resolution, adopted by the System on January 24, 2008, and a Third Supplemental Pension Funding Bond Resolution, adopted by the System on June 26, 2008 (collectively, the "Resolution"), certified copies of a resolution of the System, adopted on June 26, 2008 (the "Authorizing Resolution"), authorizing, among other things, the issuance and sale of the Bonds, approving the Preliminary Official Statement, dated June 16, 2008, in connection with the Bonds (the "Preliminary Official Statement") and approving the Official Statement, dated June 26, 2008, in connection with the Bonds (the "Official Statement"), the Purchase Contract, dated June 26, 2008, by and between the Underwriters named therein and the System (the "Purchase Contract"), the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), among the System, the Commonwealth of Puerto Rico and the Fiscal Agent (hereinafter mentioned), and

B-1-1

PR-ERS-000005080

the Security Agreement, dated as of June 30, 2008 (the "Security Agreement," and together with the Resolution, the Authorizing Resolution, the Purchase Contract, and the MCDA, the "Agreements"), between the System and The Bank of New York as fiscal agent under the Resolution (the "Fiscal Agent"), and have conducted such other investigations and examined such other proofs as I deemed necessary as a basis for the opinions herein expressed. This opinion is issued pursuant to Section 8(d)(3) of the Purchase Contract. Capitalized terms used and not otherwise defined herein have the meanings assigned to them in the Resolution.

As to certain matters of fact material to the opinions expressed herein, I have relied upon the representations and statements of fact made in the Agreements, and certificates, when appropriate, provided by parties thereto other than the System. I have not independently verified the accuracy of the representations and statements so relied upon.

I have assumed the genuineness of all signatures, the authenticity of all documents submitted to me as originals, the conformity and completeness to original documents of all documents submitted to me as certified, photostatic or conformed copies and the authenticity of the originals of all such latter documents.

I have assumed that (a) each party to the Agreements (other than the System) is duly organized and validly existing, has the power and authority to execute, deliver and perform the Agreements to which it is a party, has taken all action necessary to authorize the execution, delivery and performance of those Agreements, and has duly executed and delivered those Agreements, and (b) the Agreements constitute the valid and binding obligations of the parties thereto (other than the System), enforceable against those parties in accordance with their respective terms.

Based on the foregoing, I am of the opinion that:

(a)     Act 447 has been legally enacted in accordance with the laws of the Commonwealth, is in full force and effect and is enforceable in accordance with its terms.

(b)     The Purchase Contract, the Security Agreement and the MCDA have been duly authorized, executed and delivered by the System and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability thereof against, the other parties thereto, constitute the legal, valid and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions, or legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

(c)     The Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal, valid, and binding agreements of the System, enforceable in accordance with their respective terms, except as may be limited by bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the rights and remedies of creditors and other laws, court decisions, or legal or equitable doctrines affecting the right to specific performance, injunctive relief or other equitable remedies.

NY1 6660699v.4

PR-ERS-000005081

(d)  The Bonds have been duly and validly authorized and issued. When authenticated and delivered by the Fiscal Agent as provided in the Resolution, the Bonds will constitute legally valid and binding obligations of the System.

(e)  The Resolution creates a valid and binding security interest in the Revenues and other Pledged Property assigned and pledged by the System to the Fiscal Agent pursuant to the Resolution.

(f)  All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions of the Bonds and to carry out the transactions contemplated by the Purchase Contract, the Official Statement, the Security Agreement, the MCDA, the Authorizing Resolution and the Resolution are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

(g)  The System has full legal right, power and authority to sign the Official Statement, has duly approved and authorized the signing of the Official Statement, has ratified the distribution of the Preliminary Official Statement, and has approved the distribution of the Official Statement.

(h)  No litigation is pending (or, to my knowledge, after reasonable inquiry, threatened) (A) to restrain or enjoin the issuance or delivery of any of the Bonds, (B) in any way contesting or affecting any authority for or the validity of the Act, the application of the proceeds of the Bonds, the Resolution, the Authorizing Resolution, the Bonds, the MCDA, the Security Agreement or the Purchase Contract, (C) in any way contesting the power of the System to issue the Bonds or the power of the System to sell the Bonds and to apply the proceeds thereof as contemplated by the Official Statement and the Purchase Contract, (D) in any way contesting the pledge of the Employers' Contributions and other items of security for the payment of the principal of and interest on the Bonds, or (E) that could have a material adverse effect on the financial condition of the System.

(i)  All conditions precedent to the delivery of the Bonds have been fulfilled.

In addition, I have examined the Preliminary Official Statement and the Official Statement (including the information incorporated therein by reference), and the information as to the System, the Resolution, the MCDA, the Security Agreement and the statutes cited or referred to therein contained or incorporated by reference therein, is correct, and nothing has come to my attention which leads me to believe that such information, as of the respective dates thereof, and as to the Official Statement as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

The opinions expressed herein are limited to the laws of the Commonwealth and based on an analysis of existing laws, regulations, rulings and court decisions of the Commonwealth. Such opinions may be adversely affected by actions taken or events occurring, including a change in law, regulation or ruling (or in the application or official interpretation of any law,

B-1-3

PR-ERS-000005082

regulation or ruling) after the date hereof. I have not undertaken to determine, or to inform any person about, whether such actions are taken or such events occur, and I have no obligation to update this opinion in light of such actions or events.

In addition, I express no opinion as to the enforceability of any indemnification or contribution provisions included in any Agreement that may violate any law, rule, regulation or public policy of the United States of America or of the Commonwealth.

Furthermore, my opinions are subject to bankruptcy, reorganization, insolvency, moratorium, fraudulent conveyance or similar laws, from time to time in effect, affecting the rights and remedies of creditors generally and other laws, court decisions, or legal or equitable remedies or principles which may affect enforceability.

This opinion letter is rendered for the sole benefit of each addressee hereof, and no other person or entity is entitled to rely hereon. No attorney-client relationship has existed between me and any rating agency that shall have rated the Bonds or by virtue of this opinion letter. Copies of this opinion letter may not be furnished to any other person or entity, nor may any portion of this opinion letter be quoted, circulated or referred to in any other document without my prior written consent.

Very truly yours,


[Name of Signator]
[Title]

B-1-4

PR-ERS-000005083

**EXHIBIT B-2**

OPINION OF THE SECRETARY OF JUSTICE OF THE COMMONWEALTH
(Pursuant to subparagraph 8(d)(3) of the Purchase Contract)

June 30, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BBVAPR MSD
CITI
EUROBANK MSD
LEHMAN BROTHERS
MERRILL LYNCH & CO.
ORIENTAL FINANCIAL SERVICES CORPORATION
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIA CAPITAL
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Attention: Jose Arias

Ladies and Gentlemen:

In connection with the issuance and sale by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") of $300,202,930.00 initial principal amount of Employees Retirement System of the Government of the Commonwealth of Puerto Rico Senior Pension Funding Bonds, Series C (the "Bonds"), I have examined the Letter of Representations of the Commonwealth of Puerto Rico, dated June 30, 2008 (the "Letter of Representations"), executed by the acting Secretary of the Treasury.

I have also examined a certified copy of the Master Continuing Disclosure Agreement, dated as of January 31, 2008 (the "MCDA"), by and among the System, the Commonwealth of Puerto Rico (the "Commonwealth") and The Bank of New York, and such other proofs as I have deemed necessary as a basis for the opinions hereinafter expressed.

Based upon the foregoing, I am of the opinion that:

(a)     The Letter of Representations and the MCDA have been duly authorized, executed and delivered by the Commonwealth and, assuming the due authorization, execution and delivery thereof by, and the validity and enforceability thereof against, the other parties

B-2-1

NY1 6660699v.4

PR-ERS-000005084

thereto, constitute the legal, valid and binding agreements of the Commonwealth, enforceable in accordance with their terms, it being understood that the enforceability thereof may be subject to judicial discretion, the valid exercise of the sovereign immunity of the Commonwealth and valid bankruptcy, insolvency, reorganization, moratorium and other laws affecting creditors' rights.

(b)     All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions and to carry out the transactions contemplated by the Letter of Representations and the MCDA are in full force and effect or have been obtained, as applicable, and no further legislation, authorization, consent or approval is required for such purposes.

(c)     No litigation is pending (or, to my knowledge, threatened) in any way contesting or affecting any authority for or the validity of the Letter of Representations and the MCDA or that could have a material adverse effect on the financial condition of the Commonwealth.

In addition, I have examined the Preliminary Official Statement and the Official Statement (each as defined in the Letter of Representations) (including the information incorporated therein by reference and the Commonwealth Report incorporated therein by reference), and the information contained or incorporated by reference therein relating to the Commonwealth, as well as the factual information appearing under "LITIGATION" in the Commonwealth Report incorporated therein by reference, is correct, and nothing has come to my attention which leads me to believe that such information, as of the respective dates thereof, and as to the Official Statement as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary in order to make the statements therein relating to such information, in the light of the circumstances under which they were made, not misleading.

Very truly yours,

_____

Secretary of Justice

B-2-2

NY1 6660699v.4

PR-ERS-000005085

**EXHIBIT C**

OPINION OF COUNSEL TO THE UNDERWRITERS
(Pursuant to subparagraph 8(d)(4) of the Purchase Contract)

June 30, 2008

UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO
POPULAR SECURITIES, INC.
SANTANDER SECURITIES CORPORATION
BBVAPR MSD
CITI
EUROBANK MSD
LEHMAN BROTHERS
MERRILL LYNCH & CO.
ORIENTAL FINANCIAL SERVICES CORPORATION
SAMUEL A. RAMÍREZ & CO., INC.
SCOTIA CAPITAL
WACHOVIA CAPITAL MARKETS, LLC

In care of UBS Financial Services Incorporated of Puerto Rico
American International Plaza
250 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Attention: Jose Arias

> **Re: Employees Retirement System of the Government of the Commonwealth of Puerto Rico**
> **$300,202,930.00 initial principal amount of Senior Pension Funding Bonds, Series C**

We have acted as counsel for the Underwriters named in the Purchase Contract, dated June 26, 2008 (the "Purchase Contract"), by and between the Underwriters and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") in connection with the purchase of the Bonds described above (the "Bonds"). As such counsel, we have examined the Official Statement, dated June 26, 2008, relating to the Bonds (the "Official Statement"), the Purchase Contract, and such other proofs as we have deemed necessary for the purpose of expressing the following opinion. This opinion is being delivered to you pursuant to subparagraph 8(d)(4) of the Purchase Contract.

Based upon such examination, we are of the opinion that it is not necessary in connection with the public offering and sale of the Bonds to register any security under the Securities Act of 1933, as amended, or to qualify any indenture, document or instrument under the Trust Indenture Act of 1939, as amended.

C-1

PR-ERS-000005086

In accordance with our understanding with you, we rendered legal advice and assistance to you in the course of your investigation pertaining to, and your participation in the preparation of, the Official Statement and the issuance and sale of the Bonds. Rendering such assistance involved, among other things, discussions and inquiries concerning various legal and related subjects, and reviews of and reports on certain records, documents and proceedings of the System. We also participated in personal and telephone conferences with representatives of the Commonwealth of Puerto Rico (the "Commonwealth"), with your representatives, with Parissi P.S.C. and KPMG LLP, independent auditors of the System's and of the Commonwealth's financial statements, respectively, with Fiddler González & Rodríguez, P.S.C., Bond Counsel, with Global Insight, Inc. and with representatives of Government Development Bank for Puerto Rico, during which conferences the contents of the Official Statement and related matters were discussed and reviewed, and conducted such other due diligence as we considered necessary in rendering the opinion set forth below.

The limitations inherent in the independent verification of factual matters and the character of determinations involved in the preparation of the Official Statement are such, however, that we are not passing upon or assuming responsibility for the accuracy, completeness and fairness of any of the statements made in the Official Statement and have made no independent check or verification thereof. Also, we do not express any opinion or belief as to the financial, statistical or economic data or forecasts, numbers, charts, tables, graphs, estimates, projections, assumptions or expressions of opinion contained in the Official Statement, including those contained in the report of the Global Insight, Inc. (the "Global Insight Report") included as an appendix to the Official Statement. We have also assumed, but have not independently verified, that the signatures on all documents and certificates that we examined were genuine.

On the basis of the information which was developed in the course of the performance of the services referred to above, considered in the light of our understanding of the Federal securities laws and the experience we have gained through our practice thereunder, and without having undertaken to determine independently the accuracy, completeness and fairness of the statements contained in the Official Statement, we advised you and now confirm that during the course of our representation of you on this matter, no information came to the attention of the attorneys in our firm rendering legal services in connection with such representation which leads us to believe that the Official Statement (excluding the System and Commonwealth financial statements included or incorporated therein by reference and other financial and statistical data contained or incorporated by reference in the Official Statement, including in the Global Insight Report, and the information regarding The Depository Trust Company, as to all of which, with your permission, we express no view) as of its date and as of the date hereof contained or contains any untrue statement of a material fact or omitted or omits to state a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

We are furnishing this opinion to you solely for your benefit in connection with the transactions contemplated by the Purchase Contract. This opinion may not be relied upon by any other person or for any other purpose without our express written consent, and no view is expressed as to any offering by the Underwriters or others of derivative instruments with investment characteristics not identical to those of the Bonds.

NY1 6660699v.4

PR-ERS-000005087

The opinions expressed herein are based on an analysis of existing laws, regulations, rulings and court decisions. Such opinions may be adversely affected by actions taken or events occurring, including a change in law, regulation or ruling (or in the application or official interpretation of any law, regulation or ruling) after the date hereof. We have not undertaken to determine, or to inform any person, whether such actions are taken or such events occur, and we have no obligation to update this opinion in light of such actions or events. Our engagement with respect to this matter has terminated as of the date hereof.

We are not expressing any opinion with respect to the authorization, execution, delivery or validity of the Bonds, or the exclusion from gross income for federal income tax purposes of interest on the Bonds.

This letter and the legal opinions herein are intended for the information solely of the addressees hereof and solely for the purposes of the transactions described in the Official Statement and are not to be relied upon by any other person or entity (including, without limitation, any person or entity that acquires Bonds from the addressees of this letter), or for any other purpose, or quoted as a whole or in part, or otherwise referred to, in any document, or to be filed with any governmental or other administrative agency or other person or entity for any purpose without, in any of these instances, our prior written consent. We do not undertake to advise you of matters that may come to our attention subsequent to the date hereof that may affect the conclusions expressed herein.

We bring to your attention the fact that our conclusions are an expression of professional judgment and are not a guarantee of a result.

Respectfully submitted,

NY1 6660699v.4

PR-ERS-000005088

**EXHIBIT D-1**

CERTIFICATE OF THE ADMINISTRATOR OF THE EMPLOYEES RETIREMENT
SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
(Pursuant to subparagraph 8(d)(5) of the Purchase Contract)

I, Minia González-Álvarez, Acting Administrator of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System"), DO HEREBY CERTIFY, in connection with the issuance and sale by the System of its $300,202,930.00 initial principal amount of Senior Pension Funding Bonds, Series C (the "Bonds"), that:

1.      except as set forth in the Official Statement dated June 26, 2008 relating to the Bonds (the "Official Statement"), no litigation or other proceedings are pending or, to the knowledge of the System, threatened, in or before any agency, court or tribunal, state, Commonwealth of Puerto Rico, or federal, (A) restraining or enjoining or seeking to restrain or enjoin the issuance, sale, execution or delivery of any of the Bonds or the collection of the Employers' Contributions (as defined in the Bond Resolution hereinafter mentioned) pledged to the payment of the principal of and premium, if any, and interest on the Bonds, (B) contesting or affecting, in any way, the payment, collection or application of the Employers' Contributions of the System or the pledge thereof pursuant to the Bond Resolution (as defined in the Official Statement), (C) contesting or affecting the validity of any provision of the Bonds, the Bond Resolution, the MCDA, the Security Agreement (each as defined in the Purchase Contract, dated June 26, 2008 (the "Purchase Contract")), executed by the System in connection with the issuance of the Bonds, (D) contesting or affecting the validity of any of the proceedings of the System for the authorization, sale, execution or delivery of the Bonds, or the authorization, execution and delivery of the Purchase Contract, the MCDA or the Security Agreement or the adoption of the Bond Resolution, (E) contesting or affecting the organization or existence of the System or the title of any of its officers to their respective offices or any powers of the System under the laws of the Commonwealth of Puerto Rico or (F) contesting or affecting the accuracy or completeness of the Official Statement or any amendment or supplement thereto; (2) the representations and warranties of the System in the Purchase Contract are true, accurate and correct as of the date hereof, and the System has complied with and performed all agreements, covenants and arrangements and satisfied all conditions on its part to be complied with, performed or satisfied hereunder at or prior to the date hereof; (3) subsequent to the date of the most recent financial statements of the System in the Official Statement, there has been no material adverse change in the financial position or results of operations of the System except as set forth in or contemplated by the Official Statement; and (4) the Official Statement as of its date and at all subsequent times up to and including the date hereof, did not and does not contain any untrue statement of a material fact or omit to state a material fact required to be included therein for the purpose for which the Official Statement is to be used or which is necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

NY1 6660699v.4

PR-ERS-000005089

WITNESS my hand this 30th day of June, 2008.

_____

Minia González-Álvarez
Acting Administrator

NY1 6660699v.4

PR-ERS-000005090

**EXHIBIT D-2**

## CERTIFICATE OF THE ACTING SECRETARY OF THE
## TREASURY OF THE COMMONWEALTH OF PUERTO RICO
(Pursuant to subparagraph 8(d)(5) of the Purchase Contract)

I, ÁNGEL ORTIZ GARCÍA, Acting Secretary of the Treasury of the Commonwealth of Puerto Rico (the "Commonwealth"), DO HEREBY CERTIFY, in connection with the issuance and sale by the Employees Retirement System of the Government of the Commonwealth (the "System") of its $300,202,930.00 initial principal amount of Senior Pension Funding Bonds, Series C (the "Bonds"), that:

(a)     Representatives of the Department of the Treasury of the Commonwealth, together with representatives of Government Development Bank for Puerto Rico and of the Office of Management and Budget of the Commonwealth, participated in the preparation of the Commonwealth Report and the general purpose financial statements (for the fiscal year ended June 30, 2006) audited by KPMG LLP, included or incorporated by reference in the Official Statement of the System, dated June 26, 2008, in connection with the issuance and sale of the Bonds (the "Official Statement").

(b)     I have examined the Official Statement (and the information incorporated by reference in the Official Statement) and to my knowledge and belief, (1) as of the date of the Official Statement and as of the date hereof, such Report and financial statements did not and does not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; (2) as of the date hereof, except as disclosed in such Report and financial statements, there has been no material adverse change in the condition of the Commonwealth, financial or otherwise, since June 30, 2006; (3) as of the date hereof, the Commonwealth is not in default under the provisions of any agreement or of any instrument evidencing or relating to any outstanding indebtedness or other obligations for borrowed money of the Commonwealth or any Commonwealth guaranty of outstanding indebtedness or other obligations for borrowed money of others; and (4) the representations and warranties of the Commonwealth in the Letter of Representations, dated June 30, 2008, are true, accurate and correct as of the date hereof, with the same effect as if made on and as of the date hereof, and the Commonwealth has complied with and performed all agreements, covenants and arrangements and satisfied all conditions on its part to be complied with, performed or satisfied thereunder at or prior to the date hereof.  In making the statements specified in clauses (1) through (4) of this paragraph (b), I have relied, after reasonable investigation, and believe that I am justified in so relying, as to information relating to and provided by governmental agencies or departments other than the Department of the Treasury of the Commonwealth, upon information furnished to me by such agencies or departments.

NYI 6660699v.4

WITNESS my hand this 30th day of June, 2008.

_____

Ángel Ortiz García
Acting Secretary of the Treasury of Puerto Rico

PR-ERS-000005092

**EXHIBIT E**

### CERTIFICATE OF GOVERNMENT DEVELOPMENT BANK
### FOR PUERTO RICO
(Pursuant to subparagraph 8(d)(6) of the Purchase Contract)

I, JORGE IRIZARRY HERRÁNS, President of Government Development Bank for Puerto Rico, DO HEREBY CERTIFY that the Certificate of the acting Secretary of the Treasury of the Commonwealth of Puerto Rico pursuant to Section 8(d)(5) of the Purchase Contract relating to $300,202,930.00 initial principal amount of Senior Pension Funding Bonds, Series C of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Bonds") is hereby confirmed as to all statements made under the general heading "Public Corporations" in the Commonwealth Report incorporated by reference to the Official Statement relating to said Bonds.

In rendering this Certificate, I have relied, after reasonable investigation, and believe that I am justified in so relying, as to information relating to and provided by public corporations other than Government Development Bank for Puerto Rico and any of its subsidiaries, upon information furnished to me by such public corporations.

WITNESS my hand this 30th day of June, 2008.

_____
Jorge Irizarry Herráns
President
Government Development Bank for Puerto Rico

E-1

NYI 6660699v.4

PR-ERS-000005093