**EXHIBIT 28**

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 1

1 IN THE UNITED STATES DISTRICT COURT
2 FOR THE DISTRICT OF PUERTO RICO
3
4 _____
5   In Re:                                              )
6   THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD        )   PROMESA TITLE III
7   FOR PUERTO RICO                                     )   Case No.
8         as representative of                          )   17-BK-03283 (LTS)
9   THE COMMONWEALTH OF PUERTO RICO, et. al,            )
10          Debtors.                                    )
11 _____)
12  In Re:                                              )
13  THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD        )   PROMESA Title III
14  FOR PUERTO RICO                                     )   Case No.
15        as representative of                          )   17-BK-03566 (LTS)
16  THE EMPLOYEES RETIREMENT SYSTEM OF THE              )
17  GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,      )
18          Debtor.                                     )
19 _____)
20
21           C O N F I D E N T I A L
22     Videotaped Deposition of Patrick Dowd
23
24  Reported by:
25  LORRAINE B. ABATE, CSR, RPR

```
 1                      Patrick Dowd
 2        A.     Five.
 3        Q.     I'm sorry.  Sorry.  So you've been
 4   involved in 40 total investments since you started at
 5   King Street?
 6        A.     That's my rough estimate off the top of
 7   my head.
 8        Q.     Okay.  What are the other --
 9        A.     And to clarify that, that refers to a
10   company or issuer.  If -- if there are different
11   investments over time within that one company or
12   issuer, I'm only counting it once.
13        Q.     Okay.  So if one company or issuer
14   issued multiple series of bonds, you're just counting
15   that as one for purposes of this discussion?
16        A.     Right.
17        Q.     Okay.  So you said that -- subject to
18   that clarification, you said that there are five
19   investments dealing with municipal securities that
20   you've been involved in.
21               Can you name the five by issuer?
22        A.     Sure.  Jefferson County Alabama sewer
23   revenue bonds.
24        Q.     I'm sorry?
25        A.     Jefferson County Alabama sewer --
```

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 25

1                            Patrick Dowd
2      Q.    Sewer revenue bonds?
3      A.    Sewer revenue bonds, and there were
4 warrants. I don't recall exactly what they were
5 called. The Detroit tops -- securities in the
6 Detroit bankruptcy. Tobacco revenue bonds. Puerto
7 Rico PRASA, the water utility, and Puerto Rico ERS,
8 as we're talking about here.
9          And then we did have -- those were the
10 larger investments. We had some smaller investments
11 at different points in time in other Puerto Rico
12 securities. We being -- we being all of King
13 Street's vehicles.
14      Q.    What other Puerto Rico securities
15 specifically?
16      A.    At various points in times, we've owned
17 GOs, PBA bonds, COFINA, PREPA. I think that covers
18 it, but that's to the best of my knowledge as we sit
19 here today.
20      Q.    And were you involved in the decision by
21 King Street to invest in each of those different
22 series of Puerto Rico bonds that you just mentioned?
23          MR. FOX: Objection, compound.
24      Q.    You can answer the question.
25      A.    Yes, I was involved.

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 42

1                      Patrick Dowd

2         First, what process do you go through to
3 identify potential investments?
4      A.    Can you make the question more specific
5 somehow. It's seems to me a very broad question.
6      Q.    Well, let's talk about the ERS bonds
7 specifically, then.
8         How did you first identify the ERS bonds
9 as a potential investment for Ocher Rose?
10     A.    We started doing work on Puerto Rico in
11 mid to late 2013 when its various issues of debt
12 began to trade off meaningfully from par and when
13 there began to be concerns about the liquidity and
14 solvency of the Commonwealth.
15         As part of that work, we reviewed the
16 various different issuers of debt and the different
17 bonds that issued, and reviewed both the sort of
18 financial health of the different issuers and the
19 island overall, and the legal structures of their
20 liabilities.
21         And our -- that would have been based on
22 things like the offering statements, the resolutions,
23 eventually, something like the enabling act. It
24 would have been based on the various financial
25 statements. It would have been based on, you know,

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 73

1                     Patrick Dowd
2        A.    I'm happy for you to confirm for me.
3        Q.    As the -- so as -- as the Rule 30(b)(6)
4    designee, you're not certain whether Act 447 is the
5    ERS enabling act?
6              MR. FOX:  Objection.
7        A.    I know of the ERS enabling act.  I don't
8    know whether it's Act 447.
9        Q.    Does this e-mail do anything to refresh
10   your recollection or to suggest to you when Ocher
11   Rose first reviewed a copy of the ERS enabling act?
12       A.    It -- it does not.  It would -- my -- my
13   best guess looking at this e-mail is -- is that the
14   timing of the e-mail coincides with this person
15   Daniel Ehrmann's joining King Street and Evan
16   educating him on this information.
17             I don't think it necessarily has
18   anything to do with the timing on when Evan or anyone
19   else reviewed the enabling act.
20       Q.    Well, would you agree with me that if
21   the language excerpted in this e-mail is in fact from
22   the ERS enabling act, that Ocher Rose reviewed that
23   document prior to or at least no later than July 17,
24   2015, the date of this e-mail?
25             MR. FOX:  Objection to form.

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 74

1 Patrick Dowd
2     A.    It seems like a fair interpretation to
3 me that to the extent that this is an excerpt from
4 the enabling act, that at the very least, Evan Mossop
5 reviewed parts of the enabling act on or before this
6 date.
7     Q.    But you don't know which parts he would
8 have reviewed?
9     A.    I don't know.
10     Q.    Do you recall Ocher Rose having any
11 communications with Capstone relating to its decision
12 to acquire ERS bonds?
13     MR. FOX:  Objection to form.  Whose
14     decision?
15     MR. BASSETT:  Ocher Rose's decision.
16     A.    I believe we received e-mails from
17 Capstone, who is a policy advisor we subscribe to,
18 that contained views of theirs on the ERS bonds.
19     We typically or regularly receive views
20 and recommendations on potential investments from a
21 large number of sources, and it would not have played
22 a material role in our decision to buy ERS bonds.
23     Q.    When you say a policy advisor, what does
24 that mean?
25     A.    We subscribe to them.  They're based in

CONFIDENTIAL
Patrick Dowd - February 28, 2020

Page 78

1  Patrick Dowd
2  pricing, my understanding, although it's not my area
3  of responsibility, is that would come from market
4  quotes received by the people doing it.
5     Q.   Okay.  When did Ocher Rose first become
6  aware of an argument that the ERS bonds were issued
7  without authority?
8     A.   It's not something we were aware of or
9  considered until the argument was raised.
10          You would have to remind me when that
11 first was by -- I don't recall whether it was in the
12 Title III case, but whenever that was first raised in
13 litigation against us would have been the time.
14    Q.   Does -- well, I'm aware of a pleading
15 that was filed by AAFAF in November 2017 that made
16 the argument that the bonds were issued ultra vires.
17          Do you recall that document?
18    A.   I do recall -- I don't recall the
19 specifics of the document, but I recall that, and
20 that time frame is consistent with my recollection.
21          I think that's when -- that's likely
22 when we would have first been aware.
23    Q.   But just to be clear, so your testimony
24 is that Ocher Rose did not ever become aware of that
25 argument prior to it being made in a public court