**EXHIBIT 47**

**In Re:**

*ONEWEB GLOBAL LIMITED, et al.*

*Main Case No. 20-22437-rdd*

---

*July 28, 2020*

---

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



**Min-U-Script® with Word Index**

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

ONEWEB GLOBAL LIMITED, et al.,          Main Case No.

         Debtors.                            20-22437-rdd

- - - - - - - - - - - - - - - - - - - - -x

                United States Bankruptcy Court

                300 Quarropas Street

                White Plains, New York

                July 28, 2020

                1:04 PM

B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

1

2 Notice of Agenda for Matters Scheduled for July 28, 2020, at

3 1:00 PM

4

5 Motion to Extend Time / Notice of Debtors' Motion to Extend the

6 Debtors' Exclusive Periods to File a Chapter 11 Plan and

7 Solicit Acceptances Thereof Pursuant to Section 1121 of the

8 Bankruptcy Code (ECF #395)

9

10 Official Committee of Unsecured Creditors' Limited Objection to

11 Debtors' Motion to Extend Debtors' Exclusive Periods to file a

12 Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to

13 Section 1121 of the Bankruptcy Code (related document(s)395)

14 filed by Luc A. Despins on behalf of Official Committee of

15 Unsecured Creditors (ECF 419)

16

17 Debtors' Reply to the Committee's Objection to the Motion To

18 Extend Their Exclusive Periods to File a Chapter 11 Plan and

19 Solicit Acceptances Thereof (related document(s)395, 419) filed

20 by Lauren C. Doyle on behalf of OneWeb Global Limited (ECF

21 #440)

22

23 Motion for Order Granting Committee Derivative Standing to

24 Pursue and, if Appropriate, Settle Claims for

25 Recharacterization and Equitable Subordination Against Certain

1

2  Purported Secured Creditors, and (II) Objection to Such

3  Creditors' Claims (related document(s)402)

4

5  Softbank Group Corp.'s Objection to the Official Committee of

6  Unsecured Creditors' (I) Motion for Order Granting Committee

7  Derivative Standing to Pursue, and if Appropriate, Settle

8  Claims for Recharacterization and Equitable Subordination

9  Against Certain Purported Secured Creditors, and (II) Objection

10  to Such Creditors' Claims (related document(s)402) filed by

11  Gary S. Lee on behalf of SoftBank Group Corporation (ECF #427)

12

13  Joinder and Supplemental Memorandum of Law in Opposition to the

14  Official Committee Of Unsecured Creditors' (I) Motion For Order

15  Granting Committee Derivative Standing to Pursue and, if

16  Appropriate, Settle Claims for Recharacterization and Equitable

17  Subordination Against Certain Purported Secured Creditors and

18  (Ii) Objection to Such Creditors' Claims (related

19  document(s)402) filed by Timothy Q. Karcher on behalf of Grupo

20  Elektra S.A.B. de C.V. (ECF #428)

21

22  Joinder of Airbus Group Proj B.V. to the Softbank Group Corp.'s

23  Objection to the Official Committee of Unsecured Creditors' (I)

24  Motion for Order Granting Committee Derivative Standing to

25  Pursue and, if Appropriate, Settle Claims for

1

2  Recharacterization and Equitable Subordination Against Certain

3  Purported Secured Creditors, and (II) Objection to Such

4  Creditors' Claims (related document(s)402, 427) filed by

5  Michael C. Hefter on behalf of Airbus Group Proj B.V. (ECF

6  #429)

7

8  Debtors' Objection to the Official Committee of Unsecured

9  Creditors' (I) Motion for Order Granting Committee Derivative

10  Standing to Pursue, and if Appropriate, Settle Claims for

11  Recharacterization and Equitable Subordination Against Certain

12  Purported Secured Creditors, and (II) Objection to Such

13  Creditors' Claims (related document(s)402) filed by Lauren C.

14  Doyle on behalf of OneWeb Global Limited (ECF 430)

15

16  Joinder of Qualcomm Technologies, Inc. and Qualcomm Global

17  Trading PTE. Ltd to the Debtors' and Softbank Group Corp.'s

18  Objections to the Official Committee of Unsecured Creditors'

19  Motion for Derivative Standing to Pursue Recharacterization and

20  Subordination of Certain Secured Creditors' Claims and

21  Objections Thereto (related document(s)402, 430, 427) filed by

22  Rachel Ehrlich Albanese on behalf of Qualcomm Technologies,

23  Inc. and Qualcomm Global Trading Pte. Ltd. (ECF #440)

24

25  Official Committee of Unsecured Creditors' Motion for an Order

1

2   Authorizing the Committee to Exceed the Page Limit for the

3   Committee's Reply in Support of Motion for Order Granting

4   Committee Derivative Standing to Pursue and, if Appropriate,

5   Settle Claims for Recharacterization and Equitable

6   Subordination against Certain Purported Secured Creditors filed

7   by Luc A. Despins on behalf of Official Committee of Unsecured

8   Creditors (ECF #422)

9

10   Official Committee of Unsecured Creditors' Reply in Support of

11   Motion for Order Granting Committee Derivative Standing to

12   Pursue and, if Appropriate, Settle Claims for

13   Recharacterization and Equitable Subordination against Certain

14   Purported Secured Creditors (related document(s)402) filed by

15   Luc A. Despins on behalf of Official Committee of Unsecured

16   Creditors (ECF #445)

17

18

19

20   Transcribed by:  Linda Ferrara

21   eScribers, LLC

22   352 Seventh Avenue, Suite #604

23   New York, NY 10001

24   (973)406-2250

25   operations@escribers.net

1

2    A P P E A R A N C E S (TELEPHONICALLY):

3    MILBANK LLP

4          Attorneys for Debtors

5          55 Hudson Yards

6          New York, NY 10001

7

8    BY:   TYSON LOMAZOW, ESQ.

9          BRIAN KINNEY, ESQ.

10         LAUREN C. DOYLE, ESQ.

11

12

13   MILBANK LLP

14         Attorneys for Debtors

15         1850 K Street, NW

16         Suite 1100

17         Washington, DC 20006

18

19   BY:   ANDREW M. LEBLANC, ESQ.

20

21

22

23

24

25

1

2 PAUL HASTINGS LLP

3         Attorneys for Official Creditors' Committee

4         200 Park Avenue

5         New York, NY 10166

6

7 BY:   LUC A. DESPINS, ESQ.

8

9

10 PAUL HASTINGS LLP

11         Attorneys for Official Creditors' Committee

12         2050 M Street NW

13         Washington, DC 20036

14

15 BY:   NICHOLAS A. BASSETT, ESQ.

16

17

18 MORRISON & FOERSTER LLP

19         Attorneys for SoftBank Group Corporation

20         250 West 55th Street

21         New York, NY 10019

22

23 BY:   DAVID J. FIOCCOLA, ESQ.

24         GARY S. LEE, ESQ.

25

1

2    PROSKAUER ROSE LLP

3          Attorneys for Grupo Elektra

4          11 Times Square

5          New York, NY 10036

6

7    BY:   TIMOTHY Q. KARCHER, ESQ.

8          CARLOS E. MARTINEZ, ESQ.

9          SETH FIUR, ESQ.

10

11

12   COLE SCHOTZ P.C.

13          Attorneys for the Official Committee of Unsecured

14             Creditors

15          1325 Avenue of the Americas

16          19th Floor

17          New York, NY 10019

18

19   BY:   NOLAN E. SHANAHAN, ESQ.

20          SETH VAN AALTEN, ESQ.

21

22

23

24

25

```
 1
 2  HOGAN LOVELLS US LLP
 3        Attorneys for Airbus DS Satnet LLC and Airbus Group
 4            Proj B.V.
 5        390 Madison Avenue
 6        New York, NY 10017
 7
 8  BY:   CHRISTOPHER (CHRIS) R. BRYANT, ESQ.
 9        MICHAEL HEFTER, ESQ.
10
11
12  CRAVATH, SWAINE & MOORE LLP
13        Attorneys for Gharti Global Ltd.
14        825 Eighth Avenue
15        New York, NY 10019
16
17  BY:   PAUL H. ZUMBRO, ESQ.
18
19
20  HUGHES HUBBARD & REED LLP
21        Attorneys for Airbus OneWeb Satellites LLC
22        One Battery Park Plaza
23        New York, NY 10004
24
25  BY:   JEFFREY S. MARGOLIN, ESQ.
```

```
 1

 2    WEIL, GOTSHAL & MANGES LLP

 3          Attorneys for HMG

 4          767 Fifth Avenue

 5          New York, NY 10153

 6

 7    BY:   GABRIEL A. MORGAN, ESQ.

 8          GARRETT FAIL, ESQ.

 9          ANTHONY L. GREENE, ESQ.

10

11

12    DLA PIPER LLP (US)

13          Attorneys for Qualcomm

14          2000 Avenue of the Stars

15          Suite 400 North Tower

16          Los Angeles, CA 90067

17

18    BY:   ERIC GOLDBERG, ESQ.

19

20

21

22

23

24

25
```

1

2   TOGUT, SEGAL & SEGAL LLP

3         Attorneys for Kongsberg Satellite Services AS (KSAT)

4         One Penn Plaza

5         Suite 3335

6         New York, NY 10119

7

8   BY:   NEIL BERGER, ESQ.

9         ALBERT TOGUT, ESQ.

10

11

12   UNITED STATES DEPARTMENT OF JUSTICE

13         Office of the United States Trustee

14         201 Varick Street

15         Suite 1006

16         New York, NY 10014

17

18   BY:   RICHARD C. MORRISSEY, ESQ.

19

20

21

22

23

24

25

1   the time period that we agreed to.

2           THE COURT:  Okay.  All right.  Okay, anyone else in

3   objection to the motion?  Okay, Mr. Despins, just briefly, if

4   you want to say something.

5           MR. DESPINS:  Yeah, I'll try to cover a lot of stuff.

6   I'll start from what was just covered, so that it's fresh in

7   your memory.  First of all, the document we quoted from is not

8   post-bankruptcy.  It was February, and it clearly shows that

9   the important thing for them was that the form was always

10  something that showed a loan.  And that that was their goal,

11  and that's why we cited it.

12          And I'm not going to address the discovery thing,

13  other than to say we had no ability to test whether the

14  discovery was complete because of when it was produced.  And it

15  was clearly in violation of the court order.

16          In terms of the Yoga case, it's true that Judge Wiles

17  said that.  But the point is that that seems to basically go to

18  the issue that the subjective belief of a party is what

19  controls here.  And there's nothing further from what the

20  analysis should be.  It can't be that.

21          Then the point about the maturity being in 2023,

22  that's true, but the point is that the fuel they're providing

23  for the plane could not get them to that point and could not

24  get them to a point where any revenues would occur.  That's the

25  key.  We're not asking for a bright-line test that you cannot

1    finance a startup.  There's just so many differentiating

2    factors here that make it not applicable.

3            Now, the issue of control by SoftBank, they say oh,

4    look, we had this side letter with the Mexican lender.  And by

5    the way, it's not an accident that it was Banco Azteca that was

6    put in there.  It was all controlled by the same people at

7    Salinas and decided to put that entity.  But it has nothing to

8    do with it being a bank or anything like that.

9            Now, the issue of SoftBank being in control and no,

10   that's not the case because there was a side letter.  So now

11   they're telling you there's two side letters.  That leaves

12   three lenders that don't have the side letters.  And by the

13   way, Your Honor, I know you'll look at this.  The side letter

14   doesn't do any good for them.  And it's true, it says you can't

15   exchange principal and all that, but it does not govern

16   remedies.

17           Remedies are governed by SoftBank.  So SoftBank, they

18   can be in default, the money is due, they control the exercise

19   of remedies.  And these guys did not cover that, and that shows

20   the point is that SoftBank is in complete control of that.  And

21   you would never have a lender put another lender in complete

22   control of remedies when you're in full default.

23           The issue of -- now, let me now go to Mr. LeBlanc's

24   point.  Your Honor, we tried to be nice about this.  But there

25   are huge corporate-governance issues here.  This is rife with

1 conflict. Mr. LeBlanc said he wasn't clear whether the four

2 million and change was approved at the same time as the DIP.

3 I'm sure they were discussing the DIP at that time, let's not

4 kid ourselves, because that's two days before the filing.

5 And two, at that time, or soon thereafter, they're

6 discussing the KEIP, and SoftBank negotiated the KEIP, and of

7 course, now we know that they're getting -- that the debtors

8 are giving them a release as part of the plan support

9 agreement. It's basically a group scratching each other's

10 backs, and that should be very troubling with the Court. It's

11 all linked. It's all related.

12 The whole argument about highly damaging, the parade

13 of horribles, is not accurate. The ninety million is fully

14 protected, meaning that the bidder cannot do anything about

15 that. That money is gone, as you said.

16 As to the hundred million dollars, again, we would

17 cross that bridge if and when we get to it. The fact that you

18 authorized us to recharacterize or to attempt to recharacterize

19 1.7 billion dollars of debt does not address remedies.

20 Remedies can be addressed later.

21 Now, I want to address where I think you're heading,

22 Your Honor, which is the issue of the assumption of contracts,

23 right? If everyone's contracts were assumed, this issue might,

24 in theory, go away. First of all, I don't believe that for a

25 second that it will happen, but not only that, but it's going

1    to be too late.  They're doing this five days before

2    confirmation.  And it is true that in a normal cooperative

3    environment you would try to say hey, let's wait for the bar

4    date.  Let's analyze the claims.  You would do that jointly,

5    and there would be a joint effort.  But that's not what's

6    happening here.  I guarantee you, they will try to jam the

7    committee so that the committee, for example, will cease to

8    exist on the petition date, so therefore cannot be a plaintiff

9    anymore.  Not petition date.  On the confirmation date or the

10   effective date.  So it cannot be a plaintiff anymore.

11           There'll be no funding.  There'll be tons of

12   roadblocks that they will put in, which forces us to push the

13   issue today.  But I can see that you're reluctant, and I can --

14   I, sort of, see that, and it makes sense if, in fact, there was

15   a way to protect the committee, protect the creditors, so they

16   can see what's behind the curtain, whether it's real or not.

17           At the end of the day, I believe there'll be at least

18   twenty -- thirty million dollars of claims that are not being

19   assumed by the buyer.  So the question is, Mr. Leblanc is

20   basically saying well, just too bad for these people.  We'll

21   just let them go.  The committee cannot do that.  That would be

22   inappropriate.  And on the facts here, where you have this

23   hopelessly conflicted group of people, it cannot be the result.

24   And we hope Your Honor is sensitive to that.

25           And I just want to end by saying that we're not trying

ONEWEB GLOBAL LIMITED, ET AL.                    90

1   to establish a bright-line test that says that startup

2   financing isn't possible, but the facts here are just so

3   compelling that we believe that there will be no impact,

4   practically, on startup financing.

5           Thank you, Your Honor.

6           THE COURT:  Okay.  All right.  I have before me the

7   official unsecured creditors' committee's motion to be accorded

8   standing to pursue, on a derivative basis, and, if appropriate,

9   settle claims against the defendants in a proposed complaint

10  that's attached to the motion for recharacterization of the

11  defendants secured claims in these bankruptcy cases to equity

12  under federal law and/or alternatively, to equitably

13  subordinate the claims to the claims of the general unsecured

14  creditors under Section 510(c) of the Bankruptcy Code.

15          I should note that the motion also includes a request,

16  then on the basis of the complaint, although it needn't be on a

17  complaint necessarily, for an order disallowing the defendants'

18  claims under Section 502(b) of the Bankruptcy Code, again, on

19  the grounds that they are equity interests.

20          This is a topic, this latter point, that has not been

21  addressed, as far as I can tell, above the bankruptcy court

22  level, and I don't think, in the Southern District of New York.

23  To the extent it has been addressed at all, most of the time

24  it's addressed in the context of the proper standard for a

25  recharacterization motion, i.e. whether the motion or the

1    adversary proceeding should be considered under Section 105 of

2    the Bankruptcy Code, or alternatively, under Section 502(b) of

3    the Bankruptcy Code, the distinction being the case, in most

4    courts' analysis, if disallowance is being pursued under

5    Section 502(b), the analysis might well be under applicable

6    nonbankruptcy law, i.e. state law in most instances.

7          Most courts have concluded that the proper analysis is

8    under 105(a) generally and is not focused on the fact that

9    there are two options under the Bankruptcy Code.  They have

10   just said that if someone is seeking recharacterization, and

11   they say they want to do it under Section 105, they can.  See

12   In re Alternate Fuels, Inc., 789 F.3d 1139, 1147-1149 (10th

13   Cir. 2015).

14         On the other hand, the authorities that I've located

15   that deal with the standing issue under Section 502(b) have

16   made it clear, and I agree with them, that there's no

17   limitation on a parties-in-interest's standing, except a

18   constitutional limitation, i.e. that they are the party

19   aggrieved to pursue recharacterization under Section 502(b) of

20   the Bankruptcy Code as part of a claim objection.  See In re

21   Tara Retail Group, LLC, 595 B.R. 215, 222-223 (Bankr. N.D.W.

22   Va. 2018).  United States v. State Street Bank & Trust Co., 520

23   B.R. 29, 72 (Bankr. D. Del. 2014).  And In re Brooke Capital

24   Corp, 2011 Bankr. LEXIS 210, at *23 (Bankr. D. Kan. Jan. 20,

25   2011).

1      A court does have other means to control its calendar

2  and to try to ensure that litigation is not pursued by parties

3  that are acting as a fiduciary and/or being paid by the estate

4  separate and apart from standing, and conceivably that applies

5  here with regard to the 502(b) portion of the relief sought by

6  the committee, but it's not a standing issue or an issue that

7  pertains to standing.

8      No objecting party has objected to that portion of the

9  committee's request.  I think the reason is obvious.  There's

10  no basis to object on a standing ground.

11      So at some level, the arguments over standing are,

12  although, perhaps, important for the course of this case, kind

13  of, in a very strict sense, not dispositive here.  I'll keep

14  that in mind with regard to my ruling on standing.

15      But turning to the motion's request to obtain

16  standing, under the case law in the Second Circuit there are

17  two basic scenarios in which a creditors' committee or another

18  party-in-interest can obtain standing to pursue claims on

19  behalf of the bankruptcy estate.  One is where the debtor

20  consents to a third party bringing suit, which, of course, is

21  not applicable here, and the other is when the debtor-in-

22  possession unjustifiably refuses to bring an action against

23  some third party.  See, for example, In re STN Enterprises, 779

24  F.2d 901, (2d Cir. 1985) and the trio of cases following it,

25  including In re Adelphia Communications Corp., 544 F.3d 420,

1    424 (2d Cir. 2008).

2         Fiduciary considerations are of the utmost importance

3    in considering expanding standing to someone beyond the initial

4    and primary fiduciary for debtors' estate, namely the debtor-

5    in-possession.  The Second Circuit has recognized, though, that

6    there are times when a debtor-in-possession may not always

7    fulfill its responsibilities and may unjustifiably fail to

8    bring valid claims or abuse its discretion by not suing.  Id.

9    544 F.3d 424.

10         The court went on to say, however, it is the court's

11   role and not that of a derivative plaintiff both to oversee the

12   litigation and to check any potential for abuse by the parties,

13   i.e. the court has to make ultimately a decision whether, in

14   exercising its fiduciary duties, the debtor is acting properly

15   in not bringing litigation.  And the flip side, the third party

16   would not be a good steward of the estate's resources in

17   bringing litigation, or to the contrary, the debtor is

18   unjustifiably, in light of its fiduciary duties, refusing to

19   bring the litigation, and the requesting plaintiff is, in fact,

20   or would, in fact, act as a proper fiduciary.

21         The standard to evaluate a standing motion in the

22   Second Circuit is well established.  Again, it goes back to the

23   seminal case In re STN Enterprises.  Here, "if the committee

24   presents a colorable claim or claims for relief that on

25   appropriate proof would support a recovery, the court's

1    threshold inquiry will not be at an end.  In order to decide

2    whether the debtor unjustifiably failed to bring suit so as to

3    give the creditors' committee standing to bring an action, the

4    court must also examine, on affidavit and other submission, by

5    evidentiary hearing or otherwise, whether an action asserting

6    such claim is likely to benefit the reorganization estate."

7    779 F.2d 905.

8            But the Court engages in an analysis in which it looks

9    at whether there is a colorable claim that the committee wants

10   to bring, that its pursuit of that claim is likely to benefit

11   the estate and to the extent the inquiry isn't subsumed in that

12   second factor, whether the trustee or debtor-in-possession has

13   unjustifiably failed to pursue it.

14           The quantum of proof is flexible for such an analysis.

15   Clearly the Second Circuit in STN acknowledged that the court

16   may properly engage in some review of disputed facts to

17   determine if there is proper factual support for the allegation

18   and to determine if the proposed litigation would be a sensible

19   application of estate resources.  See In re Sabine Oil & Gas

20   Corp., 562 B.R. 211, 222 (S.D.N.Y. 2016), and In re Adelphia

21   Communications Corp., 330 B.R. 364, 369 (Bankr. S.D.N.Y. 2005).

22           This does not require a minitrial, but as noted by the

23   Circuit, the bankruptcy court should assure itself that there

24   is a sufficient likelihood of success to justify the

25   anticipated delay and expense to the bankruptcy estate that the

1  initiation and continuation of litigation would likely produce.

2  In re STN, 779 F.2d 905, 906.

3         The first part of the analysis, that the claims be

4  colorable, has been noted as a relatively easy one to make, In

5  re Adelphia Communications Corp., 330 B.R. 376, and is often

6  equated with the standard of considering a motion to dismiss.

7  It's not necessarily limited to that consideration, however,

8  particularly where the standing motion is raised early in a

9  bankruptcy case, and there has not been the type of bankruptcy

10 discovery under Rule 2004 that would normally inform a

11 complaint in a Chapter 11 case of this nature.

12        We are relatively early in this Chapter 11 case.  The

13 committee, I guess it's had about a month to conduct discovery

14 under Bankruptcy rule 2004, given the deadline it faced under

15 the debtor-in-possession order from April.  It has not taken

16 depositions.  It has obtained a fair amount of document

17 discovery, but that discovery has pertained to at least two

18 relatively complex, factually that is, determinations with

19 respect to credit facilities that are the subject of the

20 proposed complaint.

21        The objectors contend that under the applicable case

22 law, which, at the Circuit level, is really outside of the

23 Second Circuit and based on two leading cases.  In re Submicron

24 Systems Corp., 432 F.3d 448 (3d Cir. 2006) and In re Autostyle

25 Plastics, Inc., 269 F.3d 726 (6th Cir. 2000), that on a motion

1    to dismiss or colorable claims analysis, that there is no

2    colorable claim here for recharacterization or equitable

3    subordination.

4          Courts in the Second Circuit at the district court and

5    bankruptcy court level, and frankly, also in the Third Circuit,

6    even after Submicron, often include an analysis of the so-

7    called Autostyle factors for determining whether a debt claim

8    should be recharacterized as equity.

9          The objectors here argue that the secured loans should

10   clearly not be recharacterized on their merits, where the

11   committee, applying the same basic analysis, contends that, at

12   a minimum, they state colorable claims for purposes of the STN

13   analysis.

14         Similarly, the parties disagree over whether the

15   complaint separately sets forth a claim for equitable

16   subordination under Section 510(c) of the Bankruptcy Code.

17   Both of those causes of action seek essentially the same

18   ultimate result, which is recharacterization of the loan

19   transaction in a way that puts them behind general unsecured

20   claims, but the tests are different, as noted by the Fourth

21   Circuit In re Dornier Aviation (North America), Inc., 453 F.3d

22   225, 232 (4th Cir. 2006).

23         Equitable subordination differs markedly and serves

24   different purposes from recharacterization.  While a bankruptcy

25   court's recharacterization decision rests on the substance of