# **EXHIBIT 48**

CONFIDENTIAL
James Bolin - March 6, 2020

Page 1

```
1                IN THE UNITED STATES DISTRICT COURT
2                   FOR THE DISTRICT OF PUERTO RICO
3
4       _____
5        In Re:                                        )
6        THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD  )  PROMESA TITLE III
7        FOR PUERTO RICO                               )  Case No.
8                   as representative of               )  17-BK-03283 (LTS)
9        THE COMMONWEALTH OF PUERTO RICO, et. al,      )
10                 Debtors.                            )
11      _____)
12       In Re:                                        )
13       THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD  )  PROMESA Title III
14       FOR PUERTO RICO                               )  Case No.
15                  as representative of               )  17-BK-03566 (LTS)
16       THE EMPLOYEES RETIREMENT SYSTEM OF THE        )
17       GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,)
18                 Debtor.                             )
19      _____)
20
21                          CONFIDENTIAL
22                     Transcript of James Bolin
23
24       Reported by:
25       LORRAINE B. ABATE, CSR, RPR
```

GregoryEdwards, LLC | Worldwide Court Reporting
GregoryEdwards.com | 866-4Team GE

```
 1      CONFIDENTIAL - Bolin - March 6, 2020 - CONFIDENTIAL
 2      A.      We both had similar recollection.  There
 3   could have been other documents, there certainly have
 4   been other documents since the initial purchases we
 5   don't remember.
 6      Q.      So those are the only two documents that
 7   you specifically recall looking at at the time of
 8   your initial purchase of ERS bonds?
 9      A.      Right.  For sure, yeah.
10      Q.      And you also mentioned that you
11   discussed with Mr. Bersh the preparation made for
12   investing in ERS bonds; is that correct?
13      A.      Yeah.  That would be the document -- the
14   official statement and the bond resolution.
15      Q.      There was no other preparations that you
16   made that you can recall before?
17      A.      I think I testified that I had -- my
18   interest in the ERS bonds had been precipitated by a
19   Morgan Stanley report in July of 2015, and I don't
20   believe he had seen the report.  I'm sure he has seen
21   it since, but I don't think at the time he had.
22      Q.      And then finally, you mentioned that you
23   discussed with Mr. Bersh when you had first spoken
24   with counsel with respect to the ERS bonds.
25      A.      Yes.
```

CONFIDENTIAL
James Bolin - March 6, 2020

Page 80

1     CONFIDENTIAL - Bolin - March 6, 2020 - CONFIDENTIAL
2   whether you reviewed the enabling act or portions of
3   the enabling act before making an initial purchase of
4   ERS bonds?
5       A.    Correct.
6       Q.    Do you know if anyone at Appaloosa
7   reviewed the enabling act before the Appaloosa Funds
8   made their first purchase of ERS bonds?
9       A.    Mr. Bersh does not recall reviewing it
10  and Mr. Nigam did not review any legal documents in
11  this case.
12      Q.    So you're not aware of anyone at
13  Appaloosa who reviewed the enabling act before the
14  first purchase?
15      A.    Correct.
16      Q.    And you've already confirmed that you
17  have, at no point, reviewed the Spanish version of
18  the enabling act?
19      A.    That's correct.
20      Q.    Did the information that the Appaloosa
21  Funds considered in making purchases of the ERS bonds
22  change after the first purchase?
23      A.    Did the information change?
24      Q.    Did you rely on any different
25  information to make subsequent purchases of ERS bonds

GregoryEdwards, LLC | Worldwide Court Reporting
GregoryEdwards.com | 866-4Team GE

```
 1      CONFIDENTIAL - Bolin - March 6, 2020 - CONFIDENTIAL
 2   Funds' assessments of the attractiveness of ERS bonds
 3   changed after PROMESA was enacted?
 4           MR. PAPEZ:   Same objection.
 5      A.   I'm sorry, in what context?
 6      Q.   We can leave the question for the time
 7   being.
 8           When you first purchased ERS bonds, did
 9   you consider them an attractive investment?
10      A.   Yes.
11      Q.   Did that assessment of the ERS bonds as
12   an attractive investment change after PROMESA was
13   enacted?
14           MR. PAPEZ:   Objection, vague.
15      A.   We still considered -- we continued to
16   hold the bonds and considered them an attractive
17   holding.
18      Q.   Would you say that you considered them
19   to continue to be an attractive investment after
20   PROMESA was enacted, then?
21      A.   We considered them to be -- we continued
22   to hold them as an investment.  We considered that
23   holding attractive.
24      Q.   Is Andalusian aware of a pleading filed
25   by AAFAF in November 2017 in which it argued that ERS
```

CONFIDENTIAL
James Bolin - March 6, 2020

Page 83

1  CONFIDENTIAL - Bolin - March 6, 2020 - CONFIDENTIAL
2  acted beyond its authority in issuing the ERS bonds?
3      A.    Yeah. I became aware of that litigation
4  while preparing for this deposition. I don't have a
5  specific recollection of it, and Mr. Bersh does not
6  either. We could have been aware of it.
7      Q.    Okay.
8      (Bolin Exhibit 5, E-Mail with
9      Attachment, marked for identification, as of
10     this date.)
11     Q.    Mr. Bolin, I've handed the court
12 reporter a document which would be marked as
13 Exhibit 5. It is an e-mail with the body of the
14 e-mail entirely redacted as well as an attachment to
15 that e-mail.
16     Do you recognize this document?
17     A.    It purports to be the government
18 defendants' joint supplemental memorandum of law in
19 support of a motion to dismiss plaintiff's amended
20 supplemented complaint pursuant to federal FR --
21 Civil Procedure 12(b)(6).
22     Q.    I will represent to you that the
23 attachment is the AAFAF motion from November 2017
24 that we just discussed.
25     Do you recall receiving this e-mail

```
 1      CONFIDENTIAL - Bolin - March 6, 2020 - CONFIDENTIAL
 2   attaching this document?
 3        A.    I don't recall, no.
 4        Q.    Okay.  If you look about halfway down
 5   the block of names of recipients, toward the
 6   left-hand side, it says J.Bolin@AMLP.com.
 7        A.    Yes.
 8        Q.    Is that your e-mail address?
 9        A.    Yes, it is.
10        Q.    Do you have any reason to believe you
11   didn't receive this e-mail?
12        A.    No.
13        Q.    Do you recall when you first -- let me
14   back up for a second.
15              I'm going to refer to the argument that
16   the ERS bonds were invalidly issued, and therefore,
17   were -- that the ERS bonds were issued beyond ERS's
18   authority, and therefore, invalid as for the ultra
19   vires issue.
20              Does that make sense to you?
21        A.    Yes.
22        Q.    Do you recall when you first became
23   aware of the ultra vires argument?
24              MR. PAPEZ:  And I just caution the
25        witness he's asking for a date.  You're free to
```

CONFIDENTIAL
James Bolin - March 6, 2020

Page 126

```
1      CONFIDENTIAL - Bolin - March 6, 2020 - CONFIDENTIAL
2           extent that that may call for privileged
3           communications.
4                  If you've ever done so outside of any
5           communications, you're free to testify to it.
6           But I'm also going to object as beyond the
7           scope, so it's a personal question.
8      A.   So excluding ERS?
9      Q.   Correct.
10     A.   I don't believe so.
11     Q.   So I'd like to go back to the
12  contribution of funds from other
13  Appaloosa-controlled -- strike that.
14          The contribution of bonds from other
15  Appaloosa-controlled funds to Andalusian.
16          Why were those contributions made?
17     A.   I decided to make them, and that was --
18  it became apparent in roughly May of 2017 that we
19  were -- ERS was not going to be a passive investment
20  because the -- and I can't remember whether the
21  litigation had been launched or the Commonwealth was
22  threatening to launch litigation against us.
23          So we joined the bondholder group and
24  Andalusian was a convenient holding vehicle for the
25  bonds.  It was a less recognizable name with the
```