# **EXHIBIT 2**

## "Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"

Ley Núm. 57 de 14 de junio de 2020

Para establecer la "Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"; establecer política pública específica; establecer programas gubernamentales, medidas económicas o contributivas tales como: programa para el pago expedito de cuentas por pagar a proveedores del Gobierno de Puerto Rico; programa de arrastre de pérdidas netas en operaciones hacia años anteriores; pérdida neta en operaciones a arrastrarse en años contributivos siguientes; exención temporera de servicios rendidos a otros comerciantes y a servicios profesionales designados; posponer temporeramente la contribución mínima tentativa a corporaciones; posponer la radicación de las declaraciones informativas requeridas en las Secciones 1063.01 a la 1063.16 de la Ley Núm. 1-2011, según enmendada, conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico"; posponer temporeramente el Informe de Procedimientos Previamente Acordados o Informe de Cumplimiento; establecer una extensión automática de licencias o permisos que autorizan una actividad comercial; exclusión del ingreso bruto para propósitos de contribución sobre ingresos e ingreso sujeto al pago de patente municipal por cancelación de deuda y recibo de subsidios; cumplimiento automático con requisitos elegibles de decretos de incentivos; eximir del requisito de declaraciones juradas ante notario público; extender radicación de planillas de contribución sobre ingresos para el año contributivo 2019; extender fechas límites de la planilla mensual del impuesto sobre ventas y usos; eliminar el pago de impuesto sobre ventas y usos en la importación y compra de partidas tributables para la reventa; eliminar la retención por servicios profesionales; prohibir desahucios de arrendamientos sobre vivienda principal; programa para usar tarjeta del programa de asistencia nutricional en restaurantes; establecer facultades especiales de reglamentación; y para otros fines relacionados.

EXPOSICIÓN DE MOTIVOS

El mundo moderno está viviendo un escenario nunca antes conocido, una pandemia de proporciones apocalípticas: el coronavirus o COVID-19 como comúnmente se le conoce.

La Organización Mundial de la Salud (OMS), luego de haber declarado al COVID-19 como una pandemia, está muy preocupada ante los alarmantes niveles de propagación y la inacción de algunos países. De igual manera, reconoció que algunos países están teniendo dificultades para lidiar con la primera pandemia de la historia provocada por un coronavirus. Algunos, por "falta de capacidad", otros por "falta de recursos" y el resto por "falta de decisión".

Por otro lado, ante el crecimiento exponencial del COVID-19, el Centro para el Control y Prevención de Enfermedades de los Estados Unidos ("CDC", por sus siglas en inglés) ha tomado medidas de seguridad y salud pública que nos afectan a nivel nacional. El CDC estableció que el distanciamiento social y la cuarentena ayudan a prevenir la exposición con personas afectadas o que pudiesen estar afectadas con el COVID-19.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

En Puerto Rico hemos tomado medidas inmediatas y drásticas dirigidas a reducir la propagación de este mortal virus. Para ello, la Gobernadora de Puerto Rico declaró un estado de emergencia el 12 de marzo de 2020 con el fin de llevar a cabo todos los esfuerzos necesarios que permitan salvaguardar la salud, la vida y la seguridad de todos los puertorriqueños. Luego, tras cinco (5) casos confirmados del COVID-19, y considerando las guías nacionales emitidas por el CDC y la recomendación del Departamento de Salud del Gobierno de Puerto Rico, la Gobernadora de Puerto Rico firmó la Orden Ejecutiva 2020-23 ("OE 2020-23") para controlar la propagación del virus. Aquí se establecieron medidas rigurosas de aislamiento social y de cuarentena. Se ordenó un toque de queda para todos los ciudadanos empezando a las 9:00 pm hasta las 5:00 am, desde el 15 de marzo hasta el 30 de marzo de 2020.

La OE 2020-23, además, ordenó el cierre de todos los comercios en Puerto Rico y de las operaciones gubernamentales, excepto de aquellas relacionadas a servicios esenciales. De igual manera, limitó a los ciudadanos a transitar o caminar por las vías públicas de 5:00 am a 9:00 pm, salvo algunas excepciones, a saber: adquisición de alimentos, productos farmacéuticos y de primera necesidad; citas médicas, asistir a hospitales, laboratorios o centros de servicio médico, hospitalarios; acudir al lugar de trabajo para los empleados públicos y privados que realicen trabajos esenciales; retorno al lugar de residencia habitual en una actividad permitida; acudir a instituciones financieras; entre otras.

Como se puede constatar, la Orden Ejecutiva 2020-23 forzó un distanciamiento social para evitar que se siga propagando el virus en nuestra tierra. De igual manera, el 30 de marzo de 2020, la Gobernadora, mediante la Orden Ejecutiva 2020-29 extendió hasta el 12 de abril del corriente año las medidas tomadas para controlar el riesgo de contagio de este virus COVID-19. Posteriormente, la Gobernadora extendió la fecha de cierre total (lockdown) mediante la Orden Ejecutiva 2020-33. Esta Asamblea Legislativa concurre con las acciones de la Gobernadora en proteger la salud y el bienestar de nuestra población, y más cuando se trata de proteger a nuestros adultos mayores.

Acciones drásticas similares a las que hemos tomado en Puerto Rico, se han empezado a tomar en otros estados de la Nación. Ahora bien, estos cierres totales tienen un efecto directo y devastador en nuestra economía. Así lo ha reconocido el Presidente del Banco de la Reserva Federal de San Luis, el cual estimó que la tasa de desempleo en los Estados Unidos alcanzará un treinta (30) por ciento en el segundo trimestre del 2020 debido a los cierres ("shutdowns"). Esto provocará una caída de más de un cincuenta (50) por ciento en el Producto Interno Bruto ("GDP", por sus siglas en inglés).

Ante esta proyección, el Presidente de la Reserva Federal de San Luis le solicitó al Gobierno Federal una respuesta fiscal poderosa ("powerful fiscal response") para reemplazar $2.5 trillones de dólares en pérdidas que se estiman para el segundo trimestre del 2020. Sugiere, además, que la meta general de este estímulo gubernamental debe ser el sostener a todos los negocios e industrias y a las familias estadounidenses.

Ante todo este escenario poco alentador, el Congreso Federal aprobó un histórico paquete de medidas de estímulo económico de más de dos (2) trillones de dólares para atender esta crisis provocada por el COVID-19, al aprobar la Ley de Ayuda, Alivio y Seguridad Económica de Coronavirus ("CARES Act"). Según expertos, esta legislación es el paquete de medidas más grande que se ha aprobado en la historia de los Estados Unidos. Entre el paquete de medidas, se resaltan las siguientes: $250 billones de dólares para pagos directos a las familias y a los

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

individuos; $350 billones para préstamos a pequeños negocios; $250 billones en beneficios de seguro de desempleo; $500 billones para compañías severamente afectadas, $130 billones para hospitales, $150 billones para gobiernos locales y estatales, entre otras.

En Puerto Rico, la Gobernadora anunció en días recientes diversas propuestas y acciones ejecutivas dirigidas a usar los recursos públicos para atender la crisis en nuestro Archipiélago como parte del Plan Estratégico para Reactivar Nuestra Economía, Apoyar a Nuestros Comerciantes y Proteger a Nuestros Trabajadores. La expectativa es que estas medidas económicas estatales de $787 millones puedan reactivar a corto plazo nuestra economía. Para ello, esta Asamblea Legislativa aprobó la Resolución Conjunta 23-2020 donde asignó la cantidad de $500 millones con cargo al Fondo General. Además, la Gobernadora podrá utilizar de la Reserva de Emergencia $160 millones para la compra de equipos, materiales y suplidos para atender la crisis del COVID-19. Por último, del Presupuesto del año vigente se estarán reasignado $156.8 millones como parte de esta primera fase del Plan Estratégico. Ciertamente, esto es un primer paso para aliviar los estragos de esta pandemia.

Esta Asamblea Legislativa entiende necesario establecer un segundo paquete de medidas que será complementario al paquete inicial presentado por la Gobernadora. En este segundo paquete se atienden varios asuntos. Primero, se crea un mecanismo para pagar de forma expedita las obligaciones a los contratistas y proveedores del Gobierno de Puerto Rico. De esta manera, las deudas acumuladas actualmente se deben pagar dentro de 15 días calendarios. Las obligaciones nuevas contraídas por el Gobierno se deben pagar dentro de 30 días calendarios. Esta medida, sin duda, ayudará al flujo de efectivo de muchas compañías, contratistas y empresarios que le sirven bien a nuestro Gobierno pero que se tardan en cobrar.

Para aumentar el flujo de efectivo de nuestros negocios, se permite el mecanismo de retrotraer las pérdidas a años anteriores ("carry back"), aumentando así la posibilidad de recibir inmediatamente reintegros por contribuciones pagadas en años anteriores.

Respecto a las ayudas que reciban los individuos o las entidades jurídicas, se aclara que cualquier cantidad que sea condonada o cantidades que se reciban como subsidios o estímulos estarán excluidas del ingreso bruto para propósitos de contribución sobre ingresos, incluyendo la contribución básica alterna o la contribución alternativa mínima, en Puerto Rico o el ingreso sujeto al pago de patente municipal. Esta disposición es análoga a la Sección 1106(i) de la Ley Federal CARES, la cual exime de tributación la condonación de la deuda bajo el Código de Rentas Internas Federal; por lo cual, se deberá interpretar liberalmente a favor del contribuyente.

De igual manera, se elimina por tres (3) meses el impuesto del cuatro (4) por ciento de toda facturación que se presente durante el periodo de exención por los servicios rendidos a otros comerciantes, comúnmente conocido como B2B, y servicios profesionales designados, y se le da la facultad al Secretario de Hacienda de extender esa exención por periodos adicionales de tres (3) meses. También, se elimina temporeramente la contribución mínima tentativa a corporaciones de $500 que establece el Código de Rentas Internas. Para el año contributivo 2019, en caso de que la corporación haya pagado la contribución mínima tentativa de $500, podrá solicitar un reembolso al Departamento de Hacienda.

Además, como anunció la Gobernadora, la radicación de las planillas de contribución sobre ingresos se va a posponer para el 15 de julio de 2020. También, se anunciaron otras medidas que atienden el Impuesto sobre Ventas y Uso en los muelles, la radicación de la planilla del IVU, la retención del diez (10) por ciento por servicios profesionales, entre otros. Esta Asamblea

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

Legislativa eleva a fuerza de ley estas acciones administrativas tomadas por el Ejecutivo. De igual manera, esta pieza legislativa pospone la radicación de las declaraciones informativas, requeridas a los negocios y empresarios, para el 31 de mayo de 2020. Otro de los beneficios a nuestros empresarios pequeños y medianos es que se le elimina el requisito de incluir junto a sus planillas de contribución sobre ingresos el Informe de Procedimientos Previamente Acordados o Informe de Cumplimiento preparado por un Contador Público Autorizado. En sintonía con lo anterior, reconociendo que el cierre total decretado por la Gobernadora desde el 15 de marzo de 2020,  pone al país en una pausa donde se detiene toda la actividad comercial, afectando directamente a todos los negocios y los individuos y que la gran mayoría de las oficinas gubernamentales se mantienen cerradas, incluyendo el Departamento de Hacienda, esta Asamblea Legislativa entiende prudente y necesario flexibilizar las fechas límites de vencimientos de las licencias de rentas internas, licencias o permisos expedidas por el Gobierno de Puerto Rico, sus agencias, instrumentalidades o municipios, cuyas fechas de vencimiento caigan a partir del 1 de marzo de 2020.

Con el ánimo de promover la actividad económica, para el año contributivo 2020 (para empresas con año natural o en el caso de años económicos, para años comenzados luego del 31 de diciembre de 2019 y antes del 1 de enero de 2021), se reconoce un cumplimiento automático a los Negocios Exentos que tienen decretos con ciertos requisitos establecidos en el Código de Incentivos de Puerto Rico, en otras leyes de incentivos anteriores y en el propio decreto con el fin de garantizar la continuidad de dichos decretos de exención. Los requisitos o métricas que se entenderán como cumplidos durante este año 2020 o hasta que dure la vigencia de esta Ley, son: creación y retención de empleos, ingreso bruto o volumen de ventas e inversión en maquinaria y equipo. Esto ayudará a que las empresas con decretos de exención se puedan recuperar del impacto económico que ha provocado el COVID-19.

Conforme lo anterior, esta Asamblea Legislativa, y en el ejercicio de su poder de razón de Estado, y de conformidad con la Sección 18 del Artículo III de la Constitución de Puerto Rico, entiende necesario tomar medidas urgentes de acción para atender la prevención, contagio y tratamiento del coronavirus en la Isla.

*Decrétase por la Asamblea Legislativa de Puerto Rico:*

**Artículo 1. — Título.**

Esta Ley se conocerá y podrá ser citada como "Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19".

**Artículo 2. —Política pública.**

La pandemia del Covid-19, está devastando el mundo. Ésta no sólo tiene implicaciones de salud y seguridad pública (y privada), sino además en cuanto al impacto económico y social de sus consecuencias. Por lo tanto, el Gobierno de Puerto Rico declara y reconoce la necesidad de esta legislación especial, debido al estado de necesidad en el que se encuentra nuestra gente.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

Se declara como política pública del Gobierno de Puerto Rico, permitir el mejor uso de sus recursos para atender la pandemia del COVID-19 y sus consecuencias en nuestra economía.

El uso de los recursos públicos para propósitos de proveer mejores condiciones a nuestra economía es una necesidad de nuestra razón de estado, en momentos en que toda nuestra sociedad se enfrenta a las consecuencias de esta pandemia. Una vez ha sido controlada la crisis de salud pública, debemos evitar el colapso de nuestras instituciones, de nuestra economía y de los sectores productivos. Con estas medidas procuramos proteger los empleos y desde luego a quienes dependen de ellos: la familia puertorriqueña.

Por lo tanto, el objetivo específico de esta legislación es servir como puente de rescate para distintos sectores productivos de nuestra economía, para poco a poco ir recuperando la normalidad del intercambio de bienes y servicios al que ha estado acostumbrado la sociedad puertorriqueña en la era moderna. Por lo tanto, se crean programas gubernamentales cuyo propósito fundamental es servir de estímulo económico para impedir una recesión y las gravísimas consecuencias sociales que esta traería. Sirve a su vez para concretizar la aspiración de nuestro Pueblo de tener la más robusta y vibrante economía para procurar un desarrollo socioeconómico de primer orden, a la altura del Siglo XXI.

**Artículo 3. — Definiciones.**

Para propósitos de esta Ley, los siguientes términos tendrán el significado que se expresa a continuación, teniendo presente que las palabras en masculino pueden interpretarse en el género femenino, según corresponda:

**(a) "Código de Rentas Internas para un Nuevo Puerto Rico" o "Código de Rentas Internas"**. — Se refiere a la Ley Núm. 1-2011, según enmendada, conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico".

**(b) "Comisionado de Instituciones Financieras".** — Significa el Comisionado de Instituciones Financieras de Puerto Rico, según se define por la Ley Núm. 4 de 11 de octubre de 1985, según enmendada, conocida como "Ley de la Oficina del Comisionado de Instituciones Financieras."

**(c) "Gobierno de Puerto Rico" o "Gobierno".** — Significa la Rama Ejecutiva de conformidad con el Artículo IV de la Constitución de Puerto Rico, todos sus departamentos, agencias, oficinas, juntas, comisiones, y toda dependencia que ésta controle. Significará también todas las corporaciones públicas e instrumentalidades del Gobierno de Puerto Rico. No obstante, dicho término no incluirá a la Rama Legislativa, ni a la Rama Judicial, ni a los Municipios.

**(d) "Hospital".** – Significa las facilidades privadas de cuidado de salud, centros de diagnóstico y tratamiento, facilidades de diálisis, y cualquiera otra facilidad que pueda ofrecer cuidado y tratamiento médico de urgencia y/o de emergencia.

**(e) "Médicos".** – Significa los facultativos que realizan una labor mediante remuneración, debidamente licenciados y autorizados a ejercer la medicina y telemedicina en Puerto Rico por sí o por sus respectivas corporaciones profesionales.

**(f) "Personal de Enfermería".** – Significa todo aquel personal de salud que labora como empleado de una institución hospitalaria o centro de diagnóstico y tratamiento, debidamente autorizado para ejercer la profesión en Puerto Rico y que recibe compensación por su trabajo.

**(g) "Secretario del Departamento de Asuntos al Consumidor".** — Significa el Secretario del Departamento de Asuntos al Consumidor, según se define por la Ley Núm. 5 de 23 de Abril de

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

1973, según enmendada, conocida como "Ley Orgánica del Departamento de Asuntos del Consumidor".

**(h) "Secretario del DDEC".** — Significa el Secretario del Departamento de Desarrollo Económico y Comercio del Gobierno de Puerto Rico, según se define por la Ley Núm. 60-2019, según enmendada, conocida como "Código de Incentivos de Puerto Rico".

**(i) "Secretario de Hacienda".** — Significa el Secretario del Departamento de Hacienda del Gobierno de Puerto Rico.

## Artículo 4. — Responsabilidad Ejecutiva.

Corresponderá al Secretario del Departamento de Hacienda cumplir y hacer cumplir las disposiciones de esta Ley Especial. Para este propósito podrá requerir la colaboración del Secretario del DDEC, la Junta de Planificación, del Departamento Trabajo, la Oficina del Comisionado de Instituciones Financieras, el Departamento de Asuntos al Consumidor la Oficina de Gerencia y Presupuesto y de cualquier otra entidad de la Rama Ejecutiva cuya información sea necesaria para poder cumplir con los propósitos aquí señalados.

## Artículo 5. — Determinaciones específicas de política contributiva y económica.

Para lograr los propósitos de esta Ley se determinan la creación de los siguientes programas específicos y medidas económicas o contributivas:

**(a)** *Programa para el Pago Expedito de Cuentas por Pagar a Proveedores del Gobierno de Puerto Rico.* — Las obligaciones o cuentas por pagar a los contratistas, suplidores y proveedores ("proveedor"), ya acumuladas previo a la aprobación de esta Ley y que ya hayan sido certificadas por la agencia o instrumentalidad gubernamental para la cual se le ofreció el servicio o entregado los bienes, deberán ser pagadas durante un término que nunca excederá de quince (15) días calendario, luego de la firma de esta Ley.

**(1)** Durante la vigencia de esta Ley, toda nueva obligación o cuenta por pagar a algún proveedor que sea certificada por la agencia o instrumentalidad gubernamental, para la cual se le ofreció el servicio o entregado los bienes, deberá ser pagada durante un término que nunca excederá de treinta (30) días calendario desde que se certifique.

**(b)** *Programa para Retrotraer Pérdidas Netas en Operaciones Hacia Años Anteriores ("Carry Back").* — El Departamento de Hacienda permitirá una deducción especial de pérdidas netas en operaciones incurridas, provocadas directamente por la emergencia del COVID-19, para el año contributivo 2020 a retrotraer a cada uno de los dos (2) años contributivos anteriores, comenzando por el año anterior más antiguo. Dicho arrastre de pérdidas no estará sujeta a la limitación de uso establecida en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas. Nada de lo aquí dispuesto limitará el arrastre de pérdidas dispuesto en la Sección 1033.14 de la Ley Núm. 1-2011, según enmendada, conocida como "Código de Rentas Internas para un Nuevo Puerto Rico".

**(1)** El retrotraer pérdidas netas en operaciones hacia años anteriores ("Carry Back") será una elección para aquellas industrias o negocios con un volumen de negocios de diez millones (10,000,000) de dólares o menos.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

**(2)** En el caso de contribuyentes que sean Grandes Contribuyentes, según definidos en el párrafo (35) del apartado (a) de la Sección 1010.01 del Código de Rentas Internas, no se le permitirá retrotraer pérdidas hacia años anteriores.

**(3)** Limitaciones. - El contribuyente tendrá hasta la fecha de radicación de la planilla de contribución sobre ingresos para el año contributivo 2020, incluyendo prórrogas, para beneficiarse de la retrotracción ("carry-back") establecida en este apartado.

**(A)** La cantidad máxima de pérdidas netas en operaciones a retrotraer hacia años anteriores ("Carry Back") será de doscientos mil (200,000) dólares y el reintegro máximo por las contribuciones pagadas en años anteriores será de cincuenta mil (50,000) dólares.

**(4)** La deducción especial de la retrotracción de las pérdidas aplicará también para computar la contribución básica alterna y la contribución alternativa mínima.

**(c)** *Pérdida Neta en Operaciones a Arrastrarse En Años Contributivos Siguientes*. — Para pérdidas netas incurridas, provocadas directamente por la emergencia del COVID-19, en el año contributivo 2020, el monto a arrastrarse a los años contributivos siguientes no le aplicará la limitación establecida en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas.

**(1)** Orden de la Aplicación de las Pérdidas Neta en Operaciones.

**(i)** El contribuyente reclamará primero las pérdidas incurridas en año contributivos anteriores al año contributivo 2020 sujeto a las limitaciones establecidas en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas.

**(ii)** Si luego de aplicar las pérdidas del sub-inciso (i) del inciso (1) de este apartado la planilla reflejase ingreso neto, podrá tomar una deducción de la pérdida arrastrada generada en el año contributivo 2020, sin las limitaciones establecidas en el inciso (D) del párrafo (1) del apartado (b) de la Sección 1033.14 del Código de Rentas Internas.

**(iii)** Si luego de aplicar las pérdidas del sub-inciso (i) y (ii) del inciso (1) de este apartado la planilla reflejase ingreso neto, podrá tomar una deducción de la pérdida arrastrada generada en los años contributivos posteriores al 2020, conforme a lo dispuesto en este apartado.

**(d)** *Exención Temporera a Servicios Rendidos a Otros Comerciantes y Servicios Profesionales Designados*. — La facturación de los servicios prestados a otros comerciantes y servicios profesionales designados, según definidos en el Subtítulo D del Código de Rentas Internas, no estará sujeta a la tasa de cuatro (4) por ciento durante los meses de abril, mayo y junio de 2020. El Secretario de Hacienda podrá extender esta exención por periodos adicionales de tres (3) meses cada uno, mientras dure el periodo de emergencia, pero nunca será mayor a la fecha en que finaliza la vigencia de esta Ley.

**(e)** *Posposición Temporera de la Contribución Mínima Tentativa a Corporaciones de $500*. — Para años contributivos comenzados luego del 31 de diciembre de 2018 y antes del 1 de enero de 2020 (año contributivo 2019), la contribución mínima tentativa de quinientos dólares ($500) requerida en el apartado (g) de la Sección 1022.03 del Código de Rentas Internas, no estará en vigor.

**(1)** Para aquellas corporaciones que hayan pagado la contribución mínima tentativa de $500 para el año contributivo 2019, podrán solicitar un reembolso por esta cantidad al Departamento de Hacienda, el cual se desembolsará en o antes de cuarenta y cinco (45) días calendarios desde

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

su solicitud. El Secretario de Hacienda adoptará los formularios necesarios para solicitar dicho reembolso, si aplica.

**(f)** *Posposición de Declaraciones Informativas.* — Para años contributivos comenzados luego del 31 de diciembre de 2018 y antes del 1 de enero de 2020, las declaraciones informativas requeridas en las Secciones 1063.01 a la 1063.16 del Código de Rentas Internas podrán ser rendidas en o antes del 31 de mayo de 2020.

**(g)** *Posposición Temporera del Informe de Procedimientos Previamente Acordados o Informe de Cumplimiento.* — Para años contributivos comenzados luego del 31 de diciembre de 2018 y antes del 1 de enero de 2020, se elimina el requisito de incluir junto a la planilla de contribución sobre ingresos un Informe de Procedimientos Previamente Acordados (Agreed Upon Procedures) o Informe de Cumplimiento (Compliance Attestation) preparado por un Contador Público Autorizado (CPA) con licencia vigente para ejercer la profesión en Puerto Rico, según establecido en el inciso (D) del párrafo (2) del apartado (a) de la Sección 1021.02 y en el inciso (B) del párrafo (7) del apartado (a) de la Sección 1022.04 del Código de Rentas Internas.

**(h)** *Extensión Automática de Licencias Para Actividad Comercial.* — Quedan extendidas automáticamente, por un periodo de seis (6) meses, todas las licencias y fianzas bajo el Código de Rentas Internas, licencias o permisos expedidos por la Oficina de Gerencia de Permisos o cualquier otra agencia, instrumentalidad gubernamental o municipio del Gobierno de Puerto Rico, que venzan a partir del 1 de marzo de 2020. Toda licencia o permiso será aquella aprobación escrita autorizando el comienzo de una acción o actividad comercial, expedida por el Gobierno, sus agencias, instrumentalidad gubernamental o municipios.

**(i)** *Exclusión del Ingreso Bruto e Ingreso Sujeto al Pago de Patente Municipal por Cancelación de Deuda y Recibo de Subsidios.* — Se excluirá del ingreso bruto para propósitos de contribución sobre ingresos, incluyendo la contribución básica alterna o la contribución alternativa mínima, y del ingreso sujeto al pago de patente municipal la cancelación de deuda y las cantidades recibidas por concepto de cualquier subsidio o estímulo federal bajo la Ley de Ayuda, Alivio y Seguridad Económica de Coronavirus ("CARES Act") o bajo cualquier otra legislación federal para atender el COVID-19 o bajo un cualquier subsidio o estímulo estatal otorgado a consecuencia del COVID-19, incluyendo los créditos contributivos reembolsables, y otras ayudas económicas dispuestas en esta Ley.

    **(1)** Disponiéndose, además, que el contribuyente podrá reclamar como deducción al ingreso neto los gastos ordinarios y necesarios incurridos en la operación del negocio, aun cuando dichos gastos sean pagados con fondos recibidos por concepto de cualquier subsidio o estímulo federal bajo el CARES Act o bajo cualquier otra legislación federal para atender el COVID-19 o bajo un cualquier subsidio o estímulo estatal otorgado a consecuencia del COVID-19, incluyendo la cancelación de deuda y créditos contributivos reembolsables, y otras ayudas económicas dispuestas en esta Ley.

**(j)** *Programa de Cumplimiento Automático con Requisitos de Decreto bajo el Código de Incentivos de Puerto Rico o Leyes de Incentivos Anteriores.* — Para el año contributivo 2020, todo beneficiario de un decreto de exención bajo la Ley 60-2019, según enmendada, conocida como "Código de Incentivos de Puerto Rico", bajo leyes de incentivos anteriores o bajo una ley especial de incentivos en Puerto Rico, se entenderá que ha cumplido con los siguientes requisitos o métricas contenidos en un Decreto, siempre y cuando la posible falta de cumplimiento se deba directamente a la emergencia provocada por el COVID-19:

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

**(1)** creación y retención de empleos;
**(2)** ingreso bruto o volumen de ventas;
**(3)** inversión en maquinaria y equipo.

Las disposiciones de este apartado no impedirán que el Secretario del DDEC verifique el cumplimiento de otros requisitos contenidos en el Código de Incentivos, las leyes de incentivos anteriores o bajo una ley especial de incentivos en Puerto Rico o en el propio Decreto de Exención. El alcance de las disposiciones contenidas en este apartado se interpretará de manera análoga con los fines promulgados por la Ley 91-2018, conocida como "Ley de Cumplimiento Automático con las Leyes de Incentivos por Emergencia". Para ello, el Secretario del DDEC determinará, para la consecución de los objetivos de apartado, los términos y condiciones aplicables a este programa mediante orden administrativa, carta circular, memorando, documento interpretativo o cualquier otro comunicado de carácter general.

**(k)** *Exención del Uso de Notario Público para Declaraciones Juradas.* – A partir del 1 de abril de 2020 y hasta que termine la emergencia provocada por el COVID-19, las personas o negocios quedarán exentos de presentar cualquier declaración jurada y suscrita ante un notario público de Puerto Rico, que sea requerida por el Código de Renta Internas, por reglamento, por cualquier pronunciamiento administrativo emitido por el Departamento de Hacienda o que sea requerida para solicitar cualquier ayuda o subsidio para atender la emergencia del COVID-19. La persona o negocio presentará, en lugar de la declaración jurada y suscrita ante el notario público, una afirmación bajo pena de perjurio que incluya toda la información que de ordinario hubiese estado en la declaración jurada.

**(l)** *Planillas de Contribución sobre Ingresos para el Año Contributivo 2019.* – A todo tipo de contribuyente, incluyendo entidades conductos, se le extiende la fecha límite hasta el 15 de julio de 2020 para la radicación de la planilla de contribución sobre ingresos requerida bajo el Código para el año contributivo 2019, cuya fecha original de vencimiento sea entre el 15 de marzo y el 15 de junio de 2020. Disponiéndose, además, que cualquier pago de contribución sobre ingresos de dichas planillas quedará extendido hasta la fecha de vencimiento aquí establecida. Se elimina la imposición de intereses, recargos y penalidades siempre y cuando las planillas de contribución sobre ingresos y el pago de la contribución adeudada con dichas planillas sean sometidas en la fecha límite aquí establecida.

**(1)** Todo contribuyente que tenga la obligación de radicar una planilla de contribución sobre ingresos para el año contributivo 2019, y que a la fecha de radicación establecida para la misma no cuente con los recursos económicos para remitir el balance pendiente de pago que se refleja en dicha planilla, podrá solicitar un plan de pago para liquidar el total de dicha contribución.

**(2)** Para poder acogerse al pago a plazos, el contribuyente deberá estar al día en sus otras responsabilidades contributivas ante el Departamento de Hacienda.

**(3)** Todo contribuyente que solicite el pago a plazos deberá comprometerse a pagar la contribución adeudada en plazos mensuales y saldar el monto total adeudado no más tarde del 31 de marzo de 2021. Una vez el contribuyente salde la deuda, el Departamento de Hacienda procederá a eliminar los intereses, recargos y penalidades correspondientes.

**(4)** Se ordena al Departamento a emitir las reglas, términos y condiciones y el proceso de solicitud que deberá seguir todo contribuyente que interese acogerse al pago a plazos.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

**(m)** *Extensión de Fechas Límites de la Planilla Mensual del Impuesto sobre Ventas y Usos.* – Para planillas y pagos relacionados con el impuesto sobre ventas y usos no se impondrán intereses, recargos y penalidades, siempre y cuando se cumplan los siguientes requisitos:

**(1)** Planilla Mensual del Impuesto sobre Ventas y Uso. — La fecha límite de radicación de la planilla mensual del impuesto sobre ventas y uso, y su pago correspondiente, para los periodos de febrero, marzo, abril y mayo de 2020 serán el 20 de abril de 2020, 20 de mayo de 2020, 22 de junio de 2020 y 20 de julio de 2020, respectivamente.

**(2)** Planilla Mensual de Impuesto sobre Importaciones. — La fecha límite de radicación de la planilla mensual de impuesto sobre importaciones, y su pago correspondiente, para los periodos de marzo, abril y mayo de 2020, serán el 10 de mayo de 2020, el 10 de junio de 2020 y el 10 de julio de 2020, respectivamente.

**(3)** Pagos del Impuesto sobre Ventas y Usos Quincenal — No se impondrá penalidades por incumplimiento con los pagos del impuesto sobre ventas y uso (IVU) quincenal para los meses de marzo, abril, mayo y junio de 2020, siempre y cuando el total del IVU adeudado para dichos meses sea pagado en su totalidad con la radicación de la Planilla Mensual de IVU de dichos periodos.

**(n)** *Requisito de Pago de Impuesto sobre Ventas y Usos en la Importación y Compra de Partidas Tributables para la Reventa.* — Durante el periodo de emergencia se faculta al Secretario de Hacienda a establecer lo siguiente:

**(1)** Otorgar un certificado de exención que permita durante el periodo de exención temporero importar o adquirir partidas tributables para la reventa libre del pago de impuesto sobre ventas y uso (IVU) a todo comerciante que sea un revendedor (según dicho término se define en la Sección 4010.01(ww) del Código), que tenga vigente un Certificado de Revendedor emitido conforme a lo dispuesto en la Sección 4050.04(c) del Código.  Para propósitos de este apartado, el "Periodo de Exención Temporero" comprende desde el lunes, 6 de abril de 2020 hasta el martes, 30 de junio de 2020.

**(2)** Que el Certificado de Exención Temporero le permita al comerciante revendedor importar o adquirir mediante compra en Puerto Rico, partidas tributables que sean adquiridas exclusivamente para la reventa.

**(o)** *Retención Por Servicios Profesionales* – Desde el 23 de marzo al 30 de junio de 2020, ninguna empresa, agencia o patrono retendrá el diez (10) por ciento de las cantidades pagaderas a contratistas o personas que reciban compensación por servicios profesionales, según dispuesto en la Sección 1062.03 del Código de Rentas Internas.

**(1)** El relevo de retención dispuesto en este apartado, no exime al receptor del pago de su obligación de tributar sobre dicho ingreso en su planilla de contribución sobre ingresos. Además, el agente retenedor deberá informar dichos pagos en su declaración informativa por servicios prestados.

**(2)** Para el año contributivo 2019, el individuo, o corporación o cualquier otra entidad, podrá optar por la contribución opcional aunque tenga un balance de contribución a pagar con su planilla de contribución sobre ingresos, siempre y cuando dicho balance sea pagado en su totalidad no más tarde de la fecha límite para radicar la planilla de contribución sobre ingresos, sin considerar solicitud de prórroga.

**(3)** En el caso de contribuyentes que se acogerán a la Contribución Opcional para el año contributivo 2020, deberán asegurarse de cumplir con su responsabilidad contributiva no más

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

tarde de la fecha límite para radicar la planilla de contribución sobre ingresos, sin considerar solicitud de prórroga.

**(p)** *Uso de Tarjeta del Programa de Asistencia Nutricional (PAN) en Restaurantes*. – Se le ordena a la Secretaria del Departamento de la Familia para que, dentro de diez (10) días calendarios siguientes a la firma de esta Ley, solicite al Departamento de Agricultura de Estados Unidos que, durante la vigencia de esta Ley o hasta que dure la emergencia provocada por el COVID-19, lo que sea menor, se permita que los beneficiarios de la tarjeta del PAN puedan comprar alimentos preparados en restaurantes.

**Artículo 6. —Reglamentación.**

Para cumplir con los propósitos de esta Ley se autoriza al Departamento de Hacienda a emitir todas las normas, cartas circulares, reglas y reglamentos que entienda prudentes y necesarias. Dicha facultad especial de reglamentación se ejercerá sin sujeción a las disposiciones de la Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico". No obstante las mismas deberán entrar en vigor no más tarde de diez (10) días laborables, contados a partir de la aprobación de esta Ley. Las mismas, así como cualesquiera enmiendas posteriores deberán publicarse en las páginas cibernéticas del Gobierno de Puerto Rico.

**Artículo 7. —Revisión Judicial.**

Para revisar las disposiciones de la presente Ley, así como para los procedimientos de disputa de facturas o para resolver controversias sobre las disposiciones contributivas especiales que ésta crea, tendrá jurisdicción exclusiva, en primera instancia, la Sala Superior de San Juan del Tribunal General de Justicia.

**Artículo 8. —Separabilidad.**

Esta Ley se interpretará de acuerdo a la Constitución de Puerto Rico y la Constitución de Estados Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la orden a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha orden quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional.

**Artículo 9. —Supremacía**

Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición general o específica de cualquier otra ley o reglamento del Gobierno de Puerto Rico que sea inconsistente con esta Ley.

"Ley Complementaria para Atender los Efectos de la Economía Puertorriqueña Provocados por la Emergencia del Covid-19"
[Ley 57-2020]]

**Artículo 10. —Vigencia**

Esta Ley entrará en vigor inmediatamente después de su aprobación. Los programas gubernamentales que se crean mediante la presente estarán en vigor mientras sean necesarios para poder mitigar los efectos en la economía que ha producido la pandemia del Covid-19, pero nunca se extenderán más allá del 31 de diciembre de 2021.

Nota. Este documento fue compilado por personal de la **Oficina de Gerencia y Presupuesto** del Gobierno de Puerto Rico, como un medio de alertar a los usuarios de nuestra Biblioteca de las últimas enmiendas aprobadas para esta Ley. Aunque hemos puesto todo nuestro esfuerzo en la preparación del mismo, este no es una compilación oficial y podría no estar completamente libre de errores inadvertidos; los cuales al ser tomados en conocimiento son corregidos de inmediato. En el mismo se han incorporado todas las enmiendas hechas a la Ley a fin de facilitar su consulta. Para exactitud y precisión, refiérase a los textos originales de dicha ley y a la colección de Leyes de Puerto Rico Anotadas L.P.R.A.. Las anotaciones en letra cursiva y entre corchetes añadidas al texto, no forman parte de la Ley; las mismas solo se incluyen para el caso en que alguna ley fue derogada y ha sido sustituida por otra que está vigente. Los enlaces al Internet solo se dirigen a fuentes gubernamentales. Los enlaces a las leyes enmendatorias pertenecen a la página web de la **Oficina de Servicios Legislativos** de la Asamblea Legislativa de Puerto Rico. Los enlaces a las leyes federales pertenecen a la página web de la **US Government Publishing Office GPO** de los Estados Unidos de Norteamérica. Los enlaces a los Reglamentos y Ordenes Ejecutivas del Gobernador, pertenecen a la página web del **Departamento de Estado** del Gobierno de Puerto Rico. Compilado por la Biblioteca de la Oficina de Gerencia y Presupuesto.

Véase además la **Versión Original de esta Ley**, tal como fue aprobada por la Legislatura de Puerto Rico.

⇒⇒⇒ Verifique en la Biblioteca Virtual de OGP la **Última Copia Revisada** (Rev.) para esta compilación.

Ir a: www.ogp.pr.gov ⇒ Biblioteca Virtual ⇒ Leyes de Referencia—EPIDEMIAS.

CERTIFIED TRANSLATION

# *"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"*

## Act No. 57 of June 14, 2020

To establish the "Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"; establish specific public policy; establish government programs, economic or tax measures such as: program for the expedited payment of accounts payable to suppliers of the Government of Puerto Rico; program for carrying forward net operating losses to previous years; net operating losses to be carried forward in subsequent taxable years; temporary exemption from services rendered to other merchants and designated professional services; temporarily postpone the tentative minimum tax to corporations; postpone the filing of informative returns required in Sections 1063.01 to 1063.16 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico"; temporarily postpone the Agreed Upon Procedures Report or Compliance Attestation; establish an automatic extension of licenses or permits authorizing a commercial activity; exclusion from gross income for purposes of income tax and income subject to the payment of municipal license for debt cancellation and receipt of subsidies; automatic compliance with eligible incentive decree requirements; exempt from the requirement of sworn statements before a notary public; extend filing of tax returns on income for taxable year 2019; extend monthly sales and use tax payroll deadlines; eliminate the payment of sales and use tax in the importation and purchase of taxable items for resale; eliminate withholding for professional services; prohibit lease evictions on a principal residence; program for the use the nutritional assistance program card in restaurants; to establish special regulatory powers; and for other related purposes.

## STATEMENT OF MOTIVES

The modern world is experiencing a scenario never before known, a pandemic of apocalyptic proportions: the coronavirus or COVID-19 as it is commonly known.

The World Health Organization (WHO), after having declared COVID-19 as a pandemic, is very concerned at the alarming levels of spread and inaction of some countries. Similarly, it recognized that some countries are having difficulty in dealing with the first pandemic in history caused by a coronavirus. Some, for "lack of capacity," others due to "lack of resources" and the rest due to "lack of decision."

By the same token, given the exponential growth of COVID-19, the Centers for Disease Control and Prevention of the United States ("CDC") has taken public health and safety measures that affect us at the national level. The CDC established that social distancing and quarantine help prevent exposure to affected people or that could be affected with COVID-19.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

In Puerto Rico we have taken immediate and drastic measures aimed at reducing the spread of this deadly virus. To this end, the Governor of Puerto Rico declared a state of emergency on March 12, 2020 to carry out all the necessary efforts that allow the safeguarding of the health, life, and safety of all Puerto Ricans. Then after five (5) confirmed cases of COVID-19, and considering the national guidelines issued by the CDC and the recommendation of the Health Department of the Government of Puerto Rico, the Governor of Puerto Rico signed Executive Order 2020-23 ("OE 2020-23") to control the spread of the virus. It established rigorous measures of social isolation and quarantine. A curfew was ordered for all citizens starting at 9:00 p.m. until 5:00 a.m., from March 15 to March 30, 2020.

OE 2020-23 also ordered the closure of all businesses in Puerto Rico and government operations, except those related to essential services. Similarly, it limited citizens from transiting or walking on public roads from 5:00 am to 9:00 pm, with some exceptions, namely: purchase of food, pharmaceuticals and essential items; medical appointments, going to hospitals, laboratories or medical and hospital service centers; going to the workplace for public and private employees who perform essential jobs; return to the place of habitual residence in a permitted activity; go to financial institutions; among others.

As can be shown, Executive Order 2020-23 forced social distancing to prevent the virus from spreading on our land. Similarly, on March 30, 2020, the Governor, through Executive Order 2020-29, extended the measures taken to control the risk of contagion with this COVID-19 virus until April 12 of the current year. Subsequently, the Governor extended the lockdown date through Order Executive 2020-33. This Legislative Assembly concurs with the actions of the Governor to protect the health and well-being of our population, and more so when it comes to protecting our older adults.

Drastic actions similar to those we have taken in Puerto Rico, have begun to be taken in other states of the Nation. Now, these total closures have a direct and devastating effect in our economy. This has been recognized by the President of the Reserve Bank Federal of St. Louis, which estimated that the unemployment rate in the United States will reach thirty (30) percent in the second quarter of 2020 due to shutdowns. This will cause a fall of more than fifty (50) percent in the Gross Domestic Product ("GDP").

Given this projection, the President of the Federal Reserve of St. Louis requested a powerful fiscal response from the U.S. Government to replace $2.5 trillion of dollars in losses that are estimated for the second quarter of 2020. It also suggests that the overall goal of this government stimulus should be to sustain all businesses and industries and American families.

Given this discouraging scenario, the U.S. Congress approved a historic package of economic stimulus measures of more than two (2) trillion dollars to address this crisis caused by COVID-19, by approving the Coronavirus Aid, Relief, and Economic Security  Act ("CARES Act"). According to experts, this legislation is the largest package of measures that has been passed in the history of the United States. Among the measures in the package are the following highlights: $250 billion for direct payments to families and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

individuals; $350 billion for small business loans; $250 billion in benefits from unemployment insurance; $500 billion for severely affected companies, $130 billion for hospitals, $150 billion for state and local governments, among others.

In Puerto Rico, the Governor recently announced various proposals and executive actions aimed at using public resources to address the crisis in our Archipelago as part of the Strategic Plan to Reactivate Our Economy, Support Our Merchants and Protect Our Workers. The expectation is that this $787 million in state economic measures of can reactivate our economy in the short term. For this, this Legislative Assembly approved Joint Resolution 23-2020 where it assigned the amount of $500 million charged to the General Fund. In addition, the Governor may use the Emergency Reserve of $160 million for the purchase of equipment, materials and supplies to address the COVID-19 crisis. Lastly, from the current year's Budget, $156.8 million will be reallocated as part of this first phase of the Strategic Plan. This is certainly a first step in alleviating the ravages of this pandemic.

This Legislative Assembly considers it necessary to establish a second package of measures that will supplement the initial package presented by the Governor. In this second package, various matters are addressed. First, a mechanism is created to expeditiously pay obligations to contractors and suppliers of the Government of Puerto Rico. Currently accrued debts must thus be paid within 15 calendar days. New obligations assumed by the Government under contract must be paid within 30 calendar days. This measure, without a doubt, will help the cash flow of many companies, contractors and entrepreneurs that serve our Government well but whose collection process is protracted.

To increase the cash flow of our businesses, the mechanism of carry back of losses is allowed, thus increasing the possibility of immediately receiving refunds for taxes paid in previous years.

Regarding the aid received by individuals or legal entities, it is clarified that any amount that is forgiven or amounts that are received as subsidies or stimuli will be excluded from gross income for income tax purposes, including the alternative basic tax or the alternative minimum tax, in Puerto Rico or income subject to the payment of municipal licenses. This provision is analogous to Section 1106(i) of the federal CARES Act, which exempts debt forgiveness from tax under the U.S. Internal Revenue Code; therefore, it should be interpreted liberally in favor of the taxpayer.

Similarly, the four (4) percent tax of all billings that occur during the exemption period for services rendered to others merchants, commonly known as B2B, and designated professional services, is eliminated for three (3) months, and the Secretary of the Treasury is given the power to extend this exemption for additional periods of three (3) months. Also, the tentative minimum tax to corporations of $500 established by the Internal Revenue Code is temporarily eliminated. For taxable year 2019, in the event that a corporation has paid the tentative minimum tax of $500, it may request a refund from the Department of the Treasury.

In addition, as announced by the Governor, the filing of income tax returns will be postponed until July 15, 2020. Also, other measures were announced that address the Sales and Use Tax at the ports, the filing of the IVU return, the withholding of ten (10) percent for professional services, among others. This Legislative Assembly

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

elevates these administrative actions taken by the Executive to force of law. Similarly, this piece of legislation postpones the filing of informative declarations, required from businesses and entrepreneurs, by May 31, 2020. Another benefit to our small and medium-sized entrepreneurs is the elimination of the requirement to include the Agreed Upon Procedures Report or Compliance Attestation prepared by a Certified Public Accountant with their payroll income tax. In tune with the above, recognizing that the total lockdown decreed by the Governor since March 15, 2020, puts the country on a pause where all commercial activity stops, directly affecting all businesses and individuals and that the vast majority of government offices remain closed, including the Department of the Treasury, this Legislature understands that it is prudent and necessary to make the due dates for internal revenue licenses, licenses or permits issued by the Government of Puerto Rico, its agencies, instrumentalities or municipalities, which are due as of March 1, 2020 more flexible.

With the purpose of promoting economic activity, for taxable year 2020 (for companies with a natural year or in the case of financial years, for years beginning after December 31, 2019 and before January 1, 2021), automatic compliance is recognized to Exempt Businesses that have decrees with certain requirements established in the Puerto Rico Incentives Code, in other previous incentive laws and in the decree itself for the purpose of guaranteeing continuity of said exemption decrees. The requirements or metrics that are understood as fulfilled during this year 2020 or until the validity of this Act lasts, are: creation and retention of jobs, gross income or volume of sales and investment in machinery and equipment. This will help companies with exemption decrees to recover from the economic impact caused by COVID-19.

In accordance with the foregoing, this Legislative Assembly, and in the exercise of its State police power, and in accordance with Section 18 of Article III of the Constitution of Puerto Rico, understands it necessary to take measures of urgent action to address the prevention, contagion and treatment of the coronavirus on the Island.

*BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:*


**Article 1. – Title.**

This Act shall be known and may be cited as the "Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency."

**Article 2. – Public policy.**

The Covid-19 pandemic is devastating the world. This not only has implications for public (and private) health and safety, but also in terms of the economic and social impact of its consequences. Therefore, the Government of Puerto Rico declares and recognizes the need for this special legislation, due to the state of need in which our people find themselves.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

It is declared to be the public policy of the Government of Puerto Rico to allow the best use of its resources to address the COVID-19 pandemic and its consequences on our economy.

The use of public resources for the purpose of providing better conditions for our economy is a need of our state police power, at a time when our entire society faces the consequences of this pandemic. Once the public health crisis has been controlled, we must avoid the collapse of our institutions, our economy and productive sectors. With these measures we try to protect jobs and of course those who depend on them: Puerto Rican families.

Therefore, the specific objective of this legislation is to serve as a rescue bridge for different productive sectors of our economy, to gradually recover normality in the exchange of goods and services to which Puerto Rican society has been accustomed in the modern era. Therefore, government programs are created whose fundamental purpose is to serve as an economic stimulus to prevent a recession and the very serious social consequences that a recession would bring. It serves in turn to accomplish the aspiration of our People to have the most robust and vibrant economy in order to pursue first-rate socio-economic development, on par with the XXI century.

**Article 3. – Definitions.**

For the purposes of this Act, the following terms shall have the meaning stated below, keeping in mind that masculine words can be interpreted in the female gender, as appropriate:

**(a) "Internal Revenue Code for a New Puerto Rico" or "Internal Revenue Code."** – Refers to Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico."

**(b) "Commissioner of Financial Institutions."** – Means the Commissioner of Financial Institutions of Puerto Rico, as defined by Act No. 4 of October 11, 1985, as amended, known as the "Office of the Commissioner of Financial Institutions Act."

**(c) "Government of Puerto Rico" or "Government."** – Means the Executive Branch in accordance with Article IV of the Constitution of Puerto Rico, all its departments, agencies, offices, boards, commissions, and any dependency that it controls. It shall also mean all public corporations and instrumentalities of the Government of Puerto Rico. However, said term shall not include the Legislative Branch, nor the Judicial Branch, nor the Municipalities.

**(d) "Hospital."** – Means private health care facilities, diagnostic and treatment centers, dialysis facilities, and any other facility that may offer care and urgent and/or emergency medical treatment.

**(e) "Physicians."** – Means practitioners who perform work for remuneration, who are duly licensed and authorized to practice medicine and telemedicine in Puerto Rico individually or on behalf of their respective professional corporations.

**(f) "Nursing Personnel."** – Means health personnel who work as employees of a hospital institution or diagnosis and treatment center, who are duly authorized to practice the profession in Puerto Rico and who receive compensation for their work.

**(g) "Secretary of the Department of Consumer Affairs."** – Means the Secretary of the Department of Consumer Affairs, as defined by Act No. 5 of April 23,

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

1973, as amended, known as the "Organic Act of the Department of Consumer Affairs."

**(h) "Secretary of the DDEC."** – Means the Secretary of the Department of Economic Development and Commerce of the Government of Puerto Rico, as defined by Act No. 60-2019, as amended, known as the "Puerto Rico Incentive Code."

**(i) "Secretary of the Treasury."** – Means the Secretary of the Department of the Treasury of the Government of Puerto Rico.

## Article 4. – Executive Responsibility.

The Secretary of the Department of the Treasury shall comply with and enforce the provisions of this Special Act. For this purpose, it may require the collaboration of the Secretary of the DDEC, the Planning Board, the Department of Labor, the Office of the Commissioner of Financial Institutions, Department of Consumer Affairs, Office of Management and Budget and of any other entity of the Executive Branch whose information is necessary to fulfill the purposes indicated here.

## Article 5. – Specific Tax and Economic Policy Determinations.

To achieve the purposes of this Act, the following specific programs and economic or tax measures are created:

**(a)** *Program for the Expedited Payment of Accounts Payable to Suppliers of the Government of Puerto Rico.* – Obligations or accounts payable to contractors, suppliers and providers ("supplier"), already accrued prior to the passage of this Act and that have already been certified by the government agency or instrumentality for which the service was offered or goods delivered, shall be paid during a term that shall never exceed fifteen (15) calendar days, after the signing of this Act.

**(1)** During the term of this Act, any new obligation or account payable to any supplier that is certified by the government agency or instrumentality, for which the offered service or goods were delivered, shall be paid during a term that shall never exceed thirty (30) calendar days from the date it is certified.

**(b)** *Program to Carry Back Net Operating Losses to Previous Years.* – The Department of the Treasury shall allow a special deduction of net losses in operations incurred, directly caused by the COVID-19 emergency, for the taxable year 2020 to roll back to each of the two (2) previous taxable years, starting on the oldest prior year. Said carry-over of losses shall not be subject to the limitation of use established in subparagraph (D) of paragraph (1) of subsection (b) of Section 1033.14 of the Internal Revenue Code. Nothing in the provisions herein shall limit the carry-over of losses provided for in Section 1033.14 of Act No. 1-2011, as amended, known as the "Internal Revenue Code for a New Puerto Rico."

**(1)** Carrying back net losses in operations to previous years shall be a choice for those industries or businesses with a business volume of ten million (10,000,000) dollars or less.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

**(2)** In the case of taxpayers who are Large Taxpayers, as defined in paragraph (35) of subsection (a) of Section 1010.01 of the Internal Revenue Code, they shall not be allowed to carry back losses to previous years.

**(3)** Limitations. – Taxpayer shall have until the filing date of the income tax return for taxable year 2020, including extensions, to benefit from the carry-back established in this section.

    **(A)** The maximum amount of net losses in operations to be rolled back to previous years ("Carry Back") shall be two hundred thousand (200,000) dollars and the maximum refund for taxes paid in previous years shall be fifty thousand (50,000) dollars.

**(4)** The special deduction for the carry back of losses shall also apply to compute the alternate basic tax and the minimum alternate tax.

**(c)** *Net Loss in Operations to be Carried Over in Subsequent Tax Years*. – For net losses incurred, caused directly by the COVID-19 emergency, in tax year 2020, the limitation established in subparagraph (D) of paragraph (1) of subsection (b) of Section 1033.14 of Internal Revenue Code shall not apply to the amount to be carried forward to the following taxable years.

**(1)** Order of Application of Net Operating Losses.

    **(i)** The taxpayer shall first claim the losses incurred in the taxable year prior to tax year 2020 subject to the limitations established in subparagraph (D) of paragraph (1) of subsection (b) of Section 1033.14 of the Internal Revenue Code.

    **(ii)** If after applying the losses of subparagraph (i) of paragraph (1) of this section the tax return reflects net income, a deduction of the loss carried forward generated in taxable year 2020 may be taken, without the limitations established in subparagraph (D) of paragraph (1) of subsection (b) of Section 1033.14 of the Internal Revenue Code.

    **(iii)** If after applying the losses of subparagraph (i) and (ii) of paragraph (1) of this section the tax return reflects net income, a deduction may be taken of the loss carried forward generated in the taxable years after 2020, in accordance with the provisions of this subsection.

**(d)** *Temporary Exemption for Services Rendered to Other Merchants and Designated Professional Services*. – Billing of services provided to other merchants and designated professional services, as defined in Subtitle D of the Internal Revenue Code, shall not be subject to the rate of four (4) percent during the months of April, May and June 2020. The Secretary of the Treasury may extend this exemption for additional periods of three (3) months each, while the emergency period lasts, but it shall never be greater than the final date of the validity of this Act.

**(e)** *Temporary Postponement of the Tentative Minimum Tax to Corporations of $500*. – For taxable years beginning after December 31, 2018 and before January 1, 2020 (taxable year 2019), the tentative minimum tax of five hundred dollars ($ 500) required in section (g) of Section 1022.03 of the Internal Revenue Code, it shall not be in effect.

**(1)** Those corporations that have paid the tentative minimum tax of $500 for tax year 2019, may request a refund for said amount to the Department of the Treasury, which shall be disbursed on or before forty-five (45) calendar days from

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

the time of their request. The Secretary of the Treasury shall adopt the necessary forms to request said refund, if applicable.

**(f)** *Postponement of Informative Tax Returns*. – For taxable years beginning after December 31, 2018 and before January 1, 2020, the informative tax returns required in Sections 1063.01 to 1063.16 of the Internal Revenue Code may be rendered on or before May 31, 2020.

**(g)** *Temporary Postponement of the Agreed Upon Procedures Report or Compliance Attestation*. – For taxable years beginning after December 31, 2018 and before of January 1, 2020, the requirement to include with the income tax return an Agreed Upon Procedures Report or Compliance Attestation prepared by a Certified Public Accountant (CPA) with a valid license to practice the profession in Puerto Rico, as established in subparagraph (D) of paragraph (2) of subsection (a) of Section 1021.02 and in subparagraph (B) of paragraph (7) of subsection (a) of Section 1022.04 of the Internal Revenue Code is eliminated.

**(h)** *Automatic Extension of Licenses for Commercial Activity*. – All licenses and bonds under the Internal Revenue Code, licenses or permits issued by the Permit Management Office or any another agency, governmental instrumentality or municipality of the Government of Puerto Rico, which expire as of March 1, 2020, are extended automatically, for a period of six (6) months. A license or permit shall be a written approval authorizing the commencement of an action or commercial activity, issued by the Government, its agencies, government instrumentality or municipalities.

**(i)** *Exclusion of Gross Income and Income Subject to Payment of Municipal License for Cancellation of Debt and Receipt of Subsidies*. – Debt cancellation and amounts received as a federal subsidy or stimulus under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") or under any other federal legislation to address COVID-19 or under any state subsidy or stimulus granted as a result of COVID-19, including refundable tax credits, and other financial aid provided in this law shall be excluded from gross income for income tax purposes, including the alternative basic tax or the alternative minimum tax, and from income subject to municipal license payment.

**(1)** Furthermore, the taxpayer may claim as a deduction from net income all ordinary and necessary expenses incurred in the operation of the business, even when said expenses are paid with funds received from any subsidy or stimulus under the CARES Act or under any other federal legislation to address COVID-19 or under any state subsidy or stimulus granted as a result of COVID-19, including the cancellation of debt and refundable tax credits, and other economic aid provisions provided in this Law.

**(j)** *Program for Automatic Compliance with Decree Requirements under the Puerto Rico Incentive Code or Previous Incentive Laws*. – For taxable year 2020, any beneficiary of an exemption decree under Law 60-2019, as amended, known as "Puerto Rico Incentive Code," under previous incentive laws or under a special incentive law in Puerto Rico, shall be understood to have complied with the following requirements or metrics contained in a Decree, as long as possible lack of compliance is directly due to the emergency caused by COVID-19:

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

(**1**) job creation and retention;

(**2**) gross income or sales volume;

(**3**) investment in machinery and equipment.

The provisions of this section shall not prevent the Secretary of the DDEC from verifying compliance with other requirements contained in the Incentive Code, the incentive laws above or under a special incentive law in Puerto Rico or in the Exemption Decree itself. The scope of the provisions contained in this section shall be interpreted in an analogous way with the purposes promulgated by Act 91-2018, known as the "Automatic Compliance with the Emergency Incentive Laws Act." For this, the Secretary of the DDEC shall determine, for the achievement of the objectives of the section, the terms and conditions applicable to this program by administrative order, circular letter, memorandum, interpretative document or any another general communication.

(**k**) *Exemption from the Use of a Notary Public for Affidavits*. – From April 1, 2020 and until the emergency caused by COVID-19 ends, people or businesses shall be exempt from presenting any sworn and signed statement before a notary public of Puerto Rico, which is required by the Internal Revenue Code, by regulation, by any administrative pronouncement issued by the Department of the Treasury or that is required to request any help or subsidy to attend the COVID-19 emergency. The person or the business shall present, instead of the affidavit signed before the notary public, a statement under penalty of perjury that includes all the information that would ordinarily have been in the affidavit.

(**l**) *Income Tax Returns for Tax Year 2019*. – To all types of taxpayers, including conduit entities, the deadline for the filing of the income tax return required under the Code for tax year 2019, whose original due date is between March 15 and June 15, 2020, is extended until July 15 of 2020. Furthermore, any income tax payment of said forms shall be extended until the expiration date established herein. The imposition of interest, surcharges and penalties are eliminated so long as the income tax returns and the payment of the tax owed with said returns are submitted in the deadline established herein.

(**1**) Every taxpayer who has the obligation to file a tax return on income for taxable year 2019, and that on the filing date established for the same does not have the financial resources to remit the balance pending payment that is reflected in said return, may request a payment plan to settle the total amount of said tax.

(**2**) In order to qualify for payment in installments, the taxpayer must be up to date with his or her other tax responsibilities before the Department of the Treasury.

(**3**) Every taxpayer who requests payment in installments must undertake to pay the tax due in monthly installments and pay the total amount due no later than March 31, 2021. Once the taxpayer pays off the debt, the Department of the Treasury shall proceed to eliminate the corresponding interest, surcharges and penalties.

(**4**) The Department is ordered to issue the rules, terms and conditions and the application process to be followed by all taxpayers interested in availing themselves of installment payments.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

(m) *Extension of Deadlines of the Monthly Sales and Use Tax Return.* – Returns and payments related to the sales and use tax shall not be charged interest, surcharges and penalties, as long as the following requirements are met:

(1) Monthly Return of Sales and Use Tax. – The deadline for filing the monthly sales and use tax return, and its corresponding payment, for the periods of February, March, April and May 2020 shall be April 20, 2020, May 20, 2020, June 22, 2020 and July 20, 2020, respectively.

(2) Monthly Tax Return on Imports. – The deadline for filing the monthly import tax return, and its corresponding payment, for the periods of March, April and May 2020, shall be May 10, 2020, June 10, 2020 and July 10, 2020, respectively.

(3) Biweekly Sales and Use Tax Payments – No penalties shall be imposed for noncompliance with biweekly sales and use tax (IVU [*Spanish acronym*]) payments for the months of March, April, May and June 2020, as long as the total IVU owed for said months is paid in full with the filing of the IVU Monthly Return of said periods.

(n) *Requirement for Payment of Sales and Use Tax on Import and Purchase of Items Taxable for Resale.* – During the emergency period, the Secretary of Treasury is allowed to establish the following:

(1) Grant an exemption certificate that during the temporary exemption period allows importation or acquisition of taxable items for resale free of payment of the sales and use tax (IVU) to any merchant who is a reseller (as such term is defined in the Section 4010.01 (ww) of the Code), having a valid Reseller Certificate issued pursuant to the provisions of Section 4050.04(c) of the Code. For the purposes of this section, the "Temporary Exemption Period" runs from Monday, April 6, 2020 until Tuesday, June 30, 2020.

(2) That the Temporary Exemption Certificate allow the reseller to import or acquire taxable items that are acquired exclusively for resale through purchase in Puerto Rico.

(o) *Withholding for Professional Services* – From March 23 to June 30, 2020, no company, agency or employer shall retain ten (10) percent of the amounts payable to contractors or persons who receive compensation for professional services, as provided in Section 1062.03 of the Internal Revenue Code.

(1) The retention relief provided in this section does not exempt the recipient from the payment of its obligation to pay taxes on said income on your income tax return. In addition, the withholding agent must report said payments in its informative return for services provided.

(2) For taxable year 2019, individuals, or corporations or any other entities, may opt for the optional tax even if they have a tax balance to pay with their income tax return, as long as said balance is paid in its entirety no later than the deadline to file the income tax return, without considering an extension request.

(3) In the case of taxpayers who shall avail themselves of the Optional Tax for tax year 2020, they must ensure that they fulfill their tax responsibility no

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"
[Act 57-2020]
_____

later than the deadline to file the income tax return, without considering an extension request. **(p)** *Use of the Nutritional Assistance Program (PAN* [its Spanish acronym]*) Card in Restaurants.* – The Secretary of the Department of the Family is ordered, within ten (10) calendar days following the signing of this Act, to request from the United States Department of Agriculture, during the term of this Act or for the duration of the emergency caused by COVID-19, whichever is less, that the beneficiaries of the PAN card be allowed to buy food prepared in restaurants.

## Article 6. – Regulation.

To comply with the purposes of this Act, the Department of the Treasury is authorized to issue all norms, circular letters, rules and regulations that it deems prudent and necessary. Said special regulatory power shall be exercised without being subject to the provisions of Act No. 38-2017, as amended, known as the "Uniform Administrative Procedure Act of the Government of Puerto Rico." Notwithstanding, they shall enter into effect no later than ten (10) working days from the approval of this Act. They, as well as any subsequent amendments, shall be published on the cybernetic pages of the Government of Puerto Rico.

## Article 7. – Judicial Review.

To review the provisions of this Act, as well as for invoice dispute procedures or to resolve controversies over the special tax provisions that created herein, the Superior Court of San Juan of the General Court of Justice shall have exclusive jurisdiction, in the first instance.

## Article 8. – Separability.

This Act shall be interpreted in accordance with the Constitution of Puerto Rico and the Constitution of the United States of America. If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading or part of this Act is annulled or declared unconstitutional, the ruling issued to that effect shall not affect, harm or invalidate the rest of this Act.  The effect of said judgment shall be limited to the clause, paragraph, sub-paragraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading or part of the same that has been annulled or declared unconstitutional.

## Article 9. – Supremacy

The provisions of this Act shall prevail over any other general or specific provision of any law or regulation of the Government of Puerto Rico that is inconsistent with this Act.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

"Supplemental Act to Address the Effects of the Puerto Rican Economy Caused by the Covid-19 Emergency"

[Act 57-2020]

_____

## Article 10. – Validity

This Act shall enter into effect immediately after its approval. The government programs created hereunder shall be in effect for as long as they are necessary to be able to mitigate the effects on the economy that the Covid-19 pandemic has produced, but never shall extend beyond December 31, 2021.

---

Note. This document was compiled by staff of the Office of Management and Budget of the Government of Puerto Rico, as a means of alerting the users of our Library of the latest approved amendments to this Act. Although we have put all of our effort in preparing it, this is not an official compilation and may not be completely free from inadvertent errors; which when identified are corrected immediately. All amendments made to the Act have been incorporated to this document in order to facilitate your research. For accuracy and precision, refer to the original texts of said law and to the collection of Laws of Puerto Rico Annotated L.P.R.A.. Annotations in italics and in brackets added to the text, are not part of the Act; they are only included when a law was repealed and has been replaced by another that is in force. Links to the Internet are only directed to government sources. Links to amending laws belong to the website of the Office of Legislative Services of the Legislative Assembly of Puerto Rico. Links to federal laws are from the website of the US Government Publishing Office GPO of the United States of America. Links to the Governor's Regulations and Executive Orders, pertain to the website of the Department of State of the Government of Puerto Rico. Compiled by the Library of the Office of Management and Budget.

---

See also the Original Version of this Act, as approved by the Legislature of Puerto Rico.

---

⇒⇒⇒ Check the Virtual Library of OGP for the **Latest Revised Copy** (Rev.) of this compilation.

Go to: www.ogp.pr.gov ⇒ Virtual Library ⇒ Referenced Laws—EPIDEMICS.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.