# **EXHIBIT 7**

2019 WL 4417472 (TCA)

OCTAGON CONSULTANT GROUP, CORP., Apelado

v.

MUNICIPIO DE TOA BAJA, Apelante.

TRIBUNAL DE APELACIONES
Civil Núm.: BY2018CV00830
KLAN201900215
En San Juan, Puerto Rico, a 19 de julio de 2019.
July 19, 2019.

APELACION procedente del Tribunal de Primera Instancia, Sala de Bayamón
Cobro de Dinero Incumplimiento de Contrato

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Surén Fuentes y la Jueza Cortés González.

**SENTENCIA**

CINTRÓN CINTRÓN, JUEZA PONENTE

 **\*1**  El Municipio de Toa Baja (Municipio) presentó recurso de apelación de la Sentencia sumaria dictada por el Tribunal de Primera Instancia, Sala de Bayamón (TPI), mediante la cual, se declaró con lugar la Demanda sobre cobro de dinero e incumplimiento de contrato, instada por Octagon Consultant Group Corp. (Octagon) en contra del Municipio.
Contamos con el escrito en oposición de Octagon, con cuyo beneficio y al tenor del marco fáctico-jurídico que a continuación delineamos, procedemos a resolver el recurso ante nuestra consideración.

**I.**

El 12 de junio de 2018, Octagon presentó su Demanda sobre cobro de dinero e incumplimiento de contrato en contra del Municipio, alegando que habían pactado varios contratos de servicios profesionales, de los cuales el Municipio le adeudaba $117,940.[1]
El Municipio contestó la Demanda y negó las alegaciones en su contra. Luego el Municipio presentó una moción para que se dictara sentencia sumaria desestimando la Demanda, alegando que las facturas de Octagon no cumplían con los formalismos legales porque no estaban firmadas por un representante autorizado del Municipio, certificando que los servicios se prestaron durante la vigencia de los contratos. La moción de sentencia sumaria del Municipio no estuvo acompañada de declaración jurada o anejo alguno.[2] No obstante, en su moción de sentencia sumaria, el Municipio hizo referencia al menos a dos de los casi cincuenta anejos que Octagon unió a su Demanda.[3]
Octagon presentó escrito de oposición a la solicitud de sentencia sumaria del Municipio, indicando que las facturas fueron certificadas conforme a los contratos y que no procedía el remedio sumario pues existía controversia acerca de si algunos de los servicios se rindieron durante la vigencia de los contratos. Octagon acompañó su moción con una declaración jurada de su presidente, Raimundo Marrero Otero, y otros documentos.[4] En la referida declaración jurada, el presidente expresó sus gestiones de someter las facturas y gestionar el cobro de estas con la representante autorizada del Municipio, Rebecca Rivera Torres, quien las recibía, certificaba y ordenaba su pago.[5]
El 23 de enero de 2019, el TPI dictó Sentencia sumaria declarando Ha Lugar la Demanda y condenando al Municipio a pagarle a Octagon $87,940.[6] El Tribunal consignó las siguientes determinaciones fácticas:

   1. El 17 de septiembre de 2015 el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme

al valor en el mercado de un Centro de Autismo perteneciente al Municipio de Toa Baja, ubicado en DV–1, en la Calle Lago Las Curias en Levittown 5ta Sección, Barrio Sabana Seca en Toa Baja, Puerto Rico. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de tres mil dólares ($3,000.00).

**\*2** 2. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000361.

3. Conforme al Contrato de Servicios Profesionales del 17 de septiembre de 2015, otorgado entre las partes, Octagon preparó la tasación de la propiedad cita en DV1, en la Calle Lago Las Curias en Levittown 5ta Sección, Barrio Sabana Seca en Toa Baja, Puerto Rico.

4. El día 10 de octubre de 2015 Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Aníbal Vega Borges la factura 2015–05 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionados por la cantidad de $3,000 .00.

5. La cantidad de $3,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de tasación, es una deuda que está vencida es líquida y exigible en su totalidad.

6. El 4 de agosto de 2015, el Sr. Raimundo Marrero Otero en su carácter de Presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a revisar las colindancias de la finca principal con la colindancia de la Comunidad Villa Calma en el Barrio Ingenio a requerimiento de la Autoridad de Agricultura y Autoridad de Tierras, revisaría el plano final para ajustar los solares afectados por el deslinde de las colindancias de las fincas matrices y produciría un plano final para la aprobación de la Junta de Planificación. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de cuarenta y dos mil dólares ($42,000.00).

7. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000236.

8. Conforme al Contrato de Servicios Profesionales del 4 de agosto de 2015, otorgado entre las partes, Octagon revisó las colindancias de la finca principal con la colindancia de la Comunidad Calma, Barrio Ingenio a requerimiento de la Autoridad de Agricultura y Autoridad de Tierras, el plano final fue revisado para ajustar los solares afectados por el deslinde de las colindancias de las fincas matrices y se produjo el plano final para la aprobación de la Junta de Planificación.

9. El día 31 de agosto de 2015, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Aníbal Vega Borges la factura 2015–03 sobre el trabajo contratado por el Municipio de Toa Baja de revisión de plano de agrimensura y producción final de plano para la aprobación de la Junta de Planificación por la cantidad de $42,000.00.

10. Al presente, el Municipio de Toa Baja adeuda aún la cantidad de $12,940.00 por los servicios prestados por Octagon relacionados al contrato antes aludido.

11. La cantidad de $12,940.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de revisión de plano de agrimensura y producción final de plano para la aprobación de la Junta de Planificación, es una deuda que está vencida es líquida y exigible en su totalidad.

**\*3** 12. El 4 de agosto de 2015, el Sr. Raimundo Marrero Otero en su carácter de Presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un estudio de renta conforme al valor en el mercado de un Terrano Vacante en el Vertedero de Toa Baja perteneciente al Municipio de Toa Baja, ubicado en PR–866, Km. 2.2 Candelaria Arenas, Toa Baja, PR. 00949 y el Gimnasio Municipal de la 6ta. Sección de Levittown en el Municipio de Toa Baja, ubicado en PR–866 6 Sección Levittown Sabana Seca Toa Baja, P.R. 00949. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de mil quinientos dólares ($1,500.00) por cada estudio o sea un total de tres mil dólares ($3,000.00).

13. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000237.

14. Conforme al Contrato de Servicios Profesionales del 4 de agosto de 2015, otorgado entre las partes, Octagon preparó el estudio de renta de la propiedad cita en PR–866, Km. 2.2 Candelaria Arenas, Toa Baja, PR. 00949 y la propiedad cita en PR866 6 Sección Levittown Sabana Seca Toa Baja, P.R. 00949.

15. El día 24 de septiembre de 2015, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Aníbal Vega Borges la factura 2015–04 sobre el trabajo contratado por el Municipio de Toa Baja de estudio de renta antes relacionado por la cantidad de $3,000.00.

Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)

Case:17-03283-LTS Doc#:14276-4 Filed:09/14/20 Entered:09/14/20 18:13:30 Desc: Exhibit Exhibit 7- Octagon v. Toa Baja Page 4 of 17

16. Al presente, el Municipio de Toa Baja adeuda la cantidad de $3,000.00 por los servicios prestados brindados por Octagon.

17. La cantidad de $3,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de preparar estudio de renta, es una deuda que está vencida es líquida y exigible en su totalidad.

18. El 1 de agosto de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firma un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un Informe de Tasación Comercial, de acuerdo al valor en el mercado de un predio de 8,000 metros cuadrados localizado en el lado Este de PR–866 de Levittown, Sabana Seca, Toa Baja, Puerto Rico, prepararía un plano de agrimensura y un plano de segregación. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de trece mil dólares ($13,000.00).

19. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2016–000116.

20. Conforme al Contrato de Servicios Profesionales del 1 de agosto de 2016, otorgado entre las partes, Octagon preparó el Informe de Tasación sobre la propiedad de 8,000 metros cuadrados antes indicada, preparó el plano de agrimensura y el plano de segregación sobre dicho predio de terreno.

21. El día 3 de noviembre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 61–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación, preparación de planos de agrimensura y planos de segregación antes relacionados por la cantidad de $12,000.00.

 *4  22. Al presente, el Municipio de Toa Baja adeuda la cantidad de $12,000.00 por los servicios prestados brindados por Octagon.

23. La cantidad de $12,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de tasación, preparación de planos de agrimensura y planos de segregación, es una deuda que está vencida es líquida y exigible en su totalidad.

24. El 10 de agosto de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme al valor en el mercado del Centro de Diagnóstico y Tratamiento (CDT) ubicado en Intersección Norte de la PR–867 Km. 2.2 y Ave. Sabana Seca, Toa Baja, PR. 00949. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de diez mil dólares ($10,000.00).

25. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000206.

26. Conforme al Contrato de Servicios Profesionales del 10 de agosto de 2016, otorgado entre las partes, Octagon preparó la tasación de la propiedad cita en Intersección Norte de la PR–867 Km. 2.2 y Ave. Sabana Seca, Toa Baja, PR. 00949.

27. El 30 de agosto de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 59–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionado por la cantidad de $10,000.00.

28. El 15 de agosto de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme al valor en el mercado para cada una de las siguientes propiedades pertenecientes al Municipio de Toa Baja: a. Cancha de Baloncesto en el Sector Campanillas, b. Centro "Head Start (Pablito), Levittown, c. Salón de la Fama Sabana Seca y Coliseo Municipal, d. Centro Comunal Grande en el Barrio Ingenio, e. Centro Comunal de la Séptima Sección Levittown, f. Cancha de Baloncesto en Sector Villa Olga, g. Complejo Deportivo Avoli. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de cuarenta y tres mil dólares ($43,000.00).

29. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000231.

30. Conforme al Contrato de Servicios Profesionales del 15 de agosto de 2016 otorgado entre las partes Octagon preparó las siete (7) tasaciones de las propiedades arriba indicadas.

31. El día 4 de octubre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 62–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionado por la cantidad de $43,000.00.

Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)

Case:17-03283-LTS Doc#:14276-4 Filed:09/14/20 Entered:09/14/20 18:13:30 Desc: Exhibit Exhibit 7- Octagon v. Toa Baja Page 5 of 17

**\*5** 32. El 8 de septiembre de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un Plano de Agrimensura de (59.55 Cdas), un Plano de Segregación de (6.21 Cdas.) y Permisos sobre una propiedad cita en PR–867, Km., 2.2 Ave. Sabana Seca en Toa Baja. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de veinticuatro mil dólares ($24,000.00).

33. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000337.

34. Conforme al Contrato de Servicios Profesionales del 8 de septiembre de 2016, otorgado entre las partes, Octagon preparó los planos de agrimensura y segregación, así como los permisos para la propiedad cita en PR–867, Km. 2.2 Ave. Sabana Seca, Toa Baja.

35. El día 11 de noviembre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 64–16 sobre el trabajo contratado por el Municipio de Toa Baja de los trabajos antes relacionados por la cantidad de $17,000.00.

36. Al presente, el Municipio de Toa Baja adeuda la cantidad de $17,000.00 por los servicios prestados de preparación de planos de agrimensura y de segregación, así como de obtener permisos brindados por Octagon.

37. La cantidad de $17,000.00 adeudada par el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de preparación de planos de agrimensura y de segregación, así como de obtener permisos, es una deuda que está vencida es líquida y exigible en su totalidad.

38. El 1 de noviembre de 2016, el Sr. Raimundo Marrero Otero en su carácter de Presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar una tasación conforme al valor en el mercado del Estadio de Toa Baja Primera Sección de Levittown. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de siete mil dólares ($7,000.00).

39. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000499.

40. Conforme al Contrato de Servicios Profesionales del 1 de noviembre de 2016 otorgado entre las partes Octagon preparó la tasación del Estadio de Toa Baja Primera Sección de Levittown.

41. El 7 de octubre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 63–16 sobre el trabajo contratado por el Municipio de Toa Baja de tasación antes relacionado por la cantidad de $7,000.00.

42. Al presente, el Municipio de Toa Baja adeuda la cantidad de $7,000.00 por los servicios prestados de tasación brindados por Octagon.

43. La cantidad de $7,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de tasación, es una deuda que está vencida es líquida y exigible en su totalidad.

**\*6** 44. El 1 de noviembre de 2016, el Sr. Raimundo Marrero Otero en su carácter de presidente de Octagon firmó un Contrato de Servicios Profesionales con el Municipio de Toa Baja en la que Octagon se comprometía a preparar un Plano de Agrimensura de (5.1717 Cdas.) para el Salón de la Fama y Coliseo, y otro Plano de Agrimensura de (6.261 Cdas.) para el Complejo Deportivo sobre una propiedad cita en PR–867, Km., 2.2 Ave. Sabana Seca en Toa Baja. A cambio de ello el Municipio de Toa Baja se obligó a pagar a Octagon la cantidad de diez mil dólares ($10,000.00).

45. El Contrato de Servicios Profesionales antes referido fue inscrito en la Oficina del Contralor bajo el número 2017–000500.

46. Conforme al Contrato de Servicios Profesionales del 1 de noviembre de 2016 otorgado entre las partes Octagon preparó los dos planos de agrimensura para las dos propiedades antes identificadas.

47. El 14 de noviembre de 2016, Octagon envió al Municipio de Toa Baja por conducto del Honorable Alcalde Interino Jorge L. Ortiz Matías la factura 67–16 sobre el trabajo contratado por el Municipio de Toa Baja antes relacionados por la cantidad de $10,000.00.

48. Al presente, el Municipio de Toa Baja adeuda la cantidad de $10,000.00 por los servicios prestados brindados por Octagon.

Case:17-03283-LTS Doc#:14276-4 Filed:09/14/20 Entered:09/14/20 18:13:30 Desc:
Exhibit Exhibit 7- Octagon v. Toa Baja Page 6 of 17

Octagon Consultant Group Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)

> 49. La cantidad de $10,000.00 adeudada por el Municipio de Toa Baja a Octagon por concepto de los servicios profesionales prestados de preparar dos planos de agrimensura para las dos propiedades, es una deuda que está vencida es líquida y exigible en su totalidad.

Apéndice del recurso, págs. 9–15.

De las precitadas determinaciones de fácticas se desprende una deuda vencida, líquida y exigible de $64,940.[7] Asimismo, el TPI aclaró en su Sentencia sumaria que, respecto al Contrato de Servicios Profesionales de Tasación para siete propiedades del Municipio, que totaliza $43,000, y con vigencia de 15 de agosto a 15 de septiembre de 2016,[8] Octagon facturó una cantidad de $20,000, luego de expirado el contrato; esto es, 26 y 30 de septiembre de 2016.[9] Por lo cual, la cantidad correcta adeudada por el referido contrato era de $23,000. Sumada esta cuantía ($23,000) al total adeudado que surge de las determinaciones fácticas no controvertidas ($64,940), la deuda total a pagar por el Municipio asciende a $87,940.[10]

El TPI también concluyó en su Sentencia sumaria que los Contratos de Servicios Profesionales cumplieron con la normativa aplicable, toda vez que, fueron reducidos a escrito, se sometieron a la Oficina del Contralor, se emitió copia del registro, y Octagon prestó los servicios pactados. El Tribunal rechazó la teoría del Municipio de que las facturas no habían sido certificadas por un representante autorizado, pues la normativa no dispone requisitos de forma sobre las facturas, sino más bien delega a los municipios la rigurosa responsabilidad de tener controles adecuados de contabilidad.[11]

**\*7** El Municipio solicitó reconsideración y determinaciones adicionales de hechos y derecho, lo cual fue rechazado por el TPI.[12]

Aún inconforme, el Municipio recurrió ante nos mediante la apelación que nos ocupa y le imputó al foro sentenciador los siguientes errores:

> Erró el TPI, al ignorar que las facturas de servicios profesionales por las cuales condenó al Municipio, carecían de la certificación del representante autorizado del Municipio, certificando correcto que el trabajo o los servicios se rindieron.
>
> Erró el TPI, como cuestión de derecho al declarar con lugar la sentencia sumaria a favor de la parte apelada, por entender que no existía controversia sustancial en cuanto a los hechos materiales, y negar la determinación de hecho y derecho adicionales.
>
> Erró el TPI, como cuestión de derecho, al ignorar que los contratos de servicios profesionales firmados entre el apelado y el Municipio requieren que las facturas estén certificadas por un representante autorizado del Municipio, certificando correcto que el trabajo o los servicios profesionales se rindieron.

Oportunamente, Octagon presentó su alegato en oposición.

## II.

### Sentencia Sumaria

La Regla 36 de Procedimiento Civil regula el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Meléndez González v. M. Cuebas,* 193 DPR 100, 109 (2015); *S.L.G. Zapata Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas,* 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión,* 178 DPR 200, 213–214 (2010); *Vera v. Dr. Bravo,* 161 DPR 308, 331–332 (2004); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911 (1994).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1. La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que *permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Ramos Pérez v. Univisión,* supra. págs. 213–214, seguido en *Meléndez González v. M. Cuebas,* supra, pág. 110.

Procede entonces que se dicte sentencia sumaria únicamente cuando surge de manera clara que el promovido por la solicitud no puede prevalecer bajo ningún supuesto de hechos y, que el tribunal tiene a su disposición toda la prueba necesaria para resolver la controversia que tiene ante su consideración. Cualquier duda no es suficiente para denegar la solicitud de sentencia sumaria. Debe tratarse de una duda que permita concluir que existe una verdadera y sustancial controversia sobre hechos relevantes y

Case:17-03283-LTS Doc#:14276-4 Filed:09/14/20 Entered:09/14/20 18:13:30 Desc:
Exhibit Exhibit 7- Octagon v. Toa Baja Page 7 of 17

Octagon Consultant Group Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)

pertinentes. *Meléndez González v. M. Cuebas,* supra, pág. 110; *Nieves Díaz v. González Massas,* supra, pág. 848; *Ramos Pérez v. Univisión,* supra, pág. 213–214; *E.L.A. v. Cole,* 164 DPR 608, 625 (2005).

**\*8** Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 727 (1994); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* supra, págs. 913–914.

La parte promovida por una solicitud de sentencia sumaria no puede descansar meramente en las afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva. Por el contrario, está obligada a contestar de forma tan detallada y específica como lo hizo la parte promovente. 32 LPRA Ap. V, R. 36.3(c); *Nieves Díaz v. González Massas,* supra, pág. 848. Además, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Esto es, no debe cruzarse de brazos y descansar en sus alegaciones. *Ramos Pérez v. Univisión,* supra, pág. 215; *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000); *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 DPR 563, 576 (1997); *Corp. Presiding Bishop v. Purcell,* 117 DPR 714, 721 (1986). Ahora bien, el Tribunal Supremo ha establecido que el mero hecho de que la parte promovida no presente evidencia que contradiga la presentada por la parte promovente, no implica necesariamente que proceda la sentencia sumaria. *Vera v. Dr. Bravo,* supra, págs. 331–332; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* supra, págs. 912–913.

En *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Como foro apelativo, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo,* supra, pág. 334. Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Meléndez González v. M. Cuebas,* supra, pág. 119.

### Contratación Gubernamental

La contratación gubernamental se considera un asunto revestido de alto interés público y por eso los preceptos legales que rigen la misma aspiran a promover no sólo una sana y recta administración pública, sino también a prevenir el despilfarro, la corrupción y el amiguismo. *Vicar Builders v. ELA,* 192 DPR 256, 263 (2015); *ALCO Corp. v. Mun. de Toa Alta,* 183 DPR 530, 537 (2011). Ante esta realidad, las normas que gobiernan la contratación entre entes privados y público son unas rigurosas y de aplicación restrictiva; así lo ha favorecido nuestra jurisprudencia. *Vicar Builders v. ELA,* supra.

**\*9** Cónsono con lo antes expuesto, la jurisprudencia ha establecido ciertos requisitos de forma que son indispensables para que el negocio jurídico sea válido y exigible; a saber: (1) reducir el contrato a escrito; (2) mantener un registro para establecer su existencia; (3) enviar copia a la Oficina del Contralor de Puerto Rico, y(4) acreditar la certeza de tiempo, a saber, que el contrato se realizó y otorgó quince días antes. Como puede observarse, estas exigencias cumplen el cometido de servir como mecanismo de cotejo para perpetuar el negocio jurídico. Id., pág. 264; *Ocasio v. Alcalde Mun. de Maunabo,* 121 DPR 37, 54 (1988). Tales exigencias formales deberán ser observadas por los municipios para que sus contratos sean válidos. *Cordero Vélez v. Mun. Guánica,* 170 DPR 237, 248–249 (2007).

Asimismo, la Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81 de 30 de agosto de 1991, 21 LPRA sec. 4001 et. seq., impulsó un proceso de descentralización con el fin de ampliar la autonomía municipal. *Mun. de Ponce v. A.C. et al.,* 153 DPR 1, 21 (2000). El gobierno municipal está constituido por la Rama Legislativa y la Rama Ejecutiva. 21 LPRA sec. 4003(c). El Art. 3.009, 21 LPRA sec. 4109, establece que el Alcalde es la autoridad máxima de la Rama Ejecutiva del gobierno municipal y en tal capacidad le corresponde su dirección, administración y fiscalización del funcionamiento del municipio. Entre las facultades generales del Alcalde figuran las siguientes:

> [ ... ]
>
> (r) Contratar los servicios profesionales, técnicos y consultivos necesarios, convenientes o útiles para la ejecución de sus funciones, deberes y facultades y para la gestión de los asuntos y actividades de competencia o jurisdicción municipal. [ ... ]
>
> [ ... ]

A su vez, el Art. 2.001(n) de la Ley de Municipios Autónomos, 21 LPRA sec. 4051(n), establece que los municipios estarán facultados para "[c]ontratar los servicios profesionales, técnicos y consultivos que sean necesarios y para realizar las actividades, programas y operaciones municipales o para cumplir con cualquier fin público autorizado por este subcapítulo o por cualquier otra ley que aplique a los municipios. [ ... ]".

Cabe destacar que la Ley Núm. 14–2016 aclaró el lenguaje del Artículo 8.016 de la Ley de Municipios Autónomos, 21 LPRA sec. 4366. Reiteró que los poderes de contratación conferidos, mediante la Ley de Municipios Autónomos, *supra,* eran amplios y perseguían la otorgación de servicios que fueran útiles y necesarios para los ciudadanos. Actualmente, el último párrafo del Art. 8.016, *supra,* reza:

> La facultad para otorgar contratos en virtud de los poderes y facultades provistos a los municipios en las secs. 4051 y 4054 de este título y para la otorgación de contratos de servicios, servicios profesionales, técnicos y consultivos, excepto cuando en la Ley exista disposición expresa en contrario, es exclusiva del Alcalde. No será requerido, excepto cuando la Ley expresamente disponga lo contrario o expresamente requiera la intervención de la Legislatura Municipal, que el Alcalde remita los contratos para ejecutar los poderes y facultades provistos a los municipios en las secs. 4051 y 4054 de este título y los contratos de servicios, servicios profesionales, técnicos y consultivos a la Legislatura Municipal.

**\*10** En fin, la potestad contractual de un municipio está sujeta a los requisitos formales y los límites prudenciales previamente mencionados sobre la sana y responsable administración pública. *Vicar Builders v. ELA,* supra, págs. 263–264; *Cordero Vélez v. Mun. Guánica,* supra, págs. 248–249. A esos fines, la Ley de Municipios Autónomos, *supra,* le impone al alcalde, a funcionarios y empleados en que este delegue, y cualquier representante autorizado de este o del municipio, la responsabilidad de velar por "la legalidad, exactitud, propiedad, necesidad y corrección de los documentos y todos los gastos que se autoricen para el pago de cualquier concepto". 21 LPRA sec. 4355. Asimismo, el Art. 8.010, le exige al municipio, entre otros deberes, mantener un sistema uniforme de contabilidad con controles internos adecuados para verificar y garantizar la corrección de las operaciones financieras. 21 LPRA sec. 4360.

Añádase que el *Reglamento para la Administración Municipal* vigente para la fecha de los hechos del caso, Reglamento 7539 de 18 de julio de 2008, establece que compete al Alcalde o su representante autorizado cerciorarse de que el contratista cumplió con su deberes y responsabilidades contractuales. Igual compete al Director de Finanzas ordenar el pago de los servicios acorde al contrato, luego de recibir la certificación de que los servicios se rindieron conforme al contrato, de manera aceptable. En su Capítulo IV, Sección 23, el Reglamento 7539 provee lo siguiente:

> Sección 23: Pago de Servicios Profesionales y Consultivos
>
> (1) El Alcalde, o su representante autorizado, tomará las providencias necesarias para determinar que la persona contratada cumpla con los deberes y responsabilidades estipuladas en el contrato.
>
> (2) El Director de Finanzas ordenará los pagos por estos servicios de acuerdo con lo estipulado en el contrato y luego de recibir la debida certificación de que los servicios se rindieron, según los términos del contrato y en forma aceptable. Las enmiendas, la resolución y rescisión de los contratos se tramitarán, intervendrán y distribuirán en igual forma que los contratos originales.

### III.

Los tres señalamientos de error del Municipio se resumen en que el TPI no debió dictar sentencia sumaria porque existía controversia sustancial acerca la certificación de facturas por parte de un representante autorizado del Municipio. Conforme al marco jurídico esbozado, analizados los hechos del caso, concluimos que no le asiste la razón al Municipio, por lo cual, el TPI no erró al dictar la Sentencia sumaria aquí apelada.

La principal alegación del Municipio es que no procedía dictar sentencia sumaria a favor de Octagon, por dos razones alternativas:

1. No se probó la deuda pues las facturas no estaban certificadas por un representante autorizado del Municipio, según lo exige la normativa aplicable y el contrato entre las partes.

**\*11** 2. La ausencia de las referidas certificaciones genera una controversia de hechos sustanciales que impide que se disponga sumariamente del caso.

Ninguna de las razones esbozadas es correcta.

En primer lugar, del expediente surge de manera incontrovertida que los contratos entre Octagon y el Municipio cumplieron con la normativa aplicable, esto es: se hicieron por escrito; se mantuvo un registro que garantiza la existencia del contrato; se

Case:17-03283-LTS Doc#:14276-4 Filed:09/14/20 Entered:09/14/20 18:13:30 Desc:
Exhibit Exhibit 7- Octagon v. Toa Baja Page 9 of 17

Octagon Consultant Group Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)

registraron en la Oficina del Contralor; y se acreditó la certeza temporal del contrato. *Vicar Builders v. ELA,* supra, págs. 263–264; *Cordero Vélez v. Mun. Guánica,* supra, págs. 248–249.

En segundo lugar, la Ley de Municipios Autónomos no exige lo planteado por el Municipio, pues la ley delega en los municipios, *no en los contratistas,* los controles internos de contabilidad que garanticen un desembolso adecuado del erario para hacer sus compras y pagar sus obligaciones contractuales. 21 LPRA secs. 4355 y 4360. Respecto a sus contratos con el Municipio, Octagon evidenció que rindió sus servicios, sometió las facturas y gestionó su cobro, pero el Municipio no le pagó la totalidad de sus facturas. Incluso, según el presidente de Octagon, en sus gestiones de cobro con otros cuatro representantes de Cuentas por Pagar o Finanzas del Municipio, además de la señora Rebecca Rivera Torres, nunca se le indicó que sus facturas no estaban certificadas o aprobadas para pago, o que carecían de algún requerimiento para ordenar pago.[13]

En tercer lugar, según surge de la Declaración Jurada del presidente de Octagon, la representante autorizada del Municipio, Rebecca Rivera Torres, Directora o persona a cargo del Departamento de Planificación del Municipio, era la persona autorizada por el Alcalde para certificar y aprobar los trabajos y ordenar el pago de las facturas, y en efecto, fue ella, quien certificó, aprobó y ordenó el pago de las facturas de Octagon.[14]

Por último, la moción de sentencia sumaria del Municipio carece de anejos o declaración jurada alguna, que respaldaran su petitorio. Por el contrario, Octagon no sólo refutó la solicitud sumaria del Municipio, sino que proveyó una Declaración Jurada de su presidente y documentación que, aunque con el fin de oponerse a que se dictara sentencia sumaria a favor del Municipio, respaldaban la concesión de sentencia sumaria a favor de Octagon. Entiéndase que Octagon logró establecer que tenía derecho a cobrar una suma total de $87,940 por los servicios rendidos, facturados y aprobados, a favor del Municipio, en virtud y de conformidad con los Contratos de Servicios Profesionales pactados entre las partes entre septiembre de 2015 y noviembre de 2016. Por lo tanto, procede confirmar el dictamen sumario apelado.

**IV.**

En virtud de los enunciados fundamentos jurídicos, confirmamos la Sentencia Sumaria apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.

**\*12** Lcda. Lilia M. Oquendo Solís

Secretaria del Tribunal de Apelaciones

Footnotes

1 Apéndice del recurso, págs. 53–64; Apéndice del alegato de Octagon, págs. 1–990.
2 Apéndice del recurso, págs. 42–48.
3 Apéndice del alegato de Octagon, págs. 1–990.
4 Id., págs. 991–1025.
5 Id., págs. 1009–1012.
6 Apéndice del recurso, págs. 7–23.
7 Véanse Determinaciones de Hechos 5, 11, 17, 23, 37, 43 y 49.
8 Véanse Determinaciones de Hechos 28–30.
9 Se trata de una factura de $6,500 por tasación realizada el 30 de septiembre de 2016, y dos facturas de $4,500 y $9,000, por tasaciones realizadas el 26 de septiembre de 2016; Apéndice del recurso, págs. 21–22.
10 Apéndice del recurso, págs. 21–23.
11 Id., págs. 20–21.
12 Id., págs. 1–6.
13 Apéndice del alegato de Ocatagon, pág. 1011.
14 Id., págs. 1009–1012.

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

CERTIFIED TRANSLATION

**Octagon Consultant Group, Corp. v. Toa Baja Municipality, 2019 WL 4417472 (2019)**

2019 WL 4417472 (TCA)

OCTAGON CONSULTANT GROUP, CORP., Appelle

v.

TOA BAJA MUNICIPALITY, Appellant.

COURT OF APPEALS
Civil No: BY2018CV00830
KLAN201900215
In San Juan, Puerto Rico, on July 19, 2019.
July 19, 2019.

Appeal taken from the Court of First Instance, Bayamón Division.

Money Collection Breach of Contract

Panel composed of its president, Judge Cintrón Cintrón, Judge Surén Fuentes and Judge Cortés González.

**JUDGEMENT**

OPINION WRITTEN BY J. CINTRÓN CINTRÓN
***1** The Municipality of Toa Baja (Municipality) filed an appeal against summary judgment decreed by the Court of First Instance, Bayamón Division (TPI [*Spanish acronym*]) which approved a Complaint to collect money and for breach of contract, initiated by Octagon Consultant Group Corp. (Octagon) against the Municipality.
We have the written opposition from Octagon, with whose benefit we proceed to resolve the appeal before our consideration in accordance with the factual-legal framework that we outline below.

-I.-

On June 12, 2018, Octagon filed its Complaint to collect money and for breach of contract against the Municipality, alleging that they had entered into several professional service contracts, for which the Municipality owed it $117,940.[1]
The Municipality answered the Complaint and denied the allegations against it. Then the Municipality filed a motion for summary judgment dismissing the Complaint, alleging that Octagon's invoices did not comply with the legal formalities because they were not signed by an authorized representative of the Municipality, certifying that the services were provided while the agreements were in effect. The Municipality's motion for summary judgment was not accompanied by a sworn statement or any exhibitis.[2] However, in its motion for summary judgment, the Municipality made reference to at least two of the almost fifty exhibits that Octagon joined to its Complaint.[3]
Octagon filed a written opposition to the motion for summary judgment of the Municipality, indicating that the invoices were certified in accordance with the agreements and that a summary remedy was not warranted because a controversy existed as to whether some of the services were rendered while the agreements were in effect. Octagon joined to its motion an affidavit from its president, Raimundo Marrero Otero, and other documents.[4] In the aforementioned sworn statement, the president stated his efforts to submit invoices and attempt to collect on these with the authorized representative of the Municipality, Rebecca Rivera Torres, who received, certified and ordered these for payment.[5]
On January 23, 2019, the TPI issued a summary judgment GRANTING the Complaint and ordering the Municipality to pay Octagon $87,940.[6]
The Court listed the following factual findings:
1. On September 17, 2015, Mr. Raimundo Marrero Otero, in his capacity as President of Octagon, executed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare an appraisal, according to

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)**

market value, of an Autism Center belonging to the Municipality of Toa Baja, located in DV–1, in Calle Lago Las Curias in Levittown 5th Section, Sabana Seca Ward in Toa Baja, Puerto Rico. For doing so, the Municipality of Toa Baja agreed to pay Octagon the amount of three thousand dollars ($3,000.00).

**\*2** 2. The aforementioned Professional Service Agreement was registered in the Comptroller's Office under number 2016–000361.

3. In accordance with the Professional Service Agreement of September 17, 2015, executed between the parties, Octagon prepared the appraisal of the property located in DV1, on Calle Lago Las Curias in Levittown 5th Section, Sabana Seca Ward in Toa Baja, Puerto Rico.

4. On October 10, 2015 Octagon sent to the Municipality of Toa Baja through the Honorable Mayor Aníbal Vega Borges invoice 2015–05 relating to the previously mentioned appraisal work under the contract with by the Municipality of Toa Baja for the amount of $3,000.00.

5. The amount of $3,000.00 owed by the Municipality of Toa Baja to Octagon for the professional appraisal services rendered, is a debt that is overdue, liquid and fully payable.

6. On August 4, 2015, Mr. Raimundo Marrero Otero, in his capacity as President of Octagon, signed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to review the boundaries of the main property bordering the Villa Calma Community in the Ingenio Ward at the request of the Agriculture Authority and Land Authority, review the final plan to adjust the lots affected by the demarcation of the boundaries of the principal properties and produce a final plat for approval by the Planning Board. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of forty-two thousand dollars ($42,000.00).

7. The aforementioned Professional Service Agreement was registered in the Comptroller's Office under number 2016–000236.

8. Pursuant to the Professional Services Agreement of August 4, 2015, executed between the parties, Octagon reviewed the boundaries of the main property with the boundary of the Calma Community, Ingenio Ward at the request of the Agriculture Authority and Land Authority, the final plan was revised to adjust the lots affected by the demarcation of the boundaries of the principal properties and a final plat was produced for the approval of the Planning Board.

9. On August 31, 2015, Octagon sent to the Municipality of Toa Baja through the Honorable Mayor Aníbal Vega Borges invoice 2015–03 under the contract with Municipality of Toa Baja to review the land survey plat and final production of the plat for approval by the Planning Board in the amount of $42,000.00.

10. Presently, the Municipality of Toa Baja still owes the amount of $12,940.00 for services provided by Octagon relating to the aforementioned contract.

11. The amount of $12,940.00 owed by the Municipality of Toa Baja to Octagon for professional services rendered to review the land survey plat and final production of the plat for approval by the Planning Board, is a debt that is overdue, liquid and fully payable.

**\*3** 12. On August 4, 2015, Mr. Raimundo Marrero Otero, in his capacity as President of Octagon, signed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare an income study, according to market value, of a Vacant Lot at the Toa Baja Landfill belonging to the Municipality of Toa Baja, located at PR–866, Km. 2.2 Candelaria Arenas, Toa Baja, PR. 00949 and the Municipal Gymnasium of the 6th. Section of Levittown in the Municipality of Toa Baja, located at PR–866 6 Levittown Section Sabana Seca Toa Baja, P.R. 00949. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of one thousand five hundred dollars ($1,500.00) for each study or a total of three thousand dollars ($3,000.00).

13. The aforementioned Professional Service Agreement was registered with the Comptroller's Office under number 2016–00237.

14. Pursuant to the Professional Service Agreement of August 4, 2015, executed between the parties, Octagon prepared the income study of the property located at PR–866, Km. 2.2 Candelaria Arenas, Toa Baja, PR. 00949 and the property located at PR866 6 Levittown Section Sabana Seca Toa Baja, P.R. 00949.

15. On September 24, 2015, Octagon sent to the Municipality of Toa Baja through the Honorable Mayor Aníbal Vega Borges invoice 2015–04 under the contract with the Municipality of Toa Baja for the income study described above in the amount of $3,000.00.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)**

16. Presently, the Municipality of Toa Baja owes the amount of $3,000.00 for the services rendered by Octagon.

17. The amount of $3,000.00 owed by the Municipality of Toa Baja to Octagon for professional services rendered in preparing an income study, is a debt that is overdue, liquid and fully payable.

18. On August 1, 2016, Mr. Raimundo Marrero Otero, in his capacity as president of Octagon, signed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare a Commercial Appraisal Report, according to market value, for a property of 8,000 square meters located on the eastern side of PR–866 of Levittown, Sabana Seca, Toa Baja, Puerto Rico, and to prepare a land survey plat and a partition plat. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of thirteen thousand dollars ($13,000.00).

19. The aforementioned Professional Service Agreement was registered with the Comptroller's Office under number 2016–000116.

20. Pursuant to the Professional Service Agreement of August 1, 2016, executed between the parties, Octagon prepared the Appraisal Report for the 8,000 square meter property indicated above, and prepared the land survey plat and the partition plat on said parcel of land.

21. On November 3, 2016, Octagon sent to the Municipality of Toa Baja through the Honorable Interim Mayor Jorge L. Ortiz Matías invoice 61–16 under the contract with the Municipality of Toa Baja for the appraisal, preparation of land survey plat and partition plats listed above in the amount of $12,000.00.

**\*4** 22. Presently, the Municipality of Toa Baja owes the amount of $ 12,000.00 for the services rendered by Octagon.

23. The amount of $12,000.00 owed by the Municipality of Toa Baja to Octagon for professional services rendered for the appraisal, preparation of land survey plats and partition plats, is a debt that is overdue, liquid and fully payable.

24. On August 10, 2016, Mr. Raimundo Marrero Otero, in his capacity as president of Octagon, signed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare an appraisal, according to market value, of the Diagnosis and Treatment Center (CDT [*Spanish acronym*]) located at the North Intersection of PR–867 Km.2.2 and Ave. Sabana Seca, Toa Baja, PR. 00949. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of ten thousand dollars ($10,000.00).

25. The aforementioned Professional Service Agreement was registered in the Comptroller's Office under the number 2017–000206.

26. Pursuant to the Professional Service Agreement of August 10, 2016, executed between the parties, Octagon prepared the appraisal of the property located at the North Intersection of PR–867 Km. 2.2 and Ave. Sabana Seca, Toa Baja, PR. 00949.

27. On August 30, 2016, Octagon sent to the Municipality of Toa Baja through the Honorable Acting Mayor Jorge L. Ortiz Matías invoice 59–16 under the contract with the Municipality of Toa Baja for the appraisal listed above in the amount of $10,000.00.

28. On August 15, 2016, Mr. Raimundo Marrero Otero, in his capacity as President of Octagon, signed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare an appraisal, according to market value, for each of the following properties belonging to the Municipality of Toa Baja: a. Basketball Court in the Campanillas Sector, b. Head Start Center (Pablito), Levittown, c. Sabana Seca Hall of Fame and Municipal Coliseum, d. Centro Comunal Grande in Ingenio Ward, e. Levittown Seventh Section Community Center, f. Basketball Court in Sector Villa Olga, g. Avoli Sports Complex. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of forty-three thousand dollars ($43,000.00).

29. The aforementioned Professional Service Agreement was registered with the Comptroller's Office under the number 2017–000231.

30. Pursuant to the Professional Service Agreement of August 15, 2016 executed between the parties, Octagon prepared the seven (7) appraisals of the properties listed above.

31. On October 4, 2016, Octagon sent to the Municipality of Toa Baja through the Honorable Interim Mayor Jorge L. Ortiz Matías invoice 62–16 on the appraisal work under the contract with the Municipality of Toa Baja listed above in the amount of $ 43,000.00.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:14276-4 Filed:09/14/20 Entered:09/14/20 18:13:30 Desc:
Exhibit Exhibit 7- Octagon v. Toa Baja Page 13 of 17

CERTIFIED TRANSLATION

**Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)**

***5** 32. On September 8, 2016, Mr. Raimundo Marrero Otero in his capacity as president of Octagon executed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare a Land Survey Plat of (59.55 Cdas. [*Spanish land measurement*]), a Partition Plat of (6.21 Cdas.) and Permits for a property located in PR–867, Km., 2.2 Ave. Sabana Seca in Toa Baja. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of twenty-four thousand dollars ($24,000.00).

33. The aforementioned Professional Service Agreement was registered in the Comptroller's Office under number 2017–000337.

34. Pursuant to the Professional Service Agreement of September 8, 2016, executed between the parties, Octagon prepared the land survey and partition plats, as well as the permits for the property at PR-867, Km. 2.2 Ave.Sabana Seca, Toa Baja.

35. On November 11, 2016, Octagon sent to the Municipality of Toa Baja through the Honorable Interim Mayor Jorge L. Ortiz Matías invoice 64–16 for the work described above under the contract with the Municipality of Toa Baja in the amount of $17,000.00.

36. At present, the Municipality of Toa Baja owes the amount of $17,000.00 for the services rendered provided by Octagon in the preparation of land survey and partition plats, as well as obtaining permits.

37. The amount of $17,000.00 owed by the Municipality of Toa Baja to Octagon for professional services rendered for preparing land survey and partition plats, as well as obtaining permits, is a debt that is overdue, liquid and fully payable.

38. On November 1, 2016, Mr. Raimundo Marrero Otero, in his capacity as President of Octagon, executed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare an appraisal, according to market value, for the Toa Baja First Section Stadium in Levittown. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of seven thousand dollars ($7,000.00).

39. The aforementioned Professional Service Agreement was registered with the Comptroller's Office under number 2017–000499.

40. In accordance with the Professional Service Agreement of November 1, 2016 executed between the parties, Octagon prepared the appraisal for the Toa Baja First Section Stadium in Levittown.

41. On October 7, 2016, Octagon sent to the Municipality of Toa Baja through the Honorable Interim Mayor Jorge L. Ortiz Matías invoice 63–16 for the appraisal described above under the contract with the Municipality of Toa Baja in the amount of $7,000.00.

42. Presently, the Municipality of Toa Baja owes the amount of $7,000.00 for the appraisal services rendered by Octagon.

43. The amount of $7,000.00 owed by the Municipality of Toa Baja to Octagon for professional services rendered for the appraisal, is a debt that is overdue, liquid and fully payable.

***6** 44. On November 1, 2016, Mr. Raimundo Marrero Otero in his capacity as president of Octagon executed a Professional Service Agreement with the Municipality of Toa Baja in which Octagon agreed to prepare a Land Survey Plat of (5.1717 Cdas.) for the Hall of Fame and Colosseum, and another Land Survey Plat (6.261 Cdas.) for the Sports Complex on a property located at PR–867, Km., 2.2 Ave. Sabana Seca in Toa Baja. In return, the Municipality of Toa Baja agreed to pay Octagon the amount of ten thousand dollars ($10,000.00).

45. The aforementioned Professional Service Agreement was registered with the Comptroller's Office under number 2017–000500.

46. Pursuant to the Professional Service Agreement of November 1, 2016 executed between the parties, Octagon prepared the two land survey plats for the two properties identified above.

47. On November 14, 2016, Octagon sent to the Municipality of Toa Baja through the Honorable Interim Mayor Jorge L. Ortiz Matías invoice 67–16 under the contract with the Municipality of Toa Baja previously described for the amount of $10,000.00.

48. At present, the Municipality of Toa Baja owes the amount of $10,000.00 for the services rendered by Octagon.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:14276-4 Filed:09/14/20 Entered:09/14/20 18:13:30 Desc: Exhibit Exhibit 7- Octagon v. Toa Baja Page 14 of 17

CERTIFIED TRANSLATION

**Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)**

    49. The amount of $10,000.00 owed by the Municipality of Toa Baja to Octagon for professional services rendered in preparing two land survey plats for the two properties, it is a debt that is overdue, liquid and fully payable.

Appeal Appendix, at 9–15.

From the aforementioned factual findings, there is an overdue, liquid and fully payable debt of $64,940.[7] Also, the TPI clarified in its summary Judgment that, with respect to the Professional Service Agreement for Appraisal of seven properties of the Municipality, totaling $43,000, and effective from August 15 to September 15, 2016,[8] Octagon invoiced an amount of $20,000, after the contract had expired; that is, September 26 and 30, 2016.[9] Therefore, the correct amount owed under the referred contract was for $23,000. Adding this amount ($23,000) to the total owed according to the uncontested factual findings ($64,940), the total debt to be paid by the Municipality is $87,940.[10]

The TPI also concluded in its summary Judgment that the Professional Service Agreements complied with applicable regulations, since they were in writing, they were submitted to the Comptroller's Office, a copy of the record was issued, and Octagon rendered the agreed services. The Court rejected the Municipality's theory that the invoices had not been certified by an authorized representative, as the regulations do not provide formal requirements on invoices, but rather delegate to municipalities the rigorous responsibility of having adequate accounting controls.[11]

**\*7** The Municipality requested reconsideration and additional findings of facts and law, which were rejected by the TPI.[12]

Still dissatisfied, the Municipality appealed to us through the appeal at hand and charged the trial court forum with the following errors:

    The TPI committed error when it ignored that the professional service invoices for which it sentenced the Municipality lacked the certification of the Municipality's authorized representative certifying that the work or services were rendered correctly.

    The TPI committed error as a matter of law when it issed summary judgment in favor of Appellee, on the understanding that there was no substantial controversy regarding the material facts, and refused to make additional findings of fact and law.

    The TPI committed as a matter of law, when it ignored that the professional service contracts signed between Appellee and the Municipality required that invoices be certified by the Municipality's authorized representative certifying as correct that the job or professional services were rendered.

Octagon timely filed its brief in opposition.

## II.

### Summary Judgment

Rule 36 of Civil Procedure governs the extraordinary and discretionary mechanism of summary judgment. 32 LPRA, App. V, R. 36. The main purpose of this procedural mechanism is to promote the fair, rapid and efficient solution of civil disputes that do not present genuine controversies of material fact, wherefore a plenary trial can be dispensed with. *Meléndez González v. M. Cuebas*, 193 DPR 100, 109 (2015); *S.L.G. Zapata Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión*, 178 DPR 200, 213–214 (2010); *Vera v. Dr. Bravo*, 161 DPR 308, 331–332 (2004); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

The movan must file a motion based on sworn statements or any evidence that shows the absence of a substantial controversy of essential and pertinent fact about all or part of the claim. 32 LPRA Ap. V, R. 36.1. The controversy over the essential facts generated by the litigation must be real, not speculative or abstract. That is, it must be of such a nature as to *allow the conclusion that there is a real and substantial controversy about relevant and pertinent facts*. *Ramos Pérez v. Univisión*, supra. at 213–214, followed in *Meléndez González v. M. Cuebas*, supra, at 110.

Issuance of summary judgment is warranted only when it clearly appears that the non-moving party cannot prevail under any assumption of facts and that the court has at its disposal all the evidence necessary to resolve the controversy before it. Not just any doubt is sufficient to deny a request for summary judgment. It must be a doubt that allows for the conclusion that there is a true and substantial controversy about relevant and

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

<u>Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)</u>

pertinent facts. *Meléndez González v. M. Cuebas*, supra, at 110; *Nieves Díaz v. González Massas*, supra, atC 848; *Ramos Pérez v. Univisión*, supra, at 213–214; *E.L.A. v. Cole*, 164 DPR 608, 625 (2005).

**\*8** When evaluating the request for summary judgment, the judge must: (1) analyze the documents that accompany the motion for summary judgment, those included with the motion in opposition and those in the judicial file and; (2) determine whether the opponent disputed any material fact or whether there are allegations in the complaint that have not been disputed or refuted in any way by the documents. *Medina v. M.S. & D. Química P.R., Inc*., 135 DPR 716, 727 (1994); *PFZ Props., Inc. v. Gen. Acc. Ins. Co*., supra, at 913–914.

The non-moving party to a request for summary judgment cannot merely rely on the statements contained in its allegations or take a passive attitude. To the contrary, it must answer in as detailed and specific a manner as the moving party did. 32 LPRA Ap. V, R. 36.3(c); *Nieves Díaz v. González Massas*, supra, at 848. In addition, the non-moving party must present sworn statements and documents that challenge the facts presented by the moving party. That is, it must not sit idly by and rest on its claims. *Ramos Pérez v. Univisión*, supra, at 215; *Luan Invest. Corp. v. Rexach Const. Co*., 152 DPR 652, 665 (2000); *Audiovisual Lang. v. Sist. Est. Natal Hnos*., 144 DPR 563, 576 (1997); *Corp. Presiding Bishop v. Purcell*, 117 DPR 714, 721 (1986). That said, the Supreme Court has held that the mere fact that the non-moving party does not present evidence that contradicts the evidence presented by the moving party does not necessarily imply that summary judgment is warranted. *Vera v. Dr. Bravo*, supra, at 331–332; *PFZ Props., Inc. v. Gen. Acc. Ins. Co*., supra, at 912–913.

In *Meléndez González v. M. Cuebas*, supra, The Supreme Court established the standard of review to be used by this intermediate appellate forum when reviewing the denial or grant of summary judgment motions. As an appellate forum, we must use the same criteria as the courts of first instance when deciding whether to summarily issue a judgment. In this task, we can only consider the documents that were presented before the court of first instance and determine whether or not there is any genuine controversy of relevant and essential facts, and whether the law was applied correctly. The task of adjudicating the relevant and essential facts in dispute corresponds solely to the forum of first instance in the exercise of its sound discretion. *Vera v. Dr. Bravo*, supra, at 334. Finally, we must review de novo whether the Court of First Instance correctly applied the Law to the controversy. *Meléndez González v. M. Cuebas*, supra, at 119.

### Government Contracting

Government contracting is considered a matter of high public interest and that is why the legal precepts that govern it aim to promote not only sound and correct public administration, but also to prevent waste, corruption and cronyism. *Vicar Builders v. ELA*, 192 DPR 256, 263 (2015); *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530, 537 (2011). Given this reality, the rules that govern contracting between private and public entities are rigorous and restrictive in their application; this is the approach our jurisprudence has favored. *Vicar Builders v. ELA*, supra.

**\*9** Consistent with the foregoing, caselaw has established certain requirements that are essential for such a legal transaction to be valid and enforceable; namely: (1) the agreement must be reduced to writing; (2) a record must be maintained to establish its existence; (3) a copy must be sent to the Office of the Comptroller of Puerto Rico, and (4) accredit the certainty of time, namely, that the agreement was made and executed fifteen days before. As can be seen, these requirements fulfill the task of serving as a verification mechanism for perpetuating the legal transaction. Id., at 264; *Ocasio v. Alcalde Mun. de Maunabo*, 121 DPR 37, 54 (1988). These formal requirements must be observed by the municipalities for their contracts to be valid. *Cordero Vélez v. Mun. Guánica*, 170 DPR 237, 248–249 (2007).

Likewise, the Autonomous Municipalities of Puerto Rico Act, Act No. 81 of August 30, 1991, 21 LPRA sec. 4001 et. seq., promoted a decentralization process in order to expand municipal autonomy. *Mun. de Ponce v. A.C. et al*., 153 DPR 1, 21 (2000). The municipal government is made up of the Legislative Branch and the Executive Branch. 21 LPRA sec. 4003(c). Art. 3.009, 21 LPRA sec. 4109, establishes that the Mayor is the highest authority of the Executive Branch of the municipal government and in this capacity he or she is in charge of the direction, administration and supervision of the operation of the municipality. The general powers of the Mayor include the following:

[ ... ]

(r) Contract professional, technical and consulting services that are necessary, convenient or useful for the performance of his powers, duties and functions and for the affairs and activities of municipal competence or jurisdiction.[ ... ] [ ... ]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
**Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)**

In turn, Art. 2001(n) of the Autonomous Municipalities Act, 21 LPRA sec. 4051(n), establishes that municipalities will be empowered to "[c]ontract professional, technical and consulting services that may be necessary to carry out the activities, programs and operations of the municipality, or to comply with any public purpose authorized by this subtitle or by any other act that applies to the municipalities.[ ... ]".

It should be noted that Law No. 14–2016 clarified the language of Article 8.016 of the Autonomous Municipalities Act, 21 LPRA sec. 4366. It reiterated that the contracting powers conferred by the Autonomous Municipalities Act, supra, were broad and sought to grant services that were useful and necessary for citizens. Currently, the last paragraph of Art. 8.016, supra, reads:

> The authority to execute contracts by virtue of the powers and faculties granted to municipalities under §§ 4051 and 4054 of this title, and to execute contracts for services, as well as for professional, technical, and consulting services, shall be exercised solely by the mayor, except as otherwise expressly provided in this subtitle. The mayor shall not be required to submit such contracts to the Municipal Legislature in order to exercise the powers and authorities granted to municipalities under §§ 4051 and 4054 of this title, except as otherwise expressly provided by the law, or when the intervention of the Municipal Legislature is expressly required by the law.

**\*10** In sum, the contractual power of a municipality is subject to the formal requirements and prudential limits previously mentioned regarding sound and responsible public administration. *Vicar Builders v. ELA*, supra, at 263–264; *Cordero Vélez v. Mun. Guánica*, supra, at 248–249. To this end, the Autonomous Municipalities Act, supra, imposes on the mayor, officials and employees to whom he or she delegates, and any authorized representative of his or her or the municipality, the responsibility of ensuring "the legality, accuracy, propriety, need and correctness of the documents and all expenditures authorized for the payment of any item." 21 LPRA sec. 4355. Likewise, Art. 8.010 requires the municipality, among other duties, to maintain a uniform accounting system with adequate internal controls to verify and guarantee the correctness of financial operations. 21 LPRA sec. 4360.

Furthermore, the Regulation for Municipal Administration in force on the date of the facts of the case, Regulation 7539 of July 18, 2008, establishes that it is the responsibility of the Mayor or his or her authorized representative to ensure that the contractor has fulfilled its contractual duties and responsibilities. It is also the responsibility of the Finance Director to order the payment of the services according to the agreement, after receiving certification that the services were rendered in accordance with the agreement, in an acceptable manner. In its Chapter IV, Section 23, Regulation 7539 provides the following:

> Section 23: Payment of Professional and Consulting Services
>
> (1) The Mayor, or his authorized representative, shall take the necessary steps to determine that the person hired complies with the duties and responsibilities stipulated in the agreement..
>
> (2) The Finance Director shall order the payment of these services in accordance with the provisions of the agreement and after receiving proper certification that the services were rendered according to the terms of the agreement and in an acceptable manner. Amendments, rescission and termination of agreements shall be processed, intervened and distributed in the same manner as original agreements.

### III.

The three allegations of error of the Municipality are summarized in that the TPI should not have issued a summary judgment because there was substantial controversy over the certification of invoices by an authorized representative of the Municipality. According to the outlined legal framework, having analyzed the facts of the case, we conclude that the Municipality is not corect, therefore, the TPI did not err in issuing the summary judgment appealed herein.

The Municipality's main allegation is that it was not appropriate to issue a summary judgment in favor of Octagon, for two alternative reasons:

1. The debt was not proven because the invoices were not certified by an authorized representative of the Municipality, as required by the applicable regulations and the agreement between the parties.

**\*11** 2. The absence of the aforementioned certifications generates a controversy of substantial facts that prevents the case from being summarily disposed of.

Neither of the reasons outlined is correct.

First, the file incontrovertibly shows that the agrements between Octagon and the Municipality complied with applicable regulations, that is: they were made in writing; a record was kept guaranteeing the existence of the contract; they were

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**Octagon Consultant Group, Corp. v. Municipio De Toa Baja, 2019 WL 4417472 (2019)**

registered with the Comptroller's Office; and the temporal certainty of the agreement was accredited. *Vicar Builders v. ELA*, supra, at 263–264; *Cordero Vélez v. Mun. Guánica*, supra, at 248–249.

Secondly, the Autonomous Municipalities Act does not require what the Municipality proposes, since the law delegates to municipalities, not the contractors, the internal accounting controls that guarantee proper treasury disbursements to make its purchases and pay its contractual obligations. 21 LPRA secs. 4355 and 4360. Regarding its agreements with the Municipality, Octagon proved that it rendered its services, submitted the invoices and attempted to collect on these, yet the Municipality failed to pay Octagon the invoices in full. Furthermore, according to the president of Octagon, in his collection efforts with four other Accounts Payable or Finance representatives of the Municipality, in addition to Ms. Rebecca Rivera Torres, he was never told that his bills were not certified or approved for payment, or lacked any requirement to order payment.[13]

Thirdly, from the sworn statement of the president of Octagon, authorized representative of the Municipality Rebecca Rivera Torres, Director or person in charge of the Municipality's Planning Department, was the person authorized by the Mayor to certify and approve work and order the payment of invoices, and in effect, it was she who certified, approved and ordered the payment of Octagon's invoices.[14]

Finally, the Municipality's motion for summary judgment lacks any exhibits or sworn statement to support its petition. On the contrary, Octagon not only refuted the Municipality's summary request, but also provided a Sworn Statement by its president and documentation that, although provided to oppose the issuance of a summary judgment in favor of the Municipality, supported the granting of summary judgment in favor of Octagon. Let it be understood that Octagon was able to establish that it had the right to collect a total sum of $87,940 for services rendered, invoiced and approved, in favor of the Municipality, by virtue of and in accordance with the Professional Service Agreements made between the parties between September 2015 and November 2016. Therefore, affirmance of the summary opinion under review is warranted.

**IV.**

By virtue of the legal grounds stated above, the Summary Judgment appealed from is hereby affirmed.
The Court so agrees, and so certifies the Clerk.
**\*12** Lillia M. Oquendo Solis, Esq.
Clerk of the Court of Appeals

Footnotes

1. Appeal Appendix, at 53-64; Octagon's Brief, Appendix, at 1011.
2. Appeal Appendix, at 42-48.
3. Appendix to Octagon's Brief, at 1011.
4. Id., at 991-1025.
5. Id., at 1009-1012.
6. Appeal Appendix, at 7-23.
7. See Findings of Fact 5, 11, 17, 23, 37, 43 and 49.
8. See Findings of Fact 5, 11, 17, 23, 37, 43 and 49.
9. It is an invoice for $6,500 for an appraisal made on September 30, 2016, and two invoices for $4,500 and $9,000, for appraisals made on September 26, 2016; Apeal Appendix, at 21-22.
10. Appeal Appendix, at 21-23.
11. Id., at 20-21.
12. Id., at 1-6.
13. Appendix to Octagon's Brief, at 1011.
14. Id., at 1009-1012.

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.