UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

-----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD IN CONNECTION WITH SEPTEMBER 16–17, 2020 OMNIBUS HEARING**

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the September 16–17, 2020 omnibus hearing and in response to this Court's order, dated September 10, 2020 [ECF No. 14202].

### I. General Status and Activities of the Oversight Board

1. The Oversight Board and the government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus, while also slowly and prudently reopening critical businesses as the pandemic is controlled and providing the people of Puerto Rico with ongoing reasonable, comprehensive, and sustainable solutions. To that end, as set forth in previous Status Reports, the Oversight Board and Government created a $787 million Emergency Measure Support Package, in addition to other emergency measures. The Oversight Board has worked closely with the Government to define how to spend this nearly $1 billion in emergency funding, with a clear focus on responding to and managing the ongoing pandemic. The Oversight Board has also granted access to emergency funds in response to tropical storms Isaiah and Laura.

2. Previously, the Oversight Board filed a complaint seeking information it was entitled to under PROMESA related to contracts the Commonwealth had entered into for the purchase of COVID-19 testing equipment and other medical supplies. On July 24, 2020, the Oversight Board voluntarily dismissed its complaint after receiving documents relating to the process for procurement of these supplies from the Government. The Oversight Board is now analyzing the Government's procurement practices with the goal of identifying effective mechanisms to improve the process, if necessary.

### II. General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments

3. As noted above, the Oversight Board agrees with Governor Wanda Vázquez Garced that the health, safety, and economic welfare of the people of Puerto Rico must be the

number one priority. Consistent with this objective, the Oversight Board has accommodated some of the Government's outstanding obligations, by granting extensions pertaining to fiscal plans and budgets for the Government and certain governmental entities, and acceded to certain requests for additional financing being available or reapportioned. Despite the litigation referenced above, the relationship between the Oversight Board and the Government continues to be collaborative.

4. The Oversight Board has also been developing a plan to inform and support economic development, in particular in the pharmaceutical and medical device sectors in light of post-COVID-19 supply chain concerns in the U.S. Congress. That plan has been completed and shared broadly with the Puerto Rico government, the executive and legislative branches of the federal government, and certain commercial stakeholders. Numerous pieces of draft federal legislation are under discussion, and the goal of the Oversight Board is to ensure all understand how or if the proposed legislation would impact Puerto Rico's economic development, including investment into and creation of jobs on the Island.

5. Additionally, the Oversight Board has been particularly focused on ensuring sufficient funding as required for public education and voting, in light of the impact of COVID-19. Although funds have been budgeted to enable all students to have laptops, distance learning has not yet been fully implemented. The Oversight Board is concerned that the fiduciary agent required by the United States Department of Education has not yet been contracted, putting at risk the potential timing of federal education receipts, critical especially for programs such as Special Education. In addition, as the Court is likely aware, primary elections were held in early August, although certain complications required the primaries be resumed on a second day. The Oversight Board has assured the necessary funding for the General Elections and the Plebiscite scheduled to

be held on November 3, in accordance with PROMESA and in the absence of any federal funding for the latter.

6. The Oversight Board also remains focused on the implementation of the Commonwealth's Fiscal Plan. However, challenges to full implementation of the Fiscal Plan continue, including attempts to reverse consolidation of certain agencies, and to unfreeze or even increase certain pension benefits and liabilities. In addition, the Oversight Board and Hacienda have not yet reached agreement on a timetable for the completion of delayed comprehensive annual financial reports ("CAFRs"), although the Oversight Board has accelerated the process and has received a CAFR for fiscal year 2017.

### III. General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters

7. As the Court is aware, the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order") was entered on March 12, 2020, and the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order") was entered on April 1, 2020.

8. To date, the Debtors have filed two notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), the *First Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 13603] (the "First ACR Notice") and the *Second Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14182] (the "Second ACR Notice"). The First ACR Notice and the Second ACR Notice transferred 1,000 claims (the "First ACR Designated Claims") and 2,500 claims (the "Second ACR Designated Claims"), respectively, into Administrative Claims Reconciliation. Both the First ACR

4

Designated Claims and the Second ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures (as defined in the ACR Order).

9. The Debtors' first Administrative Reconciliation Status Notice (as defined in the ACR Order) is due to the Court on October 8, 2020, and the Debtors shall provide the Court with a detailed update on the First ACR Designated Claims and the Second ACR Designated Claims at that time. The Debtors have made substantial progress in resolving the First ACR Designated Claims, and anticipate they will be able to report that hundreds of such claims have been successfully resolved. Further, the Debtors anticipate that, in the coming weeks, each of the Second ACR Designated Claims will receive a mailing from ERS, the agency responsible for processing the Second ACR Designated Claims, which will initiate the Pension/Retiree Procedures with respect to such claims. In addition, the Debtors' third ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on November 6, 2020. The Debtors anticipate transferring additional claims into Administrative Claims Reconciliation at that time.

10. To date, the Debtors have filed two notices transferring claims into the ADR Procedures (as defined in the ADR Order), the *First Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 13609] (the "First ADR Notice") and the *Second Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14090] (the "Second ADR Notice"). The First ADR Notice and the Second ADR Notice transferred 21 claims (the "First ADR Designated Claims") and 6 claims (the "Second ADR Designated Claims"), respectively, into the ADR Procedures.

11. As noted in the *First Alternative Dispute Resolution Status Notice* [ECF No. 14185-1] (the "First ADR Status Notice"), the First ADR Designated Claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures. Offer letters were sent to

5

the address of record for each of the First ADR Designated Claims on September 8, 2020. The Debtors are currently preparing offers for the Second ADR Designated Claims, and anticipate sending offer letters to such claimants no later than October 23, 2020. In addition, the Debtors' third ADR Transfer Notice (as defined in the ADR Order) is scheduled to be filed on October 8, 2020, and the Debtors anticipate transferring additional claims into the ADR Procedures at that time.

12. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors conservatively estimate that the maximum number of claims that might be transferred into the ADR Procedures is 7,000, however, the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but, the Debtors project transferring no more than a few hundred claims into the ADR Procedures during the current calendar year.

13. In addition, on August 27, 2020, the Oversight Board filed the *Informative Motion of the Financial Oversight and Management Board for Puerto Rico Regarding the Selection of Alternative Dispute Resolution Service Providers* [ECF No. 14121] (the "Arbitration Provider Notice"), informing the Court and other parties in interest of its intention to select both JAMS and the American Arbitration Association ("AAA") as providers of arbitration services in connection with the Binding Arbitration (as defined in the ADR Order) phase of the ADR Procedures. Paragraph 5(c) of the ADR Procedures provides any party in interest who objects to the independence or qualifications of JAMS or AAA must file a written notice of such objection within fourteen (14) days of the filing of the Arbitration Provider Notice, or September 10, 2020. No

objections were received by that deadline. Accordingly, subject to definitive documentation, the Oversight Board shall proceed to engage both JAMS and AAA as providers of arbitration services.

### IV. Claims Resolution Process

14. The Court has also requested the Oversight Board address its plan for the presentation of pending omnibus objections in light of the pandemic restrictions on courthouse operations and the possible need for use of interpreters. As a result of the restrictions on courthouse operations, the Debtors have filed multiple notices adjourning hearings on pending omnibus objections to claims (the "Objections").[2] *See, e.g.*, ECF Nos. 12750, 13232, 13702, 14138. Accordingly, over one hundred sixty omnibus objections to claims, affecting over 60,000 claimants, remain pending before the Court and are scheduled to be heard at the October 28, 2020 omnibus hearing (the "October Hearing"). In addition, on September 11, 2020, the Debtors filed an additional seventeen omnibus objections, covering 637 claims, and noticed them for hearing at the October Hearing.

15. The Debtors propose to establish a satellite hearing location at the Prime Clerk collection center located at Citi Towers, 250 Ponce de León Ave., Suite 503, Hato Rey, San Juan, PR 00918, at which claimants who responded to the Objections may be permitted to appear and speak at a hearing. This satellite site will comply with all locally-imposed requirements for protecting the health and safety of visitors to the site, including social distancing requirements and the wearing of masks. With the Court's approval, this satellite site would provide a telephone line capable of dialing in to the omnibus hearing via the Court Solutions platform. Claimants, along with their interpreters, may appear and be heard in person using this telephonic line. A video

---

[2] The Objections are identified in Appendix A to the *Notice of Adjournment of Omnibus Objections Scheduled for Hearing at the September 16, 2020 Omnibus Hearing to the October 28, 2020 Omnibus Hearing* [ECF No. 14138].

7

uplink may also be provided if desirable. While claimants and their interpreters are awaiting their opportunity to speak, they will be able to wait outside, in the open air, which will minimize the risk of transmission of the coronavirus. Consistent with the Court's prior orders, the Oversight Board will also make an interpreter available at the satellite site. Claimants and their interpreters may be called into the facility in small numbers, so that the facility can comply with any capacity restrictions in place at the time of the October Hearing.

16. Given the large number of pending Objections, the Debtors appreciate that a large number of claimants and their interpreters may wish to appear at the satellite site. To reduce the potential for overcrowding at the site, the Debtors propose the Objections be heard over the course of several days. The Debtors would propose the omnibus objections be heard in the afternoon of the October Hearing, and be scheduled to continue, in batches, on the Thursday and Friday following the October Hearing, October 29 and October 30.

**V.  PRIDCO's RSA and Anticipated Title VI Filing**

17. The Oversight Board has certified a fiscal plan and fiscal year 2021 budget for PRIDCO. The fiscal plan and budget have established priorities for PRIDCO that include, among other requirements, conducting a reserve study, establishing a capital expenditure reserve fund, providing incentives for increased capital expenditure authority, and conducting feasibility studies for implementing alternative operating strategies. The Oversight Board's professionals and PRIDCO are having discussions over open issues identified in the fiscal plan. It is the view of the Oversight Board that, once PRIDCO has a better understanding of the condition of its portfolio, its needs for investing in capital expenditures over the life of its portfolio, and impacts on occupancy, PRIDCO will be in a better position to make financial and strategic decisions for the portfolio and a restructuring of PRIDCO's indebtedness.

18. PRIDCO has public bonds in the outstanding principal amount of approximately $150 million and $15 million in interest accrued thereon. AAFAF previously informed the Court and the Oversight Board that AAFAF had entered into a restructuring support agreement (an "RSA") with over two-thirds of those bondholders. As of the date hereof, AAFAF has not proposed the RSA as a Qualifying Modification to the Oversight Board.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: September 15, 2020<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Martin J. Bienenstock*<br><br>Martin J. Bienenstock (*pro hac vice*)<br>Brian S. Rosen (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>        brosen@proskauer.com<br>        ppossinger@proskauer.com<br>        ebarak@proskauer.com<br><br>-and-<br><br>*/s/ Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br><br>*/s/ Ubaldo M. Fernández*<br>Ubaldo M. Fernández<br>USDC No. 224807<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Attorneys for the Financial Oversight and Management Board as Representative of the Debtor* |