## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

**RESPONDENTS' OPPOSITION TO UCC'S URGENT OBJECTION TO MAGISTRATE JUDGE'S SEPTEMBER 5, 2020 ORDER ON MOTION TO COMPEL DISCOVERY IN CONNECTION WITH MOTION TO TERMINATE BANKRUPTCY <u>RULE 9019 MOTION</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 4

STANDARD OF REVIEW ..................................................................................... 6

ARGUMENT ......................................................................................................... 7

    I.     JUDGE DEIN CORRECTLY FOUND THAT THE PROPOSED
          DISCOVERY IS OF MINIMAL RELEVANCE AND
          DISPROPORTIONATE TO THE NEEDS OF THE CASE ................................ 7

    II.    THE UCC'S DISCOVERY REQUESTS ARE ALSO IMPROPER
          BECAUSE THE INFORMATION SOUGHT IS PRIVILEGED ...................... 10

          A.     The UCC's Requests Seek Information Protected by the Attorney-
                  Client and Work-Product Privileges. ....................................................... 11

          B.     The Deliberative Process Privilege Precludes the UCC's Demand
                  for Discovery into the Government Parties' Ongoing Decision-
                  Making Process. ..................................................................................... 12

CONCLUSION .................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Blattman v. Scaramellino*,
891 F.3d 1 (1st Cir. 2018) ................................................................................ 11

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
2007 WL 9702475 (S.D. Fla. Apr. 17, 2007) ................................................. 11

*Caparrós v. Lynch*,
2017 U.S. Dist. LEXIS 109041 (D.P.R. June 15, 2017) ................................. 14

*Casas Office Machines, Inc. v. Mita Copystar Machines, Inc.*,
847 F. Supp. 981 (D.P.R. 1993) ..................................................................... 10

*Cavallaro v. United States*,
284 F.3d 236 (1st Cir. 2002) .......................................................................... 11

*DOI v. Klamath Water Users Prot. Ass'n*,
532 U.S. 1 (2001) ............................................................................................ 12

*F.T.C. v. Lonning*,
539 F.2d 202 (D.C. Cir. 1976) ......................................................................... 7

*FERC v. Silkman*,
2017 WL 6597510 (D. Me. Dec. 26, 2017) ..................................................... 7

*Hoover Universal, Inc. v. Graham Packaging Corp.*,
1996 WL 907737 (C.D. Cal. Dec. 17, 1996) ................................................. 11

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
2019 WL 4723730 (D.P.R. July 29, 2019) ....................................................... 8

*In re McVane*,
44 F.3d 1127 (2d Cir. 1995) ............................................................................. 7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
254 F.R.D. 35 (D. Mass. 2008) ...................................................................... 14

*In re Subpoena Duces Tecum Served on Office of Comptroller of
Currency*,
145 F.3d 1422 (D.C. Cir. 1998) ..................................................................... 14

*Lee v. United States*,
2016 WL 4521675 (D. Nev. Aug. 29, 2016) .................................................... 7

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ........................................................................... 12, 14, 15

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*,
  349 F. Supp. 3d 282 (S.D.N.Y. 2018) ......................................................................... 7

*Sleeper Farms v. Agway, Inc.*,
  506 F.3d 98 (1st Cir. 2007)......................................................................................... 11

*State of Maine v. U.S. Dep't of Interior*,
  298 F.3d 60 (1st Cir. 2002)......................................................................................... 11

*Town of Norfolk v. U.S. Army Corps of Eng'rs*,
  968 F.2d 1438 (1st Cir. 1992)..................................................................................... 13

*Velazquez v. City of Chicopee*,
  226 F.R.D. 31 (D. Mass. 2004).................................................................................... 14

*Williams v. City of Boston*,
  213 F.R.D. 99 (D. Mass. 2003).................................................................................... 14

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................................... 7

Fed. R. Civ. P. 26(c)(1)(A) ............................................................................................. 7

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Puerto Rico Electric Power Authority ("PREPA"), by and through the Oversight Board, as PREPA's representative pursuant to section 315(b) of PROMESA, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with PREPA and the Oversight Board, the "Government Parties"), as PREPA's representative pursuant to Act 2-2017, Ankura Consulting Group, LLC ("Ankura"), Citigroup Global Markets Inc. ("Citi," and together with Ankura, the "Consultants"), David Skeel, and Jose Ortiz (collectively, the "Respondents") respectfully submit this opposition to the Official Committee of Unsecured Creditors' ("UCC" or "Committee") *Urgent Objection to Magistrate Judge's September 5, 2020 Order on Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* (ECF 2184)[2] ("Objection"). For the reasons below, Respondents respectfully request that the Objection be overruled.

## INTRODUCTION

1.    The Court appropriately exercised its discretion to grant the Government Parties' request to adjourn the hearing and related deadlines associated with the 9019 Motion to permit the Government Parties to focus their attention on the public health crisis and afford them the opportunity to evaluate the RSA in light of the changing economic landscape. While the UCC did not originally oppose the adjournment, the UCC is now improperly using the delay to collaterally attack the 9019 Motion in its Motion to Dismiss.[3] In connection with that motion, the UCC seeks a host of discovery from the Government Parties and their Consultants, despite the fact that such discovery, if allowed, would disrupt and prejudice the Government Parties' ongoing evaluation of

---

[2] Unless otherwise specified, "ECF _" refers to electronic case filings in Case No. 17-04780 (D.P.R.).

[3] Capitalized terms not otherwise defined have the meaning ascribed in the *Order on Motion to Compel* ("Order"), ECF 2177.

the RSA.  More specifically, the UCC seeks depositions of an Oversight Board member and of PREPA's former executive director, as well as document productions from four different entities of their communications regarding the Government Parties' litigation strategy on the 9019 Motion and their pre-decisional, ongoing deliberations with respect to the RSA.  The UCC claims this discovery will settle a question of fact, but there is no dispute that the RSA remains in effect.  As this Court recognized, the UCC's wasteful litigation tactics—for which Puerto Rico's taxpayers pay the price—need to be curtailed.  *See* ECF No. 2189 (adjourning hearing on Motion to Dismiss pursuant to the Court's inherent authority to manage its proceedings because it would be "inappropriate, inefficient, and wasteful to proceed to a hearing . . . the week before the September report is due.").

2.      Magistrate Judge Dein rightly found that the discovery demanded by the UCC was disproportionate to the needs of the case given its marginal relevance.  *See* Order at 4-6 (ECF 2177).  In doing so, Judge Dein agreed with the Government Parties that "the RSA's status is not a matter of opinion or a subject of inquiry, it is an objective fact and, by its terms, the RSA remains in effect unless and until a termination right is exercised."  *Id.* at 5.  The Court also rightly recognized (while declining to address the arguments) that much of the communications the UCC requested would be privileged.  *Id.* at 6.  Far from "clearly erroneous or contrary to law," Judge Dein's order was manifestly correct and consistent with this Court's own rulings.  The UCC's objection should therefore be overruled.

3.      *First*, Judge Dein correctly determined that the discovery the UCC seeks is of minimal relevance and imposes a burden that is disproportionate to the needs of the case.  As Judge Dein found, the UCC "does not allege that the RSA expired by its own terms" and "does not dispute the fact that contractual termination of the RSA can only be achieved by resolution, and

2

no such resolution has been made," and therefore "[i]ndividuals' opinions are of minimal probative value as to whether the Government Parties have made a decision to abandon the RSA or not prosecute the 9019 Motion."  Order at 5.  Moreover, as Judge Dein recognized, if the UCC is permitted to proceed with the Motion to Dismiss on an implied abandonment theory (and the UCC should not be so permitted[4]), "there is sufficient information in the record already to enable the UCC to present the argument to the Court."  *Id.*  Specifically, while the UCC contends that it needs discovery into the accuracy of the Government Parties' status reports, Judge Dein properly recognized that the public statements the UCC relies upon are consistent with the status reports. *Id.* at 5 ("[I]n the status reports the Government Parties acknowledge that they are still evaluating the viability of the RSA and that they may not be presenting it to the Court for hearing in its present form.").  Under these circumstances, Judge Dein's factual determination that "even the UCC's narrowed discovery requests are disproportionate given the minimal relevance of the information it seeks to the Motion to Dismiss" was not clearly erroneous or contrary to law.  *Id.* at 6.

4.     *Second*, while Judge Dein did not reach the Government Parties' privilege arguments, this Court may overrule the UCC's Objection on the independent basis that the materials the UCC seeks are overwhelmingly protected from disclosure by the attorney-client privilege and attorney work product doctrine.  Any communications by or with anyone with decision-making authority regarding the RSA or litigation of the 9019 Motion are highly likely to be with counsel or reflect counsel's advice and litigation strategy or settlement negotiations.  To the extent any responsive communications exist that would not be protected by the attorney-client or attorney work product privileges, these materials would nevertheless be protected from

---

[4] There has been no implied abandonment.  The RSA has not been terminated and the Government Parties continue to evaluate to what extent, if any, the RSA may need to be amended.  *See* ECF 2165, § I.

disclosure by the deliberative process privilege.  The Government Parties' ongoing policy deliberations regarding how to proceed with PREPA's RSA and overall restructuring given the ongoing COVID-19 pandemic should not be turned into litigation fodder, at the expense of the people of Puerto Rico.

### BACKGROUND

5.       The litigation history regarding the Adjournment Order and the UCC's objection to the status reports the Government Parties submitted thereto is set forth more fully in the briefing on the UCC's motion to dismiss.  ECF 2164, ¶¶ 6-14.  The UCC's discovery demands are simply the latest iteration of its continued disregard for this Court's orders and wasteful litigation tactics in opposing the RSA.

6.       On August 19, 2020, the day after the UCC filed its Motion to Dismiss, the UCC transmitted document production requests and deposition notices to counsel for PREPA and the Oversight Board.  The UCC directed the following broad document request to both PREPA and the Oversight Board:

> All documents and communications from March 1, 2020 to present relating to the RSA and/or the 9019 Motion, including without limitation documents relating to the status of the RSA and/or the 9019 Motion (including any adjournment of the 9019 Motion), whether the RSA remains viable in its current form, and/or whether the RSA may be renegotiated by the parties.

Obj., Exs. 2-3.  The UCC also noticed 30(b)(6) depositions for PREPA and the Oversight Board for September 7, 2020, and September 8, 2020, respectively, seeking testimony regarding the documents produced in response to the UCC's document request, and "[t]he RSA and/or the 9019 Motion, including without limitation the status of the RSA and/or the 9019 Motion (including any adjournment of the 9019 Motion), whether the RSA remains viable in its current form, and/or whether the RSA may be renegotiated by the parties."  Obj., Exs. 4-5.  The UCC transmitted a deposition notice for David Skeel, a member of the Oversight Board, and a deposition subpoena

for Jose Ortiz, PREPA's former Executive Director, seeking their individual depositions on September 9, 2020, and September 10, 2020 respectively.  Obj., Exs. 6-7.  The UCC transmitted document subpoenas to Ankura and Citi, on August 23 and 24, 2020, respectively, with the same request the UCC had directed to PREPA and the Oversight Board.  Obj. Exs. 8-9.

7.      The UCC filed the Motion to Compel on August 28, 2020 (ECF 2155).  The Motion to Compel for the first time waived the UCC's request for 30(b)(6) depositions, but nonetheless sought an order compelling document discovery from the Government Parties and the Consultants and deposition testimony from Jose Ortiz and David Skeel.  *See generally* Motion to Compel.

8.      After briefing, on September 5, 2020, Judge Dein denied the Motion to Compel in its entirety.  Order, ECF 2177.  Judge Dein explained that the UCC's requested discovery, which consisted of communications and testimony from individuals regarding their views of the viability of the RSA, was "of minimal probative value as to whether the Government Parties have made a decision to abandon the RSA or not to prosecute the 9019 Motion," particularly since the UCC "does not dispute the fact that contractual termination of the RSA can only be achieved by resolution, and no such resolution has been made."  *Id.* at 5.

9.      The discovery sought by the UCC was not relevant to the Motion to Dismiss because "the RSA's status is not a matter of opinion or a subject of inquiry, it is an objective fact." *Id.* Judge Dein therefore concluded the discovery sought "will not address the critical question of whether the Government Parties have abandoned the RSA."  *Id.*  Judge Dein also explained that, if the UCC were permitted to proceed on a theory that the Government Parties had impliedly abandoned the 9019 Motion, the UCC already had sufficient information in the record including the status reports to present its arguments.  *Id.*  Accordingly, Judge Dein concluded that "even the UCC's narrowed discovery requests are disproportionate given the minimal relevance of the

information it seeks to the Motion to Dismiss." *Id.* at 6.

10.    The Order also expressed Judge Dein's "belie[f] that much of the communications requested by the UCC may be protected from disclosure by the attorney-client privilege, the work product privilege, and/or the deliberative process privilege," *id.*, but Judge Dein declined to address the privilege arguments in light of the conclusion that the discovery was disproportionate to the needs of the case.

11.    On September 10, 2020, the Committee filed the instant Objection.  On September 11, 2020, the Court continued the hearing on the Committee's Motion to Dismiss, observing that the Committee's decision to notice the hearing prior to the Government Parties submitting their September 25, 2020 status report was "inappropriate, inefficient, and wasteful."  ECF 2189.

## STANDARD OF REVIEW

12.    "Upon review of a timely objection to a non-dispositive order issued by a magistrate judge, the district judge to whom the case is assigned must consider the objection and modify or set aside any part of the order that 'is clearly erroneous or contrary to law.'"  ECF 1652, at 8 (Oct. 10, 2019) (Swain, J.) (citation omitted) (overruling UCC's objection to Judge Dein's order denying UCC motion to compel discovery in connection with the 9019 Motion).  "Under the 'clearly erroneous' standard, the reviewing court 'must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [it] form[s] a strong, unyielding belief that a mistake has been made.'"  *Id.* (citation omitted).  "A magistrate judge's rulings will be reviewed under the 'contrary to law' standard when the motion 'turns on a pure question of law.'"  *Id.* at 9 (citation omitted).  "Mixed questions of law and fact trigger a sliding scale of review pursuant to which: [t]he more fact intensive the question, the more deferential the level of review (though never more deferential than the 'clear error' standard); the more law intensive the question, the less deferential the level of review."  *Id.* (citation omitted).

13.     The UCC incorrectly argues *de novo* review is merited here.  ECF No. 2184, ¶ 14. But a determination that discovery is not relevant, or is disproportional to the needs of the case given marginal relevance, is a factual, not legal, question and is therefore subject to highly deferential review under the "clearly erroneous" standard.  *See In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) ("[I]f the district court concludes that the information sought . . . is relevant, we will affirm unless that determination is clearly erroneous."); *F.T.C. v. Lonning*, 539 F.2d 202, 210 n.14 (D.C. Cir. 1976) ("A finding by the district court that documents are relevant . . . is essentially factual in nature and cannot be overturned unless the district court's finding is clearly erroneous."); *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 349 F. Supp. 3d 282, 287 (S.D.N.Y. 2018) (reviewing an objection to the magistrate judge's order resolving a discovery issue on proportionality grounds for clear error); *Lee v. United States*, 2016 WL 4521675, at *4 (D. Nev. Aug. 29, 2016) (reviewing an objection to the magistrate judge's order resolving a discovery issue on proportionality and relevance grounds for clear error).

## **ARGUMENT**

## I.    **JUDGE DEIN CORRECTLY FOUND THAT THE PROPOSED DISCOVERY IS OF MINIMAL RELEVANCE AND DISPROPORTIONATE TO THE NEEDS OF THE CASE**

14.     Discovery is permissible only if it is relevant to any party's claim or defense and is proportional to the needs of the case after considering the burden or expense of the proposed discovery. Fed. R. Civ. P. 26(b)(1) (made applicable to this proceeding by Fed. R. Bankr. P. 7026 and 9014).  A party seeking discovery under FRCP 26 must "adequately explain[] the ways in which the underlying information bears on the issues." *FERC v. Silkman*, 2017 WL 6597510 (D. Me. Dec. 26, 2017) (overruling objection to magistrate judge order denying discovery on proportionality grounds).  Where, as here, a party seeks to take discovery that is of limited probative value relative to the burden it imposes, "[t]he court may, for good cause, issue an order

to protect a party or person from . . . [that] undue burden or expense . . . [including] forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A); *see also In re Fin. Oversight & Mgmt. Bd. for P.R.*, 2019 WL 4723730, at *2 (D.P.R. July 29, 2019) (granting protective order to preclude deposition in part because probative value "is substantially outweighed by the prospect of multiplication of the 9019 Motion proceedings") (Swain, J.); *see also* ECF 1652 (Swain, J.) (overruling UCC objection to order denying UCC motion to compel discovery that was beyond the scope of the issues before the court); Case No. 17-03283, ECF 12080 (D.P.R. Mar. 5, 2020) (Dein, J.) (denying motion to compel production of email communication on relevance grounds); ECF 2014 (May 27, 2020) (sustaining PREPA's objections to discovery requests as unnecessary to litigate the motion before the court).

15.    Here, Judge Dein held that because the RSA exists as an "objective fact" and has not been terminated, the UCC's requests for production of communications and deposition testimony from multiple witnesses regarding one-off statements from individuals made about the future viability of the RSA are not relevant to the Motion to Dismiss. Order at 5. Those opinions, Judge Dein held, would not be probative as to whether the Government Parties made a final decision to abandon the RSA or the 9019 Motion. *Id.* This factual determination was not in error— it was manifestly consistent with this Court's own exercise of its discretion to streamline these proceedings and efficiently manage the Court and the parties' resources. This Court has already recognized the need to rein in "inappropriate, inefficient, and wasteful" litigation when declining to hold a hearing on the Motion to Dismiss a week before the Government Parties' September status report is due. ECF No. 2189.

16.    The UCC's challenges to Judge Dein's Order are without merit. First, the UCC suggests that Judge Dein's ruling allows the Government Parties to "hide behind 'empty

formalism'" to the extent the Order held that individuals' views of the RSA are not relevant.  Obj.
¶ 16.  But the legal requirement that the governing bodies for the Oversight Board, AAFAF, and
PREPA, respectively, deliberate, convene, and pass formal resolutions before making a decision
to terminate the RSA is not a mere formalism.  Rather, the requirement for a formal resolution
reflects that, by design, the Government Parties' respective governance requirements provide that
no single individual has the ability to make a decision as significant as the decision to terminate
the RSA.  Judge Dein was therefore correct in holding that one-off statements made by individuals
are not probative of whether any of the Government Parties had made a final decision as to how
to proceed with the RSA.

17.     Second, the UCC argues that it is not "merely seeking the 'opinions' or views of
particular individuals within PREPA or the Oversight Board as to the RSA and the Rule 9019
Motion," but rather is seeking "evidence of an actual determination" that the RSA or 9019 Motion
will not be pursued.  *Id.* ¶ 17.  The UCC points out that it has chosen "high-ranking officials" as
custodians, *id.* ¶ 18, and hypothesizes that discovery could provide "statements in communications
by or among Oversight Board members, minutes of board meetings, or internal memoranda," *id.*
¶ 17.  But as just explained, the only way the Government Parties could reach an actual
determination not to proceed with the RSA would be through a governing board resolution.  The
UCC does not contend that the individual custodians had the ability to make a final decision
regarding the viability of the RSA.  And any "statements in communications," "minutes of board
meetings," or "internal memoranda," *id.*, would simply be opinions or recommendations, given
that no final decision on the issue has occurred.

18.     Finally, the UCC disputes Judge Dein's determination that the UCC has sufficient
public statements by the Government Parties to present its legal arguments to the Court in

connection with its Motion to Dismiss, arguing (a) "[t]he Committee has received no discovery at all to date," (b) the UCC should not "be forced to rely solely on the self-serving statements in [the Government Parties'] status reports," *id.* ¶ 19, and (c) Judge Dein did not allow discovery into the "accuracy" of the status reports, *id.* ¶ 20.  But as Judge Dein recognized, the public statements cited by the UCC are entirely consistent with the Government Parties' statements that deliberations regarding the viability of the RSA are ongoing.  Order at 5.  Moreover, as this Court recognized in denying the UCC's lift stay motion (Case No 17-3283, ECF 13726), many variables, including "the ongoing and potential future further effects of COVID-19, hurricanes, drought, earthquakes, membership turnover on the Oversight Board, political change within the Commonwealth, and unforeseen future events" can extend the timetable on reaching a global resolution of these cases. Tr. at 80:20-81:4, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, Case No. 17-3283 (D.P.R. Sept. 17, 2020).  In these circumstances, it is hardly surprising that the Government Parties are continuing to consider the RSA and the best path forward for PREPA.   Accordingly, the Court correctly held that discovery for the purpose of second-guessing those statements would be disproportionate and unnecessary.

## II.    THE UCC'S DISCOVERY REQUESTS ARE ALSO IMPROPER BECAUSE THE INFORMATION SOUGHT IS PRIVILEGED

19.    Judge Dein did not rule on the Government Parties' privilege arguments, choosing instead to deny the Motion to Compel on grounds of relevance and proportionality.  However, Judge Dein's order could be affirmed on the independent basis that the discovery requested by the UCC is almost entirely privileged.[5]

---

[5] The UCC does not present a standalone privilege argument in its objection, choosing instead to incorporate its briefing before Judge Dein on the Motion to Compel.  Obj. ¶ 21 (stating the UCC "incorporates by reference the arguments made in the Motion to Compel and the Reply").  The UCC's method of "incorporating by reference" is improper and this Court should disregard all arguments not substantively addressed within the objection itself. *See, e.g., Casas Office Machines, Inc. v. Mita Copystar Machines, Inc.*, 847 F. Supp. 981, 985 (D.P.R. 1993) ("In [defendant's] objection to [the Magistrate Judge's] finding, it merely stated that it 'incorporates and restates by

10

## A.     The UCC's Requests Seek Information Protected by the Attorney-Client and Work-Product Privileges.

20.     The attorney-client privilege safeguards communications between attorney and client that are confidential and that are made for the purpose of seeking or receiving legal advice. *Blattman v. Scaramellino*, 891 F.3d 1, 4 (1st Cir. 2018).  As this Court has recognized, the privilege does not only cover communications with attorneys, but also covers "all the persons who act as the attorney's agents" in communicating legal advice.   Case No. 17-03566, ECF 605, at 22 (quoting *Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002)).   The work product privilege protects from disclosure communications prepared by attorneys in anticipation of litigation.  *State of Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 66 (1st Cir. 2002).

21.     The UCC is not entitled to discovery into the Government Parties' communications as to how to proceed with the 9019 Motion, which is an ongoing contested matter.  *See Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 2007 WL 9702475, at *3 (S.D. Fla. Apr. 17, 2007) ("[P]rivileges are not waived with respect to litigation strategy, and discovery will not be permitted with regard to trial strategy."); *Hoover Universal, Inc. v. Graham Packaging Corp.*, 1996 WL 907737, at *1 (C.D. Cal. Dec. 17, 1996) (to same effect).  Similarly, to the extent there have been communications among the Government Parties and their outside counsel and financial advisors regarding the current status of the RSA, such communications are overwhelmingly likely to reflect the exchange of legal advice.

22.     The UCC argues that the Government Parties should be required to produce such communications despite their privileged nature because the Government Parties previously

reference all of the arguments contained in its Memorandum of Law . . . and its Reply . . . . This 'objection' fails to rise to the standard necessary for an objection."), *vacated on other grounds*, 42 F.3d 668 (1st Cir. 1994); *see also Sleeper Farms v. Agway, Inc.*, 506 F.3d 98, 104 (1st Cir. 2007) ("[The plaintiffs] purport to 'incorporate[ ] by reference' their motion before the district court. That is not acceptable: this court will only consider arguments made before this court; everything else is deemed forfeited.").

produced documents regarding the RSA during the May through October 2019 fact discovery period.  Motion to Compel ¶ 4; Reply Brief ¶ 12 (ECF 2173).  The UCC is flat wrong.  This Court recognized the Government Parties' right to withhold privileged documents concerning the RSA negotiations, including by holding the Government Parties were only required to produce negotiation communications with counterparties before they reached an agreement and a common interest privilege attached.  ECF 1652, at 20-22 (Swain, J.) (denying UCC's objection to Magistrate Judge's order denying motion to compel production of common-interest communications).  The Government Parties were ***never*** required to produce the kind of privileged, post-agreement communications reflecting legal advice or litigation strategy the UCC demands here.  *Id.*[6]

> **B.   The Deliberative Process Privilege Precludes the UCC's Demand for Discovery into the Government Parties' Ongoing Decision-Making Process.**

23.     The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."  *DOI v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 8-9 (2001)*; see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975) ("'[H]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.'" (ellipsis in original) (citation omitted)).  The deliberative process privilege applies to government communications that are both "deliberative" and "predecisional."  *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438,

---

[6] The UCC claims that it has "offered to exclude [attorney-client privileged] documents from the Government Parties' review."  Motion to Compel ¶ 23.  But even if such an exclusion could be accomplished as a practical matter, this does not address the problem with its discovery requests.  Even assuming a small set of non-attorney-client-privileged documents exists, as explained below, those documents likely would be protected by the deliberative process privilege, and would be irrelevant.

1458 (1st Cir. 1992).  A communication is deliberative if it "makes recommendations or expresses opinions on legal or policy matters," and a communication is predecisional if the issue under discussion is not yet final.  *Id.*

24.     Here, the deliberative process privilege squarely applies.  No official decision has been made as to how to proceed with respect to the RSA, and the Government Parties' ongoing deliberations as to how to proceed with PREPA's restructuring in light of a global pandemic and the resultant financial impacts on the Commonwealth and PREPA is a public policy decision of the utmost importance.

25.     The UCC's arguments against application of the privilege are not persuasive.  The UCC asserts that Judge Dein has already held that "the Government Parties are not entitled [to] assert a deliberative process privilege over, and must produce, documents concerning their consideration and negotiation of the RSA."  Motion to Compel ¶ 22 (citing August 2, 2019 Order, ECF 1556).  The UCC misconstrues Judge Dein's August 2, 2019 Order.  Judge Dein never held that policy decisions related to the RSA are categorically not protected by the deliberative process privilege.  Rather, Judge Dein noted that the Oversight Board was not asserting a deliberative process privilege over the negotiation of the RSA with the supporting holders and held "[t]o the extent that AAFAF and PREPA are claiming a deliberative process privilege over the negotiation of the RSA, it is overruled."  ECF No. 1556 ¶ 7.

26.     Here, by contrast, the discovery the UCC seeks does not concern the negotiation of the RSA with third parties, but the Government Parties' ongoing internal policy deliberations regarding whether the RSA remains the best path forward for PREPA given subsequent natural disasters and an ongoing global health crisis that will continue to materially affect the Commonwealth and PREPA's operations and financial condition.  These policy decisions require

candid debate and are therefore protected from becoming litigation grist as the UCC demands.
*Sears, Roebuck & Co.*, 421 U.S. at 150.

27.     The UCC suggests the deliberative process privilege should not apply based on its
belief that a final decision has already been made and its belief that the status of the Government
Parties' deliberations is the subject of the litigation the UCC initiated.  Obj. ¶ 16; Reply ¶ 17 (ECF
2173).  The UCC cannot invade the Government Parties' deliberative process privilege by making
a groundless accusation that the Government Parties are concealing a final decision.  If that were
true, litigation adversaries could routinely circumvent the privilege under the guise of needing
discovery to test their own otherwise unfounded accusations that the deliberation had completed.[7]
Moreover, as Judge Dein found, there is no factual basis for the UCC's accusation that the
Government Parties have concealed a final decision—the UCC concedes none of the Government
Parties have issued a formal resolution, and, as explained above, the public statements the UCC
cites are entirely consistent with an ongoing debate.  *See* Order at 5.

28.     The UCC accuses the Government Parties of objecting to the attempt to invade their
ongoing deliberations because the Government Parties purportedly "***know*** harmful emails and
other messages exist in which individuals at PREPA and the Oversight Board have conceded that

---

[7] The cases the UCC cites are distinguishable because there, the final decisions had already been made, and the pre-
decisional deliberations were instructive to determine the propriety of those final decisions.  *In re Subpoena Duces
Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1423 (D.C. Cir. 1998) (fraudulent conveyance
case where final transfers had been made, and plaintiff needed to show whether the transfers were made with the
requisite intent); *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004) (civil rights case alleging that the
district attorney deliberately withheld evidence in plaintiff's trial, and district attorney trial notes were central to
showing the district attorney's intent in what evidence was provided); *Williams v. City of Boston*, 213 F.R.D. 99, 99,
102 (D. Mass. 2003) (civil rights case alleging that city mayor and others discriminated against plaintiff and retaliated
against him, and plaintiff needed to discover hearing notes to determine the reason for the retaliatory action); *Caparrós
v. Lynch*, 2017 U.S. Dist. LEXIS 109041, at *25 (D.P.R. June 15, 2017) (retaliation case where plaintiff claimed his
superiors improperly ordered an investigation into his conduct, and plaintiff needed to discover communications
regarding the decision to order that investigation); *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D.
35, 41-42 (D. Mass. 2008) (overruling deliberative process objection in qui tam action because defendant's right to
discovery regarding the extent of the government's knowledge of the alleged scheme to defraud to establish its defense
outweighed the government's privilege interest).

14

the RSA must be negotiated and cannot be implemented in its current form given the unprecedented events of the last several months and the enormous impact they have had on the Puerto Rico economy." Motion to Compel ¶ 18 (emphasis in original). For the reasons stated above, any such purportedly "harmful" communications would have no relevance whatsoever to the question of whether the 9019 Motion should be dismissed. More importantly, however, the Government Parties have every right to protect the integrity of their ongoing deliberations, whatever their content. Whatever any individuals have said, either in favor of or against continuing with the RSA, in the course of candid, ongoing debate is exactly what the deliberative process privilege protects. *Sears, Roebuck & Co.*, 421 U.S. at 150-51.

## CONCLUSION

29.     For the reasons stated above, Respondents respectfully request that this Court overrule the UCC's objection to Judge Dein's order on the UCC's Motion to Compel.

Dated:  September 18, 2020
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S. Desatnik *(pro hac vice)*
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

Jennifer L. Jones (*pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Tel: (310) 284-4509
Fax: (310) 557-2193
jljones@proskauer.com

Laura E. Stafford (*pro hac vice*)
**PROSKAUER ROSE LLP**
1 International Place
Boston, MA 02130
Tel: (617) 526-9714
Fax: (617) 526-9899
lstafford@proskauer.com

*Attorneys for the Financial Oversight and*
*Management Board as representative of the*
*Debtor, and David Skeel*

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and*
*Management Board as representative of the*
*Debtor, and David Skeel*

16

**O'MELVENY & MYERS LLP**

By: /s/ Elizabeth L. McKeen
John J. Rapisardi (*pro hac vice*)
Nancy A. Mitchell (*pro hac vice*)
Maria J. DiConza (*pro hac vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email:      jrapisardi@omm.com
            nmitchell@omm.com
            mdiconza@omm.com

Peter Friedman (*pro hac vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
Email:      pfriedman@omm.com

Elizabeth L. McKeen (*pro hac vice*)
Ashley M. Pavel (*pro hac vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
Email:      emckeen@omm.com
            apavel@omm.com

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority, Puerto Rico
Electric Power Authority, Ankura Consulting
Group, LLC, and Jose Ortiz*

**MARINI PIETRANTONI MUÑIZ LLC**

/s/ Luis C. Marini-Biaggi
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494
Email: lmarini@mpmlawpr.com

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority and Ankura
Consulting Group, LLC*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

/s/ Katiuska Bolaños
Katiuska Bolaños
USDC No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel: (787) 395-7133
Fax: (787) 497-9664
*Counsel for Puerto Rico Electric Power
Authority and Jose Ortiz*

**GOODWIN PROCTER LLP**

/s/ Meghan K. Spillane
Marshall H. Fishman (*pro hac vice*)
Meghan K. Spillane (*pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
MFishman@goodwinlaw.com
MSpillane@goodwinlaw.com
*Counsel for Citigroup Global Markets Inc.*