UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:                                                       PROMESA
                                                             Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of                                     No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO,              (Jointly Administered)
et al.,

        Debtors.[1]

-------------------------------------------------------------x

NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT

        The Court has received and reviewed the attached correspondence, described

below, from interested persons in the above-captioned cases. Although the Court cannot respond

individually to all of those who have expressed their thoughts or concerns, the Court is deeply

mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the

importance of the issues that are raised in these unprecedented cases.

    1.     Email dated September 14, 2020 from Victor Gonzalez.
    2.     Letter dated September 21, 2020 from Cate Long.


Dated: September 21, 2020

---

[1]    The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a
bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax
identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth")
(Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees
Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-
BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation
Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv)
Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last
Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case
No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority
("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

**From:** victor gonzalez ███████████████
**Sent:** Monday, September 14, 2020 7:33 PM
**To:** Swain NYSD Chambers <SwainNYSDChambers@nysd.uscourts.gov>
**Cc:** HOUSER dprc <houserdprcorresp@txnb.uscourts.gov>
**Subject:** PREPA-PR Taxpayers-Mediation

Dear Judge Laura Taylor Swain:

As another Agenda of Matters Scheduled for a Hearing is put forward, one ponders what really matters to the "spa members", surely not the Puerto Rican taxpayers footing the bill much less the Puerto Rican people anxious to move forward. It seems the only endeavor of FOMB, AAFAF and the myriad of lawyers and consultants at the trough is how many subtleties and technicalities they can come up with to keep the spa open, their image unvarnished and the paychecks coming.

As I suggested to Judge Barbara J.  Houser last week, perhaps is time to get everyone in the room with her or the other mediators and get this done.

Sincerely

Victor L. Gonzalez

San Juan, Puerto Rico

September 14, 2020



Honorable Laura Taylor Swain

Dear Judge Swain:

Congress had an opportunity to extend Chapter 9 of the Bankruptcy Code to Puerto Rico when former Resident Commissioner Pedro Pierluisi filed H.R.870, the Puerto Rico Chapter 9 Uniformity Act of 2015 in the 114th Congress (2015-2016). Although the Resident Commisioner's proposed legislation had 41 cosponsors, including then Minority Leader Nancy Pelosi, Congress chose to create a new bankruptcy framework for Puerto Rico's liabilities that included making consensual negotiations the preferred method for debt restructuring and that included many additional protections for creditors beyond those incorporated in Chapter 9. The result of the efforts of Congress was Public Law 114–187, commonly known as Promesa.

One of the most significant battles in the development of Promesa was the efforts of the U.S. Treasury and White House to incorporate what was known as a "one pot" approach to debt restructuring that would sweep all 17 classes of Puerto Rico's debt into "one pot", haircut this pot of debt and then issue one class of a new security to compensate existing bondholders. I, and many others, argued the opposite - that the framework created by Congress must respect the conditions under which the debt was originally issued and respect the priorities and liens established by the Commonwealth over several decades.

This was vital 1) because Puerto Rico has capacity to pay their debts when reprofiled and 2) it is imperative that the Commonwealth arrange their finances in a manner that allows their liabilities to be paid.

Although the Court has recently ruled that Puerto Rico Highways, PRIFA rum, and CCDA revenue bonds do not have liens that would require the lifting of the stay incorporated in Promesa there are other superseding provisions of Promesa which bar the taking of pledged excise taxes. These provisions of Promesa, specifically § 201 (N) and § 407 (a) and (b) were the direct intent of Congress and represent many hard fought battles in the drafting of the law.

Please see the attached for a fuller description of the interplay of the statute, the Bankruptcy Rules and judicial determinations.

I was not asked to prepare this summary by any party and did so from my direct knowledge of negotiations attendant in the development of Promesa.

Many thanks in advance.

Cate Long
Puerto Rico Clearinghouse
September 21, 2020

# In the Puerto Rico bankruptcy the Title III court merely found that creditors had no colorable claims to lift stay in its revenue bond adversary rulings

Congress was explicit that lawful priorities in law in effect prior to Promesa be respected in fiscal plans (§ 201 N)

Congress was explicit that pledges made to creditors pre Promesa must remain intact (§ 407 - prohibition on intercreditor transfers)

Although Bankruptcy Rules 3007 and 7001 were incorporated into Promesa and allow challenges to claims they do not supercede § 407 which prohibits intercreditor transfer of property underlying pledges

Promesa gives creditors with pledges, such as Highways, PRIFA & CCDA, rights to seek repayment once the § 405 stay is lifted

# Congress was explicit that lawful priorities in law in effect prior to Promesa be respected in fiscal plans (§ 201 N) and no inter-debtor transfer of funds (§ 201 M)

*"Each Fiscal Plan serves as the cornerstone for the structural reforms the Oversight Board deems necessary to ensure the territory, or instrumentality, will be on a path towards "fiscal responsibility and access to capital markets." These documents incorporate requirements including any recommendation made by the Oversight Board pursuant to section 205, the elimination of structural deficits, as well as the improvement of fiscal governance, accountability, and internal controls.* ***Importantly, Fiscal Plans ensure the protection of the lawful priorities and liens as guaranteed by the territorial constitution and applicable laws, and prevents unlawful inter-debtor transfers of funds."***

[Promesa Packet](), House Committee on Natural Resources, May 24, 2016, page 13

# Congress was explicit that pledges made to creditors prior to the enactment of Promesa cannot be terminated by unlawful executive orders or be transferred away from a debtor

**Section 303 Reservation Of Territorial Power To Control Territory And Territorial Instrumentalities.**

(3) "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act."

**Section 407. Protection From Inter-debtor Transfers.**

(a) Protection Of Creditors.—While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid **pledge** of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

(b) Enforceability.—A creditor may enforce rights under this section by bringing an action in the United States District Court for the District of Puerto Rico after the expiration or lifting of the stay of section 405, unless a stay under title III is in effect.

Instead of following the larger statutory framework embodied in Promesa that requires assets to remain attached to a specific debtor the FOMB has used Bankruptcy Rule 3007 and 7001 (incorporated into Promesa § 310) to attempt to eliminate revenue pledges made to bondholders in public corporations.

Although the Title III court has ruled* there are no liens the "pledges" made to creditors remain intact under Promesa.

*Puerto Rico Clearinghouse disagrees with the Title III court's determinations in Case: 17-03283-LTS Docket 13540, 13541 and 13542 but raises these additional issues regarding Congressional intent.

# The statutory language of Promesa, where Congress legislated specific treatment of claims, supercedes the use of Bankruptcy Rules 3007 and 7001

*"If the statute is clear on its face, the court must effectuate Congress's stated intent."*

Statutory Interpretation: General Principles and Recent Trends, March 30, 2006 – September 24, 2014, Congressional Research Service, footnote 85 citing Hibbs v. Winn, 542 U.S. 88, 101 (2004) (quoted in Corley v. United States, 556 U.S. 303, 314 (2009)); Astoria Federal Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 112 (1991); Sprietsma v. Mercury Marine, 537 U.S. 51, 63 (2003)

# The FOMB used the Bankruptcy Rules incorporated in Section 310 of Promesa to challenge the revenue bonds

➢ Creditors filed claims for Highways, PRIFA (rum bonds) and CCDA (convention center) bonds (collectively the revenue bonds).

➢ FOMB used Bankruptcy Rule 3007, Objections to Claims - which proscribes the manner of service for objections to claims, to challenge claims filed for the revenue bonds.

➢ FOMB then used Bankruptcy Rule 7001 (2) to request an adversary proceeding to determine the validity, priority, or extent of a lien or other interest in property.

➢ Creditors filed lift stay motions to litigate their claims in other forums and were denied

# In the Title III court's Highways Opinion* it does not dispute that:

HTA was established as a public corporation by Act No. 74-1965 to facilitate the construction and maintenance of roads and other transportation infrastructure. See 9 L.P.R.A. § 2002. [pg 7]

HTA is statutorily authorized to issue bonds and to secure payment of its bond obligations by, "subject to the provisions of § 8 of Art. VI of the Constitution of the Commonwealth, *pledg[ing] to the payment of said bonds and interest thereon, the proceeds of any tax or other funds which may be made available to the Authority by the Commonwealth.*" 9 L.P.R.A. § 2004(I). [page 7-8]

The Bond Resolutions and certain statutory provisions adopted by the Commonwealth in connection with HTA's bond issuances contemplated that *certain revenues would provide a source of funds for the repayment of the Bonds.* [page 8]

"and *such moneys are hereby pledged to and charged with the payments* mentioned in this Section." (1968 Resolution at 46; 1998 Resolution at 55.) [page 10]

*Opinion And Order In Connection With Preliminary Hearing Regarding Motion Of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, And Financial Guaranty Insurance Company For Relief From Automatic Stay, Or, In The Alternative, Adequate Protection, Case: 17-03283-LTS Docket #13541, July 2, 2020, emphasis mine

# The court acknowledges that Puerto Rico enacted statutes **pledging** certain excise taxes

"The Commonwealth also enacted several laws concerning the financing arrangement underlying the Bonds (the "Excise Tax Statutes"). See 13 L.P.R.A. § 31751;9 9 L.P.R.A. §§ 2021, 5681. While varying somewhat in their language, each of the ***Excise Tax Statutes authorizes HTA to pledge certain Revenues for the payment of bond obligations*** and other HTA obligations. See 13 L.P.R.A. §§ 31751(a)(1)(C), 31751(a)(3)(C); 9 L.P.R.A. §§ 2021, 5681. ***Each also includes a qualification that any such pledge is subject to Section 8 of Article VI of the Constitution of Puerto Rico.***"

*Opinion And Order In Connection With Preliminary Hearing Regarding Motion Of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, And Financial Guaranty Insurance Company For Relief From Automatic Stay, Or, In The Alternative, Adequate Protection, Case: 17-03283-LTS Docket #13541, July 2, 2020, page 13, emphasis mine



The Puerto Rico Legislature creates the Highway Authority, gives it authority to issue bonds and pledge revenues, and passes specific laws pledging revenues to certain issues of bonds

**Bonds**

"The Bond Resolutions and certain statutory provisions adopted by the Commonwealth in connection with HTA's bond issuances contemplated that ***certain revenues would provide a source of funds for the repayment of the Bonds.***" [Docket #13541, pg 8]

**"Effective Date of the Lien" did not occur"**

"The Oversight Board asserts—and the HTA Movants have not disputed—that the "Effective Date of the Lien" did not occur, and the provision was therefore never triggered. (See FOMB Opp. ¶ 92 & n.43.)" [Docket #13541, pg 14]



**Court rules no lien but statutory pledges remain**

"The HTA Movants have failed to demonstrate that they have colorable claims to statutory liens securing repayment of the Bonds arising out of the Excise Tax Statutes." [Docket #13541, pg 18]

# The Title III court found that revenue bonds were not secured and therefore creditors lacked colorable claims to lift the stay under § 362(d)(1)

*"Furthermore, the Court has already found that Movants lack colorable claims to security or other property interests in the relevant revenue streams, and "the general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief." In re Breitburn Energy LP, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).[15]"*

Memorandum Opinion And Order Denying HTA And PRIFA Revenue Bond Stay Relief Motions, Case:17-03283-LTS Docket #14186, Sept 9, 2020, page 17

# The FOMB never demonstrated a need to "clawback" pledged revenues

Puerto Rico has sufficient capacity to pay all their debts on a modified schedule and the FOMB has never shown a need to "clawback" pledged revenues under Section 8 of Article VI of the Constitution of Puerto Rico.

# Congress was explicit that pledges made to creditors prior to the enactment of Promesa cannot be terminated by unlawful executive orders or be transferred away from a debtor

**Section 303 Reservation Of Territorial Power To Control Territory And Territorial Instrumentalities.**

(3) "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act."

**Section 407. Protection From Inter-debtor Transfers.**

(a) Protection Of Creditors.—While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid **pledge** of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

(b) Enforceability.—A creditor may enforce rights under this section by bringing an action in the United States District Court for the District of Puerto Rico after the expiration or lifting of the stay of section 405, unless a stay under title III is in effect.

Cate Long

Puerto Rico Clearinghouse

September 20, 2020