# **EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO
et al.,

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY,

    Debtor.
------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3567-LTS

MEMORANDUM OPINION AND ORDER DENYING
HTA AND PRIFA REVENUE BOND STAY RELIEF MOTIONS

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Before the Court are the issues addressed in *Movants' Consolidated Supplemental Brief Regarding Revenue Bond Lift Stay Motions* (Docket Entry No. 13744 in Case No. 17-3283 and Docket Entry No. 880 in Case No. 17-3567, the "Supplemental Brief"),[2] filed by Ambac Assurance Corporation ("Ambac"), National Public Finance Guarantee Corp., Assured Guaranty Corp. ("AGC"), Assured Guaranty Municipal Corp. (together with AGC, "Assured"), Financial Guaranty Insurance Company ("FGIC") (collectively, the "Monoline Movants"), U.S. Bank National Association, and The Bank of New York Mellon ("BONY") (collectively with the Monoline Movants, the "Movants").

On June 4, 2020, the Court held a preliminary hearing (the "Preliminary Stay Relief Hearing") on three stay relief motions (collectively, the "Stay Relief Motions")[3] relating to bonds issued by the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Convention Center District Authority ("CCDA"), respectively, to determine whether Movants had "standing to sue and security or other property interests in the relevant revenues." (*Final Case Management Order for Revenue Bonds*, Docket Entry No. 12186, the "Revenue Bonds CMO," ¶ 1.d.) In three

---

[2] All docket entry references herein are to entries in Case No. 17-3283, unless otherwise specified.

[3] The Stay Relief Motions are (i) the *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection* (Docket Entry No. 10102, the "HTA Stay Relief Motion"), (ii) the *Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (Docket Entry No. 10602, the "PRIFA Stay Relief Motion"), and (iii) *Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon's Motion Concerning Application of the Automatic Stay to the Revenues Securing the CCDA Bonds* (Docket Entry No. 10104, the "CCDA Stay Relief Motion").

separate opinions and orders dated July 2, 2020 (collectively, the "Preliminary Orders"),[4] the Court concluded, with respect to each of the Stay Relief Motions, that Movants had failed to establish colorable claims to ownership of, or other property interests in, the relevant revenues other than monies that had been deposited in certain designated accounts.  See In re Fin. Oversight & Mgmt. Bd. for P.R., Nos. 17 BK 3283-LTS, 17 BK 3567-LTS, 2020 WL 3816135, at *1 (D.P.R. July 2, 2020); In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17 BK 3283-LTS, 2020 WL 3791582, at *1 (D.P.R. July 2, 2020); In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17 BK 3283-LTS, 2020 WL 3816137, at *18 (D.P.R. July 2, 2020).  The recitations of facts and conclusions of law set forth in the Preliminary Orders are incorporated herein by reference.

Following a meet-and-confer period mandated by the Court for the purpose of determining next steps regarding the Stay Relief Motions, including whether and to what extent the Court's rulings in the Preliminary Orders obviated the need for the limited summary judgment motion practice in Adversary Proceeding Nos. 20-003, 20-004 (the "CCDA Adversary Proceeding"), and 20-005 (collectively, the "Revenue Bond Adversary Proceedings") (see Revenue Bonds CMO ¶ 2), the parties to this Stay Relief Motion practice filed the *Joint Status Report with Respect to Further Proceedings Regarding the Revenue Bond Stay Relief Motions*

---

[4]  The Preliminary Orders are (i) the *Opinion and Order in Connection with Preliminary Hearing Regarding Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection (Docket Entry No. 10102)* (Docket Entry No. 13541), (ii) the *Opinion and Order in Connection with Preliminary Hearing Regarding Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (Docket Entry No. 13542), and (iii) the *Opinion and Order in Connection with Preliminary Hearing Regarding Motion Concerning Application of the Automatic Stay to the Revenues Securing the CCDA Bonds* (Docket Entry No. 13540, the "CCDA Preliminary Order").

(Docket Entry No. 13601), on July 9, 2020. In light of the parties' representation that they were unable to agree upon a path forward, the Court entered an order directing the parties to address in supplemental briefing (i) "whether 'cause' exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay" in connection with each of the Stay Relief Motions; (ii) "in the case of the CCDA [Stay Relief] Motion only, whether stay relief is warranted under 11 U.S.C. § 362(d)(2)"; and (iii) "whether litigation in the context of [the CCDA Adversary Proceeding] concerning the identity of the Transfer Account would obviate any need for [the] stay relief [sought in the CCDA Stay Relief Motion] to allow for resolution of that issue in an alternative forum."[5] (*Order Scheduling Further Proceedings in Connection with the Revenue Bond Stay Relief Motions*, Docket Entry No. 13607, the "Scheduling Order.") On July 20, 2020, Movants filed the Supplemental Brief. The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and the Puerto Rico Fiscal Agency and Financial Advisory Authority filed a response to the Supplemental Brief on July 30, 2020 (Docket Entry No. 13905, the "Supplemental Response"),[6] and Movants filed a reply in further support of the Stay Relief Motions on August 5, 2020 (Docket Entry No. 13992, the "Supplemental Reply").

The Court has reviewed carefully the Supplemental Brief and related filings, as well as all additional submissions made in connection with the Stay Relief Motions. The Court has subject matter jurisdiction of these contested matters pursuant to 48 U.S.C. § 2166(a). For the following reasons, the Court denies the HTA Stay Relief Motion and the PRIFA Stay Relief Motion. For the reasons explained in the accompanying *Memorandum Order Regarding CCDA*

---

[5] Capitalized terms not defined herein shall have the meanings given to them in the Preliminary Orders.
[6] The Official Committee of Unsecured Creditors filed a limited joinder to the Supplemental Response on July 31, 2020. (See Docket Entry No. 13906.)

*Revenue Bond Stay Relief Motion* (the "CCDA Order"), the Court concludes that compelling circumstances exist under section 362(e) of the Bankruptcy Code[7] to maintain the automatic stay as it applies to claims with respect to monies other than the Alleged Transfer Account Monies (as defined in the CCDA Order), pending resolution of the CCDA Adversary Proceeding. This Memorandum Opinion and Order addresses the issues common to the three Stay Relief Motions and resolves the HTA and PRIFA Stay Relief Motions.

## DISCUSSION

Section 362(d) of the Bankruptcy Code provides that, on "request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under" section 362(a) "for cause, including the lack of adequate protection of an interest in property of such party in interest[,]" or, "with respect to a stay of an act against property under [section 362(a)], if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization[.]" 11 U.S.C.A. § 362(d)(1)-(2) (Westlaw through P.L. 116-158). To determine whether cause exists to lift the automatic stay under section 362(d)(1), courts in this circuit typically examine the factors enumerated by the United States Court of Appeals for the Second Circuit in Sonnax Industries v. Tri Components Products Corp. (In re Sonnax Industries), 907 F.2d 1280, 1286 (2d Cir. 1990) ("Sonnax").[8] See Autonomous

---

[7] The provisions of the Bankruptcy Code cited herein are made applicable in these proceedings by section 301 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 28 U.S.C. § 2161.

[8] The twelve Sonnax factors are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the

Municipality of Ponce v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 939 F.3d 356, 362 (1st Cir. 2019) ("The Title III court properly looked to the Sonnax factors outlined by the Second Circuit as a helpful guide to granting or denying relief from a stay."). Nevertheless, the Sonnax factors are non-exclusive and, thus, "there are other bases for a cause finding[,]" including when granting stay relief is "necessary to permit litigation to be concluded in another forum." In re Guzman, 513 B.R. 202, 208 (Bankr. D.P.R. 2014) (citations omitted).

    The overarching contention advanced by Movants in their Supplemental Brief is that, notwithstanding the Court's rulings in connection with the Preliminary Stay Relief Hearing, there remain sufficient bases for granting the Stay Relief Motions. Movants principally assert that "cause" exists for stay relief under section 362(d)(1) of the Bankruptcy Code because section 305 of PROMESA, 48 U.S.C. § 2165, as interpreted by the United States Court of Appeals for the First Circuit, precludes the Title III Court from adjudicating Movants' constitutional and statutory causes of action (collectively, the "Proposed Claims") challenging the validity and seeking nullification of the Commonwealth statutes and executive orders

---

necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 939 F.3d 340, 347 (1st Cir. 2019) (quoting Sonnax, 907 F.2d at 1286).

affecting the revenues at issue, as well as the fiscal plans and budgets certified by the Oversight Board and, thus, that a refusal to lift the automatic stay would deprive Movants of their due process rights.  Movants further argue that "cause" to lift the automatic stay exists independently under the Sonnax factors.[9]  The Court addresses Movants' arguments in turn below.

    A. Section 305 of PROMESA

Movants maintain that the automatic stay must be lifted to allow them to assert causes of action under the Contracts, Due Process, and Takings Clauses of the Constitution of the United States, and under section 303 of PROMESA, for declaratory and injunctive relief based on the alleged invalidity of various Commonwealth laws and executive orders issued by the Governor of the Commonwealth, and the Oversight Board's fiscal plans and budgets (collectively, the "Challenged Laws").  (Supp. Br. ¶ 2.)  According to Movants, "[t]he First Circuit has made clear that PROMESA § 305 . . . precludes the Title III Court (but not any other court) from adjudicating Movants' constitutional and statutory arguments regarding the invalidity of the" Challenged Laws, absent consent from the Oversight Board.  (Id. ¶ 7.)  Relying heavily on the First Circuit's decision in Ambac Assurance Corp. v. Financial Oversight & Management Board for Puerto Rico (In re Financial Oversight & Management Board for Puerto Rico), 927 F.3d 597 (1st Cir. 2019) ("Ambac II"), cert. denied, 140 S. Ct. 856 (2020), Movants assert that, because the Oversight Board has withheld its consent to this Court's adjudication of their Proposed Claims, due process requires that this Court lift the stay to provide Movants with a forum in which to present their arguments.  (Id. ¶¶ 6, 8, 11.)  In support of this contention,

---

[9]    Additionally, in connection with the CCDA Stay Relief Motion, Movants assert that they are entitled to stay relief under section 362(d)(1) because their collateral is not adequately protected, and under section 362(d)(2) because the Commonwealth lacks equity in such property.  As noted above, the Court has addressed these arguments separately in the CCDA Order.

Movants point to prior statements made by the Oversight Board in connection with the Revenue Bond Adversary Proceedings—through which the Oversight Board seeks disallowance of Movants' proofs of claim against the Commonwealth—indicating that the Board does not consent to this Court's adjudication of Movants' Proposed Claims. (See id. ¶ 8 (citing Docket Entry No. 9493 ¶ 17 and Docket Entry No. 9620 at 6-7).)

> Section 305 of PROMESA states, in relevant part:
>
> [N]otwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—(1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the use or enjoyment by the debtor of any income-producing property.

48 U.S.C.A. § 2165 (Westlaw through P.L. 116-158). The First Circuit has addressed the meaning and effect of section 305 on several occasions during the pendency of these Title III cases. In Financial Oversight & Management Board for Puerto Rico v. Ad Hoc Group of PREPA Bondholders (In re Financial Oversight & Management Board for Puerto Rico), the First Circuit held that, while section 305 prohibits a Title III court from interfering directly with the property of a Title III debtor, it does not preclude a Title III court from lifting the automatic stay, when appropriate, to enable another court to take action interfering with such property. 899 F.3d 13, 19-22 (1st Cir. 2018) ("PREPA"). The First Circuit subsequently ruled, in Aurelius Capital Master v. Puerto Rico (In re Financial Oversight & Management Board for Puerto Rico), that the limits on a Title III court's authority imposed by section 305 applied to bondholders' requests for declaratory relief. 919 F.3d 638, 648-49 (1st Cir. 2019). Most recently, in connection with an appeal of this Court's dismissal of an adversary complaint filed by Ambac involving causes of

action similar to those at issue here,[10] the First Circuit concluded that section 305 barred this Court from granting Ambac injunctive relief that would have compelled the Commonwealth to transfer certain tax revenues and fees to HTA and the HTA bondholders' fiscal agent and declaratory relief branding the Commonwealth's diversion of such monies pursuant to the relevant Commonwealth moratorium laws, executive orders, and fiscal plan unconstitutional and preempted by section 303 of PROMESA. Ambac II, 927 F.3d at 602-03. The First Circuit, moreover, made the following observation in Ambac II, which is central to the parties' dispute here:

> At oral argument, counsel for Ambac also raised the possibility that our interpretation of section 305 would raise due process concerns because Ambac would be left without a venue in which to bring its constitutional claims. But nothing in our holding today suggests that Ambac cannot seek traditional stay relief pursuant to 11 U.S.C. § 362 and raise its constitutional and statutory arguments in a separate action. As we explained in PREPA, section 305 'only bar[s] the Title III court itself from directly interfering with the debtor's powers or property.' 899 F.3d at 21. It does not, however, impose any such restraint on another court.

Id. at 605.

In their Supplemental Brief, Movants state that the causes of action for which they now seek stay relief would be similar to those that have already been asserted in the adversary complaint at issue in Ambac I, as well as in Adversary Proceeding Nos. 18-59 and 19-363. (See Supp. Br. ¶ 15.) As noted above, Movants place great emphasis on the First Circuit panel's statements regarding section 305 in Ambac II in arguing that due process mandates that the stay be lifted immediately. (See, e.g., id. ¶ 6 ("As the First Circuit has previously recognized,

---

[10] See Ambac Assurance Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 297 F. Supp. 3d 269 (D.P.R. 2018) ("Ambac I"), aff'd, 927 F.3d 597 (1st Cir. 2019), cert. denied, 140 S. Ct. 856 (2020).

Movants are entitled to stay relief to have a forum in which they can present 'constitutional and statutory arguments' that otherwise would be precluded by PROMESA § 305." (quoting Ambac II, 927 F.3d at 605).)  It would, however, be premature for the Court to conclude that the mere potential that the Oversight Board will invoke section 305 in response to defenses or counterclaims that have not yet been formally pleaded in the Revenue Bond Adversary Proceedings entitles Movants to immediate stay relief under section 362(d)(1).

As contemplated by the Revenue Bonds CMO, the Oversight Board has filed adversary complaints objecting to proofs of claim filed by Movants against the Commonwealth on account of their respective interests in HTA, PRIFA, and CCDA bonds.  Also in accordance with the Revenue Bonds CMO, the Oversight Board has moved for summary judgment with respect to certain counts of its adversary complaints; briefing has recently been completed and oral argument is scheduled for September 23, 2020.  Movants have filed extensive memoranda in opposition to the motions for partial summary judgment and, to the extent that Movants contend that the merits of any of their proofs of claim (and therefore the disposition of the Oversight Board's motions for partial summary judgment) turn on the validity of the Challenged Laws, Movants have advanced arguments to that effect;[11] such contentions will be addressed in the context of the Revenue Bond Adversary Proceedings.  If the Oversight Board demonstrates that there are no questions of material fact with respect to the validity of any of Movants' claims and that judgment must be entered in its favor as a matter of law notwithstanding Movants'

---

[11]   See, e.g., *Opposition of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, Financial Guaranty Insurance Company, and the Bank of New York Mellon to the Motion of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims* (Docket Entry No. 94 in Adversary Proceeding No. 20-005, the "HTA MSJ Opposition") ¶ 42.

constitutional and PROMESA section 303 arguments, a grant of summary judgment as to those claims could not deprive Movants of their due process rights. Although the remaining claims asserted in the Revenue Bond Adversary Proceedings are currently stayed, following resolution of the motions for partial summary judgment, litigation of any unresolved claims will proceed in due course. Indeed, Movants have made clear in their memoranda in opposition to the Oversight Board's motions for partial summary judgment that they intend to assert defenses and counterclaims when permitted to do so. (See, e.g., HTA MSJ Opp. ¶¶ 45, 206 n.198.)

        Movants have yet to articulate the precise nature of the defenses and counterclaims that they intend to raise. Likewise, although the Oversight Board has previewed its anticipated approach with respect to section 305, the Board has not yet taken a definitive position regarding the full extent, if any, to which it would contend that section 305 applies to Movants' Proposed Claims[12] and, critically, the extent to which the Oversight Board will waive section 305 remains to be seen. Movants have, furthermore, indicated that they intend to argue that the Oversight Board's commencement of the Revenue Bond Adversary Proceedings constituted waiver, to at least some extent, of section 305. (See *Transcript of December 11, 2020, Omnibus Hearing*, Docket Entry No. 9586, at 68:23-69:1 (Mr. Servais: "[I]f the [Oversight Board] chooses to file an adversary proceeding, it is by definition consenting to the defendants asserting . . . any appropriate affirmative defense.").) That argument, too, will be taken up in due course if necessary. Accordingly, because the circumstances upon which Movants' due process-

---

[12] See *Transcript of January 29, 2020, Omnibus Hearing*, Docket Entry No. 10594, at 153:22-24 (Mr. Bienenstock: "We do not think that the First Circuit in any way said that [s]ection 305 gets in the way of determining whether there's been a taking of property."); id. at 154:18-22 (Mr. Bienenstock: "[N]o one has ever said the[] [Movants] can't come to this Court and get a ruling and have a claim that their property interest has been taken and the entity owes them something back as a general unsecured claim, a secured claim or something else.").

related concerns are based—namely, the deprivation of a forum in which to assert colorable claims—do not currently exist and may never materialize, section 305 and Ambac II do not provide a mandatory, standalone basis for the Court to lift the automatic stay at this juncture.[13]

        Movants' argument that requiring Movants to litigate exclusively in the Revenue Bond Adversary Proceedings creates an uneven playing field and "compromises the neutrality of the Title III court" (Supp. Br. ¶ 13) has superficial rhetorical appeal but is unfounded. To be sure, section 305 is a powerful tool at the Oversight Board's disposal. However, because section 305 does not limit the Title III Court's subject matter jurisdiction, see Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 582 B.R. 579, 589 (D.P.R. 2018), aff'd, 919 F.3d 121 (1st Cir. 2019), cert. denied, 140 S. Ct. 855 (2020), this Court has power to consider at an appropriate juncture whether resolution of a claim or defense that is subject to an unwaived section 305 impediment is necessary to address a matter before the Court in a manner consistent with due process, and can take appropriate action with respect to the automatic stay. That the sequencing of the consideration of these issues may not be optimal from Movants' perspective does not bespeak an uneven playing field or any bias on the part of the Court. Movants' reliance on cases involving claims of which bankruptcy courts lacked jurisdiction in support of their argument that stay relief is mandatory to preserve due process is thus misplaced. (See Supp. Br. ¶ 12 (citing In re Medlar, No. 11-17909, 2013 WL 6152324, at *3 (Bankr. N.D. Ohio Nov. 22, 2013) (cause for stay relief existed where jurisdiction was lacking under the Rooker-Feldman doctrine); In re Fuchs, No. 05-36028-BJH-7, 2006 WL

---

[13]    In reaching this conclusion, the Court does not express any opinion as to the merits of Movants' Proposed Claims and defenses. Movants can renew their motions for stay relief, if necessary, after development of the record regarding Movants' Proposed Claims and their materiality to resolution of the claims that Movants have filed against the Debtors.

6543977, at *3 (Bankr. N.D. Tex. Jan. 26, 2006) (stay relief warranted where bankruptcy court had no jurisdiction to adjudicate personal injury tort claims); In re Horn, No. 12–50207, 2012 WL 1978287, at *2 (Bankr. M.D.N.C. June 1, 2012) (same)).)

Similarly, Movants have failed to demonstrate that it would be "unworkable" or otherwise improper for the Court to "adjudicate the [Revenue Bond] Adversary Proceedings first and to lift the stay only if the Board is unsuccessful." (Supp. Br. ¶ 13 n.3.) Contrary to Movants' assertions, their rights under 11 U.S.C. § 362(e) will not be impaired if all issues are litigated in the Revenue Bond Adversary Proceedings because this Memorandum Opinion and Order resolves the HTA Stay Relief Motion and the PRIFA Stay Relief Motion (and, for the reasons explained in the companion CCDA Order, compelling circumstances exist to extend the final hearing deadline with respect to the CCDA Stay Relief Motion). Furthermore, resolution of Movants' constitutional and statutory causes of action does not appear to be a necessary predicate to adjudication of the Oversight Board's claims in the Revenue Bond Adversary Proceedings, in that the Court has already determined in the Preliminary Orders that Movants have failed to proffer colorable claims to security or other property interests in the bulk of the revenue streams that are at issue.[14] The Oversight Board, moreover, is currently pursuing its objections to Movants' claims in accordance with Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure, and in accordance with a structure and schedule that was proposed by the Mediation Team, litigated extensively, and ultimately approved by this Court. Although

---

[14] Notably, although Movants insist that their "secured status cannot be determined until the validity of the Territorial Legislation has first been resolved" (Supp. Br. ¶ 13 n.3), nowhere do they explain how the relief they intend to seek through their Proposed Claims would, if granted, provide them with security interests that they do not otherwise have.

Movants may disagree with the sequencing of these proceedings, they have not demonstrated that their rights to due process have been compromised because of it.

Accordingly, Movants have failed to establish that section 305 creates any due process impediment that provides "cause" for relief from the automatic stay at this time.

B. Sonnax Factors

The Court next turns to Movants' argument that the relevant Sonnax factors weigh in favor of granting the Stay Relief Motions. In sum, Movants assert that stay relief is warranted because their causes of action cannot be addressed in the Title III Court and the Commonwealth will suffer no prejudice if these issues are litigated elsewhere. For the reasons explained below, the Court is not persuaded that the Sonnax factors weigh in favor of stay relief.

Of particular relevance to the instant case, as Movants largely agree (see Supp. Br. ¶ 40), are the following factors: "whether relief would result in a partial or complete resolution of the issues," "lack of any connection with or interference with the bankruptcy case," "the interests of judicial economy and the expeditious and economical resolution of litigation," "whether the parties are ready for trial in the other proceeding," and the "impact of the stay on the parties and the balance of harms." Gracia-Gracia, 939 F.3d at 347 (quoting Sonnax, 907 F.2d at 1286).

The first of these factors weighs heavily against stay relief. Here, lifting the automatic stay to allow Movants to assert their Proposed Claims in an alternative forum would interfere with, and would not promote, the interests of judicial economy and the expeditious resolution of these Title III cases, as it would result in fragmented and possibly premature litigation of factual and legal issues, many of which are currently before the Court in the Revenue Bond Adversary Proceedings, that are indisputably central to the restructurings of the

Commonwealth and its instrumentalities. Lifting the stay would thus present the risk of duplicative litigation and inconsistent rulings on such issues. Relatedly, the parties would not be ready for trial in the alternate forum if the Court were to grant stay relief, as Movants contemplate commencing new litigation if relief is granted. Movants' argument that, in light of section 305, only stay relief can result in a complete resolution of the issues (Supp. Br. ¶ 41) is, as explained above, premature because Movants have yet to assert their Proposed Claims in the Revenue Bond Adversary Proceedings and the Oversight Board has yet to respond thereto. The Oversight Board, furthermore, has not contended to date that section 305 precludes consideration of the issues that Movants have raised in the context of their opposition to the summary judgment motion practice.

    Movants also assert that lifting the stay will not interfere with the Title III cases because Movants' proposed Contract Clause, Due Process Clause, and PROMESA section 303 causes of action are not dischargeable "claims" under the Bankruptcy Code, given that such causes of action would seek declarations invalidating the Challenged Laws, and because their Takings Clause claim cannot be impaired in Title III. (Id. ¶¶ 42-46.) With respect to their Contract Clause, Due Process Clause, and PROMESA section 303 causes of action, Movants argue that the Commonwealth will suffer no prejudice by litigating such causes of action in another forum because requests for relief based on those causes of action cannot be resolved in the Title III claims resolution process or discharged under a plan of adjustment. (Id. ¶ 45.)

    The Bankruptcy Code defines the term "claim" as either a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment[.]" 11 U.S.C.A. § 101(5) (Westlaw through P.L. 116-158). Equitable causes of action are thus "claims" under the Bankruptcy Code—and therefore are subject to resolution through

the Title III claims resolution process—if payment could be substituted for the equitable remedy. See In re Udell, 18 F.3d 403, 408 (7th Cir. 1994) ("[A] right to an equitable remedy for breach of performance is a 'claim' if the same breach also gives rise to a right to a payment 'with respect to' the equitable remedy. If the right to payment is an 'alternative' to the right to an equitable remedy, the necessary relationship clearly exists, for the two remedies would be substitutes for one another."). Movants' Proposed Claims plainly stem from their bond claims and, although styled as requests for declaratory relief, ultimately are vehicles for asserting rights to payment of amounts outstanding under various bond issues. Indeed, Movants identified their constitutional and statutory theories in their proofs of claim as bases for their claims for damages on account of defaults that occurred on the relevant bonds (see, e.g., Claim Nos. 33081, 37319, 101243, 122277). Movants have therefore failed to make an adequate showing for purposes of this motion practice that their Contract Clause, Due Process and PROMESA section 303 Proposed Claims are not "claims" within the meaning of section 101(5) of the Bankruptcy Code that are capable of resolution by this Court.

Movants concede that their proposed Takings Clause cause of action is a "claim" under the Bankruptcy Code, although they assert that adjudication of Takings Clause issues outside of the Title III court would actually "facilitate the Title III process by providing clarity regarding the scope of Movants' constitutional rights." (Id. ¶ 46.) Even if resolution of the Takings Clause issues would facilitate the Title III process, however, Movants' proposition does not demonstrate that litigation of such issues in another court would not interfere with these Title III cases.

The balance of harms factor also militates against stay relief in connection with Movants' Proposed Claims. As explained above, granting the Stay Relief Motions is not

necessary to preserve Movants' due process rights at this juncture.  Furthermore, the Court has already found that Movants lack colorable claims to security or other property interests in the relevant revenue streams, and "the general rule is that claims that are not viewed as secured in the context of § 362(d)(1) should not be granted relief from the stay unless extraordinary circumstances are established to justify such relief."  In re Breitburn Energy LP, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017).[15]  To the extent that Movants have constitutionally protected property interests derived from their statutory and contractual rights, it would be unreasonable to conclude that those rights alone provide a basis for stay relief, as doing so would invite unsecured creditors to seek to challenge in alternative fora the validity of any Commonwealth government act that they contend has affected their rights by simply recasting their claims in constitutional terms and requesting stay relief as Movants have done here, thereby disrupting significantly, and undermining the fundamental purpose of, these Title III proceedings.  Movants fail to demonstrate how the hardship they would allegedly face from a continuation of the stay renders them differently situated than virtually any other creditor of a Title III debtor that is required to pursue its claims exclusively in this Court.  Any such hardship is outweighed by the potential harm to the Debtors and interference with the orderly administration of these Title III cases that

---

[15]   In the CCDA Preliminary Order, the Court acknowledged that the parties agreed that Movants have a lien on a "Transfer Account," and held that the relevant Movants had asserted a colorable claim that the Scotiabank -5142 account is the Transfer Account. Movants' arguments that are specific to the Transfer Account aspect of the CCDA Stay Relief Motion are addressed in the accompanying CCDA Order.  However, the Sonnax and section 305 analyses in this Memorandum Opinion and Order apply to all aspects of the CCDA Stay Relief Motion other than Movants' request for relief to pursue Transfer Account assets, as well as to the HTA and PRIFA Stay Relief Motions.

would result if the stay were to be lifted and Movants were permitted to litigate, and the Debtors were obliged to defend, Movants' Proposed Claims elsewhere.[16]

Accordingly, the Court concludes that Movants have failed to demonstrate that analysis of the Sonnax factors establishes cause for relief from the automatic stay.

## CONCLUSION

For the foregoing reasons and the reasons set forth in the Preliminary Orders, the HTA Stay Relief Motion and the PRIFA Stay Relief Motion are denied. The September 30, 2020, hearing date in connection with the HTA Stay Relief and PRIFA Stay Relief Motions is cancelled. This Memorandum Opinion and Order resolves Docket Entry Nos. 10102 and 10602 in Case No. 17-3283 and Docket Entry No. 673 in Case No. 17-3567.

SO ORDERED.

Dated: September 9, 2020

    /s/ Laura Taylor Swain
   LAURA TAYLOR SWAIN
   United States District Judge

---

[16] Sonnax factors three through seven also weigh in favor of the Oversight Board, as the Debtors are not fiduciaries of Movants, Movants do not seek to assert the Proposed Claims in any specialized tribunal, there are no insurers (other than the Monoline Movants) or third parties involved, and litigation of the Proposed Claims in another forum could potentially affect the interests of other creditors of the Commonwealth who have asserted that they have superior rights to the relevant revenues.