# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ X
                                                :
In re:                                          :
                                                :
                                                :
THE FINANCIAL OVERSIGHT AND                     : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,               : Title III
                                                :
        as representative of                    : Case No. 17-BK-3283 (LTS)
                                                :
THE COMMONWEALTH OF PUERTO RICO et al.,         : (Jointly Administered)
                                                :
        Debtors.¹                               :
------------------------------------------------------------------------ X
                                                :
In re:                                          :
                                                :
                                                :
THE FINANCIAL OVERSIGHT AND                     : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,               : Title III
                                                :
        as representative of                    : Case No. 17-BK-4780 (LTS)
                                                :
PUERTO RICO ELECTRIC POWER AUTHORITY,           : This filing relates only to
                                                : Case No. 17-BK-4780 (LTS)
                                                :
                                                :
        Debtor.                                 :
------------------------------------------------------------------------ X
```

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY IN SUPPORT OF URGENT OBJECTION TO MAGISTRATE JUDGE'S SEPTEMBER 5, 2020 ORDER ON MOTION TO COMPEL DISCOVERY IN CONNECTION WITH MOTION TO <u>TERMINATE BANKRUPTCY RULE 9019 MOTION</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.      REQUESTED DISCOVERY IS RELEVANT TO MOTION TO DISMISS ................... 3

II.     GOVERNMENT PARTIES' PRIVILEGE CONCERNS ARE UNFOUNDED ............. 6

      A.      Requested Communications Are Not Covered by Attorney-Client
Privilege or Work Product Doctrine ........................................................... 6

      B.      Common Interest Doctrine Will Not Apply to Communications with
Bondholders Regarding Renegotiation of New RSA ........................................... 7

      C.      Deliberative Process Privilege Does Not Apply to Communications
Discussing Status of RSA Because Such Communications are Directly at
Issue ................................................................................................. 8

CONCLUSION.................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Autoridad de Carreteras y Transportacion v. Transcore Atlanic, Inc.*,
  319 F.R.D. 422 (D.P.R. 2016) ........................................................................................3

*Bhatia Gautier v. Rossello Nevares*,
  199 D.P.R. 59 (2017) .....................................................................................................9

*Burka v. NYC Transit Auth.*,
  110 F.R.D. 660 (S.D.N.Y. 1986) ....................................................................................9

*Caparrós v. Lynch*,
  2017 U.S. Dist. LEXIS 109041 (D.P.R. June 15, 2017)..................................................9

*Casas Office Machines, Inc. v. Mita Copystar Machines, Inc.*,
  847 F. Supp. 981 (D.P.R. 1993)......................................................................................6

*Cavallaro v. United States*,
  284 F.3d 236 (1st Cir. 2002)...........................................................................................7

*Columbia Data Prods. v. Autonomy Corp. Ltd.*,
  2012 WL 6212898 (D. Mass. Dec. 12, 2012)..................................................................6

*Dahl v. Bain Capital Partners, LLC*,
  714 F. Supp. 2d 225 (D. Mass. 2010) .............................................................................7

*Edeh v. Midland Credit Mgmt., Inc.*,
  748 F. Supp. 2d 1030 (D. Minn. 2010)............................................................................4

*F.D.I.C. v. Ogden Corp.*,
  202 F.3d 454 (1st Cir. 2000)...........................................................................................7

*Fairholme Funds, Inc. v. United States*,
  128 Fed. Cl. 410 (2016), *mandamus granted in part and denied in part, In re
  United States*, 678 F. App'x 981 (Fed. Cir. 2017).........................................................9

*Greater Newburyport Clamshell Alliance v. Pub. Serv. Co. of New Hampshire*,
  838 F.2d 13 (1st Cir. 1988)........................................................................................8, 11

*Kaminske v. JP Morgan Chase Bank N.A.*,
  2010 WL 5782995 (C.D. Cal. May 21, 2010) .................................................................3

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*,
  213 F.R.D. 89 (D. Mass. 2002).......................................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Khoday v. Symantec Corp.*,
  2013 WL 12140484 (D. Minn. Sept. 24, 2013).........................................................................8

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  254 F.R.D. 35 (D. Mass. 2008)..................................................................................................9

*Shell Oil Co. v. IRS*,
  772 F. Supp. 202 (D. Del. 1991)..............................................................................................11

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
  145 F.3d 1422, *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) ...........................................9

*Texaco P.R., Inc. v. Dep't. of Consumer Affairs*,
  60 F.3d 867 (1st Cir. 1995)........................................................................................................8

*United States v. Bay State Ambulance and Hosp. Rental Serv. Inc.*,
  874 F.2d 20 (1st Cir. 1989)........................................................................................................7

*United States v. Textron Inc. & Subsidiaries*,
  577 F.3d 21 (1st Cir. 2009)........................................................................................................6

*Velazquez v. City of Chicopee*,
  226 F.R.D. 31 (D. Mass. 2004)..................................................................................................9

*Williams v. City of Boston*,
  213 F.R.D. 99 (D. Mass. 2003)..................................................................................................9

To the Honorable United States District Judge Laura Taylor Swain:

Pursuant to the order entered on September 11, 2020 [Dkt. No. 2188], the Official

Committee of Unsecured Creditors (the "Committee")[2] hereby submits this reply (the "Reply")

in response to the opposition (the "Opposition") of the Government Parties[3] [Dkt. No. 2207] to

the Committee's urgent objection (the "Committee Objection") [Dkt. No. 2184] to the Order of

Magistrate Judge Judith Gail Dein (the "Magistrate Judge"), entered on September 5, 2020 [Dkt.

No. 2177] (the "September 5 Order"), attached as Exhibit 1 to the Committee Objection,

resolving the *Official Committee of Unsecured Creditors' Urgent Motion to Compel Discovery*

*in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* [Dkt. No. 2155] (the

"Motion to Compel"). In support of this Reply, the Committee respectfully states as follows:

## INTRODUCTION

1.       Contrary to the Government Parties' insinuation that the Committee "seeks a host

of discovery" (Opp. ¶ 1), the Committee's requests are exceedingly narrow:  a single document

request, covering less than four months and only four custodians, and two video fact depositions

limited to three hours each. *See* Committee Obj. ¶ 9.  Indeed, if the Government Parties'

statements about the status of the RSA are to be believed, there should only be a modest number

of documents responsive to the requests, as they cover only documents relating to the RSA

(which, according to the Government Parties, has not changed since September 2019) and the

related Rule 9019 Motion (which has been stayed since March 2020).  At no time during the

meet and confer process, the briefing of the Motion to Compel, or the briefing on this objection,

---

[2]       The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA
and COFINA.

[3]       Capitalized terms used but not defined herein shall have the meanings given to them in the Motion to
Compel (defined below).

have the Government Parties said they have undertaken any investigation to quantify the burden

that responding to the discovery requests would impose.  The only arguments they make are that

the discovery is either not relevant to the Motion to Dismiss or that it would call for the

production of information covered by one or more privileges.  Neither argument has merit.

2.        On the issue of relevance, the discovery sought by the Committee goes to a basic

question:  whether or not the Government Parties have in fact abandoned the RSA even though it

has not been technically terminated.  That this question is open is clear from an unavoidable

conflict between what the Government Parties have said in their status reports (*i.e.*, that the

current RSA remains under consideration) and what their own leaders have told—and continue

to tell—the public (*i.e.*, that the RSA is no longer viable and must be renegotiated).  The

Government Parties claim that the requested discovery is not relevant because there has been no

formal termination of the RSA.  But to accept this argument would be to accept that the

Government Parties can stay the progress of litigation in this case indefinitely as long as they

adhere to certain formalities.  The law requires otherwise.  The Court must look beyond such

formalism and consider the reality of whether or not an actual case or controversy continues to

exist in connection with the 9019 Motion.

3.        The Government Parties' privilege arguments—which they raised previously but

the Magistrate Judge did not address in her ruling—also fail.  The Government Parties cannot

assert a common interest privilege over the renegotiation of the RSA with the PREPA

bondholders because there is no agreement between adverse parties while they are negotiating

the terms of a settlement.  Likewise, the deliberative process privilege does not apply where, as

here, the "deliberations" at issue are the very discussions and considerations underlying the

settlement that the Government Parties have asked the Court to approve.  Indeed, the Court

2

previously ordered the Government Parties to produce such communications (and the

Government Parties in fact did so) for this very reason.

4.      Because the discovery it seeks is both highly relevant and not privileged, the

Committee respectfully requests that its objection be sustained and that the Government Parties

be compelled to respond to the Committee's discovery requests.[4]

**ARGUMENT**

**I.      REQUESTED DISCOVERY IS RELEVANT TO MOTION TO DISMISS**

5.      In demonstrating that the Committee's discovery is not relevant and therefore

need not be produced, the Government Parties—not the Committee—bear the burden of proof.

*See Autoridad de Carreteras y Transportacion v. Transcore Atlanic, Inc.*, 319 F.R.D. 422, 427

(D.P.R. 2016) ("When a party resists the production of evidence, it bears the burden of

establishing lack of relevancy or undue burden.") (internal quotations omitted).  The Government

Parties fell far short of meeting their burden in response to the Motion to Compel, and the

Magistrate Judge's ruling to the contrary was incorrect.  The arguments the Government Parties

now raise in defense of the ruling all lack merit and should be rejected.

6.      The Government Parties begin by asking the Court to apply an overly stringent

"clearly erroneous" standard of review to the Magistrate Judge's decision instead of the less

deferential "contrary to law" standard.  Although discovery rulings involving questions of fact

may be subject to a "clearly erroneous" standard, that is not so where a relevance ruling is

premised on a misinterpretation of applicable law.  *See Kaminske v. JP Morgan Chase Bank

N.A.*, 2010 WL 5782995, at *5 (C.D. Cal. May 21, 2010) (finding that "magistrate judge's denial

---

[4]      The Committee filed its Motion to Compel and its objection to the Magistrate Judge's ruling prior to the
issuance of the Court's order adjourning the hearing on the Motion to Dismiss until after the Government Parties
submit their next status report.  The Committee reserves the right to seek further discovery and/or to supplement its
arguments herein based on any assertions the Government Parties may make in their next status report.

3

of discovery relevant to class certification based upon [incorrect] application of a blanket rule

barring the possibility of class certification . . . was contrary to law"); *see also Edeh v. Midland*

*Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1043 (D. Minn. 2010) ("A decision is 'contrary to

law' when it fails to apply (or misapplies) relevant statutes, case law, or rules of procedure.").

Here, the Magistrate Judge's ruling that the Committee's discovery is not relevant was based on

the erroneous legal premise that the Court will continue to have subject matter jurisdiction over

the Rule 9019 Motion as long as the Government Parties have not technically terminated the

RSA. This assessment of the scope of the jurisdictional inquiry is a legal determination, the

correctness of which must be reviewed using a "contrary to law" or *de novo* standard of review.

7.      Regardless of which standard applies, the Magistrate Judge's decision must be

overturned. As discussed in the Motion to Dismiss and the Committee's Objection, it is well

settled that form cannot prevail over substance in determining whether the Court has continuing

subject matter jurisdiction over the Rule 9019 Motion. *See* Motion to Dismiss ¶¶ 14-21. That,

however, is exactly what will happen if the Court were to deny the Motion to Dismiss without

providing the Committee the opportunity to obtain discovery as to whether the RSA is, in

substance, no longer viable. The Government Parties argue that the legal requirement that the

Oversight Board and PREPA "pass formal resolutions before making a decision to terminate the

RSA is not a mere formalism." Opp. ¶ 16. But this argument defeats itself, as the requirement

of a "formal resolution" to terminate the RSA, even if all relevant decision-makers have agreed

that termination must occur, is the very definition of mere formalism.

8.      The Government Parties also point out that "no single individual has the ability to

make a decision as significant as the decision to terminate the RSA." *Id.* This, however, does

not affect the relevance of the Committee's discovery. The Committee seeks to understand not

4

merely the opinions of one or two individuals but rather the collective viewpoints of the

governing bodies as a whole to determine whether all or a majority of the relevant decision-

makers have decided that the RSA is no longer viable.  For example, the Committee could,

hypothetically, obtain in its discovery a memorandum or other communication indicating that all

members of the Oversight Board agree that the RSA must be renegotiated but have decided they

will not formally terminate the RSA at this time to ensure that the Committee and others cannot

pursue their claim objections.  By the Government Parties' and the Magistrate Judge's logic, this

hypothetical communication—which goes to the very heart of the Motion to Dismiss and shows

why the Court lacks jurisdiction over the Rule 9019 Motion—would be entirely irrelevant.

9.      The Government Parties are also incorrect that the public statements cited by the

Committee are "entirely consistent with the Government Parties' statements [in their status

reports] that deliberations regarding the viability of the RSA are ongoing" and, therefore, do not

provide a basis for discovery.  Opp. ¶ 18.  The public statements in question do not merely

suggest that deliberations regarding the current RSA's viability are ongoing but rather indicate

that a decision on the issue has already been made.  *See, e.g.*, Ex. A (Ortiz statement that the

current RSA "***certainly has to be renegotiated***," and that he "***do[es]n't see an RSA being agreed***

***on until next year***") (emphasis added).  In fact, since the Committee Objection was filed,

AAFAF Executive Director Omar Marrero told Reorg Research that "right now ***we don't have***

***an agreement*** in front of us."  *See* Ex. B (emphasis added).  Even if no single individual has the

ability to abandon the RSA, surely these public statements by the executive directors of both

PREPA and AAFAF that the current RSA is effectively dead are enough to entitle the

Committee to more than zero discovery on this key factual question.

5

## II.    GOVERNMENT PARTIES' PRIVILEGE CONCERNS ARE UNFOUNDED

10.    Although the Magistrate Judge did not reach the issue, the Government Parties

also contend that the September 5 Order should be upheld because documents responsive to the

Committee's requests are covered by various privileges.  As explained below, the Government

Parties' privilege claims are either erroneous or grossly overstated.  To the extent that some

documents responsive to the Committee's requests are privileged, the Committee has offered to

discuss ways to reduce the burden associated with reviewing such documents.[5]

   A.    Requested Communications Are Not Covered by Attorney-Client Privilege or
           Work Product Doctrine

11.    The Government Parties first claim, as they did before the Magistrate Judge, that

the Committee is not entitled to discovery regarding their "communications as to how to proceed

with the 9019 Motion," because such communications would be work product or covered by the

attorney-client privilege.  Opp. ¶ 21.  But these privileges are not nearly as broad as the

Government Parties contend.  As this Court has recognized, the work product doctrine's

application in the First Circuit is "narrow," [Case No. 17-3566, Dkt. No. 509, at 6] (citing *United

States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 29 (1st Cir. 2009)), and only applies to

documents "prepared for use in litigation." *Columbia Data Prods. v. Autonomy Corp. Ltd.*,

2012 WL 6212898, at *12 (D. Mass. Dec. 12, 2012) (quoting *Textron*, 577 F.3d at 29).

Moreover, the attorney-client privilege is limited to communications made "for the purpose of

---

[5]    Contrary to the Government Parties' assertions, it was entirely appropriate for the Committee to incorporate
by reference in its Objection the briefing it submitted on the Motion to Compel on this issue.  The Government
Parties cite cases standing for the proposition that, when objecting to a magistrate judge's decision, the objecting
party should not simply incorporate by reference "all of the arguments" it made in the prior briefing that the
magistrate judge rejected.  *Casas Office Machines, Inc. v. Mita Copystar Machines, Inc.*, 847 F. Supp. 981, 985
(D.P.R. 1993).  Here, however, the Magistrate Judge ***did not rule on the privilege issue***; thus, there is no decision on
that issue to which the Committee can possibly articulate an objection.  By incorporating its prior arguments on the
privilege issue, the Committee was merely trying to be efficient—a concept that the Government Parties ironically
take pains to emphasize elsewhere in their Opposition—and not needlessly lengthen the briefing before the Court.

6

rendering legal advice, ***rather than business advice***.”  *Dahl v. Bain Capital Partners, LLC*, 714

F. Supp. 2d 225, 228 (D. Mass. 2010) (emphasis added).

12.      In contending that the Committee’s discovery largely seeks privileged

information, the Government Parties conflate their litigation strategy regarding the Rule 9019

Motion with their views concerning the ongoing viability of the RSA and whether or not it needs

to be renegotiated.  Only documents relating specifically to the former—*i.e.*, litigation strategy—

could arguably be work product.  Documents otherwise discussing the status of the RSA or its

renegotiation would not be work product and would not be covered by the attorney-client

privilege, either, unless they involve a request for legal advice from counsel.

B.      <u>Common Interest Doctrine Will Not Apply to Communications with Bondholders
Regarding Renegotiation of New RSA</u>

13.       The common interest doctrine is “not an independent basis for privilege, but an

exception to the general rule that the attorney-client privilege is waived when privileged

information is disclosed to a third party.”  *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir.

2002).  In the First Circuit, “the party asserting the privilege must show that (1) the

communications were made in the course of a joint defense effort, (2) the statements were

designed to further the effort, and (3) the privilege has not been waived.”  *Ken’s Foods, Inc. v.

Ken’s Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (Dien, M.J.) (quoting *United States

v. Bay State Ambulance and Hosp. Rental Serv. Inc.*, 874 F.2d 20, 28 (1st Cir. 1989)).  Likewise,

“common interest” is narrowly defined as an “***identical (or nearly identical) legal interest*** as

opposed to a merely similar interest.”  *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir.

2000) (emphasis added).  The common interest doctrine does not extend to parties sharing only

business or commercial interests.  *See id.*

7

14.     Although the common interest doctrine can apply to communications between the
parties to a negotiated agreement, it does not attach to such communications until the parties
have reached an agreement and ceased negotiations.  *Khoday v. Symantec Corp.*, 2013 WL
12140484, at *3 (D. Minn. Sept. 24, 2013) ("[T]he common interest doctrine preserves the
privilege for parties working towards a common purpose who seek guidance from counsel, rather
than for parties negotiating at arms-length who disclose privileged documents to one another in
the course of the negotiations.").

15.     The Government Parties contend that the common interest doctrine applies to
their recent communications with the PREPA Bondholders because they are not—and have
never been—required to produce *post*-agreement communications.  The Government Parties note
that, consistent with the common interest doctrine, all communications with the bondholders they
have produced previously in this dispute occurred *before* they reached an agreement and a
common interest attached.  *See* August 2, 2019 Order, at ¶¶ 11-13.  But the Committee seeks no
different result here.  If the Government Parties have had discussions with bondholders regarding
a potential *new* RSA, then those discussions would, by definition, be pre-agreement (*i.e.*, before
an agreement on a new RSA) and therefore would not be covered by the common interest
doctrine.  The earliest date a new common interest could attach to these communications is the
date on which the Government Parties and the bondholders actually settle on the material terms
of a revised RSA, which has not yet occurred.

C.     Deliberative Process Privilege Does Not Apply to Communications Discussing
Status of RSA Because Such Communications are Directly at Issue

16.     The deliberative process privilege "shields from public disclosure confidential
inter-agency memoranda on matters of law of policy."  *Texaco P.R., Inc. v. Dep't. of Consumer
Affairs*, 60 F.3d 867, 884 (1st Cir. 1995).  In analyzing whether the deliberative process privilege

8

should be applied, courts consider that the "evidentiary system demands a restrictive

interpretation when determining the existence of a privilege." *Bhatia Gautier v. Rossello*

*Nevares,* 199 D.P.R. 59, 89 (2017).

17.     Importantly, as the D.C. Circuit has observed, "[t]he [deliberative process]

privilege was fashioned in cases where the governmental decisionmaking process is ***collateral to***

***the plaintiff's suit***." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,

145 F.3d 1422, 1424, *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) (emphasis added).

Where, however, "'the decision-making process itself is the subject of the litigation,' it is

inappropriate to allow the deliberative process privilege to preclude discovery of relevant

information." *Velazquez v. City of Chicopee*, 226 F.R.D. 31, 34 (D. Mass. 2004); *see also*

*Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) (same) (*citing Burka v. NYC*

*Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y. 1986)).[6]

18.     The Court previously ordered the Government Parties to produce documents

related to their initial decision to enter into the RSA in 2019.  *See* August 2, 2019 Order ¶ 7.  In

particular, the Court wrote:

> The Oversight Board represented to the Court that it is not
> asserting the deliberative process over the negotiation of the RSA,
> and that it is producing documents related to that process.  To the
> extent that AAFAF and PREPA are claiming a deliberative process
> privilege over the negotiation of the RSA, it is overruled.

---

[6]     *See also Caparrós v. Lynch*, 2017 U.S. Dist. LEXIS 109041, at *25 (D.P.R. June 15, 2017) (ordering
production of documents that, although at least arguably deliberative, "shed light on the defendant's
intent, an issue squarely implicated by the plaintiff's retaliation claim" and thus were not protected by the
deliberative process privilege); *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 41-42 (D. Mass.
2008) (notwithstanding claim of deliberative process privilege, holding that defendants had "the right during
discovery to see documents reflecting the government's knowledge" where "[g]overnment knowledge could
conceivably be relevant to two elements" of the claim at issue); *Fairholme Funds, Inc. v. United States*, 128 Fed. Cl.
410 (2016), *mandamus granted in part and denied in part, In re United States*, 678 F. App'x 981 (Fed. Cir. 2017)
(ordering disclosure of government materials when such materials implicate the merits of the case).

*Id.*  The Court also recognized two limited exceptions to this general rule:  that documents

related to the demand protection term sheet and the development of the certified fiscal plan

would be subject to the deliberative process privilege and need not be produced.  *See id.* ¶ 8.

19.      The Government Parties now attempt to rewrite the Court's prior order by

contending that they were only required to produce communications **with the supporting**

**bondholders**.  *See* Opp. ¶ 25 ("Judge Dein noted that the Oversight Board was not asserting a

deliberative process privilege over the negotiation of the RSA with the supporting holders . . .").

This invented limitation finds no support in the Court's order and is inconsistent with what

actually happened.  The Government Parties in fact produced numerous internal communications

relating to the government's evaluation and consideration of the RSA and confirmed to the Court

that they did so.  *See* J. Resp. to Renewed Mot. to Compel, ¶ 51 [Dkt. No. 1500] ("[T]he

Oversight Board has produced extensive documents regarding the RSA negotiating process,

including materials submitted to the Oversight Board by its advisors in connection with the

Board's decision making process."); *see also* July 30, 2020 Hr'g Tr. at 73:18-19 ("We have not

been asserting the deliberative process privilege over the decision to enter into the RSA at all.").

20.      The Government Parties argue that the deliberative process should not apply

because no final decision has been made regarding the ongoing viability of the RSA.  This,

however, is the exact question before the Court in the Motion to Dismiss.[7]  The Government

Parties cannot have it both ways—they cannot, on the one hand, make the unsupported assertion

that they have made no decision on the RSA, and then, on the other hand, use that unsupported

assertion to claim privilege over the very documents that may disprove it.  *See Greater*

---

[7]      Because the question of whether there has been a final decision is the question before the court, the
Government Parties' attempts to distinguish the Committee's cases (Opp. ¶ 27 n.7) all fail.

*Newburyport Clamshell Alliance v. Pub. Serv. Co. of New Hampshire*, 838 F.2d 13, 20 (1st Cir.

1988) (holding that "the privilege ends at the point where the defendant can show that the

plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence

that will be unavailable to the defendant if the privilege prevails").[8] Thus, the Government

Parties' privilege claims are without basis and should be rejected.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court grant the relief

requested in the Committee Objection and grant the Committee such other relief as this Court

deems just and proper.

Dated: September 25, 2020

/s/ Luc A. Despins                      .
PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors
for all Title III Debtors (except COFINA and PBA)*[9]

- and -

/s/ John Arrastia

---

[8]     Finally, the deliberative process privilege does not apply to any documents shared with outside parties. "If the prior disclosure is voluntary and is made to a third party, the deliberative process privilege is waived, even where the third party had promised not to disclose the information further." *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 207 (D. Del. 1991). To the extent that the Government Parties shared documents otherwise covered by the deliberative process privilege with bondholders or others, those documents lose their privilege.

[9]     Paul Hastings LLP does not represent the Committee with respect to any statements in this Reply regarding Citigroup Global Markets, Inc.

11

GENOVESE JOBLOVE & BATTISTA, P.A.
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of
Unsecured Creditors for all Title III Debtors (except
COFINA and PBA) with Respect to Citigroup Global
Markets, Inc.*

- and -

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC -
PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors (except COFINA and PBA)*