# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17-BK-4780-LTS<br>**Re: ECF No. 2120** |

## STATUS REPORT OF THE GOVERNMENT PARTIES REGARDING THE COVID-19 PANDEMIC AND THE 9019 MOTION

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtor's sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF," and collectively with PREPA and the Oversight Board, the "Government Parties"), as the entity authorized to act on behalf of PREPA pursuant to the authority granted to it under the Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017, respectfully submit this status report (the "Status Report"), pursuant to the Court's *Order Setting Deadline for Further Status Report Regarding the COVID-19 Pandemic and the 9019 Motion*, [ECF No. 2120] (the "August 5, 2020 Adjournment Order").

**Background**

1. The Government Parties filed their *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* on May 10, 2019. [ECF Nos. 1235, 1236] (the "9019 Motion"). Subsequently, the Government Parties and the objecting parties jointly sought eight consensual extensions of the hearing date and related deadlines in connection with the 9019 Motion primarily to accommodate the objecting parties' discovery demands. *See* ECF Nos. 1250, 1361, 1513, 1573, 1636, 1671, 1683, and 1713. In December 2019, the Government Parties additionally sought to adjourn the hearing date and related deadlines to "allow for additional progress on PREPA's transformation and to provide

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

2

sufficient time to conclude the legislative process necessary to obtain approval of certain aspects of the RSA." ECF No. 1844. *See also* ECF No. 1824 (seeking adjournment of pre-hearing deadlines pending discussion among the parties concerning an adjourned hearing date). No parties objected to this extension.

2. In February 2020, the Government Parties sought a further adjournment of the hearing and related deadlines in light of natural disasters then affecting the island and PREPA, and resistance to potential legislation to facilitate the RSA.[3] The Official Committee of Unsecured Creditors (the "Committee") filed a limited objection to the adjournment, stating "[the Committee] does not object in principle to another adjournment of the hearing on the 9019 Motion. If the Government Parties remain unready or unwilling to request the Court's approval of the RSA, the Committee will not seek to compel them to do so."[4]

3. On March 27, 2020, in response to the emerging threat of COVID-19 and its effects on the people and economy of Puerto Rico, the Government Parties filed their *Urgent Joint Motion of the Government Parties to Adjourn all Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and*

---

[3] *See Urgent Motion of Government Parties for (1) Bridge Order Pending Determination of Their Motion for a Revised Scheduling Order; and (2) Eleventh Revised Order Modifying Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods [ECF No. 1235]*, [ECF No. 1897]; *Financial Oversight and Management Board's Submission (A) in Further Support of Government Parties' Urgent Motion for an Eleventh Revised 9019 Scheduling Order; and (B) in Response to the Urgent Motion of the Fuel Line Lenders and Union Entities to Adjourn March 4, 2020 Hearing on Bondholders' and Government Parties' Motions to Dismiss in Adversary Proceedings*, [ECF No. 1911]. *See also* ECF No. 1885 (seeking limited adjournment of briefing deadlines pending discussions among the parties regarding an adjourned schedule).

[4] *Official Committee of Unsecured Creditors' Limited Objection and Reservation of Rights in Response to Urgent Motion of Government Parties for (1) Bridge Order Pending Determination of Their Motion for a Revised Scheduling Order; and (2) Eleventh Revised Order Modifying Certain Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods [ECF No. 1235] ¶ 1*, [ECF No. 1904].

928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235]*, [ECF No. 1947] (the "March 27, 2020 Adjournment Motion"), in which the Government Parties asked this Court to adjourn all hearing and briefing deadlines in connection with the 9019 Motion and direct the Government Parties to file a status report on or before May 15, 2020.

4. The Committee did not oppose the March 27, 2020 Adjournment Motion. The Fuel Line Lenders[5] and Sistema de Retiro de Los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") responded to the motion by acknowledging the "very difficult circumstances" in Puerto Rico as a result of the COVID-19 pandemic and requesting that their pending adversary proceedings be similarly adjourned.[6]

5. On April 2, 2020, the Court entered the *Order Granting Urgent Joint Motion of the Government Parties to Adjourn All Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods [ECF No. 1235]*, [ECF No. 1954] (the "April 2, 2020 Adjournment Order"), granting the relief requested in the March 27, 2020 Adjournment Motion and directing the Government Parties to file a status report "providing an update on PREPA's financial condition and proposing next steps with respect to the

---

[5] The Fuel Line Lenders are Cortland Capital Market Services LLC ("Cortland"), as successor administrative agent under a Credit Agreement, dated May 4, 2012, among PREPA, Scotiabank de Puerto Rico and certain lenders (the "Scotiabank Credit Agreement"), and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders under the Scotiabank Credit Agreement and under a Trade Finance Facility Agreement, dated July 20, 2012, between PREPA and Citibank, N.A.

[6] *Joint Response of Fuel line Lenders and Unions Entities to Government Parties' Adjournment Motion* ¶¶ 1–2, [ECF No. 1949].

4

9019 Motion and the pending motions to dismiss in Adversary Proceeding Nos. 19-396 and 19-405 on or before May 15, 2020." April 2, 2020 Adjournment Order ¶ 3.

6. On May 15, 2020, the Government Parties filed their *Status Report of the Government Parties Regarding the Covid-19 Pandemic and the 9019 Motion*, [ECF No. 1992] (the "May 15, 2020 Status Report"), in which the Government Parties informed the Court that, among other things, "[t]he COVID-19 pandemic has reshaped Puerto Rico's economic landscape" (¶ 5), "PREPA's collections have decreased due to the pandemic" (¶ 6), "the situation remains fluid" (¶ 6), "the Government Parties' focus remains on ensuring the health and well-being of the people of Puerto Rico, and assessing the short- and medium-term impact of the pandemic on Puerto Rico's economy" (¶ 7), and "the Oversight Board still lacks sufficient visibility into PREPA's prospects to determine the feasibility of the restructuring contemplated by the RSA[7]" (¶ 7).

7. After the Government Parties submitted a status report on May 15, 2020, the Committee filed a response admitting that "[t]he Oversight Board should take the appropriate time to evaluate potential paths forward," but, nevertheless, declaring that the RSA no longer exists in its current form, and requesting the Court terminate the 9019 Motion absent the Oversight Board confirming it will proceed with the 9019 Motion in its current form.[8] The Court denied the Committee's requested relief and granted the adjournment of the hearing the Government Parties requested.[9]

---

[7] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the July 31, 2020 Status Report.

[8] *Official Committee of Unsecured Creditors' (a) Response to Status Report of Government Parties Regarding COVID-19 Pandemic and PREPA 9019 RSA Motion [Docket No. 1992 in Case No. 17- 4780] and (b) Statement of Position Regarding Status Report of Financial Oversight and Management Board for Puerto Rico regarding COVID-19 Pandemic and Proposed Disclosure Statement Schedule [Docket No. 13018 in Case No. 17-3283]* ¶ 9, [ECF No. 1996].

[9] *See Order (i) Further Adjourning Deadlines Applicable to the Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement [ECF No. 1235], and (ii)*

8. In compliance with the May 22, 2020 Adjournment Order, the Government Parties submitted a status report on July 31, 2020, informing the Court that because the COVID-19 pandemic was continuing to unfold, more time was necessary to understand how the situation will impact PREPA.[10] Neither the UCC nor any other party filed a response to the status report. The Court ordered the continued adjournment of the deadlines and hearing in connection with the 9019 Motion and directed the Oversight Board to file a status report on September 25, 2020. *See* August 5, 2020 Adjournment Order.

9. On August 18, 2020, the Committee filed a motion to terminate the 9019 Motion, seeking relief identical to its request in its response to the May 15 status report. *See Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion*, [ECF No. 2144] (the "Termination Motion"). On September 1, 2019, the Government Parties opposed the Termination Motion. *Joint Objection of PREPA and AAFAF to Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [ECF No. 2165].

10. In connection with its motion, the UCC filed a motion to compel discovery regarding "whether the RSA remains viable in its current form, and/or whether the RSA may be renegotiated by the parties." *Official Committee of Unsecured Creditors' Urgent Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* ¶ 10, [ECF No. 2155] ("Motion to Compel"). The Government Parties opposed the Motion to Compel. *Respondents' Opposition to UCC's Urgent Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* [ECF No. 2164].

---

*Adjourning the June 3, 2020, Hearing on the Government Parties' and the Bondholders' Motions to Dismiss Amended Complaints in Adversary Proceedings*, [ECF No. 2006] (the "May 22, 2020 Adjournment Order").

[10] *Status Report of the Government Parties Regarding the COVID-19 Pandemic and 9019 Motion*, [ECF No. 2111] (the "July 31, 2020 Status Report").

11. Judge Dein denied the Motion to Compel for lack of relevance, holding that "the RSA's status is not a matter of opinion or a subject of inquiry, it is an objective fact and, by its terms, the RSA remains in effect unless and until a termination right is exercised." *Order on Motion to Compel* at 5 [ECF No. 2177] (the "Discovery Order").

12. After the UCC filed an objection to Judge Dein's Discovery Order,[11] the Court adjourned the hearing on the Termination Motion, noting "[n]otwithstanding the UCC's concerns regarding the delays to the 9019 Motion, and with the intervening interruptions arising from COVID-19 and other crises, it would be inappropriate, inefficient, and wasteful to proceed to a hearing on the instant Motion the week before the September Report is due." *Order Regarding the Official Committee of Unsecured Creditors' Motion to Terminate Rule 9019 Motion* at 2, [ECF No. 2189].

13. At the September 16, 2020 omnibus hearing, the Court rejected a similar litigation tactic by the Committee in the Commonwealth's Title III Case by denying the Committee's lift stay motion.[12] There, litigation relating to, *inter alia*, general obligation holders' claims is also subject to a temporary stay while settlement negotiations relating to an amended plan of adjustment resumed. Notwithstanding the Oversight Board's representations that the parties were continuing to negotiate a revised settlement, the Committee argued that the settlement at issue had fallen apart and that therefore the plan confirmation process was indefinitely paused. Sept. 16, 2020 H'rg Tr. 80:7-13. On the basis of this delay, the Committee sought to lift the stay to pursue its objection to

---

[11] *Official Committee of Unsecured Creditors' Urgent Objection to Magistrate Judge's September 5, 2020 Order on Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion,* [ECF No. 2184]. The Government Parties filed their opposition to the Objection on September 18, 2020. *Respondents' Opposition to UCC's Urgent Objection to Magistrate Judge's September 5, 2020 Order on Motion to Compel Discovery in Connection with Motion to terminate Bankruptcy Rule 9019 Motion*, [ECF No. 2207].

[12] *See Urgent Motion of Official Committee of Unsecured Creditors to Lift Stay to Allow Committee to Pursue Objection to GO Priority* [ECF No. 13726] ("Lift Stay Motion").

7

the claims that were subject to settlement negotiations. In response, this Court declined "to pronounce dead at this juncture a strategy that may still have vitality." *Id.* 80:16-17. This Court recognized there is no "evidence that the Oversight Board has any incentive to drag on negotiations in a truly indefinite manner," but explained the stay's "ultimate duration is not yet certain and can't be" because "[a]mong other things, there are ongoing and potential future further effects of COVID-19, hurricanes, drought, earthquakes, membership turnover on the Oversight Board, political change within the Commonwealth, and unforeseen future events" all of which "may cumulatively extend the timetable for reaching a confirmable plan of adjustment, but they neither doom the project nor portend an endless Stay." *Id.* 80:21-81:4-6.

14. This Court therefore declined to lift the stay, holding that permitting the Committee to pursue an objection to general obligation holders' claims is not warranted because, among other things, (i) allowing the objection could cause settlement negotiations to collapse and litigation to flourish; (ii) ramping up litigation would burden the Commonwealth's resources; (iii) the Committees' rights are preserved; and (iv) it is highly unlikely that litigation of the underlying issues could be resolved quickly given the "parties' predilection for extensive briefing and pursuing appeals." *See id.* 81-83. The Court further ordered that "[t]he issues presented in the Motion may be raised again and noticed for a hearing no sooner than in connection with the March 2021 Omnibus Hearing." *See* [ECF No. 14331; Case No. 17-03283].

### Conditions on the Island

15. Since the submission of the July 31, 2020 Status Report, the COVID-19 pandemic has continued to affect lives and livelihoods on the Island, as it has across the globe. Although the Island is learning to adjust to the "new normal" as critical government functions and businesses begin to reopen to the extent it is safe and appropriate, this is not a linear process and some of the

restrictions that were lifted were reinstituted to address the spike in COVID cases. As of September 25, 2020 there are 43,842 confirmed and likely cases of COVID-19 and 627 deaths caused by the disease on the Island.[13] Currently, the date a vaccine will be available and administered to Puerto Rico's residents remains unknown, the same as it is unknown for the balance of the United States and its territories. Therefore, the duration of a constrained economy is unknown.

16. In addition to the COVID-19 pandemic, severe drought conditions forced the Governor to declare a state of emergency on June 29, 2020. While drought conditions in Puerto Rico have subsided since peaking in July, PREPA spent substantial time preparing for, and now is in the midst of, the Atlantic hurricane season, which has been one of the most active seasons in history. Puerto Rico was affected by tropical storms Isaias and Laura, which left up to 400,000 and 200,000 PREPA customers, respectively, without power. As a result of its preparation for the hurricane season, PREPA restored power service to 100% of its customers in less than a week after the passing of tropical storm Isaias and in three days after the Island was affected by tropical storm Laura.

17. In spite of the challenging conditions on the Island, the Commonwealth recently completed its primary elections and, following the upcoming November election, the Commonwealth will have a new governor. In the intervening months, the Government Parties will continue their efforts and work with Governor Vázquez toward a successful restructuring for PREPA and its eventual exit from Title III. The Government Parties will also prepare to work

---

[13] Alejandra Rosa and Frances Robles, *Pandemic Plunges Puerto Rico Into Yet Another Dire Emergency*, N.Y. TIMES, July 9, 2020, at A6, *available at* https://www.nytimes.com/2020/07/08/us/coronavirus-puerto-rico-economy-unemployment.html; *see also* Departmento de Salud, COVID-19 Cases in Puerto Rico (Data as of September 24, 2020), *available at* http://www.salud.gov.pr/Pages/coronavirus.aspx.

9

with the new governor so that the restructuring process and PREPA can move forward seamlessly and efficiently at the appropriate time.

### Evaluation of the RSA

18. No party to the RSA has terminated the RSA, and the 9019 Motion remains pending. The Government Parties seek to preserve the largely consensual posture of the case by evaluating the RSA in light of the changing economic landscape to determine whether the RSA needs to be renegotiated and, if so, how. In either scenario, the Court retains jurisdiction over the 9019 Motion and the discretion to manage its docket to grant further adjournments.

19. While conditions on the Island remain fluid due to both extreme weather conditions and the unprecedented nature of COVID-19, the Government Parties have not remained idle during the postponement of the proceedings on the 9019 Motion. As mentioned in the July 31, 2020 Status Report, on June 29, 2020, the Oversight Board certified a 2021 fiscal year plan for PREPA, which was necessary before PREPA could continue to evaluate the RSA. With the fiscal plan in place, the Government Parties are carefully comparing the fiscal plan assumptions against the reality of the situation on the Island.

20. Since the last status report, the Oversight Board, continues to conduct diligence into the RSA and the affordability and sustainability of electricity rates on the island given the still changing economic landscape and the effects of the COVID-19 pandemic, as well as to analyze the optimal means of implementing the RSA transactions. This diligence and analysis will help inform the Government Parties' determination regarding whether the RSA should be renegotiated and the parameters for doing so.

21. Moreover, as the Court is well aware, the Government Parties have moved ahead on critical initiatives, such as transformation of the T&D system through the now-effective

Operation and Maintenance Agreement with LUMA Energy, which will enhance PREPA's ability to provide reliable and affordable power to its customers. PREPA and the Puerto Rico Public-Private Partnership Authority have also commenced the process of seeking a similar management transaction for PREPA's power generation assets. Market response to a request for qualifications[14] from private entities to run PREPA's legacy generation assets, which opened on August 11, 2020 and closed September 15, 2020, has been strong. The RFQ for companies and consortia that may be interested in managing, operating, maintaining and decommissioning one or more of PREPA's base-load generation plants and gas turbine peaking plants drew more than 10 "world-class" respondents. All statements of qualifications received will now be carefully evaluated by the partnership committee created by the P3 Authority. A short list of qualified proponents should be picked by October.

22. In addition, the Federal Emergency Management Administration (FEMA) announced last week that it plans to award almost $13 billion to Puerto Rico, with approximately $9.6 billion dedicated to help rebuild Puerto Rico's electrical grid system to support the Hurricane Maria response and recovery. Federal funding will allow PREPA to repair and replace thousands of miles of transmission and distribution lines, electrical substations, power generation systems, and office buildings, and make other grid improvements. The Government Parties are in the process of reviewing the grant, the required cost share related thereto, and the impact on PREPA.

23. The same factors that led to the Court's denial of the Committee's Lift Stay Motion in the Commonwealth's Title III case are present here. First, the Court should not permit the Committee to unilaterally force a termination of a motion to approve a pending settlement against

---

[14] PREPA, Request for Qualifications (Aug. 10, 2020), *available at* https://app.reorg.com/documents/20200811/5f32b5e7e8cb2.pdf.

the wishes of the parties to the RSA—particularly because the RSA underlying the 9019 Motion remains valid and in full force and effect, and none of the parties to the RSA have taken steps to terminate it. The Court has repeatedly recognized that the Oversight Board must take a holistic approach to managing the Title III Cases, which is not concerned solely with maximizing creditor recoveries, but also takes into account the needs of Puerto Rico and its residents. To that end, the Court has also determined that the Oversight Board's "strategy and tactics" in managing the claims process should be afforded substantial deference.[15] Here, the Oversight Board has determined that the best course for PREPA is to preserve its consensual posture with PREPA's bondholders, which will allow the Government Parties to focus their resources on PREPA's transformation and continuing to evaluate the RSA while the Oversight Board completes its diligence and analysis. That decision should be afforded deference. The Government Parties have not sought an indefinite adjournment and will continue to update the Court through periodic status reports. Although the Government Parties might need to renegotiate certain terms of the RSA, renegotiation would be to preserve the settlement on altered terms, if possible. Prematurely pivoting to litigation as the Committee wants to do would be "inappropriate, inefficient, and wasteful." *See* ECF No. 2189 at 2. The Oversight Board also contends that the Committee's goal – to control an objection to the claims of the RSA parties – is unattainable in any event because the claims are against PREPA, not the Committee, and controlling claim objections impinges on the Oversight Board's exclusive right to propose a plan of adjustment resolving those same claims. Terminating the 9019 Motion at this juncture could force the Government Parties to engage in costly litigation with multiple

---

[15] *See Memorandum order Terminating Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18499 Filed by U.S. Bank National Association, in Its Capacity as Trustee for Non-Recourse PREPA Bonds* at 6 [ECF No. 1855] ("PROMESA provides substantial deference to the strategy and tactics of the Oversight Board"); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d 25, 30–31 (D.P.R.), *aff'd*, 954 F.3d 1 (1st Cir. 2020) (finding that the Oversight Board is "entitled to a measure of deference" with regard to its strategic and tactical judgments).

12

creditor constituencies, including the RSA Supporting Holders, at a time when the Government parties should be focusing their efforts on achieving a sustainable, consensual, and global resolution. Contrary to the Committee's position, that the RSA may need to be renegotiated says nothing about the viability of the RSA and the 9019 Motion. If anything a successful renegotiation may make the benefits of the settlement to PREPA even more significant.

24. Should the 9019 Motion, and potentially the RSA, be terminated as a result of the Committee's tactics, the settlement framework could be lost. Reconstructing it will be difficult, if not impossible, because many of the original parties to the RSA, who held large positions, have sold their bonds. While buyers remain subject to the RSA as long it is in effect, the Government Parties will not be negotiating with the same group. In addition, the parties could revert to full litigation stances on pending litigation matters, such as the Renewed Receiver Motion, Lien Challenge, and potentially other disputes that have not commenced. The Government Parties would have to litigate these disputes while simultaneously managing PREPA's transformation, the effects of the pandemic, and attempting to negotiate any new settlements. If the 9019 Motion is terminated and litigation recommences, it is very likely the "egg cannot be unscrambled" and the largely consensual posture of this case will be lost.

25. Second, no parties are prejudiced by the continued adjournment of the 9019 Motion while the Government Parties evaluate the RSA. Although the Court has determined that no claim objection should proceed while the 9019 Motion is pending, all parties' rights with respect to any objections to the 9019 Motion or any claim objections, if any, are fully preserved. Should any renegotiation of the RSA fail and the settlement terminated, the Committee will have ample opportunity to attempt to bring its claim objection, and the Government Parties will have the opportunity to contest the Committee's right to do so.

26. Third, termination of the 9019 Motion would not be an economical use of judicial resources. If the RSA is not terminated, the Government Parties could refile the 9019 Motion but judicial resources would be wasted undoing and redoing the stays currently in place as a result of the pendency of the 9019 Motion. If the RSA is terminated as a result of termination of the 9019 Motion, no less than three highly contentious and complex litigations would immediately become live upon termination. Even absent discovery (which will almost certainly be sought), these litigations and inevitable appeals will be costly and very time-consuming at a time when the Government Parties should be concentrating on the health and well-being of the people of Puerto Rico and focusing on the best path to allow PREPA to exit expeditiously from Title III.

### Next Steps

27. As described above, the Government Parties are continuing to conduct diligence into the impact of recent events on Puerto Rico and its economy and rate sustainability in light of these developments. The Government Parties expect to make material progress on these analyses by the end of the calendar year, and the timing of the availability of a vaccine might then be known and might further inform the analysis.

28. Throughout the adjournment of the 9019 Motion, the Government Parties have provided regular status reports to the Court regarding the progress of their evaluations, and they will continue to do so if there is further adjournment. Accordingly, the Government Parties request that the adjournment of the 9019 Motion remain in place and that they be permitted to provide the Court an updated status report on the Government Parties' position on or before December 9, 2020.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: September 25, 2020<br>      San Juan, Puerto Rico | Respectfully submitted, |
| | **PROSKAUER ROSE LLP** |
| **O'MELVENY & MYERS LLP** | /s/ *Martin J. Bienenstock* |
| /s/    *Elizabeth L. McKeen* | Martin J. Bienenstock (*pro hac vice*)<br>Paul V. Possinger (*pro hac vice*) |
| John J. Rapisardi<br>Nancy A. Mitchell<br>Maria J. Diconza<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>Email: jrapisardi@omm.com<br>nmitchell@omm.com<br>mdiconza@omm.com | Ehud Barak (*pro hac vice*)<br>Daniel S. Desatnik (*pro hac vice*)<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as representative for the Debtors* |
| -and- | **O'NEILL & BORGES LLC** |
| Peter Friedman<br>1625 Eye Street, NW<br>Washington, DC 20006<br>Telephone: (202) 383-5300<br>Facsimile: (202) 383-5414<br>Email: pfriedman@omm.com | /s/ *Hermann D. Bauer*<br><br>Hermann D. Bauer<br>USDC No. 215205<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944 |
| -and- | *Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors* |
| Elizabeth L. McKeen<br>Ashley M. Pavel<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 823-6900<br>Facsimile: (949) 823-6994<br>Email: emckeen@omm.com | |
| *Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority* | |

| | |
|---|---|
| **MARINI PIETRANTONI MUÑIZ, LLC** | **DÍAZ & VÁZQUEZ LAW FIRM, P.S.C.** |
| */s/ Luis C. Marini-Biaggi* | */s/ Katiuska Bolaños* |
| Luis C. Marini-Biaggi<br>USDC 222301<br>250 Ponce de León Ave., Suite 900<br>San Juan, Puerto Rico 00918<br>Tel.:(787) 705-2171<br>Email: lmarini@mpmlawpr.com | Katiuska Bolaños<br>USDC No. 231812<br>290 Jesús T. Piñero Ave.<br>Oriental Tower, Suite 1105<br>San Juan, PR 00918<br>Tel: (787) 395-7133<br>Fax: (787) 497-9664<br>Email: kbolanos@diazvaz.law |
| *Co-counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority* | *Counsel for Puerto Rico Electric Power Authority* |

16