**Hearing Date: October 28, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)**
**Objection Deadline: October 13, 2020 at 4:00 p.m. (ET) / 4:00 p.m. (AST)**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- X
                                                                       :
In re:                                                                 :
                                                                       :
THE FINANCIAL OVERSIGHT AND                                            :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                      :  Title III
                                                                       :
    as representative of                                             :  Case No. 17-BK-3283 (LTS)
                                                                       :
THE COMMONWEALTH OF PUERTO RICO *et al.*,                              :  (Jointly Administered)
                                                                       :
    Debtors.[1]                                                       :
---------------------------------------------------------------------- X

### NOTICE OF HEARING ON MOTION, UNDER FEDERAL RULE
### OF BANKRUPTCY PROCEDURE 9023, OF OFFICIAL COMMITTEE OF
### UNSECURED CREDITORS FOR RECONSIDERATION OF SEPTEMBER 17, 2020
### ORDER DENYING MOTION TO LIFT STAY TO ALLOW COMMITTEE TO PURSUE
### PRIORITY OBJECTION TO GO BOND CLAIMS

**PLEASE TAKE NOTICE** that a hearing on the annexed *Motion, Under Federal Rule of Bankruptcy Procedure 9023, of Official Committee of Unsecured Creditors for Reconsideration of September 17, 2020 Order Denying Motion to Lift Stay to Allow Committee to Pursue Priority Objection to GO Bond Claims* (the "Motion") filed by the Official Committee of Unsecured Creditors,[2] will be held before the Honorable Laura Taylor Swain, United States District Judge, at the United States District Court for the District of Puerto Rico, in Room 3, 150 Carlos

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **October 28, 2020 at 9:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Motion by any party shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, by submitting a hard copy via mail to the Clerk's Office, United States District Court, Room 150 Federal Building, San Juan, PR 00918-1767 or by hand delivery to the Clerk's Office, United States District Court, 150 Carlos Chardon Avenue, Room 150, San Juan, PR 00918, to the extent applicable, and shall be served in accordance with the *Thirteenth Amended Case Management Procedures* [Docket No. 13512, Ex. A], so as to be so filed and received no later than **October 13, 2020 4:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection Deadline").

[*Remainder of page intentionally left blank.*]

2

**PLEASE TAKE FURTHER NOTICE** that if an Objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the District Court may enter an order granting the relief sought without a hearing pursuant to the *Thirteenth Amended Case Management Procedures*.

Dated: October 1, 2020        By: */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x
In re:                                                               :
                                                                     :
THE FINANCIAL OVERSIGHT AND                                          :
MANAGEMENT BOARD FOR PUERTO RICO,                                    :   PROMESA
                                                                     :   Title III
      as representative of                                       :
                                                                     :   Case No. 17-BK-3283 (LTS)
THE COMMONWEALTH OF PUERTO RICO *et al*.,                            :
                                                                     :   (Jointly Administered)
      Debtors.[1]                                                :
---------------------------------------------------------------------x

**MOTION, UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 9023, OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR RECONSIDERATION OF SEPTEMBER 17, 2020 ORDER DENYING MOTION TO LIFT STAY TO ALLOW COMMITTEE TO PURSUE PRIORITY OBJECTION TO GO BOND CLAIMS**

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby submits this motion (the "Motion"), pursuant to Federal Rule of Civil Procedure 59(e), as incorporated in these Title III cases pursuant to Federal Rule of Bankruptcy Procedure 9023, for reconsideration of the Court's September 17, 2020 order [Docket No. 14331] (the "Order") denying the Committee's motion to lift the litigation stay applicable to the Committee's objection to the priority of the GO bond claims [Docket No. 13726] (the "Lift Stay Motion").[3] In support of this Motion, the Committee respectfully states as follows:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms used but not defined herein shall have the meanings given to them in the Lift Stay Motion.

**PRELIMINARY STATEMENT**

1. On September 30, 2020, the Oversight Board released "cleansing materials" revealing the status of its negotiations with the GO and PBA bondholders, including a presentation revealing the details of the parties' most recent competing settlement proposals. These proposals reveal, for the first time, that whatever new agreement the parties may eventually reach on a proposed plan of adjustment will no longer include a settlement of the GO priority dispute. Rather, the Oversight Board has decided to give effectively all value under any proposed plan—at least $10 billion—to the GO and PBA bondholders (which are largely Wall Street distressed hedge funds, which acquired their bonds for a fraction of the value that they now stand to receive), while leaving a mere pittance to other unsecured creditors, including the many on-island residents and small businesses who make up the Committee's constituency. The newly-disclosed materials also show that the parties remain extremely far apart on the other terms of a new, comprehensive plan of adjustment. For these reasons, the Committee submits that the basis for the Court's denial of the Lift Stay Motion no longer exists and respectfully requests that the Order be reconsidered based on the discovery of previously unavailable evidence pursuant to Federal Rule of Civil Procedure 59(e).

2. A fundamental underpinning of the Court's ruling on the Lift Stay Motion was that the Committee should not be permitted to pursue its objection to the priority of the GO bonds while the Oversight Board was continuing to negotiate a settlement of that dispute, among others. But the materials released yesterday show that the negotiation of this issue is no longer ongoing: the Oversight Board and the bondholders have already agreed in their most recent proposals that the consideration to non-GO and PBA bondholder creditors under any plan of adjustment will be reduced from $527 million under the February 9, 2020 PSA to only $50 million (*a reduction of the recovery percentage of general unsecured creditors from 3.9% to*

2

*only 0.37%*), with all other value going to the bondholders. According to the Oversight Board's July 30 proposal, such bondholder consideration is worth more than $10.5 billion, representing a recovery of more than 56% on account of their claims.[4] While the Oversight Board may contend that these proposed distributions reflect a "settlement" of the GO priority dispute to which the Committee is free to object, the Committee submits that the Oversight Board's most recent proposal makes even clearer that there is no settlement of this dispute at all; rather, the current proposal is an effective concession by the Oversight Board that the bondholders have priority over all other creditors. Because there is no longer the prospect of a settlement of the GO priority dispute (or even ongoing negotiations toward a potential settlement), the Committee should be entitled to pursue its objection without delay. There is no reason for the Committee to have to wait until March 2021 to again seek relief from the Court, as contemplated by the Order.

3. The newly-released evidence also shows that the Oversight Board's statements to the Court concerning the "progress" it has made toward a renegotiated global settlement are, at best, grossly overstated. Aside from the Oversight Board's all-out capitulation on the GO priority dispute, the parties remain very far apart on the total consideration to be paid by the Commonwealth to the bondholders, as evidenced by a gap of approximately $3 billion in their respective proposals. Moreover, the materials indicate that neither party has submitted a further written settlement offer since August 24, 2020, the date of the bondholders' last proposal, thus suggesting that the negotiations are progressing very slowly, if at all. Finally, the materials remove any doubt that, if the parties do eventually reach an agreement, it will be as part of a "new PSA" that has yet "to be negotiated,"[5] and not part of a revision to the existing February

---

[4] *See* August 24 PSA Creditors Proposal, at p. 3 (Ex. 1).
[5] *Id.*, at p. 2.

3

2020 PSA, as the Oversight Board has suggested. The Oversight Board's refrain that the February 2020 PSA has not been terminated is debunked by these statements.

4. The Committee appreciates that motions for reconsideration are not often granted. But in light of the material new information the Oversight Board has just made public,[6] the Committee respectfully submits that reconsideration is appropriate in this instance because the fundamental bases for the Court's decisions to deny the Lift Stay Motion no longer exist.

## BACKGROUND

5. Regarding the events that preceded the filing of the Lift Stay Motion on July 19, 2020, the Committee incorporates by reference the facts set forth in the Lift Stay Motion.

6. On September 1, 2020, the Oversight Board filed its objection [Docket No. 14141] (the "Lift Stay Objection") to the Lift Stay Motion, which, among other things, touted the progress the Oversight Board has made in recent settlement discussions with the PBA and GO bondholders, noting that the Oversight Board has "transparently communicated [such progress] to the Court and the public." On September 11, 2020, the Committee filed its reply [Docket No. 14237] in support of the Lift Stay Objection.

7. On September 16, 2020, the Court held a hearing on the Lift Stay Motion at which it indicated it would deny the motion. The Court based its ruling on, among other things, its determination that lifting the stay to allow the GO Priority Objection to proceed would undermine the Oversight Board's progress in negotiations with the GO bondholders and that unsecured creditors would not be prejudiced if the stay remains in place. On September 17, the Court issued the Order, denying the Lift Stay Motion for the reasons stated at the hearing.

---

[6] This information could not have been discovered by the Committee prior to the Court's ruling on the Lift Stay Motion because the Oversight Board and bondholders would have taken the position that such information was shielded by the mediation privilege.

4

8. On September 30, 2020, the Oversight Board issued a public statement announcing that the Oversight Board and "principal creditor parties to the [February 2020 PSA] agreed to the release today [of] documents related to the ongoing negotiations to restructuring the Commonwealth's debt."[7] Simultaneously, the Oversight Board made publicly available (i) a presentation entitled "August 24 PSA Creditors Proposal," which purports to describe an Oversight Board settlement proposal dated July 30, 2020 and bondholder proposal dated August 24, 2020 and to compare such proposals to each other as well as to the settlement outlined in the February 2020 PSA,[8] and (ii) a separate Oversight Board presentation dated August 18, 2020 discussing the Oversight Board's July 30 proposal.[9] Neither the July 30 proposal nor the August 24 proposal had previously been disclosed to the public (or to the Committee).

9. The Oversight Board's July 30 proposal offered total consideration to the GO and PBA bondholders of between $10.9 billion and $11.2 billion (or a recovery of approximately 57%), while the bondholders' August 24 proposal sought total consideration of approximately $14 billion (or a recovery of approximately 73.6%). Both proposals provided that $50 million in consideration will be distributed to "Non-GO/PBA Creditors," which implies a recovery of only 0.37% to such creditors.[10] The February 2020 PSA, by contrast, proposed to distribute $527

---

[7] Statement of the Financial Oversight and Management Board for Puerto Rico, dated Sept. 30, 2020 (Ex. 2).

[8] Ex. 1, at 3.

[9] Fiscal Plan Macroeconomic Overview and Revised Plan of Adjustment Proposal, dated Aug. 18, 2020 (Ex. 3).

[10] This recovery percentage can be calculated by dividing the proposed $50 million distribution by the total non-GO unsecured claims pool of approximately $13.5 billion, as set forth in the Oversight Board' prior disclosure statement. *See* Ex. 1, at 3; *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 11947] ("Amended Disclosure Statement") at 17-18 (estimating approximate recovery percentage for non-GO unsecured claims at 3.9%); *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Docket No. 11946] (providing for approximately $527 million in consideration to holders of non-GO unsecured claims; based on the estimated 3.9% recovery percentage for these creditors, this implies an estimated aggregate amount of non-GO unsecured claims of approximately $13.5 billion). While the Oversight Board's presentation intimates that the Court's prior rulings in the ERS and HTA litigations somehow reduce the unsecured claims pool (*see* Ex. 3, at 10), the Committee is not aware of any such ruling dealing with unsecured claims. Those rulings implicated the extent of the *secured* claims of the ERS and HTA bondholders. In any event, even if the $8 billion in revenue bond

5

million to the non-GO and PBA bondholder creditors, which implied a (still miniscule and unacceptable, but significantly better) 3.9% recovery.[11]

## RELIEF REQUESTED

10. The Committee respectfully requests an order (i) granting the Motion, (ii) reconsidering the Order, and (ii) granting the Lift Stay Motion to allow the GO Priority Objection to proceed.

## BASIS FOR RELIEF REQUESTED

11. Under Federal Rule of Civil Procedure 59(e), as incorporated by Federal Rule of Bankruptcy Procedure 9023, a party may move to "alter or amend a judgment" within 14 days after the entry of the judgment. Reconsideration under Rule 59(e) is appropriate based on, among other things, "newly discovered or previously unavailable evidence." *In re Padilla Cruz*, 585 B.R. 255, 260 (Bankr. D.P.R. 2018). For reconsideration to be granted on this basis, the evidence must be material and either truly new or previously incapable of discovery despite due diligence. *See Corretjer Farinacci v. Picayo*, 149 F.R.D. 435, 437 (D.P.R. 1993) (noting that motions to alter or amend are granted if "new material evidence has been discovered that was unavailable previously"); *Atl. States Legal Found., Inc. v. Karg Bros.*, 841 F. Supp. 51, 56 (N.D.N.Y. 1993) ("Newly discovered evidence is that which is 'truly newly discovered or . . . could not have been found by due diligence."). Reconsideration of the Order denying the Lift Stay Motion is appropriate here based on the newly-disclosed evidence concerning the status of the Oversight Board's settlement discussions.[12]

---

claims were excluded, a $50 million distribution to the $5.5 billion of general unsecured claims, as estimated by the Oversight Board, would reflect a recovery percentage of only 0.9%.

[11] *See* Ex. 1, at 3; Amended Disclosure Statement at 17.

[12] There is no question that the Court can take judicial notice of the Oversight Board's public disclosures, including specifically those attached hereto as Exhibits 1 through 3. *LoCicero v. Leslie*, 948 F.Supp. 10, 12 (D. Mass. 1996) (a court "may take judicial notice of [matters of] a public record") (citing cases).

12. In the Lift Stay Objection it filed on September 1, 2020, the Oversight Board touted the progress it had allegedly made in its recent settlement negotiations with the GO and PBA bondholders and emphasized that such progress "has been transparently communicated to the Court and the public." (Lift Stay Obj. ¶ 27.) The Court, in turn, relied on the Oversight Board's representations in issuing its ruling on the Lift Stay Motion, finding that allowing the Committee's objection to move forward could "cause the Oversight Board settlement negotiations to collapse and open the door to a large volume of litigation that would further disrupt or [derail] negotiations." (Sept. 16 Hr'g Tr. at 81.)

13. Much to the surprise of the Committee, the materials the Oversight Board has now disclosed show that any progress in settlement discussions has been minimal at best, particularly on the question of whether the bondholders' claims have priority over the claims of other unsecured creditors. Indeed, on this issue, the Oversight Board has apparently decided to cease negotiations altogether and simply concede the point. In the February 2020 PSA, the Oversight Board proposed to distribute $527 million to unsecured creditors other than the GO and PBA bondholders, representing a recovery of approximately 3.9% on such creditors' claims.[13] Under its most recent, July 30, 2020 proposal, the Oversight Board has agreed to reduce such compensation to only $50 million, or to a recovery of only 0.37%. Meanwhile, the Oversight Board proposes to distribute at least $10.9 billion to the GO and PBA bondholders, which it concedes implies a recovery of approximately 57% to such creditors.

14. If the Committee were to prevail on the GO priority dispute, the result would be that GO and PBA bondholders would receive the *same* percentage recovery on their claims as other unsecured creditors. The Oversight Board, however, now proposes to resolve the dispute

---

[13] *See* Ex. 1, at 3; Amended Disclosure Statement at 17.

7

by giving the bondholders a recovery rate that is more than *154 times* that of other unsecured creditors. The GO and PBA bondholders have, not surprisingly, agreed to the Oversight Board's proposal regarding the treatment of the Committee's constituents, while still insisting on recovering billions of dollars more than the Oversight Board is offering them. The resolution of the GO priority dispute on these terms is not a "settlement" of the dispute at all—it is a concession of defeat by the Oversight Board, which amounts to an acknowledgment that the dispute will never be litigated. Indeed, the Oversight Board expressly refers to the Committee's constituents in its internal presentation as "junior creditors,"[14] thus presuming the outcome of the GO priority dispute in the bondholders' favor.

15. Because it is clear that no real settlement of the GO priority dispute has been reached or is being pursued by the Oversight Board, there is no reason why the Committee should have to wait to pursue its claim objection. In its ruling to the contrary at the September 16 hearing, the Court observed that it should be "obvious" to "anyone following these proceedings" who has reviewed the proposed plan of adjustment that "there are arguments and continue to be arguments regarding GO priority, potential legal issues with the allocations that have been proposed, the basis of the GO Priority Objection that is proposed to be pursued, and the visions for a potential outcome of that objection."[15] We now know, however, that none of this remains true (nor was it true at the time of the hearing on the Lift Stay Motion), because the Oversight Board abandoned its arguments that the alleged GO priority is preempted in a case under Title III of PROMESA. The Committee, therefore, cannot—through litigation of the GO Priority Objection or otherwise—interfere with or disrupt the Oversight Board's resolution of the priority issue, and any concerns to the contrary are simply no longer valid.

---

[14] *See* Ex. 3, at 10.
[15] Sept. 16 Hr'g Tr. at 82.

8

16. Meanwhile, prejudice to unsecured creditors is only increasing. At the September 16 hearing, the Court observed that "unsecured creditors' rights to object to an amended Plan of Adjustment and to accept a proposed settlement are still preserved."[16] It is now clear, however, that no real settlement exists that the Oversight Board can ever present to the Court for approval. And while creditors can still object at some future date to any proposed plan of adjustment that provides them disparate treatment, they will suffer real and substantial prejudice in the interim. This is because the Oversight Board, although it has chosen not to pursue an objection to the GO and PBA bondholders' claims (and to simultaneously block the Committee from doing so), is nevertheless seeking to resolve the claims of other unsecured creditors. In its discussions with such creditors, the Oversight Board will no doubt emphasize that they stand to receive a paltry recovery of only a fraction of one percent under a plan of adjustment, thereby inducing them not to expend the resources (including engaging counsel) to oppose objections to their claims.

17. When the Committee voiced its concern in this regard at the September 16 hearing, and the Court asked the Oversight Board for its response, the Oversight Board's counsel stated that "it's not clear to us that other unsecured claimholders are disadvantaged at all," because "if they lose the priority challenge, they will come out worse." Counsel elaborated:

> [Other creditors] could lose a hundred percent of what they . . . have. They are not satisfied with what they have, and we are sensitive to that and understand it. But they have a ***gigantic downside***, so they -- that's the most I can say about what their incentive is, Your Honor.[17]

At the time, the Oversight Board of course knew—but had not revealed to the Court or to anyone else—that the current proposal would result in a mere 0.37% recovery to other unsecured creditors. One cannot rationally consider the possibility of losing such a minimal distribution a

---

[16] *Id*. at 82.

[17] *Id*. at 75 (emphasis added).

9

"gigantic" downside, and any suggestion to the contrary was not "transparent," to say the least.

18. Finally, the newly-disclosed settlement proposals reveal just how far apart the parties' remain on all other aspects of a potential global settlement. The Oversight Board's July 30, 2020 proposal would distribute between $10.9 and $11.2 billion in total consideration to the GO and PBA bondholders, while the bondholders, in their August 24, 2020 proposal, seek total consideration of approximately $14 billion. This $3 billion gap is unlikely to be bridged anytime soon, as evidenced by the fact that the bondholders' proposal seeks essentially the exact same amount of consideration from the Commonwealth as they were set to receive under the February 2020 proposal—in other words, the bondholders have made ***no concession in total consideration*** as a result of COVID-19 or other events that have negatively impacted the Commonwealth's fiscal condition over the past several months.[18] Moreover, the fact that the last written proposal was made more than a month ago, at the end of August, shows that progress is happening slowly, if at all. The Committee's constituents should not have to sit idly by while these negotiations slowly unfold, particularly when they now know the outcome of the discussions from their perspective: they are getting essentially nothing.

## CONCLUSION

19. For the foregoing reasons, the Committee respectfully requests that the Court grant the Motion, reconsider the Order, and grant the Lift Stay Motion.

[*Remainder of page intentionally left blank.*]

---

[18] If it were not clear enough from the parties' settlement proposals that the February 2020 PSA no longer exists in its current form, the presentation makes this explicit, noting that any revised agreement will be part of a "new PSA" that has yet "to be negotiated." *See* August 24 PSA Creditors Proposal, at p. 17 (Ex. 1). The Government Parties' prior statements that the prior PSA remains alive and well and merely subject to renegotiation are simply not true.

10

WHEREFORE, the Committee respectfully requests that this Court grant the Motion and such other and further relief as this Court deems just and proper.

Dated: October 1, 2020
/s/ Luc. A. Despins
PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

11