# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------- X
                                                                  :
In re:                                                            :
                                                                  :
THE FINANCIAL OVERSIGHT AND                                       :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                 :   Title III
                                                                  :
      as representative of                                       :   Case No. 17-BK-3283 (LTS)
                                                                  :
THE COMMONWEALTH OF PUERTO RICO *et al.,*                         :   (Jointly Administered)
                                                                  :
      Debtors.[1]                                                :
----------------------------------------------------------------- X
                                                                  :
In re:                                                            :
                                                                  :
THE FINANCIAL OVERSIGHT AND                                       :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                 :   Title III
                                                                  :
      as representative of                                       :   Case No. 17-BK-4780 (LTS)
                                                                  :
PUERTO RICO ELECTRIC POWER AUTHORITY                              :
                                                                  :
      Debtor.                                                    :
----------------------------------------------------------------- X

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUPPLEMENTAL
## BRIEF REGARDING STATUS REPORT OF GOVERNMENT PARTIES

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Judge Laura Taylor Swain:

Pursuant to the Court's order dated September 11, 2020,[1] the Official Committee of Unsecured Creditors (the "Committee")[2] respectfully submits this supplemental brief in response to the *Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion* [Docket No. 2220] (the "Status Report") and in further support of the *Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [Docket No. 2144] (the "Motion to Terminate")[3] and the Committee's reply in support of the Motion to Terminate [Docket No. 2181] (the "Reply").

1.      The Status Report—which, as with the prior status reports, provides no concrete information regarding the current status or the timetable of the negotiations related to the RSA— only further demonstrates that the RSA, in its current form, is not viable and that the Government Parties have no intention of prosecuting the Rule 9019 Motion.  Consequently, as explained in the Motion to Terminate and the Reply, there is no requisite case or controversy underlying the Government Parties' Rule 9019 Motion, and the Rule 9019 Motion should be terminated either for lack of subject matter jurisdiction or in the exercise of the Court's discretion.  The Government Parties' arguments to the contrary in the Status Report are unavailing.

2.      As an initial matter, the fact that the RSA has not been formally terminated, and that the Rule 9019 Motion is notionally pending,[4] is not determinative of whether this Court has subject matter jurisdiction.  As the Committee explained, the proper jurisdictional inquiry is whether the RSA "remain[s] viable," such that there "remain[s] a live, concrete dispute," and an

---

[1]    *See Order Regarding the Official Committee of Unsecured Creditors' Motion To Terminate Rule 9019 Motion* [Docket No. 2189 in Case No. 17-4780].

[2]    The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3]    Terms used but not defined herein have the meanings given to them in the Motion to Terminate.

[4]    Status Report ¶¶ 18, 23.

"injury … of sufficient immediacy and ripeness to warrant judicial intervention." *Warth v.
Seldin*, 422 U.S. 490, 516-17 (1975).[5]   Even if the RSA—a private contract—may formally
remain in place, the doctrines of mootness and ripeness require that there must be a live case or
controversy underlying the Rule 9019 Motion itself.  *See, e.g.*, *City of Erie v. Paps A.M.*, 529
U.S. 277, 287 (2000) ("A case is moot when the issues presented are no longer 'live' or the
parties lack a legally cognizable interest in the outcome.") (internal quotation marks and citations
omitted); *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995) ("if a
plaintiff's claim . . . depends on future events that may never come to pass, or that may not occur
in the form forecasted, then the claim is unripe").  This legal determination is for this Court to
make; it is not a question of the Oversight Board deciding when and how to settle claims.[6]

       3.      The Government Parties effectively admit that they are not currently pursuing
approval of the RSA in its existing form and, therefore, are not prosecuting the Rule 9019
Motion.  The most the Government Parties can say is that they are "carefully comparing" the
"assumptions" underlying PREPA's 2021 fiscal year plan (which the Oversight Board certified
three months ago, on July 20, 2020) "against the reality of the situation on the Island," and are
"continu[ing]" their months-long effort "to conduct diligence into the RSA and the affordability
and sustainability of electricity rates" in Puerto Rico.[7]  The Government Parties hope that "[t]his
diligence and analysis will help inform [their] determination regarding whether the RSA should
be renegotiated and the parameters for doing so."[8]  The notion that the Government Parties have

---

[5]    *See also* Mot. to Terminate ¶ 21; Reply ¶ 7

[6]    *See* Status Report ¶ 23.

[7]    *Id.* ¶¶ 19-20.  The Government Parties also assert that they are moving ahead on the "transformation of the
T&D system," with the aim of "enhanc[ing] PREPA's ability to provide reliable and affordable power to its
customers" (with a similar initiative under way for "PREPA's power generation assets"), *id.* ¶ 21, and are "in
the process of reviewing" the recent FEMA grant that awards approximately $9.6 billion "to help rebuild Puerto
Rico's electric grid system," *id.* ¶ 22.  The Government Parties do not explain how these developments support
their assertion that the RSA remains viable or that the Court has jurisdiction over the Rule 9019 Motion.

[8]    *Id.* ¶ 20.

not yet decided whether to renegotiate the RSA is inconsistent with their own public statements,

including the statement of AAFAF Executive Director Omar Marrero on September 11, 2020

that the Government Parties "don't have an agreement."[9]  In any event, the Government Parties

concede that they do not expect "material progress on [their supposedly ongoing] analyses" until

(at the earliest) "the end of the calendar year"—three more months away.[10]  Altogether, the

Government Parties have sought adjournment of their Rule 9019 Motion fourteen times, since

long before the pandemic.[11]  By the December 9, 2020 date that the Government Parties propose

for their next "updated status report,"[12] the Rule 9019 Motion will have been "on ice" for nearly

a year.  Nor, based on the current Status Report, is there any realistic expectation that the

Government Parties will be prepared to move forward with their Rule 9019 Motion at that time;

all they offer is an "expect[ation] to make material progress" in their ongoing evaluation of the

RSA's feasibility.[13]  That representation is fundamentally inconsistent with the showing of

"sufficient immediacy and ripeness" necessary to support subject matter jurisdiction.  *Warth*, 422

U.S. at 516-17.

4.      In fact, the Government Parties' representations further undermine their

contention that the RSA remains viable and that they are prosecuting the Rule 9019 Motion.  The

Government Parties concede they "might need to renegotiate certain terms of the RSA," but

assert that such renegotiation would seek "to preserve the settlement ***on altered terms***, if

possible."[14]  But a settlement based "on altered terms" is a ***different*** settlement, which would

---

[9]      *See* Reorg Research, *AAFAF Chief 'Cautiously Optimistic' on Prospects for Commonwealth, PREPA Debt Restructuring Deals This Term*, dated September 11, 2020, a copy of which is attached hereto as **Exhibit A**.
[10]     See Status Report ¶ 27.
[11]     *See id.* ¶ 1.
[12]     *Id.* ¶ 28.
[13]     *Id.* ¶ 27.
[14]     *Id.* ¶ 23 (emphasis added).

have to be presented separately for approval.  Termination of the Rule 9019 Motion now would

motivate the RSA parties to negotiate such a new, viable, settlement expeditiously.[15]

5.      The Government Parties further contend that, if the Rule 9019 Motion is

terminated, they would have to renegotiate the RSA not with the original RSA parties, but with

new entities who purchased the original parties' bond holdings.[16]  This argument is a red herring.

If the original RSA parties have since sold their bond holdings to different entities, the "altered

terms" for the RSA will have to be negotiated **with the new bondholders** in any event.  The fact

that these new buyers "remain subject to the RSA"[17] would have no practical effect on their

negotiation stance.  Regardless, any turnover in the negotiating parties has no bearing on the

jurisdictional issue raised by the Motion to Terminate.  Finally, contrary to the Government

Parties' apparent concerns, termination of the Rule 9019 Motion will not prevent them from

using the existing RSA as a model for a new, viable agreement, should they wish to do so.[18]

6.      The Government Parties claim that the Committee will not be prejudiced by the

never-ending adjournment of the Rule 9019 Motion because it could "attempt" to bring its claim

objection if, and when, the RSA fails.[19]  Aside from the fact that the Government Parties are

certain to challenge the Committee's right to do so,[20] that argument ignores the prejudice to the

Committee's statutory rights under section 502 of the Bankruptcy Code.  The Government

Parties' continuing delay of the hearing on their Rule 9019 Motion effectively denies the

Committee's objection without a hearing on the merits or even a determination of the

---

[15]   *See* Mot. to Terminate ¶ 18.
[16]   *See* Status Report ¶ 24.
[17]   *Id.* ¶ 24.
[18]   *Id.*
[19]   *Id.* ¶ 25.
[20]   *See Joint Objection of PREPA and AAFAF to Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [Docket No. 2165 in Case No. 17-4780] ¶ 21 & n.16; Status Report ¶ 25.

Committee's standing to bring its objection.[21]  Given the Government Parties' express

unwillingness to move forward with seeking approval for their Rule 9019 Motion, there is no

longer any valid basis for preventing the Committee from pursuing its viable claim objection.

The Government Parties' repeated invocation of a specter of renewed litigation[22] (which is

exaggerated in any event) cannot override the Committee's statutory rights.[23]

7.      Finally, the Government Parties are incorrect to analogize the Committee's

Motion to Terminate to the Committee's recent motion to lift stay in the Commonwealth's Title

III Case.[24]  The two situations are not the same.  In the Commonwealth case, the Government

Parties affirmatively moved for and obtained (over the Committee's objection) a stay of

litigation against the GO bondholders, which precipitated the lift stay motion.  The Government

Parties have neither sought nor obtained similar relief in this case; instead, they hope to secure

the same outcome by simply "adjourning" repeatedly, but never terminating, the Rule 9019

Motion.  Moreover, the Committee did not argue in the Commonwealth case, as it does here, that

the Court lacked subject matter jurisdiction.[25]  The question of jurisdiction is a constitutional

limitation on federal courts' power; it is not subject to the same multi-factor balancing analysis

as a request for a stay of litigation.[26]  Indeed, while the Government Parties have argued

(unconvincingly) that the RSA remains viable, nowhere in the Status Report do they oppose or

even address the Committee's central argument that the Court lacks subject matter jurisdiction to

adjudicate disputes related to a non-viable, hypothetical settlement.

---

[21]   *See* Mot. to Terminate ¶¶ 22-31; Reply ¶¶ 4-5, 15.

[22]   *See* Status Report ¶¶ 23, 26.

[23]   Nor is it true that allowing the Committee to pursue its objection would "impinge[] on the Oversight Board's
exclusive right to propose a plan of adjustment resolving those . . . claims." Status Report ¶ 23.  The Oversight
Board has not filed a plan of adjustment for PREPA, nor can the Committee file its own, conflicting plan.  *See*
Reply ¶ 19.  The Committee is only seeking to exercise its statutory right to object to bondholders' claims.

[24]   *See id.* ¶¶ 13-14, 23.

[25]   *See* Mot. to Terminate ¶¶ 16-21.

[26]   *See* Status Report ¶¶ 14, 23.

WHERFORE, the Committee requests that the Court terminate the Government Parties'

Rule 9019 Motion without prejudice to renewal at a later time.


Dated: October 2, 2020

By: _/s/ Luc A. Despins_

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

By: _/s/ Juan J. Casillas Ayala_

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors*