## UNITED STATES DISTRICT COURT
## FOR THE COURT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | No. 17 BK 4780-LTS |
| SCIEMUS LIMITED, et al.<br><br>Plaintiffs,<br><br>-v-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY; PREPA NETWORKS LLC; | Adv. Pro. No. 3:19-AP-369 LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); ); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

> PREPA NET INTERNATIONAL WHOLESALE
> TRANSPORT, INC.; COMMONWEALTH OF
> PUERTO RICO; and SECRETARY OF THE
> TREASURY, c/o Public Insurance Bureau,
>
> Defendants.

**MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY PURSUANT
TO BANKRUPTCY CODE SECTION 105, PROMESA SECTION 315(a), AND
BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT AGREEMENT
WITH CERTAIN INSURERS AND GRANTING RELATED RELIEF**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), through the Financial Oversight and Management Board for Puerto Rico (the "FOMB" or "Oversight Board") as PREPA's sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA") (collectively, "Defendants"), respectfully submits this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this Title III case by section 301(a) of PROMESA, PROMESA section 315(a), and Rule 9019 of the Federal Rules of Bankruptcy Procedure, made applicable in this Title III case by section 310 of PROMESA, requesting entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), providing, among other things: (i) approval of the Final Settlement and Release Agreement (the "Settlement Agreement")[2] by and between PREPA, FOMB, and the Insurers,[3] a true and correct copy of which

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the Settlement Agreement.

[3] As used herein, "Insurers" shall mean Sciemus Limited; Markel Europe; Lloyd's Syndicates CIN 318, WRB 1967, and AGM 2488 subscribing to Policy No. B08041439OF14; Lloyd's Syndicates MIT 3210, KLN 510, MMX 2010, CSL 1084, TMK 1880, AML 2001, and BRT 2987 subscribing to Policy No. B0804Q11263F14; Indian Harbor Insurance Company; PartnerRe Ireland Insurance dac; and Swiss National Insurance Co. Ltd. via local placement with Multinational Insurance Company (collectively the "2014-15 Insurers"); and Lloyd's Syndicates MIT 3210, KLN 0510, MMX 2010, CSL 1084, TMK 1880, AML 2001, BRT 2987, HDU 0382, CNP 4444/CNP958, CINP 0318, WRB 1967, AMA 1200, and AGM 2488; Markel Bermuda Limited.; Indian Harbor Insurance Company; Swiss National Insurance Co. Ltd. and Aspen Syndicate 4711 via local placement with Multinational Insurance Company; and PartnerRe Ireland Insurance dac (collectively the "2015-16 Insurers").

2

is attached hereto as **Exhibit B**; (ii) payment of $3,500,000 to PREPA by the Insurers in full and complete satisfaction of the Insurers' obligations under the Policies within 30 days of entry of a final, non-appealable order granting the Motion and approving the Settlement Agreement; (iii) that no creditor of PREPA or other party served with notice of and/or with the Motion shall have any claim against Insurers or under the Policies or for any portion of the Settlement Amount; (iv) that Insurers shall not be subject to claims of any Named Insureds, Additional Insureds,[4] loss payees, mortgagees, or any other parties served with notice of and/or with the Motion with respect to the Policies or payment of the Settlement Amount to PREPA; and (v) no third party served with notice of and/or with the Motion shall be permitted to interfere with the transfer of the Settlement Amount to PREPA or PREPA's use of the Settlement Amount.

## Jurisdiction and Venue

1. The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2. Venue is proper pursuant to PROMESA section 307(a).

3. The statutory predicate for the relief sought herein is Bankruptcy Code section 105(a), consistent with and in furtherance of PROMESA section 305, made applicable in this Title III case by PROMESA section 301(a), PROMESA section 315(a), and Rule 9019 of the Federal Rules of Bankruptcy Procedure, made applicable in this Title III case by PROMESA section 310.

## Background

**I. The Damage to the Costa Sur Fuel Tank and the Policies**

4. The 2014-15 Insurers issued certain policies of insurance to PREPA as detailed in the Schedule of 2014-15 Insurers attached to the Settlement Agreement with a Policy period of

---

[4] As used herein, "Additional Insured" shall mean "Additional Named Assured," "Additional Named Insured," and/or "Additional Insured," as used and/or defined in the Policies (defined herein).

3

May 15, 2014 to May 15, 2015 (the "2014-15 Policy"). The 2015-16 Insurers issued certain policies of insurance to PREPA as detailed in the Schedule of 2015-16 Insurers attached to the Settlement Agreement with a Policy period of May 15, 2015 to May 15, 2016 (the "2015-16 Policy"). The 2014-15 and 2015-16 Policies are collectively referred to herein as the "Policies."

5. During the time period when any alleged loss or damage claimed under the Policies occurred, Insurers insured PREPA against all risks of direct physical loss or damage to the property insured as described and/or defined in the Policies pursuant to all terms, conditions, deductibles, exclusions, and endorsements contained in or attached to the Policies.

6. PREPA alleged damage to the reserve fuel oil storage tank ("Tank 1") at the PREPA South Coast (Costa Sur) thermoelectric power plant (the "Costa Sur Plant") in Guayanilla, Puerto Rico, which reportedly occurred during both the 2014-15 Policy period and 2015-16 Policy period, including damage reportedly occurring on or about April 17, 2015 and May 25, 2015.

7. The Policies insure PREPA for property damage to, among other things, Tank 1 at the Costa Sur Plant, subject to the Policies' stated terms, conditions, limits, deductibles, and exclusions.

**II. The Litigation**

8. On June 4, 2019, Plaintiffs[5] filed a Complaint commencing the above-captioned adversary proceeding (the "Declaratory Judgment Action"). In the Declaratory Judgment Action, Plaintiffs seek various declarations concerning the parties' rights, duties and liabilities under the 2014-15 Policy. Plaintiffs allege that they only owe PREPA $1,726,000 (the "Undisputed Amount") under the 2014-15 Policy in connection with the property damage to Tank 1. Complaint ¶ 4. Through the Declaratory Judgment Action, Plaintiffs seek declarations, including that they have no further liability under the 2014-15 Policy on account of the damage to Tank 1.

---

[5] Not all Insurers are Plaintiffs.

4

9. On March 6, 2020, Plaintiffs filed their *Second Amended Complaint for Declaratory Judgment and Interpleader* (the "Second Amended Complaint") [ECF No. 51] in the Declaratory Judgment Action. The Second Amended Complaint added additional defendants, who the Plaintiffs, after due diligence, determined could be Additional Insureds under the 2014-15 Policy. The Second Amended Complaint also added an alternative count of interpleader to enable the Plaintiffs to interplead the funds representing the Undisputed Amount.

10. On April 30, 2020, FOMB, as PREPA's legal representative, filed in the Declaratory Judgment Action PREPA's Answer and Affirmative Defenses to the 2014-15 Insurers' Second Amended Complaint, as well as PREPA's Counterclaims against the 2014-15 Insurers and PREPA's Third Party Claims against the 2015-16 Insurers

11. PREPA asserts it is owed substantially more under the 2014-15 Policy and has alleged an additional loss for Tank 1 under the subsequent policy – the 2015-16 Policy.

### III. The Settlement Agreement

12. The Parties have engaged in negotiations and mediation in an attempt to resolve the Declaratory Judgment Action and the various claims asserted under the Policies.

13. These efforts have culminated in the Settlement Agreement, pursuant to which the Parties have agreed to fully and finally resolve any and all claims under the Policies.

14. The Settlement Agreement provides, among other things, for the payment of a settlement amount (the "Settlement Amount") that is comprised of $2,500,000 being paid by the 2014-15 Insurers and $1,000,000 being paid by the 2015-16 Insurers and is calculated as net of each respective Policy's $2,000,000 deductible obligation, and the full amount of $3,500,000 will be paid to PREPA as though such deductible obligations were already satisfied. Each respective Insurer's portion of the Settlement Amount is set forth in the Schedule of 2014-15 Insurers and Schedule of 2015-16 Insurers attached to the Settlement Agreement. The Settlement Amount shall

5

fully satisfy any and all claims or causes of action whether known or unknown, potential or actual, by PREPA and FOMB against Insurers of any nature under the Policies (as defined in the Settlement Agreement, the "Settled Claims").

15. The Settlement Agreement also contains certain representations and warranties of PREPA, including that to the extent any lien as to the Settled Claims exists or arises, PREPA will be solely responsible for discharging any such lien or any claim secured thereby through the PREPA Title III case, or if that matter is resolved or closed, PREPA will still bear the responsibility for discharging or otherwise satisfying any lien. To the extent there has been any valid assignment of the Settled Claims, rights under the Policies, and/or the right to receive the Settlement Amount, PREPA further represents, warrants, and acknowledges that the Settlement Agreement has been approved by any assignee, and that Insurers may pay the Settlement Amount directly to PREPA. PREPA further represents and warrants to be solely responsible for discharging through the PREPA Title III case any interest raised by any other Named Insured, Additional Insured, loss payee or mortgagee under the Policies, subject to all of its rights under PROMESA.

16. PREPA is entitled to the full benefits of the Settlement Amount: no other person or entity holds any interest in the damaged property, neither PREPA nor its insurance brokers have issued any certificates of insurance naming any other person or entity as a loss payee,[6] and PREPA has not assigned the Policies or its claims arising from the damage to Tank 1 to any person or entity. Therefore, no person or entity other than PREPA has any right, title, or interest in any of the proceeds to be paid on account of the damage suffered by PREPA, and PREPA is entitled to the Settlement Amount free and clear of any third-party claims.

---

[6] *See* the declarations of PREPA's insurance brokers, Fulcro Insurance, Inc. and Willis, attached hereto as **Exhibits D** and **E**, respectively.

6

17. Further, holders of bonds issued by PREPA (the "Bonds") pursuant to that certain trust agreement, dated as of January 1, 1974 (as amended and supplemented from time to time, the "Trust Agreement"), between PREPA and U.S. Bank National Association, as successor trustee, do not have a claim against the Insurers arising from the Insurers' payment of the Settlement Amount to PREPA. Section 707 of the Trust Agreement provides that insurance proceeds remitted to PREPA are to be applied to the repair, replacement or reconstruction of damaged or destroyed property, and not to payment of the Bonds. In pertinent part, section 707 states:

> All such policies shall be for the benefit of the Authority, shall be made payable to the Authority and shall be deposited with the Treasurer, and the Treasurer shall have the sole right to receive the proceeds of such policies and to collect and receipt for claims thereunder. The proceeds of any and all such insurance shall be deposited by the Treasurer in the name of the Authority in a Depositary.

Trust Agreement § 707.

18. PREPA will utilize the Settlement Amount to pay for expenditures in connection with its business operations in accordance with its budget as certified by the FOMB.

**Relief Requested**

19. By this Motion, PREPA and FOMB seek an order providing, among other things: (i) approval of the Settlement Agreement by and between PREPA, FOMB, and the Insurers; (ii) payment of $3,500,000 to PREPA by the Insurers in full and complete satisfaction of the Insurers' obligations under the Policies within 30 days of entry of a final, non-appealable order granting the Motion and approving the Settlement Agreement; (iii) that no creditor of PREPA or other party served with notice of and/or with the Motion shall have any claim against Insurers or under the Policies or for any portion of the Settlement Payment; (iv) that Insurers shall not be subject to claims of any Named Insureds, Additional Insureds, loss payees, mortgagees, or any other parties served with notice of and/or with the Motion with respect to the Policies or payment

7

of the Settlement Amount to PREPA; and (v) no third party served with notice of and/or with the Motion shall be permitted to interfere with the transfer of the Settlement Amount to PREPA or PREPA's use of the Settlement Amount.

I.  **Approval of the Settlement Agreement**

20.  Bankruptcy Code section 363, governing the use of property, does not apply to the Title III case. Defendants seek entry of the requested order pursuant to Bankruptcy Code section 105(a) to carry out PROMESA section 315(a), to prosecute PREPA's Title III case by settling PREPA's insurance claims. Moreover, to the extent, if any, required under PROMESA section 305, the Oversight Board has consented to the relief requested herein.

21.  Section 105(a) of the Bankruptcy Code provides, in relevant part, that: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Here, section 105 carries out PROMESA section 315(a) authorizing the Oversight Board, among other things, to prosecute and submit filings in relation to PREPA's Title III case. Under section 105(a), the Court has expansive equitable powers to fashion any order or decree that carries out PROMESA. *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Cooper Props. Liquidating Tr., Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

8

22. Courts have relied upon section 105 of the Bankruptcy Code to fashion injunctive relief where appropriate. *See*, *e.g.*, *Texas Comptroller of Public Accounts v. Adams*, 617 B.R. 84, 90-91 (N.D. Tex. 2020); *In re Birting Fisheries, Inc.*, 300 B.R. 489, 504 (B.A.P. 9th Cir. 2003) ("A discharge or injunction is sometimes negotiated as part of a settlement in order to prevent the bringing of actions based upon the matter which has been settled in the bankruptcy case.") (citation omitted); *In re The Billing Resource*, No. 07-bk-52890-ASW, 2007 WL 3254835, at *27 (Bankr. N.D. Cal., Nov. 2, 2007). Here, the Proposed Order seeks certain limited injunctive relief as it relates to parties provided with notice of and/or the Motion.

23. Bankruptcy Rule 9019(a) provides a court may approve a debtor's compromise and settlement, and the First Circuit has emphasized that "[s]tipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factor[.]" *United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.)*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003); *see also Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 50 n.5 (1st Cir. 1998).

24. The standard courts apply for approval of settlements under Rule 9019 is deferential to the debtor's judgment and merely requires the Court to ensure the settlement does not fall below the lowest point in the range of reasonableness in terms of benefits to the Debtor. *See City of Sanitation, LLC v. Allied Waste Serves. of Mass., LLC (In re Am. Cartage, Inc.)* 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (internal citations and quotations omitted).

25. The approval of settlements is within the court's wide discretion. *See Jeremiah v. Richardson*, 148 F.3d 17, 22 (1st Cir. 1998). However, while a court should apply its own independent judgment to determine whether to approve a settlement, it should also afford deference to the judgment of the trustee or debtor in possession, or in this case the FOMB.[7] *See In re Receivership Estate of Indian Motorcycle Mfg., Inc.*, 299 B.R. 8, 21 (D. Mass. 2003) (the court should give "substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement"); *Hill v. Burdick (In re Moorhead Corp.)*, 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." (citation omitted)); *City Sanitation, LLC, supra v.*; *In re Healthco Int'l, Inc.*, 136 F.3d at 50 n.5. ("the bankruptcy judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference. Compromises are favored in bankruptcy.") (internal citations and quotations omitted). Moreover, "[i]n evaluating a Rule 9019 settlement, a bankruptcy court need not 'conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.' Rather, the bankruptcy court must 'apprise [itself] of the relevant facts and law so that [it] can make an informed and intelligent decision.'" *Official Comm. of Unsecured Creditors v. Moeller (In re Age Refining, Inc.)*, 801 F. 3d 530, 541 (5th Cir. 2015) (citations omitted).

26. In determining the reasonableness of a settlement, courts in the First Circuit consider the following four factors: (*i*) the probability of success in the litigation being compromised; (*ii*) the difficulties, if any, to be encountered in the matter of collection; (*iii*) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and (*iv*) the paramount interest of the creditors and a proper deference to their reasonable views in the

---

[7] The term "trustee" when used in a Bankruptcy Code section incorporated under Title III of PROMESA means the FOMB in a case under Title III. PROMESA § 301(c)(7).

premise. *Jeffrey v. Desmond*, 70 F.3d at 183, 185 (1st Cir. 1995); *see also In re Indian Motorcycle Co.*, 289 B.R. at 283; *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, No. 04-cv-10585, 2009 Bankr. LEXIS 2846, at *9 (Bankr. D.P.R. Mar. 31, 2009); *In re C.P. del Caribe, Inc.*, 140 B.R. 320, 325 (Bankr. D.P.R. 1992).

### A. Probability of Success

27. In examining the probability of success in the litigation being compromised, courts look to the legal and evidentiary obstacles to litigating the claim. *In re Healthco Int'l, Inc.*, 136 F.3d at 50; *In re Hansen*, No. 12-11907-JMD, 2017 Bankr. LEXIS 1120, at *12 (Bankr. D.N.H. Apr. 25, 2017). In addition, the probability of success is measured against the "definitive, concrete and immediate benefit" that a settlement provides against the uncertainty and delay of litigation. *See Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi)*, 411 F. App'x. 342, 346-47 (1st Cir. 2011) (citing *In re Healthco Int'l, Inc.*, 136 F.3d at 50. And, "th[e] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Id.* at 51. Here, the settlement will provide PREPA an immediate payment of $3.5 million without the delay or expense of additional litigation.

28. The Declaratory Judgement Action and additional claims asserted under the Policies are complex and fact intensive, and the results are uncertain. While PREPA believes it has good claims under the Policies, the Insurers are well-represented and raise various defenses, including the number of occurrences, the failure to timely notify Insurers of the alleged incidents regarding Tank 1, the failure to timely present a claim to Insurers, the failure to make repairs or replace Tank 1, the failure to implement appropriate mitigation efforts to prevent or minimize any further loss or damage to Tank 1, and the amounts owed under the Policies.

### B. Complexity of Litigation Involved and Expense, Inconvenience and Delay Attending It

11

Case:17-03283-LTS Doc#:14477 Filed:10/06/20 Entered:10/06/20 21:57:21 Desc: Main
Document Page 12 of 18

29. As set forth above, Declaratory Judgment Action and additional claims asserted under the Policies are complex and fact intensive, and the results are uncertain. Proceeding with litigation would be expensive and would divert PREPA's and FOMB's attention from other important matters. Moreover, any litigation would be lengthy and would involve substantial discovery, including numerous depositions. As such, PREPA's and FOMB's decision to avoid the costs, inconvenience, uncertainty and delay should be given substantial deference.

> [C]oupled with the bankruptcy court's inquiries and findings regarding the inconvenience and expense to the estate in attending the state court action, and the fact that the compromise would provide creditors with an immediate and certain payment of a large percentage of the outstanding debt, illustrates that the bankruptcy court did not abuse its discretion in approving the compromise.

*See Jeffrey*, 70 F.3d at 187 (1st Cir. 1995); *Bos v. Jalbert (In re ServiSense.com, Inc.)*, No. 02-cv-11987-PBS, 2003 U.S. Dist. LEXIS 17057, at *16 (D. Mass. Sept. 26, 2003) ("When augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously - and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle.") (quoting *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632 (1st Cir. 2000)); *In re Hunt*, No. 2:11-bk-58222, 2016 Bankr. LEXIS 1993, at *9 (Bankr. C.D. Cal. May 12, 2016) ("The certainty that the estate will receive funds now—as opposed to the uncertainty that the estate might obtain a recovery after protracted litigation—weighs in favor of approving the Settlement Agreement.").

    **C.**    **Interests of Creditors**

30. The Settlement Agreement eliminates the risks and uncertainty associated with litigation and results in a substantial payment to PREPA in connection with Tank 1 without the attendant delay of litigation. *See In re Am. Cartage, Inc.*, 656 F.3d at 93 (1st Cir. 2011) ("Finally, the bankruptcy court appropriately took into account the paramount interest of the creditors.

Settling quickly for $12,000 allowed the trustee to distribute something to creditors. In bankruptcy, as in life, half a loaf is sometimes better than none.").

## II. Related Relief

31. The Proposed Order seeks certain findings and limited injunctive relief. The findings are rooted in: (a) the declarations identified in paragraphs 32 through 35 below that are attached hereto and incorporated herein; (b) the certificates of service and/or process regarding the Second Amended Complaint; (c) the sworn statements in the Proof of Loss executed by PREPA contemporaneously with the Settlement Agreement; and (d) the certificates of service filed or to be filed in connection with this Motion.

32. The 2014-15 Policy lists PREPA Networks, PREPA Net International Wholesale Transport, Inc., the Commonwealth of Puerto Rico, and Secretary of the Treasury c/o Public Insurance Bureau as Additional Insureds. Those parties have been added to the Declaratory Judgment Action as defendants and served with the Second Amended Complaint,[8] except PREPA Net International Wholesale Transport, Inc., which was served but did not respond and which according to the Declaration of José A. Casillas Aponte of PREPA Networks LLC, attached hereto and incorporated herein as **Exhibit C**, "was merged out of existence when it was merged with PREPA Networks in 2012." The 2014-15 Policy provides, however, "[a]ll third parties having a direct interest in property insured hereunder as on file with Fulcro Insurance, Inc. and/or Willis, shall automatically be Additional Named Assureds hereunder" and "Permission is granted to Fulcro Insurance, Inc. to issue Certificates of Insurance and/or Evidence of Insurance naming Additional Named Insureds, loss payees and mortgagees." This Court allowed discovery on the question of whether other Additional Insureds have been designated by Fulcro Insurance, Inc. or

---

[8] PREPA Networks, PREPA Net International Wholesale Transport, Inc., the Commonwealth of Puerto Rico, and Secretary of the Treasury c/o Public Insurance Bureau are also being served with a copy of this Motion, as provided in the Certificate of Service.

13

Willis (the "Brokers") [ECF No. 64], but in lieu of subpoenas and depositions, the Brokers provided declarations that state that no other persons or entities have been designated as Additional Insureds under the Policies. Those sworn declarations are attached hereto and incorporated herein as **Exhibits D** and **E**.

33. With respect to loss payees, the 2014-15 Policy does not identify any loss payees, but provides that the Brokers may "issue Certificates of Insurance and/or Evidence of Insurance naming Additional Named Insureds, loss payees and mortgagees." Through the same process used regarding Additional Insureds, the Brokers have provided declarations (**Exhibits D and E**) stating that there are no additional loss payees. Further, PREPA has represented and warranted, based upon the declarations and due diligence of the Brokers and representatives of other Additional Insureds, that there are no Additional Insureds other than those named as defendants; that there are no loss payees; that the proceeds of the 2014-15 Policy have not been assigned or mortgaged; and that all parties with any interest in the proceeds of the 2014-15 Policy have been named as defendants in the Declaratory Judgment Action and that none of those parties has made any claim to the proceeds of the 2014-15 Policy or objected to the settlement.

34. The 2015-16 Policy lists PREPA Networks, PREPA Net International Wholesale Transport, Inc., the Commonwealth of Puerto Rico, and Secretary of the Treasury c/o Public Insurance Bureau as Additional Insureds. Those parties have been added to the Declaratory Judgment Action as defendants and served with the Second Amended Complaint, except PREPA Net International Wholesale Transport, Inc., which as indicated above was served but did not respond and has "been merged out of existence." *See* **Exhibit C**. The 2015-16 Policy provides however "[a]ll third parties having a direct interest in property insured hereunder as on file with Fulcro Insurance, Inc. and/or Willis, shall automatically be Additional Named Assureds hereunder" and "Permission is granted to Fulcro Insurance, Inc. to issue Certificates of Insurance and/or

14

Evidence of Insurance naming Additional Named Insureds, loss payees and mortgagees." This Court allowed discovery on the question of whether other Additional Insureds have been designated by the Brokers [ECF No. 64], but in lieu of subpoenas and depositions, the Brokers provided declarations (**Exhibits D** and **E**) that state that no other persons or entities have been designated as Additional Insureds under the Policies.

35. With respect to loss payees, the 2015-16 Policy does not identify any loss payees, but provides that the Brokers may "issue Certificates of Insurance and/or Evidence of Insurance naming Additional Named Insureds, loss payees and mortgagees." Through the same process used regarding Additional Insureds, the Brokers have provided declarations (**Exhibits D** and **E**) stating that there are no additional loss payees. Further, PREPA has represented and warranted, based upon the declarations and due diligence of the Brokers and representatives of other Additional Insureds, that there are no Additional Insureds other than those named as defendants; that there are no loss payees; that the proceeds of the 2015-16 Policy have not been assigned or mortgaged; and that all parties with any interest in the proceeds of the 2015-16 Policy have been named as defendants and that none of those parties has made any claim to the proceeds of the 2015-16 Policy or objected to the settlement.

36. All the Additional Insureds were added as Defendants to the Second Amended Complaint filed by the 2014-15 Insurers on March 6, 2020.

37. Based upon the sworn and uncontested returns of service, the Additional Insureds added as Defendants to the Second Amended Complaint have been properly served with process in this matter. *See* ECF Nos. 87-91.

38. Based upon a submitted sworn declaration, Defendants PREPA Networks, LLC and PREPA Net International Wholesale Transport, Inc. have disavowed any interest or claim to the Settlement Amount. *See* Declaration of José A. Casillas Aponte attached hereto and incorporated

15

herein as **Exhibit C**. Further, the Commonwealth of Puerto Rico ("Commonwealth"), on behalf of itself and the Secretary of the Treasury, has disavowed any interest or claim to the Settlement Amount.[9]

39. The Proposed Order seeks the following injunctive relief pursuant to Bankruptcy Code section 105:

> No creditor of PREPA or other party in interest, in each case to the extent served with notice of and/or with the Motion shall have any claim against Insurers or under the Policies or for any portion of the Settlement Amount. Insurers shall not be subject to claims of any Named Insureds, Additional Insureds, loss payees, mortgagees, or any other parties served with notice of and/or with the Motion with respect to the Policies or payment of the Settlement Amount to PREPA in accordance with this Order

*See* Proposed Order ¶ 6. Based on (a) the declarations attached hereto and incorporated herein, (b) the certificates of service and/or process regarding the Second Amended Complaint, (c) the sworn statements in the Proof of Loss, and (d) the certificates of service filed or to be filed in connection with this Motion, PREPA and FOMB respectfully submit that the limited injunctive relief sought is appropriate under the circumstances as it is limited to those parties that have received actual notice of this Motion.

### Notice

40. PREPA has provided notice of this Motion to (collectively, the "Notice Parties"): (i) the parties to this Adversary Proceeding; (ii) the Office of the United States Trustee for the District of Puerto Rico; (iii) the indenture trustees and/or agents, as applicable, for PREPA's Bonds; (iv) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain Trade Finance Facility Agreement, dated as of July 20, 2012; (v) the statutory

---

[9] Defendant the Secretary of the Treasury has not separately appeared in this action, but the Treasury of Puerto Rico is an entity that is a part of the Commonwealth and does not exist separate from the Commonwealth. Therefore, the Commonwealth's presence in the action also represents and speaks for the Secretary of the Treasury.

unsecured claimholders' committee appointed in this Title III Case; (vi) the Office of the United States Attorney for the District of Puerto Rico; (vii) counsel to AAFAF; (viii) the Puerto Rico Department of Justice; (ix) the Additional Insureds; and (x) all parties who have requested service in the Title III Cases of PREPA and the Commonwealth.

WHEREFORE, PREPA and FOMB respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as is just and proper.

This the 6th day of October, 2020.

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla Garcia Benitez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
Email: carla.garcia@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Stephen L. Ratner (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: stratner@proskauer.com
Email: tmungovan@proskauer.com

Marc Eric Rosenthal (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
**PROSKAUER ROSE LLP**
70 West Madison
Suite 3800
Chicago, IL 60602-4342
Tel: (312) 962-3550

Fax: (312) 962-3551
Email: mrosenthal@proskauer.com
Email: ppossinger@proskauer.com

*Attorneys for the Financial Oversight and Management Board as representative of Puerto Rico Electric Power Authority*

*/s/ Eduardo J. Corretjer Reyes*
Eduardo J. Corretjer Reyes
USDC-PR 224113
**CORRETJER, L.L.C.**
625 Ponce de León Ave.
San Juan, Puerto Rico 00817-4819
Tel: (787) 751-4618
Fax: (787) 759-6503
Email: ejcr@corretjerlaw.com

Shelby S. Guilbert, Jr. (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
Email: sguilbert@KSLAW.com

*Attorneys for the Puerto Rico Electric Power Authority*