# EXHIBIT B

# FINAL SETTLEMENT AND RELEASE AGREEMENT

This is a Final Settlement and Release Agreement by and between PREPA (defined below), FOMB (defined below), and Insurers.[1]

WITNESSETH THAT:

**WHEREAS,** (utilizing the defined and capitalized terms above and below), PREPA procured the Policies from Insurers, and

**WHEREAS,** the Policies insure PREPA for all risks of physical loss or damage to, among other things, Tank 1 at the Costa Sur Plant in Guayanilla, Puerto Rico (as defined in the Sworn Statement in Proof of Loss), subject to the Policies' stated terms, conditions, limits, deductibles, and exclusions, and

**WHEREAS,** on June 30, 2016, The Financial Oversight and Management Board for Puerto Rico (the "FOMB") was established under section 101(b)(1) of Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") (48 U.S.C. § 2121(b)(1)) as an entity within the government of the Commonwealth of Puerto Rico, and

**WHEREAS,** on September 30, 2016, the FOMB designated the Commonwealth of Puerto Rico (the "Commonwealth") as a "Covered Territory" and PREPA as a "covered territorial instrumentality" under PROMESA section 101(d), and

**WHEREAS,** on May 3, 2017, the FOMB filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a) (48 U.S.C. § 2164(a)), commencing the Commonwealth's case under Title III of PROMESA, Case No. 17 BK 3283-LTS, pending in the United States District Court for the District of Puerto Rico ("Commonwealth Title III Case"), and

**WHEREAS,** on July 2, 2017, the FOMB filed a voluntary petition for relief for PREPA pursuant to PROMESA section 304(a) (48 U.S.C. § 2164(a)), commencing PREPA's case under Title III of PROMESA, Case No. 17 BK 4780-LTS, pending in the United States District Court for the District of Puerto Rico ("PREPA Title III Case"), and

**WHEREAS,** on March 6, 2020, the 2014-15 Insurers filed their Second Amended Complaint for Declaratory Judgment and Interpleader in their adversary proceeding, Adv. Pro. No. 3:19-AP-369-LTS, pending in the United States District Court for the District of Puerto Rico (the "Court"), regarding the Policies and PREPA's claims under same (the "Declaratory Judgment Action"), and

---

[1] The 2014-15 Insurers and 2015-16 Insurers, as defined below, are collectively referred to herein as "Insurers." Insurers, PREPA, and FOMB are collectively referred to herein as the "Parties."

**WHEREAS**, on April 30, 2020, FOMB, as PREPA's legal representative, filed in the Declaratory Judgment Action PREPA's Answer and Affirmative Defenses to the 2014-15 Insurers' Second Amended Complaint, as well as PREPA's Counterclaims against the 2014-15 Insurers and PREPA's Third Party Claims against the 2015-16 Insurers, and

**WHEREAS,** the Parties wish to fully compromise and settle any and all disputes and claims arising out of or related to the Settled Claims (as defined below) which were submitted under the Policies or which could have been submitted in connection with the alleged damage to Tank 1;

**NOW THEREFORE,** in full consideration of the foregoing and of the agreements herein contained and intending to be legally bound, the Parties agree as follows:

    **A.**       **Definitions:**

1. "Agreement" shall mean this Final Settlement and Release Agreement.

2. "2014-15 Insurers" shall mean and include Sciemus Limited; Markel Europe; Lloyd's Syndicates CIN 318, WRB 1967, and AGM 2488 subscribing to Policy No. B080414390F14; Lloyd's Syndicates MIT 3210, KLN 510, MMX 2010, CSL 1084, TMK 1880, AML 2001, and BRT 2987 subscribing to Policy No. B0804Q11263F14; Indian Harbor Insurance Company; PartnerRe Ireland Insurance dac; Swiss National Insurance Co. Ltd., Ironshore Insurance Ltd. (Bermuda), and Multinational Insurance Company, and their present and former officers, directors, employees, partners, limited partners, shareholders, owners, members, names, reinsurers, subsidiaries, affiliates, successors, predecessors, parents, sister or related companies or entities of any nature, attorneys, managing agents, claims handlers, consultants, adjusters, accountants or advisors, and any other entity that has been acquired by, merged into, or combined with the aforementioned insuring entities and their past or present subsidiaries, affiliates, successors and assigns.

3. "2015-16 Insurers" shall mean and include Lloyd's Syndicates CNP 4444, CNP 958, CIN 318, WRB 1967, and AMA 1200 subscribing to Policy No. B0804Q14390F15; Markel Bermuda Limited; Lloyd's Syndicates MIT 3210, HDU 382, KLN 510, CSL 1084, MMX 2010, TMK 1880, AML 2001, and BRT 2987 subscribing to Policy No. B0804Q11263F15; Indian Harbor Insurance Company; PartnerRe Ireland Insurance dac; Swiss National Insurance Co. Ltd.; Aspen Syndicate 4711, Lloyd's Syndicate AGM 2488 subscribing to Policy No. B0804Q17103F15, Ironshore Insurance Ltd. (Bermuda), and Multinational Insurance Company, and their present and former officers, directors, employees, partners, limited partners, shareholders, owners, members, names, reinsurers, subsidiaries, affiliates, successors, predecessors, parents, sister or related companies or entities of any nature, attorneys, managing agents, claims handlers, consultants, adjusters, accountants or advisors, and any other entity that has been acquired by, merged into, or combined with the aforementioned insuring entities and their past or present subsidiaries, affiliates, successors and assigns.

4. "PREPA" shall mean the Puerto Rico Electric Power Authority, and its present and former officers, directors, attorneys, employees, assigns, subsidiaries, parents, successors and predecessors, as well as any person or entity that claims to be an insured or in any way insured through PREPA, directly or indirectly, by the Policies, to the extent that Puerto Rico Electric Power Authority, and its present and former officers, directors, attorneys, employees, assigns, subsidiaries, parents, successors and predecessors have the ability, authority, or power to release Settled Claims on their behalf.

5. "FOMB" shall mean the Financial Oversight and Management Board for Puerto Rico as the representative of the Commonwealth and PREPA pursuant to section 315(b) of PROMESA.

6. "Parties" or "Party," as appropriate, shall mean Insurers, PREPA, and/or FOMB.

7. "Person" shall mean an individual, corporation, limited liability company, partnership, association, trust, any other legal entity or organization, and any state, federal or local government or any government or quasi-governmental body or policy subdivision or any agency, department, board or instrumentality thereof.

8. "Policies" shall collectively mean the insurance policies issued by the 2014-15 Insurers to PREPA as detailed in the attached Schedule of 2014-15 Insurers with a Policy period of May 15, 2014 to May 15, 2015 (the "2014-15 Policy") and the 2015-16 Insurers to PREPA as detailed in the attached Schedule of 2015-16 Insurers with a Policy period of May 15, 2015 to May 15, 2016 (the "2015-16 Policy").

9. "Settled Claims" shall mean any and all claims or causes of action whether known or unknown, potential or actual, by PREPA and/or FOMB against Insurers under the Policies, including any property damage claims, repair/replacement claims, sue and labor claims, protection of property claims, extra expense claims, expediting expense claims, pre-judgment interest, post-judgment interest, professional fees, and all other claims, suits, debts, damages (consequential, extra-contractual, exemplary or punitive), attorneys' fees, expenses, statutory fees, penalties, appraisers' fees, auditors' fees, consultants' fees, and/or demands in law or in equity, whether presently known or unknown, asserted or unasserted, whether sounding in tort or in contract or arising under the statutes or administrative regulations of any jurisdiction with respect to any and all past, existing, potential, present or future claims of any type whatsoever or the payment of the Settlement Amount that PREPA or FOMB ever had, now has, or hereafter may have, fully and finally, against Insurers; including any and all claims:

> Arising out of or related to any act, omission, representation, or conduct of any sort by Insurers in connection with any alleged damage claimed to have taken place during the 2014-15 or 2015-16 Policy periods or the payment of the Settlement Amount for which PREPA and/or FOMB could seek compensatory, exemplary, extra-contractual, punitive, statutory or other damages or relief, based on alleged breach of contract, bad faith, breach of the duty of good faith and fair dealing, unfair

    claim practices, unfair trade practices, deceptive trade practices, any alleged improper act or failure to act in connection with the underwriting, investigation, handling, adjustment or settlement relating to any alleged damage claimed to have taken place during the 2014-15 or 2015-16 Policy periods or the payment of the Settlement Amount, other alleged misconduct or other extra-contractual claims relating to any alleged damage claimed to have taken place during the 2014-15 or 2015-16 Policy periods or the payment of the Settlement Amount, or any obligations arguably arising under any common laws, statutes or administrative regulations of any jurisdiction in any way related to the Policies arising out of or relating to any act, omission, representation, or conduct of any sort in connection with any alleged damage claimed to have taken place during the Policies' periods or the payment of the Settlement Amount, whether or not those claims are now known or unknown, currently exist or subsequently accrue, for any act, omission, representation or conduct or Insurers in connection with the Policies.

With respect to the Settled Claims, it is the Parties' intention to reserve no rights or benefits whatsoever under or in connection with PREPA's and FOMB's claims against Insurers for coverage or benefits under the Policies, in connection with Insurers' claims against PREPA and FOMB raised in the Declaratory Judgment Action, or in connection with the payment of the Settlement Amount, or otherwise in connection with or with respect to any past, present or future claims in any way related to any alleged damage claimed to have taken place during the Policies' periods, or the payment of the Settlement Amount, and to assure each other their respective full and complete peace and freedom from such claims and from all assertions of rights in connection with such claims under the Policies, in the Declaratory Judgment Action, or in connection with the Settlement Amount or any other insurance policy issued by Insurers to PREPA from May 15, 2014 through May 15, 2016 related to the Settled Claims or the payment of the Settlement Amount. It is the Parties' intention for the Settled Claims to settle and extinguish any and all claims PREPA and FOMB ever had, now have, or hereafter may have under the Policies, but to also encompass and extinguish any and all claims any party who receives notice of this Agreement, pursuant to Paragraph E.2. herein, ever had, now have, or hereafter may have under the Policies, to the same extent as any claim of PREPA and/or FOMB. It is also the Parties' intention for the Settled Claims to include release of certain claims, and only those claims, brought by Insurers against PREPA and FOMB in the Declaratory Judgment Action, including for the payment of proceeds under the Policies to PREPA, Interpleader, or regarding the number of occurrences or PREPA's failure to notify and/or present a claim, failure to preserve/mitigate, and failure to repair the tank that is the subject of the Declaratory Judgment Action. The Parties include the identified claims of the Insurers solely to remove any doubt as to complete resolution of the Declaratory Judgment Action and the claims therein.

10. "Settlement Amount" shall mean the amount of $3,500,000, which is being paid in respect of the Settled Claims. The Settlement Amount is comprised of $2,500,000 being paid by the 2014-15 Insurers and $1,000,000 being paid by the 2015-16 Insurers and is calculated as net of each respective Policy's deductible obligation and the full amount of $3,500,000 will be paid to PREPA as though such deductible obligations were already satisfied. Each respective Insurer's portion of

the Settlement Amount is set forth in the attached Schedule of 2014-15 Insurers and Schedule of 2015-16 Insurers. Insurers' obligations under this Agreement are several and are not joint, meaning each Insurer is only obligated to pay its own part of the Settlement Amount—in the amount and as set forth in the attached Schedules of 2014-15 and 2015-16 Insurers—in accordance with each Insurer's respective insurance contract or several subscription to the 2014-15 and/or 2015-16 Policy. Further, Insurers' counsel is executing this Agreement on behalf of each Insurer, individually, which is consistent with and not in derogation of the individual obligations of each Insurer, which remains several.

      **B.      In consideration of the agreements contained herein:**

1. PREPA and FOMB agree, upon receipt of the Settlement Amount by PREPA, to release, remise, covenant not to sue, and forever discharge Insurers irrevocably, unconditionally, fully, finally and forever from and against the Settled Claims.

      **C.      In consideration of the agreements contained herein:**

1. PREPA represents, warrants, and acknowledges that to the extent any lien exists or arises in the future as to the Settled Claims, PREPA will be solely responsible for discharging any such lien through the PREPA Title III case, or if that matter is resolved or closed, PREPA will still bear the responsibility for discharging or otherwise satisfying any lien. To the extent there has been any valid assignment of the Settled Claims, rights under the Policies, and/or the right to receive the Settlement Amount, PREPA further represents, warrants, and acknowledges that this Agreement has been approved by any assignee, and that Insurers may pay the Settlement Amount directly to PREPA.

2. Each Party represents, warrants, and acknowledges that, after conducting a reasonable inquiry, it is aware of no other open claims under the Policies issued by the 2014-15 Insurers and the 2015-16 Insurers.

3. PREPA represents, warrants, and acknowledges that to the extent any other Named Insured, Additional Insured[2], loss payee, and/or mortgagee[3] has or may have in the future any interest, legal or otherwise, in the Settlement Amount, PREPA will be solely responsible for discharging any such interest through the PREPA Title III case, or if that matter is resolved or closed, PREPA will still bear the responsibility for discharging or otherwise satisfying any such interest. PREPA and FOMB further represent, warrant, and acknowledge that Insurers may pay the Settlement Amount directly to PREPA, regardless of the existence of any other Named Insured, Additional Insured, loss payee, and/or mortgagee.

---

[2] As used herein, "Additional Insured" shall mean "Additional Named Assured," "Additional Named Insured," and/or "Additional Insured," as used and/or defined in the Policies.
[3] The terms "Named Insured," "loss payee," and "mortgagee" are used and defined herein in the same manner and hold the same meaning as in the Policies.

4. Each Party represents, warrants, and acknowledges that this Agreement has been fully explained to it, it is represented by counsel, and it understands all of the implications thereof.

5. PREPA and FOMB represent and warrant that the Settlement Amount is reasonable and represents a good faith compromise of the disputed Settled Claims.

6. In making this Agreement, each Party had the opportunity to investigate the Settled Claims that are the subject of this Agreement, and that to the extent this Agreement is made prior to completion of the investigation or upon information that is or may not be complete, each Party does so intentionally and voluntarily in order to resolve the Settled Claims at this time.

7. PREPA represents that it is presently duly and properly authorized to receive payment of the Settlement Amount, and PREPA and FOMB further warrant and represent that payment by Insurers to PREPA is intended to forever extinguish any rights or claims that any Person, loss payee, mortgagee, assignee, Named Insured, and/or Additional Insured receiving notice of this Agreement may have under the Policies and/or with respect to any proceeds or payments made thereunder in regard to the Settled Claims.

8. Hereafter, Insurers shall be forever free of liability for the Settled Claims as if any alleged damage or loss under the Policies had never occurred or otherwise come into existence.

9. PREPA represents and warrants that all statements in the Sworn Proof of Loss are true and correct.

> D. **In consideration of the agreements contained herein, Insurers agree to:**

1. Pay the Settlement Amount to PREPA according to the following schedule:

   a) Within 30 days of entry of a final, non-appealable order approving the Agreement in a form acceptable to the Insurers, the 2014-15 Insurers will pay $2,500,000 and the 2015-16 Insurers will pay $1,000,000.

All payments referenced herein will be made by company check or wire transfer as directed by PREPA. Each Insurer's respective portions of the payments are as set forth in the attached and incorporated Schedule of 2014-15 Insurers and Schedule of 2015-16 Insurers.

No further monies or remuneration of any type beyond the Settlement Amount will be paid by Insurers relating to the Settled Claims.

> E. **In consideration of the agreements contained herein, the Parties agree that:**

1. This Agreement is a compromise between the Parties and shall not be construed as an admission of any Party concerning coverage under the Policies or any other policy of insurance or reinsurance

contract, nor shall this Agreement or any provision hereof be construed as a waiver, modification or retraction of any positions of any Party with respect to the interpretation and application of the Policies or any other policies of insurance or reinsurance contracts that have been taken, are being taken, or may be taken in the future by any of the Parties. Further, this Agreement shall not be construed as an admission by any Party that any loss or damage was or was not suffered during the Policies' applicable periods.

2. PREPA and FOMB shall file a motion seeking approval of this Agreement and related relief (the "Motion"), which incorporates and attaches this Agreement, in both the Commonwealth and PREPA Title III Cases and PREPA will provide notice thereof to all creditors and parties in interest on the master service list in both cases, utilizing Prime Clerk's notice service for all parties registered for electronic service of process and by United States, first class mail, to any party that is not registered for electronic service.

3. Because the purpose of this Agreement is to permanently preclude any action or further action by PREPA, FOMB, and/or any other party receiving notice pursuant to Paragraph E.2 of this Agreement, or any of their agents, assigns or representatives of any capacity, related to the Settled Claims against Insurers under the Policies or otherwise, the Parties agree, covenant, and warrant that should it develop that there are any errors or mistakes, whether legal or factual, and whether mutual or unilateral, that cause this Agreement to be defective, or that cause the release of Insurers to be defective or less than full and complete, then the Parties agree to execute any and all instruments and do any and all things necessary to effectuate a valid Agreement as set forth above. Except as provided by Paragraph E.4., if any portion of this Agreement is declared to be invalid or unenforceable (except para. – requiring payment by Insurers to PREPA or para. B.1 providing release), such portion shall be deemed severed from this Agreement, and the remaining parts shall remain in full force and effect as if the invalid or unenforceable portion has not been part of this Agreement.

4. The terms and conditions of this Agreement are subject in all respects to approval by the Court in the Commonwealth and PREPA Title III Cases pursuant to the Motion. In the event the Court denies the requested relief and/or does not approve the Agreement in its entirety and/or does not enter a final, non-appealable Order approving the Agreement and granting related relief in a form acceptable to Insurers that incorporates the terms and conditions of this Agreement, then the Parties shall meet and confer in good faith in an effort to propose an Order acceptable to the Court. If the Parties are unable to agree or unable to fashion an Order acceptable to the Court, at Insurers' option and/or discretion, either (i) as of such date, the Parties shall be returned to the *status quo ante* prior to their entry into this Agreement, and this Agreement shall terminate and shall be deemed null and void without any continuing force or effect whatsoever, or (ii) the Agreement shall remain in full force and effect.

5. Within 30 days of full payment of the Settlement Amount, the Parties shall jointly cause the Declaratory Judgment Action, including PREPA's Counterclaim and Third Party Claims, to be dismissed with prejudice, with each side to bear their own costs.

6. This Agreement may be executed in counterparts and the signature pages may be executed and exchanged electronically. The text of the Agreement, together with accurate electronic copies of the Parties' signatures, shall have the force and effect of an original between the Parties. This instrument contains the entire agreement between the Parties, the terms of which are contractual and not mere recitals.

7. The Parties acknowledge and agree that Insurers' payment of the Settlement Amount is a compromise between the Parties, and that the adjustment and settlement of the Settled Claims, and the execution of this Agreement, shall have no precedential or binding effect with respect to the construction of any policy of insurance or reinsurance contract issued or to be issued by Insurers. The payment described above is for the compromise of disputed claims and it is agreed that by entering into this Agreement, the Parties intend to avoid further expenses related to the Declaratory Judgment Action, the Policies, any adjustments, and to buy complete peace with respect to the Settled Claims.

8. This Agreement is a jointly drafted product of arms-length negotiations between the Parties, and they agree that it shall be so construed. As such, neither Party will claim that any ambiguity in this Agreement shall be construed against the other Party.

9. No change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties.

10. PREPA, FOMB, and Insurers each represent and warrant that the signatories to this Agreement have the authority to execute it on behalf of and to bind PREPA, FOMB, and Insurers respectively.

IN WITNESS WHEREOF, the parties have executed this Agreement by a duly authorized representative this _6th_ day of _October_, 2020.

_____
As Representative of the Financial Oversight and Management Board for Puerto Rico

_____
As Representative of Puerto Rico Electric Power Authority

_____
As Attorney-In-Fact of Sciemus Limited; Markel Europe; CIN 318; WRB 1967; AGM 2488; MIT 3210; KLN 510; MMX 2010; CSL 1084; TMK 1880; AML 2001; BRT 2987; Indian Harbor Insurance Company; Ironshore Insurance Ltd.; PartnerRe Ireland Insurance dac; Swiss National Insurance Co. Ltd.; CNP 4444; CNP 958; Markel Bermuda Limited; AMA 1200; HDU 382; and Aspen Syndicate 4711

| SCHEDULE OF 2014-15 INSURERS | | | |
|---|---|---|---|
| **Insurers** | **Policy/Slip Number** | **%** | **Payment in USD** |
| Sciemus Limited | B080414390F14 | 10.0000% | $250,000.00 |
| Markel Europe | B080414390F14 | 3.0000% | $75,000.00 |
| CIN 318 | B080414390F14 | 2.0000% | $50,000.00 |
| WRB 1967 | B080414390F14 | 3.5000% | $87,500.00 |
| AGM 2488 | B080414390F14 | 4.0000% | $100,000.00 |
| MIT 3210 | B0804Q11263F14 | 3.1169% | $77,922.50 |
| KLN 510 | B0804Q11263F14 | 3.8961% | $97,402.50 |
| MMX 2010 | B0804Q11263F14 | 3.8961% | $97,402.50 |
| CSL 1084 | B0804Q11263F14 | 6.2337% | $155,842.50 |
| TMK 1880 | B0804Q11263F14 | 3.1169% | $77,922.50 |
| AML 2001 | B0804Q11263F14 | 5.8442% | $146,105.00 |
| BRT 2987 | B0804Q11263F14 | 3.8961% | $97,402.50 |
| Indian Harbor Insurance Company | PRO0043871 | 20.0000% | $500,000.00 |
| Ironshore Insurance Ltd. | B0804Q14310F14 | 10.0000% | $250,000.00 |
| PartnerRe Ireland Insurance dac | F550936 | 5.0000% | $125,000.00 |
| Swiss National Insurance Co. Ltd. | B0804Q11098F14 | 12.5000% | $312,500.00 |
| **TOTAL** | | **100.00%** | **$2,500,000.00** |

| SCHEDULE OF 2015-16 INSURERS | | | |
|---|---|---|---|
| **Insurers** | **Policy/Slip Number** | **%** | **Payment in USD** |
| CNP 4444 (80%) / CNP 958 (20%) | B0804Q14390F15 | 5.0000% | $50,000.00 |
| CIN 318 | B0804Q14390F15 | 1.6667% | $16,667.00 |
| WRB 1967 | B0804Q14390F15 | 2.9167% | $29,167.00 |
| Markel Bermuda Limited | B0804Q14390F15 | 2.5000% | $25,000.00 |
| AMA 1200 | B0804Q14390F15 | 2.0833% | $20,833.00 |
| MIT 3210 | B0804Q11263F15 | 3.7975% | $37,975.00 |
| HDU 382 | B0804Q11263F15 | 3.7975% | $37,975.00 |
| KLN 510 | B0804Q11263F15 | 5.0000% | $50,000.00 |
| CSL 1084 | B0804Q11263F15 | 6.0758% | $60,758.00 |
| MMX 2010 | B0804Q11263F15 | 3.7975% | $37,975.00 |
| TMK 1880 | B0804Q11263F15 | 3.0380% | $30,380.00 |
| AML 2001 | B0804Q11263F15 | 5.6962% | $56,962.00 |
| BRT 2987 | B0804Q11263F15 | 3.7975% | $37,975.00 |
| Indian Harbor Insurance Company | PRO004387101 | 15.0000% | $150,000.00 |
| AGM 2488 | B0804Q17103F15 | 3.3333% | $33,333.00 |
| PartnerRe Ireland Insurance dac | F550936 | 10.0000% | $100,000.00 |
| Swiss National Insurance Co. Ltd. | B0804Q11098F15 | 10.0000% | $100,000.00 |
| Aspen Syndicate 4711 | B0804Q11098F15 | 2.5000% | $25,000.00 |
| Ironshore Insurance Ltd. | B080414310F15 | 10.0000% | $100,000.00 |
| **Total** | | **100.0000%** | **$1,000,000.00** |