Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| IN RE: CERTIFICATE ENERGY COMPLIANCE | KLRA202000170 consolidado KLRA202000186 | *Revisión Administrativa* *Núm. Caso: NEPR-AP-2020-0002* *Sobre: Denegatoria de Petición de Intervención y Solicitud de Acceso a la Información, Otorgamiento de Certificado de Cumplimiento de Energía* |
|---|---|---|
| Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.,-Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club y su capítulo de Puerto Rico, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti-Incineración, Inc., Amigos del Río Guaynabo, Inc., Campamento Contra las Cenizas en Peñuelas, Inc., y Amaneceres 2025 Incorporado Recurrente vs. Autoridad para las Alianzas Público Privadas ("P3"); Negociado de Energía de Puerto Rico Recurrido | | |

Panel integrado por su presidenta, la Jueza Colom García, el Juez Ramos Torres y la Jueza Soroeta Kodesh

Colom García, Jueza Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 28 de septiembre de 2020.

La Unión de Trabajadores de la Industria Eléctrica y de Riego (UTIER) presentó el 2 de julio de 2020 un recurso de revisión administrativa asignado al KLRA202000170. Solicita la revisión de dos determinaciones emitidas por el Negociado de Energía de

Número Identificador

SEN2020_____

Puerto Rico el 17 y 18 de junio de 2020. En la Resolución del 17 de junio, el Negociado de Energía otorgó el Certificado de Cumplimiento de Energía, mientras que, en la Resolución del 18 de junio, denegó la petición de intervención de la UTIER.

El 14 de julio de 2020, en recurso asignado al KLRA202000186, las organizaciones Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.,-Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club y su capítulo de Puerto Rico, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti-Incineración, Inc., Amigos del Río Guaynabo, Inc., Campamento Contra las Cenizas en Peñuelas, Inc., y Amaneceres 2025, interesadas en temas de energía en Puerto Rico (en adelante "las organizaciones"), solicitan la revisión de la Resolución del 17 de junio de 2020.

En ambas causas se impugna la Resolución del Negociado de Energía del 17 de junio de 2020, por lo que procedemos a la consolidación de los casos con el recurso KLRA20920170, de mayor antigüedad.

### ANTECEDENTES

La Ley Núm. 120 de 20 de junio de 2018, "Ley para Transformar el Sistema Eléctrico de Puerto Rico", 22 LPRA sec. 1112, creó el marco legal para el traspaso de los activos de la Autoridad de Energía Eléctrica, utilizando el modelo de las Alianzas Público-Privadas. A tenor con la política pública implementada con la Ley 120-2018 se comenzó el proceso de alianza público-privada en la AEE para el manejo, operación, mantenimiento, reparación, restauración y reemplazo del sistema de transmisión y distribución eléctrica de Puerto Rico. (Apéndice pág. 103 y

105). Después de varios trámites, dos entidades presentaron propuestas, las que fueron evaluadas. El Comité de Alianza recomendó el proponente Luma Energy para el Contrato de Alianza del Proyecto de Operación y Mantenimiento del Sistema de Transmisión y Distribución de Puerto Rico. (Apéndice pág. 157).

El 18 de mayo de 2020, la Autoridad para las Alianzas Público-Privadas presentó ante el Negociado de Energía de Puerto Rico el Contrato Preliminar y el Informe del Comité de Alianza, para la expedición del Certificado de Cumplimiento de Energía, según lo requiere la Ley 120-2018. Junto a esa petición solicitaron la confidencialidad de los documentos. El 15 de junio de 2020 el Negociado de Energía celebró una vista. Ese día, la UTIER, solicitó intervenir, a tenor con el procedimiento adjudicativo de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017. Además, requirió acceso a los documentos. El 17 de junio de 2020 la Autoridad se opuso a la intervención de la UTIER, debido a que la Ley Núm. 38-2017 estaba excluida de los procedimientos al amparo de la Ley Núm. 29-2009 y la Ley 120-2018. Además, sometió documentos adicionales y enmiendas al Contrato Preliminar, cuya confidencialidad fue concedida.

Así las cosas, el 17 de junio de 2020 el Negociado de Energía otorgó el Certificado de Cumplimiento de Energía al contrato de gerencia y operación, otorgado a varias empresas identificadas como LUMA Energy. El 18 de junio, el Negociado denegó la solicitud de intervención de la UTIER, debido a que la solicitud de Certificado era un procedimiento exparte, no adjudicativo, ni sujeto a las provisiones de la Ley Núm. 38-2017.

El 2 de julio de 2020 la UTIER presentó el recurso de revisión administrativo de epígrafe, asignado al KLRA202000170, junto a una Moción en Auxilio de Jurisdicción, que denegamos en Resolución del 3 de julio de 2020. En el recurso planteó que el Negociado de Energía incidió al:

> DENEGAR LA INTERVENCIÓN DE LA UTIER EN EL PROCESO ADMINISTRATIVO, AL INTERPRETAR QUE POR SER UN PROCEDIMIENTO EX PARTE NO HAY DERECHO A LA INTERVENCIÓN.
>
> EMITIR UNA DETERMINACIÓN SOBRE EL CERTIFICADO DE CUMPLIMIENTO DE ENERGÍA VICIADA POR PARCIALIDAD Y CONFLICTO DE INTERESES POR LA PARTICIPACIÓN DEL COMISIONADO PRESIDENTE EDISON AVILÉS DELIZ, QUE FUE PARTE DEL COMITÉ DE ALIANZA QUE PREVIAMENTE SELECCIONÓ, NEGOCIÓ Y PROPUSO LA CONCESIÓN DEL CERTIFICADO DE CUMPLIMIENTO DE ENERGÍA.
>
> CONCEDER EL CERTIFICADO DE CUMPLIMIENTO DE ENERGÍA SIN HABER CONSIDERADO EL MARCO REGULATORIO COMPLETO, ESPECÍFICAMENTE EL EFECTO DE LA TRANSACCIÓN PROPUESTA EN LOS CONSUMIDORES Y EMPELADOS DE LA AEE.
>
> CONCEDER EL CERTIFICADO DE CUMPLIMIENTO DE ENERGÍA SIN PERMITIR LA PARTICIPACIÓN DE LA UTIER Y ASÍ VIOLENTÓ EL DEBIDO PROCESO DE LEY PROCESAL.
>
> DETERMINAR QUE LA SOLICITUD DE ACCESO A LA INFORMACIÓN DE LA UTIER ERA ACADÉMICA POR VIRTUD DE HABÉRSELE NEGADO LA INTERVENCIÓN EN EL PROCESO ADMINISTRATIVO.
>
> NEGAR ACCESO PÚBLICO, Y DE MANERA MÁS AMPLIA DE LO NECESARIO, A LA PETICIÓN ADMINISTRATIVA DE AAPP Y LOS DOCUMENTOS ADJUNTOS SIN CONSIDERAR LOS PLANTEAMIENTOS CONSTITUCIONALES DE ACCESO A LA INFORMACIÓN.

El 23 de julio de 2020 la Autoridad de Alianza Público-Privada se opuso a la petición de la UTIER. El 31 de julio la UTIER solicitó el señalamiento de una vista oral o permiso para replicar, a lo cual se opuso la Autoridad de Alianza, el 10 de agosto.

Entretanto, el 7 de julio de 2020, las organizaciones Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.,-Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club y su capítulo de Puerto Rico, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti-Incineración, Inc., Amigos del Río Guaynabo, Inc., Campamento

Case:17-03283-LTS Doc#:14512-1 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc: Exhibit A - Certified Copy of PR Court of Appeals Judgment Page 5 of 14

KLRA202000170 cons. KLRA202000186                    5

Contra las Cenizas en Peñuelas, Inc., y Amaneceres 2025, interesadas en temas de energía en Puerto Rico, (en adelante "las organizaciones") presentaron ante el Negociado de Energía, una Moción Urgente de Reconsideración y/o Solicitud de Impugnación de Autorización del Certificado de Energía, al amparo de la sección 5.4 de la Ley de Procedimiento Administrativo Uniforme, LPAU. A su vez, el 10 de julio, solicitaron intervenir.

De igual forma, el 14 de julio de 2020 las organizaciones presentaron el recurso de revisión administrativa asignado al KRA202000186, alegando la comisión de los siguientes errores:

> PRIMERO: AL AUTORIZAR EL CERTIFICADO DE ENERGÍA SIN FUNDAMENTOS, RAZONES O APOYO ALGUNO A LA LUZ DEL MARCO ENERGÉTICO Y SU REGLAMENTACIÓN Y DE LAS DIMENSIONES DEL CONTRATO.
>
> SEGUNDO: AL AUTORIZAR EL CERTIFICADO DE ENERGÍA SIN DETERMINAR LOS ASPECTOS ECONÓMICOS DEL CONTRATO INCLUYENDO EN LAS TARIFAS DE ENERGÍA ELÉCTRICA.
>
> TERCERO: AL EXPEDIR EL CERTIFICADO SIN CONSIDERAR LOS IMPACTOS AMBIENTALES DE SU DECISIÓN CONFORME SE LO REQUERÍA LA CONSTITUCIÓN, LA LEGISLACIÓN VIGENTE SOBRE EL SISTEMA ENERGÉTICO, LA LEY DE CAMBIO CLIMÁTICO Y LA LEY SOBRE POLÍTICA PÚBLICA AMBIENTAL DEL PUERTO RICO.
>
> CUARTO: AL APROBAR EL CERTIFICADO DE ENERGÍA PUES PARTICIPÓ IMPROPIAMENTE EN EL PROCESO DE EVALUACIÓN, SELECCIÓN DEL CONTRATANTE Y LA NEGOCIACIÓN DEL CONTRATO DE ALIANZA DE LUMA ENERGY, INC., Y LUMA ENERGY SERVICIO, LLC.
>
> QUINTO: AL IMPARTIR SU APROBACIÓN AL CONTRATO PUES CONTIENE DIVERSAS DISPOSICIONES CONTRARIAS AL MARCO ENERGÉTICO VIGENTE Y/O SIN PREVIAMENTE ESPECÍFICAMENTE CONSIDERARLAS Y EVALUARLAS.

El 6 de agosto las organizaciones presentaron una Moción Urgente Bajo la Regla 61 (A)(1)(2) para paralizar los efectos de la decisión administrativa. Al día siguiente, la Autoridad para las Alianzas Público-Privada se opuso y solicitó la desestimación del recurso. En Resolución del 13 de agosto de 2020 un panel hermano de este tribunal que atendió el asunto, denegó la

paralización, quedando pendiente la adjudicación de la solicitud de desestimación.

El 11 de septiembre de 2020, la Autoridad presentó su alegato en oposición y el 22 de septiembre las organizaciones recurrentes solicitaron replicar.

Trabada la controversia, procedemos a resolver, como cuestión de prioridad, el aspecto jurisdiccional, en cuanto a la facultad de los recurrentes para cuestionar las Resoluciones emitidas por la Comisión de Energía. Esto responde a que las cuestiones relativas a la jurisdicción de un tribunal son privilegiadas y como tal deben atenderse y resolverse con preferencia a cualesquiera otras. Peerles Oil & Chemical v. Hnos. Torres, 186 DPR 239 (2012).

## EXPOSICION Y ANÁLISIS

Uno de los requisitos de justiciabilidad necesarios para dar paso al ejercicio de la función judicial es el que los litigantes ostenten legitimación activa. P.I.P. v. E.L.A. et al., 186 DPR 1, 11 (2012); Lozada Sánchez v. A.E.E., 184 DPR 898, 916 (2012). La capacidad de una parte para realizar con eficacia actos procesales como parte litigante y comparecer como demandante o en representación de cualquiera de ellos se conoce propiamente como legitimación. Col. Ópticos de P.R. v. Vani Visual Center, 124 DPR 559 (1989). Sobre el particular, el Tribunal Supremo de Puerto Rico ha manifestado que: Para que haya acción legitimada tiene siempre que existir la capacidad para demandar, pero no todo el que tiene capacidad para demandar tiene acción legitimada en un pleito específico. En cada pleito, además de capacidad para demandar, la parte interesada deberá demostrar que tiene un interés legítimo. Col. Ópticos de P.R. v. Vani Visual Center, supra, pág. 563, citando a Serrano Geyls,

Derecho Constitucional de Estados Unidos y Puerto Rico, Vol. I, pág. 132.

Para que un "litigante pueda presentar el recurso de revisión judicial tiene que satisfacer dos requisitos: (1) **ser parte** y (2) estar adversamente afectado por la decisión administrativa. Además, deberá agotar los remedios administrativos y recurrir dentro del término provisto". Lozada Sánchez v. A.E.E., *supra*, pág.918, citando a Fund. Surfrider y otros v. A.R.Pe., 178 DPR 563, 575-576 (2010), al interpretar la Sec. 4.2 de la LPAU, 3 LPRA sec. 2172.

De otro lado, ley Núm. 120-2018, "Ley para Transformar el Sistema Eléctrico de Puerto Rico", creó el marco legal y el mecanismo para la venta o traspaso de los activos de la AEE relacionados a la generación y para el establecimiento de Alianzas Público-Privadas con respecto a cualquier función, servicio o instalación de la AEE. Además, faculta a la Autoridad para las Alianzas Público-Privadas comenzar procesos de negociación informal, estudios de mercado, solicitudes de información, de expresiones de interés y cualquier método para recopilar información de los participantes en el mercado. Véase Exposición de Motivos Ley Núm. 2018-120.

La Exposición de Motivos de la Ley, agrega en lo aquí pertinente que:

> Este proceso de transformación de energía se llevará a cabo mediante la creación de Alianzas Público Privadas, siguiendo los procedimientos establecidos en esta Ley. Ello para aprovechar el marco legal, andamiaje y procesos ya existentes para la creación de Alianzas Público Privadas, toda vez que provee la transparencia y flexibilidad necesaria para una negociación que redunde en un sistema energético financieramente viable que tenga como su enfoque el bienestar del consumidor. La utilización del andamiaje de la Ley 29-2009, según enmendada, conocida como "Ley de Alianzas Público Privadas", tiene el propósito

de aprovechar sus rigurosos procesos de transparencia y flexibilidad para enmarcar las negociaciones que redunden en un sistema eléctrico financieramente viable y con un enfoque en el bienestar del consumidor. […]. En esta Ley, se autoriza expresamente a la Autoridad a vender sus activos relacionados a la generación y transferir o delegar cualquiera de sus operaciones, funciones o servicios, y se autoriza a la Autoridad de Energía Eléctrica junto a la Autoridad para las Alianzas Público Privadas a llevar a cabo los procesos mediante los cuales se consumarán estas transacciones. También se establece el proceso que aplicará a toda transacción mediante la cual se establezca una Alianza Público Privada con respecto a cualquier función, servicio o instalación de la corporación pública. Los contratos que surgen conforme a esta Ley, se llevarán a cabo de forma análoga al marco legal y administrativo que hoy rige las Alianzas Público Privadas. […].No obstante, se mantienen las disposiciones de la Ley 57-2014, conocida como "Ley de Transformación y Alivio Energético", que vayan conforme a la transformación de nuestro sistema eléctrico. […]. De igual forma, esta Ley reconoce el sistema de pesos y contrapesos de nuestro ordenamiento constitucional, y provee para la participación activa de la Asamblea Legislativa, tanto para una concesión como para la venta de algún activo relacionado a la generación de la AEE. En el caso de la venta de un activo relacionado a la generación de la AEE, tanto la Asamblea Legislativa como el Gobernador ratificarán el resultado final del acuerdo que sea aprobado.

La Sección 2(d) de la Ley Núm. 120-2018, define el Certificado de Cumplimiento de Energía como "el Certificado emitido por la Comisión en toda Transacción de la AEE mediante el cual se acredita que el Contrato Preliminar cumple con el marco regulatorio, la "Ley de Política Pública Energética de Puerto Rico", y el derecho vigente." 22 LPRA sec. 1112.

Respecto a la autorización de transacciones con la AEE, la Sección 5 (g) provee lo siguiente relacionado al Certificado de Cumplimiento:

> (g) Todo contrato relacionado a una Transacción de la AEE requerirá de un Certificado de Cumplimiento de Energía, según definido en esta Ley. El Comité de Alianza presentará al Negociado el Informe preparado

Case:17-03283-LTS Doc#:14512-1 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc: Exhibit A - Certified Copy of PR Court of Appeals Judgment Page 9 of 14

KLRA202000170 cons. KLRA202000186 9

> conforme al Artículo 9(g) de la Ley 29-2009 previo a presentar el mismo a las Juntas de Directores de la Autoridad y la AEE. El Negociado evaluará el Informe, la información presentada y el Contrato Preliminar y de cumplir con la política pública energética y el marco regulatorio, expedirá un Certificado de Cumplimiento de Energía. El Certificado de Cumplimiento de Energía o la resolución denegando su expedición contendrá los fundamentos que motivan su determinación. El Negociado tendrá treinta (30) días desde que le fue presentado el Contrato Preliminar para emitir un Certificado de Cumplimiento, o una resolución denegando su expedición. Cuando coincidan más de un Contrato Preliminar ante la consideración del Negociado, el término de treinta (30) días transcurrirá consecutivamente, considerando el orden que fueron presentados. De no expedirse un Certificado de Cumplimiento o resolución denegatoria dentro de dicho término, la Transacción de la AEE se considerará aprobada por el Negociado y se entenderá que la Transacción de la AEE ha recibido un Certificado de Cumplimiento de Energía. Una vez emitido el Certificado de Cumplimento de Energía, cualquier enmienda al Contrato Preliminar requerirá de la emisión de un nuevo Certificado de Cumplimiento de Energía. La mera expedición de un Certificado de Cumplimiento de Energía no concede el derecho a reclamar indemnización, reembolso, ni pago alguno por concepto de expectativas surgidas en cualquiera de las etapas, ni por los gastos incurridos durante el proceso de cualificación o presentación de propuestas.

22 LPRA sec. 1115 (g).

La sección 5 (g) añade que "Las revisiones al Certificado de Cumplimiento de Energía emitido por el Negociado deberán interponerse ante el Tribunal de Apelaciones, en el término de quince (15) días, contados desde su notificación." *Íd*.

Para el trámite de revisión, el Reglamento para la *Licitación, evaluación, selección, negociación y adjudicación de contratos de alianza y contratos de ventas para la transformación del sistema eléctrico*, Reglamento 9078 de 1ro de abril de 2019, reitera en la sección 8.2 que, "Cualquier solicitud de revisión relacionada al Certificado de cumplimiento de energía emitido por el Negociado de Energía deberá ser radicada por la **Autoridad** en el Tribunal de apelaciones dentro de los quince (15) días luego de la notificación."

En cuanto al proceso de transformación de la AEE, la sección 4 de la Ley 120-2018, establece que:

> **Todas las disposiciones de la Ley 29-2009**, (incluyendo, sin limitación alguna, el Artículo 11 de la Ley 29-2009), aplicarán a las Transacciones de la AEE, excepto en la medida en que se indique lo contrario en esta Ley. Si cualquier disposición de esta Ley resultara inconsistente con cualquier otra disposición de la Ley 29-2009, la Ley 83, la Ley 57-2014, según enmendada, […], la Ley 4-2016, según enmendada, o cualquier otra ley o reglamento aplicable, prevalecerán las disposiciones de esta Ley. […] (énfasis nuestro).

22 LPRA sec. 1114.

Como vemos, diversas secciones de la Ley Núm. 120-2018, así como su exposición de motivos, claramente remiten los procedimientos a las disposiciones de la Ley Núm. 29-2009 sobre Alianzas Público-Privadas. En este punto, el Artículo 19 (c) de la Ley 29-2009 establece claramente la inaplicabilidad de la Ley de Procedimientos Administrativos Uniforme (LPAU), a sus procesos, a saber:

> Se eximen todos los procedimientos y las actuaciones autorizadas por esta Ley, incluyendo, pero sin limitarse a los procedimientos y las actuaciones sobre aprobación de reglamentos, determinación de proyectos para el establecimiento de Alianzas, selección de propuestas y adjudicaciones de Contratos de Alianza, de todas las disposiciones de la Ley 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

27 LPRA sec. 2618.

De otro lado, el artículo 5 (g) de la Ley 120-2018, antes citado, relativo al Certificado de Cumplimiento de Energía, nos remite al Artículo 9(g) de la Ley 29-2009. Este artículo establece el trámite para la Aprobación del Contrato de Alianza y Preparación del Informe, proceso que culmina con la aprobación del Gobernante o funcionario delegado. Ahí es que la Autoridad notificará por escrito a los restantes Proponentes que sus propuestas no han sido seleccionadas, quienes podrán solicitar

Case:17-03283-LTS Doc#:14512-1 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc: Exhibit A - Certified Copy of PR Court of Appeals Judgment Page 11 of 14

KLRA202000170 cons. KLRA202000186 11

revisión judicial de dicha determinación, sujeto a las condiciones y procedimientos dispuestos en el Artículo 20 de la Ley.

De acuerdo con la normativa aquí mencionada, el procedimiento para obtener el Certificado de Cumplimiento de Energía al amparo de la Ley 120-2018, es con el fin de acreditar que el contrato preliminar cumple con la política pública energética y el marco regulatorio. El trámite ante la Comisión de Energía no es para la concesión de licencia ni para adjudicar alguna controversia mediante el cual "una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte." Sección 1.3 de la LPAU, 3 LPRA sec. 9603.

El procedimiento ante el Negociado de Energía involucra únicamente a la Autoridad, que es la parte que lo solicita y solo requiere la expedición de un certificado, luego de la evaluación del contrato preliminar a la luz de la política pública. Esto es, la emisión del Certificado de Energía es un trámite previo requerido en ley para que posteriormente la Junta de Directores de la Autoridad y la AEE procedan a evaluar la transacción, que de ser aceptada, pasaría al Primer Ejecutivo para su aprobación. El proceso de certificar el cumplimiento es sólo un instrumento previo a la contratación, a petición de la Autoridad, donde se ausculta únicamente si el Contrato Preliminar cumplió con la política pública. La expedición del Certificado de Cumplimiento de Energía, tampoco concede derecho a reclamar indemnizaciones, reembolso ni pago alguno por concepto de expectativas surgidas en cualquiera de las etapas durante el proceso de cualificación o presentación de propuestas. Véase artículo 5(g) de la ley 120-2018. Ahora bien, el proceso para revisar el Certificado de Cumplimiento, está disponible únicamente para la Autoridad, que es el ente designado en ley para iniciar el proceso de alianza

público privada ante el Negociado de Energía, según lo establece la sección 8.2 del Reglamento 9078, *supra.*

Incluso, en etapas más avanzadas, cuando ya el gobernante aprueba el Contrato de Alianza, los proponentes que no fueron seleccionadas, son quienes podrán solicitar revisión judicial de dicha determinación. Véase artículos 9 (g) y 20 de la Ley Núm. 29-2009.

Así que, del conjunto de las leyes 120-2018 y 29-2009, que rigen el proceso del Certificado de Cumplimiento aquí cuestionado, no surge autorización alguna que permita la intervención que proponen las organizaciones y la UTIER, como lo provee la LPAU para los procesos que se rigen por ésta. Mas aun cuando el artículo 19 de la Ley Núm. 29-2009, claramente dispone que las disposiciones de LPAU no serán aplicables a sus procedimientos. Estas leyes sobre alianza público-privadas y la Ley 120-2018, tienen su propio esquema de revisión judicial.

Bajo este escrutinio, los recurrentes no tienen legitimación activa ni autoridad reconocida en Ley para intervenir en el proceso ni para acudir a este foro apelativo para cuestionar las resoluciones del Comité de Energía. Reiteramos que, el procedimiento ante el Comité de Energía no es uno de naturaleza adjudicativa, al que se le pueda aplicar la LPAU, sino que es uno para dar cumplimiento a la política pública de atender la necesidad energética en Puerto Rico, a través de las alianzas público-privadas. En estas circunstancias, estamos impedidos de asumir jurisdicción donde no la tenemos, por lo que procede la desestimación del recurso apelativo. S.L.G. Szendrey-Ramos v. F. Castillo, 169 DPR 873, 882 (2007); Peerles Oil & Chemical v. Hnos. Torres, *supra*. En fin, no se activó la jurisdicción de nuestro foro porque los recurrentes no son parte con derecho a intervenir

Case:17-03283-LTS Doc#:14512-1 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc: Exhibit A - Certified Copy of PR Court of Appeals Judgment Page 13 of 14

KLRA202000170 cons. KLRA202000186 13

el proceso de expedición del Certificado de Cumplimiento de Energía, aquí cuestionado.

## **DICTAMEN**

Por los fundamentos antes esbozados, procedemos a desestimar los recursos de epígrafe de conformidad con la Regla 83(B)(1) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones