Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc: Exhibit B - Certified Translation JF-2020-130[1] Page 1 of 14

Certified Translation JF-2020-130 Page 1 of 14

Commonwealth of Puerto Rico
COURT OF APPEALS
PANEL IV

| IN RE: CERTIFICATE ENERGY COMPLIANCE [*sic*] | KLRA202000170 | *Administrative Review* |
|---|---|---|
| Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.,-Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club and its Puerto Rico chapter, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti-Incineración, Inc., Amigos del Río Guaynabo, Inc., Campamento Contra las Cenizas en Peñuelas, Inc., and Amaneceres 2025 Incorporado<br>Appellant<br><br>v.<br><br>Public-Private Partnerships Authority ("P3"); Puerto Rico Energy Bureau<br>Appellee | consolidated<br><br>KLRA202000186 | *Case No.: NEPR-AP-2020-0002*<br><br>*Re: Denial of Petition for Intervention and Request for Access to Information, Granting of Energy Compliance Certificate* |

Panel composed of Chief Judge Colom García, Judge Ramos Torres and Judge Soroeta Kodesh

Judge Colom García Delivering the Opinion of the Court

## **JUDGMENT**

In San Juan, Puerto Rico, on September 28, 2020.

On July 2, 2020, the Electrical Industry and Irrigation Workers Union (UTIER) filed an appeal for administrative review assigned to KLRA202000170. It requests the review of two determinations issued by the Puerto Rico Energy Bureau

Identifier Number

SEN2020_____

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc:
Exhibit B - Certified Translation JF-2020-130[1] Page 2 of 14

Certified Translation JF-2020-130 Page 2 of 14
KLRA202000170 cons. KLRA202000186     2

on June 17 and 18, 2020. In the Resolution issued on June 17, the Energy Bureau granted the Energy Compliance Certificate, while in the Resolution issued on June 18, it denied UTIER's petition for intervention.

On July 14, 2020, in an appeal assigned to KLRA202000186, the organizations Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.,-Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club and its Puerto Rico chapter, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti-Incineración, Inc., Amigos del Río Guaynabo, Inc., Campamento Contra las Cenizas en Peñuelas, Inc., and Amaneceres 2025, involved in energy issues in Puerto Rico (hereinafter, "the organizations"), requested review of the Resolution issued on June 17, 2020.

In both cases, the June 17, 2020 Resolution by the Energy Bureau is challenged, for which reason we consolidate the cases into appeal KLRA20920170, which is the first-filed case.

## BACKGROUND

Law No. 120 of June 20, 2018, the "Puerto Rico Electrical System Transformation Act," 22 LPRA § 1112, created the legal framework for the transfer of assets belonging to the Electric Power Authority, using the Public-Private Partnership model. In accordance with the public policy implemented through Law 120-2018, the public-private partnership process was initiated in PREPA for the management, operation, maintenance, repair, renovation, and replacement of Puerto Rico's electrical transmission and distribution system. (Appendix pp. 103 and

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc:
Exhibit B - Certified Translation JF-2020-130[1] Page 3 of 14

Certified Translation JF-2020-130 Page 3 of 14
KLRA202000170 cons. KLRA202000186 3

105). After a series of steps, two entities submitted proposals, which were evaluated. The Partnership Committee recommended proposal submitter Luma Energy for the Partnership Contract for the Puerto Rico Transmission and Distribution System Operation and Maintenance Project. (Appendix pp. 157).

On May 18, 2020, the Public-Private Partnerships Authority submitted the Preliminary Contract and the Partnership Committee Report to the Puerto Rico Energy Bureau, for the issuance of the Energy Compliance Certificate, as required by Law 120-2018. Along with the above request, they requested that the documents remain confidential. On June 15, 2020, the Energy Bureau held a hearing. On that day, UTIER petitioned to intervene, in accordance with the adjudicative procedure of the Uniform Administrative Procedure Act, Law No. 38-2017. UTIER also requested access to the documents. On June 17, 2020, the Authority opposed UTIER's intervention, because Law No. 38-2017 was excluded from the procedures under Law No. 29-2009 and Law No. 120-2018. In addition, it submitted additional documents and amendments to the Preliminary Contract, the confidentiality of which was granted.

In this state of affairs, on June 17, 2020, the Energy Bureau granted the Energy Compliance Certificate to the management and operation contract granted to a set of companies identified as LUMA Energy. On June 18, the Bureau denied UTIER's petition for intervention because the Certificate application was an ex parte procedure and not adjudicative nor subject to the provisions of Law No. 38-2017.

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc: Exhibit B - Certified Translation JF-2020-130[1] Page 4 of 14

Certified Translation JF-2020-130 Page 4 of 14
KLRA202000170 cons. KLRA202000186                                                     4

On July 2, 2020, UTIER filed the above-captioned appeal for administrative review, assigned to KLRA202000170, together with a Motion in Aid of Jurisdiction, which we denied in a Resolution dated July 3, 2020. In the appeal, it stated that the Energy Bureau erred by:

> DENYING UTIER'S INTERVENTION IN THE ADMINISTRATIVE PROCEEDING, INTERPRETING THAT BECAUSE IT IS AN EX PARTE PROCEEDING THERE IS NO RIGHT TO INTERVENE.
>
> ISSUING A DETERMINATION ON THE ENERGY COMPLIANCE CERTIFICATE THAT WAS DEFECTIVE DUE TO PARTIALITY AND CONFLICT OF INTEREST ARISING FROM THE PARTICIPATION OF COMMISSIONER PRESIDENT EDISON AVILÉS DELIZ, WHO WAS PART OF THE PARTNERSHIP COMMITTEE THAT PREVIOUSLY SELECTED, NEGOTIATED AND PROPOSED THE GRANTING OF THE ENERGY COMPLIANCE CERTIFICATE.
>
> GRANTING THE ENERGY COMPLIANCE CERTIFICATE WITHOUT HAVING CONSIDERED THE FULL REGULATORY FRAMEWORK, SPECIFICALLY THE EFFECT OF THE PROPOSED TRANSACTION ON PREPA'S CONSUMERS AND EMPLOYEES.
>
> GRANTING THE ENERGY COMPLIANCE CERTIFICATE WITHOUT ALLOWING UTIER'S PARTICIPATION, THUS VIOLATING PROCEDURAL DUE PROCESS.
>
> DETERMINING THAT UTIER'S PETITION FOR ACCESS TO INFORMATION WAS MOOT SINCE ITS INTERVENTION IN THE ADMINISTRATIVE PROCEEDING WAS DENIED.
>
> DENYING PUBLIC ACCESS, IN A MANNER BROADER THAN NECESSARY, TO THE ADMINISTRATIVE PETITION OF THE PUBLIC-PRIVATE PARTNERSHIPS AUTHORITY AND THE ATTACHED DOCUMENTS WITHOUT CONSIDERING THE CONSTITUTIONAL PRINCIPLES OF ACCESS TO INFORMATION.

On July 23, 2020, the Public-Private Partnerships Authority opposed UTIER's petition. On July 31, UTIER requested an oral hearing or permission to reply, which the Partnerships Authority opposed, on August 10.

Meanwhile, on July 7, 2020, the organizations Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc.,-Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club and its Puerto Rico chapter, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Antiincineración, Inc., Amigos del Río Guaynabo, Inc., Campamento

Contra las Cenizas en Peñuelas, Inc., and Amaneceres 2025, involved in energy issues in Puerto Rico (hereinafter, the "organizations"), filed with the Energy Bureau an Urgent Motion for Reconsideration and/or Request to Challenge the Energy Certificate Authorization, pursuant to section 5.4 of the Uniform Administrative Procedure Act (LPAU). In addition, on July 10, they petitioned for intervention.

Moreover, on July 14, 2020, the organizations filed the appeal for administrative review assigned to KRA202000186, alleging the following errors:

> ONE: AUTHORIZING THE ENERGY CERTIFICATE WITHOUT ANY GROUNDS, REASONS OR SUPPORT WHATSOEVER IN VIEW OF THE ENERGY FRAMEWORK AND ITS REGULATIONS AND THE SCALE OF THE CONTRACT.
>
> TWO: AUTHORIZING THE ENERGY CERTIFICATE WITHOUT DETERMINING THE ECONOMIC ASPECTS OF THE CONTRACT, INCLUDING THOSE RELATING TO ELECTRIC POWER RATES.
>
> THREE: ISSUING THE CERTIFICATE WITHOUT CONSIDERING THE ENVIRONMENTAL IMPACT OF ITS DECISION, AS REQUIRED BY THE CONSTITUTION, CURRENT ENERGY LAW, THE CLIMATE CHANGE ACT, AND THE PUERTO RICO ENVIRONMENTAL PUBLIC POLICY ACT.
>
> FOUR: APPROVING THE ENERGY CERTIFICATE, SINCE IT IMPROPERLY PARTICIPATED IN THE PROCESS OF EVALUATION, CONTRACTOR SELECTION AND PARTNERSHIP CONTRACT NEGOTIATION OF LUMA ENERGY, INC. AND LUMA ENERGY SERVICIO, LLC.
>
> FIVE: APPROVING THE CONTRACT, SINCE IT CONTAINS VARIOUS PROVISIONS CONTRARY TO THE CURRENT ENERGY FRAMEWORK, AND/OR WITHOUT PREVIOUSLY SPECIFICALLY CONSIDERING AND EVALUATING SUCH PROVISIONS.

On August 6, the organizations filed an Urgent Motion under Rule 61 (A)(1)(2) to stay the effects of the administrative decision. The next day, the Public-Private Partnerships Authority opposed and moved for the dismissal of the appeal. In a Resolution dated August 13, 2020, a sister panel of this court that heard the matter denied the stay, leaving

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc: Exhibit B - Certified Translation JF-2020-130[1] Page 6 of 14

Certified Translation JF-2020-130 Page 6 of 14
KLRA202000170 cons. KLRA202000186                                   6

adjudication of the motion to dismiss pending.

On September 11, 2020, the Authority filed its argument in opposition, and on September 22 the appellant organizations requested permission to reply.

With the dispute having been brought before the court, we proceed to make a determination on, as a matter of priority, the jurisdictional aspect, with respect to the right of the appellants to challenge the Resolutions issued by the Energy Committee. This is because questions relating to the jurisdiction of a court have priority and therefore must be addressed and resolved before any others. Peerles Oil & Chemical v. Hnos. Torres, 186 DPR 239 (2012).

## **DISCUSSION AND ANALYSIS**

One of the justiciability requirements for the exercise of the judicial function is for any litigants to have standing. P.I.P. v. E.L.A. et al., 186 DPR 1, 11 (2012); Lozada Sánchez v. A.E.E., 184 DPR 898, 916 (2012). The capacity of a party to effectively carry out procedural acts as a litigating party and appear as a plaintiff or in representation thereof is known as standing. Col. Ópticos de P.R. v. Vani Visual Center, 124 DPR 559 (1989). In this regard, the Supreme Court of Puerto Rico has stated that: For there to be standing, there must be capacity to sue, but not every party with capacity to sue has standing in a given lawsuit. In each lawsuit, in addition to capacity to sue, the interested party must demonstrate that they have a legitimate interest. Col. Ópticos de P.R. v. Vani Visual Center, *supra,* p. 563, citing Serrano Geyls, Derecho

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc:
Exhibit B - Certified Translation JF-2020-130[1] Page 7 of 14

Certified Translation JF-2020-130 Page 7 of 14
KLRA202000170 cons. KLRA202000186                                7

Constitucional de Estados Unidos y Puerto Rico, Vol. I, p. 132.

For a "litigant to file an appeal for judicial review, the litigant must satisfy two requirements: (1) **Be a party** and (2) be adversely affected by the administrative decision. In addition, the litigant must exhaust the administrative remedies and appeal within the allotted time." <u>Lozada Sánchez v. A.E.E.</u>, *supra,* p. 918, citing <u>Fund. Surfrider y otros v. A.R.Pe.</u>, 178 DPR 563, 575-576 (2010), on interpreting § 4.2 of the Uniform Administrative Procedure Act, 3 LPRA § 2172.

In addition. Law No. 120-2018, the "Puerto Rico Electrical System Transformation Act," created the legal framework and mechanism for the sale or transfer of PREPA assets related to generation and for establishment of Public-Private Partnerships with respect to any PREPA function, service or facility. It also empowers the Public-Private Partnerships Authority to initiate informal negotiation processes, market studies, requests for information, requests for expressions of interest and any procedure to collect information from market participants. See Statement of Legislative Intent, Law No. 2018-120.

The Statement of Legislative Intent of the law states, in relevant part, that:

> This energy transformation process will be carried out through the creation of Public-Private Partnerships, following the procedures established in this Act. The foregoing is in order to leverage the existing legal framework, structure and processes for the creation of Public-Private Partnerships, since it provides the transparency and flexibility necessary for a negotiation resulting in a financially viable energy system focused on consumers' best interests. The framework of Law 29-2009, as amended, known as the "Public-Private Partnerships Act," is used in

order to harness its rigorous transparency and flexibility processes to frame negotiations resulting in a financially viable electricity system focused on consumers' best interests. [...]. In this Act, the Authority is expressly authorized to sell its assets related to generation and transfer or delegate any of its operations, functions or services, and the Electric Power Authority is authorized, together with the Public-Private Partnerships Authority, to carry out the processes by which these transactions will be consummated. Also established is the process that will apply to any transaction whereby a Public-Private Partnership is established with respect to any function, service or facility of the public corporation. Contracts that arise under this Act will be performed in a manner in line with the legal and administrative framework that today governs Public-Private Partnerships. [...]. However, the provisions of Law 57-2014, known as the "Energy Transformation and Relief Act," which are consistent with the transformation of our electrical system, are maintained. [...]. This law also recognizes the system of checks and balances of our constitutional system, and it provides for the active participation of the Legislative Assembly, both for a concession and for the sale of any asset related to PREPA generation. In the case of the sale of an asset related to PREPA generation, both the Legislative Assembly and the Governor will ratify the final result of any agreement that may be approved.

Section 2(d) of Law No. 120-2018 defines the Energy Compliance Certificate as "the Certificate issued by the Committee in every PREPA Transaction whereby it is certified that the Preliminary Contract complies with the regulatory framework, the "Puerto Rico Public Energy Policy Act," and other statutes currently in force." 22 LPRA § 1112.

Regarding the authorization of transactions with PREPA, Section 5 (g) provides the following related to the Compliance Certificate:

(g) All contracts related to a PREPA Transaction will require an Energy Compliance Certificate, as defined in this Act. The Partnership Committee will submit, to the Bureau, the Report prepared

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc:
Exhibit B - Certified Translation JF-2020-130[1] Page 9 of 14

Certified Translation JF-2020-130                                    Page 9 of 14
KLRA202000170 cons. KLRA202000186                                              9

> in accordance with Article 9(g) of Law 29-2009, prior to submitting it to the boards of directors of the Authority and PREPA. The Bureau will evaluate the Report, the information presented and the Preliminary Contract and, if it complies with public policy on energy and the regulatory framework, it will issue an Energy Compliance Certificate. The Energy Compliance Certificate or the resolution denying its issuance will contain the grounds justifying its determination. The Bureau will have thirty (30) days from the date of submission of the Preliminary Contract to issue a Compliance Certificate, or a resolution denying its issuance. When more than one Preliminary Contract is submitted for consideration by the Bureau, the periods of thirty (30) days will elapse consecutively according to the order in which the contracts were submitted. If a Compliance Certificate or resolution denying it is not issued within the aforesaid period, the PREPA Transaction will be considered approved by the Bureau and it will be understood that the PREPA Transaction has received an Energy Compliance Certificate. Once the Energy Compliance Certificate has been issued, any amendment to the Preliminary Contract will require the issuance of a new Energy Compliance Certificate. The mere issuance of an Energy Compliance Certificate does not grant the right to claim compensation, reimbursement, or any payment for contingent interests arising in any of the stages, nor for expenses incurred during the process of qualification or submission of proposals.

22 LPRA § 1115 (g).

Section 5 (g) adds that "requests for review of Energy Compliance Certificates issued by the Bureau must be filed with the Court of Appeals within fifteen (15) days counted from their notification." *Id.*

For the review procedure, the Regulation for bidding, evaluation, selection, negotiation and award of partnership contracts and sales contracts for the transformation of the electrical system, Regulation 9078 of April 1, 2019, reiterates in section 8.2 that, "Any request for review related to the Energy Compliance Certificate issued by the Energy Bureau must be filed by the **Authority** with the Court of Appeals within fifteen (15) days after notification."

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc:
Exhibit B - Certified Translation JF-2020-130[1] Page 10 of 14

Certified Translation JF-2020-130 Page 10 of 14
KLRA202000170 cons. KLRA202000186                                10

Regarding the PREPA transformation process, section 4 of Law 120-2018 establishes that:

> **All provisions of Law 29-2009** (including, without limitation, Article 11 of Law 29-2009), will apply to PREPA Transactions, except to the extent otherwise indicated in this Act. If any provision of this Act proves to be inconsistent with any other provision of Law 29-2009, Law 83, Law 57-2014, as amended, [...], Law 4-2016, as amended, or any other applicable law or regulation, the provisions of this Act will prevail. [...] (emphasis ours).

22 LPRA § 1114.

As we can see, various sections of Law No. 120-2018, as well as its statement of legislative intent, clearly refer the proceedings to the provisions of Law No. 29-2009 on Public-Private Partnerships. On this point, Article 19 (c) of Law 29-2009 clearly establishes the inapplicability of the Uniform Administrative Procedure Act (LPAU) to its proceedings, as follows:

> All procedures and actions authorized by this Act are exempted from all provisions of Law 38-2017, "Uniform Administrative Procedure Act of the Government of Puerto Rico," including but not limited to procedures and actions on approval of regulations, determination of projects for establishment of Partnerships, selection of proposals and awards of Partnership Contracts.

27 LPRA § 2618.

Furthermore, Article 5 (g) of Law 120-2018, *supra*, regarding the Energy Compliance Certificate, refers us to Article 9(g) of Law 29-2009. This article establishes the procedure for Partnership Contract Approval and Report Preparation, a process that culminates with the approval of the Governor or delegated official. Thus, the Authority will notify the remaining bidders in writing that their proposals have not been selected, and they may request judicial review of such determination,

subject to the conditions and procedures provided for in Article 20 of the Act.

In accordance with the aforementioned regulations, the purpose of the procedure to obtain the Energy Compliance Certificate under Law 120-2018 is to certify that the preliminary contract complies with public policy on energy and the regulatory framework. The purpose of the procedure with the Energy Committee is not to grant a license or adjudicate any dispute whereby "an agency determines the rights, obligations or privileges of a party." Section 1.3 of the LPAU, 3 LPRA § 9603.

The procedure with the Energy Bureau solely involves the Authority, which is the requesting party and only requests the issuance of a certificate, after evaluation of the preliminary contract in view of public policy. In other words, the issuance of the Energy Certificate is a legally required prerequisite for the Board of Directors of the Authority and PREPA to subsequently evaluate the transaction, which, if accepted, goes to the Chief Executive for approval. The process of certifying compliance is solely a pre-contract step carried out at the Authority's request, the sole purpose of which is to determine whether the Preliminary Contract complies with public policy. Furthermore, issuance of the Energy Compliance Certificate does not grant the right to claim any compensation, reimbursement or payment for any contingent interests arising in any of the stages during the process of qualification or submission of proposals. See article 5(g) of Law 120-2018. Furthermore, the Compliance Certificate review process is available only to the Authority, which is the entity designated by law to initiate the public-private partnership

Case:17-03283-LTS Doc#:14512-2 Filed:10/07/20 Entered:10/07/20 14:23:31 Desc:
Exhibit B - Certified Translation JF-2020-130[1] Page 12 of 14

Certified Translation JF-2020-130 Page 12 of 14
KLRA202000170 cons. KLRA202000186                                    12

process with the Energy Bureau, as established in section 8.2 of Regulation 9078, *supra.*

Even at more advanced stages, after the governor approves the Partnership Contract, the bidders who were not selected are the ones who may request judicial review of the determination. See articles 9(g) and 20 of Law No. 29-2009.

Thus, Laws 120-2018 and 29-2009, which govern the Compliance Certificate process challenged here, provide no authorization allowing the intervention proposed by the organizations and UTIER, as provided by the LPAU for the proceedings governed thereby. Moreover, Article 19 of Law No. 29-2009 clearly establishes that the provisions of the LPAU are not applicable to its procedures. These laws on public-private partnerships and Law 120-2018 have their own judicial review process.

In view of the above, the appellants have neither standing nor any legal right to intervene in the proceeding or to appeal to this appellate court to challenge the resolutions of the Energy Committee. We reiterate that the procedure with the Energy Committee is not one of an adjudicative nature, to which the LPAU can be applied, but rather it is a procedure whose purpose is to implement the public policy of meeting Puerto Rico's energy needs through public-private partnerships. Under these circumstances, we are prevented from assuming jurisdiction where such jurisdiction does not belong to us, and therefore the appeal must be dismissed. S.L.G. Szendrey-Ramos v. F. Castillo, 169 DPR 873, 882 (2007); Peerles Oil & Chemical v. Hnos. Torres, *supra.* In summary, the jurisdiction of our court is not enabled because the appellants are not parties with the

right to intervene in the Energy Compliance Certificate issuance process challenged here.

## **RULING**

On the grounds laid out above, we dismiss the above-captioned appeals in accordance with Rule 83(B)(1) of the Rules of the Court of Appeals, 4 LPRA Ap. XXII-B.

So resolved and ordered by the Court and certified by the Clerk of the Court of Appeals.

[Signature]
Lilia M. Oquendo Solís
Clerk of the Court of Appeals

## CERTIFICATE OF TRANSLATOR # JF-2020-130

I am a United States court-certified interpreter, and I CERTIFY that the above is a faithful translation of the Spanish source, which I have performed to the best of my ability. It consists of fourteen (14) pages, including this certification sheet, and contains no changes or erasures.

The content of this translation is a Judgment in the Commonwealth of Puerto Rico Appellate Case No. KLRA202000170 consolidated with KLRA202000186.

In Cambridge, Massachusetts, on October 6, 2020.

*[signature]*

**Joaquín Font**
**Font Translations**
**Calle Calaf 400, Suite 268, San Juan, PR 00918**
**Toll-Free Tel. & Fax: 1-877-JOAQUIN (562-7846)**
e-mail: fonttranslations@gmail.com