# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

### GOVERNMENT PARTIES' SUPPLEMENTAL RESPONSE TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUPPLEMENTAL BRIEF REGARDING STATUS REPORT OF GOVERNMENT PARTIES

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Government Parties[2] respond as follows to the *Official Committee of Unsecured Creditors' Supplemental Brief Regarding Status Report of Government Parties* [ECF No. 2230][3] ("Supp. Brief"):

1. The Government Parties entered into the RSA after determining that PREPA and Puerto Rico's interests were better served by settling the liens and claims of PREPA's over $8 billion in bonds, rather than litigating them. The RSA settlement includes as part of PREPA's restructuring, reducing the bond debt, eliminating any rate-hike covenant and receivership remedy against PREPA and limiting bondholder recourse to a securitization stream. There is no assurance that litigation will be successful in achieving these benefits. To be sure, the Government Parties are concerned about and are reviewing the currently proposed RSA settlement in light of COVID and this analysis may result in their seeking to amend the RSA. But, it is far better for PREPA to negotiate within the existing settlement framework, than to call it off prematurely and resort to litigation. If PREPA is unable to renegotiate a deal that works, litigation is always available. The UCC's insistence on engaging in the litigation now, before the Government Parties have determined whether and how much the proposed settlement must be adjusted, simply discards all prudence.

2. Nothing in the UCC's supplemental brief provides a reasoned basis to disturb the 9019 Motion *status quo*. While the UCC brief fails to acknowledge the ongoing COVID-19 pandemic, the Government Parties must balance the desire for progress in the Title III case with

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Joint Objection of PREPA and AAFAF to Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [ECF No. 2165] (the "Objection"), which is incorporated herein by reference.

[3] Unless otherwise specified, "ECF" refers to electronic case filings in Case No. 17-04780 (D.P.R.).

the needs of Puerto Rico's residents.[4] Far from being "expedient" or promoting progress, the UCC's proposed course of action would throw the case into a litigation morass, drain and divert the resources of the Government Parties at a critical time, and interfere with the Government Parties' reasoned discretion to preserve the settlement progress and attendant stay of litigation with the majority of PREPA's creditors. For the reasons stated in the Government Parties' Objection and for the reasons stated below, the UCC's Motion to Terminate[5] should be denied.

3. *First,* the Government Parties' ongoing evaluation of the RSA does not deprive this Court of subject matter jurisdiction over the 9019 Motion. The UCC has not asserted, nor could it, that the RSA has been terminated. The UCC questions the viability of the RSA and 9019 Motion by selectively quoting press articles purporting to reflect the state of minds of select individuals, but the Government Parties do not act by individual mandate or statements to the press. For example, the Oversight Board, as a collective body, reaches decisions through resolutions, not through individual opinions, and no one disputes the Oversight Board has not acted to terminate the RSA. Moreover, the UCC ignores that the very article it quotes indicates AAFAF Executive Director Omar Marrero confirmed the RSA remains "paused" as work to gauge the macroeconomic impacts of the COVID-19 pandemic continues. Supp. Brief, Ex. A at 2. These statements are consistent with the Joint Status Report's representations.. *See, e.g., Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion* [ECF 2220] ("Joint Status Report"), ¶ 20. The UCC's argument (at ¶ 3) that subject matter jurisdiction does not exist because the 9019 Motion lacks "sufficient immediacy and ripeness" is unsupportable.

---

[4] *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 25, 30 (D.P.R. 2020) ("[U]nlike the commercial focus of bankruptcy cases of private entities, the 'primary purpose' of governmental insolvency proceedings 'is not future profit, but rather continued provision of public services.'") (citing *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 34 (Bankr. D. Colo. 1999)).

[5] *Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [ECF No. 2144].

The RSA and 9019 Motion remain in effect—they are neither speculative nor contingent. That they may be amended is unremarkable and consistent with virtually every chapter 11 plan proposed in every major reorganization. PROMESA section 313 explicitly contemplates plan amendment. The possibility of a future amendment does not divest a court of subject matter jurisdiction. Plan proponents' prudence in this regard does not equate with an absence of a live case or controversy, and the UCC cites no authority that would compel this Court to decide the 9019 Motion imminently. Indeed, as recognized by both the UCC and this Court, the pace of the 9019 Motion lies within this Court's discretion. ECF 2189 at 2.

4. *Second*, as explained in the Objection, there is no legal basis for the Court to exercise its "discretion" to terminate a FRBP Rule 9019 motion.[6] Rather, the sole question before the Court is whether to exercise its discretion to continue to *adjourn* the 9019 Motion to preserve the opportunity for the Government Parties to evaluate the RSA in light of the COVID-19 pandemic. The answer to that question is yes. The UCC suffers no prejudice from continued adjournment.[7] While the UCC continues to argue (at ¶ 6) that adjournment "prejudice[s]" "the Committee's statutory rights under section 502 of the Bankruptcy Code," this argument lacks merit. Because the RSA and 9019 Motion persist, the UCC's section 502 "right" is not compromised because, as the Court has already recognized, the UCC cannot object to a claim that

---

[6] At most, the Court may exercise its discretion to make FRCP Rule 12 applicable in contested matters, FRBP 9014(c), but the UCC never requested Rule 12 relief, nor moved for dismissal pursuant to Rule 12. Charitably construing its Motion to Terminate as a motion to dismiss, the only cognizable grounds for dismissal the UCC asserts is for lack of subject matter jurisdiction, which fails for the reasons stated above.

[7] While the UCC asserts "the Government Parties have sought adjournment of their Rule 9019 Motion fourteen times," this is misleading as the Government Parties and the objecting parties *jointly* sought a total of eight extensions of the hearing date and related deadlines in connection with the 9019 Motion primarily to accommodate the objecting parties' discovery demands (including those of the UCC), *see* ECF Nos. 1250, 1366, 1513, 1573, 1636, 1671, 1683, 1713, and 1824, and other motions sought interim extensions to permit the parties time to negotiate hearing adjournments, *see, e.g.*, ECF Nos. 1885, 1897.

3

is subject to a pending settlement.[8] If the 9019 Motion ultimately does not go forward, the UCC can seek to prosecute its objection at that time. The Oversight Board submits the UCC lacks standing and power to control its objection in any event.[9]

5. *Third*, while the UCC suffers no prejudice from continued adjournment, the Government Parties will suffer significant prejudice if the settlement framework were lost (Joint Status Report at ¶ 24). Contrary to the UCC's unfounded argument (at ¶ 5) that the Government Parties would have to negotiate with new bondholders whether the RSA is renegotiated or terminated, the RSA is clear that the RSA can be amended with the support of two-thirds in amount of the members of the Ad Hoc Group of PREPA Bondholders, plus Assured.[10] Conversely, if the RSA is terminated, the Government Parties would have to negotiate with new and possibly fragmented bondholders to try to stitch together a meaningful threshold of support. Thus, should the terms of the settlement require modification, it would be far more prudent to attempt renegotiation through the existing RSA than to prematurely terminate it and hope something resembling it can be pieced back together at a future date.

6. Given the unprecedented circumstances arising from the ongoing pandemic and the Court's continuing subject matter jurisdiction over the settlement that is the subject of the 9019 Motion, it is appropriate for this Court to deny the Motion to Terminate and grant the Government Parties the requested additional time to evaluate the RSA to help facilitate the continued

---

[8] *Order Denying Urgent Motion of Official Committee of Unsecured Creditors to Lift Stay to Allow Committee to Pursue Objection to GO Priority* [ECF No. 14331; Case No. 17-3283].

[9] *See* discussion at Objection n.17.

[10] *See* Conformed Definitive Restructuring Support Agreement Incorporating Amendments Through September 9, 2019 (available at https://drive.google.com/file/d/1STXXAeklqmG_rJN5zqWCwJMoN8-1cOpO/view), at § 13(a) (permitting amendment with the consent of "Super Majority Holders" who are defined as the Super Majority Uninsured Holders (*i.e.*, "as of the date of determination, Ad Hoc Group Members that beneficially own or control at least two-thirds in principal amount of the aggregate amount of the Uninsured Bonds beneficially owned or controlled by all the Ad Hoc Group Members as of such date") and Assured).

4

consensual posture of these cases and avoid the expense and diversion that would arise from renewed litigation if the Motion to Terminate were granted.

[*Remainder of page left intentionally blank*]

WHEREFORE the Government Parties respectfully request that the Court deny the Motion to Terminate and set a December 9, 2020 deadline for submission of a further status report as requested in the Joint Status Report, and grant PREPA such other and further relief as is just.

Dated: October 9, 2020
San Juan, Puerto Rico

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi (*pro hac vice*)
Nancy A. Mitchell (*pro hac vice*)
Maria J. DiConza (*pro hac vice*)
7 Times Square
New York, New York 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

-and-

Peter Friedman (*pro hac vice*)
1625 Eye Street, NW
Washington, D.C. 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

-and-

Elizabeth L. McKeen (*pro hac vice*)
Ashley M. Pavel (*pro hac vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority and Puerto Rico Electric Power Authority*

Respectfully submitted,

**PROSKAUER ROSE LLP**

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S. Desatnik (*pro hac vice*)
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

-and-

Paul V. Possinger (*pro hac vice*)
70 West Madison
Suite 3800
Chicago, IL 60602-4342
Tel: (312) 962-3550
Fax: (312) 962-3551

*Attorneys for the Financial Oversight and Management Board as representative for the Puerto Rico Electric Power Authority*

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorney for the Financial Oversight and Management Board as representative of the Debtor*

6

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis Marini*
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

*/s/ Katiuska Bolaños*
Katiuska Bolaños
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.: (787) 395-7133
Fax: (787) 497-9664

*Counsel for Puerto Rico Electric Power Authority*