DPR MODIFIED PROMESA B1040 (FORM 1040) (05/17)

| PROMESA COVER SHEET (Instructions on Reverse) | CASE NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** (DEBTOR, if Title III Petition; ISSUER, if Title VI Application)<br>Finca Matilde, Inc. | **DEFENDANTS**<br>The Financial Oversigned and Management Board; the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Fullana Fraticelli & Assocs. PSC - (787) 250-7242<br>268 Ave. Ponce de Leon Ste. 1002<br>San Juan PR 00918 | **ATTORNEYS** (If Known)<br>Proskauer Rose - 11 Times Square, New York, NY 10036; (212) 969-4150 --- Department of Justice of PR - P.O. Box 9020192, San Juan, PR 00910 --- Marini Pietrantoni Muniz - 250 Ave Ponce de Leon Ste 900 (787) 705-2171. |
| **PARTY** (Check One Box Only)<br>☐ Debtor<br>☑ Creditor<br>☐ Trustee<br>☐ U.S. Trustee/Bankruptcy Admin<br>☐ Other | **PARTY** (Check One Box Only)<br>☑ Debtor<br>☐ Creditor<br>☐ Trustee<br>☐ U.S. Trustee/Bankruptcy Admin<br>☑ Other |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
The complaint equets that the Court enters a declaratory judment declaring that Plaintiff's takings claim are not subject to discharge (11 USC 944) pursuant to the Fifth Amendment of the Constitution; that for the plan or any plan to be confirmed, Plaintiffs claim cannot be impaired and must be paid in full (48 USC 2174). The Plaintiff further seeks that an award of $11,184,576.00 plus interests be awarded for its constitutional claim pursuant to 42 USC 1983.

## NATURE OF SUIT

☐ PROMESA Title III Petition ☐ PROMESA Title VI Application for Approval of Modifications
☐ Other Federal Question ☑ Adversary Proceeding ☑ Demand $ 11,184,576.00

*If Adversary Proceeding is checked, number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc., below:*

| | |
|---|---|
| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property – other | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief - imposition of stay<br>☐ 72-Injunctive relief - other<br><br>**FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(2) - Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | **FRBP 7001(9) Declaratory Judgment**<br>☑ 91-Declaratory judgment<br><br>**FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **Other**<br>☑ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |

## TITLE III CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR<br>Commonwealth of Puerto Rico | CASE NO.<br>17-bk-03283 | |
|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>Puerto Rico | DIVISION OFFICE | NAME OF JUDGE<br>Laura Taylor Swain |

DPR MODIFIED PROMESA B1040 (FORM 1040) (05/17)

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) /s/Isabel M. Fullana-Fraticelli | | |
| DATE<br>October 9, 2020 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Isabel M. Fullana-Fraticelli | |

THIS FORM IS TO BE USED EXCLUSIVELY FOR FILINGS RELATING TO THE PUERTO RICO OVERSIGHT MANAGEMENT AND ECONOMIC STABILITY ACT (PROMESA). FOR ADMINISTRATION PURPOSES **ONLY**, THE PUBLIC DOCKETS FOR PROMESA PROCEEDINGS UNDER TITLE III AND ADVERSARY PROCEEDINGS WILL BE MAINTAINED ON THE CASE MANAGEMENT/ELECTRONIC CASE FILING (CM/ECF) SYSTEM OF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO. THESE CASES ARE UNDER THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO.

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of:<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>*Debtor* | PROMESA<br>Title III<br><br>Case No. 17-bk-3283 (LTS)<br><br>(Jointly Administered)[1] |
| FINCA MATILDE, INC.<br><br>*Plaintiff*<br><br>v.<br><br>THE COMMONWEALTH OF PUERTO RICO, THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY, AND THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>*Defendants* | Adversary No. _____<br><br>Re:<br><br>DECLARATORY JUDGMENT |

**COMPLAINT**

TO THE HONORABLE UNITED STATED DISTRICT COURT:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 35(787)66-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

1

COMES NOW Finca Matilde, Inc., the Plaintiff, who, through the undersigned legal counsel very respectfully states, prays and requests as follows:

### -I-
### NATURE OF THE LAWSUIT

1. The instant complaint is being filed to seek declaratory judgment of the non dischargeability of Plaintiff's takings claim, its classification, and treatment in the filed Disclosure Statement and Plan along with other related remedies.

### -II-
### JURISDICTION AND VENUE

2. This Honorable Court has jurisdiction to entertain the instant lawsuit pursuant to 28 of the U.S.C. § 2201(a) which states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." This relief is designed to enable litigants to clarify legal rights and obligations before acting upon them, "whether or not further relief is or could be sought." In re: City of Cent. Falls, R.I., 468 B.R. 36, 44 (Bankr. R.I. 2012).

3. This Court also has jurisdiction pursuant to 48 U.S.C. § 2166(a)(2). This is a matter arising in Debtor's Title III PROMESA case and specifically behooves the Board's and the Debtor's dealings in the Title III Claim Adjustment Process.

4. Venue is proper pursuant to 48 U.S.C. § 2167(a).

### -III-
### THE PARTIES

5. The Plaintiff is **FINCA MATILDE, INC.**, (the "Plaintiff" or "Finca Matilde") a for profit corporation organized under the laws of the Commonwealth of Puerto Rico. The Plaintiff is also the holder of Claim No. 250 in the Clerk's Claim Register, filed on

2

December 15, 2017, (Claim No. 369 in Prime Clerk) for a principal amount of $11,184,576.00 in the above captioned Tittle III Case No. 17-bk-3283 (LTS).

6. The **COMMONWEALTH OF PUERTO RICO** is a territory of the United States of America and a defendant in this case. This defendant is the Debtor of the above captioned Title III case (the "Debtor").

7. The **PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY** ("AAFAF" for its Spanish acronym) is an independent public corporation and governmental instrumentality with separate legal existence created pursuant to Section 4 of Puerto Rico Act No. 272 of January 18, 2017. 3 LPRA § 9364. AAFAF is the Debtor's local entity charged with "oversee[*ing*] all matters related to the restructuring, renegotiation or adjustment of any existing or future obligation, and the liability management transactions for any existing or future obligation of the Government of Puerto Rico. 3 LPRA § 9365(a). Its enabling statute grants AAFAF legal capacity to sue and be sued under its own name to achieve its statutory purposes. 3 LPRA § 9365(d)(v). AFFAFA is joined to this case in this supervising capacity.

8. The **FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO** (the "Board") is a legal entity created by Section 101 of PROMESA, 48 U.S.C. § 2121, and is the representative of the Debtor in the captioned Tittle III case.

-IV-
**FACTS APPLICABLE TO ALL CAUSES OF ACTION**

A. **Plaintiff's pre-petition claim**

9. The Plaintiff is the owner of several acres of land in the municipality of Ponce, in the south region of Puerto Rico.

3

10. Back in 2008, the Debtor, through its General Assembly and with Governor's signature, approved Puerto Rico Act No. 227 of August 9, 2008 ("Act 227-2008"). In this act, it included Plaintiff's real property as part of a natural reserve and, thus, deprived Plaintiff's real property of all productive use.

11. On October 25, 2010, in response to Act 227-2008, the Plaintiff filed a lawsuit in the Court of First Instance of Puerto Rico in Ponce against the Debtor, Civil Case No. JAC2010-0574. In this case, the Plaintiff alleged that Act 227-2008 constituted a legislative taking by the government of Plaintiff's private property and that the Debtor had to compensate Plaintiff for such taking.

12. On November 27, 2013, the Honorable Lissette Toro-Vélez, the presiding judge in this state court case, entered judgment in favor of Plaintiff. The court determined that Act 27-2008 constituted a legislative taking by the government and that Debtor had to compensate Plaintiff for such taking an amount of $11,184,576.00 (the "State Court Judgment"), plus the legal interest applicable for takings claims.

13. The Debtor appealed this decision to the Puerto Rico Court of Appeals. The state's appellate forum confirmed this State Court Judgment on November 18, 2016. The Debtor, then, sought review from the Supreme Court of Puerto Rico, but on October 8, 2015, the Supreme Court declined to issue a writ of certiorari. Therefore, the State Court Judgment is a final and firm judicial decree.

14. The State Court award has not been paid by the Debtor; even though the Plaintiff has attempted to collect the judgment through various mechanisms.

15. On May 3, 2017, the Board filed a petition in favor of the Debtor under Title III of PROMESA, 48 U.S.C. §§ 2161-2177.

4

16. Upon the commencement of such Tittle III proceeding, an order for relief was entered which triggered an automatic stay barring Plaintiff from continuing its collection efforts in state court.

17. On December 15, 2017, Plaintiff filed a proof of claim to assert its eminent domain claim against the Debtor in the Tittle III Case; this is Claim No. 249-1in the Clerk's Claim Register (Claim No. 369 in Prime Clerk).

18. On January 21, 2019, since payment of Plaintiff's award had not been included in the Debtor's fiscal plan, the Plaintiff's legal counsel met with a local counsel of the Board, Mr. Hermann D. Bauer, ESQ., to inquire as to how the Board plans to treat takings claims such as Plaintiff's, as well as their non-dischargeable status.

19. At that point, the Board's counsel informed Plaintiff that they did not know what treatment, if any, would be given to the eminent domain judgments and subsequent claims against the Debtor.

20. The Plaintiff has made multiple attempts to contact the Board's representatives and resolve the matters contained in this complaint with limited Court intervention. These attempts include: (1) a written memorandum the Board's Chairman on September 17, 2017; (2) an email dated October 15, 2018, (3) an email dated October 30, 2018, (4) another email dated November 13, 2018, and (5) and still another email dated January 2, 2019. To this date, the Board has not addressed nor answered Plaintiff's off court attempts to resolve the controversy.

**B. The Disclosure Statement and Joint Plan**

21. On February 28, 2020, the Board filed the *Amended Tittle III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (the "Plan") and the *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of Debt of the*

5

*Commonwealth of Puerto Rico* (the "Disclosure Statement") [Dockets No. 11946 and 11947 of main case, respectively].

22. The Disclosure Statement does not disclose the existing eminent domain claims and/or judgments against the Debtor and, specifically, does not contain any reference to Plaintiff's $11 million claim.

23. The proposed Plan contains 52 classes of creditors. The Plan's classification of claims, in general terms, only makes distinctions between the different types of bonds, their secured status, and their date of issuance. Yet, there is no separate class for eminent domain claims such as Plaintiff's.

24. Among the Plan's 52 classes, the Plan further has a residual class for claims against Debtor: Class 41.

25. Class 41 of the Plan, and as stated in the Disclosure Statement, is titled CW General Unsecured Claims and it "consists of all claims against the Commonwealth, except (a) any Claim treated in any other Class under the Plan, (b) an Inter-Instrumentality Claim, (c) any Claim subject to the provisions of the ACR Order, or (d) **any Claim determined by the Title III Court not to be a CW General Unsecured Claim**." [Docket No. 11947, p. 331] [Emphasis was added].

26. The Disclosure Statement and proposed Plan does not provide for a separate classification of eminent domain judgments and awards. Thus, Finca Matilde, as an unclassified claim holder, improperly falls within this residual Class 41 as defined by the Board and Plan.

27. The Plan provides that Class 41 will receive the following treatment:

> "[s]ubject to the election set forth in Section 45.1(b) hereof, each holder of an allowed CW General Unsecured Claim shall be entitled to receive, in full consideration, satisfaction,

release, and exchange of such holder's Allowed CW General Unsecured Claim, such holder's Pro Rata Share of the CW GUC Recovery." [Docket No. 11946, p. 85, § 45.1(a)].

28. Creditors in Class 41 are, therefore, impaired since they will not receive 100% distribution on their claims and, in addition, the unpaid portion of their respective claim will be discharged pursuant to the Disclosure Statement and proposed Plan.

29. Pursuant to Section 74.2(a) of the Plan, if confirmed, all claims will be discharged upon its effective date and paid according to the Plan [Docket No. 11946, p. 126, § 74.2(a)]. In addition, and pursuant to Section 74.2(b) of the Plan:

> "All Entities shall be precluded from asserting any and all Claims against the Debtors and Reorganized Debtors, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities **of any nature whatsoever**, relating to the Title III Cases, the Debtors or Reorganized Debtors or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities. […] As of the Effective Date, and in consideration for the value provided under the Plan**, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against the Debtors** and Reorganized Debtors, and their respective Assets and property and all such Claims." [Docket No. 11946, p. 127, § 74.2(b)] [Emphasis was added].

30. As the Court can see, notwithstanding the fact that the Plaintiff put the Board on notice of its legal position regarding the non-disagreeability of its taking claim in 2017, the Board still classified Plaintiff's claim as a general unsecured claim subject to discharge.

7

31. Since at least September 2017, the Board knows that Plaintiff's legal position is that it is a takings claim is non-dischargeable and that must be paid in full with interests; yet, the Board attempts to impair and discharge it.

### C. Post-Filing Attempts to Resolve Dispute

32. In yet another a good faith effort to resolve the legal controversies presented in this Complaint, the Plaintiff contacted the Board's representative to express its concerns and objections. The Plaintiff particularly made the Board aware that its claim was not subject to impairment or discharge pursuant to the Fifth Amendment.

33. Finally, the Board and Plaintiff (each through their respective representative) conferred telephonically on August 12, 2020. During this call, the parties discussed their respective positions but were unable to reach a resolution regarding the classification and distribution of Plaintiff's claim.

34. The Board, through its representative, submitted that both the Bankruptcy Code and PROMESA allows the Board to impair all claims, including Plaintiff's claim for just compensation.

35. No agreement was reached between the Board and the Plaintiff regarding the non-dischargeability and payment of Plaintiff's taking claim.

36. Consequently, there is a controversy between the Parties as to their legal rights and liabilities pursuant to PROMESA and Plaintiff respectfully moves this Honorable Court to resolve such.

37. This is a legal controversy that needs to be address for the approval and confirmation of the Disclosure Statement and Plan, respectively, as well as any other amendments to a disclosure statement and plan.

-V-
## COUNT I
### DECLARATORY JUDGMENT: TAKINGS CLAIMS ARE CANNOT BE IMPAIRED

38. All previous paragraphs are hereby incorporated by reference to this cause of action.

39. The Fifth Amendment of the Constitution of the United States, ("Takings Clause") provides that:

> "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; **nor shall private property be taken for public use, without just compensation**." (Emphasis was added).

40. A bedrock of bankruptcy law is that, unlike the states, Congress may discharge a debtor's **personal obligation** and impair creditors **contractual obligations**. *See* Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935). "No bankruptcy shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress." United States v. Security Indus. Bank, 459 U.S. 70, 81 (1982).

41. Nonetheless, this congressional "command" cannot infringe the United States Constitutions nor its Amendments. Congress' authority is not without limits.

42. While Congress, through the enactment of the Bankruptcy Code, may impair contractual rights through the bankruptcy system, it cannot discharge constitutional claims under the Fifth Amendment or the Takings Clause. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth

9

Amendment." Id. See also *See* In re: City of Detroit, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014).

43. Even though Puerto Rico is not a state, "Congress, in legislating for the territories would be subject to those fundamental limitations in favor of personal rights which are founded in the Constitution and its amendments" Balzac v. Porto Rico, 258 U.S. 29, 312-313 (1922). Therefore, is has long been held that the people of Puerto Rico "are entitled under the principles of the Constitution to be protected in life, liberty **and property**", Downes v. Bidwell, 182 U.S. 244, 283 (1901), and "[t]he guaranties of certain fundamental personal rights declared in the Constitution, as for instance that no person could be deprived of life, liberty or property without due process of law, **had from the beginning full application in the Philippines and Porto Rico** [*sic*]" Balzac v. Porto Rico, 258 U.S. 29, 312-313 (1922) [Emphasis was added].

44. Now, the Plaintiff's real property was taken by the Debtor and a state court ruled that the just compensation for such taking was $11,184,576.00 plus statutory interest. Therefore, this compensation is not of contractual nature which the Congress, PROMESA, the Board, or the Plan can impair and discharge. The Plaintiff's $11,184,576.00 claim is not just a judgment, it is Plaintiff's Fifth Amendment right to just compensation for the Debtor's taking.

45. The Supreme Court of the United States has held that "a property owner found to have a valid takings claim is entitled to compensation as if it had been "paid contemporaneously with the taking"—that is, the compensation must generally **consist of the total value of the property when taken, plus interest from that time**." Knick v. Town of Scott, 139 S. Ct. 2162, 2170 (2019). [Emphasis was added].

10

46. The Debtor's action in taking the Plaintiff's property entails the constitutional obligation to pay just compensation and, under the Fifth Amendment, no subsequent action can relieve it of the duty to provide just compensation. Id. at 2171.

47. In this Title III case, the Board is acting as a representative of the Debtor. 48 U.S.C. § 2175(b). That is, the Board acts like the local government. See Fin. Oversight & Mgmt. Bd. For P.R. v. Aurelius Inv., LLC, 140 S. Ct. 1649, 1662 (2020). Thus, the Board cannot adjust – or deny a claim which the Debtor (and the federal government) are prohibited from doing pursuant to the Fifth Amendment.

48. Plaintiff has a constitutional right to full compensation regardless of any post-taking remedies. See Knick v. Town of Scott, 139 S. Ct. 2162, 2170 (2019). This includes the Debtor's Title III PROMESA case.

49. If confirmed, the plan would deny Plaintiff just compensation. The Disclosure Statement and Plan would allow the Debtor to impair the Finca Matilde's constitutional claim for just compensation after the Debtor took their private property. This violates the Fifth Amendment. *See* In re: City of Detroit, 524 B.R. 147, 270 (Bankr. E.D. Mich. 2014).

50. If the Debtor and the Board can discharge Plaintiff's takings claim without paying a 100% dividend, as their Disclosure Statement and Plan propose, such action would tantamount to a second taking by the Debtor without just compensation. The first taking occurred when the Debtor included Plaintiff's property as part of a natural reserve in 2008. The proposed plan would, then, constitute a second taking since the Plan proposes to discharge Plaintiff's judicial determination of just compensation. Both takings are specifically prohibited under the Fifth Amendment of the Constitution of the United States of America.

51. The Plaintiff requests that this Honorable Court determines that Plaintiff's takings claim (a) is not a contractual claim, (b) it is a claim of constitutional nature, (c) that cannot be discharged, and, thus, (d) that Plaintiff's claim is not a dischargeable Class 41 claim.

## -VI-
## COUNT II
**DECLARATORY JUDGMENT: TAKINGS CLAIMS MUST BE INCLUDED IN THE PLAN**

52. All previous paragraphs are hereby incorporated by reference to this cause of action.

53. Pursuant to state law, the Debtor must pay judgments by including such judgment debts in their annual budget. Therefore, the Debtor pays its obligations by budgeting them.

54. The Disclosure Statement provides, with respect to state laws, that:

> "As of the Effective Date, and to the extent not previously preempted pursuant to an order of the Title III Court, **all laws of the Commonwealth, other than budgets certified by the Oversight Board, inconsistent with PROMESA, will be preempted**. Such preempted laws include, without limitation, laws enacted prior to June 30, 2016 that transfer, appropriate or require appropriations from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, and **such laws will not be enforceable to facilitate payment of such indebtedness**, and will not be enforceable if enforcement of such laws would be inconsistent with any provision of PROMESA having continuing applicability and effectiveness." [Docket No. 11947, p. 376] Emphasis was added].

55. The Plan contains a similar language which prays as follows:

> "As of the Effective Date, and to the extent not previously preempted pursuant to an order of the Title III Court, **all laws of the Commonwealth of Puerto Rico, other than budgets certified by the Oversight Board,**

12

> **inconsistent with PROMESA, are preempted**. Such preempted laws include, without limitation, laws enacted prior to June 30, 2016, that transfer, appropriate or require appropriations from the Commonwealth or one of its instrumentalities to any agency or instrumentality, whether to enable such agency or instrumentality to pay or satisfy indebtedness or for any other purpose, **and such laws shall not be enforceable to facilitate payment of such indebtedness**, directly or indirectly, and shall not be enforceable if enforcement thereof would be inconsistent with any provision of PROMESA having continuing applicability and effectiveness." [Docket No. 11946, p. 123, § 71.3] [Emphasis was added].

56. Even if the Court grants, or the Defendants concede, that Plaintiff's claim is non-dischargeable, if the Plan is confirmed, and state laws are preempted, the Plaintiff will not be able to collect on its non-dischargeable debt. Therefore, even though it is legally non dischargeable, for all practical purposes, Plaintiff's claim would be uncollectible because the Board has not, and would not be obligated, to include payment in the Debtor's budgets and all state laws which grant Plaintiff a remedy are preempted.

57. This, in spite of PROMESA's Section 201(b)(1)(N) which provides that the fiscal plan shall "respect the relative lawful priorities or lawful liens as **may be applicable in the constitution**, other laws, or agreements of a covered territory" 48 U.S.C § 2141 [Emphasis was added].

58. Takings claims are of both federal and local constitutional nature; local law provides that payment of eminent domain claims must be included in the fiscal plan and the Plan cannot be confirmed unless included.

59. Therefore, Plaintiff requests that this Honorable Court determines that to confirm a Plan of Adjustment: (a) the Board must include Plaintiff's takings claim in the plan, (b) pay it in full, and (c) that the Debtor's Plan if patently unfeasible and unconfirmable if it does not include Plaintiff's claim.

13

## -VII-
## COUNT III
### 42 U.S.C. § 1983: DEPRIVATION OF CONSTITUTIONAL RIGHT

60. All previous paragraphs are hereby incorporated by reference to this cause of action.

61. This action is sought alternatively as allowed by Rule 18 of the Fed. R. Civ P.

62. The Board has the power to file for bankruptcy relief on behalf of the Debtor pursuant to Tittle III of PROMESA and acts as a representative of the Debtor. 48 U.S.C. § 2175(b). In this Title III case, the Board acts like the local government. See Fin. Oversight & Mgmt. Bd. For P.R. v. Aurelius Inv., LLC, 140 S. Ct. 1649, 1662 (2020).

63. Through the debt adjustment process the Board, under the color of law, seeks to discharge and deprive the Plaintiff of its Fifth Amendment right to just compensation. It seeks to do, exactly, that, which the Fifth Amendment, through the Fourteenth Amendment, does not allow the Debtor to do: take Plaintiff's property without paying just compensation.

64. Upon this failure to provide for Plaintiff's constitutional right, the Board and the Debtor are liable towards Plaintiff pursuant to 42 U.S.C. § 1983.

65. As a result of such deprivation, Plaintiff has suffered continuing harm for the loss of the use of their property.

66. Therefore, Plaintiff request that the Board and the Debtor be held liable for Plaintiff's just compensation claim of over $11 million dollars.

## -VIII-
## COUNT IV
### DECLARATORY JUDGMENT: UNCONSTITUTIONALITY OF 48 U.S.C. § 2125

14

67. All previous paragraphs are hereby incorporated by reference to this cause of action.

68. This action is sought alternatively as allowed by Rule 18 of the Fed. R. Civ P.

69. Section 944 of the Bankruptcy Code discharges the Debtor from all debt included in the confirmed plan.

70. Furthermore, PROMESA's Section 105 states that "[t]he Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight Board or its members or employees of the territorial government resulting from actions taken to carry out this Act." 48 U.S.C. § 2155.

71. Yet, if the Court rules that the Board, may discharge Debtor' liability to pay just compensation to the Plaintiff through the Plan, and if Board is granted immunity, then, Section 105 would provide a mechanisms to override the obligations imposed to Debtor by the Fifth Amendment.

72. Plaintiff's right to just compensation cannot be eschewed or evaded, so, if the Board through its action and the filing of Plan of Adjustment that does not pay in full Plaintiff's claim is seeking to do what the local government cannot, it is not subject to immunity, or its immunity would be contrary to the Fifth Amended.

73. Therefore, it is requested that such actions under pursuant to provisions in PROMESA be declared unconstitutional.

**WHEREFORE**, the Plaintiff requests that this Honorable Court entertains the instant complaint and that Judgment be entered granting the Plaintiff's complaint for declaratory judgment.

15

**RESPECTFULLY SUBMITED,**

In San Juan, Puerto Rico, this 9th day of October of 2020.

**ISABEL FULLANA-FRATICELLI & ASSOCS., P.S.C.**
The Hato Rey Center Bldg.
268 Ave. Ponce de Leon Ste. 1002
San Juan, Puerto Rico 00918
Telephone: (787) 766-2530
Facsimile: (787) 756-7800

/s/Isabel M. Fullana
USDCPR No. 126802
ifullana@gaflegal.com

/s/Eduardo J. Capdevila
USDCPR No. 302713
ecapdevila@gaflegal.com