# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,[1]<br><br>    Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OBJECTION OF QTCB NOTEHOLDER GROUP TO MOTION OF NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION FOR ENTRY OF AN ORDER DIRECTING INDEPENDENT INVESTIGATION

To the Honorable United States District Judge Laura Taylor Swain:

The QTCB Noteholder Group[2] files this objection to the *Motion of National Public Finance Guarantee Corporation for Entry of an Order Directing Independent Investigation* (ECF No. 14450) (the "Motion"),[3] and to the *Official Committee of Unsecured Creditors' Limited Joinder in the Motion* (ECF No. 14527) (the "Committee Joinder") and respectfully states as follows:

---

[1] Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

[2] The members of the QTCB Noteholder Group and their respective holdings are set forth in the *Sixth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* (ECF No. 13548) (the "Sixth Supplemental Statement").

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

DB1/ 116553863.1

1. Under the guise of a purported need for transparency, movant National Public Finance Guarantee Corporation ("National") attempts to circumvent the plan objection and confirmation process by wielding meritless allegations regarding the QTCB Noteholder Group's members in a blatant effort to harass supporters of the *Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, (ECF No. 11946) (the "Amended Plan"). The QTCB Noteholder Group and its members emphatically deny the baseless and reckless allegations in the Motion and wish to make clear that the QTCB Noteholder Group and its members have always carefully complied with the Mediation Order, Case Management Order, and Supplemental Confidentiality Order, as well as applicable laws, regulations, and other relevant Court orders and will continue to do so.

2. It is no secret that National opposes the Amended Plan.[4] Instead of raising its objections at confirmation, National has elected to harass every creditor that signed the New PSA (the "PSA Creditors") by speculating—incorrectly—about their trading activities and suggesting that they have somehow violated the Court's orders and applicable laws and regulations. Devoid of any good-faith argument, the Motion brazenly advances a false narrative that the PSA Creditors improperly traded securities for nefarious purposes. In reality, the PSA Creditors made reasoned evaluations of value and the strength of claims in these cases based entirely on publicly available information. The Motion and the request for a so-called "independent investigation" should be denied.

---

[4] *See* Press Release, Nat'l Pub. Fin. Guarantee, Financial Guarantors Object to Flawed Amended Commonwealth Plan Support Agreement, Feb. 10, 2020, https://www.nationalpfg.com/pdf/PressRelease/Financial_Guarantors_Object_to_Flawed_Commonwealth_Plan_Support_Agreement.pdf

A. *Mediation Restriction and Cleansing Periods*

3. National supplies no evidence to support its provocative and unsubstantiated allegations. The Motion employs rank speculation, making nonspecific allegations qualified by the use of "suggest," "may have" and "were likely." Notably, National bases none of its defamatory allegations "on information and belief."

4. National participates in the mediation process in these Title III cases. It knows that the mediation has been a series of fits and starts since late 2017 that has included long inactive periods following cleansing public disclosures during which no confidential mediation materials were exchanged. And National must understand that creditors will be reluctant to participate in settlement efforts if, notwithstanding careful compliance with applicable laws, they will risk being subject to the threat of "investigations" based upon unfounded allegations by disgruntled creditors.

5. Throughout the mediation process in these Title III cases, the parties have publicly disclosed (or "blown out") confidential mediation information to cleanse creditor participants so that they can freely trade securities without restriction. The Motion attaches only the Oversight Board's press releases dated February 28, 2020 (announcing the filing of the Amended Plan) and September 30, 2020 (disclosing settlement proposals exchanged between the Oversight Board and the PSA Creditors) and makes the broad assertion that "mediation" took place between "September 2019 and February 2020." The Motion fails to inform the Court that the Oversight Board publicly disclosed confidential meditation materials on several other occasions that disprove National's misleading suggestion that constant confidential information exchanges occurred from mid-2019 until September 30, 2020. The relevant disclosure dates are:

- June 16, 2019 – cleansing disclosure of Initial PSA[5]

---

[5] *See* "Oversight Board Releases Executed PSA," Reorg Research, June 16, 2019.

- October 17 and 18, 2019 – cleansing disclosures of Cash Summary Analysis and Bank Account Analysis[6]
- February 9, 2020 – cleansing disclosure of New PSA[7]
- September 30, 2020 – cleansing disclosures of Oversight Board and PSA Creditor competing proposals[8]

6. After each of these disclosure dates there were lulls in the mediation process where creditor participants received no confidential mediation information that was not already made public. When mediation resumed requiring principals to receive new confidential mediation materials to facilitate negotiations, the members of the QTCB Noteholder Group deemed themselves restricted and ceased trading until the relevant information was publicly disclosed by the Oversight Board in its press releases or via the Electronic Municipal Market Access system.

7. To avoid further distraction and unnecessary waste of judicial and Commonwealth resources, the QTCB Noteholder Group hereby provides the one-time disclosure on a voluntary basis attached hereto as Exhibit A. This disclosure details the relevant dates when creditors accepted confidential mediation information (or, in the case of the Initial PSA, entered into discussions with the Oversight Board) and the dates when such information was publicly disclosed. At no time did any member of the QTCB Noteholder Group trade securities while in possession of confidential information obtained in mediation or discussions with the Oversight Board before such information was publicly disclosed. To be clear, the QTCB Noteholder Group's voluntary

---

[6] See "Mediation-Related Cleansing Materials Reveal $6.9B Unrestricted Cash Estimate, Discuss Risks to Commonwealth Fiscal Plan," Reorg Research, October 18, 2019; and see also "AAFAF Posts Oversight Board Mediation Materials Related to Bank Account Analysis," Reorg Research, October 18, 2019.

[7] See "BREAKING: PROMESA Oversight Board Discloses 'Global Settlement' With Holders of $8B in GO, PBA Bonds," Reorg Research, February 9, 2020.

[8] See "Revised Plan Proposals From PROMESA Oversight Board, PSA Creditors Would Increase Cash Consideration by $2B, Lower Cap on Maximum Annual Debt Service; Proposals Differ Over Composition of Total Consideration," Reorg Research, September 30, 2020.

disclosure is aimed at avoiding further delay and expense related to the Motion's unfortunate distraction from the plan confirmation process—and not based on any merit of the Motion.

### B. Rampant Speculation Is Insufficient to Warrant the Use of Section 105 to Appoint an Independent Investigator

8. National's invocation of Section 105 of the Bankruptcy Code (the "Code") to appoint an "independent investigator" is improper and its careful choice of words reveals the weakness of its request. What National actually seeks is an *examiner* that is ordinarily available under Section 1104 of the Code. However, Congress did not incorporate Section 1104 into PROMESA. *See In re Fin. Oversight & Mgmt. Bd.*, 583 B.R. 626, 635 (D.P.R. 2017). National cannot rely on Section 105 to provide it with relief that PROMESA does not otherwise afford. *See generally In re Plaza de Diego Shopping Ctr., Inc.*, 911 F.2d 820, 832 (1st Cir. 1990) ("Even as a court of equity, however, the bankruptcy court's equitable discretion is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code."); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) ("[T]he lower courts cannot use section 105(a) to circumvent the Code.").

9. Even if Section 1104 of the Code were applicable, the Motion fails to make a "clear and convincing" showing that appointment of an investigator is appropriate and in the interest of the creditors in the Title III cases. *In re Skytec, Inc.*, 610 B.R. 14, 27 (Bankr. D.P.R. 2019) (agreeing with majority rule that examiner appointment is extraordinary relief that requires heightened burden of clear and convincing evidence); *In re Munoz*, 544 B.R. 266 (Bankr. D.P.R.), *aff'd sub nom. Lopez-Munoz*, 553 B.R. 179 (B.A.P. 1st Cir. 2016), *aff'd sub nom. In re Lopez-Munoz*, 866 F.3d 487 (1st Cir. 2017) (same). For evidence to be "clear and convincing" it must "produce[ ] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to

enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *See generally Cruzan by Cruzan v. Dir., Mo. Dep't. of Health,* 497 U.S. 261, 285 n.11 (1990). The Motion's rank speculation does not come close to satisfying this standard.

10. Section 105 of the Code also does not support the Motion because Section 105 does not apply when applicable procedural rules (including those governing the plan of adjustment confirmation process) provide the appropriate remedy. *See generally Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."). The Motion is nothing more than an attempt to further a campaign against the Amended Plan and wield baseless and purely speculative allegations to obtain *free* early discovery at the expense of the Commonwealth. National should not be permitted to waste Commonwealth resources on a fishing expedition to obtain discovery in an end-run around the plan confirmation process.

11. National's intention is obvious – it hopes the Court will appoint an investigator and delay or derail confirmation of the Amended Plan. Rather than waiting to raise its plan objections at the appropriate time, National seeks to impose costs on the Commonwealth and a further delay in the resolution of these Title III cases. For a party that professes a desire to preserve the Commonwealth's resources,— it has to know that the proposed investigation would come at the expense of the Commonwealth and be yet another avenue of depleting the available resources to fund a plan of adjustment.

12. For its part, the Committee's Joinder is similarly transparent. The Committee does not support the Amended Plan. Its offer to take on the role of "independent investigator" is simply another example of the Committee introducing delay and cost on these Title III cases and using

the Commonwealth's resources to continue its attack on the Amended Plan. The PSA Creditors have sought a schedule to consider approval of the disclosure statement and confirmation of the Amended Plan. *See Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and 105 of the Bankruptcy Code to Impose Deadline for Plan of Adjustment* (ECF No. 14478). Whether the Court approves the PSA Creditors' proposed schedule or sets a different one, National, the Committee and any other objector will have the opportunity to object to confirmation of the Amended Plan just like every other party in interest.

\* \* \*

13. The QTCB Noteholder Group respectfully requests that the Court enter an Order denying the Motion and grant any other and further relief as is just and proper. In light of the nature of the Motion and the rank speculation and accusations contained therein, the QTCB Noteholder Group expressly reserves all rights and remedies against National.

[*Remainder of page intentionally left blank*]

DATED: October 13, 2020

| **MORGAN, LEWIS & BOCKIUS LLP** | **CORREA-ACEVEDO & ABESADA LAW OFFICES, PSC** |
|---|---|
| */s/ Kurt A. Mayr* | */s/ Sergio Criado* |
| Kurt A. Mayr (admitted *pro hac vice*) | Sergio Criado |
| David L. Lawton (admitted *pro hac vice*) | USDC-PR No. 226307 |
| Shannon B. Wolf (admitted *pro hac vice*) | Roberto Abesada-Agüet |
| One State Street | USDC-PR No. 216706 |
| Hartford, CT 06103-3178 | Centro Internacional de Mercadeo, Torre II |
| Tel. (860) 240-2700 | # 90 Carr. 165, Suite 407 |
| Fax: (860) 240-2701 | Guaynabo, P.R. 00968 |
| kurt.mayr@morganlewis.com | Tel. (787) 273-8300 |
| david.lawton@morganlewis.com | Fax (787) 273-8379 |
| shannon.wolf@morganlewis.com | ra@calopsc.com |
|  | scriado@calopsc.com |
| Sabin Willett (admitted *pro hac vice*) |  |
| One Federal Street |  |
| Boston, MA 02110-1726 |  |
| Tel: (617) 951-8775 |  |
| sabin.willett@morganlewis.com |  |

*Co-Counsel for the QTCB Noteholder Group*

## CERTIFICATE OF SERVICE

      I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

*/s/ Sergio Criado*

USDC-PR No. 226307

DB1/ 116553863.1