2020-10-11 16:33:04

# Reorg®

Puerto Rico
## UPDATE 1: Oversight Board Releases Executed PSA

Sun 06/16/2019 20:42 PM

*UPDATE 1: 8:42 p.m. ET 6/16/2019*: The oversight board this evening posted to its website an executed version of the commonwealth plan support agreement.

According to the document, the signatories to the agreement include the PROMESA oversight board, on behalf of the commonwealth of Puerto Rico and (i) holders of GO bond claims and/or commonwealth guarantee bond claims and (ii) holders of Puerto Rico Building Authority bond claims.

*Original Story 7:09 p.m. UTC on June 16, 2019*

**BREAKING: Oversight Board Inks Commonwealth Plan PSA; Would Reduce Bond Debt By Over 60%, 'Vintage' GO Debt Would Recover 64%**

*Relevant Documents:*
Plan Support Agreement Summary
FOMB Press Release
LCDC Press Release
AAFAF Press Release

The PROMESA oversight board announced Sunday evening an agreement with certain creditors of the commonwealth of Puerto Rico on the framework for a plan of adjustment to resolve $35 billion in liabilities, including a consensual restructuring of $18 billion in constitutional debt. The agreement would reduce the amount of Commonwealth related bonds outstanding to less than $12 billion, a reduction of more than 60%. The documents indicate that the PSA has the support of creditors who hold approximately $3 billion in total GO and PBA claims. The Puerto Rico government has **rejected** the deal, citing again its opposition to any pension cuts.

The Lawful Constitutional Debt Coalition, or LCDC, (represented by Quinn Emanuel) said all of its members – major holders of Puerto Rico's GO and PBA bonds issued prior to March of 2012 – have signed on to the PSA. The LCDC says that other PSA signatories include members of a noteholder group that purportedly holds a substantial portion of Qualified School Construction Bonds, or QSCB bonds, and Qualified Zone Academy Bonds, or QZAB bonds, issued by PBA and guaranteed by the commonwealth.

The PSA provides a mechanism to settle the outstanding litigation over the validity of the 2012 and 2014 general obligation bonds. The PSA contemplates a blended recovery of between 35% and 42%. The board said in a press release that the agreement provides a greater than 60% average haircut for all $35 billion claims against the Commonwealth, a 36% haircut for holders of valid Puerto Rico general obligation bonds and a 27% haircut for holders of valid Public Building Authority bonds guaranteed by the Commonwealth.

A summary of proposed bondholder recoveries is as follows:

## Plan Support Agreement: Bondholder Recoveries

- **The Plan Support Agreement provides a framework for a Plan of Adjustment with $11.8 billion of adjusted debt and $2 billion of cash as consideration for $35 billion in Commonwealth debt and unsecured claims**

- **The validity of the 2012 and 2014 General Obligation bonds is subject to ongoing litigation**
  - Plan provides a mechanism to settle outstanding litigation
  - 2012/2014 holders have the option to litigate for pari recovery with pre-2012 bonds ("Vintage") or settle at the levels detailed below
  - Commonwealth shares in the benefit (up to $1.8 billion) from the invalidation of 2012/14 GO/PBA claims

| | Claim ($ bn)[1] | Recovery[1] |
|---|---|---|
| **All Creditors** | ~$35 | 35% to 42% blended recovery |
| **Vintage GO**[2] | $6.9 | 64% before litigation recovery and settlement savings |
| **2012 GO**[2] | $2.7 | Settle at 45%, or litigate for pari Vintage recovery |
| **2014 GO**[2] | $3.6 | Settle at 35%, or litigate for pari Vintage recovery |
| **Vintage PBA** | $3.9 | 73%, before litigation recovery and settlement savings |
| **2012 PBA** | $0.7 | 23%, with net GO claim treated as 2012 GO |
| **Non-GO/PBA Creditors** | ~$16 | 9% blended |

(1) Claim amounts are preliminary and subject to material revision. Recoveries exclude potential recoveries from non-Commonwealth entities.
(2) Treatment of Other CW Guarantee Claims to be determined pursuant to the plan and excluded from these categories.

## Plan Support Agreement: Recoveries for Creditors

| ($ in millions) | | Base Case: Pre-Litigation | | 2012 / 14 Valid | 2012/14 Invalid |
|---|---|---|---|---|---|
| | | | Base | 2012: 50%[3] | 2012: 50%[3] |
| Credit | Claim[1] | | Scenario[2] | 2014: 50%[3] | 2014: 50%[3] |
| Vintage GO + GO Guar.[4] | $6,918 | | 64.3% | 68.2% | 83.4% |
| Vintage PBA | 3,938 | | 72.6% | 75.6% | 87.3% |
| **Opt Ins** | | | | | |
| 2012 GO[4] | 1,337 | | 45.0% | 45.0% | 45.0% |
| 2014 GO[4] | 1,803 | | 35.0% | 35.0% | 35.0% |
| 2012 PBA | 329 | | 57.8% | 57.8% | 57.8% |
| **Non Opt Ins** | | | | | |
| 2012 GO[4] | 1,337 | | – | 68.2% | – |
| 2014 GO[4] | 1,803 | | – | 68.2% | – |
| 2012 PBA | 329 | | 23.4% | 75.6% | 23.4% |
| **Consideration Retained by the CW** | | | | $272 | $991 |
| **Blended Total Recoveries:** | | | | | |
| Total GO / PBA Recovery | | | | 64.8% | 60.9% |
| Aggregate Creditor Recoveries | | | | 38.2% | 36.1% |

Note: Recoveries shown do not include PSA Restriction Fee or Consummation Costs. No excess cash assumed.
(1) Claim numbers shown assuming 50% of 2012 and 2014 Commonwealth claims opt in. Claim numbers are preliminary and subject to material revision.
(2) Excludes any settlement savings.
(3) Percentage of 2012 and 2014 Commonwealth claims assumed to opt in.
(4) Treatment of Other CW Guarantee Claims to be determined pursuant to the plan and excluded from these categories.

According to the documents, the commonwealth's debt service, including principal and interest over the next 30 years, would be cut by about half, to $21 billion from $43 billion.

This agreement with bondholders, along with the COFINA restructuring agreement approved in February, reduces the commonwealth's maximum annual debt service payable in any future year by more than 70%, from $4.2 billion annually to below $1.5 billion a year, according to the oversight board.

The agreement contains the following term sheet summary of the proposal:

### Term Sheet Summary

| | |
|---|---|
| **Total Consideration** | • $13,777mm<br>   • $11,377mm new Commonwealth bonds<br>   • $2,000mm cash<br>   • $400mm in either cash or bonds at the Board's election |
| **PBA Recovery** | • $1,073mm cash ("PBA Cash")<br>• PBA Excess Cash, if any |
| **Maximum Consideration to PBA / GO[1]** | • $12,493mm |
| **Excess Cash** | • Total CW unrestricted and unencumbered cash less amounts related to:<br>   • Federal receipts<br>   • $2.0bn working capital<br>   • Necessary investments funded in FY2020 to meet projections the May 9, 2019 Certified Fiscal Plan<br>   • $400mm cash option<br>• Max: $900mm<br>• Recovery cap buy down: 1.15x for each dollar of Excess Cash |
| **CW Pari Passu Recovery Percentage** | • Consideration available to all Commonwealth claims divided by sum of aggregate Commonwealth bond-related claims<br>• 64.3%[2] |
| **2012 Commonwealth Settlement Recovery** | • 45% |
| **2014 Commonwealth Settlement Recovery** | • 35% |
| **Recoveries: Early and Late Vintage Pari** | • Vintage GO: 64.3%[2] |
| **Vintage Recovery Cap** | • Vintage GOs / PBAs: 89.4%[3]<br>• Cap assuming full exercise of Excess Cash option: 80% - 84%[3] |

(1)   Assumes no excess cash and pari recoveries (i.e., no sharing).
(2)   Assumes no excess cash.
(3)   In a scenario where bondholders reach the recovery cap, the Commonwealth would have recovered at least $1.2bn, lowering the aggregate consideration paid to creditors.

## Term Sheet Summary (Cont'd)

| | |
|---|---|
| **Settlement Savings** | • Difference between the CW Pari Passu Recovery Percentage and the 2012 and 2014 Commonwealth Settlement Recovery |
| **Late Vintage Reserve** | • Reserve established to hold in escrow the Pari Passu distributions allocated to non-settling 2012 and 2014 Commonwealth claims |
| **Settlement Savings & Litigation Trust Sharing** | • Upside Sharing: 67% / 33%; Vintage bonds / Commonwealth, respectively |
| **PSA Restriction Fee** | • **PSA Fee:** 1.5% for every 120 days to consenting creditors who execute PSA within 60 days of PSA execution<br>• **PSA Fee Cap:** $300mm (payable out of cash consideration and inclusive of Consummation Costs)<br>• **Earned:** PSA signatures of 50% of a vintage class for all debtors<br>• **Paid:** At Effective Date |
| **Consummation Costs** | • One-time 1.25% fee<br>• **Earned:** PSA signatories by 5/31/2019<br>• **Paid:** Effective Date |
| **Structure of Bonds** | • Terms of debt (coupons, covenants, collateral, call protections, etc.) to be mutually agreed upon by PSA parties |
| **Obligations of PSA Parties** | • Full support with respect to GO / PBA and opt in 2012 / 2014s held by PSA parties<br>• No action clauses for other claims held<br>    • Rights to receive settlement economics for such claims |
| **Litigation Trust Funding** | • $10mm from Settlement Savings generated<br>• Funding allocated 67% and 33% between creditors and the Commonwealth, respectively |

## Responses from Parties, AAFAF

The LCDC reports that the PSA stemmed from three months of negotiations with the oversight board, and said the PSA establishes terms for the consensual restructuring of more than $18 billion in GO and PBA debt.

"It is a very positive development for Puerto Rico that a cross-section of large bondholders has worked with the Oversight Board to develop a consensual restructuring agreement that will accelerate the Commonwealth's exit from bankruptcy, respect the lawful priority of valid public debt, and help ultimately restore capital markets access," said Susheel Kirpalani of Quinn Emanuel Urquhart & Sullivan, LLP, counsel to the LCDC, in a press release. "The terms also create an efficient path for resolving disputes over the validity and priority of GO debt – one that will enable the Commonwealth to save hundreds of millions of dollars per year in restructuring-related expenses upon exiting bankruptcy."

**In a separate press release, the Puerto Rico Fiscal Agency and Financial Advisory Authority said the commonwealth of Puerto Rico is not a party to and does not support the agreement. AAFAF Executive Director Christian Sobrino said that no legislation, executive action or other administrative approval required by the commonwealth will be taken to execute any agreement that cuts pension payments.**

The oversight board for its part said the agreement with the supporting creditors is an acknowledgement by bondholders, and other parties with claims against the commonwealth, that Puerto Rico's difficult financial situation requires a "meaningful reduction in its debt burden to a sustainable level." It also said that the accord is an important element of a plan of adjustment that would allow Puerto Rico to emerge from bankruptcy early next year.

The oversight board reiterates in its press release that it expects to file a commonwealth plan of adjustment within 30 days. This PSA, together with the oversight board's agreements with the

Official Committee of Retired Employees (COR) to resolve the $55 billion in pension benefit claims and with unions regarding collective bargaining and retirement benefit agreements, would provide Puerto Rico with a viable path to put this restructuring behind it and emerge from the process laid out under Title III of PROMESA, according to the board.

"The support agreement with creditors and the agreement with COR and the unions are milestones for Puerto Rico on the path towards a future with sustainable debt payments, secure pensions, and fiscal stability," oversight board Chairman José Carrión said. "A Commonwealth plan of adjustment will provide investors with confidence that Puerto Rico has turned the corner after its financial crisis. The people of Puerto Rico will finally be able to live without the uncertainty of unsustainable government debt that so profoundly affected the Commonwealth's ability to attract investors, create jobs and economic growth."

"We have fought hard for the interests of the people of Puerto Rico and we are glad to have reached a consensual agreement with creditors that lowers Puerto Rico's total debt burden and its annual debt payments significantly," said oversight board Executive Director Natalie Jaresko. "These were tough negotiations and we are confident we reached the best deal possible for Puerto Rico to move on from decades of incurring debt we could not afford."

The LCDC noted that the PSA includes approximately $8 billion in GO and PBA debt reduction while establishing a framework for reducing the commonwealth's total funded debt and general unsecured claims by $23 billion.

"The terms also create an efficient path for resolving disputes over the validity and priority of GO debt – one that will enable the commonwealth to save hundreds of millions of dollars per year in restructuring-related expenses upon exiting bankruptcy, according to the creditor group," Kirpalani said.

The LCDC stated that "This agreement demonstrates that creditors with long-term investments and interests in Puerto Rico are willing to make meaningful compromises intended to reignite capital formation and economic development on the island." Under the terms, holders of valid GO bonds will accept baseline haircuts of approximately 36%. "When paired with recently announced consensual agreements with unions and retirees, we believe the restructuring of more than $18 billion in constitutional debt will help Puerto Rico speed up its exit from bankruptcy and achieve the type of revitalization that other municipal issuers have realized following their bankruptcies," Kirpalani said.

Further, the LCDC says that it is optimistic that like-minded creditors will sign on to the PSA disclosed today. "We believe this agreement's terms provide all holders of GO and GO-guaranteed debt the opportunity to realize equitable recoveries based on their relative priority and rights," said the coalition, and "we look forward to working alongside constructive stakeholders to achieve confirmation and then consummation of a Plan of Adjustment for the Commonwealth in the months to come."

This publication has been prepared by Reorg Research, Inc. or one of its affiliates (collectively, "Reorg") and is being provided to the recipient in connection with a subscription to one or more Reorg products. Recipient's use of the Reorg platform is subject to Reorg's Terms of Use or the user agreement pursuant to which the recipient has access to the platform (the "Applicable Terms"). The recipient of this publication may not redistribute or republish any portion of the information contained herein other than with Reorg's express written consent or in accordance with the Applicable Terms. The information in this publication is for general informational purposes only and should not be construed as legal, investment, accounting or other professional advice on any subject matter or as a substitute for such advice. The recipient of this publication must comply with all applicable laws, including laws regarding the purchase and sale of securities. Reorg obtains information from a wide variety of sources, which it believes to be reliable, but Reorg does not make any representation, warranty, or certification as to the materiality or public availability of the information in this publication or that such information is accurate, complete, comprehensive or fit for a particular purpose. Recipients must make their own decisions about investment strategies or securities mentioned in this publication. Reorg and its officers, directors, partners and employees expressly disclaim all liability relating to or arising from actions taken or not taken based on any or all of the information contained in this publication. © 2020 Reorg. All rights reserved. Reorg® is a registered trademark of Reorg Research, Inc.

© Copyright 2012 - 2020