# EXHIBIT A

# MEDIATION AGREEMENT

The parties whose authorized signatures appear below agree to the terms of this Mediation Agreement (this "Agreement").

On June 23, 2017, the Court (as defined below) entered the Order Appointing Mediation Team, *In re Commonwealth of Puerto Rico, et al.,* Case No. 17-3283 [Doc. No. 430] (D.P.R. 2017) (LTS) (the "Mediation Order").

## I. Purpose and Responsibilities

The purpose of the mediation will be to attempt to arrive cooperatively and informally at a resolution (a "Potential Settlement") of any and all issues arising in the Title III cases and proceedings under the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241 (and as defined in the Mediation Order) between and among the parties to the mediation, such as the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Government of Puerto Rico and its instrumentalities (collectively, the "Government"), the Financial Oversight and Management Board for Puerto Rico, as representative of each Title III debtor (the "FOMB"), and certain Creditor Parties (as defined below). The mediation shall cover any and all issues arising in the Title III cases, as determined by one or more members of the mediation team appointed pursuant to the Mediation Order (each, a "Mediator" and collectively, the "Mediators" or the "Mediation Team") and communicated to the parties by the Honorable Barbara J. Houser, who was designated by the Mediation Order as leader of the Mediation Team (the "Mediation Team Leader").

## II. Mediation Process

### A. Overview

Pursuant to the Mediation Order, the members of the Mediation Team will serve as mediators. Members of the Mediation Team will review written submissions of the parties who have duly executed this agreement (each, a "Participating Party" and collectively, the

"Participating Parties"), and will conduct mediations, which may be specific to certain issues and include some or all of the Participating Parties (each, an "Individual Mediation"), on separate schedules set by the member(s) of the Mediation Team assigned by the Mediation Team Leader to preside over the applicable Individual Mediation (the "Assigned Mediator(s)"). All mediation sessions shall be attended in person by principals and advisors for each involved Participating Party; provided, that the Assigned Mediator(s) may excuse Participating Parties from complying with this requirement, and ad hoc and similar groups comprised of multiple Participating Parties may be represented at mediation sessions by a single principal and advisor. The principal of each Participating Party attending each mediation session will have authority to settle the issues being mediated within a preapproved range, taking into account all information regarding possible terms of such settlement available to such Participating Party in advance of such mediation session; provided, that no such authority shall be required if the Assigned Mediator(s) inform such Participating Party that the purpose of such mediation session is primarily informational and/or procedural or if the Assigned Mediator(s) otherwise excuse the Participating Party from complying with this requirement.

To the extent that a proposed resolution falls outside such preapproved range, the principal will advise the Assigned Mediator(s) that the proposed resolution falls outside of his/her preapproved range, but that he/she will recommend it to the Participating Party and, within 24 hours of making those disclosures, or such longer period as the Assigned Mediator(s) agree, either obtain authority from the Participating Party to settle the dispute(s) on those terms or inform the Assigned Mediator(s) of the failure to obtain such authority from the Participating Party. Participating Parties who are serving as indenture trustees or fiscal agents, subject to acting reasonably promptly, will be allowed additional time to obtain settlement authority in accordance with the terms of their respective governing documents.

Prior to the commencement of an Individual Mediation in which it is involved, every Participating Party required to do so under Rule 2019(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") shall file with the Court a verified statement setting forth the information specified in Bankruptcy Rule 2019(c).

During the course of a mediation session, the Assigned Mediator(s) will meet with the Participating Parties separately and together, as necessary, in an effort to assist them to

resolve their disputes.  The Participating Parties acknowledge that the Assigned Mediator(s) shall have *ex parte* meetings with Participating Parties or groups of Participating Parties, and the Assigned Mediator(s), as well as other members of the Mediation Team (and their law clerks and advisors) who have access to information provided in such meetings, shall hold confidential all non-public information disclosed by the Participating Parties unless authorized by the disclosing party to disclose such information in the mediation.  Unless the Participating Parties direct otherwise, the Participating Parties consent to the Assigned Mediator(s) having *ex parte* discussions by telephone or in person prior to or subsequent to a mediation session.  The mediation sessions shall be private and shall not be recorded in any manner whatsoever.  Only Participating Parties authorized by the Assigned Mediator(s) and those parties' representatives may attend a mediation session.  The FOMB may designate one or more agents (the "FOMB Agents") to participate in the mediation, along with other representatives of the FOMB.  Each FOMB Agent shall be deemed a Participating Party under this Agreement.

### B.  Submission to the Mediation Team of Information

At the direction of the Assigned Mediator(s), the Participating Parties will submit to all Mediators, on the schedule set by the Assigned Mediator(s), such documents as will assist them in understanding the merits of the Participating Parties' claims, positions and contentions.  At the direction of the Assigned Mediator(s), the Participating Parties will submit to all Mediators, on the schedule set by the Assigned Mediator(s), statement(s), each not to exceed twenty-five pages (double-spaced, minimum 12-point font size), setting forth key facts, claims, and controlling legal principles.  The statements may propose possible settlement alternatives.  The mediation statements will be confidential and delivered directly to the Mediators unless the Participating Party agrees otherwise. Participating Parties may submit joint mediation statements.  The Mediators shall not disclose the content of any mediation statement except to their law clerks and the Mediation Team's advisor(s) unless authorized to do so by the Participating Party that submitted such mediation statement.  No later than 45 days after the settlement of all disputes involving a Participating Party, the Mediators will return to the respective Participating Party or destroy all materials it submitted in order to protect the confidential nature of the mediation process.

### C. Submission of Proposals to Advisors

Any proposals or offers of a Potential Settlement to any Participating Party, whether oral or written, made in the course of the mediation (each, a "Proposal" and collectively, the "Proposals") and any information that a disclosing party believes may constitute MNPI (as defined below) shall be provided to the recipient Participating Party's legal and/or financial advisors, who are subject to the confidentiality provisions of section IV of this Agreement (each, an "Advisor" and collectively, the "Advisors"), and not directly to any Participating Party without the prior consent of such Participating Party's Advisor or such Participating Party. Each Advisor may share any Proposal with such Participating Party that it represents if such Advisor's client, in its sole discretion, requests the Proposal (i.e., without the consent of any other Participating Party). No Proposal shall be deemed to be Advisor Only Information, as defined in the next subsection of the Agreement, by virtue of having been provided to an Advisor first.

### D. Advisor Only Information

The Government, the FOMB, and any other Participating Party may elect in its sole discretion to furnish or disclose certain information, documents, data, or materials to the other Participating Parties' Advisors on a confidential, Advisors'-eyes-only basis, subject to such Advisor's non-disclosure agreement with the Government and/or the FOMB as the case may be (such information, documents, data, or materials, the "Advisor Only Information;" provided that such information, documents, data, or materials shall not be considered "Advisor Only Information" if also provided to the other Participating Parties by (x) the disclosing party or its Advisors, or (y) the Advisors, with the express permission of the disclosing party that such information, documents, data, or materials can be disclosed to such Participating Party that the Advisor represents). Each Participating Party may elect in its sole discretion to have its Advisors receive certain information, documents, data, or materials from other Participating Parties, on a confidential Advisors'-eyes-only basis. Unless otherwise agreed by the Assigned Mediator(s), all Advisor Only Information shall be provided to the Assigned Mediator(s), who may share it with all Mediators and their law clerks and advisor(s), at substantially the same time it is provided to the applicable Participating Parties' Advisors.

4

### E. Role of the Mediators

Each Mediator will be serving as a neutral intermediary only, and will not act as a judge, an attorney, or an advocate for any Participating Party, and will not provide any legal advice or legal services to any Participating Party. The Mediators do not have the authority to rule on any substantive or legal issue for the Participating Parties. The role of the Mediators is instead to facilitate the Participating Parties' ideas for how the issues being addressed in mediation might be resolved, and evaluate the positions being taken by the Participating Parties in hopes of assisting them to understand both the strengths and weaknesses of their respective positions. The Mediators do not warrant or represent that settlement will result from the mediation or any Individual Mediation, and the Participating Parties understand that the Mediators will not impose a settlement of any dispute; provided, however, the Mediators are allowed to make a "Mediators' Proposal" in their sole discretion.

### F. Fees and Expenses of Advisor(s) to Mediation Team

The Participating Parties agree that the Mediation Team will be permitted to retain a financial advisor and such other advisors as it deems necessary. The fees and expenses, if any, of each such advisor shall be subject to review and allowance by the court overseeing the Title III cases and proceedings (the "Court") under the procedures and standards applicable to fees and expenses of professional persons under section 316 of PROMESA. The Mediation Team's advisor(s) shall be entitled to seek interim compensation under the procedures set forth in section 317 of PROMESA or as permitted by the Court. The allowed fees and expenses of the Mediation Team's advisor(s) shall be paid by, and allocated among, the Commonwealth of Puerto Rico and its instrumentalities that are, at the time the fees and expenses are incurred, debtors under Title III of PROMESA. Such advisor(s) will maintain records of their time and expenses on a debtor-specific basis. Any objection to the allocation of the fees and expenses of the Mediation Team's advisor(s) or the reasonableness of those fees and expenses shall be raised in the first instance with the Mediation Team Leader. In the event no agreement is reached regarding the allocation of the fees and expenses of the Mediation Team's advisor(s) or the

5

reasonableness of those fees and expenses, those objections shall be submitted for decision to the Court.

### G. No Other Agreements

Each Participating Party represents to the remaining Participating Parties that there are no other agreements with respect to this Agreement or the mediation that exists between and/or among them, provided that agreements between members of the same ad hoc group or committee shall not constitute agreements between or among Participating Parties.

## III. Conflicts of Interest

The Mediators have represented, to the best of their knowledge and belief, that they hold no financial interest in the Title III cases, disclosure of which would be required under Title I of the Ethics in Government Act of 1978 (as amended), 5 U.S.C. app. §§ 101-111, and applicable implementing rules and guidance.  Once the names of the Participating Parties are known, the Mediators will make a reasonable effort to learn and disclose to the Participating Parties: (a) any financial interest the Mediators have in the Participating Parties or the law firm(s) representing the Participating Parties, and (b) any other circumstance that may create doubt regarding a Mediator's impartiality in the mediation.

Each Participating Party has made a reasonable effort to learn, and has disclosed or will disclose, any relationships of a nature described in the preceding paragraph, not previously identified and disclosed by a Mediator.

The Participating Parties and the Mediators shall, by their participation in the mediation, acknowledge that any relationship disclosed pursuant to the preceding paragraphs will not affect any Mediator's independence or impartiality, and the Participating Parties have consented to the Mediators' services, waiving any claim based on such relationships.

If a Mediator retires or withdraws as a Mediator for any other reason during the pendency of the Title III cases, that Mediator shall not undertake any work for or against a Participating Party regarding the subject matter of the mediation.  Moreover, the retired or withdrawn Mediator shall not personally work on any matter for or against a Participating Party, regardless of subject matter, until two years have passed after the end of this mediation.  The personal commitment in the preceding sentence shall not extend to (i) any firm or other entity

with which he or she may become associated, and (ii) the mediation of a matter in which a Participating Party may be involved that is unrelated to the Title III cases and proceedings.

**IV.    Confidentiality**

Except as set forth in Section VI, all Proposals, views, conduct, and statements made, whether oral or written, and any information, or graphic or physical evidence offered in the course of the mediation (or in advance of the mediation if so designated) (collectively, the "Confidential Information") by any of the Participating Parties or their Advisors and any of the Mediators or their advisor(s), are confidential, and will not be disclosed to third parties or the Court, except (i) with the written prior consent of the disclosing party; (ii) to the recipient Participating Party's Advisors or internal representatives, each Mediator's law clerks, and the Mediation Team's advisor(s), each of whom has been advised, prior to receipt of such information, of the existence of this Agreement and has agreed or is under an obligation not to disclose the Confidential Information; (iii) to any third-party advisor, fund administrator, or other similarly situated entity or person (a "Third-Party Administrator") to whom such recipient is required to disclose information regarding securities managed or administrated by such Third-Party Administrator to enable such Third-Party Administrator to make fair valuation determinations and calculations required for such Third-Party Administrator to comply with its obligations under the Investment Company Act of 1940, as amended, or the Investment Advisors Act of 1940, as amended, and the rules and regulations thereunder; provided, however, that any such Third-Party Administrator shall itself be obligated to maintain the confidentiality of the Confidential Information under applicable legal, regulatory, and/or existing contractual requirements; (iv) to a recipient's auditors or compliance professionals who are bound by an obligation of confidentiality requiring such persons (directly or as a matter of professional codes of conduct) to treat Confidential Information in accordance with the terms of this Agreement; (v) in the case of a monoline recipient, to its insurance regulators, to the extent such disclosure is requested or required by them or is determined by the monoline recipient to be advisable; (vi) subject to the following paragraph, as required by law, rule, regulation, or governmental, regulatory or self-regulatory body (including by deposition, interrogatory, request for documents, subpoena, civil investigative demand, legal, regulatory or similar process); provided, however, that the recipient shall provide the disclosing party with notice within five (5) business days of

receiving a request for disclosure, to the extent practicable and allowed by law, rule and regulation, of such requirement, and the recipient agrees to disclose only that portion of the Confidential Information that such recipient is required to disclose and to use commercially reasonable efforts to ensure that any Confidential Information so disclosed is accorded confidential treatment; or (vii) to use or disclose, as the case may be, Confidential Information in response to another Participating Party's unauthorized disclosure of Confidential Information, but only to the extent that the Participating Party making a disclosure in reliance upon this exception (a) believes, in its good faith judgment, that such disclosure is necessary to correct or clarify any misrepresentation created by such other Participating Party's breach of this Agreement, and (b) provides other Participating Parties with at least two calendar days' notice of its intent to disclose under this exception. Nothing in this Agreement shall prohibit Participating Parties from communicating with each other about information disclosed and proposals made in connection with any Individual Mediation carried out pursuant to this Agreement, subject to all applicable confidentiality restrictions.

Except as set forth in Section VI, all Confidential Information is privileged and inadmissible *for any purpose*, such as impeachment, under any applicable rule of evidence, statute or common law doctrine or in the Title III cases or Title VI actions and any other litigation or legal, administrative, or adversary proceeding, including any court or administrative or arbitral tribunal. Each Participating Party agrees (i) not to make any effort to compel any testimony, by discovery or otherwise, regarding any Confidential Information disclosed during the course of the mediation, and (ii) not to subpoena, in any proceeding, any Mediator or his/her notes or records created during any Individual Mediation carried out pursuant to this Agreement. Each Participating Party agrees it will never rely on or attempt to introduce into evidence, or use in any deposition or otherwise in discovery, any Confidential Information made or offered by a Participating Party during the course of the mediation, other than in connection with any enforcement of this Agreement. Notwithstanding anything else to the contrary contained herein, information, whether confidential or otherwise, that was not created solely for use in the mediation shall not be rendered inadmissible or nondiscoverable solely as a result of its use in the mediation.

As set forth in the Mediation Order, the Mediators shall not provide to the Court or any other court any information about the positions taken by parties, or the substance of the

8

mediation process, including any Confidential Information or any positions taken by parties during the mediation, and will not make any substantive recommendations to the Court with respect to resolution of the disputes that are the subject of the mediation; provided, however, that the Mediators may provide the Court with (i) information regarding the reasonableness of the fees and expenses of the Mediation Team's advisor(s) and the allocation of those fees and expenses among the issues mediated pursuant to this Agreement, (ii) information regarding alleged unauthorized disclosures of Confidential Information, and (iii) other information if all Participating Parties involved in the Individual Mediation consent to the Assigned Mediator(s) providing such information to the Court.

Confidential Information shall not include information (i) previously disclosed or known to a Participating Party, (ii) that was publicly disclosed in accordance with Section VI of this Agreement or that otherwise was or becomes available to the public other than as a result of a disclosure in violation of this Agreement, or (iii) that was or becomes available to the recipient or any of its representatives on a non-confidential basis from a source other than the disclosing party or its affiliates or their representatives and that, to the recipient's knowledge after reasonable inquiry, is not subject to an agreement of confidentiality with the disclosing party, and such information shall not, in any of the foregoing cases, be rendered confidential, inadmissible, or nondiscoverable solely as a result of its use in the mediation. Moreover, an expert who participates in the mediation is not disqualified from assisting a Participating Party or testifying as a witness in subsequent litigation on the same subject matter, provided that said expert complies with the confidentiality obligations hereunder.

Nothing in this Agreement imposes on any Participating Party any duty to any other Participating Party, individually or as a group, or to any other person or entity, except for contractual undertakings explicitly provided for under this Agreement; provided that, notwithstanding the foregoing, nothing in this Agreement shall impose any fiduciary duty on any Participating Party. No Creditor Party (as defined below) is an insider of the Government. Notwithstanding anything to the contrary in this Agreement, by entering into this Agreement, no Participating Party undertakes any duty to any person or entity to refrain from any transaction in any financial instrument, and it is acknowledged that any Participating Party may engage in such transactions as would be permitted absent this Agreement from time to time and at any time, subject to any applicable stay. In no event will any Participating Party be liable for any breach

of this Agreement by any other Participating Party or its Advisors; provided however, that nothing in this agreement shall prohibit any party from seeking, or the Court or the Mediation Team Leader from ordering, sanctions against another party for the unauthorized disclosure of Confidential Information. Nothing in this Agreement, including any duty of confidentiality, is intended to prevent any Participating Party from trading any securities (or derivatives of securities) issued by (a) the Government; (b) monoline insurers; or (c) any other entity to which the Confidential Information may relate.

V. **Public Statements**

The existence of the mediation process and any Individual Mediation shall be public. The Participating Parties, their Advisors, the Mediators, the Mediators' law clerks, and the Mediation Team's advisor(s) shall not make any public statements about the mediation process and any Individual Mediation or the outcome of any Individual Mediation except as the relevant parties may agree in writing. At any time during an Individual Mediation, the Assigned Mediator(s), after consultation with the Mediation Team Leader, shall have the right to publicly declare that Individual Mediation terminated or suspended.

No Participating Party shall be restricted at any time from disclosing publicly the occurrence of an Individual Mediation or its participation in, or withdrawal from, an Individual Mediation; provided, however, that no Participating Party may disclose any other Participating Party's participation in, or withdrawal from, any Individual Mediation. The Mediation Team Leader shall not be restricted at any time from disclosing publicly the occurrence of any Individual Mediation or the identity of the Assigned Mediator(s). No Participating Party shall disclose the existence or contents of this Agreement.

VI. **Disclosure**

A. **Effect of Prior Agreements on Disclosure**

No agreement entered into prior to the date hereof, by the Government, AAFAF, or the FOMB (each, a "Government Party") with any party other than a Government Party (a "Creditor Party") shall restrict such Government Party or such Creditor Party from disclosing information to the Mediators. The Mediators, the Mediators' law clerks, and the Mediation Team's advisor(s) shall have unrestricted access to any data room established by a Government

10

Party to which any Creditor Party (or any professional retained by a Creditor Party) has access. Such access to the data room shall not be monitored or recorded by any Government Party.

### B. Cleansing Disclosures

Upon the earliest to occur of (i) 45 days after the commencement of an Individual Mediation or such other date as is agreed to by all Participating Parties to an Individual Mediation, (ii) the Mediation Team Leader or the Court declaring an Individual Mediation to have been settled, terminated, or suspended, or (iii) any Government Party withdrawing from an Individual Mediation (the "Disclosure Time"), a Government Party shall within two business days disclose to the public in a written statement the following information about the Individual Mediation:

(a) the fact that the Individual Mediation occurred among the Participating Parties concerning a Potential Settlement, provided that any Participating Party that designates itself as an "ad hoc" group shall be identified as such without the identities of the individual holders but with the aggregate amount of holdings of debt owned or controlled by such "ad hoc" group;

(b) whether negotiations are or are not continuing concerning a Potential Settlement;

(c) if an agreement has been reached among any of the Participating Parties concerning the terms of a Potential Settlement, a detailed description of the terms;

(d) if an agreement has not been reached with any of the Participating Parties concerning the terms of a Potential Settlement

(i) the fact that such an agreement has not been reached, and

(ii) the last Proposal delivered by the Government or the FOMB (or its respective Advisors) to any Participating Party that memorializes the terms of a Potential Settlement; and

(e) any other Confidential Information disclosed by the Government (with respect to information disclosed by the Government or its Advisors) or the FOMB

11

(with respect to information disclosed by the FOMB or its Advisors) to the Participating Parties through the period ending on the Disclosure Time, to the extent not theretofore publicly disclosed, the possession of which would prohibit a Participating Party from buying, selling, or trading the securities of the Government (pursuant to United States Securities Laws or applicable blue sky laws) or which would otherwise constitute material non-public information ("MNPI),

with the information set forth in the foregoing clauses (a) through (e) referred to as the "Cleansing Material."

Additionally, in the event that, for any reason, the Individual Mediation continues beyond the Disclosure Time, and subject to the foregoing sentence, the Government shall disclose the Cleansing Material after the close of business on [each Friday] following the Disclosure Time; this sentence shall in no instance be deemed to limit or extinguish the Government's obligation to disclose the Cleansing Material at such time as is required by the preceding sentence or applicable law. The close of business on each subsequent Friday shall be deemed a Disclosure Time. If practicable, the Government Party will provide a description of the Cleansing Material that the Government Party intends to disclose to the Advisors of the Creditor Parties before the Disclosure Time, and, between such date and the Disclosure Time, the Government Party and Advisors to the Creditor Parties will attempt in good faith to resolve any disputes concerning the extent of Cleansing Information that the Government Party intends to disclose. All such disclosures shall be made after hours and the Government shall cause such disclosures to be posted on Electronic Municipal Market Access (https://emma.msrb.org/). Upon the disclosure of the Cleansing Material, the Confidential Information contained therein shall be deemed public and non-confidential. Cleansing Material will not include any Advisor Only Information, including any Proposals that remain Advisors'-eyes-only and were not disclosed to a Creditor Party.

C. **Creditor Disclosure Rights**

In the event that the Government shall fail to disclose any portion of Cleansing Material on or before the date that is two (2) business days following the Disclosure Time pursuant to the terms set forth herein, any Participating Party is authorized to disclose and make

generally available to the public through the issuance of a press release or similar form of public communication such Cleansing Material (the "Creditor Disclosure Right"); provided, however, that prior to exercising its Creditor Disclosure Right, the Participating Party shall provide the Government, the FOMB, and the Assigned Mediator(s) with (i) written notice of the Government's breach or failure to disclose the Cleansing Material pursuant to this Section VI, which notice shall include a description of the Cleansing Material the Participating Party intends to disclose and (ii) at least two (2) business days' notice of its intention to make such disclosure in order to permit the Government to make such disclosures (the "Cure Time"). During the Cure Time, the Government and the Participating Party and its Advisors shall attempt in good faith to resolve the Participating Party's objection. If the Government does not fully disclose all such Cleansing Material by the Cure Time, the Participating Party may, in its sole discretion, disclose and make generally available to the public through the issuance of a press release or similar form of public communication such Cleansing Material at any time after the Cure Time. The Government and each other Participating Party further agree and acknowledge that neither the Participating Parties and their Advisors, the Government Parties and their Advisors, nor the Mediators and their advisor(s), shall have any liability at law or equity for the disclosure of the Cleansing Material, in each case made in compliance with this Section VI.

Notwithstanding anything to the contrary in this Agreement, nothing herein shall be interpreted to mean that any Confidential Information or any other information necessarily constitutes MNPI for purposes of United States securities laws.

**VII.    Written Agreement**

Any resolution or partial resolution of a dispute mediated by a Mediator shall be reduced to writing and signed by the relevant parties. The Assigned Mediator(s) will assign one or more of the Participating Parties responsibility for documenting a Potential Settlement, but the Assigned Mediator(s) and the Mediation Team Leader will review any such documents to ensure that they contain the agreed upon terms. There is no resolution or partial resolution of a dispute without a signed writing memorializing the resolution.

**VIII. Disqualification of Mediators as Witnesses**

The Mediators are not necessary parties in any arbitral or judicial proceeding relating to the mediation or the Title III cases. No Mediator may be called as a witness in any pending or subsequent litigation or arbitration involving the Participating Parties and relating to the Title III cases.

If a Participating Party attempts to involve any Mediator in litigation relating to the mediation or to compel testimony or disclose information or documents relating to the mediation, such Participating Party agrees to pay all fees and expenses of that Mediator (including reasonable attorneys' fees) in resisting such efforts.

**IX. MNPI**

The Participating Parties agree that any discussion of public information, information that is not Confidential Information, or information that is not MNPI, in each case in a private forum, shall not by virtue of its discussion in a private forum be deemed MNPI or render such information MNPI.

The Participating Parties acknowledge that there are applicable securities laws or regulations that may, depending on the circumstances, prohibit the purchase and sale of securities by persons who possess MNPI.

**X. Good Faith Participation**

Participating Parties shall engage in the mediation in good faith. To the extent the Assigned Mediator(s) determines that a Participating Party is not engaging in the mediation in good faith, the Assigned Mediator(s) may excuse the Participating Party from further participation in an Individual Mediation or the mediation process in its entirety. If a Participating Party is excused from any portion of the mediation for its failure to participate in good faith, that Participating Party and its counsel shall meet with the Mediation Team Leader to discuss what caused the lack of good faith determination and whether the Participating Party wishes to re-engage in the mediation process.

No subpoenas, summons, complaints, citations, writs or other process may be served upon any person at or near the site of any mediation session upon any person's entering, attending, or leaving the session.

## XI. Withdrawal from the Mediation

The mediation is voluntary. Subject to any applicable provision in the Mediation Order or any subsequent order of the Court, a Participating Party may withdraw from the mediation process or any Individual Mediation at any time by providing written notice to the Mediation Team Leader and the other parties. Withdrawing parties remain subject to this Agreement unless they withdraw from the mediation process in its entirety, in which case they remain subject to Sections IV, VI, IX, and XI of this Agreement.

By executing this Agreement, each of the Participating Parties hereby consents to mediation, and agrees to be bound by the terms and conditions of this Agreement. Each person executing this Agreement represents that it has the authority to do so. For avoidance of doubt, each signatory to this Agreement will ensure that any non-signatory advisor or other person acting for or on behalf of the Participating Party understands and agrees to abide by the terms hereof.

## XII. Reservation of Rights

Participation in the mediation does not preclude a Participating Party from taking a position with respect to the issues subject to the mediation or any other matter. Nothing contained herein or otherwise shall operate to restrict, inhibit, limit, or prohibit any Participating Party or its Advisors from exercising any right or remedy available to it during the course of the mediation. Nothing in this Agreement shall be construed as a waiver of a Participating Party's rights under applicable law or contract, and all such rights and remedies are hereby reserved. Notwithstanding the forgoing, no Participating Party shall bring any claim arising from the mediation process against (a) any other Participating Party, and/or (b) any Mediator; provided, however, that a Participating Party's right to (i) enforce this Agreement, (ii) seek sanctions against any Participating Party (other than the Mediators) for the unauthorized disclosure of Confidential Information, and (iii) to assert its rights under PROMESA, are hereby reserved.

**XIII. Governing Law**

This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, excluding its choice-of-law principles.

**XIV. Prior Agreements**

This Agreement shall supersede any previous agreements between the Participating Parties relating to the confidentiality or conduct of any mediation proceedings or pre-mediation proceedings, except it shall not terminate any existing confidentiality or nondisclosure agreements between or among one or more Participating Parties or any confidentiality requirements of prior mediations. Otherwise, and except as provided in the first paragraph of Section VI, this Agreement shall be narrowly construed to avoid any conflict with any other agreement reached between or among the parties prior to the date of this Agreement. This Agreement may not be modified except in writing signed by all parties; provided, however, that, with the prior written consent of the Mediation Team Leader, any person may become a party to this Agreement and thus a Participating Party after the date that this Agreement is first executed by delivering an executed signature page hereto in form acceptable to the Mediation Team Leader. The Mediation Team Leader will provide a copy of any such additional executed signature page(s) to the Participating Parties.

*Signature Pages Follow*