# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## JOINT RESPONSE TO THE URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR EXPEDITED CONSIDERATION OF URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER BANKRUPTCY RULE 2004, AUTHORIZING DISCOVERY CONCERNING BOND TRADING

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III Case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as bankruptcy case numbers due to software limitations).

The Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debt Group"),[2] Ad Hoc Group of General Obligation Bondholders (the "GO Group"),[3] Lawful Constitutional Debt Coalition (the "LCDC"),[4] and QTCB Noteholder Group (the "QTCB Group"[5] and, collectively with the Constitutional Debt Group, GO Group, and LCDC, the "PSA Creditors")[6] hereby file this Joint Response to the *Urgent Motion of Official Committee of Unsecured Creditors for Expedited Consideration* (Dkt. No. 14603) (the "Scheduling Motion") filed by the Official Committee of Unsecured Creditors (the "UCC") in connection with the UCC's *Urgent Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery Concerning Bond Trading* (Dkt. No. 14601) (the "Rule 2004 Motion").[7] In support of their Joint Response, the PSA Creditors respectfully state as follows:

The UCC's Scheduling Motion requests that the Court expedite its consideration of the Rule 2004 Motion and establish a compressed briefing schedule, so that the Rule 2004 Motion may be heard at the upcoming October 28, 2020, omnibus hearing. As a threshold matter, the

---

[2] The members of the Constitutional Debt Group and their respective holdings are set forth in the *Eighth Supplemental Verified Statement of the Ad Hoc Group of Constitutional Debtholders Pursuant to Federal Rule of Bankruptcy Procedure 2019* (Dkt. No. 14520).

[3] The members of the GO Group and their respective holdings are set forth in the *Eighth Supplemental Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019* (Dkt. No. 14583).

[4] The members of the LCDC and their respective holdings are set forth in the *Eighth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* (Dkt. No. 14316).

[5] The members of the QTCB Group and their respective holdings are set forth in the *Sixth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant Bankruptcy Rule 2019* (Dkt. No. 13548).

[6] The PSA Creditors file this Joint Response exclusively on their own behalves and do not assume any fiduciary or other duties to each other or any other entity or individual.

[7] Defined terms not otherwise defined herein shall have the meaning ascribed to them in the Rule 2004 Motion.

UCC's Rule 2004 Motion is so facially meritless that the Court may wish to consider summarily denying it, thereby mooting the UCC's request for expedited consideration and sparing other parties in interest from the burden and expense of preparing full responses. Alternatively, the Court should deny the UCC's request for expedited treatment, which is based on a supposed exigency of the UCC's own making. Finally, if the Court is inclined to hear the Rule 2004 Motion at the October 28 omnibus hearing, it should reject the UCC's proposed briefing schedule, which would impose unfair prejudice on other parties in interest as a result of the UCC's lack of diligence and abuse of the urgent motion procedure.

1. The UCC's Rule 2004 Motion seeks leave to conduct an examination, under Bankruptcy Rule 2004, "from the Bondholder Groups concerning their trading of the Debtors' securities during the pendency of the Title III process." Rule 2004 Motion ¶ 4 (footnote omitted). The UCC's request is facially meritless, because the UCC does not articulate any reasons that would justify the requested relief under the governing legal standard. It would therefore be appropriate for the Court to summarily deny the Rule 2004 Motion, which would moot the UCC's request for expedited consideration.

The pertinent text of Rule 2004 provides that, "[o]n motion of any party in interest, the court *may* order the examination of any entity," Fed. R. Bankr. P. 2004(a) (emphasis added), with the scope of any such examination limited to certain specified subjects, see Fed. R. Bankr. P. 2004(b). Rule 2004's use of the word "may" is significant. The Supreme Court has repeatedly "emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016) (internal quotations marks omitted); see also, *e.g.*, *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1609 (2020); *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 346 (2005); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). Courts addressing motions

2

under Rule 2004 have routinely applied that basic principle, reasoning that, because "Rule 2004 provides that the Court 'may' order disclosure thereunder," it "giv[es] the Court significant discretion." *In re Board of Directors of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001); see also, *e.g.*, *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (Rule 2004's "permissive language" confers "discretion"); *In re French*, 145 B.R. 991, 993 (Bankr. D.S.D. 1992) ("complete discretion").

It is therefore incumbent upon a party seeking the Court's authorization for a Rule 2004 examination to offer reasons justifying a favorable exercise of the Court's discretion. The UCC's Rule 2004 motion, however, is entirely devoid of any such argument. The UCC adverts (Rule 2004 Motion ¶¶ 5-6) to the *Motion for Entry of an Order Directing an Independent Investigation* (Dkt. No. 14450) (the "Investigation Motion") filed by National Public Finance Guarantee Corporation ("National"), but it does not endorse National's baseless insinuations or suggest that they offer a basis for the requested examination under Rule 2004. The UCC likewise does not mention—let alone grapple with—the responses to National's Investigation Motion that were filed by the PSA Creditors, which explain in careful detail why the Investigation Motion does not even faintly suggest any misuse of confidential mediation information. *E.g.*, Dkt. No. 14556, at 2-5. In the end, the UCC observes (Rule 2004 Motion ¶ 12) that Rule 2004 discovery may be "expansive," but it does not offer a single reason to support a conclusion that the Rule 2004 examination it has proposed is appropriate and should be permitted to proceed.

That is no exaggeration: We are not suggesting that the UCC has advanced reasons that are meritless, or even insubstantial. Rather, even a casual review of the Rule 2004 Motion confirms that UCC has not supplied *any reasons at all*. Thus, even taking the UCC's Rule 2004

Motion entirely on its own terms, it fails on its face to articulate a coherent basis for granting the relief it requests under the governing legal standard.[8]

The facial insufficiency of the UCC's Rule 2004 Motion cannot be excused. The UCC is a ubiquitous participant in these Title III cases, and it is represented by experienced counsel who are well compensated at the Commonwealth's expense. Indeed, the UCC's legal and financial advisors have billed the Commonwealth for more than $88 million in total fees and expenses through May 31, 2020 (with more than $79 million of that total approved by this Court for payment). It is reasonable to expect the UCC's filings to articulate a coherent legal basis for the relief they request.

Under these circumstances, the Court may wish to deny the UCC's Rule 2004 Motion now, without requiring full responses to that motion from other parties in interest. The Court has not hesitated to follow that procedure when faced with clearly meritless motions.[9] Following the same approach here would moot the UCC's request for expedited consideration and would spare other parties in interest from the burden and expense of preparing and filing full responses to the UCC's Rule 2004 Motion.

2. If the Court does not summarily deny the Rule 2004 Motion, it should reject the UCC's request for expedited treatment. The UCC appears to contend (Scheduling Motion ¶ 10) that expedition should be granted so that its Rule 2004 Motion can be heard at the October 28 omnibus

---

[8] Tellingly, the UCC's Rule 2004 Motion contains no section labeled "Argument" or "Reasons for Requested Relief," as is customary in these Title III cases. Instead, the UCC merely notes its "Requested Relief" (Rule 2004 Motion 3), as though the UCC's *desire* for relief from the Court is itself a sufficient reason for granting it.

[9] See Dkt. No. 14452 (order summarily denying UCC's request for reconsideration of the Court's order continuing the stay of the UCC's objection to the priority status of the Commonwealth's general obligation bonds); Dkt. No. 12428 (order summarily denying request by Assured Guaranty Corp. and Assured Guaranty Municipal Corp. for relief from the Court's order imposing stay on certain contested matters and adversary proceedings).

4

hearing alongside National's Investigation Motion. No expedition is warranted, however, because the supposed exigency is attributable to the UCC's own lack of diligence.

Local Bankruptcy Rule 9013-1 provides, in pertinent part, that any motion seeking relief on an expedited basis must be accompanied by a certification verifying that the movant "has not created the urgency through any lack of due diligence." Local Bankr. R. 9013-1(a)(1)(B); see also Dkt. No. 13512-1, at ¶ III.F ("All requests for emergency or expedited relief shall comply with the applicable Local Bankruptcy Rule."). Although the UCC's Scheduling Motion recites compliance with that standard (see Scheduling Motion ¶ 11), the UCC's certification is inaccurate, and the request for expedition should accordingly be denied.

National's Investigation Motion was filed on October 5, 2020, the day before the deadline for filing motions to be heard on regular notice at the October 28 omnibus hearing. The UCC represents that, at the time the Investigation Motion was filed, the UCC "had already determined to conduct some form of limited investigation into the trading activities of the Bondholder Groups." Scheduling Motion ¶ 6; see also Rule 2004 Motion ¶ 7. If that representation is accurate, it is difficult to understand why the UCC was not already prepared at that time to file its Rule 2004 Motion. But even if one assumes that the inquiry into the UCC's diligence should be keyed to the filing of National's Investigation Motion, the UCC could—and should—have filed its request for authorization to proceed under Rule 2004 promptly thereafter. Indeed, given that the Rule 2004 Motion that the UCC ultimately filed is entirely bereft of reasons for authorizing the requested examination, see pp. 3-4, *supra*, it easily could have been filed the day after National's Investigation Motion, in time to be heard on regular notice at the October 28 omnibus hearing. At a minimum, the UCC should have filed its Rule 2004 Motion within days of National's filing.

5

But the UCC did not proceed diligently. Instead, it waited a full 11 days after the filing of National's Investigation Motion to file its own Rule 2004 Motion—after business hours on a Friday evening. Because of the UCC's dilatory conduct, there are just 7 business days left for briefing on the Rule 2004 Motion to be completed and for this Court to consider the Rule 2004 Motion in advance of the October 28 omnibus hearing.

The supposed exigency underlying the UCC's request for expedition is thus one of the UCC's own making. It could have been ameliorated, if not eliminated entirely, if the UCC had acted with appropriate diligence. The UCC therefore cannot justify the imposition on this Court and on other parties in interest that would be occasioned by the requested departure from the Court's ordinary case management procedures. The Scheduling Motion should accordingly be denied, and the Rule 2004 Motion should be heard on regular notice.

3. If the Court is inclined to hear the Rule 2004 Motion at the October 28 omnibus hearing, it should nonetheless reject the UCC's proposed briefing schedule, which calls for objections or responses to the Rule 2004 Motion to be filed by 6:00 p.m. (AST) on October 21, and for the UCC's reply to be filed by 10:00 p.m. (AST) on October 23. See Scheduling Motion ¶ 4.

If adopted by the Court, the UCC's proposal would prejudice other parties in interest, including the PSA Creditors, by truncating the period for preparing objections or responses to the Rule 2004 Motion by approximately two days as compared to the ordinary briefing schedule established by this Court's case management procedures. See Dkt. No. 13512-1, at ¶¶ III.G, III.I. As we have explained, however, the only exigency here is attributable the UCC's own lack of diligence. Thus, any adjustments to the ordinary briefing schedule that are required to enable a hearing on October 28 should not come at the expense of *other* parties in interest, who hold no share of the blame.

6

Instead, if the Court determines that the Rule 2004 Motion should be heard at the October 28 omnibus hearing, it should adopt a briefing schedule that affords other parties in interest at least the same time to prepare objections or responses as they would have had if the UCC's Rule 2004 Motion had been filed on regular notice. The deadline for responses or objections should therefore be set no earlier than 4:00 p.m. (AST) on Friday, October 23, 2020.

Although that deadline would likely be incompatible with the UCC filing a reply brief in sufficient time for this Court to give it deliberate consideration prior to a hearing on October 28, that is not a reason to truncate the period for preparing objections or responses. The Court could instead decline to entertain any reply brief from the UCC in support of its Rule 2004 Motion, as a sanction for the UCC's lack of diligence and its abuse of the urgent motion procedure.

\* \* \* \* \*

The Court may wish to consider summary denial of the Rule 2004 Motion. In the alternative, the Court should deny the UCC's request for expedited treatment. If the Court determines that the Rule 2004 Motion should be heard at the October 28 omnibus hearing, it should reject the UCC's proposed briefing schedule and instead adopt the alternative briefing schedule proposed above.

[*Signature pages follow.*]

7

Dated: October 18, 2020

**G. CARLO-ALTIERI LAW OFFICES, LLC**

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: */s/ Mª Mercedes Figueroa y Morgade*
Mª Mercedes Figueroa y Morgade
USDC PR No. 207108
Telephone: (787) 234-3981
figueroaymorgadelaw@yahoo.com

254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

Respectfully submitted,

**MORRISON & FOERSTER LLP**

By: */s/ Gary S. Lee*
Gary S. Lee (admitted *pro hac vice*)
James M. Peck (admitted *pro hac vice*)
Andrew Kissner (admitted *pro hac vice*)
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
glee@mofo.com
jpeck@mofo.com
akissner@mofo.com

*Counsel for the Ad Hoc Group of Constitutional Debtholders*

| | |
|---|---|
| /s/ Ramón Rivera Morales<br>J. Ramón Rivera Morales<br>USDC-PR Bar No. 200701<br>Andrés F. Picó Ramírez<br>USDC-PR Bar No. 302114<br>JIMÉNEZ, GRAFFAM & LAUSELL<br>P.O. Box 366104<br>San Juan, PR 00936<br>Telephone: (787) 767-1030<br>Facsimile: (787) 751-4068<br>Email: rrivera@jgl.com | /s/ Mark T. Stancil<br>Mark T. Stancil (admitted *pro hac vice*)<br>WILLKIE FARR & GALLAGHER LLP<br>1875 K Street, N.W.<br>Washington, DC 20006<br>Telephone: (202) 303-1133<br>Facsimile: (202) 303-2133<br>Email: mstancil@willkie.com |
| /s/ Andrew N. Rosenberg<br>Andrew N. Rosenberg (admitted *pro hac vice*)<br>Karen R. Zeituni (admitted *pro hac vice*)<br>PAUL, WEISS, RIFKIND, WHARTON<br>& GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Telephone: (212) 373-3000<br>Email: arosenberg@paulweiss.com | /s/ Lawrence S. Robbins<br>Lawrence S. Robbins (admitted *pro hac vice*)<br>Gary A. Orseck (admitted *pro hac vice*)<br>Donald Burke (admitted *pro hac vice*)<br>ROBBINS, RUSSELL, ENGLERT, ORSECK,<br>UNTEREINER & SAUBER LLP<br>2000 K Street, N.W., 4th Floor<br>Washington, DC 20006<br>Telephone: (202) 775-4500<br>Facsimile: (202) 775-4510<br>Email: lrobbins@robbinsrussell.com |

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

| | |
|---|---|
| **REICHARD & ESCALERA** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| By: */s/ Rafael Escalera* | |
| **Rafael Escalera** | **Susheel Kirpalani** (*pro hac vice*) |
| USDC No. 122609 | susheelkirpalani@quinnemanuel.com |
| escalera@reichardescalera.com | |
| | **K. John Shaffer** (*pro hac vice*) |
| | johnshaffer@quinnemanuel.com |
| **Sylvia M. Arizmendi** | |
| USDC-PR 210714 | **Daniel Salinas** |
| arizmendis@reichardescalera.com | USDC-PR 224006 |
| | danielsalinas@quinnemanuel.com |
| **Carlos R. Rivera-Ortiz** | |
| USDC-PR 303409 | **Eric Kay** (*pro hac vice*) |
| riverac@reichardescalera.com | erickay@quinnemanuel.com |
| | **Zachary Russell** (*pro hac vice*) |
| 255 Ponce de León Avenue | zacharyrussell@quinnemanuel.com |
| MCS Plaza, 10th Floor | |
| San Juan, Puerto Rico 00917-1913 | 51 Madison Avenue, 22nd Floor |
| | New York, New York 10010-1603 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

| | |
|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP** | **CORREA-ACEVEDO & ABESADA LAW OFFICES, PSC** |
| */s/ Kurt A. Mayr* <br> Kurt A. Mayr (admitted pro hac vice) <br> David L. Lawton (admitted pro hac vice) <br> Shannon B. Wolf (admitted pro hac vice) <br> One State Street <br> Hartford, CT 06103-3178 <br> Tel. (860) 240-2700 <br> Fax: (860) 240-2701 <br> kurt.mayr@morganlewis.com <br> david.lawton@morganlewis.com <br> shannon.wolf@morganlewis.com <br><br> Sabin Willett (admitted pro hac vice) <br> One Federal Street <br> Boston, MA 02110-1726 <br> Tel: (617) 951-8775 <br> sabin.willett@morganlewis.com | Sergio Criado <br> USDC-PR No. 226307 <br> Roberto Abesada-Agüet <br> USDC-PR No. 216706 <br> Centro Internacional de Mercadeo, Torre II <br> # 90 Carr. 165, Suite 407 <br> Guaynabo, P.R. 00968 <br> Tel. (787) 273-8300 <br> Fax (787) 273-8379 <br> ra@calopsc.com <br> scriado@calopsc.com |

*Co-Counsel for the QTCB Noteholder Group*

11