UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

              Debtors.[1]

-----------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

<u>NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT</u>

      The Court has received and reviewed the attached correspondence, described below, from interested persons in the above-captioned cases. Although the Court cannot respond individually to all of those who have expressed their thoughts or concerns, the Court is deeply mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the importance of the issues that are raised in these unprecedented cases.

1.     Letter dated October 5, 2020 from Gregory Moore.
2.     Letter dated October 8, 2020 from Gregory Moore.

Dated: October 19, 2020

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

October 5, 2020

Honorable Laura Taylor Swain

Dear Judge Swain:

I write to propose an alternative to the PRIDCO RSA which exchanges $165M in PRIDCO Bond principle and accrued but unpaid interest thereon through the Closing Date for New Bonds at a 94% exchange rate with a 7.25% coupon.
The New Bonds pay only interest until Feb 1, 2022 when first principal payment will be made, 2 years interest only (assumed taxable).
Maturity August 1, 2039 if taxable
The RSA also has a 2% Consent fee of the outstanding Bonds held by a Supporting Bondholders due at the Closing Date.   In my view most Bondholders will consent and have a 96% return with 2% being cash.

PRIDCO RSA

$165M Exchange at 94% equals $155M in New Bonds with 7.25% Coupon pays $11.24M interest a year for first two years ($11.24*2=$22.48).
$155+$11.24+$11.24= $177.48M   cost with interest for the first two years of New Bonds
$2M for invoiced fees and expenses for RSA
Consent fee 2% of outstanding Bonds- Maximum cost $165M at 2%= $3.3M
Cost to the Commonwealth of PR at end of first two years $183M
Cost to the Commonwealth of PR at the end of 20yrs around $307M
       $7.782M*36 payments over 18 years=$280M
       $5.622M*4   payments over 2 years interest only=$22.49
       $3.3M     Consent Fee 2% Maximum cost on $165M= $3.3M
       $2M       Invoiced Fees and expenses = $2M
Total Cost to Puerto Rico around   $307M

Alternative Proposal using Redemption Provision

Terminate the PRIDCO RSA
Use the Redemption Provisions to Redeem PRIDCO Bonds on January 1, 2021
Optional Redemption Price 100% 2003 PRIDCO Bonds    July 1, 2013
Optional Redemption Price 100% 1997A PRIDCO Bonds  July 1, 2009
Optional Redemption Price 100% 1997B PRIDCO Bonds  July 1, 2009

Cost to Redeem PRIDCO Bonds plus accrued interest at redemption date of $165M is $165M at 100% Redemption Price.
After redemption PRIDCO has no Bonds and PRIDCO excess cash can then flow into the Commonwealth Treasury TSA account. Instead of $15.564M going to Bondholders for 18yrs and $22.49M going to

Bondholders for interest the first two years this Cash could instead flow into the TSA account at the PR Treasury, in fact paying the Treasury back the $165M used to redeem the PRIDCO Bonds over time.

$307M cost of RSA less Redemption option cost of $165M = $142M in savings going to the TSA

Redemption removes PRIDCO Bonds from the Commonwealth books and can be completed after thirty days prior notice.
If Notice is sent out in October for a January 1, 2021 redemption date, the PRIDCO Bonds would be redeemed and in 2021 PRIDCO excess cash would be flowing into the TSA account.
All PRIDCO Bondholders will receive a redemption price of 100% and all accrued interest to the redemption date and the Commonwealth will save around $142M in cash over the PRIDCO RSA

TSA account as of September,18 2020 show TSA plus sweep account balance $9.427 Billion
TSA account also show Plan Cash Balance $7.791 Billion, TSA account is around 21% over($1.636B) LP Bank Cash Balance.
As of 8/31/2020 the Bank Account Balances for the Government of PR - $20.654 Billion

The $165M cost to redeem all PRIDCO Bonds is less than 1.8% of TSA account cash with sweep account ($9.427B).

In my opinion PRIDCO should be sending its excess cash to the TSA account at the Treasury so that the excess cash can be put to work for the benefit of the people of Puerto Rico

PRIDCO Bonds redeemed at 100% is a full loaf of bread

On January 1, 2021 PRIDCO Bonds could be redeemed in full using the Redemption Provisions

For your consideration,

Gregory Moore

Attachments

Exhibit A- Restructuring Term Sheet PRIDCO

Bank Account Balances as of 8/31/2020 for the Government

Executive Summary as of 8/31/2020 for the Government

Puerto Rico Department of Treasury, Executive Summary-TSA Cash Flow Actual Results Sept 18, 2020

Puerto Rico Department of Treasury, YTD TSA Cash Flow Summary -Actual vs LP Sept 18, 2020

MSRB Cover Sheet, list of CUSIP numbers of PRIDCO BONDS, Eight CUSIPS

Redemption Provisions Series 2003, Series 1997A and Series 1997B

## EXHIBIT A

**Restructuring Term Sheet**

**EXHIBIT A**
**Restructuring Support Agreement**

**Puerto Rico Industrial Development Company**

**OUTLINE OF TRANSACTION STRUCTURE FOR RESTRUCTURING OF PRIDCO
LIABILITIES**

This term sheet (the "Term Sheet") is a summary of certain material indicative terms and conditions for a proposed financial restructuring of certain financial obligations of the Puerto Rico Industrial Development Company ("PRIDCO") through a Qualifying Modification pursuant to Title VI of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA").[1]

This Term Sheet outlines certain terms and conditions of the potential Transaction (as defined below), but is not intended to represent all of the terms and conditions of the potential Transaction. Each party acknowledges that such terms and conditions may be modified, and other terms and conditions may be added, in the course of the negotiation of definitive documentation. This preliminary summary of proposed terms does not constitute a binding agreement of any party, shall not obligate any party to negotiate or enter into any agreement with respect to any Transaction and shall not be construed as an offer to buy or sell securities in any jurisdiction, and in any event is subject to the terms and conditions hereof, including, without limitation, requisite approvals under PROMESA and execution and delivery of definitive agreements.

| Obligations to be Restructured | The revenue bonds (the "Bonds" and the holders of such Bonds, the "Bondholders") issued by PRIDCO pursuant to that certain Trust Indenture, dated July 1, 1964, by and between PRIDCO and First National City Bank, as trustee (the "Trust Indenture"), with a total outstanding amount (including principal and interest) of approximately $165 million as of the date of the RSA (as defined below). For the avoidance of doubt, the term "Bonds" includes principal and accrued but unpaid interest thereon through the Closing Date (as defined below). |
|---|---|
| Transaction | PRIDCO and the Bondholders will undertake a financial restructuring of the Bonds through a Qualifying Modification implemented under Title VI of PROMESA on the terms and conditions set forth herein (the "Restructuring"). Pursuant to such Qualifying Modification, on the date on which the conditions described under "Conditions" below have all been satisfied or waived by the RSA Requisite Bondholders (as defined below) (the "Closing Date"): |
|  | i. all Bondholders will exchange their Bonds for their pro rata share of (a) new special revenue bonds (such bonds, the "New Bonds"); |
|  | ii. PRIDCO will transfer the SPV Assets to the Issuer (each as defined below) in consideration for the Issuer's issuance of the New Bonds. |

---

[1] The parties reserve the right to seek to effectuate the Transaction pursuant to section 207 of PROMESA on the same terms and conditions set forth herein (except those conditions only applicable to Title VI of PROMESA).

| | |
|---|---|
| **Issuer of New Bonds** | *Special Purpose Bankruptcy Remote Entity.* The issuer of the New Bonds (the "<u>Issuer</u>") shall be a new wholly owned subsidiary of PRIDCO. The Issuer shall be, to the maximum extent permitted by law, bankruptcy remote, including by providing that authorization to commence any Insolvency Proceeding (as defined below) shall require the approval of all members of the Issuer's board of directors, who shall be independent, and that the Issuer shall be and remain substantially free in perpetuity of operations and liabilities other than those arising directly from ownership of the SPV Assets. The organizational documents for the Issuer shall be in form and substance satisfactory to the Government Parties and the RSA Requisite Bondholders and shall contain customary single purpose provisions and separateness covenants. |
| | *Trustee for New Bonds.* An indenture trustee (the "<u>Trustee</u>") selected by the Government Parties in consultation with the RSA Requisite Bondholders will act for the benefit of holders of New Bonds. Upon the issuance of the New Bonds, the Trustee will be granted a lien on the New Bond Collateral (as defined below) for the benefit of the holders of New Bonds. The trustee (or, if necessary, a designated calculation agent or other service provider for certain tasks the trustee is unable or unwilling to perform) will perform administrative functions for the Issuer customary for transactions of this type. The definitive documents shall provide that the Trustee may be removed (i) at any time upon 30 days' written notice by Bondholders holding at least 25% in aggregate principal amount of the New Bonds (unless otherwise directed by a majority of the New Bonds), or (ii) at any time for cause. |
| | *Asset Manager.* The assets of the Issuer will be managed by a designated real estate asset manager or servicer (the "<u>Asset Manager</u>") pursuant to a management and servicing agreement with the Issuer (the "<u>Servicing Agreement</u>"). The identity of the Asset Manager and terms of the initial Servicing Agreement (including compensation) shall be acceptable to the Government Parties and the RSA Requisite Bondholders. Subject to the rights of the trustee to replace the Asset Manager described below under "Events of Default," changes to the identity of the Asset Manager or Servicing Agreement shall require the approval of the board of the Issuer. PRIDCO, AAFAF and the RSA Requisite Bondholders shall establish a mutually acceptable process to obtain proposals from potential qualified parties to act as the Asset Manager, and the RSA Requisite Bondholders and Trustee shall be provided access to all proposals obtained in such process. |
| **Terms of New Bonds** | *Exchange Ratio* |
| | For each $1,000 of Bonds held by a Bondholder, such Bondholder shall receive New Bonds having a face amount equal to $940. |
| | *Security* |
| | The New Bonds will be secured by the following (collectively, the "**New Bond Collateral**"): |
| | (i) a perfected first priority lien on and a pledge of all leases and the Revenues, including a pledge of and an assignment of the leases and the rental income associated with the SPV Assets; and |

(ii) a perfected first priority lien and security interest in all accounts into which Revenues are deposited.

The pledge of the Revenues shall be structured to ensure, to the maximum extent permitted by law, that the New Bonds will be "special revenue bonds" for purposes of Chapter 9 of the United States Bankruptcy Code, and all Revenues shall be deposited directly into accounts constituting New Bond Collateral. PRIDCO shall be responsible for the payment of any taxes, stamp fees and similar costs in connection with the grant, release or modification of the liens contemplated hereby. For the avoidance of doubt, the New Bonds shall have recourse to the Issuer and to the New Bond Collateral, but not PRIDCO.

*Interest*

Interest will be fixed at 7.25% if taxable; 5.75% if tax-exempt

*Maturity*

August 1, 2039 if taxable (18 years level-pay following interest-only period payments pursuant to the Principal Payment Moratorium (as defined below)); August 1, 2034 if tax-exempt (13 years level-pay following interest-only payments pursuant to Principal Payment Moratorium)

*Payment Moratorium*

No principal will be paid on the Bonds prior to February 1, 2022 (the "Principal Payment Moratorium"). For the avoidance of doubt, the first principal payment on the Bonds shall be made on February 1, 2022.

*Payments of New Bonds*

The definitive documents governing the New Bonds will require the Issuer to distribute all Revenues in accordance with the Payment Waterfall (each as defined below) on each February 1 and August 1 (each, a "Payment Date"); *provided that* if on any "Determination Date" (a date not more than 10 business days prior to the related Payment Date), Revenues are not sufficient to pay in full all principal and interest then payable on the New Bonds, payments shall be made in accordance with the Payment Waterfall to the extent of available Revenues and (x) any principal not paid in cash shall be deferred and will continue to accrue interest and (y) payment of any accrued interest not paid in cash shall be made in kind by being capitalized as additional principal. Any deferred principal or principal constituting capitalized interest shall be due on the immediately following Payment Date (subject to the above provisions if Revenues are then insufficient to make all payments in cash).

*Rounding*

The aggregate principal amount of New Bonds issued to each Bondholder will be rounded up, if necessary, to $1 or the nearest whole multiple of $1 in excess thereof. This rounded amount will be the principal amount of New Bonds a Bondholder will receive.

| **Payment Waterfall** | On each Payment Date, Revenues shall be distributed as follows (subject to the Remedies (as defined below)): |

| | |
|---|---|
| | *First*, to the payment of (a) the Servicing Fee in an amount equal to a percentage of the Servicing Fee acceptable to the RSA Requisite Bondholders and (b) the reasonable operating expenses of the Issuer (X) as set forth in an initial five-year budget (subject to reasonable variance) acceptable to RSA Requisite Bondholders, and (Y) after five years, as set forth in an annual budget (subject to reasonable variance) acceptable to the Issuer's board of directors. |
| | *Second*, to all interest then due and payable on the New Bonds in accordance with the schedule set forth on <u>Exhibit 1</u> (including any past-due amounts or additional interest resulting from previously deferred or capitalized amounts); |
| | *Third*, to principal payments then due and payable on the New Bonds in accordance with the schedule set forth on <u>Exhibit 1</u>, mandatory principal prepayments and/or mandatory redemptions applicable to the New Bonds and due and payable on such Payment Date (including any past-due, previously deferred or previously capitalized amounts, and any accelerated principle amounts); |
| | *Fourth*, to fund capital expenditures (X) as set forth in an initial five-year budget (subject to reasonable variance) acceptable to RSA Requisite Bondholders, and (Y) after five years, as set forth in an annual budget (subject to reasonable variance) acceptable to the Issuer's board of directors; |
| | *Fifth*, to a debt service reserve account, the amount, if any, required to fund such account to levels set forth on <u>Exhibit 1</u> hereto; |
| | *Sixth*, to the payment of the remainder of the Servicing Fees not paid pursuant to clause First above; and |
| | *Seventh*, all funds then available after application of funds for the purposes specified in steps First through Sixth above shall be released to PRIDCO, including to pay current liability due and owing under Joint Resolution 188 and Act 106-2017 and other reasonable and documented operating expenses of PRIDCO. |
| | For the avoidance of doubt, except upon maturity or acceleration, distributions of Revenues shall be permitted only on a Payment Date. |
| **Events of Default** | "<u>Events of Default</u>" in respect of the New Bonds shall include the following:<br><br>• Failure to make payments or distributions to the extent, and on the dates on which, the same are due in accordance with the Payment Waterfall, or any other failure to comply with, the Payment Waterfall;<br><br>• Any insolvency, bankruptcy, reorganization, restructuring, receivership any other form of debtor relief, or any moratorium or similar law or governmental order (each an "<u>Insolvency Proceeding</u>") is sought by, or imposed upon, the Issuer, as applicable, whether under federal or Puerto Rico law; and<br><br>• Other customary events of default. |

4

| Remedies | The definitive documents will include the following remedies (the "**Specified Remedies**"), each of which may be elected by the Trustee, at the direction of holders of at least 25% in aggregate principal amount of all New Bonds (such holders, the "**Electing Holders**") following an Event of Default (and the applicable cure period). Electing Holders may elect Specified Remedies following an Event of Default by (i) delivery of notice to the Issuer (such notice, a "**Default Notice**") setting forth the applicable Event(s) of Default (the "**Triggering EODs**") and, (ii) after the applicable cure period set forth below has passed, by delivery of notice to the Issuer (such notice, a "**Remedies Election Notice**") of the Specified Remedies elected.   (For avoidance of doubt, Electing Holders may elect more than one Specified Remedy by delivery of a single Remedies Election.)   Requisite New Bondholders may rescind or alter and otherwise control any Remedies Election in whole or in part at any time. |
|---|---|
| | *Asset Manager* |
| | Electing Holders may direct the Trustee to replace the Asset Manager if the Triggering EODs are not cured within 30 days after delivery of the Default Notice or upon acceleration of the New Bonds.  Such replacement Asset Manager must be a qualified and independent successor Asset Manager of recognized national standing with the requisite expertise and Spanish-speaking capability. |
| | *Payment Waterfall* |
| | Electing Holders may direct the Trustee to elect, by notice to the Asset Manager, to have all Revenues (as defined below) remaining after application of funds for the purposes specified in steps First through Fourth of the Payment Waterfall above applied as mandatory prepayments of principal (with the Applicable Premium) if all Triggering EODs have not been cured within 30 days after delivery of the Default Notice or upon acceleration of the New Bonds; *provided that* if at any time following delivery of the Remedies Election, all Triggering EODs have been cured and no Acceleration has been elected (and not rescinded), on the immediately following Payment Date, Revenues will be distributed in accordance with the original Payment Waterfall (*i.e.*, Revenues will be applied for the purposes specified in steps First through Seventh). |
| | *Acceleration* |
| | Electing Holders may direct the Trustee to accelerate the New Bonds if the Triggering EODs are not cured within 45 days after delivery of the Default Notice; *provided that* the New Bonds shall be accelerated automatically (i) in connection with any Insolvency Proceeding, or (ii) upon any failure to (A) deposit all Revenues in designated, controlled accounts or (B) apply Revenues strictly in accordance with the Payment Waterfall, in either case, if such failure is not cured within 5 business days of its occurrence. |
| | For the avoidance of doubt, failure to make a scheduled payment of principal or interest in accordance with the Payment Waterfall prior to maturity due to a shortage of available Revenues does not give rise to an Event of Default and the right to exercise Remedies, including acceleration. |

5

| | |
|---|---|
| | *Other Remedies* |
| | In addition to the Specified Remedies, Electing Holders may direct the Trustee and the Trustee shall be entitled to initiate proceedings to enforce any other proper remedy or legal or equitable right vested in the Trustee by the Indenture, other definitive documents, or by law, subject to grace and cure period to be mutually agreed upon. |
| **Certain Defined Terms** | "<u>Revenues</u>" means all assets, collections, fees, charges, proceeds, revenues, rents, insurance claims proceeds, income or other funds generated by, or received by the Issuer, any Asset Manager or PRIDCO in respect of, the SPV Assets. |
| | "<u>Government Parties</u>" means, collectively, AAFAF and PRIDCO. |
| | "<u>Requisite New Bondholders</u>" means, at any time after consummation of the Restructuring, holders of a majority in principal amount of New Bonds. |
| | "<u>RSA Requisite Bondholders</u>" means, as of the date of determination, Supporting Bondholders collectively holding at least a majority of the outstanding principal amount of the Bonds held by the Supporting Bondholders. |
| | "<u>Servicing Fee</u>" means a percentage to be agreed upon by the Government Parties and the RSA Requisite Bondholders of all the Revenues that accrued from the last Payment Date. |
| | "<u>SPV Assets</u>" shall include all legal and equitable right, title and interest in the Trusteed Properties (as defined in the Trust Indenture).[2] |
| | "<u>Supporting Bondholders</u>" means the holders of the Bonds that are party to the RSA (as defined below). |
| **Covenants** | The indenture for the New Bonds (the "<u>Indenture</u>") shall contain covenants in form and substance acceptable to the RSA Requisite Bondholders, including covenants regarding the Asset Manager, information, budgeting, collateral management, negative pledge (which, for the avoidance of doubt, shall prohibit the grant of any lien or other encumbrance on the SPV Assets, other than the liens and encumbrances securing the New Bonds), further assurances, permitted business activities, limitation on assets sales, limitation on investments and other customary covenants. |
| **Redemption** | The Indenture for the New Bonds shall include customary voluntary and mandatory redemption provisions, including in connection with casualty and condemnation events and asset sales. The Applicable Premium shall be due and payable upon (i) any voluntary redemption, including through asset sales as discussed below, or (ii) any recovery or payment after the occurrence of an Event of Default and acceleration (including any automatic acceleration in connection with an Insolvency Proceeding). Without limiting the foregoing, such documents shall provide for disposition of the proceeds of |

---

[2] SPV Assets to be scheduled, together with appraised value and/or annual rent revenue, and subject to confirmation and approval by RSA Requisite Bondholders.

|  | assets sales through the following mechanism: Seventy-five percent (75%) of the proceeds of assets sales (net of commissions payable to the Asset Manager) shall be used to repay the New Bonds at par plus Applicable Premium, and the remaining proceeds shall be released to PRIDCO; *provided that* if at any time asset sales are necessary to fund scheduled payments of interest or principal, then the Asset Manager may sell assets to the extent necessary to fund such scheduled payments, and all excess proceeds shall be deposited to the debt service reserve account until such account is funded in an amount equal to one year of interest and principal payments on the New Bonds, and any remaining proceeds shall be applied as payments of principal with no Applicable Premium thereon; *provided further* if any asset sale is conducted before the debt service reserve account is initially funded in accordance with <u>Exhibit 1</u>, all sale proceeds shall be used to either pay scheduled debt payments and/or deposited to the debt service reserve account.

"<u>Applicable Premium</u>" means (i) for the first ten (10) years following the Closing, an amount equal to 5.0% of the principal amount of New Bonds redeemed and (ii) for the ten (10) years thereafter, reduced by .5% annually (i.e., the Applicable Premium for New Bonds redeemed 20 years after Closing shall be 0%). |
|---|---|
| **Board of Directors** | The Issuer shall be managed by a board of directors to be composed of three members selected by the Governor, in the Governor's sole discretion, and pursuant to independence and qualification standards set forth in the definitive documents, including that no member of the board may be an officer, employee or director of any the government of Puerto Rico or any instrumentality thereof (other than the Issuer).  The Supporting Bondholders may propose candidates for the Governor's consideration. |
| **Economic Development Leases** | In light of the mission of PRIDCO, certain leases to be definitively identified prior to the Closing Date have been entered into for economic development purposes.  Such leases may not be terminated or amended without the consent of the Government Parties, which consent shall not be unreasonably withheld in the event the Asset Manager proposes to terminate or amend such a lease. |
| **Restructuring of Additional PRIDCO Debts** | The Government Parties reserve the right to restructure additional PRIDCO debts under the Qualifying Modification and classify such debt as Bond Claims (as defined in PROMESA) in a separate Pool (as defined in PROMESA) from the Bonds. (For the avoidance of doubt, no other PRIDCO debt, including any additional restructured PRIDCO debt, will be granted any interest in or recourse to the Issuer, the Revenues, or any SPV Assets without consent of RSA Requisite Bondholders).  The Supporting Bondholders agree not to object to the treatment of such Bond Claims provided that the Qualifying Modification restructures the Bonds on the terms set forth herein and is not otherwise adverse to the New Bonds. |
| **Certification Order** | The Government Parties shall submit an application to the United States District Court for the District of Puerto Rico (or any other court of competent jurisdiction pursuant to PROMESA) for an order pursuant to section 601(m)(1)(D) of PROMESA that the requirements of section 601 of |

<table>
<tr><td></td><td>PROMESA have been satisfied by the Qualifying Modification as set forth herein (the "<u>Certification Order</u>"), which order shall be in form and substance reasonably acceptable to the RSA Requisite Bondholders, and shall provide, among other things, that the Qualifying Modification is valid and binding in accordance with PROMESA section 601(m)(2). The proposed Certification Order shall further provide, to the maximum extent permitted by law, for the transfer of the SPV Assets to the Issuer free and clear of all liens, claims and interests, and that the pledge of the Revenues constitute "special revenue bonds" for purposes of Chapter 9 of the United States Bankruptcy Code.</td></tr>
</table>

| **Conditions** | Conditions precedent to the Closing Date shall include, but not be limited to, the following: |
|---|---|

- Certification of the Transaction as a Qualifying Modification pursuant to section 601(g) of PROMESA, in form and substance reasonably acceptable to the RSA Requisite Bondholders;

- Establishment of one or more Pools of Bond Claims (as defined in PROMESA) by the Financial Oversight and Management Board for Puerto Rico in accordance with the requirements of section 601(d)(3) of PROMESA and reasonably acceptable to the RSA Requisite Bondholders;

- Distribution of the required disclosure documents and voting instructions, both in form and substance reasonably acceptable to the Requisite RSA Bondholders, to the Holders by the Information Agent (as defined in PROMESA) pursuant to section 601(f) and (k) of PROMESA;

- Satisfaction of the voting requirements set forth in section 601(j) of PROMESA with respect to the Qualifying Modification;

- Certification, in form and substance reasonably acceptable to the RSA Requisite Bondholders, pursuant to section 601(m) of PROMESA that (i) voting requirements have been satisfied, (ii) the Qualifying Modification complies with section 104(i)(1) of PROMESA, and (iii) any conditions on the effectiveness of the Qualifying Modification have been satisfied or waived;

- Entry of the Certification Order;

- The Issuer shall have been created pursuant to governing documents;

- The Trust Agreement and Servicing Agreement shall have been executed and delivered, in form and substance satisfactory to the Government Parties and the RSA Requisite Bondholders, and shall be in full force and effect;

- All other definitive documents shall have been executed and delivered in form and substance satisfactory to the Government Parties and the RSA Requisite Bondholders, and shall be in full force and effect; and

- Payment in full of all reasonable invoiced fees and expenses incurred up to and including the Closing Date of (a) Latham and Watkins LLP

|  | ("Latham"), (b) one local counsel in each relevant jurisdiction, (c) one financial advisor, investment banker, or real estate advisor, and (d) any other advisors as agreed between the parties hereto, in each case in their capacities as advisors to the RSA Requisite Bondholders ((a) through (d) above collectively the "RSA Requisite Bondholder Advisors") related to the Restructuring, in an amount not to exceed two million dollars ($2,000,000) in the aggregate, inclusive of any such fees and expenses paid pursuant to the RSA provisions below. |
|---|---|
| **Releases** | To the extent permitted by applicable law, the Transaction shall provide for customary releases from the Government Parties and the Supporting Bondholders (solely in their capacity as creditors of PRIDCO and not in their capacity as creditors of any other entity), in form and substance reasonably satisfactory to the RSA Requisite Bondholders, for the benefit of each other and each of their respective current and former directors, managers, officers, affiliates, partners, subsidiaries, principals, employees, agents, managed funds, representatives, attorneys, and advisors, together with their successors and assigns. |
| **Governing Law** | The definitive documentation will be governed by and construed and interpreted in accordance with the laws of the Commonwealth of Puerto Rico applicable to contracts executed and to be performed therein. |
| **Jurisdiction** | All disputes arising in connection therewith will be adjudicated exclusively in federal or commonwealth courts located in Puerto Rico and each party will waive any right to a trial by jury. |
| **RSA** | The Term Sheet shall be annexed to a restructuring support agreement by and between PRIDCO and the Supporting Bondholders (the "RSA"), which shall be in form and substance acceptable to the parties thereto. The RSA shall provide for, among other things:<br><br>• Payment at closing of the reasonable and documented invoiced fees and expenses of Latham and the other RSA Requisite Bondholder Advisors (if any at such time) related to the Restructuring, whether incurred prior to or after execution of the RSA, up to a cap of two million dollars ($2,000,000).<br><br>• Payment on the Closing Date to the Supporting Bondholders of a consent fee in cash equal to 2% of the outstanding Bonds held by the Supporting Bondholders. |
| **Bonds Reserve Account** | On or before the Closing Date, all funds held in the reserve account for the existing Bonds will be distributed first to pay all accrued fees and expenses of the trustee for the Bonds and thereafter to repay the Bonds (reducing the aggregate outstanding amount of Bonds to be restructured hereunder). |

# EXHIBIT 1

**Puerto Rico Industrial Development Company**
**Debt Service Schedule (Revised for Term Sheet)**
**($000)**

---

**Principal and Interest Requirements on the Bonds**

---

*Exhibit 1: Exchange ratio at 94, interest at 7.25%, 20-year life, 2-years interest only (assumed taxable)*

| | Exhibit 1: Debt Service (if taxable) | | | | Exhibit 2: Debt Service Reserve Requirement (if taxable) | |
| --- | --- | --- | --- | --- | --- | --- |
| **Payment Date** | **Principal** | | **Interest** | **Total Debt Service** | **Payment Date** | **Total DSRF** |
| 8/1/2019 | $ | - | $ - | $ - | Closing | $ 5,822 |
| 2/1/2020 | $ | - | $ 5,622 | $ 5,622 | 2/1/2020 | $ 6,747 |
| 8/1/2020 | $ | - | $ 5,622 | $ 5,622 | 8/1/2020 | $ 7,871 |
| 2/1/2021 | $ | - | $ 5,622 | $ 5,622 | 2/1/2021 | $ 8,996 |
| 8/1/2021 | $ | - | $ 5,622 | $ 5,622 | 8/1/2021 | $ 10,723 |
| 2/1/2022 | $ | 2,160 | $ 5,622 | $ 7,782 | 2/1/2022 | $ 12,451 |
| 8/1/2022 | $ | 2,238 | $ 5,544 | $ 7,782 | 8/1/2022 | $ 15,564 |
| 2/1/2023 | $ | 2,319 | $ 5,463 | $ 7,782 | 2/1/2023 | $ 15,564 |
| 8/1/2023 | $ | 2,403 | $ 5,379 | $ 7,782 | 8/1/2023 | $ 15,564 |
| 2/1/2024 | $ | 2,490 | $ 5,292 | $ 7,782 | 2/1/2024 | $ 15,564 |
| 8/1/2024 | $ | 2,580 | $ 5,202 | $ 7,782 | 8/1/2024 | $ 15,564 |
| 2/1/2025 | $ | 2,674 | $ 5,108 | $ 7,782 | 2/1/2025 | $ 15,564 |
| 8/1/2025 | $ | 2,771 | $ 5,011 | $ 7,782 | 8/1/2025 | $ 15,564 |
| 2/1/2026 | $ | 2,871 | $ 4,911 | $ 7,782 | 2/1/2026 | $ 15,564 |
| 8/1/2026 | $ | 2,975 | $ 4,807 | $ 7,782 | 8/1/2026 | $ 15,564 |
| 2/1/2027 | $ | 3,083 | $ 4,699 | $ 7,782 | 2/1/2027 | $ 15,564 |
| 8/1/2027 | $ | 3,195 | $ 4,587 | $ 7,782 | 8/1/2027 | $ 15,564 |
| 2/1/2028 | $ | 3,311 | $ 4,471 | $ 7,782 | 2/1/2028 | $ 15,564 |
| 8/1/2028 | $ | 3,431 | $ 4,351 | $ 7,782 | 8/1/2028 | $ 15,564 |
| 2/1/2029 | $ | 3,555 | $ 4,227 | $ 7,782 | 2/1/2029 | $ 15,564 |
| 8/1/2029 | $ | 3,684 | $ 4,098 | $ 7,782 | 8/1/2029 | $ 15,564 |
| 2/1/2030 | $ | 3,818 | $ 3,964 | $ 7,782 | 2/1/2030 | $ 15,564 |
| 8/1/2030 | $ | 3,956 | $ 3,826 | $ 7,782 | 8/1/2030 | $ 15,564 |
| 2/1/2031 | $ | 4,099 | $ 3,682 | $ 7,782 | 2/1/2031 | $ 15,564 |
| 8/1/2031 | $ | 4,248 | $ 3,534 | $ 7,782 | 8/1/2031 | $ 15,564 |
| 2/1/2032 | $ | 4,402 | $ 3,380 | $ 7,782 | 2/1/2032 | $ 15,564 |
| 8/1/2032 | $ | 4,562 | $ 3,220 | $ 7,782 | 8/1/2032 | $ 15,564 |
| 2/1/2033 | $ | 4,727 | $ 3,055 | $ 7,782 | 2/1/2033 | $ 15,564 |
| 8/1/2033 | $ | 4,898 | $ 2,884 | $ 7,782 | 8/1/2033 | $ 15,564 |
| 2/1/2034 | $ | 5,076 | $ 2,706 | $ 7,782 | 2/1/2034 | $ 15,564 |
| 8/1/2034 | $ | 5,260 | $ 2,522 | $ 7,782 | 8/1/2034 | $ 15,564 |
| 2/1/2035 | $ | 5,451 | $ 2,331 | $ 7,782 | 2/1/2035 | $ 15,564 |
| 8/1/2035 | $ | 5,648 | $ 2,134 | $ 7,782 | 8/1/2035 | $ 15,564 |
| 2/1/2036 | $ | 5,853 | $ 1,929 | $ 7,782 | 2/1/2036 | $ 15,564 |
| 8/1/2036 | $ | 6,065 | $ 1,717 | $ 7,782 | 8/1/2036 | $ 15,564 |
| 2/1/2037 | $ | 6,285 | $ 1,497 | $ 7,782 | 2/1/2037 | $ 15,564 |
| 8/1/2037 | $ | 6,513 | $ 1,269 | $ 7,782 | 8/1/2037 | $ 15,564 |
| 2/1/2038 | $ | 6,749 | $ 1,033 | $ 7,782 | 2/1/2038 | $ 15,564 |
| 8/1/2038 | $ | 6,993 | $ 788 | $ 7,782 | 8/1/2038 | $ 15,564 |
| 2/1/2039 | $ | 7,247 | $ 535 | $ 7,782 | 2/1/2039 | $ 7,782 |
| 8/1/2039 | $ | 7,510 | $ 272 | $ 7,782 | 8/1/2039 | $ - |

# Bank Account Balances for the Government and its Instrumentalities

| $ in millions | Balance as of | | Notes |
|---|---|---|---|
| Revised Grouping | 7/31/2020 | 8/31/2020 | |
| TSA | 7,564.6 | 7,554.2 | • Reported on a weekly basis on AAFAF's website. |
| TSA Sweep | 1,633.6 | 1,656.1 | • Accounts that collect income and pass through to TSA on a daily basis. Cash build is due to systems issues at Hacienda, pertaining to the SURI functions. These were resolved during the month of September, and the balances were reconciled and transferred to the TSA. Prospectively funds should flow as normal course of business and such account should not hold balances in excess of 1-2 days collections. |
| Pension Related | 407.7 | 427.4 | • On January 17, 2019, the Commonwealth, as grantor, and the Retirement Board for the Government of Puerto Rico, as administrator, created a trust pursuant to Act 106-2017 to hold temporarily in said trust individual employee contributions to be credited to their defined contribution retirement accounts. Temporary trust balances were transferred in June 22, 2020 to the permanent trust at Banco Popular pursuant to implementation of Act 106-2017. Neither the Commonwealth nor ERS claim any interest in these funds. |
| Central Gov't Non-TSA | 5,768.5 | 5,420.6 | • $3,208M Cares Act COVID-19 related Federal Funds.<br>• PR Unemployment Trust Fund at US Treasury ($661M) as of April M/E.<br>• $543M federal funds administered by the Public Housing Authority.<br>• $226M lottery related funds. |
| COFINA | 21.6 | 21.4 | • The balance shown on the COFINA accounts as of 8/31/20 reflects operational funds post-effectiveness of the COFINA Plan. |
| Other Restricted Title III Accounts | 734.6 | 730.6 | • ERS related accounts ($316M), GO Redemption Fund ($268M), and claw back funds ($147M). |
| PREPA | 613.3 | 616.6 | • Refer to the PREPA slide for breakdown of classified accounts. |
| PRASA | 754.3 | 783.8 | • Refer to the PRASA slide for breakdown of classified accounts. |
| HTA | 221.8 | 218.0 | • Refer to the HTA slide for breakdown of classified accounts. |
| UPR | 382.7 | 321.0 | • Refer to the UPR slide for breakdown of classified accounts. |
| ASES | 526.6 | 737.8 | • State and federal funds used mainly for payments of health insurance premiums and claims. |
| Other Public Corps & Legally Separate Entities | 2,069.2 | 2,166.8 | • Government entities with autonomous fiscal authority established by law.<br>• Slides 17 and 20 include an overview of the entities and balances. |
| TOTAL | $20,698M | $20,654M | |

* Refer to the groupings, 'G', as they are summarized on Slide 4.

7

# Executive Summary



$ in millions

| | TSA¹ G5 | Public Corporations & Legally Separate Entities G4 | Pension Related G3 | Non-TSA Central Gov't G2 | Restricted Accounts/ Subject to Title III Proceedings G1 | |
|---|---|---|---|---|---|---|
| 7/31/2020 | $20,698 | 9,198.1 | 3,732.8 | 407.7 | 5,768.5 | 1,591.3 |
| 8/31/2020 | $20,654 | 9,210.4 | 4,009.3 | 427.4 | 5,420.6 | 1,586.6 |
| DELTA | (44M) | +12M | +277M | +20M | (348M) | (5M) |

**Key takeaways:**

1. Overall balance of reported accounts decreased by approximately ($44M) from July 31ˢᵗ to Aug 31ˢᵗ.

2. Mainly driven by:

   a) $277M increase in Public Corporations and Legally Separate Entities

   b) $20M increase in Pension Related Accounts

   c) $12M increase in central Government's Treasury Single Account balance ("TSA")

   d) ($5M) decrease in Restricted Accounts and/or subject to Title III Proceedings

   e) ($348M) decrease in Central Gov't Non-TSA Accounts

¹ Includes TSA Sweep Accounts.
* Refer to the groupings, 'G', as they summarize the current classifications presented in detail on Slide 7.

4

# Puerto Rico Department of Treasury | AAFAF

**Executive Summary - TSA Cash Flow Actual Results**

*(figures in Millions)*

As of September 18, 2020

| Bank Cash Position | Weekly Cash Flow | YTD Net Cash Flow | YTD Net Cash Flow Variance |
|---|---|---|---|
| $9,216 | $1,924 | $1,515 | $1,425 |

**Bridge from FY21 Liquidity Plan projected TSA Cash Balance to actual FY21 TSA Cash Balance as of September 18, 2020**

| Cash Flow line Item | Variance Bridge ($M) | Comments |
|---|---|---|
| Liquidity Plan Projected Cash Balance 9/18/20: | $ 7,791 | |
| 1 State Collections | 1,295 | 1. TSA receipts of state collections are approximately $1,295M ahead of plan. The $1,024M balance that remained in the SURI sweep account at the close FY20 was transferred to the TSA during the week ended September 18, 2020, sooner than forecast. The Liquidity Plan projected half of the balance would be swept at the end of September, and the remaining half swept on a monthly basis through January 2021. Thus, this temporary variance will unwind over the next four months. Remaining positive variance is due to outperformance of other FY21 GF Revenues. |
| 2 GF Appropriations | 175 | |
| 3 Other State-Funded Disbursements | (40) | 2. Throughout July and August, complications with the revenue recognition process at DTPR has slowed the recording of certain revenues and subsequently certain state-funded budgetary transfers from the TSA that are funded by these revenues. This variance is expected to reverse in subsequent months. |
| All Other | (4) | |
| **Actual TSA Cash Balance** | **$ 9,216** | 3. Other disbursements variance is primarily driven by a reprogramming of $34M in FY20 budgeted capital expenditures to ASEM for capital expenditures. The transfer was executed in FY21 on August 10, 2020. |
| SURI GenTax Sweep Account Balance | 211 | |
| TSA Plus Sweep Account Balance | $ 9,427 | |

Source: DTPR

# Puerto Rico Department of Treasury | AAFAF
## YTD TSA Cash Flow Summary - Actual vs LP

**As of September 18, 2020**

### TSA Cumulative YTD Net Cash Flow ($M)

| | |
|---|---|
| SURI Sweep Acount Balance: | $211 |
| LP Bank Cash Balance: | $7,791 |
| Actual TSA Bank Cash Balance: | $9,216 |



—— Net YTD Actual Cumulative Cash Flow

----- LP YTD Cumulative Cash Flow

**YTD Actuals vs. Liquidity Plan**

YTD net cash flow is $1,515M and cash flow variance to the Liquidity Plan is $1,435M. Higher than expected cash flow is mainly driven by the transfer of the $1,024M balance that remained in the SURI sweep account at the close FY20 into the TSA during the week ended September 18, 2020 which was sooner than the Liquidity Plan projected.

Source: DTPR

6



## GOVERNMENT OF PUERTO RICO

**Puerto Rico Fiscal Agency and Financial
Advisory Authority**

### Municipal Secondary Market Disclosure Information Cover Sheet
### Municipal Securities Rulemaking Board (MSRB)
### Electronic Municipal Market Access System (EMMA)

### Additional / Voluntary Event-Based Disclosure

**THIS FILING RELATES TO ALL OR SEVERAL SECURITIES ISSUED BY THE ISSUER, OR ALL OR SEVERAL
SECURITIES OF A SPECIFIC CREDITOR:**

Issuer's Name:_____**Puerto Rico Industrial Development Company (PRIDCO)**_____

Other Obligated Person's Name (if any): _____

Six-digit CUSIP number(s):____**745211LA8, 745211KN1, 745211LF7, 745211LG5, 745211LH3, 745211LJ9, 745211LK6, 745211LL4**

**TYPE OF INFORMATION PROVIDED:**

A. ☐ **Amendment to Continuing Disclosure Undertaking**

B. ☐ **Change in Obligated Person**

C. ☐ **Notice to Investor Pursuant to Bond Documents**

D. ☐ **Communication from the Internal Revenue Service**

E. ☐ **Bid for Auction Rate and Other Securities**

F. ☐ **Capital or Other Financing Plan**

G. ☐ **Litigation / Enforcement Action**

H. ☐ **Change of Tender Agent.  Remarketing Agent or Other On-going Party**

I. ☐ **Derivative or Other Similar Transaction**

J. ☐ **Other Event-Based Disclosures: PRIDCO Restructuring Support Agreement**_____

I represent that I am authorized by the issuer, obligor or its agent to distribute this information publicly.


*/s/ Iván Garau González*_____
Iván Garau González
Puerto Rico Fiscal Agency and Financial Advisory Authority,
    as Fiscal Agent for the Commonwealth

Dated: June 13, 2019



PO Box 42001 • San Juan, PR 00940-2001 • Telephone (787) 722-2525

**NEW ISSUE-BOOK ENTRY ONLY**

<span style="text-align:right">Ratings<br>Standard & Poor's: BBB<br>Moody's: Baa1</span>

# $161,680,159.20
# PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY
## $135,765,159.20 General Purpose Revenue Bonds, Series 2003
## $25,915,000.00 Refunding Revenue Bonds, Series 2003

The General Purpose Revenue Bonds, Series 2003, and the Refunding Revenue Bonds, Series 2003 (collectively, the "Series 2003 Bonds") will be issued as registered bonds and will initially be registered only in the name of Cede & Co., as nominee of The Depository Trust Company, New York, New York, which will act as securities depository for the Series 2003 Bonds. Purchasers of the Series 2003 Bonds will not receive physical delivery of the Series 2003 Bonds.

The Series 2003 Bonds are being issued pursuant to the provisions of a trust indenture, dated as of July 1, 1964, as amended (the "Trust Indenture"), between Puerto Rico Industrial Development Company ("PRIDCO") and U.S. Bank Trust National Association, successor trustee (the "Trustee") and, together with the outstanding bonds of PRIDCO and such additional bonds as may be issued under the Trust Indenture (collectively, the "Bonds"), are payable from the gross revenues of the Trusteed Properties (as defined herein), consisting primarily of rent on industrial properties and, if required, from any other available funds of PRIDCO.

The Series 2003 Bonds will have the following characteristics:

- The Series 2003 Bonds will be issued as Serial Bonds, Term Bonds and Capital Appreciation Bonds.
- Interest on the Serial Bonds and the Term Bonds will be payable monthly on the first day of each month beginning on September 1, 2003. Interest on the Capital Appreciation Bonds will compound every six months, on each January 1 and July 1 commencing on January 1, 2004, and will be payable at maturity or prior payment in full of such bonds. Interest will accrue from the date of issuance of the Series 2003 Bonds.
- Interest on the Series 2003 Bonds is exempt from Puerto Rico taxes and, under certain circumstances, United States taxes to residents of Puerto Rico. See "Taxation" beginning on page 35 of this Official Statement.
- The Series 2003 Bonds can be purchased in principal amounts of $5,000 or any integral multiple thereof in the case of Serial and Term Bonds, and in maturity amounts of $5,000 or any integral multiple thereof in the case of Capital Appreciation Bonds.
- The Series 2003 Bonds are subject to optional and mandatory redemption as described in this Official Statement.
- The inside front cover sets forth detailed information on the maturities, interest rates and prices or yields of the Series 2003 Bonds.

**THE SERIES 2003 BONDS DO NOT CONSTITUTE AN INDEBTEDNESS OF THE COMMONWEALTH OF PUERTO RICO (THE "COMMONWEALTH") OR ANY OF ITS POLITICAL SUBDIVISIONS, AND NEITHER THE COMMONWEALTH NOR ANY OF SUCH SUBDIVISIONS SHALL BE LIABLE THEREON, AND THE SERIES 2003 BONDS AND INTEREST THEREON ARE NOT PAYABLE FROM ANY FUNDS OTHER THAN THOSE OF PRIDCO.**

The Series 2003 Bonds are offered for delivery when, as and if issued and received by the Underwriters, subject to the approval of legality by Pietrantoni Méndez & Alvarez LLP, San Juan, Puerto Rico, Bond Counsel, and certain other conditions. Certain legal matters will be passed upon for the Underwriters by O'Neill & Borges, San Juan, Puerto Rico. It is expected that settlement for the Series 2003 Bonds will occur in San Juan, Puerto Rico, on or about July 30, 2003.

## Oriental Financial Services

| | | |
|---|---|---|
| **Popular Securities** | **UBS Financial Services Incorporated of Puerto Rico** | |
| **BBVA Capital Markets** | **Citigroup** | **Doral Securities** |
| **Morgan Stanley** | **Santander Securities** | **Wachovia Securities LLC** |

July 23, 2003

# $161,680,159.20
## PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

### $135,765,159.20 General Purpose Revenue Bonds, Series 2003

#### $2,395,000 Serial Bonds

| Maturity Date (July 1,) | Principal Amount | Interest Rate | Price |
|---|---|---|---|
| 2017 | $1,170,000 | 5.10% | 100% |
| 2018 | $1,225,000 | 5.15% | 100% |

#### $5,535,159.20 Capital Appreciation Bonds

| Maturity Date (July 1,) | Initial Principal Amount | Amount Due at Maturity | Yield to Maturity |
|---|---|---|---|
| 2017 | $2,847,979.40 | $5,780,000 | 5.15% |
| 2018 | $2,687,179.80 | $5,780,000 | 5.20% |

#### $127,835,000 Term Bonds

$48,925,000 5.20% Term Bonds due July 1, 2023  - Yield 5.20%

$78,910,000 5.25% Term Bonds due July 1, 2028  - Yield 5.286%

### $25,915,000 Refunding Revenue Bonds, Series 2003

#### $25,915,000 Serial Bonds

| Maturity Date | Principal Amount | Interest Rate | Price |
|---|---|---|---|
| July 1, 2004 | $2,880,000 | 1.50% | 100% |
| January 1, 2005 | 3,750,000 | 2.00% | 100% |
| July 1, 2005 | 3,750,000 | 2.10% | 100% |
| January 1, 2006 | 3,830,000 | 2.50% | 100% |
| July 1, 2006 | 3,830,000 | 2.65% | 100% |
| January 1, 2007 | 3,940,000 | 3.00% | 100% |
| July 1, 2007 | 3,935,000 | 3.00% | 100% |

## TABLE OF CONTENTS

**Page**

SUMMARY STATEMENT . . . . . . . . . . . . . . . .  1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . .  4

FINANCING PLAN . . . . . . . . . . . . . . . . . . . . .  5
   The Series 2003 General Purpose
   Revenue Bonds . . . . . . . . . . . . . . . . . . . . . .  5
   The Series 2003 Refunding Revenue Bonds .  5
   Sources and Uses of Funds . . . . . . . . . . . . . .  6

SECURITY . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
   Sources of Payment . . . . . . . . . . . . . . . . . . .  6
   Reserve Account . . . . . . . . . . . . . . . . . . . . .  7
   Additional Bonds . . . . . . . . . . . . . . . . . . . . .  7

DESCRIPTION OF THE SERIES 2003 BONDS .  8
   General . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
   Book-Entry Only System . . . . . . . . . . . . . . .  8
   Principal and Interest . . . . . . . . . . . . . . . . . .  10
   Redemption Provisions . . . . . . . . . . . . . . . .  11

PUERTO RICO INDUSTRIAL DEVELOPMENT
   COMPANY . . . . . . . . . . . . . . . . . . . . . . . . .  12
   Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
   Management and Personnel . . . . . . . . . . . . .  12
   Industrial Facilities . . . . . . . . . . . . . . . . . . .  14
   Industrial Parks . . . . . . . . . . . . . . . . . . . . . .  19
   Foreign Trade Zones . . . . . . . . . . . . . . . . . .  19
   Other Activities . . . . . . . . . . . . . . . . . . . . . .  19

TAX AND OTHER INCENTIVES . . . . . . . . . . .  19
   Industrial Incentives Program . . . . . . . . . . .  20
   Special Incentives Program . . . . . . . . . . . . .  20
   Incentives Under the Code . . . . . . . . . . . . . .  21
   Controlled Foreign Corporations . . . . . . . . .  21
   Proposed New U.S. Tax Regime . . . . . . . . .  22

DEBT AND CAPITAL ACCOUNTS . . . . . . . . .  22
   Fixed Assets . . . . . . . . . . . . . . . . . . . . . . . .  23

PRINCIPAL AND INTEREST REQUIREMENTS 23

OPERATING RESULTS AND RATIOS . . . . . .  25
   Historical . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
   Industrial Rentals and Collections . . . . . . . .  28
   Projected Receipts and Disbursements . . . .  28

CAPITAL IMPROVEMENTS PROGRAM . . . .  30
   Historical . . . . . . . . . . . . . . . . . . . . . . . . . . .  30
   Projected . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

ENVIRONMENTAL CONSIDERATIONS AND
   LITIGATION . . . . . . . . . . . . . . . . . . . . . . . .  32
   National Priorities List-Superfund Sites . . .  32
   Environmental Remediation . . . . . . . . . . . .  33
   Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

**Page**

TAXATION . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

VERIFICATION OF MATHEMATICAL
   COMPUTATIONS . . . . . . . . . . . . . . . . . . . . .  36

UNDERWRITING . . . . . . . . . . . . . . . . . . . . . .  36

LEGAL INVESTMENT . . . . . . . . . . . . . . . . . .  37

LEGAL MATTERS . . . . . . . . . . . . . . . . . . . . .  37

GOVERNMENT DEVELOPMENT BANK FOR
   PUERTO RICO . . . . . . . . . . . . . . . . . . . . . .  37

RATINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . .  37

CONTINUING DISCLOSURE UNDERTAKING  37

MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . .  39

APPENDICES

APPENDIX I
   Summary of Certain Provisions of the Trust
   Indenture

APPENDIX II
   Annual Audited Basic Financial Statements

APPENDIX III
   Forms of Opinions of Bond Counsel

APPENDIX IV
   Table of Accreted Values of Capital
   Appreciation Bonds

INDEX OF TABLES

| | |
|---|---|
| TABLE I | Historical Gross Revenues and Debt Coverage Ratios |
| TABLE II | Projected Gross Revenues and Debt Coverage Ratios |
| TABLE III | Sources and Uses of Funds |
| TABLE IV | Historical Construction of Industrial Facilities Completed |
| TABLE V | Projected Construction of Industrial Facilities to be Completed |
| TABLE VI | New Industrial Leases |
| TABLE VII | Fifty Leading Industrial Lessees |
| TABLE VIII | PRIDCO Sales of Properties |
| TABLE IX | PRIDCO Sales and Construction Analysis of Industrial Buildings |
| TABLE X | Debt and Capital Accounts |
| TABLE XI | Principal and Interest Requirements |
| TABLE XII | Historical Debt Coverage Ratios |
| TABLE XIII | Historical Consolidated Statement of Operations |
| TABLE XIV | Industrial Rentals and Collections |
| TABLE XV | Projected Receipts and Disbursements |
| TABLE XVI | Projected Debt Coverage Ratios |
| TABLE XVII | Historical Capital Improvements Program |
| TABLE XVIII | Projected Capital Improvements Program |

**Redemption Provisions**

*Optional Redemption.* The Series 2003 Bonds maturing after July 1, 2011, may be redeemed at the option of PRIDCO prior to maturity, upon thirty days' prior notice by mail, from any moneys available therefor other than moneys deposited in the Sinking Fund in respect of an amortization requirement, either (i) in whole, on July 1, 2011, or on any date thereafter, or (ii) in part, in such order of maturity as directed by PRIDCO, on July 1, 2011 or any interest payment date thereafter, at the following prices expressed as percentages of the principal amount to be redeemed plus accrued interest to the redemption date:

| Redemption Period | Redemption Price |
|---|---|
| July 1, 2011 through June 30, 2012 | 101% |
| July 1, 2012 through June 30, 2013 | 100 $\frac{1}{2}$% |
| July 1, 2013 and thereafter | 100% |

*Amortization Requirements for Term Bonds.* The Series 2003 General Purpose Revenue Term Bonds maturing on July 1, 2023, and July 1, 2028, are subject to redemption to the extent of their respective amortization requirements on January 1, 2019 and January 1, 2024, respectively, and on each January 1 and July 1 thereafter from moneys in the Sinking Fund at par plus accrued interest to the date fixed for redemption, as follows:

**General Purpose Revenue Terms Bonds**

| Year | Term Bonds due 2023 | | Term Bonds due 2028 | |
|---|---|---|---|---|
| | January 1 | July 1 | January 1 | July 1 |
| 2019 | $3,540,000 | $3,620,000 | | |
| 2020 | 3,725,000 | 3,815,000 | | |
| 2021 | 3,925,000 | 4,015,000 | | |
| 2022 | 6,360,000 | 6,445,000 | | |
| 2023 | 6,695,000 | 6,785,000 | | |
| 2024 | | | $7,040,000 | $7,150,000 |
| 2025 | | | 7,420,000 | 7,520,000 |
| 2026 | | | 7,820,000 | 7,920,000 |
| 2027 | | | 8,235,000 | 8,345,000 |
| 2028 | | | 8,665,000 | 8,795,000 |

The average life of the Series 2003 General Purpose Revenue Term Bonds due July 1, 2023, and July 1, 2028 is 18.038 years and 22.775 years, respectively.

11

RATINGS:
S&P: BBB+
Moody's: Baa1

NEW ISSUE                        OFFICIAL STATEMENT

In the opinion of Pietrantoni Méndez & Alvarez, Bond Counsel, under existing law (i) the 1997 Series A Bonds (as defined herein) and the interest thereon are exempt from Puerto Rico income, municipal license and personal property taxes, (ii) under certain circumstances, the 1997 Series A Bonds are exempt from Puerto Rico gift and estate taxes, (iii) the interest on the 1997 Series A Bonds is not subject to income tax under the United States Internal Revenue Code of 1986, as amended (the "Code"), when received by (a) individuals who are *bona fide* residents of Puerto Rico during the entire taxable year in which such interest is received and (b) under certain circumstances, foreign corporations, including Puerto Rico corporations, and (iv) the interest on the 1997 Series A Bonds is not excludable from the gross income of the recipients thereof under Section 103(a) of the Code. See "TAXATION."

# $133,013,924.40
# PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

### $51,195,340 General Purpose Revenue Bonds, Series 1997 A
### $81,818,584.40 Refunding Revenue Bonds, Series 1997 A

Dated: October 15, 1997

Due: July 1, as shown on the inside cover

(Capital Appreciation Bonds dated their date of delivery)

The General Purpose Revenue Bonds, Series 1997 A, and the Refunding Revenue Bonds, Series 1997 A (collectively, the "1997 Series A Bonds") are being issued concurrently with the General Purpose Revenue Bonds, Series 1997 B (the "1997 Series B Bonds" and, together with the 1997 Series A Bonds, the "Series 1997 Bonds"), in fully registered form and when issued will initially be registered only in the name of Cede & Co., as nominee of The Depository Trust Company ("DTC"), New York, New York, which will act as securities depository for the 1997 Series A Bonds. The 1997 Series A Bonds will be available to purchasers only in denominations of $5,000 principal amount and any multiple thereof ($5,000 maturity amount and any multiple thereof in the case of Capital Appreciation Bonds) only under the book-entry system maintained by DTC through brokers and dealers who are, or act through, DTC Participants (as defined herein). **Purchasers will not receive physical delivery of the 1997 Series A Bonds. As long as any purchaser is the beneficial owner of a 1997 Series A Bond, such purchaser must maintain an account with a broker or dealer who is, or acts through, a DTC Participant in order to receive payment of principal of and interest on such 1997 Series A Bond.** See "DESCRIPTION OF THE SERIES 1997 BONDS — Book-Entry Only System."

Interest on the 1997 Series A Bonds (other than Capital Appreciation Bonds) will be payable July 1, 1998, and each January 1 and July 1 thereafter. Interest on the Capital Appreciation Bonds (as described herein) will be compounded on January 1 and July 1 of each year, commencing January 1, 1998, and will be payable as part of the Accreted Value (as described herein) of the Capital Appreciation Bonds due and payable at maturity or redemption. Certain of the 1997 Series A Bonds are subject to redemption prior to maturity as described herein.

The 1997 Series A Bonds are being issued on a parity with the 1997 Series B Bonds pursuant to the provisions of a trust indenture, dated as of July 1, 1964, as amended (the "Trust Indenture"), between Puerto Rico Industrial Development Company ("PRIDCO") and State Street Bank and Trust Company, N.A., successor trustee (the "Trustee") and, together with the outstanding bonds and such additional bonds as may be issued, are payable from the gross revenues of the Trusteed Properties (as defined herein), consisting primarily of rent on industrial properties and, if required, from any other available funds of PRIDCO.

**THE SERIES 1997 BONDS DO NOT CONSTITUTE AN INDEBTEDNESS OF THE COMMONWEALTH OF PUERTO RICO (THE "COMMONWEALTH" OR "PUERTO RICO") OR ANY OF ITS POLITICAL SUBDIVISIONS, AND NEITHER THE COMMONWEALTH NOR ANY OF SUCH SUBDIVISIONS SHALL BE LIABLE THEREON, AND THE SERIES 1997 BONDS AND INTEREST THEREON ARE NOT PAYABLE FROM ANY FUNDS OTHER THAN THOSE OF PRIDCO.**

The 1997 Series A Bonds are offered for delivery when, as and if issued and received by the Underwriters, subject to the approval of legality by Pietrantoni Méndez & Alvarez, San Juan, Puerto Rico, Bond Counsel, and certain other conditions. Certain legal matters will be passed upon for the Underwriters by Axtmayer Adsuar Muñiz & Goyco, P.S.C., San Juan, Puerto Rico. It is expected that settlement for the 1997 Series A Bonds will occur in San Juan, Puerto Rico, on or about November 6, 1997.

## PaineWebber Incorporated of Puerto Rico

## Popular Securities

Doral Securities, Inc.
Oriental Financial Services Corp.
Samuel A. Ramirez & Co., Inc.

Merrill Lynch & Co.
Prudential Securities Incorporated
Santander Securities

Morgan Stanley Dean Witter
Raymond James & Associates, Inc.
Smith Barney Inc.

October 23, 1997

# $133,013,924.40

# Puerto Rico Industrial Development Company

## $21,945,000  Serial Bonds

| Maturity Date (July 1,) | Principal Amount | Coupon | Price | Maturity Date (July 1,) | Principal Amount | Coupon | Price |
|---|---|---|---|---|---|---|---|
| 1999 | $1,920,000 | 6.00% | 100% | 2004 | $2,555,000 | 6.35% | 100% |
| 2000 | $2,010,000 | 6.10% | 100% | 2005 | $2,715,000 | 6.40% | 100% |
| 2001 | $2,130,000 | 6.20% | 100% | 2006 | $2,890,000 | 6.45% | 100% |
| 2002 | $2,255,000 | 6.25% | 100% | 2007 | $3,065,000 | 6.50% | 100% |
| 2003 | $2,405,000 | 6.30% | 100% | | | | |

## $11,038,924.40  Capital Appreciation Bonds

| Maturity Date (July 1,) | Initial Principal Amount | Maturity Amount | Price | Yield to Maturity | Maturity Date (July 1,) | Initial Principal Amount | Maturity Amount | Price | Yield to Maturity |
|---|---|---|---|---|---|---|---|---|---|
| 2008 | $5,697,242.80 | $11,320,000.00 | 50.329% | 6.55% | 2009 | $5,341,681.60 | $11,320,000.00 | 47.188% | 6.55% |

## $100,030,000  Term Bonds

$23,780,000 6.50% Term Bonds due July 1, 2011 - Yield 6.60%

$54,845,000 6.65% Term Bonds due July 1, 2015 - Yield 6.70%

$21,405,000 6.70% Term Bonds due July 1, 2021 - Yield 6.75%

# $133,013,924.40
# Puerto Rico Industrial Development Company

### $51,195,340 General Purpose Revenue Bonds, Series 1997 A

#### $13,395,000 Serial Bonds

| Maturity Date (July 1,) | Amount | Coupon | Price | Maturity Date (July 1,) | Amount | Coupon | Price |
|---|---|---|---|---|---|---|---|
| 1999 | $1,155,000 | 6.00% | 100% | 2004 | $1,560,000 | 6.35% | 100% |
| 2000 | $1,225,000 | 6.10% | 100% | 2005 | $1,660,000 | 6.40% | 100% |
| 2001 | $1,300,000 | 6.20% | 100% | 2006 | $1,765,000 | 6.45% | 100% |
| 2002 | $1,380,000 | 6.25% | 100% | 2007 | $1,880,000 | 6.50% | 100% |
| 2003 | $1,470,000 | 6.30% | 100% | | | | |

#### $1,950,340 Capital Appreciation Bonds

| Maturity Date (July 1,) | Initial Principal Amount | Maturity Amount | Price | Yield to Maturity | Maturity Date (July 1,) | Initial Principal Amount | Maturity Amount | Price | Yield to Maturity |
|---|---|---|---|---|---|---|---|---|---|
| 2008 | $1,006,580.00 | $2,000,000.00 | 50.329% | 6.55% | 2009 | $943,760.00 | $2,000,000.00 | 47.188% | 6.55% |

#### $35,850,000 Term Bonds
$4,205,000 6.50% Term Bonds due July 1, 2011 - Yield 6.60%
$10,240,000 6.65% Term Bonds due July 1, 2015 - Yield 6.70%
$21,405,000 6.70% Term Bonds due July 1, 2021 - Yield 6.75%

### $81,818,584.40 Refunding Revenue Bonds, Series 1997 A

#### $8,550,000 Serial Bonds

| Maturity Date (July 1,) | Amount | Coupon | Price | Maturity Date (July 1,) | Amount | Coupon | Price |
|---|---|---|---|---|---|---|---|
| 1999 | $765,000 | 6.00% | 100% | 2004 | $995,000 | 6.35% | 100% |
| 2000 | $785,000 | 6.10% | 100% | 2005 | $1,055,000 | 6.40% | 100% |
| 2001 | $830,000 | 6.20% | 100% | 2006 | $1,125,000 | 6.45% | 100% |
| 2002 | $875,000 | 6.25% | 100% | 2007 | $1,185,000 | 6.50% | 100% |
| 2003 | $935,000 | 6.30% | 100% | | | | |

#### $9,088,584.40 Capital Appreciation Bonds

| Maturity Date (July 1,) | Initial Principal Amount | Maturity Amount | Price | Yield to Maturity | Maturity Date (July 1,) | Initial Principal Amount | Maturity Amount | Price | Yield to Maturity |
|---|---|---|---|---|---|---|---|---|---|
| 2008 | $4,690,662.80 | $9,320,000.00 | 50.329% | 6.55% | 2009 | $4,397,921.60 | $9,320,000.00 | 47.188% | 6.55% |

#### $64,180,000 Term Bonds
$19,575,000 6.50% Term Bonds due July 1, 2011 - Yield 6.60%
$44,605,000 6.65% Term Bonds due July 1, 2015 - Yield 6.70%

The cover page and the inside cover page contain certain information for quick reference only; they are not a summary of this issue. Investors must read the entire Official Statement to obtain information essential to the making of an informed investment decision.

This Official Statement is delivered in connection with the offer and sale of the securities described herein and may not be reproduced or used, in whole or in part, for any other purpose. This Official Statement does not constitute an offer to sell or the solicitation of an offer to buy, nor shall there be any sale of the securities offered hereby to or by any person in any jurisdiction in which it is unlawful to make such offer, solicitation or sale. No dealer, broker, sales representative or other person has been authorized by PRIDCO or the Underwriters to give any information or to make any representations other than those contained herein and, if given or made, such other information or representations must not be relied upon as having been authorized by PRIDCO or the Underwriters. The delivery of this Official Statement at any time does not imply that the information contained herein is correct as of any time subsequent to its date. The information set forth herein has been obtained from PRIDCO and other official sources that are believed to be reliable, but is not guaranteed as to accuracy or completeness and is not to be construed as a representation by the Underwriters. The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Official Statement nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of PRIDCO or the Commonwealth since the date hereof.

Certain matters discussed in this Official Statement concerning PRIDCO's future results, performance, intentions, plans and expectations are "forward looking" statements and, as such, are subject to a number of known risks and uncertainties.

IN CONNECTION WITH THIS OFFERING, THE UNDERWRITERS MAY EFFECT TRANSACTIONS WHICH STABILIZE OR MAINTAIN THE MARKET PRICES OF THE SERIES 1997 BONDS OFFERED HEREBY AND PRIDCO'S OUTSTANDING BONDS AT LEVELS ABOVE THOSE WHICH MIGHT OTHERWISE PREVAIL IN THE OPEN MARKET. SUCH STABILIZING, IF COMMENCED, MAY BE DISCONTINUED AT ANY TIME.

There is currently no secondary market for the 1997 Series A Bonds and there can be no assurance that a secondary market will develop or, if it does develop, that it will provide holders of the 1997 Series A Bonds with liquidity for their investment or that it will continue for the life of the 1997 Series A Bonds.

Principal and interest payment on the Series 1997 Bonds will be made to DTC. DTC's practice is to credit Direct Participants' accounts on payable dates in accordance with their respective holdings shown on DTC's records unless DTC has reason to believe that it will not receive payment on any such payable dates. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as in the case with securities held for the accounts of customers in bearer form or registered in "street name" and will be the responsibility of such Participant and not of DTC or PRIDCO, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of principal and interest to DTC is the responsibility of PRIDCO or the Trustee, but disbursement of such payments to Direct Participants shall be the responsibility of DTC, and further disbursement of such payments to the Beneficial Owners shall be the responsibility of Direct and Indirect Participants.

For every transfer of the Series 1997 Bonds, the Beneficial Owners may be charged a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto.

DTC may discontinue providing its services as securities depository with respect to the Series 1997 Bonds at any time by giving reasonable notice to PRIDCO and the Trustee. Under such circumstances, in the event that a successor securities depository is not obtained, definitive Series 1997 Bonds are required to be printed and delivered.

PRIDCO may decide to discontinue use of the system of book-entry transfers through DTC (or a successor securities depository). In such event, definitive Series 1997 Bonds will also be printed and delivered.

PRIDCO and the Trustee will have no responsibility or obligation to such Direct Participants, Indirect Participants, or the persons for whom they act as nominees with respect to the payments to or the providing of notice for the Direct Participants, the Indirect Participants, or the Beneficial Owners. Payments made to DTC or its nominee shall satisfy the obligations of PRIDCO to the extent of such payments.

In the event that such book-entry only system is discontinued for the Series 1997 Bonds, the following provisions will apply to the Series 1997 Bonds: principal of the Series 1997 Bonds and redemption premium, if any, thereon will be payable in lawful money of the United States of America at the corporate trust office of the Trustee in New York, New York. Interest on the Series 1997 Bonds (other than the Capital Appreciation Bonds) will be payable on each January 1 and July 1, by check mailed to the respective addresses of the registered owners thereof as shown on the registration books of PRIDCO maintained by the Trustee as of the close of business on the fifteenth day preceding such January 1 and July 1 as set forth in the Trust Indenture. Interest on such of the Series 1997 Bonds as are Capital Appreciation Bonds will be compounded on each January 1 and July 1 and payable as part of the Accreted Value at maturity or earlier redemption. The Series 1997 Bonds will be issued only as fully registered bonds without coupons in denominations of $5,000 principal amount and any multiple thereof ($5,000 maturity amount and any multiple thereof in the case of Capital Appreciation Bonds). The transfer of Series 1997 Bonds will be registrable and the Series 1997 Bonds may be exchanged at the corporate trust office of the Trustee in New York, New York upon surrender of the Series 1997 Bonds together with an instrument of transfer satisfactory to the Trustee and the payment of any taxes or other governmental charges required to be paid with respect to such transfer or exchange. No registration of transfer of a Series 1997 Bond is required to be made after such Series 1997 Bond has been selected for redemption.

**Redemption Provisions**

*Optional Redemption.* The 1997 Series A Bonds (except Capital Appreciation Bonds, which are not subject to redemption) maturing after July 1, 2007, may be redeemed at the option of PRIDCO prior to maturity, upon thirty days' prior notice by mail, from any moneys available therefor other than moneys deposited in the Sinking Fund in respect of an amortization requirement, either (i) in whole, on July 1, 2007, or on any date thereafter, or (ii) in part, in such order of maturity as directed by PRIDCO, on July 1, 2007, or on any interest payment date thereafter, at the following prices expressed as percentages of the principal amount to be redeemed plus accrued interest to the redemption date:

| Redemption Period | Redemption Price |
|---|---|
| July 1, 2007 through June 30, 2008 | 101½% |
| July 1, 2008 through June 30, 2009 | 100¾% |
| July 1, 2009 and thereafter | 100% |

7

## TABLE OF CONTENTS

SUMMARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . S-1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FINANCING PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    The Series A General Purpose Revenue Bonds . . . . . . . . 1
    The Series A Refunding Revenue Bonds . . . . . . . . . . . . 1
    The 1997 Series B Bonds . . . . . . . . . . . . . . . . . . . . . 2
    Sources and Uses of Funds . . . . . . . . . . . . . . . . . . . . 3

SECURITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Sources of Payment . . . . . . . . . . . . . . . . . . . . . . . . 3
    Reserve Account . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Additional Bonds . . . . . . . . . . . . . . . . . . . . . . . . . 4

PROPOSED SUPPLEMENTAL INDENTURES . . . . . . . . . . . . . 5

DESCRIPTION OF THE 1997 SERIES A BONDS . . . . . . . . . . . 5
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Book-Entry Only System . . . . . . . . . . . . . . . . . . . . . 6
    Redemption Provisions . . . . . . . . . . . . . . . . . . . . . . 7

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY . . . . . 8
    Proposed Reorganization . . . . . . . . . . . . . . . . . . . . . 9
    Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Management and Personnel . . . . . . . . . . . . . . . . . . . . 9
    Industrial Facilities . . . . . . . . . . . . . . . . . . . . . . . . 10
    Industrial Parks . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Foreign Trade Zones . . . . . . . . . . . . . . . . . . . . . . . . 13
    Tourism Operations . . . . . . . . . . . . . . . . . . . . . . . . 14
    Other Activities . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TAX AND OTHER INCENTIVES . . . . . . . . . . . . . . . . . . . . 14
    Industrial Incentives Program . . . . . . . . . . . . . . . . . . 14
    Proposed Tax Incentives Legislation . . . . . . . . . . . . . . 15
    Special Incentives Program . . . . . . . . . . . . . . . . . . . 16
    Sections 30A and 936 of the Code . . . . . . . . . . . . . . . 16

DEBT AND CAPITAL ACCOUNTS . . . . . . . . . . . . . . . . . . . 18
    Fixed Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

PRINCIPAL AND INTEREST REQUIREMENTS . . . . . . . . . . . 18

OPERATING RESULTS AND RATIOS . . . . . . . . . . . . . . . . . 19
    Historical . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Industrial Rentals and Collections . . . . . . . . . . . . . . . 22
    Projected Receipts and Disbursements . . . . . . . . . . . . . 22

CAPITAL IMPROVEMENTS PROGRAM . . . . . . . . . . . . . . . . 24
    Historical . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    Projected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

ENVIRONMENTAL CONSIDERATIONS AND LITIGATION . . . 25
    National Priorities List — Superfund Sites . . . . . . . . . . 25
    Environmental Remediation . . . . . . . . . . . . . . . . . . . 26
    Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TAXATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VERIFICATION OF MATHEMATICAL COMPUTATIONS . . . . . 27

UNDERWRITING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

LEGAL INVESTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 28

LEGAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO . . 28

RATINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONTINUING DISCLOSURE UNDERTAKING . . . . . . . . . . . . 28

MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## APPENDICES

APPENDIX I
A.     Summary of Certain Provisions of the Trust Indenture Excluding Proposed Supplemental Indentures

B.     Summary of Certain Provisions of Proposed Supplemental Indentures

APPENDIX II
    Audited Financial Statements

APPENDIX III
    Commonwealth of Puerto Rico

APPENDIX IV
    Proposed Forms of Opinions of Pietrantoni Méndez & Alvarez, Bond Counsel

APPENDIX V
    Table of Accreted Values of Capital Appreciation Bonds

## INDEX OF TABLES

TABLE I      Historical Gross Revenues and Debt Coverage Ratios
TABLE II      Projected Gross Revenues and Debt Coverage Ratios
TABLE III      Sources and Uses of Funds
TABLE IV      Historical Construction of Industrial Facilities Completed
TABLE V      Projected Construction of Industrial Facilities to be Completed
TABLE VI      Certain Details Regarding New Industrial Leases
TABLE VII      Fifty Leading Industrial Lessees
TABLE VIII      PRIDCO Sales of Properties
TABLE IX      PRIDCO Sales and Construction Analysis of Industrial Buildings
TABLE X      Debt and Capital Accounts
TABLE XI      Principal and Interest Requirements
TABLE XII      Historical Debt Coverage Ratios
TABLE XIII      Historical Consolidated Statement of Operations
TABLE XIV      Industrial Rentals and Collections
TABLE XV      Projected Receipts and Disbursements
TABLE XVI      Projected Debt Coverage Ratios
TABLE XVII      Historical Capital Improvements Program
TABLE XVIII      Projected Capital Improvements Program

**RATINGS:**
S&P: **BBB+**
Moody's: **Baa1**

NEW ISSUE                              **OFFICIAL STATEMENT**

In the opinion of Bond Counsel, subject to continuing compliance with certain tax covenants, interest on the 1997 Series B Bonds (as defined herein) is excluded from gross income for federal income tax purposes under existing statutes, regulations, rulings and court decisions. However, see "Tax Matters" herein for a description of the alternative minimum tax on corporations and certain other federal tax consequences of ownership of the 1997 Series B Bonds. Bond Counsel is further of the opinion that the 1997 Series B Bonds and the interest thereon are exempt from state, Commonwealth of Puerto Rico and local income taxation.

# $16,910,000

## PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

### 5 3/8% General Purpose Revenue Bonds, Series 1997 B

Dated: October 15, 1997                                         Due: July 1, 2016

The General Purpose Revenue Bonds, Series 1997 B (the "1997 Series B Bonds") are being issued concurrently with the General Purpose Revenue Bonds, Series 1997 A, and the Refunding Revenue Bonds, Series 1997 A (collectively, the "1997 Series A Bonds" and, together with the 1997 Series B Bonds, the "Series 1997 Bonds"), in fully registered form and when issued will initially be registered only in the name of Cede & Co., as nominee of The Depository Trust Company ("DTC"), New York, New York, which will act as securities depository for the 1997 Series B Bonds. The 1997 Series B Bonds will be available to purchasers only in denominations of $5,000 principal amount and any multiple thereof only under the book-entry system maintained by DTC through brokers and dealers who are, or act through, DTC Participants (as defined herein). **Purchasers will not receive physical delivery of the 1997 Series B Bonds. As long as any purchaser is the beneficial owner of a 1997 Series B Bond, such purchaser must maintain an account with a broker or dealer who is, or acts through, a DTC Participant in order to receive payment of principal of and interest on such 1997 Series B Bond.** See "DESCRIPTION OF THE SERIES 1997 BONDS — Book-Entry Only System."

Interest on the 1997 Series B Bonds will be payable July 1, 1998, and each January 1 and July 1 thereafter. The 1997 Series B Bonds are subject to redemption prior to maturity as described herein.

**Price 98.545%**
(plus accrued interest)

The 1997 Series B Bonds are being issued on a parity with the 1997 Series A Bonds pursuant to the provisions of a trust indenture, dated as of July 1, 1964, as amended (the "Trust Indenture"), between Puerto Rico Industrial Development Company ("PRIDCO") and State Street Bank and Trust Company, N.A., successor trustee (the "Trustee") and, together with the outstanding bonds and such additional bonds as may be issued, are payable from the gross revenues of the Trusteed Properties (as defined herein), consisting primarily of rent on industrial properties and, if required, from any other available funds of PRIDCO.

**THE SERIES 1997 BONDS DO NOT CONSTITUTE AN INDEBTEDNESS OF THE COMMONWEALTH OF PUERTO RICO (THE "COMMONWEALTH" OR "PUERTO RICO") OR ANY OF ITS POLITICAL SUBDIVISIONS, AND NEITHER THE COMMONWEALTH NOR ANY OF SUCH SUBDIVISIONS SHALL BE LIABLE THEREON, AND THE SERIES 1997 BONDS AND INTEREST THEREON ARE NOT PAYABLE FROM ANY FUNDS OTHER THAN THOSE OF PRIDCO.**

The 1997 Series B Bonds are offered for delivery when, as and if issued and received by the Underwriter, subject to the approval of legality by Brown & Wood LLP, New York, New York, Bond Counsel, and certain other conditions. Certain legal matters will be passed upon for the Underwriter by Axtmayer Adsuar Muñiz & Goyco, P.S.C., San Juan, Puerto Rico. It is expected that settlement for the 1997 Series B Bonds will occur in San Juan, Puerto Rico, on or about November 6, 1997.

# PaineWebber Incorporated

October 23, 1997

## TABLE OF CONTENTS

SUMMARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . S-1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FINANCING PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    The 1997 Series B Bonds . . . . . . . . . . . . . . . . . . . . . 1
    The Series A General Purpose Revenue Bonds . . . . . . . 1
    The Series A Refunding Revenue Bonds . . . . . . . . . . . 2
    Sources and Uses of Funds . . . . . . . . . . . . . . . . . . 2

SECURITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    Sources of Payment . . . . . . . . . . . . . . . . . . . . . . . 2
    Reserve Account . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Additional Bonds . . . . . . . . . . . . . . . . . . . . . . . . . 3

PROPOSED SUPPLEMENTAL INDENTURES . . . . . . . . . . . 4

DESCRIPTION OF THE 1997 SERIES B BONDS . . . . . . . . . . . 5
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Book-Entry Only System . . . . . . . . . . . . . . . . . . . . 5
    Redemption Provisions . . . . . . . . . . . . . . . . . . . . . 6

PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY . . . 7
    Proposed Reorganization . . . . . . . . . . . . . . . . . . . . 7
    Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    Management and Personnel . . . . . . . . . . . . . . . . . . 8
    Industrial Facilities . . . . . . . . . . . . . . . . . . . . . . . . 9
    Industrial Parks . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    Foreign Trade Zones . . . . . . . . . . . . . . . . . . . . . . 12
    Tourism Operations . . . . . . . . . . . . . . . . . . . . . . . 12
    Other Activities . . . . . . . . . . . . . . . . . . . . . . . . . . 13

TAX AND OTHER INCENTIVES . . . . . . . . . . . . . . . . . . . . 13
    Industrial Incentives Program . . . . . . . . . . . . . . . . . 13
    Proposed Tax Incentives Legislation . . . . . . . . . . . . . 13
    Special Incentives Program . . . . . . . . . . . . . . . . . . 14
    Sections 30A and 936 of the Code . . . . . . . . . . . . . . 15

DEBT AND CAPITAL ACCOUNTS . . . . . . . . . . . . . . . . . . 16

PRINCIPAL AND INTEREST REQUIREMENTS . . . . . . . . . . 17

OPERATING RESULTS AND RATIOS . . . . . . . . . . . . . . . . 18
    Historical . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    Industrial Rentals and Collections . . . . . . . . . . . . . . 20
    Projected Receipts and Disbursements . . . . . . . . . . . 20

CAPITAL IMPROVEMENTS PROGRAM . . . . . . . . . . . . . . 22
    Historical . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    Projected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

ENVIRONMENTAL CONSIDERATIONS AND LITIGATION . 23
    National Priorities List — Superfund Sites . . . . . . . . . 23
    Environmental Remediation . . . . . . . . . . . . . . . . . . 24
    Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TAX MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    Discount Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . 25

UNDERWRITING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LEGAL INVESTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 25

LEGAL MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO   26

RATINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CONTINUING DISCLOSURE UNDERTAKING . . . . . . . . . . 26

MISCELLANEOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## APPENDICES

APPENDIX I
A.    Summary of Certain Provisions of the Trust Indenture Excluding Proposed Supplemental Indentures

B.    Summary of Certain Provisions of Proposed Supplemental Indentures

APPENDIX II
    Audited Financial Statements

APPENDIX III
    Commonwealth of Puerto Rico

APPENDIX IV
    Proposed Form of Opinion of Brown & Wood LLP, Bond Counsel

## INDEX OF TABLES

TABLE I    Historical Gross Revenues and Debt Coverage Ratios

TABLE II    Projected Gross Revenues and Debt Coverage Ratios

TABLE III    Sources and Uses of Funds

TABLE IV    Historical Construction of Industrial Facilities Completed

TABLE V    Projected Construction of Industrial Facilities to be Completed

TABLE VI    Certain Details Regarding New Industrial Leases

TABLE VII    Fifty Leading Industrial Lessees

TABLE VIII    PRIDCO Sales of Properties

TABLE IX    PRIDCO Sales and Construction Analysis of Industrial Buildings

TABLE X    Debt and Capital Accounts

TABLE XI    Principal and Interest Requirements

TABLE XII    Historical Debt Coverage Ratios

TABLE XIII    Historical Consolidated Statement of Operations

TABLE XIV    Industrial Rentals and Collections

TABLE XV    Projected Receipts and Disbursements

TABLE XVI    Projected Debt Coverage Ratios

TABLE XVII    Historical Capital Improvements Program

TABLE XVIII    Projected Capital Improvements Program

Redemption notices shall be sent to Cede & Co. If less than all of the Series 1997 Bonds of any maturity within an issue are being redeemed, DTC's practice is to determine by lot the amount of the interest of each Direct Participant in such maturity to be redeemed.

Neither DTC nor Cede & Co. will consent or vote with respect to the Series 1997 Bonds. Under its usual procedures, DTC mails an Omnibus Proxy to PRIDCO as soon as possible after the applicable voting record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct Participants to whose accounts the Series 1997 Bonds are credited on such record date (identified in a listing attached to the Omnibus Proxy).

Principal and interest payment on the Series 1997 Bonds will be made to DTC. DTC's practice is to credit Direct Participants' accounts on payable dates in accordance with their respective holdings shown on DTC's records unless DTC has reason to believe that it will not receive payment on any such payable dates. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as in the case with securities held for the accounts of customers in bearer form or registered in 'street name" and will be the responsibility of such Participant and not of DTC or PRIDCO, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of principal and interest to DTC is the responsibility of PRIDCO or the Trustee, but disbursement of such payments to Direct Participants shall be the responsibility of DTC, and further disbursement of such payments to the Beneficial Owners shall be the responsibility of Direct and Indirect Participants.

For every transfer of the Series 1997 Bonds, the Beneficial Owners may be charged a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto.

DTC may discontinue providing its services as securities depository with respect to the Series 1997 Bonds at any time by giving reasonable notice to PRIDCO and the Trustee. Under such circumstances, in the event that a successor securities depository is not obtained, definitive Series 1997 Bonds are required to be printed and delivered.

PRIDCO may decide to discontinue use of the system of book-entry transfers through DTC (or a successor securities depository). In such event, definitive Series 1997 Bonds will also be printed and delivered.

PRIDCO and the Trustee will have no responsibility or obligation to such Direct Participants, Indirect Participants, or the persons for whom they act as nominees with respect to the payments to or the providing of notice for the Direct Participants, the Indirect Participants, or the Beneficial Owners. Payments made to DTC or its nominee shall satisfy the obligations of PRIDCO to the extent of such payments.

In the event that such book-entry only system is discontinued for the Series 1997 Bonds, the following provisions will apply to the Series 1997 Bonds: principal of the Series 1997 Bonds and redemption premium, if any, thereon will be payable in lawful money of the United States of America at the corporate trust office of the Trustee in New York, New York. Interest on the Series 1997 Bonds will be payable on each January 1 and July 1, by check mailed to the respective addresses of the registered owners thereof as shown on the registration books of PRIDCO maintained by the Trustee as of the close of business on the fifteenth day preceding such January 1 and July 1 as set forth in the Trust Indenture. The Series 1997 Bonds will be issued only as fully registered bonds without coupons in denominations of $5,000 principal amount and any multiple thereof. The transfer of Series 1997 Bonds will be registrable and the Series 1997 Bonds may be exchanged at the corporate trust office of the Trustee in New York, New York upon surrender of the Series 1997 Bonds together with an instrument of transfer satisfactory to the Trustee and the payment of any taxes or other governmental charges required to be paid with respect to such transfer or exchange. No registration of transfer of a Series 1997 Bond is required to be made after such Series 1997 Bond has been selected for redemption.

## Redemption Provisions

*Optional Redemption.* The 1997 Series B Bonds may be redeemed at the option of PRIDCO prior to maturity, upon thirty days' prior notice by mail, from any moneys available therefor other than moneys deposited in the Sinking Fund in respect of an amortization requirement, either (i) in whole, on July 1, 2007, or on any date thereafter, or (ii) in part, in such order of maturity as directed by PRIDCO, on July 1, 2007, or on any interest payment date thereafter, at the following prices expressed as percentages of the principal amount to be redeemed plus accrued interest to the redemption date:

| Redemption Period | Redemption Price |
|---|---|
| July 1, 2007 through June 30, 2008 | 102% |
| July 1, 2008 through June 30, 2009 | 101% |
| July 1, 2009 and thereafter | 100% |

6

October 8, 2020

Case: 17-03283-LTS

Honorable Laura Taylor Swain

Dear Judge Swain

I write to propose the Redemption of the following bonds on January 1, 2021

Puerto Rico Convention Center District Authority (CCDA)
University of Puerto Rico (UPR)

Both issuers are not currently undergoing a debt restructuring under the Title III nor the Title VI of
PROMESA.

Puerto Rico has a Year to Date Net Cash Flow Variance of $1,700 Million and an actual TSA cash balance
of $9,522 Million.  The Plan Projected Balance for 9/25/20 was $7,822 Million.

This is great news as it means that the TSA account is $1,700 Million dollars above the LP line as show in
the Charts attached- TSA Cash Flow Summary – Actual vs LP          September 25, 2020
                        TSA Cash Flow Actual Results          September 25, 2020

I propose that the YTD Net Cash Flow Variance as reported in the weekly TSA reports be used as a
waterfall to redeem the CCDA bonds as the first bucket and then the UPR bonds as the second bucket.

I propose that funds above $1,000 Million reported as the weekly YTD Net Cash Flow Variance be used
to redeem CCDA and UPR bonds.

Using September 25, 2020 weekly TSA statement $700 Million would be used to redeem all outstanding
CCDA bonds, my estimate around $350 Million and then waterfall to the next bucket, UPR bonds my
estimate around $400 million until the $700 Million is used up redeeming bonds. It would appear to me
that the bonds are current.

The $700 Million would redeem all of the outstanding CCDA bonds and most of the UPR bonds, any
outstanding UPR bonds would be redeemed if and when the YTD Net Cash Flow Variance went above
the waterfall amount which is $1,000 Million  as reported in weekly TSA reports. This makes it very
transparent to all parties.


The excess cash in the TSA accounts earn interest in the 1% range.

Using this cash to redeem CCDA and UPR saves cash as the bonds pay interest at a higher rate than 1%
Since the CCDA will have no bonds after redemption all excess cash can flow back to the TSA account
Since the UPR will have no bonds after all are redeemed the funds used by UPR to pay its bond debt
service  can be used by the UPR for other purposes or funds sent to UPR from the Government of Puerto
Rico could be reduced.

The use of the waterfall insures that excess cash is put to work to reduce costs to the Treasury of Puerto Rico, it also insures that the TSA account has a $1,000 Million dollar cushion on top of the $2,500 Million working capital cushion already in the budget, this would be a $3,500 Million dollar cushion before any funds would waterfall to redeem CCDA and UPR bonds.

The surge in tax collections in 2020 reflect strong economic activity in Puerto Rico

The last monthly report August 31, 2020 shows total Government Cash over $20 Billion

The Bureau of Economic Analysis, US Dept of Commerce reports Puerto Rico Economic GDP in the $100 Billion range.

The use of this excess cash in the TSA account in a waterfall for redemptions of CCDA and UPR bonds should have no effect on the current Not Terminated Plan of Adjustment which is accounted for in the Fiscal Plan.

CCDA and UPR bonds should be redeemed in my view
January 1, 2021  redemption date

For your consideration,

Gregory Moore

Attachments

Executive Summary- TSA Cash Flow Actual Results  September 25. 2020
YTD TSA Cash Flow Summary – Actual vs LP
Redemption Provisions- CCDA Bonds Series A 2006
Redemption Provisions- UPR Bonds Series A 2000
Redemption Provisions -UPR Bonds Series P and Series Q 2006
US Dept of Commerce GDP Puerto Rico

**Puerto Rico Department of Treasury | AAFAF**
*Executive Summary - TSA Cash Flow Actual Results*
*(figures in Millions)*

| Bank Cash Position | Weekly Cash Flow | YTD Net Cash Flow | YTD Net Cash Flow Variance |
|---|---|---|---|
| $9,522 | $306 | $1,821 | $1,700 |

**Bridge from FY21 Liquidity Plan projected TSA Cash Balance to actual FY21 TSA Cash Balance as of September 25, 2020**

| Cash Flow line item | Variance Bridge ($M) | Comments |
|---|---|---|
| Liquidity Plan Projected Cash Balance 9/25/20: | $ 7,822 | 1. TSA receipts of state collections are approximately $1,497M ahead of plan. The $1,024M balance that remained in the SURI sweep account at the close FY20 was transferred to the TSA during the week ended September 18, 2020, sooner than forecast. The Liquidity Plan projected half of the balance would be swept at the end of September, and the remaining half swept on a monthly basis through January 2021. Thus, this temporary variance will unwind over the next four months. Remaining positive variance is due to outperformance of other FY21 GF Revenues. |
| 1 State Collections | 1,497 | |
| 2 GF Appropriations | 175 | |
| 3 PayGo Receipts | 57 | |
| 4 Other State-Funded Disbursements | (40) | |
| All Other | 12 | 2. Throughout July and August, complications with the revenue recognition process at DTPR has slowed the recording of certain revenues and subsequently certain state-funded budgetary transfers from the TSA that are funded by these revenues. This variance is expected to reverse in subsequent months. |
| **Actual TSA Cash Balance** | **$ 9,522** | |

3. YTD PayGo Receipts are higher than forecast due to payments received in FY21 from certain Component Units for FY20 invoices. Such receipts from the State Insurance Fund, PBA, and ACAA, totaling $15.7M, $3.8M, and $3.2M, respectively, are the largest drivers of this variance.
4. Other disbursements variance is primarily driven by a reprogramming of $34M in FY20 budgeted capital expenditures to ASEM for capital expenditures. The transfer was executed in FY21 on August 10, 2020.

The SURI Sweep account is now functioning properly and accumulated collections are consistently transferred to the TSA with a 2-4 day lag. This will result in a lower and more stable balance in the account going forward. As of the date of this report, the SURI sweep account balance is approximately $30M, as substantially all collections accumulated in the SURI sweep account throughout FY20 and the early months of FY21 were transferred to the TSA during the weeks ended 9/18/20 and 9/25/20. The sweep account balance will no longer be reported alongside the TSA balance nor included in the TSA balance, consistent with prior practice.

**Puerto Rico Department of Treasury | AAFAF**
*YTD TSA Cash Flow Summary - Actual vs LP*



**TSA Cumulative YTD Net Cash Flow ($M)**

| | |
|---|---|
| SURI Sweep Acount Balance: | $30 |
| LP Bank Cash Balance: | $7,822 |
| Actual TSA Bank Cash Balance: | $9,522 |

Legend: —— Net YTD Actual Cumulative Cash Flow   - - - LP YTD Cumulative Cash Flow

**YTD Actuals vs. Liquidity Plan**
YTD net cash flow is $1,821M and cash flow variance to the Liquidity Plan is $1,700M. Higher than expected cash flow is mainly driven by the transfer of the $1,024M balance that remained in the SURI sweep account at the close FY20 into the TSA during the week ended September 18, 2020 which was sooner than the Liquidity Plan projected.

Source: DTPR                                                                                    6



PREVIOUS ISSUER
←

NEXT ISSUER
→

ALL ISSUERS
←

## Puerto Rico Convention Center District Authority (CCDA)

The Puerto Rico Convention Center District Authority ("CCDA") is a public corporation created pursuant to Act No. 351-2000, as amended. CCDA was created to develop, manage and oversee the Puerto Rico Convention Center, the Coliseo de Puerto Rico José Miguel Agrelot, the Fernando Ribas Dominicci Airport, and other adjacent hospitality, commercial and residential developments within the Convention Center District (the "District"). The District consists of 113 acres with hotels, restaurants, office space, and entertainment areas. Learn more about CCDA **here**.

**CREDIT RATING DASHBOARD**

# C

**MOODY'S**

---

- **Bond Offerings**

**2006** ∧

**March**

HOTEL OCCUPANCY TAX REVENUE BONDS SERIES A - $468,800,000

+ **Financial Information**

- **Debt Restructuring**

This issuer is not currently undergoing a debt restructuring under the Title III nor the Title VI of PROMESA.

## Explore More

**Financial Documents**

Explore our extensive archive of documents, reports, statements and more, detailing the progress of Puerto Rico's finances and debt restructuring.

LEARN MORE
→

**Administrative Documents**

Through AAFAF, Puerto Rico is implementing debt restructuring measures to build investor trust and usher in a new era of economic development.

LEARN MORE
→

**About Us**

AAFAF is the financial advisor and reporting entity of the Government of Puerto Rico, its agencies, instrumentalities, subdivisions, public corporations and municipalities.

LEARN MORE
→

**Press Room**

AAFAF is committed to providing information in the most responsible and transparent manner possible. Explore this area created for use by journalists and communications professionals.

LEARN MORE
→



787.722.2525    contact@aafaf.pr.gov                    f    t    in    Search 🔍

**AAFAF**  Puerto Rico Fiscal Agency and
Financial Advisory Authority                    LEARN MORE    Menu ≡

PREVIOUS
ISSUER

← 

ALL
ISSUERS

← 

## University of Puerto Rico

NEXT
ISSUER

→

The University of Puerto Rico ("UPR") is a public corporation of the Government created
pursuant to Act No. 1 of January 20, 1966, as amended. The UPR is the main public university
system of Puerto Rico, which consists of eleven campuses and has approximately 58,000
students and 5,300 faculty members. UPR has the largest and most diverse academic offerings
in Puerto Rico and the Caribbean.
Learn more about the UPR **here**.
**CREDIT RATING DASHBOARD**

# C

# CC

MOODY'S

S&P

---

— **Bond Offerings**

**2006**                                                                 ∧

**November**
UNIVERSITY SYSTEM REVENUE BONDS SERIES Q - $259,645,000
UNIVERSITY SYSTEM REVENUE REF BONDS SERIES P - $286,505,000

**2000**                                                                 ∧

**December**
AFICA REVENUE BONDS 2000 SERIES A - $86,735,000

+ **Financial Information**

+ **Fiscal Plans Approved by Oversight Board**

— **Debt Restructuring**

This issuer is not currently undergoing a debt restructuring under the Title III nor the Title VI of PROMESA.

## Explore More

**Financial Documents**

Explore our extensive archive of
documents, reports, statements
and more, detailing the progress
of Puerto Rico's finances and
debt restructuring.

LEARN MORE

**Administrative
Documents**

Through AAFAF, Puerto Rico is
implementing debt restructuring
measures to build investor trust
and usher in a new era of
economic development.

LEARN MORE

**About Us**

AAFAF is the financial advisor
and reporting entity of the
Government of Puerto Rico, its
agencies, instrumentalities,
subdivisions, public corporations
and municipalities.

LEARN MORE

**Press Room**

AAFAF is committed to providing
information in the most
responsible and transparent
manner possible. Explore this
area created for use by
journalists and communications
professionals.

LEARN MORE



## Explore More

**Financial Documents**

Explore our extensive archive of documents, reports, statements and more, detailing the progress of Puerto Rico's finances and debt restructuring.

**Administrative Documents**

Through AAFAF, Puerto Rico is implementing debt restructuring measures to build investor trust and usher in a new era of

**About Us**

AAFAF is the financial advisor and reporting entity of the Government of Puerto Rico, its agencies, instrumentalities, subdivisions, public corporations

**Press Room**

AAFAF is committed to providing information in the most responsible and transparent manner possible. Explore this area created for use by

-NEW ISSUE - BOOK-ENTRY ONLY

**$468,800,000**

# PUERTO RICO CONVENTION CENTER DISTRICT AUTHORITY
## HOTEL OCCUPANCY TAX REVENUE BONDS, SERIES A

The Puerto Rico Convention Center District Authority Hotel Occupancy Tax Revenue Bonds, Series A, are being issued by the Puerto Rico Convention Center District Authority pursuant to the provisions of a Trust Agreement and a Supplemental Trust Agreement dated March 24, 2006, between the Puerto Rico Convention Center District Authority and JPMorgan Chase Bank, N.A., as trustee. The net proceeds of the Bonds will be used to: (i) repay an interim financing used for the development and construction of a convention center, (ii) make deposits under the Trust Agreement to provide for completion of the convention center and its related infrastructure improvements and facilities and for the payment of interest on the Bonds due on July 1, 2006, (iii) fund a debt service reserve, and (iv) pay costs of issuance. See "SECURITY AND SOURCES OF PAYMENT FOR THE BONDS."

- The Bonds are payable primarily from certain revenues pledged therefor and derived from a hotel occupancy tax imposed by the Commonwealth of Puerto Rico and collected by the Puerto Rico Tourism Company on substantially all hotel room rentals in the Commonwealth. **To the extent other Commonwealth of Puerto Rico revenues are insufficient to pay for the general obligation debts and other guaranteed debts of the Commonwealth, the hotel occupancy tax revenues are subject to being applied first to the payment of such Commonwealth debts and obligations before they may be applied to pay debt service on the Bonds. See page 21 under the sub-heading "Prior Payment of Full Faith and Credit Obligations of the Commonwealth."** For other investment considerations, see "INVESTMENT CONSIDERATIONS" beginning on page 26 of this Official Statement.

- The Bonds will be issued in denominations of $5,000 principal amount and multiples thereof.

- Interest on the Bonds will be payable semi-annually on January 1 and July 1, beginning on July 1, 2006, and will be calculated based on a 360-day year composed of twelve 30-day months. Interest will accrue from the date of issuance of the Bonds.

- The Bonds will be dated their date of delivery and issued as fully registered obligations in book-entry-only form and when issued will be registered in the name of Cede & Co., as nominee of The Depository Trust Company. Purchasers of the Bonds will not receive physical delivery of certificates representing their interest in the Bonds.

- Certain of the Bonds may be subject to optional redemption as described in page 7 of this Official Statement, the first possible date of redemption being July 1, 2016.

- The scheduled payment of principal and interest on certain of the Bonds when due will be guaranteed under insurance policies to be issued concurrently with delivery of the Bonds by Ambac Assurance Corporation, CDC IXIS Financial Guaranty North America, Inc. and Financial Guaranty Insurance Company, as indicated on the inside cover page of this Official Statement.

- In the opinion of Bond Counsel, under the provisions of the Acts of Congress now in force and under existing regulations, rulings and court decisions, interest on the Bonds will be excluded from gross income for purposes of federal income taxation and the Bonds and the interest thereon will be exempt from state, Commonwealth and local income taxation. However, see "TAX MATTERS" beginning on page 32 of this Official Statement for alternative minimum tax consequences with respect to interest on the Bonds, a description of certain rules that the Authority must comply with to preserve the exclusion from gross income of such interest and other tax considerations.

- It is expected that settlement for the Bonds will occur on or about March 24, 2006.

**The inside cover page contains information regarding the maturity schedules, interest rates and yields on the Bonds.**

Neither the credit of the Commonwealth nor that of any of its government instrumentalities will be pledged for the payment of the Bonds. The Bonds are limited obligations of the Authority payable solely from the revenues received from certain hotel occupancy tax and from moneys held in the reserve account and other funds and accounts held under the Trust Agreement.

**LEHMAN BROTHERS**

BANC OF AMERICA SECURITIES LLC

CITIGROUP

GOLDMAN, SACHS & CO.

JP MORGAN

MERRILL LYNCH & CO.

MORGAN STANLEY

RAYMOND JAMES & ASSOCIATES, INC.

SAMUEL A. RAMIREZ & CO.

**WACHOVIA BANK, NATIONAL ASSOCIATION**

March 15, 2006

DTC may discontinue providing its services as securities depository with respect to the Bonds at any time by giving reasonable notice to Issuer or Agent. Under such circumstances, in the event that a successor securities depository is not obtained, bond certificates are required to be printed and delivered.

The Authority may decide to discontinue use of the system of book-entry-only transfers through DTC (or a successor securities depository). In that event, definitive Bonds will be printed and delivered to DTC.

The information in this section concerning DTC and DTC's book-entry system has been obtained from sources that the Authority believes to be reliable, but the Authority takes no responsibility for the accuracy thereof.

## Transfers

For every transfer and exchange of the Bonds, the Beneficial Owners may be charged a sum sufficient to cover any tax, fee or other charge that may be imposed in relation thereto.

## Discontinuance of the Book-Entry-Only System

In the event that such book-entry only system is discontinued, the following provisions will apply: principal of and redemption premium, if any, on the Bonds shall be payable in lawful money of the United States of America at the corporate trust offices of the Trustee in New York, New York. Interest on the Bonds will be payable by check mailed to the respective addresses of the registered owners thereof as shown on the registration books of the Authority, maintained by the Trustee, as of the record date therefore. The Bonds will be issued only as registered Bonds without coupons in denominations of $5,000 or any multiple thereof. The transfer of the Bonds will be registrable and they may be exchanged at the corporate trust offices of the Trustee upon the payment of any taxes or other governmental charges as may be required with respect to such transfer or exchange.

## Redemption

*Optional Redemption.* The Bonds maturing after July 1, 2016 may be redeemed, at the option of the Authority, upon not less than 30 days' prior notice by mail to DTC or, if the book-entry system is discontinued, to the registered owners thereof from any available moneys (other than moneys deposited in the Bond Payment Fund under the Trust Agreement required to pay principal and interest due in such fiscal year on Bonds that are not being redeemed) either in whole or in part, as directed by the Authority, on any date not earlier than July 1, 2016, at a redemption price equal to 100% of the par amount of Bonds so redeemed plus accrued interest to the date fixed for redemption.

*Mandatory Redemption.* The Bonds maturing on July 1, 2031 and 2036 are subject to redemption to the extent of the respective amortization requirements therefor set forth below (less the amount applied to the purchase of any such Bonds and otherwise subject to adjustment as described below), upon not less than 30 days' prior notice, from moneys in the Bond Payment Fund under the Trust Agreement, at a redemption price equal to the par amount of Bonds so redeemed plus accrued interest to the date fixed for redemption.

# OFFICIAL STATEMENT

## $86,735,000
## Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority (AFICA)
### Educational Facilities Revenue Bonds, 2000 Series A
### (University Plaza Project)

## INTRODUCTION

This Official Statement of Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") sets forth certain information with respect to the offering and sale by AFICA of its Educational Facilities Revenue Bonds, 2000 Series A (University Plaza Project) (the "Bonds") in the principal amount of $86,735,000. The principal of and interest on the Bonds will be insured by a financial guaranty insurance policy (the "MBIA Bond Insurance Policy") issued by MBIA Insurance Corporation ("MBIA Insurance").

This Official Statement includes the cover page, the inside cover page, the back cover page, the Appendices hereto and incorporates by reference the Commonwealth of Puerto Rico Financial Information and Operating Data Report, dated August 1, 2000 (the "Commonwealth Report") and the general purpose financial statements of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico") for the fiscal year ended June 30, 1999, together with the independent auditor's report thereon, dated January 14, 2000 of Deloitte & Touche LLP certified public accountants (the "Commonwealth Financial Statements"). The Commonwealth Report and the Commonwealth Financial Statements have been filed by the Commonwealth with each nationally recognized municipal securities information repository ("NRMSIR"). For information on how to obtain the Commonwealth Report and the Commonwealth Financial Statements, see "MISCELLANEOUS."

The descriptions and summaries of various documents set forth in this Official Statement do not purport to be conclusive or definitive and reference is made to each such document for the complete details of all terms and conditions thereof. Summaries of the Loan Agreement, the Trust Agreement, the Lease Agreement, the Assignment Agreement and the Master Trust Indenture (each as defined herein) are set forth in Appendix A — "SUMMARIES OF PRINCIPAL DOCUMENTS." All capitalized terms not otherwise defined in this Official Statement shall have the respective meanings ascribed to them in the documents being summarized. All references herein to the Bonds, the Loan Agreement, the Trust Agreement, the Lease Agreement, the Assignment Agreement, the Master Trust Indenture and the Management Contract (as defined herein) are qualified in their entirety by such documents, copies of which may be examined, or obtained at the expense of the person requesting the same, at the corporate trust office of The Bank of New York (the "Trustee") at 10161 Centurion Parkway, Jacksonville, Florida 32256.

The order and placement of materials in this Official Statement, including the Appendices, and the incorporation by reference of the Commonwealth Report and the Commonwealth Financial Statements, are not to be deemed to be a determination of relevance, materiality or importance, and this Official Statement, including the Appendices, the Commonwealth Report and the Commonwealth Financial Statements, must be considered in its entirety.

## DESCRIPTION AND SUMMARY OF FINANCING

The project being financed with the proceeds of the Bonds consists of the development, construction and equipping of certain educational and related facilities (the "Project") for the University of Puerto Rico (the "University"). The Project is being constructed on a site owned by the University located across from the principal entrance to the University's main campus in the Río Piedras section of San Juan (the "Site"). The Project will contain three components. One component will consist of several structures to provide student housing. Another component will consist of the University administrative offices, student service and support functions and limited commercial space. The third component will consist of a multi-story parking garage building. For a more detailed description of the Project see "THE PROJECT."

The Bonds are being issued under a trust agreement, to be dated as of December 1, 2000 (the "Trust Agreement"), between AFICA and the Trustee. The proceeds of the Bonds will be used to make a loan to Desarrollos Universitarios, Inc., a not-for-profit corporation organized under the laws of Puerto Rico (the "Borrower"), pursuant to the terms of a loan agreement, to be dated as of December 1, 2000 (the "Loan Agreement"), between the Borrower and AFICA. The proceeds of the Bonds will be used to (i) finance the development, construction and equipping of the Project; (ii) repay a portion of certain advances made by Government Development Bank for Puerto Rico ("GDB") under a line of credit facility for the purpose of paying certain costs of the development and construction of the Project; (iii) make a deposit to a debt service reserve fund for the Bonds; and (iv) pay the costs and expenses incurred in connection with the issuance and sale of the Bonds. See "SOURCES AND USES OF FUNDS." On the date of initial issuance and delivery of the

Bonds (the "Closing Date"), the Trustee will deposit the proceeds of the Bonds, net of costs incurred in connection with the issuance of the Bonds, to the credit of the funds to be established under the Trust Agreement.

The Borrower has entered into a construction agreement (the "Construction Agreement"), dated January 20, 2000, with Dick-Miramar, S.E. for the construction and equipping of the Project. Construction of the Project commenced in January 20, 2000 and is expected to be completed in May, 2003.

The Borrower has acquired the right to occupy and make use of the Site from the University pursuant to the terms of a Deed of Constitution of Surface Right, dated December 21, 2000 (the "Surface Right Agreement"). The Surface Right Agreement has a term of 33 years. On or prior to the Closing Date, the Borrower and the University will enter into a Lease Agreement (the "Lease Agreement") pursuant to which the University will lease the Project for a term of 33 years. Under the Lease Agreement, the University may acquire the Project from the Borrower for $1.00 at the end of such term. See "SECURITY AND SOURCES OF PAYMENT FOR THE BONDS—Lease Agreement, Management Contract and Assignment Agreement" and Appendix A — "SUMMARIES OF PRINCIPAL DOCUMENTS —Summary of the Lease Agreement."

The University will charge its students rent for the occupancy of the dormitories that are part of the Project. The rental income from students will constitute Pledged Revenues of the University applicable towards the payment of debt service on the University Senior Bonds (as defined below). To the extent any income remains after current payment of debt service on the University Senior Bonds, it will be used, together with other available income of the University, to pay rent due to the Borrower under the Lease Agreement. See "BONDHOLDERS' RISKS."

## THE BONDS

**General**

The Bonds will be issued under the Trust Agreement between AFICA and the Trustee. The Bonds will be dated, will bear interest at such rates and will mature (subject to the rights of redemption described below) in such amounts and on such dates, as set forth on the inside cover page of this Official Statement. The Bonds will accrue interest from December 1, 2000 at the rates set forth on the inside cover page of this Official Statement, payable semiannually on each January 1 and July 1, commencing on July 1, 2001 (each an "Interest Payment Date"), or if any such day is not a business day, on the next succeeding business day, until maturity or prior redemption.

The Bonds will be issued as fully registered Bonds without coupons in denominations of $5,000 or any multiple thereof. The Bonds will be registered under the DTC book-entry only system described below. Therefore, purchasers of the Bonds will not receive definitive Bonds. The principal or redemption price of and interest on the Bonds will be payable as described below under "Book-Entry Only System."

**Optional Redemption**

The Bonds at the time outstanding maturing after July 1, 2010 are subject to redemption, at the option of the University in whole or in part (in such order of maturity as directed by the University), on July 1, 2010 or any Interest Payment Date thereafter (which date shall not be less than 45 days from the date that notice of such redemption is mailed to the Trustee by the University and the Borrower), at a redemption price equal to 100% of the principal amount thereof plus accrued interest to the redemption date, without premium.

2

# University of Puerto Rico
## $286,505,000 University System Revenue Refunding Bonds, Series P
## $259,645,000 University System Revenue Bonds, Series Q

The University System Revenue Refunding Bonds, Series P (the "2006 Refunding Bonds") and the University System Revenue Bonds, Series Q (the "2006 Series Q Bonds," and together with the 2006 Refunding Bonds, the "2006 Bonds"), are being issued pursuant to the terms of the Trust Agreement described herein.

The 2006 Bonds, any other outstanding bonds of the University of Puerto Rico (the "University") previously issued under the Trust Agreement and any additional bonds (collectively, the "Bonds") that the University may from time to time issue under the Trust Agreement are general obligations of the University payable from any monies available to the University. The principal of and interest on the Bonds are secured by a pledge of the Pledged Revenues of the University, as described in the Trust Agreement and in this Official Statement. See "SECURITY AND SOURCES OF PAYMENT FOR THE BONDS," beginning on page 7 of this Official Statement for a description of the Pledged Revenues.

The 2006 Bonds will have the following characteristics:

- The 2006 Bonds will be dated December 13, 2006.

- The 2006 Bonds will be registered under The Depository Trust Company's book-entry only system. Purchasers of the 2006 Bonds will not receive definitive 2006 Bonds.

- The 2006 Bonds are subject to redemption by the University as described in this Official Statement, the earliest possible date of redemption being June 1, 2016.

- Interest on the 2006 Bonds will be payable on June 1, 2007 and on each December 1 and June 1 thereafter.

- Subject to continuing compliance with certain tax covenants, interest on the 2006 Bonds will not be includable in gross income for federal income tax purposes and interest on the 2006 Bonds is exempt from state, Commonwealth and local income taxation under existing law. However, see TAX MATTERS, beginning on page 53 of this Official Statement, for alternative minimum tax consequences with respect to interest on the 2006 Bonds and other tax considerations.

- It is expected that settlement for the 2006 Bonds will occur on or about December 13, 2006.

**The inside cover page contains information concerning the maturity schedules, interest rates and prices or yields on the 2006 Bonds.**

The 2006 Bonds are not a debt or obligation of the Commonwealth of Puerto Rico (the "Commonwealth") or any municipality or other political subdivision of the Commonwealth, other than the University, and neither the Commonwealth nor any municipality or other political subdivision of the Commonwealth, other than the University, shall be liable therefor. The good faith and credit of the Commonwealth or that of any municipality or other political subdivision of the Commonwealth, other than the University, are not pledged for the payment of the 2006 Bonds.

| | | |
|---|---|---|
| **Lehman Brothers** | **Merrill Lynch & Co.** | **Samuel A. Ramirez & Co.** |
| **Banc of America Securities LLC** | **Citigroup** | **Goldman, Sachs & Co.** |
| **JPMorgan** | **Morgan Stanley** | **Popular Securities** |
| **Raymond James & Associates, Inc.** | **UBS Investment Bank** | **Wachovia Bank, National Association** |

November 30, 2006

## THE 2006 BONDS

**Description**

The 2006 Bonds will be dated December 13, 2006, will bear interest at such rates, will be payable at such times, and will mature on the dates and in the principal amounts set forth on the inside cover page of this Official Statement. The 2006 Bonds are subject to redemption as described below under "Redemption Provisions."

**Redemption Provisions**

*Optional Redemption.* The 2006 Bonds maturing after June 1, 2016, may be redeemed at the option of the University prior to maturity, upon not less than 30 days prior notice by mail, from any available monies (other than monies set aside in the Sinking Fund in respect of an Amortization Requirement), either in whole or in part, on any date not earlier than June 1, 2016 at a redemption price equal to the outstanding principal amount of such 2006 Bonds to be redeemed plus accrued interest to the redemption date, without premium.

Subject to the provisions of the Trust Agreement, if more than one maturity of 2006 Bonds is subject to redemption in part, the 2006 Bonds shall be called for redemption in such order as the University shall direct.

*Amortization Requirements.* The 2006 Bonds maturing on June 1, 2030, shall be redeemed in part on June 1, 2027 and on each June 1 thereafter until June 1, 2029, and the 2006 Bonds maturing on June 1, 2036, shall be redeemed in part on June 1, 2031 and on each June 1 thereafter until June 1, 2035, in each case, in the principal amounts equal to the respective Amortization Requirements for said 2006 Bonds (less the principal amount of any 2006 Bonds retired by purchase) from monies in the Sinking Fund at 100% of the principal amount thereof plus accrued interest in the years and amounts set forth below:

| Fiscal Year Ending June 30, | Amortization Requirements for 2006 Refunding Bonds due June 1, 2030 |
|---|---|
| 2027 | $11,055,000 |
| 2028 | 11,605,000 |
| 2029 | 12,185,000 |
| 2030 | 12,800,000* |
| Total | $47,645,000 |
| Average life (years) | 22.03 |

* Maturity

| Fiscal Year Ending June 30, | Amortization Requirements for 2006 Series Q Bonds due June 1, 2030 |
|---|---|
| 2027 | $10,530,000 |
| 2028 | 11,055,000 |
| 2029 | 11,605,000 |
| 2030 | 12,185,000* |
| Total | $45,375,000 |
| Average life (years) | 22.03 |

* Maturity

4



**Chart B. Puerto Rico GDP: Billions of Dollars**

GDP — GDP less pharmaceuticals, medical and scientific equipment, and computer services

U.S. Bureau of Economic Analysis

10/8/2020, 1:15 PM

The Clerk of the United States
District Court for the District of  Puerto Rico
Room 150  Federal Building
150 Carlos Chardon Ave
San Juan, PR 00918-1767