**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------------- x
                                                                      :
In re:                                                                :
                                                                      :
                                                                      : PROMESA
THE FINANCIAL OVERSIGHT AND                                           : Title III
MANAGEMENT BOARD FOR PUERTO RICO,                                     :
                                                                      : Case No. 17-BK-3283 (LTS)
     as representative of                     :
                                                                      : Re: ECF Nos. 14478, 14547,
THE COMMONWEALTH OF PUERTO RICO, *et al.*,                            : 14555, 14558, 14559, 14576
                                                                      :
     Debtors.[1]                              : (Jointly Administered)
---------------------------------------------------------------------- x

**OMNIBUS REPLY IN SUPPORT OF JOINT MOTION OF PSA CREDITORS**
**PURSUANT TO SECTION 312 OF PROMESA AND SECTION 105 OF THE**
<u>**BANKRUPTCY CODE TO IMPOSE DEADLINES FOR PLAN OF ADJUSTMENT**</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................................................................1

ARGUMENT .........................................................................................................................................5

    A. The FOMB Seeks To Rewrite PROMESA To Eliminate All Judicial Oversight Of Its Actions .................................................................................................5

    B. The Court Has The Authority To Impose Plan Deadlines Under PROMESA ...........................................................................................................................6

    C. The Motion Does Not Seek Dismissal Of The Commonwealth's Title III Case .......................................................................................................................................7

    D. The Title III Case Must Move Forward To Facilitate Puerto Rico's Exit From Bankruptcy ..............................................................................................................9

CONCLUSION ....................................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Link v. Wabash Railroad Co.*,
  370 U.S. 626 (1962) ............................................................................................................... 7

*Nates v. Cronin (In re Cronin)*,
  1998 WL 3541880 (1st Cir. BAP Oct. 14, 1998) .................................................................... 7

**Statutes and Rules**

PROMESA § 106(e) ...................................................................................................................... 5

PROMESA § 304(b) ...................................................................................................................... 5

PROMESA § 312 .................................................................................................................... 1, 12

PROMESA § 312(b) .................................................................................................................. 5, 6

PROMESA § 314 ........................................................................................................................... 5

To the Honorable United States District Court Judge Laura Taylor Swain:

The PSA Creditors respectfully submit this reply (the "Reply") in further support of the *Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment* (ECF No. 14478) (the "Joint Motion" or "Jt. Mot.")[2] and in response to the Objections[3] filed thereto, and further respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Puerto Rico has been in bankruptcy for nearly 42 months, and absent the Court imposing clear structure and deadlines, an exit from bankruptcy and path towards economic growth and capital formation remains unclear. This is especially concerning since the FOMB and the PSA Creditors already engaged in months-long mediation that produced the PSA and the Current POA, supported by nearly 60% of Puerto Rico's senior-most creditors—a case milestone that should pave the way for Puerto Rico's "fresh start." The Current POA cuts the Commonwealth's borrowed money debt and unsecured claims by more than 2/3—from approximately $35 billion to $10.7 billion. Moreover, the Current POA enables the Commonwealth to reduce its maximum annual debt service (including COFINA) to approximately

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Joint Motion.

[3] The "Objections" are the following: (i) *Objection of Financial Oversight and Management Board for Puerto Rico to Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment* (ECF No. 14547) ("FOMB Objection"); (ii) *Objection of National Public Finance Guarantee Corporation to Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment* (ECF No. 14555) ("National Objection"); (iii) *AAFAF's Objection to the Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment* (ECF No. 14558) ("AAFAF Objection"); (iv) *Ambac Assurance Corporation's Objection to Joint Motion of PSA Creditors to Impose Deadlines for Plan of Adjustment* (ECF No. 14559) ("Ambac Objection"); and (v) *Objection of Official Committee of Unsecured Creditors to Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment* (ECF No. 14576) ("Committee Objection").

$1.47 billion, compared to pre-petition maximum annual debt service of $4.2 billion,[4] which means total debt service on Commonwealth and COFINA bonds would be 9.7% of central government revenues,[5] leaving more than 90% of projected annual revenues to be spent for other public purposes. The PSA also reduces debt service to 20 years, providing the Commonwealth significant financial flexibility in the long-term and substantial debt relief. The PSA reduces the total nominal debt service (including COFINA) from $90.4 billion to $39.7 billion (or by 56%), and by 65% when excluding COFINA.[6]

2. By reducing the amount of the Commonwealth's public debt that has a constitutionally enshrined first claim on all of the Commonwealth's available resources, the Current POA accomplishes the FOMB's stated goal—a once and done approach that takes into account the inherent uncertainty of the future. While the FOMB expresses concerns based on economic challenges caused by the global pandemic, the same is true for all sovereigns around the world—many of which are actively restructuring or refinancing their debts to manage these challenges and take advantage of favorable market conditions, as Puerto Rico is left behind. Due to the FOMB's unwillingness to progress this case, Puerto Rico could be losing its best opportunity to resolve the debt piece of the puzzle.

3. While the PSA Creditors believe that the Current POA remains feasible, they resumed mediation to brainstorm on a solution that addresses the global pandemic's current impact on the Puerto Rico economy. As disclosed by the FOMB on September 30, 2020, the PSA

---

[4] *See* FOMB Presentation on Plan Support Agreement, Feb. 9, 2020, at 2, available at https://drive.google.com/file/d/1uyS9_npXsV7cUfMI0cwxENUuc0A5hboG/view.

[5] Based on maximum annual debt service under the PSA plus COFINA Senior Lien Bond debt service and the FY2020 own-source plus COFINA revenues under the May 2020 Fiscal Plan.

[6] *See* FOMB Presentation on Plan Support Agreement, Feb. 9, 2020, at 2, 7, available at https://drive.google.com/file/d/1uyS9_npXsV7cUfMI0cwxENUuc0A5hboG/view.

Creditors offered to reduce the amount of new "fixed debt" bonds by more than $3 billion to just $7.4 billion. This further reduced the maximum annual debt service for the life of the new bonds by an additional $287 million. Demonstrating their willingness to work constructively, the PSA Creditors also introduced the concept of a contingent value instrument that would help make up the shortfall in value and align creditor interests with those of the Commonwealth (*i.e.,* a portion of creditor recoveries would be contingent on Puerto Rico achieving certain economic metrics). The PSA Creditors continue to stand ready and able to engage with the FOMB on the Current POA, even in the face of continued outperformance by the Commonwealth of the FOMB's projections.[7]

4. The FOMB never even responded to this proposal. *See* FOMB Press Release.[8] In addition to not countering, the FOMB did not provide the PSA Creditors (or the Court) with any timeframe for reengaging with creditors or even an explanation of what the FOMB would do next. Given the importance to all stakeholders of moving the case forward and out of bankruptcy, the PSA Creditors filed the Joint Motion to alert the Court to the need for judicial intervention—even from the Commonwealth's most supportive creditors.

5. The FOMB's Objection enumerates three options: (i) amend the Current POA; (ii) prosecute the Current POA without modification; or (iii) dismiss the Title III Case. The PSA

---

[7] Indeed, the latest weekly cash reporting from the Commonwealth shows that year-to-date general fund collections are 17% above budget, and the treasury single account cash balance is $475 million above budget. *See Treasury Single Account ("TSA") FY 2021 Cash Flow, as of October 2, 2020*, Puerto Rico Department of Treasury. Moreover, AAFAF announced that, as of October 19, 2020, COFINA had received the funds necessary to make all FY2021 payments to holders of COFINA Senior Lien Bonds, noting the collections were made in "record time." In touting the achievement, Governor Wanda Vázquez Garced stated that the Commonwealth "want[s] to exit the bankruptcy process as soon as possible and steps like these are important to achieve this goal…". *See COFINA Receives Full Amount to Service Debt*, AAFAF Press Release, Oct. 20, 2020, available at https://www.aafaf.pr.gov/wp-content/uploads/PR-COFINA-Receives-Full-Amount-Service-Debt.pdf, last accessed Oct. 20, 2020.

[8] *See* September 30, 2020 FOMB Press Release, available at https://drive.google.com/file/d/1WB2Jzhdl9tOs8gG4NooNgvRTGdfAq9_R/view.

3

Creditors agree with the FOMB's assessment. They just disagree that the FOMB has a fourth choice—stand still and do nothing.

6. The FOMB's Objection asserts that the FOMB intends to file an amended plan. The PSA Creditors welcome this development as well as the opportunity to engage with the FOMB on the terms of an amended plan consistent with the PSA.[9] The FOMB, however, provides no timeline for filing such an amended plan, or any schedule to confirm it.

7. The FOMB believes that it has unfettered discretion as to when it will proceed with a plan process and, returning to a familiar refrain, the FOMB contends that the Court lacks jurisdiction to order otherwise. The FOMB is mistaken. The Court is integral to Puerto Rico's ability to obtain a fresh start. The Court exercises plenary jurisdiction over the plan confirmation process. And despite the FOMB's desire for complete freedom of action, the Court has indisputable authority to impose plan-related deadlines under both PROMESA and its inherent authority to manage its own docket. Although the FOMB tries to recast the Joint Motion as a collateral attack on the May 2020 Fiscal Plan, the Joint Motion does nothing of the kind. The Joint Motion simply seeks to advance the Title III Case towards conclusion using the tools that Congress provided, and nothing more.

8. The FOMB argues at length that the PSA Creditors urge dismissal of the case in order to dismember the Commonwealth's assets, but that is incorrect. The PSA Creditors did not (and do not) advocate for dismissal of the Title III case; instead, the Joint Motion correctly refers to the Court's authority under Bankruptcy Code section 930 to dismiss a case if the municipal

---

[9] As noted in the Joint Motion (at ¶ 14 n.14), the PSA Creditors reserve all of their rights and remedies under the PSA, including without limitation the right to invoke the Court's authority to order "specific performance and injunctive or other similar relief" under section 8.15 of the PSA as a remedy for any violation thereof.

4

debtor does not comply with Court deadlines or is otherwise unable to confirm a plan of adjustment. The PSA Creditors are not urging dismissal, they are urging progress.

9. The Joint Motion proposes a schedule to move the cases forward. If the FOMB does not agree with the proposed schedule, then it should propose its own schedule to which creditors may respond. Instead, it says the Court has no jurisdiction to impose deadlines. The FOMB is wrong, the statute is clear, and PROMESA's twin goals will not be achieved absent additional judicial intervention. Unless the Court imposes a schedule and more structure, the cases will linger, the litigation free-for-all will continue, and costs will increase, to the detriment of all Puerto Rico stakeholders.

## ARGUMENT

### A. The FOMB Seeks To Rewrite PROMESA To Eliminate All Judicial Oversight Of Its Actions

10. PROMESA vests in the Court the authority to set a time by which the FOMB must file a plan of adjustment (§ 312(b)), confirm a plan of adjustment (§ 314), and dismiss the Title III case (§ 304(b)). The FOMB's Objection effectively seeks to eliminate *all* such Court oversight. This should not be permitted.

11. The Joint Motion asks the Court to exercise its authority under section 312(b) of PROMESA by imposing deadlines to confirm a plan of adjustment. In response, the FOMB resorts to recasting the Joint Motion as a challenge to the May 2020 Fiscal Plan, citing decisions applying section 106(e) of PROMESA, which prohibits the Court from reviewing challenges to the FOMB's fiscal plan certification determinations. *See* PROMESA § 106(e); Obj. ¶ 45. Section 106(e), however, has no application to the Joint Motion.

12. While the Joint Motion criticizes (validly) the May 2020 Fiscal Plan, it does not challenge the fiscal plan or otherwise seek judicial review of the FOMB's certification of the fiscal

5

plan. In fact, the Joint Motion expressly states that even under the May 2020 Fiscal Plan's pessimistic assumptions, "the Current POA remains feasible." Jt. Mot. ¶ 34 (explaining that the Current POA's affordability depends primarily on the Commonwealth's cash position as of the Effective Date of the Current POA, and only on a small amount of projected cash flows over the next 20 years).[10] The PSA Creditors also acknowledge that "the PSA provides the FOMB, the Commonwealth, and PSA Creditors with additional flexibility to adjust its terms, if necessary[,]" providing examples of how the FOMB could lower annual payments while maintaining the same overall distributable value. *Id.* ¶ 39.

13. Put simply, the Joint Motion does not seek any relief with respect to the May 2020 Fiscal Plan, and it does not invoke PROMESA's standard for certification of a fiscal plan. There is thus no sound basis for the FOMB's contention that "the basis for the relief sought [in the Joint Motion] amounts to a challenge of the Oversight Board's decision to certify the [May 2020] Fiscal Plan" such that "the Court is divested of subject matter jurisdiction to adjudicate the Motion." Obj. ¶ 45.

### B. The Court Has The Authority To Impose Plan Deadlines Under PROMESA

14. Congress expressly vested the Court with the authority to establish a deadline by which the FOMB must file a plan of adjustment. *See* PROMESA § 312(b) ("If the Oversight Board does not file a plan of adjustment with the petition, the Oversight Board shall file a plan of adjustment *at the time set by the court*.") (emphasis added). The plain text of section 312(b) does

---

[10] Because the Current POA remains feasible, the FOMB lacks any basis under the PSA to decline to prosecute the Current POA towards confirmation. Although the relief sought in the Joint Motion would not in itself compel the FOMB to move forward with the Current POA, the PSA Creditors reserve all of their rights and remedies under the PSA.

not leave room for debate, which may explain why the FOMB did not reference the statute even once in its Objection.

15. In addition, the Court always has the "inherent authority . . . to manage its docket and dispose of matters in an orderly *and expeditious* manner." *Nates v. Cronin (In re Cronin)*, 1998 WL 3541880, *3 (1st Cir. BAP Oct. 14, 1998) (emphasis added); *cf. Link v. Wabash Railroad Co.*, 370 U.S. 626, 629-30 (1962) (federal trial court's authority to dismiss a plaintiff's action with prejudice for failure to prosecute "is necessary in order to prevent undue delays in the disposition of pending cases"). The Court has exercised this authority on numerous occasions, including when it granted the FOMB's request at the outset of the COVID-19 pandemic to adjourn the Disclosure Statement Hearing and ordered the FOMB to file a status report setting forth, among other things, a proposed schedule for the Disclosure Statement Hearing and related deadlines by May 1, 2020. (ECF No. 12549). The FOMB has been content to allow the Court to impose deadlines to provide updates, but incorrectly thinks the Court's power stops there. Simply put, there can be no doubt that the Court has authority—both statutory and inherent—to impose deadlines on the FOMB to prosecute a plan of adjustment.

  **C.**  **The Motion Does Not Seek Dismissal Of The Commonwealth's Title III Case**

16. Sidestepping the actual relief requested, the FOMB brazenly misstates that the PSA Creditors "appear[] [to] urge[]" dismissal of this Title III case to gain "the most leverage while maximizing chaos and harm to the people of Puerto Rico." Obj. ¶ 1.

17. Even a cursory reading of the Joint Motion makes plain that it does not seek dismissal of the Title III Case. The Proposed Order the PSA Creditors prepared and attached as Exhibit A to the Joint Motion conclusively makes this point, focusing exclusively on the actual relief sought, namely, that the Court establish deadlines for the FOMB to "(i) file a statement confirming that it intends to prosecute the Current POA; (ii) file and serve a modified version of

7

the Current POA, with a modified disclosure statement; or (iii) file and serve a plan of adjustment for the Commonwealth and the Public Buildings Authority that the FOMB intends to prosecute towards confirmation, with an accompanying disclosure statement." Jt. Mot. ¶ 14.a.; Jt. Mot. Ex. A ¶ 2.a.

18. Contrary to the portrayal of creditors hell-bent on chaos and destruction that the FOMB attempts to paint in its Objection, the record in this Title III case makes clear that the PSA Creditors have been constructive and singularly focused on achieving a plan of adjustment that respects their relative lawful priorities and ensures that Puerto Rico can emerge from bankruptcy with a manageable debt load without further delay. As detailed in the Joint Motion, some PSA Creditors have been engaged in that process since early 2019, working with the Mediation Team and the FOMB to negotiate a deal that would bring a significant number of creditors under the proverbial tent. Those efforts, now backed by approximately 60% of holders of the Commonwealth's highest-priority Constitutional Debt, culminated in the Current POA, which embodied the PSA Creditors' willingness and agreement to compromise their legal entitlements in good faith and remains feasible and affordable.

19. The PSA Creditors remain dedicated to confirming a feasible plan of adjustment that takes account of the Commonwealth's current reality while complying with PROMESA. Unlike other creditors of the Commonwealth and its instrumentalities, the PSA Creditors not only have supported the orderly sequencing and the stay of the legal issues and disputes arising in this case, but they also have refrained entirely from litigating against the FOMB or the Commonwealth in the last eighteen months.[11] This reality belies the FOMB's unsubstantiated suggestion that the

---

[11] The National Objection, Ambac Objection, and Committee Objection are put forth by creditors who oppose the Current POA and seek to continue to engage in their ceaseless litigation campaigns. By contrast, the PSA Creditors have not sought to lift the stay to litigate outside the Title III process nor have they

8

Joint Motion is but "a negotiation tactic to put pressure on the Oversight Board in an effort to extract further concessions." Obj. ¶ 7. The PSA Creditors are not here seeking concessions, they are seeking definitive progress toward resolving this case.

### D. The Title III Case Must Move Forward To Facilitate Puerto Rico's Exit From Bankruptcy

20. Setting aside the FOMB's opinion of its own achievements, there is no dispute that this Title III Case has lingered for more than three and a half years. Even if the Court were to adopt the PSA Creditors' own proposed deadlines towards plan confirmation, another eight months would elapse before Puerto Rico would emerge from bankruptcy, where it will have remained for well over four years. In that best-case scenario, Puerto Rico's bankruptcy would last more than twice as long as any of the three longest and largest municipal restructurings before it.[12] In fact, Puerto Rico's stay in bankruptcy will be longer than the largest and most complex corporate bankruptcy in history—Lehman Brothers'—from which the debtor emerged in 42 months.[13] Adopting the FOMB's position, of course, would mean that Puerto Rico would remain in bankruptcy for whatever period the FOMB deems appropriate, in its sole discretion.

21. An indefinite stay in bankruptcy is detrimental to Puerto Rico and its people. As explained in the Joint Motion, the deleterious impact on Puerto Rico of remaining in bankruptcy

---

affirmatively sought to litigate their entitlements to property. Indeed, the PSA Creditors supported the Mediation Team's recommendation to stay litigation so as to have issues proposed to be resolved under the Current POA heard in the context of confirmation. *See Joint Statement of PSA Creditors in Support of Mediation Team's Amended Report and Recommendation* (ECF No. 11499).

[12] Orange County, California, Jefferson County, Alabama, and Detroit Michigan—each the largest municipal bankruptcies at the time of their filings ($1.7 billion, $3.2 billion, and $18.5 billion, respectively)—emerged from bankruptcy after 18, 25, and 17 months, respectively.

[13] Lehman Brothers had over $600 billion in debt when it filed for bankruptcy under Chapter 11 of the Bankruptcy Code, five times the debt Puerto Rico had when it filed for bankruptcy in 2017. *See* DealBook, *Lehman's Big Bankruptcy Filing*, New York Times (Sept. 15, 2008, 10:16 AM), https://dealbook.nytimes.com/2008/09/15/lehmans-big-bankruptcy-filing/ ("Lehman reported $613 billion in liabilities").

9

is made even starker by (a) the fact that multiple other sovereign issuers including Argentina and Ecuador have completed complex debt restructurings in the midst of the pandemic, and (b) the unprecedented opportunity to take advantage of historically low interest rates that the Commonwealth is missing. Jt. Mot. ¶ 44-5. Recently bankrupt Detroit, for example, successfully sold $80 million in general obligation bonds this past week, marking the second sale of bonds backed by the city's creditworthiness since 2013 when it filed for bankruptcy.[14] Indeed, Detroit has used its post-bankruptcy access to the capital markets to deal with the effects of the pandemic on its finances.[15] Even the Commonwealth's own Puerto Rico Housing Financing Authority ("PRHFA")—one of the few instrumentalities that is not in bankruptcy—has taken advantage of the immensely beneficial market conditions by refinancing approximately $300 million of its debt this month, resulting in average annual debt service savings of over $8.5 million.[16] Additionally, the Puerto Rico Aqueduct and Sewer Authority ("PRASA") is also planning to take advantage of the beneficial market conditions by exploring a potential refinancing for approximately $3.2 billion of its debt. But Detroit, PRHFA, and PRASA are by no means exceptions. Municipalities are accessing the bond market at "the fastest pace since the record-setting borrowing spree three years ago."[17] According to reports, there are $28.6 billion of debt offerings scheduled over the next 30 days, "a tally which captures only a fraction of what will likely be sold because many deals are done on shorter notice."[18]

---

[14] Akinnibi, Fola, *Once-Bankrupt Detroit Tests Muni Market with $80 Million Bond*, Oct. 15, 2020, available at https://blinks.bloomberg.com/news/stories/QI91CGT1UM0X.

[15] *Id*.

[16] *See* https://www.aafaf.pr.gov/wp-content/uploads/PR-PR-Returns-markets-after-AAFAF-comp-PRHFA-bond-refin.pdf.

[17] Moran, Danielle, *New Muni-Bond Sales Rival Record Surge in Race to Beat Election*, Oct. 14, 2020, available at https://blinks.bloomberg.com/news/stories/QI6V8UDWRGG1.

[18] *Id*.

10

22. Meanwhile, Puerto Rico languishes in bankruptcy despite having spent more than $700 million in restructuring fees to date under the fiscal oversight and financial management of a board that is unwilling or unable to provide even a timeline for emergence. The FOMB's decision to stay in bankruptcy despite having a feasible and affordable plan on file as well as counterparties willing and able to make well-founded, necessary adjustments to it is not a free option, but one with very real and potentially devastating consequences for Puerto Rico. Indeed, the FOMB's new Chairman, David Skeel, publicly recognized yesterday that "[t]he uncertainty generated by the coronavirus, added to the resignation of a governor (Ricardo Rosselló), the hurricanes, and the earthquakes have delayed the negotiation processes, but if there is one thing [he is] sure of, it is that all the parties involved understand that it is time to complete the restructuring and move forward."[19] Setting deadlines is the best way to "move forward."

23. The FOMB is wrong that imposing deadlines to guide the parties towards confirmation would be "arbitrary." Obj. ¶¶ 7, 49, 50. The FOMB does not explain why the deadlines proposed by the PSA Creditors are arbitrary, nor does it propose deadlines of its own. Instead, the FOMB posits that the imposition of *any* timeline for confirmation and emergence would be "arbitrary" and would force the FOMB to act "under unnecessary duress." Obj. ¶ 7. The FOMB's definition of arbitrariness, therefore, appears to be anything different from what the FOMB decides to do in its sole discretion. Stripped of its rhetoric, the gravamen of the FOMB's argument is that PROMESA section 312 does not mean what it says, and that the FOMB has absolute discretion not only to certify fiscal plans, but also to impose on all parties and the Court

---

[19] As quoted in Ramos, Christian, *It Is Time To Complete The Restructuring*, El Vocero, Oct. 20, 2020, available at https://www.elvocero.com/gobierno/ya-es-momento-de-completar-la-reestructuraci-n/article_3efb7146-1282-11eb-b9e4-d36a30806e5b.html, last accessed Oct. 20, 2020 (unofficial translation).

11

whatever schedule it desires. Taken to its logical conclusion, the FOMB's argument is that the Court can do *nothing* even if the FOMB decides to keep Puerto Rico in bankruptcy for another three years or, for that matter, for an unstated, indefinite period. Such untrammeled discretion—not the PSA Creditors' request for deadlines—is the epitome of arbitrariness.

24. The PSA Creditors' requested remedy seeks to get all parties working towards the ultimate common goal of Puerto Rico's emergence from bankruptcy, under clear rules and expectations. Many of the PSA Creditors were anchor tenants and influential architects of the only other Title III restructuring that has been consummated to date (COFINA) and saw first-hand the benefits of Court-ordered structure. The COFINA restructuring was facilitated not only by the creditors' and the FOMB's willingness to move forward towards a restructuring that would avoid zero-sum litigation, but also by the Court's considered use of its authority to provide a well-defined structure under which the parties could work. Far from being "arbitrary," the structure fostered accountability and motivated parties to act in good faith. That is precisely what the deadlines the PSA Creditors have moved for would bring to the Title III Case.

25. While PROMESA affords the FOMB considerable discretion in carrying out its duties, that discretion is not unlimited. The Court should not allow Puerto Rico, its people, and its creditors to languish in bankruptcy indefinitely, subject only to the FOMB's unbounded will.

## **CONCLUSION**

**WHEREFORE**, the PSA Creditors respectfully request that the Court enter an order, substantially in the form attached to the Joint Motion as Exhibit A (ECF No. 14478-1), granting the relief requested in the Joint Motion and such other and further relief as the Court deems just and proper.

DATED: October 20, 2020

Respectfully submitted,

| **REICHARD & ESCALERA** | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
|---|---|
| By: */s/ Rafael Escalera*<br>**Rafael Escalera**<br>USDC No. 122609<br>escalera@reichardescalera.com<br><br>**Sylvia M. Arizmendi**<br>USDC-PR 210714<br>arizmendis@reichardescalera.com<br><br>**Carlos R. Rivera-Ortiz**<br>USDC-PR 303409<br>riverac@reichardescalera.com<br><br>255 Ponce de León Avenue<br>MCS Plaza, 10th Floor<br>San Juan, Puerto Rico 00917-1913<br>Telephone: (787) 777-8888 | **Susheel Kirpalani** (*pro hac vice*)<br>susheelkirpalani@quinnemanuel.com<br><br>**Daniel Salinas**<br>USDC-PR 224006<br>danielsalinas@quinnemanuel.com<br><br>**Eric Kay** (*pro hac vice*)<br>erickay@quinnemanuel.com<br><br>**Kate Scherling** (*pro hac vice*)<br>katescherling@quinnemanuel.com<br><br>**Zachary Russell** (*pro hac vice*)<br>zacharyrussell@quinnemanuel.com<br><br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010-1603<br>Telephone: (212) 849-7000 |

*Co-Counsel for the Lawful Constitutional Debt Coalition*

| | |
|---|---|
| **G. CARLO-ALTIERI LAW OFFICES, LLC** | **MORRISON & FOERSTER LLP** |

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
Telephone: (787) 247-6680
gacarlo@carlo-altierilaw.com

By: */s/ Mª Mercedes Figueroa y Morgade*
Mª Mercedes Figueroa y Morgade
USDC PR No. 207108
Telephone: (787) 234-3981
figueroaymorgadelaw@yahoo.com

254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527

By: */s/ Gary S. Lee*
James M. Peck (admitted *pro hac vice*)
Gary S. Lee (admitted *pro hac vice*)
Lena H. Hughes
Andrew R. Kissner (admitted *pro hac vice*)
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
jpeck@mofo.com
glee@mofo.com
lhughes@mofo.com
akissner@mofo.com

-and-

Joseph R. Palmore
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 887-6940
Facsimile: (202) 887-0763
jpalmore@mofo.com

*Counsel for the Ad Hoc Group of Constitutional Debtholders*

| | |
|---|---|
| **JIMÉNEZ, GRAFFAM & LAUSELL** | **WILLKIE FARR & GALLAGHER LLP** |
| /s/ *Ramón Rivera Morales* | /s/ *Mark T. Stancil* |
| J. Ramón Rivera Morales | Mark T. Stancil (admitted *pro hac vice*) |
| USDC-PR Bar No. 200701 | 1875 K Street, N.W. |
| Andrés F. Picó Ramírez | Washington, DC 20006 |
| USDC-PR Bar No. 302114 | Telephone: (202) 303-1133 |
| P.O. Box 366104 | Facsimile: (202) 303-2133 |
| San Juan, PR 00936 | Email: mstancil@willkie.com |
| Telephone: (787) 767-1030 | |
| Facsimile: (787) 751-4068 | |
| Email: rrivera@jgl.com | |
| | |
| **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** | **ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP** |
| /s/ *Andrew N. Rosenberg* | /s/ *Lawrence S. Robbins* |
| Andrew N. Rosenberg (admitted *pro hac vice*) | Lawrence S. Robbins (admitted *pro hac vice*) |
| Karen R. Zeituni (admitted *pro hac vice*) | Gary A. Orseck (admitted *pro hac vice*) |
| 1285 Avenue of the Americas | Donald Burke (admitted *pro hac vice*) |
| New York, NY 10019 | 2000 K Street, N.W., 4th Floor |
| Telephone: (212) 373-3000 | Washington, DC 20006 |
| Email: arosenberg@paulweiss.com | Telephone: (202) 775-4500 |
| | Facsimile: (202) 775-4510 |
| | Email: lrobbins@robbinsrussell.com |

*Co-Counsel for the Ad Hoc Group of General Obligation Bondholders*

15

| | |
|---|---|
| **MORGAN, LEWIS & BOCKIUS LLP** | **CORREA-ACEVEDO & ABESADA LAW OFFICES, PSC** |
| */s/ Kurt A. Mayr* | |
| Kurt A. Mayr (admitted pro hac vice) | Sergio Criado |
| David L. Lawton (admitted pro hac vice) | USDC-PR No. 226307 |
| Shannon B. Wolf (admitted pro hac vice) | Roberto Abesada-Agüet |
| One State Street | USDC-PR No. 216706 |
| Hartford, CT 06103-3178 | Centro Internacional de Mercadeo, Torre II |
| Tel. (860) 240-2700 | # 90 Carr. 165, Suite 407 |
| Fax: (860) 240-2701 | Guaynabo, P.R. 00968 |
| kurt.mayr@morganlewis.com | Tel. (787) 273-8300 |
| david.lawton@morganlewis.com | Fax (787) 273-8379 |
| shannon.wolf@morganlewis.com | ra@calopsc.com |
| | scriado@calopsc.com |
| Sabin Willett (admitted pro hac vice) | |
| One Federal Street | |
| Boston, MA 02110-1726 | |
| Tel: (617) 951-8775 | |
| sabin.willett@morganlewis.com | |

*Co-Counsel for the QTCB Noteholder Group*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

/s/*Carlos R. Rivera-Ortiz*
USDC-PR 303409

17