UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
-----------------------------------------------------------x
```
| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>Debtors.[1] | (Jointly Administered) |

```
-----------------------------------------------------------x
```

**STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD IN CONNECTION WITH OCTOBER 28, 2020 OMNIBUS HEARING**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the October 28, 2020 omnibus hearing and in response to this Court's order, dated October 20, 2020 [ECF No. 14619].

**I.      General Status and Activities of the Oversight Board**

1.     On October 7, 2020, President Trump appointed Justin Peterson, Managing Partner of DCI Group, to the Oversight Board. This resulted in the termination of the term of Oversight Board member Arthur Gonzalez because former Bankruptcy Judge Gonzalez had been the appointee of President Obama. The Oversight Board looks forward to Mr. Peterson's participation as an Oversight Board member. Professor David Skeel was named Chairperson of the Oversight Board in early October, taking over the role from José Carrión, who, after serving over four years, resigned effective October 5, 2020. Accordingly, the Oversight Board currently has four members (Professor Skeel, Mr. Justin Peterson, Ms. Ana Matosantos, and Mr. Andrew Biggs).

2.     The Oversight Board and the Government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus, while also slowly and prudently reopening critical businesses as the pandemic is controlled and providing the people of Puerto Rico with ongoing reasonable, comprehensive, and sustainable solutions. The Oversight Board recently held a meeting with budgetary recipients, including hospitals and medical centers, which have been allocated $674 million to improve critical healthcare services and infrastructure in fiscal years 2020 and 2021. The Oversight Board urged them to make effective and timely use of this funding given the ongoing pandemic and the criticality of the public healthcare sector. Also, as set forth in previous Status Reports, the Oversight Board has worked closely with the Government over the past several months to define how to best utilize over $750 million in emergency funding, with a clear focus on responding to and managing the pandemic.

3. In addition, the Oversight Board continues to evaluate the currently proposed plan of adjustment in light of the most recent certified fiscal plan and the incoming data relative to the short-term and long-term impacts of COVID-19 on the Commonwealth's economic future. The Oversight Board remains committed to identifying any changes necessary to render the currently proposed plan a sustainable, affordable, and feasible plan at the soonest possible date.

II. **General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments**

4. The Oversight Board agrees with Governor Wanda Vázquez Garced that the health, safety, and economic welfare of the people of Puerto Rico must be the number one priority. On October 16, 2020, the Oversight Board proposed that the Government temporarily expand Medicaid coverage to more than 200,000 Puerto Ricans, providing them with health insurance during the COVID-19 pandemic. The temporary expansion of Medicaid would end on September 30, 2021, when the federal government's increased coverage of 82.2% of Puerto Rico's Medicaid expenditures is set to expire. Because federal funding at this level is not guaranteed beyond September 30, 2021, the Government's expansion of Medicaid must be temporary unless the United States Congress approves a long-term solution to Puerto Rico's Medicaid funding. The Oversight Board remains ready to work with the Government to implement the expansion in a fiscally responsible manner.

5. The Oversight Board has learned of at least $80 million in payments made between 2007 and 2020 by the Puerto Rico Department of Education ("PRDE") to employees who were not working because PRDE lacks an automated attendance system connected to its payroll system. The Certified Fiscal Plan requires the implementation of an effective automated time and attendance system to prevent the Government from losing millions of dollars each year in overpayments to employees, and to ensure Puerto Ricans' tax dollars are used efficiently and

3

honestly. The Oversight Board provided certain steps that PRDE and the Government must take to remedy the issue with respect to PRDE as well as other departments and agencies throughout the Government, and to comply with the Certified Fiscal Plan in establishing budgetary controls that ensure fiscal accountability and balance.

6. The relationship between the Oversight Board and the Government continues to be collaborative subject, however, to the Government's repeated enactments and implementations of laws contrary to PROMESA, the Certified Fiscal Plan, the Certified Budget, and correspondence from the Oversight Board.

### III. General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters

7. As the Court is aware, the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order") was entered on March 12, 2020, and the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order") was entered on April 1, 2020.

8. To date, the Debtors have filed three notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), the *First Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 13603] (the "First ACR Notice"), the *Second Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14182] (the "Second ACR Notice"), and the *Third Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14785] (the "Third ACR Notice," and collectively, the "ACR Transfer Notices"). The First ACR Notice, the Second ACR Notice, and the Third ACR Notice transferred 1,000 claims (the "First ACR Designated Claims"), 2,500 claims (the "Second ACR Designated

4

Claims"), and 499 claims (the "Third ACR Designated Claims," and collectively, the "ACR Designated Claims"), respectively, into Administrative Claims Reconciliation. The First ACR Designated Claims, the Second ACR Designated Claims, and the Third ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Public Employee Procedures, and/or the Grievance Procedures (as defined in the ACR Order), as set forth in the ACR Transfer Notices.

9. On October 8, 2020, the Debtors filed their *Notice of Filing of First Administrative Claims Resolution Status Notice* [ECF No. 14515] and accompanying *First Administrative Claims Resolution Status Notice* [ECF No. 14515-1] (the "First ACR Status Notice"). Therein, the Debtors reported the successful resolution of hundreds of the First ACR Designated Claims. Further, each of the Second ACR Designated Claims received a mailing from ERS, the agency responsible for processing the Second ACR Designated Claims, which initiated the Pension/Retiree Procedures with respect to such claims. The Debtors anticipate that each of the Third ACR Designated Claims will receive a mailing from the agency responsible for processing the Third ACR Designated Claims in the coming weeks.

10. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on November 6, 2020. The Debtors anticipate transferring additional claims into Administrative Claims Reconciliation at that time. To date, the Debtors have filed four notices transferring claims into the ADR Procedures (as defined in the ADR Order): the *First Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 13609] (the "First ADR Notice"); the *Second Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14090] (the "Second ADR Notice"), the *Third Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14521] (the "Third ADR Notice"); and the *Fourth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14786] (the "Fourth ADR Notice"). The First ADR

5

Notice, the Second ADR Notice, the Third ADR Notice, and the Fourth ADR Notice transferred 21 claims (the "First ADR Designated Claims"), 6 claims (the "Second ADR Designated Claims"), 21 claims (the "Third ADR Designated Claims"), and 67 claims (the "Fourth ADR Designated Claims") respectively, into the ADR Procedures.

11. As noted in the *First Alternative Dispute Resolution Status Notice* [ECF No. 14185-1] (the "First ADR Status Notice"), the First ADR Designated Claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures. Offer letters were sent to the address of record for each of the First ADR Designated Claims on September 8, 2020, and responses were due from the claimants on October 5, 2020. The Debtors are evaluating the responses received and attempting to engage the claimants in the hopes of achieving a consensual resolution of the First ADR Designated Claims. In addition, offer letters were sent to the holders of the Second ADR Designated Claims on October 23, 2020. Responses to those offer letters are due on November 17, 2020. In addition, the Debtors are currently preparing offers with respect to the Third ADR Designated Claims and the Fourth ADR Designated Claims and anticipate sending offer letters to such claimants as soon as practicable.

12. Further, the Court's *Order Regarding Pending Omnibus Objections* [ECF No. 14419] (the "Satellite Hearing Procedures Order") set hearings on the Adjourned Objections (as defined in the Satellite Hearing Procedures Order) for November 18, 2020 and November 20, 2020, and ordered the Debtors to file any notice of transfer into the ADR Procedures or Administrative Claims Reconciliation on or before the Debtors' reply deadline for such Adjourned Objections, or November 11, 2020 and November 13, 2020. The Debtors anticipate filing additional ADR Transfer Notices and ACR Transfer Notices on those dates.

13. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 7,000, however, the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but the Debtors currently project transferring a few hundred claims into the ADR Procedures during the current calendar year.

### IV. PRIDCO's RSA and Potential Title VI Filing

14. The Oversight Board has certified a fiscal plan and fiscal year 2021 budget for PRIDCO. The fiscal plan and budget have established priorities for PRIDCO including, among other requirements, conducting a reserve study, establishing a capital expenditure reserve fund, providing incentives for increased capital expenditure authority, the completion of a needs assessment relating to asset management information systems, and conducting feasibility studies for implementing alternative operating strategies. These steps are at the heart of the effort to incentivize manufacturing companies, including those in the pharmaceutical and medical device industry, to return operations to the United States and Puerto Rico, and are critical to projecting PRIDCO's future cash flows and sustainable debt. It is the view of the Oversight Board that once PRIDCO has a better understanding of the condition of its portfolio, including its building stock, its needs for investing in capital expenditures over the life of its portfolio, and impacts on occupancy, PRIDCO will be in a better position to make financial and strategic decisions for the portfolio and a restructuring of PRIDCO's indebtedness. The Oversight Board's professionals and PRIDCO continue to have discussions over open issues identified in the fiscal plan.

15. PRIDCO has public bonds in the outstanding principal amount of approximately $150 million and $23 million in interest accrued thereon. AAFAF previously informed the Court and the Oversight Board that AAFAF had entered into a restructuring support agreement (an "RSA") with over two-thirds of those bondholders. As of the date hereof, AAFAF has not proposed the RSA as a Qualifying Modification to the Oversight Board and the Oversight Board does not believe that is practicable before the issues explained above are resolved.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: October 27, 2020<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>/s/ *Martin J. Bienenstock*<br>Martin J. Bienenstock (*pro hac vice*)<br>Brian S. Rosen (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>      brosen@proskauer.com<br>      ppossinger@proskauer.com<br>      ebarak@proskauer.com<br><br>-and-<br><br>/s/ *Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br><br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Attorneys for the Financial Oversight and Management Board as Representative of the Debtor* |

9