*Response Deadline: November 19, 2020*
*Hearing Date: TBD*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br><br>Title III<br><br>No. 17 BK 3566-LTS<br><br>Re: Adv. Pro. Nos. 19-00356, 19-00357, 19-00359, and 19-00361 |

## COMMITTEES' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LAURA GONZALEZ ON *ULTRA VIRES* ISSUES

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "Title III Cases"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

BACKGROUND .......................................................................................................................3

    A. The ERS Enabling Act And Its Official English Translation. .............................3

    B. Dr. Gonzalez's Testimony. ...................................................................................4

ARGUMENT .............................................................................................................................4

I. Dr. Gonzalez Is Not Qualified To Opine On The Correct English Translation Of The ERS Enabling Act. ..........................................................................................................................5

II. Dr. Gonzalez Did Not Apply A Reliable Translation Methodology. ........................................8

III. Dr. Gonzalez's Testimony Will Not Assist The Court Because The Translation Of "Tomar Prestado" Is Irrelevant To The Parties' Arguments. .................................................................9

CONCLUSION........................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bogosian v. Mercedes-Benz of N. Am., Inc.*,
 104 F.3d 472 (1st Cir. 1997)...................................................................................................5

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
 752 F.3d 82 (1st Cir. 2014)......................................................................................................4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993).................................................................................................................1

*FPP, LLC v. Xaxis US, LLC*,
 No. 14-CV-6172, 2017 WL 11456572 (S.D.N.Y. Feb. 13, 2017) (Swain, J.) .......................10

*Gen. Elec. Co. v. Joiner*,
 522 U.S. 136 (1997).................................................................................................................8

*Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*,
 No. 00-CV-3235, 2003 WL 21108232 (S.D.N.Y. May 14, 2003) (Swain, J.) ........................8

*Nook v. Long Island R. Co.*,
 190 F.Supp.2d 639 (S.D.N.Y. 2002) (Swain, J.) .....................................................................5

*Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*,
 958 F.2d 1169 (1st Cir. 1992)..................................................................................................5

*United States v. Mehanna*,
 735 F.3d 32 (1st Cir. 2013)....................................................................................................10

*Vadala v. Teledyne Indus., Inc.*,
 44 F.3d 36 (1st Cir. 1995)....................................................................................................8, 9

**Statutes**

2 L.P.R.A. § 189, 223 ....................................................................................................................3

2 L.P.R.A. § 226 .............................................................................................................................9

3 L.P.R.A. § 779(d)................................................................................................................ *passim*

31 L.P.R.A. § 13 .............................................................................................................................9

**Other Authorities**

Federal Rule of Evidence 702............................................................................................... *passim*

Pursuant to Federal Rules of Evidence 702, 401, and 402 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, the Official Committee of Unsecured Creditors, and the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (collectively, the "**Committees**") hereby move to exclude the expert testimony of Dr. Laura Gonzalez offered in support of the ERS Bondholders' motion for summary judgment on the *ultra vires* issues [ERS Dkt. 971; Commonwealth Dkt. 14241] (the "**ERS Bondholders'** *Ultra Vires* **MSJ**").[1]

## INTRODUCTION

1. The fundamental dispute in the parties' cross-motions for summary judgment on the *ultra vires* issues is whether the ERS Enabling Act, as amended in 1988, authorized ERS to incur debt by means of underwritten public bond offerings. The ERS Bondholders argue that public bond offerings were authorized under two prongs of the relevant statutory provision, the first being its authorization of ERS to "tomar prestado" from a financial institution. The official English version of the statute translates "tomar prestado" as "to seek a loan." The ERS Bondholders have taken the position that the official translation is incorrect and that the only correct translation of "tomar prestado" is "to borrow."

2. Although neither side's arguments depend in any way on the translation of "tomar prestado," the ERS Bondholders' summary judgment motion was accompanied by a Declaration of Dr. Laura Gonzalez, which attaches and adopts as sworn testimony her expert report on the

---

[1] References to "ERS Dkt." are to filings in Title III Case No. 17-03566. References to "Commonwealth Dkt." are to filings in the lead Title III Case No. 17-03283. Capitalized terms used but not defined herein have the meanings ascribed to them in the Committees' motion for summary judgment on *ultra vires* issues. [*See* ERS Dkt. 978.]

"proper translation" of the relevant statutory provision. In her report, she opines that "to borrow" is the only proper translation of "tomar prestado." But when Dr. Gonzales was asked:

> **Q: "Do you have specific expertise in translating between Spanish as it is spoken and written in Puerto Rico, and English?"**

Her answer was: **"No."** (Gonz. Dep., attached hereto as Ex. 1, at 73:8 -11 (emphasis added).) That alone disable Dr. Gonzalez from offering the opinions set forth in her report.

    3.    As demonstrated below, Dr. Gonzalez's opinion fails to meet all three of the separate requirements to be admissible as expert testimony under Federal Rule of Evidence 702 and applicable case law. To begin with, as she herself admits, she is not qualified to opine on the proper translation of a Puerto Rican statute. She is a finance professor who happens to speak Spanish. She is not a credentialed translator, and she admits to having no specialized knowledge of or specific experience translating the Puerto Rican dialect of Spanish. The deficiencies that disqualify her to provide an "expert" opinion in this case include:

- Dr. Gonzalez has not professionally translated any materials since she had a short, part-time job translating English to Spanish while earning her Ph.D. nearly fifteen years ago. [Gonz. Dep. at 55:7-57:10.]

- Dr. Gonzalez has not instructed students in the Spanish language other than a class she taught as an undergraduate assistant and certain limited tutoring engagements while obtaining her degrees. [*Id.* at 47:20-51:10.]

- Dr. Gonzalez is not familiar with the dialect of Spanish spoken in Puerto Rico. [*Id.* at 69:18-71:6.]

- Dr. Gonzalez's only exposure to Puerto Rico before being retained as an expert in this litigation was a one-week vacation she took in 2014. [*Id.* at 67:21-69:17; 74:5-10.]

- Dr. Gonzalez's "expert report" contains a mere two and a half pages of analysis, consisting largely of *ipse dixit* and otherwise citing materials irrelevant to the translation of a Puerto Rican statute (including an English speech by Jane Goodall and speeches from politicians in Uruguay and Argentina). [Gonz. Rep., attached hereto as Ex. 2, at 6-8.]

2

4. Her opinion is also inadmissible because her report does not reflect any reliable methodology supporting her conclusion that the official English translation of "tomar prestado" is "incorrect," or that "tomar prestado" may *only* be translated as "to borrow." And finally, in any event, because the parties' arguments do not depend on the translation of "tomar prestado," her testimony will not help the Court resolve the *ultra vires* issues.

## BACKGROUND

**A.    The ERS Enabling Act And Its Official English Translation.**

5. As a creation and instrumentality of the Commonwealth, ERS has no authority to incur debt absent express legislative authorization. *See Raimundi Melendez v. Productora de Agregados, Inc.*, 162 D.P.R. 215, 224 (2004) ("administrative agencies only have those powers which have been explicitly granted by its enabling act and those that are indispensable to carry out those which have been conferred"). In 1988, the Commonwealth amended the ERS Enabling Act to permit ERS to incur debt through specified means (the "**1988 Amendment**").

6. The 1988 Amendment, which was drafted and enacted in Spanish, provides:

> La Junta de Síndicos podrá autorizar al Administrador para ***tomar prestado*** de cualquier institución financiera, del Gobierno del Estado Libre Asociado de Puerto Rico o del gobierno federal de los Estados Unidos de America, o mediante colocaciones directas de deuda, garantizando dicha deuda por los activos del Sistema.

3 L.P.R.A. §779(d) (Act 46-1988, §1) (emphasis added).

7. The Puerto Rico Office of Legislative Services (the "**PROLS**"), which is responsible for English-language translations of Commonwealth laws, prepared an official English translation of the 1988 Amendment. 2 L.P.R.A. §189, 223. The PROLS staff is non-partisan and resides in Puerto Rico.[2]

---

[2] *See, e.g., Office of Legislative Services of Puerto Rico: Who We Are and How We Best Serve You*, at 42-43, available at https://www.ncsl.org/Portals/1/documents/lrl/PR0907.pdf; Nat'l Conference of State

3

8. The PROLS' official English translation of the 1988 Amendment states:

> The Board of Trustees may authorize the Administrator to *seek a loan* from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America or through the direct placement of debts, securing said debt with the assets of the System.

[ERS Dkt. 979, Comms. SUF at ¶5 (Act 46-1988, §1) (off. transl.) (emphasis added).]

9. This debt authorization language was in effect in 2008 when ERS issued the ERS Bonds in three series of underwritten public offerings. [*Id*. at ¶¶5, 9-10, 18-20, 24, 42.]

**B.   Dr. Gonzalez's Testimony.**

10. Counsel for certain of the ERS Bondholders retained Dr. Gonzalez to provide expert testimony on the "proper translation" of the ERS Enabling Act's debt authorization provision (3 L.P.R.A. §779(d)) as it existed its 2008. [ERS Dkt. 971-1, at 8.] On July 1, 2020, the ERS Bondholders served the Committees with an Expert Report of Laura Gonzalez, Ph.D, in which she opines that the official English translation of the relevant provision is "inaccurate" in certain respects, including that to "seek a loan" is an incorrect translation of "tomar prestado," which should have been translated as "to borrow." [Gonz. Rep. at 6-7.] On September 11, 2020, the ERS Bondholders filed a Declaration of Laura Gonzalez along with their *Ultra Vires* MSJ. Dr. Gonzalez's declaration attaches her report and adopts it as testimony under penalty of perjury. [ERS Dkt. 975.]

## ARGUMENT

11. The proponent of expert testimony bears the burden of establishing its admissibility under Federal Rule of Evidence 702 and applicable case law. *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 96 (1st Cir. 2014). The ERS

---

Legislatures, *Legislative Staff Services: Profiles of the 50 States and Territories*, at 194, available at https://www.ncsl.org/print/legismgt/2006_Legis_Staff_Profiles.pdf.

4

Bondholders cannot meet their burden because Dr. Gonzalez's testimony is inadmissible on three independent grounds. As an initial matter, she is not qualified to serve as a translation expert. Second, she did not apply a reliable translation methodology in rendering her opinion. Finally, her opinion will not assist the Court because the parties' arguments do not depend in any way on the translation issues addressed in her report.

### I. Dr. Gonzalez Is Not Qualified To Opine On The Correct English Translation Of The ERS Enabling Act.

12. To qualify as an expert under Federal Rule of Evidence 702, a witness must have specialized "knowledge, skill, experience, training, or education" with respect to the "issue at hand." *Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476-77 (1st Cir. 1997); *see also Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1173-74 (1st Cir. 1992) (affirming exclusion of civil engineer's proposed expert testimony on mechanical engineering matters); *Nook v. Long Island R. Co.*, 190 F.Supp.2d 639, 643 (S.D.N.Y. 2002) (Swain, J.) (excluding industrial hygienist's proposed testimony on medical diagnosis). Dr. Gonzalez is a finance professor at a California state university who happens to speak Spanish because she grew up in the Basque region of Spain. She is not a professional Spanish-to-English translator, has never served as a translation expert, and has no qualifications or certifications as a translator. Her only translation experience consisted of translating from English to Spanish for a law school while she was a Ph.D. finance student in 2006. And even that experience was extremely limited, totaling fewer hours than she spent preparing her two-and-a-half-page report. All of her teaching and writing in her field of expertise is in English. She has not instructed students in Spanish other than a class she taught as an undergraduate assistant and certain limited tutoring engagements while obtaining her degrees. [Gonz. Dep. at 47:20-51:8.]

5

13. Moreover, while Dr. Gonzalez is a native Spanish speaker, she admitted in her deposition that she has no specialized knowledge of the Spanish dialect spoken in Puerto Rico, has no "specific experience" translating Puerto Rican Spanish, has never before translated a Spanish text drafted in Puerto Rico into English for a professional purpose, and has been to Puerto Rico only once—for a one-week vacation in 2014. [*Id*. at 47:20-51:8; 55:7-57:10; 67:21-68:12; 69:18-71:6; 74:5-10.]

14. She also admitted that differences in Spanish dialects can impact translations and their accuracy [*id.* at 89:15-90:6], but she evaded questioning on differences between dialects spoken in Spain and the dialect spoken in Puerto Rico:

> **Q:** [T]he Spanish in Latin America is different from Spanish as it's spoken in Spain?
> **A:** We have dialects in Spain as well.
> **Q:** And are the dialects in Spain different than the dialects in Latin America?
> **A:** I am from the Basque country.
> **Q:** The dialects in Spain are different from the dialects in Latin America. Correct?
> **A:** Yes. We are a big family.
> **Q:** I'm sorry. What is your answer? Yes or no?
> **A:** We have a big family.

[*Id.* at 46:21-47:10.]

15. She continued her evasion by dodging and then claiming not to understand a simple question about whether Puerto Rico is part of Latin America:

> **Q:** Is Puerto Rico part of Latin America?
> **A:** What do you mean by Latin America?
> **Q:** You said that you spent all this time studying in Latin America, I'm using your view, what do you mean by Latin America, Dr. Gonzalez, in your definition, is Puerto Rico part of it?
> **A:** There are many different definitions of Latin America. If we consider Latin as the origin of the [romance] languages, that would include the speakers of Portuguese as well in the Americas, but since I did my masters in English, French and Spanish, I mean the Spanish in the Americas.

6

>**Q:** So, do you include Puerto Rico in your personal definition of Latin America?
>**A:** Puerto Rico, the people of Puerto Rico have been speaking Spanish in the Americas for [centuries], like the Spanish speakers in all the other countries and in all other areas, I know that Puerto Rico is not a country, in all the other areas in the Americas.
>**Q:** My question was different. Is Puerto Rico part of Latin America?
>**A:** The Spanish speakers of the Americas, that's what I mean.
>**Q:** Can you answer my question, is Puerto Rico part of Latin America?
>**A:** I will not enter for my definitions.
>**Q:** You have no view sitting here as to whether Puerto Rico is or is not part of Latin America?
>**A:** I am a very inclusive person. . . .
>**Q:** Dr. Gonzalez, you still haven't answered my question, is Puerto Rico part of Latin America?
>**A:** I do not understand your question.

[*Id.* at 107:10-109:20.]

16. Courts have excluded expert testimony where the proffered expert's knowledge and experience was not specific to the locality at issue. For instance, in *Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*, the issue was whether it was common knowledge among the general public in Puerto Rico that smoking cigarettes posed severe health risks. 405 F.3d 36, 39-40 (1st Cir. 2005). The First Circuit affirmed the district court's exclusion of expert testimony because the expert's academic qualifications centered not on Puerto Rico but on Haiti. She had not achieved a "meaningful threshold of expertise" with respect to Puerto Rico specifically, and her academic specializations were "irrelevant to the issue of common knowledge of the health risks of smoking." *Id.* at 40. Similarly, in *Chadwick v. WellPoint, Inc.*, the First Circuit affirmed the exclusion of expert testimony on "larger societal patterns" concerning "sex stereotyping about the roles of men and women." 561 F.3d 38, 48 (1st Cir. 2009). Although the expert had a general understanding of sex discrimination issues, that did not qualify her to testify about "what *these* supervisors meant, consciously or unconsciously, in using certain words" in the plaintiff's particular work environment. *Id.* (emphasis in original).

7

17. Likewise here, Dr. Gonzalez's native fluency in a different Spanish dialect falls far short of a "meaningful threshold of expertise" to opine on the proper translation of words used by Puerto Rican legislators in 1988. *Alvarez*, 405 F.3d at 40. And it is certainly no basis to prefer her proposed translation to the official, contemporaneous translation prepared by the non-partisan, on-island PROLS professionals whose job is to translate Puerto Rico statutes into English.

## II. Dr. Gonzalez Did Not Apply A Reliable Translation Methodology.

18. Under Rule 702, an expert opinion must be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." To satisfy this reliability requirement, the expert's report must expressly "include the factual basis and the process of reasoning which makes the conclusion viable." *Vadala v. Teledyne Indus., Inc.*, 44 F.3d 36, 38 (1st Cir. 1995). An expert's opinion does not satisfy the reliability requirement if it is based on no more than her own "*ipse dixit*," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), or, put differently, nothing more than her "subjective belief or unsupported speculation." *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.*, No. 00-CV-3235, 2003 WL 21108232, at *2 (S.D.N.Y. May 14, 2003) (Swain, J.).

19. Here, Dr. Gonzalez's opinion that the official English translation of "tomar prestado" is "incorrect" is based on her own *ipse dixit* and sources of marginal, if any, relevance. The only Puerto Rico law-related document Dr. Gonzalez cites is a 1978 law review article that uses "tomar prestado" in a discussion of the Puerto Rico Supreme Court's Equal Protection jurisprudence. [Gonz. Rep. at 7.] Although she recognized in her deposition that the meaning of a word or phrase can vary based on its context [Gonz. Dep. at 121:2-7], her report does not address why the use of "tomar prestado" in an article on constitutional law has any bearing on the meaning of "tomar prestado" in the completely different context of the ERS Enabling Act's debt authorization provision.

8

20. Going even farther afield, she cites a lecture that Jane Goodall delivered in English in Oxford, England in 2009 in which she used an "expression of unclear origin" that included the phrase "to borrow." [Gonz. Rep. at 7.] She then cites two speeches from politicians in Uruguay and Argentina that also included this same phrase and which translated the English "to borrow" as "tomar prestado." [*Id.* at 8.]

21. At most, these wildly out-of-context sources demonstrate that "tomar prestado" can sometimes be appropriately translated as "to borrow." They do not establish that "tomar prestado" can never appropriately be translated as "to seek a loan," let alone that such a translation is inappropriate in the context of the ERS Enabling Act's debt authorization provision. Likewise, her testimony that "*seek a loan* would appropriately be translated into Spanish as *efectuar/contratar un préstamo*" does not mean that "tomar prestado" could never be appropriately be translated as "to seek a loan." [*Id.* at 6.] In other words, Dr. Gonzalez's conclusion that the official English translation of "tomar pretado" is "incorrect," *i.e*, that her proposed translation of "tomar prestado" is the *only* possible translation, is not supported by any disclosed methodology or process of reasoning that "makes [her] conclusion viable." *Vadala*, 44 F.3d at 38. This is an especially glaring methodological gap given that, under Puerto Rico law, the official translation of a statute controls absent a showing that it is not "substantially satisfactory." *Segovia v. Tribunal de Distrito de San Juan*, 69 D.P.R. 4, 8 (1948); *see also* 2 L.P.R.A. §226; 31 L.P.R.A. §13. In short, Dr. Gonzalez's opinion is unreliable and thus inadmissible for this reason as well.

### III. Dr. Gonzalez's Testimony Will Not Assist The Court Because The Translation Of "Tomar Prestado" Is Irrelevant To The Parties' Arguments.

22. Finally, the Court should exclude Dr. Gonzalez's testimony because it would not help the Court adjudicate the *ultra vires* issues. "It is common ground that [under Rule 702] a trial court may bar expert testimony if that testimony will not assist the [trier of fact] to sort out

9

contested issues." *United States v. Mehanna*, 735 F.3d 32, 67 (1st Cir. 2013) (excluding expert testimony that "had no bearing on the relevant issue and perforce would not have helped the [trier of fact] to resolve it"). If expert testimony will not "'help the trier of fact' in any way," it should be excluded. *FPP, LLC v. Xaxis US, LLC*, No. 14-CV-6172, 2017 WL 11456572, at *1 (S.D.N.Y. Feb. 13, 2017) (Swain, J.).

23.     Dr. Gonzalez's testimony will not help the Court in any way because both sides' arguments are expressly indifferent to whether "tomar prestado" is translated as "to borrow" or as "to seek a loan." The Bondholders argue that ERS both "borrowed" and obtained a "loan" from the underwriters when it issued the ERS Bonds because a bond is a "loan" through which the issuer "borrows" money from the underwriters. [ERS Dkt. 971-1, at 9-11.] And while the Committees see no basis to disregard the official English translation ("to seek a loan") in favor of the Bondholders' proposed translation ("to borrow"), the Committees' argument is that ERS *neither* "borrowed" *nor* obtained a "loan" from the underwriters when it issued the ERS Bonds. This is because underwriters of public bond offerings are intermediaries between the issuer and the investing public, not lenders to the issuer, and thus public bond offerings have never been understood or referred to as "borrowings" or "loans." [ERS Dkt. 978 at ¶¶46-51.] In other words, the translation of "tomar prestado" is irrelevant to the Court's resolution of the *ultra vires* issues, and thus expert testimony on this point is unhelpful by definition.

## CONCLUSION

For all of the foregoing reasons, Movants respectfully request that the Court exclude the expert testimony of Laura Gonzalez, Ph.D. offered in support of the ERS Bondholders' *Ultra Vires* MSJ.

Dated: October 28, 2020 */s/ Robert Gordon*
San Juan, Puerto Rico

JENNER & BLOCK LLP
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
Landon Raiford (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
lraiford@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

- and –


*/s/ A.J. Bennzar-Zequeria*
BENNAZAR, GARCÍA & MILIÁN, C.S.P
A.J. Bennazar-Zequeira
Héctor M. Mayol Kauffmann
Francisco del Castillo Orozco
Edificio Union Plaza,
1701 Avenida Ponce de León #416
Hato Rey, San Juan
Puerto Rico 00918
ajb@bennazar.org
hector.mayol@bennazar.com
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for the Official Committee of
Retired Employees of Puerto Rico*

- and –

11

/s/ *Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*[3]

- and –

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*[4]

- and –

---

[3] As it relates to the Committee's Omnibus Claims Objection at Commonwealth Dkt. 5580.
[4] As it relates to the Committee's omnibus claims objections at Commonwealth Dkts. 5580 and 5586 and Adversary Proceeding Nos. 19-356, 19-357, and 19-361.

*/s/ John Arrastia*
GENOVESE JOBLOVE & BATTISTA, P.A.
John Arrastia, Esq. (*Pro Hac Vice*)
John H. Genovese, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jarrastia@gjb-law.com
jgenovese@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors*[5]

- and –

*/s/ Sunni Beville*
Sunni P. Beville, Esq. (*pro hac vice*)
Tristan G. Axelrod, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

- and –

*/s/ Alberto Estrella*
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting through the members of the Special Claims Committee*

---

[5] As it relates to Adversary Proceeding Nos. 19-356, 19-357, 19-359, and 19-361.

13