# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Related to ECF Nos. 14246, 14248 |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>Related to ECF Nos. 978, 979<br><br>***This Pleading Relates to the Commonwealth and ERS Only, and Should Be Filed in Both Dockets.*** |

# RESPONSE OF THE BANK OF NEW YORK MELLON,
# AS FISCAL AGENT, TO THE COMMITTEES' MOTION FOR
# SUMMARY JUDGMENT ON *ULTRA VIRES* ISSUES

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:  8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID:  3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

RESPONSE ......................................................................................................................... 5

I.     THE BONDS ARE VALID AND BINDING OBLIGATIONS OF ERS. ......................... 5

II.    THE MOVANTS CANNOT ESCAPE APPLICATION OF UCC § 8-202(b) ON
THE GROUNDS THAT NEITHER THE OVERSIGHT BOARD NOR THE
COMMITTEES ISSUED THE BONDS. .......................................................................... 5

        A.     The Identity Of The Objecting Party Is Irrelevant To Whether The Fiscal
Agent's Claim Should Be Disallowed Under § 502(b)(1) Of The
Bankruptcy Code. ................................................................................................. 6

        B.     ERS Is Challenging The Validity Of The Bonds. ..................................................... 9

        C.     The Committees Are "Issuers" For Purposes of § 8-202(b). ................................. 11

III.    THE MOVANTS FAILED TO SATISFY THEIR INITIAL BURDEN OF
DEMONSTRATING SUBSTANTIAL EVIDENCE OF NOTICE OF A DEFECT
GOING TO THE VALIDITY OF THE BONDS. ............................................................ 13

IV.    CEDE & CO. LACKED NOTICE OF ANY DEFECT GOING TO THE
VALIDITY OF THE BONDS. ......................................................................................... 17

CONCLUSION ..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................14

*Arcari v. Marder*,
    225 B.R. 253 (D. Mass. 1998) .........................................................13, 15

*In re Beverages Int'l Ltd.*,
    50 B.R. 273 (Bankr. D. Mass. 1985) ....................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................14

*Gray v. Evercore Restructuring L.L.C.*,
    544 F.3d 320 (1st Cir. 2008)..................................................................13

*Matter of Hawaii*,
    59 B.R. 410 (D. Haw. 1986) ..................................................................11

*Jones v. City of Boston*,
    752 F.3d 38 (1st Cir. 2014)....................................................................16

*Lindh v. Murphy*,
    521 U.S. 320 (1997)................................................................................10

*Maracich v. Spears*,
    570 U.S. 48 (2013)..................................................................................10

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)................................................................................16

*Moscato v. Technologies, Inc.*,
    No. 04 Civ. 2487(GBD), 2005 WL 146806 (S.D.N.Y. Jan. 21, 2015)....................................2

*In re Multiponics, Inc.*,
    622 F.2d 709 (5th Cir. 1980) .................................................................13

*New Jersey Bank, N.A. v. Bradford Sec. Operations*,
    690 F.2d 339 (3d Cir. 1982)......................................................................1

*Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*,
    549 U.S. 443 (2007)..................................................................................7

*U.S. Lines, Inc. v. U.S. Lines Reorganization Trust (In re U.S. Lines, Inc.)*,
    262 B.R. 223 (S.D.N.Y. 2001) ........................................................................................7

**Statutes**

19 L.P.R.A. § 401 *et seq.* ...................................................................................................1

11 U.S.C. § 502(a) ..............................................................................................................6

11 U.S.C. § 502(b) ....................................................................................................... *passim*

11 U.S.C. § 1103 ...............................................................................................................13

11 U.S.C. § 1109 ...............................................................................................................13

48 U.S.C. 2103 ..................................................................................................................10

48 U.S.C. § 2161(a) ............................................................................................................6

48 U.S.C. § 2161(c) ............................................................................................................7

48 U.S.C. § 2175(a) ..........................................................................................................10

48 U.S.C. § 2175(b) ..........................................................................................................10

U.C.C. § 8-110 ...................................................................................................................1

U.C.C. § 8-114 .................................................................................................................11

U.C.C. § 8-116 .................................................................................................................15

U.C.C. § 8-201(a) ........................................................................................................11, 12

U.C.C. § 8-202(b) ........................................................................................................ *passim*

U.C.C. § 8-202 cmt. 1 ......................................................................................................12

U.C.C. § 8-202 cmt. 3 ................................................................................................18, 19

**Rules**

*Bankruptcy Rule 3007* ....................................................................................................3, 7

**Other Authorities**

Anderson U.C.C. § 8-201:3 [Rev] ...................................................................................11

Anderson U.C.C. § 8-201:4 [Rev] ...................................................................................11

Bloomberg Bankruptcy Treatise, Part II: Creditors, the Debtor and the Estate,
   Chapter 51: Bankruptcy Code § 502.............................................................................7

ROBERT DOTY, BLOOMBERG VISUAL GUIDE TO MUNICIPAL BONDS, 152
   (Bloomberg Press, John Wiley & Sons, Inc., 2012) ...............................................19

The Bank of New York Mellon ("BNYM" or the "Fiscal Agent"), as fiscal agent under

the Pension Funding Bond Resolution (as supplemented, the "Resolution"), adopted on January

24, 2008, by The Employees Retirement System of the Government of the Commonwealth of

Puerto Rico ("ERS"), hereby responds to the motion for summary judgment [ECF No. 14246]

(the "Motion") as to the *ultra vires* challenge (the "*Ultra Vires* Challenge") to the enforceability

of ERS's pension funding bonds (the "Bonds"), filed by the Official Committee of Unsecured

Creditors (the "Official Committee"), the Official Committee of Retired Employees of the

Commonwealth of Puerto Rico (the "Retiree Committee" and, together with the Official

Committee, the "Committees"), and the Special Claims Committee (the "SCC") of the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board") (collectively, the

"Movants"), and respectfully represents as follows:[2]

## PRELIMINARY STATEMENT

The Movants' motion for summary judgment should be denied.  The Movants fail to

demonstrate as a matter of law that ERS lacked statutory authority to issue the Bonds.  Even if

the Movants could demonstrate that ERS lacked statutory authority to issue the Bonds, they

cannot overcome the validating effect of § 8-202(b) of the Uniform Commercial Code ("UCC").[3]

---

[2]   Capitalized terms used but not defined in this response have the meanings given in the Resolution.
      "ECF No." refers to the Electronic Case File No. in the Court's docket for the Title III proceeding of
      the Commonwealth of Puerto Rico, Case No. 17 BK 3283-LTS (D.P.R.), or as otherwise specified.

[3]   The Commonwealth of Puerto Rico enacted the Uniform Commercial Code (including Article 8) in
      1995 and Revised Article 8 in 1998.  19 L.P.R.A. § 401 *et seq.*  The Resolution is governed by and
      construed in accordance with Puerto Rico law; provided, however, that the formalities leading to the
      creation of the trusts and, to the maximum extent permitted by applicable law, the rights and duties of
      the Fiscal Agent, are governed by New York law.  Resolution § 1311.  Section 8-110 of the UCC
      provides that validity of securities is determined under the law of the issuer's jurisdiction—here,
      Puerto Rico.  Because the UCC is the same in Puerto Rico and New York and the jurisdictions do not
      construe the UCC differently, choice of law is a non-issue for purposes of this case.  *See New Jersey
      Bank, N.A. v. Bradford Sec. Operations*, 690 F.2d 339, 343 n. 9 (3d Cir. 1982) (UCC enacted in
      issuer's and plaintiff's jurisdiction and states do not construe Article 8 differently).  For ease of
      reference, this response cites only the uniform statute.

On the question of ERS's statutory authority to issue the Bonds, the Fiscal Agent joins in, and incorporates by reference as if specifically set forth herein, sections I and II of the opposition brief submitted contemporaneously herewith by the groups of beneficial owners of the Bonds (the "ERS Bondholder Groups") represented by Jones Day and White & Case LLP.  The Fiscal Agent files this response to explain why the Movants' efforts to undercut the applicability of § 8-202(b) and its validating effect on the Bonds cannot succeed.

The Movants concede that, under § 8-202(b), "a government security issued with a defect going to its validity is valid in the hands of a purchaser for value 'without notice' of the defect" where certain conditions are satisfied.  Motion ¶ 81.  As set forth more fully in the Fiscal Agent's motion for summary judgment concerning the *Ultra Vires* Challenge [ECF No. 14247] (the "Fiscal Agent's MSJ"), the Bonds are valid and enforceable notwithstanding an alleged defect going to their validity because each of the conditions of § 8-202(b) is satisfied.  Cede & Co., as nominee of The Depository Trust Company ("DTC"), purchased the Bonds for value without notice of any defect.  ERS received substantial consideration of hundreds of millions of dollars for each series of Bonds, and the Enabling Act authorized ERS expressly to borrow money without any restriction on purpose.  Because the conditions of § 8-202(b) are satisfied, ERS may not assert any defect going to the validity of the Bonds as a basis to disallow the proofs of claim filed by the Fiscal Agent for and on behalf of Cede & Co., as the registered owner of the Bonds, and all holders of beneficial interests in the Bonds.

Not surprisingly, then, the Movants challenge the application of § 8-202(b) to the Bonds on very limited grounds not applicable to the Fiscal Agent.  In that regard, the Motion is notable for what the Movants do *not* argue.  By way of example, the Movants do not challenge that the Bonds are held by a purchaser for value, or that ERS received substantial consideration in

exchange for the Bonds, or that the stated purpose of the Bonds is one for which ERS had power

to borrow money.  *See* U.C.C. § 8-202(b).  The Movants abandon the argument that § 8-202(b)

cannot apply to *ultra vires* bond issuances.  *See Omnibus Objection of the Official Committee of*

*Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section*

*502 and Bankruptcy Rule 3007 to Claims Filed or Asserted by Holders of ERS Bonds* [ECF No.

6482] (the "Retiree Committee Claim Objection") ¶¶ 83–89.  The Movants effectively concede

that all conditions to the enforceability of the Bonds under § 8-202(b) are satisfied with only two

exceptions, neither of which takes the Bonds outside the scope of § 8-202(b).

 *First*, the Movants make the absurd suggestion that § 8-202(b) cannot apply because ERS

is not challenging the validity of the Bonds.  As a threshold matter, that statement is not true.

The Movants expressly aver that ERS *is* challenging the Bonds' validity, through the Oversight

Board, as its sole legal representative in this Title III proceeding, and by the Puerto Rico Fiscal

Agency and Financial Advisory Authority ("AAFAF"), the governmental entity authorized to act

on ERS' behalf.  *See Committees' Statement of Undisputed Material Facts in Support of Motion*

*for Summary Judgment on Ultra Vires Issues* [ECF No. 14248] (the "Movants' SUF") ¶¶ 28, 30.

 Even if ERS were not challenging the Bonds' validity, the standard for disallowing a

claim under the Bankruptcy Code does not hinge upon the identity of the objecting party.

Rather, the appropriate inquiry is whether the claim is unenforceable *against the debtor*.  11

U.S.C. § 502(b)(1).  As explained in the Fiscal Agent's MSJ, the Court can enforce the Fiscal

Agent's claim against the debtor—ERS—because § 8-202(b) precludes ERS from asserting the

Bonds' invalidity as a defense.  Even if enforceability of the Bonds hinged upon the identity of

the objecting party, the suggestion that the Committees are not asserting defenses to enforcement

of the Bonds "in place of" ERS for purposes § 8-202(b), *see* Motion ¶¶ 84-87, is contrary to reality.  Moreover, such a construction of § 8-202(b) would deprive the statute of any meaning.

*Second*, the Movants argue that § 8-202(b) cannot validate the Bonds because certain (but not all) entities holding *security entitlements* with respect to the Bonds had notice of their "potential" invalidity.  Motion ¶¶ 88–103.  In so doing, the Movants ignore the central role of DTC and its nominee, Cede & Co., in the indirect holding system and under UCC Article 8.[4] Because Cede & Co. is the purchaser and registered owner of the Bonds, only notice (or lack thereof) to Cede & Co. is relevant for purposes of § 8-202(b), and Cede & Co. had no notice of the alleged invalidity of the Bonds.  The Fiscal Agent placed Cede & Co.'s notice (or lack thereof) expressly at issue in this proceeding, yet the Movants fail to present any facts or make any argument concerning notice to Cede & Co.  Putting aside the Movants' conclusory request that the Court enter an order disallowing "all ERS Bondholder claims in their entirety," Motion ¶ 104, the Movants offer no basis to seek summary judgment as against the Fiscal Agent.  By failing to address notice to Cede & Co., the Movants fail to satisfy their initial burden of demonstrating the absence of a genuine issue of material fact.  The Court cannot grant the Movants summary judgment against the Fiscal Agent on this record.

Indeed, what the record does demonstrate is that Cede & Co. had no notice of any defect going to the validity of the Bonds when Cede & Co. purchased the Bonds in 2008.  The information made available to Cede & Co. at the time of the issuance confirmed that the Bonds were valid, authorized, binding, and enforceable.  *See Response and Additional Facts of The Bank of New York Mellon, as Fiscal Agent, to the Committees' Statement of Undisputed Material*

---

[4]    A demonstrative illustrating the indirect holding system and its application to the Bonds was included as part of the Fiscal Agent's MSJ.  *See* Fiscal Agent's MSJ at 16.

*Facts in Support of Motion for Summary Judgment on Ultra Vires Issues* ("<u>BNYM Additional</u>

<u>SUF</u>"), filed contemporaneously herewith, § II, ¶¶ 1–11.  As a market utility serving to improve

trading efficiency through the immobilization of securities, Cede & Co. had no duty to perform

due diligence regarding the validity of the Bonds or otherwise to look beyond the opinions of

ERS's bond counsel stating that the Bonds are valid and enforceable.  *Id.* ¶ 12.  The Movants'

effort to escape the validating effect of § 8-202(b) on the basis that the purchaser of the Bonds

had notice of a defect fails as a matter of law when applied to Cede & Co., and summary

judgment cannot be granted in favor of the Movants.

<b><u>RESPONSE</u></b>

**I.     THE BONDS ARE VALID AND BINDING OBLIGATIONS OF ERS.**

The Enabling Act authorized ERS to borrow approximately $3 billion by issuing the

Bonds in 2008.  In response to the Movants' arguments that the Bonds were issued *ultra vires*,

and to avoid duplicative briefing, the Fiscal Agent joins in, and incorporates by reference as if

specifically set forth herein, sections I and II of the ERS Bondholder Groups' opposition brief

filed contemporaneously herewith.[5]  As explained in the ERS Bondholder Groups' opposition

brief, the Enabling Act authorized the issuance of the Bonds as a borrowing from financial

institutions and as a direct placement of debt.  If the Court agrees that ERS had statutory

authority to issue the Bonds, there is no need to reach the application of § 8-202(b).

**II.    THE MOVANTS CANNOT ESCAPE APPLICATION OF UCC § 8-202(b) ON
THE GROUNDS THAT NEITHER THE OVERSIGHT BOARD NOR THE
COMMITTEES ISSUED THE BONDS.**

The Movants' argument that they can avoid § 8-202(b) because they are not "issuers" of

the Bonds for purposes of the UCC, *see* Motion ¶¶ 83–87, fails on multiple levels.

---

[5]     To the extent of any inconsistency between sections I and II of the ERS Bondholder Groups'
opposition brief and this response, this response shall control.

*First*, this argument suffers from the straw man logical fallacy.  Whether the Movants are "issuers" under § 8-202 is irrelevant to whether the Fiscal Agent's claim should be disallowed under § 502(b)(1) of the Bankruptcy Code.  Under the latter section, regardless of the identity of the objecting party, the Court need ask only whether the Fiscal Agent's claim is enforceable *against ERS*.  Understanding that § 8-202(b) makes the Fiscal Agent's claim enforceable against ERS, *see generally* Fiscal Agent's MSJ, it is no surprise that the Movants ignore the standard for disallowing a claim under § 502(b)(1) and offer instead their straw man argument.

*Second*, even if the enforceability of the Bonds hinged upon the identity of the objecting party, ERS, acting through its sole legal representative in this Title III proceeding, has objected to the Fiscal Agent's claim.  Because the issuer of the Bonds is challenging their validity, the rules set forth in § 8-202(b) apply.

*Third*, even if ERS were not an objecting party, the Committees themselves are "issuers" within the scope of § 8-202(b) and cannot escape its validating effect on the Bonds.

### A.   The Identity Of The Objecting Party Is Irrelevant To Whether The Fiscal Agent's Claim Should Be Disallowed Under § 502(b)(1) Of The Bankruptcy Code.

Through its master bond debt proof of claim, the Fiscal Agent is enforcing its rights to payment by ERS under the Resolution and the Bonds.  *See* Claim No. 16777.[6]  The Fiscal Agent's claim "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).[7]  Each of ERS (through the Oversight Board as its legal representative in this Title III proceeding)

---

[6]   On February 15, 2018, the Court entered an order authorizing the Fiscal Agent to file a master proof of claim against ERS on behalf of itself and all holders of bond claims arising under the Resolution and the Bonds.  *See Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] ¶ 5.

[7]   Section 502 of the Bankruptcy Code applies in a Title III proceeding under PROMESA.  48 U.S.C. § 2161(a).

and the Committees (as statutorily appointed committees of creditors of ERS) assert that ERS

lacked statutory authority to issue the Bonds.[8]  The Court's role is to "determine the amount of

[the Fiscal Agent's] claim . . . and [] allow such claim in such amount, except to the extent that"

one of the enumerated exceptions applies.  11 U.S.C. § 502(b).  Only to the extent that the claim

"is unenforceable ***against the debtor*** . . . under . . . applicable law" would the Court have a

potential basis to disallow any part of the Fiscal Agent's claim.  11 U.S.C. § 502(b)(1) (emphasis

added).  Title III of PROMESA defines "debtor" as "the territory or covered territorial

instrumentality concerning which a case under this title has been commenced."  48 U.S.C.

§ 2161(c)(2).  In this Title III proceeding, the "debtor" is ERS.

Under § 502(b)(1) of the Bankruptcy Code, "any defense to a claim that is available

outside of the bankruptcy context is also available in bankruptcy."  *Travelers Cas. & Surety Co.*

*of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450 (2007).  "The import of section 502(b)(1) is

to allow the objecting party *to step into the shoes of the debtor* and assert any defense to a claim

that would have been available to the debtor outside of bankruptcy."  Bloomberg Bankruptcy

Treatise, Part II: Creditors, the Debtor and the Estate, Chapter 51: Bankruptcy Code § 502—

Allowance of Claims or Interests (emphasis added).  "To the extent that applicable law,

including state law, would afford the debtor a defense to the claim of a creditor absent

bankruptcy, such defense is available to [any party in interest] in objecting to the claim and

seeking its disallowance."  *U.S. Lines, Inc. v. U.S. Lines Reorganization Trust (In re U.S. Lines,*

---

[8]   *See* Retiree Committee Claim Objection ¶¶ 65–82; *Objection of Financial Oversight and
Management Board Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Proof of
Claim Against ERS by The Bank of New York Mellon, as Fiscal Agent (Claim No. 16777)* [ECF No.
9701] ("<u>FOMB ERS Claim Objection</u>") ¶ 11; *Omnibus Objection of the Official Committee of
Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement
System of Government of Puerto Rico* [ECF No. 5580] (the "<u>Official Committee Claim Objection</u>"
and, together with the FOMB ERS Claim Objection and the Retiree Committee Claim Objection, the
"<u>Claim Objections</u>") ¶¶ 23–55.

*Inc.)*, 262 B.R. 223, 234 n.9 (S.D.N.Y. 2001) (quoting 2 Collier Bankruptcy Manual, ¶ 502.03[2][b] (3d ed. 1998)).  The converse is no less true:  If the debtor does not have a defense to a claim, others have no defense and may not seek disallowance of the claim against the debtor.

For these reasons, the only relevant question under § 502(b)(1) of the Bankruptcy Code, regardless of who filed the objection to the Fiscal Agent's claim, is whether the claim is enforceable *against ERS*.  *See* 11 U.S.C. § 502(b)(1).  As set forth in the Fiscal Agent's MSJ, even if the Bonds were issued without statutory authority, they are valid and enforceable against ERS pursuant to § 8-202(b).  Fiscal Agent's MSJ § II.  Under § 8-202(b), the Bonds are treated as valid and enforceable in the hands of Cede & Co., notwithstanding any alleged defect going to their validity, because Cede & Co. purchased the Bonds for value when they were issued in 2008 and, at that time, it had no notice that ERS lacked statutory authority to issue the Bonds.  *See* Fiscal Agent's MSJ §§ II.B.1–2.  As a result, ERS—the issuer of the Bonds and the debtor in this Title III proceeding—cannot assert invalidity of the Bonds as a defense.  This is true regardless of the party objecting to the Fiscal Agent's claim.  Because allowance of the Fiscal Agent's claim depends solely upon whether the claim is enforceable *against ERS*, it makes no difference whether an objection is asserted by ERS or another party.  Regardless of the objecting party, § 502(b)(1) requires the Court to analyze the validity of the defenses as if they were asserted by ERS.  Only then can the Court determine whether those defenses make the claim "unenforceable against the debtor."  11 U.S.C. § 502(b)(1).

The enforceability of the Fiscal Agent's claim against ERS does not change simply because a different party in interest files the objection or, as in this case, another party in interest asserts the same objection as ERS.  Otherwise, an enforceable claim against a debtor would become unenforceable solely because of the party asserting the objection.  Were that true,

- 8 -

committees and other parties in interest would object routinely to raise defenses that the debtor

could not.[9]  The footnoted example highlights the sheer absurdity of an argument that would

deprive § 502(b)(1) of meaning.  The Court should reject the Movants' invitation to alter the

standard for disallowing a claim under § 502(b)(1) and thereby allow a debtor to defeat a

legitimate claim by enlisting some other party to assert a defense that the debtor clearly cannot.

> **B.**     **ERS Is Challenging The Validity Of The Bonds.**

Even if enforceability of the Bonds hinged upon the identity of the objecting party, the

Movants admit that ERS is challenging the Bonds' validity.  The Movants admit:  (i) "the

Government Parties' advisors in these cases determined that the issuance of the ERS bonds had

been *ultra vires* and decided to challenge them on that basis;" (ii) "[o]n November 3, 2017, the

Oversight Board raised the *ultra vires* issue with the Court in a motion for summary

judgment . . . ;" and (iii) "[o]n November 17, 2017, AAFAF filed a motion to dismiss . . . on the

basis that the ERS Bonds were issued *ultra vires* and are therefore invalid."[10]  Motion ¶¶ 23, 25–

26.  The Movants conveniently omit the fact that ERS, through the Oversight Board, filed its

own objection to the Fiscal Agent's claim in which ERS asserted a defect in the validity of the

Bonds and adopted the arguments made by the Committees in their objections to the Fiscal

---

[9]     A simple example illustrates this point.  Prior to the petition date, a debtor enters into a contract to
purchase widgets.  The seller delivers the widgets, but the debtor fails to make payment.  After the
petition date, the seller files a claim asserting its right to payment.  Only the creditors' committee
objects to the claim, and it does so based upon a defense of lack of consideration.  Of course, that
defense is not available to the debtor because the creditor provided widgets as consideration for
payment.  The creditors' committee could not overcome this obstacle by arguing that, although
consideration was given to the debtor, no consideration was given to the creditors' committee.  That
argument would be ridiculous.  Yet, that essentially is what the Movants argue here:  that a creditor's
claim against a debtor may be disallowed because a defense that is not available to the debtor is
available to the creditors' committee.

[10]    That AAFAF did not object to the Fiscal Agent's claim under § 502(b) of the Bankruptcy Code does
not alter the fact that AAFAF is challenging the validity of the Bonds in other procedural settings.
Further, there would be no reason for AAFAF to file a separate objection, duplicative of the FOMB
ERS Claim Objection, which already was filed for and on behalf of ERS.

Agent's claim.  *See* FOMB ERS Claim Obj. ¶ 11.  The Movants' argument that § 8-202(b) is not

applicable on the grounds that "the Oversight Board is not the 'enterprise' ultimately responsible

for the ERS Bonds, and therefore cannot be the 'issuer' of the ERS Bonds," Motion ¶ 86, again

misses the mark.  It does not matter that the Oversight Board did not itself issue the bonds; it

matters that the Oversight Board is challenging the validity of the Bonds for and on behalf of

ERS.

Understanding that ERS is the undisputed issuer of the Bonds, *see* Movants' SUF ¶ 8, the

argument that ERS and its legal representative (*i.e.*, the Oversight Board) can escape application

of § 8-202(b) defies reason.  Motion ¶¶ 86–87.  In a case under Title III of PROMESA, "[t]he

Oversight Board . . . is the representative of the debtor."  48 U.S.C. § 2175(b).  In that capacity,

"the Oversight Board may take any action necessary *on behalf of the debtor* to prosecute the case

of the debtor, including . . . otherwise generally submitting filings in relation to the case with the

court."  48 U.S.C. § 2175(a) (emphasis added).  In arguing about the definition of "issuer" under

Title VI of PROMESA, which has nothing to do with this Title III proceeding or UCC Article 8,

the Movants ignore these directly applicable provisions of Title III.  Motion ¶ 86.[11]

The Movants' fallacy is highlighted by the opening paragraph of the FOMB ERS Claim

Objection, in which the Oversight Board states:  "[ERS], by and through the [Oversight Board],

as the Debtor's sole representative pursuant to [PROMESA], files this supplemental

---

[11]   The Movants cite 48 U.S.C. § 2103 for the unremarkable proposition that PROMESA prevails over
any inconsistent general or specific provisions of territory law, State law, or regulation, *see* Motion
¶ 86 n.31, but the Movants do not even attempt to explain how § 8-202(b) is inconsistent with
PROMESA.  In the absence of any demonstrated irreconcilable inconsistency, § 8-202(b) must be
applied as written.  *See Maracich v. Spears*, 570 U.S. 48, 68  (2013) ("The provisions of a text should
be interpreted in a way that renders them compatible, not contradictory . . . . [T]here can be no
justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.")
(quoting A. Scalia & B. Garner, Reading Law 180 (2012)); *Lindh v. Murphy*, 521 U.S. 320, 336
(1997) (favoring reading that "accords more coherence" to the disputed statutory provisions).

objection . . . requesting entry of an order . . . disallowing the proof of claim filed by [the Fiscal

Agent] . . . ."  FOMB ERS Claim Objection p.1.  This statement alone demonstrates that ERS is

challenging the validity and enforceability of the Bonds.  That the Oversight Board did so on

ERS's behalf, as its statutorily-designated legal representative, does not change that conclusion.

Because ERS—the undisputed issuer of the Bonds—is challenging the validity of the Bonds, the

rules set forth in § 8-202(b) apply, regardless of whether other parties join that objection.

### C.    The Committees Are "Issuers" For Purposes of § 8-202(b).

Even if enforceability of the Bonds hinged upon the identity of the objecting party, and

even if ERS did not independently assert that the Bonds are not valid, each of the Committees is

treated as an "issuer" under § 8-202(b) for purposes of the Claim Objections.

The rules of § 8-202(b) "apply if an issuer asserts that a security is not valid."  U.C.C.

§ 8-202(b).  "With respect to . . . a defense to a security," the term "issuer" "includes a person

that . . . becomes responsible for, *or in place of,* another person described as an issuer in this

section."  U.C.C. § 8-201(a)(4) (emphasis added); *see* U.C.C. § 8-114 (extending evidentiary

rules to claims that "the plaintiff *or some person under whom the plaintiff claims* is a person

against whom the defense or defect cannot be asserted") (emphasis added).  The definition of

"issuer" is functional:  it includes any party asserting the defenses of the actual issuer of

securities.  *See* 8 Anderson U.C.C. § 8-201:3 [Rev] (3d ed.) ("When the question is . . . the

defenses available to the issuer, the word "issuer" includes not only the actual issuer but also any

person who . . . (4) becomes responsible for, or in place of, another person described as an issuer

in this section."); *id.* at § 8-201:4 ("The term 'issuer' is being used to describe the persons who

may have defenses that may be cut off under the Rules stated in Part 2."); *see also Matter of*

*Hawaii*, 59 B.R. 410, 412 (D. Haw. 1986) (a bankruptcy trustee comes within the definition of

"issuer.").

Considering this functional definition of "issuer," § 8-202(b) applies to any person who, in place of the original issuer, asserts that a security is not valid.  *See* U.C.C. §§ 8-201(a)(1), (4) and 8-202(b).  This is exactly what the Committees are seeking to accomplish with the Claim Objections.  The Committees are objecting to the Fiscal Agent's claim and asserting that the Bonds are not valid "in place of" ERS and, therefore, they must be treated as the issuer "[w]ith respect to" the asserted defenses.  U.C.C. § 8-201(a)(4).[12]

This reading makes senses within the overall context and purpose of § 8-202(b).  Section 8-202(b) covers "the rights of the purchaser for value . . . against the issuer."  U.C.C. § 8-202 cmt. 1.  "Subsection (b) gives to a purchaser for value without notice of the defect the right to enforce the security against the issuer despite the presence of a defect that otherwise would render the security invalid."  *Id.*, cmt. 3.  "[E]nforc[ing] the security against the issuer," of course, is precisely what the Committees are seeking to prevent.  Nothing in § 8-202 suggests that a purchaser for value loses its "right to enforce the security" just because a third party raises a defense of invalidity on the original issuer's behalf.  Allowing such an end-run around § 8-202(b) would deprive Article 8 of meaning and directly undermine the provision's purpose.

This reading also makes sense in the context of this Title III proceeding, wherein even the SCC agrees that the Committees act only in a derivative capacity relative to the Claim

---

[12]   The Movants cite no case where § 8-202(b) was disregarded in these circumstances, and the one case cited by the Movants does not help their cause.  In *Moscato v. Technologies, Inc.*, the Court determined that two companies issuing shares, rather than their directors, were "issuers" under Article 8 because "[t]he issuer is the person responsible for the performance of the obligations represented by a security," which is "*usually* the enterprise that places its name on the security certificate."  No. 04 Civ. 2487(GBD), 2005 WL 146806, *4 (S.D.N.Y. Jan. 21, 2015) (emphasis added).  This decision does not support the Movants for two reasons.  *First*, *Moscato* does not address the consequences of a third party asserting defenses to enforcement of a security "in place of" an issuer because the director—unlike the Committees in this case—did not assert any defenses on behalf of the companies.  *Second*, the Court's use of the word "usually" recognizes that, in some situations, "issuer" encompasses or comprises parties aligned with or derivative of the enterprise that places its name on the security certificate.

Objections. *See* Motion ¶ 87 n.32 (SCC does not join the arguments that the Committees are not

acting in a derivative capacity). The Committees are creatures of statute, existing and conferred

with standing only as a result of the commencement of ERS's Title III proceeding. *See generally*

11 U.S.C. §§ 1103, 1109. Outside of this Title III proceeding, the Committees would not exist

and would not be able to assert that the Bonds are *ultra vires* or resist enforcement under § 8-

202(b). It follows that the Fiscal Agent's claim against ERS rises or falls based on the rights and

obligations of ERS under § 8-202(b) and other applicable law. Again, the enforceability of the

claim against ERS does not change solely because ERS is in a Title III proceeding or some other

party objects to the Fiscal Agent's claim. In every instance, the rules of § 8-202(b) apply to

protect and preserve the Fiscal Agent's claims.

## III.   THE MOVANTS FAILED TO SATISFY THEIR INITIAL BURDEN OF DEMONSTRATING SUBSTANTIAL EVIDENCE OF NOTICE OF A DEFECT GOING TO THE VALIDITY OF THE BONDS.

The Movants seek judgment broadly disallowing "all ERS Bondholder claims in their

entirety," Motion ¶ 104, but fail to present substantial evidence of a valid opposition to the Fiscal

Agent's claim. "A party objecting to a claim has the initial burden of presenting a substantial

factual basis to overcome [its] prima facie validity." *In re Beverages Int'l Ltd.*, 50 B.R. 273, 280

(Bankr. D. Mass. 1985) (citing *In re Multiponics, Inc.*, 622 F.2d 709, 714 (5th Cir. 1980)).

Applying this standard to the Motion, and "[u]nlike typical summary judgment practice, . . . the

issue is whether the record before the [Court], viewed in a light most favorable to the [Fiscal

Agent], establishes 'substantial evidence' of a valid opposition to [the Fiscal Agent's claim]

sufficient to avoid a summary judgment," *Arcari v. Marder*, 225 B.R. 253, 255 (D. Mass. 1998)

(internal citations omitted), or that the Fiscal Agent's claim fails as a matter of law, *see Gray v.

Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008). Accordingly, to disallow the

Fiscal Agent's claim, the Court would need to determine, among other things, that there is

- 13 -

"substantial evidence" that Cede & Co., as the purchaser of the Bonds, had notice of a defect going to the validity of the Bonds and that the Bonds cannot be valid and enforceable under § 8-202(b) as a matter of law.[13]

The Movants do not event attempt to meet this standard. While purportedly seeking summary judgment as to all ERS Bondholder claims, the Movants inexplicably focus solely on claims asserted by certain holders of *security entitlements* relating to the Bonds and ignore the claims filed on behalf of the actual, registered owner of these securities. *See, e.g.*, Motion ¶¶ 89–90, 94, 96–97. In so doing, they deliberately sidestep the Fiscal Agent's master bond debt proof of claim and the arguments in support thereof, creating an improper implication that the Fiscal Agent did not file a claim.

In fact, the Fiscal Agent filed a master bond debt proof of claim against ERS in excess of $3 billion on account of the principal and interest due on the Bonds as of the commencement of ERS's Title III proceeding, plus all amounts due or becoming due to the Fiscal Agent and the Bondowner under the Resolution and the Bonds. *See* Claim No. 16777. As a defense to the Fiscal Agent's claim, the Movants asserted through the Claim Objections that the Bonds are invalid and cannot be enforced as a result of a defect in the issuance of the Bonds. In response to the Claim Objections, the Fiscal Agent explained that, even if ERS lacked statutory authority to issue the Bonds, the Bonds remain valid and enforceable under § 8-202(b) because the sole purchaser and registered owner of the Bonds—Cede & Co.—lacked notice of any defect going to

---

[13] At a minimum, the Movants have the initial burden of demonstrating that there is no genuine issue of material fact as to whether the purchaser of the Bonds had notice of a defect going to the validity of the Bonds and that the Bonds cannot be valid and enforceable under § 8-202(b) as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986) (summary judgment is appropriate only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Motion ¶ 88. The Motion fails to satisfy even this lesser standard.

- 14 -

the validity of the Bonds when Cede & Co. purchased the Bonds in 2008. *See Joinder of The Bank of New York Mellon, as Fiscal Agent, in the Response of Certain Secured Creditors of The Employees Retirement System of the Government of the Commonwealth of Puerto Rico to the Omnibus Claim Objections of the Official Committee of Unsecured Creditors and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico* [ECF No. 9013] ¶ 8.

Although the Movants have the initial burden of establishing "substantial evidence" of a valid opposition to the Fiscal Agent's claim, *Arcari*, 225 B.R. at 255, they fail to present any facts or make any argument in response to the Fiscal Agent's position that Cede & Co. lacked notice of any defect—alleged or otherwise—going to the validity of the Bonds at the time Cede & Co. purchased them. As more fully explained in the Fiscal Agent's MSJ, notice (or lack thereof) to Cede & Co. is a "genuine" and "material" fact issue because Cede & Co. is the only registered owner of the Bonds and the sole "purchaser" for purposes of § 8-202(b). U.C.C. § 8-116 ("A securities intermediary that receives a financial asset and establishes a security entitlement to the financial asset in favor of an entitlement holder is a purchaser for value of the financial asset."); Fiscal Agent's MSJ § II.B.1. Neither DTC nor Cede & Co. is even mentioned in the Movants' statement of material facts. *See generally* Movants' SUF. Because the Movants fail to present any evidence as to Cede & Co.'s notice of a defect when it purchased the Bonds in 2008, the Court cannot grant summary judgment disallowing the Fiscal Agent's claim.

Even if the Court determines that Cede & Co.'s knowledge (or lack thereof) is not relevant to a determination of validity under § 8-202(b), the entitlement holders that comprise the ERS Bondholder Groups (and the sole focus of the Motion) are *not* the only holders of beneficial interests in the Bonds. *See, e.g.*, Motion for Joinder, ECF No. 132 in Adv. No. 19-357 (individual investor "requests that the Court grants the Motion for Partial Summary Judgment,

- 15 -

that the action against her, an 88 year old, elderly, unsophisticated investor, . . . who initially
purchased ERS Bonds in the secondary market recommended by her Santander Securities broker
. . . be dismissed").  If the Court determines that each individual entitlement holder rather than
Cede & Co. is a "purchaser" of the Bonds for purposes of § 8-202(b), as the Movants appear to
suggest, then notice of the defect to each individual entitlement holder may become relevant.

       As with Cede & Co., the Movants fail to present any facts or make any argument that
each and every entitlement holder had notice of the defect going to the validity of the Bonds at
the time that they purchased their security entitlements.  Without even attempting a factual
showing as to these entitlement holders, the Movants want to disallow and expunge their claims
in their entirety.  Worse still, most of these entitlement holders have not had a full and fair
opportunity to present facts concerning when they purchased their security entitlements and their
lack of notice of any defect going to the validity of the Bonds at the time of purchase.  To
disallow and expunge the Fiscal Agent's master bond debt proof of claim, which was filed on
behalf of the registered owner of the Bonds and all holders of beneficial interests in the Bonds,
without providing individual entitlement holders a meaningful opportunity to raise factual issues
unique to them would violate due process.  *Jones v. City of Boston*, 752 F.3d 38, 56 (1st Cir.
2014) ("The Supreme Court has held that '[t]he fundamental requirement of due process is the
opportunity to be heard at a meaningful time and in a meaningful manner.'") (quoting *Mathews
v. Eldridge*, 424 U.S. 319, 333 (1976)).  For these reasons, a blanket grant of summary judgment
is unwarranted.

IV.   **CEDE & CO. LACKED NOTICE OF ANY DEFECT GOING TO THE VALIDITY OF THE BONDS.**

None of the Movants' legal arguments as to notice of a defect going to the validity of the Bonds under § 8-202(b) is effective as against Cede & Co.  Because Cede & Co. had no notice, the Movants cannot prevail against the Fiscal Agent as a matter of law.

*First*, the Movants do not allege that Cede & Co. was aware of any defect going to the validity of the Bonds before Cede & Co. purchased them in 2008.  *See* Motion ¶ 89.  To the contrary, a Managing Director of DTC explained that DTC only recently learned that any party questioned ERS's authority to issue the Bonds and "was not aware of any such matters at the time the [] Bonds were issued."  Declaration of John Faith, App. Ex. 9 to *Statement of Undisputed Material Facts in Support of the Motion of The Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* ("BNYM SUF") [ECF No. 14249], ¶ 10.

*Second*, events that occurred after 2008, such as the passage of Act 116 in 2011 and filings in this Title III proceeding, are irrelevant to whether DTC had notice of a defect when it became a purchaser of the Bonds in 2008.  *See* Motion ¶¶ 93–95, 99–103.  Section 8-202(b) considers only whether the purchaser had notice of a defect going to the validity of the securities at the time they were purchased.  *See* U.C.C. § 8-202(b)(1).

*Third*, the Movants' argument concerning Jones Day's alleged knowledge of the *ultra vires* issue, *see* Motion ¶¶ 96–98, obviously is irrelevant to Cede & Co., because there is no allegation that Cede & Co. retained Jones Day.

The Movants' final argument—that the Bondholders had reason to know that ERS lacked statutory authority to issue the Bonds based on the offering documentation and the language of the Enabling Act—falls flat when applied to Cede & Co.  *See* Motion ¶¶ 90–92.  Preliminarily,

the Movants cannot charge Cede & Co. with notice of a defect merely because the Bonds and

related documents referenced the Enabling Act.  U.C.C. § 8-202(b) cmt. 3 ("the issuer cannot, by

incorporating a reference to a statute or other document, charge the purchaser with notice of the

security's invalidity.").  Beyond the Enabling Act, the Movants charge the Bondholders with a

reason to know that ERS lacked statutory authority to issue the Bonds based upon their receipt

and review of the Official Statements and Resolution.  But Cede & Co. received those

documents only days before the Bonds were issued, BNYM Additional SUF § II, ¶¶ 4–6, and

had no duty or responsibility to ascertain the compliance of the securities with any local, state, or

federal laws or regulations.  *Id.* ¶ 12.  A contrary rule, effectively establishing a presumption that

securities are invalid until proven valid by a holder, would be contrary to logic, subvert

governments' ability to perform public functions, and injure public interests—particularly in the

context of a statutory scheme that makes it "the duty of the issuer, not of the purchaser, to make

sure that the security complies with the law governing its issue."  U.C.C. § 8-202 cmt. 3.

Far from giving Cede & Co. a reason to know of any defect going to the validity of the

Bonds, the Offering Statements and the Resolution, supported by certifications and opinions

from ERS, its counsel, and the Puerto Rico Secretaries of Justice and Treasury, confirmed that

the Bonds were authorized and valid.  BNYM Additional SUF § II, ¶¶ 4–8.  To reach a contrary

conclusion, Cede & Co. would have had to engage counsel to conduct an independent legal

analysis on only a few days' notice and substitute its judgment for that of ERS's bond counsel

and general counsel, who were charged with determining ERS's authority and who formally

opined that the Bonds were legal, valid, binding, and duly and validly authorized and issued.

There are no facts to suggest that such an analysis was required of or undertaken by Cede & Co.

Indeed, one of the reasons that "[b]ond counsel issue legal opinions [is to] assur[e] investors that

municipal securities are legal, valid, and enforceable under [local] law."  ROBERT DOTY,

BLOOMBERG VISUAL GUIDE TO MUNICIPAL BONDS, 152 (Bloomberg Press, John Wiley & Sons,

Inc., 2012); *see also id.* at 46, 69, 123; *accord* Doty Dep. Tr., App. Ex. 13 to BNYM SUF,

165:10-166:4 (confirming that bond counsel delivers opinion that bonds are validly issued);

U.C.C. § 8-202 cmt. 3 ("As a practical matter the problem of policing governmental issuers has

been alleviated by the present practice of requiring legal opinions as to the validity of the

issue.").  The legal opinions issued in connection with the Bonds, combined with similar

language in the Resolution and the Official Statement, imposed no duty upon Cede & Co. to

ascertain whether securities comply with applicable law and no "reason to know" that the Bonds

were not valid and enforceable.

## <u>CONCLUSION</u>

For these reasons, that Court should not grant the Movants summary judgment

disallowing and expunging the Fiscal Agent's master bond debt proof of claim in whole or in

part.  The Fiscal Agent respectfully requests that the Court enter an order denying the Motion.

*[The remainder of this page was intentionally left blank.]*

Dated:  October 28, 2020
        San Juan, Puerto Rico

Respectfully submitted,

**SEPULVADO, MALDONADO & COURET**

By:    */s/ Albéniz Couret-Fuentes*
        Albéniz Couret-Fuentes
        USDC-PR Bar No. 222207
        304 Ponce de León Ave. – Suite 990
        San Juan, PR 00918
        Telephone: (787) 765-5656
        Facsimile:  (787) 294-0073
        Email:  acouret@smclawpr.com

**REED SMITH LLP**

Eric A. Schaffer (*Pro Hac Vice*)
Luke A. Sizemore (*Pro Hac Vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email:  eschaffer@reedsmith.com
Email:  lsizemore@reedsmith.com

C. Neil Gray (*Pro Hac Vice*)
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email:  cgray@reedsmith.com

*Counsel to The Bank of New York Mellon,*
*as fiscal agent*