**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Related to ECF Nos. 14246, 14248 |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>Related to ECF Nos. 978, 979<br><br>***This Pleading Relates to the<br>Commonwealth and ERS Only,<br>and Should Be Filed in Both<br>Dockets.*** |

**RESPONSE AND ADDITIONAL FACTS OF THE BANK OF
NEW YORK MELLON, AS FISCAL AGENT, TO THE
COMMITTEES' STATEMENT OF UNDISPUTED MATERIAL FACTS IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON *ULTRA VIRES* ISSUES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID:  3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to Federal Rule of Civil Procedure 56, made applicable by Federal Rule of

Bankruptcy Procedure 7056, and Local Rule 56(c), The Bank of New York Mellon ("BNYM" or

the "Fiscal Agent"), as fiscal agent under the Pension Funding Bond Resolution (as

supplemented, the "Resolution"), adopted on January 24, 2008, by The Employees Retirement

System of the Government of the Commonwealth of Puerto Rico ("ERS"), hereby responds to

the *Committees' Statement of Undisputed Material Facts in Support of Motion for Summary

Judgment on Ultra Vires Issues* [ECF No. 14248] (the "Committees SUF"), and respectfully

states as follows:[2]

## I.      RESPONSE TO THE COMMITTEES' SUF

### A.      ERS Enabling Act and Debt Authorization Language

1.      ERS is a retirement and benefit system created by Act 447-1951 of the Puerto
Rico Legislative Assembly (as amended, the "ERS Enabling Act").  Act No. 447-1951 (codified,
as amended, at 3 L.P.R.A. §§ 761-788).

2.      ERS was created to provide pension and other benefits to retired employees of the
Commonwealth and its instrumentalities and municipalities (collectively, the "Government
Employers").  3 L.P.R.A. § 764.

3.      These benefits were to be funded from, among other sources, contributions from
the Government Employers as required by the ERS Enabling Act ("Employer Contributions"). 3
L.P.R.A. § 764.

4.      When first created in 1951, ERS was not authorized to borrow money.  Compare
Act No. 447-1951, §19 with Act No. 46-1988 (the "1988 Amendment"), §19.

5.      In 1988, the ERS Enabling Act was amended to permit ERS to incur two separate
categories of debt, and to secure that debt with ERS's assets. The Official English language
translation of this amendment states:

---

[2] Capitalized terms used but not defined in this response have the meanings given in the *Motion of The Bank of New
York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires
Challenge* [ECF No. 14247], and the accompanying *Statement of Undisputed Material Facts in Support of the
Motion of The Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56
Regarding Ultra Vires Challenge* [ECF No. 14249] (the "BNYM SUF"). "ECF No." refers to the Electronic Case
File No. in the Court's docket for the Title III proceeding of the Commonwealth of Puerto Rico, Case No. 17 BK
3283-LTS (D.P.R.), or as otherwise specified.

> The Board of Trustees may authorize the Administrator to **seek a loan** from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America **or through the direct placement of debts**, securing said debt with the assets of the System.

Act 46-1988, § 1 (emphasis added).

**RESPONSE TO ¶¶ 1–5:**  The Fiscal Agent incorporates by reference and adopts the *Response of the ERS Bondholders to the Committees' Statement of Undisputed Materials Facts in Support of Motion for Summary Judgment on Ultra Vires Issues*, filed contemporaneously herewith (the "Beneficial Holders' Rule 56 Response") in respect of paragraphs 1–5.[3]

### B.    Events Leading to 2008 Bond Issuance

6.    In 2006, the Commonwealth considered issuing general obligation ("GO") bonds as an additional means to provide funding to ERS, but that legislation did not pass in the House of Representatives and was never enacted. Ex. 1, Cancel-Alegría Dep. Tr. 59:5-61:10.

7.    In 2007, Merrill Lynch issued a formal proposal to ERS recommending that ERS issue $7 billion in bonds.[4]

**RESPONSE TO ¶¶ 6–7:**  The Fiscal Agent incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraphs 6–7.

### C.    2008 Bond Issuance

8.    As originally conceived, ERS would issue a total of $7 billion in ERS Bonds. Ex. 3, Series A Official Statement at 17.

9.    On January 24, 2008, the ERS Board approved the ERS Bond Resolution, which authorized the issuance of the ERS Bonds. Ex. 13, Series A Bond Resolution Section 201.

**RESPONSE TO ¶¶ 8–9:**  The Fiscal Agent incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraphs 8–9.

---

[3] Whenever the Fiscal Agent incorporates by reference herein a response from the Beneficial Holders' Rule 56(c) Response, it does so only to the extent not inconsistent with the Fiscal Agent's accompanying memorandum of law and the responses and additional facts as set forth herein.

[4] Ex. 2, Merrill Lynch August 7, 2007 PowerPoint, ERS_0047061-97.

10.     Pursuant to the Bond Resolution, in 2008, ERS issued three series of ERS bonds (Series A, B and C) in an underwritten public offerings to investors. The aggregate outstanding principal amount of the ERS Bonds (including accretion on capital appreciation bonds) was approximately $3 billion, instead of the originally planned $7 billion in bonds. *See* Ex. 3, Series A Official Statement; Ex. 4, Series B Official Statement; Ex. 5, Series C Official Statement.

**RESPONSE: Dispute** that ERS issued the Bonds to investors.  The owner of all of the

Bonds is and always has been Cede & Co., as nominee for The Depository Trust Company

("DTC"), and the Bonds are registered in the name of Cede & Co., as nominee for DTC.  *See*

*BNYM SUF*, App. Exs. 2–4 (Supplemental Resolutions § 2.5), App. Ex. 5 (Series A Bonds (PR-

ERS-000003673–3768)), App. Ex. 6 (Series B Bonds (PR-ERS-000004346–4441)), App. Ex. 7

(Series C Bonds (PR-ERS-000005222–5245)).  Purchases of security entitlements in the Bonds

under the DTC system are made by or through DTC's Participants ("Direct Participants"), which

receive a credit for such security entitlements on DTC's records.[5] The interest of each

entitlement holder of the Bonds ("Beneficial Owner") is in turn recorded on the applicable Direct

and Indirect Participants' records.  *BNYM SUF*, App. Exs. 10–12 (Book Entry Appendix).

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'

Rule 56 Response in respect of this paragraph.

11.     The ERS Bonds were issued in a public offering.  This is clear from the facts and circumstances surrounding the issuances themselves.

12.     The ERS Bonds were rated by all three major rating agencies.  *See* Ex. 3, Series A Offering Statement at 4; Ex. 4, Series B Offering Statement at 4; Ex. 5, Series C Offering Statement at 4.

**RESPONSE TO ¶¶ 11–12:**  The Fiscal Agent incorporates by reference and adopts the

Beneficial Holders' Rule 56 Response in respect of paragraphs 11–12.

13.     There were few restrictions on what type of investor could purchase the bonds; for example, there was no requirement that bond purchasers be financial institutions or

---

[5] Access to the DTC system is also available to other U.S. and non-U.S. securities brokers and dealers, banks, trust companies, and clearing corporations that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly ("Indirect Participants").

sophisticated investors, or that they acquire the ERS Bonds solely for investment without an intent to distribute in the public municipal bond market. *See, e.g.*, Ex. 3, Series A Offering Statement.

**RESPONSE:  Dispute** that "investors," at least as used in this paragraph, purchased

Bonds.  The owner of all of the Bonds is and always has been Cede & Co., as nominee for DTC,

and the Bonds are registered in the name of Cede & Co., as nominee for DTC.  *BNYM SUF*,

App. Exs. 2–4 (Supplemental Resolutions § 2.5), App. Ex. 5 (Series A Bonds (PR-ERS-

000003673–3768)), App. Ex. 6 (Series B Bonds (PR-ERS-000004346–4441)), App. Ex. 7

(Series C Bonds (PR-ERS-000005222–5245)).  Purchases of security entitlements in the Bonds

under the DTC system are made by or through Direct Participants, which receive a credit for

such security entitlements on DTC's records.  The interest of each Beneficial Owner is in turn

recorded on the applicable Direct and Indirect Participants' records.  *BNYM SUF*, App. Exs. 10–

12 (Book Entry Appendix).

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'

Rule 56 Response in respect of this paragraph.

14.  The bonds were sold by the typical publicly-offered bond minimum denomination of $5,000 in principal amount (or for capitalized interest Bonds, $5,000 maturity amount), *see, e.g,* Ex. 3, Series A Official Statement at 28; Ex. 4, Series B Official Statement at 30; Ex. 5, Series C Official Statement at 30, instead of the $100,000 minimum denominations more common in direct placements. Ex. 6, Doty Report at 6.

**RESPONSE:  Disputed.** ERS issued the Series A Bonds, in the amount of

$1,588,810,799.60, on or about January 31, 2008.  *BNYM SUF*, App. Ex. 2 (Supplemental

Resolution, Series A, § 2.1 (PR-ERS-000003477–3500)); *BNYM SUF*, App. Ex. 5 (Series A

Bonds (PR-ERS-000003673–3768)).  ERS issued the Series B Bonds, in the amount of

$1,058,634,613.05, on or about June 2, 2008.  *BNYM SUF*, App. Ex. 3 (Supplemental

Resolution, Series B, § 2.1 (PR-ERS-000003926–3949)); *BNYM SUF*, App. Ex. 6 (Series B

Bonds (PR-ERS-000004346–4441)).  ERS issued the Series C Bonds, in the amount of

$300,202,930.00, on or about June 30, 2008.  *BNYM SUF*, App. Ex. 4 (Supplemental Resolution,

Series C, § 2.1 (PR-ERS-000004602–4626)); *BNYM SUF*, App. Ex. 7 (Series C Bonds (PR-ERS-

000005222–5245)).

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'

Rule 56 Response in respect of this paragraph.

15.     The issuances were marketed and sold by underwriting syndicates, led by UBS.[6]

16.     ERS did not engage in any direct negotiations with the public investors in setting
these terms or establishing bond prices.  Instead, ERS provided necessary documentation—
ERS's Official Statements, Bond Resolutions and other Bond documentation—to UBS and the
other underwriters to use in their direct discussions and negotiations with public investors. Ex. 6,
Doty Report at 7.

**RESPONSE TO ¶¶ 15–16:**  The Fiscal Agent incorporates by reference and adopts the

Beneficial Holders' Rule 56 Response in respect of paragraphs 15–16.

17.     The ERS Bond issuances contemplated that UBS and the underwriting syndicates
would fulfill an intermediary function by buying ERS Bonds for resale to public investors.  Ex.
6, Doty Report at 19.

**RESPONSE:  Dispute** that "UBS and the underwriting syndicates bought ERS Bonds

for resale to public investors." The owner of all of the Bonds is and always has been Cede & Co.,

as nominee for DTC, and the Bonds are registered in the name of Cede & Co., as nominee for

DTC.  *BNYM SUF*, App. Exs. 2–4 (Supplemental Resolutions § 2.5), *BNYM SUF*, App. Ex. 5

(Series A Bonds (PR-ERS-000003673–3768)), App. Ex. 6 (Series B Bonds (PR-ERS-

000004346–4441)), *BNYM SUF*, App. Ex. 7 (Series C Bonds (PR-ERS-000005222–5245)).

Purchases of security entitlements in the Bonds under the DTC system are made by or through

---

[6] ERS's Series A Bond Official Statement identifies on its cover twelve underwriters as members of the syndicate
offering, the Series B Bond Official Statement identifies three underwriters, and the Series C Bond Official
Statement identifies twelve underwriters.  *See* Series A Offering Statement; Series B Offering Statement; Series C
Offering Statement.  While there were overlaps in syndicate memberships, and all were led by UBS, no two ERS
Bond syndicates were identical.  *Id.*

Direct Participants, like UBS and the underwriting syndicates, which receive a credit for such

security entitlements on DTC's records.  The interest of each Beneficial Owner is in turn

recorded on the applicable Direct and Indirect Participants' records.  *BNYM SUF*, App. Exs. 10–

12 (Book Entry Appendix).

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'

Rule 56 Response in respect of this paragraph.

18.      ERS did not borrow or take a loan from any of the underwriters.

19.      None of the relevant documents—including the Letters of Representation to the
Underwriters, the Purchase Contracts, Bond Resolution or Supplemental Bond Resolutions, and
the Official Statements, or other bond documents—say anything about ERS borrowing any
money, or taking a loan from, UBS or any of the other underwriters. *See* Ex. 3-5, 7-18. Instead,
they characterize the underwriter's role as "making the offering and sale of the bonds" (*see* Ex.
7-9, ERS Series A, B and C Bond Letters of Representations to the Underwriters) or as "to make
a bona fide public offering of all of the Bonds."[7]

**RESPONSE TO ¶¶ 18–19:**  The Fiscal Agent incorporates by reference and adopts the

Beneficial Holders' Rule 56 Response in respect of paragraphs 18–19.

20.      ERS used the underwriting syndicates not as lenders in a "borrowing" or a "loan,"
but as intermediaries who would distribute and offer the ERS Bonds for sale to the public.  Ex. 6,
Doty Report at 20.

**RESPONSE:  Dispute** that "ERS used the underwriting syndicate . . . as intermediaries

who would distribute and offer the ERS Bonds for sale to the public." The Bonds were not sold

to the public.  The owner of all of the Bonds is and always has been Cede & Co., as nominee for

DTC, and the Bonds are registered in the name of Cede & Co., as nominee for DTC.  *BNYM*

*SUF*, App. Exs. 2–4 (Supplemental Resolutions § 2.5), *BNYM SUF*, App. Ex. 5 (Series A Bonds

(PR-ERS-000003673–3768)), *BNYM SUF*, App. Ex. 6 (Series B Bonds (PR-ERS-000004346–

4441)), *BNYM SUF*, App. Ex. 7 (Series C Bonds (PR-ERS-000005222–5245)).  Purchases of

---

[7] Series A Bond Purchase Contract §4 on page 3. The Series B Bond Purchase Contract §4 on page 3 and Series C
Bond Purchase Contract §4 on page 3 contain closely similar provisions.

security entitlements in the Bonds under the DTC system are made by or through Direct

Participants, which receive a credit for such security entitlements on DTC's records.  The interest

of each Beneficial Owner is in turn recorded on the applicable Direct and Indirect Participants'

records.  *BNYM SUF*, App. Exs. 10–12 (Book Entry Appendix).

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'

Rule 56 Response in respect of this paragraph.

### D.   2011 Amendment to the Enabling Act

21.   In 2011, the Puerto Rico legislature amended the ERS Enabling Act to ensure
ERS would not engage in another public bond issuance. *See* Ex. 38, Act 116-2011, § 7(d) ("Bond
Issues are hereby prohibited as part of the direct placement of debts secured with the assets of the
System.").

22.   In the statement of motives for the 2011 amendment, the Legislative Assembly
recognized that the issuance of the ERS Bonds "was ***illegally made*** by [ERS] even though such
transaction was submitted to the Legislative Assembly for approval and rejected by the House of
Representatives for deeming it detrimental to the System."[8]

23.   The Puerto Rico legislature amended the ERS Enabling Act to prohibit public
bond issuances like the ERS Bonds as part of ERS's ability to engage in "direct placements of
debt"—the purported basis for the ERS Bonds—thus clarifying the intent of the original
language of the statute.  *See* Ex. 38, Act 116-2011.

24.   The legislature did not change ERS's ability to "take on a loan [or borrow] from
any financial institution." *See* Ex. 38, Act 116-2011, § 7(d).

**RESPONSE TO ¶¶ 21–24:**  The Fiscal Agent incorporates by reference and adopts the

Beneficial Holders' Rule 56 Response in respect of paragraphs 21–24.

### E.   Government Parties Challenge Validity of ERS Bonds

25.   On May 21, 2017, the Oversight Board approved and certified the filing of a
PROMESA Title III petition for ERS.  [Case No. 17-3566, Dkt. No. 1].

26.   In the months following the filing of the petition, the Government Parties'
advisors in these cases determined that the issuance of the ERS bonds had been *ultra vires* and
decided to challenge them on that basis.  *See* Ex. 19, Collazo Rodriguez Dep. Tr. 280:12-20.

---

[8] Ex. 38, Act 116-2011 at Statement of Motives (emphasis added).

27.     On July 27, 2017, certain ERS bondholders filed parallel adversary proceedings in the Commonwealth and ERS Title III cases challenging the constitutionality of certain post-petition legislation. [Adv. Proc. No. 17-219, Dkt. No. 1 (Commonwealth Title III complaint); Adv. Proc. No. 17-220, Dkt. No. 1 (ERS Title III complaint)] (the "ERS Adversary Proceedings").

28.     On November 3, 2017, the Oversight Board raised the *ultra vires* issue with the Court in a motion for summary judgment in connection with a dispute over whether the Bondholders had properly perfected their alleged liens. [Adv. Proc. No. 17-213, Dkt. 91].

29.     On November 15, 2017, the Bondholder filed a response brief that acknowledged the *ultra vires* issue.  [Adv. Proc. No. 17-213,  Dkt. 120, ¶¶70-72]

30.     On November 17, 2017, AAFAF filed a motion to dismiss the claims in another adversary proceeding on the basis that the ERS Bonds were issued *ultra vires* and are therefore invalid. *See Government Defendants' Joinder and Supplemental Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended and Supplemented Complaint Pursuant to Fed. R. Civ. P. 12 (b)(6)*, at 11-14 [Adv. Proc. No. 17-219, Dkt. No. 44].

31.     On December 20, 2017, the bondholders opposed AAFAF's motion to dismiss. *See Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss*, at 18-20 [Adv. Proc. No. 17-219, Dkt. No. 50].

32.     All but two of the current members of the ERS Bondholder group were members of the group at the time of the opposition.[9]

33.     The Court never reached the *ultra vires* issue in the ERS Adversary Proceedings because it was mooted by other rulings.

**RESPONSE TO ¶¶ 25–33:**  The Fiscal Agent incorporates by reference and adopts the

Beneficial Holders' Rule 56 Response in respect of paragraphs 25–33.

---

[9] *Verified Statement of the ERS Secured Creditors Pursuant to Bankruptcy Rule 2019*, [Case No. 17-3566, Dkt. 194] (as of December 20, 2017, reflecting current Bondholder group members Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oaktree Opportunities Fund IX Delaware, L.P., Oaktree Opportunities Fun IX (Parallel 2), L.P., Opps Culebra Holdings, L.P., Oaktree Opportunities Fund X Holdings (Delaware), L.P., Oaktree Opps X Holdo Ltd., Oaktree-Forrest Multi-Strategy, LLC (Series B), Ocher Rose, L.L.C., and SV Credit L.P.). Redwood Master Fund td. and the entities represented by Pentwater Merger Arbitrage Master Fund Ltd. (Crown Managed Accounts for an on behalf of Crown/PW SP, LMA SPC for and on behalf of Map 98 Segregated Portfolio, Oceana Master Fund Ltd., PWCM Master Fund Ltd.) are the only two ERS Bondholder group members absent in November 2017.

F.     **ERS Bondholder Group and Its Acquisition of Bonds**

34.     The Bondholders are comprised of sophisticated financial institutions with billions of dollars of investments under management. *See, e.g.*, Redwood 13F ($8.5 billion[10]); Pentwater 13F ($5.7 billion[11]).

35.     Many of the Bondholders have specialized experience in investing in distressed debt.  *See* Ex. 22, Centerbridge website ("The credit, distressed strategies & special situations platform currently totals over $12 billion in assets under management[.]"[12]); Ex. 23, 5-28-20 Engman Dep. Tr. 127:5-6 (for Mason, "we like restructuring and we like -- we like distress."); Ex. 24, Mikes Dep. Tr. 27:13-24 (discussing Oaktree's "distressed debt strategy"); Ex. 25, Corning Dep. Tr. 46:10-16 (noting that a "quarter" of Pentwater's "investment focus" is on "distressed debt situations").

36.     They also have experience investing in municipal securities, and some have been involved in recent municipal bankruptcies. *See* Ex. 26, Delaney Dep. Tr. 37:8-38:24 (Glendon/Altair, in Jefferson County); Ex. 27, Boyer Dep. Tr. 22:19-23:24; 38:9-39:15 (Redwood, in Jefferson County); Ex. 28, Dowd Dep. Tr. 24:17-25:8 (Ocher Rose, in Jefferson County and Detroit).

37.     Each of the Bondholders has had, and continues to have, access to sophisticated counsel. A number of the Bondholders have been represented by Jones Day since at least May 2015 (*see* Ex. 29, Delaney Dep., Ex. 5), and Centerbridge received advice regarding the invalidity of the ERS bonds as early as February 2014. *See* Ex. 30, Cao Dec. ¶ 3.

**RESPONSE TO ¶¶ 34–37:**  The Fiscal Agent incorporates by reference and adopts the

Beneficial Holders' Rule 56 Response in respect of paragraphs 34–37.

38.     From January 25, 2008 to June 17, 2019, the Bondholders purchased hundreds of millions of dollars in ERS Bonds. *See* Ex. 31, PR Funds Supp. Response to Irog 17; Ex. 32, Jones Day Client Supp. Response to Irog 17; Ex. 29, Delaney Dep., Ex. 5 (for Jones Day clients); *Second Supplemental Verified Statement of the Puerto Rico Funds Pursuant to Bankruptcy Rule 2019* [Case No. 17-3298, Dkt. No. 13555] (for PR Funds).

**RESPONSE:  Dispute** that "the Bondholders purchased hundreds of millions of dollars

in ERS Bonds." The Bonds have never been sold to the public.  The owner of all of the Bonds is

---

[10] Ex. 20, Redwood Capital Mgmt. LLC – Assets, Funds, Holdings, AUM 13F, https://aum13f.com/firm/redwood-capital-management-llc

[11] Ex. 21, Redwood Capital Mgmt. LLC – Assets, Funds, Holdings, AUM 13F, https://aum13f.com/firm/pentwater-capital-management-lp

[12] Ex. 22, Our Investment Approach: Credit, Distressed Strategies & Special Situations, Centerbridge, https://www.centerbridge.com/our-strategy/

and always has been Cede & Co., as nominee for DTC, and the Bonds are registered in the name

of Cede & Co., as nominee for DTC.  *BNYM SUF*, App. Exs. 2–4 (Supplemental Resolutions §

2.5), App. Ex. 5 (Series A Bonds (PR-ERS-000003673–3768)), App. Ex. 6 (Series B Bonds (PR-

ERS-000004346–4441)), App. Ex. 7 (Series C Bonds (PR-ERS-000005222–5245)).  Purchases

of security entitlements in the Bonds under the DTC system are made by or through Direct

Participants, which receive a credit for such security entitlements on DTC's records.  The interest

of each Beneficial Owner is in turn recorded on the applicable Direct and Indirect Participants'

records.  *BNYM SUF*, App. Exs. 10–12 (Book Entry Appendix).

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'

Rule 56 Response in respect of this paragraph.

39.    The Bondholders subsequently filed proofs of claim against both the
Commonwealth and ERS for payment on the bonds. *See Order Granting Urgent Joint Motion
for Entry of a Schedule for Resolution of the ERS Bondholder Claims and Administrative
Expense Motions*, at Appendix 2 [Dkt No. 12446].

**RESPONSE:**  The Fiscal Agent incorporates by reference and adopts the Beneficial

Holders' Rule 56 Response in respect of this paragraph.

40.    In addition, the [sic] Bank of New York Mellon, as Fiscal Agent for the ERS
Bonds, for and on behalf of itself and all beneficial owners of ERS Bonds, filed proofs of claims
against both the Commonwealth and ERS. *See* Claim Nos. 16775, 16777, and 32004.

**RESPONSE:  Dispute** that the Fiscal Agent filed proofs of claims "for an on behalf of

itself and all beneficial owners of ERS Bonds." The Fiscal Agent, for and on behalf of itself and

all *registered and* beneficial owners of Bonds, filed proofs of claim against both the

Commonwealth and ERS (the "Proofs of Claim").  *See* Claim Nos. 16775, 16777, and 32004.

### G.    Bondholders' Knowledge of Ultra Vires Issue When They Acquired Bonds

41.    When they made their purchases, the Bondholders had actual knowledge of facts
that gave them reason to know that the ERS Bonds were issued *ultra vires*.

10

**RESPONSE**: **Disputed.**  "Bondholders" is not defined, and the entitlement holders that comprise the groups of beneficial owners of the Bonds represented by Jones Day and White & Case LLP (the "ERS Bondholder Groups") are *not* the only holders of beneficial interests in the Bonds.  *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor "requests that the Court grants the Motion for Partial Summary Judgment, that the action against her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in the secondary market recommended by her Santander Securities broker . . . be dismissed").  The Committees do not address any entitlement holders other than the entitlement holders that comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraph 41.

42.    As an initial matter, each Bondholder reviewed and relied upon the ERS Bonds' official statements, which cited ERS's ability to borrow money "through the direct placement of debts" as the sole basis for its authority to issue the ERS bonds.  *See* Ex. 33, Engman Dep., Ex. 9, response to Irog 6; Ex. 5, Series C Official Statement, at 7. The official statements contained no explanation of how a public bond issuance could be considered a "direct placement of debt." *See id.*

**RESPONSE**: **Disputed.**  "Bondholders" is not defined, and the entitlement holders that comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the Bonds.  *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor "requests that the Court grants the Motion for Partial Summary Judgment, that the action against her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in the secondary market recommended by her Santander Securities broker . . . be dismissed").  The Committees do not address any entitlement holders other than the entitlement holders that comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraph 42.

43.    Each Bondholder also had actual knowledge of the ERS Enabling Act and the fact that the validity of the ERS Bond issuances depended on them complying with terms of the ERS Enabling Act.  The Bondholders had this knowledge from the Offering Statements and/or the Bond Resolutions, which they reviewed prior to making their first purchase of ERS Bonds.[13] Specifically, these documents state that (i) ERS was created by the ERS Enabling Act, *see* Official Statement at 1 ("the System is a trust created by Act. No. 447 of May 15, 1951"); Bond Resolution, § 102 (same), and (ii) the Bond Resolution was adopted pursuant to the provisions of the [ERS Enabling] Act."  Bond Resolution, § 102.

**RESPONSE**:  **Disputed.**  "Bondholders" is not defined, and the entitlement holders that comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the Bonds.  *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor "requests that the Court grants the Motion for Partial Summary Judgment, that the action against her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in the secondary market recommended by her Santander Securities broker . . . be dismissed").  The Committees do not address any entitlement holders other than the entitlement holders that comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraph 43.

44.    In addition, as set forth in the Appendix attached hereto and incorporated herein by reference, the Bondholders were aware of: (1) the specific debt authorization language in the ERS Enabling Act (which, on its face, does not authorize public bond issuances); (2) the fact that he Commonwealth initially planned (but failed) to fund ERS by issuing GO Bonds; (3) the Legislative Assembly's statement in 2011 that the ERS bond issuances were "illegally made"; (4) advice from counsel that the ERS bonds may not have been issued with authority or legality (*i.e.*, advice regarding the *ultra vires* issue); and (5) the November 2017 briefing raising the *ultra vires* argument.  *See* Appendix II (summarizing what the Bondholders had actual knowledge of

---

[13] *See* Ex. 26, Delaney (Altair/Glendon) Dep. Tr. 87:14-88:11; Ex. 48, Bolin (Andalusian) Dep. Tr. 51:10-14; Ex. 49, 6-11-19 Engman (Mason) Dep. Tr. 33:18-25; Ex. 23, 5-28-20 Engman (Mason) Dep. Tr. 38:7-39:2; Ex. 24, Mikes (Oaktree) Dep. Tr. 133:8-19; Ex. 28, Dowd (Ocher Rose) Dep. Tr. 42:10-23; Ex. 25, Corning (Pentwater) Dep. Tr. 65:19-67:6; Ex. 50, Ramos (Puerto Rico Funds) Dep. Tr. 49:11-12; Ex. 27, Boyer (Redwood) Dep. Tr. 78:17-23; Ex. 51, Cao (SV Credit) Dep. Tr. 33:4-16.

regarding the invalidity of the ERS bonds, and when they had such knowledge). This information gave each of the Bondholders' reason to know of the Bonds' invalidity.

**RESPONSE**: **Disputed.** "Bondholders" is not defined, and the entitlement holders that comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the Bonds. *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor "requests that the Court grants the Motion for Partial Summary Judgment, that the action against her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in the secondary market recommended by her Santander Securities broker . . . be dismissed"). The Committees do not address any entitlement holders other than the entitlement holders that comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraph 44.

45. In February 2014, SV Credit received legal advice from Jones Day regarding the possibility that the ERS Bonds were issued *ultra vires*. Ex. 30, Cao Dec. ¶ 7; Ex. 57, SV Credit Suppl. Priv. Log. BH-ERS-F-PRIV000243. In May 2015, SV Credit and others formed the Bondholder group and retained Jones Day as their counsel. *Fourth Supplemental Verified Statement of the ERS Secured Creditors Purusant to Bankruptcy Rule 2019*, ¶ 1 [Case No. 17-3566, Dkt. 652]. The following chart shows when each Bondholder joined the Bondholder group and the purchases made after that date.

| Bondholder[14] | Date of Jones Day Representation or joined Bondholder Group | Dates of Purchases of Currently Held Bonds After Joining Jones Day Bondholder Group |
|---|---|---|
| Andalusian Global Designated Activity Company | Around May 2017 | 8/11/2017; 8/20/2018; 2/19/2019; 3/5/2019 |
| Crown Managed Accounts for and on behalf of Crown/PW SP | Prior to August 2018 | All Purchases Post Representation |
| LMA SPC on behalf of Map 98 Segregated Portfolio | Prior to August 2018 | All Purchases Post Representation |
| Mason Capital Master Fund LP | At some point between November 2, 2016 - May 26, 2017 | 12/16/2016; 12/19/2016; 12/20/2016; 1/30/2017; 1/31/2017; 2/13/2017; 2/14/2017; 2/15/2017; 2/17/2017; 2/21/2017; 2/28/2017; 3/3/2017; 3/8/2017; 4/12/2017; 4/17/2017; 4/24/2017; 7/10/2017; 7/12/2017; 8/31/2017; 10/4/2017; 10/13/2017; 10/16/2017; 10/25/2017; 3/12/2018; 9/20/2018; 10/17/2018; 10/23/2018; 10/24/2018; 10/25/2018; 10/30/2018; 1/7/2019; 1/10/2019; 1/14/2019; 1/16/2019; 1/17/2019; 1/29/2019; 1/30/2019; 1/31/2019; 2/12/2019; 6/17/2019 |
| Oaktree Funds[15] | 2014 or 2015 | Using the 2014 date, all purchases post representation. |
| Oceana Master Fund Ltd. | Prior to August 2018 | All Purchases Post Representation |
| Ocher Rose L.L.C. | Prior to May 26, 2017 | 6/1/2017; 6/8/2017; 6/14/2017; 7/20/2017; 7/21/2017; 7/26/2017 |

[14] The information contained herein also is contained within Appendix II, which provides the relevant factual citations to the record, and Ex. 32.

[15] The Oaktree Funds are: Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; Oaktree Value Opportunities Fund Holdings, L.P.

14

| Pentwater Merger Arbitrage Master Fund Ltd | Prior to August 2018 | All Purchases Post Representation |
|---|---|---|
| PWCM Master Fund Ltd. | Prior to August 2018 | All Purchases Post Representation |
| SV Credit, L.P. | Prior to July 2014 | All Purchases Post Representation |

**RESPONSE**: **Disputed.** "Bondholders" is not defined, and the entitlement holders that comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the Bonds. *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor "requests that the Court grants the Motion for Partial Summary Judgment, that the action against her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in the secondary market recommended by her Santander Securities broker . . . be dismissed"). The Committees do not address any entitlement holders other than the entitlement holders that comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraph 45.

46.    In addition, the Bondholders became aware of the *ultra vires* issue when the Oversight Board and AAFAF filed briefs raising the issue in the Title III case in November 2017. [Adv. Proc. No. 17-213, Dkt. 91, and Adv. Pro. 17-219, Dkt. 44, at 10-18]. As noted above, certain of the Bondholders, including the Puerto Rico Funds, Altair, Andalusian, Glendon Capital, Mason Capital, Oaktree, Ocher Rose, and SV Credit, filed an opposition to the AAFAF brief on December 20, 2017. [Adv. Pro. 17-219, Dkt. 50].

**RESPONSE**: **Disputed.** "Bondholders" is not defined, and the entitlement holders that comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the Bonds. *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor "requests that the Court grants the Motion for Partial Summary Judgment, that the action against

her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in
the secondary market recommended by her Santander Securities broker . . . be dismissed"). The
Committees do not address any entitlement holders other than the entitlement holders that
comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'
Rule 56 Response in respect of paragraph 46.

47.     Other Bondholders who did not sign the opposition brief nevertheless became
aware of the briefs containing the argument and the Bondholder opposition. For example,
Pentwater acknowledged that it received notice of one of the filings on November 15, 2017. Ex.
55, Corning (Pentwater) Dec. ¶ 3 (received the November 3, 2017 filing on November 15, 2017).

**RESPONSE**: **Disputed.** "Bondholders" is not defined, and the entitlement holders that
comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the
Bonds. *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor
"requests that the Court grants the Motion for Partial Summary Judgment, that the action against
her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in
the secondary market recommended by her Santander Securities broker . . . be dismissed"). The
Committees do not address any entitlement holders other than the entitlement holders that
comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'
Rule 56 Response in respect of paragraph 47.

48.     Ultimately, eight of the Bondholders made purchases of the ERS Bonds after the
November 17, 2017 filing, and five of them made ***all*** of their purchases after that date.

**RESPONSE**: **Disputed.** "Bondholders" is not defined, and the entitlement holders that
comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the
Bonds. *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor
"requests that the Court grants the Motion for Partial Summary Judgment, that the action against

her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in

the secondary market recommended by her Santander Securities broker . . . be dismissed").  The

Committees do not address any entitlement holders other than the entitlement holders that

comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders'

Rule 56 Response in respect of paragraph 48.

49.     To summarize the foregoing, the below chart summarizes when each applicable
Bondholder **admits** it was on notice of the *ultra vires* issue and the purchases of ERS Bonds it
made after that date.

| Bondholder[16] | First Became Aware of Ultra Vires Issue or Sought Advice | Purchases Made After Seeking Legal Advice or Being Made Aware of the Ultra Vires Issue |
|---|---|---|
| Andalusian Global Designated Activity Company | November 4, 2017 | 8/20/2018; 2/19/2019; 3/5/2019 |
| Crown Managed Accounts for and on behalf of Crown/PW SP | November 15, 2017 | All purchases after November 15, 2017. |
| LMA SPC for and on behalf of Map 98 Segregated Portfolio | November 15, 2017 | All purchases after November 15, 2017. |
| Mason Capital Master Fund LP | November 2017 | 3/12/2018; 9/20/2018; 10/17/2018; 10/23/2018; 10/24/2018; 10/25/2018; 1/7/2019; 1/10/2019; 1/14/2019; 1/16/2019; 1/17/2019; 1/29/2019; 1/30/2019; 1/31/2019; 2/12/2019; 6/17/2019 |
| Oceana Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |

[16] The information contained herein also is contained within Appendix II, which provides the relevant factual
citations to the record, and Ex. 32.

| Pentwater Merger Arbitrage Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
|---|---|---|
| PWCM Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
| Redwood Master Fund Ltd. | August 24, 2018 | 9/6/2018; 10/24/2018; 11/28/2018; 12/4/2018; 12/12/2018; 12/13/2018; 1/16/2019; 1/28/2019; 1/29/2019 |
| SV Credit, L.P. | February 2014 | All purchases after February 2014. |

**RESPONSE**:  **Disputed.**  "Bondholders" is not defined, and the entitlement holders that comprise the ERS Bondholder Groups are *not* the only holders of beneficial interests in the Bonds.  *See, e.g.*, Motion for Joinder [ECF No. 132 in Adv. No 19-357] (individual investor "requests that the Court grants the Motion for Partial Summary Judgment, that the action against her, an 88 year old, elderly, unsophisticated investor . . . who initially purchased ERS Bonds in the secondary market recommended by her Santander Securities broker . . . be dismissed").  The Committees do not address any entitlement holders other than the entitlement holders that comprise the ERS Bondholder Groups.

The Fiscal Agent otherwise incorporates by reference and adopts the Beneficial Holders' Rule 56 Response in respect of paragraph 49.

## II.     ADDITIONAL FACTS PURSUANT TO LOCAL RULE 56(c)

Pursuant to Local Rule 56(c), the Fiscal Agent hereby states additional facts as follows:

1.          On January 30, 2008, in accordance with the DTC Operational Arrangements, UBS Financial Services Inc. of Puerto Rico ("UBS"), as Underwriter of the Bonds, submitted to DTC a DTC Eligibility Questionnaire, accompanied by the January 29, 2008 Official Statement ("OS") for the Series A Bonds.  The OS included among its Appendices copies of (1) the Resolution (Appendix VI to the OS); (2) the First Supplemental Resolution (Appendix VII to the

OS), which included as Exhibit A the Form of the Bonds; (3) the Form of Opinion of Bond

Counsel, Fiddler Gonzalez & Rodriguez, P.S.C., dated January 31, 2008 (Appendix VIII to the

OS); and (4) DTC's Book Entry System rules (Appendix IX to the OS).  *BNYM SUF*, App. Ex.

16 (UBS-ERS_Ultra_Vires-0043861–44152), UBS January 30, 2008 Submission to DTC

("1/30/2008 DTC Submission").  DTC accepted the Series A Bonds as Eligible Securities on

January 30, 2008.  *BNYM SUF*, App. Ex. 9, DTC Decl., ¶ 9.  ERS issued the Series A Bonds on

January 31, 2008, each in the name of DTC's nominee, Cede & Co.  *BNYM SUF*, App. Ex. 5,

Series A Bonds (PR-ERS-000003673–3768).

        2.        On May 28, 2008, in accordance with the DTC Operational Arrangements, UBS

submitted to DTC a DTC Eligibility Questionnaire, accompanied by the May 27, 2008 version of

the Preliminary Official Statement ("POS") for the Series B Bonds.  The POS included among its

Appendices copies of (1) the Form of Opinion of Bond Counsel, Fiddler Gonzalez & Rodriguez,

P.S.C., dated June 2, 2008 (Appendix VII to the POS); and (2) DTC's Book Entry System rules

(Appendix VIII to the POS).  *BNYM SUF*, App. Ex. 17 (UBS-ERS_Ultra_Vires-0076149–

76234), UBS May 8, 2008 Submission to DTC ("5/28/2008 DTC Submission").  DTC accepted

the Series B Bonds as Eligible Securities on May 29, 2008.  *BNYM SUF*, App. Ex. 9, DTC Decl.,

¶ 9.  ERS issued the Series B Bonds on June 2, 2008, each in the name of DTC's nominee, Cede

& Co.  *BNYM SUF*, App. Ex. 6, Series B Bonds (PR-ERS-000004346–4441).

        3.        On June 16, 2008, in accordance with the DTC Operational Arrangements, UBS

submitted to DTC a DTC Eligibility Questionnaire, accompanied by the then-current version of

the POS for the Series C Bonds.  The POS included among its Appendices copies of (1) the

Resolution (Appendix V to the POS); (2) the Form of Opinion of Bond Counsel, Fiddler

Gonzalez & Rodriguez, P.S.C., (Appendix VII to the POS); and (3) DTC's Book Entry System

rules (Appendix VIII to the POS). *BNYM SUF*, App. Ex. 18 (UBS-ERS_Ultra_Vires-0087856–88001), UBS June 16, 2008 Submission to DTC ("6/16/2008 DTC Submission"). On June 26, 2008, in accordance with the DTC Operational Arrangements, UBS submitted to DTC a second DTC Eligibility Questionnaire, accompanied by the June 26, 2008 version of the POS for the Series C Bonds. The June 26, 2008 version of the POS included among its Appendices copies of (1) the Resolution (Appendix V to the POS); (2) the Form of Opinion of Bond Counsel, Fiddler Gonzalez & Rodriguez, P.S.C., dated June 30, 2008 (Appendix VII to the POS); and (3) DTC's Book Entry System rules (Appendix VIII to the POS). *BNYM SUF*, App. Ex. 19 (UBS-ERS_Ultra_Vires-0100253–100405), UBS June 26, 2008 Submission to DTC ("6/26/2008 DTC Submission"). DTC accepted the Series C Bonds as Eligible Securities on June 26, 2008. *BNYM SUF*, App. Ex. 9, DTC Decl., ¶ 9. ERS issued the Series C Bonds on June 30, 2008, each in the name of DTC's nominee, Cede & Co. *BNYM SUF*, App. Ex. 7, Series C Bonds (PR-ERS-000005222–5245).

4.    The various Official Statements, the Resolution and Supplemental Resolutions, and the opinions of counsel state that the bond issuance was authorized. *See infra* ¶¶ 5–8; *see also ERS Bondholders' Rule 56(b) Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment on Ultra Vires Issues and Proceedings* [ECF No. 14242] ("BH Statement of Facts") ¶¶ 42–46.

5.    The Official Statement sent to DTC on January 30, 2008 states that the ERS Enabling Act authorized the issuance of the Bonds. *See, e.g.*, *BNYM SUF*, App. Ex. 16, 1/30/2008 DTC Submission, UBS-ERS_Ultra_Vires-0043865 at Official Statement pp. 7 (Bates 43875) ("The Act authorizes the System to borrow money, including through the direct placement of debt, and secure any such borrowing with its assets"), 26 (Bates 43894) ("The

Bonds are being issued pursuant to general authority contained in the Act"), 37 (Bates 43905)

(same), 1 (Bates 43869) (defining Enabling Act as the "Act").

6.      The Resolution, which was attached to the Official Statement as Appendix VI

(*BNYM SUF*, App. Ex. 16, 1/30/2008 DTC Submission, OS Appendix VI, Bates 44077 *et seq.*),

contains among the "Particular Covenants of the System" (*see* VI-14 (Bates 44094)), the

System's express covenant that is has the authority the issue the bonds:

> SECTION 705. Power to Issue Bonds and Assign Funds and Accounts.
> The System is duly authorized under the Act to create and issue the Bonds
> and to adopt this Resolution and to create a security interest on the
> Pledged Property in the manner and to the extent provided in this
> Resolution. The Pledged Property is and will be free and clear of any
> pledge, lien, charge or encumbrance thereon or with respect thereto except
> as permitted by this Resolution, and all action on the part of the System to
> that end has been and will be duly and validly taken. The Bonds are and
> will be the valid and legally binding special obligations of the System,
> enforceable in accordance with their terms and the terms of this
> Resolution. The System shall at all times, to the extent permitted by law,
> defend, preserve and protect the assignment of the Pledged Property and
> all the rights of the Fiscal Agent, the Beneficiaries and the Bondowners
> under this Resolution against all claims and demands of all persons
> whomsoever.

Resolution § 705, VI-15 (Bates 44095); *see also id.* § 101, VI-1 (Bates 44081) ("Authority for

this Resolution.  This Resolution is adopted pursuant to the provisions of the Act.").

7.      The Supplemental Resolutions similarly provide that they are "adopted pursuant

to the provisions of the Act and the General Resolution" (Supp. Res. § 1.4 (*BNYM SUF*, App. Ex.

16, 1/30/2008 DTC Submission, 1/30/08 email doc, VII-2 (Bates 44122)).  The form of bond

attached to the Supplemental Resolution reiterated this authority:

> IT IS HEREBY CERTIFIED, RECITED AND DECLARED that all acts,
> conditions and things required by the Constitution and statutes of the
> Commonwealth and the Resolution to exist, to have happened and to have
> been performed precedent to and in the issuance of this Series A Bond,
> exist, have happened and have been performed in due time, form and
> manner as required by law and that the issue of the Bonds, together with

> all other indebtedness of the System, is within every debt and other limit
> prescribed by law.

*Id.*, Supp. Res. Ex. A (VII-13 (Bates 44133)); *see also id.*, Supp. Res. § 2.6 & Ex. A thereto (VII-7 (Bates 44127) & VII-11–16 (Bates 44131–36)).

8.    Further, DTC received the Form of Opinion of Bond Counsel, which stated, "The Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System[.]" *BNYM SUF*, App. Ex. 16, 1/30/08 DTC Submission, VIII-2 (Bates 44144); *see also BNYM SUF*, App. Ex. 17, 5/28/2008 DTC Submission, VII-2 (Bates 76227) (same regarding Series B), *BNYM SUF*, App. Ex. 18, 6/16/2008 DTC Submission (VII) (Bates 87994), *BNYM SUF*, App. Ex. 19, 6/26/0808 DTC Submission (VII) (Bates 100398) (same regarding Series C).

9.    The only other substantive documents sent to DTC prior to the issuance of each tranche of Bonds were standard questionnaires. *BNYM SUF*, App. Ex. 16, 1/30/2008 DTC Submission, UBS-ERS_Ultra_Vires-0043861–64; *BNYM SUF*, App. Ex. 17, 5/28/2008 DTC Submission, UBS-ERS_Ultra_Vires-0076149–52; *BNYM SUF*, App. Ex. 18, 6/16/2008 DTC Submission, UBS-ERS_Ultra_Vires-0087856–58; *BNYM SUF*, App. Ex. 19, 6/26/2008 Submission, UBS-ERS_Ultra_Vires-0100253–55.

10.    DTC's Eligibility Questionnaire instructions confirm that DTC had limited access to documents, as well as only a brief involvement in the issuance process:

> To make a new issue of securities DTC eligible, the completed
> questionnaire and a copy of the offering statement/prospectus (preliminary
> or final) must be submitted to DTC's Underwriting Dept. at least 10
> business days prior to the issue's closing date. If complete CUSIP
> INFORMATION (CUSIP numbers, interest rates, and final maturities) is
> not included with the questionnaire, please provide to DTC in writing at
> least seven business days prior to the closing date.

*BNYM SUF*, App. Ex. 16, 1/30/2008 DTC Submission, UBS-ERS_Ultra_Vires-0043862; *BNYM SUF*, App. Ex. 17, 5/28/2008 DTC Submission, UBS-ERS_Ultra_Vires-0076150; *BNYM SUF*, App. Ex. 18, 6/16/2008 DTC Submission, UBS-ERS_Ultra_Vires-0087857; *BNYM SUF*, App. Ex. 19, 6/26/0808 DTC Submission, UBS-ERS_Ultra_Vires-0100254.

11.    The only documents DTC required to be sent to it prior to issuance were the ones it received: "the completed questionnaire and a copy of the offering statement/prospectus (preliminary or final)." *See supra* ¶ 10; *BNYM SUF*, ¶¶ 36–38.  Those documents do not indicate the Bonds were issued without authority.

12.    The Operational Arrangements expressly provide that DTC does not in any way undertake to, and shall not have any responsibility to, monitor or ascertain the compliance of any transactions in the securities with any local, state, federal, or foreign laws or regulations thereunder.  *BNYM SUF*, App. Ex. 9, Ex. A., 2002 DTC Operational Arrangements, at 3.  The Issuer—here ERS—recognizes this limitation.  *See id.*

13.    DTC has recently been informed that certain parties have argued that the Bonds were issued without proper authority.  DTC had no notice of any such argument, or any defect going to the validity of the Bonds, at the time of issuance.  *BNYM SUF*, App. Ex. 9, DTC Decl., ¶ 10.

14.    Each of ERS (through the Oversight Board as its legal representative in this Title III proceeding) and the Committees (as statutorily appointed committees of creditors of ERS) objected to the Proofs of Claim and asserted that ERS lacks statutory authority to issue the Bonds. *Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007 to Claims Filed or Asserted by Holders of ERS Bonds* [ECF No. 6482] ¶¶ 65-82 (Apr. 23,

2019); *Objection of Financial Oversight and Management Board Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Proof of Claim Against ERS by The Bank of New York Mellon, as Fiscal Agent (Claim No. 16777)* [ECF No. 9701] ¶ 11 (Jan. 6, 2020); *Omnibus Objection of the Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico* [ECF No. 5580] ¶¶ 23-55 (Mar. 12, 2019).

15.     On October 25, 2019, the Fiscal Agent filed its *Joinder of The Bank of New York Mellon, as Fiscal Agent, in the Response of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to the Omnibus Claim Objections of the Official Committee of Unsecured Creditors and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico* [ECF No. 9013], in which the Fiscal Agent asserted that "even if ERS lacked authority to issue the ERS Bonds *and* the Bondholders had notice of a defect, such bonds still would be enforceable under section 8-202 of the UCC because the sole registered owner of the ERS Bonds had no knowledge of any defect." *Id.* ¶ 8.


[*The remainder of this page was intentionally left blank.*]

Dated:  October 28, 2020                Respectfully submitted,
San Juan, Puerto Rico

**SEPULVADO, MALDONADO & COURET**

By:      */s/ Albéniz Couret-Fuentes*
Albéniz Couret-Fuentes
USDC-PR Bar No. 222207
304 Ponce de León Ave. – Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile:  (787) 294-0073
Email:  acouret@smclawpr.com

**REED SMITH LLP**

Eric A. Schaffer (*Pro Hac Vice*)
Luke A. Sizemore (*Pro Hac Vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email:  eschaffer@reedsmith.com
Email:  lsizemore@reedsmith.com

C. Neil Gray (*Pro Hac Vice*)
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email:  cgray@reedsmith.com

*Counsel to The Bank of New York Mellon,
as fiscal agent*