# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | PROMESA |
| | ) | Title III |
| THE FINANCIAL OVERSIGHT AND | ) | |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| | ) | Case No. 17-BK-03283 (LTS) |
| as representative of | ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |
| | ) | |
| In re: | ) | PROMESA |
| | ) | Title III |
| THE FINANCIAL OVERSIGHT AND | ) | |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | Case No. 17-BK-03566 (LTS) |
| | ) | |
| as representative of | ) | |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

THE SPECIAL CLAIMS COMMITTEE OF THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )   Adv. Proc. No. 19-00356 (LTS)
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )

and )

THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )

as co-trustees of )

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )

Plaintiff, )

v. )

DEFENDANT 1M, *et al.*, )

Defendants. )

_____ )

THE SPECIAL CLAIMS COMMITTEE OF THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )   Adv. Proc. No. 19-00357 (LTS)
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )

and )

THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )

as co-trustees of )

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )

Plaintiff, )

v. )

STOEVER GLASS & CO., *et al.*,

    Defendant.

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

    as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,

    Plaintiff,

v.

DEFENDANT 1H-78H,

    Defendants.

Adv. Proc. No. 19-00359 (LTS)

---

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

Adv. Proc. No. 19-00361 (LTS)

|                                                             |   |
|-------------------------------------------------------------|---|
| as co-trustees of                                           | ) |
|                                                             | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE                      | ) |
| GOVERNMENT OF PUERTO RICO,                                  | ) |
|                                                             | ) |
| Plaintiff,                                                  | ) |
|                                                             | ) |
| v.                                                          | ) |
|                                                             | ) |
| DEFENDANT 1G-50G, *et al.*,                                 | ) |
|                                                             | ) |
| Defendants.                                                 | ) |
|                                                             | ) |
|                                                             | ) |

---------------------------------------------------------------------- X


**RESPONSE OF THE ERS BONDHOLDERS TO THE COMMITTEES' STATEMENT
OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON *ULTRA VIRES* ISSUES**

**To the Honorable United States District Judge Laura Taylor Swain:**

Pursuant to Local Rule 56(c), the ERS Bondholders respectfully submit the following responses to the Committees' Statement of Material Undisputed Facts in Support of Motion For Summary Judgment on *Ultra Vires* Issues, Case No. 17-bk-03283, ECF No. 14248; Case No. 17-bk-03566, ECF No. 979; Adv. Proc. No. 19-ap-00356, ECF No. 121; Adv. Proc. No. 19-ap-00357, ECF No. 126; Adv. Proc. No. 19-ap-00359, ECF No. 105; and Adv. Proc. No. 19-ap-00361, ECF No. 108.

A.   ERS Enabling Act and Debt Authorization Language

1.   ERS is a retirement and benefit system created by Act 447-1951 of the Puerto Rico Legislative Assembly (as amended, the "ERS Enabling Act"). Act No. 447-1951 (codified, as amended, at 3 L.P.R.A. §§ 761-788).

**RESPONSE: Undisputed** that ERS was created by the ERS Enabling Act in 1951, that the ERS Enabling Act has since been amended, and that the ERS Enabling Act describes ERS as a "retirement and benefit system."

2.   ERS was created to provide pension and other benefits to retired employees of the Commonwealth and its instrumentalities and municipalities (collectively, the "Government Employers"). 3 L.P.R.A. § 764.

**RESPONSE: Undisputed** that ERS provided pension and other benefits to retired employees of the Commonwealth and its instrumentalities and municipalities. Otherwise **disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). There is no evidence as to whether that was why ERS was created, or the sole reason ERS was created.

3.   These benefits were to be funded from, among other sources, contributions from the Government Employers as required by the ERS Enabling Act ("Employer Contributions"). 3 L.P.R.A. § 764.

**RESPONSE: Undisputed**

4.    When first created in 1951, ERS was not authorized to borrow money. Compare Act No. 447-1951, §19 with Act No. 46-1988 (the "1988 Amendment"), §19.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Whether express authorization to borrow money was required is a question of Puerto Rico law, not a question of fact.

5.    In 1988, the ERS Enabling Act was amended to permit ERS to incur two separate categories of debt, and to secure that debt with ERS's assets. The Official English language translation of this amendment states:

> The Board of Trustees may authorize the Administrator to *seek a loan* from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America *or through the direct placement of debts*, securing said debt with the assets of the System.

Act 46-1988, § 1 (emphasis added).

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although paragraph 5 quotes from a portion of the Official English translation of Act 46-1988, this translation is not accurate. *See* Ex. 1 to Decl. of Dr. Laura Gonzalez, at 6.[2] Further, the construction of Act 46-1988 is a question of Puerto Rico law, not a question of fact.

B.    Events Leading to 2008 Bond Issuance

6.    In 2006, the Commonwealth considered issuing general obligation ("GO") bonds as an additional means to provide funding to ERS, but that legislation did not pass in the House of Representatives and was never enacted. Ex. 1, Cancel-Alegria Dep. Tr. 59:5-61:10.

**RESPONSE: Undisputed.**

---

[2] The citation to the "Decl. of Dr. Laura Gonzalez" refers to the *Declaration of Dr. Laura Gonzalez*, dated September 9, 2020, Case No. 17-bk-03283, ECF No. 14245; Case No. 17-bk-03566, ECF No. 975; Adv. Proc. No. 19-ap-00356, ECF No. 119; Adv. Proc. No. 19-ap-00357, ECF No. 124; Adv. Proc. No. 19-ap-00359, ECF No. 103; and Adv. Proc. No. 19-ap-00361, ECF No. 106.

7.     In 2007, Merrill Lynch issued a formal proposal to ERS recommending that ERS issue $7 billion in bonds.

**RESPONSE: Undisputed** that the August 7, 2007, presentation attached as Exhibit 2, includes a proposal that ERS issue $7 billion in bonds.  Ex. 2 to Decl. of Nicholas A. Bassett, at 20 ("Bassett Decl.").[3]

C.     2008 Bond Issuance

8.     As originally conceived, ERS would issue a total of $7 billion in ERS Bonds. Ex. 3, Series A Official Statement at 17.

**RESPONSE: Undisputed** that the Series A Official Statement states that "[t]he System anticipates issuing additional Senior Bonds in an amount sufficient to produce net proceeds of $7.0 billion (after taking into consideration the net proceeds generated by the Series A Bonds) in one or more phases during calendar year 2008." Ex. 8 to Declaration of Sparkle L. Sooknanan in Support of ERS Bondholders' Motion For Partial Summary Judgment on *Ultra Vires* Issues and Proceedings, at 23 ("Sooknanan UV Decl.").[4]

9.     On January 24, 2008, the ERS Board approved the ERS Bond Resolution, which authorized the issuance of the ERS Bonds. Ex. 13, Series A Bond Resolution Section 201.

**RESPONSE: Undisputed**.

10.     Pursuant to the Bond Resolution, in 2008, ERS issued three series of ERS bonds (Series A, B and C) in an underwritten public offerings to investors. The aggregate outstanding principal amount of the ERS Bonds (including accretion on capital appreciation bonds) was

---

[3] Citations to "Basset Decl." refer to the *Declaration of Nicholas A. Bassett*, dated September 11, 2020, Case No. 17-bk-03283, ECF No. 14250; Case No. 17-bk-03566, ECF No. 980; Adv. Proc. No. 19-ap-00356, ECF No. 122; Adv. Proc. No. 19-ap-00357, ECF No. 127; Adv. Proc. No. 19-ap-00359, ECF No. 106; and Adv. Proc. No. 19-ap-00361, ECF No. 109.

[4] Citations to "Sooknanan UV. Decl." refer to the *Declaration of Sparkle L. Sooknanan in Support of ERS Bondholders' Motion for Partial Summary Judgment on* Ultra Vires *Issues and Proceedings*, dated September 11, 2020, Case No. 17-bk-03283, ECF No. 14243; Case No. 17-bk-03566, ECF No. 973; Adv. Proc. No. 19-ap-00356, ECF No. 117; Adv. Proc. No. 19-ap-00357, ECF No. 122; Adv. Proc. No. 19-ap-00359, ECF No. 101; and Adv. Proc. No. 19-ap-00361, ECF No. 104.

approximately $3 billion, instead of the originally planned $7 billion in bonds. *See* Ex. 3, Series A Official Statement; Ex. 4, Series B Official Statement; Ex. 5, Series C Official Statement.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although ERS issued three series of ERS Bonds (Series A, B, and C) in 2008, in an aggregate principal amount of approximately $3 billion, ERS did not issue the ERS Bonds to investors. Rather, ERS sold all bonds directly to a syndicate of underwriters, made up of financial institutions. Ex. 43 to Sooknanan UV Decl., at PR-ERS-000003510, PR-ERS-000003525; Ex. 44 to Sooknanan UV Decl., at PR-ERS-000004153, PR-ERS-000004181; Ex. 45 to Sooknanan UV Decl., at PR-ERS-000005061, PR-ERS-000005076.

11.     The ERS Bond were issued in a public offering. This is clear from the facts and circumstances surrounding the issuances themselves.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). ERS sold all bonds to a syndicate of underwriters.

12.     The ERS Bonds were rated by all three major rating agencies. *See* Ex. 3, Series A Offering Statement at 4; Ex. 4, Series B Offering Statement at 4; Ex. 5, Series C Offering Statement at 4.

**RESPONSE: Undisputed**.

13.     There were few restrictions on what type of investor could purchase the bonds;  for example, there was no requirement that bond purchasers be financial institutions or sophisticated investors, or that they acquire the ERS Bonds solely for investment without an intent to distribute in the public municipal bond market. *See, e.g.*, Ex. 3, Series A Offering Statement.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). ERS sold all the bonds directly to a syndicate of underwriters, with whom ERS contracted directly, and whom ERS chose, all of whom were financial institutions. Ex. 43 to Sooknanan UV Decl., at PR-ERS-000003510, PR-ERS-000003525; Ex. 44 to Sooknanan UV Decl., at PR-ERS-000004153, PR-ERS-000004181; Ex. 45 to Sooknanan UV Decl., at PR-ERS-000005061, PR-ERS-000005076. ERS had no interaction

4

with subsequent re-purchasers from the underwriters. Ex. 2 to Sooknanan UV Decl., at 112–13; Ex. 1 to Decl. of Dr. W. Bartley Hildreth , ¶¶ 55, 178 ("Hildreth Decl."); Ex. 2 to Hildreth Decl., ¶ 35.[5]

14.    The bonds were sold by the typical publicly-offered bond minimum denomination of $5,000 in principal amount (or for capitalized interest Bonds, $5,000 maturity amount), *see, e.g,* Ex. 3, Series A Official Statement at 28; Ex. 4, Series B Official Statement at 30; Ex. 5, Series C Official Statement at 30, instead of the $100,000 minimum denominations more common in direct placements. Ex. 6, Doty Report at 6.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although the ERS Bonds were issued in $5,000 denominations, that fact has nothing to do with direct placements, as that refers to direct versus conduit financings. Ex. 2 to Hildreth Decl., ¶¶ 9–13.

15.    The issuances were marketed and sold by underwriting syndicates, led by UBS.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). ERS sold the bonds directly to the underwriters. The underwriters then resold them, or attempted to do so, but those resales had no effect on ERS. Exs. 43–45 to Sooknanan UV Decl.; Ex. 2 to Sooknanan UV Decl., at 106–08.

16.    ERS did not engage in any direct negotiations with the public investors in setting these terms or establishing bond prices. Instead, ERS provided necessary documentation— ERS's Official Statements, Bond Resolutions and other Bond documentation—to UBS and the other underwriters to use in their direct discussions and negotiations with public investors. Ex. 6, Doty Report at 7.

---

[5] Citations to the "Hildreth Decl." refer to the *Declaration of Dr. W. Bartley Hildreth*, dated September 9, 2020, Case No. 17-bk-03283, ECF No. 14244; Case No. 17-bk-03566, ECF No. 974; Adv. Proc. No. 19-ap-00356, ECF No. 118; Adv. Proc. No. 19-ap-00357, ECF No. 123; Adv. Proc. No. 19-ap-00359, ECF No. 102; and Adv. Proc. No. 19-ap-00361, ECF No. 105.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local
Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). ERS sold the bonds directly to the underwriters and
negotiated with the underwriters.

17.    The ERS Bond issuances contemplated that UBS and the underwriting syndicates
would fulfill an intermediary function by buying ERS Bonds for resale to public investors. Ex. 6,
Doty Report at 19.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local
Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). ERS sold the bonds directly to the underwriters. The
transaction documents contemplated that the underwriters would attempt to resell the bonds they
purchased from ERS, but the success or failure of that attempt had no effect on ERS. Exs. 43–45
to Sooknanan UV Decl.; Ex. 2 to Sooknanan UV Decl., at 106–08.

18.    ERS did not borrow or take a loan from any of the underwriters.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local
Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). ERS both borrowed and obtained a loan from the
underwriters by selling them the ERS Bonds. Ex. 1 to Hildreth Decl., ¶ 174 ("ERS borrowed
directly from the underwriters" when it issued the ERS Bonds.); Ex. 2 to Sooknanan UV Decl., at
111–12.

19.    None of the relevant documents—including the Letters of Representation to the
Underwriters, the Purchase Contracts, Bond Resolution or Supplemental Bond Resolutions, and
the Official Statements, or other bond documents—say anything about ERS borrowing any money,
or taking a loan from, UBS or any of the other underwriters. *See* Ex. 3-5, 7-18. Instead, they
characterize the underwriter's role as "making the offering and sale of the bonds" (*see* Ex. 7-9,
ERS Series A, B and C Bond Letters of Representations to the Underwriters) or as "to make a bona
fide public offering of all of the Bonds."

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local
Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The relevant documents show that ERS sold the
bonds directly to the underwriters, and a bond is a loan and borrowing. Ex. 1 to Sooknanan UV
Decl., at 1; Ex. 2 to Sooknanan UV Decl., at 111 (Municipal bonds "are loans from the investing

public. . . . The borrower is the governmental issuer."); Ex. 3 to Sooknanan UV Decl., at 163:5-6

("[A] bond is a loan.").

20.     ERS used the underwriting syndicates not as lenders in a "borrowing" or a "loan," but as intermediaries who would distribute and offer the ERS Bonds for sale to the public. Ex. 6, Doty Report at 20.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). ERS sold the bonds directly to the underwriters. The

underwriters then resold them, or attempted to do so, but those resales had no effect on ERS. Exs.

43–45 to Sooknanan UV Decl.; Ex. 2 to Sooknanan UV Decl., at 107–08.

D.     2011 Amendment to the Enabling Act

21.     In 2011, the Puerto Rico legislature amended the ERS Enabling Act to ensure ERS would not engage in another public bond issuance. *See* Ex. 38, Act 116-2011, § 7(d) ("Bond Issues are hereby prohibited as part of the direct placement of debts secured with the assets of the System.").

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The effect of Act 116-2011 is a question of Puerto

Rico law, not a question of fact.

22.     In the statement of motives for the 2011 amendment, the Legislative Assembly recognized that the issuance of the ERS Bonds "was ***illegally made*** by [ERS] even though such transaction was submitted to the Legislative Assembly for approval and rejected by the House of Representatives for deeming it detrimental to the System."

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although the quoted language in paragraph 22

appears in the Statement of Motives, that statement is factually inaccurate, as the ERS Bond

transaction was in fact not submitted to the Legislative Assembly. The quoted language refers to

a separate transaction, as the Committees elsewhere admit, *supra* ¶ 6.

23.     The Puerto Rico legislature amended the ERS Enabling Act to prohibit public bond issuances like the ERS Bonds as part of ERS's ability to engage in "direct placements of debt"—

7

the purported basis for the ERS Bonds—thus clarifying the intent of the original language of the statute. *See* Ex. 38, Act 116-2011.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The effect of Act 116-2011 is a question of Puerto Rico law, not a question of fact. To the extent Act 116-2011 clarifies the intent of the original language of the Enabling Act, as the Committees contend, it clarifies that bond issuances were previously permitted, before the Act 116-2011 amendment restricting them.

24.     The legislature did not change ERS's ability to "take on a loan [or borrow] from any financial institution." *See* Ex. 38, Act 116-2011, § 7(d).

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The effect of Act 116-2011 is a question of Puerto Rico law, not a question of fact.

E.     Government Parties Challenge Validity of ERS Bonds

25.     On May 21, 2017, the Oversight Board approved and certified the filing of a PROMESA Title III petition for ERS. [Case No. 17-3566, Dkt. No. 1].

**RESPONSE: Undisputed**.

26.     In the months following the filing of the petition, the Government Parties' advisors in these cases determined that the issuance of the ERS bonds had been *ultra vires* and decided to challenge them on that basis. *See* Ex. 19, Collazo Rodriguez Dep. Tr. 280:12-20.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Such documents were withheld in discovery as privileged. If the Committees and Government Parties are now relying on them in support of summary judgment, then the Committees and Government Parties have waived privilege and further discovery is warranted. *See Rivera v. Kmart Corp.*, 190 F.R.D. 298, 304 (D.P.R. 2000).

27.     On July 27, 2017, certain ERS bondholders filed parallel adversary proceedings in the Commonwealth and ERS Title III cases challenging the constitutionality of certain post-petition legislation. [Adv. Proc. No. 17-219, Dkt. No. 1 (Commonwealth Title III complaint); Adv. Proc. No. 17-220, Dkt. No. 1 (ERS Title III complaint)] (the "ERS Adversary Proceedings").

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although the adversary proceedings cited in paragraph 27 challenged the constitutionality of certain post-petition legislation, they also challenged the post-petition legislation on other bases. *See* Amended and Supplemented Adversary Complaint at Counts I to IV, Adv. Proc. No. 17-ap-00219 (D.P.R. Nov. 8, 2017), ECF No. 39; Adv. Proc. No. 17-ap-00220 (D.P.R. Nov. 8, 2017), ECF No. 39.

28.     On November 3, 2017, the Oversight Board raised the *ultra vires* issue with the Court in a motion for summary judgment in connection with a dispute over whether the Bondholders had properly perfected their alleged liens. [Adv. Proc. No. 17-213, Dkt. 91].

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Oversight Board mentioned the *ultra vires* issue in a footnote as a possible argument; the Board did not assert the argument or explain it. *See* Memorandum in Support of Motion for Summary Judgment of Employees Retirement System of the Government of Commonwealth of Puerto Rico at 11 n.6, Adv. Proc. No. 17-ap-00213 (D.P.R. Nov. 3, 2017), ECF No. 91.

29.     On November 15, 2017, the Bondholder filed a response brief that acknowledged the *ultra vires* issue. [Adv. Proc. No. 17-213, Dkt. 120, ¶¶70-72]

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Bondholders did not acknowledge the *ultra vires* issue. *See* ERS Bondholders' Brief in Opposition to the ERS's Motion for Summary Judgment on Issues Relating to Perfection and Application of Section 552 of the Bankruptcy Code ¶¶ 70–72, Adv. Proc. No. 17-ap-00213 (D.P.R. Nov. 15, 2017), ECF No. 120. Rather, they acknowledged the Oversight Board's footnote purporting to preserve the argument. *See id.* ¶ 70 ("Buried in a footnote in the ERS's summary judgment brief is the reservation of rights as to whether the bond issuance was ultra vires. ERS Br. at 11 n.6. This purported reservation is

inconsistent with this Court's previous orders and the ERS's prior representations to this Court, and should be rejected.").

30.     On November 17, 2017, AAFAF filed a motion to dismiss the claims in another adversary proceeding on the basis that the ERS Bonds were issued *ultra vires* and are therefore invalid. *See Government Defendants' Joinder and Supplemental Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended and Supplemented Complaint Pursuant to Fed. R. Civ. P. 12 (b)(6)*, at 11-14 [Adv. Proc. No. 17-219, Dkt. No. 44].

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although the motion to dismiss raised the *ultra vires* argument, it was not the only basis of the motion. *See* Government Defendants' Joinder and Supplemental Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended and Supplemented Complaint Pursuant to Fed. R. Civ. P. 12 (B)(6) at Part I, Adv. Proc. No. 17-ap-00219 (D.P.R. Nov. 17, 2017), ECF No. 44; Adv. Proc. No. 17-ap-00220 (D.P.R. Nov . 17, 2017), ECF No. 44.

31.     On December 20, 2017, the bondholders opposed AAFAF's motion to dismiss. *See Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss*, at 18-20 [Adv. Proc. No. 17-219, Dkt. No. 50].

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Only *certain* bondholders opposed AAFAF's motion to dismiss on December 20, 2017. *See* Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss at 76–77, Adv. Proc. No. 17-ap-00219 (D.P.R. Dec. 20, 2017), ECF No. 50; Adv. Proc. No. 17-ap-00220 (D.P.R. Dec. 20, 2017), ECF No. 50.

32.     All but two of the current members of the ERS Bondholder group were members of the group at the time of the opposition.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 32 does not define the term "ERS Bondholder group."

33.     The Court never reached the *ultra vires* issue in the ERS Adversary Proceedings because it was mooted by other rulings.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although the Court never reached the *ultra vires*

issue in the relevant adversary proceedings, the issue was not mooted by other rulings.

F.     ERS Bondholder Group and Its Acquisition of Bonds

34.     The Bondholders are comprised of sophisticated financial institutions with billions of dollars of investments under management. *See, e.g.*, Redwood 13F ($8.5 billion); Pentwater 13F ($5.7 billion).

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 34 purports to address all Bondholders,

but cites evidence with respect to only two entities.

35.     Many of the Bondholders have specialized experience in investing in distressed debt. *See* Ex. 22, Centerbridge website ("The credit, distressed strategies & special situations platform currently totals over $12 billion in assets under management[.]"); Ex. 23, 5-28-20 Engman Dep. Tr. 127:5-6 (for Mason, "we like restructuring and we like -- we like distress.").

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 35 purports to address "[m]any of the

Bondholders," but cites evidence as to only two entities.

36.     They also have experience investing in municipal securities, and some have been involved in recent municipal bankruptcies. *See* Ex. 26, Delaney Dep. Tr. 37:8-38:24 (Glendon/Altair, in Jefferson County); Ex. 27, Boyer Dep. Tr. 22:19-23:24; 38:9-39:15 (Redwood, in Jefferson County); Ex. 28, Dowd Dep. Tr. 24:17-25:8 (Ocher Rose, in Jefferson County and Detroit).

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 36 does not define the term "they" and

cites evidence as to only three entities.

37.     Each of the Bondholders has had, and continues to have, access to sophisticated counsel. A number of the Bondholders have been represented by Jones Day since at least May

2015 (*see* Ex. 29, Delaney Dep., Ex. 5), and Centerbridge received advice regarding the invalidity of the ERS bonds as early as February 2014. *See* Ex. 30, Cao Dec. ¶ 3.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 37 purports to address "[a] number of the

Bondholders," but provides evidence as to only one bondholder. Further, Centerbridge did not

receive advice "regarding the invalidity of the ERS Bonds as early as February 2014." Rather,

Centerbridge received advice regarding "the legality, illegality, validity, or invalidity of the ERS

Bonds." Ex. 30 to the Bassett Decl., ¶¶ 3, 7. ERS itself similarly received such advice in 2007,

2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and

enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl.

38.     From January 25, 2008 to June 17, 2019, the Bondholders purchased hundreds of millions of dollars in ERS Bonds. *See* Ex. 31, PR Funds Supp. Response to Irog 17; Ex. 32, Jones Day Client Supp. Response to Irog 17; Ex. 29, Delaney Dep., Ex. 5 (for Jones Day clients); *Second Supplemental Verified Statement of the Puerto Rico Funds Pursuant to Bankruptcy Rule 2019* [Case No. 17-3298, Dkt. No. 13555] (for PR Funds).

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 38 does not specify which bondholders

it addresses.

39.     The Bondholders subsequently filed proofs of claim against both the Commonwealth and ERS for payment on the bonds. See Order Granting Urgent Joint Motion for Entry of a Schedule for Resolution of the ERS Bondholder Claims and Administrative Expense Motions, at Appendix 2 [Dkt No. 12446].

**RESPONSE: Undisputed** that certain holders of ERS Bonds filed proofs of claim.

Otherwise **disputed** as not supported by the materials cited in the record per Local Rule 56(b) &

(e) and Fed. R. Civ. P. 56(c)(1).

40.     In addition, the Bank of New York Mellon, as Fiscal Agent for the ERS Bonds, for and on behalf of itself and all beneficial owners of ERS Bonds, filed proofs of claims against both the Commonwealth and ERS. *See* Claim Nos. 16775, 16777, and 32004.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Fiscal Agent, for and on behalf of itself and all

*registered* and beneficial owners of ERS Bonds, filed proofs of claim against both the

Commonwealth and ERS. *See* Claim Nos. 16775, 16777, and 32004.

G.    Bondholders' Knowledge of *Ultra Vires* Issue When They Acquired Bonds

41.    When they made their purchases, the Bondholders had actual knowledge of facts
that gave them reason to know that the ERS Bonds were issued *ultra vires*.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1).

42.    As an initial matter, each Bondholder reviewed and relied upon the ERS Bonds'
official statements, which cited ERS's ability to borrow money "through the direct placement of
debts" as the sole basis for its authority to issue the ERS bonds. *See* Ex. 33, Engman Dep., Ex. 9,
response to Irog 6; Ex. 5, Series C Official Statement, at 7. The official statements contained no
explanation of how a public bond issuance could be considered a "direct placement of debt." *See
id.*

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1).

43.    Each Bondholder also had actual knowledge of the ERS Enabling Act and the fact
that the validity of the ERS Bond issuances depended on them complying with the terms of the
ERS Enabling Act. The Bondholders had this knowledge from the Offering Statements and/or the
Bond Resolutions, which they reviewed prior to making their first purchase of ERS Bonds.
Specifically, these documents state that (i) ERS was created by the ERS Enabling Act, *see* Official
Statement at 1 ("the System is a trust created by Act. No. 447 of May 15, 1951"); Bond Resolution,
§ 102 (same), and (ii) the Bond Resolution was adopted pursuant to the provisions of the [ERS
Enabling] Act." Bond Resolution, § 102.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1).

44.    In addition, as set forth in the Appendix attached hereto and incorporated herein by
reference, the Bondholders were aware of: (1) the specific debt authorization language in the ERS
Enabling Act (which, on its face, does not authorize public bond issuances); (2) the fact that he
Commonwealth initially planned (but failed) to fund ERS by issuing GO Bonds; (3) the Legislative
Assembly's statement in 2011 that the ERS bond issuances were "illegally made"; (4) advice from
counsel that the ERS bonds may not have been issued with authority or legality (*i.e.*, advice

13

regarding the *ultra vires* issue); and (5) the November 2017 briefing raising the *ultra vires* argument. *See* Appendix II (summarizing what the Bondholders had actual knowledge of regarding the invalidity of the ERS bonds, and when they had such knowledge). This information gave each of the Bondholders' reason to know of the Bonds' invalidity.

RESPONSE: Disputed as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). (1) The ERS Enabling Act language *did* in fact authorize the sale of the ERS Bonds. (2) All of the Bondholders represented by Jones Day and White & Case were not aware of the fact that the Commonwealth initially planned (but failed) to fund ERS by issuing GO Bonds. (3) All of the Bondholders represented by Jones Day and White & Case were not aware of the Legislative Assembly's statement in 2011 that the ERS bond issuances were "illegally made." Moreover, that statement is factually inaccurate. (4) The Bondholders represented by Jones Day and White & Case were not aware of advice from counsel that the ERS bonds may not have been issued with authority or legality. Certain Bondholders received advice regarding "the legality, illegality, validity, or invalidity of the ERS Bonds," just like ERS itself did in 2007, 2008, and 2012 and concluded each time that the ERS Bonds were or would be fully valid and enforceable. (5) Certain of the Bondholders represented by Jones Day and White & Case were aware of the November 2017 briefing raising the *ultra vires* argument. In sum, the Bondholders represented by Jones Day and White & Case had no actual knowledge "regarding the invalidity of the ERS bonds" and had no reason to know "of the Bonds' invalidity." To the contrary, there was and is overwhelming evidence that the ERS Bonds were validly issued.

Appendix II is Disputed as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1).

45.    In February 2014, SV Credit received legal advice from Jones Day regarding the possibility that the ERS Bonds were issued *ultra vires*. Ex. 30, Cao Dec. ¶ 7; Ex. 57, SV Credit Suppl. Priv. Log. BH-ERS-F-PRIV000243. In May 2015, SV Credit and others formed the Bondholder group and retained Jones Day as their counsel. *Fourth Supplemental Verified Statement of the ERS Secured Creditors Purusant to Bankruptcy Rule 2019*, ¶ 1 [Case No. 17-

14

3566, Dkt. 652]. The following chart shows when each Bondholder joined the Bondholder group and the purchases made after that date.

| Bondholder | Date of Jones Day Representation or joined Bondholder Group | Dates of Purchases of Currently Held Bonds After Joining Jones Day Bondholder Group |
|---|---|---|
| Andalusian Global Designated Activity Company | Around May 2017 | 8/11/2017; 8/20/2018; 2/19/2019; 3/5/2019 |
| Crown Managed Accounts for and on behalf of Crown/PW SP | Prior to August 2018 | All Purchases Post Representation |
| LMA SPC on behalf of Map 98 Segregated Portfolio | Prior to August 2018 | All Purchases Post Representation |
| Mason Capital Master Fund LP | At some point between November 2, 2016 - May 26, 2017 | 12/16/2016; 12/19/2016; 12/20/2016; 1/30/2017; 1/31/2017; 2/13/2017; 2/14/2017; 2/15/2017; 2/17/2017; 2/21/2017; 2/28/2017; 3/3/2017; 3/8/2017; 4/12/2017; 4/17/2017; 4/24/2017; 7/10/2017; 7/12/2017; 8/31/2017; 10/4/2017; 10/13/2017; 10/16/2017; 10/25/2017; 3/12/2018; 9/20/2018; 10/17/2018; 10/23/2018; 10/24/2018; 10/25/2018; 10/30/2018; 1/7/2019; 1/10/2019; 1/14/2019; 1/16/2019; 1/17/2019; 1/29/2019; 1/30/2019; 1/31/2019; 2/12/2019; 6/17/2019 |
| Oaktree Funds | 2014 or 2015 | Using the 2014 date, all purchases post representation. |
| Oceana Master Fund Ltd. | Prior to August 2018 | All Purchases Post Representation |
| Ocher Rose L.L.C. | Prior to May 26, 2017 | 6/1/2017; 6/8/2017; 6/14/2017; 7/20/2017; 7/21/2017; 7/26/2017 |
| Pentwater Merger Arbitrage Master Fund Ltd | Prior to August 2018 | All Purchases Post Representation |
| PWCM Master Fund Ltd. | Prior to August 2018 | All Purchases Post Representation |
| SV Credit, L.P. | Prior to July 2014 | All Purchases Post Representation |

15

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). SV Credit received advice regarding "the legality,

illegality, validity, or invalidity of the ERS Bonds." Ex. 30 to Bassett Decl., ¶¶ 3, 7. ERS itself

similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS

Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81, to Sooknanan UV Decl.

For the avoidance of doubt, the chart appended to paragraph 45 is also **Disputed** as not supported

by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1).

46.   In addition, the Bondholders became aware of the *ultra vires* issue when the
Oversight Board and AAFAF filed briefs raising the issue in the Title III case in November 2017.
[Adv. Proc. No. 17-213, Dkt. 91, and Adv. Pro. 17-219, Dkt. 44, at 10-18]. As noted above, certain
of the Bondholders, including the Puerto Rico Funds, Altair, Andalusian, Glendon Capital, Mason
Capital, Oaktree, Ocher Rose, and SV Credit, filed an opposition to the AAFAF brief on December
20, 2017. [Adv. Pro. 17-219, Dkt. 50].

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Although certain of the Bondholders filed an

opposition to AAFAF's motion to dismiss on December 20, 2017, the Bondholders did not become

"aware of the *ultra vires* issue" as a result of that filing. None of the Bondholders ever became

aware that the ERS Bonds were issued *ultra vires*. There is overwhelming evidence that the ERS

Bonds were validly issued.

47.   Other Bondholders who did not sign the opposition brief nevertheless became
aware of the briefs containing the argument and the Bondholder opposition. For example,
Pentwater acknowledged that it received notice of one of the filings on November 15, 2017. Ex.
55, Corning (Pentwater) Dec. ¶ 3 (received the November 3, 2017 filing on November 15, 2017).

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 47 purports to address "[o]ther

Bondholders," without specifying the identities of these individuals or entities.

48.   Ultimately, eight of the Bondholders made purchases of the ERS Bonds after the
November 17, 2017 filing, and five of them made ***all*** of their purchases after that date.

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Paragraph 48 cites no evidence.

49.     To summarize the foregoing, the below chart summarizes when each applicable Bondholder *admits* it was on notice of the *ultra vires* issue and the purchases of ERS Bonds it made after that date.

| Bondholder | First Became Aware of Ultra Vires Issue or Sought Advice | Purchases Made After Seeking Legal Advice or Being Made Aware of the Ultra Vires Issue |
|---|---|---|
| Andalusian Global Designated Activity Company | November 4, 2017 | 8/20/2018; 2/19/2019; 3/5/2019 |
| Crown Managed Accounts for and on behalf of Crown/PW SP | November 15, 2017 | All purchases after November 15, 2017. |
| LMA SPC for and on behalf of Map 98 Segregated Portfolio | November 15, 2017 | All purchases after November 15, 2017. |
| Mason Capital Master Fund LP | November 2017 | 3/12/2018; 9/20/2018; 10/17/2018; 10/23/2018; 10/24/2018; 10/25/2018; 1/7/2019; 1/10/2019; 1/14/2019; 1/16/2019; 1/17/2019; 1/29/2019; 1/30/2019; 1/31/2019; 2/12/2019; 6/17/2019 |
| Oceana Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
| Pentwater Merger Arbitrage Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
| PWCM Master Fund Ltd. | November 15, 2017 | All purchases after November 15, 2017. |
| Redwood Master Fund Ltd. | August 24, 2018 | 9/6/2018; 10/24/2018; 11/28/2018; 12/4/2018; 12/12/2018; 12/13/2018; 1/16/2019; 1/28/2019; 1/29/2019 |
| SV Credit, L.P. | February 2014 | All purchases after February 2014. |

**RESPONSE: Disputed** as not supported by the materials cited in the record per Local

Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). No Bondholder represented by Jones Day or White

& Case admitted that it was on notice that the ERS Bonds were issued *ultra vires*. No Bondholder

represented by Jones Day or White & Case had notice that the ERS Bonds were issued *ultra vires*.

There is overwhelming evidence that the ERS Bonds were validly issued. Among other things, no

court has ever determined that the ERS Bonds were issued *ultra vires*; everyone involved in the

ERS Bond issuance (including the ERS Board of Trustees, ERS's General Counsel, the

Government Development Bank's Board of Directors, the Secretary of Justice, and a number of

sophisticated lawyers) all confirmed ERS's ability to issue the ERS Bonds, Exs. 6, 8–10, 22–36 to

Sooknanan UV Decl.; the Puerto Rico legislature repeatedly recognized that the ERS Bonds were

existing, valid obligations, *see* Act 35-2007; Act 116-2011; Act 3-2013; the Government

Development Bank commissioned a report that made no suggestion that the bonds were invalidly

issued, Ex. 80 to Sooknanan UV Decl.; and ERS's counsel investigated the matter again and

concluded that the bonds were authorized, Ex. 81–82 to Sooknanan UV Decl.  Moreover, ERS

paid interest on the ERS Bonds in full and on time for more than eight years, Ex. 69 to Sooknanan

UV Decl.; from the issuance of the ERS Bonds up to today, ERS's audited financial statements

have always listed the ERS Bonds as an outstanding liability of ERS, Ex. 70 to Sooknanan UV

Decl., at 13; Ex. 71 to Sooknanan UV Decl., at 12; Ex. 72 to Sooknanan UV Decl., at 5; Ex. 73 to

Sooknanan UV Decl., at 5; Ex. 74 to Sooknanan UV Decl., at 5; Ex. 75 to Sooknanan UV Decl.,

at 6; Ex. 76 to Sooknanan UV Decl., at 7; Ex. 77 to Sooknanan UV Decl., at 6; Ex. 78 to Sooknanan

UV Decl., at 6; Ex. 79 to Sooknanan UV Decl., at 6 (PR-INSURERS2004-0002754); and both

ERS and the Oversight Board repeatedly conceded in prior litigation that the ERS Bonds were

valid and enforceable, *see, e.g.*, Joint Stipulations of Movants, the Commonwealth Respondents,

and the Employees Retirement System ¶¶ 6, 11, Case 3:16-cv-02696-FAB (D.P.R. Nov. 2, 2016),

ECF No. 65 (stipulating that that the ERS Bonds were "authorized" by ERS "[p]ursuant to the

authority granted to it under the Enabling Act," and that "[t]he ERS Bond Resolution adopted on

January 24, 2008, is a valid and binding contract between the ERS and holders of ERS Bonds");

Respondent Employees Retirement System of the Government of the Commonwealth of Puerto

Rico's Brief in Opposition to Motion for Relief from the PROMESA Automatic Stay at 10, Case

3:16-cv-02696-FAB (D.P.R. Oct. 26, 2019), ECF No. 52 (arguing that the ERS Bonds gave rise

to "valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which will

continue to grow"); Ex. A to Financial Oversight and Management Board's Motion to Intervene

at 12, 3:16-cv-02696-FAB (D.P.R. Oct. 28, 2016), ECF No. 56 (The "perpetual revenue streams

that secure [the ERS Bondholders'] claims would still be available for future payments under yet-

to-be negotiated fiscal plans or in future proceedings under PROMESA."). For the avoidance of

doubt, the chart appended to paragraph 49 is also **Disputed** as not supported by the materials cited

in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1).

**Appendix II**

**Bondholders' Testimony Regarding Notice**

| Bondholder | Purchase Dates[1] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Altair Global Credit Opportunities Fund (A), LLC; Glendon Opportunities Fund, L.P.<br><br>**(Chris Delaney[2])** | Altair: November 18, 2013 – July 10, 2014<br><br>Glendon: September 15, 2014 – April 28, 2015<br><br>**RESPONSE: Undisputed.** | Reviewed the Enabling Act prior to their respective first purchases. (87:14-88:11)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Delaney testified that "we would have looked at … the Enabling Act." Ex. 26 to Bassett Decl., 88:5-7. | February 29, 2016 (143:2-144:4)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Delaney testified that in preparation for deposition, they found a reference to a motion in their files that included the relevant provision. He did not testify that anyone at Altair or Glendon previously reviewed the provision. Ex. 26 to Bassett Decl., 143:7-12; 144:24–145:11. | Reviewed offering statement prior to respective first purchases. (87:14-88:11)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Delaney testified that "we would have looked at … the official statements." Ex. 26 to Bassett Decl., 88:8-11. | Aware of Act 116 prior to respective first purchases. (91:23-92:8)<br><br>**RESPONSE: Undisputed.** | Became aware in November 2017. (141:14-142:7.)<br><br>**RESPONSE: Undisputed.** | Could not specify when they retained Jones day. (72:11-15)<br><br>**RESPONSE: Undisputed.** | No later than May 2015. (70:13-71:5)<br><br>**RESPONSE: Undisputed** that a representative from Altair and Glendon were a part of a bondholder group in May 2015. Ex. 26 to Bassett Decl., 70:13–71:5. | May 26, 2017 (ERS Dkt.18)<br><br>**RESPONSE: Undisputed.** | November 2017. (141:14-142:7)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Altair and Glendon did not admit that they were on notice that the ERS Bonds were issued *ultra vires*. Altair and Glendon had no notice from any source that the ERS Bonds were issued *ultra vires*. | August 3, 2015 (139:16-140:6)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Delaney did not testify that Altair or Glendon sought or received legal advice on the validity, invalidity, legality, or illegality of the ERS Bonds. However, ERS itself *did* receive such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

[1] For all Bondholders, excluding the Puerto Rico Funds, the Purchase Dates can be found at Dec. Ex. 32, Bondholders' Supplemental Response to Interrogatory No. 17. The Puerto Rico Funds' purchase dates are located on Dec. Ex. 31, Puerto Rico Funds' Supplemental Response to Interrogatory No. 17.

[2] Line cites to Dec. Ex. 26, Tr. of C. Delaney.

| Bondholder | Purchase Dates[3] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Andalusian Global Designated Activity Company **(James Bolin[4])** | July 14, 2015 - March 5, 2019 **RESPONSE: Undisputed.** | Could not recall whether anyone reviewed the Enabling Act prior to first purchase. (80:12-15) **RESPONSE: Undisputed.** | No later than April 21, 2016.[5] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Bolin declared that he did not recall whether he reviewed any portions of the Act. A draft complaint that included the relevant provision was in Andalusian's files, but he did not assert that he or others at Andalusian reviewed this document at the time. Ex. 52 to Bassett Decl., ¶ 4. | Reviewed offering statement prior to first purchase in July 2015. (51:10-14) **RESPONSE: Undisputed.** | No later than November 18, 2017.[6] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Bolin declared that a copy of AAFAF's motion to dismiss filed on November 17, 2017, was in Andalusian's files, but he did not assert that he or others at Andalusian reviewed this document at the time. Ex. 52 to Bassett Decl., ¶ 5. | November 2017. (82:24–84:12) **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). A copy of AAFAF's motion to dimiss was located in Mr. Bolin's files, but Mr. Bolin did not testify that he reviewed this document at the time. To the contrary, Mr. Bolin testified that he became aware of the litigation in preparation for his deposition in Feburary to March 2020. Ex. 48 to Basset Decl, 82:24–83:6. | No testimony given **RESPONSE: Undisputed.** | Around May 2017. (126:17-25) **RESPONSE: Undisputed.** | May 26, 2017- Appaloosa (ERS Dkt.18) May 30, 2017- Andalusian (ERS Dkt. 23) **RESPONSE: Undisputed.** | November 4, 2017.[7] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Andalusian did not admit that it was on notice that the ERS Bonds were issued *ultra vires*. Andalusian had no notice from any source that the ERS Bonds were issued *ultra vires*. | December 14, 2017.[8] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). "[T]he earliest date that Andalusian sought or received advice from counsel about the validity, invalidity, legality or illegality of the ERS Bonds was December 14, 2017, when [Mr. Bolin] received a draft of an opposition to AAFAF's November 2017 motion to dismiss." Ex. 52 to Bassett Decl., ¶ 7. ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

---

[3] For all Bondholders, excluding the Puerto Rico Funds, the Purchase Dates can be found at Dec. Ex. 32, Bondholders' Supplemental Response to Interrogatory No. 17. The Puerto Rico Funds' purchase dates are located on Dec. Ex. 31, Puerto Rico Funds' Supplemental Response to Interrogatory No. 17.

[4] Line cites to Dec. Ex. 48, Tr. of J. Bolin.

[5] Dec. Ex. 52, Dec. of J. Bolin at ¶4.

[6] Id. at ¶5.

[7] Id. at ¶3.

[8] Id. at ¶7.

| Bondholder | Purchase Dates[1] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Mason Capital Master Fund LP<br><br>**(Richard Engman[10])** | December 12, 2016 – June 17, 2019<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). *See* Ex. 32 to Basset Decl., at Ex. F. | Could not recall if Mason reviewed the Enabling Act. (39:3-20)<br><br>**RESPONSE: Undisputed.** | August 2018. (74:21-75:7)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Engman testified that he became "aware of" the relevant provision in August 2018. Ex. 23 to Basset Decl., 74:21–75:7. | Reviewed offering statement prior to first purchase<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). No evidence cited. | Learned about Act 116 from either the August 2018 Kobre & Kim Report or the March 2018 UCC objection. (75:10-23)<br><br>**RESPONSE: Undisputed.** | November 2017 (69:1-71:22)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Engman testified that Mason Capital became aware when the UCC filed its objection. Ex. 23 to Basset Decl., 70:24–71:22. | Mason retained Jones Day at the time they joined the Bondholder group. (64:2-10)<br><br>**RESPONSE: Undisputed.** | At some point between November 2, 2016 - May 26, 2017([ERS Dkt. 65; 62:14-63:10)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Engman testified "I don't recall." Ex. 23 to Basset Decl., 62:14-20. | May 26, 2017 (ERS Dkt.18)<br><br>**RESPONSE: Undisputed.** | November 2017. (69:1-71:22)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1).<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Engman testified that Mason Capital first sought or received advice from counsel about the validity, invalidity, legality or illegality of ERS bonds in August 2018. Ex. 10, Second Sooknanan UV Decl., 77:24–78:7.[9] ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. | November 2017. (71:23-72:10)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Engman testified that Mason Capital first sought or received advice from counsel about the validity, invalidity, legality or illegality of ERS bonds in August 2018. Ex. 10, Second Sooknanan UV Decl., 77:24–78:7.[9] ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

---

[9] Citations to the "Second Sooknanan UV Decl." refer to the *Declaration of Sparkle L. Sooknanan in Support of ERS Bondholders' Brief in Opposition to the Committees' Motion for Summary Judgment on* Ultra Vires *Issues* filed herewith.

[10] Line cites to Dec. Ex. 23, 5-28-20 Tr. of R. Engman.

| Bondholder | Purchase Dates[1] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; Oaktree Value Opportunities Fund Holdings, L.P.<br><br>(Jordan Mikes)[11] | May 28, 2014 – May 24, 2017<br><br>**RESPONSE: Undisputed.** | November 2019 (153:9-154:12; 156:17-21)<br><br>**RESPONSE: Undisputed.** | February 29, 2016[12]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Mikes declared that a memorandum that *did not* address the validity or invalidity of the bonds, or the legality or illegality of the issuance quoted the relevant provision in passing. There is no evidence that anyone at the Oaktee Funds reviewed the provision. To the contrary, Mr. Mikes testified that prior to making the investment decisions, there was absolutely no discussion of the validity of the bonds and the Enabling Act, and that he is not aware of anyone at the Oaktree Funds that reviewing the debt-authorizing language of the ERS Enabling Act before 2019. Ex. 53 to Basset Decl., ¶ 4; Ex. 12 to Second Sooknanan UV Decl., 80:14-82:8; 153:9-155:20. | May 2014. (133:8-19)<br><br>**RESPONSE: Undisputed.** | September 8, 2014[13]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Mikes declared that the entirety of Act 116 was in Oaktree's files, but he did not assert that anyone at Oaktree reviewed the statutory language. Ex. 53 to Basset Decl., ¶ 5. | November 4, 2017[14]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Mikes declared that a motion for summary judgment, which referred in a footnote and without explanation to the *ultra vires* issue, was found in the Oaktree Funds' files, but he did not assert that anyone at the Oaktree funds reviewed the document. Ex. 53 to Basset Decl., ¶ 3. | 2014 or 2015. (23:20-24:7)<br><br>**RESPONSE: Undisputed.** | Did not know. (109:4-9)<br><br>**RESPONSE: Undisputed.** | May 26, 2017 (ERS Dkt.18)<br><br>**RESPONSE: Undisputed.** | November 4, 2017[15]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Oaktree Funds did not admit that they were on notice that the ERS Bonds were issued *ultra vires*. The Oaktree Funds had no notice from any source that the ERS Bonds were issued *ultra vires*. | December 14, 2017[16]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). "[T]he Oaktree Funds did not seek or received advice from counsel about the validity, invalidity, legality or illegality of the ERS Bonds was December 14, 2017, when David Brown and Ken Liang received a draft of an opposition to AAFAF's November 2017 motion to dismiss." Ex. 53 to Bassett Decl., ¶ 7. ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

---

[11] Line cites to Dec. Ex. 24, Tr. of J. Mikes.
[12] Dec. Ex.53, Dec. of Mikes at ¶4.
[13] Id. at ¶5.
[14] Id. at ¶3.
[15] Id.
[16] Id. at ¶7.

| Bondholder | Purchase Dates[1] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Ocher Rose L.L.C. **(Patrick Dowd)[15]** | May 8, 2014 - July 26, 2017 **RESPONSE: Undisputed.** | Reviewed Enabling Act no later than July 17, 2015 (73:20-74:6) **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Dowd testified that Ocher Rose "reviewed parts of the enabling act." Ex. 28 to Basset Decl., 73:20–74:6. | November 26, 2014[16] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Dowd declared that the entire Enabling Act with amendments though August 2008 was in Ocher Rose's files, but he testified that he was not sure when anyone reviewed the Enabling Act. Ex. 54 to Basset Decl., ¶ 4. | Mid to late 2013 (42:10-23) **RESPONSE: Undisputed.** | August 3, 2015[17] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Dowd declared that a memorandum that **did not** address the validity or invalidity of the bonds, or the legality or illegality of the issuance quoted the relevant language in passing, but he did not assert that anyone at Ocher Rose reviewed the language. Ex. 54 to Basset Decl., ¶ 5. | November 2017. (78:14-20) **RESPONSE: Undisputed.** | Unknown. **RESPONSE: Undisputed.** | Prior to May 26, 2017 (ERS Dkt. 18) **RESPONSE: Undisputed.** | May 26, 2017 (ERS Dkt.18) **RESPONSE: Undisputed.** | November 4, 2017[18] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Ocher Rose did not admit that it was on notice that the ERS Bonds were issued *ultra vires*. Ocher Rose had no notice from any source that the ERS Bonds were issued *ultra vires*. | December 14, 2017[19] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). "[T]he earliest date that Ocher Rose sought or received advice from counsel about the validity, invalidity, legality or illegality of the ERS Bonds was December 14, 2017, when [Mr. Dowd] received a draft of an opposition to AAFAF's motion to dismiss." Ex. 54 to Bassett Decl., ¶ 7. ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

[15] Lines cites to Dec. Ex. 28, Tr. of P. Dowd.
[16] Dec. Ex. 54, Dec. of Dowd at ¶4.
[17] Id. at ¶5.
[18] Id. at ¶3.
[19] Id. at ¶7.

| Bondholder | Purchase Dates[1] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Crown Managed Accounts for and on behalf of Crown/PW SP; LMA SPC for and on behalf of Map 98 Segregated Portfolio; Oceana Master Fund Ltd.; Pentwater Merger Arbitrage Master Fund Ltd.; PWCM Master Fund Ltd.<br><br>**(Luke Corning)**[20] | Crown: December 17, 2018 – June 17, 2019; LMA SPC: August 17, 2018 – April 1, 2019; Oceana: August 17, 2018 – June 17, 2019; Pentwater: October 9, 2018 – June 17, 2019; PWCM: August 17, 2018 – June 17, 2019<br><br>**RESPONSE: Undisputed.** | Reviewed some portions of the Act in late 2018. (71:3-13)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Corning testified that he read a document and that the Enabling Act "probably was what was attached" to that document. Ex. 25 to Basset Decl., 71:3-10. | November 3, 2017[21]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Corning declared that a motion for summary judgmentwas in the Pentwater Funds' files, and that motion quoted the relevant provision in a footnote. He declared that no one at the Pentwater Funds recalls reading that portion of the motion. Ex. 55 to Basset Decl., ¶ 4. | Reviewed the Offering Statement prior to August 17, 2018. (65:19-67:6)<br><br>**RESPONSE: Undisputed.** | August 20, 2018.[22]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Corning declared that the Kobre & Kim Report was in the Pentwater Funds' files, and that report refers to the "illegally made" language. He declared that no one at the Pentwater Funds recalls reading that portion of the report or otherwise becoming aware of the "illegally made" language until the spring of 2019. Ex. 55 to Basset Decl., ¶ 5. | November 15, 2017[23]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Corning testified that no one at the Pentwater Funds was aware of the challenges to the validity of the ERS Bonds until the UCC filed its claim objection. He declared that an opposition brief, a portion of which addressed ERS's unexplained assertion that the ERS Bonds were ultra vires, was in the Pentwater Funds' files. He declared that no one at the Pentwater Funds recalls reading that portion of the opposition. Ex. 13 to Second Sooknanan UV Decl., 52:2-8; Ex. 55 to Basset Decl., ¶ 3. | Retained Jones Day prior to their first purchases. (26:21-24)<br><br>**RESPONSE: Undisputed.** | Joined the Bondholder Group in late 2018 or early 2019. (48:15-49:3)<br><br>**RESPONSE: Undisputed.** | February 19, 2019 (ERS Dkt. 359)<br><br>**RESPONSE: Undisputed.** | November 15, 2017[24]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Pentwater Funds did not admit that they were on notice that the ERS Bonds were issued *ultra vires*. The Pentwater Funds had no notice from any source that the ERS Bonds were issued *ultra vires*. | March 12, 2019[25]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). "[T]he earliest date that the Pentwater funds sought or received advice from counsel about the validity, invalidity, legality or illegality of the ERS Bonds was March 12, 2019. " Ex. 55 to Bassett Decl., ¶ 7. ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully and valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

---

[20] Lines cites to Dec. Ex. 25, Tr. of L. Corning.
[21] Dec. Ex. 55, Dec. of Corning at ¶4.
[22] Id. at ¶5.
[23] Id. at ¶3.
[24] Id.
[25] Id. at ¶7.

| Bondholder | Purchase Dates[i] | Reviewed Enabling Act Generally pa | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc.; Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GMNA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; UBS IRA Select Growth & Income Puerto Rico Fund<br><br>**(Ricardo Ramos)[26]** | January 25, 2008 - March 10, 2016<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The range of purchase dates varies by each individual Puerto Rico Fund, as set forth in the Puerto Rico Funds' Supplemental Response to Interrogatory No. 17. *See* Ex. 31 to Bassett Decl at 4–5. | Unaware of Enabling Act review prior to final purchase. (109:8-23)<br><br>**RESPONSE: Undisputed.** | Unaware of §779 (d) review prior to final purchase. (109:8-23)<br><br>**RESPONSE: Undisputed.** | Reviewed offering statement prior to first purchase. (49:11-21)<br><br>**RESPONSE: Undisputed.** | Aware of Act 116 when it was passed in July 2011. (110:11-24)<br><br>**RESPONSE: Undisputed.** | November 2017. (104:4-105:7)<br><br>**RESPONSE: Undisputed.** | The Puerto Rico Funds are represented by White & Case.<br><br>**RESPONSE: Undisputed.** | No later than July 7, 2017 (Adv. Pro. Dkt. 1)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Committees' Statement of Undisputed Material Facts does not define the term "Bondholder Group." | July 7, 2017 (Adv. Pro. Dkt. 1)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Committees' Statement of Undisputed Material Facts does not define the term "Bondholder Group." Certain Puerto Rico Funds are listed in the signature block for White & Case in the complaints filed on July 27, 2017 in the ERS Adversary Proceedings. | November 2017. (108:1-10)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The Puerto Rico Funds did not admit that they were on notice that the ERS Bonds were issued *ultra vires.* The Puerto Rico Funds had no notice from any source that the ERS Bonds were issued *ultra vires.* | November 2017. (104:4-105:7)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record for Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The testimony cited does not support the proposition asserted. Moreover, ERS itself received advice regarding the legality, illegality, validity, or invalidity of the ERS Bonds in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

---

[26] Line cites to Dec. Ex. 50, Tr. of R. Ramos.

| Bondholder | Purchase Dates[1] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Redwood Master Fund Ltd.<br><br>**(Justin Boyer)**[27] | October 7, 2013; August 20, 2018 - January 29, 2019<br><br>**RESPONSE: Undisputed.** | August 24, 2018 (78:17-23; 113:2-8)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Boyer testified that he reviewed certain portions of the ERS Enabling Act. Ex. 14 to Second Sooknanan UV Decl., 114:20–115:8. | August 24, 2018[28]<br><br>**RESPONSE: Undisputed.** | Reviewed the Offering Statement in 2018. (78:17-23)<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). The cited testimony does not state that Mr. Boyer reviewed the Offering Statement. | Fall 2019[29]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Mr. Boyer testified that he did not recall ever seeing the "illegally made" language before it was shown to him at his deposition. He declared that the language may have been referenced in draft pleadings and filings sent to Redwood by Jones Day after the commencement of the *ultra vires* proceedings in the fall of 2019, but he did not assert that anyone at Redwood reviewed those documents. Ex. 14 to Second Sooknanan UV Decl., 146:11-148:10; Ex. 56 to Basset Decl., ¶ 5. | March 2, 2020 (46:21-47:3)<br><br>**RESPONSE: Undisputed.** | Unknown.<br><br>**RESPONSE: Undisputed.** | Redwood joined the Bondholder Group in spring or summer 2019. (72:4-7)<br><br>**RESPONSE: Undisputed.** | July 15, 2019 (ERS Dkt. 652)<br><br>**RESPONSE: Undisputed.** | August 24, 2018[30]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Redwood did not admit that it was on notice that the ERS Bonds were issued *ultra vires*. Redwood had no notice from any source that the ERS Bonds were issued *ultra vires*. | Fall 2019[31]<br><br>**RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). "Redwood Master Fund did not seek or receive advice from counsel about the validity, invalidity, legality or illegality of the ERS Bonds before the commencement of the ultra vires proceedings in the fall of 2019." Ex. 56 to Bassett Decl., ¶ 7. ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

---

[27] Line cites to Dec. Ex. 27, Tr. of J. Boyer.
[28] Dec. Ex. 56, Dec. of Boyer at ¶4.
[29] Id. at ¶5.
[30] Id. at ¶3.
[31] Id. at ¶7.

| Bondholder | Purchase Dates[1] | Reviewed Enabling Act Generally | Reviewed Debt Authorization Language (§779(d)) | Reviewed Offering Statement | Aware of Act 116 or the "Illegally Made" language | Aware of the November 2017 AAFAF Brief | Retained Jones Day | Joined Bondholder Group | Included on Bondholder Group Signature Block | Earliest Date of Ultra Vires from Any Source | First Sought Advice Related to Ultra Vires Issues |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SV Credit, L.P. (Shanshan Cao)[32] | July 10, 2014 - January 25, 2017 **RESPONSE: Undisputed.** | Read Enabling Act in connection with their first purchase in July 2014. (33:4-22) **RESPONSE: Undisputed.** | February 10, 2015[33] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Ms. Cao testified that SV Credit reviewed portions of the ERS Enabling Act at the time it made investments in the ERS Bonds, but that she did not recall specifically which parts were reviewed. Ms. Cao later declared that a search of SV Credit's files shows that the debt-authorization language was quoted in an email in February 2015, but Ms. Cao did not declare that anyone at SV Credit reviewed that language at the time. Ex. 51 to Basset Decl., 33:17-25; Ex. 30 to Basset Decl., ¶ 4. | Prior to July 10, 2014 (33:4-16) **RESPONSE: Undisputed.** | October 25, 2013[34] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). Ms. Cao declared that the entirety of Act 116-2011, including the "illegally made" language in the Statement of Motives, was in her files, but she testified that she did not recall when she first reviewed Act 116-2011. Ex. 30 to Basset Decl., ¶ 5. | November 2017 (62:10-18) **RESPONSE: Undisputed.** | SV Credit retained Jones Day prior to their first purchase (77:4-12) **RESPONSE: Undisputed.** | SV Credit was part of original Bondholder Group in May 2015. (93:14-94:3; (Delaney Ex. 5, Fourth Supp. Verified Statement of the ERS Secured Creditors Pursuant to Bankr. R. 2019, ERS Dkt. 652) ("In May 2015, certain of the ERS Secured Creditors . . . retained Jones Day to represent them......") **RESPONSE: Undisputed.** | May 26, 2017 (ERS Dkt.18) **RESPONSE: Undisputed.** | February 2014[35] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). SV Credit did not admit that it was on notice that the ERS Bonds were issued *ultra vires*. SV Credit had no notice from any source that the ERS Bonds were issued *ultra vires*. | February 2014[36] **RESPONSE: Disputed** as not supported by the materials cited in the record per Local Rule 56(b) & (e) and Fed. R. Civ. P. 56(c)(1). "[T]he earliest date that SV Credit sought or received advice from counsel about the validity, invalidity, legality or illegality of the ERS Bonds was in February 2014." Ex. 30 to Basset Decl., ¶ 7. ERS itself similarly received such advice in 2007, 2008, and 2012, and concluded each time that the ERS Bonds were or would be fully valid and enforceable. Exs. 6, 22–36, 81 to Sooknanan UV Decl. |

---

[32] Line cites to Dec. Ex. 51, Tr. of S. Cao.
[33] Dec. Ex. 30, Dec. of Cao at ¶4.
[34] Id. at ¶5.
[35] Id. at ¶3.
[36] Id. at ¶7.

9

In San Juan, Puerto Rico, today October 28, 2020.

/s/Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511


David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel. (617) 449-6943
Fax: (617) 449-6999
drfox@jonesday.com

/s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com


Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com


Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3435
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

*Counsel for Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit, L.P.*

*/s/ Alicia I. Lavergne-Ramírez*

José C. Sánchez-
Castro USDC-PR
213312
jsanchez@sanchezlrv.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanchezlrv.com

SÁNCHEZ/LRV LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

*/s/ Jason N. Zakia*

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
Jesse L. Green (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Defendants Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA
Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico
Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income
Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.;
Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GNMA & U.S. Government Target
Maturity Fund, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.;
Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico
Target Maturity Fund, Inc.; and UBS IRA Select Growth & Income Puerto Rico Fund*