**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>                Debtor. | PROMESA<br><br>Title III<br><br>No. 17 BK 3566-LTS |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS,<br><br>    and | Adv. Proc. No. 19-00356 (LTS) |

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "Title III Cases"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF ALL TITLE III
DEBTORS (OTHER THAN COFINA),

     as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF PUERTO RICO,

               Plaintiff,

v.

DEFENDANT 1M, *et al.*,

               Defendants.
_____

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,
ACTING BY AND THROUGH ITS MEMBERS,

     and

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF ALL TITLE III
DEBTORS (OTHER THAN COFINA),

     as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF PUERTO RICO,

               Plaintiff,

v.

STOEVER GLASS & CO., *et al.*,

               Defendant.

Adv. Proc. No. 19-00357 (LTS)

| | |
|---|---|
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | Adv. Proc. No. 19-00359 (LTS) |

and

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF ALL TITLE III
DEBTORS (OTHER THAN COFINA),

     as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF PUERTO RICO,

          Plaintiff,

v.

DEFENDANT 1H-78H,

          Defendants.

| | |
|---|---|
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, | Adv. Proc. No. 19-00361 (LTS) |

and

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF ALL TITLE III
DEBTORS (OTHER THAN COFINA),

     as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF PUERTO RICO,

          Plaintiff,

v.

DEFENDANT 1G-50G, *et al.*,

Defendants.

**THE COMMITTEES' RESPONSE TO ERS BONDHOLDERS' RULE 56(B) STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON *ULTRA VIRES* ISSUES AND PROCEEDINGS**

The Official Committee of Unsecured Creditors (the "**Committee**") [2] the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**"), and the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "**SCC**," and, together with the Committee, and the Retiree Committee, the "**Committees**" or "**Respondents**") hereby submit their response to ERS Bondholders' Rule 56(b) Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment on *Ultra Vires* Issues and Proceedings (ERS Dkt. 972; Commonwealth Dkt. 14242).

## NATURE OF THE LITIGATION

1. The Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") is a statutory trust established by the Commonwealth of Puerto Rico (the "Commonwealth"). ECF No. 19 in Case No. 19-bk-00356, ¶ 16.

**RESPONSE:** Undisputed.

2. The ERS Bondholders consist of two groups of bondholders who hold or previously held beneficial interests in the bonds issued by ERS (the "ERS Bonds"), as described below.

2.1. The first group, represented by Jones Day, consists of: Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated

─────────────────────

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and S.V. Credit, L.P.

2.2. The second group, represented by White & Case, consists of: Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and UBS IRA Select Growth & Income Puerto Rico Fund (collectively, the "Puerto Rico Funds").

**RESPONSE:**    Undisputed.

3.    The ERS Bondholders offer this Statement of Undisputed Facts in support of their Motion for Summary Judgment On *Ultra Vires* Issues and Proceedings (the "*Ultra Vires* Motion"). The *Ultra Vires* Motion relates to two sets of proceedings currently pending in ERS's and the Commonwealth's Title III cases:

3.1. Those portions of claim objections by the Unsecured Creditors Committee (the "Creditors' Committee"), ECF No. 5580 in Case No. 17-bk-03283, and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee" and, together with the UCC, the "Committees"), ECF No. 6482 in Case No. 17-bk-03283, contending that the ERS Bonds are invalid and unenforceable because ERS lacked statutory authority to issue them, together with the joinder of the Financial Oversight and Management Board (the "Oversight Board," and, together with the Creditors Committee and the Retiree Committee, the "Committees and Government Parties") in those claim objections, *see* ECF No. 757 in Case No. 17-bk-03566, ¶ 11. (Collectively, the "Claim Objections"); and

3.2. Adversary proceedings captioned 19-ap-356, 19-ap-357, 19-ap-359, and 19-ap-361 (collectively, the "Clawback Actions").

**RESPONSE:**    Undisputed.

4.    Through the Claim Objections, the Committees and Government Parties seek to disallow all of the ERS Bondholders' claims against ERS and the Commonwealth on the ground that the ERS Bonds are invalid and *ultra vires* because ERS lacked the statutory authority to issue

them. *See* ECF No. 5580 in Case No. 17-bk-03283; ECF No. 6482 in Case No. 17-bk-03283; ECF No. 757 in Case No. 17-bk-03566, ¶ 11.

> **RESPONSE:**     Undisputed.

5.      Through the Clawback Actions, the Committees and Government Parties seek:

5.1.    a declaratory judgment that the ERS Bonds were issued ultra vires and are null and void, Clawback Actions Count I;

5.2.    the return to ERS of payments of interest paid by ERS to the ERS Bondholders on the ground that they were unlawful disbursements and fraudulent transfers, Clawback Actions Counts II to V; and

5.3.    disallowance of the ERS Bondholders' claims, Clawback Actions Count VI.

*See* ECF No. 19 in Case No. 19-bk-356; ECF No. 45 in Case No. 19-bk-357; ECF No. 1 in 19-bk-359; ECF No. 14 in 19-bk-361.

> **RESPONSE:**     Undisputed as to the Committee and SCC. Disputed as to the Retiree Committee as the Retiree Committee is not a part to the Clawback Actions. *See generally*, Clawback Actions dockets.

6.      The ERS Bondholders asserted counterclaims in the Clawback Actions seeking:

6.1.    a declaratory judgment that the ERS Bonds were validly issued, Clawback Actions Counterclaim Count I;

6.2.    a declaratory judgment that the ERS Bonds are enforceable under § 8-202(b)(2) of the Uniform Commercial Code, 19 L.P.R.A. § 1752(b)(2), Clawback Actions Counterclaim Count II;

6.3.    a declaratory judgment that payments on the ERS Bonds were payments of a valid liability, Clawback Actions Counterclaim Count III; and

6.4.    in the alternative, claims for unjust enrichment and negligent misrepresentation against ERS, Clawback Actions Counterclaim Counts IV and V.

*See* ECF No. 41 in Case No. 19-bk-356; ECF No. 41 in Case No. 19-bk-357; ECF No. 21 in Case No. 19-bk-359; ECF No. 30 in Case No. 19-bk-361.

> **RESPONSE:**     Respondents dispute that the ERS Bondholders' Counterclaim Count II is specific to § 8-202(b)(2) or that 19 L.P.R.A § 1752(b)(2) is the basis on which the ERS

Bondholders' rely for their assertion that ERS Bonds are enforceable. *See* ECF No. 41 in Case No. 19-bk-356; ECF No. 41 in Case No. 19-bk-357; ECF No. 21 in Case No. 19-bk-359; ECF No. 30 in Case No. 19-bk-361. The remaining factual allegations are undisputed.

## ERS

7.      ERS is a trust established by Act No. 447 of May 15, 1951, of the Legislature of the Commonwealth (the "ERS Enabling Act") that is separate and apart from the Commonwealth government and its other instrumentalities.  Clawback Action Complaints ¶ 16; Clawback Action Answers ¶ 16.

**RESPONSE:**      Undisputed.

8.      ERS is a "system" created by the Commonwealth to administer the payment of pensions and the delivery of other benefits for retired employees of participating employers. Clawback Action Complaints ¶ 16; Clawback Action Answers ¶ 16.

**RESPONSE:**      Undisputed.

## THE ERS ENABLING ACT'S DEBT-AUTHORIZING PROVISION

9.      In 1988, the Legislative Assembly amended the ERS Enabling Act to provide, in Spanish:

> Autorización para incurrir en deudas.—La Junta de Síndicos podrá autorizar al Administrador para tomar prestado de cualquier institución financiera, del Gobierno del Estado Libre Asociado de Puerto Rico o del gobierno federal de los Estados Unidos de América, o mediante colocaciones directas de deuda, garantizando dicha deuda por los activos del Sistema. . . .

3 L.P.R.A. § 779(d) (2008) (Spanish).

**RESPONSE:**      Undisputed.

10.      In 2008, Section 779(d) remained as it had been enacted in 1988.  *Id.*

**RESPONSE:**      Undisputed.

11.      The official English translation of Section 779(d) provided in 2008:

> Authorization to Incur Debts: The Board of Trustees may authorize the Administrator to seek a loan from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America or through the direct

placement of debts, securing said debt with the assets of the System.

. . .

3 L.P.R.A. § 779(d) (2008) (English).

**RESPONSE:**    Undisputed.

12.    The official English translation of Section 779(d) is inaccurate. Ex. 1 to Decl. of Dr. Laura Gonzalez, at 6.

**RESPONSE:**    Respondents dispute that the official English translation of Section 779(d) is inaccurate in any material way. Further, Respondents dispute the reliability of Dr. Gonzalez's Report (the sole factual support for SOF 12) and have moved for her report to be stricken and therefore dispute SOF 12 in its entirety. (ERS Dkt. 997.)

13.    The official English translation of Section 779(d) omits commas that are present in the original Spanish. *Compare* 3 L.P.R.A. § 779(d) (2008) (Spanish) *with* 3 L.P.R.A. § 779(d) (English); Ex. 1 to Gonzalez Decl., at 8; *see also* Retiree Committee Claim Objection ¶ 10 n. 3.

**RESPONSE:**    Respondents do not dispute that the official English translation of Section 779(d) omits commas that are present in the original Spanish but dispute that this has a material impact on the translation. Respondents also dispute the reliability of Dr. Gonzalez's report and have moved to strike it. (ERS Dkt. 997.)

14.    The official English translation wrongly translates two instances of "del" as "of the" when they should be translated as "from the." Ex A. to Gonzalez Decl., at 8–9; *see also* Retiree Committee Claim Objection ¶ 10 n. 3.

**RESPONSE:**    Respondents do not dispute that the preferred translation of "del" here is "from."

14.1.    The word "del" may mean either "of the" or "from the," depending on context. "Del," WordReference.com; https://www.wordreference.com/es/en/ translation.asp?spen=del; see also Ex A. to Gonzalez Decl., at 8.

**RESPONSE:**    Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object to SOF 14.1 as not being support by admissible evidence given that Dr. Gonzalez's expert report should be stricken and therefore dispute SOF 14.1. (ERS Dkt. 997.)

14.2.    Context and parallel structure show that the first and third instances of "del" in Section 779(d) should be translated as "from the" rather than "of the." Ex A. to Gonzalez Decl., at 8–9.

**RESPONSE:**    Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object to SOF 14.2 as not being supported by admissible evidence given that Dr. Gonzalez's expert report should be stricken and therefore dispute SOF 14.2. (ERS Dkt. 997.)

15.    The official English translation wrongly translates "tomar prestado" as "seek a loan" when it should be translated as "borrow." Ex A. to Gonzalez Decl., at 6–8.

**RESPONSE:**    Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object to SOF 15 as not being supported by admissible evidence given that Dr. Gonzalez's expert report should be stricken and therefore dispute SOF 15. (ERS Dkt. 997.) Respondents further dispute SOF 15 on the grounds that the official English translation correctly translated "tomar prestado" as "seek a loan."

15.1.    "Tomar prestado" is a more general phrase than "seek a loan" and refers to borrowing generally, rather than to loans specifically. *"Tomar Prestado,"* WordReference.com, https://wordreference.com/es/en/translation.asp?spen=tomar%20prestado (translating the phrase as "borrow" and giving, as an example of usage, "Juan borrowed his parents' car"); "Tomar Prestado," Cambridge Spanish-English Dictionary, https://dictionary.cambridge.org/us/dictionary/spanish-english/tomar-prestado (translating the phrase as "borrow" and providing that it means "to take (something, often money) temporarily with the intention of returning it"); *see also* Ex A. to Gonzalez Decl., at 6–8.

**RESPONSE:**    Disputed. Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object to SOF 15.1 as not being supported by admissible evidence given that Dr. Gonzalez's expert report should be stricken and therefore dispute SOF 15. (ERS Dkt. 997.) Respondents further note that Bondholders' other cited materials do not support the proposition that "tomar prestado" is a more general phrase than "seek a loan."

16.    Correcting these three errors, the proper English translation of Section 779(d) as it existed in 2008 was:

> Authorization to incur debts. - The Board of Trustees may authorize the Administrator to borrow from any financial institution, from the Government of the Commonwealth of Puerto Rico or from the Federal Government of the United States of America, or through direct debt placements, securing said debt with the assets of the System.

Ex. 1 to Gonzalez Decl., at 6.

**RESPONSE:** Disputed. Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object to SOF 15.1 as not being supported by admissible evidence given that Dr. Gonzalez's expert report should be stricken and therefore dispute SOF 16. (ERS Dkt. 997.) Respondents also dispute that SOF 16 is the proper English translation of Section 779(d) rather than the official English translation propounded by the Commonwealth. As noted above, the Bondholders' translation improperly translates "tomar prestado" to "borrow." In addition, Bondholders, without any support, change the translation of "colocaciones directas de deuda" from "direct placement of debt" to "direct debt placements." Dr. Gonzalez's Report, which the Court should strike, does not provide any opinions as to why Bondholders' translation of this phrase is accurate.

17. Section 779(d) does not restrict the purposes for which ERS may borrow funds.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56(b) and (e), the Court may disregard SOF 17 as it is not supported by any record citation.

18. In 2007, while ERS was considering the issuance of the ERS Bonds, the Legislative Assembly enacted Act 35-2007.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56(b) and (e), the Court may disregard SOF 17 as it is not supported by any record citation.

19. Act 35-2007 increased pension benefits. Act 35-2007, § 5.

**RESPONSE:** Disputed. Act 35-2007 increased annuities paid under Act 447. Section 5 of Act 35-2007 did not effectuate an increase in pension benefits.

20.     Act 35-2007 provided that the "funds needed to cover the cost increase in the minimum amount of the pensions of the pensioners of the Central Government shall proceed from the resources obtained through the issue of bonds of the Employees of the Government and the Judicature Retirement Systems Administration." Act 35-2007, § 5.

**RESPONSE:**     Respondents do not dispute that Section 5 of Act-2007 contains this language.

## THE MUNICIPAL FINANCE MARKET

21.     The issuance of municipal bonds is a form of borrowing.  Ex. 1 to Declaration of Sparkle L.  Sooknanan in Support of ERS Bondholders' Motion For Partial Summary Judgment on *Ultra Vires* Issues and Proceedings ("Sooknanan UV Decl.") at 149 ("Municipal securities issuers . . . borrow money in the municipal securities market" when they issue bonds); Ex. 1 to Declaration of W. Bartley Hildreth ¶ 174.

**RESPONSE:**     Undisputed.

22.     Issuers of municipal securities borrow money by selling bonds.  Ex. 1 to Sooknanan UV Decl. at 149; Ex. 2 to Sooknanan UV Decl. at 111; Ex. 1 to Declaration of W. Bartley Hildreth ¶ 174 ("ERS borrowed directly from the underwriters" when it issued the ERS Bonds).

**RESPONSE:**     Undisputed that issuers of municipal securities borrow money from the public investors who buy the issuer's bonds. (Commonwealth Dkt. 14250, Ex. 6 (Report of R. Doty) at 3.) For the reasons laid out in Respondents' motion for summary judgment and response to Bondholders' motion for summary judgment, Respondents dispute Dr. Hildreth's conclusion that "ERS borrowed directly from the underwriters" when it issued the ERS Bonds.

23.     A municipal bond is a loan.  Ex. 1 to Sooknanan UV Decl. at 1; Ex. 2 to Sooknanan UV Decl. at 111 (municipal bonds "are loans from the investing public. . . . The borrower is the governmental issuer."); Ex. 3 to Sooknanan UV Decl. at 163:5–6 ("A bond is a loan.").

**RESPONSE:**     Undisputed that municipal bonds are loans from the investing public to the government issuer. (Commonwealth Dkt. 14250, Ex. 6 (Report of R. Doty) at 13.)

24.     In a fully underwritten bond offering, the issuer of municipal bonds sells the bonds directly to the underwriter or syndicate of underwriters by means of a purchase and sale agreement. Ex. 4 to Sooknanan UV Decl. at 20.

**RESPONSE:**     Undisputed.

25. "The only legal relationship between the issuer and an underwriter is created by a Bond Purchase Agreement . . . wherein the issuer agrees to sell the bonds to the underwriter and the underwriter agrees to purchase the bonds from the issuer." *Id.* at 9, 21.

**RESPONSE:** Respondents do not dispute that "The only legal relationship between the issuer and an underwriter is created by a Bond Purchase Agreement signed at the time of the pricing of the bonds, wherein the issuer agrees to sell the bonds to the underwriter and the underwriter agrees to purchase the bonds from the issuer." (Commonwealth Dkt. 14250, Ex. 6 (Report of R. Doty) at 9.)

26. In his deposition testimony, the Committees' and Government Parties' expert offered the opinion, with which the Bondholders disagree, that the lender to a municipal bond issuer is whichever "public investor" owns the bonds at a given time. Ex. 2 to Sooknanan UV Decl. at 114–15.

**RESPONSE:** Undisputed that Mr. Doty (Respondents' expert) testified that a "public investor" who holds the beneficial interest to a bond is a lender to the issuer and that "if the investors trade the bonds, then new – then, in effect, new investors take their place." Ex. 2 to Sooknanan UV Decl. at 114–15. Respondents dispute SOF 26 to the extent it mischaracterizes Mr. Doty's testimony.

27. In his deposition testimony, the Committees' and Government Parties' expert offered the opinion, with which the Bondholders disagree, that "if Alice owns the bond . . . Alice is the lender," "if Alice sells the bond to Bob, then Bob becomes the lender," and "if Bob sells to Carol, then Carol becomes the lender," so that "the identity of the lender can change over the life of the bond issue." *Id.*

**RESPONSE:** Undisputed that in response to the question, "So if Alice owns the bond, Alice is the lender?" Mr. Doty testified that "If Alice owns the bond and Alice is a public investor, the answer is yes." Ex. 2 to Sooknanan UV Decl. at 114. Respondents dispute SOF 27 to the extent it mischaracterizes Mr. Doty's testimony.

27.1. In his report, the Committees' and Government Parties' expert offered the opinion, with which the Bondholders disagree, that "[a]n issuer does not 'borrow' or take a 'loan' from an underwriter, but from the public investors who buy the bonds from the underwriters." Ex. 4 to Sooknanan UV Decl. at 13.

**RESPONSE:** Undisputed that the SOF 27.1 accurately quotes a portion of Mr. Doty's expert report.

28. Municipal debt markets distinguish between direct borrowing, in which a borrower issues debt securities itself, and indirect or conduit borrowing, in which a borrower borrows money via a separate, conduit entity which then issues debt securities. Ex. 1 to Hildreth Decl. ¶ 72.

**RESPONSE:** Undisputed. Respondents also note that a direct borrowing is different from a "direct placement" or "private placement" which are terms of art in finance. (Ex. 4 to Sooknanan UV Decl. at 3).

29. According to the Committees' and Government Parties' expert, it is bond counsel's obligation "to deliver an opinion stating that the bonds have been validly issued," and investors' analysis of the legality of bonds they are considering purchasing "centers on the bond counsel's opinion." Ex. 2 to Sooknanan UV Decl. at 165, 174.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(2), SOF 29 is not supported by admissible evidence because the questioning of Mr. Doty that elicited the referenced testimony was outside of the scope of those opinions over which Mr. Doty was providing expert testimony. (Ex. 2 to Sooknanan UV Decl. at 165, 174). Subject to that objection, Respondents do not dispute that in response to the question "Is one of the obligations of bond counsel to deliver an opinion stating that the bonds have been validly issued?" Mr. Doty replied, "Right. Yeah, again, that's an accurate statement." (Ex. 2 to Sooknanan UV Decl. at 165). Moreover, Respondents do not dispute that in response to the question, "What type of disclosures are individual investors entitled to expect when it comes to the legality of the bonds they have purchased?" Mr. Doty replied, "I believe traditionally it centers on the bond counsel opinion." (Ex. 2 to Sooknanan UV Decl. at 174). Respondents further dispute SOF 29 to the extent SOF 29 mischaracterizes Mr. Doty's testimony.

30. The Committees' and Government Parties' expert intended his book, *Bloomberg Visual Guide to Municipal Bonds*, to be "a guide to investors in municipal securities." *Id.* at 173.

**RESPONSE:** Undisputed

30.1.    Nowhere in his book does Mr. Doty state that investors in municipal securities should examine enabling legislation for themselves before purchasing municipal securities.  *See* Ex. 1 to Sooknanan UV Decl.

**RESPONSE:**        Pursuant to Fed. R. Civ. P. 56(c)(1)(B), the factual citations (selected passages from Mr. Doty's book, Bloomberg *Visual Guide to Municipal Bonds*) do not support the allegation that "Nowhere in his book does Mr. Doty state that investors in municipal securities should examine enabling legislation for themselves before purchasing municipal securities."

30.2.    The chapter of Mr. Doty's book entitled "Considerations When Buying" says nothing about enabling legislation at all.  *See id.*  at 91–108.

**RESPONSE:**        Respondents do not dispute that the chapter of Mr. Doty's book entitled "Consideration When Buying" does not specifically reference enabling legislation. Respondents note that the considerations listed in Mr. Doty's chapter are not exhaustive.

31.    As the Bondholders' expert explained:

Making either the purchasers of securities entitlements or DTC responsible for reviewing legislation or conducting other diligence in connection with bond issues or secondary market purchases could impede issuer access to financial markets, with a resulting decrease in the efficiency of government operations.  Imposing such risks could reduce demand, increase interest rates paid by issuers, limit negotiability of municipal bonds, and impair bond values.

Ex. 1 to Hildreth Decl. ¶ 57.

**RESPONSE:**        Undisputed that the Bondholders accurately quote a portion of Dr. Hildreth's expert report, which expresses an unsupported opinion.

32.    As the Bondholders' expert explained:

A reasonable investor cannot be expected to uncover material facts that vary from what the professionals involved with the transaction state in market-oriented certifications.

*Id.* ¶ 58.

**RESPONSE:** Undisputed that the Bondholders accurately quote a portion of Dr. Hildreth's expert report, which express an unsupported opinion.

## THE ISSUANCE OF THE ERS BONDS

33. Beginning in the early 2000s, the Commonwealth considered issuing debt to raise additional funds for ERS. 32– to Sooknanan UV Decl. at 204.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object that SOF 33 is not supported by admissible evidence. Respondents assume that the factual reference is to Exhibit 5 to the Sooknanan UV Decl. If correct, Sooknanan UV Decl at ¶8 describes Exhibit 5 as "a true and correct copy of the *Final Investigative Report* by The Financial Oversight & Management Board for Puerto Rico Independent Investigator, Kobre & Kim LLP, dated August 20, 2018" when in fact Exhibit 5 is an excerpt from this document. In any event, Exhibit 5 is hearsay if offered for the truth of the matters stated therein and cannot support the alleged fact in SOF 33. Respondents also dispute that SOF 33 is relevant or material to the legal questions at issue here, which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

34. Under an initial proposal discussed between 2004 and 2006, the Commonwealth itself would have issued $2 billion in bonds payable from the Commonwealth's General Fund, and transferred the net proceeds from that issuance to ERS. *Id.*

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object that SOF 34 is not supported by admissible evidence. Respondents assume that the factual reference is to Exhibit 5 to the Sooknanan UV Decl. If correct, Sooknanan UV Decl at ¶8 describes Exhibit 5 as "a true and correct copy of the *Final Investigative Report* by The Financial Oversight & Management Board for Puerto Rico Independent Investigator, Kobre & Kim LLP, dated August 20, 2018" when in fact Exhibit 5 is an excerpt from this document. In any event, Exhibit 5 is hearsay if offered for the truth of the matters stated therein and cannot support the alleged fact in SOF 34. Respondents

also dispute that SOF 34 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

35.     That initial proposal discussed between 2004 and 2006, like other issuances of general obligation bonds by the Commonwealth itself, required approval by the Legislative Assembly. *Id.*

**RESPONSE:**     Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object that SOF 35 is not supported by admissible evidence. Respondents assume that the factual reference is to Exhibit 5 to the Sooknanan UV Decl.  If correct, Sooknanan UV Decl at ¶8 describes Exhibit 5 as "a true and correct copy of the *Final Investigative Report* by The Financial Oversight & Management Board for Puerto Rico Independent Investigator, Kobre & Kim LLP, dated August 20, 2018" when in fact Exhibit 5 is an excerpt from this document.  In any event, Exhibit 5 is hearsay if offered for the truth of the matters stated therein and cannot support the alleged fact in SOF 35. Respondents also dispute that SOF 35 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

36.     The necessary legislation to issue bonds from the Commonwealth's General Fund and transfer the proceeds to ERS was introduced but was never approved. *Id.*

**RESPONSE:**     Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object that SOF 36 is not supported by admissible evidence. Respondents assume that the factual reference is to Exhibit 5 to the Sooknanan UV Decl.  If correct, Sooknanan UV Decl at ¶8 describes Exhibit 5 as "a true and correct copy of the *Final Investigative Report* by The Financial Oversight & Management Board for Puerto Rico Independent Investigator, Kobre & Kim LLP, dated August 20, 2018" when in fact Exhibit 5 is an excerpt from this document.  In any event, Exhibit 5 is hearsay if offered for the truth of the matters stated therein and cannot support  the alleged fact in SOF 36. Respondents

also dispute that SOF 36 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

37. Beginning in 2006 and 2007, ERS considered an alternative proposal under which ERS itself, rather than the Commonwealth, would issue bonds and be the direct obligor on the bonds. *Id.* at 204–05.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(2), Respondents object that SOF 37 is not supported by admissible evidence. Respondents assume that the factual reference is to Exhibit 5 to the Sooknanan UV Decl. If correct, Sooknanan UV Decl at ¶8 describes Exhibit 5 as "a true and correct copy of the *Final Investigative Report* by The Financial Oversight & Management Board for Puerto Rico Independent Investigator, Kobre & Kim LLP, dated August 20, 2018" when in fact Exhibit 5 is an excerpt from this document. In any event, Exhibit 5 is hearsay if offered for the truth of the matters stated therein and cannot support for the alleged fact in SOF 37. Respondents also dispute that SOF 37 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

37.1. In March 2007, ERS received a legal opinion from the Puerto Rico law firm of Fiddler, Gonzalez & Rodriguez, P.S.C. ("Fiddler") concerning "whether the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the 'System') may issue bonds secured by a pledge of employer contributions payable to the System pursuant to [the ERS Enabling Act]." Sooknanan UV Decl. Ex. 6 (the "March 2007 Legal Opinion").

**RESPONSE:** Undisputed. Respondents dispute that SOF 37.1 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object on the basis that Ex. 6 is hearsay if offered for

the truth of the matters stated therein and not admissible evidence that may support a motion for summary judgment.

37.2.   The March 2007 Legal Opinion from Fiddler concluded: "The System is authorized pursuant to Section 4-105(d) of Act 447 [codified at 3 L.P.R.A. § 779(d)] to incur debt secured by the assets of the System, and the Bonds are such a debt." *Id.*

**RESPONSE:**   Undisputed that the quoted language appears in Sooknanan UV Decl. Ex. 6. Respondents dispute that SOF 37.2 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object on the basis that Ex. 6 is hearsay if offered for the truth of the matters stated therein and not admissible evidence that may support a motion for summary judgment.

37.3.   On August 16, 2007, the newspaper Caribbean Business published an article about the upcoming issuances of ERS Bonds entitled, "Can the ERS issue $7 billion in bonds without legislative approval?" Ex. 7 to Sooknanan UV Decl.

**RESPONSE:**   Undisputed. Respondents dispute that SOF 37.3 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object on the basis that Ex. 7 is hearsay if offered for the truth of the matters stated therein and not admissible evidence that may support a motion for summary judgment.

37.4.   The Caribbean Business article quoted from and discussed the March 2007 Legal Opinion in explaining why no additional legislative approval was needed for ERS to issue the ERS Bonds. *Id.*

**RESPONSE:**   Respondents do not dispute that the Caribbean Business article quoted from the March 2007 Legal Opinion. Respondents' dispute that the article discussed the March 2007 Legal Opinion or that it explained or came to the conclusion that no additional legislative approval was needed for ERS to issue the ERS Bonds. Ex. 7 to Sooknanan UV Decl. Respondents

18

also dispute that SOF 37.4 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object on the basis that Ex. 7 is hearsay if offered for the truth of the matters stated therein and not admissible evidence that may support a motion for summary judgment.

> 37.5. There is no evidence that the issuance of the ERS Bonds by ERS was ever submitted to the Legislative Assembly for approval.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56(b) and (e), the Court may disregard SOF 37.5 as it is not supported by any record citation. Respondents dispute that SOF 37.5 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

> 38. ERS issued three series of bonds (the "ERS Bonds") in 2008:

> 38.1. ERS issued the "Series A" Bonds totaling $1,588,810,799.60 principal amount on January 31, 2008. *See* Ex. 8 to Sooknanan UV Decl.

> 38.2. ERS issued the "Series B" Bonds totaling $1,058,634,613.05 principal amount on June 2, 2008. *See* Ex. 9 to Sooknanan UV Decl.

> 38.3. ERS issued the "Series C" Bonds totaling $300,202,930 principal amount on June 30, 2008. *See* Ex. 10 to Sooknanan UV Decl.

**RESPONSE:** SOF 38 and 38.1-38.3 are undisputed.

> 39. ERS received billions of dollars in net proceeds from the issuance of the ERS Bonds: $1,426,002,361.71 from Series A; $1,017,315,428.51 from Series B; and $285,037,106.65 from Series C. Exs. 11–13 to Sooknanan UV Decl.

**RESPONSE:** Undisputed.

> 39.1. The proceeds from the ERS Bond issuance were used to increase the funds available to pay benefits to retirees or invested to reduce ERS's unfunded accrued actuarial liabilities for such benefits. Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003232; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000003962; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000004857.

**RESPONSE:**     Undisputed.

40.     Each series of ERS Bonds was issued pursuant to an Official Statement made available to the underwriters who purchased the bonds and to public investors.  *See* Exs. 8–10 to Sooknanan UV Decl.

**RESPONSE:**     Undisputed.

41.     None of the Official Statements for the ERS Bonds disclosed any risk or possibility that the ERS Bonds were not validly issued.  *See id.*

**RESPONSE:**     Disputed. The Official Statements noted that ERS's purported ability to issue the ERS Bonds was the ERS Enabling Act. And, for the reasons set forth in the *Committees' Motion for Summary Judgment on Ultra Vires Issues* (ERS Dkt. 978; Commonwealth Dkt. 14246) and the *Response of Committees to (i) ERS Bondholders' Motion for Partial Summary Judgment on Ultra Vires Issues and Proceedings; and (ii) Motion of the Bank of New York Mellon, As Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* (filed contemporaneously herewith), the terms of the ERS Enabling Act clearly did not authorize the issuance of the ERS Bonds. *See* Exhibits 8–10 to Sooknanan UV Decl. In addition, Respondents dispute that SOF 41 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

42.     The ERS Board of Trustees approved the issuance of the ERS Bonds by means of a Bond Resolution enacted on January 24, 2008, along with supplemental bond resolutions enacted on January 29, 2008; May 27, 2008; and June 26, 2008. *See* Exs. 14–17 to Sooknanan UV Decl. The Bond Resolution recited that ERS had the power "to incur debt secured by the assets of the System." Ex. 14 to Sooknanan UV Decl., at PR-ERS-000003439.

**RESPONSE:**     Undisputed. Respondents further note that ERS did not, in fact, have the authority to issue the ERS Bonds.

43.     The Bond Resolution stated that it was "adopted pursuant to the provisions of the [ERS Enabling] Act." *Id.*  12 [sic]

**RESPONSE:** Respondents do not dispute that the Bond Resolution contains the quoted language. Respondents further state, for the reasons set forth in the *Committees' Motion for Summary Judgment on Ultra Vires Issues* (ERS Dkt. 978; Commonwealth Dkt. 14246) and the *Response of Committees to (i) ERS Bondholders' Motion for Partial Summary Judgment on Ultra Vires Issues and Proceedings; and (ii) Motion of the Bank of New York Mellon, As Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* (filed contemporaneously herewith), ERS did not, in fact, have the authority to issue the ERS Bonds and therefore the Bond Resolution was not properly adopted pursuant to the provisions of the ERS Enabling Act.

44. The Board of Directors of the Government Development Bank approved the issuance of the ERS Bonds. Ex. 18 to Sooknanan UV Decl.

**RESPONSE:** Respondents do not dispute that Ex. 18 is a Certificate as to Resolution, which was adopted by the Board of Directors of the Government Development Bank of January 24, 2008, approving the issuance of $1,456,247,368.95 Senior Pension Funding Bonds, Series A. Pursuant to F.R.C.P. 56(c)(1)(B), Ex. 18 does not support the allegation that that the Board of Directors of the Governmental Development Bank approved the issuance of the Series B or Series C Bonds.

45. Either the Board of Directors of the Government Development Bank or its Executive Committee further specifically approved the issuance of each of the three series of ERS Bonds. *See* Ex. 19–21 to Sooknanan UV Decl.

**RESPONSE:** Undisputed.

46. In connection with the issuance of each series of ERS Bonds, ERS obtained multiple legal opinions confirming the validity of the Bond Resolution, the validity of the ERS Bonds, and ERS's full authority to issue the ERS Bonds:

**RESPONSE:** Respondents do not dispute that in connection with the issuance of each series of ERS Bonds, ERS obtained multiple legal opinions opining on the validity of the Bond

Resolution, the validity of the ERS Bonds, and ERS's authority to issue the ERS Bonds. For the reasons set forth in *Committees' Motion for Summary Judgment on Ultra Vires Issues* (ERS Dkt. 978; Commonwealth Dkt. 14246) and the *Response of Committees to (i) ERS Bondholders' Motion for Partial Summary Judgment on Ultra Vires Issues and Proceedings; and (ii) Motion of the Bank of New York Mellon, As Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* (filed contemporaneously herewith), Respondents dispute these legal opinions confirmed the validity of the Bond Resolution, the ERS Bond and/or ERS's authority to issue the ERS Bonds. Respondents also dispute that SOF 46 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object to the consideration of the contents of the legal opinions as hearsay and therefore they are not admissible evidence.

> 46.1.  The Official Statement for each series of ERS Bonds contained a "Form of Opinion of Bond Counsel" from Fiddler.  Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003502; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004142; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005050.

**RESPONSE:**  Undisputed. Respondents dispute that SOF 46.1 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 8-10 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

> 46.2.  The Form Opinion of Bond Counsel stated that Fiddler had "examined the Constitution and the laws of the Commonwealth of Puerto Rico . . . including [the ERS Enabling Act] as amended and supplemented," and based on that examination opined that "[t]he Bonds have been duly authorized by the System and constitute legal valid and binding limited obligations of the System."  Ex. 8 to Sooknanan UV

Decl. at PR-ERS-000003503; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004143; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005051.

**RESPONSE:** Respondents do not dispute that the quoted language appears in the Form Opinion of Bond Counsel but dispute the citations provided as well as the punctuation omitted from the quoted language. Respondents dispute that SOF 46.2 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 8-10 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.3. In connection with each series of the ERS Bonds, Fiddler issued a legal opinion addressed to ERS matching the "Form of Opinion of Bond Counsel." Exs. 22–24 to Sooknanan UV Decl.

**RESPONSE:** Undisputed. Respondents dispute that SOF 46.3 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 22-24 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.4. That legal opinion stated that Fiddler had "examined the Constitution and the laws of the Commonwealth of Puerto Rico . . . including [the ERS Enabling Act] as amended and supplemented" and opined based on that examination that "[t]he Bonds have been duly authorized by the System and constitute legal valid and binding limited obligations of the System." *Id.*

**RESPONSE:** Respondents do not dispute that the quoted language appears in the Form Opinion of Bond Counsel but dispute the omission of punctuation from the quoted language. Respondents dispute that SOF 46.4 is relevant or material to the legal questions at issue here which

is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 22-24 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.5.    In connection with each series of the ERS Bonds, Fiddler issued a second legal opinion, addressed to ERS and to the Fiscal Agent.  Exs. 25–27 to Sooknanan UV Decl.

**RESPONSE:**    Undisputed. Respondents dispute that SOF 46.5 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 25-27 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.6.    Fiddler's second legal opinion stated that ERS "has the right and power under [the ERS Enabling Act] to adopt the [Bond] Resolution and the Resolution . . . is valid and binding upon the System and enforceable in accordance with its terms, and no other authorization for the Resolution is required," and that "the Bonds are valid and binding special limited non-recourse obligations of the System as provided in the Resolution enforceable in accordance with their terms and the terms of the Resolution . . . and such Bonds have been duly and validly authorized executed and issued in accordance with law including the Act and in accordance with the Resolution."  *Id.*

**RESPONSE:**    Respondents do not dispute that the quoted language appears in the Form Opinion of Bond Counsel but dispute the omission of punctuation from the quoted language. Respondents dispute that SOF 46.6 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 25-27 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.7. In connection with each series of ERS Bonds, Fiddler issued a third legal opinion, addressed to the members of the underwriting syndicate for each series of ERS Bonds. Exs. 28–30 to Sooknanan UV Decl.

**RESPONSE:** Undisputed. Respondents dispute that SOF 46.7 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 28-30 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.8. Fiddler's third legal opinion stated that Fiddler had "examined and [was] familiar with" the ERS Enabling Act and that "[t]he [Bond] Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal valid and binding agreements of the System enforceable against the System in accordance with their respective terms." *Id.*

**RESPONSE:** Respondents do not dispute that the quoted language appears in the Form Opinion of Bond Counsel but dispute the omission of punctuation from the quoted language. Respondents dispute that SOF 46.8 is relevant or material to the legal questions at issue here: whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 28-30 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.9. In connection with each series of ERS Bonds, ERS's General Counsel issued a legal opinion. Exs. 31–33 to Sooknanan UV Decl.

**RESPONSE:** Undisputed. Respondents dispute that SOF 46.9 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 31-33 are hearsay if offered for

the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

> 46.10. ERS's General Counsel's opinion stated that "[t]he Bonds have been duly and validly authorized and issued," and "will constitute legally valid and binding obligations of the System," that the Bond Resolution was a "legal, valid, and binding agreement[] of" ERS, and that "[a]ll legislation . . . necessary to fulfill in all material respects the terms and conditions of the Bonds and to carry out the transactions contemplated by the" bond issuance is "in full force and effect . . . and no further legislation . . . is required for such purposes." *Id.*

**RESPONSE:** Respondents do not dispute that the ERS's General Counsel's opinion contains the quoted language. Respondents dispute that SOF 46.10 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 31-33 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

> 46.11. In connection with each series of ERS Bonds, the Commonwealth's Secretary of Justice issued a legal opinion. Exs. 34–36 to Sooknanan UV Decl.

**RESPONSE:** Undisputed. Respondents dispute that SOF 46.11 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 34-36 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

> 46.12. The Commonwealth's Secretary of Justice's legal opinion stated that "All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions and to carry out the transactions contemplated by the Letter of Representations and the [Master Continuing Disclosure Agreement] are in full force and effect or have been obtained as applicable and no further legislation authorization consent or approval is required for such purposes." *Id.*

**RESPONSE:** Respondents do not dispute that the quoted language appears in the Form Opinion of Bond Counsel but dispute the omission of punctuation from the quoted language. Respondents dispute that SOF 46.12 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents further object that Exhibits 34-36 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

46.13. There is no evidence that any of these opinions has ever been withdrawn.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56(b) and (e), the Court may disregard SOF 46.14 as it is not supported by any record citation. Respondents also dispute that SOF 46.14 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

47. Before the issuance of each series of ERS Bonds, ERS and the syndicate of underwriters obtained a Letter of Representations from the Commonwealth, signed by the Acting Secretary of the Treasury. Exs. 37–39 to Sooknanan UV Decl.

**RESPONSE:** Undisputed.

47.1. Each Letter of Representations provided that it was made "in order to induce" ERS and the underwriters "to enter into the Purchase Contract [for the purchase by the underwriters of each series of ERS Bonds], the terms of which are hereby approved, and to make the offering and sale of the Bonds therein contemplated." *Id.*

**RESPONSE:** Respondents do not dispute that the Letters of Representations from the Commonwealth contain the quoted language. Respondents object that Exhibits 37-39 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

47.2. Each Letter of Representations further provided that there was not, "to the knowledge of the Commonwealth . . . any basis" for any "action suit proceeding

inquiry or investigation at law or in equity before or by any court government agency or public board or body" "wherein an unfavorable decision ruling or finding would materially adversely affect the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the [Master Continuing Disclosure Agreement], this Letter of Representations, the Purchase Contract, or any of them." *Id.*

**RESPONSE:**     Respondents do not dispute that the Letters of Representations from the Commonwealth contain the quoted language. Respondents object that Exhibits 37-39 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

47.3.   Each Letter of Representations stated that it was "made solely for the benefit of the signatories hereto (including the successors or assigns of the Underwriters)." *Id.*

**RESPONSE:**     Respondents do not dispute that the Letters of Representations from the Commonwealth contain the quoted language. Respondents object that Exhibits 37-39 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

48.   Before the issuance of each series of ERS Bonds, ERS and the Commonwealth entered a Master Continuing Disclosure Agreement.  Exs. 40–42 to Sooknanan UV Decl.

**RESPONSE:**     Undisputed. Respondents dispute that SOF 48 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

49.   The Master Continuing Disclosure Agreement specified that it was "executed and delivered . . . in connection with the issuance of" each series of ERS Bonds.  *Id.*

**RESPONSE:**     Undisputed. Respondents dispute that SOF 49 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

50.     ERS sold the entirety of each series of ERS Bonds directly to a syndicate of underwriters via a purchase contract. Exs. 43–45 to Sooknanan UV Decl.

**RESPONSE:**     Undisputed.

51.     Each purchase contract provided that "the Underwriters jointly and severally hereby agree to purchase from the System and the System hereby agrees to sell and deliver to the Underwriters all (but not less than all) of the" initial principal amount of each series of ERS Bonds. *Id.*

**RESPONSE:**     Respondents do not dispute that the quoted language appears in the

Purchase Contracts or Amended and Restated Purchase Contract but dispute the omission of

punctuation from the quoted language.

52.     Each purchase contract provided for the underwriters to pay a fixed purchase price for the entire series of ERS Bonds. *Id.*

**RESPONSE:**     Undisputed.

53.     The underwriters for each series of ERS Bonds were:

53.1.   Series A: UBS Financial Services Incorporated of Puerto Rico; Popular Securities, Inc.; Santander Securities Corporation; Banco Bilbao Vizcaya Argentaria Puerto Rico; Citigroup Global Markets Inc.; Lehman Brothers, Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Oriental Financial Services, Inc.; Samuel Ramirez & Co., Inc.; Scotiabank of Puerto Rico; TCM Capital, Inc.; and Wachovia Capital Markets, LLC. Ex. 43 to Sooknanan UV Decl. at PR-ERS-000003525.

**RESPONSE:**     Respondents dispute that the Samuel Ramirez & Co., Inc. is the party

named on Schedule A to the Amended and Restated Purchase Contract for the Series A ERS

Bonds. The Government and Committees do not otherwise dispute that the parties listed in Para.

53.1 are named on Schedule A to the Amended and Restated Purchase Contract for the Series A

ERS Bonds.

53.2.   Series B: UBS Financial Services Incorporated of Puerto Rico; Popular Securities, Inc.; and Santander Securities Corporation. Ex. 44 to Sooknanan UV Decl. at PR-ERS-000004181.

**RESPONSE:**     Undisputed.

53.3. Series C: UBS Financial Services Incorporated of Puerto Rico; Popular Securities, Inc.; Santander Securities Corporation; BBVAPR MSD; Citi; Eurobank MSD; Lehman Brothers; Merrill Lynch & Co.; Oriental Financial Services Corporation; Samuel A. Ramirez & Co., Inc.; Scotia Capital; and Wachovia Capital Markets, LLC. Ex. 45 to Sooknanan UV Decl. at PR-ERS-000005076.

**RESPONSE:** Undisputed.

54. Each of the underwriters for each series of ERS bonds was, at the time, an SEC registered broker-dealer or a federally insured financial institution. Exs. 46–58 to Sooknanan UV Decl.

**RESPONSE:** Undisputed.

55. ERS's Rule 30(b)(6) designee, Luis Collazo, defined a financial institution as "an entity that works with financial instruments, financial transactions, and they are duly registered and authorized to carry out those types of transactions, from giving out loans to different types of financing." Ex. 59 to Sooknanan UV Decl. at 66.

**RESPONSE:** Respondents dispute that Ex. 59 to Sooknanan UV Dec. includes an excerpt that supports this assertion and pursuant to Fed. R. Civ. P. 56 (c)(1)(B), Respondents deny SOF 55. Respondents further dispute that Mr. Collazo's purported definition of a "financial institution" is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

56. ERS's Rule 30(b)(6) designee admitted that the following entities were financial institutions: "Popular Securities. Santander Securities. Banco Bilbao Vizcaya. Citigroup. UBS Financial Services. Merrill Lynch. Oriental Financial Services. Scotiabank." *Id* . at 64, 67.

56.1. ERS's Rule 30(b)(6) designee testified that Lehman Brothers is "no longer in business." *Id.* at 65.

56.2. ERS's Rule 30(b)(6) designee testified that he had not heard of Samuel A. Ramirez & Company or TCM Capital. *Id.*

56.3. ERS's Rule 30(b)(6) designee testified that he was "not be able to be specific about details regarding" Wachovia Capital Markets. *Id.* at 65–66.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(B), Respondents dispute that Ex. 59 to Sooknanan UV Dec. includes excerpts that supports these assertions and therefore denies SOF 56.

57. At the closing of each issuance of ERS Bonds, the underwriters paid ERS the full purchase price for each series of ERS Bonds, net of the expenses of issuance. Exs. 11–13 to Sooknanan UV Decl.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(B), Respondents dispute that Exhibits 11-13 reflect that the underwriters paid ERS the full purchase prices for each series of ERS Bonds, net of the expenses of issuance; the exhibits reflect that UBS transferred the net proceeds of the ERS Bonds issuance to the Fiscal Agent.

58. ERS did not receive any additional funds when the underwriters resold the ERS Bonds to third-party investors. Ex. 2 to Sooknanan UV Decl. at 107.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(B), Respondents dispute that Mr. Doty's testimony supports this assertion. Respondents dispute that SOF 58 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

59. Whether or not the underwriters succeeded in reselling the ERS Bonds, and at what price, had no effect on ERS's receipt of the borrowed funds, the rate of interest ERS was obligated to pay, the ERS Bonds' maturity, or the face amount of ERS's obligations under the bonds. *Id.* at 107–08.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(B), Respondents dispute that Mr. Doty's testimony supports this assertion. Respondents dispute that SOF 59 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

60.    All three series of ERS Bonds are book-entry only certificates. *See* Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003505; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004146; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005054.

**RESPONSE:**    Undisputed.

61.    There is a single paper bond certificate for each maturity of each series of the ERS Bonds, which at the time of the closing of each series of ERS Bonds was deposited with The Depository Trust Company ("DTC") and registered to Cede & Co., DTC's nominee. *See* Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003505; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004146; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005054.

**RESPONSE:**    Undisputed.

62.    All subsequent transactions in the ERS Bonds have been transfers of "ownership interests" in the ERS Bonds, rather than transfers of the ERS Bonds themselves.  Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003505; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004146; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005054.

**RESPONSE:**    Undisputed.

63.    Each series of ERS Bonds was assigned an investment-grade rating by all three nationally-recognized bond-rating firms:

63.1.    Moody's Investors Service rated each series of ERS Bonds Baa3 on the municipal scale and also assigned series A and B a rating of A1 on the "Global Scale," both investment grade ratings.  Exs. 60–62 to Sooknanan UV Decl.

63.2.    Fitch Ratings rated each series of ERS Bonds BBB-, an investment-grade rating.  Exs. 63–65 to Sooknanan UV Decl.

63.3.    Standard & Poor's rated each series of ERS Bonds BBB-, an investment-grade rating.  Exs. 66–68 to Sooknanan UV Decl.

**RESPONSE:**    Undisputed. Respondents dispute that SOF 63 and 63.1-63.3 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

## POST-ISSUANCE EVENTS

64.    From the issuance of the ERS Bonds until June 2016, ERS paid interest on the ERS Bonds without interruption.  Ex. 69 to Sooknanan UV Decl.

**RESPONSE:** Undisputed. Respondents dispute that SOF 64 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

65. ERS continued to pay interest thereafter until May 2017, pursuant to stipulations between ERS and certain holders of ERS Bonds. *Id.*

**RESPONSE:** Undisputed. Respondents dispute that SOF 65 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

66. From the issuance of the ERS Bonds up to today, ERS's audited financial statements have always listed the ERS Bonds as an outstanding liability of ERS. Ex. 70 to Sooknanan UV Decl. at 13; Ex. 71 to Sooknanan UV Decl. at 12; Ex. 72 to Sooknanan UV Decl. at 5; Ex. 73 to Sooknanan UV Decl. at 5; Ex. 74 to Sooknanan UV Decl. at 5; Ex. 75 to Sooknanan UV Decl. at 6; Ex. 76 to Sooknanan UV Decl. at 7; Ex. 77 to Sooknanan UV Decl. at 6; Ex. 78 to Sooknanan UV Decl. at 6; Ex. 79 to Sooknanan UV Decl. at 6 (PR-INSURERS2004-0002754).

**RESPONSE:** Undisputed. Respondents dispute that SOF 66 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

67. In 2010, ERS and the Government Development Bank retained Conway MacKenzie, Inc., a consulting firm, to review, among other things, the issuance of the ERS Bonds. *See* Ex. 80 to Sooknanan UV Decl.

**RESPONSE:** Respondents do not dispute that ERS and the Government Development Bank retained Conway MacKenzie, Inc. in 2010 to "identify, analyze, and summarize key events and decisions that have created the current financial crisis of the ERS" which included a "[r]eview [of] the analyses supporting the issuance and utilizations of funds related to the issuance of the Senior Pension Funding Bonds by ERS." Ex. 80 to Sooknanan Decl. at 2. Respondents dispute

that SOF 67 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

68.     Conway MacKenzie issued a report dated October 2010. *Id.*

**RESPONSE:**     Undisputed. Respondents dispute that SOF 68 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

69.     Conway MacKenzie's report did not describe any doubts about ERS's legal authority to issue the ERS Bonds or the validity of the ERS Bonds that had been issued. *See id.*

**RESPONSE:**     Respondents dispute that the scope of Conway MacKenzie's engagement included any analysis regarding the validity of the issuance of the ERS Bonds. Respondents further dispute that SOF 69 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents object that Exhibit 80 is hearsay if offered for the truth of the matters stated therein and is not admissible evidence that may support a motion for summary judgment.

70.     In 2011, after hearings, the Legislative Assembly enacted Act 116-2011.

**RESPONSE:**     Pursuant to F.R.C.P. 56(c)(1)(A) and Local Rule 56(b) and (e), the Court may disregard SOF 70 as it is not supported by any record citation. Respondents, however, do not disputed that in 2011, the Legislative Assembly enacted Act 116-2011.

70.1.   Act 116 amended the ERS Enabling Act to prohibit future "Bond Issues . . . as part of the direct placement of debts secured with the assets of the System," and to require legislation approved by two-thirds of the Legislative Assembly for any other future direct placements of debts secured by ERS assets.  Act No. 116-2011, § 7(d).

34

**RESPONSE:** Respondents do not dispute that the quoted language appears in Act 116-2011.

70.2. Act 116 also stated that the issuance of the ERS Bonds had "encumber[ed] employer contributions . . . for up to fifty years" and had "significantly contributed to the financial crisis of" ERS. *Id.*

**RESPONSE:** Respondents do not dispute that the quoted language appears in Act 116-2011.

70.3. The Statement of Motives for Act 116 includes the statement: "The Bond Issue was illegally made by the System's Administration even though such transaction was submitted to the Legislative Assembly for approval and rejected by the House of Representatives for deeming it detrimental to the System." Act 116-2011, at 6.

**RESPONSE:** Respondents do not dispute that the quoted language appears in the Statement of Motives for Act 116.

70.4. The issuance of bonds by ERS was never "submitted to the Legislative Assembly for approval."

**RESPONSE:** Undisputed. Respondents dispute that SOF 70.4 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

70.5. Rather, ERS concluded that it had authority to issue the ERS Bonds under the ERS Enabling Act without additional legislation. *Supra* ¶ 37.

**RESPONSE:** Pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56(b) and (e), the Court may disregard SOF 70.5 as it is not supported by any record citation. Respondents dispute that SOF 70.5 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

70.6.   The proposed bond transaction that was submitted to the Legislative Assembly was a different transaction in which the Commonwealth, rather than ERS, would have issued the bonds. *Supra* ¶¶ 34–36.

**RESPONSE:**   Undisputed that the proposed bond transaction that was submitted to the Legislative Assembly was a different type of pension obligation bond transaction in which the Commonwealth, rather than ERS, would have issued the bonds. Respondents dispute that SOF 70.6 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

71.   In February 2012, the ERS Board of Trustees and the ERS Administrator, Hector Mayol Kauffman, received legal advice from outside counsel concerning potential claims for breach of fiduciary duty against former government officials, which advice addressed the subject of the validity or invalidity of the ERS Bonds under the ERS Enabling Act's debt-authorizing language as it existed in 2008 and after it was amended in 2011. Ex. 69 to Sooknanan UV Decl.

**RESPONSE:**   Respondents object to this statement as Exhibit 69 to Sooknanan UV Decl. clearly stipulates that the "Parties agree that [] they will not use for any purpose . . . a certain February 2012 memorandum." Referencing clawed-back privileged information in this filing is a clear violation of the stipulation. Respondents also dispute that SOF 71 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

72.   According to minutes that are (as of the date of this filing) publicly available on ERS's website, at a February 23, 2012 meeting of ERS's Board of Trustees, outside counsel told the Board:  "Attorney Rivera believes that the System has authority to incur debt, pledge its assets and has authority to consider future contributions as part of its assets. Anthony Murray, Esq. added that proof of this is that the Legislative Assembly amended Act 447 to limit these procedures." Exs. 81–82 to Sooknanan UV Decl. at 10 (Feb. 23, 2012 Minutes and Translation); *see also* http://www.transicion.pr.gov/2012/026/juramentacion/01%20Minuta%20Reunion%20Ordinaria%2023%20de%20febrero%20de%202012.pdf (public version of board minutes available as of this filing).

**RESPONSE:** Respondents dispute the quoted language. The certified translation, Ex. 81 to Sooknanan EV Decl., states in full: "As to the allegation regarding future employer contributions being levied, Mr. Rivera believes that the System has the capacity to incur in debt, to pledge its assets and to consider that part of their assets are future contributions. Mr. Anthony Murray added that this is proven by the fact that the Legislative Assembly subsequently amended Law 447 to restrict those procedures." Respondents also dispute that SOF 72 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents object that Exhibits 81-82 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

73.     In October 2012, ERS Administrator Mayol Kaufmann gave an interview to the press in which he stated that he had personally bought "around 50 thousand of those [ERS] bonds, which I still have in my portfolio and I urge everyone who wants to buy them to do so because it is a great investment." Exs. 83–84 to Sooknanan UV Decl.; Ex. 98 to Sooknanan UV Decl. ¶ 8 (Mr. Mayol's declaration agreeing with quotations attributed to him).

**RESPONSE:** Undisputed. Respondents dispute that SOF 73 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds. Respondents object that Exhibits 83-84 are hearsay if offered for the truth of the matters stated therein and are not admissible evidence that may support a motion for summary judgment.

74.     In 2013, the Legislative Assembly again amended the ERS Enabling Act.  Act 3-2013.

**RESPONSE:** Undisputed. Respondents dispute that SOF 74 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with

the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

75.     In amending the ERS Enabling Act in Act 3-2013, the Legislative Assembly stated that ERS "is under the obligation to repay these bonds from the employer contributions it receives." Act 3-2013, at 6.

**RESPONSE:**     Respondents do not dispute that Act 3-2013 contains the quoted language. Respondents dispute that SOF 75 is relevant or material to the legal questions at issue here which is  whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

76.     In 2014, ERS Administrator Francisco del Castillo wrote messages to the Government Development Bank and the Treasury disagreeing with the bond rating agencies' recent downgrades of the ERS Bonds.  Exs. 85–88 to Sooknanan UV Decl.; Ex. 99 to Sooknanan UV Decl. ¶ 7 (declaration from Mr. Del Castillo discussing these emails).

**RESPONSE:**     Undisputed. Respondents dispute that SOF 76 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

77.     At no time before May 2017 did ERS make any determination or contention that the ERS Bonds were ultra vires, illegal, or invalid under the ERS Enabling Act's debt-authorizing language as it existed in 2008 and after it was amended in 2011.  Ex. 69 to Sooknanan UV Decl.

**RESPONSE:**     Undisputed. Respondents dispute that SOF 77 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

78.     At no time before November 2017 did any party commence any legal challenge to the validity of the ERS Bonds.  *Id.*

**RESPONSE:**     Undisputed. Respondents dispute that SOF 78 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with

the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

79.    In its August 2018 Final Investigative Report commissioned by the Oversight Board, Kobre & Kim found no evidence "that any material concerns about [legislative] authorization were raised prior to issuance" of the ERS Bonds.  Ex. 5 to Sooknanan UV Decl., at 206.

**RESPONSE:**    Respondents note that the Sooknanan UV Decl at ¶8 describes Exhibit 5 as "a true and correct copy of the *Final Investigative Report* by The Financial Oversight & Management Board for Puerto Rico Independent Investigator, Kobre & Kim LLP, dated August 20, 2018" when in fact Exhibit 5 is an excerpt from this document.  Further, pursuant to Fed. R. Civ. P. 56(c)(2), Respondents assert that Exhibit 5 is hearsay if offered for the truth of the matters stated therein and cannot support SOF 79. Respondents also dispute that SOF 79 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

80.    Neither ERS's Board of Trustees nor the Retirement Board that succeeded ERS's Board of Trustees in 2017 has ever, even today, made a determination that the ERS Bonds are *ultra vires*, illegal, or invalid.  Ex. 59 to Sooknanan UV Decl. at 145–148.

**RESPONSE:**    Respondents dispute that the cited portion of Mr. Collazo's deposition testimony supports SOF 80 and therefore SOF 80 is disputed. Respondents dispute that SOF 80 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

### THE ERS BONDHOLDERS

81.    Each of the ERS Bondholders purchased its interests in the ERS Bonds in exchange for a market price, either from brokers in the secondary market or from the underwriters as part of the initial offering:

81.1. Andalusian Global Designated Activity Company ("Andalusian") acquired many of its holdings of ERS Bonds from affiliated funds in 2017, and provided those funds ownership interests in exchange for the ERS Bonds. Ex. 89 to Sooknanan UV Decl. at 67–68.

81.2. Andalusian's affiliated funds purchased the ERS Bonds from brokerage firms in the open market. *Id.* at 68–69.

81.3. Andalusian also acquired some ERS Bonds itself directly from brokerage firms in the open market. *Id.*

81.4. Altair Global Credit Opportunities Fund A and Glendon Opportunities Fund, LP purchased their holdings of ERS Bonds in the secondary market. Ex. 90 to Sooknanan UV Decl. at 132–33.

81.5. Mason Capital Management Fund, LP purchased its holdings of ERS Bonds from a broker/dealer in the secondary market. Ex. 91 to Sooknanan UV Decl. at 119.

81.6. The Oaktree Funds[3] purchased their holdings of ERS Bonds from dealers in the secondary market. Ex. 92 to Sooknanan UV Decl. at 151–52 [Mikes Dep.].

81.7. Ocher Rose, LLC ("Ocher Rose") acquired its initial holdings of ERS Bonds from other funds managed by King Street Capital Management, which have ownership interests in Ocher Rose. Ex. 101 to Sooknanan UV Decl. ¶ 2.

81.8. Ocher Rose's affiliated funds from which Ocher Rose acquired its initial holdings of ERS Bonds purchased those ERS Bonds through arms-length, secondary market transactions with broker dealers at market prices. *Id.*

81.9. Ocher Rose also acquired additional ERS Bonds itself directly through arms-length, secondary-market transactions with broker-dealers at market prices. *Id.*

81.10. Crown Managed Accounts, LMA SPC, Oceanea Master Fund Ltd., Pentwater Merger Arbitrage Master Fund, Ltd., and PWQCM Master Fund Ltd. purchased their holdings of ERS Bonds from broker-dealers on the open market. Ex. 93 to Sooknanan UV Decl. at 45–46.

81.11. Redwood Master Fund, Ltd. purchased its holdings of ERS Bonds from broker-dealers on the open market. Ex. 94 to Sooknanan UV Decl. at 68.

81.12. 81.12 S.V. Credit, L.P. ("SV Credit") acquired some of its holdings of ERS Bonds from other funds managed by Centerbridge Partners L.P. ("Centerbridge"), in

---

[3] Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; and Oaktree Value Opportunities Fund Holdings, L.P.

exchange for ownership interests in S.V. Credit.  Ex. 100 to Sooknanan UV Decl. ¶ 2.

81.13.  SV Credit's affiliated funds from which SV Credit acquired ERS Bonds purchased those ERS Bonds from brokerage firms in the open market.  *Id.*

81.14.  SV Credit also acquired additional ERS Bonds itself directly through arms-length, secondary-market transactions with broker-dealers at market prices.  *Id.*

81.15.  The Puerto Rico Funds purchased many of their holdings in ERS Bonds in the public offering from the underwriting syndicate, and acquired additional ERS Bonds in secondary market transactions.  Ex. 95 to Sooknanan UV Decl. at 85–90.

**RESPONSE:**     Undisputed.

82.     Some of the ERS Bondholders have since resold some or all of their holdings of ERS Bonds to still other investors.  Ex. 90 to Sooknanan UV Decl. at 54–58.

**RESPONSE:**     Undisputed. Respondents dispute that SOF 82 is relevant or material to the legal questions at issue here which is whether the ERS Bonds were issued in accordance with the ERS Enabling Act and, if they were not, whether the Bondholders nevertheless can enforce the ERS Bonds.

83.     There is no evidence in the discovery record concerning the identities of the prior holders of ownership interests in the ERS Bonds presently held by the ERS Bondholders, other than the underwriters themselves.

**RESPONSE:**     Pursuant to Fed. R. Civ. P. 56(c)(1)(A) and Local Rule 56(b) and (e), the Court may disregard SOF 83 as it is not supported by any record citation. For the reasons set forth in *Committees' Motion for Summary Judgment on Ultra Vires Issues* (ERS Dkt. 978; Commonwealth Dkt. 14246) and the *Response of Committees to (i) ERS Bondholders' Motion for Partial Summary Judgment on Ultra Vires Issues and Proceedings; and (ii) Motion of the Bank of New York Mellon, As Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* (filed contemporaneously herewith), Respondents also dispute that the underwriters can be considered prior holders of ownership interests in the ERS Bonds.

84.     Andalusian is in the business of investing in or managing money, credit, or capital. *See* Ex. 89 to Sooknanan UV Decl. at 27.

**RESPONSE:**     Undisputed.

85.     Altair Global Credit Opportunities Fund A is in the business of investing in or managing money, credit, or capital.  Ex. 90 to Sooknanan UV Decl. at 20.

**RESPONSE:**     Respondents dispute that this citation supports the assertion but do not dispute that Altair Global Credit Opportunities Fund A is in the business of investing money.

86.     Glendon Opportunities Fund, LP is in the business of investing in or managing money, credit, or capital.  *Id.* at 41.

**RESPONSE:**     Respondents dispute that this citation supports the assertion but do not dispute that Glendon Opportunities Fund, L.P. was formed for the purpose of having a distressed debt platform.

87.     Mason Capital Management Fund, LP is in the business of investing in or managing money, credit, or capital.  Ex. 91 to Sooknanan UV Decl. at 34.

**RESPONSE:**     Respondents dispute that this citation supports the assertion but do not dispute that Mason Capital Management Fund, LP is a hedge fund.

88.     The Oaktree Funds[4] are in the business of investing in or managing money, credit, or capital.  Ex. 92 to Sooknanan UV Decl. at 31.

**RESPONSE:**     Respondents dispute that this citation supports the assertion but do not dispute that Oaktree Capital Management is an investment advisor that advises the funds its forms on investment decisions.

89.     Ocher Rose, LLC is in the business of investing in or managing money, credit, or capital.  Ex. 96 to Sooknanan UV Decl. at 21–27.

---

[4] Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.; Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; and Oaktree Value Opportunities Fund Holdings, L.P.

**RESPONSE:** Respondents dispute this citation supports the assertion but do not dispute that Ocher Rose LLC is a special purpose entity formed for the sole purpose of holding the ERS Bonds.

90.     Crown Managed Accounts, LMA SPC, Oceanea Master Fund Ltd., Pentwater Merger Arbitrage Master Fund, Ltd., and PWQCM Master Fund Ltd. are in the business of investing in or managing money, credit, or capital.  Ex. 93 to Sooknanan UV Decl. at 27–33.

**RESPONSE:** Respondents dispute that PWQCM Master Fund Ltd. is an entity or relevant party to this matter. Respondents dispute that Oceanea Master Fund Ltd. is an entity or relevant party to this matter. Respondents that this citation supports the assertion but do not dispute that Pentwater Capital Management LP is the investment fund manager for Crown Managed Accounts, LMA SPC, Oceana Master Fund Ltd., Pentwater Merger Arbitrage Master Fund, Ltd., and PWCM Master Fund Ltd.

91.     Redwood Master Fund, Ltd. is in the business of investing in or managing money, credit, or capital. Ex. 94 to Sooknanan UV Decl. at 17–20.

**RESPONSE:** Respondents dispute that this citation supports the assertion but do not dispute that Redwood Capital Management is an investment firm that manages funds including Redwood Master Fund, Ltd.

92.     SV Credit, L.P. is in the business of investing in or managing money, credit, or capital.  Ex. 97 to Sooknanan UV Decl. at 19–20.

**RESPONSE:** Undisputed.

93.     The Puerto Rico Funds are in the business of investing in or managing money, credit, or capital.  Ex. 95 to Sooknanan UV Decl. at 65–67.

**RESPONSE:** Undisputed.


Dated: October 28, 2020                    */s/ Robert D. Gordon*
San Juan, Puerto Rico

JENNER & BLOCK LLP
Robert Gordon (admitted *pro hac vice*)
Richard Levin (admitted *pro hac vice*)
919 Third Ave
New York, NY 10022-3908
rgordon@jenner.com
rlevin@jenner.com
212-891-1600 (telephone)
212-891-1699 (facsimile)

Catherine Steege (admitted *pro hac vice*)
Melissa Root (admitted *pro hac vice*)
Landon Raiford (admitted *pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
csteege@jenner.com
mroot@jenner.com
lraiford@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

- and –


*/s/ A.J. Bennzar-Zequeria*
BENNAZAR, GARCÍA & MILIÁN, C.S.P
A.J. Bennazar-Zequeira
Héctor M. Mayol Kauffmann
Francisco del Castillo Orozco
Edificio Union Plaza,
1701 Avenida Ponce de León #416
Hato Rey, San Juan
Puerto Rico 00918
ajb@bennazar.org
hector.mayol@bennazar.com
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for the Official Committee of
Retired Employees of Puerto Rico*

- and –

*/s/ Luc A. Despins*

PAUL HASTINGS LLP

Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*[5]

- and –

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*[6]

- and –

*/s/ John Arrastia*
GENOVESE JOBLOVE & BATTISTA, P.A.
John Arrastia, Esq. (*Pro Hac Vice*)

---

[5] As it relates to the Committee's Omnibus Claims Objection at Commonwealth Dkt. 5580.

[6] As it relates to the Committee's omnibus claims objections at Commonwealth Dkts. 5580 and 5586 and Adversary Proceeding Nos. 19-356, 19-357, and 19-361.

John H. Genovese, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jarrastia@gjb-law.com
jgenovese@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee
of Unsecured Creditors*[7]

- and –

*/s/ Sunni Beville*
Sunni P. Beville, Esq. (*pro hac vice*)
Tristan G. Axelrod, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and
Management Board, acting through the
members of the Special Claims Committee*

- and –

*/s/ Kenneth Suria*
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and
Management Board, acting through the members
of the Special Claims Committee*

---

[7] As it relates to Adversary Proceeding Nos. 19-356, 19-357, 19-359, and 19-361.