# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| | ) | Case No. 17-BK-03283 (LTS) |
| as representative of | ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| Debtors.[1] | ) | |
| | ) | |
| | ) | |
| In re: | ) | PROMESA |
| | ) | Title III |
| THE FINANCIAL OVERSIGHT AND | ) | |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | Case No. 17-BK-03566 (LTS) |
| | ) | |
| as representative of | ) | |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | Adv. Proc. No. 19-00356 (LTS) |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

THE SPECIAL CLAIMS COMMITTEE OF THE )
FINANCIAL OVERSIGHT AND MANAGEMENT )
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )

  and )

THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )

  as co-trustees of )

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )

  Plaintiff, )

v. )

DEFENDANT 1M, *et al.*, )

  Defendants. )

_____ )

THE SPECIAL CLAIMS COMMITTEE OF THE )  Adv. Proc. No. 19-00357 (LTS)
FINANCIAL OVERSIGHT AND MANAGEMENT )
BOARD FOR PUERTO RICO, ACTING BY AND )
THROUGH ITS MEMBERS, )

  and )

THE OFFICIAL COMMITTEE OF UNSECURED )
CREDITORS OF ALL TITLE III DEBTORS )
(OTHER THAN COFINA), )

  as co-trustees of )

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )

  Plaintiff, )

v. )

|  |  |  |
|---|---|---|
| STOEVER GLASS & CO., *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | Adv. Proc. No. 19-00359 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE | ) | |
| FINANCIAL OVERSIGHT AND MANAGEMENT | ) | |
| BOARD FOR PUERTO RICO, ACTING BY AND | ) | |
| THROUGH ITS MEMBERS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF ALL TITLE III DEBTORS | ) | |
| (OTHER THAN COFINA), | ) | |
| | ) | |
| as co-trustees of | ) | |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF PUERTO RICO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEFENDANT 1H-78H, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| THE SPECIAL CLAIMS COMMITTEE OF THE | ) | Adv. Proc. No. 19-00361 (LTS) |
| FINANCIAL OVERSIGHT AND MANAGEMENT | ) | |
| BOARD FOR PUERTO RICO, ACTING BY AND | ) | |
| THROUGH ITS MEMBERS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF ALL TITLE III DEBTORS | ) | |
| (OTHER THAN COFINA), | ) | |
| | ) | |
| | ) | |

as co-trustees of )
)
)
THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO, )
)
     Plaintiff, )
)
v. )
)
DEFENDANT 1G-50G, *et al.*, )
)
     Defendants. )

----------------------------------------------------------------------- X

**ERS BONDHOLDERS' RULE 56(b) STATEMENT OF UNDISPUTED
FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ON *ULTRA VIRES* ISSUES AND PROCEEDINGS**

## NATURE OF THE LITIGATION

1.      The Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") is a statutory trust established by the Commonwealth of Puerto Rico (the "Commonwealth").  ECF No. 19 in Case No. 19-bk-00356, ¶ 16.

2.      The ERS Bondholders consist of two groups of bondholders who hold or previously held beneficial interests in the bonds issued by ERS (the "ERS Bonds"), as described below.

2.1      The first group, represented by Jones Day, consists of:  Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and S.V. Credit, L.P.

2.2      The second group, represented by White & Case, consists of: Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GNMA & U.S.

Government Target Maturity Fund, Inc.; Puerto Rico Mortgage-Backed & U.S.
Government Securities Fund, Inc.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free
Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and
UBS IRA Select Growth & Income Puerto Rico Fund (collectively, the "Puerto
Rico Funds").

3.     The ERS Bondholders offer this Statement of Undisputed Facts in support of their
Motion for Summary Judgment On *Ultra Vires* Issues and Proceedings (the "*Ultra Vires* Motion").
The *Ultra Vires* Motion relates to two sets of proceedings currently pending in ERS's and the
Commonwealth's Title III cases:

3.1    Those portions of claim objections by the Unsecured Creditors Committee (the
"Creditors' Committee"), ECF No. 5580 in Case No. 17-bk-03283, and the Official
Committee of Retired Employees of the Commonwealth of Puerto Rico (the
"Retiree Committee" and, together with the UCC, the "Committees"), ECF No.
6482 in Case No. 17-bk-03283, contending that the ERS Bonds are invalid and
unenforceable because ERS lacked statutory authority to issue them, together with
the joinder of the Financial Oversight and Management Board (the "Oversight
Board," and, together with the Creditors Committee and the Retiree Committee, the
"Committees and Government Parties") in those claim objections, *see* ECF No. 757
in Case No. 17-bk-03566, ¶ 11. (Collectively, the "Claim Objections"); and

3.2    Adversary proceedings captioned 19-ap-356, 19-ap-357, 19-ap-359, and 19-ap-361
(collectively, the "Clawback Actions").

4.     Through the Claim Objections, the Committees and Government Parties seek to
disallow all of the ERS Bondholders' claims against ERS and the Commonwealth on the ground

that the ERS Bonds are invalid and *ultra vires* because ERS lacked the statutory authority to issue

them.  *See* ECF No. 5580 in Case No. 17-bk-03283; ECF No. 6482 in Case No. 17-bk-03283; ECF

No. 757 in Case No. 17-bk-03566, ¶ 11.

5.    Through the Clawback Actions, the Committees and Government Parties seek:

5.1    a declaratory judgment that the ERS Bonds were issued *ultra vires* and are null and

void, Clawback Actions Count I;

5.2    the return to ERS of payments of interest paid by ERS to the ERS Bondholders on

the ground that they were unlawful disbursements and fraudulent transfers,

Clawback Actions Counts II to V; and

5.3    disallowance of the ERS Bondholders' claims, Clawback Actions Count VI.

*See* ECF No. 19 in Case No. 19-bk-356; ECF No. 45 in Case No. 19-bk-357; ECF No. 1 in 19-bk-

359; ECF No. 14 in 19-bk-361.

6.    The ERS Bondholders asserted counterclaims in the Clawback Actions seeking:

6.1    a declaratory judgment that the ERS Bonds were validly issued, Clawback Actions

Counterclaim Count I;

6.2    a declaratory judgment that the ERS Bonds are enforceable under § 8-202(b)(2) of

the Uniform Commercial Code, 19 L.P.R.A. § 1752(b)(2), Clawback Actions

Counterclaim Count II;

6.3    a declaratory judgment that payments on the ERS Bonds were payments of a valid

liability, Clawback Actions Counterclaim Count III; and

6.4    in the alternative, claims for unjust enrichment and negligent misrepresentation

against ERS, Clawback Actions Counterclaim Counts IV and V.

*See* ECF No. 41 in Case No. 19-bk-356; ECF No. 41 in Case No. 19-bk-357; ECF No. 21 in Case No. 19-bk-359; ECF No. 30 in Case No. 19-bk-361.

## ERS

7.  ERS is a trust established by Act No. 447 of May 15, 1951, of the Legislature of the Commonwealth (the "ERS Enabling Act") that is separate and apart from the Commonwealth government and its other instrumentalities. Clawback Action Complaints ¶ 16; Clawback Action Answers ¶ 16.

8.  ERS is a "system" created by the Commonwealth to administer the payment of pensions and the delivery of other benefits for retired employees of participating employers. Clawback Action Complaints ¶ 16; Clawback Action Answers ¶ 16.

### THE ERS ENABLING ACT'S DEBT-AUTHORIZING PROVISION

9.  In 1988, the Legislative Assembly amended the ERS Enabling Act to provide, in Spanish:

> Autorización para incurrir en deudas.—La Junta de Síndicos podrá autorizar al Administrador para tomar prestado de cualquier institución financiera, del Gobierno del Estado Libre Asociado de Puerto Rico o del gobierno federal de los Estados Unidos de América, o mediante colocaciones directas de deuda, garantizando dicha deuda por los activos del Sistema. . . .

3 L.P.R.A. § 779(d) (2008) (Spanish).

10.  In 2008, Section 779(d) remained as it had been enacted in 1988. *Id.*

11.  The official English translation of Section 779(d) provided in 2008:

> Authorization to Incur Debts: The Board of Trustees may authorize the Administrator to seek a loan from any financial institution of the Government of the Commonwealth of Puerto Rico or the Federal Government of the United States of America or through the direct placement of debts, securing said debt with the assets of the System. . . .

3 L.P.R.A. § 779(d) (2008) (English).

12. The official English translation of Section 779(d) is inaccurate. Ex. 1 to Decl. of Dr. Laura Gonzalez, at 6.

13. The official English translation of Section 779(d) omits commas that are present in the original Spanish. *Compare* 3 L.P.R.A. § 779(d) (2008) (Spanish) *with* 3 L.P.R.A. § 779(d) (English); Ex. 1 to Gonzalez Decl., at 8; *see also* Retiree Committee Claim Objection ¶ 10 n. 3.

14. The official English translation wrongly translates two instances of "del" as "of the" when they should be translated as "from the." Ex A. to Gonzalez Decl., at 8–9; *see also* Retiree Committee Claim Objection ¶ 10 n. 3.

14.1 The word "del" may mean either "of the" or "from the," depending on context. "Del," WordReference.com; https://www.wordreference.com/es/en/translation.asp?spen=del; *see also* Ex A. to Gonzalez Decl., at 8.

14.2 Context and parallel structure show that the first and third instances of "del" in Section 779(d) should be translated as "from the" rather than "of the." Ex A. to Gonzalez Decl., at 8–9.

15. The official English translation wrongly translates "tomar prestado" as "seek a loan" when it should be translated as "borrow." Ex A. to Gonzalez Decl., at 6–8.

15.1 "Tomar prestado" is a more general phrase than "seek a loan" and refers to borrowing generally, rather than to loans specifically. "Tomar Prestado," WordReference.com, https://wordreference.com/es/en/translation.asp?spen=tomar%20prestado (translating the phrase as "borrow" and giving, as an example of usage, "Juan borrowed his parents' car"); "Tomar Prestado," Cambridge Spanish-English Dictionary, https://dictionary.cambridge.org/us/dictionary/spanish-english/tomar-prestado (translating the phrase as "borrow" and

providing that it means "to take (something, often money) temporarily with the intention of returning it"); *see also* Ex A. to Gonzalez Decl., at 6–8.

16.     Correcting these three errors, the proper English translation of Section 779(d) as it existed in 2008 was:

> Authorization to incur debts. - The Board of Trustees may authorize the Administrator to borrow from any financial institution, from the Government of the Commonwealth of Puerto Rico or from the Federal Government of the United States of America, or through direct debt placements, securing said debt with the assets of the System.

Ex. 1 to Gonzalez Decl., at 6.

17.     Section 779(d) does not restrict the purposes for which ERS may borrow funds.

18.     In 2007, while ERS was considering the issuance of the ERS Bonds, the Legislative Assembly enacted Act 35-2007.

19.     Act 35-2007 increased pension benefits. Act 35-2007, § 5.

20.     Act 35-2007 provided that the "funds needed to cover the cost increase in the minimum amount of the pensions of the pensioners of the Central Government shall proceed from the resources obtained through the issue of bonds of the Employees of the Government and the Judicature Retirement Systems Administration."  Act 35-2007, § 5.

### THE MUNICIPAL FINANCE MARKET

21.     The issuance of municipal bonds is a form of borrowing.  Ex. 1 to Declaration of Sparkle L. Sooknanan in Support of ERS Bondholders' Motion For Partial Summary Judgment on *Ultra Vires* Issues and Proceedings ("Sooknanan UV Decl.") at 149 ("Municipal securities issuers . . . borrow money in the municipal securities market" when they issue bonds); Ex. 1 to Declaration of W. Bartley Hildreth ¶ 174.

22.     Issuers of municipal securities borrow money by selling bonds. Ex. 1 to Sooknanan UV Decl. at 149; Ex. 2 to Sooknanan UV Decl. at 111; Ex. 1 to Declaration of W. Bartley Hildreth ¶ 174 ("ERS borrowed directly from the underwriters" when it issued the ERS Bonds).

23.     A municipal bond is a loan. Ex. 1 to Sooknanan UV Decl. at 1; Ex. 2 to Sooknanan UV Decl. at 111 (municipal bonds "are loans from the investing public. . . . The borrower is the governmental issuer."); Ex. 3 to Sooknanan UV Decl. at 163:5–6 ("A bond is a loan.").

24.     In a fully underwritten bond offering, the issuer of municipal bonds sells the bonds directly to the underwriter or syndicate of underwriters by means of a purchase and sale agreement. Ex. 4 to Sooknanan UV Decl. at 20.

25.     "The only legal relationship between the issuer and an underwriter is created by a Bond Purchase Agreement . . . wherein the issuer agrees to sell the bonds to the underwriter and the underwriter agrees to purchase the bonds from the issuer." *Id.* at 9, 21.

26.     In his deposition testimony, the Committees' and Government Parties' expert offered the opinion, with which the Bondholders disagree, that the lender to a municipal bond issuer is whichever "public investor" owns the bonds at a given time. Ex. 2 to Sooknanan UV Decl. at 114–15.

27.     In his deposition testimony, the Committees' and Government Parties' expert offered the opinion, with which the Bondholders disagree, that "if Alice owns the bond . . . Alice is the lender," "if Alice sells the bond to Bob, then Bob becomes the lender," and "if Bob sells to Carol, then Carol becomes the lender," so that "the identity of the lender can change over the life of the bond issue." *Id.*

27.1     In his report, the Committees' and Government Parties' expert offered the opinion, with which the Bondholders disagree, that "[a]n issuer does not 'borrow' or take a

11

'loan' from an underwriter, but from the public investors who buy the bonds from the underwriters." Ex. 4 to Sooknanan UV Decl. at 13.

28.     Municipal debt markets distinguish between direct borrowing, in which a borrower issues debt securities itself, and indirect or conduit borrowing, in which a borrower borrows money via a separate, conduit entity which then issues debt securities. Ex. 1 to Hildreth Decl. ¶ 72.

29.     According to the Committees and Government Parties' expert, it is bond counsel's obligation "to deliver an opinion stating that the bonds have been validly issued," and investors' analysis of the legality of bonds they are considering purchasing "centers on the bond counsel's opinion." Ex. 2 to Sooknanan UV Decl. at 165, 174.

30.     The Committee and Government Parties' expert intended his book, *Bloomberg Visual Guide to Municipal Bonds*, to be "a guide to investors in municipal securities." *Id.* at 173.

30.1     Nowhere in his book does Mr. Doty state that investors in municipal securities should examine enabling legislation for themselves before purchasing municipal securities. *See* Ex. 1 to Sooknanan UV Decl.

30.2     The chapter of Mr. Doty's book entitled "Considerations When Buying" says nothing about enabling legislation at all. *See id.* at 91–108.

31.     As the Bondholders' expert explained:

> Making either the purchasers of securities entitlements or DTC responsible for reviewing legislation or conducting other diligence in connection with bond issues or secondary market purchases could impede issuer access to financial markets, with a resulting decrease in the efficiency of government operations. Imposing such risks could reduce demand, increase interest rates paid by issuers, limit negotiability of municipal bonds, and impair bond values.

Ex. 1 to Hildreth Decl. ¶ 57.

32.     As the Bondholders' expert explained:

> A reasonable investor cannot be expected to uncover material facts
> that vary from what the professionals involved with the transaction
> state in market-oriented certifications.

*Id.* ¶ 58.

## THE ISSUANCE OF THE ERS BONDS

33.    Beginning in the early 2000s, the Commonwealth considered issuing debt to raise
additional funds for ERS.  32– to Sooknanan UV Decl. at 204.

34.    Under an initial proposal discussed between 2004 and 2006, the Commonwealth
itself would have issued $2 billion in bonds payable from the Commonwealth's General Fund, and
transferred the net proceeds from that issuance to ERS.  *Id.*

35.    That initial proposal discussed between 2004 and 2006, like other issuances of
general obligation bonds by the Commonwealth itself, required approval by the Legislative
Assembly.  *Id.*

36.    The necessary legislation to issue bonds from the Commonwealth's General Fund
and transfer the proceeds to ERS was introduced but was never approved.  *Id.*

37.    Beginning in 2006 and 2007, ERS considered an alternative proposal under which
ERS itself, rather than the Commonwealth, would issue bonds and be the direct obligor on the
bonds.  *Id.* at 204–05.

37.1    In March 2007, ERS received a legal opinion from the Puerto Rico law firm of
Fiddler, Gonzalez & Rodriguez, P.S.C. ("Fiddler")  concerning "whether the
Employees Retirement System of the Government of the Commonwealth of Puerto
Rico (the 'System') may issue bonds secured by a pledge of employer contributions
payable to the System pursuant to [the ERS Enabling Act]."  Sooknanan UV Decl.
Ex. 6 (the "March 2007 Legal Opinion").

13

37.2  The March 2007 Legal Opinion from Fiddler concluded: "The System is authorized pursuant to Section 4-105(d) of Act 447 [codified at 3 L.P.R.A. § 779(d)] to incur debt secured by the assets of the System, and the Bonds are such a debt." *Id.*

37.3  On August 16, 2007, the newspaper Caribbean Business published an article about the upcoming issuances of ERS Bonds entitled, "Can the ERS issue $7 billion in bonds without legislative approval?" Ex. 7 to Sooknanan UV Decl.

37.4  The Caribbean Business article quoted from and discussed the March 2007 Legal Opinion in explaining why no additional legislative approval was needed for ERS to issue the ERS Bonds. *Id.*

37.5  There is no evidence that the issuance of the ERS Bonds by ERS was ever submitted to the Legislative Assembly for approval.

38.  ERS issued three series of bonds (the "ERS Bonds") in 2008:

38.1  ERS issued the "Series A" Bonds totaling $1,588,810,799.60 principal amount on January 31, 2008. *See* Ex. 8 to Sooknanan UV Decl.

38.2  ERS issued the "Series B" Bonds totaling $1,058,634,613.05 principal amount on June 2, 2008. *See* Ex. 9 to Sooknanan UV Decl.

38.3  ERS issued the "Series C" Bonds totaling $300,202,930 principal amount on June 30, 2008. *See* Ex. 10 to Sooknanan UV Decl.

39.  ERS received billions of dollars in net proceeds from the issuance of the ERS Bonds: $1,426,002,361.71 from Series A; $1,017,315,428.51 from Series B; and $285,037,106.65 from Series C. Exs. 11–13 to Sooknanan UV Decl.

39.1 The proceeds from the ERS Bond issuance were used to increase the funds available to pay benefits to retirees or invested to reduce ERS's unfunded accrued actuarial liabilities for such benefits. Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003232; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000003962; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000004857.

40. Each series of ERS Bonds was issued pursuant to an Official Statement made available to the underwriters who purchased the bonds and to public investors. *See* Exs. 8–10 to Sooknanan UV Decl.

41. None of the Official Statements for the ERS Bonds disclosed any risk or possibility that the ERS Bonds were not validly issued. *See id.*

42. The ERS Board of Trustees approved the issuance of the ERS Bonds by means of a Bond Resolution enacted on January 24, 2008, along with supplemental bond resolutions enacted on January 29, 2008; May 27, 2008; and June 26, 2008. *See* Exs. 14–17 to Sooknanan UV Decl. The Bond Resolution recited that ERS had the power "to incur debt secured by the assets of the System." Ex. 14 to Sooknanan UV Decl., at PR-ERS-000003439.

43. The Bond Resolution stated that it was "adopted pursuant to the provisions of the [ERS Enabling] Act." *Id.*. 12

44. The Board of Directors of the Government Development Bank approved the issuance of the ERS Bonds. Ex. 18 to Sooknanan UV Decl.

45. Either the Board of Directors of the Government Development Bank or its Executive Committee further specifically approved the issuance of each of the three series of ERS Bonds. *See* Ex. 19–21 to Sooknanan UV Decl.

46.     In connection with the issuance of each series of ERS Bonds, ERS obtained

multiple legal opinions confirming the validity of the Bond Resolution, the validity of the ERS

Bonds, and ERS's full authority to issue the ERS Bonds:

46.1    The Official Statement for each series of ERS Bonds contained a "Form of Opinion

of Bond Counsel" from Fiddler. Ex. 8 to Sooknanan UV Decl. at PR-ERS-

000003502; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004142; Ex. 10 to

Sooknanan UV Decl. at PR-ERS-000005050.

46.2    The Form Opinion of Bond Counsel stated that Fiddler had "examined the

Constitution and the laws of the Commonwealth of Puerto Rico . . . including [the

ERS Enabling Act] as amended and supplemented," and based on that examination

opined that "[t]he Bonds have been duly authorized by the System and constitute

legal valid and binding limited obligations of the System."  Ex. 8 to Sooknanan UV

Decl. at PR-ERS-000003503; Ex. 9 to Sooknanan UV Decl. at PR-ERS-

000004143; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005051.

46.3    In connection with each series of the ERS Bonds, Fiddler issued a legal opinion

addressed to ERS matching the "Form of Opinion of Bond Counsel." Exs. 22–24

to Sooknanan UV Decl.

46.4    That legal opinion stated that Fiddler had "examined the Constitution and the laws

of the Commonwealth of Puerto Rico . . . including [the ERS Enabling Act] as

amended and supplemented" and opined based on that examination that "[t]he

Bonds have been duly authorized by the System and constitute legal valid and

binding limited obligations of the System."  *Id.*

16

46.5    In connection with each series of the ERS Bonds, Fiddler issued a second legal opinion, addressed to ERS and to the Fiscal Agent. Exs. 25–27 to Sooknanan UV Decl.

46.6    Fiddler's second legal opinion stated that ERS "has the right and power under [the ERS Enabling Act] to adopt the [Bond] Resolution and the Resolution . . . is valid and binding upon the System and enforceable in accordance with its terms, and no other authorization for the Resolution is required," and that "the Bonds are valid and binding special limited non-recourse obligations of the System as provided in the Resolution enforceable in accordance with their terms and the terms of the Resolution . . . and such Bonds have been duly and validly authorized executed and issued in accordance with law including the Act and in accordance with the Resolution." *Id.*

46.7    In connection with each series of ERS Bonds, Fiddler issued a third legal opinion, addressed to the members of the underwriting syndicate for each series of ERS Bonds. Exs. 28–30 to Sooknanan UV Decl.

46.8    Fiddler's third legal opinion stated that Fiddler had "examined and [was] familiar with" the ERS Enabling Act and that "[t]he [Bond] Resolution and the Authorizing Resolution have been duly adopted by the System and are in full force and effect and constitute the legal valid and binding agreements of the System enforceable against the System in accordance with their respective terms." *Id.*

46.9    In connection with each series of ERS Bonds, ERS's General Counsel issued a legal opinion. Exs. 31–33 to Sooknanan UV Decl.

46.10   ERS's General Counsel's opinion stated that "[t]he Bonds have been duly and validly authorized and issued," and "will constitute legally valid and binding obligations of the System," that the Bond Resolution was a "legal, valid, and binding agreement[] of" ERS, and that "[a]ll legislation . . . necessary to fulfill in all material respects the terms and conditions of the Bonds and to carry out the transactions contemplated by the" bond issuance is "in full force and effect . . . and no further legislation . . . is required for such purposes." *Id.*

46.11   In connection with each series of ERS Bonds, the Commonwealth's Secretary of Justice issued a legal opinion. Exs. 34–36 to Sooknanan UV Decl.

46.12   The Commonwealth's Secretary of Justice's legal opinion stated that "All legislation, authorizations, consents and approvals necessary to fulfill in all material respects the terms and conditions and to carry out the transactions contemplated by the Letter of Representations and the [Master Continuing Disclosure Agreement] are in full force and effect or have been obtained as applicable and no further legislation authorization consent or approval is required for such purposes." *Id.*

46.13   There is no evidence that any of these opinions has ever been withdrawn.

47.   Before the issuance of each series of ERS Bonds, ERS and the syndicate of underwriters obtained a Letter of Representations from the Commonwealth, signed by the Acting Secretary of the Treasury.  Exs. 37–39 to Sooknanan UV Decl.

47.1   Each Letter of Representations provided that it was made "in order to induce" ERS and the underwriters "to enter into the Purchase Contract [for the purchase by the underwriters of each series of ERS Bonds], the terms of which are hereby approved, and to make the offering and sale of the Bonds therein contemplated." *Id.*

47.2    Each Letter of Representations further provided that there was not, "to the knowledge of the Commonwealth . . . any basis" for any "action suit proceeding inquiry or investigation at law or in equity before or by any court government agency or public board or body" "wherein an unfavorable decision ruling or finding would materially adversely affect the validity or enforceability of Act 447, the Bonds, the Bond Resolution, the [Master Continuing Disclosure Agreement], this Letter of Representations, the Purchase Contract, or any of them." *Id.*

47.3    Each Letter of Representations stated that it was "made solely for the benefit of the signatories hereto (including the successors or assigns of the Underwriters)." *Id.*

48.    Before the issuance of each series of ERS Bonds, ERS and the Commonwealth entered a Master Continuing Disclosure Agreement. Exs. 40–42 to Sooknanan UV Decl.

49.    The Master Continuing Disclosure Agreement specified that it was "executed and delivered . . . in connection with the issuance of" each series of ERS Bonds. *Id.*

50.    ERS sold the entirety of each series of ERS Bonds directly to a syndicate of underwriters via a purchase contract. Exs. 43–45 to Sooknanan UV Decl.

51.    Each purchase contract provided that "the Underwriters jointly and severally hereby agree to purchase from the System and the System hereby agrees to sell and deliver to the Underwriters all (but not less than all) of the" initial principal amount of each series of ERS Bonds. *Id.*

52.    Each purchase contract provided for the underwriters to pay a fixed purchase price for the entire series of ERS Bonds. *Id.*

53.    The underwriters for each series of ERS Bonds were:

53.1 Series A:  UBS Financial Services Incorporated of Puerto Rico; Popular Securities, Inc.; Santander Securities Corporation; Banco Bilbao Vizcaya Argentaria Puerto Rico; Citigroup Global Markets Inc.; Lehman Brothers, Inc.; Merrill, Lynch, Pierce, Fenner & Smith Incorporated; Oriental Financial Services, Inc.; Samuel Ramírez & Co., Inc.; Scotiabank of Puerto Rico; TCM Capital, Inc.; and Wachovia Capital Markets, LLC.  Ex. 43 to Sooknanan UV Decl. at PR-ERS-000003525.

53.2 Series B:  UBS Financial Services Incorporated of Puerto Rico; Popular Securities, Inc.; and Santander Securities Corporation.  Ex. 44 to Sooknanan UV Decl. at PR-ERS-000004181.

53.3 Series C:  UBS Financial Services Incorporated of Puerto Rico; Popular Securities, Inc.; Santander Securities Corporation; BBVAPR MSD; Citi; Eurobank MSD; Lehman Brothers; Merrill Lynch & Co.; Oriental Financial Services Corporation; Samuel A. Ramírez & Co., Inc.; Scotia Capital; and Wachovia Capital Markets, LLC.  Ex. 45 to Sooknanan UV Decl. at PR-ERS-000005076.

54. Each of the underwriters for each series of ERS bonds was, at the time, an SEC registered broker-dealer or a federally insured financial institution.  Exs. 46–58 to Sooknanan UV Decl.

55. ERS's Rule 30(b)(6) designee, Luis Collazo, defined a financial institution as "an entity that works with financial instruments, financial transactions, and they are duly registered and authorized to carry out those types of transactions, from giving out loans to different types of financing."  Ex. 59 to Sooknanan UV Decl. at 66.

56.     ERS's Rule 30(b)(6) designee admitted that the following entities were financial institutions:  "Popular Securities. Santander Securities. Banco Bilbao Vizcaya. Citigroup. UBS Financial Services. Merrill Lynch. Oriental Financial Services. Scotiabank."  *Id.* at 64, 67.

    56.1     ERS's Rule 30(b)(6) designee testified that Lehman Brothers is "no longer in business."  *Id.* at 65.

    56.2     ERS's Rule 30(b)(6) designee testified that he had not heard of Samuel A. Ramírez & Company or TCM Capital.  *Id.*

    56.3     ERS's Rule 30(b)(6) designee testified that he was "not be able to be specific about details regarding" Wachovia Capital Markets.  *Id.* at 65–66.

57.     At the closing of each issuance of ERS Bonds, the underwriters paid ERS the full purchase price for each series of ERS Bonds, net of the expenses of issuance.  Exs. 11–13 to Sooknanan UV Decl.

58.     ERS did not receive any additional funds when the underwriters resold the ERS Bonds to third-party investors.  Ex. 2 to Sooknanan UV Decl. at 107.

59.     Whether or not the underwriters succeeded in reselling the ERS Bonds, and at what price, had no effect on ERS's receipt of the borrowed funds, the rate of interest ERS was obligated to pay, the ERS Bonds' maturity, or the face amount of ERS's obligations under the bonds.  *Id.* at 107–08.

60.     All three series of ERS Bonds are book-entry only certificates.  *See* Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003505; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004146; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005054.

61.     There is a single paper bond certificate for each maturity of each series of the ERS Bonds, which at the time of the closing of each series of ERS Bonds was deposited with The

Depository Trust Company ("DTC") and registered to Cede & Co., DTC's nominee. *See* Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003505; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004146; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005054.

62.     All subsequent transactions in the ERS Bonds have been transfers of "ownership interests" in the ERS Bonds, rather than transfers of the ERS Bonds themselves. Ex. 8 to Sooknanan UV Decl. at PR-ERS-000003505; Ex. 9 to Sooknanan UV Decl. at PR-ERS-000004146; Ex. 10 to Sooknanan UV Decl. at PR-ERS-000005054.

63.     Each series of ERS Bonds was assigned an investment-grade rating by all three nationally-recognized bond-rating firms:

63.1    Moody's Investors Service rated each series of ERS Bonds Baa3 on the municipal scale and also assigned series A and B a rating of A1 on the "Global Scale," both investment grade ratings. Exs. 60–62 to Sooknanan UV Decl.

63.2    FitchRatings rated each series of ERS Bonds BBB-, an investment-grade rating. Exs. 63–65 to Sooknanan UV Decl.

63.3    Standard & Poor's rated each series of ERS Bonds BBB-, an investment-grade rating. Exs. 66–68 to Sooknanan UV Decl.

**POST-ISSUANCE EVENTS**

64.     From the issuance of the ERS Bonds until June 2016, ERS paid interest on the ERS Bonds without interruption. Ex. 69 to Sooknanan UV Decl.

65.     ERS continued to pay interest thereafter until May 2017, pursuant to stipulations between ERS and certain holders of ERS Bonds. *Id.*

66.     From the issuance of the ERS Bonds up to today, ERS's audited financial statements have always listed the ERS Bonds as an outstanding liability of ERS. Ex. 70 to Sooknanan UV Decl. at 13; Ex. 71 to Sooknanan UV Decl. at 12; Ex. 72 to Sooknanan UV Decl.

at 5; Ex. 73 to Sooknanan UV Decl. at 5; Ex. 74 to Sooknanan UV Decl. at 5; Ex. 75 to Sooknanan

UV Decl. at 6; Ex. 76 to Sooknanan UV Decl. at 7; Ex. 77 to Sooknanan UV Decl. at 6; Ex. 78 to

Sooknanan UV Decl. at 6; Ex. 79 to Sooknanan UV Decl. at 6 (PR-INSURERS2004-0002754).

67.     In 2010, ERS and the Government Development Bank retained Conway

MacKenzie, Inc., a consulting firm, to review, among other things, the issuance of the ERS Bonds.

*See* Ex. 80 to Sooknanan UV Decl.

68.     Conway MacKenzie issued a report dated October 2010.  *Id.*

69.     Conway MacKenzie's report did not describe any doubts about ERS's legal

authority to issue the ERS Bonds or the validity of the ERS Bonds that had been issued.  *See id.*

70.     In 2011, after hearings, the Legislative Assembly enacted Act 116-2011.

70.1    Act 116 amended the ERS Enabling Act to prohibit future "Bond Issues . . . as part
        of the direct placement of debts secured with the assets of the System," and to
        require legislation approved by two-thirds of the Legislative Assembly for any
        other future direct placements of debts secured by ERS assets.  Act No. 116-2011,
        § 7(d).

70.2    Act 116 also stated that the issuance of the ERS Bonds had "encumber[ed]
        employer contributions . . . for up to fifty years" and had "significantly contributed
        to the financial crisis of" ERS.  *Id.*

70.3    The Statement of Motives for Act 116 includes the statement: "The Bond Issue was
        illegally made by the System's Administration even though such transaction was
        submitted to the Legislative Assembly for approval and rejected by the House of
        Representatives for deeming it detrimental to the System."  Act 116-2011, at 6.

70.4    The issuance of bonds by ERS was never "submitted to the Legislative Assembly for approval."

70.5    Rather, ERS concluded that it had authority to issue the ERS Bonds under the ERS Enabling Act without additional legislation. *Supra* ¶ 37.

70.6    The proposed bond transaction that was submitted to the Legislative Assembly was a different transaction in which the Commonwealth, rather than ERS, would have issued the bonds. *Supra* ¶¶ 34–36.

71.    In February 2012, the ERS Board of Trustees and the ERS Administrator, Hector Mayol Kauffman, received legal advice from outside counsel concerning potential claims for breach of fiduciary duty against former government officials, which advice addressed the subject of the validity or invalidity of the ERS Bonds under the ERS Enabling Act's debt-authorizing language as it existed in 2008 and after it was amended in 2011. Ex. 69 to Sooknanan UV Decl.

72.    According to minutes that are (as of the date of this filing) publicly available on ERS's website, at a February 23, 2012 meeting of ERS's Board of Trustees, outside counsel told the Board: "Attorney Rivera believes that the System has authority to incur debt, pledge its assets and has authority to consider future contributions as part of its assets. Anthony Murray, Esq. added that proof of this is that the Legislative Assembly amended Act 447 to limit these procedures." Exs. 81–82 to Sooknanan UV Decl. at 10 (Feb. 23, 2012 Minutes and Translation); *see also* http://www.transicion.pr.gov/2012/026/juramentacion/01%20Minuta%20 Reunion%20Ordinaria%2023%20de%20febrero%20de%202012.pdf (public version of board minutes available as of this filing).

73.    In October 2012, ERS Administrator Mayol Kaufmann gave an interview to the press in which he stated that he had personally bought "around 50 thousand of those [ERS] bonds,

which I still have in my portfolio and I urge everyone who wants to buy them to do so because it is a great investment." Exs. 83–84 to Sooknanan UV Decl.; Ex. 98 to Sooknanan UV Decl. ¶ 8 (Mr. Mayol's declaration agreeing with quotations attributed to him).

74.     In 2013, the Legislative Assembly again amended the ERS Enabling Act.  Act 3-2013.

75.     In amending the ERS Enabling Act in Act 3-2013, the Legislative Assembly stated that ERS "is under the obligation to repay these bonds from the employer contributions it receives." Act 3-2013, at 6.

76.     In 2014, ERS Administrator Francisco del Castillo wrote messages to the Government Development Bank and the Treasury disagreeing with the bond rating agencies' recent downgrades of the ERS Bonds.  Exs. 85–88 to Sooknanan UV Decl.; Ex. 99 to Sooknanan UV Decl. ¶ 7 (declaration from Mr. Del Castillo discussing these emails).

77.     At no time before May 2017 did ERS make any determination or contention that the ERS Bonds were ultra vires, illegal, or invalid under the ERS Enabling Act's debt-authorizing language as it existed in 2008 and after it was amended in 2011.  Ex. 69 to Sooknanan UV Decl.

78.     At no time before November 2017 did any party commence any legal challenge to the validity of the ERS Bonds.  *Id.*

79.     In its August 2018 Final Investigative Report commissioned by the Oversight Board, Kobre & Kim found no evidence "that any material concerns about [legislative] authorization were raised prior to issuance" of the ERS Bonds.  Ex. 5 to Sooknanan UV Decl., at 206.

80.     Neither ERS's Board of Trustees nor the Retirement Board that succeeded ERS's Board of Trustees in 2017 has ever, even today, made a determination that the ERS Bonds are *ultra vires*, illegal, or invalid.  Ex. 59 to Sooknanan UV Decl. at 145–148.

## THE ERS BONDHOLDERS

81.     Each of the ERS Bondholders purchased its interests in the ERS Bonds in exchange for a market price, either from brokers in the secondary market or from the underwriters as part of the initial offering:

81.1    Andalusian Global Designated Activity Company ("Andalusian") acquired many of its holdings of ERS Bonds from affiliated funds in 2017, and provided those funds ownership interests in exchange for the ERS Bonds.  Ex. 89 to Sooknanan UV Decl. at 67–68.

81.2    Andalusian's affiliated funds purchased the ERS Bonds from brokerage firms in the open market.  *Id.* at 68–69.

81.3    Andalusian also acquired some ERS Bonds itself directly from brokerage firms in the open market.  *Id.*

81.4    Altair Global Credit Opportunities Fund A and Glendon Opportunities Fund, LP purchased their holdings of ERS Bonds in the secondary market.  Ex. 90 to Sooknanan UV Decl. at 132–33.

81.5    Mason Capital Management Fund, LP purchased its holdings of ERS Bonds from a broker/dealer in the secondary market.  Ex. 91 to Sooknanan UV Decl. at 119.

81.6    The Oaktree Funds[2] purchased their holdings of ERS Bonds from dealers in the secondary market.  Ex. 92 to Sooknanan UV Decl. at 151–52 [Mikes Dep.].

---

[2] Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.; Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.;

81.7    Ocher Rose, LLC ("Ocher Rose") acquired its initial holdings of ERS Bonds from other funds managed by King Street Capital Management, which have ownership interests in Ocher Rose. Ex. 101 to Sooknanan UV Decl. ¶ 2.

81.8    Ocher Rose's affiliated funds from which Ocher Rose acquired its initial holdings of ERS Bonds purchased those ERS Bonds through arms-length, secondary market transactions with broker dealers at market prices. *Id.*

81.9    Ocher Rose also acquired additional ERS Bonds itself directly through arms-length, secondary-market transactions with broker-dealers at market prices. *Id.*

81.10   Crown Managed Accounts, LMA SPC, Oceanea Master Fund Ltd., Pentwater Merger Arbitrage Master Fund, Ltd., and PWQCM Master Fund Ltd. purchased their holdings of ERS Bonds from broker-dealers on the open market. Ex. 93 to Sooknanan UV Decl. at 45–46.

81.11   Redwood Master Fund, Ltd. purchased its holdings of ERS Bonds from broker-dealers on the open market. Ex. 94 to Sooknanan UV Decl. at 68.

81.12   S.V. Credit, L.P. ("SV Credit") acquired some of its holdings of ERS Bonds from other funds managed by Centerbridge Partners L.P. ("Centerbridge"), in exchange for ownership interests in S.V. Credit. Ex. 100 to Sooknanan UV Decl. ¶ 2.

81.13   SV Credit's affiliated funds from which SV Credit acquired ERS Bonds purchased those ERS Bonds from brokerage firms in the open market. *Id.*

81.14   SV Credit also acquired additional ERS Bonds itself directly through arms-length, secondary-market transactions with broker-dealers at market prices. *Id.*

---

Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; and Oaktree Value Opportunities Fund Holdings, L.P.

81.15 The Puerto Rico Funds purchased many of their holdings in ERS Bonds in the
public offering from the underwriting syndicate, and acquired additional ERS
Bonds in secondary market transactions. Ex. 95 to Sooknanan UV Decl. at 85–90.

82. Some of the ERS Bondholders have since resold some or all of their holdings of
ERS Bonds to still other investors. Ex. 90 to Sooknanan UV Decl. at 54–58.

83. There is no evidence in the discovery record concerning the identities of the prior
holders of ownership interests in the ERS Bonds presently held by the ERS Bondholders, other
than the underwriters themselves.

84. Andalusian is in the business of investing in or managing money, credit, or capital.
*See* Ex. 89 to Sooknanan UV Decl. at 27.

85. Altair Global Credit Opportunities Fund A is in the business of investing in or
managing money, credit, or capital. Ex. 90 to Sooknanan UV Decl. at 20.

86. Glendon Opportunities Fund, LP is in the business of investing in or managing
money, credit, or capital. *Id.* at 41.

87. Mason Capital Management Fund, LP is in the business of investing in or managing
money, credit, or capital. Ex. 91 to Sooknanan UV Decl. at 34.

88. The Oaktree Funds[3] are in the business of investing in or managing money, credit,
or capital. Ex. 92 to Sooknanan UV Decl. at 31.

89. Ocher Rose, LLC is in the business of investing in or managing money, credit, or
capital. Ex. 96 to Sooknanan UV Decl. at 21–27.

---

[3] Oaktree-Forrest Multi-Strategy, LLC (Series B); Oaktree Opportunities Fund IX, L.P.;
Oaktree Opportunities Fund IX (Parallel), L.P.; Oaktree Opportunities Fund IX (Parallel 2), L.P.;
Oaktree Huntington Investment Fund II, L.P.; Oaktree Opportunities Fund X, L.P.; Oaktree
Opportunities Fund X (Parallel), L.P.; Oaktree Opportunities Fund X (Parallel 2), L.P.; and
Oaktree Value Opportunities Fund Holdings, L.P.

90.     Crown Managed Accounts, LMA SPC, Oceanea Master Fund Ltd., Pentwater Merger Arbitrage Master Fund, Ltd., and PWQCM Master Fund Ltd. are in the business of investing in or managing money, credit, or capital.  Ex. 93 to Sooknanan UV Decl. at 27–33.

91.     Redwood Master Fund, Ltd. is in the business of investing in or managing money, credit, or capital.  Ex. 94 to Sooknanan UV Decl. at 17–20.

92.     SV Credit, L.P. is in the business of investing in or managing money, credit, or capital.  Ex. 97 to Sooknanan UV Decl. at 19–20.

93.     The Puerto Rico Funds are in the business of investing in or managing money, credit, or capital.  Ex. 95 to Sooknanan UV Decl. at 65–67.

In San Juan, Puerto Rico, today Friday September 11, 2020.

/s/Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

Sarah Podmaniczky McGonigle (*pro hac vice*)
David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel. (617) 449-6943
Fax: (617) 449-6999
smcgonigle@jonesday.com
drfox@jonesday.com

/s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3435
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

*Counsel for Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit, L.P.*

_/s/ Alicia I. Lavergne-Ramírez_

José C. Sánchez-
Castro USDC-PR
213312
jsanchez@sanchezlrv.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanchezlrv.com

SÁNCHEZ/LRV LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

_/s/ Jason N. Zakia_

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
Jesse L. Green (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Defendants Puerto Rico AAA Portfolio Bond Fund, Inc.; Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc.; Puerto Rico Fixed Income Fund, Inc.; Puerto Rico Fixed Income Fund II, Inc.; Puerto Rico Fixed Income Fund III, Inc.; Puerto Rico Fixed Income Fund IV, Inc.; Puerto Rico Fixed Income Fund V, Inc.; Puerto Rico Fixed Income Fund VI, Inc.; Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc.; Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc.; Tax-Free Puerto Rico Fund, Inc.; Tax-Free Puerto Rico Fund II, Inc.; Tax-Free Puerto Rico Target Maturity Fund, Inc.; and UBS IRA Select Growth & Income Puerto Rico Fund*