# Exhibit 9

```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
2
                          MOTION HEARING
3
               BEFORE MAGISTRATE JUDGE JUDITH G. DEIN
4

5

6                              United States District Court
                               1 Courthouse Way, Courtroom 8
7                              Boston, Massachusetts  02210
                               January 15, 2020, 2:36 p.m.
8

9

10

11
     In Re:                                    )
12                                             )
     The Financial Oversight and Management )  3:17-BK-3283 (LTS)
13   Board for Puerto Rico                     )  PROMESA Title III
                                               )
14   as representative of                      )
                                               )  (Jointly Administered)
15   The Commonwealth of Puerto Rico, et al.)
                                               )
16   Debtors                                   )

17
     In Re:                                    )
18                                             )
     The Financial Oversight and Management )  3:17-BK-3566 (LTS)
19   Board for Puerto Rico                     )  PROMESA Title III
                                               )
20   as representative of                      )
                                               )
21   Employees Retirement System of the        )  (Jointly Administered)
     Government of the Commonwealth of         )
22   Puerto Rico                                )
                                               )
23   Debtors.                                  )

24

25
```

```
 1  THE SPECIAL CLAIMS COMMITTEE OF          )
    THE FINANCIAL OVERSIGHT AND              )
 2  MANAGEMENT BOARD FOR PUERTO RICO,        ) 3:19-AP-356 (LTS)
    ACTING BY AND THROUGH ITS MEMBERS,       )
 3                                           )
    And                                      )
 4                                           )
    THE OFFICIAL COMMITTEE OF UNSECURED      )
 5  CREDITORS OF ALL TITLE III DEBTORS       )
    (OTHER THAN COFINA),                     )
 6                                           )
    as co-trustees of                        )
 7                                           )
    THE EMPLOYEES RETIREMENT SYSTEM OF       )
 8  THE GOVERNMENT OF PUERTO RICO,           )
                                             )
 9  Plaintiff,                               )
                                             )
10  v.                                       )
                                             )
11  DEFENDANT 1M, et al.,                    )
                                             )
12  Defendants.                              )

13
    THE SPECIAL CLAIMS COMMITTEE OF THE      )
14  FINANCIAL OVERSIGHT AND MANAGEMENT       )
    BOARD FOR PUERTO RICO, ACTING BY AND     ) 3:19-AP-357 (LTS)
15  THROUGH ITS MEMBERS,                     )
                                             )
16  And                                      )
                                             )
17  THE OFFICIAL COMMITTEE OF UNSECURED      )
    CREDITORS OF ALL TITLE III DEBTORS:      )
18  (OTHER THAN COFINA),                     )
                                             )
19  as co-trustees of                        )
                                             )
20  THE EMPLOYEES RETIREMENT SYSTEM OF       )
    THE GOVERNMENT OF PUERTO RICO,           )
21                                           )
    Plaintiff,                               )
22                                           )
    v.                                       )
23                                           )
    STOEVER GLASS & CO., et al.,             )
24                                           )
    Defendants.                              )
25
```

```
 1   THE SPECIAL CLAIMS COMMITTEE OF THE      )
     FINANCIAL OVERSIGHT AND MANAGEMENT       )
 2   BOARD FOR PUERTO RICO, ACTING BY AND     ) 3:19-AP-359 (LTS)
     THROUGH ITS MEMBERS,                     )
 3                                            )
     And                                      )
 4                                            )
     THE OFFICIAL COMMITTEE OF UNSECURED      )
 5   CREDITORS OF ALL TITLE III DEBTORS:      )
     (OTHER THAN COFINA),                     )
 6                                            )
     as co-trustees of                        )
 7                                            )
     THE EMPLOYEES RETIREMENT SYSTEM OF       )
 8   THE GOVERNMENT OF PUERTO RICO,           )
                                              )
 9   Plaintiff,                               )
                                              )
10   v.                                       )
                                              )
11   DEFENDANTS 1H – 78H, et al.,             )
                                              )
12   Defendants.                              )

13
     THE SPECIAL CLAIMS COMMITTEE OF THE      )
14   FINANCIAL OVERSIGHT AND MANAGEMENT       )
     BOARD FOR PUERTO RICO, ACTING BY AND     ) 3:19-AP-361 (LTS)
15   THROUGH ITS MEMBERS,                     )
                                              )
16   And                                      )
                                              )
17   THE OFFICIAL COMMITTEE OF UNSECURED      )
     CREDITORS OF ALL TITLE III DEBTORS:      )
18   (OTHER THAN COFINA),                     )
                                              )
19   as co-trustees of                        )
                                              )
20   THE EMPLOYEES RETIREMENT SYSTEM OF       )
     THE GOVERNMENT OF PUERTO RICO,           )
21                                            )
     Plaintiff,                               )
22                                            )
     v.                                       )
23                                            )
     DEFENDANT 1G-50G, et al.,                )
24                                            )
     Defendant.                               )
25
```

```
 1   A P P E A R A N C E S:

 2

        GEOFFREY S. STEWART, ESQ., DAVID R. FOX, ESQ.,
 3   SARAH PODMANICZKY McGONIGLE, ESQ., and MATTHEW E. PAPEZ, ESQ.,
     Jones Day, 51 Louisiana Avenue, N.W., Washington, DC,
 4   20001-2113, appearing for the Movants.

 5       JESSE GREEN, ESQ., White & Case, LLP, Southeast Financial
     Center, 200 South Biscayne Boulevard, Miami, Florida,
 6   33131-2362, appearing for the Puerto Rico Funds.

 7       WILLIAM D. DALSEN, ESQ. and MARGARET DALE, ESQ.,
     Proskauer Rose LLC, One International Place, Boston,
 8   Massachusetts, 02110-2600, appearing for the Oversight Board.

 9       IRENA GOLDSTEIN, ESQ., Paul Hastngs LLP,
     875 15th Street, N.W., Washington, DC, 20005, appearing
10   for the Official Committee of Unsecured Creditors.

11       LANDON RAIFORD, ESQ. and MELISSA ROOT, ESQ.,
     Jenner & Block LLP, 353 N. Clark Street, Chicago, Illinois,
12   60664-3456, appearing for the Retiree Committee.

13

14

15

16

17

18

19

20

21
                          LEE A. MARZILLI
22                     OFFICIAL COURT REPORTER
                     United States District Court
23                  1 Courthouse Way, Room 7200
                          Boston, MA  02210
24                         (617)345-6787

25
```

```
 1                     P R O C E E D I N G S
 2            THE CLERK:  You may be seated.  The United States for
 3   the District of Puerto Rico is now in session, the Honorable
 4   Judge Dein presiding.  Today is Wednesday, January 15, 2020.
 5   The matter of In Re:  The Financial Oversight and Management
 6   Board for Puerto Rico as representative of the Employees'
 7   Retirement System of the Government of the Commonwealth of
 8   Puerto Rico, Case No. 17-BK-3566 will now be heard.  Will the
 9   parties please identify themselves for the record.
10            MS. DALE:  Good afternoon, your Honor.  Margaret Dale
11   from Proskauer Rose for the Financial Oversight Management
12   Board for Puerto Rico.
13            THE COURT:  Thank you.
14            MR. DALSEN:  Good afternoon, your Honor. William
15   Dalsen from Proskauer Rose, also on behalf of the Oversight
16   Board.
17            MR. FOX:  Good afternoon, your Honor.  David Fox from
18   Jones Day on behalf of the ERS Bondholder Group.
19            MR. PAPEZ:  Good afternoon, your Honor.  Matthew Papez
20   from Jones Day, also on behalf of the ERS Bondholder Group.
21            MS. McGONIGLE:  Good afternoon, your Honor.  Sarah
22   Podmaniczky McGonigle, also from Jones Day, also on behalf of
23   the ERS Bondholders.
24            MR. STEWART:  Good afternoon, your Honor.  Jeffrey
25   Stewart of Jones Day, also on behalf of the ERS Bondholders.
```

```
 1               THE COURT:  Not right yet.  I'll hear the other side.
 2               MR. DALSEN:  Good afternoon, your Honor.  William
 3   Dalsen from Proskauer Rose for the Oversight Board as
 4   Representative of the Debtor in the Title III cases.
 5               I think it makes sense to start with Interrogatory
 6   No. 11.  Interrogatory No. 11, as the Court pointed out, is
 7   asking us to make legal determinations about whether specific
 8   persons broke the law.  Aside from the fact that, as the Court
 9   has already pointed out, that would be improper, the contention
10   ERS has made, and I'll come back to this more in a second, is
11   that the reason the bonds were issued ultra vires is because
12   the ERS Enabling Act does not authorize their issuance.  This
13   is not a case that is about some individual breaking the law,
14   and, as a result of breaking the law, the bonds were ultra vires.
15   Instead the case is about the lack of authority, the lack of
16   delegated authority from the legislature to allow that to
17   happen in the first place.
18               Maybe more importantly, as we've already told the
19   bondholders, Interrogatory No. 11 asks:  If you contend, that
20   is, if ERS contends that someone has broken the law, that
21   that's the information they want to know.  And as we told the
22   ERS bondholders, we've told you what we can tell you.  If we
23   find something else, maybe we could supplement it.  We shouldn't
24   be compelled to do so because of our other objections, but, as
25   we told them, we're not withholding some piece of information
```

1   because it asks us what we're contending, and so that's not
2   even an issue.
3           THE COURT: So is it appropriate to say that in this
4   litigation, there is not an issue, from your point of view,
5   that somebody broke the law?
6           MR. DALSEN: That's correct, your Honor. We're
7   looking at the ERS Enabling Act and the lack of authority.
8   Mr. Fox actually began his presentation, before we had to take
9   a break for technical reasons, speaking to how this case is
10  about why ERS lacks statutory authority. That's what the case
11  is about.
12          Now, if the parties through discovery end up finding
13  something else, maybe the case evolves with it, but at this
14  point in time, ERS's contention is tied to the ERS Enabling Act
15  and what it does not say. So Interrogatory No. 11 is not
16  relevant to any contentions in the case. It's something we
17  shouldn't have to answer anyway because, as the Court pointed
18  out, it's really seeking information that's a legal
19  determination about individuals who broke the law.
20          Moving back to Interrogatory No. 1, there's a few
21  problems with Interrogatory No. 1. They're asking us for the
22  factual basis for our contention that the bonds were
23  ultra vires and void ab initio. As we already said, though,
24  the reason the bonds were ultra vires and void ab initio is
25  because the ERS Enabling Act, as a matter of law, does not

1    authorize ERS to issue bonds.  This is not a factual issue, at
2    least not from our perspective.
3         Now, the bondholders tried to make this into a factual
4    issue by I think making two general arguments.  One is that it
5    relates somehow to notice under UCC 8-202, and, number two,
6    that it relates to the construction of the Enabling Act, and
7    neither of those is correct.  For their notice argument -- and,
8    by the way, this is an argument that the bondholders have
9    raised, not us, not ERS, not the Board.  The premise of the
10   notice argument is that even if a security is invalid and
11   unenforceable, the UCC under Section 8-202 provides for an
12   argument you can make based on the notice that you had.  And
13   what it provides, and we'll get to this more with our
14   affirmative motion to compel, more into the meat of this, but
15   what it speaks to is whether a purchaser for value was without
16   notice of a particular defect.
17        ERS is not a purchaser for value, right?  This UCC
18   notice argument that they keep making over and over again is
19   directly tied to what a purchaser has notice of, not to what
20   ERS had notice of, not to what the Commonwealth had notice of,
21   not anybody.  The question is, if you are a purchaser for value
22   and without notice of a particular defect, which I'm reading
23   directly from -- this is Title 19 of the laws of Puerto Rico,
24   Section 1752, Sub (b)(1) -- that's the defense that they're
25   talking about, whether the purchaser had notice.  And notice is

```
 1   defined as actual notice, receipt of a notice, or knowledge
 2   under all facts and circumstances.
 3           THE COURT:  So, I'm sorry, are you saying that the
 4   bondholders are not purchasers?
 5           MR. DALSEN:  No, your Honor, I'm not contending that.
 6   What I'm saying is that the bondholders are trying to say that
 7   ERS needs to answer these interrogatories because it would bear
 8   on their notice defense under UCC 8-202.  It's one of the
 9   arguments they made in their brief, and Mr. Fox just made it
10   again.  What I'm saying is that that argument has zero merit,
11   and the reason it has zero merit is because asking ERS what it
12   knew, asking ERS when it first knew it, asking ERS who knew it
13   has no bearing on whether the purchasers, the bondholders, were
14   without notice that the bonds were ultra vires.  So the argument
15   they're making doesn't make any sense.  It's backwards.
16           THE COURT:  Well, certainly if you in your knowledge
17   of the issuance of the bond being ultra vires, that you issued
18   a proclamation to that effect, that would be relevant to the
19   bondholders' argument as to whether or not they had knowledge
20   of something amiss.  If you had the same documents that the
21   bondholders had and reached a different conclusion, isn't that
22   circumstantial evidence that the bondholders should have
23   reached the same conclusion that you reached?  I mean, it seems
24   to me that ERS is the entity that's living with these bonds,
25   making the decisions whether or not to issue them, and is
```

1   assessing their validity.  So to the extent that the bondholders

2   want to explore what is known out there, it seems to me that

3   what ERS knows is relevant.  And if you know it and you don't

4   disclose it, isn't that relevant to their claim of laches and

5   unjust enrichment?  I mean, I have no idea whether those are

6   actually viable legal claims, and we're not at that stage now,

7   and I understand that you're arguing that they're not.

8            MR. DALSEN:  Correct.

9            THE COURT:  But it is part of the case as of now,

10  right?  So if their argument is, "Look, you're allowing all of

11  this to go forward, all these payments to be made, the bonds to

12  be bought and sold while you know that they're not valid,"

13  isn't that facts that they are entitled to explore for their

14  defenses?

15           MR. DALSEN:  Your Honor, it depends on which defenses

16  they're talking about.  If they're making a generalized claim

17  that just because those things could be relevant, they need to

18  be discoverable, that's not what the law is going to provide.

19  It's that we have to say, well, what defenses are they

20  asserting, and does it matter for them?  And the one they rely

21  on primarily is this UCC notice defense.

22           THE COURT:  But you've interpreted the UCC notice as

23  what they know or should have known.  I mean, that's how you've

24  interpreted the requirement of a purchaser in good faith, and

25  isn't what they should have known -- isn't what ERS knew some

```
 1    information that can be relevant to what the bondholders should
 2    have known?
 3            MR. DALSEN:  So actually I would say "no," and the
 4    reason is that because under the UCC statute that defines
 5    notice, it's actually not what they should have known.  That's
 6    not actually the standard.  What it says is that what's
 7    relevant to notice is all the facts and circumstances that the
 8    purchaser knew at the time that they made the purchase.  It's
 9    not about if ERS knew it, then maybe the bondholders should
10    have known it.  It's about, under all facts and circumstances
11    at the relevant time, which is here the purchase or acquisition
12    of the bonds, under all the facts and circumstances known to
13    the purchaser, the person who's claiming to be without notice,
14    was there reason to know that the bonds had been issued
15    ultra vires?  That is a perspective that is entirely from the
16    perspective of the purchaser.  It's actually not from the
17    perspective of ERS.  And so it's different, I would say, than a
18    "should have known" standard, or to say that knowledge out in
19    the world is what affects what the purchaser has notice of as
20    defined in the UCC as enacted in Puerto Rico.
21            THE COURT:  I'm not following the distinction.  It
22    seems to me your arguments have been that a relevant inquiry is
23    what the bondholders knew or had reason to know.
24            MR. DALSEN:  Right.
25            THE COURT:  I mean, that's your argument.
```

1          MR. DALSEN:  The second part of it is the important
2  part.  When we say they had reason to know, the question is, on
3  the basis of what?  What is it that would have given them
4  reason to know?  And what the UCC provides in Section 451,
5  Sub (25) which defines notice, it says, "A person has notice of
6  a fact when," and the one we're talking about is Sub (c) --
7  "from all of the facts and circumstances known to him at the
8  time in question, he has reason to know that it exists."
9          So, yes, the argument is that they had reason to know,
10 but then the question is, why would they have reason to know?
11 What does the law say matters?  What the law says is from all
12 the facts and circumstances known to him, known to the
13 purchaser; not the facts and circumstances known in the world,
14 not the facts and circumstances known to anybody else.  The
15 question is, did they, the bondholders, have notice?  Because
16 if they had notice, including under all the facts and
17 circumstances known to them, that gave them a reason to know
18 that the bonds were ultra vires and void, then their notice
19 arguments fail.  That's why it doesn't matter what ERS thinks.
20 Instead what matters is known to him, known to the purchaser.
21 That's what the inquiry is under the UCC.
22         THE COURT:  But you're saying that they should have
23 been on notice because of the Enabling Act.
24         MR. DALSEN:  That's one reason they should have been
25 on notice.  What we suspect is, there's going to be a lot more

1    reasons they should have been on notice:  their own analysis,

2    their own papers, the Investment Committee memoranda that we

3    have requested that they've refused to provide.  We don't know,

4    obviously, the extent of documents they have.  I don't know how

5    many responsive documents could come back, and we'll talk about

6    our motion later, but the Enabling Act is the first line of

7    defense.  It's a very good line of defense because it's public

8    legislation.  But it's not the only thing that's going to be

9    out there, and if there's more out there that was known to him,

10   known to the purchaser at the time of purchase, it's that set

11   of information that indicates what they had reason to know.

12   That's exactly what the UCC says notice is.  And that's why

13   what ERS thinks about anything does not bear on this notice

14   argument they're making under the UCC, and that's why we should

15   not have to answer these interrogatories if that's what they're

16   relying on.

17            I'll move on to Interrogatory No. 2.

18            THE COURT:  Okay.

19            MR. DALSEN:  Well, one other note actually about

20   Interrogatory No. 1.  Even putting aside the fact that the UCC

21   would put everything ERS knew to the side as irrelevant,

22   Interrogatory No. 1 also is -- it's so broad that it's

23   impossible to answer realistically.

24            THE COURT:  So I'm reading No. 1 -- maybe I'm wrong,

25   but I'm reading Interrogatory No. 1 as that there's no