**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

     Debtors.[1]

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

     Debtor.

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

PROMESA
Title III

No. 17 BK 4780-LTS

**Court Filing Relates Only to PREPA
and Shall Only be Filed in Case No.
17-BK-4780 (LTS)**

**MOTION OF WHITEFISH ENERGY HOLDINGS, LLC**
**FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM**

     Whitefish Energy Holdings, LLC ("WEH"), by and through its undersigned counsel,

hereby files this motion for allowance of its administrative expense claim (the "Motion"), and

respectfully states as follows.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) and (vi) Puerto Rico Public Buildings Authority ( PBA) ( Bankruptcy Case No. 19 BK 5523-LTS) ( Last Four Digits of Federal Tax  ID: 3801).

4852-1601-5988.12

## INTRODUCTION

In the immediate aftermath of Hurricanes Maria and Irma, WEH was the first contractor in the field in Puerto Rico, working to repair the island-wide blackout. WEH's work has been praised as the most efficient and cost-effective of any contractor working on the island.[2] By this Motion, WEH seeks an order of this Court ruling that the Remaining Invoice Amounts (defined below) still owed by PREPA, as well as the Finance Charges (defined below), are allowed administrative expenses. To the extent FEMA approves the FEMA Documentation and provides payments to PREPA for WEH's services, which PREPA is required to remit to WEH, the amount of the administrative claim to be paid by PREPA from other funds will be reduced dollar-for-dollar.

WEH's swift action and willingness to provide services in Puerto Rico on an emergency basis, coupled with its unique ability to provide the necessary resources to replace *transmission* lines (rather than just distribution lines), in remote areas accessible only by helicopter, helped PREPA, the island of Puerto Rico, and its citizens to survive the catastrophic damage of the hurricanes and the long-term disrepair of the island's power grid. WEH repaired the five (5) transmission line segments assigned to it by PREPA, which were required to be restored first, in order to be able to restore the entire energy system. WEH's restoration of the most critical transmission lines, facilitated the restoration of power to hospitals, industry, and the City of San Juan on expedited basis. It is an undisputed fact that WEH's actions were instrumental in preserving the main assets of PREPA, its ability to provide electricity to the population, and its ability to function as a going concern.

---

[2] *See, e.g.,* "How the US Turned Hurricane Maria from a Natural Disaster to a Manmade Tragedy, September 21, 2018"; available at: https://www.cnn.com/2018/09/21/us/puerto-rico-hurricane-maria-natural-disaster-human-catastrophe-weir/index.html ("Before leaving the island, the fired Whitefish Energy crews managed to repair five transmission lines faster and cheaper than other contractors, PREPA records show, and were given a 'favorable review' by FEMA's Inspector General and PREPA's new chief, José Ortiz.")

2

Despite WEH's quick response to the emergency and its tremendous assistance to PREPA during that difficult time, it has not been paid anything since December 2017, nearly three years ago. This is true even though its contract with PREPA has been vetted and validated by the Office of the Comptroller General for the Commonwealth of Puerto Rico. Furthermore, in July 2020, the Office of Inspector General for the Department of Homeland Security ("DHS OIG") found that PREPA complied with Federal procurement requirements in entering into the WEH Contract. In addition, PREPA has not disputed any of WEH's invoices (and indeed has submitted them all to FEMA for payment). This extreme and unfair delay in payment from PREPA has significantly impacted WEH's own financial situation. This Court should enter an order allowing WEH's claims as administrative expense claims.

## THE FACTS

1.      On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a voluntary petition for relief for the Commonwealth of Puerto Rico, pursuant to the Puerto Rico Oversight, Management and Economic Stability Act (PROMESA) section 304(a) (the "Title III Case").

2.      On May 5, 2017, the petition for the Puerto Rico Sales Tax Financing Corporation (COFINA) was filed.  On May 21, 2017 the petition for the Employee Retirement System of the Government of the Commonwealth of Puerto Rico (ERS) and the Puerto Rico Highways and Transportation Authority (HTA), were also filed.

3

4852-1601-5988.12

3.     On July 2, 2017, the Oversight Board filed the Title III case for the Puerto Rico Electric Power Authority ("PREPA"). Thereafter, various cases including the PREPA case have been jointly administered.[3]

4.     On September 26, 2017, after Puerto Rico was struck by two hurricanes, which severely damaged its electric grid, PREPA entered into a contract with WEH for the repair of the electrical system main structures (the backbone of the system) composed of approximately 200 miles of transmission lines and towers, many of which were located in the mountainous region of Puerto Rico's rugged interior (the "WEH Contract"). WEH team had the necessary experience to repair the 230kV transmission lines in remote areas with no access roads.

5.     The WEH Contract, as amended, had a ceiling value of $300 million. The WEH Contract obligated PREPA to pay WEH for work PREPA asked it to perform and which work was actually performed on a time-and-materials basis.

6.     The WEH Contract was validated by the Office of the Comptroller General for the Commonwealth of Puerto Rico. In fact, the Comptroller of Puerto Rico has publicly stated that there were no irregularities in the award of the WEH Contract to WEH.[4] This is consistent with the DHS OIG's audit report dated July 27, 2020, in which the DHS OIG determined that, "PREPA complied with Federal procurement requirements for its noncompetitive procurement of the Whitefish contract."[5]

---

[3] On September 27, 2019, the petition for the Puerto Rico Public Buildings Authority (PBA) was filed.

[4] https://caribbeanbusiness.com/puerto-rico-comptroller-usace-contract-with-fluor-looked-like-a-spy-movie/
[5] https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-57-Jul20.pdf at p. 4.

4852-1601-5988.12

7.     On October 31, 2017, PREPA terminated the WEH Contract, effective November 30, 2017. The termination was unrelated to WEH's performance under the WEH Contract.

8.     Prior to the November 30, 2017 termination date, WEH completed all of the work that had been requested by PREPA including, *inter alia*, the repair of the five (5) transmission line segments assigned by PREPA to WEH, which constitute part of the backbone of the transmission system in the area.[6]

9.     More specifically, WEH completed the following:

(a)  The sum of the WEH work covered more than 200 miles of transmission lines. In most areas, WEH crews cleared the right-of-ways to reach structures and lines before damage assessment and work could even begin. That preliminary work also involved clearing access roads and helicopter staging areas so that repair equipment and manpower could be transported to repair sites;

(b)  Over the course of that 200 miles of transmission line repair work, teams replaced over 50 towers, dismantled a like number of towers and inventoried parts for salvage and reuse, replaced structures, and completed corrective action on at least 200 other transmission structures; and

(c)  WEH also repaired over 200 miles of critical distribution line infrastructure. Restoring electricity to major residential and industrial areas was PREPA's top priority. WEH restored the first electricity to San Juan, Calguas, Manati and Juntos customers. In doing so, WEH replaced and repaired several hundred poles and re-wired critical distribution lines.

10.     WEH submitted invoices to PREPA for work performed and for mobilization and demobilization costs totaling approximately $142.4 million, which includes amounts owed for work performed by WEH and its own subcontractors.

---

[6] The chart detailing the restoration of transmission lines is part of PREPA's September 24, 2018 weekly disclosure to bondholders and other parties in this case (the "Weekly Disclosures"), on page 12. The Weekly Disclosure from September 24, 2018 can be found here: https://emma.msrb.org/ES1200256-ES937715-ES1338535.pdf.

5

11.     As of the date of this Motion, WEH and its subcontractors are still owed $106,423,983.84 (the "Remaining Invoice Amounts")[7], exclusive of interest and fees, which continue to accrue under the WEH Contract.   PREPA's October 7, 2020 13-Week Cash Flow Update confirms this amount on Page 11.[8]   Therefore, there is no dispute about the amount owed and herein claimed.

12.     The federal government has authorized 100% federal cost share for emergency protective measures, including direct federal assistance, for 180 days from the start of the declaration on September 17, 2017.[9]   All of the work performed by WEH and its subcontractors was performed within this 180-day period.

13.     The WEH Contract acknowledged that, starting on October 25, 2017, Federal Emergency Management Agency ("FEMA") financial assistance will be used to fund the WEH Contract.   Notwithstanding the foregoing, the WEH Contract provides, "Any failure to secure approvals or funding from FEMA or some other source . . . shall not relieve PREPA from its obligations for payment under this Contract."[10]

14.     PREPA prepared the contract analysis, cost reasonableness analysis, and invoices that are required to seek reimbursement from FEMA for the work performed by WEH (collectively, the "FEMA Documentation").

15.     WEH promptly and diligently responded to PREPA's requests for information and documentation to support PREPA's efforts in compiling the FEMA Documentation.

---

[7] The Remaining Invoice Amounts are subject to further reconciliation by PREPA and WEH. At this time, WEH understands that a small portion of its invoices are still being reconciled.

[8] The October 7, 2020 13 Week Cash Flow Report is located at: https://emma.msrb.org/P11425495-P11106520-P11516075.pdf.

[9] https://www.fema.gov/news-release/2017/09/26/president-donald-j-trump-amends-puerto-rico-declaration

[10] The WEH Contract is in the possession of PREPA and is not attached hereto, but WEH will provide a copy to the Court upon request.

4852-1601-5988.12

16.     As reflected in PREPA's September 24, 2018 Weekly Disclosure, on June 29, 2018, PREPA submitted the FEMA Documentation to the Governor's Authorized Representative ("GAR") for review.

17.     The GAR submitted the FEMA Documentation to FEMA on or about August 24, 2018, which is confirmed by the movement of the WEH Project Worksheet from the "pending" to the "submitted" portion of the chart in the August 24, 2018 Disclosure. PREPA then re-submitted the FEMA Documentation to FEMA on or about November 27, 2018, as indicated in PREPA's December 5, 2018 Disclosure.[11] PREPA's Disclosures, including its most recent Disclosure as of the date of this filing,[12] all reflect that the FEMA Documentation supported a request for reimbursement in the amount of $143.3 million (this amount includes the funds previously paid to WEH in 2017 which are to be reimbursed to PREPA by FEMA). This submission to FEMA by PREPA constitutes a reaffirmation by PREPA of what is an accurate statement of fact and a correct statement of the law (with the evidentiary quality of an admission) – that WEH performed the work and is owed payment pursuant to the WEH Contract, as supported by the FEMA Documentation.

18.     FEMA has not yet responded to PREPA's submission and PREPA has stopped providing updates to WEH regarding the status of FEMA's review of PREPA's submission of the FEMA Documentation. However, the most recent correspondence that WEH received from FEMA states that PREPA has failed to submit additional documentation that FEMA requested so it can finalize the reasonable cost analysis since August 2020. (See Letter from FEMA, attached

---

[11] https://emma.msrb.org/ES1221958-ES954127-ES1355088.pdf.
[12] https://emma.msrb.org/P11425495-P11106520-P11516075.pdf.

4852-1601-5988.12

hereto as Exhibit 1). On October 28, 2020, WEH received, for the first time in many months, a request for additional information from one of PREPA's consultants, which will be submitted to FEMA. As a result of the foregoing, WEH does not have an estimated deadline for FEMA's completion of its review of PREPA's submission for WEH's work.

19.    As reflected in PREPA's prior Weekly Disclosures and other reports, PREPA paid WEH $36.9 million, with the last payment received in December 2017.  However, WEH is still owed the Remaining Invoice Amounts, plus finance charges, which continue to accrue in accordance with the WEH Contract at a rate of 1% per month for all overdue invoices (the "Finance Charges").

20.    As of October 15, 2020, the Finance Charges totaled $35,661,087.98.  The total amount of the administrative claim as of this date is $142,085,071.82, including $106,423,983.84 of unpaid invoices, and finance charges of $35,661,087.98 as of October 15, 2020, plus additional Finance Charges accruing at a rate of 1% per month on all overdue invoices until the date WEH receives payment in full, as agreed under the terms and conditions of the agreement.

21.    In sum, PREPA has failed to pay WEH over $100 million for post-petition work that no one disputes was performed and performed well, and was necessary to the continued operation of PREPA.

## BASIS FOR RELIEF REQUESTED

22.    This is a Title III proceeding under PROMESA. Title III of PROMESA incorporates certain sections of the Bankruptcy Code, including Section 503, which delineates the claims that are given administrative treatment, and Section 507(a)(2), which provides for priority in the payment of such claims. *See* 48 U.S.C. 2161. Section 503(b)(1)(a) provides administrative

8

claim treatment for those expenses which are the actual and necessary costs of preserving the estate and in this case, the specific property of the Debtor.

23.     The WEH Contract was executed by WEH and PREPA after the petition for bankruptcy was filed, and all of the services performed by WEH for PREPA were performed post-petition and provided a direct benefit to PREPA and preserved PREPA's property. The work performed by WEH, reflected by the costs and expenses incurred under the WEH Contract, were necessary for preserving the assets of PREPA and its services to the population of Puerto Rico during the course of its Title III case.   There is no doubt that WEH has a valid and enforceable priority administrative claim for the amount it is owed.

24.     The Debtors and this Court have already recognized the existence of administrative claims for post-petition services that benefit the debtors in these Title III Cases. In fact, the record of this case shows that PREPA and the Oversight Board's position is that "[t]he Government Parties are sympathetic to and acknowledge the importance of paying allowable administrative claims promptly." [13]

25.     As an example, this Court's *Order (A) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (B) Deeming Utilities Adequately Assured of Future Performance, and (C) Establishing Procedures for Determining Adequate Assurance of Payment* in the Commonwealth of Puerto Rico case, No. 17-3283 (the "Commonwealth Case") [Dkt. No. 1016] (the "Utilities Order"), granted an administrative expense claim to utility companies who provided services to the Commonwealth after the petition date, on the basis of Sections 503(b) and 507(a)(2). *See* Utilities Order, ¶5.

---

[13] *See Opposition to Cobra Acquisition LLC's Urgent Motion to Modify the Stay Order and Allow Undisputed Tax Claims* [Dkt. No 1959], ¶1.

26.     This Court entered its *Order (A) Establishing Deadlines and Procedures for Filing
Proofs of Claim and (B) Approving Form and Manner Thereof in the Commonwealth Case* on
February 15, 2018 in the Commonwealth Case [Dkt. No. 2521] (the "Bar Date Order"). The Bar
Date Order specifies that parties holding administrative claims under Sections 503(b) and
507(a)(2) were not obligated to file proofs of claim, again recognizing the existence of such claims.
*See* Bar Date Order, ¶6(m).

27.     Furthermore, this Court's *Order (A) Authorizing Debtor Puerto Rico Electric
Power Authority to Obtain Postpetition Financing; (B) Providing Superpriority Administrative
Expense Claims; and (C) Granting Related Relief* (the "DIP Order") [Dkt. No. 744] provides that
administrative expense claims will be paid in accordance with PROMESA. *See* DIP Order, ¶16.
This change was requested by WEH to allay its concerns regarding payment of its claims. The
Debtors agreed to the addition of this provision, and it was approved by this Court.

28.     Most recently, the Court approved the Debtors' request to allow certain amounts as
administrative claims in connection with its contract for front-end transition services with LUMA
Energy, finding that administrative priority is available for "the 'necessary costs and expenses' of
preserving PREPA during the course of its Title III case. *See Memorandum Opinion Granting in
Part and Denying in Part PREPA's Motion for Entry of an Order Allowing Administrative Expense
Claim for Compensation for Front-End Transition Services Under the Puerto Rico Transmission
and Distribution System Operation and Maintenance Agreement with LUMA Energy* [Dkt. No.
2258] (the "LUMA Opinion"), p. 18.[14]

---

[14] Additionally, the Debtors have also agreed that post-petition storm restoration work is a priority administrative
expense in this case. *See Opposition to Motion for Allowance of Administrative Expense Claims Filed by Lord
Electric Company of Puerto Rico, Inc.* ("Lord") [Dkt. No. 911], ¶2 (stating that PREPA agreed to treat Lord's claim
as an administrative claim and pay it with FEMA funds, once they were obligated, or at the confirmation of a plan of
adjustment). The type of work performed by WEH (*i.e.,* electrical restoration services) is the same type of work that

4852-1601-5988.12

## APPLICABLE LAW

29.     The Bankruptcy Code is applicable to these proceedings under Title III, Section 301(a) of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).  The Bankruptcy Code provides in its Section 503 (b) that services provided for the benefit of the estate after the bankruptcy petition is filed are considered administrative claims.   Furthermore, administrative claims are provided priority in payment under Section 507(a)(2). These sections of the Bankruptcy Code are expressly applicable to Title III proceedings.

30.     The case of *Craig County Hospital* is instructive. *In re Craig County Hospital Authority*, 572 B.R. 340 (Bankr. N.D. Okla. 2017). In *Craig*, a group of creditors had provided post-petition goods and services to a hospital which filed for bankruptcy. The debtor-hospital was ultimately sold, but the trustee charged with distributing proceeds from the sale objected to the payment of the post-petition goods and services as administrative claims because there is no "estate" in a chapter 9 case, and therefore, there could be no administrative claim for preservation of the estate, despite the fact that there was a process for obtaining such claims under the plan of adjustment. *Id*. at 350. The court rejected this argument and concluded that the vendors who had provided goods and services after the hospital filed bankruptcy enabled its continued operation and ultimately its sale, which resulted in a payout to other creditors. *Id*. at 350-51. Therefore, the court held that it would be inequitable to deny those creditors administrative treatment for their claims. Furthermore, the fact that the confirmed plan provided a process for administrative claims meant that the trustee could not later argue that there were no such claims because that would be

---

was performed by Lord, though WEH's work was on a much larger scale. In both cases, the entities provided post-petition emergency services to restore power to Puerto Rico, which undisputedly benefitted the estate.

11

a "bait and switch" on the creditors who had been promised they could obtain administrative

payment for their claims and voted for the plan based on that promise. *Id.* at 351.

31.    This case is nearly factually identical to the *Craig* case, and the rationale underlying

the decision in *Craig* applies equally here. The services provided by WEH post-petition enabled

PREPA to continue operating. But for WEH's services, PREPA would not have been able to

energize lines and return power to the citizens in San Juan and elsewhere in Puerto Rico as quickly

as it did, which allowed PREPA to continue generating revenue for its operations.  Therefore,

WEH should be entitled to an administrative claim for the work it performed for PREPA.

32.    Similarly, as in *Craig* where the court recognized the existence of administrative

claims due to the confirmed plan of adjustment, this Court has recognized administrative claims

in the Title III Cases though its Utilities Order, Bar Date Order, DIP Order, and LUMA Opinion.

Each of these preserves the rights of administrative claim holders in these cases. In addition, the

Debtors have conceded that Lord's claim, which is identical in terms of the type of post-petition

services provided to PREPA, is an administrative claim. PREPA and the Oversight Board have

also acknowledged the importance of paying allowable administrative claims promptly.

33.    PREPA has not disputed WEH's entitlement to the amounts it has sought, or the

reasonableness of such fees. PREPA submitted the FEMA Documentation to FEMA, which is in

itself a confirmation that WEH's claim is valid in the amount stated.

34.    In addition, the Finance Charges which have already accrued, and those which will

continue to accrue until WEH is paid should also be allowed as administrative expenses. The

Finance Charges were a reasonable, agreed-to part of the WEH Contract, and a significant part of

the bargain upon which WEH performed its work. *In re GHR Energy Corp.*, 41 B.R. 668, 673

(Bankr. D. Mass. 1984) (holding that the contract rate is presumed reasonable unless the debtor

introduces convincing evidence otherwise); *see also In the Matter of Ascot Mortgage, Inc.*, 153 B.R. 1002, 1015 (Bankr. N.D. Ga. 1993) (allowing late fees as an administrative expense claim); *In re SRT Solutions, LLC*, 2016 WL 1530123, *3 (Bankr. S.D. Tex. Apr. 13, 2016) (approving as administrative expenses late fees in the amount of 15% in addition to rent owed). WEH has consistently informed PREPA that it is assessing the Finance Charges, and has stated the same to this Court. *See Limited Objection of Whitefish Energy Holdings, LLC to the Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement*, ¶16 (stating that as of September 2019, PREPA owed WEH in excess of $21 million in Finance Charges) [Dkt. No. 8730 in the Commonwealth Case] (the "WEH 9019 Objection"). PREPA has never disputed either the amount or the rate of the Finance Charges. Therefore, they should be allowed in addition to the $106 million still owed for the work WEH performed nearly three years ago.

35.     Whether or not FEMA has reimbursed PREPA for the amounts owed under the WEH Contract is irrelevant to the fact that PREPA owes WEH in excess of $140 million and has not paid any of it since December 2017. PREPA has, in essence, treated WEH as a post-petition lender for nearly three years, simply ignoring WEH's requests for interim payments, even of limited amounts like the monthly Finance Charges, and delaying its responses to FEMA, which has led to an unconscionable delay. This is so, even though PREPA has <u>never</u> disputed any of WEH's invoices or complained about the quality of the work completed.

36.     PREPA's actions in this matter are not only negatively and unfairly impacting WEH, a contractor who acted promptly and effectively to restore power to the island in a serious emergency, and its subcontractors, but also the Debtor itself and its property. First, PREPA is

4852-1601-5988.12

incurring the Finance Charges of over $1 million per month (and over $36 million in this case to date). As discussed above, these are administrative expenses, and their continued accrual negatively impacts unsecured creditors, because they must be paid in full, in cash, upon the confirmation of PREPA's plan of adjustment. In addition, if PREPA obtained the funds from FEMA for WEH's work, it would have a significant positive effect on the estate because it would: 1) reduce WEH's administrative claims against PREPA on a dollar for dollar basis, to the tune of over $100 million; and 2) nearly $37 million of the funds for WEH's invoices which have already been submitted to FEMA would go directly back to PREPA to reimburse it for amounts it paid to WEH in 2017.

37.     Administrative claims are recognized and given priority in the Bankruptcy Code and PROMESA in order to encourage companies to provide goods and services to debtors in bankruptcy. Without the protection of priority repayment, many vendors, including those who are currently performing critical electrical grid restoration work, will be unwilling to continue.

38.     This protection is even more important now, in light of the numerous issues facing Puerto Rico and PREPA, including the COVID-19 Pandemic, a serious drought, and damage from recent storms. *See Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion* (the "Status Report") filed September 25, 2020 [Dkt. No. 2220]. In fact, PREPA and the Oversight Board have informed the Court that they are still conducting due diligence into the RSA and analyzing "the optimal means of implementing the RSA transactions." *Id.* at ¶20.[15]  Given the ongoing nature of the various issues facing Puerto Rico and PREPA, this

---

[15] The referenced restructuring is the subject of the pending *Joint Motion of PREPA and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement* (the "9019 Motion"), which is currently stayed. WEH filed the WEH 9019 Objection in response to the 9019 Motion.

14

case is likely to remain open without a plan of adjustment for some time. Without a guaranty to vendors that their work will be paid as a priority administrative expense, it may be very difficult for PREPA to obtain needed goods and services.

39.    WEH's priority administrative claim should be allowed. This Court should enter an Order allowing WEH's priority administrative claim in an amount that includes the Remaining Invoice Amounts, the currently accrued Finance Charges, and additional Finance Charges accruing at a rate of 1% per month on all overdue invoices until the date WEH receives payment in full.

40.    Furthermore, PREPA has already acknowledged "the importance of paying allowable administrative claims promptly." Therefore, PREPA should do everything in its power to work with FEMA to expedite the payments for WEH's services, both to fulfill its undisputed obligations under the WEH Contract, to reduce additional costs for interest accrued, and to obtain additional cash for its own operations.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the amounts WEH is owed for services it provided to PREPA post-petition constitute a priority administrative expense. WEH's invoices have been evaluated and submitted by PREPA to FEMA for payment. Therefore, WEH respectfully requests that the Court (1) enter an order determining that its claim is entitled to administrative priority pursuant to Section 503 of the Bankruptcy Code and PROMESA in an amount that includes the Remaining Invoice Amounts, the currently accrued Finance Charges, and additional Finance Charges accruing at a rate of 1% per month on all overdue invoices until the date WEH receives payment in full; and (2) enter such other relief as is just and proper under the circumstances.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 30th day of October 2020.

4852-1601-5988.12

     **I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System which will send notification of such filing to the

participants appearing in said record including the US Trustee, counsel for AAFAF, counsel for

the Oversight Board, Counsel for the Creditor's Committee, and Counsel for the Retiree

Committee.

              Respectfully submitted,

              */s/ Michael J. Small*

              Michael J. Small (*pro hac vice*)
              FOLEY & LARDNER LLP
              321 North Clark Street
              Suite 3000
              Chicago, IL 60654-4762
              Telephone: (312) 832-4500
              Facsimile: (312) 832-4700
              msmall@foley.com

              Tamar N. Dolcourt (*pro hac vice*)
              FOLEY & LARDNER LLP
              500 Woodward Ave., Suite 2700
              Detroit, MI 48226
              Telephone (313) 234-7100
              Facsimile   (313) 234-2800
              tdolcourt@foley.com
              *Counsel for WEH*

              and

              **C. CONDE & ASSOC.**
              */s/Carmen D. Conde Torres*
              Carmen D. Conde Torres, Esq.
              USDC 207312
              */s/Luisa S. Valle Castro*
              Luisa S. Valle Castro, Esq.
              USDC No. 215611

              254 San José Street, 5th Floor
              Old San Juan, Puerto Rico 00901
              Telephone:  787-729-2900

4852-1601-5988.12

Facsimile:  787-729-2203
E-Mail:    condecarmen@condelaw.com
           ls.valle@condelaw.com
*Counsel for WEH*

4852-1601-5988.12



U.S. Department of H...
Federal Emergency Ma...
Guaynabo, Puerto Rico



FEMA

October 13, 2020

Andy Techmanski
Whitefish Energy Holdings, LLC
Via electronic mail,
andy.techmanski@whitefishenergy.com

     RE:   Project Worksheet Obligation Request

Dear Mr. Techmanski:

This letter is in response to your October 6, 2020 e-mail to Federal Emergency Management Agency (FEMA) Administrator Pete Gaynor concerning a project worksheet submitted by the Puerto Rico Electric and Power Authority (PREPA) for reimbursement under Hurricane Maria.

As you know from our correspondence with you between September 2018, and February 2019, it is not customary for FEMA officials to be in direct communication with an applicant's contractor. FEMA's role in Puerto Rico's disaster recovery is to provide reimbursement to eligible applicants for eligible and reasonable costs associated with responding to a disaster. Federal assistance is discretionary and subject to federal statutory, regulatory, and policy requirements, and review timelines vary depending on documentation provided by applicants.

On February 26, 2019, FEMA informed you that the Agency had been coordinating with the applicant – in this case, PREPA – in acquiring documentation required to perform an eligibility review. This correspondence also emphasized the general notion of contract privity that your company has with PREPA, not FEMA. Since August 2020, FEMA has been awaiting additional documentation from PREPA, to finalize the reasonable cost analysis for work claimed for reimbursement by PREPA. However, FEMA's eligibility analysis has no bearing on the merits of the contents of a contract, including terms for payment, for which FEMA is not a party.

All future inquiries with respect to the status of payment under your contract with PREPA should be directed to PREPA by contacting Maricarmen Rivera at maricarmen.rivera@prepa.com or Fernando Padilla at fernando.padilla@prepa.com.

     Sincerely,

     JOSE G BAQUERO  Digitally signed by JOSE G BAQUERO
                       Date: 2020.10.13 17:19:56 -04'00'

     José Baquero
     Federal Disaster Recovery Coordinator

cc:   Thomas Von Essen, Regional Administrator
      Ottmar Chavez, Government of Puerto Rico
      Fernando Padilla and Maricarmen Rivera, PREPA