UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

COMMONWEALTH OF PUERTO RICO
Debtor,

----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 03283

**LIFT STAY NOTICE**

**(i) The identity of the movant and its contact information;**

Movant: Gilberto Rosario-Vicente through their attorney.

CONTACT INFORMATION:

Richard Schell Asad, Esq.
171 Av. Carlos Chardón
Suite 301
San Juan, Puerto Rico 00918
Tel. (787)626-1124
E-mail: rschellasad@aol.com

**(ii)The claim(s), lawsuit(s), or other proceeding(s) for which movant seeks relief**

**from the automatic stay, including the relevant case number and court information;**

Lawsuit Caption: Gilberto Rosario-Vicente v. Ruben Gonzalez-Flores et. al. Civil No. 16-

1898(Jag) filed before the United States District Court for the District Of Puerto Rico. See

Exhibit 1.

Plaintiff: Gilberto Rosario-Vicente

Defendant subject to stay: Commonwealth of Puerto Rico

Plaintiff Rosario-Vicente has had a long-standing dispute with the Municipality of Aibonito, regarding the ownership of the municipal road that was built in front of his home located at Bo. La Plata, Carr. 14, Km. 59.2, Aibonito, Puerto Rico. On the one hand, plaintiff claims that the road was illegally built through a farm which he owns, while the Municipality of Aibonita denies it. The dispute was litigated by the parties before the Commonwealth's courts, which initially held in favor of the Municipality of Aibonito.

On August 12, 2015, at about 10:00 a.m., Mr. Rosario-Vicente heard a vehicle "squealing tires" in the street in front of their home at Bo. La Plata, Carr. 14, Km. 59.2, Aibonito, Puerto Rico, and heard someone screaming "arráncalo, arráncalo" or "pull it out, pull it out". Plaintiff's wife, Ms. Migdalia Santiago-Torres, looked out the window of their home and saw an official police vehicle of the Commonwealth of Puerto Rico driven by defendant González-Flores who was accelerating the vehicle over a piece of cement that was protruding from a hole in the street in front of their home.Ms. Santiago-Torres then told her husband, Mr. Rosario-Vicente, about what was happening. Mr. Rosario-Vicente then proceeds to exit his house to verify what is happening in front of his home.Mr. Rosario-Vicente then sees a group of people were walking down the street that goes by the front of his house, walking with the Director of Public Works of the Municipality of Aibonito, Mr. Carlos Hernández, towards his home.

The people walking with Mr. Hernández had mechanical equipment with them to cut trees, trimmers, machetes, and were accompanied by heavy machinery, a truck, etc. The group of people included defendant Rivera, as well as defendant González-Flores who had been using a vehicle of the Commonwealth Police Department to clear a piece of cement from a hole in the road. There was also a vehicle blocking traffic on the top of the street. Mr. Rosario-Vicente then asked Mr. Hernández about the purpose of his presence in the area, and he responded that he came with the purpose of cleaning the street and to cut the trees on the side of the street. Mr. Rosario-Vicente then told him that the street had been cleaned the prior week.

Mr. Hernández then countered by stating that the Municipality of Aibonito had won the legal dispute with plaintiff (Mr. Rosario-Vicente as owner of the parcel of land where the street passed had filed a legal action against the Municipality of Aibonito regarding the ownership of the land) and that he came to patch the holes in the street.  Mr. Rosario-Vicente responded that he had no problem with that, but that he wanted the trees in front of his house to remain, as they protected his home from vehicles that sped by the house, as in various times in the past, speeding and careless drivers had caused damages to the exterior walls of his home.Mr. Hernández responded that everything would go, as the intention was to leave everything clean. Mr. Rosario-Vicente then got on one of his cars and parked it in front of his home, within his property, to protect the trees in front of his house. Defendant Rivera then advised Mr. Rosario-Vicente that he would be placed under arrest.In all this, plaintiff and wife were demanding for evidence of an authority, other than the word of a municipal employee, granting permission to cut down trees in his property.

Then defendant González-Flores goes to the township of Aibonito and returns with the "papers" from Commonwealth's Court, showing that Mr. Rosario-Vicente had lost his case against the Municipality Abonito. However, the documents did not grant permission to cut down any trees within plaintiff's property.Of relevance, is the fact that defendant González-Flores has a personal interest in the dispute between plaintiff and the Municipality, as he lives further down the road subject of the dispute and uses it on a daily basis to get in and out of his home.

Accompanying defendant González-Flores on the date of the facts with the group of people in question, were two of his sisters, two sisters in law, a brother in law, various nieces and nephews, etc., most of whom reside in the area and also have a personal interest in the dispute, as they also use the road in question.

It is evident that defendant González-Flores was using his personal as Commander of the Aibonito Precinct not only for his own personal benefit, but also for the benefit of his extended family who also used the road in question for their benefit. In the meantime, defendant

González-Flores summoned defendants Jane Doe and Héctor González-Martínez to the area to

provide additional police assistance.Upon defendant González-Flores return to the area, he

proceeded to show to Mr. Rosario-Vicente the documents in question, to which he responded

that an appeal had been filed before the Commonwealth's Supreme Court.

Defendants Jane Doe and González-Martínez then placed themselves under plaintiff's

garage. At a given moment, defendant González-Martínez signaled Mr. Rosario-Vicente to

come to him, and plaintiff complied. Mr. González-Martínez then asked for Mr. Rosario-

Vicente's personal information (name, driver's license, social security number, etc.). Mr.

Rosario-Vicente complied with this request and provided him with his name and social security

number, but asked for permission to go to his home to retrieve his license.

When Mr. Rosario-Vicente exits his home after retrieving his license, he encounters Mr.

Eliezer Torres, believed to be a friend and/or relative of defendant González-Flores, who

blocked his way towards defendant González-Martínez.  Mr. Torres, who was 41 years old and

in good physical shape (being a veteran), proceeded to reproach plaintiff about losing he case

and to call Mr. Rosario-Vicente "viejo cabron" (Mr. Rosario-Vicente was 67 years old at the time)

and "pendejo", among other fighting words, and Mr. Rosario-Vicente attempted to strike him

with his right hand and Mr. Torres struck him back.

Upon viewing the exchange between Mr. Rosario-Vicente and Mr. Torres, defendant

González-Flores then immediately screamed that charges would be filed against Mr. Rosario-

Vicente. As Mr. Rosario-Vicente walked towards defendant González-Martínez to show him his

driver's license, defendant Rivera grabbed him by the back of the head and forcefully pulled him

towards the ground.As a result of being shoved to the ground by defendant González-Martínez

and the force exerted upon him, plaintiff fell to the ground on his back, suffering trauma to his

head and back, as a result of which he was unable to walk as he helplessly laid on the ground

with great pain.

While plaintiff was in the ground in great pain and unable to move, defendant Rivera

then attempted to pull him by the arms towards the side of the road and stopped from doing so

when Mr. Rosario-Vicente's his wife began to scream and protest, as it was evident that her

husband was seriously hurt and in great pain. Defendant González-Flores then tells defendant

Rivera "tu sabes lo que eso conlleva", or "you known what this entails".An ambulance was then

summoned to the scene, and plaintiff was taken to the Hospital Menonita in Aibonito, where T12

and L1 compression fractures in his vertebrae were diagnosed.As the Hospital Menonita lacked

the services of a neurosurgeon, plaintiff was transferred in ambulance to the Puerto Rico

Medical Center with the following diagnosis:Thoracic/Lumbar Fracture/Head Trauma.

After a day of hospitalization, plaintiff was transferred back to his home, where he had to

remain in bed for more than two (2) months, after which he was operated at Hospital San Lucas

in Ponce, PR. Thereafter, he has remained under medical treatment of various medical

specialists, amongst them physiatrists, neurosurgeons, etc.Notwithstanding the amount of

treatment that plaintiff has received, as of today, he continues to suffer excruciating paint,

mental anguish a partial permanent impairment of bodily functions, which hampers one or more

daily living activities.On the same date of the facts a criminal complaint was made against

plaintiff by defendant González Martínez, which was subsequently dismissed.

On October 21, 2015, plaintiff notified his intent to file a claim upon the Secretary of

Justice of Puerto Rico, a claim that was received by said office on October 25, 2015. Upon

receipt of his extrajudicial claim, plaintiff was notified that the matter was being investigated as a

possible police brutality/civil rights violation by the herein defendants, all of whom were active

members of the Puerto Rico Police Department and at the time of the facts averred herein were

acting in their official capacities, to advance their own personal interests.

**(iii) The asserted cause of action and amount of the claim(s)**

The conduct and actions of defendants acting under color of law, acting jointly and in

concert, in grossly violating Mr. Rosario Vicente's civil rights was done intentionally, maliciously

and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification and was designed to an did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the Fourth and Fourteenth Amendments of the Constitution of the United States.

The conduct and actions of defendants police agents and supervisors named herein, failed with deliberate indifference, to prevent the gross and reckless violations of Mr. Rosario Vicente's civil rights, causing him to suffer serious bodily injury harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the Fourth and Fourteenth Amendments of the Constitution of the United States.

All the defendants acted together and conspired to deprive Mr. Rosario Vicente of his constitutional rights as guaranteed under 42 U.S.C. §1983, the Fourth and Fourteenth Amendments of the Constitution of the United States and his right to bodily integrity.

The acts and conduct of the defendants named herein constitute reckless disregard for a person's health and safety, negligence in the performance of their duties, malicious and negligent behavior against a law abiding citizen, all in violation of Article II, Sections 1, 7 and 10 of the Constitution of the Commonwealth of Puerto Rico, 1 L.P.R.A. §§ 10 and 11 and Article 1802 and 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141 and 5142.

As a result of the injuries inflicted by the defendants, plaintiff suffered excruciating physical pain and mental anguish in excess of the sum of $1,000,000.00.

As a result of the malicious and frivolous filing of criminal charges by the defendants, plaintiff suffered excruciating mental anguish in excess of the sum of $1,000,000.00.

As a result of the defendant's actions, plaintiff has suffered special damages in his medical care and treatment and the hiring of an attorney to represent him in the malicious and frivolous filing of criminal charges against him, all in excess of the sum of $10,000.00.

As a result of the defendants' conduct, plaintiff is entitled to punitive damages in excess of the sum of $1,000,000.00.

**(iv)Status of the underlying claim(s), lawsuit(s), or proceeding(s);**

The case is at the stage of discovery.  Additionally,  proofs of claim has been filed. See Exhibit 2.

**(v) Cause as to why the stay should be lifted;**

Movant in this case are seeking to lift the automatic stay for the purpose of conducting discovery from debtor Commonwealth of Puerto Rico related to the complaint mention above

*Automatic Stay*

It is well established that the automatic stay is the most basic protection afforded by a bankruptcy. *Midatlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 594, 503 (1986.) The intent of the automatic stay is to provide breathing room to the debtor by halting collection efforts. *In re Soares,* 107 F. 3d 969, 976 (CA1 1997). Such automatic stay, however, is not all-encompassing.

In the case of *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.*, 217 F. Supp. 3d 508, 517 (1st Cir. 2016), and in view of the fact that PROMESA does not define what constitutes cause for purposes of prevailing in a request for relief from the automatic stay, the First Circuit Court of Appeals established the governing standard for vacating the automatic stay "for cause" in the context of PROMESA. Specifically, the First Circuit held that, notwithstanding the actual necessity of the stay to address an imminent fiscal crisis, Congress anticipated that "certain circumstances might justify relief from the stay's significant and rigid effects. It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of liability claims against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so".

Section 362 (d)(1) of the Bankruptcy Code, 11 USC § 362(d)(1), establishes:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause,

including the lack of adequate protection of an interest in property of such party in interest.

The Bankruptcy Court in the PROMESA case has already established that Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280 (2d Cir. 1990).3 See *Brigade Leveraged Capital Structures Fund Ltd. v. García-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,* 369 B.R. 87, 94-5 (D.P.R. 2007)).

The twelve factors adopted by the Second Circuit in Sonnax are:

(1) Whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) Whether the other proceeding involves the debtor as a fiduciary;
(4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) Whether the debtor's insurer has assumed full responsibility for defending it;
(6) Whether the action primarily involves third parties;
(7) Whether litigation in another forum would prejudice the interests of other creditors;
(8) Whether the judgment claim arising from the other action is subject to equitable subordination;
(9) Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) The interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) Impact of the stay on the parties and the balance of harms.

See In *re Sonnax Indus., Inc.*, 907 F.2d at 1286.

In the end, however, the process of evaluating whether there is sufficient "cause" to vacate the automatic stay in bankruptcy cases requires the court to engage in an equitable, case-by-case balancing of the various harms at stake. See, e.g., *Peerless Ins. Co. v. Rivera*,

208 B.R. 313, 315 (D.R.I. 1997) (suggesting that cause generally exists "when the harm that would result from a continuation of the stay would outweigh any harm that might be suffered by the debtor . . . if the stay is lifted."); *In re Robinson*, 169 B.R. 356, 359 (E.D. Va. 1994) (noting that, "in deciding whether 'cause' has been shown, the bankruptcy court must balance the potential hardship that will be incurred by the party seeking relief if the automatic stay is not lifted, against the potential prejudice to the debtor" if it is.); *In re Turner*, 161 B.R. 1, 3 (Bankr. D. Me. 1993) ("Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor."); *In re Harris*, 85 B.R. 858, 860 (Bankr. D. Colo. 1988) (holding that vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and "the hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay."); *In re Opelika Mfg. Corp.*, 66 B.R. 444, 448 (Bankr. N.D. Ill. 1986) ("Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors.")

### *Movants ultimate Intention*

The Commonwealth of Puerto Rico should not object to a modification of the automatic stay set forth in Bankruotcy Code section 362, made applicable by PROMESA section 301(a), to permit the Movants in the Court of First Instance to proceed with the sought discovery. Because the Court of First Instance Action is at an intermediate stage, the Lift of Stay proposed herein to conduct discovery is appropriate given the procedural stage of the case. Such relief will balance the harm between Movant and the Commonwealth of Puerto Rico by allowing the Court of First Instance Action to continue without requiring PREPA to expend significant time and resources.

Nothing contained in any agreement between Movants and Commonwealth of Puerto Rico should be construed as waiver or modification of the Title III Stay to permit the prosecution against Commonwealth of Puerto Rico of claim by anyone other than Movant as provided for

herein, and Commonwealth of Puerto Rico will reserve all rights, defenses, and protections with respect to any other motions for relief of stay or any other matter pending in the Commonwealth of Puerto Rico 's Title III case. Commonwealth of Puerto Rico will further reserve its rights with respect to any claim currently pending in the Court of First Instance or hereinafter asserted by Movants.

Granting the lift of stay will serve the interests of judicial economy and the expeditious and economical resolution as it will result in the timely resolution of the issues. Movants have establish cause that justify the lift of the automatic stay in the Title III case of Commonwealth of Puerto Rico.

**WHEREFORE**, Movant plaintiff respectfully pray to the Oversight Board to consent to this request for relief from the automatic stay and proceed with the Court of First Instance Action: Gilberto Rosario-Vicente v. Ruben Gonzalez-Flores et. al. Civil No. 16-1898(Jag

**RESPECTFULLY SUBMITTED**,

In San Juan, Puerto Rico, this  29   of October 2020.

### _s/Richard Schell Asad_

Richard Schell Asad - USDC-PR No. 122307
Attorney for Plaintiff
#171 Chardon Ave., Suite 301
San Juan, PR 00918
Tel: (787) 626-1124; (787) 559-2712
e-mail: rschellasad@aol.com