UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

COMMONWEALTH OF PUERTO RICO
Debtor,
-------------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 03283

## LIFT STAY NOTICE

**(i) The identity of the movant and its contact information;**

Movant: Julitzamary Soto Torres , Julianys Mercados Soto, and Julia Torres Olivencia through their attorney.

CONTACT INFORMATION:

Richard Schell Asad, Esq.
171 Av. Carlos Chardón
Suite 301
San Juan, Puerto Rico 00918
Tel. (787)626-1124
E-mail: rschellasad@aol.com

**(ii)The claim(s), lawsuit(s), or other proceeding(s) for which movant seeks relief from the automatic stay, including the relevant case number and court information;**

Lawsuit Caption: Julitzamary Soto Torres et al.  v. Commonwealth of Puerto Rico et al., Civil No: L3CI2015-00218 filed before the Court of First Instance of the Commonwealth of Puerto Rico, Utuado Part. See Exhibit 1.

Plaintiff: Julitzamary Soto Torres, Julianys Mercados Soto, and Julia Torres Olivencia,

Defendant subject to stay: Commonwealth of Puerto Rico

On September 3, 2015, the youngest Julianys was in her first semester of kindergarten at Rafael Martínez Nadal School, Lares, Puerto Rico. As usual, her mother Julitzamary Soto Torres took her daughter Julianys to Rafael Martínez Nadal School at about 8:00 a.m., handing her over personally to teacher Maritza Segarra, a kindergarten homeroom teacher, in the classroom where the kindergarten students were located. After that, Julitzamary Soto Torres passed by the room where her daughter Julianys was studying at about 11:00 a.m., took her to the school cafeteria, spending lunch with her daughter, and then at 12:30 p.m., she returned her daughter to the teacher Martiza Segarra, at the kindergartner school room.

At about 2:30 p.m., Soto Torres receives a call from Rafael Martinez Nadal's principal, Alma Gonzalez, who informs her that Julianys "had been hit in the eye with a pencil" and that she should "check it out". Ms. Soto Torres immediately impersonates Rafael Martinez Nadal, and proceeds to see her daughter who was in a classroom next to the kindergarten classroom, with a napkin covering her left eye. At that point, Gonzalez tells Ms. Soto Torres that "he just poked her eye with a pencil.

Ms. Soto Torres proceeds to remove the napkin from her daughter Julianys' eye, and realizes that she had a deep wound in her left eye. In response to the "clicking" comment, Ms. Soto Torres indicates to her that her daughter's eye had been gouged out. The Director then proceeds to admit that she had proceeded to call him because the youngest Julianys had cried and her tears were of blood. Ms. Soto Torres proceeded to take her daughter to an optometrist in San Sebastian, named Magaly González Mestre (calle Ruiz Belvis #200, San Sebastian, PR 00685), who after evaluating Julianys diagnosed her as follows: Left eye trauma, Hyphema, Corneal laceration, and Iris laceration Given the seriousness of these diagnoses, he proceeds to refer Julianys to the Puerto Rico Medical Center for further treatment.

After Julianys was given first aid, Dr. González Mestre made the necessary arrangements to be evaluated at the Pediatric Hospital at the Medical Center. According to the instructions given by Dr. González Mestre, Mrs. Soto Torres proceeds to take her daughter to

the Pediatric Hospital, where she is received by the medical staff on duty. After that, Julianys is evaluated by several doctors, including Dr. Guerrero, who confirmed Dr. González Mestre's diagnosis and indicated that the girl had to undergo emergency surgery since she was leaking corneal fluid, which was extremely dangerous.

By then, it was already 10:00 p.m. and after that the pertinent diagnostic tests and studies were performed, such as "biometry," sonogram and CT of the left eye. The next morning, at about 11:00 a.m., Julianys is moved to the operating room.The procedure performed was one of "left corneal laceration repair," which is the first of multiple interventions Julianys will require in the future. The next day, upon checking Julianys' condition, the doctors noticed that she was still leaking fluid from her cornea, so she had to be operated on again for a second time. The intervention began at about 4:00 p.m., and ended at about 11:00 p.m. Finally, Julianys was discharged from the Pediatric Hospital on Sunday, September 6, 2015. Since then, Julianys has being evaluated weekly, beginning Wednesday, September 9, 2015, to the present.

While the youngest Julianys was hospitalized at the Pediatric Hospital, about two days after being admitted, Ms. Soto Torres received a call from Ms. Marangelis Gonzalez (tel. 939-259-8517), mother of the Joxwell Gonzalez Gonzalez, who told her that the accident occurred while her son was sitting at the same table as Julianys, just to his left, and the girl next to Joxwell, Yaleidys Perez Acevedo (daughter of Alexandra Acevedo tel. 787-201-1729), takes the pencil out of Joxwell's hand and begins a struggle between the two that results in Joxwell prevailing in it but taking the pencil out of his hand and burying it in Julianys' left eye.

The teacher in charge of the group, Ms. Maritza Segarra was in the room, Julianys informs her what happened and she simply sends her to wash her eye. Soto Torres knows that Rafael Martinez Nadal staff prepared and completed an incident report, but they have refused to provide her with a copy.

The minor Julianys has required, and will require in the future, extensive medical treatment of her left eye. Do not start with the nature and extent of the treatment she has been given, and that which will be given, Julianys has suffered permanent and irreparable damage to her left eye and will never enjoy perfect vision. On the contrary, the medical prognosis is that her vision in her left eye will be poor. During the entire period of time described here, Mrs. Soto Torres has been at the side of her daughter Julianys, assisting her in all her needs and has suffered intense and deep mental anguish in the face of her daughter's damage and suffering. Similarly, as a grandmother, Ms. Torres Olivencia has suffered from deep mental anguish at the sight of the damage suffered by her granddaughter, and has assisted her in all the medical treatment she has received.

### (iii) The asserted cause of action

As a result of the negligence caused by the defendants, the youngest Julianys suffered serious trauma to her left eye, as a result of which she has received, and will continue to receive, extensive medical treatment, the prognosis of which is poor and will result in permanent damage to her vision. All of this has caused, and will cause in the future, intense pain and deep mental anguish. The physical damages and mental anguish of the minor Julianys are valued at not less than $500,000.00.

Mrs. Soto Torres, as the mother of Julianys, has suffered intense and profound mental anguish as a result of the injuries sustained by her daughter. These damages are valued at no less than $150,000.00.

Ms. Torres Olivencia, as Julianys' grandmother, has suffered intense and profound mental anguish as a result of the injuries sustained by her granddaughter. The damages are valued at no less than $75,000.00.

In addition, as a result of the medical treatment that Julianys has received, and will receive, Mrs. Soto Torres has incurred expenses such as payment of medical deductibles,

medications not covered by insurance, gasoline for her daughter's transportation to San Juan, parking, etc. Such expenses are valued at no less than $10,000.00.

**(iv) Status of the underlying claim(s), lawsuit(s), or proceeding(s);**

The case is at the stage of discovery. Additionally, a proof of claim has been filed. See Exhibit 2.

**(v) Cause as to why the stay should be lifted;**

Movant in this case are seeking to lift the automatic stay for the unique purpose of conducting discovery from debtor Commonwealth of Puerto Rico related to the complaint mention above

*Automatic Stay*

It is well established that the automatic stay is the most basic protection afforded by a bankruptcy. *Midatlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 594, 503 (1986.) The intent of the automatic stay is to provide breathing room to the debtor by halting collection efforts. *In re Soares,* 107 F. 3d 969, 976 (CA1 1997). Such automatic stay, however, is not all-encompassing.

In the case of *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García-Padilla et al.*, 217 F. Supp. 3d 508, 517 (1st Cir. 2016), and in view of the fact that PROMESA does not define what constitutes cause for purposes of prevailing in a request for relief from the automatic stay, the First Circuit Court of Appeals established the governing standard for vacating the automatic stay "for cause" in the context of PROMESA. Specifically, the First Circuit held that, notwithstanding the actual necessity of the stay to address an imminent fiscal crisis, Congress anticipated that "certain circumstances might justify relief from the stay's significant and rigid effects. It therefore included a form of safety valve in section 405(e) of PROMESA to allow certain holders of liability claims against the Government of Puerto Rico to proceed with their actions, provided that they could effectively demonstrate "cause" for doing so".

Section 362 (d)(1) of the Bankruptcy Code, 11 USC § 362(d)(1), establishes:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

The Bankruptcy Court in the PROMESA case has already established that Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." See 11 U.S.C. § 362(d)(1). To determine whether "cause" exists to grant relief from the automatic stay, courts examine numerous factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280 (2d Cir. 1990).3 See *Brigade Leveraged Capital Structures Fund Ltd. v. García-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax, at 1286; C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,* 369 B.R. 87, 94-5 (D.P.R. 2007)).

The twelve factors adopted by the Second Circuit in Sonnax are:

(1) Whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) Whether the other proceeding involves the debtor as a fiduciary;
(4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) Whether the debtor's insurer has assumed full responsibility for defending it;
(6) Whether the action primarily involves third parties;
(7) Whether litigation in another forum would prejudice the interests of other creditors;
(8) Whether the judgment claim arising from the other action is subject to equitable subordination;
(9) Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) The interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceedings; and
(12) Impact of the stay on the parties and the balance of harms.

See In *re Sonnax Indus., Inc.*, 907 F.2d at 1286.

In the end, however, the process of evaluating whether there is sufficient "cause" to vacate the automatic stay in bankruptcy cases requires the court to engage in an equitable, case-by-case balancing of the various harms at stake. See, e.g., *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997) (suggesting that cause generally exists "when the harm that would result from a continuation of the stay would outweigh any harm that might be suffered by the debtor . . . if the stay is lifted."); *In re Robinson*, 169 B.R. 356, 359 (E.D. Va. 1994) (noting that, "in deciding whether 'cause' has been shown, the bankruptcy court must balance the potential hardship that will be incurred by the party seeking relief if the automatic stay is not lifted, against the potential prejudice to the debtor" if it is.); *In re Turner*, 161 B.R. 1, 3 (Bankr. D. Me. 1993) ("Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor."); *In re Harris*, 85 B.R. 858, 860 (Bankr. D. Colo. 1988) (holding that vacating the automatic stay is appropriate where "no great prejudice will result to the debtor" and "the hardship to the creditor resulting by continuing the stay considerably outweighs the hardship to the debtor by modification of the stay."); *In re Opelika Mfg. Corp.*, 66 B.R. 444, 448 (Bankr. N.D. Ill. 1986) ("Cause to lift the stay exists when the stay harms the creditor and lifting the stay will not unjustly harm the debtor or other creditors.")

### *Movants ultimate Intention*

The Commonwealth of Puerto Rico should not object to a modification of the automatic stay set forth in Bankruotcy Code section 362, made applicable by PROMESA section 301(a), to permit the Movants in the Court of First Instance to proceed with the sought discovery. Because the Court of First Instance Action is at an intermediate stage, the Lift of Stay proposed herein to conduct discovery is appropriate given the procedural stage of the case. Such relief will balance the harm between Movant and the Commonwealth of Puerto Rico by allowing the Court of First Instance Action to continue without requiring PREPA to expend significant time and resources.

Nothing contained in any agreement between Movants and Commonwealth of Puerto Rico should be construed as waiver or modification of the Title III Stay to permit the prosecution against Commonwealth of Puerto Rico of ay claim by anyone other than Movant as provided for herein, and Commonwealth of Puerto Rico will reserve all rights, defenses, and protections with respect to any other motions for relief of stay or any other matter pending in the Commonwealth of Puerto Rico's Title III case. Commonwealth of Puerto Rico will further reserve its rights with respect to any claim currently pending in the Court of First Instance or hereinafter asserted by Movants.

Granting the lift of stay will serve the interests of judicial economy and the expeditious and economical resolution as it will result in the timely resolution of the issues. Movants have establish cause that justify the lift of the automatic stay in the Title III case of Commonwealth of Puerto Rico.

**WHEREFORE**, Movant plaintiff respectfully pray to the Oversight Board to consent to this request for relief from the automatic stay and proceed with the Court of First Instance Action: Julitzamary Soto Torres v. Commonwealth of Puerto Rico et al., Civil No: L3CI2015-00218

**RESPECTFULLY SUBMITTED**,

In San Juan, Puerto Rico, this 29 of October 2020.

*s/Richard Schell Asad*

Richard Schell Asad - USDC-PR No. 122307
Attorney for Plaintiff
#171 Chardon Ave., Suite 301
San Juan, PR 00918
Tel: (787) 626-1124; (787) 559-2712
e-mail: rschellasad@aol.com

Case:17-03283-LTS Doc#:14997 Filed:10/30/20 Entered:10/30/20 16:56:31 Desc: Main Document Page 9 of 9