# **EXHIBIT B**

# Milbank

**JOHN J. HUGHES, III**

*Special Counsel*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com  |  milbank.com

November 3, 2020

**VIA EMAIL**

| | |
|---|---|
| Julia D. Alonzo, Esq. | Ashley Pavel, Esq. |
| Laura Stafford, Esq. | O'Melveny & Myers LLP |
| Proskauer Rose LLP | 610 Newport Center Drive, 17th Floor |
| Eleven Times Square | Newport Beach, CA 92660 |
| New York, NY 10036 | |

Re: November 2, 2020 Meet and Confer: Commonwealth Assets & Cash Rule 2004 Requests

Counsel:

I write on behalf of Ambac Assurance Corporation ("Ambac") to memorialize and follow-up on our telephonic meet-and-confer on November 2, 2020 (the "November 2 Meet and Confer") concerning the Rule 2004 Motions.[1]

During the November 2 Meet and Confer, the Parties discussed the items outstanding from the telephonic meet-and-confer held on September 29, 2020 and follow-up items identified in Ambac's letter to the Government dated September 29, 2020, AAFAF's letter to Ambac dated September 30, 2020, and Ambac's email to the Government dated October 23, 2020. Each item of discussion is addressed below.

Assets Rule 2004 Motion

During the November 2 Meet and Confer, AAFAF's counsel advised that it recently received documents from its client and is in the process of determining whether they are responsive to any of Ambac's Assets Rule 2004 Requests. AAFAF's counsel further advised that AAFAF intends to make a small production of documents prior to November 5, 2020, and anticipates that documents in that production will be responsive to Ambac's requests related to Prioritized

---

[1] AAFAF and the Board are referred to collectively as the "Government." Ambac and the Government are collectively referred to as the "Parties." Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Joint Status Report of Movant Ambac Assurance Corporation and Respondents the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority with Respect to the Rule 2004 Motions* [ECF No. 14438].

Ashley Pavel, Julia D. Alonzo, Laura Stafford
November 3, 2020

Commonwealth Assets, the AAFAF Assets Review, and transactions approved by the Real Property Valuation and Disposal Committee.

### *(1) Category No. 1: Assets (current and transferred/encumbered)*

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

***Ad Valorem Taxes / Tax Arrears.*** During the November 2 Meet and Confer AAFAF stated that, while it continues to investigate what materials are available regarding Ambac's request for information exchanged in connection with offers to purchase the Commonwealth's tax arrears portfolio, AAFAF believes that the 2017 offer discussed on previous meet-and-confer calls was unsolicited and likely received little attention from AAFAF. AAFAF advised that it is investigating whether the offer itself or any relevant back-up information related to it are available.

Ambac noted that the CRIM fiscal plan reflects that efforts are underway to monetize the tax arrears portfolio and inquired whether there is a current effort to solicit bids for that portfolio. AAFAF advised that a request for quotes related to the portfolio is publicly available and that it would direct Ambac to it in its forthcoming letter to Ambac.

Regarding Ambac's request for owner- and property-specific tax information, AAFAF advised that it is evaluating whether it would be appropriate under Puerto Rico law to disclose such information. AAFAF asked why Ambac is seeking the information within the context of a Rule 2004 investigation of the Commonwealth. Ambac advised that it needs owner- and property-specific tax information to conduct its own analysis; for example, because it may be more difficult or impossible to collect tax arrears that exceed the value of a given property, owner- and property-specific information would allow analysis of how much in tax arrears is likely to be collectable.

***Assets Review.*** During the November 2 Meet and Confer, Ambac followed up on its previous inquiry as to whether any follow-up communications or analyses related to the certifications submitted by agencies in response to the AAFAF memorandum are available. AAFAF advised that it continues to investigate this, that some of the documents AAFAF recently received may shed light on this issue, and that AAFAF's current understanding is that there was not much written follow-up conducted after the certifications were received.

\* \* \*

During the November 2 Meet and Confer, Ambac followed up on its October 23 inquiry as to whether any documents have been withheld from AAFAF's productions to date based on any claim of privilege, and if so, when AAFAF will provide a privilege log. AAFAF advised that, to date, it has not withheld any documents on the basis of privilege, and it would not object to providing a privilege log in the event it withholds responsive documents from future productions.

During the November 2 Meet and Confer, Ambac also requested an update as to whether relevant government employees have regained regular access to their offices and in-office files. AAFAF's counsel advised that the situation remains unchanged from its previous update, but it

Ashley Pavel, Julia D. Alonzo, Laura Stafford
November 3, 2020

would follow up with its client and provide an update (if available) in the status report due November 5, 2020.

Cash Rule 2004 Motion

*(1) Category Nos. 1 and 2: Presentation and Investigation Documents*

- *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
- *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

**Exhibit J.** During the November 2 Meet and Confer, Ambac followed up on its October 23 request for a version of Exhibit J identifying the full account numbers for each of the 59 accounts identified in Exhibit J as having been reviewed. The Board agreed to consider this request.

**Process Documents.** During the November 2 Meet and Confer, the Board reiterated that it will not produce any communication process documents but will provide Ambac information regarding the nature and scope of such documents. The Board further advised that its written response will include information concerning the time frames and rough number of individuals and entities involved in the process of classifying funds as restricted or unrestricted, but that it is unlikely to be able to provide a response before the November 5, 2020 status report is due.

Ambac notes that this request has been pending since June 18, 2020, and the Board agreed to advise Ambac of what information it can provide regarding communication process documents on July 17. The Board previously indicated on meet-and-confers held on August 7, August 28, September 18, and September 29 that it was still considering this issue. During the November 2 Meet and Confer, moreover, the Board agreed that its response likely would consist of a mere "narrative summary" describing some communications.

In light of the long-pending nature of this request, the Board should be able to commit at this point to provide the narrative summary either prior to the filing of the status report due on November 5 or within a few days thereafter. Ambac also noted during the November 2 Meet and Confer that the Parties would need to consider how to address this issue in the status report.

**Amended Disclosure Statement.** During the November 2 Meet and Confer, Ambac requested an update regarding the Government's investigation as to whether the inventory of central government bank accounts referenced in the Amended Disclosure Statement is in their possession. The Government advised that their investigation remains ongoing and they would provide Ambac an update regarding the investigation soon.

- 3 -

Ashley Pavel, Julia D. Alonzo, Laura Stafford
November 3, 2020

***October 30, 2020 Production.*** During the November 2 Meet and Confer, in response to a question from Ambac, the Board confirmed that its October 30, 2020 production contained additional factual source materials and raw data underlying the Duff & Phelps Report and October 2 Presentations. The Board explained that the materials produced on October 30 previously had been withheld as privileged, but that the Board subsequently determined that the materials are not privileged. Ambac inquired as to whether account numbers in those documents were unredacted in accordance with the procedure previously agreed to by the Parties, and the Board advised that it would investigate this and provide Ambac an update.

***Privilege Log.*** During the November 2 Meet and Confer, Ambac followed up on its October 23 request for clarification as to the Board's basis for claiming privilege over the two documents included in its October 2, 2020 privilege log.

With regard to the first entry on the privilege log, Ambac noted that the privilege log does not indicate who prepared the withheld memorandum or to whom it was directed. Ambac also noted that the privilege log states that certain information summarized in the memorandum was gathered "for the purpose of assisting counsel for the Oversight Board[,]" but that the log did not indicate who "counsel" is referring to. Ambac also inquired as to the Board's basis for claiming privilege over a meeting in which representatives from Duff & Phelps and the Public Housing Administration participated. Finally, Ambac requested the Board's position as to whether this meeting was held for a legal or business purpose. The Board advised that it will respond to Ambac's inquiries in a forthcoming letter.

Regarding the second entry on the privilege log, Ambac reiterated that the entry lists only Ernst & Young ("EY") representatives in the "Email From" and "Email To" columns (with no one listed in the "Email CC" column), but the "Description" column stated that the item was an email chain among members of EY, Proskauer Rose, O'Neill & Borges and PJT Partners. Ambac followed up on its question regarding whether this entry was intended to cover only a single email amongst employees of EY, or rather, whether the entry is meant to cover every email in the chain. The Board responded that it believes the entry covers the entire email chain but would confirm whether this is the case in its forthcoming letter. In response to a request from Ambac, the Board advised that it would be willing to amend the privilege log to reflect that it covers the entire email chain, if necessary. Additionally, Ambac followed up on its request for the Board's position as to why communications with EY and PJT Partners are privileged, and the Board advised that it would provide a response in its forthcoming letter. Finally, Ambac noted that the privilege log states that the withheld email (or email chain, as applicable) "assist[ed] EY's analysis by providing legal research and advice," but that it was unclear whom the Board intended to refer to as providing such legal research and advice. The Board agreed to provide this information in its forthcoming letter.

Ashley Pavel, Julia D. Alonzo, Laura Stafford
November 3, 2020

Very truly yours,

/s/ *John J. Hughes, III*
John J. Hughes, III


cc:    Grant Mainland
        Atara Miller
        Margaret A. Dale
        Elizabeth L. McKeen
        Martin A. Sosland
        Robert S. Berezin
        William Natbony
        Nicholas A. Bassett
        John E. Mudd
        Geoffrey S. Stewart