# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**NOTICE OF CORRESPONDENCE REGARDING THE NINETY-FOURTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO, PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, AND EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO INDIVIDUAL PROOFS OF CLAIM NOS. 161340, 12995, 14790, AND 53781.**

To the Honorable United States District Judge Laura Taylor Swain:

   1.   On October 24, 2019, the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Title III representative of the Commonwealth, HTA and ERS (collectively, the "Debtors") pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] filed the *Ninety-Fourth Omnibus Objection of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Miscellaneous Deficient Claims* [ECF No. 8983] (the "Ninety-Fourth Omnibus Objection") to various proofs of claim.

2. The Ninety-Fourth Omnibus Objection seeks to disallow certain deficient claims which purport to assert liabilities arising from salary or other compensation owed in connection with employment, pensions, or services provided by the claimant, but fail to provide critical information, such as the specific services provided, the salary accrued but unpaid, or other information needed to understand what liabilities any of the Commonwealth, HTA, ERS, or any other Title III Debtor may owe.

3. The Debtors received the correspondence from (a) Teresita De Jesus Jusino ("De Jesus Jusino"), a copy of which is attached hereto as Exhibit "A" (the "De Jesus Jusino Response"), regarding Proof of Claim No. 161340 (the "De Jesus Jusino Claim"), and (b) Marcelina Medina Marrero ("Medina Marrero"), a copy of which is attached hereto as Exhibit "B" (the "Medina Marrero Response"), regarding Proof of Claim No. 53781 (the "Medina Marrero Claim"). The Debtors also received correspondence from Teresa Angelica de la Haba ("de la Haba"), copies of which are attached hereto as Exhibits "C" (the "First de la Haba Response") and "D" (the "Second de la Haba Response," and together with the First de la Haba Response, the "de la Haba Responses"). The First de la Haba Response was submitted in regard to Proof of Claim No. 12995 (the "First de la Haba Claim"), which was filed against ERS, and the Second de la Haba Response

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

was submitted in regard to Proof of Claim No. 14790 (the "<u>Second de la Haba Claim</u>"), which was filed against the Commonwealth. Certified translations of the Medina Marrero Response and the First de la Haba Response are attached hereto as Exhibits "B-1" and "C-1", respectively.

### I. The De Jesus Jusino Response

4. The De Jesus Jusino Response consists of a partially-completed Mailing,[3] which, as set forth in the Ninety-Fourth Omnibus Objection, was mailed to claimants whose claims did not provide critical information needed to understand what liabilities the Commonwealth, HTA, ERS, or any other Title III debtor might owe.

5. The De Jesus Jusino Response identifies the basis for the De Jesus Jusino Claim as a pending legal action against the Puerto Rico Electric Power Authority ("<u>PREPA</u>"). Accordingly, because any liabilities owed by any of the Title III Debtors would lie, if at all, with PREPA, the Debtors respectfully request the De Jesus Jusino Claim be reclassified to be asserted against PREPA.

### II. The Medina Marrero Response

6. The Medina Marrero Response also consists of a partially-completed Mailing. The Medina Marrero Response purports to assert liabilities arising out of a pending or closed legal action, in an amount of "$1.00 to $25,000.00". The Medina Marrero Response does not, however, provide basic information necessary for the Debtors to reconcile the Medina Marrero Claim, such as a case number for the asserted legal action, or any explanation of the liabilities purportedly owed to Medina Marrero.

7. Accordingly, the Debtors have determined that the Medina Marrero Response still

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Ninety-Fourth Omnibus Objection.

3

does not provide information sufficient to enable the Debtors to reconcile the Medina Marrero Claim. The Debtors therefore request that the Court grant the Ninety-Fourth Omnibus Objection and disallow the Medina Marrero Claim, notwithstanding the Medina Marrero Response.

### III. The First de la Haba Response

8. The First de la Haba Response consists of a completed Mailing, in which de la Haba purports to assert liabilities against ERS in the amount of $415,000 arising out of bonds, and provides documentation asserting liabilities associated with (1) a bond purportedly issued by ERS bearing CUSIP number 29216MAC4 (the "ERS Bond"), (2) a bond issued by the Commonwealth of Puerto Rico bearing CUSIP number 74514LST5 (the "GO Bond"); (3) a bond issued by the Puerto Rico Industrial Development Company bearing CUSIP number 745211LH3 (the "PRIDCO Bond"), (4) a bond issued by the Puerto Rico Public Buildings Authority bearing CUSIP number 745235M57 (the "PBA Bond"), (5) a bond issued by the Puerto Rico Aqueducts and Sewer Authority bearing CUSIP number 745160PR6 (the "PRASA Bond"), (6) a bond issued by the Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority bearing CUSIP number 74527BUA0 (the "AFICA Bond"), and (7) a bond issued by COFINA bearing CUSIP number 74529JRJ6 (the "COFINA Bond").

    a. *The ERS Bond*

9. The CUSIP number for the ERS Bond is covered by a master proof of claim filed by The Bank of New York Mellon ("BNYM"), as fiscal agent under the Pension Funding Bond Resolution purportedly adopted on January 24, 2008, against ERS, and logged by Prime Clerk as Proof of Claim No. 16777 (the "ERS Master Claim"). The First de la Haba Claim therefore asserts, in part, liabilities associated with a bond issued by ERS that are duplicative of the ERS Master Claim. Failure to disallow the duplicative portion of the First de la Haba Claim would result in de

4

la Haba potentially receiving an unwarranted double recovery against ERS, to the detriment of other stakeholders in the ERS Title III Case. Moreover, de la Haba will not be prejudiced by the disallowance of that portion of the First de la Haba Claim, because the liabilities associated with that portion of the First de la Haba Claim are subsumed within the ERS Master Claim.

      b. *The COFINA Bond*

10. COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth. Pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico Public Finance Corporation (the "COFINA Bonds"). Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

11. The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019. The Court considered confirmation of the Plan and any objections thereto at a hearing on January 16-17, 2019.

12. On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute"). *See Order and Judgment*

5

*Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048]. On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "Settlement Order"). On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order"). Paragraph 11 of the Amended Confirmation Order states that the Order is "full, final, and complete, conclusive and binding upon . . . each person or entity asserting claims or other rights against COFINA, the Commonwealth or any of its other instrumentalities . . . ." The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated. *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

13. Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). The First de la Haba Claim purports to assert, in part, liabilities against ERS based on alleged ownership of COFINA bonds.[4] However, the First de la Haba Claim provides no basis to assert liabilities against

---

[4] To the extent the First de la Haba Claim intended to assert a claim against COFINA in the COFINA Title III Case, any such claims against COFINA should still be disallowed and expunged because they have been discharged and released pursuant to Paragraph 29(a) of the Amended Confirmation Order and 11 U.S.C. § 944, incorporated into PROMESA by PROMESA § 301(a). Additionally, any bondholder claims asserted against COFINA on the basis of bonds issued by COFINA should be disallowed, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, as duplicative of one or more master

6

ERS arising from bonds issued by COFINA, and, to the extent the First de la Haba Claim intended to assert a claim against the Commonwealth, any purported liability by the Commonwealth for bonds issued by COFINA was resolved by the resolution of the Commonwealth-COFINA Dispute.

14. Additionally, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released. Settlement Order, ¶ 55 ("On the Effective Date, to the fullest extent permissible under applicable law, the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor (as defined in the COFINA Plan), solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and pendency thereof, the compromise and settlement of *Bank of New York Mellon v. COFINA*, Adv. Proc. No. 17-00133, and the allocation of funds in accordance with Section 2.1 of the COFINA Plan."). Furthermore, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute. Paragraph 3(c) of the Settlement Agreement provides that, "[o]n the Effective Date . . . the Adversary Proceeding shall be dismissed, with prejudice, and all other claims and causes of action asserted therein by the Commonwealth Agent, the COFINA Agent and the Permitted Interveners, as

---

proofs of claim filed against COFINA by the Bank of New York Mellon, as trustee, on behalf of the holders of COFINA Bonds, which claims were logged by Prime Clerk, LLC as Proofs of Claim Nos. 31920 (subordinate bonds) and 33139 (senior bonds).

7

defined in the Adversary Proceeding, shall be deemed dismissed, with prejudice . . . ." Paragraph 7 of the Amended Confirmation Order provides that, "[u]pon the dismissal, with prejudice, of the Adversary Proceeding, the Commonwealth Agent and the COFINA Agent and their respective professionals shall be deemed to have satisfied any and all of their respective obligations in connection with the Adversary Proceeding, and the Commonwealth Agent and the COFINA Agent shall be deemed to have been released from any and all liabilities associated therewith."

15. Moreover, pursuant to Paragraph 29(f) of the Amended Confirmation Order, "[o]n the Effective Date, and in consideration of the Commonwealth-COFINA Dispute Settlement and the resolution of the Interpleader Action, to the fullest extent permissible under applicable law, the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor, solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and pendency and the compromise and settlement of the Interpleader Action and the allocation of funds in accordance with Section 2.1 of the Plan." Amended Confirmation Order, ¶ 29(f).[5] Because assertion of the COFINA Bond seeks to hold the Commonwealth liable for bonds issued by COFINA, such claims arise from or relate to the relationship between the

---

[5] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise." Plan § 1.53.

8

Commonwealth and COFINA. Accordingly, the Commonwealth has been released from all liability for the portions of the COFINA Bond asserting interests in COFINA bonds pursuant to the Settlement Order, Amended Confirmation Order, and the Plan.

      c. *The AFICA Bond*

16. AFICA is a public corporation and government instrumentality of the Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved June 27, 1977 (as amended and supplemented and codified as P.R. Laws Ann. tit. 12, § 1251 *et seq.*). P.R. Laws Ann. tit. 12, § 1254. AFICA facilitates project financing in order to promote the economic development of the Commonwealth, including through the development and construction of new industrial, commercial, tourist, agricultural, educational, medical and environmental control facilities.

17. In 2011, AFICA issued Industrial Revenue Refunding Bonds, 2011 Series A (the "2011 Series A Galeria Bonds"), in the aggregate amount of $59,649,744.50, in order to finance, in part, the operation of certain office and commercial retail space owned and operated by Caparra Hills, Inc. The 2011 Series A Galeria Bonds are payable solely from repayment of a loan agreement entered into between AFICA and Caparra Hills, Inc. The offering statement issued in connection with the 2011 Series A Galeria Bonds states that the bonds "do not constitute an indebtedness of the Commonwealth or of any of its political subdivisions, other than [AFICA], and neither the Commonwealth nor any of its political subdivisions, other than [AFICA], shall be liable thereon." *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Industrial Refunding Bonds, 2011 Series A (Galeria Tower at San Patricio Project), *available at* https://emma.msrb.org/Security/Details/A95ABBB582ECE40E0D6ED039C687C3542.

18. Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed. 11 U.S.C. § 502(b)(1). The First de la Haba Claim purports to assert, in part, an AFICA Bond that is a 2011 Series A Galeria Bond against ERS. AFICA, however, is not a Title III debtor, and is separate, legally distinct entity from the Commonwealth and its subdivisions, including ERS. Indeed, each of the offering statements issued in connection with the AFICA Bonds states that the AFICA Bonds are not a debt of the Commonwealth or any other Title III debtors, including ERS. Moreover, the First de la Haba Claim does not assert a basis for asserting a claim against ERS for bonds issued by AFICA that are neither guaranteed by nor a debt of ERS or any other Title III debtor. Accordingly, neither ERS nor any other Title III debtor is liable for the liabilities associated with the AFICA Bond, and the portion of the First de la Haba claim that purports to assert the AFICA Bond should be disallowed.

    d. *The GO Bond, the PRIDCO Bond, the PBA Bond, and the PRASA Bond*

19. With respect to the GO Bond, the PRIDCO Bond, the PBA Bond, and the PRASA Bond, the associated liabilities would appropriately be asserted, if at all, against the Commonwealth, not ERS. Accordingly, the Debtors respectfully request the remaining, non-duplicative portions of the First de la Haba Claim be reclassified to be asserted against the Commonwealth. The Debtors reserve their right object to the reclassified portions of the First de la Haba Claim on any other grounds whatsoever.

**IV.    The Second de la Haba Response**

20. The Second de la Haba Response also consists of a completed Mailing, in which de la Haba purports to assert liabilities in the amount of $415,000 arising out of bonds. Following the reclassification of the non-duplicative portions of the First de la Haba Claim, the Second de la

10

Haba Claim will assert the same claim amount and same underlying basis for the claim, on behalf of the same creditor, against the same debtor, the Commonwealth, but the First de la Haba Claim will contain additional supporting documentation that is not attached to the Second de la Haba Claim. Accordingly, the Second de la Haba Claim is duplicative of the First de la Haba Claim. Any failure to disallow the Second de la Haba Claim will result in de la Haba potentially receiving an unwarranted double recovery against the Debtors to the detriment of other stakeholders in the Title III Cases. De la Haba will not be prejudiced by the disallowance of the Second de la Haba Claim because she will retain the First de la Haba Claim, which will remain pending against the Commonwealth.

Dated: November 11, 2020
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
Daniel J. Perez-Refojos
USDC No. 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative for the Commonwealth, HTA, and ERS*

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

11

*Co-Attorneys for the Financial Oversight and Management Board for the Puerto Rico, as representative for the Commonwealth, HTA, and ERS*