**Hearing Date**: March 10, 2021 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: December 7, 2020 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------ x

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
| | : |
| As representative of | : Case No. 17-BK-3283 (LTS) |
| | : |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : (Jointly Administered) |
| | : |
| Debtors.[1] | : |

------------------------------------------------------------------ x

### TENTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES <u>FOR THE PERIOD FROM JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020</u>

### SUMMARY COVER SHEET

Name of Applicant: <u>Casillas, Santiago & Torres, LLC</u>

Authorized to Provide Professional Services to: <u>Official Committee of Unsecured Creditors of all Title III Debtors (other than PBA and COFINA) (the "Committee")</u>

Date of retention: <u>July 20, 2017</u>

Period for which compensation and reimbursement is sought: <u>June 1, 2020 through and including September 30, 2020 (the "Application Period")</u>

Amount of interim compensation sought as actual, reasonable, and necessary: <u>$281,132.50</u>

Amount of interim expense reimbursement sought as actual, reasonable, and necessary: <u>$5,736.17</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Are your fee or expense totals different from the sum of previously served monthly statements?
_ Yes X No

Blended rate in this application for all attorneys: $247.44/hour

Blended rate in this application for all timekeepers: $245.85/hour

This is an *interim* application.

The total time expended for fee application preparation for the Interim Fee Period is approximately 31.10 hours, and the corresponding compensation requested is approximately $6,126.70.

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Fees | Requested Fees (90%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 10% Fee Holdback |
|---|---|---|---|---|---|---|---|
| **First Interim Fee Period (July 20, 2017 through August 31, 2017)** | | | | | | | |
| 12/15/2017 | 07/21/2017 - 08/31/2017 | $169,523.00 | $152,570.70 | $6,320.62 | $173,440.00 | $6,320.62 | $0.00 |
| **Total** | | **$169,523.00** | **$152,570.70** | **$6,320.62** | **$173,440.00** | **$6,320.62** | **$0.00** |
| **Second Interim Fee Period (September 1, 2017 through January 31, 2018)** | | | | | | | |
| 03/19/2018 | 09/01/2017 - 01/31/2018 | $444,580.00 | $400,122.00 | $21,160.13 | $444,580.00 | $21,160.13 | $0.00 |
| **Total** | | **$444,580.00** | **$400,122.00** | **$21,160.13** | **$444,580.00** | **$21,160.13** | **$0.00** |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | | |
| 6/25/2018 | 02/01/2018 - 02/28/2018 | $93,937.50 | $84,543.75 | $1,172.10 | $93,937.50 | $1,172.10 | $0.00 |
| 6/25/2018 | 03/01/2018 - 03/31/2018 | $75,088.00 | $67,579.20 | $4,782.51 | $75,088.00 | $4,782.51 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/18/2018 | 04/01/2018 - 05/31/2018 | $125,095.00 | $112,585.50 | $6,097.48 | $125,095.00 | $6,097.48 | $0.00 |
| **Total** | | **$294,120.50** | **$264,708.45** | **$12,052.09** | **$294,120.50** | **$12,052.09** | **$0.00** |
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | | |
| 8/27/2018 | 06/01/2018 - 06/30/2018 | $31,792.00 | $28,612.80 | $983.12 | $31,792.00 | $983.12 | $0.00 |
| 10/8/2018 | 07/01/2018 - 07/31/2018 | $55,587.50 | $50,028.75 | $6,831.08 | $55,587.50 | $6,831.08 | $0.00 |
| 11/16/2018 | 08/01/2018 - 09/30/2018 | $163,382.50 | $147,044.25 | $4,654.42 | $163,267.50 | $4,654.42 | $0.00 |
| **Total** | | **$250,762.00** | **$225,685.80** | **$12,468.62** | **$250,647.00** | **$12,468.62** | **$0.00** |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | | |
| 12/21/2018 | 10/01/2018 - 10/31/2018 | $43,871.50 | $39,484.35 | $1,109.10 | $43,871.50 | $1,109.10 | $0.00 |
| 1/22/2019 | 11/01/2018 - 11/30/2018 | $31,164.00 | $28,047.60 | $3,465.35 | $31,164.00 | $3,465.35 | $0.00 |
| 2/26/2019 | 12/01/2018 - 12/31/2018 | $73,432.50 | $66,089.25 | $1,046.62 | $73,432.50 | $1,046.62 | $0.00 |
| 3/15/2019 | 01/01/2019 - 01/31/2019 | $88,809.00 | $79,928.10 | $1,069.00 | $87,704.00 | $1,069.00 | $0.00 |
| **Total** | | **$237,277.00** | **$213,549.30** | **$6,690.07** | **$236,172.00** | **$6,690.07** | **$0.00** |
| **Sixth Interim Fee Period (February 1, 2019 through May 31, 2019)** | | | | | | | |
| 5/15/2019 | 02/01/2019 - 02/28/2019 | $93,967.00 | $84,570.30 | $4,332.02 | $92,930.00 | $4,332.02 | $0.00 |
| 6/4/2019 | 03/01/2019 - 03/31/2019 | $100,412.00 | $90,370.80 | $9,970.50 | $100,412.00 | $9,970.50 | $0.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/3/2019 | 04/01/2019 - 04/30/2019 | $143,421.00 | $129,078.90 | $1,046.31 | $141,534.00 | $1,046.31 | $0.00 |
| 7/15/2019 | 05/01/2019 - 05/31/2019 | $160,296.50 | $144,266.85 | $970.49 | $160,296.50 | $970.49 | $0.00 |
| **Total** | | **$498,096.50** | **$448,286.85** | **$16,319.32** | **$495,172.50** | **$16,319.32** | **$0.00** |
| **Seventh Interim Fee Period (June 1, 2019 through September 30, 2019)** | | | | | | | |
| 8/22/2019 | 06/01/2019 - 06/30/2019 | $184,904.50 | $166,414.05 | $4,880.90 | $184,745.00 | $4,880.90 | $0.00 |
| 9/27/2019 | 07/01/2019 - 07/31/2019 | $174,819.50 | $157,337.55 | $4,727.49 | $174,819.50 | $4,727.49 | $0.00 |
| 11/5/2019 | 08/01/2019 - 08/31/2019 | $142,114.00 | $127,902.60 | $892.94 | $142,114.00 | $892.94 | $0.00 |
| 11/14/2019 | 09/01/2019 - 09/30/2019 | $168,111.50 | $151,300.35 | $2,428.26 | $167,571.50 | $2,428.26 | $0.00 |
| **Total** | | **$669,949.50** | **$602,954.55** | **$12,929.59** | **$669,250.00** | **$12,929.59** | **$0.00** |
| **Eighth Interim Fee Period (October 1, 2019 through January 31, 2020)** | | | | | | | |
| 12/20/2019 | 10/01/2019 - 10/31/2019 | $190,159.00 | $171,143.10 | $6,048.82 | $189,873.76 | $6,048.82 | $0.00 |
| 1/10/2020 | 11/01/2019 - 11/30/2019 | $137,688.50 | $123,919.65 | $4,921.19 | $137,481.97 | $4,921.19 | $0.00 |
| 2/28/2020 | 12/01/2019 - 12/31/2019 | $108,319.50 | $97,487.55 | $269.24 | $108,157.02 | $269.24 | $0.00 |
| 3/12/2020 | 01/01/2020 - 01/31/2020 | $123,391.00 | $111,051.90 | $1,760.40 | $123,205.91 | $1,760.40 | $0.00 |
| **Total** | | **$559,558.00** | **$503,602.20** | **$12,999.65** | **$558,718.66** | **$12,999.65** | **$0.00** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Ninth Interim Fee Period (February 1, 2020 through May 31, 2020)** | | | | | | | |
| 4/23/2020 | 02/01/2020 - 02/29/2020 | $135,274.50 | $121,747.05 | $715.53 | $119,920.84 | $715.53 | $13,527.45 |
| 5/14/2020 | 03/01/2020 - 03/31/2020 | $116,499.00 | $104,849.10 | $4,599.42 | $103,276.36 | $4,599.42 | $11,649.90 |
| 6/4/2020 | 04/01/2020 - 04/30/2020 | $71,601.50 | $64,441.35 | $773.90 | $63,474.73 | $773.90 | $7,160.15 |
| 7/9/2020 | 05/01/2020 - 05/31/2020 | $77,966.50 | $70,169.85 | $74.90 | $69,117.30 | $74.90 | $7,796.65 |
| **Total** | | **$401,341.50** | **$361,207.35** | **$6,163.75** | **$355,789.23** | **$6,163.75** | **$40,134.15** |
| **Tenth Interim Fee Period (June 1, 2020 through September 30, 2020)** | | | | | | | |
| 8/13/2020 | 06/01/2020 - 06/30/2020 | $74,223.50 | $66,801.15 | $42.20 | $65,799.13 | $42.20 | $7,422.35 |
| 9/11/2020 | 07/01/2020 - 07/31/2020 | $85,800.00 | $77,220.00 | $1,903.49 | $76,061.70 | $1,903.49 | $8,580.00 |
| 10/8/2020 | 08/01/2020 - 08/31/2020 | $62,341.50 | $56,107.35 | $402.92 | $55,265.74 | $402.92 | $6,234.15 |
| 10/29/2020 | 09/01/2020 - 09/30/2020 | $58,767.50 | $52,890.75 | $3,387.56 | $0.00 | $0.00 | $5,876.75 |
| **Total** | | **$281,132.50** | **$253,019.25** | **$5,736.17** | **$197,126.57** | **$2,348.61** | **$28,113.25** |

**PRIOR INTERIM FEE APPLICATIONS**

| Period | | Requested | | Approved | |
|---|---|---|---|---|---|
| **Date [Docket No.]** | **Interim Fee Period ("IFP") Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 12/15/2017 [Docket No. 2079] | 07/21/2017 - 08/31/2017 | $169,523.00 | $6,320.62 | $173,440.00 | $6,320.62 |
| 03/19/2018 [Docket No. 2757] | 09/01/2017 - 01/31/2018 | $444,580.00 | $21,160.13 | $444,580.00 | $21,160.13 |
| 07/16/2018 [Docket No. 3562] | 02/01/2018 - 05/31/2018 | $294,120.50 | $12,052.09 | $294,120.50 | $12,052.09 |
| 11/16/2018 [Docket No. 4329] | 06/01/2018 - 09/30/2018 | $250,762.00 | $12,468.62 | $250,647.00 | $12,468.62 |
| 03/18/2019 [Docket No. 5818] | 10/01/2018 - 01/31/2019 | $237,277.00 | $6,690.07 | $236,172.00 | $6,690.07 |
| 07/15/2019 [Docket No. 8011] | 02/01/2019 - 05/31/2019 | $498,096.50 | $16,319.32 | $495,172.50 | $16,319.32 |
| 11/15/2019 [Docket No. 9220] | 06/01/2019 - 09/30/2019 | $669,949.50 | $12,929.59 | $669,250.00 | $12,929.59 |
| 03/16/2020 [Docket No. 12397] | 10/01/2019 - 01/31/2020 | $559,558.00 | $12,999.65 | $559,558.00 | $12,999.65 |
| 07/15/2020 [Docket No. 13684] | 02/01/2020 - 05/31/2020 | $401,341.50 | $6,163.75 | $401,301.50 | $6,163.75 |
| **Total fees and expenses approved by interim orders to date:** | | | | **$3,524,241.50** | **$107,103.84** |

Number of professionals with time included in this application: <u>12</u>

Number of professionals billing fewer than 15 hours to the case in this application: <u>6</u>

If applicable, number of professionals in this application not included in a staffing plan approved by the client: <u>N/A</u>

If applicable, difference between fees budgeted and compensation sought for this period: <u>N/A</u>

Are any timekeeper's hourly rates higher than those charged and approved upon retention: <u>No</u>

**Hearing Date**: March 10, 2021 at 8:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: December 7, 2020 at 3:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------- x

In re:                                                       :
                                                             :
THE FINANCIAL OVERSIGHT AND          : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    : Title III
                                                             :
as representative of                               : Case No. 17-BK-3283 (LTS)
                                                             :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,    : (Jointly Administered)
                                                             :
Debtors.[1]                                         :

-------------------------------------------------------------------- x

## TENTH INTERIM APPLICATION OF CASILLAS, SANTIAGO & TORRES, LLC, LOCAL COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020

## TABLE OF CONTENTS

Preliminary Statement.................................................................................................4

Background .................................................................................................................11

Compensation and Reimbursement Request ...........................................................16

Summary of Services .................................................................................................19

      General (Matter ID: 396-00002).........................................................20
      PREPA (Matter ID: 396-00006).........................................................23
      HTA (Matter ID: 396-00007) .............................................................26
      ERS (Matter ID: 396-00008) ..............................................................27
      Fee Application (Matter ID: 396-00015).............................................29
      Avoidance Actions (Matter ID: 396-00018).......................................29

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Attendance at Hearings ...................................................................................................33

Report on Matters Jointly Pursued by Oversight Board and Committee.....................................34

Actual and Necessary Disbursements ...........................................................................36

Requested Compensation Should be Allowed................................................................37

Notice ...............................................................................................................................38

Conclusion ........................................................................................................................39

## SUPPORTING DECLARATION, EXHIBITS AND SCHEDULE

**Supporting Declaration of Juan J. Casillas-Ayala, Esq.**

**Exhibits**

A.  Customary and Comparable Compensation Disclosures with Fee Applications

B.  Summary of Timekeepers Included in this Application for Fee Period

C.  Budgets and Staffing Plans for Application Period

       C-1.    Budgets

       C-2.    Staffing Plans

D.  Summary of Compensation Requested by Project Category as Compared to Budget

       D-1.    Summary of Compensation Requested by Project Category as Compared to Budget

           Further Breakdown of Compensation Requested by Project Category and by Matter

       D-2.    Summary of Expenses by Category

E.  Breakdown of Compensation and Expense Requested by Debtor

F.  List of Professionals by Matter

G.  Monthly Statements Covered in Application

**Schedule**

Proposed Order

**To the Honorable United States District Judge Laura Taylor Swain:**

Casillas, Santiago & Torres, LLC ("CST"), Local Counsel to the Official Committee of Unsecured Creditors (the "Committee"), for its tenth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA")[2], section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by Section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by CST for the period from June 1, 2020 through and including September 30, 2020 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application Period, CST continued to assist Paul Hastings in handling numerous matters that were of critical importance to the interests of the Debtors and their creditors, including with respect to matters related to the Amended Commonwealth Plan of Adjustment filed by the Financial Oversight and Management Board (the "Oversight Board") on February 28, 2020 (the "Amended Plan") and the related Disclosure Statement (the "Disclosure Statement"). As with the second half of the prior Application Period, CST's scope of work decreased significantly as compared to its work prior to the onset of the COVID-19 pandemic and the adjournment of the hearing on the Disclosure Statement and related deadlines (the "COVID-19 Adjournment"). Furthermore, litigation related to the PREPA restructuring support agreement (the "PREPA RSA")

---

[2] References to PROMESA are references to 48 U.S.C. §§2101 *et. seq.*

and the motion to approve same (the "PREPA RSA Motion") was likewise put on hold in the
aftermath of the COVID-19 health crisis. As such, during the Application Period, the Committee
focused its attention on the litigation that continued to move forward, including the Committee's
challenges to $3 billion of ERS bondholder claims (the "ERS Claim Objections") and the litigation
related to the claims of certain holders of revenue bonds issued by the Highways and
Transportation Authority ("HTA") and certain other instrumentalities (the "Revenue Bonds") and
holders and insurers of such bonds (the "Revenue Bondholders"). Given the narrower focus of
CST's work, the monthly average of CST's fees during the Application Period was 30% lower
than the monthly average of CST's fees during the prior 38.35 months of these Title III cases.

2.     During the Application Period, CST also collaborated with and assisted Paul
Hastings with work related to the Committee's request for relief from the stay of the Committee's
objection (the "GO Priority Objection") to the purported priority of the claims asserted by holders
of bonds issued or guaranteed by the Commonwealth ("GO Bonds," and holders of such bonds,
the "GO Bondholders"). CST's collaboration and related work was crucial because if the GO
Priority Objection is successful it will entitle general unsecured creditors (who, under the
Amended Plan would receive a meager recovery of approximately 3.9%) to be treated at least *pari
passu* with the GO Bondholders for whom the Amended Plan provides generous recoveries.
Among other things, CST assisted and collaborated with Paul Hastings with the Committee's
motion seeking relief from the litigation stay (the "Litigation Stay Relief Motion"), the motion to
expedite the Litigation Stay Relief Motion, and the reply filed support thereof. In connection with
the aforementioned, counsel for the Committee also analyzed the status reports filed by the
Oversight Board, especially as they related to the status of negotiations between the Oversight
Board and Commonwealth Creditors.

3.      During the Application Period and in addition to its plan-related work and its efforts to move the GO Priority Objection forward, CST also represented the Committee and assisted Paul Hastings in connection with the relief from stay motions filed by certain Revenue Bondholders (the "Revenue Bond Stay Relief Motions") and adversary proceedings challenging Revenue Bondholder Claims (the "Revenue Bond Adversary Proceedings") with respect to three (3) separate instrumentalities, namely, the Puerto Rico Highways and Transportation Authority, the Puerto Rico Convention Center District Authority and the Puerto Rico Infrastructure Financing Authority. In the interest of minimizing fees, the Committee did not prepare its own briefs in these matters. Rather, CST collaborated with Paul Hastings in providing counsel to the Oversight Board with informal comment to the Oversight Board's draft replies in support of its motions for summary judgment in the Revenue Bond Adversary Proceedings and assisted Paul Hastings with the Committee's limited joinders in these replies. CST also collaborated with Paul Hastings in providing counsel to the Oversight Board with informal comments to the Oversight Board's objection to the Revenue Bondholders' supplemental brief in support of the Revenue Bond Stay Relief Motions and assisted Paul Hastings with the preparation of the Committee's limited joinder in said objection.

4.      During the Application Period, CST also devoted considerable time to the ERS Claims Objections and related adversary proceedings, which continued to move forward during the Application Period. CST collaborated with and assisted Paul Hastings, as requested, with the Committee's motion for summary judgment and related statement of undisputed facts and the Committee's limited joinders in support of the Oversight Board's motion to disallow the ERS bondholders' claims and the Oversight Board's opposition to the bondholders' motion for judgment on the pleadings.

5.      In both the Revenue Bonds-related litigation and ERS Claim Objection litigation, the Committee sought to minimize fees, to the greatest extent practicable, by filing limited joinders to other parties' pleadings whenever possible. Likewise, whenever it was necessary for CST to conduct work concerning to the Committee's filing of stand-alone pleadings (such as the Committee's motion for summary judgment in the ERS Claim Objection litigation), counsel for the Committee avoided duplication of efforts by focusing on issues that were not the focus of pleadings filed by other aligned parties.

6.      Similarly, during the Application Period CST provided assistance to Paul Hastings during the Application Period and represented the Committee with respect to PREPA's Title III case – albeit at a lower rate of activity compared to pre-COVID fee application periods. This work was critical given the continuing adjournment of the PREPA RSA Motion and the Committee's efforts to move forward with the Committee's objection to PREPA bond claims, which had been denied without prejudice on the grounds that the PREPA RSA Motion was pending. Among others, CST assisted and collaborated with Paul Hastings in connection with the Committee's motion to terminate the PREPA RSA Motion and the reply in support thereof. CST also provided counsel to the Committee in connection with the publication of the transmission and distribution services agreement (the "LUMA Energy Contract") between PREPA and LUMA Energy, LLC and LUMA Energy ServCo, LLC (collectively, "LUMA Energy") and the Committee's response to PREPA's motion for payment of administrative expenses to LUMA Energy.

7.      Also, during the Application Period, CST continued to assist Paul Hastings and advise the Committee on all issues bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to protect their rights, including by:

a. reviewing the Oversight Board's reports regarding the designation and status of claims in connection with the alternative dispute resolution process ("ADR") and the administrative claims reconciliation process ("ACR");

b. continuing to analyze the nature and extent of the unsecured claims pool, including conducting exhaustive research on matters related to local law, as well as reviewing omnibus claims objections and related responses;

c. assisting Paul Hastings with submitting comments regarding the Court's proposed modifications to procedures applicable to disclosures under Rule 2019;

d. attending Committee meetings and communicating regularly with Committee members regarding ongoing matters in the Title III cases;

e. monitoring hearings, pleadings filed, and orders entered in the Title III cases and related adversary proceedings;

f. continuing to represent the Committee as counsel in connection with the ongoing Informal Resolution Process while attempting to resolve in excess of 80 garden variety avoidance actions while participating in negotiations concerning multiple preference claims, as stated below.

8.      Additionally, during the Application Period, CST continued to represent the Committee with respect to the "garden-variety" avoidance actions initiated against over 340 vendors of the Commonwealth of Puerto Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect to PREPA [Adv. Proc. Nos. 19-380 to 19-387] seeking to avoid certain fraudulent transfers made to fuel oil suppliers of PREPA and related parties.

9.      CST is counsel for the Committee and serves as primary attorney point of contact in the Informal Resolution Process established by the Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily having to incur in litigation costs and expenses. In connection with the Informal Resolution Process, CST continued to work closely with DiCicco Gulman and Company LLC ("DGC"), the financial advisory firm to the Special Claims Committee, during the Application Period in the gathering of information and interfacing with

vendors and their counsel and analyzing select documents and data submitted by vendors and counsel, while simultaneously responding to related communications and requests from vendors and their counsel and pursuing and conducting settlement negotiations in connection with approximately fifty (50) 90-day preference claims. Additionally, during the Application Period CST collaborated and worked closely with Brown Rudnick, counsel for the Special Claims Committee, with analysis of local law matters pertaining to the Avoidance Actions, and review of omnibus motions related to the Informal Resolution Process, as requested. Paul Hastings and Zolfo Cooper continued to provide limited assistance in matters related to the analysis of the data submitted by vendors as part of the Informal Resolution Process in order to recommend whether to pursue or dismiss the multiple garden variety avoidance actions as part of the Informal Resolution Process and to discuss analysis and settlement parameters concerning approximately fifty (50) 90-day preference claims.

10.     CST has continued to perform these services in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. For example, the work performed by CST was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Moreover, whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel. In addition, a small core group of CST attorneys was utilized for most of the work in these Title III cases to minimize the costs of intra-CST communication and education about the cases.

11.     Notably, just one CST attorney attended the various hearings held during the Application Period, thereby minimizing the time billed on these hearings. Likewise, generally, CST professionals do not travel for Court appearances outside of PR only though the remote video-conference service in San Juan.

12.     In addition, as further detailed below, CST along with Paul Hastings has taken numerous steps to provide services in the most efficient manner possible in connection with the adversary proceedings in which the Committee is acting as co-plaintiff with the Oversight Board or the Special Claims Committee. For example, the co-plaintiffs have sought, and obtained, temporary stays of numerous of these adversary proceedings, while the Committee is represented in the garden-variety avoidance actions by CST, and in certain other litigation by special litigation counsel, Genovese, Joblove & Battista, P.A. ("GJB").

13.     CST respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases. The results obtained to date have benefited not only the Committee but also the Debtors and their creditors. Accordingly, in light of the nature and complexity of these Title III cases, CST's charges for professional services performed and expenses incurred are reasonable under applicable standards. For all these reasons, CST respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

14.     This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C.*

*§330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines"). To the extent necessary, CST requests a waiver for cause shown of any requirements not met by this Application.[3]

15.     In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

- Exhibit B contains a summary of CST's timekeepers included in this Application.

- Exhibit C-1 contains the budgets for CST's services during the application period

- Exhibit C-2 contains the staffing plans for CST's services during the application period

- Exhibit D-1 contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the application period, and (b) a further breakdown of the compensation requested by project category and matter number.

- Exhibit D-2 contains a summary of the expenses requested by project. An itemized schedule of all such expenses is included in CST's monthly statements.

- Exhibit E contains a breakdown of compensation and expenses requested by Debtor.

- Exhibit F contains a list of the professionals providing services during the application period by matter.

- Exhibit G includes the monthly fee statements covered in this application. Attached is copy of the monthly statements for CST's services during the Application Period, which include detailed time records and narrative descriptions of the services rendered by each timekeeper.

- Schedule 1 includes the proposed order approving this application.

## BACKGROUND

---

[3] The Committee and CST reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

16.    On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304 (a) of PROMESA (the "Commonwealth Title III Case"). Thereafter, the Oversight Board commenced a title III case for each of COFINA, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS Title III Case"), the Puerto Rico Highways and Transportation Authority ("HTA Title III Case"), and the Puerto Rico Electric Power Authority ("PREPA Title III Case") (and together with the Commonwealth Title III Case, the "Title III Cases").[4] By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

15.    On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338]. On July 21, 2017, the Committee selected CST as local counsel to the Committee.

16.    On August 4, 2017, the Committee filed an application to retain and employ CST, effective July 21, 2017 [Docket No. 884] (the "Retention Application"). By order of this Court entered October 6, 2017 [Docket No. 1414] (the "Retention Order"), incorporated herein by this reference, CST's retention as Local Counsel to the Committee was approved effective as of July 21, 2017.

17.    On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Interim Compensation Order").[5]

---

[4] Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.
[5] The Interim Compensation Order was amended on November 8, 2017, to reflect certain changes requested by the Fee Examiner.

18.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case. CST's retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.

19.     The Retention Order authorized CST to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to Sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct. The Retention Order further provides that "pursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA Section 301(a), the fees and expenses of CST under this Order  shall be  an administrative  expense." In addition, as provided in the Retention  Order,  the  Oversight Board  has  consented  to  the  Debtors'  payment  of  CST allowed fees and expenses.

20.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing A Fee Examiner and Related Relief* (the "Fee Examiner Order") [Docket No. 1416]. The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

21.     On December 15, 2017, CST filed its first interim fee application with respect to the period from July 21, 2017 through August 31, 2017 [Docket No. 2079] (the "First Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application. On March 7, 2018, the court approved the First Interim Fee Application.

22.     On March 19, 2018, CST filed its second interim fee application with respect to the period from September 1, 2017 through January 31, 2018 [Docket No. 2757] (the "Second Interim Fee Application"). In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application. On March 7, 2018, the court approved the Second Interim Fee Application.

23.     On June 6, 2018, the Court enter the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the Second Interim Compensation Order").

24.     On July 16, 2018, CST filed its third interim fee application, covering the period from February 1, 2018 through May 31, 2018 [Docket No. 3562]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. On March 14, 2019, the Court approved the Third Interim Fee Application.

25.     On November 16, 2018, CST filed its fourth interim fee application, covering the period from June 1, 2018 through September 30, 2018 [Docket No. 4329]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[6] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

---

[6] The agreed-upon adjustment consisted of a fee reduction in the amount of $115.00.

14

26.     On March 18, 2019, CST filed its fifth interim fee application, covering the period from October 1, 2018 through January 31, 2019 [Docket No. 5818]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Fifth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[7] On June 26, 2019, the Court approved the Fifth Interim Fee Application, with the agreed-upon adjustments.

27.     On July 15, 2019, CST filed its sixth interim fee application, covering the period from February 1, 2019 through May 31, 2019 [Docket No. 8011]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Sixth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[8] On October 29, 2019, the Court approved the Sixth Interim Fee Application, with the agreed-upon adjustments.

28.     On November 15, 2019, CST filed its seventh interim fee application, covering the period from June 1, 2019 through September 30, 2019 [Docket No. 9220]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Seventh Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[9] On March 6, 2020, the Court approved the Seventh Interim Fee Application, with the agreed-upon adjustments.

---

[7] The agreed-upon adjustment consisted of a fee reduction in the amount of $1,105.00.
[8] The agreed-upon adjustment consisted of a fee reduction in the amount of $2,924.00.
[9] The agreed-upon adjustment consisted of a fee reduction in the amount of $699.50.

29.     On March 16, 2020, CST filed its eighth interim fee application, covering the period from October 1, 2019 through January 31, 2020 [Docket No. 12397]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Eighth Interim Fee Application. No adjustments were recommended by the Fee Examiner for this period.

30.     On July 15, 2020, CST filed its ninth interim fee application, covering the period from February 1, 2020 through May 31, 2020 [Docket No. 13684]. All services for which compensation is requested were performed for or on behalf of the Committee. In accordance with the Interim Compensation Order, CST received a preliminary report from the Fee Examiner with respect to the Ninth Interim Fee Application. Per the Fee Examiner's request, CST agreed to certain minimal adjustments in its requested fees and expenses.[10] On October 26, 2020, the Court approved the Ninth Interim Fee Application, with the agreed-upon adjustments.

31.     This is CST's tenth interim fee application, covering the period from June 1, 2020 through September 30, 2020. All services for which compensation is requested were performed for or on behalf of the Committee.

## COMPENSATION AND REIMBURSEMENT REQUEST

32.     By this Application, CST seeks from the Debtors (a) compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $281,132.50; and (b) expense reimbursements in the aggregate amount of $5,736.17. These amounts are allocated among the Commonwealth Title III Case, the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

---

[10] The agreed-upon adjustment consisted of a fee reduction in the amount of $40.00.

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $175,947.50 | $5,059.27 | $181,006.77 |
| PREPA Title III Case | $46,798.50 | $423.40 | $47,221.90 |
| HTA Title III Case | $7,364.50 | $244.60 | $7,609.10 |
| ERS Title III Case | $51,022.00 | $8.90 | $51,030.90 |
| **Total** | **$281,132.50** | **$5,736.17** | **$286,868.67** |

33.     The Committee has approved the amounts requested by CST for services performed and expenses incurred in each of the monthly statements submitted that were or are hereby being submitted concurrently to, among others, the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee, during the Application Period. All services for which compensation is requested herein were performed for or on behalf of the Committee. Moreover, as detailed on Exhibit D hereto, fees incurred by CST during the Application Period were well below the monthly budgets.

34.     As of today, CST has not been paid any amounts pertaining to its invoices for September 2020, for which it requests payment pursuant to this Fee Application.

35.     Also, to date, CST has received payments totaling $199,475.18 for services rendered during the Application Period excluding September 2020, which amount consists of $197,126.57 (representing 90% of the fees for services invoiced during the period of June 1, 2020 through August 31, 2020) and $2,348.61 (representing 100% of expenses invoiced for the same period). As of the date of this Application, the amount of $84,391.56 remains unpaid.

36.     Other than payments made in accordance with the Interim Compensation Order, CST has received no payments and no promises of payment from any source of services rendered during the Application Period.

37.     By this Application, CST requests payment of all outstanding fees and expenses for services rendered during the Application Period.

38.     There is no agreement or understanding between CST and any other person other than the attorneys, employees, and staff of CST, for the sharing of compensation to be received for services rendered in these cases.

39.     CST maintains computerized records, in the form of monthly statements, of the time spent by all of CST's attorneys and paraprofessionals in connection with its representation of the Committee. The monthly statements are in the same form regularly used by CST to bill its clients for services rendered, and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

40.     The fees charged by CST in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period. The rates CST charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates CST charges for professional and paraprofessional services rendered in comparable non-bankruptcy related matters. Moreover, when CST's professionals and paraprofessionals work on non-bankruptcy matters, the firm generally charges their standard rate. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in the Puerto Rico legal market.

41.    CST's rates are set at a level designed to fairly compensate CST for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expense. CST operates in the Puerto Rico legal services market in which rates are driven by multiple factors relating to the individual lawyer, their area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors. Accordingly, CST set its rates for attorneys and paraprofessionals within the firm by reference to market information and market adjustments by firms considered to be industry peers. Based on this and the reviews of contemporaneous time records and fee applications filed in other cases, CST endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

42.    CST's professional services during the Application Period required an aggregate expenditure of 1,143.50 recorded hours by CST's attorneys and paraprofessionals, broken down as follows: Partners (737.50 hours), Counsels (2.50 hours), Junior Partners (53.90 hours), Senior Associates (329.40 hours), Associates (8.30 hours), and Paraprofessionals (11.90 hours). During the Application Period, CST's billing rates for attorneys rendering services in this matter ranged from $170.00 to $270.00 per hour.

43.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed before the preparation of this Application, or CST has for any other reason not sought compensation or reimbursement with respect to such services or expenses, CST reserves the right to request additional compensation for such services, and reimbursement of such expenses, in a supplemental or future application.

**SUMMARY OF SERVICES**

44.     During the Application Period, CST assisted and advised the Committee on a regular basis regarding legal matters relating to the restructuring of the Debtors, including related adversary proceedings, and all other matters arising in the performance of the Committee's duties. In addition, CST has prepared various motions, applications, proposed orders, and other pleadings submitted to the Court for consideration, and has performed the necessary professional services that are described below and in the monthly statements attached hereto as Exhibit F.[11] For ease of reference and transparency purposes, CST created several matter numbers for its representation of the Committee. The matter numbers are divided by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|-----------|-------------|
| 396-00002 | General |
| 396-00003 | COFINA |
| 396-00004 | Communications w/ Creditors/ Website (other than Committee Members) |
| 396-00005 | Plan Fiscal Analysis |
| 396-00006 | PREPA |
| 396-00007 | HTA |
| 396-00008 | ERS |
| 396-00009 | Other Adversary Proceedings |
| 396-00010 | Mediation |
| 396-00011 | GO Bond Debt Issues |
| 396-00012 | Document Review |
| 396-00013 | GDB |
| 396-00014 | PBAPR |
| 396-00015 | Fee Application |
| 396-00016 | Analysis of Kobre & Kim's Puerto Rico Debts Reports |
| 396-00017 | Commonwealth Claims Review |
| 396-00018 | Avoidance Actions |

## I.      General (Matter ID: 396-00002)

---

[11] The description of services in this Application is limited to those matters in which CST provided 5 or more hours of service during the Application Period.

(a)     Case Administration (Task Code: B110)

      Hours:     13.70        Fees:   $3,282.50

45.     During the Application Period, CST, along with Paul Hastings, continued to advise the Committee on general case administration. In order to efficiently track deadlines, organize documents, and manage work streams, CST maintained a global task list and case calendar, including a tracking chart for all adversary proceedings and non-Title III litigation. To minimize duplication of services, CST developed procedures for allocating responsibilities among various CST team members.

46.     In addition, during the Application Period, CST continued to implement interim and long-term strategies to maximize recoveries for general unsecured creditors and held internal team conference calls and occasional meetings to discuss the status of the Title III Cases and to manage work streams.

47.     Furthermore, along with Paul Hastings, CST executed a variety of tasks related to case administration including, among other things, translations, requests for transcripts of court proceedings, handling of logistics prior to local meetings and/or hearings, creation of information packages for meetings and/or public dissemination, research and analysis of local law, and provide status reports of current events and recent developments that affect the legal issues litigated.

(b)     Pleading Reviews (Task Code: B113)

      Hours:     197.60        Fees:   $48,760.00

48.     During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST took into account various crucial issues like the highly contested Expense Claim and Lift Stay litigations prosecuted by a number of creditors, which

includes the high-profile matters related to the PRIFA Rum Tax, CCDA Hotel Tax and HTA Bond Revenues; the GO Priority litigation; the developing Municipal Revenue Collection Center Act 29 litigation; the objection litigation related to certain Proofs of Claim; and the continuing developments as to the Board's Amended Plan of Adjustment and the Disclosure Statements related thereto.

49.     CST also kept abreast on the issues on appeal before the First Circuit Court of Appeals and Supreme Court.

(c)     <u>Meeting of and Communications with Creditors (Task Code: B150)</u>

Hours:     24.40          Fees:   $6,588.00

50.     During the Application Period, CST kept the Committee apprised of relevant developments in the Title III Cases, related adversary proceedings, mediation process, and current events – local and mainland, that have an effect on the Title III proceedings. Mainly, CST participated in various telephone conferences and communications, and assisted in the preparation of various documents for the Committee for the same purposes.

(e)     <u>Court Hearings (Task Code: B155)</u>

Hours:     13.70          Fees:   $3,611.50

51.     During the Application Period, CST attended as local counsel to all hearings that Paul Hastings attended. To minimize costs, only one CST attorney appeared by telephone in the hearings.

In preparation for these hearings, CST reviewed relevant issues raised in the parties' pleadings and hearing agendas.

(f)     <u>Other Contested Matters (Task Code: B190)</u>

Hours:     53.70          Fees:   $13,282.00

52.     During the Application Period, CST aided Paul Hastings conducting research on various first-impression issues of Puerto Rico Law. Furthermore, CST assisted Paul Hastings in the analysis of a wide variety of matters in these Title III proceedings, such as: proposed legislation and legislative commission investigations, fiscal plans, cash flow and restriction analysis, liquidity, and mediation procedures. CST's analysis and extensive research was instrumental in developing the Committee's strategy for these matters, including in the preparation of the Committee's response to contesting pleadings.

(g)     General Litigation (Task Code: B191)

        Hours:     56.70        Fees:   $14,873.00

53.     During the Application Period, CST aided Paul Hastings in various tasks, such as research and analysis of legal issues in connection with electoral limitations and prohibitions, proofs of claims as to salary claims, and government contracting procedures. All this in addition to CST's ongoing assistance with the matters associated with the lift of stay to pursue GO Bond Priority Objections, the lift of stay on the PRCDA, HTA and PRIFA revenue bond litigation, the proposed amended plan of adjustment, and tolling stipulations. CST provides unique specialized insight into the local issues that have an effect on the litigation.

## II.     PREPA (Matter ID 396-00006)

54.     During the Application Period, CST assisted Paul Hastings in connection with the September 16th, 2020 omnibus hearing, held remotely, at which Paul Hastings addressed the Court in connection with the Committee's limited objection to the motion for administrative expenses related to the LUMA Energy Contract. In addition, CST observed the July 2020 hearing before the Natural Resources Committee of the US House of Representatives regarding PREPA's

transformation and the September 2020 hearing before the Puerto Rico House of Representatives regarding the LUMA Energy Contract.

55.     During the Application Period, CST assisted Paul Hastings with the analysis of legal issues, pleadings, and other documents in connection with PREPA's rejection of certain power purchase and operating agreements and with related communications with advisors to PREPA and interested parties.

56.     During the Application Period, CST continued assisting Paul Hastings in connection with the Committee's appeal of the Court's January 2020 order terminating (without prejudice) the Committee's objection to PREPA bond claims, including assisting with analysis of issues with respect to the stay of the appeal. CST also assisted with the analysis of the impact on the PREPA bond claims of the Court's decisions with respect to the Revenue Bond stay relief motions and the ERS lien scope litigation.

57.     During the Application Period, CST continued to assist and represent the Committee with respect to the PREPA RSA Motion. Among other things, CST collaborated and assisted Paul Hastings in connection with the Committee's motion to terminate the PREPA RSA Motion and the reply in support, as well as related discovery matters. In connection with this work, CST assisted Paul Hastings with the analysis of legal issues related to the motion to terminate the PREPA RSA Motion and review of PREPA's status reports. This was critical to the Committee's efforts to pursue its objection to the claims of PREPA bondholders, which objection had been denied without prejudice on the grounds that the PREPA RSA Motion was pending.

58.     CST also assisted with counseling the Committee in connection with its response to PREPA's motion for payment of administrative expenses to LUMA Energy. CST collaborated

with Paul Hastings in connection with the Committee's limited objection to the motion and related discovery matters.

59.    During the Application Period, CST also analyzed PREPA's LUMA Energy Contract with is contemplated to be a key element of PREPA's transformation. CST collaborated with Paul Hastings and Zolfo Cooper to advise the Committee regarding the financial and legal ramifications of the LUMA Energy Contract.

(a)    <u>Pleadings Review (Task Code: B113)</u>

Hours:    40.10    Fees:   $10,379.00

62.    During the Application Period, CST reviewed a n d  a n a l y z e d  various pleadings to be adequately prepared to provide a comprehensive legal analysis of the various matters litigated and to establish related strategy with Paul Hastings attorneys. This in compliance with the applicable Rules of Professional Conduct. In doing so, CST considered crucial and highly contested issues like the LUMA Energy Administrative Expense Motion and the objections thereto, PREPA's attempts at assuming and rejecting certain contracts, and their respective discovery-related litigations, and the Committee's attempt at terminating PREPA's RSA.

(b)    <u>Other Contested Matters (Task Code: B190)</u>

Hours:    99.40    Fees:   $25,057.00

65.    During the Application Period, CST aided Paul Hastings researching a variety of subjects in the PREPA Title III proceeding, predominantly in the LUMA Energy Administrative Expense Motion and the Committee's Motion to Terminate PREPA's 9019 Motion. CST's analysis and extensive research was instrumental in developing the Committee's strategy in the preparation of the Committee's response to contesting pleadings related to the LUMA Energy

Administrative Expense Motion and the Committee's Motion to Terminate PREPA's 9019 Motion, in addition to other contested matters in a number of other forums.

(c)      General Litigation (Task Code: B191)

>          Hours:      36.60          Fees:   $9,822.00

66.      CST was heavily involved with Paul Hastings and special litigation counsel from GJB in the litigious discovery connected to the LUMA Energy Administrative Expense Motion and to the Motion to Terminate PREPA's 9019 Motion. CST's particular expertise in local law and government groundwork, provided analysis paramount in the establishment of the Committee's strategy.

## III.      HTA (Matter ID: 396-00007)

(a)      Pleadings Review (Task Code: B113)

>          Hours:      13.90          Fees:   $3,683.00

67.      During the Application Period, CST continued to represent the Committee as co-plaintiff along with the Oversight Board, in the Revenue Bond Adversary Proceeding No. 20-007, challenging the claims of certain holders and/or insurers of Revenue Bonds against HTA. As part of the tasks involved in this matter, CST reviewed pleadings associated with this and other contentions to the Debtor, in order to provide a more rounded and comprehensive assistance to Paul Hastings. This, of course, in compliance with the applicable Rules of Professional Conduct. Some of the other proceedings in review consisted of challenges to the automatic stay, trustee appointments, and tolling stipulations.

(b)      General Litigation (Task Code: B191)

>          Hours:      6.90          Fees:   $1,863.00

68.     During the Application Period, CST was involved in the legal analysis used for the Committee's intervention and position in the Monoline Insurers' ongoing litigation for relief from the Title III's automatic stay specifically targeting HTA's tax revenues. More substantially, CST was also involved in the analysis of the Monoline Insurers' attempt at seeking a Trustee appointment.

## IV.     ERS (Matter ID: 396-00008)

69.     During the Application Period, CST continued assisting Paul Hastings in general litigation matters related to the ERS bond challenges by analyzing relevant legal issues arising in the ERS-related litigation. CST also continued to collaborate with and assist Paul Hastings in connection with the litigation of the ERS Claim Objections and related adversary proceedings in which the Committee, the Oversight Board, the Special Claims Committee, and the Retiree Committee (collective, the "ERS Co-Objectors") are challenging over $3 billion of ERS bonds both as invalid based on the theory that they were issued ultra vires and, to the extent they are not invalid, as having limited liens. CST assisted Paul Hastings with pleadings review and related discovery matters, research and analysis of legal issues related to discovery disputes. CST also assisted Paul Hastings in connection with expert discovery matters, including the ERS Co-Objectors' expert report, the bondholders' expert report and related materials.

70.     During the Application Period, CST worked closely with Paul Hastings in connection with the Committee's independent motion for summary judgment and related statement of undisputed facts on the ultra vires issue, as well as conducting extensive legal research and analysis of local laws and regulations in connection with such dispositive motion.

(a)     Pleadings Review (Task Code: B113)

        Hours:     30.30        Fees:   $8,125.00

27

71.     During the Application Period, CST reviewed various pleadings to be adequately prepared to provide services to the Committee and assist Paul Hastings in its representation of the Committee. In particular, CST reviewed and analyzed numerous pleadings and Court rulings to provide a comprehensive legal analysis of contested matters such as certain Proofs of Claim and Motion for Administrative Expenses, along with their corresponding discovery-related pleadings, in addition to certain adversary proceedings. This in compliance with the applicable Rules of Professional Conduct.

(b)     Other Contested Matters (Task Code: B190)

        Hours:     22.60        Fees:   $5,731.00

72.     During the Fee Application, CST attorneys assisted Paul Hastings in the legal analysis and research in connection with ERS bond issuance, the continued ERS Claim Objection litigation and related legal issues on aspects of local law, legislative construction, and administrative powers. CST's extensive research was instrumental in developing the Committee's strategy and position before these matters.

(c)     General Litigation (Task Code: B191)

        Hours:     142.80        Fees:   $37,058.00

73.     CST worked with Paul Hastings in the ongoing discovery of the ERS-related clawback actions and counterclaims. CST was tasked with providing legal analysis of local case law, reviewing documents produced during discovery, assisting with preparations for depositions, analyzing local law issues that arose during the depositions, provided translations, assisted in the responses to propounded discovery, engaging in ongoing expert witness identification and expert discovery efforts, and analyzing local legislative construction. CST's assistance was very

significant in the development of the Committee's strategy in the face of the highly contested issues in this Title III proceeding.

**V.     Fee Application (Matter ID: 396-00015)**

(a)     Case Administration (Task Code: B110)

    Hours:     16.30        Fees:   $3,071.00

74.     The time spent in the Application Period pertains to the time it took to prepare CST Law's Ninth Interim Fee Application for services rendered and reimbursement of expenses for the period from February 1, 2020 through May 31, 2020, which was filed on July 15, 2020.

(b)     Fee / Employment Applications (Task Code: B160)

    Hours:     8.00         Fees:   $2,083.00

75.     Pursuant to the Fee Examiner's request, CST has established a matter to keep track of the time incurred per the Fee Examiner's requests. The time spent in the Application Period pertains to the time spent in compliance with the Fee Examiner's requests including communications with the examiner, and the time it took to prepare the Ninth Interim Application.

(c)     Budgeting (Task Code: B161)

    Hours:     9.10         Fees:   $2,457.00

76.     During the Application Period, CST prepared budgets and staffing plans pursuant to Fee Examiner's request and communicated with the Committee and the Examiner regarding this matter.

**VI.    Avoidance Actions (Matter ID: 396-00018)**

77.     During the Application Period CST, who represents the Committee with respect to the garden variety avoidance actions and in the Informal Resolution Process, continued to be heavily involved in the review and resolution of garden-variety avoidance actions against hundreds

of vendors of the Debtors, *i.e.* Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc. Nos. 19-347 to 19-354, and Adv. Proc. Nos. 19-380 to 19-383. As local counsel to the Committee, CST continued to interface with the defendants in these actions and provided counsel with respect to the Information Exchange Process as part of the Informal Resolution Protocol ("IR Protocol") developed closely with the law firm of Brown Rudnick ("BR"), counsel for the Special Claims Committee of the Oversight Board, to review and resolve the garden-variety avoidance actions.

78.    During the Application Period and in light of unforeseen circumstances that unfortunately delayed the informal resolution process, particularly the COVID-19 health crisis, CST worked closely with counsel for the Special Claims Committee in filing an Omnibus Motion to extend deadlines in the Procedures Order. With the approval of the Third Omnibus Motion, CST's involvement and participation in the Informal Resolution Process during the Application Period continued to be substantial in spite of the pandemic, considering the amount of avoidance actions and the fact that counsel for Co-Plaintiffs in these garden variety avoidance actions engaged in discussions with counsel for more than 30 vendors in an attempt to negotiate and settle vendor's 90-day preference claims.

79.    On multiple occasions during the Application Period, counsel for CST, working actively in the informal resolution process, regularly met or had teleconferences with counsel for vendors to discuss the scope of the information requested by co-plaintiffs in connection with the garden variety avoidance actions, to discuss related legal matters, to discuss the viability of modifying or tailoring the requests for information. CST also participated in the discussions and determinations pertaining to the dismissal of various garden variety avoidance actions and worked closely with Brown Rudnick and DGC, while consulting related matters with Paul Hastings and Zolfo Cooper.

80.    Likewise, on multiple occasions during the Application Period, CST worked closely with DGC, Brown Rudnick, Paul Hastings and Zolfo Cooper in the analysis of over 30 vendor preference claims in order to explore settlements with vendors related to preferential payment claims and to discuss recommendations to dismiss multiple garden variety avoidance actions.

81.    During the referenced period CST also provided support to GJB in connection with "clawback actions" – adversary proceeding against various underwriters, law firms, accounting firms, and other parties involved in the issuance of securities and bonds. CST's role included providing translations, research and analysis of local law, and provide status reports on events related to the legal issues litigated.

(a)    Case Administration (Task Code: B110)

   Hours:    27.00      Fees:  $5,858.50

82.    During the Application Period, CST spent a considerable amount of time reviewing and analyzing the responses of vendors in connection with the ongoing Information Exchange Process. CST developed and implemented strategies to streamline the workflow associated with the administration of each action, including staff meetings, shared information matrix, and the creation of databases. CST's main tasks involved interfacing with vendor defendants and providing first-impression review of the data received prior to the in-depth analysis by the rest of the avoidance action team.

(b)    Avoidance Action Analysis (Task Code: B180)

   Hours:    211.60      Fees:  $46,380.00

83.    CST, among other things, provided first-level review of the data produced by vendors. Particularly, CST reviewed Spanish-language documents to assist DGC in their

assessment of the data. After DGC collected and analyzed the data provided by vendors, CST spent considerable amount of time assessing – along with co-counsel, DGC's recommendations to establish Plaintiffs' strategy as to how to proceed in the IR Protocol approved by the Court and apply to each particular proceeding.

(c)     Other Contested Matters (Task Code: B190)

     Hours:     13.50          Fees:   $3,449.00

84.     As part of IR Protocol, CST negotiated with vendor defendants modifications to the information requested of them. This resulted in the acceleration of DGC's analysis of the data pursuant to their sampling recommendations.

(d)     General Litigation (Task Code: B191)

     Hours:     55.40          Fees:   $12,746.00

85.      CST was heavily involved negotiating along vendor defendants data sampling and the defenses asserted by them in a per-case basis. Some of these cases presented particular circumstances that at times required in-depth legal analysis of local law and recent local jurisprudence. Some of the issues contested related to contracts law, insurance law, and government procurement and bidding processes.

86.     Also, in view of the progress achieved by the Informal Resolution Process – even despite Covid-19 delays, Plaintiffs and their counsel collaborated in the extension of the litigation deadlines associated with these actions to allow for the continuation of the information exchanges and eventual resolution of the proceedings. An extension to the litigation deadlines was also requested by the Plaintiffs for a small group of vendor defendants to seek entry of default.

(e)     Claims Administration and Objections (Task Code: B310)

     Hours:     26.20          Fees:   $6,591.00

87.     CST developed and implemented strategies to streamline the workflow associated with the administration of each action, including information matrix, spreadsheets, and databases. Each matter presented specific circumstances as to the data produced and the defenses asserted by the defendants. The specificities of each garden variety avoidance action garnered analysis specific to each legal contention, to facilitate discussions as to the viability of modifying or tailoring the requests for information, to negotiate settlements, among other strategies and outcomes.

*****

88.     The foregoing professional services were necessary and appropriate to the administration of the Title III Cases and were incurred upon in the best interests of the Committee, the Debtors, the creditors, and other parties in interest.

## ATTENDANCE AT HEARINGS

89.     In accordance with the presumptions set forth in the Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications [Docket No. 3932] (the "Presumptive Standards Order"), CST provides the following summary regarding the attendance of CST professionals at Court hearings, as local counsel to the Official Committee of Unsecured Creditors:

- June 3, 2020:      Omnibus hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- June 4, 2020:      Preliminary hearing on motions for relief from stay in relation to the Revenue Bonds. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- July 29, 2020:      Omnibus hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- September 16, 2020:      Omnibus hearing. The attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

• September 23, 2020:     Summary judgment hearing in the Revenue Bond Adversary
Proceedings. The attendance complies with the presumptive standards set forth in the
Presumptive Standards Order.

## REPORT ON MATTERS JOINTLY PURSUED BY OVERSIGHT BOARD AND COMMITTEE

90.     As requested by the Fee Examiner, we set forth below the status of the various

proceedings and motions jointly commenced by the Oversight Board or its Special Claims

Committee, on the one hand, and the Committee, on the other hand, pursuant to stipulations for

the joint prosecution of causes of action or claims objections.

• Omnibus Objection of Oversight Board and Committee to Certain GO Bond Claims
[Docket No. 4784] (the "Omnibus Claims Objection"): On March 10, 2020, the Court
stayed the Omnibus GO Claim Objection pending a decision on confirmation of the
Commonwealth plan of adjustment.

• Adversary Proceeding against Underwriters, etc.: CST, the Committee's local counsel,
represents the Committee with respect to the adversary proceeding against various
underwriters and other parties involved in the issuance of Commonwealth bonds [Adv.
Proc. No. 19-280].

On March 10, 2020, the Court stayed the underwriter litigation pending a decision on
confirmation on the Commonwealth plan of adjustment.

• Garden-Variety Avoidance Actions: CST, the Committee's local counsel, represents
the Official Committee of Unsecured Creditors (UCC) with respect to various "garden-
variety" avoidance actions initiated against vendors of the Commonwealth of Puerto
Rico, the Puerto Rico Highways and Transportation Authority (HTA) and the
Employee Retirement System (ERS) [Adv. Proc. Nos. 19-041 to 19-279, Adv. Proc.
Nos. 19-347 to 19-354, and additional adversary proceedings commenced with respect
to PREPA [Adv. Proc. Nos. 19-380 to 19-387].

CST is one of two (2) Puerto Rico law firms (the other being Estrella LLC) serving as
primary attorney point of contact in the Informal Resolution Process established by the
Oversight Board to resolve the Garden Variety Avoidance Actions without necessarily
having to incur in litigation costs and expenses.

CST, representing the UCC, is assisting the financial advisory firm to the Special
Claims Committee, in the gathering of information and interfacing with over 90
vendors and their counsel and analyzing select documents and data submitted by
vendors and counsel, while simultaneously responding to related communications and
requests from vendors and their counsel, and assisting Brown Rudnick with analysis of
local law matters pertaining to the Avoidance Actions, as requested, and discussing

select legal issues and dismissal / no-action recommendations as well as settlement discussions and negotiations of 90-day preference claims, with Paul Hastings and Zolfo Cooper.

- Currently Stayed Co-Plaintiff Adversary Proceedings: Per Judge Swain's March 10, 2020 stay order, the following adversary proceedings (in which the Committee has been appointed as co-plaintiff/co-trustee with the Oversight Board) also remained stayed pending a decision on confirmation of the Commonwealth plan of adjustment.

  •    Eight adversary proceedings seeking to recover fraudulent transfers made on account of GO bonds that were not validly issued [Adv. Proc. No. 19-281, Adv. Proc. No. 19-282, Adv. Proc. No. 19-283, Adv. Proc. No. 19-284, Adv. Proc. No. 19-285, Adv. Proc. No. 19-286, Adv. Proc. No. 19-287, and Adv. Proc. No. 19-288];

  •    Four adversary proceedings challenging liens asserted by certain holders of HTA bonds [Adv. Proc. No. 19-362, Adv. Proc. No. 19-363, Adv. Proc. No. 19-364, and Adv. Proc. No. 19-365].

- ERS-Related Adversary Proceedings: On October 24, 2019, the Court approved a scheduling order regarding discovery and summary judgment briefing on the lien scope issues and ultra vires issues with respect to the ERS bonds. Accordingly, (a) the lien scope litigation, i.e., Adv. Proc. No. 19-366 and Adv. Proc. No. 19-367 and (b) count I of the complaints seeking to recover fraudulent transfers made on account of ERS bonds that were not validly issued, i.e., Adv. Proc. No. 19-355, Adv. Proc. No. 19-356, Adv. Proc. No. 19-357, Adv. Proc. No. 19-358, Adv. Proc. No. 19-359, and Adv. Proc. No. 19-361, were unstayed.

Proskauer Rose LLP, counsel for the Oversight Board, has primary responsibility for the lien scope adversary proceedings. Accordingly, Casillas, Santiago & Torres does not anticipate expending any significant time on these adversary proceedings, other than related administrative and/or procedural work, including responding to inquiries from and assisting Genovesse Joblove & Battista PA., the Committee's special litigation counsel.

Moreover, Genovese Joblove & Battista PA., the Committee's special litigation counsel, represents the Committee with respect to count I of the recovery actions and Casillas, Santiago & Torres, the Committee's local counsel, represents the Committee with respect to count I of the recovery actions. Thus, Casillas, Santiago & Torres will assist Genovese with the ultra vires issues as they relate to count I of the recovery actions.

- <u>Adversary Proceedings Challenging Liens Aserted by Holders of GO Bonds ("GO Lien Challenges:</u> On March 10, 2020, the Court stayed the Omnibus GO Lien Challenges pending a decision on confirmation of the Commonwealth plan of adjustment.

91.     The sub-budgets and staffing plans with respect to the jointly pursued matters described above are included as part of Exhibit C-1 and Exhibit C-2, respectively.

## ACTUAL AND NECESSARY DISBURSEMENTS

92.     As described in <u>Exhibit D</u> hereto, CST disbursed $5,736.17 as expenses incurred in providing professional services during the Application Period.

93.     Because CST believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, CST encourages computerized legal research even though it is not a profit center for CST.

94.     The time constraints imposed by the circumstances of the matters handled by CST during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to daily inquiries, and satisfy the Committee's needs and demands. CST's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the provision of legal services.

95.     CST believes the rates for charges incurred are the market rates that most law firms charge clients for such services. In addition, CST believes that such charges are in accordance with the American Bar Association's ("<u>ABA</u>") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges as well as the Puerto Rico Code of Ethics.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

96.    Section 316 provides for the compensation of professionals. Specifically, section 316 provides that a Court may award a professional employed by a committee under Section 1103 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered… and reimbursement for actual, necessary expenses." PROMESA §316(a). Section 316 of PROMESA also sets forth the criteria for the award of such compensation and reimbursement:

> (a) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including:
>
> (i) the time spent on such services;
>
> (ii) the rates charged for such services;
>
> (iii) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (iv) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (v) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
>
> (vi) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

PROMESA §316(c). Further, section 317 of PROMESA provides that "a committee… may apply to the court not more than once every 120 days… for such compensation for services rendered…"

97.    In the instant case, CST respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for and

37

beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of the Title III Cases. The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved. The results obtained to date have benefited not only the Committee but also the Debtors and their stakeholders. Accordingly, the compensation requested herein is reasonable considering the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

98.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task. Whenever possible, CST sought to minimize the costs of CST's services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments. A small group of the same CST's attorneys was utilized for the vast majority of the work in this case, to minimize the costs of intra- CST's communication and education about the Title III Cases. As demonstrated by this Application, CST spent its time economically and without unnecessary duplication. Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

99.    In accordance with the Interim Compensation Order, CST will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee

38

of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto

Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the

Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of

hearing with respect to this Application will be served on all parties that have filed a notice of

appearance in the Title III Cases.

## CONCLUSION

WHEREFORE, CST respectfully requests entry of an order, substantially in the form

attached hereto as <u>Schedule 1</u>, (i) allowing interim compensation for professional services

rendered during the Application Period in the amount of $281,132.50 and expense reimbursements

in the amount of $5,736.17; (ii) authorizing and directing the Debtors' payment of the amounts

allowed and; (iii) allowing such compensation and payment for professional services rendered and

reimbursement of actual and necessary expenses incurred be without prejudice to CST's right to seek

such further compensation and/or payment for the full value of services performed and expenses

incurred, and (iv) granting CST such other and further relief as is just.

Date: November 16, 2020         */s/Juan J. Casillas-Ayala*
                                CASILLAS, SANTIAGO & TORRES LLC
                                Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
                                Luis F. Llach Zúñiga, Esq. (USDC – PR 223112)
                                PO Box 195075
                                San Juan, PR 00919-5075
                                Tel.: (787) 523-3434
                                Fax: (787) 523-3433
                                jcasillas@cstlawpr.com
                                lllach@cstlawpr.com

                                *Local Counsel to the Official Committee of Unsecured
                                Creditors*