**Objection Deadline:** November 24, 2020 at 4:00 p.m. (Atlantic Standard Time)
**Hearing Date:** December 9, 2020 at 9:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor-Movant. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

# OMNIBUS MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY FOR ORDER (A) APPROVING PREPA'S REJECTION OF CERTAIN POWER PURCHASE AND OPERATING AGREEMENTS, AND (B) GRANTING RELATED RELIEF

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's Title III representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] respectfully submits this motion (the "Motion"), pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this matter pursuant to PROMESA section 301(a) and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit B**: (a) approving PREPA's rejection of the Rejected PPOAs (as defined herein) set forth on **Exhibit A** hereto, and (b) granting PREPA such other relief as is just and proper. In support of the requested relief, the Oversight Board respectfully submits the *Declaration of Fernando M. Padilla in Support of Omnibus Motion of Puerto Rico Electric Authority for an Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* filed concurrently herewith (the "Padilla Declaration"), and otherwise respectfully represents as follows:

## JURISDICTION AND VENUE

1. The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Motion pursuant to PROMESA section 306(a).

2. Venue is proper in this district pursuant to PROMESA section 307(a).

3. The statutory predicates for the relief sought herein are section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, made applicable to this case by PROMESA sections 301(a) and 310, respectively.

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101–2241.

2

**BACKGROUND**

4. On July 2, 2017 (the "Petition Date"), the Oversight Board filed a voluntary petition for relief for PREPA pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Title III Case").

5. Background information regarding PREPA and the commencement of this Title III Case is contained in the *Notice of Statement of Oversight Board Regarding PREPA's Title III Case* [ECF No. 2].

**The Rejected PPOAs**

6. PREPA is party to various power purchase and operating agreements ("PPOAs") for renewable energy generation projects. Seven (7) of these PPOAs (collectively, the "Windmar PPOAs") are with Windmar Renewable Energy, Inc. and Windmar Renewable Energy, LLC (collectively, "Windmar"), under which PREPA agreed to purchase renewable power generated by Windmar. Padilla Decl. ¶ 5.

7. PREPA is also party to PPOAs with each of M Solar Generating, LLC ("M Solar") and YFN Yabucoa Solar, LLC ("YFN Yabucoa") for renewable energy projects. Padilla Decl. ¶ 6.

8. Of these PPOAs, (i) two (2) Windmar PPOAs are currently operational (the "Operational PPOAs"), (ii) four (4) Windmar PPOAs were non-operational and have been terminated pursuant to termination notices issued on April 23, 2020 (the "Terminated PPOAs"), and (iii) three (3) PPOAs (the "Non-Operational PPOAs," and together with the Operational PPOAs and the Terminated PPOAs, the "Rejected PPOAs"), one with each of Windmar, M Solar, and YFN Yabucoa, are non-operational but not yet terminated because, until recently, they were the subject of renegotiation efforts with Windmar, M Solar, and YFN Yabucoa (collectively, the

"Rejected PPOA Counterparties"). Padilla Decl. ¶ 7. PREPA has determined that it wishes to reject each of the Rejected PPOAs and seeks Court approval of such rejection for the reasons set forth below. *Id.*

*Operational PPOAs*

9. PREPA currently is party to two (2) Operational PPOAs with Windmar involving a 10 MW project near Coto Laurel in Ponce, Puerto Rico (the "Coto Laurel Project") and a 2.1 MW project on Martino Solar Farm in Ponce, Puerto Rico (the "Martino Project"). Padilla Decl. ¶ 8.

10. On February 3, 2020, PREPA announced its goal of reaching a ten percent (10%) net present value ("NPV") discount of the all-in energy price (inclusive of renewable energy credits ("RECs")) under the Operational PPOAs and the PPOAs for seven (7) other similarly situated operating renewable energy projects. Padilla Decl. ¶ 9. PREPA could have pursued a larger discount, but elected to seek a discount to the all-in pricing under these PPOAs that, while meaningful, was not likely to destroy PREPA's relationships with the owners/sponsors of these projects or taint the investment climate for renewable energy in Puerto Rico in the future. *Id.* PREPA sought to balance the price reductions with the equally important goal of maintaining a strong and positive economic environment to facilitate additional development of renewable energy projects in the Commonwealth. *Id.*

11. From late 2019 until May 2020, PREPA tried to negotiate a reduction in pricing for each of the Operational PPOAs, as well as the seven (7) other operational PPOAs with other project owners, to better align PREPA's finances with the objectives of PREPA's Fiscal Plan. *Id.* at ¶ 8. To alleviate some of the negative impacts to these operational projects, PREPA gave the project owner/sponsors negotiating these reductions flexibility to (a) shape the savings at their discretion,

4

so long as the ten percent (10%) NPV discount was achieved, (b) offer modest increases in the generating capacity (subject to transmission feasibility and compliance with 2020 minimum technical requirements ("MTRs") for such increased capacity) with the related energy and RECs to be sold at market prices, as determined by PREPA's governing board ("Board Determined Market Prices"), and (c) make modest extensions to the term of the Operating PPOAs with the energy and RECs sold during such term extensions being priced at Board Determined Market Prices. Padilla Decl. ¶ 10. Most owners/sponsors of these operating projects accommodated PREPA's request for price reductions, but Windmar did not. *Id.*

12. After extensive negotiations with the above criteria in mind, PREPA was unable to negotiate modifications to the Operational PPOAs that PREPA believed would be sufficient for it to justify assuming them. Padilla Decl. ¶ 11. Windmar (i) would not accept a price reduction for the Coto Laurel Project alleging that the Coto Laurel Project was "losing money," and (ii) would not accept a similar price reduction for the Martino Project, unless PREPA agreed to an approximately 1 MW capacity increase for the Martino Project without full MTR compliance (which is something that was required for all other operational PPOA project sponsors). *Id.* Notwithstanding PREPA's insistence on full MTR compliance for all other PPOA project sponsors, in an effort to reach resolution with Windmar with respect to the Martino Project, PREPA offered to accept the proposed capacity increase if Windmar would comply with a reduced set of minimum technical requirements (essentially, voltage regulation and inclusion of some fiber optics). *Id.* Windmar would not accept these relaxed technical requirements (and, particularly, voltage regulation), however, unless PREPA provided supporting documentation and technical studies around grid operations, which other project owners/sponsors did not request and would have been burdensome for PREPA to provide. *Id.* It is also worth noting that Windmar

5

intentionally overbuilt the Martino project to 3.2 MW versus the 2.1 MW contemplated by the respective PPOA, resulting in the project being out of compliance with PREPA's generation limit requirement set forth in the PPOA. *Id.*

13. In short, PREPA offered more concessions and flexibility to Windmar than it did to other Operational PPOA project sponsors, but Windmar would still not accept PREPA's proposed terms. Padilla Decl. ¶ 12. Each time an effort was made to reach final resolution with Windmar, Windmar raised additional issues and made incremental demands. After repeated attempts, over a period of months, to negotiate an acceptable price reduction (consistent with the reductions demanded from, and agreed to by, all other similarly situated project sponsors), it became clear that Windmar was unwilling to agree to the necessary concessions. *Id.*

### *The Terminated PPOAs*

14. PREPA was also party to the four (4) Terminated PPOAs with Windmar, for which PREPA determined to exercise its existing contractual termination rights. Padilla Decl. ¶ 13. These Terminated PPOAs were for non-operational projects and provided for prices above the current Board Determined Market Prices for renewable energy. *Id.* If the projects contemplated under the Terminated PPOAs were developed under current contractual terms, the energy prices and contractual conditions for these projects would impose an unnecessary financial burden on the ratepayers of Puerto Rico. *Id.*

15. Accordingly, on March 25, 2020, PREPA's Governing Board authorized the termination and rejection of the Terminated PPOAs. Padilla Decl. ¶ 14. Pursuant to such authorization, on April 23, 2020, PREPA notified Windmar that it had exercised its termination rights pursuant to certain provisions of the PPOAs, which Windmar has challenged as ineffective. *Id.* Because the Terminated PPOAs were executory as of the Petition Date and Windmar has

6

challenged PREPA's termination, PREPA also desires to reject the Terminated PPOAs pursuant to section 365 of the Bankruptcy Code to avoid any arguments about the efficacy of its terminations or allowance of any damages related thereto. *Id.*

*Non-Operational PPOAs*

16. Beginning in early 2019, PREPA engaged in negotiations with non-operating PPOA counterparties that fulfilled certain criteria: (i) the contracts had been identified in the past by the Puerto Rico Planning Board, the Puerto Rico Management Permits Office (OGPe), and/or PREPA staff as having nearly completed their development activities, (ii) the counterparty had demonstrated a willingness to renegotiate pricing to reflect changes in the industry by agreeing to amend their agreements, and/or (iii) the counterparty had confirmed its willingness and potential ability to commence construction in the relatively near term. Padilla Decl. ¶ 15. The Non-Operational PPOAs were included in this group and, like the Terminated PPOAs, call for PREPA to purchase renewable energy at prices which are above current Board Determined Market Prices for renewable energy. *Id.*

17. From early 2019 through May of 2020, PREPA attempted to renegotiate the Non-Operational PPOAs together with the other non-operational PPOAs mentioned above, and conducted interconnection and other technical analysis on all of these projects. Padilla Decl. ¶ 16. PREPA ultimately reached agreements in principle with all the non-operational PPOA counterparties other than the Rejected PPOA Counterparties. *Id*.

18. Windmar encountered difficulties with its project, and among other things, asked PREPA to consider allowing it to move the project to a better location. PREPA was willing to accommodate this request in an effort to move Windmar forward. Nonetheless, on May 13, 2020, Windmar advised PREPA that it would "be better to postpone the decision until we hear back from

7

the pertinent PREPA directorates, and the future of PREPA and the economy are clearer." Padilla Decl. ¶ 17. As a result of the inability to reach agreement and indefinite postponement of the project, the Non-Operational Windmar PPOA would not be ready to supply cost-effective renewable energy to PREPA in the near-term and such delay would create a financial burden to PREPA if it were ever built on current terms. *Id.*

19. PREPA negotiated with YFN Yabucoa until May 2020, including delivering a revised proposal on December 17, 2019, and in 2020 exchanging and discussing PPOA drafts, holding meetings to discuss technical issues and cost reductions, and taking other steps to bring YFN Yabucoa in line with the pricing that others had accepted. Padilla Decl. ¶ 18. YFN Yabucoa delivered to PREPA a final proposal on May 15, 2020, that was still approximately twenty percent (20%) more expensive than the other renegotiated non-operating PPOAs. *Id.*

20. PREPA also negotiated with M Solar over the same period as the others, including pricing discussions and similar efforts to move interconnection and other technical matters forward. M Solar made a counterproposal on April 27, 2020, placing them approximately fourteen percent (14%) above the pricing for the other renegotiated non-operating PPOAs or alternatively proposing PREPA to finance certain technical equipment for M Solar. Padilla Decl. ¶ 19. While other pricing options were discussed, ultimately, M Solar could not reach agreement with PREPA on pricing in line with what had been accepted for other renegotiated non-operating PPOAs. *Id.*

21. As a result of the above, it became clear that the projects contemplated by the Non-Operational PPOAs would not be ready to supply cost-effective renewable energy to PREPA in the near-term and such delay would create a financial burden to PREPA if the projects contemplated under the Non-Operational PPOAs were ever built on current or the counterparties' proposed terms. Padilla Decl. ¶ 20.

8

22. Based on the foregoing, PREPA has determined that the Rejected PPOAs are burdensome to PREPA and its ratepayers and that the rejection of these contracts would create significant cost savings for ratepayers by avoiding overpayment for power under the Rejected PPOAs.[3] Padilla Decl. ¶ 21.

## RELIEF REQUESTED

23. By this Motion, PREPA, through the Oversight Board, seeks entry of an order pursuant to section 365(a) of the Bankruptcy Code authorizing PREPA to reject the Rejected PPOAs and granting such other relief as is just and proper.

## BASIS FOR RELIEF

24. Section 365 of the Bankruptcy Code, made applicable in this Title III Case pursuant to PROMESA section 301(a), provides that a debtor-in-possession, "subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor in possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

25. The assumption or rejection of an executory contract or unexpired lease is subject to review of whether PREPA has advanced a business justification for its rejection.[4] Under such

---

[3] Notably, each of Windmar, M Solar, and YFN Yabucoa have recently commenced proceedings before the Puerto Rico Energy Bureau attempting to compel PREPA to renegotiate their contracts under specific parameters and to compel PREPA to assume or reject their PPOAs, in violation of the automatic stay in PREPA's Title III case.

[4] There is no basis here for application of any standard other than business justification because there is no federal or Commonwealth policy that would be circumvented by the Court's approval of rejection of the Rejected Contracts. The agreements PREPA seeks to reject are not contracts for the transmission or sale of electric energy in interstate commerce and hence are not subject to FERC's jurisdiction under the Federal Power Act. *See* 16 U.S.C. §824(b)(1). Electric energy produced and transmitted within Puerto Rico does not move in interstate

standard, "a debtor must simply put forth a showing that assumption or rejection of the executory contract or unexpired lease will benefit the [d]ebtor's estate." *In re Vent Alarm Corp.*, Case No. 15-09316-MCF11, 2016 WL 1599599, at *3 (Bankr. D.P.R. Apr. 18, 2016). If a debtor has exercised "reasonable" business judgment, the court should approve the proposed contract rejection. *See In re Maiden Brooks Farm LLC*, 435 B.R. 81, 83 (Bankr. D. Mass. 2010) (noting that courts afford deference to debtors under the business judgement rule); *see also Comput. Sales Int'l, Inc. v. Fed. Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (Bankr. D. Del. 2003) (explaining that under the business judgment standard, a court should defer to a debtor's decision with respect to contract assumption or rejection, "unless that decision is the product of bad faith or a gross abuse of discretion"); *see In re Fin. Oversight & Mgmt. Bd. for P.R*, 618 B.R. 349, 361 (D.P.R. 2020) (assumption of power purchase agreement is not subject to heightened standard of review, but rather a determination that assumption "is a sound exercise of PREPA's business judgment and not the product of bad faith, whim, or caprice").[5]

26. Under PROMESA, the Oversight Board's discretion is afforded even greater deference. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 432 F. Supp. 3d. 25, 30–31 (D.P.R.), *aff'd*, 954 F.3d 1 (1st Cir. 2020). As the Court noted:

> The Oversight Board is designated, in the first instance, as the entity that makes important strategic and tactical judgments in managing these restructuring proceedings, and it necessarily does so in a holistic manner. While pursuing returns

---

commerce. Further, no approval by the Puerto Rico Energy Bureau is required for termination of the contracts and PREPA can comply with Puerto Rico energy law and policy without these contracts. *Cf. NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) *and In re Mirant*, 378 F.3d 511 (5th Cir. 2004). As this Court has recognized, public impact alone does not justify application of a heightened standard of review and there is no support for the argument that energy supply is "a general category requiring heightened scrutiny." *See In re Fin. Oversight & Mgmt. Bd. for P.R*, 618 B.R. at 360.

[5] The Court noted in its opinion that the subject contract amendments had been approved by the Puerto Rico Energy Bureau ("PREB"). *In re Fin. Oversight & Mgmt. Bd. for P.R*, 618 B.R. at 3060–61. The requirement of approval by PREB only applies to new contracts or amendments to existing contracts, and thus is not required for rejection of any PPOAs by PREPA. The lack of PREB approval of rejection of these agreements is therefore not a factor in the applicable standard or review or whether PREPA has met such standard.

10

for creditors of each debtor is an important element of those judgments, it is not the exclusive end point of the Oversight Board's task. The needs, concerns and future of a political entity that is the home of millions of American citizens, as well as the needs, concerns and rights of a broad range of parties in interest and the ability to propose confirmable plans of adjustment, are all implicated here. The Oversight Board has been given the responsibility of balancing and prioritizing the relevant issues and concerns in developing fiscal arrangements and plans of adjustment, and it is entitled to a measure of deference in carrying out this responsibility.

*Id.*

27. Upon review and analysis of PREPA's obligations under the Rejected PPOAs, PREPA has concluded that the relief requested in this Motion is in the best interests of PREPA and its creditors and customers because all of the Rejected PPOAs provide for energy at rates that are above-market and/or have not achieved any meaningful progress toward project completion. Padilla Decl. ¶¶ 15, 20. Additionally, the Rejected PPOA Counterparties were not amenable to renegotiating pricing of certain of the Rejected PPOAs to reflect changes in the industry and renewable energy market by agreeing to amend their agreements and/or confirming their willingness and potential ability to commence construction in the relatively near term. As such, it is in the best interests of PREPA and its customers to reject the Rejected PPOAs. *Id.* at ¶ 16.

28. Should PREPA require additional renewable energy, it is more economical for PREPA to cover any shortfall through alternative arrangements at current market prices or through the new, renegotiated PPOAs at prices substantially lower than the contract prices contained in the Rejected PPOAs. There is also no meaningful prospect of monetizing the Rejected PPOAs by assuming and assigning any of them to third parties as no realistic alternative counterparty for the purchase of power exists in Puerto Rico, and even if there were such alternatives, any third party would also find the Rejected PPOAs overpriced and unfavorable in the current market. By rejecting the contracts, PREPA will be able to negotiate new contracts at a lower cost for the generated power to the extent it is necessary and beneficial.

29. Pursuant to Article 6.32 of Act 57-2014, the Energy Bureau must evaluate and approve new PPOAs and amendments to existing PPOAs. However, there is no legal provision that requires PREB's approval to *terminate* an existing PPOA, and this Court has previously permitted PREPA to reject PPOAs without PREB approval. *See Memorandum Opinion Regarding Omnibus Motion of Puerto Rico Electric Power Authority for Entry of An Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief (Docket Entry No. 13579)* [ECF No. 2199]. Accordingly, the PPOA Counterparties' complaints before PREB have no bearing on this action.

30. Given the above, the Rejected PPOAs are neither desirable nor necessary for PREPA's go-forward operations, and rejection of these agreements is therefore in the best interests of PREPA based on its sound exercise of business judgment.

## NOTICE

31. PREPA has provided notice of this Motion to (collectively, the "Notice Parties"): (i) the Rejected PPOA Counterparties; (ii) the Office of the United States Trustee for the District of Puerto Rico; (iii) the indenture trustees and/or agents, as applicable, for PREPA's bonds; (iv) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain Trade Finance Facility Agreement, dated as of July 20, 2012; (v) the statutory unsecured claimholders' committee appointed in this Title III Case; (vi) the Office of the United States Attorney for the District of Puerto Rico; (vii) counsel to AAFAF; (viii) the Puerto Rico Department of Justice; and (ix) all parties who have requested service in PREPA's Title III Case.

## **NO PRIOR REQUEST**

32. No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE PREPA respectfully requests the Court enter the Proposed Order (a) granting the Motion, and (b) granting PREPA such other relief as is just and proper.

| | |
|---|---|
| Dated: November 17, 2020<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Martin J. Bienenstock*<br><br>Martin J. Bienenstock (*pro hac vice*)<br>Paul V. Possinger (*pro hac vice*)<br>Ehud Barak (*pro hac vice*)<br>Margaret A. Dale (*pro hac vice*)<br>Daniel S. Desatnik *(pro hac vice)*<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br><br>*Attorneys for the Financial Oversight and Management Board as representative of the Puerto Rico Electric Power Authority*<br><br>**LUIS F. DEL VALLE-EMMANUELLI**<br><br>By: */s/ Luis F. del Valle-Emmanuelli*<br>By: Luis F. del Valle-Emmanuelli<br>USDC-PR No. 209514<br>P.O. Box 79897<br>Carolina, Puerto Rico 00984-9897<br><br>*Attorney for the Financial Oversight and Management Board as representative of the Puerto Rico Electric Power Authority* |

## Exhibit A

## List of Windmar PPOAs

**Operating**:

1. Renewable Power Purchase and Operating Agreement between Windmar Renewable Energy, Inc. and PREPA, dated September 7, 2011, No. 2012-P00015. (Cantera Martino); and

2. Renewable Power Purchase and Operating Agreement between Windmar Renewable Energy, Inc. and PREPA, dated December 8, 2011, No. 2012-P00052. (Viste Alegre / Coto Laurel).

**Non-Operating (Not Terminated)**:

1. Renewable Power Purchase and Operating Agreement between Windmar Renewable Energy, LLC and PREPA, dated February 23, 2012, No. 2012-P00080 (Santa Rosa).

2. Renewable Power Purchase and Operating Agreement between M Solar Generating, LLC and PREPA, dated May 2, 2012, No. 2012-P00142.

3. Renewable Power Purchase and Operating Agreement between YFN Yabucoa Solar, LLC and PREPA, dated October 17, 2012, No. 2013-P00049.

**Non-Operating (Terminated)**:

1. Renewable Power Purchase and Operating Agreement between Windmar Renewable Energy, LLC and PREPA, dated March 16, 2012, No. 2012-P00095;

2. Renewable Power Purchase and Operating Agreement between Windmar Renewable Energy, LLC and PREPA, dated November 23, 2011, No. 2012-P00049;

3. Renewable Power Purchase and Operating Agreement between Windmar Renewable Energy, LLC and PREPA, dated February 23, 2012, No. 2012-P00079; and

4. Renewable Power Purchase and Operating Agreement between Windmar Renewable Energy, LLC and PREPA, dated November 23, 2011, No. 2008-AI0066.

**Exhibit B**

**Proposed Order**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS |

### ORDER GRANTING OMNIBUS MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY FOR (A) APPROVAL OF ITS REJECTION OF CERTAIN POWER PURCHASE AND OPERATING AGREEMENTS, AND (B) RELATED RELIEF

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Upon *PREPA's Omnibus Motion for Order (A) Approving PREPA's Rejection of Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* (the "Motion")[2]; and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the rejection of the Rejected PPOAs being based on sound business justifications, and the relief requested in the Motion being in the best interests of PREPA, its creditors, its customers, and other parties in interest; and PREPA having provided adequate and appropriate notice of the Motion under the circumstances and no other or further notice being required; and the Court having reviewed the Motion and having heard the statements of counsel in support of and opposed to the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as set forth herein.

2. Pursuant to section 365 of the Bankruptcy Code, made applicable in this Title III Case pursuant to PROMESA section 301(a), PREPA's rejection of the Rejected PPOAs listed on **Exhibit A** attached to the Motion is approved.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2

3. Any claims based on the rejection of the Rejected PPOAs, if any, must be filed on or before 4:00 p.m. (Atlantic Standard Time) on the first business day thirty-five (35) calendar days after the entry of the Order by the Court authorizing such rejection.

4. Notwithstanding any applicability of any Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

5. PREPA and the Oversight Board, as PREPA's sole Title III representative, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted in this Order in accordance with the Motion.

6. The Court shall retain jurisdiction to hear and determine any and all disputes related to or arising from the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2020

_____
HONORABLE LAURA TAYLOR SWAIN
United States District Judge