# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY<br><br>Debtor-Movant. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

## DECLARATION OF FERNANDO M. PADILLA IN RESPECT OF OMNIBUS MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY FOR ORDER (A) APPROVING PREPA'S REJECTION OF CERTAIN POWER PURCHASE AND OPERATING AGREEMENTS, AND (B) GRANTING RELATED RELIEF

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

I, Fernando M. Padilla, under penalty of perjury, declare as follows:

1. I am the Director of the Restructuring, Fiscal Affairs and Program Management Office of the Puerto Rico Electric Power Authority ("PREPA"). I am over 18 years of age.

2. In my role as Director of the Program Management Office, I (i) develop policy rationales that inform PREPA's Governing Board regarding project prioritization and approach to project implementation; (ii) confer with and advise PREPA's management and Governing Board on fiscal and restructuring matters; and (iii) implement PREPA's certified fiscal plans and oversee full compliance of corporate strategy, financials, budget, and project implementation to secure working capital for PREPA.

3. I am authorized to make and submit this declaration on behalf of PREPA and I am familiar with certain of the books, records, policies and documents maintained by PREPA (the "Business Records"). The Business Records are kept by PREPA in the regular course of its business and are made at or near the time of the events appearing therein by, or from information provided by, persons with knowledge of the activity. It is the regular course of business for PREPA to make such records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have relied on information and analyses provided to me by other PREPA employees and PREPA's advisors. If called and sworn as a witness, I could and would testify to the facts asserted in this declaration.

4. I make this Declaration in respect of the *Omnibus Motion of Puerto Rico Electric Authority for an Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* (the "Motion").[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion.

**The Rejected PPOAs**

5. PREPA is party to various power purchase and operating agreements ("PPOAs") for renewable energy generation projects. Seven (7) of these PPOAs (collectively, the "Windmar PPOAs") are with Windmar Renewable Energy, Inc. and Windmar Renewable Energy, LLC (collectively, "Windmar"), under which PREPA agreed to purchase renewable power generated by Windmar.

6. PREPA is also party to PPOAs with each of M Solar Generating, LLC ("M Solar") and YFN Yabucoa Solar, LLC ("YFN Yabucoa") for renewable energy projects.

7. Of these power purchase and operating agreements, (i) two (2) are for projects that are currently operational (the "Operational PPOAs"), (ii) four (4) have been terminated pursuant to termination notices sent to Windmar on April 23, 2020 (the "Terminated PPOAs"), and (iii) three (3) are for projects that are non-operational but not yet terminated because, until recently, they were the subject of renegotiation efforts (the "Non-Operational PPOAs," and together with the Operational PPOAs and the Terminated PPOAs, the "Rejected PPOAs"). PREPA has determined that it wishes to reject each of the Rejected PPOAs and seeks Court approval of such rejection for reasons that I will discuss below.

*Operational PPOAs*

8. PREPA currently is party to two (2) Operational PPOAs with Windmar involving a 10 MW project near Coto Laurel in Ponce, Puerto Rico (the "Coto Laurel Project") and a 2.1 MW project on Martino Solar Farm in Ponce, Puerto Rico (the "Martino Project"). From late 2019 until May 2020, PREPA tried to negotiate a reduction in pricing for each of the Operational Windmar PPOAs, as well as seven (7) other operational PPOAs with other project owners, to better align PREPA's finances with the objectives of PREPA's Fiscal Plan.

3

9. On February 3, 2020, PREPA announced its goal of reaching a ten percent (10%) net present value ("NPV") discount of the all-in energy price (inclusive of renewable energy credits ("RECs") under all of these PPOAs. Although PREPA could have pursued a larger discount, it elected to seek a discount to the all-in pricing under these PPOAs that was not likely to destroy PREPA's relationships with the owners/sponsors of these projects or pollute the investment climate for renewable energy in Puerto Rico in the future. I believe that this approach sought to balance the price reductions with the equally important goal of maintaining a strong and positive economic environment to facilitate additional development of renewable energy projects in the Commonwealth.

10. To alleviate some of the negative impacts to these operational projects, PREPA gave the project owner/sponsors negotiating these reductions flexibility to (a) shape the savings at their discretion, so long as the ten percent (10%) NPV discount was achieved, (b) offer modest increases in the generating capacity (subject to transmission feasibility and compliance with 2020 minimum technical requirements ("MTRs") for such increased capacity) with the related energy and RECs to be sold at market prices, as determined by PREPA's governing board ("Board Determined Market Prices"), and (c) make modest extensions to the term of the Operating PPOAs with the energy and RECs sold during such term extensions being priced at Board Determined Market Prices. Most of the owners/sponsors of these operating projects accommodated PREPA's request for price reductions, but Windmar did not.

11. After extensive negotiations with the above criteria in mind, PREPA was unable to negotiate modifications to the Operational PPOAs that PREPA believed would be sufficient for PREPA to assume the Operational Windmar PPOAs. Windmar (i) would not accept a price reduction for the Coto Laurel Project alleging that the Coto Laurel Project was "losing money,"

4

and (ii) would not accept a similar price reduction for the Martino Project, unless PREPA agreed to an approximately 1 MW capacity increase for the Martino Project without full MTR compliance (which is something that was required for all other operational PPOA project sponsors). Despite PREPA's insistence on full MTR compliance for all other PPOA project sponsors, in an effort to reach resolution with Windmar with respect to the Martino Project, PREPA offered to accept the proposed capacity increase if Windmar would comply with a reduced set of minimum technical requirements (i.e., voltage regulation and inclusion of some fiber optics). Windmar would not accept these relaxed technical requirements (and, particularly, voltage regulation), however, unless PREPA provided supporting documentation and technical studies around grid operations, which other project owners/sponsors did not request and would have been burdensome for PREPA to provide. It is worth noting as well that Windmar overbuilt the Martino project to 3.2 MW versus the 2.1 MW contemplated by the respective PPOA, making the project out of compliance with PREPA's generation limit requirement.

12. Accordingly, PREPA offered more to Windmar than it did to other operational PPOA project sponsors but Windmar would not accept PREPA's proposed terms. Each time an effort was made to reach final resolution with Windmar, Windmar raised additional issues and made incremental demands. After repeated attempts, over a period of months, to negotiate an acceptable price reduction (consistent with the reductions demanded from all other similarly situated project sponsors), it became clear that Windmar was unwilling to agree to the necessary concessions (even though those concessions were far less than what PREPA could have demanded).

**The Terminated PPOAs**

13. PREPA was also party to four (4) Terminated PPOAs, for which PREPA

5

determined to exercise its existing contractual termination rights. These Terminated PPOAs were for non-operational projects and were for above current Board Determined Market Prices for renewable energy. I believe that if the projects contemplated under the Terminated PPOAs were developed under current contractual terms, the energy prices and contractual conditions for these projects would impose an unnecessary financial burden on the ratepayers of Puerto Rico.

14. Accordingly, on March 25, 2020, PREPA's Governing Board authorized the termination and rejection of the Terminated PPOAs. Pursuant to such authorization, on April 23, 2020, PREPA notified Windmar that it had exercised its termination rights, which Windmar has challenged as ineffective. Because the Terminated PPOAs were executory as of the Petition Date and Windmar has challenged PREPA's termination, it is my understanding that PREPA also desires to reject the Terminated PPOAs pursuant to section 365 of the Bankruptcy Code to avoid any arguments about the efficacy of its terminations or allowance of any damages related thereto.

*Non-Operational PPOAs*

15. Beginning in early 2019, PREPA engaged in negotiations with non-operating PPOA counterparties that fulfilled certain criteria: (i) the contracts had been identified in the past by the Puerto Rico Planning Board, the Puerto Rico Management Permits Office (OGPe), and/or PREPA staff as having nearly completed their development activities, (ii) the counterparty had demonstrated a willingness to renegotiate pricing to reflect changes in the industry by agreeing to amend their agreements, and/or (iii) the counterparty had confirmed its willingness and potential ability to commence construction in the relatively near term. The Non-Operational PPOAs were included in this group and, much like the Terminated PPOAs, are above current Board Determined Market Prices for renewable energy.

16. From early 2019 through May of 2020, PREPA attempted to renegotiate the Non-

Operational PPOAs together with the other non-operational PPOAs mentioned above, but was unable to reach agreement with the contract counterparties.

17. Windmar encountered difficulties with the project and, on May 13, 2020, advised PREPA that it would "be better to postpone the decision until we hear back from the pertinent PREPA directorates, and the future of PREPA and the economy are clearer." As a result of the inability to reach agreement and indefinite postponement of the project, the non-Operational Windmar PPOA would not be ready to supply cost-effective renewable energy to PREPA in the near-term and such delay would create a financial burden to PREPA if it were ever built on current terms.

18. Similarly, PREPA negotiated with YFN Yabucoa until May 2020, including delivering a revised proposal on December 17, 2019, and in 2020 exchanging and discussing PPOA drafts, holding meetings to discuss technical issues and cost reductions, and taking other steps to bring YFN Yabucoa in line with the pricing that others had accepted. YFN Yabucoa delivered to PREPA a final proposal on May 15, 2020, that was still approximately twenty percent (20%) more expensive than the other renegotiated non-operating PPOAs.

19. PREPA also negotiated with M Solar over the same period as the others, including pricing discussions and similar efforts to move interconnection and other technical matters forward. M Solar made a counterproposal on April 27, 2020, placing them approximately fourteen percent (14%) above the pricing for the other renegotiated non-operating PPOAs or alternatively proposing PREPA to finance certain technical equipment for M Solar. While other pricing options were discussed, ultimately, M Solar could not reach agreement with PREPA on pricing in line with what had been accepted for other renegotiated non-operating PPOAs.

20. As a result of the above, it became clear that the projects contemplated by the Non-

Operational PPOAs would not be ready to supply cost-effective renewable energy to PREPA in the near-term and such delay would create a financial burden to PREPA if the projects contemplated under the Non-Operational PPOAs were ever built on current or the counterparties' proposed terms.[3]

21. Based on the foregoing, PREPA has determined the Rejected PPOAs are burdensome to PREPA and its ratepayers and that the rejection of these contracts would create significant cost savings for ratepayers by avoiding overpayment for power under the Rejected PPOAs.

*[Remainder of Page Intentionally Left Blank]*

---

[3] Notably, each of Windmar, M Solar, and YFN Yabucoa have recently commenced proceedings before the Puerto Rico Energy Bureau attempting to compel PREPA to renegotiate their contracts under specific parameters and to compel PREPA to assume or reject their PPOAs, in violation of the automatic stay in PREPA's Title III case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

November 17, 2020

_____
Fernando M. Padilla
Director
Restructuring, Fiscal Affairs and
Program Management Office of the
Puerto Rico Electric Power
Authority