# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Related to ECF No. 14978 |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>Related to ECF No. 1000<br><br>***This Pleading Relates to the Commonwealth and ERS Only, and Should Be Filed in Both Dockets.*** |

## RESPONSE OF THE BANK OF NEW YORK MELLON, AS FISCAL AGENT, TO COMMITTEES' MOTION TO STRIKE DECLARATION OF JOHN FAITH AND ACCOMPANYING EXHIBIT FROM FISCAL AGENT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 REGARDING *ULTRA VIRES* CHALLENGE

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 3

    A.    The Fiscal Agent's Pertinent Pleadings and Discovery Responses ...................... 3

    B.    Discovery Disclosed the 2002 DTC Operational Arrangements and DTC/Cede & Co.'s Central Role ........................................................................... 6

    C.    The Challenged Documents Are Not the Sole Bases for the Fiscal Agent's Arguments, and Unchallenged Documents Provide Additional Support ............... 9

ARGUMENT .............................................................................................................. 13

I.    THE FISCAL AGENT WAS NOT OBLIGATED TO SUPPLEMENT ITS DISCLOSURES ..................................................................................................... 13

II.    ANY FAILURE TO SUPPLEMENT/DISCLOSE WAS SUBSTANTIALLY JUSTIFIED AND/OR HARMLESS ...................................................................... 14

    A.    The Fiscal Agent was Substantially Justified in Not Supplementing Its Initial Disclosures ............................................................................................... 15

    B.    The Fiscal Agent's Conduct was Harmless .......................................................... 16

III.    THE COMMITTEES CANNOT SHOW THAT SANCTIONS ARE WARRANTED .......................................................................................................... 17

    A.    The Fiscal Agent Has No History of Discovery Violations ................................. 18

    B.    The Committees Have Not Been Prejudiced by the Fiscal Agent's Conduct ................................................................................. 19

IV.    PRECLUSION IS NOT WARRANTED ............................................................. 20

CONCLUSION ........................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bogosian v. R.I. Airport Corp.*,
   No. 14-080-ML, 2015 WL 3603841 (D.R.I. June 5, 2015)....................................................18

*Lawes v. CSA Architects & Eng'rs LLP*,
   963 F.3d 72 (1st Cir. 2020)....................................................................................................18, 20

*Linggi v. TE Connectivity Corp.*,
   No. 3:17-cv-1992, 2019 WL 2870825 (D. Or. July 3, 2019) ..................................................19

*Pina v. Children's Place*,
   740 F.3d 785 (1st Cir. 2014)....................................................................................................14, 17

*Young v. Gordon*,
   330 F.3d 76 (1st Cir. 2003)......................................................................................................20

**Statutes**

U.C.C. § 8-202 ..............................................................................................................2–4, 16, 17, 19

**Rules**

Fed. R. Civ. P. 37(c)(1)..............................................................................................................1

**Other Authorities**

Advisory Committee Notes to 1993 Amendment to Fed. R. Civ. P. 26(e) ...................................13

Advisory Committee Notes to 1993 Amendment to Fed. R. Civ. P. 37(c) ..................................16

Advisory Committee Notes to 2000 Amendment to Fed. R. Civ. P. 37(c) ..................................14

*Notice of Filing and Immediate Effectiveness of a Proposed Rule Change Relating
   to Modifications to the Existing Operational Arrangements*,
   67 Fed. Reg. 39,452–53 (June 2, 2002) ......................................................................................5

7 Moore's Federal Practice - Civil § 34.12 (2020) .......................................................................15

Pursuant to Rule 37 of the Federal Rules of Bankruptcy Procedure and Rule 37(c) of the
Federal Rules of Civil Procedure, The Bank of New York Mellon ("BNYM" or the "Fiscal
Agent"), as fiscal agent, respectfully submits this opposition to the motion (the "Motion") of the
Official Committee of Retired Employees of the Commonwealth of Puerto Rico, the Official
Committee of Unsecured Creditors, and the Special Claims Committee of the Financial
Oversight and Management Board for Puerto Rico (collectively the "Committees") to strike the
Declaration of John Faith and the DTC Operational Arrangements attached thereto as Exhibit A
(collectively, the "challenged documents") from the *Motion of The Bank of New York Mellon, as
Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires
Challenge* [ECF No. 14247] (the "MSJ") for alleged failure to supplement its disclosures under
Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure, made applicable here by Rule 7026 of
the Federal Rules of Bankruptcy Procedure.  The Fiscal Agent had no duty to supplement with
respect to the challenged documents.  Even if it did, any violation of Rule 37(c) of the Federal
Rules of Civil Procedure, made applicable here by Rule 7037 of the Federal Rules of Bankruptcy
Procedure, was either "substantially justified or is harmless."  Fed. R. Civ. P.  37(c)(1).[2]

## **PRELIMINARY STATEMENT**

1.    The Committees claim in the Motion that, because the Fiscal Agent did not (a)
identify a representative of The Depository Trust Company and its nominee, Cede & Co.
(collectively, "DTC") as a person with discoverable information, and (b) did not produce the
DTC Operational Arrangements dated February 2002 (the "2002 DTC Operational

---

[2] Capitalized terms used but not defined in this opposition have the meanings given in the Resolution.  "ECF No."
refers to the Electronic Case File No. in the Court's docket for the Title III proceedings of the Commonwealth of
Puerto Rico, Case No. 17 BK 3283-LTS (D.P.R.), or as otherwise specified.

Arrangements"), they are prejudiced by the Fiscal Agent's use of such information in support of the MSJ.  The Committees' claim is not credible.

2.      ***First***, the Fiscal Agent expressly advised the Committees in writing on October 25, 2019, that it would argue that the pension funding bonds (the "Bonds") issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), were valid in the hands of Cede & Co., the registered owner of the Bonds, pursuant to UCC § 8-202.  *See Joinder of The Bank of New York Mellon, as Fiscal Agent, in the Response of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to the Omnibus Claim Objections of the Official Committee of Unsecured Creditors and the Official Committee of Retired Employees of the Commonwealth Of Puerto Rico* ("Joinder") [ECF No. 9013]; *see infra* ¶ 8.  Although this disclosure alone was sufficient to satisfy any obligation of the Fiscal Agent with respect to its disclosures, the Committees could be neither surprised nor prejudiced that the Fiscal Agent's MSJ making this very argument was supported with (1) the Declaration of John Faith on behalf of DTC (the "DTC Declaration"), and (2) the 2002 DTC Operational Arrangements, attached as Exhibit A to the DTC Declaration.  *See* App. Ex. 9 to the *Statement of Undisputed Material Facts in Support of the Motion of The Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* ("SUF") [ECF No. 14249].

3.      ***Second***, the Fiscal Agent's initial disclosures reference the registered owner of the Bonds, and its written discovery, including interrogatory responses and responses to requests for admission, identify that entity as Cede & Co.  *See infra* ¶¶ 9–12.

4.      ***Third***, the Fiscal Agent's response to the Committees' request for documents expressly objected to providing publicly available documents—and the 2002 DTC Operational

Arrangements were filed with the U.S. Securities & Exchange Commission (the "SEC").  *See infra* ¶ 11; *see also infra* ¶¶ 9–12.  Moreover, the 2002 DTC Operational Arrangements were specifically cited in the expert report of Dr. William Bartley Hildreth.  The Committees could have requested the document in connection therewith, but chose not to.  *See infra* ¶¶ 14–15.

5.     **Fourth**, the Committees recognize that DTC is "a mere administrative agent and ministerial intermediary" that "played only a 'ministerial role' in connection with the ERS Bonds."  *Response to Motions for Summary Judgment on Ultra Vires* [ECF No. 14983] ("MSJ Response") at 40, 47.  Not surprisingly, then, the contents of the challenged documents are likewise non-prejudicial recitations of administrative and ministerial facts and policies.

6.     As shown below, the Fiscal Agent had no obligation to supplement its disclosures.  Even assuming it did, the Committees cannot satisfy the standard for the imposition of sanctions, particularly because they cannot show prejudice, the Fiscal Agent has not had a history of non-compliance with discovery, and any failure was substantially justified or harmless.

7.     This Court should deny the Motion in its entirety.

## FACTUAL BACKGROUND

### A. The Fiscal Agent's Pertinent Pleadings and Discovery Responses

8.     The Fiscal Agent's Joinder, filed on October 25, 2019, clearly and expressly advised all parties in writing of the Fiscal Agent's assertion that Cede & Co. was a purchaser of the Bonds without notice of any defect, and therefore could employ U.C.C. § 8-202 to overcome any argument that the issuance of the Bonds was *ultra vires*.  *See* Declaration of C. Neil Gray ("Gray Decl."), submitted herewith, ¶ 2 & Ex. 1.  Specifically, the Fiscal Agent advised the Committees:

> 4.     Each ERS Bond was issued in the form of a separate single authenticated fully registered bond.  Upon initial issuance, the ownership of each ERS Bond was registered in the registration books of ERS, which are maintained by the Fiscal Agent, in

the name of **Cede & Co. ("Cede"), as nominee of The Depository Trust Company
("DTC")**. The registered ownership of the ERS Bonds has not changed since the initial
issuance.  Cede **remains the registered owner of each ERS Bond**.

> 5.      DTC holds the ERS Bonds as securities depository for certain broker-
> dealers, banks, and other financial institutions (the "Participants"). The Participants act,
> directly or indirectly, for the benefit of beneficial owners of such bonds.
> . . . .
>
> 8.      [E]ven if ERS lacked authority to issue the ERS Bonds, and the
> Bondholders had notice of a defect, such bonds still would be enforceable under section
> 8-202 of the UCC because the sole registered owner of the ERS Bonds had no knowledge
> of any defect.  **The Committees do not allege and cannot meet their burden of
> proving that Cede had notice of any defect going to the validity of the ERS Bonds
> when they were issued to Cede in 2008.  Accordingly, under section 8-202 of the
> UCC, the ERS Bonds are valid and enforceable in the hands of Cede**.

Gray Decl. ¶ 3 & Ex. 1, Joinder ¶¶ 4–5, 8 (emphasis added, footnotes omitted).

9.      On November 1, 2019, the Fiscal Agent served the *Initial Disclosures of The
Bank of New York Mellon, as Fiscal Agent* ("Initial Disclosures").  *See* Motion Ex. 1.  Like the
Joinder, the Initial Disclosures also referenced the registered owner of the Bonds (which is Cede
& Co.).  The Fiscal Agent identified two categories of documents in its initial disclosures:  (i)
"The Resolution and related bond transaction documents, including but not limited to, all
supplements to the Resolution," and (ii) "[d]ocuments sufficient to show the registered holder(s)
of all ERS bonds offered pursuant to the Resolution."  *Id.* at 6.  Clearly, this placed the
Committees on notice that information concerning the "registered holder(s)" of the Bonds was
information the Fiscal Agent "may use to support its claims or defenses."  *See id*.  Similarly, the
Resolution and the three supplements pertaining, respectively, to the three series of Bonds
identified Cede & Co. as the registered owner of the Bonds.  *See* SUF 11–12; *see also* Gray
Decl. ¶¶ 4–5 & Ex. 2.

10.      The Initial Disclosures also "incorporate[d] by reference any witnesses who may
be identified by . . . any other party in interest to this proceeding during the course of discovery

in this proceeding" (Motion Ex. 1 at 5), and "all documents produced or identified by . . . any

other party in interest to this proceeding during the course of discovery in this proceeding." *Id*. at

6; *see also* Gray Decl. ¶¶ 6–7.  As noted below (*infra* ¶ 14), the expert retained by the ad hoc

group of beneficial owners of the Bonds represented by Jones Day (the "ERS Bondholder

Group") with respect to *ultra vires* issues identified in his expert report both Cede & Co. as the

owner of the Bonds and the 2002 DTC Operational Arrangements.

11.     On November 22, 2019, the Fiscal Agent served its response to the *Committees'*

*and Government Parties First Set of Requests for Production of Documents Related to the Ultra*

*Vires Proceedings*.  In its responses, the Fiscal Agent expressly objected to providing documents

that were "publicly available."  Motion Ex. 2 ¶ 14 & Response to Request No. 29; Gray Decl.

¶¶ 8–10.  The 2002 DTC Operational Arrangements were filed with the SEC.  *See Self-*

*Regulatory Organizations; The Depository Trust Company; Notice of Filing and Immediate*

*Effectiveness of a Proposed Rule Change Relating to Modifications to the Existing Operational*

*Arrangements*, 67 Fed. Reg. 39,452–53 (June 2, 2002) (DTC "filed with" the SEC a document

entitled "'Operational Arrangements (Necessary for an Issue to Become and Remain Eligible for

DTC Services)' dated February 2002").  The 2002 DTC Operational Arrangements is a DTC

document, not a Fiscal Agent document.  Gray Decl. ¶ 15; DTC Declaration ¶ 12.

12.     The Fiscal Agent similarly objected to providing information that is "publicly

available" in its responses and objections to the Committees' and Government Parties'

interrogatories and requests for admission (*see* Gray Decl. ¶¶ 16–17, 20–21 & Exs. 4–5), and in

each of those documents explicitly identified Cede & Co., as nominee for DTC, as the registered

owner of all of the Bonds.  The Committees specifically requested the information concerning

the registered owner:  Interrogatory 16 requested identification of each "registered owner" of the

Bonds, and the Fiscal Agent responded that "[t]he registered owner of all outstanding ERS

Bonds is Cede & Co., as nominee for the Depository Trust Company."  The Committees' RFA 7

requested an admission "that the original owner of record for each ERS Bond has never

transferred record ownership of any ERS Bond to any party," and the Fiscal Agent, having

previously identified Cede & Co. as the purchaser of the Bonds (RFA 6), averred in response

"the original registered owner for each ERS Bond has not transferred ownership of any ERS

Bond."  *See* Gray Decl. ¶¶ 18, 22–23 & Ex. 4 at Interrogatory No. 16, Ex. 5 at RFA 6–7.

### B.  Discovery Disclosed the 2002 DTC Operational Arrangements and DTC/Cede & Co.'s Central Role

13.     On July 1, 2020, the ERS Bondholder Group submitted the expert report of Dr.

William Bartley Hildreth with respect to the *ultra vires* issue.  Gray Decl. ¶ 25.  That report is

part of the record on the MSJ.  *See* Ex. 1 to Declaration of W. Bartley Hildreth, dated September

9, 2020 [ECF No. 14244] ("Hildreth Report").

14.     In that report, Dr. Hildreth expressly cited the 2002 DTC Operational

Arrangements, and included this document among his references.  Hildreth Report ¶ 153 & p. 50

("Depository Trust Company, Operational Arrangements Necessary for an Issue to Become and

Remain Eligible for DTC Services, February 20, 2002").  Dr. Hildreth also identified Cede &

Co. as the registered owner of the Bonds.  Hildreth Report ¶ 155; *see also id.* ¶¶ 94, 145; Gray

Decl. ¶¶ 26–30.

15.     The parties agreed that, with respect to Dr. Hildreth's expert report and the

authorities cited therein, the ERS Bondholder Group need "not produce publicly available,

published materials (e.g., articles and books)," with the proviso that "if there are particular such

materials that you have difficulty locating, let us know and we will do our best to help get them

to you, as long as you will agree to do the same for us".  Gray Decl. ¶ 31 & Ex. 6.  To the best of

the Fiscal Agent's knowledge, no party requested a copy of the 2002 DTC Operational

Arrangements. *See* Gray Decl. ¶ 31.

16.     Dr. Hildreth was deposed for less than seven hours—six hours, nine minutes—on

August 10, 2020, including by the Committees.  No one questioned Dr. Hildreth with respect to

Cede & Co.'s knowledge of any defect going to the validity of the bonds.  Gray Decl. ¶ 32.

17.     Moreover, the documents produced and testimony elicited in discovery are replete

with references to, and thereby confirm the central role of DTC and Cede & Co.  For example

(*see* Gray Decl. ¶ 33):

    a.  The ERS Bonds and the Fiscal Agent's register, produced by BNYM in the

        litigation, specifically identify Cede & Co. as the registered owner of the Bonds.

        Gray Decl. ¶ 33.a; SUF App. Exs. 5–8; SUF 12–13.  The Supplemental

        Resolutions produced in discovery likewise specifically identify Cede & Co. as

        the registered owner of the Bonds.  Gray Decl. ¶ 33.b; SUF 15, SUF App. Exs. 2–

        4 § 2.5(b).

    b.  Moreover, appendices to the Official Statement for each of the Bond Series,

        produced in discovery, describe the Book Entry System and DTC's role therein

        Gray Decl. ¶ 33.c; SUF 19; SUF App. Exs. 10–12.

    c.  BNYM produced all of the communications with DTC in its possession, custody,

        or control required by the discovery agreement with the Committees and the

        government parties.  In addition, the lead underwriter likewise produced

        communications with DTC.  (BNYM cited to such documents in its motion [SUF

        App. Exs. 16–19].)  Gray Decl ¶ 33.d.

d.  The Receipt and Safekeeping Agreement for each Series provides: "The FAST

Agent [BNYM] agrees to hold the Bonds in safekeeping on behalf of DTC in

accordance with the DTC Operational Arrangements memorandum dated

November 22, 2000, as it may be amended from time to time." Gray Decl. 33.e;

SUF App. Ex. 14.

e.  ERS Resolution 2008-02, dated January 24, 2008, provides: "The Blanket Letter

of Authorization of the System to the Depository Trust Company ("DTC")

regarding matters relating to the deposit of the Series A Bonds with DTC, in

standard form published by DTC (the "Letter of Representations"), is hereby

accepted and approved, and the Administrator or any Deputy Administrator of the

System is hereby authorized and directed to execute and deliver the Letter of

Representations on behalf of the System with such changes, insertions or

omissions as shall be approved by the Administrator or any Deputy Administrator

of the System, such person's execution thereof to be conclusive evidence of the

approval by the Board of any changes, insertions or omissions therein." Gray

Decl. 33.f; SUF App. Ex. 15.

f.  Numerous witnesses testified about DTC and/or Cede & Co. *See* Gray Decl.

¶ 33.g & Ex. 7. These witnesses included the Committees' expert Robert Doty,

who testified:

Q  Could you tell us what Cede and Company is?

A  Cede and Company is the designee of Depository Trust Company to be
shown as the owner of the bonds for purposes of facilitating electronic
trading.

Q  And for the record, could you tell us what the Depository Trust Company
is?

- 8 -

A The Depository Trust Company is a company created to facilitate electronic trading, and to eliminate paperwork so that we no longer have paper bonds. We have electronic bonds.

Gray Decl. ¶ 33.h (Doty Dep. 51:7–19).

### C. The Challenged Documents Are Not the Sole Bases for the Fiscal Agent's Arguments, and Unchallenged Documents Provide Additional Support

18.　　In support of its MSJ, BNYM relied on myriad documents. The SUF was supported by 18 documents in addition to the DTC Declaration and its exhibit. That total does not even include the many additional documents incorporated by reference from the *ERS Bondholders' Rule 56(b) Statement of Undisputed Facts in Support of Motion for Summary Judgment on Ultra Vires Issues and Proceedings* [ECF No. 14242], filed September 11, 2020. Moreover, of the 47 paragraphs in the SUF, only six relied solely on the DTC Declaration (SUF 35, 47) or the 2002 DTC Operational Arrangements (SUF 31–34). Most of these facts are background (*e.g.*, *id.*) and should not be in dispute. In another seven, the DTC Declaration and/or 2002 DTC Operational Arrangements were cited along with one or more other documents (SUF 13, 20–21, 30, 36–38). Thus, the Committees' statement that the Fiscal Agent's MSJ "relies almost exclusively upon" the challenged documents (Motion ¶ 2) is not correct.

19.　　The DTC Declaration and 2002 DTC Operational Arrangements provide clear support for the statements at issue, in whole or in part. The statements at issue are generally ministerial facts so undeniable that they are also supported by documents that the Committees do not challenge and/or by other publicly available documents.

　　　a.　SUF 13: This statement asserts that Cede & Co. has been the sole registered owner of the Bonds since inception. The citation to "App. Ex. 8, Fiscal Agent's Detailed Holder Lists [FA0001776–84]" in SUF 13 provides all the support necessary for this statement.

b.  SUF 20:  The Committees admit this statement is Undisputed.  *Committees'
Response to Statement of Undisputed Material Facts in Support of the Motion of
the Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant
to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* [ECF No. 14982] ("SUF
Response") at 7 (Response to SUF 20).

c.  SUF 21:  The Committees apparently only dispute the citation to the challenged
documents, and the statement that "Among the rules that were filed with the SEC
are DTC's Operational Arrangements."  *See* SUF Response at 7–8.  As set forth
above, the Federal Register confirms the filing of the 2002 DTC Operational
Arrangements with the SEC.  *See supra* ¶ 11.

d.  SUF 30–31:  These SUFs assert that ERS executed DTC's form of Blanket Letter
of Representations ("BLOR"), and that the BLOR states that the Issuer will
comply with DTC's Operational Arrangements.  In disputing SUF 30, the
Committees ignore the citation to App. Ex. 15, the ERS Certification of
Resolution 2008-02, § 7, which authorized ERS to execute the BLOR.  *See supra*
¶ 17.e; SUF Response at 9–10.  Moreover, Dr. Hildreth cited the "Depository
Trust & Clearing Corporation, Blanket Letter of Representations" as one of his
references (Hildreth Report at 50), a reference the Committees chose not to
request.  Additional citations support this SUF.  For example, the publicly
available DTC website provides:

> The Blanket Issuer Letter of Representations (BLOR) is an important legal
> document that must be completed by the issuer and co-issuer(s), if
> applicable, in order to make … a book-entry-only security DTC-eligible.

*See* https://www.dtcc.com/issuer-services/index.html; this page also links to a

copy of the BLOR, which states, as set forth in SUF 31:

> Issuer represents to DTC that issuer will comply with the requirements
> stated in DTC's Operational Arrangements, as they may be amended from
> time to time.

The DTC Eligibility Questionnaires submitted with App. Exs. 16–19 support

these SUFs, stating that because the "yes" box signifying the Bonds were a

"book-entry only issue" was checked, "a Letter of Representation is required."

SUF App. Ex. 16 at UBS-ERS Ultra_Vires-0043862; SUF App. Ex. 17 at UBS-

ERS Ultra_Vires-0076150; SUF App. Ex. 18 at UBS-ERS Ultra_Vires-0087897;

SUF App. Ex. 19 at UBS-ERS Ultra_Vires-0100254 (collectively, "DTC

Eligibility Questionnaires").  The fact that the Bonds were issued under the DTC

book-entry system shows that ERS executed a BLOR.

e.  **SUF 32**:  This SUF notes that the Operational Arrangements provide that DTC

has no responsibility to ascertain compliance with laws.  This SUF is supported in

its entirety by Hildreth Report ¶ 153.  Further, DTC's website provides:

> Operational Arrangements is the document that outlines what legal steps
> are necessary for securities to become and remain eligible for DTC
> services.  All issuers of securities deposited at DTC, Agents and
> Underwriters are required to adhere to the requirements stated in these
> Operational Arrangements.

*See* https://www.dtcc.com/issuer-services/index.html; this page also links to a

copy of the current Operational Arrangements, which states (at p. 5), as set forth

in SUF 32, that:

> Issuer, with respect to Securities issued by it and held at DTC, recognizes
> that DTC does not in any way undertake to, and shall not have any
> responsibility to, monitor or ascertain the compliance of any transactions
> in the Securities with any applicable law, rule, or regulation, including, but

- 11 -

not limited to . . . any other local, state, federal, or foreign laws or regulations thereunder.

Finally, the Fiscal Agent's MSJ at 22–24 cites other authorities supporting this statement.

f.  SUF 33–35:  These SUFs set forth that the documents required by DTC for securities to be "Eligible Securities"—including its Eligibility Questionnaire and the offering document—do not have to be submitted until ten business days prior to closing, and can be submitted even later.  The DTC Eligibility Questionnaires submitted with App. Exs. 16–19 support these SUFs, as they provide as follows:

> To make a new issue of securities DTC eligible, the completed questionnaire and a copy of the offering statement/prospectus (preliminary or final) must be submitted to DTC's Underwriting Dept. at least 10 business days prior to the issue's closing date.  If complete CUSIP INFORMATION (CUSIP numbers, interest rates, and final maturities) is not included with the questionnaire, please provide to DTC in writing at least seven business days prior to the closing date.

The Committees do not dispute this quotation.  *See* SUF Response at 16–17 (Response to SUF 45).  The fact that DTC "will work with underwriters that submit documents closer to the closing" (SUF 33) is evidenced by the dates on which the underwriter here submitted its documentation (*see* SUF 36–38).

g.  SUF 36–38:  The Committees dispute the sentence in each of these SUFs that state the date upon which DTC accepted each Series of Bonds as an Eligible Security.  The remainder of the statements in these SUFs are supported by unchallenged documents, and those statements make clear that at some point prior to issuance, DTC accepted each Series of Bonds as an Eligible Security— otherwise, they would not have been issued as part of DTC's book-entry system. *See, e.g.,* SUF Response at 8 (Response to SUF 24).

- 12 -

h.  SUF 47:  This SUF states that DTC had no notice of a defect going to the validity
of the Bonds at the time of issuance.  This conclusion is also supported by SUF
36–43, reciting the documents DTC received and setting out the language in each
stating that the Bonds were authorized; and the other authorities cited at MSJ 22–
24.

i.  Finally, the Committees also dispute SUF 44, which does not even cite to the
challenged documents.  The Fiscal Agent cited and included all the submissions
to DTC regarding the Bonds produced by UBS, which made the submissions at
issue.  SUF 36–38, 44, citing App. Exs. 16–19.

20.     Given all of the above circumstances, the Fiscal Agent justifiably believed that it
did not have an obligation to supplement its responses.  Gray Decl. ¶ 34.

21.     The Motion represents the first time in these ERS proceedings—indeed, in any of
the Puerto Rico Title III proceedings—that the Fiscal Agent has been accused of a discovery
violation, or any sanctionable conduct for that matter.  The Fiscal Agent has always complied
with its litigation obligations—discovery or otherwise—in these Title III proceedings.  Gray
Decl. ¶ 36.

## **ARGUMENT**

## I.    **THE FISCAL AGENT WAS NOT OBLIGATED TO SUPPLEMENT ITS DISCLOSURES**

22.     Under Rule 26(e), "[t]here is, however, no obligation to provide supplemental or
corrective information that has been otherwise made known to the parties in writing or during the
discovery process, as when a witness not previously disclosed is identified during the taking of a
deposition or when an expert during a deposition corrects information contained in an earlier
report."  Advisory Committee Notes to the 1993 Amendment to Fed. R. Civ. P. 26(e); *accord*

- 13 -

*Pina v. Children's Place*, 740 F.3d 785, 793 (1st Cir. 2014) (affirming admission of witness

affidavit submitted on summary judgment).

23.    That DTC/Cede & Co. was a potential witness "ha[d] been otherwise made

known" to the Committees in writing.  Specifically, the Joinder expressly notified the

Committees of the exact argument that the Fiscal Agent made in its MSJ—that Cede & Co. was

a purchaser for value of the Bonds without notice of any defect going to their validity.  *See supra*

¶ 8.  The Fiscal Agent also referenced the registered owner of the Bonds in its initial disclosures

(*supra* ¶¶ 9–10), as well as in its responses to interrogatories and requests for admission (*supra*

¶¶ 11–12).

24.    Moreover, the discovery in this case was replete with references to DTC and Cede

& Co., and the role they played (*supra* ¶¶ 13–17).  Notably, the Committees do not dispute

DTC's role.  SUF Response at 7 (Response to SUF 18–19).

25.    Similarly, the 2002 DTC Operational Arrangements were disclosed in the

Hildreth Report.  The Committees had an opportunity to request the document, and to depose Dr.

Hildreth with respect thereto.  They chose not to.  *Supra* ¶¶ 13–14.

26.    The Fiscal Agent thus had no obligation to supplement its disclosure with respect

to the challenged evidence.  The Motion should be denied outright on this basis.

## II.    ANY FAILURE TO SUPPLEMENT/DISCLOSE WAS SUBSTANTIALLY JUSTIFIED AND/OR HARMLESS

27.    Rule 37(c)'s sanction power "only applies when the failure to supplement was

'without substantial justification.'  Even if the failure was not substantially justified, a party

should be allowed to use the material that was not disclosed if the lack of earlier notice was

harmless."  Advisory Committee Notes to 2000 Amendment to Fed. R. Civ. P. 37(c).  Here, the

Fiscal Agent's actions were both substantially justified and harmless, negating any need to consider the factors necessary to warrant sanctions. *See* Points III–IV, *infra*.

### A. The Fiscal Agent was Substantially Justified in Not Supplementing Its Initial Disclosures

28.     The facts set forth in Point I apply equally here: The Fiscal Agent was substantially justified in its reasonable belief that it did not have a duty to supplement.

29.     Among the Fiscal Agent's justifications for not producing the 2002 DTC Operational Arrangements are the following:

> a.   The Committees do not dispute "that the DTC rules applicable to its participants are on file with the Securities and Exchange Commission." SUF Response at 7–8 (Response to SUF 21). The 2002 DTC Operational Arrangements were filed with the SEC. *Supra* ¶ 11. The Fiscal Agent clearly stated that it would not be providing publicly available documents in response to the Committees' document requests (*see id.*), and the Committees did not challenge that objection (*see* Gray Decl. ¶¶ 11–14). "A court may refuse to order production of documents of public record that are equally accessible to all parties." 7 Moore's Federal Practice - Civil § 34.12 (2020).

> b.   Moreover, the 2002 DTC Operational Arrangements were specifically disclosed in the expert report of Dr. Hildreth, and the Committees had an express opportunity to request production of that document, but they did not do so (*supra* ¶¶ 14–15).

30.     Accordingly, the Fiscal Agent reasonably believed that it did not have to disclose that third-party public document, and was substantially justified in that belief.

31.     With respect to the DTC Declaration, the Fiscal Agent had disclosed in full that it
would be arguing that UCC § 8-202 protected the registered owner—Cede & Co.—as a
purchaser for value without notice of a defect going to the Bonds' validity, and the fact that the
registered owner was an entity of interest was disclosed in its Initial Disclosures, as well as later
discovery (*see supra* ¶¶ 8–10, 12–14, 17).  The Committees could have pursued related
discovery, but they chose not to do so.  Moreover, the DTC Declaration contains matters that are
generally acknowledged and not controverted.  Many are ascertainable from other sources (*see
supra* ¶ 19). Further, the Fiscal Agent learned that Mr. Faith would be the declarant only a few
days before he executed the DTC Declaration (Gray Decl. ¶ 35).  Accordingly, the Fiscal Agent
reasonably believed that it did not have to supplement its disclosures to further identify DTC or a
specific employee thereof as a potential witness, and was substantially justified in that belief.

### B.  The Fiscal Agent's Conduct was Harmless

32.     Even if the Fiscal Agent should have disclosed DTC as a witness and/or produced
the 2002 DTC Operational Arrangements, any such failure was harmless.

33.     The Advisory Committee Notes to the 1993 Amendment to Rule 37(c) provide
that "Limiting the automatic sanction to violations 'without substantial justification,' coupled
with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in
a variety of situations:  *e.g*., the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the
name of a potential witness known to all parties [or] the failure to list as a trial witness a person
so listed by another party".

34.     The Committees concede that "Cede & Co. is the record owner of the Bonds"
SUF Response at 5 (Response to SUF 12).  That concession shows that any failure to disclose
DTC/Cede & Co. is harmless, because the fact that Cede & Co. was the registered owner was

- 16 -

"known to all parties."  That the Fiscal Agent intended to argue that Cede & Co. did not have

notice of any defect pursuant to UCC § 8-202 was made clear in the Joinder.

35.     The Committees erroneously argue that the "Fiscal Agent relies primarily" on the

challenged documents "[t]o support its argument that Cede & Co. is a protected party under UCC

§ 8-202(b)."  Motion ¶ 4; *see also id.* ¶ 19 ("the Fiscal Agent exclusively relies on" the

challenged documents to "prove" that "Cede & Co. is a purchaser for value and was without

notice of the ERS Bonds' defect when it became the registered owner of the ERS bonds"); *id.*

¶ 22 ("Mr. Faith's testimony constitutes the Fiscal Agent's entire case").

36.     To the contrary, the Fiscal Agent relies principally on the UCC itself, specifically

UCC § 8-116, to support its argument that Cede & Co., as the registered owner, is a protected

party under UCC § 8-202(b).  *See* MSJ at 3–4, 17–18.  It is noteworthy that the Committees

completely ignore this provision in their MSJ Response.

37.     Once the Fiscal Agent pleaded—more than one year ago—that it would argue that

UCC § 8-202 was applicable to Cede & Co., the Committees had all the information they needed

to know that the Fiscal Agent denied that Cede & Co. had notice of any defect.  There is no

harm, no prejudice, from the Fiscal Agent's use of the challenged documents.

38.     Given all the disclosures above—including that Cede & Co. was the registered

owner and that the registered owner's notice (or lack thereof) of any defect was at issue in the

context of UCC § 8-202—the Committees cannot demonstrate any prejudice or surprise or other

harm from the challenged documents.  *Pina*, 740 F.3d at 794 (affirming denial of motion to

strike given prior disclosures and resulting lack of prejudice).

## III.   THE COMMITTEES CANNOT SHOW THAT SANCTIONS ARE WARRANTED

39.     The Committees' Motion falls woefully short of demonstrating that the Fiscal

Agent should be sanctioned.

- 17 -

40.     "The party seeking the imposition of sanctions bears the burden of proof."
*Bogosian v. R.I. Airport Corp.*, No. 14-080-ML, 2015 WL 3603841, at *2 (D.R.I. June 5, 2015).

41.     "The First Circuit has provided a non-exhaustive list of substantive and
procedural factors to be considered in determining a motion for sanctions.  They include (1)
severity of the discovery violations, (2) legitimacy of the party's excuse for failing to comply, (3)
repetition of violations, (4) deliberateness of the misconduct, (5) mitigating excuses, (6)
prejudice to the other party and to the operations of the court, and (7) adequacy of lesser
sanctions." *Bogosian*, 2015 WL 3603841, *2 (denying sanctions).  The First Circuit employs a
similar list when its reviews a district court's sanction order, "look[ing] to the history of the
litigation, the proponent's need for the challenged evidence, the justification (if any) for the late
disclosure, and the opponent's ability to overcome its adverse effects." *Lawes v. CSA Architects
& Eng'rs LLP*, 963 F.3d 72, 92 (1st Cir. 2020) (internal citations and quotations omitted); *see*
Motion ¶ 17.  That court recently reiterated that "the focus of a preclusion inquiry is mainly upon
surprise and prejudice to defendants." *Lawes*, 963 F.3d at 92 (internal citations and quotations
omitted).  None of the factors favor the imposition of sanctions.

### A.  The Fiscal Agent Has No History of Discovery Violations

42.     The Committees point to no prior instance where the Fiscal Agent was the subject
of any claim of violative discovery behavior.  That is because there is no such prior instance.
The Fiscal Agent has always complied with its discovery obligations—not just in the ERS case
but in the entirety of these Title III proceedings to date.  This Motion marks the first time the
Fiscal Agent has been the target of a claim of sanctionable conduct—in discovery or otherwise.
*Supra* ¶ 21; Gray Decl. ¶ 36.

### B. The Committees Have Not Been Prejudiced by the Fiscal Agent's Conduct

43.     The Committees admit that they "do not believe this evidence actually is relevant
to whether section 8-202(b) can protect the Fiscal Agent's claim."  Motion ¶ 3; *see also id.* ¶ 19
("Fiscal Agent's purported evidence is irrelevant to whether the Fiscal Agent's claim can be
redeemed by UCC § 8-202(b).").  Thus, the Committees' protestations of "prejudice" (Motion
¶ 22) ring hollow.  *See Linggi v. TE Connectivity Corp.*, No. 3:17-cv-1992, 2019 WL 2870825,
at *7 n.3 (D. Or. July 3, 2019) ("Because Defendant concedes that the evidence is not material,
the Court concludes that a sanction prohibiting Plaintiff from relying on the Edwards declaration
is not necessary.").

44.     The only purported prejudice the Committees identify from the introduction of
Mr. Faith's declaration is the denial of "the opportunity to test the veracity of Mr. Faith's
testimony at a deposition" and to "pursue production of Mr. Faith's documents that might also
bring into question the veracity of his testimony."  Motion ¶ 22.  But the Committees do not
specify any statements they need to test.  Do they really want to explore statements governing
DTC's operations?  As noted above (*supra* ¶ 19), those statements are all supportable with other
sources.

45.     The Committees then point to three sentences in the MSJ allegedly supported only
by citation to the 2002 DTC Operational Arrangements.  *See* Motion ¶ 25.  Each of the
sentences—dealing with DTC's lack of any obligation to investigate the validity of the Bonds—
is supported by a cite to SUF 32.  As noted above, that SUF is supported in full by Hildreth
Report ¶ 153 and other documents.  *Supra* ¶ 19.e.  Moreover, MSJ 22–24 cites several other
authorities supporting the Fiscal Agent's arguments concerning the limited nature of DTC's
obligations of due diligence.  Thus, there is no prejudice.

- 19 -

46.     Indeed, the Committees admit that "the Fiscal Agent is correct when it states that
DTC played only a 'ministerial role' in connection with the ERS Bonds."  MSJ Response at 40.
The Committees quote a case "describing Cede & Co. as 'merely a mechanism' that 'provide[s]
perfunctory services which facilitate investing.'"  *Id*.; *see also id*. at 42 (describing DTC as "a
ministerial intermediary"); *id*. at 47 ("a mere administrative agent and ministerial intermediary").
There is nothing in the challenged documents that contradicts these statements, and the
Committees point to none.  The facts concerning administrative and ministerial procedures set
forth in the challenged documents are neither surprising nor prejudicial.  The Committees even
provisionally cite to the 2002 DTC Operational Arrangements themselves.  *Id.* at 40 n.6.

47.     In light of the lack of prejudice, the Fiscal Agent's record of compliance, and the
showing of justification and harmlessness set forth in Point II, *supra*, the Committees cannot
carry their burden of demonstrating that sanctions are warranted.

## IV.   PRECLUSION IS NOT WARRANTED

48.     Given all the factors discussed above, sanctions are not warranted.  Should the
Court determine otherwise, however, preclusion is not an appropriate remedy here.

49.     As the First Circuit has recently reiterated:  "Preclusion is not strictly required,
however.  'When noncompliance occurs, the ordering court should consider the totality of events
and then choose from the broad universe of available sanctions in an effort to fit the punishment
to the severity and circumstances of the violation.'"  *Lawes v. CSA Architects & Eng'rs LLP*, 963
F.3d 72, 91 (1st Cir. 2020) (reversing preclusion sanction) (quoting *Young v. Gordon*, 330 F.3d
76, 81 (1st Cir. 2003)) (emphasis added by *Lawes* court).

50.     Here—where Cede & Co.'s involvement was apparent from the face of the
Joinder, written discovery, produced documents, and fact and expert depositions; where the 2002
DTC Operational Arrangements were relied on by an expert and the Committees did not avail

themselves of their right to obtain that document; where the facts at issue are not controversial and are supported by other evidence not challenged by the Committees; where the Fiscal Agent has no history of discovery violations in these proceedings—any harm can be redressed by lesser sanctions.

51.     Should the Court strike any part of the challenged documents, the Fiscal Agent requests leave to resubmit any statements of undisputed facts in its SUF affected by that action so that it can support them with other evidence, including the evidence set forth in paragraph 19, *supra*, and/or that the Court deem such statements amended by the evidence set forth in paragraph 19, *supra*.

## **CONCLUSION**

For all the foregoing reasons, the Fiscal Agent respectfully requests that the Court deny the Motion in its entirety.

*[The remainder of this page was intentionally left blank.]*

Dated:  November 19, 2020
       San Juan, Puerto Rico

**SEPULVADO, MALDONADO & COURET**

By:   */s/ Albéniz Couret-Fuentes*
     Albéniz Couret-Fuentes
     USDC-PR Bar No. 222207
     304 Ponce de León Ave. – Suite 990
     San Juan, PR 00918
     Telephone: (787) 765-5656
     Facsimile:  (787) 294-0073
     Email:  acouret@smclawpr.com


**REED SMITH LLP**

Eric A. Schaffer (*Pro Hac Vice*)
Luke A. Sizemore (*Pro Hac Vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email:  eschaffer@reedsmith.com
Email:  lsizemore@reedsmith.com

C. Neil Gray (*Pro Hac Vice*)
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email:  cgray@reedsmith.com

*Counsel to The Bank of New York Mellon,*
*as fiscal agent*