## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>       Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Related to ECF Nos. 14247 and 14983 |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>       Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>Related to ECF Nos. 976 and 1004<br><br>***This Pleading Relates to the Commonwealth and ERS Only, and Should Be Filed in Both Dockets.*** |

### REPLY OF THE BANK OF NEW YORK MELLON, AS FISCAL AGENT, TO THE RESPONSE OF COMMITTEES TO (I) ERS BONDHOLDERS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON *ULTRA VIRES* ISSUES AND PROCEEDINGS; AND (II) MOTION OF THE BANK OF NEW YORK MELLON, AS FISCAL AGENT, FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 REGARDING *ULTRA VIRES* CHALLENGE

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 5

I.     THE BONDS ARE VALID AND BINDING OBLIGATIONS OF ERS. ....................... 5

II.    THE BONDS ARE VALID AND ENFORCEABLE UNDER UCC § 8-202(b). ........... 5

     A.    SECTION 8-202(b) APPLIES TO *ULTRA VIRES* BOND ISSUANCES ............. 5

     B.    CEDE & CO. IS THE "PURCHASER" UNDER UCC § 8-202(b). .................... 10

     C.    ANY NOTICE TO ENTITLEMENT HOLDERS CANNOT BE
          IMPUTED TO CEDE & CO. .............................................................. 17

     D.    CEDE & CO. HAD NO NOTICE OF THE ALLEGED DEFECT. ..................... 19

     E.    THE OBJECTING PARTIES WAIVED THE DEFENSE OF A
          CONSTITUTIONAL DEFECT, WHICH IS MERITLESS IN ANY
          EVENT. ........................................................................................ 22

          1.    The Objecting Parties' Failure To Plead Their Constitutional
               Defense Operates As A Waiver. ............................................. 22

          2.    Even If The Defense Were Not Waived, There Is No
               Constitutional Defect Going To The Validity Of The Bonds. ................. 24

     CONCLUSION .................................................................................................... 27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997)......................................................................................15

*Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*,
415 F.3d 2425 (2d Cir. 2005)..................................................................................14

*Am. Sec. Transfer, Inc. v. Pantheon Indus., Inc.*,
871 F. Supp. 400 (D. Colo. 1994)......................................................................25, 26

*Bank of N.Y. v. Tri Polyta Fin. B.V.*,
No. 01 Civ. 9104 (LTS), 2003 WL 1960587 (S.D.N.Y. Apr. 28, 2003) ................15

*Bankhaus Herman Lampe KG v. Mercantile-Safe Deposit & Trust Co.*,
466 F. Supp. 1133 (S.D.N.Y. 1979).........................................................................9

*In re Bd. of Dirs. of Multicanal S.A.*,
314 B.R. 486 (Bankr. S.D.N.Y. 2004)....................................................................16

*Byrd v. Martin, Hopkins, Lemon & Carter, P.C.*,
564 F. Supp. 1425 (W.D. Va. 1983) ......................................................................6, 8

*Cecort Realty Development Inc. v. Llompart-Zeno*,
100 F. Supp. 3d 145 (D.P.R. 2015)........................................................................26

*Continental Ins. Co. v. Yankee Plastics, Inc.*,
1977 WL 25562, 21 UCC Rep. Serv. 621 (N.Y. Sup. Ct. Apr. 14, 1977)................9

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
790 F.3d 411 (2d Cir. 2015)....................................................................................14

*Cortlandt St. Recovery Corp. v. Hellas Telecomms. S.A.R.L.*,
996 N.Y.S.2d 476 (N.Y. Sup. Ct. 2014) ................................................................14

*Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.)*,
278 B.R. 325 (Bankr. E.D.N.Y. 2002)....................................................................23

*De Jesús González v. Autoridad de Carreteras*,
148 D.P.R. 255 (1999) ...........................................................................................26

*District Tp. of Doon v. Cummins*,
142 U.S. 366 (1892)..................................................................................................6

*Diverse Partners, LP v. Agribank, FCB*,
    No. 16-cv-9526 (VEC), 2017 WL 4119649 (S.D.N.Y. Sept. 14, 2017)................................14

*Dixon County v. Field*,
    111 U.S. 83 (1884)..................................................................................................................6

*Gauthier v. Lopez-Nieves*,
    135 F. Supp. 2d 311 (D.P.R. 2001)........................................................................................7

*Giovanini v. Horizon Corp.*,
    No. 5961, 1979 WL 178568 (Del. Ch. Sept. 14, 1979) ........................................................20

*Heartland Holdings, Inc. v. U.S. Trust Co. of Texas N.A.*,
    316 S.W.3d 1 (Tex. App. 2010)............................................................................................14

*In re Hen House*, 530 U.S. 1, 13 (2000) .....................................................................................17

*Jewelers Mut. Ins. Co. v. N. Barquet, Inc.*,
    410 F.3d 2 (1st Cir. 2005)....................................................................................................23

*MacKay Shields v. Sea Containers*,
    300 A.D.2d 165 (N.Y. App. Div. 2002) ................................................................................14

*Marina v. Comisión de Seguridad y Protección Pública*,
    170 D.P.R. 847 (2007) .........................................................................................................26

*Met-Al, Inc. v. Hansen Storage Co.*,
    844 F. Supp. 485 (E.D. Wis. 1994).......................................................................................10

*Montgomery v. Hughes Developers, Inc.*,
    873 So. 2d 1109 (Ala. 2003) ..........................................................................................25, 26

*Noe v. Kropf*,
    C.A. No. 4050, 2009 WL 10425281 (Del. Ch. Jan. 15, 2009) .................................................8

*People v. Mitchell*,
    No. B254321, 2015 WL 7778025 (Cal. Ct. App. Dec. 3, 2015) ............................................10

*Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
    ---- F. Supp. 3d ---, No. 19 Civ 10023, 2020 WL 6135761 (S.D.N.Y. Oct. 20,
    2020) ....................................................................................................4, 24, 25, 26, 27

*Plaza Carolina Mall, L.P. v. Municipality of Barceloneta*,
    91 F. Supp. 3d 267 (D.P.R. 2015)......................................................................................6, 26

*Raymond James & Assoc. v. The Bank of New York Trust Co., N.A.*,
    No. 8:07-CV-239-T-27TBM, 2008 WL 186590 (M.D. Fla. Jan. 18, 2008)............................15

*RB Assoc. of N.J., L.P. v. Gillette Co.*,
No. 9711, 1988 WL 27731 (Del. Ch. Mar. 22, 1988).............................................................20

*In re Rede Energia S.A.*,
515 B.R. 69 (Bankr. S.D.N.Y. 2014) ...................................................................................16

*Repsol, S.A. v. Bank of New York Mellon*,
2014 WL 468910, 2014 NY Slip Op. 30352(U) (N.Y. Sup. Ct., Sept. 11, 2013) ..................14

*Rodríguez Ramos v. The Commonwealth of Puerto Rico*,
190 D.P.R. 448 (2014) ........................................................................................................26

*Ruschel v. Nestle Holdings, Inc.*,
Nos. 89977 & 90500, 2008 WL 1903856 (Ohio Ct. App. May 1, 2008) ...............................20

*Russello v. United States*,
464 U.S. 16 (1983).................................................................................................................6

*Scotiabank de Puerto Rico v. Burgos (In re Plaza Resort at Palmas, Inc.)*,
741 F.3d 269 (1st Cir. 2014) ................................................................................6, 10, 12, 17

*Springwell Nav. Corp. v. Sanluis Corporacion, S.A.*,
46 A.D.3d 377 (N.Y. App. Div. 2007) ..................................................................................14

*Springwell Nav. Corp. v. Sanluis Corporacion, S.A.*,
81 A.D.3d 557 (N.Y. App. Div. 2011) ..................................................................................14

*Theodore v. TD Ameritrade, Inc.*,
No. 11760–07, 2008 WL 465281 (N.Y. Sup. Ct. Feb. 11, 2008)....................................14, 15

*Thinking Machs. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*,
67 F.3d 1021 (1st Cir. 1995)................................................................................................17

*Town of Belleair v. Olds*,
127 F.2d 838 (5th Cir. 1942) .................................................................................................6

*Travelers Cas. & Sur. Co. of Am., Inc. v. Northwestern Mut. Life Ins. Co.*,
480 F.3d 499 (7th Cir. 2007) .................................................................................................7

*Uniroyal, Inc. v. Universal Tire & Auto Supply Co.*,
557 F.2d 22 (1st Cir. 1977)....................................................................................................7

*United States v. Ahlers*,
305 F.3d 54 (1st Cir. 2002)..................................................................................................13

*Williams v. Gusky (In re President Casinos, Inc.)*,
502 B.R. 841 (Bankr. E.D. Mo. 2013) .................................................................................16

**Statutes & Constitutional Provisions**

ALA. CONST. art. XII, § 234 (1901) (repealed) ................................................................26

COLO. CONST. art. XV, § 9 .............................................................................................26

P.R. CONST. art. VI, § 2 ................................................................................................27

P.R. CONST. art. VI, § 9 ...........................................................................................25, 26

31 L.P.R.A. § 14 .............................................................................................10, 12, 17

U.C.C. § 1-304 ..........................................................................................................22

U.C.C. § 2-403 ........................................................................................................6, 10

U.C.C. § 8-102(a) ........................................................................................................9

U.C.C. § 8-102 cmt. 10 ................................................................................................22

U.C.C. § 8-116 ...................................................................................2, 3, 10, 11, 13, 16

U.C.C. § 8-202(b) ...............................................................................................*passim*

U.C.C. § 8-202 cmt. 3 ...........................................................................6, 7, 10, 17

U.C.C. § 8-202 cmt. 5 ...........................................................................11, 12, 16, 17

U.C.C. § 8-202(f) .................................................................................11, 12, 13, 16

**Other Authorities**

7 Hawkland U.C.C. Series § 8-110:2 (2020) ................................................................25

8 Anderson U.C.C. § 8-202:16 [Rev] (3d. ed.) .............................................................16

Curtis R. Reitz, *Investment Securities: The New UCC Article 8 for Delaware*,
1 DEL. L. REV. 47, 49 n.4 (1998) ..........................................................................20

H.R. 127, 147th Gen. Assemb., Reg. Sess. (Del. 2013) ...................................................8

James S. Rogers, *Policy Perspectives on Revised U.C.C. Article 8*,
43 UCLA L. Rev. 1431 (1996) ............................................................................20

Russell A. Hakes, *UCC Article 8: Will The Indirect Holding Of Securities Survive
The Light Of Day?*, 35 LOY. L.A. L. REV. 661 (2002) .........................................12

Steven L. Schwarcz & Gregory M. Sergi, *Bond Defaults and the Dilemma of the
Indenture Trustee*, 59 ALA. L. REV. 1037 (2008) ................................................15

The Bank of New York Mellon ("BNYM" or the "Fiscal Agent"), as fiscal agent under the Pension Funding Bond Resolution (as supplemented, the "Resolution"), adopted on January 24, 2008, by The Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), hereby replies (this "Reply") to the response [ECF No. 14983] (the "Response") of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee"), the Official Committee of Unsecured Creditors (together with the Retiree Committee, the "Committees"), and the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") (collectively, the "Objecting Parties") to the *Motion of The Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* [ECF No. 14247] (the "Motion"), and respectfully represents as follows:[2]

## PRELIMINARY STATEMENT

As demonstrated in the Motion, there is no genuine issue of material fact that Cede & Co. purchased the Bonds for value in 2008 without notice of any defect going to the validity of the Bonds.  As a result, the Fiscal Agent, seeking to enforce the Bonds on behalf of Cede & Co. as the only registered owner, is entitled to judgment as a matter of law that the Bonds are valid and enforceable under UCC § 8-202(b) notwithstanding any defect going to their validity.

Key elements of the Motion are unchallenged by the Objecting Parties.  The Objecting Parties do not dispute that Cede & Co. is the only registered owner of the Bonds.  Response at 42.  They concede that Cede & Co. "technically" is the "purchaser for value" of the Bonds for

---

[2]   Capitalized terms used but not defined in this reply have the meanings given in the Resolution or the Motion, as the context requires.  "ECF No." refers to the Electronic Case File No. in the Court's docket for the Title III proceeding of the Commonwealth of Puerto Rico, Case No. 17 BK 3283-LTS (D.P.R.), or as otherwise specified.

purposes of UCC § 8-202(b).  *Id.*  The Objecting Parties also do not dispute that the few

documents received by Cede & Co. prior to its purchase of the Bonds, including legal opinions

issued by ERS's bond counsel, affirmed that ERS authorized the Bonds and that the Bonds

constitute legal, valid, and binding obligations.  *Id.* at 2, 34.

Having conceded these points, the Objecting Parties do all they can to divert the Court's

attention from the plain and unambiguous text of Article 8 and the Resolution and to ignore

undisputed facts that undercut their position.  They would have the Court re-write the statute by

interposing conditions beyond the clear terms of § 8-202(b) or apply that section to persons other

than Cede & Co., as the purchaser and registered owner of the Bonds.  As a matter of law, § 8-

202(b) must be applied as written.

*First*, the Objecting Parties argue that securities void *ab initio* cannot be validated by § 8-

202(b).  Response at 26–30.  But that is not what the statute provides.  Section 8-202(b) provides

that "[a] security . . . even though issued with a *defect going to its validity*, is valid in the hands

of a purchaser for value and without notice of the particular defect . . . ."  U.C.C. § 8-202(b)

(emphasis added).  A lack of statutory authority to issue a security certainly is a "defect going to

its validity."  There is no exception for defects that make a security void *ab initio*.  To the

contrary, § 8-202(b) protects purchasers for value from *all* defects going to validity of securities.

*Second*, the Objecting Parties argue that the Court should ignore or "look through" Cede

& Co. for purposes of analyzing the defense preclusion rules of Article 8.  Response at 38–39.

But, again, that is not what the statute provides.  Section 8-202(b) protects "purchasers for

value," U.C.C. § 8-202(b), and § 8-116 provides that "[a] securities intermediary [such as Cede

& Co.] that receives a financial asset [such as the Bonds] and establishes a security entitlement to

the financial asset in favor of an entitlement holder is a purchaser for value of the financial

asset." U.C.C. § 8-116. Stunningly, the Objecting Parties completely ignore this dispositive

provision. That § 8-202(f) extends this protection to entitlement holders is no reason to ignore

the separate and distinct protection of purchasers under § 8-202(b).

   *Third*, the Objecting Parties argue that the Fiscal Agent acts on behalf of entitlement

holders, so only notice to entitlement holders is relevant. Response at 44–47. But that is not

what the Resolution provides. The Resolution is clear that the Fiscal Agent acts on behalf of the

"Owner" or the "Bondowners" and other "Beneficiaries." *See Statement of Undisputed Material

Facts in Support of the Motion of The Bank of New York Mellon, as Fiscal Agent, for Summary

Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* ("BNYM SUF")

[ECF No. 14249] ¶ 10; Resolution, App. Ex. 1 to BNYM SUF §§ 102, 1102. As defined in the

Resolution, "Owner" and "Bondowner" mean "any person who shall be the registered owner of

any Outstanding Bond or Bonds" (*i.e.*, Cede & Co.), and "Beneficiaries" means the Bondowners

(again, Cede & Co.), credit facility providers, liquidity facility providers, and qualified hedge

providers. BNYM SUF ¶ 11; Resolution, App. Ex. 1 to BNYM SUF at B-3, B-11. Entitlement

holders are strangers to the Resolution. BNYM SUF ¶ 14. This is no "recent revelation." *See*

Response at 3. The Fiscal Agent filed its proof of claim, explaining that the Resolution was a

contract among ERS, the Fiscal Agent, and the "Owners," in March 2018. *See* Claim No. 16777.

And on October 25, 2019, the Fiscal Agent explained that the Bonds are valid and enforceable

under § 8-202(b) because the purchaser and registered owner—Cede & Co.—lacked notice of

any default going to the validity of the Bonds when Cede & Co. purchased them in 2008.[3]

---

[3]   *See Joinder of The Bank of New York Mellon, as Fiscal Agent, in the Response of Certain Secured
Creditors of The Employees Retirement System of the Government of the Commonwealth of Puerto
Rico to the Omnibus Claim Objections of the Official Committee of Unsecured Creditors and the
Official Committee of Retired Employees of the Commonwealth of Puerto Rico* [ECF No. 9013] ¶ 8.

*Fourth*, the Objecting Parties argue that the Fiscal Agent has not met its burden of proving Cede & Co.'s lack of notice of a defect. Response at 47–49. But this argument is not supported by the record. The record demonstrates that the few documents received by Cede & Co. prior to its purchase of the Bonds, including legal opinions issued by ERS's bond counsel, all affirmed that ERS authorized the Bonds and that the Bonds constitute legal, valid, and binding obligations. These undisputed facts demonstrate that there is no genuine issue of material fact that DTC and its partnership nominee, Cede & Co., lacked knowledge or reason to know of any defect going to the validity of the Bonds when Cede & Co. purchased them in 2008.

*Fifth*, the Objecting Parties argue that there is a constitutional defect going to the validity of the Bonds because they allegedly were issued in contravention of Article VI, § 9 of the Puerto Rico Constitution. Response at 49–52. But this argument was waived by the Objecting Parties' failure to raise it during the pleadings stage. Even were this argument not waived, it is contradicted by recent case law directly on point. "[T]he types of constitutional provisions contemplated by Section 8-202 are those that *specifically address the requirements for the issuance of securities*, as opposed to provisions that might more generally govern contracts." *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, --- F. Supp. 3d ---, No. 19 Civ. 10023, 2020 WL 6135761, at *22 (S.D.N.Y. Oct. 20, 2020) (emphasis added). Article VI, § 9 of the Puerto Rico Constitution is a provision governing the disposition of public property generally and, consequently, is not the type of constitutional provision contemplated by § 8-202(b).

For the reasons set forth in the Motion and this Reply, the Fiscal Agent is entitled to summary judgment that the Bonds are valid and enforceable pursuant to § 8-202(b) and overruling Claim Objections premised on the *Ultra Vires* Challenge.

## ARGUMENT

**I.    THE BONDS ARE VALID AND BINDING OBLIGATIONS OF ERS.**

In reply to the Objecting Parties' arguments that the Bonds were issued *ultra vires*, and to avoid duplicative briefing, the Fiscal Agent joins in, and incorporates by reference as if specifically set forth herein, section I of the ERS Bondholder Groups' reply brief filed contemporaneously herewith.[4]

**II.    THE BONDS ARE VALID AND ENFORCEABLE UNDER UCC § 8-202(b).**

**A.    SECTION 8-202(b) APPLIES TO *ULTRA VIRES* BOND ISSUANCES.**

The Fiscal Agent previously explained that § 8-202(b) does not distinguish between securities that are void *ab initio* and those where the issuer incorrectly implemented its power to issue securities. *See* Motion at 27–32. Such a distinction does not appear in the text of § 8-202(b); it is not supported by the Official Comments; and it is inconsistent with the statutory interplay between the UCC and pre-UCC common law. *See id.* Lacking any textual support, the Objecting Parties attempt to circumvent § 8-202(b) by creating an exception for securities that are void *ab initio*. *See* Response at 26–30. Such an exception does not exist.[5]

*First*, the Objecting Parties' proposed exclusion of securities that are void *ab initio* from § 8-202(b) is contrary to the statute's text and purpose. Section 8-202(b) provides: "A security . . . , even though issued with *a defect going to its validity*, is valid in the hands of a

---

[4]    To the extent of any inconsistency between section I of the ERS Bondholder Groups' brief and this Reply, this Reply shall control.

[5]    The Objecting Parties also assert that § 8-202(b) is not applicable to the Claim Objections because the Objecting Parties are not "issuers" under the UCC. *See* Response at 26. The Fiscal Agent previously explained that the Objecting Parties' status as issuers under § 8-202(b) is irrelevant to allowance of the Fiscal Agent's claim under section 502(b)(1) of the Bankruptcy Code and that, if it were relevant, each of the Objecting Parties satisfies the definition of "issuer" under Article 8. *Response of The Bank of New York Mellon, as Fiscal Agent, to the Committees' Motion for Summary Judgment on Ultra Vires Issues* [ECF No. 14977], at 11–13.

purchaser for value and without notice of the particular defect unless the defect involves a

violation of a constitutional provision." U.C.C. § 8-202(b) (emphasis added). The entire

purpose of this section is to "enforce the security against the issuer *despite the presence of a*

*defect* that otherwise would render the security *invalid*." U.C.C. § 8-202 cmt. 3 (emphasis

added). A lack of statutory authority to issue a security is a "defect going to its validity" that, but

for § 8-202(b), would render the security "invalid." Section 8-202(b) notably applies to

"defects" going to "validity" generally and does not distinguish between defects that render a

security void versus voidable—a distinction recognized elsewhere in the UCC.[6] The use of these

terms elsewhere in the UCC demonstrates that the drafters knew how to distinguish between void

and voidable when they intended such a distinction.[7] *See Scotiabank de Puerto Rico v. Burgos*

*(In re Plaza Resort at Palmas, Inc.)*, 741 F.3d 269, 277 (1st Cir. 2014) (applying "the oft-quoted

maxim of statutory interpretation *expressio unius est exclusio alterius*, which tells us that when a

legislature 'includes particular language in one section of a statute but omits it in another . . . it is

generally presumed that [the legislature] acts intentionally and purposely in the disparate

inclusion or exclusion.'") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

---

6   *See*, *e.g.*, U.C.C. §§ 2-403 ("A person with *voidable* title has power to transfer a good title to a good
faith purchaser for value.") (emphasis added); 3-305 cmt. 1 ("Subsection (a)(1)(i) allows assertion of
the defense of infancy against a holder in due course, even though the effect of the defense is to
render the instrument *voidable* but not *void*.") (emphasis added); 3-117 cmt. 1 ("Moreover, nothing in
this section is intended to validate an agreement which is fraudulent or *void* as against public policy,
as in the case of a note given to deceive a bank examiner.") (emphasis added).

7   Because § 8-202(b) does not distinguish between void and voidable securities, *Plaza Carolina Mall,
L.P. v. Municipality of Barceloneta*, 91 F. Supp. 3d 267 (D.P.R. 2015), and other cases cited for the
unremarkable proposition that *ultra vires* governmental contracts are void *ab initio*, have no relevance
to this proceeding. *See also District Tp. of Doon v. Cummins*, 142 U.S. 366, 374 (1892) (pre-UCC
case); *Dixon County v. Field*, 111 U.S. 83, 97 (1884) (same); *Byrd v. Martin, Hopkins, Lemon &
Carter, P.C.*, 564 F. Supp. 1425, 1429 (W.D. Va. 1983) (legal malpractice case that is unrelated and
inapplicable to the UCC), *aff'd*, 740 F.2d 961 (4th Cir. 1984); *Town of Belleair v. Olds*, 127 F.2d 838,
839-40 (5th Cir. 1942) (pre-UCC case). None of these cases involved a statute, such as Article 8, in
which the Puerto Rico legislature chose to override otherwise applicable law by making obligations
valid and enforceable notwithstanding a defect going to their validity.

Understanding that the text of the statute does not create an exception for securities void *ab initio*, the Objecting Parties ask the Court to *modify* the text of the statute by interposing other, more general principles of law and equity.  *See* Response at 26–27.  But, as the Objecting Parties acknowledge, general principles of law and equity supplement the UCC's provisions *only if* they have not been "displaced by the particular provisions of the [UCC]."  *Id.* (quoting *Travelers Cas. & Sur. Co. of Am., Inc. v. Northwestern Mut. Life Ins. Co.*, 480 F.3d 499, 503-04 (7th Cir. 2007)).  As more fully set forth in the Motion, § 8-202(b) provides a comprehensive treatment of government issuers' defenses to purchasers for value without notice.  *See* Motion at 28–30.  Rather than creating a blanket exception for all securities that were issued void *ab initio*, the drafters "simplif[ied] the [common law] rule by setting up two conditions for an estoppel against a governmental issuer:  (1) substantial consideration given; and (2) power in the issuer to borrow money or issue the security for the stated purpose"—conditions that the Objecting Parties do not contest.[8]  U.C.C. § 8-202 cmt. 3.  Under this simplified, but comprehensive, statutory scheme, general principles of law and equity cannot supplement, let alone alter, § 8-202(b).[9]

---

[8]   These two conditions were incorporated expressly into § 8-202(b)(2), which provides:

> Paragraph (1) applies to an issuer that is a government or governmental subdivision, agency, or instrumentality only if . . . the issuer has received a substantial consideration for the issue as a whole or for the particular security and a stated purpose of the issue is one for which the issuer has power to borrow money or issue the security.

U.C.C. § 8-202(b)(2).  The Fiscal Agent previously explained how these conditions are satisfied in relation to the Bonds.  *See* Motion at 24–25.  By failing to address this subsection in the Response, the Objecting Parties implicitly concede that the conditions to applying the defense preclusion rule to governmental issuers are satisfied.  *See Gauthier v. Lopez-Nieves*, 135 F. Supp. 2d 311, 315 (D.P.R. 2001) ("[P]laintiff has utterly failed to argue the matter in his response. Thus, we deemed it conceded."), *rev'd on other grounds*, 274 F.3d 4 (1st Cir. 2001).

[9]   In other contexts, the Oversight Board has warned against "imposition" of equitable constructs for the purpose of modifying rights or undermining priorities established in the UCC.  *See Memorandum of the Commonwealth of Puerto Rico, by and through the Financial Oversight and Management Board, in Support of Motion Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims* [Adv. Proc. No. 20-00005, Doc. No. 56] at ¶ 144 (citing *Uniroyal, Inc. v. Universal Tire & Auto Supply Co.*, 557 F.2d 22, 23 (1st Cir. 1977)).

*Second*, the Objecting Parties' authorities do not support diversion from the plain meaning of § 8-202(b).  As explained in the Motion, pre-UCC case law is irrelevant, *see* Motion at 29–30, and what little post-UCC authority the Objecting Parties do cite is unpersuasive.  In *Noe v. Kropf*, the Delaware Court of Chancery said, in an unpublished, oral ruling, that "[a]ny action taken where authority is lacking will constitute more than a mere defect as contemplated by § 8-202(b)(1)."  Trial Transcript, *Noe v. Kropf*, C.A. No. 4050, 2009 WL 10425281 (Del. Ch. Jan. 15, 2009) [ECF No. 14984, Ex. 5].  The value of this oral ruling is undermined by the lack of *any* supporting authority and subsequent action of the legislature.  In enacting section 204 of the Delaware General Corporation Law, which "provides a safe harbor procedure for ratifying corporate acts or transactions and stock that, due to a 'failure of authorization', would be void or voidable," the Delaware legislature repudiated the decision in *Noe v. Kropf*:

> [Section] 204 also provides a means to give effect to the provisions of Section 8-202(b) of the Delaware Uniform Commercial Code, which provides, inter alia, that stock in the hands of a purchaser for value without notice of the defect is generally valid in the hands of such purchaser even if issued with a defect going to its validity, to address the *suggestion* of the Court of Chancery in *Noe v. Kropf*, C.A. No. 4050-CC (Del. Ch. Jan. 15, 2009) (Transcript), that the provisions of the Delaware Uniform Commercial Code cannot validate stock that under the General Corporation Law is void.

H.R. 127, 147th Gen. Assemb., Reg. Sess. (Del. 2013) (emphasis added).  Stated differently, the Delaware legislature rejected the "suggestion" that any action taken without authority is a defect outside the scope of § 8-202(b) and took steps to confirm and "give effect" to the original intent and purpose of § 8-202(b), which is to validate securities even if they otherwise may be considered void under the law.  *See id.*  This Court should avoid the faulty logic of *Noe*.[10]

---

[10]   The only other post-UCC case cited by the Objecting Parties, *Byrd v. Martin, Hopkins, Lemon & Carter, P.C.*, is a legal malpractice case that is unrelated and inapplicable to the UCC.  564 F. Supp. 1425 (W.D. Va. 1983), *aff'd*, 740 F.2d 961 (4th Cir. 1984).

*Third*, the argument that the Bonds are not "securities" subject to § 8-202(b), *see* Response at 29–30, does not withstand scrutiny.  A "security" is "an obligation of an issuer . . . or other interest in an issuer."  U.C.C. § 8-102(a)(15).  To support their argument that the Bonds are not "obligations" of ERS, the Objecting Parties point to cases in which securities were stolen, lost, or forged prior to issuance.  *See* Response at 29–30.  Those cases are far removed from the instant case in which ERS unquestionably issued the Bonds to Cede & Co., thereby creating an "obligation" of ERS for purposes of the UCC.

As an example, in *Bankhaus Herman Lampe KG v. Mercantile-Safe Deposit & Trust Co.*, the Court determined that lost or stolen engravings pledged to the plaintiff as part of a criminal scheme were not "securities" because they were never "issued."  466 F. Supp. 1133, 1142 (S.D.N.Y. 1979).  The Court observed that:  "A security must be 'issued' under UCC § 8-102," *id.* at 1144; "issuance" requires "delivery," *id.* at 1142; and "delivery" requires a "[v]oluntary transfer of possession."  *Id.*  Because the engravings were lost or stolen from the defendant, there was no *voluntary* transfer of possession or issuance.  *Id.*  Similarly, in *Continental Ins. Co. v. Yankee Plastics, Inc.*, the Court determined that stolen share certificates were not "securities" for purposes of Article 8 because "[t]here is no proof . . . that the certificates . . . were placed in circulation through the act of the defendant or its authorized agent."  1977 WL 25562, 21 UCC Rep. Serv. 621, 623 (N.Y. Sup. Ct. Apr. 14, 1977).

Unlike in *Bankhaus* and *Continental*, ERS issued the Bonds upon its own volition and by a voluntary transfer of possession to Cede & Co. and its custodian.  BNYM SUF ¶¶ 36–38; *Response and Additional Facts of The Bank of New York Mellon, as Fiscal Agent, to the Committees' Statement of Undisputed Material Facts in Support of Motion for Summary Judgment on Ultra Vires Issues* ("BNYM Additional SUF") [ECF No. 14979] § II, ¶¶ 1–3.

Accordingly, under the issuance and volition tests established in *Bankhaus* and *Continental*, the

Bonds must be considered "obligations" of ERS and "securities" for purposes of Article 8.

Whether those securities are void or voidable is an entirely separate and irrelevant inquiry.[11]

At bottom, the Objecting Parties urge the Court to adopt an interpretation of § 8-202(b)

that disregards the text—negating the statutory validation of securities that are invalid from

inception. Such an exception simply does not exist.[12]  Nothing in the statute or the Official

Comments suggests that the validation of securities under § 8-202(b) depends upon the type,

severity, or timing of the defect going to the validity of the securities.  Such an interpretation

would do violence to the statute and defeat the very purpose of § 8-202(b), which is to make it

"the duty of the issuer, not of the purchaser, to make sure that the security complies with the law

governing its issue."  U.C.C. § 8-202 cmt. 3.  "Statutory construction in Puerto Rico begins with

the text of the underlying statute, and ends there as well if the text is unambiguous."  *Scotiabank*

*de Puerto Rico*, 741 F.3d at 274 (citing 31 L.P.R.A. § 14).  Because there is no textual

ambiguity, the Court should reject the Objecting Parties' request to invent an exception to § 8-

202(b) for securities that are invalid from the inception or void *ab initio*.

## B.    CEDE & CO. IS THE "PURCHASER" UNDER UCC § 8-202(b).

The Fiscal Agent previously explained that Cede & Co. is the "purchaser for value"

entitled to protection under § 8-202(b).  *See* Motion at 17–20.  Section 8-116 of the UCC is

---

[11]   The other cases cited by the Objecting Parties are not to the contrary.  *People v. Mitchell*, No.
B254321, 2015 WL 7778025, at *4 (Cal. Ct. App. Dec. 3, 2015) (forged check does not create an
obligation); *Met-Al, Inc. v. Hansen Storage Co.*, 844 F. Supp. 485, 489–90 (E.D. Wis. 1994)
(analyzing the definition of "voidable title" as it is used in § 2-403 of the UCC where an aluminum
broker set up phony transactions).

[12]   As more fully set forth in § II.A.1. of the ERS Bondholder Groups' reply brief, even if there were an
exception for securities issued *ultra vires*, the Bonds still would be enforceable under § 8-202(b)
because the issuance of the Bonds merely was irregular, not *ultra vires*.

unequivocal:  "A securities intermediary [such as Cede & Co.] that receives a financial asset

[such as the Bonds] and establishes a security entitlement to the financial asset in favor of an

entitlement holder *is a purchaser for value* of the financial asset."  U.C.C. § 8-116 (emphasis

added); *see id.* cmt. 1.  Although the Objecting Parties fail even to acknowledge § 8-116 in the

Response, they concede that Cede & Co. received the Bonds as a securities intermediary and

established security entitlements to the Bonds in favor of entitlement holders.  *See* Response at

42 (Cede & Co. is "the securities intermediary that is technically the 'purchaser' of an indirectly

held security"); 44 ("the securities intermediary . . . is the technical 'purchaser'"); 38

(acknowledging beneficial owners are entitlement holders).  In so doing, the Objecting Parties

acknowledge that the parties' interests in the indirect holding system are exactly as set forth in

the Motion.  *See id.* at 37 (describing indirect holding system).  The Objecting Parties'

concession should end the inquiry:  as the purchaser for value, Cede & Co is entitled to the

protections of § 8-202(b).  Far from being "novel" or "counterintuitive," *id.* at 37, this logic

tracks the express language of the statute.

Unwilling to acknowledge the validating effect of § 8-202(b) in the context of the indirect

holding system, the Objecting Parties pretend the subsection does not exist and ask the Court to

ignore basic tenets of statutory construction.  To divert attention from § 8-202(b), the only

subsection that applies the defense preclusion rules to protect "purchasers," the Objecting Parties

focus on § 8-202(f), which extends the defense preclusion rules to "entitlement holders."  *See*

Response 38–44.  Subsection (f) provides that, "if a security is held by a securities intermediary

against whom an entitlement holder has a security entitlement with respect to the security, the

issuer may not assert any defense that the issuer could not assert if the entitlement holder held

the security directly."  U.C.C. § 8-202(f).  This subsection ensures that, although Cede & Co. is

the direct holder and "purchaser" of the Bonds, the defense preclusion rules are "equally applicable" to entitlement holders.  U.C.C. § 8-202 cmt. 5; *see also* Russell A. Hakes, *UCC Article 8: Will The Indirect Holding Of Securities Survive The Light Of Day?*, 35 LOY. L.A. L. REV. 661, 708-09 (2002) (protections afforded to purchasers for value under § 8-202(b) "are *extended* to entitlement holders in the indirect holding system by subsection 8-202(f)") (emphasis added).  On that point, the parties appear to agree:  entitlement holders may be protected in their own capacity.

The parties disagree, however, regarding the interplay of § 8-202(f) and § 8-202(b). Without citing any authority, the Objecting Parties postulate that subsections (b) and (f) are mutually exclusive, such that subsection (b) has no meaning or application within the indirect holding system.  But nothing in the text of the statute supports that conclusion.  Under § 8-202(b), "[a] security . . . is valid in the hands of a purchaser for value and without notice of the particular defect" if certain conditions are satisfied.  U.C.C. § 8-202(b).  The drafter's extension of the same protection to entitlement holders in subsection (f) has no impact on the protection for purchasers in subsection (b).  Far from attempting to "work around" subsection (f), *see* Response at 44, the Fiscal Agent's interpretation gives meaning and effect to both subsections.

As noted above, statutory construction in Puerto Rico "begins with the text of the underlying statute, and ends there as well if the text is unambiguous."  *Scotiabank de Puerto Rico*, 741 F.3d at 274.  "When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."  31 L.P.R.A. § 14. Pursuant to the unambiguous text of the statute, subsection (b) protects "purchasers for value," such as Cede & Co. with respect to the Bonds, and subsection (f) protects "entitlement holders," such as beneficial owners with respect to their security entitlements relating to the Bonds.

Nothing in the text of the statute provides that subsection (b) applies only to the direct holding system or that it cannot apply when (as is typically the case) securities are held in book-entry form.  To the contrary, § 8-116, which is titled "Securities Intermediary as Purchaser for Value," makes clear that the term "purchaser for value" *includes* securities intermediaries in the indirect holding system.  *See* U.C.C. § 8-116.  This provision—in which the drafters state expressly that a securities intermediary in the indirect holding system is a "purchaser for value"—would be mere surplusage if they did not intend for § 8-202(b) to protect securities intermediaries.  Further, nothing in the text of the statute suggests that subsection (f) somehow displaces subsection (b), such that the only relevant party is the entitlement holder.  A wholesale displacement of subsection (b) whenever securities are issued in the indirect holding system would contravene the presumption that "all words and provisions contained within a statute . . . have meaning and effect" and violates the principle that courts should not "adopt any construction that renders any . . . words or phrases meaningless, redundant, or superfluous." *United States v. Ahlers*, 305 F.3d 54, 58 (1st Cir. 2002).

Again attempting to divert attention from the unambiguous language of the statute, the Objecting Parties argue that courts routinely look beyond the entity holding record title to a security and focus instead on the investors who beneficially own the security.  *See* Response 39–40.  The cases cited by the Objecting Parties, however, lack any relationship to Article 8, and certainly none holds (or even suggests) that the Court should ignore the express provisions in §§ 8-116 and 8-202(b) that notice (or lack thereof) to the "purchaser" of the securities—the securities intermediary in the indirect holding system—is a relevant inquiry for purposes of the Article 8 defense preclusion rules.

- 13 -

Indeed, three cases cited by the Objecting Parties affirmatively undercut their argument.

In *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 244–45 (2d

Cir. 2005), and *Diverse Partners, LP v. Agribank, FCB*, No. 16-cv-9526 (VEC), 2017 WL

4119649 (S.D.N.Y. Sept. 14, 2017), the courts explained that they could "look beyond" the

registered owner only because the registered owner authorized the beneficial owner to sue in its

stead. *Allan Applestein*, 415 F.3d at 245 ("We affirm the district court's judgment on the ground

that Applestein obtained, as provided in the notes' Offering Memorandum, permission to sue

from the registered holder."); *Diverse Partners*, 2017 WL 4119649, at *5 ("[B]eneficial owner

has standing if it obtains authorization from the registered holder, Cede."). *Springwell Nav.*

*Corp. v. Sanluis Corporacion, S.A.* was reversed on appeal. 46 A.D.3d 377, 377 (N.Y. App. Div.

2007). The Appellate Division held that the trial court erred in finding that the beneficial owner

had a right to sue on the note because it was not the registered owner. *Id.* The beneficial owner

cured its lack of capacity to sue only when it later obtained the registered owner's authorization

to sue in its stead. *Springwell Nav. Corp. v. Sanluis Corporacion, S.A.*, 81 A.D.3d 557, 558

(N.Y. App. Div. 2011). Other cases hold that beneficial owners lack standing even *with* written

authorization from the registered owner.[13] *See, e.g.*, *Cortlandt St. Recovery Corp. v. Hellas*

---

[13]   Indeed, it is well-settled that beneficial owners generally lack standing to assert rights or claims
against an issuer under an indenture. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms.*
*S.A.R.L.*, 996 N.Y.S.2d 476, 489 (N.Y. Sup. Ct. 2014) ("[I]t is well settled that a beneficial holder of
a note lacks standing to sue for payments due upon the note where, as here, the indenture reserves the
right to sue to the registered holder of the note."); *Heartland Holdings, Inc. v. U.S. Trust Co. of Texas*
*N.A.*, 316 S.W.3d 1, 8–10 (Tex. App. 2010) (finding that plaintiff bond purchaser could not sue under
the indenture because only parties whose names appear on the bond register are considered
"Owners"); *MacKay Shields v. Sea Containers*, 300 A.D.2d 165, 166 (N.Y. App. Div. 2002)
(dismissing contract claim where plaintiff lacked standing to sue on indentures because such right
was expressly reserved to "holder," defined as one in whose name note is registered, regardless of
fact that plaintiff was beneficial holder); *Repsol, S.A. v. Bank of New York Mellon*, 2014 WL 468910,
at *3–5; 2014 NY Slip Op. 30352(U) (N.Y. Sup. Ct., Sept. 11, 2013) (dismissing claim because
plaintiff was a beneficial owner and not a registered owner of shares, as required by the deposit
agreement); *Theodore v. TD Ameritrade, Inc*., No. 11760–07, 2008 WL 465281, at *2–3 (N.Y. Sup.
Ct. Feb. 11, 2008) (dismissing breach of contract claim because plaintiff was a beneficial owner

*Telecomms.*, 790 F.3d 411, 419 (2d Cir. 2015) (beneficial owner lacked standing to sue because registered owner's authorization, "which does not transfer ownership of claims, is, on its own, 'insufficient to permit [a purported assignee] to sue on those claims in its name.'") (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997)).  That beneficial owners are required to obtain written authorization from the registered owner to obtain standing (or are denied standing altogether) confirms that the registered owner is not a mere fiction that can be ignored whenever it is convenient for the Objecting Parties.

Indeed, these cases demonstrate why it is essential that subsections (b) and (f) have independent meaning and effect.  In some instances, as here, a trustee or fiscal agent acting on behalf of the registered owner of the securities or the registered owner itself may seek to enforce securities against the issuer.  *See, e.g.*, *Bank of N.Y. v. Tri Polyta Fin. B.V.*, No. 01 Civ. 9104 (LTS), 2003 WL 1960587 (S.D.N.Y. Apr. 28, 2003) (trustee enforcing notes against issuer); *see also* Steven L. Schwarcz & Gregory M. Sergi, *Bond Defaults and the Dilemma of the Indenture Trustee*, 59 ALA. L. REV. 1037, 1046 (2008) ("The indenture trustee also may need to decide whether (and, if so, when) to enforce remedies contained in the indenture, such as accelerating maturities, demanding specific performance of covenants, or—in the case of a payment default— simply suing for any overdue principal or interest.").  In those instances, subsection (b) ensures that the defense preclusion rules protect the "purchaser for value" of the securities which, as

---

rather than a "Holder" under the indenture, defined as the person in whose name a security is registered on the Registrar's books); *Raymond James & Assoc. v. The Bank of New York Trust Co., N.A.*, No. 8:07-CV-239-T-27TBM, 2008 WL 186590, at *4 (M.D. Fla. Jan. 18, 2008) (dismissing complaint because plaintiff purchaser of notes was a not a "registered holder" as defined in the indenture).

The Oversight Board understands this, and that is why it has challenged the standing of beneficial owners in other contexts.  *See Opposition of The Commonwealth of Puerto Rico to AMBAC Assurance Corporation's Motion Concerning Application of the Automatic Stay* [ECF No. 7176] ¶¶ 45-51.

demonstrated by § 8-116, may be a securities intermediary in the indirect holding system.  This makes sense because individual entitlement holders often are strangers to the litigation and their identities are unknown even to the issuer and the trustee.  *See In re Rede Energia S.A.*, 515 B.R. 69, 87 n.30 (Bankr. S.D.N.Y. 2014) (because notes held in global note form, issuer did not know identities of beneficial holders); *Williams v. Gusky (In re President Casinos, Inc.)*, 502 B.R. 841, 849 (Bankr. E.D. Mo. 2013) ("DTC itself does not know that [sic] actual identity of the Beneficial Owners of the PCI stock which it holds in the name of Cede."); *In re Bd. of Dirs. of Multicanal S.A.*, 314 B.R. 486, 493 (Bankr. S.D.N.Y. 2004) ("A characteristic of most public debt issued by non-U.S. entities, including the Notes, is that it is held either in nominee name or in unregistered form, and the issuer does not know the identity of many of the holders.").

In other instances, entitlement holders might obtain standing to enforce securities by specific written authorization from the registered owner.  *See supra* at 14–15.  Subsection (f) ensures that the defense preclusion rules of subsection (b) are "equally applicable" in those cases.  *See* U.C.C. § 8-202 cmt. 5.  "That is, the entitlement holder has the same protection from defenses of the issuer as the holder would have had if he or she held the securities in question in his or her own name directly from the issuer."  8 Anderson U.C.C. § 8-202:16 [Rev] (3d. ed.).  In this way, each subsection has independent meaning and function, even as applied solely to the indirect holding system.

The Objecting Parties also argue that the Court should ignore the plain meaning of § 8-202(b) because applying the statute as written would, in their view, result in a "get out of jail free" card for entitlement holders.  *See* Response at 41 n.8, 41–43.  That argument is dripping in irony coming from the parties that seek to invalidate $3 billion in debt based upon the government's own alleged failure to comply with the law.  Irony aside, "[a]chieving a better

- 16 -

policy outcome—if what [the Objecting Parties] urge[] is that—is a task for [the Puerto Rico legislature], not the courts." *In re Hen House*, 530 U.S. 1, 13 (2000); *accord Thinking Machs. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) ("policy argument[s] [are] best directed to the legislative, not the judicial, branch."). The Court cannot disregard the unambiguous meaning of § 8-202(b) "under the pretext of fulfilling the spirit thereof." *Scotiabank de Puerto Rico*, 741 F.3d at 274 (quoting 31 L.P.R.A. § 14).

Even if the Court were to look beyond the text of the statute, the broad protections for "purchasers" *and* "entitlement holders" in subsections (b) and (f) are consistent with the "spirit" and policies underlying Part 2 of Article 8. "The basic concept of Part 2 is to apply to investment securities the principle of negotiable instruments law that an obligor is precluded from asserting most defenses against purchasers for value without notice." U.C.C. § 8-202 cmt. 5. Preclusion of the issuer's defenses is predicated upon the policy that "it is the duty of the issuer, not of the purchaser, to make sure that the security complies with the law governing its issue." U.C.C. § 8-202 cmt. 3. Understanding that the issuer bears the risk for improperly issued securities, it should be no surprise that the drafters of the UCC sought to provide the broadest protection possible to "purchasers" of the securities *and* holders of security entitlements relating to the securities, depending upon the party ultimately seeking to enforce the securities.

### C.  ANY NOTICE TO ENTITLEMENT HOLDERS CANNOT BE IMPUTED TO CEDE & CO.

The notion that the Fiscal Agent's claim is encumbered by any notice received by the ERS Bondholder Groups, *see* Response at 44–47, has no basis in law or fact. The Objecting Parties cannot re-define the notice relevant for purposes of Article 8. The UCC provides only two options: (i) under § 8-202(b), notice (or lack thereof) to the purchaser of the securities is relevant if the security is being enforced by or for the purchaser; and (ii) notice to the entitlement

holder is relevant under § 8-202(f) if the security is being enforced by an entitlement holder.  *See
supra* § II.B.  Where the security is being enforced by or on behalf of the purchaser, nothing in
Article 8 or the UCC's definition of "notice" suggests that notice of a defect to one or more
entitlement holders (who might hold security entitlements in only a small fraction of the overall
issuance) may be imputed to the purchaser for purposes of § 8-202(b).  That could lead to the
absurd result where a single entitlement holder's notice of a defect invalidated the entire security,
regardless of the notice (or lack thereof) to the purchaser or potentially thousands of other
entitlement holders.  The Objecting Parties cite no authority to support that outcome.

　　　　The Fiscal Agent is seeking to enforce the Bonds on behalf of the purchaser and
registered owner, Cede & Co.  Although the ultimate economic beneficiaries of the Fiscal
Agent's claim are holders of security entitlements, the Resolution is clear that the Fiscal Agent
acts only on behalf of the "Owner" or the "Bondowners" and other "Beneficiaries."  *See* BNYM
SUF ¶ 10; Resolution, App. Ex. 1 to BNYM SUF §§ 102, 1102.  The Objecting Parties'
unsupported protestations notwithstanding, *see* Response at 44–45, the terms "Owner" and
"Bondowner" mean "any person who shall be the registered owner of any Outstanding Bond or
Bonds" (*i.e.*, Cede & Co.), and the term "Beneficiaries" means the Bondowners (again, Cede &
Co.), credit facility providers, liquidity facility providers, and qualified hedge providers.  BNYM
SUF ¶ 11; Resolution, App. Ex. 1 to BNYM SUF at B–3, B–11.  From a contractual and legal
perspective, the entitlement holders are complete strangers to the Resolution and to the Fiscal
Agent.  BNYM SUF ¶ 14.  Accordingly, for purposes of the Fiscal Agent's claim and the
Motion, the terms of the Resolution and § 8-202(b) dictate that the relevant inquiry is whether
Cede & Co.—as the purchaser for value and current registered owner of the Bonds—had notice
of any defect going to the validity of the Bonds when Cede & Co. purchased the Bonds in 2008.

Far from "disavow[ing]" the members of the ERS Bondholder Groups, *see* Response at 46, the

Fiscal Agent merely seeks to apply the Resolution and the law as written.

### D. CEDE & CO. HAD NO NOTICE OF THE ALLEGED DEFECT.

The Fiscal Agent is entitled to summary judgment because there is no genuine issue of

material fact that Cede & Co. lacked notice of any alleged defect going to the validity of the

Bonds.  On this point, the following material facts are uncontroverted.

a.  The owner of the Bonds is Cede & Co., as nominee for DTC, and the Bonds are registered in the name of Cede & Co., as nominee for DTC.  BNYM SUF ¶¶ 12–13, 24, 27.

b.  As to the Series A Bonds issued to Cede & Co. on January 31, 2008, DTC received on January 30, 2008, a DTC Eligibility Questionnaire, accompanied by the January 29, 2008 Official Statement for the Series A Bonds, which included, among other things, the Resolution, the First Supplemental Resolution, and the Form of Opinion of Bond Counsel, dated January 31, 2008.  *Id.* ¶ 36; BNYM Additional SUF at § II, ¶ 1.

c.  As to the Series B Bonds issued to Cede & Co. on June 2, 2008, DTC received on May 28, 2008, a DTC Eligibility Questionnaire, accompanied by the May 27, 2008 version of the Preliminary Official Statement for the Series B Bonds, which included, among other things, the Form of Opinion of Bond Counsel, dated June 2, 2008.  BNYM SUF ¶ 37; BNYM Additional SUF at § II, ¶ 2.

d.  As to the Series C Bonds issued to Cede & Co. on June 30, 2008, DTC received (i) on June 16, 2008, a DTC Eligibility Questionnaire, accompanied by the then-current Preliminary Official Statement for the Series C Bonds, which included, among other things, the Form of Opinion of Bond Counsel, and (ii) on June 26, 2008, a second DTC Eligibility Questionnaire, accompanied by the June 26, 2008 version of the Preliminary Official Statement for the Series C Bonds, which included, among other things, the Form of Opinion of Bond Counsel, dated June 30, 2008.  BNYM SUF ¶ 38; BNYM Additional SUF at § II, ¶ 3.

e.  The Official Statement sent to DTC on January 30, 2008, states that the Enabling Act authorized the issuance of the Bonds.  BNYM SUF ¶¶ 39–40; BNYM Additional SUF at § II, ¶¶ 4–5.

f.  The Resolution sent to DTC on January 30, 2008, includes ERS's express covenant that it has authority to issue the Bonds.  BNYM SUF ¶¶ 39, 41; BNYM Additional SUF at § II, ¶¶ 4, 6.

g.    The Supplemental Resolutions provided to DTC provide that they are "adopted pursuant to the provisions of the [Enabling] Act . . ."  BNYM SUF ¶¶ 39, 42; BNYM Additional SUF at § II, ¶¶ 4, 7.

h.    The several opinions of counsel sent to DTC prior to the issuance of each series of Bonds stated:  "The Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System."  BNYM SUF ¶¶ 39, 43; BNYM Additional SUF at § II, ¶¶ 4, 8.

These undisputed facts demonstrate that DTC and its partnership nominee, Cede & Co., had no knowledge or reason to know of any defect going to the validity of the Bonds when Cede & Co. purchased them in 2008.[14]

These undisputed facts are buttressed by:  (i) DTC's Operational Arrangements, which provide that DTC does not in any way undertake and does not have any responsibility to monitor or ascertain the compliance of any transactions in the securities with any local, state, federal, or foreign laws or regulations thereunder, BNYM SUF ¶ 32; BNYM Additional SUF at § II, ¶ 12; and (ii) the Declaration of John Faith (stating that DTC only recently has been informed that certain parties have argued that the Bonds were issued without proper authority and had no notice of any such argument, or any defect going to the validity of the Bonds, at the time of issuance).[15]  Declaration of John Faith, App. Ex. 9 BNYM SUF ¶ 10; BNYM SUF ¶ 47; BNYM

---

[14]   The Objecting Parties' argument that summary judgment cannot be granted because the Fiscal Agent's proffered facts pertain to DTC, but not to Cede & Co., *see* Response at 47–49, would exalt form over substance.  Cede & Co., as DTC's partnership nominee, "serves no function other than to hold formal title" to securities for DTC.  James S. Rogers, *Policy Perspectives on Revised U.C.C. Article 8*, 43 UCLA L. REV. 1431, 1443–44 n.17 (1996).  Accordingly, it would have no notice separate and apart from DTC.  *See Ruschel v. Nestle Holdings, Inc.*, Nos. 89977 and 90500, 2008 WL 1903856, at *5 (Ohio Ct. App. May 1, 2008) ("Cede & Co. is the name used by DTC to hold shares that it owns."); *RB Assoc. of N.J., L.P. v. Gillette Co.*, No. 9711, 1988 WL 27731, at *3 (Del. Ch. Mar. 22, 1988) ("CEDE & Co. is the name utilized by Depository Trust Company to hold shares owned by it."); *Giovanini v. Horizon Corp.*, No. 5961, 1979 WL 178568, at *1 (Del. Ch. Sept. 14, 1979) (same); Curtis R. Reitz, *Investment Securities: The New UCC Article 8 for Delaware*, 1 DEL. L. REV. 47, 49 n.4 (1998) ("For ease of transfer, certificates on deposit with The Depository Trust Company are held in DTC's partnership, Cede & Co.  Cede & Co. is a partnership with the sole function of acting as the nominee of DTC.").

[15]   For the reasons set forth in the *Response of The Bank of New York Mellon, as Fiscal Agent, to Committees' Motion to Strike Declaration of John Faith and Accompanying Exhibit from Fiscal*

Additional SUF at § II, ¶ 13.  Even if the Objecting Parties' motion to strike this evidence were

granted, DTC's Operational Arrangements and the Faith Declaration are not the "only evidence"

concerning the lack of notice of a defect.  *See* Response at 47–48.  As set forth above, the

uncontroverted documents provided to DTC before its nominee, Cede &. Co., purchased the

Bonds in 2008 demonstrate that the Bonds were valid and authorized obligations of ERS, and the

unchallenged Hildreth Report (which relies upon and cites to DTC's Operational Arrangements)

confirms that DTC had no obligation to determine compliance of the Bonds with applicable law.

*See* Hildreth Rep. ¶ 153.

In the face of this evidence, the Objecting Parties' argument essentially is that,

notwithstanding all of the representations of the issuer and its counsel that the Bonds are valid

and authorized, Cede & Co. should have undertaken independent research, substituted its

judgment for that of ERS and its bond counsel, and reached a different conclusion regarding the

validity of the Bonds under the Enabling Act.  For the reasons set forth in the Motion, this

assumption is ungrounded in reality and, if required, would undermine the operation of the

municipal bond market.  *See* Motion at 23–24.  When the Bonds were issued in 2008, not even

ERS or its bond counsel—who was paid to perform due diligence and make a determination

regarding the validity of the Bonds—knew or had reason to know that the Bonds were invalid.

*See* BNYM SUF ¶¶ 32, 39–43; BNYM Additional SUF § II, ¶¶ 4–8.[16]  Otherwise, they could not

---

*Agent's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge*, filed contemporaneously herewith, the Court should deny the Objecting Parties' motion to strike this evidence.

[16]   Apparently, the government parties still had no reason to know that the Bonds were invalid in 2016, when they made representations in this Court that the Bonds were oversecured.  *See, e.g.*, *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-2433, ECF No. 65, at 18 (1st Cir. Dec. 23, 2016) ("The [ERS Bondholders] have a substantial equity cushion as a result of the reserve accounts and the perpetual revenue streams."); *Altair Global Credit Opportunities Fund (A), L.L.C., et al. v. Governor Alejandro Garcia Padilla, et al.*, No. 16-2696, ECF No. 52, at 10–11 (D.P.R. Oct. 26, 2016) ("[T]he security interests held by the ERS

have made the representations and issued the legal opinions that they did.  To expect something

different from Cede & Co. is patently absurd.

The UCC imposes an obligation of good faith—defined as "honesty in fact and the

observance of reasonable commercial standards of fair dealing," U.C.C. § 1-201(a)(20)—on the

performance and enforcement of every contract or duty within the UCC.  U.C.C. § 1-304.  In the

context of Article 8, the requirement of good faith is defined by "the commercial circumstances

of the securities holding and processing system."  U.C.C. § 8-102 cmt. 10 (defining "good faith"

for purposes of Article 8).  ERS (and those objecting to the Fiscal Agent's claim in ERS's place)

cannot, consistent with the obligation of good faith, retain $3 billion and repudiate the

representations of validity in the Resolution, the Bonds, and the related certifications and

opinions.  The attempt to presume notice by Cede & Co. in 2008 of unknown theories of

invalidity when ERS itself was not even aware of any defect is neither "honesty in fact" nor

"observance of reasonably commercial standards of fair dealing."  *See* U.C.C. § 1-304.

### E.   THE OBJECTING PARTIES WAIVED THE DEFENSE OF A CONSTITUTIONAL DEFECT, WHICH IS MERITLESS IN ANY EVENT.

#### 1.   The Objecting Parties' Failure To Plead Their Constitutional Defense Operates As A Waiver.

In their response to the Fiscal Agent's motion for summary judgment, the Objecting

Parties argue—for the first time in these proceedings and more than eighteen months after the

Committees first objected to the Fiscal Agent's proof of claim—that there is a constitutional

defect going to the validity of the Bonds.  It is too late.  In a bankruptcy case, "a proof of claim

---

Bondholders provide them with future protection more than sufficient to address any concern, real or imagined."), and ECF No. 53, at 18 ("Given its size and indefinite duration, the security interest provides Movants with the adequate protection they purport is required to ensure payment on their bonds, certainly through the expiration of the PROMESA stay and, indeed, for as long as the bonds remain outstanding.").

filed by a creditor is conceptually analogous to a civil complaint [and] an objection to the claim is akin to an answer or defense . . . ." *Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 330 (Bankr. E.D.N.Y. 2002). "Affirmative defenses must be pled or they will generally be deemed waived and excluded from the case." *Jewelers Mut. Ins. Co. v. N. Barquet, Inc.*, 410 F.3d 2, 11 (1st Cir. 2005). Because the Objecting Parties' constitutional defense was not raised as part of their pleadings, it is waived.

In its proof of claim (*viz.* complaint), the Fiscal Agent asserted claims on behalf of the Owner of the Bonds. S*ee* Claim No. 16777, Add. ¶¶ 9, 13. The sole Owner of the Bonds is Cede & Co., BNYM SUF ¶¶ 12–13, and Cede & Co. took the Bonds by original issue. *See* Response at 52. The Committees failed to plead a constitutional defect going to the validity of the Bonds when they filed their objections (*viz.* answers) on March 12, 2019 [ECF No. 5580] and April 23, 2019 [ECF No. 6482]. To ensure that all issues relevant to the Claim Objections were pleaded adequately before proceeding with discovery and briefing, the Court entered separate orders setting October 25, 2019, for the Fiscal Agent to respond to the Claim Objections and January 6, 2020, as the deadline for the Objecting Parties to file any other objections to the Fiscal Agent's claims.[17] In its October 25, 2019, response to the Claim Objections, the Fiscal Agent explained that, even if ERS lacked statutory authority to issue the Bonds, the Bonds remain valid and enforceable under § 8-202(b) because the sole purchaser and registered owner of the

---

[17]   *See Order Granting Urgent Joint Motion to Modify Order Regarding Stay and Mandatory Mediation with Respect to Certain Issues Raised in Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [ECF No. 8962] ¶ 3*; Order Establishing Initial Procedures with Respect to (I) Objections of Official Committee of Unsecured Creditors and Official Committee of Retired Employees, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Commonwealth of Puerto Rico, (II) Count One of Certain Complaints Alleging that Such Bonds Were Issues Ultra Vires and (III) Establishing Claim Objection Deadline for Certain ERS Bond Claims* [ECF No. 8818] ¶ 5.

Bonds—Cede & Co.—lacked notice of any default going to the validity of the Bonds when Cede

& Co. purchased the Bonds in 2008.[18]  Despite having this clear statement of the Fiscal Agent's

position, the Objecting Parties still did not plead a constitutional defect as a defense when they

filed additional objections to the Fiscal Agent's claim more than two months later on January 6,

2020.[19]  The Objecting Parties had an opportunity to amend and supplement their prior

objections (*viz.* answers) after the Fiscal Agent explained its theory of the case, and they still

failed to plead a constitutional defect going to the validity of the Bonds.  That failure operates as

a waiver of the defense and violates the Court-ordered January 6, 2020, deadline to raise

additional objections to the Fiscal Agent's claim.

> **2.      Even If The Defense Were Not Waived, There Is No Constitutional
> Defect Going To The Validity Of The Bonds.**

Even if the defense were not waived, there is no constitutional defect going to the validity

of the Bonds within the meaning of § 8-202(b).  Without citing any authority, the Objecting

Parties assert that § 8-202(b)'s "constitutional defect exclusion applies to *any* violation of *any*

constitutional provision."  Response at 49 (emphasis in the original).  That is incorrect.  As

explained by Judge Failla last month in *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,

"the types of constitutional provisions contemplated by Section 8-202 are those that *specifically*

*address the requirements for the issuance of securities*, as opposed to provisions that might more

---

[18]   *See Joinder of The Bank of New York Mellon, as Fiscal Agent, in the Response of Certain Secured
Creditors of The Employees Retirement System of the Government of the Commonwealth of Puerto
Rico to the Omnibus Claim Objections of the Official Committee of Unsecured Creditors and the
Official Committee of Retired Employees of the Commonwealth of Puerto Rico* [ECF No. 9013] ¶ 8.

[19]   *See Objection of Financial Oversight and Management Board Pursuant to Bankruptcy Code Section
502 and Bankruptcy Rule 3007, to Proof of Claim Against ERS by The Bank of New York Mellon, as
Fiscal Agent (Claim No. 16777)* [ECF No. 9701]; *Additional Omnibus Objection of Official
Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees
Retirement System of Government of Puerto Rico* [ECF No. 9708]; and *Joinder of Retiree Committee
to Claim Objections Filed or Asserted by The Bank of New York Mellon as Fiscal Agent* [ECF No.
9710].

generally govern contracts."  2020 WL 6135761, at *22 (emphasis added) (citing *Am. Sec.
Transfer, Inc. v. Pantheon Indus., Inc.*, 871 F. Supp. 400, 405 (D. Colo. 1994)).  Article VI, § 9
of the Puerto Rico Constitution is a provision governing contracts generally and, consequently, is
not the type of constitutional provision contemplated by § 8-202(b).  *See* P.R. Const. art. VI, § 9
("Public property and funds shall only be disposed of for public purposes, for the support and
operation of state institutions, and pursuant to law.").

In *Petróleos de Venezuela*, Venezuela's state oil company argued that certain of its bonds
were void *ab initio* because they violated a provision of the Venezuelan Constitution requiring
the National Assembly to approve contracts of "national interest."  2020 WL 6135761, at *3.
The Court rejected the issuer's argument, in part, on the basis that this constitutional provision
did not address the issuance of securities specifically and, consequently, did not go to the
"validity" of the securities as that term is used in Article 8.  *Id.* at *22.  As the Court explained,
"although it is true that Section 8-202 contemplates a scenario where an issuer seeks to avoid
payment because 'the requirements of some constitutional or statutory provision concerning
authorization for issuance of municipal bonds has not been satisfied,'" this does not include
provisions that govern contracts generally.  *Id.* (citing 7 Hawkland U.C.C. Series § 8-110:2
(2020)).  Rather, "the types of constitutional provisions contemplated by Section 8-202 are those
that *specifically* address the requirements for the issuance of securities."  *Id.* (emphasis added).

The type of specific constitutional provision that is contemplated by § 8-202(b) is
exemplified by *Montgomery v. Hughes Developers, Inc.*, 873 So. 2d 1109 (Ala. 2003).  Although
the Objecting Parties cite *Montgomery* for the proposition the UCC provides no remedy for a
security issued in violation of a constitutional provision, *see* Response at 49, they ignore that
Court's conclusion that there was no constitutional defect and, more importantly, the Alabama

constitutional provision at issue addressed the requirements for issuing securities *specifically*.

*Montgomery*, 873 So. 2d at 1115 (citing ALA. CONST. art. XII, § 234 (1901) (repealed),

providing that "[n]o corporation shall issue stocks or bonds except for money, labor done, or

property actually received; and all fictitious increase of stock or indebtedness shall be void.");

*accord Am. Sec. Transfer*, 871 F. Supp. at 405 (citing COLO. CONST. art. XV, § 9, providing that

"[n]o corporation shall issue stocks or bonds, except for labor done, services performed, or

money or property actually received, and all fictitious increase of stock or indebtedness shall be

void").  This is the only type of specific constitutional provision contemplated by § 8-202(b).

In contrast with the constitutional provisions at issue in *Montgomery* and *Am. Sec.

Transfer*, addressing the issuance of securities specifically, Article VI, § 9 of the Puerto Rico

Constitution does not address the requirements for issuing securities at all.  Article VI, § 9 stands

for the unremarkable proposition that "[p]ublic property and funds shall only be disposed of for

public purposes, for the support and operation of state institutions, and pursuant to law."  P.R.

CONST. art. VI, § 9.  Such a provision of general applicability is not relevant to § 8-202(b).  *See*

*Petróleos de Venezuela*, 2020 WL 6135761, at *22.  It is no surprise, then, that none of the

Puerto Rico cases cited by the Objecting Parties involve government issued securities or Article

8.[20]  For its part, the Fiscal Agent could not find a single instance in which a court found a

constitutional defect under § 8-202(b) as a result of a violation of a constitutional provision of

general applicability.

---

[20]   *See Rodríguez Ramos v. The Commonwealth of Puerto Rico*, 190 D.P.R. 448 (2014) (oral legal
services contract); *Marina v. Comisión de Seguridad y Protección Pública*, 170 D.P.R. 847 (2007)
(failure to submit affidavit disclosing criminal convictions to participate in bid for government
purchase of vessels for police maritime unit); *De Jesús González v. Autoridad de Carreteras*, 148
D.P.R. 255 (1999) (land entry and occupancy contract); *Cecort Realty Development Inc. v. Llompart-
Zeno*, 100 F. Supp. 3d 145 (D.P.R. 2015) (public bidding requirement for building lease); *Plaza
Carolina Mall, L.P. v. Municipality of Barceloneta*, 91 F. Supp. 3d 267 (D.P.R. 2015) (development
incentive agreement with municipality).

The dichotomy between general constitutional provisions and those that address the issuance of securities specifically is apparent in the Puerto Rico Constitution itself. While Article VI, § 9 provides a general rule concerning public property and funds, § 2 regulates aspects of government issued securities *specifically*. *See* P.R. CONST. art. VI, § 2. If there were a constitutional defect going to the validity of the Bonds, the defect would arise from a violation of § 2 and not § 9, *see Petróleos de Venezuela*, 2020 WL 6135761, at *22, and the Objecting Parties allege no defect under § 2.

Finally, even if this Court disregarded *Petróleos de Venezuela* and determined that a constitutional defect going to the validity of securities could arise from a constitutional provision of general applicability, the Bonds were not issued in violation of Article VI, § 9 of the Puerto Rico Constitution. *First*, ERS did not "dispose" of public property or funds by issuing the Bonds. The Bonds were not owned by ERS before they were issued. *Second*, Puerto Rico law includes the safe harbor created by § 8-202(b) for securities issued with a defect going to their validity. That is, Puerto Rico's version of the UCC, including its validating principle, *is* Puerto Rico law duly enacted by its Legislature. Accordingly, if the Bonds are validated by § 8-202(b), that will be done "pursuant to law" such that there can be no violation of Article VI, § 9 of the Puerto Rico Constitution.

## **CONCLUSION**

For these reasons, that Court should grant the Motion, declare that ERS had statutory authority to issue the Bonds or, alternatively, that the Bonds are valid and enforceable pursuant to § 8-202(b), and overrule the Claim Objections to the extent they are premised on the *Ultra Vires* Challenge.

Dated:  November 19, 2020
    San Juan, Puerto Rico

Respectfully submitted,

**SEPULVADO, MALDONADO & COURET**

By:    */s/ Albéniz Couret-Fuentes*
       Albéniz Couret-Fuentes
       USDC-PR Bar No. 222207
       304 Ponce de León Ave. – Suite 990
       San Juan, PR 00918
       Telephone: (787) 765-5656
       Facsimile:  (787) 294-0073
       Email:  acouret@smclawpr.com

**REED SMITH LLP**

Eric A. Schaffer (*Pro Hac Vice*)
Luke A. Sizemore (*Pro Hac Vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email:  eschaffer@reedsmith.com
Email:  lsizemore@reedsmith.com

C. Neil Gray (*Pro Hac Vice*)
599 Lexington Avenue
New York, NY 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
Email:  cgray@reedsmith.com

*Counsel to The Bank of New York Mellon,*
*as fiscal agent*