# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered)<br><br>Related to ECF No. 15201 |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>Related to ECF No. 1022<br><br>*This Pleading Relates to the Commonwealth and ERS Only, and Should Be Filed in Both Dockets.* |

## DECLARATION OF C. NEIL GRAY IN SUPPORT OF RESPONSE OF THE BANK OF NEW YORK MELLON, AS FISCAL AGENT, TO COMMITTEES' MOTION TO STRIKE DECLARATION OF JOHN FAITH AND ACCOMPANYING EXHIBIT FROM FISCAL AGENT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 REGARDING *ULTRA VIRES* CHALLENGE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

I, C. Neil Gray, hereby declare under penalty of perjury:

1. I am a partner at the law firm of Reed Smith LLP, located at 599 Lexington Avenue, New York, NY 10022. I am a member in good standing of the Bar of the State of New York and admitted *pro hac vice* in this matter. There are no disciplinary proceedings pending against me. I submit this declaration in support of the *Response of The Bank of New York Mellon, as Fiscal Agent, to the Committees' Motion to Strike Declaration of John Faith and Accompanying Exhibit from the Motion of The Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding Ultra Vires Challenge* [ECF No. 14978] (the "Response").[2] I have personal knowledge of the matters stated herein. If called as a witness in this action, I could and would testify competently to the contents of this declaration.

2. Attached as Exhibit 1 hereto is a true and correct copy of the *Joinder of The Bank of New York Mellon, as Fiscal Agent, in the Response of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to the Omnibus Claim Objections of the Official Committee of Unsecured Creditors and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico*, dated October 25, 2019 [ECF No. 9013] (the "Joinder").

3. The Joinder states:

> 4. Each ERS Bond was issued in the form of a separate single authenticated fully registered bond. Upon initial issuance, the ownership of each ERS Bond was registered in the registration books of ERS, which are maintained by the Fiscal Agent, in the name of Cede & Co. ("Cede"), as nominee of The Depository Trust Company ("DTC"). The registered ownership of the ERS Bonds has not changed since the initial issuance. Cede remains the registered owner of each ERS Bond.

---

[2] Capitalized terms used but not defined in this declaration have the meanings given to them in the Response. "ECF No." refers to the Electronic Case File No. in the Court's docket for the Title III proceedings of the Commonwealth of Puerto Rico, Case No. 17 BK 3283-LTS (D.P.R.), or as otherwise specified.

> 5. DTC holds the ERS Bonds as securities depository for certain broker-dealers, banks, and other financial institutions (the "Participants"). The Participants act, directly or indirectly, for the benefit of beneficial owners of such bonds.
>
> . . . .
>
> 8. [E]ven if ERS lacked authority to issue the ERS Bonds and the Bondholders had notice of a defect, such bonds still would be enforceable under section 8-202 of the UCC because the sole registered owner of the ERS Bonds had no knowledge of any defect. The Committees do not allege and cannot meet their burden of proving that Cede had notice of any defect going to the validity of the ERS Bonds when they were issued to Cede in 2008. Accordingly, under section 8-202 of the UCC, the ERS Bonds are valid and enforceable in the hands of Cede.

Joinder ¶¶ 4-5, 8 (footnotes omitted).

4. On November 1, 2019, the Fiscal Agent served the *Initial Disclosures of The Bank of New York Mellon, as Fiscal Agent* (the "Initial Disclosures") in connection with the *Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico* [ECF No 5580] filed by the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and the *Omnibus Objection of the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Files or Asserted by Holders of ERS Bonds Against ERS and the Commonwealth* [ECF No. 6482] filed by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee"). Attached as Exhibit 2 hereto is a true and correct copy of the Initial Disclosures.

5. In the Initial Disclosures, the Fiscal Agent identified two categories of documents pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii): (i) "The Resolution and related bond transaction documents, including but not limited to, all supplements to the Resolution," and (ii)

- 3 -

"[d]ocuments sufficient to show the registered holder(s) of all ERS bonds offered pursuant to the Resolution." Initial Disclosures at 6.

6. The Fiscal Agent also disclosed that it "incorporates by reference all documents produced or identified by the Creditors' Committee, the Retiree Committee, or any other party in interest to this proceeding during the course of discovery in this proceeding." *Id.*

7. Similarly, with respect to witnesses, the Fiscal Agent disclosed that it "incorporates by reference any witnesses who may be identified by the Creditors' Committee, the Retiree Committee, or any other party in interest to this proceeding during the course of discovery in this proceeding." *Id.* at 5.

8. On November 22, 2019, the Fiscal Agent served *The Fiscal Agent's Responses and Objections to the Committees' and Government Parties' First Set of Requests for Production of Documents Related to the Ultra Vires Proceedings* (the "RFP Responses and Objections"). Attached as Exhibit 3 hereto is a true and correct copy of the RFP Responses and Objections.

9. In the RFP Responses and Objections, the Fiscal Agent expressly objected to providing documents that were "publicly available." The Fiscal Agent stated:

> The Fiscal Agent objects to each and every one of these Document Requests, and the instructions and definitions therein, to the extent that the information sought is publicly available ….

RFP Responses and Objections at 6.

10. The Committees' and Government Parties' Request No. 29 sought "[a]ll Documents related to Your contention that the ERS Bonds are enforceable under UCC § 8-202 (19 L.P.R.A. § 1752)." *Id.* at 14. In response, the Fiscal Agent stated:

> The Fiscal Agent objects to this Document Request on the grounds that it requests documents that are not within the Fiscal Agent's possession, custody, or control. … The Fiscal Agent will produce responsive, non-

>privileged documents, not otherwise publicly available, located after a reasonable search.

*Id.*

11. Following the Fiscal Agent's service of the RFP Responses and Objections, the parties met and conferred on several occasions. The Committees never objected to the Fiscal Agent's objection to producing publicly available documents, but the Fiscal Agent did agree that it would not withhold an otherwise responsive document encountered during its document review solely on the basis that the document is publicly available.

12. The parties also agreed on a list of custodians whose documents the Fiscal Agent would search, and a list of search terms to use in connection with those searches. The DTC Operational Arrangements dated February 2002 (the "2002 DTC Operational Arrangements") did not appear in the documents the Fiscal Agent reviewed.

13. The Fiscal Agent did not encounter the 2002 DTC Operational Arrangements during its review of documents for production.

14. The parties also agreed that the Fiscal Agent would produce certain documents regardless of whether such documents were in a particular custodian's documents and/or hit on one or more agreed search terms. For example, the Fiscal Agent agreed to produce the documents comprising the closing transcript for each series of the Bonds. The 2002 DTC Operational Arrangements were not included in the documents the Fiscal Agent agreed to produce in this manner.

15. Upon information and belief, based on a review of the 2002 DTC Operational Arrangements, the 2002 DTC Operational Arrangements is a document prepared by The Depository Trust Company ("DTC"). The document was not prepared by the Fiscal Agent.

- 5 -

16. On December 3, 2019, the Fiscal Agent served *The Fiscal Agent's Responses and Objections to the First Set of Interrogatories of the Committees and Government Parties to the Fiscal Agent Related to the Ultra Vires Proceedings* (the "Interrogatory Responses"). Attached as Exhibit 4 hereto is a true and correct copy of the Interrogatory Responses.

17. General Objection No. 14 in the Interrogatory Responses states: "The Fiscal Agent objects to each and every one of these Interrogatories, and the instructions and definitions therein, to the extent that the information sought is publicly available …." Interrogatory Responses at 5.

18. The Committees' and Government Parties' Interrogatory No. 16 asked the Fiscal Agent to "[i]dentify each 'registered owner' of the ERS Bonds." *Id.* at 11. The Fiscal Agent responded to Interrogatory No. 16 as follows: "The registered owner of all outstanding ERS Bonds is Cede & Co., as nominee for the Depository Trust Company." *Id.*

19. Although the Fiscal Agent served supplemental responses and objections to certain of the Committees' and Government Parties' Interrogatories, the Fiscal Agent's responses and objections with respect to Interrogatory No. 16 did not change.

20. On December 3, 2019, the Fiscal Agent served *The Fiscal Agent's Responses and Objections to the First Set of Requests for Admission of the Committees and Government Parties to the Fiscal Agent related to the Ultra Vires Proceedings* (the "RFA Responses"). Attached as Exhibit 5 hereto is a true and correct copy of the RFA Responses.

21. General Objection No. 14 in the RFA Responses states: "The Fiscal Agent objects to each and every one of these Requests for Admission, and the instructions and definitions therein, to the extent that the information sought is publicly available …." RFA Responses at 5.

22. The Committees' and Government Parties' Request for Admission No. 6 asked the Fiscal Agent to "[a]dmit that members of the public purchased ERS Bonds in 2008." *Id.* at 8. The Fiscal Agent responded to Request for Admission No. 6 as follows: "The Fiscal Agent objects to and denies this Request for Admission on the basis that it is vague and ambiguous, and avers that Cede & Co. purchased the ERS Bonds. Upon information and belief, certain members of the public purchased securities entitlements in ERS Bonds in 2008." *Id.*

23. The Committees' and Government Parties' Request for Admission No. 7 asked the Fiscal Agent to "[a]dmit that the original owner of record for each ERS Bond has never transferred record ownership of any ERS Bond to any party." *Id.* The Fiscal Agent responded to Request for Admission No. 7 as follows: "The Fiscal Agent objects to and denies this Request for Admission on the basis that it is vague and ambiguous, except avers that the original registered owner for each ERS Bond [which the Fiscal Agent had previously identified as Cede & Co., as nominee of DTC] has not transferred ownership of any ERS Bond." *Id.*

24. Although the Fiscal Agent served supplemental responses and objections to certain of the Committees' and Government Parties' Requests for Admission, the Fiscal Agent's responses and objections with respect to Requests for Admission Nos. 6 and 7 did not change.

25. On July 1, 2020, the ad hoc group of beneficial owners of the Bonds represented by Jones Day (the "ERS Bondholder Group") submitted the expert report of Dr. William Bartley Hildreth with respect to the *ultra vires* issue (the "Hildreth Report"). The Hildreth Report is attached as Exhibit 1 to the Declaration of W. Bartley Hildreth, dated September 9, 2020 [ECF No. 14244].

26. In the Hildreth Report, Dr. Hildreth expressly cited the 2002 DTC Operational Arrangements, and included the 2002 DTC Operational Arrangements among his references. Specifically, Dr. Hildreth states:

> DTC states that it "… does not in any way undertake to, and shall not have any responsibility to, monitor or ascertain the compliance of any transactions in the [DTC eligible] Securities with … any other local, state, federal, or foreign laws or regulations thereunder." [DTC, Operational Arrangements Necessary for an Issue to Become and Remain Eligible for DTC Services, February 2002, Section A.7.b.]

Hildreth Report ¶ 153.

27. Dr. Hildreth included the 2002 DTC Operational Arrangements among the references cited in Appendix C of his report. *See id.* at 50 ("Depository Trust Company, Operational Arrangements Necessary for an Issue to Become and Remain Eligible for DTC Services, February 20, 2002").

28. Dr. Hildreth also states that "[a]t the time of initial issuance, ERS registered the ownership of the bonds in the name of Cede & Co., the nominee of DTC. Cede & Co. remains the registered owner of each ERS bond." *Id.* ¶ 155.

29. Dr. Hildreth also states:

> Underwriters enter into a Purchase Contract to buy bonds from the Issuer in one total purchase price, but sell the beneficial interest to investors in the denominations specified in the Official Statement, although the legal title rests in the name of the securities depository (in the case of municipal securities it is the Depository Trust Corporation's nominee Cede & Co.). [Purchase Contract: Series A bonds, tab 5; Series B bonds, tab 4; Series C bonds, document 5 at PDF 545].

*Id.* ¶ 94.

30. Dr. Hildreth further opines:

> According to the S.E.C.: "When securities are held in street name, there is a legal distinction between the nominee who has legal status as the registered securityholder, and the person with economic or beneficial ownership of the security. Securities held in street name are legally owned

>by and registered in the name of the depository's nominee (most often DTC's nominee, Cede & Co.). The individual investor's broker (or other intermediary) who is a member or participant of the depository will be identified on the books of the depository as having a "securities entitlement" [4] to a pro rata share of the fungible bulk of that security held by the depository. Correspondingly, the individual investor will be identified on the books of the depository participant (his or her broker or other intermediary) as having a securities entitlement to a pro rata share of the securities in which the participant has an interest." [S.E.C. Release 34-76743, File No. S7-27-15, "Transfer Agent Regulations," December 22, 2015, pages 38 and 39, footnotes omitted]

Hildreth Report ¶ 145.

31. On July 1, 2020, counsel for the Oversight Board and counsel for the ERS Bondholder Group exchanged emails in which they agreed that, with respect to Dr. Hildreth's expert report and the authorities cited therein, the ERS Bondholder Group need "not produce publicly available, published materials (e.g., articles and books)," with the proviso that "if there are particular such materials that you have difficulty locating, let us know and we will do our best to help get them to you, as long as you will agree to do the same for us". Attached as Exhibit 6 is a true and correct copy of the July 1, 2020 email chain in which those parties concluded that agreement. Upon information and belief, no party requested a copy of the 2002 DTC Operational Arrangements.

32. On August 10, 2020, Dr. Hildreth sat for a deposition and was deposed for approximately six hours and nine minutes, including by the Committees. No party questioned Dr. Hildreth with respect to Cede & Co.'s knowledge of any defect going to the validity of the bonds.

33. The documents produced and testimony elicited in discovery are replete with references to, and thereby confirm the central role of, DTC and Cede & Co. By way of example:

a. The ERS Bonds and the Fiscal Agent's register, produced by BNYM in the litigation, specifically identify Cede & Co. as the registered owner of the Bonds. SUF App. Exs. 5-8; SUF 12-13.

b. The Supplemental Resolutions produced in discovery specifically identify Cede & Co. as the registered owner of the Bonds. SUF 15; SUF App. Exs. 2-4 § 2.5(b).

c. Appendices to the Official Statement for each of the Bond Series, produced in discovery, describe the Book Entry System and DTC's role therein. SUF 19; SUF App. Exs. 10-12.

d. BNYM produced all of the communications with DTC in its possession, custody, or control required by the discovery agreement with the Committees and the government parties. In addition, the lead underwriter on each series of the ERS Bonds likewise produced communications with DTC. BNYM cited to many of these documents in its motion. SUF App. Exs. 16-19.

e. The Receipt and Safekeeping Agreement for each series of the ERS bonds provides: "The FAST Agent [BNYM] agrees to hold the Bonds in safekeeping on behalf of DTC in accordance with the DTC Operational Arrangements memorandum dated November 22, 2000, as it may be amended from time to time." SUF App. Ex. 14.

f. ERS Resolution 2008-02, dated January 24, 2008, provides: "The Blanket Letter of Representations of the System to the Depository Trust Company ("DTC") regarding matters relating to the deposit of the Series A Bonds

       with DTC, in standard form published by DTC (the "Letter of Representations"), is hereby accepted and approved, and the Administrator or any Deputy Administrator of the System is hereby authorized and directed to execute and deliver the Letter of Representations on behalf of the System with such changes, insertions or omissions as shall be approved by the Administrator or any Deputy Administrator of the System, such person's execution thereof to be conclusive evidence of the approval by the Board of any changes, insertions or omissions therein." SUF App. Ex. 15 (PR-ERS-000003599).

g.    Numerous witnesses testified about DTC and/or Cede & Co. For example:

    i.    Justin Boyer, a Principal with Redwood Capital Management. *See* Boyer Dep. 34:22–36:5.

    ii.    Alex Chang, a Vice President in the Corporate Trust department at The Bank of New York Mellon. *See* Chang Dep. 39:13–39:25, 41:10–42:3, 68:12–69:3, 117:20–118:2.

    iii.    Luis Manuel Collazo Rodriguez, the Administrator of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Executive Director of the ERS Retirement Board. *See* Collazo Dep. 357:7–367:7.

    iv.    Elan Daniels, Associate General Counsel for King Street Capital Management. *See* Daniels Dep. 22:12–24.

- 11 -

    v.  Robert Doty, the Committees' and Government Parties' expert with respect to certain issues in the *ultra vires* proceedings. See Doty Dep. 51:7–53:19, 55:3–56:19, 74:3–77:3, 93:2–93:10, 111:21–113:21.

    vi.  Dr William Bartley Hildreth, the ERS Bondholder Group's expert with respect to certain issues in the *ultra vires* proceedings. See Hildreth Dep. 140:20–141:15.

Attached as <u>Exhibit 7</u> are true and correct excerpts from the referenced deposition transcripts.

 h. As noted, these witnesses included the Committees' expert Robert Doty, who testified:

> **Q Could you tell us what Cede and Company is?**
>
> A Cede and Company is the designee of Depository Trust Company to be shown as the owner of the bonds for purposes of facilitating electronic trading.
>
> **Q And for the record, could you tell us what the Depository Trust Company is?**
>
> A The Depository Trust Company is a company created to facilitate electronic trading, and to eliminate paperwork so that we no longer have paper bonds. We have electronic bonds.

Ex. 7 (Doty Dep. 51:7–19).

34. Given all of the above circumstances, the Fiscal Agent believes that it did not have an obligation to supplements its discovery responses, including its Initial Disclosures.

35. It was not until approximately September 9, 2020—just a few days before Mr. Faith executed the DTC Declaration and provided it to the Fiscal Agent—that the Fiscal Agent learned that Mr. Faith would be the declarant on behalf of DTC.

36. The Committees' Motion represents the first time in these ERS proceedings—indeed, in any of the Puerto Rico Title III proceedings—that the Fiscal Agent has been accused of a discovery violation, or any sanctionable conduct for that matter. The Fiscal Agent has always complied with its litigation obligations—discovery or otherwise—in these Title III proceedings.

Dated: November 19, 2020
New York, NY

_____
C. Neil Gray