**EXHIBIT 7-E**

**BNYM / Puerto Rico - Employee Retirement System**
# Doty, Robert - Vol. 1
**8/11/2020**

1          IN THE UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF PUERTO RICO

2               PROMESA TITLE III

                CASE NO:  17-BK-03283 (LTS)

3

    IN RE:  THE FINANCIAL OVERSIGHT AND

4   MANAGEMENT BOARD FOR PUERTO RICO

           as representative of

5

    THE COMMONWEALTH OF PUERTO RICO, et al.,

6          Debtor(s).

    _____

7

               IN THE UNITED STATES DISTRICT COURT

8              FOR THE DISTRICT OF PUERTO RICO

                PROMESA TITLE III

9               CASE NO:  17-BK-03566 (LTS)

10  IN RE:  THE FINANCIAL OVERSIGHT AND

    MANAGEMENT BOARD FOR PUERTO RICO

11         as representative of

12  THE EMPLOYEES RETIREMENT SYSTEM OF THE

    GOVERNMENT OF THE COMMONWEALTH OF PUERTO

13  RICO,

           Debtor(s).

14  _____

15

16

17              CONFIDENTIAL

18

19  REMOTE VIDEOTAPED EXPERT DEPOSITION UNDER

20            ORAL EXAMINATION OF

21               ROBERT DOTY

22            DATE: August 11, 2020

23

24

25       REPORTED BY:  MICHAEL FRIEDMAN, CCR

1          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF PUERTO RICO
2          ADV. PROC. NO:  17-00356 (LTS)
3   THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL
    OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
4   ACTING BY AND THROUGH ITS MEMBERS,
            -and-
5   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
    OF ALL TITLE III DEBTORS (OTHER THAN COFINA)
6          -as co-trustees of
    THE EMPLOYEES RETIREMENT SYSTEM OF THE
7   GOVERNMENT OF PUERTO RICO,
            Plaintiff(s),
8
        vs.
9
    DEFENDANT IM, et al.,
10          Defendant(s).
11   _____
12
13
            IN THE UNITED STATES DISTRICT COURT
14          FOR THE DISTRICT OF PUERTO RICO
            ADV. PROC. NO:  17-00357 (LTS)
15
16   THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL
    OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
17   ACTING BY AND THROUGH ITS MEMBERS,
            -and-
18   THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
    OF ALL TITLE III DEBTORS (OTHER THAN COFINA)
19          -as co-trustees of
    THE EMPLOYEES RETIREMENT SYSTEM OF THE
20   GOVERNMENT OF PUERTO RICO,
            Plaintiff(s),
21
        vs.
22
    STOEVER GLASS & CO., et al.,
23          Defendant(s).
    _____
24
25

None                                                    Page  2

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF PUERTO RICO
 2              ADV. PROC. NO:  19-00359 (LTS)
 3
       THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL
 4     OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
       ACTING BY AND THROUGH ITS MEMBERS,
 5          -and-
       THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
 6     OF ALL TITLE III DEBTORS (OTHER THAN COFINA)
                  -as co-trustees of
 7     THE EMPLOYEES RETIREMENT SYSTEM OF THE
       GOVERNMENT OF PUERTO RICO,
 8          Plaintiff(s),
 9        vs.
10     DEFENDANT 1H-78H, et al.,
            Defendant(s).
11     _____
12
13
14              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF PUERTO RICO
                 ADV. PROC. NO:  19-00361 (LTS)
15
16     THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL
       OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
17     ACTING BY AND THROUGH ITS MEMBERS,
            -and-
18     THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
       OF ALL TITLE III DEBTORS (OTHER THAN COFINA)
19          -as co-trustees of
       THE EMPLOYEES RETIREMENT SYSTEM OF THE
20     GOVERNMENT OF PUERTO RICO,
            Plaintiff(s),
21
          vs.
22
       DEFENDANT 1G-50G, et al.,
23          Defendant(s).
       _____
24
25
```

1       IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF PUERTO RICO
2           ADV. PROC. NO:  19-00366 (LTS)
3
       THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
4      FOR PUERTO RICO,
              -as representative of
5      EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
       OF THE COMMONWEALTH OF PUERTO RICO,
6           -and
       THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
7      OF ALL TITLE III DEBTORS (OTHER THAN COFINA),
              -as Section 926 trustee of
8      THE COMMONWEALTH OF PUERTO RICO,
              Plaintiff(s),
9
         vs.
10
       ANDALUSIAN GLOBAL DESIGNATED ACTIVITY
11     COMPANY, et al.,
              Defendant(s).
12     _____
13
               IN THE UNITED STATES DISTRICT COURT
14             FOR THE DISTRICT OF PUERTO RICO
               ADV. PROC. NO:  19-00367 (LTS)
15
16     THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
       FOR PUERTO RICO,
17            -as representative of
       EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
18     OF THE COMMONWEALTH OF PUERTO RICO,
              -and
19     THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
       OF ALL TITLE III DEBTORS (OTHER THAN COFINA),
20            -as Section 926 trustee of
       THE COMMONWEALTH OF PUERTO RICO,
21            Plaintiff(s),
22       vs.
23     GLENDON OPPORTUNITIES FUND, LP, et al.,
              Defendant(s).
24     _____
25

1

2

3

4

5          TRANSCRIPT of the virtual videotaped

6      deposition of the expert witness, called for Oral

7      Examination in the above-captioned matter, said

8      deposition being taken by and before MICHAEL

9      FRIEDMAN, a Notary and Certified Court Reporter of

10     the State of New Jersey, via video teleconference,

11     by WebEx, on August 11, 2020, commencing at

12     approximately 9:35 in the morning.

13

14

15

16

17

18

19

20

21

22

23

24

25

1    A P P E A R A N C E S:
2    PROSKAUER ROSE, LLP
     One International Place
3    Boston, MA  02110
     BY:   WILLIAM D. DALSEN, ESQ.
4        wdalsen@proskauer.com
     -and-
5        MARGARET A. DALE, ESQ.
         mdale@proskauer.com
6    -and-
         JENNIFER L. ROCHE, ESQ.
7        jroche@proskauer.com
     -and-
8        ELISA CARINO, ESQ.
         ecarino@proskauer.com
9    -and-
         ARIELLA E. MULLER, ESQ.
10       amuller@proskauer.com
     -and-
11       RINA KIM, ESQ.
         rkim@proskauer.com
12   Attorneys for the Financial Oversight and
     Management Board for Puerto Rico
13
     PAUL HASTINGS, LLP
14   875 15th Street
     Washington, DC  20005
15   BY:   NICHOLAS A. BASSETT, ESQ.
         nicholasbassett@paulhastings.com
16   Attorneys for the Official Committee of Unsecured
     Creditors
17
     JENNER & BLOCK, LLP
18   363 North Clark Street
     Chicago, IL  60654
19   BY:   MELISSA M. ROOT, ESQ.
         mroot@jenner.com
20   -and-
         LANDON RAIFORD, ESQ.
21       lraiford@jenner.com
     -and-
22       LAURA PELANEK, ESQ.
         lpelanek@jenner.com
23   -and
         CATHY STEEGE, ESQ.
24       csteege@jenner.com
     Attorneys for The Retiree Committee
25

```
 1    A P P E A R A N C E S:
 2
       WHITE & CASE, LLP
 3     111 South Wacker Drive
       Suite 5100
 4     Chicago, Illinois  60606
       BY:   JESSE GREEN, ESQ.
 5        jgreen@whitecase.com
       -and-
 6        JASON ZAKIA, ESQ.
          jzakia@whitecase.com
 7     -and-
          MARA KLEBANER, ESQ.
 8        mklebaner@whitecase.com
       Attorneys for PR Funds
 9
10
11     JONES DAY, LLP
       51 Louisiana Avenue, NW
12     Washington, DC  20001
       BY:   GEOFFREY STEWART, ESQ.
13        gstewart@jonesday.com
       -and
14        SARAH P. MCGONIGLE, ESQ.
          smcgonigle@jonesday.com
15     -and-
          SPARKLE L. SOOKNANAN, ESQ.
16        ssooknanan@jonesday.com
       -and-
17        DAVID R. FOX, ESQ.
          drfox@jonesday.com
18     -and-
          ISEL M. PEREZ, ESQ.
19        iperez@jonesday.com
       Attorneys for ERS Bondholders
20
21
22
23
24
25
```

```
 1    A P P E A R A N C E S:
 2    REED SMITH, LLP
      599 Lexington Avenue
 3    New York, NY  10022
          BY:  NANCY SAVITT, ESQ.
 4          nsavitt@reedsmith.com
          -and-
 5          C. NEIL GRAY, ESQ.
            cgray@reedsmith.com
 6    Attorneys for Bank of New York Mellon, as
      Fiscal Agent
 7
 8
 9
      DELGADO & FERNANDEZ, LLC
10    Fernandez Juncos Station
      San Juan, Puerto Rico  00910
11    BY:  EDUARDO FERNANDEZ FREIRE, ESQ.
            efernandezfreire@delgadofernandez.com
12    Attorneys for ERS Bondholders
13
14
15    O'MELVENY & MYERS, LLP
      7 Times Square
16    New York, NY  10036
          BY:  MADHU POCHA, ESQ.
17          mpocha@omm.com
          -and-
18          BILL SUSHON, ESQ.
            wsushon@omm.com
19        -and-
            SAMANTHA INDELICATO, ESQ.
20          sindelicato@omm.com
      Attorneys for AAFAF as Fiscal Agent For the
21    Commonwealth of Puerto Rico and ERS
22
23
24
25
```

1    A P P E A R A N C E S:

2    ARROYO & RIOS, PSC
     PMB 688

3    1353 Ave. Luis Vigoreaux
     Guaynabo, PR  00966

4    BY:   MORAIMA RIOS, ESQ.
          mrios@arroyorios.com

5    Attorneys for Defendant, 55H-66H

6

7
     BROWN RUDNICK, LLP

8    7 Times Square
     New York, NY  10036

9    BY:   CHELSEA MULLARNEY, ESQ.
          cmullarney@brownrudnick.com

10   -and-
          TRISTAN AXELROD, ESQ.

11        taxelrod@brownrudnick.com
     Attorneys for SCC of the FOMB for Puerto Rico

12

13
     ALSO PRESENT:   JOSE RIVERA, VIDEOGRAPHER

14
              DR. WILLIAM HILDRETH

15
              PETER FRIEDMAN

16

17

18

19

20

21

22

23

24

25

```
 1              I N D E X

 2    WITNESS NAME                    PAGE

 3    ROBERT DOTY

 4         By Mr. Stewart        14

 5         By Mr. Bassett        178

 6

 7            * * * * * *

 8

 9            E X H I B I T S

10

11    EXHIBIT NO.   DESCRIPTION          PAGE

12    1-2       Tab 13, Tab 14       16

13    3         Tab 1           26

14    4         Tab 2           45

15    5         Tab 3           45

16    6         Tab 6           49

17    7         Tab 5           58

18    8         Tab 7           84

19    9         Tab 9           97

20    10 - 11     Tab 23, Tab 24       103

21    12        Tab 15          108

22    13        Tab 16          166

23

24            * * * * * *

25
```

1      Q   Did each maturity of the ERS bonds

2   have its own CUSIP number?

3      A   That is my understanding.

4      Q   It says here the registered owner

5   is Cede, C-E-D-E, and Company?

6      A   Yes, sir.

7      Q   Could you tell us what Cede and

8   Company is?

9      A   Cede and Company is the designee of

10   Depository Trust Company to be shown as the

11   owner of the bonds for purposes of

12   facilitating electronic trading.

13      Q   And for the record, could you tell

14   us what the Depository Trust Company is?

15      A   The Depository Trust Company is a

16   company created to facilitate electronic

17   trading, and to eliminate paperwork so that

18   we no longer have paper bonds.  We have

19   electronic bonds.

20      Q   Have you heard of something called

21   a "global" or "jumbo" bond certificate?

22      A   I have heard the term.  I mean, my

23   understanding is there would be a jumbo

24   certificate for Depository Trust Company

25   here.

1          It's been a while since I dealt

2     with that, but it -- and I'm a little bit

3     uncertain about how it relates specifically

4     to each individual maturity.

5          Q   Okay.  Now, if we look at

6     Exhibit 6, it says registered owner is Cede

7     and Company.

8          Does that indicate that Cede and

9     Company owns this maturity for all purposes?

10          MR. BASSETT:  Objection.  Calls for

11          a legal -- sorry.  That's my fault.  I

12          wanted to clarify that my objection was

13          on the basis that the question called

14          for a legal conclusion.

15          Q   Okay.  And you can answer it,

16     Mr. Doty.

17          A   I don't think the fact that Cede

18     and Company's name is on this bond as -- by

19     itself, that broad indication.

20          Q   Why not?

21          A   What it shows is that Cede and

22     Company is the registered owner.  That

23     doesn't mean that it is -- if we could go

24     back -- I'm recalling -- I'm going to have to

25     ask to have the question reread.

1           I think I need to have the question

2      more firmly in my mind.

3         Q   Okay.  Let me go back.

4           What does it mean to say that

5      someone is a "registered owner" of the bond?

6         A   It means that they are the

7      registered owner of the bond with the

8      trustee.

9           So that's what that means.

10         Q   Does that mean they're the only

11      person with legal rights to the bond?

12         MR. BASSETT:  Objection.

13      A   Not by itself, it doesn't.

14         Q   What else would one need to know in

15      order to learn who has other legal rights to

16      the bond?

17      A   You would need to read the bond

18      resolution and see what rights the bond

19      resolution gives.

20         Q   Now, these bond issues, as I think

21      you've testified, were sold to the public

22      through an underwriting syndicate.

23           Correct?

24      A   Correct.

25         Q   Do you know whether this particular

1    I have always used the term "beneficial

2    owner."

3        Q    Is there a difference between the

4    legal owner and the beneficial owner?

5            MR. BASSETT:  Objection.

6        A   I believe that's a legal opinion.

7    If you want me to answer it, I will answer

8    it.

9        Q   Please do.

10       A   My understanding is that the legal

11   owner is different from the beneficial owner.

12       Q    Okay.  So who is the legal owner?

13       A   Cede and Company.

14       Q    Who is the beneficial owner?

15       A   I don't know.

16       Q    Would it be the investors who

17   purchased the bond through the underwriting

18   syndicate at the time the bonds were sold to

19   the public?

20       A   It would be the individuals who

21   have rights to the bonds through their broker

22   dealers and their broker dealers'

23   relationships to DTC from time to time.

24       Q    And those would be individuals who

25   purchased the bonds?

1      A   They are the individuals who

2    purchased the bonds.

3      Q   Or maybe we call them "investors."

4        Is that a better word?

5      A   That's fine.  That's a shorter way

6    of saying it.

7      Q   So Cede and Company has legal title

8    to the bonds and the investors have equitable

9    title to the bonds?

10       MR. BASSETT:  Objection, legal

11       conclusion.

12       A   I do believe that's a legal

13    conclusion.  I guess I think that's right.  I

14    guess saying it's equitable would be a way of

15    doing it.

16        I haven't actually seen it said

17    that way, but the phrase "beneficial owner"

18    and so on implies that.

19        I think that's probably correct.

20       Q   Okay.

21       MR. STEWART:  We've been on the

22       record.  This is a good break point for

23       me.  If you would like to take a break,

24       Mr. Doty, we can take one now.  If you

25       would like to keep going, we can keep

1    all simultaneous.  The bonds had been sold,

2    the public is obligated to buy the bonds.

3        And the -- they are paying for the

4    bonds that -- at the time of the closing, and

5    the underwriters are getting that money from

6    them, and the bonds are going directly to DTC

7    and -- into the various accounts at DTC.

8        It's all simultaneous.

9    Q    So is it your testimony that at no

10   point the underwriters own the bonds?

11       MR. BASSETT:  Objection.

12   A    I think that you're -- I mean,

13   we're getting pretty far afield from my

14   opinions.  There -- you know, I can't speak

15   for the universe of every single transaction.

16       But as a general rule, the

17   underwriters would not go into the

18   transaction without having commitments on the

19   other side from the investors.  And when the

20   bonds are issued, you see the -- we saw

21   specific maturities and so on going to DTC.

22       And when they go to DTC, they're

23   going to the accounts for the participants at

24   DTC.  It's going to be a legal -- a legal

25   conclusion as to whether, for some nanosecond

1    or something, underwriters might or might not

2    own the bonds.

3          I think that's a legal conclusion.

4    But as a practical matter, the underwriters

5    are not going to enter into the transaction

6    without having the commitments from investors

7    on the other side.

8        Q    Do you know one way or the other,

9    in this particular bond transaction, whether

10   the underwriters did or did not have

11   commitments from investors to purchase all of

12   the bonds?

13       A    No.

14       Q    Now, is it not the case that the

15   underwriters themselves are participants in

16   DTC?

17          MR. BASSETT:  Objection, outside of

18       the scope of his report.

19       A    I don't actually know.  But I can

20   surmise.

21       Q    What is your surmise?

22       A    Well, UBS is a major firm.  I would

23   surmise that they're a participant in DTC.

24       Q    And the other underwriters, do you

25   have any reason to believe they're not direct

1   or indirect DTC participants?

2       A   Well, I don't know about all of

3   them.  They may or may not be direct or

4   indirect participants in DTC.  They might

5   have relationships with other underwriters

6   who are participants.

7          That gets to be fairly complicated.

8       Q   At the time the underwriters buy

9   the bonds, is it not the case that the folks

10   at DTC show, in the first instance, the

11   underwriters as the registered owners of the

12   bonds?

13          MR. BASSETT:  Objection, lack of

14       foundation, outside of the scope of his

15       report.  I don't see how any of this is

16       relevant to the opinions that Mr. Doty

17       is offering in this case, which is the

18       meaning of certain terms in municipal

19       finance.

20       Q   You can answer the question.

21          MR. STEWART:  Nick, the speaking

22       objections are unnecessary.

23       Q   You can answer the question,

24   Mr. Doty.

25       A   I don't know.

1      Q   You don't know one way or the

2    other?

3      A   No.

4      Q   Now, under the bond purchase

5    agreement that we're looking at, Exhibit 7,

6    Paragraph 1, it says, "The underwriters agree

7    to purchase from the system and the system

8    agrees to sell to the underwriters the

9    bonds."

10         Do you remember that language that

11   we looked at?

12     A   Yes.

13     Q   Did the underwriters ever own the

14   bonds?

15         MR. BASSETT:  Objection.  Asking

16      for a legal conclusion.

17     A   I believe that's a legal

18   conclusion.  And I don't know the answer to

19   that as to whether, for a nanosecond, they

20   may have owned some bonds.

21     Q   You don't know whether they would

22   have owned the bonds for more than a

23   nanosecond either.

24         Correct?

25         MR. BASSETT:  Same objection.

1      A   Correct.

2      Q   And there it says, "Upon receipt of

3   payment, Bank of New York will contact the

4   Depository Trust Company and close the issue

5   and release the series of bonds."

6      A   Right.  That's when -- that is when

7   the fiscal agent acting for ERS delivers the

8   bonds to DTC, which at that point has a list

9   of names of participants in whose accounts

10   those bonds will be deposited.

11      Q   And the participants can include

12   the underwriters.

13      Correct?

14      MR. BASSETT:  Objection.

15      A   They could.  But the underwriters

16   are not investing in the bonds, so it's -- I

17   mean, they -- they can be a participant, but

18   they may have -- and they probably have

19   customers on their records.

20      So yes, they would -- I'm thinking

21   this through out loud, but as a -- the answer

22   is yes, they would -- if they're a

23   participant, which I suspect they were, then

24   there would be bonds that would be delivered

25   to them for their customers.

1     Got it.

2     Q   Is everybody there?

3         MR. BASSETT:  Yes, thank you.

4     Q   Okay.  Do you see the heading,

5   "What are Municipal Securities?"

6     A   Yes.

7     Q   Okay.  And there, you write

8   "Municipal" -- and I'm going to just direct

9   your attention to the second sentence where

10   you say, "Municipal securities are debt

11   securities, effectively loans, payable from

12   taxes of governmental or other project

13   revenues."

14        Why do you call them "municipal

15   securities loans"?

16     A   Well, they are loans from the

17   investing public.

18     Q   Who is the borrower?

19     A   The borrower is the governmental

20   issuer.

21     Q   Okay.  Now, what's the evidence of

22   the loan?

23        MR. BASSETT:  Objection.

24     A   There is no paper evidence of it,

25   except in the DTC, the paper bonds.  There's

1    a -- I guess there's a paper bond at DTC.

2          Maybe that's what you're referring

3    to as the "jumbo bond," but that would be it.

4       Q    Okay.  But there's a means of

5    determining who's the owner beneficially of

6    the bond?

7       A    On DTC's books, yes.

8       Q    And every bond has a beneficial

9    owner.

10         Correct?

11      A    I suppose so.

12      Q    So -- and the evidence of the

13   beneficial ownership is the chain of book

14   entries running through DTC down to the

15   retail account of the individual investor.

16         Correct?

17      A    Correct.

18      Q    Do you know how an issuer knows who

19   to send payments of interest to?

20      A    It's specified in the bond

21   resolution in this case.

22      Q    Okay.  And do you know how they --

23   how they -- the identity of the individual

24   investor is determined?

25      A    That flows through the DTC, from

1    the trustee to DTC, to the individual

2    investors.

3        Q    Okay.  And so --

4        A    To the direct and indirect

5    participants, and from there, down to the

6    individual investors.

7        Q    So going back to this, is it fair

8    to say that the lender is the person who has

9    the beneficial rights to the bond?

10       MR. BASSETT:  Objection.

11       A    Yes.  Once you get to the investor

12   level, yes.

13       Q    Okay.  And that would be whoever it

14   is who happens to own those beneficial

15   rights.

16       Correct?

17       MR. BASSETT:  Objection, misstates

18       testimony.

19       A    Right.  But once the bonds are

20   placed through DTC and the bond issue is

21   completed, it's the individual investor.

22       Q    Okay.

23       A    By "individual," I don't mean

24   people.  I mean specific -- the specific

25   parties.