**Reply Deadline**: Dec. 3, 2020
**Hearing Date**: TBD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) |
| | ) Case No. 17-BK-03283 (LTS) |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) |
| | ) |
| Debtors.[1] | ) |
| | ) |
| | ) |
| In re: | ) |
| | ) PROMESA |
| | ) Title III |
| THE FINANCIAL OVERSIGHT AND | ) |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) Case No. 17-BK-03566 (LTS) |
| | ) |
| as representative of | ) |
| | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) |
| GOVERNMENT OF THE COMMONWEALTH OF | ) |
| PUERTO RICO, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |
| THE SPECIAL CLAIMS COMMITTEE OF THE | ) |
| FINANCIAL OVERSIGHT AND MANAGEMENT | ) Adv. Proc. No. 19-00356 (LTS) |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK- 4780) (Last Four Digits of Federal Tax ID: 3747).

BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA),

    as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO,

    Plaintiff,

v.

DEFENDANT 1M, *et al.*,

    Defendants.

_____

THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA),

    as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO,

    Plaintiff,

v.

STOEVER GLASS & CO., *et al.*,

Adv. Proc. No. 19-00357 (LTS)

Defendant.

)
)
)
)
)
)
)

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

    as co-trustees of

THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF PUERTO RICO,

    Plaintiff,

v.

DEFENDANT 1H-78H,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Adv. Proc. No. 19-00359 (LTS)

THE SPECIAL CLAIMS COMMITTEE OF THE
FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, ACTING BY AND
THROUGH ITS MEMBERS,

    and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS
(OTHER THAN COFINA),

    as co-trustees of

)
)
)
)
)
)
)
)
)
)
)
)
)

Adv. Proc. No. 19-00361 (LTS)

THE EMPLOYEES RETIREMENT SYSTEM OF THE )
GOVERNMENT OF PUERTO RICO,                                )
                                                                                    )
       Plaintiff,                                                        )
                                                                                    )
v.                                                                                  )
                                                                                    )
DEFENDANT 1G-50G, *et al.*,                                      )
                                                                                    )
       Defendants.                                                 )
                                                                                    )
                                                                                    )
-------------------------------------------------------------------- X

### ERS BONDHOLDERS' OPPOSITION TO COMMITTEES' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LAURA GONZALEZ ON *ULTRA VIRES* ISSUES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT ........................................................................................................3

I.    Dr. Gonzalez Is Qualified To Opine On The Accurate English Translation Of
      Section 779(d) Of The ERS Enabling Act ..........................................................4

II.   Dr. Gonzalez Provided A Reliable Opinion On The English Translation Of
      Section 779(d) Of The ERS Enabling Act ..........................................................9

III.  Dr. Gonzalez's Testimony Is Helpful To The Trier Of Fact ...........................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................................... 9

*Bado-Santana v. Ford Motor Co.*,
482 F.Supp.2d 192 (D.P.R. 2007) ................................................................................ 4

*Barrios v. Foltz*,
943 F.2d 51, 1991 WL 165177 (6th Cir. 1991) ........................................................... 8

*Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*,
315 F. Supp. 3d 101 (D.D.C. 2018) ........................................................................... 15

*Carter v. Massey-Ferguson, Inc.*,
716 F.2d 344 (5th Cir. 1983) ..................................................................................... 15

*Chadwick v. WellPoint, Inc.*,
561 F.3d 38 (1st Cir. 2009) .......................................................................................... 7

*Crowe v. Marchand*,
506 F.3d 13 (1st Cir. 2007) .......................................................................................... 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................................................................................ *passim*

*Diefenbach v. Sheridan Transp.*,
229 F.3d 27 (1st Cir. 2000) ...................................................................................... 4, 7

*Favorito v. Pannell*,
27 F.3d 716 (1st Cir. 1994) .......................................................................................... 9

*Gaydar v. Sociedad Instituto Gineco–Quirurgico y Planificacion Fam.*,
345 F.3d 15 (1st Cir. 2003) .......................................................................................... 7

*Gray v. Noholoa*,
214 U.S. 108 (1909) ..................................................................................................... 1

*Guzman–Fonalledas v. Hospital Español Auxilio Mutuo*,
308 F.Supp.3d 604 (D.P.R. 2018) .............................................................................. 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Corp. Res. Servs., Inc.*,
   603 B.R. 888 (Bankr. S.D.N.Y. 2019) .............................................................................. 14

*In re Fin. Oversight & Mgmt. Bd.*,
   914 F.3d 694 (1st Cir. 2019) ........................................................................................... 15

*Int'l. Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*,
   470 F.Supp.2d 345 (S.D.N.Y. 2007) ............................................................................... 12

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................................... 9, 10

*Lauzon v. Senco Prod., Inc.*,
   270 F.3d 681 (8th Cir. 2001) ........................................................................................... 14

*Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*,
   405 F.3d 36 (1st Cir. 2005) ............................................................................................ 7, 8

*Robinson v. GEICO Gen. Ins. Co.*,
   447 F.3d 1096 (8th Cir. 2006) ....................................................................................... 4, 6

*Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*,
   161 F.3d 77 (1st Cir. 1998) .............................................................................................. 12

*Santos v. Posadas De Puerto Rico Assocs., Inc.*,
   452 F.3d 59 (1st Cir. 2006) ................................................................................................ 4

*Short v. N. Pointe Ins. Co.*,
   No. 1:11-CV-00545-SEB, 2013 WL 2367875 (S.D. Ind. May 28, 2013) ............................ 15

*Sofia Perez Segovia v. Tribunal de Distrito de San Juan*,
   69 D.P.R. 4 (1948) .......................................................................................................... 13

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
   449 F. Supp. 3d 333 (S.D.N.Y. 2020) ................................................................................. 3

*Torres-Ocasio v. Texaco Puerto Rico, Inc.*,
   2007 WL 2245731, at *3 (D.P.R. Aug. 1, 2007) ................................................................. 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*U.S. ex. rel. Jones v. Brigham and Women's Hosp.*,
  678 F.3d 72 (1st Cir. 2012) ................................................................................................ 10

*United States v. Angiulo*,
  897 F.2d 1169 (1st Cir. 1990) ............................................................................................ 13

*United States v. Contreras*,
  173 F.3d 852, 1999 WL 123760 (4th Cir. 1999) ......................................................... 4, 5, 6, 7

*United States v. Diaz*,
  300 F.3d 66 (1st Cir. 2002) ............................................................................................... 3, 9

*United States v. Gomez*,
  67 F.3d 1515 (10th Cir. 1995) ........................................................................................... 5, 6

*United States v. Gonzalez*,
  319 F.3d 291 (7th Cir. 2003) ................................................................................................ 1

*United States v. Hoffman*,
  832 F.2d 1299 (1st Cir. 1987) .............................................................................................. 6

*United States v. Martinez-Armestica*,
  846 F.3d 436 (1st Cir. 2017) ............................................................................................... 9

*United States v. Mehanna*,
  735 F.3d 32 (1st Cir. 2013) ............................................................................................... 15

*United States v. Perocier*,
  269 F.R.D. 103 (D.P.R. 2009) ......................................................................................... 9, 11

*United States v. Sebaggala*,
  256 F.3d 59 (1st Cir. 2001) ............................................................................................... 15

*United States v. Shay*,
  57 F.3d 126 (1st Cir. 1995) ............................................................................................... 14

*Vadala v. Teledyne Indus., Inc.*,
  44 F.3d 36 (1st Cir. 1995) ................................................................................................. 13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

3 L.P.R.A. § 779(d).................................................................................................*passim*

31 L.P.R.A. § 13 ...............................................................................................................15

**OTHER AUTHORITIES**

29 Charles Alan Wright et al, Fed. Prac. & Proc. § 6264.1 (2d ed. 2000)......................................6

Fed. R. Evid. 702 ...............................................................................................*passim*

Fed. R. Evid. 702 Advisory Committee Notes .......................................................................3, 10

The ERS Bondholders[2] file this opposition to the *Motion to Exclude Expert Testimony of Dr. Laura Gonzalez on* Ultra Vires *Issues* filed by the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, the Official Committee of Unsecured Creditors, and the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (the "Committees"), No. 17-3566, ECF No. 997; No. 17-3283, ECF No. 14974.

## INTRODUCTION

Over a year ago, when the Bondholders responded to the Committees' claim objections, they explained why the "official" translation of section 779(d) of the Enabling Act is inaccurate. And more than six months ago, the Bondholders disclosed that Dr. Laura Gonzalez would provide an expert opinion concerning the proper translation of that provision. Despite this notice, the Committees made no effort to engage an expert to offer a competing translation. Similarly, in summary judgment briefing, the Committees made no effort to offer any competent evidence to contradict the Bondholders' translation or support the official translation. These failures are dispositive, because the proper translation of a foreign language text is a question of fact. *Gray v. Noholoa*, 214 U.S. 108, 110 (1909); *United States v. Gonzalez*, 319 F.3d 291, 296 (7th Cir. 2003).

Having forgone the opportunity to offer their own expert testimony on the translation question, the Committees now move to exclude Dr. Gonzalez on the grounds that she supposedly lacks relevant expertise, failed to use a reliable methodology, and is not helpful to the trier of fact.

---

[2] Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit, L.P.

These arguments are all without merit.  Dr. Gonzalez's expert report meets the requirements established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993), for admissibility of expert testimony under the liberal standards of Rule 702 of the Federal Rules of Evidence.  *First*, Dr. Gonzalez, a native Spanish speaker with years of experience translating between Spanish and English, is qualified to provide expert testimony on the proper translation of section 779(d).  *Second*, drawing on her background and experience, in addition to consulting other sources, Dr. Gonzalez provided a reliable opinion on the accurate translation of that provision. *Third*, Dr. Gonzalez's testimony will undoubtedly be helpful to the Court as it determines whether section 779(d) authorized the issuance of the ERS Bonds.  The Committees' attempt to use this motion to overcome their own evidentiary shortcomings fails.  At most, their objections go to weight, not admissibility.

## BACKGROUND

A fundamental issue in the *ultra vires* proceedings is whether a provision of the ERS Enabling Act, 3 L.P.R.A. § 779(d), authorized ERS to issue $3 billion in ERS Bonds.  As the Bondholders explained in their summary judgment briefing, the "official" English translation of that provision contains three inaccuracies.  *See* ERS Bondholders' *Ultra Vires* Mot. for Summary Judgment at 6-8, No. 17-3566, ECF No. 971; No. 17-3283, ECF No. 14241 (errors relating to comma placement and the translation of the terms "del" and "tomar prestado").  The Bondholders offered the expert testimony of Dr. Laura Gonzalez in support of the proper English translation. Gonz. Rep. at 6-9, Ex. 1 to Gonz. Decl., No. 17-3566, ECF No. 975; No. 17-3283, ECF No. 14245.

The Committees' motion to exclude Dr. Gonzalez's testimony addresses only one of the inaccuracies in the "official" English translation: the proper translation of the term "tomar prestado."  As the Bondholders explained, the phrase "tomar prestado" means "borrow."  *See* ERS

Bondholders' *Ultra Vires* Mot. for Summary Judgment at 6-8.  This translation is supported by dictionary definitions, *id.* at 7-8 (citing dictionaries that confirm that the phrase "tomar prestado" means to temporarily take something with the intention of returning it, and is properly translated into English as "borrow"), and is consistent with the official translations of numerous other Puerto Rico statutes, *id.* at 8 (explaining that the phrase "tomar prestado" appears thirteen other places in the Puerto Rico Statutes Annotated, and in nearly every other instance it is translated in the official translation as "borrow," "borrowed," or "borrowing," and not "seek a loan").  The expert opinion of Dr. Gonzalez also confirms this translation.  Gonz. Rep. at 6-8.  And, as mentioned, the Committees have made no effort to engage an expert of their own to offer a competing translation or otherwise introduce competent rebutting evidence.

## ARGUMENT

"The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702." *Crowe v. Marchand*, 506 F.3d 13, 17 (1st Cir. 2007).  "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Solid Oak Sketches, LLC v. 2K Games, Inc.*, 449 F. Supp. 3d 333, 350 (S.D.N.Y. 2020) (quoting *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005)).  Rule 702 "provides that a proposed expert witness must be sufficiently qualified to assist the trier of fact, and that his or her expert testimony must be relevant to the task at hand and rest on a reliable basis[.]" *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).  "[T]he rejection of expert testimony [under Rule 702] is the exception rather than the rule." Fed. R. Evid. 702 advisory committee notes.  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

This liberal standard is easily met here: Dr. Gonzalez is qualified to serve as a translation expert on the relevant provision of the ERS Enabling Act, and her opinion provides a reliable translation that will assist the Court in resolving a central dispute in the *ultra vires* proceedings.

## I.   Dr. Gonzalez Is Qualified To Opine On The Accurate English Translation Of Section 779(d) Of The ERS Enabling Act

"A witness's qualifications to render an expert opinion are liberally judged by Federal Rule of Evidence 702[.]" *United States v. Contreras*, 173 F.3d 852 (Table), 1999 WL 123760, at *2 (4th Cir. 1999). Under Rule 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. of Evid. 702. "It is well-settled that 'trial judges have broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses.'" *Diefenbach v. Sheridan Transp.*, 229 F.3d 27, 30 (1st Cir. 2000) (quoting *Richmond Steel Inc. v. Puerto Rican Am. Ins. Co.*, 954 F.2d 19, 20 (1st Cir. 1992)). "There is no mechanical formula for determining whether an expert is qualified to offer opinion evidence in a particular field." *Bado-Santana v. Ford Motor Co.*, 482 F. Supp. 2d 192, 194 (D.P.R. 2007). "The test is whether, under the totality of the circumstances, the witness can be said to be qualified as an expert in a particular field, through any one or more of the five bases enumerated in Rule 702—knowledge, skill, experience, training, or education." *Santos v. Posadas De Puerto Rico Assocs., Inc.*, 452 F.3d 59, 64 (1st Cir. 2006). "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (citing 29 Charles Alan Wright et al., Fed. Prac. & Proc. § 6265 (1997)).

Translation experts are generally qualified under Rule 702 on the basis of personal or professional experience. *See*, *e.g.*, *United States v. Gomez*, 67 F.3d 1515, 1525-26 (10th Cir. 1995) (no abuse of discretion admitting translation witness under "liberal" Rule 702 standard where witness held a minor in Spanish and served a 23-month religious mission in South America); *Contreras*, 1999 WL 123760, at *2 (no abuse of discretion admitting translation expert who was a native Spanish speaker and who used translation skills in the course of police duties).

Dr. Gonzalez, a native Spanish and fluent English speaker with years of experience translating between Spanish and English, easily meets this standard. Gonz. Rep. at 4. After receiving her undergraduate degree in Spain, Dr. Gonzalez moved to the United States in 2000, and obtained a Master Degree from Southern Illinois University in Foreign Languages and Literature in English, Spanish, and French, and later a Ph.D. in Finance from the University of Florida. Gonz. Rep. at 4. Dr. Gonzalez taught undergraduate beginner and intermediate Spanish languages courses at Southern Illinois University, provided written translations from Spanish to English for the University of Florida law school, and provided Spanish language tutoring during the course of her higher education. Gonz. Rep. at 4; Sooknanan Decl., Ex. 1, at 47:13-25; 48:1-25; 49:1-20.[3] Throughout her career as a professor, she has continued to translate between Spanish and English, in both professional and personal contexts, including during professional trips and meetings. Sooknanan Decl., Ex. 1, at 59:14-25; 60:1-25; 61:1-15. She also teaches and mentors Spanish speaking students. Sooknanan Decl., Ex. 1, at 61:5-15. And she frequently speaks Spanish with "Spanish speakers all over the Spanish speaking nations and areas and dialects," including speakers from Puerto Rico. Sooknanan Decl., Ex. 1, at 92:20-22.

---

[3] References to "Sooknanan Decl." are to the *Declaration of Sparkle L. Sooknanan in Support of ERS Bondholders' Opposition to Committees' Motion to Exclude Expert Testimony of Dr. Laura Gonzalez on* Ultra Vires *Issues*, filed herewith.

Despite this vast experience, the Committees argue that Dr. Gonzalez is not qualified to serve as a translation expert in this case. Their arguments all fail. If anything, they go to the weight rather than admissibility of Dr. Gonzalez's testimony. *See Robinson*, 447 F.3d at 1100.

*First*, the Committees argue that Dr. Gonzalez's experience in formal Spanish translation is "limited." Comms. Mot. at 5. But as explained above, the standard for qualification of translation experts under Rule 702 is liberal. Indeed, courts routinely admit translation experts with considerably *less* experience than Dr. Gonzalez. *See, e.g.*, *Gomez*, 67 F.3d at 1525-26 (upholding admission of translation witness under "liberal" Rule 702 standard where witness held a minor in Spanish and served a 23-month religious mission in South America); *Contreras*, 1999 WL 123760, at *2 (upholding qualification of Spanish translation expert based on 26 years' experience speaking Spanish and use of Spanish to English translation during course of performing police duties).

*Second*, the Committees claim that Dr. Gonzalez is not qualified because she has not previously served as an expert witness. Comms. Mot. at 5. But nothing in Rule 702 requires an expert to have been previously qualified as an expert. *See* 29 Charles Alan Wright et al., Fed. Prac. & Proc. § 6264.1 (2d ed. 2000) ("Assuming a witness's background [in one of the five bases under Rule 702] qualifies that witness as an expert, the witness is competent to testify as an expert."); *see also Gomez*, 67 F.3d at 1525-26 (admitting translation expert that did not have prior expert witness experience in translation). Relatedly, the Committees note that Dr. Gonzalez does not translate for a living and is not formally certified as a translator. Comms. Mot. at 6. But neither is required under Rule 702. *See, e.g.*, *United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir. 1987) (explaining that "[e]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies" and emphasizing the value of "extensive

6

practical experience"); *see also Contreras*, 1999 WL 123760, at *1 (upholding admission of Spanish to English translator who lacked "extensive formal training in the Spanish language and Spanish translation").

*Third*, the Committees claim that Dr. Gonzalez may not translate the ERS Enabling Act without "specialized knowledge of the Spanish dialect spoken in Puerto Rico." Comms. Mot. at 6. The Committees invent this requirement, too. "Rule 702 has been interpreted liberally in favor of the admission of expert testimony, and as such, expert witnesses *need not* have overly specialized knowledge to offer opinions." *Torres-Ocasio v. Texaco Puerto Rico, Inc.*, 2007 WL 2245731, at *3 (D.P.R. Aug. 1, 2007) (citing *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) (emphasis added)). The Committees cannot explain why Dr. Gonzalez's broad expertise in Spanish is not sufficiently specialized to qualify her as an expert to translate a provision of the ERS Enabling Act. *See Gaydar v. Sociedad Instituto Gineco–Quirurgico y Planificacion Fam*, 345 F.3d 15, 24-25 (1st Cir. 2003) (affirming admission of general practitioner as expert on ectopic pregnancies because "[t]he proffered expert physician need not be a specialist in a particular medical discipline [such as obstetrics or gynecology] to render expert testimony relating to that discipline"); *cf. Diefenbach*, 229 F.3d at 31 (holding captain qualified to give expert testimony about accident aboard ITB vessel, despite never having served on an ITB vessel, because expert was familiar with ITB vessels and ITB vessels "use[d] the same winches, machinery, chocks and blocks as [captain's] barges and tugs").[4]

---

[4] The Committees' cases on this point are inapposite. Comms. Mot. at 7. Most glaringly, neither case involved translation experts, *see Prado Alvarez v. R.J. Reynolds Tobacco Co., Inc.*, 405 F.3d 36, 39-43 (1st Cir. 2005); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 48-49 (1st Cir. 2009), and *Chadwick* does not even address geographic or "locality" concerns, 561 F.3d at 48-49, 49 n.13 (affirming exclusion because expert's "apparent lack of familiarity with the details of this case," including the supervisor's background and testimony, rendered her testimony unhelpful as to supervisor's intention). And in *Prado Alvarez*, the expert's research and professional experience in both Puerto

Moreover, there is no evidence that the Committees' preferred "specialized knowledge of the Spanish dialect in Puerto Rico" would have any impact on the ability to translate the term "tomar prestado" in the Enabling Act. *Cf. Barrios v. Foltz*, 943 F.2d 51 (Table), 1991 WL 165177, at *4 (6th Cir. 1991) ("Many languages have dialects, but almost all languages have a formal version of the language that is used for official proceedings. For example, the Southern dialect in America has many words for objects that differ from those used in other American dialects, but a Southerner would be able to understand the courtroom proceedings in any state of the Union because the English used in federal courts does not depend on words that are not also in common currency in the Southern dialect."). As the Bondholders explained, Dr. Gonzalez's translation of that term is consistent with dictionary definitions and translations of other Puerto Rico statutes. *See* ERS Bondholders' *Ultra Vires* Mot. for Summary Judgment at 7-8. And the Committees do not suggest that the term has a different meaning in Puerto Rico. Dr. Gonzalez herself testified: "I have been speaking Spanish for 45 years. I have been living in the United States for 20 years. I have been speaking with Spanish speaking nations and areas and dialects for 20 years, and 25 previous in Spain going to different regions. And I have never in 45 years seen 'tomar prestado' mean anything other than 'borrow.'" Sooknanan Decl., Ex. 1, at 92:17-25; 93:1-2.

*Fourth*, perhaps recognizing the futility of their arguments, the Committees improperly use this motion to argue in the alternative that the Court should discount Dr. Gonzalez's translation in favor of the "official" translation of the ERS Enabling Act—a translation the Committees have not defended in summary judgment briefing and in fact previously conceded was erroneous. *See* ERS Bondholders *Ultra Vires* Mot. for Summary Judgment at 6-7. The Committees had ample

---

Rican and Haitian history were largely irrelevant to the issues in the case, and she relied on limited sources in comparison to the opposing experts' extensively researched report. *See Prado Alvarez*, 405 F.3d at 39-43.

opportunity to offer an expert of their own or otherwise provide evidence challenging the Bondholders' translation of section 779(d). They did neither. It is not sufficient for a party opposing summary judgment to solely rely on the proposition that the movant's evidence will be disbelieved rather than advancing competent evidence of its own. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *Favorito v. Pannell*, 27 F.3d 716, 721 (1st Cir. 1994) ("[A] *bare assertion* that the opposing party's uncontroverted evidence might be disbelieved is insufficient to resist judgment as a matter of law [as in the summary judgment context] on an issue as to which the party resisting judgment bears the burden of proof. Were it otherwise, Rules 50 and 56 could be rendered virtually useless, merely on the strength of a nonmovant's supposition that the movant's uncontroverted evidence might be disbelieved.") (internal citation omitted).

## II.   Dr. Gonzalez Provided A Reliable Opinion On The English Translation Of Section 779(d) Of The ERS Enabling Act

Expert testimony is admissible where its "specialized testimony is reliable and relevant"—regardless of "whether the testimony reflects scientific, technical, or other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Rule 702 requires that "(1) an expert's testimony is 'based upon sufficient facts or data'; (2) the testimony is the 'product of reliable principles and methods'; and (3) the expert apply 'the principles and methods reliably to the facts of the case.'" *Diaz*, 300 F.3d at 76 (quoting Fed. R. Evid. 702). "The Supreme Court has made clear that 'the test of reliability is "flexible," and . . . the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Perocier*, 269 F.R.D. 103, 107 (D.P.R. 2009) (emphasis in

9

original) (quoting *Kumho*, 526 U.S. at 141-142).   "Often in fields based upon specialized knowledge rather than scientific expertise, the 'expert's experience and training bear a strong correlation to the reliability of the expert's testimony.'"  *United States v. Martinez-Armestica*, 846 F.3d 436, 444 (1st Cir. 2017) (citing *United States v. Jones*, 107 F.3d 1147, 1155 (6th Cir. 1997)). "If a witness relies primarily on experience, she must 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *U.S. ex. rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72 (1st Cir. 2012) (quoting Fed. R. Evid. 702 advisory committee's note).

Dr. Gonzalez's expert opinion meets this standard.  She appropriately draws upon her specialized knowledge and experience translating between Spanish and English to provide a reliable opinion on the translation of section 779(d) of the ERS Enabling Act.  *See Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); Fed. R. Evid. 702 advisory committee notes ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony.").

As discussed above, Dr. Gonzalez has been a native Spanish speaker for 45 years, during which she has taught and tutored in Spanish, has translated between the languages, and has communicated with Spanish speakers of all backgrounds, including from Puerto Rico.  *See* Gonz. Rep. at 4; Sooknanan Decl., Ex. 1, at 47:13-25; 48:1-25; 49:1-20; 58:5-25; 59:1-25; 60:1-25; 61:1-15; 92:17-25; 128:9-24.  As Dr. Gonzalez testified, that extensive experience formed a basis for her opinion: She relied upon her years of education, experience in translation, and knowledge of Spanish spoken across various backgrounds in forming her opinion on the correct translation of

the term "tomar prestado." *See* Sooknanan Decl., Ex. 1, at 92:17-25; 93:1-2; 94:1-14; 106:20-25; 107:1-9. Dr. Gonzalez's report also explained in detail how she reached her opinion that the term "tomar prestado" in the ERS Enabling Act is more accurately translated as "borrow." Gonz. Rep. at 6-7 (explaining that the phrase "to seek a loan" would be translated in Spanish as "efectuar/contratar un prestamo" whereas the term "tomar prestado" more accurately translates to "borrow" because it "means to temporarily take something with the intention of returning it"); *see also* Sooknanan Decl., Ex. 1, at 94:5-12 ("I considered the paragraph.  I considered the documents listed in page 4, the documents also listed in page 7 and 8, and also my experience for 45 years as native speaker of Spanish, living in the United States, speaking with people from different regions in the Americas that speak different dialects.").  And Dr. Gonzalez testified that she referenced Spanish-English dictionaries, Sooknanan Decl., Ex. 1, at 22:9-15, and consulted other sources that confirmed her opinion, such as use of the term "tomar prestado" in writings and speeches across diverse Spanish backgrounds, including Puerto Rico, Uruguay, and Venezuela, *see* Gonz. Rep. at 7-8.  Drawing upon her decades of experience, she testified that she has "never in 45 years seen 'tomar prestado' mean anything other than 'borrow.'"  Sooknanan Decl., Ex. 1, at 92:17-25; 93:1-2.  In sum, far from basing her opinion on *ipse dixit* or "subjective belief or unsupported speculation," Comms. Mot. at 8, Dr. Gonzalez's opinion is reasoned and reliable under Rule 702.

The Committees' arguments challenging the reliability of Dr. Gonzalez's opinion all fail.

*First*, the Committees' claim that Dr. Gonzalez only consulted "marginal" sources to confirm her translation.  Not so.  As explained above, Dr. Gonzalez consulted multiple sources. In any event, this argument goes to the weight, not admissibility, of Dr. Gonzalez's opinion. *Perocier*, 269 F.R.D. at 106 ("[T]he First Circuit has repeatedly held that a challenge to the 'factual underpinning' of an expert's opinion 'is a matter affecting the weight and credibility of the

11

testimony[.]'") (quoting *United States v. Vargas*, 471 F.3d 255, 264 (1st Cir. 2006)); *see also Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 355 (S.D.N.Y. 2007) (holding expert's alleged failure to "review pertinent record evidence" and "consider alternative explanations for Defendants' actions" do not "so much undermine the reliability" of his report, but rather go to the weight of his testimony).

*Second*, the Committees argue that Dr. Gonzalez's opinion is unreliable because it "does not establish that 'tomar prestado' can *never* appropriately be translated as 'to seek a loan.'" Comms. Mot. at 9. The Committees misunderstand the Rule 702 standard. An expert opinion that is reliable meets that standard, though a party may challenge the opinion through the adversary process, including by submitting competing expert testimony. *See Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."). Here, Dr. Gonzalez offered a reliable opinion under Rule 702 on the accurate translation of section 779(d) of the ERS Enabling Act. Despite ample notice, the Committees chose not to offer a competing translation of that provision to challenge her opinion. They cannot now remedy that evidentiary shortcoming through the instant motion to exclude Dr. Gonzalez's testimony.

Moreover, the Committees' argument proves nothing. They claim that Dr. Gonzalez's opinion does not reliably establish that "tomar prestado" can never mean to "seek a loan," yet— tellingly—they cannot provide even a single instance of "tomar prestado" being accurately translated as "to seek a loan." Rather, they continue to rely on the inaccurate "official" translation—a translation the Committees themselves previously admitted was erroneous. In any

event, Dr. Gonzalez does not need to irrefutably prove the accuracy of her conclusions for them to be admissible. *See*, *e.g.*, *Guzman–Fonalledas v. Hospital Español Auxilio Mutuo*, 308 F.Supp.3d 604, 609-610 (D.P.R. 2018).[5]

*Third*, the Committees cite *Sofia Perez Segovia v. Tribunal de Distrito de San Juan*, 69 D.P.R. 4 (1948), to argue that Dr. Gonzalez's purported failure to demonstrate that "tomar prestado" can never mean "to seek a loan" is "an especially glaring methodological gap," because "under Puerto Rico law, the official translation of a statute controls absent a showing that it is not 'substantially satisfactory.'" Comms. Mot. at 9. The Committees grossly misstate the holding of *Sofia Perez Segovia*. There, the Court found that a Spanish translation of English text was "substantially satisfactory" where the portion of the translation in dispute was not "central" to the issues in the litigation. *See id.* at 8-9. That is obviously not the case here. Moreover, after finding that the relevant translation was "reasonably adequate," the court nonetheless went on to offer its own translation of the original English text. *See id.* at 16-17 (finding that "the meaning of the [original] English phrase becomes even clearer if it is translated as 'en que no se ha procedido de acuerdo con las disposiciones de ley'" as opposed to the official Spanish translation of that same phrase). And of course, the "official" English translation of section 779(d) is not "substantially satisfactory," as the Bondholders have established and Dr. Gonzalez's opinion confirms.

---

[5] The Committees' reliance on *Vadala* is inapposite. The expert in that case offered a conclusion that was not "viable" largely because it was based on his observation that certain airplane parts showed no signs of heat damage from a ground fire but the expert "admitted he had no idea what temperature would be required" to alter their appearance. *See Vadala v. Teledyne Indus., Inc.*, 44 F.3d 36, 38-39 (1st Cir. 1995) (noting expert also needed to cope with significant inference against his opinion based on other evidence). Here, the Committees have not offered any evidence challenging Dr. Gonzalez's translation of the term "tomar prestado," and as discussed above, Dr. Gonzalez's opinion is both reasoned and reliable under Rule 702, *supra* at 9-11.

### III.   Dr. Gonzalez's Testimony Is Helpful To The Trier Of Fact

"The permissible scope of expert testimony under Fed. R. Evid. 702 is quite broad . . . ." *United States v. Angiulo*, 897 F.2d 1169, 1189 (1st Cir. 1990).  "The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is '[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.'"  *United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995) (quoting *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994)).  This in turn requires the court to "determine whether the proposed testimony is relevant and fits the facts of the case." *Id.* at 132-33.  Relevance under Rule 702 "is a low bar," *In re Corp. Res. Servs., Inc.*, 603 B.R. 888, 896 (Bankr. S.D.N.Y. 2019), and the "concept of 'fit'" merely "requires that a valid connection exist between the expert's testimony and a disputed issue," *Shay*, 57 F.3d at 133 n.5. As such, "[t]he rule clearly 'is one of admissibility rather than exclusion.'"  *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (quoting *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991)).

Under this standard, Dr. Gonzalez's testimony will unquestionably assist the Court.  An opinion on the accurate English translation of section 779(d) will obviously help the Court decide whether that provision authorized ERS to issue the ERS Bonds.  Yet the Committees make the bizarre argument that "the translation of 'tomar prestado' is irrelevant to the parties' arguments." Comms. Mot. at 9 (alterations).  In the Committees' view, the proper translation of the very provision that provides the basis for ERS's authority to issue the bonds that the Committees seek to invalidate "will not help the Court in any way."  *Id.* at 10.  The Committees are obviously wrong.

"The relevance of proposed expert testimony does not depend on whether the testimony 'satisfies the plaintiff's burden on the ultimate issue at trial,' but whether the testimony 'could aid the [factfinder's] resolution of the [parties'] claims.'" *Bazarian Int'l Fin. Assocs., LLC v. Desarrollos Aerohotelco, C.A.*, 315 F. Supp. 3d 101, 117 (D.D.C. 2018) (quoting *Ambrosini v. Labarraque*, 101 F.3d 129, 135-36 (D.C. Cir. 1996)).  Moreover, "evidence need not be dispositive of an issue to be relevant." *Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 348 (5th Cir. 1983) (citing Fed. R. Evid. 401 advisory committee note); *see also Short v. N. Pointe Ins. Co.*, No. 1:11-CV-00545-SEB, 2013 WL 2367875, at *2 (S.D. Ind. May 28, 2013) (admitting expert testimony because although "not dispositive," "it provide[d] context that may assist the jury").  Indeed, courts exclude expert testimony on relevance grounds only when the "testimony seems *totally irrelevant*," *United States v. Sebaggala*, 256 F.3d 59, 66 (1st Cir. 2001) (emphasis added), or when it "does not relate to *any issue* in the case." *Daubert*, 509 U.S. at 591 (1993) (emphasis added); *United States v. Mehanna*, 735 F.3d 32, 67 (1st Cir. 2013) (excluding expert testimony where it related to a "non-issue" in the case).

The scope of ERS's statutory authority to issue the ERS bonds is far from a "non-issue": it is at the core of the parties' dispute in the *ultra vires* proceedings.  And as the Bondholders explained in the substantive briefing of the issues, the "official" English translation of the relevant provision mistranslates the original Spanish text in three ways. *See* ERS Bondholders' *Ultra Vires* Mot. for Summary Judgment at 6-8.  Under Puerto Rico law, if there is any "discrepancy" between the original Spanish text of a statute and the official English translation, the original Spanish controls. 31 L.P.R.A. § 13; *In re Fin. Oversight & Mgmt. Bd.*, 914 F.3d 694, 717 (1st Cir. 2019).  Thus, the Court must begin with an accurate translation of section 779(d), and Dr. Gonzalez offers an expert opinion on that very subject.

## CONCLUSION

The Court should deny the Committees' motion because Dr. Laura Gonzalez has satisfied

the requirements to testify as an expert under Rule 702.

In San Juan, Puerto Rico, today Thursday November 19, 2020.

*/s/Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Bruce Bennett*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3435
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel. (617) 449-6943
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for Altair Global Credit Opportunities Fund (A), LLC, Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund Holdings, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Redwood Master Fund, Ltd, and SV Credit.*