# EXHIBIT B



# Financial Oversight and Management Board for Puerto Rico



## IFAT Report on Title III Bank Accounts

On Behalf of the FOMB

As of June 30, 2018

**March 12, 2019**

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

# TABLE OF CONTENTS

I.    Executive Summary ............................................................................................................ 3

   A.   Limiting Conditions ..................................................................................................... 6

II.   Background ......................................................................................................................... 6

   A.   History of the Project ................................................................................................... 6

   B.   Procedures ................................................................................................................... 8

     1.   Information Gathering Process ................................................................................. 9

     2.   Inquiry and Data Collection Process ...................................................................... 11

     3.   Analytical Steps and Reporting .............................................................................. 12

III.   Results ............................................................................................................................... 13

IV.   Next Steps ......................................................................................................................... 24

   A.   Additional Steps re: Report ...................................................................................... 25

   B.   New Assessments ...................................................................................................... 26

Appendix A: Glossary of Defined Terms ....................................................................................

Appendix B: Retention and Related Documents .........................................................................

    Appendix B-1 - RFP ...........................................................................................................

    Appendix B-2 - Engagement Letter ....................................................................................

    Appendix B-3 - Work Plan .................................................................................................

    Appendix B-4 - Amendment No. 1 .....................................................................................

    Appendix B-5 - Amendment No. 2 .....................................................................................

    Appendix B-6 - Amendment No. 3 .....................................................................................

Appendix C: Project Information .................................................................................................

    Appendix C-1- Title III Entities .........................................................................................

    Appendix C-2- List of Sources for MDB ...........................................................................

    Appendix C-3- Sample Form of AH Request ......................................................................

    Appendix C-4- Sample Form of FI Request ........................................................................

    Appendix C-5- Sample Form of AH Consent Letter ...........................................................

    Appendix C-6- Sample Forms of Follow Up Letters AH and FI ..........................................

    Appendix C-7- List of Non-Puerto Rico Bank Accounts Contacted .....................................

    Appendix C-8- Summary of Title III Values by Account Holder ...........................................

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

Appendix C-9- Components of Table 1 Categories...............................................................

Appendix C-10- Summary of Bank Accounts Eliminated as Duplicates by Category..........................

Appendix C-11- O&B Legal Due Diligence Chart.................................................................

## List of Report Tables

**Table 1:** Summary of Title III Bank Accounts by Category ......................................... 14
**Table 2:** Summary of Title III Bank Accounts by Category – Reconciled Information ........................... 15
**Table 3:** Components of Table 1 Categories................................................... 16
**Table 4:** Summary of Bank Accounts Eliminated as Duplicates by Category........................................ 17
**Table 5:** Comparison of FI and AH Responses in Excess of Absolute $5 million ................................. 18
**Table 6:** Summary of FI Responses ....................................................... 19
**Table 7:** Summary of O&B Legal Due Diligence by Category (ex. COFINA)........................................ 21
**Table 8:** Summary of Restricted-Selected Accounts Identified for Cash Tracing ................................... 22
**Table 9:** Accounts Held by GDB at the Measurement Date ................................................. 23
**Table 10:** AH Claimed Values at GDB as of the Measurement Date ....................................... 24

## I. Executive Summary

1. The Financial Oversight Management Board for Puerto Rico ("FOMB" or the "Board") was created by Congress as part of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA").[1] The Board is tasked with providing a method for Puerto Rico "to achieve fiscal responsibility and access to the capital markets."[2]

2. Among its many responsibilities, the FOMB has the exclusive authority to propose PROMESA Title III plans of adjustment to restructure debt.[3]

3. Based on continuous and recurring questions and issues as to the Commonwealth of Puerto Rico (the "Commonwealth") and its instrumentalities and entities' cash position, the FOMB initiated the instant project to report and identify Commonwealth bank and investment accounts along with explanations of any restrictions on the resources they hold.[4] The FOMB included the following objectives in the development and publication of a report on Commonwealth bank and investment accounts:

   - improving transparency, accountability and the provision of relevant financial information regarding the Commonwealth Entities[5] liquidity position; and
   - participation in a factual information sharing process lead by an independent party, subject to vetting, to provide a clear cash baseline for all parties in the debt restructuring negotiations.

4. This process and the results derived therefrom, is referred to herein as the Commonwealth Bank Account Reporting Project ("Project"). The discussion that follows in the Executive Summary is a high-level overview of the process and outcomes and should be read in conjunction with the Limiting Conditions and Next Steps, which are found at paragraphs 15-19, and Section IV.

---

[1]   All capitalized terms in this Report are used consistent with the definitions set forth in the Glossary of Defined Terms found at **Appendix A**.

[2]   PROMESA Section 101(a).

[3]   PROMESA Section 312(a).

[4]   The full extent of the project is explained in Section II.A.

[5]   "Commonwealth Entities" is defined as the Commonwealth of Puerto Rico and its instrumentalities. Includes instrumentalities, agencies, funds and fiduciary funds, and public corporations and their subsidiaries or affiliates.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

5. The FOMB tasked an Independent Forensic Analysis Team ("IFAT"), through the retention of Duff and Phelps, LLC ("D&P") to develop and lead the Project. The Project includes the design of appropriate procedures, gathering relevant information and performing various types of analysis on the information obtained, as of June 30, 2018 (the "Measurement Date").

6. A principal goal of the Project was the publication of a report that would include a description of the processes employed, the results obtained and an opinion from D&P on whether or not procedures performed validate, with a high degree of certainty, that Commonwealth bank and investment accounts were identified and account balances as of the Measurement Date were accurately disclosed (the "Report").[6]

7. The Project's outcome relied on the assumption that, among other things, a significant number of Commonwealth entities (and particularly those entities which held significant cash and investment account bank balances as of the Measurement Date) would voluntarily provide the FOMB with specific financial information. Voluntary cooperation was required of these Commonwealth entities to respond regarding targeted inquiries about their respective bank account(s). The Project's qualitative outcome also required receiving a substantial degree of cooperation from the financial institutions servicing Commonwealth entities. Financial institution cooperation included the provision of specified forms of corroborative information to the FOMB.

8. The Project design also included the collection and development of information regarding whether the bank accounts identified by Commonwealth entities contained unrestricted bank funds and how much, and explanations of the nature of any restrictions on funds that were not unrestricted.

9. Based on a classification (a "Classification") asserted by Commonwealth entity account holders regarding whether bank account funds were subject to certain types of restrictions, certain legal due diligence and financial analytical procedures were performed to identify the support for, nature of, and terms of such Classifications. As part of the Commonwealth bank

---

[6]   The Project and related Report is not and should not be viewed as an audit, the expression of an audit opinion or auditing procedures performed in accordance with Generally Accepted Auditing Standards ("GAAS"). D&P is not a firm of Certified Public Accountants; D&P does not perform audits or express opinions as an auditor or as a firm of Certified Public Accountants.

account holders' ("AH") response, the entity was asked to provide supporting documentation for the Classification.  The results of the legal due diligence and financial analytical procedures performed are set forth in Section III.

10. For purposes of this Report, the FOMB asked that D&P focus on those Commonwealth instrumentalities identified by counsel as Title III entities or covered by the Commonwealth Fiscal Plan certified by the FOMB as of October 23, 2018, and set March 12, 2019 as the Report issuance date. The University of Puerto Rico ("UPR") is also included in the Report because the UPR relies heavily on funds provided from the Commonwealth to sustain its operations.[7]

11. The Report is organized in the following format:

   (i)    Executive summary;
   (ii)   History of the Project;
   (iii)  Description of the Project design and procedures, including summaries of information received from inquiry procedures;
   (iv)   Results of procedures performed; and legal due diligence and analytical procedures performed related to Restricted-Selected Accounts;
   (v)    Next steps; and
   (vi)   Appendices and related documentation.

12. Based on the work performed and the information received and analyzed herein, and subject to the limiting conditions and exceptions described in the Report, it is D&P's opinion that, for the Title III entities and bank account balances presented in **Table 1** and **Table 2** at pages 14 and 15, the results obtained from the procedures performed validate, with a high degree of certainty, that the Commonwealth bank account and investment accounts were Identified and the account balances as of the Measurement Date were accurately disclosed.

13. The results of legal due diligence performed regarding AH claims about bank account restrictions reflected in **Table 7** at page 21, and as further supported by **Appendix C-11**, indicate that the majority of AH provided supporting documentation which was satisfactory to establish the Restriction.

---

[7]   UPR's retirement plan is not included as a Commonwealth Entity in the Report.

5

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 8 of 154
*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

14. Analytical procedures performed on the Restricted-Selected accounts is ongoing. The work regarding analytical procedures is not sufficiently developed to indicate whether or not AH cash flows do or do not support the Restriction(s).

### A.      Limiting Conditions

15. An objective of the Project is the creation of a master database ("MDB," as defined below) sufficiently populated with verified and credible information about AH and their bank accounts. The MDB and this Report provide a foundation of information which is a necessary, but initial, step in the assessment of Title III entities' cash positions.

16. This Report does not purport to determine the working capital needs of the Commonwealth or its instrumentalities or to provide a liquidity analysis.

17. This report identifies how the Account Holders label their funds (self-reported) as restricted and unrestricted.  This Report does not purport to determine whether any of such funds are restricted or contended to be restricted by litigants, such as in pending litigation regarding so-called "clawback" funds, and other current or prospective litigation.

18. Accounts subject to such litigation claims may not currently be reported by AH's records as restricted at all or restricted for the reasons asserted in the litigation. The *bona fides* of such asserted restrictions may have to be determined in litigation.  As a result, these limiting conditions and circumstances should be considered when reviewing this report.

19. Section IV, titled "Next Steps," addresses: (i) additional tasks and activities to more fully develop information referred to in the Report; and (ii) the preparation of a working capital and/or liquidity analysis.

## II. Background

### A.      History of the Project

20. In May 2017, the Commonwealth of Puerto Rico commenced a case under Title III of PROMESA in the United States District Court for the District of Puerto Rico.  For various reasons well documented by numerous other parties, with minor exceptions, the Commonwealth and its instrumentalities have not published audited financial statements for periods after the fiscal year ended June 30, 2015.

21. In the summer of 2017, AAFAF, the Commonwealth's fiscal agent, began publishing monthly liquidity and cash reports reflecting bank account balances of certain Commonwealth entities. At that time, these reports published by AAFAF were the sole source of information regarding the Commonwealth's liquidity.

22. On December 19, 2017, the FOMB issued a Request for Proposal ("RFP") titled "Independent Forensic Analysis Team" ("IFAT").[8] The RFP sought to retain the services of an independent forensic advisor to assist the FOMB "to obtain an accurate picture of the liquidity of Puerto Rico and all of its instrumentalities and its entities." The FOMB selected D&P as the IFAT. The FOMB and D&P agreed on the terms of D&P's retention as memorialized in the Engagement Letter signed on January 31, 2018 (the "EL").[9]

23. At the FOMB's request, D&P thereafter issued a work plan on February 23, 2018 (the "Work Plan").[10] The Work Plan set out specific objectives and procedures related to validating aspects of AAFAF's published cash balance reports as of November 30, 2017. Thereafter, at the request of the FOMB, on March 31, 2018, D&P issued Amendment No. 1, which established a cost structure for D&P's work associated with the Work Plan.[11]

24. D&P continued to operate under the Work Plan and Amendment No. 1 through the summer of 2018. During this time, it became apparent that the bank account balances reported by AAFAF could not be independently verified. After confirmatory meetings with AAFAF and following internal discussions within the FOMB, the Board determined that the approach of D&P's validating AAFAF reported bank account balances was no longer feasible.

25. As a result of the inability to validate AAFAF's bank account balance reports, and as directed by the Board, D&P provided the FOMB with Amendment No. 2.[12] Under Amendment No. 2, the FOMB staff, working with and led by D&P, would obtain bank account balances and other information directly from AH and their respective financial institutions ("FI").

---

[8]   *See* **Appendix B-1**.

[9]   *See* **Appendix B-2**.

[10]   *See* **Appendix B-3**.

[11]   *See* **Appendix B-4**.

[12]   *See* **Appendix B-5**.

26. Amendment No. 2 set out a revised work plan and budget for both the FOMB staff and D&P (previously referred to as "Project" in paragraph 4). Under Amendment No. 2, the FOMB staff would serve as Project Manager for its staff, perform preliminary AH reviews, serve as the primary interface with third parties and provide the data entry services for information sought and received in connection with the maintaining the database(s) created to support the Project and its activities.

27. D&P's responsibilities included: (i) design and oversight of the Project; (ii) provision of the operating software and a database ("Team Connect"); (iii) performance of qualitative analysis of information provided by AH and FI; (iv) retaining the ultimate responsibility for developing opinions based on the quantity and quality of factual data obtained under the Project, (v) providing of periodic status reporting to the FOMB and the preparation of a report setting forth D&P's findings.

28. To complete the Project, Amendment No. 2 budgeted that the Project would require 4,142 hours which were allocated to the FOMB and, separately, 4,117 hours to allocated D&P.

29. Effective November 5, 2018, at the FOMB's request, D&P provided the Board with Amendment No. 3.[13]  Amendment No. 3 contains a number of Project modifications from Amendment No. 2 including; (i) the creation of a subset of Commonwealth entities referred to as the Title III or Priority Entities; (ii) shifting a number of responsibilities from the FOMB staff to D&P, including the role of Project Manager; (iii) assumption by D&P of the AH review function; (iv) modification of D&P's fee estimate to take into account incremental responsibilities; and (v) identifying February 4, 2019 as the date for the issuance of the Priority Entities bank account balances report.[14]

### B.    Procedures

30. Amendment No. 2 is the focal point for the design of the Project and procedures which when performed, provide support and the basis for D&P's opinion regarding the identities of and

---

[13]  *See* **Appendix B-6**.

[14]  The issuance date was later changed to March 12, 2019.

values for Title III AH bank account balances as of the Measurement Date. The Project design also contemplated reporting the results of procedures performed for AH Classifications.

31. The Project design was intended to create a transparent and replicable process, which when performed, would provide a sufficient quantity of verifiable information about Commonwealth bank account balances as of the Measurement Date. The Project was organized as a process to be undertaken jointly between D&P and the FOMB staff, predicated on substantial voluntary cooperation from AH and their respective FI.

32. Project design includes three components:

> (i)   an information gathering process;
> (ii)  an inquiry and data collection process; and
> (iii) an analytical and reporting process.

33. The processes are fully described in the Scope of Services contained in Attachment II to Amendment No. 2 to the EL ("Attachment II"), which is included herein in as Appendix B.

34. Attachment II provides a description for each Step to be performed, as well as the estimated hours budgeted for each the D&P team and the FOMB staff to complete each Step. Overall, Attachment II contemplates that 8,259 hours would be expended to complete the Project.  D&P estimates that it will have expended approximately 4,700 hours on the Project through the date of this Report.

## 1.     Information Gathering Process

35. The information gathering process design was a sequenced process. The initial step was the creation of a master database ("MDB") of Commonwealth entities ("CE") and their bank accounts as of the Measurement Date. The CE include instrumentalities, agencies, funds, and public corporations and their subsidiaries and affiliates.

36. The primary sources of information about CE and their bank accounts originated from data provided by Hacienda, AAFAF, and publicly available government information. [15] D&P considered data from a broader range of information sources to create the MDB for the CE and

---

[15]   Hacienda and its operations are explained in Section III and in the Glossary in **Appendix A**.

their bank accounts. The list of data sources considered by D&P to create the MDB can be found in **Appendix C-2**. Proskauer and O&B identified which government entities are under a Title III proceeding.[16] D&P regards the CE not identified by Counsel or not covered by the Report, as described in paragraph 10 of Section I, such as the Puerto Rico Aqueduct and Sewer Authority ("PRASA") and municipalities as outside the scope of this Report.

37. Each CE identified as having one or more bank accounts (each with a distinct EIN) are referred to as an AH. Some CE operate with multiple AH, each requiring identification and separate contacts in the MDB.

38. The second step in the information gathering process, after the creation of the MDB, was to contact each AH that was reported to maintain one or more bank accounts. Contact was made with each such AH seeking the information proscribed in Attachment II, using a standardized format, a copy of which can be found in **Appendix C-3**.

39. All AH identified in **Appendix C-1** were contacted to obtain their relevant bank account information. In addition to the standardized information request sent to each AH, AH were asked to complete a standardized authorization form ("Consent Form") allowing the FOMB to obtain bank account information directly from the AH FI. A standardized authorization form can be found at **Appendix C-5**.

40. The third and final step in the information gathering process was to contact the FI identified as maintaining bank accounts for AH. This procedure was performed after AH confirmed the FI and its respective account representative, and signed Consent Forms directing the FI to share bank account information as of the Measurement Date with the FOMB. Each such FI contact was performed seeking to verify the information provided by AH. A sample of the standardized request form for the FIs can be found at **Appendix C-4**.[17]

41. Employing this sequenced methodology created a triangulation of information about AH and their bank accounts. This triple sourced approach is the informational foundation for the MDB.

---

[16] *See* **Appendix C-1**.

[17] One FI, Consultiva Internacional, did not respond by January 28, 2019.

This   design was created to provide reasonable assurance, in a voluntary disclosure environment, that the MDB would be populated with accurate and credible information.

42. Additionally, out of an abundance of caution, 40 "blind" FI inquiry requests were sent to banks which were not domiciled in Puerto Rico, referred to as "Non-Puerto Rico Banks." These 40 Non-Puerto Rico Banks were not specifically identified as holding AH bank accounts and the requested responses were voluntary. The list of Non-Puerto Rico Banks contacted as part of the Project can be found at **Appendix C-7**. No responses were received as a result of such inquiries.

## 2.      Inquiry and Data Collection Process

43. As responses were received back from AH and FI, including data received from Hacienda and AAFAF, FOMB staff and D&P performed the inquiry and data collection procedures. AH and FI responses were tracked and reviewed for completeness. Follow up procedures were performed, including tailored open issue or clarification requests where inadequate or incomplete information had been provided. On a number of occasions, multiple follow up inquiries were necessary to obtain all the required information.

44. AH and FI were also prioritized by materiality and monitored to identify non-responsive counterparties. Follow up inquiries were performed by both telephone calls and by email. On a number of occasions, in person meetings were conducted with AH to discuss remaining open items and to resolve questions.

45. FI were requested to provide the FOMB staff and D&P electronic access to AH account information through their respective organization. FI were also contacted by telephone to expedite the inquiry process. In person meetings also took place in those instances where a FI maintained a significant number of bank accounts for AH.

46. As a principal component of the data collections process, Team Connect files were created for each AH including inquiry, response and follow up activities, as well as uploading the content of responses received from AH and FI. AH and FI responses, once reviewed, were entered in the MDB. Both the FOMB and D&P conducted quality review procedures comparing responses received to the information entered in the MDB to minimize the risk of data entry errors, duplication or the inadvertent entry of mis-information.

### 3.   Analytical Steps and Reporting

47. First, AH data files were reviewed to compare information received from Hacienda or AAFAF to the AH response(s). Second, AHs were requested to provide certain underlying accounting records. Taken together, these procedures permitted a comparison of what Hacienda or AAFAF reported were AH bank accounts, and their balances, to what was reported by the AH. A third step in the analytical process occurred when the AH's FI responses were compared to AH bank accounts, balances, and other related information as of the Measurement Date. The comparison of Hacienda/AAFAF information to AH information and then to FI information was a core objective of the Report. Comparing AH provided books and records regarding bank account balances at the Measurement Date to the information in the MDB was intended as an additional form of corroboration that the MDB contained all AH bank accounts.

48. Under the plan for the Project, legal due diligence was required with respect to certain aspects of restrictions claimed by AH. Legal due diligence performed under the Project would be the responsibility of O'Neill & Borges LLC ("O&B").[18] O&B is a Puerto Rico law firm and local counsel to the FOMB.

49. A set of analytical procedures were performed regarding AH self-reported Classifications. The following types categories of legal restrictions were identified: (1) custodial accounts; (2) trust accounts; (3) restricted by federal or Puerto Rico law; (4) restricted by contract; (5) restricted by court order; (6) restricted by litigation; or (7) restricted accounts with pooled funds. All types of restriction classifications are referred to herein as "Restricted." One additional type of designation arose as a result of AH responses: No Representation. A No Representation designation arose when an AH declined to identify a bank account as either unrestricted or restricted or for which no AH provided a representation.

50. Using the MDB, D&P identified AH whose claimed Restrictions over bank account balances were in excess of $35 million ("Restricted-Selected Accounts"). This threshold was selected to identify and test the majority of the balance of asserted restricted accounts (69.0% of Restricted and Pooled accounts, exclusive of COFINA, were reviewed as part of the LDD - *see* **Table 7**). O&B, working in conjunction with D&P, performed the legal due diligence by

---

[18] As detailed in Section III and as defined in the Glossary in **Appendix A**.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

reviewing the supporting documentation provided by the AH regarding Classifications asserted with respect to the Restricted-Selected Accounts.

51. For the Restricted-Selected Accounts, O&B reviewed the MDB documentation provided by the AH, to determine: (i) the existence of the claimed restriction(s) and that the documentation was relevant in time as of the Measurement Date; (ii) the applicability of the claimed restriction(s), and (iii) where O&B deemed necessary, to seek additional information from the AH to support or clarify the claimed restriction(s).

52. A list of the Restricted-Selected Accounts analyzed by O&B is located at **Appendix C-11**.

53. On a test basis, D&P made inquiry of AH regarding the sources and uses of funds in the bank accounts tested by O&B for the list of Restricted-Selected Accounts. The purpose of such inquiries was to provide additional documentation that Restricted Accounts were, in fact, being used for the Restricted purpose(s) claimed by the AH.

54. The AH and bank accounts selected for these additional procedures are located in **Table 8** below.

## III. Results[19]

55. PROMESA Title III AH comprise the following five categories: (i) the Commonwealth; (ii) PREPA and its subsidiaries; (iii) COFINA;[20] (iv) HTA; and (v) ERS.  In the case of the Commonwealth, all the entities covered by the New Fiscal Plan for Puerto Rico as certified by the FOMB on October 23, 2018, including those that are legally separate from the Commonwealth, plus the UPR, were included as part of the analysis of Commonwealth accounts.

56. The two captions for summarized bank account information are "Identified" and "Reconciled." These captions reflect differing stages of review performed as of the Report date. "Identified"

---

[19]  Results are based on information received as of January 28, 2019.

[20]  Project activities regarding COFINA bank accounts, including legal due diligence, were suspended when COFINA and its creditors entered into a settlement in October 2018.

*IFAT Report on Title III Bank Accounts*
*On Behalf of the FOMB*
*As of June 30, 2018*

refers to information about AHs obtained from any one of the bank account sources.[21] "Reconciled" refers to AH bank account information which has been reconciled to information received from a FI. As explained in ¶63 and ¶ 74 through 79, tables reflecting both Identified and Reconciled bank account information exclude approximately $2.6 billion of account values, which consists in approximately $737 million in duplicative accounts, approximately $517 million in funds disbursed in accordance with the GDB settlement, and approximately $1.3 billion in claims by AH who reported that GDB was holding funds for them as of the Measurement Date.

57. **Table 1** and **Table 2** present summarized bank account information obtained under the Project, as of June 30, 2018, organized by each of the five Title III AH categories.

**Table 1: Summary of Title III Bank Accounts by Category[22]**

|  | Identified Value | Unrestricted | No Representation | Restricted Representation | |
|---|---|---|---|---|---|
|  |  |  |  | Claimed | Pooled Account |
| COFINA | $ 1,218,552,355 | $ - | $ 474,224 | $ 1,218,078,131 | $ - |
| Commonwealth | 8,589,813,585 | 4,337,301,016 | 820,450,166 | 3,265,126,456 | 166,935,947 |
| HTA | 552,718,740 | 51,073,670 | 207,328,759 | 294,316,311 | - |
| PREPA | 471,696,915 | 220,682,753 | 1,409,453 | 249,604,709 | - |
| Retirement | 742,407,640 | 197,298,893 | 215,936,354 | 329,172,393 | - |
| **Total** | $ 11,575,189,236 | $ 4,806,356,332 | $ 1,245,598,957 | $ 5,356,298,000 | $ 166,935,947 |

|  | # of Accounts | Unrestricted | No Representation | Restricted Representation | |
|---|---|---|---|---|---|
|  |  |  |  | Claimed | Pooled Account |
| COFINA | 38 | - | 13 | 25 | - |
| Commonwealth | 1,650 | 390 | 408 | 845 | 7 |
| HTA | 91 | 8 | 36 | 47 | - |
| PREPA | 82 | 23 | 6 | 53 | - |
| Retirement | 62 | 22 | 14 | 26 | - |
| **Total** | 1,923 | 443 | 477 | 996 | 7 |

---

[21] Bank account sources include information received from Hacienda in response to the FOMB Letter Request re: Information Requested to Review Bank Account Balances of the Government of Puerto Rico and its Instrumentalities; information which comprised the June 30, 2018 AAFAF report (dated July 24, 2018); AH responses to requests for information from the FOMB; and FI bank account information produced in response to requests from the FOMB.

[22] As described in Section II.B, the Project's information gathering process relied on the Classifications reported by the Account Holders. Only Restricted-Selected Accounts (and not Unrestricted Accounts) were subject to certain forms of legal due diligence and financial analysis.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

**Table 2: Summary of Title III Bank Accounts by Category – Reconciled Information**

| | Reconciled Value | Unrestricted | No Representation | Restricted Representation | |
| | | | | Claimed | Pooled Account |
|---|---|---|---|---|---|
| COFINA | $ 1,217,979,192 | $ - | $ - | $ 1,217,979,192 | $ - |
| Commonwealth | $ 7,369,115,376 | 4,186,435,409 | 724,797,893 | 2,297,525,102 | 160,356,972 |
| HTA | $ 546,701,247 | 51,073,670 | 207,328,759 | 288,298,818 | - |
| PREPA | $ 434,305,666 | 205,259,854 | 1,409,453 | 227,636,359 | - |
| Retirement | $ 660,142,763 | 177,567,800 | 208,423,965 | 274,150,998 | - |
| **Total** | **$ 10,228,244,244** | **$ 4,620,336,733** | **$ 1,141,960,070** | **$ 4,305,590,469** | **$ 160,356,972** |

| | # of Accounts | Unrestricted | No Representation | Restricted Representation | |
| | | | | Claimed | Pooled Account |
|---|---|---|---|---|---|
| COFINA | 30 | - | 6 | 24 | - |
| Commonwealth | 968 | 272 | 170 | 523 | 3 |
| HTA | 78 | 8 | 28 | 42 | - |
| PREPA | 42 | 12 | 6 | 24 | - |
| Retirement | 41 | 13 | 6 | 22 | - |
| **Total** | **1,159** | **305** | **216** | **635** | **3** |

58. For example, the category Commonwealth includes 152 priority AH identified in the MDB. **Table 1** reflects that these AH maintain 1,650 bank accounts with a value of $8,589,813,585 as of the Measurement Date.

59. Each of the 152 Commonwealth AH received inquiry requests and 149 of them provided responses. FI consent letters were sent to all Commonwealth AH's banks. 12 Title III AH FI replies were received, representing 86 percent of the Commonwealth identified bank account values as of the Measurement Date.

60. Overall, there were 164 Title III AH Identified.[23] These AH maintained a total of 1,923 bank accounts with an asserted combined value of $11,575,189,236 as of the Measurement Date.

---

As of or subsequent to the Report Date, there may be circumstances that result in Account Holders changing bank account Classifications.

[23] There were initially 172 Title III AH Identified; there are 164 after the removal of duplicates and merged entities.

15

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

61. As reflected in **Table 2**, Title III FI responses which were reconciled represent $10.2 billion of the total identified bank accounts. The reconciled FI responses represents 88 percent of the total identified bank account value.[24]

62. **Table 3** presents the identity(ies) of the instrumentalities comprising each of the five Title III AH categories. **Table 3** also provides the number of AH comprising each particular instrumentality.

<div align="center">

**Table 3: Components of Table 1 Categories[25]**

| Category | Number of AH |
|---|---|
| COFINA | 1 |
| Commonwealth | 152 |
| HTA | 1 |
| PREPA | 5 |
| Retirement[26] | 5 |
| **Total** | **164** |

</div>

63. In some cases, duplicate bank account information was provided, either in error or where a bank account was managed by Hacienda, GDB, BDE, AAFAF or a Parent company and were reported by multiple information sources. Duplicate or erroneous bank account information was reviewed and vetted by D&P. A summary of bank account values eliminated from the summary totals as duplicative by D&P totals $738 million; as shown in **Table 4** below. A list of the bank accounts that comprise these values is contained in **Appendix C-10**.

---

[24]   *See* Section IV titled Next Steps regarding additional analysis that could be performed to obtain additional responses from FI.

[25]   *See* **Appendix C-9** for complete list.

[26]   TRS and JRS are included under the Retirement category.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

**Table 4: Summary of Bank Accounts Eliminated as Duplicates by Category**

| Category | Number of Accounts | $ Value Eliminated |
|---|---|---|
| Commonwealth | 31 | $ 235,953,488 |
| Retirement | 24 | $ 501,554,305 |
| **Total** | **55** | **$ 737,507,793** |

64. For the 164 Title III AH Identified, 74 AH provided copies of books and records regarding their respective bank accounts. D&P compared the books and records to AH responses as well as to bank account information received from the AH's respective FI. Differences between these sources of information, which individually exceeded $5 million, and are presented in **Table 5**.[27]

---

[27] *See* Section IV titled Next Steps regarding access by additional AHs to their books and records.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

**Table 5: Comparison of FI and AH Responses in Excess of Absolute $5 million[28]**

| Account Holder | Financial Insitution | Difference between FI and AH |
|---|---|---|
| Autoridad de Carreteras y Transportacion | BNY Mellon | 200,000,000.00 |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | BNY Mellon | 105,012,824.05 |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | BNY Mellon | 103,411,140.60 |
| Departamento de Hacienda | Banco Popular | 94,480,678.91 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 60,873,515.69 |
| Centro de Recaudacion de Ingresos Municipales | Banco Popular | 55,831,994.75 |
| Universidad de Puerto Rico | BNY Mellon | 51,000,188.97 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 46,079,651.69 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 28,589,212.14 |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | 28,155,841.76 |
| Autoridad de Edificios Publicos | Banco Popular | 21,277,257.09 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 17,539,964.34 |
| Autoridad de Energia Electrica | Citibank | 17,421,098.03 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 16,513,116.89 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 13,485,538.45 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 12,983,927.50 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 10,069,885.85 |
| Banco de Desarrollo Economico para Puerto Rico | Banco Popular | 9,908,899.53 |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | 9,644,677.11 |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | 9,397,926.60 |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | 9,217,464.29 |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | 9,153,647.05 |
| Autoridad de Edificios Publicos | Banco Popular | 8,565,179.91 |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | 8,323,818.14 |
| Administracion de Terrenos | Banco Popular | 7,850,776.95 |
| Administracion para el Desarrollo de Empresas Agropecuarias | First Bank | 7,258,906.20 |
| Autoridad de Edificios Publicos | Oriental Bank | 7,149,223.20 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 6,514,364.58 |
| Universidad de Puerto Rico | BNY Mellon | 6,107,355.58 |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | 5,462,347.95 |
| Administracion para el Desarrollo de Empresas Agropecuarias | Banco Popular | 5,423,532.37 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 5,414,222.72 |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | 5,353,399.43 |
| Banco de Desarrollo Economico para Puerto Rico | Citibank | (5,447,216.00) |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | (12,538,303.91) |
| Autoridad de Energia Electrica | Citibank | (16,364,213.35) |
| Universidad de Puerto Rico | Voya | (16,715,217.46) |
| Compania de Fomento Industrial | Citibank | (19,574,460.02) |

65. FI responses were received and reviewed by D&P. The FI responses include Measurement
Date information for 1,159 AH bank accounts. These AH bank accounts represent 88 percent

---

[28]   Reflects absolute differences greater than $5 million.  Positive differences indicate that the amount disclosed by
the FI was greater than the amount disclosed by the AH.  Negative differences indicate that the amount disclosed
by the FI was less than the amount disclosed by the AH.

*IFAT Report on Title III Bank Accounts*
*On Behalf of the FOMB*
*As of June 30, 2018*

of the total value identified as of the Measurement Date. **Table 6** presents a summary of the results of the procedures performed and the results obtained through FI.[29]

**Table 6: Summary of FI Responses[30]**

| | Identified | | Reconciled | |
|---|---|---|---|---|
| | Value | Accounts | Value | Accounts |
| American Stock Transfer & Trust Company | $      892,060 | 2 | $        - | - |
| Banco Bankia | 16,213 | 1 | - | - |
| Banco Popular | 6,785,870,872 | 1172 | 6,328,184,610 | 753 |
| Banco Santander | 640,763,330 | 241 | 307,972,236 | 42 |
| BCOOP | 2,084,215 | 8 | - | - |
| BDE | 96,880,818 | 14 | 96,880,818 | 14 |
| BNY Mellon | 1,826,018,574 | 140 | 1,790,551,553 | 94 |
| Citibank | 511,250,874 | 47 | 394,091,312 | 36 |
| COFINA | 268,824,885 | 1 | - | - |
| Consultiva Internacional | 2,531,285 | 1 | - | - |
| First Bank | 258,457,112 | 123 | 238,167,607 | 114 |
| Hacienda | 6,709,718 | 12 | - | - |
| Invesco | 74,198 | 2 | 37,099 | 1 |
| Northern Trust | 253,969,220 | 31 | 212,411,846 | 15 |
| Oriental Bank | 66,845,289 | 32 | 66,845,289 | 32 |
| PR Government Investment Trust Fund | 474,224 | 3 | - | - |
| PRIFAS | 306,679 | 1 | - | - |
| Scotiabank | 37,501,189 | 17 | 37,494,283 | 13 |
| UBS | 3,277,796 | 1 | - | - |
| UMB | 78,140 | 4 | 78,140 | 4 |
| US Bank | 162,049,240 | 67 | 105,216,146 | 38 |
| US Treasury | 581,471,311 | 1 | 581,471,311 | 1 |
| Voya | 68,841,995 | 2 | 68,841,995 | 2 |
| | $  11,575,189,236 | 1,923 | $  10,228,244,244 | 1,159 |

66. Hacienda provided responses for bank accounts it maintains on its own behalf and bank accounts managed on behalf of others. Hacienda has many responsibilities, including acting as the Treasury Department for the Commonwealth and as one of the Commonwealth's fiscal agencies. In this role, Hacienda collects and deposits receipts, and makes disbursements through a series of controlled accounts.

---

[29]   *See* Section IV titled Next Steps regarding additional analysis that could be performed to obtain additional responses from FI.

[30]   D&P obtained information from the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF"), which is the regulator of financial institutions operating in Puerto Rico. D&P confirmed that the Puerto Rican financial institutions were identified as FI licensed and supervised by OCIF, except for Hacienda and PRIFAS, which were identified by certain AH as their financial institution.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

67. These controlled accounts include bank accounts designed by Hacienda as a general checking or operating account, a money market account and a reserve account. Collectively these three principal accounts are referred to as the Treasury Single Account or "TSA," which is the Commonwealth's main operational account and from which most expenses are disbursed. The principal sources of deposits into the TSA accounts are: General Fund Revenues, revenue sweep accounts, also known as Colectores; agency sweep accounts, also known as Recaudadores; Federal fund deposits; and Sales and Use Tax sweep accounts.

68. Funds deposited into the TSA are referred to as "pooled" funds by Hacienda. Disbursements funded out of the TSA account include payrolls and goods and services, and are made on behalf of various Commonwealth instrumentalities.

69. The aggregate value of the TSA accounts as of the Measurement Date was $2.7 billion. Hacienda AH responses indicate that the TSA bank accounts were Unrestricted. However, according to the Commonwealth Financial Information and Operating Data Report dated December 18, 2018, there are multiple flows of receipts deposited into the TSA, including federal funds, intergovernmental collections, charges for services, and amounts held in custody by the Secretary of the Treasury for the benefit of the Commonwealth's fiduciary funds.

70. At D&P's request, O&B performed legal due diligence ("LDD") for bank accounts with values greater than $35 million as of the Measurement Date. Restricted-Selected Accounts include Commonwealth bank accounts identified as either Restricted or Pooled, and HTA, PREPA, and Retirement Systems bank accounts identified as Restricted. COFINA's Restricted Accounts were not reviewed by O&B given the Settlement Agreement dated October 19, 2018, between the Oversight Board, on behalf of the Commonwealth, and the COFINA Agent, on behalf of COFINA.

71. The results of O&B's LDD are summarized in **Table 7**.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

**Table 7: Summary of O&B Legal Due Diligence by Category (ex. COFINA)**

| Category | Number of O&B Accounts Reviewed | Value of O&B Accounts Reviewed |
|---|---|---|
| Commonwealth | 27 | $ 2,306,834,332 |
| HTA | 1 | $ 175,168,714 |
| PREPA | 2 | $ 199,294,118 |
| Retirement | 4 | $ 288,627,950 |
| *TOTAL - O&B LDD* | **34** | $ 2,969,925,115 |

| | | |
|---|---|---|
| Restricted & Pooled exclusive COFINA | 978 | $ 4,305,155,816 |
| *Percentage of Restricted & Pooled exclusive of COFINA* | *3.5%* | *69.0%* |

72. **Table 7** includes 27 Commonwealth accounts.  Of those 27 accounts, 7 accounts, totaling $497.8 million did not include supporting documents, and O&B reviewed the 20 accounts that included supporting documents.  Of the 20 Commonwealth accounts that were reviewed: (i) the represented restrictions of 12 accounts, totaling $1.1 billion, were confirmed, and (ii) the review of 8 accounts, totaling $686.3 million, was inconclusive because additional supporting documents are needed to confirm the represented restriction.  Note that the HTA account did not include supporting documentation and the restrictions of the PREPA and Retirement accounts were confirmed. **Appendix C-11** includes legal due diligence comments regarding Restricted-Selected Accounts, the validity of the AH Classification, and information that needs to be confirmed with the relevant government entity.

73. **Table 8** is a summary of Restricted-Selected Accounts identified by D&P for cash tracing.[31]  No cash tracing work was completed by the Report Date.

---

[31]  See paragraphs 53-54 for an explanation of cash tracing.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

**Table 8: Summary of Restricted-Selected Accounts Identified for Cash Tracing**

| Account Holder | Financial Institution | Priority Type | Bank Balance |
|---|---|---|---|
| Departamento Trabajo y Recursos Humanos | US Treasury | Commonwealth | 578,744,062.00 |
| Compañia de Fomento Industrial de Puerto Rico | Citibank N. A.* | Commonwealth | 32,831,905.00 |
| Autoridad de Energia Electrica | Citibank | PREPA | 149,069,674.00 |
| Autoridad de Energia Electrica | Citibank | PREPA | 50,224,444.00 |
| Administracion de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura | Banco Popular | Retirement | 107,122,331.22 |
| Administracion de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura | Banco Popular | Retirement | 92,798,440.05 |
| Administracion de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura | Banco Popular | Retirement | 35,612,053.11 |

74. The Government Development Bank for Puerto Rico ("GDB"), operating since 1948, served three primary functions. Those functions included: serving as: (i) the Commonwealth's fiscal agent, financial advisor and reporting agent; (ii) a lender for CE; and (iii) depository agent for the Commonwealth and its instrumentalities.[32]

75. In 2016, the GDB began to wind down its activities.[33] GDB's wind down included transferring certain of its fiscal agent and advisory responsibilities to AAFAF.[34]

76. As part of the Project, GDB bank account information was solicited. The IFAT and O&B also met with representatives of the GDB. **Table 9** presents those GDB bank accounts which have been verified as of the Measurement Date. Pursuant to a Qualifying Modification under Title VI of PROMESA certified by the FOMB and the U.S. District Court for the District of Puerto Rico and Act 109-2017, effective as of November 29, 2018: (i) the funds identified in **Table 9** were disbursed to various claimants; (ii) the outstanding balance of any deposit, except for federal funds, was offset against the outstanding balance of any loan made to, or bond or note of, such entity held by GDB; and (iii) established the GDB Public Entity Trust for the benefit of non-municipal government entities that held deposit claims that were not extinguished in the setoff process.

---

[32] P.R. Laws Ann. Tit. 7, § 552 (2018).

[33] Commonwealth of P.R., *Financial Information and Operating Data Report,* 137 (Dec. 18, 2016); *See* Govt' Dev. Bank Website, http://www.gdb.pr.gov/index.html (last visited Jan. 11, 2019).

[34] Commonwealth of P.R., *Financial Information and Operating Data Report,* 137 (Dec. 18, 2016); *See* Govt' Dev. Bank Website, http://www.gdb.pr.gov/index.html (last visited Jan. 11, 2019).

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

**Table 9**: Accounts Held by GDB at the Measurement Date

| AH | FI | Identified Value |
|----|----|------------------|
| GDB | Banco Popular | $ 199,701,170 |
| GDB | Citibank | $ 125,546,518 |
| GDB | Citibank | $ 60,936,687 |
| GDB | Banco Popular | $ 54,999,970 |
| GDB | BDE | $ 39,353,226 |
| GDB | Banco Popular | $ 18,245,543 |
| GDB | Citibank | $ 12,792,607 |
| GDB | Banco Popular | $ 129,307 |
| GDB | Banco Popular | $ 5,102,398 |
| | | **$ 516,807,427** |

77. **Table 9** reflects the funds identified by GDB, which were concentrated in one account and held for costs and mandatory distributions/payments due at closing, including GDB operating funds, pursuant to the Qualifying Modification, except for $18.245 million, which was held for employee benefit and retirement trust funds. Consequently, the $516.8 million identified in **Table 9** have been excluded from the values reflected in the **Table 1** and **Table 2**.

78. During the course of the Project, AH included information in their responses to the inquiry process reflecting bank account balances maintained at GDB as of the Measurement Date. A summary of AH bank accounts maintained at GDB as of the Measurement Date is presented at **Table 10**. The IFAT was unable to confirm the existence of the bank accounts presented in **Table 10** as of the Measurement Date through the inquiry and response procedures.

79. Information provided by GDB confirms that, as of the Measurement Date, GDB did not maintain bank accounts other than the bank accounts identified in **Table 9**. D&P has been unable to identify FI holding funds claimed by AH which were in existence as of the Measurement Date at GDB. Consequently, the IFAT cannot validate the claims of AH who reported that GDB was holding funds for them as of the Measurement Date. The sum of bank account balances (**Table 10**) which were reported as held at GDB cannot be validated, and therefore have been excluded from the values reflected in the **Table 1** and **Table 2**.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

**Table 10: AH Claimed Values at GDB as of the Measurement Date**

| Category | Number of Accounts | Identified Value |
|---|---|---|
| Commonwealth | 230 | $  1,195,232,060 |
| COFINA | 17 | $      26,599,998 |
| HTA | 23 | $      42,772,841 |
| PREPA | 6 | $        4,136,951 |
| Retirement | 7 | $        3,314,123 |
| **Total** | **283** | **$  1,272,055,973** |

80. Certain entities and AH have been non-responsive[35] and as a consequence the FOMB has received no information regarding the number of accounts held or the value in those accounts as of the Measurement Date. The non-responsive entities and AH include:

- Judiciary – The Judiciary acknowledged that it maintains approximately 7 thousand bank accounts, which aggregate approximately $137 million. This information does not comport with AAFAF's reports, which describe approximately 18 thousand escrow, child support and other accounts held for the benefit of third parties;[36] and

- PREPA's retirement system provided limited responses which are deficient when compared to prior PREPA retirement system financial statements.

## IV. Next Steps

81. This section describes additional steps or new assessments that could be taken based on the findings of this Report.

---

[35] Subsequent to January 28, 2019, the FOMB received information from the Senate of Puerto Rico regarding their bank accounts. D&P has reviewed, but not analyzed, this information. In any event, the bank account balances and amounts claimed as restricted by the Senate are immaterial and would not impact the results reflected in this Report.

[36] *AAFAF,* Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities, Information as of June 30, 2018, dated July 24, 2018.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

### A.       Additional Steps re: Report

82. Additional tasks and activities to more fully develop information referred to in the Report may include any of the following:

- The FOMB has identified March 31, 2019 as a new measurement date.

- Decrease the review threshold for Restricted-Selected Accounts. For example, if the claims review threshold is reduced to $5 million, then the number of accounts subject to review would increase to approximately 122 accounts out of a total of approximately 978 claimed restricted accounts.  The dollar value of claims reviewed would increase to $4.002 billion out of a total of $4.305 billion in claimed restricted accounts.  That would result in the review of the bank accounts holding more than 90% of the deposits.

- Continue to gather documents and perform financial analysis for unrestricted or newly identified bank accounts.  Perform more LDD with respect to Restricted-Selected Accounts in the case of AHs who did not previously respond or whose documentation was found to be inadequate.

- Develop analytical procedures for review of Restricted-Selected Accounts and classification information.

- Obtain answers from AH who responded with "No Representation" of restrictions and seek AAFAF's cooperation if necessary in order to obtain the assistance of such AH.

- Determine if federal funds are a part of AH bank balances and seek additional information from AH regarding classification of the relevant account.

- Obtain from AHs or AAFAF, and independently verify, bank accounts subject to "clawback" and other litigation.

- Determine why in some cases there were discrepancies between the amounts reported by the AHs and the amounts reported by the FIs for the same bank accounts as well as reconcile discrepancies between amounts reported by AHs and FIs and Hacienda or AAFAF's reported account balances.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

- Obtain greater AH compliance in the provision of bank account general ledger's and/or books and records (to include among other things trial balances, balance sheets and draft financial statements).

**B.    New Assessments**

83. As mentioned in the Executive Summary, there are assessments beyond the scope of this Report that are essential in a debt restructuring.  In order to reach a holistic picture of the financial situation of the Commonwealth entities, the FOMB may consider the following steps, among others: (i) preparing a working capital and/or liquidity analysis, and (ii) identifying and quantifying any large or unusual financial factors (such as federal grants) that could impact working capital or liquidity.

Respectfully submitted,

DUFF&PHELPS, LLC

Duff & Phelps, LLC

26

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix A: Glossary of Defined Terms

## Appendix A: Glossary of Defined Terms

| Term | Meaning |
|---|---|
| AAFAF | Spanish-language acronym for Puerto Rico Fiscal Agency and Financial Advisory Authority (*Autoridad de Asesoría Financiera y Agencia Fiscal*). |
| Affiliate | Any person or entity that owns or shares common ownership with the debtor. |
| Affiliated Transactions | Refers to sales of securities from the underwriting division of a bank into the managed funds of an affiliated entity of the bank. |
| AFICA | Spanish-language acronym for Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority (*Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental*). |
| AH | Account Holders |
| Allowed Claim | A claim is "allowed" when it has been deemed approved for payment. |
| AMA | Spanish-language acronym for Puerto Rico Metropolitan Bus Authority (*Autoridad Metropolitana de Autobuses*) |
| Bank Balance | Value of a bank account balance expressed in USD as measured by funds in a bank account as of the Measurement Date. |
| Barclays | Barclays Capital Inc. |
| BDE | Banco de Desarrollo Económico para Puerto Rico |
| Book Balance | Value of a bank account balance expressed in USD as reflected in an AH's books and records as of the Measurement Date. |
| CAFRs | Comprehensive Annual Financial Reports |
| Capital Improvement Fund | An account created by the PREPA Trust Agreement, which is used to pay certain costs cost that have not otherwise been provided for from the proceeds of bonds. |
| Cash Basis | A method of accounting pursuant to which revenue is not recorded until cash is actually received, and expenses are not recorded until they have actually been paid (regardless of when the subject became entitled to the revenue or liable for the expense). |
| Classification | A type of claim made by an AH regarding the restricted status of funds pursuant to either a statute, contractual limitation or court order. |
| Clawback Provision | Short-form reference to Section 8 of Article VI of the Puerto Rico Constitution. |
| Codification | Process through which auditors incorporate figures for Component Units into Puerto Rico's financial statements. |
| COFINA | Puerto Rico Sales Tax Financing Corporation (*Corporación del Fondo de Interés Apremiante* in Spanish) |
| COFINA Bonds | Bonds that COFINA issued. |
| COFINA Senior Bondholders | Collective reference to holders of senior bonds issued by COFINA who, in one of the adversary proceedings stemming from the Title DI Proceedings, have argued that, due to the nature of Puerto Rico's guarantees, the "rental obligations and payments" by Puerto Rico should have been included as future debt service payments in the Debt Limit Calculation. |
| Commonwealth and its instrumentalities ("CE") | The Commonwealth of Puerto Rico and its instrumentalities.  Includes instrumentalities, agencies,  funds and fiduciary funds, and public corporations and their subsidiaries or affiliates. |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix A: Glossary of Defined Terms

| | |
|---|---|
| **Component Unit** | An entity that is sufficiently related to the Government of Puerto Rico to require that the entity be included in Puerto Rico's external financial reporting in a given fiscal year. |
| **Consent Form** | Standardized authorization form AH were asked to complete allowing the FOMB to obtain bank account information directly from the AH's FI |
| **Creditor** | For purposes of the Bankruptcy Code, an entity holding "a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." |
| **D&P** | Reference to Duff & Phelps, a financial advisory firm retained by the FOMB as an IFAT to develop and lead the Project. |
| **Debtor** | Someone who owes an obligation to another, typically an obligation to pay money. |
| **Deloitte** | Deloitte |
| **Diversified Companies** | Per Section 5(b)(1) of the 1940 Act, diversified companies are investment companies which hold assets, at least 75% of which are comprised of cash, government securities, securities of other investment companies, and securities of other issuers, with no more than 5% of their total investment in securities from any one issuer. Additionally, the 5% invested with a particular issuer cannot contain more than 10% of that issuer's voting securities. |
| **DTPW** | Puerto Rico Department of Transportation and Public Works (*Departamento de Transportación y Obras Públicas* in Spanish) |
| **EMMA** | Electronic Municipal Market Access system. |
| **Empleados de Confianza** | Government employees in Puerto Rico who are politically appointed and employed "at will." They may be removed for any reason (or no reason at all). |
| **Employer Contributions** | Refers to the statutory stream of payments made each payment period by Puerto Rico's participating public employers to fund the Employees Retirement System of the Government of Puerto Rico's pension obligation bonds. |
| **EPA** | US Environmental Protection Agency. |
| **ERS** | Retirement System for Employees of the Government of the Commonwealth of Puerto Rico (*Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico* in Spanish). |
| **FIA Fund** | *Fondo de Inter Apremiante* (in English, the "Dedicated Sales Tax Fund"), a fund that holds the portion of the SUT that is allocated to COFINA. |
| **FICO Score** | A type of proprietary consumer borrower credit score that the Fair Isaac Corporation generates. Lenders use FICO scores, along with other details on borrowers' credit reports, to assess individual borrowers' credit risk and determine whether to extend credit. |
| **Financial Institution ("FI")** | Respective financial institutions for the AH |
| **FINRA** | US Financial Industry Regulatory Authority |
| **Fitch** | Fitch Ratings |
| **FOMB or the "Board" or the "Oversight Board"** | Financial Oversight and Management Board for Puerto Rico |
| **FOMB Staff** | Employees and independent contractors working under the direction and control of the FOMB. |
| **GAAS** | Generally Accepted Auditing Standards |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix A: Glossary of Defined Terms

| | |
|---|---|
| **GDB** | Government Development Bank for Puerto Rico (*Banco Gubernamental de Fomento* in Spanish) |
| **GDB Board** | Board of Directors of GDB |
| **General Fund** | The primary accounting fund that a government authority uses for operations. Puerto Rico's general fund includes most of the Department of Treasury's tax revenue collections, as well as all inflows from internal and external sources that are not subsumed within more specific funds. |
| **GFOA** | Government Finance Officers Association |
| **GFOA Certificate** | GFOA's award, in the form of a Certificate of Achievement for Excellence in Financial Reporting, to reporting entities that have issued their CAFRs by no later than the six-month anniversary of the relevant fiscal year-end. |
| **Government Employers** | Refers collectively to Puerto Rico, its agencies, instrumentalities and public corporations, in their capacity as employers. |
| **Hacienda** | Term used to refer to the Puerto Rico Department of the Treasury ("*Departamento de Hacienda*"). |
| **HFA** | Puerto Rico Housing Finance Authority (*Autoridad para el Financiamiento de la Vivienda* in Spanish) |
| **HRSA** | United States Health Resources and Services Administration |
| **HTA** | Puerto Rico Highways and Transportation Authority (*Autoridad de Carreteras y Transportación* in Spanish) |
| **Identified Accounts** | Refers to information about AHs obtained from any one of the bank account sources (exclusive of AH information which D&P has determined cannot be verified. *See* ¶63 and 79) |
| **IFAT** | Independent Forensic Analysis Team |
| **IMF** | International Monetary Fund |
| **Informal Investigation** | Any inquiry or review of Relevant Activities undertaken by the Board pursuant to PROMESA Section 104(o) or any other authority invested in the Board pursuant to PROMESA for which the Board has not adopted an Investigative Resolution. (PROMESA Investigative Procedures § 3.1.) |
| **Legal Due Diligence ("LDD")** | Legal due diligence performed by O&B with respect to the Classification of funds deposited in certain accounts. |
| **MDB** | Master Database |
| **Measurement Date** | June 30, 2018 |
| **Metro** | Reference to PRASA's service region for the San Juan Metropolitan Area. |
| **MFA** | Puerto Rico Municipal Finance Agency |
| **Pooled Account** | A bank account identified by an AH as having both unrestricted and restricted funds |
| **No Representation Account** | A bank account where an AH declined to identify a bank account as either unrestricted or restricted or for which no AH provided a representation |
| **Non-Puerto Rico Banks** | Banks which were not domiciled in Puerto Rico. |
| **Non-Title III Entities** | The agencies, public corporations and instrumentalities of the Commonwealth of Puerto Rico, which have not sought protection under the Title III action commenced in the United States District Court for the District of Puerto Rico. Proskauer and O&B determined which CE's were considered to be Title III entities |
| **O&B** | O'Neill & Borges LLC |
| **OCFO** | Office of the Chief Financial Officer for Puerto Rico |

| | |
|---|---|
| **OCIF** | Puerto Rico Office of the Commissioner of Financial Institutions (*Oficina del Comisionado de Instituciones Financieras* in Spanish) |
| **OGEPR** | Office of Government Ethics of Puerto Rico (*Oficina de Etica Gubernamental* in Spanish) |
| **OMB** | Puerto Rico Office of Management and Budget |
| **Parent Entity** | Entity that owns a controlling interest or significant influence in another entity |
| **PBA** | Puerto Rico Public Buildings Authority (*Autoridad de Edificios Publicos* in Spanish) |
| **PFC** | Puerto Rico Public Finance Corporation (*Corporacion para el Financiamiento Públicode Puerto Rico* in Spanish) |
| **Planning Board** | Short-form reference to Puerto Rico's Planning Board (*Junta de Planificacion* in Spanish), the entity that forecasts economic growth estimates that the Department of Treasury then uses to forecast revenue. |
| **PRASA** | Puerto Rico Aqueducts and Sewers Authority (*Autoridad de Acueductos y Alcantarillados* in Spanish). |
| **PRCCDA** | Puerto Rico Convention Center District Authority (*Autoridad del Distrito del Centro de Convenciones* in Spanish) |
| **PRDOJ** | Puerto Rico Department of Justice |
| **PREC** | Puerto Rico Energy Commission, an oversight body for PREPA with the power to approve rate changes. |
| **PREPA** | Puerto Rico Electric Power Authority (*Autoridad de Energía Eléctrica* in Spanish), one of the Public Utilities |
| **PRIDCO** | Puerto Rico Industrial Development Company (*Compañia de Fomento Industrial* in Spanish) |
| **PRIFA** | Puerto Rico Infrastructure Financing Authority (*Autoridad para el Financiamiento de la Infraestructura del Gobierno de Puerto Rico*) |
| **Processed Accounts** | Cash and investment account information received from AH via the initial response and follow up response processes. |
| **Project** | The revised work plan and budget both for the FOMB staff and for D&P, as set out in Amendment No. 2 to the EL. |
| **PROMESA** | Puerto Rico Oversight, Management, and Economic Stability Act |
| **PROMESA Investigative Procedures** | A resolution adopted by the Financial Oversight and Management Board for Puerto Rico for Conducting Investigations Pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act. |
| **Proskauer** | Proskauer Rose LLP |
| **PSLRA** | US Private Securities Litigation Reform Act of 1995 |
| **Public Corporations** | Reference to a subset of Puerto Rico-Related Entities and Issuers that were created by the Legislative Assembly with varying degrees of independence from the central government to perform generally a single function or a limited number of related functions. |
| **Public Utilities** | Collective reference to PREPA and PRASA. |
| **Reconciled Accounts** | Refers to AH bank account information which has been reconciled to information received by a FI |
| **Report** | This Report of the IFAT |
| **Restricted Account** | Accounts with AH self-reported claims of restrictions on bank account balances. Restrictions could arise from any of the following categories: (1) custodial accounts; (2) trust accounts; (3) restricted by federal or Puerto Rico law; (4) |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix A: Glossary of Defined Terms

| | |
|---|---|
| | restricted by contract; (5) restricted by court order; (6) restricted by litigation; and (7) restricted accounts with pooled funds. |
| **Restricted-Selected Accounts** | The AH claiming restricted status with bank account balances >$35MM, subject to legal due diligence by O&B |
| **RFP** | Request for Proposal issued on December 19, 2017 titled "Independent Forensic Analysis Team" |
| **RSA** | Restructuring Support Agreement |
| **SUT** | Puerto Rico's Sales and Use Tax (*impuesto sobre ventas y uso*, or "IVU," in Spanish) |
| **TANF** | Temporary Assistance for Needy Families |
| **Team Connect** | Operating software and database provided by D&P in this Project |
| **TIFIA** | Transportation Infrastructure Finance & Innovation Act |
| **Title III Entities** | The agencies, public corporations and instrumentalities of the Commonwealth of Puerto Rico, which are subject to the Title III action commenced in the United States District Court for the District of Puerto Rico currently pending action. Proskauer and O&B determined which CE's were considered to be Title III entities. |
| **TSA** | Treasury Single Account<br><br>Collectively refers to bank accounts designed by Hacienda as a general checking or operating account, a money market account and a reserve account. |
| **Unrestricted Account** | A bank account designated by an AH which is not subject to any form of statutory or contractual restriction. |
| **UPR** | University of Puerto Rico. |
| **Work Plan** | Work plan issued by D&P, at the FOMB's request, on February 23, 2018 |

## Appendix B: Retention and Related Documents

**Appendix B-1 -** RFP



# Financial Oversight and Management Board for Puerto Rico

## REQUEST FOR PROPOSAL

INDEPENDENT FORENSIC ANALYSIS TEAM

December 19, 2017

**Executive Summary**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") was established by the bipartisan Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which was signed into law by President Obama on June 30, 2016 to address the economic crisis in Puerto Rico and to provide Puerto Rico with the tools it needs to restructure its debts and embark on a path to economic recovery.

The Oversight Board is tasked with working with the people and Government of Puerto Rico to create the necessary foundation for economic growth and to restore opportunity to the people of Puerto Rico. The Oversight Board consists of seven members appointed by the President of the United States and one an ex-officio member designated by the Governor of Puerto Rico.

The Oversight Board needs to obtain an accurate picture of the liquidity of the Puerto Rican Government and all its instrumentalities and entities. To do so, the Oversight Board must compile a comprehensive inventory of all Government bank accounts, cash equivalents, and investments along with their respective account balances (market value). The Oversight Board would also like to outline any deposits held in the Government Development Bank ("GDB"), which are subject to the provisions of Act 21 2016 and subject to the limitations on the withdrawal of funds (EO 0142016). The Oversight Board wants to know the sources and intended uses of these funds, timeline for creation of existing accounts, and any documented legal restrictions on these funds. This analysis should cover fiscal years 2015, 2016, 2017, and 2018, i.e., July 1, 2014 to date.

The Oversight Board is seeking submissions from interested parties to be retained as an independent forensic analysis team to carry out an investigation into the liquidity of the Puerto Rican Government. The scope of work should include:

(i)     A comprehensive inventory of all Cash, Cash equivalents, and Investments of the Puerto Rican Government and its instrumentalities and entities. The inventory should include the Central Government of Puerto Rico, its various funds, component units, agencies, public corporations and proprietary funds, including any deposits held in the Government Development Bank ("GDB").

(ii)    An analysis of the sources and intended uses of these funds, timeline for creation of existing accounts, and any documented legal restrictions on these funds.

The independent forensic analysis team will report to the Oversight Board and will be expected to present findings, interim and final, at the Oversight Board's public meetings and hearings. The investigation's findings will be made public. The Oversight Board is sending this Request for Proposal ("RFP") to help with its selection process.

**Selection Criteria**

Independent investigation teams will be evaluated and selected based on the following factors:

- Professional qualifications
- Competitiveness of economic proposal
- Completeness and quality of response to RFP
- Relevant experience in conducting investigations
- Knowledge and experience in forensic accounting
- Knowledge of government budgeting and fiscal management
- Ability to commence work immediately

**Qualifications**

Respondents should provide a description of their qualifications, including any relevant previous experience, and their proposed approach for working with the Oversight Board. Responses must also include resumes of the key individuals who will be assigned to the engagement.

Please include in your submission a list and description of any connections, past and present, with Puerto Rico and its financial crisis, including its creditors and other constituencies.

**Fees and Expenses**

The response to the RFP should include a proposed contract complete with terms, conditions and pricing. The response should also contain a list of each person who may perform services and their title, and the proposed rate or blended hourly rate proposed. Notwithstanding the foregoing, the Board reserves the right to modify the form of proposed contract.

Invoice shall be presented on a monthly basis for services rendered. Any "out of scope" service or expenditure shall be preapproved.

**Response Deadline**

**The response to the RFP is due no later than 5:00 p.m. on Friday, December 29, 2017.** Please respond in a thorough and timely fashion. Proposals submitted beyond the deadline may not be accepted. The Oversight Board reserves the right not to consider responses to the RFP or revisions after the response due date. All proposals received shall remain in effect for thirty (30) days from the date of receipt of the proposal. The Oversight Board will evaluate the responses, conduct interviews with select respondents, and make the ultimate selection.

All inquiries and correspondence during the RFP process are to be addressed to Jaime A. El Koury, General Counsel of the Oversight Board, at jaime.elkoury@promesa.gov.

**Appendix B-2 -** Engagement Letter

**DUFF & PHELPS**

---

**CONFIDENTIAL**

**VIA E-MAIL**: jaime.elkoury@promesa.gov

January 31, 2018

Jaime A. El Koury, Esq.
General Counsel
Financial Oversight and Management Board for Puerto Rico

Subject:        **Letter of Engagement for Duff & Phelps, LLC- Disputes & Investigations
                Engagement:** <u>**Independent Forensic Analysis Team for the Financial
                Oversight and Management Board for Puerto Rico**</u>

Dear Mr. El Koury:

This Letter of Engagement confirms that we, Duff & Phelps, LLC ("D&P" or "we"), have been
retained as a consulting expert to assist the Financial Oversight and Management Board for
Puerto Rico ("PROMESA" or "you" or "Client") with the services described below.

The purpose of our engagement is to provide advice and consultation in our field of expertise
and to form expert opinions that may be presented in a legal forum. Although you will define
the general scope of our work based on the issues in the above-referenced matter, at all times
we will exercise our best independent and professional judgment with respect to all aspects of
this engagement, and we will provide complete, accurate, and unbiased opinions to the best of
our knowledge and ability. Initially, the scope of services shall be as set forth in Attachment I.

D&P is not rendering any legal advice in this matter, and all legal advice being provided to
PROMESA shall be your sole responsibility.

Our work may include investigating, collecting and analyzing information, including but not
limited to accounting records and other financial information, as well as performing various
financial and accounting analyses, as needed and directed by you.  However, our engagement
does not include an audit in accordance with generally accepted auditing standards of existing
business records.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S.
federal tax advice contained in this communication (including any attachments) or any report or
deliverable contemplated by this communication, whether draft or final, is not intended or

---

Duff & Phelps, LLC                    T   + 1 212-450-2854              James.Feltman@duffandphelps.com
55 E 52nd Street                                                       www.duffandphelps.com
New York, NY 10055

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 40 of 154

Appendix B-2  FFF:

Jaime A. El Koury, Esq.
Oversight Board
Engagement Letter
January 31, 2018
Page 2

written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

**Confidentiality and Privilege**

Our work is intended for your use and benefit and should not be used by any other party for any
other purpose.

It is anticipated that all information or documents prepared by D&P and/or provided by D&P to
you in the course of this engagement constitutes confidential communications protected from
disclosure to third parties by the attorney-client privilege and/or constitute confidential work
product protected from disclosure to third parties by the attorney work-product doctrine.  As
such, all documents, including but not limited to written reports, memoranda, financial analyses
and summaries, that we prepare in connection with this engagement shall be prominently
labeled "Attorney Work-Product; Privileged & Confidential" at your request. We will not
prepare any written reports in this matter unless specifically requested to do so by you.  Written
reports which you request and are published will not be subject to the restrictions in this
paragraph.

It is anticipated that all information or documents supplied to D&P by you in the course of this
engagement constitute confidential communications protected from disclosure to third parties
by the attorney-client privilege and/or constitute confidential work product protected from
disclosure to third parties by the attorney work-product doctrine.

**Conflict Check**

An internal search within D&P was performed for any potential client conflicts based on the
names of the person(s)/entities that you provided.  To the best of our knowledge and belief,
client conflicts were not identified at that time. You agree that you will inform D&P of
additional parties to this matter or of name changes of the person(s)/ entities that you initially
provided.

Since D&P is presented with new client opportunities every day, we cannot ensure that,
following the completion of our internal conflict search, an engagement on behalf of any of the
person(s)/ entities in this matter will not be accepted by D&P.  Should a conflict come to the
attention of the Managing Director in charge of your engagement, he or she will advise you as
soon as possible.

Jaime A. El Koury, Esq.
Oversight Board
Engagement Letter
January 31, 2018
Page 3

**Staffing**

The Services will be performed under the overall supervision of James Feltman, a Managing Director, who will be assisted by other D&P staff as needed.

**Fees and Expenses**

We understand this engagement would be part of the budgetary process, and we would work cooperatively with you to establish a level of fees that are appropriate for the given environment. These fees could include a blended hourly rate or a set monthly retainer, and we are happy to explore options that make the most sense.  D&P agrees to use the rates published in Attachment II on this engagement throughout 2018.

D&P will bill PROMESA monthly directly via invoice with a copy to you.  It is acknowledged that payment is the sole responsibility of PROMESA.

A non-refundable initial retainer to be determined by D&P and PROMESA is due upon execution of this engagement letter (amount to be determined).  The retainer shall be applied to the final billing rendered hereunder, and any excess shall be promptly refunded to PROMESA, unless the total fees in the case are less than the initial non-refundable retainer, in which case the excess will be deemed earned by us and not subject to refund.  We reserve the right to increase the retainer during the course of the engagement to better protect our ability to collect fees. Further, if invoices are outstanding for more than ninety (90) days, the retainer will be automatically applied against the outstanding balance and will need to be immediately replenished to restore the retainer to the amount of the initial retainer in order for any further work to be performed hereunder.

We do not warrant or predict results in this matter, and our fees are not contingent upon any outcome arising out of the provision of the Services.

If we do not receive payment of any invoice within thirty (30) days of the invoice date, we shall be entitled, without prejudice to any other rights that we may have, to suspend provision of the Services until all sums due are paid in full.  Further, to safeguard against any assertion or allegation that our work may in some way be influenced by, or contingent upon, the outcome of our analyses, we require that all outstanding invoices be paid, in full, prior to us issuing any expert report and prior to us furnishing testimony in deposition or trial, should the services herein require such testimony. Accordingly, if testimony becomes necessary, we reserve the right to refuse to testify if we have not been paid in full at the time such testimony is required.

Jaime A. El Koury, Esq.
Oversight Board
Engagement Letter
January 31, 2018
Page 4


**Compliance with Laws, Regulations, and Vendor Code of Conduct.**

While providing services for the Board, D&P personnel assigned to this engagement shall comply with all applicable laws, rules and regulations, as well as all applicable Board policies and rules, including without limitation the Board's Vendor Code of Conduct and its Vendor Conflict of Interest Disclosure Certification. For the avoidance of doubt, the Vendor Conflict of Interest Disclosure Certification is being provided with respect to D&P generally and not just with respect to its personnel assigned to this engagement. A copy of the Vendor Code of Conduct and its Vendor Conflict of Interest Disclosure Certification is attached as Attachment IV hereto.

**Terms and Conditions**

The Terms and Conditions attached as Attachment III set forth the rights and responsibilities of the parties with respect to the Services. By signing this Letter of Engagement, it is acknowledged that PROMESA understands and agrees to the Terms and Conditions.

Jaime A. El Koury, Esq.
Oversight Board
Engagement Letter
January 31, 2018
Page 5

*     *     *     *     *

D&P is committed to providing superior service to its clients.  If you have any questions or
require further information, please call me at +1 212-450-2854.  If the scope and terms of this
Letter of Engagement are acceptable, please acknowledge your acceptance by signing and
returning a copy of this letter to James Feltman at Duff & Phelps, LLC, 55 East 52nd Street,
New York, NY, 10055, along with the retainer payment to which we agree upon.

Yours sincerely,

James Feltman
Managing Director
Disputes & Investigations
Duff & Phelps, LLC

Appendix B-2   FEL

Jaime A. El Koury, Esq.
Oversight Board
Engagement Letter
January 31, 2018
Page 6


**Confirmation of Letter of Engagement**

I declare that I have the authority to act on behalf of and bind PROMESA, and I have read, understand and accept the Letter of Engagement, and Terms and Conditions attached thereto, dated January 31, 2018.


Date:  January 31, 2018

Signed:        Natalie A. Jaresko
Title:          Executive Director
On behalf of:  Financial and Oversight Management Board for Puerto Rico

Jaime A. El Koury, Esq.
Oversight Board
Engagement Letter
January 31, 2018
Page 7


## I.   PROPOSED SCOPE – Phase I

D&P's Phase I Scope of Services would be to perform, assess, recommend and/or report to the PROMESA board or its delegates on the following:

(1) Validate with a high level of certainty the completeness of the list of bank accounts in the AAFAF report of January 19, 2018 and the values of those bank accounts as of the reported date;

(2) Recommend additional procedures that need to be undertaken if the completeness of the list in the AAFAF report of January 19, 2018 is determined to be insufficient;

(3) For all materially sized accounts, and for a random selection of other accounts identified by the Government as restricted, identify the documented legal restrictions, e.g., federal, bond-related, local legislature, or local executive.

(4) D&P to provide periodic status updates and a report and recommendation to the PROMESA board regarding the above items, which will include D&P's estimates of time and fees to perform the agreed upon tasks, once commissioned by PROMESA.

D&P will bill the Client actual hours expended at the rates described on Attachment II in providing the services describe above.

In 30 days, the D&P and the Client will make reasonable best efforts to agree to a cap on the total fees plus reasonable out of pocket costs in connection with the services described herein.

Jaime A. El Koury, Esq.
Oversight Board
Engagement Letter
January 31, 2018
Page 8

**II.   Schedule of Professional Fees for PROMESA 2018[1]**

| Level | Hourly Rate |
|---|---|
| Managing Director | $650 |
| Director | $550 |
| Vice President | $425 |
| Senior Associate | $395 |
| Analyst | $225 |

---

[1] The fees on Attachment II were negotiated with the client to reflect substantial discounts from Duff & Phelps standard rates. These discounted rates take into account the unique financial conditions in Puerto Rico and Duff and Phelps' desire to demonstrate sensitivity to these highly unusual circumstances.

Attachment III to PROMESA Letter of Engagement dated January 31, 2018

Appendix B-2 - EC

**Terms and Conditions**
The following are the terms and conditions (the "Terms and Conditions") on which we will provide the Services set forth in the attached Letter of Engagement. Together, the Terms and Conditions and the Letter of Engagement are referred to as the "Contract," which forms the entire agreement between D&P and you relating to the Services.

**General**
1.  Any variation to this Contract, notwithstanding any variation to the Services specified in the Letter of Engagement, shall be set forth in a letter or email communication deemed effective and made part of this Letter of Engagement upon written acknowledgement by the receiving party.

2.  After we have delivered any work product in final form, we have no responsibility to update such work product to reflect, incorporate or otherwise consider any events or circumstances occurring subsequent to the date of provision of such work product. If such update is requested, a separate letter of engagement, subject to our then standard fees plus expenses, shall be required.

**Provision of Information**
3.  Our performance of the Services is dependent upon you providing us with accurate and timely information and assistance. You shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete. You shall notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon. Failure to comply with this provision in any manner will frustrate, delay and/or otherwise impede D&P's performance of the Services, and D&P shall not be held liable for any damage, sanction or penalty as a result thereof.

**Work Product and Property Rights**
4.  There may be differences between draft and final work product. During the course of our work, drafts of our report may be issued. You acknowledge that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by us as the same may be subject to further work, revision, and other factors which may result in such drafts being substantially different from any final report or advice issued. Further, you acknowledge that issuance of draft reports may be discoverable and subject to us being forced to produce such drafts in discovery in this matter.

5.  Any advice given or work product issued by us is provided solely for your use and benefit and only in connection with the Services. Unless required by law, you shall not provide such work product to any third party (except to other consultants or experts engaged by you in connection with this matter who you agree shall be subject to the confidentiality requirements and restrictions on use set forth herein) or refer to us or the Services without our prior written consent, and such consent shall not be unreasonably withheld by D&P. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or work product is disclosed or otherwise made available.

6.  Unless otherwise instructed by court order or other written instruction, upon conclusion of our services, all documents reviewed and work product prepared in connection with this engagement shall be handled in accordance with our document retention policy.

7.  To the extent that D&P utilizes any of its property (including, but not limited to, any hardware or software) in connection with this engagement, such property shall remain the property of D&P, and you shall not acquire any right or interest in such property. We shall have ownership (including, but not limited to, copyright ownership) and all rights to use and disclose our ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof, in conducting our business.

**Preservation of Confidential Information**
8.  Information received from the other party for the purposes of providing or receiving the Services is deemed "Confidential" if it is either (a) marked confidential in tangible form; (b) otherwise confirmed in writing as being confidential; or (c) manifestly confidential in tangible form or otherwise. All parties agree that any Confidential information received from the other party shall only be used for the purposes of providing or receiving the Services under this or any other contract between us. In addition, neither party will disclose, without the prior written consent of the other party, any such Confidential information to any third party, except insofar as provided in sections 11 and 12.

9.  Section 8 will not apply to any information which (a) is or becomes generally available to the public other than as a result of a breach of an obligation by the receiving party; (b) is acquired from a third party who owes no obligation of confidence with respect to the information; or (c) is or has been independently developed by the recipient.

10. Notwithstanding the foregoing, either D&P or the Client will be entitled to disclose Confidential information of the other (a) to our respective insurers or legal advisors, and (b) to a third party to the extent required by any court of competent jurisdiction, or by a governmental, administrative or regulatory authority, or where there is a legal right, duty or requirement to disclose, provided that, where reasonably practicable, and without breaching any legal or regulatory requirement, not less than two (2) business days' notice in writing is first given to the other party.

11. If, subsequent to the conclusion of our provision of services in this matter, we receive a subpoena for testimony or documents related to or arising from this engagement, the Client shall be liable for all of our expenses and our time in responding to such subpoena, including the time to testify at deposition and/or trial, regardless of whether the subpoena is served by your clients or a third party and regardless of whether the subpoena only seeks our testimony as a fact witness. Our time will be billed at our standard rates in place at that time for our services as an expert. D&P agrees to promptly notify PROMESA upon receipt of such request for information, subpoena or other legal process.

**Termination**
12. If D&P is hired as a testifying expert witness, D&P may immediately, upon written notice, terminate services hereunder at any time should a disagreement arise between the parties with respect to any expert opinions to be offered at deposition and/or trial. Further, either party may terminate this Contract at will with 30 days' written notice to the other party.

13. Upon termination of this Contract for any reason, each party shall, upon written request from the other, return to the other all property and documentation of the other in its possession, except that we shall be entitled to retain one copy of such documents in order to maintain a professional record of our involvement.

14. If this Contract is terminated in accordance with paragraphs 12 or 13, all of the Terms and Conditions set forth herein shall survive such termination.

**Other Terms and Provisions**
15. Within five (5) business days of your receipt of notice of any formal challenge to the testifying expert's qualifications or opinions (e.g., Daubert Motion, Motion in Limine etc.), you shall notify D&P in writing of the same. In the event of such challenge, D&P reserves the right to retain its own counsel in connection with the challenge, and you agree to reimburse D&P for reasonable legal fees and expenses incurred in connection therewith to the extent such exceed $3,000.00.

16. Except in the event of our (i) gross negligence, (ii) willful misconduct or (iii) fraud, in no event shall we be liable to Client or you (or any person claiming through either Client or you), under any legal theory, for any amount in excess of the total professional fees paid by you to us under this Contract or any addendum to which the claim relates. In no event shall we be liable to Client or you under this Letter of Engagement under any legal theory or for any consequential, indirect, lost profit or similar damages relating to or arising from the Services provided under this Contract.

17. Each of Client and you accept and acknowledge that any legal proceeding arising from or in connection with this Contract (or any variation or addition thereto) must be commenced within one (1) year from the date when you become aware of the facts giving rise to our alleged liability. Each of Client and you also agree that no action or claim will be brought against any D&P employee personally.

18. Client agrees to indemnify and hold harmless D&P, its affiliates and their respective employees from any and all third party claims, liabilities, losses, costs, demands and reasonable expenses, including but not limited to reasonable legal fees and expenses, relating to the Services rendered under this Contract or otherwise arising under this Contract The foregoing indemnification obligations shall not apply in the event that a court of competent jurisdiction finally determines that such claims resulted directly from gross negligence, willful misconduct or fraudulent acts of D&P.

19. You accept and acknowledge that we have not made any warranties or guarantees, whether express or implied, with respect to the Services or any outcome that may be obtained as a result of the provision of the Services.

20. Except for your payment obligations, neither of us will be liable to the other for any delay or failure to fulfill obligations caused by circumstances outside our reasonable control.

21. We reserve the right to use your name and a description of the nature of the Services in general marketing materials with Client's consent.

22. This Contract shall be governed by and interpreted in accordance with the laws of the State of New York and the courts of the State of New York shall have exclusive jurisdiction in relation to any claim arising out of this Contract.

**Attachment IV**

**VENDOR/CONSULTANT/REPRESENTATIVE CODE OF CONDUCT**

The Financial Oversight and Management Board for Puerto Rico (the "Board") is committed to ethical and lawful behavior, and to acting professionally and fairly in all of its business dealings and relationships.  The Board seeks to maintain high ethical standards and to comply with all applicable laws and regulations.  The Board expects its vendors, consultants, and representatives to embrace this commitment to ethical and lawful behavior by complying with and training its employees on the Board's Vendor Code of Conduct.  The Board also expects its vendors to have their own codes of conduct that ensure ethical business conduct and practices.

## I.   <u>Compliance with the Vendor Code of Conduct</u>

All vendors, consultants, and representatives and their employees, agents, and subcontractors (collectively referred to as "Vendors") must adhere to this Code of Conduct while conducting business with or on behalf of the Board.  Vendors must promptly inform the Executive Director, the General Counsel, or a member of the Board when any situation develops that causes, or may cause, the Vendor to violate any provision of this Code of Conduct.  Although Vendors are expected to self-monitor and demonstrate their compliance with this Code of Conduct, the Board may audit Vendors and/or inspect Vendors' facilities and records to confirm compliance.

The Board may require the immediate removal from any project or engagement of any Vendor representative(s) or personnel who behave in a manner that is unlawful or inconsistent with this Code of Conduct or any Board policy.  Compliance with this Code of Conduct, as well as attendance at any training on this Code of Conduct as may be offered by the Board, is required in addition to any other contractual obligations a Vendor may have to the Board.

## II.   <u>Legal and Regulatory Compliance Practices</u>

Vendors must conduct their business activities on behalf of the Board in full compliance with the letter and spirit of all applicable laws and regulations.

- **Anti-Corruption**.  The Board takes a zero-tolerance approach to bribery and corruption, and it requires its Vendors to do the same.  Vendors must not participate in bribes or kickbacks of any kind, whether in dealings with the Board, government and public officials, or individuals in the private sector.  Vendors must also comply with all applicable anti-corruption and anti-money laundering laws, as well as laws governing gifts and payments to public officials, political campaign contribution and lobbying laws, and other related regulations.  In particular, Vendors must not:

  - Offer, promise, or allow anything of value (including travel, gifts, hospitality expenses, and charitable donations) to be given on behalf of the Board to influence a business or government decision, gain an improper advantage, or otherwise improperly promote the interests of the Board in any respect;

  - Offer, promise, or allow anything of value to be given to a Board member or employee to influence a Board decision or otherwise gain an improper advantage; or

- o   Ask for or accept anything of value which the Vendor knows or suspects is being offered to influence a Board decision or otherwise obtain an improper advantage in connection with the Vendor's work with or on behalf of the Board.

- **Antitrust/Fair Business Practices**.  Vendors must conduct their business in full compliance with antitrust and fair competition laws that govern the jurisdictions in which they conduct business.  Vendors must also uphold all standards of fair dealing and abide by all fair business practices, including truthful and accurate advertising.

- **Trade**.  Vendors shall comply with all applicable trade controls, as well as any applicable export, re-export, and import laws and regulations.  Vendors must not knowingly employ or do business with anyone reasonably suspected of being connected with criminal or terrorist activities or who is otherwise subject to applicable trade sanctions.

- **Freedom from Unlawful Harassment and Discrimination.**  Vendors shall provide a workplace free from harassment and/or discrimination in hiring, compensation, access to training, promotion, termination, and/or retirement on the basis of race, color, creed, religion, sex, gender identity or expression, sexual orientation, pregnancy, status as a parent, age, marital status, national origin, ancestry, citizenship status, physical or mental disability or serious medical condition, protected genetic information, political beliefs, status as a veteran, or any other characteristic protected by law.  Vendors shall further prohibit any form of reprisal or retaliation against any employee for reporting harassment or discrimination in good faith or for participating in good faith in a harassment or discrimination investigation.

- **Wages, Benefits and Working Hours**.  Vendors must comply with local applicable laws regarding wages, overtime hours and mandated benefits.  Vendors must also communicate with workers about compensation, including any overtime pay, in a timely and honest manner.

- **Freely Chosen Employment**.  No Vendor shall use any form of indentured, slave, or forced labor, including involuntary prison labor.  Vendors are also prohibited from supporting or engaging in any form of human trafficking of involuntary labor through threat, force, fraudulent claims, or other coercion.

- **Child Labor**.  Vendors shall comply with all local and national minimum working age laws or regulations and not use child labor.  All employees shall be age 18 and over unless:  (i) a country's legal age for employment or age for completing compulsory education is under 18; and (ii) the work is non-hazardous.

## III.   <u>Business Practices and Ethics</u>

Vendors must conduct their business interactions and activities with integrity.

- **Honesty and Integrity**.  Vendors must at all times be honest, direct, and truthful in discussions with the Board, its staff and agents, regulatory agency representatives, and government officials.

- **Business and Financial Records**.  The Board expects Vendors to timely, honestly, and accurately record and report all business information, including without limitation any invoices for payment, and comply with all applicable laws regarding their creation, completion, accuracy, retention, and disposal.  All invoices must be (i) timely submitted, (ii) itemized, (iii) supported

by appropriate documentation, and (iv) must comply with all other requirements as set out in the relevant contract(s).

- **Conflicts of Interest**.  Vendors shall scrupulously avoid any conflict, real or perceived, direct or indirect, between their own individual, professional, or business interests and the interests of the Board.  Among other things, Vendors must not deal directly with any Board member or *ex officio* member or employee whose spouse, domestic partner, or other family member or relative is associated with and/or holds any ownership or other financial interest in the Vendor.  In the course of negotiating the Vendor agreement or performing the Vendor's obligations, dealing directly with a Vendor personnel's spouse, domestic partner, or other family member or relative employed by the Board is also prohibited.  Complying with this requirement includes, but is not limited to, each Vendor's completion of the Vendor Conflict of Interest Disclosure Certification attached as **Appendix A** hereto.

- **Gifts and Entertainment**.  Vendors should avoid any actions with Board members or *ex officio* members or employees during any vendor selection or re-selection process that could give others the impression of favoritism or other improper advantage.  Furthermore, Vendors should not offer, and Board members, *ex officio* members, and employees must not accept, gifts or entertainment that might compromise, or appear to compromise, the Board member or employee's judgment or independence.  Even a well-intentioned gift might constitute or be perceived to be a bribe under certain circumstances, or create a conflict of interest or the appearance of a conflict of interest.  Board employees are required to conduct all business and interactions with Vendors in strict compliance with the applicable provisions of the Board's business ethics and conflict of interest policies.

- **Confidentiality, Privacy and Data Security**.  Vendors shall, at all times while they are engaged by the Board and thereafter, (i) hold all proprietary and confidential information of the Board in strictest confidence, (ii) not use or disclose for any purpose any proprietary and confidential information of the Board to any person, business or entity, except as specifically authorized in writing by the Board, and (iii) not disclose for any purpose any non-public information concerning their retention by the Board or their services for the Board, except as specifically authorized in writing by the Board.  Vendors shall abide by all Board requirements and procedures for protecting the proprietary and confidential information of the Board, including signing and abiding by the Board's confidentiality agreements.  Vendors who handle proprietary and confidential information on behalf of the Board or belonging to the Board must apply and maintain sufficient privacy and information security safeguards.  Vendors shall also be subject to an information and data security assessment.

- **Media**.  Vendors are prohibited from speaking to the press or making any public statements, oral or written, concerning their work for or on behalf of the Board without the express written authorization of the Board.

- **Reporting Concerns**.  Vendors shall maintain a hotline or other reporting system for their workers to confidentially and anonymously report any information or concerns about suspected non-compliance or violations of law or improper conduct by any Vendor employee or agent without threat of reprisal, intimidation or harassment.  If concerns are reported, Vendors shall promptly and thoroughly investigate any such report and take corrective action as necessary and appropriate.

Appendix B-2   PFC

I certify by my signature below that I have received and reviewed, and am authorized on Vendor's behalf to agree that Vendor shall abide by this Code of Conduct:


Vendor Name: _____Duff & Phelps LLC_____

_____         ____1/31/18____
Signature of Vendor Authorized Representative         Date


_____James S. Feltman, Managing Director_____
Printed Name and Title of Vendor Authorized Representative

Appendix B-2 - PPL

## <u>APPENDIX A</u>

[Vendor Conflict of Interest Disclosure Certification]

## VENDOR CONFLICT OF INTEREST DISCLOSURE CERTIFICATION

All vendors, consultants, and or experts ("Vendors") interested in conducting business with the Financial Oversight and Management Board for Puerto Rico (the "Board") must complete and return this Vendor Conflict of Interest Disclosure Form to be eligible for a contract award.  Disclosing a potential conflict of interest will not automatically disqualify the Vendor.  The potential conflict of interest will be investigated to determine whether it precludes the contract award.  In the event, however, that the Vendor does not disclose potential conflicts of interest and they are discovered by the Board, the Vendor will be barred from doing business with the Board.

Please note that all Vendors must comply with the Board's Vendor Code of Conduct as stated within the certification section below.

**No Conflict of Interest**:  Except as otherwise fully disclosed below (attach additional pages as needed), the Vendor affirms, to the best of its knowledge, information and belief, that no Interested Party (as defined in Schedule A hereto), nor any person associated with any Interested Party, is an employee, Director or Trustee, Officer or consultant to/of, or has any financial interest, direct or indirect, in the Vendor, or has received or will receive any financial benefit, directly or indirectly, from the Vendor or from the contract associated with this certification.

For the purposes of this certification, "associated" persons include:  a spouse, domestic partner, child, parent or sibling of an Interested Party; a person with whom an Interested Party has a business or other financial relationship, including but not limited to employees of an Interested Party and/or a spouse, domestic partner, child, parent or sibling of such employees; and each firm in which an Interested Party has a present or potential interest.

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 1 | Is any Interested Party, or any person associated with any Interested Party, associated with any employee, Director or Trustee, Officer or consultant to/of the Vendor? | | X |
| If you answered "yes" to Question 1, please identify the names of the persons who are associated and describe the nature of their association below: | | | |
| No. | To the best of your knowledge: | YES | NO |
| 2 | Does any Interested Party, or any person associated with an Interested Party, have an ownership interest in the Vendor's company? | | X |

If you answered "yes" to Question 2, please identify the name(s) of the person(s) who has/have such an ownership interest and describe the nature of the interest:

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 3 | Has any Interested Party, or any person associated with an Interested Party, received, or will any Interested Party, or any person associated with an Interested Party receive, a financial benefit from the Vendor or from this contract? | | X |

If you answered "yes" to Question 3, please identify the name(s) of the person(s) who have received or will receive such a financial benefit and describe the nature of the benefit below:

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 4 | Is any Interested Party, or any person associated with an Interested Party, contemporaneously employed or prospectively to be employed with the Vendor? | | X |

If you answered "yes" to Question 4, please identify the name(s) and title(s) of the person(s) who are or will be so employed below:

| No. | To the best of your knowledge: | YES | NO |
|---|---|---|---|
| 5 | Is any Interested Party, or any person associated with an Interested Party, acting as a consultant for the Vendor? | | X |

If you answered "yes" to Question 5, please identify the name(s) of the person(s) acting as a consultant and describe the nature of his/her/their consulting services below:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 6 | Has the Vendor provided, or will the Vendor provide, any gifts or hospitality of any dollar value or any other gratuities to any Interested Party or elected official to obtain or maintain a contract? | | X |

If you answered "yes" to Question 6, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities:

| No. | To the best of your knowledge: | YES | NO |
|-----|-------------------------------|-----|-----|
| 7 | Has any Interested Party, or any person associated with an Interested Party, provided any gifts of any dollar value or any other gratuities to Vendor? | | X |

If you answered "yes" to Question 7, please describe the nature of such gifts, hospitality, or other gratuities below, including (1) the recipient(s) of such gifts, hospitality, or other gratuities; (2) the date(s) on which such gifts, hospitality or other gratuities were provided; and (3) the exact (if possible) or approximate dollar value of such gifts, hospitality, or other gratuities:

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 56 of 154

Appendix B-2   PPL

I certify that the information provided is true and correct by my signature below:

_____          1/31/18
Signature of Vendor Authorized Representative          _____
                                                        Date


             James S. Feltman, Managing Director
_____
Printed Name of Vendor Authorized Representative

## SCHEDULE A

For purposes of the Financial Oversight and Management Board for Puerto Rico (the ("Board")'s Vendor Conflict of Interest Disclosure Certification, the following entities and individuals are Interested Parties:

Natalie Jaresko, Executive Director of the Board

Noel Zamot, Revitalization Coordinator

Jaime A. El Koury, General Counsel of the Board

Andrew G. Biggs, Member of the Board

Jose B. Carrión III, Member of the Board

Carlos M. Garcia, Member of the Board

Arthur J. Gonzalez, Member of the Board

José R. González, Member of the Board

Gov. Ricardo Rosselló Nevares, Ex-Officio Member of the Board

Ana J. Matosantos, Member of the Board

David A. Skeel Jr., Member of the Board

Elías Sánchez Sifonte, Former Ex-Officio Member of the Board as representative of the Governor

Christian Sobrino Vega, Ex-Officio Member of the Board as representative of the Governor

Commonwealth of Puerto Rico (Primary Government)

 9-1-1 Service Governing Board

Additional (Electronic) Lottery

Agricultural Enterprises Development Administration

Automobile Accidents Compensation Administration

Cardiovascular Center Corporation of Puerto Rico and the Caribbean

Commonwealth of Puerto Rico Regional Center Corporation

Company for the Integral Development of the "Península de Cantera"

Corporation for the "Caño Martin Peña" Project (ENLACE)

Corporation of Industries for the Blind and Mentally Retarded and Incapacitated Persons of Puerto Rico

Culebra Conservation and Development Authority

Economic Development Bank for Puerto Rico

Employees' Retirement System (ERS)

Employment and Training Enterprises Corporation

Farm Insurance Corporation of Puerto Rico

Fine Arts Center Corporation

Fiscal Agency and Financial Advisory Authority (AAFAF)

Governmental Development Bank for PR (GDB)

Institute of Puerto Rican Culture

Institutional Trust of the National Guard of Puerto Rico

Judiciary Retirement System (JRS)

Land Authority of Puerto Rico

Local Redevelopment Authority of the Lands and Facilities of Naval Station Roosevelt Roads

Model Forest

Municipal Revenue Collection Center (CRIM)

Musical Arts Corporation

Port of the Americas Authority

PR Aqueduct and Sewer Authority (PRASA)

PR Electric Power Authority (PREPA)

PR Highways and Transportation Authority (HTA)

PR Infrastructure Finance Authority (PRIFA)

PR Maritime Shipping Authority

PR Medical Services Administration (ASEM)

PR Sales Tax Financing Corporation (COFINA)

Public Building Authority (PBA)

Public Corporation for the Supervision and Deposit Insurance of Puerto Rico Cooperatives (COSSEC)

Puerto Rico and Municipal Islands Transport Authority

Puerto Rico Conservatory of Music Corporation

Puerto Rico Convention Center District Authority (PRCCDA)

Puerto Rico Council on Education

Puerto Rico Health Insurance Administration (HIA / ASES)

Puerto Rico Industrial Development Company (PRIDCO)

Puerto Rico Industrial, Tourist, Educational, Medical, and Environmental Control Facilities Financing Authority (AFICA)

Puerto Rico Integrated Transit Authority (PRITA)

Puerto Rico Land Administration

Puerto Rico Metropolitan Bus Authority (AMA)

Puerto Rico Municipal Finance Agency (MFA)

Puerto Rico Ports Authority

Puerto Rico Public Broadcasting Corporation

Puerto Rico Public Private Partnerships Authority (PPP)

Puerto Rico School of Plastic Arts

Puerto Rico Telephone Authority

Puerto Rico Tourism Company

Puerto Rico Trade and Export Company

Solid Waste Authority

Special Communities Perpetual Trust

State Insurance Fund Corporation (SIF)

Teachers' Retirement System (TRS)

The Children's Trust Fund (CTF)

Traditional Lottery

Unemployment Insurance Fund

University of Puerto Rico (UPR)

University of Puerto Rico Comprehensive Cancer Center

**Appendix B-3 -** Work Plan

In re: PROMESA Independent Forensic Analysis

CONFIDENTIAL - ATTORNEY'S EYES ONLY
DRAFT - SUBJECT TO SUBSTANTIAL CHANGE

**Exhibit**
Duff & Phelps Work Plan per Addendum 2 dated August 14, 2018

| STEP | TASK | Average Estimated D&P Hours | Average Estimated FOMB Hours | Average Estimated Total Hours |
|---|---|---|---|---|
| 1(A) | Create a master list of Agencies and Public Corporations of Puerto Rico ("Account Holders") for the periods ending November 30, 2017 and June 30, 2018 ("Measurement Dates"): (i). Create an organization chart of Account Holders from various sources (including but not limited to Department of the Treasury ("Hacienda") and FOMB ☐ Request and obtain from Hacienda the Comprehensive Annual Financial Reports in finalized, audited form for the fiscal year ending June 30, 2014 and in draft form for the fiscal years ending June 30, 2015 through June 30, 2018. | 22 | 28 | 50 |
| 1(B) | Request and obtain from (as detailed in Step 2A-B): (i). Account Holders, their books and records relating to cash and investment accounts sourced from trial balances or general ledgers, as of the Measurement Dates; (ii). The Office of the Commissioner of Financial Information reports ("OCIF Reports") as of the Measurement Dates for financial institutions ("Financial Institutions") of Account Holders. | 140 | 202 | 342 |
| 2(A) | Prepare a template for confirmation letters from the FOMB (on behalf of D&P) to request that Account Holders: (i). Produce financial information from their books and records such as trial balances and /or general ledger as of the Measurement Dates, relating to cash and investment accounts; and (ii). To provide their respective information regarding whether cash and investments accounts are "restricted" and if affirmative, provide the nature and type of restrictions Account Holders believe are applicable. (See Step 4 below regarding processes and information about account restrictions). | 34 | 43 | 77 |
| 2(B) | Prepare a template for confirmation letters from the FOMB (on behalf of D&P) to Financial Institutions as of the Measurement Dates. The confirmation letter will request that on behalf of the Account Holder, the financial institution release all cash and investment information directly to Duff & Phelps (on behalf of FOMB) and grant online Webcash access. | 34 | 43 | 77 |
| 2(C) | Receive and process cash and investment account information, as well as information provided by Account holders regarding "restrictions" and information from each Financial Institutions in a master database ("Master Database"). For each Account Holder, create a separate worksheet linked to the Master Database, of all the cash and investment account information received from each Account Holder and each Financial Institution. (i). Initiate and maintain engagement with the Account Holders and Financial Institutions to facilitate receipt of sufficient and relevant information going forward. | 476 | 795 | 1,270 |
| 2(D) | Recover and follow up on missing or incomplete cash and investment information, information regarding "restrictions" from Account Holders and Financial Institutions. Revert to alternative information collection procedures if voluntary requests are unproductive. (i). Maintain a detailed log of information requested, from whom, and when it was requested as well as what and when information was received and from what sources(s). | 362 | 520 | 882 |
| 2(E) | Reconcile information received from the Account Holders and the Financial Institutions. Identify material discrepancies and follow up, as applicable. | 419 | 468 | 887 |

In re: PROMESA Independent Forensic Analysis

CONFIDENTIAL - ATTORNEY'S EYES ONLY
DRAFT - SUBJECT TO SUBSTANTIAL CHANGE

**Exhibit**
Duff & Phelps Work Plan per Addendum 2 dated August 14, 2018

| STEP | TASK | Average Estimated D&P Hours | Average Estimated FOMB Hours | Average Estimated Total Hours |
|---|---|---|---|---|
| 3(A) | Based on information received from Account Holders and in consultation with the FOMB staff, determine which cash and investment accounts compiled from the Master Database should be included as unrestricted accounts ("Included Account")<br>(i). Where there are material accounts whose restricted status is in question, communicate with the Account Holders to determine if the account should or should not be considered as an Included Account;<br>(ii). Define and document what constitutes a material Included Account and if not Included, document why the account was not an Included Account;<br>(iii). For any material account that is deemed excluded, document the rationale and supporting exclusion; and<br>(iv). Seek consensus with the FOMB to determine materiality threshold for Included Accounts | 378 | 631 | 1,008 |
| 3(B) | Reconcile Included Accounts with the AAFAF-produced November 2017 Publication.  Seek an explanation from AAFAF for differences, if any, in material restricted accounts and values of each account so identified | 193 | 190 | 383 |
| 4(A) | Determine, in consultation with the FOMB counsel, the appropriate definitions and categories of legal restrictions, such as (a) federal, (b) bond-related, (c) local legislature, or (d) local executive, and classify accounts in the Master Database accordingly. | 182 | 209 | 390 |
| 4(B) | Request and obtain agreements, and legal documents or other supporting information concerning the restricted nature of each material account from the Account Holder and other relevant third-parties. | 218 | 374 | 592 |
| 4(C) | Collaborate with FOMB counsel to confirm the application of agreed upon definitions to the classification of bank accounts as either restricted or unrestricted. | 58 | 83 | 140 |
| 4(D) | Test claimed Restrictions to Account activities:<br>(i). For material accounts where Account Holders claim "restricted" status, on a test basis, perform reviews of transactional activities to determine if the account transaction types match the claimed "restricted" status.<br>☐ Classify accounts in the Included Account Database as restricted or unrestricted, accordingly. | 227 | 281 | 508 |
| 5(A) | Prepare a status report or a report for publication as directed by the FOMB, describing the forensic process, findings and opinions associated with Steps 1 – 4. | 766 | 240 | 1,006 |
| 5(B) | Provide recommendations to initiate institutional memory for the bank account reporting process going forward. | 611 | 40 | 651 |

| | | | |
|---|---|---|---|
| Time to Complete Step 1 | 162 | 229 | 391 |
| Time to Complete Step 2 | 1,324 | 1,867 | 3,191 |
| Time to Complete Step 3 | 571 | 820 | 1,391 |
| Time to Complete Step 4 | 684 | 946 | 1,630 |
| Time to Complete Step 5 | 1,377 | 280 | 1,657 |
| **Total Hrs to Completion** | **4,117** | **4,142** | **8,259** |

**Appendix B-4 -** Amendment No. 1

**CONFIDENTIAL**

**VIA E-MAIL**: jaime.elkoury@promesa.gov

March 31, 2018

Jaime A. El Koury, Esq.
General Counsel
Financial Oversight and Management Board for Puerto Rico

| Subject: | Amendment No. 1 to Letter of Engagement for Duff & Phelps, LLC-Disputes & Investigations Engagement: <u>Independent Forensic Analysis Team for the Financial Oversight and Management Board for Puerto Rico</u> |
| --- | --- |

Dear Mr. El Koury:

This letter will serve to amend the Letter of Engagement dated January 31, 2018 between Duff & Phelps, LLC ("D&P" or "we"), and the Financial Oversight and Management Board for Puerto Rico ("PROMESA" or "you" or "Client") as follows:

1. Attachment I to the Letter of Engagement is hereby replaced by Appendix I hereto, provided that Appendix I is subject to the following:

The total amounts therein are reduced to 1,658 hours and $722,500 in fees, the latter to serve as a cap ("Fee Cap") for the accomplishment of the Objectives set forth in Appendix I. The Fee Cap does not include fees already incurred of approximately $100,000.

The Fee Cap is subject to the following general conditions;

(1) AAFAF promptly provides its work product as requested by D&P supporting the bank account reports which AAFAF has published;

(2) AAFAF provides reasonable access to personnel knowledgeable about the bank account report work product as and when requested by D&P;

(3) Other third parties, including Commonwealth Agencies and their public corporations make commercially reasonable efforts to respond to inquiries and/or interview requests made by D&P; and

(4) FOMB agrees to assist D&P to obtain information and cooperation, when requested, relating to items 1 through 3 above as may arise from time to time.

2. D&P's expenses for accomplishing the Objectives in Appendix I are capped at $36,125 and are subject to the PROMESA expense reimbursement policy attached hereto; provided, however, that expenses incurred through February 28, 2018 as set forth in the attachment hereto are not subject to such cap, are to be recomputed to comply with the meal expense limitations and no-alcohol

1

provision in the expense reimbursement policy and are exempted from the pre-approval
requirements thereunder.

Yours sincerely,


James Feltman
Managing Director
Disputes & Investigations
Duff & Phelps, LLC

*Natalie Jaresko/bp*

*(Jaime A. El Koury, General Counsel)* Date: March 31, 2018

Signed:        Natalie A. Jaresko
Title:         Executive Director
On behalf of:  Financial and Oversight Management Board for Puerto Rico

2

*DUFF & PHELPS*
*WORK PRODUCT*
*CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*

<div align="center">

**Draft Strategic Work Plan to Accomplish Scope**
**as Outlined in January 31, 2018 Engagement Letter**
*Prepared by Duff & Phelps*

</div>

## Critical Nature of Communications
*In order to efficiently and effectively execute on Objectives 1 and 2, it will be essential for Duff & Phelps to engage with the Client in scheduled updates and receive feedback from the Client regarding the procurement of data and potential unforeseen obstacles. Duff & Phelps commits to providing regularly scheduled status reports to the Client as well as a thorough review of Objectives 1 and 2 as they are completed but before reports are issued.*

## Objective 1
Validate with a high level of certainty the completeness of the list of bank accounts in the AAFAF report of January 19, 2018 ("AAFAF Liquidity Analysis") and the values of those bank accounts as of the reported date.

### *Procedures to Accomplish Objective 1*

**Draft Report: Given Task 1.A-1.D outlined below, Duff & Phelps expects to prepare a draft report describing the forensic process and findings, including recommendations as per the D&P Engagement Letter scope.**

April 2018 - Amendment No. 1

*DUFF & PHELPS*
*WORK PRODUCT*

*CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*

## Task 1.A: Validate AAFAF-provided accounts

| | *Estimated Time to Complete* | *Estimated D&P Hours to Complete* |
|---|---|---|
| a) Obtain the work product and supporting analyses developed by AAFAF ("AAFAF Work Papers") in connection with the AAFAF Liquidity Analysis, including but not limited to copies or screenshots of bank names, titles, and related correspondence (together, the "AAFAF Supporting Documents"). | 1 day [1] | 1 |
| b) Reconcile AAFAF Work Papers to underlying AAFAF Supporting Documents:<br>○ Organize AAFAF requests and related correspondence by bank account and for each of the three information sources identified in AAFAF's publication, described by AAFAF as comprising approximately 10,000 documents;<br>○ Compare responses to requests (quantitative and qualitative) to the AAFAF Work Papers for all accounts with balances greater than $X and on a random basis for accounts with balances between $X-1 and $Z. | 14 days | 360 |

---

[1] Time to complete is dependent on ability of producing parties.

*DUFF & PHELPS*
*WORK PRODUCT*

*CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*

**Task 1.B: Ensure AAFAF provided accounts representative of the account universe**

| | *Estimated Time to Complete* | *Estimated D&P Hours to Complete* |
|---|---|---|
| a) Obtain work product and supporting analyses developed by non-AAFAF parties (together, the "Supplemental Work Papers"), including:<br>   o Government agencies' and public corporations' ("Agencies and Public Corps") cash flow statements; produced in the regular course as of December 31, 2017;<br>   o OCIF reporting work papers;<br>   o Comprehensive Annual Financial Report ("CAFR") supporting work papers for the most current year, in draft;<br>   o CAFR supporting work papers for the most current year, finalized. | 3 days [2] | 50 |

---

[2] Time to complete is dependent on ability of producing parties.

*DUFF & PHELPS*
*WORK PRODUCT*                                              *CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*

| | | |
|---|---|---|
| b) Develop master database of all bank accounts ("Comprehensive Account Database"), included those in the AAFAF Work Papers and those identified in the Supplemental Work Papers.<br>   o  Include the source of the bank account information and, at minimum, the following fields: (a) Account Number, (b) Agency / Agency No., (c) Bank, (d) Bank Description, and (e) Account Classification;<br>   o  Confirm all Agencies and Public Corps are represented on the Comprehensive Account Database; inquire with relevant Agencies and Public Cops as to the rationale for exclusion. | 8 days | 210 |
| c) Identify bank accounts not included in the AAFAF Liquidity Analysis.<br>   o  Examine Agencies' and Public Corps' bank accounts excluded in the AAFAF Liquidity Analysis to confirm that such exclusions are appropriate and consistent with the objectives. | 5 days | 100 |

DUFF & PHELPS
WORK PRODUCT                                    CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION

| | | |
|---|---|---|
| d) Where bank accounts agree between the AAFAF Work Papers and Supplemental Work Papers, compare for completeness and comparability relating to funds subject to this inquiry; supplemental information ("Supplemental Information") may include:<br>　o Financial information or statements for Commonwealth Agencies and Public Corps;<br>　o Financial disclosures;<br>　o Interviews (or written confirmation) of CFOs / Financial Controllers of the largest Commonwealth Agencies and Public Corps. | 8 days | 190 |

*DUFF & PHELPS*                                                    *CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*
*WORK PRODUCT*

## Task 1.C: Confirm existence and inclusion of non-cash accounts

|  | *Estimated Time to Complete* | *Estimated D&P Hours to Complete* |
|---|---|---|
| a) Investigate whether: (a) cash equivalent accounts, (b) invested funds including brokerage accounts, and (c) direct investments were or should have been included in the AAFAF Work Papers and AAFAF Liquidity Analysis through a review of Supplemental Work Papers and Supplemental Information, such as OCIF-reported financial documents and financial accounts, Agency or Public Corp-provided documentation, and/or CAFR supporting work papers;<br>  o Update the Comprehensive Accounts Database with a field for account type (cash v. cash equivalents);<br>  o Update the Comprehensive Accounts Database with all cash equivalent accounts not previously included. | 10 days [3] | 180 |

## Task 1.D: Investigation of asset disposition

|  | *Estimated Time to Complete* | *Estimated D&P Hours to Complete* |
|---|---|---|
| a) Investigate the disposition of funds held in bank accounts closed during 2017 which held balances greater than $A. | 10 days | 200 |

---

[3] Time to complete is dependent on ability of producing parties.

*DUFF & PHELPS*
*WORK PRODUCT*                                          *CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*

## Objective 2

For all materially sized accounts, and for a random selection of other accounts identified by the Government as restricted, identify the documented legal restrictions, such as (a) federal, (b) bond-related, (c) local legislature, or (d) local executive.

*Procedures to Accomplish Objective 2*

**Draft Report: Given Task 2.A-2.C outlined below, Duff & Phelps expects to prepare a draft report describing the forensic process and findings.**

**Task 2.A: Determine the accounts to be tested and receive relevant documentation**

| | *Estimated Time to Complete* | *Estimated D&P Hours to Complete* |
|---|---|---|
| a) Utilize the Comprehensive Account Database developed in Tasks 1.A-1.C to find all materially sized accounts, a distinction to be made in collaboration with the Client.<br>　○ Identify all materially sized accounts on the Comprehensive Account Database to be examined in this analysis;<br>　○ Select a sample of non-material accounts, identified as restricted by the Government to be examined in this analysis. | 2 days | 30 |

*DUFF & PHELPS*                 Appendix Amendment No. 1
*WORK PRODUCT*           *CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*

| | | |
|---|---|---|
| b) Obtain copies of documents, agreements, or other forms of information utilized by AAFAF in determining the restricted and unrestricted nature of bank accounts, including all such information relied upon by AAFAF in making their determinations (together, the "<u>AAFAF Restriction Documents</u>").<br>    o Determine what, if any, additional information is required to satisfy the criteria to determine restrictions and the nature of restrictions in the bank accounts identified (together, the "<u>Supplemental Restriction Documents</u>") to be included in the subset of liquidity accounts and request the same from various counterparties. | 7 days | 180 |

## Task 2.B: Collaborate with relevant parties to determine key analysis assumptions

| | *Estimated Time to Complete* | *Estimated D&P Hours to Complete* |
|---|---|---|
| a) Assist FOMB General Counsel in developing categories of restricted and unrestricted bank account designations. | 5 days | 50 |

*DUFF & PHELPS*
*WORK PRODUCT*
Appendix 4 - Amendment No. 1
*CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION*

| | | Estimated Time to Complete | Estimated D&P Hours to Complete |
|---|---|---|---|
| b) | Obtain agreement from AAFAF regarding categories of bank account restrictions and related conditions to be applied when performing review of banking database;<br>○ Meet and confer with AAFAF to ascertain what, if any, restricted accounts titling does or does not match the assessment performed by AAFAF.[4] | 4 days | 60 |

## Task 2.C: Prepare findings

| | | Estimated Time to Complete | Estimated D&P Hours to Complete |
|---|---|---|---|
| a) | Develop a protocol for identifying exceptions and unique circumstances, such as commingled funds in accounts. | 5 days | 160 |
| b) | Reconcile differences in the application of restrictions with the AAFAF Work Papers, where possible. | 8 days | 180 |

---

[4] Further; determine with FOMB how and when to address the additional forensic work required to determine potential restrictions or lack thereof for funds and bank accounts, which arises from analysis of the source(s) and use(s) of funds flow. Examples of such determinations would include funds received from federal grants, restrictions for earmarking, and required reserves and escrows. These additional factual analyses would supplement the determinations performed for Objective 2 arising from a forensic review of documentation only.

DUFF & PHELPS
WORK PRODUCT

CONFIDENTIAL – ATTORNEY CLIENT PRIVILEGED COMMUNICATION

**Final Estimate to Complete Objectives 1 & 2**

| Estimated Total Time to Completion | 90 days or 1,951 hours |
|---|---|
| Estimated Billable Time to Completion | $850,000 [5] |

---

[5] This estimate does not include the amount that has been billed by the IFAT ("Independent Forensic Analysis Team") through the date of this work plan, which is approximately $80,000.

**Financial Oversight and Management Board for Puerto Rico**
*June 30, 2017*

**Expense Reimbursement Policy**

## 1. Introduction

The Board of Members of the Financial Oversight and Management Board for Puerto Rico ("the Board") recognizes that board members, officers, staff, and contractors* of the Board may be required to travel or incur in other expenses from time to time to conduct Board business.

The Reimbursed Expenses Policy (the "Policy") is designed to govern the reimbursement of reasonable, defined expenses incurred on authorized Board activities.   Consequently all reimbursed expenses must be consistent with a business objective and carried out in a timely and cost-effective manner.

This Policy applies to board members, officers, staff, and contractors* who incur authorized and approved travel and other expense items in the context of the Board's business. While exceptions are not normally permitted, there is clear recognition of certain special business needs.  In any such exceptional situations, all board members, officers, staff, and contractors* are expected to apply a high degree of common sense and good judgment.

## 2. Purpose of the Policy

The purpose of this policy is to ensure that (a) adequate cost controls are in place, (b) travel and other expenditures are appropriate, and (c) to provide a uniform and consistent approach for the timely reimbursement of authorized expenses incurred by the Board. It is the policy of the Board to reimburse only reasonable and necessary expenses incurred by board members, officers, staff, and contractors.

## 3. Principles of the Policy

The Policy aims to provide a flexible framework for travel and other expenses based on the following principles:

**3.1**     This Policy applies to board members, officers, staff, and contractors* undertaking travel other expenses on  Board business and for the purposes of this Policy, the term "staff" shall mean employees of the Board.

**3.2**     It is the responsibility of board members, officers, staff, and contractors* to ensure the selection of the most direct and economical travel options and that all expenses are attributable to a valid Board business purpose.

---

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

**3.3**   Board members, officers, staff, and contractors* shall be entitled to reimbursement of expenses on production of supporting vouchers and invoices meeting the requirements of an "Accountable Plan" provided under Regulation No. 8297 dated December 18, 2012 issued by the Puerto Rico Department of Treasury. No expense reimbursement will be allowed for amounts in excess of actual expenditures incurred. No expense reimbursement will be allowed for estimates of expenditures incurred. This includes coach-class airfare or train fare (or business class train fare if rates are comparable); and hotels and transportation (e.g. taxis).

**3.4**   It is the responsibility of the Board members, officers, staff, and contractors* to obtain travel authorization from the Chairman of the Board, the Executive Director or Authorized Representative prior to organizing or incurring any travel costs [See Appendix A for Authorization Authority]. Expense reimbursement is subject to having received prior authorization. Exceptions shall be made under the consideration of the Chairman, Executive Director or Authorized Representative.

**3.5**   The use of video and telephone conferencing instead of travel should always be considered to reduce travel expenses.

## 4.   Travel Expenses

### 4.1 Air Travel

**4.1.1**   Costs for air travel will be reimbursed on an actual cost incurred basis.

**4.1.2**   For all flights, board members, officers, staff, and contractors* are required to travel in a cabin class no higher than premium economy class and, when possible, the cheapest fare in this class.

**4.1.3**   Flights should be booked to provide the best value/lowest cost and fit between cost and convenience. Board staff shall book flights through the Board's Executive Assistant. Board members may book flights through the Board's Executive Assistant or independently. Board contractors must book flights independently, though they are allowed to consult the Board's Executive Assistant on fares the board members, officers, and staff are using.

**4.1.4**   The Board will not reimburse costs incurred due to deviations from the most direct routes taken for personal travel reasons. In such cases, if the Board purchased the ticket, the traveler must reimburse the Board for any additional costs over and above the authorized travel.

**4.1.5**   Any alteration to original travel plans must be justified and approved in accordance with the Policy.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

## 4.2 Train Travel

**4.2.1** The Board may reimburse travelers for their economy train fares or business class train fares when those fares are comparable to the equivalent, economy class airfare on the same route.

**4.2.2** Board staff shall book trains through the Board's Executive Assistant. Board Members may book trains through the Board's Executive Assistant or independently. Board contractors must book trains independently, though they are allowed to consult the Board's Executive Assistant on fares the board members, officers, and staff are using.

## 4.3 Hotels and Lodging

**4.3.1** Accommodation costs may be reimbursed by the Board. Board members, officers, staff, and contractors should not exceed cost of accommodation per night published in the U.S. Government GSA Per Diem Rates (https://www.gsa.gov/perdiem), unless approved by the Chairman or his authorized representative.

**4.3.2** Board staff shall book hotels through the Board's Executive Assistant. Board members may book hotels through the Board's Executive Assistant or independently. Board contractors must book hotels independently, though they are allowed to consult the Board's Executive Assistant on fares the Board members, officers, and staff are using.

## 4.4 Transportation

**4.4.1** Transportation costs during trips associated to Board business will be reimbursed. Board members, officers, and staff* can expense the following transportation costs: 1) transportation to and from the airport / train station and 2) transportation to and from the meeting location. Transportation costs cover taxi services or equivalent (e.g. Uber, Lyft or any other transportation means).

## 4.5 Business Meals

**4.5.1** When travelling to a location other than the Board members, officers, staff, and contractors'* local city, business meals are reimbursable based on the following limits:

- Breakfast: $15; Lunch: $25; Dinner: $40
- Snack expenses are reimbursable when they replace a meal.

**4.5.2** If meals are provided during the meeting, only meals not provided can be expensed.

## 5. Other Expenses

**5.1** Other expenses are reimbursable provided they are legitimate, necessary and reasonable expenses directly connected with or pertaining to the Board, such as office supplies, printing and reproduction, telephone calls, and messengers, among other.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

## 6. Reimbursement of Expense

**6.1** Travel arrangements are authorized in advance through the completion and approval of a travel authorization email and the validation of a travel plan between the traveler and the designated approver [See Appendix A].

**6.2** Expenses are reimbursed through the completion, approval, and validation of expense report [See Appendix B] that the members, officers, and staff must submit to the designated approver [See Appendix C].

**6.3** Expense claims should be submitted immediately following and, where possible, no more than 10 days after the completion of each trip, but at least a monthly.

**6.4** In rare circumstances, and on an exceptional basis, reimbursement in excess of stated limits may be provided when lodging options are not available below. In such rare circumstances, the need for higher reimbursement shall be indicated on the attached reimbursement form and justified in writing by the members, officers, and staff. Reimbursement will be limited to the following:

- Lodging: average rate for available 3-star hotels listed for the applicable metropolitan area on Expedia;

The Chairman of the Board or his authorized representative will have sole discretion to approve or deny such expenditures.

**6.5** Receipts are required for all expenditures billed, such as airfare and hotel charges. No expense in excess of $25.00 will be reimbursed to Board members, officers, staff and contractors unless the individual requesting reimbursement submits with the Expense Report written itemized receipts from each vendor (not a credit card receipt or statement) showing the vendor's name, a description of the services provided (if not otherwise obvious), the date, and the total expenses. If a receipt is not available, a full explanation of the expense and the reason for the missing receipt is required.

**6.6** Alcoholic beverages will not be reimbursed under any circumstance.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

**APPENDIX A: Authorization Authority**

| Expense to be Incurred By: | Authorization From: |
|---|---|
| Board Member | Chairman or Authorized Representative |
| Board Staff | Executive Director or Authorized Representative |
| Board Contractors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | N/A |

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

## APPENDIX B: Expense Report

**Financial Management and Oversight Board for Puerto Rico**

*To be completed by* members, officers, and staff *and submitted to designated approver*

| DATE | DESCRIPTION | AIR FARE | GROUND FARE | HOTEL | MEALS | OTHER | TOTAL (1) |
|------|-------------|----------|-------------|-------|-------|-------|-----------|
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
|      |             |          |             |       |       |       | $        - |
| TOTAL |            | $     -  | $     -     | $  -  | $  - | $  - | $        - |

Signature:_____          Date:_____

Approved by:_____          Date:_____

**(1) SUBMIT RECEIPTS FOR THE AMOUNTS TO BE REIMBURSED.**

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

**APPENDIX C: Expense Report Approval Authority**

| Expense Incurred By: | Expense Approved By: |
|---|---|
| Board Member | Chairman or Authorized Representative |
| Board Personnel | Executive Director or Authorized Representative |
| Board Advisors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | Executive Director or Authorized Representative |

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

DUFF&PHELPS

**Summary of Individual Expenses**
*for the Period January 31, 2018 through February 28, 2018*

| Professional | Level | Date | Expense Category | Amount |
|---|---|---|---|---|
| Ciociura, Caroline | Analyst | 2/9/2018 | Airfare | $ 276.40 |
| Feltman, James | Managing Director | 2/10/2018 | Airfare | $ 325.80 |
| Ciociura, Caroline | Analyst | 2/10/2018 | Airfare | $ 280.90 |
| Gittleman, Ann | Managing Director | 2/11/2018 | Airfare | $ 218.40 |
| Hornung, Eric | Senior Associate | 2/12/2018 | Airfare | $ 218.40 |
| Ciociura, Caroline | Analyst | 2/12/2018 | Ground Transportation | $ 71.16 |
| Hornung, Eric | Senior Associate | 2/12/2018 | Ground Transportation | $ 66.86 |
| Hornung, Eric | Senior Associate | 2/12/2018 | Meals | $ 55.00 |
| Gittleman, Ann | Managing Director | 2/12/2018 | Meals | $ 26.84 |
| Feltman, James | Managing Director | 2/12/2018 | Ground Transportation | $ 25.00 |
| Ciociura, Caroline | Analyst | 2/12/2018 | Ground Transportation | $ 24.00 |
| Gittleman, Ann | Managing Director | 2/12/2018 | Meals | $ 18.00 |
| Gittleman, Ann | Managing Director | 2/12/2018 | Meals | $ 14.00 |
| Gittleman, Ann | Managing Director | 2/12/2018 | Meals | $ 11.99 |
| Ciociura, Caroline | Analyst | 2/12/2018 | Meals | $ 6.80 |
| Hornung, Eric | Senior Associate | 2/12/2018 | Meals | $ 5.97 |
| Ciociura, Caroline | Analyst | 2/13/2018 | Airfare | $ 276.40 |
| Gittleman, Ann | Managing Director | 2/13/2018 | Airfare | $ 262.40 |
| Feltman, James | Managing Director | 2/13/2018 | Airfare | $ 188.40 |
| Feltman, James | Managing Director | 2/13/2018 | Meals | $ 100.00 |
| Girlcolous, Ann | Managing Director | 2/13/2018 | Meals | $ 74.75 |
| Feltman, James | Managing Director | 2/13/2018 | Ground Transportation | $ 20.00 |
| Gittleman, Ann | Managing Director | 2/13/2018 | Meals | $ 11.00 |
| Gittleman, Ann | Managing Director | 2/13/2018 | Meals | $ 9.00 |
| Gittleman, Ann | Managing Director | 2/13/2018 | Ground Transportation | $ 7.79 |
| Gittleman, Ann | Managing Director | 2/13/2018 | Meals | $ 6.00 |
| Gittleman, Ann | Managing Director | 2/13/2018 | Meals | $ 4.93 |
| Gittleman, Ann | Managing Director | 2/14/2018 | Meals | $ 222.13 |
| Feltman, James | Managing Director | 2/14/2018 | Meals | $ 215.00 |
| Hornung, Eric | Senior Associate | 2/14/2018 | Airfare | $ 242.40 |
| Gittleman, Ann | Managing Director | 2/14/2018 | Meals | $ 59.29 |
| Hornung, Eric | Senior Associate | 2/14/2018 | Meals | $ 59.00 |
| Ciociura, Caroline | Analyst | 2/14/2018 | Ground Transportation | $ 9.59 |
| Gittleman, Ann | Managing Director | 2/14/2018 | Meals | $ 9.53 |
| Ciociura, Caroline | Analyst | 2/14/2018 | Ground Transportation | $ 9.26 |
| Gittleman, Ann | Managing Director | 2/14/2018 | Meals | $ 2.00 |
| Hornung, Eric | Senior Associate | 2/15/2018 | Airfare | $ 218.40 |
| Feltman, James | Managing Director | 2/15/2018 | Ground Transportation | $ 51.00 |
| Ciociura, Caroline | Analyst | 2/15/2018 | Meals | $ 41.01 |
| Gittleman, Ann | Managing Director | 2/15/2018 | Ground Transportation | $ 40.96 |
| Gittleman, Ann | Managing Director | 2/15/2018 | Meals | $ 25.27 |
| Ciociura, Caroline | Analyst | 2/15/2018 | Meals | $ 24.99 |
| Feltman, James | Managing Director | 2/15/2018 | Ground Transportation | $ 20.00 |
| Ciociura, Caroline | Analyst | 2/15/2018 | Meals | $ 18.73 |
| Ciociura, Caroline | Analyst | 2/15/2018 | Ground Transportation | $ 9.24 |
| Hornung, Eric | Senior Associate | 2/15/2018 | Ground Transportation | $ 5.50 |
| Hornung, Eric | Senior Associate | 2/15/2018 | Airfare | $ 6.00 |
| Gittleman, Ann | Managing Director | 2/15/2018 | Ground Transportation | $ 3.39 |
| Gittleman, Ann | Managing Director | 2/16/2018 | Lodging | $ 1,262.46 |
| Hornung, Eric | Senior Associate | 2/16/2018 | Lodging | $ 915.21 |
| Ciociura, Caroline | Analyst | 2/16/2018 | Lodging | $ 868.32 |
| Feltman, James | Managing Director | 2/16/2018 | Lodging | $ 831.48 |
| Feltman, James | Managing Director | 2/16/2018 | Lodging | $ 536.63 |
| Ciociura, Caroline | Analyst | 2/16/2018 | Lodging | $ 449.37 |
| Hornung, Eric | Senior Associate | 2/16/2018 | Lodging | $ 449.37 |
| Ciociura, Caroline | Analyst | 2/16/2018 | Ground Transportation | $ 51.13 |
| Ciociura, Caroline | Analyst | 2/17/2018 | Ground Transportation | $ 7.66 |
| **TOTAL EXPENSES** | | | | $ 9,246.58 |

**Appendix B-5 -** Amendment No. 2

VIA E-MAIL: jaime.elkoury@promesa.gov

August 16, 2018

Jaime A. El Koury, Esq.
General Counsel
Financial Oversight and Management Board for Puerto Rico

**Subject:**     **Amendment No. 2 to Letter of Engagement for Duff & Phelps, LLC-
Disputes & Investigations Engagement: <u>Independent Forensic Analysis Team
for the Financial Oversight and Management Board for Puerto Rico</u>**

Dear Mr. El Koury:

This letter will serve to amend the Letter of Engagement dated January 31, 2018 between Duff &
Phelps, LLC ("D&P" or "we"), and the Financial Oversight and Management Board for Puerto
Rico ("FOMB" or "you" or "Client") as follows:

1.      Attachment I to the Letter of Engagement is hereby replaced by Appendix II attached
hereto.

2.      Attachment II contains a description of the revised Scope of Services whereby D&P will
provide the design of and supervision over Steps 1(a) through 5(b).  The Scope of Services of
Appendix II contemplates that the FOMB and its staff will perform those Steps so identified.
Appendix II estimates that the FOMB and its staff will expend approximately 4,142 hours
performing the steps in Appendix II.

3.      D&P estimates the hours for design of and supervision over the FOMB staff will be
approximately 4,117 hours, including (steps 5(a) & (b)).  Appendix II contemplates that D&P's
hours and rates for this revised Scope of Services will total $1,715,663.  D&P will bill for the
actual hours incurred in connection with this Engagement.  However, should D&P's hours
exceed the estimated hours for any of the Steps of Appendix II, D&P agrees to seek advance
approval for any such excess.

4.    In connection with performing work under Appendix II, D&P agrees to seek reimbursement for expenses accordance with the FOMB expense reimbursement policy as attached hereto.


Yours sincerely,


James Feltman
Managing Director
Disputes & Investigations
Duff & Phelps, LLC


Date:    August 17, 2018

Signed:        Natalie A. Jaresko
Title:          Executive Director
On Behalf of:  Financial and Oversight Management Board for Puerto Rico

CONFIDENTIAL - ATTORNEYS EYES ONLY
DRAFT - SUBJECT TO SUBSTANTIAL CHANGE

| TASK | TBD *Vice President* *Low Estimate* | TBD *Vice President* *High Estimate* | TBD *Senior Associate* *Low Estimate* | TBD *Senior Associate* *High Estimate* | TBD *Senior Associate* *Low Estimate* | TBD *Senior Associate* *High Estimate* | TBD *Analyst* *Low Estimate* | TBD *Analyst* *High Estimate* | Average Estimated D&P Hours | Average Estimated FOMB Hours | Average Estimated Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Create a master list of Agencies and Public Corporations of Puerto Rico ("Account Holders") for the periods ending November 30, 2017 and June 30, 2018 ("Measurement Dates"). (i). Create an organization chart of Account Holders from various sources (including but not limited to Department of the Treasury ("Hacienda") and FOMB. a. Request and obtain from Hacienda the Comprehensive Annual Financial Reports in finalized, audited form for the fiscal year ending June 30, 2014 and in draft form for the fiscal years ending June 30, 2015 through June 30, 2018. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 22 | 28 | 50 |
| Request and obtain from (as detailed in Step 2A-B): (i). Account Holders, their books and records relating to cash and investment accounts sourced from trial balances or general ledgers, as of the Measurement Dates, (ii) The Office of the Commissioner of Financial Information reports ("OCIF Reports") as of the Measurement Dates for financial institutions ("Financial Institutions") of Account Holders. | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 140 | 202 | 342 |
| Prepare a template for confirmation letters from the FOMB (on behalf of D&P) to request that Account Holders: (i). Produce financial information from their books and records such as trial balances and /or general ledger as of the Measurement Dates, relating to cash and investment accounts; and (ii). To provide their respective information regarding whether cash and investments accounts are "restricted" and if affirmative, provide the nature and type of restrictions Account Holders believe are applicable. (See Step 4 below regarding processes and information about account restrictions). | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 34 | 43 | 77 |
| Prepare a template for confirmation letters from the FOMB (on behalf of D&P) to Financial Institutions as of the Measurement Dates. The confirmation letter will request that on behalf of the Account Holder, the financial institution release all cash and investment information directly to Duff & Phelps (on behalf of FOMB) and grant online Webcash access | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 34 | 43 | 77 |
| Receive and process cash and investment account information, as well as information provided by Account holders regarding "restrictions" and information from each Financial Institutions in a master database ("Master Database"). For each Account Holder, create a separate worksheet linked to the Master Database, of all the cash and investment account information received from each Account Holder and each Financial Institution. (i). Initiate and maintain engagement with the Account Holders and Financial Institutions to facilitate receipt of sufficient and relevant information going forward. | 40 | 50 | 50 | 70 | 50 | 70 | 60 | 75 | 476 | 795 | 1,270 |
| Recover and follow up on missing or incomplete cash and investment information, information regarding "restrictions" from Account Holders and Financial Institutions. Revert to alternative information collection procedures if voluntary requests are unproductive (i). Maintain a detailed log of information requested, from whom, and when it was requested as well as what and when information was received and from what sources(s) | 20 | 30 | 50 | 60 | 50 | 60 | 50 | 70 | 362 | 520 | 882 |
| Reconcile information received from the Account Holders and the Financial Institutions. Identify material discrepancies and follow up, as applicable | 45 | 60 | 50 | 60 | 50 | 60 | 60 | 80 | 419 | 468 | 887 |
| Based on information received from Account Holders and in consultation with the FOMB staff, determine which cash and investment accounts compiled from the Master Database should be included as unrestricted accounts ("Included Account") (i). Where there are material accounts whose restricted status is in question, communicate with the Account Holders to determine if the account should or should not be considered as an Included Account; (ii). Define and document what constitutes a material Included Account and if not Included, document why the account was not an Included Account; (iii) For any material account that is deemed excluded, document the rationale and supporting exclusion; and (iv). Seek consensus with the FOMB to determine materiality threshold for Included Accounts | 45 | 60 | 40 | 50 | 40 | 50 | 40 | 50 | 378 | 631 | 1,008 |
| Reconcile Included Accounts with the AAFAF-produced November 2017 Publication. Seek an explanation from AAFAF for differences, if any, in material restricted accounts and values of each account so identified | 10 | 16 | 25 | 30 | 25 | 30 | 30 | 50 | 193 | 190 | 383 |
| Determine, in consultation with the FOMB counsel, the appropriate definitions and categories of legal restrictions, such as (a) federal, (b) bond-related, (c) local legislature, or (d) local executive, and classify accounts in the Master Database accordingly | 10 | 20 | 20 | 25 | 20 | 25 | 20 | 25 | 182 | 209 | 390 |
| Request and obtain agreements, and legal documents or other supporting information concerning the restricted nature of each material account from the Account Holder and other relevant third-parties | 15 | 25 | 20 | 30 | 20 | 30 | 30 | 40 | 218 | 374 | 592 |
| Collaborate with FOMB counsel to confirm the application of agreed upon definitions to the classification of bank accounts as either restricted or unrestricted | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 58 | 83 | 140 |
| Test claimed Restrictions to Account activities: (i). For material accounts where Account Holders claim "restricted" status, on a test basis, perform reviews of transactional activities to determine if the account transaction types match the claimed "restricted" status. a. Classify accounts in the Included Account Database as restricted or unrestricted, accordingly | 15 | 25 | 30 | 35 | 30 | 35 | 35 | 40 | 227 | 281 | 508 |
| Prepare a status report or a report for publication as directed by the FOMB, describing the forensic process, findings and opinions associated with Steps 1 – 4 | 70 | 80 | 90 | 100 | 90 | 100 | 90 | 100 | 766 | 240 | 1,006 |
| Provide recommendations to initiate institutional memory for the bank account reporting process going forward | 60 | 70 | 70 | 80 | 70 | 80 | 70 | 90 | 611 | 40 | 651 |
| Time to Complete Step 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 162 | 229 | 391 |
| Time to Complete Step 2 | 105 | 140 | 150 | 190 | 150 | 190 | 170 | 225 | 1,324 | 1,867 | 3,191 |
| Time to Complete Step 3 | 55 | 76 | 65 | 80 | 65 | 80 | 70 | 100 | 571 | 820 | 1,391 |
| Time to Complete Step 4 | 40 | 70 | 70 | 90 | 70 | 90 | 85 | 105 | 684 | 946 | 1,630 |
| Time to Complete Step 5 | 130 | 150 | 160 | 180 | 160 | 180 | 160 | 190 | 1,377 | 280 | 1,657 |
| **Total Hrs to Completion** | 330 | 436 | 445 | 540 | 445 | 540 | 485 | 620 | 4,117 | 4,142 | 8,259 |
| *Billable Rate* | $425 | $425 | $395 | $395 | $395 | $395 | $225 | $225 | | | |
| Billables to Complete Step 1 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | | | |
| Billables to Complete Step 2 | $44,625 | $59,500 | $59,250 | $75,050 | $59,250 | $75,050 | $38,250 | $50,625 | | | |
| Billables to Complete Step 3 | $23,375 | $32,300 | $25,675 | $31,600 | $25,675 | $31,600 | $15,750 | $22,500 | | | |
| Billables to Complete Step 4 | $17,000 | $29,750 | $27,650 | $35,550 | $27,650 | $35,550 | $19,125 | $23,625 | | | |
| Billables to Complete Step 5 | $55,250 | $63,750 | $63,200 | $71,100 | $63,200 | $71,100 | $36,000 | $42,750 | | | |
| **Billables Time to Completion** | $140,250 | $185,300 | $175,775 | $213,300 | $175,775 | $213,300 | $109,125 | $139,500 | $ 1,715,663 | | $ 3,340,775 |

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 88 of 154

Appendix B-3 - Attachment No. 2

DUFF & PHELPS
WORK PRODUCT

Duff & Phelps Team

| STEP | TASK | J. Feltman Managing Director | | A. Gibbons Managing Director | | C. Jenkins Managing Director | | E. Herring Vice President | | C. Cuevas Analyst | | TBD Director | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Low Estimate | High Estimate | Low Estimate | High Estimate | Low Estimate | High Estimate | Low Estimate | High Estimate | Low Estimate | High Estimate | Low Estimate | High Estimate |
| 1(A) | Create a master list of Agencies and Public Depositories of Puerto Rico ("Account Holders") for the periods ending November 30, 2013 and June 30, 2014 ("Measurement Dates") (i). Create an organization chart of Account Holders from various sources (including but not limited to Department of the Treasury ["Hacienda"] and FOMB) … as Respond and obtain from Hacienda the Comprehensive Annual Financial Reports (if finalized, audited form) for the fiscal year ending June 30, 2014 and in draft form for the fiscal years ending June 30, 2013 through June 30, 2015 | 3 | 4 | 3 | 4 | 3 | 4 | 4 | 6 | 2 | 6 | 3 | 4 |
| 1(B) | Request and obtain from (as detailed in Step 2A-D): (i). Account Holders, their books and records relating to cash and investment accounts sourced from trial balances or general ledgers, as of the Measurement Dates. (ii). The Office of the Commissioner of Financial Information reports ("OCIF Reports") as of the Measurement Dates for financial institutions ("Financial Institutions") of Account Holders | 15 | 20 | 15 | 20 | 5 | 10 | 30 | 40 | 40 | 50 | 15 | 20 |
| 2(A) | Prepare a template for confirmation letters from the FOMB (on behalf of IFAT) to request that Account Holders: (i). Produce financial information from their books and records such as trial balances and/or general ledger as of the Measurement Dates, relating to cash and investment accounts; and (ii). To provide their respective information regarding whether cash and investments accounts are "restricted" and if affirmative, provide the nature and type of restrictions Account Holders believe are applicable. [See Step d below regarding provision and information about account restrictions] | 8 | 10 | 8 | 10 | 4 | 8 | 2 | 4 | 2 | 4 | 2 | 4 |
| 2(B) | Prepare a template for confirmation letters from the FOMB (on behalf of Financial Institutions as of the Measurement Dates. The confirmation letter will request that on behalf of the Account Holder, the financial institution release all cash and investment information directly to Duff & Phelps (on behalf of FOMB) and gain online Webank access | 8 | 10 | 8 | 10 | 4 | 8 | 2 | 4 | 2 | 4 | 2 | 6 |
| 2(C) | Receive and process cash and investment account information, as well as information provided by Account holders regarding "restrictions" and information from such Financial Institutions in a master database ("Master Database"). For each Account Holder, create a separate worksheet linked to the Master Database, of all the cash and investment account information received from each Account Holder and each Financial Institution. (i). Initiate and maintain engagement with the Account Holders and Financial Institutions to facilitate receipt of sufficient and relevant information going forward | 35 | 40 | 35 | 40 | 16 | 21 | 40 | 50 | 60 | 75 | 35 | 40 |
| 2(D) | Receive and follow up on missing or incomplete cash and investment information, reference regarding "restrictions" from Account Holders and Financial Institutions. Revert to alternative information collection procedures if voluntary requests are unproductive. (i). Maintain a detailed log of information requested, from where, and when it was requested as well as who and when information was received and from what source(s) | 20 | 30 | 20 | 30 | 5 | 8 | 20 | 30 | 50 | 75 | 20 | 30 |
| 2(E) | Reconcile information received from the Account Holders and the Financial Institutions. Identify material discrepancies and follow up, as applicable | 15 | 20 | 15 | 20 | 5 | 8 | 45 | 60 | 60 | 80 | 20 | 25 |
| 3(A) | Based on information received from Account Holders and in consultation with the FOMB staff, determine which cash and investments accounts compiled from the Master Database should be included in unrestricted accounts ("Included Account"). (i). Where there are restricted sources whose restricted status is in question, communicate with the Account Holders to determine if the account should or should not be considered as an Included Account; (ii). Define and document what constitutes a material Included Account and if not Included, document why the account was not an Included Account; (iii). For any material account that is deemed excluded, document the rationale and supporting rationales; and (iv). Seek concurrence with the FOMB to determine materiality threshold for Included Accounts | 20 | 30 | 20 | 30 | 15 | 20 | 45 | 60 | 40 | 50 | 20 | 30 |
| 3(B) | Reconcile Included Accounts with the AAFAF-produced November 2017 Publication. Seek an explanation from AAFAF for differences, if any, in internal restricted accounts and values of such accounts not identified | 8 | 10 | 8 | 10 | 4 | 6 | 10 | 14 | 30 | 50 | 8 | 16 |
| 4(A) | Determine, in consultation with the FOMB counsel, the appropriate definition and categories of legal restrictions, such as (a) federal, (b) bond-related, (c) local legislature, or (d) local executive, and classify accounts in the Master Database accordingly | 10 | 30 | 10 | 30 | 8 | 10 | 15 | 20 | 25 | 30 | 10 | 30 |
| 4(B) | Request and obtain agreements, and legal documents or other supporting information concerning the restricted nature of each material account from the Account Holder and other relevant third-parties | 15 | 20 | 15 | 20 | 5 | 8 | 15 | 25 | 30 | 40 | 15 | 20 |
| 4(C) | Collaborate with FOMB counsel to confirm the application of agreed upon definitions to the classification of bank accounts as either restricted or unrestricted | 20 | 25 | 20 | 25 | 10 | 15 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4(D) | Test classified restrictions in Account activities: (i). For material accounts where Account Holders claim "restricted" status, on a test basis, perform reviews of transactional activities to determine if the account transaction types match the claimed "restricted" status; and (ii). Classify accounts in the Included Account Database as restricted or unrestricted, accordingly | 10 | 15 | 10 | 15 | 8 | 12 | 15 | 25 | 35 | 40 | 10 | 20 |
| 5(A) | Prepare a status report or a report for publication as directed by the FOMB describing the factual process, findings and opinions associated with Steps 1 – 4 | 60 | 70 | 60 | 70 | 34 | 38 | 86 | 90 | 90 | 100 | 60 | 80 |
| 5(B) | Provide recommendations to initiate institutional inventory for the bank account reporting process going forward | 40 | 50 | 40 | 50 | 34 | 38 | 60 | 70 | 72 | 99 | 40 | 20 |
| | Time to Complete Step 1 | 18 | 24 | 18 | 24 | 8 | 14 | 32 | 46 | 42 | 56 | 18 | 24 |
| | Time to Complete Step 2 | 88 | 110 | 88 | 110 | 34 | 52 | 108 | 148 | 174 | 233 | 29 | 109 |
| | Time to Complete Step 3 | 28 | 40 | 28 | 40 | 19 | 26 | 55 | 76 | 70 | 100 | 28 | 40 |
| | Time to Complete Step 4 | 55 | 80 | 55 | 80 | 28 | 39 | 45 | 70 | 90 | 130 | 35 | 80 |
| | Time to Complete Step 5 | 100 | 120 | 100 | 120 | 68 | 78 | 130 | 150 | 150 | 190 | 100 | 130 |
| | Total Hrs to Completion | 247 | 274 | 247 | 374 | 157 | 207 | 371 | 490 | 526 | 669 | 240 | 361 |
| | Billable Rate | $650 | $650 | $650 | $650 | $650 | $650 | $425 | $425 | $225 | $225 | $550 | $550 |
| | Billable to Complete Step 1 | $11,700 | $15,600 | $11,700 | $15,600 | $5,200 | $9,100 | $13,600 | $19,550 | $9,450 | $12,600 | $9,900 | $13,350 |
| | Billable to Complete Step 2 | $55,900 | $71,500 | $55,900 | $71,500 | $22,100 | $33,800 | $46,325 | $62,900 | $39,150 | $52,425 | $43,450 | $58,850 |
| | Billable to Complete Step 3 | $18,200 | $26,000 | $18,200 | $26,000 | $12,350 | $16,900 | $23,375 | $32,300 | $15,750 | $22,500 | $15,400 | $22,000 |
| | Billable to Complete Step 4 | $35,750 | $52,000 | $35,750 | $52,000 | $18,200 | $25,350 | $19,125 | $29,750 | $20,250 | $34,750 | $19,250 | $33,000 |
| | Billable to Complete Step 5 | $65,000 | $78,000 | $65,000 | $78,000 | $44,200 | $49,450 | $55,250 | $63,750 | $33,750 | $42,750 | $55,000 | $71,500 |
| | Billable Time to Completion | $186,550 | $243,100 | $186,550 | $243,100 | $102,050 | $134,550 | $157,675 | $208,250 | $120,600 | $165,025 | $142,000 | $198,550 |

**Financial Oversight and Management Board for Puerto Rico**
*June 30, 2017*

**Expense Reimbursement Policy**

## 1. Introduction

The Board of Members of the Financial Oversight and Management Board for Puerto Rico ("the Board") recognizes that board members, officers, staff, and contractors* of the Board may be required to travel or incur in other expenses from time to time to conduct Board business.

The Reimbursed Expenses Policy (the "Policy") is designed to govern the reimbursement of reasonable, defined expenses incurred on authorized Board activities. Consequently all reimbursed expenses must be consistent with a business objective and carried out in a timely and cost-effective manner.

This Policy applies to board members, officers, staff, and contractors* who incur authorized and approved travel and other expense items in the context of the Board's business. While exceptions are not normally permitted, there is clear recognition of certain special business needs. In any such exceptional situations, all board members, officers, staff, and contractors* are expected to apply a high degree of common sense and good judgment.

## 2. Purpose of the Policy

The purpose of this policy is to ensure that (a) adequate cost controls are in place, (b) travel and other expenditures are appropriate, and (c) to provide a uniform and consistent approach for the timely reimbursement of authorized expenses incurred by the Board. It is the policy of the Board to reimburse only reasonable and necessary expenses incurred by board members, officers, staff, and contractors.

## 3. Principles of the Policy

The Policy aims to provide a flexible framework for travel and other expenses based on the following principles:

**3.1** This Policy applies to board members, officers, staff, and contractors* undertaking travel other expenses on Board business and for the purposes of this Policy, the term "staff" shall mean employees of the Board.

**3.2** It is the responsibility of board members, officers, staff, and contractors* to ensure the selection of the most direct and economical travel options and that all expenses are attributable to a valid Board business purpose.

---

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

**3.3** Board members, officers, staff, and contractors* shall be entitled to reimbursement of expenses on production of supporting vouchers and invoices meeting the requirements of an "Accountable Plan" provided under Regulation No. 8297 dated December 18, 2012 issued by the Puerto Rico Department of Treasury. No expense reimbursement will be allowed for amounts in excess of actual expenditures incurred. No expense reimbursement will be allowed for estimates of expenditures incurred. This includes coach-class airfare or train fare (or business class train fare if rates are comparable); and hotels and transportation (e.g. taxis).

**3.4** It is the responsibility of the Board members, officers, staff, and contractors* to obtain travel authorization from the Chairman of the Board, the Executive Director or Authorized Representative prior to organizing or incurring any travel costs [See Appendix A for Authorization Authority]. Expense reimbursement is subject to having received prior authorization. Exceptions shall be made under the consideration of the Chairman, Executive Director or Authorized Representative.

**3.5** The use of video and telephone conferencing instead of travel should always be considered to reduce travel expenses.

## 4. Travel Expenses

### 4.1 Air Travel

**4.1.1** Costs for air travel will be reimbursed on an actual cost incurred basis.

**4.1.2** For all flights, board members, officers, staff, and contractors* are required to travel in a cabin class no higher than premium economy class and, when possible, the cheapest fare in this class.

**4.1.3** Flights should be booked to provide the best value/lowest cost and fit between cost and convenience. Board staff shall book flights through the Board's Executive Assistant. Board members may book flights through the Board's Executive Assistant or independently. Board contractors must book flights independently, though they are allowed to consult the Board's Executive Assistant on fares the board members, officers, and staff are using.

**4.1.4** The Board will not reimburse costs incurred due to deviations from the most direct routes taken for personal travel reasons. In such cases, if the Board purchased the ticket, the traveler must reimburse the Board for any additional costs over and above the authorized travel.

**4.1.5** Any alteration to original travel plans must be justified and approved in accordance with the Policy.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

## 4.2 Train Travel

**4.2.1**  The Board may reimburse travelers for their economy train fares or business class train fares when those fares are comparable to the equivalent, economy class airfare on the same route.

**4.2.2**  Board staff shall book trains through the Board's Executive Assistant. Board Members may book trains through the Board's Executive Assistant or independently. Board contractors must book trains independently, though they are allowed to consult the Board's Executive Assistant on fares the board members, officers, and staff are using.

## 4.3 Hotels and Lodging

**4.3.1**  Accommodation costs may be reimbursed by the Board. Board members, officers, staff, and contractors should not exceed cost of accommodation per night published in the U.S. Government GSA Per Diem Rates (https://www.gsa.gov/perdiem), unless approved by the Chairman or his authorized representative.

**4.3.2**  Board staff shall book hotels through the Board's Executive Assistant. Board members may book hotels through the Board's Executive Assistant or independently. Board contractors must book hotels independently, though they are allowed to consult the Board's Executive Assistant on fares the Board members, officers, and staff are using.

## 4.4 Transportation

**4.4.1**  Transportation costs during trips associated to Board business will be reimbursed. Board members, officers, and staff* can expense the following transportation costs: 1) transportation to and from the airport / train station and 2) transportation to and from the meeting location. Transportation costs cover taxi services or equivalent (e.g. Uber, Lyft or any other transportation means).

## 4.5 Business Meals

**4.5.1**  When travelling to a location other than the Board members, officers, staff, and contractors'* local city, business meals are reimbursable based on the following limits:

- Breakfast: $15; Lunch: $25; Dinner: $40
- Snack expenses are reimbursable when they replace a meal.

**4.5.2**  If meals are provided during the meeting, only meals not provided can be expensed.

## 5. Other Expenses

**5.1**  Other expenses are reimbursable provided they are legitimate, necessary and reasonable expenses directly connected with or pertaining to the Board, such as office supplies, printing and reproduction, telephone calls, and messengers, among other.

---

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

## 6. Reimbursement of Expense

**6.1** Travel arrangements are authorized in advance through the completion and approval of a travel authorization email and the validation of a travel plan between the traveler and the designated approver [See Appendix A].

**6.2** Expenses are reimbursed through the completion, approval, and validation of expense report [See Appendix B] that the members, officers, and staff must submit to the designated approver [See Appendix C].

**6.3** Expense claims should be submitted immediately following and, where possible, no more than 10 days after the completion of each trip, but at least a monthly.

**6.4** In rare circumstances, and on an exceptional basis, reimbursement in excess of stated limits may be provided when lodging options are not available below. In such rare circumstances, the need for higher reimbursement shall be indicated on the attached reimbursement form and justified in writing by the members, officers, and staff. Reimbursement will be limited to the following:

- Lodging: average rate for available 3-star hotels listed for the applicable metropolitan area on Expedia;

The Chairman of the Board or his authorized representative will have sole discretion to approve or deny such expenditures.

**6.5** Receipts are required for all expenditures billed, such as airfare and hotel charges. No expense in excess of $25.00 will be reimbursed to Board members, officers, staff and contractors unless the individual requesting reimbursement submits with the Expense Report written itemized receipts from each vendor (not a credit card receipt or statement) showing the vendor's name, a description of the services provided (if not otherwise obvious), the date, and the total expenses. If a receipt is not available, a full explanation of the expense and the reason for the missing receipt is required.

**6.6** Alcoholic beverages will not be reimbursed under any circumstance.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

**APPENDIX A: Authorization Authority**

| Expense to be Incurred By: | Authorization From: |
|---|---|
| Board Member | Chairman or Authorized Representative |
| Board Staff | Executive Director or Authorized Representative |
| Board Contractors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | N/A |

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

## APPENDIX B: Expense Report

## Financial Management and Oversight Board for Puerto Rico

*To be completed by* members, officers, and staff *and submitted to designated approver*

| DATE | DESCRIPTION | AIR FARE | GROUND FARE | HOTEL | MEALS | OTHER | TOTAL (1) |
|------|-------------|----------|-------------|-------|-------|-------|-----------|
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
|  |  |  |  |  |  |  | $ - |
| TOTAL |  | $ - | $ - | $ - | $ - | $ - | $ - |

Signature:_____          Date:_____

Approved by:_____          Date:_____

(1) SUBMIT RECEIPTS FOR THE AMOUNTS TO BE REIMBURSED.

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.*

**APPENDIX C: Expense Report Approval Authority**

| Expense Incurred By: | Expense Approved By: |
|---|---|
| Board Member | Chairman or Authorized Representative |
| Board Personnel | Executive Director or Authorized Representative |
| Board Advisors | Executive Director or Authorized Representative |
| Executive Director | Chairman or Authorized Representative |
| Chairman | Executive Director or Authorized Representative |

*Expense policy applies only to contractors whose contracts specify they will be able to reimburse listed expenses.

**Appendix B-6 -** Amendment No. 3

VIA E-MAIL: jaime.elkoury@promesa.gov


December 11, 2018

Jaime A. El Koury, Esq.
General Counsel
Financial Oversight and Management Board for Puerto Rico


**Subject:     Amendment No. 3 to Letter of Engagement for Duff & Phelps, LLC-
Disputes & Investigations Engagement: Independent Forensic Analysis Team
for the Financial Oversight and Management Board for Puerto Rico**


Dear Mr. El Koury:

This letter amends the Letter of Engagement dated January 31, 2018 (as amended by
Amendment No. 1 dated March 31, 2018 and Amendment No. 2 dated August 16, 2018, the
"Engagement") between Duff & Phelps, LLC ("D&P" or "we") and the Financial Oversight and
Management Board for Puerto Rico ("FOMB" or "you" or "Client") as follows:

1.     Amendment No. 2 includes an attachment that describes the financial and accounting
forensic analysis services that D&P must render under the Engagement (the "Scope of
Services").

2.     At the request of the FOMB, D&P will assume the role of Project Manager over the work
contemplated under the Scope of Services.  The assumption by D&P of the role of Project
Manager will supplement, but not replace, those enumerated responsibilities D&P currently has
under the Scope of Services.

        D&P agrees that it will provide the FOMB with the following Title III work product (the
"Work Product") in connection with the bank accounts of all the government entities included in
the list attached hereto (the "Priority List") on or before February 4, 2018 (the "Deadline"): the
bank account balances of cash and investment accounts as of June 30, 2018 (the "Measurement
Date") segregated by unrestricted and restricted designations, as to which D&P will effect
validation procedures such that D&P provides by the Deadline its professional opinion thereon,
subject to standard disclosures and exceptions.

        D&P acknowledges that the Work Product includes the Commonwealth of Puerto Rico,
including the Treasury Single Accounts ("TSA").  Title III entities have been identified for D&P
by the FOMB's attorneys.  D&P acknowledges and agrees that the Work Product is an essential
component for the creditor negotiations that FOMB and its advisors are engaged in.

The parties acknowledge that completion of the Work Product by the Deadline is contingent on the quality and timeliness of the responses of the Account Holders ("AH") and Financial Institutions ("FI") to the letters and other inquiries from the FOMB as well as the FOMB's continued ability to enter and process information in the TeamConnect database on a timely basis, provided that D&P will use its best commercial efforts, including the addition of personnel, to complete the Work Product by the Deadline. The parties also acknowledge that after the Deadline, D&P may continue to require additional Title III information and analysis, where responses from AH and FI material responses were incomplete.

3.    In its role as Project Manager, D&P agrees to:

   a.  have a continuing physical presence at the Clients' office in San Juan, Puerto Rico;

   b.  provide direct supervision to the Clients review and data entry staff assigned to the Project;

   c.  provide direct assistance by performing the review function for AH included in the Priority List, including assessment of the completeness and sufficiency of AH responses and develop an open item list and tracking of secondary AH responses;

   d.  coordinate Project Management activities with the Client staff, who will work with D&P and interface with the representatives of government entities and financial institutions;

   e.  D&P's role of Project Manager will also include the responsibility to initiate, manage and download for processing, the Financial Institution letters for the Account Holders;

   f.  provide weekly project status updates to the Client; and

   g.  provide other forms of services as requested and mutually agreed upon in writing.

4.    D&P's estimate of its incremental fees for its services hereunder is $50,000 per week effective the week beginning November 5, 2018 through the Deadline, provided that billings will be based on actual hours worked in accordance with the rates specified in Attachment II of the Engagement.

5.    D&P acknowledges and agrees that all fees and expenses payable under the Engagement (including this Amendment No. 3) as of November 1, 2018 will be paid through the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") Title III proceeding filed on behalf of the Commonwealth of Puerto Rico that is pending in the United States District Court for the District of Puerto Rico, No. 17 BK 3283-LTS.  Fees and expenses payable for work related to each of the other Title III debtors, that is, ERS (No. 17 BK 3283-LTS), HTA (No. 17 BK 3567 LTS) and PREPA (No. 17 BK 4780-LTS) shall paid through the PROMESA Title III

proceeding of the corresponding entity.  We have familiarized ourselves with the currently applicable processes and guidelines relevant to submitting monthly statements and interim fee applications for payment of fees and expenses through the Title III proceeding, including the Court's orders addressing the procedures for interim compensation and reimbursement of expenses of professionals.  We acknowledge and agree to be paid pursuant to such processes and guidelines

6.      Except as set forth herein the Engagement Letter remains in full force and effect in accordance with its terms.


[Signature page follows.]


Yours sincerely,


James Feltman
Managing Director
Disputes & Investigations
Duff & Phelps, LLC

Attachment


                                        Agreed and Accepted by:

                                        **Financial and Oversight Management
                                        Board for Puerto Rico**


                                        Signed:        Natalie A. Jaresko
                                        Title:         Executive Director
                                        Date:

In re: PROMESA Independent Forensic Analysis

**Exhibit A**
Prioritized Entity List
*As of November 16, 2018*

| Ag# | Entity Name (clean) | Priority Type |
|-----|---------------------|---------------|
| 8 | Oficina Contralor | Commonwealth |
| 10 | Tribunal General de Justicia | Commonwealth |
| 11 | Comision para la Seguridad en el Transito | Commonwealth |
| 12 | Oficina de Asuntos de la Juventud | Commonwealth |
| 14 | Junta de Calidad Ambiental | Commonwealth |
| 15 | Oficina Gobernador | Commonwealth |
| 16 | Oficina de Gerencia y Presupuesto | Commonwealth |
| 18 | Junta de Planificacion | Commonwealth |
| 19 | Junta Apel. sobre Const. y Lot | Commonwealth |
| 21 | Agencia Estatal para el Manejo de Emergencias y Administracion de Desastres | Commonwealth |
| 22 | Oficina Comisionado de Seguros | Commonwealth |
| 23 | Departamento de Estado | Commonwealth |
| 24 | Departamento de Hacienda | Commonwealth |
| 25 | Asignaciones bajo la Custodia de Hacienda | Commonwealth |
| 26 | Administracion Sis Ret Gob Y Jud | Commonwealth |
| 27 | Oficina Rec.Hum. de ELA (ORHELA) | Commonwealth |
| 28 | Comision Estatal de Elecciones | Commonwealth |
| 29 | Administracion de Asuntos Federales | Commonwealth |
| 30 | Oficina de Administracion y Transformacion de los Recursos Humanos | Commonwealth |
| 31 | Administracion de Servicios Generales | Commonwealth |
| 34 | Comision de Investigacion, Procesamiento y Apelacion | Commonwealth |
| 35 | Oficina de Exencion Contributiva Industrial | Commonwealth |
| 36 | Oficina Comisionado de Asuntos Municipales | Commonwealth |
| 37 | Comision Derechos Civiles | Commonwealth |
| 38 | Departamento de Justicia | Commonwealth |
| 40 | Departamento de Policia | Commonwealth |
| 42 | Cuerpo de Bomberos | Commonwealth |
| 43 | Guardia Nacional | Commonwealth |
| 45 | Departamento de Seguridad Publica | Commonwealth |
| 49 | Departamento de Transportacion y Obras Publicas | Commonwealth |
| 50 | Departamento de Recursos Naturales y Ambientales | Commonwealth |
| 55 | Departamento de Agricultura | Commonwealth |
| 60 | Oficina Procurador Ciudadano | Commonwealth |
| 62 | Comision de Desarrollo Cooperativo | Commonwealth |
| 65 | Comision de Servicio Publico | Commonwealth |
| 66 | Autoridad de Carreteras y Transportacion | HTA |
| 67 | Departamento Trabajo y Recursos Humanos | Commonwealth |
| 68 | Junta de Relaciones Trabajo | Commonwealth |
| 69 | Departamento de Asuntos Consumidor | Commonwealth |
| 70 | Corporacion Fondo Seguro Estado | Commonwealth |
| 71 | Departamento de Salud | Commonwealth |
| 75 | Oficina Comisionado de Instituciones Financieras | Commonwealth |
| 78 | Departamento de la Vivienda | Commonwealth |
| 79 | Administracion de Compensaciones por Accidentes de Automoviles | Commonwealth |
| 81 | Departamento de Educacion | Commonwealth |
| 82 | Instituto de Cultura Puertorriquena | Commonwealth |
| 87 | Departamento de Recreacion y Deportes | Commonwealth |
| 89 | Administracion de la Industria y el Deporte Hipico | Commonwealth |
| 90 | Administracion de Servicios Medicos | Commonwealth |
| 91 | Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | ERS |
| 95 | Administracion de Servicios de Salud Mental y Contra la Adiccion | Commonwealth |

| | | |
|---|---|---|
| 96 | Oficina Procuradora de las Mujeres | Commonwealth |
| 100 | Asamblea Legislativa | Commonwealth |
| 105 | Comision Industrial | Commonwealth |
| 106 | Administracion de Vivienda Publica | Commonwealth |
| 109 | Escuela de Artes Plasticas y Diseno | Commonwealth |
| 119 | Departamento de Desarrollo Economico y Comercio | Commonwealth |
| 120 | Oficina Procurador Veterano | Commonwealth |
| 121 | Junta de Gobierno Servicio 9-1-1 | Commonwealth |
| 122 | Departamento de la Familia | Commonwealth |
| 123 | Administracion de Familias y Ninos | Commonwealth |
| 124 | Administracion de Sustento de Menores | Commonwealth |
| 126 | Administracion de Rehabilitacion Vocacional | Commonwealth |
| 127 | Administracion de Desarrollo Socioeconomico de la Familia | Commonwealth |
| 132 | Asuntos de Energia | Commonwealth |
| 133 | Administracion de Recursos Naturales | Commonwealth |
| 137 | Departamento de Correccion y Rehabilitacion | Commonwealth |
| 138 | Fideicomiso Institucional de la Guardia Nacional | Commonwealth |
| 139 | Junta de Libertad Bajo Palabra | Commonwealth |
| 141 | Junta Reglamentadora de Telecomunicaciones | Commonwealth |
| 152 | Oficina Procurador de las Personas de Edad Avanzada | Commonwealth |
| 153 | Oficina Producador Personas Impedimentos | Commonwealth |
| 155 | Oficina Estatal de Conservacion Historica | Commonwealth |
| 161 | Autoridad para el Financiamiento de la Infraestructura | Commonwealth |
| 162 | Autoridad de Edificios Publicos | Commonwealth |
| 165 | Autoridad de Tierras | Commonwealth |
| 166 | Compania de Fomento Industrial | Commonwealth |
| 167 | Compania para el Desarrollo Integral de la Peninsula de Cantera | Commonwealth |
| 168 | Autoridad de los Puertos | Commonwealth |
| 169 | Autoridad de Energia Electrica | PREPA |
| 172 | Banco Gubernamental de Fomento para Puerto Rico | Commonwealth |
| 174 | Autoridad Metropolitana de Autobuses | Other |
| 176 | Universidad de Puerto Rico | Commonwealth |
| 177 | Administracion de Terrenos | Commonwealth |
| 180 | Compania de Turismo | Commonwealth |
| 181 | Administracion Desarrollo Laboral | Commonwealth |
| 184 | Autoridad de Desperdicios Solidos | Commonwealth |
| 186 | Autoridad de Conservacion y Desarrollo de Culebra | Commonwealth |
| 187 | Administracion de Seguros de Salud | Commonwealth |
| 188 | Corporacion Centro Cardiovascular y el Caribe | Commonwealth |
| 189 | Instituto de Ciencias Forenses | Commonwealth |
| 191 | Corporacion de las Artes Musicales | Commonwealth |
| 192 | Corporacion de Centro de Bellas Artes | Commonwealth |
| 193 | Oficina de etica Gubernamental | Commonwealth |
| 195 | Banco de Desarrollo Economico para Puerto Rico | Commonwealth |
| 196 | Corporacion para la Difusion Publica | Commonwealth |
| 198 | Corporacion de Seguros Agricolas | Commonwealth |
| 200 | Panel sobre el Fiscal Especial Independiente | Commonwealth |
| 208 | Aportaciones a los Municipios | Commonwealth |
| 211 | Autoridad para el Financiamiento de Facilidades Industriales, Turisticas, Educativas, Media | Commonwealth |
| 215 | Corporacion de Conservatorio de Musica | Commonwealth |
| 217 | Oficina de Servicios con Antelacion al Juicio | Commonwealth |
| 220 | Salud Correccional | Commonwealth |
| 221 | Negociado Cuerpo de Emergencias Medicas | Commonwealth |
| 224 | Comision Conjunta Sobre Informes Especiales Contralor | Commonwealth |
| 226 | Comision Especial Conjunta de Fondos Legislativos | Commonwealth |
| 229 | Oficina COORD GEN COM ESPECIALES PR | Commonwealth |
| 231 | Oficina Procurador Paciente | Commonwealth |
| 235 | Autoridad para el Financiamiento de la Vivienda | Commonwealth |
| 238 | Autoridad de Ponce | Commonwealth |

| | | |
|---|---|---|
| 241 | Administracion para el Cuidado y Desarrollo Integral de la Ninez | Commonwealth |
| 258 | Compania de Comercio y Exportacion | Commonwealth |
| 264 | Corporacion Proyecto ENLACE Cano Martin Pena | Commonwealth |
| 265 | Autoridad para el Redesarrollo de los Terrenos y Facilidades de la Estacion Naval Roosevelt | Commonwealth |
| 266 | Oficina Asuntos Seguridad Publica | Commonwealth |
| 268 | Instituto de Estadisticas | Commonwealth |
| 273 | Oficina de Gerencia de Permisos | Commonwealth |
| 274 | Oficina Inspector Gen. Permisos | Commonwealth |
| 276 | Autoridad para las Alianzas Publico Privadas | Commonwealth |
| 277 | Administracion para el Desarrollo de Empresas Agropecuarias | Commonwealth |
| 278 | Consejo de Educacion | Commonwealth |
| 279 | Comision Apelativa Servicio Publico | Commonwealth |
| 281 | Oficina Contralor Electoral | Commonwealth |
| 285 | Autoridad de Transporte Integrado | Commonwealth |
| 286 | Autoridad Puerto de Ponce | Commonwealth |
| 287 | Corporacion de Centro Regional ELA | Commonwealth |
| 288 | Centro Comprensivo de Cancer | Commonwealth |
| 289 | Comision de Energia | Commonwealth |
| 290 | Oficina Estatal de Politica Publica Energetica | Commonwealth |
| 292 | Oficina Independiente Proteccion al Consumidor | Commonwealth |
| 293 | Centro de Investigaciones Educacion y Servicios Medicos para la Diabetes | Commonwealth |
| 294 | Bosque Modelo | Commonwealth |
| 295 | Autoridad de Asesoria Financiera y Agencia Fiscal | Commonwealth |
| 303 | Autoridad Distrito Centro de Convenciones | Commonwealth |
| 329 | Oficina de Desarrollo Socioeconomico y Comunitario | Commonwealth |
| 928 | Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | ERS |
| 929 | Sistema de Retiro para Maestros | ERS |
| Alt 17 | Asignaciones bajo la Custodia de la Oficina de Gerencia y Presupuesto | Commonwealth |
| n/a | Corporacion de Fondo de Interes Apremienta | COFINA |
| n/a | Loteria Electronica | |
| n/a | Negociado de la Policia | Commonwealth |
| n/a | Maritime Shipping Authority | Commonwealth |
| n/a | Negociado de Sistemas de Emergencias 9-1-1 | Commonwealth |
| n/a | Fideicomiso Perpetuo para las Comunidades Especiales | Commonwealth |
| n/a | Interamerican Energy Sources | PREPA |
| n/a | PREPA Holdings | PREPA |
| n/a | PREPA Networks | PREPA |
| n/a | PREPA Retirement System | PREPA |
| n/a | Administracion Sistema de Retiro de Empleados Gobierno | ERS |
| n/a | Commonwealth Election Commission | Commonwealth |
| n/a | Court of Appeals | Commonwealth |
| n/a | Court of First Instance | Commonwealth |
| n/a | House of Representatives | Commonwealth |
| n/a | Traditional Lottery | Commonwealth |
| n/a | Unemployment Insurance Fund | Commonwealth |
| n/a | Musical Arts and Stagecraft Corporation | Commonwealth |
| n/a | Contributions to Municipalities (GRIM)' | Commonwealth |
| n/a | Energy Affairs Office | Commonwealth |
| n/a | Health Advocate Office | Commonwealth |
| n/a | Junta de Supervision y Administracion Financiera | Commonwealth |
| n/a | Negociado de Investigaciones Especiales | Commonwealth |
| n/a | Oficina Administracion Tribunales | Commonwealth |
| n/a | Oficina de Servicios Legislativos | Commonwealth |
| n/a | Oficina Procurador General | Commonwealth |
| n/a | Secretaria de la Gobernacion | Commonwealth |
| n/a | Sistemas de Informacion de Justicia Criminal | Commonwealth |
| n/a | Superintendencia Capitolio | Commonwealth |
| n/a | Tribunal Supremo | Commonwealth |
| n/a | Senado | Commonwealth |

| n/a | The Commonwealth of Puerto Rico | Commonwealth |
| n/a | Administracion Sistema de Retiro de la Judicatura | ERS |
| n/a | Corporacion de Industrias de Ciegos, Personas Mentalmente Retardadas y Otras Persona | Commonwealth |

**Appendix C: Project Information**

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

**Appendix C-1-** Title III Entities

| Original Title III Priority Entity Name (as provided by Proskauer) | Category | Changes through AH Review Process |
|---|---|---|
| Administracion de Asuntos Federales | Commonwealth | |
| Administracion de Compensaciones por Accidentes de Automoviles | Commonwealth | |
| Administracion de Desarrollo Socioeconomico de la Familia | Commonwealth | |
| Administracion de Familias y Ninos | Commonwealth | |
| Administracion de la Industria y el Deporte Hipico | Commonwealth | |
| Administracion de Recursos Naturales | Commonwealth | |
| Administracion de Rehabilitacion Vocacional | Commonwealth | |
| Administracion de Seguros de Salud | Commonwealth | |
| Administracion de Servicios de Salud Mental y Contra la Adiccion | Commonwealth | |
| Administracion de Servicios Generales | Commonwealth | |
| Administracion de Servicios Medicos | Commonwealth | |
| Administracion de Sustento de Menores | Commonwealth | |
| Administracion de Terrenos | Commonwealth | |
| Administracion de Vivienda Publica | Commonwealth | |
| Administracion Desarrollo Laboral | Commonwealth | |
| Administracion para el Cuidado y Desarrollo Integral de la Ninez | Commonwealth | |
| Administracion para el Desarrollo de Empresas Agropecuarias | Commonwealth | |
| Administracion Sis Ret Gob Y Jud | Commonwealth | Duplicate of Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura (removed from list) |
| Administracion Sistema de Retiro de Empleados Gobierno | ERS | |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | ERS | |
| Administracion Sistema de Retiro de la Judicatura | ERS | |
| Agencia Estatal para el Manejo de Emergencias y Administracion de Desastres | Commonwealth | |
| Aportaciones a los Municipios | Commonwealth | |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | ERS | |
| Asamblea Legislativa | Commonwealth | |
| Asignaciones bajo la Custodia de Hacienda | Commonwealth | |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| | | |
|---|---|---|
| Asignaciones bajo la Custodia de la Oficina de Gerencia y Presupuesto | Commonwealth | |
| Asuntos de Energia | Commonwealth | Office within Departamento de Desarrollo Economico y Comercio (removed from list) |
| Autoridad de Asesoria Financiera y Agencia Fiscal | Commonwealth | |
| Autoridad de Carreteras y Transportacion | HTA | |
| Autoridad de Conservacion y Desarrollo de Culebra | Commonwealth | |
| Autoridad de Desperdicios Solidos | Commonwealth | |
| Autoridad de Edificios Publicos | Commonwealth | |
| Autoridad de Energia Electrica | PREPA | |
| Autoridad de los Puertos | Commonwealth | |
| Autoridad de Ponce | Commonwealth | |
| Autoridad de Tierras | Commonwealth | |
| Autoridad de Transporte Integrado | Commonwealth | |
| Autoridad Distrito Centro de Convenciones | Commonwealth | |
| Autoridad Metropolitana de Autobuses | Other | |
| Autoridad para el Financiamiento de Facilidades Industriales, Turisticas, Educativas, Medicas y de Control Ambiental | Commonwealth | |
| Autoridad para el Financiamiento de la Infraestructura | Commonwealth | |
| Autoridad para el Financiamiento de la Vivienda | Commonwealth | |
| Autoridad para la Redesarrollo de los Terrenos y Facilidades de la Estacion Naval Roosevelt Roads | Commonwealth | |
| Autoridad para las Alianzas Publico Privadas | Commonwealth | |
| Autoridad Puerto de Ponce | Commonwealth | |
| Banco de Desarrollo Economico para Puerto Rico | Commonwealth | |
| Banco Gubernamental de Fomento para Puerto Rico | Commonwealth | |
| Bosque Modelo | Commonwealth | |
| Centro Comprensivo de Cancer | Commonwealth | |
| Centro de Investigaciones Educacion y Servicios Medicos para la Diabetes | Commonwealth | |
| Comision Apelativa Servicio Publico | Commonwealth | |
| Comision Conjunta Sobre Informes Especiales Contralor | Commonwealth | |
| Comision de Desarrollo Cooperativo | Commonwealth | |
| Comision de Energia | Commonwealth | |
| Comision de Investigacion, Procesamiento y Apelacion | Commonwealth | |
| Comision de Servicio Publico | Commonwealth | |
| Comision Derechos Civiles | Commonwealth | |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| | | |
|---|---|---|
| Comision Especial Conjunta de Fondos Legislativos | Commonwealth | |
| Comision Estatal de Elecciones | Commonwealth | |
| Comision Industrial | Commonwealth | |
| Comision para la Seguridad en el Transito | Commonwealth | |
| Commonwealth Election Commission | Commonwealth | Duplicate of Oficina Contralor Electoral (removed from list) |
| Compania de Comercio y Exportacion | Commonwealth | |
| Compania de Fomento Industrial | Commonwealth | |
| Compania de Turismo | Commonwealth | |
| Compania para el Desarrollo Integral de la Peninsula de Cantera | Commonwealth | |
| Consejo de Educacion | Commonwealth | |
| Contributions to Municipalities (GRIM)' | Commonwealth | Entity name per account holder: Aportaciones a los Municipios (name included in list) |
| Corporacion Centro Cardiovascular y el Caribe | Commonwealth | |
| Corporacion de Centro de Bellas Artes | Commonwealth | |
| Corporacion de Centro Regional ELA | Commonwealth | |
| Corporacion de Conservatorio de Musica | Commonwealth | |
| Corporacion de Fondo de Interes Apremienta | COFINA | |
| Corporacion de Industrias de Ciegos, Personas Mentalmente Retardadas y Otras Personas Incapacitadas | Commonwealth | |
| Corporacion de las Artes Musicales | Commonwealth | |
| Corporacion de Seguros Agricolas | Commonwealth | |
| Corporacion Fondo Seguro Estado | Commonwealth | |
| Corporacion para la Difusion Publica | Commonwealth | |
| Corporacion Proyecto ENLACE Cano Martin Pena | Commonwealth | |
| Court of Appeals | Commonwealth | |
| Court of First Instance | Commonwealth | |
| Cuerpo de Bomberos | Commonwealth | |
| Departamento de Agricultura | Commonwealth | |
| Departamento de Asuntos Consumidor | Commonwealth | |
| Departamento de Correccion y Rehabilitacion | Commonwealth | |
| Departamento de Desarrollo Economico y Comercio | Commonwealth | |
| Departamento de Educacion | Commonwealth | |
| Departamento de Estado | Commonwealth | |
| Departamento de Hacienda | Commonwealth | |
| Departamento de Justicia | Commonwealth | |

| | | |
|---|---|---|
| Departamento de la Familia | Commonwealth | |
| Departamento de la Vivienda | Commonwealth | |
| Departamento de Policia | Commonwealth | |
| Departamento de Recreacion y Deportes | Commonwealth | |
| Departamento de Recursos Naturales y Ambientales | Commonwealth | |
| Departamento de Salud | Commonwealth | |
| Departamento de Seguridad Publica | Commonwealth | |
| Departamento de Transportacion y Obras Publicas | Commonwealth | |
| Departamento Trabajo y Recursos Humanos | Commonwealth | |
| Energy Affairs Office | Commonwealth | Duplicative of the Comision de Energia (removed from list) |
| Escuela de Artes Plasticas y Diseno | Commonwealth | |
| Fideicomiso Institucional de la Guardia Nacional | Commonwealth | |
| Fideicomiso Perpetuo para las Comunidades Especiales | Commonwealth | |
| Guardia Nacional | Commonwealth | |
| Health Advocate Office | Commonwealth | Duplicative of the Oficina de Procurador del Paciente Beneficiario de la Reforma de Salud (removed from list) |
| House of Representatives | Commonwealth | |
| Instituto de Ciencias Forenses | Commonwealth | |
| Instituto de Cultura Puertorriquena | Commonwealth | |
| Instituto de Estadisticas | Commonwealth | |
| Interamerican Energy Sources | PREPA | |
| Junta Apel. sobre Const. y Lot | Commonwealth | Entity name per account holder: Junta Apelacion sobre Construcciones y Lotificaciones (name included in list) |
| Junta de Calidad Ambiental | Commonwealth | |
| Junta de Gobierno Servicio 9-1-1 | Commonwealth | |
| Junta de Libertad Bajo Palabra | Commonwealth | |
| Junta de Planificacion | Commonwealth | |
| Junta de Relaciones Trabajo | Commonwealth | |
| Junta de Supervision y Administracion Financiera | Commonwealth | |
| Junta Reglamentadora de Telecomunicaciones | Commonwealth | |
| Loteria Electronica | Commonwealth | |
| Maritime Shipping Authority | Commonwealth | Entity name per Account Holder: Autoridad de Transporte Maritimo (name included in list) |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| | | |
|---|---|---|
| Musical Arts and Stagecraft Corporation | Commonwealth | Duplicative of Corporacion de las Artes Musicales (removed from list) |
| Negociado Cuerpo de Emergencias Medicas | Commonwealth | |
| Negociado de Investigaciones Especiales | Commonwealth | |
| Negociado de la Policia | Commonwealth | |
| Negociado de Sistemas de Emergencias 9-1-1 | Commonwealth | Merged with Junta de Gobierno Servicio 9-1-1 (removed from list) |
| Oficina Administracion Tribunales | Commonwealth | |
| Oficina Asuntos Seguridad Publica | Commonwealth | |
| Oficina Comisionado de Asuntos Municipales | Commonwealth | |
| Oficina Comisionado de Instituciones Financieras | Commonwealth | |
| Oficina Comisionado de Seguros | Commonwealth | |
| Oficina Contralor | Commonwealth | |
| Oficina Contralor Electoral | Commonwealth | |
| Oficina COORD GEN COM ESPECIALES PR | Commonwealth | Per discussions with O&B, entity does not exist (removed from list) |
| Oficina de Administracion y Transformacion de los Recursos Humanos | Commonwealth | |
| Oficina de Asuntos de la Juventud | Commonwealth | |
| Oficina de Desarrollo Socioeconomico y Comunitario | Commonwealth | |
| Oficina de etica Gubernamental | Commonwealth | |
| Oficina de Exencion Contributiva Industrial | Commonwealth | |
| Oficina de Gerencia de Permisos | Commonwealth | |
| Oficina de Gerencia y Presupuesto | Commonwealth | |
| Oficina de Servicios con Antelacion al Juicio | Commonwealth | |
| Oficina de Servicios Legislativos | Commonwealth | |
| Oficina Estatal de Conservacion Historica | Commonwealth | |
| Oficina Estatal de Politica Publica Energetica | Commonwealth | |
| Oficina Gobernador | Commonwealth | |
| Oficina Independiente Proteccion al Consumidor | Commonwealth | |
| Oficina Inspector Gen. Permisos | Commonwealth | |
| Oficina Procurador Ciudadano | Commonwealth | |
| Oficina Procurador de las Personas de Edad Avanzada | Commonwealth | |
| Oficina Procurador General | Commonwealth | |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| | | |
|---|---|---|
| Oficina Procurador Paciente | Commonwealth | Entity name per account holder: Oficina de Procurador del Paciente Beneficiario de la Reforma de Salud (name included in list) |
| Oficina Procurador Veterano | Commonwealth | |
| Oficina Procuradora de las Mujeres | Commonwealth | |
| Oficina Producador Personas Impedimentos | Commonwealth | |
| Oficina Rec.Hum. de ELA (ORHELA) | Commonwealth | Entity name per account holder: Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico (name included in list) |
| Panel sobre el Fiscal Especial Independiente | Commonwealth | |
| PREPA Holdings | PREPA | |
| PREPA Networks | PREPA | |
| PREPA Retirement System | PREPA | |
| Salud Correccional | Commonwealth | |
| Secretaria de la Gobernacion | Commonwealth | |
| Senado | Commonwealth | |
| Sistema de Retiro para Maestros | ERS | |
| Sistemas de Informacion de Justicia Criminal | Commonwealth | |
| Superintendencia Capitolio | Commonwealth | |
| The Commonwealth of Puerto Rico | Commonwealth | |
| Traditional Lottery | Commonwealth | |
| Tribunal General de Justicia | Commonwealth | |
| Tribunal Supremo | Commonwealth | |
| Unemployment Insurance Fund | Commonwealth | Entity Name per Account Holder: Fondo de Seguro del Desempleo (name included in list) |
| Universidad de Puerto Rico | Commonwealth | |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

**Appendix C-2-** List of Sources for MDB

**FOMB Related Sources**
- Covered Entities Under Law List
- Sept. 30, 2016 List
- Master List as of Sept. 19, 2018
- List of Agencies / Corps as of Oct. 22, 2018
- List of Agencies / Corps as of Oct. 25, 2018

**Public Sources**
- Agency Budgets
- Directory of Agencies

**AAFAF**
- Account Database as of April 30, 2018
- Requests and Certifications
- AAFAF Due Diligence Ledger as of October 2017

**Hacienda**
- Cuentas Effectivos y Inversiones Agencias
- Informacion Requerida
- Commercial Bank Inventory 2016
- Initial Hacienda Response
- Formal Updated Hacienda Response
- FY18-19 Comparison
- Bank Account Inventory 15-17

**EY / McKinsey**
- Fiscal Plan v3

**Appendix C-3-** Sample Form of AH Request

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 113 of 154

Appendix C3 - Sample AH Request

# Email Draft to AH Letters – Info Request

**To**: Responsible Employee of AH

**CC**: bankAccounts; vizcarrondo@promesa.gov

Subject: FOMB – AH Info Request Letter for [Agency Name]

**Attach**: Letter in PDF, Excel Template

___

Good afternoon,

See attached letter from FOMB Executive Director regarding our request for bank account balances and other financial information.  Please complete the attached Excel template, respond to all questions in a separate letter, and send all communications to bankaccounts@promesa.gov.

Best regards,

**Keyri Williamson**
Process Manager
Financial Oversight & Management Board for Puerto Rico
Keyri.williamson@promesa.gov
 (787) 641-0001 ext. 0344

Appendix C-3 - Sample AH Request

**Government Entity Name:**

*In response to the request letter from the Financial Oversight and Management Board, please confirm the following by checking "Yes"*
*or "No" for each Information Request item. If "No", please provide an explanation why.*

**Information Request #1 — To include in Excel below (at A) and attach in a separate document.**
Yes: ____     No: ____
Explanation: _____

**Information Request #2 — To include in Excel below (at B) based upon Attachment I.**
Yes: ____     No: ____
Explanation: _____

**Information Request #3 — To include in Excel below (at C).**
Yes: ____     No: ____
Explanation: _____

**Information Request #4 — To include in Excel below (at D).**
Yes: ____     No: ____
Explanation: _____

**Information Request #5 — To include in Excel below (at E).**
Yes: ____     No: ____
Explanation: _____

**Information Request #6 — To attach in a separate document.**
Yes: ____     No: ____     N/A: ____
Explanation: _____

**Information Request #7 — To attach in a separate document.**
Yes: ____     No: ____     N/A: ____
Explanation: _____

**Information Request #8 — To attach in a separate document.**
Yes: ____     No: ____     N/A: ____
Explanation: _____

**Information Request #9 — To include in Excel below (at F).**
Yes: ____     No: ____
Explanation: _____

**Attachment II - To attach in a separate document.**
Yes: ____     No: ____
Explanation: _____

| Name | Signature | Date |
|------|-----------|------|

| General Account Information as of June 30, 2018 | | | | | | Restrictions | | | Financial Institution Contact Person | | | Account Holder Contact Person | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B | A | C | A | A | A | E | E | E | D | D | D | | | |
| Account Holder EIN Associated with Account | Bank or Investment Account Number | Financial Institution or Brokerage House | Account Type: Cash Account or Investment Account or Other | Account Description | Cash Accounts: Bank Balance Investments: Investment Value | Restricted: Yes or No | Reason for Restriction | Source of Funds | Name | Email | Phone Number & Extension | Name | Email | Phone Number & Extension |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO**

*José B. Carrión III*
Chair

Members
*Andrew G. Biggs*
*Carlos M. García*
*Arthur J. González*
*José R. González*
*Ana J. Matosantos*
*David A. Skeel, Jr.*

*Natalie A. Jaresko*
Executive Director

**BY ELECTRONIC MAIL**

September 24, 2018

Mr. Antonio Tejera Rocafort
Universidad de Puerto Rico
Av. Dr. José N. Gándara.
San Juan 00931

**Re: Information requested to review bank account balances and other financial information of the Universidad de Puerto Rico ("the Account Holder")**

Dear Mr. Antonio Tejera Rocafort:

In order to understand and evaluate the financial matters of the Government of Puerto Rico, the Oversight Board needs a comprehensive view of the cash position of the Government and its instrumentalities. To further these efforts, pursuant to Section 104(c)(2) of PROMESA, please provide to the Oversight Board the following information:

1. A copy of the chart of accounts, and general ledger or trial balance with the information of the Account Holder's (including their subsidiaries) active bank account(s), which can include unrestricted and restricted cash, and any type of investment accounts, as of June 30, 2018;

2. EIN(s) of the Account Holder as listed in Attachment I;

3. The identity of the financial institution(s) where each of the Account Holder's individual accounts in (1) were maintained as of June 30, 2018;

4. E-Mail and mailing address for financial institution(s) in (3), as well as the contact information of your principal point of contact in each of the financial institution(s);

5. Account Holder's position regarding which accounts in (1), if any, were designated as restricted as of June 30, 2018;

6. Account Holder's documentation supporting claimed restrictions and the underlying account entries in your books and records on accounts in (1) above on June 30, 2018;

Mr. Antonio Tejera Rocafort
September 21, 2018
Page 2 of 2

7. Account Holder's identification, through the provision of documentation or access to same, of the source of funds for accounts claimed as restricted in (6);

8. Account Holder's knowledge of liens claims or encumbrances of any kind which affect the Account Holder's use of account funds identified in (1); and

9. Identity of the source of the funds deposited in each bank account (e.g., appropriations, revenues, fees, or federal funds).

In an effort to ensure visibility of the banking relationships in the Commonwealth of Puerto Rico, please send a Form of Consent to each of the financial institution(s) identified in item (3) above, providing the Oversight Board and its advisors all of the financial information maintained at the financial institution(s) regarding the Account Holder's bank accounts identified in item (1) above. For your convenience, a template of the Form of Consent is attached hereto as Attachment II. Please submit an executed copy of the Form(s) of Consent sent to the financial institution(s) together with the other information that will be furnished to the Oversight Board in accordance with this request.

Please contact Miguel Tulla or José Gómez from the Oversight Board if you have any questions regarding this matter. We appreciate your cooperation in providing this information to bankaccounts@promesa.gov before end of day on September 28, 2018.

Sincerely,

*Natalie A. Jaresko*
Natalie Jaresko

CC:     Ms. Teresa Fuentes Marimón
        Mr. Raúl Maldonado Gautier
        Mr. Christian Sobrino Vega
        Mr. Omar Rodríguez

Case:17-03283-LTS Doc#:15220-2 Filed:11/20/20 Entered:11/20/20 21:10:28 Desc:
Exhibit B - IFAT Report on Title III Bank Accounts dated March 12, 2019 Page 117 of 154

Appendix C-3 - Sample AH Request

Attachment I

Information provided to the FOMB indicates that as of June 30, 2018, the Account Holder utilized one or more Employer Identification Number(s) ("EIN" or "EINs") as identified below. Kindly confirm that this information is accurate by:

- Correcting for additional EINs the Account Holder uses but are not identified on Attachment I; and
- Marking through the EINs that are identified on Attachment I, but the Account Holder does not use.

We also indicate on Attachment I who within the Account Holder has been identified as the primary contact in dealings with the Financial Institution:

- If accurate, no response is required;
- If a different individual is now the primary contact for the dealings with the Financial Institution, please provide the correct information on Attachment I.

| EIN | Point of Contact | E-Mail | Phone Number |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



Attachment II

[Letterhead of Government Entity]

**[Form of Consent]**

Date:

To:      [FINANCIAL INSTITUTION]

RE:     **Request by the Financial Oversight and Management Board regarding financial
information of the [_____] (the "Account Holder")**

Dear [Principal Point of Contact in Financial Institution]:

We hereby consent that you provide to the Financial Oversight and Management Board for
Puerto Rico ("FOMB") and its advisors all the financial information of the Account Holder held
by your bank, including the following:

1. All cash and investment information held by your institution relating to the Account
   Holder, including online Web Cash access; and

2. All information about any liens, encumbrances or third party claims which could impact
   the Account Holder's access to funds in any securities and/or bank accounts in your
   institution. Information should include accounts held in the name of the Account Holder,
   as well as accounts held for the benefit of (f/b/o) and custodial accounts where the Account
   Holder maintains funds held for the benefit of third parties.

If you have any questions, please call us at (787) _____-_____ or email us at [EMAIL
ADDRESS].

Cordially,

_____

[To be executed by the Executive Officer of the Entity]
Name:
Title:

**Appendix C-4-** Sample Form of FI Request

# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
## FOR PUERTO RICO



*Members*
*Andrew G. Biggs*
*Carlos M. García*
*Arthur J. González*
*José R. González*
*Ana J. Matosantos*
*David A. Skeel, Jr.*

*José B. Carrión III*
Chair

*Natalie A. Jaresko*
Executive Director

**BY ELECTRONIC MAIL**

November [xx], 2018

Ms. Input name
Bank Address
Bank Address

**Re:**     **Request of financial information of the NAME OF THE ENTITY (the "Account Holder")**

Dear Ms. XXXXXXX,:

In order to understand and evaluate the financial matters of the Government of Puerto Rico, the Oversight Board needs a comprehensive view of the cash position of the Government and its instrumentalities. To further these efforts, please provide to the Oversight Board the following information:

1.  All cash and investment information held by your institution relating to the Account Holder as of June 30, 2018, including online access to any cash application on which we can confirm its existence; and

2.  All information about any liens, encumbrances or third party claims which could impact the Account Holder's access to funds in any securities and/or bank accounts in your institution. Information should include accounts held in the name of Account Holder, as well as accounts held for the benefit of (f/b/o) and custodial accounts where Account Holder maintains funds held for the benefit of third parties.

Attached hereto please find the Account Holder's permission to access its financial information held by your institution.

K-2 - Sample FI Request Form

Ms. XXXXXX
November [xx], 2018
Page 2 of 2

Please contact Miguel Tulla from FOMB at 787-641-0001, if you have any questions regarding
this matter. We appreciate your cooperation in providing this information to
bankaccounts@promesa.gov before end of day on [**November 13, 2018**].

Sincerely,

*Natalie A. Jaresko*

Natalie Jaresko

CC:    Ms. Teresa Fuentes
       Mr. Raúl Maldonado
       Mr. Christian Sobrino Vega
       Mr. Omar Rodríguez

**Appendix C-5-** Sample Form of AH Consent Letter



GOBIERNO DE PUERTO RICO
Departamento de Transportación y Obras Públicas
Autoridad Metropolitana de Autobuses

September 27, 2018

To: Government Development Bank
    Of Puerto Rico

**Re: Request by the Financial Oversight and Management Board regarding financial information
of the Metropolitan Bus Authority**

Dear: Customer Service

We hereby consent that you provide to the Financial Oversight and Management Board for Puerto
Rico ("FOMB") and its advisors all the financial information of the Account Holder held by your bank,
including the following:

1. All cash and investment information held by your institution relating to the Account Holder,
   including online Web Cash access; and

2. All information about any liens, encumbrances or third party claim which could impact the
   Account Holder's access to fund in any securities and /or bank account in your institution.
   Information should include accounts held in the name of the Account Holder, as well as
   accounts held for the benefit of (f/b/o) and custodial accounts where the Account Holder
   maintains fund held for the benefit of third parties.

If you have any questions, please call us at (787) 294-0500 ext. 3000-3003 or
sadelgado@ama.pr.gov

Cordially,

Santos M. Delgado Marrero
 President and General Manager



37 Ave. De Diego Urb. San Francisco, Río Piedras / Box 195349, San Juan, P.R. 00919-5349
Teléfono 787-294-0500 / Fax 787-751-0527

**Appendix C-6-** Sample Forms of Follow Up Letters AH and FI

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 126 of 154
Appendix C-6 - Sample Form of Follow Up Letter to AH and PE

**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO**



*Members*
*Andrew G. Biggs*
*Carlos M. García*
*Arthur J. González*
*José R. González*
*Ana J. Matosantos*
*David A. Skeel, Jr.*
*José B. Carrión III*
Chair
*Natalie A. Jaresko*
Executive Director

**BY ELECTRONIC MAIL**

[DATE]

[ACCOUNT HOLDER CONTACT]
[ACCOUNT HOLDER ADDRESS]
[ACCOUNT HOLDER PHONE]
[ACCOUNT HOLDER EMAIL]

Re:   **Second Request to the Initial Information requested to review bank account balances and other financial information of the [ACCOUNT HOLDER NAME] (the "Account Holder")**

Dear [ACCOUNT HOLDER CONTACT]:

The Oversight Board sent you an email on [INSERT DATE] regarding the cash and investment balances held by the Account Holder as of June 30, 2018. You responded on behalf of the Account Holder by way of email on [INSERT DATE]. The Oversight Board, as assisted by Duff & Phelps, reviewed the response received and noted some of the Account Holder responses were incomplete. Please find below a table that indicates the initial requests (on the left) and additional information needed (on the right):

| Account Holder Request Letter | Account Holder Response – Complete/Info Missing |
|---|---|
| 1.  A copy of the chart of accounts, and general ledger or trial balance with the information of the Account Holder's active bank account(s), which can include unrestricted and restricted cash, and any type of investment accounts, as of June 30, 2018 | |
| 2.  EIN(s) of the Account Holder as listed in Attachment I | |
| 3.  The identity of the financial institution(s) where each of the Account Holder's individual accounts in (1) were maintained as of June 30, 2018 | |

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   Page 127 of 154
Appendix C-6 - Sample Form of Follow Up Letter to AH and PJ
dated March 12, 2019

| | |
|---|---|
| 4. E-Mail and mailing address for financial institution(s) in (3), as well as the contact information of your principal point of contact in each of the financial institution(s); | |
| 5. Account Holder's position regarding which accounts in (1), if any, were designated as restricted as of June 30, 2018 | |
| 6. Account Holder's documentation supporting claimed restrictions and the underlying account entries in your books and records on accounts in (1) above on June 30, 2018 | |
| 7. Account Holder's identification, through the provision of documentation or access to same, of the source of funds for accounts claimed as restricted in (6); | |
| 8. Account Holder's knowledge of liens, claims or encumbrances of any kind which affect the Account Holder's use of account funds identified in (1); and | |
| 9. Identity of the source of the funds deposited in each bank account (e.g., appropriations, revenues, fees, or federal funds). | |
| 10. Consent letters for financial institutions where accounts are held | |

The information requested herein is requested pursuant to Section 104(c)(2) of PROMESA, which grants the Oversight Board the right to access any information from the Government. Moreover, the information requested is required by the Oversight Board to carry out its responsibilities as representative of the debtor in the Title III proceeding of the [CW, PREPA, HTA, or ERS] before the U.S. District Court for the District of Puerto Rico. The information is an essential component for achieving the confirmation of a plan of adjustment and exiting bankruptcy proceeding.

Please contact Keyri Williamson from the Oversight Board if you have any questions regarding this matter. We appreciate your cooperation in providing the updated information to bankaccounts@promesa.gov before end of day on December 6, 2018.

Sincerely,

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   Page 128 of 154
Appendix C-6 - Sample Form of Follow Up Letter to AH and Fi dated March 12   2019

Natalie Jaresko


CC:     Ms. Teresa Fuentes
        Mr. Raul Maldonado
        Mr. Christian Sobrino
        Mr. Omar Rodriguez

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 129 of 154
Appendix C-6 - Sample Form of Follow Up Letter to AH and FI

Good Morning,

See attached letter regarding an expedited request for a meeting regarding financial institution access to government account reporting. Please respond by the date indicated in the attached letter by sending all communications to bankaccounts@promesa.gov.

Regards,

**Document Review Administrator**
Independent Forensic Analysis Task
Financial Oversight & Management Board for Puerto Rico
bankaccounts@promesa.gov
(787) 641-0001 ext. 0344

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 130 of 154
Appendix C-8 - Sample Form of Follow Up Letter to AH and FI

# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
## FOR PUERTO RICO



*Members*

*Andrew G. Biggs*
*Carlos M. García*
*Arthur J. González*

*José R. González*
*Ana J. Matosantos*
*David A. Skeel, Jr.*

*Natalie A. Jaresko*
Executive Director

*José B. Carrión III*
Chair

**BY ELECTRONIC MAIL**

December [●], 2018

[INSERT FI CONTACT],

The Financial Oversight Management Board of Puerto Rico ("FOMB") has provided to [INSERT FI] (the "Financial Institution") consent letters from account holders which grant to the FOMB access to certain reporting features at the Financial Institution.

The FOMB and Duff & Phelps wish to schedule a meeting, in person or by call, with senior banking officers and/or relationship managers at the Financial Intuition on or prior to the week of January 7, 2018 in order to expedite such access. The nature of this request  relates to the plan of adjustment of the various government entities under a PROMESA Title III proceeding and is time-sensitive and urgent.

We understand the Financial Institution to hold accounts for the following government agencies:

[INSERT AH 1]
[INSERT AH 2]

…

[INSERT AH N]

Signed consent letters permit the FOMB read-only access to financial institution reporting systems. The consent letter does not give the FOMB control of funds.

Please contact Keyri Williamson from FOMB at (787) 641-0001 ext. 0344, if you have any questions regarding this matter. We appreciate your cooperation in providing this information to bankaccounts@promesa.gov before end of day on December 26, 2018.

Sincerely,

Natalie Jaresko

CC:

      Ms. Teresa Fuentes

      Mr. Raul Maldonado

      Mr. Christian Sobrino

      Mr. Omar Rodriguez

Case:17-03283-LTS   Doc#:15220-2   Filed:11/20/20   Entered:11/20/20 21:10:28   Desc:
Exhibit B - IFAT Report on Title III Bank Accounts   dated March 12   2019   Page 132 of 154

Appendix C-6 - Sample Form of Follow Up Letter to AH and FI

[ADD TO ACCOUNT HOLDER LETTERHEAD]


[INSERT DATE]

[INSERT FI CONTACT]
[INSERT FI CONTACT POSITION]
[INSERT DIVISION]
[INSERT FI]


**Request by the Financial Oversight and Management Board regarding financial information of the [ACCOUNT HOLDER] at [INSERT FI]**

Dear [INSERT FI CONTACT]:

We hereby consent that you provide to the Financial Oversight and Management Board for Puerto Rico ("FOMB") and its advisors all the financial information of the Account Holder held by your bank, including the following:

1. All cash and investment information held by your institution relating to the Account Holder, including online Web Cash access; and,
2. All information about liens, encumbrances or third-party claims which could impact the Account Holder's access to funds in any securities and/or bank accounts in your institution. Information should include accounts held in the name of the Account Holder, as well as accounts held for the benefit of (f/b/o) and custodial accounts where the Account Holder maintains funds held for the benefit of third parties.

If you have any questions, please call us [INSERT ACCOUNT HOLDER NUMBER] or email us at [INSERT ACCOUNT HOLDER EMAIL]


Cordially,



[INSERT ACCOUNT HOLDER CONTACT]
[INSERT ACCOUNT HOLDER CONTACT POSITION]

Appendix C-6 - Sample Form of Follow Up Letter to AH and FI

# FINANCIAL OVERSIGHT AND MANAGEMENT BOARD

## FOR PUERTO RICO



*Members*

*Andrew G. Biggs*
*Carlos M. García*
*Arthur J. González*

*José R. González*
*Ana J. Matosantos*
*David A. Skeel, Jr.*

*José B. Carrión III*
Chair

*Natalie A. Jaresko*
Executive Director

**BY ELECTRONIC MAIL**

January 2, 2019

Ms. Mary Parkhouse
US Bank Trust National Association
Global Corporate Trust Services
One Federal Street, 10th Floor
Boston, MA 02110

The Financial Oversight Management Board of Puerto Rico ("FOMB") has provided to US Bank (the "Financial Institution") consent letters from account holders which grant to the FOMB access to certain reporting features at the Financial Institution.

The FOMB and Duff & Phelps wish to schedule a meeting, in person or by call, with senior banking officers and/or relationship managers at the Financial Intuition on or prior to the week of January 7, 2019 in order to expedite such access. The nature of this request relates to the plan of adjustment of the various government entities under a PROMESA Title III proceeding and is time-sensitive and urgent.

We understand the Financial Institution to hold accounts for the following government agencies:

Universidad de Puerto Rico
Autoridad para el Financiamiento de la Infraestructura
Autoridad de Energia Electrica
Administracion de Vivienda Publica
Autoridad de Edificios Publicos
Compania de Fomento Industrial

Appendix C-6 - Sample Form of Follow Up Letter to AH and PI

Signed consent letters permit the FOMB read-only access to financial institution reporting systems. The consent letter does not give the FOMB control of funds.

Please contact Keyri Williamson from FOMB at (787) 641-0001 ext. 0344, if you have any questions regarding this matter. We appreciate your cooperation in providing this information to bankaccounts@promesa.gov before end of day on January 4, 2019.

Sincerely,

Natalie Jaresko

CC:
> Ms. Teresa Fuentes
> Mr. Raul Maldonado
> Mr. Christian Sobrino
> Mr. Omar Rodriguez

**Appendix C-7-** List of Non-Puerto Rico Bank Accounts Contacted

Advantage International Bank Corp.
Alliance Capital International Bank
Auramet International LLC
Banplus International Bank, Inc.
Blackheath International LLC
Blue Ocean International LLC
Blue Water International Financing
CAI Capital International, LLC
Caribe International Bank Corporation
Choice Financial International LLC
Consilience Capital International LLC
Digital International Bank, Inc.
Elite International Bank, Inc.
Euro Pacific International Bank LLC
Eximius International LLC
Fairwinds International Bank, LLC
Foreign Exchange Bank Corp.
Instabank International LLC
Interbank International Corporation
International Union Bank LLC
Multibanco International LLC
Noble Bank International  LLC
PAG Financial International LLC
Paytoo International Bank, Inc. (change name to First Finance International Bank, Inc.)
PR Asset Portfolio 2013-1 International, LLC  (Lic # IFE - 01)
PR Asset Portfolio Servicing International, LLC  (Lic # IFE - 02)
Presto International Bank formerly Vigan Banco International
Prisla International LLC
RL Capital International
Santander Consumer International Puerto Rico
South Bank International LLC
Stern International Bank LLC
Sun West Financial Services International, Inc.
Sun West Mortgage Company  LLC
Sun West Property Management International LLC
The Money House
Tolomeo Bank International Corp.
Toro AG Financial International, LLC
Vauban International Bank Corporation
Vestin Bank International

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

**Appendix C-8-** Summary of Title III Values by Account Holder[37]

| Priority Type | AH | Identified | Reconciled |
|---|---|---|---|
| Commonwealth | Departamento de Hacienda | $4,153,278,736 | $4,153,278,736 |
| COFINA | Corporacion de Fondo de Interes Apremienta | $1,218,552,355 | $1,217,979,192 |
| Retirement | Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | $627,942,370 | $618,503,711 |
| Commonwealth | Departamento Trabajo y Recursos Humanos | $622,656,944 | $595,279,353 |
| Commonwealth | Universidad de Puerto Rico | $561,961,864 | $457,347,821 |
| HTA | Autoridad de Carreteras y Transportacion | $552,718,740 | $546,701,247 |
| Commonwealth | Administracion de Vivienda Publica | $480,233,481 | $376,330,006 |
| PREPA | Autoridad de Energia Electrica | $448,945,390 | $429,943,191 |
| Commonwealth | Autoridad para el Financiamiento de la Vivienda | $402,371,341 | $401,270,784 |
| Commonwealth | Tribunal General de Justicia | $385,820,715 | $46,532,381 |
| Commonwealth | Autoridad para el Financiamiento de la Infraestructura | $366,605,268 | $93,882,949 |
| Commonwealth | Administracion de Compensaciones por Accidentes de Automoviles | $222,047,671 | $221,986,641 |
| Commonwealth | Corporacion Fondo Seguro Estado | $128,831,985 | $128,820,318 |
| Commonwealth | Compania de Turismo | $116,075,382 | $90,727,633 |
| Retirement | Sistema de Retiro para Maestros | $114,465,270 | $41,639,052 |
| Commonwealth | Banco de Desarrollo Economico para Puerto Rico | $106,144,401 | $74,771,094 |
| Commonwealth | Loteria Electronica | $87,769,717 | $87,766,541 |
| Commonwealth | Compania de Fomento Industrial | $75,338,499 | $75,187,499 |
| Commonwealth | Administracion para el Desarrollo de Empresas Agropecuarias | $66,411,667 | $66,411,667 |
| Commonwealth | Autoridad de Edificios Publicos | $59,107,040 | $55,583,721 |
| Commonwealth | Centro de Recaudacion de Ingresos Municipales | $55,977,971 | $55,977,971 |
| Commonwealth | Administracion de Sustento de Menores | $55,773,622 | $- |
| Commonwealth | Administracion de Seguros de Salud | $55,138,917 | $55,138,917 |
| Commonwealth | Loteria Tradicional | $48,758,378 | $48,758,378 |
| Commonwealth | Autoridad de Asesoria Financiera y Agencia Fiscal | $37,740,493 | $37,740,493 |
| Commonwealth | Autoridad de los Puertos | $34,444,764 | $33,552,704 |
| Commonwealth | Administracion de Servicios Medicos | $33,865,219 | $27,154 |

---

[37]  63 AH indicated account balances with $0.  D&P did receive corroborative information from the AH or an FI to confirm these assertions.

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| | | | |
|---|---|---|---|
| Commonwealth | Fideicomiso Institucional de la Guardia Nacional | $33,743,290 | $20,869,433 |
| Commonwealth | Centro Comprensivo de Cancer | $27,814,035 | $27,814,035 |
| Commonwealth | Junta de Supervision y Administracion Financiera | $27,368,872 | $- |
| Commonwealth | Junta Reglamentadora de Telecomunicaciones | $26,323,200 | $- |
| Commonwealth | Negociado de la Policia | $23,951,898 | $125,808 |
| Commonwealth | Autoridad Distrito Centro de Convenciones | $21,224,551 | $9,115,848 |
| Commonwealth | Administracion de Terrenos | $19,439,169 | $11,726,196 |
| PREPA | PREPA Retirement System | $18,759,601 | $4,355,279 |
| Commonwealth | Oficina de Servicios Legislativos | $18,583,531 | $- |
| Commonwealth | Autoridad para las Alianzas Publico Privadas | $17,822,074 | $17,822,074 |
| Commonwealth | Asignaciones bajo la Custodia de Hacienda | $16,735,879 | $14,179,821 |
| Commonwealth | Autoridad de Tierras | $16,569,336 | $16,569,336 |
| Commonwealth | Compania de Comercio y Exportacion | $14,812,080 | $713,620 |
| Commonwealth | Junta de Gobierno Servicio 9-1-1 (Same as Negociado de Sistemas de Emergencias 911) | $14,657,469 | $- |
| Commonwealth | Departamento de Desarrollo Economico y Comercio | $14,332,138 | $14,039,276 |
| Commonwealth | Autoridad de Desperdicios Solidos | $12,849,709 | $7,462,920 |
| Commonwealth | House of Representatives | $12,342,293 | $12,342,273 |
| Commonwealth | Corporacion Centro Cardiovascular y el Caribe | $11,125,084 | $9,584,208 |
| Commonwealth | Oficina de etica Gubernamental | $9,120,264 | $8,164 |
| Commonwealth | Departamento de la Vivienda | $8,655,790 | $3,017 |
| Commonwealth | Autoridad de Transporte Integrado | $7,857,613 | $6,050,338 |
| Commonwealth | Oficina Contralor | $6,565,580 | $- |
| Commonwealth | Corporacion de las Artes Musicales | $5,816,823 | $5,816,823 |
| Commonwealth | Comision de Energia | $5,314,719 | $5,314,719 |
| Commonwealth | Corporacion de Seguros Agricolas | $4,931,397 | $611,875 |
| Commonwealth | Administracion de Familias y Ninos | $4,209,880 | $- |
| Commonwealth | Instituto de Estadisticas | $3,962,981 | $265,315 |
| PREPA | PREPA Networks | $3,946,551 | $7,196 |
| Commonwealth | Corporacion Proyecto ENLACE Cano Martin Pena | $3,701,175 | $- |
| Commonwealth | Escuela de Artes Plasticas y Diseno | $3,629,325 | $571,697 |
| Commonwealth | Corporacion de Conservatorio de Musica | $3,268,169 | $- |
| Commonwealth | Corporacion de Centro de Bellas Artes | $3,239,963 | $3,239,963 |
| Commonwealth | Administracion de Desarrollo Socioeconomico de la Familia | $3,069,588 | $- |

| | | | |
|---|---|---|---|
| Commonwealth | Instituto de Cultura Puertorriquena | $2,952,684 | $- |
| Commonwealth | Oficina Estatal de Politica Publica Energetica | $2,906,625 | $2,906,625 |
| Commonwealth | Administracion de Asuntos Federales | $1,960,050 | $- |
| Commonwealth | Autoridad de Transporte Maritimo | $1,884,470 | $- |
| Commonwealth | Instituto de Ciencias Forenses | $1,802,717 | $- |
| Commonwealth | Autoridad para el Redesarrollo de los Terrenos y Facilidades de la Estacion Naval Roosevelt Roads | $1,784,807 | $1,772,746 |
| Commonwealth | Departamento de Correccion y Rehabilitacion | $1,706,649 | $1,706,649 |
| Commonwealth | Comision Especial Conjunta de Fondos Legislativos | $1,697,132 | $1,660,426 |
| Commonwealth | Consejo de Educacion | $1,509,740 | $1,509,740 |
| Commonwealth | Compania para el Desarrollo Integral de la Peninsula de Cantera | $1,375,580 | $296,299 |
| Commonwealth | Corporacion para la Difusion Publica | $1,287,121 | $1,287,121 |
| Commonwealth | Departamento de la Familia | $1,251,258 | $1,201,317 |
| Commonwealth | Departamento de Educacion | $1,047,686 | $- |
| Commonwealth | Autoridad Metropolitana de Autobuses | $1,041,832 | $1,034,926 |
| Commonwealth | Centro de Investigaciones Educacion y Servicios Medicos para la Diabetes | $994,404 | $994,404 |
| Commonwealth | Oficina de Asuntos de la Juventud | $940,753 | $940,753 |
| Commonwealth | Panel sobre el Fiscal Especial Independiente | $769,308 | $769,308 |
| Commonwealth | Administracion de Recursos Naturales | $744,009 | $- |
| Commonwealth | Guardia Nacional | $572,495 | $- |
| Commonwealth | Oficina de Desarrollo Socioeconomico y Comunitario | $366,550 | $366,550 |
| Commonwealth | Departamento de Recreacion y Deportes | $344,283 | $276,846 |
| Commonwealth | Administracion de Rehabilitacion Vocacional | $306,759 | $- |
| Commonwealth | Comision de Desarrollo Cooperativo | $306,679 | $- |
| Commonwealth | Autoridad Puerto de Ponce | $200,740 | $200,740 |
| Commonwealth | Autoridad para el Financiamiento de Facilidades Industriales, Turisticas, Educativas, Medicas y de Control Ambiental | $128,620 | $128,620 |
| Commonwealth | Oficina Independiente Proteccion al Consumidor | $102,513 | $102,513 |
| Commonwealth | Departamento de Estado | $100,951 | $100,951 |
| Commonwealth | Autoridad de Conservacion y Desarrollo de Culebra | $94,949 | $- |
| Commonwealth | Superintendencia Capitolio | $74,451 | $11,231,648 |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| | | | |
|---|---|---|---|
| Commonwealth | Comision Industrial | $65,496 | $- |
| Commonwealth | Comision Estatal de Elecciones | $48,745 | $- |
| PREPA | PREPA Holdings | $45,373 | $- |
| Commonwealth | Bosque Modelo | $29,583 | $- |
| Commonwealth | Oficina Gobernador | $9,896 | $- |
| Commonwealth | Departamento de Recursos Naturales y Ambientales | $7,678 | $7,678 |
| Commonwealth | Departamento de Asuntos Consumidor | $4,426 | $- |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

### Appendix C-9- Components of Table 1 Categories

**COFINA**

| |
|---|
| Corporacion de Fondo de Interes Apremienta |

**Commonwealth**

| |
|---|
| Administracion de Asuntos Federales |
| Administracion de Compensaciones por Accidentes de Automoviles |
| Administracion de Desarrollo Socioeconomico de la Familia |
| Administracion de Familias y Ninos |
| Administracion de la Industria y el Deporte Hipico |
| Administracion de Recursos Naturales |
| Administracion de Rehabilitacion Vocacional |
| Administracion de Seguros de Salud |
| Administracion de Servicios de Salud Mental y Contra la Adiccion |
| Administracion de Servicios Generales |
| Administracion de Servicios Medicos |
| Administracion de Sustento de Menores |
| Administracion de Terrenos |
| Administracion de Vivienda Publica |
| Administracion Desarrollo Laboral |
| Administracion para el Cuidado y Desarrollo Integral de la Ninez |
| Administracion para el Desarrollo de Empresas Agropecuarias |
| Agencia Estatal para el Manejo de Emergencias y Administracion de Desastres |
| Aportaciones a los Municipios |
| Asamblea Legislativa |
| Asignaciones bajo la Custodia de Hacienda |
| Asignaciones bajo la Custodia de la Oficina de Gerencia y Presupuesto |
| Autoridad de Asesoria Financiera y Agencia Fiscal |
| Autoridad de Conservacion y Desarrollo de Culebra |
| Autoridad de Desperdicios Solidos |
| Autoridad de Edificios Publicos |
| Autoridad de los Puertos |
| Autoridad de Ponce |
| Autoridad de Tierras |
| Autoridad de Transporte Integrado |
| Autoridad de Transporte Maritimo |
| Autoridad Distrito Centro de Convenciones |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| |
|---|
| Autoridad Metropolitana de Autobuses |
| Autoridad para el Financiamiento de Facilidades Industriales, Turisticas, Educativas, Medicas y de Control Ambiental |
| Autoridad para el Financiamiento de la Infraestructura |
| Autoridad para el Financiamiento de la Vivienda |
| Autoridad para el Redesarrollo de los Terrenos y Facilidades de la Estacion Naval Roosevelt Roads |
| Autoridad para las Alianzas Publico Privadas |
| Autoridad Puerto de Ponce |
| Banco de Desarrollo Economico para Puerto Rico |
| Banco Gubernamental de Fomento para Puerto Rico |
| Bosque Modelo |
| Centro Comprensivo de Cancer |
| Centro de Investigaciones Educacion y Servicios Medicos para la Diabetes |
| Centro de Recaudacion de Ingresos Municipales |
| Comision Apelativa Servicio Publico |
| Comision Conjunta Sobre Informes Especiales Contralor |
| Comision de Desarrollo Cooperativo |
| Comision de Energia |
| Comision de Investigacion, Procesamiento y Apelacion |
| Comision de Servicio Publico |
| Comision Derechos Civiles |
| Comision Especial Conjunta de Fondos Legislativos |
| Comision Estatal de Elecciones |
| Comision Industrial |
| Comision para la Seguridad en el Transito |
| Compania de Comercio y Exportacion |
| Compania de Fomento Industrial |
| Compania de Turismo |
| Compania para el Desarrollo Integral de la Peninsula de Cantera |
| Consejo de Educacion |
| Corporacion Centro Cardiovascular y el Caribe |
| Corporacion de Centro de Bellas Artes |
| Corporacion de Centro Regional ELA |
| Corporacion de Conservatorio de Musica |
| Corporacion de Industrias de Ciegos, Personas Mentalmente Retardadas y Otras Personas Incapacitadas |
| Corporacion de las Artes Escenico-Musicales de Puerto Rico |
| Corporacion de las Artes Musicales |

| |
|---|
| Corporacion de Seguros Agricolas |
| Corporacion Fondo Seguro Estado |
| Corporacion para la Difusion Publica |
| Corporacion Proyecto ENLACE Cano Martin Pena |
| Court of Appeals |
| Court of First Instance |
| Cuerpo de Bomberos |
| Departamento de Agricultura |
| Departamento de Asuntos Consumidor |
| Departamento de Correccion y Rehabilitacion |
| Departamento de Desarrollo Economico y Comercio |
| Departamento de Educacion |
| Departamento de Estado |
| Departamento de Hacienda |
| Departamento de Justicia |
| Departamento de la Familia |
| Departamento de la Vivienda |
| Departamento de Policia |
| Departamento de Recreacion y Deportes |
| Departamento de Recursos Naturales y Ambientales |
| Departamento de Salud |
| Departamento de Seguridad Publica |
| Departamento de Transportacion y Obras Publicas |
| Departamento Trabajo y Recursos Humanos |
| Escuela de Artes Plasticas y Diseno |
| Fideicomiso Institucional de la Guardia Nacional |
| Fideicomiso Perpetuo para las Comunidades Especiales |
| Fondo de Seguro del Desempleo |
| Guardia Nacional |
| House of Representatives |
| Instituto de Ciencias Forenses |
| Instituto de Cultura Puertorriquena |
| Instituto de Estadisticas |
| Junta Apelacion sobre Construcciones y Lotificaciones |
| Junta de Calidad Ambiental |
| Junta de Libertad Bajo Palabra |
| Junta de Planificacion |
| Junta de Relaciones Trabajo |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| |
|---|
| Junta de Supervision y Administracion Financiera |
| Junta Reglamentadora de Telecomunicaciones |
| Loteria Electronica |
| Loteria Tradicional |
| Negociado Cuerpo de Emergencias Medicas |
| Negociado de Investigaciones Especiales |
| Negociado de la Policia |
| Negociado de Sistemas de Emergencias 9-1-1 |
| Oficina Administracion Tribunales |
| Oficina Asuntos Seguridad Publica |
| Oficina Comisionado de Asuntos Municipales |
| Oficina Comisionado de Instituciones Financieras |
| Oficina Comisionado de Seguros |
| Oficina Contralor |
| Oficina Contralor Electoral |
| Oficina de Administracion y Transformacion de los Recursos Humanos |
| Oficina de Asuntos de la Juventud |
| Oficina de Desarrollo Socioeconomico y Comunitario |
| Oficina de etica Gubernamental |
| Oficina de Exencion Contributiva Industrial |
| Oficina de Gerencia de Permisos |
| Oficina de Gerencia y Presupuesto |
| Oficina de Procurador del Paciente Beneficiario de la Reforma de Salud |
| Oficina de Recursos Humanos del Estado Libre Asociado de Puerto Rico |
| Oficina de Servicios con Antelacion al Juicio |
| Oficina de Servicios Legislativos |
| Oficina Estatal de Conservacion Historica |
| Oficina Estatal de Politica Publica Energetica |
| Oficina Gobernador |
| Oficina Independiente Proteccion al Consumidor |
| Oficina Procurador Ciudadano |
| Oficina Procurador de las Personas de Edad Avanzada |
| Oficina Procurador General |
| Oficina Procurador Veterano |
| Oficina Procuradora de las Mujeres |
| Oficina Producador Personas Impedimentos |
| Panel sobre el Fiscal Especial Independiente |
| Salud Correccional |

| |
|---|
| Secretaria de la Gobernacion |
| Senado |
| Sistemas de Informacion de Justicia Criminal |
| Superintendencia Capitolio |
| The Commonwealth of Puerto Rico |
| Tribunal General de Justicia |
| Tribunal Supremo |
| Universidad de Puerto Rico |

**HTA**

| |
|---|
| Autoridad de Carreteras y Transportacion |

**PREPA**

| |
|---|
| Autoridad de Energia Electrica |
| Interamerican Energy Sources |
| PREPA Holdings |
| PREPA Networks |
| PREPA Retirement System |

**Retirement**

| |
|---|
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura |
| Administracion Sistema de Retiro de Empleados Gobierno |
| Administracion Sistema de Retiro de la Judicatura |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros |
| Sistema de Retiro para Maestros |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

**Appendix C-10- Summary of Bank Accounts Eliminated as Duplicates by Category**

| AH | Category | Value | First Bank |
|---|---|---|---|
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | Retirement | $259,552,451.20 | Banco Popular |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | Retirement | $111,629,026.09 | Banco Popular |
| Departamento de Hacienda | Commonwealth | $87,846,353.46 | Banco Santander |
| Departamento de Hacienda | Commonwealth | $53,095,125.75 | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $53,095,125.75 | Banco Popular |
| Autoridad para el Financiamiento de la Vivienda | Commonwealth | $43,042,119.87 | BDE |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $29,336,674.17 | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $19,449,776.91 | BNY Mellon |
| Departamento de Policia | Commonwealth | $15,925,562.09 | Banco Popular |
| Negociado de Sistemas de Emergencias 9-1-1 | Commonwealth | $14,652,352.72 | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $12,302,377.70 | Banco Popular |
| Departamento de Recreacion y Deportes | Commonwealth | $6,866,748.45 | BDE |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | Retirement | $5,293,157.34 | Banco Popular |
| Sistema de Retiro para Maestros | Retirement | $4,958,888.07 | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $4,958,888.07 | Banco Popular |
| Departamento de Hacienda | Commonwealth | $3,253,748.66 | Banco Popular |
| Departamento Trabajo y Recursos Humanos | Commonwealth | $2,181,954.00 | Banco Popular |
| Oficina de Servicios con Antelacion al Juicio | Commonwealth | $1,693,556.40 | Banco Santander |
| Fondo de Seguro del Desempleo | Commonwealth | $1,603,191.72 | Banco Popular |
| Oficina de Gerencia y Presupuesto | Commonwealth | $1,585,281.61 | Banco Popular |
| Oficina Comisionado de Asuntos Municipales | Commonwealth | $1,585,281.61 | Banco Popular |
| Departamento Trabajo y Recursos Humanos | Commonwealth | $929,353.00 | Banco Popular |
| Oficina Estatal de Politica Publica Energetica | Commonwealth | $863,294.06 | BDE |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | Retirement | $649,436.86 | Banco Popular |
| Departamento de Justicia | Commonwealth | $373,015.26 | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $249,305.91 | Banco Popular |
| Comision para la Seguridad en el Transito | Commonwealth | $191,302.31 | Banco Popular |
| Departamento de Policia | Commonwealth | $125,807.82 | Oriental Bank |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

| | | | |
|---|---|---|---|
| Administracion de Familias y Ninos | Commonwealth | $51,257.17 | Banco Popular |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | Retirement | $46,764.04 | Banco Popular |
| Comision para la Seguridad en el Transito | Commonwealth | $33,581.72 | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $28,178.12 | BNY Mellon |
| Comision para la Seguridad en el Transito | Commonwealth | $23,931.01 | Banco Popular |
| Oficina de Servicios con Antelacion al Juicio | Commonwealth | $13,366.51 | First Bank |
| Junta de Gobierno Servicio 9-1-1 (Same as Negociado de Sistemas de Emergencias 911) | Commonwealth | $9,009.53 | Banco Popular |
| Junta de Gobierno Servicio 9-1-1 (Same as Negociado de Sistemas de Emergencias 911) | Commonwealth | $5,115.96 | Banco Popular |
| Departamento de Hacienda | Commonwealth | $3,176.76 | Banco Santander |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $2,290.08 | BNY Mellon |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $1,541.28 | BNY Mellon |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | Retirement | $423.43 | Banco Popular |
| Compania de Comercio y Exportacion | Commonwealth | $0.29 | BDE |
| Administracion Sistema de Retiro de Empleados Gobierno y la Judicatura | Retirement | $- | Banco Popular |
| Asignaciones bajo la Custodia de Hacienda | Commonwealth | $- | Banco Popular |
| Asignaciones bajo la Custodia de Hacienda | Commonwealth | $- | Banco Popular |
| Administracion de Servicios de Salud Mental y Contra la Adiccion | Commonwealth | $- | Banco Popular |
| Departamento de Justicia | Commonwealth | $- | Banco Popular |
| Oficina de Servicios con Antelacion al Juicio | Commonwealth | $- | Banco Popular |
| Oficina de Servicios con Antelacion al Juicio | Commonwealth | $- | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $- | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $- | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $- | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $- | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $- | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $- | Banco Popular |
| Aportaciones para Pensiones y Seguridad Social - Sistema de Retiro de Maestros | Retirement | $- | Banco Popular |

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018
Appendix C: Project Information

**Appendix C-11- O&B Legal Due Diligence Chart**

Appendix C-11

IFAT Report on Title III Bank Accounts
On Behalf of the FOMB
As of June 30, 2018

Accounts provided for O'Neill & Borges Legal Due Diligence Testing
*Data as of January 28, 2019*

| Account Holder | Financial Institution | Priority Type | Bank Balance | Account Description from AH | Classification | Reason for Restriction per AH | O&B Review Complete? | O&B Comments |
|---|---|---|---|---|---|---|---|---|
| ***Commonwealth*** | | | | | | | | |
| Departamento Trabajo y Recursos Humanos | US Treasury | Commonwealth | $ 581,471,311 | Receives portion of Employers' contributions related to Unemployment tax, paid by employers. The fund are received after the DTRH segregated and processed the fund transfer from account number 030-382068. Unemployment Benefit SDO makes daily drawdowns depends on the Benefit Amount due. | Restricted | Unemployment Insurance (Law 74 1956) | yes - valid | Section 904 of the Social Security Act (42 U.S.C. 1104) established within the US Treasury a trust fund known as the "Unemployment Trust Fund". The Treasury Secretary is authorized to receive and hold in such Trust Fund segregated therein by any State agency from a State unemployment fund. The Treasury Secretary must maintain separate accounting records for the funds deposited by each State agency in the Trust Fund. Section 10 of Act No. 74-1956, as amended, creates a special fund separate from any and all moneys and funds of the CW for the unemployment fund of Puerto Rico. The Secretary of Treasury of the CW shall be treasurer and custodian of the Puerto Rico Unemployment Fund, and maintain three accounts: (1) Clearing Account; (2) the Unemployment Trust Fund and (3) the Benefits Account. All moneys collected by virtue of Act No. 74-1956 shall be deposited in the Clearing Account. Once cleared, the same shall be transferred to the U.S. Treasury Secretary to be credited to the Unemployment Trust Fund (except for all interests, penalties and 10% of the contributions charged to the employers covered by Act 74-1956, which will be deposited in the Auxiliar Special Fund created by such Act 74). The Benefits Account consists of all moneys withdrawn by the CW from the Unemployment Trust Fund for the payment of benefits and refunds to employers. Funds withdrawn from the Unemployment Trust Fund Account may only be used for the payment of benefits (cash benefits payable to individuals with respect to their unemployment, exclusive of expenses of administration) and for refunds employers allowed by Act 74. Therefore these funds are restricted by federal and state statute. |
| Autoridad para el Financiamiento de la Infraestructura | COFINA | Commonwealth | $ 268,824,885 | COFINA Investment | Restricted | Permanent restriction as per Act No. 44 of 1988, as amended | inconclusive | Act 96-2011 amended PRIFAs enabling act to require that PRIFA employ all funds in its Corpus Account to 1) transfer $162.M to ERS for the purchase by ERS of COFINA CABs and 2) use any remaining amounts in the Corpus Account to purchase COFINA CAB bonds. ERS and PRIFA may only sell such COFINA bonds with the approval of GDB. We need to confirm whether the bank balance is the current value of the bonds. Need to confirm with PRIFA whether this account are COFINA bonds held by PRIFA. |
| Tribunal General de Justicia | Citibank | Commonwealth | $ 98,239,269 | escrow account from the Court Justice Department | Restricted | fondos de personas privadas en custodia por casos legales Restricted as Interests on funds from private persons deposited on the Court of Justice. | no - no response | There are no documents available in the database regarding this account. |
| Universidad de Puerto Rico | Banco Popular | Commonwealth | $ 94,215,281 | UPR Inversion | Pooled | Fondos Dotales, Donativos, Fondo de Planta y Programa Federal Préstamos Perkins | inconclusive | As confirmed with the University in a meeting held on January 10, 2019 and the provided documentation, this account contains all of the University's endowment funds established by the University at the request of third-party donors. These funds are to be invested and are restricted for specific uses as per instructions by their respective donors.

The account includes the following endowment funds:

1. Carlota Matienzo Endowment Fund: To be used for an annual grant for a senior-year student in the Bachelor's Elementary Education program that is set to graduate with high honors and has shown a distinct ability to counsel children. The grant was established by the University's Faculty of Education. Principal is to be invested while interest generated must be used for the grant. As of March 1970, the available amount for the Fund was $289.40.

2. Myriam Castro de Castañeda Endowment Fund: Established by the University's Biosocial Sciences Faculty and the Graduate School of Public Health and Midwifery to provide necessary support in order to ensure the existence of a faculty position in the Midwifery Program. [No indication as to amount; need required documentation].

3. Bangdiwala Endowment Fund: Trust established by Public Deed 12, notarized by Olga Reyes Cortés. The money was provided to the University by Islver Bangdiwala for the purpose of creating the Pushpa I. Bangdiwala Award to stimulate and maintain student interest in graduate-level degrees in Education in the University of Puerto Rico Río Piedras Campus, as well as the application of statistical methodology for the continued scientific development in the field of education. The principal is to be invested while interest generated shall be used for payment of any expenses incurred (15% of the interest shall be reinvested to increase the amount of the endowment).

4. Dorothy Bourne Endowment Fund: Established via Certification 67 dated May 11, 1970 by the Higher Education Counsel. Funds donated in order to be used toward the annual Dorothy D. Bourne Commemorative Conference. Principal is to be invested while interest generated must be kept in a separate account and used to pay any necessary expenses incurred in the celebration of said conference.

5. Nathan Rifkinson Endowment Fund: Funds donated to serve as economic resources to strengthen financial aid for students, residents, and faculty of the Neurosurgery Faculty of the Medical Sciences Campus. The funds may also be used to purchase and provide equipment that could contribute to maintain neurosurgery education at a standard of excellence, finance research projects in the neurosurgery field, design educational programs where prominent doctors can participate, stimulate neurosurgery services of an excellent caliber through the subsidy of related activities, and for the hiring of a renowned Neurosurgery Director. Once established and matured, 15% of interest is to be reinvested along with the principal while 85% of interest shall be used for the aforementioned projects.

6. Bailey Ashford Endowment Fund: As per the minutes for the April 4, 1929 meeting of the Special Board of Trustees for the School of Tropical Medicine, the funds were donated by Dr. Joel Goldthwait to be used for the Bailey K. Ashford fellowship in tropical medicine, for the study of tropical diseases. |

Appendix C-11

IFAT Report on Title III Bank Accounts
On Behalf of the FOMB
As of June 30, 2018

Accounts provided for O'Neill & Borges Legal Due Diligence Testing
*Data as of January 28, 2019*

| Account Holder | Financial Institution | Priority Type | Bank Balance | Account Description from AH | Classification | Reason for Restriction per AH | O&B Review Complete? | O&B Comments |
|---|---|---|---|---|---|---|---|---|
| Universidad de Puerto Rico (cont'd) | | | | | | | | 7. Kmart Endowment Fund: Donated funds from Kmart Corporation for the establishment of the Kmart Pharmacy Scholarship for Excellence in Community Pharmacy, to be awarded to a full-time student enrolled in the University's School of Pharmacy. |
| | | | | | | | | 8. School of Dentistry Endowment Fund: Fund established by the University of Puerto Rico Central Administration at the request of the University School of Dentistry to deposit funds donated by companies and individuals to finance academic projects that are of service and support to the faculty and to the students. |
| | | | | | | | | 9. Emilia Sánchez de Hanna Endowment Fund: Irrevocable scholarship trust established by William Phelps Hanna via Public Deed Number 2 dated July 19, 1995 and notarized by Olga Reyes Cortés, to be used by University of Puerto Rico students for international academic experiences related to their area of study. Principal is to be invested while interest is to be used for the continuance of the scholarship. Operational costs shall be deducted from the trust funds. |
| | | | | | | | | 10. Psychiatry Endowment Fund: Established by the Psychiatry Department of the University of Puerto Rico Medical Sciences Campus. Funds shall be donated by external and internal sources. Principal is to remain invested in perpetuity while interest generated from the investment shall be used for Department expenses. |
| | | | | | | | | 11. Endowment Challenge Grant Program: Funds granted pursuant to a US Department of Education Title V program awarded to the University of Puerto Rico's Cayey Campus to be used for scholarships for undergraduate students. The corpus includes federal funds as well as donations by Cayey's alumni. |
| | | | | | | | | 12. UPR Río Piedras Theater Endowment Fund: Established for the maintenance of the University of Puerto Rico, Río Piedras Campus Theater. Funds provided by the symbolic purchasing of theater seats by donors (each donor's name was inscribed in a plaque and placed on a theater chair). |
| | | | | | | | | 13. Jaime and Teresa Cordero Endowment Fund: Donation from Jaime and Teresa Cordero to establish a permanent aid trust fund to aid Puerto Rican students pursuing Bachelor's Degrees. The principal is to be invested in perpetuity while the interest is to be used for the aid. |
| | | | | | | | | 14. Luis Benítez Carle Endowment Fund: Donation left to the University in Luis Benítez Carle's will, established via Public Deed Number 2, dated February 8, 2002 and notarized by María del C. Cividanes Fernández. Funds to be invested in perpetuity and generated interest to be used by students for educational expenses. |
| | | | | | | | | 15. Damaso "Tom" Acevedo Endowment Fund: Donation from UBS Financial Services of Puerto Rico employees, clients, and the UBS Foundation, for scholarships to be awarded to graduate students of the University of Puerto Rico Río Piedras School of Business Administration. Principal is to be invested and interest used for the scholarships to be awarded. |
| | | | | | | | | 16. Pauline Riggs Endowment Fund: $50,000 grant established by the University of Puerto Rico School of Tropical Medicine to be expended in the purchase of federal government or local government bonds, according to the minutes of a meeting held by the Special Board of Trustees for the School of Tropical Medicine on May 24, 1943. The grant was invested in National Defense Bonds of $1,000 in order to constitute a permanent endowment fund with a view toward increasing it in the future [No information provided as to the purpose of the endowment fund] |
| | | | | | | | | 17. Project PUENTES Endowment Fund: Partnership for Undergraduate Education in the Natural Sciences for Transformational Engagement of STEM Students. Funds to be used to aid Hispanic and low income students attaining SEM Associate and Bachelor's Degrees, particularly in Environmental Sciences, by providing transitions from high school to Miami-Dade College for a 2-year program, followed by a four-year program at the University of Puerto Rico Río Piedras Campus. The funds may also be used for peer tutoring, student and faculty mentoring, and research opportunities. The program lasted from October 1, 2008 to September 30, 2010 and was funded by the United States Department of Education. |
| | | | | | | | | 18. Ludwig Endowment Fund: Funds donated to the University by Luisa Caraballo through Deed Number 9 dated September 5, 2005 and notarized by Antonio J. González. The funds were donated for the purpose of creating the Ludwig Schajowicz Award for the best essay regarding art and philosophy submitted to the Philosophy Seminar ascribed to the University of Puerto Rico Río Piedras Campus Humanities Faculty. |
| | | | | | | | | 19. Ricky Martin Endowment Fund: Scholarship fund established by Ricky Martin for low-income students of the Medical Sciences Campus. The fund's purpose is to provide financial assistance for medical school expenses to students with limited economic means. |
| | | | | | | | | 20. Jaime Benítez Endowment Fund: $100,000 fund established by the University of Puerto Rico Board of Trustees via Certification Number 181 dated June 29, 2001, as a posthumous homage to Jaime Benítez, former rector and president of the University. [No indication as to the funds usage]. |
| | | | | | | | | 21. Rosa Axtmayer Trust Fund: Trust established by the University of Puerto Rico Board of Trustees via Certification Number 096 dated April 28, 1994, to distribute scholarships to undergraduate and graduate students from the Río Piedras, Mayagüez, Medical Sciences, Cayey, and Humacao campuses, as well as the Regional College Administration. |
| | | | | | | | | 23. Raúl and Isabel Gándara Endowment Fund: Established to provide financial support for the academic benefit of one student from the University's Bachelor's Degree, Master's Degree, or Doctorate program, as well as for opportunities in international student exchange programs. The funds may be used for travel related to the programs, housing, tuition, and short courses outside of Puerto Rico related to the degree pursued. |
| | | | | | | | | 24. Dr. Rita Walsh Endowment Fund: As per the Charitable Gift Agreement entered into on February 19, 2012 by the executors of Rita Walsh's estate and the University, the trust was established to provide scholarships to students from the University of Puerto Rico Medical Sciences campus, as well as graduate students from the University's Marine Sciences program. |

Appendix C-11

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

Accounts provided for O'Neill & Borges Legal Due Diligence Testing
*Data as of January 28, 2019*

| Account Holder | Financial Institution | Priority Type | Bank Balance | Account Description from AH | Classification | Reason for Restriction per AH | O&B Review Complete? | O&B Comments |
|---|---|---|---|---|---|---|---|---|
| Universidad de Puerto Rico (cont'd) | | | | | | | | 25.  María T. Sáez Endowment Fund: Proceeds from a property located in Hyde Park were to be used to create a scholarship fund for low-income medical (to be named the Sáez Torres Scholarship) and education (to be named the Jorge Sáez Torres Scholarship) students, in equal parts, as per the donor's last will and testament, Deed Number 16 dated May 5, 1975 and notarized by José Quiñones Elias. |
| | | | | | | | | 26.  Margarita and Enrique Campos Endowment Fund: Funds donated by the Margarita and Enrique Campos del Toro Foundation to be invested in perpetuity. Interest generated is to be used for the creation of an annual conference program by the University's Publishing House. |
| | | | | | | | | 27.  Providencia and Patria Trust Fund: Established by Deed Number 5 dated June 2, 2000 and notarized by Olga Reyes Cortés and concerning the entirety of Providencia and Patria Calzada's estates. The principal and interest of the trust are to be used exclusively by students from the Education Faculty to initiate, promote, and develop educational research. |
| | | | | | | | | 28.  Mario Rubén García Palmieri Endowment Fund: To be used for medical educational activities and for medical conferences hosted by the endowment beneficiary. Eighty percent of the interest generated will be used for the endowment while the remaining 20% shall be reinvested to increase the principal amount. |
| | | | | | | | | 29.  José Trías Monge Endowment Fund: One million-dollar donation left to the University of Puerto Rico in Trías Monge's last will and testament, ratified by the San Juan Superior Court on March 1, 2004, to provide scholarships for postgraduate students and an annual cycle of conferences. |
| | | | | | | | | 30.  Humaniora Trust Fund: Established via Esteban Tollinchi Camacho's last will and testament, in Deed Number 2 dated July 8, 2005 and notarized by Saulo Abad Vélez Ríos. Principal is to be invested and interest generated shall be invested in annual grants awarded to Hispanic authors by the Trust's Committee. The grants shall be awarded to authors or published works based on the history of philosophy, history of music, and art history. The Trust Fund shall be created within the sub-account structure of the University's main Dotal Fund. |
| Administracion de Vivienda Publica | Banco Popular | Commonwealth | $   94,072,324 | low rent operational subsidy cash account | Restricted | 14.850 public housing low rent | yes - valid | As confirmed in a meeting with Vivienda on January 16, 2019 and the provided documentation, these funds are provided by HUD to manage low income public housing. Vivienda receives a certain amount of funds per unit per month per occupied unit based on a formula established by HUD. The funds must be used to pay insurance, utilities, maintenance, repairs, etc. All HUD funds for the 14.850 program are received in this account and later distributed to the other accounts that have been established for different uses, such as administration and capital expenses. |
| Loteria Electronica | Banco Santander | Commonwealth | $   87,766,541 | Investment accouny with generates interest. On a daily basis transfers of funds are received from Accts. 3003385298 and 3004803328 and transfer are made to account 3003385301 to cover daily payments. | Restricted | Ley 10 del 24 de mayo 1989 art. 13 Fondo de Loteria | inconclusive | We need Hacienda to provide the details of what are these funds related to.  Article 13 of Act 10-1989 provides that the Treasury Secretary may execute agreements with financial institutions that are necessary to carry out the activities of the Additional Lottery.  Article 14 of Act 10-1989 provides that the operations of the Additional Lotter shall be funded from the Lottery Fund (Fondo de la Loteria). In addition, Article 14 provides that all the lottery revenues shall be covered into a special account of the Lottery Fund to pay for operational expenses and lottery prizes. Article 14 also sets forth the following distribution for the net operating income: |
| | | | | | | | | (a) $10,000,000 of the Additional Lottery's annual net operating income, plus 15% of the net operating income of the instant games, up to a combined total of twenty million $20,000,000, shall be appropriated to the "Housing Rental and Improvement Subsidy Program for Low-Income Elderly Persons", established in the Commonwealth Veterans Housing Rental and Low-Income Elderly Persons Housing Rental and Improvement Subsidy Housing of Funds Program Act (17 L.P.R.A. §§ 1491-1495). The Department of Housing may use up to 5% of the funds appropriated herein for expenses in order to comply with the provisions the Puerto Rico Public Housing Administration Organic Act. |
| | | | | | | | | (b) 35% of the net balance (net income minus the Housing Rental and Improvement Subsidy Program for Low-Income Elderly Persons Fund) shall be appropriated to the municipalities, of which $26,000,000 shall be deposited annually in the Municipal Revenues Matching Fund set forth in the Municipal Revenues Collection Center Act (21 L.P.R.A. §§ 5801-5820), to cover operating expenses and capital improvements in the municipalities; and the remainder thereof, which shall not exceed $16,000,000 a year, shall be used to defray the contributions accrued as of June 30, 1997, due to the implementation of the Health Reform. Any amount in excess of $16,000,000 a year shall be deposited into the Municipal Revenues Matching Fund, insofar as such amount falls within the 35% corresponding to the municipalities. |
| | | | | | | | | Once the municipal contribution for the Health Reform accrued as of June 30, 1997, is covered, the resources thus released shall be deposited into the Municipal Revenue Matching Fund. Provided that the amount deposited into the Fund as a result of meeting the accrued municipal contribution shall not be considered for purposes of computing the proportion of the municipalities' contribution to the Health Reform. |
| | | | | | | | | (c) Likewise, on a monthly basis, the Secretary of the Treasury shall transfer two 2% of the Additional Lottery's projected net income attributable to the previous year to the Curable Catastrophic Illness Services Fund, after the items mentioned in this section have been covered. |
| Tribunal General de Justicia | Banco Santander | Commonwealth | $   75,119,764 | escrow account from the Court Justice Department | Restricted | fondos de personas privadas en custodia por casos legales Restricted as relate to private persons deposited funds on this court. | no - no response | There are no documents available in the database regarding this account. |

Appendix C-11

Accounts provided for O'Neill & Borges Legal Due Diligence Testing
Data as of January 28, 2019

| Account Holder | Financial Institution | Priority Type | Bank Balance | Account Description from AH | Classification | Reason for Restriction per AH | O&B Review Complete? | O&B Comments |
|---|---|---|---|---|---|---|---|---|
| Tribunal General de Justicia | Banco Santander | Commonwealth | $  73,466,045 | escrow account from the Court Justice Department | Restricted | fondos de personas privadas en custodia por casos legales Restricted as relate to private persons deposited funds on this court. | no - no response | There are no documents available in the database regarding this account. |
| Corporacion Fondo Seguro Estado | Banco Popular | Commonwealth | $  69,245,165 | concentration | Restricted | funds to cover services for injured workers according to law 45 | no - no response | We have not identified Sharepoint documents related to the restriction of this account. |
| Administracion de Vivienda Publica | Banco Popular | Commonwealth | $  65,005,616 | cost center cash account | Restricted | 14.850 low rent | yes - valid | As confirmed in a meeting with Vivienda on January 16, 2019 and the provided documentation, these funds are provided by HUD to manage low income public housing. Vivienda receives a certain amount of funds per unit per month per occupied unit based on a formula established by HUD. The funds must be used to pay insurance, utilities, maintenance, repairs, etc.  This account is used as an administration fund for the management of housing units. HUD's grant provides for a fee that is to be used for payment of administrative expenses of the central office that manages the units in question. |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | Commonwealth | $  60,873,516 | PRHFA MBC 2006-A REVENUE FUND | Restricted | DEBT SERVICE | Inconclusive | No documents were provided by HFA. According to an HTA official statement dated August 25, 2006 available on EMMA, the HTA issued nine different classes of "2006 Series A" Mortgage-Backed Certificates.  Several debt service reserve funds were established but the Official Statement does not describe any revenue fund. The trust indenture was not available in EMMA. |
| Banco de Desarrollo Economico para Puerto Rico | Banco Popular | Commonwealth | $  60,234,183 | Treasury | Restricted | Commercial Guarantee Trust | no - no response | Documents uploaded to sharepoint are not related to this account. |
| Autoridad para el Financiamiento de la Vivienda | BDE | Commonwealth | $  66,141,691 | INVESTMENT Certificate of Deposit | Pooled | MORTGAGE INSURANCE | no - no response | Documents uploaded to sharepoint are not related to this account. |
| Administracion de Compensaciones por Accidentes de Automoviles | Northern Trust | Commonwealth | $  56,311,684 | ACCA - CASH | Restricted | Reserve For Future Benefits | yes - valid | Per the documents provided by ACAA, the funds deposited in this Northern Trust account are related to future insurance benefits that ACAA provides. Pursuant to its enabling act, ACAA provides insurance benefits to victims of automobile accidents, such as medical services, equipment, prescription drugs, health expenses associated with the treatment of chronic injuries (paraplegia, quadriplegia, multiple fractures, etc.), and payments to beneficiaries in the event of death, disability, dismemberment, and to cover funeral expenses. The enabling act also requires that ACAA set aside funds to cover such future insurance coverage liabilities. |
| Administracion de Sustento de Menores | Banco Popular | Commonwealth | $  55,773,622 | Deposit Account. This account is created to fulfill the necessary services of distribution of the payments of the participants in the Child Support Program | Restricted | The Organic Law of the Administration for Child Support Enforcement (ASUME) under the Department  of the Family as provided by Act No. 5 of December 1986, in its article 22-A, grants jurisdiction to the Family as provided to collect, receive, endorse, deposit and distribute the amount of child support payments to participants | inconclusive | Act No. 5-1986, as amended, references two types of accounts held by the Administrator of the Child Support Administration: (1) A special interest bearing bank account under the custody of the Administrator for holding the funds received if the Administrator cannot remit the same promptly to the child support recipient; and (2) the Special Fund for Services and Representation of Child Support Cases, which resources shall be used exclusively for (a) expenses in locating the person responsible for paying child support or the rendering of child support services to the persons who thus request them; or (b) to strengthen and expedite the procedures authorized by the Act No. 5-1986.  We need ASUME to identify which of such two accounts corresponds to Account #110035372. |
| Corporacion Fondo Seguro Estado | Banco Popular | Commonwealth | $  55,368,770 | deposits collections | Restricted | funds to cover services for injured workers according to law 45 | no - no response | We have not identified Sharepoint documents related to the restriction of this account. |
| Administracion de Vivienda Publica | Banco Popular | Commonwealth | $  51,950,333 | collateral account cash account | Restricted | 14.850 public housing low rent | yes - valid | As confirmed in a meeting with Vivienda on January 16, 2019 and the provided documentation, these funds are provided by HUD to manage low income public housing. Vivienda receives a certain amount of funds per unit per month per occupied unit based on a formula established by HUD. The funds must be used to pay insurance, utilities, maintenance, repairs, etc. This account also contains funds from the HUD grant that must be used for capital improvements necessary to comply with Section 504 of the Fair Housing Act, which prohibits discrimination based on disabilities. |
| Autoridad para el Financiamiento de la Vivienda | Banco Popular | Commonwealth | $  49,394,714 | PRHFC Mtg Trust III Colla Mtg Oblig FIDUCIARY ACCOUNT MTG Trust III | Restricted | DEBT SERVICE | Inconclusive | No documents were provided by HFA. According to information available on EMMA, the Puerto Rico Housing Finance Corporation issued "Puerto Rico Housing Finance Corporation Mortgage Trust III" obligations in 1991. Although the bond documents related to the bond issuance are not available in EMMA it appears the bonds already reached their maturity date. We need HFA to confirm whether the account is related to this issuance and provide the related bond documents. |

Appendix C-11

*IFAT Report on Title III Bank Accounts*
On Behalf of the FOMB
As of June 30, 2018

Accounts provided for O'Neill & Borges Legal Due Diligence Testing
*Data as of January 28, 2019*

| Account Holder | Financial Institution | Priority Type | Bank Balance | Account Description from AH | Classification | Reason for Restriction per AH | O&B Review Complete? | O&B Comments |
|---|---|---|---|---|---|---|---|---|
| Loteria Tradicional | Banco Popular | Commonwealth | $ 48,758,378 | Treasury Secretary | Restricted | Act. Np 465 of May 15, 1947 as Amended. See article 11 | yes - valid | According to documentation provided by the Traditional Lottery, this account contains funds that pertain to contracts between the Lottery and the Secretary of Treasury, as well as deposits from the Lottery's account for operational expenses and for the payment of Lottery prizes. Article 11 of Act 456-1947 created the Lottery Fund. Act 456 provides that the proceeds from the sale of lottery tickets shall be covered into the Lottery Fund and the salaries of all the personnel of the Bureau of the Lottery, all operating expenses of the Puerto Rico Lottery and lottery prizes shall be paid therefrom. Any amounts consigned for the benefit of the Lottery by virtue of contracts between the Secretary of the Treasury and the firm in charge of implementing the additional lottery system, authorized by §§ 801 et seq. of Title 15, shall also be covered into this Lottery Fund. The funds received by virtue of these contracts shall be entered into the books without a specific economic year and kept separate from any other amounts covered into the Lottery Fund. Said funds shall be used exclusively for the purposes established in such contracts. The remainder of the net balance shall be covered into the General Fund of the Commonwealth of Puerto Rico. Article 11 of Act 456 also establishes the Special Fund for Loans to Government Entities, into which $3 million is to be deposited annually from the proceeds of the net income derived from the operation of the Puerto Rico Lottery. And for such amount, $2 million shall be covered annually into the Curable Catastrophic Illnesses Services Fund, §§ 3222 et seq. of Title 24. |
| Autoridad para el Financiamiento de la Infraestructura | Banco Popular | Commonwealth | $ 45,840,102 | CPF-Asignaciones Legislativas-Resolu. Conjuntas

cash account | Restricted | Capital project funds | yes - valid | Funds pertaining to PRIFA Contract 2018-000096 between PRIFA and the Department of Education to be used for improvements to the infrastructure of select public schools on the Island under the Renew Your School ("Renueva Tu Escuela") 2018 Program. PRIFA was tasked with providing the necessary professional and consulting services for the completion of the project, limited to the project's established budget. The project was divided into three phases, and each phase assigned rates that responded to its particular needs. In its first amendment, the Contract indicates that PRIFA must return any remainder of the funds to the Department of Education. PRIFA is also responsible for making sure that any disbursements of the budgeted funds are used exclusively for the materials and work under the Contract. The account also includes funds assigned to PRIFA under Contract 2018-000098 between PRIFA and the Puerto Rico Public Buildings Authority (PBA) for the coordination of repairs required for damages resulting from Hurricanes Maria and Irma. The funds for these repairs stem from insurance policies. In order for the repairs to be made without conflicting with the Renew Your School 2018 program, the PBA requested to PRIFA that repairs to the claimed damages be made with the aforementioned insurance proceeds. The Contract states that the insurance proceeds can only be used for the repair of hurricane damages claimed to insurance companies. |
| Compania de Turismo | First Bank | Commonwealth | $ 42,639,847 | Debt Service Reserve Account | Restricted | Debt Service ADCCPR Bonds Reserve Account | yes - valid | Act 272-2003 provides that Room Tax revenues are to be used for the development and construction of the Puerto Rico Convention Center and its related infrastructure. Each year, the Tourism Company collects the Room Tax and transfers the revenues to GDB, which in turn would make the corresponding debt service payments for the bonds issued by the Convention Center District Authority ("CCDA"). The Room Tax is subject to "clawback" pursuant to Section 8 of Article VI of the CW Constitution. Moreover, since June 30, 2016, pursuant to the Moratorium Act the debt service payments on CCDA bonds was suspended. Act 272-2003 provides that if there are any revenues available after the monthly debt service payments on CCDA bonds are made, such revenues shall be used to cover: (1) expenses of the Tourism Company related to the collection and administration of the Room Tax; (2) operational expenses of the Convention Center; (3) expenses of the Tourism Company related to the "Promotion of Puerto Rico as a Destination Act"; and (4) expenses of the Destination Marketing Organization created pursuant to Act 17-2017. |
| Universidad de Puerto Rico | US Bank | Commonwealth | $ 41,902,001 | UPR Trial Balance | Restricted | Servicio de la deuda | yes - valid | As confirmed with the University in a meeting held January 10, 2019 and the provided Trust Agreement (See the *University System Revenue Refunding Bonds, Series P and Q trust agreement for $546,150,000*) this account was established for the debt service of the University revenue bonds (Series P and Q). The Trust Agreement establishes a sinking fund, comprised of a bond service account, a reserve account, and a redemption account for the payment of principal and interest on the related outstanding bonds. *See p. 44 of the Trust Agreement .* |
| Universidad de Puerto Rico | Voya | Commonwealth | $ 40,291,907 | UPR Trial Balance | Restricted | Inversiones designadas para los beneficios de compensación del Plan de Compensación Diferida del RCM. | yes - valid | The Trust Agreement for Deferred Compensation Plan between UPR and ING National Trust, dated September 17, 2013, provides that in the event of UPR's insolvency (as defined in the Trust Agreement) the assets of the trust shall be subject to claims of the UPR's general creditors and that the participants in the Plan shall have not preferred claim on the any assets of the trust. However, pursuant to an Order Granting Motion For Partial Summary Judgement by the U.S. District Court for the District of Puerto Rico dated January 30, 2019, the UPR is not currently insolvent within the meaning of the Trust Agreement and therefore funds in the trust may continue to be disbursed to participants in the deferred compensation plan in accordance with UPR's instructions and the terms of the Trust Agreement. See Case No. 16-cv-02519-FAB-JGD, ECF No. 64; Case No. 17-cv-01014-FAB-JGD. |
| Tribunal General de Justicia | First Bank | Commonwealth | $ 36,754,720 | n/a | Restricted | gastos operacionales de la rama judicial Operational Fund Joint resolution (law 286-2002, that amended law 147-1980 and Duties (law 235-1998) | inconclusive | Act 286-2002 establishes the Judiciary's budgetary formula for its operational expenses. These funds do not seem to be restricted by statute. The Judiciary should further clarify the reason why they claim these funds are restricted. Act 235-1998 creates a Special Revenue Fund that draws from the payments received for the services offered by the Judiciary. The monies raised under the Special Revenue Fund can only be used to fund the cost of improving the Judiciary's employees working conditions and to provide salary increases, purchase equipment and materials, make improvements, and may borrow money for such purposes securing the payment of the acquired obligations with the resources from the Special Revenue Fund. The use of the funds in this Special Fund are restricted by statute. We need the Judiciary to confirm whether the funds in this account correspond to the Special Revenue Fund. |

**Appendix C-11**

*IFAT Report on Title III Bank Accounts*
*On Behalf of the FOMB*
*As of June 30, 2018*

Accounts provided for O'Neill & Borges Legal Due Diligence Testing
*Data as of January 28, 2019*

| Account Holder | Financial Institution | Priority Type | Bank Balance | Account Description from AH | Classification | Reason for Restriction per AH | O&B Review Complete? | O&B Comments |
|---|---|---|---|---|---|---|---|---|
| Compañía de Fomento Industrial de Puerto Rico | Citibank N. A.* | Commonwealth | $ 32,731,905 | n/a | Restricted | incentivos industriales | inconclusive | Act 73-2008 ("Act 73"), known as the "Economic Incentives Act for the Development of Puerto Rico," requires that the Treasury Secretary establish a special fund (the "Special Fund"), which is funded by a portion of the income taxes paid by exempt businesses under Act 73 or related industrial incentive laws as well as from taxes on royalties related to exempt operations. Act 73 restricts the use of available funds in the Special Fund, which is administered by PRIDCO's Executive Director.  The most significant restrictions on the funds in the Special Fund include: (i) $1,000,000 of the proceeds must be used each year for operational expenses related to the concession of industrial incentives; (ii) 5% must be used each year for the establishment and development of strategic projects under Act 73; (iii) 10% must be used each year to provide special incentives programs to promote investment in innovation, science, technology, export of goods and services; and, (iv) 20% of the funds must be destined to the Science, Technology and Research Trust.  Note that Act 73 provides an extensive list of other purposes and activities for which the Special Fund may be used in addition to those listed herein. The documents provided by PRIDCO do not identify nor provide evidence that the referenced Citi Bank account is related to the Special Fund created by Act 73.  We need PRIDCO to confirm whether this account is related to the Special Fund. |
| * Universidad de Puerto Rico | Voya | Commonwealth | $ 28,550,087 | UPR Trial Balance | Restricted | Inversiones designadas para pagar los beneficios de compensación del Plan de Compensación Diferida del RCM. | yes - valid | The Trust Agreement for Deferred Compensation Plan between UPR and ING National Trust, dated September 17, 2013, provides that in the event of UPR's insolvency (as defined in the Trust Agreement) the assets of the trust shall be subject to the claims of the UPR's general creditors and that the participants in the Plan shall have not preferred claim on the any assets of the trust.  However, pursuant to an Order Granting Motion For Partial Summary Judgement by the U.S. District Court for the District of Puerto Rico dated January 30, 2019, the UPR is not currently insolvent within the meaning of the Trust Agreement and therefore funds in trust may continue to be disbursed to participants in the deferred compensation plan in accordance with UPR's instructions and the terms of the Trust Agreement.  See Case No. 16-cv-02519-FAB-JGD, ECF No. 64; Case No. 17-cv-01014-FAB-JGD |
| * Universidad de Puerto Rico | Banco Santander | Commonwealth | $ 25,890,673 | UPR Trial Balance | Restricted | Becas a estudiantes y fortalecer la labor academica | yes - valid | As confirmed with the UPR in a meeting held on January 10, 2019 and the documents provided by UPR, this account is related to the University of Puerto Rico Endowment Fund ("Fondo Dotal") established pursuant to Public Deed No. 2 dated June 13, 1996 and granted before Notary Public Julia María Badillo Lozano.  The amount transferred by UPR to serve as corpus was $5,000,000. Said public deed indicates that the University's goal was to have the Fund surpass $100,000,000, and to use the funds to strengthen student aid, classroom aid, and research. The Fund was established as an irrevocable trust and can receive funds from donations from public or private entities, alumni, budget surpluses, legislative assignments, revenues from the sale of University property, and funds from any other natural or judicial person or entity that wishes to contribute to the Fund's growth. The $5,000,000 corpus is the product of institutional funds, proceeds from donated property, funds made available to the University by virtue of law. The Fund shall have a main "dotal account" whose corpus is to be invested in perpetuity, and only the interest generated will be used to strengthen academic and student areas. The Fund shall have subaccounts for each institutional entity and for the Central Administration. Funds donated to the individual institutional entities and to the Central Administration destined for an established purpose by the donor shall be deposited in these subaccounts. The interest and principal of these subaccounts shall be administered as per each donation instrument. Donations that do not contain specific instructions as to their use shall remain in the main "dotal account" and invested in perpetuity. Fund assets can be jointly invested as long as the accounting for the main "dotal account" and the subaccounts is kept separately. The funds in the main "dotal account" were to be invested and reinvested continually for a five-year period from the date of the deed. From the fifth year, the University could use 25% of the main dotal account's interest for student scholarships and strengthen academic work in classrooms and laboratories through the purchase of equipment and didactic materials, training seminars, and improvements to classrooms and laboratories. After the Fund's 10th year anniversary, the Board of Trustees of the University would evaluate and recommend the percent of the main account's interest to be used to strengthen scholarships given out to students, as well as academic work and research. |

Appendix C-11

Accounts provided for O'Neill & Borges Legal Due Diligence Testing
*Data as of January 28, 2019*

| Account Holder | Financial Institution | Priority Type | Bank Balance | Account Description from AH | Classification | Reason for Restriction per AH | O&B Review Complete? | O&B Comments |
|---|---|---|---|---|---|---|---|---|
| **HTA** | | | | | | | | |
| Autoridad de Carreteras y Transportacion | Banco Santander | HTA | $ 175,168,714 | Cash Account. Fondos CAPEX. | Restricted | Restricted for CAPEX purposes - Refer to Appendix B (Page 41 Line "State Funds for Earmarked for CAPEX FY 2018 of the Fiscal Plan) | no - no response | Account documents could not be identified based on information uploaded into Sharepoint. |
| **PREPA** | | | | | | | | |
| Autoridad de Energia Electrica | Citibank | PREPA | $ 149,069,674 | Cash Accounts. CWL Segregated Account | Restricted | (1) Restricted use based on terms of the Credit Agreement | yes - valid | Funds restricted pursuant to the Title III Court order dated February 19, 2018 approving a $300 million credit facility granted by the Commonwealth to PREPA as an unsecured superpriority administrative expense claim.  Note that PREPA's repayment obligations to the Commonwealth for amounts borrowed under the credit facility are treated as "Current Expenses" under the PREPA Trust Agreement |
| Autoridad de Energia Electrica | Citibank | PREPA | $ 50,224,444 | Cash Account. PREPA Insurance | Restricted | (5) Insurance proceeds related specifically to insured property repairs from Hurr Maria | yes - valid | Funds restricted pursuant to the Title III Court order dated December 20, 2017, granting the Urgent Joint Motion of FOMB and AAFAF for Order Concerning Receipt and Use of Puerto Rico Electric Power Authority Insurance Proceeds.  According to the order, PREPA may utilize the insurance proceeds solely to repair, replace or reconstruct damaged or destroyed property of PREPA's System in compliance with the PREPA Trust Agreement |
| **Retirement** | | | | | | | | |
| Administracion de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura | Banco Popular | Retirement | $ 107,122,331.22 | investment liquidations ERS cash account; pago de beneficios ELA cash account account holder: Dpto Hacienda | Restricted | resolution 188 | yes - valid | Resolution 188-2017 ordered the sale of ERS assets and the transfer of the proceeds thereof into the Commonwealth's General Fund solely to cover PayGo pension payments during fiscal year 2018.

Moreover, Act 106-2017 created a trust fund account for paygo pension payments ("Cuenta Para el Pago de las Pensiones Acumuladas") (the "PayGo Account") that shall be maintained separate from the assets and accounts of the Commonwealth.  Pursuant to Act 106, ERS must transfer the net proceeds of the liquidation of its assets to the PayGo Account.  Such PayGo Account is also funded by the paygo charge to government employers and Commonwealth appropriations.

The funds in the PayGo Account are restricted pursuant to Puerto Rico law. |
| Administracion de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura | Banco Popular | Retirement | $ 92,798,440.05 | post petition account Post petition seg account cash account account holder: Dpto Hacienda | Restricted | joint stipulation court order title 3 | yes - valid | The Joint Stipulation Order by the Title III Court dated July 14, 2017, requires for the Commonwealth to cause amounts deemed to be made by entities other than the Commonwealth with respect to the retirement benefits of such entities and corresponding to a certain period to be deposited into a "Post-Petition Segregated Account."  Such Stipulation  Order provides that "In the event the Court enters a final order invalidating or avoiding all or any portion of such prepetition or postpetition liens or security interests, and after the exhaustion of all applicable appeals, (a) the Creditors' lien on the Post-Petition Segregated Account and amounts deposited therein shall be invalidated or avoided, as applicable, to the extent set forth in such ruling, and (b) all or a portion of the funds in the Post-Petition Segregated Account, depending on the extent of the Court's ruling, shall be remitted to the Commonwealth."  The Title III Court entered a summary judgment order that invalidated the ERS bondholders' security interest. On January 30, 2019, the 1 Cir. determined that the ERS bondholders met the requirement for the perfection of their security interest over the pledged property and vacated and remanded the Title III Court's order. |
| Sistema de Retiro para Maestros | Banco Popular | Retirement | $ 53,095,125.75 | Loans teachers retirement syst TRS | Restricted | Circular Letter No. 130-46-17 PR. Treasury Dept. | yes - valid | The TRS Enabling Act authorized such retirement system to grant loans to its participants.  The TRS Enabling Act requires that the Treasury Secretary deduct the loan payments owed by a TRS participant from the payroll payment to the participant and transfer such deducted amounts to TRS.  These funds may only be used to repay the loans granted by TRS to its participants.

Note that pursuant to Treasury's Circular Letter no. 1300-46-17, deductions for the repayment of mortgage, cultural and personal loans granted by TRS will be allocated in this account.

Note also that Article 7.6 of Act 106-2017 suspended all TRS's loan programs and provides that the existing loans will be governed by the laws under which they were granted. |
| Administracion de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura | Banco Popular | Retirement | $ 35,612,053.11 | investment liquidations JRS; pago de beneficios judicature cash account account holder: Dpto Hacienda | Restricted | resolution 188 | yes - valid | Resolution 188-2017 ordered the sale of ERS and JRS assets and the transfer of the proceeds thereof into the Commonwealth's General Fund solely to cover PayGo pension payments during fiscal year 2018.

Moreover, Act 106-2017 created a trust fund account for paygo pension payments to ERS and JRS retirees ("Cuenta Para el Pago de las Pensiones Acumuladas") (the "PayGo Account") that shall be maintained separate from the assets and accounts of the Commonwealth.  Pursuant to Act 106, ERS and JRS must transfer the net proceeds of the liquidation of their assets to the PayGo Account.  Such PayGo Account is also funded by the paygo charge to government employers and Commonwealth appropriations.

The funds in the PayGo Account are restricted pursuant to Puerto Rico law. |

\* Information initially provided to Duff & Phelps identified account balances greater than $35M.