# **EXHIBIT I**

# Milbank

**JOHN J. HUGHES III**

*Special Counsel*
55 Hudson Yards | New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com | milbank.com

September 10, 2020

**VIA EMAIL**

| | |
|---|---|
| Elizabeth L. McKeen, Esq. | Julia D. Alonzo, Esq. |
| Ashley Pavel, Esq. | Laura Stafford, Esq. |
| O'Melveny & Myers LLP | Proskauer Rose LLP |
| 610 Newport Center Drive, 17th Floor | Eleven Times Square |
| Newport Beach, CA 92660 | New York, NY 10036 |

  Re: <u>August 28, 2020 and September 1, 2020 Meet and Confers: Commonwealth Assets & Cash Rule 2004 Requests</u>

Counsel:

  I write on behalf of Ambac Assurance Corporation ("<u>Ambac</u>") to memorialize and follow-up on our telephonic meet-and-confers on August 28, 2020 (the "<u>August 28 Meet and Confer</u>") and September 1, 2020 (the "<u>September 1 Meet and Confer</u>"), concerning *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "<u>Assets Rule 2004 Motion</u>") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "<u>Cash Rule 2004 Motion</u>" and, collectively with the Assets Rule 2004 Motion, the "<u>Rule 2004 Motions</u>").

  During the August 28 Meet and Confer and September 1 Meet and Confer, the Parties[1] discussed the items outstanding from the telephonic meet-and-confer held on August 7, 2020 (the "<u>August 7 Meet and Confer</u>"), follow-up items identified in John J. Hughes, III's letter to the Government,[2] dated August 17, 2020 (the "<u>August 17 Letter</u>"), and Ambac's Requests for Admission[3] and Interrogatories,[4] dated August 4, 2020. Each issue is addressed below.

---

[1] Ambac and the Government are collectively referred to as the "<u>Parties</u>."

[2] The Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") and the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico (the "<u>Board</u>"), are referred to collectively as the "<u>Government</u>."

[3] "<u>Requests for Admission</u>" refers to *Ambac Assurance Corporation's First Set of Requests for Admission to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Relating to Cash Rule 2004 Discovery* (Aug. 4, 2020).

[4] "<u>Interrogatories</u>" refers to *Ambac Assurance Corporation's First Set of Interrogatories to the Financial*

Elizabeth L. McKeen, Ashley Pavel, Julia D. Alonzo, Laura Stafford
September 10, 2020

Assets Rule 2004 Motion

> ***(1) Category No. 1: Assets (current and transferred/encumbered)***
>
> - *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
> - *A list of the Commonwealth's current assets.*

**Inventory of Real Property Assets.** During the August 28 Meet and Confer, AAFAF advised that it continues to investigate whether the Board or AAFAF requested that a comprehensive list of the Commonwealth's (or its instrumentalities') real property be developed.

**Prioritized Commonwealth Assets.** During the August 28 Meet and Confer, AAFAF advised that it continues to work with relevant instrumentalities to determine whether additional documents related to prioritized Commonwealth assets identified by Ambac are available. AAFAF also clarified that its August 27, 2020 objection was not meant to suggest that certain prioritized Commonwealth assets identified by Ambac are privately owned, but relates to assets owned by instrumentalities that are not part of the Title III proceedings. AAFAF advised that it will investigate what materials related to such properties can be easily located and produced, but reserved its right to object to producing such materials if doing so proves burdensome.

**AAFAF Assets Review.** During the August 28 Meet and Confer, AAFAF advised that it has produced all remotely available certifications submitted in response to the AAFAF memorandum and would produce any certifications that are subsequently located. Ambac inquired as to whether AAFAF has collected any follow-up communications or analyses related to such certifications (*e.g.*, communications identifying information missing from the certifications or requesting that supplemental information be provided) and whether such documents would be produced. AAFAF agreed to investigate whether any follow-up communications or analyses related to the certifications are available.

**Ad Valorem Taxes / Tax Arrears.** During the August 28 Meet and Confer, Ambac advised that it has reviewed the CRIM Fiscal Plan AAFAF referred Ambac to on August 6, 2020 and August 27, 2020 and noted that the CRIM Fiscal Plan describes various efforts to monetize unpaid *ad valorem* taxes owed to the Commonwealth. Ambac requested information exchanged in connection with offers to purchase the Commonwealth's accounts receivable portfolio, including information related to the valuation of the portfolio, noting that such information is relevant to understanding the financial condition of the debtor. AAFAF advised that it would confer internally regarding Ambac's request and would update Ambac regarding its position.

---

*Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Relating to Cash Rule 2004 Discovery* (Aug. 4, 2020).

Elizabeth L. McKeen, Ashley Pavel, Julia D. Alonzo, Laura Stafford
September 10, 2020

> ### *(2) Category No. 2: August 2019 Report – 23 Properties*
>
> - *A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*
> - *Documents sufficient to show*
>   - *how those properties were identified for sale or potential sale; and*
>   - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*

During the August 28 Meet and Confer, Ambac advised that its review and analysis of the documents AAFAF produced in response to this request on August 27, 2020 is ongoing.

> ### *(3) Category No. 3: Real Property Valuation and Disposal Committee (the "Committee")*
>
> - *Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*
> - *Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*

During the August 28 Meet and Confer, Ambac advised that its review and analysis of the documents AAFAF produced in response to this request on August 27, 2020 is ongoing. AAFAF advised that it continues to investigate whether two previously produced PDF documents identifying transactions approved by the Committee (ASSETS_2004_0000001, -006) are available in Excel format or other native file.

> ### *(4) Category No. 4: Municipal Revenue Collection Center ("CRIM")*
>
> - *A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which of those properties were subsequently sold by the Commonwealth (and for how much).*
> - *All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*

During the August 28 Meet and Confer, Ambac advised that its review and analysis of the list of properties foreclosed upon by CRIM that AAFAF produced in response to this request on August 27, 2020 is ongoing.

*       *       *

Elizabeth L. McKeen, Ashley Pavel, Julia D. Alonzo, Laura Stafford
September 10, 2020

AAFAF advised that restrictions in place due to the COVID-19 pandemic continue to impede AAFAF's efforts to identify potentially responsive materials but that it continues to identify and produce responsive materials available remotely.

Cash Rule 2004 Motion

*(1) Category Nos. 1 and 2: Presentation and Investigation Documents*

- *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
- *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

***"Master Database" / Intermediate Documents.*** During the August 28 Meet and Confer, Ambac followed up on its request for a "master database" for Appendix J to the Amended Disclosure Statement[5] and the Board advised that it had produced an "account tracker" in response to this request. However, on September 1, 2020, the Board advised via a letter to Ambac that the "account tracker" it produced relates to the October 2, 2019 presentations, not Appendix J to the Amended Disclosure Statement. Ambac requests that the Board clarify whether the "account tracker" relates to the October 2, 2019 presentations or Appendix J.

In any event, as Ambac noted during the August 28 Meet and Confer, the "account tracker" is very high-level and insufficient for Ambac's purposes because, *inter alia*, it does not include underlying calculations or the bases for restricted/unrestricted classifications, and does not address all entities or accounts included in either the October 2, 2019 presentations or Appendix J.

During the August 28 Meet and Confer (and again via letter dated September 1, 2020) the Board stated that it is unwilling to produce any additional intermediate-level documents, such as "preliminary Excel spreadsheets" that may have been prepared in connection with the various cash restriction analyses, because it views such documents as irrelevant and because they purportedly contain privileged analyses. The Board advised that it has produced all factual source materials and raw data underlying the cash restriction analyses and Ambac has all it needs to replicate those analyses. Ambac disputes that it is possible to replicate such analyses with the information currently available to it. The Parties have agreed that they have reached an impasse regarding Ambac's request for intermediate documents.

---

[5] "Amended Disclosure Statement" refers to *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11947].

- 4 -

Elizabeth L. McKeen, Ashley Pavel, Julia D. Alonzo, Laura Stafford
September 10, 2020

***Process Documents.*** During the August 28 Meet and Confer, the Board advised that it continues to work to determine whether any non-communication process documents are available and to identify the volume of communication process documents located to date. On September 1, 2020, the Board advised that it will provide Ambac a written response on these issues as soon as practicable.

***Privilege Log.*** During the August 28 Meet and Confer (and again via letter dated September 1, 2020), the Board advised that it is in the process of preparing a categorical privilege log and hopes to provide one to Ambac by the end of September. The Board advised that the privilege log will contain categories of documents withheld from productions the Board has made to date, including purportedly privileged process communications related to the Duff & Phelps report and October 2, 2019 presentations. The Board further advised that the privilege log would not include a comprehensive set of preliminary Excel spreadsheets related to the Duff & Phelps report and October 2, 2019 presentations because the Board views such spreadsheets as irrelevant and beyond the scope of Rule 2004 discovery.

***Engagement Letters.*** During the August 28 Meet and Confer, Ambac requested production of engagement letters for advisors involved in the Duff & Phelps report and October 2, 2019, presentations. The Board agreed to confer internally regarding this request and advised Ambac via a letter dated September 1, 2020 that it will produce final versions of these advisors' engagement letters in short order.

***Underlying Factual Source Materials and Raw Data.*** During the August 28 Meet and Confer, the Board advised that it will reproduce underlying factual source materials and raw data that were initially produced with redactions of account numbers early in the week of August 31, 2020. On September 1, 2020, the Board produced such documents and advised that, to the extent Ambac identifies specific documents as to which it believes additional redactions should be removed, the Board is willing to meet and confer with respect to such documents. Ambac's review and analysis of the documents the Board produced on September 1, 2020 remains ongoing.

***Email Database / Individuals Involved in Preparing Reports.*** During the August 28 Meet and Confer, Ambac reiterated its request for a list of individuals included in the Board's email database that are potentially relevant to Ambac's requests, and the Board advised that it continues to investigate and consider Ambac's request. However, on September 1, 2020, the Board advised via a letter to Ambac that it will not provide such a list because it views issues concerning how the Board and its advisors conducted the cash restriction analyses to be irrelevant. The Board also advised that, for the same reasons, it will not identify individuals involved in preparing the Duff & Phelps report and October 2, 2019 presentations.

***Inventory of Central Government's Bank Accounts.*** During the August 28 Meet and Confer, Ambac requested that the Board or AAFAF produce the "Inventory of Central Government's Bank Accounts" referenced in the Amended Disclosure Statement. The Board advised that it does not have the inventory in its possession. AAFAF advised that it is in the process of searching for the inventory and will update Ambac on the progress of its investigation. The Government further advised on September 1, 2020 that its investigation remains ongoing.

Elizabeth L. McKeen, Ashley Pavel, Julia D. Alonzo, Laura Stafford
September 10, 2020

### *(2) Category No. 3: Commonwealth's Necessary Operating Expenses*

- *All documents related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.*

***Proposed Stipulation.*** During the August 28 Meet and Confer, Ambac inquired as to whether the Board remains unwilling to go through the stipulation paragraph-by-paragraph to discuss its objections. The Board again refused to do so and advised that such an exercise is unnecessary because these issues are better addressed through Ambac's Interrogatories. The Board advised it intends to substantively respond to the Interrogatories.

***Requests for Admission and Interrogatories.*** During the August 28 Meet and Confer, the Board advised that it does not believe Ambac's Interrogatories are appropriate to the extent they seek information regarding the Board's and its advisors' analyses. However, the Board advised that it will substantively respond to the Interrogatories, reserving its rights to make more specific objections. During the September 1 Meet and Confer, the Board clarified that it will substantively respond to the first four Interrogatories, but not the fifth.

The Board requested clarification regarding Interrogatory No. 1[6] during the August 28 Meet and Confer. The Board reiterated that it has not performed specific analyses of whether unrestricted cash exceeds necessary operating expenses and never agreed to undertake such analyses. The Board also advised that it has not performed specific analyses to identify the essential public services of the Commonwealth or determine the costs associated with such services. The Board further advised that any analysis it has conducted regarding the Commonwealth's necessary operating expenses and essential public services is contained in the Board's fiscal plan and budgets and inquired as to whether Ambac's Interrogatories are seeking any information beyond that. Ambac advised that the Interrogatories are "claim and contention"-style interrogatories and, accordingly, responses thereto should identify any analysis the Board will rely on to support its claims and contentions in the Title III Cases; to the extent that the only responsive analysis is reflected in the Board's fiscal plan and budgets, then the Board can so state in response to the Interrogatories. (Ambac reserves the right to ask follow-up questions as appropriate.) Ambac noted that the objective of the Interrogatories is to avoid unfair surprise, where the Board later relies on additional analyses on these issues, beyond those disclosed to Ambac in response to the Interrogatories.

The Board also requested clarification regarding Interrogatory No. 3,[7] noting that, to the extent the interrogatory seeks information about all expenditures authorized in its fiscal plan and

---

[6] Interrogatory No. 1 is as follows: "Identify any analysis the Government has undertaken or expects to undertake to determine the 'essential public services,' under PROMESA § 201(b)(1)(B), 48 U.S.C. § 2141(b)(1)(B), of the Commonwealth, and/or the operating costs or expenses of the Commonwealth associated with such services, including (without limitation) any analysis conducted pursuant to Steps 3 and 4 of the Independent Accounting Process." *See* Interrogatories at 4.

[7] Interrogatory No. 3 is as follows: "Identify all facts and data supporting Your contention that the expenditures authorized in the Board's certified fiscal plans and budgets constitute operating costs or

Elizabeth L. McKeen, Ashley Pavel, Julia D. Alonzo, Laura Stafford
September 10, 2020

budgets, it is extremely broad. Ambac advised that this Interrogatory is seeking only the information the Board may rely on to support its contention that expenditures authorized in the fiscal plans and budgets constitute necessary operating expenses or costs associated with essential public services.

During the August 28 Meet and Confer, the Board requested a two-week extension of its September 3, 2020 deadline to respond to Ambac's Interrogatories, which Ambac consented to on September 1, 2020.

Ambac's review and analysis of the Government's responses and objections to the Requests for Admission remains ongoing, and Ambac reserves all rights with respect thereto.

Very truly yours,

/s/ *John J. Hughes, III*
John J. Hughes, III

cc:    Grant Mainland
        Atara Miller
        Margaret A. Dale
        Martin A. Sosland
        Robert S. Berezin
        William Natbony
        Nicholas A. Bassett
        John E. Mudd
        Geoffrey S. Stewart

---

expenses of the Commonwealth associated with 'essential public services,' under PROMESA § 201(b)(1)(B), 48 U.S.C. § 2141(b)(1)(B), of the Commonwealth." *See* Interrogatories at 4.