# **EXHIBIT P**



Ernst & Young Puerto Rico LLC
273 Ponce de León Avenue - Suite 1000
San Juan, Puerto Rico 00917-1951

Financial Management and Oversight Board for Puerto Rico
Attention: Natalie Jaresko - Executive Director
PO Box 192018
San Juan PR 00919-2018
United States

September 12, 2017

Dear Ms. Jaresko:

Thank you for choosing Ernst & Young Puerto Rico LLC, a limited liability company organized and existing under the laws of Delaware, with its principal place of business located at Plaza 273, Suite 1000, 273 Ponce de Leon Avenue, San Juan, Puerto Rico ("we" or "EY") to perform professional services (the "Services") for Financial Management and Oversight Board for Puerto Rico ("you" or "Client"). We appreciate the opportunity to assist you and look forward to working with you.

The enclosed Statement of Work describes the particular Services that we will perform in this engagement, as well as any advice, presentations, or filings to be made, our fees therefor, and any other arrangements for this engagement. All of the Services will be subject to the terms and conditions of this letter, its attachments, including the General Terms and Conditions, and the Statement of Work (together, this "Agreement"). Except for a claim seeking solely injunctive relief, any dispute or claim arising out of or relating to this Agreement, the Services or any other services provided by us or on our behalf to you shall be resolved by mediation and arbitration as set forth in this Agreement. Contents of the Agreement may be disclosed by you at your sole discretion.

During the duration of this engagement, we agree to comply with the Board's Vendor Code of Conduct and its disclosure certification attached as Exhibit A hereto.

Please sign this letter in the space provided below to indicate your agreement with these arrangements and return it to Arturo Ondina, Gaurav Malhotra, Adam Chepenik or Juan Santambrogio at your earliest convenience. If you have any questions about any of these materials, please do not hesitate to contact Arturo Ondina, Gaurav Malhotra, Adam Chepenik or Juan Santambrogio so that we can address any issues you identify before we begin to provide any Services.

Very truly yours,

Ernst & Young Puerto Rico LLC

AGREED:

Financial Management and Oversight Board for Puerto Rico

By: *[signature]*
Natalie Jaresko - Executive Director

Financial Management and Oversight Board for Puerto Rico
Page 1 of 13



Ernst & Young Puerto Rico LLC
273 Ponce de León Avenue – Suite 1000
San Juan, Puerto Rico 00917-1951

## Statement of Work

This Statement of Work, dated September 12, 2017 (this "SOW"), is made by Ernst & Young Puerto Rico LLC, a limited liability company organized and existing under the laws of Delaware, with its principal place of business located at Plaza 273, Suite 1000, 273 Ponce de Leon Avenue, San Juan, Puerto Rico ("we" or "EY") and the Financial Oversight and Management Board for Puerto Rico, ("you" or "Client"), pursuant to the Agreement, dated September 12, 2017 (the "Agreement"), between EY and the Financial Oversight and Management Board for Puerto Rico.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement. The additional terms and conditions of this SOW shall apply only to the advisory Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

**Scope of services**

EY will assist you as set forth below in connection with your duties as established in Public Law 114–187 ("PROMESA") in the following areas:

1. Provide financial restructuring advisory services to you in connection with Title III of PROMESA

    a. Collaborate with you and your other advisors in the assessment of long-term financial projections:

        i. Develop a framework to analyze the financial impact of various restructuring scenarios

        ii. Advise you in the development of long-term financial projections

        iii. Advise you in your analysis of the funds available for creditors

        iv. Advise in the development of an analysis of creditor recoveries

    b. Collaborate with you and your other advisors in supporting you during the mediation process:

        i. Prepare materials to be presented to the mediation team and other mediation parties

        ii. Advise you during mediation sessions and negotiations with major creditor and retiree groups;



Ernst & Young Puerto Rico LLC
273 Ponce de León Avenue – Suite 1000
San Juan, Puerto Rico 00917-1951

      iii. Provide restructuring insight and observations on debt restructuring alternatives relative to other distressed municipal restructurings

      iv. Analyze the terms of any proposed settlements

  c. Collaborate with you and your other advisors in the development of a Plan of Adjustment in connection with the Matters, including but not limited to:

      i. Treatment of each creditor class, including amount of recovery and recovery instruments

      ii. Financial analyses related to best interest test

      iii. Financial analyses related to plan feasibility

      iv. Prepare other specific financial and economic analyses, as requested by you

We will provide you with periodic progress updates and, at your request, meet with you to review our results.

## Limitations on scope

You have retained us to act solely as your financial advisor and not in any fiduciary or agency capacity, for you, any other entity, or on your behalf.

We will not identify, address or correct any errors or defects in any computer systems, other devices or components thereof ("Systems"), whether or not due to imprecise or ambiguous entry, storage, interpretation or processing or reporting of data. We will not be responsible for any defect or problem arising out of or related to data processing in any Systems.

We will not, in connection with the performance of the Services or otherwise, (i) act as a broker for the sale of any securities, (ii) solicit any potential buyer or seller (including you) to engage in any transaction, or (iii) act as a negotiator of a transaction.

We will not provide any Services that directly involve our audit clients: Puerto Rico Electric Power Authority, University of Puerto Rico and Retirement Systems of the University of Puerto Rico. If any of these entities cease to be audit clients of EY, we will notify you of the change and we will inform you of which Services may become permissible in relation to those former audit clients.

## Your specific obligations

You will not, and you will not permit others to, quote or refer to the Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with



**Building a better working world**

Ernst & Young Puerto Rico LLC
273 Ponce de León Avenue – Suite 1000
San Juan, Puerto Rico 00917-1951

(i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

You assume full responsibility for any financial statement and tax reporting issues relating to your business or assets.

We also draw your attention to the reservations set out in paragraph 5 of the General Terms and Conditions of the Agreement, as well as your management responsibilities under paragraph 6, and your representation, as of the date hereof, under paragraph 23 thereof. You have obtained the prior approval of your Audit Committee for these Services, as applicable.

**Specific additional terms and conditions**

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review or examination of any entity's financial statements or prospective financial statements in accordance with generally accepted auditing standards or other applicable professional standards. None of the Services or any Reports will constitute any legal opinion or advice. We will not conduct a review to detect fraud or illegal acts, nor will we render any opinion as to the fairness or advisability of the proposed transaction or any other transaction.

Our Reports may contain advice or communications that may be privileged under Internal Revenue Code Section 7525. If such information is provided to persons other than your management, directors, or your legal counsel involved in its preparation or responsible for determining whether to implement it, you may waive such privilege.

Notwithstanding anything to the contrary in the Agreement or this SOW, we do not assume any responsibility for any third-party products, programs or services, their performance or compliance with your specifications or otherwise.

We will base any comments or recommendations as to the functional or technical capabilities of any products in use or being considered by you solely on information provided by their vendors, directly or through you. We are not responsible for the completeness or accuracy of any such information or for confirming any of it.

To facilitate performance of the Services, we may (and may, subject to additional terms and conditions, including license agreements, permit your authorized representatives to) use, certain software and tools that allow us to collaborate with you electronically, including Ernst & Young *eRoom* (collectively, "Collaboration Tools"). You shall not, and shall not permit third parties to, copy or modify any Collaboration Tools, or decompile, reverse engineer, or in any way derive any source code from, or create any derivative work of, any Collaboration Tools. COLLABORATION TOOLS ARE



Ernst & Young Puerto Rico LLC
273 Ponce de León Avenue – Suite 1000
San Juan, Puerto Rico 00917-1951

PROVIDED "AS IS," AND NONE OF EY OR ANY OTHER PARTY INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF ANY COLLABORATION TOOL MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ANY ENGAGEMENT TOOL, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, NON-INFRINGEMENT, TITLE, OR THAT THE OPERATION OF ANY COLLABORATION TOOL WILL BE UNINTERRUPTED, ERROR FREE OR THAT IT WILL BE COMPATIBLE WITH ANY OF YOUR HARDWARE OR SOFTWARE. EY WILL NOT SUPPORT, MAINTAIN OR UPGRADE ANY COLLABORATION TOOL. YOU ASSUME SOLE RESPONSIBILITY FOR THE USE OF ANY COLLABORATION TOOL AND THE RESULTS THEREOF. Your use of Collaboration Tools (or use on your behalf) is not a substitute for any documentation or system of records you must create or maintain pursuant to law, including, without limitation, Internal Revenue Code Section 6001. You alone are responsible for maintaining separate copies of any documentation you input into any Collaboration Tool.]

After the Services under this SOW have been completed, we may disclose to present or prospective clients, or otherwise in our marketing materials, that we have performed the Services for you, and we may use your name solely for that purpose, in accordance with applicable professional obligations. In addition, we may use your name, trademark, service mark and logo as reasonably necessary to perform the Services and in correspondence, including proposals, from us to you.

**Timetable**

The terms of this agreement will cover our Services starting on April 24, 2017 (the "Agreement Period").

**Contacts**

Gaurav Malhotra, Juan Santambrogio and Adam Chepenik will be actively and directly involved in providing the Services and will lead the EY team.

You have identified Natalie Jaresko as your contact with whom we should communicate about these Services. Your contacts at EY for these Services will be Gaurav Malhotra, Juan Santambrogio and Adam Chepenik.



Ernst & Young Puerto Rico LLC
273 Ponce de León Avenue – Suite 1000
San Juan, Puerto Rico 00917-1951

**Fees**

The General Terms and Conditions of the Agreement address our fees and expenses generally.

You shall pay our fees for the Services, based on actual time incurred at the following hourly rates:

- Partner/Principal         $845
- Executive Director        $788
- Senior Manager            $701
- Manager                   $578
- Senior                    $430
- Staff                     $236

In addition to the fees above, you shall reimburse EY for its direct expenses incurred in connection with performance of the Services, which shall include reasonable and customary out-of-pocket expenses for items such as travel (coach airfare and ground transportation), hotel and meals.

We will bill you for our fees and expenses on a monthly basis. Payment is due upon your receipt of our invoice. Your obligation to pay our fees and expenses is not contingent upon the results of the Services.



Ernst & Young Puerto Rico LLC
273 Ponce de León Avenue - Suite 1000
San Juan, Puerto Rico 00917-1951

In witness whereof, the parties have executed this SOW as of the date set forth above.

Ernst & Young Puerto Rico LLC

By: _____
Arturo Ondina
Partner

Financial Oversight and Management Board for Puerto Rico

By: _____
Natalie Jaresko
Executive Director

## General Terms and Conditions

### Our relationship with you

1. We will perform the Services in accordance with applicable professional standards, including those established by the American Institute of Certified Public Accountants ("**AICPA**").

2. We are a member of the global network of Ernst & Young firms ("**EY Firms**"), each of which is a separate legal entity.

3. We will provide the Services to you as an independent contractor and not as your employee, agent, partner or joint venturer. Neither you nor we have any right, power or authority to bind the other.

4. We may subcontract portions of the Services to other EY Firms, who may deal with you directly. Nevertheless, we alone will be responsible to you for the Reports (as defined in Section 11), the performance of the Services, and our other obligations under this Agreement. From time to time, non-CPA personnel may perform the Services.

5. We will not assume any of your management responsibilities in connection with the Services. We will not be responsible for the use or implementation of the output of the Services, although we may otherwise provide advice and recommendations to assist you in your management functions and making decisions.

### Your responsibilities

6. You shall assign a qualified person to oversee the Services. You are responsible for all management decisions relating to the Services, the use or implementation of the output of the Services and for determining whether the Services are appropriate for your purposes.

7. You shall provide (or cause others to provide) to us, promptly, the information, resources and assistance (including access to records, systems, premises and people) that we reasonably require to perform the Services.

8. To the best of your knowledge, all information provided by you or on your behalf ("**Client Information**") will be accurate and complete in all material respects. The provision of Client Information to us will not infringe any copyright or other third-party rights.

9. We will rely on Client Information made available to us and, unless we expressly agree otherwise, will have no responsibility to evaluate or verify it.

10. You shall be responsible for your personnel's compliance with your obligations under this Agreement.

### Our Reports

11. You may not rely on any draft Report. We shall not be required to update any final Report for circumstances of which we become aware, or events occurring, after its delivery.

12. If you distribute our Reports, you shall not alter, edit or modify them from the form provided by us and you shall only provide full Reports, including all disclaimers.

### Limitations

13. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, any consequential, incidental, indirect, punitive or special damages in connection with claims arising out of this Agreement or otherwise relating to the Services, including any amount for loss of profit, data or goodwill, whether or not the likelihood of such loss or damage was contemplated.

14. You (and any others for whom Services are provided) may not recover from us, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss in connection with claims arising out of this Agreement or otherwise relating to the Services. This limitation will not apply to losses caused by our fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

15. You shall make any claim relating to the Services or otherwise under this Agreement no later than one year after you became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two years after the completion of the particular Services. This limitation will not apply to the extent prohibited by applicable law or professional regulations.

16. You may not make a claim or bring proceedings relating to the Services or otherwise under this Agreement against any other EY Firm or our or its subcontractors, members, shareholders, directors, officers, partners, principals or employees ("**EY Persons**"). You shall make any claim or bring proceedings only against us. The provisions of Sections 13 through 17 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

## Indemnity

17. To the fullest extent permitted by applicable law and professional regulations, you shall indemnify us, the other EY Firms and the EY Persons against all claims by third parties (including your affiliates and attorneys) and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of the disclosure of any Report (other than Tax Advice) or a third party's use of or reliance on any Report (including Tax Advice) disclosed to it by you or at your request.

## Intellectual property rights

18. We may use data, software, designs, utilities, tools, models, systems and other methodologies and know-how that we own or license ("**Materials**") in performing the Services. Notwithstanding the delivery of any Reports, we retain all intellectual property rights in the Materials (including any improvements or knowledge developed while performing the Services), and in any working papers compiled in connection with the Services (but not Client Information reflected in them).

19. Upon payment for particular Services and subject to the other terms of this Agreements, you may use the Reports relating to those Services, as well as any Materials owned by us that are included therein, solely to the extent necessary to use the Reports.

## Confidentiality

20. Except as otherwise permitted by this Agreement, neither of us may disclose to third parties the contents of this Agreement or any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential and/or proprietary. Either of us may, however, disclose such information to the extent that it:

    (a) is or becomes public other than through a breach of this Agreement,

    (b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information,

    (c) was known to the recipient at the time of disclosure or is thereafter created independently,

    (d) is disclosed as necessary to enforce the recipient's rights under this Agreement, or

    (e) must be disclosed under applicable law, legal process or professional regulations.

21. Either of us may use electronic media to correspond or transmit information and such use will not in itself constitute a breach of any confidentiality obligations under this Agreement.

22. Unless prohibited by applicable law, we may provide Client Information to other EY Firms (which are listed at www.ey.com) and EY Persons, as well as external third parties providing services on our or their behalf, who may collect, use, transfer, store or otherwise process (collectively, "**Process**") it in various jurisdictions in which they operate in order to facilitate performance of the Services, to comply with regulatory requirements, to check conflicts, to provide financial accounting and other administrative support services or for quality and risk management purposes. We shall be responsible to you for maintaining the confidentiality of Client Information, regardless of where or by whom such information is Processed on our behalf.

23. With respect to any Services, if U.S. Securities and Exchange Commission auditor independence requirements apply to the relationship between you or any of your associated entities and any EY Firm, you represent, to the best of your knowledge, as of the date of this Agreement and as of the date of the Statement of Work hereunder, that neither you nor any of your affiliates has agreed, either orally or in writing, with any other advisor to restrict your ability to disclose to anyone the tax treatment or tax structure of any transaction to which the Services relate. An agreement of this kind could impair an EY Firm's independence as to your audit or that of any of your affiliates, or require specific tax disclosures as to those restrictions. Accordingly, you agree that the impact of any such agreement is your responsibility.

## Data protection

24. If we Process Client Information that can be linked to specific individuals ("**Personal Data**"), we will Process it in accordance with Section 22 of this Agreement, as well as applicable law and professional regulations, including, where applicable, the EU-U.S. Privacy Shield Framework, administered by the U.S. Department of Commerce ("Privacy Shield"), to which EY has self-certified. Further information (including disclosures required by Privacy Shield) is set out at www.ey.com/us/privacyshield. We will require any service provider that Processes Personal Data on our behalf to provide at least the same level of protection for such data as is required by Privacy Shield and other legal and regulatory requirements applicable to us. If any Client Information is protected health information under the Health Insurance Portability and

Accountability Act, as amended, this Agreement is deemed to incorporate all of the terms otherwise required to be included in a business associate contract relating to such information.

25. You warrant that you have the authority to provide the Personal Data to us in connection with the performance of the Services and that the Personal Data provided to us has been Processed in accordance with applicable law. In order to provide the Services, we may need to access Personal Data consisting of protected health information, financial account numbers, Social Security or other government-issued identification numbers, or other data that, if disclosed without authorization, would trigger notification requirements under applicable law ("**Restricted Personal Data**"). In the event that we need access to such information, you will consult with us on appropriate measures (consistent with professional standards applicable to us) to protect the Restricted Personal Data, such as deleting or masking unnecessary information before it is made available to us, encrypting any data transferred to us, or making the data available for on-site review at a Client site. You will provide us with Restricted Personal Data only in accordance with mutually agreed protective measures.

## Fees and expenses generally

26. You shall pay our professional fees and specific expenses in connection with the Services as detailed in the Statement of Work. You shall also reimburse us for other reasonable expenses incurred in performing the Services. Our fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which you shall pay (other than taxes imposed on our income generally). Unless otherwise set forth in the applicable Statement of Work, payment is due within 30 days following receipt of each of our invoices. We may receive rebates in connection with certain purchases, which we use to reduce charges that we would otherwise pass on to you.

27. We may charge additional professional fees if events beyond our control (including your acts or omissions) affect our ability to perform the Services as originally planned or if you ask us to perform additional tasks.

28. If we are required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or this Agreement, you shall reimburse us for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless we are a party to the proceeding or the subject of the investigation.

## Force majeure

29. Neither you nor we shall be liable for breach of this Agreement (other than payment obligations) caused by circumstances beyond your or our reasonable control.

## Term and termination

30. This Agreement applies to the Services whenever performed (including before the date of this Agreement).

31. This Agreement shall terminate upon the completion of the Services. Either of us may terminate it, or any particular Services, earlier upon 30 days' prior written notice to the other. In addition, we may terminate this Agreement, or any particular Services, immediately upon written notice to you if we reasonably determine that we can no longer provide the Services in accordance with applicable law or professional obligations.

32. You shall pay us for all work-in-progress, Services already performed, and expenses incurred by us up to and including the effective date of the termination of this Agreement. Payment is due within 30 days following receipt of our invoice for these amounts.

33. The provisions of this Agreement, including with respect to Reports, that give either of us rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement, except that our respective confidentiality obligations (other than those relating to Reports) shall continue thereafter for three years only.

## Governing law and dispute resolution

34. This Agreement, and any non-contractual matters or obligations arising out of this Agreement or the Services, including (without limitation) claims arising in tort, fraud, under statute or otherwise relating to the Services, or questions relating to the scope or enforceability of this Section 34, shall be governed by, and construed in accordance with, the laws of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Except as otherwise expressly provided in the Cover Letter, any dispute relating to this Agreement or the Services shall be resolved as set forth in Appendix 1 to these Terms and Conditions.

## Miscellaneous

35. This Agreement constitutes the entire agreement between us as to the Services and the other matters it covers, and supersedes all prior agreements,

understandings and representations with respect thereto, including any confidentiality agreements previously delivered. In addition, any policy, protocol, agreement (other than this Agreement) or other instrument, in whatever form, imposed at any time that purports to obligate EY, any other EY Firm or any EY Person with respect to the use of Client Information shall be void and of no further effect, and you shall not seek to enforce any such obligation.

36. Both of us may execute this Agreement (including the Statement of Work), as well as any modifications thereto, by electronic means and each of us may sign a different copy of the same document. Both of us must agree in writing to modify this Agreement or the Statement of Work.

37. Each of us represents to the other that each person signing this Agreement or the Statement of Work on its behalf is expressly authorized to execute it and to bind such party to its terms. You also represent that this Agreement has, if necessary, been considered and approved by your Audit Committee. You represent that your affiliates and any others for whom Services are performed shall be bound by the terms of this Agreement.

38. You agree that we and the other EY Firms may, subject to professional obligations, act for other clients, including your competitors.

39. Neither of us may assign any of our rights, obligations or claims arising out of or related to this Agreement or any Services.

40. If any provision of this Agreement (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

41. If there is any inconsistency between provisions in different parts of this Agreement, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the Cover Letter, (b) the Statement of Work and any attachments thereto, (c) these General Terms and Conditions, and (d) other attachments to this Agreement.

42. Neither of us may use or reference the other's name, logo or trademarks publically without the other's prior written consent, although we may publically identify you as a client in connection with specific Services or generally.

43. For administrative reasons, you may from time to time ask that fees and expenses for Services performed for your international affiliates or at international locations be invoiced to you or your designee there, in local currency. You guarantee the timely payment of all those

invoices by your affiliates. In addition, from time to time, an affiliate of ours, providing Services as a subcontractor to us, may bill you directly for fees incurred for work outside the US, in local currency or otherwise.

Financial Management and Oversight Board for Puerto Rico
Page 11 of 13

## Appendix 1

## Dispute resolution procedures

### Mediation

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that he or she is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

### Arbitration

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures and has confirmed in writing that he or she is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, or substantial equity owner of any EY audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction. In deciding the dispute, the arbitration panel shall apply the limitations period that would be applied by a court deciding the matter in the same jurisdiction, and shall have no power to decide the dispute in any manner not consistent with such limitations period.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.