# **EXHIBIT Q**

# Milbank

**JOHN J. HUGHES, III**

*Special Counsel*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com  |  milbank.com

August 17, 2020

**VIA EMAIL**

| | |
|---|---|
| Julia D. Alonzo, Esq. | Elizabeth L. McKeen, Esq. |
| Laura Stafford, Esq. | Ashley Pavel, Esq. |
| Proskauer Rose LLP | O'Melveny & Myers LLP |
| Eleven Times Square | 610 Newport Center Drive, 17th Floor |
| New York, NY 10036 | Newport Beach, CA 92660 |

Re: August 7, 2020 Meet and Confer:  Commonwealth Assets & Cash Rule 2004 Requests

Counsel:

I write on behalf of Ambac Assurance Corporation ("Ambac") to memorialize and follow-up on our telephonic meet-and-confer on August 7, 2020 (the "August 7 Meet and Confer") concerning *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 9022] (the "Assets Rule 2004 Motion") and *Ambac Assurance Corporation's Motion for Entry of an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* [ECF No. 9023] (the "Cash Rule 2004 Motion" and, collectively with the Assets Rule 2004 Motion, the "Rule 2004 Motions").

During the August 7 Meet and Confer, the Parties[1] discussed the items outstanding from the telephonic meet-and-confer held on July 1, 2020 (the "July 1 Meet and Confer"), follow-up items identified in Ambac's letter to the Government[2] dated July 10, 2020 (the "July 10 Letter"), Ambac's email to the Government dated July 30, 2020 (the "July 30 Email"), Ambac's Requests

---

[1] Ambac and the Government are collectively referred to as the "Parties."

[2] The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico (the "Board"), are referred to collectively as the "Government."

Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
August 17, 2020

for Admission[3] dated August 4, 2020, and Ambac's Interrogatories[4] dated August 4, 2020. Each item of discussion is addressed below.

Assets Rule 2004 Motion

*(1) Category No. 1: Assets (current and transferred/encumbered)*

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

**Official Inventory of Real Property Assets.** During the August 7 Meet and Confer, Ambac advised that the official inventory of real property assets only contains approximately 670 properties and appears to be incomplete. Ambac further advised that the inventory's search functionality is limited (*e.g.*, one cannot run searches based on owner or street address) and inquired as to whether there are additional ways to access or locate relevant information or otherwise make the inventory more user-friendly. AAFAF advised that it would confer internally regarding Ambac's inquiry. In response to Ambac's request, AAFAF also agreed to identify all instrumentalities that have contributed to the inventory. Finally, Ambac inquired as to whether the Board or AAFAF has requested that a comprehensive list of the Commonwealth's (or its instrumentalities') real property be developed; AAFAF agreed to check.

**Prioritized Commonwealth Assets.** During the August 7 Meet and Confer, Ambac advised that its review and analysis of AAFAF's August 6, 2020 production is ongoing. AAFAF confirmed that it is continuing to work with relevant instrumentalities to determine whether documents related to other prioritized Commonwealth assets (*i.e.*, properties unrelated to the documents produced on August 6) are available.

**AAFAF Assets Review.** During the August 7 Meet and Confer, AAFAF advised that it intends to produce documents that are available remotely to AAFAF employees on a rolling basis within the next week or two. AAFAF further advised that restrictions related to the COVID-19 pandemic have impeded AAFAF employees' access to in-office files and, accordingly, responsive hard copy documents will not be included in the production at this time but will be reviewed and produced when possible.

**Ad Valorem Taxes / Tax Arrears.** During the August 7 Meet and Confer, the Parties discussed the scope of Ambac's requests related to *ad valorem* taxes and tax arrearage. In response

---

[3] "Requests for Admission" refers to *Ambac Assurance Corporation's First Set of Requests for Admission to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Relating to Cash Rule 2004 Discovery* (Aug. 4, 2020).

[4] "Interrogatories" refers to *Ambac Assurance Corporation's First Set of Interrogatories to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Relating to Cash Rule 2004 Discovery* (Aug. 4, 2020).

- 2 -

Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
August 17, 2020

to AAFAF's questions, Ambac clarified that it was seeking information about not just *ad valorem* taxes collected by or owed to the Commonwealth, but also owner- and property-specific information that would enable an understanding of the value of these taxes (noting that the value could turn on property-specific information, such as the amount of taxes owed relative to the market value of a property).

AAFAF advised that it is not currently aware of a report containing owner- and property-specific information, but that it would make additional inquiries into what information is available.

### *(2) Category No. 2: August 2019 Report – 23 Properties*

- *A list of, or documents sufficient to identify, the 23 properties that were indicated as sold, or to be sold by December 2019, by HTA in the August 2019 report on the implementation of HTA's certified fiscal plan.*
- *Documents sufficient to show*
  - *how those properties were identified for sale or potential sale; and*
  - *the process and protocol for soliciting and entertaining bids, and evaluating and approving a sale.*

In response to a question from Ambac, AAFAF advised during the August 7 Meet and Confer that it believes it has already produced contracts corresponding to the properties that have been sold by HTA but would confirm whether it has done so.

### *(3) Category No. 3: Real Property Valuation and Disposal Committee (the "Committee")*

- *Documents sufficient to show (i) AAFAF's (or any other Commonwealth instrumentality's) authority to supervise the work of the Committee; (ii) regulations governing the formalization of disposal of Commonwealth properties, including how the properties will be made available for sale and information will be made available to interested bidders; and (iii) any other strategy by AAFAF or the Committee related to disposal of properties, including establishment of an online data base, as per recent statements of AAFAF Executive Director Omar Marrero.*
- *Documents sufficient to identify any (i) proposals considered (whether ultimately accepted or not), (ii) transactions recently approved, and (iii) transactions currently under evaluation.*

During the August 7 Meet and Confer, Ambac requested an update on AAFAF's ongoing inquiries into these requests. AAFAF advised that it produced a few documents related to approved transactions on August 6, 2020, and it is continuing to determine what responsive documents are available.

- 3 -

Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
August 17, 2020

> *(4) Category No. 4: Municipal Revenue Collection Center ("CRIM")*
>
> - *A list identifying all properties that have been foreclosed upon by the Commonwealth or its instrumentalities from January 1, 2015 to present, and which of those properties were subsequently sold by the Commonwealth (and for how much).*
> - *All guidelines or rules governing CRIM's foreclosure of private property and the process for determining whether to sell any of foreclosed-upon properties.*

During the August 7 Meet and Confer, Ambac requested an update on AAFAF's efforts to determine what responsive documents are available. AAFAF advised that its efforts to identify responsive materials have been hampered by the COVID-19 pandemic, but it is planning to identify the responsive materials it has located in forthcoming correspondence to Ambac.

Cash Rule 2004 Motion

> *(1) Category Nos. 1 and 2: Presentation and Investigation Documents*
>
> - *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
> - *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

***Appendix J to Amended Disclosure Statement.***[5] During the August 7 Meet and Confer, the Board advised that it would produce a version of Appendix J containing account numbers and did so on August 13, 2020. Ambac appreciates the Board's production of this version of Appendix J, and its review and analysis of the document remains ongoing.

***"Master Database" / Intermediate Documents.*** During the August 7 Meet and Confer, the Parties discussed Ambac's July 30 request for updated versions of the "master database" (or any similar documents reflecting the information collected pursuant to the Board's analysis of the cash accounts of the Commonwealth and its instrumentalities) that were prepared for various measurement dates. The Board advised that the "master database" was only used in connection with the Duff & Phelps report and, when Ernst & Young took over the cash analysis from Duff & Phelps, it started the analysis over using inputs from the Duff & Phelps report.

Ambac inquired as to whether a document similar to the "master database" was used to create Appendix J to the Amended Disclosure Statement, and the Board advised that it needs to

---

[5] "Amended Disclosure Statement" refers to *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11947].

- 4 -

Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
August 17, 2020

confer internally to determine what exists. Ambac clarified that it is requesting all "intermediate-level" documents (*i.e.*, Excel spreadsheets and other charts or calculations performed on raw data) for any iteration of the cash analysis, whether it be the version prepared in connection with the analysis in Appendix J to the Amended Disclosure Statement, the Duff & Phelps report, the October 2, 2019 presentations, or any other analysis by Ernst & Young. Ambac inquired as to whether the Board will also object to producing "intermediate-level" documents related to Appendix J. The Board advised that it needs to confer internally to determine whether responsive documents exist and, if so, whether it will object to producing them.

During the August 7 Meet and Confer, the Board also advised that it has located an "account tracker" related to the October 2, 2019 presentations, which is described as equivalent to the "master database" prepared in connection with the Duff & Phelps report. The Board advised that it will produce the account tracker relatively soon. The Board further advised that the account tracker is the only "intermediate-level" document related to the October 2, 2019 presentations that it is willing to produce at this time, but it will continue to investigate whether additional "intermediate-level" documents are available.

***Process Documents.*** During the August 7 Meet and Confer, Ambac requested an update regarding the Board's efforts to determine what materials responsive to this request exist and whether the Board is willing to produce any such materials. The Board advised that it has not yet located any responsive documents other than communications and does not anticipate that non-communication process documents exist, but it will update Ambac if it locates any such documents. The Board further advised that it is still working to determine what information it can provide Ambac regarding the communications it has located.

***Privilege Log.*** During the August 7 Meet and Confer, the Board advised that it has not yet identified the entire universe of documents over which it is asserting privilege objections but is attempting to identify sufficient information about such documents so that Ambac can assess whether a privilege log is appropriate. The Board further advised that it has collected some, but not all, of the documents it believes are privileged, but it is unwilling to conduct a document-by-document privilege review due to the breadth of potentially privileged documents.

The Board further advised that it maintains an electronic database containing emails of certain Commonwealth employees. Ambac requested a list of individuals whose emails are included in that database. The Board advised that it is unwilling to provide such a list. Ambac requested as an alternative a list of those individuals whose emails are potentially relevant to Ambac's requests. The Board agreed to consider this request.

***Factual Source Materials and Raw Data.*** During the August 7 Meet and Confer, the Board advised that it has produced all nonprivileged factual source materials and raw data underlying the Duff & Phelps report and October 2, 2019 presentations. With regard to Ambac's July 30 request that the Board reproduce factual source materials and raw data containing redactions of account numbers, the Board advised that manually removing redactions will be time consuming and suggested that only the first mention of an account number in each document be unredacted.

Ambac advised that this approach makes sense for documents that relate only to one account but that Ambac is concerned that such an approach would cause confusion in the case of

- 5 -

Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
August 17, 2020

documents relating to more than one account. The Board advised that Ambac's concern is only likely to apply to a small subset of documents, and it would endeavor to ensure that redactions in those documents do not obscure what account is being discussed.

In light of the protective order in place, Ambac asked the Board to consider removing all redactions on the understanding that any redactions made for personally identifiable information would be protected under the order. The Board advised that it wants to maintain redactions for personally identifiable information but anticipates that its suggested procedure for removing redactions of account numbers would not be unduly burdensome and that the Board would reproduce the documents in relativity short order.

***Follow-Up Requests regarding Amended Disclosure Statement.*** During the August 7 Meet and Confer, Ambac followed up on its request for the "inventory of the Central Government's bank accounts" referenced in the Amended Disclosure Statement. The Board advised that it does not believe the Board or its advisors have that inventory in their possession but would confirm whether that is the case and would update Ambac accordingly. Ambac inquired as to whether this request is better directed to AAFAF, and the Board advised that may be appropriate, but the Board would confirm whether the Board or its advisors have the inventory in their possession.

Ambac also followed up on its request for the identities of individuals who were involved in the preparation of the Duff & Phelps report and October 2, 2019 presentations. The Board advised that there is some overlap between the custodians it has collected emails from and the individuals involved in the preparation of those reports, and it will continue to investigate this inquiry and will update Ambac accordingly.

***(2) Category No. 3: Commonwealth's Necessary Operating Expenses***

- *All documents related to the assessment of the Commonwealth's necessary operating expenses, including any analyses of whether unrestricted cash exceeds necessary operating expenses.*

During the August 7 Meet and Confer, the Parties discussed Ambac's proposed stipulation memorializing certain representations the Board has made during the Parties' negotiations, which Ambac distributed on June 28, 2020 and the Board objected to as "not workable" on July 17, 2020. Ambac requested that the Parties go through the proposed stipulation paragraph-by-paragraph to discuss the Board's objections. The Board refused to do so, and stated that it does not believe such an exercise would be useful. The Board advised that it does not agree to Ambac's proposed stipulation because the Board believes the proposal does not accurately reflect the Parties' discussions. However, the Board declined to explain specifically what aspects of the stipulation it considered inaccurate; the Board referred Ambac to the Board's meet-and-confer correspondence generally for the Board's position on discovery matters.

By way of follow up on the August 7 Meet and Confer, Ambac has once again rereviewed the Board's meet-and-confer correspondence and notes that the correspondence does not give any indication as to why the entire proposed stipulation is "not workable" or inaccurate.

- 6 -

Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
August 17, 2020

- On April 7, 2020 the Board advised that, "[w]ith respect to Ambac's specific request for 'analyses of whether unrestricted cash exceeds necessary operating expenses,' the Oversight Board does not perform such analyses." Paragraph 9 of the proposed stipulation stated that "[t]he Oversight Board represents and agrees that it does not perform specific analyses of whether unrestricted cash exceeds necessary operating expenses."

- On April 7, 2020, the Board advised that "[e]very item in the Commonwealth's budget is a necessary operating expense, as determined by the Oversight Board." Paragraph 8 of the proposed stipulation stated that "[t]he Oversight Board represents and agrees that its position at plan confirmation will be that every item in a certified Commonwealth budget is a necessary operating expense."

- Step 4 of the Independent Accounting Process[6] provides: "If excess unrestricted cash exists in bank accounts of the major component units, determine if such unrestricted cash exceeds necessary operating expenses[.]" Informative Motion at 2. As noted above, the Board has advised that it has not conducted such an analysis. On May 11, 2020, the Board further advised that "after the Duff & Phelps investigation was announced, in order to conserve government resources, AAFAF decided not to conduct its own separate investigation" pursuant to Step 4 of the Independent Accounting Process. These representations were reflected in paragraphs 1, 2, 3, and 9 of the proposed stipulation.

For the foregoing reasons, Ambac respectfully notes that it continues to believe that a paragraph-by-paragraph discussion of the proposed stipulation would be appropriate to obviate the need for other discovery. It appears that the Parties have reached an impasse regarding this request.

During the August 7 Meet and Confer, the Board also advised that continued negotiations between the Parties regarding the proposed stipulation are unnecessary given that Ambac has served Requests for Admission and Interrogatories covering many of the same issues addressed in the proposed stipulation. Ambac inquired as to whether the Board intends to provide substantive responses to the Requests for Admission and Interrogatories, or whether the Board would object and stand on its objections. The Board advised that it needs to confer internally regarding how it will respond and will update Ambac regarding its position.

---

[6] "Independent Accounting Process" means the "five-step independent accounting process" described in the *Informative Motion Regarding the Disclosure of Cash Balances of Puerto Rico Government Entities*, No. 17 BK 3283-LTS (Dec. 20, 2017), ECF No. 2120 (the "Informative Motion"), that AAFAF established "to determine and assess the nature (*e.g.*, restricted or not) and cash balances of all active and nonactive bank accounts" of the Commonwealth and its instrumentalities.

Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
August 17, 2020

Very truly yours,


/s/ *John J. Hughes, III*
John J. Hughes, III

cc: Grant Mainland
   Atara Miller
   Martin A. Sosland
   Robert S. Berezin
   William Natbony
   Nicholas A. Bassett
   John E. Mudd
   Geoffrey S. Stewart