**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------------- x
                                                      :

In re:                                                   :

THE FINANCIAL OVERSIGHT AND             :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :   Title III
                                                  :
    as representative of                        :   Case No. 17-BK-3283 (LTS)
                                                  :
THE COMMONWEALTH OF PUERTO RICO *et al.*,   :   (Jointly Administered)
                                                   :
    Debtors.[1]                                       :
---------------------------------------------------------------------- x

**LIMITED OBJECTION OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO MOTION OF COMMONWEALTH
OF PUERTO RICO PURSUANT TO BANKRUPTCY CODE SECTION 365
FOR ENTRY OF ORDER APPROVING ASSUMPTION OF SETTLEMENT
<u>AGREEMENTS WITH GARCÍA RUBIERA CLASS PLAINTIFFS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................... 1
LIMITED OBJECTION ................................................................................................................. 3
I. Plaintiffs' Settlement Agreements Are Not Executory Contracts ..................................... 3
    A. Contracts Are Only Executory if, as of Petition Date, Both Sides Owe Material Obligations That, if Not Performed by One Side, Would Excuse Breach by the Other Side ....................................................................................... 3
    B. Under Puerto Rico Law, as of Petition Date, Plaintiffs Had No Material Obligations under Settlement Agreements for Which Failure to Perform Could Excuse Commonwealth's Breach ............................................................... 5
II. Assumption of Prepetition Settlement Agreements Is Impossible, Regardless of Business Judgment Standard .............................................................................................. 9
CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguadilla Shopping Ctr., Inc. v. PMC Mktg Corp. (In re PMC Mktg. Corp.)*,
447 B.R. 71 (D.P.R. 2011)..................................................................................................4

*Commonwealth v. Dartmouth House Nursing Home, Inc. (In re Dartmouth House Nursing Home, Inc.)*,
24 B.R. 256 (Bankr. D. Mass. 1982), *aff'd,* No. CIV. A. 84-667-Z, 1985 WL 17642 (D. Mass. Sept. 25, 1985) ................................................................................4

*Empresas Inabon, Inc. v. Gotay (In re Empresas Inabon, Inc.)*,
358 B.R. 487 (Bankr. D.P.R. 2006)....................................................................................10

*Enterprise Energy Corp., v. United States (In re Columbia Gas Sys. Inc.)*,
50 F.3d 233 (3d Cir. 1995)..........................................................................................4, 8, 9

*In re Exide Techs.*,
607 F.3d 957 (3d Cir. 2010), *as amended* (June 24, 2010).......................................................5

*Gallivan v. Springfield Post Rd. Corp.*,
110 F.3d 848 (1st Cir. 1997).............................................................................................4, 9

*Garcia-Rubiera v. Fortuno*,
No. 02-1179 (GAG) (D.P.R. Mar. 1, 2016)............................................................................10

*Gracia-Gracia v. Puerto Rico*,
No. 18-1463 (1st Cir. Apr. 16, 2019)......................................................................................8

*Gracia-Gracia v. Puerto Rico*,
No. 18-1463 (1st Cir. Apr. 5, 2019)........................................................................................8

*In re Hawker Beechcraft, Inc.*,
486 B.R. 264 (Bankr. S.D.N.Y. 2013)....................................................................................5

*In re Lakes Region Donuts, LLC*,
No. BR 13-11823-BAH, 2014 WL 1281507 (Bankr. D.N.H. Mar. 27, 2014) .........................5

*Neca Mortg. Corp. v. A & W Developers S.E.*,
137 P.R. Dec. 860 (1995)................................................................................................5, 10

*Olah v. Baird (In re Baird)*,
567 F.3d 1207 (10th Cir. 2009) ........................................................................................4, 6

*In re Sudbury, Inc.*,
153 B.R. 776 (Bankr. N.D. Ohio 1993)..............................................................................6, 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

11 U.S.C. § 502(b)(2) ...........................................................................................................10

P.R. Laws Ann. tit., 31, §3052..................................................................................................5

**Other Authorities**

Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 446
 (1973)..................................................................................................................................4

*Fiscal Plan Macroeconomic Overview and Revised Plan of Adjustment Proposal*
 (August 18, 2020). Available at
 https://drive.google.com/file/d/1ntx_Ad7QYiE22lF15KVm9BAs9qE2sXix/vi
 ew ........................................................................................................................................1

The Official Committee of Unsecured Creditors (the "Committee")[2] hereby files this limited objection (the "Objection") to the *Motion of the Commonwealth of Puerto Rico Pursuant to Bankruptcy Code Section 365 for Entry of Order Approving Assumption of Settlement Agreements with García Rubiera Class Plaintiffs* [Docket No. 15171] (the "Assumption Motion").[3] In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. As an initial matter, the Committee does not oppose the payment in full of all general unsecured creditors, including Plaintiffs. Nevertheless, the Committee is compelled to file this Objection for the simple reason that the two Settlement Agreements[4] at issue—*i.e.*, the Federal Settlement Agreement and the Commonwealth Settlement Agreement—are not executory contracts and, therefore, the Oversight Board cannot assume the Settlement Agreements under section 365 of the Bankruptcy Code. More fundamentally, as this Court recognized in its April 6, 2018 Stay Order denying the Plaintiffs' Lift Stay Motion, it is unfair to prefer some unsecured creditors and pay them in full while other general unsecured creditors who have shared the same "hardships and frustrations"[5] are offered a recovery of only 0.37%.[6]

2. While the Commonwealth owes material obligations under the Settlement Agreements, Plaintiffs do not. Plaintiffs are creditors, not executory contract counterparties. This conclusion is inescapable upon a close examination of the Settlement Agreements, applicable Puerto Rico law, and the Oversight Board's and Plaintiffs' prior representations

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the Assumption Motion.

[4] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Assumption Motion.

[5] Stay Order at 8.

[6] *See Fiscal Plan Macroeconomic Overview and Revised Plan of Adjustment Proposal* at 12 (August 18, 2020). Available at https://drive.google.com/file/d/1ntx_Ad7QYiE22lF15KVm9BAs9qE2sXix/view.

1

regarding the Settlement Agreements. Further, in the absence of any material obligations by Plaintiffs, the Oversight Board cannot point to any real benefit to the Commonwealth from assuming the Settlement Agreements. Critically, the Settlement Agreements do not grant Plaintiffs the right to "walk away" from the settlements simply because the Commonwealth failed to pay by a date certain. Under Puerto Rico law, a breach of a judicial compromise (such as the Settlement Agreements here) only provides Plaintiffs with the right to enforce the compromise; they cannot abandon the compromise and re-litigate the underlying dispute. And the right to seek to enforce the compromise is nothing more than an unsecured claim.

3. Indeed, it makes little sense for the Oversight Board to pay Plaintiffs' claims in full by assuming prepetition non-executory contracts, when, as the Oversight Board itself explains, any proposed plan of adjustment is anticipated to include a convenience class that will provide a full recovery for claims equal to or less than $10,000.[7] Classification of Plaintiffs' claims as convenience class claims and payment of such claims in full through a plan of adjustment is certainly an acceptable approach—and, to be clear, the Committee has no objection to such convenience class treatment under a plan of adjustment.[8]

4. Moreover, payment through a plan of adjustment would avoid the very concerns that this Court previously highlighted in its ruling denying Plaintiffs' motion to lift the automatic stay: "the prospect of preferential treatment over other similarly situated creditors should class members' claims be paid in full prior to the formulation and approval of a debt restructuring

---

[7] In effect, Plaintiffs benefit only marginally by having the Settlement Agreements assumed, as they would be paid in full anyway after the effective date of a plan of adjustment. In fact, the only parties that appear to benefit from having the Settlement Agreements assumed are Plaintiffs' legal counsel, who are owed far more than the proposed $10,000 convenience cap, and would thus be paid in full, while similarly situated unsecured creditors would receive only a miniscule recovery of less than 1% under the Oversight Board's plan proposal.

[8] The Committee reserves all its rights regarding the Oversight Board's proposed $10,000 threshold for convenience class treatment.

2

plan."[9] Granting the Assumption Motion would result in exactly this type of preferential treatment, which is deeply unfair to other general unsecured creditors—many of whom are local, Puerto Rico businesses and/or the beneficiaries of valid prepetition judgments and settlements—who are still awaiting payment, more than three years into these Title III cases.

5. Unfortunately, instead of choosing to pay Plaintiffs' claims through a plan of adjustment, the Oversight Board has filed the Assumption Motion in an attempt to force the "square peg" of the non-executory Settlement Agreements through the "round hole" of section 365 assumption. The Court should reject the Oversight Board's attempt to misuse section 365 in this fashion.

## LIMITED OBJECTION

### I. Plaintiffs' Settlement Agreements Are Not Executory Contracts

6. The Oversight Board's Assumption Motion raises one overriding and dispositive issue: are the Settlement Agreements executory contracts that can be assumed under section 365 of the Bankruptcy Code? The answer is no. The Settlement Agreements are not executory contracts because, as of the Petition Date, they imposed no ongoing material obligations on Plaintiffs.

### A. Contracts Are Only Executory if, as of Petition Date, Both Sides Owe Material Obligations That, if Not Performed by One Side, Would Excuse Breach by Other Side

7. As the Oversight Board notes in a footnote (which contains the only discussion of this issue in the Assumption Motion), an executory contract is defined as: "[a] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material

---

[9] Stay Order at 8.

3

breach excusing performance of the other."[10] The Third Circuit Court of Appeals explained in the seminal case of *Enterprise Energy Corp., v. United States (In re Columbia Gas Sys. Inc.)*, 50 F.3d 233, 239-40 (3d Cir. 1995), that "unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365." *Id.*

8. Thus, for the Settlement Agreements to be executory, the Oversight Board must demonstrate that, as of the Petition Date, the Settlement Agreements imposed upon Plaintiffs (and the Commonwealth) material obligations not yet fully performed and that failure by Plaintiffs to perform such material obligations would have excused performance by the Commonwealth. As explained by the First Circuit Court of Appeals, quoting *Columbia Gas*:

> In cases where the nonbankrupt party has fully performed, it makes no sense to talk about assumption or rejection. . . . Rejection is meaningless in this context, and assumption would be of no benefit to the estate, serving only to convert the nonbankrupt's claim into a first priority expense of the estate at the expense of the other creditors.[11]

Accordingly, a contract is not executory if a party's only remaining obligations thereunder as of the Petition Date are gratuitous, ministerial, or constitute simply conditions the failure of which does not excuse performance by the counterparty.[12]

---

[10] *Aguadilla Shopping Ctr., Inc. v. PMC Mktg Corp. (In re PMC Mktg. Corp.)*, 447 B.R. 71, 78 (D.P.R. 2011) (quoting Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 446 (1973)). *See also Gallivan v. Springfield Post Rd. Corp.*, 110 F.3d 848, 851 (1st Cir. 1997) (noting that federal courts have "generally settled upon" the Countryman definition).

[11] *Gallivan*, 110 F.3d at 852 (quoting *In re Columbia Gas System, Inc.*, 50 F.3d at 239).

[12] *See e.g., Olah v. Baird (In re Baird)*, 567 F.3d 1207, 1212 (10th Cir. 2009) (debtor's remaining obligations under contract were "best considered ministerial"); *Gallivan*, 110 F.3d att 852 (1st Cir. 1997) (parties had "done all that they were obligated to do prior to the debtors' filing and that their further efforts were gratuitous"); *Columbia Gas*, 50 F.3d at 241 ("[I]f the remaining obligations in the contract are mere conditions, not duties, then the contract cannot be executory for purposes of § 365 because no material breach could occur."); *Commonwealth v. Dartmouth House Nursing Home, Inc. (In re Dartmouth House Nursing Home, Inc.)*, 24 B.R. 256, 260 (Bankr. D. Mass. 1982), *aff'd,* No. CIV. A. 84-667-Z, 1985 WL 17642 (D. Mass. Sept. 25, 1985) (sole remaining obligation was ministerial and did not "rise to the level of an executory obligation").

> **B. Under Puerto Rico Law, as of Petition Date, Plaintiffs Had No Material Obligations under Settlement Agreements for Which Failure to Perform Could Excuse Commonwealth's Breach**

9. To determine whether parties to a contract have unperformed obligations that would constitute a material breach if not performed, bankruptcy courts typically look to contract principles as developed under applicable non-bankruptcy law.[13] Notably, Puerto Rico contract law adopts a narrow view of the kind of obligations material enough such that one party's non-performance will excuse the other party's breach. In particular, "the unperformed obligation must be ***an essential obligation, or its performance must constitute the reason for which the other party entered into the contract***."[14] By contrast, the failure to perform "obligations that do not constitute the real reason for executing the contract and that are incorporated into the same to complete or clarify the contracting parties' stipulations" cannot rise to the level of a material breach.[15] This narrow view of what constitutes a material breach "promotes the fulfillment of contracts, and prevents each party from attempting, by way of a lesser breach, to release himself or herself from the obligation because said party is no longer interested or because it does not suit him or her anymore."[16]

10. Here, as of the Petition Date, the Settlement Agreements imposed no ongoing obligations on Plaintiffs that could be considered "essential" or "the reason for which [the Commonwealth] entered into" the Settlement Agreements. In other words, as of the Petition

---

[13] *See e.g., In re Exide Techs.*, 607 F.3d 957, 963 (3d Cir. 2010), *as amended* (June 24, 2010) (applying New York law); *In re Lakes Region Donuts, LLC*, No. BR 13-11823-BAH, 2014 WL 1281507, at *9 (Bankr. D.N.H. Mar. 27, 2014) (applying New Hampshire law); *In re Hawker Beechcraft, Inc.*, 486 B.R. 264, 276 (Bankr. S.D.N.Y. 2013) ("The materiality of the breach is a question of state law.").

[14] *Neca Mortg. Corp. v. A & W Developers S.E.*, 137 P.R. Dec. 860 (1995) (emphasis added) (discussing requirements of rescission under Article 1077 of the PR Civil Code, P.R. Laws Ann. tit., 31, §3052). A Westlaw English translation of *Neca Mortg. Corp. v. A & W Developers S.E.*, 137 P.R. Dec. 860 (1995) is attached as **Exhibit A** hereto.

[15] *Id.*

[16] *Id.*

5

Date, there was no action under the Settlement Agreements that Plaintiffs could fail to perform that would have given the Commonwealth an excuse to ignore its obligations thereunder.

11. Indeed, although the Settlement Agreements contain provisions addressing the resolution of the prepetition litigation, the implementation of a notice and claims process, the waiver of interest by Plaintiffs, and the advancement of Plaintiffs' attorney's fees, each of these provisions had either already been satisfied as of the Petition Date or is squarely an obligation of the Commonwealth. In fact, the only obligations of Plaintiffs that even arguably remained outstanding as of the Petition Date are:

    i. cooperation with the Commonwealth in the development of a website and the drafting of notices to be published in newspapers and announced on the radio;[17] and

    ii. submission of claims within the reimbursement period containing required personal information and certifications.[18]

These obligations, however, cannot be considered essential under Puerto Rico law and are insufficient to create an executory contract.[19]

---

[17] *See* Federal Settlement Agreement ¶¶ II.1.d, c, f. The Committee does not concede that the Settlement Agreements created contractual obligations with respect to the notice process, but we assume so merely for the sake of argument. The Oversight Board argues that the Settlement Agreements created "ongoing obligations to cooperate and develop the contents of the individualized notices to be provided to Plaintiffs' class members, general publication and radio notices, and an internet portal." Assumption Mot. at 7 n.4. But there is very little textual evidence of these alleged obligations. The Settlement Agreements make the Commonwealth, not Plaintiffs, responsible for the notification process, establish all the key provisions of the settlement which are agreed to therein, and do not require that Plaintiffs take any specific affirmative actions with respect thereto. The only textual evidence suggesting a possible obligation to cooperate are the provisions in the Federal Settlement Agreement stating that (i) the content of the internet page, (ii) copies of newspaper notices, and (iii) the contents of radio notices "will be agreed to by the parties." Federal Settlement Agreement ¶¶ II.1.d, c, f. Notably, however, the Settlements Agreements' references to the individual notices do not contain any such "agreed to by the parties" language, *see* Commonwealth Settlement Agreement ¶ 6.B, Federal Settlement Agreement ¶ II.1.a, and in any case, forms related to the individual notice, website, and publication notice, seem to have already been agreed to by the time the parties signed the Commonwealth Settlement Agreement, as they were apparently attached to the Commonwealth Settlement Agreement as exhibits. *See* Commonwealth Settlement Agreement ¶¶ 6.B.i., 6.C.i, ii (referring to attachments related to individual notice, website, and newspaper notice). In addition, according to the Federal Settlement Agreement (which is controlling), the notification process was to have been completed by October 1, 2016, well before the Petition Date. *See* Federal Settlement Agreement ¶ II.1.

[18] *See* Federal Settlement Agreement ¶ III.1-2; Commonwealth Settlement Agreement ¶ 6.D.i-ii.

6

12. The position taken by the Oversight Board—that Plaintiffs' cooperation on website design or the wording of notices, or their submission of timely claim forms, are tasks that are so essential that a failure to perform would allow the Commonwealth to renege on the entirety of its obligations under the Settlement Agreements and re-litigate the settled issues—defies common sense. Such ministerial obligations are precisely the type of obligations that "do not constitute the real reason for executing the settlement agreement," and merely "complete or clarify the contracting parties' stipulations," and as such they cannot form the basis for a claim of material breach under Puerto Rico law.

13. For the same reason, Plaintiffs' alleged obligations cannot be reasonably characterized as the reason the Commonwealth agreed to the settlement. As of the Petition Date, the Commonwealth had already obtained what it bargained for—final court orders resolving the outstanding litigation issues as well as a waiver of outstanding interest that may have been owed to Plaintiffs. The Commonwealth was not induced to enter into the Settlement Agreements by the prospect of designing a website, finalizing notices, or the prospect that vehicle owners would timely submit claim forms. Again, those matters pertain to the ministerial issues of notification and claims submissions; they do not affect any of the key settlement terms.

14. Furthermore, while Puerto Rico law is dispositive, case law from other jurisdictions makes clear that Plaintiffs' outstanding obligations do not create an executory contract. For example, courts have held that contractual obligations to "cooperate" with a counterparty, such as Plaintiffs' alleged obligation to cooperate in the formulation of notification materials, do not constitute material obligations sufficient to create an executory contract.[20]

---

[19] The notification and claims submission processes were completed postpetition and the only remaining obligation under the Settlement Agreements is the Commonwealth's reimbursement obligation.

[20] *See Olah v. Baird (In re Baird)*, 567 F.3d 1207, 1212 (10th Cir. 2009) (obligations remaining under insurance contract, including obligation to cooperate, "are best considered ministerial"); *In re Sudbury, Inc.,* 153 B.R.

7

Similarly, obligations related to the submission of timely paperwork to collect claims (such as the claim forms at issue here) have been ruled as insufficient to create an executory contract where, as here, a failure to perform such obligations would not excuse the other party's performance under the settlement agreement generally.[21]

15. Indeed, until recently, neither the Oversight Board nor Plaintiffs suggested that Plaintiffs have material obligations remaining under the Settlement Agreements. To the contrary, Plaintiffs asserted, in connection with their appeal of the order denying the Lift Stay Motion, that "the merits of the claims and the right to payment had already been litigated, and what only was pending was the filing of the administrative claim for reimbursement by each member of the class [and] the payment balance of the agreement attorney's fees."[22] Moreover, Plaintiffs described their discussions with the Commonwealth regarding the notification process merely as "meeting and trying to work out the details of the agreed notice and reimbursement procedure."[23] Furthermore, the Oversight Board previously asserted that the Plaintiffs were mere general unsecured creditors.[24]

16. In sum, the lack of any material obligations owed by Plaintiffs under the Settlement Agreements is dispositive in this matter and precludes the application of section 365 of the Bankruptcy Code.

---

776, 779 (Bankr. N.D. Ohio 1993) ("No reported case has held that the insured's obligation to cooperate would transmute the policy into an executory contract under section 365.").

[21] *See Enterprise Energy Corp., v. United States (In re Columbia Gas Sys. Inc.)*, 50 F.3d 233, 241 (3d Cir. 1995) (failure of plaintiff class members to execute a release of claims and a supplemental contract as required for payment under settlement agreement would be mere failure of condition and not material breach).

[22] Appellant Reply Br., at 1-2, *Gracia-Gracia v. Puerto Rico*, No. 18-1463 (1st Cir. Apr. 16, 2019).

[23] *Supplementary Mem. in Compliance with Order of Mar. 9th & Mar. 13th, 2018*, at 3 [Docket No. 2777].

[24] *See e.g.*, Appellee Br., at 37 n.10, *Gracia-Gracia v. Puerto Rico*, No. 18-1463 (1st Cir. Apr. 5, 2019). ("Of course, if the Commonwealth is correct that Appellants hold general unsecured claims, the district court's decision not to lift the stay was plainly correct.").

8

## II. Assumption of Prepetition Settlement Agreements Is Impossible, Regardless of Business Judgment Standard

17. In the Assumption Motion, the Oversight Board argues that assumption is appropriate under the debtor-friendly business judgment standard. In doing so, the Oversight Board emphasizes what it characterizes as the benefits of assuming the Settlement Agreements, such as the end of litigation and the expediting of payments to thousands of Commonwealth citizens.[25] However, the business judgment standard cannot be applied to the proposed assumption of a contract that is not executory in the first place.

18. The purpose of assumption under section 365 is to ensure that a debtor captures the potential benefit remaining under a contract with material obligations remaining on both sides.[26] Thus, where there are no material obligations owed by the non-debtor party as of the Petition Date, there can be no benefit brought about by assumption, even if "assumption" were theoretically possible.[27] Indeed, the Assumption Motion is a perfect example of why the concept of assumption can only apply where a counterparty's remaining performance somehow benefits the debtor. Here, in the absence of any material obligations owed by Plaintiffs, the Oversight Board's business judgment argument regarding the alleged "benefits" of assumption falls apart because the Oversight Board can point to no actual benefit of assuming the Settlement Agreements.

19. Contrary to the Oversight Board's assertion, expediting payments to Commonwealth citizens is not a "benefit" that the Commonwealth can obtain by assuming the

---

[25] *See* Assumption Mot. ¶ 24.

[26] *See, e.g., In re Sudbury, Inc.,* 153 B.R. at 778–79 ("Section 365 is designed to give the trustee the option of assuming contracts ***where performance by a third party will benefit the estate*** . . . .").

[27] *See Gallivan v. Springfield Post Rd. Corp.,* 110 F.3d 848, 852 (1st Cir. 1997) (quoting *In re Columbia Gas System, Inc.*, 50 F.3d at 239) (where nonbankrupt party has fully performed, "[r]ejection is meaningless . . . and assumption would be of no benefit to the estate serving only to convert the nonbankrupt's claim into a first priority expense of the estate at the expense of the other creditors").

9

contract, because the obligation to process payments is the Commonwealth's burden, not its benefit. The transformation of Plaintiffs' prepetition claim into a postpetition administrative claim cannot reasonably be considered a "benefit" to the Commonwealth. Nor is Plaintiffs' waiver of their claims to interest relevant. That waiver is a benefit that accrued to the Commonwealth prior to the Petition Date; it is not an obligation that Plaintiffs still hold in their power to provide or deny and that the Commonwealth must procure through assumption. In any event, Plaintiffs, as unsecured creditors, are not entitled to postpetition interest.[28]

20. Moreover, the Settlement Agreements do not grant Plaintiffs the right to "walk away" from the settlements simply because the Commonwealth failed to pay by a date certain. Under Puerto Rico law, "judicial compromises"[29] like the Settlement Agreements (which have been incorporated into court orders under which the applicable courts retained jurisdiction to enforce the agreements' terms[30]) cannot simply be abandoned if a party does not perform; the aggrieved party must seek enforcement of the compromise through an execution of judgment proceeding.[31] Thus, the Commonwealth's failure to satisfy its obligations under the Settlement

---

[28] *See* 11 U.S.C. § 502(b)(2).

[29] *See also Empresas Inabon, Inc. v. Gotay (In re Empresas Inabon, Inc.)*, 358 B.R. 487, 524 (Bankr. D.P.R. 2006) ("There are two types of settlement or compromise agreements, judicial and extrajudicial. *Neca, id.* Extrajudicial are those voluntarily agreed to by the parties before the commencement of a civil action, or entered into during the pendency of a lawsuit, without seeking the court's intervention. *Id.* However, if the parties move to incorporate the settlement agreement into a legal action already in progress, the settlement becomes judicial.").

[30] *See Judgment, Garcia-Rubiera v. Fortuno*, No. 02-1179 (GAG) (D.P.R. Mar. 1, 2016) [Docket No. 448] (*"*Judgment is hereby entered issuing permanent injunction as stipulated by the parties . . . ."); *Partial Judgment* in Commonwealth Action, Assumption Mot. Ex. 1 at 1 ("All agreements asserted by these parties in the Joint Motion on Partial Agreement and Stipulation filed on March 30, 2016 are hereby adopted by reference.").

[31] *Neca Mortg. Corp. v. A & W Developers S.E.*, 137 P.R. Dec. 860, 875 (1995) ("[W]here a judicial compromise is involved, if one of the parties does not comply with what was stipulated, rescission, as a rule, does not lie. In these cases, performance of the compromise may be immediately sought, because it has for the parties the same effect as a final judgment, and summary proceedings would lie."). *See also In re Empresas Inabon, Inc.*, 358 B.R. at 524 ("There are two types of settlement or compromise agreements, judicial and extrajudicial. *Neca, id.* Extrajudicial are those voluntarily agreed to by the parties before the commencement of a civil action, or entered into during the pendency of a lawsuit, without seeking the court's intervention. *Id.* However, if the

Agreements does not somehow revive the underlying lawsuits. Further, Plaintiffs' right under Commonwealth law to seek enforcement of the Settlement Agreements is merely a prepetition unsecured claim.

21. In sum, the Assumption Motion cannot succeed because there is no executory contract to assume. Assumption is inapplicable and inappropriate because, as a definitional matter, the Settlement Agreements can provide no future benefits to the Commonwealth. As noted above, the appropriate resolution of this matter is right before the Oversight Board's eyes: payment of Plaintiffs, as members of a convenience class, through a confirmed plan of adjustment. Assumption of the Settlement Agreements not only would be contrary to the Bankruptcy Code, it is unnecessary, provides no benefit to the Commonwealth, and provides only minimal benefits to Plaintiffs, who can be paid in full under a plan of adjustment.

## **CONCLUSION**

22. Based on the foregoing, the Committee requests that the Court deny the Assumption Motion, without prejudice to the payment in full of Plaintiffs' claims pursuant to a confirmed plan of adjustment.

[*Remainder of page intentionally left blank.*]

---

parties move to incorporate the settlement agreement into a legal action already in progress, the settlement becomes judicial.").

WHEREFORE, the Committee respectfully requests that the Court deny the Assumption Motion, as set forth herein.

Dated: November 25, 2020

By: */s/ Luc A. Despins*

**PAUL HASTINGS LLP**
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: */s/ Juan J. Casillas Ayala*

**CASILLAS, SANTIAGO & TORRES LLC**
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*