**EXHIBIT A**

**Neca Mortg. Corp. v. A & W Dev. S.E., 1995 JTS 10 (1995)**
137 D.P.R. 860, 1995 P.R.-Eng. 905,586, P.R. Offic. Trans.

[Texto original en espanol](#)

🟨 KeyCite Yellow Flag - Negative Treatment

Distinguished by [One To Four And More, Inc. v. Coral Corp.,](#) TCA, March 10, 2010

1995 JTS 10, 137 D.P.R. 860, 1995 WL 905586 (P.R.), 1995 P.R.-Eng. 905,586, P.R. Offic. Trans.

Neca Mortgage Corporation,
Plaintiff and Appellant

v.

A & W Developers S.E. *et al.*,
Defendants and Appellees

Supreme Court of Puerto Rico.
No. RE–92–494
San Juan, Puerto Rico, February 7, 1995

JUSTICE NAVEIRA DE RODóN delivered the opinion of the Court.

**I**

**Review**

Facts

A & W Developers S.E. (hereinafter A & W) owns a lot located at Barrio Caimital, in Aguadilla. Neca Mortgage Corporation (hereinafter Neca) agreed with A & W to purchase this lot. However, for a variety of reasons, the sale did not take place.[1] As a result, Neca sued A & W, seeking specific performance of the contract and asking the trial court to enter a notice of *lis pendens* in the Registry of Property. On July 16, 1991, the court ordered the entry of the notice of pendency.

On August 1, 1991, A & W made Neca an offer of compromise that included a new sale price and the terms of the settlement, and that established August 20, 1991, as the effective date. On *August 16, 1991*, Neca made a counteroffer, proposing *September 20, 1991,* as the closing date. On that same date, August 16, 1991, A & W accepted all the conditions proposed by Neca, except for the sale price. Three days later, on August 19, 1991, Neca made a new counteroffer regarding the price.

On August 28, 1991, the parties reached a final agreement on the sale price. By letter of that same date, Neca's counsel indicated the following to A & W's counsel:

I hereby confirm our telephone conversation ... about our counteroffer and the amount set as the sale price.

We agreed that the price would remain at $200,000.00, and that after deducting the $81,000.00 balance of the first mortgage in favor of Banco Popular[,] according to the sum informed by you, which is subject to verification on the closing date, as well as other expenses and attorney's fees [,] your client will receive $117,000.00 net.

*The remaining agreements set forth in our letter of August 16, 1991, will remain unchanged*. We have yet to inform you whether we will be able to

proceed with the closing *before September 20, 1991.* As soon as I have our client's confirmation[,] we will contact you to set the closing date. [Emphasis added.]

By letter of September 1[9], 1991, Neca notified A & W that the purchase and sale contract could not be executed on September 20, 1991. The letter began with the following paragraph:

Pursuant to our agreement, we are supposed to execute the corresponding purchase and sale deed tomorrow, September 20, 1991, to settle the above-mentioned lawsuit.

Since the settlement did not take place on the agreed date, A & W filed a "Motion to Cancel Notice of *Lis Pendens* and Counterclaim" in the Superior Court, alleging that the parties had reached a compromise agreement according to which the sale would have taken place no later than September 20, 1991, and that Neca had breached said agreement. A & W stated that, notwithstanding said agreement, Neca had allowed the notice of *lis pendens* to remain in effect for over a month, thus causing it personal and commercial damage. It also pointed out that it had decided to rescind the compromise agreement, and moved the court to dismiss the original complaint, to cancel the notice of *lis pendens,* and to award it $40,000 in damages for the breach of the compromise agreement and for the entry of the notice of *lis pendens*. A & W subsequently filed a motion for partial summary judgment, to which it attached the communications exchanged by the parties.

Neca objected to the above motion and stated that, in order to put an end to the lawsuit, it accepted that a compromise had indeed been reached, but that the date had not been set, and that it was incumbent upon the court to set a date to carry out the settlement. It also alleged that the date is an accessory obligation that does not give rise to the right to rescind the agreement.

Case:17-03283-LTS Doc#:15275-1 Filed:11/25/20 Entered:11/25/20 15:00:00 Desc:
Exhibit A Page 3 of 7

Neca Mortg. Corp. v. A & W Dev. S.E., 1995 JTS 10 (1995)
137 D.P.R. 860, 1995 P.R.-Eng. 905,586, P.R. Offic. Trans.

The trial court rendered summary judgment for A & W, and concluded that the parties had reached a compromise that provided that the purchase and sale deed would be executed on September 20, 1991; that said compromise constituted a novation that extinguished the original purchase and sale contract; that by failing to execute the deed, Neca had incurred default; and that such nonperformance of mutual obligations gives rise to the rescission of the compromise agreement and to a claim for damages. Consequently, the court dismissed the original claim, rescinded the compromise agreement, and left the claim for damages pending. Finally, the court stated that once the judgment became final and unappealable, the notice of *lis pendens* would be cancelled.

Aggrieved by the result, Neca seeks review before this Court assigning the following errors:

1. The court violated the due process of law by issuing summary judgment granting a supplemental counterclaim, the filing of which was neither requested nor authorized by the court, thus precluding plaintiff from answering and raising affirmative defenses against said counterclaim, and granting remedies that were neither requested nor proper at law.
2. The court erred in concluding that there was an agreement to execute deeds on September 20, 1991, which fact was essential to the judgment and over which there was a controversy that barred the rendering of summary judgment.
3. The court erred in deciding that plaintiff breached the compromise by failing to execute deeds on the agreed date, therefore incurring default after having been notified by [defendant] to execute them; and by not determining, instead, that the execution of deeds is an accessory obligation, and that defaulting on the same does not authorize the rescission of a contract, much less of a compromise, which is res judicata and is not subject to rescission.
We decided to review and issued the writ.

## II

*Supplemental pleading*
**[1–3]** Under Civil Procedure Rule 11.1 (32 L.P.R.A. App. III), a defendant must state, at the time of serving the pleading, any compulsory counterclaim, that is, any claim the defendant may have against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of plaintiff's claim. The purpose of this rule is to prevent multiple litigation by establishing a mechanism for the resolution of all common controversies in a single suit. Rafael Hernández Colón, *Manual de derecho procesal civil* 183, San Juan, Ed. Equity (rev. 2d ed. 1981); 2 José A. Cuevas Segarra,

*Práctica procesal puertorriqueña: Procedimiento civil* 68, San Juan, Pubs. J.T.S. (1986). If a compulsory counterclaim is not brought on time, defendant waives the cause of action that gives rise to it, and the claims and facts will be totally adjudicated, thus precluding the defendant from bringing a later claim arising out of the same occurrence. Hernández Colón, *supra.* By analogy, the rule of *res judicata* will be applicable in the sense that it will be conclusive as to any question that could have been but was not raised. *Sastre v. Cabrera*, 75 P.R.R. 1, 3 (1953).

**[4–5]** However, there are several exceptions that exempt a defendant from filing the compulsory counterclaim in his or her answer to the complaint. One of these is the counterclaim by supplemental pleading, through which a defendant may file his or her counterclaim when the facts that gave rise to it occurred after defendant served his or her pleading. Civil Procedure Rule 11.5 (32 L.P.R.A. App. III). Permission of the court may be sought to file this supplemental pleading. This last rule is related to Civil Procedure Rule 13.4 (32 L.P.R.A. App. III), which allows a party to serve a supplemental pleading at any time during the proceedings, but always at the discretion of the court. The purpose of this rule is to update the action by adding pleadings arising from events that have occurred since the date of the pleading sought to be supplemented. Cuevas Segarra, *supra*, at 81. The best practice is to attach to the proposed supplemental pleading the motion seeking permission to file the same. Hernández Colón, *supra*, at 189. If the court deems that the adverse party must plead to the supplemental pleading, it shall so order, specifying the time therefor. Civil Procedure Rule 13.4 (32 L.P.R.A. App. III).

**[6–7]** The rules that grant the courts discretion to authorize amendments to the pleadings are remedial provisions that should be construed liberally. *Gutiérrez et al. v. Foix et al.*, 23 P.R.R. 68 (1915). Also, the power of the courts to allow amendments to pleadings is very broad, and a clear abuse of discretion or evident prejudice to the adverse party would have to be shown in order to reverse the decision of a judge. *Torres et al. v. Ramos*, 28 P.R.R. 545, 547 (1920).

Although in this case it is true that A & W did not expressly request the court's permission to file a counterclaim by supplemental pleading, it is not less true that the court accepted the same. The counterclaim was filed on October 2, 1991, and the court, by Order of October 14, 1991, gave the adverse party—Neca—ten days to reply. Neca filed its reply to the counterclaim. The court subsequently held a status

conference at which both parties discussed the issues raised in the counterclaim. The above shows that the court, in the exercise of its sound discretion, allowed the parties to state their positions and took the counterclaim under advisement.

[8–9] On the other hand, the remedies granted in the partial summary judgment arose from the counterclaim. Also, regardless of whether said remedies were contained in the prayer, a court shall grant in its judgment the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief. Civil Procedure Rule 43.6 (32 L.P.R.A. App. III); *A.T.P.R. v. Padín Santiago,* 104 D.P.R. 426, 428 [4 P.R. Offic. Trans. 590, 594] (1975). Any error in the title of the action or in the prayer for relief shall not preclude the court from granting the appropriate remedy in accordance with the pleadings and the evidence. Civil Procedure Rule 70 (32 L.P.R.A. App. III). Now then, whether the remedies granted by the trial court in this case were proper at law will be the subject of our discussion in Part IV of this opinion.

### III

*Summary judgment*
[10] Civil Procedure Rule 36 (32 L.P.R.A. App. III) empowers the court to discretionally render summary judgment for a party. The purpose of the summary judgment mechanism is to expedite proceedings by allowing a judgment without a hearing on the merits when the uncontroverted documents attached to the motion show that there is no genuine controversy of fact and that it would only suffice to apply the law. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 [17 P.R. Offic. Trans. 854, 861] (1986).

In the case under our consideration, the parties attached to the motion for summary judgment and to the opposition documentary evidence consisting of the letters they had exchanged. Neca also enclosed a sworn statement explaining why the original closing scheduled for August 20, 1990, did not take place.

All the communications exchanged by the parties show that since August 16, 1991, they had agreed that the closing would take place on September 20, 1991. They subsequently discussed the possibility of effecting the closing *before* September 20, 1991. Thus, there is no controversy over the fact that said date was the deadline for closing the sale according to the compromise agreement.[2] The second error was not committed either.

### IV

*The compromise agreement and the concept of rescission*
With regard to the third error assigned, Neca contends that since there was a compromise agreement, the trial court should have ordered its performance instead of its rescission. We do not agree.

[11–13] A compromise is a contract by which the parties, by mutual concession, avoid the provocation of a lawsuit or terminate one that has already been instituted. Civil Code sec. 1709 (31 L.P.R.A. § 4821). According to this definition, two premises are necessary for a contract to be considered a compromise: the existence of a controversy between two or more persons, and the need for mutual concession. From this we can also gather that there are two kinds of compromise agreements: judicial and extrajudicial. If, before the commencement of an action, the parties agree to terminate the controversy by way of an agreement, we have an extrajudicial compromise. It could also happen that, during the pendency of an action, the parties agree to compromise without the court's intervention. In this case, we also have an extrajudicial compromise, and a mere notice of dismissal will suffice. However, if the controversy leads to litigation and, after its commencement, the parties agree to terminate the controversy and move to incorporate the agreement into the action already under way, we have a judicial compromise that terminates the action. IV–2 José Ramón Vélez Torres, *Curso de derecho civil* 498, San Juan, Ed. Rev. Jur. U.I. (1990).

As in every contract, the compromise must meet the requirements established in Civil Code sec. 1213 (31 L.P.R.A. § 3391). There is consent between the contracting parties, since [the compromise] must be consensual; its object is the controversy between the parties—judicial or extrajudicial—because the compromise would not exist without it; and its cause is the termination of the controversy through mutual concession. Although its aim is to terminate a pending conflict, it differs from other contractual figures that have the same purpose in that this objective is achieved through mutual renunciation. XXII–2 Tomás Ogáyar Ayllón, *Comentarios al Código Civil y compilaciones forales* 5, Madrid, Ed. Rev. Der. Privado (1983).

It has been extensively discussed whether the compromise should have the same effect as the final judgment—that is, the authority of res judicata—or if, on the contrary, it should merely constitute a contract like any other contract that requires a new litigation for its enforcement, in default

of its performance. 3 Diego Espín Cánovas, *Manual de derecho civil español* 734, Madrid, Ed. Rev. Der. Privado (6 th ed. 1983). We must remember that the compromise, like any other contract, does not guarantee against breach by any of the parties, thus making judicial intervention necessary to overcome a hostile disposition and see to it that the compromise achieves its essential objective of settling controversies in the manner agreed upon. IV José Castán Tobeñas, *Derecho Civil español, común y foral* [818 n. 1], Madrid, Ed. Reus (12 th ed. [1985] ).

**[14]** Civil Code sec. 1715 (31 L.P.R.A. § 4827), which incorporates the principle that attributes the authority of res judicata to the compromise, provides that "[a] compromise has, with regard to the parties, the same authority as res judicata; but summary proceedings shall not be proper except when the fulfilment of a judicial compromise is in question." This means that the parties must consider the points discussed as definitely resolved and cannot go over them again. *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. 503, 516 [21 P.R. Offic. Trans. 496, 508–509] (1988). It also means that only the judicial compromise has the authority to give rise to summary judgment, that is, to seek enforcement as if it were a final judgment.

**[15]** Consequently, the great difference in the manner of enforcing performance of the compromise agreement lies in the judicial or extrajudicial nature of the compromise. Performance of the judicial compromise may be enforced through an execution of judgment proceeding, while performance of the extrajudicial compromise can only be enforced after it is declared legally effective by a court. Espín Cánovas, *supra*, at 734; Puig Peña, *supra*, at 382.

With regard to the controversy at hand and in light of the above, we must answer the following question: is it possible to apply to the compromise agreement the same rescissory faculty granted by Civil Code sec. 1077 (31 L.P.R.A. § 3052) to the party aggrieved by a breach of contract?[3]

A Spanish doctrinary sector believes that the general rules governing the rescission of contracts apply to the compromise and that, therefore, a party may seek and obtain rescission as a result of the other party's breach. XXVIII Quintus Mucius Scaevola, *Código Civil* 378–380, Madrid, Ed. Reus (1953); II–3 José Luis Lacruz Berdejo, *Elementos de derecho civil* 362, Barcelona, Ed. Bosch (1979); 2 Manuel Albaladejo, *Derecho civil* 445, Barcelona, Ed. Bosch (8 th ed. 1989).

The Spain Supreme Court caselaw has followed the same course of thought. In general, it has held that the fact that a compromise has res judicata authority does not mean that it is an invulnerable contract. In its Judgment of April 26, 1963, said court admitted to the application of the so-called tacit resolutory condition to the compromise agreement, and reasoned that the controversy was terminated by the compromise, and this gave rise to obligations under art. 1124 of the Spanish Civil Code, which provision is identical to our Civil Code sec. 1077. The court held that once the compromise agreement is reached,

> ... it, and only it will regulate future relationships inherent in the matter so compromised, whether it consists of the ratification, modification or extinction of some of them, or of the creation of different ones; thus, the effects of res judicata will become manifest with absolute respect to the new situation and through the scrupulous performance of the obligations set forth in the compromise; this, however, does not mean that the performance or breach of those obligations is subject to rules different from the general rules already laid down, because this would require an exception principle not established by, or derived from the law.

The judgment affirmed the doctrine established in the Judgment of September 29, 1930, which stated that "art. 1.124 of the Civil Code ... when referring to resolutory actions, instead of rescissory actions, refers to all kinds of mutual obligations without distinction or exception because of their origin, and without excluding from its provisions those arising from the compromise agreements." Judgment of September 29, 1930, No. 39, 196 *Jurisprudencia Civil* 144. The Judgments of June 14, 1932, March 12, 1947, May 16, 1951, and June 15, 1957, which contained identical statements, expressly admitted that rescission of the compromise may be sought if its stipulations are openly breached. See also the Judgments of November 14, 1986, and June 11, 1989.

A minority within the Spanish doctrinary sector points out that the only available remedy in breach of compromise cases is to enforce performance of the compromise. Ogáyar Ayllón, *supra,* at 64–66; 2 Luis Díez–Picazo and Antonio Gullón Ballesteros, *Sistema de derecho civil* 497, Madrid, Ed. Tecnos (6 th ed. 1989). However, Gullón Ballesteros, in II *Comentario del Código Civil,* at 1775, states that this last position "would be admissible, at the very most, in the case of judicial compromises, but is hard to understand when the extrajudicial compromise is forced to undergo the

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 4

proceedings of a declaratory action to obtain a judgment that compels the breaching party to carry out the agreements as he would perform any other ordinary contract. Therefore, and from this standpoint, rescission of the compromise would cause no major inconveniences if the requirements of art. 1124 [Puerto Rico Civil Code sec. 1077] were present. We must not forget that this figure involves 'mutual' concessions."

**[16–17]** Our caselaw has accepted that a compromise may be rescinded. *Riera v. Macías de Riera,* 42 P.R.R. 560, 570–571 (1931); *Alvarado v. Bonilla*, 86 P.R.R. 464, 475 (1962). In these cases, which involved extrajudicial compromises, the Court held that nonperformance or breach of the terms of a compromise agreement, even supposing that there was a novation, produces its rescission and, consequently, its nonexistence.[4] Today, we ratify these principles, but we also make it clear that where a judicial compromise is involved, if one of the parties does not comply with what was stipulated, rescission, as a rule, does not lie.[5] In these cases, performance of the compromise may be immediately sought, because it has for the parties the same effect as a final judgment, and summary proceedings would lie. On the other hand, if an extrajudicial compromise is involved, rescission may be sought, because the stringent effects mentioned above are not produced. That is, its performance may not be immediately enforced; it must first be declared legally effective by a court, which, upon evaluating the contract, may grant rescissory relief as long as the Civil Code sec. 1077 requirements are met.

**[18–19]** Now then, we must also bear in mind the fact that not every breach of a mutual obligation may lead to rescission. For this to be the case, the unperformed obligation must be an essential obligation, or its performance must constitute the reason for which the other party entered into the contract. On the contrary, nonperformance of accessory or complementary obligations that do not constitute the real reason for executing the contract and that are incorporated into the same to complete or clarify the contracting parties' stipulations, may trigger an action for damages or any other action that the circumstances of each case may warrant, but never a rescissory action. The requirement that the unperformed obligation be the principal obligation serves a higher interest, in keeping with the principle of good faith,

that prevents abuse in the exercise of rescissory actions, promotes the fulfillment of contracts, and prevents each party from attempting, by way of a lesser breach, to release himself or herself from the obligation because said party is no longer interested or because it does not suit him or her anymore. *Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339, 347–348 [23 P.R. Offic. Trans. 311, 320–321] (1989). The courts must be well aware that Civil Code sec. 1077 provides that the court will order the rescission unless there are sufficient reasons authorizing it to fix a period.

In the instant case, the parties reached an extrajudicial compromise of a novatory nature that substantially modified the purchase and sale contract that gave rise to the litigation. The unperformed contractual obligation—the execution of the sale deed within the stipulated term—was the principal obligation. The parties had been negotiating the purchase and sale agreement concerning that piece of real property for over a year. The evidence presented clearly shows that A & W wished to put an end to this matter once and for all and to end the litigation. To do so, the deeds had to be executed within the agreed term. Performance of this obligation was intimately related to the essence of the contract; therefore, the breach of this obligation granted A & W the faculty to demand its specific performance or to seek rescission, damages, and payment of the applicable interest. A & W chose the latter option. It is worth noting that Neca did not state any reason for its failure to execute the deeds on the agreed date. The trial court did not err when it ordered the rescission of the compromise.

Consequently, A & W is entitled to compensation for the damage, if any, suffered as a result of the breach, plus interest. A & W must prove the existence of such damage.

For the foregoing reasons, *the judgment rendered by the Superior Court, Aguadilla Part, on September 18, 1992, is affirmed, and the case is remanded to the trial court for further proceedings consistent with this opinion.*

Chief Justice Andréu García and Justice Rebollo López dissented without a written opinion. Justice Fuster Berlingeri concurred without a written opinion.

MPC/ba

Footnotes

1 In that purchase and sale contract, it was agreed that the closing date would be *August 20, 1990*, and the sale price would be one hundred and two thousand dollars ($102,000).

2 In its letter of August 28, 1991, Neca attempts to distort all the statements made about the closing date with the last sentence, which reads: "As soon as I have our client's confirmation [,] we will contact you to set the closing date." This letter precedes the letter of September 19, 1991, which clearly reaffirms that the closing would take place no later than September 20, 1991.

3 "The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

> "The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.
> "The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.
> "This is understood without prejudice to the rights of third acquirers, in accordance with [secs. 1247 and 1250] ... and with the provisions of the Mortgage Law and of the Property Registry."

31 L.P.R.A. § 3052.

4 The compromise will have a *novatory* effect when the situation preceding the controversy is replaced by the legal situation that gives rise to the compromise; that is, when the parties eliminate, replace or modify, not only fix, the previous uncertain situation. *Citibank v. Dependable Ins. Co., Inc.,* 121 D.P.R. 503, 512 [21 P.R. Offic. Trans. 496, 505] (1988)*; García v. The Commonwealth Ins. Co.,* 118 D.P.R. 380, 387–390 [18 P.R. Offic. Trans. 454, 463–467] (1987).

5 It could happen that performance becomes impossible even after it was agreed to by way of a judicial compromise.

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.