**EXHIBIT I**

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211-160 B.-M-Apr-94-IGPR.

*COMMONWEALTH OF PUERTO RICO*

Page No. _2_ of _15_

*9-1-1 SERVICE GOVERNING BOARD*
Department or Unit
*P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200*
*Address*

| |
|---|
| Department No. |
| |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

*PREMISES LEASE*
*(Continuation Sheet)*

[X] *Five (5) Years or Less or Up to Ten (10) Years in Foreign Locations*

[ ] *More than Five (5) Years Up to Thirty (30) Years*

*OTHER STIPULATIONS:*          ADDENDUM "A"

**These provisions are numbered as additional paragraphs to the sections of Model SC854 to which they refer.**

**Location Leased:**

4.1.     Lessor is a Lessee of the second floor of the AGM Building ("Building") located in Lot E of Corporate Office Park, at No. 36 Highway No. 20 in San Juan, Puerto Rico. This second floor has a surface area of approximately sixteen thousand seven hundred and eighty-four square feet (16,784 sq. ft.). The Building was constructed in 2008 in prefabricated concrete and consists of two floors with a total area of thirty-three thousand three hundred and ninety square feet (33,390 sq. ft.).

**Term of the lease:**

7.1.     The parties agree that the term of the lease will be five (5) years. This term shall commence on May 1, 2012 and shall continue for sixty (60) consecutive calendar months. The provision in the last sentence of clause seven (7) of Model SC 854, regarding cancellation with thirty (30) days' notice, shall not apply to this agreement. Instead, Lessee may cancel this Agreement prior to its expiration by giving written notice of such cancellation received by Lessor at least one hundred and eighty (180) days before the effective date of the cancellation. Lessee shall continue to pay the Monthly Basic Rate under the terms of this Agreement until the effective date of the cancellation. In the event of early termination of this Agreement under this Paragraph 7.1, Lessee shall pay Lessor an additional amount to reimburse Lessee for the investment required to rent and make the Premises available for Lessee's use. This additional amount shall be determined as follows: (a) if the cancellation is effective between May 1, 2012 and April 30, 2013, the additional item shall be equal to six months of the Basic Monthly Rate (not including reimbursement of Building operating expenses) in effect on the effective date of the cancellation; (b) if the cancellation is effective between May 1, 2013 and April 30, 2014, the additional item shall be equal to eighty percent (80%) of six months of the Basic Monthly Rate (not including reimbursement for Building operating expenses) in effect on the effective date of the cancellation; and (c) for each of the three successive twelve-month periods of this contract, the additional item shall be sixty percent (60%), forty percent (40%) and twenty percent (20%), respectively, of the Basic Monthly Rate (not including the reimbursement of Building operating expenses) in effect on the effective date of the cancellation. This additional item must be paid within thirty (30) days of receipt of the notice of cancellation; otherwise, the period required hereunder for pre-notification of the cancellation shall not begin to run until receipt of this payment.

7.2.     Lessee may have access to the Premises before May 1, 2012 to begin work on improvements to the Premises. Lessee shall have the right to such access thirty (30) days after the registration of this Agreement at the Puerto Rico Comptroller's Office. Lessee shall have no obligation to pay for the lease of the Premises or parking spaces during this period of access to the Premises prior to May 1, 2012. Lessor grants access to the Premises and parking spaces as a concession to Lessee to facilitate and expedite the preparation of the Premises. In the event that Lessee decides to enter the Premises during this period, Lessee shall be responsible only for the payment of a pro rata share of the expenses of the common areas of the Building at the rate of four thousand four hundred and twenty-eight dollars and eighty-nine cents

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211-160 B.-M-Apr-94-IGPR.

**COMMONWEALTH OF PUERTO RICO**

Page No. __3__ of __15__

_9-1-1 SERVICE GOVERNING BOARD_
_Department or Unit_
_P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200_
_Address_

| |
|---|
| Department No. |
| |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

**PREMISES LEASE**
**(Continuation Sheet)**

[X] *Five (5) Years or Less or Up to Ten (10) Years in Foreign Locations*

[ ] *More than Five (5) Years Up to Thirty (30) Years*

**OTHER STIPULATIONS:** ### ADDENDUM "A"

($4,428.89) per month. This item expires on the tenth day of each month as provided in Paragraph 9.1.

7.3.  Lessee shall have the right to renew this contract for an additional period of five years. To exercise this right, Lessee must notify Lessor of its interest in renewal not less than one hundred and eighty days prior to the expiration of the five year lease term. This renewal shall be governed by the same terms and conditions of this agreement, except for the Basic Monthly Rate. The portion of the Basic Monthly Rate corresponding to the lease of the Premises shall increase at the rate of three percent (3%) per year for each year of the additional five-year period and the portion corresponding to the lease of the additional parking spaces shall increase to fifty dollars per space for the duration of the additional period.

**Basic Monthly Rate:**

9.1.  Lessee shall pay Lessor for this contract, in monthly installments due, within the first ten (10) days of the following month, without deduction or compensation and in legal tender of the United States of America, at Lessor's principal office or at any other place subsequently designated in writing by Lessor, the Basic Monthly Rate set forth in Exhibit 1 to this Addendum A, which exhibit is incorporated herein and made a part of this contract.

9.2.  Lessee agrees to faithfully pay the Basic Monthly Rate established in this contract and will not fail to pay the same except in the event of a budgetary insufficiency of the Government of Puerto Rico of such nature and magnitude that prevents the Government of Puerto Rico from paying at maturity the amount of any principal or interest term on general obligation bonds of the Government of Puerto Rico. In such event, Lessee shall be in default of its obligations under this agreement and Lessor may exercise its rights in the event of default.

**Adjustments to the Basic Monthly Rate:**

10.1.  The Basic Monthly Rate under this contract includes a component that consists of reimbursement of the proportional part of the operating expenses of the common areas of the Building. For purposes of this contract the terms common areas and operating expenses shall have the same meaning and shall be governed by the provisions set forth by the Owner in its contract with Lessor. This operating expense component is estimated annually by the Owner of the Building and distributed pro-rata among all tenants of the Building according to the rentable area corresponding to each tenant. Each tenant's share is determined by dividing the tenant's rentable area by the total rentable area of the Building. In the case of Lessee, its proportionate share of these expenses is twenty-four point forty-four percent (24.44%), which is the result of dividing the rentable area of the Premises of 8,176.42 square feet by the total rentable area of the Building of 33,390 square feet. The Building Owner estimates these costs at the beginning of each of its fiscal years and at the end of each fiscal year determines the actual costs incurred in that year. If the expenses incurred were greater than estimated, Lessor bills the excess to all tenants pro-rata; if the expenses were less than estimated, then Lessor credits pro-rata the excess paid to tenants. In the latter case, Lessor will invoice or credit Lessee for its proportionate share of the excess as appropriate. Any excess invoiced must be paid within thirty (30) days after receipt of invoice. Lessor has the right to audit the Owner's books once a year to verify these operating expenses

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

*Model SC 854.2*
*6 Mar80*
*CC 1300-12-80 (19 Feb 80*
*J.9-49-03-211-160 B.-M-Apr-94-IGPR.*

**COMMONWEALTH OF PUERTO RICO**

9-1-1 SERVICE GOVERNING BOARD
*Department or Unit*
*P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200*
*Address*

Page No. __4__ of __15__

|  |
|---|
| Department No. |
|  |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

**PREMISES LEASE**
**(Continuation Sheet)**

| X | *Five (5) Years or Less or Up to Ten (I O) Years in foreign locations* |
|---|---|

| | *More than Five (5) Years Up to Thirty (30) Years* |
|---|---|

**OTHER STIPULATIONS:**          **ADDENDUM "A"**

and if Lessee is interested in such an audit, Lessor shall facilitate the same with the Owner of the Building. For the 2012 calendar year, estimated operating expenses amount to six dollars and fifty cents ($6.50) per square foot.

10.2.   Any adjustment to the Basic Monthly Rate pursuant to Paragraph 10.1 or other provisions of this Agreement shall be divided and distributed in twelve (12) monthly installments which shall be added, added, and made in addition to the current Basic Monthly Rate and the first pro rata installment shall be effective on the precise date the amount of such adjustment is notified to Lessee. Lessee shall be obligated to begin the consolidated payments, i.e., the stipulated Basic Monthly Rate plus the corresponding adjustment, at the beginning of Lessee's fiscal year following the date Lessor notifies Lessee in writing of such adjustment. Lessee shall be obligated to satisfy the retroactive and accrued terms from the date the adjustment is notified simultaneously with the first payment. At the request of Lessee, the parties shall grant the necessary amendments to this agreement to reflect the new fee applicable after the adjustments established in the agreement.

**Repairs:**

11.1.   Lessor shall make the necessary repairs to correct faults in the structure, ceilings, plumbing and electricity of the leased Premises, provided that the defects or deficiencies causing such need occur as a result of natural deterioration or wear and tear by the action of time and not by negligent or malicious acts of Lessee, its agents, representatives, contractors, visitors or guests. In the latter case, repairs shall be made by Lessor, but the cost of such repair shall be reimbursed by Lessee upon authorization of the work and subsequent submission of invoices. Minor repairs such as changing shoes, water taps, changing fluorescent tubes, lamps, door locks, sink openings, etc. and whose cost for repair does not exceed $750.00 will be made by Lessee.

11.2.   Lessee may make permanent improvements to the Premises covered by this agreement subject to the prior written consent of Lessor, and Lessor shall consent to such improvements being made at the expense of Lessee, under such conditions as may reasonably be imposed by Lessor, such as uniform conditions applicable to all tenants in the Building. Lessor agrees to deliver the Premises divided from the rest of the second floor of the Building and with bathroom facilities included within the Premises for the exclusive use of the Premises, according to a plan to be agreed upon by the parties. Lessee has requested some additional works to these facilities, as well as to the dividing walls that separate the Premises from the rest of the second floor of the Building. For these additional works Lessee agrees to pay the amount of two thousand five hundred dollars, which will be paid together with the first payment of the Basic Monthly Rate in May 2012.

11.3.   Any repairs that are to be made by Lessor in accordance with the terms and conditions of this contract shall be initiated within a period not to exceed twenty (20) days after Lessor's request or notification and shall be made continuously until its termination. Deficiencies in the air conditioning system, plumbing, toilets and electrical system shall be addressed immediately upon Lessor's knowledge of such deficiency. Lessor shall make every effort to complete all repairs within the quickest possible time frame as circumstances permit.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211- 160 B.-M-Apr-94-IGPR.

*COMMONWEALTH OF PUERTO RICO*

Page No. __5__ of _15_

*9-1-1 SERVICE GOVERNING BOARD*
*Department or Unit*
*P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200*
*Address*

***PREMISES LEASE***
***(Continuation Sheet)***

| | |
|---|---|
| Department No. | |
| Gen. Svcs. Adm. No. | |
| 2012-000053 | |
| COMPTROLLER'S OFFICE Filing No. | |

[X] *Five (5) Years or Less or Up to Ten (JO)*
*Years in Foreign Locations*

[ ] *More than Five (5) Years Up to Thirty (30) Years*

*OTHER STIPULATIONS:*              **ADDENDUM "A"**

**Services and Facilities:**

13.1.   **Air Conditioning:** Lessor shall provide and maintain the two air conditioning machines that will service the leased Premises. Such equipment shall be serviced on weekdays from 7:00 a.m. to 7:00 p.m., and shall not be serviced on weekends or official holidays. The system is designed to maintain an average temperature of 72 degrees F. If air conditioning service is needed outside of regular business hours, Lessee must send written communication well in advance from the person authorized by Lessee to request such service.

13.2.   **Parking area for vehicles:** Lessee shall be entitled to use twenty-three (23) parking spaces for its employees, agents, representatives, guests or visitors. Lessor, its employees, agents or representatives shall not be liable to Lessee, its employees, agents, representatives, guests or visitors in the event of any loss or damage to the vehicles arising from the use of the facilities by any third party, including, without limitation, malicious acts such as theft or vandalism. Lessee agrees to make this condition known to any person who is entitled to the accesses granted herein.

13.3.   **Heavy Vehicles:** In order to avoid accidents or congestion, Lessee agrees that the entrance of heavy vehicles to the general parking area, during working hours, must be previously coordinated with and approved by Lessor.

13.4.   **Elevators:** The building has one (1) elevator for common use by all tenants of the building. The maintenance and repair of the elevators will be at the expense of the Owner of the Building. If the need for repairs arises due to negligent or malicious acts of Lessee, its employees, agents, representatives, visitors or guests, Lessor shall endeavor to have the repairs made, but the cost of such repairs shall be at the expense of Lessee.

13.5.   **Solid Waste:** An 8 cubic yard container will be provided in the loading and unloading area of the Building for common use with the other tenants of the Building. In the event that the pickup established by the Building is insufficient for the needs of all tenants of the Building and it is necessary to require additional pickups, the cost for the additional pickups shall be for the account and charge of Lessee at the rate of the percentage that the rentable area of the Premises represents of the total rentable area of the Building. However, if additional pickups are required for reasons attributable solely to Lessee, its employees, agents or representatives, the additional cost shall be borne solely by Lessee.

13.6.   **Electric Energy:** The consumption of electric energy of the Premises, including electricity for air conditioning and other equipment used in the Premises, will be charged to Lessee. A secondary electricity meter will be installed for the Premises to measure the electricity consumption of the Premises and Lessee will be billed monthly. Lessee shall be obligated to pay these monthly bills within ten days of receipt.

13.7.   **Water:** The Owner of the Building has contracted for all water and sewage services in the Building and common areas. The Owner bills tenants twice a year for the pro-rata portion of this service according to each tenant's rentable area. Upon receipt of this bill, Lessor will bill Lessee for their pro-rata portion of this water bill. This bill must be paid within thirty (30) days of receipt.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211- 160 B.-M-Apr-94-IGPR.

*COMMONWEALTH OF PUERTO RICO*

Page No. _6_ of _15_

*9-1-1 SERVICE GOVERNING BOARD*
Department or Unit
*P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200*
*Address*

***PREMISES LEASE***
***(Continuation Sheet)***

| | |
|---|---|
| Department No. | |
| Gen. Svcs. Adm. No. | |
| 2012-000053 | |
| COMPTROLLER'S OFFICE Filing No. | |

[X]  *Five (5) Years or Less or Up to Ten (JO) Years in Foreign Locations*

*More than Five (5) Years Up to Thirty (30) Years*

*OTHER STIPULATIONS:*          **ADDENDUM "A"**

13.8.    **Fire-fighting equipment:** The Premises have a system of smoke detectors and sprinklers. The maintenance and repair of this system shall be at the expense of Lessor unless the repair is necessary due to the negligent or intentional acts of Lessee, its employees, agents, representatives, guests or visitors. In the latter case, Lessor shall carry out the repairs, but the cost thereof shall be at the expense of Lessee. Lessor shall provide the fire extinguishers required by the Fire Department for the Premises. These fire extinguishers may only be used when required to fight a fire. The maintenance service of the fire extinguishers shall be at the expense of Lessee.

13.9.    **Interruption of Services:** Lessor reserves the right to interrupt the services of electricity, water, air conditioning, etc., when, in moments of emergency, Lessor deems it necessary, to protect the interests of both Lessee and Lessor without being responsible or having to compensate Lessee. Lessor shall consult with Lessee before exercising this right, except in an emergency.

13.10.    **Surveillance:** The building has surveillance services from Monday to Friday, from 3:00 p.m. to 11:00 p.m. The costs of these services are distributed among and reimbursed by the tenants of the Building as operating expenses of the common areas as set forth in Paragraph 10.1.

    **Insurance:**

14.1.    Lessor, directly or through the Building Owner, shall maintain property insurance to cover its interests in the leased Premises against fire, hurricane, earthquake, and other similar contingencies. It shall also maintain "all risk", public liability (comprehensive coverage) insurance in the amount of not less than ONE MILLION DOLLARS ($1,000,000) for bodily injury or damage (including death) and damage to the property of others or third parties to protect its liability in the property covered by this agreement and to Lessee for the common areas. Lessee agrees to comply, at its own expense, with all conditions and requirements of the Leased Premises that are or may be required by the insurance companies, both those insuring Lessee's risk and those insuring Lessor's risk.

14.2.    Lessee undertakes to obtain and maintain, at its own expense, for the duration of the lease, "all-risk" public liability insurance (comprehensive coverage) in the amount of not less than ONE MILLION DOLLARS ($1,000,000) for bodily injury or damage (including death) and damage to the property of others or third parties, for the purpose of protecting Lessor and the Owner of the Building.

14.3.    The parties appearing herein shall supply each other with certificates of said policies indicating that they may not be cancelled or modified without the prior written agreement of both parties. The parties shall provide each other with copies of such certificates before Lessee enters the Premises to make improvements thereto as provided in Paragraph 7.2 and within thirty (30) days of any renewal of such policies or obtaining new policies.

14.4.    Lessee shall indemnify and defend Lessor against any action or claim arising (a) from any act or omission of Lessee, its employees, agents, representatives, visitors, guests or contractors, relating to the possession or use of the Premises and/or parking lots; (b) from any failure to comply with the provisions of this Agreement; and/or (e) from

    I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211- 160 B.-M-Apr-94-IGPR.

**COMMONWEALTH OF PUERTO RICO**

Page No. _7_ of _15_

9-1-1 SERVICE GOVERNING BOARD
Department or Unit
P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200
*Address*

***PREMISES LEASE***
***(Continuation Sheet)***

| Department No. |
| --- |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

[X] *Five (5) Years or Less or Up to Ten (JO)*
*Years in Foreign Locations*

*More than Five (5) Years Up
to Thirty (30) Years*

***OTHER STIPULATIONS:***        **ADDENDUM "A"**

any damage to person or property caused in whole or in part by Lessee, its employees, agents, representatives, visitors, guests or contractors. Lessee shall be responsible for the payment of any judgment, order, resolution or settlement in the event of these actions or claims against Lessor.

14.5 In the event that the Premises are destroyed in whole or in part as a result of a natural disaster or other cause
.      not attributable to Lessee, Lessor shall make efforts to rebuild or repair the Premises within a reasonable time, which the parties agree is not more than one hundred and eighty (180) days. Lessor shall attempt within that time to make the Premises suitable for reoccupancy by Lessee, in whole or in part. However, if in the opinion of the engineer or architect selected by the parties by mutual agreement, within 30 days after the destruction, to estimate the time it will take to bring the Premises into condition to be reoccupied by Lessee, the repairs to said Premises cannot be made earlier than one hundred and eighty (180) days from the date of the event, Lessee shall have the right to terminate this agreement effective as of the date of the event causing the total or partial destruction. This right granted herein to Lessee to terminate this contract must be exercised within fifteen (15) days after the one hundred and eighty (180) day period has elapsed in the first case or, in the second case, fifteen (15) days after the opinion of the architect or engineer has been obtained. If the above-mentioned fifteen (15) days have elapsed in either of the two cases without Lessee exercising its right to terminate the contract, it shall be understood that Lessee has voluntarily waived its right to exercise it and shall be obliged to faithfully comply with the terms of the contract, except that it shall be relieved of paying the corresponding fee during the term of the repairs. If, by mutual agreement of Lessor and Lessee, the latter agrees to occupy the Premises while the repairs last, the Basic Monthly Rate shall be modified by mutual agreement while the repairs last. None of the foregoing shall apply in any case in which the total or partial destruction is due to the negligence or intentional act of Lessee, its employees, agents, representatives, visitors or guests, including failure to take normal and reasonable precautions in any case, including when the original cause of the partial or total destruction is a natural cause. In the latter case, Lessee shall continue to comply with its payment obligations under this Agreement and Lessor may use all rights it has at law to recover damages and may, at its discretion, terminate and rescind this Agreement.

**Use and Disposal of the Premises:**

15.1 The parties agree that the Premise herein contracted, identified by ANNEX "1," shall be used exclusively for those duties and functions inherent to the Governing Board of the 9-1-1 System.

15.2. Lessee shall take care of the Premises and all that is attached to it in accordance with the law and this contract, with the care that is required by law of a good parent. In such sense and with the purpose of being understood as an extension of the above and not as a limitation to what has been said, undertakes:

(a)   Not to assign this contract, in whole or in part, or pledge it as security for any debt.

(b)   Not to sublet the Premises or any other property covered by this contract; provided, however, that Lessee may sublet the Premises or assign the lease with the prior express written consent of Lessor, which shall not be unreasonably withheld, and provided that Lessee reliably attests that it has complied with the terms of this contract; provided further that, in the case of any sublease or assignment of

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

*Model* SC *854.2*
*6 Mar80*
*CC 1300-12-80 (19 Feb 80*
*J.9-49-03-211- 160 B.-M-Apr-94-IGPR.*

*COMMONWEALTH OF PUERTO RICO*

*9-1-1 SERVICE GOVERNING BOARD*
*Department or Unit*
*P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200*
*Address*

***PREMISES LEASE***
***(Continuation Sheet)***

*Page No.* **8** *of* **15**

| | |
|---|---|
| | Department No. |
| | |
| Gen. Svcs. Adm. No. | |
| 2012-000053 | |
| COMPTROLLER'S OFFICE Filing No. | |

| X | *Five (5) Years or Less or Up to Ten (JO) Years in Foreign Locations* |
|---|---|

*More than Five (5) Years Up to Thirty (30) Years*

***OTHER STIPULATIONS:***          **ADDENDUM "A"**

this lease, the reasonableness or unreasonableness of any refusal by Lessor shall be construed using, among other factors, the economic capacity of the assignee or sublessee to comply with the terms of this lease.

(c) Not to make, or allow to be made, within the Premises or on its external walls, any decorations, installations, alterations, additions, improvements or changes in structure or dimensions, or walls or objects which are fixed in the structure; provided, however, that with the express written consent of Lessor and under the conditions imposed by Lessor, Lessee may make them; it is further provided that any decoration, installation, alteration, improvement or structural change of walls or divisions or of objects which are fixed in the structures duly authorized to be made in the Premises, shall be understood to be immediately incorporated into the property where the Premises are located and at the termination of the lease for any reason whatsoever shall become the exclusive property of Lessor, without the latter being obliged to pay Lessor any indemnity or compensation whatsoever.

(d)     Not to place signs, banners, advertisements, awnings, flags or canopies outside or in areas of common use of the Building, except with the prior written permission of Lessor, who shall indicate the location selected for each of them. For Lessee's principal sign, on the exterior of the Building, Lessee may install it at its own cost and risk after agreeing with Lessor on the type of sign, its location and method of installation. The installation of such a sign by Lessee, the maintenance and repairs thereof shall be at Lessee's expense.

(e)     Not to paint the windows or their glass, as well as to intervene in any way with the painting of the exterior or interior surfaces of the Building and on the other hand to drill, to introduce nails, screws, hooks or pieces of metal or wood and to paint or to use glues in any of the interior or exterior walls or floors of the leased Premises, without the previous written consent of Lessor.



(f)     To keep the Premises fumigated against vermin and property, including leased personal property, clean and safe to avoid unnecessary damage to it and accidents or injury to parishioners or employees.

(g)     To keep constant and completely clear and unobstructed the corridors that provide access to the elevator and escape stairs, the entrances to the Building and corridors of common use with other tenants, of objects or equipment that may affect the free transit through them.

(h)     Not to allow any noisy activity or activity in violation of the law to take place on the Premises, or to cause harm to morals or public order, or to prevent other tenants or neighbors of the Premises from peacefully enjoying their respective property.

(i)     Not to allow activities to be conducted on the leased Premises that may result in an increase in the insurance premiums currently paid by Lessor or that may result in cancellation of such policies.

(j)     Not to allow explosives or flammable materials or articles to be used, stored, maintained on or from the Premises or to be trafficked therein, or to place the life or health of parishioners or employees or neighbors and surrounding property at unusual risk, except for such equipment and material which Lessee uses in the ordinary course of business.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

*Model* SC 854.2
*6 Mar80*
*CC 1300-12-80 (19 Feb 80*
*J.9-49-03-211- 160 B.-M-Apr-94-IGPR.*

## COMMONWEALTH OF PUERTO RICO

Page No. _9_ of _15_

### 9-1-1 SERVICE GOVERNING BOARD
*Department or Unit*
P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200
*Address*

| Department No. |
| --- |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

### LEASE OF PREMISES
*(Continuation Sheet)*

(k)

[X] *Five (5) Years or Less or Up to Ten (10) Years in Foreign Locations*

*More than Five (5) Years Up to Thirty (30) Years*

## *OTHER STIPULATIONS:*          ### ADDENDUM "A"

(k)     To obtain and comply, at its own expense, with all licenses, permits and other requirements which by law, regulation or ordinance, in effect at the time of this contract or which from time to time are put into effect, by any federal, state or municipal agency or body and which are applicable to the Premise by its nature or the operation thereon carried out or to be carried out in accordance with the terms of this contract. It is clarified and agreed that if any change or permanent improvement to the property is required, these will be made by Lessor; it is hereby provided that:

(a) if the changes or improvements are required due to causes attributable exclusively to Lessee, the total cost of such changes or improvements, including the cost of their restoration, shall be for the exclusive account of Lessee and Lessee agrees and undertakes to pay Lessor, in addition to the Basic Monthly Rate agreed upon in accordance with paragraph 9.1, an additional sum that allows Lessor to recover such cost within the remaining months of the term of the contract.

(b) if not required due to causes exclusively attributable to Lessee, Lessee agrees and undertakes to pay Lessor, in addition to the Basic Monthly Rate agreed upon pursuant to paragraph 9.1., an additional sum corresponding to the percentage of the total cost of the changes or improvements, including the cost of their financing, equal to the percentage that the rentable area of the Premises represents of the total rentable area of the Building.

(1)     Not to place on the floor of the leased Premises any weight or load that exceeds the load for which the leased Premises were designed. Lessor reserves the right to designate the weight and location of safes, vaults and all other heavy equipment which shall be located in such a manner as to distribute the weight per square foot. All equipment installed by Lessee must have the necessary measures to absorb noise and vibrations.



(m)     Not to use, nor allow its employees or agents to use the Premises for purposes other than those for which it has been leased.

(n)     To comply with such rules and regulations as may from time to time be promulgated by the Corporate Office Park Owners Association for the use of the complex in which the Building is located.

15.3.     Any damage, loss or deterioration to the leased area, its facilities or the Building caused by Lessee in moving property in or out of the Premises or Building or by the installation or removal of furniture, partitions or equipment or resulting from the neglect or omission, negligence, misuse or any other cause of Lessee, contractors, representatives, employees, agents, visitors or assigns, shall be repaired, restored and replaced promptly by Lessee to the satisfaction of Lessor, all at Lessee's expense. Such work and repairs shall be of the same quality and class as the original work. In the event Lessee fails to make such restoration or replacement Lessor may make such restoration or replacement but the cost thereof shall be reimbursed by Lessee within thirty (30) days of submission of the invoice.

15.4     Lessee expressly assumes the obligation to provide the required deposits and also to pay and keep up to date the payment of electricity, water, gas and telephone, as well as all other expenses for necessary services not included in the Services and Facilities section of this contract. It will be the responsibility of Lessee to install, at its own expense, the meters necessary to measure the services used by Lessee, not included in the Services and Facilities section of this contract.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211- 160 B.-M-Apr-94-IGPR

## COMMONWEALTH OF PUERTO RICO

*Page No.*  10  *of*  13

### 9-1-1 SERVICE GOVERNING BOARD
*Department or Unit*
P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200
*Address*

### LEASE OF PREMISES
(Continuation Sheet)

| Department No. |
| --- |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

[X] *Five (5) Years or Less or Up to Ten (10) Years in Foreign Locations*

[ ] *More than Five (5) Years Up to Thirty (30) Years*

**OTHER STIPULATIONS:**          **ADDENDUM "A"**

15.5.   Lessor may assign this contract to the Owner of the Building at any time during the term of this contract so that the Owner assumes the obligations of Lessor under this contract as if the contract had been originally granted between the Owner and Lessee. Lessee hereby consents in advance to this assignment and agrees to execute any documents reasonably necessary to facilitate this assignment and to express its consent thereto. At the time of this assignment, Lessee shall be relieved of its obligations under this agreement and all such obligations shall be assumed by Lessor.

### Taxes and Insurance

15.6   The parties agree that the Basic Monthly Rate set forth in this contract, as provided in paragraph 9.1., was agreed upon in consideration of the fixed costs that Lessor has at present in relation to the property where the Premises are located, including the payments of its corresponding portion for the taxes on the real estate, municipal patents, property insurance, maintenance of elevators, air conditioning equipment and collection of waste, among others, of the Building.

15.7.   In the event that during the term of the lease, by law, regulation or ordinance or by any other type of government action (or private in the case of insurance, maintenance of elevators, air conditioning equipment and waste collection), there is an increase in the Building's real estate taxes and its parking lot, cost base as of June 2011, municipal patents, insurance premiums, maintenance of elevators, air conditioning equipment or waste collection, that increases, in turn, the payment that Lessor is obliged to make for any of these items (even in the case that an increase in the contributions is due to a new appraisal, re-appraisal or new tax imposition):(even if an increase in the taxes is due to a new appraisal, reassessment or new taxation): Lessee agrees and undertakes to pay Lessor, in addition to the Basic Monthly Rate agreed upon according to paragraph 9.1., an additional amount reflecting such increases at the rate of the percentage that the rentable area of the Premises represents of the total rentable area of the Building as provided in Paragraph 10.1.

### General Provisions

15.8.   The parties hereto shall not be liable to each other or to third parties for damage caused to them or to their property as a result of theft, fire, failure of electrical service, hurricane, earthquake, failure or damage to electrical or plumbing installations, rain, leaking walls and ceilings, or any other damage not caused by the gross negligence of Lessor or Lessee.

15.9.   In the event that any agency of the state, federal or municipal government expropriates part or all of the Premises or the land on which it is located, this contract shall be immediately terminated and Lessor shall be the sole beneficiary of any compensation received from such expropriation and shall not be liable to Lessee in any way for any damages that such termination of the contract may cause to Lessee. Notwithstanding the foregoing, Lessor shall reimburse Lessee for the proportional part of the Basic Monthly Rate, if any, paid in advance during the time Lessee does not occupy the Premises.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

*Model SC 854.2*
*6 Mar 80*
*CC 1300-12-80 (19 Feb 80*
*J9-49-03-211- 160 B.-M-Apr-94-IGPR*

## COMMONWEALTH OF PUERTO RICO

*Page No.*11 _ *of* 15

### 9-1-1 SERVICE GOVERNING BOARD
*Department or Unit*
P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200
*Address*

| Department No. |
|---|
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

### LEASE OF PREMISES
*(Continuation Sheet)*

[X] Five (3) Years or Less or Up to Ten (10) Years in Foreign Locations

[ ] More than Five (5) Years Up to Thirty (30) Years

**OTHER STIPULATIONS:**          **ADDENDUM "A"**

15.10.   Lessee expressly authorizes Lessor and its agents and employees to enter the Leased Premises for the purpose of inspecting the condition of the Premises and maintaining the air conditioning units of the Leased Premises. If Lessee deems it necessary to make structural repairs to the leased Premises in order to preserve them for their intended use, Lessee shall immediately inform Lessor in writing and Lessor shall proceed with such repairs within a reasonable time after such notification.

15.11.   Lessee shall at all times consent to the installation, erection and proper maintenance by Lessor of the water, telephone, electrical or other lines passing through the Premises, provided Lessor understands that such acts are necessary. Likewise, Lessee shall allow the installation of the water, telephone, electric or any other kind of pipes that are necessary for any cause. Lessee shall also permit Lessor to make any necessary extensions within the Premises, for which purpose Lessor shall be permitted access to the Premises under the least onerous conditions possible within the circumstances of each case. In any event, Lessor shall endeavor to advise Lessee, with such advance notice as the circumstances may permit, of the need to enter the Premises, and Lessee shall permit such entry for the purposes stated, together with any equipment needed in the situation. In those cases where these actions in any way interrupt the work or services offered by Lessee, notice shall be given at least five (5) days in advance, except in the case of an emergency requiring immediate action to protect the interests of Lessee and Lessor.

15.12.   Lessor reserves the right, within 180 days prior to the expiration of the lease, to post outside the leased Premises signs announcing to the public the availability of the Premises for re-rental and Lessee agrees to permit Lessor or its agents, during such term, to bring into the Premises persons who may be interested in renting the Premises.

15.13.   It is expressly agreed that the failure, whether voluntary or involuntary, of Lessor or Lessee to use any rights Lessor or Lessee has under the law or the terms of this agreement shall not be construed as a waiver by Lessor or Lessee of any such rights thereafter. It is further expressly agreed that no waiver of any right of Lessor or Lessee under the law or this Agreement shall be valid unless in writing and even then such waiver shall not prevent Lessor or Lessee from exercising similar rights thereafter.

15.14.   Upon termination of the contract for any reason, Lessee shall deliver the leased Premises to Lessor and Lessee shall bear all such labor and work as may be necessary to deliver the Premises in a condition similar to the condition in which it was received, including, but not limited to: the cleaning of the floors and walls, except for natural wear and tear due to normal use during the term of the contract. In the event that Lessee fails to deliver the Premises upon termination of this contract or expiration of the lease, Lessee shall pay Lessor a penalty for each day Lessee retains possession of the Premises computed on the basis of one and one-half times (1 ½) the Basic Monthly Rate applicable to the last year of the contract. This obligation will survive the termination or expiration of this contract.

15.15.   Lessee shall be responsible for paying Lessor for any expenses or disbursements Lessor is obliged to incur or make as a result of any breach by Lessee of any of the conditions of this contract.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar 80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211- 160 B.-M-Apr-94-IGPR

**COMMONWEALTH OF PUERTO RICO**

Page No. 12 . of  13

9-1-1 SERVICE GOVERNING BOARD
Department or Unit
P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200
*Address*

**LEASE OF PREMISES**
**(Continuation Sheet)**

| Department No. |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

[X] *Five (5) Years or Less or Up to Ten (10) Years in Foreign Locations*

[ ] *More than Five (5) Years Up to Thirty (30) Years*

*OTHER STIPULATIONS:*          **ADDENDUM "A"**

Such obligation to pay includes costs, expenses and reasonable attorneys' fees for any action or claim, in or out of court, which Lessor is required to initiate as a result of such breach or to regain physical and legal possession of the Premises.

15.16.   The appearing parties recognize and accept that the plan, identified as ANNEX "1", which is attached and becomes part of this contract is merely schematic and informative for the purpose of facilitating the identification and location of the areas contracted here, and that both the schematic drawings and the measurements do not necessarily conform to the physical reality of the contracted Premises. Lessee confesses that it knows the Premises and that it finds its physical dimensions to be real.

15.17.   It is expressly agreed that the clauses, stipulations and conditions of this contract shall be understood to be applicable and affect at all times and bind the assignees, successors in rights, heirs or successors in title of the parties hereto.

15.18.   For the purposes of any communication, notice or notification that either party is required to give to another under the terms of this contract, such communication, notice or notification shall be in writing and sent to such parties at the following addresses unless a change has been notified in writing after this contract is granted.

(a) Lessor:                         (b) Lessee:
ABIEX, Inc.                         9-1-1 Service Governing Board
36 Carr. No. 20, Suite 101         P.O. Box 270200
Guaynabo, PR 00966                 San Juan, PR 00927-0200

15.19.   The parties agree that this document contains the entire agreement that exists between them, expressly leaving without effect any oral or written agreement dated prior to the date of this document, and further agree that this contract can only be amended by agreement of the parties by means of a new written contract or by Addendum attached to this one, with a later date and signed by all parties.

15.20.   Except as specifically provided in this contract, Lessor, by payment of the Basic Monthly Rate, herein established and provided that it has fulfilled its other obligations under this contract, shall be entitled to the peaceful and uninterrupted use and enjoyment of the Premises and equipment subject to this contract during the term of this contract.

15.21.   Lessor and Lessee agree to comply fully with the terms of this agreement, provided, however, that if either party breaches any of the terms of this agreement, the party entitled to require compliance shall give written notice to the party in default of such breach and such party shall have thirty (30) days from the date such notice is deposited in the mail or delivered to it personally or by e-mail to cure such breach, whichever is earlier.

15.21.1  If the thirty (30) days mentioned in the previous paragraph pass without the referred breach having been cured, whatever it may be, the present contract may be terminated by the breaching party without this party being obliged to make any further management, being able from that date onwards to take all the measures and initiate all the procedures that it has the right to take or

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

*Model SC 854.2*
*6 Mar80*
*CC 1300-12-80 (19 Feb 80*
*J.9-49-03-211- 160 B.-M-Apr-94-IGPR*

*COMMONWEALTH OF PUERTO RICO*

*9-1-1 SERVICE GOVERNING BOARD*
*Department or Unit*
*P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200*
*Address*

**LEASE OF PREMISES**
*(Continuation Sheet)*

*Page No. 13  of  15*

| Department No. |
|---|
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

[X] *Five (5) Years or Less or Up to Ten (10) Years in Foreign Locations*

[ ] *More than Five (5) Years Up to Thirty (30) Years*

*OTHER STIPULATIONS:*           **ADDENDUM "A"**

initiate, in accordance with the provisions of this contract and the applicable law, in order to protect its interests.

15.21.2 The party at fault for the breach shall be responsible for satisfying the other party of any expenses or disbursements which it is obliged to incur or make as a result of any breach by the other party provided that the procedures and other terms of this contract are complied with to first cure the breach. Such obligation to pay includes costs, expenses and attorneys' fees for any action or claim, judicial or extrajudicial, that Lessor or Lessee is obligated to initiate as a result of such breach or to regain physical and legal possession of the Premises.

15.22   In the event that, during the term of this Agreement, State or Federal funds to support the programs located at the Site, the staff assigned to the Office or the clientele of the programs are eliminated or substantially reduced, Lessee reserves the right to deliver to Lessor, all or part of the space contracted, with one hundred and eighty (180) days prior written notice to Lessor, pursuant to Paragraph 7.1. Accordingly, Lessee shall exhaust all possible efforts to identify programs that can continue this agreement without modification. If this is not possible, then in the event of a reduction in space in the leased Premises, Lessee and Lessor shall negotiate a new agreement to establish a new term and a Basic Monthly Rate to cover segregation costs for the reduction of space, provided that the reduced space allows for a viable additional lease space.

## CERTIFICATION:

15.30.   In accordance with the provisions of Law No. 12 of July 24, 1985, as amended, known as the Government Ethics Act:, the parties record the following:

a.   No official of Lessee, employee or any member of his or her family unit has, directly or indirectly, a pecuniary interest in the profits or benefits resulting from this contract, purchase or transaction and has also not had in the last four (4) years a direct or indirect pecuniary interest in this business.

b.   No public servant of Lessee has solicited or accepted, directly or indirectly, for himself or herself, for any member of his or her family unit or for any person, gifts, gratuities, favors, services, donations, loans or anything else of monetary value.

c.   No public servant of Lessee has requested or accepted any property of economic value, related to this transaction, from any person of Lessor as payment for performing the duties and responsibilities of his or her employment.

d.   No public servant of Lessee has requested, directly or indirectly, for himself or herself, for any member of his or her family unit, or for any other person, business or entity, any property of economic value, including gifts, loans, promises, favors or services in exchange for the performance of such public servant being influenced in favor of Lessor.

e.   Neither Lessor nor its employees are related, within the fourth degree of consanguinity and second degree of affinity, to any public servant who has the power to influence and participate in the institutional decisions of Lessee.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar 80
CC 1300-12-80 (19 Feb 80
J.9-49-03-211.- 160 B.-M-Apr-94-IGPR

### COMMONWEALTH OF PUERTO RICO

Page No. 14 of 15

#### 9-1-1 SERVICE GOVERNING BOARD
Department or Unit
P.O. BOX 270200, SAN JUAN, PUERTO RICO 00927-0200
*Address*

### LEASE OF PREMISES
### (Continuation Sheet)

| Department No. |
|---|
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE Filing No. |

[X] *Five (5) Years or Less or Up to Ten (10) Years in Foreign Locations*

[ ] *More than Five (5) Years Up to Thirty (30) Years*

_.,._5 *Years in Foreign Locations*

*Thirty (30) Years*

**OTHER STIPULATIONS:**          **ADDENDUM "A"**

15.31.   Lessor certifies that it knows and complies with the ethical provisions established in Law No. 84 of June 18, 2002, known as the Code of Ethics for Contractors, Suppliers and Applicants of Economic Incentives of the Executive Agencies of the Commonwealth of Puerto Rico.

15.32.   Lessor certifies and guarantees that at the time of signing this contract it has filed tax returns during the last five (5) previous years, including the filing of income tax returns:

  [X]  It certifies, furthermore, that it does not have any present debt for said concept, nor for contributions on personal or real property or taxes to the Commonwealth of Puerto Rico.

  [ ]  It certifies that at present it has a tax debt for <u>N/A</u> and that it is paying according to the terms and conditions of the payment plan authorized by the Treasury Department on   <u>N/A</u>

  [X]  It certifies that at the time of executing this contract it has paid unemployment insurance, temporary disability insurance and social security for drivers (whichever applies).

It is expressly acknowledged that this is an essential condition of this contract, and if the above certification is incorrect in whole or in part, this shall be sufficient cause for Lessee to rescind the contract and Lessor shall be required to refund to Lessee any monies received under this contract.

15.33.   Lessor certifies and guarantees that at the time of signing this contract

  [X]  It is not required to make alimony payments.

It is expressly recognized that this is an essential condition of this contract, and if the above certification is not correct in whole or in part, this shall be sufficient cause for Lessee to rescind the contract and Lessor shall be required to refund to Lessee any monies received under this contract.

Negligence or failure to comply with the provisions of this contract by Lessor shall constitute sufficient cause to terminate this contract in accordance with the procedures and terms set forth in the contract itself.

15.35.   In providing the services, Lessor undertakes not to discriminate on the grounds of race, color, sex, birth, social origin or status, disability or political or religious beliefs, or any other discriminatory cause.

15.36.   Lessor certifies that it has not been convicted of any crime against the public treasury, public trust or civil service or involving public funds or property at the state or federal level. Lessor also agrees that it will be grounds for termination of this contract if it is convicted of the above-mentioned crimes at the state or federal level.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Model SC 854.2
6 Mar 80
CC 1300-12-80 (19 Feb 80
J 9-49-03-211- 160 B.-M-Apr-94-IGPR

**COMMONWEALTH OF PUERTO RICO**

Page No. 15  of 15

9-1-1 SERVICE GOVERNING BOARD
Department or Unit
P.O. BOX 270200  SAN JUAN, PUERTO RICO 00927-0200
*Address*

| Department No. |
| --- |
| Gen. Svcs. Adm. No. |
| 2012-000053 |
| COMPTROLLER'S OFFICE |
| Filing No. |

**LEASE OF PREMISES**
**(Continuation Sheet)**

[X] *Five (5) Years or Less or Up to Ten (10)*
*Years in Foreign Locations*

[ ] *More than Five (5) Years Up to*
*Thirty (30) Years*

**OTHER STIPULATIONS:**          **ADDENDUM "A"**

15.37.   Lessee may terminate this agreement without notice if Lessor is convicted of crimes against the public treasury, public trust or civil service or involving public funds or property at the state or federal level.

15.38.   Lessor states that it is not subject to investigation or civil or criminal proceedings for acts related to some of the crimes mentioned in the preceding clause. Furthermore, Lessor makes it clear that it has a duty to inform Lessee of any situation that occurs during all stages of this contract and during the execution of this contract that has a relationship with the above-mentioned crimes.

15.39.   Lessor certifies that it has not been excluded by the Federal Government.

15.40.   Both parties accept and acknowledge that the terms and conditions subscribed to in this contract shall be governed by the laws of the Government of Puerto Rico, by Act 93-112, as amended, known as the Rehabilitation Act, and by the current regulations and executive orders issued by the Governor of Puerto Rico.

15.41.   No benefit or consideration under this contract may be required until it has been submitted for registration at the Comptroller's Office pursuant to Act No. 18 of October 30, 1975, as amended.

15.42.   The declaration of illegality or lack of operation of any clause or clauses of this contract will not result in the rest of the terms and conditions being declared null and void.

15.43.   In accordance with the law and the rules governing the contracting of services, the parties to this contract take note that no services of any kind will be provided under this contract, until it is signed by both parties. Likewise, no services will be continued under this contract after its expiration date, unless at the expiration date, there is already an amendment signed by the parties. Services rendered in violation of this clause shall not be paid, since any officer who requests and accepts services from the other party in violation of this provision is doing so without any legal authority.

------0------

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

## ANNEX 1 TO ADDENDUM A (MODEL SC854.2)

### LEASE AGREEMENT BETWEEN 9-1-1 SERVICE GOVERNING BOARD AND ABIEX, INC. (MODEL SC 854)

**BASIC MONTHLY FEE**

5/1/12   5/1/13   5/1/14   5/1/15   5/1/16

| | Year 1 | | Year 2 | Year 3 | | Year 4 | Year5 | |
|---|---|---|---|---|---|---|---|---|
| | RATE | ANNUAL RATE | | RATE | ANNUAL RATE | | RATE | ANNUAL RATE |
| INTERIOR RENTABLE AREA (7,693 34 sq ft) | $18.00 per each square foot | 138,480.12 | 138,480.12 | $18.54 | 142,634.52 | 142,634.52 | $19.10 | 146,913.56 |
| EXTERIOR RENTABLE AREA (483.13 sq ft) | $10.00 per each sq ft | 4,831.30 | 4,831.30 | $10.30 | 4,976.24 | 4,976.24 | $10.61 | 5,125.53 |
| ADDITIONAL PARKING SPACES (15) | $40.00 each | 7,200.00 | 7,200.00 | $40.00 | 7,200.00 | 7,200.00 | $40.00 | 7,200.00 |
| PROPORTIONAL REIMBURSEMENT COMMON AREA EXPENSES* (8,176.47) | $6.50 | 53,147.06 | 53,147.06 | $6.50 | 53,147.06 | 53,147.06 | $6.50 | 53,147.06 |
| TOTAL ANNUAL RATE | | 203,658.48 | 203,658.48 | | 207,957.82 | 207,957.82 | | 212,386.14 |
| TOTAL MONTHLY RATE | | 16,971.54 | 16,971.54 | | 17,329.82 | 17,329.82 | | 17,698.85 |

*NOTE: This reimbursement item is subject to adjustment according to contract provisions.

Page 1 of 2 (Page 2 is the space blueprint)

15.36 Lessor certifies that it has not been convicted of any crime against the public treasury, public trust or civil service or involving public funds or property at the state or federal level. Lessor also agrees that it will be grounds for termination of this contract if it is convicted of the above-mentioned crimes at the state or federal level.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION



ANNEX 1 AADDENDUM TO MODEL 854.2 LEASE AGREEMENT: BETWEEN
THE GOVERNING BOARD OF 9-1-1 SERVICE AND ABIEX, INC.

EXTERIOR RENTABLE /
USABLE AREA = 483.13

RENTABLE AREA = 8,176.47
RENTABLE OFFICE AREA = 7,693.34
USABLE OFFICE AREA = 6,918.17

STAIR #2

LOCATION OF GENERATOR RADIATOR

LOADING AREA

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

**EXHIBIT II**

CERTIFIED TRANSLATION

# COMMONWEALTH OF PUERTO RICO
## 9-1-1 SERVICE BOARD OF GOVERNORS
## SAN JUAN, PUERTO RICO

---------- CONTRACT NO. 2012-000053(E) ---------

--------------------- BETWEEN ------------------

---**THE 9-1-1 SERVICE GOVERNING BOARD**, an entity created under Act No. 144 of December 22, 1994, as amended, represented in this act by its Executive Director, **JUAN G. MORALES VARGAS**, of legal age, single and resident of Quebradillas, Puerto Rico, in his capacity as Lessee, with the legal authority to sign this contract, according to the provisions established in Governing Board Resolution No. 18, Series 2014-2015, dated November 12, 2014 and the Regulations of the Board of Governors of the 9-1-1 Service, as amended, which shall hereinafter be referred to as **"THE FIRST PART"**.

### AND



---**ABIEX, INC.,** an entity organized under the laws of the Commonwealth of Puerto Rico, represented in this act by Ana María Rodríguez Torres, in her capacity as Lessor and Assignor, of legal age, married and a resident of Guaynabo, Puerto Rico, who shall hereinafter be referred to as **"THE SECOND PART"**.

### AND

---**AGM PROPERTIES CORPORATION,** an entity organized under the laws of the Commonwealth of Puerto Rico, represented in this act by **MARTIN G. MARXUACH**, in his capacity as Lessor and Assignee, of legal age, married and resident of Guaynabo, Puerto Rico, who shall be hereinafter referred to as **"THE THIRD PART"**.

---The parties hereby declare that they are fully capable of executing this agreement and to that effect, they freely and voluntarily agree to the following amendments to the Premises Lease Agreement for Five Years or Less signed by the parties on December 30, 2011 (Agreement No. 2012-000053), as amended by the amendment signed on March 9, 2012 (Agreement No. 2012-000053(A), the amendment signed May 30, 2012 (Contract No. 2012-000053(8), the amendment signed on October 4, 2012 (Contract No. 2012-000053(C) the amendment signed on November 1, 2012 (Contract No. 2012-000053(D) and the amendment signed by letter dated August 1, 2014 under Act No. 66 of 2014 between **"THE FIRST PART"** and **"THE SECOND PART"**.

----------- RECITALS ----------

**FIRST:** Amendments to this contract are made by letter dated 1st of 2014 from ABIEX, Inc., Lessor, to the Governing Board of the 9-1-1 Service, Lessee, a copy of which is attached and incorporated into this contract, for all relevant legal purposes.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

BUILDING LEASE AGREEMENT
CONTRACT NO. 2012-000053(E)
PAGE 2 OF 3

These amendments were requested by **"THE FIRST PART"** under Act No. 66 of 2014 and agreed to by **"THE FIRST PART"** and **"THE SECOND PART"** in the referenced letter.

**---SECOND:** It is amended to assign this contract to **"THE THIRD PART"**, who owns the building, at any time during the term of this contract for the owner to assume the obligations of Lessor, as set forth in paragraph 15.5 of Addendum A (Model SC 854.2) to the Premises Lease Agreement for Five Years or Less No. 2012-53 dated December 30, 2011, as amended, which is quoted below:

----------- 15.5 Lessor may assign this agreement to the owner of the building at any time during the term of this agreement so that the owner assumes Lessor's obligations under this agreement as if the agreement had originally been entered into between the owner and Lessee. Lessee hereby consents in advance to this assignment and agrees to execute any documents reasonably necessary to facilitate this assignment and to express its consent thereto. At the time of this assignment, Lessee shall be relieved of its obligations under this agreement and all such obligations shall be assumed by the owner.

**---THIRD:** The transfer of this is effective as of **December 1, 2014**. The term of this contract expires on **May 31, 2020**.

**---FOURTH:** All clauses and conditions not affected or amended by this amendment shall remain in full force and effect while the contract is in force. Any other modification to it can only be made by written agreement between the parties.

------------------------------- **ACCEPTANCE** --------------------------------

---The parties state that this contract contains a faithful and exact account of the agreements made.

---The parties appearing before the court declare that they have read this contract in all its parts, have understood it, and therefore accept and execute it.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

BUILDING LEASE AGREEMENT
CONTRACT NO. 2012-000053(E)
PAGE 3 OF 3

---**AND IN WITNESS WHEREOF,** they hereby sign it in San Juan, Puerto Rico, today,

December 1, 2014.

JUAN G. MORALES VARGAS
EXECUTIVE DIRECTOR
9-1-1 SERVICE GOVERNING BOARD
LESSEE
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

ING. MARTIN G. MARXUACH
LESSOR - ASSIGNEE
AGM PROPERTIES CORP.
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      MMK

ANA MARIA RODRIGUEZ TORRES
ABIEX, INC.
LESSOR - ASSIGNOR
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

Reviewed by:

José Daniel Camacho Rodríguez
Director , Budget and Finance Office

Frances Y. Buitrago Jiménez
Director of Administration

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**EXHIBIT III**

## GOVERNMENT OF PUERTO RICO

Department of Public Safety & Security

Puerto Rico 9-1-1 Emergency Systems Bureau

Hon. Elmer L. Román González
Secretary

Yazmin M. González Morales
Commissioner

NSE911-20-6-061-qvg

December 2, 2019

Tina Marxuach
AGM Property
Management, Inc.
PO Box 10047
San Juan, Puerto Rico 00922-0047

Dear Mrs. Marxuach:

The 9-1-1 Emergency Systems Division maintains lease agreement number 2012-000053 with AGM Properties Corporation. The operations of the "Your 3-1-1 Service Line" program are at the location subject to that lease. The original contract is effective until May 31, 2020.

*Act No. 77 of July 27, 2019*, which amended Article 5 of Act 20 of 2017, transferred the operations of the 3-1-1 Line Service to the Department of State. As a result, the 9-1-1 Emergency Systems Bureau has no fiscal or legal responsibility for 3-1-1 Service operations under that law. Therefore, pursuant to Clause Three of the contract, as amended, which provides that the First Party in its sole discretion and for any reason, and/or by direct order of the Office of the Chief of Staff, may terminate the contract by giving thirty (30) days advance written notice to the Lessor prior to the date on which it wishes to terminate the contract, we are giving notice of termination of the contract effective January 1, 2020.

The Administrator, Mrs. Quetcy Vega Garcia, will be in charge of mobilizing the property and finalizing the details related to the termination of the contract. Any related matters, please contact Mrs. Vega Garcia.

Sincerely,

Yazmin González Morales
Commissioner

    I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

PO BOX 270200, San Juan, Puerto Rico 00928

e 787.273 .3 001

CERTIFIED TRANSLATION

**EXHIBIT IV**

## SETTLEMENT AGREEMENT AND CONFIDENTIAL RELEASE
## ON TERMINATION OF LEASE AND SURRENDER OF PREMISES

---**BETWEEN**:

The **9-1-1 Emergency System Bureau, (hereinafter, "NSE9-1-1"**[Spanish acronym]) created by Act No. 20 of April 10, 2017; represented in this act by its Commissioner, **Yazmin M. González Morales**, of legal age, single and resident of Bayamón, Puerto Rico; with the legal authority to sign this settlement agreement, whose powers to appear in this act arise from the provisions of Article 6.05(d) of Law No. 20-2017, mentioned above. ------------------------------------------------------------------------------

---**AND**:

**AGM Properties Corp. (hereinafter, "AGM")** an entity organized under the laws of the Government of Puerto Rico, represented in this act by **Martin G. Marxuach**, in his capacity as President, of legal age, married, and a resident of Guaynabo, Puerto Rico.------------------------------------------------------------------------

----The appearing parties warrant that they have the legal capacity to grant this Settlement and Confidential Release Agreement (hereinafter, the "Agreement"), and by virtue thereof, freely set forth and agree to the following terms and conditions:-----------------------------

1. The appearing parties maintain a Premises Lease Agreement for Five Years or Less executed by the parties on December 30, 2011, identified as "Agreement No. 2012-000053", as amended by the following amendments: ----------------------------

      a. Amendment signed on March 9, 2012, Contract No. 2012-000053(A); ----------------
      b. Amendment signed on May 30, 2012, Contract No. 2012-000053(B); ---------------
      c. Amendment signed on October 4, 2012, Contract No. 2012-000053(C); --------------
      d. Amendment signed November 1, 2012, Contract No. 2012-000053(D); ----------
      e. Amendment signed December 1, 2014, Contract No. 2012-000053(E); -----------
      f. Amendment signed May 11, 2017, Contract No. 2012-000053(F); ---------------
      g. Amendment signed December 18, 2018, Contract No. 2012-000053(G); ---------
      h. Amendment pending signing Contract No. 2012-000053(H); -----------------------

2. By means of correspondence dated December 2, 2019, NSE9-1-1 notified AGM of the termination of the lease mentioned in the previous paragraph, effective on January 1, 2020, pursuant to Clause Three of the referred Lease Agreement, as amended. ---------------------- -------------------------------------------------------

3. In order to avoid litigation, and as a mechanism to avoid incurring in additional expenses, and inconveniences and uncertainties inherent to the delivery of the premises, object of the lease, the parties have agreed to the termination of the above-mentioned contract and delivery of the premises which are the object of the contract, under the following terms: **The NSE9-1-1 will remove the entire carpeted**

      I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

1

CERTIFIED TRANSLATION

**raised floor; remove all modules, furniture, equipment, including televisions and wall signs; and perform this work with the usual caution and care so as not to affect the premises. In addition, the SE9-1-1 will make payment for the amount of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) on or before December 31, 2019 together with the delivery of the respective door keys and magnetic key.** ------------

4. The parties have agreed to waive any claims arising or that may arise from the termination or cancellation of the related contract and its amendments, except, as provided in clause 10 of this Agreement, those related to the payment of the rent corresponding to the months of November and December 2019, with the corresponding payments for adjustments of common area expenses and the utility charge (electricity and water). Likewise, AGM renounces to the other works identified in the communication dated December 13th, 2019, signed by the legal representative of AGM. -------------------

5. AGM releases NSE9-1 1 from all liability by virtue of payment of the sum of **TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)**, except as provided in clauses 4 and 10 of this agreement. This liability release is understood to be extended to the respective directors, heirs, assignees, successors, entities, employees, partners, subsidiaries, insurers, reinsurers and other persons or entities related to AGM. ---------

6. The NSE9-1-1 affirms that it will make the payment of the sum of **TWENTY-FIVE THOUSAND DOLLARS ($25,000.00)**, without such payment being considered a penalty, breach of any contractual clause or admission of liability on its part. -------------------------------

7. In consideration of the payment of the sum of **TWENTY FIVE THOUSAND DOLLARS ($25,000.00)** AGM is obliged and committed to receive the premises in its current state "as is" except for what is strictly identified in the third paragraph of this agreement, in addition, to keep in the strictest confidentiality, all the individuals of the present transaction.------------------------------------

8. In consideration of, and subject to, the mutual promises and agreements set forth in this Agreement, the parties agree to faithfully perform, each party assuming the expenses, both legal, expert and/or of any other nature, incurred or arising in the course of executing the delivery of the premises.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

2

CERTIFIED TRANSLATION

9. Nothing in this Agreement should be considered a breach of contract by either party appearing, but rather a mechanism to avoid incurring additional expenses, and to avoid disputes that may arise from the termination of the lease and delivery of premises. --------------------------------------------------------------------

10. The parties represent and acknowledge that upon formalization of this agreement, there remains payment of the respective lease fee as of November and December of the current year, with the corresponding adjustments for payment of common area expenses and the utility charge (electricity and water). NSE9-1-1 will comply with these payments as provided in the Lease Agreement and nothing in this Agreement in any way modifies, extinguishes or eliminates NSE9-1-1's responsibility to make the payment of these items in recognition that it has occupied the premises during the months of November and December 2019. The parties further represent and acknowledge that they have carefully read this Agreement and fully understand each and every term hereof, that they are not relying on and have not relied on representations by any party, its agents, representatives or attorneys relating to any aspect of this Agreement, and that they are entering into this Agreement freely and voluntarily, without coercion or intimidation of any kind. ----------------------------------------------------------------------------------------------------

11. This Agreement shall be interpreted in accordance with the laws of the Commonwealth of Puerto Rico. In the event that a court of jurisdiction declares any part, clause or obligation of this document null, void or enforceable, the remainder of this Agreement shall continue in effect and in full force and effect. ------

12. The parties hereto represent that this is the entire agreement between them, and that no representation or other consideration other than those expressed herein has been made, and that no other agreement has been entered into between them and any third person and/or entity that binds them to enforce this Agreement. -------------------------------------------

13. If any party appearing in court fails to comply with the terms of this Agreement, and forces another party to go to court to enforce the provisions of this Agreement, the party forced to go to court shall be entitled to have the noncompliant party reimburse it for all costs, expenses, and attorney's fees incurred in enforcing its rights.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

3

CERTIFIED TRANSLATION

14. The purpose of this Agreement is to finally terminate and excuse NSE9-1-1 from the terms of the Lease Agreement to deliver the premises in "condition similar to the state in which it was received." Therefore, AGM accepts the delivery of the premises with the improvements made by NSE 9-1-1, except for the works identified in paragraph (3) of this agreement. Therefore, it may not be used by or against any party in any future action, except for the limited purpose of enforcing its provisions. Further, neither the Agreement nor its terms shall be admissible in evidence in a court of law, except for the purposes set forth above. --------------------------------------------------------------------------------------------------------

15. The terms and conditions of this Agreement shall be treated confidentially and shall not be disclosed, distributed or published to any third party, except if required by the contracting rules of the Commonwealth of Puerto Rico, any audit, citation, or if ordered by a Court. The parties, on the other hand, may disclose such information to their accountants, tax consultants, and other persons as required by law. ------------------------------------------------------------------------------------------------------------------

16. This Agreement may be executed in counterparts, and each copy shall be deemed an original. In turn, all originals together shall constitute a single, identical Agreement. -----------------------------------------------

17. **THE PARTIES** declare that they fully agree with the contents of this Agreement and for the record, sign it in San Juan, Puerto Rico, today, December _26_, 2019. ------

| | |
|---|---|
| _____ | _____ |
| **Yazmín M. González Morales** | **Martín G. Marxuach** |
| Commissioner | President |
| 9-1-1 Emergency System | AGM Properties Corp. |
| Bureau | **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** |
| **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** | |

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

4

CERTIFIED TRANSLATION

**EXHIBIT V**

[Translator note: Pages 1 & 2 of Original are in English; no translation required. Image pasted below for convenience.]

# LANDRAU RIVERA & ASSOC.

ATTORNEYS AND COUNSELORS AT LAW
PO Box 270219
SAN JUAN, PR 00927-0219
TEL. (787) 774-0224 / 273-7949
FAX. (787) 793-1004

NOEMÍ LANDRAU RIVERA
JOSUÉ A. LANDRAU RIVERA

**VIA EMAIL & REGULAR MAIL:**
Carlos M. Yamin@aafaf.pr.gov
Manuel.Gonzalez@aafaf.pr.gov
Lalisse.Guillen@aafaf.pr.gov
lmarini@mpmlawpr.com

January 16, 2020

Mr. Carlos M. Yamín, Esq.
Sub-Director
AAFAF
PO Box 42001
San Juan, PR 00940-2001

Mr. Manuel J. González, Esq.
AAFAF
PO Box 42001
San Juan, PR 00940-2001

**RE:    Payment of commercial lease Landlord AGM Properties Corporation**
        **Tenant:** 911 Service Governing Board
        **Premises: 16,784 sq. ft. Lot E Corporate Office Park, San Juan, PR**
        **BK Case no. 17-03283 LTS**

Dear Mr. Yamín and Mr. González:

On December 14, 2017 undersigned counsel met with Mr. Yassin-Mahmud and Mr. Yamín to discuss the rent payment on the referenced lease held by the "Junta de Gobierno del Servicio 9-1-1" ("Junta"), with my client, AGM Properties Corporation ("AGM"). The obligation stems from a commercial lease agreement, signed on May 1, 2012, for the occupation of the referenced premises, which was due to expire on May 31, 2020.  Since our meeting, attorneys from the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), have assisted my client on several additional occasions in order to obtain payment on the lease.

Two years later our meeting, we find ourselves in the same situation. The Junta has failed to comply with monthly lease payment to AGM for the months of November and December 2019, situation which adversely affects the operation of our client, who has complied with all its obligations pursuant to the lease agreement. This situation has been discussed with counsel for Junta, Melissa Ramirez, Esq., who states that they are pending receipt of an "amendment" signed

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Page 2
Mr. Carlos M. Yamín, Esq.
Mr. Manuel J. González, Esq.
January 16, 2020

by the "Oficina de Gerencia y Presupuesto" and the "Departamento de Seguridad Pública" to proceed with the disbursement. Mr. Luis Otero Arce, Finance Director for the Junta, has also confirmed this information.

Sections 365 and 503 of the Bankruptcy Code, 11 U.S.C. §§365 and 503, classifies post-petition rent as an administrative expense of the Debtor, and the Junta, as an agency and/or instrumentality of the Commonwealth of Puerto Rico, has an obligation to comply with payment of lease to AGM on account of the postpetition use and possession of the leased premises.

To discuss any controversy which may be delaying the lease payments and obtain an extrajudicial resolution to the situation, I respectfully request a meeting at your offices on or before January 24, 2020. Undersigned counsel will be available at your request.

I trust that we may obtain a mutually convenient resolution to this matter to avoid judicial intervention and save costs on both parties.

Sincerely,

NOEMI LANDRAU RIVERA

Enclosures: Account statement to December 2019

cc.     Ing. Martín Marxuach, AGM Properties Corporation
        Mr. Luis Marini, Esq., counsel for AAFAF
        Mrs. Melissa Ramirez-Rivera, Esq., counsel for Junta 9-1-1

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**AGM Properties Corp.**

Detail of amounts owed by 3-1-1 as of December 31, 2019:

1. Rent Bill #1509 - November 2019                                                $ 20,904.58
2. Rent Bill #1527 - December 2019                                               $ 20,904.58
3. Invoice #1537 corresponding to the additional adjustment portion of
   operating expenses as of Dec 2019 including non-recurring                       $   6,904.44
   building maintenance items                                                      $ 48,713.60
4. Credit arising after the June 2019 to Dec. 2019 utilities reconciliation        $  (1,993.26)
                                                      **Total due**                 $  46,720.34

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

## AGM Properties Corporation

PO Box 2149
San Juan, PR 00922-2149
Phone (787) 783-3525
Email: marxuachpropertymgt@gmail.com

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/1/2019 | 1509 |

**Bill To**

911 Service Governing Board
Attn: Finance Department
Yarilis Feliciano Rivera
PO Box 270200
San Juan, Puerto Rico 00927-0200

| Suite | Rent Period | Due Date |
|-------|-------------|----------|
| 103 | November | 11/1/2019 |

| Tenant Code | Description | Amount |
|-------------|-------------|--------|
| 4011 | Basic monthly rate - November 2019 | 17,516.35 |
| 4011 | Credit to the monthly rate (Parking) | -800.00 |
| 6201 | -Utility item | 4,188.23 |
| | OE 2001-73 dated November 29, 2001 | |
| | "Under penalty of absolute nullity, I certify that no public servant of the 9-1-I Governing Board is a party to or has any interest in the profits or benefits arising from the contract that is the subject of this invoice and that if he or she is a party to or has an interest in the profits or benefits arising from the contract it has been previously waived. The sole consideration for providing the goods or services covered by the contract has been the agreed upon payment to the authorized agency representative. The amount of this invoice is fair and correct. The work has been done in accordance with the contract and has not been paid. | |

*[signature]*

Signature of Company's Authorized Representative

**RECEIVED**
BUDGET AND FINANCE

NOV 04 2019

| | Total | $20,904.58 |
|--|-------|------------|

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

## AGM-Properties Corporation

PO Box 2149
San Juan, PR 00922-2149
Phone (787) 783-3525
Email: marxuachpropertymgt@gmail.com

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/3/2019 | 1527 |

**Bill To**

911 Service Governing Board
Attn: Finance Department
Yarilis Feliciano Rivera
PO Box 270200
San Juan, Puerto Rico 00927-0200

| Suite | Rent Period | Due Date |
|-------|-------------|----------|
| 103 | December | 12/3/2019 |

| Tenant Code | Description | Amount |
|-------------|-------------|--------|
| 4011 | Basic monthly rate - December 2019 | 17,516.35 |
| 4011 | Credit to the monthly rate (Parking) | -800.00 |
| 6201 | Utility item | 4,188.23 |

OE 2001-73 dated November 29, 2001

"Under penalty of absolute nullity, I certify that no public servant of the 9-1-1 Governing Board is a party to or has any interest in the profits or benefits arising from the contract that is the subject of this invoice and that if he or she is a party to or has an interest in the profits or benefits arising from the contract it has been previously waived. The sole consideration for providing the goods or services covered by the contract has been the agreed upon payment to the authorized agency representative. The amount of this invoice is fair and correct. The work has been done in accordance with the contract and has not been paid.

Firm Signature of Company's Authorized Representative

**RECEIVED**
BUDGET AND FINANCE

DEC 04 2019

| | Total | $20,904.58 |
|--|-------|------------|

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

### AGM Properties Corporation

PO Box 2149
San Juan, PR 00922-2149
Phone (787) 783-3525
Email: marxuachpropertymgt@gmail.com

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/23/2019 | 1537 |

**Bill To**

911 Service Governing Board
Attn: Finance Department
Yarilis Feliciano Rivera
PO Box 270200
San Juan, Puerto Rico 00927-0200

| | Due Date |
|---|---|
| | 12/23/2019 |

| Description | Amount |
|-------------|--------|
| Invoice for adjustment of operational expenses portion as of December 2019; including non-recurring building maintenance items | 6,904.44 |
| | |
| OE 2001-73 dated November 29, 2001 | |
| | |
| "Under penalty of absolute nullity, I certify that no public servant of the 9-1-I Governing Board is a party to or has any interest in the profits or benefits arising from the contract that is the subject of this invoice and that if he or she is a party to or has an interest in the profits or benefits arising from the contract it has been previously waived. The sole consideration for providing the goods or services covered by the contract has been the agreed upon payment to the authorized agency representative. The amount of this invoice is fair and correct. The work has been done in accordance with the contract and has not been paid. | |

_Marxuach_

Signature of Company's Authorized Representative

| | **Total** | $6,904.44 |
|---|-----------|-----------|

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

**AGM Properties Corporation**

PO Box 2149
San Juan, PR 00922-2149
Phone (787) 783-3525
Email: marxuachpropertymgt@gmail.com

# Credit Memo

| Date | Credit No. |
|------|-----------|
| 12/23/2019 | 1535 |

| Customer |
|----------|
| 911 Service Governing Board<br>Attn: Finance Department<br>Yarilis Feliciano Rivera<br>PO Box 270200<br>San Juan, Puerto Rico 00927-0200 |

| Description | Amount |
|-------------|--------|
| Credit after the process of verification and adjustment of utilities according to Paragraph 13. 7 of Addendum A to the Contract after receiving the water consumption and electricity bills as of December 2019. Credit applicable to the utilities item invoiced in December 2019.<br><br>OE 2001-73 dated November 29, 2001<br><br>"Under penalty of absolute nullity, I certify that no public servant of the 9-1-I Governing Board is a party to or has any interest in the profits or benefits arising from the contract that is the subject of this invoice and that if he or she is a party to or has an interest in the profits or benefits arising from the contract it has been previously waived. The sole consideration for providing the goods or services covered by the contract has been the agreed upon payment to the authorized agency representative. The amount of this invoice is fair and correct. The work has been done in accordance with the contract and has not been paid." | -1,993.26 |

Signature of Company's Authorized Representative

| | **Balance Credit** | -$1,993.26 |

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.