# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**Re: ECF Nos. 15171, 15275** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>　　　　　　　Movant,<br><br>v.<br><br>OFFICIAL COMMITTEE OF UNSECURED CREDITORS,<br><br>　　　　　　　Respondent. | |

**REPLY IN SUPPORT OF MOTION OF THE COMMONWEALTH OF
PUERTO RICO PURSUANT TO BANKRUPTCY CODE
SECTION 365 FOR ENTRY OF ORDER APPROVING ASSUMPTION
<u>OF SETTLEMENT AGREEMENTS WITH GARCÍA RUBIERA CLASS PLAINTIFFS</u>**

---

[1]　The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

Page Number

Preliminary Statement ...........................................................................................................5

Argument ..............................................................................................................................3

    I.    The Settlement Agreements are Executory Contracts ...................................................3

        a.  Plaintiffs' Obligations to Cooperate in Developing Notices and to
Submit Claims Are Essential to the Commonwealth's Ability to
Satisfy Due Process Requirements ............................................................................3

    II.   Assumption of the Settlement Agreements Benefits the Commonwealth
and Its Creditors .........................................................................................................11

Conclusion ..........................................................................................................................11

# **TABLE OF AUTHORITIES**

Cases                                                                                                          Page Number

*In re A.J. Lane & Co.*, 107 B.R. 435 (Bankr. D. Mass. 1989)......................................................5

*In re Abitibibowater Inc.*, 418 B.R. 815 (Bankr. D. Del. 2009) ...................................................5

*In re Avianca Holdings S.A.*, 618 B.R. 684 (Bankr. S.D.N.Y. 2020) ............................................8

*In re Byung Mook Cho*, 581 B.R. 452 (Bankr. D. Md. 2018).......................................................5

*In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256 (Bankr. D. Mass. 1982) ......................9

*García-Rubiera v. Fortuño*, 665 F.3d 261, 266-67 (1st Cir. 2011) ........................................6, 7, 8

*García-Rubiera v. Fortuño*, 727 F.3d 102, 105 (1st Cir. 2013) ............................................5, 6, 9

*Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd. of P.R.)*, 939 F.3d 340 (1st Cir. 2019) ..................................................................................10

*In re High Voltage Eng'g Corp.*, 397 B.R. 579 (Bankr. D. Mass. 2008) .......................................4

*In re Level Propane Gases, In.*, 297 B.R. 503 (Bankr. N.D. Ohio 2003).......................................4

*Lubrizol Enters. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir. 1985)......................8

*Neca Mortg. Corp. v. A & W Developers S.E.*, 1237 P.R. Dec. 860 (1995)...................................5

*Olah v. Baird (In re Baird)*, 567 F.3d 1207 (10th Cir. 2009) .........................................................8

*In re PCM Marketing Corp.*, 447 B.R. 71 (D.P.R. 2011)...............................................................4

*In re Riodizio, Inc.*, 204, B.R. 417 (Bankr. S.D.N.Y. 1997)..........................................................5

*In re Santiago*, 563 B.R. 457 (Bankr. D.P.R. 2017) ......................................................................4

*In re TM Vill., Ltd.*, 2019 Bankr. LEXIS 650 (Bankr. N.D. Tex. Feb. 28, 2019).............................8

*In re Worldcom, Inc.*, 343 B.R. 486 (Bankr. S.D.N.Y. 2006) ..................................................4, 10

To The Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole representative of the Commonwealth of Puerto Rico (the "Commonwealth"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this reply (the "Reply") in further support of the *Motion of the Commonwealth of Puerto Rico Pursuant to Bankruptcy Code Section 365 for Entry of Order Approving Assumption of Settlement Agreements with García Rubiera Class Plaintiffs* [ECF No. 15171] (the "Motion")[2] and in response to the *Limited Objection of Official Committee of Unsecured Creditors to Motion of Commonwealth of Puerto Rico Pursuant to Bankruptcy Code Section 365 for Entry of Order Approving Assumption of Settlement Agreements with García Rubiera Class Plaintiffs* [ECF No. 15275] (the "Limited Objection"), filed by the Official Committee of Unsecured Creditors for all Title III Debtors, other than PBA and COFINA (the "UCC"). In support of the Reply, the Commonwealth respectfully states as follows:

**Preliminary Statement**

1. By its "limited objection," the UCC asks the Court to deny the Commonwealth's effort to settle a 20-year-old dispute with a class of motorists, thereby returning the parties to expensive and time consuming litigation neither side wants to pursue. And the UCC's reasons for objecting are (a) it opposes the class members being paid in full if unsecured claimholders will not be paid in full under the Commonwealth's plan of adjustment, and (b) it contends the prepetition Settlement Agreements are not executory contracts susceptible to assumption. The UCC's reasons are not well taken given that (a) the class members assert trust ownership of the money at issue, as

---

[1] PROMESA is codified at 48 U.S.C. §§ 2101-2241.
[2] Capitalized terms not defined herein have the meanings set forth in the Motion.

opposed to creditor status, which the First Circuit regarded as a serious issue, (b) even if the class members are creditors, their claims would likely be included in a convenience class paid in full, (c) Plaintiffs' continuing obligations and the class members' obligations to file certain claim forms renders the Settlement Agreements executory, and (d) the Court can approve the settlement regardless of its being an executory contract.

2. The Commonwealth seeks to assume the Settlement Agreements to end a nearly 20-year litigation saga in connection with the Prepetition Actions that have continued into the Commonwealth's Title III case through the Lift Stay Motion. The Lift Stay Motion implicates issues regarding statutory trusts because the class members are entitled to the return of their own monies they paid in for governmental auto insurance, and are entitled to have returned because they had their own private insurance. Having proposed the Plan of Adjustment that would assume the Settlement Agreement (and in any event, provide full payment of Plaintiffs' claims as convenience class claims), the Oversight Board determined that, rather than continue litigation of the Lift Stay Motion, spend countless hours by bankruptcy professionals (and potentially this Court) reviewing thousands of small dollar claims,[3] it was in the best interest of the Commonwealth and its creditors to avoid litigation whose only effect would be to delay payment to Plaintiffs that would otherwise be paid in full under any revised plan of adjustment for the Commonwealth.

3. The UCC does not object to the full payment of Plaintiffs' claims if all unsecured claims are paid in full, and claims Plaintiffs should wait until a plan of adjustment for the Commonwealth is confirmed. Limited Objection ¶¶ 1, 3. Plainly, the UCC is attempting to set up

---

[3] The annual premium that was paid by each member of Plaintiffs' class was for $99 or $148 depending on their vehicle type.

2

a confirmation objection based on unfair discrimination between Plaintiffs and unsecured claimholders. But, the UCC is off base because Plaintiffs are asserting trust ownership; they are not comparable unsecured claimholders to the UCC's constituency. If the Settlement Agreements are not assumed, the Commonwealth and this Court would have to expend resources in connection with the Lift Stay Motion merely to delay payment to Plaintiffs.

4. The Limited Objection contends the Settlement Agreements are not executory contracts because plaintiffs had no unperformed obligations as of the date the Commonwealth Title III case was filed. The UCC is wrong. Plaintiffs' obligations to cooperate with the Commonwealth and jointly develop the contents of the individualized notices to be provided to Plaintiffs' class members, general publication, radio notices, and an internet portal, and to file certain claim forms, are essential to resolve the due process issues litigated in the Prepetition Actions. These notice obligations were so material that the First Circuit needed to address them and remand the case. Accordingly, the Court should overrule the Limited Objection and authorize the Commonwealth to assume the Settlement Agreements.

## Argument

### I. The Settlement Agreements are Executory Contracts

5. The UCC argues the Settlement Agreements cannot be assumed because they are not executory contracts. Specifically, the UCC contends Plaintiffs' obligations under the Settlement Agreements to (i) cooperate with the Commonwealth in the development of the notices and a website, and (ii) to submit claims within a reimbursement period containing certain information and certifications are not "essential" under Puerto Rico law and are merely "ministerial" obligations. Limited Objection ¶¶ 11-14. The history of the Prepetition Actions, however, reveals such obligations are essential components of the Settlement Agreements. Due

3

process the Commonwealth is required to provide to claimants over the 1998 to 2010 period was the subject of extensive litigation and the provisions of the Settlement Agreements are far from ministerial but are central to the final resolution of the litigation with Plaintiffs. The bottom line is that failure to submit claims and cooperate, deprives Plaintiffs of the money. So, Plaintiffs' obligations are material by any yardstick.

      a. **Plaintiffs' Obligations to Cooperate in Developing Notices and to Submit Claims Are Essential to the Commonwealth's Ability to Satisfy Due Process Requirements**

6.     While the Bankruptcy Code does not define "executory contract," a contract is generally considered to be executory if "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *In re PCM Marketing Corp.*, 447 B.R. 71, 78 (D.P.R. 2011) (quoting Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973)); *In re Santiago*, 563 B.R. 457, 473 (Bankr. D.P.R. 2017). The parties agree "[t]he time for testing whether such reciprocal obligations exist and material obligations remain unperformed, is at the time the bankruptcy petition is filed." *In re High Voltage Eng'g Corp.*, 397 B.R. 579, 598 (Bankr. D. Mass. 2008), *aff'd*, 403 B.R. 163 (D. Mass. 2009).

7.     A prepetition settlement agreement like any other agreement can be assumed pursuant to section 365 of the Bankruptcy Code. *See In re Level Propane Gases, In.*, 297 B.R. 503, 506 (Bankr. N.D. Ohio 2003). To understand the materiality of the obligations of the parties' obligations under a contract the court should look into the intent of the parties and circumstances surrounding the execution of the agreement. *See In re Worldcom, Inc.*, 343 B.R. 486, 496-97 (Bankr. S.D.N.Y. 2006) ("Each performance goes to the essence of what the other party sought and expected when he entered into the . . . Agreement, and without it, the party will lose the benefit of the bargain that he thought he struck." *In re Teligent, Inc.*, 268 B.R. 723, 730-31 (Bankr.

4

S.D.N.Y. 2001)."). Thus, "[e]very decision concerning whether a contract is executory must be made on the facts of the particular case and the standards set forth in the applicable nonbankruptcy law." *In re Byung Mook Cho*, 581 B.R. 452, 466 (Bankr. D. Md. 2018).

8. The UCC argues that, under Puerto Rico law, a material breach of Plaintiffs' obligations regarding the notice procedures would not excuse performance by the Commonwealth. Limited Objection ¶¶ 9-10. The UCC nowhere explains how the failure to submit claim forms would not excuse payment by the Commonwealth.[4] In any event, the history of the Prepetition Actions proves Plaintiffs' cooperation obligations to develop appropriate notices was an essential obligation and constitutes a reason for the Commonwealth to enter the contract. *Neca Mortg. Corp. v. A & W Developers S.E.*, 1237 P.R. Dec. 860 (1995) ("[T]he unperformed obligation must be an essential obligation, or its performance must constitute the reason for which the other party entered into the contract."). A principle aspect of the settlement was the resolution of Plaintiffs' due process claims concerning notice to claimants who paid insurance premiums during the 1998 to 2010 period in a manner that was not overly burdensome on the Commonwealth. Absent addressing the due process concerns raised by the First Circuit, the litigation will not be settled and neither the Commonwealth nor Plaintiffs will be able to use or get access to the moneys held by the Commonwealth. *See García-Rubiera* (2013), 727 F.3d at 117.

---

[4] As with an option contract, which a majority of courts hold are executory, members of Plaintiffs' class have an option under the Settlement Agreements to the return of funds by filing a claim. *See In re A.J. Lane & Co.*, 107 B.R. 435, 437 (Bankr. D. Mass. 1989) (holding option contract is executory); *In re Abitibibowater Inc.*, 418 B.R. 815, 830 (Bankr. D. Del. 2009) ("Numerous other courts have determined that contingent option agreements are executory when material obligations will arise on each side if the option is exercised."); *In re Riodizio, Inc.*, 204, B.R. 417, 424 (Bankr. S.D.N.Y. 1997) (holding warrant is executory when debtor must keep an offer open, and counterparty must exercise option to purchase shares). Nonetheless, failure to submit a claim releases the Commonwealth from its obligation to return the duplicate insurance premiums, just as a material default would release the Commonwealth.

5

9. In 2003, the Puerto Rico Secretary of Treasury formulated Procedure 96, through which motorists could seek reimbursement of duplicative insurance premiums transferred from JUA to the Treasury Department pursuant to Law 230, which directed JUA to transfer accumulated insurance premiums to the Treasury Department and provided for the escheat of such premiums after a certain period of time. *García-Rubiera v. Fortuño*, 665 F.3d 261, 266-67 (1st Cir. 2011). The process for obtaining reimbursements through Procedure 96, however, was not readily available by publication or online, and even if insureds went to the Treasury Department in person, they would not find the regulations. *Id.* at 272. Plaintiffs argued in the Prepetition Actions that Law 230 and its associated regulations deprived them of their property interests in the duplicate premiums without constitutionally adequate process. *Id.* at 270.

10. On December 2, 2011, the First Circuit determined the Commonwealth's reimbursement scheme under Law 230 and associated regulations, violated the notice requirements of the Due Process Clause. *Id.* at 279. The First Circuit held "the Commonwealth is required to give individual notice to insureds owed reimbursement to the maximum extent feasible." *Id.* at 277. However, the First Circuit noted "[o]n remand, the district court can resolve any factual issues as to feasibility." *Id.*

11. On remand, the District Court ordered the Commonwealth to notify motorists of their right to reimbursement, publish information regarding reimbursement in newspapers, and allow at least 120 days from that notice for motorists to claim reimbursement. *García-Rubiera v. Fortuño*, 727 F.3d 102, 105 (1st Cir. 2013). This was not acceptable to Plaintiffs who appealed. The First Circuit agreed with Plaintiffs and determined that such procedure did not provide due process because the notices were only required to include (1) a statement that the owner is entitled to a refund; (2) the date of the transfer of the premium from the JUA to the Treasury Department;

6

(3) the text of Procedure 96; and (4) the provisions of Law 230 regarding escheat. In particular, the First Circuit noted that its prior decision "did not preclude Plaintiffs from establishing that other information was also necessary in order to render the notice effective in providing a meaningful opportunity to comply with the reimbursement requirements. The record makes clear that additional information may in many instances be essential in order to provide recipients with a reasonable opportunity to comply with the refund requirements." *Id.* at 111.

12. As of the Petition Date, both the Commonwealth and Plaintiffs had an ongoing obligation to jointly develop the contents of the individualized notices to be provided to Plaintiffs' class members, general publication and radio notices, and an internet portal. Federal Settlement Agreement at 4-5; Commonwealth Settlement Agreement ¶ 6.C.i. As the Commonwealth previously noted in connection with the Lift Stay Motion, the parties were in the process of implementing the notice of reimbursement procedures on the Petition Date. *Supplemental Brief and Declaration in Compliance with March 9, 2018 Court Order* ¶ 7 [ECF No. 2795]. In particular, the resolution of the parties to receive individual notices was a central issue in the Prepetition Action. *See García-Rubiera* (2011), 665 F.3d at 267 ("Plaintiffs have produced some evidence that the Commonwealth keeps current a list of names of insureds, their addresses, and other identifying information . . . . The Commonwealth disputes this, at least in part."). The ability of the Commonwealth to comply with Plaintiffs' asserted due process notice requirements and the burden on the Commonwealth's resources were important considerations underlying the Settlement Agreements. Furthermore, the notice procedures, developed in conjunction with Plaintiffs, would avoid further litigation of appropriate notice procedures to satisfy due process.

13. Thus, it is clear that in the context of the Prepetition Actions and the focus on due process in the First Circuit's decisions that the notice and cooperation obligation under the

Settlement Agreements were at the heart of the agreement and not a boilerplate or a ministerial obligation.

14. The cases cited by the UCC asserting that cooperation obligations are merely ministerial are inapplicable because here appropriate notice procedures to satisfy due process was a critical component of the underlying litigation and settlement. For example, in *Olah v. Baird (In re Baird)*, 567 F.3d 1207 (10th Cir. 2009), the Tenth Circuit held that the debtor's obligation to cooperate in handling claims was ministerial because "an insurance company does not 'bargain for the Debtors' cooperating in handling claims. It bargains for premiums.'" *Id.* at 1212.[5] Here, a central issue of the Prepetition Actions was appropriate notice to motorists and the Commonwealth's ability to comply with such requirements. *See García-Rubiera* (2011), 665 F.3d at 267. The cooperation provision did not merely require Plaintiffs to sign a document. Rather, it required development of the content of notices, a webpage and other documents that were central issues in the Prepetition Actions. In any event, cooperation obligations in a settlement agreement can be material. *See In re TM Vill., Ltd.*, 2019 Bankr. LEXIS 650, at *12-13 (Bankr. N.D. Tex. Feb. 28, 2019) (finding cooperation provision in settlement agreement imposed a material obligation to release duplicative lis pendens); *In re Avianca Holdings S.A.*, 618 B.R. 684, 702 (Bankr. S.D.N.Y. 2020) (holding obligation to furnish records was a material obligation, where such documents were required for the counterparty to perform their obligations under the agreement). Similarly a noticing obligation has been found to be material and thus render a contract executory. *See Lubrizol Enters. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1046 (4th Cir. 1985) ("Moreover, the contract was further executory as to RMF because of the

---

[5] The court held that the policy was not an executory contract because the relevant policy period had expired and the debtor had already paid for the policy for that period. *Id.*

8

contingent duties that RMF owed of giving notice of and defending infringement suits and of indemnifying Lubrizol for certain losses arising out of the use of the technology.").

15. In *In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256, 260-61 (Bankr. D. Mass. 1982), the court held the remaining obligations to determine the amount of overpayment was "purely a ministerial and mathematical determination." As noted above, a central issue of the Prepetition Actions was the contents and process for providing notice to motorists.

16. Here, based on the history of the litigation between Plaintiffs and the Commonwealth and proposed notice procedures rejected by the First Circuit, if the parties could not jointly develop appropriate notices satisfying the Commonwealth's due process obligations, the purpose of the Settlement Agreements would be defeated. Indeed, the First Circuit ordered "no duplicate premiums shall escheat to the Commonwealth until it has established and complied with a reimbursement procedure which meets the basic requirements of constitutional due process." *García-Rubiera* (2013), 727 F.3d at 117. Failure to develop appropriate notices would deprive the Commonwealth of the escheatment of unclaimed funds. It is not surprising then that the Settlement Agreements specifically noted the "court will retain jurisdiction to enforce the terms of [the] stipulation and judgment." Federal Settlement Agreement ¶ IV.2; *see* Commonwealth Settlement Agreement ¶ 9.

17. Accordingly, the obligation of Plaintiffs to jointly develop appropriate notices is an essential obligation to ensure that the Commonwealth satisfied due process, obtain access to the unclaimed funds, and finally terminate the litigation.

### II. Assumption of the Settlement Agreements Benefits the Commonwealth and Its Creditors

18. Assumption of the Settlement Agreements provides a benefit to the Commonwealth by not only ending a nearly 20-year saga in connection with the Prepetition Actions, but also

avoiding further litigation of property issues raised in the Lift Stay Motion, which the UCC ignores.[6] As the First Circuit suggested when ordering a partial remand, the monies at issue could well constitute a statutory trust in favor of Plaintiffs. Absent assumption of the Settlement Agreements, this issue may have to be litigated. *See Gracia-Gracia v. Fin. Oversight & Mgmt. Bd. (In re Fin. Oversight & Mgmt. Bd. of P.R.)*, 939 F.3d 340, 351 (1st Cir. 2019). Further litigation of the parties' respective property interests in the insurance premium funds held by the Commonwealth would waste Commonwealth resources, especially when Plaintiffs' members' claims would likely fall under a convenience class and receive essentially the same treatment as if the Settlement Agreements were assumed. Instead, the UCC would have the Commonwealth litigate the Lift Stay Motion merely to delay payment of Plaintiffs' claims—providing no benefit to the Commonwealth or its creditors, and exposing the Commonwealth to the possibility of negative precedent in connection therewith.[7] The UCC divulges it motive by arguing all unsecured claimholders should be paid the same as Plaintiffs. The UCC's motive is to delay settlement so the treatment of Plaintiffs is in the Commonwealth's plan of adjustment, thereby allowing the UCC to make its unfair discrimination objection. As explained at the outset, the UCC would be wrong because Plaintiffs are settling trust rights and the UCC's constituency is not. Accordingly,

---

[6] Under the functional approach, since assumption of the Settlement Agreements will benefit the Commonwealth, the Court should allow the contract to be assumed. *See In re Worldcom, Inc.*, 343 B.R. 486, 493 (Bankr. S.D.N.Y. 2006) ("Under the Functional approach, a court looks to whether assumption or rejection of the contract in question would benefit the debtor's estate, regardless of whether any material obligations remain outstanding on the part of only one party to the contract.").

[7] Contrary to the UCC's assertion that the appropriate resolution is payment of Plaintiffs' claims through a confirmed plan of adjustment, *Limited Objection* ¶ 21 ("[T]he appropriate resolution of this matter is right before the Oversight Board's eyes: payment of Plaintiffs, as members of a convenience class, through a confirmed plan of adjustment."), the Commonwealth must address Plaintiffs' property claims in the Lift Stay Motion if the Settlement Agreements are not assumed, which is subject to the time limit in Bankruptcy Code Section 362(e). *See Order Scheduling Further Proceedings Regarding Motion Requesting Relief from Automatic Stay* [ECF No. 8890] ("The First Circuit further directed that the time limits under Section 362(e) of the Bankruptcy Code would 'commence anew upon issuance of the court's mandate corresponding to [its] [O]pinion . . . .'").

assumption of the Settlement Agreements benefits the Commonwealth and its creditors by avoiding unnecessary waste of this Courts time and the Commonwealth resources.

## Conclusion

**WHEREFORE** the Commonwealth respectfully requests entry of the Proposed Order, approving the Commonwealth's assumption of the Settlement Agreements pursuant to Bankruptcy Code section 365, and granting the Commonwealth such other and further relief as the Court may deem appropriate.

Dated: December 3, 2020
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey W. Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

Steve Y. Ma (Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

*Attorneys for the Financial
Oversight and Management Board
as Representative for the Commonwealth*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

11

*Co-Attorneys for the Financial
Oversight and Management Board
as Representative for the Commonwealth*

12