**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

-------------------------------------------------------------------- X
    :
In re:    :
    :
THE FINANCIAL OVERSIGHT AND    :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    :  Title III
    :
as representative of    :  Case No. 17-BK-3283 (LTS)
    :  (Jointly Administered)
    :
THE COMMONWEALTH OF PUERTO RICO *et al.,*    :  Related to ECF Nos. 14974, 15209
    :
Debtors.[1]    :
-------------------------------------------------------------------- X
    :
In re:    :
    :
THE FINANCIAL OVERSIGHT AND    :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    :  Title III
    :
as representative of    :  Case No. 17-BK-3566 (LTS)
      Related to ECF Nos. 997, 1029
THE EMPLOYEES RETIREMENT SYSTEM OF THE    :
GOVERNMENT OF THE COMMONWEALTH OF    Re: Adv. Pro. Nos. 19-00356, 19-
PUERTO RICO,    00357, 19-00358, 19-00359, and
    19-00361
Debtor.    :
-------------------------------------------------------------------- 

**COMMITTEES' REPLY IN SUPPORT OF MOTION TO EXCLUDE**
**EXPERT TESTIMONY OF DR. LAURA GONZALEZ ON *ULTRA VIRES* ISSUES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 3

I.      Dr. Gonzalez's Proposed Expert Testimony Is Not Admissible. ..................... 3

        A.      Dr. Gonzalez Is Not Qualified To Serve As A Translation Expert. ........................3

        B.      Dr. Gonzalez's Translation Method And Its Application Are Unreliable. ............11

        C.      Dr. Gonzalez's Ultimate Opinion Is Irrelevant And Unhelpful To The Trier
                Of Fact. ..........................................................................................................15

        CONCLUSION....................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berry v. City of Detroit*,
  25 F.3d 1342 (6th Cir. 1994) ....................................................................4

*Bogosian v. Mercedes-Benz of N.A., Inc.*,
  104 F.3d 472 (1st Cir. 1997).........................................................4, 5, 10

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Securities*,
  752 F.3d 82 (1st Cir. 2014)....................................................................14

*Carrelo v. Advanced Neuromodulation Sys., Inc.*,
  777 F.Supp.2d 315 (D.P.R. 2011)......................................................12, 15

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) .................................................................13

*Dopp v. HTP Corp.*,
  947 F.2d 506 (1st Cir. 1991) ...................................................................8

*El Dia, Inc. v. Puerto Rico Dep't of Consumer Affairs*,
  413 F.3d 110 (1st Cir. 2005)....................................................................8

*Gibbs v. Paley*,
  354 F.Supp. 270 (D.P.R. 1973).................................................................8

*Gray v. Noholoa*,
  214 U.S. 108 (1909)...............................................................................8

*Hayes v. Douglas Dynamics, Inc.*,
  8 F.3d 88 (1st Cir. 1993)........................................................................13

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)..............................................................................11

*Ramos v. Philip Morris, Inc.*,
  414 F.Supp.2d 115 (D.P.R. 2005)............................................................13

*Rivera v. Méndez & Compañia*,
  988 F.Supp.2d 174 (D.P.R. 2013)............................................................14

*Robinson v. GEICO Gen. Ins. Co.*,
  447 F.3d 1096 (8th Cir. 2006) ..................................................................4

*In re San Juan Dupont Plaza Hotel Fire Lit.*,
    687 F.Supp. 716 (D.P.R. 1988)..............................................................7, 8

*Ueland v. U.S.*,
    291 F.3d 993 (7th Cir. 2002) ...................................................................11

*U.S. v. Contreras*,
    173 F.3d 852, 1999 WL 123760 (4th Cir. 1999) ....................................7

*U.S. v. Gomez*,
    67 F.3d 1515 (10th Cir. 1995) ..............................................................6, 7

*U.S. v. Gonzalez*,
    319 F.3d 291 (7th Cir. 2003) ...............................................................8, 10

*Vadala v. Teledyne Industries, Inc.*,
    44 F.3d 36 (1st Cir. 1995)......................................................................12

## Statutes & Rules

2 L.P.R.A. § 311 ...............................................................................................2

11 L.P.R.A. § 30c.............................................................................................14

31 L.P.R.A. § 13 ...............................................................................................7

Fed. R. Evid. 702 .................................................................................3, 7, 10, 15

## Other Authorities

Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6264.3 (2d ed. 2020)............................7

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico, the Official Committee of Unsecured Creditors of all Title III Debtors other than COFINA and PBA, and the Special Claims Committee of the Financial Oversight and Management Board for Puerto Rico (collectively, the "**Committees**") hereby file this reply in support of the *Committees' Motion To Exclude Expert Testimony Of Dr. Laura Gonzalez On Ultra Vires Issues* [Commonwealth Dkt. 14974; ERS Dkt. 997] (the "***Daubert*** Motion").

### INTRODUCTION

1.        Nothing in the Bondholders' response to the *Daubert* Motion rehabilitates Dr. Gonzalez. The Bondholders' reply is long on generic cites to legal standards, and short on establishing *any* expertise that Dr. Gonzalez has in opining on the translation of a Puerto Rican statute.  Put simply, Dr. Gonzalez is not qualified to offer an opinion on the correct translation of the ERS Enabling Act. She is a professor of finance from California who teaches, researches, and writes in English on subjects unrelated to Spanish and its translation. She has no certifications in language translation, has no specialized knowledge of the Spanish dialect spoken in Puerto Rico, has no "specific expertise" translating Puerto Rican Spanish, has never before translated a Spanish text drafted in Puerto Rico into English for a professional purpose, and has been to Puerto Rico only once—for a one-week vacation in 2014. [Ex. 1, attached hereto, at 47:20-51:8; 55:7-57:10; 61:16-18; 67:21-68:12; 69:18-71:6; 73:8-73: 11; 75:14-76:22.]

2.        In light of Dr. Gonzalez's total lack of relevant experience, the Bondholders are reduced to claiming that she qualifies as an expert simply because she is a native Spanish speaker. [ERS Dkt. 1029 at 5.] But the Bondholders never explain why Dr. Gonzalez's native fluency shared by millions of people around the world qualifies her as an "expert" to offer a new translation of the ERS Enabling Act, much less one that would preempt the official translation of the ERS Enabling Act.

3.      As a result, Dr. Gonzalez is not qualified to offer expert testimony here. There is not a reasonable fit between her actual qualifications and day-to-day professional experience and the translation opinion she seeks to offer. Her opinion is also unreliable because she reverse engineered her translation, making clear that she was retained to reach a foregone conclusion. She relied on sources that lack any relevance to the ERS Enabling Act and its correct translation to opine that "tomar prestado" should have been translated as "to borrow" and not "seek a loan." And—perhaps because it would have undercut her opinion—she failed to consult any Puerto Rican statute other than the ERS Enabling Act. [Ex. 1 at 86:22-87:1.] As the Committees set forth in their Statement of Undisputed Facts in Support of Motion for Summary Judgment on *Ultra Vires* Issues, there are more than 20 examples of statutes where the official Puerto Rican office tasked with doing so translated words in a Puerto Rico statute to mean "to borrow," and in each of those statutes, the Spanish phrase translated was "tomar dinero a préstamo"—not "tomar prestado." [ERS Dkt. 979-1.]

4.      What is more, the Bondholders also ignore important context: how Puerto Rican Spanish statutes are actually translated into English. They do not acknowledge that the official translation of the ERS Enabling Act, published contemporaneously with that statute's passage, was done by the Puerto Rico Office of Legislative Services ("**PROLS**"), which is comprised of Puerto Rican Spanish-speaking professionals who are charged with regularly translating into English the texts that the Puerto Rico Legislative Assembly enacts. *See* 2 L.P.R.A. §311. Only by ignoring this context can the Bondholders pretend that this dispute concerns an untranslated text that expert testimony is required to decipher. [*See* ERS Dkt. 8-9, 12-13.] But it does not. PROLS already provided the official English translation of the ERS Enabling Act. And the Bondholders

2

provide no reason for this Court to discard that official translation in favor of a translation that the Bondholders' off-island "expert" reverse engineered to support their litigating position.

5.      Finally, Dr. Gonzalez's ultimate opinion is irrelevant because, even if the Court accepts her proposed translation in the place of the official PROLS translation, the ERS Enabling Act still would not have authorized a publicly underwritten bond issuance. The Court should exclude Dr. Gonzalez's testimony.

## ARGUMENT

### I.      Dr. Gonzalez's Proposed Expert Testimony Is Not Admissible.

#### A.      Dr. Gonzalez Is Not Qualified To Serve As A Translation Expert.

6.      In their response, the Bondholders misrepresent the scope of Dr. Gonzalez's qualifications and incredibly claim that she has "vast experience" relevant to this dispute. [ERS Dkt. 1029 at 6.] It is undisputed that Dr. Gonzalez is a native Spanish speaker. But the Bondholders can point to only one example of Dr. Gonzalez professionally translating a written Spanish text nearly 15 years ago, and they cannot identify any instance where Dr. Gonzalez previously translated a written, legal Puerto Rican Spanish text, as she seeks to do here. Dr. Gonzalez even admitted that she cannot meet Federal Rule of Evidence 702(a)'s requirement that she have "specialized knowledge" on the subject of translating a Puerto Rican text: she testified that she has no "specific expertise in translating between Spanish as it is spoken and written in Puerto Rico, and English." [Ex. 1 at 73:8-11.]

7.      The Bondholders respond by asserting that Dr. Gonzalez "frequently speaks Spanish with 'Spanish speakers all over the Spanish speaking nations and areas and dialects,' *including speakers from Puerto Rico*." [*Id.* at 5 (emphasis added).] But Dr. Gonzalez never testified in her deposition that she speaks with Spanish speakers from Puerto Rico, much less that she does so frequently; indeed, the only time she appears to have done so was during a one-week

vacation she took to Puerto Rico in 2014. [Ex. 1 at 67:21-69:17.] And speaking conversational Spanish is distinct from translating a written legal text with the rigor necessary to aid the Court and the parties in the resolution of this complex litigation. Nothing in the Bondholders' response establishes that Dr. Gonzalez has specialized experience qualifying her for the specific task at hand—translating the ERS Enabling Act.

8.      The Bondholders cannot just ignore Dr. Gonzalez's lack of experience actually translating written Puerto Rican texts. The case law is clear that experts must have expertise or knowledge pertaining to the specific "issue at hand." *Bogosian v. Mercedes-Benz of N.A., Inc.*, 104 F.3d 472, 477 (1st Cir. 1997). In other words, "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

9.      Here, while Dr. Gonzalez may be qualified to testify on certain subjects (including, perhaps, financial issues relevant to her Ph.D. and her ongoing academic research and writing), the Bondholders have offered nothing to establish that Dr. Gonzalez has specific and relevant expertise in the translation of written Spanish texts, including a Puerto Rican legal text like the ERS Enabling Act. And while the Bondholders cite cases to suggest that the Court should overlook mere "[g]aps in an expert witness's qualifications or knowledge," such as when a neurologist seeks to opine on potential causes of shoulder pain, *see Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006), Dr. Gonzalez does not have a mere "gap" in her qualifications or knowledge. She has a gaping hole. She has *no* "specific expertise" translating Puerto Rican Spanish. [Ex. 1 at 73:8-11.]

10.     The Bondholders respond to the *Daubert* Motion with red herrings and conclusory statements of generally applicable law. They note that a proposed expert should not be disqualified simply because she lacks a specific academic degree or certification, because her competence has been gained through experience rather than at a job relevant to the opinion she seeks to offer, or because she has not previously served as an expert. [ERS Dkt. 1029 at 6-7.] True enough. But the Committees are not objecting to Dr. Gonzalez's testimony based upon the absence of any one of these individual factors. Instead, there are a constellation of deficiencies that, taken together, disqualify Dr. Gonzalez from offering expert testimony on the proper translation of the ERS Enabling Act: she has no "specific expertise" translating Puerto Rican Spanish; she is a professor of finance, not a professor of Spanish or a discipline related to the study of languages, and she teaches, researches, and writes in English; she has no certifications in language translation; she has no specialized knowledge of the Spanish dialect spoken in Puerto Rico; she has only been to Puerto Rico once for one week; she has never before translated a Spanish text drafted in Puerto Rico into English for a professional purpose; and she has not professionally translated a Spanish written text in nearly 15 years. In light of these deficiencies, it borders on the absurd for the Bondholders to contend that Dr. Gonzalez has "vast experience" (ERS Dkt. 1029 at 6) with the "issue at hand." *Bogosian*, 104 F.3d at 477.

11.     Dr. Gonzalez's only real qualification here is her native fluency, which makes it all the more remarkable that she is the expert the Bondholders offered. As the Bondholders acknowledge, they identified the purported need for expert translation testimony by October 25, 2019 when they responded to the Committees' *ultra vires* claims objections. [Commonwealth Dkt. 9012 at ¶¶ 2, 11-17.] Despite having the better part of a year to find a qualified expert, the only native Spanish speaker that the Bondholders could find to support their proposed translation

5

of the ERS Enabling Act is Dr. Gonzalez. But surely there are numerous other native Spanish speakers who, in addition to their native fluency, have specific experience and expertise translating written Puerto Rican texts. The fact that the Bondholders could not retain any of these other potential experts to parrot their favored interpretation of the ERS Enabling Act diminishes the credibility of Dr. Gonzalez and her proposed testimony.

12.     Indeed, there *are* native Spanish speakers who could—and in fact did—translate the ERS Enabling Act. PROLS employs them. The Bondholders ignore the role of PROLS in the translation of Puerto Rican statutes. Nowhere do the Bondholders acknowledge, much less dispute, that professional Spanish translators at PROLS—who, unlike Dr. Gonzalez, specialize in the translation of written Puerto Rican Spanish texts into English—published the official translation of the ERS Enabling Act's debt authorization provision after its passage and subsequent amendment. The Bondholders then provide no justification for why the opinion of a finance professor from California who has negligible experience with Puerto Rico, the dialect of Spanish spoken there, and the interpretation and translation of its legal texts should preempt, or is entitled to greater respect than, the opinions of these actual experts in Puerto Rican statutes and their Spanish to English translation. This glaring omission weighs against disregarding the unique competence of PROLS in favor of the admission of Dr. Gonzalez's proposed translation.

13.     The Bondholders next cite cases where courts admitted the expert translation testimony of individuals who purportedly had "considerably less experience than Dr. Gonzalez." [ERS Dkt. 1029 at 6.] But these cases are inapplicable. In both cases, the bilingual witnesses translated Spanish conversations that occurred while they working and they made their contemporaneous translations in the ordinary course of their professional duties. *See, e.g., U.S. v. Gomez*, 67 F.3d 1515, 1525-26 (10th Cir. 1995) (witness translated Spanish conversations

recorded during narcotics investigation); *U.S. v. Contreras*, 173 F.3d 852, 1999 WL 123760, at *1 (4th Cir. 1999) (police officer translated conversation in Spanish that occurred while he was on narcotics operation). These witnesses were well-suited and qualified to contemporaneously translate conversations that occurred on the job, and for which there were no competing translations. Contrast those facts with those here—Dr. Gonzalez seeks to critique the official translation of a written Puerto Rican text thirty years after it was enacted and for which she has no personal or specialized experience or expertise.

14.     The Bondholders then make the baffling argument that Dr. Gonzalez should be qualified and her testimony admitted because the Committees did not offer an expert of their own on the translation issues. [ERS Dkt. 1029 at 8-9.] That is not how Rule 702 works. The rule governs the admission of testimony by *any* expert. *See* Fed. R. Evid. 702. And *every* "party proffering a witness as an expert has the burden of laying a foundation that establishes the witness is qualified." Wright & Miller, 29 Fed. Prac. & Proc. Evid. §6264.3 (2d ed. 2020) (citing *Apostol v. U.S.*, 838 F.2d 595, 599 (1st Cir. 1988) (excluding expert testimony where proponent did not meet burden of establishing expert's qualifications)). The Bondholders have not done so here.

15.     The Bondholders' argument that it was the Committees' burden to offer their own translation expert also fails to apprehend how challenges to official translations proceed under Puerto Rican law. An official translation by PROLS has the weight of law unless and until a party establishes that a discrepancy exists between the original Spanish text and the official translation. *See, e.g., In re San Juan Dupont Plaza Hotel Fire Lit.*, 687 F.Supp. 716, 727 n.18 (D.P.R. 1988); *Basora v. Padilla*, 62 D.P.R. 332 (1943); 31 L.P.R.A. §13. To date, the Bondholders have not established that such a discrepancy exists. They have merely alleged as much. That allegation does not, by itself, render the official translation null and void. Otherwise, litigants could attempt to

manipulate the substance of Puerto Rican law governing a dispute simply by asserting, even without basis, that an official translation is incorrect. Instead, the official translation controls until the party challenging the official translation meets its legal burden and the Court "find[s]" that the translation contains an error. *San Juan Dupont Plaza Hotel*, 687 F.Supp. at 727 n.18.

16.     As such, the Bondholders' assertion that the Committees had the burden of defending the official PROLS translation, and were required "to offer an expert of their own or otherwise provide evidence challenging the Bondholders' translation," gets things backwards. [ERS Dkt. 1029 at 9.] The burden is on the Bondholders to challenge the official translation and prove its inaccuracy, not on the Committees to defend it.

17.     Recognizing this allocation of the burden, Puerto Rico law provides that an official translation is presumed accurate and only falls if it is not a "substantially satisfactory" translation of the original Spanish text. *Sofia Perez Segovia v. Tribunal de Distrito de San Juan*, 69 D.P.R. 4, 8 (1948).  Whether an official translation is "substantially satisfactory" is a question of law for the Court. *Id.* (addressing proper translation of Puerto Rican statute while sitting as appellate court); *accord El Dia, Inc. v. Puerto Rico Dep't of Consumer Affairs*, 413 F.3d 110, 112 n.2 (1st Cir. 2005) (same); *Dopp v. HTP Corp.*, 947 F.2d 506, 510 n.4 (1st Cir. 1991) (same); *Gibbs v. Paley*, 354 F.Supp. 270, 272 (D.P.R. 1973). It is not a question of fact, as the Bondholders suggest. [ERS Dkt. 1029 at 1.] Indeed, the Bondholders are wrong to rely on *Gray v. Noholoa*, 214 U.S. 108, 110 (1909) and *United States v. Gonzalez*, 319 F.3d 291, 296 (7th Cir. 2003), to contend that this inquiry involves a question of fact, not law. Both of those cases applied non-Puerto Rico law and addressed how courts should translate a previously untranslated foreign text. But, here, the question is whether the ERS Enabling Act's official translation is accurate. The question is not

how to properly translate that text in the first instance but, instead, whether the official translation is "substantially satisfactory"—a question of law pursuant to *Segovia*.

18.     Here, the Committees appropriately defended the official translation under *Segovia* by disputing the Bondholders' proposed translation in other pleadings (ERS Dkt. 1025 at ¶¶ 8-13) and by moving to exclude the testimony of Dr. Gonzalez, who the Bondholders offered in support of their efforts to meet *their* burden to challenge the accuracy of the official translation. Because the burden is on the Bondholders, they cannot point to the Committees' lack of an expert as meaning that the official translation cannot be defended and that it must yield to Dr. Gonzalez's proposed translation.

19.     For the same reason, the Bondholders are wrong to assert that the Committees cannot attack Dr. Gonzalez for lacking specific expertise with the particular dialect of Spanish spoken in Puerto Rico without also establishing that the ERS Enabling Act would be translated differently across different dialects. [ERS Dkt. 1029 at 8.] Again, it is the Bondholders' burden both to qualify their expert and to show that the official translation of the ERS Enabling Act is not "substantially satisfactory." Since their "expert" lacks any "specific expertise" with respect to the Puerto Rican dialect of Spanish, the Bondholders' burden requires them to establish that there not distinctions across Spanish dialects that could impact the accurate translation of the ERS Enabling Act. It is not the Committees' burden to prove the opposite. And since the Bondholders have not made this showing, Dr. Gonzalez remains unqualified to serve as an expert and the ERS Enabling Act's official translation remains "substantially satisfactory" under *Segovia*.

20.     The Bondholders respond by attempting to distinguish *Segovia*. They assert that the "portion of the translation in dispute [in *Segovia*] was not 'central' to the issues in the litigation." [*Id.* at 13.] Regardless, the Puerto Rico Supreme Court still announced the governing

standard for determining if an official translation should continue to control or if it should yield because it is inaccurate: the question is whether it provides a "substantially satisfactory" translation of the original text. *Segovia*, 69 D.P.R. at 8. The Bondholders cannot wave away this "substantially satisfactory" standard since one of their own cases recognizes that "[a] translation is sufficiently accurate if it 'reasonably conveys the intent or the idea of the thought spoken.'" *Gonzalez*, 319 F.3d at 296 (quoting *United States v. Zambrana*, 841 F.2d 1320, 1337 (7th Cir.1988)). As noted below, the official PROLS translation of the debt authorization provision is "substantially satisfactory" and it "reasonably conveys the intent or the idea of the thought spoken" because there is no relevant distinction between authorizing ERS "to seek a loan" (as used in the official translation) and "to borrow" (as proposed by Dr. Gonzalez). There was thus never a reason for the Committees to offer their own translation expert, especially since the burden to challenge that translation rested exclusively with the Bondholders.

21.    Finally, the Bondholders repeatedly assert that the Committees' objections to Dr. Gonzalez's qualifications and her proposed testimony only go to the testimony's weight, not its admissibility. [ERS Dkt. 1029, at 2, 4, 6, 11-12.] The Bondholders read this principle too broadly. The First Circuit has recognized that objections to the "'*factual underpinning*'" of an expert opinion affect the weight and credibility of the testimony, not its admissibility. [*Id.* at 11-12 (emphasis added).] But this rule does nothing to relax the Bondholders' obligation to prove that there is a reasonable fit between Dr. Gonzalez's knowledge, skill, experience, training, or education and the "issue at hand," *Bogosian*, 104 F.3d at 477, in addition to the other Rule 702 requirements that her testimony be reliable and helpful to the trier of fact. If the Court accepts the Bondholders' argument that the Committees' objections to Dr. Gonzalez's qualifications go to weight not admissibility, it will abdicate its "gatekeeping obligation" to "make certain" that experts

10

are not permitted to testify absent a showing that they can "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 152 (1999); *accord Ueland v. U.S.*, 291 F.3d 993, 997 (7th Cir. 2002). Here, the Bondholders have not established that Dr. Gonzalez is qualified to serve as an expert because she lacks any relevant and specific expertise with respect to the translation of written Spanish texts, including legal Puerto Rican texts like the ERS Enabling Act.

### B.    Dr. Gonzalez's Translation Method And Its Application Are Unreliable.

22.    The Bondholders next fail to rebut the Committees' argument that the Court should exclude Dr. Gonzalez's proposed testimony because it is not based on reliable principles or methods but instead is based upon *ipse dixit* and irrelevant sources. The starting point of Dr. Gonzalez's analysis is that the phrase "seek a loan" is properly rendered in Spanish as "efectuar/contratar un préstamo" rather than "tomar prestado," and so the ERS Enabling Act's use of "tomar prestado" cannot mean "to seek a loan." [ERS Dkt. 977-2 at 6.] Only once this assertion is accepted can Dr. Gonzalez conclude that the official translation of the ERS Enabling Act is incorrect and in need of an alternative translation.

23.    But Dr. Gonzalez cites *nothing* to support what she insists is the proper translation into Spanish of "to seek a loan." She neither cites any other law enacted by the Commonwealth or any other Puerto Rican text, nor does she analyze how the context of the text informs its meaning. In fact, Dr. Gonzalez admitted that the only Puerto Rican statute she consulted was the ERS Enabling Act. [Ex. 1 at 86:22-87:1.] She therefore overlooked the many other Puerto Rican statutes—which the Committees compiled in their *ultra vires* summary judgment briefing—where PROLS translated different statutory language that is not included in the ERS Enabling Act ("tomar dinero a préstamo") to mean "to borrow," rather than "to seek a loan." [*See* ERS Dkt. 979-1.] These other statutes—which Dr. Gonzalez ignored wholesale—show that PROLS knows how

11

to translate a statute to mean "to borrow" when its context and the meaning of individual words demand it. Dr. Gonzalez therefore fails to explain, beyond her own *ipse dixit*, how the ERS Enabling Act's official translation is inaccurate. Without more, the Court cannot evaluate, as *Daubert* requires, Dr. Gonzalez's "factual basis" and "process of reasoning" for her conclusion that there is an error in the ERS Enabling Act's official translation. *Vadala v. Teledyne Industries, Inc.*, 44 F.3d 36, 38 (1st Cir. 1995).

24.     This starting point for Dr. Gonzalez's analysis is problematic for an additional reason. Again, Dr. Gonzalez starts with the *English* phrase ("seek a loan"), translates it *into Spanish* ("efectuar/contratar un prestamo"), and then concludes that the official translation of the ERS Enabling Act's text ("tomar prestado") is inaccurate. [ERS Dkt. 997-2 at 6-7.] But this is backwards. Dr. Gonzalez's task was to translate the Spanish text into English, not start with the Bondholders' preferred English translation, translate that into Spanish, and then inevitably identify some incongruity with the ERS Enabling Act's official translation favorable to the Bondholders' litigating position.

25.     It is also odd that Dr. Gonzalez proceeded in this manner, given that she "prefer[s] to translate from Spanish into English," rather than "from English into Spanish." [Ex. 1 at 57:20-25.] The only reasonable interpretation of this admission is that the Bondholders instructed Dr. Gonzalez as to what opinion they sought in this litigation and how she should get there. Her opinion was therefore a foregone conclusion, not a credible result of reliable principles and methods that were reliably applied.

26.     Courts routinely exclude expert testimony when experts reverse engineer conclusions that litigating parties desire them to reach. *See Carrelo v. Advanced Neuromodulation Sys., Inc.*, 777 F.Supp.2d 315, 320 (D.P.R. 2011) (excluding expert "report and deposition [that]

provide no information as to how there was a failure to warn aside from the fact that [the expert] received that information from Plaintiffs' counsel"); *accord Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993) ("Where an expert presents nothing but conclusions" without "an inferential process" or "discussion of hypotheses considered and rejected, such testimony will be insufficient to defeat a motion for summary judgment"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995), on remand from 509 U.S. 579 (1993) ("in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office"); *Ramos v. Philip Morris, Inc.*, 414 F.Supp.2d 115, 123 (D.P.R. 2005). This Court should do the same here. Dr. Gonzalez's backwards translation methodology suggests that she endeavored not to provide an unbiased and reliable translation but instead approached her translation with the ultimate goal of reaching whatever conclusion the ERS Bondholders demanded. Her opinion is therefore not objectively reliable.

27.     In addition, as noted in the Committees' *Daubert* Motion, Dr. Gonzalez supports her two and a half page "expert" opinion with only 4 sources that have no relevance to the proper translation of a Puerto Rican statute. The Bondholders do not address these sources in any detail because they are so clearly unhelpful here. To be clear, the only sources that Dr. Gonzalez could muster in support of her opinion as to the proper translation of the law that governs this $3 billion dispute are: an English-language speech delivered by Jane Goodall, two Spanish speeches delivered by politicians in Uruguay and Argentina, and a 40-year old Puerto Rican law review article on constitutional law rather than municipal finance. [ERS Dkt. 997-2 at 7-8.] The Bondholders' only response is that Dr. Gonzalez did not cite "'marginal' sources" but instead consulted "multiple sources." [ERS Dkt. 1029 at 11.] Of course, 4 is a plural number. But just

13

because an expert cites multiple sources does not render her conclusion reliable. An expert opinion is unreliable and inadmissible if the expert relied upon irrelevant facts, data, and/or other sources in reaching that opinion, as is the case here. *Bricklayers and Trowel Trades Int'l Pension Fund v. Credit Suisse Securities (USA) LLC*, 752 F.3d 82, 91-92 (1st Cir. 2014); *Rivera v. Méndez & Compañia*, 988 F.Supp.2d 174, 179 (D.P.R. 2013).

28.     The Bondholders next dispute that Dr. Gonzalez's opinion is unreliable because she failed to establish that "tomar prestado" could *never* be translated as "to seek a loan" rather than "to borrow." They argue that the Committees "cannot provide even a single instance of 'tomar prestado' being accurately translated as 'to seek a loan.'" [ERS Dkt. 1029 at 12.] Not so. The official PROLS translation of the ERS Enabling Act accurately translates "tomar prestado" as "to seek a loan." So does 11 L.P.R.A. §30c, which limits another Puerto Rico agency's ability to incur debt and translates "tomar prestado" as to "take out loans." The Bondholders put the cart before the horse by presuming these official translations are not "accurate" even though it is the Bondholders' burden to establish their inaccuracy and even though the Court has not yet resolved this issue in the Bondholders' favor.

29.     The Bondholders also contend that the Committees have previously conceded that the official PROLS translation is inaccurate. [ERS Dkt. 1029 at 8.] But this is false. The Committees acknowledged that the official translation had certain technical issues involving the translation of "del" and the placement of a few commas. [ERS Dkt. 469 at ¶ 10 n.3.] The Committees never agreed that the official translation inaccurately translated "tomar prestado." As with so much of their other summary judgment briefing, the Bondholders play fast and loose with the actual record.

14

30.     In the end, the Court should exclude Dr. Gonzalez's testimony on the basis that it is unreliable. Among other things, Dr. Gonzalez relied upon irrelevant and unreliable sources, she did not prove that her proposed translation is the only possibly accurate translation, and it appears she reached a specific conclusion after the Bondholders demanded it, rather than through the objective application of reliable principles and methods.

**C.    Dr. Gonzalez's Ultimate Opinion Is Irrelevant And Unhelpful To The Trier Of Fact.**

31.     Finally, the Bondholders do not even engage the Committees' argument that Dr. Gonzalez's opinion is unhelpful to the trier of fact. As the Committees have extensively argued elsewhere, regardless of whether the ERS Enabling Act is translated as permitting ERS "to seek a loan" or "to borrow," neither translation would have permitted ERS to engage in a publicly underwritten bond issuance. [ERS Dkt. 978 at ¶¶ 46-51; ERS Dkt. 1004 at 7-11; ERS Dkt. 1025 at ¶¶ 9-25.] All the Bondholders say in response is that the "scope of ERS's statutory authority to issue the ERS Bonds is . . . at the core of the parties' dispute in the *ultra vires* proceedings." [ERS Dkt. 1029 at 15.] Of course. But the Bondholders do not show how accepting Dr. Gonzalez's proposed translation and discarding the official PROLS translation would affect the outcome of this litigation. They can't because it won't.

32.     "'As to relevance, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue.'" *Carrelo*, 777 F.Supp.2d at 318 (citing *Ortiz–Semprit v. Coleman Co., Inc.*, 301 F.Supp.2d 116, 119 (D.P.R.2004)). Since Dr. Gonzalez's translation of the "scope of ERS's statutory authority to issue the ERS Bonds" will not have any bearing on the Court's ultimate decision of whether the ERS Bonds are *ultra vires*, it is not helpful to the trier of fact and is not admissible under Rule 702.

33.    More fundamentally, because there is no real daylight between the official translation of the ERS Enabling Act and Dr. Gonzalez's proposed translation, it would be especially inappropriate for the Court to displace the judgment of professional legislative staff members who work in Puerto Rico and translate its laws in the ordinary course of their professional duties, all in favor of the opinion of a finance professor who lives on the other side of the country, does not translate Spanish texts in the ordinary course of her professional duties, has visited Puerto Rico once for a vacation, and admitted to lacking *any* specialized experience with respect to translating Spanish as it is spoken and written in Puerto Rico.

## CONCLUSION

34.    For the foregoing reasons and for the reasons stated in the Committees' *Daubert* Motion, Dr. Gonzalez is unqualified to serve as an expert, her opinion is not the reliable product of reliable principles and methods, and her opinion is not helpful to the trier of fact. The Committees respectfully request that the Court exclude Dr. Gonzalez's proposed testimony on the *ultra vires* issues.

Dated:  December 3, 2020                  */s/ Robert D. Gordon*
San Juan, Puerto Rico                     JENNER & BLOCK LLP
                                          Robert Gordon (admitted *pro hac vice*)
                                          Richard Levin (admitted *pro hac vice*)
                                          919 Third Ave
                                          New York, NY 10022-3908
                                          rgordon@jenner.com
                                          rlevin@jenner.com
                                          212-891-1600 (telephone)
                                          212-891-1699 (facsimile)

                                          Catherine Steege (admitted *pro hac vice*)
                                          Melissa Root (admitted *pro hac vice*)
                                          Landon Raiford (admitted *pro hac vice*)
                                          353 N. Clark Street
                                          Chicago, IL 60654
                                          csteege@jenner.com
                                          mroot@jenner.com
                                          lraiford@jenner.com

312-222-9350 (telephone)
312-239-5199 (facsimile)

- and –

/s/ A.J. Bennzar-Zequeria
BENNAZAR, GARCÍA & MILIÁN, C.S.P
A.J. Bennazar-Zequeira
Héctor M. Mayol Kauffmann
Francisco del Castillo Orozco
Edificio Union Plaza,
1701 Avenida Ponce de León #416
Hato Rey, San Juan
Puerto Rico 00918
ajb@bennazar.org
hector.mayol@bennazar.com
787-754-9191 (telephone)
787-764-3101 (facsimile)

*Counsel for the Official Committee of
Retired Employees of Puerto Rico*

- and –

/s/ Luc A. Despins
PAUL HASTINGS LLP
Luc A. Despins, Esq. (*Pro Hac Vice*)
James R. Bliss (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
2050 M Street NW
Washington, D.C. 20036
Tel: (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors (other than
COFINA and PBA)*

- and –

*/s/ Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA and PBA)*

- and –

*/s/ John Arrastia*
GENOVESE JOBLOVE & BATTISTA, P.A.
John Arrastia, Esq. (*Pro Hac Vice*)
John H. Genovese, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jarrastia@gjb-law.com
jgenovese@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee of Unsecured Creditors*

- and –

*/s/ Sunni Beville*
Sunni P. Beville, Esq. (*pro hac vice*)
Tristan G. Axelrod, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111

Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management
Board, acting through the members of the Special
Claims Committee*

- and –

/s/ Kenneth Suria
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and
Management Board, acting through the members of
the Special Claims Committee*

19