**UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>                  as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>                      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S URGENT MOTION FOR
ENTRY OF ORDER AUTHORIZING THIRD-PARTY DISCOVERY
UNDER BANKRUPTCY RULE 2004 CONCERNING PENSION LIABILITIES**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

## **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION ............................................................................................................................ 2

FACTUAL BACKGROUND........................................................................................................ 2

RELIEF REQUESTED.................................................................................................................. 6

ARGUMENT................................................................................................................................. 7

      I.      Ambac is Entitled to Third-Party Discovery From Milliman Regarding the Commonwealth's Fiscal Condition. ................................................................ 7

CERTIFICATION ....................................................................................................................... 10

NO PRIOR REQUEST FOR RELIEF........................................................................................ 11

CONCLUSION............................................................................................................................ 11

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re China Fishery Grp. Ltd.*,
  2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ............................................................... 7

*In re Correra*,
  589 B.R. 76 (Bankr. N.D. Tex. 2018) ..................................................................................... 7

*In re Drexel Burnham Lambert Grp., Inc.*,
  123 B.R. 702 (Bankr. S.D.N.Y. 1991) ..................................................................................... 7

*In re Gawker Media LLC*,
  2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) .............................................................. 7

*In re Madison Williams & Co., LLC*,
  2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ..................................................................... 7

*In re Recoton Corp.*,
  307 B.R. 751 (Bankr. S.D.N.Y. 2004) ..................................................................................... 8

**Statutes**

28 U.S.C. § 1331 ............................................................................................................................ 2

28 U.S.C. § 1391 ............................................................................................................................ 2

Fed. R. Bankr. P. § 2004 ....................................................................................................... *passim*

2017 P.R. Laws 106 ....................................................................................................................... 3

PROMESA § 306 ........................................................................................................................... 2

PROMESA § 307 ........................................................................................................................... 2

PROMESA § 310 ........................................................................................................................... 1

**Other**

H.R. Con. Res. 188, 18th Legislative Assemb. (2017) ................................................................. 3

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), made applicable to this proceeding by Section 310 of PROMESA, Ambac Assurance Corporation ("Ambac") respectfully submits this urgent motion for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), granting Ambac leave to take third-party discovery of Milliman, Inc. ("Milliman"). In support of its motion, Ambac states as follows:

## PRELIMINARY STATEMENT

1. The pension claims against the Commonwealth constitute the largest remaining creditor group in these Title III cases. With the conversion of the pension obligations to PayGo liabilities, pensions are also now the single largest expense reflected in the Commonwealth Fiscal Plan (as defined herein), reducing by billions the amount available for debt service and other governmental functions. Commonwealth creditors, including Ambac, and the public have an interest in assuring that the pension obligation amounts included in the fiscal plans, which will in turn form the basis of any proposed plan of adjustment, are accurate and do not overstate the actual pension liability.

2. Milliman has acted as the Commonwealth's actuarial consultant for over thirteen years. In that role, Milliman conducts annual valuations of the Commonwealth pension liability. The analysis is published in a valuation report, which is the single source relied on by the Oversight Board for the pension obligation amounts included in the Commonwealth Fiscal Plan. Understanding Milliman's analysis is critical to any assessment of the amounts available for debt service included in the Commonwealth Fiscal Plan.

3. Over the past three years, Ambac has diligently sought information from the Financial Oversight and Management Board for Puerto Rico (the "Board") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with the Board, the

1

"Government Parties") concerning the Milliman actuarial valuation reports. As described herein, after numerous meet and confers, the Government Parties have maintained that they are not in possession of key information needed to understand Milliman's analysis, and refuse to obtain the relevant information from Milliman for production to Ambac. As the sole party in direct possession of the relevant materials, Ambac believes it would be most efficient to subpoena materials and examine relevant witnesses directly from Milliman.

4. The third-party discovery from Milliman, which would provide insight into Milliman's calculation of the Commonwealth's pension liability, is critical to creditors' understanding of the Commonwealth's financial condition. Without this information, the Commonwealth's estimated $55 billion pension liability remains unsubstantiated and untested. This is particularly troubling given the magnitude of the liability and the fact that a preliminary analysis of pension-related information that Ambac has obtained by experts in the field reveals that the pension liability, and in turn the PayGo obligations incorporated in the Commonwealth's Fiscal Plan, may be substantially overstated. The Motion should be granted.

## JURISDICTION

5. This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1331 and PROMESA § 306(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## FACTUAL BACKGROUND

6. Prior to August 2017, the Commonwealth's pension liabilities were paid via three different retirement systems: the Employees' Retirement System ("ERS"), the Teachers' Retirement System ("TRS"), and the Judiciary Retirement System ("JRS," and together with ERS and TRS, the "Systems"). The Milliman actuarial valuation reports as of June 30, 2017 reflected a total pension liability of approximately $55 billion. On August 23, 2017, the Government

2

enacted Act 106, which transformed the Systems into a single pay-as-you-go system (the "PayGo System"). *See* H.R. Con. Res. 188, 18th Legislative Assemb. (2017); 2017 P.R. Laws 106. Act 106, which required municipalities, public corporations, and other public employer entities to fund pension obligations for their own retired employees through monthly payments to the Commonwealth in the amount of benefits paid to each of their respective retirees, effectively converted the Commonwealth's pension liabilities into expenses.

7. In each of the fiscal plans developed by the Commonwealth and certified by the Oversight Board prior to the current plan, the pension liabilities totaled approximately $50 billion. The current operative fiscal plan, dated as of May 3, 2020 (the "Commonwealth Fiscal Plan"), reflects the Commonwealth's conversion to the PayGo system and thus shows an annual expense of approximately $2.3 billion per year for payment of pension liabilities. The Fiscal Plan allocates ***no*** funds to debt service.

8. Information regarding the Commonwealth's single largest liability is essential to understanding its financial condition as a whole. Due to the dramatic impact that the Commonwealth's pension liabilities have on the Commonwealth's Fiscal Plan, Ambac has sought information from the Government Parties regarding the analysis of these liabilities since the start of these Title III proceedings.

9. On November 28, 2017, Ambac and other creditors filed the *Urgent Renewed Joint Motion by the Ad Hoc Group of General Obligation Bondholders, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., The Mutual Fund Group, and National Public Finance Guarantee Corporation for Order Authorizing Rule 2004 Examination* (the "Joint Rule 2004 Motion", Dkt. No. 1870), requesting discovery from the Government Parties concerning, *inter alia*, all inputs, calculations, and/or formulae underlying all fiscal plans for the

Commonwealth and/or other instrumentalities of the Commonwealth, inclusive of the pension calculations undergirding such fiscal plans. On December 15, 2017, this Court granted the Joint Rule 2004 Motion. (*See* Dkt. No. 2033.) The Government Parties subsequently produced certain materials responsive to the document requests contained therein.

10. On June 18, 2019, Ambac filed two new Rule 2004 motions focused solely on pensions. *See Motion to Compel Pensions Discovery* (Dkt. No. 7505); *Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004* (Dkt. No. 7507) (together, the "Pensions Discovery Motions"). Through the Pensions Discovery Motions, Ambac sought to refocus discovery into the Commonwealth's pension liabilities after the Board filed a plan support agreement ("PSA") indicating that $55 billion in pension obligations would be adjusted through the Commonwealth's plan of adjustment.

11. The Court (Dein, M.J.) subsequently held the Pensions Discovery Motions in abeyance pending the parties' consensual discovery efforts. *See Order on Pensions Discovery Motions* (Dkt. No. 12863). In light of the parties' continued consensual discussions, on May 29, 2020, the Court (Dein, M.J.) denied the Pensions Discovery Motions without prejudice to Ambac "fil[ing] a new Rule 2004 motion concerning this discovery matter" that would be heard on short notice.[2] (Dkt. No. 13265.) Since then, the parties have continued to meet and confer regarding pensions discovery, as the Court contemplated.

12. Among the pensions-related materials produced to date, the Government Parties have produced certain valuation reports from Milliman, which purport to provide a valuation of the total pension liability of the Commonwealth. Milliman describes these valuation reports as estimates

---

[2] Specifically, the Court ruled that Ambac could renew its pensions-related Rule 2004 requests by July 23, 2020, and that motion would be heard at the omnibus hearing then scheduled for July 29, 2020. In light of the Parties' ongoing discussions at the time, such a request for relief was not necessary, but it now is.

4

of the pensions systems' "financial condition." (*See* Ex. B, Puerto Rico Government Employees Retirement System, June 30, 2017 Actuarial Valuation Report, at PDF pg. 3.)

13. In early 2019, Ambac requested from the Government Parties materials relating to Milliman's actuarial valuation reports, which are necessary to evaluate the accuracy of Milliman's conclusions, the integrity of the data on which Milliman relied, and the analytical process that led to Milliman's conclusions. In fact, Milliman itself disclaims any responsibility for the information relied upon in its reports, noting that it does not audit the census data, asset information, or other information used in its analysis, leading to a significant "garbage in, garbage out" concern. (*See id.* at PDF pg. 3.) It is thus imperative that Ambac and other creditors know what information Milliman actually used in its analyses to be able to test the veracity of those figures and how different information may have changed the calculations.

14. In the meet-and-confers on these requests, the Government Parties informed Ambac that there are materials on which Milliman relied in its actuarial valuation reports that Milliman has not provided to the Government Parties, and thus, are not in the Government Parties' possession, custody, or control. For example, during the Parties' meet-and-confer on July 9, 2020, Ambac inquired about dynamic spreadsheets that Milliman appears to have used in developing the actuarial valuation reports. AAFAF advised that it did not have possession of such spreadsheets, and indicated that they might constitute proprietary work product that Milliman is not willing to provide to AAFAF voluntarily. (*See* Ex. C, Ltr. from J. Hughes, Esq. to E. McKeen, Esq. and M. Dale, Esq., at 3 (July 24, 2020).) Further, during the Parties' meet-and-confer on October 15, 2020, AAFAF confirmed that it does not have access to Milliman's work papers, which Milliman purportedly has been unwilling to provide to AAFAF.

15. On October 7, 2020, Ambac notified the Government Parties of its intention to serve

5

Milliman with a subpoena containing document requests and seeking testimony, and thereafter asked whether the Government Parties would consent to the instant motion.[3] (*See* Ex. D, Ltr. from J. Hughes, Esq. to E. McKeen, Esq. and M. Dale, Esq., at 2 (October 18, 2020).) On October 21, 2020, the Government Parties confirmed their objection to Ambac's pursuit of third-party discovery from Milliman. Accordingly, by this motion, Ambac seeks leave to obtain discovery from Milliman.

## RELIEF REQUESTED

16. Pursuant to Bankruptcy Rule 2004, Ambac requests entry of an order:

a. Authorizing Ambac to issue the subpoena to Milliman attached hereto as Exhibit E, directing the production of responsive, non-privileged documents for examination by Ambac; and

b. Authorizing Ambac to issue a subpoena seeking deposition testimony from a Milliman representative pursuant to Federal Rule of Civil Procedure 30(b)(6) concerning the subject matter described in Exhibit E, with topics to be identified after a review of the produced materials.

---

[3] On November 12, 2020, Judge Dein denied without prejudice Ambac's *Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* (Dkt. No. 9022) (the "Assets Motion"), and *Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* (Dkt. No. 9023) (the "*Cash Motion*"), explaining that "[i]n light of the substantial work the parties have done narrowing the issues and resolving the disputed initially presented in the Rule 2004 Motions . . . , the Court requests that Ambac file a new Rule 2004 motion limited to the issues in dispute." *See Order Denying Without Prejudice Rule 2004 Motions filed by Ambac Assurance Corporation* (Dkt. No. 15093). In light of that ruling, Ambac has framed its request for relief here as a Rule 2004 motion limited to a request for authorization to seek third-party discovery from Milliman. Ambac reserves all rights to seek additional discovery pursuant to Rule 2004 from the Board, AAFAF, and other third parties.

6

## ARGUMENT

**I.　Ambac Is Entitled to Third-Party Discovery From Milliman Regarding the Commonwealth's Fiscal Condition.**

17.　Rule 2004 allows examination of the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. § 2004(b). The scope of a Rule 2004 investigation is "very broad." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *4 (Bankr. S.D.N.Y. July 19, 2017) (noting that Rule 2004 discovery can be "legitimately compared to a fishing expedition") (citation omitted).

18.　A Rule 2004 examination may be made by any person with a legitimate interest in the case and directed to any person or entity that has the required information, including third parties. *In re Correra*, 589 B.R. 76, 108 (Bankr. N.D. Tex. 2018) ("Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs."). To that end, third parties are routinely required to produce documentary and testimonial discovery pursuant to Rule 2004. *See, e.g.*, *In re Correra*, 589 B.R. at 108-10; *In re Madison Williams & Co., LLC*, 2014 WL 56070 at *4 (Bankr. S.D.N.Y. Jan. 7, 2014).

19.　In assessing Rule 2004 motions, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination." *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5. Further, courts look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause. *In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017). This can include a showing that the information requested is necessary to a claim of the party seeking examination or that denial of the request would cause the examiner undue hardship or injustice. *Id.* (citation omitted).

7

20. Good cause exists for the Court to allow Ambac to seek third-party discovery from Milliman. The information that Ambac seeks from Milliman is essential to test the accuracy and assess the reasonableness of the Commonwealth's estimated pension liability, and is exactly the kind of evidence that Rule 2004 is designed to elicit. *See, e.g.*, *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("[A]ssist[ing] a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, [and] examining transactions" is the very "purpose of a Rule 2004 examination."). At approximately $55 billion, that asserted liability constitutes the single largest liability in these Title III proceedings. The actuarial analyses included in the Milliman reports purport to support this massive $55 billion pension liability calculation, making it crucial that creditors obtain access to the materials relied on by Milliman for those analyses.

21. While the Government Parties have produced documents that they provided to Milliman in connection with its preparation of the actuarial valuation reports, including the Commonwealth's census data, these materials do not show which materials and data Milliman actually relied on, what assumptions were applied where data was missing or incomplete, or the reasoning behind those assumptions. The actuarial valuation reports themselves contain only hard-coded numbers, making it impossible to understand or test the assumptions and drivers employed in the reports. Ambac requires this additional information in the form of documents and testimony in order to understand the quality, integrity, and accuracy of Milliman's calculations and the data relied on, and the reasonableness of its assumptions.

22. For example, the Milliman actuarial valuation report for ERS, dated as of June 30, 2017, contains the following table showing changes in ERS's net pension liability:

8

**D. Changes in Net Pension Liability**

| Changes in Net Pension Liability | Total Pension Liability (a) | Increase (Decrease) Plan Fiduciary Net Position (b) | Net Pension Liability (a) - (b) |
|---|---|---|---|
| Balances as of June 30, 2016 | $36,432,873,000 | ($1,265,885,000) | $37,698,758,000 |
| Changes for the year: | | | |
| Service cost | 628,025,000 | | 628,025,000 |
| Interest on total pension liability | 1,034,186,000 | | 1,034,186,000 |
| Effect of plan changes | (2,017,468,000) | | (2,017,468,000) |
| Effect of economic/demographic (gains) or losses | (248,414,000) | | (248,414,000) |
| Effect of assumptions changes or inputs | (4,179,110,000) | | (4,179,110,000) |
| Benefit payments | (1,558,266,000) | (1,558,266,000) | 0 |
| Administrative expenses | | (26,142,000) | 26,142,000 |
| Other expenses | | (394,324,000) | 394,324,000 |
| Cost of bonds | | (198,084,000) | 198,084,000 |
| Member contributions | | 320,095,000 | (320,095,000) |
| Net investment income | | 92,188,000 | (92,188,000) |
| Employer contributions | | 921,538,000 | (921,538,000) |
| Balances as of June 30, 2017 | $30,091,826,000 | ($2,108,880,000) | $32,200,706,000 |

*See* Ex. B at PDF pg. 28. The table shows various changes for the year, including a change of $4.2 billion as a result of the "effect of assumptions changes or inputs," a change of $2 billion as a result of the "effect of plan changes," and a change of $248 million as a result of the "effect of economic/demographic (gains) or losses." Despite numerous requests, the Government Parties have not provided the information underlying these figures on the basis that they are not in possession of Milliman's work papers. Ambac, and other creditors, are left guessing about how Milliman arrived at these changes in net pension liability. The 2017 ERS actuarial valuation report and the other actuarial reports contain numerous tables like the one depicted above, each of which remains unsupported by the data produced by AAFAF.

23. In addition to information regarding the assumptions and drivers used by Milliman in calculating the pension liability, there is other relevant information that the Government Parties cannot produce, such as Milliman's internal analyses and communications that informed the valuation. Nor can the Government Parties produce for examination a Milliman representative with knowledge of the analyses who is in a position to explain the various factors and data

9

considered. This information is critical to understanding the basis for Milliman's calculation of the Commonwealth's pension liability. As Milliman is the only party in possession of this information, Ambac must seek it directly from Milliman and should be permitted to do so.[4]

24. Obtaining this discovery now is particularly important, as the Court has given the Board until February 10, 2021 to file a revised plan support agreement or term sheet for a Commonwealth plan of adjustment that it intends to submit for confirmation in the near future. (*See, e.g.*, *Order on Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment*, Oct. 29, 2020 (Dkt. No. 14987).) Without reviewing the data and information considered and understanding what information was actually relied on by Milliman, Ambac cannot assess the accuracy or reasonableness of the $55 billion asserted pension liability.

## CERTIFICATION

25. Pursuant to Paragraph I.H of the *Thirteenth Amended Notice, Case Management and Administrative Procedures* [Dkt. No. 13512], Ambac hereby certifies that it has carefully examined the matter and concluded that there is a true need for an urgent motion; has not created the urgency through any lack of due diligence; and has made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

26. Undersigned counsel hereby certifies that, prior to filing this motion, they notified counsel for Milliman of Ambac's intent to conduct an examination pursuant to Rule 2004 and offered to meet and confer regarding this motion. Undersigned counsel also contacted the Government Parties to request their consent to the serve the third-party subpoena to Milliman and

---

[4] This will be true for any other third parties with information relevant to other Commonwealth analyses of pension liability, including, for instance, Ernst & Young, which prepared the Commonwealth's PROMESA Section 211 Report on the Puerto Rico Retirement Systems, dated September 2019.

10

the Government Parties did not consent.

## NO PRIOR REQUEST FOR RELIEF

27. No prior request for the relief requested herein has been made by Ambac to this or any other court.

## CONCLUSION

28. Ambac respectfully requests permission to issue subpoenas to Milliman directing the production of documents and the examination of witnesses pursuant to Rule 2004 as set forth herein and consistent with the Proposed Order attached hereto as Exhibit A, and that Ambac be granted such other and further relief as is just and proper.

[*Remainder of Page Intentionally Omitted*]

Dated: December 4, 2020
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
        scolon@ferraiuoli.com

**KASOWITZ BENSON TORRES LLC**

By: /s/ *Andrew K. Glenn*
    Andrew K. Glenn
    Olga Lucia Fuentes Skinner
    Marissa E. Miller
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800
    Email: aglenn@kasowitz.com
        ofuentes@kasowitz.com
        memiller@kasowitz.com

*Attorneys for Ambac Assurance Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com