**Exhibit E**

**Milliman Subpoena**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>    Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S NOTICE OF SUBPOENA DUCES TECUM TO MILLIMAN, INC. FOR THE PRODUCTION OF DOCUMENTS OR THINGS**

Please take notice that, pursuant to 48 U.S.C. § 2170, Rules 9014 and 9016 of the Federal Rules of Bankruptcy Procedure, and Rules 26, 34, and 45 of the Federal Rules of Civil Procedure, Ambac Assurance Corporation, by its undersigned attorneys, will serve the enclosed subpoena for documents on Milliman, Inc. on October 15, 2020.

Dated:         October 7, 2020.

**KASOWITZ BENSON TORRES LLC**

By: /s/ *Andrew K. Glenn*
    Andrew K. Glenn
    Olga Lucia Fuentes Skinner
    Marissa E. Miller
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800
    Email: aglenn@kasowitz.com
           ofuentes@kasowitz.com
           memiller@kasowitz.com

    *Attorneys for Ambac Assurance Corporation*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Puerto Rico

| | | |
|---|---|---|
| The Financial Oversight and Management Board for Puerto Rico | ) | PROMESA |
| *as representative of* | ) | Title III |
|  | ) |  |
|  | ) | Civil Action No. 17 BK 3283-LTS |
| The Commonwealth of Puerto Rico, et al., | ) |  |
| *Debtors* | ) | (Jointly Administered) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Milliman, Inc.
1301 5th Avenue, Suite 3800, Seattle, WA, 98101-2635

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Kasowitz Benson Torres LLP<br>1633 Broadway, New York, NY 10019 | Date and Time:<br>November 2, 2020<br>12:00 PM ET |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: October 7, 2020

CLERK OF COURT         OR         *[signature]*

_____                 _____
*Signature of Clerk or Deputy Clerk*             *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Ambac Assurance Corporation , who issues or requests this subpoena, are:

Andrew K. Glenn, Kasowitz Benson Torres LLP, 1633 Broadway, New York, NY 10019 / 212-506-1700 / aglenn@kasowitz.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## SCHEDULE A

Please refer to the following definitions and instructions when responding to this Subpoena Duces Tecum (the "Subpoena"):

## DEFINITIONS

1. "Actuarial Valuation Report(s)" means the ERS Actuarial Valuation Report, JRS Actuarial Valuation Report, and/or the TRS Actuarial Valuation Report (as defined herein), both collectively and individually as separate reports.

2. "Ambac" means Ambac Assurance Corporation.

3. "And" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the Subpoena all responses that might otherwise be construed to be outside of their scope.

4. "Any" or "each" shall be construed to include and encompass "all."

5. "Commonwealth" means the Commonwealth of Puerto Rico and its affiliates, including its executive and legislative branches of government, and each of their present or former representatives, employees, and agents, or any persons acting or purporting to act on their behalf, either individually or collectively.

6. "Communication(s)" means the transmittal of information (in the form of facts, inquiries, ideas or otherwise) between or among any persons, in any medium or form, whether tangible, hard copy, or electronic.

7. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

8. "Date" means the exact day, month, and year, if ascertainable, or, if not, the best approximation thereof.

9. "Document(s)" is used in the broadest sense permitted under the Federal Rules of Civil Procedure and the Local Rules for the District of Puerto Rico, including tangible things, correspondence, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (*e.g.*, email messages), spreadsheets (*e.g.*, files created by Excel), any electronically stored information, recordings (*e.g.*, voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

10. "ERS" means the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and each of its present or former agents, representatives, and employees.

11. "ERS Actuarial Valuation Report" means the report prepared by Milliman for ERS titled "Actuarial Valuation Report" and that presents the results of actuarial valuations of ERS as conducted by Milliman, and any draft(s) thereof.

12. "Including" means including but not limited to.

13. "JRS" means the Judiciary Retirement System of the Commonwealth of Puerto Rico and each of its present or former agents, representatives, and employees.

14. "JRS Actuarial Valuation Report" means the report prepared by Milliman for JRS titled "Actuarial Valuation Report" and that presents the results of actuarial valuations of JRS as conducted by Milliman, and any draft(s) thereof.

15. "Milliman" means Milliman, Inc., the company that provides services in connection with the ERS Actuarial Valuation Report, the TRS Actuarial Valuation Report, and the JRS Actuarial Valuation Report.

16. "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico and each of its present or former board members, agents, representatives, and employees.

17. "Pension Systems" mean ERS, TRS, and JRS, both individually and collectively.

18. The terms "referring to," "relating to," or "regarding," or any combination thereof, shall mean relating to, referring to, reflecting, describing, explaining, evidencing, constituting, concerning, pertaining to, or comprising, and are intended to include any Document or fact that evidences, shows, reflects, refers to, mentions, concerns, pertains to, alludes to, cites, or in any other way relates to the allegations, facts, events, or persons referred to in this Subpoena.

19. "The" shall not be construed as limiting the scope of any request

20. "TRS" means the Puerto Rico Teachers Retirement System and each of its present or former agents, representatives, and employees.

21. "TRS Actuarial Valuation Report" means the report prepared by Milliman for TRS titled "Actuarial Valuation Report" and that presents the results of actuarial valuations of TRS as conducted by Milliman, and any draft(s) thereof.

22. "You" or "Your" or "Milliman" means Milliman, Inc., and any respective divisions, subdivisions, officers, departments, agencies, affiliates, and any current and former employees, consultants, experts, independent contractors, and any person or entity acting or purporting to act on its behalf.

23. The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

24. Terms not specifically defined herein shall be given their ordinary meanings as You understand them to be used in the trade or pursuant to ordinary usage.

**INSTRUCTIONS**

1. This is an exhibit to the Subpoena issued pursuant to the authority of the United States District Court for the District of Puerto Rico requiring You to produce the Documents that are described below.

2. Unless otherwise indicated, the Communications and Documents hereby requested for production and inspection include all Documents in Your possession, custody, or control. Without limitation of the terms "possession, custody, or control" as used in the preceding sentence, a Communication or Document is in Your possession, custody, or control if You have actual possession or custody or the right to obtain the Document or a copy thereof upon demand from one or more of Your employees, representatives, agents, independent contractors, consultants, attorneys, advisors, accountants, auditors, or any other person or public or private entity that has actual physical possession thereof.

   (a) This includes, but is not limited to, Communications and Documents physically held by Your agents, representatives, employees, attorneys, financial advisors, or other advisors. It also includes any Communications and Documents generally within Your possession, custody or control, whether located on-site or at an off-site facility.

3. The scope of Your search for data that is responsive to any request shall include all forms of Electronically Stored Information ("ESI").

4. ESI should be produced in accordance with the following specifications:

   (a) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) or in JPG format for Documents in color. Ambac reserves the right to request color JPG files for any Document that is unreadable or has limited accessibility in the Group IV TIFF format. Productions shall be made on encrypted media (e.g., CD/DVD or portable hard drive) or via a secure FTP site with Opticon image load files (.OPT). TIFF/JPG image naming conventions should be limited to alphanumeric names only, with no spaces, no hyphens, and no special characters in the file name (e.g., ABC00000001.tif). All fielded database information (including extracted metadata from electronic Documents) should be delivered in a standard Concordance load file format (.DAT). Group every 1,000

4

tiff images within incrementally named "IMAGES" directories; do not create a separate folder for each Document.

(b) <u>Document Text</u>. For Documents/records that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate Document-level text files (.txt) named for the beginning Bates number of the associated Document. Provide OCR text for Documents that do not contain searchable text (e.g., non-searchable PDFs, etc.). For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document. Clearly label any redacted material to show the redactions on the tiff image. Group 1,000 Document text files per incrementally named "TEXT" directories, separate from image directories. A comma delimited list file (.LST) should be provided and include the beginning Bates number and the full file path (including volume) information to the extracted text/OCR files.

(c) <u>Native Production For Certain File Types</u>. For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, audio/visual files or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the Bates number on the first page of the corresponding tiff production of the file/Document. A comma delimited list file (.LST) should be provided and include the beginning Bates number and the full file path (including volume) information to the native files. Group native files within incrementally named "NATIVE" directories; separate from images and text directories. Ambac reserves the right to request native files for any Document that is unreadable or has limited accessibility in the Group IV TIFF or JPG format.

(d) <u>Metadata</u>. Produce extracted metadata for each Document/record in the form of a Concordance load file (.dat), including the following fields (where applicable): bates range begin, bates range end, bates family range begin, bates family range end, e-mail subject line, file extension, original file path, file name, e-mail sent date, e-mail sent time, received date, received time, created date, created time, last modified date, last modified time, author, from, to, CC, BCC, custodian, custodian duplicate, source, source folder, MD5 hash value, native file path location, redactions present (yes/no) and confidentiality designation. Custodian, source or source folder field should contain information that can easily identify the location of the Document and, where applicable, the natural person in whose possession it was found.

5. As the term "possession" relates to e-mail, text messages, mobile device chats, and any other electronically stored information, the term includes, but is not limited to, Documents and Communications contained in Your electronic e-mail, cloud-based, and mobile device directories,

including, but not limited to: (a) "deleted" Documents and Communications that have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" Documents and Communications, including all subdirectories irrespective of the title of such subdirectories; and (c) "received" Documents and Communications, including all subdirectories irrespective of the title of such subdirectories.

6.  If any Document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work-product or attorney-client, You shall produce a list specifying each such Document and setting forth the following information:

   i)   the date the Document was created;

   ii)  the number of pages of the Document;

   iii) the name and last known address of each person who prepared or participated in the preparation of the Document;

   iv)  the name and last known address of each addressee or other person to whom the Document, or any part thereof, was sent or to whom the Document or its contents, or any part thereof, was disclosed;

   v)   a summary of the general subject matter of the Document (and such other information as is necessary to identify the Document, such as whether the Document is a letter or memorandum); and

   vi)  a statement of the legal basis upon which the asserted privilege is claimed.

7.  If a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to part of the material contained in a Document, You must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

6

8. With respect to the Documents produced, You shall produce them as they are kept in the usual course of business as defined in Rule 34 of the Federal Rules of Civil Procedure.

9. Selection of Documents from files and other sources, and the numbering of such Documents, shall be performed in such a manner as to ensure that the source of each Document may be determined, if necessary.

10. File folders with tabs, labels, or directories of files identifying Documents must be produced intact with such tabs, labels, or directories and the Documents contained therein.

11. Documents attached to each other shall not be separated.

12. A Document with handwritten, typewritten, or other recorded notes, editing marks, additions, deletions, notations, insertions, corrections, or marginal notes is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

13. Each requested Document shall be produced in its entirety, without abbreviation or redaction, and shall include all attachments, appendices, exhibits, lists, schedules, or other Documents at any time affixed thereto. If a Document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

14. Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.

15. If You object to a request, You must clearly indicate whether any responsive materials are being withheld on the basis of that objection. If You object to only a portion of a request, You must clearly indicate to which part of the request the objection is directed, whether any responsive materials are being withheld on the basis of that objection, and provide all Documents to which objection is not made as if such part or portion of the request were

7

propounded as a separate request. Any ground not stated in an objection within the time provided by Rule 45(d)(2) of the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed to have been waived.

16. If Your response to a particular request is that You lack the ability to comply with that request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any person or entity known or believed by You to have possession, custody, or control of that information, item, or category of information must be identified.

17. If any requested Document or other Document potentially relevant to this action is subject to destruction under any document retention or destruction program, the Document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

18. Unless otherwise specified, the time period covered by these requests is from January 1, 2013 through the present, and shall encompass all Documents and information relating in whole or in part to such period.

19. The requests shall be deemed to be continuing so as to require supplemental productions as You obtain additional Documents between the time of the initial production hereunder and the time of trial in this action.

**DOCUMENT REQUESTS**

1. Documents (including, without limitation, Communications) concerning the pension liability of the Commonwealth's Pension Systems that the Commonwealth is projected to incur from fiscal year 2018 and thereafter, including:

8

(a) Documents (including, without limitation, Communications) concerning the methodology applied by the Pension Systems to determine their unfunded accrued actuarial pension liability, and the reasons for selection of that methodology.

(b) Documents (including, without limitation, Communications) concerning the amount and/or valuation of the Pension Systems' future annual required pay-as-you-go contributions.

(c) Documents (including, without limitation, Communications) concerning the effect of conversion to the pay-as-you-go system on the amount of the Pension Systems' liability for pension obligations.

(d) Documents (including, without limitation, Communications) concerning the methodology applied by the Pension Systems to determine their future annual required pay-as-you-go contributions, and the reasons for selection of that methodology.

2. Documents concerning the Actuarial Valuation Reports (including, without limitation, the forthcoming 2018 Actuarial Valuation Report), including:

(a) Documents considered and supporting the determinations contained therein.

(b) Documents regarding the asset information used in the Actuarial Valuation Reports, including but not limited to 2017 and 2018 unaudited financial statements for ERS, TRS, and JRS.

(c) Documents (including, without limitation, Communications) sufficient to identify the basis and reasons for any projections, conclusions, or opinions contained in the Actuarial Valuation Reports (including, without limitation, the calculation of total pension liability valuations based on basic system benefits and system administered benefits, net fiduciary position of ERS, TRS, and JRS, and the net pension liability of ERS, TRS, and JRS), and the facts and data considered in connection therewith.

(d) Documents (including, without limitation, Communications) concerning the actuarial or other assumptions considered in connection with the Actuarial Valuation Reports, including, without limitation, assumptions concerning investment returns, municipal bond rates, discount rates, compensation increases, and rates of retirement. This request shall include, without limitation, documents concerning changes over time to the actuarial or other assumptions used in the Actuarial Valuation Reports.

3. Documents (including, without limitation, Communications) provided by the Commonwealth (including, without limitation, by the Pension Systems), to You.

9

4. Documents (including, without limitation, Communications between You, the Commonwealth, and/or the Oversight Board and internal Communications) concerning the Oversight Board's decision to utilize $55.6 billion as the Commonwealth's pension obligation amount in the Amended Plan of Adjustment and associated Disclosure Statement filed on February 28, 2020.

5. Documents (including, without limitation, Communications) considered and/or relied upon by You in connection with the Actuarial Valuation Reports, including:

    (a) Documents (including, without limitation, Communications) considered and/or relied upon by You to determine or calculate pension benefit obligations for all Pension Systems' members or their beneficiaries.

    (b) Documents (including, without limitation, Communications) considered and/or relied upon by You to determine or calculate projected pension benefit obligations for all Pension Systems' members or their beneficiaries.

    (c) Documents (including, without limitation, Communications) considered and/or relied upon by You concerning updated contribution and disbursement amounts for the Pension Systems for plan years 2013 to the present.

6. Documents (including, without limitation, Communications) concerning any guidelines, policies, procedures, practices, rules, staff instructions, or standards applicable to the Pension Systems or used by the Pension Systems.

7. Documents (including, without limitation, Communications) concerning the quality and sufficiency of the data provided to You to use in connection with the Actuarial Valuation Reports and how any deficiencies in or limitations of data were taken into account in producing the Actuarial Valuations.

8. Documents (including, without limitation, Communications) concerning the amount and/or valuation of the Pension Systems' invested assets or the Pension Systems' investment strategy for its invested assets, including, without limitation, Documents concerning

10

the Pension Systems' determination, calculation, estimation, or projection of future investment return on assets.

9. Documents sufficient to identify the individuals and entities responsible for (i) contributing to the Actuarial Valuation Reports, (ii) determining and/or valuing the Pension Systems' current and projected pension liabilities, and (iii) determining and/or implementing the Pension Systems' investment strategy for its invested assets.

10. Documents (including, without limitation, Communications) concerning the impact of Hurricanes Irma and María and/or the COVID-19 pandemic on (i) the actuarial assumptions used to value the Pension Systems' unfunded accrued actuarial pension liability, and (ii) the amount and/or valuation of the Pension Systems' future annual required pay-as-you-go contributions.

11. Documents (including, without limitation, Communications) concerning pension payments or claims determined or alleged to be fraudulent or investigated for fraud.