# **EXHIBIT A**



Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

November 16, 2020

Margaret A. Dale
Member of the Firm
d +1.212.969.3315
f 212.969.2900
mdale@proskauer.com
www.proskauer.com

**VIA E-MAIL**
John J. Hughes III, Esq.
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163

Re: **Commonwealth Cash Rule 2004 Requests**

Counsel:

I write (i) in response to your September 29, 2020 letter, Kevin Maggio's October 23, 2020 email, and your November 3, 2020 letter; (ii) to address the parties' recent meet and confer discussions, including the meet and confers held on September 29, 2020 and November 2, 2020; and (iii) in light of the parties' filing of a joint status report on November 5, 2020 [ECF No. 15025] (the "Joint Status Report").

1. ***Categories 1 and 2 (Documents relied upon in connection with certain October 2, 2019 presentations and in connection with Duff & Phelps' and/or Ernst & Young's investigations).***

    ***Exhibit J.*** In the November 3 letter, Ambac asked for a version of Exhibit J to the Amended Disclosure Statement[1] identifying the full account numbers for each of the accounts listed therein. The Oversight Board has considered this request, and agrees to provide a version of Exhibit J that includes the full account numbers. The Oversight Board expects to be able to produce this document by November 20, 2020.

    ***Process Documents.*** On the November 2 meet and confer, the parties discussed Ambac's request for "process" documents. As noted in the Joint Status Report, and notwithstanding the Oversight Board's continued objection to the relevance of this information, the Oversight Board is attaching as Exhibit A hereto information regarding the general nature and scope of the Process Communications.[2]

---

[1] "Amended Disclosure Statement" refers to the *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11947].

[2] "Process Communications," as defined in the Joint Status Report ¶ 13, refers to the communications between and among the Oversight Board and its advisors reflecting the processes, assumptions, and methodologies used to classify accounts in connection with the Duff & Phelps report and the October 2 Presentations.

**Proskauer»**

November 16, 2020
Page 2

***October 30, 2020 Production.*** As the Oversight Board explained on the parties' November 2 meet and confer, this production contained additional factual source materials and raw data underlying the Duff & Phelps Report and October 2 Presentations that were previously withheld, but that the Oversight Board subsequently determined were not privileged. In addition, certain documents in the Oversight Board's October 30, 2020 production initially contained notations applied to the documents by the Oversight Board's advisors. Those notations, which are akin to the Oversight Board's advisors' work papers, were removed prior to production.

***Privilege Log.*** On October 2, the Oversight Board produced a privilege log of documents withheld from its productions of factual source materials and raw data underlying the Duff & Phelps Report and the October 2 Presentations. In response to the October 23 email and the parties' discussions on the November 2 meet and confer, the Oversight Board is simultaneously producing a revised privilege log addressing Ambac's questions.

As for the documents described in the log, these documents are privileged because they contain the legal considerations, impressions and conclusions of the Oversight Board's counsel as they relate to the cash analyses undertaken as part of the Duff & Phelps Report and the October 2 Presentations. They also include attorney-client communications and requests for additional legal analysis to be undertaken by the Oversight Board's counsel. The Oversight Board further provides the following information in response to the questions posed regarding the privilege log in the November 3 letter:

- The first entry on the log is a memorandum summarizing a meeting held to provide counsel for the Oversight Board – O'Neill & Borges – with information to be used in its analysis of any applicable restrictions on the cash in accounts held by the Commonwealth Public Housing Administration. This meeting was held for a legal purpose. *See, e.g.*, *In re Financial Oversight and Management Board for Puerto Rico*, 2019 WL 3566997, at *1 (D.P.R. May 6, 2019) (finding Oversight Board and ERS share common legal interest); *Crane Security Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 16 (D. Mass. 2017); *FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000).

- The second entry on the log is an email chain. The most recent email in the chain is between Ernst & Young ("EY") employees who were participating in the cash analysis project in preparation for creating the October 2 Presentations. The purpose of the top email was to forward the discussion included in the rest of the chain between and among Proskauer, O'Neill & Borges, PJT Partners, and other EY employees. This discussion involved the request for and provision of legal advice by O'Neill & Borges on the structure of several Commonwealth agencies for purposes of evaluating any applicable restrictions on cash in accounts held by those agencies. The Oversight Board is withholding this entire email chain on the basis of such privilege. *See, e.g.*, *In re Financial Oversight and Management Board for Puerto Rico*, 385 F. Supp. 3d 130, 136-37 (D.P.R. 2019) (where "the purpose of the communications is legal . . . the inclusion of necessary third party

**Proskauer»**

November 16, 2020
Page 3

>  advisors does not waive the attorney-client privilege"); *Dipace v. Goord*, 218 F.R.D. 399, 403 (S.D.N.Y. 2003)

***Inventory of Central Government's Bank Accounts.*** On November 12, 2020, pursuant to Ambac's request, the Oversight Board produced the inventory of the central government's bank accounts referenced in the Amended Disclosure Statement. Please note that the Oversight Board did not rely upon this inventory in preparing its cash analyses.

2. **Category 3 (Documents related to the Commonwealth's necessary operating expenses).**

***Interrogatories.*** The September 29 letter, which purports to summarize the parties' discussions during the September 29 meet and confer, does not accurately reflect statements made by counsel to the Oversight Board during that call. The September 29 letter states that the Oversight Board "has not specifically undertaken the burden of determining whether any materials related to the Commonwealth budgets or fiscal plans might qualify as responsive to the Interrogatories, but that the Board has not withheld information regarding any specific materials or analysis that it knows to be responsive to Ambac's Interrogatories." As was explained on the September 29 meet and confer, however, the Oversight Board has not, in connection with the Interrogatories, collected or identified documents or analyses used in the development of the certified Commonwealth budgets or fiscal plans, and has not undertaken to determine whether any other documents or analyses responsive to Ambac's Interrogatory Nos. 1, 2, 3, and 4 may exist.

We remain available should you have further questions regarding these issues.

Sincerely,

*/s/ Margaret A. Dale*

Margaret A. Dale

# **Exhibit A**

***Ambac Cash 2004 Motion* [ECF No. 9023]: The Oversight Board's Response to Request for Information Regarding "Process" Communications**

In response to Ambac's request for "process" communications, the Oversight Board (as defined below) has prepared the summary below identifying the parties involved in communications during certain time frames relating to the preparation of the *IFAT Report on Title III Bank Accounts* prepared by Duff & Phelps (the "Duff & Phelps Report") and the presentations made on October 2, 2019, *Bank Account Analysis: Status Update – June 30, 2019 Balances* and *Mediation: Summary of Cash Restriction Analysis* (collectively, the "October 2 Presentations"). This summary reflects the Oversight Board's good faith, reasonable efforts, as of November 16, 2020, to identify the parties that communicated regarding the Duff & Phelps Report and the October 2 Presentations. The Oversight Board reserves the right to amend or supplement this summary. The Oversight Board does not concede that the information summarized herein is relevant to Ambac's Cash 2004 Motion, or that it falls within the permissible scope of Rule 2004 discovery. This summary also does not constitute a waiver of privilege with respect to any of the communications between the parties listed below.

**Communications regarding Duff & Phelps Report**:

| Time frame | Entities |
|---|---|
| April 2018 – March 2019 | Financial Oversight and Management Board for Puerto Rico ("FOMB") <br><br> Duff & Phelps <br><br> O'Neill & Borges <br><br> Government of the Commonwealth of Puerto Rico and its instrumentalities, as needed to answer specific questions regarding their accounts <br><br> Proskauer |

**Communications regarding October 2 Presentations**:

| Time frame | Entities |
|---|---|
| Late February 2019 – April 2019 | Ernst & Young <br><br> Duff & Phelps |
| April 2019 – October 2019 | FOMB |

| Time frame | Entities |
|---|---|
|  | Ernst & Young (FOMB advisor) |
|  | Proskauer (FOMB advisor) |
|  | O'Neill & Borges (FOMB advisor) |
|  | McKinsey (FOMB advisor) |
|  | PJT Partners (FOMB advisor) |
|  | AAFAF |
|  | Conway Mackenzie (AAFAF advisor) |
|  | Ankura (AAFAF advisor) |
|  | Pietrantoni Méndez & Alvarez (AAFAF advisor) |
|  | O'Melveny & Myers (AAFAF advisor) |
|  | Deloitte (AAFAF advisor) |
|  | Government of the Commonwealth of Puerto Rico and its instrumentalities, as needed to answer specific questions regarding their accounts |
| October 2019 – February 2020 | FOMB |
|  | Ernst & Young (FOMB advisor) |
|  | Proskauer (FOMB advisor) |
|  | O'Neill & Borges (FOMB advisor) |
|  | McKinsey (FOMB advisor) |
|  | Ankura (AAFAF advisor) |
|  | Conway Mackenzie (AAFAF advisor) |
|  | Government of the Commonwealth of Puerto Rico and its instrumentalities, as needed to answer specific questions regarding their accounts |

2