```
 1                     UNITED STATES DISTRICT COURT

 2                     DISTRICT OF PUERTO RICO

 3
       In Re:                    )      Docket No. 3:17-BK-3283(LTS)
 4                               )
                                 )      PROMESA Title III
 5     The Financial Oversight and )
       Management Board for        )
 6     Puerto Rico,              )      (Jointly Administered)
                                 )
 7     as representative of      )
                                 )
 8     The Commonwealth of       )
       Puerto Rico, et al.       )      December 9, 2020
 9                               )
                   Debtors,      )
10
       _____
11
12     In Re:                    )      Docket No. 3:17-BK-4780(LTS)
                                 )
13                               )      PROMESA Title III
       The Financial Oversight and )
14     Management Board for        )
       Puerto Rico,              )      (Jointly Administered)
15                               )
       as representative of      )
16                               )
       Puerto Rico Power         )
17     Authority,                )
                                 )
18                 Debtor,       )
       _____
19
20                        OMNIBUS HEARING

21     BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

22               UNITED STATES DISTRICT COURT JUDGE

23     AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

24               UNITED STATES DISTRICT COURT JUDGE

25     _____
```

```
 1
     APPEARANCES:
 2
     ALL PARTIES APPEARING TELEPHONICALLY
 3
     For The Commonwealth
 4   of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
                              Mr. Brian S. Rosen, PHV
 5                            Mr. Steve Y. Ma, PHV

 6   For Puerto Rico Fiscal
     Agency and Financial
 7   Advisory Authority:      Mr. Luis C. Marini Biaggi, Esq.

 8   For the Official
     Committee of Unsecured
 9   Creditors of all
     Title III Debtors:       Mr. Luc A. Despins, PHV
10

11   For Cobra Acquisitions:  Mr. Abid Qureshi, PHV

12

13

14

15

16

17

18

19

20

21

22

23   Proceedings recorded by stenography.  Transcript produced by
     CAT.
24

25
```

```
 1                          I N D E X

 2   WITNESSES:                                    PAGE

 3          None.

 4

 5   EXHIBITS:

 6          None.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                                      San Juan, Puerto Rico

 2                                      December 9, 2020

 3                                      At or about 9:33 AM

 4                          *     *     *

 5           THE COURT:  Good morning.  This is Judge Swain.

 6           MS. NG:  Good morning, Judge.  It's Lisa.  Everybody

 7   is here.

 8           THE COURT:  Thank you.

 9           Ms. Tacoronte, would you please call the case?

10           COURTROOM DEPUTY:  Yes, Your Honor.

11           The United States District Court for the District of

12   Puerto Rico is now in session.  The Honorable Laura Taylor

13   Swain presiding.  Also present in court, the Honorable Judith

14   Dein.  God save the United States of America and this

15   Honorable Court.

16           Bankruptcy Case No. 17-3283, *In re:  The Financial*

17   *Oversight and Management Board for Puerto Rico as*

18   *representative of the Commonwealth of Puerto Rico, et al.,* for

19   Omnibus Hearing.

20           THE COURT:  Thank you.

21           Buenos dias.  Good morning.  Welcome, counsel,

22   parties in interest, and members of the public and press.

23   Today's telephonic Omnibus Hearing is occurring in what

24   continue to be challenging times for all stakeholders in these

25   Title III proceedings.  We remain in the midst of the
```

1  worldwide COVID-19 pandemic, and our thoughts remain with

2  everyone affected on the island and on the mainland.

3       This is a year of severe challenges, as well as much

4  change.  We continue to hope for progress, health, and safety

5  for all.  As this year draws to a close, we also want to wish

6  everyone a joyous, socially distant holiday season, a happy

7  new year, and bright hopes for what 2021 will bring.

8       To keep today's telephonic hearing orderly, all

9  parties on the line must mute their phones when they are not

10  speaking.  If you are accessing these proceedings on a

11  computer, you must select "mute" on both the Court Solutions

12  dashboard and your phone.  When you wish to speak, you must

13  unmute on both the dashboard and the phone.

14       I remind everyone that consistent with court and

15  judicial conference policies, and the orders that have been

16  issued, no recording or retransmission of the hearing is

17  permitted by any person, including but not limited to the

18  parties, members of the public, or the press.  Violations of

19  this rule may be punished with sanctions.

20       I will call on each speaker during the hearing.  When

21  I do, please identify yourself by name for clarity of the

22  record.  After the speakers listed on the Agenda for each of

23  today's matters have spoken, I may allow other parties in

24  interest to briefly address any issues raised during the

25  presentations that require further comment.  If you wish to be

1    heard in this manner, please state your name clearly at the

2    appropriate time.  Don't just use the wave function on the

3    Court Solutions dashboard.  I will call on the speakers if

4    more than one person wishes to be heard.

5        Please don't interrupt each other or me during the

6    hearing.  Interruptions make it difficult to create an

7    accurate transcript.  But, as always, I apologize in advance

8    for breaking this rule, as I may interrupt when I have

9    questions or if you go beyond your allotted time.  If anyone

10   has difficulty hearing me or another participant, please say

11   something right away.

12       The Amended Agenda, which was filed at Docket Entry

13   No. 15376 in Case No. 17-3283, is available to the public at

14   no cost on Prime Clerk for those interested.  I encourage each

15   speaker to keep track of his or her own time.  The Court will

16   also be keeping track of the time and will alert each speaker

17   when there are two minutes remaining with one buzz, and when

18   time is up, with two buzzes.

19       Here is an example of the buzz sound.

20       (Sound played.)

21       THE COURT:  If your allocation is two minutes or

22   less, you will just hear the final two buzzes.

23       If we need to take a break, I'll direct everyone to

24   disconnect and dial back in at a specified time.  Our timing

25   this morning is from 9:30 AM to 1:00 PM Atlantic Standard

1  Time.  Of course in Eastern Standard Time, it's about 8:39

2  now, so it's 8:30 to noon Eastern Time.

3      The first Agenda item is, as usual, status reports

4  from the Oversight Board and AAFAF.  As I requested in the

5  Procedures Order, these reports have been made in writing in

6  advance of this telephonic hearing and are available on the

7  public docket at Docket Entry Nos. 15382 and 15388 in Case No.

8  17-3283.

9      In addition, PREPA and the Oversight Board have

10 submitted a status report available on the public docket at

11 Docket Entry No. 15308 in Case No. 17-3283, and at Docket

12 Entry No. 2314 in Case No. 17-4780, regarding criminal and

13 administrative proceedings that those government parties

14 contend are material to the resolution of Cobra's

15 administrative expense claim.

16     Our first Agenda item is the status reports.  I thank

17 the Oversight Board and AAFAF for the care and detail

18 reflected in their reports, which I find quite comprehensive.

19 I have a question for the Oversight Board's counsel regarding

20 the claims resolution process, but first I will invite the

21 Oversight Board's counsel to make any general or additional

22 remarks.

23     MR. BIENENSTOCK:  Good morning, Judge Swain.  This is

24 Martin Bienenstock of Proskauer for the Oversight Board.

25     The only additional remark, because it occurred after

1    we filed the status report, is something that I think everyone

2    knows, but just to put it on the record, yesterday President

3    Trump made three additional appointments to the Oversight

4    Board.  So currently we have five members.  We are already in

5    discussions with the mediators as to how this might affect

6    timing of the ongoing sessions and decision-making process,

7    but it is progress.

8            Other than that, I only wanted to, as the Court did,

9    wish the Court, its staff, all creditors and parties in

10   interest, you know, health, happiness over the new year, and

11   we have high hopes for 2021.  Other than that, unless the

12   Court -- I guess the Court's question about the claims

13   process, et cetera, my partner, Brian Rosen, is probably best

14   to respond to it.

15           THE COURT:  Thank you, Mr. Bienenstock.

16           Mr. Rosen, are you there?  Please unmute on both the

17   dashboard and your phone.

18           MR. ROSEN:  Your Honor, this is Brian Rosen.

19           THE COURT:  Good morning, Mr. Rosen.

20           One question on the ADR.  So, according to the

21   report, there have been 222 cases -- or claims designated to

22   that process so far.  Do you expect to make additional

23   designations before the end of the year?

24           MR. ROSEN:  Your Honor, there is -- I'm just making

25   sure I get this right, and I apologize for that.  Our next

 1   notice, Your Honor, I believe is -- well, we sent offers out

 2   on December 7th.  I'm not sure that we will be making any

 3   additional ones this year based upon our analysis so far, Your

 4   Honor.

 5          We are expecting, however, in the interim, to be

 6   responding to letters and them -- and getting responses to us

 7   in the next few weeks.  So that will tell us actually, Your

 8   Honor, how many will -- that we've already submitted into the

 9   ADR process, will ultimately move to the next level of that

10   ADR.  But right now, no --

11          THE COURT:  Thank you.

12          MR. ROSEN:  -- to -- the initial answer to your

13   question.

14          THE COURT:  Thank you.  Yes, that's helpful for our

15   planning purposes.  And good to hear your voice.

16          MR. ROSEN:  Same here, Your Honor.  Happy holidays.

17          THE COURT:  Thank you.  To you as well.

18          So I will turn now to AAFAF.  Mr. Marini, do you have

19   any general or further remarks?

20          MR. MARINI BIAGGI:  Good morning, Your Honor.  Luis

21   Marini of Marini Pietrantoni Muniz for AAFAF.

22          Good morning, Your Honor.  I don't have anything else

23   to add, unless the Court has any questions.

24          THE COURT:  No, I don't have any further questions.

25   Good to hear your voice as well.  Hello, Mr. Marini, and thank

1  you.

2          MR. MARINI BIAGGI:  Likewise, Your Honor.

3          THE COURT:  And so we will now turn to remarks

4  concerning the PREPA report on the Cobra administrative

5  expense claim.  I understand that Cobra's counsel,

6  Mr. Qureshi, wishes to make a comment, and we've allocated two

7  minutes for Mr. Qureshi.

8          MR. QURESHI:  Thank you.  Good morning, Your Honor.

9  For the record, Abid Qureshi, Akin, Gump, Strauss, Hauer &

10  Feld, on behalf of Cobra.

11          Your Honor, I will be very brief and start with just

12  underscoring the lack of progress and really fundamental

13  unfairness as it relates to Cobra, leaving us without

14  effective redress for 216 million dollars of post-petition

15  work that was completed way back in March of 2019.

16          As Your Honor will see from the status report that

17  PREPA has filed, Cobra is not a defendant in the criminal

18  matter, and we have previously briefed why we do not believe

19  that the outcome of that criminal proceeding will have or

20  could have any meaningful effect on our application for

21  administrative expenses.

22          When Your Honor originally stayed this matter back in

23  October of 2019, at the time, the criminal trial was scheduled

24  to proceed on December the 9th of 2019.  So here we are, to

25  the day, a year later from when that criminal trial was

1   expected to proceed, and we still do not have a trial date.

2            Your Honor, with respect to the ongoing FEMA review,

3   I just wish to remind the Court that the August 2020

4   completion date for that review has now come and gone, with,

5   once again, no deadline or real insight into when that will be

6   completed.  But, Your Honor, this is FEMA's third review for

7   reasonableness.  Both the first review by FEMA and the second

8   review by Rand found that Cobra's rates were reasonable.

9            What FEMA does ultimately conclude, however, will not

10  affect PREPA's liability for the expenses that have been

11  incurred, nor the reasonableness of those expenses.  That is

12  governed by the contract between Cobra and PREPA.  As the --

13  as PREPA notes in the status report, Your Honor, they needed

14  Cobra's assistance to respond to the most recent request by

15  FEMA.  And Cobra is cooperating.

16            (Sound played.)

17            MR. QURESHI:  Yet at every turn, Your Honor, PREPA

18  seeks to delay.

19            So in conclusion, Your Honor, we continue to believe

20  that the imposition of the stay is fundamentally unfair.  We

21  anticipate returning to this Court in January, once again to

22  seek the stay to be lifted, so that we can proceed with our

23  application and our motion for administrative expenses.

24            Thank you, Your Honor.  I'm happy to take any

25  questions.

12

1          THE COURT:  I think you've been quite direct and

2    comprehensive in your remarks.  And given the -- well,

3    actually, I will first hear -- I think that Ms. Waxman wishes

4    to respond, and so I will turn to Ms. Waxman in the first

5    instance.  Thank you, Mr. Qureshi.

6          Ms. Waxman.

7          MS. WAXMAN:  Good morning, Your Honor.

8          THE COURT:  Good morning.

9          MS. WAXMAN:  Hadassa Waxman for the Oversight Board

10   and government parties.

11         Your Honor, as we set forth in our papers, the Board

12   and the government parties' position remains unchanged as to

13   the stay.  Given the pendency of the criminal proceedings, the

14   stay should remain in place.

15         As we've set forth in our papers, a finding of Cobra

16   -- that Cobra CEO acted fraudulently with respect to the

17   contracts with FEMA and PREPA may invalidate some or all of

18   PREPA's obligations under the terms of the contracts at issue.

19   So a resolution of the criminal case is really a gating

20   question as to the resolution of Cobra's claims.

21         Second, Your Honor, discovery will be necessary in

22   this case, and that will be severely impacted, unless the

23   criminal case is resolved.  As Your Honor can imagine, there

24   will be depositions and documents that will need to be

25   produced, and potential witnesses could very well assert Fifth

1    Amendment rights.  So discovery in this case will not be

2    meaningful.

3          For those reasons, again, Your Honor, it's the

4    Board's position and the government parties' position that the

5    stay should remain in place.  Thank you, Your Honor.

6          THE COURT:  Thank you, Ms. Waxman.

7          In view of the statement by Ms. Waxman, and taking

8    into account our prior discussions, and the Court's

9    consideration of the prior applications, and the Court's

10   rulings in that regard over the past year, the Court will

11   require a further status report from the Oversight Board and

12   PREPA on June 6th of 2021.

13         And while I cannot stop you from queuing up the

14   motion again for January, it is my intention to await the June

15   report, unless something happens with respect to the trial or

16   FEMA, and there remains the structure of PROMESA as to the

17   treatment of administrative claims.  And so for that bundle of

18   reasons, I think it is most efficient and appropriate,

19   although understandably painful to Cobra and frustrating to

20   Cobra, that we await events in the first half of the year and

21   a status report by June 6th, 2021, from the government

22   parties.

23         Thank you both, Mr. Qureshi and Ms. Waxman.

24         Let's see.  Is there anyone who wished to make any

25   further comments or who has questions regarding the status

1    reports?  I will wait 30 seconds for any such person to speak

2    their name, and then I will call on the people who've

3    identified themselves, if any.

4            So if you want to be heard, unmute on the dashboard

5    and your phone, and state your name.

6            (No response.)

7            THE COURT:  Thank you.

8            We'll now go on to the contested matters.  The first

9    contested matter, which is Item II.1 on the Agenda, is the

10   Commonwealth's Motion for Approval of the Assumption of

11   Settlement Agreements with the Garcia-Rubiera Class

12   Plaintiffs, Docket Entry No. 15171 in Case No. 17-3283.

13           We have a total of 20 minutes allocated for argument.

14   And speaking first on behalf of the Commonwealth will be

15   Mr. Ma.

16           Mr. Ma.

17           MR. MA:  Good morning, Your Honor.

18           THE COURT:  Good morning.

19           MR. MA:  For the record, Steve Ma of Proskauer Rose

20   for the Oversight Board, as representative of the

21   Commonwealth, as the Title III debtor.

22           The relief we seek is an order approving assumption

23   of two pre-petition settlement agreements.  And in the

24   alternative, we seek an order simply approving the

25   Commonwealth's payment of claims under its settlement

1  agreements.  And the Oversight Board consents to the entry of

2  such order under PROMESA Section 305.

3         The entire reason for the assumption motion is that

4  the debtor and the *Gracia-Gracia* plaintiffs entered into a

5  stipulation to resolve the Lift Stay Motion filed by

6  plaintiffs.  And as far as that stipulation, the plaintiffs

7  wanted some order to rely on that would provide the

8  Commonwealth -- that the Commonwealth would carry out the

9  settlement agreements.  And it seems appropriate to assume the

10  settlement agreements in this instance, but if the Court

11  determines that the settlement agreements are not executory,

12  the parties are satisfied with lesser relief simply confirming

13  that the Commonwealth may make the payments pursuant to the

14  settlement agreement.

15         And the Commonwealth has requested this alternative

16  relief seeking such other and further relief, as the Court may

17  deem appropriate, in its assumption motion.  And we've

18  confirmed with the plaintiffs' counsel that such an

19  alternative relief is satisfactory.

20         THE COURT:  And what would be --

21         MR. MA:  However --

22         THE COURT:  -- the particular legal foundation for my

23  issuing a general order stating that you can do -- you can

24  make a payment that PROMESA apparently allows you to do,

25  whether I approve of it or not?

1              MR. MA:  I think, Your Honor, the Court can do so

2    under -- as -- its own under Rule 9019, and pursuant to its

3    general authority, under, oh, 105.  Alternatively, the Court

4    could simply authorize lifting of the automatic stay for those

5    payments to be made.

6              THE COURT:  Thank you.  You can go on.

7              MR. MA:  Sure.

8              So the Oversight Board -- I believe that the

9    settlement agreements, nonetheless, are executory contracts.

10   And I'd like to begin with the issue the Court directed the

11   parties to address, and that is the application of the

12   Countryman test versus the functional approach.

13             The Oversight Board has not been able to find any

14   binding authority requiring the Court to apply the Countryman

15   test, and argues that this Court may and should, in this

16   instance, apply the functional approach.  In particular, the

17   U.S. Supreme Court in *NLRB v. Bildisco & Bildisco* -- the

18   citation for that is 465 U.S. 513 (1984).  The Supreme Court

19   noted in that case that an executory contract is, "one which

20   performance remains due to some extent on both sides."  And of

21   significance is that the Supreme Court did not mention

22   materiality, but rather, quote, to some extent.

23             Furthermore, the legislative history shows that

24   Congress intended a flexible approach in applying Section 365.

25   Senate Report No. 95-989 notes that, while there isn't a

1    precise definition of executory contract, quote, it generally

2    includes contracts on which performance remains due to some

3    extent on both sides.  So I note that the use of "generally

4    includes" suggests that contracts with outstanding obligations

5    on both sides do not comprise the entire universe of executory

6    contracts.

7          And the First Circuit seems to have endorsed the

8    application of either the Countryman or functional approach in

9    *In re: La Electronica, Inc.*, 995 F.2d 320 (1st Cir. 1993).

10         Similarly, the District Court for the District of

11   Massachusetts also explained that, quote, courts in this

12   circuit apply both tests, often in tandem, and the First

13   Circuit has endorsed this approach.  And that case was *Stevens

14   v. CSA, Inc.*, 271 B.R. 410 (D. Mass. 2001).

15         Similarly, the Bankruptcy Court in the District of

16   Puerto Rico noted the same in *In re: Redondo Construction

17   Corp.,* 2019, Bankruptcy -- Lexus 1162, Bankruptcy Court for

18   the District of Puerto Rico, April 8th, 2019.

19         So my point is that the First Circuit does not

20   require application of the Countryman test.  And, in fact, the

21   Supreme Court and Congress have indicated that Section 365

22   permits a flexible approach to determining what is an

23   executory contract.

24         So here it is appropriate for the Court to apply the

25   Countryman approach to determine --

1          (Sound played.)

2          MR. MA:  -- whether the settlement agreements are

3    executory contracts.  Under the functional approach, the Court

4    works backwards, proceeding from an examination of the goals

5    of -- assumption or rejection is expected to accomplish.  And

6    in the 11th Circuit, which has adopted both the Countryman

7    test and functional approach, courts apply the functional

8    approach where assumption or rejection of a contract would

9    benefit the estate.

10          And that case was *In re: General Development Corp.*,

11   84 F.3d 1364 (11th Cir. 1996).

12          Similarly, the Sixth Circuit has done so in I*n re:*

13   *Jolly*, 574 F.2d 349 (6th Cir. 1978).

14          Notably here, applying the functional approach rather

15   than the Countryman test is appropriate because analysis of

16   material outstanding obligation under those Countryman tests

17   adds nothing to the case and doesn't affect the outcome.  If

18   the settlement agreements are assumed, plaintiffs are paid in

19   full.  However, if the settlement agreements are not

20   executory, but plaintiffs prevail under the stay motion, they

21   are again paid in full.  While if the Commonwealth prevails

22   under the stay motion, the plaintiffs are again paid in full

23   under a plan of adjustment.

24          And this result is one of the criticisms of the

25   Countryman test that the Bankruptcy Court for the Southern

1   District of New York explained in *Cohen v. Drexel Burnham*

2   *Lambert Group*, 138 B.R. 687 (Bankr. S.D.N.Y. 1992).

3         So here the settlement agreements are executory

4   contracts under a functional approach, and there's a long

5   history of litigation that assumption of the settlement

6   agreements would resolve.  Assumption would also provide

7   finality with respect to the issues of plaintiffs' property

8   interest in the insurance fund held by the Commonwealth, which

9   the First Circuit had ordered in its 2013 decision that the

10  funds would not escheat --

11        (Sound played.)

12        MR. MA:  -- until the Commonwealth had satisfied

13  conditions under the --

14        COURT REPORTER:  Counsel, can you -- Your Honor, this

15  is the court reporter.  Can counsel please repeat his last

16  sentence?  The buzzer sounded while he was speaking.

17        THE COURT:  Thank you.

18        Mr. Ma, would you repeat your last sentence --

19        MR. MA:  Yes.

20        THE COURT:  -- and wind up, because your time has run

21  out.

22        MR. MA:  Yes.  Assumption would provide finality with

23  respect to the issues of plaintiffs' property interest in the

24  insurance fund held by the Commonwealth, noting that the First

25  Circuit had ordered in its 2013 decision that no funds would

1    escheat until the Commonwealth had satisfied its obligations

2    under the Due Process Clause.

3              And I'll end there, Your Honor.

4              THE COURT:  Thank you very much, Mr. Ma.

5              And now we have Mr. Despins for ten minutes.

6    Mr. Despins, are you there?

7              MR. DESPINS:  Yes.  Good morning, Your Honor.  I

8    apologize.

9              THE COURT:  Good morning.

10             MR. DESPINS:  So, briefly, Your Honor, I just want to

11   address one point that was made at the outset about the fact

12   that the motion sought alternative relief to pay the funds

13   other than through an assumption of the settlement agreement.

14   We didn't see that.  So I think we -- I don't see the basis

15   for that.  But, in any event, that would be an advisory

16   opinion.

17             If it's a 9019 settlement, you know, what's the

18   settlement?  They're getting paid in full.  So if there's

19   uncertainty about whether they have trust funds or not, that's

20   not a settlement.  They're just granting the relief.  So it

21   could not be approved under 9019.

22             But let me address the crux of the issue first, to

23   say that we understand, Your Honor, this is a horrible

24   situation.  The underlying facts are horrible in terms of

25   people being deprived of, you know, payment on their claims.

1   But, you know, there are hundreds, thousands of other people

2   that have equally horrible facts, and they are being offered

3   less than one percent recovery.  There are hundreds of

4   millions of people with judgments, settlements, and similar

5   claims that are projected, according to the Oversight Board,

6   to get less than one percent.

7          It's also important, Your Honor, to understand the

8   litigation has been settled.  They -- under Puerto Rico law,

9   they cannot go back and say, oh, I didn't get paid, therefore,

10  I'm going to relitigate the underlying claim.  The only thing

11  they can do is pursue the payment of the settled amount.  And

12  that's key here.  They have no ability to walk --

13         THE COURT:  But Mr. Despins --

14         MR. DESPINS:  Yes, Your Honor.

15         THE COURT:  -- they do still have the ability to

16  press the trust theory or an ownership theory.  In your

17  papers, you assert that it's clear they have nothing but an

18  unsecured claim, but the First Circuit remanded specifically

19  for a tracing exercise, or a 362(d)(2) motion asserting that

20  the Commonwealth has no equity in these funds.  And that

21  controversy is clearly material to the premise of the argument

22  that you are making that these are merely unsecured claims,

23  like other unsecured claims.

24         So the Puerto Rico law principle that you've

25  articulated, of a judgment being merely a right to collect on

1  an unsecured claim, does not seem to be consistent with the

2  law of the case here.

3       MR. DESPINS:  Well, I was talking about the

4  underlying claims.  Now we're talking the treatment of the

5  claim.  And it's true that the First Circuit remanded to Your

6  Honor for that determination.  However -- and that's the crux

7  of the argument here.  The Board has always taken the position

8  that they have no such trust fund claim.  And I'll stipulate

9  that there's uncertainty on that issue, but what they're doing

10  is actually conceding the point.

11       This is another one -- it's like the GO priority

12  issue.  They're just conceding the point.  Therefore, it's not

13  a settlement.  There's no benefit to the estate to assume a

14  contract based on the risk when they're actually paying in

15  full.  So the risk argument does not -- does not really work

16  here.

17       And in terms of the First Circuit and the functional

18  approach, I'll concede at first blush, because Your Honor

19  asked us to submit supplemental papers on this, that the First

20  Circuit has not issued a decision saying, thou shall not use

21  the functional approach.  Okay.  But we hear that.  However,

22  in the cases in the First Circuit, like the *Gallivan* case that

23  is cited, cited with approval; the *Columbia Gas* case, which

24  the debtors don't address at all, which is on all fours with

25  this claim -- with this case in terms of the analysis of

1    executory or not.

2          The point here, as I said, is that there's payment in

3    full.  And, therefore, there cannot be a risk that's being

4    settled.  Even if you look, Your Honor, at the cases, assuming

5    for a second that a functional approach could be used by the

6    Court, if you look at the cases that apply the functional

7    approach, such as *WorldCom*, at page 497, in that case, Judge

8    Gonzalez distinguished this type of case with the case he was

9    dealing with based on what could happen in the *WorldCom* case,

10   which makes -- so what that tells you is that just saying that

11   the functional approach works does not resolve the issue.

12          Just to give you an example, there's a case,

13   Bankruptcy Court decision, *Structurlite Plastics*, 86 B.R. 922,

14   where in that case there was a medical claims trust fund.  The

15   debtor moved to assume that, and the Court said, no, you can't

16   assume that.  First of all, it's not executory.  But even if

17   the functional approach did apply, and you're telling me that

18   this is very important to maintain employee morale, et cetera,

19   et cetera, and that there could be a strike if the medical

20   claims are not paid in full, that does not satisfy even the

21   functional approach, because of the detriment to the other

22   creditors.

23          So the point is, even on the functional approach, the

24   Court is looking at -- or the Court should look at the impact

25   on other creditors who are getting pennies on the dollar.  In

1  our case, less than a penny.

2        And we believe, by the way, that our submissions on

3  December 16th, Your Honor, with your permission, should not

4  only address what the First Circuit has said in -- cases

5  in the First Circuit have said about the functional approach,

6  but also what is the -- if the functional approach applies,

7  what result does that bring.  And that, Your Honor, we submit

8  would show that, even in the functional approach, that the

9  Court should not approve this motion.

10        THE COURT:  But let me just respond to you --

11        MR. DESPINS:  Yes, Your Honor.

12        THE COURT:  -- and state generally that the

13  submissions, to the extent either side is arguing for or

14  against the functional approach, or any other different

15  approach, should include the positions as to the result of

16  application of the alternative approach.

17        MR. DESPINS:  Thank you, Your Honor.  And also, I

18  would end by saying that we strongly dispute that all outcomes

19  lead to payment in full.  There -- it may be that if a plan is

20  confirmed that has a convenience class that is high enough to

21  pay the individual folks, they will get paid in full.  And by

22  the way, we wouldn't oppose that.  But also, their counsel

23  fees would be way above the convenience class, and, therefore,

24  not all roads lead to payment in full.  So that's --

25        THE COURT:  Well, the settlement -- I'm sorry.

1   Mr. Despins.

2            MR. DESPINS:  Yes, Your Honor.

3            THE COURT:  The settlement is structured to treat the

4   payments to counsel as holdbacks from the -- an accumulation

5   of holdbacks from the amounts paid to the particular

6   claimholders.  And so if the particular claimholder is payable

7   a hundred percent in the gross amount under the convenience

8   class, then why would there be a separate convenience class

9   filter for that accumulated amount that's being paid or

10  advanced to counsel?

11           MR. DESPINS:  Your Honor, I have to admit that I need

12  to look at that feature --

13           (Sound played.)

14           MR. DESPINS:  -- because I don't -- okay.  I'm not

15  sure that counsel will not be paid directly their claims under

16  a plan.  So -- and they actually get, under the settlement,

17  hundreds of thousands of dollars in advances.  So I don't

18  think that would qualify under the convenience class.  It may

19  be that they described it as such, but I don't think that's

20  the way it actually plays out in terms of the actual payments,

21  Your Honor.

22           THE COURT:  Thank you.

23           MR. DESPINS:  Thank you, Your Honor.

24           THE COURT:  Thank you, Mr. Despins.

25           Mr. Ma, you've allotted three minutes for rebuttal.

1        MR. MA:  This is again addressing -- I'd first like

2   to address the point on alternative relief, which the

3   Oversight Board had requested in its motion on page 11

4   seeking, such other and further relief as the Court may deem

5   proper.  On the point about the advisory ruling, approval of

6   the payments are not an advisory ruling in the alternative

7   order.  It's approval of the settlement of the stay litigation

8   pending in this Title III court.

9        On the point about the property interest, even if the

10  Board is conceding that, the property interest issue, there is

11  no purpose served by litigating the issue with plaintiffs

12  since they would be paid in full as a convenience class claim.

13  And these are all small claims.  The vehicle reimbursements

14  are either 99 dollars or 148 dollars per vehicle, per year.

15  So these would likely fall under any threshold as a

16  convenience class claim.

17        (Sound played.)

18        MR. MA:  And at the core, these -- the plaintiffs'

19  claims are not the same as the claims represented by the

20  Unsecured Creditors Committee, because the plaintiffs are

21  asserting trust interests in the funds held.  And notably, the

22  Commonwealth has segregated funds for accounting purposes, as

23  we've noted in prior -- our prior papers on the Lift Stay

24  Motion, so resolving the issues regarding the property

25  interest by assuming the settlement agreements would allow the

1    release of these funds so that the Commonwealth can use them.

2         And, furthermore, there is no detriment to other

3    creditors, because the plaintiffs would get the same treat --

4    all the same treatment as convenience class claims.  And on

5    the counsels' claims, as the Court noted, these are paid out

6    of a 20 percent holdback of all the claims paid, which is a

7    feature in the Commonwealth Court settlement agreement.  And

8    we view this as merely an allocation of proceeds, not a

9    separate claim of plaintiffs' counsel.  It's all in there,

10   Your Honor.

11        THE COURT:  Thank you, Mr. Ma, and thank you,

12   Mr. Despins.  I will reserve decision pending the supplemental

13   submissions next week, and I thank you for being responsive to

14   my questions here.  This was very helpful to me.

15        The final Agenda item is the motion for relief from

16   stay of -- I'm sorry.  I am just fiddling around with my

17   papers here and seem to have lost track of one paper, but I'm

18   sure that I will find it in a moment.

19        Anyway, the second contested matter is Mr. Luis

20   Duprey-Rivera's Motion for Relief from the Automatic Stay, for

21   which we have allocated a total of ten minutes of argument:

22   Three minutes for the movant, five minutes for response by

23   AAFAF, and then a two-minute rebuttal for the movant.

24        This is Docket Entry No. 15186 in Case No. 17-3283.

25   So I would invite Mr. Luis Rodriguez Munoz to begin as counsel

1   for the movant.  You'll need to unmute both your phone and the

2   computer interface.

3           Ms. Ng, is Mr. Rodriguez Munoz on the line?

4           MS. NG:  Judge, hold on.

5           No.  I don't see him on the line.

6           THE COURT:  Is Mr. Marini on the line?

7           MR. MARINI BIAGGI:  Good morning, Your Honor.  Luis

8   Marini.  I am on the line, Your Honor.

9           THE COURT:  Good morning.  Have you had any

10  communication with Mr. Rodriguez Munoz?

11          MR. MARINI BIAGGI:  Yes, Your Honor.  We sent to

12  Mr. Rodriguez the order to register in Court Solutions last

13  week.  And I understand he called my office.  My assistant

14  just gave me a message about five minutes ago that he may be

15  having trouble connecting.  I did not speak with him, but I

16  did get that message a few minutes ago.

17          THE COURT:  Did your office try to help him with

18  connecting instructions?  I'm just wondering whether we should

19  be waiting.

20          MR. MARINI BIAGGI:  Yes, we did.  We sent him the

21  instructions last week and directed him again today.  I don't

22  know if he's going to connect, Your Honor.  He just left that

23  message that he was having trouble.

24          THE COURT:  Alright.  And how long ago was that?

25          MR. MARINI BIAGGI:  Maybe five or ten minutes ago.

 1          THE COURT:  Are you in a position to ask whoever in

 2   your office was in communication with him to reach out to him

 3   again and ask whether he does wish to connect and make his

 4   argument?

 5          MR. MARINI BIAGGI:  Yes.  I'll check right now his

 6   number, and I'll do that.

 7          THE COURT:  Thank you.  And we'll all just wait.

 8          MR. MARINI BIAGGI:  Good morning, Your Honor.  Luis

 9   Marini.  Your Honor, I -- can you hear me okay?

10          THE COURT:  Yes, I can.  Thank you.

11          MR. MARINI BIAGGI:  Your Honor, I've reached counsel

12   for movant directly just now and was able to speak with him.

13   He did register.  He's having trouble logging in.  He asked me

14   to request whether this can be moved to the January Omnibus.

15          We don't have any objection.  So I'll leave it up to

16   you, Your Honor.

17          THE COURT:  Very well.  The adjournment request is

18   granted.  And that adjournment request is understood as and

19   deemed to be a waiver of the 362(e) time limit for

20   determinations of the Motion for Relief from the Automatic

21   Stay.  So we will put this on the Agenda for the January Omni.

22          And thank you, Mr. Marini, for reaching out and

23   speaking with Mr. Rodriguez.

24          MR. MARINI BIAGGI:  Sure, Your Honor.  Thank you.

25          THE COURT:  And so this concludes the set Agenda for

1  this Omnibus Hearing.  Is there anyone who believes that

2  another matter should be addressed today?  I will again wait

3  30 seconds for anyone to state their name if they wish to be

4  heard before we adjourn.

5          (No response.)

6          THE COURT:  The 30 seconds are up.

7          The next scheduled hearing is on January 12th, 2020.

8  That hearing will begin at 9:30 AM Atlantic Standard Time, and

9  it will occur telephonically as well.  The Court will issue a

10 procedures order providing appropriate logistical details.

11         As always, I thank the court staff in Puerto Rico,

12 Boston and New York for their work in preparing for and

13 conducting today's hearing, and for their outstanding ongoing

14 support of the administration of these cases, especially in

15 these challenging times.

16         Stay safe, keep well, and good holidays, everyone.

17 We are adjourned.

18         (At 10:19 AM, proceedings concluded.)

19                    *    *    *

20

21

22

23

24

25

```
 1  U.S. DISTRICT COURT    )

 2  DISTRICT OF PUERTO RICO)

 3

 4      I certify that this transcript consisting of 31 pages is

 5  a true and accurate transcription to the best of my ability of

 6  the proceedings in this case before the Honorable United

 7  States District Court Judge Laura Taylor Swain, and the

 8  Honorable United States Magistrate Judge Judith Gail Dein on

 9  December 9, 2020.

10

11

12

13  S/ Amy Walker

14  Amy Walker, CSR 3799

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```

< Dates >
April 8th, 2019
    17:18
August 2020 11:3
December 16th 24:3
December 7th 9:2
December 9, 2020
    1:16, 4:2, 31:9
June 6th 13:12
June 6th, 2021 13:21
"one 16:19


< 1 >
105. 16:3
10:19 30:18
11 26:3
1162 17:17
11th 18:6, 18:11
12th 30:7
1364 18:11
138 19:2
148 26:14
15171 14:12
15186 27:24
15308 7:11
15376 6:13
15382 7:7
15388 7:7
17-3283 4:16, 6:13,
    7:11
17-3283. 7:8, 14:12,
    27:24
17-4780 7:12
17-BK-3283(LTS 1:6
17-BK-4780(LTS 1:23
1978). 18:13
1984 16:18
1992). 19:2
1993). 17:9
1996). 18:11
1:00 6:25
1st 17:9


< 2 >
20 14:13, 27:6
2001). 17:14
2013 19:9, 19:25
2019 10:23, 17:17

2019. 10:15, 10:24
2020. 30:7
2021 5:7
2021. 8:11, 13:12
216 10:14
222 8:21
2314 7:12
271 17:14


< 3 >
30 14:1, 30:3, 30:6
305. 15:2
31 31:4
320 17:9
349 18:13
362(d)(2 21:19
362(e 29:19
365 17:21
365. 16:24
3799 31:14
3: 1:6, 1:23


< 4 >
410 17:14
465 16:18
497 23:7


< 5 >
513 16:18
574 18:13


< 6 >
687 19:2
6th 18:13


< 8 >
84 18:11
86 23:13
8:30 7:2
8:39 7:1


< 9 >
9019 16:2, 20:17
9019. 20:21

922 23:13
95-989 16:25
99 26:14
995 17:9
9:30 6:25, 30:8
9:33 4:3
9th 10:24


< A >
A. 2:18
AAFAF 7:4, 7:17,
    9:18, 9:21, 27:23
Abid 2:21, 10:9
ability 21:12,
    21:15, 31:5
able 16:13, 29:12
above 24:23
accessing 5:10
accomplish 18:5
according 8:20, 21:5
account 13:8
accounting 26:22
accumulated 25:9
accumulation 25:4
accurate 6:7, 31:5
Acquisitions 2:21
acted 12:16
actual 25:20
actually 9:7, 12:3,
    22:10, 22:14,
    25:16, 25:20
add 9:23
addition 7:9
additional 7:21,
    7:25, 8:3, 8:22,
    9:3
address 5:24, 16:11,
    20:11, 20:22,
    22:24, 24:4, 26:2
addressed 30:2
addressing 26:1
adds 18:17
adjourn 30:4
adjourned 30:17
adjournment 29:17,
    29:18
adjustment 18:23
Administered 1:11,
    1:28

administration 30:14
administrative 7:13,
   7:15, 10:4, 10:21,
   11:23, 13:17
admit 25:11
adopted 18:6
ADR 8:20, 9:9, 9:10
advance 6:7, 7:6
advanced 25:10
advances 25:17
Advisory 2:13,
   20:15, 26:5, 26:6
affect 8:5, 11:10,
   18:17
affected 5:2
Agency 2:12
Agenda 5:22, 6:12,
   7:3, 7:16, 14:9,
   27:15, 29:21,
   29:25
ago 28:14, 28:16,
   28:24, 28:25
agreement 15:14,
   20:13, 27:7
Agreements 14:11,
   14:23, 15:1, 15:9,
   15:10, 15:11,
   16:9, 18:2, 18:18,
   18:19, 19:3, 19:6,
   26:25
Akin 10:9
al 1:16, 2:7, 4:18
alert 6:16
allocated 10:6,
   14:13, 27:21
allocation 6:21,
   27:8
allotted 6:9, 25:25
allow 5:23, 26:25
allows 15:24
already 8:4, 9:8
Alright 28:24
alternative 14:24,
   15:15, 15:19,
   20:12, 24:16,
   26:2, 26:6
Alternatively 16:3
although 13:19
Amended 6:12
Amendment 13:1

America 4:14
amount 21:11, 25:7,
   25:9
amounts 25:5
Amy 31:13, 31:14
analysis 9:3, 18:15,
   22:25
answer 9:12
anticipate 11:21
Anyway 27:19
apologize 6:7, 8:25,
   20:8
apparently 15:24
APPEARANCES 2:2
APPEARING 2:4
application 10:20,
   11:23, 16:11,
   17:8, 17:20, 24:16
applications 13:9
applies 24:6
apply 16:14, 16:16,
   17:12, 17:24,
   18:7, 23:6, 23:17
applying 16:24,
   18:14
appointments 8:3
approach 16:12,
   16:16, 16:24,
   17:8, 17:13,
   17:22, 17:25,
   18:3, 18:7, 18:8,
   18:14, 19:4,
   22:18, 22:21,
   23:5, 23:7, 23:11,
   23:17, 23:21,
   23:23, 24:5, 24:6,
   24:8, 24:14,
   24:15, 24:16
appropriate 6:2,
   13:18, 15:9,
   15:17, 17:24,
   18:15, 30:10
Approval 14:10,
   22:23, 26:5, 26:7
approve 15:25, 24:9
approved 20:21
approving 14:22,
   14:24
argues 16:15
arguing 24:13

argument 14:13,
   21:21, 22:7,
   22:15, 27:21, 29:4
around 27:16
articulated 21:25
assert 12:25, 21:17
asserting 21:19,
   26:21
assistance 11:14
assistant 28:13
assume 15:9, 22:13,
   23:15, 23:16
assumed 18:18
assuming 23:4, 26:25
Assumption 14:10,
   14:22, 15:3,
   15:17, 18:5, 18:8,
   19:5, 19:6, 19:22,
   20:13
Atlantic 6:25, 30:8
Authority 1:33,
   2:13, 16:3, 16:14
authorize 16:4
Automatic 16:4,
   27:20, 29:20
available 6:13, 7:6,
   7:10
await 13:14, 13:20
away 6:11


< B >
back 6:24, 10:15,
   10:22, 21:9
backwards 18:4
Bankr 19:2
Bankruptcy 4:16,
   17:15, 17:17,
   18:25, 23:13
based 9:3, 22:14,
   23:9
basis 20:14
begin 16:10, 27:25,
   30:8
behalf 10:10, 14:14
believe 9:1, 10:18,
   11:19, 16:8, 24:2
believes 30:1
benefit 18:9, 22:13
best 8:13, 31:5

beyond 6:9
BIAGGI 2:13, 9:20,
   10:2, 28:7, 28:11,
   28:20, 28:25,
   29:5, 29:8, 29:11,
   29:24
Bienenstock 2:7,
   7:23, 7:24, 8:15
Bildisco 16:17
binding 16:14
blush 22:18
Board 1:10, 1:27,
   4:17, 7:4, 7:9,
   7:17, 7:19, 7:21,
   7:24, 8:4, 12:9,
   12:11, 13:4,
   13:11, 14:20,
   15:1, 16:8, 16:13,
   21:5, 22:7, 26:3,
   26:10
Boston 30:12
break 6:23
breaking 6:8
Brian 2:8, 8:13,
   8:18
brief 10:11
briefed 10:18
briefly 5:24, 20:10
bright 5:7
bring 5:7, 24:7
Buenos 4:21
bundle 13:17
Burnham 19:1
buzz 6:17, 6:19
buzzer 19:16
buzzes 6:18, 6:22


< C >
C. 2:13
call 4:9, 5:20, 6:3,
   14:2
called 28:13
care 7:17
carry 15:8
Case 4:9, 4:16,
   6:13, 7:7, 7:11,
   7:12, 12:19,
   12:22, 12:23,
   13:1, 14:12,

16:19, 17:13,
   18:10, 18:17,
   22:2, 22:22,
   22:23, 22:25,
   23:7, 23:8, 23:9,
   23:12, 23:14,
   24:1, 27:24, 31:6
cases 8:21, 22:22,
   23:4, 23:6, 24:4,
   30:14
CAT 2:46
CEO 12:16
certify 31:4
cetera 8:13, 23:18,
   23:19
challenges 5:3
challenging 4:24,
   30:15
change 5:4
check 29:5
Cir 17:9, 18:11,
   18:13
Circuit 17:7, 17:12,
   17:13, 17:19,
   18:6, 18:12, 19:9,
   19:25, 21:18,
   22:5, 22:17,
   22:20, 22:22,
   24:4, 24:5
citation 16:18
cited 22:23
claim 7:15, 10:5,
   21:10, 21:18,
   22:1, 22:5, 22:8,
   22:25, 26:12,
   26:16, 27:9
claimholder 25:6
claimholders 25:6
claims 7:20, 8:12,
   8:21, 12:20,
   13:17, 14:25,
   20:25, 21:5,
   21:22, 21:23,
   22:4, 23:14,
   23:20, 25:15,
   26:13, 26:19,
   27:4, 27:5, 27:6
clarity 5:21
Class 14:11, 24:20,
   24:23, 25:8,

25:18, 26:12,
   26:16, 27:4
Clause 20:2
clear 21:17
clearly 6:1, 21:21
Clerk 6:14
close 5:5
Cobra 2:21, 7:14,
   10:4, 10:5, 10:10,
   10:13, 10:17,
   11:8, 11:12,
   11:14, 11:15,
   12:15, 12:16,
   12:20, 13:19,
   13:20
Cohen 19:1
collect 21:25
Columbia 22:23
comment 5:25, 10:6
comments 13:25
Committee 2:16,
   26:20
Commonwealth 1:15,
   2:6, 4:18, 14:10,
   14:14, 14:21,
   14:25, 15:8,
   15:13, 15:15,
   18:21, 19:8,
   19:12, 19:24,
   20:1, 21:20,
   26:22, 27:1, 27:7
communication 28:10,
   29:2
completed 10:15,
   11:6
completion 11:4
comprehensive 7:18,
   12:2
comprise 17:5
computer 5:11, 28:2
concede 22:18
conceding 22:10,
   22:12, 26:10
concerning 10:4
conclude 11:9
concluded. 30:18
concludes 29:25
conclusion 11:19
conditions 19:13
conducting 30:13

conference 5:15
confirmed 15:18,
   24:20
confirming 15:12
Congress 16:24,
   17:21
connect 28:22, 29:3
connecting 28:15,
   28:18
consents 15:1
consideration 13:9
consistent 5:14,
   22:1
consisting 31:4
Construction 17:16
contend 7:14
contested 14:8,
   14:9, 27:19
continue 4:24, 5:4,
   11:19
contract 11:12,
   16:19, 17:1,
   17:23, 18:8, 22:14
contracts 12:17,
   12:18, 16:9, 17:2,
   17:4, 17:6, 18:3,
   19:4
controversy 21:21
convenience 24:20,
   24:23, 25:7, 25:8,
   25:18, 26:12,
   26:16, 27:4
cooperating 11:15
core 26:18
Corp. 17:17, 18:10
cost 6:14
Counsel 4:21, 7:19,
   7:21, 10:5, 15:18,
   19:14, 19:15,
   24:22, 25:4,
   25:10, 25:15,
   27:9, 27:25, 29:11
counsels 27:5
Countryman 16:12,
   16:14, 17:8,
   17:20, 17:25,
   18:6, 18:15,
   18:16, 18:25
course 7:1
COURTROOM 4:10

courts 17:11, 18:7
COVID-19 5:1
create 6:6
Creditors 2:17, 8:9,
   23:22, 23:25,
   26:20, 27:3
criminal 7:12,
   10:17, 10:19,
   10:23, 10:25,
   12:13, 12:19,
   12:23
criticisms 18:24
crux 20:22, 22:6
CSA 17:14
CSR 31:14
currently 8:4


< D >
dashboard 5:12,
   5:13, 6:3, 8:17,
   14:4
date 11:1, 11:4
day 10:25
deadline 11:5
dealing 23:9
Debtor 1:35, 14:21,
   15:4, 23:15
Debtors 1:18, 2:18,
   22:24
December 10:24
decision 19:9,
   19:25, 22:20,
   23:13, 27:12
decision-making 8:6
deem 15:17, 26:4
deemed 29:19
defendant 10:17
definition 17:1
Dein 1:41, 4:14,
   31:8
delay 11:18
depositions 12:24
deprived 20:25
DEPUTY 4:10
described 25:19
designated 8:21
designations 8:23
Despins 2:18, 20:5,
   20:6, 20:7, 20:10,

21:13, 21:14,
   22:3, 24:11,
   24:17, 25:1, 25:2,
   25:11, 25:14,
   25:23, 25:24,
   27:12
detail 7:17
details 30:10
determination 22:6
determinations 29:20
determine 17:25
determines 15:11
determining 17:22
detriment 23:21,
   27:2
Development 18:10
dial 6:24
dias 4:21
different 24:14
difficult 6:6
difficulty 6:10
direct 6:23, 12:1
directed 16:10,
   28:21
directly 25:15,
   29:12
disconnect 6:24
discovery 12:21,
   13:1
discussions 8:5,
   13:8
dispute 24:18
distant 5:6
distinguished 23:8
District 1:1, 1:3,
   1:39, 1:40, 1:42,
   4:11, 17:10,
   17:15, 17:18,
   19:1, 31:1, 31:2,
   31:7
Docket 1:6, 1:23,
   6:12, 7:7, 7:10,
   7:11, 14:12, 27:24
documents 12:24
doing 22:9
dollar. 23:25
dollars 10:14,
   25:17, 26:14
done 18:12
draws 5:5

Drexel 19:1
Due 16:20, 17:2,
   20:2
Duprey-rivera 27:20
during 5:20, 5:24,
   6:5

< E >
Eastern 7:1, 7:2
effect 10:20
effective 10:14
efficient 13:18
either 17:8, 24:13,
   26:14
Electronica 17:9
employee 23:18
encourage 6:14
end 8:23, 20:3,
   24:18
endorsed 17:7, 17:13
enough 24:20
entered 15:4
entire 15:3, 17:5
Entry 6:12, 7:7,
   7:11, 7:12, 14:12,
   15:1, 27:24
equally 21:2
equity 21:20
escheat 19:10, 20:1
especially 30:14
Esq 2:13
estate 18:9, 22:13
et 1:16, 2:7, 4:18,
   8:13, 23:18, 23:19
event 20:15
events 13:20
Everybody 4:6
everyone 5:2, 5:6,
   5:14, 6:23, 8:1,
   30:16
examination 18:4
example 6:19, 23:12
executory 15:11,
   16:9, 16:19, 17:1,
   17:5, 17:23, 18:3,
   18:20, 19:3, 23:1,
   23:16
exercise 21:19
EXHIBITS 3:9

expect 8:22
expected 11:1, 18:5
expecting 9:5
expense 7:15, 10:5
expenses 10:21,
   11:10, 11:11,
   11:23
explained 17:11,
   19:1
extent 16:20, 16:22,
   17:3, 24:13

< F >
F.2d 17:9, 18:13
F.3d 18:11
fact 17:20, 20:11
facts 20:24, 21:2
fall 26:15
far 8:22, 9:3, 15:6
feature 25:12, 27:7
fees 24:23
Feld 10:10
FEMA 11:2, 11:6,
   11:7, 11:9, 11:15,
   12:17, 13:16
few 9:7, 28:16
fiddling 27:16
Fifth 12:25
filed 6:12, 8:1,
   10:17, 15:5
filter 25:9
final 6:22, 27:15
finality 19:7, 19:22
Financial 1:9, 1:26,
   2:12, 4:16
find 7:18, 16:13,
   27:18
finding 12:15
First 7:3, 7:16,
   7:20, 11:7, 12:3,
   12:4, 13:20, 14:8,
   14:14, 17:7,
   17:12, 17:19,
   19:9, 19:24,
   20:22, 21:18,
   22:5, 22:17,
   22:18, 22:19,
   22:22, 23:16,
   24:4, 24:5, 26:1

Fiscal 2:11
five 8:4, 27:22,
   28:14, 28:25
flexible 16:24,
   17:22
folks 24:21
forth 12:11, 12:15
found 11:8
foundation 15:22
fours 22:24
fraudulently 12:16
frustrating 13:19
full 18:19, 18:21,
   18:22, 20:18,
   22:15, 23:3,
   23:20, 24:19,
   24:21, 24:24,
   26:12
function 6:2
functional 16:12,
   16:16, 17:8, 18:3,
   18:7, 18:14, 19:4,
   22:17, 22:21,
   23:5, 23:6, 23:11,
   23:17, 23:21,
   23:23, 24:5, 24:6,
   24:8, 24:14
fund 19:8, 19:24,
   22:8, 23:14
fundamental 10:12
fundamentally 11:20
funds 19:10, 19:25,
   20:12, 20:19,
   21:20, 26:21,
   26:22, 27:1

< G >
Gail 1:41, 31:8
Gallivan 22:22
Garcia-rubiera 14:11
Gas 22:23
gating 12:19
gave 28:14
General 7:21, 9:19,
   15:23, 16:3, 18:10
generally 17:1,
   17:3, 24:12
getting 9:6, 20:18,
   23:25

give 23:12
Given 12:2, 12:13
goals 18:4
God 4:14
Gonzalez 23:8
governed 11:12
government 7:13,
  12:10, 12:12,
  13:4, 13:21
Gracia-gracia 15:4
granted 29:18
granting 20:20
gross 25:7
Group 19:2
guess 8:12
Gump 10:9

< H >
Hadassa 12:9
half 13:20
happen 23:9
happens 13:15
happiness 8:10
Happy 5:6, 9:16,
  11:24
Hauer 10:9
health 5:4, 8:10
hear 6:22, 9:15,
  9:25, 12:3, 22:21,
  29:9
heard 6:1, 6:4,
  14:4, 30:4
Hearing 1:38, 4:19,
  4:23, 5:8, 5:16,
  5:20, 6:6, 6:10,
  7:6, 30:1, 30:7,
  30:8, 30:13
held 19:8, 19:24,
  26:21
Hello 9:25
help 28:17
helpful 9:14, 27:14
high 8:11, 24:20
history 16:23, 19:5
hold 28:4
holdback 27:6
holdbacks 25:4, 25:5
holiday 5:6
holidays 9:16, 30:16

Honorable 1:39,
  1:41, 4:12, 4:13,
  4:15, 31:6, 31:8
hope 5:4
hopes 5:7, 8:11
horrible 20:23,
  20:24, 21:2
hundred 25:7
hundreds 21:1, 21:3,
  25:17

< I >
identified 14:3
identify 5:21
II.1 14:9
III 1:8, 1:25, 2:18,
  4:25, 14:21, 26:8
imagine 12:23
impact 23:24
impacted 12:22
important 21:7,
  23:18
imposition 11:20
in. 29:13
Inc. 17:9, 17:14
include 24:15
includes 17:2, 17:4
including 5:17
incurred 11:11
indicated 17:21
individual 24:21
initial 9:12
insight 11:5
instance 12:5,
  15:10, 16:16
instructions 28:18,
  28:21
insurance 19:8,
  19:24
intended 16:24
intention 13:14
interest 4:22, 5:24,
  8:10, 19:8, 19:23,
  26:9, 26:10, 26:25
interested 6:14
interests 26:21
interface 28:2
interim 9:5
interrupt 6:5, 6:8

Interruptions 6:6
invalidate 12:17
invite 7:20, 27:25
island 5:2
issue 12:18, 16:10,
  20:22, 22:9,
  22:12, 23:11,
  26:10, 26:11, 30:9
issued 5:16, 22:20
issues 5:24, 19:7,
  19:23, 26:24
issuing 15:23
Item 7:3, 7:16,
  14:9, 27:15

< J >
J. 2:7
January 11:21,
  13:14, 29:14,
  29:21, 30:7
Jointly 1:11, 1:28
Jolly 18:13
joyous 5:6
Juan 4:1
Judge 1:39, 1:40,
  1:41, 1:42, 4:5,
  4:6, 7:23, 23:7,
  28:4, 31:7, 31:8
judgment 21:25
judgments 21:4
judicial 5:15
Judith 1:41, 4:13,
  31:8
June 13:14

< K >
keep 5:8, 6:15,
  30:16
keeping 6:16
key 21:12
knows 8:2

< L >
La 17:9
lack 10:12
Lambert 19:2
last 19:15, 19:18,

28:12, 28:21
later 10:25
Laura 1:39, 4:12,
   31:7
law 21:8, 21:24,
   22:2
lead 24:19, 24:24
leave 29:15
leaving 10:13
left 28:22
legal 15:22
legislative 16:23
less 6:22, 21:3,
   21:6, 24:1
lesser 15:12
letters 9:6
level 9:9
Lexus 17:17
liability 11:10
Lift 15:5, 26:23
lifted 11:22
lifting 16:4
likely 26:15
Likewise 10:2
limit 29:19
limited 5:17
line 5:9, 28:3,
   28:5, 28:6, 28:8
Lisa 4:6
listed 5:22
litigating 26:11
litigation 19:5,
   21:8, 26:7
logging 29:13
logistical 30:10
long 19:4, 28:24
look 23:4, 23:6,
   23:24, 25:12
looking 23:24
lost 27:17
Luc 2:18
Luis 2:13, 9:20,
   27:19, 27:25,
   28:7, 29:8


< M >
Ma 2:9, 14:15,
   14:16, 14:17,
   14:19, 15:21,

16:1, 16:7, 18:2,
   19:12, 19:18,
   19:19, 19:22,
   20:4, 25:25, 26:1,
   26:18, 27:11
Magistrate 1:41,
   31:8
mainland 5:2
maintain 23:18
Management 1:10,
   1:27, 4:17
manner 6:1
March 10:15
MARINI 2:13, 9:18,
   9:20, 9:21, 9:25,
   10:2, 28:6, 28:7,
   28:8, 28:11,
   28:20, 28:25,
   29:5, 29:8, 29:9,
   29:11, 29:22,
   29:24
Martin 2:7, 7:24
Mass 17:14
Massachusetts 17:11
material 7:14,
   18:16, 21:21
materiality 16:22
matter 10:18, 10:22,
   14:9, 27:19, 30:2
matters 5:23, 14:8
meaningful 10:20,
   13:2
mediators 8:5
medical 23:14, 23:19
members 4:22, 5:18,
   8:4
mention 16:21
merely 21:22, 21:25,
   27:8
message 28:14,
   28:16, 28:23
midst 4:25
million 10:14
millions 21:4
minutes 6:17, 6:21,
   10:7, 14:13, 20:5,
   25:25, 27:21,
   27:22, 28:14,
   28:16, 28:25
moment 27:18

morale 23:18
morning 4:5, 4:6,
   4:21, 6:25, 7:23,
   8:19, 9:20, 9:22,
   10:8, 12:7, 12:8,
   14:17, 14:18,
   20:7, 20:9, 28:7,
   28:9, 29:8
Motion 11:23, 13:14,
   14:10, 15:3, 15:5,
   15:17, 18:20,
   18:22, 20:12,
   21:19, 24:9, 26:3,
   26:24, 27:15,
   27:20, 29:20
movant 27:22, 27:23,
   28:1, 29:12
move 9:9
moved 23:15, 29:14
MS 4:6, 4:9, 12:3,
   12:4, 12:6, 12:7,
   12:9, 13:6, 13:7,
   13:23, 28:3, 28:4
Muniz 9:21
Munoz 27:25, 28:3,
   28:10
mute 5:9, 5:11


< N >
name 5:21, 6:1,
   14:2, 14:5, 30:3
necessary 12:21
need 6:23, 12:24,
   25:11, 28:1
needed 11:13
New 5:7, 8:10, 19:1,
   30:12
next 8:25, 9:7, 9:9,
   27:13, 30:7
NG 4:6, 28:3, 28:4
NLRB 16:17
No. 1:6, 1:23, 4:16,
   6:13, 7:7, 7:11,
   7:12, 14:12,
   16:25, 27:24, 28:5
None 3:5, 3:11
nonetheless 16:9
noon 7:2
nor 11:11

Nos. 7:7
Notably 18:14, 26:21
note 17:3
noted 16:19, 17:16,
    26:23, 27:5
notes 11:13, 16:25
nothing 18:17, 21:17
notice 9:1
noting 19:24
number 29:6


< O >
objection 29:15
obligation 18:16
obligations 12:18,
    17:4, 20:1
occur 30:9
occurred 7:25
occurring 4:23
October 10:23
offered 21:2
offers 9:1
office 28:13, 28:17,
    29:2
Official 2:15, 31:15
often 17:12
Okay 22:21, 25:14,
    29:9
Omni 29:21
Omnibus 1:38, 4:19,
    4:23, 29:14, 30:1
once 11:5, 11:21
One 6:4, 6:17, 8:20,
    18:24, 20:11,
    21:3, 21:6, 22:11,
    27:17
ones 9:3
ongoing 8:6, 11:2,
    30:13
opinion 20:16
oppose 24:22
Order 7:5, 14:22,
    14:24, 15:2, 15:7,
    15:23, 26:7,
    28:12, 30:10
ordered 19:9, 19:25
orderly 5:8
orders 5:15
originally 10:22

outcome 10:19, 18:17
outcomes 24:18
outset 20:11
outstanding 17:4,
    18:16, 30:13
Oversight 1:9, 1:26,
    4:17, 7:4, 7:9,
    7:17, 7:19, 7:21,
    7:24, 8:3, 12:9,
    13:11, 14:20,
    15:1, 16:8, 16:13,
    21:5, 26:3
own 6:15, 16:2
ownership 21:16


< P >
PAGE 3:3, 23:7, 26:3
pages 31:4
paid 18:18, 18:21,
    18:22, 20:18,
    21:9, 23:20,
    24:21, 25:5, 25:9,
    25:15, 26:12,
    27:5, 27:6
painful 13:19
pandemic 5:1
paper 27:17
papers 12:11, 12:15,
    21:17, 22:19,
    26:23, 27:17
participant 6:10
particular 15:22,
    16:16, 25:5, 25:6
PARTIES 2:4, 4:22,
    5:9, 5:18, 5:23,
    7:13, 8:9, 12:10,
    12:12, 13:4,
    13:22, 15:12,
    16:11
partner 8:13
past 13:10
pay 20:12, 24:21
payable 25:6
paying 22:14
payment 14:25,
    15:24, 20:25,
    21:11, 23:2,
    24:19, 24:24
payments 15:13,

16:5, 25:4, 25:20,
    26:6
pendency 12:13
pending 26:8, 27:12
pennies 23:25
penny 24:1
people 14:2, 20:25,
    21:1, 21:4
per 26:14
percent 21:3, 21:6,
    25:7, 27:6
performance 16:20,
    17:2
permission 24:3
permits 17:22
permitted 5:17
person 5:17, 6:4,
    14:1
phone 5:12, 5:13,
    8:17, 14:5, 28:1
phones 5:9
PHV 2:7, 2:8, 2:9,
    2:18, 2:21
Pietrantoni 9:21
place 12:14, 13:5
Plaintiffs 14:12,
    15:4, 15:6, 15:18,
    18:18, 18:20,
    18:22, 19:7,
    19:23, 26:11,
    26:18, 26:20,
    27:3, 27:9
plan 18:23, 24:19,
    25:16
planning 9:15
Plastics 23:13
played. 6:20, 11:16,
    18:1, 19:11,
    25:13, 26:17
plays 25:20
Please 4:9, 5:21,
    6:1, 6:5, 6:10,
    8:16, 19:15
PM 6:25
point 17:19, 20:11,
    23:2, 23:23, 26:2,
    26:5, 26:9
point. 22:10, 22:12
policies 5:15
position 12:12,

13:4, 22:7, 29:1
positions 24:15
post-petition 10:14
potential 12:25
Power 1:32
pre-petition 14:23
precise 17:1
premise 21:21
PREPA 7:9, 10:4,
  10:17, 11:10,
  11:12, 11:13,
  11:17, 12:17,
  12:18, 13:12
preparing 30:12
present 4:13
presentations 5:25
President 8:2
presiding 4:13
press 4:22, 5:18,
  21:16
prevail 18:20
prevails 18:21
previously 10:18
Prime 6:14
principle 21:24
prior 13:8, 13:9,
  26:23
priority 22:11
probably 8:13
Procedures 7:5,
  30:10
proceed 10:24, 11:1,
  11:22
proceeding 10:19,
  18:4
Proceedings 2:45,
  4:25, 5:10, 7:13,
  12:13, 30:18, 31:6
proceeds 27:8
Process 7:20, 8:6,
  8:13, 8:22, 9:9,
  20:2
produced 2:45, 12:25
progress 5:4, 8:7,
  10:12
projected 21:5
PROMESA 1:8, 1:25,
  13:16, 15:2, 15:24
proper 26:5
property 19:7,

19:23, 26:9,
  26:10, 26:24
Proskauer 7:24,
  14:19
provide 15:7, 19:6,
  19:22
providing 30:10
public 4:22, 5:18,
  6:13, 7:7, 7:10
PUERTO 1:3, 1:11,
  1:16, 1:28, 1:32,
  2:7, 2:11, 4:1,
  4:12, 4:17, 4:18,
  17:16, 17:18,
  21:8, 21:24,
  30:11, 31:2
punished 5:19
purpose 26:11
purposes 9:15, 26:22
pursuant 15:13, 16:2
pursue 21:11
put 8:2, 29:21


< Q >
qualify 25:18
question 7:19, 8:12,
  8:20, 9:13, 12:20
questions 6:9, 9:23,
  9:24, 11:25,
  13:25, 27:14
queuing 13:13
quite 7:18, 12:1
quote 16:22, 17:1,
  17:11
Qureshi 2:21, 10:6,
  10:7, 10:8, 10:9,
  11:17, 12:5, 13:23


< R >
raised 5:24
Rand 11:8
rates 11:8
rather 16:22, 18:14
Re 1:6, 1:23, 4:16,
  17:9, 17:16,
  18:10, 18:12
reach 29:2
reached 29:11

reaching 29:22
real 11:5
really 10:12, 12:19,
  22:15
reason 15:3
reasonable 11:8
reasonableness 11:7,
  11:11
reasons 13:3, 13:18
rebuttal 25:25,
  27:23
recent 11:14
record 5:22, 8:2,
  10:9, 14:19
recorded 2:45
recording 5:16
recovery 21:3
Redondo 17:16
redress 10:14
reflected 7:18
regard 13:10
regarding 7:12,
  7:19, 13:25, 26:24
register 28:12,
  29:13
reimbursements 26:13
rejection 18:5, 18:8
relates 10:13
release 27:1
Relief 14:22, 15:12,
  15:16, 15:19,
  20:12, 20:20,
  26:2, 26:4, 27:15,
  27:20, 29:20
relitigate 21:10
rely 15:7
remain 4:25, 5:1,
  12:14, 13:5
remaining 6:17
remains 12:12,
  13:16, 16:20, 17:2
remanded 21:18, 22:5
remark 7:25
remarks 7:22, 9:19,
  10:3, 12:2
remind 5:14, 11:3
repeat 19:15, 19:18
Report 7:10, 8:1,
  8:21, 10:4, 10:16,
  11:13, 13:11,

13:15, 13:21,
16:25
Reporter 19:14,
19:15, 31:15
reports 7:3, 7:5,
7:16, 7:18, 14:1
representative 1:13,
1:30, 4:18, 14:20
represented 26:19
request 11:14,
29:14, 29:17,
29:18
requested 7:4,
15:15, 26:3
require 5:25, 13:11,
17:20
requiring 16:14
reserve 27:12
resolution 7:14,
7:20, 12:19, 12:20
resolve 15:5, 19:6,
23:11
resolved 12:23
resolving 26:24
respect 11:2, 12:16,
13:15, 19:7, 19:23
respond 8:14, 11:14,
12:4, 24:10
responding 9:6
response 27:22
response. 14:6, 30:5
responses 9:6
responsive 27:13
result 18:24, 24:7,
24:15
retransmission 5:16
returning 11:21
review 11:2, 11:4,
11:6, 11:7, 11:8
RICO 1:3, 1:11,
1:16, 1:28, 1:32,
2:7, 2:11, 4:1,
4:12, 4:17, 4:18,
17:16, 17:18,
21:8, 21:24,
30:11, 31:2
rights 13:1
risk 22:14, 22:15,
23:3
roads 24:24

Rodriguez 27:25,
28:3, 28:10,
28:12, 29:23
Rose 14:19
ROSEN 2:8, 8:13,
8:16, 8:18, 8:19,
8:24, 9:12, 9:16
Rule 5:19, 6:8, 16:2
ruling 26:5, 26:6
rulings 13:10
run 19:20


< S >
S. 2:8
S/ 31:13
safe 30:16
safety 5:4
San 4:1
sanctions 5:19
satisfactory 15:19
satisfied 15:12,
19:12, 20:1
satisfy 23:20
save 4:14
saying 22:20, 23:10,
24:18
scheduled 10:23,
30:7
season 5:6
Second 11:7, 12:21,
23:5, 27:19
seconds 14:1, 30:3,
30:6
Section 15:2, 16:24,
17:21
seek 11:22, 14:22,
14:24
seeking 15:16, 26:4
seeks 11:18
seem 22:1, 27:17
seems 15:9, 17:7
segregated 26:22
select 5:11
Senate 16:25
sent 9:1, 28:11,
28:20
sentence 19:16,
19:18
separate 25:8, 27:9

served 26:11
session 4:12
sessions 8:6
set 12:11, 12:15,
29:25
settled 21:8, 21:11,
23:4
Settlement 14:11,
14:23, 14:25,
15:9, 15:10,
15:11, 15:14,
16:9, 18:2, 18:18,
18:19, 19:3, 19:5,
20:13, 20:17,
20:18, 20:20,
22:13, 24:25,
25:3, 25:16, 26:7,
26:25, 27:7
settlements 21:4
severe 5:3
severely 12:22
shall 22:20
show 24:8
shows 16:23
side 24:13
sides 17:3, 17:5
sides. 16:20
significance 16:21
similar 21:4
Similarly 17:10,
17:15, 18:12
simply 14:24, 15:12,
16:4
situation 20:24
Sixth 18:12
small 26:13
socially 5:6
Solutions 5:11, 6:3,
28:12
sorry 24:25, 27:16
sought 20:12
Sound 6:19, 6:20,
11:16, 18:1,
19:11, 25:13,
26:17
sounded 19:16
Southern 18:25
speaker 5:20, 6:15,
6:16
speakers 5:22, 6:3

speaking 5:10,
  14:14, 19:16,
  29:23
specifically 21:18
specified 6:24
spoken 5:23
staff 8:9, 30:11
stakeholders 4:24
Standard 6:25, 7:1,
  30:8
start 10:11
state 6:1, 14:5,
  24:12, 30:3
statement 13:7
States 1:1, 1:40,
  1:42, 4:11, 4:14,
  31:7, 31:8
stating 15:23
status 7:3, 7:10,
  7:16, 8:1, 10:16,
  11:13, 13:11,
  13:21, 13:25
Stay 11:20, 11:22,
  12:13, 12:14,
  13:5, 15:5, 16:4,
  18:20, 18:22,
  26:7, 26:23,
  27:16, 27:20,
  29:21, 30:16
stayed 10:22
stenography 2:45
Steve 2:9, 14:19
Stevens 17:13
stipulate 22:8
stipulation 15:5,
  15:6
stop 13:13
Strauss 10:9
strike 23:19
strongly 24:18
structure 13:16
structured 25:3
Structurlite 23:13
submissions 24:2,
  24:13, 27:13
submit 22:19, 24:7
submitted 7:10, 9:8
suggests 17:4
supplemental 22:19,
  27:12

support 30:14
Supreme 16:17,
  16:18, 16:21,
  17:21
Swain 1:39, 4:5,
  4:13, 7:23, 31:7


< T >
Tacoronte 4:9
tandem 17:12
Taylor 1:39, 4:12,
  31:7
telephonic 4:23,
  5:8, 7:6
TELEPHONICALLY 2:4,
  30:9
tells 23:10
ten 20:5, 27:21,
  28:25
terms 12:18, 20:24,
  22:17, 22:25,
  25:20
test 16:12, 16:15,
  17:20, 18:7,
  18:15, 18:25
tests 17:12, 18:16
themselves 14:3
theory 21:16
third 11:6
thou 22:20
thoughts 5:1
thousands 21:1,
  25:17
Three 8:3, 25:25,
  27:22
threshold 26:15
timing 6:24, 8:6
Title 1:8, 1:25,
  2:18, 4:25, 14:21,
  26:8
Today 4:23, 5:8,
  5:23, 28:21, 30:2,
  30:13
total 14:13, 27:21
tracing 21:19
track 6:15, 6:16,
  27:17
Transcript 2:45,
  6:7, 31:4

transcription 31:5
treat 25:3, 27:3
treatment 13:17,
  22:4, 27:4
trial 10:23, 10:25,
  11:1, 13:15
trouble 28:15,
  28:23, 29:13
true 22:5, 31:5
Trump 8:3
trust 20:19, 21:16,
  22:8, 23:14, 26:21
try 28:17
turn 9:18, 10:3,
  11:17, 12:4
two 6:17, 6:18,
  6:21, 6:22, 10:6,
  14:23
two-minute 27:23
type 23:8


< U >
ultimately 9:9, 11:9
uncertainty 20:19,
  22:9
unchanged 12:12
underlying 20:24,
  21:10, 22:4
underscoring 10:12
understand 10:5,
  20:23, 21:7, 28:13
understandably 13:19
understood 29:18
unfair 11:20
unfairness 10:13
United 1:1, 1:40,
  1:42, 4:11, 4:14,
  31:6, 31:8
universe 17:5
unless 8:11, 9:23,
  12:22, 13:15
unmute 5:13, 8:16,
  14:4, 28:1
Unsecured 2:16,
  21:18, 21:22,
  21:23, 22:1, 26:20
until 19:12, 20:1
usual 7:3

< V >
v. 16:17, 17:14,
  19:1
vehicle 26:13, 26:14
versus 16:12
view 13:7, 27:8
Violations 5:18
voice 9:15, 9:25


< W >
wait 14:1, 29:7,
  30:2
waiting 28:19
waiver 29:19
walk 21:12
Walker 31:13, 31:14
wanted 8:8, 15:7
wave 6:2
Waxman 12:3, 12:4,
  12:6, 12:7, 12:9,
  13:6, 13:7, 13:23
week 27:13, 28:13,
  28:21
weeks 9:7
Welcome 4:21
whether 15:25, 18:2,
  20:19, 28:18,
  29:3, 29:14
who've 14:2
whoever 29:1
wind 19:20
wish 5:5, 5:12,
  5:25, 8:9, 11:3,
  29:3, 30:3
wished 13:24
wishes 6:4, 10:6,
  12:3
without 10:13
WITNESSES 3:3, 12:25
wondering 28:18
work 10:15, 22:15,
  30:12
works 18:4, 23:11
Worldcom 23:7, 23:9
worldwide 5:1
writing 7:5

< Y >
Y. 2:9
year 5:3, 5:5, 5:7,
  8:10, 8:23, 9:3,
  10:25, 13:10,
  13:20, 26:14
yesterday 8:2
York 19:1, 30:12
yourself 5:21