Hearing Date: January 27, 2021, at 9:30AM (Atlantic Standard Time)
Response Deadline: January 13, 2021, at 4:00PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                 Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

## TWO HUNDRED SEVENTY-NINTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE AND NO LIABILITY BONDHOLDER CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor"), by and

through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as the Commonwealth's representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred seventy-ninth omnibus objection (the "Two Hundred Seventy-Ninth Omnibus Objection") seeking to disallow portions of the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based on bonds and is (*i*) based in part on amounts for which the Debtor is not liable because the claim asserts liability based on an ownership interest in bonds issued by AFICA (as defined below), which is not a Title III debtor, and whose liabilities are not guaranteed by the Commonwealth; and/or (*ii*) based in part on amounts for which the Debtor is not liable because the claim asserts liability based on an ownership interest in bonds issued by PRASA (as defined below), which is not a Title III Debtor, for amounts as to which the Commonwealth has not guaranteed repayment; and/or (*iii*) based in part on an ownership interest in bonds issued by COFINA (as defined below); and/or (*iv*) duplicative in part of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds.  A portion of each claim listed on **Exhibit A** hereto will remain asserted against the Commonwealth.  In support of the Two Hundred Seventy-Ninth Omnibus Objection, the Commonwealth respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

2

## BACKGROUND

### A. The Bar Date Orders

3.       On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").   Also on May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Puerto Rico Sales Tax Financing Corporation ("COFINA") pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "COFINA Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").

4.       On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

### B. Bond Debt Master Proofs of Claim – Commonwealth Title III Case

5.       Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-debtor may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).  As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the Commonwealth Title III Case on behalf of the holders of certain bonds or notes of the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"), Puerto Rico Public Buildings Authority ("PBA"), Puerto Rico Convention Center District Authority ("PRCCDA"), and University of Puerto Rico ("UPR").

6.       *HTA*—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (i) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (ii) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain

outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998

Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.  On

behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the

Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured,

contingent and unliquidated claim against the Commonwealth on account of any and all claims,

causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the

Commonwealth arising at law or in equity . . . ."  *See* Addendum to Proof of Claim No. 121053,

¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No.

115380, ¶ 15.[4]

7. ***PRIFA***—PRIFA is an affiliate of the Government Development Bank ("GDB")

and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act

No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other

types of assistance to the Commonwealth, its public corporations and other instrumentalities

responsible for developing and operating infrastructure facilities.  On behalf of the holders of

various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of

claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by

BNYM, US Bank, and UMB Bank, N.A.  US Bank filed a master proof of claim with respect to

certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf

of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C,

and Series 2006), asserting "claims for contingent, unliquidated amounts for interest payable in

the future, interest accrued and accruing in the future as to past due principal and interest, fees and

---

[4]  While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim
Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos.
121053, 120982, and 115380.

costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.

8.     _**AFICA**_— AFICA is a public corporation and government instrumentality of the Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved June 27, 1977 (as amended and supplemented and codified as P.R. Laws Ann. tit. 12, § 1251 _et seq._). P.R. Laws Ann. tit. 12, § 1254.  AFICA facilitates project financing in order to promote the economic development of the Commonwealth, including through the development and construction of new industrial, commercial, tourist, agricultural, educational, medical and environmental control facilities.   AFICA issued certain Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority Educational Facilities Revenue Bonds (Plaza Universitaria Project) ("Plaza Universitaria Bonds").   BNYM serves as trustee of the Plaza Universitaria Bonds and filed a master proof of claim, which was logged by Prime Clerk, LLC, as Proof of Claim No. 68271, asserting "a secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity," including "for breach of covenants, failure to fund requested sums, constructive trust, or for the potential diversion of revenues pledged for the payment of the Bonds."  Addendum to Proof of Claim No. 68271, ¶ 15.

9.     _**PBA**_—PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds

issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and

on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth

Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by

Prime Clerk, LLC, as Proof of Claim No. 62833.[5]  The PBA Master Claim asserts liquidated claims

for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid

interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated

and contingents claims for any and all amounts owed "on account of any and all claims the Fiscal

Agent has or may have relating to the outstanding Bond obligations, whether known or unknown

against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."

Rider to PBA Master Claim, ¶¶ 19-21.

   10.    ***PRCCDA***—PRCCDA is a public corporation created by Act No. 142 of October 4,

2001, as amended by Act No. 185 of August 3, 2004, to develop, manage and oversee the Puerto

Rico Convention Center, the Coliseo de Puerto Rico José Miguel Agrelot, the Ribas Dominicci

Executive Airport, and other adjacent hospitality, commercial and residential developments within

the District.  BNYM serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by

PRCCDA (the "PRCCDA Bonds"), and on behalf of the holders of PRCCDA Bonds filed a master

proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of

Claim No. 37319 (the "PRCCDA Master Claim").   The PRCCDA Master Claim asserts a

"contingent and unliquidated claim against the Commonwealth on account of any and all claims,

causes of action, rights, and/or remedies that the Trustee or the Owners may have against the

Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the

---

[5]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was
initially filed by the Fiscal Agent.

Pledge Agreement, the Bonds, or the Trust Estate, including, but not limited to, violations of the United States Constitution and of the Puerto Rico Constitution, violations of The Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 *et seq.*, including, without limitation, section 407 thereof, tortious interference with contract, conversion, fraud, fraudulent inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, or contribution, that have been or may be asserted in present or future litigations by, among, or involving the Trustee, any Owners, the Authority [PRCCDA], and/or the Commonwealth." Addendum to PRCCDA Master Claim, ¶ 11.

11.    **_UPR_**—UPR allegedly is "a public corporation of the Commonwealth constituting an organic system of higher education," pursuant to Act No. 1 of the Legislature of Puerto Rico, approved January 20, 1966 (18 L.P.R.A. §§ 601-614).  Rider to Proof of Claim No. 13382, ¶ 5. US Bank serves as trustee for certain University System Revenue Refunding Bonds Series P and Q issued by UPR, and filed a master proof of claim, logged by Prime Clerk, LLC, as Proof of Claim No. 13382 (the "UPR Master Claim").  The UPR Master Claim asserts "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Trust Agreement, or pursuant to other applicable documents or law, including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future." *Id.*, ¶ 12.

C.  **Bond Debt Issued by the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority**

12.    In 2004, AFICA issued Higher Education Revenue Bonds, Series 2004 (the "2004 Higher Education Revenue Bonds"), in the aggregate amount of $36,575,000, in order to, among

other things, finance, in part, improvements to the Inter American University of Puerto Rico (the "University").  The 2004 Higher Education Revenue Bonds are payable solely from repayment of a loan agreement entered into between AFICA and the University.  The offering statement issued in connection with the 2004 Higher Education Revenue Bonds states that the bonds "do not constitute an indebtedness of the Commonwealth of Puerto Rico or of any of its political subdivisions, other than [AFICA].  Neither the Commonwealth of Puerto Rico nor any of its political subdivisions, other than [AFICA], is liable for payment of the [2004 Higher Education Revenue Bonds]."  *See, e.g.*, Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, Offering Statement, Higher Education Revenue Bonds, 2004 Series (Inter American University of Puerto Rico Project), *available at* https://emma.msrb.org/Security/Details/AE85D63796A792BF63CEADCBC9EDA83EF.

### D.  Bond Debt Issued by the Puerto Rico Aqueducts and Sewers Authority

13.    PRASA was established pursuant to Act Number 40 on May 1, 1945.  PRASA is a government-owned corporation in Puerto Rico and was created for the purpose of providing water and sewer services on the island.  22 L.P.R.A. § 144.

14.    The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g). Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution No. 1583").  In 2008, PRASA issued $1,316,204,456 principal amount of Series A revenue bonds (the "2008 Senior Series A Bonds").  Additionally, in 2012, PRASA concurrently issued $1,800,450,00 principal amount of Series 2012 A revenue bonds (the "2012 Senior Series A Bonds"), as well as $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012

9

Senior Series B Bonds," together with the 2012 Senior Series A Bonds and the 2008 Senior Series

A Bonds, the "PRASA Senior Lien Bonds").

15.    Holders of PRASA Senior Lien Bonds have received and continue to receive all

payments owed to holders of the PRASA Bonds in full as they become due and owing.

Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the

PRASA Senior Lien Bonds.[6]   In addition, the Commonwealth has not guaranteed repayment of

the Senior Lien Bonds.   Accordingly, the offering statements for the PRASA Senior Lien Bonds

state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or

other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico

or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for

the payment of the principal of or interest on said Bonds."[7]

### E.   The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute

16.    COFINA is a public corporation and instrumentality of the Commonwealth

constituting a corporate and political entity independent and separate from the Commonwealth,

created under Act No. 91 of the Legislative Assembly of the Commonwealth.   Pursuant to that

certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as

amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a

series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray

---

[6]*See,*                                                                                            *e.g.*,
   https://emma.msrb.org/Security/Details/A77AAAB374BB0A541A55D2D2509BABD8F;
https://emma.msrb.org/Security/Details/AEDD756D8E31FDC19BD8CDE94EDCE712E.

[7] *See, e.g.*, Offering Statement for PRASA Revenue Bonds, Series A (Senior Lien), March 7, 2008,
   available                                                                                          at
   https://emma.msrb.org/Security/Details/AF1172BE7598AF5023E511B5CC65A4AD4.

certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico Public Finance Corporation (the "COFINA Bonds").  Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

17.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on January 16-17, 2019.

18.     On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048].  On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing*

11

*Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case

No. 17 BK 3284-LTS, ECF No. 587].

### F. Proofs of Claim Filed Against the Commonwealth, the Omnibus Objection Procedures, and Claim Objections

19.     To date, approximately 174,000 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors, in addition to unliquidated amounts asserted.

20.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar

Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw,

such as being subsequently amended, not putting forth a claim for which the Debtors are liable,

being duplicative of other proofs of claim, or failing to provide information necessary for the

Debtors to determine whether the claim is valid.

21.     In order to efficiently resolve as many of the unnecessary proofs of claim as

possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order*

*(a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of*

*Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus

Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion

by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection*

*Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting*

*Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively,

the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English

and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

22.     In the continued interest of resolving any unnecessary proofs of claims in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice.  *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

23.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held 12 hearings related to over 140 omnibus objections filed by the Commonwealth, COFINA, HTA, and/or Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS").  Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting $43 trillion in liability against the Commonwealth, COFINA, HTA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

24.     This Two Hundred Seventy-Ninth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

25.     Claims that are "unenforceable against the debtor and property of the debtor, under
any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly
executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see*
Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting
party may overcome this *prima facie* evidence with evidence which, if believed, would refute at
least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.),
*aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370,
372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced
evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

26.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an
omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of
Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the
Amended Omnibus Objection Procedures.

27.     The Two Hundred Seventy-Ninth Omnibus Objection seeks to disallow portions of
the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based on bonds and
is either (i) based in part on amounts for which the Debtor is not liable because the claim asserts
liability based on an ownership interest in bonds issued by AFICA (as defined below), which is
not a Title III debtor, and whose liabilities are not guaranteed by the Commonwealth; and/or (ii)
based in part on amounts for which the Debtor is not liable because the claim asserts liability based
on an ownership interest in bonds issued by PRASA, which is not a Title III Debtor, for amounts
as to which the Commonwealth has not guaranteed repayment; and/or (iii) based in part on an
ownership interest in bonds issued by COFINA; and/or (iv) duplicative in part of one or more

14

master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds.

A portion of the claim will remain asserted against the Commonwealth.  **Exhibit A** hereto further

specifies why each of the claims (collectively, the "Claims to Be Partially Disallowed") should be

disallowed in part.

### A.  No Liability for Claims Based on AFICA Bonds

28.      As identified in **Exhibit A** hereto, certain portions of the Claims to Be Partially

Disallowed purport to assert claims based on an alleged ownership interest in bonds issued by

AFICA, which is not a Title III debtor, and which liabilities are not guaranteed by the

Commonwealth (collectively the "Partial AFICA Bondholder Claims").

29.      Each of the Partial AFICA Bondholder Claims purports to assert, in part, various

liabilities against the Commonwealth associated with AFICA Bonds not guaranteed by the

Commonwealth.  AFICA is not a Title III debtor, and is a separate, legally distinct entity from the

Commonwealth.  Moreover, each of the offering statements issued in connection with the AFICA

Bonds states that the AFICA Bonds are not a debt of the Commonwealth or any of its political

subdivisions, other than AFICA.  Each of the Partial AFICA Bondholder Claims does not assert a

basis for asserting a claim against the Commonwealth for bonds issued by AFICA that are neither

guaranteed by nor a debt of the Commonwealth.  Accordingly, the Commonwealth is not liable

for the Partial AFICA Bondholder Claims.

### B.  Duplicate Bond Claims

30.      As identified in **Exhibit A** hereto, certain portions of the Claims to Be Partially

Disallowed purport to assert liability on the basis of bonds issued by HTA and PRIFA

(collectively, the "Partial Duplicate Bond Claims").

15

31.     Each of the Partial Duplicate Bond Claims purports to assert liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Commonwealth Title III Case on behalf of the holders of certain bonds issued by HTA, PRIFA, AFICA, PBA, PRCCDA, and/or UPR.  Any failure to partially disallow the Partial Duplicate Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case.  The holders of the Partial Duplicate Bond Claims will not be prejudiced by the partial disallowance of their claims because the liabilities associated with the Partial Duplicate Bond Claims are subsumed within one or more Master Claims.

### C.  No Liability for PRASA Senior Lien Bonds

32.     As identified in **Exhibit A** hereto, some of the Claims to Be Disallowed purport to assert, in part, claims based on the alleged ownership of bonds issued by PRASA (collectively, the "Partial PRASA Bondholder Claims").

33.     Each of the Partial PRASA Bondholder Claims assert liabilities associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Commonwealth.  Each of the Partial PRASA Bondholder Claims asserts recovery for liabilities associated with Senior Lien Bonds issued by PRASA.  PRASA, however, is not a Title III Debtor, and is a separate, legally distinct entity from the Commonwealth.  Moreover, neither the Commonwealth nor any other instrumentality or political subdivision thereof has guaranteed repayment on the PRASA Senior Lien Bonds.  Each of the Partial PRASA Bondholder Claims fails to comply with the applicable rules, however, because it does not assert a basis for asserting a claim against the Commonwealth for bonds issued by PRASA that are not

16

guaranteed by the Commonwealth.  Because of this failure to comply with the applicable rules,

neither the Debtors nor the Court are able to determine the validity of the Partial PRASA

Bondholder Claims.  Because the Partial PRASA Bondholder Claims are unenforceable against

the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should

be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### D.  COFINA Bond Claims

34.     As identified in **<u>Exhibit A</u>** hereto, some of the Claims to Be Disallowed purport to

assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA

(collectively the "<u>Partial COFINA Bondholder Claims</u>").

35.     As explained above, the Settlement Order resolved the Commonwealth-COFINA

Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the

Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA

have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF

No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "<u>Settlement

Agreement</u>"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding

between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has

been dismissed with prejudice following the approval of the compromise and settlement of the

Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended

Confirmation Order, claims, such as the Partial COFINA Bondholder Claims, that arose from or

relate to the relationship of the Commonwealth and COFINA were released.    Amended

Confirmation Order, ¶ 29(f).[8]  For all of these reasons, the Partial COFINA Bondholder Claims

---

[8] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or
not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,
unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or

should be disallowed because these claims based on an alleged ownership interest in COFINA Bonds have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

36. Because of one or more of the foregoing reasons, the Commonwealth respectfully requests that the Claims to Be Partially Disallowed be disallowed in part. In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Seventy-Ninth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Duplicate and No Liability Bondholder Claims*, dated December 11, 2020, attached hereto as **Exhibit B**.

## NOTICE

37. In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this Two Hundred Seventy-Ninth Omnibus Objection to (a) the individual creditors subject to this Two Hundred Seventy-Ninth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. The notice for this Two Hundred Seventy-Ninth Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations are being filed and served with the Two Hundred Seventy-Ninth Omnibus Objection and supporting exhibits attached hereto.

---

asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise." Plan § 1.53.

The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

38.     This Two Hundred Seventy-Ninth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in these Title III proceedings to object to any portion of the Claims to Be Partially Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

39.     No prior request for the relief sought in this Two Hundred Seventy-Ninth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

19

Dated: December 11, 2020
      San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico*

**Fecha de la vista: 27 de enero de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 13 de enero de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS
ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S)
RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*: | PROMESA |
| | Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | Núm. 17 BK 3283-LTS |
| como representante del | (Administrado Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., | **La presente radicación guarda relación con el ELA.** |
| Deudores.[1] | |

**DUCENTÉSIMA SEPTUAGÉSIMA NOVENA OBJECIÓN GLOBAL (SUSTANTIVA)
DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DE LOS
BONISTAS DUPLICADAS Y NO RELACIONADAS CON LA RESPONSABILIDAD**

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como representante del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente ducentésima septuagésima novena objeción global (la "Ducentésima septuagésima novena objeción global") en la que se solicita que se rechacen partes de las evidencias de reclamaciones que figuran en el **Anexo A** del presente documento, cada una de las cuales pretende estar basada en bonos y *i*) se basa parcialmente en montos por los que el Deudor no tiene responsabilidad, puesto que la reclamación alega responsabilidad sobre la base de una participación patrimonial en bonos emitidos por la AFICA (según se define abajo), que no es deudor de Título III y cuyas responsabilidades no están garantizadas por el ELA; y/o *ii*) se basa parcialmente en montos por los que el Deudor no tiene responsabilidad, puesto que la reclamación alega responsabilidad sobre la base de una participación patrimonial en bonos emitidos por la AAA (según se define abajo), que no es deudor de Título III, por montos en relación con los cuales el ELA no ha garantizado ningún reembolso; y/o *iii*) se basa parcialmente en una participación patrimonial en bonos emitidos por COFINA (según se define abajo); y/o *iv*) es parcialmente duplicada en relación con una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos. Una parte de cada reclamación que aparece en el **Anexo A** del presente documento seguirá estando radicada contra el ELA. En apoyo de la Ducentésima septuagésima novena objeción global, el ELA manifiesta respetuosamente lo siguiente:

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

2

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

### A.  Órdenes de Fecha Límite

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). También el 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III de COFINA", y junto con el Caso de Título III del ELA, los "Casos de Título III").

4.      El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255][3] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B)*

---

[3]   Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

*aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título III del ELA. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

### B. Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III del ELA

5.      Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación principal contra el deudor pertinente, en su propio nombre y en el de todos los tenedores de reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales") en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés de la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (la "AFI"), la Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental (la "AFICA"), la Autoridad de Edificios Públicos de Puerto Rico (la "AEP"), la

Autoridad del Distrito del Centro de Convenciones de Puerto Rico (la "ADCC") y la Universidad

de Puerto Rico (la "UPR").

6.      *ACT*: la ACT es una corporación pública y organismo del ELA, que constituye una

entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-

1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la

construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en

el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos.

*Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias

series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): i) la Resolución

núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y ii) la Resolución núm.

98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21 de mayo de 2017,

la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos

emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400

millones del monto principal de los bonos emitidos conforme a la Resolución de 1998 quedan

igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la

ACT. En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de

reclamaciones principales en el marco del Caso de Título III del ELA (la "Reclamaciones

Principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente

y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas de acción,

derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA,

conforme a derecho o equidad. . . ." *Véase* Adenda de la Evidencia de reclamaciones núm. 121053,

¶ 15; Adenda de la Evidencia de reclamaciones núm. 120982, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 115380, ¶ 15.[4]

7.    ***AFI***: la AFI es una filial del Banco Gubernamental de Fomento (el "BGF") y constituye una dependencia del Gobierno del ELA. La AFI fue creada en 1988 mediante la Ley núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa y de otro tipo al ELA, a sus corporaciones públicas y a otras dependencias encargadas del desarrollo y del funcionamiento de las infraestructuras. Actuando en nombre de los tenedores de varios bonos y pagarés emitidos por la AFI (conjuntamente, "Bonos de la AFI"), BNYM, US Bank y UMB Bank, N.A radicaron evidencias de reclamaciones principales contra el ELA (conjuntamente, las "Reclamaciones Principales de la AFI"). US Bank radicó una evidencia de reclamación principal en relación con determinados Bonos de la AFI, que fue registrada por Prime Clerk como Evidencia de reclamación núm. 13386, en nombre de los tenedores de los Bonos de la AFI relativos a impuestos sobre el ron (Bonos de renta de impuestos especiales, series 2005A, 2005B, 2005C y serie 2006), alegando "reclamaciones por montos contingentes y no liquidados en relación con intereses pagaderos a futuro, intereses devengados y que se acumulen en el futuro en lo referente a principal e intereses vencidos, tarifas y costos y reclamaciones por indemnización del Fiduciario que se incurran en el futuro en virtud de los Documentos de los bonos, así como por la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener el Fiduciario en relación con las obligaciones de Bonos pendientes, monto mínimo de $249,099,446.17. . . ." Cláusula adicional de la Evidencia de reclamaciones núm. 13386, ¶ 26.

---

[4] Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime Clerk como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

6

8.     _**AFICA**_: la AFICA es una corporación pública y organismo gubernamental del ELA

creada por la Ley núm. 121 de la Asamblea Legislativa de Puerto Rico, aprobada el 27 de junio de

1977 (en su versión enmendada, complementada y codificada en las Leyes de Puerto Rico, título

12, § 1251 y siguientes.). Leyes de Puerto Rico, título 12, § 1254. La AFICA facilita el

financiamiento de proyectos para fomentar el desarrollo económico del ELA, lo que incluye

medidas para la promoción y construcción de nuevas infraestructuras industriales, comerciales,

turísticas, agrícolas, educativas, médicas y de control medioambiental. La AFICA emitió ciertos

bonos de renta para facilidades educativas de la Autoridad para el Financiamiento de Facilidades

Industriales, Turísticas, Educativas, Médicas y de Control Ambiental de Puerto Rico (Proyecto

Plaza Universitaria) (los "Bonos de Plaza Universitaria"). BNYM actúa como fiduciario de los

Bonos de Plaza Universitaria, y radicó una evidencia de reclamación principal, que fue registrada

por Prime Clerk, LLC, como Evidencia de reclamación núm. 68271, en la que se alega "una

reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las

reclamaciones, causas de acción, derechos y/o remedios que el Fiduciario o los tenedores de los

Bonos tengan o puedan tener contra el ELA, conforme a o equidad", lo que incluye "por

incumplimiento de pactos, falta de financiamiento de las sumas solicitadas, fideicomiso ficto o por

la desviación potencial de rentas prometidas para el pago de los Bonos". Adenda de la Evidencia

de reclamación núm. 68271, ¶ 15.

9.     _**AEP**_: la AEP presuntamente emitió Bonos de Renta para financiar edificios de

oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas y organismos

del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación con determinados

bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de

reclamación núm. 62833 (los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de

7

la AEP, radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA

por todos los montos pendientes de pago adeudados (la "Reclamación Principal de la AEP"), que

fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 62833.[5] La

Reclamación Principal de la AEP alega reclamaciones liquidadas por aproximadamente $4000

millones en concepto de capital presuntamente impagado, $160 millones en concepto de intereses

presuntamente impagados y reembolso de comisiones y gastos de los agentes fiscales, además de

reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de

la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las

obligaciones de Bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que

pretendan actuar en nombre del ELA". . . ."  Cláusula de la Reclamación Principal de la AEP, ¶¶

19-21.

10.    ___ADCC___: la ADCC es una corporación pública creada por la Ley núm. 142, del 4 de

octubre de 2001, enmendada por la Ley núm. 185, del 3 de agosto de 2004, para desarrollar,

gestionar y supervisar el Centro de Convenciones de Puerto Rico, el Coliseo de Puerto Rico José

Miguel Agrelot, el aeropuerto ejecutivo Ribas Dominicci y otros proyectos adyacentes de

desarrollo hotelero, comercial y residencial en territorio del Distrito. BNYM actúa como fiduciario

en relación con determinados Bonos de Renta de Impuestos por ocupación hotelera, emitidos por

la ADCC (los "Bonos de la ADCC"), y en nombre de los tenedores de los Bonos de la ADCC

radicó una evidencia de reclamación principal contra el ELA, que fue registrada por Prime Clerk,

LLC, como Evidencia de reclamación núm. 37319 (la "Reclamación Principal de la ADCC"). La

Reclamación Principal de la ADCC alega una "reclamación contingente y no liquidada contra el

---

[5]  la Evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación núm.
13351, que fue radicada inicialmente por el Agente Fiscal.

ELA en razón de la totalidad de las reclamaciones, causas de acción, derechos y/o remedios que

el Fiduciario o los Propietarios puedan tener contra el ELA conforme a derecho o equidad sobre

la base de o en relación con el Acuerdo de Fideicomiso, el Acuerdo de Empeño, los Bonos o los

Bienes en Fideicomiso, lo que incluye, entre otras cosas, violaciones a la Constitución de los

Estados Unidos y a la Constitución de Puerto Rico, infracciones a la Ley para la Supervisión,

Administración y Estabilidad Económica de Puerto Rico, Título 48 U.S.C., § 2101 y siguientes, lo

que incluye, entre otras cosas, la sección 407 de dicho cuerpo legal, injerencia dolosa con el

contrato, conversión, fraude, instigación fraudulenta, transmisión fraudulenta, tergiversación,

enriquecimiento injusto, fideicomiso ficto o en equidad, subordinación en equidad,

incumplimiento contractual, indemnización, reembolso o contribución que hayan sido alegados, o

puedan alegarse, en el marco de los litigios actuales o futuros, por el Fiduciario, uno de los

Propietarios, la Autoridad [la ADCC] y/o el ELA, entre dichas entidades o con la participación de

estas". Adenda de la Evidencia de reclamación de la ADCC, ¶ 11.

11.   _**UPR**_: la UPR es presuntamente "una corporación pública del ELA que integra un

sistema orgánico de educación superior", conforme a la Ley núm. 1 de la Asamblea Legislativa de

Puerto Rico, aprobada el 20 de enero de 1966 (18 L.P.R.A. §§ 601-614). Cláusula Adicional de la

Evidencia de reclamación núm. 13382, ¶ 5. US Bank actúa como fiduciario en relación con

determinados Bonos de renta de refinanciamiento del sistema universitario, series P y Q emitidos

por la UPR, y radicó una evidencia de reclamación principal, que fue registrada por Prime Clerk,

LLC, como Evidencia de reclamación núm. 13382 (la "Reclamación Principal de la UPR"). La

Reclamación Principal de la UPR alega "reclamaciones contingentes y no liquidadas contra el ELA

por todos los derechos y titularidades que U.S. Bank como Fiduciario tenga o pueda tener, de la

naturaleza o tipo que fueran, en relación con el Acuerdo de Fideicomiso, o de conformidad con

9

otros documentos o leyes aplicables, lo que incluye incumplimiento de pactos o desviación potencial de rentas prometidas para el pago de los Bonos, en la actualidad o en el futuro". *Id.*, ¶ 12.

**C. Deuda de bonos emitidos por la Autoridad para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental**

12.    En 2004, la AFICA emitió Bonos de Renta de Educación Superior, serie 2004 (los "Bonos de Renta de Educación Superior de 2004"), por un monto total de $36,575,000, para, entre otras cosas, financiar en parte las mejoras de la Universidad Interamericana de Puerto Rico (la "Universidad"). Los Bonos de Renta de Educación Superior de 2004 son pagaderos únicamente a través del reembolso de un acuerdo de préstamo celebrado entre la AFICA y la Universidad. La declaración de oferta emitida en relación con los Bonos de Renta de Educación Superior de 2004 dispone que los bonos "no constituyen endeudamiento del Estado Libre Asociado de Puerto Rico ni de ninguna de sus subdivisiones políticas, salvo [la AFICA]. Ni el Estado Libre Asociado de Puerto Rico ni ninguna de sus subdivisiones políticas, salvo [la AFICA], tienen la responsabilidad de pagar los [Bonos de Renta de Educación Superior de 2004].". *Véase, por ejemplo*, Autoridad de Puerto Rico para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental, Declaración de Oferta, Bonos de Renta de Educación Superior, Serie 2004 (Proyecto Universidad Interamericana de Puerto Rico), *disponible en* https://emma.msrb.org/Security/Details/AE85D63796A792BF63CEADCBC9EDA83EF.

**D. Deuda de bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

13.    La AAA fue creada de conformidad con la Ley núm. 40 el 1 de mayo de 1945. La AAA es una corporación del Gobierno de Puerto Rico y fue creada para la prestación de los servicios de suministro de agua y alcantarillado en la isla. 22 L.P.R.A. § 144.

14.     La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g).

Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA

emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7

de marzo de 2008 (la "Resolución núm. 1583"). En 2008, la AAA emitió unos bonos de renta,

Serie A, por un monto del principal de $1,316,204,456 (los "Bonos Prioritarios Serie A de 2008")

Además en 2012, la AAA emitió simultáneamente unos bonos de renta, Serie 2012 A, por un monto

del principal de $1,800,450,00 (los "Bonos Prioritarios Serie A de 2012") y unos bonos de renta,

Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos Prioritarios Serie B de

2012", y junto con los Bonos Prioritarios Serie A de 2012 y los Bonos Prioritarios Serie A de 2008,

los "Bonos de Gravamen Prioritarios de la AAA").

15.     Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y

siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de

la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, en el EMMA se

indica que la AAA no ha enviado ninguna notificación de incumplimiento en relación con los

Bonos de Gravamen Prioritarios de la AAA.[6] Además, el ELA no ha garantizado el reembolso de

los Bonos de Gravamen Prioritarios. En consecuencia, las declaraciones de oferta relativas a los

Bonos de Gravamen Prioritarios de la AAA indican que "no constituyen deuda del Estado Libre

Asociado de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas, con la

excepción de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos de

---

[6] *Véase, por ejemplo*,
 https://emma.msrb.org/Security/Details/A77AAAB374BB0A541A55D2D2509BABD8F;
 https://emma.msrb.org/Security/Details/AEDD756D8E31FDC19BD8CDE94EDCE712E.

dichos municipios u otras subdivisiones políticas, con la excepción de [la AAA], será responsable

por el pago del principal o de los intereses sobre los referidos Bonos".[7]

**E. Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA**

16.       COFINA es una corporación pública y organismo del ELA, que constituye una

entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91

de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre

los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión

enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias,

COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones

para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de

Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los

"Bonos COFINA"). El Bank of New York Mellon actúa como Fiduciario con respecto a los Bonos

COFINA.

17.       La Junta de Supervisión radicó el *Tercer plan enmendado de ajuste de la*

*Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III*

(el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan

y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

18.       El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la

conciliación de la controversia sobre si, luego de examinar todas las contestaciones y

reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos

---

[7] *Véase, por ejemplo,* Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie A
(Gravamen Prioritario), 7 de marzo de 2008, disponible en
https://emma.msrb.org/Security/Details/AF1172BE7598AF5023E511B5CC65A4AD4.

sobre la venta y uso supuestamente prometidos por COFINA para garantizar la deuda son propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5048]. Ese mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una *Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III* [ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El Plan entró en vigor el 12 de febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la Fecha de entrada en vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

### F. Evidencias de reclamaciones radicadas contra el ELA, procedimientos relativos a objeciones globales y objeciones a reclamaciones

19.     Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

20.     De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

21.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

22.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a

14

procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

23.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, a la fecha el Tribunal ha celebrado 12 vistas vinculadas con más de 140 objeciones generales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación ("HTA") y/o el Sistema de Retiro de Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("ERS"). Según las resoluciones y órdenes del Tribunal hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43 billones en responsabilidad contra el ELA, COFINA, HTA y ERS fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

24.    Esta Ducentésima septuagésima novena objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

25.     Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye una prueba *prima facie* de validez de la reclamación, *véase* R. R. del Proc. de Quiebr. 3001(f), aplicable al presente procedimiento en virtud de la sección 310 de PROMESA, la parte que objetante podrá superar dicha evidencia *prima facie* con evidencia que, de creerse, refutaría al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso prima facie del reclamante". (se omite cita)).

26.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

27.     La Ducentésima septuagésima novena objeción global pretende que se rechacen partes de las evidencias de reclamaciones que figuran en el **Anexo A** del presente documento, cada una de las cuales pretende estar basada en bonos y i) se basa parcialmente en montos por los que el Deudor no tiene responsabilidad, puesto que la reclamación alega responsabilidad sobre la base de una participación patrimonial en bonos emitidos por la AFICA (según se define abajo), que no es deudor de Título III y cuyas responsabilidades no están garantizadas por el ELA; y/o ii) se basa

16

parcialmente en montos por los que el Deudor no tiene responsabilidad, puesto que la reclamación alega responsabilidad sobre la base de una participación patrimonial en bonos emitidos por la AAA, que no es Deudor de Título III, por montos en relación con los cuales el ELA no ha garantizado ningún reembolso; y/o iii) se basa parcialmente en una participación patrimonial en bonos emitidos por COFINA; y/o iv) es parcialmente duplicada en relación con una o más evidencias de reclamaciones radicadas contra el ELA en nombre de los tenedores de determinados bonos. Una parte de la reclamación seguirá estando radicada contra el ELA. El **<u>Anexo A</u>** del presente documento especifica además por qué cada una de las reclamaciones (conjuntamente, "<u>Reclamaciones que han de ser rechazadas parcialmente</u>") debe ser parcialmente rechazada.

### A. Ausencia de responsabilidad por reclamaciones basadas en los Bonos AFICA

28.    Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, determinadas partes de las Reclamaciones que han de ser rechazadas parcialmente pretenden alegar reclamaciones basadas en una presunta participación patrimonial en bonos emitidos por la AFICA, que no es deudor de Título III y cuyas responsabilidades no están garantizadas por el ELA (conjuntamente, las "<u>Reclamaciones parciales de los bonistas de la AFICA</u>").

29.    Cada una de las Reclamaciones parciales de los bonistas de la AFICA pretende alegar, en parte, varias responsabilidades contra el ELA vinculadas con los Bonos AFICA que no están garantizados por el ELA. La AFICA no es deudor de Título III y es una entidad aparte y jurídicamente independiente del ELA. Además, cada una de las declaraciones de oferta emitidas en relación con los Bonos AFICA dispone que los Bonos AFICA no constituyen deuda del ELA ni de ninguna de sus subdivisiones políticas, con la excepción de AFICA. Ninguna de las Reclamaciones parciales de los bonistas de la AFICA proporciona fundamento alguno para alegar una reclamación contra el ELA por los bonos emitidos por la AFICA que no están garantizados

17

por el ELA ni constituyen su deuda. En consecuencia, el ELA no es responsable por las Reclamaciones parciales de los bonistas de la AFICA.

### B. Reclamaciones Duplicadas por Bonos

30.    Según se identifica en el **Anexo A** del presente documento, determinadas partes de las Reclamaciones que han de ser rechazadas parcialmente pretenden alegar responsabilidad sobre la base de los bonos emitidos por la ACT y la AFI (conjuntamente, las "Reclamaciones parcialmente duplicadas por bonos").

31.    Cada una de las Reclamaciones parcialmente duplicadas por bonos pretende alegar responsabilidad contra el ELA vinculada con uno o más bonos que están duplicados en relación con una o más Reclamaciones Principales que, según se explicó anteriormente, fueron radicadas en el marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos emitidos por la ACT, la AFI, la AFICA, la AEP, la ADCC y/o la UPR. Si las Reclamaciones parcialmente duplicadas por bonos no son rechazadas parcialmente, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras partes interesadas en el Caso de Título III del ELA. Los tenedores de las Reclamaciones parcialmente duplicadas por bonos no se verán perjudicados por el hecho de que se rechacen parcialmente sus reclamaciones, puesto que las responsabilidades relacionadas con las Reclamaciones parcialmente duplicadas por bonos figuran en una o más Reclamaciones Principales.

### C. Ausencia de responsabilidad por los Bonos de Gravamen Prioritarios de la AAA

32.    Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, en parte, en la

18

supuesta participación patrimonial en los bonos emitidos por la AAA (conjuntamente, las "Reclamaciones parciales de los bonistas de la AAA").

33.     Cada una de las Reclamaciones parciales de los bonistas de la AAA alega responsabilidades vinculadas con los Bonos de Gravamen Prioritarios de la AAA emitidos por la AAA, que no es Deudor de Título III, y es una entidad aparte y jurídicamente independiente del ELA. Cada una de las Reclamaciones parciales de los bonistas de la AAA pretende la recuperación por responsabilidades vinculadas con los Bonos de Gravamen Prioritarios emitidos por la AAA. Sin embargo, la AAA no es un Deudor de Título III y es una entidad aparte y jurídicamente independiente del ELA. Además, ni el ELA ni ningún otro organismo o subdivisión política del ELA han garantizado el reembolso de los Bonos de Gravamen Prioritarios de la AAA. Sin embargo, ninguna de las Reclamaciones parciales de los bonistas de la AAA cumple con las normas aplicables porque no proporcionan un fundamento para alegar una reclamación contra el ELA por los bonos emitidos por la AAA que no están garantizados por el ELA. Como consecuencia de dicho incumplimiento de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar la validez de las Reclamaciones parciales de los bonistas de la AAA. Puesto que las Reclamaciones parciales de los bonistas de la AAA son inejecutables contra el ELA y sus bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

**D.  Reclamaciones relativas a los bonos COFINA**

34.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, algunas Reclamaciones que han de ser rechazadas pretenden alegar reclamaciones basadas, en parte, en una supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones parciales de los bonistas de COFINA").

35. Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido rechazado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones tales como las Reclamaciones parciales de los bonistas de COFINA que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f).[8] Por todos esos motivos, las Reclamaciones parciales de los bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una presunta participación patrimonial en los Bonos COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

---

[8] Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, accidental, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento, independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, accidental, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

36. Por uno o más de los motivos mencionados, el ELA solicita respetuosamente que las Reclamaciones que han de ser rechazadas parcialmente sean rechazadas parcialmente. En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo de la Ducentésima septuagésima novena objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones de los bonistas duplicadas y no relacionadas con la responsabilidad*, de fecha 11 de diciembre de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

37. De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, el ELA notifica la presente Ducentésima septuagésima novena objeción global a) a los acreedores individuales objeto de esta Ducentésima septuagésima novena objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a la Ducentésima septuagésima novena objeción global se adjunta al presente como **Anexo C**. Se están radicando y notificando traducciones al español junto con la Ducentésima septuagésima novena objeción global y los anexos justificativos adjuntos al presente documento. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

38. La presente Ducentésima septuagésima novena objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos procedimientos radicados conforme al Título III, a objetar a cualquiera de las partes de las Reclamaciones que han de ser rechazadas parcialmente o a cualesquiera otras reclamaciones por

21

los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra

objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni

ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el

sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones

contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera

otras partes interesadas en dichos procedimientos radicados conforme Título III, a impugnar

cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o

requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir

cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del

Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a

cualesquiera otras partes interesadas en estos procedimientos radicados conforme Título III,

conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## **AUSENCIA DE SOLICITUDES PREVIAS**

39.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima

septuagésima novena objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en

la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el

remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios

que se consideren justos.

22

Fecha: 11 de diciembre de 2020
San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera,
local 800
San Juan, PR 00918-1813
Tel.: (787) 764-8181
Fax: (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.: (212) 969-3000
Fax: (212) 969-2900

*Abogados de la Junta de Supervisión
y Administración Financiera para
Puerto Rico como representante del
Estado Libre Asociado de Puerto
Rico*

23