Hearing Date: January 27, 2021 at 9:30AM (Atlantic Standard Time)
Response Deadline: January 13, 2021 at 4:00PM (Atlantic Standard Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                 Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and HTA.** |

---

### TWO HUNDRED EIGHTY-SECOND OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO DUPLICATE SECONDARILY INSURED BOND CLAIMS

---

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways

and Transportation Authority ("HTA," and together with the Commonwealth, the "Debtors"), by

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' sole Title III representative pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this two hundred eighty-second omnibus objection (the "Two Hundred Eighty-Second Omnibus Objection") to proofs of claim that are duplicative of one or more master proofs of claim asserted against the Commonwealth or HTA on behalf of the holders of certain bonds, each as listed on **Exhibit A** hereto, and in support of the Two Hundred Eighty-Second Omnibus Objection, respectfully represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.     The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case"). On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "HTA Title III Case," and together with the

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order

granting the joint administration of the Title III Cases for procedural purposes only.  ECF No.

537.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing
Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of
Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines
and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice
Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in

the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the

Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors,

the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and
(B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar

Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic

Time).

**B.      Bond Debt Master Proofs of Claim – HTA Title III Case**

5.      HTA is a public corporation and instrumentality of the Commonwealth constituting

a corporate and political entity independent and separate from the Commonwealth, created under

Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA

is  responsible  for  the  construction,  operation,  and  maintenance  of  highways  and  other

transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act

authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued

several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-

---

[3]  All ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").   As of May 21, 2017, HTA's petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.

6.    On behalf of the holders of the HTA Bonds, BNYM filed three master proofs of claim in the HTA Title III Case (collectively, the "HTA Title III Master Claims"): Proof of Claim No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574, asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2 billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in liabilities plus unliquidated amounts.

7.    Certain bonds issued by HTA have been insured by one of several municipal bond insurers, either on the primary market or on the secondary market.  Municipal bond insurance is obtained on the primary market when the municipality issuing the bonds engages an insurance company to underwrite an insurance policy for that series of bonds.  In the event that a bond is not insured on the primary market, holders of such uninsured bonds may elect to obtain insurance via the secondary market.  Holders of uninsured bonds who seek to obtain insurance in the secondary market contract directly with a municipal bond insurer and the original issuer is not part of this contract process.   When a holder of an uninsured bond obtains an insurance policy on the secondary market, a new CUSIP number is issued which corresponds to the original CUSIP numbers assigned to the bonds at the time of issuance.  Certain bonds issued by HTA have been

insured on the secondary market and, accordingly, have been issued new CUSIP numbers which
correspond to bonds issued by HTA bearing original CUSIP numbers (the "Secondarily Insured
HTA Bonds").

**C.      PBA Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

8.      ***PBA***—Puerto Rico Public Buildings Authority ("PBA") purportedly issued
Revenue Bonds to finance office buildings and other facilities leased to various departments,
public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve
as fiscal agents for certain revenue bonds issued by PBA (as identified in Footnote 3 of Proof of
Claim No. 62833, the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a
master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the
"PBA Master Claim," and together with the HTA Title III Master Claims, the "Master Proofs of
Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[4]  The PBA Master
Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160
million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents,
in addition to unliquidated and contingent claims for any and all amounts owed "on account of any
and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations,
whether known or unknown against the Commonwealth and all those purporting to act on the
Commonwealth's behalf . . . ."  Rider to PBA Master Claim, ¶¶ 19-21.

9.      Certain bonds issued by PBA have been insured by one of several municipal bond
insurers, either on the primary market or on the secondary market.  As set forth above, when a
holder of an uninsured bond obtains an insurance policy on the secondary market, a new CUSIP

---

[4]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was
initially filed by the Fiscal Agent.

number is issued which corresponds to the original CUSIP numbers assigned to the bonds at the time of issuance.  Certain bonds issued by PBA that have been insured on the secondary market have been issued new CUSIP numbers which correspond to bonds issued by PBA bearing original CUSIP numbers (the "Secondarily Insured PBA Bonds").

**D.     Proofs of Claim, Omnibus Objection Procedures, and Claim Objections**

10.     To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

11.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Approximately 2,250 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

12.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively,

the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English

and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with

the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions*

*of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

13.     In the continued interest of resolving any unnecessary proofs of claim in an efficient

manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other

things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the

number of claims that may be included on an objection, and to approve additional forms of notice.

*Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court

granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,*

*(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice,*

*and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection

Procedures").

14.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus

Objection Procedures, to date the Court has held 12 hearings related to over 140 omnibus

objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("COFINA"), HTA, and/or Employees Retirement System of the Government of the

Commonwealth of Puerto Rico ("ERS").  Based upon rulings and orders of the Court to date,

approximately 56,000 claims asserting $43 trillion in liability against the Commonwealth,

COFINA, HTA, and ERS have been disallowed and will be expunged from the claims registry in

the Title III proceedings upon entry of final orders.

15.     This Two Hundred Eighty-Second Omnibus Objection is filed in accordance with the Court's Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

16.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

17.     The Two Hundred Eighty-Second Omnibus Objection seeks to disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, claims that are duplicative of other proofs of claim filed in the Title III Cases.

18.     Each claim identified in **Exhibit A** hereto (collectively, the "Claims to Be Disallowed") purports to assert liability against the Commonwealth or HTA associated with either (*i*) Secondarily Insured HTA Bonds, which correspond to HTA bonds issued by HTA that are duplicative of liabilities asserted by one or more Master Claims (the "Secondarily Insured HTA Bond Claims"), or (*ii*) Secondarily Insured PBA Bonds, which correspond to PBA bonds issued by PBA that are duplicative of liabilities asserted by one or more Master Claims (the "Secondarily Insured PBA Bond Claims," and together with the Secondarily Insured HTA Bond Claims, the "Duplicative Bond Claims").

19.     Each of the Secondarily Insured HTA Bond Claims and the Secondarily Insured PBA Bond Claims asserts liabilities associated with Secondarily Insured HTA Bonds or Secondarily Insured PBA Bonds.  The CUSIP numbers associated with such Secondarily Insured HTA Bonds or such Secondarily Insured PBA Bonds correspond to bonds issued by HTA or PBA bearing original CUSIP numbers.  Those original CUSIP numbers, which reflect bond issuances

in which the claimants hold ownership interests, are listed in one or more Master Claims. Therefore, the Secondarily Insured HTA Bond Claims and the Secondarily Insured PBA Bond Claims assert liabilities associated with bonds issued by HTA that are duplicative of liabilities asserted by one or more Master Claims.

20.     As a result, the Duplicative Bond Claims should be disallowed in their entirety. Any failure to disallow the Duplicative Bond Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth or HTA, to the detriment of other stakeholders in the Title III Cases.  The holders of the Duplicative Bond Claims will not be prejudiced by the disallowance of their claims because the liabilities associated with their claims are subsumed within one or more Master Proofs of Claim.

21.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Two Hundred Eighty-Second Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico and Puerto Rico Highways and Transportation Authority to Duplicate Secondarily Insured Bond Claims*, dated December 11, 2020, attached hereto as **Exhibit B**.

### **NOTICE**

22.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Two Hundred Eighty-Second Omnibus Objection to (a) the individual creditors subject to this Two Hundred Eighty-Second Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.   A copy of the notice for this Two Hundred Eighty-Second Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Two Hundred Eighty-Second Omnibus Objection and all of the exhibits attached hereto are being filed

with this objection and will be served on the parties.  The Debtors submit that, in light of the nature

of the relief requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

23.     No prior request for the relief sought in this Two Hundred Eighty-Second Omnibus

Objection has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

Dated: December 11, 2020
San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative for the Commonwealth of
Puerto Rico and Puerto Rico Highways and
Transportation Authority*

Fecha de la vista: 27 de enero de 2021, a las 9:30 a.m. (AST)
Fecha límite para responder: 13 de enero de 2021, a las 4:00 p.m. (AST)

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

*In re*:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

    como representante del

ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*,

                Deudores.[1]

PROMESA
Título III

Núm. 17 BK 3283-LTS

(Administrado Conjuntamente)

**La presente radicación guarda relación con el ELA y la ACT.**

**DUCENTÉSIMA OCTOGÉSIMA SEGUNDA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES DUPLICADAS POR BONOS ASEGURADOS EN EL MERCADO SECUNDARIO**

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y denominados conjuntamente con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican la presente ducentésima octogésima segunda objeción global (la "Ducentésima octogésima segunda objeción global") a evidencias de reclamaciones que están duplicadas con respecto a una o más evidencias de reclamaciones principales alegadas contra el ELA o la ACT en nombre de los tenedores de determinados bonos, según consta en el **Anexo A** del presente documento, y en apoyo de la Ducentésima octogésima segunda objeción global manifiestan respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

A.      **Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la

sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el

"Caso de Título III del ELA"). El 21 de mayo de 2017, la Junta de Supervisión emitió una

certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó

una petición voluntaria de remedio para la ACT conforme a la sección 304(a) de PROMESA,

iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III de la ACT",

y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el

Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III

únicamente con fines procesales. ECF núm. 537.[3]

4.    El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije*

*fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y*

*la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Por la *Orden que*

*A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la*

*forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el

Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y

procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III.

Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el

Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de*

*reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

---

[3]  Todas las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra
Núm. 17 BK 3283-LTS.

**B.**     **Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de
Título III de la ACT**

5.     La ACT es una corporación pública y organismo del ELA, que constituye una
entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-
1965 de la Asamblea Legislativa del ELA ("Ley para crear la ACT"). La ACT se encarga de la
construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en
el ELA. *Véase* 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos.
*Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias
series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i)* Resolución
núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y *ii)* Resolución núm. 98-
06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21 de mayo de 2017, la
fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos
emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400
millones del monto principal de los bonos emitidos conforme a la Resolución de 1998 quedan
igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la
ACT.

6.     En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias
de reclamaciones principales en el marco del Caso de Título III de la ACT (conjuntamente, las
"Reclamaciones Principales de Título III de la ACT"): la Evidencia de reclamación núm. 37245,
por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución
de 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no
liquidados; la Evidencia de reclamación núm. 38574, por la que se reclama, en nombre de los
tenedores de los bonos emitidos conforme a la Resolución de 1998, aproximadamente $3200

4

millones en concepto de responsabilidad más montos no liquidados; y la Evidencia de reclamación núm. 32622, por la que se reclama, en nombre de los tenedores de los bonos subordinados emitidos conforme a la Resolución de 1998, aproximadamente $279 millones en concepto de responsabilidad más montos no liquidados.

7.       Determinados bonos emitidos por la ACT han sido asegurados por una o más aseguradoras de bonos municipales en el mercado primario o en el secundario. El seguro de bonos municipales se obtiene en el mercado primario cuando el municipio emisor de los bonos contrata una compañía de seguros para suscribir una póliza de seguro en relación con dicha serie de bonos. En el caso de que un bono no se asegure en el mercado primario, los tenedores de tales bonos no asegurados podrían optar por obtener un seguro a través del mercado secundario. Los tenedores de bonos no asegurados que busquen obtener un seguro en el mercado secundario entran en una relación contractual directamente con una aseguradora de bonos municipales, por lo que el emisor original no es parte en dicho proceso de contratación. Cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de su emisión. Determinados bonos emitidos por la ACT han sido asegurados en el mercado secundario y, en consecuencia, se han emitido nuevos números CUSIP que corresponden a los bonos emitidos por la ACT que llevan números CUSIP originales (los "Bonos ACT asegurados en el mercado secundario").

**C.       Evidencias de reclamaciones principales relativas a la deuda de los bonos de la AEP: Caso de Título III del ELA**

8.       ***AEP***: la Autoridad de Edificios Públicos de Puerto Rico (la "AEP") presuntamente emitió Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios

departamentos, agencias públicas y organismos del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP (conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamación núm. 62833, los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal de la AEP", y junto con las Evidencias de Reclamaciones Principales de Título III de la ACT, las "Evidencias de Reclamaciones Principales"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 62833.[4] La Reclamación Principal de la AEP alega reclamaciones liquidadas por aproximadamente $4000 millones en concepto de capital presuntamente impagado, $160 millones en concepto de intereses presuntamente impagados y reembolso de comisiones y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA. . . ." Cláusula Adicional de la Reclamación Principal de la AEP, ¶¶ 19-21.

9.      Determinados bonos emitidos por la AEP han sido asegurados por una o más aseguradoras de bonos municipales en el mercado primario o en el secundario. Como se señaló anteriormente, cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de su emisión. Determinados bonos emitidos por

---

[4]  La Evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación núm. 13351, que fue radicada inicialmente por el Agente Fiscal.

la AEP que han sido asegurados en el mercado secundario han recibido nuevos números CUSIP

que corresponden a los bonos emitidos por la AEP que llevan números CUSIP originales (los

"Bonos AEP asegurados en el mercado secundario").

**D.      Evidencias de reclamaciones, procedimientos relativos a objeciones globales y
objeciones a reclamaciones**

10.    Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de

reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas

evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones

radicadas contra los Deudores, además de los montos no liquidados reclamados.

11.    De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA.

Aproximadamente 2,250 evidencias de reclamaciones han sido radicadas en relación con la ACT,

o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las

Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en

absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente,

no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación

con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores

determinen si la reclamación es válida.

12.    Para resolver eficazmente el mayor número posible de las evidencias de

reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su

*Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a*

*objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de*

*Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos

Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden A) que aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

13.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden A) que apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden A) que aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas*

*de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los
"Procedimientos Enmendados relativos a Objeciones Globales").

14.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los
Procedimientos Enmendados relativos a Objeciones Globales, a la fecha el Tribunal ha celebrado
12 vistas vinculadas con más de 140 objeciones generales radicadas por el ELA, la Corporación
del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y
Transportación ("HTA") y/o el Sistema de Retiro de Empleados del Gobierno del Estado Libre
Asociado de Puerto Rico ("ERS"). Según las resoluciones y órdenes del Tribunal hasta la fecha,
aproximadamente 56,000 reclamaciones que reivindicaban $43 billones en responsabilidad contra
el ELA, COFINA, HTA y ERS fueron rechazadas y serán retiradas del registro de
reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas
las órdenes finales.

15.     Esta Ducentésima octogésima segunda objeción global se radica de conformidad
con los Procedimientos relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

16.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los
Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las
bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de
Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas
establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

17.     La Ducentésima octogésima segunda objeción global pretende que se rechacen, de
conformidad con la regla 3007(d)(1) de las Reglas Federales del Procedimiento de Quiebra y los
Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que estén duplicadas
con respecto a otras evidencias de reclamaciones radicadas en el marco de los Casos de Título III.

18.     Cada reclamación identificada en el **Anexo A** del presente documento
(conjuntamente, las "Reclamaciones que han de ser rechazadas") pretende alegar responsabilidad
contra el ELA o la ACT vinculada con, o bien *i*) los Bonos de la ACT asegurados en el mercado
secundario, que corresponden a los bonos de la ACT emitidos por la ACT que son duplicados con
respecto a las responsabilidades alegadas en una o más Reclamaciones Principales (las
"Reclamaciones por bonos de la ACT asegurados en el mercado secundario") o *ii*) los Bonos de la
AEP asegurados en el mercado secundario, que corresponden a los bonos de la AEP emitidos por
la AEP que son duplicados con respecto a las responsabilidades alegadas en una o más
Reclamaciones Principales (las "Reclamaciones por bonos de la AEP asegurados en el mercado
secundario", y junto con las Reclamaciones por bonos de la ACT asegurados en el mercado
secundario, las "Reclamaciones Duplicadas por Bonos").

19.     Cada una de las Reclamaciones por bonos de la ACT asegurados en el mercado
secundario y de las Reclamaciones por bonos de la AEP asegurados en el mercado secundario
alega responsabilidades vinculadas con los Bonos de la ACT asegurados en el mercado secundario
o con los Bonos de la AEP asegurados en el mercado secundario. Los números CUSIP vinculados
con dichos Bonos de la ACT asegurados en el mercado secundario o con dichos Bonos de la AEP
asegurados en el mercado secundario corresponden a los bonos emitidos por la ACT o la AEP que
llevan los números CUSIP originales. Dichos números CUSIP originales, que reflejan las
emisiones de los bonos en los que los reclamantes tienen participación patrimonial, se encuentran
incluidos en una o más Reclamaciones Principales. En consecuencia, las Reclamaciones por bonos
de la ACT asegurados en el mercado secundario y las Reclamaciones por bonos de la AEP
asegurados en el mercado secundario alegan responsabilidades vinculadas con bonos emitidos por

10

la ACT que constituyen duplicados en relación con las responsabilidades alegadas en una o más Reclamaciones Principales.

20.      Por lo tanto, las Reclamaciones Duplicadas por Bonos deben ser rechazadas en su totalidad. Si las Reclamaciones Duplicadas por Bonos no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA o la ACT en detrimento de otras partes interesadas en los Casos de Título III. Los tenedores de las Reclamaciones Duplicadas por Bonos no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades vinculadas con sus reclamaciones figuran en una o más Evidencias de reclamaciones principales.

21.      En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Ducentésima octogésima segunda objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones duplicadas por bonos asegurados en el mercado secundario*, de fecha 11 de diciembre de 2020, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

22.      De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Ducentésima octogésima segunda objeción global a) a los acreedores individuales objeto de esta Ducentésima octogésima segunda objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Ducentésima octogésima segunda objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima octogésima segunda objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con

la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza

del remedio solicitado, no es necesario enviar ninguna otra notificación.

## **AUSENCIA DE SOLICITUDES PREVIAS**

23.    No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima

octogésima segunda objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 11 de diciembre de 2020
     San Juan (Puerto Rico)

    Respetuosamente sometida,

    [*Firma en la versión en inglés*]
    Hermann D. Bauer
    USDC núm. 215205
    Carla García-Benítez
    USDC núm. 203708
    Daniel J. Pérez-Refojos
    USDC núm. 303909
    Gabriel A. Miranda
    USDC núm. 306704
    **O'NEILL & BORGES LLC**
    250 Avenida Muñoz Rivera, local 800
    San Juan, PR 00918-1813
    Tel.: (787) 764-8181
    Fax: (787) 753-8944

    [*Firma en la versión en inglés*]
    Martin J. Bienenstock (*pro hac vice*)
    Brian S. Rosen (*pro hac vice*)
    **PROSKAUER ROSE LLP**
    Eleven Times Square
    Nueva York, NY 10036
    Tel.: (212) 969-3000
    Fax: (212) 969-2900

    *Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico como representante del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico*