# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>Debtors. | PROMESA Title III<br><br>No. 17 BK 3283-LTS |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | No. 17 BK 4780-LTS |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS,<br><br>and | Adv. Proc. No. 19-00388-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
> THE PUERTO RICO ELECTRIC POWER AUTHORITY,
>
> as co-trustees respectively, of
>
> THE PUERTO RICO ELECTRIC POWER AUTHORITY
>
> Plaintiff.
>
> v.
>
> ALTOL CHEMICAL ENVIRONMENTAL LABORATORY INC.
> D/B/A ALCHEM LABORATORY, ALTOL ENVIRONMENTAL
> SERVICES, INC., CARLOS R. MENDEZ & ASSOCIATES,
> INSPECTORATE AMERICA CORPORATION, SAYBOLT LP,
> TRAFIGURA ARGENTINA S.A., TRAFIGURA BEHEER, B.V.,
> TRAFIGURA LIMITED, TRAFIGURA TRADING LLC, VITOL, INC.,
> AND VITOL S.A., INC.,
>
> Defendants.

## ORDER ON INTERVENTION AND STAYING LITIGATION

### I.      INTRODUCTION

This matter is before the Court on *The* Marrero *Plaintiffs' Motion to Intervene* (Dkt. No. 9) (the "Intervention Motion") filed on September 17, 2019. The Court has also received and reviewed the SCC's Opposition to the Intervention Motion (Dkt. No. 29) (the "SCC Opposition"), the UCC's Opposition to the Intervention Motion (Dkt. No. 30) (the "UCC Opposition"), the Defendants' Opposition to the Intervention Motion (Dkt. No. 31) (the "Defendants Opposition") and the Marrero Plaintiffs' Reply in support of the Intervention Motion (Dkt. No. 43) (the "Marrero Plaintiffs Reply"). Pursuant to this Court's December 10, 2019 Order staying litigation in this adversary proceeding through June 30, 2020 (Dkt. No. 61) (the "Stay Order"), which was subsequently extended to August 17, 2020 (Dkt. No. 68), the parties have also filed status

2

reports detailing their current positions as to the Intervention Motion.[2] After careful consideration of the parties' submissions, the Court ALLOWS IN PART AND DENIES IN PART the Intervention Motion in accordance with this Order. As explained herein, the Court also hereby stays all litigation in this matter pending the clarification and/or resolution of the legal issues raised in the Marrero Plaintiffs Adversary Proceeding (Case No. 20-AP-115).

## II.  BACKGROUND

The procedural history of the Intervention Motion is detailed in the parties' submissions and will only be recounted briefly herein. The Court assumes familiarity with the procedural history of this motion and the related class action in the United States District Court for the District of Puerto Rico, *Marrero-Rolon v. Autoridad De Energia Electrica De P.R.*, No. 3:15-cv-01167-JAG (D.P.R.) (the "Marrero Class Action").

### The Marrero Class Action

In short, on February 24, 2015, the Marrero Plaintiffs commenced the Marrero Class Action in which they alleged that PREPA, PREPA's fuel suppliers (the "Fuel Supplier Defendants"), and laboratories that test fuel quality (the "Lab Defendants" and together with the Fuel Supplier Defendants, the "Non-Debtor Defendants") engaged in a scheme involving overpayment by PREPA for fuel oil that did not meet contract or EPA specifications, and that pursuant to the scheme, PREPA employees received kickbacks and PREPA customers bore the

---

[2] The status reports received by the Court and considered in connection with the Intervention Motion are the UCC and SCC Status Report (Dkt. No. 69 and Dkt. No. 14052 in 17-BK-3283) (the "UCC/SCC Status Report"), the Defendants' Response to the UCC/SCC Status Report (Dkt. No. 71) (the "Defendants' Status Report"), the Marrero Plaintiffs' Responsive Status Report (Dkt. No. 72) (the "Marrero Plaintiffs' Status Report"), the UCC's Reply Status Report (Dkt. No. 73) (the "UCC Reply Status Report"), and the SCC's Limited Joinder to the UCC's Reply Status Report (Dkt. No. 74) (the "SCC Reply Status Report").

inflated fuel costs.  The Marrero Plaintiffs brought RICO claims against PREPA and the Non-Debtor Defendants and seek to recover the inflated fuel costs on behalf of PREPA's customers.

PREPA Files for Bankruptcy

The Marrero Class Action was automatically stayed on July 2, 2017 when PREPA commenced its Title III case, and the stay was extended to the Non-Debtor Defendants by order of the Puerto Rico District Court.  On June 22, 2018, the Marrero Plaintiffs filed proofs of claim in the Title III case that seek to recover from PREPA the same alleged damages that the Marrero Plaintiffs seek to recover in the Marrero Class Action.

The Avoidance Action and the Intervention Motion

On June 30, 2019, the SCC and the UCC (together, "Co-Plaintiffs") filed the instant avoidance action (the "Avoidance Action"), incorporating many of the factual allegations contained in the Marrero Class Action Complaint.  In the Avoidance Action, the Co-Plaintiffs, on behalf of PREPA, seek to claw back payments made to the Fuel Supplier Defendants and the Lab Defendants[3] prior to PREPA's declaration of bankruptcy.  The Co-Plaintiffs allege that these payments were constructively fraudulent because the transfers were made while PREPA was insolvent and contributed to PREPA's insolvency.  Amended Complaint ¶ 9.  It is also alleged in the Amended Complaint that "[t]he Plaintiffs are entitled to avoid the Transfers because the Non-Compliant Fuel Oil that PREPA received from the Supplier Defendants was not reasonably equivalent in value to the Transfers made by PREPA for such Non-Compliant Fuel Oil.  The Plaintiffs are also entitled to avoid the Transfers to the Lab Defendants as constructively

---

[3] The defendants in the Avoidance Action do not include Petrobras America, Inc., Petroleo Brasileiro S.A., Shell Trading (US) Company, and PetroWest, Inc.  Otherwise, the defendants in the Avoidance Action are the same parties named as defendants in the Marrero Class Action.

4

fraudulent to the extent that the Lab Defendants received payment from PREPA for services that they did not provide to PREPA." Id. ¶ 10. Unlike the Marrero Class Action, however, the instant Avoidance Action does not contain any allegations of wrongdoing on the part of PREPA.

In the Intervention Motion, the Marrero Plaintiffs seek essentially full intervention rights in the Avoidance Action as creditors of PREPA entitled to raise, appear and be heard pursuant to Bankruptcy Code Section 1109(b) and Rule 24(a)(1) of the Federal Rules of Civil Procedure. See Marrero Plaintiffs' Status Report at 5. Pursuant to the Stay Order, the parties to the Avoidance Action met and conferred in an attempt to reach agreement as to the Marrero Plaintiffs' intervention rights. The Stay Order also noted "the parties' general agreement that coordination is needed between this [Avoidance Action] and the Marrero [Class] Action" and asked the parties to include in their joint status report a proposal for the coordination of discovery between the two proceedings and for the resolution of common issues presented in both proceedings. Stay Order at 3-4.

## The Status Reports

The parties reported that they could not come to an agreement as to the scope of intervention and filed separate status reports detailing their respective positions. See UCC/SCC Status Report at ¶¶ 7-8. Because the status reports reflect the parties' current positions as to the Marrero Plaintiffs' intervention rights, the Court will focus on the status reports rather than the positions taken in the Intervention Motion and the oppositions thereto.

The Co-Plaintiffs argue that intervention is not appropriate in the Avoidance Action, but, "to the extent intervention is permitted and in an attempt to address the coordination suggested by the Court," the Co-Plaintiffs propose limited intervention rights. UCC/SCC Status

5

Report at ¶ 6. Specifically, the Co-Plaintiffs propose that all discovery shall be made available to the Marrero Plaintiffs and counsel to the Marrero Plaintiffs shall be entitled to attend any depositions taken in connection with the Avoidance Action. They propose that the Marrero Plaintiffs will not have the right to propound discovery requests or examine witnesses during depositions, hearings, or trial. They further propose that the Marrero Plaintiffs may file briefs stating their positions, restricted to those issues already raised by the original parties and may only be heard at oral argument if prior leave from the Court is granted. Finally, the Co-Plaintiffs request that they retain the right, in their sole discretion, to settle the Avoidance Action. See UCC/SCC Status Report, Proposed Order.

The Marrero Plaintiffs argue that intervention is warranted pursuant to Bankruptcy Code Section 1109(b) and Rule 24(a)(1) of the Federal Rules of Civil Procedure, and propose that, in addition to receiving all discovery taken in the Avoidance Action, the Marrero Plaintiffs be permitted to propound their own discovery, examine witnesses during depositions, hearings, and trial, file briefs stating their positions, and be heard at arguments without need for leave from the Court. The Marrero Plaintiffs agree that the Co-Plaintiffs have sole discretion to settle the Avoidance Action, and the Marrero Plaintiffs' right to object to any such settlement is preserved. See Marrero Plaintiffs' Status Report, Proposed Order.

Although they filed an opposition to the Motion to Intervene, the Defendants agree with the intervention rights proposed by the Marrero Plaintiffs. Acknowledging that "[b]oth proceedings target recovery of the same alleged overpayments from the Defendants, based on these same transactions" and the fact that "there is likely to be an overwhelming amount of overlap in the discovery sought in each of the two litigations," the Defendants seek to avoid the

6

costs and burden of producing the same documents and discovery responses in both proceedings. Defendants' Status Report ¶¶ 3, 4. Accordingly, the Defendants represent that they are willing to withdraw their opposition to the Intervention Motion. Id. ¶ 6. They insist, however, that intervention "should be conditioned on the Marrero[] Plaintiffs' agreement that (1) the discovery process between the two proceedings will be coordinated; (2) any documents or discovery responses produced to the Marrero[] Plaintiffs in the [Avoidance Action] will be deemed produced in the Marrero[ Class] Action as well; and (3) they will not seek to re-depose any witnesses that are produced for deposition in the [Avoidance Action]." Id. ¶ 10. The Defendants argue that full intervention will assist the Court in determining certain threshold legal issues common to both proceedings, including whether the Marrero Plaintiffs' claims against the Defendants are independent of those asserted by PREPA against the Defendants, and whether the Marrero Plaintiffs, as indirect purchasers of the allegedly non-compliant fuel oil, lack standing to assert their claims against the Defendants. Id. ¶ 12.

The Marrero Plaintiffs Adversary Proceeding

After filing the status reports, the Marrero Plaintiffs commenced a separate adversary proceeding against PREPA for declaratory and injunctive relief in which they raised the legal issues identified by each party in their respective status reports. See generally 20-AP-115 (the "Marrero Plaintiffs Adversary Proceeding").[4] In the Marrero Plaintiffs Adversary Proceeding,

---

[4] The UCC also commenced a separate adversary proceeding in which it sought declaratory relief that PREPA had the sole right to pursue the claims raised by PREPA in the Avoidance Action. See Complaint, 20-AP-114, Dkt. No. 1. On October 9, 2020, the UCC voluntarily dismissed the Adversary Proceeding without prejudice. Notice of Voluntary Dismissal without Prejudice, Case No. 20-AP-114, Dkt. No. 11. Also on October 9, 2020, the UCC filed an Answer and Counterclaims in the Marrero Plaintiffs Adversary Proceeding, asserting the same allegations and requesting the same relief as in the UCC Adversary Proceeding that it had voluntarily dismissed the same day. See Case No. 10-AP-115, Dkt. No. 7. On

7

the Marrero Plaintiffs seek a declaration that the claims asserted in the Marrero Class Action are "independent claims that are not assets of the PREPA estate," and that the Marrero Plaintiffs are the appropriate plaintiffs of those claims and the victims of the alleged scheme, and they seek a lifting of the automatic stay so that they can pursue their claims in the Marrero Class Action. See Marrero Plaintiffs Amended Complaint, Case No. 20-AP-115, Dkt. No. 14 at ¶ 9. The Marrero Plaintiffs adversary proceedings is just beginning, and the parties have agreed to a briefing schedule for PREPA's planned motion to dismiss the amended complaint. No discovery schedule has been set. The UCC intervened in the Marrero Plaintiffs Adversary Proceeding with the other parties' consent. See note 4 supra.

### III.   ANALYSIS

#### A. Right to Intervene

Federal Rule of Civil Procedure 24 governs intervention in this adversary proceeding.[5] Rule 24(a)(1) allows for intervention as a matter of right, and dictates that "the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute[.]" Section 1109(b) of the Bankruptcy Code provides that, "[a] party in interest, including . . . a creditor, . . . may raise and may appear and be heard on any issue in a case . . . ." Accordingly, as creditors of PREPA and parties in interest in this action, Section 1109(b) grants the Marrero Plaintiffs an unconditional right to intervene in this litigation. See Assured Guar.

---

November 12, 2020, the UCC withdrew its Answer and dismissed its counterclaims in the Marrero Plaintiffs Adversary Proceeding, and filed an unopposed Motion to Intervene, which the Court allowed. See Case No. 10-AP-115, Dkt. Nos. 17, 18, 19 and 21.

[5] PROMESA § 310 provides that "[t]he Federal Rules of Bankruptcy Procedure shall apply to a case under this title and to all civil proceedings arising in or related to cases under this title." In turn, Federal Rule of Bankruptcy Procedure 7024 dictates that "Rule 24 F.R.Civ.P. applies in adversary proceedings."

Corp. v. Fin. Oversight & Mgmt. Bd. For P.R. (Assured), 872 F.3d 57, 59-64 (1st Cir. 2017) (Section 1109(b), which is "incorporated by PROMESA," grants any "party in interest" – including any "creditor" – an "unconditional right to intervene . . . on any issue" raised in any "adversary proceeding").

### B. Scope of Intervention

"'[C]ourts are not faced with an all-or-nothing choice between grant or denial' of an intervention motion." Assured, 872 F.3d at 64 (1st Cir. 2017) (quoting United States v. City of Detroit, 712 F.3d 925, 931-32 (6th Cir. 2013)). Depending on the circumstances, the scope of intervention can span from the right to file briefs and be heard at argument to the right to control causes of action. In re Adelphia Comm. Corp., 285 B.R. 848, 856 (S.D.N.Y. 2002). As the First Circuit further explained in Assured:

> This flexibility allows district courts to get all interested parties to the table in the hopes of reaching an effective and fair solution, while at the same time preventing an expansion of scope capable of threatening the court's control over the matter. These competing concerns are particularly poignant in the present case, which represents the largest proceeding to restructure debt in the history of the American municipal bond market.

Assured, 872 F.3d at 64 (internal citations, quotations, and punctuation omitted).

Here, two principles guide this Court's analysis of the scope of intervention. First, the scope of intervention in the Avoidance Action should be defined by the interest, if any, of the Marrero Plaintiffs in the claims raised in the Avoidance Action. Second, intervention should be designed to maximize the coordination of discovery resources across the three related proceedings.

As an initial matter, all parties recognize that there are overlapping factual and legal issues among all of the actions, and that some discovery will be relevant to all of the

9

proceedings.[6] However, at this time it is not possible to determine the scope of the Marrero Plaintiffs' interest, if any, in the Avoidance Action without a determination of some issues which have been raised more directly in the Marrero Plaintiffs Adversary Proceeding. For example, but without limitation, the parties dispute whether the Marrero Plaintiffs have standing to raise the claims against the Defendants, or whether those claims can only be prosecuted by the Co-Plaintiffs for the benefit of the Estate. If the Court determines that the Marrero Plaintiffs do not have standing to pursue their claims against the Defendants, the Marrero Plaintiffs' interest in the Avoidance Action may be simply that of a general unsecured creditor of PREPA, and the necessary scope of intervention likewise tailored to the interest to be protected. The UCC does not believe that the standing issue needs to be resolved in this Avoidance Action because the Marrero Plaintiffs have filed proofs of claim in the PREPA Title III case. See UCC Reply Status Report at 4 (arguing that determining whether the Marrero Plaintiffs have standing at this point in the litigation "disregards the fundamental framework of the Title III process, which prohibits creditors racing to the Courthouse and interfering with an orderly claims resolution process"); see also *Informative Motion Concerning Filing of Related Adversary Proceeding to Enjoin Proposed Intervenors* (Dkt. No. 79) (explaining that the UCC Adversary Proceeding "seek[s] to address the more fundamental issues of the Title III process by pursuing injunctive relief

---

[6] See, e.g., Defendants' Status Report at ¶ 11 ("The Defendants also believe that full intervention will facilitate a determination by this Court of certain threshold legal issues common to both sets of claims[.]"); UCC Reply Status Report at 3 (acknowledging common legal issues exist between the Avoidance Action and the Marrero Class Action but arguing that such issues are not "threshold" issues because "Title III goals and considerations should serve as the framework to determine [intervention]" and "[o]nly if the Court determines that the Marrero Plaintiffs are able to proceed without prejudicing the Title III process should the Defendants' 'threshold' issues be examined"); SCC Reply Status Report at ¶ 1 ("The SCC shares the [UCC's] concerns and joins in the [UCC Reply Status Report] to the extent of reiterating its reasoning and its request that intervention be limited to reduce cost and further the goals of Title III.").

prohibiting the Marrero Plaintiffs from prosecuting any claim framed by, or arising from their Third Amended Complaint [in the Marrero Class Action] pending the resolution of [the Avoidance Action]."). All parties, however, agree that the issue of the Marrero Plaintiffs' standing will be resolved in the Marrero Plaintiffs Adversary Proceeding.

Similarly, it is unclear as presently presented whether the Marrero Plaintiffs intend to pursue their claims against PREPA in this Avoidance Action, and, if so, how such issues would be prosecuted in the Avoidance Action, where PREPA is a plaintiff but the Marrero Plaintiffs also seem to want to intervene as plaintiffs. The Marrero Plaintiffs argue that their standing to assert claims against the Defendants is directly linked to PREPA's involvement in the alleged conspiracy, an issue that will be addressed in the Marrero Plaintiffs Adversary Proceeding. See Marrero Plaintiffs' Status Report at 3 ("There remains the issue, however, whether the actions brought by the Co-Plaintiffs [in the Avoidance Action] are claims of the estate or claims of the [Marrero Plaintiffs], an issue that may depend upon whether or not PREPA was a party to or involved in the underlying conspiracy with the Fuel Oil Suppliers."). The UCC contends that the Marrero Plaintiffs' standing can be decided independently of PREPA's involvement in the underlying events. See UCC Reply Status Report at 3. In any event, a decision in the Marrero Plaintiffs Adversary Proceeding regarding where, if and when PREPA's role in the underlying events will be addressed will have ramifications for the appropriate level of intervention of the Marrero Plaintiffs in the instant case.

For all of these reasons, this Court concludes that it is premature to determine the precise scope of the Marrero Plaintiffs' intervention rights in the Avoidance Action until the Marrero Plaintiffs Adversary Proceeding has progressed. This Court is aware, however, that

11

there will be a significant overlap in discovery between the Marrero Class Action, the Avoidance Action, and the Marrero Plaintiffs Adversary Proceeding. Intervention with respect to discovery is therefore appropriate in the Avoidance Action to ensure the conservation of resources and avoidance of duplicative discovery.

To accomplish this coordination, the Court hereby ALLOWS IN PART the Intervention Motion as provided herein and stays the Avoidance Action until the legal issues raised in the Marrero Plaintiffs Adversary Proceeding are clarified and/or resolved. This ruling is without prejudice to the Marrero Plaintiffs renewing their request to intervene substantively in the Avoidance Action after the legal issues raised in the Marrero Plaintiffs Adversary Proceeding are clarified and/or resolved, at which time the appropriate scope of intervention will be addressed.

This Court's allowance of intervention in the Avoidance Action is based on an effort to coordinate discovery resources. Consequently, all discovery produced in the Marrero Plaintiffs Adversary Proceeding shall be deemed produced in this action and the Court expects the parties to coordinate discovery resources across this Avoidance Action, the Marrero Plaintiffs Adversary Proceeding and the Marrero Class Action. Nothing herein shall be considered a ruling as to whether the stay in the Marrero Class Action should be lifted.[7]

---

[7] This Court will not comment on the Defendants' request that discovery not be duplicated in any fashion, as described above and in their Opposition to the Motion to Intervene. The Court will leave it to the parties to address how to coordinate discovery in the first instance.

## IV. SPECIFIC RULINGS

1. Leave to intervene is granted only as set forth herein.

2. The Marrero Plaintiffs are entitled to appear and be heard in the above captioned adversary proceeding, pursuant to Bankruptcy Code section 1109(b) as provided herein. The Marrero Plaintiffs shall have the right to file briefs of up to seven (7) pages, without prior leave of the Court. Participation in oral argument shall be at the discretion of the Court.

3. The Co-Plaintiffs and the Defendants shall make any and all discovery taken to date available to the Marrero Plaintiffs within seven (7) calendar dates of this Order.

4. All discovery produced in the Marrero Plaintiffs Adversary Proceeding shall be deemed produced in this action and the Court expects the parties to coordinate discovery resources across this Avoidance Action, the Marrero Plaintiffs Adversary Proceeding, and the Marrero Class Action.

5. This action is hereby stayed until the legal issues raised in the Marrero Plaintiffs Adversary Proceeding (Case Number 20-AP-115) are clarified and/or resolved. At such time, the parties may file a motion to lift the stay in this action.

6. At the time the stay is lifted in this action, the Marrero Plaintiffs shall file a Rule 24(c) pleading identifying the claim or defense in which they are intervening.

7. Notwithstanding anything herein, the Special Claims Committee and the Official Committee of Unsecured Creditors retain the right, in their sole discretion, to settle this adversary proceeding with any or all of the defendants. The Marrero Plaintiffs' right to object to that settlement, if any, shall be governed by the Bankruptcy Rules,

13

and shall not interfere with any parties' right to enter into or consummate any settlement.

8. This ruling is without prejudice to the Marrero Plaintiffs' renewing their request to intervene substantively in this matter once the issues in the Marrero Plaintiffs Adversary Proceeding are clarified and/or resolved, at which time the appropriate scope of intervention will be addressed.

This order resolves Dkt. Nos. 9 and 69 in 19-AP-388 and Dkt. No. 14052 in 17-BK-3283.

SO ORDERED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

DATED: December 14, 2020