# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

**SUMMARY COVER SHEET FOR THE FIFTH INTERIM APPLICATION OF
DICICCO, GULMAN & COMPANY LLP, FINANCIAL ADVISOR TO
THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,
FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
OF EXPENSES FOR THE TENTH INTERIM FEE PERIOD
<u>FROM JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020</u>**

**ALL SERVICES IN THIS INTERIM APPLICATION
WERE PERFORMED OUTSIDE OF PUERTO RICO.**

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## Summary Sheet

| | |
|---|---|
| Name of Applicant: | DiCicco, Gulman & Company LLP ("DGC") |
| Authorized to Provide Professional Services as: | Financial Advisor to The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Name of Client: | The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Debtor: | Commonwealth of Puerto Rico |
| Petition Date: | May 3, 2017[2] |
| Retention Date: | February 26, 2019 |
| Compensation Period: | June 1, 2020 through September 30, 2020 (the "Compensation Period") |
| Total Compensation Sought: | $760,162.50 |
| Expense Reimbursement Sought: | $0.00 |
| Total Compensation and Expense Reimbursement Sought: | $760,162.50 |
| Prior Applications Filed: | None |

This is an: ___ monthly    _X_  interim    ___ final application

This is DiCicco, Gulman & Company LLP's fifth interim application in these cases (this "Application").

---

[2]    The Petition Date for the Commonwealth under Title III was May 3, 2017. The petition date for COFINA under Title III was May 5, 2017. The petition date for ERS and HTA under Title III was May 21, 2017. The Petition Date for PREPA under Title III was July 2, 2017.

Additional Information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013:

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $0.00 |
| Total Expense Reimbursement Approved by Interim Order to Date: | $0.00 |
| Total Allowed Compensation Paid to Date: | $0.00 |
| Total Allowed Expense Reimbursement Paid to Date: | $0.00 |
| Total Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $269,407.35 |
| Total Expense Reimbursement Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $0.00 |
| Blended Hourly Rate in this Application for all Professionals: | $375.00 |
| Blended Hourly Rate in this Application for all Timekeepers: | $375.00 |
| Number of Professionals in this Application: | 9 |
| Number of Professionals Billing Fewer than 15 hours in this Application: | 0 |
| Difference Between Fees Budgeted and Compensation Requested for this Period: | N/A[3] |
| Rate Increases Since Date of Retention: | None |
| Disclosure of Compensation Sought in this Application Using Rates Disclosed at Retention: | N/A |

---

[3]   Please note that the Budget for this Compensation Period was not prepared prospectively or specific to each debtor.

**Summary of Prior Monthly Fee Statements for the Compensation Period**
**from June 1, 2020 through September 30, 2020**

| Date | Period Covered | Total Fees | Fees Requested (90%) | Holdback (10%) | Expenses Requested | Fees Paid | Expenses Paid (100%) |
|---|---|---|---|---|---|---|---|
| 8/18/2020 | June 1, 2020 through June 30, 2020 | $141,562.50 | $127,406.25 | $14,156.25 | $0.00 | $125,495.16 | $0.00 |
| 8/31/2020 | July 1, 2020 through July 31, 2020 | $162,337.50 | $146,103.75 | $16,233.75 | $0.00 | $143,912.20 | $0.00 |
| 9/30/2020 | August 1, 2020 through August 31, 2020 | $195,018.75 | $175,516.87 | $19,501.88 | $0.00 | $0.00 | $0.00 |
| 10/31/2020 | September 1, 2020 through September 30, 2020 | $261,243.75 | $235,119.38 | $26,124.37 | $0.00 | $0.00 | $0.00 |
| | | **$760,162.50** | **$684,146.25** | **$76,016.25** | **$0.00** | **$269,407.36** | **$0.00** |

**Summary of Amounts Requested to be Paid**

| | |
|---|---|
| Total 10% Holdback on Fees: | $76,016.25 |
| Reimbursement for 29% Tax Withholding: | $987,764.29[4] |
| Reimbursement for 1.5% Government Contribution: | $10,262.18 |
| **Total Amount Requested to be Paid:** | **$1,074,042.72** |

---

[4] For prior periods, from March 1, 2019 to January 31, 2020, the Debtors withheld a total of $991,600.99 on account of purported tax withholding for services performed outside of Puerto Rico. Approximately 99% of the amount withheld by the Debtors, or $987,764.29, was in error because these services were performed outside of Puerto Rico. This amount remains unpaid. DGC has obtained a Total Waiver Certificate from Withholding at Source for Services Rendered by Corporations and Partnerships. Accordingly, DGC requests the reimbursement of $987,764.29, which represents reimbursement for the tax withholding for the first, second and third fee applications totaling $380,704.39, $404,791.43, and $202,268.47, respectively.

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

## FIFTH INTERIM APPLICATION OF
## DICICCO, GULMAN & COMPANY LLP, FINANCIAL ADVISOR TO
## THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
## ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE,
## FOR PROFESSIONAL COMPENSATION RELATED TO
## THE DEBTOR: COMMONWEALTH
## FOR THE TENTH INTERIM FEE PERIOD
## JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020

TO THE HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE:

DiCicco, Gulman & Company LLP ("DGC"), Financial Advisor to the Financial Oversight

and Management Board, acting through its Special Claims Committee (the "Oversight Board") as

representative of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing

Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Electric Power

Authority (collectively, the "Debtors") in the above-captioned title III cases (the "Title III Cases")

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4)
digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico
(Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax
Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:
8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS")
(Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways
and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) Last Four Digits of Federal Tax
ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last
Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software
limitations).

pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*

("PROMESA"),[2] hereby submits this fifth interim fee application (the "Fifth Interim Application"

or "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules"),

Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation*

*and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11*

*Cases* effective as of November 1, 2013 (the "U.S. Trustee Guidelines," and together with the

aforementioned statutes, rules and guidelines, the "Guidelines"), and in accordance with the *Second*

*Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of*

*Professionals* entered by this Court on June 6, 2018 [Docket No. 3269] (the "Interim Compensation

Order"), seeking entry of an order granting the allowance of interim compensation in the aggregate

amount of $760,162.50 in fees for reasonable and necessary professional services rendered during

the period commencing June 1, 2020 through September 30, 2020 (the "Compensation Period"). In

support of this Application, DGC respectfully states the following:

## **Jurisdiction and Venue**

1.      The Court has subject matter jurisdiction to consider and determine this Fifth Interim

Application pursuant to PROMESA section 306(a).  Venue is proper before this Court pursuant to

PROMESA section 307(a).  The statutory predicates for the relief requested herein are PROMESA

sections 316 and 317, Bankruptcy Rule 2016 and Local Rule 2016-1.

---

[2]     PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]     The Application solely pertains to fees and expenses incurred with respect to the Debtors' Title III Cases and does
not address fees or expenses incurred with respect to other services performed for the Oversight Board outside the
Title III process.

[4]     The Bankruptcy Rules are made applicable to the Debtors' Title III Cases pursuant to PROMESA section 310.

2.      This Application has been prepared in accordance with the Guidelines and the Interim
Compensation Order.  Attached hereto as **Exhibit A** is a certification regarding compliance with the
Local Guidelines.

### Background and Case Status

A.      **The Debtors' Title III Cases**

3.      On June 30, 2016, the Oversight Board was established under PROMESA section
101(b).

4.      On August 31, 2016, President Obama appointed the Oversight Board's seven voting
members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title
is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s]
to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA]
. . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as "covered
entit[ies]" under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to
PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth
of Puerto Rico (the "Commonwealth") pursuant to section 304(a) of PROMESA, commencing a case
under title III thereof.

8.      On May 5, 2017, the Oversight Board filed a voluntary petition for relief for the Puerto
Rico Sales Tax Financing Corporation ("COFINA") pursuant to section 304(a) of PROMESA,
commencing a case under title III thereof.

9.      On May 21, 2017, the Oversight Board filed a voluntary petition for relief for each of
the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS")

and the Puerto Rico Highways and Transportation Authority ("HTA") pursuant to section 304(a) of PROMESA, commencing cases under title III thereof.

10.     On July 2, 2017, the Oversight Board filed a voluntary petition for the Puerto Rico Electric Power Authority ("PREPA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

11.     Through orders issued on June 1, June 29 and October 6, 2017, the Court ordered the joint administration of the Title III Cases for the Debtors, for procedural purposes only [Docket Nos. 242, 537 and 1417].

12.     Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Docket No. 1] attached to the Commonwealth's Title III petition.

**B.      Retention of DiCicco, Gulman and Company LLP**

13.     DGC is an accounting firm with its offices located in Boston and Woburn, Massachusetts.  DGC has significant experience serving as a consultant or financial expert in bankruptcy actions and litigations in many large, complex cases.

14.     As set forth in the Independent Contract Services Agreements dated February 26, 2019 and July 1, 2020 (the "Services Agreements"),[5] DGC was retained by and authorized to act as financial advisor to the Oversight Board, acting through its Special Claims Committee, to assist the Special Claims Committee regarding investigation and pursuit of potential claims.

**C.      Interim Compensation and Fee Examiner Orders**

15.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 1150].

---

[5]    A copy of the Services Agreement is available on the Oversight Board's website at http://oversightboard.pr.gov/documents/.

16.     On October 6, 2017, the Court appointed a Fee Examiner in these Title III Cases (the "Fee Examiner") pursuant to the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* [Docket No. 1416] (the "Fee Examiner Order").

17.     On October 31, 2017, the Fee Examiner filed the Urgent Motion of the Fee Examiner to Amend the Interim Compensation Order, Including the Due Date and Hearing Date for Interim Compensation [Docket No. 1594].

18.     On November 8, 2017, the Court entered the First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 1715].

19.     On November 10, 2017, the Fee Examiner issued a memorandum, and on January 3, 2018, the Fee Examiner issued a supplemental memorandum (together, the "Fee Examiner Guidelines") to all retained professionals in these Title III Cases providing additional guidelines in connection with the Interim Compensation Order.

20.     On May 8, 2018, the Fee Examiner filed the *Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the Interest of Administrative Efficiency* [Docket No. 3032] (the "Motion to Amend the Fee Examiner Order").

21.     On May 23, 2018, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") filed a *Joint Motion for Entry of an Order Further Amending the Interim Compensation Order* [Docket No. 3133].

22.     On June 6, 2018, the Court entered the Interim Compensation Order, and in accordance therewith, LS&E and other professionals retained in these Title III Cases were authorized to serve upon the parties identified therein (the "Notice Parties") monthly fee statements (the "Monthly Fee Statements").

23.     Pursuant to the Interim Compensation Order, the Notice Parties have ten days from the date of service of the Monthly Fee Statement to object to the amounts requested. If no objection

is filed prior to expiration of the objection period, the Commonwealth is authorized to pay the respective professionals 90% of the fees and 100% of the expenses sought in each Monthly Fee Statement.

24.     On June 20, 2018, the Court entered the *First Amended Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Docket No. 3324] (the "Amended Fee Examiner Order").

### D.     Applications for Interim Compensation

25.     In addition to the Monthly Fee Statements, the Interim Compensation Order directed professionals to seek interim allowance and payment of compensation (including the 10% held back from Monthly Fee Statements) and expense reimbursement at 120-day intervals (each an "Interim Fee Period") by filing with the Court and serving on the Notice Parties an application for approval and allowance of all compensation and reimbursement of expenses relating to services rendered and expenses incurred during the preceding Interim Fee Period (*see* Interim Compensation Order at ¶2(f)).

26.     This is DGC's fifth interim fee application and covers the period from its retention on June 1, 2020 through September 30, 2020.

### Relief Requested

27.     By this Application, DGC seeks an order authorizing (a) allowance of interim compensation for the professional services rendered during the Compensation Period in the aggregate amount of $760,162.50 inclusive of any amounts previously held back, including certain purported tax withholding and government contribution amounts. Amounts held back related to certain purported tax withholding and government contributions disproportionately represent a significant portion of interim compensation, in total approximately 28%[6] of the fees requested in the first, second

---

[6] Amounts withheld from 90% of the total fees include (i) 29% of the fees requested, on account of purported tax withholding which was withheld on three of the four Monthly Fee Statements and (ii) a 1.5% government contribution that is deducted from all fees that exceed $50,000 and was deducted from all four Monthly Fee Statements.

and third fee applications, while services performed on island represent a small fraction of total services, or less than 1% of the total expended hours. DGC has obtained a Total Waiver Certificate from Withholding at Source for Services Rendered by Corporations and Partnerships. Accordingly, DGC requests the reimbursement of $987,764.29, which represents reimbursement for the tax withholding for the first, second and third fee applications totaling $380,704.39, $404,791.43, and $202,268.47, respectively.

28.    During the Compensation Period, DGC professionals expended a total of 2,027.1 hours for which compensation is requested.  All such services were performed off island. All services rendered for which compensation is requested were performed diligently and economically at the direction of Brown Rudnick, counsel to the Oversight Board, acting through its Special Claims Committee.

29.    During the Compensation Period, DGC submitted four Monthly Fee Statements (the sixteenth, seventeenth, eighteenth and nineteenth such statements submitted by DGC).

30.    On August 18, 2020, DGC served its sixteenth monthly fee statement covering the period from June 1, 2020 through June 30, 2020 (the "Sixteenth Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit E-1**. DGC received no objection to the Sixteenth Monthly Fee Statement.  On August 31, 2020, DGC submitted a statement of no objection to AAFAF with respect to the Sixteenth Monthly Fee Statement.   On September 17, 2020, the Debtors paid DGC $125,495.16 on account of fees requested.  The Debtors withheld (i) $14,156.25, the amount of the 10% holdback, plus, (ii) $1,911.09, representing a 1.5% government contribution on requested fees that is deducted from all fees that exceed $50,000.[7]

31.    On August 31, 2020, DGC served its seventeenth monthly fee statement covering the period from July 1, 2020 through July 31, 2020 (the "Seventeenth Monthly Fee Statement"), a copy

---

[7]    DiCicco, Gulman and Company LLP reserves its rights to seek relief from the court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

of which is attached hereto as **Exhibit E-2**. DGC received no objection to the Seventeenth Monthly Fee Statement. On September 14, 2020, DGC submitted a statement of no objection to AAFAF with respect to the Seventeenth Monthly Fee Statement. On September 28, 2020, the Debtors paid DGC $143,912.20 on account of fees requested. The Debtors withheld (i) $16,233.75, the amount of the 10% holdback, plus, (ii) $2,191.55, representing a 1.5% government contribution on requested fees that is deducted from all fees that exceed $50,000.[8]

32.      On September 30, 2020 , DGC served its eighteenth monthly fee statement covering the period from  August 1, 2020 through August 31, 2020 (the "Eighteenth Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit E-3**. DGC received no objection to the Eighteenth Monthly Fee Statement. On November 9, 2020, DGC submitted a statement of no objection to AAFAF with respect to the Eighteenth Monthly Fee Statement. As of this submission, DGC has not received a statement of no objection with respect to the Nineteenth Monthly Fee Statement, however, similar to the previous monthly fee statements DGC does not anticipate any objection to the Nineteenth Monthly Fee Statement. As of this submission, there have been no payments received on this fee statement.[9] We are expecting that the Debtors will pay the invoice but will withhold (i) $19,501.88, the amount of the 10% holdback plus, (ii) $2,632.75, representing a 1.5% government contribution on requested fees that is deducted from all fees that exceed $50,000.[10]

33.      On October 31, 2020, DGC served its nineteenth monthly fee statement covering the period from September 1, 2020 through September 30, 2020 (the "Nineteenth Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit E-4**. As of this submission, DGC has not

---

[8]    DiCicco, Gulman and Company LLP reserves its rights to seek relief from the court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[9]    DiCicco, Gulman and Company LLP reserves its rights to seek relief from the court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[10]   DiCicco, Gulman and Company LLP  performed all services outside of Puerto Rico.  Nonetheless, DiCicco, Gulman and Company LLP intends to seek a refund of all amounts withheld on account of amounts withheld.

received a statement of no objection with respect to the Nineteenth Monthly Fee Statement, however, similar to the previous monthly fee statements DGC does not anticipate any objection to the Nineteenth Monthly Fee Statement. As of this submission, there have been no payments received on this fee statement.[11] We are expecting that the Debtors will pay the invoice but will withhold (i) $26,124.38, the amount of the 10% holdback plus, (ii) $3,526.79, representing a 1.5% government contribution on requested fees that is deducted from all fees that exceed $50,000.[12]

34.    Other than with respect to those Monthly Fee Statements, no payments have been made to DGC, and DGC has received no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered during the Compensation Period and addressed by this Interim Application. There is no agreement or understanding between DGC and any other person, other than the members of DGC, for the sharing of compensation to be received for services rendered in these cases.

35.    In accordance with the Services Agreements, DGC's hourly rate for all professionals is $375. DGC's blended hourly rate compares favorably to some retained financial advisors in these cases.

36.    DGC maintains computerized records of all time spent by DGC professionals in connection with its representation of the Oversight Board. DGC has provided itemized time records for professionals performing services during the Compensation Period to this Court, the Debtors, the Fee Examiner, all notice parties pursuant to the Interim Compensation Order and the U.S. Trustee. All entries itemized in DGC's time records comply with the requirements set forth in the Guidelines,

---

[11]    DiCicco, Gulman and Company LLP reserves its rights to seek relief from the court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[12]    DiCicco, Gulman and Company LLP  performed all services outside of Puerto Rico. Nonetheless, DiCicco, Gulman and Company LLP intends to seek a refund of all amounts withheld on account of amounts withheld.

including the use of separate matter numbers for different project types, as described in this Application.

37.     Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto and incorporated herein by reference:

i.      **Exhibit A** declaration of Elisabeth O. da Silva regarding DGC's compliance with the Local Guidelines.

ii.     **Exhibit B** contains a summary of hours and fees billed by each DGC accountant and paraprofessional in services rendered to the Oversight Board during the Compensation Period, including respective titles, hourly rates.

iii.    **Exhibit C** contains a summary of compensation requested by matter during the Compensation Period.

iv.     **Exhibit D** contains a budget plan with a comparative analysis of budgeted and actual fees during the Compensation Period.

v.      **Exhibits E-1, E-2, E-3 and E-4** contain copies of DGC's Monthly Fee Statements during the Compensation Period, which include detailed time records and out-of-pocket expense details.

**Summary of Services Performed by DGC During the Compensation Period**

38.     Set forth below is a description of significant professional services, broken down by project category, rendered by DGC during the Compensation Period.  The following services described are not intended to be a comprehensive summary of the work performed by DGC.  Detailed descriptions of all services rendered by DGC can be found in the detailed time records reflecting the services performed by DGC's professionals, the time expended by each professional, and the hourly rate of each professional, annexed to the Monthly Fee Statements attached hereto as **Exhibits E-1, E-2** and **E-3** and **E-4**, and such descriptions are incorporated herein by reference.

A.      **Case Administration**

**Fees: $5,100.00; Hours: 13.6**

14

39.     At the outset of its retention DGC coordinated its investigation and document management efforts considering the scope set out by Brown Rudnick and the Special Claims Committee of its investigation and need to ensure efficiency and appropriate sharing of information.

40.     In addition, DGC continued to digest case information including pleadings, hearing status updates, petitions, and related deadlines to plan resources and necessary tasks in order to complete and report findings in conjunction with Brown Rudnick's legal deadlines including over 300 individual avoidance action claims and other third party claims. DGC continued to coordinate information requests and digest information received with respect to the high volume of avoidance action claims. Communication with team members and synthetization of disparate data sets was coordinated and executed on a daily basis for both the avoidance action claims and the solvency analysis.

41.     During the Compensation Period, DGC continued to collect, mine, manage, and digest electronic data files.

42.

**B.      General Investigative**

**Fees: $300.00; Hours: 0.8**

43.     During the Compensation Period, at the direction of Brown Rudnick DGC reviewed publicly available information, and analyzed and applied the impact and on various work streams.

**C.      Solvency**

**Fees: $187.50; Hours: 0.5**

44.     DGC provided updated overviews of solvency findings to counsel and responded to issues as needed to inform counsel's filings and negotiations.

**D.      Avoidance Actions – Commonwealth**

**Fees: $754,575.00; Hours: 2,012.2**

15

45.     During the Compensation Period, DGC continued to assist Brown Rudnick and coordinated with the UCC's consultants relating to payments by the Title III debtors during relevant avoidance periods under PROMESA and the Bankruptcy Code for purposes of investigation under Rule 2004.  DGC, under Brown Rudnick's direction, participated in follow up discussions with the UCC's consultants regarding status and process  pertaining to avoidance actions. DGC researched and gathered contract data available and performed individual analysis of contracts per specific requests by Brown Rudnick. DGC met with Brown Rudnick to discuss the avoidance actions status, settlement protocol, and payment analysis.

46.     During the Compensation Period, DGC assisted Brown Rudnick and local counsel with discussions with vendors in order to resolve the vendor avoidance actions. DGC organized and directed these calls with vendors to facilitate data exchange for the vendor claim resolution process.

47.     During the Compensation Period, DGC requested information from the third-party vendors and tracked and summarized progress of any information received. DGC had periodic calls and emails with Brown Rudnick and local counsel to coordinate communications with third party vendors and their counsel, if any, as well as to communicate progress toward obtaining and analyzing data.

48.     During the Compensation Period, DGC continued to assist Brown Rudnick and local counsel with implementation, review and recommendations as part of the vendor resolution protocol. DGC coordinated receipt and tracking of inquiries and requests from over 150 separate vendors. DGC coordinated the individual data requests and analysis of further information as needed from each vendor. DGC discussed and coordinated with Brown Rudnick and local counsel during period check in and status calls to communicate progress and findings.

49.     DGC communicated with third party vendors in response to their inquiries regarding the information requested as part of the information exchange and informal resolution process.

16

50.     DGC analyzed source documents provided by third party vendors, researched and obtained additional contract documentation, and documented findings. DGC provided routine status updates to Brown Rudnick and local counsel regarding number of vendors in contact with DGC, information received to date, information analyzed, and any findings to date.

51.     DGC performed analysis of specific contracts and payment analysis including supporting documentation provided by vendors as well as routine public news searches in response to specific inquiries by Brown Rudnick or local counsel.

### The Application Should be Granted

52.     Section 317 of PROMESA provides for interim compensation of professionals and incorporates the substantive standards of Section 316 of PROMESA to govern the Court's award of such compensation.  48 U.S.C. § 2177.  Section 316 provides that a court may award a professional employed under section 1103 of title 11 of the United States Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id*. § 2176(a)(1) and (2).  Section 316(c) sets forth criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, considering all relevant factors, including—
>
> (1)     the time spent on such services;
>
> (2)     the rates charged for such services;
>
> (3)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

17

(5)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(6)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

*Id.* § 2176(c).

53.   DGC respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Fifth Interim Application were necessary and beneficial to the Oversight Board.  Considering the nature, extent and value of such services, DGC submits that the compensation requested herein is reasonable.

54.   The compensation for DGC's services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.  The professional services were performed with expedition and in an efficient manner.

55.   In sum, the services rendered by DGC were necessary and beneficial to Brown Rudnick LLP, counsel to the Oversight Board acting through its Special Claims Committee, were reasonable considering the value of such services to the Oversight Board and were performed with skill and expertise.  Accordingly, DGC submits that approval of the compensation for professional services and reimbursement of expenses requested in this Fifth Interim Fee Application is warranted.

**Location of Services Provided**

56.   All services during this Compensation Period were rendered and incurred outside of Puerto Rico.

**Statements Pursuant to Appendix B of the U.S. Trustee Guidelines**

57.   The following statements address information pursuant to Section C.5 of the U.S. Trustee Guidelines:

a.   **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

18

**Answer**: Yes, in accordance with the Services Agreements, DGC's the standard rate for all Partners and associates will be at a rate of $375.

b.  **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: Not-applicable/No.

c.  **Question**: Have any of the professionals included in this fee application varied their hourly rate based on geographic location of the bankruptcy case?

**Answer**: No.

d.  **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices?  (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.).  If so, please quantify by hours and fees.

**Answer**: No.

e.  **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

**Answer**: No.

f.  **Question**: If the fee application includes any rate increases in retention: (i) did your client review and approve those rate increases in advance?  and (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: The Application does not include any additional rate increases.

### Notice

58.     Notice of this Application has been provided to: (a) the United States Trustee for the

District of Puerto Rico, (b) the Oversight Board and its counsel, (c) counsel to AAFAF, (d) counsel

to the Fee Examiner, (e) counsel to the Official Committee of Unsecured Creditors, (f) counsel to

the Official Committee of Retirees, and (g) the Puerto Rico Department of Treasury.  DGC

respectfully submits that no further notice of this Application should be required.

**No Prior Request**

59.     No prior interim fee application for the relief requested herein has been made to this
or any other Court.

**Conclusion**

WHEREFORE, DGC respectfully requests that the Court enter an order; (a) approving the
interim allowance of $760,162.50 for compensation for professional services rendered during the
Compensation Period, and (b) granting such other and further relief as the Court deems just and
proper.

*Elisabeth O. da Silva*

_____

Elisabeth O. da Silva
DICICCO, GULMAN AND COMPANY LLP
155 Federal Street
Boston, MA 02110
Tel: (781) 937-5300
edasilva@dgccpa.com

20

## EXHIBIT A

**DECLARATION OF ELISABETH O. DASILVA
IN SUPPORT OF THE APPLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

<table>
<tr><td>

In re

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

Debtors.[1]

</td><td>

PROMESA
TITLE III

No. 17-BK-03283 (LTS)

(Jointly Administered)

</td></tr>
</table>

## CERTIFICATION OF ELISABETH O. DA SILVA IN SUPPORT OF
## FIFTH INTERIM APPLICATION OF
## DICICCO, GULMAN & COMPANY LLP, FINANCIAL ADVISOR   TO THE
## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ACTING THROUGH ITS
## SPECIAL CLAIMS COMMITTEE,
## FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
## OF EXPENSES FOR THE TENTH INTERIM FEE PERIOD
## <u>FROM JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020</u>

I, Elisabeth O. da Silva , hereby certify that:

1.      I am a partner of the firm DiCicco, Gulman & Company LLP ("DGC") with offices

located in Boston and Woburn, Massachusetts.

2.      DGC was retained on February 26, 2019 as the financial advisor to Brown Rudnick

LLP.

3.      Brown Rudnick is claims counsel to the Financial Oversight and Management Board,

acting through its Special Claims Committee (the "<u>Oversight Board</u>") as representative of the

Debtors in the above-captioned title III cases pursuant to section315(b) of the *Puerto Rico Oversight,*

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4)
digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico
(Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax
Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:
8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>")
(Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways
and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) Last Four Digits of Federal Tax
ID: 3808); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last
Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software
limitations).

*Management, and Economic Stability Act* ("PROMESA").[2]  I have personal knowledge of all of the

facts set forth in this certification except as expressly stated herein.

    4.    In accordance with (a) Local Bankruptcy Rule 2016-1 (the "Local Guidelines"), (b)

Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation*

*and Reimbursement of Expenses Filed Under 11 U.S.C. § 330*, effective as of November 1, 2013 (the

"U.S. Trustee Guidelines"), and (c) the *Second Amended Order Setting Procedures for Interim*

*Compensation and Reimbursement of Expenses of Professionals* entered June 6, 2018 (the "Interim

Compensation Order"), this certification is made with respect to the Fifth Interim Application of

DGC, as the financial advisor to Brown Rudnick, claims counsel to the Oversight Board, dated

November 16, 2020 (the "Application"),[3] for interim compensation and reimbursement of expenses

for the period of June 1, 2020 through and including September 30, 2020 (the "Compensation

Period").

    5.    With respect to section (a)(4) of the Local Guidelines, I certify that:

    a.    I have read the Application;

    b.    to the best of my knowledge, information, and belief, formed after reasonable inquiry, the compensation and reimbursement of expenses sought conforms with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the U.S. Trustee Guidelines and these Local Guidelines;

    c.    except to the extent that fees or disbursements are prohibited by the Local Guidelines, the compensation and reimbursement of expenses requested are billed in accordance with the Services Agreements.  DGC's hourly rate for all professionals is $375; and

    d.    in providing a reimbursable service, DGC does not make a profit on that service, whether the service is performed by DGC in- house or through a third party.

---

[2]    PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]    Capitalized terms used but not defined herein have the meanings given to them in the Application.

Dated: November 16, 2020
       Boston, Massachusetts

Respectfully submitted,

_____
Elisabeth O. da Silva

**DICICCO GULMAN & COMPANY LLP**
155 Federal Street
Boston, Massachusetts  02110
Telephone: (781) 937-5300
edasilva@dgccpa.com