UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO et al., | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------------x

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | Adv. Proc. No. 20-00003-LTS |
| Plaintiff, | |
| v. | |
| AMBAC ASSURANCE CORPORATION, et al., | |
| Defendants. | |

------------------------------------------------------------------x

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

    as representative of

THE COMMONWEALTH OF PUERTO RICO,

    Plaintiff,

       -v-

AMBAC ASSURANCE CORPORATION et al.,

    Defendants.

Adv. Proc. No. 20-00004-LTS

------------------------------------------------------------x

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,

    Plaintiff,

       -v-

AMBAC ASSURANCE CORPORATION et al.,

    Defendants.

Adv. Proc. No. 20-00005-LTS

------------------------------------------------------------x

ORDER REGARDING DISCOVERY IN CONNECTION WITH
MOTIONS OF THE COMMONWEALTH OF PUERTO RICO, BY AND
THROUGH THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, PURSUANT TO
BANKRUPTCY RULE 7056 FOR PARTIAL SUMMARY JUDGMENT DISALLOWING CLAIMS

Before the Court in the above-captioned adversary proceedings are identically titled motions for partial summary judgment (*Notice of Motion and Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Docket Entry No. 43 in Adversary Proceeding No. 20-00003; Docket Entry No. 40 in Adversary Proceeding No. 20-00004; Docket Entry No. 55 in Adversary Proceeding No. 20-00005, together, the "Motions") filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"). Through the Motions, the Oversight Board seeks the disallowance of numerous claims alleging that Plaintiffs are entitled to receive certain revenue

streams, alleging theories such as, <u>inter alia</u>, statutory lien, security interest, perfected security interest, ownership, beneficial interest, unlawful retention by the Commonwealth, violation of section 407 of PROMESA, and violation of the Contract Clause of the United States Constitution and the Contract Clause of the Commonwealth Constitution.

On July 16, 2020, together with their objections to the Motions, Defendants filed the *Declaration of John J. Hughes, III in Support of Opposition of Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and U.S. Bank Trust National Association to the Oversight Board's Motion for Partial Summary Judgment Seeking to Disallow Claims Relating to PRIFA Bonds* (Docket Entry No. 82 in Adversary Proceeding No. 20-00003, the "PRIFA Declaration"), the *Declaration of John J. Hughes, III in Support of Opposition of Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and the Bank of New York Mellon to the Oversight Board's Motion for Partial Summary Judgment Seeking to Disallow Claims Relating to CCDA Bonds* (Docket Entry No. 80 in Adversary Proceeding No. 20-00004, the "CCDA Declaration"), and the *Declaration of Casey J. Servais Pursuant to Fed. R. Civ. P. 56(D) in Support of Defendants' Opposition to Debtor's Rule 7056 Motion for Partial Summary Judgment* (Docket Entry No. 97 in Adversary Proceeding No. 20-00005, together with the PRIFA Declaration and CCDA Declaration, the "Rule 56(d) Declarations").[2] The Rule 56(d) Declarations assert that Defendants have had no opportunity to take discovery in the Adversary Proceedings, that they are entitled to discovery because they meet the requirements of Rule 56(d) of the Federal Rules of Civil Procedure, and that discovery is needed to ensure that all parties and the Court have

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Rule 56(d) Declarations.

access to basic legal and contractual documents that are material to resolving the Motions.[3] For the reasons detailed herein, this Court concludes that limited Rule 56(d) discovery is appropriate at this time.

## **Limited Rule 56(d) Discovery is Allowed**

Rule 56(d)—formerly Rule 56(f)—provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

---

[3] The Court has also reviewed the following briefs filed in connection with the Rule 56(d) Declarations: the *Objection of Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, to Defendants' Request to Stay or Deny Summary Judgment Motion Pursuant to Fed. R. Civ. P. 56(d)* (Docket Entry No. 90 in Adversary Proceeding No. 20-00003); the *Objection of Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, to Defendants' Request to Stay or Deny Summary Judgment Motion Pursuant to Fed. R. Civ. P. 56(d)* (Docket Entry No. 85 in Adversary Proceeding No. 20-00004); the *Objection of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, to Defendants' Request to Stay or Deny Summary Judgment Motion Pursuant to Fed. R. Civ. P. 56(d)* (Docket Entry No. 104 in Adversary Proceeding No. 20-00005); the *Declaration of Michael A. Firestein in Respect of Objection of Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, to Defendants' Requests to Stay or Deny Summary Judgment Motions Pursuant to Fed. R. Civ. P. 56(d)* (Docket Entry No. 105 in Adversary Proceeding No. 20-00005); the *Response of Ambac Assurance Corporation, Assured Guaranty Corp., and Financial Guaranty Insurance Company to the Oversight Board's Rule 56(d) Opposition* (Docket Entry No. 98 in Adversary Proceeding No. 20-00003); the *Response of Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and the Bank of New York Mellon to Oversight Board's Rule 56(d) Opposition* (Docket Entry No. 93 in Adversary Proceeding No. 20-00004); the *Defendants' Response to Objection of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, to Defendants' Request to Stay or Deny Summary Judgment Motion Pursuant to Fed. R. Civ. P. 56(d)* (Docket Entry No. 114 in Adversary Proceeding No. 20-00005).

Fed. R. Civ. P. 56(d) (West 2021). To request discovery under Rule 56(d), a nonmovant must make a sufficient proffer: "the proffer should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment." In re PHC, Inc. S'holder Litig., 762 F.3d 138, 143 (1st Cir. 2014) (quoting Resolution Trust Corp. v. N. Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir. 1994)). If incomplete discovery forms the basis of the nonmovant's inability to adduce facts essential to opposing summary judgment, the nonmovant must "(i) 'show good cause for the failure to have discovered the facts sooner'; (ii) 'set forth a plausible basis for believing that specific facts . . . probably exist'; and (iii) 'indicate how the emergent facts . . . will influence the outcome of the pending summary judgment motion.'" Id. (quoting Resolution Trust Corp., 22 F.3d at 1203). Taken together, then, a nonmovant seeking discovery under Rule 56(d) must meet the requirements of "authoritativeness, timeliness, good cause, utility, and materiality." Id. at 144 (citing Resolution Trust Corp., 22 F.3d at 1203). As a whole, these "requirements are not inflexible and . . . one or more of the requirements may be relaxed, or even excused, to address the exigencies of a given case." Id. (citing Resolution Trust Corp., 22 F.3d at 1203).

Here, the Court concludes that the Defendants have met their burden to show that limited Rule 56(d) discovery is warranted because (i) the requests are not untimely, in that there has been no pre-motion discovery in these actions and the requests were made in connection with opposition to the Motions; (ii) good cause exists as the Defendants have had only a limited opportunity to propound discovery in connection with related litigation prior to the Motions; (iii) a plausible basis exists for believing that specific relevant materials and facts (as identified below) probably exist; and (iv) the discovery topics set forth below concern factual issues that are material to the resolution of the instant Motions. Accordingly, Defendants' requests under

Rule 56(d) for deferral of adjudication of the Motions are granted to the extent that Defendants will be afforded the opportunity at this juncture to seek limited, targeted, proportional, and efficient discovery from the Oversight Board and relevant third parties as to the subjects described below. Such discovery may include written discovery and depositions subject to the meet and confer requirements set forth below.

In connection with the Lift Stay Motion practice, this Court permitted the parties to conduct limited discovery pertaining to certain factual issues raised in the Government Parties' oppositions to the lift stay motions. (See *Order Granting Urgent Motion to Adjourn Hearing on Motions for Relief from the Automatic Stay and Extend Deadline for Replies in Support of Motions for Relief from the Automatic Stay*, Docket Entry No. 11057 in Case No. 17-BK-3283.) Following motion practice related to the scope of the discovery permitted by this Court, Judge Dein issued an order, dated March 5, 2020, further delineating topics appropriate for discovery. (See *Order*, Docket Entry No. 12080 in Case No. 17-BK-3283, the "March 5th Order"). Questions that the parties had about the scope of appropriate discovery following the March 5th Order were addressed in Judge Dein's *Supplemental Discovery Order* of March 12, 2020 (Docket Entry No. 12275 in Case No. 17-BK-3283, together with the March 5th Order, the "March Orders"). It is expected that the discovery permitted herein will not duplicate the discovery conducted pursuant to the March Orders.

### The PRIFA Adversary Proceeding (20-00003)

In connection with the Lift Stay Motion practice, Judge Dein ordered the Government Parties to produce, with respect to PRIFA, "account statements, transmittal information concerning transfers of pledged revenues, and account opening documents showing the legal title and registration of the accounts, including, without limitation, (i) documents

concerning the Puerto Rico Infrastructure Fund . . . and (iii) documents showing any sub-accounts or other designations used to track Rum Taxes in the Commonwealth Treasury Single Account." (March 5th Order ¶ 2(a).) The Government Parties were further ordered to "make reasonable efforts to obtain account opening documents from the appropriate financial institutions if such information is not in the Government Parties' possession." (Id.) Additionally, the Government Parties were required to produce "[d]ocuments sufficient to identify the transfers into and out of the PRIFA-[] related accounts" and "[d]ocuments used or referenced in the preparation of the Commonwealth's 'Summary of Cash Restriction Analysis' dated October 2, 2019 with respect to the 'restricted' funds of PRIFA." (Id. ¶¶ 2(b)-(c).) Finally, the Government Parties were required to "use reasonable efforts to assist the Movants in understanding the purpose of each account for which information is being produced [and to] use reasonable efforts to respond to reasonable requests for explanations about specific transactions . . . ." (Id. ¶ 4.)

The following topics are relevant areas of inquiry in connection with the PRIFA summary judgment motion and the Defendants may propound discovery requests directed to such topics. To the extent the March Orders provided for such discovery, it is expected that the discovery authorized herein will not duplicate the discovery conducted in connection with the March Orders.

> (i) All documents governing the PRIFA bonds, including all versions of the Trust Agreement and any supplements thereto in effect during the relevant period, as well as inquiries tailored to addressing the seeming discrepancies identified in paragraphs 24-29 of the PRIFA Declaration, and documents identifying the signatories to and/or those bound by such agreements;
>
> (ii) All documents governing the flow of Rum Tax Remittances from January 1, 2014, to present, including all versions of the Lockbox Agreement and agreements governing all accounts into or through which such funds are or have been transferred, including without limitation contracts, side

      agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements;

  (iii)  Resolutions related to the Bond Documents adopted by the Commonwealth or by PRIFA;

  (iv)  Discovery identifying the nature and location of the Infrastructure Fund and the restrictions placed upon moneys therein;

  (v)  Discovery relating to the accounting treatment of Rum Tax Remittances in general, including the use and purpose of account designations, fund codes, and DeptIDs;

  (vi)  A comprehensive set of transmittal information for the exemplars of transfers and/or deposits of Rum Tax Remittances between the various bank accounts through which Rum Tax Remittances have historically flowed, as authorized by the March Orders. If a comprehensive set is not available for the exemplars previously identified by the parties, the parties shall meet and confer to identify additional exemplars; and

  (vii)  Policies and procedures related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act.

### The CCDA Adversary Proceeding (20-00004)

With respect to CCDA, the March 5th Order required production of "[a]ccount statements, transmittal information concerning transfers of pledged revenues, and account opening documents showing the legal title and registration of the accounts, including, without limitation . . . (ii) documents concerning the Tourism Company Holding Fund, Transfer Account, Surplus Account, and the Government Development Bank Pledge Account." (March 5th Order ¶ 2(a).) The Government Parties were further ordered to "make reasonable efforts to obtain account opening documents from the appropriate financial institutions if such information is not in the Government Parties' possession." (Id.) Additionally, the Government Parties were ordered to produce "[d]ocuments sufficient to identify the transfers into and out of the . . . CCDA – related accounts" and "[d]ocuments used or referenced in the preparation of the

Commonwealth's 'Summary of Cash Restriction Analysis' dated October 2, 2019 with respect to the 'restricted' funds of . . . the Tourism Company." (Id. ¶¶ 2 (b)-(c).) Finally, the Government Parties were required to "use reasonable efforts to assist the Movants in understanding the purpose of each account for which information is being produced [and to] use reasonable efforts to respond to reasonable requests for explanations about specific transactions . . . ." (Id. ¶ 4.)

The following topics are relevant areas of inquiry in connection with the CCDA summary judgment motion and the Defendants may propound discovery requests directed to such topics. To the extent the March Orders provided for such discovery, it is expected that the discovery authorized herein will not duplicate the discovery conducted in connection with the March Orders.

(i) All documents governing the CCDA bonds, including all versions of the Assignment Agreement, the Pledge Agreement, the Trust Agreement, and the Supplemental Trust Agreement (collectively the "Bond Documents"), and documents identifying the signatories to and/or those bound by the Bond Documents;

(ii) All documents governing the flow of the Hotel Occupancy Tax from 2006 to the present, including all versions of documents governing the Transfer Account, Surplus Account and any other accounts into or through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements;

(iii) Resolutions of Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents;

(iv) Account opening documents for GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961;

(v) Policies and procedures related to the flow of Hotel Taxes pursuant to the Bond Documents and Hotel Occupancy Tax Act;

    (vi) Discovery identifying and explaining the purpose of transfers of Hotel Taxes from accounts identified in (iv) above to the Commonwealth; and

    (vii) Discovery identifying the recipient of transfers identified in ¶ 40 of the CCDA Declaration. The parties shall meet and confer if CCDA identifies other significant transfers for which no recipient has been identified.

### The HTA Adversary Proceeding (20-00005)

With respect to HTA, the March 5th Order required the Government Parties to produce the following:

a. For any account that – at any point from January 2015 to present – has been used for the deposit, holding, or transfer of Excise Taxes, including so-called 'pass-through' accounts:

    i. Account-opening documents showing depository institutions, account holders, signatories, and beneficiaries;
    ii. Banking agreements for those accounts; and
    iii. Transmittal information, such as payment vouchers and transfer activity reports for the period July 2016 to the present.
    iv. The Government Parties shall make reasonable efforts to obtain the information listed in (i) and (ii) above from the appropriate financial institutions if such information is not in the Government Parties' possession.

b. Official memoranda from HTA, Treasury, or OMB officials from January 2015 to present concerning the deposit of, transfer of, and restrictions on Excise Taxes.

c. HTA budget resolutions and internal budget documents, like the documents already produced for fiscal year 2018. *See, e.g.*, HTA_155 at 172-78.

d. Official memoranda from HTA, Treasury, or OMB officials for fiscal years 2015 and 2016 concerning the budgeting treatment of Excise Taxes, including their characterization as appropriations or own income of HTA.

(March 5th Order ¶ 1.) As with PRIFA and CCDA, the Government Parties were required to "use reasonable efforts to assist the Movants in understanding the purpose of each account for

which information is being produced [and to] use reasonable efforts to respond to reasonable requests for explanations about specific transactions . . . ." (Id. ¶ 4.)

The following topics are relevant areas of inquiry in connection with the HTA summary judgment motion and the Defendants may propound discovery requests directed to such topics. To the extent the March Orders provided for such discovery, it is expected that the discovery authorized herein will not duplicate the discovery conducted in connection with the March Orders.

(i) All documents governing the HTA bonds, including all versions of the Bond Resolutions, and documents identifying the signatories to and/or those bound by the Bond Resolutions;

(ii) All documents governing the flow of Excise Taxes and HTA Pledged Revenues following their collection by the Commonwealth, including all documents governing Fund 278 and its sub-accounts, and any other accounts into or through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements;

(iii) Records reflecting the flow of funds into and out of Fund 278 and its subaccounts, and any other accounts into which Excise Taxes and HTA Pledged Revenues have been deposited from January 2014 to the present;

(iv) Documents concerning the Treasury's role in the approval of transfers to HTA and the extent to which excise tax revenues were or have been made available to HTA; and

(v) Policies and procedures related to the flow of Excise Taxes and HTA Pledged Revenues pursuant to the Bond Documents.

### **Procedures for Discovery**

The administration of, and resolution of any disputes concerning, the limited grant of discovery set forth in this Order will be overseen by Magistrate Judge Judith Dein, and the scope of discovery contemplated herein will be subject to Judge Dein's rulings. Within fourteen

(14) days of this Order the parties shall file a status report proposing a schedule for the completion of the discovery authorized herein, including any proposed status conferences before Judge Dein.

Within seven (7) days of the completion of discovery, the parties are directed to jointly file an informative motion proposing a supplemental summary judgment briefing schedule pursuant to this Order, together with agreed page limitations.

SO ORDERED.

Dated: January 20, 2021

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge