UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**OPPOSITION OF AMBAC ASSURANCE CORPORATION TO THE URGENT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO FOR LEAVE TO FILE SUR-REPLY REGARDING AMBAC ASSURANCE CORPORATION'S MOTION FOR AN ORDER <u>DIRECTING CASH RULE 2004 DISCOVERY</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States Magistrate Judge Judith G. Dein:

1. Ambac[2] respectfully submits this brief in opposition to the *Urgent Motion of the Financial Oversight and Management Board for Puerto Rico for Leave to File Sur-Reply Regarding Ambac Assurance Corporation's Motion for an Order Directing Cash Rule 2004 Discovery* (ECF No. 15583) (the "Motion" or "Mot."), which seeks an order granting the Board leave to file a sur-reply in response to the *Reply of Ambac Assurance Corporation to the Financial Oversight and Management Board for Puerto Rico's Opposition to Motion for an Order Directing Cash Rule 2004 Discovery* (ECF No. 15567) (the "Reply").

I. **THE BOARD'S ONLY ASSERTED BASIS FOR A SUR-REPLY—THAT AMBAC MADE "SEVERAL FACTUAL MISSTATEMENTS" TO THE COURT—IS MERITLESS.**

2. The Board's Motion should be denied because the only proffered justification for the proposed sur-reply—the Board's claim that Ambac made "several factual misstatements and mischaracterizations . . . in its Reply" (Mot. ¶ 1)—is entirely without merit. The charge that Ambac's counsel made "factual misstatements" to the Court is a serious one—and should not be so lightly made for the mere expedient of obtaining a few additional pages of briefing. Unsurprisingly, the Board's Motion points to nothing close to factual misrepresentations by Ambac.

3. The closest the Board comes is three places in the proposed sur-reply where the Board claims that arguments Ambac advanced in the Reply are "wrong." (Mot. at Ex. B ¶¶ 2, 5, 8.) But the allegedly "wrong" arguments are mere disputes over what *inferences* the Court should

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in *Ambac Assurance Corporation's Motion for an Order Directing Rule 2004 Discovery from the Financial Oversight and Management Board for Puerto Rico* [ECF No. 15220] (the "Opening Brief" or "Opening Br."). Unless otherwise indicated, all ECF numbers referenced in this brief refer to the docket in Case No. 17 BK 3283-LTS.

draw from the Board's Opposition,[3] or how to characterize the Board's statements within an applicable legal framework. All of these points are well within the boundaries of fair argument, not *factual* misrepresentations, as the Board alleges. And the rest of the proposed sur-reply does not even purport to correct alleged inaccuracies; it merely repeats arguments the Board has already made. The Board does not need further briefing to rehash myriad arguments that have already been fully presented to the Court.

    **A.    The Proposed Sur-Reply Does Not Identify Any "Factual Misstatements" by Ambac.**

        **1.    Ambac's Arguments That the Cash Restriction Analysis Will Be at Issue at Plan Confirmation and Will Serve the Same Function as an Expert Report Are Not "Factual Misstatements."**

    4.    The thrust of the Board's claim that Ambac's Reply contains "factual misstatements" is the Board's disagreement that its Opposition shows the Board "intends to put the cash restriction analysis directly at issue" at plan confirmation and "intends for the analysis to serve the same function as an expert report." (Mot. at Ex. B ¶ 2 (quoting Reply ¶¶ 9, 16).) But the Board's proposed sur-reply, far from showing any factual inaccuracy in Ambac's Reply, only confirms Ambac's points.

    5.    The Board repeats its assertion from its Opposition that it "does not intend to rely on the ***2019 Analyses***" at plan confirmation (*id.* ¶ 2 (emphasis added)), but it has no answer to Ambac's point that the Board will rely on whatever the latest iteration of the cash restriction analysis is at the time of confirmation. (*See* Reply ¶¶ 9-10, 16.) Indeed, the Board's proposed sur-reply confirms that it will: The Board says it plans to introduce "summary presentations" that "non-lawyer advisors prepared." (Mot. at Ex. B ¶ 3.) In other words, the Board again admits it

---

[3] "Opposition" or "Opp." refers to the *Objection of the Financial Oversight and Management Board for Puerto Rico to Motion by Ambac Assurance Corporation for an Order Directing Cash Rule 2004 Discovery* (ECF No. 15495).

intends to make the cash restriction analysis (or a summary derived from it) a cornerstone of its presentation at the plan confirmation stage.

6. The Board's efforts to dispute Ambac's point that this evidence will "serve the same function as an expert report" fare no better. (*Id.* ¶ 2; Reply ¶ 16.) Ambac's Opening Brief included an analogy to expert discovery (Opening Br. ¶ 24), so the Board could have addressed this point fully in its Opposition. And the Board's disagreement with Ambac's framing does not show a "factual misstatement" in any case; Ambac and the Board simply disagree about the applicable legal framework.

7. The nub of the dispute is that the Board contends that it will not put the cash restriction *analysis* itself at issue (*i.e.*, the work done by the Board's nonlawyer advisors). In the Board's telling, it can simply introduce the raw factual data produced to Ambac, and the Board's counsel can separately prove legal restrictions through briefing. By contrast, Ambac contends that the Board's description of how it plans to use this evidence clearly demonstrates that the actual restriction analysis will itself be directly at issue.

8. The basic flaw in the Board's position is that it overlooks that a critical component of its case at plan confirmation is proving not just that certain legal restrictions *exist* but also proving the *amount* of cash subject to such restrictions. Even assuming *arguendo* that the Board's counsel can show through legal argument that certain legal restrictions are in place, the Board still would need to prove how much money presently held (if any) is subject to each such restriction. Merely pointing to a trust document does not, in most cases, prove the amount of money held in the trust, without more.

9. Nor does the raw factual data show this. The raw data consists, in large measure, of inadmissible hearsay—and in any event, the data merely shows the balances in particular bank

accounts and other basic factual information. That data cannot, without more, establish that the balance held in a particular account is subject to a particular legal restriction that the Board's counsel has shown through legal argument.

10. That is where the cash restriction analysis comes in. The Board tries to frame the cash restriction analysis as a mere "summary, chart, or calculation to prove the content of voluminous writings[.]" Fed. R. Evid. 1006; (*see also* Mot. at Ex. B ¶¶ 3-4.) This is disingenuous at best. The cash restriction analysis goes well beyond merely "prov[ing] the content of" underlying documents. In some cases, the Board's account grouping data shows *no* raw data underlying particular asserted restrictions; in many others, the raw data consists of little more than a few bank account statements or transaction records. On their face, these documents do not "map" to any particular legal restriction the Board might claim. Rather, the Board's nonlegal advisors needed to *analyze* that raw factual data—and collect information from Commonwealth sources—to reach conclusions "linking" or "mapping" dollars in particular accounts to particular legal restrictions that the Board's counsel identified. That process of "linking" or "mapping" restrictions necessarily required accounting expertise and judgment. It is not merely a question of summarizing (in the Rule 1006 sense) what the bank account statements show. Rather, it is a substantive analysis that results in nonlawyers' conclusions regarding the aggregate amount of moneys subject to restrictions.

11. Thus, as Ambac argued in its Reply, the Board's Opposition (and now its proposed sur-reply) leave no doubt that the Board intends to rely on the cash restriction analysis performed by the Board's nonlawyer advisors as a quantification of the amount of cash the Commonwealth is holding that is allegedly subject to restrictions. The Board has no other evidence that could demonstrate this point. That means the Board necessarily will put at issue the analysis the Board's

nonlawyer advisors performed—which requires transparency into that analysis *and* any assumptions or legal assertions that the Board's counsel provided.

12. These issues are particularly important subjects of discovery because they will be hotly disputed at the plan confirmation stage. Creditors and the Board may disagree, for instance, about whether certain monies ever became subject to legal restrictions—an issue that turns not merely on legal arguments but also on an analysis of monetary flows between accounts, as similar disputes in the revenue bond lift stay context illustrate. (*Compare* ECF No. 13313 ¶¶ 12-24, *with* ECF No. 10615 ¶¶ 39-41; *compare* ECF No. 13310 ¶¶ 11-20, *with* ECF No. 10611 ¶ 5 & Ex. A.) There also will be analytical and methodological disputes about "double counting" and whether the Board's analyses are internally consistent. To take one simple example, funds provided by the federal government for COVID relief are designated as "restricted" in the Board's cash restriction analysis—but the Commonwealth separately incurred COVID-related expenses, which (creditors contend) can be reimbursed from those federal funds, thereby freeing up additional monies the Commonwealth is free to use as it pleases. Analyzing these issues requires creditors to have a complete understanding of how the restriction analysis was prepared.

13. The Board's reliance on Rule 1006 as a basis for offering this cash restriction analysis into evidence is entirely misplaced. The cash restriction analysis is analytical and goes far beyond what is permitted under that rule. Rule 1006 cannot be used at all where, as here, some or all of "the underlying documents are hearsay." *United States v. Bray*, 139 F.3d 1104, 1109 (6th Cir. 1998); 31 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 8043, at 527 (2000) ("Rule 1006 evidence may be excluded where the [underlying] source materials are inadmissible hearsay or even where just some parts of those materials are inadmissible hearsay."). Even setting aside the hearsay problems, the cash restriction evidence is analytical opinion

- 5 -

testimony for the reasons described above. "Rule 1006 is not a backdoor for admitting otherwise impermissible opinions." *Alifax Holding Spa v. Alcor Sci. Inc.*, 404 F. Supp. 3d 552, 581 (D.R.I. 2019). "To be admissible [under Rule 1006], summary evidence must be 'a neutral compilation of data without opinion.'" *Crawford v. Pro. Transp., Inc.*, 2017 WL 1077660, at *5 (S.D. Ind. Mar. 22, 2017) (quoting *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 933 (C.D. Ill. 2014)). The cash restriction analysis is anything but, as it will "necessarily reflect[] the application of . . . financial and accounting expertise to interpret the evidence." *Alifax Holding Spa*, 404 F. Supp. 3d at 581.

### 2. The Board's Other Allegations of Inaccuracy in Ambac's Reply Are Meritless.

14. The Board's remaining allegations of inaccuracy in Ambac's Reply fare no better. The Board disputes Ambac's argument that each iteration of the cash restriction analysis builds on prior versions, arguing that the Board "reanalyzed its restriction judgments" and did "not simply incorporate previous determinations." (Mot. at Ex. B ¶ 5.) But the Board does not negate Ambac's point—that the "reanaly[sis]" built on what came before, such that discovery into previous iterations is required to understand the current iteration.

15. The Board's production of raw factual data contained more than 11,000 documents for the Duff & Phelps Report (the first iteration of the cash restriction analysis) but only 3,000 documents in connection with the October 2019 Presentations (two subsequent iterations). The much smaller universe of factual data the Board considered in connection with subsequent iterations confirms that the Board did not repeat all of the work that had gone into the first iteration. Instead, it merely made changes based on updated information—underscoring that creditors need discovery into all iterations to fully understand the Board's ultimate determinations.

16. Even setting that aside, the Board has no answer to Ambac's point that the propriety of the Board's changes will themselves be at issue. (Reply ¶ 11.)

17. The Board also quibbles with Ambac's characterization of the Board's legal conclusions as "assumptions" provided to the Board's nonlawyer advisors. (Mot. at Ex. B ¶ 8.) Ambac's characterization was correct: Nonlawyer experts reached *conclusions*—regarding the amount of cash held by the Commonwealth available for distribution to creditors—premised on *assumptions* provided by the Board's lawyers about legal restrictions. But in any case, these semantic disputes are immaterial. Whether characterized as "assumptions," or "conclusions," the bottom line is that nonlawyers' determinations regarding the amount of funds subject to restrictions were premised on information provided by the Board's counsel. Any information the nonlawyer advisors relied on in reaching their conclusions is discoverable. (Reply ¶¶ 4, 19.) The Board cites no contrary authority.

    **B.**     **The Board's Remaining Arguments Have Nothing to Do with Purported "Factual Misstatements" and Merely Rehash Previously Briefed Arguments.**

18. The Board's remaining arguments have nothing to do with purported factual inaccuracies in Ambac's Reply. And in any event, none of these recycled arguments are material to the decision before the Court—which is whether the Board is right that discovery into Process Documents should be categorically precluded. Additional briefing on these points is not necessary or appropriate.

19. The Board argues that Ambac does not need Process Documents because the Board grouped, by account, the factual source materials it produced for the October 2019 Presentations. (Mot. at Ex. B ¶ 6.) This new argument cuts against the Board, not in favor of it: The Board omits to mention that the *vast majority* of raw factual data the Board produced lacks the account grouping data, which the Board appears to concede is necessary for Ambac to make use of the raw factual

data produced. The October 2019 Presentations (for which the data was provided) address just two iterations of the cash restriction analysis. The Board's production of raw factual data for the Duff & Phelps Report was far more voluminous—and that production lacks any account grouping data at all. The Process Documents are the missing link that would allow Ambac to understand and make efficient use of these materials.

20. Regardless, while account grouping data is helpful, it is not sufficient in all cases. Ambac has identified at least 10 critical accounts of interest for which *no* documents were identified in the Board's account grouping data. Only the Process Documents would allow Ambac to understand what analysis the Board undertook for these accounts. Even for the subset of documents for which account grouping data was provided, Process Documents would facilitate a far more efficient review and understanding of how to recreate the work the Board's advisors performed.

21. The Board next rehashes its burden argument, claiming that a privilege review is itself too burdensome. (*Id.* ¶ 7; Opp. ¶¶ 29-30.) But the Board has no answer to Ambac's point that a privilege review is routine in connection with discovery, that the Board has undertaken privilege reviews many times before in these Title III cases, and that with a sufficiently narrow universe (targeted through search terms and other limitations) there is no reason a privilege review would be unduly burdensome. (Reply ¶¶ 12-14.) This recycled argument certainly does not warrant a sur-reply.

22. The Board's argument regarding Calculation Back-Up likewise does not warrant a sur-reply. And, in any event, the Board's argument—that it is impossible "to assess Ambac's request for 'certain account identifiers'" (Mot. at Ex. B ¶ 9)—overlooks the fact that, two days before the Board filed its Motion for leave to submit a sur-reply, Ambac sent correspondence to

the Board explaining in detail the account identifiers it seeks.[4] The Board also does not dispute that Ambac and the Board previously reached an impasse on Calculation Back-Up because the Board refused to produce such documents (a refusal it tellingly does not defend, not even in its proposed sur-reply). Ambac has diligently pursued this discovery for months, and engaged in a fulsome meet-and-confer process with the Board before seeking judicial relief. The Board's vague hints that it might now consider Ambac's requests, after months of delay, are too little, too late. They do not moot the dispute, and holding otherwise may result in similar disputes over the Calculation Back-Up arising in the near future. The Court should order that the remaining Calculation Back-Up documents in the Board's possession be produced.

## CONCLUSION

23.     For the foregoing reasons, the Motion for leave to file a sur-reply should be denied.

---

[4] (*See* Ex. 1, Ltr. from Ambac to the Government, dated Jan. 11, 2021, at 7.)

Dated: January 20, 2021
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com
           johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com

- 11 -