# **EXHIBIT 1**

# Milbank

**JOHN J. HUGHES, III**

*Special Counsel*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com  |  milbank.com

January 11, 2021

**VIA EMAIL**

| | |
|---|---|
| Margaret A. Dale, Esq. | Elizabeth L. McKeen, Esq. |
| Julia D. Alonzo, Esq. | Ashley Pavel, Esq. |
| Laura Stafford, Esq. | O'Melveny & Myers LLP |
| Proskauer Rose LLP | 610 Newport Center Drive, 17th Floor |
| Eleven Times Square | Newport Beach, CA 92660 |
| New York, NY 10036 | |

      Re:      <u>Commonwealth Assets & Cash Rule 2004 Requests</u>

Counsel:

I write on behalf of Ambac Assurance Corporation ("<u>Ambac</u>")[1] in connection with Ambac's Assets and Cash Rule 2004 Requests.

<u>Assets Rule 2004 Requests</u>

*(1) Category No. 1:  Assets (current and transferred/encumbered)*

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

***Prioritized Commonwealth Assets.***  In its December 4 Letter, AAFAF requests that Ambac explain the relevance of properties owned by non-Title III debtors and non-Commonwealth Title III debtors to the Commonwealth's Title III case, and asserts that "Ambac's own prioritized asset list attributes ownership of" the Prioritized Commonwealth Assets to such entities.  This objection is meritless for at least three reasons.

---

[1] AAFAF and the Board are collectively referred to as the "<u>Government</u>."  Ambac and the Government are collectively referred to as the "<u>Parties</u>."  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Joint Status Report of Ambac Assurance Corporation and the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Pursuant to the Court's November 12, 2020 Order* [ECF No. 15350] (the "<u>December 4 Joint Status Report</u>").

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 11, 2021

*First*, AAFAF's letter mischaracterizes Ambac's requests. Ambac did not state or suggest that the entities listed next to the Prioritized Commonwealth Assets were the legal owners of such assets. Ambac merely listed entities based on our understanding of which entities are *using* or otherwise in possession of the Prioritized Commonwealth Assets. That says nothing of legal or equitable ownership.

*Second*, Commonwealth law provides that the Commonwealth owns all public property. 31 L.P.R.A. § 1025. Judge Swain has also held that assets of the Commonwealth do not belong to its agencies, instrumentalities, and public corporations absent an explicit transfer of ownership. *See, e.g.*, *Opinion and Order in Connection with Preliminary Hearing Regarding Motion Concerning Application of the Automatic Stay to the Revenues Securing the CCDA Bonds* [ECF No. 13540] at 27 ("[A]bsent a transfer of ownership [of assets] by statute or otherwise, such [assets] remain property of the Commonwealth."). Accordingly, all of the Prioritized Commonwealth Assets are relevant to the Commonwealth's financial condition. To the extent that AAFAF contends that ownership of any of the Prioritized Commonwealth Assets was transferred, Ambac requests that AAFAF identify the statutes or legal documents that explicitly transferred all of the Commonwealth's interest in such assets in the manner contemplated by Judge Swain's opinion.

*Finally*, even to the extent that AAFAF could show that some specific Prioritized Commonwealth Assets have been transferred to Commonwealth agencies, instrumentalities, or public corporations, the value of those assets could still be relevant to assessing the Commonwealth's necessary operating expenses and available resources. The Commonwealth's fiscal plan and budgets include a variety of line items that involve funding to agencies, instrumentalities, or public corporations. To the extent that any of those entities have unencumbered assets that could be monetized, then the funding to those entities should be reduced or otherwise adjusted to account for the ability of those entities to fund their own operations by monetizing assets they hold.

Ambac accordingly requests an update regarding AAFAF's efforts to obtain additional materials regarding the Prioritized Commonwealth Assets. Ambac's list of Prioritized Commonwealth Assets was transmitted on March 16, 2020, but AAFAF has only produced documents related to approximately 26 of the 43 Prioritized Commonwealth Assets. While AAFAF's December 4, 2020 letter to Ambac states that "AAFAF is continuing to work diligently with multiple agencies to locate the information requested[,]" AAFAF has been engaged in that process since at least April 9, 2020, and Ambac requests that AAFAF complete its production as soon as possible.

In its December 4 Letter, AAFAF raised concerns that the description for one Prioritized Commonwealth Asset that Ambac has provided is "too vague to allow AAFAF to locate specific recorded documents." Further to AAFAF's request for "additional details regarding [Prioritized Commonwealth Asset] 10, including the specific buildings for which Ambac seeks information," please see below for the information Ambac extracted from the Puerto Rico cadastral registry system for this asset:

- Catastro: 365-000-008-69-000
- Parcela: 365-000-008-69
- Procedencia: 365-000-008-07

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 11, 2021

- Dueño: Autoridad de Carreteras y Transportación
- Dirección física: Bo Machuelo Abajo, Ponce
- Cabida escritura: m2
- Área de mapa: 723,104.65 m2

Prioritized Commonwealth Asset 8 is located within this same irregularly shaped (not fully developed) property. Ambac's request related to Prioritized Commonwealth Asset 10 is for information concerning buildings, structures, and lots within this property, other than Prioritized Commonwealth Asset 8.

*AAFAF Assets Review.* In its December 4 Letter, AAFAF states that it is working to: (i) confirm that the Prioritized Commonwealth Entities, as defined in Ambac's November 25, 2020 letter to the Government, did not submit certifications in response to the November 2019 AAFAF memorandum; (ii) request certifications from the Prioritized Commonwealth Entities that have not yet submitted such certifications; and (iii) investigate whether similar property lists are available from Commonwealth entities that have not submitted certifications. Ambac requests an update regarding these issues.

Additionally, Ambac intends to request leave from the Court to seek deposition testimony from the Prioritized Commonwealth Entities, notwithstanding AAFAF's objection. To that end, Ambac requests that AAFAF produce any documentation it has received regarding the Prioritized Commonwealth Entities' real property and other assets on or before January 15, 2021.

*Ad Valorem Taxes / Tax Arrears.* In its December 4 Letter, AAFAF states that it continues to investigate: (i) the availability of any documents related to the 2017 third-party offer to purchase CRIM's tax arrears portfolio, including the offer itself and any back-up materials related thereto; and (ii) whether Puerto Rico law prevents CRIM from disclosing owner- and property-specific tax information to Ambac. Ambac requests an update regarding these issues.

Additionally, in light of AAFAF and CRIM's ongoing efforts to value and sell CRIM's tax arrears portfolio, and the potential availability of the proceeds from such a sale for use in compensating the Commonwealth's creditors, Ambac requests the following information regarding CRIM's tax collections and its tax arrears portfolio:

- CRIM's property tax collections for FY 2020, including current real property tax collections, delinquent real property tax collections, current collection rate, and total collection rate;

- Year-end real property tax account receivable balance for FY 2020, including principal, interest, penalties, and discounts (*see* CRIM Fiscal Plan, Ex. 16);

- Year-to-year growth of the tax arrears portfolio, including growth in principal, interest, penalties, and discounts, from FY 2015 to present;

- Clarification regarding the definition of "delinquent real property taxes" as used in Exhibit 13 to the CRIM Fiscal Plan;

- 3 -

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 11, 2021

- Information regarding the reserve CRIM applied against the FY 2019 $3.7 billion gross accounts receivable balance to calculate a net figure of $660 million as of the end of FY 2019, including (without limitation): (1) a description of the reserve, its source, how much capital it is comprised of, and how application of that reserve decreased the gross accounts receivable balance from $3.7 billion to a net figure of $660 million; (2) growth of the reserve from FY 2019 to FY 2020; and (3) the net accounts receivable balance with application of the reserve as of the end of FY 2020 (*see* CRIM Fiscal Plan at 22);

- A list of tax liens on properties in the Commonwealth, including the year each tax lien was issued and the amount of any such lien, broken down by principal, interest, penalties, and discounts; and

- Whether the Commonwealth or its agencies, instrumentalities, or public corporations have liens on properties in arrears that they have not foreclosed upon.

*   *   *

In its December 4 Letter, AAFAF advised that it could not commit to a specific deadline to complete its outstanding investigations, including those that require access to in-office files, due to the COVID-19 pandemic and relevant employees' use of vacation time, but advised that it will strive to do so by the end of January 2021. Ambac appreciates this update and is sympathetic to the challenges posed by the pandemic. However, given that the Board is required to file no later than February 10, 2021 a revised plan of adjustment or term sheet for a plan of adjustment that the Board intends to submit for confirmation,[2] Ambac requests that AAFAF adhere to its goal of completing its investigations by the end of January 2021.

Cash Rule 2004 Requests

   *(1) Category Nos. 1 and 2: Presentation and Investigation Documents*

- *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
- *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

**Amended Disclosure Statement.** In its letter to the Government dated November 25, 2020, Ambac advised that the version of the inventory of central government bank accounts produced on November 12, 2020 appears to be incomplete or not final. During the Parties' December 3,

---

[2] *See Order on Joint Motion of PSA Creditors Pursuant to Section 312 of PROMESA and Section 105 of the Bankruptcy Code to Impose Deadlines for Plan of Adjustment* [ECF No. 14987] at 4-5.

- 4 -

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 11, 2021

2020 telephonic meet-and-confer (the "December 3 Meet-and-Confer"), the Board advised that the version of the inventory it produced was the version referenced in the Amended Disclosure Statement, and AAFAF advised that it is working with the Puerto Rico Department of Treasury to determine whether a more updated version of the inventory exists. Ambac requests an update regarding AAFAF's investigation.

During the December 3 Meet-and-Confer, the Parties discussed Ambac's November 25, 2020 request for documents related to restrictions on five categories of accounts that are identified in Exhibit J to the Amended Disclosure Statement as containing restricted funds. Ambac clarified that this request is addressed to both the Board and AAFAF, because the factual source materials and raw data underlying the Duff & Phelps Report and October 2019 Presentations may be insufficient to explain those restriction classifications, such that it may be necessary to obtain additional documents from Commonwealth entities. The Government agreed to investigate whether such materials are available, and Ambac requests an update regarding the Government's investigation.

Additionally, Ambac has determined that the documents produced to date are insufficient to facilitate an analysis of certain other "restrictions" on cash the Board has claimed in the Amended Disclosure Statement and December 2020 Presentation.[3] Accordingly, Ambac requests production of documents regarding why the Board, AAFAF, and/or their advisors contend that funds in the following accounts are restricted:

1. The following accounts are described in Exhibit J to the Amended Disclosure Statement and/or December 2020 Presentation as accounts designated to receive funds from the U.S. Department of Housing and Urban Development in connection with a low income public housing program: BPPR -0898, BPPR -1762, BPPR -3485, BPPR -6402, BPPR -6445, BPPR -8418, BPPR -8701, BPPR -9001, FirstBank -2719, FirstBank -5292, BPPR -0022, and BPPR -0023. Ambac requests documents regarding why the Board, AAFAF, and/or their advisors contend that funds in these accounts are restricted.

2. BPPR -6809 and BPPR -6373 are described in Exhibit J to the Amended Disclosure Statement and/or December 2020 Presentation as accounts containing FEMA disaster relief funds. Ambac requests documents regarding why the Board, AAFAF, and/or their advisors contend that funds in these accounts are restricted, including (without limitation) applications or other documents submitted to FEMA related to or applying for such funds.

3. Exhibit J to the Amended Disclosure Statement and the December 2020 Presentation describes BPPR -2645 as a custodial account holding funds deposited by employers in mediation with employees. Ambac requests documents regarding why the Board, AAFAF, and/or their advisors contend that funds in BPPR -2645 are restricted.

4. The following accounts are described in the December 2020 Presentation as custodial accounts containing funds in dispute in legal cases: BSPR -0052, BSPR -0086, and BSPR -0089. Ambac requests documents showing which legal cases the funds in these accounts

---

[3] "December 2020 Presentation" refers to *Creditor Mediation Cash Support Materials* distributed in connection with the December 17, 2020 mediation session and made public on December 19, 2020.

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 11, 2021

relate to and why the Board, AAFAF, and/or their advisors contend that those funds are deemed to be restricted.

*October 30, 2020 Production.* During the December 3 Meet-and-Confer, the Board advised that the "notations" it removed from certain documents in its October 30, 2020 production were originally added by its advisors for the purpose of performing the cash restriction analysis, and the Board agreed to provide a written explanation of the "notations," including the specific documents from which the "notations" were removed. The Board also advised that it will consider amending its privilege log to include the "notations." Ambac requests an update regarding these issues.

*October 30, 2020 Presentation.* During the December 3 Meet-and-Confer, the Board agreed to consider Ambac's request for back-up materials related to the October 30, 2020 presentation, including (without limitation) factual source materials and raw data underlying pages 57-60 of the presentation. Ambac requests an update regarding the Board's position on producing such materials. Additionally, Ambac requests clarification regarding how the cash analysis reflected on pages 57-60 of the October 30, 2020 presentation relates to the December 2020 Presentation, which also purports to measure the Commonwealth's cash as of June 30, 2020.

*December 2020 Presentation.* The December 2020 Presentation is the Board's most recent iteration of the cash restriction analysis and purportedly supersedes the previous iteration (*i.e.*, the Amended Disclosure Statement). Ambac requests back-up materials related to the December 2020 Presentation, including (without limitation) factual source materials and raw data underlying pages 7-18 and 38-43 of the December 2020 Presentation. Additionally, the December 2020 Presentation states that $3.8 billion in CARES Act funds have been classified as restricted. Ambac requests documents regarding why the Board, AAFAF, and/or their advisors contend that these funds are restricted.

*Privilege Log.* During the December 3 Meet-and-Confer, the Board advised that it would provide a written explanation regarding its assertion that the Board and the Puerto Rico Public Housing Administration shared a common legal interest with respect to the January 16, 2019 meeting that is the subject of the memorandum included as the first entry on the Board's revised privilege log, and to provide further information as to whom the memorandum was shared with. Ambac requests that the Board provide its written response to these issues as soon as possible.

Additionally, during the December 3 Meet-and-Confer, the Board confirmed that is not currently withholding any documents on privilege grounds other than the two documents included in the revised privilege log.[4]

---

[4] The Board has also refused to produce Process Documents on the grounds that such documents are, *inter alia*, privileged. *See generally Ambac Assurance Corporation's Motion for an Order Directing Rule 2004 Discovery from the Financial Oversight and Management Board for Puerto Rico* [ECF No. 15220] ("New Cash Rule 2004 Motion"); *Objection of the Financial Oversight and Management Board for Puerto Rico to Motion by Ambac Assurance Corporation for an Order Directing Cash Rule 2004 Discovery* [ECF No. 15495]; *Reply of Ambac Assurance Corporation to the Financial Oversight and Management Board for Puerto Rico's Opposition to Motion for an Order Directing Cash Rule 2004 Discovery* [ECF No. 15567].

- 6 -

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 11, 2021

> **(2) Category No. 4: Document Key**
>
> - A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (*i.e.*, Bates numbers).

In response to Ambac's New Cash Rule 2004 Motion, the Board produced certain Calculation Back-Up documents for the Duff & Phelps Report and October 2019 Presentations on December 20, 2020. However, Ambac's advisors have been unable to compare account-level details between those two documents due to inconsistencies in the manner that these documents identify particular accounts. For instance, the spreadsheet containing data and calculations underlying the Duff & Phelps Report (*i.e.*, Ambac_Cash_2004 0092820) includes columns for "UniqueFI-Acct" and "AccountID[,]" whereas the spreadsheet containing data and calculations underlying the October 2019 Presentations (*i.e.*, Ambac_Cash_2004 0092819) includes a column for "Account – Control Number." These account identifiers are inconsistent across the two spreadsheets, impeding Ambac's and its advisors' ability to analyze the evolution of account-specific information across these various iterations of the Board's cash restriction analysis.

Ambac requests a document "key" that maps the various account identifiers used across each iteration of the cash restriction analysis, including the Duff & Phelps Report, October 2019 Presentations, Amended Disclosure Statement, and December 2020 Presentation. In other words, Ambac requests a "key" identifying the full account numbers for all accounts reviewed in connection with each iteration of the cash restriction analysis and every identifier used to refer to any such account across the various iterations of the cash restriction analysis.

Additionally, Ambac requests any Calculation Back-Up documents for the December 2020 Presentation that have not already been produced.

Very truly yours,

/s/ *John J. Hughes, III*
John J. Hughes, III


cc: Grant Mainland
Atara Miller
Martin A. Sosland
Robert S. Berezin
William Natbony
Nicholas A. Bassett
John E. Mudd
Geoffrey S. Stewart