# **EXHIBIT B**

O'Melveny

O'Melveny & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, CA 92660-6429

T: +1 949 823 6900
F: +1 949 823 6994
omm.com

January 19, 2021

<u>VIA E-MAIL</u>

John Hughes, III
Atara Miller
Grant Mainland
MILBANK LLP
55 Hudson Yards
New York, New York 10001

Re:     <u>*In re Fin. Oversight & Mgmt. Bd., No. 17-BK-3283-LTS –Commonwealth Assets Rule 2004 Requests*</u>

Counsel:

I write in response to your letter dated January 11, 2021 ("January 11 Letter") in connection with Ambac's Assets Rule 2004 Motion [ECF No. 9022] ("Assets 2004 Motion").  By repeating Ambac's headings, AAFAF does not reflect any acceptance or agreement by AAFAF that the materials sought are within the scope of Ambac's original requests or within the acceptable bounds of Rule 2004 discovery.

**A. Category No. 1: Assets (current and transferred/encumbered)**

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*

- *A list of the Commonwealth's current assets*.

    ***Prioritized Commonwealth Assets***.  Your January 11 Letter asserts that Ambac is entitled to Rule 2004 discovery in the Commonwealth's Title III case from independent public corporations, including those who are not even Title III debtors, on the theory that all the assets of public corporations belong to the Commonwealth absent an explicit transfer of ownership. The central government does not own all assets of every governmental entity, regardless of whether the assets could be traced to Commonwealth appropriations.  Puerto Rico's public corporations are separate legal entities with the right to acquire and to own property in their own names.  *E.g.*, 3 L.P.R.A. § 1906 (empowering PRIFA to acquire "acquire . . . real or personal property"); 7 L.P.R.A. § 552 (same for GDB); 9 L.P.R.A. § 2004 (same for HTA); 23 L.P.R.A. § 6412 (same for CCDA); 23 L.P.R.A. § 311f (same for PRLA); *see also e.g.*, 23 L.P.R.A. §§ 311b(a), 311e (establishing that the PRLA is "a public corporation or government instrumentality having a juridical personality separate and apart from that of the Commonwealth of Puerto Rico," and that "[t]he debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, printed matter, and property of the [PRLA] shall be deemed to be

Case:17-03283-LTS   Doc#:15690-2   Filed:01/21/21   Entered:01/21/21 20:53:17   Desc:
Ex. B - AAFAFs letter to Ambac dated January 19   2021   Page 3 of 5

O'Melveny

those of the [PRLA] and not those of the Commonwealth of Puerto Rico or of any agency, official or employee thereof.").[1] There is no statutory or constitutional provision establishing that the assets of Puerto Rico's independent corporations are available to the Commonwealth or that the Commonwealth has authority to access such assets. These independent corporations have their own assets and their own creditors.

The CCDA Order[2] held that hotel tax revenues collected pursuant to the Commonwealth's taxing power belong at the outset to the Commonwealth, because the Puerto Rico Constitution does not allow the Commonwealth to "divest itself of the power to impose and collect taxes." CCDA Order at 26. That order does not stand for the sweeping proposition that all assets of independent governmental corporations belong to the Commonwealth until proven otherwise. Ambac's reliance on the Commonwealth's fiscal plan and budget is also misplaced. Just because the fiscal plan and budget "include a variety of line items that involve funding to agencies, instrumentalities, or public corporations" (January 11 Letter at 2) does not mean that the assets of public corporations are owned by the Commonwealth. Rather, such "line items" reflect that the Commonwealth and the Oversight Board have made decisions with regard to how the Commonwealth will spend the Commonwealth's money.

Ambac's attempts to expand the scope of Rule 2004 discovery in the Commonwealth's Title III case to reach independent public corporations that are not Title III debtors are improper, as such discovery does not bear on the Commonwealth's financial condition. *See* Fed. R. Bankr. P. 2004(b) (allowing discovery about the financial condition of "the debtor"); *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25, 2008) (Federal Rule of Bankruptcy Procedure 2004 "[i]s not a proper means to inquire with respect to non-estate property").

In the spirit of compromise, and without waiving objections, AAFAF has agreed to determine what materials in response to the prioritized asset requests from the independent corporations are readily accessible. AAFAF aims to complete those efforts by the end of this month. However, AAFAF does not agree that this information is within the scope of permissible discovery, nor does AAFAF's willingness to provide any such information represent any waiver of AAFAF's position regarding the ownership of the underlying assets.

You requested an update regarding AAFAF's efforts to obtain additional materials regarding the prioritized asset requests. Today, AAFAF produced documents pertaining to properties 38-42 on Ambac's March 16, 2020 list.[3] AAFAF is aiming to provide what documents or information are readily accessible for the remaining properties by the end of this month.

---

[1] Ambac's reliance on 31 L.P.R.A. § 1025 is misplaced. That provision does not provide that the Commonwealth owns the assets of public corporations. Rather, its purpose is to establish that there is a difference between things that are for public use by their nature (e.g., roads and public works) and things that are capable of being owned. Even if the statute could be read as broadly as Ambac argues (and it cannot), it must yield to more specific statutes that specifically endow public corporations with the power to acquire property. *See Basic Controlex Corp., Inc. v. Klockner Moeller Corp.*, 202 F.3d 450, 453 (1st Cir. 2000) ("[T]he Supreme Court of Puerto Rico has made it clear that, when faced with a conflict between provisions in a specific statute . . . and the terms of a general law . . . the provisions of the specific statute prevail.").

[2] *Opinion and Order in Connection with Preliminary Hearing Regarding Motion Concerning Application of the Automatic Stay to the Revenues Securing the CCDA Bonds* [ECF No. 13540].

[3] ASSETS_2004_0002170 - ASSETS_2004_0002272, ASSETS_2004_0002314 - ASSETS_2004_0002372.

Case:17-03283-LTS Doc#:15690-2 Filed:01/21/21 Entered:01/21/21 20:53:17 Desc:
Ex. B - AAFAFs letter to Ambac dated January 19 2021 Page 4 of 5

O'Melveny

***AAFAF Assets Review***. Your January 11 Letter requests an update on AAFAF (i) confirming that the Prioritized Commonwealth Entities[4] did not submit certifications in response to the November 25, 2019 AAFAF memorandum, (ii) requesting certifications from the Prioritized Commonwealth Entities that have not yet submitted such certifications, and (iii) investigating whether similar property lists are available from Commonwealth entities that have not submitted certifications. You state that you intend to request leave from the Court to seek deposition testimony from the Prioritized Commonwealth Entities.

For the reasons stated above and in AAFAF's December 4, 2020 letter, AAFAF will object to any motion to allow Ambac to take the depositions of the Prioritized Commonwealth Entities as unduly burdensome and disruptive to the government's operations, and as beyond the scope of permissible Rule 2004 discovery.

With respect to your questions, AAFAF confirms that it has produced all of the certifications in response to the November 25 AAFAF memorandum that CEDBI has received. AAFAF is also in the process of following up with the Prioritized Commonwealth Entities regarding any response to the November 25 AAFAF memorandum and to determine if the entities have a similar property list. To the extent AAFAF receives certifications in response or locates similar property lists, it will produce them. Toward that end, today AAFAF produced a property list that we obtained for PBA.[5]

***Ad Valorem Taxes / Tax Arrears***. CRIM is legally separate from the Commonwealth and is not a Title III entity. 21 L.P.R.A. § 5802. Therefore, for the reasons stated above, financial discovery from CRIM is beyond the scope of Rule 2004 discovery in the Commonwealth's Title III case. AAFAF has agreed to work with CRIM to determine what information is readily accessible that may be provided regarding CRIM's receivables. Today, we produced a spreadsheet of data from CRIM showing aging accounts receivable balances for real and personal property taxes through Fiscal Year 2019 broken down by fiscal year and by municipality.[6] This data is preliminary and is subject to change, particularly as AAFAF and CRIM plan to retain a third-party consultant to assess the value of CRIM's receivable portfolio.[7] Today we also produced the 2017 third-party offer to purchase CRIM's tax arrears portfolio.[8] We continue to investigate whether any related backup materials related to this offer are available.

AAFAF is reviewing the requests communicated in Ambac's January 11 Letter and will respond separately to those new requests once AAFAF has completed its review.

---

[4] The term "Prioritized Commonwealth Entities" has the meaning ascribed in your November 25, 2020 letter.
[5] ASSETS_2004_0001794.
[6] ASSETS_2004_0002154.
[7] *See* RFP: Strategic Advisory & Valuation of Property Tax Debts and Associated Tax Liens (Aug. 17, 2020), *available at* https://aafaf.pr.gov/administrative-documents/#rfps-rfqs.
[8] ASSETS_2004_0002273.

O'Melveny

AAFAF will make reasonable efforts to complete as much of its investigation as possible by the end of January 2021. However, regarding the new requests made for the first time in your January 11 Letter, more time will be required.

Sincerely,

/s/ *Elizabeth L. McKeen*

Elizabeth L. McKeen

4