# EXHIBIT A

FROM:
Graciela Vázquez Lagomarsini
PO Box 1322
Gurabo, P.R. 00978

SHIP TO:
11 TIMES SQ
NEW YORK NY 10036-6600

USPS TRACKING® NUMBER
9505 5162 0946 0098 4838 39

TO:
Counsel for the
Oversight Board
Proskauer Rose LLP
Eleven Time Square
New York, NY 10036

PRIORITY MAIL
UNITED STATES POSTAL SERVICE
For Domestic and International Use
TRACKED INSURED
Label 107R, May 2014

Route
Deliver To
(Floor / Room)
3011
Stultz, Dontae
Sender
GUACIELA V...
INB0235273
Signature Required

ReadyPost

# UNITED STATES DISTRICT COURT
# FOR THE DITRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>As representative of:<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor | PROMESA<br>Title III<br><br>NO. 17 BK 3283 - LTS |

### CREDITOR'S RESPONSE TO DEBTORS "ONE HUNDRED SEVENTY-SIXTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO CLAIM ASSERTING LIABILITIES BY ENTITIES THAT ARE NOT TITLE III DEBTORS"

**TO THE HONORABLE COURT:**

**COMES NOW,** CONSOLIDATED WASTE SERVICES, LLC AND LANDFILL TECHNOLOGIES OF FAJARDO, LLC ("Creditors") creditor and party in interest, through the undersigned counsel, and very respectfully STATES, ALLLEGES and PRAYS as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to PROMESA § 306 (a) [48 U.S.C. §§ 2102, *et seq*]; the Venue is proper in this district pursuant to PROMESA § 307 (a). The Creditor is allowed to respond, in compliance to the Local Rule 3007-1. Also, Judge Swain, permitted the use of Omnibus Objection in accordance to Bankruptcy Rule 3007(d)(1)-(7), where the

debtor may object to the Claim on non-substantive matters. This Court has also allowed the use of Omnibus Objections in substantive grounds.

## CLAIMS

2. On March 2020, Creditors received the ONE HUNDRED SEVENTY-SIXTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO CLAIM ASSERTING LIABILITIES BY ENTITIES THAT ARE NOT TITLE III DEBTORS (the "Objection").

3. The Objection requested the dismissal and/or to disallow the Proofs of Claim submitted by the Creditors. Within the appropriate manner, Creditor's submitted legitimate Proof of Claims, for the following uncollected debts, unpaid by the Commonwealth of Puerto Rico: University of Puerto Rico, Humacao campus, Claim number - 23654, amount $416.57; University of Puerto Rico, Ciencias Médicas (Anatomía y Neurología), campus Claim number – 23662 amount $170.80; University of Puerto Rico, Arecibo Campus, Claim number- 23665, amount $13,157.68; University of Puerto Rico, Rio Piedras Campus, Claim number – 23667 amount $1,320.00; Autoridad de Acueductos y Alcantarillados, Claim number – 23130, amount $63,769.18; University of Puerto Rico, Central Administration, Claim number- 23671, amount $5,047.51; University Of Puerto Rico – Ciencias Médicas Campus, Claim number – 21133, amount $14,100.18; University of Puerto Rico – Ciencias Medicas Capus, Claim number – 24326, amount $33,745.79; Autoridad de Acueductos y Alcantarillados, Claim number – 24348, Amount $455.00; Autoridad de los Puertos, Claim number – 24263, Amount $4,987.78; University of Puerto Rico – Ponce Campus, Claim number – 28145, Amount $608.88; Autoridad de Acueductos

y Alcantarillados, Claim number – 27826, Amount $6,075.00; Compañía de Comercio y Exportación de Puerto Rico, Claim number – 28156, Amount $22,078.99; Autoridad de Acueductos y Alcantarillados, claim number – 26646, Amount $14,441.93; University of Puerto Rico – Bayamón Campus, Claim number – 28056, Amount $596.14; Autoridad de Acueductos y Alcantarillados, Claim number – 28174, Amount $11,953.78; Autoridad de Acueductos y Alcantarillados, Claim number – 28182, Amount $1,335.96; Compañía de Fomento Industrial, Claim number – 28082, Amount $1,238.14; University of Puerto Rico – Central Administration, Claim number 28110, Amount $11,105.83; Compañía de Turismo de Puerto Rico, Claim number – 28112, Amount $22,090.35; University of Puerto Rico – Hospital Dr. Federico Trilla, Claim number – 35800, Amount $27,284.68; Instituto de Cultura Puertorriqueña, Claim number – 28131, Amount $2,363.08; University of Puerto Rico – Hospital Dr. Federico Trilla, Claim number – 28135, Amount $14,369.96; University of Puerto Rico – Mayagüez Campus, Claim number – 28141, Amount $949.90; Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, Claim number – 35855, Amount $11,823.09; Autoridad de Acueductos y Alcantarillado, Claim number – 35996; Amount $28,485.27; Autoridad de Acueductos y Alcantarillado, Claim number – 27063, Amount $2,268.00.

4. The grounds for the Objection was that Creditors' Proofs of Claim failed to provide basis for claims against the Commonwealth of Puerto Rico and only showed liability between Creditors and entities that are not part of the Title III proceedings.

3

5. However, the Proofs of Claim submitted by Creditors are against agencies or departments that fall under the umbrella of the Commonwealth and comply with the definition of Commonwealth as stated in the Covered Entities List[1] and in PROMESA.

6. Section 2104 of PROMESA defines the following terms:

   a. **(5) Puerto Rico**
   The term "Puerto Rico" means the Commonwealth of Puerto Rico.
   b. **(7) Covered territorial instrumentality**
   The term "covered territorial instrumentality" means a territorial instrumentality designated by the Oversight Board pursuant to section 2121 of this title to be subject to the requirements of this chapter.
   c. **(8) Covered territory**
   The term "covered territory" means a territory for which an Oversight Board has been established under section 2121 of this title.
   d. **(11) Government of Puerto Rico**
   The term "Government of Puerto Rico" means the Commonwealth of Puerto Rico, including all its territorial instrumentalities.
   e. **(18) Territorial government**
   The term "territorial government" means the government of a covered territory, including all covered territorial instrumentalities.
   f. **(19) Territorial instrumentality**
   (A) **In general**
   The term "territorial instrumentality" means any political subdivision, public agency, instrumentality—including any instrumentality that is also a bank—or public corporation of a territory, and this term should be broadly construed to effectuate the purposes of this chapter.

7. Consolidated Waste Services, LLC, and Landfill Technologies Fajardo, LLC, respectfully submit this Creditor's Response in compliance to Local Rule for the "One Hundred Seventy-Sixth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Claim Asserting Liabilities by Entities that are not Title III Debtors" on the premise that the aforementioned legitimate proofs of claim are against debtors under Title III

---

[1] Commonwealth of Puerto Rico (Primary Government) includes, all departments, offices, programs, etc. and all funds related to Governmental and Business Activities of the Primary Government such as the General Fund Operating Budget and Non-Budgetary Funds. Case 3:17-cv-01578-LTS Document 1-4 filed 05/03/17.

4

proceedings. As such, we respectfully disagree with Debtors Objection due to the following:

## CREDITOR'S RESPONSE

8. Consolidated Waste Services, LLC is a limited liability corporation duly organized under the laws of the Commonwealth of Puerto Rico. Since 2002, it provides the essential services of non-hazardous waste collection and management, recycling services and operation of landfills through the island.

9. Landfill Technologies of Fajardo, LLC is a limited liability corporation duly organized under the laws of the Commonwealth of Puerto Rico. The company operates and administrate landfills and provides services for the management of solid waste, recyclables, special waste and regulated biomedical waste.

10. Section 7, 48 USC § 2106 of PROMESA states:

> Except as otherwise provided in this chapter, nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program **protecting the health, safety, and environment of persons in such territory.** (emphasis added).

11. PROMESA also establishes that:

> This chapter may not be construed to permit the discharge of obligations arising under Federal police or regulatory laws, including laws **relating to the environment, public health or safety,** or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties. 48 USC 2164 § (h). Emphasis added.

12. Creditors provided all the essential waste collection services under valid and legal Contracts with different entities under the umbrella of the Commonwealth of Puerto Rico.

5

13. The Debtor owns an outstanding debt, in violation of the previous agreements constituted by the parties. It is imperative that the amount owed to the Creditors for provided services is paid in full. More so when Creditors fall into essential services category. To disallow the claimant's debt collection is to attempt against public health, the safety and welfare of the people of Puerto Rico.

14. As defined above, Puerto Rico and/or Commonwealth of Puerto Rico includes its agencies and departments. They receive all or part of its funds from the Central or Primary Government. This means that any budget plan approved will affect such entities, the Debtor and its Creditors.

15. Governmental responsibilities assumed by the central government of the Commonwealth are similar in nature to those of the various state governments with their focus on the health, safety, and welfare of its citizens (including, among others, education, public health and welfare programs, and economic development). Unlike the states, however, the central government also assumes responsibility for local police and fire protection.

16. There are also many governmental and quasi-governmental functions performed by public corporations created by the Legislative Assembly with varying degrees of independence from the central government. Public corporations may obtain revenues from rates charged for services or products, but many also receive sizable subsidies from the central government to fund operations. Most public corporations are governed by boards whose members are appointed by the Governor with the advice and consent of the Puerto Rico Senate.

17. As an example, in state court, in order to file a claim against many of the herein contained entities, it's required that the Plaintiff provide summons to the Commonwealth of Puerto Rico, by means of its Secretary of Justice. This is extremely important regarding the remedy the courts can provide to the Creditors. Since all the above detailed agencies fall under the Commonwealth of Puerto Rico, to disallow the Creditors' claims results-in practice- in an absence of remedy by law. Creditors will not have any means to collect the amount owed for the legal and valid services provided to the government.

18. If the Honorable Court determines that these claims are not allowed or covered by the Title III proceedings, there is no other actual, material and/or existing forum to advocate these claims.

**BASIS FOR THE RESPONSE**

19. As discussed in the previous paragraph, the submitted Proofs of Claims are filed in pursuit of breach of contract by the Commonwealth of Puerto Rico and unpaid debts for services performed. As of today, the accumulated debt of the claims ascends to more than **$316,239.49**, of unpaid waste disposal services from the following debtors: Several Campuses, and University Hospitals of the University of Puerto Rico; Autoridad de Acueductos y Alcantarillados; Autoridad de los Puertos; Compañía de Comercio y Exportación de Puerto Rico; Compañía de Fomento Industrial; Compañía de Turismo de PR; Instituto de Cultura Puertorriqueña; Autoridad para el Financiamiento de la Infraestructura de Puerto Rico. All the described debtors fall under the Commonwealth of Puerto Rico's umbrella.

7

20. <u>University of Puerto Rico:</u> It is not a mystery that the University of Puerto Rico receives most of its funds from the general fund of the Commonwealth of Puerto Rico. Under the "University of Puerto Rico budget funding Law" [Ley Núm. 2 de 20 de enero de 1966, según enmendada], the central government assigns to the University of Puerto Rico 9.6% of the general fund of the Commonwealth of Puerto Rico, giving the University the overwhelming credit power to give and make contracts with other private entities, in order to maintain general operations in the different campuses and hospitals, and fund different projects. Although, the University has certain autonomy in contracting, the real power comes from the funds assigned by the Commonwealth of Puerto Rico. Failing to see this will put in jeopardy the Creditors represented in this Response. Without a doubt, the Commonwealth of Puerto Rico represents the monetary "cash cow" of the University of Puerto Rico.

21. <u>Autoridad de Acueductos y Alcantarillados:</u> The biggest debtor of the current claims, also falls under the Commonwealth of Puerto Rico's umbrella. As the sole of provider of water services in Puerto Rico, it represents an outstanding debtor. It doesn't operate independently from the Commonwealth of Puerto Rico and it falls under its jurisdiction. Although the legislative branch gave "Acueductos" the capacity to emit bonds to develop and finance the projects [Ley Núm. 40 de 1 de mayo de 1945, según enmendada], throughout the year, "Acueductos", because of its inability to establish liquidity, had to rely more on the government general fund to finance its operations.

22. <u>Autoridad de los Puertos:</u> The "Ley Núm. 125 de 7 de mayo de 1942, según enmendada", creates a public corporation to attend, and administrate transport facilities, as airports,

commercial ports, and airline and maritime transportation services. The principal law of the entity gives it the power to publicly trade bonds, and revenue from port and airport fees. This agency, although it has its own revenues, makes all the deposits on behalf of the Commonwealth of Puerto Rico. The Port Authority continues to be part of the Commonwealth, even if it has separate accounts.

23. <u>Compañía de Comercio y Exportación de Puerto Rico</u>: This entity was created to promote the economic development of the island, specifically the small businesses, and the export of goods and services. The "Ley Núm. 323 de 28 de diciembre de 2003, según enmendada", provides the power for the agency to emit bonds, receive loans, and special assignation of governmental funds, to supply the necessary budget to keep the agency functional. This has been the case for several years, since the Commonwealth of Puerto Rico gave the entity millions of dollars to keep it afloat. If it wasn't for the Commonwealth of Puerto Rico, this "public company" would not have survived.

24. <u>Compañía de Fomento Industrial</u>: The "Ley Núm. 188 de 11 de mayo de 1942, según enmendada", gives the power to this public company to promote the research and development industry of Puerto Rico, acquire properties, and give incentives and loans to different privet entities in the Island. For years, The Puerto Rico Industrial Development Company (PRIDCO) was pillar in promoting the export of rum in Puerto Rico, making millions of dollars a year. In present day, PRIDCO has changed the perspective, and has focused the efforts to promote Puerto Rico as a fiscal paradise, promoting local legislation (Ley 20 y 22). In the past, more than half of the budget of the corporation came from special assignment by the Commonwealth of Puerto Rico. It is not until the PROMESA

9

legislation that PRIDCO change the budgetary source and used the company's income to establish a heaty budget. At the time ConWaste established a contract with PRIDCO, neither PROMESA nor the Puerto Rico Financial Oversight Board had been established in Puerto Rico. This has been the case for several years, since the Commonwealth of Puerto Rico gave the entity millions of dollars to keep it afloat. If it wasn't for the Commonwealth of Puerto Rico, this "public company" would not have survived.

25. <u>Compañía de Turismo de Puerto Rico</u>: The Puerto Rico Tourism Company is the main public corporation responsible for stimulating, promoting and regulating the development of Puerto Rico's tourism industry. The "Ley 10 de 18 de julio de 1970, según enmendada", is the law that gives power to this public corporation to administer more than half of the public funds provided by the Commonwealth of Puerto Rico. For the Puerto Rico Tourism Company, although it is considered a self-sustaining entity, half of the entire budget comes is provided by the Commonwealth of Puerto Rico. Although this entity has the capacity to emit public bonds, and take out loans, the Commonwealth of Puerto Rico gave the entity millions of dollars to keep it afloat. If it wasn't for the Commonwealth of Puerto Rico, this "public company" would not have survived.

26. <u>Instituto de Cultura Puertorriqueña</u>: Instituto de Cultura Puertorriqueño (ICP), also falls under the Commonwealth of Puerto Rico's umbrella, solely received the totality of his funds from the Commonwealth of Puerto Rico [Ley Núm 89 de 21 de junio de 1955]. It's not until 2016, that ICP begun to outsource their source of income [Ley 189 – 2016] for operational purposes. Currently, that is not the reality of the ICP, more than half of the budget comes from the general fund of the Commonwealth of Puerto Rico. That

10

represents an outstanding debtor, it doesn't operate independently from the Commonwealth of Puerto Rico. Therefore, it must be included on as part of the Commonwealth.

27. <u>Autoridad para el Financiamiento de la Infraestructura de Puerto Rico (AFI)</u>: This instrumentality of the Commonwealth of Puerto Rico was created to provide necessary financial assistant, administration, technical consulting to other entities and public corporation under Commonwealth of Puerto Rico umbrella. Several forms of financial support were offered, including loans, subsidies, and other forms of financial assistance for the development of new construction projects, existing infrastructure mannites, among several things. Capitalizing on rum taxes, the Treasury Department of Puerto Rico provided "AFI" with the funding to establish a budget dedicated to new infrastructure and renovations, among other things. All the same, for several years, AFI has received, not only the Rum tax management of the funds, but also a great budgetary assignation from the Commonwealth of Puerto Rico.[2]

28. The Creditors acknowledges that -on its face- legal remedies exists to advocate these claims. However, in practicality those remedies are not granted by state courts due to the stay established by PROMESA and the definition of Commonwealth of Puerto Rico. This misunderstanding affects greatly Creditors right to debt collection.

29. "A basic tenet of federal bankruptcy law is that the automatic stay suspends creditor collection efforts and litigation against a debtor that files for bankruptcy protection, **but does not apply to actions directed toward non-debtor third-parties […] The**

11

**automatic stay generally does not bar acts against non-debtors (such as a co-debtor) who is liable on a debt with the debtor".** *See* Queenie, Ltd. v. Nygaard Int'l, 2003 WL 462416 (2d Cir. Feb. 25, 2003), Croyden Associates v. Alleco, Inc., 969 F.2d 675 (8th Cir. 1992), Teachers Insurance and Annuity Ass'n v. Butler, 803 F.2d 61 (2d Cir. 1986), McCartney v. Integra National Bank North, 106 F.3d 506 (3d Cir. 1997), In re Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.), 26 B.R. 420 (Bankr. S.D.N.Y. 1983), A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986), In re Winer, 158 B.R. 736 (N.D. Ill. 1993), In re Hudgins, 153 B.R. 441, 443-44 (Bankr. E.D. Va. 1993), In re Beck Industries, Inc., 479 F.2d 410, 415 (2d Cir.), cert. denied sub. nom. Trustees of Beck Industries, Inc. v. Feldman, 414 U.S. 858 (1973), B.F. Goodrich v. Betkoski, 99 F.3d 505 (2d Cir. 1996).

30. Due to the above, the Creditors respectfully request this Honorable Court to allow the Claims herein described and determine that these entities are under the umbrella of the Commonwealth and under Title III proceedings.

31. In the alternative, the Creditors respectfully request this Honorable Court to elucidate the basis of the Debtors objection, specifically the reasons and/or which entities are not covered under Title III proceedings and, as such, that automatic stay does not apply to these entities and/or claims.

## NOTICE

32. Notice of this Urgent Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the U.S. Attorney for the District of Puerto Rico; (iii) the Financial Oversight and Management Board.

## CERTIFICACION

33. Respondent to the Omnibus Objection, hereby certifies that it has carefully examined the matter and concluded that there is a true need for a Response to the Debtors Omnibus Objection, and has engaged in reasonable, good faith communication in effort to resolve or narrow the issue that are being brought before this Court in this Creditors Response.

## CONCLUSION

34. The Creditors respectfully submit this Creditor's Response requesting our valid proof of claims be recognized under the umbrella of the Commonwealth of Puerto Rico and under Title III proceedings. In the alternative, the Creditors respectfully request an explicit response from this Honorable Court. The sole purpose of this request is to clarify the basis on which these valid claims are disallowed in Title III and the application (if any) of the stay established by PROMESA.

35. Creditors fall into the essential services category. Creditors provided the services legally and bindingly agreed in the contracts. The entities herein described breached their contractual obligations and failed to pay for the services provided. To disallow the Creditors debt collection is to attempt public health, safety and well living among the people of Puerto Rico.

36. The Creditors seek that these claims be included in and be allowed under Title III proceedings.

37. In the alternative, the Creditors seek confirmation from this Honorable Court that the claims are not stayed under PROMESA and Creditor may take its claims to state court.

**WHEREFORE**, the Creditors, respectfully submit this Creditor's Response, and prays this Court

13

takes notice of the above stated; that this motion be granted and/or order any other remedies provided by law.

/s/Graciela Vázquez Lagomarsini
USDC NO. 230704
/s/ Javier Vázquez Bravo
USDC NO. 227808
Attorney for Creditor
PO Box 1322
Gurabo, PR 00978
Phone (787) 273-7639
E-mail: gvlagomarsini@landfillpr.com

## CERTIFICATE OF SERVICE

I hereby certify that I field this document with the Clerk of the Court, and will send notifications of such filing to all parties of record in the captioned case.

**RESPECTFULLY SUBMITTED.**

At San Juan, Puerto Rico, the 7th of April, 2020

By: /s/ Graciela Vázquez Lagomarsini

14