## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                             Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and HTA.** |

### TWO HUNDRED NINETY-FOURTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY TO DUPLICATE AND SECONDARILY INSURED BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Highways and Transportation Authority ("HTA," and together with the Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' sole Title III representative pursuant to section 315(b) of the *Puerto Rico*

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801)  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] file this two hundred

ninety-fourth omnibus objection (the "Two Hundred Ninety-Fourth Omnibus Objection") to

proofs of claim that are duplicative of one or more master proofs of claim asserted against the

Commonwealth or HTA on behalf of the holders of certain bonds, each as listed on **Exhibit A**

hereto, and in support of the Two Hundred Ninety-Fourth Omnibus Objection, respectfully

represent as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section

306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders**

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth of Puerto Rico (the "Commonwealth") pursuant to PROMESA section 304(a),

commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21,

2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections

104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section

304(a), commencing a case under Title III thereof (the "HTA Title III Case," and together with the

Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order

---

[2]      PROMESA is codified at 48 U.S.C. §§ 2101-2241.

granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  By the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      Bond Debt Master Proofs of Claim – HTA Title III Case**

5.      HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-

---

[3]  Unless otherwise noted, all ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted

February 26, 1998 (the "1998 Resolution").   As of May 21, 2017, HTA's petition date,

approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain

outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998

Resolution remain outstanding.   BNYM serves as fiscal agent with respect to the HTA Bonds.

      6.     On behalf of the holders of the HTA Bonds, BNYM filed three master proofs of

claim in the HTA Title III Case (collectively, the "HTA Title III Master Claims"): Proof of Claim

No. 37245, asserting on behalf of holders of bonds issued under the 1968 Resolution

approximately $847 million in liabilities plus unliquidated amounts; Proof of Claim No. 38574,

asserting on behalf of holders of bonds issued under the 1998 Resolution approximately $3.2

billion in liabilities plus unliquidated amounts; and Proof of Claim No. 32622, asserting on behalf

of holders of subordinated bonds issued under the 1998 Resolution approximately $279 million in

liabilities plus unliquidated amounts.

      7.     Certain bonds issued by HTA have been insured by one of several municipal bond

insurers, either on the primary market or on the secondary market.   Municipal bond insurance is

obtained on the primary market when the municipality issuing the bonds engages an insurance

company to underwrite an insurance policy for that series of bonds.   In the event that a bond is not

insured on the primary market, holders of such uninsured bonds may elect to obtain insurance via

the secondary market.   Holders of uninsured bonds who seek to obtain insurance in the secondary

market contract directly with a municipal bond insurer and the original issuer is not part of this

contract process.   When a holder of an uninsured bond obtains an insurance policy on the

secondary market, a new CUSIP number is issued which corresponds to the original CUSIP

numbers assigned to the bonds at the time of issuance.   Certain bonds issued by HTA have been

insured on the secondary market and, accordingly, have been issued new CUSIP numbers which
correspond to bonds issued by HTA bearing original CUSIP numbers (the "Secondarily Insured
HTA Bonds").

### C.     PBA Bond Debt Master Proofs of Claim – Commonwealth Title III Case

8.      Puerto Rico Public Buildings Authority ("PBA") purportedly issued Revenue
Bonds to finance office buildings and other facilities leased to various departments, public
agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust (collectively,
"US Bank") serve as fiscal agents for certain revenue bonds issued by PBA (as identified in
Footnote 3 of Proof of Claim No. 62833, the "PBA Bonds"), and on behalf of the holders of the
PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding
amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of
Claim No. 62833.[4]  The PBA Master Claim asserts liquidated claims for approximately $4 billion
in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for
fees and expenses of the fiscal agents, in addition to unliquidated and contingent claims for any
and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating
to the outstanding Bond obligations, whether known or unknown against the Commonwealth and
all those purporting to act on the Commonwealth's behalf . . . ."  Rider to PBA Master Claim, ¶¶
19-21.

9.      On April 23, 2009, pursuant to the terms of that certain trust agreement between
PBA and US Bank, PBA deposited with US Bank payment of refunding bond proceeds the interest
on and principal amount of the outstanding principal amount of certain PBA Bonds.   *See*

---

[4]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was
initially filed by the Fiscal Agent.

Attachment 1, *Notice of Defeasance*, dated April 23, 2009.  As a result of that transaction, certain

PBA Bonds were partially defeased and refunded (the "Partially Defeased PBA Bonds").  The

refunded portion of the Partially Defeased Bonds was assigned CUSIP number 745235B67 (the

"Refunded Bond"), and the unrefunded portion of the Partially Defeased Bonds was assigned

CUSIP number 745235S93 (the "Unrefunded Bond").  These refunded and unrefunded CUSIPs

correspond to the original CUSIP numbers assigned to the bonds at the time of issuance (the

"Defeased Bonds").

**D.      ERS Bond Debt Master Proof of Claim – Commonwealth Title III Case**

10.     The Employees Retirement System of the Government of the Commonwealth of

Puerto Rico ("ERS") is an agency of the government, separate and apart from the Commonwealth

government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[5]  Purportedly pursuant to that

certain Pension Funding Bond Resolution, adopted on January 24, 2008, and certain supplemental

resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the

aggregate original principal amount of approximately $2.9 billion.[6]  The Bank of New York

Mellon ("BNYM") serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the

---

[5]   On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to
PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to
PROMESA section 304(a), commencing a case under Title III thereof.

[6]   On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection
to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the
ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*,
rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired
Employees of the Commonwealth of Puerto Rico filed an *Omnibus Objection Of The Official
Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy
Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS
Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground,
among others, that the bond issuance was *ultra vires*.  ERS reserves its rights to challenge the bond
issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*,
and any other grounds set forth in the foregoing objections.

holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case, which was logged by Prime Clerk, LLC, as Proof of Claim No. 32004 (the "ERS Master Claim," and together with the HTA Title III Master Claims and the PBA Master Claim, the "Master Proofs of Claim").[7]

### E.   Proofs of Claim, Omnibus Objection Procedures, and Claim Objections

11.     To date, approximately 173,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

12.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  Approximately 2,250 proofs of claim have been filed in relation to, or reclassified to be asserted against, HTA.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

13.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus

---

[7] On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this Seventy-Third Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

Procedures Motion"). The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures"). On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

14.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

15.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held 12 hearings related to over 140 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), HTA, and/or ERS. Based upon rulings and orders of the Court to date,

approximately 56,000 claims asserting \$43 trillion in liability against the Commonwealth, COFINA, HTA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

16.     This Two Hundred Ninety-Fourth Omnibus Objection is filed in accordance with the Court's Omnibus Objection Procedures.

### OBJECTIONS TO PROOFS OF CLAIM

17.     The Amended Omnibus Objection Procedures allow the Debtors to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Two Hundred Ninety-Fourth Omnibus Objection seeks to disallow, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Amended Omnibus Objection Procedures, claims that are duplicative of other proofs of claim filed in the Title III Cases.

19.     Each claim identified in **Exhibit A** hereto (collectively, the "Claims to Be Disallowed") purports to assert liability against the Commonwealth or HTA associated with either (*i*) PBA Bonds, HTA Bonds, and/or ERS Bonds that are duplicative of one or more Master Proofs of Claim (the "Duplicative Bond Claims"), which as described above, were filed in the Title III Cases on behalf of the holders of certain bonds issued by PBA, HTA, and/or ERS; (*ii*) Secondarily Insured HTA Bonds that are duplicative of liabilities asserted by one or more Master Proofs of Claim filed in the Title III Cases on behalf of the holders of bonds issued by HTA (the "Secondarily Insured Bond Claims") or (*iii*) Unrefunded Bonds which are duplicative of liabilities asserted by one or more Master Proofs of Claim filed in the Title III Cases on behalf of the holders of certain bonds issued by PBA (the "Unrefunded Bond Claims").

20.     Each of the Duplicative Bond Claims purports to assert liability against the Commonwealth and HTA associated with one or more bonds that is duplicative of one or more Master Proofs of Claim, which, as described above, were filed in the Title III Cases on behalf of the holders of certain bonds.

21.     Each of the Secondarily Insured Bond Claims purports to assert liabilities associated with Secondarily Insured HTA Bonds.  The CUSIP numbers associated with such Secondarily Insured HTA Bonds correspond to bonds issued by HTA bearing original CUSIP numbers.  Those original CUSIP numbers, which reflect bond issuances in which the claimants hold ownership interests, are listed in one or more Master Proofs of Claim.  Therefore, the Secondarily Insured Bond Claims assert liabilities associated with bonds issued by HTA that are duplicative of liabilities asserted by one or more Master Proofs of Claim.

22.     Each of the Unrefunded Bond Claims asserts liabilities associated with Unrefunded Bonds.  The CUSIP numbers associated with such Unrefunded Bonds correspond to bonds issued by PBA bearing original CUSIP numbers.  Those original CUSIP numbers are listed in one or more Master Proofs of Claim.  Therefore, the Unrefunded Bond Claims assert liabilities associated with bonds issued by PBA that are duplicative of liabilities asserted by one or more Master Proofs of Claim.

23.     Because each of the Duplicative Bond Claims, the Secondarily Insured Bond Claims, and the Unrefunded Bond Claims are duplicative of one or more Master Proofs of Claim, any failure to disallow the Claims to Be Disallowed will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth or HTA, to the detriment of other stakeholders in the Title III Cases.  The holders of the Claims to Be Disallowed

will not be prejudiced by the disallowance of their claims because the liabilities associated with their claims are subsumed within one or more Master Proofs of Claim.

24.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Two Hundred Ninety-Fourth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority to Duplicate and Secondarily Insured Bond Claims*, dated January 22, 2021, attached hereto as **Exhibit B**.

## NOTICE

25.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Debtors are providing notice of this Two Hundred Ninety-Fourth Omnibus Objection to (a) the individual creditors subject to this Two Hundred Ninety-Fourth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this Two Hundred Ninety-Fourth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Two Hundred Ninety-Fourth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

26.     No prior request for the relief sought in this Two Hundred Ninety-Fourth Omnibus Objection has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Debtors such other and further relief as is just.

Dated: January 22, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative for the Commonwealth of
Puerto Rico and the Puerto Rico Highways
and Transportation Authority*

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,<br><br>como representante del<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,<br><br>Deudores.[1] | PROMESA<br>Título III<br><br>Núm. 17 BK 3283-LTS<br><br>(Administrado Conjuntamente)<br><br>**La presente radicación guarda relación con el ELA y la ACT.** |

## DUCENTÉSIMA NONAGÉSIMA CUARTA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DE LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO A RECLAMACIONES DUPLICADAS Y POR BONOS ASEGURADOS EN EL MERCADO SECUNDARIO

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA") y la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT", y junto con el ELA, los "Deudores"), a través de la Junta

---

[1]     Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de Casos de Quiebra debido a ciertas limitaciones en el programa informático).

de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como

el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para*

*la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican

esta ducentésima nonagésima cuarta objeción global (la "Ducentésima nonagésima cuarta objeción

global") a evidencias de reclamaciones que son duplicados de una o más evidencias de

reclamaciones principales radicadas contra el ELA o la ACT en nombre de los tenedores de

determinados bonos, según se expone en el **Anexo A** del presente documento, y en apoyo de la

Ducentésima nonagésima cuarta objeción global respetuosamente manifiestan lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene

jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme

a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de

PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de

reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

voluntaria de remedio para el Estado Libre Asociado de Puerto Rico (el "ELA") conforme a la

sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el

"Caso de Título III del ELA"). El 21 de mayo de 2017, la Junta de Supervisión emitió una

certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó

---

[2]      PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

una petición voluntaria de remedio para la ACT conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III de la ACT", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.      El 16 de enero de 2018, los Deudores radicaron su Moción de una *orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Por la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.      Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de Título III de la ACT**

5.      La ACT es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-

---

[3]  Salvo disposición en contrario, todas las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la

construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en

el ELA. *Véase* 9 L.P.R.A § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos.

*Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias

series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"): *i*) la Resolución

núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y *ii*) la Resolución núm.

98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21 de mayo de 2017,

la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos

emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400

millones del monto principal de los bonos emitidos conforme a la Resolución de 1998 quedan

igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la

ACT.

6.     En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias

de reclamaciones principales en el marco del Caso de Título III de la ACT (conjuntamente, las

"Reclamaciones Principales de Título III de la ACT"): la evidencia de reclamación núm. 37245,

por la que se reclama, en nombre de los tenedores de los bonos emitidos conforme a la Resolución

de 1968, aproximadamente $847 millones en concepto de responsabilidad más montos no

liquidados; la evidencia de reclamación núm. 38574, por la que se reclama, en nombre de los

tenedores de los bonos emitidos conforme a la Resolución de 1998, aproximadamente $3200

millones en concepto de responsabilidad más montos no liquidados; y la evidencia de reclamación

núm. 32622, por la que se reclama, en nombre de los tenedores de los bonos subordinados emitidos

conforme a la Resolución de 1998, aproximadamente $279 millones en concepto de

responsabilidad más montos no liquidados.

7.     Determinados bonos emitidos por la ACT han sido asegurados por una o más aseguradoras de bonos municipales en el mercado primario o en el secundario.  El seguro de bonos municipales se obtiene en el mercado primario cuando el municipio emisor de los bonos contrata una compañía de seguros para suscribir una póliza de seguro en relación con dicha serie de bonos. En el caso de que un bono no se asegure en el mercado primario, los tenedores de tales bonos no asegurados podrían optar por obtener un seguro a través del mercado secundario. Los tenedores de bonos no asegurados que busquen obtener un seguro en el mercado secundario entran en una relación contractual directamente con una aseguradora de bonos municipales, por lo que el emisor original no es parte en dicho proceso de contratación. Cuando un tenedor de un bono no asegurado obtiene una póliza de seguro en el mercado secundario, se emite un nuevo número CUSIP que corresponde a los números CUSIP originales asignados a los bonos en el momento de su emisión. Determinados bonos emitidos por la ACT han sido asegurados en el mercado secundario y, en consecuencia, se han emitido nuevos números CUSIP que corresponden a los bonos emitidos por la ACT que llevan números CUSIP originales (los "Bonos ACT asegurados en el mercado secundario").

## C.     Evidencias de reclamaciones principales relativas a la deuda de los bonos de la AEP: Caso de Título III del ELA

8.     La Autoridad de Edificios Públicos de Puerto Rico (la "AEP") presuntamente emitió Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas y organismos del ELA. US Bank y US Bank Trust (conjuntamente, "US Bank") actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP (conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamación núm. 62833, los "Bonos de la AEP"), y, en nombre de los tenedores de los Bonos de

la AEP, radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 62833.[4] La Reclamación Principal de la AEP alega reclamaciones liquidadas por aproximadamente $4000 millones en concepto de capital presuntamente impagado, $160 millones en concepto de intereses presuntamente impagados y reembolso de comisiones y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o pueda tener en relación con las obligaciones de Bonos pendientes, conocidos o por conocer, contra el ELA y aquellos que pretendan actuar en nombre del ELA". . . ." Cláusula Adicional de la Reclamación Principal de la AEP, ¶¶ 19-21.

9.      El 23 de abril de 2009, de conformidad con las condiciones de dicho acuerdo de fideicomiso entre la AEP y US Bank, la AEP depositó en US Bank el pago de los ingresos relativos al reembolso de los bonos, el monto principal correspondiente al capital pendiente de determinados Bonos de la AEP y los intereses generados sobre dicho monto. *Véase* Documento adjunto 1, *Notificación relativa a la cancelación*, de fecha 23 de abril de 2009. Como resultado de la operación, determinados Bonos de la AEP fueron cancelados y reembolsados parcialmente (los "Bonos de la AEP Parcialmente Cancelados"). La parte reembolsada de los Bonos Parcialmente Cancelados recibió el número CUSIP 745235B67 (el "Bono Reembolsado"), y la parte no reembolsada de los Bonos Parcialmente Cancelados recibió el número CUSIP 745235S93 (el "Bono no Reembolsado"). Dichos números CUSIP reembolsados y no reembolsados corresponden

---

[4] La evidencia de reclamación núm. 62833 enmendó y sustituyó la Evidencia de reclamación núm. 13351, que fue radicada inicialmente por el Agente Fiscal.

a los números CUSIP originales asignados a los bonos en el momento de su emisión (los "Bonos Cancelados").

**D.    Evidencia de reclamación principal relativa a la deuda de los bonos del SRE: Caso de Título III del ELA**

10.    El Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") es un organismo gubernamental, independiente y aparte del Gobierno del ELA y de sus otras instrumentalidades. *Véase* 3 L.P.R.A § 775.[5] Supuestamente conforme a la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008, y ciertas resoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados para el financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal de aproximadamente $2900 millones.[6] El Bank of New York Mellon ("BNYM") actúa como agente fiscal con respecto a los Bonos del SRE. En nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA, que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm. 32004 (la "Reclamación

---

[5]  El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal.

[6]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamaciones radicadas por tenedores de bonos emitidos por el SRE* [Caso núm. 17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Empleados Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Empleados Retirados del Estado Libre Asociado de Puerto Rico, conforme a la sección 502 de Código de Quiebras, y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas por los tenedores de Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-3283, ECF núm. 6482], basándose en que, entre otras cosas, la emisión de los bonos fue *ultra vires*. El SRE se reserva el derecho a impugnar la emisión de los bonos por el motivo que fuere, incluyendo el hecho de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

Principal del SRE", y junto con las Reclamaciones Principales de Título III de la ACT y la Reclamación Principal de la AEP, las "Evidencias de Reclamaciones Principales").[7]

### E.   Evidencias de reclamaciones, procedimientos relativos a objeciones globales y objeciones a reclamaciones

11.    Hasta la fecha, se han radicado aproximadamente 173,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

12.    De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Aproximadamente 2,250 evidencias de reclamaciones han sido radicadas en relación con la ACT, o reclasificadas como radicadas contra la ACT. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

13.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su

---

[7]  El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación Principal del SRE. Véase Objeción de la Junta de Supervisión y Administración Financiera, conforme a la sección 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New York Mellon, como agente fiscal (Reclamación núm. 16775) ECF núm. 7075]. En aras de la claridad, esta Ducentésima nonagésima cuarta objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha objeción, lo que incluye cualesquiera derechos a intervenir, que quedan reservados.

*Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

14.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio

de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

15.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha 12 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43 billones en responsabilidad contra el ELA, COFINA, la ACT y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

16.     Esta Ducentésima nonagésima cuarta objeción global se radica de conformidad con los Procedimientos relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

17.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten a los Deudores radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

18.     La Ducentésima nonagésima cuarta objeción global pretende que se rechacen, de conformidad con la regla 3007(d)(1) de las Reglas Federales del Procedimiento de Quiebra y los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que estén duplicadas con respecto a otras evidencias de reclamaciones radicadas en el marco de los Casos de Título III.

19.    Cada reclamación identificada en el **Anexo A** del presente documento (conjuntamente, las "Reclamaciones que han de ser rechazadas") pretende alegar responsabilidad contra el ELA o la ACT vinculada con, o bien, *i*) Bonos de la AEP, Bonos de la ACT y/o Bonos del SRE que son duplicados de una o más Evidencias de Reclamaciones Principales (las "Reclamaciones Duplicadas por Bonos"), las cuales, como se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la AEP, la ACT y/o el SRE; *ii*) Bonos de la ACT asegurados en el mercado secundario que están duplicados en relación con las responsabilidades alegadas en una o más Evidencias de Reclamaciones Principales radicadas en el marco de los Casos de Título III en nombre de los tenedores de bonos emitidos por la ACT (las "Reclamaciones por bonos asegurados en el mercado secundario"), o bien, *iii*) Bonos no Reembolsados que están duplicados en relación con las responsabilidades alegadas en una o más Evidencias de Reclamaciones Principales radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos emitidos por la AEP (las "Reclamaciones por Bonos no Reembolsados").

20.    Cada una de las Reclamaciones Duplicadas por Bonos pretende alegar responsabilidad contra el ELA y la ACT  vinculada con uno o más bonos duplicados en relación con una o más Evidencias de Reclamaciones Principales, las cuales, como se explicó anteriormente, fueron radicadas en el marco de los Casos de Título III en nombre de los tenedores de determinados bonos.

21.    Cada una de las Reclamaciones por bonos de asegurados en el mercado secundario pretende alegar responsabilidades vinculadas con los Bonos de la ACT asegurados en el mercado secundario. Los números CUSIP vinculados con dichos Bonos de la ACT asegurados en el mercado secundario corresponden a bonos emitidos por la ACT que llevan los números CUSIP

originales. Dichos números CUSIP originales, que reflejan las emisiones de los bonos en los que los reclamantes tienen participación patrimonial, se mencionan en una o más Evidencias de Reclamaciones Principales. En consecuencia, en las Reclamaciones por bonos asegurados en el mercado secundario se alegan responsabilidades vinculadas con bonos emitidos por la ACT que constituyen duplicados en relación con las responsabilidades alegadas en una o más Evidencias de Reclamaciones Principales.

22.     Cada una de las Reclamaciones por Bonos no Reembolsados alega responsabilidades vinculadas con los Bonos no Reembolsados. Los números CUSIP vinculados con dichos Bonos no Reembolsados corresponden a bonos emitidos por la AEP que llevan los números CUSIP originales. Dichos números CUSIP originales, se mencionan en una o más Evidencias de Reclamaciones Principales. En consecuencia, en las Reclamaciones por Bonos no Reembolsados se alegan responsabilidades vinculadas con bonos emitidos por la AEP que constituyen duplicados en relación con las responsabilidades alegadas en una o más Evidencias de Reclamaciones Principales.

23.     Puesto que cada una de las Reclamaciones Duplicadas por Bonos, las Reclamaciones por bonos asegurados en el mercado secundario y las Reclamaciones por Bonos no Reembolsados están duplicadas en relación con una o más Evidencias de Reclamaciones Principales, si las Reclamaciones que han de ser rechazadas no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran potencialmente una recuperación duplicada no justificada contra el ELA o la ACT en detrimento de otras partes interesadas en los Casos de Título III. Los tenedores de las Reclamaciones que han de ser rechazadas no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto que las responsabilidades vinculadas con sus reclamaciones figuran en una o más Evidencias de Reclamaciones Principales.

24.     En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Ducentésima nonagésima cuarta objeción global (no sustantiva) del Estado Libre Asociado de Puerto Rico y de la Autoridad de Carreteras y Transportación de Puerto Rico a Reclamaciones duplicadas y por bonos asegurados en el mercado secundario*, de fecha 22 de enero de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

25.     De conformidad con los Procedimientos relativos a Objeciones Globales y la Orden de Notificación del Tribunal, los Deudores notifican la presente Ducentésima nonagésima cuarta objeción global a) a los acreedores individuales objeto de esta Ducentésima nonagésima cuarta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. Una copia de la notificación relativa a esta Ducentésima nonagésima cuarta objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima nonagésima cuarta objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con la presente objeción y se trasladarán a las partes. Los Deudores sostienen que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## AUSENCIA DE SOLICITUDES PREVIAS

26.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima nonagésima cuarta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la Orden Propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 22 de enero de 2021
San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y
Administración Financiera para Puerto
Rico como representante del Estado Libre
Asociado de Puerto Rico y de la Autoridad
de Carreteras y Transportación de Puerto
Rico*