**Hearing Date: March 10, 2021, at 9:30AM (Atlantic Standard Time)**
**Response Deadline: February 24, 2021, at 4:00PM (Atlantic Standard Time)**

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>              Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## TWO HUNDRED NINETY-FIFTH OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO NO LIABILITY AND INCORRECT DEBTOR BONDHOLDER CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as the Commonwealth's sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred ninety-fifth omnibus objection (the "Two Hundred Ninety-Fifth Omnibus Objection") seeking to disallow portions of the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based on bonds and is based in part on amounts for which the Debtor is not liable because (*i*) the relevant portion of the claim asserts liability based on an ownership interest in bonds issued by PRASA (as defined below), which is not a Title III Debtor, for amounts as to which the Commonwealth has not guaranteed repayment; (*ii*) the relevant portion of the claim asserts liability based on an ownership interest in bonds issued by COFINA (as defined below); and/or (*iii*) the relevant portion of the claims asserts liability based on an ownership interest in bonds issued by HTA (as defined below) that have been defeased.  Additionally, each of the claims listed on **Exhibit A** hereto should be partially reclassified because a portion of the claim identifies the Commonwealth as obligor, when that portion of the claim is properly asserted, if at all, against PREPA.  In support of the Two Hundred Ninety-Fifth Omnibus Objection, the Commonwealth respectfully represents as follows:

### JURISDICTION

1.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

### A. The Bar Date Orders

3.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

### B. Bond Debt Issued by the Puerto Rico Aqueducts and Sewers Authority

5.      The Puerto Rico Aqueduct and Sewer Authority ("PRASA") was established pursuant to Act Number 40 on May 1, 1945. PRASA is a government-owned corporation in Puerto

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

Rico and was created for the purpose of providing water and sewer services on the island.  22
L.P.R.A. § 144.

6.    The PRASA Enabling Act authorizes PRASA to issue bonds.  22 L.P.R.A. § 144(g).
Pursuant thereto, the PRASA governing board has adopted resolutions authorizing PRASA to issue
bonds, including Resolution No. 1583, as amended and restated as of March 7, 2008 ("Resolution
No. 1583").  In 2008, PRASA issued $1,316,204,456 principal amount of Series A revenue bonds
(the "2008 Senior Series A Bonds").   Additionally, in 2012, PRASA concurrently issued
$1,800,450,00 principal amount of Series 2012 A revenue bonds (the "2012 Senior Series A
Bonds"), as well as $295,245,000 principal amount of Series 2012 B revenue bonds (the "2012
Senior Series B Bonds," together with the 2012 Senior Series A Bonds and the 2008 Senior Series
A Bonds, the "PRASA Senior Lien Bonds").

7.    Holders of PRASA Senior Lien Bonds have received and continue to receive all
payments owed to holders of the PRASA Bonds in full as they become due and owing.
Accordingly, EMMA reflects that PRASA has not posted any notices of default with respect to the
PRASA Senior Lien Bonds.[4]  In addition, the Commonwealth has not guaranteed repayment of
the Senior Lien Bonds.  Accordingly, the offering statements for the PRASA Senior Lien Bonds
state that they are "not a debt of the Commonwealth of Puerto Rico or any of its municipalities or
other political subdivisions, other than [PRASA], and neither the Commonwealth of Puerto Rico

---

[4]*See,*                                                                                            *e.g.,*
https://emma.msrb.org/Security/Details/A77AAAB374BB0A541A55D2D2509BABD8F;
https://emma.msrb.org/Security/Details/AEDD756D8E31FDC19BD8CDE94EDCE712E.

4

or any such municipalities or other political subdivisions, other than [PRASA], shall be liable for the payment of the principal of or interest on said Bonds."[5]

### C. Bond Debt Issued by the Puerto Rico Highways and Transportation Authority

8.     The Puerto Rico Highways and Transportation Authority ("HTA") is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth. *See* 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "Resolution Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution," and with the 1968 Resolution, the "HTA Resolutions").

9.     On April 7, 2004, HTA issued $139,875,000 Grant Anticipation Revenue Bonds (the "Series 2004 Bonds"), $82,340,000 Transportation Revenue Refunding Bonds (the "Series I Bonds"), and $405,895,000 Transportation Revenue Bonds (the "Series J Bonds") for the purpose of refunding certain HTA Revenue bonds and to finance various highway projects (the "2004 HTA Official Statement"). *See* 2004 HTA Official Statement at 1.[6]

10.     On September 22, 2011, HTA entered into a concession agreement with Autopistas Metropolitanas de Puerto Rico, LLC ("Metropistas"), pursuant to which, for a period of 40 years,

---

[5] *See, e.g.*, Offering Statement for PRASA Revenue Bonds, Series A (Senior Lien), March 7, 2008, available at https://emma.msrb.org/Security/Details/AF1172BE7598AF5023E511B5CC65A4AD4.

[6] https://emma.msrb.org/Security/Details/AA7D9FCBD7B6F399110785804E80F47C8.

Metropistas would have the right to charge, collect and retain tolls imposed on certain toll roads in Puerto Rico. In exchange, HTA received an upfront payment from Metropistas (the "Concession Fee"), which HTA used to "defease, redeem or pay the purchase price of certain bonds [] issued under" the 1998 Resolution. *Material Event Notice (Notice of Purchase, Defeasance and Redemption)*, September 22, 2011, *available at* https://emma.msrb.org/EA477903-EA370346-EA767176.pdf (the "HTA Notice of Defeasance and Redemption"). With a portion of the Concession Fee, HTA repurchased certain bonds issued pursuant to the 1998 Resolution (the "Purchased Bonds"). *Id.* HTA also used a portion of the Concession Fee to defease certain bonds issued pursuant to the 1998 Resolution (the "HTA Defeased Bonds"). *Id.* The CUSIP numbers for the HTA Defeased Bonds are listed in the HTA Notice of Defeasance and Redemption. CUSIP numbers associated with certain Series J bonds are included in the list of HTA Defeased Bonds on the HTA Notice of Defeasance and Redemption.

### D. The COFINA Title III Case and Resolution of the Commonwealth-COFINA Dispute

11.     COFINA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth, created under Act No. 91 of the Legislative Assembly of the Commonwealth. Pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions, COFINA issued a series of bonds in aggregate approximate amount of $17 billion, to, among other things, defray certain debt obligations of the Puerto Rico Government Development Bank and the Puerto Rico Public Finance Corporation (the "COFINA Bonds"). Bank of New York Mellon serves as Trustee with respect to the COFINA Bonds.

12.     The Oversight Board filed that certain *Third Amended Title III Plan of Adjustment of the Puerto Rico Sales Tax Financing Corporation* (the "Plan") [ECF No. 4652] on January 9, 2019.  The Court considered confirmation of the Plan and any objections thereto at a hearing on January 16-17, 2019.

13.     On February 4, 2019, the Court confirmed the Plan, which incorporated the compromise and settlement of the dispute over whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute").  *See Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048].  On the same day, the Court approved the compromise and settlement of the Commonwealth-COFINA Dispute pursuant to the *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "Settlement Order").  On February 5, 2019, the Court issued an *Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5055] (the "Amended Confirmation Order").  The Plan became effective on February 12, 2019 (the "Effective Date"), when the transactions contemplated therein were consummated.  *See Notice of (A) Entry of Order Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA and (B) Occurrence of the Effective Date* [Case No. 17 BK 3284-LTS, ECF No. 587].

7

### E. Proofs of Claim Filed Against the Commonwealth, the Omnibus Objection Procedures, and Claim Objections

14.     To date, approximately 174,000 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in asserted claims against the Debtors, in addition to unliquidated amounts asserted.

15.     Of the proofs of claim filed, approximately 111,300 have been filed in relation to, or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are liable, being duplicative of other proofs of claim, or failing to provide information necessary for the Debtors to determine whether the claim is valid.

16.     In order to efficiently resolve as many of the unnecessary proofs of claim as possible, on October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus Objection Procedures").  On November 29, 2018, the Court approved English and Spanish versions of the forms of notice for omnibus objections to be filed in accordance with the Initial Omnibus Objection Procedures.  *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

17.     In the continued interest of resolving any unnecessary proofs of claim in an efficient

manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other

things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the

number of claims that may be included on an objection, and to approve additional forms of notice.

*Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection*

*Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional*

*Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091].  On June 14, 2019, the Court

granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures,*

*(B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice,*

*and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection

Procedures").

18.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus

Objection Procedures, to date the Court has held 12 hearings related to over 140 omnibus

objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation

("COFINA"), HTA, and/or ERS.  Based upon rulings and orders of the Court to date,

approximately 56,000 claims asserting $43 trillion in liability against the Commonwealth,

COFINA, HTA, and ERS have been disallowed and will be expunged from the claims registry in

the Title III proceedings upon entry of final orders.

19.     This Two Hundred Ninety-Fifth Omnibus Objection is filed in accordance with the

Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

20.     Claims that are "unenforceable against the debtor and property of the debtor, under

any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly

executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

21.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

22.     The Two Hundred Ninety-Fifth Omnibus Objection seeks to disallow portions of the proofs of claim listed on **Exhibit A** hereto (collectively, the "Claims to Be Partially Disallowed and Partially Reclassified"), each of which purports to be based on bonds and is based on (*i*) an ownership interest in bonds issued by PRASA (as defined below), which is not a Title III Debtor, for amounts as to which the Commonwealth has not guaranteed repayment; (*ii*) an ownership interest in bonds issued by COFINA; and/or (*iii*) an ownership interest in bonds issued by HTA that have been defeased.  The remaining portions of the Claims to Be Partially Disallowed and Partially Reclassified should be reclassified because they identify the Commonwealth as obligor when they are properly asserted, if at all, against PREPA.  **Exhibit A** hereto further specifies why each of the Claims to Be Partially Disallowed and Partially Reclassified should be disallowed in part and reclassified in part.

### A.   No Liability for PRASA Senior Lien Bonds

23.     As identified in **<u>Exhibit A</u>** hereto, some of the Claims to Be Partially Disallowed and Partially Reclassified purport to assert, in part, claims based on the alleged ownership of bonds issued by PRASA (collectively, the "<u>Partial PRASA Bondholder Claims</u>").

24.     Each of the Partial PRASA Bondholder Claims assert liabilities associated with PRASA Senior Lien Bonds issued by PRASA, which is not a Title III Debtor, and is a separate, legally distinct entity from the Commonwealth.   Each of the Partial PRASA Bondholder Claims asserts recovery for liabilities associated with Senior Lien Bonds issued by PRASA.   PRASA, however, is not a Title III Debtor, and is a separate, legally distinct entity from the Commonwealth. Moreover, neither the Commonwealth nor any other instrumentality or political subdivision thereof has guaranteed repayment on the PRASA Senior Lien Bonds.   Each of the Partial PRASA Bondholder Claims fails to comply with the applicable rules, however, because it does not assert a basis for asserting a claim against the Commonwealth for bonds issued by PRASA that are not guaranteed by the Commonwealth.   Because of this failure to comply with the applicable rules, neither the Debtors nor the Court are able to determine the validity of the Partial PRASA Bondholder Claims.   Because the Partial PRASA Bondholder Claims are unenforceable against the Commonwealth and its property pursuant to Bankruptcy Code § 502(b)(1), these claims should be disallowed because they seek recovery of amounts for which the Commonwealth is not liable.

### B.   COFINA Bond Claims

25.     As identified in **<u>Exhibit A</u>** hereto, some of the Claims to Be Partially Disallowed and Partially Reclassified purport to assert, in part, claims based on an alleged ownership interest in bonds issued by COFINA (collectively, the "<u>Partial COFINA Bondholder Claims</u>").

26.     As explained above, the Settlement Order resolved the Commonwealth-COFINA Dispute, and, pursuant to Paragraph 55 of the Settlement Order, all claims against the Commonwealth arising from or relating to the relationship of the Commonwealth and COFINA have been released.  Additionally, pursuant to Paragraph 3(c) of the *Settlement Agreement* [ECF No. 5045-1], dated October 19, 2018, and attached to the Settlement Order (the "Settlement Agreement"), and Paragraph 7 of the Amended Confirmation Order, the adversary proceeding between the Commonwealth and COFINA concerning the Commonwealth-COFINA Dispute has been dismissed with prejudice following the approval of the compromise and settlement of the Commonwealth-COFINA Dispute.  Furthermore, pursuant to Paragraph 29(f) of the Amended Confirmation Order, claims, such as the Partial COFINA Bondholder Claims, that arose from or relate to the relationship of the Commonwealth and COFINA were released.  Amended Confirmation Order, ¶ 29(f).[7]  For all of these reasons, the Partial COFINA Bondholder Claims should be disallowed because these claims are based on an alleged ownership interest in COFINA Bonds that have been satisfied, released, and/or discharged pursuant to the Settlement Order, Settlement Agreement, Amended Confirmation Order, and Plan.

**C.  Defeased HTA Bond Claims**

27.     As identified in **Exhibit A** hereto, some of the Claims to Be Partially Disallowed and Partially Reclassified purport to assert, in part, claims based on an alleged ownership interest

---

[7] Pursuant to the Plan, "Claim" is defined as "[a]ny right to payment or performance, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown or asserted or unasserted; or any right to an equitable remedy for breach or enforcement of performance, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and all debts, suits, damages, rights, remedies, losses, liabilities, obligations, judgments, actions, causes of action, demands, or claims of every kind or nature whatsoever, in law, at equity, or otherwise."  Plan § 1.53.

in bonds issued by HTA that have been defeased (collectively the "Partial HTA Defeased
Bondholder Claims").

28.    With respect to the Partial HTA Defeased Bondholder Claims, HTA refunded a
portion of the original bond and set up an escrow to pay off the remaining principal and interest
on the bonds until their maturity or their next call date.  The Notice of Defeasance and Redemption
reflects that the maturity and/or redemption dates for each of the HTA Defeased Bonds has already
passed. HTA Notice of Defeasance and Redemption at Ex. B. As a result, "all [] rights granted to
the holders [of the Defeased Bonds] under the [1998] Resolution [are] discharged and satisfied."
HTA Notice of Defeasance and Redemption at 1.  Accordingly, because the Partial HTA Defeased
Bonds have already been defeased, holders of these bonds no longer have a valid claim, and the
Partial HTA Defeased Bondholder Claims should be disallowed.

### D.  Partially Reclassified Bond Claims

29.    Finally, the remaining portion of each of the Claims to Be Partially Disallowed and
Partially Reclassified identifies the Commonwealth as the obligor, when such portion is properly
asserted, if at all, against PREPA, and asserts liability, in part, on the basis of bonds issued by
PREPA (collectively, the "Partially Reclassified Bond Claims").

30.    In each of the Partially Reclassified Bond Claims, the claimant purported to assert,
in part, liabilities associated with municipal bond(s), but the proof of claim, supporting
documentation provided by the claimant, and/or CUSIP information show that the portions of the
liabilities associated with the Partially Reclassified Bond Claims would appropriately be asserted,
if at all, against PREPA.   Accordingly, the Partially Reclassified Bond Claims should be
reclassified, in part, to be asserted against PREPA, the Title III debtor identified in the column

titled "Corrected" in **Exhibit A** hereto. The Commonwealth reserves its right to object to any part of the Partially Reclassified Bond Claims on any other grounds whatsoever.

31.     Because of one or more of the foregoing reasons, the Commonwealth respectfully requests that the portions of the Claims to Be Partially Disallowed and Partially Reclassified that are duplicative of one or more master proofs of claim be disallowed, and the portions associated with bonds issued by PREPA be reclassified to the PREPA Title III case.  In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Two Hundred Ninety-Fifth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to No Liability and Incorrect Debtor Bondholder Claims*, dated January 22, 2021, attached hereto as **Exhibit B**.

## <u>NOTICE</u>

32.     In accordance with the Amended Omnibus Objection Procedures, the Commonwealth is providing notice of this Two Hundred Ninety-Fifth Omnibus Objection to (a) the individual creditors subject to this Two Hundred Ninety-Fifth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Two Hundred Ninety-Fifth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations are being filed and served with this Two Hundred Ninety-Fifth Omnibus Objection and supporting exhibits attached hereto.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

33.      This Two Hundred Ninety-Fifth Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in these Title III proceedings to object to the Claims to Be Partially Disallowed and Partially Reclassified or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in these Title III proceedings under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

34.      No prior request for the relief sought in this Two Hundred Ninety-Fifth Omnibus Objection has been made to this or any other court.

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

15

Dated: January 22, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial*
*Oversight and Management Board*
*for Puerto Rico, as representative for*
*the Commonwealth of Puerto Rico*

**Fecha de la vista: 10 de marzo de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 24 de febrero de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO DE PUERTO RICO**

| | |
|---|---|
| *In re*: | PROMESA |
| | Título III |
| JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, | Núm. 17 BK 3283-LTS |
| como representante del | (Administrado Conjuntamente) |
| ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*., | **La presente radicación guarda relación con el ELA.** |
| Deudores.[1] | |

---

**DUCENTÉSIMA NONAGÉSIMA QUINTA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DE BONISTAS NO RELACIONADAS CON LA RESPONSABILIDAD Y ALEGADAS CONTRA EL DEUDOR INCORRECTO**

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III del ELA conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radica la presente ducentésima nonagésima quinta objeción global (la "Ducentésima nonagésima quinta objeción global") en la que se solicita que se rechacen partes de las evidencias de reclamaciones que figuran en el **Anexo A** del presente documento, cada una de las cuales pretende estar basada en bonos y se basa, en parte, en montos por los que el Deudor no tiene responsabilidad, puesto que i) en la parte pertinente de la reclamación se alega responsabilidad sobre la base de una participación patrimonial en los bonos emitidos por la AAA (según se define abajo), que no es un Deudor de Título III, por montos por los que el ELA no ha garantizado ningún reembolso; *ii*) en la parte pertinente de la reclamación se alega responsabilidad sobre la base de una participación patrimonial en los bonos emitidos por COFINA (según se define abajo); y/o *iii*) en la parte pertinente de las reclamaciones se alega responsabilidad sobre la base de una participación patrimonial en los bonos emitidos por la ACT (según se define abajo) que han sido cancelados. Además, cada una de las reclamaciones que figuran en el **Anexo A** del presente documento debe reclasificarse parcialmente, ya que parte de la reclamación identifica al ELA como deudor, cuando en todo caso lo correcto sería que dichas partes de la reclamación se alegaran contra la AEE. En apoyo de la Ducentésima nonagésima quinta objeción global, el ELA manifiesta respetuosamente lo siguiente:

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

### JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene

jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme

a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de

PROMESA.

### ANTECEDENTES

**A.  Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de

reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición

voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso

conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA").

4.      El 16 de enero de 2018, los Deudores radicaron su Moción de una *orden que A) fije*

*fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y*

*la manera de su notificación* [ECF núm. 2255][3] (la "Moción de Fecha Límite"). Conforme a la

*Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B)*

*aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha

Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas

límite y procedimientos para radicar evidencias de reclamaciones en el marco del Caso de Título

III del ELA. Luego de la moción informativa de determinados acreedores, y del apoyo de los

Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar*

---

[3]    Salvo disposición en contrario contenida en el presente documento, las citas ECF harán
referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

*evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B. Deuda de bonos emitidos por la Autoridad de Acueductos y Alcantarillados de Puerto Rico**

5.       La Autoridad de Acueductos y Alcantarillados de Puerto Rico (la "AAA") fue

creada de conformidad con la Ley núm. 40 el 1 de mayo de 1945. La AAA es una corporación del

Gobierno de Puerto Rico y fue creada para la prestación de los servicios de suministro de agua y

alcantarillado en la isla. 22 L.P.R.A. § 144.

6.       La Ley para crear la AAA autoriza a la AAA a emitir bonos. 22 L.P.R.A. § 144(g).

Conforme a dicha Ley, la junta directiva de la AAA adoptó resoluciones que autorizan a la AAA

emitir bonos, lo que incluye la Resolución núm. 1583, en su versión enmendada y modificada el 7

de marzo de 2008 (la "Resolución núm. 1583"). En 2008, la AAA emitió unos bonos de renta,

Serie A, por un monto del principal de $1,316,204,456 (los "Bonos Prioritarios Serie A de 2008")

Además en 2012, la AAA emitió simultáneamente unos bonos de renta, Serie 2012 A, por un monto

del principal de $1,800,450,00 (los "Bonos Prioritarios Serie A de 2012") y unos bonos de renta,

Serie 2012 B, por un monto del principal de $295,245,000 (los "Bonos Prioritarios Serie B de

2012", y junto con los Bonos Prioritarios Serie A de 2012 y los Bonos Prioritarios Serie A de 2008,

los "Bonos de Gravamen Prioritarios de la AAA").

7.       Los tenedores de los Bonos de Gravamen Prioritarios de la AAA han recibido, y

siguen recibiendo, la totalidad de los pagos íntegros adeudados a tales tenedores de los Bonos de

la AAA, a medida que estos vencen y se vuelven pagaderos. En consecuencia, en el EMMA se

indica que la AAA no ha enviado ninguna notificación de incumplimiento en relación con los

Bonos de Gravamen Prioritarios de la AAA.[4] Además, el ELA no ha garantizado el reembolso de los Bonos de Gravamen Prioritarios. En consecuencia, las declaraciones de oferta relativas a los Bonos de Gravamen Prioritarios de la AAA indican que "no constituyen deuda del Estado Libre Asociado de Puerto Rico ni de ninguno de sus municipios u otras subdivisiones políticas, con la excepción de [la AAA], por lo que ni el Estado Libre Asociado de Puerto Rico ni ningunos de dichos municipios u otras subdivisiones políticas, con la excepción de [la AAA], será responsable por el pago del principal o de los intereses sobre los referidos Bonos".[5]

### C. Deuda de los bonos emitidos por la Autoridad de Carreteras y Transportación de Puerto Rico

8.      La Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") es una corporación pública y organismo del ELA, que constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT se encarga de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de transportación en el ELA. *Véase* 9 L.P.R.A § 2002. La Ley para crear la ACT autoriza a la ACT a emitir bonos. *Véase* 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos relativos a las resoluciones"): *i*) la Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y *ii*) la Resolución núm.

---

[4] *Véase, por ejemplo*,
https://emma.msrb.org/Security/Details/A77AAAB374BB0A541A55D2D2509BABD8F;
https://emma.msrb.org/Security/Details/AEDD756D8E31FDC19BD8CDE94EDCE712E.

[5] *Véase, por ejemplo,* Declaración de Oferta relativa a los Bonos de Renta de la AAA, Serie A (Gravamen Prioritario), 7 de marzo de 2008, disponible en
https://emma.msrb.org/Security/Details/AF1172BE7598AF5023E511B5CC65A4AD4.

98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998", y conjuntamente con la Resolución de 1968, las "Resoluciones ACT").

9.      El 7 de abril de 2004, la ACT emitió Bonos de renta de anticipo por subvenciones por un valor de $139,875,000 (los "Bonos Serie 2004"), Bonos de renta de refinanciamiento de transporte por un valor de $82,340,000 (los "Bonos Serie I") y Bonos de renta de transporte por un valor de $405,895,000 (los "Bonos Serie J") para refinanciar determinados Bonos de Renta de la ACT y financiar varios proyectos de carreteras (la "Declaración Oficial de la ACT de 2004"). *Véase* Declaración Oficial de la ACT de 2004, en 1.[6]

10.     El 22 de septiembre de 2011, la ACT suscribió un contrato de concesión con Autopistas Metropolitanas de Puerto Rico, LLC ("Metropistas"), en virtud del cual, y por un período de 40 años, Metropistas tendría derecho a facturar, cobrar y conservar peajes impuestos sobre determinadas carreteras de peaje en Puerto Rico. A cambio, la ACT recibió de Metropistas un pago por anticipado (la "Tarifa sobre la concesión") que la ACT utilizó para "cancelar, canjear o pagar el precio de compra de determinados bonos [] emitidos en virtud de" la Resolución de 1998. *Notificación de acontecimiento sustancial (Notificación de compra, cancelación y canje*, 22 de septiembre de 2011, disponible en https://emma.msrb.org/EA477903-EA370346-EA767176.pdf (la "Notificación de cancelación y canje de la ACT"). Con parte de la Tarifa sobre la concesión, la ACT recompró determinados bonos emitidos conforme a la Resolución de 1998 (los "Bonos comprados"). *Id.* La ACT también utilizó parte de la Tarifa sobre la concesión para cancelar determinados bonos emitidos conforme a la Resolución de 1998 (los "Bonos cancelados de la ACT"). *Id.* Los números CUSIP de los Bonos cancelados de la ACT figuran en la Notificación de cancelación y canje de la ACT. Los números CUSIP vinculados con determinados bonos de la

---

[6] https://emma.msrb.org/Security/Details/AA7D9FCBD7B6F399110785804E80F47C8.

Serie J se incluyen en la lista de Bonos Cancelados de la ACT en la Notificación de cancelación y

canje de la ACT.

### D. Caso de Título III de COFINA y resolución de la controversia entre el ELA y COFINA

11.     COFINA es una corporación pública y organismo del ELA, que constituye una

entidad corporativa y política independiente y aparte del ELA, creada en virtud de la Ley núm. 91

de la Asamblea Legislativa del ELA. Conforme a la Resolución enmendada y modificada sobre

los bonos del fondo de interés apremiante, adoptada el 13 de julio de 2007, en su versión

enmendada del 19 de junio de 2009, y de conformidad con otras resoluciones complementarias,

COFINA emitió una serie de bonos por un monto total de aproximadamente $17,000 millones

para, entre otras cosas, sufragar determinadas obligaciones de deuda del Banco Gubernamental de

Fomento para Puerto Rico y de la Corporación para el Financiamiento Público de Puerto Rico (los

"Bonos COFINA"). El Bank of New York Mellon actúa como fiduciario con respecto a los Bonos

COFINA.

12.     *La Junta de Supervisión radicó el Tercer plan enmendado de ajuste de la
Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III*
(el "Plan") [ECF núm. 4652] el 9 de enero de 2019. El Tribunal examinó la confirmación del Plan

y las objeciones formuladas a este en una vista celebrada los días 16 y 17 de enero de 2019.

13.     El 4 de febrero de 2019, el Tribunal confirmó el Plan que incorporaba el pacto y la

conciliación de la controversia sobre si, luego de examinar todas las contestaciones y

reconvenciones sustantivas y procesales, incluidas cuestiones constitucionales, los impuestos

sobre la venta y uso supuestamente comprometidos por COFINA para garantizar la deuda son

propiedad del ELA o de COFINA conforme a la normativa legal aplicable (la "Controversia entre

el ELA y COFINA"). *Véase la Orden y la Sentencia que confirman el Tercer plan enmendado de*

7

*ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico* [ECF núm. 5048]. Ese

mismo día, el Tribunal aprobó el pacto y la conciliación de la Controversia entre el ELA y

COFINA conforme al *Dictamen abreviado y orden que aprueba la conciliación entre el Estado*

*Libre Asociado de Puerto Rico y la Corporación del Fondo de Interés Apremiante de Puerto Rico*

[ECF núm. 5045] (la "Orden de Conciliación"). El 5 de febrero de 2019, el Tribunal dictó una

*Orden y Sentencia enmendadas que confirman el Tercer plan enmendado de ajuste de la*

*Corporación del Fondo de Interés Apremiante de Puerto Rico elaborado conforme al Título III*

[ECF núm. 5055] (la "Orden de Confirmación Enmendada"). El Plan entró en vigor el 12 de

febrero de 2019 (la "Fecha de Entrada en Vigor"), una vez consumadas las transacciones en él

contempladas. *Véase Notificación de A) emisión de orden por la que se confirma el Tercer plan*

*enmendado de ajuste de la Corporación del Fondo de Interés Apremiante de Puerto Rico*

*elaborado conforme al Título III, según el Título III de PROMESA, y B) acontecimiento de la*

*Fecha de entrada en vigor* [Caso núm. 17 BK 3284-LTS, ECF núm. 587].

### E. Evidencias de reclamaciones radicadas contra el ELA, procedimientos relativos a objeciones globales y objeciones a reclamaciones

14.     Hasta la fecha, se han radicado aproximadamente 174,000 evidencias de

reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas

evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones

radicadas contra los Deudores, además de los montos no liquidados reclamados.

15.     De las evidencias de reclamaciones radicadas, aproximadamente 111,300 han sido

radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad

con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que

haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido

enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables,

estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

16.    Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que a) apruebe procedimientos limitados relativos a objeciones globales, b) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y c) conceda el remedio relacionado* [ECF núm. 4052] (la "<u>Moción de Procedimientos Globales</u>"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "<u>Procedimientos Iniciales relativos a Objeciones Globales</u>"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "<u>Orden de Notificación</u>").

17.    En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de*

vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

18.    Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha 12 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la ACT y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43 billones en responsabilidad contra el ELA, COFINA, la ACT y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

19.    Esta Ducentésima nonagésima quinta objeción global se radica de conformidad con los Procedimientos enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

20.    Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye una prueba *prima facie* de validez de la reclamación, *véase* R. de Pr. de Quiebr. 3001(f), aplicable

10

al presente procedimiento en virtud de la sección 310 de PROMESA, la parte objetante podrá superar dicha evidencia *prima facie* con evidencias que, de creerse, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso *prima facie* del reclamante". (se omite cita)).

21. Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

22. La Ducentésima nonagésima quinta objeción global pretende que se rechacen partes de las evidencias de reclamaciones que figuran en el **<u>Anexo A</u>** del presente documento (conjuntamente, las "<u>Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente</u>"), cada una de las cuales pretende estar basada en bonos y se basa en *i*) una participación patrimonial en bonos emitidos por la AAA (según se define abajo), que no es un Deudor de Título III, por montos en relación con los cuales el ELA no ha garantizado ningún reembolso; *ii*) una participación patrimonial en bonos emitidos por COFINA; y/o *iii*) una participación patrimonial en bonos emitidos por la ACT que han sido cancelados. Las partes restantes de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente deben reclasificarse porque identifican al ELA como deudor, cuando en todo caso lo correcto sería que dichas partes se alegaran contra la AEE. El **<u>Anexo A</u>** del presente documento

11

especifica además por qué cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente debe ser rechazada parcialmente y reclasificada parcialmente.

**A. Ausencia de responsabilidad por los Bonos de Gravamen Prioritarios de la AAA**

23.     Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente contienen presuntamente reclamaciones basadas, en parte, en la supuesta participación patrimonial en los bonos emitidos por la AAA (conjuntamente, las "Reclamaciones parciales de los bonistas de la AAA").

24.     Cada una de las Reclamaciones parciales de los bonistas de la AAA alega responsabilidades vinculadas con los Bonos de Gravamen Prioritarios de la AAA emitidos por la AAA, que no es Deudor de Título III, y es una entidad aparte y jurídicamente independiente del ELA. Cada una de las Reclamaciones parciales de los bonistas de la AAA pretende la recuperación por responsabilidades vinculadas con los Bonos de Gravamen Prioritarios emitidos por la AAA. Sin embargo, la AAA no es un Deudor de Título III y es una entidad aparte y jurídicamente independiente del ELA. Además, ni el ELA ni ningún otro organismo o subdivisión política del ELA han garantizado el reembolso de los Bonos de Gravamen Prioritarios de la AAA. Sin embargo, ninguna de las Reclamaciones parciales de los bonistas de la AAA cumple con las normas aplicables, ya que no proporciona un fundamento para alegar una reclamación contra el ELA por los bonos emitidos por la AAA que no están garantizados por el ELA. Como consecuencia de dicho incumplimiento de la normativa aplicable, ni los Deudores ni el Tribunal pueden determinar la validez de las Reclamaciones parciales de los bonistas de la AAA. Puesto que las Reclamaciones parciales de los bonistas de la AAA son inejecutables contra el ELA y sus

12

bienes conforme al § 502(b)(1) del Código de Quiebras, dichas reclamaciones deben rechazarse puesto que solicitan la recuperación de montos por los que el ELA no es responsable.

**B.  Reclamaciones de los bonos de COFINA**

25.      Conforme a lo identificado en el **Anexo A** del presente documento, algunas Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar reclamaciones basadas, en parte, en una supuesta participación patrimonial en los bonos emitidos por COFINA (conjuntamente, las "Reclamaciones parciales de los bonistas de COFINA").

26.      Como se explicó anteriormente, la Orden de Conciliación resolvió la Controversia entre el ELA y COFINA y, conforme al párrafo 55 de la Orden de Conciliación, la totalidad de las reclamaciones contra el ELA, surgidas o vinculadas con la relación del ELA y COFINA, han sido liberadas. Además, conforme al párrafo 3(c) del *Acuerdo de Conciliación* [ECF núm. 5045-1], de fecha 19 de octubre de 2018, que se adjunta a la Orden de Conciliación (el "Acuerdo de Conciliación"), y el párrafo 7 de la Orden de Confirmación Enmendada, el procedimiento contencioso entre el ELA y COFINA sobre la Controversia entre el ELA y COFINA ha sido rechazado de forma definitiva luego de la aprobación del pacto y la conciliación de la Controversia entre el ELA y COFINA. Además, conforme al párrafo 29(f) de la Orden de Confirmación Enmendada, reclamaciones (tales como las Reclamaciones parciales de los bonistas de COFINA) que surgieron de o están vinculadas con la relación entre el ELA y COFINA, fueron liberadas. Orden de Confirmación Enmendada, ¶ 29(f).[7] Por todos esos motivos, las Reclamaciones parciales

---

[7]  Conforme al Plan, una "Reclamación" se define como "[c]ualquier derecho a un pago o cumplimiento, independientemente de si tal derecho consta en una sentencia, es liquidado, no liquidado, fijo, accidental, vencido, no vencido, controvertido, no controvertido, legal, en equidad, garantizado o no garantizado, conocido o desconocido, reclamado o no reclamado; o cualquier derecho a un remedio en equidad por incumplimiento o ejecución de un cumplimiento,

de los bonistas de COFINA deben rechazarse porque dichas reclamaciones basadas en una presunta participación patrimonial en los Bonos COFINA han sido satisfechas, liberadas y/o liquidadas conforme a la Orden de Conciliación, el Acuerdo de Conciliación, la Orden de Confirmación Enmendada y el Plan.

### C. Reclamaciones por Bonos Cancelados de la ACT

27.     Conforme a lo identificado en el **<u>Anexo A</u>** del presente documento, algunas de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente pretenden alegar reclamaciones basadas, en parte, en una supuesta participación patrimonial en bonos emitidos por la ACT que han sido cancelados (conjuntamente, las "<u>Reclamaciones parcialmente canceladas de los bonistas de la ACT</u>").

28.     En lo que respecta a las Reclamaciones parcialmente canceladas de los bonistas de la ACT, la ACT reembolsó parte del bono original y creó una cuenta de plica para liquidar el resto del principal y de los intereses sobre los bonos hasta su fecha de vencimiento o su próxima fecha de venta. La Notificación de cancelación y canje refleja que las fechas de vencimiento y/o canje en relación con cada uno de los Bonos cancelados de la ACT ya ha pasado. Notificación de cancelación y canje de la ACT en Anexo B. En consecuencia, "[t]odos los derechos otorgados a los tenedores [de los Bonos cancelados] conforme a la Resolución [de 1998] [son] liberados y satisfechos". Notificación de cancelación y canje de la ACT en 1. En consecuencia, puesto que los Bonos parcialmente cancelados de la ACT ya han sido cancelados, los tenedores de dichos bonos

---

independientemente de si tal derecho a un remedio en equidad consta en una sentencia, es fijo, accidental, vencido, no vencido, controvertido, no controvertido, garantizado o no garantizado, y la totalidad de las deudas, procesos, indemnizaciones por daños y perjuicios, derechos, remedios, pérdidas, responsabilidades, obligaciones, sentencias, acciones, causas de acción, procedimientos o reclamaciones de cualquier tipo o naturaleza, en derecho, equidad o de cualquier otra forma". Plan § 1.53.

ya no tienen una reclamación válida, por lo que las Reclamaciones parcialmente canceladas de los bonistas de la ACT deben ser rechazadas.

**D.  Reclamaciones por bonos parcialmente reclasificadas**

29.     Por último, la parte restante de cada una de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente identifica al ELA como el deudor, cuando en todo caso lo correcto sería que dicha parte se alegara contra la AEE, y alega responsabilidad, en parte, sobre la base de bonos emitidos por la AEE (conjuntamente, las "<u>Reclamaciones por bonos parcialmente reclasificadas</u>").

30.     En cada una de las Reclamaciones por bonos parcialmente reclasificadas el reclamante pretendió alegar, en parte, responsabilidades vinculadas con bono(s) municipal(es), sin embargo la evidencia de reclamación, la documentación justificativa proporcionada por el reclamante y/o la información CUSIP muestran que en todo caso lo correcto sería alegar las responsabilidades vinculadas con las Reclamaciones por bonos parcialmente reclasificadas contra la AEE. En consecuencia, las Reclamaciones por bonos parcialmente reclasificadas deben reclasificarse, en parte, para alegarse contra la AEE, el deudor de Título III identificado en la columna titulada "Corregidas" en el **Anexo A** del presente documento. El ELA se reserva el derecho a objetar a cualquier parte de las Reclamaciones por bonos parcialmente reclasificadas sobre cualquier otro motivo que fuere.

31.     Debido a uno o más de los motivos anteriores, el ELA solicita respetuosamente que las partes de las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente, que están duplicadas con respecto a una o más evidencias de reclamaciones principales, sean rechazadas, y que las partes vinculadas con los bonos emitidos por la AEE sean reclasificadas en el marco del Caso de Título III de la AEE. En apoyo de lo anterior, el ELA invoca

la *Declaración de Jay Herriman en apoyo de la Ducentésima nonagésima quinta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones de bonistas no relacionadas con la responsabilidad y alegadas contra el deudor incorrecto*, de fecha 22 de enero de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

32.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, el ELA notifica la presente Ducentésima nonagésima quinta objeción global a) a los acreedores individuales objeto de esta Ducentésima nonagésima quinta objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a esta Ducentésima nonagésima quinta objeción global se adjunta al presente como **Anexo C**. Se están radicando y notificando traducciones al español junto con esta Ducentésima nonagésima quinta objeción global y los anexos justificativos adjuntos al presente documento. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

33.     La presente Ducentésima nonagésima quinta objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos procedimientos radicados conforme al Título III, a objetar a las Reclamaciones que han de ser rechazadas parcialmente y reclasificadas parcialmente o a cualesquiera otras reclamaciones por los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción

16

adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en dichos procedimientos radicados conforme Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores, o a cualesquiera otras partes interesadas en estos procedimientos radicados conforme Título III, conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## **AUSENCIA DE SOLICITUDES PREVIAS**

34.     No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima nonagésima quinta objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda al ELA cualesquiera otros remedios que se consideren justos.

17

Fecha: 22 de enero de 2021
San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Daniel J. Pérez-Refojos
USDC núm. 303909
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico como representante del Estado Libre Asociado de Puerto Rico*