**Hearing Date: March 10, 2021, at 9:30AM (Atlantic Time)**
**Response Deadline: February 24, 2021 at 4:00PM (Atlantic Time)**

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth and ERS.** |

### TWO HUNDRED NINETY-SECOND OMNIBUS OBJECTION (SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO AND THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO TO CLAIMS THAT ARE PARTIALLY DEFICIENT AND PARTIALLY BASED ON INVESTMENTS IN MUTUAL FUNDS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") and the Employees Retirement System of the Commonwealth of Puerto Rico ("ERS," and together with the Commonwealth, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Debtors pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this two hundred ninety-second objection (the "Two Hundred Ninety-Second Omnibus Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which purports to be based, in part, on one or more investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth and/or ERS, and thus the Commonwealth and/or ERS is not liable because the portions of the claims based on mutual funds are derivative and the claimants lack standing to assert the portion of the claim against the Commonwealth and/or ERS.  The remaining portions of each of the proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient information to enable the Debtors to reconcile the proofs of claim.  In support of the Two Hundred Ninety-Second Omnibus Objection, the Debtors respectfully represent as follows:

## JURISDICTION

1.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

---

[2]  PROMESA is codified at 48 U.S.C. §§ 2101-2241.

## BACKGROUND

**A.      The Bar Date Orders**

3.       On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").  On May 21, 2017 (the "Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "ERS Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases for procedural purposes only.  ECF No. 537.[3]

4.       On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion.  Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders"), extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

**B.    Operations and Bond Debt of the Commonwealth**

5.    The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution") became effective in 1952.  The P.R. Constitution created the Commonwealth as the central government of Puerto Rico, "republican in form."  *See* P.R. Const., Art. I, §§ 1, 2.

6.    The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including on the ability of the Commonwealth to pledge its revenues.  *See* P.R. Const., Art. VI, § 2.  In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

**C.    ERS Bond Debt Master Proof of Claim**

7.    ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees.  ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.

8.    Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds") in the aggregate original principal amount of approximately $2.9 billion.[4]  Bank of New York Mellon ("BNYM") serves as the fiscal agent with respect to the ERS Bonds.

---

[4] On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*.  ERS reserves its

**D.      Proofs of Claim Filed, Omnibus Objection Procedures, and Claim Objections**

9.      To date, approximately 179,000 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors, in addition to unliquidated amounts asserted.

10.      Of the proofs of claim filed, approximately 115,800 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth.  Over 52,900 proofs of claim have been

filed in relation to, or reclassified to be asserted against, ERS.  In accordance with the terms of the

Bar Date Orders, many of these claims need not have been filed at all, or suffer from some other

flaw, such as being subsequently amended, not putting forth a claim for which the Debtors are

liable, being duplicative of other proofs of claim, or failing to provide information necessary for

the Debtors to determine whether the claim is valid.

11.      To efficiently resolve as many of the unnecessary proofs of claim as possible, on

October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A)*

*Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy*

*Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the "Omnibus Procedures

Motion").  The Court granted the relief requested in the Omnibus Procedures Motion by order

dated November 14, 2018. *See Order (A) Approving Limited Omnibus Objection Procedures, (B)*

*Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF

No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the "Initial Omnibus

Objection Procedures").  On November 29, 2018, the Court approved English and Spanish

versions of the forms of notice for omnibus objections to be filed in accordance with the Initial

---

rights to challenge the bond issuance on any grounds whatsoever, including on the ground that
the ERS bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

12.     In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

13.     Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held 12 hearings related to over 140 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), Puerto Rico Highways and Transportation Authority ("HTA"), and/or Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"). Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting $43 trillion in liability against the Commonwealth, COFINA, HTA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

14.     This Two Hundred Ninety-Second Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## **OBJECTIONS TO PROOFS OF CLAIM**

15.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), as well as on other substantive bases set forth in the Amended Omnibus Objection Procedures.

16.     The Two Hundred Ninety-Second Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that (i) seek, in part, recovery for amounts for which the Debtors are not liable because the claims were not filed by a "creditor" of the Debtors, and the claimants therefore lack standing to assert those portions of their claims, and (ii) in part, fail to comply with the applicable rules for filing a claim by not providing a basis for asserting a claim against the Commonwealth, ERS, or any other Title III Debtor.

17.     In each of the claims listed on **Exhibit A** hereto (collectively the "Claims to Be Disallowed"), the proof of claim purported to assert liabilities arising out of "Puerto Rico Bonds," "Puerto Rico Govt Obligations," "IRA," or other similar terms asserting liabilities associated with investments in government-issued bonds, but failed to provide information necessary to enable the Debtors to reconcile the claims, such as the CUSIP numbers or amounts of the specific bonds claimants intended to assert.   Further, each of the Claims to Be Disallowed provided as supporting documentation a copy of a brokerage account statement; however, the Claimant did not identify which investments held in the brokerage account Claimant intended to assert.   Upon a reasonable review of the brokerage account statement for investments related to Puerto Rico bonds, the Debtors were able to identify only investments in mutual funds, which in turn may have invested in bonds issued by the Commonwealth of Puerto Rico.   However, the mutual fund investments

listed in the brokerage account statement did not match the amounts listed in the Claimant's proof of claim.

18.     On August 13, 2019, the Court entered the Order Granting in Part and Adjourning in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the Debtors to send mailings "to any claimant who has not provided sufficient information to enable Debtors to process their claim."  Authorized Mailings Order, ¶ 3.

19.     Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed Mailing to a claimant, and the claimant either does not respond or responds but fails to provide sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to object to the claim as deficient."  *Id.*

20.     In accordance with the Authorized Mailings Order, the Debtors have sent at least one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each claimant subject to this Two Hundred Ninety-Second Omnibus Objection (the "Mailing").  Each Mailing provided, in relevant part:

> Additional information is required in order for the Debtors to continue with assessing your claim. The Debtors are unable to determine from the information you provided the basis for the claim you are attempting to assert against one or more of the Debtors. In responding to this letter, please ensure that you provide all of the information requested and as much detail as possible about your claim.  The descriptions you put on your proof of claim were too vague for the Debtors to understand the claim you are trying to assert, so please provide more detail and do not simply copy over the same information.

*See* ECF No. 8453-1 at 2, 7.

21.     The Mailings received by the claimants subject to this Two Hundred Ninety-Second Omnibus Objection directed the claimants to respond no later than October 23, 2019 (depending on the date each Mailing was sent).  *See id*.  Furthermore, the Mailings cautioned the Claimants that "[i]f you do not respond to this request and do not provide the requested information and documentation in support of your claim, the Debtors may be forced to object to your claim."

22.     Each of the Claimants identified in **Exhibit A** either failed to respond to the Mailings, or submitted a response that still did not contain information necessary to enable the Debtors to reconcile the claim.  Accordingly, based upon the Debtors' review of the documentation submitted with the proofs of claim or with the Mailings, the Debtors understand the Claims to Be Disallowed assert, in part, investments in mutual funds, each of which may, in turn, have invested in bonds issued by the Commonwealth or ERS.

23.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  A claimant bears the burden of establishing standing to file a proof of claim.  *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010).  It is well established that only a creditor or the creditor's authorized agent has standing to assert a claim.  Fed. R. Bankr. P. 3001(b); 11 U.S.C. §§ 501(a) ("A creditor or an indenture trustee may file a proof of claim."); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Only a creditor or indenture trustee may file a proof of claim.").  Parties with merely derivative interests lack standing to assert a claim against a debtor's estate.  *Matter of Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (finding party with "relationship with Debtor [that] is not direct, but rather derivative" was "a stranger to Debtor's bankruptcy proceedings," with "no claim against the estate's assets," and "as a general rule has no standing in Debtor's bankruptcy proceedings"); *see also In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015)

(holding a trust beneficiary was not a party in interest); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else."); *In re Lopez*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (to establish oneself as a party in interest "the moving party must be asserting its own rights and not those belonging to or derivative of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (recognizing the "general principle that 'party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding'" (quoting *In re Refco*, 505 F.3d at 115 n. 10)).

24.      Each of the Claims to Be Disallowed asserts, in part, that the associated claimant is a purported investor in one or more mutual funds that in turn may have invested in bonds issued by the Commonwealth and/or ERS.  "A creditor, under the [Bankruptcy] Code, is one who has a claim *against the debtor* or the estate," rather than "a creditor of one of the debtor's creditors."  *S. Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997).  Because, at most, the Claims to Be Disallowed were filed based on the claimant's status as an alleged creditor of an alleged creditor of the Commonwealth and/or ERS, the Claims to Be Disallowed were not filed by an actual creditor of the Commonwealth.  *See In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (holding receiver lacked standing to file a proof of claim because it was not a creditor or an authorized agent of a creditor).  Instead, the Claims to Be Disallowed assert liabilities that are derivative of claims that must be asserted by the mutual funds directly for any claimed recovery to be considered by the Court.  *See Matter of Goldman*, 82 B.R. at 896 (finding party with "derivative" relationship has "no claim against the estate's asset" and "as a general rule has no standing in Debtor's bankruptcy proceedings").  Moreover, it is unknown whether the mutual funds still retain ownership of the suspect bonds.

25.     Indeed, under nearly identical circumstances, this Court previously disallowed claims filed against COFINA and the Commonwealth by investors in mutual funds that in turn allegedly invested in COFINA bonds for "lack of an individual interest in COFINA securities." *See, e.g.*, *Tr. of Mar. 13, 2019 Hr'g Before the Hon. Laura Taylor Swain* [ECF No. 5969], at 64:01-10 ("THE COURT: So just so that I understand, his documentation shows that he is a mutual fund investor.  To the extent any of those mutual funds actually holds COFINA bonds, the mutual fund would be the appropriate claimant, and so he has provided no evidence of a valid direct claim as against COFINA?  MS. STAFFORD: Correct, your Honor.  THE COURT: The objection to the claim is sustained and the claim is disallowed for lack of an individual interest in COFINA securities."); *Order Granting Sixty-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9099]; *Memorandum Order Denying Motion to Alter or Amend Order Sustaining Objection (Dkt. 8297) to Claims No. 152470 & No. 152283* [ECF No. 9121]; *Order Granting Seventy-Fourth Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico, Puerto Rico Highways and Transportation Authority, and Employees Retirement System of the Government of Puerto Rico to Claims Based on Investments in Mutual Funds* [ECF No. 9242].  Accordingly, with respect to the portions of the claims asserting liabilities arising from mutual funds, the claimants are not creditors of either the Commonwealth or ERS and lack standing to assert the Claims to Be Disallowed. Because the Debtors cannot be held liable for these portions of the Claims to Be Disallowed, those portions of the Claims to Be Disallowed should also be disallowed.

26.     Each of the Claims to Be Disallowed also purports to assert, in part, additional liabilities arising from investments in government bonds, but does not provide critical information, such as CUSIP numbers or amounts, necessary for the Debtors to reconcile the claims.  Those

portions fail to comply with the applicable rules for filing a claim because they do not provide a basis for asserting a claim against the Commonwealth, ERS, or any other Title III Debtor.  The Debtors are therefore unable to determine the basis for the liabilities the Claimants seek to assert, and are unable to determine the validity of the claims.  Accordingly, the remaining portions of the Claims to Be Disallowed should be disallowed because they are deficient.

27.     In support of the foregoing, the Debtors rely on the *Declaration of Jay Herriman in Support of the Two Hundred Ninety-Second Omnibus Objection (Substantive) of the Commonwealth of Puerto Rico and the Employees Retirement System of The Government of Puerto to Claims Based on Investments in Mutual Funds*, dated January 22, 2021, attached hereto as **Exhibit B**.

### NOTICE

28.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth and ERS are providing notice of this Two Hundred Ninety-Second Omnibus Objection to (a) the individual creditors subject to this Two Hundred Ninety-Second Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Thirteenth Amended Case Management Procedures* [ECF No. 13512-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  The notice for this Two Hundred Ninety-Second Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Two Hundred Ninety-Second Omnibus Objection and all of the exhibits attached hereto are being filed and served with this objection.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

### RESERVATION OF RIGHTS

29.     This Two Hundred Ninety-Second Omnibus Objection is limited to the grounds stated herein.  Accordingly, it is without prejudice to the rights of the Debtors to object to the

Claims to Be Disallowed or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

30.     No prior request for the relief sought in this Two Hundred Ninety-Second Omnibus Objection has been made to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting such other and further relief as is just.

Dated: January 22, 2021
       San Juan, Puerto Rico

Respectfully submitted,

/s/ *Ricardo Burgos Vargas*
Ricardo Burgos Vargas
USDC No. 218210
**A&S LEGAL STUDIO, PSC**
434 Ave. Hostos
San Juan, PR 00918
Tel.: (787) 751-6764
Fax: (787) 763-8260

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
for Puerto Rico, as representative for
the Commonwealth of Puerto Rico
and Employees Retirement System of
the Government of the
Commonwealth of Puerto Rico*

Fecha de la vista: 10 de marzo de 2021, a las 9:30 a.m. (AST)
Fecha límite para responder: 24 de febrero de 2021, a las 4:00 p.m. (AST)

> **REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO

| | |
|---|---|
| *In re*: <br><br> JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO, <br><br> como representante del <br><br> ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al.*, <br><br> Deudores.[1] | PROMESA <br> Título III <br><br> Núm. 17 BK 3283-LTS <br><br> (Administrado Conjuntamente) <br><br> **La presente radicación guarda relación con el ELA y el SRE.** |

## DUCENTÉSIMA NONAGÉSIMA SEGUNDA OBJECIÓN GLOBAL (SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO Y DEL SISTEMA DE RETIRO DE LOS EMPLEADOS DEL GOBIERNO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES PARCIALMENTE DEFICIENTES Y PARCIALMENTE BASADAS EN INVERSIONES EN FONDOS MUTUOS

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

El Estado Libre Asociado de Puerto Rico (el "ELA") y el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE", y junto con el ELA, los "Deudores"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III de los Deudores conforme a la sección 315(b) de la *Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico* ("PROMESA"),[2] radican esta ducentésima nonagésima segunda objeción global (la "Ducentésima nonagésima segunda objeción global") a las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento, cada una de las cuales pretende basarse,en parte, en una o más inversiones en fondos mutuos, que a su vez pudieron haber invertido en bonos emitidos por el ELA y/o el SRE, y por lo tantoel ELA y/o el SRE se eximen de toda responsabilidad, puesto que las partes de las reclamaciones basadas en los fondos mutuos son derivadas y los reclamantes carecen de legitimación para alegar la parte de la reclamación contra el ELA y/o el SRE. Las partes restantes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes puesto que no brindan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones. En apoyo de la Ducentésima nonagésima segunda objeción global, los Deudores respetuosamente manifiestan lo siguiente:

---

[2]  PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101 a 2241.

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

3.      El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.      El 16 de enero de 2018, los Deudores radicaron su Moción de una *orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite").

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECFnúm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160] (conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Operaciones y deuda relativa a bonos del ELA**

5.    La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de Puerto Rico") entró en vigor en 1952. La Constitución de Puerto Rico creó el ELA como el Gobierno central de Puerto Rico, de "forma republicana". *Véase* Const. de Puerto Rico, artículo I, §§ 1, 2.

6.    La Constitución de Puerto Rico autoriza al ELA a emitir deuda, con sujeción a determinadas limitaciones, incluida la capacidad del ELA de empeñar sus rentas. *Véase* Const. de Puerto Rico, artículo VI § 2. En 1961, la sección 2 del artículo VI de la Constitución de Puerto Rico fue modificada para limitar el endeudamiento del ELA sobre la base del monto del servicio de la deuda que el ELA tendría que pagar en relación con sus rentas históricas.

**C.    Evidencia de reclamación principal relativa a la deuda de los Bonos del SRE**

7.      El SRE es un *trust* establecido por el ELA en 1951 para fomentar el bienestar económico de los empleados públicos. El SRE es un organismo gubernamental, separado e independiente del Gobierno del ELA y de sus otras instrumentalidades. Véase 3 L.P.R.A § 775.

8.      Supuestamente, conforme a la *Resolución sobre bonos para el financiamiento de pensiones*, adoptada el 24 de enero de 2008, y ciertasresoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados paprael financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal de aproximadamente $2900 millones.[4]  El Bank of New York Mellon ("BNYM") actúa como agente fiscal con respecto a los Bonos del SRE.

**D.      Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

9.      Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

10.      De las evidencias de reclamaciones radicadas, aproximadamente 115,800 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. Más de 52,900

---

[4]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a reclamaciones radicadas por tenedores de bonos emitidos por el SRE* [Caso núm. 17-3566, ECF núm. 381], basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*, lo cual convertía los Bonos del SRE en nulos de pleno derecho. El 23 de abril de 2019, el Comité Oficial de Empleados Retirados del Estado Libre Asociado de Puerto Rico radicó una *Objeción global del Comité Oficial de Empleados Retirados del Estado Libre Asociado de Puerto Rico, conforme alasección 502 del Código de Quiebras y la regla 3007 de las Reglas de Quiebras, a reclamaciones radicadas o alegadas por tenedores de Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-3283, ECF núm. 6482], basándose en que, entre otras cosas, la emisión de los bonos fue *ultra vires*. El SRE se reserva elderecho a impugnar la emisión de los bonos por el motivoque fuere, incluyendo el hecho de que los bonos del SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

evidencias de reclamaciones han sido radicadas en relación con el SRE, o reclasificadas como radicadas contra el SRE. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

11.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

12.     En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

13.     Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebradohasta la fecha 12 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") y/o el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE"). Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que reivindicaban $43 billones en responsabilidad contra el ELA, COFINA, la ACT y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

14.     Esta Ducentésima nonagésima segunda objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

15.     Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

16.     La Ducentésima nonagésima segunda objeción global pretende rechazar, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que i) buscan recuperar, en parte, montos por los que los Deudores no tienen responsabilidad, puesto que las reclamaciones no fueron radicadas por un "acreedor" de los Deudores, por lo que los reclamantes carecen de legitimación para alegar esas partes de susreclamaciones, y ii) no cumplen, en parte, con las normas aplicables a la radicación de reclamaciones al no brindar fundamento alguno para alegar una reclamación contra el ELA, el SRE o cualquiera de los demás Deudores de Título III.

17.     En cada una delas reclamaciones que figuran en el **Anexo A** del presente (conjuntamente, las "Reclamaciones que han de ser rechazadas"), la evidencia de reclamación pretende alegar responsabilidades surgidas de los "Bonos de Puerto Rico", "Obligaciones del Gobierno de Puerto Rico", "IRA" u otros términos similares que alegan responsabilidades vinculadas con inversiones en bonos emitidos por el Gobierno, pero no brindan la información necesaria para que los Deudores puedan reconciliar las reclamaciones, talescomolos números CUSIP o montos correspondientes a los bonos concretos que los reclamantes pretenden alegar. Además, para cada una de las Reclamaciones que han de ser rechazadas, proporcionaron como

8

evidencia de reclamación, una copia del estado de una cuenta de corretaje. Sin embargo, el Reclamante no identificó sobre cuál de las inversiones en la referidas cuenta reclama. Luego de una revisión razonable del estado de cuenta de corretaje para inversiones relacionadas con bonos de Puerto Rico, los Deudores pudieron identificar solo inversiones en fondos mutuos, que a su vez podrían haber invertido en bonos emitidos por el Estado Libre Asociado de Puerto Rico. Sin embargo, las cantidades que aparecen en el estado de la cuenta de corretaje no coinciden con las cantidades que figuran en la evidencia de reclamación del Reclamante.

18. El 13 de agosto de 2019, el Tribunal dictó la Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier reclamante que no haya proporcionado suficiente información que permitiera a los Deudores procesar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

19. Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío Propuesto al reclamante, y este último no responde, o responde pero no aporta suficiente información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho a oponerse a la reclamación como deficiente". *Id.*

20. De conformidad con la Orden de Envío Autorizado, los Deudores han enviado al menos una carta a cada reclamante con sujeción a la presente Ducentésima nonagésima segunda objeción global esencialmente en el formato que se adjunta al presente documento como Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan
> examinando su reclamación. Los Deudores no pueden determinar a
> partir de la información que usted proporcionó cuál es la base de la
> reclamación que trata de alegar contra uno o más Deudores. Al
> responder a esta carta, rogamos se asegure de proporcionar toda la
> información solicitada, así como tantos detalles como sea posible
> aportar sobre su reclamación. Las descripciones que incorporó en
> su evidencia de reclamaciones eran demasiado vagas para que los
> Deudores comprendieran la reclamación que usted trata de alegar,
> de manera que rogamos proporcione más detalles y no se limite
> simplemente a copiar la misma información.

*Véase* ECF núm. 8453-1 en 2, 7.

21.    Los Envíos recibidos por los reclamantes con sujeción a la presente Ducentésima

nonagésima segunda objeción global exigían a los reclamantes responder antes del 23 de octubre

de 2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los

Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona

la información y la documentación requeridas para justificar su reclamación, es posible que los

Deudores se vean en la obligación de oponerse a su reclamación".

22.    Cada uno de los Reclamantes identificados en el **Anexo A** o bien no respondió a

los Envíos, o bien envió una respuesta que tampoco contenía la información necesaria que

permita a los Deudores reconciliar la reclamación. En consecuencia, a base de la revisión por los

Deudores de la documentación sometida con la evidencia de reclamo o con los Envíos, los

Deudores entienden que,  las Reclamaciones que han de ser rechazadas , en parte, inversiones en

fondos mutuos, cada uno de las cuales pudo, a su vez, haber invertido en bonos emitidos por el

ELA o el SRE.

23.    Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este,

en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C.,

§ 502(b)(1). Los reclamantes tienen la carga de demostrar su legitimación para radicar una

evidencia de reclamaciones. *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010). Es

ampliamente aceptado que solo los acreedores o sus representantes autorizados están legitimados para radicar reclamaciones. Reg. Fed. de Pr. de Quiebr. 3001(b); Título 11 U.S.C., §§ 501(a) ("Los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones"); *In re Melillo*, 392 B.R. 1, 5 (B.A.P. 1st Cir. 2008) ("Solo los acreedores o fiduciarios autorizados podrán radicar evidencias de reclamaciones".). Las partes que solo tengan intereses derivados carecen de legitimación para radicar reclamaciones contra los bienes de un deudor. *Caso Goldman*, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (donde se concluyó que una parte con "una relación con el Deudor [que] no es directa, sino más bien derivada" era "persona ajena al procedimiento de quiebra del Deudor", sin "ningún reclamo contra los activos del patrimonio" y "como regla general, no tiene legitimación en relación con el procedimiento de quiebra del Deudor".); *véase también In re Tower Park Properties, LLC*, 803 F.3d 450, 462-63 (9th Cir. 2015) (donde se concluyó que un beneficiario de un fideicomiso no era una parte interesada); *In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) ("En la medida en que se hagan valer los derechos de una parte interesada, esos derechos han de hacerse valer por dicha parte interesada, no por un tercero".); *In re López*, 446 B.R. 12, 17 (Bankr. D. Mass. 2011) (para constituirse como parte interesada "la parte solicitante deberá hacer valer sus propios derechos y no aquellos que asistan a un tercero o que se deriven en relación con tal tercero".); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (donde se reconoce el "principio general de que 'no se da legitimación de una parte interesada si la parte pretende hacer valer un derecho que es puramente derivado de los derechos de otra parte en el procedimiento de quiebras'" (que cita *In re Refco*, 505 F.3d at 115 n. 10)).

24.     En cada una de las Reclamaciones que han de ser rechazadas se alega, en parte, que el reclamante relacionado es un supuesto inversor en uno o más fondos mutuos que, a su vez,

pudieron haber invertido en bonos emitidos por el ELA y/o el SRE. "Un acreedor, conforme al Código [de Quiebras], es aquelque tiene reclamación *contra el deudor* o el patrimonio", en lugar de "un acreedor de uno de los acreedores del deudor". *S. Blvd., Inc. c. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997). Puesto que, a lo sumo, las Reclamaciones que han de ser rechazadas fueron radicadas en virtud de la condición del reclamante como presunto acreedor de un presunto acreedor del ELA y/o del SRE, las Reclamaciones que han de ser rechazadas no fueron radicadas por un acreedor real del ELA. *Véase In re Thalmann*, 469 B.R. 677, 683 (Bankr. S.D. Tex. 2012) (donde se concluye que el síndicocarecía de legitimación para radicar evidencias de reclamaciones porque no era acreedor ni agente autorizado de un acreedor). En cambio, las Reclamaciones que han de ser rechazadas alegan responsabilidades que se derivan de reclamaciones que deben hacerse valer directamente por los fondos mutuos para que el Tribunal examine cualquier recuperación alegada. *Véase el caso Goldman*, 82 B.R. en 896 (donde se concluye que una parte con una relación "derivada" no puede "reclamar los activos del patrimonio" y "como regla general, carece de legitimación en el procedimiento de quiebras del Deudor"). Es más, no se sabe si los fondos mutuos siguen ostentando la propiedad de los bonos controvertidos.

25. En efecto, en unas circunstancias casi idénticas, el Tribunal ya rechazó reclamaciones radicadas contra COFINA y el ELA por unos inversores en fondos mutuos que, a su vez, supuestamente invirtieron en bonos de COFINA, por "carecer de interés individual en los títulos valores de COFINA". *Véase, por ejemplo, Tr. de 13 de mar. de 2019 ante Su Señoría Laura Taylor Swain* [ECF núm. 5969], en 64:01-10 ("EL TRIBUNAL: Entonces, para que yo lo entienda, su documentación muestra que es inversor en un fondo mutuo. En la medida en que cualquiera de esos fondos mutuos posea realmente bonos de COFINA, el fondo mutuo sería el

reclamante pertinente, ¿así que no proporcionó ninguna evidencia de una reclamación directa válida contra COFINA? SRA. STAFFORD: Así es, señoría. EL TRIBUNAL: Se concede la objeción a la reclamación, y se rechaza la reclamación por falta de interés individual en títulos valores de COFINA."); *Orden por la que se concede la Sexagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en inversiones en fondos mutuos* [ECF núm. 9099]; *Orden de memorando por la que se rechaza la moción para alterar o enmendar la orden que concede la objeción (extr. 8297) a las Reclamaciones núms. 152470* y *152283* [ECF núm. 9121]; *Orden por la que se concede la Septuagésima cuarta objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico, de la Autoridad de Carreteras y Transportación de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del estado Libre Asociado de Puerto Rico a Reclamaciones basadas en inversiones en fondos mutuos* [ECF núm. 9242]. Por lo tanto, en lo que respecta a las partes de las reclamaciones en las que se alegan responsabilidades surgidas de fondos mutuos, los reclamantes no son acreedores del ELA ni del SRE y carecen de legitimación para hacer valer Reclamaciones que han de ser rechazadas. Puesto que los Deudores no pueden considerarse responsables por estas partes de las Reclamaciones que han de ser rechazadas, dichas partes de las Reclamaciones que han de ser rechazadas también tienen que desestimarse.

26.     Cada una de las Reclamaciones a ser denegadas también pretende afirmar, en parte, deudas adicionales que surgen de inversiones en bonos del gobierno, pero no proporciona información crítica, como números o montos CUSIP, necesaria para que los Deudores concilien las reclamaciones. . Dichas partes no cumplen con las normas aplicables a la radicación de una reclamación ya que no brindan fundamento alguno para alegar reclamaciones contra el ELA, el SRE o cualquier otro Deudor de Título III.  En consecuencia, los Deudores no pueden determinar

el fundamento de las responsabilidades que los Reclamantes tratan de alegar, por lo que tampoco pueden determinar la validez de las reclamaciones. Por lo tanto, las partes restantes de las Reclamaciones que han de ser rechazadas deben ser rechazadas porque son deficientes.

27.    En apoyo de lo anterior, los Deudores invocan la *Declaración de Jay Herriman en apoyo de la Ducentésima nonagésima segunda objeción global (sustantiva) del Estado Libre Asociado de Puerto Rico y del Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico a Reclamaciones basadas en inversiones en fondos mutuos*, de fecha 22 de enero de 2021, adjunta al presente como **Anexo B**.

## NOTIFICACIÓN

28.    De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA y el SRE notifican la presente Ducentésima nonagésima segunda objeción global a) a los acreedores individuales objeto de esta Ducentésima nonagésima segunda objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 13* [ECF núm. 13512-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación relativa a esta Ducentésima nonagésima segunda objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Ducentésima nonagésima segunda objeción global y de la totalidad de los anexos que se adjuntan al presente se radican y envían con la presente objeción. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

29.    La presente Ducentésima nonagésima segunda objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores a objetar a las Reclamaciones que han de ser rechazadas o a

cualesquiera otras reclamaciones sobre la base de los motivos que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos que asisten a los Deudores a oponerse a cualesquiera reclamaciones sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos que asisten a los Deudores conforme a PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## AUSENCIA DE SOLICITUDES PREVIAS

30.    No se ha radicado ninguna solicitud de remedio previa a la presente Ducentésima nonagésima segunda objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

POR LO QUE los Deudores solicitan respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda a los Deudores cualesquiera otros remedios que se consideren justos.

Fecha: 22 de enero de 2021                           Respetuosamente sometida,
     San Juan (Puerto Rico)

                                           [*Firma en la versión en inglés*]
                                           Ricardo Burgos Vargas
                                           USDC No. 218210
                                           **A&S LEGAL STUDIO, PSC**
                                           434 Ave. Hostos
                                           San Juan, PR 00918
                                           Tel.: (787) 751-6764
                                           Fax: (787) 763-8260

15

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión
y Administración Financiera para
Puerto Rico, como representante del
Estado Libre Asociado de Puerto
Rico y del Sistema de Retiro de los
Empleados del Gobierno del Estado
Libre Asociado de Puerto Rico*