UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,
Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

### STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD IN CONNECTION WITH JANUARY 27–28, 2021 OMNIBUS HEARING

To the Honorable United States District Court Judge Laura Taylor Swain:

    The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the January 27–28, 2021 omnibus hearing and in response to this Court's order, dated January 19, 2021 [ECF No. 15653].

**I.     General Status and Activities of the Oversight Board**

1.     In December 2020, President Trump appointed Betty A. Rosa, John E. Nixon, and Antonio L. Medina Comas, and reappointed Andrew G. Biggs, to the Oversight Board.  In early January, President Trump reappointed David A. Skeel Jr. and Arthur J. González to the Oversight Board.  Mr. González previously served on the Oversight Board until his tenure ended with President Trump's appointment of Justin Peterson in October 2020.  Mr. Skeel was named Chairperson of the Oversight Board in October 2020, and continues to serve in that capacity following his reappointment.  These recent appointments bring the Oversight Board to seven members, and the Oversight Board looks forward to the participation of its new and continuing members.

2.     The Oversight Board and the Government of Puerto Rico (the "Government") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus amid the recent increase in COVID-19 cases, while ensuring critical businesses may remain open to provide for the needs of the people of Puerto Rico.  To ensure the health and safety of the people of Puerto Rico, the Government recently announced restrictions aimed at limiting the spread of the virus, including, among other things, limiting the hours and capacity of businesses.  The Oversight Board is also focused on the need for measures that will support the long-term health and welfare of Puerto Rico's people, such as a comprehensive distance learning strategy, a post-COVID back-to-school plan, and an improved healthcare system.  As set forth in previous Status Reports, the Oversight Board has already worked closely with the Government to define how to best utilize over $750 million in emergency funding, with a clear focus on

responding to and managing the pandemic. The Oversight Board is continuing to work with the Government to utilize effectively federal funding intended to cover expenses related to COVID-19.

3. The Oversight Board is also working to optimize the Government's access to and utilization of $8.3 billion in federal Community Development Block Grant – Mitigation Program funding. These funds are part of a $20.2 billion Congressional appropriation to Puerto Rico, however the Commonwealth currently has access to only $3.2 billion due to the United States Department of Housing and Urban Development ("HUD") approval process. At a December 18, 2020 meeting, the Oversight Board certified an Action Plan submitted by the Puerto Rico Department of Housing for the additional $8.3 billion. The Action Plan aims to increase Puerto Rico's resiliency and ability to recover from disasters such as hurricanes and earthquakes, to avoid loss of life and destruction, and to minimize the socioeconomic impact of natural disasters. The Oversight Board is also focused on ensuring billions of dollars in disaster relief funding recently announced by FEMA and then President Trump, including $10.5 billion for the restoration of PREPA's electrical grid and $2.3 billion for the Department of Education, are effectively utilized.

4. The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico.

## II. General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments

5. The Oversight Board looks forward to working with new Puerto Rico Governor Pedro Pierluisi and the rest of the Commonwealth administration. The Oversight Board has already met with the new Governor several times. The relationship between the Oversight Board and the Government continues to be collaborative, and the Oversight Board and Government

remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority.

6. The Oversight Board is concerned, however, with the Government's delays in publishing its consolidated audited financial statements, currently more than two years behind schedule. The latest available audited financials, from Fiscal Year 2017, were published in August 2020. The Oversight Board is committed to working with the Government to ensure audited financial statements are completed on a timely basis going forward.

7. In addition, the Oversight Board continues to remind the Government of required compliance with PROMESA and the Certified Fiscal Plan. Specifically, the Puerto Rico Transport and Other Services Bureau recently enacted new regulations without first presenting them to the Oversight Board approval, as required by PROMESA. The new regulations would increase certain tariffs the Certified Fiscal Plan seeks to eliminate to improve the ease of doing business, attract investment, and promote economic growth, and is thus inconsistent with the Fiscal Plan. In addition, the Government recently passed Joint Resolution 82, which allows the Puerto Rico Treasury Department to grant emergency loans to address liquidity challenges arising from the pandemic. While the Oversight Board supports addressing challenges stemming from COVID-19 in a fiscally responsible manner, Joint Resolution 82 lacks details and Oversight Board approval for the loans, repayment terms, and related budgets, and was not certified pursuant to PROMESA.

**III.** **General Status of Work Toward Plans of Adjustment**

8. Pursuant to the guidance of the Court-appointed Mediation Team, the Oversight Board and its advisors continue to participate in the mediation process, with sessions being scheduled and coordinated by the Mediation Team, and with the goal of reaching a consensual plan of adjustment. As per the Court's directive, the Oversight Board will endeavor to meet with

4

as many creditor groups as possible prior to the February 10, 2021 deadline set by the Court for the submission of a plan of adjustment or a term sheet setting forth the general parameters for a plan of adjustment. The Oversight Board reserves its right to seek an extension of such deadline in the event that it (and the Mediation Team) are unable to meet with the requisite creditor groups in such timeframe or that circumstances indicate that an extension might facilitate reaching a consensual or, at least, a more comprehensive understanding among respective creditor interests.

**IV.** **General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters**

9. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order"), the Debtors have filed eight notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), see *First Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 13603] (the "First ACR Notice"), *Second Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14182] (the "Second ACR Notice"), *Third Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14785] (the "Third ACR Notice"), *Fourth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15027] (the "Fourth ACR Notice"), *Fifth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15086] (the "Fifth ACR Notice"), *Sixth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15116] (the "Sixth ACR Notice"), *Seventh Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15534], *Eighth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15721], and have transferred approximately 17,000 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims

will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices.

10. Subsequent thereto, the Debtors have filed notices, see *Notice of Filing of First Administrative Claims Resolution Status Notice* [ECF No. 14515] and accompanying *First Administrative Claims Resolution Status Notice* [ECF No. 14515-1] (the "First ACR Status Notice"), and *Notice of Filing of Second Administrative Claims Resolution Status Notice* [ECF No. 15367] and accompanying *Second Administrative Claims Resolution Status Notice* [ECF No. 15367-1] (the "Second ACR Status Notice"), wherein the Debtors reported the successful resolution of hundreds of ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on February 5, 2021, and the Debtors anticipate reporting the successful resolution of thousands of additional ACR Designated Claims. With respect to the remaining ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on March 5, 2021. The Debtors anticipate transferring additional claims into Administrative Claims Reconciliation at that time.

11. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order"), the Debtors have filed nine notices transferring claims into the ADR Procedures (as defined in the ADR Order), see *First Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 13609] (the "First ADR Notice"), *Second Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14090] (the "Second ADR Notice"), *Third Notice of*

*Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14521] (the "Third ADR Notice"), *Fourth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14786] (the "Fourth ADR Notice"), *Fifth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15085] (the "Fifth ADR Notice"), *Sixth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15113] (the "Sixth ADR Notice"), the *Seventh Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15217] (the "Seventh ADR Notice"), the *Eighth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15533], the *Ninth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15720], and have transferred approximately 234 claims into the ADR Procedures.

12. Subsequent thereto, the Debtors have filed notices, see *First Alternative Dispute Resolution Status Notice* [ECF No. 14185] (the "First ADR Status Notice"), *Second Alternative Dispute Resolution Status Notice* [ECF No. 15028-1] (the "Second ADR Status Notice"), *Third Alternative Dispute Resolution Status Notice* [ECF No. 1551-1] (the "Third ADR Status Notice"), indicating nearly fifty (50) claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures, and over fifteen (15) claimants have accepted the Debtors' offers. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted.

13. Since the filing of the Third ADR Status Notice, one (1) claimant has rejected the Debtors' offer, and that claim shall progress to Evaluative Mediation (as defined in the ADR Order). Further, the Debtors are evaluating additional responses received and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. In addition, the Debtors are currently preparing offers with respect to the remaining ADR Designated Claims, and anticipate sending offer letters to such

claimants as set forth in the ADR Order. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due March 5, 2021, and the Debtors anticipate transferring additional claims into the ADR Procedures at that time.

14. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 7,000, while the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims.

V. **General Status of the Claims Objection Process, the Number of Remaining Claims Expected to Be Subject to Future Claim Objections, and Anticipated Procedures for Documenting Negotiated Claims Resolutions**

15. The Debtors have made substantial progress in resolving outstanding claims. To date, approximately 179,066 claims have been filed against the Debtors, asserting over $43.6 trillion in liabilities. Approximately 77,700 claims, asserting over $43.3 trillion in liabilities, have been expunged, withdrawn, resolved via the ACR Procedures, or otherwise reconciled. Further, over 33,500 claims, asserting over $4 billion in liabilities, are subject to adjourned omnibus objections and will be resolved either at the upcoming February adjourned objection hearing or via notices of presentment. Additionally, the Debtors are in the process of resolving approximately 14,000 claims that were previously transferred into Administrative Claims Reconciliation and that have not yet been fully resolved via the ACR process.

16. The Debtors' review and analysis of the approximately 50,000 claims that have not yet been the subject of claim objections, stipulations, or transfers into the ADR Procedures or Administrative Claims Reconciliation is ongoing. To date, the Debtors have identified approximately 2,000 claims that are ripe for objection. In addition, the Debtors have identified an

in excess of 26,000 claims suitable for resolution utilizing Administrative Claims Reconciliation. Many of the remaining 22,000 claims are litigation or trade claims, and the Debtors are determining which of those claims are suitable for resolution via either omnibus objections or the ADR Procedures. With respect to the process for documenting the resolution of claims subject to the ADR Procedures, in the future, the Debtors anticipate sending form stipulations with offers to expedite the documentation of negotiated resolutions of claims.

17. Because the Debtors' review of the remaining claims remains ongoing, and because new, albeit in violation of the Court's orders regarding the establishment of applicable bar dates, claims continue to be filed, the Debtors cannot predict with any meaningful certainty the number of claims that will be subject to future claim objections, or the number of additional claim objections that must be filed.

[*Remainder of page intentionally left blank*]

Dated: January 26, 2021
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      brosen@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board as Representative of the Debtor*