# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| AMBAC ASSURANCE CORPORATION,<br><br>Movant,<br><br>-v-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Respondent. | No. 17-BK-3283-LTS<br><br>**Re: ECF No. 15520, 15495, 15567** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**SURREPLY OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN FURTHER OPPOSITION TO MOTION BY AMBAC ASSURANCE CORPORATION FOR AN ORDER DIRECTING CASH RULE 2004 DISCOVERY**

ii

To the Honorable United States Magistrate Judge Judith G. Dein:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), on its own behalf and in its capacity as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this surreply in support of its objection [ECF No. 15495] (the "Objection") to the New Cash Motion,[3] and in response to false factual assertions raised in the reply submitted by Ambac in support of the New Cash Motion [ECF No. 15567] (the "Reply"), and respectfully states as follows:

1. Ambac's New Cash Motion purports to seek (*i*) "Calculation Back-Up Material" (Excel versions of the charts and tables contained in the March 2019 D&P Report and the two October 2019 Presentations), and (*ii*) "Process Documents," which Ambac describes as the Oversight Board's "nonlawyer" advisors' communications regarding whether certain Commonwealth funds were subject to legal restrictions. To narrow the issues in dispute, and notwithstanding its view the Calculation Back-Up Material is not relevant, the Oversight Board produced responsive documents with its advisors' internal notes removed, thereby resolving Ambac's first request. The Oversight Board explained in its Objection that Ambac's remaining request for Process Documents was premised on two basic misunderstandings. *First*, although Ambac claims to seek only the Oversight Board's "nonlawyer" advisors' communications, there are no readily ascertainable, non-privileged communications among non-lawyer advisors regarding restriction classifications. That is true because, as the Oversight Board has explained, legal counsel and non-lawyer advisors worked collaboratively to prepare the cash restriction

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.
[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Objection.

Document Page 4 of 9

analyses, and legal counsel—*not* the Oversight Board's non-lawyer advisors—determined whether accounts were restricted or not. *Second*, contrary to Ambac's assertions, the Oversight Board does not intend to rely on the 2019 Analyses—which have been superseded—at a confirmation hearing.

2. In its Reply, Ambac continues to fundamentally misunderstand both the cash restriction analyses and the documents related to them. The Reply asserts—inaccurately—the Oversight Board "admit[s]" it "intends to put the cash restriction analysis directly at issue," and "intends for the analysis to serve the same function as an expert report," Reply at ¶¶ 9, 16. For those reasons, Ambac contends the Process Documents are relevant and non-privileged. Ambac is wrong. The Oversight Board did not "admit" that it will use as evidence the cash restriction analyses at issue or that it intends for them to serve as expert reports. Indeed, the Oversight Board's Objection states the exact opposite, explaining it "does not intend to rely on the 2019 Analyses [at] confirmation," and "the 2019 Analyses are neither expert reports nor akin to expert reports." Obj. at ¶ 4.

3. Each iteration of the cash restriction analysis—including the 2019 Analyses, Exhibit J to the Amended Disclosure Statement, and the December 2020 Presentation—is more properly understood as a summary of voluminous documents pursuant to Federal Rule of Evidence 1006. The process by which the cash restriction analyses were prepared demonstrates why this is so: the Oversight Board's counsel first analyzed factual source material and made determinations as to which accounts are or are not subject to legal restrictions. Then, on the basis of counsel's legal judgment, the Oversight Board's non-lawyer advisors prepared summary presentations.

4. Contrary to Ambac's assertions, the Oversight Board will not seek to introduce *any* iteration of its analysis into evidence at a hearing. Nor will it offer expert testimony regarding its cash restriction judgments. The Oversight Board instead will prove its cash restriction

determinations through legal argument presented by counsel, relying on the factual source materials upon which those legal determinations are based. As Rule 1006 requires, the Oversight Board has produced to Ambac those voluminous source materials (and will continue to do so for any future cash restriction analyses that are performed or as additional underlying documents or other evidence may become available or otherwise be obtained). *See* Fed. R. Evid. 1006; *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 31 (1st Cir. 2011). Because the Oversight Board will rely on the very same factual source materials Ambac possesses (or will in the future possess to the extent additional materials are obtained and produced to Ambac by the Oversight Board), Ambac will have a full and fair opportunity to utilize those materials to contest the Oversight Board's counsel's advocacy regarding legal restrictions if it wishes to do so.

5. It is Ambac's burden to demonstrate what it seeks is relevant, and it has not met that burden. Ambac contends prior versions of the cash restriction analysis are relevant because each iteration "build[s] on" prior versions, and "determinations about restrictions may have been made in the original iteration of the cash restriction analysis (the Duff & Phelps Report) and never revisited . . . ." Reply ¶¶ 2, 10. That is wrong. Each iteration does not simply incorporate previous determinations; rather, the Oversight Board's counsel has reanalyzed its restriction judgments, including to assess whether newly-obtained information affects its determination. Ambac is aware the Oversight Board's counsel conducts such analyses, because the October 2019 Presentations stated counsel for the Oversight Board was continuing to review documentation supporting restriction determinations. Obj. at ¶ 8; Mot. Ex. C at 1; Mot. Ex. D at 7.

6. Ambac also claims it needs the Process Documents because the Oversight Board supposedly enjoyed the "benefits of numerous communications with Commonwealth entities to understand the raw data and how to properly categorize and analyze it." Reply at ¶ 7. Ambac

3

does not need Process Documents for this purpose either because the Oversight Board organized its production of documents underlying the October 2019 Presentations by account. Each document—including each account statement, balance sheet, and document considered in reaching a restriction determination—is associated with the bank account number(s) to which that document relates. Ambac should therefore have no difficulty understanding how the factual source materials are organized, because the Oversight Board has already performed that task for Ambac.[4]

7. While Ambac contends the Oversight Board's burden assertions are "not ripe" (Reply at ¶ 3), that misapprehends the point. The Oversight Board opposes production of the Process Documents *precisely because* reviewing and producing irrelevant documents that necessarily implicate complex privilege issues would impose a burden on the Oversight Board not proportional to the needs of the matter. The estimate of 70,000 potentially relevant documents was based on a preliminary analysis of documents currently held by the Oversight Board's counsel. It does not include all documents Ambac might contend are relevant, such as its non-lawyer advisors' internal communications. As the Oversight Board explained in its Objection, where, as here, the documents sought are of minimal relevance, and their production would impose substantial burdens, courts have refused to permit discovery. *See* Obj. at ¶ 30.

8. Ambac also contends—erroneously—the Process Documents cannot be privileged because they contain "'assumptions' the Board's lawyers provided and 'that the expert relied on' in reaching its conclusions . . . ." Reply at ¶ 19. That description is wrong and has the process backwards.[5] As explained, the Oversight Board's non-lawyer advisors did not make

---

[4] Moreover, the Oversight Board's production included emails exchanged with financial institutions and accountholders while its advisors were in the process of collecting data.

[5] Ambac asserts the Oversight Board's description of how the cash restriction analysis was prepared rests on "disputed factual assertions." Reply at ¶ 1. It is not clear on what basis Ambac contests the Oversight Board's assertions, especially because Ambac did not participate in

4

determinations as to the restricted or unrestricted status of any account on the basis of "assumptions" provided by counsel. Rather, the Oversight Board's *counsel*—and *not* its non-lawyer advisors—reached determinations regarding whether accounts were or restricted or not. Its nonlawyer advisors then prepared summary graphs and charts on the basis of those determinations.

9. Finally, with respect to the Calculation Back-Up, Ambac acknowledges the Oversight Board's production addresses this request. There is therefore no reason for this Court to enter a "formal court order compelling" (Reply at ¶ 31) the production of documents the Oversight Board has already voluntarily provided. Obj. at ¶ 2; 2 n.3. Ambac nevertheless demands an order because, according to Ambac, it requires "certain account identifiers," as well as "Calculation Back-Up related to the December 2020 Presentation." Reply at ¶ 30. The December 2020 Presentation was released approximately a month *after* the New Cash Motion was filed, and is therefore beyond its scope. However, the Oversight Board is seeking to identify back-up material underlying the summary tables in the December 2020 presentation. Further, it is impossible for either the Oversight Board or the Court to assess Ambac's request for "certain account identifiers" because Ambac does not explain what "account identifiers" it seeks. Counsel for the Oversight Board previously advised Ambac of their availability to answer questions regarding the Calculation Back-Up, including questions regarding account identifiers. Obj. Ex. 1 at 3. The Oversight Board remains available should Ambac wish to avail itself of the opportunity.

10. For the reasons set forth above, as well as the reasons set forth in the Objection, the Oversight Board respectfully submits the Court should deny the New Cash Motion.

---

preparing the cash analyses. In any event, Ambac does not identify what specific "factual assertions" it disputes.

Dated: January 29, 2021
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García Benítez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
Email: carla.garcia@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
Michael T. Mervis (*pro hac vice*)
Laura E. Stafford (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: mdale@proskauer.com
Email: mmervis@proskauer.com
Email: lstafford@proskauer.com

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, on its own behalf and as representative of the Commonwealth of Puerto Rico*

6

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

7