# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

<table>
<tr>
<td>

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al*.,

      Debtors.[1]

</td>
<td>

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

</td>
</tr>
<tr>
<td>

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

      Plaintiff,

      v.

AMBAC ASSURANCE CORPORATION, *et al.*,

      Defendants.

</td>
<td>

Adv. Proc. No. 20-00003-
LTS

</td>
</tr>
</table>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00005-LTS |

**JOINT STATUS REPORT OF AMBAC ASSURANCE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, THE BANK OF NEW YORK MELLON, U.S. BANK TRUST NATIONAL ASSOCIATION, AND THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO, <u>PURSUANT TO THE COURT'S JANUARY 20, 2021 ORDER</u>**

To the Honorable United States Magistrate Judge Judith Gail Dein:

Ambac Assurance Corporation ("Ambac"), Financial Guaranty Insurance Company ("FGIC"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured"), National Public Finance Guarantee Corporation ("National," and collectively with Ambac, FGIC, and Assured, the "Monolines"), The Bank of New York Mellon ("BNY"), U.S. Bank Trust National Association ("U.S. Bank", and collectively with the Monolines and BNY, the "Defendants"), and the Financial Oversight and Management Board for Puerto Rico (the "Board"), as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth" or "Debtor") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this joint status report in response to the Court's Order dated January 20, 2021 (ECF No. 15656).[2]

## DEFENDANTS' POSITION

### I.  PROCEDURAL BACKGROUND

1.      On January 16, 2020, pursuant to the *Interim Case Management Order for Revenue Bonds* (ECF No. 9620) (the "Interim CMO"), the Board initiated three adversary proceedings (the "Adversary Proceedings") on behalf of the Commonwealth objecting to certain of Defendants' claims with respect to bonds issued by the Puerto Rico Infrastructure Finance Authority ("PRIFA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Highways and Transportation Authority ("HTA") and seeking related relief.  (*See* Adv. Proc. No. 20-00003, ECF No. 1; Adv. Proc. No. 20-00004, ECF No. 1; Adv. Proc. No. 20-00005, ECF No.

---

[2] Unless otherwise indicated, all ECF numbers referenced herein refer to the docket in Case No. 17 BK 3283-LTS.  Defendants and the Board are collectively referred to as the "Parties."

1 (collectively, the "Adversary Complaints").)  The Board also filed a fourth complaint on behalf of HTA.  (Adv. Proc. No. 20-00007, ECF No. 1.)

2.    On February 27, 2020, as permitted by the Interim CMO, Defendants filed motions to dismiss numerous counts in the Adversary Complaints.  (*See* Adv. Proc. No. 20-00003, ECF No. 21; Adv. Proc. No. 20-00004, ECF No. 22; Adv. Proc. No. 20-00005, ECF No. 34 (collectively, the "Motions to Dismiss").)

3.    The Court did not rule on the Motions to Dismiss.  Instead, on March 10, 2020, the Court entered the *Final Case Management Order for Revenue Bonds* (ECF No. 12186) (the "Final CMO"), which stayed the Adversary Proceedings, except for the filing of summary judgment motions limited to certain claims in the Adversary Complaints.  (Final CMO at 5-7.)  On April 28, 2020, the Board filed three limited motions for summary judgment in the Adversary Proceedings. (*See* Adv. Proc. No. 20-00003, ECF No. 44; Adv. Proc. No. 20-00004, ECF No. 41; Adv. Proc. No. 20-00005, ECF No. 56 (collectively, the "Summary Judgment Motions").)

4.    On July 16, 2020, Defendants opposed the Summary Judgment Motions, arguing, among other grounds, that discovery was needed before the Board's claims could be adjudicated. (*See* Adv. Proc. No. 20-00003, ECF No. 80; Adv. Proc. No. 20-00004, ECF No. 78; Adv. Proc. No. 20-00005, ECF No. 56.)  Defendants submitted three declarations opposing the Summary Judgment Motions on the grounds that Defendants were entitled to additional discovery pursuant to Federal Rule of Civil Procedure 56(d) ("Rule 56(d)").[3]

---

[3] (*See Declaration of John J. Hughes, III in Support of Opposition of Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and U.S. Bank Trust National Association to the Oversight Board's Motion for Partial Summary Judgment Seeking to Disallow Claims Relating to PRIFA Bonds*, Adv. Proc. No. 20-00003, ECF No. 82; *Declaration of John J. Hughes, III in Support of the Opposition of Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and the Bank of New York Mellon to the Oversight Board's Motion for Partial Summary Judgment Seeking to Disallow Claims Relating to CCDA Bonds*, Adv. Proc. No. 20-00004, ECF

## II.      DISCUSSIONS REGARDING SCHEDULE

5.      On January 20, 2021, the Court issued its *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims* (ECF No. 15656) (the "Rule 56(d) Order").  The Rule 56(d) Order authorized discovery into specified topics addressed in the declarations Defendants submitted.  The Court ordered the Parties to meet-and-confer regarding a proposed schedule and file a joint status report by February 3, 2021.  (*Id.* at 7-12.)

6.      Consistent with the Rule 56(d) Order, Defendants shared a proposed schedule with the Board on January 26, 2021.  On January 29, 2021, the Board sent Defendants a proposed schedule.  Defendants and the Board met and conferred telephonically on January 29, 2021.  Defendants sent the Board a proposed compromise on January 30, 2021.  On February 1, 2021 the Board rejected Defendants' compromise proposal and sent Defendants a new proposal.

7.      The Parties did not reach agreement, and accordingly, set forth their respective proposals below.

## III.      THE COURT SHOULD ADOPT DEFENDANTS' PROPOSED SCHEDULE.

8.      Defendants' proposal is set forth in the proposed Order attached hereto as Exhibit A.  (The Board's proposal is Exhibit B.)  The primary areas of disagreement are shown in the comparison table below.  There are four main issues: (1) the time to allow for discovery (which primarily turns on the time needed for document discovery), (2) whether the Court should enter orders *ab initio* categorically precluding Defendants from serving follow-up or third-party

---

No. 80; *Declaration of Casey J. Servais Pursuant to Fed. R. Civ. P. 56(d) in Support of Defendants' Opposition to Debtor's Rule 7056 Motion for Partial Summary Judgment*, Adv. Proc. No. 20-00005, ECF No. 97.)

document requests, or any interrogatories or requests for admissions, after Monday (the "*Ab Initio Categorical Restrictions*"), (3) whether the Court should strictly limit depositions at the outset (a request on which the Board has not met-and-conferred with Defendants), and (4) whether the Court should overturn Judge Swain's Rule 56(d) Order directing the Parties to meet-and-confer about supplemental summary judgment briefing once discovery is completed.  Defendants' positions on these issues are explained below.

| Event | Defendants' Proposal | Board's Proposal |
|---|---|---|
| **Initial Document Requests Served on the Government** | **February 8, 2021** | **February 8, 2021** |
| **Deadline for Third-Party Document Requests** | (Must be noticed sufficiently in advance to obtain the documents prior to the completion deadline.) | **February 8, 2021** |
| **Deadline for Serving Interrogatories and Requests for Admission** | (Must be noticed sufficiently in advance to obtain responses prior to completion deadline.) | **February 8, 2021** |
| **Deadline for Serving Rule 30(b)(6) Deposition Notices on the Government** | **March 31, 2021** | **March 15, 2021** |
| **Deadline for Serving Deposition Notices on Third Parties/Fact Witness Depositions** | (Must be noticed sufficiently in advance to conclude depositions prior to completion deadline.) | **March 15, 2021** |
| **Completion of the Government's Document Production** | **July 2, 2021** (144 days for document discovery) | **April 14, 2021** (65 days for document discovery) |
| **Deadline for Completion of Depositions/All Fact Discovery** | **August 3, 2021** (32 days for deposition discovery) | **May 7, 2021** (23 days for deposition discovery) |
| **Subsequent Briefing** | Parties should comply with Judge Swain's Rule 56(d) Order, which directed the parties to meet-and-confer and file a proposal seven days after discovery ends | Court should impose a briefing schedule now, without any meet-and-confer among the Parties |

     **A.**     **Defendants' Proposal for a Discovery Period of Six Months Strikes an
Appropriate Balance Between the Parties' Legitimate Need for Discovery
and the Need to Move Forward as Quickly as Possible.**

9.     Defendants share the Board's desire to move forward with the Adversary
Proceedings as quickly and efficiently as possible.  But the Board's proposal—to sharply limit the
time for discovery, particularly document discovery—will not accomplish that goal.  It will only
result in further delay, when the factual record hastily compiled proves insufficient to enable a
substantive resolution of the Summary Judgment Motions.

10.     Defendants' proposal is a reasonable effort to balance the competing concerns of
speed with Judge Swain's recognition that substantive discovery is needed to resolve the issues
before the Court.  As shown in the summary table above, the main dispute between the Parties is
over how much time to allow for discovery, particularly document discovery (the difference in the
amount of time the Parties would allocate to depositions is relatively small, with just over a week
difference in the proposals).

11.     Defendants' proposal for 144 days of document discovery is based on historical
facts about how long discovery has taken in these Title III cases and the range of substantive issues
Judge Swain has ordered the Parties to address.  The Parties previously needed approximately 75
days for limited document discovery in the lift-stay proceedings (not counting the additional time
for a subsequent deposition).  Defendants believe that, at a minimum, the Parties will require at
least double that time here, based on several considerations:

12.     *First*, the COVID-19 pandemic has significantly affected the Commonwealth's
ability to address discovery requests in a timely fashion.  AAFAF has advised Defendants
repeatedly in the context of other discovery workstreams that it is unable to commit to specific
timeframes for responding to document and other discovery requests in light of the effect the

- 5 -

pandemic is having on Commonwealth employees.[4]  Defendants are sympathetic to the challenges

AAFAF is facing, but those challenges necessarily must be considered in setting a realistic

discovery schedule.  New, more virulent, and more contagious variants of COVID-19 threaten to

prolong the pandemic—and the Court and Parties must assume that Commonwealth employees

and the Parties' counsel will continue to be subject to restrictions during this discovery period that

will extend the amount of time needed to complete the process, as compared to the time needed

for lift-stay document discovery (the vast majority of which was completed before any restrictions

existed in the United States).

13.    The Board disputes this point, but tellingly, AAFAF is not a party to this litigation

or signatory to the status report.  Ultimately, the burden of discovery will fall primarily on the

Commonwealth and AAFAF, not the Board.  The Court should give due consideration to the reality

that AAFAF has told Defendants repeatedly that the pandemic is slowing its ability to respond to

discovery.

14.    *Second*, discovery will take longer this time because limited lift-stay discovery

addressed only the "low-hanging fruit"—and Judge Swain found that factual record inadequate,

directing a more comprehensive approach on certain key issues this time.  For instance, in

connection with lift-stay discovery, Defendants were limited to obtaining "exemplars" of

transmittal information and basic information about the structure of the flow of funds.  (*See Mar.

4, 2020 Omnibus Hr'g. Tr.* at 241:17-24, 245:6-11 (ECF No. 12181); *Order* at 3-4 (ECF 12080).)

Judge Swain made explicit in the Rule 56(d) Order that exemplars are insufficient in this posture

---

[4] (*See*, *e.g.*, Ex. C, AAFAF Dec. 4, 2020, Ltr. at 2 ("AAFAF is continuing to work diligently with multiple
agencies to locate the information requested.  However, given the worsening COVID-19 pandemic and the
need to quarantine employees exposed to the virus, as well as employees taking vacation time before year
end, AAFAF cannot commit to a specific date by which it will complete its collection or production of
information regarding the outstanding assets.").)

where the Court must resolve the case on the merits. Judge Swain directed discovery to include "[a] *comprehensive* set of transmittal information," (Rule 56(d) Order at 8 (emphasis added)), and "*[a]ll* documents governing the flow" of funds, (*id.* at 7, 9, 11 (emphasis added).) Defendants are mindful of the Court's directive that discovery must be efficient and targeted—but Judge Swain's instruction that the Parties must complete a "comprehensive" exchange on critical topics necessarily will require more time than the approach the Parties followed previously of relying on a few easy-to-locate exemplar documents.

15. The Board disputes this, arguing that "all responsive documents" on many topics "were previously produced to Defendants in the context of lift stay discovery." Judge Swain's Rule 56(d) Order found otherwise. In the voluminous summary judgment briefing, the Board made the exact same argument—that Defendants already have everything they need on each of these topics[5]—and Judge Swain rejected it. That the Board recycles arguments considered and rejected by the Court simply reveals that the Board is unwilling to accept the Court's clear ruling that there is a real need for substantive discovery on these issues.

16. *Third*, the range of topics on which Judge Swain has directed the Parties to exchange discovery is broader than what was permitted in connection with lift-stay discovery. Judge Swain "limited" lift-stay discovery to certain specifically identified "factual representations" that the Board had made in a few paragraphs of its lift-stay briefs. Even in Judge Swain's Order permitting lift-stay discovery, Judge Swain simultaneously set a prompt deadline by which the lift-stay discovery needed to be completed and the motion heard, reflecting how narrow the discovery was to be. (ECF No. 11057 at 2.) Because discovery was limited to the

---

[5] (Adv. Proc. No. 20-00003, ECF No. 90 at ¶¶ 33-34; Adv. Proc. No. 20-00004, ECF No. 85 at ¶¶ 30-31; Adv. Proc. No. 20-00005, ECF No. 104 at ¶¶ 35-36.)

"factual representations" the Board had made, the discovery was merely a matter of obtaining the underlying documents on which the Board's assertions were based—with some limited additional discovery allowing Defendants to test the completeness of the Board's representations.

17.    Here, by contrast, Judge Swain has accepted Defendants' arguments that discovery is needed into topics that the Board has always maintained are irrelevant—for instance, "the nature and location of the Infrastructure Fund and the restrictions placed upon moneys therein."  (Rule 56(d) Order at 8.)  For that reason, the discovery process now requires discovery into several factual issues that were not addressed in the lift-stay context at all—a factor the Board never addresses.  There is no way for Defendants to know which depositions to seek or what third-party discovery will be needed, on topics on which discovery is now being provided for the very first time.

18.    There is also no indication that the Board or AAFAF have already collected or reviewed documents on all of the subjects Judge Swain has identified, and in the comprehensive manner she has directed.  Obtaining documents on these issues therefore will require considerably more time than the lift-stay documents did.

19.    Discovery into some of these issues is also likely to be particularly time-consuming because AAFAF has indicated that some of the documents cannot be accessed easily.  AAFAF previously declined to produce general ledger records—among the critical documents relevant to the nature and location of Infrastructure Fund and the flow of funds for HTA excise taxes— because producing the records would "require manual transcription to prepare a shareable file." (*See* Ex. D, AAFAF Apr. 28, 2020, Ltr. at 3.)  Defendants and AAFAF will need time to work together to determine how these and other records can be efficiently accessed.  Given the pandemic-related limitations on in-person work, obvious workarounds that might exist in normal

times (like allowing Defendants an opportunity to inspect the records in person) might not be feasible now.  Given that these records are important to the topics on which Judge Swain has directed the Government to provide "comprehensive" discovery, these issues necessarily will require time for the Parties to work through.

20.     Many of the issues that Judge Swain identified also could require third-party discovery that simply cannot be completed in a month or two, as the Board proposes.  For example, addressing some of the issues Judge Swain has flagged may require serving requests on advisors or other entities involved in negotiating these bond deals.  Third parties will need sufficient time to respond, and discovery from financial institutions in particular will require additional discussions given the numerous legal requirements such institutions must consider before providing any customer records.

21.     Given the foregoing factors, Defendants candidly believe that their proposal is as compressed as it possibly can be within the parameters Judge Swain has set.  Even completing discovery in this timeframe will require significant cooperation from all parties.

22.     The Board argues that a shorter time for discovery should be allowed to accommodate a proposed confirmation schedule (which the Board has not even submitted to the Court, let alone obtained approval of).  But the Board's suggestion that the revenue bond schedule must be modified to fit within the confirmation schedule is backwards:  As the Board has acknowledged, the Court must substantively resolve issues concerning the revenue bonds *before* confirmation can proceed.  Fairness requires that Defendants' rights to vigorously defend their property interests cannot be truncated for the Debtor's convenience—certainly not where, as here, the need for discovery at this time came about because of the Board's insistence on proceeding with the Summary Judgment Motions before any discovery in the Adversary Proceedings (over

Defendants' objection and notwithstanding that the Adversary Proceedings involved factual issues beyond those at issue in the lift-stay motions[6]). Having made a strategic decision to delay the start of discovery in the Adversary Proceedings, the Board cannot now trample Defendants' procedural rights on the theory that greater speed suits its interests now. The confirmation schedule the Court sets simply will need to take into account the time the Court will need to resolve these issues.

23. In any case, short-circuiting the discovery process, as the Board proposes, will not get to confirmation any faster; it will only delay a substantive resolution. If the record again proves inadequate to withstand a Rule 56(d) opposition, or leaves evidentiary gaps that show disputed issues of fact to be resolved at a hearing, a shortened discovery schedule will be counterproductive. Rather than go down a path that will result in more delay, the Parties should undertake "limited, targeted, proportional, and efficient" discovery, as Judge Swain properly directed. (Rule 56(d) Order at 6.)

### B. The Various *Ab Initio* Categorical Prohibitions the Board Requests Should Not Be Adopted.

24. The *Ab Initio* Categorical Prohibitions included in the Board's proposal would do nothing to make the discovery process more efficient or faster. The determinant of the amount of time discovery takes is the deadline the Court sets for discovery to be completed. Within that time, the requesting party ordinarily has flexibility to determine the sequence of specific requests. The Board asks the Court to take the unusual step of requiring Defendants to serve *all* written discovery requests up front based on purported concerns that allowing Defendants the normal flexibility afforded to any litigant will result in massive delay. There is no reason that would be the case. A requesting party that is dilatory and waits until the last minute to make requests that could have

---

[6] (*See Objection of Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Ambac Assurance Corporation and Financial Guaranty Insurances Company to Amended Report and Recommendation of the Mediation Team* (ECF No. 11493).)

been served up front simply will not obtain the discovery, because the deadline will pass and discovery will close. For that reason, layering in additional restrictions will not expedite discovery; it simply will make the discovery process more inefficient and difficult.

25. **Requirement to Serve *All* Document Requests and Written Discovery Next Week, Including Third-Party Requests—and Prohibition on Targeted Follow-Up Requests.** The Board asks that Defendants be required to request by Monday "all documents and written discovery"—including documents needed from third parties, and including (by the reference to "written discovery") interrogatories and requests for admission. By contrast, Defendants propose to serve substantially all of their document requests on the Government by Monday, as the Board proposes. But Defendants would also propose that: (i) Defendants be allowed to serve document requests on third parties later in the discovery period (once the Parties have a better sense of what documents they can obtain from the Government), (ii) Defendants be allowed to serve targeted follow-up documents requests on the Government, if that becomes necessary and appropriate based on the productions made, and (iii) Defendants be allowed to serve interrogatories or requests for admission at the end of the discovery period (when such tools are traditionally more useful), rather than at the beginning.

26. Allowing third-party requests to be served later makes good sense. During lift-stay discovery, this Court specifically noted that it made sense to seek documents from AAFAF in the first instance, so that AAFAF can obtain documents from banks. (*See Mar. 4, 2020 Omnibus Hr'g. Tr.* at 251:14-252:6 (ECF No. 12181).) This approach is more efficient, because it allows the parties to limit the burden on nonparties and it avoids unnecessary duplication.

27. The Board's proposal to require third-party document requests up front, by contrast, makes little sense and would be a recipe for inefficiency. Defendants are aware of dozens of

institutions and individuals that conceivably *might* have some relevant information. Defendants anticipate that the meet-and-confer process with AAFAF will enable Defendants to obtain most of the needed information from the Commonwealth and obviate any need to serve many of the third parties Defendants have identified. But under the Board's approach, Defendants would have no choice but to serve potentially dozens of subpoenas at the outset of discovery—to avoid forfeiting their right to obtain documents from those entities if needed. It is unclear why the Board is asking for this, as it plainly serves no one.[7]

28.     The Board also offers no good reason why Defendants should be categorically precluded, at the outset, from ever serving targeted follow-up document requests later in the discovery period. Defendants' proposal includes a deadline for initial requests (the same as the Board's), and Defendants represent that they intend to act in good faith and include *all* of their anticipated document requests to AAFAF and the Board in this initial set. But in some limited cases, discovery can be iterative. If documents produced reveal an area where additional follow-up is needed, there is no reason the Court should decide now that Defendants are categorically precluded from ever serving even one targeted follow-up request. Nor is there any reason to require Defendants to make a showing of "good cause" to the Court before even being permitted to serve a narrow request (which might not be disputed at all). Defendants should be permitted to serve their requests. If any follow-up request is served (which may or not occur) and the Board

---

[7] For this reason, Defendants' proposal defines "Government" (the entities which document requests should be served up front) to mean the Commonwealth and any of its instrumentalities (including AAFAF)—excluding employees from the definition. No employees are parties to this litigation, and it is unclear at this time whether there will be any cause to serve document requests on any employees. But in the event that the Parties learn, for example, that a particular former employee had retained the only copies of certain relevant documents at the end of their employment, a request directed to the former employee necessarily would be narrowly targeted and limited, such that it could be resolved quickly. The Parties can complete discovery on time, even if some narrow and targeted requests are not served at the outset.

disputes whether that specific follow-up request is timely or appropriate, the Parties can raise the dispute when it arises.

29.     Lastly, the Board's proposal to require Defendants to serve all *written* discovery requests up front (including interrogatories and requests for admissions) makes no sense—and the Board's report does not even attempt to justify it.  Ordinarily, interrogatories and requests for admission are served at the close of the discovery period, so as to focus on any areas where the Parties might agree based on deposition testimony (requests for admissions) or to elucidate any areas where a party's claims and contentions remain unclear (interrogatories).  Indeed, some courts *require* that interrogatories be served only at the conclusion of discovery, recognizing that it is often inefficient and wasteful to serve them up front.  *See, e.g.*, S.D.N.Y. Local Civ. R. 33.3. Requiring the Defendants to serve requests of this nature up front appears to be little more than a "poison pill" designed to prevent the effective use of these discovery devices—inappropriately undermining the discovery that Judge Swain authorized Defendants to take.

30.     **Requirement to Serve Deposition Notices Well Before Document Discovery Is Completed.**  The Board's proposal to require Defendants to serve *all* deposition notices early in the process—before most documents will be produced—is inefficient for the same reasons.  In an accommodation to AAFAF, Defendants have agreed to serve Rule 30(b)(6) deposition topics on the Government early on, so the Parties will have ample time to meet-and-confer about the scope of Rule 30(b)(6) depositions involving the Government.

31.     But there is no reason to impose a similar deadline on third-party requests to financial institutions or other non-government entities (which may or may not be needed) or to deposition notices addressed to natural persons—and the Board offers none.  Defendants intend to review documents to make the deposition process more efficient, narrowing the issues and

- 13 -

determining what depositions are truly needed.  Defendants cannot identify the specific fact witnesses they need to depose before documents have been produced.  Nor does the Board need third-party notices or notices regarding natural person depositions early in the process.  Such depositions ordinarily are noticed between two and three weeks prior to the deposition; given that there is no requirement that a fact witness prepare in any particular way, there is no reason these depositions need to be finally decided upon so far in advance.[8]

### C.   The Board Has Not Met-and-Conferred with Defendants Regarding the Number of Depositions, and Imposing Strict Limits at This Stage Is Premature and Unwarranted.

32.     The Board's initial proposal to Defendants (the only one the Parties discussed at a meet-and-confer) did not include any numerical limits on depositions.  Just two days before this status report was due, the Board sent a revised proposal that for the first time included strict limits on depositions.  Given that the Board has not even met-and-conferred with Defendants on this proposal, the Court should decline to consider it.

33.     That is particularly true since the number of depositions is not material to the amount of time discovery will take—the only issue the Court needs to resolve now.  The Parties' proposals for deposition time vary only slightly.  Given that Judge Swain's Rule 56(d) Order expressly permitted Defendants to seek "depositions" (Rule 56(d) Order at 6), there is no cause to impose strict limits up front that are not necessary to the schedule.

---

[8] In its report below, the Board also argues over several minor deadlines, like the specific timing of status reports and conferences.  Defendants proposed a bit more time for the first status report so the parties could narrow the range of disputes to the greatest extent possible.  The exact timing of such conferences, of course, depends on the overall amount of time the Court provides for discovery.  The Parties appear to agree on the basic principle that there should be a report and conference some time after the Government serves its responses and objections to document requests (on February 22), and again before the Government's document production ends and depositions commence.

34.     The Board's proposal is premature for the additional reason that Defendants have

had no opportunity to discuss with AAFAF (or any other entity that might be asked to produce

documents) what information can be obtained through documents.  Given that some of the topics

in Judge Swain's order are issues on which the Parties are obtaining discovery now for the first

time, Defendants have no way to know at this stage what documents might be available and which

specific witnesses might need to be deposed.  In the event that the Parties learn during meet-and-

confers that there are few or no documents relevant to a given point that Judge Swain has identified,

the Parties may need to undertake more depositions on the relevant topic (or ascertain through

depositions whether there are documents that the Government has not identified).  On the other

hand, it is also possible that the documentary evidence may fully address an issue, allowing the

Parties to agree to fewer depositions.

35.     In either case, there is no need to decide that issue now.  Both sides are asking the

Court to schedule a status conferences before the time for depositions.  In the event the Parties

cannot agree amongst themselves about depositions, any disputes can be resolved then—with the

benefit of a concrete factual record on what documents are available, and specific issues on which

the Parties dispute the need for depositions.

**D.     The Court Should Not Overturn Judge Swain's Order Regarding Future
Briefing.**

36.     The Rule 56(d) Order stated explicitly that the Parties should meet and confer on a

schedule for supplemental summary judgment briefing within seven days of the completion of fact

discovery.  (Rule 56(d) Order at 12.)  That makes good sense, as the Parties need to know what

discovery unearths before they can determine how much additional briefing they need, the form

the submissions should take, and the time to allow for it.  Whether previous submissions on the

Summary Judgment Motions need to be revised (as opposed to merely supplemented) will

- 15 -

necessarily depend upon what discovery reveals.  The Board did not meet-and-confer with Defendants regarding its request that the Court overturn Judge Swain's considered Order on this point, and it has offered no good reason for its request.

## IV.   DEFENDANTS' RESERVATION OF RIGHTS

37.   Defendants note that their proposed schedule for discovery into the limited topics the Court identified in the Rule 56(d) Order is without prejudice to Defendants' objections and contentions, including, without limitation, (i) Defendants' requests in their Rule 56(d) declarations for discovery into topics that were not addressed in the Rule 56(d) Order, and (ii) Defendants' objection to the stay of the Adversary Proceedings under the Final CMO.

38.   Under the Rule 56(d) Order, the Adversary Proceedings remain stayed except for limited discovery in the context of the eight sets of Counts that the Board raised in its Summary Judgment Motions.  Defendants continue to object that this procedure will not result in a prompt resolution of the Adversary Proceedings, because the Final CMO and Rule 56(d) Order (i) do not permit any discovery at this time on the 267 Counts the Board has asserted that were not subject to limited summary judgment motions, (ii) do not permit discovery into all of the issues needed to resolve even the eight sets of Counts raised in the limited Summary Judgment Motions, and (iii) do not permit Defendants to plead their counterclaims—or seek any discovery into them—let alone create a framework for a substantive resolution of those counterclaims.

39.   Without waiving or limiting those objections, Defendants will continue to proceed in good faith in accordance with the Court's directives and seek discovery within the scope that the Court articulated in the Rule 56(d) Order.  Defendants' proposed schedule is accordingly limited to the scope that the Court has allowed at this time.

## GOVERNMENT'S POSITION

## I.   THE OVERSIGHT BOARD'S PROPOSED DISCOVERY SCHEDULE AND RESPONSE TO DEFENDANTS' PROPOSAL

40.     The Oversight Board and Defendants disagree regarding the amount of time necessary and appropriate for Defendants to conduct and complete the limited discovery authorized by the Court in the January 20, 2021 *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, [ECF No. 15656 in Case No. 17 BK 3283-LTS] (the "Limited Discovery Order").  In light of the limited nature of the discovery authorized and the prior satisfaction by the Commonwealth of substantial portions of such discovery, the Oversight Board proposes a three-month discovery period beginning February 8, 2021 and ending May 7, 2021—which Defendants admit is approximately the same amount of time the Court afforded Defendants to conduct much of the same discovery in the context of their earlier motions for stay relief (the "Stay Relief Motions").[9]  Conversely, Defendants propose a discovery schedule twice as long—approximately *six months*—beginning February 8, 2021 and ending August 3, 2021.  But, Defendants' position is rooted in the false premise that discovery in this context is like it would be at the outset of a normal litigation.  Nothing could be further from the truth.  As explained in more detail below, the Oversight Board's proposed three-month discovery schedule is fair, equitable and appropriate, and should be adopted by the Court, for two overarching reasons.

---

[9] The Oversight Board's proposed schedule is set forth in the proposed order attached hereto as **Exhibit B**.

41.     _First_, the schedule proposed by the Oversight Board is consistent not only with the general principle that the Commonwealth's restructuring should proceed expeditiously, but also with the overall schedule in the Commonwealth's Title III case and the goal of having an amended plan of adjustment filed, and a confirmation hearing held in Summer 2021.[10]   The Oversight Board's proposed schedule affords Defendants' sufficient time to complete "limited, targeted, proportional, and efficient" discovery [11] without jeopardizing the timetable for the Commonwealth's emergence from Title III.  The proposed schedule includes two mandatory joint status reports and status conferences to address and resolve any issues or disputes that arise, and the Court is available if exigent circumstances arise that require immediate attention on other matters.

42.     By contrast, Defendants' proposed six-month discovery schedule would unnecessarily and unreasonably prolong the Commonwealth's Title III case and impede, if not threaten, a confirmation schedule, the Commonwealth's exit from Title III and the much-anticipated distributions to creditors, especially on-island general unsecured creditors.  Defendants ask this Court to allow them to leisurely serve discovery on the Government[12] and on Non-

---

[10] The Oversight Board's proposed schedule includes dates for supplemental briefing on the pending motions for partial summary judgment in Adversary Proceeding Nos. 20-003, 20-004, and 20-005 (the "Partial Summary Judgment Motions") after the conclusion of the limited authorized discovery.  This proposed briefing schedule is not, as Defendants claim, an effort by the Oversight Board to "overturn" the Limited Discovery Order.  To the contrary, the Oversight Board included a proposed briefing schedule to further facilitate the goal of a timely confirmation hearing and avoid a scenario in which, after the completion of limited discovery (on a date that will be set now by the Court), Defendants attempt to further delay the Court's decision on the Partial Summary Judgment Motions by proposing an unreasonably long briefing schedule.

[11] Limited Discovery Order at 6.

[12] As used herein by the Oversight Board, "Government" means (i) the Commonwealth, by and through the Oversight Board, and (ii) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"); (iii) any instrumentality of the Commonwealth; and (iv) any current or former officer, employee, consultant, advisor, or representative of the entities listed in (i) through

Government Third Parties whenever they choose for more than five months. Defendants attempt to justify their proposed six-month schedule by claiming they are planning for a worst case scenario in which the Government may not have the resources to locate and produce documents quickly, Non-Government Third Parties may be slow to respond, former employees may need to be tracked down and the ongoing Covid-19 pandemic may still create complications, among other "predicted" delays. And even then, Defendants make no promise that discovery can be completed in this bloated time frame. But, such "justifications" are nothing more than excuses and rationalizations for a proposed schedule that *ensures* delay. The schedule instead should begin from the premise that discovery will be "limited, targeted, proportional, and efficient,"—just as the Court directed—and will not impact the confirmation schedule. If, during the course of discovery, good cause arises to grant relief from the schedule for specific discovery, it can be addressed through the meet and confer process and, if necessary, Magistrate Judge Dein.

43. Defendants also attempt to justify their proposed six-month schedule by claiming they do not want to serve interrogatories (or apparently requests for admission, as if they will have relevance here) or conduct Government depositions until after they review documents produced by the Government, and do not even want to serve subpoenas on Non-Government Third Parties until after they obtain discovery from the Government. Defendants, however, do not dispute they already know the discovery they want, Rule 30(b)(6) deposition topics or the identity of potential Non-Government Third Party witnesses. They identified many of them in their Rule 56(d) submissions. Rather, Defendants claim they should be allowed to conduct such discovery in the order and at the pace of their own choosing. Here, too, Defendants are simply making excuses to

---

(iii). "Non-Government Third Parties" refers to any person or entity other than the Government and Defendants.

rationalize a proposed schedule that will guarantee delay, and potentially hold the plan of adjustment schedule hostage to Defendants' whim.  That is no reasoned basis to have the schedule lengthened and the timing of the Commonwealth's exit from Title III delayed.  One can predictably expect that delays in propounding discovery will invariably lead to further extensions of the completion of discovery.  Based on discovery in the Stay Relief Motions, Defendants already know what documents the Government does and does not have regarding several of the issues.  There is no reason to delay or "draw out" over months the service of the limited additional discovery permitted by the Court.

44.   Defendants also unnecessarily bloat their proposed discovery schedule with an extra status report (not tethered to any status conference) and a deadline for the Government's production of documents to be "substantially complete" (an ambiguous term that invariably will result in dispute and delay).  Neither one of those items is necessary, much less directed at limited and proportional discovery.   Instead, they merely take time.

45.   *Second*, the schedule proposed by the Oversight Board affords Defendants more than enough time to complete the "limited, targeted, proportional, and efficient" discovery authorized in the Limited Discovery Order (at 6).  As this Court recognized in the Limited Discovery Order, Defendants already obtained discovery from the Government in the context of the Stay Relief Motions on many of the same issues on which the Court has recently authorized limited discovery, and, as the Court noted, discovery should "not duplicate the discovery conducted."  *Id*. at 6.  It is axiomatic that less, rather than more, time is needed to conduct and

complete the limited discovery here than the three months Defendants were allotted in the Stay Relief Motions.[13]

46.     Here again, Defendants' attempt to double what should be a three-month discovery schedule by building in additional time "just in case" problems arise and to allow Defendants to proceed at a leisurely pace.  Defendant's proposed schedule, and the justifications they offer, are the antithesis of efficiency.

47.     In their portion of this Joint Report, Defendants also insist on including a "reservation of rights" rehashing and reasserting "objections" to the stay on other portions of the Adversary Proceedings or other undefined litigation and the Court's prior denial of their request for even more discovery.  As described in more detail below, such a "reservation of rights" is beyond the scope of this Court's express direction to the parties to "propos[e] a schedule for the completion of the discovery authorized herein, including any proposed status conferences before Judge Dein." Limited Discovery Order at 12.  Moreover, the Court's March 10, 2020 *Final Case Management Order for Revenue Bonds* [ECF 12186] (the "Final CMO") expressly provides a process by which a party may seek leave to pursue further motion practice: "should any of the parties to the Revenue Bond Complaints (including intervenors) seek to file additional motion

---

[13] Defendants' argument that the schedule for conducting discovery should be longer than the approximately three-month discovery period for the Stay Relief Motions because the Limited Discovery Order permits discovery on more issues ignores the fact that the Government already produced its responsive documents on many of those issues in connection with the Stay Relief Motion.  Defendants essentially suggest they are starting over, or somehow are entitled to send out dozens of subpoenas, take countless depositions, and propound endless written discovery.  But that is the opposite of what the Court provided for in the Limited Discovery Order.  Indeed, Defendants are wrong that the Limited Discovery Order Limited Discovery Order deems "exemplars [of transfers] … insufficient" and calls for "a comprehensive set of transmittal information."  To the contrary, the Limited Discovery Order remains focused on the exemplars previously produced, allowing discovery of "a comprehensive set of transmittal information *for the exemplars*…." (emphasis added.) Defendants ignore that the Government has already produced all vouchers, transfer orders and transmittal letters that could be located.

practice that would directly or indirectly impact this schedule, or any future schedule to be determined by the parties in this action or the Court, such parties shall first seek leave of Court to file such motion." Final CMO at ¶ 5.

48.    For each of these reasons, the Oversight Board respectfully requests the Court adopt the Oversight Board's proposed discovery and briefing schedule, and reject Defendants' effort to use this status conference report as a back door method to procure other relief.

**The Oversight Board's Proposed Discovery And Briefing Schedule**

49.    The Oversight Board proposes the following schedule for the completion of limited discovery authorized in the Limited Discovery Order and the filing of supplemental briefs upon conclusion of discovery:

| | |
|---|---|
| Joint Status Report Regarding Schedule | February 3, 2021 |
| Deadline to serve all document and written discovery requests on Government and Non-Government Third Parties | February 8, 2021[14] |
| Deadline for the Parties to file a Joint Status Report (including raising of existing discovery disputes). | February 25, 2021 |
| First Status Conference (including hearing to resolve any existing discovery disputes) | March 11 or week of March 11, 2021 (*to be scheduled at the convenience of the Court*) |
| Deadline for Defendants to serve deposition notice(s) (including, but not limited to, 30(b)(6) deposition topics)[15] | March 15, 2021 |

---

[14] Responses and objections to any written discovery requests shall be due within fourteen (14) days of service of such requests.  Written discovery requests, and responses and objections thereto, may be served via e-mail.  Federal Rule of Civil Procedure 6(d) shall not apply to service of any papers by email during the pendency of discovery authorized under the Rule 56(d) Order.

[15] Defendants should be limited to taking two depositions per issuer (i.e., two each for CCDA, HTA and PRIFA), and if one deponent testifies for more than one issuer, the total number of depositions should be reduced accordingly.

| | |
|---|---|
| Completion of the Government's Document Production[16] | April 14, 2021 |
| Final Joint Status Report (parties to raise any remaining discovery disputes) | April 16, 2021 |
| Status Conference (*final*) (hearing to resolve any remaining discovery disputes) | April 23 or week of April 23, 2021 (*to be scheduled at the convenience of the Court* |
| Deadline for completion of all authorized limited discovery to the Government and Non-Government Third Parties | May 7, 2021 |
| Deadline for Defendants' supplemental briefs (20-page maximum in each adversary proceeding, confined to application of limited discovery to issues raised in Partial Summary Judgment Motions, and not raising new legal issues) | May 21, 2021 |
| Deadline for the Oversight Board's supplemental briefs (20-page maximum in each adversary proceeding, confined to responding to Defendants' supplemental briefs, application of limited discovery to issues raised in Partial Summary Judgment Motions, and not raising new legal issues) | June 4, 2021 |
| Supplemental hearing (if any) on Partial Summary Judgment Motions | *To be scheduled at the convenience of the Court* |

a.    <u>February 8, 2021 is an appropriate deadline for document and written discovery requests on the Government and subpoenas to Non-Government Third Parties for records; Defendants position on when discovery can be served will cause unnecessary delay.</u>

50.    February 8, 2021 is a reasonable and appropriate deadline for Defendants to serve

document and written discovery requests on the Government and subpoenas to Non-Government

Third Parties for records.  Defendants described the discovery they seek in their July 16, 2020 Rule

---

[16] The Government shall undertake best efforts to engage in a rolling production of responsive documents, if any, in an orderly manner and beginning as soon as practicable.

56(d) filings in opposition to the Partial Summary Judgment Motions.   Indeed, the Limited

Discovery Order devotes four (4) pages to the Court's careful and detailed description of the

document requests Defendants are authorized to serve—effectively drafting them for Defendants.

Limited Discovery Order at 7-11.   Certainly, nineteen days (i.e. from January 20, 2021 – February

8, 2021) is sufficient time for Defendants to "cut and paste" these detailed descriptions into formal

discovery requests and serve them.   Simpler still, Defendants can advise the Oversight Board that

their document requests are those expressly delineated in the Court's Limited Discovery Order at

pages 7-11.   To this end, the Oversight Board expressly reserves its right to object to any document

requests or other discovery outside of the Court's express limitations and descriptions, which are

quite comprehensive.   Every additional day beyond February 8, 2021 that Defendants dawdle and

make excuses for not conducting discovery simply pushes every other deadline, and encroaches

on the goal of resolving the pending motions and getting to confirmation.   Defendants' desire to

leisurely serve discovery over a five-month period only promotes inefficiency and the opportunity

for further delay.

        51.     Defendants' alternative proposed schedule will inevitably cause delay, not promote

efficiency.   Their proposed February 8 deadline to serve "initial document requests" is a perfect

example.   To characterize it as a "deadline" ignores reality.   Defendants' proposal gives them an

unfettered right to serve innumerable additional document requests—potentially (and improperly)

beyond those requests already drafted for them by the Court (and certainly well beyond their self-

described "deadline")—so long as they serve such requests "sufficiently in advance" of a discovery

cutoff.   Such a wide-open, unregulated procedure is the antitheses of the limited, targeted, and

efficient discovery ordered by the Court, and by definition will create a rush of discovery at the

end and predictable pleas for more time and delay.   Defendants have known of the discovery they

want to serve since they filed their 56(d) motions, if not months before, and have known the exact

language of the document requests they are permitted to serve since the date the Court issued the

Limited Discovery Order.  Those requests should be served now, and to the extent they exceed the

limitations imposed by the Court, the Oversight Board reserves the right to object.  If unforeseen

circumstances give rise to the need for additional—targeted—discovery, the Oversight Board

respectfully suggests Defendants should be required to show cause for the additional discovery,

following a meet and confer process, and if necessary, Court intervention.

52.    Nor have Defendants shown there is any reason to delay the pursuit of third party

discovery.  Third party discovery could be the most time consuming.  Defendants claim to be

aware of "dozens" of candidates for third party discovery.  Such a scorched earth strategy is

squarely at odds with the discovery permitted by this Court, but Defendants' representation

concerning the number of third parties at issue underscores the point.  If Defendants truly have

third party discovery they believe is of the limited, targeted and efficient nature authorized by the

Court, they should serve it now.   If they are concerned that production by the Government may

suffice, there is still no need to delay; Defendants can work with these third parties to tailor

whatever needs to be done.  However, the sooner that gets started, the better.

b.    February 25, 2021 is an appropriate deadline for the Parties to file a joint status report (including raising of existing discovery disputes), and March 11, 2021 is an appropriate initial status conference date to address those disputes; Defendants' alternative will contribute to delay.

53.    February 25, 2021 is an appropriate date for the Parties to file their first joint status

report raising any disputes with respect to document and written discovery requests served by

Defendants.  As noted above: (i) under the Oversight Board's proposed discovery schedule,

responses and objections shall be due within fourteen (14) days of service; and (ii) the Government

shall undertake best efforts to engage in a rolling production of responsive documents, if any, in

an orderly manner and beginning as soon as practicable.  While the Parties will work in good faith to resolve any discovery issues without Magistrate Judge Dein's assistance, the Oversight Board's proposed schedule provides for the early resolution of disputed issues that will inevitably lead to a more efficient, focused process for the discovery that remains.  There is no reason to delay the filing of a joint status report by the additional week suggested by Defendants with their proposed March 4 date.  The scope of the discovery authorized by this Court is both clear and limited. Certainly, the Parties should be expected to be able to prepare an initial status report that takes into account the contours of the Court's ruling a full five weeks after its entry.

c.  <u>March 15, 2021 is an appropriate deadline for Defendants to serve deposition notices, and the proposed deposition limits are reasonable; again, Defendants' schedule will cause unnecessary delay.</u>

54.  March 15, 2021 is an appropriate deadline for Defendants to serve deposition notices (or subpoenas), including, but not limited to, 30(b)(6) deposition topics associated therewith.

55.  The Oversight Board respectfully submits that, having (i) conducted discovery in connection with the Stay Relief Motions, (ii) opposed the Partial Summary Judgment Motions and (iii) filed their Rule 56(d) requests for discovery, Defendants undoubtedly already know most, if not all, of the topics on which they want to obtain Rule 30(b)(6) discovery and the appropriate witnesses.  And, the Court's Limited Discovery Order provides even more detailed guidance on these issues.  In any event, by no later than March 15, 2021, Defendants will have sufficient information to identify them.  After all, as noted, Defendants obtained a significant amount of discovery in the context of the Stay Relief Motions.  Responses to written discovery served by Defendants here on February 8, 2021 will be due on February 22, 2021.  And, the Government will produce responsive documents on a rolling basis in an orderly manner and beginning as soon as practicable.

56.    For the same reasons, Defendants know the identity of most, if not all, Non-Government Third Parties and the entirety of the Government's responsive documents regarding several of the issues on which the Court has authorized discovery here.  Defendants certainly are able to serve subpoenas and deposition notices on Non-Government Third Parties by March 15, 2021—40 days from now.  Defendants should not be permitted to hold the determination of the Partial Summary Judgment Motions and the plan confirmation process hostage for an extra three months simply because they prefer to take a more leisurely approach to discovery under the misguided notion that it is more efficient to do so.  It is the opposite of that.

57.    Defendants' proposed deposition sequencing is another example of a schedule destined to fail.  They propose to delay the service of 30(b)(6) notices for a full two additional weeks (March 31, 2021) even though the topics of discovery—and thus the topics for any 30(b)(6) notice—have been known since the Court entered the Limited Discovery Order, and truthfully, long before that.  Those notices could be served now.  There is no legitimate reason they cannot be served within the next 6 weeks.

58.    Worse still, Defendants propose no limitations at all in terms of the timing and sequence of third party depositions, so long as notices are served in what Defendants describe as "sufficiently in advance."  Such a (non)schedule ignores the overarching goal of a limited and efficient discovery process.  By requiring deposition notices to be served by March 15, the Parties will have sufficient time to coordinate the depositions and address any objections related thereto prior to the close of discovery.  Real deadlines achieve real efficiencies and—most importantly— a schedule designed to hold true.  Without a requirement that Defendants notice depositions by a date certain, any discovery schedule is merely aspirational, and certainly not intended to achieve limited, efficient discovery.

59.     Moreover, the number of depositions allowed should be limited to two depositions per bond issuer (i.e. CCDA, HTA and PRIFA).  If one witness testifies with regard to multiple issuers, the total number of depositions should be reduced accordingly.  This limitation on the number of depositions is reasonable and appropriate given the small number of relevant discovery issues identified by the Court in the Limited Discovery Order, and the fact Defendants already deposed one witness (Timothy A. Ahlberg) on several of these same issues with respect to all three issuers.

60.     Nothing about the Court's Limited Discovery Order suggests it was intended to provide for a free-wheeling, boundless discovery process.  The Oversight Board's proposal that the Court impose reasonable limitations on the number of depositions is in harmony with the Court's directive that the parties engage in targeted, limited discovery.  Defendants' only real response sidesteps the issue altogether and suggests they simply need more time to consider the Oversight Board's proposal.  However, Defendants were invited to consider and respond to that proposal and engage in further discussion.[17]  Instead, they refused to further engage—at all—and simply waited until literally 11:59 p.m. last night to send their unilateral proposed position.  As is clear, Defendants object to the deposition limitation; they simply have no substantive response as to why that is so.  It should be noted that Defendants represent they share the Oversight Board's desire to move these proceedings forward "as quickly and efficiently as possible."   Reasonable deposition limitations achieve that goal, and if Court intervention is necessary, Defendants surely know how to avail themselves of that remedy.  Defendants' refusal to even engage on the subject,

---

[17] The Oversight Board raised the issue in its February 1, 2021 response to Defendants' January 30, 2021 counter-proposal.

much less agree to reasonable limitations, is squarely at odds with what purports to be a shared goal of a timely conclusion.

d.    April 14, 2021 is an appropriate deadline for completion of the Government's document production.

61.    As with the discovery related to the Stay Relief Motions, the burden of locating, collecting and producing responsive documents will be borne by the Commonwealth, its instrumentalities and AAFAF.  The Oversight Board believes all responsive documents related to many of the issues identified in the Limited Discovery Order (or at least what could be located through diligent efforts) were previously produced to Defendants in the context of lift stay discovery; under the Limited Discovery Order, such documents need not be produced to Defendants again—and the Limited Discovery Order provides there be no duplication.   Based on a February 8, 2021 deadline for Defendants to serve written discovery requests—and the understanding there will be a rolling production-- the Oversight Board believes April 14, 2021 is an appropriate deadline (in the absence of an emergency situation, which can be addressed if it arises) for the completion of the document production by the Government.  This is particularly true when all parties recognize the issues presented by the Partial Summary Judgment Motions need to be resolved as soon as possible, and the Court (through its recent Orders) made clear that confirmation proceedings should not be further unnecessarily delayed.

62.    Contrary to Defendants' suggestion, the pandemic does not serve as a justification to extend the Government's deadline to produce documents by an additional ten (10) weeks. Indeed, Defendants ignore that much of the lift stay discovery was gathered and produced in the height of pandemic-related shutdowns.  The fact that such discovery was already produced should lessen the burden for the Government, not increase it.  Moreover, the complete shutdowns that punctuated the early days of the pandemic and caused inefficiencies are gone (or certainly less

than they were).  With history as a guide, the process should be more efficient now, not less.  In

the end, all paths lead to the same place - in order to complete discovery in a timely fashion,

Defendants must be required to start their limited, targeted discovery now.   And, contrary to

Defendants' suggestion, the Government is already undertaking efforts to comport with the terms

of the Limited Discovery Order.  No one is waiting for the service of document requests for which

the subjects have been outlined by the Court.

e.   April 16, 2021 is an appropriate deadline for the Parties to file a final joint status report
     (including raising of existing discovery disputes), and April 23, 2021 is an appropriate final
     status conference date to resolve those disputes.

        63.    By April 16, 2021, the Government will have responded to all written discovery

served by, and completed the production of documents to, Defendants.  Defendants presumably

will also have completed, or substantially completed, depositions of Government witnesses and

Non-Government Third Party discovery.   The Oversight Board submits that, in light of all

considerations, April 16, 2021 is an appropriate date for the Parties to submit a final joint status

report raising any additional discovery disputes remaining so such disputes may be addressed and

resolved at a final status conference on or about April 23, 2021.

f.   May 7, 2021 is an appropriate deadline for the completion of all authorized limited
     discovery; Defendants' request to go months longer creates unnecessary delay.

        64.    For the reasons discussed above, the Oversight Board submits that May 7, 2021 is

a fair, reasonable and appropriate deadline for the completion of all authorized limited discovery

and, conversely, the August 3, 3021 deadline proposed by Defendants is patently unreasonable

and inappropriate.

        65.    As noted, the three-month discovery period proposed by the Oversight Board—

February 8, 2021 to and including May 7, 2021—is approximately the same amount of time this

Court afforded Defendants to conduct much of the same discovery in the context of the Stay Relief

Motions.    Yet, Defendants inexplicably propose a discovery schedule that is twice as long—approximately *six months*—ending on August 3, 2021. As previously detailed, the schedule proposed by the Oversight Board is consistent with the general principle the Commonwealth's restructuring should proceed expeditiously, and the goal of having an amended plan of adjustment filed and a confirmation hearing held in late Summer to early Fall 2021.  Defendants' proposed six-month discovery schedule would render this nearly impossible, and will unreasonably prolong the Commonwealth's Title III case.

66.    Moreover, the schedule proposed by the Oversight Board affords Defendants ample time to complete the "limited, targeted, proportional, and efficient" discovery authorized in the Limited Discovery Order (at 6).  Defendants already obtained discovery from the Government in the context of the Stay Relief Motions on many of the same issues on which the Court authorized limited discovery here, and the Court stated that discovery here "will not duplicate the discovery conducted."  *Id.* at 6.  It cannot be disputed in good faith that *less*, rather than more, time is needed to conduct and complete the limited discovery here than the three months Defendants were allotted for discovery in the Stay Relief Motions.

67.    Defendants' support for a longer schedule is premised on a misrepresentation of the Limited Discovery Order.  Incredibly, and by way of example only, Defendants represent the Court directed the parties to provide "comprehensive" discovery, yet the actual ruling was the polar opposite (providing for "limited, targeted, proportional, and efficient discovery").    Indeed, Defendants contend the Court "made explicit" that exemplars of transmittal documents were inadequate and that they were somehow entitled to "comprehensive" transmittal information.  In truth, the Court merely authorized the production of comprehensive transmittal information "*for the exemplars* of transfers and/or deposits . . ."  (emphasis added).  The Court's Limited Discovery

- 31 -

Order also highlights the distinction between the requirement to produce documents "governing" the flow of funds (a carefully limited set of documents) versus documents that simply "concern" the flow of funds.[18]

68.    As further purported justification for their expansive discovery schedule, Defendants reveal that they "may" seek to serve third party discovery on advisors or other entities merely involved in negotiating the various bond deals.  It is fair to ask how such exploratory discovery could serve any purpose given that Defendants have not argued an ambiguity in the governing documents.  But the key point is worth repeating:  if Defendants believe they need such discovery, they should serve it now.

g.    May 21, 2021 and June 4, 2021 are appropriate deadlines for the Parties to file their supplemental briefs.

69.    The Oversight Board recognizes the Limited Discovery Order states the Parties should meet and confer within seven (7) days after the completion of discovery, and propose a supplemental summary judgment briefing schedule with agreed page limitations.  However, rather than postpone that meet and confer process, the Oversight Board respectfully submits that, to facilitate an efficient determination of the Partial Summary Judgment Motions, the Court set the supplemental briefing schedule now.

70.    Because Defendants requested the additional discovery through a Rule 56(d) request, the Oversight Board proposes Defendants "go first" and file supplemental briefs of no more than 20 pages in each action on May 21, 2021, and the Oversight Board file a supplemental brief of no more than 20 pages in each action on June 4, 2021.  The Oversight Board further

---

[18] The Limited Discovery Order provides only that Defendants had met their burden to be entitled to the limited, targeted discovery referenced therein.  It most certainly did not grant wholesale, unfettered discovery, nor did the Court's ruling conclude that such discovery would necessarily have any impact on the pending motions.

submits the supplemental briefs should be limited to the application of new documents, information and testimony obtained to the issues previously briefed by the Parties in the Partial Summary Judgment Motions.   The supplemental briefs should not be used to raise new legal arguments or enhance or improve existing ones. That was not the purpose of the Limited Discovery Order, and this extension of the proceeding should not be used to that end.

71.     Defendants' characterization of the Oversight Board's suggestion that the Court impose a supplemental briefing schedule as an effort to "overturn" the Court's order is misplaced. The Oversight Board merely suggests that agreeing to a supplemental briefing schedule now— concurrent with the imposition of a discovery schedule—creates efficiencies.  Indeed, it is not at all dissimilar to a normal scheduling order entered by any federal court with respect to summary judgment motion practice.

h.   <u>This Joint Report is not the correct procedural vehicle for Defendants to assert their objections to the litigation stay imposed by the Court in the Final CMO.</u>

72.     As discussed above, Defendants' reassertion of their objections to the litigation has no place in this submission.  It is beyond the scope of this Court's express direction to the parties to "propos[e] a schedule for the completion of the discovery authorized herein, including any proposed status conferences before Judge Dein" (Limited Discovery Order at 12), and disregards the Final CMO's direction that any party seeking to file "additional motion practice that would directly or indirectly impact the schedule, or any future schedule to be determined by the parties in this action or the Court, such parties shall first seek leave of Court to file such motion."  Final CMO at ¶ 5.  If Defendants pursue leave in compliance with the Final CMO, the Oversight Board will respond; until such time, all rights are expressly reserved.  Defendants' objection should be overruled.

Dated:  February 3, 2021
        San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: */s/ Roberto Cámara-Fuertes*
      Roberto Cámara-Fuertes (USDC-PR No.
      219002)
      Sonia Colón (USDC-PR No. 213809)
      221 Ponce de León Avenue, 5th Floor
      San Juan, PR 00917
      Telephone: (787) 766-7000
      Facsimile:  (787) 766-7001
      Email:  rcamara@ferraiuoli.com
            scolon@ferraiuoli.com

**MILBANK LLP**

By: */s/ Atara Miller*
      Dennis F. Dunne (admitted *pro hac vice*)
      Atara Miller (admitted *pro hac vice*)
      Grant R. Mainland (admitted *pro hac vice*)
      John J. Hughes, III (admitted *pro hac vice*)
      Jonathan Ohring (admitted *pro hac vice*)
      55 Hudson Yards
      New York, NY 10001
      Telephone: (212) 530-5000
      Facsimile:  (212) 530-5219
      Email: ddunne@milbank.com
            amiller@milbank.com
            gmainland@milbank.com
            jhughes2@milbank.com
            johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
      Martin A. Sosland (admitted *pro hac vice*)
      2911 Turtle Creek Blvd., Suite 1400
      Dallas, TX 75219
      Telephone: (469) 680-5502
      Facsimile: (469) 680-5501
      Email: martin.sosland@butlersnow.com

      James E. Bailey III (admitted *pro hac vice*)
      Adam M. Langley (admitted *pro hac vice*)
      6075 Poplar Ave., Suite 500
      Memphis, TN 38119
      Telephone: (901) 680-7200
      Facsimile: (901) 680-7201
      Email: jeb.bailey@butlersnow.com
            adam.langley@butlersnow.cow

***Attorneys for Financial Guaranty Insurance
Company***

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**RIVERA, TULLA AND FERRER, LLC**

By:   */s/ Eric A. Tulla*
    Eric A. Tulla
    (USDC-DPR No. 118313)
    Email: etulla@ riveratulla.com
    Iris J. Cabrera-Gómez
    (USDC-DPR No. 221101)
    Email: icabrera@ riveratulla.com
    Rivera Tulla & Ferrer Building
    50 Quisqueya Street
    San Juan, PR 00917-1212
    Telephone: (787) 753-0438
    Facsimile: (787) 767-5784

**SEPULVADO, MALDONADO & COURET**

By:   */s/ Albéniz Couret Fuentes*
    Albéniz Couret Fuentes
    (USDC-PR No. 222207)
    304 Ponce de León Ave. Suite 990
    San Juan, PR 00918
    Telephone: (787) 765-5656
    Facsimile: (787) 294-0073
    Email: acouret@smclawpr.com

**HOGAN LOVELLS US LLP**

By:   */s/ Robin E. Keller*
    Robin E. Keller, Esq.
    Ronald Silverman, Esq.
    390 Madison Avenue
    New York, NY 10017
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    robin.keller@hoganlovells.com
    ronald.silverman@hoganlovells.com

*Attorneys for U.S. Bank National Association, in its Capacity as Trustee to PRIFA Bondholders*

**REED SMITH LLP**

By:   */s/ Jared S. Roach*
    Luke A. Sizemore (admitted *pro hac vice*)
    Jared S. Roach (admitted *pro hac vice*)
    225 Fifth Avenue, Suite 1200
    Pittsburgh, PA 15222
    Telephone: (412) 288-3131
    Facsimile: (412) 288-3063
    Email: lsizemore@reedsmith.com
        jroach@reedsmith.com

*Attorneys for The Bank of New York Mellon, in its Capacity as Trustee to CCDA Bondholders*

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 15205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com


*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
       jlevitan@proskauer.com
       ebarak@proskauer.com


Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:  (310) 557-2900
Fax:  (310) 557-2193
Email: mfirestein@proskauer.com
       lrappaport@proskauer.com


*Attorneys for the Financial*
*Oversight and Management Board,*
*as Representative of the Commonwealth*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email: rcamara@ferraiuoli.com