# **EXHIBIT C**

**O'Melveny**

O'Melveny & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, CA 92660-6429

T: +1 949 823 6900
F: +1 949 823 6994
omm.com

December 4, 2020

**VIA E-MAIL**

John Hughes, III
Atara Miller
Grant Mainland
MILBANK LLP
55 Hudson Yards
New York, New York 10001

Re: *In re Fin. Oversight & Mgmt. Bd., No. 17-BK-3283-LTS –Commonwealth Assets Rule 2004 Requests*

Counsel:

I write in response to your letter dated November 25, 2020 ("November 25 Letter") and the parties' call dated December 3, 2020 ("December 3 Call") in connection with Ambac's Assets Rule 2004 Motion [ECF No. 9022]. By repeating Ambac's headings, AAFAF does not reflect any acceptance or agreement by AAFAF that the materials sought are within the scope of Ambac's original requests or within the acceptable bounds of Rule 2004 discovery.

**A. Category No. 1: Assets (current and transferred/encumbered)**

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*

- *A list of the Commonwealth's current assets.*

*Prioritized Commonwealth Assets*. AAFAF reiterates its objection to these overbroad requests, which seek information regarding assets that are not owned by the Commonwealth. Your November 25 Letter requests "clarification regarding which of the Prioritized Commonwealth Assets AAFAF believes are: (i) owned by the Commonwealth; (ii) owned by non-Commonwealth Title III entities; or (iii) owned by non-Title III entities." Ambac's own prioritized asset list attributes ownership of properties 1-9 and 38-43 to CCDA, GDB/DRA, PRLA, and PRIFA. AAFAF requests that Ambac explain the relevance of these non-Title III debtors' properties and assets. In addition, Ambac attributes ownership of properties 10-37 to HTA and PBA, independent public corporations that are subject to separate Title III cases. AAFAF also requests that Ambac explain the salience of these debtors' assets to the Commonwealth's Title III case.

In addition, for property 10, there are multiple buildings implicated by the provided coordinates, and your description, "Various government buildings next to Hospital," is too vague to allow AAFAF to locate specific recorded documents. Accordingly, AAFAF requests that Ambac

Case:17-03283-LTS Doc#:15801-3 Filed:02/03/21 Entered:02/03/21 23:51:42 Desc: Ex. C - AAFAF Dec. 4 2020 Letter Page 3 of 4

O'Melveny

provide additional details regarding property 10, including the specific buildings for which Ambac seeks information, to allow us to locate what records may exist.

AAFAF continues to object that discovery into the assets of independent governmental entities is beyond the scope of permissible Rule 2004 discovery in the Commonwealth's Title III case. Nevertheless, in the spirit of compromise, AAFAF has been working with CCDA, GDB/DRA, HTA, PBA, PRLA, and PRIFA to determine what materials may be easily located and provided.

In response to your request for an expected production completion date, AAFAF is continuing to work diligently with multiple agencies to locate the information requested. However, given the worsening COVID-19 pandemic and the need to quarantine employees exposed to the virus, as well as employees taking vacation time before year end, AAFAF cannot commit to a specific date by which it will complete its collection or production of information regarding the outstanding assets.

*AAFAF Assets Review.* The November 25 letter lists nine "Prioritized Commonwealth Entities" and requests confirmation that these entities did not submit certifications in response to the November 2019 AAFAF memorandum.[1] AAFAF has not currently located certifications from those entities in response to the November 2019 letter, but is working to confirm.

Your letter further states that Ambac will seek deposition testimony from the Prioritized Commonwealth Entities that did not provide the certifications, and requests AAFAF's position. As stated on the December 3 Call, AAFAF does not agree that deposition testimony would be appropriate. Ambac's proposal to conduct nine separate depositions as a proxy to create asset lists that are not yet in existence is wasteful and unduly disruptive to the Government's operations. *See* Case No. 17-3283, ECF No. 10332, at 9 (Jan. 23, 2020) (Swain, J.) (limiting Rule 2004 discovery to "a core body of information in a manner that will not be unduly expensive or disruptive of operations and that will facilitate efficient responses to future similar requests"). AAFAF has provided Ambac with the asset lists that it has currently located that are in its possession, custody, or control. AAFAF will agree to request from the Prioritized Commonwealth Entities from your November 25 letter that AAFAF determines have not submitted their certifications that the entities provide their certifications to CEDBI, and will agree to produce any additional certifications AAFAF receives from CEDBI (subject to a privilege review). AAFAF can also agree to investigate whether similar property lists are available from the agencies who have not completed a certification. However, AAFAF will not agree to waste government resources preparing representatives of independent government corporations to attempt to recite real estate holdings from memory when this information can be more efficiently communicated in writing.

In response to your request for an explanation of the "Disponibilidad" and "Plano de Mensura" headings in the certification, AAFAF provides the following information: For the "Disponibilidad" heading, an X in the "Disponible" column indicates that the property is known to be currently available (the entity is not currently using it, but it still has public use); an X in the "Desuso" column indicates the property no longer has any public use for the entity, and rather could serve other entities, or could be disposed of to third parties; an X in the "No Disponible" column indicate the property is in use and not available for sale, and the "Arrendado (Especificar Término)" column is used to record the term of any lease. The "Plano de Mensura" heading

---

[1] The "memorandum" referenced was produced at ASSETS_2004_0000601.

Case:17-03283-LTS Doc#:15801-3 Filed:02/03/21 Entered:02/03/21 23:51:42 Desc: Ex. C - AAFAF Dec. 4 2020 Letter Page 4 of 4

O'Melveny

tracks whether the survey plan for the property is available ("Disponible") or not available ("No Disponible").

Finally, your November 25 Letter requests an update regarding "AAFAF's investigation for any supplemental certifications or analyses related to the certifications that have been produced to date." AAFAF has performed a reasonable search and has not located any such supplemental certifications or analyses.

***Ad Valorem Taxes / Tax Arrears***. Your November 25 Letter requests an update on whether any documents related to a 2017 unsolicited third-party offer to purchase CRIM's tax arrears portfolio, including the offer itself or any back-up material related thereto, are available, are relevant, and may be produced. Your letter also requests an update on "whether Puerto Rico law prevents CRIM from disclosing owner- and property-specific tax information to Ambac, and whether such information is relevant, available, and would not be unduly burdensome to provide." AAFAF is continuing to work with CRIM and will update Ambac in the coming weeks. In the meantime, AAFAF continues to preserve its objection that discovery into receivables owed to CRIM, an independent entity that is not in Title III, is beyond the scope of permissible Rule 2004 discovery in the Commonwealth's Title III proceeding.

***COVID-19 Measures.*** Your November 25 Letter "requests clarification as to when AAFAF anticipates that it will be able to confirm that all relevant in-office files have been reviewed for potentially responsive documents." The files Ambac seeks are in the custody of multiple different government agencies and searching for the materials requested requires consulting with multiple employees from each agency. While AAFAF is working diligently to complete the few outstanding searches that remain, AAFAF cannot commit to a specific deadline given the worsening pandemic. Employees exposed to COVID-19 are required to home quarantine for 14 days, and some of the employees AAFAF must consult to complete its search are not able to work remotely. AAFAF anticipates that restrictions on office access will continue to increase through the end of the year.[2] Moreover, as year-end approaches, many employees are beginning to use vacation time they forewent during the summer months, further reducing employee availability. AAFAF will strive to complete its remaining investigation by the end of January 2021, but reserves the right to revise this timeline as necessary.

Sincerely,

/s/ *Elizabeth L. McKeen*

Elizabeth L. McKeen

---

[2] *See* https://www.theweeklyjournal.com/top-stories/puerto-rico-gov-announces-stricter-executive-order/article_d7d6cd78-357f-11eb-a4fe-b7da32b8850b.html.

3