# **<u>EXHIBIT D</u>**

April 28, 2020

<u>VIA E-MAIL</u>

Gaspard Rappoport                     John Hughes, III
Kelly DiBlasi                         Atara Miller
Gabriel Morgan                        Grant Mainland
Gregory Silbert                       MILBANK LLP
Reed Collins                          55 Hudson Yards
WEIL, GOTSHAL & MANGES LLP            New York, New York 10001
767 Fifth Avenue
New York, New York 10153

Howard Hawkins                        Jason Callen
Mark Ellenberg                        Martin Sosland
William Natbony                       BUTLER SNOW LLP
Casey Servais                         5430 Lyndon B. Johnson Freeway, Suite 1200
CADWALADER, WICKERSHAM & TAFT LLP     Dallas, Texas 75240
200 Liberty Street                    1530 3rd Avenue South, Suite 1600
New York, New York 10281              Nashville, Tennessee 37201

Re:   *In re Fin. Oversight & Mgmt. Bd., No. 17-BK-3283-LTS – Discovery on Lift Stay
      Motions – Movants' Letters Dated April 20, 2020 and April 25, 2020*

Counsel:

We write in response to the issues raised in your letters dated April 20, 2020 and April 25, 2020.
Our responses to your questions are set forth below.

I.     **General Ledger Requests**

As explained at length in our letter dated April 14, 2020, Movants' General Ledger Requests are
untimely and exceed the scope of discovery permitted by the Court's March 5, 2020 Order.
That order required the Government Parties to produce "documents showing any sub-accounts
or other designations used to track Rum Taxes in the Commonwealth Treasury Single Account."
ECF 12080 at 4.  In our April 19, 2020 Letter, we explained that there are no such "sub-
accounts" in the Treasury Single Account and there are not any designations used to track Rum
Taxes (or Excise Taxes) in the Commonwealth Treasury Single Account.  Rather, cash is
pooled into multiple accounts that are collectively referred to as the Treasury Single Account
("TSA").  We referred you to account opening documents and account statements AAFAF has
produced for the account within TSA that received Rum Taxes and the Excise Taxes, as well as
documents AAFAF has produced sufficient to identify accounting designations associated with
the receipt of those revenues.  We have done what we were required to do, and more.

Mr. Ahlberg's testimony is not to the contrary.  He did not testify that there are any "sub-
accounts" or designations used to track rum tax or excise tax revenues in the Treasury Single
Account.  Rather, he stated the Commonwealth only records the specific source of these
revenues upon its initial receipt of such funds.  *See* T. Ahlberg Dep. Tr. (Apr. 23, 2020) 250:1-

16.  AAFAF has already produced summary reporting of Rum Tax revenues received from the federal government.[1]

## II.    Other Document Requests

Contrary to Movants' characterization, Mr. Ahlberg did not testify that relevant documents were not produced in discovery.  Mr. Ahlberg reviewed thousands of pages of documents in preparation for his testimony. Any expectation that he recall and testify as to every single one is not realistic.  *See, e.g., Costa v. County of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008); *Alexander v. F.B.I.*, 186 F.R.D. 137, 143 (D.D.C. 1998) ("Deponents under Rule 30(b)(6) must be prepared and knowledgeable, but they need not be subjected to a 'memory contest.'")).  Mr. Ahlberg's testimony that he may not have seen or may not recall a particular document does not mean that there are documents that have not been produced to you.

With respect to your request for a document mapping account numbers to account names in the bond documents, AAFAF conducted a reasonably diligent search and did not locate any such document.  In response to your letter dated February 26, 2020, counsel for AAFAF worked with the Tourism Company to identify which bank accounts correspond to the Transfer Account and the Surplus Account.  AAFAF identified the Transfer Account as GDB Account -9758 and the Surplus Account as Scotiabank Account -5144 based on a review of the prescribed function of the accounts as set forth in the governing agreements, a review of the account statements and transfer letters that have been produced, and discussions with the Chief Financial Officer of the Tourism Company.

With respect to your request concerning the $15 million transfer to the ″renew your schools″ program, the transfer is shown in the relevant account statements (CW_STAY0008494 - CW_STAY0008547 and CCDA_STAY0013958 - CCDA_STAY0013960).  The Act 26 Committee resolution dated March 6, 2018 (CCDA_STAY0001185 - CCDA_STAY0001187) states that the funds are to be transferred to meet obligations under the Renew Your School Program and to comply with the requirements of the Certified Fiscal Plan.

## III.    Questions the Monolines' Claim that the Corporate Representative was Unable to Answer

We disagree with your assertion that Mr. Ahlberg was unable to answer questions within the scope of the topics on which he was designated to provide testimony.  To the contrary, he provided over 15 hours of testimony over the course of two days, often on topics well beyond the limited scope of testimony permitted by the Court.  Below are AAFAF's responses with regard to your supposedly unanswered questions.  There is no need for additional witness testimony.

---

[1] PRIFA_STAY0000001.

*Questions Regarding Documents and Document Collection Efforts*

- **The efforts that were made to look for documents that map the account designations found in the HTA Bond Documents to corresponding bank accounts.** *See* **T. Ahlberg Dep. Tr. (Apr. 21, 2020) at 25:7-14 (Mr. Ahlberg testified that he "is not aware of the specific methodology used").**

As a threshold matter, we note that the Monolines completely disregarded Judge Dein's order by failing to direct this question to counsel first.  *See* ECF 12275 at 2 ("[Q]uestions Movants have regarding the Government Parties' collection efforts should be directed to counsel in the first instance.").

As to the substance of your question, in its efforts to locate a document mapping the account names in the HTA Bond Documents to particular account documents, AAFAF consulted with: (1) personnel from HTA's Treasury and Finance Departments and HTA's General Counsel; (2) the Assistant Secretary for the Treasury Area of the Puerto Rico Department of Treasury; (3) in-house counsel at AAFAF, and (4) numerous third-party consultants with current and historical knowledge concerning the relevant government agencies.  AAFAF also reviewed account opening documents, bank account statements, transfer letters, and the bound volumes for the HTA bonds, all of which were provided to Movants.

- **The origins of the data that reflected the fund withdrawals on page 2 of Monolines Exhibit 14 (HTA_STAY0000207).** *Id.* **at 144:14-20 (Mr. Ahlberg testified that he is "unsure about the data source for [that] specific line item").**

The data reflected in the "fund withdrawals" line item of HTA's spreadsheet is sourced from the amounts requested in the vouchers HTA submitted to the Puerto Rico Treasury Department.  In the native version of HTA_STAY0000207, the figures reflected in the individual cells for the "Fund Withdrawals" line are sums of particular dollar amounts that correspond to the amounts in vouchers listed on pages 9-12 of Monolines Exhibit 14, or the vouchers tabs in the native file.

- **Whether PRIFAS can pull the transfers vouchers (or summary data recorded from the vouchers) for transfers containing fund code R4220.** *Id.* **at 111:8-12 (Mr. Ahlberg testified that he was "not positive" and that "[w]e would have to follow up on that and get back to you").**

The PRIFAS system cannot pull vouchers for transfers associated with revenue account number R4220 (which is not a fund value). With respect to summary data, PRIFAS cannot export a report of summary data for all vouchers associated with revenue account R4220. While it is possible to run a query to display summary information, it would require manual transcription to prepare a shareable file (e.g., an Excel workbook).  The summary information would not be limited to the first $117 million of Rum Tax revenues at issue in the PRIFA Lift Stay Motion because account R4220 is used to track receipt of all Rum Tax revenues received from the federal government.  AAFAF has already produced vouchers located in Treasury's files

3

associated with transfers of the first $117 million of Rum Tax revenues,[2] the bank account statements through which that first $117 million flowed,[3] summary reporting created using data from PRIFAS showing the total amount of Rum Taxes received over the relevant time period,[4] and cover over reports showing rum taxes received over the relevant time period.[5]

***Questions Regarding Account Balances***

- **The amount of money deposited into the GDB -6048 Account during the period of July 2015 to March 2016. *Id.* at 164:20 – 165:9 (Mr. Ahlberg testified that he did not know but that it was "certainly something that we could review and get back to you on").**

The security transaction history produced on March 13 contains all deposits into, and withdrawals out of, GDB -6048 from December 2, 2015 to November 29, 2018.  *See* CW_STAY0010544 - CW_STAY0010547.

- **What was the balance remaining in the GDB -9758 Account at the time of the GDB's restructuring. *Id.* at 281:13-19. (Mr. Ahlberg testified that he is "not positive" that is the case).**

The balance remaining in the GDB -9758 Account at the time of GDB's restructuring was $6,223,979.04.  *See* CCDA_STAY0014163 - CCDA_STAY0014164; *see also* CCDA_STAY0001812, and CCDA_STAY0014040 - CCDA_STAY0014162.

***Questions Regarding Flow of Funds Analysis***

- **The meaning of "discrete, one-time transfer" as used in Mr. Ahlberg's PRIFA flow-of- funds charts for all $1 million transfers of Rum Taxes to PRIFA for its operational expenses and how those transfers differ from the transfers to the GDB -1891 Account. *Id.* at 117:14-119:22 (Ms. Miller explained that she would need to follow-up in a letter for a more comprehensive answer. The Government Parties did not object to Ms. Miller's statement.)**

This language was intended to communicate that the transfers did not occur on an ongoing basis and to denote the precise portion of the first $117 million of Rum Tax revenues in a particular time period that were transferred to the GDB -0704 account, with the remainder being transferred to the GDB -1891 account.  The language was not intended to reflect any claim or argument regarding the legal nature or legal significance of the transfers.

---

[2] *See* PRIFA_STAY0001063 - PRIFA_STAY0001093, PRIFA_STAY0001572 - PRIFA_STAY0001580, PRIFA_STAY0001593 - PRIFA_STAY0001612, PRIFA_STAY0001623 - PRIFA_STAY0001639.
[3] *See* CW_STAY0009656 - CW_STAY0009747, PRIFA_STAY0004129 - PRIFA_STAY0004244, PRIFA_STAY0002649 - PRIFA_STAY0002777.
[4] *See* CW_STAY0034115; PRIFA_STAY0000001; HTA_STAY0000001.
[5] *See* PRIFA_STAY0000287 - PRIFA_STAY0000299, PRIFA_STAY0000613, PRIFA_STAY0000621, PRIFA_STAY0001242 - PRIFA_STAY0001650, PRIFA_STAY0003060 - PRIFA_STAY0003114.

*Accounting Questions*

- **Whether Propriety Funds include Enterprise Funds or Fiduciary Funds. *Id*. at 35:25 – 36:10 (Mr. Ahlberg testified that he doesn't "know one way or the other").**

- **Whether GAAFR are the authoritative standards for government accounting procedures.  *Id*. at 38:14-19 (Mr. Ahlberg testified that he does not know).**

- **Whether Treasury maintains ledgers for each Fund and whether those ledgers are developed and/or maintained in accordance with GASB standards. *Id*. at 89:2-13 (Mr. Ahlberg responded that he is "not sure" of the standards used by Treasury).**

- **Whether the $15mm transferred to the BPPR -9458 Account as part of the "Renew Your School Program" was marked with a special accounting or funding designation for that program and, if so, what it was. *Id*. at 306:5-17 (Mr. Ahlberg testified that he is "not sure of the exact accounting treatment that was used to record that transfer").**

- **Whether there is any report that the Commonwealth could run on any particular day to show how much money has been designated part of the Commonwealth's General Fund. *Id*. at 70:9-15 (Mr. Ahlberg testified that he does not "know how to answer that question").**

These questions are outside the permissible scope of testimony as set forth in the March 5, 2020 Order (ECF 12275).  Judge Dein made clear at the March 4, 2020 hearing that Movants were entitled to a 30(b)(6) deposition to understand "the structure of the financial arrangements" and general questions regarding the flow of funds: "questions about the money coming in. Where does it come from? Where does it go generally? What's the structure?" (Hrg. Tr. 262:21-263:6).  Judge Dein also specifically noted "nor do I think it's efficient, to be questioning each and every transaction over the last four years."  (Hrg. Tr. at 245:6-10).

Mr. Ahlberg was not designated to provide testimony regarding government accounting principles and practices, which are irrelevant to the issues presented in the Lift Stay Motions. AAFAF provided a production that is more than sufficient to show the overall structure of the flow of funds and also produced summary cash flow reporting that show the amounts the Puerto Rico Treasury Department received on account of excise taxes and rum taxes from particular sources (CW_STAY0034115 - CW_STAY0034215).  No further discovery is necessary in connection with the preliminary hearing on May 13, 2020.

Sincerely,

/s/ *Elizabeth L. McKeen*                    /s/ *Michael Mervis*

Elizabeth L. McKeen                         Michael Mervis