**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER
AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING
<u>COMMONWEALTH ASSETS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

JURISDICTION AND VENUE ........................................................................................................ 3

BACKGROUND ............................................................................................................................... 3

RELIEF REQUESTED...................................................................................................................... 7

STANDARD OF REVIEW ............................................................................................................... 8

ARGUMENT ................................................................................................................................... 10

    I.    INFORMATION REGARDING THE AT-ISSUE PRIORITIZED COMMONWEALTH ENTITIES' ASSETS IS NEEDED TO MEANINGFULLY EVALUATE THE FINANCIAL CONDITION OF THE COMMONWEALTH. ....................................................................................... 10

CONCLUSION................................................................................................................................ 12

CERTIFICATION ........................................................................................................................... 12

NO PRIOR REQUEST FOR RELIEF............................................................................................. 12

CERTIFICATE OF SERVICE ........................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*,
  156 B.R. 414 (S.D.N.Y. 1993) ................................................................................................8

*Freeman v. Seligson*,
  405 F.2d 1326 (D.C. Cir. 1968) ..............................................................................................8

*In re China Fishery Grp. Ltd.*,
  2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ...........................................................8, 9

*In re Coffee Cupboard, Inc.*,
  128 B.R. 509 (Bankr. E.D.N.Y. 1991) ....................................................................................9

*In re Correra*,
  589 B.R. 76 (Bankr. N.D. Tex. 2018) .....................................................................................8

*In re Corso*,
  328 B.R. 375 (E.D.N.Y. 2005) ................................................................................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
  123 B.R. 702 (Bankr. S.D.N.Y. 1991) ....................................................................................8

*In re Gawker Media LLC*,
  2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017) .............................................................9

*In re Madison Williams & Co.*,
  2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ....................................................................8

*In re Recoton Corp.*,
  307 B.R. 751 (Bankr. S.D.N.Y. 2004) ...............................................................................9, 10

*Official Comm. of Unsecured Creditors v. Grant (In re Refco, Inc.)*,
  2007 WL 9232701 (N.D. Ill. Jan. 16, 2017) ............................................................................8

**Statutes**

3 L.P.R.A. § 9502 (2017) .................................................................................................................1

**Other Authorities**

Fed. R. Bankr. P. 2004 ............................................................................................................ *passim*

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), made applicable to this proceeding by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Ambac Assurance Corporation ("Ambac") respectfully submits this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, granting Ambac leave to take discovery of certain agencies, instrumentalities, and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"). In support of this Motion, Ambac respectfully states as follows:

## PRELIMINARY STATEMENT

1. This Motion arises out of Ambac's efforts to understand the assets of the Commonwealth and its agencies, instrumentalities, and public corporations ("Commonwealth Entities"). In November 2019, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") sent a memorandum to the Commonwealth Entities requesting that they provide certifications to CEDBI[2] regarding their real property assets, including whether such assets could potentially be sold. In connection with Ambac and AAFAF's meet-and-confers regarding Ambac's Original Assets Rule 2004 Motion,[3] AAFAF has produced any materials CEDBI received from the Commonwealth Entities in response to the memorandum and a limited number of additional documents related to the assets of certain Commonwealth Entities that did not submit materials to CEDBI. But AAFAF's productions cover only a fraction of the Commonwealth Entities that should have provided a response. Several Commonwealth Entities with very

---

[2] "CEDBI" refers to the Real Property Evaluation and Disposal Committee, a Commonwealth entity created by statute in 2017 for the purpose of, among other things, fostering better use of real property not used by the Commonwealth and increasing the resources available to the Commonwealth. *See* 3 L.P.R.A. § 9502 (2017); Ex. C, Assets Memorandum.

[3] "Original Assets Rule 2004 Motion" refers to *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* (ECF No. 9022). Unless otherwise indicated, all ECF numbers referenced in this motion refer to the docket in Case No. 17 BK 3283-LTS. References to "Ex. __" are to the exhibits submitted contemporaneously herewith.

- 1 -

substantial holdings of real property and other assets apparently did not respond to AAFAF's request.

2.  Ambac and other creditors cannot meaningfully evaluate the Commonwealth's financial condition without a full understanding of the assets held by Commonwealth Entities. Indeed, this information is critically important to considering any potential plan of adjustment because available information shows that the Commonwealth owns real property assets worth ***well over $1.3 billion dollars***. Specifically, a high-level analysis undertaken by a valuation expert retained by Ambac's counsel shows that ***just 81 Commonwealth properties***—a small fraction of the total number of Commonwealth properties—have an approximate aggregate value of $1,363,488,500. This high-level analysis clearly reveals that there is huge untapped value in Commonwealth assets, which should be considered in connection with the Commonwealth's restructuring.

3.  Discovery into the real property and other assets of the Commonwealth and its agencies, instrumentalities, and public corporations is critical to evaluating any proposed plan of adjustment and understanding the financial condition of the Commonwealth. Quite simply, creditors cannot support a plan if the evidence shows that there is huge untapped value that the plan does not consider or address.

4.  Because AAFAF and CEDBI have not received certifications concerning the assets of certain Commonwealth Entities, and because AAFAF has indicated that it cannot attest to the accuracy of documents it produced related to the assets of certain Commonwealth Entities that did not submit certifications, Ambac seeks discovery directly from six Commonwealth Entities to understand their assets and what documents and other information they have available concerning such assets.

**JURISDICTION AND VENUE**

5. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and Section 306(a) of PROMESA, 48 U.S.C. § 2166(a).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b) and PROMESA § 307(a), 48 U.S.C. § 2167(a).

**BACKGROUND**

7. On October 28, 2019, Ambac filed its Original Assets Rule 2004 Motion seeking authorization to conduct discovery of the Government[4] regarding the assets of the Commonwealth and Commonwealth Entities—specifically, the identity and value of any property interests held; any sale, alienation, and/or encumbrances of those interests; and the flow of funds resulting therefrom. (Original Assets Rule 2004 Motion at 4.)

8. On November 8, 2019, the Government filed a motion to strike the Original Assets Rule 2004 Motion.[5] The Court (Swain, J.) denied the Motion to Strike on January 23, 2020, holding that "Rule 2004 discovery is the appropriate mechanism for use by creditors to obtain information concerning the financial health of the debtor at this stage of the Title III proceedings." (Memorandum Order[6] at 8-9 (citing *In re Bibhu LLC*, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019) ("The purpose of a Rule 2004 examination is to discover **the nature and extent of**

---

[4] "Government" refers, collectively, to AAFAF and the Financial Oversight and Management Board for Puerto Rico (the "Board").

[5] *Urgent Motion of Financial Oversight and Management Board for Puerto Rico and Puerto Rico Fiscal Agency and Financial Advisory Authority to Strike (A) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets [ECF No. 9022] and (B) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis [ECF No. 9023] and for Sanctions* (ECF No. 9131), ¶¶ 36-38 (the "Motion to Strike").

[6] "Memorandum Order" refers to the *Memorandum Order Denying Motion to Strike Certain Rule 2004 Applications* (ECF No. 10332).

- 3 -

*the bankruptcy estate* in order to distribute the debtor's assets for the benefit of its creditors." (emphasis added))).) The Court directed that discovery be provided into "major aspects of the Commonwealth's financial condition that will be relevant to a plan of adjustment[,]" and ordered the Parties[7] to meet and confer concerning the scope of the discovery Ambac sought through the Original Rule 2004 Motions.[8] (*Id.* at 9-10.)

9. The Parties thereafter held several meet-and-confers and submitted a number of joint status reports to the Court providing updates on those efforts.[9] On November 12, 2020, the Court (Dein, M.J.) denied Ambac's Original Rule 2004 Motions without prejudice "[i]n light of the substantial work the [P]arties have done narrowing the issues and resolving disputes initially presented in the [Original] Rule 2004 Motions[,] . . . and to avoid confusion of the record," and ordered that Ambac file any new motions "limited to the issues in dispute." (*Order* (ECF No. 15093) at 2-3.) Pursuant to the Court's order, Ambac filed its New Cash Rule 2004 Motion[10] on November 20, 2020, reserving its right to seek additional judicial relief in the event Ambac and the Government were to reach an impasse with regard to other cash- and assets-related requests. (*See* New Cash Rule 2004 Motion at 1 n.3.) The Parties have continued to meet and confer, but because AAFAF has not been able to produce certifications for certain Commonwealth Entities, Ambac now seeks the relief requested herein.

---

[7] "Parties" refers, collectively, to Ambac, the Board, and AAFAF.

[8] "Original Rule 2004 Motions" refers, collectively, to the Original Assets Rule 2004 Motion and *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* (ECF No. 9023).

[9] (*See* ECF Nos. 10875, 11787, 12484, 12711, 13192, 13723, 14150, 14438, 15025, 15350, 15690.)

[10] "New Cash Rule 2004 Motion" refers to *Ambac Assurance Corporation's Motion for an Order Directing Cash Rule 2004 Discovery from the Financial Oversight and Management Board for Puerto Rico* (ECF No. 15220), which has been fully briefed and remains *sub judice*.

10. Specifically, the discovery leading to the instant motion relates to a memorandum dated November 25, 2019, from the Executive Director of AAFAF to the heads of all Commonwealth Entities (the "Assets Memorandum," attached hereto (along with a certified English translation) as Exhibit C), requesting that each Commonwealth Entity provide to CEDBI a certification listing, *inter alia*, all real property assets held by such entity; whether such properties are tied to any debt; the terms of any leases on such properties; whether any such properties have a public use, are currently being used by a Commonwealth Entity, or are potentially available for sale; and whether a survey plan for any such properties is available. (*See* Ex. C, Assets Memorandum; *see also* Ex. D, Ltr. from AAFAF to Ambac, dated Dec. 4, 2020, at 2-3.) On June 9, 2020, Ambac requested production of all documents submitted in response to the Assets Memorandum and any follow-up communications or analysis related thereto. (Ex. E, Ltr. from Ambac to the Government, dated June 9, 2020, at 2.)

11. As of the filing of this Motion, AAFAF has produced certifications submitted to CEDBI in response to the Assets Memorandum by approximately 40 Commonwealth Entities. (*See* Ex. F, Ltr. from Ambac to the Government, dated Nov. 25, 2020, at 2; Ex. G, Ltr. from AAFAF to Ambac, dated Jan. 31, 2021, at 2.) However, neither certifications nor other materials concerning real property and other assets have been produced for at least 85 other Commonwealth Entities, including those that hold substantial real property and other assets.

12. Of the Commonwealth Entities for which certifications had not been produced as of November 25, 2020, Ambac identified a narrow subset of nine "prioritized" Commonwealth Entities that, according to publicly available resources such as the Puerto Rico Official Inventory of Real Estate Properties,[11] hold substantial real property and other asset holdings. On

---

[11] Official Portal of the Government of Puerto Rico: Official Inventory of Real Estate Properties, https://www2.pr.gov/propiedadesinmuebles/Pages/default.aspx# (last accessed Feb. 3, 2021).

November 25, 2020, Ambac requested that AAFAF attempt to locate certifications or similar property lists for the following nine Commonwealth Entities, without prejudice to Ambac's right to seek discovery regarding other Commonwealth Entities: (1) Puerto Rico Land Administration; (2) Puerto Rico Public Buildings Authority ("PBA"); (3) Puerto Rico Land Authority; (4) Puerto Rico Industrial Development Company ("PRIDCO"); (5) Puerto Rico Department of Transportation and Public Works ("DTOP"); (6) Puerto Rico Aqueduct and Sewer Authority ("PRASA"); (7) Government Development Bank for Puerto Rico / GDB Debt Recovery Authority ("GDB/DRA"); (8) Puerto Rico Highways and Transportation Authority ("HTA"); and (9) Puerto Rico Trade and Export Company ("CCE") (collectively, the "Prioritized Commonwealth Entities"). (*See* Ex. F, Ltr. from Ambac to the Government, dated Nov. 25, 2020, at 2.) Ambac also advised AAFAF that it intended to seek deposition testimony from the Prioritized Commonwealth Entities. (*Id.* at 3.)

13. AAFAF agreed to follow up with the Prioritized Commonwealth Entities to attempt to obtain certifications or similar property lists regarding those entities' real property and other assets, and agreed to provide by January 31, 2021 any additional information it received. (Ex. D, Ltr. from AAFAF to Ambac, dated Dec. 4, 2020, at 2; Ex. H, Ltr. from AAFAF to Ambac, dated Jan. 19, 2021, at 3, 4; *Joint Status Report of Ambac Assurance Corporation and the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Pursuant to the Court's December 7, 2020 Order* (ECF No. 15690), at 4-5 (the "January 21 Joint Status Report").) However, AAFAF indicated its objection to Ambac seeking any deposition testimony. (January 21 Joint Status Report at 5.)

14. On January 31, 2021, AAFAF produced certifications submitted to CEDBI by three of the nine Prioritized Commonwealth Entities—PRASA, GDB/DRA, and CCE. (Ex. G, Ltr. from AAFAF to Ambac, dated Jan. 31, 2021, at 2.) AAFAF also indicated that it has produced all responses to the Assets Memorandum received by CEDBI to date. (*Id*.) AAFAF also produced a limited number of documents concerning the real property and other assets of PBA, the Puerto Rico Land Authority, PRIDCO, DTOP, and HTA "as they exist in those entities' records," and noted that those lists "ha[d] not been certified for current accuracy." (*Id*.)[12] AAFAF also confirmed that it has not yet received any certification or property list from the Puerto Rico Land Administration. (*Id*.)

15. In light of AAFAF's inability to produce certifications from PBA, the Puerto Rico Land Authority, PRIDCO, DTOP, or HTA, or to confirm the accuracy of the documents it has produced concerning such entities' real property and other assets, as well as its inability to produce any documents from the Puerto Rico Land Administration, by this Motion, Ambac seeks leave to obtain document discovery and deposition testimony from each of these six Prioritized Commonwealth Entities (collectively, the "At-Issue Prioritized Commonwealth Entities").[13]

**RELIEF REQUESTED**

16. Pursuant to Rule 2004, Ambac requests entry of an order authorizing and directing document discovery and deposition testimony from the At-Issue Prioritized Commonwealth Entities, substantially in the form of the document requests and deposition topics set forth in **Exhibit B**, attached hereto.

---

[12] Indeed, the only document AAFAF produced concerning the real property of DTOP is dated June 30, ***2002***.

[13] Ambac's review and analysis of the certifications for PRASA, GDB/DRA, and CCE produced on January 31, 2021 is ongoing. Ambac reserves its right to seek discovery from these Prioritized Commonwealth Entities in the event the produced certifications do not sufficiently and comprehensively describe those entities' asset holdings.

- 7 -

## STANDARD OF REVIEW

17. Rule 2004 provides that "any party in interest" may move for examination relating to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate[.]" Fed. R. Bankr. P. 2004(a)-(b). The scope of a Rule 2004 examination is "very broad." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *see also, e.g.*, *In re Correra*, 589 B.R. 76, 108-09 (Bankr. N.D. Tex. 2018); *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *4 (Bankr. S.D.N.Y. July 19, 2017); *Official Comm. of Unsecured Creditors v. Grant (In re Refco, Inc.)*, 2007 WL 9232701, at *3 (N.D. Ill. Jan. 16, 2017); *In re Corso*, 328 B.R. 375, 383 (E.D.N.Y. 2005) ("[T]he scope of [Rule 2004] examination is broader than discovery permitted under the Federal Rules of Civil Procedure.").

18. Consistent with the broad scope of a Rule 2004 examination, the target of Rule 2004 discovery is not limited to the debtor itself. *See Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Tr. Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 432 (S.D.N.Y. 1993); *Freeman v. Seligson*, 405 F.2d 1326, 1333 (D.C. Cir. 1968). "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.*, 156 B.R. at 432. Third parties are routinely required to produce documentary and testimonial discovery pursuant to Rule 2004. *See, e.g.*, *In re Correra*, 589 B.R. at 108-09; *In re Madison Williams & Co.*, 2014 WL 56070, at *4 (Bankr. S.D.N.Y. Jan. 7, 2014).

19. Financial information about the debtor and its assets and liabilities, including information relating "to the operation of any business and the desirability of its continuance . . . and any other matter relevant to the case or to the formulation of a plan," are appropriate subjects of a Rule 2004 examination. Fed. R. Bankr. P. 2004(b). Creditors may obtain discovery into any

- 8 -

matter regarding the "nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

20. As Ambac has previously demonstrated, *supra* ¶ 7, information relating to the Commonwealth's and Commonwealth Entities' assets—including (i) the identity of any property interests; (ii) the sale, alienation, or encumbrance of any property interests; and (iii) the flow of funds resulting therefrom—is precisely the type of information that Rule 2004 is designed to cover. *See, e.g.*, *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the [c]ourt to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'" (quoting *Cameron v. United States*, 231 U.S. 710, 717 (1914))).

21. The granting of a motion pursuant to Rule 2004 is within the discretion of the Court. *See In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017) ("Rule 2004 gives the Court 'significant' discretion." (citation omitted)). In assessing Rule 2004 motions, courts balance the competing interests of the parties, "weighing the relevance of and necessity of the information sought by examination[,]" *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5, and look to whether the party seeking to conduct a Rule 2004 examination has demonstrated good cause. *In re Gawker Media LLC*, 2017 WL 2804870, at *5. Good cause exists where the information sought is necessary to a claim of the party seeking examination or where denial of the request would cause the examiner undue hardship or injustice. *Id.* (citation omitted).

**ARGUMENT**

I. **INFORMATION REGARDING THE AT-ISSUE PRIORITIZED COMMONWEALTH ENTITIES' ASSETS IS NEEDED TO MEANINGFULLY EVALUATE THE FINANCIAL CONDITION OF THE COMMONWEALTH.**

22. Good cause exists for Ambac to obtain discovery from the At-Issue Prioritized Commonwealth Entities. The information Ambac seeks regarding the real property and other assets of the At-Issue Prioritized Commonwealth Entities is essential to ensuring that Ambac and other creditors have the ability to meaningfully evaluate the financial condition of the Commonwealth and participate in plan of adjustment negotiations and proceedings. No meaningful evaluation can occur without an opportunity to explore the assets of the At-Issue Prioritized Commonwealth Entities and evaluate the extent to which such assets can be (or have been) monetized, alienated, or encumbered.

23. Discovery of this critical information is the very "purpose of a Rule 2004 examination[.]" *In re Recoton Corp.*, 307 B.R. at 755. Ambac's ability to seek discovery, including deposition testimony, directly from the At-Issue Prioritized Commonwealth Entities is particularly important here because AAFAF has indicated that it has not been able to obtain any documents concerning one of the At-Issue Prioritized Commonwealth Entities' real property or other assets, and cannot attest to the accuracy of the documents concerning other At-Issue Prioritized Commonwealth Entities' real property or other assets that AAFAF has produced, even though publicly available information shows that those Commonwealth Entities hold substantial real property and other assets.[14] Since AAFAF has been unable to produce sufficient information or confirm the accuracy of the information it has produced regarding the real property and other assets of the At-Issue Prioritized Commonwealth Entities, Ambac must resort to other means,

---

[14] *See, e.g.*, Official Portal of the Government of Puerto Rico: Official Inventory of Real Estate Properties, https://www2.pr.gov/propiedadesinmuebles/Pages/default.aspx# (last accessed Feb. 3, 2021).

including the solicitation of documents and deposition testimony directly from those entities, to obtain an understanding of the real property and other assets held by those entities.

24. Indeed, it is apparent that Commonwealth Entities hold highly valuable assets that, if sold or otherwise monetized, would generate ***well over $1.3 billion*** in additional value that could be used to compensate the Commonwealth's creditors. Ambac's counsel retained Christiansen Commercial Real Estate ("CCRE"), a leading Puerto Rico-based real estate and valuation expert, to perform a high-level evaluation of a selection of 81 publicly owned Commonwealth properties. CCRE's high-level analysis concluded that the approximate aggregate value of just those 81 properties is $1,363,488,500. (*See* Christiansen Decl. ¶ 11.)[15] These assets have significant untapped value that is available to the Commonwealth and should be considered to compensate creditors. Various means of tapping into that value are appropriately considered in structuring and evaluating a plan of adjustment, and discovery into the At-Issue Prioritized Commonwealth Entities' assets may yield additional information as to valuable Commonwealth properties.

25. Ambac's request for authorization to seek document discovery and deposition testimony from the At-Issue Prioritized Commonwealth Entities is narrowly focused, targeted to a subset of Commonwealth Entities that hold substantial real property or other assets but for which insufficient documentary evidence regarding such assets has been produced. Without the ability to evaluate the real property and other assets of the At-Issue Prioritized Commonwealth Entities, Ambac's ability to meaningfully evaluate the Commonwealth's plan of adjustment and, if needed, raise appropriate challenges thereto, will be stymied.

---

[15] "Christiansen Decl." refers to the Declaration of Ryan G. Christiansen submitted contemporaneously herewith.

## CONCLUSION

26. For these reasons, Ambac respectfully requests authorization to seek document discovery and deposition testimony from the At-Issue Prioritized Commonwealth Entities pursuant to Rule 2004 as set forth herein and consistent with the Proposed Order attached hereto as Exhibit A, and that Ambac be granted such other and further relief as is just and proper.

## CERTIFICATION

27. Undersigned counsel hereby certifies that, prior to the filing of this motion, they notified AAFAF's counsel of Ambac's intention to seek discovery from the At-Issue Prioritized Commonwealth Entities. Counsel to AAFAF has advised that it objects to Ambac's pursuit of the discovery sought hereby from the At-Issue Prioritized Commonwealth Entities.

## NO PRIOR REQUEST FOR RELIEF

28. No prior request for the relief requested herein has been made by Ambac to this or any other court.

| | |
|---|---|
| Dated: February 4, 2021<br>San Juan, Puerto Rico | **FERRAIUOLI LLC**<br>By: /s/ *Roberto Cámara-Fuertes*<br>Roberto Cámara-Fuertes (USDC-PR No. 219002)<br>Sonia Colón (USDC-PR No. 213809)<br>221 Ponce de León Avenue, 5th Floor<br>San Juan, PR 00917<br>Telephone: (787) 766-7000<br>Facsimile: (787) 766-7001<br>Email: rcamara@ferraiuoli.com<br>scolon@ferraiuoli.com<br><br>**MILBANK LLP**<br><br>By: /s/ *Atara Miller*<br>Dennis F. Dunne (admitted *pro hac vice*)<br>Atara Miller (admitted *pro hac vice*)<br>Grant R. Mainland (admitted *pro hac vice*)<br>John J. Hughes, III (admitted *pro hac vice*)<br>Jonathan Ohring (admitted *pro hac vice*)<br>55 Hudson Yards<br>New York, NY 10001<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br>Email: ddunne@milbank.com<br>amiller@milbank.com<br>gmainland@milbank.com<br>jhughes2@milbank.com<br>johring@milbank.com<br><br>***Attorneys for Ambac Assurance Corporation*** |

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com