# **EXHIBIT C**

# Milbank

**JOHN J. HUGHES, III**

*Special Counsel*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com  |  milbank.com

January 29, 2021

**VIA EMAIL**

| | |
|---|---|
| Margaret A. Dale, Esq. | Elizabeth L. McKeen, Esq. |
| Julia D. Alonzo, Esq. | Ashley Pavel, Esq. |
| Laura Stafford, Esq. | O'Melveny & Myers LLP |
| Proskauer Rose LLP | 610 Newport Center Drive, 17th Floor |
| Eleven Times Square | Newport Beach, CA 92660 |
| New York, NY 10036 | |

      Re:    <u>Commonwealth Assets & Cash Rule 2004 Requests</u>

Counsel:

      I write on behalf of Ambac[1] in connection with its Assets and Cash Rule 2004 Requests.

<u>Assets Rule 2004 Requests</u>

    ***(1) Category No. 1: Assets (current and transferred/encumbered)***

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

    ***Prioritized Commonwealth Assets.***  In its January 19 letter to Ambac and during the Parties' January 19 telephonic meet-and-confer (the "<u>January 19 Meet-and-Confer</u>"), AAFAF advised that it will: (i) investigate what materials related to Prioritized Commonwealth Assets associated with "independent corporations" are readily accessible; (ii) aim to complete that investigation by the end of January; and (iii) aim to produce any additional documents related to the Prioritized Commonwealth Assets by the end of January.  Additionally, during the January 19 Meet-and-Confer, AAFAF advised that, in reliance on the property-specific information regarding Prioritized Commonwealth Asset 10 provided by Ambac on January 11, AAFAF continues to investigate what materials related to that property are available and aims to complete its investigation by the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Joint Status Report of Ambac Assurance Corporation and the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Pursuant to the Court's December 7, 2020 Order* [ECF No. 15690] (the "<u>January 21 Joint Status Report</u>").

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 29, 2021

end of January. Ambac looks forward to receiving an update on these investigations during the Parties' forthcoming meet-and-confer on February 1.

*AAFAF Assets Review.* In its January 19 letter to Ambac, AAFAF advised that it has produced all certifications that the Real Property Valuation and Disposal Committee received in response to the November 2019 AAFAF memorandum, and that it continues to work with the Prioritized Commonwealth Entities to determine if those entities possess property lists or other documents similar to the certifications. AAFAF agreed in the January 21 Joint Status Report "to provide . . . any additional information it is able to obtain regarding the real property and other assets of the Prioritized Commonwealth Entities" by January 31, 2021. Ambac looks forward to receiving this information and requests an update on these issues during the Parties' forthcoming meet-and-confer on February 1.

*Ad Valorem Taxes / Tax Arrears.* In its January 19 letter to Ambac, AAFAF reiterated its agreement to work with CRIM to identify responsive materials related to CRIM's receivables, and advised that it continues to investigate whether any backup materials related to the 2017 third-party offer to purchase CRIM's tax arrears portfolio are available. AAFAF also advised that it is in the process of reviewing Ambac's January 11 requests regarding CRIM's tax arrears portfolio and will provide an update regarding its position on those requests upon completion of its review. Ambac requests an update on these issues.

During the January 19 Meet-and-Confer, AAFAF advised that it continues to investigate the availability of, and propriety of providing, documents responsive to Ambac's request for owner- and property-specific tax information. Ambac's review and analysis of the materials AAFAF produced on January 26, 2021, which purportedly includes spreadsheets of data from CRIM showing taxpayer-specific aging accounts receivable information for real and personal property taxes by municipality, is ongoing. However, Ambac requests confirmation that AAFAF has produced all documents it contends are responsive to Ambac's request for owner- and property-specific tax information or if additional productions are forthcoming.

Cash Rule 2004 Requests

*(1) Category Nos. 1 and 2: Presentation and Investigation Documents*

- *All documents relied upon in connection with the 'Summary of Cash Restriction Analysis' presentation, dated October 2, 2019 and the 'Bank Account Analysis: Status Update – June 30, 2019 Balances' presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
- *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

*Amended Disclosure Statement.* During the January 19 Meet-and-Confer, the Government Parties advised that they continue to investigate whether a more updated version of

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 29, 2021

the inventory of central government bank accounts produced on November 12, 2020 is available and that it would provide an update regarding that investigation soon. Ambac requests an update regarding this investigation.

During the January 19 Meet-and-Confer, the Parties also discussed Ambac's November 25, 2020 and January 11, 2021 requests for documents related to restrictions on nine categories of accounts that are identified in Exhibit J to the Amended Disclosure Statement and/or the December 2020 Presentation as containing restricted funds. The Government Parties have agreed to investigate Ambac's questions regarding those categories of accounts and to identify by Bates number all previously produced documents purportedly supporting restrictions on funds within those categories of accounts, which it advised it could do promptly for the categories of accounts identified by Ambac on November 25. Ambac requests an update regarding these investigations and when the Government Parties anticipate that it will be able to identify previously produced documents supporting restriction by Bates number.

Moreover, in light of the Board's clarification that the Amended Disclosure Statement constitutes an iteration of the cash restriction analysis,[2] Ambac requests production of back-up materials related to the portion of the Amended Disclosure Statement, including Exhibit J thereto, related to the Board's cash restriction analysis, including (without limitation) factual source materials and raw data underlying pages 104-114 of the Amended Disclosure Statement and Exhibit J. Additionally, Ambac requests that such materials be categorized by account consistent with the categorization done in connection with the factual source materials and raw data underlying the October 2019 Presentations that were previously produced. Ambac also requests any Calculation Back-Up documents related to the portion of the Amended Disclosure Statement concerning the Board's cash restriction analysis.

***October 30, 2020 Presentation.*** During the January 19 Meet-and-Confer, the Board advised that it is investigating the availability of factual source materials and raw data underlying pages 57-60 of the October 30, 2020 Presentation, and advised that it would consider Ambac's request that any such materials be categorized by account when produced. Ambac requests an update regarding the Board's investigation and whether it is willing to categorize any materials it produces in response to this request by account, consistent with the categorization done in connection with the factual source materials and raw data underlying the October 2019 Presentations that were previously produced.

Additionally, during the January 19 Meet-and-Confer, the Parties discussed Ambac's January 11 inquiry regarding the relationship between the October 30, 2020 Presentation and the December 2020 Presentation, both of which purport to measure the Commonwealth's cash as of June 30, 2020. The Board agreed to investigate this issue but requested that Ambac identify specific examples of differences between those two presentations. The differences Ambac has identified thus far between those two presentations include (without limitation) discrepancies regarding the: (i) total amount of cash and investments held by the Commonwealth; (ii) funds held by Commonwealth public corporations; (iii) "Adjusted Cash Balance as of 6/30/2020[;]" and (iv) "FY20 ending cash balance[.]" *Compare* October 30, 2020 Presentation at 57, *with* December

---

[2] *See Objection of the Financial Oversight and Management Board for Puerto Rico to Motion by Ambac Assurance Corporation for an Order Directing Cash Rule 2004 Discovery* (ECF No. 15495), at ¶ 7.

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 29, 2021

2020 Presentation at 7. By way of clarification, through this request Ambac seeks to understand whether the October 30, 2020 Presentation constitutes an independent iteration of the Board's cash restriction analysis, or whether it merely presented preliminary findings that were finalized in connection with the December 2020 Presentation.

*December 2020 Presentation.* During the January 19 Meet-and-Confer, the Board advised that it will produce back-up materials related to the December 2020 Presentation, including (without limitation) factual source materials and raw data underlying pages 7-18 and 38-43 of the December 2020 Presentation, as soon as possible. Ambac requests an update regarding when the Board anticipates that it will be able to produce these materials. Additionally, Ambac requests that these materials be categorized by account when produced, consistent with the categorization done in connection with the factual source materials and raw data underlying the October 2019 Presentations that were previously produced.

The Board also advised during the January 19 Meet-and-Confer that it is investigating Ambac's January 11 request for documents regarding why the Board, AAFAF, and/or their advisors contend that the $3.8 billion in CARES Act funds described in the December 2020 Presentation are restricted. Ambac requests an update regarding the Board's investigation.

Finally, Ambac's review and analysis of the Calculation Back-Up document related to the December 2020 Presentation that the Board produced on January 26 is ongoing, but Ambac requests confirmation that the Board has produced all Calculation Back-Up related to the December 2020 Presentation.

*October 30, 2020 Production.* During the Parties' telephonic meet-and-confer on November 2, 2020 (and as confirmed by the Board's November 16, 2020 letter), the Board advised that its October 30, 2020 production consisted of documents that had previously been withheld as privileged but were subsequently determined not to be privileged. In its November 16 letter, the Board advised that it had "removed" from its October 30 production "notations" on certain of the documents by its advisors because those notations were "akin to the [] Board's advisors' work papers[.]" After Ambac's November 25 and January 11 letters requested clarification as to whether those notations were being withheld on privilege grounds, the Board clarified in its January 22 letter that it is not asserting privilege over those notations, but again indicated that it removed the notations because they were "akin to the Oversight Board's advisors' work papers."

In light of the Board's acknowledgment that the notations are not privileged, it is unclear to Ambac why the Board removed those notations and has not yet produced the documents with the notations. The sole basis that the Board has asserted for removing the notations is that they are "akin to the Board's advisors' work papers." That is not a valid ground for refusing to produce complete copies of responsive and relevant documents. Please explain the Board's refusal to produce the documents with the notations on the basis that they are "akin to the Board's advisors' work papers."

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 29, 2021

> **(2) Category No. 4: Document Key**
>
> - *A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (i.e., Bates numbers).*

During the January 19 Meet-and-Confer, the Parties discussed Ambac's request for a "key" that maps the various account identifiers used across each iteration of the cash restriction analysis, and the Board advised that two sets of account identifiers were implemented: (1) those implemented by Duff & Phelps in connection with the Duff & Phelps Report; and (2) those implemented by Ernst & Young in connection with the October 2019 Presentations, Amended Disclosure Statement, and December 2020 Presentation.

As the Board recommended, Ambac endeavored to map these two sets of account identifiers by relying on various documents that include full account numbers and either the Duff & Phelps or Ernst & Young account identifiers, particularly Ambac_Cash_2004 0009089 ("master database" for the Duff & Phelps report) and Ambac_Cash_2004 0092818 (Exhibit J to the Amended Disclosure Statement). However, Ambac has been unable to map many accounts because the accounts included in these documents are inconsistent. For instance, Ambac_Cash_2004 0092818 contains full account numbers and Ernst & Young account identifiers for only approximately 530 accounts, whereas Ambac_Cash_2004 0009089 contains full account numbers and Duff & Phelps account identifiers for over 1900 accounts. Ambac has also attempted to rely on other documents to further this mapping exercise, including Ambac_Cash_2004 0092819 (Calculation Back-Up for the October 2019 Presentations), but that document does not include full account numbers and, instead, lists the last four digits of each account number. Relying on the last four digits of each account number has not proven to be an effective means of mapping accounts, as it is not uncommon for multiple accounts to have the same last four digits.

In light of the foregoing, Ambac renews its request for a "key" identifying the full account numbers for all accounts reviewed in connection with each iteration of the cash restriction analysis and both the Duff & Phelps and Ernst & Young account identifiers used to refer to any such accounts across the various iterations of the cash restriction analysis.

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
January 29, 2021

Very truly yours,

/s/ *John J. Hughes, III*
John J. Hughes, III


cc: Grant Mainland
 Atara Miller
 Martin A. Sosland
 Robert S. Berezin
 William Natbony
 Nicholas A. Bassett
 John E. Mudd
 Geoffrey S. Stewart