# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 13938, 14051, 14118, 15278**<br><br>(Jointly Administered) |
| SUIZA DAIRY CORP.,<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Respondent. | |

**JOINT STATUS REPORT OF THE COMMONWEALTH OF PUERTO RICO AND SUIZA DAIRY CORP IN CONNECTION WITH SUIZA DAIRY CORP'S <u>URGENT MOTION REQUESTING COMFORT ORDER</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Building Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5523-LTS). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth" or "Debtor") and Suiza Dairy Corp. ("Movant" or "Suiza"), respectfully submit this joint status report in response to the Court's *Order Requiring Status Report In Connection with Urgent Motion of Suiza Diary Corp. Requesting a Ruling or Entry of Comfort Order* [ECF No. 15278] (the "Status Report Order").[2]

## I. PROCEDURAL BACKGROUND

1. On August 13, 2004, Movant and Vaquería Tres Monjitas ("Vaquerías" and together with Movant, the "Processors") commenced an action captioned *Vaqueria Tres Monjitas, Inc., v. Secretary of Agriculture*, Civil Case No. 04-1840 (the "Prepetition Action"), in the United States District Court for the District of Puerto Rico (the "District Court"), against the Secretary of the Department of Agriculture for the Commonwealth and the Administrator of the Office of Regulation of the Milk Industry ("ORIL") seeking, among other relief, declaratory and injunctive relief in connection with the Commonwealth's alleged regulatory taking of Movant's property through the implementation of certain laws and regulations governing the milk industry in Puerto Rico. The Processors alleged that Puerto Rico's regulatory scheme had deprived them of a reasonable rate of return and impermissibly favored milk produced by a third processor, Industria Lechera de Puerto Rico Inc. ("Indulac"), in violation of the Takings, Due Process, Equal Protection, and Commerce Clauses of the United States Constitution.

2. On October 29, 2013, the Processors, the Secretary of the Department of Agriculture, the Administrator of ORIL, and the Commonwealth through the Secretary of Justice of the Commonwealth entered into a *Final Settlement Agreement and Memorandum of*

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtor's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Urgent Motion on behalf of the Debtor.

2

*Understanding Between the Parties* (the "Prepetition Settlement Agreement"), which, among other things, provided for the settlement of all matters pending in the Prepetition Action and the enactment and enforcement of certain regulations regarding the milk industry . *See* ECF No. 2322 of Case No. 04-1840.

3. On November 6, 2013, the District Court entered the *Order and Judgment* (as amended on November 7, 2013, the "Judgment") incorporating the Prepetition Settlement Agreement. *See* ECF No. 2347 and 2351 of Case No. 04-1840.

4. The Prepetition Settlement Agreement, as incorporated in the Judgment, provides that raw milk is the "whole milk secretion, excluding the colostrum, which is obtained by milking one or more healthy cows, which have not yet been subjected to any processes." *See Prepetition Settlement Agreement* at 2. On the other hand, fresh milk refers to milk that has been "pasteurized and homogenized by the processors and is classified within the fluid milk category." *Id.*

5. On July 10, 2020, the Administrator of ORIL issued Administrative Order 2020-22 (the "Administrative Order"), which provided, among other things, interpretation that surplus milk was not raw milk produced in excess of fresh milk demand, but in excess of fluid milk demand.

6. On July 23, 2020, Movant filed with ORIL a motion to reconsider the Administrative Order pursuant the Puerto Rico Uniform Administrative Procedures Act. On August 4, 2020, ORIL granted the review of the motion for reconsideration. (the "ORIL Administrative Process").

7. That same day, on August 4, 2020, Movant filed a *Petition for Judicial Review* before the Puerto Rico Court of Appeals, pursuant to the Puerto Rico Uniform Administrative Procedures Act, seeking a determination that the Administrative Order is null and void (the "Appeal").

8. On August 3, 2020, Movant filed the *Urgent Motion Requesting A Ruling Or Entry Of Comfort Order As To The Non-Applicability Of The Automatic Stay To A Limited Controversy With The Commonwealth Of Puerto Rico Arising Post-Petition And Having Post-Petition Effects But Partially Based On A Pre-Petition Judgment Incorporating Milk Regulations Established By The United States District Court For The District Of Puerto Rico And Not Involving Property Of The Debtor Or Its Estate* [ECF No. 13938] (the "Motion for Comfort Order") requesting that the Court enter a "ruling or comfort order finding that *Suiza* is not acting in contravention of the automatic stay provisions […] nor is attempting to exercise control over or obtain possession over property of the estate in pursuing" a potential legal action to challenge the Administrative Order issued by the Administrator of ORIL. *Motion for Comfort Order* at 9.

9. Through the Motion for Comfort Order, Movant seeks permission to reopen the Prepetition Action to enforce the Prepetition Settlement Agreement in connection with ORIL's alleged postpetition breach of the Prepetition Settlement Agreement through the issuance of Administrative Order, which Movant asserts is contrary to certain terms and conditions set forth the Prepetition Settlement Agreement. Further, Movant seeks a determination that the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") does not apply to such action to enforce the Prepetition Settlement Agreement, asserting that it is not seeking to enforce a claim against the Commonwealth. *Motion for Comfort Order* at 9.

10. On August 27, 2020, the Debtor filed its objection to the Motion for Comfort Order [ECF No. 14118] (the "Objection"). In the Objection, the Debtor also argued that the Motion for Comfort Order should be denied because the automatic stay applies to Movant's enforcement of the Prepetition Settlement Agreement because Movant's asserted right to equitable relief to enforce the Prepetition Settlement Agreement is a "claim" pursuant to section 101(5) of the

4

Bankruptcy Code since the Commonwealth's purported breach of the Prepetition Settlement Agreement would be reduced to a right to payment. *Objection* at 6. Moreover, the Debtor argued that Movant had failed to show "cause" exists to modify the automatic stay. *Id*.

11. On September 9, 2020, Movant filed its reply to the Objection [ECF No. 14198] (the "Reply").

12. On January 25, 2021, this Court entered the Status Report Order, directing the parties "to submit a joint status report… addressing the status of the Administrative Proceedings, and any other administrative or regulatory review process Suiza has pursued with respect to Administrative Order 2020-22." *Status Report Order* at 2.

## II. STATUS OF THE ADMINISTRATIVE PROCEEDINGS

13. On October 22, 2020, the Puerto Rico Court of Appeals issued an opinion and order in the Appeal, declaring that the Administrative Order was null and void (the "Court of Appeals Judgement"). The Puerto Rico Court of Appeals concluded that the issuance of the Administrative Order failed to comply with the procedures and requirements set forth in the Puerto Rico Uniform Administrative Procedures Act. Specifically, the Court of Appeals concluded that the Administrative Order is a legislative regulation, and not an interpretive ruling, as contended by ORIL, and as a legislative regulation, it had to comply with the strict rule making process established by the Puerto Rico Uniform Administrative Procedures Act 3. *See* LPRA §§ 9611-9621.

14. On November 23, 2020, ORIL filed a writ of certiorari with the Supreme Court of Puerto Rico to review the Court of Appeals Judgment, which was denied on January 22, 2021. Accordingly, the Court of Appeals Judgment is final and unappealable.[3]

---

[3] As a result of the Court of Appeals Judgment, the motion for reconsideration before ORIL (Motion for Comfort Order, Exhibit II, ECF No. 1938-3) became moot.

### III. SUIZA'S POSITION

15. Notwithstanding the resolution of the Administrative Proceedings concerning Administrative Order 2020-22, ORIL continues to periodically violate the judgment to favor Indulac and others, most recently through Administrative Order 2020-34 (with identical practical effect as Order 2020-22) and other acts.

16. Because of this, Suiza's petition for a comfort order to seek non-monetary enforcement of a pre-petition judgment in case 04-1840 (the "Judgment") with no financial consequences for the debtor does not become moot. *See, United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203 (1968) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.") *See also, Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 170 (2000) ("[I]t is the plaintiff's burden, in a lawsuit brought to force compliance, to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue and that the threatened injury is certainly impending.") That is precisely the case here. ORIL's violation of the pre-petition judgment is continuous and the threatened injury to Suiza is impending. ORIL continues to be the same biased, rogue agency in need of federal intervention that it was in 2004 when the taking's Judgment case began.

#### A. Administrative Order 2020-34

17. In anticipation of the expected nullity declaration of Administrative Order 2020-22, on September 30, 2020, Mr. Jorge A. Campos Merced, as Administrator of the Office of Regulation of the Milk Industry (Spanish acronym "ORIL"), issued Administrative Order 2020-34, in a new attempt to amend the established regulatory scheme, by establishing raw milk projections for 2020-2021, and ordering delivery of raw milk to the balance plant Indulac that is

needed by Suiza, and pays a higher price for it than Indulac, supposedly to guarantee the "normal operation of the industry". (translation ours) See, Exhibit I[4]. In doing so, ORIL transferred eight raw milk producing farms to Indulac, five of which were originally under contract with Suiza.

18. By giving Indulac milk that the fresh milk processors need, Administrative Order 2020-34 illegally changed the "balance plant" nature of Indulac contemplated in the pre-petition judgment Suiza seeks to enforce. As a result, it places Indulac in square competition with Suiza by receiving raw milk that Suiza could use, and moreover at a lesser price than that paid by Suiza. As with Administrative Order 2020-22, the net result is that Suiza's business operations are suffering under the unilateral and illegal action undertaken by ORIL. On October 30, 2020, Suiza filed a Petition for Review of Administrative Order 2020-34 before the Puerto Rico Court of Appeals, which is still pending resolution.

19. Under the statutory and regulatory scheme prior to the issuance of the Administrative Orders 2020-22 and 2020-34, Indulac had no access to milk until the same became lawfully surplus, that is, until the fresh processors demand was satisfied. Administrative Order 2020-34 unlawfully alters the established and accepted distribution order in violation of the Judgment. Suiza intends to correct ORIL's illegal conduct by seeking enforcement of said Judgment in federal court.

**B. ORIL's Violations of the Pre-Petition Judgment as Arises From Its Report of Findings**

20. On February 8, 2021, ORIL held a public hearing as required by law to address the milk pricing order. During said hearing, ORIL based its position in a report of findings concerning the audits to the different components of the milk industry (Informe de Hallazgos de las Auditorías de los Componentes de la Industria Lechera de Puerto Rico para el Año 2016 Actualizado 2018)

---

[4] A Certified translation of Administrative Order 2020-34 will be filed within 15 days.

7

("Report of Findings"). Based on said document, ORIL has violated and continues to violate the pre-petition judgment as follows:

    a. **Biased Interpretation of Regulation 12:** The Report of Findings purports to cite parts of Regulation 12 that is part of the Judgment to inform its evaluation of the processing plants' regulated financial statements for 2016. However, ORIL presents an incorrect and misleading representation of the definitions and procedure laid out by Regulation 12, in certain cases omitting important aspects of the definition of certain expense accounts to an extent which results in significant financial implications. ORIL also uses an outdated version of Regulation 12;

    b. **Use of Stale Data:** For a price review which is set to take place during February 2021, ORIL uses 2016 financial information and attempts to update that information only through 2018 using a method that is not explained and with numbers that are inconsistent with the results. The Preliminary Injunction (Dkt. 480 of Civil Case 04- 1840) provides that stale data cannot be used in the regulatory process, as to do so constitutes "arbitrary" regulatory practice.2 Regulated financial data for 2017 and 2018 has been available (it was filed in previous years, before ORIL hired the current auditor) and data from 2019 was delivered to ORIL recently, thus rendering the 2016 regulated financial data obsolete and stale;

    c. **Use of Incorrect Data**: ORIL uses an outdated version of the stale 2016 regulated financial statements. Since the original presentation of its 2016 financial statements, which is used by ORIL in the Report of Findings, Suiza has made some adjustments for better compliance with Regulation 12 that were provided to ORIL and its auditor. The most updated version of the 2016 regulated financial statements was presented to ORIL's auditor on July 15, 2020 in Excel format to facilitate the auditor's job. ORIL and its auditor had more than six months to correct the data but they did not do so. Other amounts and volumes used in the Report of Findings do not match Suiza's record

of such amounts nor the record which was presented to ORIL, including sales volumes and regulatory accrual collected;

d. **Discriminatory, Irrational, and Nonscientific Disallowances to Regulated Costs**: ORIL disallows nearly $16 million of the operating costs presented by the processing plants and includes no description of the specific calculations conducted to determine the costs disallowed in each expense account. Several of the disallowances proposed by ORIL in the Report of Findings mirror disallowances ORIL has attempted to make in the past which have been struck down by the federal court, however a full analysis of the disallowances cannot be completed without more information than is presented in the Report of Findings. Unless ORIL can provide rational and scientific reasons based in Regulation 12 for its individual disallowances, these disallowances are arbitrary, and their application without the justification of Regulation 12 is not in compliance of the Judgment; and

e. **Adjustments to the Regulated Equity which Violate the Sentence**: ORIL attempts to subtract the regulatory accrual collected by the processing plants from the regulated equity used in the margin calculation; not only a blatant noncompliance of the Judgment but one which flagrantly goes against the very purpose of the regulatory accrual. ORIL also attempts to adjust Suiza's assets and liabilities in a way that decreases Suiza's regulated equity without providing any supporting information. ORIL (and its auditor) attempt to change the equity adopted by the federal court in its Judgment.

### C. Applicability of 11 U.S.C. §362(a)(2)

21. In its Motion for Comfort Order Suiza is not seeking "enforcement of the judgment" for the purpose of obtaining possession or control of property of the debtor or of its estate, nor collecting on the same on account of a prepetition debt. It is solely and exclusively seeking to uphold the dignity of the court and maintain the *status quo* as to the provisions of the Judgment by filing an action for civil contempt. See, *U.S. Sprint Communications v. Buscher,* 89

9

B.R. 154, 155 (D.Kan.1988) (noting that the automatic stay does not apply to contempt proceedings where the main purpose is to punish a contemnor and uphold the dignity of the court); *In re Rook,* 102 B.R. 490, 494–95 (Bankr.E.D.Va.1989) (holding that the automatic stay did not apply to a second contempt order which was issued solely to uphold the dignity of the circuit court's prior orders); *Stovall v. Stovall,* 126 B.R. 814, 815 (Bankr.N.D.Ga.1990) (noting that if the purpose of the contempt order is to uphold the dignity of the court, the civil contempt order may be excepted from the automatic stay of § 362(a)).

22. As the court may ascertain, Suiza's petition is strictly limited to avoid the unjustified variations of the terms and conditions of the judgment in a unilateral manner by the Commonwealth, acting through ORIL. *Cf. In re Clowser,* 39 B.R. 883, 886 (Bankr.E.D.Va.1984) ("Although section 362 is a shield to protect the debtor to provide for a 'fresh start', the automatic stay was not intended by Congress to be used as a sword.") The arguments raised in Suiza's Motion for Comfort Order and its Reply (D.E. 14198) are incorporated into this motion by reference.

23. As stated above, Suiza would not be seeking payment of any kind but, furthermore, a federal court may not award damages against the Commonwealth because of the limitations imposed by the Eleventh Amendment. *See Ezratty v. The Commonwealth of Puerto Rico*, 648 F. 2d 770 (1st Cir. 1981). Moreover, the Administrative Order 2020-34 would cause damages to Suiza in the form of shortage of the raw milk it needs for its normal operation. Contrary to the Commonwealth's assertion, said damages do not give rise to a claim for payment from the Government (which is constitutionally precluded anyway) but to the enforcement of the injunctive relief already granted in the Judgment. As we have said, Suiza wants the government to regulate

the industry as provided in the Judgment. A judicial order to that effect does not compromise the finances of the Commonwealth in any way.

24. In light of the above, it is readily apparent that Suiza is not in contravention of Section 362(a)(2) by seeking to maintain the non-monetary *status quo* in the federal Judgment obtained in its favor.

### D. Suiza's Conclusion

25. Suiza reiterates its request for a comfort order before initiating a proceeding with the sole purpose of enforcing the Judgment and its regulations against the Commonwealth of Puerto Rico in connection with Administrative Order 2020-34 and other acts. Specifically, Suiza seeks a ruling from this Court order holding that the events giving rise to Suiza's enforcement action constitute post-petition events, with post-petition effects, in connection with a pre-petition federal judgment.

### IV. COMMONWEALTH'S POSITION

26. Given the Court of Appeals Judgment, the Debtor asserts the Motion for Comfort Order should be dismissed as moot. It is well settled that "in the absence of an actual controversy, federal courts cannot issue advisory opinions." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 638, 646 (1st Cir. 2019 (quoting *Golden v. Zwickler*, 394 U.S.103, 108, 89 S. Ct. 956, 22 L.Ed.2d 113 (1969). Movant seeks in the Motion for Comfort Order relief to enforce the Prepetition Settlement Agreement in the Prepetition Action "in order to stem the substantial damages that will be suffered by the implementation of [the] Administrative Order by ORIL." *Motion for Comfort Order* at 4. Since the Administrative Order was declared null and void, and cannot be implemented, Movant does not need to enforce the Prepetition Settlement Agreement in the Prepetition Action to "*maintain the status quo*." *Reply* at 4. Further, Movant never complied with the Administrative Order. Therefore, the Administrative Order had no impact on Suiza's

11

operations, and much less caused any damages. *See Shell Oil Co. v. Noel*, 608 F.2d 208 (1st Cir. 1979) (holding "there is no "actual controversy" nor "case or controversy" within the scope of the United States Constitution Article III, where there was no showing that defendants intended to enforce the Act, and where defendants, in fact, disclaimed any authority to do so.").

27. Movant now asserts the Motion for Comfort Order is not moot because Administrative Order No. 2020-34 issued by ORIL and the Report of Findings (as defined below) (collectively, the "Additional Administrative Actions") violate the Prepetition Settlement Agreement. On September 30, 2020, the Administrator of ORIL issued Administrative Order No. 2020-34, pursuant to which ORIL projected 200 million quarts of raw milk production for fiscal year 2020-2021 commencing on October 1, 2020. Because such volume was lower than the actual production of prior years, pursuant to Act 34 (PR Laws Ann., tit. 5, Sec. 1096(b)(4)) and Regulation 8657, Section 8, and the information available to ORIL at the time, the Administrator made raw milk volume assignments to ensure normal operations for each of the processors during the fiscal year. On or about October 9, 2020, Movant filed a petition for judicial review before the Puerto Rico Court of Appeals challenging Administrative Order No. 2020-34. On or about November 30, 2020, ORIL filed its reply. Other parties have intervened in the matter. A judgment by the Court of Appeals is pending.

28. Furthermore, under ORIL's price setting procedures, ORIL publishes a report on its findings (the "Report of Findings") regarding all sectors of the milk industry, holds a hearing in connection with, and allows parties to submit oral and written comments to, the Report of Findings, and subsequently issues a final order responding to comments received. The Report of Findings is not yet final, and parties may still submit comments to the Report of Findings for a period of 30 days after the hearing. Following the issuance of a final order by ORIL, parties may

challenge the final order in a similar manner as the challenge to Administrative Order No. 2020-22 before the Puerto Rico Court of Appeals.

29. To the extent Movant asserts the Motion for Comfort Order is not moot because of the pending Additional Administrative Actions, the Court should hold in abeyance any decision on the Motion for Comfort Order pending the Court of Appeals' decision in connection with Movant's petition for judicial review of the Additional Administrative Actions and any related appeals and the disposition of any administrative challenges to the Report of Findings.

30. To the extent this Court decides to address the Motion for Comfort Order on the merits, or with respect to Movant's newly-asserted claims with respect to the Additional Administrative Actions, the Commonwealth reiterates that the remedy requested therein should be denied because the automatic stay applies to the enforcement of the Prepetition Settlement Agreement.[5] As described in greater detail in the Objection, contrary to Movant's argument that the automatic stay does not apply because it is not seeking any monetary relief, a "claim" pursuant to Bankruptcy Code section 101(5) encompasses any "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . ." 11 U.S.C. § 101(5). The crux of Movant's claim is the alleged economic injury that the implementation of the Administrative Order, or the Other Administrative Actions, would cause to Movant. Movant cannot deny that any damages it would suffer from the implementation of the Administrative Order, or the Other Administrative Actions, could and will probably give rise to a right to payment, notwithstanding that Movant is electing to pursue equitable relief.

31. Accordingly, Movant's asserted right to equitable relief to enforce the Prepetition Settlement Agreement is a "claim" pursuant to section 101(5) of the Bankruptcy Code, subject to

---

[5] The Debtor incorporates herein in its entirety the legal arguments as set forth in the Objection.

the automatic stay, because the purported breach of the Prepetition Settlement Agreement can be reduced to a right to payment. *See CRS Steam, Inc. v. Engineering Res. Inc.*, (*In re CRS Steam, Inc.*), 225 B.R. 833, 841 (Bankr. D. Mass. 1998) ("Where the usual alternative right to payment exists, a claim is present even though, as here, an injunction has already issued."); *Rederford v. US Airways, Inc.*, 589 F.3d 30 (1st Cir. 2009) (holding the fact that equitable relief was available did not save claim form being discharged because equitable claim for reinstatement could give rise to a right to payment).

32. Movant's second argument is that the automatic stay does not apply to the enforcement of the Prepetition Settlement Agreement because the issuance of the Administrative Order and the Other Administrative Actions occurred postpetition. However, courts have consistently held that post petition breaches of prepetition agreements give rise only to prepetition claims. *In re Riodizio, Inc.*, 204 B.R. 417, 424 n.6 (Bankr. S.D.N.Y. 1997) ("The postpetition breach of a prepetition contract gives rise only to a prepetition claim." (citations omitted)); *In re Chateaugay Corp.*, 102 B.R. 335, 351 (Bankr. S.D.N.Y. 1989) ("where the debtors' obligations stem from contractual liability, even a postpetition breach will be treated as giving rise to a prepetition liability where the contract was executed prepetition." (citation omitted)); *see also Ralls v. Docktor Pet Ctrs.*, 117 B.R. 420 (D. Mass. 1995) (holding that the action "involving pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter related to a case arising under title 11."). Accordingly, Movant seeks to enforce a potential prepetition claim arising from the Prepetition Settlement Agreement, which is subject to the automatic stay pursuant to Bankruptcy Code section 362.

### Notice

33. The Debtor and Movant have provided notice of this motion in accordance with the Case Management Procedures to the following parties: (a) the Office of the United States Trustee

for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims against the Debtor; (d) counsel to the statutory committees appointed in these Title III cases; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) counsel to the Oversight Board; (g) the Puerto Rico Department of Justice; (h) the Other Interested Parties;[6] and (i) all parties filing a notice of appearance in these Title III cases. A copy of the motion is also available on the Debtor's case website at https://cases.primeclerk.com/puertorico/.

34. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Left Intentionally Blank*]

---

[6] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtor; and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtor.

Dated: February 18, 2021
San Juan, Puerto Rico

Respectfully submitted,

**DOMINGO EMANUELLI HERNÁNDEZ**
Secretary of Justice

*/s/Susana Peñagaricano-Brown*
**SUSANA PEÑAGARÍCANO-BROWN**
USDC-PR No. 219907
Deputy Secretary in Charge of Litigation
Department of Justice of Puerto Rico
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Email: spenagaricano@justicia.pr.gov
Phone: Phone: (787)721-2900, ext. 1404

*Attorneys for the Commonwealth of Puerto Rico*

[*Remainder of Page Left Intentionally Blank*]

REICHARD & ESCALERA, LLC
*/s/ Rafael Escalera Rodríguez*
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

*/s/Sylvia M. Arizmendi*
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/Fernando Van Derdys
Fernando Van Derdys
USDC-PR 201913
fvander@reichardescalera.com

*/s/ Alana Vizcarrondo-Santana*
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

*Attorneys for Suiza Dairy Corp.*