UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF<br>THE GOVERNMENT OF THE COMMONWEALTH<br>OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-03566 (LTS) |

ORDER ON MOTION TO STRIKE FAITH DECLARATION AND ACCOMPANYING EXHIBIT

This matter is before the Court on the *Committees' Motion to Strike Declaration*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*of John Faith and Accompanying Exhibit from the Motion of the Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding* Ultra Vires *Challenge* (Docket Entry No. 14978 in Case No. 17-3283, Docket Entry No. 1000 in Case No. 17-3566,[2] the "Motion to Strike").  Through the Motion to Strike, the Committees seek to strike the Declaration of John Faith (Docket Entry No. 977-10, the "Faith Declaration") on behalf of the Depository Trust Company ("DTC") and Cede & Co. ("Cede"), and an exhibit attached to the Faith Declaration, that the parties refer to as the 2002 DTC Operational Arrangements (the "DTC Operational Arrangements" or the "Exhibit").  The Committees move to strike on the grounds that the Fiscal Agent failed to disclose Mr. Faith and/or DTC or Cede as potential witnesses, and did not previously produce the Exhibit, as required by Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure.  After careful consideration of the parties' submissions,[3] and for the reasons explained below, the Motion to Strike is granted in part and denied in part.  Specifically, the second sentence of paragraph 10 of the Declaration, in which Mr. Faith purports to describe the state of knowledge of DTC, will be stricken, as the Committees have not had the

---

[2]   Unless otherwise specified, docket entry references herein shall be to Case No. 17-3566.

[3]   In addition to the Motion to Strike, the Court has thoroughly reviewed the *Response of the Bank of New York Mellon, as Fiscal Agent, to Committees' Motion to Strike Declaration of John Faith and Accompanying Exhibit from the Motion of the Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding* Ultra Vires *Challenge* (Docket Entry No. 15201 in 17-3283, Docket Entry No. 1022 in 17-3566, the "Opposition"); the *Declaration of C. Neil Gray in Support of Response of the Bank of New York Mellon, as Fiscal Agent, to Committees' Motion to Strike Declaration of John Faith and Accompanying Exhibit from the Motion of the Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding* Ultra Vires *Challenge* (Docket Entry No. 15203 in 17-3283, Docket Entry No. 1024 in 17-3566, the "Gray Declaration"), and the *Committees' Reply in Support of the Motion to Strike Declaration of John Faith and Accompanying Exhibit from the Motion of the Bank of New York Mellon, as Fiscal Agent, for Summary Judgment Pursuant to Fed. R. Civ. P. 56 Regarding* Ultra Vires *Challenge* (Docket Entry No. 15331 in Case No. 17-3283, Docket Entry No. 1040 in Case No. 17-3566, the "Reply").

opportunity to challenge this conclusory assertion which, in any event, addresses the ultimate issue to be decided by the Court. The remainder of the Declaration primarily relates to ministerial matters which, along with the Exhibit, have been disclosed through discovery. Therefore, the Motion to Strike is otherwise denied.

## BACKGROUND

In connection with its motion for summary judgment, the Fiscal Agent offered the Faith Declaration and DTC Operational Arrangements in support of its UCC § 8-202(b) defense that, even if the ERS Bonds were ultra vires, they were valid once in the hands of Cede as a purchaser without notice of a defect going to the validity of the bonds. It is undisputed that Cede, as nominee of DTC, has been the registered owner of the ERS Bonds since their issuance. Mr. Faith is the managing director of the parent company of DTC and made his Declaration on behalf of DTC and Cede. (See Faith Decl. ¶¶ 1-2.) In seeking to strike the Faith Declaration and the DTC Operational Arrangements, the Committees argue that the evidence is crucial to the Fiscal Agent's summary judgment argument that "Cede & Co. is a purchaser for value and was without notice of the ERS Bonds' defect when it became the registered owner of the ERS Bonds" and that "[b]y failing to disclose its only witness, Mr. Faith, and by failing to produce the key document Mr. Faith relies upon, the Fiscal Agent effectively hid its entire case[.]" (Motion to Strike ¶ 19 (citing *Motion of the Bank of New York Mellow, as Fiscal Agent, for Summary Judgment pursuant to Fed. R. Civ. P. 56 regarding* Ultra Vires *Challenge*, Docket Entry No. 976 at 9-24).) For the reasons detailed herein, these arguments are unavailing.

### The Faith Declaration and Exhibit

The Faith Declaration provides general background information concerning services performed by DTC, DTC's relationship with Cede, and how DTC refers to the DTC

Operational Arrangements in the "DTC underwriting process" to determine which securities meet DTC's eligibility requirements to become "Eligible Securities." (See Faith Decl. ¶¶ 6-7.) In his Declaration, Mr. Faith describes the three series of ERS Bonds that Cede holds as nominee of DTC and the acceptance of the bonds as "Eligible Securities." (See id. ¶¶ 5-9.) He attaches as Exhibit A the 2002 DTC Operational Arrangements, which were in effect at the time the ERS Bonds were each approved as "Eligible Securities." (Id. ¶¶ 11-12.) Mr. Faith does not describe the content of the DTC Operational Arrangements, stating only that it "is a DTC business record maintained in the ordinary course of business and was filed with the U.S. Securities and Exchange Commission." (Id. ¶ 12.) Mr. Faith provides no analysis of the rights and obligations of DTC or Cede, nor does he provide any arguments in connection with the pending motions for summary judgment. Mr. Faith does not provide any information unique to him personally as opposed to any other representative of DTC or Cede.[4] He does, however, state, that "DTC has recently been informed that certain parties have argued that the ERS Bonds were issued without proper authority," and aver, without proffering any foundation or further elaboration, that "DTC was not aware of any such matters at the time the ERS Bonds were issued." (Id. ¶ 10.)

Disclosures During Discovery

It is undisputed that the Fiscal Agent did not specifically identify Mr. Faith, DTC, or Cede as a person with knowledge in its Initial Disclosures, nor did the Fiscal Agent produce the Exhibit in response to any discovery requests. Nevertheless, the record reflects that the facts

---

[4] Since none of the case-related information proffered in the Declaration is personal to Mr. Faith, the Fiscal Agent has only addressed whether Cede & DTC were disclosed during discovery, and not whether Mr. Faith's identity was disclosed. Given the nature of the averments, the Fiscal Agent's analysis is appropriate.

disclosed in the Faith Declaration, and the Exhibit itself, were disclosed to the Committees during the discovery period, and that the issues raised therein were well known.

The fact that the Fiscal Agent, like the ERS Bondholders, is asserting a bona fide purchaser defense pursuant to UCC § 8-202 has been known for a significant period of time. For example, on October 25, 2019, the Fiscal Agent filed its *Joinder to the Response of Certain Secured Creditors to the Omnibus Claim Objections of the Official Committee of Unsecured Creditors and the Official Committee of Retired Employees of the Commonwealth of Puerto Rico* (Docket Entry No. 689, the "Joinder"). Therein, the Fiscal Agent expressly stated that Cede, as nominee of DTC, was the registered owner of the ERS Bonds, and that the Fiscal Agent was taking the position that the ERS Bonds were valid and enforceable in the hands of Cede pursuant to UCC § 8-202. (See Opposition ¶ 8.)

One week later, the Fiscal Agent served its Initial Disclosures. (See id. ¶ 10.) Despite having identified its UCC § 8-202 defense, the Fiscal Agent's Initial Disclosures did not specifically list Cede or DTC as a party likely to have discoverable information, nor did it identify the DTC Operational Arrangements. (Motion to Strike, Exhibit 1, the "Initial Disclosures," at 4-7.) The Fiscal Agent did include in the Initial Disclosures a statement "incorporat[ing] by reference any witnesses who may be identified by the Creditors' Committee, the Retiree Committee, or any other party in interest to this proceeding during the course of discovery in this proceeding[,]" and "all documents produced or identified by the Creditors' Committee, the Retiree Committee, or any other party in interest to this proceeding during the course of discovery in this proceeding." (Id. at 6-7.) In addition, the Initial Disclosures identified as a category of documents the "Resolution and related bond transaction documents, including but not limited to, all supplements to the Resolution" and "[d]ocuments sufficient to

show the registered holder(s) of all ERS bonds offered pursuant to the Resolution." (Id. at 7.) At no point did the Fiscal Agent supplement its disclosures.

The expert witness retained by the ERS Bondholder Group with respect to the ultra vires issues, Dr. William Bartley Hildreth, both identified Cede as the owner of the ERS Bonds and relied upon the 2002 DTC Operational Arrangements in his expert report dated July 1, 2020. (See Opposition ¶¶ 10, 13-14; Gray Decl. ¶¶ 25-26.) In particular, but without limitation, Dr. Hildreth cited to that portion of the DTC Operational Arrangements on which the Fiscal Agent relies in its motion for summary judgment. Thus, Dr. Hildreth averred:

> DTC states that it '. . . does not in any way undertake to, and shall not have any responsibility to, monitor or ascertain the compliance of the transactions in the [DTC eligible] Securities with . . . any other local state, federal laws or regulations thereunder.' [DTC Operational Arrangements Necessary for an Issue to Become and Remain Eligible for DTC Services, February 2002, Section A.7.b.]

(Docket Entry No. 974, Decl. of Dr. W. Bartley Hildreth (the "Hildreth Decl."), Exhibit 1 (the "Hildreth Rep.") ¶ 153.) Dr. Hildreth also included the 2002 DTC Operational Arrangements in his list of references in his Report. (See Gray Decl. ¶ 27.) The Committees deposed Dr. Hildreth but did not question him concerning Cede's knowledge of a defect in the validity of the ERS Bonds. (See Opposition ¶ 16 (citing Gray Decl. ¶ 32).) The Committees also had an opportunity to request documents cited in the Hildreth Report but chose not to make any such requests. (See id. ¶ 15.)

The Fiscal Agent identified DTC and Cede in several of its written discovery responses, and explicitly identified Cede, as nominee for DTC, as the registered owner of all the Bonds. (See Opposition ¶ 12.) DTC and Cede were also referenced in other documents exchanged in discovery and by witnesses who were deposed during discovery, including the Committees' own expert, Robert Doty. (See id. ¶ 17; Gray Decl. ¶ 33.) For example, Mr. Doty

testified that Cede is the designee of DTC and is "shown as the owner of the bonds for purposes of facilitating electronic trading." (See Gray Decl. ¶ 33(g)(v), (h) (citing Doty Dep. 51:7-19).) The DTC Operational Arrangements document was also referenced in other documents that were produced in discovery. (See Opposition ¶ 17(d).)

In response to various requests for documents, interrogatories and requests for admissions, the Fiscal Agent objected to providing information that was publicly available. (See Opposition ¶¶ 11-12.) This position was never challenged by the Committees. The DTC Operational Arrangements were filed with SEC and were publicly available. (Id. ¶ 11.)

Additional facts will be provided below as appropriate.

## DISCUSSION

A. Standard of Review

Rule 26(a)(1)(A)(i) requires all parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses . . . ." Rule 26(a)(1)(A)(ii) similarly requires all parties to disclose "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to supports its claims or defenses . . . ." The duty to disclose is ongoing, as Rule 26(e)(1)(A) requires parties to supplement disclosures and document productions "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing."

Rule 37(c)(1) governs violations of Rule 26(a) and provides that, "[i]f a party fails to provide the information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In assessing motions to strike pursuant to Rule 37(c), "courts have broad discretion to determine whether to admit late-disclosed evidence with or without sanctions." D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., No. 17-CV-747-LM, 2020 WL 6060963, at *2 (D.N.H. Oct. 14, 2020) (citing Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)). See also Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77-78 (1st Cir. 2009) (quoting Santiago–Diaz v. Laboratorio Clinico Y De Referencia Del Este, 456 F.3d 272, 276 (1st Cir. 2006) ("Preclusion [under Rule 37(c)] 'is not a strictly mechanical exercise.'")). The party facing sanctions for a late disclosure has the burden to show that its failure to satisfy its obligations under the Rule was "substantially justified" or "harmless" under Rule 37(c) and "therefore deserving of some lesser sanction." Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001). Substantially justified "does not mean 'justified to a high degree,' but only 'justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person.'" Sheppard v. River Valley Fitness One, L.P., 428 F.3d 1, 12 (1st Cir. 2005) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). "Limiting the automatic sanction to violations 'without substantial justification,' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations: *e.g.*, the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties [or] the failure to list as a trial witness a person so listed by another party[.]" Advisory Committee Notes to the 1993 Amendment to Rule 37(c).

    B. Sufficiency of the Disclosures

The Fiscal Agent contends that it had no obligation to further disclose the identity of Cede or DTC, or the Exhibit, as the information was well known from other discovery. In

addition, the facts and the Exhibit were included in the Bondholders' expert report, and the Fiscal Agent had incorporated by reference all documents identified "by any other party" in its initial disclosures. Regardless of whether the Fiscal Agent's exposure of the information was technically sufficient, such "disclosure" is not the sort of clear and obvious disclosure contemplated by the Rule to ensure the orderly conduct of discovery. See Thibeault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992) (explaining purpose of Rule 26 to "promote fairness in the discovery process and at trial" and to prevent discovery from "degenerat[ing] into a game of cat and mouse"). However, the Court need not determine whether the witness and document were properly disclosed because, as explained below, the Court finds that, to the extent any failure to disclose occurred, such failure was substantially justified and harmless within the meaning of Rule 37(c) except as to one sentence of the Declaration and, therefore, preclusion of the entire Declaration and Exhibit is not warranted.

    C. Substantial Justification

The Fiscal Agent argues that any violation of Rule 26(a)(1)(A) was substantially justified because the Fiscal Agent did not believe that it was required to supplement its disclosures to include DTC and/or Cede as a witness, and the DTC Operational Arrangements as a relevant document, as they all were disclosed to the Committees during the course of discovery. With respect to the Exhibit, the Fiscal Agent argues that the DTC Operational Arrangements were disclosed through the expert report of Dr. Hildreth. (See Opposition ¶ 25.) The Committees deposed Mr. Hildreth, and "had an express opportunity to request production of that document, but they did not do so[.]" (Id. ¶¶ 25, 29(b).) The Fiscal Agent also argues that the DTC Operational Arrangements are public documents and were not required to be produced because the Fiscal Agent stated it would not be providing publicly available documents in

response to the Committees' document requests, to which exception the Committees did not object. (Id. ¶ 29(a).) Thus, the Fiscal Agent believed that it was not under a duty to supplement because the document had "otherwise been made known to the parties during the discovery process or in writing." Rule 26(e)(1)(A). Similarly, the Fiscal Agent argues that it was substantially justified in not supplementing its disclosures to include DTC and/or Cede as an entity likely to have discoverable information because it had identified DTC, Cede and the UCC § 8-202 defense in the Joinder, and also had referenced the registered owner of the Bonds in its initial disclosures, responses to interrogatories, and requests for admissions. (See Opposition ¶ 23.) Additionally, Cede and DTC were referenced in discovery responses by numerous other parties to the ERS proceedings. (See Gray Decl. ¶ 33.)

The Court finds that while disclosure would have been appropriate, the failure to disclose was substantially justified. As detailed more fully above, that Cede was the registered owner of the ERS Bonds, and that the DTC Operational Arrangements were used in the course of accepting securities as "Eligible Securities" were made known to the Committees during the course of discovery. Multiple witnesses, including the Committees' own expert, Mr. Doty, referenced Cede, as the nominee of DTC, and as the registered owners of the Bonds, and Dr. Hildreth specifically referenced the DTC Operational Arrangements. (See Opposition ¶ 17(a)-(f).) This is not a case where "the mere mention of a name in a deposition or interrogatory" is offered to satisfy Rule 26(a)(1)(A)(i). See Am. Steel Erectors v. Loc. Union No. 7, 815 F.3d 43, 57 n.2 (1st Cir. 2016) (citation omitted).

The Committees appear to be arguing that disclosures relating to Cede cannot satisfy any obligation to disclose DTC or Mr. Faith as potential witnesses. (Reply ¶ 9.) In addition, the Committees argue "that there is no basis for allowing DTC's alleged lack of notice

to apply to Cede & Co." and that the Fiscal Agent's failure to distinguish between the two entities is legally unsupportable. (Id. ¶ 9 n.3.) The legal and factual sufficiency of the Fiscal Agent's UCC § 8-202 defense will be decided in connection with the summary judgment rulings. For present purposes, however, the relationship between Cede and DTC has been disclosed throughout this litigation. Mr. Faith's Declaration was submitted on behalf of both Cede and DTC. (Faith Decl. ¶¶ 2, 5, 8.) The fact that the DTC Operational Arrangements were relevant to the notice analysis was expressly disclosed by Dr. Hildreth in his Report. These references, coupled with the fact that the Fiscal Agent notified the Committees that it would be pursuing the UCC § 8-202 defense effectively satisfy the purpose of Rule 26(a)(1)(A)'s disclosure requirement to guard against trial by ambush. Thus, the Court finds that any failure to supplement the disclosures to identify DTC and Cede as witnesses, and to disclose the DTC Operational Arrangements, was substantially justified by the Fiscal Agent's good faith belief that it was not required to do so.

### D.  Harmless Error

The Court also finds that, to the extent a failure to disclose occurred, such failure was harmless. The Committees argue that allowing the Fiscal Agent to rely upon the Faith Declaration and the DTC Operational Arrangements would be highly prejudicial because they "have been denied the opportunity to test the veracity of Mr. Faith's testimony at a deposition [and] to pursue production of Mr. Faith's documents that might also bring into question the veracity of his testimony." (Motion to Strike ¶ 22.) The Court disagrees.

With the exception of one sentence that will be stricken, as discussed below, the Committees have not shown that any failure to disclose the Faith Declaration and the 2002 DTC Operational Arrangements in the Fiscal Agent's Initial Disclosures was prejudicial. As detailed

above and with one exception, the facts proffered in the Faith Declaration, including the existence of and roles of DTC and Cede, and the operational rules that applied at the time as set forth in the Exhibit, as well as their relevance to a UCC § 8-202 defense, were disclosed during discovery, and formed a basis for the Bondholder's expert's report.[5] The Committees could have taken additional discovery on the issue of the relationship between DTC and Cede, or the DTC Operational Arrangements, if they so desired.

Significantly, all but one of the facts to which Mr. Faith attests are found in various other documents and are basically uncontested, non-controversial, and supported by other, non-challenged documents. (See Opposition ¶ 19.) While the Committees claim that they were denied the opportunity to test the veracity of the statements made in the Declaration, they do not identify any aspects of the Declaration that they dispute. Similarly, while they claim that they "will be severely prejudiced by not being able to test for themselves whether Mr. Faith's testimony truly tells the whole story" they had ample opportunity to take discovery about the issuance of the Bonds, the relationship between DTC and Cede, and any other facts which are included in the Faith Declaration. (See Reply ¶ 23.) The Committees were aware of the identity of the registered owner of the Bonds, and were aware that the Fiscal Agent would rely on the UCC § 8-202 defense. The Fiscal Agent's decision to submit a Declaration putting well-known

---

[5] The Faith Declaration comprises twelve paragraphs. Paragraphs one through three are foundational paragraphs concerning Mr. Faith's background and familiarity with the practices and operations of DTC. Paragraphs four and five describe DTC's services as a securities depository in the securities market. Paragraph five also explains DTC's connection to Cede. Paragraphs six and seven describe DTC's underwriting process and state that DTC's eligibility requirements are set forth in the DTC Operational Arrangements. Paragraphs eight and nine describe Cede's purchase of the ERS Bonds. Paragraphs eleven and twelve authenticate the DTC Operational Arrangements and state that the February 2002 version of the DTC Operational Arrangements was in effect at the time the ERS Bonds were approved as Eligible Securities.

facts in one place for purposes of summary judgment, and attaching a document which had already been the subject of an expert's report, did not cause the Committees any harm.

The Committees argue that the Fiscal Agent should be precluded from relying on the DTC Operational Arrangements because it was not disclosed despite the fact that it "serves as the basis, and often the exclusive basis, for several of the Fiscal Agent's alleged statements of fact" including that "'[a]s a market utility, DTC does not undertake, and does not have a responsibility, to monitor or ascertain the compliance of any transactions in securities with any local, state, federal, or foreign laws or regulations thereunder.'" (Motion to Strike ¶ 25 (quoting Docket Entry No. 976 at 5).) However, the provision of the DTC Operational Arrangements relied on by the Fiscal Agent is the same provision that was discussed in Dr. Hildreth's Report, to convey the same point. (See Hildreth Rep. ¶ 153; Fiscal Agent's Statement of Undisputed Material Facts (Docket Entry No. 977, the "SUMF") ¶ 32.) It would not be prejudicial to the Committees to have to address the Exhibit, which was clearly identified by the Bondholders' expert as support for the Fiscal Agent's position.

The only novel factual assertion in the Faith Declaration is the second sentence of paragraph 10. That paragraph reads in its entirety as follows: "DTC has recently been informed that certain parties have argued that the ERS Bonds were issued without property authority. DTC was not aware of any such matters at the time the ERS Bonds were issued." The Committees dispute DTC's disavowal of knowledge, and argue that this statement "in the Fiscal Agent's view, resolves the ultimate question of fact[.]" (Reply ¶ 20.) This Court finds that the Fiscal Agent's belated proffer of this conclusory testimony is improperly prejudicial. There is no explanation as to how Mr. Faith reached this conclusion and, if it is based on facts not otherwise in evidence the Committees should have had the opportunity to explore Mr. Faith's assertion. If

the conclusion is only based on facts otherwise in the record, both parties are free to argue inferences as to the pivotal question of knowledge. Therefore, the second sentence of paragraph 10 will be stricken.[6]

Accordingly, the Court finds that, to the extent the Faith Declaration and the 2002 DTC Operational Arrangements were not disclosed as contemplated by Rule 26(a)(1)(A), the failure to disclose was harmless except as to the second sentence of paragraph 10 of the Declaration, which will be stricken.

## CONCLUSION

For the reasons provided herein, the Motion to Strike is denied except as to the second sentence of paragraph 10 of the Faith Declaration, which is stricken.

This Order resolves Docket Entry No. 14978 in Case No. 17-3283 and Docket Entry No. 1000 in Case No. 17-3566.

SO ORDERED.

Dated: February 23, 2021

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

---

[6] The second sentence of Paragraph 47 of the Fiscal Agent's SUMF (Docket Entry No. 977) will also be stricken as it is based on the second sentence of paragraph 10 of the Faith Declaration.