UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO et al.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF<br>THE GOVERNMENT OF THE COMMONWEALTH<br>OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-03566 (LTS) |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), <br><br> as co-trustees of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, <br><br> Plaintiffs, <br><br> v. <br><br> DEFENDANT 1M et al., <br><br> Defendants. | Adv. Proc. No. 19-00356 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), <br><br> as co-trustees of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, <br><br> Plaintiffs, <br><br> v. <br><br> STOEVER GLASS & CO. et al., <br><br> Defendants. | Adv. Proc. No. 19-00357 (LTS) |

| | |
|---|---|
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), <br><br> as co-trustees of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, <br><br> Plaintiffs, <br><br> v. <br><br> DEFENDANT 1H-78H, <br><br> Defendants. | Adv. Proc. No. 19-00359 (LTS) |
| THE SPECIAL CLAIMS COMMITTEE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH ITS MEMBERS, <br><br> and <br><br> THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA), <br><br> as co-trustees of <br><br> THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, <br><br> Plaintiffs, <br><br> v. <br><br> DEFENDANT 1G-50G et al., | Adv. Proc. No. 19-00361 (LTS) |

Defendants.

ORDER REGARDING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. LAURA GONZALEZ

This matter is before the Court on the *Committees' Motion to Exclude Expert Testimony of Dr. Laura Gonzalez on* Ultra Vires *Issues* (Docket Entry No. 14974 in Case No. 17-3283; Docket Entry No. 997 in Case No. 17-3566,[2] the "Motion to Exclude"). In the Motion to Exclude, the Committees[3] seek to exclude the testimony of Dr. Laura Gonzalez, offered by the ERS Bondholders in support of their motion for summary judgment on the ultra vires issues. Dr. Gonzalez opines, inter alia, that the translation of the phrase "tomar prestado" as it appears in the official English translation of the ERS Enabling Act is incorrect. The Committees argue that Dr. Gonzalez is not qualified to testify as an expert pursuant to Federal Rule of Evidence 702, and that her opinion will not assist the Court in determining the issues in dispute in the summary judgment motions. After careful consideration of the parties' submissions,[4] and for the reasons explained below, the Motion to Exclude is granted.

---

[2] Unless otherwise noted, all docket entry references will be to Case No. 17-3566.

[3] Capitalized terms not defined herein shall have the meanings given to them in the Motion to Exclude.

[4] In addition to the Motion to Exclude, the Court has thoroughly reviewed the *ERS Bondholders' Opposition to Committees' Motion to Exclude Expert Testimony of Dr. Laura Gonzalez on* Ultra Vires *Issues* (Docket Entry No. 15209 in Case No. 17-3283; Docket Entry No. 1029 in Case No. 17-3566, the "Opposition"), the *Declaration of Sparkle L. Sooknanan in Support of ERS Bondholders' Opposition to Committees' Motion to Exclude Expert Testimony of Dr. Laura Gonzalez on* Ultra Vires *Issues* (Docket Entry No. 15210 in Case No. 17-3283; Docket Entry No. 1030 in Case No. 17-3566, the "Sooknanan Decl."), and the *Committees' Reply in Support of Motion to Exclude Expert Testimony of Dr. Laura Gonzalez on* Ultra Vires *Issues* (Docket Entry No. 15335 in Case No. 17-3283; Docket Entry No. 1041 in Case No. 17-3566, the "Reply").

BACKGROUND

The Puerto Rico Office of Legislative Services ("PROLS") is responsible for English-language translations of the laws of the Commonwealth of Puerto Rico. (Motion to Exclude ¶ 7.) When the ERS Enabling Act was amended in 1998 to permit ERS to incur debt through specific, enumerated means (see 3 L.P.R.A. § 779(d) (Act 46-1988, §1)), PROLS provided an official English translation of the 1998 Amendment. The official English translation translates "tomar prestado" as "to seek a loan." (Motion to Exclude ¶ 8.) In the Bondholders' motion for summary judgment on the ultra vires issues, the Bondholders argue that the PROLS translation of the 1998 Amendment is incorrect, and that the correct translation of "tomar prestado" is "to borrow." (See Opposition at 2-3.) In support of this contention, the Bondholders offer the testimony of Dr. Laura Gonzalez, who opines that the English translation of the Enabling Act is incorrect because "tomar prestado" means "to borrow" in English. Dr. Gonzalez's opinion is proffered in the "Expert Report of Laura Gonzalez, Ph.D" (Docket Entry No. 997-2, the "Gonzalez Rep."), and she testified to the same effect at a deposition. The Committees challenge the admissibility of the Gonzalez Report on the grounds that Dr. Gonzalez is not qualified to provide an expert opinion pursuant to Federal Rule of Evidence 702, and that her proposed opinion will not assist the Court.

STANDARD OF REVIEW

"Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony." Bradley v. Sugarbaker, 809 F.3d 8, 16 (1st Cir. 2015) (citing Fed. R. Evid. 702). "Rule 702 requires that the 'testimony be (1) "based upon sufficient facts or data," (2) "the product of reliable principles and methods," and (3) that the witness apply "the principles and methods reliably to the facts of the case."'" Id. (quoting (Pagés–Ramírez v. Ramírez-Gonzalez,

605 F.3d 109, 113 (1st Cir. 2010)). "When faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 476 (1st Cir. 1997) (quoting Fed. R. Evid. 702); see also United States v. Sepulveda, 15 F.3d 1161, 1183 (1st Cir. 1993) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993)). In this regard, the trial court is given wide discretion to admit or exclude expert testimony. See U.S. ex rel. Jones v. Brigham & Women's Hosp., 678 F.3d 72, 83 (1st Cir. 2012) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 31–32 (1st Cir. 2004) ("Evidentiary rulings have the potential to shape and winnow the scope of the summary judgment inquiry, and a trial court should have as much leeway in dealing with those matters at the summary judgment stage as at trial.")).

Here, the Committees challenge the admissibility of Dr. Gonzalez's testimony on the grounds that (1) she is not qualified to opine on the correct English translation of the Enabling Act, (2) she did not apply a reliable translation methodology, and (3) her testimony will not assist the Court in determining the ultra vires issues. For the reasons detailed herein, this Court agrees.

Before addressing the merits of the Committees' objections, however, the Court must address the ERS Bondholders' contention that the Committees were obligated to obtain their own expert to challenge Dr. Gonzalez's translation because "[i]t is not sufficient for a party opposing summary judgment to solely rely on the proposition that the movant's evidence would be disbelieved rather than advancing competent evidence of its own." (Opposition at 9.) This principle has no relevance to the instant dispute. Laws enacted in Puerto Rico are printed in both Spanish and English, and both versions are admissible "as evidence in all courts of Puerto Rico

without further authentication." 2 L.P.R.A. § 189. (See Motion to Exclude ¶ 7.) Thus, the Committees do not need an expert to support their reliance on the official English version of the Enabling Act. The issue raised by the Motion to Exclude is whether the expert put forth by the ERS Bondholders is qualified to challenge the official English version. That determination is for the Court, and there is no requirement that the Committees use an expert to challenge another expert's qualifications. Therefore, the Court will consider the merits of the Committees' objections to Dr. Gonzalez's opinion even in the absence of an expert retained by the Committees.[5]

## ADMISSIBILITY OF DR. GONZALEZ'S OPINION

### 1. Dr. Gonzalez's Qualifications

"[T]he court has broad discretionary powers in determining whether or not the proposed expert is qualified by 'knowledge, skill, experience, training, or education.'" Bogosian, 104 F.3d at 476 (quoting Fed. R. Evid. 702). In making such a determination, the Court applies a "totality of the circumstances" test, as "there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." Santos v. Posadas De Puerto Rico Assocs., Inc., 452 F.3d 59, 63-64 (1st Cir. 2006) (citations omitted). Here, the Committees argue that Dr. Gonzalez lacks the specific knowledge and experience required to opine on the translation of a technical Puerto Rican debt authorization statute. (See Motion to Exclude ¶ 12.) This Court agrees.

---

[5] In light of the Court's conclusion that Dr. Gonzalez's opinion must be stricken, this Court will not address the parties' dispute regarding the level of inaccuracy a party must establish in order to challenge an official translation of a Puerto Rican law. (See Opposition at 13 (Bondholders challenge the Committees' contention that the official translation of a statute is controlling unless it is not "substantially satisfactory").)

Dr. Gonzalez is a finance professor and a native Spanish speaker. (See Opposition at 5.) She received her undergraduate degree in Spain, a master's degree from Southern Illinois University in Foreign Languages and Literature in English, Spanish, and French, and her Ph.D. in finance from the University of Florida. (See id.) Dr. Gonzalez taught undergraduate beginner and intermediate Spanish at Southern Illinois University, and provided Spanish language tutoring while obtaining her degree. (See id.) While she appears to have vast experience speaking Spanish and has taught the language to undergraduates, her translation experience includes only one instance of providing written translations from Spanish to English, for the University of Florida law school relating to a complaint filed against the University by a Spanish family in 2006 or 2007, and several isolated instances of providing oral translations, both informally and professionally, to students on sporadic occasions. (See Gonzalez Transcript, Docket Entry No. 1030-1, at 58:12-59:6; 59:19-61:15.)

Dr. Gonzalez holds no professional certifications in translation services, has no translation training, and has never worked as a full-time translator. Dr. Gonzalez acknowledges that there are differences in Spanish dialects, and she does not appear to have any experience translating between English and the dialect of Spanish spoken and used in Puerto Rico. (See id. at 47:1-10.) Dr. Gonzalez also does not have any experience translating statutes, regulations, or any other government or financial document. While the Bondholders are correct that there is no formula for qualification of an expert pursuant to Rule 702, the totality of the circumstances here show that Dr. Gonzalez's Spanish-English experience consists principally of speaking Spanish herself, teaching in English, conversing with Spanish-speaking individuals, and teaching undergraduate Spanish. She has no experience translating Puerto Rican statutes, or translating governmental documents or financial regulations that would qualify her to opine on the

translation of the Enabling Act. (See Bogosian, 104 F.3d at 477 (affirming district court's exclusion in automobile product liability action of purported expert who "had extensive experience in automotive repair" but whose "background shows a lack of any significant expertise—by way of knowledge, skill, experience, training, or education—in relevant areas such as the design or manufacture of automobiles" and "certainly calls into question [his] ability to criticize the design of a transmission parking mechanism and its operation under various circumstances").)

United States v. Gomez, 67 F.3d 1515 (10th Cir. 1995), on which the Bondholders rely, does not compel a different result. There, the Tenth Circuit affirmed the district court's admission of testimony as to the English translation of a Spanish recording by a witness who held a minor in Spanish and had served a 23-month religious mission in South America. Id. at 1525-26. In that case, there is no indication that the translation involved a technical subject area requiring specific expertise. Nor was the witness asked to render an opinion as to the accuracy of an official translation; he was merely offered to translate a recording of a Spanish-language conversation, which fell squarely within his area of specialized knowledge. Id.[6]

---

[6] The other case cited by the Bondholders, an unpublished opinion from the Fourth Circuit, is equally unavailing. In United States v. Contreras, No. 98-4546, 1999 WL 123760, 173 F.3d 852 (4th Cir. Mar. 9, 1999), the Court affirmed the District Court's decision qualifying a police officer as an expert and allowing him to opine on the accuracy of an English transcription of a Spanish conversion. In addition to being a native Spanish speaker, the officer testified that "his duties as a police officer frequently required him to translate from Spanish to English, and that he performed this function on numerous occasions in the process of writing police reports documenting his undercover interactions with Spanish speaking drug dealers." Contreras, 1999 WL 123760, at *1-2. Again, Contreras does not involve the translation of a technical document outside the realm of everyday conversation.

In the instant case, mere fluency in Spanish and English does not provide sufficient knowledge and experience to qualify as an expert on the issue of the translation of the Enabling Act pursuant to Rule 702. Dr. Gonzalez's expert opinion is therefore inadmissible.

### 2. Dr. Gonzalez's Methodology

The methodology employed by Dr. Gonzalez also compels the conclusion that her opinion testimony is not admissible in the instant case. "Often in fields based upon specialized knowledge rather than scientific expertise, the 'expert's experience and training bear a strong correlation to the reliability of the expert's testimony.'" United States v. Martinez-Armestica, 846 F.3d 436, 444 (1st Cir. 2017) (quoting United States v. Jones, 107 F.3d 1147, 1155 (6th Cir. 1997)). See also Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). "If a witness relies primarily on experience, she must 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" Brigham & Women's Hosp., 678 F.3d at 94 (quoting Fed. R. Evid. 702 Advisory Committee's Note).

The Committees argue that Dr. Gonzalez employed an unreliable translation methodology because she did not rely on relevant sources to support her translation of "tomar prestado," but rather only consulted a Spanish law review article on equal protection jurisprudence, a speech in English delivered by Jane Goodall, and two subsequent Spanish translations of that speech. (Motion to Exclude ¶¶ 19-20.) The Committees further allege that Dr. Gonzalez "reverse engineered her translation" and that "she failed to consult any Puerto Rican statute other than the ERS Enabling Act." (Reply ¶ 3.) "[T]here are more than 20 examples of statutes where the official Puerto Rican office tasked with doing so translated words

in a Puerto Rico statute to mean 'to borrow,' and in each of those statutes, the Spanish phrase translated was 'tomar dinero a préstamo' – not 'tomar prestado,'" according to the Committees. (Id. (citing Committees' Statement of Undisputed Facts in Support of Motion for Summary Judgment on *Ultra Vires* Issues, Docket Entry No. 979-1).) In addition, the Committees challenge Dr. Gonzalez's decision to take the English phrase "to seek a loan" and then translate it into Spanish, without citation to any support for her translation. (Id. ¶¶ 22-23.) The Committees' arguments are persuasive, and the Court agrees that Dr. Gonzalez's methodology does not satisfy the Rule 702 reliability standard.

According to her Report, Dr. Gonzalez first determined, based on her experience as a native Spanish speaker, that the Spanish translation of the phrase "seek a loan" is "efectuar/contratar un préstamo." (Gonzalez Rep. at 6.) Thus, she reasoned, the official translation of "tomar prestado" in the ERS Enabling Act as "to seek a loan" is incorrect. (Id.) Dr. Gonzalez offers no support for her interpretation of the phrase to "seek a loan" much less any support in contexts similar to the Enabling Act.

Dr. Gonzalez compared the translation of "tomar prestado" in four other sources: (1) a Spanish law review article discussing the Puerto Rico Supreme Court's equal protection jurisprudence, (2) a lecture delivered by Jane Goodall in English in 2009, and (3) two Spanish speeches from politicians in Uruguay and Argentina that quote Jane Goodall's 2009 speech. In the law review article, the phrase "tomar prestado" appears in a non-financial context, and Dr. Gonzalez translates it, based on context and her experience speaking Spanish, to mean "to borrow." The three other sources all deal with the translation of the phrase "to borrow" as used by Jane Goodall in a speech in English, again in a non-financial context. Dr. Gonzalez explains that two politicians subsequently quoted Jane Goodall's speech in Spanish and used "tomar

prestado" as the translation for "to borrow." (Gonzalez Rep. at 7-8.) At her deposition, Dr. Gonzalez testified that she also consulted Spanish-English dictionaries and relied on her "experience for 45 years as a native speaker of Spanish, living in the United States, speaking with people from different regions in the Americas that speak different dialects." (Gonzalez Transcript, Docket Entry No. 1030-1 at 94:5-12.) She also testified that, based upon her decades of experience speaking Spanish, she has never seen the phrase "tomar prestado" to mean anything other than "to borrow." (See id. at 92:17-25; 93:1-2.)

This methodology is insufficient to support a reliable opinion as to the translation of the Enabling Act. The "sources" on which Dr. Gonzalez relied are inapplicable to the instant case and she provides no explanation for why the use of "tomar prestado" in either the law review article or Jane Goodall's speech is relevant to the translation of the ERS Enabling Act. Dr. Gonzalez does not analyze examples of the phrase "to seek a loan" in Spanish-language sources, nor does she discuss whether she found any examples of the use of "tomar prestado" in a financial context. Significantly, she ignores the fact and fails to explain why "to borrow" is not translated as "tomar prestado" in Puerto Rican statutes, but rather is translated as "tomar dinero a préstamo." Finally, Dr. Gonzalez does not explain how her experience speaking Spanish in a non-legal, non-governmental context is sufficient to opine as to the correct translation of the Enabling Act. In short, she has failed to satisfy the "the requirement of factual relevance and foundational reliability." Bogosian, 104 F.3d at 479.

The Bondholders argue that deficiencies in the number or breadth of sources consulted by an expert go to the weight of the expert's testimony, rather than its admissibility. (See Opposition at 11.) Here, however, the problem is twofold: First, Dr. Gonzalez lacks experience translating technical financial statutes, and thus her experience is not sufficient to

form the basis of a conclusion as to the proper translation of the Enabling Act. Second, Dr. Gonzalez failed to identify any other Puerto Rican or Spanish language statute that uses the phrase "tomar prestado," and failed to explain why the statutes do not use "tomar prestado" to mean "to borrow." Thus, she did not reliably apply her experience (even if it were sufficient) as a native Spanish speaker to the task at hand. Accordingly, Dr. Gonzalez's methodology does not satisfy Rule 702.

Because the Court concludes that Dr. Gonzalez's qualifications to proffer an expert opinion as to the accuracy of the English version of the Puerto Rican statute are insufficient and that, even if they were sufficient, her methodology does not meet the reliability requirement of Rule 702, the Court is required to grant the Motion to Strike. Consequently, the Court need not address the parties' contentions regarding the usefulness of her proffered translation.

## CONCLUSION

For the reasons detailed above, the Motion to Exclude is granted.

This Order resolves Docket Entry No. 14974 in Case No. 17-3283, Docket Entry No. 997 in Case No. 17-3566, Docket Entry No. 132 in Adversary Proceeding No. 19-356, Docket Entry No. 137 in Adversary Proceeding No. 19-357, Docket Entry No. 115 in Adversary Proceeding No. 19-359, and Docket Entry No. 119 in Adversary Proceeding No. 19-361.

SO ORDERED.

Dated: February 23, 2021

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge