# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III |

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

ATLANTIC MEDICAL CENTER, INC., *et al.*,

     Movants,[2]

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Respondent.

**OPPOSITION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF
PUERTO RICO TO MOTION OF ATLANTIC MEDICAL CENTER, INC.,
CAMUY HEALTH SERVICES, INC., CENTRO DE SALUD FAMILIAR
DR. JULIO PALMIERI FERRI, INC., CIALES PRIMARY HEALTH
CARE SERVICES, INC., CORP. DE SERV. MÉDICOS PRIMARIOS Y PREVENCIÓN
DE HATILLO, INC., COSTA SALUD, INC., CENTRO DE SALUD DE LARES, INC.,
CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC.,
AND HOSPITAL GENERAL CASTAÑER, INC. SEEKING (I) ENFORCEMENT OF
THE COURT'S PRIOR ORDER AND (II) RELIEF FROM THE AUTOMATIC STAY**

---

[2] The Movants are Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ..........................................................................................................3

      A.    The Commonwealth's Payments Under the Stipulation ............................3

      B.    Negotiations and Payment of the Shortfall .................................4

ARGUMENT .............................................................................................................6

   I.    Movants Are Not Entitled to Immediate Payment or an Enforcement
      Injunction. ................................................................................7

      A.    Movants Have Been Paid the Shortfall ....................................7

      B.    Any Payment Requested Cannot Be Compelled Pursuant to
           PROMESA Section 305 ......................................................7

      C.    The Stipulation Merely Permits, and Does Not Require, the
           Commonwealth to Make Wraparound Payments ........................8

      D.    Movants' Request for Future Compliance With the Law is a
           Procedurally Improper Request for an Injunction ......................9

  II.    The Automatic Stay Should Not Be Lifted to Allow the Prepetition
      Litigation to Proceed..............................................................10

      A.    The *Sonnax* Factors Weigh Heavily Against Lifting the Stay .................10

CONCLUSION.........................................................................................................20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Adams v. Cumberland Farms, Inc.*,
   86 F.3d 1146 (1st Cir. 1996) ...............................................................................14

*Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for
   P.R.)*,
   927 F.3d 597 (1st Cir. 2019),
   *cert. denied*, 140 S. Ct. 856 (2020) ...............................................................7, 8

*Atlantic Medical Center, Inc., et. al. v. Commonwealth of Puerto Rico, et. al.*,
   Case No. 06-1291 (D.P.R) ......................................................................................2

*Aurelius Capital Master, Ltd. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd.
   for P.R.)*,
   919 F.3d 638 (1st Cir. 2019) ..................................................................................7

*Brigade Leveraged Cap. Structures Fund Ltd. v. Garcia-Padilla*,
   217 F. Supp. 3d 508 (D.P.R. 2016)................................................................12, 13

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
   369 B.R. 87 (D.P.R. 2007)....................................................................................12

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
   28 B.R. 324 (Bankr. S.D.N.Y. 1983)....................................................................17

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011)....................................................................................9

*Delpit v. Comm'r IRS*,
   18 F.3d 768 (9th Cir. 1994) ..................................................................................11

*Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In
   re Fin. Oversight & Mgmt. Bd. for P.R.)*,
   899 F.3d 13 (1st Cir. 2018)...................................................................................12

*Goya Foods v. Unanue-Casal (In re Unanue-Casal)*,
   159 B.R. 90 (D.P.R. 1993),
   *aff'd without opinion sub nom. Unanue v. Unanue-Casal (In re Unanue-
   Casal)*, 23 F.3d 395 (1st Cir. 1994) ....................................................................11

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
   No. 05-cv-5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006)..............17

*In re 234-6 W. 22nd St. Corp.*,
   214 B.R. 751 (Bankr. S.D.N.Y. 1997) ...................................................................11

*In re BFW Liquidation, LLC*,
   No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) ...................16

*In re Breitburn Energy Partners LP*,
   No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017)......................................13

*In re City of Stockton*,
   484 B.R. 372 (Bankr. E.D. Cal. 2012) ...................................................................18

*In re Cummings*,
   221 B.R. 814 (Bankr. N.D. Ala. 1998) ...................................................................13

*In re Gatke Corp.*,
   117 B.R. 406 (Bankr. N.D. Ind. 1989) ...................................................................18

*In re Jefferson Cnty.*,
   491 B.R. 277 (Bankr. N.D. Ala. 2013) ...................................................................11

*In re Motors Liquidation Co.*,
   No. 09-50026, 2010 WL 4630327 (S.D.N.Y. 2010)...............................................................18

*In re Nw. Airlines Corp.*,
   No. 05-17930, 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 13, 2006) .................................18, 19

*In re Residential Cap., LLC*,
   No. 12-12020, 2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012)............................17

*In re Taub*,
   413 B.R. 55 (Bankr. E.D.N.Y. 2009)...................................................................13

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
   362 B.R. 49 (B.A.P. 1st Cir. 2007)...................................................................11

*Maxwell v. Seaman Furniture Co.* (*In re Seaman Furniture Co. of Union Square, Inc.*),
   160 B.R. 40 (S.D.N.Y. 1993)...................................................................14

*Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*,
   474 U.S. 494 (1986)...................................................................10

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
   537 B.R. 128 (Bankr. D.P.R. 2015)...................................................................10

*Murrin v. Hanson (In re Murrin)*,
   477 B.R. 99 (D. Minn. 2012)...................................................................13

*Peaje Invs. LLC v. Garcia-Padilla,*
  Nos. 16-2365, 16-2384, 16-2696, 2016 U.S. Dist. LEXIS 153711 (D.P.R.
  Nov. 2, 2016),
  *aff'd*, 845 F.3d 505 (1st Cir 2017) ...................................................................12

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),*
  980 F.2d 110 (2d Cir. 1992) .........................................................................16

*SEC v. Jones,*
  300 F. Supp. 3d 312 (D. Mass. 2018) .............................................................9

*Soares v. Brockton Credit Union (In re Soares)*
  107 F. 3d 969 (1st Cir. 1997) .......................................................................10

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),*
  907 F.2d 1280 (2d Cir. 1990) ...................................................................11, 12

*Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty
  Prods., Inc.),*
  311 B.R. 551 (Bankr. C.D. Cal. 2004) .............................................................18

*Unisys Corp. v. Dataware Prods., Inc.,*
  848 F.2d 311 (1st Cir. 1988) ...................................................................10, 11

**STATUTES**

11 U.S.C. § 362(d) ...................................................................................11, 13

11 U.S.C. § 502(c) .......................................................................................14

42 U.S.C. § 1396a(a)(bb) ...........................................................................9, 10

48 U.S.C. §§ 2101–2241 .................................................................................1

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7001(7) .................................................................................9

H.R. Rep. No. 95-595 (1977) ...........................................................................11

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] hereby files this objection ("Objection") to the *Motion of Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc.* (collectively, the "Movants") *Seeking (I) Enforcement of the Court's Prior Order and (II) Relief From The Automatic Stay* [ECF No. 12918][2] ("Motion").[3]  In support of this Objection, the Oversight Board respectfully states as follows:

## PRELIMINARY STATEMENT

1.      As of the filing of the Motion, the Commonwealth has paid over $19 million to the Movants under the terms of a postpetition stipulation, dated July 12, 2019 (the "Stipulation"),[4] providing for voluntary estimated "wraparound" payments.  Movants do not dispute that the Commonwealth has been making quarterly payments pursuant to the Stipulation.  Instead, Movants contest one aspect of the Commonwealth's calculation of the payments—whether the terms of the Stipulation call for "averaging" prior quarters in calculating each quarterly payment— and thus, Movants assert they are owed approximately $7.66 million under their calculations.

---

[1]   PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[2]   References to the docket are to Case No. 17-BK-3283-LTS, unless otherwise specified.

[3]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[4]   A copy of the Stipulation is attached to the Motion as Exhibit F.

Consequently, Movants have requested the Court (i) compel the Commonwealth to immediately pay the alleged shortfall and continue paying Movants according to Movants' calculation, (ii) prospectively compel the Commonwealth's compliance with the federal wraparound payment statute as demanded in Movants' Prepetition Litigation,[5] which is currently stayed as a result of the Commonwealth's Title III case, and (iii) lift the automatic stay to have the District Court determine the Prepetition Litigation in order to "crystalize" Movants' proofs of claim.

2.      Movants are not entitled to the relief requested.  Their request for immediate payment of the Shortfall is moot because, since the Motion was filed, the Commonwealth paid the $7.66 million Movants allege in the Motion to be owed in full.  Importantly, the Oversight Board reserved all rights in making this payment, including as to whether Movants' calculations in arriving at the Shortfall amount were correct.  In any event, Movants' requests for immediate or future payments during the Title III case directly contravene PROMESA, as well as this Court's and the First Circuit's prior rulings, which make clear that, prior to the effective date of a Title III plan of adjustment, interference with the Commonwealth's property or revenues is not permitted. Moreover, Movants' request to compel payments is not supported by the terms of the Stipulation itself, which modified the automatic stay merely to allow the Commonwealth to make **voluntary** estimated payments and not with respect to the continuation of litigation or any effort to compel the Commonwealth to make additional and disputed amounts.  Movants' request to compel the Commonwealth's prospective compliance with a federal statute according to their interpretation of the Stipulation is a procedurally improper request for an injunction, which directly overlaps the subject matter of the stayed Prepetition Litigation.

---

[5]  Movants request that the Court lift the automatic stay to allow the "Prepetition Litigation," but the Motion does not define this term.  The Oversight Board assumes Movants refer to *Atlantic Medical Center, Inc., et. al. v. Commonwealth of Puerto Rico, et. al.*, Case No. 06-1291, pending before the U.S. District Court for the District of Puerto Rico, which it refers to as the "Prepetition Litigation" herein.

3.     Moreover, Movants have not shown "cause" exists to lift the automatic stay. Movants' dispute over the calculation of *estimated* payments under the stipulation does not justify lifting the stay to resolve the separate question of *actual* wraparound payments in the Prepetition Litigation.   More importantly, Movants' request circumvents the claims liquidation processes afforded by PROMESA.  With the Prepetition Litigation requiring significant expert testimony and consumption of judicial and Commonwealth resources, considerations of efficiency and economy strongly weigh against lifting the stay.   And, given the Commonwealth's forthcoming filing of an amended plan of adjustment and disclosure statement, any litigation to liquidate Movants' claims should be done in connection with the claims resolution process in the Commonwealth's Title III case, rather than in another venue.  Indeed, Movants' justification that the mere filing of a plan should result in lifting of the automatic stay for these purposes would render the automatic stay ineffective whenever a debtor files a plan—a result plainly contrary to the purpose of the Title III stay.

4.     For these reasons, as more fully detailed below, the Motion should be denied.

## **BACKGROUND**

### **A.     The Commonwealth's Payments Under the Stipulation**

5.     The Commonwealth and Movants entered into the Stipulation on July 12, 2019, to permit the Commonwealth to make quarterly payments on an interim, estimated basis while allowing certain aspects of prepetition litigation involving Movants to be resolved.  Mot. Ex. F. The Stipulation modified the Title III stay solely to allow (a) appeals of related prepetition litigation in the First Circuit to proceed to judgment, (b) the Commonwealth to issue prospective estimated wraparound payments "pursuant to the Order, dated June 5, 2015, in the [Prepetition Litigation] [Case No. 03-1640-GAG, ECF No. 674] and the Order, dated November 8, 2010 in former Lead Case No. 03-1640-GAG, ECF No. 743, using the Parties' previously agreed upon

3

estimated payment formula, adjusted with the newly set rates listed in Exhibit A attached [to the Stipulation]" (the "Quarterly Payments"), and (c) the District Court to continue a procedure of collecting from the Commonwealth, and distributing to the Movants, Quarterly Payments. Stipulation ¶ 1.  In that regard, the Stipulation permits the Commonwealth to deposit with the District Court, and for the District Court to thereafter distribute to Movants, the Quarterly Payments the Commonwealth has chosen to make pursuant to the Stipulation.  To date, the Commonwealth has paid approximately $123,966,004.84 in quarterly payments to health centers.[6]

### B.   Negotiations and Payment of the Shortfall

6.    Since the Motion was filed, the Oversight Board and Movants (as well as other federally qualified health centers operating in Puerto Rico that are not parties to this Motion) have been engaged in discussions to resolve the Motion and, more importantly, address long standing issues among the Movants and the Commonwealth, including litigation that spans a period covering over twenty years of disputes.  On several occasions, the Oversight Board and Movants have agreed to adjourn the hearing on the Motion and extend the deadlines for responsive pleadings

---

[6]   To date, the Commonwealth has deposited with the District Court the following quarterly payments, which includes payments to Movants and others:

| Applicable Quarter | Deposit Date | Amount |
| --- | --- | --- |
| First Quarter 2019 | April 26, 2019 | $14,047,716.33 |
| Second Quarter 2019 | July 17, 2019 | $12,158,624.64 |
| Third Quarter 2019 | October 17, 2019 | $13,103,170.48 |
| Fourth Quarter 2019 | January 17, 2020 | $12,630,897.56 |
| First Quarter 2020 | April 17, 2020 | $18,006,398.95 |
| Second Quarter 2020 | July 17, 2020 | $18,006,398.96 |
| Third Quarter 2020 | October 16, 2020 | $18,006,398.96 |
| Fourth Quarter 2020 | January 15, 2021 | $18,006,398.96 |

See Docket Entries, *Rio Grande Community Health Center, Inc., et al. v. Hon. Rafael Rodriguez Mercado, Secretary, Department of Health Commonwealth of Puerto Rico*, Case No. 03-1640 (GAG), (D.P.R.); *see also* Mot. Ex. B-6 (listing Movants' record of actual payments).

so as to permit those discussions to unfold, including the collection of data that might shed light on the numerous claims that have been asserted by the Movants.

7.      On May 30, 2020, Movants and the Oversight Board entered into the *Joint Stipulation and Order Regarding Atlantic Medical Center, Inc., et al.'s Motion for Relief form the Automatic Stay (ECF No. 12918)* [ECF No. 13279] (the "Adjournment Stipulation"), which, among other things, amended the briefing schedule for objections to the Motion.  Movants also agreed in the Adjournment Stipulation that the Commonwealth's payment, on or before July 13, 2020, of $7,664,073.10 to the Health Centers was "in full and complete satisfaction of the Shortfall . . . ."  Adjournment Stipulation ¶ 4.  Notwithstanding the Commonwealth's agreement to make this payment, the Adjournment Stipulation made clear that such agreement "shall not be deemed to be, nor construed as, (a) an admission by any party of any liability or that any claim or defense has or lacks merit; or (b) a waiver of the Commonwealth's rights to dispute, contest, setoff, or recoup any claim."  *Id.*; *see also id.* ¶ 9 (reserving the Oversight Board's rights to respond to any claims or allegations set forth in the Motion).

8.      On July 10, 2020, the Commonwealth caused $7,664,073.10 to be paid by check to the U.S. Clerk of the District Court for the District of Puerto Rico. *See* Prepetition Litigation, ECF No. 1248.  On July 14, 2020, Movants requested, pursuant to a *Motion to Disburse Funds* [Prepetition Litigation, ECF No. 1250], disbursement of amounts totaling $7,664,073.08, which the District Court granted on July 15, 2020. Prepetition Litigation, ECF No. 1251.

9.      Since then, the hearing on the Motion and deadline for responsive pleadings have been further extended as the Oversight Board and Movants continued their discussions.  The Court

has entered several orders extending the objection deadline to the Motion and adjourning the hearing accordingly.[7]

10.     Movants and the Oversight Board are still engaged in discussions with the hopes of consensually resolving, among other things, the Motion.  As the Oversight Board continues to await Movants' delivery of information that would permit the parties to continue the dialogue, the Oversight Board requested from Movants a further extension of deadlines to file responsive pleadings regarding the Motion.  Unfortunately, the parties were unable to come to agreement on such an extension.  Accordingly, the Oversight Board, on behalf of the Commonwealth, is filing this Objection to preserve its rights, while it remains open to continued dialogue with the Movants in an effort to resolve consensually their claims.

## **ARGUMENT**

11.     Movants ask the Court to (i) compel the Commonwealth to pay an alleged $7.66 million shortfall immediately and pay Quarterly Payments pursuant to Movants' interpretation of the terms of the Stipulation, (ii) lift the automatic stay to allow related prepetition litigation to go forward, and (iii) prospectively enforce payment of the statutory Wraparound Payments. Mot. ¶ 19.  For the following reasons, Movants' requests should be denied.

---

[7]  The Court has extended and adjourned dates as follows:

| Order Date | ECF No. | New Objection Deadline | New Reply Deadline | New Hearing Date |
|---|---|---|---|---|
| September 3, 2020 | ECF No. 14172 | October 14, 2020 | October 21, 2020 | October 28, 2020 |
| October 14, 2020 | ECF No. 14581 | November 24, 2020 | December 2, 2020 | December 9, 2020 |
| November 25, 2020 | ECF No. 15270 | January 13, 2021 | January 20, 2021 | January 27, 2021 |
| January 13, 2021 | ECF No. 15608 | February 24, 2021 | March 3, 2021 | March 10, 2021 |

## I.      Movants Are Not Entitled to Immediate Payment or an Enforcement Injunction.

### A.      Movants Have Been Paid the Shortfall

12.      The Shortfall has been paid. On July 10, 2020, the Commonwealth caused $7,664,073.10 to be paid by check to the U.S. Clerk of the District Court for the District of Puerto Rico, which Movants requested distributed to them and which the District Court approved. *See* Prepetition Litigation, ECF Nos. 1247, 1248, 1250, 1251.

13.      Under the Adjournment Stipulation, Movants agreed that the Commonwealth's payment, on or before July 13, 2020, of $7,664,073.10 to them was "in full and complete satisfaction of the Shortfall . . . ." Adjournment Stipulation ¶ 4.[8]  Accordingly, Movants' first request—for immediate payment of the alleged Shortfall—is moot and must be dismissed.

### B.      Any Payment Requested Cannot Be Compelled Pursuant to PROMESA Section 305

14.      Movants' third request—prospectively enforcing future payments under the Stipulation—directly contravenes PROMESA Section 305 because it seeks to mandate how the Commonwealth uses its property (to pay Movants). *See* PROMESA § 305 (prohibiting interference with "any of the property or revenues of the debtor" unless the Oversight Board consents or it is provided for by a plan). The Court's and the First Circuit's prior rulings are clear on this issue. *See, e.g.*, *Aurelius Capital Master, Ltd. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.),* 919 F.3d 638, 648 (1st Cir. 2019) (court barred by PROMESA section 305 from entering declaratory judgment that "would have directed the Commonwealth about how it must handle and disburse" certain revenues to pay creditors); *Ambac Assurance Corp. v. Puerto Rico*

---

[8]  As noted above (*see supra* ¶ 7), in making these payments and agreeing to the Adjournment Stipulation, the Oversight Board reserved its rights regarding the claims made in the Motion, including whether Movants were owed the Shortfall, whether Movants' calculations in arriving at the Shortfall were correct, or whether the payment would be subject to any recoupment, dispute, or set off by the Commonwealth. Adjournment Stipulation ¶¶ 4, 9.

*(In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 927 F.3d 597, 602–03 (1st Cir. 2019) (court cannot

grant declaratory judgment stating debtor's use of funds was unlawful under PROMESA Section

305), *cert. denied*, 140 S. Ct. 856 (2020).  Movants provide no authority to the contrary, and further

make no attempt to address this issue.  For this reason, Movants' requests (i) and (iii) should be

denied.

> **C.**     **The Stipulation Merely Permits, and Does Not Require, the Commonwealth to Make Wraparound Payments**

15.     Even if payment could be compelled (which it cannot, pursuant to PROMESA

Section 305), Movants are not entitled to payment, including immediate payment of any future

Quarterly Payment, pursuant to the Stipulation.  Movants allege the Commonwealth is required

(*e.g.*, Mot. ¶ 12) to make payments pursuant to paragraph 1 of the Stipulation, but, in fact, the

Stipulation's plain text shows the Quarterly Payments are voluntary, not mandatory.   Under

paragraph 1 of the Stipulation, the Commonwealth and Movants agreed to modify the Title III stay

to *allow* the Commonwealth to make estimated Quarterly Payments pursuant to a procedure

previously established by the District Court.  It states in relevant part:

> The Title III stay is hereby modified solely to the limited extent
> necessary to ***allow*** (a) the pending appeals before the United States
> Court of Appeals for the First Circuit . . . (b) ***the Commonwealth to***
> ***continue to issue the estimated prospective quarterly wraparound***
> ***payments***, pursuant to [two prior District Court orders], using the
> Parties' previously agreed upon estimated payment formula,
> adjusted with the newly set rates listed in Exhibit A [of the
> Stipulation] . . . and (c) the District Court in the Prepetition Action
> to (1) to receive the Quarterly Payments; (2) to consider and rule on
> motions to distribute the Quarterly Payments; (3) to distribute the
> funds from the Quarterly Payments in accordance with orders
> entered by the District Court in the same manner the distributions
> have been made up to the date of this Stipulation.

Stipulation ¶ 1 (emphasis added).

16.     Paragraph 2 of the Stipulation explicitly confirms the voluntary nature of payments made under paragraph 1:

> Except as provided in Paragraph 1 of this Stipulation, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, (a) **any action to compel payment by the Commonwealth with respect to wraparound payment not *voluntarily* made pursuant to Paragraph 1 above** . . . .

Stipulation ¶ 2 (emphasis added).

17.     Simply put, Movants are not entitled to an order compelling the Commonwealth to make any payments, including future Quarterly Payments, because the Stipulation did not put any such obligation on the Commonwealth.  Rather, under the plain terms of the Stipulation, the Quarterly Payments are voluntary.

### D.     Movants' Request for Future Compliance With the Law is a Procedurally Improper Request for an Injunction

18.     Movants' third request, "enforcing payment of ongoing payments due pursuant to 42 U.S.C. § 1396(a)(bb)(a)" (Mot. ¶ 19), should also be denied because it is an improper request for an injunction.  Even putting aside the fact that an order merely to "obey the law" can be unenforceable,[9] under Bankruptcy Rule 7001 (applicable to this Title III case pursuant to PROMESA Section 310), an application for an injunction must be made by instituting an adversary proceeding.  Fed. R. Bankr. P. 7001(7).  Here, that has not been done.

---

[9]   *See SEC v. Jones*, 300 F. Supp. 3d 312, 318 (D. Mass. 2018) (citation omitted) ("'obey-the-law' injunctions may or may not be enforceable depending on the specific circumstances"); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (citation omitted) ("an injunction must be more specific than a simple command that the defendant obey the law").

19.     Moreover, the subject of prospective compliance with the statute is the same subject matter of the Prepetition Litigation.  The complaint in the Prepetition Litigation seeks to determine the Commonwealth's compliance with:

> the payment rights under the Medicaid statute, 42 U.S.C. § 1396a(bb), and seek[s] injunctive relief requiring the Commonwealth to comply with federal law including the continuing obligations of the Commonwealth to make supplemental payments, known as wrap around payments (the 'Wrap Around Payments'), pursuant to 42 U.S.C. § 1396a(bb).

Mot. ¶ 2 (citing Prepetition Litigation).  On the one hand, Movants here seek to have the Court interpret and compel compliance with 42 U.S.C. § 1396a(bb), and, on the other, to lift the automatic stay to have the District Court do the same thing.

## II.    The Automatic Stay Should Not Be Lifted to Allow the Prepetition Litigation to Proceed.

### A.    The *Sonnax* Factors Weigh Heavily Against Lifting the Stay

20.      "The automatic stay is among the most basic of debtor protections under bankruptcy law."  *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate.'"  *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citation omitted). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference.  *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) (citation omitted) ("[T]he automatic stay gives the debtor a 'breathing spell from his

10

creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'"); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (citation omitted) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'" (quoting H.R. Rep. No. 95-595 at 340 (1977))); *Delpit v. Comm'r IRS*, 18 F.3d 768, 771 (9th Cir. 1994) (emphasis added) (citation omitted) ("Congress intended to give debtors 'a breathing spell' from their creditors and *to stop 'all collection efforts*, all harassment, and all foreclosure actions.'").

21.     An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *Goya Foods v. Unanue-Casal (In re Unanue-Casal)*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd without opinion sub nom. Unanue v. Unanue-Casal (In re Unanue-Casal)*, 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

1)  whether relief would result in complete or partial resolution of the issues;

2)  the lack of any connection with or interference with the bankruptcy case;

3)  whether the foreign proceeding involves the debtor as fiduciary;

4)  whether a specialized tribunal has been established to hear the cause of action at issue;

5)  whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6)  whether the action essentially involves third parties rather than the debtor;

7)  whether the litigation could prejudice the interest of other creditors;

8)  whether a judgment in the foreign action is subject to equitable subordination;

9)  whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12) the impact of the stay on the parties and the "balance of harms."

*In re Sonnax Indus.*, 907 F.2d at 1286.

22.   Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Cap. Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *In re Sonnax*, 907 F.2d at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95-96; *Peaje Invs. LLC v. Garcia-Padilla*, Nos. 16-2365, 16-2384, 16-2696, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016), *aff'd*, 845 F.3d 505 (1st Cir 2017); *Fin. Oversight & Mgmt. Bd. for P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

23.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it.  *Brigade*, 217 F. Supp. 3d at 518, 529 n.12.  Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one.  *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

24.     Movants' request should be denied because "cause" does not exist to lift the automatic stay.  *See* 11 U.S.C. § 362(d).  Furthermore, the four *Sonnax* factors that Movants identify as relevant actually favor maintaining the stay.

25.     **_Sonnax_ Factor 1:**  The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against modifying the automatic stay.  The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would *expeditiously* resolve issues relevant to the bankruptcy case.  *See, e.g.*, *In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan").  Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues."  *See, e.g.*, *Murrin v. Hanson (In re Murrin)*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

13

26.     Here, Movants seek to have the Court lift the automatic stay in order to liquidate their proofs of claim.  Mot. ¶ 31 ("Allowing the Prepetition Litigation to proceed will provide all parties with a process to liquidate the Movants' claims.").  But, as Movants themselves point out, "formulating a final calculation and resolution [in the District Court] will require significant input from experts and other parties."  *Id.* ¶ 32.

27.     Continuing the stay and liquidating the Movants' proofs of claim in the Title III claims process, on the other hand, is superior at conserving judicial resources.  Bankruptcy Code section 502(c), made applicable by PROMESA Section 301, permits (and requires) the Court to estimate claims whose liquidation would unduly delay the administration of the case. 11 U.S.C. § 502(c).  Here, given the complexity of the calculations involved and expert testimony remaining in the Prepetition Litigation, estimation could be the appropriate approach to liquidate Movants' proofs of claim for purposes of a Title III plan.  In estimating Movants' claims, the Court would be able to use whatever method is best suited to the particular circumstances.  *Adams v. Cumberland Farms, Inc.*, 86 F.3d 1146 (1st Cir. 1996); *see also Maxwell v. Seaman Furniture Co. (In re Seaman Furniture Co. of Union Square, Inc.)*, 160 B.R. 40 (S.D.N.Y. 1993) (court may use arbitration process as basis for estimation).  This allows for many possibilities, including abbreviated procedures that could save significant resources.  Movants in fact indicate they are amenable to alternative procedures to District Court litigation.  *See* Mot. ¶ 31 n.12 (indicating a willingness to participate in mediation under certain conditions).  A Title III process is more flexible and superior at conserving resources—a crucial consideration in this Title III case.  Accordingly, lifting the automatic stay to allow the Prepetition Litigation to proceed would not *expeditiously* quantify Movants' claims in connection with the Debtors' restructuring.

28.     Furthermore, Movants contend that, because the Commonwealth has filed a plan of adjustment and disclosure statement, "given the posture of the case, the time is ripe to have the District Court determine the correct methodology for the calculation of all [payments] owed to the Movants . . . ." *Id.* ¶ 17.  However, as this Court is aware, the Commonwealth will be filing an amended plan and disclosure statement on or before March 8, 2021.  *Urgent Motion of the Financial Oversight and Management Board for Puerto Rico Requesting Extension of Deadlines for Submission of Plan of Adjustment or Term Sheet with Respect Thereto* [ECF No. 15821].  Given the long history of the history of the Prepetition Litigation, and, most importantly, Movants' inability to provide information to substantiate their claims, it is highly unlikely Movants' claims could be liquidated any time soon.  Rather, Movants' requested stay relief would require the Commonwealth to divert its resources away from confirmation of a plan of adjustment to litigate claims in a separate forum, and hinder the Commonwealth's efforts to pursue confirmation of a plan for the benefit of creditors holding valid, liquidated and undisputed claims.

29.     ***Sonnax* Factor 2**:  The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay.

30.     The Commonwealth would be required to devote resources to fully litigate the Prepetition Litigation, which would interfere with its Title III case and overall restructuring by diverting critical funds from its recovery efforts (especially during the COVID-19 pandemic) and payment of all similarly situated creditors pursuant to the plan of adjustment.

31.     As holders of disputed unliquidated claims against the Commonwealth, Movants' claims, like many other similar claims, are subject to the claims resolution process undertaken in the Title III case.  Thus, requiring the Commonwealth to defend Movants' claims separately (especially where, as Movants recognize here, the Commonwealth would need to hire experts to

prepare its case[10]) would undermine that process and upend the "strong bankruptcy code policy

that favors centralized and efficient administration of all claims in the bankruptcy court . . . ."  *See*

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir.

1992); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3

(Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and

requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the

claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the

goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

Thus, *Sonnax* factor 2 weighs in favor of denying the Motion.

33.     ***Sonnax* Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has

been established to hear the cause of action at issue—does not support granting the Motion.

Although the District Court may be familiar with the prepetition background, it is not a specialized

tribunal, and no specialized tribunal is needed to adjudicate Movants' claims.  Thus, *Sonnax* factor

4 weighs in favor of denying the Motion.

33.     ***Sonnax* Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier

has assumed full financial responsibility for defending the litigation—does not support granting

the Motion.   No insurer of the Commonwealth has assumed any financial responsibility in

connection with the Prepetition Litigation nor any eventual judgment therein, and Movants do not

allege any facts to the contrary.  Thus, *Sonnax* factor 5 does not support granting the Motion.

34.     ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves

third parties rather than the debtor—does not support granting the Motion.  This factor is not based

---

[10]  *See* Mot. ¶ 32 ("formulating a final calculation and resolution [in the District Court] will require significant input from experts and other parties[.]").

16

on whether third parties are involved, but rather, whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Cap., LLC*, No. 12-12020, 2012 Bankr. LEXIS 3641, at \*20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* Factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 05-cv-5704, 2006 U.S. Dist. LEXIS 55284, at \*33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not *primarily* involve third parties." (emphasis in original)).

35.    Here, the Prepetition Litigation involves *primarily* the Commonwealth, and it will be required to expend its own funds to defend against Movants' claims. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").  Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.

36.    ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.  While the Prepetition Litigation has been pending since 2006, the Commonwealth would have to expend considerable time and expense to litigate the Prepetition Litigation by hiring experts, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial.  The Commonwealth's limited resources, especially during the COVID-19 pandemic, would be particularly stretched if it were required to expend resources to defend against the Prepetition Litigation at this time.

37.     Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation.  *See, e.g.*, *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09-50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury").

38.     Here, the depletion of the Commonwealth's resources to defend against the Prepetition Litigation (and other potential actions, if other federally qualified health centers were incentivized to seek relief from the automatic stay if such relief were granted here) and the diversion of the Commonwealth's attention to proceed through its Title III case would inure to the detriment of the Commonwealth's other creditors.  *See In re Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Nw. Airlines Corp.*, No. 05-17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) (citation omitted) ("'To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to

18

restructure' . . . interfere[ing] with judicial economy and the Debtors' process of reorganization.").
Accordingly, *Sonnax* factor 7 does not support granting the Motion.

39.     **_Sonnax_ Factors 10 and 11:**  The interest of judicial economy and the expeditious
and economical determination of the Prepetition Litigation, and whether the Prepetition Litigation
has progressed to the point where parties are prepared for trial, also weigh against stay relief.  As
discussed, the Court could just as well, and more efficiently, adjudicate the issues present in this
Title III case.  Furthermore, the Commonwealth would need to hire experts to prepare its case for
trial, which would require such experts to be hired through the government's contracting
procedures.  Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion.

40.     **_Sonnax_ Factor 12:**  Balancing of the harms clearly favors denial of the Motion.
The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that
Movant would suffer if the automatic stay remains in place.  The diversion of the Commonwealth's
resources to defend Movants' claims while the Commonwealth is focused on addressing the
COVID-19 pandemic and its impact, and the prejudice to the interests of other similarly situated
creditors all weigh in favor of continuing the automatic stay.  Lifting the stay here will not save
the Commonwealth any time or money.  Rather, it will force the Commonwealth to spend time
and money now to liquidate claims that should be addressed in the claims administration process.

41.     On the other hand, postponing liquidation of the Movants' claims so the
Commonwealth can focus on its recovery efforts and ultimate restructuring would benefit all
creditors and promote judicial economy.  Movants would not suffer any individual hardship, as
their claims would be liquidated at the same time as those of all other unsecured creditors.  And,
given the length of the Prepetition Litigation and current posture of this Title III case, there is no
guaranty that the resolution of the Prepetition Litigation would come any sooner than the resolution

of Movants' claims in the Title III case.  Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[11]

## <u>CONCLUSION</u>

42.     For the reasons set forth herein, the Oversight Board requests the Court deny the Motion in its entirety.

[*Remainder of Page Intentionally Left Blank*]

---

[11]   The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

New York, New York

February 24, 2021

Respectfully submitted,

**O'NEILL & BORGES LLC**

By: /s/  *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Telephone: (787) 764-8181
Facsimile: (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

By: */s/ Brian S. Rosen*
Martin J. Bienenstock*
Brian S. Rosen*
Paul V. Possinger*
Ehud Barak*
Eleven Times Square New York, NY 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: mbienenstock@proskauer.com
         brosen@proskauer.com
         ppossinger@proskauer.com
         ebarak@proskauer.com

* admitted *pro hac vice*

*Attorneys for the Financial Oversight and*
*Management Board and as representative of the*
*Commonwealth of Puerto Rico*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I filed this document electronically with the Clerk

of the Court using the CM/ECF System, which will send notification of such filing to all parties

of record and CM/ECF participants in this case.

*<u>Hermann D. Bauer</u>*
Hermann D. Bauer
