# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00005-LTS |

**JOINT STATUS REPORT REGARDING DISCOVERY
IN THE REVENUE BOND ADVERSARY PROCEEDINGS**

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

Ambac Assurance Corporation ("Ambac"), Financial Guaranty Insurance Company ("FGIC"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured"), National Public Finance Guarantee Corporation ("National"), The Bank of New York Mellon ("BNY"), U.S. Bank Trust National Association ("U.S. Bank", and collectively with Ambac, FGIC, Assured, National, and BNY, the "Defendants"), and the Financial Oversight and Management Board for Puerto Rico (the "Board"), as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth" or "Debtor") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this joint status report in accordance with the Court's Order dated February 5, 2021 (ECF No. 15809) regarding discovery in the adversary proceedings (the "Adversary Proceedings") regarding bonds issued by the Puerto Rico Infrastructure Finance Authority ("PRIFA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Highways and Transportation Authority ("HTA").[2]

## JOINT REPORT

## I.    PROCEDURAL BACKGROUND

1.    On January 20, 2021, the Court issued its *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims* (ECF No. 15656) (the "Rule 56(d) Order"). The Rule 56(d) Order authorized discovery directed to specified topics pertaining to the Board's request for summary judgment on various claims in the Adversary Proceedings.

---

[2] Unless otherwise indicated, all ECF numbers referenced herein refer to the docket in Case No. 17 BK 3283-LTS. The Board, as representative of the Commonwealth, is referred to the "Plaintiff."

2.      On February 3, 2021, the Defendants and the Plaintiff filed a status report, as required by the Rule 56(d) Order (ECF No. 15801) (the "Scheduling Status Report").

3.      On February 5, 2021, the Court entered an *Order Setting Discovery Schedule* (ECF No. 15809) (the "Rule 56(d) Discovery Scheduling Order"), which, among other provisions, required the Parties to "file a joint status report (raising any then-expected discovery disputes) by" February 25, 2021.

## II.    DEFENDANTS' DISCOVERY REQUESTS

4.      As required by the Court's Rule 56(d) Discovery Scheduling Order, Defendants served their initial document requests on February 8, 2021.  *See* Exhibit 6[3] (PRIFA requests); Exhibit 7 (CCDA requests); Exhibit 1 (HTA requests).  The same requests (through subpoenas) were served on certain Commonwealth instrumentalities [4] (together, with Plaintiff, the "Government").  On February 23, 2021, the Government served responses and objections to the initial document requests and subpoenas.  *See* Exhibit 9 (PRIFA R&Os); Exhibit 10 (CCDA R&Os); Exhibit 8 (HTA R&Os).

5.      Last week, Defendants also noticed subpoenas *duces tecum* to third parties in connection with the PRIFA and CCDA cases, including banks, rum producers, and accounting firms.  Third-party subpoenas will be served in the HTA case starting tomorrow.

6.      Finally, certain Defendants served interrogatories, seeking information such as a list of witnesses with knowledge of the topics on which discovery was served, the documents the Plaintiff may rely on in any subsequent summary judgment briefing, and certain issues specific to

---

[3] To aid the Court's review of this report, the Parties are filing herewith two appendices containing the exhibits cited herein.  Exhibits 1-5 refer to the exhibits in the Government's appendix.  Exhibits 6-12 refer to the exhibits in Defendants' appendix.

[4] Specifically, subpoenas were served on (i) AAFAF, Treasury, and GDB in each Adversary Proceeding and (ii) PRIFA, HTA, CCDA, and the Tourism Company in the Adversary Proceeding relevant to that instrumentality.

each revenue bond.  Ambac served interrogatories in the PRIFA and CCDA cases, and National served interrogatories in the HTA case.  Defendants in the CCDA and PRIFA actions also served requests for admissions in each of those cases.

## III.   PARTIES' DISCUSSIONS REGARDING DOCUMENT DISCOVERY

7.      The Government and Defendants (the "Parties") met and conferred regarding the Government's responses and objections to Defendants' document requests on February 23, 2021 (the day after the responses and objections were due and served).  For the purposes of efficiency, the Parties focused their meet-and-confer on certain overarching issues.  Defendants agreed to send a subsequent e-mail to the Government regarding specific disagreements on instructions, definitions, general objections to the document requests, and certain specific requests and sub-parts.

8.      To aid the Court in understanding the status of the Parties' discussions and the potential disputes, the Parties briefly set out below in respective sections a description of the nature of some of the issues the Parties are discussing.  The principal dispute is the scope of discovery permitted under the Rule 56(d) Order.  The omission of an issue from this report should not be construed as a waiver of any rights of the Parties, and the Parties propose that the Court receive briefing regarding substantive disputes.

## IV.   NEXT STEPS

9.      In light of the status of the Parties' current discussions, it is premature (as of the date of this report) for the Parties to submit any disputes to the Court for resolution.  The Parties propose to continue the meet-and-confer process later this week and early next (by telephone or by email), so that the Parties can explore whether a compromise is possible on some or all of the overarching or other specific issues addressed below or otherwise communicated between the

Parties.  However, should the Court believe based on its review of this Joint Report that an immediate Court conference is necessary, the Parties will make themselves available.

10.     Should the Court not set a more immediate Court conference, and in light of the shared goal of all parties to expedite this process to the greatest extent possible, Defendants propose to file a motion to compel next Wednesday, March 3, 2021, regarding any issues as to which the Parties have reached an impasse at that time; the Government could respond on Wednesday, March 10, 2021; and Defendants would reply on Friday, March 12, 2021.  The Court could thereafter hold a hearing on Tuesday, March 16, 2021, or the next available date convenient to the Court, in the event that the Court determines a hearing would be appropriate or helpful.

11.     The Parties would propose to continue meet-and-confer discussions to the greatest extent possible in the hopes of continuing to narrow and make progress on these issues.

### DEFENDANTS' STATEMENT

12.     As the agreed-upon joint report makes clear, the Parties are continuing their meet-and-confer discussions and have not yet reached an impasse on any issue that requires judicial intervention.  The Parties also agree that the appropriate course now is for the Parties to conclude their discussions over the coming days and submit briefing on an expedited schedule, starting next Wednesday, so that the Court can resolve (on the basis of a full record) any disputes that remain after the meet-and-confer process is concluded.

13.     Given these agreements, the only issue the Court needs to resolve today is whether the Parties' proposed briefing schedule is acceptable to the Court.  The Court need not expend its time reviewing in detail (or at all) these position statements, which show nothing except that the Parties are in the middle of the meet-and-confer process that includes disputes over scope. Nevertheless, the Government insisted on submitting a polemic preemptively attacking

Defendants' discovery requests (primarily on the basis of issues that the Government has not met-and-conferred with Defendants about at all).  Defendants provide some context here, in the event that the Court elects to review these position statements.

### A.    Overall Scope of Discovery

14.    While the Government's submission reads as though there is a five-alarm fire in this case, it is hardly unusual for parties to have disputes about scope during the discovery process. To date the Parties have held just one meet-and-confer, regarding document requests.  (Consistent with the schedule that the Court ordered, the Government's responses to Defendants' document requests were served on Monday.  The Parties had a lengthy and productive meet-and-confer on Tuesday.)  Given the nascent stage of the meet-and-confer process, one would expect there to be unresolved disputes regarding scope.  The purpose of the meet-and-confer is to work through those issues and allow the parties to narrow their disputes so the Court is presented with the Parties' considered positions.

15.    The Board alleges that "Defendants' [approach to] discovery is designed to prolong litigation without end."  In fact, the opposite is true.  Defendants have made diligent efforts to serve their discovery requests as soon as possible at the outset of the discovery period—which is exactly what the Government said it thought Defendants should do in the Scheduling Status Report.  (ECF No. 15801 at 22.)  Given the limited time period the Court has allowed for discovery, Defendants are making an effort to tee up discovery requests now, at the beginning of the discovery period, so that the Parties can hold productive meet-and-confers at the outset, promptly present any areas of dispute to the Court, and move forward to complete the process within the time the Court has allowed.  This is exactly what any party seeking discovery should do to complete the process on time.

16.     In an effort to create the impression that Defendants' discovery requests are unreasonable, the Board misrepresents them.  Defendants served exactly one document request for each topic that Judge Swain authorized.  The document requests included subparts that were intended to provide additional specificity about what documents Defendants believe are encompassed within the scope of the topic as framed by Judge Swain.  That specificity makes the discovery process more efficient—not less so—because it allows the Parties to have productive and detailed meet-and-confers up front about scope.  The Board tries to cast each subpart of the document request as separate a "request," but in fact, they merely articulate, with greater specificity, specific *subsets* of documents encompassed within a broader topic that Judge Swain identified.  Indeed, the Government did not respond separately to each sub-part (nor did it need to), so there was no incremental burden from this additional specificity.  The Government simply provided one response to each request (*i.e.*, each topic that Judge Swain identified), noting which parts of it the Government considered objectionable and which it did not.

17.     The Board similarly exaggerates the number of interrogatories—even though the Board has not even served responses or objections to them, let alone met-and-conferred with Defendants about any concerns it has.  Defendants served no more than four interrogatories in each Adversary Proceeding.  One or two in each case sought information about a critical issue, as to which an up-front interrogatory response could help focus the rest of the discovery process.  An additional two interrogatories in each case sought basic "initial disclosures"—a list of knowledgeable witnesses and any documents the Government would rely on.  *Cf.* Fed. R. Civ. P. 26(a)(1)(A)(i), (ii).  In an effort to strictly comply with Judge Swain's order on scope, Defendants made explicit that all of the interrogatories were limited to the topics on which Judge Swain has authorized discovery, and cross-referenced Defendants' articulation of the topics in

their document requests in an effort to provide, in a streamlined manner, Defendants'
understanding of the appropriate scope.  The Government's argument appears to be that, because
the interrogatories cross-referenced the document requests in an attempt to *limit* the scope, the 10
interrogatories are really "317 interrogatories"—because the interrogatories should be multiplied
by the number of subparts in the document requests.  This is plainly ridiculous.  The interrogatories
do not call for or require 317 separate *responses* (not even close).  Defendants merely asked, for
example, for one list of witnesses with knowledge of the topics on which discovery is permitted.

18.     To the extent that the cross-referencing is giving the Government heartburn,
Defendants are more than happy to discuss an alternative way to make clear that the interrogatories
are limited to the topics identified in the Rule 56(d) Order.  Defendants see no reason why the
Parties would have a dispute about this, let alone one that requires judicial intervention.

19.     The Government's complaints about subpoenas are equally unfounded.  Defendants
served subpoenas on relevant Commonwealth instrumentalities (through AAFAF's counsel) for a
few reasons:  (i) to avoid technical disputes about which entities have an obligation to produce
responsive documents in their possession, custody, and control; (ii) to aid AAFAF's counsel in
working with other government offices to obtain compliance with requests; and (iii) to reserve
Defendants' rights under the agreed-upon and Court-ordered deadline to serve initial document
requests on the Government.  Before serving the subpoenas, to maximize the efficient use of
resources, Defendants informed the Government that subpoenas served on Commonwealth
instrumentalities would be exact copies of the document requests served on the Plaintiff—and that
the Government was free to provide one set of responses and objections on behalf of all of the
Commonwealth instrumentalities.  The Government in fact did so.  Hence, the subpoenas do not

require separate compliance efforts.  They merely avoid any dispute over whether certain Commonwealth entities should produce any responsive documents they hold.

20.     The Government never objected to Defendants that this approach was inherently improper.  Had it done so, Defendants would have been happy to discuss alternatives.  Indeed, in the only case where AAFAF indicated it would incur some incremental burden in responding to a particular subpoena, Defendants agreed to forego serving that subpoena entirely in order to save the Government from any unnecessary burden.

21.     The complaints about third-party subpoenas are equally meritless.  Judge Swain's Rule 56(d) Order expressly authorized discovery directed to "relevant third parties."  (Rule 56(d) Order at 6.)  Defendants gave the Government advance notice of all third-party subpoenas before they were served, and the Government raised no objection to any of the subpoenas at the time. The first time Defendants learned that the Government had any concerns with the third-party subpoenas was after 5 p.m. Puerto Rico time today, when the Government first shared its draft position statement for this status report with Defendants.  (The Government also did not express any concerns about the subpoenas to Commonwealth instrumentalities until that time.)

22.     Had the Government raised this issue with Defendants, Defendants would have explained that Defendants have already been in contact with counsel for a number of the third parties—and the subpoenas are well on their way to being resolved in a timely manner.  Two subpoenas have already been complied with or otherwise resolved.  Several entities have already contacted Defendants and advised that they intend to comply with the subpoenas but requested brief extensions to allow them to complete their production of documents.  Defendants have agreed to reasonable extension requests, but even with extensions, all of the currently outstanding subpoenas are due to be returned next month—well in advance of the May 7, 2021 deadline for

completing third-party discovery.  Defendants have also already started discussions about scope.
Defendants agreed to narrow the scope of one subpoena, based on specific information provided
by the entity involved, and of course, will make themselves available to assist any other parties.

23.     The Board argues that the subpoenas "cannot possibly be understood by non-party
witnesses," citing a subpoena served on a bank as an example.  Defendants have already been in
touch with one bank that has indicated it expects to be able to comply next month, and no bank
has raised any objection to the subpoenas.  The subpoenas directed to banks include the specific
account numbers about which discovery is sought, and are handled by offices within banks that
routinely respond to subpoenas seeking account records.

24.     Defendants are not aware of any instances where subpoena recipients have
suggested that they intend to move to quash or modify the subpoenas.  In the event there are
disputes regarding specific requests, Defendants will make every effort to resolve those reasonably
and to avoid undue burden on subpoena recipients.

25.     Besides challenging the specific requests Defendants have served, the Board
misquotes appellate advocate Neal Katyal in an attempt to relitigate whether discovery is
necessary.  Mr. Katyal argued that the First Circuit could rule in favor of HTA bondholders on
pure legal grounds that do not turn on discovery or factual evidence.  The premise of his argument,
of course, was that Movants had presented a colorable claim on pure legal grounds and were
entitled to stay relief to litigate merits issues in another forum.  Mr. Katyal never suggested that
discovery would be irrelevant to merits issues that could be litigated here (if the First Circuit
affirms) or another forum if Defendants prevail on appeal (and his comments did not pertain at all
to PRIFA or CCDA).  Judge Swain herself expressly concluded that additional discovery is
appropriate and necessary to further elucidate the factual and legal issues that exist in the summary

judgment motions, which she evaluated on the basis of extensive briefing.  The Board should accept the Court's decision and work within the scope of the issues on which Judge Swain indicated discovery was needed.

**B.      Specific Topics Discussed**

**1.      Accounting/Audit Issues**

26.      During the lift-stay discovery period, the Government produced certain records that identified PRIFAS (the Commonwealth's accounting system) but objected to any other discovery requests directly tailored to fund accounting or accounting designations.  Defendants argued in opposition to summary judgment motions that fund accounting is relevant to some of the legal issues, particularly in the case of HTA and PRIFA, where Defendants contend that certain funds held in the Treasury Single Account are special funds or special deposits (tracked through accounting designations) equitably owned by PRIFA or HTA.  The Rule 56(d) Order expressly agreed with Defendants' argument that discovery into these issues is needed—authorizing discovery into "the accounting treatment of Rum Tax Remittances in general, including the use and purpose of account designations, fund codes, and DeptIDs" (referring to specific fund accounting designations).

27.      The Rule 56(d) Order similarly authorized discovery, in the context of the HTA bonds, into "Fund 278 and its sub-accounts" and "the flow of funds into and out of Fund 278." (Fund 278 is a fund number that Defendants contend is used to track HTA funds on the Commonwealth's general ledger.[5])   Among other critical documents, specific policies or procedures must exist that specify which revenues receive the Fund 278 designation and when the Fund 278 designation is to be used. Such evidence is within the scope of the 56(d) Order and

---

[5] Adv. Proc. No. 20-00005, ECF No. 98-34 (Treasury letter to HTA's auditors referring to the Fund 278 "accounts that the Authority maintains in this Department").)

relevant to show that the Excise Tax Revenues were recorded in Fund 278 and held separate from other collections because they belonged to HTA.

28.     The Board disputes Defendants' requests, arguing that they do not fit within "flow of funds" topics allowed in the Rule 56(d) Order because "funds" are not bank accounts—but ignores the explicit language allowing Defendants to serve discovery into the "accounting treatment" of the revenue streams, specifically including fund designations.  Bank accounts merely represent one cog in the Commonwealth's accounting and fiscal control systems.  The Commonwealth's fund accounting, i.e., its fiscal controls over disputed monies, including the use of bank accounts, funds, and restrictions, is directly at play.

29.     These requests are also relevant to "the nature and location of the Infrastructure Fund and the restrictions placed upon moneys therein," another permissible topic.  The Commonwealth's audited financial statements expressly describe what the Infrastructure Fund is, at some length.[6]  As to HTA, the Commonwealth audited financial statements describe the designation and "special deposit" nature of the monies at issue, reflecting "policies and procedures" reflecting the flow of the monies at issue, another topic for which Judge Swain required Plaintiff to produce "all" documents.  The Commonwealth's financial statements show that monies accounted for in Fund 278 were treated as HTA's resources.  The corresponding accounting documents, including policies and procedures and governing documents for Fund 278, necessarily will explain and give context to those disclosures and shed light on key issues that Judge Swain has identified.  These requests are fairly targeted and directly on point.  Defendants will continue to discuss these issues with the Government.

---

[6] (*See, e.g.*, Adv. Proc. No. 20-00003, ECF No. 84-11 (Commonwealth's audited financials describing the Infrastructure Fund as a "special revenue fund . . . used to account principally for the moneys received by the Commonwealth, up to $117 million, of certain federal excise taxes levied on rum").)

### 2.   Searching Beyond Central Files

30.   For a number of the topics on which the Rule 56(d) Order identified a need for additional discovery, the Government searched (during the lift stay discovery period) for any central files that could be identified on those topics.  The Government argued to Judge Swain that the lift stay record was sufficient to decide the substantive legal issues in these Adversary Proceedings, and Judge Swain found that it was not on these and other topics.  On all of the topics, however, the Government proposes to simply again search through central files—an exercise it has already undertaken and which presumably would make the discovery record no more complete than the record that Judge Swain has already found is insufficient to enable decisions on the summary judgment motions at this time.

31.   Given these issues, Defendants have asked the Government to meet-and-confer about pulling documents (including ESI, such as e-mails) for certain key custodians on critical issues—rather than simply repeating a search through central files that the Government has already undertaken.  There is no reason that collecting data from individual custodians needs to be unduly burdensome or time-consuming.  Defendants are aware, from Rule 2004 discovery, that the Government maintains a master database with e-mails and other ESI from a variety of custodians already collected.  Once ESI is collected, search terms can be run to identify a universe of potentially responsive material and, provided the universe is sufficiently targeted, the documents can be reviewed and produced.  Searching through and producing e-mails is, in principle, no more difficult than producing any other kind of discovery; the only variable is the number of documents that need to be reviewed (which can be targeted using search terms).

32.   These are certain topics to which e-mails and other documents are quite important. During lift stay discovery, for example, Defendants asked for information about the Infrastructure Fund (for PRIFA), Fund 278 (for HTA), and the Holding Fund, Transfer Account, and Surplus

Account (for CCDA).  The Parties had factual disputes over the meaning and purpose of the various fund designations and the flows within, and which bank accounts and funds correspond or "map" to the fund or account names in the bond documents.  (Adv. Proc. No. 20-00003, ECF No. 84, ¶¶ 33, 34.)  There also were disputes about "why" the flow of funds changed at certain points in time.  These disputes could not be resolved from the central files the Government produced.  In light of the dispute, the Rule 56(d) Order specifically authorized discovery into these topics.  (*See, e.g.*, Rule 56(d) Order at 8 (allowing discovery "identifying the nature and location of the Infrastructure Fund and the restrictions placed upon moneys therein").)  The Government's position that it should simply re-do the same "central files" search it has already done would effectively nullify the Court's ruling that a fuller record is needed on these disputed points.

33.     The Parties are continuing their discussions regarding scope, and Defendants are hopeful that the Parties can make progress on this point.  Nevertheless, given the factual disputes now at issue, there is no reason that searching beyond central files should be categorically precluded.

## OVERSIGHT BOARD'S STATEMENT

34.     The Court expressly authorized "limited, targeted, proportional, and efficient discovery."  Defendants are demanding discovery as if the Court did not include the words limited, targeted, proportional, and efficient.  Defendants' discovery is designed to prolong litigation without end.

35.     Defendants' Rule 56(d) declarations asked the Court to authorize far-ranging discovery on a wide variety of issues.  The Court rejected Defendants' broad requests in its January 20, 2021, *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy*

- 13 -

*Rule 7056 for Partial Summary Judgment Disallowing Claims* (ECF No. 15656) (the "Rule 56(d) Order").  Instead, the Court authorized Defendants "to seek limited, targeted, proportional, and efficient discovery" related to specific enumerated topics tailored to each summary judgment motion.  Rule 56(d) Order at 6-11.  Defendants next asked the Court to allow *six* months to conduct the discovery authorized in the Rule 56(d) Order.  Consistent with the dictates of the Rule 56(d) Order that discovery be limited, targeted, proportional and efficient, the Court rejected Defendants' request in its February 5, 2021 *Order Setting Discovery Schedule* (ECF No. 15809) (the "Discovery Schedule Order"), which provides for only a three-month discovery schedule ending May 7, 2021.

36.     The sheer volume and substance of Defendants' initial wave of discovery ignores the dictates and limitations established by the Rule 56(d) Order and the Discovery Schedule Order. Defendants' discovery is not "limited" — it vastly exceeds the subject matters authorized by the Court.  Defendants' discovery is not "targeted." Defendants served an astounding 155 document requests,[7] including subparts, 317 interrogatories,[8] including subparts, and – by last count – no less

---

[7] To illustrate how the math works, the document requests served in the HTA adversary proceeding are a good example.  The initial document requests served in that proceeding included five (5) broad categories of documents, but then expanded those five (5) broad categories through the use of subparts, and ever further -- subparts within subparts -- such that those "5" requests actually include 48 separate subjects in all.  By way of example, the initial document request ("Request No. 1") included a broad request (constituting 1 request), which was then followed by subparts (a) through (f) (an additional 6 requests) and one of those six (6) requests was actually comprised of two separate subparts.  Thus, all in, that "one" request actually included eight (8) separate topics.  The same is true with respect to the other requests, across all three adversary proceedings, which result in the full number of document requests identified. . Defendants' attempt to minimize the sheer number of requests is belied by the plain language of the discovery itself.

[8] The interrogatories are similarly steeped in subparts.  The interrogatories served in the HTA adversary proceeding are a good example. While Defendants have separately numbered only "3" interrogatories in that adversary proceeding, the first interrogatory alone asks the Commonwealth to identify all people likely to have knowledge regarding the five (5) categories Judge Swain authorized in the Rule 56(d) Order (five (5) subjects), plus all of the topics identified by Defendants in their requests for production (48 total requests).  Eliminating any overlap between the subjects of the Rule 56(d) Order and the subjects of

- 14 -

than 31 subpoenas, containing a mind-numbing 884 separate categories of documents (some to government entities and others to third parties). Nor is Defendants' discovery "proportional." Instead, it is hopelessly overbroad with its countless requests for "all" documents and "communications" spanning decades. Defendants' effort to minimize the amount of discovery is telling. No amount of rationalization (or promises to meet and confer) can trim what is overtly a huge amount of information requests, in what was supposed to be limited and proportional discovery. It clearly is not. The Oversight Board submits this tactic should be promptly curbed by the Court through an immediate conference. Defendants' attempt at deflecting attention by advocating for further motion practice on this discovery is simply a waste of resources. It is also no defense to suggest that the Rule 56(d) Order meant the Court found the information persuasive or ultimately germane to the issues to be decided by the Court in the pending motions. Being granted limited discovery rights does not equate to any form of merits-based ruling.

37.     To put this in context, a compendium of Defendants' discovery to date is shown below.[9]

A.     **REQUESTS FOR PRODUCTION    (155 SEPARATE REQUESTS)**

- **CCDA** - Defendants' Amended Initial Document Requests for the Production of Documents in Connection with the CCDA Revenue Bond Adversary Proceeding ("CCDA Initial Document Request") – **48 total requests**, including subparts.

- **PRIFA** - Defendants' Initial Document Requests for the Production of Documents in Connection with the PRIFA Revenue Bond Adversary Proceeding ("PRIFA Initial Document Request") – **59 total requests**, including subparts.

- **HTA** - Defendants' Initial Document Requests Pursuant to Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico,

---

Defendants' separate requests for production reveals that Interrogatory No. 1 seeks information regarding 48 different subjects. The same is true with respect to the other interrogatories, across all three adversary proceedings, which result in the full number of interrogatories identified.
[9] Exemplars of Defendants' discovery are included in the accompanying Appendix.

By and Through The Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims ("HTA Initial Document Request," together with the CCDA Initial Document Request and the PRIFA Initial Document Request, the "Initial Document Requests") – **48 total requests**, including subparts.

## B.    INTERROGATORIES    (317 SEPARATE INTERROGATORIES)

- **CCDA** - Ambac Assurance Corporations' First Set of Interrogatories in Connection with the CCDA Revenue Bond Adversary Proceedings ("CCDA First Set of Interrogatories") – **98 total interrogatories**, including subparts.

- **PRIFA** – Ambac Assurance Corporations' First Set of Interrogatories in Connection with the PRIFA Revenue Bond Adversary Proceedings ("PRIFA First Set of Interrogatories") – **119 total interrogatories**, including subparts.

- **HTA** – Defendant National Public Finance Guarantee Corporation's First Set of Interrogatories in Connection with the Puerto Rico Highway and Transportation Authority Revenue Bond Adversary Proceedings ("HTA First Set of Interrogatories") – **100 total interrogatories**, including subparts.

## C.    REQUESTS FOR ADMISSION    (7 SEPARATE ADMISSIONS)

- **CCDA** - Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon's First Set of Requests for Admission to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico in Connection with the CCDA Revenue Bond Adversary Proceeding ("CCDA First Set of Requests for Admission") – **3 total requests**.

- **PRIFA** - Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and U.S. Bank Trust National Association's First Set of Requests for Admission to the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico in Connection with the PRIFA Revenue Bond Adversary Proceeding ("PRIFA First Set of Requests for Admission") – **4 total requests**.

## D.    SUBPOENAS    (884 SEPARATE CATEGORIES OF DOCUMENTS)

- **CCDA** (**10 separate subpoenas**) - Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon's Notice of Subpoena Duces Tecum to the Fideicomiso De Entidad Publica Del Banco Gubernamental De Fomento Para Puerto Rico a/k/a

Government Development Bank for Puerto Rico ("GDB") Public Entity Trust for the Production of Documents or Things ("CCDA Subpoena to GDB Public Entity Trust") – **48 total requests**, including subparts.

- Ambac Assurance Corporation's Amended Notice of Subpoena Duces Tecum to the Autoridad De Recuperacion De La Deuda Del Banco Gubernamental De Fomento Para Puerto Rico a/k/a Government Development Bank for Puerto Rico Debt Recovery Authority for the Production of Documents or Things ("CCDA Subpoena to DRA") – **48 total requests**, including subparts.

- Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon's Amended Notice of Subpoena Duces Tecum to the Autoridad Del Distrito Del Centro De Convenciones De Puerto Rico a/k/a Puerto Rico Convention Center District Authority for the Production of Documents or Things ("Subpoena to CCDA") – **48 total requests**, including subparts.

- Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon's Amended Notice of Subpoena Duces Tecum to the Autoridad De Asesoria Financiera Y Agencia Fiscal De Puerto Rico a/k/a Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") for the Production of Documents or things ("CCDA Subpoena to AAFAF") – **48 total requests**, including subparts.

- Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon's Amended Notice of Subpoena Duces Tecum to the Banco Gubernamental De Fomento Para Puerto Rico a/k/a Government Development Bank for Puerto Rico for the Production of Documents or Things ("CCDA Subpoena to GDB") – **48 total requests**, including subparts.

- Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon's Amended Notice of Subpoena Duces Tecum to the Compania De Turismo De Puerto Rico a/k/a Puerto Rico Tourism Company ("Tourism Company") for the Production of Documents or Things ("CCDA Subpoena to Tourism Company") – **48 total requests**, including subparts.

- Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon's Amended Notice of Subpoena Duces Tecum to the Departmento De Hacienda De Puerto Rico a/k/a Puerto Rico Department of Treasury ("Treasury") for the Production of Documents or Things ("CCDA Subpoena to Treasury") – **48 total requests**, including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to FirstBank Puerto Rico for the Production of Documents or Things ("CCDA

Subpoena to FirstBank") – **15 total requests**, including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Oriental Bank Puerto Rico for the Production of Documents or Things ("CCDA Subpoena to Oriental Bank") – **16 total requests**, including subparts.

- Financial Guaranty Insurance Company's Notice of Subpoena Duces Tecum to Banco Popular De Puerto Rico for the Production of Documents or Things ("CCDA Subpoena to Banco Popular") – **16 total requests**, including subparts.

- **PRIFA** (**17 separate subpoenas**) - Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association's Notice of Subpoena Duces Tecum to Autoridad Para El Financiamiento De La Infraestructura De Puerto Rico a/k/a Puerto Rico Infrastructure Financing Authority for the Production of Documents or Things ("Subpoena to PRIFA") – **59 total requests**, including subparts.

- Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association's Notice of Subpoena Duces Tecum to Autoridad De Asesoria Financiera Y Agencia De Puerto Rico a/k/a Puerto Rico Fiscal Agency and Financial Advisory Authority for the Production of Documents or Things ("PRIFA Subpoena to AAFAF") – **59 total requests**, including subparts.

- Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association's Notice of Subpoena Duces Tecum to Banco Gubernatorial De Fomento Para Puerto Rico a/k/a Government Development Bank for Puerto Rico for the Production of Documents or Things ("PRIFA Subpoena to GDB") – **59 total requests**, including subparts.

- Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association's Notice of Subpoena Duces Tecum to Departamento De Hacienda De Puerto Rico a/k/a Puerto Rico Department of Treasury for the Production of Document or Things ("PRIFA Subpoena to Treasury") – **59 total requests**, including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Destileria Seralles, Inc. for the Production of Documents or Things ("PRIFA Subpoena to Destileria Serralles") – **3 total requests**, including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Bacardi International Limited for the Production of Documents or Things ("PRIFA Subpoena to Bacardi Int'l") – **3 total requests**, including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Edmundo B. Fernandez, Inc. for the Production of Documents or Things ("<u>PRIFA Subpoena to Edmundo B. Fernandez</u>") – **3 total requests,** including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Club Caribe Distillers LLC for the Production of Documents or Things ("<u>PRIFA Subpoena to Club Caribe</u>") – **3 total requests,** including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Bacardi Corp. for the Production of Documents or Things ("<u>PRIFA Subpoena to Bacardi Corp.</u>") – **3 total requests,** including subparts.

- Financial Guaranty Insurance Company's Notice of Subpoena Duces Tecum to Banco Popular De Puerto Rico for the Production of Documents or Things ("<u>PRIFA Subpoena to Banco Popular</u>") – **7 total requests,** including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Banco Santander for the Production of Documents or Things ("<u>PRIFA Subpoena to Banco Santander</u>") – **7 total requests,** including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Citibank, NA for the Production of Documents for Things ("<u>PRIFA Subpoena to Citibank</u>") – **7 total requests,** including subparts.

- Financial Guaranty Insurance Company's Notice of Subpoena Duces Tecum to KPMG LLP for the Production of Documents or Things ("<u>PRIFA Subpoena to KPMG LLP</u>") – **7 total requests,** including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to McConnell Valdes PLLC for the Production of Documents or Things ("<u>PRIFA Subpoena to McConnell Valdes</u>") – **6 total requests,** including subparts.

- Ambac Assurance Corporation's Notice of Subpoena Duces Tecum to Sidley Austin LLP for the Production of Documents or Things ("<u>Ambac PRIFA Subpoena to Sidley Austin</u>") – **6 total requests,** including subparts.

- Financial Guaranty Insurance Company's Notice of Subpoena Duces Tecum to Sidley Austin for the Production of Documents or Things ("<u>FGIC PRIFA Subpoena to Sidley Austin</u>") – **6 total requests,** including subparts.

- Financial Guaranty Insurance Company's Notice of Subpoena Duces Tecum to RSM Puerto Rico for the Production of Documents or Things ("<u>PRIFA Subpoena to RSM P.R.</u>") – **7 total requests,** including subparts.

- **<u>HTA</u>** (**4 separate subpoenas – with Defendants representing there are more to come**) - Defendants' Notice of Subpoena *Duces Tecum* to the Puerto Rico

Department of Treasury for the Production of Documents or Things ("HTA Subpoena to Treasury Department") – **48 total requests**, including subparts.

- Defendants' Notice of Subpoena *Duces Tecum* to the Puerto Rico Highways and Transportation Authority for the Production of Documents or Things ("Subpoena to HTA") – **48 total requests**, including subparts.

- Defendants' Notice of Subpoena *Duces Tecum* to the Government Development Bank for Puerto Rico for the Production of Documents or Things ("HTA Subpoena to GDB") – **48 total requests**, including subparts.

- Defendants' Notice of Subpoena *Duces Tecum* to the Puerto Rico Fiscal Agency and Financial Advisory Authority for the Production of Documents or Things ("HTA Subpoena to AAFAF") – **48 total requests**, including subparts.

38.    Clearly, Defendants have unleashed the prolonged discovery onslaught they requested—and the Court expressly rejected in the Rule 56(d) Order and the Discovery Schedule Order.  Defendants' excessive discovery requests speak for themselves.  Defendants' convoluted attempts to somehow tie unauthorized discovery to the topics specified in the Rule 56(d) Order are unpersuasive.  Furthermore, seemingly frustrated they did not receive the 6-month discovery period they sought at the outset, Defendants seek to force the same result by serving subpoenas, document requests, and interrogatories that disregard this Court's express limitations.

39.    By way of example, Defendants' document requests regarding HTA seek not only documents *governing* the Flow of Excise Tax Revenues (a permissible subject under the 56(d) Order), but – literally – all communications (emails, letters, memos post-it notes and anything else) regarding the opening of any accounts holding such funds.  *See* HTA Initial Document Requests, Request No. 1, Adv. Proc. No. 20-00005 (Appendix, Exhibit 1).  Defendants further seek not only policies and procedures regarding the Flow of Excise Tax Revenues (which the Rule 56(d) Order allowed), but also auditor workpapers relating to the testing of such policies and procedures.  *See* HTA Initial Document Requests, Request Nos. 2 and 3, Adv. Proc. No. 20-00005 (Appendix, Exhibit 1).  Defendants' interrogatories regarding HTA are no more targeted, as those seek to

require the Commonwealth to identify all people with knowledge of something as widely known as the terms of the bonds, irrespective of when during the last five (5) decades witnesses purportedly possessed such knowledge.  *See* HTA First Set of Interrogatories. No. 1, Adv. Proc. No. 20-00005 (Appendix, Exhibit 2).

40.    Defendants' third party subpoenas regarding HTA, PRIFA and CCDA are equally improper, and interject an additional obstacle:  the subpoenas assume a baseline of knowledge and information about the revenue bond adversary proceedings and cannot possibly be understood by non-party witnesses.  The subpoenas include numerous pages of definitions steeped in arcane terminology for which no practical guidance is provided.  Compounding this problem, the subpoenas make repeated references to ECF filings in various cases, effectively forcing the recipient (all of whom are non-parties to the adversary proceedings in question) to engage in a crash course study in an effort to gain some understanding of what is actually sought.

41.    For example, the subpoena served on FirstBank Puerto Rico in the CCDA adversary proceeding seeks all Documents and Communications "relating to" "Bond Documents" and goes on to define Bond Documents to include "the Assignment Agreement, Pledge Agreement, Trust Agreement, Supplemental Trust Agreement and any related Agreements, Resolutions, or official statements relating to the issuance of the CCDA Bonds."  *See, e.g.*, Subpoena to FirstBank Puerto Rico, Document Request No. 5, Adv. Proc. No. 20-00004 (Appendix, Exhibit 3).  Thus, to understand just that one definition, the recipient must also read and understand the six (6) defined terms embedded within it and read the corresponding four (4) ECF filings where the referenced documents can be found and, on top of that, determine what other documents might "relate to" those requested.

42.     Defendants' seventeen (17) PRIFA-related subpoenas to third-party rum producers, banks, accounting firms, and law firms are just as objectionable.  Putting aside the inherent complications created by issuing subpoenas to law firms, the PRIFA-related subpoenas demand the production of such things as all "Documents and Agreements . . . that relate to the Rum Taxes, the Flow of Funds, or the Lockbox Agreement" over a timeframe spanning three decades.  *See* *e.g.*, Subpoena to Bacardi Corp, Request No. 1 (Appendix, Exhibit 4).  Even assuming these non-parties could somehow make sense of the 7-10 pages of objectionable "Definitions" and "Instructions" (some referencing documents by ECF number and statutes) and understand what they are being directed to produce, the categories of documents are ridiculously overbroad.[10] Notably, Defendants did not procure a lockbox agreement.  They are taking discovery concerning other entities' rights, which entities are not parties to the adversary proceedings.  Defendants' attempt to suggest that the barrage of subpoenas is simply the "order of things" misses the key point.  The subpoenas are squarely at odds with the scope of discovery authorized by the Rule 56(d) Order.  Thus, irrespective of whether they were served now or later, they simply violate the Court's directive for limited, targeted discovery.  And, it is no excuse to claim that many of the third party witnesses are on the verge of complying (even early!) and showing no sense of confusion regarding the breadth of the requests.  Defendants' thinly veiled references to extensions of time and discussions regarding subpoena scope surely suggest otherwise.  And, in any event, that has not been the Oversight Board's experience in the calls it has fielded.  Simply put, the subpoenas can be judged excessive and overbroad on their face.

---

[10] Defendants' subpoenas to rum producers also turn a blind eye to the fact three rum producers filed oppositions to the PRIFA Lift Stay Motion and attached copies of their contracts with the Government of Puerto Rico and the Lockbox Agreement establishing that any payments to rum producers are from Rum Tax Remittances received by the Commonwealth *after* the first $117 million in Rum Tax Remittances that is the subject of Defendants' proofs of claim the Commonwealth seeks to disallow.  *See* 17-bk-03282-LTS, ECF Nos. 10612, 10616.

43.     In short, the subpoenas are designed to fail, will create needless confusion, and are likely to result in unnecessary motion practice.  The subpoenaed recipients will have no idea what is actually sought, and delays and inefficiencies will undoubtedly ensue.  These inherent problems with the subpoenas are readily apparent, and suggest Defendants' true purpose is to delay determination of the pending summary judgment motions.  *See* Adv. Proc. No. 20-00003, ECF No. 44; Adv. Proc. No. 20-00004, ECF No. 41; Adv. Proc. No. 20-00005, ECF No. 56 (collectively, the "Summary Judgment Motions").

44.     Defendants' requested discovery contradicts Defendants' statements to the United States Court of Appeals for the First Circuit. Defendants contended and admitted that *none* of their discovery is necessary for the Court to rule on the Summary Judgment Motions.  During the February 4, 2021 oral argument before the First Circuit Court of Appeals on Defendants' appeal from the denial of the HTA Lift Stay Motion, one of Defendants' own lawyers (Neal Katyal) conceded there is no need to look beyond the governing statutes and bond resolutions to determine the security interest questions presented here, and, in the context of these ongoing proceedings, represented to the Panel: "Discovery is just ***gravy***."  *See* Excerpts of Oral Argument Transcript from HTA Lift Stay Appeal, 20-1930 (Appendix, Exhibit 5) (emphasis added).  Counsel further stated: "with three billion dollars in loans, we're going to seek discovery, but this case is fully briefed.  It's ready [i.e. the secured claim and property interest questions] for you to decide." *Id*. These candid statements by Defendants' counsel speak volumes.  Defendants do not need the discovery they seek.  They recognize it will change nothing.  They simply forged ahead with discovery to stop the clock.  We point this out not to suggest Defendants' 56(d) filings were in bad faith, but simply to reinforce the fundamental tenet of the 56(d) Order itself: there is no need for boundless, scorched-earth discovery regarding essentially pure legal issues.  Defendants not only

fully understand this, they represented as much to the First Circuit. That Defendants attempt to distance themselves from that admission or characterize that it was said in a different context—as if that will avoid the gravity of that admission—is telling. To be clear, what Defendants do not do, is dispute the statements were made.

45.     The Discovery Schedule Order is in accord with the Rule 56(d) Order, and recognizes the Commonwealth's restructuring must proceed expeditiously. Early resolution of the key gating issues set forth in the pending Summary Judgment Motions is fundamental to consideration and confirmation of a Commonwealth plan of adjustment. It is critically important that the Court's discovery schedule remain intact. The Oversight Board is deeply concerned Defendants may attempt to use their "initial" discovery as a pretext for motion practice and delay, effectively backing into the six month discovery schedule they proposed and the Court (no doubt mindful of what was believed necessary given the scope of the Rule 56(d) Order) already rejected. To the extent motion practice occurs (through hearings or otherwise), the Oversight Board will make itself available at the Court's earliest convenience—including as a result of the Court's review of this Joint Report.

46.     While the Oversight Board hopes to avoid involving the Court in discovery disputes and has met and conferred with Defendants (and will continue to do so) with that goal in mind, some disputes created by Defendants (besides those the Oversight Board listed above) appear unavoidable. Although Defendants characterize the areas of dispute as constituting four separate subjects, they essentially boil down to two disagreements: (i) whether the Court intended to permit not only the limited discovery authorized by its Rule 56(d) Order, but also wider ranging searches of emails, email archives, and correspondence for documents that might in some way touch on the

broad subjects of "bond documents" and "excise tax revenues"; and, (ii) whether Defendants should be entitled to conduct what essentially amounts to be forensic audit of excise tax revenues.

47.     The Oversight Board contends that email searches regarding such broad topics run far afield of the limited, targeted discovery permitted under the Court's Rule 56(d) Order.  The Rule 56(d) Order was quite clear with respect to the Commonwealth's obligation to provide documents "governing" the HTA bonds and "governing" the flow of Excise Tax Revenues.  The Court is requiring the production of policy-level documents that control the issues at hand.  But requests for (i) documents "concerning" (a word often used by Defendants) those issues or (ii) documents "beyond central files" are simply euphemisms for requiring searches for emails, texts, memoranda, correspondence, or perhaps even handwritten notes that may touch upon those subjects, no matter how attenuated.  So too are Defendants' demands not only for policy documents governing the flow of funds (something that will be provided) but for documents reflecting "instructions" regarding the flow of funds.  Searches for those sorts of granular level documents will grind the Court's targeted discovery process to a halt, and would do nothing but distract from the central issues in this case—ones which their own counsel represented to the First Circuit were ready for decision.  While the Oversight Board will continue to discuss these issues with Defendants, the Oversight Board does not believe the Court intended to sanction the type of boundless, unregulated email/custodian search that can bog down discovery.  To avoid overlooking the obvious, every document requested has to be reviewed by attorneys for privileged and work-product material.  Thus, the number of person-hours and expense is not close to proportionate as the Court required, especially in view of Defendant's attorney's admission that the central deal documents are sufficient in the first place.

48.     For similar reasons, the Oversight Board believes Defendants' request for communications with auditors and audit workpapers grossly exceeds the limit of the Rule 56(d) Order.  Defendants seem intent on seeking not only documents governing and reflecting the flow of excise tax revenues – two authorized areas of inquiry -- but, having been given an inch, they now want to take a mile by seeking to conduct what essentially amounts to a forensic audit of those monies.  Specifically, Defendants have sought – and continue to demand – audit workpapers and even communications with auditors regarding such revenues.  *See, e.g.*, HTA Initial Document Request No. 3(l), Adv. Proc. No. 20-00005 (Appendix, Exhibit 1) (seeking "communications with auditors . . . , including auditor workpapers and supporting documentation related to the presentation of HTA Pledged Revenues in Commonwealth and HTA audited financial statements"); HTA Initial Document Request No. 5(i), Adv. Proc. No. 20-00005 (Appendix, Exhibit 1) (seeking "auditor workpapers and supporting documentation" regarding the presentation of HTA Pledged Revenues); HTA Initial Document Request No. 5(n), Adv. Proc. No. 20-00005 (Appendix, Exhibit 1) (seeking "auditor workpapers related to the testing of [] policies and procedures" regarding the recording and accounting of "HTA Pledged Revenues").  Notably, Defendants sought the same documentation through their 56(d) Declaration,[11] but the Court declined to expand discovery that broadly.

49.     Such discovery can only be classified as "next level."  It is not discovery of "records reflecting the flow of funds" (a permissible subject of inquiry) or "policies and procedures related to the flow of funds" (another expressly authorized area of inquiry).  Instead, it is as if Defendants intend to conduct a forensic audit of past accounting practices for reasons unknown.  This should

---

[11] *See* Declaration of Casey J. Servais [ECF No. 97] ¶ 49 at 20 (seeking "[d]ocuments provided to and communications with Commonwealth and HTA auditors related to the Pledged Revenues, including workpapers, engagement letters, tie outs, support for financials, and any explanations provided to auditors concerning the Commonwealth's treatment of the Pledged Revenues.").

not be permitted. Defendants' Rule 56(d) Declarations sought discovery concerning the extent to which the Commonwealth controlled excise tax revenues. The Court's narrow, tailored Rule 56(d) Order authorized discovery on that subject. *See* Rule 56(d) Order, Adv. Proc. No. 20-00004, ECF No. 108. Defendants' request for audit workpapers and communications with auditors represents an exponential expansion of the scope of discovery, which should be rejected. Here again, the Oversight Board remains willing to discuss this issue further, but believes this Court's ruling as to the permissible bounds of limited, targeted discovery was clear. [12]

## AAFAF'S STATEMENT

50. AAFAF, as representative of the Government Entities[13] subpoenaed by Defendants pursuant to Act 2-2017, agrees with the statement of the Oversight Board. AAFAF would like to separately emphasize the need for discovery to be "limited, targeted, proportional, and efficient" as Judge Swain ordered. *See* Rule 56(d) Order. AAFAF is working diligently with the Government Entities to promptly collect and produce the documents contemplated by the Rule 56(d) Order, to the extent those documents were not already included within the over 8,000 documents (more than 99,000 pages) it produced in connection with the Lift Stay Motions. Specifically, the Government Entities have agreed to search the digital archives of the GDB (the fiscal agent for PRIFA, HTA, and CCDA at the time the bonds were issued) and the Government Entities' central files for the documents enumerated in the Rule 56(d) Order. In addition, Treasury

---

[12] The Oversight Board received the final version of "Defendants' Position" portion of this Joint Status Report at 11:40 p.m. AST this evening. Due to time constraints, the Oversight Board will not address all Defendants' arguments herein, but reserves its right to do so prior to any hearing on these issues.

[13] The Government Entities are AAFAF in its own capacity and in its capacity as successor to the Government Development Bank as fiscal agent, the Puerto Rico Treasury Department, the Puerto Rico Convention Center District Authority ("CCDA"), the Puerto Rico Tourism Company, the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Infrastructure Financing Authority ("PRIFA").

has agreed to take reasonable efforts to export data from its accounting system relating to the fund

and revenue codes at issue in Defendants' HTA and PRIFA requests.  AAFAF will continue to

work with Defendants to reach mutually agreeable compromises wherever possible, but the

Government Entities cannot agree to expansive e-mail discovery on a broad variety of topics, many

of which were not authorized in the 56(d) Order, from half a dozen distinct entities over the course

of more than a decade as Defendants' subpoenas demand.  The need to avoid undue expense for

Puerto Rico's taxpayers and previous orders of this Court require that discovery in these adversary

proceedings be targeted to the precise issues in dispute and proportional so as not to be "unduly

expensive or disruptive of [government] operations."  *See* ECF No. 10332 (rejecting Ambac's Rule

2004 requests as "sweepingly broad" an imposing "an objectively unreasonable burden on the

Commonwealth."); *see also* Rule 56(d) Order.

Dated:  February 25, 2021
        San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
        scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com
        johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
        adam.langley@butlersnow.cow

*Attorneys for Financial Guaranty Insurance Company*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010


**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com


*Attorneys for National Public Finance Guarantee Corp.*

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com


**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com


*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**RIVERA, TULLA AND FERRER, LLC**

By:  /s/ *Eric A. Tulla*
    Eric A. Tulla
    (USDC-DPR No. 118313)
    Email: etulla@ riveratulla.com
    Iris J. Cabrera-Gómez
    (USDC-DPR No. 221101)
    Email: icabrera@ riveratulla.com
    Rivera Tulla & Ferrer Building
    50 Quisqueya Street
    San Juan, PR 00917-1212
    Telephone: (787) 753-0438
    Facsimile: (787) 767-5784

**SEPULVADO, MALDONADO & COURET**

By:  /s/ *Albéniz Couret Fuentes*
    Albéniz Couret Fuentes
    (USDC-PR No. 222207)
    304 Ponce de León Ave. Suite 990
    San Juan, PR 00918
    Telephone: (787) 765-5656
    Facsimile: (787) 294-0073
    Email: acouret@smclawpr.com

**HOGAN LOVELLS US LLP**

By:  /s/ *Robin E. Keller*
    Robin E. Keller, Esq.
    Ronald Silverman, Esq.
    390 Madison Avenue
    New York, NY 10017
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    robin.keller@hoganlovells.com
    ronald.silverman@hoganlovells.com

*Attorneys for U.S. Bank National
Association, in its Capacity as Trustee
to PRIFA Bondholders*

**REED SMITH LLP**

By:  /s/ *Jared S. Roach*
    Luke A. Sizemore (admitted *pro hac vice*)
    Jared S. Roach (admitted *pro hac vice*)
    225 Fifth Avenue, Suite 1200
    Pittsburgh, PA 15222
    Telephone: (412) 288-3131
    Facsimile: (412) 288-3063
    Email: lsizemore@reedsmith.com
        jroach@reedsmith.com

*Attorneys for The Bank of New York Mellon, in
its Capacity as Trustee to CCDA Bondholders*

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 15205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com


/s/ *Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
        jlevitan@proskauer.com
        ebarak@proskauer.com


Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:  (310) 557-2900
Fax:  (310) 557-2193
Email: mfirestein@proskauer.com
        lrappaport@proskauer.com


*Attorneys for the Financial
Oversight and Management Board,
as Representative of the Commonwealth*

**O'MELVENY & MYERS LLP**

By: /s/ *Peter Friedman*
    John J. Rapisardi
    (Admitted *Pro Hac Vice*)
    7 Times Square
    New York, NY 10036
    Tel: (212) 326-2000
    Fax: (212) 326-2061


    Peter Friedman
    (Admitted *Pro Hac Vice*)
    1625 Eye Street, NW
    Washington, DC 20006
    Tel: (202) 383-5300
    Fax: (202) 383-5414


    Elizabeth L. McKeen
    Ashley M. Pavel
    (Admitted *Pro Hac Vice*)
    610 Newport Center Drive
    17th Floor
    Newport Beach, California 92660
    Tel: (949) 823-6900
    Fax: (949) 823-6994

**MARINI PIETRANTONI MUÑIZ LLC**

By: /s/ *Luis C. Marini-Biaggi*
    Luis C. Marini-Biaggi
    USDC No. 222301
    Email: lmarini@mpmlawpr.com
    Carolina Velaz-Rivero
    USDC No. 300913
    Email: cvelaz@mpmlawpr.com
    250 Ponce de León Ave.
    Suite 900
    San Juan, Puerto Rico 00918
    Tel: (787) 705-2173
    Fax: (787) 936-7494


*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority, as
representative of the Government Entities
pursuant to Act 2-2017*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email: rcamara@ferraiuoli.com

- 33 -