# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

---

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Plaintiff,

     v.

AMBAC ASSURANCE CORPORATION, *et al.*,

     Defendants.

Adv. Proc. No. 20-00003-
LTS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

|  |  |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br><br>        v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>     Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br><br>        v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>     Defendants. | Adv. Proc. No. 20-00005-LTS |

**AMBAC ASSURANCE CORPORATION, FINANCIAL GUARANTY INSURANCE CORPORATION, ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, THE BANK OF NEW YORK MELLON, AND U.S. BANK TRUST NATIONAL ASSOCIATION'S APPENDIX OF  EXHIBITS 6-11 REFERENCED IN THE JOINT STATUS REPORT OF THE PARTIES PURSUANT TO THE COURT'S <u>FEBRUARY 5, 2021 SCHEDULING ORDER</u>**

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp. and Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, The Bank of New York Mellon, and U.S. Bank Trust National Association respectfully submit this appendix of exhibits 6-11 referenced in the *Joint Status Report of the Parties Pursuant to the Court's February 5, 2021 Scheduling Order* filed concurrently herewith. The exhibits are attached hereto.

## **APPENDIX**

PRIFA Initial Requests for Production, Adv. Proc. No. 20-00003 ....................................Exhibit 6

CCDA Initial Requests for Production, Adv. Proc. No. 20-00004...................................Exhibit 7

HTA Responses and Objections, Adv. Proc. No. 20-00005 .............................................Exhibit 8

PRIFA Responses and Objections, Adv. Proc. No. 20-00003...........................................Exhibit 9

CCDA Responses and Objections, Adv. Proc. No. 20-00004 ........................................Exhibit 10

PRIFA Requests for Admission, Adv. Proc. No. 20-00003 ...........................................Exhibit 11

# **<u>EXHIBIT 6</u>**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br><br>     v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>     Defendants. | Adv. Proc. No. 20-00003-LTS |

## DEFENDANTS' INITIAL DOCUMENT REQUESTS FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE PRIFA REVENUE BOND ADVERSARY PROCEEDING

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

- 1 -

PLEASE TAKE NOTICE THAT, pursuant to the Court's *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Adv. Proc. No. 20-00003, ECF No. 115, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and U.S. Bank Trust National Association (collectively, the "Defendants"), by and through their undersigned attorneys, hereby request that You (defined below) produce the Documents and Communications described below.

## DEFINITIONS

1.      "1988 Trust Agreement" means the Document on pages 69 through 150 of Exhibit 1 to the *Declaration of Lary Alan Rappaport in Respect of Commonwealth Motion for Partial Summary Judgment*, Adv. Proc. No. 20-00003-LTS, ECF No. 47-1.

2.      "1997 Amended Trust Agreement" means the Document on pages 1 through 69 of Exhibit 1 to the *Declaration of Lary Alan Rappaport in Respect of Commonwealth Motion for Partial Summary Judgment*, Adv. Proc. No. 20-00003-LTS, ECF No. 47-1.

3.      "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

4.      "Accounts," or each individually, an "Account," means the accounts held by or on behalf of the Commonwealth or any of its instrumentalities, including, without limitation, any Related Accounts.

5.      "Account Value" refers to the field in the Express Voucher System used to classify the nature of a transaction, as described on page four of the letter dated March 13, 2020 from Elizabeth McKeen, Esq. to Defendants' counsel.

6.      "Agreement" or "Agreements" means any and all agreements, side agreements, contracts, grants of a security interest or similar right, supplements, account control agreements, deeds of trust on accounts, other negotiated instrument, or other binding instrument or arrangement between two or more parties, or supplements thereto.

7.      "Bond Documents" means the Trust Agreement, any Resolutions issued thereunder, any official statements issued in connection with any issuance of PRIFA bonds, and any other related Agreements, Resolutions, official statements, or other documents governing the PRIFA bonds.

8.      "Citibank" means Citibank, N.A. its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

9.      "Class Value" or "Class Values" refers to the identifier of an appropriation of budget key, as described on page five of the letter dated March 13, 2020 from Elizabeth L. McKeen, Esq. to Defendants' counsel.

10.      "Commonwealth" means the Commonwealth of Puerto Rico and its instrumentalities, its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

11.      "Communication" or "Communications" means any exchange of information by any means, including, but not limited to, correspondence, face-to-face conversations, electronic transmissions, meetings, visits, conferences, internal and external discussions, or any other kind

of oral or written exchange between two or more Persons that has been recorded or transcribed in any way including letters, facsimiles, transcriptions, sound recordings, or video recordings.

12.    "<u>Debt Service Fund</u>" means the Fund of that name referenced on page 26 of PRIFA's Financial Statements for the fiscal year ended June 30, 2016.

13.    "<u>DeptID</u>" refers to organizational structures referred to on page four of the letter dated March 13, 2020 from Elizabeth L. McKeen, Esq. to Defendants' counsel.

14.    "<u>Documents</u>" is used in the broadest sense permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules for the United States District Court for the District of Puerto Rico, and includes, without limitation, tangible things, correspondence, communications, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (e.g., email messages), any electronically stored information, recordings (e.g., voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

15.    "<u>Enabling Act</u>" refers to the Puerto Rico Infrastructure Financing Authority Act, 3 L.P.RA. §§ 1901, *et. seq*.

16.    "<u>Express Voucher System</u>" refers to the Commonwealth's internal accounting and financial records system, which is also commonly referred to as "PRIFAS."

17.    "<u>Financial Statements</u>" means any formal records of the financial activities, balance of accounts, and position of a business, Person, or other entity, including, without limitation, balance sheets, income or expense statements, and statements of cash flows.

18.    "First Proceeds" means the first $117 million of Rum Tax Remittances received by the Commonwealth each fiscal year from the United States Department of Treasury pursuant to 26 U.S.C. § 7652.

19.    "Flow of Funds" refers to the path, including each and every deposit, credit, withdrawal, debit, or transfer, into or out of an account, of the Rum Tax Remittances, from their initial receipt or collection by the Commonwealth, its agents, or its financial institutions (including, without limitation, Citibank and PRIFA) through and including the ultimate disposition, if any, of the funds.  Documents relating to the Flow of Funds include, without limitation, account-opening documents, transmittal information (including payment vouchers and transfer activity reports), and banking Agreements.

20.    "Fund" means an amount of money or other resource set aside for the purpose of carrying out a specific activity or to achieve certain objectives pursuant to the special laws, regulations, restrictions, or limitations and which constitute an independent fiscal and accounting entity, including accounts created to keep record of the proceeds of the issuance of bonds that may be authorized, or the fiscal and accounting entities referenced on page four of the letter dated March 13, 2020 from Elizabeth L. McKeen, Esq. to Defendants' counsel.  A "Fund" includes a special fund.

21.    "Fund Value" means the numeric identifier associated with Funds in the Express Voucher System.

22.    "GAAP" means Generally Accepted Accounting Principles.

23.    "GASB" means the Governmental Accounting Standards Board.

24.    "GDB" means the Puerto Rico Government Development Bank and its successors, including the GDB Debt Recovery Authority and the GDB Public Entity Trust, and their present

and former officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on their behalf.

25.     "General Fund" refers to that Fund held by the Treasury of the Commonwealth known as the Commonwealth's General Fund.

26.     "Including" or "includes" means "including but not limited to and without limitation," or "includes but is not limited to and without limitation."

27.     "Infrastructure Fund" means the Puerto Rico Infrastructure Fund.   For the avoidance of doubt, this term encompasses both the Puerto Rico Infrastructure Fund referred to in section 1914 of the Enabling Act and the Puerto Rico Infrastructure Fund referred to on pages 2 and 34 of the Trust Agreement.

28.     "KPMG" means the accounting firm KPMG International, and each of its present or former officers, directors, agents, representatives, employees, and members.

29.     "Lockbox Agreement" refers to the Agreement dated as of May 5, 2015, between Citibank, N.A., Banco Popular de Puerto Rico, and the Commonwealth.

30.     "March Orders" has the same meaning as in the *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Adv. Proc. No. 20-00003, ECF No. 115.

31.     "McConnell Valdés" means the law firm McConnell Valdés PLLC, and each of its present or former officers, directors, agents, representatives, employees, members, and associates.

32.     "Oversight Board" or "Board" means the Financial Oversight and Management Board for Puerto Rico.

33.     "Person" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

34.     "PRIFA" means the Puerto Rico Infrastructure Financing Authority and each of its present or former board members, agents, representatives, and employees.

35.     "PRIFA Bonds" means any and all bonds issued by PRIFA under the PRIFA Bond Documents.

36.     "PRIFA Special Revenue Fund" means the Fund of that name described on page 323 of the Commonwealth's Financial Statements for the fiscal year ended June 30, 2014.

37.     "Program" means the groups of related activities directed toward the accomplishment of sets of identifiable objectives, as described on page 5 of the letter dated March 13, 2020 from Elizabeth McKeen, Esq. to Defendants' counsel.

38.     "Puerto Rico Science & Technology Trust" means the trust created by 23 L.P.R.A. § 695a.

39.     "Resolutions" means decisions or determinations of a deliberative or legislative body, or any subdivisions, entities, or instrumentalities thereof.

40.     "Restrictions" means any law, contract, Agreement, other Document with the force of law, directive, or policy, practice, or procedure, whether formal or informal, that limits or conditions the use or movement of any Fund, Account, or other moneys.

41.     "Rum Producers" means the entities (including, without limitation, Bacardí International Limited, Bacardí Corporation, Destilería Serrallés, Inc., Club Caribe Distillers, LLC, and Edmundo B. Fernández, Incorporated) that produce rum on the island of Puerto Rico.

42.    "<u>Rum Tax Remittances</u>" means the federal excise taxes imposed on rum produced in Puerto Rico and imported into the United States that is subsequently covered over from the United States Treasury to the Commonwealth Treasury pursuant to 26 U.S.C. § 7652.

43.    "<u>Sidley Austin</u>" means the law firm Sidley Austin LLP, and each of its present or former board members, agents, representatives, and employees.

44.    "<u>Signatories</u>" means any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed or otherwise manifested their consent to a Document as a party, or on behalf of a party, to that Document.

45.    "<u>Sinking Fund</u>" means the Special Fund created and designated by Section 401 of the Trust Agreement.

46.    "<u>Special Revenue Fund</u>" refers to the term of the name described on page 256 of the Commonwealth's Financial Statements for the fiscal year ended June 30, 2013.

47.    "<u>Treasury</u>" means the Department of the Treasury of Puerto Rico and each of its present or former board members, agents, representatives, and employees.

48.    "<u>Treasury Single Account</u>" means the accounts held by the Treasury commonly known as the Treasury Single Account or TSA, including, without limitation:  (i) Banco Popular Account Nos. ▮9458, ▮1012, ▮1020, ▮2883, ▮1216, ▮9865; (ii) Banco Santander Account No. ▮2463; (iii) Citibank Account No. ▮9036; and (iv) GDB Account Nos. ▮0006, ▮0704, ▮1891.

49.    "<u>Trust Agreement</u>" refers collectively to the 1988 Trust Agreement, the 1997 Amended Trust Agreement, and any other related Agreement.

50.     "You" or "Your" means the plaintiff in the above captioned action, and any of its affiliates, parents, subsidiaries, attorneys, accountants, officers, directors, agents, employees, representatives, partners, predecessors-in-interest, or successors-in-interest.

51.     Each reference to a corporation, partnership, joint venture, unincorporated association, government agency, or other fictitious Person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, and successors, and for each such entity, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

52.     Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any other Person who acted on that Person's behalf.

53.     The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgment that such definition is accurate, meaningful, or appropriate for any other purpose.

54.     In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

55.     The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

56.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

57.     The word "concerning" means relating to, referring to, describing, evidencing, or constituting.

## <u>INSTRUCTIONS</u>

1.      In complying with the Requests, You are required to produce all Documents and Communications described below which are in Your possession, custody, or control, including those Documents and Communications in the possession, custody, or control of Your instrumentalities, counsel or former attorneys, investment advisors, financial advisers, securities brokers or dealers, investigators, accountants, employees or other agents, regardless of location.

2.      For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used should be given their most expansive and inclusive interpretation.

3.      Unless instructed otherwise, each Request should be construed independently and not by reference to any other Request for the purpose of limitation.

4.      If any portion of a Document or Communication is responsive to any Request, the entire Document or Communication should be produced.

5.      Documents responsive to these Requests shall be labeled in such a way as to show their source, including, but not limited to, the files and offices where they were maintained.

6.      If You withhold any Document or Communication, or any portion of any Document or Communication, under a claim of privilege, You shall produce, in accordance with Rule 26 of the Federal Rules of Civil Procedure and Rule 26 of the Local Rules of the United States District Court for the District of Puerto Rico, a written privilege log that sets forth: (i) the author of the Document or Communication; (ii) the type of Document or Communication, *e.g.*, letter or memorandum; (iii) the date of the Document or Communication; (iv) all recipients, including CC recipients, of the Document or Communication; (v) such other information as is sufficient to identify the Document or Communication; and (vi) the nature of the privilege asserted.

7.      If information is redacted from a Document or Communication produced in response to a Request, You shall identify the redaction by stamping the word "Redacted" on the Document or Communication at each place where information has been redacted and separately log each redaction on the privilege log.

8.      If any requested Document or Communication has been lost, destroyed, transferred voluntarily or involuntarily to others, or otherwise disposed of, You shall state the circumstances surrounding such disposition, including the identity of Person(s) having knowledge as to the circumstances of such disposition and the date or approximate date of such disposition.

9.      If You cannot respond to these Requests in full after exercising due diligence to secure the Documents or Communications requested, You shall so state and respond to the extent possible, specifying the nature of Your inability to respond to the remainder.

10.     If there are no Documents or Communications responsive to a particular Request in Your possession, custody, or control, You shall provide a written response so stating.

11.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.  If You believe that any Request, definition, or instruction is ambiguous, in whole or in part, You must nonetheless respond and (i) set forth the matter deemed ambiguous and (ii) describe the manner in which You construed the Request in order to frame Your response.

12.     Documents produced pursuant to these Requests should be produced as they are kept in the ordinary course of business, including electronically stored information.  Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

13.     Documents and Communications in electronic form, including, but not limited to, e-mail, should be produced in single page tagged image file format ("TIFF"). Metadata associated with electronically stored information shall be produced in text format linked to the associated file. Extracted text files, if any, should be delivered in document level text files. Spreadsheets and database files should be provided in native format, with an accompanying placeholder Bates7 numbered TIFF file. Each responsive spreadsheet should be clearly labeled to indicate the placeholder Bates number that corresponds to each spreadsheet.

14.     Unless otherwise instructed or clear from the context of the Request, these Requests pertain to the period from October 1, 1987, to the present.

15.     These Requests are continuing in nature. If, after producing any materials in response to these Requests, You obtain or become aware of additional responsive materials, You are required to provide such materials by way of a supplemental production.

16.     These Requests should not be construed as a waiver or an abridgment of, and are not intended to waive, any argument or defense, or any objection to discovery Requests, nor shall they be construed as any admission of fact.

17.     Documents previously produced bearing Bates prefixes of PRIFA_STAY, CW_STAY, or FOMB_STAY may, at Your option, be deemed to have been produced in response to these Requests, and in that case, need not be produced again.

## **REQUESTS**

**Request No. 1:** All Documents governing the PRIFA Bonds, including all versions of the 1988 Trust Agreement and 1997 Amended Trust Agreement and any supplements thereto in effect during the relevant period, as well as Documents and Communications sufficient to explain the

anomalies between the 1988 Trust Agreement and 1997 Amended Trust Agreement, and Documents identifying the Signatories to and/or those bound by such Agreements, including:

a) All Documents governing the PRIFA Bonds, including all Agreements, all closing binders, any amendments and supplements thereto, and any other legally operative Documents concerning the PRIFA Bonds;

b) All versions of the 1988 Trust Agreement, the 1997 Amended Trust Agreement, or any other versions of the Trust Agreement, including, without limitation, supplemental Agreements or amendments (without any time limitation);

c) Documents and Communications—including  Communications between and among PRIFA, the Commonwealth, Sidley Austin, or McConnell Valdés—concerning: (i) the execution and notarization of the 1988 Trust Agreement and 1997 Amended Trust Agreement; (ii) the location or whereabouts of the 1988 Trust Agreement, the 1997 Amended Trust Agreement, and any other versions of the Trust Agreement, including, without limitation, supplemental Agreements or amendments; and (iii) the inclusion of "NY1 5690864v.2 45967/59" in the bottom-left corner of each page of the 1997 Amended Trust Agreement;

d) Documents identifying the Signatories to or Persons bound by any Agreement referenced under Request 1, including, without limitation, the 1988 Trust Agreement, the 1997 Amended Trust Agreement, any other versions of the Trust Agreement, and any supplemental Agreements or amendments.

**Request No. 2:** All Documents and Agreements governing the Flow of Rum Tax Remittances including all versions of the Lockbox Agreement and Agreements governing all accounts into or

through which such funds are or have been transferred, and identifying the Signatories to and/or those bound by such agreements, including:

a) All Documents governing the Flow of Rum Tax Remittances from January 1, 2006, to present;

b) All versions (including, without limitation, drafts) of the Lockbox Agreement, including all Agreements, or supplements thereto, or other provisions concerning the Lockbox Agreement;

c) All Documents identifying the Signatories to or Persons bound by any Agreements referenced under Request 2, including the Lockbox Agreement;

d) Documents and Agreements to which the Commonwealth, Rum Producers, Citibank, or PRIFA is a party that relate to the Rum Taxes, the Flow of Funds, or the use of Rum Taxes;

e) Documents concerning the opening of any account to or from which Rum Tax Remittances were transferred or deposited, including the Treasury Single Account, or any accounts owned, controlled, or held by the Commonwealth, the GDB, U.S. Bank as Indenture Trustee, Citibank, and AAFAF, and any subsequent changes to such accounts, including (i) signature cards for each such account, (ii) the name, legal title, and registration of each such account, (iii) the Signatories of each such account, and (iv) any changes or updates to any of the foregoing over time;

f) All Documents and Communications concerning the roles of the Commonwealth Treasury, the GDB, and PRIFA in the transfers of Rum Tax Remittances into and out of the Treasury Single Account.

**Request No. 3:** Resolutions related to the Bond Documents adopted by the Commonwealth or by PRIFA, including:

   a) All Resolutions adopted by PRIFA or the Commonwealth relating to the Bond Documents, including, without limitation, any Resolutions of the type referred to in 3 L.P.R.A. § 1907 or Section 602 of the 1988 Trust Agreement, and all Documents and Communications concerning the adoption of such Resolutions.

**Request No. 4:** All Documents and Communications identifying the nature and location of the Infrastructure Fund and the Restrictions placed upon moneys therein, including:

   a) Documents and Communications concerning the nature and location of the Infrastructure Fund;

   b) Documents concerning Restrictions placed upon moneys deposited in or to the credit of the Infrastructure Fund;

   c) Documents concerning each account where moneys comprising the Infrastructure Fund are deposited, including all account holders, Signatories, and entities or individuals with authority over the accounts, and transaction records for each such account;

   d) Documents concerning each fund to which moneys comprising the Infrastructure Fund were credited, including the Fund Value, the manner in which the Fund is held, Restrictions applicable thereto, and transaction records for each such Fund;

   e) Documents and Communications referencing the Infrastructure Fund, including Documents or Communications concerning the deposit of moneys in or to the credit of the Infrastructure Fund;

- 15 -

f) Documents and Communications concerning or referencing Restrictions placed upon the First Proceeds, Rum Tax Remittances, or any moneys deposited in or to the credit of the Infrastructure Fund;

g) Communications between and among the Commonwealth, PRIFA, Citibank, or Rum Producers regarding those entities' understanding, interpretation, and implementation of the Enabling Act, Bond Documents, or Lockbox Agreement, including any Communications concerning the First Proceeds or the Infrastructure Fund;

h) Documents and Communications, including those between and among the Commonwealth, Treasury, PRIFA, or KPMG, that make reference to the First Proceeds, the Infrastructure Fund, or the Rum Tax Remittances, or relating to the treatment, discussion, or presentation of First Proceeds, the Infrastructure Fund, or the Rum Tax Remittances in the Commonwealth's historical audited Financial Statements and amendments thereto, including: (i) workpapers, engagement letters, tie outs, support for Financial Statements; (ii) the decision to describe the First Proceeds as "conditionally allocated" to PRIFA in the Commonwealth's Financial Statements for the fiscal year ended June 30, 2015 or any other year; (iii) the description of the First Proceeds as "the first $117 million of these federal excise taxes reimbursed, which are subsequently transferred to the Puerto Rico Infrastructure Financing Authority's Debt Service Fund to provide for the debt service of its special tax revenue bonds" in the Commonwealth's Financial Statements for the fiscal year ended June 30, 2014, and; (iv) the meaning of accounting terms of arts historically used therein, including "Special Revenue Fund," "Special Deposit," "PRIFA Special Revenue Fund," "Restrictions" or "restricted."

**Request No. 5:** All Documents and Communications relating to the accounting treatment of Rum Tax Remittances in general, including the use and purpose of Account Value designations, Fund Value designations, and DeptIDs, including:

a) Documents and Communications concerning Treasury's and PRIFA's accounting practices, including the use of fund accounting, GAAP, and GASB principles;

b) Documents concerning how Rum Tax Remittances are designated, including any Documents concerning any designation of Rum Tax Remittances as part of its General Fund;

c) Documents and Communications concerning all Account Value, Fund Value, DeptID, Program, and Class Values associated with any transactions of Rum Tax Remittances, and the purpose and meaning of such designations;

d) Documents sufficient to identify all transactions, from December 1, 1997 to present, relating to: (i) account designations R4220 and E6120; (ii) Fund Value 111 and 141; (iii) DeptID numbers 0250000 and 1610000; and (iv) any other Account Value, Fund Value, DeptID, Program, or Class Values identified in response to these Requests, including records of Treasury's or PRIFA's recordation of these transactions in the Express Voucher System or any other internal accounting ledger or fiscal system, and any other transactions related to PRIFA or Rum Tax Remittances;

e) Commonwealth and PRIFA general ledger and other internal accounting records showing the internal financial reporting of or controls over transactions on the Commonwealth's and PRIFA's books and records, including the chart of accounts for the Commonwealth and PRIFA that identify and describe or define specific accounts

and Funds (or the data on any internal accounts or Funds concerning the First Proceeds), journal entries associated with transfers into and out of the PRIFA Special Revenue Fund and Debt Service Fund, and Financial Statements concerning the PRIFA Special Revenue Fund and Debt Service Fund;

f)   Reports for general ledger accounts, including collections reports, earned revenues reports, reports reconciling revenues earned with revenues collected, cash disbursement reports, and withdrawal reports, for every account concerning the Rum Tax Remittances;

g)   Documents sufficient to show how Rum Tax Remittances received by Treasury pursuant to the Lockbox Agreement were accounted for in the Express Voucher System, the general ledger, and any other fiscal or accounting system, and copies of all journal entries associated with such payments;

h)   Documents and Communications relating to the accounting treatment of the Rum Tax Remittances outside of the First Proceeds, including Rum Tax Remittances received and transferred to the Puerto Rico Science & Technology Trust from the period January 1, 2014 to present.

**Request No. 6:** A comprehensive set of transmittal information for the exemplars of transfers and/or deposits of Rum Tax Remittances between the various bank accounts through which Rum Tax Remittances have historically flowed, as authorized by the March Orders, including:

a)   Documents sufficient to show each transfer or deposit of the Rum Tax Remittances between and among the U.S. Treasury to the Commonwealth, the Infrastructure Fund, PRIFA, the Lockbox Agreement, the Sinking Fund, or any other account or fund, and

each subsequent transfer thereof, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information;

b) Documents recording any transfer of Rum Tax Remittances from PRIFA to the Commonwealth;

c) Documents (including direction letters) sufficient to show the total amount of Rum Tax Remittances presently held by PRIFA, or the Commonwealth or its instrumentalities, including information sufficient to identify the particular accounts where such funds are retained; and the cash flow balance of the accounts;

d) Documents showing account statements for the Citibank account that was used to transfer Rum Tax Remittances to the Sinking Fund.

**Request No. 7:** Policies and procedures related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act, including:

a) Policies and procedures Concerning the Flow of Funds pursuant to the Bond Documents, Lockbox Agreement, and Enabling Act, including Documents concerning PRIFA's access to the Treasury Single Account, the management or operation of the Infrastructure Fund, and the individuals responsible for overseeing or approving transactions into and out of the Infrastructure Fund.

Dated: February 8, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*

    Roberto Cámara-Fuertes (USDC-PR No. 219002)

    Sonia Colón (USDC-PR No. 213809)

    221 Ponce de León Avenue, 5th Floor

    San Juan, PR 00917

    Telephone: (787) 766-7000

    Facsimile:  (787) 766-7001

    Email:  rcamara@ferraiuoli.com

        scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*

    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com
        johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
Heriberto Burgos Pérez
(USDC-PR No. 204809)
Ricardo F. Casellas-Sánchez
(USDC-PR No. 203114)
Diana Pérez-Seda
(USDC-PR No. 232014)
P.O. Box 364924
San Juan, PR 00936-4924
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: hburgos@cabprlaw.com
rcasellas@cabprlaw.com
dperez@cabprlaw.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III (admitted *pro hac vice*)
Adam M. Langley (admitted *pro hac vice*)
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

***Attorneys for Financial Guaranty Insurance Company***

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr. (admitted *pro hac vice*)
Mark C. Ellenberg (admitted *pro hac vice*)
William J. Natbony (admitted *pro hac vice*)
Thomas J. Curtin (admitted *pro hac vice*)
Casey J. Servais (admitted *pro hac vice*)
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: howard.hawkins@cwt.com
mark.ellenberg@cwt.com
bill.natbony@cwt.com
thomas.curtin@cwt.com
casey.servais@cwt.com

***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.***

**RIVERA, TULLA AND FERRER, LLC**

By:  */s/ Eric A. Tulla*
      Eric A. Tulla
      (USDC-DPR No. 118313)
      Email: etulla@ riveratulla.com
      Iris J. Cabrera-Gómez
      (USDC-DPR No. 221101)
      Email: icabrera@ riveratulla.com
      Rivera Tulla & Ferrer Building
      50 Quisqueya Street
      San Juan, PR 00917-1212
      Telephone: (787) 753-0438
      Facsimile: (787) 767-5784

**HOGAN LOVELLS US LLP**

By:  */s/ Ronald J. Silverman*
      Ronald J. Silverman
      Michael C. Hefter
      390 Madison Avenue
      New York, NY 10017
      Telephone: (212) 918-3000
      Facsimile: (212) 918-3100
      ronald.silverman@hoganlovells.com
      michael.hefter@hoganlovells.com

***Attorneys for U.S. Bank Trust National
Association, in its Capacity as Trustee
to PRIFA Bondholders***

# **EXHIBIT 7**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br><br>     v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>     Defendants. | Adv. Proc. No. 20-00004-LTS |

## DEFENDANTS' INITIAL DOCUMENT REQUESTS FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE CCDA REVENUE BOND ADVERSARY PROCEEDING

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

PLEASE TAKE NOTICE THAT, pursuant to the Court's *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Adv. Proc. No. 20-00004-LTS, ECF No. 110, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon, as trustee (collectively, the "Defendants"), by and through their undersigned attorneys, hereby request that You (defined below) produce the Documents and Communications described below.

## DEFINITIONS

1.       "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

2.       "Agreement" means any and all agreements, side agreements, contracts, grants of a security interest or similar right, supplements, account control agreements, deeds of trust on accounts, or other negotiated or otherwise binding instrument or arrangement between two or more parties, whether in the form of a Document or other Communication, or supplements thereto.

3.       "Assignment Agreement" means the Assignment and Coordination Agreement between the Tourism Company and GDB, dated March 24, 2006.

4.       "Bond Documents" means the Assignment Agreement, Pledge Agreement, Trust Agreement, Supplemental Trust Agreement and any related Agreements, Resolutions, or official statements relating to the issuance of CCDA Bonds.

5.     "BPPR" means Banco Popular de Puerto Rico, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

6.     "CCDA" means the Convention Center District Authority and each of its present or former board members, agents, representatives, and employees.

7.     "CCDA Bonds" means any bonds issued by CCDA under the Bond Documents.

8.     "CCDA Bond Trustee" means The Bank of New York Mellon, and its predecessor JPMorgan Chase Bank, N.A.

9.     "CCDA Declaration" means the *Declaration of John J. Hughes, III In Support of Opposition of Ambac Assurance Corp. et. al to the Oversight Board's Motion for Partial Summary Judgment Seeking to Disallow Claims Relating to CCDA Bonds*, Adv. Proc. No. 20-00004-LTS, ECF No. 80.

10.     "Commonwealth" means the Commonwealth of Puerto Rico and its instrumentalities, its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

11.     "Communication" means any exchange of information by any means, including, but not limited to, correspondence, face-to-face conversations, electronic transmissions, meetings, visits, conferences, internal and external discussions, or any other kind of oral or written exchange between two or more Persons that has been recorded or transcribed in any way including letters, facsimiles, transcriptions, sound recordings, or video recordings.

12.     "Documents" is used in the broadest sense permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules for the United States District Court for the District of Puerto Rico, including tangible things, correspondence,

communications, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (e.g., email messages), any electronically stored information, recordings (e.g., voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

13.     "Financial Statements" means any formal records of the financial activities, balance of accounts, and position of a business, Person, or other entity, including balance sheets and statements of cash flows.

14.     "FirstBank" means FirstBank de Puerto Rico, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

15.     "Flow of Funds" refers to the path, including each and every deposit and transfer, into and out of an account, of the Hotel Taxes from their initial receipt or collection by the Tourism Company, agents, or financial institutions through their ultimate transfer, if any, out of any account or sub-account held by or on behalf of the Commonwealth, Tourism Company, CCDA, or GDB. Documents relating to the Flow of Funds include, but are not limited to, account-opening documents, transmittal information (including payment vouchers and transfer activity reports), and banking Agreements.

16.     "GDB" means the Puerto Rico Government Development Bank and its successors, including the GDB Debt Recovery Authority and the GDB Public Entity Trust, and their present and former officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on their behalf

17.     "Government Parties" means the Oversight Board and AAFAF.

18.     "Holding Fund" means the "Assignment and Coordination Holding Fund," into which all Hotel Taxes are deposited as collected, as defined in section 2 of the Assignment Agreement.

19.     "Hotel Occupancy Tax Act" means Act 272-2003, as enacted by the Puerto Rico Legislature on September 9, 2003.

20.     "Hotel Taxes" refers to the hotel occupancy taxes generated under the Hotel Occupancy Tax Act.

21.     "Including" or "includes" means "including but not limited to and without limitation", or "includes but is not limited to and without limitation".

22.     "Oversight Board" or "Board" means the Financial Oversight and Management Board for Puerto Rico.

23.      "Person" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

24.     "Pledge Account" means the account into which Pledged Hotel Taxes are required to be deposited, as defined in sections 2 and 4 of the Assignment Agreement.

25.     "Pledge Agreement" means the Pledge Agreement between GDB, CCDA, and The Bank of New York Mellon, acting in its capacity as the CCDA Bond Trustee, dated March 24, 2006.

26.     "Pledged Hotel Taxes" means the Hotel Taxes pledged to the repayment of CCDA Bonds.

27.      "Resolutions" means decisions or determinations of a deliberative or legislative body, or any subdivisions, entities, or instrumentalities thereof.

28. "RSM" means the consulting firm RSM International, and each of its present or former officers, directors, agents, representatives, employees, and members.

29. "Scotiabank" means Scotiabank de Puerto Rico, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, its successors and any other Person who acted on its behalf.

30. "Signatories" means any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed or otherwise manifested their consent to a Document as a party, or on behalf of a party, to that Document.

31. "Supplemental Trust Agreement" means the First Supplemental Trust Agreement between CCDA and the CCDA Bond Trustee, dated March 24, 2006.

32. "Surplus Account" means the account defined in sections 2 and 4 of the Assignment Agreement, into which surplus Hotel Taxes may be deposited, which, together with the Transfer Account, comprises the Holding Fund.

33. "Transfer Account" means the account defined in sections 2 and 4 of the Assignment Agreement, into which the Hotel Taxes are deposited as collected, which, together with the Transfer Account, comprises the Holding Fund.

34. "Tourism Company" means the Puerto Rico Tourism Company and each of its present or former board members, agents, representatives, and employees.

35. "Trust Agreement" means the Trust Agreement between CCDA and the CCDA Bond Trustee, dated March 24, 2006.

36. "You" or "Your" means the plaintiff in the above captioned action, and any of its affiliates, parents, subsidiaries, attorneys, accountants, officers, directors, agents, employees, representatives, partners, predecessors-in-interest, or successors-in-interest.

37.     Each reference to a corporation, partnership, joint venture, unincorporated association, government agency, or other fictitious Person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, and successors, and for each such entity, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

38.     Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any other Person who acted on that Person's behalf.

39.     In construing the requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

40.     The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

41.     The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

42.     The word "concerning" means relating to, referring to, describing, evidencing, or constituting.

## **INSTRUCTIONS**

1.     In complying with the requests, You are required to produce all Documents and Communications described below which are in Your possession, custody, or control, including those Documents and Communications in the possession, custody, or control of Your instrumentalities, counsel or former attorneys, investment advisors, financial advisers, securities brokers or dealers, investigators, accountants, employees or other agents, regardless of location.

2.      For the purpose of reading, interpreting, or construing the scope of these requests, the terms used should be given their most expansive and inclusive interpretation.

3.      Unless instructed otherwise, each request should be construed independently and not by reference to any other request for the purpose of limitation.

4.       If any portion of a Document or Communication is responsive to any request, the entire Document or Communication should be produced.

5.      Documents responsive to these requests shall be labeled in such a way as to show their source, including, but not limited to, the files and offices where they were maintained.

6.      If You withhold any Document or Communication, or any portion of any Document or Communication, under a claim of privilege, You shall produce, in accordance with Rule 26 of the Federal Rules of Civil Procedure and Rule 26 of the Local Rules of the United States District Court for the District of Puerto Rico, a written privilege log that sets forth: (i) the author of the Document or Communication; (ii) the type of Document or Communication, e.g., letter or memorandum; (iii) the date of the Document or Communication; (iv) all recipients, including CC recipients, of the Document or Communication; (v) such other information as is sufficient to identify the Document or Communication; and (vi) the nature of the privilege asserted.

7.      If information is redacted from a Document or Communication produced in response to a request, You shall identify the redaction by stamping the word "Redacted" on the Document or Communication at each place where information has been redacted and separately log each redaction on the privilege log.

8.      If any requested Document or Communication has been lost, destroyed, transferred voluntarily or involuntarily to others, or otherwise disposed of, You shall state the circumstances

surrounding such disposition, including the identity of Person(s) having knowledge as to the circumstances of such disposition and the date or approximate date of such disposition.

9.      If You cannot respond to these requests in full after exercising due diligence to secure the Documents or Communications requested, You shall so state and respond to the extent possible, specifying the nature of Your inability to respond to the remainder.

10.     If there are no Documents or Communications responsive to a particular request in Your possession, custody, or control, provide a written response so stating.

11.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.  If You believe that any request, definition, or instruction is ambiguous, in whole or in part, You must nonetheless respond and (i) set forth the matter deemed ambiguous and (ii) describe the manner in which You construed the request in order to frame Your response.

12.     Documents produced pursuant to these requests should be produced as they are kept in the ordinary course of business, including electronically stored information.  Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

13.     Documents and Communications in electronic form, including, but not limited to, e-mail, should be produced in single page tagged image file format ("TIFF"). Metadata associated with electronically stored information shall be produced in text format linked to the associated file. Extracted text files, if any, should be delivered in document level text files. Spreadsheets and database files should be provided in native format, with an accompanying placeholder Bates7 numbered TIFF file. Each responsive spreadsheet should be clearly labeled to indicate the placeholder Bates number that corresponds to each spreadsheet.

14.     Unless otherwise instructed or clear from the context of the request, these requests pertain to the period from January 1, 2006 to the present.

15.     These requests are continuing in nature.  If, after producing any materials in response to these requests, You obtain or become aware of additional responsive materials, You are required to provide such materials by way of a supplemental production.

16.     These requests should not be construed as a waiver or an abridgment of, and are not intended to waive, any argument or defense, or any objection to discovery requests, nor shall they be construed as any admission of fact.

17.     Documents previously produced as CCDA _STAY, CW_STAY, or FOMB_STAY may, at Your option, be deemed to have been produced in response to these requests, and in that case, need not be produced again.

## DOCUMENT REQUESTS

**Request No. 1:** All Documents governing the CCDA bonds, including all versions of the Bond Documents, and Documents identifying the signatories to and/or those bound by the Bond Documents.

**Request No. 2:** All documents governing the flow of the Hotel Taxes from 2006 to the present, including all versions of documents governing the Transfer Account, Surplus Account and any other accounts into or through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements, including:

a)  All Documents and Communications governing the flow of the Hotel Taxes from 2006 to the present.

b) All Documents (including, without limitation, drafts) governing the Holding Fund, Transfer Account, Surplus Account, Pledge Account, and any other accounts into or through which such funds are or have been transferred, including, without limitation, Bond Documents and Agreements.

c) Statements for any accounts into or from which Hotel Taxes were deposited, withdrawn, transferred, or otherwise credited or debited, from January 1, 2006 to the present, including but not limited to GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961.

d) Communications relating to the flow of Hotel Taxes, including but not limited to Communications regarding deposits of Hotel Taxes and the accounts in which such funds were deposited, transfers of Hotel Taxes and the accounts to which such funds were transferred, the retention of Hotel Taxes by the Commonwealth, Tourism Company, CCDA, or GDB and the reason for such retention.

e) Documents or Communications by, between, or among the Commonwealth, Tourism Company, CCDA, or GDB regarding the Hotel Occupancy Tax Act, the Bond Documents, or any Resolutions relating to the Bond Documents, including, without limitation, implementation or interpretation of any of the foregoing.

f) Documents or Communications regarding the nature, location, and meaning of funds or accounts referred to in the Bond Documents, including, without limitation, the Transfer Account, Surplus Account, Pledge Account, and/or Holding Fund.

**Request No. 3:** Resolutions of Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents, including:

a) All versions (including, without limitation, drafts) of any Resolutions of the Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents.

**Request No. 4:** Account opening documents for GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961, including:

a) Documents and Communications concerning any account into or from which Hotel Taxes were deposited, withdrawn, transferred, or otherwise credited or debited, including, without limitation, GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961, and including, without limitation, (i) signature cards for each such Account, (ii) the name, legal title, and registration of each such Account, (iii) the signatories of each such Account, (iv) any changes or updates to any of the foregoing over time, and (v) any other account-related Documents or Communications.

**Request No. 5:** Policies and procedures related to the flow of Hotel Taxes pursuant to the Bond Documents and Hotel Occupancy Tax Act, including:

a) Any internal instructions, guidance, memoranda, or other Documents concerning any policies and procedures.

b) Documents and Communications concerning any understanding or interpretation of policies and procedures, how hotels make payments, any arrangements concerning Scotiabank -5142, and any guidance provided by the Tourism Company to hotels related to their deposits of Hotel Taxes.

**Request No. 6:** Discovery identifying and explaining the purpose of transfers of Hotel Taxes from accounts identified in Request No. 4 above to the Commonwealth, including:

a) Documents identifying and explaining the purpose of transfers of Hotel Taxes from the accounts identified in Requests No. 4 above, including, without limitation, documents regarding whether the Commonwealth has used any Pledged Hotel Taxes constituting bondholder collateral to pay its own expenses or debts.

b) Documents concerning any general ledger or internal accounting records of the Hotel Taxes.

**Request No. 7:** Discovery identifying the recipient of transfers identified in paragraph 40 of the CCDA Declaration and any other transfers for which no recipient has been identified, including:

a) Documents and Communications concerning the following transfers which were listed in paragraph 40 of the CCDA Declaration, including, without limitation, Documents sufficient to identify the recipient of each such transfer and Documents concerning the purpose of the transfers:

- A withdrawal of $3,644,377.57 on July 11, 2016 out of Scotiabank -5142. (CCDA_STAY0000679 – CCDA_STAY0000684.)

- A withdrawal of $375,720.00 on September 9, 2016 out of BPPR -2306. (CCDA_STAY0000646 – CCDA_STAY0000647.)

- A withdrawal of $50,000.00 on April 13, 2017 out of BPPR -2306. (CCDA_STAY0000675 – CCDA_STAY0000676.)

- A withdrawal of $50,000.00 on January 13, 2020 out of BPPR -2306. (CCDA_STAY0007384 – CCDA_STAY0007387.)

- A withdrawal of $10,607,824.72 on May 10, 2017 out of Scotiabank - 5138.  (CCDA_STAY0009770 – CCDA_STAY0009786.)

- A withdrawal of $12,342,306.14 on January 10, 2020 out of Scotiabank - 5138.  (CCDA_STAY0012669 – CCDA_STAY0012680.)

- A withdrawal of $73,872.55 on April 30, 2019 out of FirstBank - 2984.  (CCDA_STAY0007470 – CCDA_STAY0007471.)

- A withdrawal of $67,926.94 on February 28, 2020 out of FirstBank - 2984.  (CCDA_STAY0014185 – CCDA_STAY0014188.)

- A withdrawal of $423,601.81 on December 13, 2019 out of Scotiabank - 5144.  (CCDA_STAY0006757 – CCDA_STAY0006763.)

- A withdrawal of $417,620.88 on February 14, 2020 out of Scotiabank - 5144.  (CCDA_STAY0006772 – CCDA_STAY0006779.)

b) Documents and Communications concerning the following transfers out of GDB -9758, including, without limitation, Documents sufficient to identify the recipient of each such transfer and Documents concerning the purpose of the transfers:

- A withdrawal of $3,500,000 on January 15, 2015. (CCDA_STAY0001694 – CCDA_STAY0001695.)

- A withdrawal of $1,500,000 on April 13, 2015. (CCDA_STAY0001700   – CCDA_STAY0001701.)

- A withdrawal of $1,000,000 on April 13, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $5,000,000 on April 15, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $4,000,000 on July 22, 2015. (CCDA_STAY0000004 – CCDA_STAY0000005.)

- A withdrawal of $2,000,000 on August 14, 2015. (CCDA_STAY0000006 – CCDA_STAY0000009.)

- A withdrawal of $3,100,000 on September 22, 2015. (CCDA_STAY0000010 –CCDA_STAY0000013.)

- A withdrawal of $7,000,000 on February 22, 2016. (CCDA_STAY0000036 – CCDA_STAY0000041.)

c) Documents and Communications concerning the $15 million one-time transfer from FirstBank -3961 to BPPR -9458, including, without limitation, Documents sufficient to identify the recipient of such transfer and Documents concerning the purpose of the transfer.

d) Documents concerning any transfers of Pledged Hotel Taxes from the Tourism Company to the Commonwealth since April 2016.

e) Documents and Communications concerning the treatment, discussion, or presentation of the Hotel Taxes in Financial Statements, including, without limitation, (i) workpapers, engagement letters, tie outs, support for Financial Statements; (ii) the meaning of the line items for "Transfers" on pages nine and twelve in the Tourism Company's Financial Statements for the Fiscal Year ended June 30, 2016 (including, without limitation, identification of the transfers, whether any such transfers concerned Hotel Taxes, and the

disposition of such transferred funds); and (iii) whether Hotel Taxes were deposited in and/

or withdrawn from the General Fund, CILE Puerto Rico 2016 Fund Hotel Development

Corporation Fund, Slot Machines Operations Fund, and the Medical Tourism Company

Fund listed on pages thirteen through fifteen of the Tourism Company's Financial

Statements for the Fiscal Year ended June 30, 2016.

Dated: February 8, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By:  */s/  Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email:  rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By:  */s/ Atara Miller*
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
John J. Hughes, III (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
        adam.langley@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**SEPULVADO, MALDONADO & COURET**

By: */s/ Albéniz Couret Fuentes*
Albéniz Couret Fuentes
(USDC-PR No. 222207)
304 Ponce de León Ave. Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: acouret@smclawpr.com

**REED SMITH LLP**

By: */s/ Jared S. Roach*
Jared S. Roach (admitted *pro hac vice*)
Luke A. Sizemore (admitted *pro hac vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email:  jroach@reedsmith.com
lsizemore@reedsmith.com

***Attorneys for The Bank of New York Mellon***

# **EXHIBIT 8**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as a representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent<br><br>Defendants. | PROMESA<br>Title III<br><br>Adv. Proc. 20-00005-LTS |

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND AS
SUCCESSOR TO GDB AS FISCAL AGENT TO GDB), HTA, AND TREASURY TO THE
SUBPOENAS OF DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS IN
<u>CONNECTION WITH HTA REVENUE BOND ADVERSARY PROCEEDING</u>**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure made applicable to this adversary proceeding by Rule 9016 of the Federal Rules of Bankruptcy Procedure pursuant to Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), in its own capacity, and as successor to the Government Development Bank for Puerto Rico ("GDB") as fiscal agent, the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Department of Treasury ("Treasury") (together, the "Government Entities") hereby respond and object (the "Responses and Objections") to the subpoenas of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company (together, the "Defendants") in connection with the HTA Revenue Bond Adversary Proceeding (Adv. Proc. No. 20-00005) (the "Subpoenas"), which were served upon the Government Entities, respectively, on February 8, 2021, and which include document requests (collectively, the "Requests," and each a "Request") attached as an exhibit thereto.

## PRELIMINARY STATEMENT

The Government Entities have not yet completed their investigation and review of documents.  These Responses and Objections, and any subsequent document productions, are based and will be based only upon the information that is currently available to and specifically known to the Government Entities as of the date hereof.  The Government Entities reserve the right to amend or supplement these Responses and Objections at any time in light of future investigation, research, or analysis, and also expressly reserve the right to rely on, at any time, including in any other proceeding, subsequently discovered information, or information omitted from these Responses and Objections as a result of mistake, error, or inadvertence.  The Government Entities have made reasonable efforts to respond to the Subpoenas, to the extent they have not been

3

objected to, as the Government Entities understand and interpret the Subpoenas.  If the Defendants subsequently assert a meritorious interpretation of the Subpoenas that differs from the Government Entities' interpretation, the Government Entities reserve the right to supplement these Reponses and Objections.

## **GENERAL OBJECTIONS**

1.      The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information beyond the information the Court authorized Defendants to seek in the *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, dated January 20, 2021 [Case No. 20-00005, ECF No. 129] ("HTA 56(d) Order").  The Government Entities further object to the Subpoenas, and to each and every Request, to the extent they purport to impose burdens inconsistent with, not otherwise authorized by, or exceeding those required by the Federal Rules of Civil Procedure as incorporated into the Federal Rules of Bankruptcy Procedure, the local rules for the United States Bankruptcy Court for the District of Puerto Rico, or this Court's chambers practices and case management orders (collectively, together with the HTA 56(d) Order, the "Governing Rules").  The Government Entities will construe and respond to the Subpoenas and Requests in a manner consistent with its obligations under the Governing Rules, and not otherwise.

2.      The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information irrelevant to the parties' claims or defenses applicable to the *Notice of Motion and Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056*

*for Partial Summary Judgment Disallowing Claims*, dated April 28, 2020 [Case No. 20-00005, ECF No. 55], or proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

3.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek documents or information not in its possession, custody, or control.  Subject to the other general and specific objections set forth herein, the Government Entities will use reasonable diligence to obtain responsive documents in their possession, custody, or control based on an examination of those files reasonably expected to yield responsive documents.  Documents produced by the Government Entities in response to specific Requests should not be construed as a representation that every document in their possession, custody, or control has been examined.

4.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek materials already provided to Defendants in connection with the *Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection*, dated January 16, 2020 [Case No. 17-03567, ECF No. 673] (the "HTA Lift Stay Motion").  Pursuant to the 56(d) Order, those documents will not be produced again in this proceeding.

5.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they place an unreasonable burden on the Government Entities, including without limitation by seeking documents and information equally or more readily available from public sources or otherwise already available to Defendants.

6.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they require the search of archives, backup files, or any information not readily accessible, including but not limited to any audio, video, electronic recordings, telephone records,

calendar entries, text messages or similar forms of electronic messaging, which would be unduly burdensome and not proportional to the needs of the case.

7.     The Government Entities object to the Subpoenas, and to each and every Request, to the extent they expressly or impliedly seek documents or information protected from disclosure by the Attorney-Client Privilege, the Attorney Work-Product Doctrine, the Executive Privilege, the Deliberative Process Privilege, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  Nothing in these Responses and Objections is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.  Documents and information protected by these privileges, doctrines, or immunities are not subject to disclosure, and the Government Entities will not provide them.  The Government Entities intend to and do assert any and all such privileges with respect to all such documents and information.  The inadvertent production of any such protected document or other item shall not constitute a waiver of any privilege or protection or any other ground for objection to discovery with respect to the information contained therein, nor shall such inadvertent production waive the Government Entities' right to object to the use of any such document or the information contained therein in connection with this proceeding or any subsequent proceeding.  Upon notification that such disclosure was inadvertent, the document(s)/item(s) and any copies thereof shall be returned or destroyed immediately.

8.     The Government Entities object to the Subpoenas, and to each and every Request, to the extent they (i) imply the existence of facts or circumstances that do not or did not exist, or (ii) state or assume legal or factual conclusions.  By providing these Responses and Objections, the Government Entities do not admit any factual or legal premise in the Subpoenas.

9.      To the extent any term defined or used in the Subpoenas and Requests is used in responding to the Subpoenas and Requests, it is not accepted or conceded that any such term or definition is appropriate, descriptive, or accurate.

10.      The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they are cumulative or duplicative of other discovery requests.

11.      The Government Entities object to the definition of "Act 30 and 31 Revenues" to the extent it asserts a legal conclusion that revenues collected pursuant to Act No. 30-2013 and Act No. 31-2013 are pledged to the repayment of HTA Bonds.  By responding to these Requests, the Government Entities do not concede the relevance of Act 30 and 31 Revenues to the above-captioned adversary proceeding.

12.      The Government Entities object to the definition of the term "Bond Documents" as vague and overbroad, particularly insofar as it includes documents "relating to" or "otherwise related to" the HTA Bonds, and "statutes, executive orders, or official memoranda governing the Excise Taxes."  The Government Entities will construe the term "Bond Documents" to refer to the Bond Resolutions and the official statements.

13.      The Government Entities object to the definition of the term "BPPR" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "BPPR" to mean Banco Popular de Puerto Rico and its employees reasonably likely to possess information relevant to this proceeding.

14.      The Government Entities object to the definition of the term "Communication" to the extent it means "oral" transmittal of information, including "any document evidencing the date, participants, subject matter, and consent of any such oral communication," on the grounds it is

7

vague, overly broad, unduly burdensome, and not proportional to the needs of the case, and seeks

to impose requirements or obligations beyond the scope of, or different from, those imposed by

the Governing Rules.

15.    The Government Entities object to the definition of the term "Excise Taxes" as

overbroad and beyond the scope of discovery allowed in the HTA 56(d) Order.  The Government

Entities will construe the term "Excise Taxes" to refer to the HTA Allocable Revenues as defined

in the *Memorandum Of The Commonwealth Of Puerto Rico, By And Through The Financial*

*Oversight And Management Board, In Support Of Motion Pursuant To Bankruptcy Rule 7056 For*

*Partial Summary Judgment Disallowing Claims*, dated April 28, 2020 [Case No. 20-00005, ECF

No. 56].

16.    The Government Entities object to the definition of "Flow of Funds" or "Flow" as

vague and overbroad to the extent it refers to an "ultimate disposition" of funds.  The Government

Entities further object to the definition as unintelligible to the extent that it presumes cash proceeds

are deposited into a "Fund" or other accounting designation.   The Government Entities will

construe "Flow of Funds" and "Flow" to encompass (i) the bank accounts previously identified by

bank account number in the flow of funds summary provided in connection with the HTA Lift

Stay Motion (Case No. 17-3283, ECF No. 13004-48) ("HTA Flow of Funds Summary"), (ii)

equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present,

and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

17.    The Government Entities object to the definitions of "Fund," "Fund 278," and

"HTA Accounts" to the extent they incorrectly presume particular accounting designations, such

as PRIFAS fund code 278, have the same documentation (such as account statements) associated

with deposit accounts.

18.     The Government Entities object to the definition of "HTA Pledged Revenues" on the ground that it asserts a legal conclusion.  By responding to the Requests, the Government Entities do not concede any of the Excise Taxes or Toll Revenues are pledged or that Defendants have a security interest in those revenues.

19.     The Government Entities object to the definition of PRIFAS as overbroad on the ground that it includes PRIFAS and "any other accounting and fiscal control systems used by the Commonwealth, the Department of Treasury, and HTA."  The Government Entities will construe PRIFAS to refer to the Puerto Rico Integrated Financial Accounting System.

20.     The Government Entities object to the definition of the term "Resolutions" as overbroad to the extent it includes any resolutions other than the 1968 and 1998 Resolutions.  In responding to the Requests, the Government Entities will construe "Resolutions" to refer to the 1968 and 1998 Resolutions.

21.     The Government Entities object to the definition of the term "Signatories" on the ground that the phrase "otherwise manifested their consent" is vague and ambiguous.  The Government Entities will construe the term "Signatories" to mean "any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed a Document as a party, or on behalf of a party."

22.     The Government Entities object to the definition of the term "Treasury" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "Treasury" to mean Treasury and its employees reasonably likely to possess information relevant to this proceeding.

9

23.     The Government Entities object to the definition of the term "TSA" to the extent it includes bank accounts within the Treasury Single Account that never received the Excise Taxes. The Government Entities will construe the term "Treasury Single Account" to refer to the TSA Operational bank account (depending on the time period, either GDB -0006 or BPPR -9458) and the TSA Colecturia bank account (BPPR -5191).

24.     The Government Entities object to the definition of the terms "You" and "Your" as overbroad because they encompass individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "You" and "Your" to mean the Government Entities, as applicable, and their employees reasonably likely to possess information relevant to this proceeding.

25.     The Government Entities object to each and every Instruction to the extent that they require procedures that are inconsistent with, not authorized by, or exceed those required by the Governing Rules.

26.     The Government Entities object to Instruction No. 1 to the extent it calls for the production of documents not within their possession, custody, or control.  *See Quinones v. U. of Puerto Rico*, 2015 WL 3604152, at *5 n.4 (D.P.R. June 8, 2015) (noting a party's obligation to produce documents in its possession, custody or control).

27.     The Government Entities object to Instruction No. 7, which seeks to require the Government Entities to produce documents even if "a document has or will be produced by another plaintiff, third party, or other party to these or related proceedings," on the ground that this instruction exceeds what is permitted by the Governing Rules.  The Government Entities are not required to produce documents that have already been produced and reserve the right to direct Defendants to documents produced or that will be produced by other parties.

28.     The Government Entities object to Instruction No. 8 because it purports to impose burdens that differ from or exceed those imposed by the Governing Rules.  The Government Entities object to providing a privilege log unless necessary to substantiate a claim of privilege, consistent with the Governing Rules.  The Government Entities expressly reserve the right to provide a categorical privilege log.

29.     Any documents that the Government Entities produce will only be produced subject to the *Stipulation and Amended Protective Order*, dated June 17, 2020 [Case No. 20-00005, ECF No. 76] (the "Protective Order") and with the same production specifications that were used for the productions made in connection with the HTA Lift Stay Motion.

30.     The above General Objections are incorporated into each of the following specific Objections and Responses.

## SPECIFIC OBJECTIONS AND RESPONSES

## REQUEST FOR PRODUCTION NO. 1:

All Documents governing the terms of the HTA Bonds, including all versions of the Bond Resolutions, and documents identifying the Signatories to and/or those bound by the Bond Resolutions, from creation to present.  This request includes, without limitation,

a) all versions of Bond Resolutions relating to HTA Bonds;

b) all amendments and supplements to such Bond Resolutions;

c) any other Resolutions adopted in connection with the HTA Bonds;

d) any Resolution, act, approval or decision of HTA's Board of Directors issued concerning: (1) the authority of the Executive Director to enter into the Security Agreement, dated as of February 7, 2002, or (2) any security interest, pledge or other property interest in respect of the HTA Bonds;

e) all closing binders relating to all of the HTA Bonds (and any amendments and supplements thereto); and

f) all Documents identifying the Signatories to and/or those bound by such Bond Resolutions or Resolutions.

11

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the Government Entities to draw legal conclusions or make legal determinations to ascertain which documents are sought. In responding to this Request, the Government Entities will construe the phrase "governing the terms of the HTA Bonds" to refer to the 1968 and 1998 Resolutions. The Government Entities further object to this Request to the extent its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order. Further, subparts (a), (c), (d), and (e) are improper on the ground that they seek documents and communications "relating to," "in connection with," and "concerning" the HTA Bonds, rather than documents governing the HTA Bonds.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the bound volumes for the bonds insured by Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company that it produced in connection with the HTA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the materials produced in connection with

the HTA Lift Stay Motion, and will produce Bond Documents and non-privileged documents identifying signatories to and/or those bound by the Bond Resolutions to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in GDB's archived file of HTA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent. Accordingly, Treasury directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: any responsive documents HTA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent. Accordingly, HTA directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents governing the Flow of Excise Taxes and HTA Pledged Revenues following their collection by the Commonwealth, including all Documents governing Fund 278 and its sub-accounts, and any other accounts or designated Funds (including the TSA) into or through which such funds are or have been transferred (including the HTA Accounts), including without limitation contracts, side agreements, security agreements, account control agreements, account opening documents, account statements, deeds of trust on accounts, or supplements thereto, and identifying the Signatories to and/or those bound by such agreements, from creation of any such account, Fund, Fund sub-account and Fund designation to present. This request includes, without limitation,

a)    all such Documents governing or describing the process of deposit of Excise Taxes and HTA Pledged Revenues to any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

b)    all such Documents governing or describing the process of retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues;

13

c)      all Documents governing or describing the process of transfer of Excise Taxes and HTA Pledged Revenues to and from any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

d)      all Documents governing or describing the process of such retentions and deposits, withdrawals, and transfers to and from Fund 278 and its sub-accounts; and

e)      all Documents relating to the opening or establishment of any account, Fund, Fund sub-account and Fund designation into which or from which Excise Taxes and HTA Pledged Revenues was deposited, withdrawn or transferred (including the HTA Accounts).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request to the extent it seeks documents "from creation of any such account, Fund, Fund sub-account and Fund designation to present" as overbroad.  Documents will be produced only from January 1, 2014 onward.  The Government Entities further object to this Request to the extent particular accounting designations, such as PRIFAS fund code 278, do not have the same documentation (such as "account statements") associated with deposit accounts.

The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the producing parties to draw legal conclusions or make legal determinations to ascertain which documents are sought.  The Government Entities will construe the phrases "governing the Flow of Excise Taxes and HTA Pledged Revenues," "governing . . . the process of deposit of Excise Taxes and HTA Pledged Revenues," "governing . . . the process of retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues," "governing . . . the process of transfer of Excise Taxes and HTA Pledged Revenues to and from

14

any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts),"
and "governing . . . the process of such retentions and deposits, withdrawals, and transfers to and
from Fund 278 and its sub-accounts" to refer to the 1968 and 1998 Resolutions, and regulations,
circular letters, policies, procedures, or other official documents directing the transfer of Excise
Taxes and Toll Revenues.  The Government Entities further object to this Request on the ground
that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed
in the HTA 56(d) Order.  Further, subparts (a), (b), (c), (d), and (e) are overbroad, unduly
burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order to the extent they
seek all documents "describing" or "relating to" the additional topics set forth in those subparts
rather than documents governing the topic authorized by the HTA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in
its own capacity, responds as follows: AAFAF directs Defendants to the HTA Flow of Funds
Summary, and the bank account statements, opening materials, transfer orders, bound volumes,
Treasury regulation, reporting for revenues that have the Fund 278 accounting designation, and
workbook identifying PRIFAS codes, which were produced in connection with the HTA Lift Stay
Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in
its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as
successor to GDB as fiscal agent, directs Defendants to its response to Request No. 1.  In addition,
AAFAF, in its capacity as successor to GDB as fiscal agent, will produce the following materials
to the extent those materials were not already provided in connection with the HTA Lift Stay
Motion and may be located in GDB's account-records archive or GDB's archived file of HTA-
related materials:

15

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- bank account opening materials for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- policies and procedures for transferring Excise Taxes from the Commonwealth's TSA bank accounts to HTA from January 1, 2014 onward.

Any other responsive documents AAFAF, in its capacity as successor to GDB as fiscal agent, may have would be cumulative of documents in the possession, custody, or control of Treasury and HTA.  Accordingly, AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the responses of those entities.

16

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- bank account opening materials for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- policies and procedures for transferring Excise Taxes from the Commonwealth's TSA bank accounts to HTA from January 1, 2014 onward.

Treasury will also make reasonable efforts to export data available in PRIFAS pertaining to Fund 278 from January 1, 2014 onward.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody, or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- bank account opening materials for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes and Toll Revenues into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

18

- policies and procedures for requesting transfer of Excise Taxes from the Commonwealth's TSA bank accounts to HTA from January 1, 2014 onward.

## REQUEST FOR PRODUCTION NO. 3:

All records reflecting the actual Flow of Funds into and out of Fund 278 and its subaccounts, and any other accounts into which Excise Taxes and HTA Pledged Revenues have been deposited (including the HTA Accounts) from January 2014 to the present. This request includes, without limitation,

a) records reflecting the actual deposit of Excise Taxes and HTA Pledged Revenues to any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

b) records reflecting the actual retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues;

c) records reflecting the actual transfer of Excise Taxes and HTA Pledged Revenues to and from any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts);

d) any instructions regarding use or transfer of such funds;

e) any refusal by Treasury to sign any SC-735 vouchers or other withdrawal/transfer Documents relating to Fund 278 and its sub-accounts approved by HTA or any amendments or changes requested by Treasury;

f) records concerning transfers from Commonwealth bank account BPPR-9458;

g) records concerning the Flow of Funds for Act 30 and 31 Revenues;

h) records reflecting the balance from January 2014 to present of Fund 278 and its specific subaccounts, and any changes, increases, and decreases of such balances and the reasons therefor;

i) Documents attaching, and constituting instructions or policies for attaching Fund, account, Fund 278 sub-account and DeptID number designations such as 278−660000 to received Excise Taxes and HTA Pledged Revenues;

j) Documents and other Commonwealth records that can be generated using the PRIFAS accounting system or other accounting systems such as ledgers, reports, cash flow statements, statements, Fund accreditation reports and reconciliations relating to the Flow of Excise Taxes and HTA Pledged Revenues, including the reporting of the Flow of such funds;

k) account statements of any account or Fund or Fund sub-account or designation into which Excise Taxes and HTA Pledged Revenues were deposited, transferred or in which such funds were retained (including the HTA Accounts);

l) communications with auditors regarding the Flow of Excise Taxes and HTA Pledged Revenues or any bank account, Fund, Fund designation or Fund sub-account into or from which Excise Taxes and HTA Pledged Revenue were deposited, withdrawn, transferred or retained (including the HTA Accounts), including auditor workpapers and supporting documentation related to the presentation of HTA Pledged Revenues in Commonwealth and HTA audited financial statements; and

m) records reflecting the budget and expenditure of any Excise Taxes and HTA Pledged Revenues.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request to the extent that particular accounting designations, such as PRIFAS fund code 278, do not have the same documentation (such as "account statements") associated with deposit accounts.

The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order. Further, subparts (a), (c), (d), (f), (g), and (k) seek documents that do not exist to the extent they purport to require the Government Entities to attempt to trace the use of Excise Taxes or Toll Revenues after they have been commingled in cases where no voucher or transfer order specifically identifies the source of the transferred amounts; subparts (h), (i), (*l*), and (m) are improper on the ground that they seek discovery that was not authorized under the HTA 56(d) Order; subparts (d),

20

(f), (g), and (j) are overbroad, unduly burdensome and beyond the scope of discovery allowed in

the HTA 56(d) Order to the extent they seek information "concerning" the topics in those subparts

or to the extent they are not tethered to the HTA Bonds.  The Government Entities further object

to this Request on the ground it requests "all" documents, because such a request (i) exceeds the

scope of the HTA 56(d) Order and (ii) is otherwise overbroad and unduly burdensome because it

is not limited to seeking documents sufficient to show the requested information.  Finally, the

Government Entities object to subpart (d) to the extent it seeks information regarding the "use" of

funds as being beyond the scope of discovery authorized by the HTA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in

its own capacity, responds as follows: AAFAF directs Defendants to the HTA Flow of Funds

Summary, and the bank account statements and transfer orders produced in connection with the

HTA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in

its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as

successor to GDB as fiscal agent, will produce the following materials to the extent those materials

were not already provided in connection with the HTA Lift Stay Motion and may be located in

GDB's account-records archive or GDB's archived file of HTA-related materials:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts
  previously identified by bank account number in the HTA Flow of Funds Summary,
  (ii) equivalent bank accounts for the time periods from 2014-2015 and from
  February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31
  Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

Treasury will also make reasonable efforts to export data available in PRIFAS pertaining to Fund 278 from January 1, 2014 onward.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce the following materials to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody or control pursuant to a reasonably diligent search of centralized files:

- from January 1, 2014 onward, bank account statements for (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present;

- from January 1, 2014 onward, transfer orders or similar documents directing the transfer of Excise Taxes and Toll Revenues into or out of (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents concerning the Treasury's role in the approval of transfers to HTA and the extent to which excise tax revenues were or have been made available to HTA.  The request includes, without limitation,

a)      any instructions, approvals or denials regarding any transfers of Excise Taxes;

b)      any instructions, approvals or denials of requested transfers of Excise Taxes;

c)      policies and controls concerning transfers of Excise Taxes; and

d)      the delegation of any purported authority over transfer activity relating to Excise
Taxes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to their General Objections, incorporated herein by this reference, the
Government Entities object to this Request to the extent it seeks documents protected by the
Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative
Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines,
or immunities protecting information from disclosure.  The Government Entities further object to
this Request on the ground it requests "All Documents," which is overbroad and unduly
burdensome, rather than documents sufficient to show the requested information.

The Government Entities further object to this Request on the ground that its subparts are
overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d)
Order.  Further, subparts (a), (b), (c), and (d) are overbroad, unduly burdensome and beyond the
scope of discovery allowed in the HTA 56(d) Order to the extent they seek documents "regarding,"
"concerning," and "relating to" Excise Taxes transfers in general, rather than documents
concerning Treasury's role in the approval of transfers to HTA and the extent to which Excise
Taxes were or have been made available to HTA.  Further, subpart (d) is unintelligible because it
demands documents concerning "delegation of purported authority" as opposed to delegation of
authority.  From the perspective of the Government Entities, there was authority, not purported
authority and there is no basis to believe authority was delegated.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in
its own capacity, responds as follows: AAFAF directs Defendants to the vouchers, transmittal
letters, and Circular Letter No. 1300-22-16, which were produced in connection with the HTA Lift
Stay Motion.

24

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce documents, from January 1, 2014 onward, concerning Treasury's role in the approval of transfers of Excise Taxes to HTA and the extent to which Excise Taxes were or have been made available to HTA, to the extent those materials were not already provided in connection with the HTA Lift Stay Motion and may be located in GDB's archived file of HTA-related materials:

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce documents, from January 1, 2014 onward, concerning Treasury's role in the approval of transfers of Excise Taxes to HTA and the extent to which Excise Taxes were or have been made available to HTA, to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody or control pursuant to a reasonably diligent search of centralized files.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce documents, from January 1, 2014 onward, concerning Treasury's role in the approval of transfers of Excise Taxes to HTA and the extent to which Excise Taxes were or have been made available to HTA to the extent these materials were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody or control pursuant to a reasonably diligent search of centralized files.

**REQUEST FOR PRODUCTION NO. 5:**

All policies and procedures related to the Flow of Excise Taxes and HTA Pledged Revenues pursuant to the Bond Documents.  This request includes, without limitation,

  a)      policies, procedures, and controls reflecting instructions relating to the use or transfer of any of such funds, from creation to present;

25

b)    policies, procedures, and controls regarding the collection of Excise Taxes and HTA Pledged Revenues, from creation to present;

c)    policies, procedures, and controls regarding the retention by the Commonwealth of such funds, from creation to present;

d)    policies, procedures, and controls regarding the reporting of the Flow of Excise Taxes and HTA Pledged Revenues, from creation to present;

e)    policies, procedures, and controls regarding the recording and accounting of Excise Taxes and HTA Pledged Revenues from creation to present, including charts of accounts (including HTA Accounts), PRIFAS reports, ledgers, policies, procedures and supporting documentation used in the presentation and treatment of the HTA Pledged Revenues;

f)    Documents sufficient to identify the individuals responsible for policies and procedures related to the Flow of Excise Taxes and HTA Pledged Revenues, including those overseeing or approving transactions involving the reporting, recording, transfer and accounting for any of such funds;

g)    policies and procedures regarding, and Documents related to, the "HTA Pass Throughs" and "Non-General Fund Pass Throughs" for HTA and the Excise Taxes identified in TSA Cash Flow Reports for the period beginning in July 2017 and continuing through June 2020;

h)    policies and procedures regarding, and Documents reflecting and related to, the presentation of Excise Taxes as "General Fund Collections" for the period July 2020 to present, including all documents substantiating the reason and justification for such change in presentation;

i)    policies and procedures regarding the presentation of HTA Pledged Revenues in the audited financial statements of the Commonwealth and HTA for fiscal years 2014 to present, including auditor workpapers and supporting documentation;

j)    policies and procedures related to the Commonwealth and HTA's implementation of Governmental Accounting Standards Board Statement No. 54 as to the HTA Pledged Revenues, for fiscal years 2014 to present, including documents evidencing the manner of such implementation;

k)    policies and procedures relating to the accounting and fiscal control of restrictions on monies in the TSA, including the HTA Pledged Revenues and federal funds, for fiscal years 2014 to present;

l)    policies and procedures relating to the "Special Revenue Fund" for HTA identified on Page 11 of the Board's December 17, 2020 presentation styled Creditor Mediation Cash Support Materials, including the materials related to Footnote 4 therein;

m) policies and procedures pertaining to the Commonwealth's ability or obligation to transfer money to HTA upon request; and

n) auditor workpapers related to the testing of the above-identified policies and procedures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order. Further, subparts (d), (e), (f) , (g), (h), (i), (j), (k), (*l*), and (n) are improper on the ground that they seek discovery that was not authorized under the HTA 56(d) Order, and subparts (a), (b), (c), (d), and (m) are overbroad, unduly burdensome and beyond the scope of discovery allowed in the HTA 56(d) Order to the extent they seek documents "regarding" or "pertaining" to the topics in those subparts, to the extent they are not tethered to the HTA Bonds or the Flow of Funds, and to the extent they seek documents prior to January 1, 2014. Finally, the Government Entities also object to subpart (a) to the extent it seeks information regarding the "use" of funds as being beyond the scope of discovery authorized by the HTA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF, in its own capacity, directs Defendants to Treasury Regulation 49. Any other responsive documents AAFAF, in its own capacity, may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as

successor to GDB as fiscal agent, Treasury, and HTA.  Accordingly, AAFAF, in its own capacity, directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce policies and procedures, from January 1, 2014 onward, related to the flow of Excise Taxes pursuant to the Bond Documents through (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present, to the extent such documents were not already provided in connection with the HTA Lift Stay Motion and may be located in GDB's archived file of HTA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce policies and procedures, from January 1, 2014 onward, related to the flow of Excise Taxes pursuant to the Bond Documents through (i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present, to the extent such documents were not already provided in connection with the HTA Lift Stay Motion and may be located in Treasury's possession, custody, or control after a reasonably diligent search of centralized files.

Subject to and without waiving the foregoing general and specific objections, HTA responds as follows: HTA will produce policies and procedures, from January 1, 2014 onward, related to the flow of Excise Taxes and Toll Revenues pursuant to the Bond Documents through

(i) the bank accounts previously identified by bank account number in the HTA Flow of Funds Summary, (ii) equivalent bank accounts for the time periods from 2014-2015 and from February 2020 to present, and (iii) equivalent bank accounts for Act 30 and 31 Revenues from 2014 through present, to the extent such documents were not already provided in connection with the HTA Lift Stay Motion and may be located in HTA's possession, custody, or control after a reasonably diligent search of centralized files.

Dated: February 22, 2021
      San Juan, Puerto Rico

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
(Admitted *Pro Hac Vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: jrapisardi@omm.com

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
Email: pfriedman@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1-949-823-6900
Fax: +1-949-823-6994
Email: emckeen@omm.com
       apavel@omm.com

*Attorneys for the Government Entities*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on February 22, 2021, I caused service on the person(s) listed below by

electronic transmission of the document titled:

**RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND AS SUCCESSOR TO GDB AS FISCAL AGENT TO GDB), HTA, AND TREASURY TO THE SUBPOENAS OF DEFENDANTS FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE HTA REVENUE BOND ADVERSARY PROCEEDING**

WEIL, GOTSHAL & MANGES LLP

Robert Berezin, Esq.
Gregory Silbert, Esq.
767 Fifth Avenue
New York, NY 10153
robert.berezin@weil.com
gregory.silbert@weil.com

*Counsel for National Public Finance Guarantee Corporation*

PROSKAUER ROSE, LLP

Ehud Barak, Esq.
Margaret A. Dale, Esq.
Michael T. Mervis, Esq.
Jennifer L. Jones, Esq.
Laura Stafford, Esq.
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
ebarak@proskauer.com
mdale@proskauer.com
mmervis@proskauer.com
jljones@proskauer.com
lstafford@proskauer.com

*Counsel for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico and the Puerto Rico Highways and Transportation Authority*

PAUL HASTINGS LLP

Luc A. Despins, Esq.
G. Alexander Bongartz, Esq.
Nicholas Bassett, Esq.
875 15th Street  NW
Washington, DC 20005
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel for the Official Committee of
Unsecured Creditors*

CADWALADER, WICKERSHAM & TAFT LLP

William J. Natbony
Thomas J. Curtin
Casey J. Servais
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: bill.natbony@cwt.com
thomas.curtin@cwt.com
casey.servais@cwt.com

*Counsel for Assured Guaranty Corp., and
Assured Guaranty Municipal Corp.*

MILBANK LLP

Atara Miller
Grant R. Mainland
John J. Hughes, III
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email:
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com

*Counsel for Ambac Assurance Corporation*

REED SMITH LLP

Jared S. Roach
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: jroach@reedsmith.com

*Counsel for The Bank of New York Mellon*

BUTLER SNOW LLP

Martin A. Sosland
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III
Adam M. Langley
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

*Counsel for Financial Guaranty Insurance
Company*

Dated this 22nd day of February, 2021.

HOGAN LOVELLS US LLP

Ronald J. Silverman
Michael C. Hefter
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
ronald.silverman@hoganlovells.com
michael.hefter@hoganlovells.com

*Counsel for U.S. Bank Trust National
Association, in its Capacity as Trustee to
PRIFA Bondholders*

/s/ Ashley M. Pavel
Ashley M. Pavel

# **<u>EXHIBIT 9</u>**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., FINANCIAL GUARANTY INSURANCE COMPANY and U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee<br><br>Defendants. | PROMESA<br>Title III<br><br>Adv. Proc. 20-00003-LTS |

**RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND AS SUCCESSOR TO GDB AS FISCAL AGENT ), PRIFA, AND TREASURY TO THE SUBPOENAS OF AMBAC ASSURANCE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND U.S. BANK TRUST NATIONAL ASSOCIATION FOR THE**

---

[1]      The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE PRIFA REVENUE
<u>BOND ADVERSARY PROCEEDING</u>**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 9016 of the Federal Rules of Bankruptcy Procedure pursuant to Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), in its own capacity, and as successor to the Government Development Bank for Puerto Rico ("GDB") as fiscal agent, the Puerto Rico Infrastructure Financing Authority ("PRIFA"), and the Puerto Rico Department of Treasury ("Treasury") (together, the "Government Entities") hereby respond and object (the "Responses and Objections") to the subpoenas of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association (together, the "Defendants") for the Production of Documents in Connection with the PRIFA Revenue Bond Adversary Proceeding (Adv. Proc. No. 20-00003) (the "Subpoenas"), which were served upon the Government Entities, respectively, on February 8, 2021, and which include document requests (collectively, the "Requests," and each a "Request") attached as an exhibit thereto.

## PRELIMINARY STATEMENT

The Government Entities have not yet completed their investigation and review of documents.  These Responses and Objections, and any subsequent document productions, are based and will be based only upon the information that is currently available to and specifically known to the Government Entities as of the date hereof.  The Government Entities reserve the right to amend or supplement these Responses and Objections at any time in light of future investigation, research, or analysis, and also expressly reserve the right to rely on, at any time, including in any other proceeding, subsequently discovered information, or information omitted from these Responses and Objections as a result of mistake, error, or inadvertence.  The Government Entities have made reasonable efforts to respond to the Subpoenas, to the extent they have not been

3

objected to, as the Government Entities understand and interpret the Subpoenas.  If the Defendants subsequently assert a meritorious interpretation of the Subpoenas that differs from the Government Entities' interpretation, the Government Entities reserve the right to supplement these Reponses and Objections.

## GENERAL OBJECTIONS

1.      The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information beyond the information the Court authorized Defendants to seek in the *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, dated January 20, 2021 [Case No. 20-00003, ECF No. 115] ("PRIFA 56(d) Order").  The Government Entities further object to the Subpoenas, and to each and every Request, to the extent they purport to impose burdens inconsistent with, not otherwise authorized by, or exceeding those required by the Federal Rules of Civil Procedure as incorporated into the Federal Rules of Bankruptcy Procedure, the local rules for the United States Bankruptcy Court for the District of Puerto Rico, or this Court's chambers practices and case management orders (collectively, together with the PRIFA 56(d) Order, the "Governing Rules").  The Government Entities will construe and respond to the Subpoenas and Requests in a manner consistent with its obligations under the Governing Rules, and not otherwise.

2.      The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information irrelevant to the parties' claims or defenses applicable to the *Notice of Motion and Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056*

4

*for Partial Summary Judgment Disallowing Claims*, dated April 28, 2020 [Case No. 20-00003, ECF No. 43], or proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

3.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek documents or information not in the Government Entities' possession, custody, or control.  Subject to the other general and specific objections set forth herein, the Government Entities will use reasonable diligence to obtain responsive documents in their possession, custody, or control based on an examination of those files reasonably expected to yield responsive documents.  Documents produced by the Government Entities in response to specific Requests should not be construed as a representation that every document in their possession, custody, or control has been examined.

4.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek materials already provided to Defendants in connection with the *Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank Trust National Association, Concerning Application of the Automatic Stay to the Revenues Securing the PRIFA Rum Tax Bonds*, dated January 31, 2020 [Case No. 17-03283, ECF No. 10602] (the "<u>PRIFA Lift Stay Motion</u>").  Pursuant to the 56(d) Order, those documents will not be produced again in this proceeding.

5.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they place an unreasonable burden on the Government Entities, including without limitation by seeking documents and information equally or more readily available from public sources or otherwise already available to Defendants.

6.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they require the search of archives, backup files, or any information not readily accessible, including but not limited to any audio, video, electronic recordings, telephone records, calendar entries, text messages or similar forms of electronic messaging, which would be unduly burdensome and not proportional to the needs of the case.

7.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they expressly or impliedly seek documents or information protected from disclosure by the Attorney-Client Privilege, the Attorney Work-Product Doctrine, the Executive Privilege, the Deliberative Process Privilege, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  Nothing in these Responses and Objections is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.  Documents and information protected by these privileges, doctrines, or immunities are not subject to disclosure, and the Government Entities will not provide them.  The Government Entities intend to and do assert any and all such privileges with respect to all such documents and information.  The inadvertent production of any such protected document or other item shall not constitute a waiver of any privilege or protection or any other ground for objection to discovery with respect to the information contained therein, nor shall such inadvertent production waive the Government Entities' right to object to the use of any such document or the information contained therein in connection with this proceeding or any subsequent proceeding.  Upon notification that such disclosure was inadvertent, the document(s)/item(s) and any copies thereof shall be returned or destroyed immediately.

8.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they (i) imply the existence of facts or circumstances that do not or did not exist, or

6

(ii) state or assume legal or factual conclusions.  By providing these Responses and Objections, the Government Entities do not admit any factual or legal premise in the Subpoenas.

9.      To the extent any term defined or used in the Subpoenas and Requests is used in responding to the Subpoenas and Requests, it is not accepted or conceded that any such term or definition is appropriate, descriptive, or accurate.

10.     The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they are cumulative or duplicative of other discovery requests.

11.     The Government Entities object to the definition of the term "AAFAF" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "AAFAF" to mean AAFAF and its employees reasonably likely to possess information relevant to this proceeding.

12.     The Government Entities object to the definition of the terms "Accounts" and "Account" as vague and overbroad, particularly insofar as they include the undefined term "Related Accounts."  The Government Entities will construe the terms "Accounts" and "Account" to mean bank accounts held by or on behalf of the Commonwealth or its instrumentalities.

13.     The Government Entities object to the definition of the term "Bond Documents" as vague and overbroad, particularly insofar as it includes documents "related" to the Trust Agreement.  The Government Entities will construe the term "Bond Documents" to refer to the Trust Agreement and the Enabling Act.

14.     The Government Entities object to the definition of the term "Citibank" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe

7

"Citibank" to mean Citibank, N.A. and its employees reasonably likely to possess information relevant to this proceeding.

15.     The Government Entities object to the definition of the term "Commonwealth" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "Commonwealth" to mean the Commonwealth and its employees reasonably likely to possess information relevant to this proceeding.

16.     The Government Entities object to the definition of the term "Communication" to the extent it means "oral" transmittal of information, including "face-to-face conversations" and "oral . . . exchange between two or more Persons that has been recorded or transcribed in any way including letters, facsimiles, transcriptions, sound recordings, or video recordings," on the grounds it is vague, overly broad, unduly burdensome, and not proportional to the needs of the case, and seeks to impose requirements or obligations beyond the scope of, or different from, those imposed by the Governing Rules.

17.     The Government Entities object to the definition of "Flow of Funds" to the extent it includes accounts that received only Rum Tax Remittances in excess of the First Proceeds.  The Government Entities will construe "Flow of Funds" to encompass the bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the flow of funds summary AAFAF provided in connection with the PRIFA Lift Stay Motion (Case No. 17-3283, ECF No. 12998-12) ("PRIFA Flow of Funds Summary").

8

18.     The Government Entities object to the definition of the term "Fund" to the extent that it incorrectly presumes that particular accounting designations have the same documentation (such as "account statements") associated with deposit accounts.

19.     The Government Entities object to the definition of the term "GDB" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  The Government Entities further object to the definition of GDB on the ground that it is defined to include the GDB Debt Recovery Authority and the GDB Public Entity Trust, which are legally separate entities from GDB.  The Government Entities will construe the term "GDB" to include former employees of GDB and employees of AAFAF, as successor to GDB as fiscal agent, who are reasonably likely to possess information relevant to this proceeding.

20.     The Government Entities object to the definition of the term "KPMG" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "KPMG" to mean KPMG International and its employees reasonably likely to possess information relevant to this proceeding.

21.     The Government Entities object to the definition of the term "McConnell Valdés" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "McConnell Valdés" to mean McConnell Valdés PLLC and its employees reasonably likely to possess information relevant to this proceeding.

22.     The Government Entities object to the definition of the term "PRIFA" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "PRIFA"

to mean PRIFA and its employees reasonably likely to possess information relevant to this proceeding.

23.     The Government Entities object to the definition of the term "Resolutions" as overbroad to the extent it includes any Resolutions other than Resolutions related to the Bond Documents.  In responding to the Requests, the Government Entities will construe "Resolutions" to mean Resolutions related to the Bond Documents.

24.     The Government Entities object to the definition of the term "Sidley Austin" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "Sidley Austin" to mean Sidley Austin and its employees reasonably likely to possess information relevant to this proceeding.

25.     The Government Entities object to the definition of the term "Signatories" on the ground that the phrase "otherwise manifested their consent" is vague and ambiguous.  The Government Entities will construe the term "Signatories" to mean "any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed a Document as a party, or on behalf of a party."

26.     The Government Entities object to the definition of the term "Treasury" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "Treasury" to mean the Puerto Rico Department of Treasury and its employees reasonably likely to possess information relevant to this proceeding.

27.     The Government Entities object to the definition of the term "Treasury Single Account" as overly broad and inaccurate to the extent that it purports to include accounts that are

not held by the Commonwealth and are not part of the Treasury Single Account, including GDB -0704 (a bank account held by PRIFA) and GDB -1891 (a bank account maintained by GDB on behalf of PRIFA for debt service on PRIFA bonds).  The major bank accounts that comprise or comprised the Treasury Single Account are described in the Oversight Board's disclosure statement dated September 27, 2019 [Case No. 17-3283, ECF No. 8766, at 86] and in the document produced at CW_STAY0000001.  The Government Entities further object to this definition as overbroad to the extent it includes bank accounts within the Treasury Single Account that never received First Proceeds.  The Government Entities will construe the term "Treasury Single Account" to refer to the TSA Operational bank account (depending on the time period, either GDB -0006 or BPPR -9458).

28.     The Government Entities object to the definition of the term "Trust Agreement" as vague, ambiguous, and overbroad, particularly as to the inclusion of "any other related Agreement."   In responding to the Requests, the Responding Party will construe "Trust Agreement" to mean the 1988 Trust Agreement and the 1997 Amended Trust Agreement.

29.     The Government Entities object to the definition of the terms "You" and "Your" as overbroad because they encompass individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "You" and "Your" to mean the Government Entities, as applicable, and their  employees reasonably likely to possess information relevant to this proceeding.

30.     The Government Entities object to each and every Instruction to the extent that they require procedures that are inconsistent with, not authorized by, or exceed those required by the Governing Rules.

31.     The Government Entities object to Paragraph 51 of the Definitions as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities object will construe each reference to a non-natural Person to mean the identified Person.

32.     The Government Entities object to Paragraph 52 of the Definitions as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe each reference to a natural Person to mean the identified Person.

33.     The Government Entities object to Instruction No. 1 to the extent it calls for production of documents not within their possession, custody, or control.  *Quinones v. U. of Puerto Rico*, 2015 WL 3604152, at *5 n.4 (D.P.R. June 8, 2015) (noting a party's obligation to produce documents in its possession, custody or control).

34.     The Government Entities object to Instruction No. 5, which requires that "Documents responsive to these requests shall be labeled in such a way as to show their source, including, but not limited to, the files and offices where they were maintained."  The Government Entities will produce documents as they are maintained in the ordinary course of business.

35.     The Government Entities object to Instruction Nos. 6, 7, and 8 because they purport to impose burdens on the Government Entities that differ from or exceed those imposed by the Governing Rules.  The Government Entities object to providing a privilege log unless necessary to substantiate a claim of privilege, consistent with the Governing Rules, and expressly reserve the right to provide a categorical privilege log.

36.     The Government Entities object to Instruction No. 11, which provides that "[a]ny ambiguity in a request shall be construed to bring within the scope of the request all responses that

12

otherwise could be construed to be outside of its scope," as overbroad and unduly burdensome.  If a Request is ambiguous, the Government Entities will construe the Request in the manner that is most reasonable given the text of the Request and the context.

37.     The Government Entities object to Instruction No. 14—which provides that, unless otherwise instructed or clear from the context of the Requests, the Requests "pertain to the period from October 1, 1987, to the present"—as overbroad and unduly burdensome, given that the time period is farther back than the January 1, 2014 date authorized by the PRIFA 56(d) Order.

38.     Any documents that the Government Entities produce will only be produced subject to the *Stipulation and Amended Protective Order*, dated June 17, 2020 [Case No. 20-00003, ECF No. 65] (the "Protective Order") and with the same production specifications that were used for the productions made in connection with the PRIFA Lift Stay Motion.

39.     The above General Objections are incorporated into each of the following specific Objections and Responses.

## SPECIFIC OBJECTIONS AND RESPONSES

Each of the General Objections, Objections to Definitions, and Objections to Instructions is incorporated into each response below as if fully set forth therein

## REQUEST FOR PRODUCTION NO. 1:

All Documents governing the PRIFA Bonds, including all versions of the 1988 Trust Agreement and 1997 Amended Trust Agreement and any supplements thereto in effect during the relevant period, as well as Documents and Communications sufficient to explain the anomalies between the 1988 Trust Agreement and 1997 Amended Trust Agreement, and Documents identifying the Signatories to and/or those bound by such Agreements, including:

   a)     All Documents governing the PRIFA Bonds, including all Agreements, all closing binders, any amendments and supplements thereto, and any other legally operative Documents concerning the PRIFA Bonds;

b)  All versions of the 1988 Trust Agreement, the 1997 Amended Trust Agreement, or any other versions of the Trust Agreement, including, without limitation, supplemental Agreements or amendments (without any time limitation);

c)  Documents and Communications—including Communications between and among PRIFA, the Commonwealth, Sidley Austin, or McConnell Valdes—concerning: (i) the execution and notarization of the 1988 Trust Agreement and 1997 Amended Trust Agreement; (ii) the location or whereabouts of the 1988 Trust Agreement, the 1997 Amended Trust Agreement, and any other versions of the Trust Agreement, including, without limitation, supplemental Agreements or amendments; and (iii) the inclusion of "NY1 5690864v.2 45967/59" in the bottom-left corner of each page of the 1997 Amended Trust Agreement;

d)  Documents identifying the Signatories to or Persons bound by any Agreement referenced under Request 1, including, without limitation, the 1988 Trust Agreement, the 1997 Amended Trust Agreement, any other versions of the Trust Agreement, and any supplemental Agreements or amendments.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the Government Entities to draw legal conclusions or make legal determinations to ascertain which documents are sought.  The Government Entities will construe the phrase "governing the PRIFA Bonds" to refer to the Trust Agreement.  The Government Entities object to the term "anomalies" as vague and ambiguous, and in responding to this Request, construes the term to refer to the "seeming discrepancies identified in paragraphs 24-29 of the PRIFA Declaration."  The Government Entities further object to the phrase "legally operative" in subpart (a) as vague and ambiguous, and in responding to this Request, construes the term to refer to final executed documents.  The Government Entities further object to this Request to the extent its subparts are overbroad and

14

unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order. Further, subparts (a) and (c) are overbroad, unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order to the extent they seek documents "concerning" the topics in those subparts, rather than documents governing the PRIFA Bonds or documents sufficient to explain the notation issues raised in paragraphs 24-29 of the PRIFA Declaration.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the bound volume and trust agreement it produced in connection with the PRIFA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the materials produced in connection with the PRIFA Lift Stay Motion, and will produce Bond Documents, executed versions of the Trust Agreement, and non-privileged documents identifying signatories to and/or those bound by such agreements to the extent these materials were not already provided in connection with the PRIFA Lift Stay Motion and may be located in GDB's archived file of PRIFA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, Treasury directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, PRIFA responds as follows: PRIFA directs Defendants to the materials produced in connection with the PRIFA Lift Stay Motion.  PRIFA will also produce Bond Documents, executed versions of the

Trust Agreement, non-privileged documents identifying signatories to and/or those bound by such agreements, and non-privileged documents relating to the signature, notarization, and notation issues raised in paragraphs 24-29 of the PRIFA Declaration (ECF No. 82)  to the extent such documents were not already provided in connection with the PRIFA Lift Stay Motion and may be located in PRIFA's possession, custody or control pursuant to a reasonably diligent search of centralized files.

**<u>REQUEST FOR PRODUCTION NO. 2</u>:**

All Documents and Agreements governing the Flow of Rum Tax Remittances including all versions of the Lockbox Agreement and Agreements governing all accounts into or through which such funds are or have been transferred, and identifying the Signatories to and/or those bound by such agreements, including:

a) All Documents governing the Flow of Rum Tax Remittances from January 1, 2006, to present;

b) All versions (including, without limitation, drafts) of the Lockbox Agreement, including all Agreements, or supplements thereto, or other provisions concerning the Lockbox Agreement;

c) All Documents identifying the Signatories to or Persons bound by any Agreements referenced under Request 2, including the Lockbox Agreement;

d) Documents and Agreements to which the Commonwealth, Rum Producers, Citibank, or PRIFA is a party that relate to the Rum Taxes, the Flow of Funds, or the use of Rum Taxes;

e) Documents concerning the opening of any account to or from which Rum Tax Remittances were transferred or deposited, including the Treasury Single Account, or any accounts owned, controlled, or held by the Commonwealth, the GDB, U.S. Bank as Indenture Trustee, Citibank, and AAFAF, and any subsequent changes to such accounts, including (i) signature cards for each such account, (ii) the name, legal title, and registration of each such account, (iii) the Signatories of each such account, and (iv) any changes or updates to any of the foregoing over time;

f) All Documents and Communications concerning the roles of the Commonwealth Treasury, the GDB, and PRIFA in the transfers of Rum Tax Remittances into and out of the Treasury Single Account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

In addition to their General Objections, incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request on the ground that it seeks documents prior to the January 1, 2014 date authorized in the PRIFA 56(d) Order, *see* PRIFA 56(d) Order at 7, and to the extent to seeks information about transfers of Rum Tax Remittances outside the Flow of Funds.

The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the Government Entities to draw legal conclusions or make legal determinations to ascertain which documents are sought.  The Government Entities will construe the phrase "governing the Flow of Rum Tax Remittances" to refer to the Trust Agreement, the Lockbox Agreement and regulations, circular letters, policies, procedures, or other official documents directing the transfer of Rum Tax Remittances.

The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order.  Further, subpart (f) is improper on the ground that it seeks discovery that was not authorized under the PRIFA 56(d) Order, and subparts (b), (d), and (e) are overbroad, unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order to the extent they seek documents "concerning" or that "relate to" the topics in those subparts, rather than documents governing the Flow of Rum Tax Remittances.  Further, the Government Entities object to subpart (d) to the extent it seeks information regarding the "use" of funds as being beyond the scope of

17

discovery authorized by the PRIFA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the PRIFA Flow of Funds Summary and the bank account statements, opening materials, transfer orders, and bound volume it produced in connection with the PRIFA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to its response to Request No. 1.

In addition, AAFAF, in its capacity as successor to GDB as fiscal agent, will produce the following materials to the extent those materials were not already provided in connection with the PRIFA Lift Stay Motion and may be located in GDB's account records archive or GDB's archived file of PRIFA-related materials:

- bank account statements from January 1, 2014 onward for bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary.

- transfer orders or similar documents from January 1, 2014 onward directing the transfer of the First Proceeds into or out of bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary.

Any other responsive documents AAFAF, in its capacity as successor to GDB as fiscal agent, may have would be cumulative of documents in the possession, custody, or control of

Treasury.  Accordingly, AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the response of Treasury.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce the following materials to the extent these materials were not already provided in connection with the PRIFA Lift Stay Motion and may be located in Treasury's possession, custody, or control pursuant to a reasonably diligent search of centralized files:

- bank account statements from January 1, 2014 onward for bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary;

- transfer orders or similar documents from January 1, 2014 onward directing the transfer of the First Proceeds into or out of bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary;

- all executed versions of the Lockbox Agreement

Subject to and without waiving the foregoing general and specific objections, PRIFA responds as follows: PRIFA directs Defendants to its response to Request No. 1.  Any other responsive documents PRIFA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and Treasury. Accordingly, PRIFA directs Defendants to the responses of those entities.

**REQUEST FOR PRODUCTION NO. 3:**

Resolutions related to the Bond Documents adopted by the Commonwealth or by PRIFA, including:

a)   All Resolutions adopted by PRIFA or the Commonwealth relating to the Bond
Documents, including, without limitation, any Resolutions of the type referred
to in 3 L.P.R.A. § 1907 or Section 602 of the 1988 Trust Agreement, and all
Documents and Communications concerning the adoption of such Resolutions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

In addition to their General Objections, the Government Entities object to this Request to

the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product

Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or

any other applicable privileges, doctrines, or immunities protecting information from disclosure.

The Government Entities further object to this Request on the ground that its subpart is

overbroad and unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d)

Order.  Further, subpart (a) is overbroad, unduly burdensome, and beyond the scope of discovery

allowed in the PRIFA 56(d) Order to the extent it seeks (i) Resolutions other than Resolutions

related to the Bond Documents, and (ii) documents "concerning the adoption of such Resolutions,"

rather than just seeking the Resolutions themselves.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in

its own capacity, responds as follows: AAFAF directs Defendants to the Resolutions it produced

in connection with the PRIFA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in

its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as

successor to GDB as fiscal agent, will produce any Resolutions related to the Bond Documents

adopted by the Commonwealth or by PRIFA to the extent such documents were not already

provided in connection with the PRIFA Lift Stay Motion and may be located in GDB's archived

file of PRIFA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury

responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, Treasury directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, PRIFA responds as follows: any responsive documents PRIFA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, PRIFA directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents and Communications identifying the nature and location of the Infrastructure Fund and the Restrictions placed upon moneys therein, including:

a) Documents and Communications concerning the nature and location of the Infrastructure Fund;

b) Documents concerning Restrictions placed upon moneys deposited in or to the credit of the Infrastructure Fund;

c) Documents concerning each account where moneys comprising the Infrastructure Fund are deposited, including all account holders, Signatories, and entities or individuals with authority over the accounts, and transaction records for each such account;

d) Documents concerning each fund to which moneys comprising the Infrastructure Fund were credited, including the Fund Value, the manner in which the Fund is held, Restrictions applicable thereto, and transaction records for each such Fund;

e) Documents and Communications referencing the Infrastructure Fund, including Documents or Communications concerning the deposit of moneys in or to the credit of the Infrastructure Fund;

f) Documents and Communications concerning or referencing Restrictions placed upon the First Proceeds, Rum Tax Remittances, or any moneys deposited in or to the credit of the Infrastructure Fund;

21

g)    Communications between and among the Commonwealth, PRIFA, Citibank, or Rum Producers regarding those entities' understanding, interpretation, and implementation of the Enabling Act, Bond Documents, or Lockbox Agreement, including any Communications concerning the First Proceeds or the Infrastructure Fund;

h)    Documents and Communications, including those between and among the Commonwealth, Treasury, PRIFA, or KPMG, that make reference to the First Proceeds, the Infrastructure Fund, or the Rum Tax Remittances, or relating to the treatment, discussion, or presentation of First Proceeds, the Infrastructure Fund, or the Rum Tax Remittances in the Commonwealth's historical audited Financial Statements and amendments thereto, including: (i) workpapers, engagement letters, tie outs, support for Financial Statements; (ii) the decision to describe the First Proceeds as "conditionally allocated" to PRIFA in the Commonwealth's Financial Statements for the fiscal year ended June 30, 2015 or any other year; (iii) the description of the First Proceeds as "the first $117 million of these federal excise taxes reimbursed, which are subsequently transferred to the Puerto Rico Infrastructure Financing Authority's Debt Service Fund to provide for the debt service of its special tax revenue bonds" in the Commonwealth's Financial Statements for the fiscal year ended June 30, 2014, and; (iv) the meaning of accounting terms of arts historically used therein, including "Special Revenue Fund," "Special Deposit," "PRIFA Special Revenue Fund," "Restrictions" or "restricted."

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

In addition to their General Objections, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object that the term "Restrictions," as defined by Defendants, renders the Request overboard, unduly burdensome, and beyond the scope of discovery allowed in the PRIFA 56(d) Order and improperly characterizes informal practices as "Restrictions." The Government Entities will construe the term "Restrictions" as used in this Request to refer to a law, contract, or other legal document directing or limiting the use of Infrastructure Fund and any moneys therein.

The Government Entities further object to this Request on the ground that its subparts are

overbroad and unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order.  Further, subparts (d), (g), and (h) are improper on the ground that they seek discovery that was not authorized under the PRIFA 56(d) Order, and subparts (a), (b), (c), (e), and (f) are overbroad, unduly burdensome, and beyond the scope of discovery allowed in the PRIFA 56(d) Order to the extent they seek documents "concerning" or "referencing" the topics in those subparts or are not tethered to information identifying the nature and location of the Infrastructure Fund and the Restrictions placed upon moneys therein.  In addition, the Government Entities further object to the use of the phrase "monies comprising the Infrastructure Fund" in subparts (c) and (d) as vague and ambiguous, as the parties have a dispute regarding the location and identity of such funds.  The Government Entities further object to this Request on the ground that it requests "All Documents and Communications," which is overbroad and unduly burdensome, rather than documents sufficient to show the requested information.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF conducted a reasonably diligent search of centralized files for information identifying the nature and location of the Infrastructure Fund in connection with the PRIFA Lift Stay Motion and did not locate any responsive information.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce non-privileged documents relating to the Infrastructure Fund to the extent such documents may be located in GDB's archived file of PRIFA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury agrees to conduct a reasonably diligent search of centralized files in

23

its possession, custody, or control for documents identifying the nature and location of the Infrastructure fund and the restrictions placed thereon from January 1, 2014 onward.  To the extent any such materials are located, Treasury will produce them.

Subject to and without waiving the foregoing general and specific objections, PRIFA responds as follows: PRIFA agrees to conduct a reasonably diligent search of centralized files in its possession, custody, or control for documents identifying the nature and location of the Infrastructure fund and the restrictions placed thereon from January 1, 2014 onward.  To the extent any such materials are located, PRIFA will produce them.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents and Communications relating to the accounting treatment of Rum Tax Remittances in general, including the use and purpose of Account Value designations, Fund Value designations, and DeptIDs, including:

a)   Documents and Communications concerning Treasury's and PRIFA's accounting practices, including the use of fund accounting, GAAP, and GASB principles;

b)   Documents concerning how Rum Tax Remittances are designated, including any Documents concerning any designation of Rum Tax Remittances as part of its General Fund;

c)   Documents and Communications concerning all Account Value, Fund Value, DeptID, Program, and Class Values associated with any transactions of Rum Tax Remittances, and the purpose and meaning of such designations;

d)   Documents sufficient to identify all transactions, from December 1, 1997 to present, relating to: (i) account designations R4220 and E6120; (ii) Fund Value 111 and 141; (iii) DeptID numbers 0250000 and 1610000; and (iv) any other Account Value, Fund Value, DeptID, Program, or Class Values identified in response to these Requests, including records of Treasury's or PRIFA's recordation of these transactions in the Express Voucher System or any other internal accounting ledger or fiscal system, and any other transactions related to PRIFA or Rum Tax Remittances;

e)   Commonwealth and PRIFA general ledger and other internal accounting records showing the internal financial reporting of or controls over transactions on the Commonwealth's and PRIFA's books and records, including the chart of accounts for the Commonwealth and PRIFA that identify and describe or define specific accounts and Funds (or the data on any internal accounts or Funds concerning the

First Proceeds), journal entries associated with transfers into and out of the PRIFA Special Revenue Fund and Debt Service Fund, and Financial Statements concerning the PRIFA Special Revenue Fund and Debt Service Fund;

f)      Reports for general ledger accounts, including collections reports, earned revenues reports, reports reconciling revenues earned with revenues collected, cash disbursement reports, and withdrawal reports, for every account concerning the Rum Tax Remittances;

g)      Documents sufficient to show how Rum Tax Remittances received by Treasury pursuant to the Lockbox Agreement were accounted for in the Express Voucher System, the general ledger, and any other fiscal or accounting system, and copies of all journal entries associated with such payments;

h)      Documents and Communications relating to the accounting treatment of the Rum Tax Remittances outside of the First Proceeds, including Rum Tax Remittances received and transferred to the Puerto Rico Science & Technology Trust from the period January 1, 2014 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

In addition to their General Objections, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request on the ground that it requests "All Documents and Communications," which is overbroad and unduly burdensome, rather than documents sufficient to show the requested information. The Government Entities further object to this Request to the extent it requests information dated prior to January 1, 2014 or not tethered to the Flow of Funds.

The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order. Further, subparts (a), (d), (e), (f), and (h) are improper on the ground that they seek discovery that was not authorized under the PRIFA 56(d) Order, and subpart (g) is overbroad,

25

unduly burdensome, and beyond the scope of discovery allowed in the PRIFA 56(d) Order to the extent it seeks "copies of all journal entries associated with such payments." The Government Entities further object to the term "designated" in subpart (b) as vague and ambiguous, and in responding to this Request, construes the term to refer to the "the accounting treatment of Rum Tax Remittances." The Government Entities further object to the term "associated with any transactions of Rum Tax Remittances" in subpart (c) as overbroad, vague and ambiguous, and in responding to this Request, construes the term to refer to the "the accounting treatment of Rum Tax Remittances."

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the vouchers, transfer orders, summary revenue reporting, and accounting-related materials it produced in connection with the PRIFA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce transfer orders or similar documents from January 1, 2014 onward directing the transfer of the First Proceeds into or out of bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary, to the extent those materials were not already provided in connection with the PRIFA Lift Stay Motion and may be located in GDB's archived file of PRIFA-related materials. Any other responsive documents AAFAF, in its capacity as successor to GDB as fiscal agent, may have would be cumulative of documents in the possession, custody, or control of Treasury. Accordingly, AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the response of Treasury.

26

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury directs Defendants to materials produced in connection with the PRIFA Lift Stay Motion.  Treasury will also make reasonable efforts to export data available in PRIFAS pertaining to the receipt and transfer of Rum Tax Remittances from January 1, 2014 onward.

Subject to and without waiving the foregoing general and specific objections, PRIFA responds as follows: any responsive documents PRIFA may have would be cumulative of documents in the possession, custody, or control of Treasury and AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, PRIFA directs Defendants to those entities.

**REQUEST FOR PRODUCTION NO. 6:**

A comprehensive set of transmittal information for the exemplars of transfers and/or deposits of Rum Tax Remittances between the various bank accounts through which Rum Tax Remittances have historically flowed, as authorized by the March Orders, including:

a)   Documents sufficient to show each transfer or deposit of the Rum Tax Remittances between and among the U.S. Treasury to the Commonwealth, the Infrastructure Fund, PRIFA, the Lockbox Agreement, the Sinking Fund, or any other account or fund, and each subsequent transfer thereof, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information;

b)   Documents recording any transfer of Rum Tax Remittances from PRIFA to the Commonwealth;

c)   Documents (including direction letters) sufficient to show the total amount of Rum Tax Remittances presently held by PRIFA, or the Commonwealth or its instrumentalities, including information sufficient to identify the particular accounts where such funds are retained; and the cash flow balance of the accounts;

d)   Documents showing account statements for the Citibank account that was used to transfer Rum Tax Remittances to the Sinking Fund.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

In addition to their General Objections, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome.  The Government Entities further object to this Request on the grounds its subparts seek information beyond the scope of discovery allowed in the PRIFA 56(d) Order.  The Government Entities also object to this Request to the extent it seeks information dated prior to January 1, 2014 or information regarding transfers outside the Flow of Funds.

The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order.  Further, subparts (c) and (d) are improper on the ground that they seek discovery that was not authorized under the PRIFA 56(d) Order, and subparts (a) and (b) are overbroad, unduly burdensome, and beyond the scope of discovery allowed in the PRIFA 56(d) Order to the extent they seek transmittal information for "each" and "any" transfer of Rum Tax Remittances and demand specific transmittal details not located in the documents in centralized files.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the vouchers and transfer orders that it produced in connection with the PRIFA Lift Stay Motion, which consist of all the vouchers and transfer orders that were located after a reasonably diligent search in centralized files.  Any other responsive documents AAFAF, in its own capacity, may have would be

cumulative of documents in the possession, custody, or control of Treasury. Accordingly, AAFAF, in its own capacity, directs Defendants to the response of Treasury.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce transfer orders or similar documents from January 1, 2014 onward directing the transfer of the First Proceeds into or out of bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary, to the extent those materials were not already provided in connection with the PRIFA Lift Stay Motion and may be located in GDB's archived file of PRIFA-related materials. Any other responsive documents AAFAF, in its capacity as successor to GDB as fiscal agent, may have would be cumulative of documents in the possession, custody, or control of Treasury. Accordingly, AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the response of Treasury.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury directs Defendants to materials produced in connection with the PRIFA Lift Stay Motion. Treasury will also make reasonable efforts to export data available in PRIFAS pertaining to the receipt and transfer of Rum Tax Remittances from January 1, 2014 onward.

Subject to and without waiving the foregoing general and specific objections, PRIFA responds as follows: any responsive documents PRIFA may have would be cumulative of documents in the possession, custody, or control of Treasury and AAFAF, in its capacity as successor to GDB as fiscal agent. Accordingly, PRIFA directs Defendants to those entities.

29

**REQUEST FOR PRODUCTION NO. 7:**

Policies and procedures related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act, including:

a)     Policies and procedures Concerning the Flow of Funds pursuant to the Bond Documents, Lockbox Agreement, and Enabling Act, including Documents concerning PRIFA's access to the Treasury Single Account, the management or operation of the Infrastructure Fund, and the individuals responsible for overseeing or approving transactions into and out of the Infrastructure Fund.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to their General Objections, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request on the ground that its subpart is overbroad and unduly burdensome. The Government Entities further object to this Request on the grounds that its subpart seeks information beyond the scope of discovery allowed in the PRIFA 56(d) Order, particularly insofar as it seeks documents and communications "concerning" the additional topics set forth in the subpart.   The Government Entities also object to this Request to the extent it seeks information dated prior to January 1, 2014 or information regarding transfers not in the Flow of Funds.

The Government Entities further object to this Request on the ground that its subpart is overbroad and unduly burdensome and beyond the scope of discovery allowed in the PRIFA 56(d) Order.  Further, subpart (a) is overbroad, unduly burdensome, and beyond the scope of discovery allowed in the PRIFA 56(d) Order to the extent it seeks information concerning "the individuals responsible for overseeing or approving transactions into and out of the Infrastructure Fund," to the extent it seeks information concerning "PRIFA's access to the Treasury Single Account" not

30

tethered to the First Proceeds, and information concerning "the management or operation of the Infrastructure Fund."

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: any responsive documents AAFAF, in its own capacity, may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, Treasury, and PRIFA. Accordingly, AAFAF, in its own capacity, directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce policies and procedures, from January 1, 2014 onward, related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act through the bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary, to the extent such documents were not already provided in connection with the PRIFA Lift Stay Motion and may be located in GDB's archived file of PRIFA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: Treasury will produce policies and procedures, from January 1, 2014 onward, related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act through the bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary, to the extent such documents were not

already provided in connection with the PRIFA Lift Stay Motion and may be located in its possession, custody, or control after a reasonably diligent search of centralized files.

Subject to and without waiving the foregoing general and specific objections, PRIFA responds as follows: PRIFA will produce policies and procedures, from January 1, 2014 onward, related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act through the bank accounts that receive the First Proceeds from 2014 to the present, which bank accounts were previously identified by bank account number in the PRIFA Flow of Funds Summary, to the extent such documents were not already provided in connection with the PRIFA Lift Stay Motion and may be located in its possession, custody, or control after a reasonably diligent search of centralized files.

Dated: February 22, 2021
      San Juan, Puerto Rico

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
(Admitted *Pro Hac Vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: jrapisardi@omm.com

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
Email: pfriedman@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1-949-823-6900
Fax: +1-949-823-6994
Email: emckeen@omm.com
        apavel@omm.com

*Attorneys for the Government Entities*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on February 22, 2021, I caused service on the person(s) listed below by

electronic transmission of the document titled:

**RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND AS SUCCESSOR TO GDB AS FISCAL AGENT ), PRIFA, AND TREASURY TO THE SUBPOENAS OF AMBAC ASSURANCE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., AND U.S. BANK TRUST NATIONAL ASSOCIATION FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE PRIFA REVENUE BOND ADVERSARY PROCEEDING**

WEIL, GOTSHAL & MANGES LLP

Robert Berezin, Esq.
Gregory Silbert, Esq.
767 Fifth Avenue
New York, NY 10153
robert.berezin@weil.com
gregory.silbert@weil.com

*Counsel for National Public Finance Guarantee Corporation*

PROSKAUER ROSE, LLP

Ehud Barak, Esq.
Margaret A. Dale, Esq.
Michael T. Mervis, Esq.
Jennifer L. Jones, Esq.
Laura Stafford, Esq.
Eleven Times Square
New York, NY 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900
ebarak@proskauer.com
mdale@proskauer.com
mmervis@proskauer.com
jljones@proskauer.com
lstafford@proskauer.com

*Counsel for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico*

34

PAUL HASTINGS LLP

Luc A. Despins, Esq.
G. Alexander Bongartz, Esq.
Nicholas Bassett, Esq.
875 15th Street  NW
Washington, DC 20005
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel for the Official Committee of Unsecured
Creditors*

CADWALADER, WICKERSHAM & TAFT LLP

William J. Natbony
Thomas J. Curtin
Casey J. Servais
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: bill.natbony@cwt.com
thomas.curtin@cwt.com
casey.servais@cwt.com

*Counsel for Assured Guaranty Corp., and
Assured Guaranty Municipal Corp.*

MILBANK LLP

Atara Miller
Grant R. Mainland
John J. Hughes, III
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com

*Counsel for Ambac Assurance Corporation*

REED SMITH LLP

Jared S. Roach
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: jroach@reedsmith.com

*Counsel for The Bank of New York Mellon*

BUTLER SNOW LLP

Martin A. Sosland
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III
Adam M. Langley
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

*Counsel for Financial Guaranty Insurance
Company*

     Dated this 22nd day of February, 2021.

HOGAN LOVELLS US LLP

Ronald J. Silverman
Michael C. Hefter
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
ronald.silverman@hoganlovells.com
michael.hefter@hoganlovells.com

*Counsel for U.S. Bank Trust National
Association, in its Capacity as Trustee to
PRIFA Bondholders*

*/s/ Ashley M. Pavel*
Ashley M. Pavel

# **<u>EXHIBIT 10</u>**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY and THE BANK OF NEW YORK MELLON, as Fiscal Agent<br><br>Defendants. | PROMESA<br>Title III<br><br>Adv. Proc. 20-00004-LTS |

## RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND AS SUCCESSOR TO GDB AS FISCAL AGENT), CCDA, TOURISM, AND TREASURY TO THE AMENDED SUBPOENAS OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND THE

---

[1]      The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**BANK OF NEW YORK MELLON FOR THE PRODUCTION OF DOCUMENTS IN
<u>CONNECTION WITH THE CCDA REVENUE BOND ADVERSARY PROCEEDING</u>**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rule 9016 of the Federal Rules of Bankruptcy Procedure pursuant to Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), in its own capacity, and as successor to the Government Development Bank for Puerto Rico ("GDB") as fiscal agent, the Puerto Rico Convention Center District Authority ("CCDA"), the Puerto Rico Tourism Company ("Tourism Company"), and the Puerto Rico Department of Treasury ("Treasury") (together, the "Government Entities") hereby respond and object (the "Responses and Objections") to the amended subpoenas of Ambac Assurance Corporation, Assured Guaranty Corp., Financial Guaranty Insurance Company, and the Bank of New York Mellon (together, the "Defendants") for the Production of Documents in Connection with the CCDA Revenue Bond Adversary Proceeding (Adv. Proc. No. 20-00004) (the "Subpoenas"), which were served upon the Government Entities, respectively, on February 17, 2021, and which include document requests (collectively, the "Requests," and each a "Request") attached as an exhibit thereto.

## PRELIMINARY STATEMENT

The Government Entities have not yet completed their investigation and review of documents.  These Responses and Objections, and any subsequent document productions, are based and will be based only upon the information that is currently available to and specifically known to the Government Entities as of the date hereof.  The Government Entities reserve the right to amend or supplement these Responses and Objections at any time in light of future investigation, research, or analysis, and also expressly reserve the right to rely on, at any time, including in any other proceeding, subsequently discovered information, or information omitted from these Responses and Objections as a result of mistake, error, or inadvertence.  The Government Entities have made reasonable efforts to respond to the Subpoenas, to the extent they have not been

3

objected to, as the Government Entities understand and interpret the Subpoenas.  If the Defendants subsequently assert a meritorious interpretation of the Subpoenas that differs from the Government Entities' interpretation, the Government Entities reserve the right to supplement these Reponses and Objections.

## **GENERAL OBJECTIONS**

1.     The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information beyond the information the Court authorized Defendants to seek in the *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, dated January 20, 2021 [Case No. 20-00004, ECF No. 108] ("CCDA 56(d) Order").   The Government Entities further object to the Subpoenas, and to each and every Request, to the extent that they purport to impose burdens on the Government Entities that are inconsistent with, not otherwise authorized by, or exceed those required by the Federal Rules of Civil Procedure as incorporated into the Federal Rules of Bankruptcy Procedure, the local rules for the United States Bankruptcy Court for the District of Puerto Rico, or this Court's chambers practices and case management orders (collectively, together with the CCDA 56(d) Order, the "Governing Rules"). The Government Entities will construe and respond to the Subpoenas and Requests in a manner consistent with its obligations under the Governing Rules, and not otherwise.

2.     The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent they seek information that is not relevant to the parties' claims or defenses applicable to the *Notice of Motion and Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule*

4

*7056 for Partial Summary Judgment Disallowing Claims*, dated April 28, 2020 [Case No. 20-00004, ECF No. 40], or proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

3.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek documents or information that are not in the Government Entities' possession, custody, or control.  Subject to the other general and specific objections set forth herein, the Government Entities will use reasonable diligence to obtain responsive documents in their possession, custody, or control based on an examination of those files reasonably expected to yield responsive documents.  Documents produced by the Government Entities in response to specific Requests should not be construed as a representation that every document in their possession, custody, or control has been examined.

4.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they seek materials that have already been provided to Defendants in connection with *Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the Bank of New York Mellon's Motion Concerning Application of the Automatic Stay to the Revenues Securing the CCDA Bonds*, dated January 16, 2020 [Case No. 17-03283, ECF No. 10104] (the "CCDA Lift Stay Motion").  Pursuant to the 56(d) Order, those documents will not be produced again in this proceeding.

5.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they place an unreasonable burden on the Government Entities, including without limitation by seeking documents and information that are equally or more readily available from public sources or that are otherwise already available to Defendants.

6.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they require the search of archives, backup files, or any information that is not readily

accessible, including but not limited to any audio, video, electronic recordings, telephone records, calendar entries, text messages or similar forms of electronic messaging, which would be unduly burdensome and not proportional to the needs of the case.

7.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent they expressly or impliedly seek documents or information protected from disclosure by the Attorney-Client Privilege, the Attorney Work-Product Doctrine, the Executive Privilege, the Deliberative Process Privilege, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  Nothing in these Responses and Objections is intended as, nor shall in any way be deemed, a waiver of any of these privileges, doctrines, or immunities.  Documents and information protected by these privileges, doctrines, or immunities are not subject to disclosure, and the Government Entities will not provide them.  The Government Entities intend to and do assert any and all such privileges with respect to all such documents and information.  The inadvertent production of any such protected document or other item shall not constitute a waiver of any privilege or protection or any other ground for objection to discovery with respect to the information contained therein, nor shall such inadvertent production waive the Government Entities' right to object to the use of any such document or the information contained therein in connection with this proceeding or any subsequent proceeding. Upon notification that such disclosure was inadvertent, the document(s)/item(s) and any copies thereof shall be returned or destroyed immediately.

8.      The Government Entities object to the Subpoenas, and to each and every Request, to the extent that they (i) imply the existence of facts or circumstances that do not or did not exist, or (ii) state or assume legal or factual conclusions.  By providing these Responses and Objections, the Government Entities do not admit any factual or legal premise in the Subpoenas.

9. To the extent any term defined or used in the Subpoenas and Requests is used in responding to the Subpoenas and Requests, it is not accepted or conceded that any such term or definition is appropriate, descriptive, or accurate.

10. The Government Entities object to the Subpoenas, and to each and every Request, as unduly burdensome to the extent that they are cumulative or duplicative of other discovery requests.

11. The Government Entities object to the definition of the term "AAFAF" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding. In responding to the Requests, the Government Entities will construe "AAFAF" to mean AAFAF and its employees reasonably likely to possess information relevant to this proceeding.

12. The Government Entities object to the definition of the term "Bond Documents" because that definition includes "any related Agreements, Resolutions, or official statements relating to the issuance of CCDA Bonds," which is vague, ambiguous, and overbroad. The Government Entities will construe the term "Bond Documents" to include the Assignment Agreement, Pledge Agreement, Trust Agreement, and Supplemental Trust Agreement.

13. The Government Entities object to the definition of the term "BPPR" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding. In responding to the Requests, the Government Entities will construe "BPPR" to mean Banco Popular de Puerto Rico and its employees reasonably likely to possess information relevant to this proceeding.

14. The Government Entities object to the definition of the term "CCDA" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to

7

this proceeding.  In responding to the Requests, the Government Entities will construe "CCDA" to mean CCDA and its employees reasonably likely to possess information relevant to this proceeding.

15.   The Government Entities object to the definition of the term "Commonwealth" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "Commonwealth" to mean the Commonwealth and its employees reasonably likely to possess information relevant to this proceeding.

16.   The Government Entities object to the definition of the term "Communication" to the extent it means "oral" transmittal of information, including "face-to-face conversations" and "oral . . . exchange between two or more Persons that has been recorded or transcribed in any way including letters, facsimiles, transcriptions, sound recordings, or video recordings," on the grounds that it is vague, overly broad, unduly burdensome, and not proportional to the needs of the case, and seeks to impose requirements or obligations beyond the scope of, or different from, those imposed by the Governing Rules.

17.   The Government Entities object to the definition of the term "FirstBank" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "FirstBank" to mean First Bank de Puerto Rico and its employees reasonably likely to possess information relevant to this proceeding.

18.   The Government Entities object to the definition of "Flow of Funds" to the extent it includes accounts that received only hotel tax proceeds that were not allocated to CCDA Bond Debt service, including, but not limited to accounts collectively referred to as "Non-Debt Service

Outflow" in the flow of funds summary AAFAF provided in connection with the CCDA Lift Stay Motion (Case No. 17-3283, ECF No. 13338-1, at 153-160) ("CCDA Flow of Funds Summary"). The Government Entities will construe "Flow of Funds" to encompass the bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts.

19.    The Government Entities object to the definition of the term "GDB" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  The Government Entities further object to the definition of GDB on the ground that it is defined to include the GDB Debt Recovery Authority and the GDB Public Entity Trust, which are legally separate entities from GDB.  The Government Entities will construe the term "GDB" to include former employees of GDB and employees of AAFAF, as successor to GDB as fiscal agent, who are reasonably likely to possess information relevant to this proceeding.

20.    The Government Entities objection to the definition of the term "Pledge Account" on the ground that the definition is inconsistent with Section 2 of the Pledge Agreement.  The Government Entities will construe the term "Pledge Account" to have the meaning ascribed in Section 2 of the Pledge Agreement.

21.    The Government Entities object to the definition of the term "Resolutions" as overbroad to the extent it includes any Resolutions other than Resolutions related to the Bond Documents.  In responding to the Requests, the Government Entities will construe "Resolutions" to mean Resolutions related to the Bond Documents.

22.    The Government Entities object to the definition of the term "Scotiabank" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe

"Scotiabank" to mean Scotiabank de Puerto Rico and its employees reasonably likely to possess information relevant to this proceeding.

23.     The Government Entities object to the definition of the term "Signatories," on the ground that the phrase "otherwise manifested their consent" is vague and ambiguous.   The Government Entities will construe the term "Signatories" to mean "any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed a Document as a party, or on behalf of a party."

24.     The Government Entities object to the definition of the term "Tourism Company" as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "Tourism Company" to mean the Tourism Company and its employees reasonably likely to possess information relevant to this proceeding.

25.     The Government Entities object to the definition of the terms "You" and "Your" as overbroad because they encompass individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe "You" and "Your" to mean the Government Entities, as applicable, and their employees reasonably likely to possess information relevant to this proceeding.

26.     The Government Entities object to each and every Instruction to the extent that they require procedures that are inconsistent with, not authorized by, or exceed those required by the Governing Rules.

27.     The Government Entities object to Paragraph 37 of the Definitions as overbroad because it encompasses individuals and entities without regard to their connection or relevance to

10

this proceeding.  In responding to the Requests, the Government Entities object will construe each reference to a non-natural Person to mean the identified Person.

28.     The Government Entities object to Paragraph 38 of the Definitions as overbroad because it encompasses individuals and entities without regard to their connection or relevance to this proceeding.  In responding to the Requests, the Government Entities will construe each reference to a natural Person to mean the identified Person.

29.     The Government Entities object to Instruction No. 1 to the extent it calls for the Government Entities to produce documents not within their possession, custody, or control. *Quinones v. U. of Puerto Rico*, 2015 WL 3604152, at *5 n.4 (D.P.R. June 8, 2015) (noting a party's obligation to produce documents in its possession, custody or control).

30.     The Government Entities object to Instruction No. 5, which requires that "Documents responsive to these requests shall be labeled in such a way as to show their source, including, but not limited to, the files and offices where they were maintained."  The Government Entities will produce documents as they are maintained in the ordinary course of business.

31.     The Government Entities object to Instruction Nos. 6, 7, and 8 because they purport to impose burdens on the Government Entities that differ from or exceed those imposed by the Governing Rules.  The Government Entities object to providing a privilege log unless necessary to substantiate a claim of privilege, consistent with the Governing Rules, and expressly reserve the right to provide a categorical privilege log.

32.     The Government Entities object to Instruction No. 11, which provides that "[a]ny ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope," as overbroad and unduly burdensome.  If

a Request is ambiguous, the Government Entities will construe the Request in the manner that is most reasonable given the text of the Request and the context.

33.     Any documents that the Government Entities produce will only be produced subject to the *Stipulation and Amended Protective Order*, dated June 17, 2020 [Case No. 20-00004, ECF No. 63] (the "Protective Order") and with the same production specifications that were used for the productions made in connection with the CCDA Lift Stay Motion.

34.     The above General Objections are incorporated into each of the following specific Objections and Responses.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR PRODUCTION NO. 1:

All Documents governing the CCDA bonds, including all versions of the Bond Documents, and Documents identifying the signatories to and/or those bound by the Bond Documents.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

In addition to their General Objections, which are incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.   The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the Government Entities to draw legal conclusions or make legal determinations to ascertain which documents are sought.   In responding to this Request, the Government Entities will construe the phrase "governing the CCDA bonds" to refer to the Assignment Agreement, Pledge Agreement, Trust Agreement, and Supplemental Trust Agreement.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the bound volume it produced in connection with the CCDA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to the materials produced in connection with the CCDA Lift Stay Motion, and will produce Bond Documents and non-privileged documents identifying signatories to and/or those bound by the Bond Documents to the extent these materials were not already provided in connection with the CCDA Lift Stay Motion and may be located in GDB's archived file of CCDA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, Treasury directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, CCDA responds as follows: any responsive documents CCDA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, CCDA directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, the Tourism Company responds as follows: any responsive documents the Tourism Company may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as

successor to GDB as fiscal agent. Accordingly, the Tourism Company directs Defendants to the

response of AAFAF, in its capacity as successor to GDB as fiscal agent.

## REQUEST FOR PRODUCTION NO. 2:

All documents governing the flow of the Hotel Taxes from 2006 to the present, including all versions of documents governing the Transfer Account, Surplus Account and any other accounts into or through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements, including

a) All Documents and Communications governing the flow of the Hotel Taxes from 2006 to the present.

b) All Documents (including, without limitation, drafts) governing the Holding Fund, Transfer Account, Surplus Account, Pledge Account, and any other accounts into or through which such funds are or have been transferred, including, without limitation, Bond Documents and Agreements.

c) Statements for any accounts into or from which Hotel Taxes were deposited, withdrawn, transferred, or otherwise credited or debited, from January 1, 2006 to the present, including but not limited to GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -9458, FirstBank -2984, and FirstBank -3961.

d) Communications relating to the flow of Hotel Taxes, including but not limited to Communications regarding deposits of Hotel Taxes and the accounts in which such funds were deposited, transfers of Hotel Taxes and the accounts to which such funds were transferred, the retention of Hotel Taxes by the Commonwealth, Tourism Company, CCDA, or GDB and the reason for such retention.

e) Documents or Communications by, between, or among the Commonwealth, Tourism Company, CCDA, or GDB regarding the Hotel Occupancy Tax Act, the Bond Documents, or any Resolutions relating to the Bond Documents, including, without limitation, implementation or interpretation of any of the foregoing.

f) Documents or Communications regarding the nature, location, and meaning of funds or accounts referred to in the Bond Documents, including, without limitation, the Transfer Account, Surplus Account, Pledge Account, and/or Holding Fund.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

In addition to their General Objections, which are incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the

Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request on the ground that the word "governing" is undefined and requires the Government Entities to draw legal conclusions or make legal determinations to ascertain which documents are sought.  In responding to this Request, the Government Entities will construe the phrases "all documents governing the flow of the Hotel Taxes," "all Documents and Communications governing the flow of Hotel Taxes," and "all Documents . . . governing the Holding Fund, Transfer Account, Surplus Account, Pledge Account and any other accounts" to refer to the Assignment Agreement, Pledge Agreement, Trust Agreement, and Supplemental Trust Agreement, and regulations, circular letters, policies, procedures, or other official documents directing the transfer of the Hotel Taxes.

The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the CCDA 56(d) Order.  Further, the subparts (d), (e), and (f) are improper on the ground that they seek discovery that was not authorized under the CCDA 56(d) Order, and subparts (b) and (c) are overbroad, unduly burdensome, and beyond the scope of discovery allowed in the CCDA 56(d) Order to the extent they seek documents about "any other accounts into or through which such funds are or have been transferred" and "any accounts into or from which Hotel Taxes were deposited," rather than documents about accounts that are in the Flow of Funds.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the CCDA Flow of Funds

15

Summary, as well as the bank account statements, opening materials, transfer orders, and bound volume it produced in connection with the CCDA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, directs Defendants to its response to Request No 1.

In addition, AAFAF, in its capacity as successor to GDB as fiscal agent, will produce the following materials to the extent those materials were not already provided in connection with the CCDA Lift Stay Motion and may be located in GDB's account-records archive or GDB's archived file of CCDA-related materials:

- bank account statements from January 1, 2006 onward for bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts;

- bank account opening materials for bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts.

- transfer orders or similar documents from January 1, 2006 onward directing the transfer of Hotel Taxes into or out of bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts;

- documents identifying the bank account numbers corresponding to the Transfer Account, Surplus Account, Pledge Account, and/or Holding Fund; and

- documents providing instructions for the implementation of the Bond Documents from January 1, 2006 onward.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, Treasury directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, CCDA responds as follows: any responsive documents CCDA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, CCDA directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, the Tourism Company responds as follows: the Tourism Company will produce the following materials to the extent these materials were not already provided in connection with the CCDA Lift Stay Motion and may be located in the Tourism Company's possession, custody, or control pursuant to a reasonably diligent search of centralized files:

- bank account statements from January 1, 2006 onward for bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts;

17

- bank account opening materials for bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts;

- transfer orders or similar documents from January 1, 2006 onward directing the transfer of Hotel Taxes into or out of bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts;

- documents sufficient to identify the bank account numbers corresponding to the Transfer Account, Surplus Account, Pledge Account, and/or Holding Fund; and

- documents providing instructions for the implementation of the Bond Documents from January 1, 2006 onward.

## REQUEST FOR PRODUCTION NO. 3:

Resolutions of Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents, including:

a) All versions (including, without limitation, drafts) of any Resolutions of the Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

In addition to their General Objections, which are incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure. The Government Entities further object to this Request on the ground that its subpart is overbroad and unduly burdensome and beyond the scope of discovery allowed in the CCDA 56(d) Order.  Further, the subpart is improper on the

18

ground that it seeks "drafts" of Resolutions, which have no force.  The Government Entities further objects to this Request on the ground that it requests "All versions," because such a request (i) exceeds the scope of the CCDA 56(d) Order and (ii) is otherwise overbroad and unduly burdensome because it is not limited to seeking documents sufficient to show the requested information.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the Resolutions it produced in connection with the CCDA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce any Resolutions of the Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents to the extent these materials were not already provided in connection with the CCDA Lift Stay Motion and may be located in GDB's archived file of CCDA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, Treasury directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, CCDA responds as follows: any responsive documents CCDA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB

as fiscal agent.  Accordingly, CCDA directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

Subject to and without waiving the foregoing general and specific objections, the Tourism Company responds as follows: any responsive documents the Tourism Company may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent.  Accordingly, the Tourism Company directs Defendants to the response of AAFAF, in its capacity as successor to GDB as fiscal agent.

**REQUEST FOR PRODUCTION NO. 4:**

Account opening documents for GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -9458, FirstBank -2984, and FirstBank -3961, including:

> a) Documents and Communications concerning any account into or from which Hotel Taxes were deposited, withdrawn, transferred, or otherwise credited or debited, including, without limitation, GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -9458, FirstBank -2984, and FirstBank -3961, and including, without limitation, (i) signature cards for each such Account, (ii) the name, legal title, and registration of each such Account, (iii) the signatories of each such Account, (iv) any changes or updates to any of the foregoing over time, and (v) any other account-related Documents or Communications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

In addition to their General Objections, which are incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

The Government Entities further object to this Request on the ground that its subpart is overbroad and unduly burdensome and beyond the scope of discovery allowed in the CCDA 56(d) Order.  Further, the subpart is improper on the ground that it seeks documents and communications

"concerning any account into or from which Hotel Taxes were deposited," rather than the account opening documents for the enumerated accounts listed in Category No. 4 of the CCDA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the bank account opening documents for Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -9458, FirstBank -2984, and FirstBank -3961 produced in connection with the CCDA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, states that with respect to the GDB -9758 bank account, it conducted a reasonably diligent search of centralized files for bank account opening documents for GDB -9758 in connection with the CCDA Lift Stay Motion and did not locate any responsive documents. AAFAF, as successor to GDB as fiscal agent, agrees to conduct an additional reasonably diligent search of GDB's account-records archive and GDB's archived file of CCDA-related materials, and to the extent bank account opening materials to the GDB -9758 bank account are located, it will produce them.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company. Accordingly, Treasury directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, CCDA responds as follows: any responsive documents CCDA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, CCDA directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, the Tourism Company responds as follows: in addition to the bank account opening documents produced in connection with the CCDA Lift Stay Motion, the Tourism Company conducted a reasonably diligent search of centralized files for bank account opening documents for GDB -9758 in connection with the CCDA Lift Stay Motion and did not locate any responsive documents. Tourism agrees to conduct an additional reasonably diligent search of centralized files and to the extent bank account opening materials to the GDB -9758 bank account are located, the Tourism Company will produce them.

**REQUEST FOR PRODUCTION NO. 5:**

Policies and procedures related to the flow of Hotel Taxes pursuant to the Bond Documents and Hotel Occupancy Tax Act, including:

    a) Any internal instructions, guidance, memoranda, or other Documents concerning any policies and procedures.

    b) Documents and Communications concerning any understanding or interpretation of policies and procedures, how hotels make payments, any arrangements concerning Scotiabank -5142, and any guidance provided by the Tourism Company to hotels related to their deposits of Hotel Taxes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

In addition to their General Objections, which are incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative

Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request on the ground that its subparts seeking various categories of Documents and Communications "concerning" any policies and procedures or the "understanding or interpretation" of policies and procedures are overbroad and unduly burdensome and beyond the scope of discovery allowed in the CCDA 56(d) Order, which permitted discovery only of policies and procedures.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: any responsive documents AAFAF, in its own capacity, may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, AAFAF, in its own capacity, directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce policies and procedures, from January 1, 2006 onward, related to the flow of Hotel Taxes pursuant to the Bond Documents and the Hotel Occupancy Tax Act through the bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts, to the extent such documents were not already provided in connection with the CCDA Lift Stay Motion and may be located in GDB's archived file of CCDA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of

documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company. Accordingly, Treasury directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, CCDA responds as follows: any responsive documents CCDA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company. Accordingly, CCDA directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, the Tourism Company responds as follows: the Tourism Company will produce policies and procedures, from January 1, 2006 onward, related to the flow of Hotel Taxes pursuant to the Bond Documents and the Hotel Occupancy Tax Act through the bank accounts previously identified by bank account number in the CCDA Flow of Funds Summary, and, for the time periods from 2006-2015 and February 2020 to present, any equivalent bank accounts, to the extent such documents were not already provided in connection with the CCDA Lift Stay Motion and may be located in the Tourism Company's possession, custody, or control pursuant to a reasonably diligent search of centralized files.

**REQUEST FOR PRODUCTION NO. 6:**

Discovery identifying and explaining the purpose of transfers of Hotel Taxes from accounts identified in Request No. 4 to the Commonwealth, including:

a) Documents identifying and explaining the purpose of transfers of Hotel Taxes from the accounts identified in Requests No. 4 above, including, without limitation, documents regarding whether the Commonwealth has used any Pledged Hotel Taxes constituting bondholder collateral to pay its own expenses or debts.

b) Documents concerning any general ledger or internal accounting records of the Hotel Taxes.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

In addition to their General Objections, which are incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.  The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the CCDA 56(d) Order.  Further, subpart (b) is improper on the ground that it seeks discovery that was not authorized under the CCDA 56(d) Order, and subpart (a) is overbroad, unduly burdensome, and beyond the scope of discovery allowed in the CCDA 56(d) Order to the extent it seeks "Documents identifying and explaining the purpose of transfers of Hotel Taxes from the accounts identified in Requests No. 4 above," whereas the CCDA 56(d) Order limited the scope of the category to transfers from those accounts made "to the Commonwealth."  The Government Entities further object to this Request to the extent that the reference to "accounts identified in Request No. 4" refers to "any account into or from which Hotel Taxes were deposited," rather than to the enumerated accounts listed in Category No. 4 of the CCDA 56(d) Order.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: any responsive documents AAFAF, in its own capacity, may have that have not already been produced would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, AAFAF, in its own capacity, directs Defendants to the

responses of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  AAFAF, in its own capacity, further directs Defendants to Resolution 2018-01.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce documents or information, since January 1, 2006, identifying and explaining the purpose of transfers of hotel taxes to the Commonwealth from bank accounts identified in Request No. 4 that transfer into or from GDB accounts, to the extent those materials were not already provided in connection with the CCDA Lift Stay Motion and may be located in GDB's account-records archive or in GDB's archived file of CCDA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, Treasury directs Defendants to the responses of AAFAF in its capacity as successor to GDB as fiscal agent, and the Tourism Company.

Subject to and without waiving the foregoing general and specific objections, CCDA responds as follows: any responsive documents CCDA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, CCDA directs Defendants to the responses of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company

Subject to and without waiving the foregoing general and specific objections, the Tourism Company responds as follows: the Tourism Company will produce documents or information,

since January 1, 2006, identifying and explaining the purpose of transfers of hotel taxes to the Commonwealth from GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -9458, FirstBank -2984, and FirstBank -3961 to the extent such documents or information were not already provided in connection with the CCDA Lift Stay Motion and may be located in the Tourism Company's possession, custody, or control pursuant to a reasonably diligent search of centralized files.

**REQUEST FOR PRODUCTION NO. 7:**

Discovery identifying the recipient of transfers identified in paragraph 40 of the CCDA Declaration and any other transfers for which no recipient has been identified, including:

a) Documents and Communications concerning the following transfers which were listed in paragraph 40 of the CCDA Declaration, including, without limitation, Documents sufficient to identify the recipient of each such transfer and Documents concerning the purpose of the transfers:

- A withdrawal of $3,644,377.57 on July 11, 2016 out of Scotiabank -5142. (CCDA_STAY0000679 – CCDA_STAY0000684.)

- A withdrawal of $375,720.00 on September 9, 2016 out of BPPR - 2306. (CCDA_STAY0000646 – CCDA_STAY0000647.)

- A withdrawal of $50,000.00 on April 13, 2017 out of BPPR -2306. (CCDA_STAY0000675 – CCDA_STAY0000676.)

- A withdrawal of $50,000.00 on January 13, 2020 out of BPPR -2306. (CCDA_STAY0007384 – CCDA_STAY0007387.)

- A withdrawal of $10,607,824.72 on May 10, 2017 out of Scotiabank -5138. (CCDA_STAY0009770 – CCDA_STAY0009786.)

- A withdrawal of $12,342,306.14 on January 10, 2020 out of Scotiabank - 5138. (CCDA_STAY0012669 – CCDA_STAY0012680.)

- A withdrawal of $73,872.55 on April 30, 2019 out of FirstBank -2984. (CCDA_STAY0007470 – CCDA_STAY0007471.)

- A withdrawal of $67,926.94 on February 28, 2020 out of FirstBank -2984. (CCDA_STAY0014185 – CCDA_STAY0014188.)

- A withdrawal of $423,601.81 on December 13, 2019 out of Scotiabank - 5144. (CCDA_STAY0006757 – CCDA_STAY0006763.)

- A withdrawal of $417,620.88 on February 14, 2020 out of Scotiabank - 5144. (CCDA_STAY0006772 – CCDA_STAY0006779.)

b) Documents and Communications concerning the following transfers out of GDB - 9758, including, without limitation, Documents sufficient to identify the recipient of each such transfer and Documents concerning the purpose of the transfers:

- A withdrawal of $3,500,000 on January 15, 2015. (CCDA_STAY0001694 –CCDA_STAY0001695.)

- A withdrawal of $1,500,000 on April 13, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $1,000,000 on April 13, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $5,000,000 on April 15, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $4,000,000 on July 22, 2015. (CCDA_STAY0000004 – CCDA_STAY0000005.)

- A withdrawal of $2,000,000 on August 14, 2015. (CCDA_STAY0000006 –CCDA_STAY0000009.)

- A withdrawal of $3,100,000 on September 22, 2015. (CCDA_STAY0000010–CCDA_STAY0000013.)

- A withdrawal of $7,000,000 on February 22, 2016. (CCDA_STAY0000036 –CCDA_STAY0000041.)

c) Documents and Communications concerning the $15 million one-time transfer from FirstBank -3961 to BPPR -9458, including, without limitation, Documents sufficient to identify the recipient of such transfer and Documents concerning the purpose of the transfer.

d) Documents concerning any transfers of Pledged Hotel Taxes from the Tourism Company to the Commonwealth since April 2016.

e) Documents and Communications concerning the treatment, discussion, or presentation of the Hotel Taxes in Financial Statements, including, without limitation, (i) workpapers, engagement letters, tie outs, support for Financial Statements; (ii) the meaning of the line items for "Transfers" on pages nine and twelve in the Tourism Company's Financial Statements for the Fiscal Year ended June 30, 2016 (including, without limitation, identification of the transfers, whether

any such transfers concerned Hotel Taxes, and the disposition of such transferred funds); and (iii) whether Hotel Taxes were deposited in and/or withdrawn from the General Fund, CILE Puerto Rico 2016 Fund Hotel Development Corporation Fund, Slot Machines Operations Fund, and the Medical Tourism Company Fund listed on pages thirteen through fifteen of the Tourism Company's Financial Statements for the Fiscal Year ended June 30, 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

In addition to their General Objections, which are incorporated herein by this reference, the Government Entities object to this Request to the extent it seeks documents protected by the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure.

The Government Entities further object to this Request on the ground that its subparts are overbroad and unduly burdensome and beyond the scope of discovery allowed in the CCDA 56(d) Order.  Further, subparts (b), (c), (d), and (e) are improper on the ground that they seek discovery that was not authorized under the CCDA 56(d) Order, and subpart (a) is overbroad, unduly burdensome, and beyond the scope of discovery allowed in the CCDA 56(d) Order to the extent it seeks "Documents concerning the purpose of the transfers," rather than limiting the Request to documents identifying "the recipient" of those transfers, as authorized by the CCDA 56(d) Order. The Government Entities also object to the Request on the ground that it seeks information about "any other transfers for which no recipient has been identified," which goes beyond the CCDA 56(d) Order, which stated that "[t]he parties shall meet and confer if CCDA identifies other significant transfers for which no recipient has been identified."

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its own capacity, responds as follows: AAFAF directs Defendants to the information provided in

its March 13, 2020 letter, to the bank account statements, and to the wire transfer histories and transfer orders and resolutions produced in connection with the CCDA Lift Stay Motion.

Subject to and without waiving the foregoing general and specific objections, AAFAF, in its capacity as successor to GDB as fiscal agent, responds as follows: AAFAF, in its capacity as successor to GDB as fiscal agent, will produce documents or information sufficient to evidence the recipient of the transfers identified in paragraph 40 of the CCDA Declaration to the extent such documents were not already provided in connection with the CCDA Lift Stay Motion and may be located in GDB's account-records archive or in GDB's archived file of CCDA-related materials.

Subject to and without waiving the foregoing general and specific objections, Treasury responds as follows: any responsive documents Treasury may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, Treasury directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, CCDA responds as follows: any responsive documents CCDA may have would be cumulative of documents in the possession, custody, or control of AAFAF, in its capacity as successor to GDB as fiscal agent, and the Tourism Company.  Accordingly, CCDA directs Defendants to the responses of those entities.

Subject to and without waiving the foregoing general and specific objections, the Tourism Company responds as follows: the Tourism Company will produce documents or information sufficient to evidence the recipient of the transfers identified in paragraph 40 of the CCDA Declaration to the extent such documents were not already provided in connection with the CCDA

Lift Stay Motion and may be located in the Tourism Company's possession, custody, or control pursuant to a reasonably diligent search of centralized files.

Dated: February 22, 2021
     San Juan, Puerto Rico

Respectfully submitted,

**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
(Admitted *Pro Hac Vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: jrapisardi@omm.com

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
Email: pfriedman@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: +1-949-823-6900
Fax: +1-949-823-6994
Email: emckeen@omm.com
     apavel@omm.com

*Attorneys for the Government Entities*

## CERTIFICATE OF SERVICE

I hereby certify on February 22, 2021, I caused service on the person(s) listed below by

electronic transmission of the document titled:

**RESPONSES AND OBJECTIONS OF AAFAF (IN ITS OWN CAPACITY AND AS SUCCESSOR TO GDB AS FISCAL AGENT), CCDA, TOURISM, AND TREASURY TO THE SUBPOENAS OF AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND THE BANK OF NEW YORK MELLON FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE CCDA REVENUE BOND ADVERSARY PROCEEDING**

| WEIL, GOTSHAL & MANGES LLP | PROSKAUER ROSE, LLP |
|---|---|
| Robert Berezin, Esq.<br>Gregory Silbert, Esq.<br>767 Fifth Avenue<br>New York, NY 10153<br>robert.berezin@weil.com<br>gregory.silbert@weil.com<br><br>*Counsel for National Public Finance Guarantee Corporation* | Ehud Barak, Esq.<br>Margaret A. Dale, Esq.<br>Michael T. Mervis, Esq.<br>Jennifer L. Jones, Esq.<br>Laura Stafford, Esq.<br>Eleven Times Square<br>New York, NY 10036-8299<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>ebarak@proskauer.com<br>mdale@proskauer.com<br>mmervis@proskauer.com<br>jljones@proskauer.com<br>lstafford@proskauer.com<br><br>*Counsel for The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico* |

PAUL HASTINGS LLP

Luc A. Despins, Esq.
G. Alexander Bongartz, Esq.
Nicholas Bassett, Esq.
875 15th Street  NW
Washington, DC 20005
lucdespins@paulhastings.com
alexbongartz@paulhastings.com
nicholasbassett@paulhastings.com

*Counsel for the Official Committee of Unsecured
Creditors*

CADWALADER, WICKERSHAM & TAFT LLP

William J. Natbony
Thomas J. Curtin
Casey J. Servais
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: bill.natbony@cwt.com
thomas.curtin@cwt.com
casey.servais@cwt.com

*Counsel for Assured Guaranty Corp., and
Assured Guaranty Municipal Corp.*

MILBANK LLP

Atara Miller
Grant R. Mainland
John J. Hughes, III
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com

*Counsel for Ambac Assurance Corporation*

REED SMITH LLP

Jared S. Roach
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: jroach@reedsmith.com
*Counsel for The Bank of New York Mellon*

BUTLER SNOW LLP

Martin A. Sosland
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III
Adam M. Langley
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
adam.langley@butlersnow.com

*Counsel for Financial Guaranty Insurance
Company*

HOGAN LOVELLS US LLP

Ronald J. Silverman
Michael C. Hefter
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
ronald.silverman@hoganlovells.com
michael.hefter@hoganlovells.com

*Counsel for U.S. Bank Trust National
Association, in its Capacity as Trustee to
PRIFA Bondholders*

Dated this 22nd day of February, 2021.

*/s/ Ashley M. Pavel*
Ashley M. Pavel

# **EXHIBIT 11**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>    Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>    v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00003-LTS |

**AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND U.S. BANK TRUST NATIONAL ASSOCIATION'S FIRST SET OF REQUESTS FOR ADMISSION TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO IN CONNECTION WITH THE PRIFA <u>REVENUE BOND ADVERSARY PROCEEDING</u>**

PLEASE TAKE NOTICE THAT, pursuant to the Court's *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Adv. Proc. No. 20-00003, ECF No. 115, and the Court's *Order Setting Discovery Schedule*, Adv. Pro. No. 20-00003, ECF No. 119, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and U.S. Bank Trust National Association (collectively, the "Defendants"), hereby serve the following requests for admission (the "Requests" and, each individually, a "Request") on the Financial Oversight and Management Board for Puerto Rico (the "Board"),  as representative of the Commonwealth of Puerto Rico, and requests that the Board answer the Requests fully in writing under oath, in accordance with the Federal Rules of Civil Procedure, and supplement such answers as required by Rule 26(e) of the Federal Rules of Civil Procedure.

## DEFINITIONS

1.      "1988 Trust Agreement" means the Document on pages 69 through 150 of Exhibit 1 to the *Declaration of Lary Alan Rappaport in Respect of Commonwealth Motion for Partial Summary Judgment*, Adv. Proc. No. 20-00003-LTS, ECF No. 47-1.

2.      "1997 Amended Trust Agreement" means the Document on pages 1 through 69 of Exhibit 1 to the *Declaration of Lary Alan Rappaport in Respect of Commonwealth Motion for Partial Summary Judgment*, Adv. Proc. No. 20-00003-LTS, ECF No. 47-1.

3.      "Accounts," or each individually, an "Account," means the accounts held by or on behalf of the Commonwealth or any of its instrumentalities, including, without limitation, any related Accounts.

4.     "Account Value" refers to the field in the Express Voucher System used to classify the nature of a transaction, as described on page four of the letter dated March 13, 2020 from Elizabeth McKeen, Esq. to Defendants' counsel.

5.     "Citibank" or "Lockbox Bank" means Citibank, N.A., its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

6.     "Commonwealth" means the Commonwealth of Puerto Rico and its instrumentalities, its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

7.     "Communication" or "Communications" means any exchange of information by any means, including, but not limited to, correspondence, face-to-face conversations, electronic transmissions, meetings, visits, conferences, internal and external discussions, or any other kind of oral or written exchange between two or more Persons that has been recorded or transcribed in any way including letters, facsimiles, transcriptions, sound recordings, or video recordings.

8.     "Documents" is used in the broadest sense permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules for the United States District Court for the District of Puerto Rico, and includes, without limitation, tangible things, correspondence, communications, internal or external memoranda, letters, drafts, nonidentical copies, notes including handwritten notes, minutes of meetings, computer records (e.g., email messages), any electronically stored information, recordings (e.g., voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

9.      "<u>Enabling Act</u>" refers to the Puerto Rico Infrastructure Financing Authority Act, 3 L.P.RA. §§ 1901, *et. seq*.

10.      "<u>Express Voucher System</u>" refers to the Commonwealth's internal accounting and financial records system, which is also commonly referred to as "PRIFAS."

11.      "<u>First Proceeds</u>" means the first $117 million of Rum Tax Remittances received by the Commonwealth each fiscal year from the United States Department of Treasury pursuant to 26 U.S.C. § 7652.

12.      "<u>Flow of Funds</u>" refers to the path, including each and every deposit, credit, withdrawal, debit, or transfer, into or out of an account, of the Rum Tax Remittances, from their initial receipt or collection by the Commonwealth, its agents, or its financial institutions (including, without limitation, Citibank and PRIFA) through and including the ultimate disposition, if any, of the funds.  Documents relating to the Flow of Funds include, without limitation, account-opening documents, transmittal information (including payment vouchers and transfer activity reports), and banking Agreements.

13.      "<u>Fund</u>" means an amount of money or other resource set aside for the purpose of carrying out a specific activity or to achieve certain objectives pursuant to the special laws, regulations, Restrictions, or limitations and which constitute an independent fiscal and accounting entity, including accounts created to keep record of the proceeds of the issuance of bonds that may be authorized, or the fiscal and accounting entities referenced on page four of the letter dated March 13, 2020 from Elizabeth L. McKeen, Esq. to Defendants' counsel.  A "Fund" includes a special fund.

14.      "<u>Fund Value</u>" means the numeric identifier associated with Funds in the Express Voucher System.

15.     "GDB" means the Puerto Rico Government Development Bank and its successors, including the GDB Debt Recovery Authority and the GDB Public Entity Trust, and their present and former officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on their behalf.

16.     "Including" or "includes" means "including but not limited to and without limitation," or "includes but is not limited to and without limitation."

17.     "Infrastructure Fund" means the Puerto Rico Infrastructure Fund.   For the avoidance of doubt, this term encompasses both the Puerto Rico Infrastructure Fund referred to in section 1914 of the Enabling Act and the Puerto Rico Infrastructure Fund referred to on pages 2 and 34 of the Trust Agreement.

18.     "Lockbox Agreement" refers to the Agreement dated as of May 5, 2015, between Citibank, N.A., Banco Popular de Puerto Rico, and the Commonwealth.

19.     "Lockbox Disbursement Detail" means the Documents prepared by Citibank pursuant to section 3(d) of the Lockbox Agreement.

20.     "Oversight Board" or "Board" means the Financial Oversight and Management Board for Puerto Rico.

21.     "Person" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

22.     "PRIFA" means the Puerto Rico Infrastructure Financing Authority and each of its present or former board members, agents, representatives, and employees.

23.     "PRIFAS" refers to the Commonwealth's Express Voucher System.

24.     "PRIFA's Payment Default" means January 1, 2016, the first date on which payments due on PRIFA's bonds were not made.

25.     "Restrictions" means any law, contract, Agreement, other Document with the force of law, directive, or policy, practice, or procedure, whether formal or informal, that limits or conditions the use or movement of any Fund, Account, or other moneys.

26.     "Rum Tax Remittances" means the federal excise taxes imposed on rum produced in Puerto Rico and imported into the United States that is subsequently covered over from the United States Treasury to the Commonwealth Treasury pursuant to 26 U.S.C. § 7652.

27.     "Treasury" means the Department of the Treasury of Puerto Rico and each of its present or former board members, agents, representatives, and employees.

28.     "Treasury Single Account" means the Accounts held by the Treasury commonly known as the Treasury Single Account or TSA, including, without limitation: (i) Banco Popular Account Nos. ████9458, ████1012, ████1020, ████2883, ████1216, ████9865; (ii) Banco Santander Account No. ████2463; (iii) Citibank Account No. ████9036; and (iv) GDB Account Nos. ████0006, ████0704, ████1891.

29.     "Trust Agreement" refers collectively to the 1988 Trust Agreement, the 1997 Amended Trust Agreement, and any other related Agreement.

30.     "You" or "Your" means the Oversight Board and any persons or entities acting on its behalf.

## **<u>INSTRUCTIONS</u>**

1.     You are to answer the Requests as completely as possible.

2.     Pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure and paragraph 10 of the *Order Setting Discovery Schedule* [Adv. Pro. No. 20-00003, ECF No. 119], a matter is deemed to be admitted unless, within 14 days after service of the Requests, You serve Ambac with a written answer or objection addressed to the matter.  If an objection is made, the reasons for the objection must be stated.

3.     Your response shall specifically admit, deny, or set forth in detail the reasons why You cannot truthfully admit or deny the matter.  A denial shall fairly meet the substance of the requested admission, and when good faith requires that You qualify an answer or deny only part of the matter on which an admission is requested, You shall specify so much of it as is true and qualify or deny the remainder.  If any information is withheld on the basis of a claim of privilege, set forth in writing all information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure, or such information as otherwise agreed by the parties.

4.     The Requests shall be answered based upon Your entire knowledge from all sources, including all information in the possession of Your attorneys or other Persons working on Your behalf or any of their current or former agents, employees, representatives, or investigators. You may not give lack of information or knowledge as a reason for failure to admit or deny unless You state that You have made reasonable inquiries and that the information known or readily obtainable by You is insufficient to enable You to admit or deny.

5.     If, in responding to the Requests, You encounter any ambiguities when construing a Request or definition, Your response shall set forth the matter deemed ambiguous and the construction used in responding.

6.      The obligation to respond to the Requests is continuing in nature, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.  If at any time after responding to the Requests You discover additional information that will make Your response to the Requests more complete or correct, You are required to supplement or correct Your response as soon as reasonably possible.

7.      The Requests shall not be construed as a waiver or abridgment of, and are not intended to waive, any argument or defense, nor shall they be construed as any admission of fact.

8.      Unless otherwise indicated, the time period applicable to the Requests is January 1, 2006, to present (the "Relevant Period").

## REQUESTS FOR ADMISSION

1.      Admit that no bank account has ever been titled or designated as the Infrastructure Fund.

2.      Admit that, from May 5, 2015 through the present, transfers of the First Proceeds from the Lockbox Bank to the Treasury Single Account have at all times been accompanied by a Lockbox Disbursement Detail identifying the recipient of the transfers as the "Secretary of Treasury for deposit to the credit of PRIFA."

3.      Admit that, from January 1, 2014 until May 5, 2015, the First Proceeds remitted from the United States Department of Treasury were deposited into the Treasury Single Account and assigned Account Value R4220 and Fund Value 111 in PRIFAS.

4.      Admit that, from May 5, 2015 through the present, the First Proceeds were transferred from the Lockbox Bank into the Treasury Single Account and assigned Account Value R4220 and Fund Value 111 in PRIFAS.

Dated: February 18, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
 Roberto Cámara-Fuertes (USDC-PR No. 219002)
 Sonia Colón (USDC-PR No. 213809)
 221 Ponce de León Avenue, 5th Floor
 San Juan, PR 00917
 Telephone: (787) 766-7000
 Facsimile: (787) 766-7001
 Email:  rcamara@ferraiuoli.com
   scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
 Dennis F. Dunne (admitted *pro hac vice*)
 Atara Miller (admitted *pro hac vice*)
 Grant R. Mainland (admitted *pro hac vice*)
 John J. Hughes, III (admitted *pro hac vice*)
 Jonathan Ohring (admitted *pro hac vice*)
 55 Hudson Yards
 New York, NY 10001
 Telephone: (212) 530-5000
 Facsimile: (212) 530-5219
 Email: ddunne@milbank.com
   amiller@milbank.com
   gmainland@milbank.com
   jhughes2@milbank.com
   johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
Heriberto Burgos Pérez
(USDC-PR No. 204809)
Ricardo F. Casellas-Sánchez
(USDC-PR No. 203114)
Diana Pérez-Seda
(USDC-PR No. 232014)
P.O. Box 364924
San Juan, PR 00936-4924
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III (admitted *pro hac vice*)
Adam M. Langley (admitted *pro hac vice*)
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
        adam.langley@butlersnow.com

***Attorneys for Financial Guaranty Insurance Company***

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr. (admitted *pro hac vice*)
Mark C. Ellenberg (admitted *pro hac vice*)
William J. Natbony (admitted *pro hac vice*)
Thomas J. Curtin (admitted *pro hac vice*)
Casey J. Servais (admitted *pro hac vice*)
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.***

**RIVERA, TULLA AND FERRER, LLC**

By:   */s/ Eric A. Tulla*
    Eric A. Tulla
    (USDC-DPR No. 118313)
    Email: etulla@
    riveratulla.com Iris J.
    Cabrera-Gómez
    (USDC-DPR No. 221101)
    Email: icabrera@
    riveratulla.com Rivera
    Tulla & Ferrer Building 50
    Quisqueya Street
    San Juan, PR 00917-1212
    Telephone: (787) 753-0438
    Facsimile: (787) 767-5784

**HOGAN LOVELLS US LLP**

By: */s/ Ronald J.Silverman*
    Ronald J. Silverman
    Michael C. Hefter
    390 Madison
    Avenue New
    York, NY
    10017
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    ronald.silverman@hoganlovells.com
    michael.hefter@hoganlovells.com

***Attorneys for U.S. Bank Trust***
***National Association, in its***
***Capacity as Trustee to PRIFA***
***Bondholders***