**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br><br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>    Debtor. | PROMESA<br>Title III<br><br>Re: ECF Nos. 12918, 15833 |

**REPLY OF ATLANTIC MEDICAL CENTER, INC., CAMUY HEALTH SERVICES, INC., CENTRO DE SALUD FAMILIAR DR. JULIO PALMIERI FERRI, INC., CIALES PRIMARY HEALTH CARE SERVICES, INC., CORP. DE SERV. MÉDICOS PRIMARIOS Y PREVENCIÓN DE HATILLO, INC., COSTA SALUD, INC., CENTRO DE SALUD DE LARES, INC., CENTRO DE SERVICIOS PRIMARIOS DE SALUD DE PATILLAS, INC., AND HOSPITAL GENERAL CASTAÑER, INC. IN FURTHER SUPPORT OF MOTION TO (I) ENFORCE THE COURT'S <u>PRIOR ORDER AND (II) OBTAIN RELIEF FROM THE AUTOMATIC STAY</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................................... 1

Reply .............................................................................................................................................. 3

A. The Stay Should be Lifted to Allow the Prepetition Litigation to Continue ............................ 3

B. Compliance with the Stipulation and Underlying Federal Law is Mandatory and
Necessary for a Plan to be Confirmed ...................................................................................... 8

CONCLUSION ............................................................................................................................ 10

The Movants, by and through their undersigned counsel, file this reply (the "Reply") to the *Opposition of the Financial Oversight and Management Board of Puerto Rico to Motion of Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc. Seeking (I) Enforcement of the Court's Prior Order and (II) Relief from the Automatic Stay* [Docket No. 15883] (the "Objection"), filed by the Financial Oversight and Management Board (the "FOMB") of the Commonwealth of Puerto Rico (the "Commonwealth") in opposition to the *Motion of Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc. Seeking (I) Enforcement of the Court's Prior Order and (II) Relief from the Automatic Stay* [Docket No. 12918] (the "Motion").[2] In support of this Reply, and in further support of the Motion, the Movants respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Commonwealth has not been in compliance with the federal Medicaid Statute since well before the commencement of the Title III case and throughout the Title III case, and remains in noncompliance due to its failure to make certain payments to the Movants in proper amounts and at times proscribed by law. This failure has harmed the Movants (and the people of the Commonwealth) significantly, resulting in the underfunding of health centers throughout

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Motion.

1

Puerto Rico that serve those in greatest need; and at a time of a public health crisis in which the health centers are relied upon to serve communities that are the hardest to reach. The Stipulation approved by this Court represented a stop-gap measure to ensure *some* payment to the health centers, but the payments mandated by the Stipulation and the District Court orders that formed the foundation for the Stipulation were only estimates agreed by the parties and do not reflect compliance with Medicaid.[3] Every passing day the Commonwealth fails to pay Movants in accordance with the federally mandated formula, it violates the Medicaid Statute and the terms it agreed to as a condition of participating in the Medicaid program. The Commonwealth's previous and continuing non-compliance with federal law makes the Movants differently situated than other creditors, and makes the continuation of the Prepetition Litigation before the District Court appropriate under the *Sonnax* factors.

2. Specifically, because the Movants' claims arise from non-compliance with the Medicaid Statute that continues to this day, the issues to be resolved in the Prepetition Litigation[4] go well beyond garden variety prepetition claims allowance. Permitting the Prepetition Litigation to continue will allow a tribunal (*this* District Court) that has been addressing these matters for 15 years, and has exercised ongoing supervision, to not only liquidate prepetition claims, but to also address postpetition administrative expense claims that have arisen despite current adherence to the Stipulation and to establish parameters for the Commonwealth to come into compliance with

---

[3] The Movants agree with the FOMB that the relief request in the Motion regarding the underpayment of amounts owed for 2019 periods under the Stipulation has been resolved as such amounts were paid following the filing of the Motion. Additionally, the Commonwealth has made payments as required by the Stipulation since that time. Accordingly, the Movants are not seeking any prospective relief regarding compliance with the Stipulation at this time. However, as noted below, the Movants disagree with the FOMB's characterizations of the payments under the Stipulation as voluntary, and reserve all rights with respect to any future amounts that come due under the Stipulation.

[4] To the extent that the Motion was unclear, the Prepetition Litigation at issue is the matter pending before the District Court is *Atlantic Medical Center, Inc.,* et. al. *v. The Commonwealth of Puerto Rico, et. al.*, Case No. 06-1291 (March 20, 2006), which was consolidated with *Rio Grande Community Health Center, Inc.,* et al. *v. Hon. Johnny Rullan, Sec'y of the Dep't of Health for the Commonwealth of Puerto Rico*, Civ. Action No. 03-1640.

2

federal law, which will in any event be required for confirmation of any plan of adjustment. Lifting the stay will not only promote judicial efficiency in this manner, but the balance of the harms clearly weighs in favor of permitting the Prepetition Litigation to proceed to ensure resolution of the disputes between the Commonwealth and the health centers that serve the poorest of its residents.

**REPLY**

**A.  The Stay Should be Lifted to Allow the Prepetition Litigation to Continue**

3.  Recognizing that the Movants' claim for the Shortfall has been resolved, the crux of the Motion still remains – whether the stay should be lifted in order to allow the Prepetition Litigation to continue.[5] Contrary to the views of the FOMB, and as further detailed in the Motion, the *Sonnax* factors support lifting the stay in order to allow the Prepetition Litigation to continue.

4.  The statutory Medicaid payment formula in 42 U.S.C. §1396a(bb)(5) has three elements: (1) a payment rate known as a prospective payment system ("PPS") rate; (2) total billable "visits" of Medicaid enrollees; and (3) total managed care organization ("MCO") payments for Medicaid enrollees. To calculate the amount due, the PPS rate is multiplied by the number of Medicaid visits, minus any MCO payments. The statute also has a timing requirement: that the state pay FQHCs no less frequently than every four months. According to statute, this formula represents a payment for 100 percent of the FQHC's reasonable costs for providing services to Medicaid beneficiaries for that period. In opposing the Motion, FOMB makes no representations that the Commonwealth is currently in compliance with the Medicaid FQHC payment provisions

---

[5] As stated in the Motion, the Movants are willing to participate in mediation regarding their claims and what steps the Commonwealth will take to be able to comply with the Medicaid statute and other federal statutes but only if persons that have decision making authority on behalf of the Commonwealth and Puerto Rico Fiscal Agency and Financial Advisory Authority are required to, and do, participate in such mediation.

at issue in the Prepetition Litigation, nor does it assert any efforts made to bring the Commonwealth into compliance since the Motion was filed.

5. Rather, the FOMB's argument against lifting the stay boils down to the assertion that the Movants are like other general unsecured creditors and their claims should be reconciled exclusively through Title III's "flexible" process. *See* Objection ¶ 27. The FOMB's characterizations are incorrect. The Movants and the circumstances surrounding their claims, including the Commonwealth's non-compliance with federal law, are distinct from other unsecured creditors, and these distinctions warrant permitting the Prepetition Litigation to proceed.

6. First, as detailed in the Motion, the Prepetition Litigation has been pending for 15 years (18 years for related litigation).[6] While the Movants recognize the Court has the ability to adjudicate the Movants' claims, judicial efficiency and economy would be best served if the Prepetition Litigation were permitted to continue in the current forum in front of the judge who has had the benefit of the history and facts of this years' long litigation.

7. Next, despite the FOMB's contentions, the Movants *are not* like all other general unsecured creditors, nor is there a valid concern that granting the Motion would open floodgates for other creditors to seek similar relief. Such an argument ignores the Movants' unique position: Not only do the Movants have significant unresolved prepetition claims, but these issues have continued postpetition and the Movants, *daily*, continue to accrue additional administrative claims that remain unpaid and unaddressed.[7] While the liquidation of claims could certainly proceed through a Title III process for the postpetition claims with a separate process for estimating and

---

[6] *See Rio Grande Cmty. Health Ctr., Inc.,* et al. *v. Hon. Johnny Rullan, Sec'y of the Dep't of Health for the Commonwealth of Puerto Rico*, Civ. Action No. 03-1640.

[7] To the extent other health centers were to seek and obtain similar relief to that requested in the Motion, the result would be of no additional burden to the Commonwealth, as the Prepetition Litigation before the District Court is a consolidated set of actions involving all of the impacted health centers. If anything, this result would only be more efficient in ensuring a final resolution of the disputes between the Commonwealth and the FQHCs.

4

later crystalizing the prepetition claims, it is far more efficient to have these issues determined once through the Prepetition Litigation by the court that has exercised supervision over and is intimately familiar with these issues.

8. Importantly, as discussed further below, these disputes must be addressed in connection with any plan of adjustment in the Title III case. The Movants' claims are non-dischargeable, *see* 48 U.S.C. § 2164,[8] and accordingly, the Court and other parties should understand the scope of the Movants' claims in evaluating confirmation of any plan. In addition, in order to exit the Title III case, the plan of adjustment must provide a pathway for future payment of go-forward services.[9] Lifting the stay to allow the Prepetition Litigation will allow all of these issues to be resolved in one forum, at the same time, and is the most expeditious and practical path towards resolution.

9. Moreover, the Movants are uniquely situated based on their recognized enforcement rights under Section 1983 of Title 42 of the U.S. Code. The First Circuit, after performing the thorough and exacting analysis required by Section 1983 case law[10], concluded that 42 U.S.C. § 1396a(bb) was sufficiently specific to accord FQHCs in Puerto Rico an enforceable right to payment of amounts owed under the Medicaid Statute. *Rio Grande Cmty. Health Ctr*, 397 F.3d at 73-75. There is nothing either explicit or implicit in the language of PROMESA that interferes with Movants' enforceable right or immunity. Further, Congress is

---

[8] Section 304(h) of PROMESA prohibits "the discharge of obligations arising under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties." 48 U.S.C. § 2164(h). The First Circuit has already held that the Movants' payment right is an "unambiguously conferred" enforceable right under 42 U.S.C. § 1983. *See, e.g., Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 72-74 (1st Cir. 2005) (internal citations omitted).

[9] *See* 48 U.S.C.§ 2174(b)(3) (requiring that the debtor is not prohibited by law from taking any action necessary to carry out the plan); 11 U.S.C. § 1129(a)(3) (requiring that any plan be proposed in good faith and not by any means forbidden by law, as incorporated into PROMESA through 48 U.S.C. § 2174(b)(1) and 48 U.S.C. § 2161).

[10] *See, e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).

5

presumed to have been aware of the requirements of the Medicaid Act (including 42 U.S.C. § 1396a(bb)) when it enacted PROMESA.

10. Based on the foregoing, as well as set forth in the Motion, the distinct nature of the Movants' claims, arising from non-compliance with Medicaid during both the prepetition and postpetition period, and the presence of a forum in which these matters have been addressed for almost two decades, lead to the conclusion that a number of the applicable *Sonnax* factors weigh in favor of lifting the stay. Specifically, (i) whether relief would result in a partial or complete resolution of the issues; (ii) whether the parties are ready for trial in the other proceeding; and (iii) the interests of judicial economy and the expeditious and economical resolution of litigation all counsel towards permitting the Prepetition Litigation to proceed.

11. But it is also worth further considering why the balance of harms factor weighs strongly in favor of lifting the stay. As this Court is aware, based on their status as FQHCs, the Movants are required to provide comprehensive healthcare services to the Commonwealth's most underserved population, including Puerto Rico's Medicaid enrollees, and any other individual that walks in the door regardless of their ability to pay. *See* 42 U.S.C. §§ 254b(a)(1); 254b(k)(3)(E); §§ 254b(a)(1); and 254b(k)(3)(G)(i). The Commonwealth has a corresponding obligation under the Medicaid Statute to (i) make Movants' services available to enrollees of Puerto Rico's Medicaid program and (ii) pay Movants in a manner consistent with the Medicaid Statute as a condition of receiving Medicaid funds. 42 U.S.C. § 1396a(a)(10)(A).

12. Access to these services is even more critical now as the Movants assist in the Commonwealth's response to the COVID-19 pandemic. Movants and other FQHCs have played in integral part in the Commonwealth's response to the pandemic by providing personal protection equipment, COVID-19 testing, and now as part of the roll out of vaccines in their respective

6

communities. In addition to other millions of dollars in federal funds that Movants bring to the island on an annual basis, they are also eligible to participate in grant projects like the Health Center COVID-19 Vaccine program.[11] Meanwhile, the Commonwealth, under the protection of the automatic stay, continues to enjoy the benefit of the Movants' services at a discount and as further described below, the Commonwealth's continued underpayment results in an unlawful subsidy of the Medicaid program by forcing Movants to make up the underpayment through their Section 330 funding.

13. As it currently stands, the Commonwealth's failure to pay for Medicaid services in full is causing funds granted to the FQHCs (including the Movants) under Section 330 of the Public Health Service Act ("Section 330") to be unlawfully used to pay for such Medicaid services to cover the shortfall. Congress sought to avoid such a subsidy of the Medicaid program using Section 330 funds by legislating the special FQHC payment protection in 1989. H.R. Rep. No. 101-247, at 392-93, *reprinted in* 1989 U.S.C.C.A.N. 1906, 2118-19. The subsidy of the Medicaid program using Section 330 funs is also contrary to PROMESA's restriction on federal funds being used to pay the Commonwealth's liability.[12] This not only imperils the health and wellbeing of the citizens of the Commonwealth by underfunding the health centers at a critical time, but directly puts the Movants at risk that the federal government could take action against the Movants due to the misapplication of the Section 330 funds resulting from the Commonwealth's failures to comply with the Medicaid Statute. Under the precedent set by the Supreme Court in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 424-434 (1990), this court should not permit the

---

[11] *COVID-19 Frequently Asked Questions (FAQs)*, HEALTH RESOURCES & SERVICES ADMINISTRATION, https://bphc.hrsa.gov/emergency-response/coronavirus-frequently-asked-questions?field_faq_category_tid=306&combine= (last visited March 2, 2021 at 11:07 p.m.).

[12] Indeed, the failure of the Commonwealth to comply with the Medicaid statute with respect to payments to the Movants over a period of two decades is what has given rise to the Movant's pre-and post-petition claims.

appropriations law violation that would otherwise take place if Section 330 funds were used to cover shortfalls caused by the Commonwealth's failure to pay Movants in accordance with the Medicaid Act's requirements.

14. Lastly, the FOMB's argument that the claims reconciliation is best handled as part of the Title III case is inconsistent with past positions taken by the Commonwealth before the United States Court of Appeals for the First Circuit (the "First Circuit"). Specifically, the First Circuit, in finding that the stay applies to the Prepetition Litigation, noted that the Commonwealth had stated its desire not to delay the Prepetition Litigation. "Instead, it asserted that it wanted to make sure that the automatic stay was in effect only so that the FQHCs would not be able to collect on an ultimate judgment without guidance from the Title III Court. . . ." *See Municipality of San Juan, v. Puerto Rico*, 919 F.3d 565, 581-82 (1st Cir. 2019).[13] The Movants merely ask for the right to continue the Prepetition Litigation to an ultimate judgment, so that the Movants' claims can rightly be dealt with in the Title III case. Proceeding in this manner would create no new burden for the Commonwealth and would bolster judicial efficiency by allowing the forum most familiar with these issues to reach a final judgment.

**B.     Compliance with the Stipulation and Underlying Federal Law is Mandatory and Necessary for a Plan to be Confirmed**

15. While the Movants' claim for the Shortfall has since been resolved, it is imperative that the Court and the parties realize that the Stipulation was merely a proxy for the Commonwealth's requirement to pay the Movants under federal law.[14] The Commonwealth's

---

[13] Additionally, the fact that the First Circuit explicitly quoted the Commonwealth's representation that "[n]othing in PROMESA disturbs the Government of Puerto Rico's public policy regarding the services provided under Medicaid and the compliance with the prospective payment to assure the service is rendered" in upholding the applicability of the automatic stay appears to signify that the Commonwealth's representation as to its public policy was material to the First Circuit's decision. *Id*. at 572 (internal citations omitted).

[14] The formula the Movants use to calculate their pre-petition claims, and which continues to determine the amount they are owed for post-petition services, is prescribed by 42 U.S.C. 1396(a)(bb) (the "Medicaid Statute").

8

obligations to continue to comply with the Stipulation, and the payment requirements under the Medicaid Statute, which the Stipulation attempts to approximate, remain. These obligations are not voluntary. PROMESA specifically provides that it does not affect the Commonwealth's obligations under any federal law, including the Medicaid Statute. Section 7 of PROMESA, 48 U.S.C. § 2106, provides that:

> Except as otherwise provided in this chapter, nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory.

The Movants' claims arise under the Medicaid Statute, which is a federally authorized or delegated program protecting the health and safety of persons, and, as such, cannot be impaired or relieved in any way as a result of the Title III case.

16. Moreover, compliance with the Medicaid Statute is necessary in order to demonstrate that the plan is feasible and to successfully confirm a plan.[15] Under PROMESA, for the Court to confirm a plan of adjustment, it must find that "the debtor is not prohibited by law from taking any action necessary to carry out the plan"[16] and such plan was "proposed in good faith and not by any means forbidden by law."[17] Any resolution that does not fully pay the Movants amounts they are owed within the time limits and at the level required by the Medicaid Statute —whether incurred pre- or post-petition, or after a plan of adjustment becomes effective— would violate the Medicaid Statute and, therefore, prevent a plan of adjustment from being

---

[15] For a plan of adjustment to be confirmed, the court must find that "the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan[.]" *See* 48 U.S.C. § 2174(b)(6).

[16] *Id.* § 2174(b)(3).

[17] 11 U.S.C. § 1129(a)(3) as incorporated into PROMESA by 48 U.S.C. § 2161 and 48 U.S.C. § 2174(b)(1).

9

confirmed. Stated otherwise, the Commonwealth must comply with both the payment level and timing requirements set forth in 42 U.S.C. § 1396a(bb). In light of these factors, the stay should be lifted to allow the Prepetition Litigation so these issues—past, present and future—can be fully and finally resolved.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, and the reasons set forth in the Motion, the Debtors respectfully request that this Court grant the relief requested in the Motion and lift the stay to permit the Prepetition Litigation to proceed.

*[Remainder of page intentionally left blank]*

Respectfully submitted:

    In San Juan, Puerto Rico, this 3rd day of March, 2021.

OF COUNSEL:

| | |
|---|---|
| **FELDESMAN TUCKER LEIFER FIDELL** | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| By: /s/ *Nicole M. Bacon* | By: /s/ *Brad M. Kahn* |
| Nicole M. Bacon (admitted *pro hac vice*) | Brad M. Kahn (*pro hac vice* admission pending) |
| James L. Feldesman (admitted *pro hac vice*) | One Bryant Park |
| Khatereh S. Ghiladi (admitted *pro hac vice*) | New York, NY 10036 |
| 1129 20th Street, NW | Telephone: (212) 872-1000 |
| Suite 400 | |
| Washington, DC 20036 | Joanna F. Newdeck (admitted *pro hac vice*) |
| Telephone: (202) 466-8960 | 2001 K Street N.W. |
| | Washington, DC 20006 |
| | Telephone: (202) 887-4000 |

**RODRÍGUEZ MARXUACH, PSC**
By: : /s/ *Miguel Rodríguez Marxuach*
Miguel Rodríguez Marxuach (USDC No. 206011)
María Celeste Colberg-Guerra (USDC No. 227314)
P.O. Box 16636
San Juan, PR 00908-6636
Tel 787-754-9898

11