# **<u>EXHIBIT B</u>**

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS |

## DEFENDANTS' INITIAL DOCUMENT REQUESTS FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE PRIFA REVENUE BOND ADVERSARY PROCEEDING

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

PLEASE TAKE NOTICE THAT, pursuant to the Court's *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Adv. Proc. No. 20-00003, ECF No. 115, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and U.S. Bank Trust National Association (collectively, the "Defendants"), by and through their undersigned attorneys, hereby request that You (defined below) produce the Documents and Communications described below.

## DEFINITIONS

1.      "1988 Trust Agreement" means the Document on pages 69 through 150 of Exhibit 1 to the *Declaration of Lary Alan Rappaport in Respect of Commonwealth Motion for Partial Summary Judgment*, Adv. Proc. No. 20-00003-LTS, ECF No. 47-1.

2.      "1997 Amended Trust Agreement" means the Document on pages 1 through 69 of Exhibit 1 to the *Declaration of Lary Alan Rappaport in Respect of Commonwealth Motion for Partial Summary Judgment*, Adv. Proc. No. 20-00003-LTS, ECF No. 47-1.

3.      "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

4.      "Accounts," or each individually, an "Account," means the accounts held by or on behalf of the Commonwealth or any of its instrumentalities, including, without limitation, any Related Accounts.

- 2 -

5.      "Account Value" refers to the field in the Express Voucher System used to classify the nature of a transaction, as described on page four of the letter dated March 13, 2020 from Elizabeth McKeen, Esq. to Defendants' counsel.

6.      "Agreement" or "Agreements" means any and all agreements, side agreements, contracts, grants of a security interest or similar right, supplements, account control agreements, deeds of trust on accounts, other negotiated instrument, or other binding instrument or arrangement between two or more parties, or supplements thereto.

7.      "Bond Documents" means the Trust Agreement, any Resolutions issued thereunder, any official statements issued in connection with any issuance of PRIFA bonds, and any other related Agreements, Resolutions, official statements, or other documents governing the PRIFA bonds.

8.      "Citibank" means Citibank, N.A. its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

9.      "Class Value" or "Class Values" refers to the identifier of an appropriation of budget key, as described on page five of the letter dated March 13, 2020 from Elizabeth L. McKeen, Esq. to Defendants' counsel.

10.     "Commonwealth" means the Commonwealth of Puerto Rico and its instrumentalities, its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

11.     "Communication" or "Communications" means any exchange of information by any means, including, but not limited to, correspondence, face-to-face conversations, electronic transmissions, meetings, visits, conferences, internal and external discussions, or any other kind

of oral or written exchange between two or more Persons that has been recorded or transcribed in any way including letters, facsimiles, transcriptions, sound recordings, or video recordings.

12.     "Debt Service Fund" means the Fund of that name referenced on page 26 of PRIFA's Financial Statements for the fiscal year ended June 30, 2016.

13.     "DeptID" refers to organizational structures referred to on page four of the letter dated March 13, 2020 from Elizabeth L. McKeen, Esq. to Defendants' counsel.

14.     "Documents" is used in the broadest sense permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules for the United States District Court for the District of Puerto Rico, and includes, without limitation, tangible things, correspondence, communications, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (e.g., email messages), any electronically stored information, recordings (e.g., voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

15.     "Enabling Act" refers to the Puerto Rico Infrastructure Financing Authority Act, 3 L.P.RA. §§ 1901, *et. seq.*

16.     "Express Voucher System" refers to the Commonwealth's internal accounting and financial records system, which is also commonly referred to as "PRIFAS."

17.     "Financial Statements" means any formal records of the financial activities, balance of accounts, and position of a business, Person, or other entity, including, without limitation, balance sheets, income or expense statements, and statements of cash flows.

18.     "First Proceeds" means the first $117 million of Rum Tax Remittances received by the Commonwealth each fiscal year from the United States Department of Treasury pursuant to 26 U.S.C. § 7652.

19.     "Flow of Funds" refers to the path, including each and every deposit, credit, withdrawal, debit, or transfer, into or out of an account, of the Rum Tax Remittances, from their initial receipt or collection by the Commonwealth, its agents, or its financial institutions (including, without limitation, Citibank and PRIFA) through and including the ultimate disposition, if any, of the funds.  Documents relating to the Flow of Funds include, without limitation, account-opening documents, transmittal information (including payment vouchers and transfer activity reports), and banking Agreements.

20.     "Fund" means an amount of money or other resource set aside for the purpose of carrying out a specific activity or to achieve certain objectives pursuant to the special laws, regulations, restrictions, or limitations and which constitute an independent fiscal and accounting entity, including accounts created to keep record of the proceeds of the issuance of bonds that may be authorized, or the fiscal and accounting entities referenced on page four of the letter dated March 13, 2020 from Elizabeth L. McKeen, Esq. to Defendants' counsel.  A "Fund" includes a special fund.

21.     "Fund Value" means the numeric identifier associated with Funds in the Express Voucher System.

22.     "GAAP" means Generally Accepted Accounting Principles.

23.     "GASB" means the Governmental Accounting Standards Board.

24.     "GDB" means the Puerto Rico Government Development Bank and its successors, including the GDB Debt Recovery Authority and the GDB Public Entity Trust, and their present

and former officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on their behalf.

25.     "General Fund" refers to that Fund held by the Treasury of the Commonwealth known as the Commonwealth's General Fund.

26.     "Including" or "includes" means "including but not limited to and without limitation," or "includes but is not limited to and without limitation."

27.     "Infrastructure Fund" means the Puerto Rico Infrastructure Fund.   For the avoidance of doubt, this term encompasses both the Puerto Rico Infrastructure Fund referred to in section 1914 of the Enabling Act and the Puerto Rico Infrastructure Fund referred to on pages 2 and 34 of the Trust Agreement.

28.     "KPMG" means the accounting firm KPMG International, and each of its present or former officers, directors, agents, representatives, employees, and members.

29.     "Lockbox Agreement" refers to the Agreement dated as of May 5, 2015, between Citibank, N.A., Banco Popular de Puerto Rico, and the Commonwealth.

30.     "March Orders" has the same meaning as in the *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Adv. Proc. No. 20-00003, ECF No. 115.

31.     "McConnell Valdés" means the law firm McConnell Valdés PLLC, and each of its present or former officers, directors, agents, representatives, employees, members, and associates.

32.     "Oversight Board" or "Board" means the Financial Oversight and Management Board for Puerto Rico.

33.     "Person" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

34.     "PRIFA" means the Puerto Rico Infrastructure Financing Authority and each of its present or former board members, agents, representatives, and employees.

35.     "PRIFA Bonds" means any and all bonds issued by PRIFA under the PRIFA Bond Documents.

36.     "PRIFA Special Revenue Fund" means the Fund of that name described on page 323 of the Commonwealth's Financial Statements for the fiscal year ended June 30, 2014.

37.     "Program" means the groups of related activities directed toward the accomplishment of sets of identifiable objectives, as described on page 5 of the letter dated March 13, 2020 from Elizabeth McKeen, Esq. to Defendants' counsel.

38.     "Puerto Rico Science & Technology Trust" means the trust created by 23 L.P.R.A. § 695a.

39.     "Resolutions" means decisions or determinations of a deliberative or legislative body, or any subdivisions, entities, or instrumentalities thereof.

40.     "Restrictions" means any law, contract, Agreement, other Document with the force of law, directive, or policy, practice, or procedure, whether formal or informal, that limits or conditions the use or movement of any Fund, Account, or other moneys.

41.     "Rum Producers" means the entities (including, without limitation, Bacardí International Limited, Bacardí Corporation, Destilería Serrallés, Inc., Club Caribe Distillers, LLC, and Edmundo B. Fernández, Incorporated) that produce rum on the island of Puerto Rico.

42.     "<u>Rum Tax Remittances</u>" means the federal excise taxes imposed on rum produced in Puerto Rico and imported into the United States that is subsequently covered over from the United States Treasury to the Commonwealth Treasury pursuant to 26 U.S.C. § 7652.

43.     "<u>Sidley Austin</u>" means the law firm Sidley Austin LLP, and each of its present or former board members, agents, representatives, and employees.

44.     "<u>Signatories</u>" means any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed or otherwise manifested their consent to a Document as a party, or on behalf of a party, to that Document.

45.     "<u>Sinking Fund</u>" means the Special Fund created and designated by Section 401 of the Trust Agreement.

46.     "<u>Special Revenue Fund</u>" refers to the term of the name described on page 256 of the Commonwealth's Financial Statements for the fiscal year ended June 30, 2013.

47.     "<u>Treasury</u>" means the Department of the Treasury of Puerto Rico and each of its present or former board members, agents, representatives, and employees.

48.     "<u>Treasury Single Account</u>" means the accounts held by the Treasury commonly known as the Treasury Single Account or TSA, including, without limitation:  (i) Banco Popular Account Nos. ███9458, ███1012, ███1020, ███2883, ███1216, ███9865; (ii) Banco Santander Account No. ███2463; (iii) Citibank Account No. ███9036; and (iv) GDB Account Nos. ███0006, ███0704, ███1891.

49.     "<u>Trust Agreement</u>" refers collectively to the 1988 Trust Agreement, the 1997 Amended Trust Agreement, and any other related Agreement.

50.    "<u>You</u>" or "<u>Your</u>" means the plaintiff in the above captioned action, and any of its affiliates, parents, subsidiaries, attorneys, accountants, officers, directors, agents, employees, representatives, partners, predecessors-in-interest, or successors-in-interest.

51.    Each reference to a corporation, partnership, joint venture, unincorporated association, government agency, or other fictitious Person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, and successors, and for each such entity, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

52.    Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any other Person who acted on that Person's behalf.

53.    The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgment that such definition is accurate, meaningful, or appropriate for any other purpose.

54.    In construing the Requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

55.    The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

56.    The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

57.    The word "concerning" means relating to, referring to, describing, evidencing, or constituting.

## <u>INSTRUCTIONS</u>

1.      In complying with the Requests, You are required to produce all Documents and Communications described below which are in Your possession, custody, or control, including those Documents and Communications in the possession, custody, or control of Your instrumentalities, counsel or former attorneys, investment advisors, financial advisers, securities brokers or dealers, investigators, accountants, employees or other agents, regardless of location.

2.      For the purpose of reading, interpreting, or construing the scope of these Requests, the terms used should be given their most expansive and inclusive interpretation.

3.      Unless instructed otherwise, each Request should be construed independently and not by reference to any other Request for the purpose of limitation.

4.      If any portion of a Document or Communication is responsive to any Request, the entire Document or Communication should be produced.

5.      Documents responsive to these Requests shall be labeled in such a way as to show their source, including, but not limited to, the files and offices where they were maintained.

6.      If You withhold any Document or Communication, or any portion of any Document or Communication, under a claim of privilege, You shall produce, in accordance with Rule 26 of the Federal Rules of Civil Procedure and Rule 26 of the Local Rules of the United States District Court for the District of Puerto Rico, a written privilege log that sets forth: (i) the author of the Document or Communication; (ii) the type of Document or Communication, *e.g.*, letter or memorandum; (iii) the date of the Document or Communication; (iv) all recipients, including CC recipients, of the Document or Communication; (v) such other information as is sufficient to identify the Document or Communication; and (vi) the nature of the privilege asserted.

7.      If information is redacted from a Document or Communication produced in response to a Request, You shall identify the redaction by stamping the word "Redacted" on the Document or Communication at each place where information has been redacted and separately log each redaction on the privilege log.

8.      If any requested Document or Communication has been lost, destroyed, transferred voluntarily or involuntarily to others, or otherwise disposed of, You shall state the circumstances surrounding such disposition, including the identity of Person(s) having knowledge as to the circumstances of such disposition and the date or approximate date of such disposition.

9.      If You cannot respond to these Requests in full after exercising due diligence to secure the Documents or Communications requested, You shall so state and respond to the extent possible, specifying the nature of Your inability to respond to the remainder.

10.     If there are no Documents or Communications responsive to a particular Request in Your possession, custody, or control, You shall provide a written response so stating.

11.     Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope.  If You believe that any Request, definition, or instruction is ambiguous, in whole or in part, You must nonetheless respond and (i) set forth the matter deemed ambiguous and (ii) describe the manner in which You construed the Request in order to frame Your response.

12.     Documents produced pursuant to these Requests should be produced as they are kept in the ordinary course of business, including electronically stored information.  Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

13.    Documents and Communications in electronic form, including, but not limited to, e-mail, should be produced in single page tagged image file format ("TIFF"). Metadata associated with electronically stored information shall be produced in text format linked to the associated file. Extracted text files, if any, should be delivered in document level text files.  Spreadsheets and database files should be provided in native format, with an accompanying placeholder Bates7 numbered TIFF file.  Each responsive spreadsheet should be clearly labeled to indicate the placeholder Bates number that corresponds to each spreadsheet.

14.    Unless otherwise instructed or clear from the context of the Request, these Requests pertain to the period from October 1, 1987, to the present.

15.    These Requests are continuing in nature.  If, after producing any materials in response to these Requests, You obtain or become aware of additional responsive materials, You are required to provide such materials by way of a supplemental production.

16.    These Requests should not be construed as a waiver or an abridgment of, and are not intended to waive, any argument or defense, or any objection to discovery Requests, nor shall they be construed as any admission of fact.

17.    Documents previously produced bearing Bates prefixes of PRIFA_STAY, CW_STAY, or FOMB_STAY may, at Your option, be deemed to have been produced in response to these Requests, and in that case, need not be produced again.

## **REQUESTS**

**Request No. 1:** All Documents governing the PRIFA Bonds, including all versions of the 1988 Trust Agreement and 1997 Amended Trust Agreement and any supplements thereto in effect during the relevant period, as well as Documents and Communications sufficient to explain the

anomalies between the 1988 Trust Agreement and 1997 Amended Trust Agreement, and Documents identifying the Signatories to and/or those bound by such Agreements, including:

a) All Documents governing the PRIFA Bonds, including all Agreements, all closing binders, any amendments and supplements thereto, and any other legally operative Documents concerning the PRIFA Bonds;

b) All versions of the 1988 Trust Agreement, the 1997 Amended Trust Agreement, or any other versions of the Trust Agreement, including, without limitation, supplemental Agreements or amendments (without any time limitation);

c) Documents and Communications—including  Communications between and among PRIFA, the Commonwealth, Sidley Austin, or McConnell Valdés—concerning: (i) the execution and notarization of the 1988 Trust Agreement and 1997 Amended Trust Agreement; (ii) the location or whereabouts of the 1988 Trust Agreement, the 1997 Amended Trust Agreement, and any other versions of the Trust Agreement, including, without limitation, supplemental Agreements or amendments; and (iii) the inclusion of "NY1 5690864v.2 45967/59" in the bottom-left corner of each page of the 1997 Amended Trust Agreement;

d) Documents identifying the Signatories to or Persons bound by any Agreement referenced under Request 1, including, without limitation, the 1988 Trust Agreement, the 1997 Amended Trust Agreement, any other versions of the Trust Agreement, and any supplemental Agreements or amendments.

**Request No. 2:** All Documents and Agreements governing the Flow of Rum Tax Remittances including all versions of the Lockbox Agreement and Agreements governing all accounts into or

through which such funds are or have been transferred, and identifying the Signatories to and/or those bound by such agreements, including:

a) All Documents governing the Flow of Rum Tax Remittances from January 1, 2006, to present;

b) All versions (including, without limitation, drafts) of the Lockbox Agreement, including all Agreements, or supplements thereto, or other provisions concerning the Lockbox Agreement;

c) All Documents identifying the Signatories to or Persons bound by any Agreements referenced under Request 2, including the Lockbox Agreement;

d) Documents and Agreements to which the Commonwealth, Rum Producers, Citibank, or PRIFA is a party that relate to the Rum Taxes, the Flow of Funds, or the use of Rum Taxes;

e) Documents concerning the opening of any account to or from which Rum Tax Remittances were transferred or deposited, including the Treasury Single Account, or any accounts owned, controlled, or held by the Commonwealth, the GDB, U.S. Bank as Indenture Trustee, Citibank, and AAFAF, and any subsequent changes to such accounts, including (i) signature cards for each such account, (ii) the name, legal title, and registration of each such account, (iii) the Signatories of each such account, and (iv) any changes or updates to any of the foregoing over time;

f) All Documents and Communications concerning the roles of the Commonwealth Treasury, the GDB, and PRIFA in the transfers of Rum Tax Remittances into and out of the Treasury Single Account.

**Request No. 3:** Resolutions related to the Bond Documents adopted by the Commonwealth or by PRIFA, including:

a) All Resolutions adopted by PRIFA or the Commonwealth relating to the Bond Documents, including, without limitation, any Resolutions of the type referred to in 3 L.P.R.A. § 1907 or Section 602 of the 1988 Trust Agreement, and all Documents and Communications concerning the adoption of such Resolutions.

**Request No. 4:** All Documents and Communications identifying the nature and location of the Infrastructure Fund and the Restrictions placed upon moneys therein, including:

a) Documents and Communications concerning the nature and location of the Infrastructure Fund;

b) Documents concerning Restrictions placed upon moneys deposited in or to the credit of the Infrastructure Fund;

c) Documents concerning each account where moneys comprising the Infrastructure Fund are deposited, including all account holders, Signatories, and entities or individuals with authority over the accounts, and transaction records for each such account;

d) Documents concerning each fund to which moneys comprising the Infrastructure Fund were credited, including the Fund Value, the manner in which the Fund is held, Restrictions applicable thereto, and transaction records for each such Fund;

e) Documents and Communications referencing the Infrastructure Fund, including Documents or Communications concerning the deposit of moneys in or to the credit of the Infrastructure Fund;

f)  Documents and Communications concerning or referencing Restrictions placed upon the First Proceeds, Rum Tax Remittances, or any moneys deposited in or to the credit of the Infrastructure Fund;

g)  Communications between and among the Commonwealth, PRIFA, Citibank, or Rum Producers regarding those entities' understanding, interpretation, and implementation of the Enabling Act, Bond Documents, or Lockbox Agreement, including any Communications concerning the First Proceeds or the Infrastructure Fund;

h)  Documents and Communications, including those between and among the Commonwealth, Treasury, PRIFA, or KPMG, that make reference to the First Proceeds, the Infrastructure Fund, or the Rum Tax Remittances, or relating to the treatment, discussion, or presentation of First Proceeds, the Infrastructure Fund, or the Rum Tax Remittances in the Commonwealth's historical audited Financial Statements and amendments thereto, including: (i) workpapers, engagement letters, tie outs, support for Financial Statements; (ii) the decision to describe the First Proceeds as "conditionally allocated" to PRIFA in the Commonwealth's Financial Statements for the fiscal year ended June 30, 2015 or any other year; (iii) the description of the First Proceeds as "the first $117 million of these federal excise taxes reimbursed, which are subsequently transferred to the Puerto Rico Infrastructure Financing Authority's Debt Service Fund to provide for the debt service of its special tax revenue bonds" in the Commonwealth's Financial Statements for the fiscal year ended June 30, 2014, and; (iv) the meaning of accounting terms of arts historically used therein, including "Special Revenue Fund," "Special Deposit," "PRIFA Special Revenue Fund," "Restrictions" or "restricted."

**Request No. 5:** All Documents and Communications relating to the accounting treatment of Rum Tax Remittances in general, including the use and purpose of Account Value designations, Fund Value designations, and DeptIDs, including:

a)  Documents and Communications concerning Treasury's and PRIFA's accounting practices, including the use of fund accounting, GAAP, and GASB principles;

b)  Documents concerning how Rum Tax Remittances are designated, including any Documents concerning any designation of Rum Tax Remittances as part of its General Fund;

c)  Documents and Communications concerning all Account Value, Fund Value, DeptID, Program, and Class Values associated with any transactions of Rum Tax Remittances, and the purpose and meaning of such designations;

d)  Documents sufficient to identify all transactions, from December 1, 1997 to present, relating to: (i) account designations R4220 and E6120; (ii) Fund Value 111 and 141; (iii) DeptID numbers 0250000 and 1610000; and (iv) any other Account Value, Fund Value, DeptID, Program, or Class Values identified in response to these Requests, including records of Treasury's or PRIFA's recordation of these transactions in the Express Voucher System or any other internal accounting ledger or fiscal system, and any other transactions related to PRIFA or Rum Tax Remittances;

e)  Commonwealth and PRIFA general ledger and other internal accounting records showing the internal financial reporting of or controls over transactions on the Commonwealth's and PRIFA's books and records, including the chart of accounts for the Commonwealth and PRIFA that identify and describe or define specific accounts

- 17 -

and Funds (or the data on any internal accounts or Funds concerning the First Proceeds), journal entries associated with transfers into and out of the PRIFA Special Revenue Fund and Debt Service Fund, and Financial Statements concerning the PRIFA Special Revenue Fund and Debt Service Fund;

f)   Reports for general ledger accounts, including collections reports, earned revenues reports, reports reconciling revenues earned with revenues collected, cash disbursement reports, and withdrawal reports, for every account concerning the Rum Tax Remittances;

g)   Documents sufficient to show how Rum Tax Remittances received by Treasury pursuant to the Lockbox Agreement were accounted for in the Express Voucher System, the general ledger, and any other fiscal or accounting system, and copies of all journal entries associated with such payments;

h)   Documents and Communications relating to the accounting treatment of the Rum Tax Remittances outside of the First Proceeds, including Rum Tax Remittances received and transferred to the Puerto Rico Science & Technology Trust from the period January 1, 2014 to present.

**Request No. 6:** A comprehensive set of transmittal information for the exemplars of transfers and/or deposits of Rum Tax Remittances between the various bank accounts through which Rum Tax Remittances have historically flowed, as authorized by the March Orders, including:

a)   Documents sufficient to show each transfer or deposit of the Rum Tax Remittances between and among the U.S. Treasury to the Commonwealth, the Infrastructure Fund, PRIFA, the Lockbox Agreement, the Sinking Fund, or any other account or fund, and

each subsequent transfer thereof, including (a) the date of the transfer, (b) the transferor, (c) the transferee, (d) the amount of the transfer, (e) information sufficient to identify and distinguish particular accounts, (f) all account holders or beneficiaries, and (g) all transmittal information associated with the transfer, including all Fedwire or ACH transaction fields, memo lines, accompanying memoranda, beneficiary information, addenda information, or other remittance or reference information;

b) Documents recording any transfer of Rum Tax Remittances from PRIFA to the Commonwealth;

c) Documents (including direction letters) sufficient to show the total amount of Rum Tax Remittances presently held by PRIFA, or the Commonwealth or its instrumentalities, including information sufficient to identify the particular accounts where such funds are retained; and the cash flow balance of the accounts;

d) Documents showing account statements for the Citibank account that was used to transfer Rum Tax Remittances to the Sinking Fund.

**Request No. 7:** Policies and procedures related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act, including:

a) Policies and procedures Concerning the Flow of Funds pursuant to the Bond Documents, Lockbox Agreement, and Enabling Act, including Documents concerning PRIFA's access to the Treasury Single Account, the management or operation of the Infrastructure Fund, and the individuals responsible for overseeing or approving transactions into and out of the Infrastructure Fund.

Dated: February 8, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*

    Roberto Cámara-Fuertes (USDC-PR No. 219002)

    Sonia Colón (USDC-PR No. 213809)

    221 Ponce de León Avenue, 5th Floor

    San Juan, PR 00917

    Telephone: (787) 766-7000

    Facsimile:  (787) 766-7001

    Email:  rcamara@ferraiuoli.com

        scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*

    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com
        johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: */s/ María E. Picó*
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: */s/ Heriberto Burgos Pérez*
Heriberto Burgos Pérez
(USDC-PR No. 204809)
Ricardo F. Casellas-Sánchez
(USDC-PR No. 203114)
Diana Pérez-Seda
(USDC-PR No. 232014)
P.O. Box 364924
San Juan, PR 00936-4924
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: hburgos@cabprlaw.com
       rcasellas@cabprlaw.com
       dperez@cabprlaw.com

**BUTLER SNOW LLP**

By: */s/ Martin A. Sosland*
Martin A. Sosland (admitted *pro hac vice*)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
Email: martin.sosland@butlersnow.com

James E. Bailey III (admitted *pro hac vice*)
Adam M. Langley (admitted *pro hac vice*)
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: jeb.bailey@butlersnow.com
       adam.langley@butlersnow.com

*Attorneys for Financial Guaranty Insurance Company*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: */s/ Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr. (admitted *pro hac vice*)
Mark C. Ellenberg (admitted *pro hac vice*)
William J. Natbony (admitted *pro hac vice*)
Thomas J. Curtin (admitted *pro hac vice*)
Casey J. Servais (admitted *pro hac vice*)
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Email: howard.hawkins@cwt.com
       mark.ellenberg@cwt.com
       bill.natbony@cwt.com
       thomas.curtin@cwt.com
       casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**RIVERA, TULLA AND FERRER, LLC**

By:   */s/ Eric A. Tulla*
  Eric A. Tulla
  (USDC-DPR No. 118313)
  Email: etulla@ riveratulla.com
  Iris J. Cabrera-Gómez
  (USDC-DPR No. 221101)
  Email: icabrera@ riveratulla.com
  Rivera Tulla & Ferrer Building
  50 Quisqueya Street
  San Juan, PR 00917-1212
  Telephone: (787) 753-0438
  Facsimile: (787) 767-5784

**HOGAN LOVELLS US LLP**

By:   */s/ Ronald J. Silverman*
  Ronald J. Silverman
  Michael C. Hefter
  390 Madison Avenue
  New York, NY 10017
  Telephone: (212) 918-3000
  Facsimile: (212) 918-3100
  ronald.silverman@hoganlovells.com
  michael.hefter@hoganlovells.com

***Attorneys for U.S. Bank Trust National
Association, in its Capacity as Trustee
to PRIFA Bondholders***