# **EXHIBIT C**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>    Plaintiff,<br>v.<br>AMBAC ASSURANCE CORPORATION, *et al.*,<br>    Defendants. | Adv. Proc. No. 20-00004-LTS |

## DEFENDANTS' INITIAL DOCUMENT REQUESTS FOR THE PRODUCTION OF DOCUMENTS IN CONNECTION WITH THE CCDA REVENUE BOND ADVERSARY PROCEEDING

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

PLEASE TAKE NOTICE THAT, pursuant to the Court's *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims*, Adv. Proc. No. 20-00004-LTS, ECF No. 110, Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and The Bank of New York Mellon, as trustee (collectively, the "Defendants"), by and through their undersigned attorneys, hereby request that You (defined below) produce the Documents and Communications described below.

## DEFINITIONS

1. "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority, including its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

2. "Agreement" means any and all agreements, side agreements, contracts, grants of a security interest or similar right, supplements, account control agreements, deeds of trust on accounts, or other negotiated or otherwise binding instrument or arrangement between two or more parties, whether in the form of a Document or other Communication, or supplements thereto.

3. "Assignment Agreement" means the Assignment and Coordination Agreement between the Tourism Company and GDB, dated March 24, 2006.

4. "Bond Documents" means the Assignment Agreement, Pledge Agreement, Trust Agreement, Supplemental Trust Agreement and any related Agreements, Resolutions, or official statements relating to the issuance of CCDA Bonds.

5. "BPPR" means Banco Popular de Puerto Rico, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

6. "CCDA" means the Convention Center District Authority and each of its present or former board members, agents, representatives, and employees.

7. "CCDA Bonds" means any bonds issued by CCDA under the Bond Documents.

8. "CCDA Bond Trustee" means The Bank of New York Mellon, and its predecessor JPMorgan Chase Bank, N.A.

9. "CCDA Declaration" means the *Declaration of John J. Hughes, III In Support of Opposition of Ambac Assurance Corp. et. al to the Oversight Board's Motion for Partial Summary Judgment Seeking to Disallow Claims Relating to CCDA Bonds*, Adv. Proc. No. 20-00004-LTS, ECF No. 80.

10. "Commonwealth" means the Commonwealth of Puerto Rico and its instrumentalities, its present and former officers, directors, employees, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

11. "Communication" means any exchange of information by any means, including, but not limited to, correspondence, face-to-face conversations, electronic transmissions, meetings, visits, conferences, internal and external discussions, or any other kind of oral or written exchange between two or more Persons that has been recorded or transcribed in any way including letters, facsimiles, transcriptions, sound recordings, or video recordings.

12. "Documents" is used in the broadest sense permitted under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, and the Local Rules for the United States District Court for the District of Puerto Rico, including tangible things, correspondence,

communications, internal or external memoranda, letters, drafts, non-identical copies, notes including handwritten notes, minutes of meetings, computer records (e.g., email messages), any electronically stored information, recordings (e.g., voicemail recordings), diaries, exhibits, sketches, designs, catalogs, newspapers, magazines, appointment or telephone records, banking records, and notices.

13. "Financial Statements" means any formal records of the financial activities, balance of accounts, and position of a business, Person, or other entity, including balance sheets and statements of cash flows.

14. "FirstBank" means FirstBank de Puerto Rico, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

15. "Flow of Funds" refers to the path, including each and every deposit and transfer, into and out of an account, of the Hotel Taxes from their initial receipt or collection by the Tourism Company, agents, or financial institutions through their ultimate transfer, if any, out of any account or sub-account held by or on behalf of the Commonwealth, Tourism Company, CCDA, or GDB. Documents relating to the Flow of Funds include, but are not limited to, account-opening documents, transmittal information (including payment vouchers and transfer activity reports), and banking Agreements.

16. "GDB" means the Puerto Rico Government Development Bank and its successors, including the GDB Debt Recovery Authority and the GDB Public Entity Trust, and their present and former officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on their behalf

17. "Government Parties" means the Oversight Board and AAFAF.

18. "Holding Fund" means the "Assignment and Coordination Holding Fund," into which all Hotel Taxes are deposited as collected, as defined in section 2 of the Assignment Agreement.

19. "Hotel Occupancy Tax Act" means Act 272-2003, as enacted by the Puerto Rico Legislature on September 9, 2003.

20. "Hotel Taxes" refers to the hotel occupancy taxes generated under the Hotel Occupancy Tax Act.

21. "Including" or "includes" means "including but not limited to and without limitation", or "includes but is not limited to and without limitation".

22. "Oversight Board" or "Board" means the Financial Oversight and Management Board for Puerto Rico.

23. "Person" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

24. "Pledge Account" means the account into which Pledged Hotel Taxes are required to be deposited, as defined in sections 2 and 4 of the Assignment Agreement.

25. "Pledge Agreement" means the Pledge Agreement between GDB, CCDA, and The Bank of New York Mellon, acting in its capacity as the CCDA Bond Trustee, dated March 24, 2006.

26. "Pledged Hotel Taxes" means the Hotel Taxes pledged to the repayment of CCDA Bonds.

27. "Resolutions" means decisions or determinations of a deliberative or legislative body, or any subdivisions, entities, or instrumentalities thereof.

28. "RSM" means the consulting firm RSM International, and each of its present or former officers, directors, agents, representatives, employees, and members.

29. "Scotiabank" means Scotiabank de Puerto Rico, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, its successors and any other Person who acted on its behalf.

30. "Signatories" means any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed or otherwise manifested their consent to a Document as a party, or on behalf of a party, to that Document.

31. "Supplemental Trust Agreement" means the First Supplemental Trust Agreement between CCDA and the CCDA Bond Trustee, dated March 24, 2006.

32. "Surplus Account" means the account defined in sections 2 and 4 of the Assignment Agreement, into which surplus Hotel Taxes may be deposited, which, together with the Transfer Account, comprises the Holding Fund.

33. "Transfer Account" means the account defined in sections 2 and 4 of the Assignment Agreement, into which the Hotel Taxes are deposited as collected, which, together with the Transfer Account, comprises the Holding Fund.

34. "Tourism Company" means the Puerto Rico Tourism Company and each of its present or former board members, agents, representatives, and employees.

35. "Trust Agreement" means the Trust Agreement between CCDA and the CCDA Bond Trustee, dated March 24, 2006.

36. "You" or "Your" means the plaintiff in the above captioned action, and any of its affiliates, parents, subsidiaries, attorneys, accountants, officers, directors, agents, employees, representatives, partners, predecessors-in-interest, or successors-in-interest.

37. Each reference to a corporation, partnership, joint venture, unincorporated association, government agency, or other fictitious Person shall be deemed to include each and all of its subsidiaries, affiliates, predecessors, and successors, and for each such entity, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

38. Each reference to a natural Person shall be deemed to include that Person's agents, attorneys, and any other Person who acted on that Person's behalf.

39. In construing the requests, the singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; and any reference to any gender includes the other gender.

40. The words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible the scope of the request.

41. The words "all," "any," and "each" shall each be construed broadly, meaning "any and all."

42. The word "concerning" means relating to, referring to, describing, evidencing, or constituting.

## **INSTRUCTIONS**

1. In complying with the requests, You are required to produce all Documents and Communications described below which are in Your possession, custody, or control, including those Documents and Communications in the possession, custody, or control of Your instrumentalities, counsel or former attorneys, investment advisors, financial advisers, securities brokers or dealers, investigators, accountants, employees or other agents, regardless of location.

2. For the purpose of reading, interpreting, or construing the scope of these requests, the terms used should be given their most expansive and inclusive interpretation.

3. Unless instructed otherwise, each request should be construed independently and not by reference to any other request for the purpose of limitation.

4. If any portion of a Document or Communication is responsive to any request, the entire Document or Communication should be produced.

5. Documents responsive to these requests shall be labeled in such a way as to show their source, including, but not limited to, the files and offices where they were maintained.

6. If You withhold any Document or Communication, or any portion of any Document or Communication, under a claim of privilege, You shall produce, in accordance with Rule 26 of the Federal Rules of Civil Procedure and Rule 26 of the Local Rules of the United States District Court for the District of Puerto Rico, a written privilege log that sets forth: (i) the author of the Document or Communication; (ii) the type of Document or Communication, e.g., letter or memorandum; (iii) the date of the Document or Communication; (iv) all recipients, including CC recipients, of the Document or Communication; (v) such other information as is sufficient to identify the Document or Communication; and (vi) the nature of the privilege asserted.

7. If information is redacted from a Document or Communication produced in response to a request, You shall identify the redaction by stamping the word "Redacted" on the Document or Communication at each place where information has been redacted and separately log each redaction on the privilege log.

8. If any requested Document or Communication has been lost, destroyed, transferred voluntarily or involuntarily to others, or otherwise disposed of, You shall state the circumstances

surrounding such disposition, including the identity of Person(s) having knowledge as to the circumstances of such disposition and the date or approximate date of such disposition.

9. If You cannot respond to these requests in full after exercising due diligence to secure the Documents or Communications requested, You shall so state and respond to the extent possible, specifying the nature of Your inability to respond to the remainder.

10. If there are no Documents or Communications responsive to a particular request in Your possession, custody, or control, provide a written response so stating.

11. Any ambiguity in a request shall be construed to bring within the scope of the request all responses that otherwise could be construed to be outside of its scope. If You believe that any request, definition, or instruction is ambiguous, in whole or in part, You must nonetheless respond and (i) set forth the matter deemed ambiguous and (ii) describe the manner in which You construed the request in order to frame Your response.

12. Documents produced pursuant to these requests should be produced as they are kept in the ordinary course of business, including electronically stored information. Electronic materials, information, and data that are electronically searchable should be produced in a form that does not remove or degrade this feature.

13. Documents and Communications in electronic form, including, but not limited to, e-mail, should be produced in single page tagged image file format ("TIFF"). Metadata associated with electronically stored information shall be produced in text format linked to the associated file. Extracted text files, if any, should be delivered in document level text files. Spreadsheets and database files should be provided in native format, with an accompanying placeholder Bates numbered TIFF file. Each responsive spreadsheet should be clearly labeled to indicate the placeholder Bates number that corresponds to each spreadsheet.

7

14. Unless otherwise instructed or clear from the context of the request, these requests pertain to the period from January 1, 2006 to the present.

15. These requests are continuing in nature. If, after producing any materials in response to these requests, You obtain or become aware of additional responsive materials, You are required to provide such materials by way of a supplemental production.

16. These requests should not be construed as a waiver or an abridgment of, and are not intended to waive, any argument or defense, or any objection to discovery requests, nor shall they be construed as any admission of fact.

17. Documents previously produced as CCDA_STAY, CW_STAY, or FOMB_STAY may, at Your option, be deemed to have been produced in response to these requests, and in that case, need not be produced again.

## DOCUMENT REQUESTS

**Request No. 1:** All Documents governing the CCDA bonds, including all versions of the Bond Documents, and Documents identifying the signatories to and/or those bound by the Bond Documents.

**Request No. 2:** All documents governing the flow of the Hotel Taxes from 2006 to the present, including all versions of documents governing the Transfer Account, Surplus Account and any other accounts into or through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements, including:

a) All Documents and Communications governing the flow of the Hotel Taxes from 2006 to the present.

b) All Documents (including, without limitation, drafts) governing the Holding Fund, Transfer Account, Surplus Account, Pledge Account, and any other accounts into or through which such funds are or have been transferred, including, without limitation, Bond Documents and Agreements.

c) Statements for any accounts into or from which Hotel Taxes were deposited, withdrawn, transferred, or otherwise credited or debited, from January 1, 2006 to the present, including but not limited to GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961.

d) Communications relating to the flow of Hotel Taxes, including but not limited to Communications regarding deposits of Hotel Taxes and the accounts in which such funds were deposited, transfers of Hotel Taxes and the accounts to which such funds were transferred, the retention of Hotel Taxes by the Commonwealth, Tourism Company, CCDA, or GDB and the reason for such retention.

e) Documents or Communications by, between, or among the Commonwealth, Tourism Company, CCDA, or GDB regarding the Hotel Occupancy Tax Act, the Bond Documents, or any Resolutions relating to the Bond Documents, including, without limitation, implementation or interpretation of any of the foregoing.

f) Documents or Communications regarding the nature, location, and meaning of funds or accounts referred to in the Bond Documents, including, without limitation, the Transfer Account, Surplus Account, Pledge Account, and/or Holding Fund.

**Request No. 3:** Resolutions of Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents, including:

    a) All versions (including, without limitation, drafts) of any Resolutions of the Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents.

**Request No. 4:** Account opening documents for GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961, including:

    a) Documents and Communications concerning any account into or from which Hotel Taxes were deposited, withdrawn, transferred, or otherwise credited or debited, including, without limitation, GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961, and including, without limitation, (i) signature cards for each such Account, (ii) the name, legal title, and registration of each such Account, (iii) the signatories of each such Account, (iv) any changes or updates to any of the foregoing over time, and (v) any other account-related Documents or Communications.

**Request No. 5:** Policies and procedures related to the flow of Hotel Taxes pursuant to the Bond Documents and Hotel Occupancy Tax Act, including:

    a) Any internal instructions, guidance, memoranda, or other Documents concerning any policies and procedures.

    b) Documents and Communications concerning any understanding or interpretation of policies and procedures, how hotels make payments, any arrangements concerning Scotiabank -5142, and any guidance provided by the Tourism Company to hotels related to their deposits of Hotel Taxes.

**Request No. 6:** Discovery identifying and explaining the purpose of transfers of Hotel Taxes from accounts identified in Request No. 4 above to the Commonwealth, including:

a) Documents identifying and explaining the purpose of transfers of Hotel Taxes from the accounts identified in Requests No. 4 above, including, without limitation, documents regarding whether the Commonwealth has used any Pledged Hotel Taxes constituting bondholder collateral to pay its own expenses or debts.

b) Documents concerning any general ledger or internal accounting records of the Hotel Taxes.

**Request No. 7:** Discovery identifying the recipient of transfers identified in paragraph 40 of the CCDA Declaration and any other transfers for which no recipient has been identified, including:

a) Documents and Communications concerning the following transfers which were listed in paragraph 40 of the CCDA Declaration, including, without limitation, Documents sufficient to identify the recipient of each such transfer and Documents concerning the purpose of the transfers:

- A withdrawal of $3,644,377.57 on July 11, 2016 out of Scotiabank -5142. (CCDA_STAY0000679 – CCDA_STAY0000684.)

- A withdrawal of $375,720.00 on September 9, 2016 out of BPPR - 2306. (CCDA_STAY0000646 – CCDA_STAY0000647.)

- A withdrawal of $50,000.00 on April 13, 2017 out of BPPR - 2306. (CCDA_STAY0000675 – CCDA_STAY0000676.)

- A withdrawal of $50,000.00 on January 13, 2020 out of BPPR - 2306. (CCDA_STAY0007384 – CCDA_STAY0007387.)

- A withdrawal of $10,607,824.72 on May 10, 2017 out of Scotiabank - 5138. (CCDA_STAY0009770 – CCDA_STAY0009786.)

- A withdrawal of $12,342,306.14 on January 10, 2020 out of Scotiabank - 5138. (CCDA_STAY0012669 – CCDA_STAY0012680.)

- A withdrawal of $73,872.55 on April 30, 2019 out of FirstBank - 2984. (CCDA_STAY0007470 – CCDA_STAY0007471.)

- A withdrawal of $67,926.94 on February 28, 2020 out of FirstBank - 2984. (CCDA_STAY0014185 – CCDA_STAY0014188.)

- A withdrawal of $423,601.81 on December 13, 2019 out of Scotiabank - 5144. (CCDA_STAY0006757 – CCDA_STAY0006763.)

- A withdrawal of $417,620.88 on February 14, 2020 out of Scotiabank - 5144. (CCDA_STAY0006772 – CCDA_STAY0006779.)

b) Documents and Communications concerning the following transfers out of GDB -9758, including, without limitation, Documents sufficient to identify the recipient of each such transfer and Documents concerning the purpose of the transfers:

- A withdrawal of $3,500,000 on January 15, 2015. (CCDA_STAY0001694 – CCDA_STAY0001695.)

- A withdrawal of $1,500,000 on April 13, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $1,000,000 on April 13, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $5,000,000 on April 15, 2015. (CCDA_STAY0001700 – CCDA_STAY0001701.)

- A withdrawal of $4,000,000 on July 22, 2015. (CCDA_STAY0000004 – CCDA_STAY0000005.)

- A withdrawal of $2,000,000 on August 14, 2015. (CCDA_STAY0000006 – CCDA_STAY0000009.)

- A withdrawal of $3,100,000 on September 22, 2015. (CCDA_STAY0000010 –CCDA_STAY0000013.)

- A withdrawal of $7,000,000 on February 22, 2016. (CCDA_STAY0000036 – CCDA_STAY0000041.)

c) Documents and Communications concerning the $15 million one-time transfer from FirstBank -3961 to BPPR -9458, including, without limitation, Documents sufficient to identify the recipient of such transfer and Documents concerning the purpose of the transfer.

d) Documents concerning any transfers of Pledged Hotel Taxes from the Tourism Company to the Commonwealth since April 2016.

e) Documents and Communications concerning the treatment, discussion, or presentation of the Hotel Taxes in Financial Statements, including, without limitation, (i) workpapers, engagement letters, tie outs, support for Financial Statements; (ii) the meaning of the line items for "Transfers" on pages nine and twelve in the Tourism Company's Financial Statements for the Fiscal Year ended June 30, 2016 (including, without limitation, identification of the transfers, whether any such transfers concerned Hotel Taxes, and the

disposition of such transferred funds); and (iii) whether Hotel Taxes were deposited in and/or withdrawn from the General Fund, CILE Puerto Rico 2016 Fund Hotel Development Corporation Fund, Slot Machines Operations Fund, and the Medical Tourism Company Fund listed on pages thirteen through fifteen of the Tourism Company's Financial Statements for the Fiscal Year ended June 30, 2016.

Dated: February 8, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ Roberto Cámara-Fuertes
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ Atara Miller
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
John J. Hughes, III (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com

***Attorneys for Ambac Assurance Corporation***

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
           rcasellas@cabprlaw.com
           dperez@cabprlaw.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
           adam.langley@butlersnow.com

***Attorneys for Financial Guaranty Insurance Company***

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
           mark.ellenberg@cwt.com
           bill.natbony@cwt.com
           thomas.curtin@cwt.com
           casey.servais@cwt.com

***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.***

**SEPULVADO, MALDONADO & COURET**

By: */s/ Albéniz Couret Fuentes*
Albéniz Couret Fuentes
(USDC-PR No. 222207)
304 Ponce de León Ave. Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: acouret@smclawpr.com

**REED SMITH LLP**

By: */s/ Jared S. Roach*
Jared S. Roach (admitted *pro hac vice*)
Luke A. Sizemore (admitted *pro hac vice)*
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: jroach@reedsmith.com
lsizemore@reedsmith.com

***Attorneys for The Bank of New York Mellon***