# **<u>EXHIBIT D</u>**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>       Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent<br><br>       Defendants. | PROMESA<br>Title III<br><br>Adv. Proc. No. 20-00005-LTS |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**DEFENDANTS' INITIAL DOCUMENT REQUESTS PURSUANT TO**
***ORDER REGARDING DISCOVERY IN CONNECTION WITH MOTIONS OF THE***
***COMMONWEALTH OF PUERTO RICO, BY AND THROUGH THE FINANCIAL***
***OVERSIGHT AND MANAGEMENT BOARD, PURSUANT TO BANKRUPTCY RULE***
***7056 FOR PARTIAL SUMMARY JUDGMENT DISALLOWING CLAIMS* (ECF NO. 129)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedures (the "**Federal Rules**"), applicable to this proceeding under Rules 9014, 7026 and 7034 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Defendants hereby serve this initial set of document requests pertaining to the above-captioned adversary proceeding (the "**HTA-Related Document Requests**," and each an "**HTA-Related Document Request**") in accordance with the *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, by and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims* (ECF No. 129, the "**Order**"),[2] and hereby request that the Plaintiff Financial Oversight and Management Board for Puerto Rico ("**FOMB**") as representative for the Commonwealth of Puerto Rico (the "**Commonwealth**"), and their respective officers, employees, and advisors, (i) provide any responses and objections in accordance with the schedule set by the Court, or by a date mutually agreed upon by counsel for Defendants and FOMB; and (ii) produce and make available for inspection and copying to the undersigned counsel all documents and communications requested below, in accordance with the definitions and instructions set forth below (the "**Definitions**" and the "**Instructions**," respectively) in accordance with the schedule set by the Court, or by a date mutually agreed upon by counsel for Defendants and the FOMB.

---

[2] Unless otherwise indicated, all ECF numbers referenced in the HTA Document Requests refer to the docket in Adv. Proc. No. 20-00005-LTS.

## **DEFINITIONS**

1.      All capitalized terms not defined herein have the definitions ascribed to them in Defendants' Opposition to Summary Judgment (ECF No. 94); Declaration of Casey J. Servais Pursuant to Fed. R. Civ. P. 56(d) (ECF No. 97); Defendants' Sur-Reply in Opposition to Summary Judgment (ECF No. 113); and/or Defendants' Response to Plaintiff's Objection to Relief Under Fed. R. Civ. P. 56(d) (ECF No. 114).  All capitalized terms used herein should be given their most expansive and inclusive interpretation unless otherwise expressly limited.

2.      "**Act 30 and 31 Revenues**" means revenue streams covered by Act No. 30-2013 (June 25, 2013) and Act No. 31-2013 (June 25, 2013), which are part of the HTA Pledged Revenues.

3.      "**Bond Documents**" means the Bond Resolutions, enabling acts, financing statements, supplemental resolutions, any other Resolutions relating to the HTA Bonds, and any other documents governing or otherwise related to the HTA Bonds, including any statutes, executive orders, or official memoranda governing the Excise Taxes.

4.      "**Bond Resolutions**" means (i) Resolution No. 68-18 (the "**1968 Resolution**") and (ii) Resolution No. 98-06 (the "**1998 Resolution**").

5.      "**BPPR**" means Banco Popular de Puerto Rico, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, trustees, and any other Person who acted on its behalf.

6.      "**Communication**" or "**Communications**" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral Communications, includes any document evidencing the date, participants, subject matter, and content of any such oral communication, including, but not limited to, mail, e-mail, facsimile, transcripts, minutes, notes, audio, video, electronic recordings, telephone records, and calendar entries.

7.      "**Document**" or "**Documents**" are intended to have the broadest possible meaning under Federal Rule 34 and mean any and all writings and recorded materials, or any kind, that are or have been in Your possession, custody or control, whether originals or copies.  Such writings include, but are not limited to, Communications, electronically stored information in any medium, such as emails, text messages, and instant messages, contracts, notes, drafts, interoffice memoranda, memoranda for files, letters, research materials, correspondence, logs, diaries, forms, bank statements, tax returns, card files, books of accounts, journals, ledgers, invoices, drawings, computer files, records, data, print-outs or tapes, reports, statistical components, studies, graphs, charts, minutes, manuals, pamphlets, or books of all nature and kind whether handwritten, types, printed, mimeographs, photocopies or otherwise reproduced, and tape recordings (whether for computer, audio or visual display) or other tangible things on which words, phrases, symbols or information are stored.

8.      "**Excise Taxes**" means (i) any excise taxes consisting, among other things, of taxes on gasoline, diesel, crude oil, partially finished and finished oil by-products, other hydrocarbon mixtures, or cigarettes, referenced in 13 L.P.R.A. § 31751; (ii) motor vehicle license fees referenced in 9 L.P.R.A. §§ 2021 & 5681; and (iii) any other excise taxes or fees allocated or assigned to HTA at any time under any statute.

9.      "**Flow of Funds**" or "**Flow**" means the path, including each and every deposit, credit, withdrawal, debit, or transfer, into or out of an account or designated Fund in the Treasury's accounting system, from their initial receipt or collection through and including the ultimate disposition, if any, of the funds.

10.      "**Fund**" means an amount of money or other revenues set aside for the purpose of carrying out a specific activity or to achieve certain objectives pursuant to laws, regulations, restrictions, or limitations and which constitute an independent fiscal and accounting entity, including accounts and designations created to keep record of the proceeds of the issuance of bonds

that may be authorized, or the fiscal and accounting entities referenced on page 4 of the letter dated March 13, 2020, from Elizabeth L. McKeen, Esq. to Defendants' counsel.

11.     "**Fund 278**" means the fund bearing that designation in the Treasury's accounting system, including any related subaccounts, as well as any fund (if any) that formerly bore that designation or that is a successor thereto.

12.     "**HTA**" means the Puerto Rico Highways and Transportation Authority, the entity known in Spanish as *Autoridad de Carreteras y Transportación de Puerto Rico*.

13.     "**HTA Accounts**" include any and all bank accounts, Funds, Fund designations or accounting designations that reflect deposits, withdrawals, transfer or the retention of Excise Taxes or HTA Pledged Revenues, including, without limitation, Fund 278 designations 278-0660000-781-2014, 278-0660000-993-2014, 278-0660000-782-2014, 278-0660000-994-2015, 278-0660000-081-2014, 278-0660000-00302014, 278-0660000-779-2014, 278-0660000-780-2014, 278-0660000-784-2015 and 278-0660000-785-2015 and bank accounts BPPR-5191, 9458, 9857, 0303, 6438, 6411 and 5116; Oriental -9874; and GDB-0006, 4276, 3466, 6048 and 9839.

14.     "**HTA Bonds**" means the bonds issued under the 1968 Resolution and the 1998 Resolution.

15.     "**HTA Pledged Revenues**" means (i) revenues derived from HTA's toll facilities (the "**Toll Revenues**") and (ii) the Excise Taxes.

16.     "**including**" or "**includes**" means "including but not limited to and without limitation," or "includes but is not limited to and without limitation."

17.     "**Person**" means a natural person or any corporation, partnership, association, joint venture, firm, trust, or other business enterprise or legal entity, and includes both the singular and the plural.

18.     "**PRIFAS**" means the Puerto Rico Integrated Financial Accounting System and any other accounting and fiscal control systems used by the Commonwealth, the Department of Treasury, and HTA.

19.     "**Resolutions**" means decisions or determinations of a deliberative or legislative body, or any subdivisions, entities, or instrumentalities thereof.

20.     "**Signatories**" means any and all Persons, individuals, entities, corporations, agencies, instrumentalities, or representatives thereof, who have signed or otherwise manifested their consent to a Document as a party, or on behalf of a party, to that Document.

21.     "**Treasury**" means the Puerto Rico Department of Treasury and each of its present or former board members, agents, representatives, and employees.

22.     "**TSA**" means the Treasury Single Account.

23.     "**You**" or "**Your**" refers to (1) the Financial Oversight and Management Board for Puerto Rico; and (2) the Commonwealth of Puerto Rico; and (3) their respective divisions, subdivisions, offices, departments, agencies, affiliates, and any current and former officials, officers, trustees, accountants, attorneys, employees, agents, advisors, consultants, experts, and independent contractors, assigns, and any Person or entity acting or purporting to act on their behalf.

## **INSTRUCTIONS**

1.     You are required to answer these HTA-Related Document Requests drawing upon all materials in Your possession, custody, or control, as well as any materials that are not in Your custody but are owned in whole or in part by You, and any materials that, pursuant to any understanding, express or implied, You may use, inspect, examine, or copy.  You must provide all information in response to an HTA-Related Document Request which is known to You, Your

agents, consultants employees, accountants, attorneys, or experts, or which appears in Your records.

2.      The following rules of construction shall apply to these HTA-Related Document Requests.

   a.      The terms "all" and "any," whenever used separately, shall be construed as "any and all" to encompass the greatest amount of responsive material.

   b.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any HTA-Related Document Request all responses that might otherwise be construed to be outside of its scope.

   c.      The term "including" shall always be construed to mean "including, but not limited to," or "including, without limitation" to encompass more than the specifically identified materials.

   d.      The present tense shall also include the past tense and vice versa.

   e.      The use of the singular form of any word includes the plural and vice versa.

3.      Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in these HTA-Related Document Requests.

4.      You are required to produce all non-identical copies and drafts of each document. The originals of all documents produced in copy form shall be made available for inspection upon request.

5.      Documents attached to each other in their original form should not be separated.

6.      If no information or documents responsive to a numbered paragraph are in Your possession, You are to indicate this in a written response.

7.      The fact that a document has or will be produced by another plaintiff, third party, or other party to these or related proceedings does not relieve You of the obligation to produce Your copy of the same document.

8.      If any document is withheld in whole or in part under claim of any privilege or work product or other immunity, then consistent with Fed. R. Civ. P. 26(b)(5), as applied to this proceeding by Bankruptcy Rule 7026, and PROMESA § 310, 48 U.S.C. § 2170, You are to provide a list of such documents identifying each such document for which any such privilege, work product, or other immunity is claimed, together with the following information:

      a.      the nature of the claim of privilege or immunity, including the statute, rule, or decision giving rise to the claim of privilege or immunity;

      b.      all facts relied upon in support of the claim of privilege or immunity;

      c.      all Persons or entities on whose behalf the privilege or immunity is claimed;

      d.      the type of document (*e.g.*, letter, memorandum, note, telegram, e-mail, chart, report, recording, etc.);

      e.      the subject matter (without revealing the information as to which privilege is claimed);

      f.      its date, author(s), sender(s), addressee(s), and recipient(s); and

      g.      the paragraph(s) of these HTA-Related Document Requests to which production of the document is responsive.

You are further directed to describe the factual and legal basis for each claim of privilege or immunity in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege or immunity, and to produce all documents or portions thereof not subject to Your objection.

9.      If any document requested was, but is no longer, in Your possession, custody, or control, identify the document and state what disposition was made of it and the date or dates upon which such disposition was made, and additionally, produce all documents relating to the disposition of such document.

10.     If You object to any HTA-Related Document Request (or portion thereof), state the reason for the objection in detail and respond to that HTA-Related Document Request as narrowed by Your objection.

11.     Unless otherwise specified in a specific request, electronically stored information ("ESI") as that term is used in Fed. R. Civ. P. 34 should be produced as follows:

a.     TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format.  Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

b.     Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

c.     Text Files.  Extracted full text in the format of document level text files shall be provided in a separate folder, one text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number). Text from redacted pages will be produced in OCR format rather than extracted text.

d.     Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent record) should be preserved.

e.     Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters:  Comma       ¶       ASCII       character       (020) Quote þ ASCII character (254).

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

- A complete list of metadata fields is included in paragraph 11(f).

f.    Metadata.  For all ESI records, provide all of the following metadata fields: Custodian, Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Record Type, Master Date, SentOn Date and Time, Received Date and Time, Create Date and Time, Last Modified Date and Time, Parent Folder, Author, To, From, CC, BCC, Subject/Title, Original Source, Native Path, File Extension, File Name, File Size, Full Text, and page count.

g.    Spreadsheets.  For spreadsheets that were originally created using common, off-the-shelf software (*e.g.*, Microsoft Excel), produce the spreadsheets in native format and, in addition, in TIFF format.  Native file documents must be named per the Beginning Bates Number.  The full path of the native file must be provided in the .dat file.

12.    Hard copy documents shall be produced as follows:

a.    TIFFs.  Black and white images shall be delivered as single page Group IV TIFF image files.  Color images must be produced in .jpeg format.  Image file names should not contain spaces or special characters and must have a unique file name, *i.e.*, Beginning Bates Number.  Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

b.      Unique IDs.  Each image should have a unique file name and should be named with the Bates number assigned to it.

c.      OCR.  High-quality document level OCR text files should be provided in a separate folder, one text file per document.  Each text file should match the respective TIFF filename (Beginning Bates Number).  For redacted documents, provide the re-OCR'd version.

d.      Database Load Files/Cross-Reference Files.  Records should be provided in a format compatible with the following industry standards.

- The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

- The data file (.dat) should contain all the fielded information that will be loaded into the database.

- The first line of the .dat file must be a header row identifying the field names.

- The .date file must use the following *Concordance* default delimiters: Comma ¶ ASCII character (020) Quote þ ASCII character (254).

- Date Fields should be provided in the format mm/dd/yyyy.

- Date and time fields must be two separate fields.

- If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

- An OCRPATH field must be included to provide the file path name of the extracted text file(s).

- Each text file must be named after the Beginning Bates Number.

- For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

- Beginning Bates Number and Ending Bates Number should be two separate fields.

-11-

e.      Unitizing of Records.  In scanning hard copy records, distinct records should not be merged into a single record, and single records, should not be split into multiple records (*i.e.*, hard copy records should be logically unitized).

f.      Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent record) should be preserved.

g.      Objective Coding Fields.  The following objective coding fields should be provided:  Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source-Custodian, and page count.

13.    These HTA-Related Documents Requests are continuing in nature.  If any information or document responsive to an HTA-Related Document Request herein is not presently in Your possession, custody, or control but subsequently becomes available, is discovered or is created, or comes into Your possession, custody, or control, You have a continuing obligation pursuant to Fed. R. Civ. P. 26(e), and are hereby requested, to supplement Your responses to these HTA-Related Document Requests within a reasonable period of time after it comes into Your possession, custody, or control.

14.    These requests are to be construed as not seeking or requiring the production of documents previously produced within the limited discovery ordered by the Court in the context of prior lift stay proceedings relating to the Excise Taxes and Pledged Revenues.

## **RELEVANT TIME PERIOD**

Unless otherwise specified, the relevant time period for these requests is January 1, 2014 to the present.

## HTA-RELATED DOCUMENT REQUESTS

### REQUEST NO. 1

All Documents governing the terms of the HTA Bonds, including all versions of the Bond Resolutions, and documents identifying the Signatories to and/or those bound by the Bond Resolutions, from creation to present.  This request includes, without limitation, (a) all versions of Bond Resolutions relating to HTA Bonds; (b) all amendments and supplements to such Bond Resolutions; (c) any other Resolutions adopted in connection with the HTA Bonds; (d) any Resolution, act, approval or decision of HTA's Board of Directors issued concerning:  (1) the authority of the Executive Director to enter into the Security Agreement, dated as of February 7, 2002, or (2) any security interest, pledge or other property interest in respect of the HTA Bonds; (e) all closing binders relating to all of the HTA Bonds (and any amendments and supplements thereto); and (f) all Documents identifying the Signatories to and/or those bound by such Bond Resolutions or Resolutions.

### REQUEST NO. 2

All Documents governing the Flow of Excise Taxes and HTA Pledged Revenues following their collection by the Commonwealth, including all Documents governing Fund 278 and its sub-accounts, and any other accounts or designated Funds (including the TSA) into or through which such funds are or have been transferred (including the HTA Accounts), including without limitation contracts, side agreements, security agreements, account control agreements, account opening documents, account statements, deeds of trust on accounts, or supplements thereto, and identifying the Signatories to and/or those bound by such agreements, from creation of any such account, Fund, Fund sub-account and Fund designation to present.  This request includes, without limitation, (a) all such Documents governing or describing the process of deposit of Excise Taxes and HTA Pledged Revenues to any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts); (b) all such Documents governing or describing the process of retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues; (c) all Documents governing or describing the process of transfer of Excise Taxes and HTA Pledged Revenues to and from any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts); (d) all Documents governing or describing the process of such retentions and deposits, withdrawals, and transfers to and from Fund 278 and its sub-accounts; and (e) all Documents relating to the opening or establishment of any account, Fund, Fund sub-account and Fund designation into which or from which Excise Taxes and HTA Pledged Revenues was deposited, withdrawn or transferred (including the HTA Accounts).

### REQUEST NO. 3

All records reflecting the actual Flow of Funds into and out of Fund 278 and its subaccounts, and any other accounts into which Excise Taxes and HTA Pledged Revenues have been deposited (including the HTA Accounts) from January 2014 to the present.  This request includes, without limitation, (a) records reflecting the actual deposit of Excise Taxes and HTA Pledged Revenues to any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts); (b) records reflecting the actual retention by the Commonwealth of Excise Taxes and HTA Pledged Revenues; (c) records reflecting the actual transfer of Excise Taxes and HTA Pledged Revenues to and from any bank account, Fund, Fund sub-account and Fund designation (including the HTA Accounts); (d) any instructions regarding use or transfer of such funds; (e) any refusal by Treasury to

sign any SC-735 vouchers or other withdrawal/transfer Documents relating to Fund 278 and its sub-accounts approved by HTA or any amendments or changes requested by Treasury; (f) records concerning transfers from Commonwealth bank account BPPR-9458; (g) records concerning the Flow of Funds for Act 30 and 31 Revenues; (h) records reflecting the balance from January 2014 to present of Fund 278 and its specific subaccounts, and any changes, increases, and decreases of such balances and the reasons therefor; (i) Documents attaching, and constituting instructions or policies for attaching Fund, account, Fund 278 sub-account and DeptID number designations such as 278-660000 to received Excise Taxes and HTA Pledged Revenues; (j) Documents and other Commonwealth records that can be generated using the PRIFAS accounting system or other accounting systems such as ledgers, reports, cash flow statements, statements, Fund accreditation reports and reconciliations relating to the Flow of Excise Taxes and HTA Pledged Revenues, including the reporting of the Flow of such funds; (k) account statements of any account or Fund or Fund sub-account or designation into which Excise Taxes and HTA Pledged Revenues were deposited, transferred or in which such funds were retained (including the HTA Accounts); (l) communications with auditors regarding the Flow of Excise Taxes and HTA Pledged Revenues or any bank account, Fund, Fund designation or Fund sub-account into or from which Excise Taxes and HTA Pledged Revenue were deposited, withdrawn, transferred or retained (including the HTA Accounts), including auditor workpapers and supporting documentation related to the presentation of HTA Pledged Revenues in Commonwealth and HTA audited financial statements; and (m) records reflecting the budget and expenditure of any Excise Taxes and HTA Pledged Revenues.

## REQUEST NO. 4

All Documents concerning the Treasury's role in the approval of transfers to HTA and the extent to which excise tax revenues were or have been made available to HTA.  The request includes, without limitation, (a) any instructions, approvals or denials regarding any transfers of Excise Taxes; (b) any instructions, approvals or denials of requested transfers of Excise Taxes; (c) policies and controls concerning transfers of Excise Taxes; and (d) the delegation of any purported authority over transfer activity relating to Excise Taxes.

## REQUEST NO. 5

All policies and procedures related to the Flow of Excise Taxes and HTA Pledged Revenues pursuant to the Bond Documents.  This request includes, without limitation, (a) policies, procedures, and controls reflecting instructions relating to the use or transfer of any of such funds, from creation to present; (b) policies, procedures, and controls regarding the collection of Excise Taxes and HTA Pledged Revenues, from creation to present; (c) policies, procedures, and controls regarding the retention by the Commonwealth of such funds, from creation to present; (d) policies, procedures, and controls regarding the reporting of the Flow of Excise Taxes and HTA Pledged Revenues, from creation to present; (e) policies, procedures, and controls regarding the recording and accounting of Excise Taxes and HTA Pledged Revenues from creation to present, including charts of accounts (including HTA Accounts), PRIFAS reports, ledgers, policies, procedures and supporting documentation used in the presentation and treatment of the HTA Pledged Revenues; (f) Documents sufficient to identify the individuals responsible for policies and procedures related to the Flow of Excise Taxes and HTA Pledged Revenues, including those overseeing or approving transactions involving the reporting, recording, transfer and accounting for any of such funds; (g) policies and procedures regarding, and Documents  related to, the "HTA Pass Throughs" and "Non-General Fund Pass Throughs" for HTA and the Excise Taxes identified in TSA Cash Flow Reports for the period

beginning in July 2017 and continuing through June 2020; (h) policies and procedures regarding, and Documents reflecting and related to, the presentation of Excise Taxes as "General Fund Collections" for the period July 2020 to present, including all documents substantiating the reason and justification for such change in presentation; (i) policies and procedures regarding the presentation of HTA Pledged Revenues in the audited financial statements of the Commonwealth and HTA for fiscal years 2014 to present, including auditor workpapers and supporting documentation; (j) policies and procedures related to the Commonwealth and HTA's implementation of Governmental Accounting Standards Board Statement No. 54 as to the HTA Pledged Revenues, for fiscal years 2014 to present, including documents evidencing the manner of such implementation; (k) policies and procedures relating to the accounting and fiscal control of restrictions on monies in the TSA, including the HTA Pledged Revenues and federal funds, for fiscal years 2014 to present; (l) policies and procedures relating to the "Special Revenue Fund" for HTA identified on Page 11 of the Board's December 17, 2020 presentation styled Creditor Mediation Cash Support Materials, including the materials related to Footnote 4 therein; (m) policies and procedures pertaining to the Commonwealth's ability or obligation to transfer money to HTA upon request; and (n) auditor workpapers related to the testing of the above-identified policies and procedures.

Dated: February 8, 2021
      New York, New York


CASELLAS ALCOVER & BURGOS P.S.C.    CADWALADER, WICKERSHAM & TAFT LLP


By:/s/ *Heriberto Burgos Pérez*     By:/s/ *Howard R. Hawkins, Jr.*
    Heriberto Burgos Pérez          Howard R. Hawkins, Jr.*
    USDC-PR 204809             Mark C. Ellenberg*
    Ricardo F. Casellas-Sánchez      William J. Natbony*
    USDC-PR 203114             Thomas J. Curtin*
    Diana Pérez-Seda              Casey J. Servais*
    USDC-PR 232014             200 Liberty Street
    P.O. Box 364924            New York, NY 10281
    San Juan, PR 00936-4924      Telephone:  (212) 504-6000
    Telephone:  (787) 756-1400     Facsimile:   (212) 504-6666
    Facsimile:   (787) 756-1401     Email:       howard.hawkins@cwt.com
    Email:       hburgos@cabprlaw.com               mark.ellenberg@cwt.com
               rcasellas@cabprlaw.com               bill.natbony@cwt.com
               dperez@cabprlaw.com               thomas.curtin@cwt.com
                                 casey.servais@cwt.com

    *Attorneys for Assured Guaranty Corp.*
    *and Assured Guaranty Municipal Corp.*     * Admitted *pro hac vice*

                                 *Attorneys for Assured Guaranty Corp. and*
                                 *Assured Guaranty Municipal Corp.*

ADSUAR MUNIZ GOYCO
SEDA & PEREZ-OCHOA PSC

WEIL, GOTSHAL & MANGES LLP


By:/s/ Eric Perez-Ochoa
    Eric Pérez-Ochoa
    USDC-PR No. 206314
    E-mail:    epo@amgprlaw.com


By:/s/Luis A. Oliver-Fraticelli
    Luis A. Oliver-Fraticelli
    USDC-PR NO. 209204
    E-mail:    loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Tel.:    (787) 756-9000
    Fax:    (787) 756-9010

*Attorneys for National Public Finance
Guarantee Corp.*

By:/s/ Robert Berezin
    Jonathan Polkes*
    Gregory Silbert*
    Robert Berezin*
    Kelly Diblasi*
    Gabriel A. Morgan*
    767 Fifth Avenue
    New York, New York 10153
    Tel.:    (212) 310-8000
    Fax:    (212) 310-8007
    Email:    jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

* admitted *pro hac vice*

*Attorneys for National Public Finance
Guarantee Corp.*

FERRAIUOLI LLC

By:/s/ Roberto Cámara-Fuertes
    ROBERTO CÁMARA-FUERTES
    USDC-PR NO. 219002
    E-mail:    rcamara@ferraiuoli.com


By:/s/ Sonia Colón
    SONIA COLÓN
    USDC-PR NO. 213809
    E-mail:    scolon@ferraiuoli.com

    221 Ponce de Leon Ave., 5th Floor
    San Juan, PR 00917
    Tel.:    (787) 766-7000
    Fax:    (787) 766-7001

*Counsel for Ambac Assurance Corporation*

MILBANK LLP

By:/s/ Atara Miller
    DENNIS F. DUNNE*
    ATARA MILLER*
    GRANT R. MAINLAND*
    JOHN J. HUGHES*
    55 Hudson Yards
    New York, New York 10001
    Tel.:    (212) 530-5000
    Fax:    (212) 530-5219
    Email:    ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com

*admitted *pro hac vice*

*Counsel for Ambac Assurance Corporation*

ARENT FOX LLP


By: /s/ *David L. Dubrow*
     DAVID L. DUBROW*
     MARK A. ANGELOV*
     1301 Avenue of the Americas
     New York, New York 10019
     Tel.:       (212) 484-3900
     Fax:       (212) 484-3990
     Email:     david.dubrow@arentfox.com
                  mark.angelov@arentfox.com


By: /s/ Randall *A. Brater*
     RANDALL A. BRATER*
     1717 K Street, NW
     Washington, DC 20006
     Tel.:       (202) 857-6000
     Fax:       (202) 857-6395
     Email:     randall.brater@arentfox.com

*admitted *pro hac vice*

*Counsel for Ambac Assurance Corporation*

-19-

REXACH & PICÓ, CSP

BUTLER SNOW LLP


By:/s/ María E. Picó
    María E. Picó
    USDC-PR 123214
    802 Ave. Fernández Juncos
    San Juan PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    E-mail: mpico@rexachpico.com

*Attorneys for Financial Guaranty Insurance
Company*

By:/s/ Martin A. Sosland
    Martin A. Sosland*
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    E-mail: martin.sosland@butlersnow.com

    James E. Bailey III*
    Adam M. Langley*
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
        adam.langley@butlersnow.cow

*admitted pro hac vice*

*Attorneys for Financial Guaranty
Insurance Company*