# United States Court of Appeals
## For the First Circuit

---

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
RICO, AS REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO ELECTRIC
POWER AUTHORITY (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO, AS REPRESENTATIVE FOR THE PUERTO RICO
SALES TAX FINANCING CORPORATION, A/K/A COFINA; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO; THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

Debtors.

---

No. 20-1930

ASSURED GUARANTY CORPORATION; ASSURED GUARANTY MUNICIPAL
CORPORATION; AMBAC ASSURANCE CORPORATION; THE FINANCIAL GUARANTY
INSURANCE COMPANY; NATIONAL PUBLIC FINANCE GUARANTEE
CORPORATION,

Movants, Appellants,

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO; THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY,

Debtors, Appellees,

v.

PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,

Respondent, Appellee,

OFFICIAL COMMITTEE OF UNSECURED CREDITORS; AMERINATIONAL
COMMUNITY SERVICES, LLC, as servicer for the GDB Debt Recovery
Authority; CANTOR-KATZ COLLATERAL MONITOR LLC, as collateral
monitor for the GDB Debt Recovery Authority,

Interested Parties, Appellees.

———————————

No. 20-1931

ASSURED GUARANTY CORPORATION; ASSURED GUARANTY MUNICIPAL
CORPORATION; AMBAC ASSURANCE CORPORATION; FINANCIAL GUARANTY
INSURANCE COMPANY; U.S. BANK TRUST NATIONAL ASSOCIATION, as
successor Trustee,

Movants, Appellants,

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE FOR THE COMMONWEALTH OF PUERTO RICO,

Debtor, Appellee,

v.

PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY,

Respondent, Appellee,

BACARDI INTERNATIONAL LIMITED; BACARDI CORPORATION; DESTILERIA
SERRALLES, INC.; OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

Interested Parties, Appellees.

———————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain, U.S. District Judge*]

———————————

---

* Of the Southern District of New York, sitting by
designation.

Before

Lynch, Lipez, and Thompson,
Circuit Judges.

———————————

Neal Kumar Katyal, with whom Sean Marotta, Mitchell P. Reich, Reedy C. Swanson, Nathaniel A.G. Zelinsky, and Hogan Lovells US LLP were on brief, for appellants Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company.

Atara Miller, with whom Dennis F. Dunne, Grant R. Mainland, John J. Hughes, III, Jonathan Ohring, Milbank LLP, Roberto Cámara-Fuertes, and Ferraiuoli LLC were on brief, for appellant Ambac Assurance Corporation.

Mark C. Ellenberg, Howard R. Hawkins, Jr., William J. Natbony, Thomas J. Curtin, Casey H. Servais, Cadwalder, Wickersham & Taft, Heriberto Burgos Pérez, Ricardo F. Casella-Sánchez, Diana Pérez-Seda, and Casellas Alcover & Burgos P.S.C. on brief, for appellants Assured Guaranty Corp. and Assured Guaranty Municipal Corp.

Gregory Silbert and Weil, Gotshal & Manges LLP on brief for appellant National Public Finance Guarantee Corp.

María E. Picó, Rexach & Pico, CSP, Martin A. Sosland, Jason W. Callen, and Butler Snow LLP on brief for appellant Financial Guaranty Insurance Company.

Ronald J. Silverman, Michael C. Hefter, Hogan Lovells US LLP, Eric A. Tulla, Iris J. Cabrera-Gómez, and Rivera, Tulla and Ferrer, LLC on brief for appellant U.S. Bank Trust National Association.

Michael T. Mervis and Martin J. Bienenstock, with whom Timothy W. Mungovan, John E. Roberts, Elliot R. Stevens, Adam L. Deming, Michael A. Firestein, Lary Alan Rappaport, Jeffrey W. Levitan, Mark D. Harris, Margaret A. Dale, Ehud Barak, David A. Munkittrick, Daniel D. Desatnik, and Proskauer Rose LLP were on brief, for appellee Financial Oversight and Management Board for Puerto Rico.

Arturo J. García-Solá, with whom Alejandro José Cepeda-Díaz, Nayuan Zouairabani, and McConnell Valdes LLC were on brief, for interested party AmeriNational Community Services, LLC.

Elizabeth L. McKeen, with whom Ashley M. Pavel, John J. Rapisardi, Peter Friedman, and O'Melveny & Myers LLP were on brief, for appellee Puerto Rico Fiscal Agency and Financial Advisory Authority.

Luc A. Despins, with whom Paul Hastings LLP was on brief, for interested party Official Committee of Unsecured Creditors.

Douglas S. Mintz, with whom Douglas I. Koff, Abbey Walsh, Schulte, Roth & Zabel, Robert M. Loeb, Sarah H. Sloan, Peter Amend,

and Orrick, Herrington & Sutcliffe LLP were on brief, for
interested party Cantor-Katz Collateral Monitor LLC.

    Laura E. Appleby, Kyle R. Hosmer, Faegre Drinker Biddle &
Reath LLP, and Kevin Carroll, on brief for amicus curiae Securities
Industry and Financial Markets Association.

————————

March 3, 2021

————————

**LYNCH**, **Circuit Judge**.   These companion cases from the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") Title III court in Puerto Rico involve bonds issued by the Puerto Rico Highways and Transportation Authority ("HTA") and the Puerto Rico Infrastructure and Financing Authority ("PRIFA"). Appellants Ambac Assurance Corporation, Assured Guaranty Corporation, Assured Guaranty Municipal Corporation, and Financial Guaranty Insurance Company (collectively, the "Monolines") had insured hundreds of millions of dollars of these HTA and PRIFA bonds against default.   HTA and PRIFA defaulted on these bonds in 2015, causing the Monolines to make payments to their insureds. As a result, the Monolines brought claims against Puerto Rico, HTA, and PRIFA.   In 2017, Puerto Rico and HTA filed voluntary petitions to begin Title III proceedings under PROMESA, triggering an automatic stay of certain claims against them pursuant to 11 U.S.C. § 362(a) as incorporated by PROMESA.  See 48 U.S.C. §§ 2161-2177.  In 2020, the Monolines amended their earlier 2019 petitions to the Title III court for relief from the automatic stay under 11 U.S.C. § 362(d) also as incorporated by PROMESA.  See id.  The Title III court denied these petitions, and the Monolines now appeal from this ruling.  We hold that the Title III court did not abuse its discretion in denying relief from the § 362 stay.

- 5 -

## I. Facts and Procedural History

A. <u>PRIFA Bonds</u>

In 1988, Puerto Rico established PRIFA to facilitate "[t]he construction, rehabilitation, acquisition, repair, preservation and replacement of the infrastructure of the Commonwealth."  <u>See</u> P.R. Laws Ann. tit. 3, § 1901.  Puerto Rico funded PRIFA in part using proceeds from excise taxes on rum (the "Rum Excise Taxes") produced in the Commonwealth and exported to the United States.[1]  PRIFA's Enabling Act says that some portion of these excise taxes "shall be covered into a Special Fund to be maintained by or on behalf of [PRIFA]."  <u>Id.</u> § 1914.

PRIFA is authorized to issue bonds and has done so.  <u>Id.</u> § 1906(l).  To repay its bonds, it can pledge "all or any portion of the federal excise taxes or other funds which should have been transferred by the Commonwealth to [PRIFA]."  <u>Id.</u> § 1906(m).  If PRIFA pledges funds it receives from the Commonwealth to repay its bonds, the pledge is subject to article VI, section 8 of Puerto Rico's Constitution.  <u>See</u> <u>id.</u> § 1907(a).  Section 8 says that if Puerto Rico's available revenues cannot meet the appropriations it has made in a given year, it must first pay its public debt before

---

[1]    The United States imposes an excise tax on rum produced in Puerto Rico and sold in the United States.  The proceeds from this tax are "covered into the treasury of Puerto Rico."  <u>See</u> 26 U.S.C. § 7652(a)(3).

making "other disbursements . . . in accordance with the order of
priorities established by law." P.R. Const. art. VI, § 8.  Puerto
Rico is not liable for PRIFA's bonds.  P.R. Laws Ann. tit. 3,
§ 1910.

PRIFA issued bonds in 1988 under a trust agreement.[2] It
agreed to pay the principal and interest on the bonds using Pledged
Revenues.  The trust agreement defines Pledged Revenues as "Special
Tax Revenues and any other moneys that have been deposited to the
credit of the Sinking Fund."  "Special Tax Revenues" are "the [Rum
Excise Taxes] deposited to the credit of the Puerto Rico
Infrastructure fund pursuant to the [PRIFA Enabling Act]."  The
Sinking Fund is a series of accounts created by the trust agreement
to house the money used to make payments on PRIFA's bonds.[3]

B. HTA Bonds

In 1965, Puerto Rico established HTA to construct,
operate, and manage the Commonwealth's transit and transportation
facilities.  See id. tit. 9, §§ 2001-2035.  To fund its operations,
HTA collects tolls (the "Toll Revenues").  Id. § 2004.  Puerto
Rico has also passed laws allocating certain taxes and fees to HTA

---

[2]     U.S. Bank currently serves as the indenture trustee.
Along with the Monolines, it is an appellant in the litigation
concerning the PRIFA bonds.

[3]     The term "sinking fund" generally describes "[a] fund
consisting of regular deposits that are accumulated with interest
to pay off a long-term corporate or public debt."  Fund, Black's
Law Dictionary (11th ed. 2019).

- 7 -

(the "HTA Allocable Revenues").  See id. §§ 2021, 5681-5682 (motor
vehicle license fees); id. tit. 13, §§ 31626, 31751(a)(1)
(gasoline, gas oil, crude oil, and diesel oil excise taxes); id.
§§ 31625, 31751(a)(4) (cigarette tax).

Like PRIFA, HTA is authorized to and has issued bonds.
Id. tit. 9, § 2004(l).  It can secure its bonds with revenue it
generates and can pledge the "proceeds of any tax or other funds
which may be made available to [HTA] by the Commonwealth" to pay
the principal and interest on its bonds.  Id.  Again like PRIFA,
if HTA pledges funds made available to it by the Commonwealth to
repay its bonds, the pledge is subject to article VI, section 8 of
Puerto Rico's Constitution.  Id.  Puerto Rico is not liable for
HTA's bonds.  Id. § 2012(h).

HTA issued bonds under general bond resolutions it
adopted in 1968 and 1998.  Approximately $815 million in 1968 bonds
and $3.36 billion in 1998 bonds remain outstanding.  Under the
resolutions, HTA agreed to deposit the Toll Revenues and HTA
Allocable Revenues into sinking funds (the "Resolution Funds") and
to use those funds to service its debt.  The accounts were to be
held "in trust . . . subject to a lien and charge in favor of the
holders of the bonds."

C. Puerto Rico's Debt Crisis and PROMESA

In November 2015, the Governor of Puerto Rico issued an
administrative bulletin ordering Puerto Rico's Treasury Secretary

to stop transferring the HTA Allocable Revenues to HTA and the Rum
Excise Taxes to PRIFA.   In April 2016, Puerto Rico enacted the
Puerto Rico Emergency Moratorium and Financial Rehabilitation Act.
2016 P.R. Laws Act 21.   Under this law, the Governor issued a
series of additional administrative bulletins preventing HTA and
PRIFA from making certain payments on their debt.

     The Monolines had insured PRIFA and HTA bonds against
default.   After PRIFA and HTA defaulted on their bonds, the
Monolines began making payments to the bondholders.   They brought
suit in federal district court in Puerto Rico challenging the
Governor's executive orders and attempting to force PRIFA and HTA
to make payments on their debt.   See Assured Guar. Corp. v. García-
Padilla, No. 3:16-cv-01037 (D.P.R. filed Jan. 7, 2016).

     In 2016, Congress enacted PROMESA to help Puerto Rico
"achieve fiscal responsibility and access to the capital markets."
48 U.S.C. § 2121(a).   Title I of PROMESA created the Financial
Oversight and Management Board ("FOMB") to approve fiscal plans
and budgets for Puerto Rico.   See id. §§ 2121, 2141-2142.   Title
III of PROMESA incorporated many sections of the Bankruptcy Code
and established a procedure for Puerto Rico and its
instrumentalities to restructure their debt.   Id. §§ 2161-2177.

     Upon enactment, PROMESA triggered a temporary stay of
certain actions, including the Monolines' suit in federal court,
against Puerto Rico and its instrumentalities.   See id. § 2194(b).

- 9 -

Some of the Monolines, along with some HTA bondholders,
unsuccessfully sought relief from the PROMESA stay as it applied
to claims related to HTA bonds.  See Peaje Invs. LLC v. García-
Padilla, 845 F.3d 505, 514, 516 (1st Cir. 2017).

The PROMESA stay expired on May 1, 2017.  See In re Fin.
Oversight & Mgmt. Bd. for P.R., 914 F.3d 694, 721 (1st Cir. 2019).
The next day, the Monolines filed additional suits in federal court
in Puerto Rico and the District of Columbia seeking payment on the
PRIFA and HTA bonds.  See Ambac Assurance Corp. v. Commonwealth of
Puerto Rico, No. 3:17-cv-01568 (D.P.R. filed May 2, 2017 and stayed
May 17, 2017); Ambac Assurance Corp. v. U.S. Dep't of Treasury,
No. 1:17-cv-00809 (D.D.C. filed May 2, 2017 and stayed May 25,
2017).

D. Title III Proceedings

On May 3, 2017, FOMB, on behalf of Puerto Rico, began
PROMESA Title III proceedings in the United States District Court
for the District of Puerto Rico.  See 48 U.S.C. § 2164(a).  On May
21, 2017, FOMB also petitioned for Title III relief on behalf of
HTA.  The filing of these petitions triggered a new stay of claims
against Puerto Rico and HTA.  See 11 U.S.C. §§ 362, 922; 48 U.S.C.
§ 2161 (incorporating §§ 362 and 922 of the Bankruptcy Code).  No
party contests that the PRIFA actions are also stayed.

The Monolines continued to pursue their claims before
the Title III court.  In an adversary proceeding related to the

HTA bonds, some Monolines argued that, under § 922(d) of the
Bankruptcy Code, the § 362 and § 922(a) stays did not apply to
them because their bonds were secured by "pledged special
revenues." See 11 U.S.C. § 922(d). The Title III court rejected
that argument on January 30, 2018, see In re Fin. Oversight & Mgmt.
Bd. for P.R., 582 B.R. 579, 596 (D.P.R. 2018), and this court
affirmed on March 26, 2019, see In re Fin. Oversight & Mgmt. Bd.
for P.R. ("Assured"), 919 F.3d 121, 129 (1st Cir. 2019), cert.
denied sub nom. Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd.
for P.R., 140 S. Ct. 855 (2020).

Another Monoline, Ambac, sought an injunction to compel
Puerto Rico to pay the HTA Allocable Revenues to HTA and a
declaration that Puerto Rico's diversion of funds away from HTA
bondholders was unconstitutional, preempted by PROMESA § 303,[4] and
forbidden by the Bankruptcy Code. The Title III court denied the
requested relief and dismissed Ambac's claims on February 27, 2018.
In re Fin. Oversight & Mgmt. Bd. for P.R., 297 F. Supp. 3d 269,
297 (D.P.R. 2018). On June 24, 2019, this court affirmed because
"the text of section 305 bars the Title III court from granting
Ambac . . . relief absent consent from the [FOMB] or unless the
Fiscal Plan so provides."[5] In re Fin. Oversight & Mgmt. Bd. for

---

[4]     PROMESA § 303(3) places some limits on Puerto Rico's
ability to pass laws or issue executive orders interfering with
creditors' rights.  See 48 U.S.C. § 2163.

[5]     PROMESA Section 305 says that "unless the [FOMB]

P.R., 927 F.3d 597, 602-03 (1st Cir. 2019) ("Ambac"), cert. denied
sub nom. Ambac Assurance Corp. v. Fin. Oversight & Mgmt. Bd. for
P.R., 140 S. Ct. 856 (2020).  In so holding, this court said that
"nothing in [its] holding . . . suggests that Ambac cannot seek
traditional stay relief pursuant to 11 U.S.C. § 362 and raise its
constitutional and statutory arguments in a separate action."  Id.
at 605.

On January 16, 2020, the Monolines moved to lift the
automatic stay of their claims related to the HTA bonds.  On
January 31, 2020, they made a similar motion related to the PRIFA
bonds.[6]  In both motions (collectively the "PRIFA and HTA Stay
Relief Motions"), they argued that they had a "colorable claim,"
as that term is used in Grella v. Salem Five Cent Savings Bank, 42
F.3d 26, 32-33 (1st Cir. 1994), to property held by Puerto Rico
and were entitled to relief from the stay under § 362(d).

Also in January 2020, FOMB began adversary proceedings
before the Title III court (the "Revenue Bond Adversary
Proceedings") by filing complaints objecting to proofs of claim as
to the HTA and PRIFA bonds the Monolines had filed.  The Monolines

consents or the plan so provides, the court may not, by any stay,
order, or decree, in the case or otherwise, interfere with . . .
(2) any of the property or revenues of the debtor; or (3) the use
or enjoyment by the debtor of any income-producing property."  48
U.S.C. § 2165.

[6]    These motions amended earlier 2019 motions requesting
relief from the § 362 stay.

had made many arguments in support of their proofs of claim, including that various executive orders, laws, and FOMB plans and budgets impairing the PRIFA and HTA bonds were either unconstitutional or preempted by PROMESA.  On March 10, 2020, the Title III court stayed the Revenue Bond Adversary Proceedings but allowed the parties to engage in limited summary judgment motion practice addressing certain counts.  It noted that some of the counts "may be determined by decisions of the Court in connection with the [PRIFA and HTA Stay Relief] Motions."

The Title III court ordered limited discovery on the Monolines' PRIFA and HTA Stay Relief Motions and held a hearing on June 4, 2020.  On July 2, 2020, it denied the PRIFA Stay Relief Motion "to the extent that it seeks stay relief or adequate protection with respect to the Rum Tax Remittances other than those Rum Tax Remittances that have been deposited into the Sinking Fund."  In re Fin. Oversight & Mgmt. Bd. for P.R., 618 B.R. 362, 380 (D.P.R. 2020) ("PRIFA Order I").  That same day, it denied the HTA Stay Relief Motion "to the extent it seeks stay relief or adequate protection with respect to liens or other property interests in Revenues other than those that have been deposited in the Resolution Funds."  In re Fin. Oversight & Mgmt. Bd. for P.R., 618 B.R. 619, 641 (D.P.R. 2020) ("HTA Order I").

In both orders, the Title III court explained that when "a movant seeks relief from the automatic stay to pursue remedies

with respect to assets allegedly securing obligations," the court does not "fully and finally adjudicate the merits of the parties' underlying claims of security or beneficial interests" when ruling on the motion.  Id. at 630; PRIFA Order I, 618 B.R. at 372. Instead, it first decides whether the movants have a "colorable claim" to property held by the debtor.  See HTA Order I, 618 B.R. at 630 (citing Grella, 42 F.3d at 33).

As to the PRIFA bonds, the Title III court held that "[t]he PRIFA Enabling Act does not . . . include any pledge of security" to the bondholders, PRIFA Order I, 618 B.R. at 374, and that the PRIFA trust agreement "imposes trust and pledge obligations in favor of PRIFA's bondholders only with respect to funds actually deposited into the Sinking Fund," id. at 377.  It rejected the Monolines' arguments that PRIFA is the equitable owner of a portion of the Rum Excise Taxes, that Puerto Rico holds these tax revenues in a fiduciary capacity for PRIFA and its bondholders, and that PRIFA has an equitable lien on the revenues.  Id. at 377-80.  It held that the Monolines "failed to establish that they have the requisite colorable claim" and "cannot meet their burden of showing cause for relief from the automatic stay."  Id. at 379-80.

On the HTA bonds, the Title III court held that the HTA Movants did not have colorable claims to statutory liens against HTA assets or to statutory liens encumbering Puerto Rico's assets.

See HTA Order I, 618 B.R. at 631-35.  The court also held that the
Monolines had no "colorable claim to equitable or beneficial
ownership interests in the Excise Taxes that have not been
transferred to HTA and deposited in the Resolution Funds," id. at
637, and rejected the Monolines' argument, based on language in
the HTA bond resolutions, that they had a colorable claim to a
security interest in the HTA Allocable Revenues, id. at 637-40.

At the end of both orders, the Title III court directed
the parties to "meet and confer and file a joint report as to their
positions on the nature, scope and scheduling of further
proceedings that they may believe are necessary in connection with"
the PRIFA and HTA Stay Relief Motions.  PRIFA Order I, 618 B.R. at
380; HTA Order I, 618 B.R. at 641.

On July 9, 2020, the parties filed a joint status report
telling the Title III court that they "were unable to reach any
agreements regarding next steps."  The Monolines took the position
that "additional proceedings are necessary before the Stay Relief
Motions will be fully resolved" because the Title III court had
not addressed whether there was "cause" to lift the stay pursuant
to 11 U.S.C. § 362(d)(1).  They argued that, because the First
Circuit had held in Ambac that PROMESA § 305 prevented the Title
III court from adjudicating some of the Monolines' constitutional
and statutory arguments without FOMB's consent, refusing to lift
the stay so that they could litigate in an alternate forum would

- 15 -

deny them due process.  In contrast, FOMB argued that it "desire[d] to proceed as scheduled with the [Revenue Bond] [A]dversary [P]roceedings" to avoid undue delay and that "[t]here is no reason for further proceedings" on the PRIFA and HTA Stay Relief Motions. The next day, the Title III court ordered the parties to brief "whether 'cause' exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay" in connection with the PRIFA and HTA Stay Relief Motions.[7]

On September 9, 2020, the Title III court denied the PRIFA and HTA Stay Relief Motions.  In re Fin. Oversight & Mgmt. Bd. for P.R., No. 17 BK 3567-LTS, 2020 WL 5430317, at *8 (D.P.R. Sept. 9, 2020) ("PRIFA and HTA Order II").  In addition to the reasons it gave in PRIFA Order I and HTA Order I, it gave two additional reasons for denying the Stay Relief Motions as to some of the Monolines' claims: (1) PROMESA § 305 and this court's observation in Ambac "do not provide a mandatory, standalone basis for the Court to lift the automatic stay at this juncture" given the ongoing Revenue Bond Adversary Proceedings, see id. at *5, and (2) the Sonnax factors, see Sonnax Indus. v. Tri Components

---

[7]    The court's order also addressed a stay relief motion related to bonds issued by the Puerto Rico Convention Center District Authority ("CCDA").  The CCDA Stay Relief Motion is not at issue in this appeal.  For that motion, in addition to briefing on whether "cause" existed under 11 U.S.C. § 362(d)(1), the Title III court ordered the parties to brief whether stay relief was warranted under 11 U.S.C. § 362(d)(2) and whether other litigation related to the CCDA bonds would remove the need for stay relief.

<u>Products Corp.</u>, 907 F.2d 1280, 1286 (2d Cir. 1990), do not weigh
in favor of lifting the stay, <u>see</u> <u>PRIFA and HTA Order II</u>, 2020 WL
5430317, at *6-8.

On the first basis, the court rejected the Monolines'
argument that "the automatic stay must be lifted to allow them to
assert causes of action under the Contracts, Due Process, and
Takings Clauses of the Constitution of the United States, and under
section 303 of PROMESA." <u>Id.</u> at *3.  It held that, because it was
unclear whether FOMB would even invoke PROMESA § 305 in the Revenue
Bond Adversary Proceedings[8] and because a grant of summary judgment
to FOMB in those proceedings would moot some of the Monolines'
claims, "the circumstances upon which [the Monolines'] due
process-related concerns are based . . . do not currently exist
and may never materialize." <u>Id.</u> at *5.  It said that it could
adjudicate the Revenue Bond Adversary Proceedings and, if FOMB is
unsuccessful, lift the stay. <u>Id.</u> at *5 & n.13.

On the second basis, the Title III court rejected the
Monolines' argument that there was "cause" to lift the stay under
§ 362(d). <u>Id.</u> at *6.  The court focused[9] on five of the twelve

---

[8]    The Title III court also noted that, even if FOMB did
invoke PROMESA § 305, the Monolines were arguing that FOMB had
partially waived its ability to do so by commencing the adversary
proceedings. <u>PRIFA and HTA Order II</u>, 2020 WL 5430317, at *5.

[9]    In a footnote, the court explained why other <u>Sonnax</u>
factors weighed against granting stay relief. <u>Id.</u> at *7 n.16.

Sonnax factors[10] the Monolines agreed were "[of] particular
relevance to the instant case." Id. This court has previously
held that the Sonnax factors "provide a helpful framework for
considering whether the Title III court should permit litigation
to proceed in a different forum." In re Fin. Oversight & Mgmt.
Bd. for Puerto Rico ("In re PREPA"), 899 F.3d 13, 23 (1st Cir.
2018).

The court began by explaining why four of these factors
-- whether stay relief would result in partial or complete
resolution of the issues, whether it would promote judicial
economy, whether it would interfere with the bankruptcy case, and
whether the parties were ready for trial in the other proceeding
-- weighed against granting stay relief. It said that "lifting
the automatic stay . . . would interfere with, and would not

---

[10]     The twelve Sonnax factors are: "(1) whether relief would
result in a partial or complete resolution of the issues; (2) lack
of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a
fiduciary; (4) whether a specialized tribunal with the necessary
expertise has been established to hear the cause of action; (5)
whether the debtor's insurer has assumed full responsibility for
defending it; (6) whether the action primarily involves third
parties; (7) whether litigation in another forum would prejudice
the interests of other creditors; (8) whether the judgment claim
arising from the other action is subject to equitable
subordination; (9) whether movant's success in the other
proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and
economical resolution of litigation; (11) whether the parties are
ready for trial in the other proceeding; and (12) impact of the
stay on the parties and the balance of harms." See Sonnax Indus.,
907 F.2d at 1286.

promote, the interests of judicial economy" because "it would
result in fragmented and possibly premature litigation of factual
and legal issues, many of which are currently before the Court in
the Revenue Bond Adversary Proceedings, that are indisputably
central to the restructurings of the Commonwealth and its
instrumentalities." PRIFA and HTA Order II, 2020 WL 5430317, at
*6. It also said that "the parties would not be ready for trial
in the alternate forum if the Court were to grant stay relief, as
Movants contemplate commencing new litigation if relief is
granted." Id.

   The last Sonnax factor discussed by the court was the
impact of the stay on the parties and the balance of harms. Id.
It held that the Monolines have "fail[ed] to demonstrate how the
hardship they would allegedly face from a continuation of the stay
renders them differently situated than virtually any other
creditor of a Title III debtor that is required to pursue its
claims exclusively in this Court." Id. at *7. It stated that,
"[t]o the extent that [the Monolines] have constitutionally
protected property interests derived from their statutory and
contractual rights, it would be unreasonable to conclude that those
rights alone provide a basis for stay relief" because, if that
were so, any unsecured creditor could "recast[] their claims in
constitutional terms and request[] stay relief," which would

"disrupt[] . . . and undermin[e] the fundamental purpose of . . .
[the] Title III proceedings." Id. at *7.

The Monolines appeal from the Title III court's denial
of the PRIFA and HTA Stay Relief Motions.

## II. Analysis

We review an order denying relief from a § 362 stay for
abuse of discretion.  See In re Fin. Oversight & Mgmt. Bd. for
Puerto Rico ("Gracia-Gracia"), 939 F.3d 340, 346 (1st Cir. 2019).
The Title III court abuses its discretion "if it ignores 'a
material factor deserving of significant weight,' relies upon 'an
improper factor' or makes 'a serious mistake in weighing proper
factors.'" Id. (quoting In re Whispering Pines Ests., Inc., 369
B.R. 752, 757 (B.A.P. 1st Cir. 2007)).

Section 362(d) of the Bankruptcy Code says:

> (d) On request of a party in interest and after
> notice and a hearing, the court shall grant
> relief from the stay provided under subsection
> (a) of this section, such as by terminating,
> annulling, modifying, or conditioning such
> stay--
>
>> (1) for cause, including the lack of
>> adequate protection of an interest in
>> property of such party in interest;
>>
>> (2) with respect to a stay of an act
>> against property under subsection (a) of
>> this section, if--
>>
>>> (A) the debtor does not have an
>>> equity in such property; and

               (B) such property is not necessary
               to an effective reorganization;

11 U.S.C. § 362(d).

As the Supreme Court recently explained in Ritzen, a stay relief motion "initiates a discrete procedural sequence, including notice and a hearing, and the creditor's qualification for relief turns on the statutory standard, i.e., 'cause' or the presence of specified conditions." Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 589 (2020). Stay relief motions "can have large practical consequences," like determining "whether a creditor can isolate its claim from those of other creditors" or "the manner in which adversary claims will be adjudicated." Id. at 590. Relief from stay proceedings are distinct from adversary proceedings and "do not involve a full adjudication on the merits of claims, defenses, or counterclaims." Grella, 42 F.3d at 32; see Ritzen, 140 S. Ct. at 589 ("Adjudication of a stay-relief motion . . . occurs before and apart from proceedings on the merits of creditors' claims . . . ."); H.R. Rep. No. 95-595, 344 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6300 (analogizing a motion for relief from the automatic stay to a preliminary injunction). "[T]he hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be quick." Grella, 42 F.3d at 31 (first citing

In re Vitreous Steel Products Co., 911 F.2d 1223, 1232 (7th Cir.
1990); and then citing 11 U.S.C. § 362(e))

          FOMB primarily argues that it was within the Title III
court's discretion to deny the PRIFA and HTA Stay Relief Motions
for the reasons it gave in PRIFA and HTA Order II.  According to
FOMB, the court's holding that there was no "cause" to lift the
stay provides an independent basis for the Title III court's
refusal to lift the stay and we do not need to decide whether the
Monolines have a "colorable claim," the subject of PRIFA Order I
and HTA Order I.

          Rather than challenging the Title III court's analysis
in PRIFA and HTA Order II directly, the Monolines argue that we
must reach the "colorable claim" issue.  In other words, they
assert that we must determine whether they have satisfied the
threshold for stay relief set forth in Grella: establishing "a
colorable claim to property of the estate."  42 F.3d at 33.
Collectively, they make three main arguments: (1) because § 362(d)
says that a court "shall" grant stay relief under certain
conditions, the Title III court had no discretion to deny their
motions if the Monolines had a colorable claim and § 362(d)'s
conditions were met; (2) FOMB is attempting to "forestall appellate
review" of the colorable claim issue; and (3) the Title III court's
"efficiency rationale [in PRIFA and HTA Order II] related only to
. . . stay relief on grounds other than a colorable claim to a

property interest or trust."   We hold that, because of the
reasoning in PRIFA and HTA Order II, there was no abuse of
discretion in the denials of the motions to lift the stay.

Turning to the Monolines' first argument, nothing in the
text of § 362(d) says that, if the Monolines have a colorable claim
and meet the other § 362(d) requirements, the Title III court must
lift the stay and allow the Monolines to pursue their claims in
another forum.   The statute says that the court must grant "relief
. . . such as by terminating, annulling, modifying, or conditioning
such stay."   11 U.S.C. § 362(d) (emphasis added); cf. Bragdon v.
Abbott, 524 U.S. 624, 639 (1998) (in interpreting text, "the use
of the term 'such as' confirms [that a] list is illustrative, not
exhaustive").   As a leading treatise explains, this language
underscores "the flexibility of section 362" and "permit[s] the
court to fashion the relief to the particular circumstances of the
case."   3 Collier on Bankruptcy ¶ 362.07 (16th ed. 2020).   For
example, the court could "permit[] the exercise of some but not
all of the party's rights."   Id.   Therefore, even assuming the
Monolines did have a colorable claim and the conditions of § 362(d)
were met, they would not be entitled to the exact relief they seek.
The Title III court retains discretion to institute other forms of
appropriate stay relief.

Whatever the conclusion of the Title III court as to whether certain asserted claims are colorable,[11] it would still have had to consider whether there was "cause" to lift the stay under § 362(d)(1) and/or whether the conditions of § 362(d)(2) were satisfied.[12] See Gracia-Gracia, 939 F.3d at 352; In re Old Cold, LLC, 602 B.R. 798, 824 (B.A.P. 1st Cir. 2019), aff'd sub nom. In re: Old Cold, LLC, 976 F.3d 107 (1st Cir. 2020).

There was no abuse of discretion in the court's consideration of the Sonnax factors to determine that there was no "cause" to lift the stay. See In re PREPA, 899 F.3d at 23 (holding that the Sonnax factors "provide a helpful framework" for

_____

[11]   Contrary to one of the Monolines' arguments at oral argument, Gracia-Gracia does not say that it is a per se "abuse of discretion to deny stay relief based on an erroneous adjudication of interests." Gracia-Gracia requires "the Title III court . . . to make at least a preliminary determination of the parties' respective property interests," Gracia-Gracia, 939 F.3d at 352, because "the parties' respective property interests . . . [are] 'material factor[s] deserving of significant weight' in deciding to grant or deny the requested stay relief," id. at 350 (quoting In re Whispering Pines Ests., Inc., 369 B.R. at 757). It is an abuse of discretion to "ignore[] 'a material factor deserving of significant weight,'" id. at 346 (emphasis added), and the court in Gracia-Gracia abused its discretion because it failed to consider the parties' property interests at all, id. at 348.

[12]   The Title III court did not specifically say that the Monolines were not entitled to relief under § 362(d)(2), but one of the Sonnax factors the court found "weighs heavily against stay relief," PRIFA and HTA Order II, 2020 WL 5430317, at *6, was whether there would be "lack of . . . interference with the bankruptcy case," Sonnax, 907 F.2d at 1286. In an earlier PROMESA case, this court noted that this Sonnax factor is "the functional equivalent of [one of] the prerequisites for stay relief under subsection 362(d)(2)." Gracia-Gracia, 939 F.3d at 350.

- 24 -

determining whether to grant stay relief under § 362(d)).  Indeed, in their briefs to us, the Monolines do not directly challenge the court's application of <u>Sonnax</u>.  We have already summarized the Title III court's <u>Sonnax</u> analysis and do not repeat it here.

In holding that there was no abuse of discretion, we emphasize that, as one of the Monolines recognized at oral argument, the Title III court will eventually decide on a final basis whether the Monolines have a property interest in the Revenue Bond Adversary Proceedings.[13]  This issue is being actively adjudicated in those proceedings.  Motions for summary judgment on some of the Monolines' claims have already been filed.  The Title III court held a hearing on these motions on September 23, 2020, and on January 20, 2021, it issued discovery orders at the Monolines' request.  In those proceedings, the Title III court will not and cannot treat its earlier, summary determination about whether the Monolines had a colorable claim as conclusive.  <u>See</u> <u>Grella</u>, 42 F.3d at 34.  It will have a more complete record on which to make its final determination and, if necessary, can "lift

_____

[13]    The Monolines also argue that the Title III court cannot grant them injunctive or declaratory relief on some of their claims under § 305 and <u>Ambac</u>.  But, as the Title III court held, it can take appropriate action to resolve this concern if it ever becomes relevant.  <u>See</u> <u>PRIFA and HTA Order II</u>, 2020 WL 5430317, at *5 ("[T]his Court has power to consider at an appropriate juncture whether resolution of a claim or defense . . . is subject to an unwaived section 305 impediment . . . and can take appropriate action with respect to the automatic stay.").

the stay . . . if [FOMB] is unsuccessful."  PRIFA and HTA Order
II, 2020 WL 5430317, at *5.  Under these circumstances, it was not
an abuse of discretion for the Title III court to conclude that
lifting the stay would "interfere with the bankruptcy case" and
would not serve "the interests of judicial economy and the
expeditious and economical resolution of litigation."  Sonnax, 907
F.2d at 1286.

       The Monolines' second argument -- that FOMB, by asking
us to affirm the denial of stay relief, is delaying resolution of
their claims[14] -- is related to two other Sonnax factors the Title
III court considered: "the impact of the stay on the parties" and
"whether the parties are ready for trial in the other proceeding."
Id.  The stay's impact on the Monolines is minimal given that, as
FOMB stated at oral argument, Puerto Rico has already put up $2.9
billion, more than the debt service on the PRIFA and HTA bonds
that the Monolines would be entitled to if their claims are
successful.[15]  The remedy the Monolines seek is also inconsistent

_____

       [14]   At oral argument and in a reply brief, one of the
Monolines expressed concern that FOMB is attempting to delay so
that it can later argue that the Monolines' claims are equitably
moot.  No issue of plan confirmation or equitable mootness is
before us.  See In re Fin. Oversight & Mgmt. Bd. for P.R. ("Pinto-
Lugo"), 2021 WL 438891, at *7-9 (1st Cir. Feb. 8, 2021).

       [15]   In its brief to us, one of the Monolines also states
that Puerto Rico has $9.5 billion in its central bank account and
that Puerto Rico and its instrumentalities have more than $20
billion in cash on hand.

with avoiding delay.  They argue that they want to lift the stay
so they can bring certain claims characterized as constitutional
claims anew in a separate court.  But lifting the stay so that
they can restart proceedings elsewhere will not be faster than
adjudicating their claims in the Revenue Bond Adversary
Proceedings, where motions for summary judgment have already been
filed.  It was not an abuse of discretion for the Title III court
to weigh "whether the parties are ready for trial in the other
proceeding" against them.  <u>PRIFA and HTA Order II</u>, 2020 WL 5430317,
at *6.

Turning to the Monolines' third argument, they say that
<u>PRIFA and HTA Order II</u> addressed only whether the stay should be
lifted as to the constitutional and statutory claims the Title III
court, under <u>Ambac</u>, would be barred from deciding if FOMB were to
successfully invoke PROMESA § 305.  Because of the second order's
limited scope, they argue, it cannot serve as a basis for the
court's decision not to lift the stay as to all of their claims.
But even so, almost all[16] of the reasons the Title III court gave

---

[16]    The only reasons that would be inapplicable to all of
the Monolines' claims are those related to PROMESA § 305.  <u>See,
e.g.</u>, <u>PRIFA and HTA Order II</u>, 2020 WL 5430317, at *6 (rejecting
the Monolines' argument that "only stay relief can result in . .
. complete resolution of the issues" in part because "[FOMB] . .
. has not contended to date that section 305 precludes
consideration of the issues that Movants have raised in the context
of their opposition to the summary judgment motion practice").
But most of the reasons the Title III court gives in its <u>Sonnax</u>
analysis are unrelated to PROMESA § 305.

for why the <u>Sonnax</u> factors did not weigh in favor of granting stay relief are applicable to all of the claims in the PRIFA and HTA Stay Relief Motions.  <u>See</u> <u>In re Hoover</u>, 828 F.3d 5, 8 (1st Cir. 2016) ("We may . . . affirm 'on any ground supported by the record . . . .'" (quoting <u>Doe</u> v. <u>Anrig</u>, 728 F.3d 30, 32 (1st Cir. 1984))). As the Title III court recognized, the Monolines' constitutional and statutory claims "plainly stem from their bond claims and, although styled as requests for declaratory relief, ultimately are vehicles for asserting rights to payment of amounts outstanding under various bond issues." <u>PRIFA and HTA Order II</u>, 2020 WL 5430317, at *7.  Lifting the stay as to any of the Monolines' claims would not serve the interests of judicial economy and would interfere with the bankruptcy proceedings for the same reasons related to the Revenue Bond Adversary Proceedings already described.   Compared to the Monolines' constitutional and statutory claims, the Monolines are no closer to trial on any of their other claims.  And the impact of the stay is similar.  There is no cause to lift it as to any of the Monolines' claims.

**III.**

<u>Affirmed</u>.