# **EXHIBIT A**

# Milbank

**JONATHAN OHRING**
*Associate*
55 Hudson Yards | New York, NY 10001-2163
T: 212.530.5147
JOhring@milbank.com | milbank.com

February 25, 2021

**VIA EMAIL**

| | |
|---|---|
| Margaret A. Dale, Esq. | Elizabeth L. McKeen, Esq. |
| Julia D. Alonzo, Esq. | Ashley Pavel, Esq. |
| Laura Stafford, Esq. | O'Melveny & Myers LLP |
| Proskauer Rose LLP | 610 Newport Center Drive, 17th Floor |
| Eleven Times Square | Newport Beach, CA 92660 |
| New York, NY 10036 | |

Re: Commonwealth Assets & Cash Rule 2004 Requests

Counsel:

I write on behalf of Ambac[1] in connection with its Assets and Cash Rule 2004 Requests.

Assets Rule 2004 Requests

**(1) Category No. 1: Assets (current and transferred/encumbered)**

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

***Prioritized Commonwealth Assets.*** During the Parties' February 11, 2021 telephonic meet-and-confer (the "February 11 Meet-and-Confer"), AAFAF advised that it continues to investigate whether responsive materials related to Prioritized Commonwealth Assets 12, 14-15, 17, 19, 22-23, and 36 can be located in the Department of Justice's digital registry, and that it had hoped to provide an update regarding its investigation during the week of February 15-19, 2021. Ambac requests an update regarding AAFAF's investigation. Additionally, AAFAF reiterated that its search could potentially be expedited if Ambac could provide additional information

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Joint Status Report of Ambac Assurance Corporation and the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Pursuant to the Court's January 22, 2021 Order* [ECF No. 15846] (the "February 15 Joint Status Report").

**MILBANK LLP**

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
February 25, 2021

regarding these Prioritized Commonwealth Assets.  Please see below for the information Ambac extracted from CRIM's cadastral registry system for these assets:

| Prioritized Commonwealth Asset | Information Extracted from CRIM's Cadastral Registry System |
|---|---|
| **#12** | Catastro:  063-041-136-22-901<br>Parcela de procedencia:  063-041-136-22<br>Parcela:  063-041-136-22<br>Dueño:  AUTORIDAD DE CARRETERAS<br>Dirección física:  AVE M RIVERA Y ROOSEVELT H REY<br>Municipio:  SAN JUAN |
| **#14** | Catastro:  259-036-023-01-001<br>Parcela de procedencia:  259-036-023-01<br>Parcela:  259-036-023-01<br>Dueño:  AUTORIDAD DE CARRETERAS<br>Dirección física:  CARR 2 BO SABALOS<br>Municipio: MAYAGUEZ<br><br>Catastro:  259-046-023-04-000<br>Parcela de procedencia:  259-046-023-04<br>Parcela:  259-046-023-04<br>Dueño:  N/A<br>Dirección física:  CARR 114 BO SABALOS<br>Municipio: MAYAGUEZ |
| **#15** | Catastro:  207-000-009-29-000<br>Parcela de procedencia:  207-000-009-29<br>Parcela:  207-000-009-29<br>Dueño:  AUTORIDAD DE CARRETERAS<br>Dirección física:  BO MIRADERO<br>Municipio: MAYAGUEZ |
| **#17** | Catastro:  199-055-936-01-000 / 199-000-008-34-000 / 199-000-008-33-000<br>Parcela de procedencia:  199-000-003-28<br>Parcela:  199-055-936-01<br>Dueño:  AUTORIDAD DE CARRETERAS<br>Dirección física:  BO BAIROA<br>Municipio: CAGUAS |
| **#22** | Catastro:  045-000-004-15-355 / 045-000-004-15-404 / 045-000-004-15-145<br>Parcela de procedencia:  045-000-004-15<br>Parcela:  045-000-004-15<br>Dueño:  AUTORIDAD DE CARRETERAS<br>Dirección física:  AVE. CORAZONES BO CAIMITAL BAJO<br>Municipio: AGUADILLA |

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
February 25, 2021

| Prioritized Commonwealth Asset | Information Extracted from CRIM's Cadastral Registry System |
|---|---|
| **#23** | Catastro:  N/A<br>Parcela de procedencia:  034-096-001-01<br>Parcela:  034-096-001-01<br>Dueño:  N/A<br>Dirección física:  N/A<br>Municipio:  MANATÍ |
| **#36** | Catastro:  090-086-054-08-000<br>Parcela de procedencia:  090-086-054-02<br>Parcela:  090-086-054-08<br>Dueño:  N/A<br>Dirección física:  CARR 3 MARGINAL COMM LAS FLORES IND PARK<br>Municipio:  RIO GRANDE |

Please note that Ambac has been unable to identify any information regarding Prioritized Commonwealth Asset 19 in CRIM's cadastral registry system because that system does not appear to have assigned a tax identification number to that asset.  However, Ambac was able to locate an aerial photograph of Prioritized Commonwealth Asset 19, attached hereto as Exhibit A, which it located using CRIM's publicly available registry using geographic coordinates (18.277442, 66.034488).

Additionally, based on Ambac's preliminary review of documents produced by AAFAF, it does not appear that AAFAF has produced documents showing the terms of any leases for the Prioritized Commonwealth Assets.  Such documents are relevant to the issue of whether any encumbrances exist on the Prioritized Commonwealth Assets.  Moreover, the terms of any leases for the Prioritized Commonwealth Assets are a relevant consideration in determining the value of such assets.  Therefore, Ambac requests the production of documents sufficient to show the terms of any leases for the Prioritized Commonwealth Assets, including copies of the most recent lease agreements related to the Prioritized Commonwealth Assets.

*Ad Valorem Taxes / Tax Arrears.*  During the February 11 Meet-and-Confer, AAFAF advised that it continues to investigate Ambac's January 11, 2021 requests for information regarding statements made in the CRIM fiscal plan and information regarding tax liens.  Ambac requests an update on the status of AAFAF's investigation.

In addition, in its January 31, 2021 letter to Ambac, AAFAF advised that it had produced the 2017 third-party offer to purchase CRIM's tax arrears portfolio (the "Tower Capital Offer") in its January 19 production, and that "[a]fter having conducted a reasonably diligent search, CRIM has not located any [] valuations or similar diligence materials" related to the Tower Capital Offer.  Ambac's review of the Tower Capital Offer raises questions regarding AAFAF's prior assertions concerning that offer and whether relevant documents regarding that offer exist.  The Tower Capital Offer—which is dated July 31, 2017—states that in October 2016, CRIM requested proposals for the sale of accounts receivable due from real property taxes, and that Tower Capital made a proposal in response to that offer before CRIM cancelled the sale process in November

- 3 -

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
February 25, 2021

2016.[2]  Thus, while it may be technically correct that the Tower Capital Offer was "unsolicited" (as AAFAF has repeatedly suggested) in that there was no open request for offers, the Tower Capital Offer was close in time with CRIM's request for proposals.  Thus, while Ambac cannot assess AAFAF's representations that the Tower Capital Offer was "not significantly negotiated by CRIM such that there is likely not any comprehensive valuation materials" regarding that offer,[3] Ambac nevertheless believes that communications at AAFAF or CRIM relating to the Tower Capital Offer are relevant.  This is underscored by the fact that CRIM's fiscal plan, dated June 26, 2020, estimates that the sale of CRIM's accounts receivable in FY 2021 would result in approximately $400 million in proceeds—exactly the amount of the Tower Capital Offer.  Moreover, if AAFAF is correct that "little documentation exists beyond the initial unsolicited offer to CRIM[,]"[4] then it will not be burdensome to produce those documents and communications.  Accordingly, Ambac renews its request for the production of any documents or communications in the possession, custody, or control of AAFAF, CRIM, and/or the Board relating to the Tower Capital Offer.

We also wish to follow up on the Parties' prior discussions regarding CRIM's current efforts to value its tax arrears and liens portfolio.  On November 5, 2020, AAFAF directed Ambac to the Request for Proposals issued by AAFAF and CRIM, dated August 17, 2020 (the "RFP"), which sought proposals from professional services firms to assist CRIM in assessing the valuation of its delinquent tax debt portfolio and associated real property tax liens.  The RFP set forth a due date of August 28, 2020 for any responses.  Also, on November 5, 2020, AAFAF and CRIM issued an addendum to the RFP[5] requesting that those who submitted bids provide responses to certain questions by November 13, 2020, including questions about the valuation methodology contemplated by the bidder.  Ambac requests an update regarding CRIM's efforts to value its tax arrears and liens portfolio, including information regarding any action(s) taken by, or future action(s) contemplated by, AAFAF, CRIM, and/or the Board in connection with the RFP or responses thereto, information regarding the number and identity of firms that submitted responses to the RFP or addendum, whether any firm has been selected for the project, whether that firm has entered into a contract to perform services (and if so, when), and when any valuation or other reports from such firm are due.

Ambac also requests the production of any responses submitted in connection with the RFP or addendum.  Moreover, to the extent any valuation or other report concerning CRIM's tax arrears and liens portfolio is currently available, Ambac requests production of such report.  If such reports are not yet available, Ambac requests that AAFAF produce them when they become available.

Finally, Ambac requests all documents and communications in the possession, custody, or control of AAFAF, CRIM, or the Board relating to how the $400 million estimate of CRIM's accounts receivable portfolio set forth in CRIM's most recent fiscal plan was determined.

---

[2] ASSETS_2004_0002273-0002274.

[3] Ltr. from Elizabeth L. McKeen to John J. Hughes, III, dated Nov. 5, 2020, at 2 n.4.

[4] *Id.* at 2.

[5] https://www.aafaf.pr.gov/wp-content/uploads/Add-1-RFP-aafaf-crim-rfp-valuation-services.pdf.

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
February 25, 2021

Cash Rule 2004 Requests

*(1) Category Nos. 1 and 2: Presentation and Investigation Documents*

- *All documents relied upon in connection with the "Summary of Cash Restriction Analysis" presentation, dated October 2, 2019 and the "Bank Account Analysis: Status Update – June 30, 2019 Balances" presentation, dated as of October 2, 2019, including documents sufficient to identify the processes and assumptions underlying the Cash Restriction Analysis and any iterative changes in the analysis over time.*
- *All documents relied upon in connection with Duff & Phelps' and/or Ernst & Young's investigation into the cash at government and fiscal plan entities, certain other Title III debtors, and UPR, including but not limited to instructions provided to Duff & Phelps and/or Ernst & Young regarding categorization and restrictions.*

**Inventory of Central Government's Bank Accounts.**  During the February 11 Meet-and-Confer, the Government Parties advised that they continue to investigate whether a more updated version of the inventory of central government bank accounts produced on November 12, 2020 is available and that they would provide an update regarding this investigation soon.  Ambac requests that the Government Parties complete their investigation as soon as possible, as this request has been pending since November 25, 2020.

**Categories of Bank Accounts Purportedly Containing Restricted Funds.**  In its February 10 letter to Ambac, the Board identified by Bates number certain documents related to the nine categories of bank accounts Ambac identified on November 25, 2020 and January 11, 2021 that, per the Amended Disclosure Statement and/or December 2020 Presentation, purportedly contain restricted funds.  During the February 11 Meet-and-Confer, the Board agreed to consider Ambac's request for identification of documents underlying the Duff & Phelps Report that are related to these nine categories of bank accounts.  Ambac requests an update regarding this request.

**Calculation Back-Up for Amended Disclosure Statement.**  During the February 11 Meet-and-Confer, the Board advised that it is willing to produce Calculation Back-Up for the portion of the Amended Disclosure Statement that relates to the cash restriction analysis, to the extent such Calculation Back-Up is available, and that it is currently investigating the availability of such documents.  Ambac requests an update regarding this investigation.

**December 2020 Presentation.**  During the February 11 Meet-and-Confer, the Board reiterated that it will produce factual source materials and raw data underlying the December 2020 Presentation, including, if available, documents related to the $3.8 billion in federal COVID-related funds that have been classified as restricted.  The Board also advised that its production of such materials will be categorized by account and completed in the coming weeks.  Ambac requests an update regarding when the Board expects to produce these materials.

In addition to the factual source materials and raw data underlying the December 2020 Presentation that the Board has agreed to produce, Ambac also requests:

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
February 25, 2021

1. Documents regarding "potentially inaccessible" funds, including (without limitation) documents concerning: (i) why the Board, AAFAF, and/or their advisors contend that ~$8.1 billion in funds held by public corporations are "potentially inaccessible[;]" (ii) any legislation considered, proposed, or enacted for the purpose of enabling the Commonwealth to access funds held by public corporations; and (iii) why Commonwealth funds appropriated or transferred to public corporations have not been clawed back by, or otherwise transferred back to, the Commonwealth. (*See* December 2020 Presentation at 8, 11-16.)

2. Documents regarding "potentially unavailable" funds, including (without limitation) documents concerning why the Board, AAFAF, and/or their advisors contend that: (i) $540 million in Commonwealth funds are "potentially unavailable[;]" and (ii) $151 million in funds held by public corporations are "potentially unavailable[.]" (*See id.* at 8, 18.)

3. Documents regarding why the Board, AAFAF, and/or their advisors contend that the $208 million in "unreviewed" Commonwealth funds should not be classified as unrestricted and potentially be made available to compensate the Commonwealth's creditors. (*See id.* at 7, 9.)

4. Documents regarding why the Commonwealth is not using any of the $3.8 billion in federal COVID-related funds it has received to reimburse itself for the $392 million fully reimbursable and $44 million partially reimbursable expenses it incurred in connection with the COVID-19 pandemic. (*See id.* at 50.)

5. Documents regarding: (i) why the Commonwealth has not used the $92 million held in BPPR -6373 that, at least in part, is comprised of "[f]unds provided by FEMA for disaster relief use[,]" to reimburse disaster-related expenses incurred by the Commonwealth; and (ii) why the Puerto Rico Public Buildings Authority ("PBA") has not used the $10 million it holds, that is purportedly "reserved for FEMA disaster relief funds," to reimburse disaster-related expenses incurred by PBA. (*See id.* at 12, 39.)

6. Documents regarding why $293 million in Commonwealth funds held by the Office of Court Administration ("OCA") are classified as restricted while an additional $72 million in Commonwealth funds held by OCA are classified as unrestricted. (*See id.* at 9.)

7. Documents regarding the portion of the $476 million expensed from the Commonwealth's emergency reserve that may qualify for FEMA reimbursement, including (without limitation) documents reflecting any previous, ongoing, completed, or contemplated efforts by the Commonwealth to seek or obtain FEMA reimbursement for such expenses. (*See id*. at 25.)

8. Documents regarding any previous, ongoing, completed, or contemplated efforts to obtain external financing for the Commonwealth's Disaster Aid Revolver, including any analysis comparing the costs associated with funding the Commonwealth's Disaster Aid Revolver using external financing and Commonwealth funds.

Margaret A. Dale, Julia D. Alonzo, Laura Stafford, Elizabeth L. McKeen, Ashley Pavel
February 25, 2021

Additionally, Ambac requests an update regarding any efforts by the Board and its advisors to update the December 2020 Presentation. To the extent a subsequent iteration of the cash restriction analysis is available, Ambac requests production of that analysis.

***October 30, 2020 Presentation.*** During the February 11 Meet-and-Confer, the Board advised that it continues to investigate Ambac's questions regarding the relationship between the December 2020 Presentation and the October 30, 2020 Presentation. Ambac requests an update regarding the Board's investigation.

### *(2) Category No. 4: Document Key*

- *A "key" to the documents produced that would allow parties to replicate the cash restriction analysis performed in connection with the presentations described above, including the relevant identifying information for each document (i.e., Bates numbers).*

In its February 10 letter to Ambac, the Board agreed to prepare a "key" identifying the Ernst & Young identifiers that correspond to each bank account reviewed in connection with the cash restriction analysis, and to attempt to identify the Duff & Phelps identifiers corresponding to each such bank account. The Parties discussed this "key" during the February 11 Meet-and-Confer, and Ambac advised that its primary goal in requesting such a "key" is to match up the Ernst & Young identifiers to the corresponding Duff & Phelps identifiers, which would enable Ambac to track bank accounts from the Duff & Phelps Report to subsequent iterations of the cash restriction analysis. The Board advised that it would attempt to match up these two sets of identifiers. Ambac requests an update regarding when the Board anticipates that it will be able to produce this "key."


Very truly yours,

/s/ *Jonathan Ohring*
Jonathan Ohring


cc:    Atara Miller
       Grant R. Mainland
       John J. Hughes, III
       Martin A. Sosland
       Robert S. Berezin
       William Natbony
       Nicholas A. Bassett
       John E. Mudd
       Geoffrey S. Stewart

# **EXHIBIT A**

