# **EXHIBIT B**

**O'Melveny**

O'Melveny & Myers LLP
610 Newport Center Drive
17th Floor
Newport Beach, CA 92660-6429

T: +1 949 823 6900
F: +1 949 823 6994
omm.com

March 4, 2021

**VIA E-MAIL**

John Hughes, III
Atara Miller
Grant Mainland
MILBANK LLP
55 Hudson Yards
New York, New York 10001

Re: *In re Fin. Oversight & Mgmt. Bd., No. 17-BK-3283-LTS – Commonwealth Assets Rule 2004 Requests*

Counsel:

I write in connection with Ambac's Assets Rule 2004 Motion [ECF No. 9022] ("Assets 2004 Motion") in response to your February 25, 2021 letter and the parties' March 2, 2021 call. By repeating Ambac's headings, AAFAF does not reflect any acceptance or agreement by AAFAF that the materials sought are within the scope of Ambac's original requests or within the acceptable bounds of Rule 2004 discovery.

**Category No. 1: Assets (current and transferred/encumbered)**

- *Documents sufficient to show, from January 1, 2015 to the present, the alienation or encumbrance of any assets held by the Commonwealth or its instrumentalities.*
- *A list of the Commonwealth's current assets.*

**Prioritized Commonwealth Assets.** AAFAF has completed its investigation with respect to the remaining Prioritized Commonwealth Assets. Today AAFAF produced documents relating to properties 12, 15, 17, 19, and 36 on Ambac's March 16, 2020 list.[1] AAFAF also conducted a diligent search and was not able to locate materials for properties 14, 22, and 23.

Your February 25, 2021 letter requests that AAFAF produce "documents sufficient to show the terms of any leases for the Prioritized Commonwealth Assets, including copies of the most recent lease agreements related to the Prioritized Commonwealth Assets." While AAFAF requested that governmental entities provide information on encumbrances in response to Ambac's March 16, 2020 letter, as we have explained in prior correspondence, this information is beyond the scope of permissible Rule 2004 discovery and beyond the scope of the "core information sufficient to obtain a basic understanding of major aspects of the Commonwealth's

---

[1] ASSETS_2004_0004051 - ASSETS_2004_0004143.

O'Melveny

financial condition that will be relevant to a plan of adjustment" that the Court allowed. *See* Jan. 23, 2020 Order at 9-10 (ECF No. 10332).

*Ad Valorem Taxes / Tax Arrears*. Your February 25, 2021 letter requests an update on your January 11, 2021 requests for "information regarding statements made in the CRIM fiscal plan and information regarding tax liens."

In response to your January 11, 2021 request for "[c]larification regarding the definition of 'delinquent real property taxes' as used in Exhibit 13 to the CRIM Fiscal Plan," AAFAF provides the following information: The term "delinquent real property taxes," as used in Exhibit 13 to the CRIM Fiscal Plan, refers to any taxpayer account that has an accrued debt after the previous fiscal year ends.

Regarding your requests for additional information regarding CRIM's tax collections and tax arrears portfolio, including information regarding application of a reserve against the accounts receivable balance, and information on liens CRIM may hold on properties and whether it has foreclosed upon them, this granular discovery into CRIM's finances is beyond the scope of Rule 2004 discovery the Court articulated. Jan. 23, 2020 Order at 9-10 (ECF No. 10332). CRIM is legally and financially independent from the Commonwealth. 21 L.P.R.A. § 5802. AAFAF has already pointed Ambac to publicly available Treasury reporting detailing the monthly receipts the Commonwealth receives from CRIM's municipal tax collections, and has provided aggregate and taxpayer-specific reporting on past due balances.[2] Additional discovery into CRIM's finances and collection efforts is beyond the "core information" sufficient to give Ambac a "basic understanding" of the "major aspects" of the Commonwealth's financial condition that will be relevant to a plan of adjustment. Jan. 23, 2020 Order at 9-10.

Your February 25, 2021 letter also "renews its request for the production of any documents or communications in the possession, custody, or control of AAFAF, CRIM, and/or the Board relating to the Tower Capital Offer." AAFAF has already produced the offer itself, despite the lack of relevance, in an effort to reach a reasonable compromise that would avoid the need for court intervention. As AAFAF already stated in its January 31, 2021 letter, CRIM conducted a reasonably diligent search and did not locate any related valuations or similar diligence materials regarding that offer. E-mail discovery into an offer that was made nearly four years ago is not within the "core body of information" on "major aspects of the Commonwealth's fiscal condition" that the Court allowed. Jan. 23, 2020 Order at 9-10.

Finally, your February 25, 2021 Letter requests "an update regarding CRIM's efforts to value its tax arrears and liens portfolio," including any "responses submitted" to the August 17, 2020 Request for Proposals and addendum, any "valuation or other report concerning CRIM's tax arrears and liens portfolio," and "all documents and communications . . . relating to how the $400 million estimate of CRIM's accounts receivable portfolio set forth in CRIM's most recent fiscal plan was determined." Ambac's attempt to use Rule 2004 discovery from the Commonwealth to insert itself into an ongoing contract negotiation process by CRIM, a separate legal entity not in Title III, is not proper.

---

[2] ASSETS_2004_0002154, ASSETS_2004_0002373 - ASSETS_2004_0002528.

O'Melveny

Sincerely,

/s/ *Elizabeth L. McKeen*

Elizabeth L. McKeen