UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- X
: 
In re: :
 :
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
 :
    as representative of : Case No. 17-BK-3283 (LTS)
 :
THE COMMONWEALTH OF PUERTO RICO *et al.,* : (Jointly Administered)
 :
    Debtors.[1] :
---------------------------------------------------------------------- X

**RESPONSE TO ORDER TO SHOW CAUSE REGARDING CHALLENGED BOND AVOIDANCE ACTIONS TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE JUDITH G. DEIN:**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), acting by and through its Special Claims Committee (the "Special Claims Committee"), respectfully submits this response (the "Response") to the *Order to Show Cause Regarding Challenged Bond Avoidance Actions* [ECF No. 15793] (the "Show Cause Order") and the *Request for Access to Sealed Materials* [Adv. Pro. No. 19-357, ECF No. 170] (the "Confidentiality Motion"). In support of this Response, the Oversight Board respectfully states as follows:

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

**PRELIMINARY STATEMENT**

1. The Challenged Bond Avoidance Actions comprise essentially two litigation actions across a handful of adversary proceedings against hundreds of defendants, to claw back allegedly unlawful payments on bonds not validly issued. The identity of the defendants to the litigation was gleaned from a discovery process involving highly sensitive financial information. For that reason, the identities of defendants were kept confidential by court order.

2. As the Court observes, its confidentiality order was to expire some time ago. However, because the Challenged Bond Avoidance Actions have been subject to litigation stays, in relevant part and for all relevant times, the SCC assumed that defendants to the litigation should not be required to retain attorneys for any purpose, including to contest confidentiality.

3. The SCC continues to believe that defendants should not be required to so respond. A significant portion of the Challenged Bond Avoidance Actions, relating to General Obligation (GO) and Public Buildings Authority (PBA) bonds, is to be settled and dismissed under the draft plan previously submitted (and, to the SCC's knowledge, not subject to revision in relevant part). Likewise, the litigation relating to ERS bonds is currently in mediation and the SCC is hopeful that it will be resolved and dismissed as part of a larger resolution of disputes with ERS bondholders.

4. In sum, the SCC is concerned that the disclosure of identities will require defendants to litigation to retain attorneys and take action in these cases, which have been stayed for a significant time and are likely to be resolved without need for such imposition of cost. Likewise, the newly active involvement of parties and counsel will require expenditure of significant resources by SCC professionals, at cost to the Debtors, and likely divert from more value-accretive functions.

5. The SCC thus respectfully requests that the identities of defendants to the Challenged Bond Avoidance Actions remain under seal.

## FACTUAL BACKGROUND

**Confidentiality Briefings and Initial Order**

6. The Oversight Board incorporates herein by reference the statements of fact contained in the following documents:

   i. *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico for Entry of an Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* [ECF No. 6143];

   ii. *Informative Motion of the Financial Oversight and Management Board for Puerto Rico, Acting by and through Its Special Claims Committee, Regarding Further Order Pursuant to Bankruptcy Rules 1007(I) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* [ECF No. 6492];

   iii. *Informative Motion of the Financial Oversight and Management Board for Puerto Rico, Acting by and through Its Special Claims Committee, Regarding Further Order Pursuant to Bankruptcy Rules 1007(I) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* [ECF No. 6540]; and

   iv. *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico to Enforce Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* [ECF No. 6853].

(together, the "Confidentiality Briefings").

7. The Confidentiality Briefings describe the information collection process required to identify defendants to the Challenged Bonds Avoidance Actions. This process is summarized again herein.

8. In sum, the SCC independently identified each beneficial holder of Challenged Bonds at the time of *each* payment date for *each* bond CUSIP for *each* Challenged Bond issuance, in order to recover the allegedly unlawful payments.

9. This massive undertaking required the SCC to obtain financial transaction information from third-party financial institutions. Consistent with industry custom, the Commonwealth issued both the bonds and its payments of purported principal and interest to the Depository Trust Corporation ("DTC"). DTC maintained records of securities positions held in designated accounts by "Participant Holders". The Participant Holders were large, "street name" financial institutions that likewise maintained records of the owners of the bonds (including, in some cases, Participant Holders themselves) for whose benefit the bonds in the DTC accounts were maintained.

10. The Confidentiality Briefings and related pleadings culminated in entry of the Court's "Initial Order" (as defined in the Show Cause Order, ECF No. 6967). The Initial Order required the Participant Holders to provide financial records sufficient to identify defendants to the Challenged Bond Avoidance Actions. Because the Participant Holders were being required to produce highly sensitive financial information (identifying bondholders, payment amounts, aggregate holdings, etc.), the Initial Order provided stringent confidentiality protections for such information, including that the identities of defendants would remain confidential, via a key filed under seal, for twenty-one days following notice to defendants at the time of service. *See* Initial Order, para. 10(b).

11. The discovery process contemplated by the Initial Order took many months to complete. Consistent with the Court's guidance contained within the order,[2] the SCC resolved

---

[2] *See* Initial Order, p. 6 ("[T]he Court would be inclined to find good cause for reasonable extensions beyond the dates provided herein for parties who cannot feasibly complete their productions on time. Producing parties shall

4

discovery disputes informally, and ultimately did not seek further intervention or enforcement by the Court. As discovery progressed, the SCC filed amended complaints and notices of dismissal to update the Challenged Bond Avoidance Actions, adding defendants identified in discovery and dismissing defendants that demonstrated bond holdings and payment receipts below the SCC's stated relevance threshold.[3]

**Stay Order**

12. Well before the SCC completed the above-described discovery process and well before the SCC had named many of the defendants to the Challenged Bond Avoidance Actions, the Court stayed the litigation for all purposes relevant hereto.

13. Specifically, on July 24, 2019, the Court entered its *Order Regarding Stay Period and Mandatory Mediation* [ECF No. 8244] (the "General Stay Order"), which stayed all the Challenged Bond Avoidance Actions pending mediation on a plan of adjustment.

14. The Court subsequently clarified that notwithstanding the General Stay Order, the SCC was permitted to continue discovery and amend the complaints in the Challenged Bond Avoidance Actions, and would remain bound to the Initial Order. *See Order Clarifying Effect of Prior Orders and Establishing Notice and Objection Process Regarding Disclosure of Confidential Information*, ECF No. 8797.

---

meet and confer with the Oversight Board to determine if they can agree to an extended date prior to requesting a good cause extension from the Court.").

[3] In statements to the Court and others, the SCC indicated it would not pursue claims against (1) holders of less than $2,500,000 in the aggregate in Challenged Bonds, (2) any party that received less than $250,000 in principle and interest payments on Challenged Bonds, or (3) any party that did not receive any single principle or interest payment greater than $12,000 on a Challenged Bond.

5

**GO and PBA Challenged Bond Avoidance Action Stay**

15. The Challenged Bond Avoidance Actions relating to General Obligation and PBA bonds[4] have remained stayed pursuant to a series of orders extending the General Stay Order as to specific adversary proceedings.

16. Following mediation, the Oversight Board filed a new proposed plan of adjustment on February 28, 2020. *See Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11946] (the "Amended Plan"). The Amended Plan settles the Challenged Bond Claims pertaining to GO and PBA bonds. *See* Art. 2.1 (providing for resolution of "Invalidity Actions" described in separate schedule).

17. On March 10, 2020, the Court entered its *Final Order Regarding (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 12189], which provides that the GO and PBA Challenged Bond Avoidance Actions are "to remain stayed pending decision on confirmation of Amended Plan." Appx. A, p. 2.

18. Further amendments to the "Amended Plan" referenced in that order are expected this month. The order and the litigation stay imposed by the Court remain effective.

**ERS Challenged Bond Avoidance Action Stay**

19. The Challenged Bond Avoidance Actions relating to ERS bonds[5] have remained stayed in part, with litigation permitted on a limited scope generally not including the defendants whose identities remain under seal.

20. Following mediation on a separate track, the SCC and certain related parties agreed with groups holding large volumes of ERS bonds to continue litigation concerning the validity of

---

[4] Adv. Pro. Nos. 19-281 through 19-288.

[5] Adv. Pro. Nos. 19-355 through 19-361.

6

the bonds along an agreed schedule. On October 24, 2019, the Court approved the agreed schedule and conditions thereto in its *Order Granting Urgent Joint Motion to Modify Order Regarding Stay and Mandatory Mediation with Respect to Certain Issues Raised in Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [ECF No. 8962] (the "ERS Stay Order").

21. Paragraph 2 of the ERS Stay Order provides that the General Stay Order is lifted solely as to specified proceedings, to allow for resolution of bond validity disputes. Paragraph 2(e) specifically provides that the stay is lifted (i) solely as to Count One of the Challenged Bond Avoidance Actions (defined therein as the "ERS Clawback Litigation"), and (ii) solely as to the bondholders engaged in mediation and any other defendants that "file appearances and answer the complaint(s)."

22. Subject to revisions to the agreed litigation schedule, the ERS Stay Order remains effective. The Court recently set the un-stayed portions of the ERS bond litigation for oral argument on competing summary judgment motions. ECF No. 15697.

23. In sum, the ERS Clawback Litigation remains stayed in full as to any defendants that choose to maintain their identities under seal.

## RESPONSE TO SHOW CAUSE ORDER

24. The SCC requests that the identities of defendants to the Challenged Bond Avoidance Actions remain sealed.

25. As a preliminary note, the SCC observes that it may have been unclear to such defendants that any time period had run regarding their right to contest the unsealing of their identities: because the litigation has been stayed since (or even in many cases before) such defendants became parties to the litigation, defendants may have reasonably believed that the

7

notice and objection period was likewise subject to such stay. More to the point, defendants may have reasonably believed that because the litigation was stayed, there was no need to retain counsel to assist with, among other things, any objection. Hence, it is not surprising that defendants failed to appear and object to disclosure of their identities.

26. Although the Court's Show Cause Order restarts the clock, effectively clarifying the issue above, the Show Cause Order highlights the fact that the Challenged Bond Avoidance Actions not only have been stayed for many months, but may not in fact be litigated: the GO and PBA actions are proposed to be settled through confirmation of the Plan proposed by the Oversight Board, with the terms of the Plan itself resolving numerous disputes between the Oversight Board and current and former holders of GO and PBA bonds. Similarly, the SCC reasonably hopes, given the status of proceedings to date, that a settlement may be reached resolving the ERS bond challenges, with settlement of the ERS Clawback Litigation baked into litigation discounts agreed by the largest groups of bondholders.[6]

27. The SCC appreciates the administrative burden on the Court resulting from filings under seal. Likewise, the SCC takes no position as to why any particular defendant's identity must be protected. To the extent that any defendant wishes to review the identity of co-defendants,[7] the SCC is unsure why such information is necessary or appropriate under the circumstances, as it has no bearing on any defendant's defenses to litigation.

---

[6] While mediation is confidential, it is no secret that the SCC and others are mediating with ERS bondholders regarding a resolution of bond validity litigation; and the bondholders themselves have noted the potential of the mediation to fully resolve the matter. *See Unopposed Motion for Extension of Time to File Plaintiffs-Appellants' Opening Brief*, Case No. 21-1577, ECF No. 6-1 (Fed Cir.) (request for extension regarding ERS bond litigation appeal, noting that bondholders are "actively engaged" in mediation that would resolve ERS bond litigation).

[7] *See* Confidentiality Motion.

28. However, the SCC is interested in maintaining the status quo insofar as events appear to be proceeding to resolution of the Challenged Bond Avoidance Actions on terms favorable to the Title III Debtors and their creditors. The Show Cause Order has the potential to force defendants to retain attorneys, imposing a real cost that may otherwise be avoided by plan confirmation and related settlements. Moreover, the active involvement of potentially hundreds of previously inactive litigation parties could require SCC professionals to divert resources in innumerable ways, at an inopportune moment when such costs might, again, be avoided by settlements currently in progress.

## RESERVATION OF RIGHTS

29. The Oversight Board reserves the right to supplement this Response in light of additional responses received to the Show Cause Order and/or in the event that the Court provides for the opportunity to do so by further written briefing or oral argument.

## CONCLUSION

WHEREFORE, the Oversight Board, acting by and through its Special Claims Committee, respectfully requests that this Court permit the information subject to the Show Cause Order to remain sealed.

Dated: March 5, 2021　　　　　　　　　　　　　　Respectfully submitted,
San Juan, Puerto Rico

　　　　　　　　　　　　　　　　　　　　*/s/ Sunni P. Beville*
　　　　　　　　　　　　　　　　　　　　BROWN RUDNICK LLP
　　　　　　　　　　　　　　　　　　　　Sunni P. Beville, Esq. (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　Tristan G. Axelrod, Esq. (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　　　One Financial Center
　　　　　　　　　　　　　　　　　　　　Boston, MA 02111
　　　　　　　　　　　　　　　　　　　　Tel: (617) 856-8200
　　　　　　　　　　　　　　　　　　　　sbeville@brownrudnick.com
　　　　　　　　　　　　　　　　　　　　taxelrod@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting by and through the members of the Special Claims Committee*

and

*/s/ Kenneth C. Suria*
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting by and through the members of the Special Claims Committee*