# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS<br>(Jointly Administered) |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |
| IN RE: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3566-LTS |
| as representative of | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, | ***This Pleading Relates to the<br>Commonwealth and ERS Only,<br>and Should Be Filed in Both<br>Dockets.*** |
| Debtor. | |

## INFORMATIVE MOTION OF THE BANK OF NEW YORK MELLON, AS FISCAL AGENT, SUBMITTING DEMONSTRATIVE AND EXHIBITS FOR HEARING ON ULTRA VIRES MOTIONS

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19 BK 5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

In accordance with the Court's March 3, 2021 *Order Regarding Procedures for March 11, 2021 Hearing* (Case No. 17-3566, ECF No. 1087, Case No. 17-3283, ECF No. 15902), The Bank of New York Mellon ("BNYM"), as fiscal agent under the Pension Funding Bond Resolution, adopted on January 24, 2008, by The Employee Retirement System of the Government of the Commonwealth of Puerto Rico, through its undersigned counsel, hereby submits the attached exhibit list, demonstrative, and exhibits it intends to use at the March 11, 2021 hearing on the Ultra Vires Motions (Case No. 17-3566, ECF No. 976; Case No. 17-3283, ECF No. 14247).

*[The remainder of this page was intentionally left blank.]*

Dated:  March 5, 2021
        San Juan, Puerto Rico

Respectfully submitted,

**SEPULVADO, MALDONADO & COURET**

By:   */s/ Albéniz Couret-Fuentes*
      Albéniz Couret-Fuentes
      USDC-PR Bar No. 222207
      304 Ponce de León Ave. – Suite 990
      San Juan, PR 00918
      Telephone: (787) 765-5656
      Facsimile:  (787) 294-0073
      Email:  acouret@smclawpr.com

**REED SMITH LLP**
Luke A. Sizemore (*Pro Hac Vice*)
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email:  lsizemore@reedsmith.com

*Counsel to The Bank of New York Mellon,*
*as fiscal agent*

## BNYM's Exhibit List – *Ultra Vires* Motions

**BNYM's UV Demonstrative Slides**

**BNYM's UV Exhibit 1**:  Excerpts from 2002 DTC Operational Arrangements, Exhibit A of Declaration of John Faith (DTC), ECF No. 977-10 in Case No. 17-bk-3566, at ECF pages 12, 18-19, 52.

**BNYM's UV Exhibit 2**:  Official Statement for Series A Bonds, Appendix IX (Book Entry Appendix), ECF No. 977-11 in Case No. 17-bk-3566, at ECF pages 2-4.

**BNYM's UV Exhibit 3**:  Excerpts from January 30, 2008 Email from UBS to DTC, with attachments, ECF No. 977-17 in Case No. 17-bk-3566, at ECF pages 2-3, 6, 16, 35, 46, 218, 222, 236, 260, 263, 272, 274, 284-87.

**BNYM'S UV DEMONSTRATIVE SLIDES**

(Attached)

# Ultra Vires Summary Judgment Motions

March 11, 2021 – 9:30 am AST

**Demonstrative Slides of The Bank of New York Mellon, as Fiscal Agent**

1

# U.C.C. § 8-202(b):  Securities Safe Harbor

- " . . . it is the duty of the issuer, not of the purchaser, to make sure that the security complies with the law governing its issue."  U.C.C. § 8-202 cmt. 3.

- A security "is valid in the hands of a purchaser for value and without notice of the particular defect" if the issuer was (a) in substantial compliance with the legal requirements governing the issue or (b) the issuer has received "substantial consideration" and "a stated purpose of the issue is one for which the issuer has power to borrow money."  U.C.C. § 8-202(b).

2

# Cede & Co. Is A "Purchaser for Value"

- U.C.C. § 8-116:  "Securities Intermediary as Purchaser for Value"

  "A securities intermediary that receives a financial asset and establishes a security entitlement to the financial asset in favor of an entitlement holder is a purchaser for value of the financial asset."  U.C.C. § 8-116.

- DTC is a securities intermediary that received ownership and physical possession of the certificated securities through its nominee, Cede & Co., and its agent, BNYM, and established a security entitlement in favor of an entitlement holder.

3

# Indirect Holding System



Source:  Book-Entry System Appendix, BNYM'S UV Exhibit 2.

# Cede & Co. Had No Notice of Alleged Defect

Documents provided to DTC and Cede & Co. gave no reason to know of any defect going to the validity of the Bonds.

- <u>Official Statements</u>:  "The Act authorizes the System to borrow money, including through the direct placement of debt, and secure any such borrowing with its assets."  *See, e.g.*, BNYM's UV Exhibit 3, at UBS-ERS_Ultra_Vires-0043875.

- <u>Resolution</u>:  "The System is duly authorized under the Act to create and issue the Bonds and to adopt this Resolution . . . ."  *See* BNYM's UV Exhibit 3, at UBS-ERS_Ultra_Vires-0044095.

- <u>Opinions of Bond Counsel</u>:  "The Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System . . . ."  *See, e.g.*, BNYM's UV Exhibit 3, at UBS-ERS_Ultra_Vires-0044144.

5

# Cede & Co. Had No Notice of Alleged Defect

- ". . . the issuer cannot, by incorporating a reference to a statute or other document, charge the purchaser with notice of the security's invalidity."  U.C.C. § 8-202(b) cmt. 3.

- " . . . DTC does not in any way undertake to, and shall not have any responsibility to, monitor or ascertain the compliance of any transactions in the Securities with . . . local, state, federal, or foreign laws or regulations thereunder."  BNYM's UV Exhibit 1 (2002 DTC Operational Arrangements, at 3).

6

# No Constitutional Defect

- "[T]he types of constitutional provisions contemplated by Section 8-202 are those that *specifically address the requirements for the issuance of securities*, as opposed to provisions that might more generally govern contracts."  *Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, --- F. Supp. 3d ---, No. 19 Civ. 10023, 2020 WL 6135761, at *22 (S.D.N.Y. Oct. 20, 2020) (emphasis added).

- Article VI, § 9 does not specifically address the requirements for the issuance of securities.  It provides:  ". . .[p]ublic property and funds shall only be disposed of for public purposes, for the support and operation of state institutions, and pursuant to law."  P.R. CONST. art. VI, § 9.

7

**BNYM UV EXHIBIT 1**

Excerpts from 2002 DTC Operational Arrangements, Exhibit A of Declaration of John Faith
(DTC), ECF No. 977-10 in Case No. 17-bk-3566, at ECF pages 12, 18-19, 52

(Attached)

Document DTC Operational Arrangements   Page 14 of 39

**T H E   D E P O S I T O R Y   T R U S T   C O M P A N Y**

A subsidiary of The Depository Trust & Clearing Corporation (DTCC)

# Memorandum

**DATE:**     February 20, 2002

**TO:**        Participants, Underwriters, Agents, Trustees, Counsel, and Others Affected

**FROM:**      DTC's Underwriting Department

**SUBJECT:**   Operational Arrangements Necessary for an Issue to Become and Remain Eligible
               for DTC Services

This memorandum contains DTC's *Operational Arrangements* necessary for an issue to become and remain eligible for DTC services. The arrangements contain several revisions to those issued in January 1998, but the substance of the arrangements remains unchanged.

The focus of the changes in this new version of DTC's Operational Arrangements centers on DTC's move to a *Blanket Issuer Letter of Representations* (BLOR) for corporate issuers. In 1995, DTC first introduced the BLOR process for municipal issuers and also expanded the *Operational Arrangements* at that time. In an effort to continue to simplify the eligibility process, DTC will now accept BLORs from corporate issuers as we have from municipal issuers. Instead of requiring a signed *Letter of Representations* (LOR) for each Book-Entry-Only (BEO) issue that an issuer brings to market, DTC will only require a BLOR be executed once. In the BLOR, the issuer represents to DTC that it shall comply with the requirements stated in these *Operational Arrangements* as they may be amended from time to time.

In addition to issue eligibility criteria, the arrangements continue to incorporate standards for income, reorganization, and redemption payments ("Principal and Income Payments"), adopting the Guidelines set by the U.S. Working Committee Group of Thirty (G-30) Clearance and Settlement Project Same-Day Funds Task Force (P&I Task Force). *(See Section B for Standard Time Frames for Principal and Income Payments, and Section C for Standard Time Frames for Maturity and Redemption Payments).*

DTC will continue to seek assurance that all new issues made DTC-eligible will be structured in such a way as to ensure that the paying agent can pay DTC in a timely fashion. To that end, DTC has included these payment standards in all BEO LORs.

The *Operational Arrangements* remain sufficiently easy to meet that the overwhelming majority of new issues of securities can be made DTC-eligible, as can the vast majority of already outstanding issues.

The requirement that agents sign the statement on the last page of the *Operational Arrangements* remains a part of the document. In this statement a trustee or agent appointed for an issue being considered for eligibility covenants to DTC that it will comply with applicable provisions in the Operational Arrangements. BLORs already submitted would not require renewal; DTC will consider those blanket letters as indicating agreement to these updated arrangements.

The *Operational Arrangements* document is accessible via DTC's web site at **www.dtc.org**, and DTCC's web site at **www.dtcc.com**.

d) **Multiple-Purpose Municipal Issues** — Multiple-purpose municipal issues carrying a single CUSIP number may be made eligible, if Agent provides DTC with the following assurances:

(1) Agent shall treat transfer instructions received from DTC for such issues without regard to purpose distinctions within a single CUSIP;

(2) There will be separate and non-duplicate certificate numbers within a single CUSIP; and

(3) Interest and principal payments to DTC will be made by CUSIP and not by purpose.

## 6. Legends

a) Any certificate evidencing Securities may bear a legend noting restrictions on transfer of the Securities or other terms of the Securities. When such Securities are on deposit (or transferred by book-entry) in the DTC system, DTC Participants and the beneficial owners of the Securities generally do not see such legends. DTC and Cede & Co. shall have no obligation to read such a legend, to act (or refrain from acting where a legend contains a restriction) in accordance with its terms, or to inform DTC Participants or others of the existence or terms of such a legend.

b) Each Security certificate registered in the name of Cede & Co. shall bear the following legend:

> Unless this certificate is presented by an authorized representative of The Depository Trust Company, a New York corporation ("DTC"), to Issuer or its agent for registration of transfer, exchange, or payment, and any certificate issued is registered in the name of Cede & Co. or in such other name as is requested by an authorized representative of DTC (and any payment is made to Cede & Co. or to such other entity as is requested by an authorized representative of DTC), ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL inasmuch as the registered owner hereof, Cede & Co., has an interest herein.

## 7. Book-Entry-Only (BEO) Issues

DTC must receive a fully executed *Letter of Representations* (on DTC's preprinted form) prior to a BEO issue being made eligible. In lieu of signed *Letters of Representations* executed on an issue-by-issue basis by Issuers and their Agents for each BEO issue, DTC will accept from municipal and corporate Issuers a *single Blanket Issuer Letter of Representations (BLOR)*.

In a BLOR, Issuer represents to DTC that it will comply with the requirements stated in these *Operational Arrangements* (OA) as they may be amended from time to time. A *BLOR* must be submitted by Issuer only once for all its future BEO issues distributed through DTC. (*See* Exhibit C for a form BLOR). In conjunction with the BLOR, Issuers may wish to add standard language for certain situations. As needed, such language may be submitted as a rider to Issuer's BLOR. Such riders will apply for all future issues with similar processing traits.

The following Issuer and Agent representations and covenants apply to all BEO issues. (They mirror the standards represented to DTC in its preprinted *Letters of Representations*).

a) There shall be deposited with DTC one or more Security certificates registered in the name of DTC's nominee,Cede &Co., for each [stated maturity] of the Securities, the total of

which represents 100% of the principal amount of such Securities. If, however, the aggregate principal amount of any maturity exceeds $500 million, one certificate will be issued with respect to each $500 million of principal amount and an additional certificate will be issued with respect to any remaining principal amount of such issue. Each Security certificate will bear the legend set forth in Section A(6)(b), Legends.

b) Issuer recognizes that DTC does not in any way undertake to, and shall not have any responsibility to, monitor or ascertain the compliance of any transactions in the Securities with the following, as amended from time to time: (1) any exemptions from registration under the Securities Act of 1933; (2) the Investment Company Act of 1940; (3) the Employee Retirement Income Security Act of 1974; (4) the Internal Revenue Code of 1986; (5) any rules of any self-regulatory organizations (as defined under the Securities Exchange Act of 1934); or (6) any other local, state, federal, or foreign laws or regulations thereunder.

c) In the event of a redemption, acceleration, or any other similar transaction necessitating a reduction in the aggregate principal amount of securities outstanding or an advance refunding of part of the securities outstanding, DTC, in its discretion: (1) may request Issuer or Agent to issue and authenticate a new Security certificate; or (2) may make an appropriate notation on the Security certificate indicating the date and amount of such reduction in principal except in the case of final maturity, in which case the certificate will be presented to Issuer or Agent prior to payment, if applicable.

d) DTC may direct Issuer or Agent to use any other telephone number or address as the number or address to which notices or payments may be sent.

e) In the event that Issuer determines that beneficial owners of Securities shall be able to obtain certificated Securities, Issuer or Agent shall notify DTC of the availability of certificates. In such event, Issuer or Agent shall issue, transfer, and exchange certificates in appropriate amounts, as required by DTC and others.

f) DTC may discontinue providing its services as depository with respect to the Securities at any time by giving reasonable notice to Issuer or Agent (at which time DTC will confirm with Issuer or Agent the aggregate principal amount of Securities outstanding). Under such circumstances, at DTC's request Issuer or Agent shall cooperate fully with DTC by taking appropriate action to make available one or more separate certificates evidencing Securities to any Participant having Securities credited to its DTC accounts.

g) Nothing herein shall be deemed to require Agent to advance funds on behalf of Issuer.

h) Issuer: (1) understands that DTC has no obligation to, and will not, communicate to its Participants or to any person having an interest in the Securities any information contained in the Security certificate(s); and (2) acknowledges that neither DTC's Participants nor any person having an interest in the Securities shall be deemed to have notice of the provisions of the Security certificate(s) by virtue of submission of such certificate(s) to DTC.

i) The sender of each notice delivered to DTC pursuant to these Operational Arrangements is responsible for confirming that such notice was properly received by DTC.

j) All notices and payment advises sent to DTC shall contain the CUSIP number of the Securities.

k) Issuer and Agent shall comply with the applicable requirements stated in DTC's Operational Arrangements, as they may be amended from time to time.

## UNDERWRITING STANDARD TIME FRAMES

*Information and/or Materials Needed by DTC to Process an Underwriting and Notify DTC Participants in a Timely Fashion*

| Information and/or Materials Needed | Time Frame |
|---|---|
| Preliminary offering document (*e.g.*, official statement, prospectus, offering memorandum) which provides issue information (*e.g.*, Issuer name, description of the Security, denominations, paying agent, transfer agent, underwriter, and if applicable, put option/tender/redemption features, whether the issue is multi-purpose), [*See* Note 1 below]<br><br>**and** a completed and signed Eligibility Questionnaire. (*See* Note 2 below). | Submitted to DTC's Underwriting Department, Eligibility section, at least *10* business days prior to the closing date. (*See* Note 3 below). |
| For BEO issues, a draft LOR (if the Issuer has not filed a BLOR with DTC),<br><br>**and** the cover page **and** the securities description section of the preliminary offering document. | At least *10* business days prior to the closing date. (LORs/BLORs for municipal issues must be sent to DTC's Underwriting Department; for corporate issues, to DTC's General Counsel's Office). |
| Identity of the lead underwriter (normally identified from the preliminary offering statement in negotiated deals),<br><br>**and** CUSIP number(s) **and** principal amount per CUSIP(s),<br><br>**and** interest rates **and** maturity dates. | Submitted to DTC's Underwriting Department, Eligibility section, at least *seven* business days prior to the closing date.<br><br>(With respect to corporate issues, interest rates and maturity dates should be provided to DTC upon pricing of the issue). |
| <u>For IPO tracked issues</u>: A written request from the lead underwriter to DTC's Underwriting Department to make the issue eligible for DTC's IPO Tracking System. | By 3:00 p.m. ET, *two* business days prior to the closing date. |
| Receipt of Securities,<br><br>**or**<br><br>Confirmation by Agent of the issue's FAST balance utilizing DTC's FRAC function available on PTS. | By 12:00 noon ET on the business day prior to the closing date.<br><br>On the closing date, as early as the opening of business, but no later than 12:00 noon ET. (Balance confirmation must be received from Agent before DTC will credit securities to a Participant's account. *In addition, in no event will credit be given to a Participant's account without the Underwriting Department having received closing call information from the underwriter and Agent).* |
| Closing information | The underwriter and Agent must notify DTC of the issue's closing by 1:15 p.m. ET on the closing date. (Requests for extensions will be considered for issues of $100 million or more. Such requests must be received by DTC no later than 1:00 p.m. ET). |

**Note 1:** Offering documents may be submitted electronically, preferably in portable data format (PDF), to DTC's Underwriting Department at **uw-muni@dtcc.com** for municipal issues, or at **uw-corp@dtcc.com** for corporate issues.

**Note 2:** Eligibility questionnaires are not required for issues submitted for eligibility to DTC via the PTS function Direct Input of Participant Underwriting (PUND) or other automated means that DTC may offer, which captures the same information.

**Note 3:** MSRB Rule G-34 requires underwriters to apply for depository eligibility for a new issue of securities in accordance with the rules and procedures of such depository, as promptly as possible, but in no event later than one business day after the award from Issuer (as in a competitive sale) or *one business day* after the execution of the contract to purchase the securities from Issuer (as in a negotiated sale). DTC understands that in the vast majority of instances these events occur in time to meet DTC's 10-business-day standard. DTC will, however, work with underwriters when these events occur fewer than 10 business days prior to the closing date.

**BNYM UV EXHIBIT 2**

Official Statement for Series A Bonds, Appendix IX (Book Entry Appendix), ECF No. 977-11 in
Case No. 17-bk-3566, at ECF pages 2-4

(Attached)

## BOOK-ENTRY SYSTEM

**The Depository Trust Company**

DTC will act as securities depository for the Series A Bonds. The Series A Bonds will be issued as fully-registered securities registered in the name of Cede & Co. (DTC's partnership nominee). One fully-registered Bond certificate will be issued for each stated maturity of the Sereis A Bonds, each in the aggregate principal amount (initial principal amount in the case of the Capital Appreciation Bonds) of such maturity, and will be deposited with DTC. SO LONG AS CEDE & CO. IS THE REGISTERED OWNER OF THE SERIES A BONDS, AS NOMINEE FOR DTC, REFERENCES HEREIN TO BONDHOLDERS OR OWNERS OF THE SERIES A BONDS (OTHER THAN UNDER THE CAPTION "TAX MATTERS") SHALL MEAN CEDE & CO. AND SHALL NOT MEAN THE BENEFICIAL OWNERS OF THE SERIES A BONDS.

DTC, the world's largest depository, is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). DTC holds and provides asset servicing for over 2.2 million issues of U.S. and non-U.S. equity, corporate and municipal debt issues, and money market instruments from over 100 countries that DTC's Participants ("Direct Participants") deposit with DTC. DTC also facilitates the post-trade settlement among Direct Participants of sales and other securities transactions in deposited securities, through electronic computerized book-entry transfers and pledges between Direct Participants' accounts. This eliminates the need for physical movement of securities certificates. Direct Participants include both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. DTC is a wholly-owned subsidiary of The Depository Trust & Clearing Corporation ("DTCC"). DTCC, in turn, is owned by a number of Direct Participants of DTC and Members of the National Securities Clearing Corporation, Fixed Income Clearing Corporation, and Emerging Markets Clearing Corporation, (NSCC, FICC, and EMCC, also subsidiaries of DTCC), as well as by the New York Stock Exchange, Inc., the American Stock Exchange LLC, and the National Association of Securities Dealers, Inc. Access to the DTC system is also available to others such as both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, and clearing corporations that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly ("Indirect Participants"). DTC has S&P's highest rating; AAA. The DTC Rules applicable to its Participants are on file with the Securities and Exchange Commission ("SEC"). More information about DTC can be found at www.dtcc.com and www.dtc.org.

Purchases of the Series A Bonds under the DTC system must be made by or through Direct Participants, which will receive a credit for the Series A Bonds on DTC's records. The ownership interest of each actual purchaser of the Series A Bonds ("Beneficial Owner") is in turn to be recorded on the Direct and Indirect Participants' records. Beneficial Owners will not receive written confirmation from DTC of their purchase. Beneficial Owners are, however, expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which the Beneficial Owner entered into the transaction.

Transfers of ownership interests in the Series A Bonds are to be accomplished by entries made on the books of Direct and Indirect Participants acting on behalf of Beneficial Owners. Beneficial Owners will not receive certificates representing their ownership interests in the Series A Bonds, except in the

PR-ERS-000003218

event that use of the book-entry system for the Series A Bonds is discontinued.

To facilitate subsequent transfers, the Series A Bonds deposited by Direct Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co., or such other name as may be requested by an authorized representative of DTC. The deposit of the Series A Bonds with DTC and their registration in the name of Cede & Co. or such other nominee do not effect any change in beneficial ownership. DTC has no knowledge of the actual Beneficial Owners of the Series A Bonds; DTC's records reflect only the identity of the Direct Participants to whose accounts such Series A Bonds are credited, which may or may not be the Beneficial Owners. The Direct and Indirect Participants will remain responsible for keeping account of their holdings on behalf of their customers.

Conveyance of notices and other communications by DTC to Direct Participants, by Direct Participants to Indirect Participants, and by Direct Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time.

Redemption notices shall be sent to DTC. If less than all of the Series A Bonds are being redeemed, DTC's practice is to determine by lot the amount of the interest of each Direct Participant in such issue to be redeemed.

Neither DTC nor Cede & Co. (nor such other DTC nominee) will consent or vote with respect to Series A Bonds unless authorized by a Direct Participant in accordance with DTC's Procedures. Under its usual procedures, DTC mails an Omnibus Proxy to the Corporation as soon as possible after the record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct Participants to whose accounts the Series A Bonds are credited on the record date (identified in a listing attached to the Omnibus Proxy).

Redemption proceeds, distributions, and dividend payments on the Series A Bonds will be made to Cede & Co., or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit Direct Participants' accounts upon DTC's receipt of funds and corresponding detail information from the Corporation or the Fiscal Agent on payable dates in accordance with their respective holdings shown on DTC's records. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the responsibility of such Participant and not of DTC, the Fiscal Agent, or the Corporation, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of redemption proceeds, distributions, and dividend payments to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) is the responsibility of the Corporation or the Fiscal Agent, disbursement of such payments to Direct Participants will be the responsibility of DTC, and disbursement of such payments to the Beneficial Owners will be the responsibility of Direct and Indirect Participants.

DTC may discontinue providing its services as securities depository with respect to the Series A Bonds at any time by giving reasonable notice to the Corporation or the Fiscal Agent. Under such circumstances, in the event that a successor depository is not obtained, Series A Bond certificates are required to be printed and delivered.

The Corporation may decide to discontinue use of the system of book-entry only transfers through DTC (or a successor securities depository). In that event, Series A Bond certificates will be printed and delivered to DTC.

IX-2

PR-ERS-000003219

NONE OF THE CORPORATION, THE FISCAL AGENT OR THE UNDERWRITERS WILL HAVE ANY RESPONSIBILITY OR OBLIGATION TO DIRECT PARTICIPANTS, INDIRECT PARTICIPANTS OR ANY BENEFICIAL OWNER WITH RESPECT TO (I) THE ACCURACY OF ANY RECORDS MAINTAINED BY DTC, ANY PARTICIPANT OR INDIRECT PARTICIPANT; (II) THE PAYMENT BY DTC OR ANY DIRECT PARTICIPANT OR INDIRECT PARTICIPANT OF ANY AMOUNT WITH RESPECT TO THE PRINCIPAL OF, OR PREMIUM, IF ANY, OR INTEREST ON, THE SERIES A BONDS; (III) ANY NOTICE WHICH IS PERMITTED OR REQUIRED TO BE GIVEN TO BONDHOLDERS; (IV) ANY CONSENT GIVEN BY DTC OR OTHER ACTION TAKEN BY DTC AS A BONDHOLDER; OR (V) THE SELECTION BY DTC OR ANY DIRECT PARTICIPANT OR INDIRECT PARTICIPANT OF ANY BENEFICIAL OWNERS TO RECEIVE PAYMENT IN THE EVENT OF ANY PARTIAL REDEMPTION OF THE SERIES A BONDS.

PR-ERS-000003220

**BNYM UV EXHIBIT 3**

Excerpts from January 30, 2008 Email from UBS to DTC, with attachments, ECF No. 977-17 in
Case No. 17-bk-3566, at ECF pages 2-3, 6, 16, 35, 46, 218, 222, 236, 260, 263, 272, 274, 284-87

(Attached)

**Message**

| | |
|---|---|
| **From**: | Vidal, William [william.vidal@ubs.com] |
| **Sent**: | 1/30/2008 5:03:34 PM |
| **To**: | UW-Muni [uw-muni@dtcc.com] |
| **Subject**: | Final Version DTC Questionnaire |
| **Attachments**: | final dtc.pdf; FINAL OS - POBs.pdf |

Please find attached the final version of the questionnaire; using the final OS figures attached. Thanks,

Please also note that the DTC number has changed to #0221

Thanks again,

**William J. Vidal**
**UBS Financial Services Inc. of Puerto Rico**
Investment Banking
American International Plaza - 9th Floor
250 Munoz Rivera Ave.
San Juan, Puerto Rico 00918
(787) 250-3254

UBS-ERS_Ultra_Vires-0043861

# THE DEPOSITORY TRUST COMPANY (DTC) ELIGIBILITY QUESTIONNAIRE
### DTC is a subsidiary of The Depository Trust & Clearing Corporation

To make a new issue of securities DTC eligible, the completed questionnaire and a copy of the offering statement/prospectus (preliminary or final) must be submitted to DTC's Underwriting Dept. at least 10 business days prior to the issue's closing date. If complete CUSIP INFORMATION (CUSIP numbers, interest rates, and final maturities) is not included with the questionnaire, please provide to DTC in writing at least seven business days prior to the closing date. (With respect to corporate issues, upon pricing of the issue.)

## ISSUE INFORMATION

Please check one of the following:
☒ Municipal ☐ Corporate ☐ Limited Underwriting [1]
☐ ABS ☐ CMO

Please indicate whether or not the issue is a "security" as such term is defined in Article 8 of the New York Uniform Commercial Code. ☐ Yes ☐ No

Please indicate whether or not the issuer is a United Kingdom entity.
☐ Yes ☒ No

Please check at least one of the following, the issue is:

☐ Registered with the SEC
☐ Eligible for resale under Rule 144A[2]  Contact the NASD at (202) 728-8479 to apply for PORTAL. of the '33 Act
☐ Eligible for resale under Regulation S of the '33 Act
☐ Issuer relying on Section 3(c)(7) of the '40 Act
☒ Exempt under Rule 3(a)(2) of the '33 Act
☐ Exempt under another exemption(s); indicate exemption(s): _____

Issuer Name/Issue Description: Employees Retirement System of the Government of the Commonwealth of Puerto Rico, Senior Pension Funding Bonds, Series A

State of Incorporation or Municipality: Puerto Rico

Issue Principal/Offering Amount: $ 1,588,810,799.60

Share Quantity: Not Apply

Closing Date: 1 / 31 / 2008

Is this a Book-Entry-Only issue (with no certificates available to investors)?
☒ Yes  ☐ No  (If yes, a Letter of Representations is required.)

Does this issue contain a put/tender feature? ☐ Yes ☒ No  (If yes, for certificated issues a Tender Letter of Representations is required.)

## CONTACT INFORMATION

UBS Financial Services Incorporated of Puerto Rico
Lead Underwriter

William Vidal                    (787) 250-3254
Lead Underwriter Contact         Phone

DTC Participant account number to be credited at the time of closing: Citibank N.A. DTC 0221 for further Credit Acct. # 089069
If Lead Underwriter is not a DTC Participant, please provide clearing DTC Participant contact information.

Stephanie Jackore        (813) 604-1458
Clearing DTC Participant Contact   Phone

## CONTACT INFORMATION  (Continued)

The Bank of New York Mellon
Transfer Agent

Joanne Adamis            (212) 815-2423
Transfer Agent Contact       Phone

The Bank of New York Mellon
Paying Agent

Joanne Adamis            (212) 815-2423
Paying Agent Contact         Phone

Fiddler Gonzalez & Rodriguez P.S.C.
Issuer's Counsel

Anita del Toro           (787) 759-3819
Issuer's Counsel Contact     Phone

Not Apply
Remarketing Agent (provide if applicable to the issue)

Not Apply                (   )
Remarketing Agent Contact    Phone

Not Apply
Tender Agent (provide if applicable to the issue)

Not Apply                (   )
Tender Agent Contact         Phone

## DELIVERY OF SECURITIES
Will the securities be eligible as a FAST (Fast Automated Securities Transfer) issue? ☐ Yes ☒ No

If no, provide the date the securities will be delivered to DTC: ___ / ___ / ___

Note:  Please use the address listed on the CUSIP INFORMATION page to deliver securities to DTC at least one business day before closing. For additional information, please contact DTC's Interface/Underwriting Department at the numbers provided.

## SUBMITTED BY [PLEASE CHECK ONE]:
Underwriter                  ☒
Financial Advisor            ☐
Clearing DTC Participant      ☐

X _____
(Authorized Signature)

---

[1] Service available for non-Book-Entry-Only municipal issues with a principal value of $1 million or less.

[2] For non-investment grade issues eligible for resale under Rule 144A, PORTAL eligibility is required .

06/00

NEW ISSUE – BOOK-ENTRY ONLY

# $1,588,810,799.60
# Employees Retirement System
# of the Government of the Commonwealth of Puerto Rico
# Senior Pension Funding Bonds, Series A

The Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") is a trust created by law in 1951 by the Legislature of the Commonwealth of Puerto Rico to provide pension and other benefits to retired employees of the government of the Commonwealth and its instrumentalities. These benefits are funded by contributions made monthly or twice a month to the System by the government of the Commonwealth and its instrumentalities ("Employer Contributions") and their employees, and by investment earnings. Government employers are currently required by law to make Employer Contributions to the System of at least 9.275% of their covered payroll.

The System has authorized the issuance of one or more series of bonds (the "Bonds") in order to increase the funds currently available to pay pension benefits to certain of its beneficiaries and reduce its unfunded accrued actuarial pension liability. The System will pledge future Employer Contributions to the payment of the Bonds, invest the proceeds of the Bonds and use these investments and the earnings thereon to provide such pension benefits to its beneficiaries. The Senior Pension Funding Bonds, Series A (the "Series A Bonds") are a series of Bonds being offered exclusively in the Commonwealth of Puerto Rico. The System currently contemplates offering additional parity Bonds (the "Series B Bonds") in other jurisdictions. The Series B Bonds would be offered by means of one or more separate Official Statements and may not under any circumstances be purchased by residents of Puerto Rico.

**The Bonds are limited, non-recourse obligations of the System payable solely from and secured solely by a pledge of Employer Contributions made after the date of issuance of the Bonds. The Bonds are not payable from the investments made by the System with the proceeds of the Bonds or from any other assets of the System, or from employee contributions to the System. The Bonds are not an obligation of the Commonwealth of Puerto Rico or any of its other instrumentalities or political subdivisions.**

The Series A Bonds will be registered under the Depository Trust Company's book-entry only system, and will be issued without coupons, in denominations of $5,000 principal amount (maturity amount in the case of the Capital Appreciation Bonds) and integral multiples thereof. Purchasers of the Series A Bonds will not receive bond certificates.

The Series A Bonds will be offered as Term Bonds and Capital Appreciation Bonds. Interest on the Term Bonds will be payable monthly on the first day of each month, commencing on March 1, 2008. Interest on the Capital Appreciation Bonds will compound semiannually on each January 1 and July 1, commencing on July 1, 2008 and will be payable at maturity or redemption. The inside cover page of this Official Statement contains information on the maturities, interest rates and prices or yields of the Series A Bonds. The Series A Bonds may be redeemed by the System, commencing on July 1, 2018, as described herein.

Interest on the Series A Bonds is not excludable from the gross income of the recipients thereof under Section 103(a) of the United States Internal Revenue Code of 1986, as amended. Interest on the Series A Bonds is exempt from Puerto Rico income and property taxes. See "Tax Matters" beginning on page 44.

The System expects that the Series A Bonds will be available for delivery to DTC on or about January 31, 2008.

**Investing in the Series A Bonds involves risks. See "Investment Considerations" beginning on page 23 of this Official Statement for a discussion of certain factors that should be considered by prospective purchasers in evaluating an investment in the Series A Bonds.**

## UBS Financial Services Incorporated of Puerto Rico

| | | |
|---|---|---|
| **Popular Securities** | | **Santander Securities** |
| **BBVAPR MSD** | **Citi** | **Lehman Brothers** |
| **Merrill Lynch & Co.** | **Oriental Financial Services Corporation** | **Samuel A. Ramírez & Co., Inc.** |
| **Scotia Capital** | **TCM Capital** | **Wachovia Capital Markets, LLC** |

January 29, 2008

Confidential

this may reduce the amount of funds available to the System to pay retirement benefits, it will not directly affect the pledge of Employer Contributions to the holders of the Bonds.

**Restrictions on purchase of Series B Bonds by Puerto Rico Residents**

The Series A Bonds will be offered exclusively in Puerto Rico. The System currently contemplates offering another series of Bonds (the "Series B Bonds") in other jurisdictions outside Puerto Rico. The Series B Bonds will be on a parity with the Series A Bonds under the Resolution. The Series B Bonds may not be purchased under any circumstances by residents of Puerto Rico, including corporations or other business organizations organized under the laws of Puerto Rico or engaged in trade or business in Puerto Rico ("Puerto Rico Residents"). In the event any Series B Bond is held by a Puerto Rico Resident, the System shall have the right to require such Puerto Rico Resident to return any interest received by such Puerto Rico Resident on account of such Series B Bond.

## THE SYSTEM

### General

The System is a trust created by the Legislature of Puerto Rico in 1951 pursuant to the Act to provide retirement and disability annuities, death benefits, and loans to Puerto Rico's public employees. Persons eligible to become members of the System (the "Members") include: (i) all persons holding regular employment positions in any executive department, agency, administration, board, commission, committee, office or instrumentality of the Executive Branch of the Government of the Commonwealth; (ii) all members and regular employees of the Legislative Branch of the Government of the Commonwealth; (iii) all officers and regular employees of the municipalities of the Commonwealth; and (iv) all officers and regular employees of most public corporations. As of June 30, 2007, the System had 276,688 Members, 99,851 of which were retirees and beneficiaries currently receiving benefits and 176,837 of which were current active participating employees.

The System administers two separate retirement plans: a defined benefit plan and a defined contribution plan. In the defined benefit plan, participants are entitled to retirement benefits which are defined and determinable. Members who entered the System on or before December 31, 1999 participate in the defined benefit plan. The defined contribution plan, on the other hand, is a retirement plan that provides for an individual account for each participant of the plan and for benefits based solely upon the amounts contributed to such participant account. Members who entered the System on or after January 1, 2000 participate in the defined contribution plan.

As of June 30, 2007, the System had total assets of $2.931 billion, total liabilities (not including actuarial liabilities) of $40 million, and net assets held in trust for pension benefits of $2.891 billion. For the fiscal year ended June 30, 2007, the System's net assets held in trust for pension benefits increased by approximately $350 million. This includes the net effect of employer, employee and special contributions of $799 million, net investment income of $434 million, benefits paid of $832 million, and administrative expenses of $29 million.

The System has the authority to transact all of its business, invest its funds and hold its securities and other properties in its own name. The Act authorizes the System to borrow money, including through the direct placement of debt, and secure any such borrowing with its assets.

7

UBS-ERS_Ultra_Vires-0043875

*The Legislature of the Commonwealth could reduce the Employer Contribution rate or make other changes in existing law that adversely affect the amount of Employer Contributions.* The Bonds are being issued pursuant to general authority contained in the Act, which does not include any covenant by the Legislature of the Commonwealth not to amend the Act in a way adverse to Bondholders. In addition, as is the case in many other jurisdictions, the Constitution of Puerto Rico does not contain provisions that expressly prohibit the Legislature from amending the Employer Contribution requirements under the Act. Therefore, the Legislature could make changes to the Act that are adverse to the Bondholders, including reducing the rate at which participating Government Employers are required to contribute to the System. If any such change is made, the ability of the System to pay debt service on Bonds when due could be adversely affected. It is impossible to predict at this time the conditions that could cause the Legislature of Puerto Rico to reduce the Employer Contribution rate, but those conditions could include situations (i) where the System's unfunded accrued liability has been reduced or eliminated, which could lead the Legislature to the conclusion (if it did not take into consideration the need to pay the Bonds) that additional Employer Contributions are not required, or (ii) where there is severe financial stress affecting one or more of the Government Employers.

## Public Debt of the Commonwealth Must be Paid Before Employer Contributions of Central Government Agencies and Departments

The Constitution of Puerto Rico provides that in the event the Commonwealth has insufficient funds to pay all approved appropriations, the available resources of the Commonwealth shall be used to pay public debt before being used for other purposes. Public debt, which as of September 30, 2007 amounted to $44.4 billion, includes $8.1 billion in bonds and notes of the Commonwealth to which the full faith, credit and taxing power of the Commonwealth are pledged, and, according to opinions rendered by the Secretary of Justice of the Commonwealth, any payments which are required to be made by the Commonwealth under its guarantees of bonds and notes issued by its public corporations, which total $3.9 billion. The Bonds do not constitute public debt. This Constitutional restriction does not apply to Employer Contributions made by public corporations and municipalities, because the funds of public corporations and municipalities are not "available resources" of the Commonwealth.

## The Remedies that the Fiscal Agent May Pursue May be Limited

The remedies available to the Fiscal Agent and the holders of the Bonds upon an Event of Default do not include the right to declare all amounts immediately due and payable and are in many respects dependent upon regulatory and judicial actions which are often subject to discretion and delay. Such remedies may also not be readily available or may be limited, and the legal opinions rendered in connection with this financing will be qualified to the extent that enforceability of provisions of the Bonds and the Resolution are affected by such limitations, including as such enforceability may be limited by insolvency or other laws generally affecting creditors' rights.

## A redemption may adversely affect the return of bondholders on the Bonds

The System may choose to redeem some or all of the Series A Bonds, or some Series A Bonds may be redeemed to satisfy sinking fund requirements, at times when prevailing interest rates are lower than when the Series A Bonds were issued. If this happens, Bondholders may not be able to reinvest the proceeds received in a comparable security at an effective interest rate as high as that of the Bonds.

26

## SECURITY AND SOURCES OF PAYMENT FOR THE BONDS

The following summary is qualified by reference to the General Resolution and the Supplemental Resolution, copies of which are set forth in Appendices VI and VII, respectively.

**Bonds are Limited, Non-Recourse Obligations of the System**

The Bonds are limited, non-recourse obligations of the System, payable solely from and secured solely by Employer Contributions made after the date of issuance of the Bonds and funds on deposit with the Fiscal Agent in the various accounts established thereunder. The Bonds are not general obligations of the System and are not payable from contributions made to the System by participating employees, or from the assets acquired with the proceeds of the Bonds, or from Employer Contributions released by the Fiscal Agent to the System after funding of required reserves, or from any other assets of the System. The Bonds are not obligations, general, special or otherwise, of the Commonwealth, do not constitute a debt of the Commonwealth or any of its other political subdivisions or instrumentalities, and are not payable out of any moneys of the Commonwealth other than future Employer Contributions.

The Employer Contributions are those contributions that Government Employers must contribute to the System pursuant to the Act. The Act requires that Employer Contributions cover the difference between (i) the benefits provided by the System to its beneficiaries, plus administrative costs, and (ii) the contributions that employees are required to make to the System. The Act further provides that the employers must contribute every year at least 9.275% of the wages and salaries paid to their employees.

**The Legislature of the Commonwealth could reduce the Employer Contribution rate or make other changes in existing law that adversely affect the amount of Employer Contributions; Safeguards for Payment of Employer Contributions to the System**

The Bonds are being issued pursuant to general authority contained in the Act, which does not include any covenant by the Legislature of the Commonwealth not to amend the Act in a way adverse to Bondholders. In addition, as is the case in many other jurisdictions, the Constitution of Puerto Rico does not contain provisions that expressly prohibit the Legislature from amending the Employer Contribution requirements under the Act. Therefore, the Legislature could make changes to the Act that are adverse to the Bondholders, including reducing the rate at which participating Government Employers are required to contribute to the System. If any such change is made, the ability of the System to pay debt service on Bonds when due could be adversely affected.

37

**Appendix VI**

EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
OF THE COMMONWEALTH OF PUERTO RICO

———————————————————————

PENSION FUNDING BOND RESOLUTION

———————————————————————

Adopted on January 24, 2008

UBS-ERS_Ultra_Vires-0044077

## BOND RESOLUTION

**WHEREAS,** Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") is a trust created pursuant to Act 447 of May 15, 1951, as amended (the "Act"), to provide pension and other benefits to retired employees of the central government, municipalities and public corporations of the Commonwealth of Puerto Rico;

**WHEREAS,** by virtue of the Act, the System has, among others, the duties and powers

(i) to incur debt secured by the assets of the System;

(ii) to receive and collect Employers' Contributions;

(iii) to make contracts and to execute all instruments necessary or convenient for the exercise of any of its powers; and

(iv) to sue and be sued, complain and defend in all courts of justice and administrative bodies;

**WHEREAS,** as of June 30, 2005, the System had an unfunded liability of approximately $9.9 billion pursuant to the System's actuarial evaluation report;

**WHEREAS,** the System's statutory right to receive Employers' Contributions is an obligation of the Employers and a legal asset of the System;

**WHEREAS,** as a legal asset of the System, the Employers' Contributions may be pledged to secure the debt of the System; and

**WHEREAS,** in order to decrease the unfunded liability of the System, the System wishes to issue limited, non-recourse obligations in the form of Bonds, payable solely from the Pledged Property (as defined below), which includes the Employers' Contributions; now, therefore,

**BE IT RESOLVED** by the Board of Trustees of the System, as follows:

### ARTICLE I
### STATUTORY AUTHORITY

SECTION 101. Authority for this Resolution. This Resolution is adopted pursuant to the provisions of the Act.

SECTION 102. Resolution to Constitute Contract. In consideration of the purchase and acceptance of any and all of the Bonds authorized to be issued hereunder by those Persons who shall hold the same from time to time, this Resolution shall be deemed to be and shall constitute a contract among the System, the Owners from time to time of the Bonds and the Ancillary Facility Providers; and the security interest created in this Resolution and the covenants and agreements therein set forth to be performed on behalf of the System shall be for the equal benefit, protection and security of the Owners of any and all of the Bonds and the Ancillary Facility Providers, all of which shall be of equal rank without preference, priority or distinction of any of the Bonds and Ancillary Facility Providers over any other thereof, except as expressly provided in or permitted by this Resolution.

### ARTICLE II
### AUTHORIZATION AND ISSUANCE OF BONDS

SECTION 201. Authorization of Bonds. The System may issue hereunder one or more series of Bonds of the System to be designated as "Pension Funding Bonds," which Bonds may be issued as hereinafter provided without limitation as to amount except as is or may hereafter be provided in this Resolution or in a Supplemental Resolution or as may be limited by law. There is hereby further created by this Resolution, in the manner and to the extent provided herein, a security interest and lien on the Pledged Property to secure the full and timely payment of the principal of and premium, if any, and interest on, all of the Bonds issued pursuant to this Resolution or any Supplemental Resolution. The Bonds shall be special obligations of the System payable solely from the Pledged Property without recourse against other assets of the System. The Commonwealth shall not be liable for the Bonds or any Ancillary Bond Facility. Neither any Bond nor any Ancillary Bond Facility shall constitute a debt of the Commonwealth within the meaning of any constitutional provision, or a pledge of the good faith and credit of the Commonwealth or of the taxing power of the Commonwealth, and the Commonwealth shall not be liable to make any payments thereon, nor shall any Bond or any Ancillary Bond Facility be payable out of any funds or assets other than the Pledged Property, and the Bonds and each Ancillary Bond Facility shall contain a statement to the foregoing effect.

SECTION 202. General Provisions for Issuance of Bonds.

1. The Bonds may, if and when authorized by the System pursuant to one or more Supplemental Resolutions, be issued in one or more Series, as Senior Bonds or Subordinated Bonds, and the designation thereof, in addition to the name "Pension Funding Bonds," shall include such further appropriate particular designations added to or incorporated in such title for the Bonds of any particular Series as the System may determine, including designations of Classes. Each Bond shall bear upon its face designation so determined for the Series to which it belongs. Except as may be limited by applicable law, Bonds of a Series may be issued in the form of Capital Appreciation Bonds, Convertible Capital Appreciation Bonds, Current Interest Bonds, Adjustable Rate Bonds, Option Bonds, Fixed Tender Bonds, or any combination of the foregoing, or any other type of Bond that may legally be issued by the System, which in each case may include Serial Bonds or Term Bonds, or any combination thereof.

2. Each Supplemental Resolution authorizing or providing for the issuance of a Series of Bonds shall also specify, except as may be limited by applicable law:

(i) the authorized principal amount and designation of such Series of Bonds;

(ii) the purpose or purposes for which such Series of Bonds are being issued, which shall be one or more of the following, to the extent then permitted by applicable law and the provisions of this Resolution: (a) to provide sufficient funds in order to fund the System and decrease the unfunded liability of the System; (b) to refund or otherwise prepay any Bonds or other evidences of indebtedness issued by the System; (c) to pay or provide for the payment of Financing Costs, including

VI-1

SECTION 702.    Extension of Payment of Bonds.
The System shall not directly or indirectly extend or assent to the extension of the maturity of any of the Bonds or claims for interest by the purchase or funding of such Bonds or by any other arrangement. Nothing herein shall be deemed to limit the right of the System (i) to issue Option Bonds or Refunding Bonds as provided in herein, and such issuance shall not be deemed to constitute an extension of maturity of Bonds, or (ii) to apply any amount in the Debt Service Account or the Redemption Account to the purchase or redemption of Bonds as provided in this Resolution.

SECTION 703.    Offices for Servicing Bonds.
The Fiscal Agent shall at all times maintain one or more offices or agencies where notices, demands and other documents may be served upon the System in respect of the or this Resolution. The System hereby appoints the Fiscal Agent as its agent to receive such notices, demands and documents.

SECTION 704.    Further Assurance.    At any and all times the System shall, so far as it may be authorized by law, pass, make, do, execute, acknowledge and deliver, all and every such further resolutions, acts, deeds, conveyances, assignments, transfers and assurances and record the same in any office or register as may be necessary or desirable for the better assuring, conveying, granting, assigning and confirming all and singular the rights and other moneys, securities and funds hereby pledged or assigned, or intended so to be, or which the System may become bound to pledge or assign and, if required by law, to perfect the security interest created thereby.

SECTION 705.    Power to Issue Bonds and Assign Funds and Accounts. The System is duly authorized under the Act to create and issue the Bonds and to adopt this Resolution and to create a security interest on the Pledged Property in the manner and to the extent provided in this Resolution. The Pledged Property is and will be free and clear of any pledge, lien, charge or encumbrance thereon or with respect thereto except as permitted by this Resolution, and all action on the part of the System to that end has been and will be duly and validly taken. The Bonds are and will be the valid and legally binding special obligations of the System, enforceable in accordance with their terms and the terms of this Resolution. The System shall at all times, to the extent permitted by law, defend, preserve and protect the assignment of the Pledged Property and all the rights of the Fiscal Agent, the Beneficiaries and the Bondowners under this Resolution against all claims and demands of all persons whomsoever.

SECTION 706.    Creation of Liens.    Until the security interest created in Section 501 of this Resolution shall be discharged and satisfied as provided in Section 1301, the System shall not (i) issue any bonds or other evidences of indebtedness, other than the Bonds, secured by the Pledged Property, nor create or cause to be created any lien or charge on the Pledged Property, other than as permitted by this Resolution, nor (ii) at any time when the System is in default in making any payment required to be made under this Resolution or maintaining the balance in any Fund, Account or Subaccount required to be maintained in the amount required therefor by this Resolution, set apart or appropriate and pay any amount from any Fund, Account or Subaccount, except as required by this Resolution. The System may not issue Bonds with a payment priority or claim against the Pledged Property that is senior to that of the Senior Bonds. The System, in its discretion, may determine to execute and deliver Subordinated Bonds or Subordinate Obligations, subject to compliance with Section 708 or 204 hereof.

SECTION 707.    Accounts and Reports.

1.    The System shall keep proper books of record and account (separate from all other records and accounts) in which complete and correct entries shall be made of its transactions relating to the Pledged Property and each Fund, Account and Subaccount established under this Resolution, and which, together with all books and papers of the System relating to the issuance of the Bonds, shall at all reasonable times during normal business hours be subject to the inspection of the Fiscal Agent (it being understood that the Fiscal Agent shall have no duty so to inspect).

2.    The System shall file with the Fiscal Agent and the Ancillary Facility Providers forthwith upon becoming aware of any Event of Default, or the occurrence of any event which with notice or lapse of time or both would be an Event of Default, in the performance by the System of any covenant, agreement or condition contained in this Resolution, a certificate signed by an Authorized Officer of the System specifying such Event of Default or other event as described in this paragraph, and if any such Event of Default or other such event shall so exist, specifying the nature and status of such Event of Default or other such event.

SECTION 708.    Issuance of Additional Bonds.
The System may issue additional Bonds, from time to time, in one or more Series within any Class, on a parity with each such Series of Bonds within such Class, and secured by the Pledged Property, upon meeting the following requirements:

1.    There shall have been delivered to the Fiscal Agent the following documents:

(i)    a report (the "Consultant's Report") from a nationally recognized, independent, economic consultant, dated no earlier than 12 months before the date of issuance of the additional Bonds, identifying the projected Employers' Contributions for each Bond Year through the final Maturity of all outstanding Bonds proposed to be issued, and the assumptions used in such projections, it being agreed that the report, dated January 11, 2008, of Global Insight, Inc. delivered in connection with the issuance of the Series A Bonds (the "Global Insight Report") shall satisfy the obligations of the System under this paragraph (i) if delivered to the Fiscal Agent in connection with the delivery of any additional Bonds or Parity Obligations hereunder prior to January 1, 2009;

(ii)    a Supplemental Resolution adopted pursuant to requirements of Section 202; and

(iii)    a certificate of an Authorized Officer of the System setting forth for each Bond Year listed in the report in clause (i) above the Accrued Payment Obligation for the additional Bonds proposed to be issued and all Bonds and Parity Obligations to be Outstanding immediately after the issuance of said additional Bonds. The certificate shall state that (a) the System has reviewed the Consultant's Report and believes that the assumptions used are reasonable (provided

VI-15

_____

**EMPLOYEE RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

_____

**AMENDED AND RESTATED
FIRST SUPPLEMENTAL PENSION FUNDING BOND RESOLUTION**

**authorizing**

**SENIOR PENSION FUNDING BONDS
SERIES A**

_____

Adopted on January 29, 2008

_____

Confidential

"**Participants**" means those broker-dealers, banks and other financial institutions for which DTC holds Series A Bonds as securities depositary.

"**Record Date**" means the fifteenth calendar day (whether or not a Business Day) next preceding such Interest Payment Date.

"**Series A Bonds**" means the System's Senior Pension Funding Bonds, Series A, authorized by Article II of this Supplemental Resolution.

"**Term Bonds**" means the Series A Bonds maturing July 1, 2023, 2031, 2032, 2033, 2038, 2039, 2040, 2041, 2042, 2055, 2056, 2057, and 2058.

SECTION 1.3. <u>Interpretation</u>. Unless the context clearly otherwise requires, this Supplemental Resolution shall be interpreted in accordance with applicable provisions of the General Resolution.

SECTION 1.4. <u>Authority for this Supplemental Resolution</u>. This Supplemental Resolution is adopted pursuant to the provisions of the Act and the General Resolution.

VII-2

Confidential

EXHIBIT A

**FORM OF TERM BONDS**

**No. AR-__**                                                                                      $_____

**EMPLOYEE RETIREMENT SYSTEM OF THE**
**GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**
**SENIOR PENSION FUNDING BOND**
**SERIES A**

| <u>DATED DATE</u> | <u>MATURITY DATE</u> | <u>INTEREST RATE</u> | <u>CUSIP NO.</u> |
|---|---|---|---|
| January __, 2008 | _____ 1, _____ | _____% | _____ |

**REGISTERED OWNER:**      Cede & Co.

**PRINCIPAL AMOUNT:**      _____ DOLLARS

      **EMPLOYEE RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO** (herein sometimes called the "System"), a trust created pursuant to Act 447 of May 15, 1951, as amended (the "Act"), to provide pension and other benefits to retired employees of the central government, municipalities and public corporations of the Commonwealth of Puerto Rico (the "Commonwealth"), acknowledges itself indebted, and for value received, hereby promises to pay to the REGISTERED OWNER named above or registered assigns or legal representative, upon presentation and surrender of this Series A Bond at the Corporate Trust Office (as defined in the General Resolution hereinafter mentioned) of the Fiscal Agent hereinafter mentioned on the MATURITY DATE specified above (unless redeemed prior thereto as hereinafter provided), the PRINCIPAL AMOUNT specified above, and to pay interest thereon from the most recent interest payment date to which interest has been paid, or, if no interest has been paid, from the DATED DATE specified above, until the earlier of the maturity or redemption of this Series A Bond, at the per annum INTEREST RATE specified above, payable on each Interest Payment Date (as defined in the Supplemental Resolution hereinafter mentioned), commencing March 1, 2008. Both the principal of and the interest on this Series A Bond are payable in any coin or currency of the United States of America which, on the respective dates of payment thereof, shall be legal tender for the payment of public and private debts. Payment of the interest on this Series A Bond on any interest payment date will be made to the person appearing on the registration books of the System maintained by the Fiscal Agent as the registered owner hereof as of the fifteenth calendar day (whether or not a business day) next preceding such interest payment date, such interest to be paid by check mailed to the registered owner at such registered owner's address or, at the option of a registered owner of at least $1,000,000 in aggregate principal amount of the Series A Bonds (hereinafter defined) who so requests the Fiscal Agent in writing at least 15 calendar days prior to such interest payment date, by wire transfer.

VII-11

additional Bonds may be issued, the rights and remedies of the registered owners of the Bonds with respect thereto, and to other terms and provisions of the Bonds. To the extent and in the manner permitted by the terms of the General Resolution, the provisions of the Resolution or any resolution amendatory thereof or supplemental thereto may be modified or amended.

The registered owner of this Series A Bond shall have no right to enforce the provisions of the Resolution, to institute action to enforce the provisions of the Resolution or to institute, appear in or defend any suit or other proceeding with respect thereto, *except* as provided in the Resolution.

This Series A Bond is transferable, as provided in the Resolution, only upon the books of the System maintained for that purpose at the Corporate Trust Office of the Fiscal Agent by the registered owner hereof in person or by his attorney duly authorized in writing, upon surrender of this Series A Bond together with a written instrument of transfer duly executed by the registered owner or such registered owner's attorney duly authorized in writing, and thereupon a new fully registered Series A Bond or Bonds in the same aggregate principal amount, and of the same series, maturity and interest rate, shall be issued to the transferee in exchange therefor as provided in the General Resolution and upon the payment of the charges, if any, therein prescribed. The System and the Fiscal Agent may treat and consider the person in whose name this Series A Bond is registered as the absolute owner hereof for the purpose of receiving payment of, or on account of, the principal or redemption price, if any, hereof and interest due hereon and for all other purposes whatsoever.

This Series A Bond shall not be valid or become obligatory for any purpose or be entitled to any security or benefit under the Resolution until the Certificate of Authentication hereon shall have been signed by the Fiscal Agent.

**IT IS HEREBY CERTIFIED, RECITED AND DECLARED** that all acts, conditions and things required by the Constitution and statutes of the Commonwealth and the Resolution to exist, to have happened and to have been performed precedent to and in the issuance of this Series A Bond, exist, have happened and have been performed in due time, form and manner as required by law and that the issue of the Bonds, together with all other indebtedness of the System, is within every debt and other limit prescribed by law.

Confidential
UBS-ERS_Ultra_Vires-0044133

**Appendix VIII**

**Form of Opinion of Bond Counsel**

**FIDDLER GONZALEZ & RODRIGUEZ, P.S.C.**

ATTORNEYS AND COUNSELLORS AT LAW

PO BOX 363507

SAN JUAN, PR 00936-3507

TELEPHONE (787) 753-3113

FAX (787) 759-3123

254 MUÑOZ RIVERA AVENUE

CORNER CHARDÓN STREET

6TH FLOOR

SAN JUAN, PUERTO RICO 00918

January 31, 2008

Employees Retirement System of the Government
   of the Commonwealth of Puerto Rico
437 Ponce de León Avenue
San Juan, Puerto Rico

> **Re:**    **$1,588,810,799.60**
> **Employees Retirement System of the Government of the**
>    **Commonwealth of Puerto Rico**
>    **Pension Funding Bonds, Series A Bonds**

Ladies and Gentlemen:

We have examined the Constitution and the laws of the Commonwealth of Puerto Rico (the "Commonwealth"), including Act No. 447 of the Legislature of Puerto Rico, approved May 15, 1951, as amended and supplemented (the "Act"), creating the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "System") as a trust, to provide pension and other benefits to retired employees of the central government, municipalities and public Systems of the Commonwealth.

We have also examined a certified copy of a Pension Funding Bond Resolution (the "General Resolution), adopted by the Board of Trustees of the System on January 24, 2008, and a First Supplemental Pension Funding Bond Resolution, adopted by the Board of Trustees of the System on January 24, 2008, and readopted, amended and restated on January 29, 2008 (the "Supplemental Resolution," and together with the General Resolution, the "Resolution"), and other proofs submitted relative to the issuance of the System's Senior Pension Funding Bonds, Series A in the aggregate principal amount of $1,588,810,799.60 (the "Bonds").

The Bonds are issuable as fully registered Bonds, without coupons, in denominations of $5,000 (maturity amount) each or integral multiples thereof.

The Bonds are issued under and pursuant to the Resolution for the purpose of (i) increasing the total assets currently available to pay benefits under the System's largest defined benefit plan, (ii) reducing the unfunded accrued actuarial pension liability of the benefit plan, and (iii) making deposits in various funds and accounts established under the Resolution.

VIII-1

The Bonds are limited, non-recourse obligations of the System, payable solely from and secured by a pledge and assignment of Employer Contributions and all other Revenues (as defined in the Resolution) derived therefrom, certain funds held under the Resolution, together with income earned thereon (collectively referred to herein as the "Pledged Property"), pledged therefor under the Resolution.

The Bonds bear interest and are subject to redemption prior to maturity as set forth in the Resolution.

The principal of the Bonds is payable at the principal corporate trust office of the Trustee in New York, New York. The interest on the Bonds is payable by check mailed to the registered owner at the address appearing on the registration books of the System on the relevant record date or, in certain circumstances set forth in the Resolution, by wire transfer to a designated account.

From such examination, and having regard to legal questions we deem relevant, we are of the opinion that:

(1)     The Act is valid in all respects material to this opinion, and the System is a duly constituted governmental instrumentality of the Commonwealth, deemed as a trust.

(2)     The Resolution has been duly adopted by, and is legal, valid and binding upon, the System, enforceable in accordance with its terms.

(3)     The Bonds have been duly authorized by the System and constitute legal, valid and binding limited obligations of the System payable solely from, and secured by a valid and binding pledge of, the Pledged Property, subject only to the provisions of the Resolution permitting use of such Pledged Property and its application for the purposes and on the terms and conditions provided in the Resolution.

(4)     The Bonds do not constitute a debt, obligation or pledge of the full faith, credit or taxing power of the Commonwealth or any of its municipalities or political subdivisions or instrumentalities (other than the System), and neither the Commonwealth nor any of its municipalities or political subdivisions or instrumentalities (other than the System), shall be liable for the payment thereof.

(5)     Interest on the Bonds is excluded from gross income and exempt from Puerto Rico income and withholdings taxes, including the alternative minimum tax imposed by Section 1017 of the Puerto Rico Internal Revenue Code of 1994, as amended (the "P.R. Code").

(6)     The Bonds are exempt from property taxes imposed by the Municipal Property Tax Act of 1991, as amended, and interest thereon is exempt from the municipal license tax imposed by the Municipal License Tax Act of 1974, as amended.

(7)     The transfer of the Bonds by (i) gift will not be subject to gift tax under the P.R. Code in the case of donors who are residents of the Commonwealth at the time the gift is made, and (ii) death will not be subject to estate tax under the P.R. Code in the case of a decedent who at the time of death was (x) a resident of Puerto Rico, and (y) a United States citizen who acquired such citizenship solely by reason of birth or residence in Puerto Rico.

(8)     Gain recognized from the sale or exchange of a Bond will be subject to income tax under the P.R. Code to taxpayers subject to Puerto Rico income tax on such gains, including individuals residing in Puerto Rico and corporations and partnerships organized under the laws of the Commonwealth.

VIII-2

UBS-ERS_Ultra_Vires-0044144

(9)     The Bonds will be considered an obligation of an instrumentality of Puerto Rico for purposes of (i) the non-recognition of gain rules of Section 1112(f)(2)(A) of the P.R. Code applicable to certain involuntary conversions, and (ii) the exemption from the surtax imposed by Section 1102 of the P.R. Code available to corporations and partnerships that have a certain percentage of their net income invested in obligations of instrumentalities of Puerto Rico and certain other investments.

(10)     Interest on the Bonds constitutes "industrial development income" under Section 2(j) of the Puerto Rico Industrial Incentives Act of 1963, the Puerto Rico Industrial Incentives Act of 1978, the Puerto Rico Tax Incentives Act of 1987, and the Puerto Rico Tax Incentives Act of 1998, as amended (collectively, the "Acts"), when received by a holder of a grant of tax exemption issued under any of the Acts that acquired the Bonds with "eligible funds," as such term is defined in the Acts.

Based on the provisions of the United States Internal Revenue of 1986, as amended (the "U.S. Code"), and the regulations thereunder, now in force:

(1)     Interest on the Bonds received by, or "original issue discount" (within the meaning of the U.S. Code) accrued to, an individual who is a *bona fide* resident of Puerto Rico within the meaning of Section 937 of the U.S. Code during the entire taxable year in which such interest is received or "original issue discount" is accrued will constitute gross income from sources within Puerto Rico and, therefore, is excludable from gross income for purposes of the U.S. Code pursuant to section 933(1) thereof.

(2)     Interest received or accrued, or original issue discount, on the Bonds is not subject to United States federal income tax if the holder of the Bonds is a corporation organized under the laws of Puerto Rico ("Puerto Rico Corporation") or any foreign country and such interest is not effectively connected with the conduct of a trade or business in the United States by such corporation, such corporation is not a foreign personal holding company, a controlled foreign corporation or a passive foreign investment company under the U.S. Code, and such corporation is not treated as a domestic corporation for the purposes of the U.S. Code.

(3)     Interest on the Bonds is not excludable from the gross income of the recipient thereof for federal income tax purposes under Section 103(a) of the U.S. Code.

(4)     Pursuant to the provisions of Section 1.937-2T of the Regulations issued under the U.S. Code ("Temporary Regulations"), the source of the income from the sale of personal property by a bona fide resident of Puerto Rico within the meaning of Section 937 of the Code shall be determined under the rules of Section 865 of the U.S. Code.  Accordingly, the gain on the sale or exchange of the Bond recognized by an individual who is a *bona fide* resident of Puerto Rico, within the meaning of Section 937 of the U.S. Code,  during the entire taxable year will constitute Puerto Rico source income and, therefore, qualify for the income exclusion under in Section 933(1) of the U.S. Code, provided (i) that such  Bonds do not constitute inventory in the hands of such individual and (ii)  if the Bonds were owned before the individual  became a bona fide resident of Puerto Rico, that for any of the 10 years preceding the taxable year for which the source of the gain must be determined, the individual was not a resident of the United States (other than a bona fide resident of Puerto Rico).

A Puerto Rico Corporation that invests in the Bonds will be subject to U.S. federal income tax on a gain from a disposition of Bonds only if the gain is effectively connected to a U.S. trade or business carried on by the Puerto Rico Corporation.

VIII-3

Confidential

(5)    The transfer of the Bonds by death or gift will not be subject to estate or gift tax under the U.S. Code in the case of decedents or donors who, at the time of death or gift, are (a) residents of Puerto Rico and (b) (i) United States citizens that acquired such citizenship solely by reason of birth or residence in Puerto Rico or (ii) not United States citizens.

In addition to the opinions above we would like to bring to your attention that: (a) the P.R. Code does not provide rules with respect to the treatment of the excess, if any, of the amount due at maturity of a Bond over its initial offering price (the "Accretion Amount") and that under the current administrative practice followed by the Puerto Rico Department of the Treasury, the Accretion Amount is treated as interest; (b) prospective owners of the Bonds, including but not limited to financial institutions, should be aware that ownership of the Bonds may result in having a portion of their interest and other expenses attributable to interest on the Bonds disallowed as deductions for purposes of computing the regular tax and the alternative minimum tax for Puerto Rico income tax purposes; and (c) the U.S. Code provides special rules for the taxation of shareholders of foreign corporations that qualify as "controlled foreign corporations," "personal holding companies," "foreign personal holding companies" or "passive foreign investment companies," as such terms are defined by the U.S. Code.

In connection with the foregoing statements about certain United States federal tax consequences arising from the ownership of, receipt or accrual of interest on, or the disposition of the Bonds, be advised that pursuant to the U. S. Internal Revenue Service Circular No. 230:

(a)    These tax statements are not intended or written to be used, and cannot be used by any taxpayer, for purposes of avoiding penalties that may be imposed on the taxpayer by the Internal Revenue Service.

(b)    These statements were written in connection with the promotion or marketing of the Bonds.

(c)    Each prospective purchaser of the Bonds should seek tax advice from an independent tax advisor based on its particular circumstances.

We express no opinion regarding any other federal, Commonwealth or state tax consequences with respect to the Bonds.  We are rendering our opinion under existing statutes and court decisions, and regulations as of the issue date, and assume no obligation to update our opinion after the issue date to reflect any future action, fact or circumstance, or change in law or interpretation, or otherwise.

In rendering this opinion, we are advising you that the enforceability of the Bonds and the Resolution may be limited by bankruptcy, moratorium, insolvency, or other laws affecting creditors' rights or remedies and is subject to general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

We have also examined an executed Bond and in our opinion the form of said Bond and its execution are regular and proper.

Very truly yours,

VIII-4