# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## OBJECTION OF GOLDENTREE ASSET MANAGEMENT LP TO AMBAC ASSURANCE CORPORATION'S MOTION FOR ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH ASSETS

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT FACTUAL BACKGROUND.....................................................................4

I.     PRIDCO AND ITS OUTSTANDING DEBT OBLIGATIONS .......................4

II.    AMBAC'S LACK OF SUPPORT FOR THE FORTHCOMING AMENDED
       COMMONWEALTH PLAN OF ADJUSTMENT ..........................................7

DISCUSSION ..................................................................................................................8

I.     RULE 2004 AUTHORIZES ONLY DISCOVERY RELATED TO THE
       FINANCIAL CONDITION OF THE DEBTOR AND PRIDCO IS NOT THE
       DEBTOR.............................................................................................................8

II.    AMBAC HAS FAILED TO SHOW GOOD CAUSE FOR THE DISCOVERY
       SOUGHT AS TO PRIDCO .................................................................................9

III.   THE PROPOSED DISCOVERY IS NOT RELEVANT BECAUSE PRIDCO'S
       ASSETS CANNOT BE SOLD OR OTHERWISE UTILIZED TO PAY
       COMMONWEALTH CREDITORS .................................................................13

RESERVATION OF RIGHTS .......................................................................................15

CONCLUSION...............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### Cases

*In re Buick*,
  174 B.R. 299 (Bankr. D. Colo. 1994) ....................................................................... 10

*In re China Fishery Grp. Ltd.*,
  2017 WL 3084397 (Bankr. S.D.N.Y. July 19, 2017) ............................................... 10

*In re Coffee Cupboard*,
  128 B.R. 509 (E.D.N.Y. 1991) .............................................................................. 8, 9

*In re Drexel Burnham Lambert Group, Inc.*,
  123 B.R. 702 (Bankr. S.D.N.Y. 1991) ..................................................................... 10

*In re Eagle Pitcher Indus., Inc.*,
  169 B.R. 130 (Bankr. S.D. Ohio 1994) ..................................................................... 9

*In re Gawker Media LLC*,
  2017 WL 2804870 (Bankr. S.D.N.Y. June 28, 2017)............................................... 10

*In re Hilsen*,
  2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) ................................................ 8

*In re Johns–Manville, Inc.*,
  42 B.R. 362 (S.D.N.Y.1984)...................................................................................... 9

*In re Metiom, Inc.*,
  318 B.R. 263 (S.D.N.Y. 2004) .................................................................................. 9

*In re Strecker*,
  251 B.R. 878 (Bankr. D. Col. 2000) ......................................................................... 8

*In re Wilcher*,
  56 B.R. 428 (Bankr. N.D. Ill. 1985) .......................................................................... 9

*In re Youk-See*,
  450 B.R. 312 (Bankr. D. Mass. 2011) ...................................................................... 10

### Statutes and Rules

48 U.S.C. § 2101 ......................................................................................................... 2

Fed. R. Bankr. P. 2004........................................................................................ 1, 2, 8, 10

Fed. R. Bankr. P. 2004(a) ............................................................................................ 8

Fed. R. Bankr. P. 2004(b) ............................................................................................ 8

23 L.P.R.A. § 274(b)................................................................................................. 2, 4

23 L.P.R.A. § 271 ....................................................................................................... 4

23 L.P.R.A. § 278 ....................................................................................................... 4

23 L.P.R.A. § 283 ....................................................................................................... 4

23 L.P.R.A. § 288 ................................................................................................................... 5, 14

1.      GoldenTree Asset Management LP, on behalf of certain funds and accounts it

manages ("GTAM"), by its undersigned attorneys, respectfully submits this objection to Ambac

Assurance Corporation's ("Ambac") Motion For Entry Of Order Authorizing Discovery Under

Bankruptcy Rule 2004 Concerning Commonwealth Assets (ECF. No. 15802) (the "Motion")[2]

and to reserve rights on behalf of funds and accounts holding over two-thirds of the secured

bonds (the "PRIDCO Bonds") issued by non-debtor Puerto Rico Industrial Development

Company ("PRIDCO") under a Trust Indenture dated July 1, 1964 (as amended, supplemented,

or otherwise modified from time to time, the "Indenture")[3] and respectfully states as follows:

## PRELIMINARY STATEMENT

2.      Ambac's Motion is based on the deeply flawed premise that assets of the

Commonwealth of Puerto Rico's independent public corporations belong to the Commonwealth

and/or can be made available to satisfy Commonwealth obligations.  Ambac, which asserts that it

is a holder of bonds issued by the Commonwealth of Puerto Rico and certain unspecified

instrumentalities (which Ambac loosely defines as the "Government"), seeks discovery under

Bankruptcy Rule 2004 regarding the assets of six Government entities—including PRIDCO,

---

[2]   On February 18, 2021, Assured Guaranty Corp., Assured Guaranty Municipal Corp. (f/k/a Financial Security Assurance Inc.), Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation, others, submitted a joinder to the Motion (ECF. No. 15859) (the "Assured Joinder"), asserting that the requested discovery is "critical to evaluating any proposed plan of adjustment" (*see* Assured Joinder at 2) and seeking the ability to receive notice of and participate in the discovery requested by Ambac.  On March 2, 2021, The Official Committee of Unsecured Creditors submitted a joinder to the Motion (ECF. No. 15899) (the "UCC Joinder") asserting that "[t]he Commonwealth's creditors need transparency into its financial condition to fully evaluate any proposed plan of adjustment and to understand the full range of Commonwealth assets available to pay its creditors" and asking for the opportunity to participate in any discovery or meet and confer related to the Motion.  UCC Joinder at 2.

[3]   Relevant portions of the Indenture are attached hereto as Exhibit A.  The complete Indenture and amendments, which are voluminous, will be made available upon request.

against which Ambac has no recourse.[4]  Given its substantial claims against non-debtor

PRIDCO—which remain unpaid—GTAM files this Objection insofar as the Motion pertains to

that entity.

3.      The Motion should be denied as to PRIDCO because it seeks discovery that is

beyond the scope of what is permissible under Bankruptcy Rule 2004 in the Commonwealth's

Title III proceedings and that is inconsistent with what assets are available to the Commonwealth

under Puerto Rico law.  Critically, while GTAM agrees with Ambac that PRIDCO has

substantial assets (more than enough to repay the PRIDCO Bonds), the fact remains it is not a

debtor for purposes of PROMESA as it is not the subject of this (or any other) Title III case.

Moreover, PRIDCO has not been substantively consolidated with any debtor before this Court,

nor could it be because even if a Title III case as to PRIDCO were filed, PROMESA provides

that "nothing in this title shall be construed as authorizing substantive consolidation of the cases

of affiliated debtors."  Puerto Rico Oversight, Management and Economic Stability Act §304(f),

48 U.S.C. § 2101.  Finally, the Commonwealth cannot access PRIDCO's assets under any

statutory or constitutional provision of applicable state law—an important issue that Ambac

glosses over in its discovery request.

4.      Under applicable non-bankruptcy law, PRIDCO is a legal entity "separate and

apart from that of the Government."  23 L.P.R.A. § 274(b).  And, while the Motion attempts to

---

[4]   According to Ambac's Puerto Rico Exposure Fourth Quarter 2020 report, Ambac does not
hold PRIDCO debt.  The vast majority of its Puerto Rico exposure is in Highway and
Transportation Revenue Bonds issued by the HTA, and Rum Tax bonds issued by Puerto Rico
Infrastructure Financing Authority ("PRIFA").  Only a small fraction of its exposure appears to
relate to claims against the Commonwealth.  *See* Ambac, *Puerto Rico Exposure* (Fourth Quarter
2020), https://s1.q4cdn.com/967481927/files/doc_presentations/2020/Q4'20/Ambac-4Q20-
Puerto-Rico-Exposure-FINAL.pdf.

lump PRIDCO with other Commonwealth entities whose assets may, in contrast, be subject to the Commonwealth's "claw back" rights, the Motion rings hollow with respect to property of separate legal entities, like PRIDCO, who by state law have their own assets.  Ambac's attempt to paint with too broad a brush does not end there.  Ambac also fails even to mention that PRIDCO is a non-debtor, not subject to Title III, or that its income-generating assets are the subject of security interests and other restrictions on disposition under the terms of the Indenture and PRIDCO's Enabling Act.

5.      Thus, contrary to the very premise of the Motion, PRIDCO's assets cannot be "sold or otherwise monetized" (Motion at ¶ 24) for the purposes of paying the Commonwealth's creditors.  The Commonwealth (acting both through the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Oversight Board) agrees.  In June 2019, AAFAF negotiated a restructuring support agreement ("RSA") for PRIDCO with GTAM—to be consummated under Title VI of PROMESA—which the Oversight Board is currently reviewing. The RSA provides for PRIDCO's assets to be used, as they must, to satisfy PRIDCO's obligations.  So, the notion that Ambac can demonstrate "good cause" entitling it to information about PRIDCO's assets to determine the Government's ability to monetize PRIDCO assets and use the proceeds to pay *the Commonwealth's creditors* under a plan of adjustment blurs important legal lines and exceeds the bounds of Rule 2004.  For its part, the Oversight Board has proposed a Commonwealth plan of adjustment—which will be amended shortly—that leaves PRIDCO's assets at PRIDCO, where they belong under state law.

6.      Ambac has made clear its intention to challenge the Commonwealth's forthcoming amended plan of adjustment.[5]  Whatever objections Ambac intends to assert, it can do so based on the irrefutable assumption that PRIDCO is financially solvent and owns valuable commercial real estate, none of which is being made available to Commonwealth creditors.  Rule 2004 discovery is not needed to establish that plain fact.  Ambac's fishing expedition is irrelevant to the Commonwealth Title III case and will interfere with the business initiatives of PRIDCO—a solvent, independent Government instrumentality that is vitally important to Puerto Rico's future.

7.      For the reasons that follow, the Motion should be denied, at least with respect to PRIDCO and its property.[6]

## RELEVANT FACTUAL BACKGROUND

## I.    PRIDCO AND ITS OUTSTANDING DEBT OBLIGATIONS

8.      PRIDCO is a public corporation organized and existing under the laws of the Commonwealth of Puerto Rico.  Pursuant to its Enabling Act, 23 L.P.R.A. §§ 271 *et seq.* (the "Enabling Act"), PRIDCO has "legal existence and personality separate and apart from that of the Government and of all officials thereof."  23 L.P.R.A. § 274(b).  PRIDCO enjoys fiscal autonomy from the Commonwealth, is governed by its own board of directors, and has the power to administer its own affairs and control and dispose of its own property.  23 L.P.R.A. § 278. "All the moneys of the Company shall be . . . kept in a separate account or accounts in the name of the Company."  23 L.P.R.A. § 283.  In the Enabling Act, the Commonwealth expressly

---

[5]  *See Ambac Withholds Support of 'Flawed' PSA, Pushes 'Global' Restructuring That Covers Revenue Bonds,* Reorg Research, March 2, 2021, attached hereto as Exhibit B.

[6]  GTAM takes no position regarding the appropriateness of discovery from the other Commonwealth entities as to which it is not a creditor.  However, many of the arguments herein have general applicability to Ambac's discovery requests.

pledged that it would not "encumber, limit, or restrict the properties, income, revenues, rights, or powers hereby vested in PRIDCO, until all such bonds or other obligations of PRIDCO at any time issued, together with the interest thereon, *are fully met and discharged*." 23 L.P.R.A. § 288 (emphasis added).  The Commonwealth has not asserted (nor would there be a basis for it to assert) any claw back rights with respect to any property of PRIDCO.

9.      PRIDCO has issued two series of PRIDCO Bonds that remain outstanding under the Indenture, more than two-thirds of which are held by funds and accounts managed by GTAM.  Pursuant to Section 601 of the Indenture, the PRIDCO Bonds are secured by and payable from PRIDCO's gross revenues from certain revenue-producing real properties that are classified as "Trusteed Properties" under the Indenture and, if required, from other available PRIDCO funds.[7] *See* Ex. A, Section 601.  The pledge of "gross revenues" is spelled out in the Indenture to include "all of the cash income received by the Company, without deduction for any expenses or charges, on account of its ownership or operation of the Trusteed Properties."  *Id.* Section 101.  The Trustee for the PRIDCO Bonds filed a UCC-1 financing statement against PRIDCO relating to the PRIDCO Bonds asserting a security interest in "all of the Debtor's present and future right, title and interest in and to the gross revenues of the Trusteed Properties." *See* UCC-1 Financing Statement 2015005891 filed by U.S. Bank Trust National Association as Trustee attached hereto as Exhibit C.

---

[7]  The security for the PRIDCO Bonds was summarized by the Commonwealth's Government Development Bank for Puerto Rico as follows: "Security. These bonds are payable from the gross revenues derived from some of its properties ("Trusteed Properties") and, if required, from any other available funds of PRIDCO. The bonds are further secured by a debt service reserve equal to maximum annual debt service reserve on all outstanding General Purpose Revenue Bonds. Trusteed Properties consist mainly of industrial buildings built by PRIDCO and leased to private firms. The revenues derived from Trusteed Properties are from rental payments." *See Puerto Rico Industrial Development Company*, Government Development Bank for Puerto Rico, http://www.gdb-pur.com/investors_resources/pridco.html (last visited March 1, 2021).

10.     Section 608 of the Indenture imposes restrictions on PRIDCO's ability to sell Trusteed Properties, as any sale of Trusteed Properties would reduce the revenues pledged to the PRIDCO bondholders as security for amounts due on the PRIDCO Bonds.  Indenture Section 608 (as amended) provides that "[t]he Company covenants that, except as in this Indenture otherwise permitted, it will not sell or otherwise dispose of or encumber . . . the Trusteed Properties or any part thereof."  *See* Ex. A, Section 608.  The section goes on to require that PRIDCO file certain certificates with the Trustee to establish that the anticipated proceeds from the Trusteed Properties, not including the property to be sold, is at least 125% of the "maximum Principal and Interest Requirements for any fiscal year thereafter on account of all bonds theretofore issued under the provisions of this Indenture."  *Id* (as amended).  PRIDCO must comply with these certification requirements prior to any sale of Trusteed Properties.

11.     Since at least August 2016, PRIDCO has deprived holders of PRIDCO Bonds of the gross revenues pledged in the Indenture, and has been in default of its obligations to make required principal and interest payments since October 2017.  The PRIDCO Bonds have been and remain in default, despite that PRIDCO has ample cash flow available to pay its bondholders.[8]

---

[8]   According to PRIDCO's fiscal plan, annual revenues generated by the Trusteed Properties, which serve as collateral for the PRIDCO bonds, are projected to equal approximately $37 million.  *See 2020 Fiscal Plan for the Puerto Rico Industrial Development Company, Fiscal Years 2021 to 2025, As certified by the Oversight Board, AAFAF*, at 9 (June 29, 2020) ("PRIDCO 2020 Fiscal Plan"), https://www.aafaf.pr.gov/wp-content/uploads/2020-PRIDCO-Fiscal-Plan-as-Certified-by-FOMB-on-June-29-2020.pdf (footnote omitted).  In addition, according to AAFAF's most recent bank account balances report, PRIDCO's bank account balance as of December 31, 2020 was $111.7 million.  *See* AAFAF, *Summary of Bank Account Balances for the Government of Puerto Rico and its Instrumentalities*, at 17 (February 1, 2021), https://www.aafaf.pr.gov/wp-content/uploads/2e-aafaf-bank-account-balances-gov-pr-instrum-12-30-2020.pdf.

12.     PRIDCO is not a debtor or the subject of a Title III proceeding before this Court. In June 2019, invoking PROMESA's mechanism for out-of-court negotiations, GTAM, PRIDCO and AAFAF entered into the RSA, which contemplates a consensual restructuring of the PRIDCO Bonds through a Qualifying Modification under Title VI of PROMESA.  In signing the RSA, PRIDCO and AAFAF conveyed their shared intention to restructure PRIDCO's obligations through a voluntary qualifying modification, rather than a plan of adjustment under Title III.  The RSA remains in force as of the date of this Objection.  In its latest pronouncement regarding PRIDCO's portending debt, the Oversight Board has recognized the potential for a Title VI filing related to PRIDCO, noting that "PRIDCO has public bonds in the outstanding principal amount of approximately $150 million and $23 million in interest accrued thereon." Status Report of Financial Oversight and Management Board in Connection With October 28, 2020 Omnibus Hearing, ECF. No. 14958. at 7-8.

## II.     AMBAC'S LACK OF SUPPORT FOR THE FORTHCOMING AMENDED COMMONWEALTH PLAN OF ADJUSTMENT

13.     Ambac has publicly declared that it will withhold its support for an amended plan of adjustment that the Commonwealth intends to submit to this Court on March 8.  *See* Exhibit B.  Reportedly, Ambac is of the view that the forthcoming plan is flawed because it "provid[es] for the use of money belonging to the secured revenue bondholders" and urges that a restructuring plan that "respects property rights and security interests of revenue bondholders" be advanced.  *Id.*

14.     Ambac contends that the discovery sought in the Motion "is critically important to considering any potential plan of adjustment because available information shows that the Commonwealth owns real property assets worth ***well over $1.3 billion dollars.***"  Ambac thus relies on its intent to object to the amended plan as a basis to conduct extensive and burdensome

discovery of PRIDCO, a solvent non-debtor entity whose assets are not available to the

Commonwealth or its creditors.

## DISCUSSION

### I.  RULE 2004 AUTHORIZES ONLY DISCOVERY RELATED TO THE FINANCIAL CONDITION OF THE DEBTOR AND PRIDCO IS NOT THE DEBTOR

15.    Bankruptcy Rule 2004(a) provides: "On motion of any party in interest, the court

may order the examination of any entity."  Bankruptcy Rule 2004(b) provides:

> The examination of an entity under this rule or of the debtor under §343 of the
> Code may relate only to the acts, conduct, or property or to the liabilities and
> *financial condition of the debtor*, or to any matter which may affect the
> administration *of the debtor's estate*, or to the debtor's right to a discharge.

(emphasis added).

16.    "[Rule] 2004 examinations are not an unfettered and totally unqualified tool for

'fishing' for adverse information."  *In re Strecker*, 251 B.R. 878, 880-82 (Bankr. D. Col. 2000)

(citation omitted).  "[T]here are important limits to the scope of an examination taken pursuant to

Rule 2004 . . . A 2004 examination should only be used for the legitimate purpose of obtaining

information relating to 'the acts, conduct, or property or to the liabilities and financial condition

*of the debtor* or to any matter which may affect the administration *of the debtor's* right to

discharge.'"  *In re Coffee Cupboard*, 128 B.R. 509, 514 (E.D.N.Y. 1991) (citations omitted)

(emphasis added).

17.    While Ambac may be correct in arguing that "the target of the Rule 2004

discovery is not limited to the debtor itself," Motion at ¶18, it misses the critical limitation that

Rule 2004 discovery applies only to discovery sought in connection with the debtor's assets, not

the assets of other entities.  *In re Hilsen*, 2008 WL 2945996, at *4 (Bankr. S.D.N.Y. July 25,

2008) (Federal Rule of Bankruptcy Procedure 2004 "[i]s not a proper means to inquire with

respect to non-estate property"); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (citing

*In re Johns–Manville, Inc.*, 42 B.R. 362, 364 (S.D.N.Y.1984)) (holding a requested Rule 2004

examination was improper because it sought discovery as to "matters having no relationship to

the debtor's affairs or no effect on the administration of the estate").

18.     Here, Ambac seeks discovery related to the assets of PRIDCO, which is not a

Title III debtor or subject to substantive consolidation.  Ambac has not alleged, let alone

established, that PRIDCO is a debtor for purposes of Rule 2004, or that there is any valid legal

basis to disregard PRIDCO's separateness under its Enabling Act and deem PRIDCO to be a

debtor.  Ambac also has failed to provide any basis whatsoever to make the leap necessary to

allow PRIDCO's assets to be clawed back or otherwise be considered assets of the Government,

HTA, PRIFA or any other Government entity of which Ambac may be a creditor.  Simply using

an imprecise definition of "Government" in its Motion does not entitle Ambac to the broad relief

it seeks.

19.     That Ambac's proposed discovery from PRIDCO does not relate to the "financial

condition of the debtor" alone requires denial of the Motion.

## II.   <u>AMBAC HAS FAILED TO SHOW GOOD CAUSE FOR THE DISCOVERY SOUGHT AS TO PRIDCO</u>

20.     Courts are "required to make a finding of good cause" prior to granting discovery

pursuant to Rule 2004.  *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004).  "[T]he one

seeking to conduct a Rule 2004 examination has the burden of showing good cause for the

examination it seeks."  *In re Eagle Pitcher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio

1994) (citations omitted).  *See also In re Coffee Cupboard*, 128 B.R. at 514 ("The burden of

showing good cause is an affirmative one in that it is not satisfied merely by a showing that

justice would not be impeded by production of the documents") (citing *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)) (emphasis added).

21.     Ambac, as the party seeking Rule 2004 discovery, has the burden to show good cause for the examination it seeks, and relief lies within the sound discretion of the Court.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5 (Bankr. S.D.N.Y. June 28, 2017); *In re Buick*, 174 B.R. 299, 304 (Bankr. D. Colo. 1994).

22.     Good cause can be established by a showing that the information requested is necessary to the claim of the party seeking examination or that denial of the request would cause the examiner undue hardship or injustice.  *See In re Gawker Media LLC*, 2017 WL 2804870, at *5; *In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011).  Courts also "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination. That documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production."  *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *5 (Bankr. S.D.N.Y. July 19, 2017).

23.     This Court also has established sound limits on the permissible scope of discovery that can be obtained under Rule 2004.  *See* Memo. Order Den. Mot. To Strike Certain Rule 2004 Appls., ECF. No. 10332, at 9 (Jan. 23, 2020) (Swain, J.) (limiting Rule 2004 discovery to "a core body of information in a manner that will not be unduly expensive or disruptive of operations and that will facilitate efficient responses to future similar requests").

24.     Here, Ambac has entirely failed to carry its burden of showing good cause with respect to discovery from PRIDCO.  Ambac contends that information regarding PRIDCO's real property assets "is critically important to considering any potential plan of adjustment."  Motion at ¶ 2.  Ambac "seeks discovery directly from [PRIDCO] to understand [its] assets and what

documents and other information they have available concerning such assets." *Id*. at ¶ 4.  Ambac purportedly needs this discovery because "it is apparent that Commonwealth Entities hold highly valuable assets that, if sold or otherwise monetized, would generate ***well over $1.3 billion*** in additional value that could be used to compensate the Commonwealth's creditors." *Id*. at ¶ 24 (emphasis in original).  Ambac believes that "[t]hese assets have significant untapped value that is available to the Commonwealth and should be considered to compensate creditors." *Id*.

25.     While GTAM agrees that PRIDCO's assets indeed have significant value, that fact leads Ambac nowhere with respect to its Motion.  To support a finding of good cause, Ambac asserts only that "[n]o meaningful evaluation can occur without an opportunity to explore the assets of . . . [PRIDCO] and evaluate the extent to which such assets can be (or have been) monetized, alienated, or encumbered." Motion at ¶ 22.  Ambac does not need discovery to "meaningful[ly] evaluate" its legal rights as a creditor of the Commonwealth.  Ambac need only review PRIDCO's Enabling Act, summarized above, along with the Indenture, and it would see the Commonwealth has no rights under applicable state law to PRIDCO's property.  Nor has Ambac explained how or why PRIDCO's assets can be made available to satisfy other Government entity debts, particularly those of which Ambac is a creditor.  Ambac appears to be assuming that all Government entities are subject to claw back merely because its largest exposures are to claw-back entities.  This is not the case with respect to PRIDCO.  When viewed in light of these incontrovertible facts, Ambac's Motion fails to establish the good cause necessary to support the Rule 2004 discovery it seeks from PRIDCO.

26.     Ambac also fails to tie its concern about evaluating a Commonwealth plan of adjustment to any specific plan.  Indeed, the only "plan" available for Ambac to review and consider when it filed its Motion was the February 2020 Plan of Adjustment (*see* Am. Title III

Joint Plan of Adjustment of the Commonwealth of Puerto Rico, *et al*, ECF. No. 11946), and that

plan did not contemplate the use of PRIDCO assets to pay Commonwealth creditors.  On

February 22, 2021, the Oversight Board entered into a Plan Support Agreement with holders and

insurers of General Obligation Bonds and Public Building Authority Bonds with the majority

holders of these bonds.  The amended plan contemplated by this Plan Support Agreement, like

the February 2020 Plan of Adjustment, does not contemplate using PRIDCO's substantial assets

to satisfy Commonwealth creditor claims.  *See Plan Support Agreement* attached to *AAFAF*

*Additional / Voluntary Event-Based Disclosure* (February 23, 2021), *https://emma.msrb.org*

*/P11470766-P11140094-P11553241.pdf*.  Thus, notwithstanding Ambac's expressed intent to

oppose the forthcoming plan, no amount of discovery from PRIDCO will truly aid in its

evaluation of the plan or formulation of its objections thereto.

27.     Finally, Ambac disregards that PRIDCO maintains a public database regarding its

real property holdings (*See PRIDCO's Properties Inventory*, http://www.pridco.com/real-

estate/Pages/Real-Estate-Catalog.aspx (last visited March 1, 2021)) and information regarding its

operations and assets has routinely been disclosed.  *See e.g.* PRIDCO 2020 Fiscal Plan; *Issuer*

*Information, PRIDCO*, https://www.aafaf.pr.gov/relations-articles/puerto-rico-industrial-

development-company-pridco/ (last visited March 1, 2021).

28.     In addition, Ambac concedes that "a limited number of documents concerning the

real property and other assets of  . . . PRIDCO" have been provided (Motion at ¶14) and the letter

attached as Exhibit G to the Motion shows that "AAFAF also produced property lists from the

records of  . . . the Puerto Rico Industrial Development Company . . . as they exist in those

entities' records."  Motion, Ex. G at 2.  Ambac and the entities that joined its Motion can access

this readily available information for a better understanding of PRIDCO's real estate and other

assets (to the extent such information is truly needed for a "meaningful evaluation" of a

Commonwealth plan) and have not demonstrated good cause for any further disclosures by

PRIDCO.

### III.   THE PROPOSED DISCOVERY IS NOT RELEVANT BECAUSE PRIDCO'S ASSETS CANNOT BE SOLD OR OTHERWISE UTILIZED TO PAY COMMONWEALTH CREDITORS

29.    The Commonwealth, not PRIDCO, is the relevant debtor for purposes of Ambac's

Rule 2004 Motion.  The information requested by Ambac from PRIDCO, however, is not

relevant to the Commonwealth's affairs or financial condition, the administration of the

Commonwealth's property, or any other legitimate purpose under Rule 2004.  As explained

above, PRIDCO is a separate entity with significant secured obligations to its own creditors that

must first be satisfied from its assets before the Commonwealth can even contemplate touching

them.  Thus, any discovery of PRIDCO's assets is, at best, premature and irrelevant to the

determination of whether Ambac and the other creditors should support any plan of adjustment

that the Government has or may propose.

30.    It has long been the established law that the assets of independent public

corporations of the Commonwealth are not the property of the central government.  This is the

case regardless of whether the assets are subject to security interests.

31.    Here, the separateness of PRIDCO's assets is even more compelling because the

vast majority (almost 90%) of the developed units of real property owned by PRIDCO are

considered "Trusteed Properties" under the Indenture in which the holders of PRIDCO Bonds

have a security interest.[9]  PRIDCO has pledged the "gross revenues" of these properties as

---

[9]    According to the 2020 Fiscal Plan, of the 1,513 units and 648 undeveloped lots in PRIDCO's
inventory, "[t]he Trusteed Properties represent 1,343 units (69 percent occupied) with over 18

security for its payment obligations on the PRIDCO Bonds, and those properties cannot be "sold or otherwise monetized … to compensate the Commonwealth's creditors," Motion at ¶ 24, without a change in ownership of these properties, and that change cannot occur because the PRIDCO Bonds prohibit it.  Indeed, Ambac itself has publicly expressed that it agrees that any plan must "respect[] property rights and security interests of revenue bondholders,"[10] which necessarily includes the rights of holders of the PRIDCO Bonds in all of the gross revenues of the Trusteed Properties.

32.    Furthermore, PRIDCO cannot sell any Trusteed Property without following the certification procedure set forth in Section 608 (as amended) of the Indenture and meeting the required revenue threshold.  This puts the lie to Ambac's suggestion that PRIDCO properties can easily be sold for its (and other Commonwealth creditors') benefit.

33.    Finally, and perhaps most important, PRIDCO's Enabling Act provides:

> The Commonwealth Government does hereby pledge to, and agree with, any person, firm, or corporation, or any federal, Commonwealth, or state agency, subscribing to or acquiring bonds or other obligations of the Company, ***that it will not encumber, limit, or restrict the properties, income, revenues, rights, or powers hereby vested in the Company, until all such bonds or other obligations at any time issued, together with the interests thereon, are fully met and discharged.***

23 L.P.R.A. § 288 (emphasis added).  Under this section of the Enabling Act, PRIDCO's Bonds must be paid in full before the Commonwealth could seek to interfere with any PRIDCO properties, assets or revenue streams.

---

million square feet of space and 63 lots with over 1 million square meters of land."  PRIDCO 2020 Fiscal Plan, at 7- 9 (footnote omitted).

10    *See* Exhibit B.

## RESERVATION OF RIGHTS

34.     GTAM reserves all rights on behalf of certain funds and accounts it manages to enforce their security interest in the Trusteed Properties and any other assets held by PRIDCO until payment due to them on the PRIDCO Bonds is made in full.

35.     GTAM reserves all rights on behalf of certain funds and accounts it manages to object to any sale, monetization or other impairment, encumbrance, or disposition of PRIDCO assets until payment due to them on the PRIDCO Bonds is made in full.

36.     GTAM reserves all rights on behalf of certain funds and accounts it manages to independently seek legal recourse (including discovery), from PRIDCO, the Board, AAFAF, or any other entity, should the RSA be abandoned or terminated in accordance with its terms.

## CONCLUSION

37.     For the reasons set forth herein, Ambac's Motion should be denied with respect to PRIDCO.

Dated: March 5, 2021

Respectfully submitted,

REICHARD & ESCALERA

**By :**   */s/ Rafael Escalera*
**Rafael Escalera**
USDC No. 122609
escalera@reichardescalera.com

**Sylvia M. Arizmendi**
USDC-PR 210714
arizmendis@reichardescalera.com

**Carlos R. Rivera-Ortiz**
USDC-PR 303409
riverac@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, Puerto Rico 00917-1913

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

**Susheel Kirpalani** (*pro hac vice*)
susheelkirpalani@quinnemanuel.com

**Daniel Salinas**
USDC-PR 224006
danielsalinas@quinnemanuel.com

**Eric Kay** (*pro hac vice*)
erickay@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1603

*Counsel to GoldenTree Asset Management LP*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for the parties of record.

*/s/Carlos R. Rivera-Ortiz*
USDC-PR 303409
