# EXHIBIT A

## CERTIFICATE OF ACTING SECRETARY
## AS TO TRUST INDENTURE

I, José Luis Ramírez, Esq., Acting Secretary of Puerto Rico Industrial Development Company (the "Company"), DO HEREBY CERTIFY that attached hereto is a true and correct copy of the Trust Indenture, dated as of July 1, 1964, by and between the Company and State Street Bank and Trust Company, N.A., as successor trustee.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the corporate seal of the Company this 6th day of November, 1997.

                                                     Acting Secretary
                                                Puerto Rico Industrial
                                                Development Company


(SEAL)



EXECUTED IN /2
WHICH THIS IS COUNTERPART NO. 2

# PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY

to

# FIRST NATIONAL CITY BANK
Trustee

# Trust Indenture

Dated as of July 1, 1964

14

ered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all bonds at any time issued and outstanding hereunder, and the interest thereon, according to their tenor, purport and effect, and in order to secure the performance and observance of all of the covenants, agreements and conditions therein and herein contained, the Company has executed and delivered this Indenture and has pledged and does hereby pledge and assign to the Trustee the gross revenues of the Trusteed Properties (hereinafter defined) and other funds, to the extent provided in this Indenture as security for the payment of the bonds and the interest and any premium thereon and as security for the satisfaction of any other obligation assumed by it in connection with such bonds, and it is mutually agreed and covenanted by and between the parties hereto, for the equal and proportionate benefit and security of all and singular the present and future holders of the bonds and interest coupons issued and to be issued under this Indenture, without preference, priority or distinction as to lien or otherwise, except as otherwise hereinafter provided, of any one bond over any other bond, by reason of priority in the issuance, sale or negotiation thereof, or otherwise, as follows:

*marginal note: Pledge of Revenues*

## ARTICLE I.

### DEFINITIONS.

*marginal note: Meaning of words and terms*

SECTION 101. In addition to words and terms elsewhere defined in this Indenture, the following words and terms as used in this Indenture shall have the following meanings, unless some other meaning is plainly intended:

*marginal note: Amortization Requirement*

The term "Amortization Requirement" for each six months' period of July 1 to December 31 and January 1 to June 30 of any fiscal year shall mean the principal amount fixed or computed for such six months' period as hereinafter set forth for the retirement of term bonds by purchase or redemption.

The Amortization Requirements for the term bonds of each Series shall be initially the respective principal amounts (each of which shall be in a multiple of $5,000)

16

succeeding and all subsequent fiscal years for the term bonds of each Series then outstanding and to file a copy of such computation with the Secretary of the Company. The Amortization Requirement for each six months' period of the then current fiscal year shall continue to be applicable during the balance of such current fiscal year and no adjustment shall be made therein by reason of term bonds purchased or redeemed or called for redemption during such current fiscal year.

**Fiscal year**

The term "fiscal year" shall mean the period commencing on the first day of July of any year and ending on the last day of June of the following year.

**Fixed base rentals**

The term "fixed base rentals" shall mean those rentals which are payable in a specified amount regardless of earnings or other contingencies and the term "contingent rentals" shall mean all other rentals.

**Gross revenues of the Trusteed Properties**

The term "gross revenues of the Trusteed Properties" shall mean all of the cash income received by the Company, without deduction for any expenses or charges, on account of its ownership or operation of the Trusteed Properties, including any payments received by the Company on account of use and occupancy insurance covering loss of revenues of any of such Properties and any interest or other income received by the Company from any mortgages or mortgage bonds included as a part of the Trusteed Properties.

**Paying Agents**

The term "Paying Agents" shall mean the banks or trust companies at which the principal of and the interest on the bonds shall be payable.

**Principal and Interest Requirements**

The term "Principal and Interest Requirements" for any fiscal year, as applied to the bonds of any Series, shall mean the sum of:

(a) the amount required to pay the interest on all serial bonds of such Series then outstanding which is payable on January 1 in such fiscal year and on July 1 in the following fiscal year,

(b) the amount required to pay the principal of all

## ARTICLE VI.

### Particular Covenants and Provisions.

Section 601. The Company covenants that it will promptly pay the principal of and the interest on every bond issued under the provisions of this Indenture at the places, on the dates and in the manner provided herein and in said bonds and in the coupons thereto appertaining, and any premium required for the retirement of said bonds, according to the true intent and meaning thereof. The gross revenues of the Trusteed Properties and the Redemption Fund income are hereby pledged to making such payment in the manner and to the extent hereinabove particularly specified. The bonds and the interest thereon will not constitute a debt of the Commonwealth of Puerto Rico or of any of its municipalities or other political subdivisions, and neither the Commonwealth of Puerto Rico nor any such municipalities or other political subdivisions will be liable thereon and such bonds and interest are not payable out of any funds other than those of the Company.

*[margin: Payment of principal, interest and premium]*
*[margin: Pledge of gross revenues]*
*[margin: Bonds and coupons not debt of Commonwealth or subdivisions]*

Section 602. The Company covenants that it has good and marketable title to the Trusteed Properties referred to in Section 208(b) of this Indenture, subject to no lien, charge or encumbrance thereon or affecting the title thereto except (i) the agreements pursuant to which any of such Properties are leased by the Company, (ii) the right of the U.S. Navy Department in times of national emergency to the free and unlimited use of the land on which the Caribe Hilton Hotel is constructed, and (iii) liens, charges, encumbrances or other defects of title which do not have a materially adverse effect upon the Company's right to use or to lease such Properties for the purposes for which such Properties are used or are intended to be used and that there are no liens, charges or encumbrances on the gross revenues derived or to be derived by the Company from such Properties, that it is duly authorized to pledge the gross revenues of the Trusteed Properties and the Re-

*[margin: Covenants as to title to Trusteed Properties]*

60

**Conditions under which Trusteed Properties may be sold; disposition of proceeds**

SECTION 608. The Company covenants that, except as in this Section otherwise permitted, it will not sell or otherwise dispose of or encumber (other than leasing as provided for in Section 401 of this Indenture) the Trusteed Properties or any part thereof.

The Company may sell any of the Trusteed Properties at any time

(a) upon the filing with the Trustee of a certificate signed by the President and General Manager and by the Controller of the Company, setting forth

(i) the gross revenues of the Trusteed Properties received by the Company during the twelve (12) months immediately preceding the month in which such certificate is signed, excluding therefrom the revenues received from that portion of the Trusteed Properties which the Company proposes to sell and excluding any other of such gross revenues which have ceased to accrue to the Company prior to the date on which such certificate is signed, but including any revenues (other than contingent rentals) which would have been received by the Company from any Trusteed Properties under new or renewal lease agreements entered into by the Company during such twelve (12) months' period if such lease agreements had been in effect throughout such twelve (12) months' period,

(ii) the amount of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all bonds theretofore issued under the provisions of this Indenture and then outstanding less such principal amount of outstanding bonds as can be retired at the then current redemption price from such part of the proceeds of the sale of such portion of the Trusteed Properties which is to be deposited with the Trustee to the credit of the Redemption Account as hereinafter in this Section required or permitted, and

61

(iii) the gross revenues received by the Company during the twelve (12) months immediately preceding the month in which such certificate is signed on account of that portion of the Trusteed Properties which the Company proposes to sell,

and it appearing that the percentage derived by dividing the amount shown in item (i) of such certificate by the amount shown in item (ii) thereof is at least one hundred fifty per centum (150%); provided, however, that if the amount shown in item (iii) of such certificate is more than twenty per centum (20%) of all of the gross revenues of the Trusteed Properties received by the Company during such preceding twelve (12) months the certificate referred to in this clause (a) shall have been approved by an independent and nationally recognized firm of certified public accountants satisfactory to the Trustee, and the Company shall have agreed, to the satisfaction of the Trustee, to deposit with the Trustee to the credit of the Redemption Account a sum in cash at least equal to that percentage of the total sales price of such Properties which the sum set forth in said item (iii) of such certificate bears to all of the gross revenues of the Trusteed Properties received by the Company during such preceding twelve (12) months; and provided, further, that the Company may at its option, without restriction, deposit a sum in cash equal to any portion of the sales price of any of such Properties with the Trustee to the credit of the Redemption Account; or

(b) if the consideration to be received by the Company for such Trusteed Properties is cash or property of the type included in the definition of Trusteed Properties and if the Company shall have agreed with the Trustee, to deposit with the Trustee to the credit of the Redemption Account the total amount of any cash so received and shall have filed with the Trustee a certificate signed by the President and General Manager of the Company designating such property to be so received as "Trusteed Properties" under this Indenture and shall deliver to the Trustee a written

62

opinion of the General Counsel of the Company in the form required by Section 208 of this Indenture as to the title in the Company of such property and the validity of the pledge of the revenues therefrom.

The sale of any Trusteed Properties under the provisions of clause (a) of this Section shall be consummated by the Company not later than sixty (60) days after the date on which the certificate referred to in said clause is signed.

The Company may, to the extent permitted by law, mortgage or otherwise encumber the Trusteed Properties or any part thereof for the sole benefit and security of the holders of all bonds issued and to be issued under the provisions of this Indenture.

**Disposition of moneys received for principal of mortgages or mortgage bonds**

The Company covenants that any amounts which it receives on account of the payment of principal of any mortgages or mortgage bonds included in the Trusteed Properties, other than from the sale thereof, will be deposited with the Trustee to the credit of the Redemption Account to the extent, if any, necessary to reduce the principal amount of outstanding bonds so that the gross revenues of the Trusteed Properties received by the Company during the twelve (12) months immediately preceding the month in which such payment is received will be at least equal to one hundred fifty per centum (150%) of the maximum Principal and Interest Requirements for any fiscal year thereafter on account of all bonds then outstanding less such principal amount of outstanding bonds which can be retired at the then current redemption price from the amount of such payments so deposited to the credit of the Redemption Account.

Except as otherwise provided in this Section the proceeds derived from the sale of any of the Trusteed Properties and payments received on account of principal of any mortgages or mortgage bonds, shall be retained by the Company for use for any proper corporate purpose.

## CERTIFICATE OF SECRETARY AS
## TO THIRD SUPPLEMENTAL INDENTURE

I, Dora Monserrate Peñagarícano, Esq., Secretary of Puerto Rico Industrial Development Company (the "Company"), DO HEREBY CERTIFY that the attached Third Supplemental Indenture is substantially in the form of the Third Supplemental Indenture which was presented to the Economic Development Administrator and approved by Resolution No. 88-20 adopted by the Economic Development Administrator and approved by the Secretary of Treasury and the President of Government Development Bank for Puerto Rico on March 10, 1988.

**IN WITNESS WHEREOF**, I have hereunto set my hand and affixed the corporate seal of the Company this 30th day of July, 2003.

_____
Secretary
Puerto Rico Industrial
Development Company

(SEAL)

65114.1

## THIRD SUPPLEMENTAL INDENTURE

THIS THIRD SUPPLEMENTAL INDENTURE, dated for convenience of reference as of the 1st day of _____, ____, by and between PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY a governmental instrumentality of the Commonwealth of Puerto Rico, and CITIBANK, N.A., a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Indenture hereinafter referred to (said banking association and any bank, banking association or trust company becoming successor trustee under the Indenture hereinafter mentioned being herein sometimes called the "Trustee"),

### WITNESSETH:

WHEREAS, Puerto Rico Industrial Development Company (hereinafter sometimes called the "Company") and the Trustee have heretofore caused to be executed and delivered a Trust Indenture dated as of July 1, 1964, as amended (the "Indenture") for the purpose of fixing and declaring the terms and conditions upon which bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time issued and outstanding thereunder, and the interest thereon, according to their tenor, purport and effect; and

the execution and delivery of this Third Supplemental Indenture have happened, exist and have been performed as so required; and

WHEREAS, the Trustee has accepted the trusts created by this Third Supplemental Indenture and in evidence thereof has joined in the execution hereof;

NOW, THEREFORE, THIS THIRD SUPPLEMENTAL INDENTURE WITNESSETH, that in consideration of the premises and of the acceptance by the Trustee of the trusts created hereby and by the Indenture, and also for and in consideration of the sum of One Dollar to the Company in hand paid by the Trustee at or before the execution and delivery of this Third Supplemental Indenture, the receipt of which is hereby acknowledged, it is mutually agreed and covenanted by and between the parties hereto, as follows:

1. The Indenture is hereby amended and supplemented in the following respects:

A. Section 603 is hereby supplemented by the addition of a sentence at the end of the section, as follows:

> "Notwithstanding the foregoing, in connection with the issuance of bonds, the Company may secure its obligations to the provider of a credit or liquidity facility securing said bonds on a parity with the bonds".

B. Section 608 is hereby supplemented by amending the first paragraph to read as follows:

> "Section 608. The Company covenants that, except as in this Indenture otherwise permitted, it will not sell or otherwise dispose of or encumber (other that leasing as provided in Section 401 of this Indenture) the Trusteed Properties or any part thereof."

3

**CERTIFICATE OF SECRETARY AS
TO FOURTH SUPPLEMENTAL INDENTURE**

I, Dora Monserrate Peñagarícano, Esq., Secretary of Puerto Rico Industrial Development Company (the "Company"), DO HEREBY CERTIFY that the attached Fourth Supplemental Indenture is substantially in the form of the Fourth Supplemental Indenture which was presented to the Economic Development Administrator and approved by Resolution No. 91-118 adopted by the Economic Development Administrator and approved by the Secretary of Treasury and the President of Government Development Bank for Puerto Rico on October 17, 1991.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the corporate seal of the Company this 30th day of July, 2003.

_____
Secretary
Puerto Rico Industrial
Development Company

(SEAL)

57988.1

## *FOURTH SUPPLEMENTAL INDENTURE*

*THIS FOURTH SUPPLEMENTAL INDENTURE,* dated for convenience of reference as of the first day of November, 1991, by and between PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY, a body corporate and politic constituting a public corporation and a governmental instrumentality of the Commonwealth of Puerto Rico (hereinafter sometimes called the "Company"), and CITIBANK, N.A., a national banking association existing under the laws of the United States of America (formerly First National City Bank) and having its principal office in the Borough of Manhattan, City and State of New York, which is authorized under such laws to exercise corporate trust powers and is subject to examination by federal authority, Trustee under the Indenture hereinafter referred to (said banking association and any bank, banking association or trust company becoming successor trustee under the Indenture being herein sometimes called the "Trustee"),

## *WITNESSETH:*

*WHEREAS,* the Company and the Trustee have heretofore caused to be executed and delivered a Trust Indenture, dated as of July 1, 1964, as amended (the "Indenture"), for the purpose of fixing and declaring the terms and conditions upon which bonds are to be issued, authenticated, delivered, secured and accepted by all persons who shall from time to time be or become holders thereof, and in order to secure the payment of all the bonds at any time

C. In Section 405, the third sentence of the first paragraph is hereby deleted and the second sentence of said first paragraph is hereby revised to read as follows:

> "If at any time the moneys held for the credit of the Reserve Account shall exceed the maximum requirement for the Reserve Account under the provisions of clause (c) of Section 402 of this Article, such excess shall be transferred by the Trustee to the credit of the Bond Service Account."

D. In Section 405, the fourth sentence of the last paragraph is hereby revised to read as follows:

> "Any moneys on deposit in the Reserve Account in substitution for which a Reserve Account Insurance Policy or Reserve Account Letter of Credit is deposited into the Reserve Account shall, to the extent not required to fund any deficiencies in the amount then required to be on deposit in the Reserve Account, be transferred by the Trustee to the credit of the Bond Service Account."

E. In Section 608, the second paragraph is hereby revised by changing the percentage referred to in said paragraph from one hundred fifty per centum to one hundred twenty-five per centum.

F. The penultimate paragraph of Section 608 is hereby revised by changing the percentage referred to in said paragraph from one hundred fifty per centum to one hundred twenty-five per centum.

G. The last sentence of Section 609(c) is hereby revised by changing the percentage referred to in said sentence from one hundred fifty per centum to one hundred twenty-five per centum in two places.