# EXHIBIT B

Case:17-03283-LTS Doc#:15956-2 Filed:03/05/21 Entered:03/05/21 17:27:58 Desc: Exhibit Page 1 of 4

**Reorg®**

2021-03-02 16:35:41

Puerto Rico

## Ambac Withholds Support of 'Flawed' PSA, Pushes 'Global' Restructuring That Covers Revenue Bonds

Tue 03/02/2021 11:12 AM

*Relevant Documents:*
Earnings Release
10-K

During a fourth-quarter and full-year 2020 earnings call this morning, Ambac President and CEO Claude LeBlanc said the monoline insurer is withholding its support of the new commonwealth plan support agreement, which has reached the 70% threshold among GO/Public Buildings Authority bond creditors, and pushed for a "global resolution" of Puerto Rico's outstanding debt that addresses revenue bonds.

LeBlanc said Ambac "disagrees" with the PSA "as it still contains many of the flaws" of the prior agreement, including "being based on a fiscal plan with erroneous and misleading" financial projections and "providing for the use of money belonging to the secured revenue bondholders."

In order to reach a "consensual, holistic and permanent solution, we believe material progress needs to be made with key revenue bond creditors, particularly the monolines, who are not likely to support a PSA that fails to respect their legal rights and financing structures," the Ambac chief said. "We also believe there are creative and constructive solutions available that could resolve the revenue bonds and avoid further costly litigation while creating new sources of funding and restoring access to the capital markets for Puerto Rico."

LeBlanc said Ambac remains optimistic about the island's short-term and long-term economic recovery as the flow of "vital federal recovery, stimulus and infrastructure funding improves under new" local and federal government leadership.

"While Puerto Rico's economic picture continues to improve and tax collections beat the oversight board projections we continue to believe the collective focus of key stakeholders should be on a near-term global resolution of the bankruptcy process," LeBlanc said.

He reiterated that Ambac remains willing to engage with the PROMESA oversight board and the commonwealth on a restructuring plan that "respects property rights and security interests of revenue bondholders."

The PSA, the terms of which will be included in a plan of adjustment that the oversight board is targeting for filing with the Title III court by March 8, has garnered the support of monolines Assured Guaranty and National Public Finance Guarantee amid negotiations toward a separate restructuring agreement around the Puerto Rico Highways and Transportation Authority, or HTA. The PSA provides that Assured and National may terminate their support on or prior to March 31.

If Assured and National do not terminate their agreement by March 31, the PSA requires that Assured and National take no further action with respect to certain revenue bond-related litigation subject to the commonwealth plan becoming effective, which the PSA targets for Dec. 15. The litigation includes actions to lift the automatic stay in the general obligation, or GO, and HTA Title III cases, to appoint a trustee in the HTA Title III case pursuant to section 926, both currently before the First Circuit Court of Appeals, and other actions related to the clawback of HTA funds from the commonwealth.

**Puerto Rico Exposures**

Ambac's gross par exposure to Puerto Rico government debt totaled $1.092 billion as of Dec. 31, 2020, which included $18 million in constitutionally guaranteed GO bonds and $83.5 million in Public Buildings Authority debt that also carries a constitutional guarantee. Its other exposures are $413 million in Puerto Rico Infrastructure Finance Authority special revenue rum tax debt, $411 million in Puerto Rico Highways and Transportation Authority debt ($4.4 million in 1968 indenture bonds and $406.6 million in 1998 indenture senior bonds), $80.3 million in COFINA senior sales tax revenue bonds and $86.3 million in Convention Center District Authority debt. The bond insurer has no exposure to Puerto Rico Electric Power Authority or Puerto Rico Aqueduct and Sewer Authority debt.

As of Dec. 31, year-to-date net claims paid, including commutation payments, net of subrogation received and reinsurance, were $594.5 million. In January, Ambac made net claim payments totaling $22.8 million on Ambac-insured bonds.

Losses and loss expenses, or insured losses, for the fourth quarter of 2020 were $9 million, compared with $83 million for the third quarter of 2020. A domestic public finance insured benefit of $7 million in the fourth quarter was driven by the favorable impact of higher discount rates and positive credit developments, partially offset by an increase in Puerto Rico reserves resulting from assumption changes. Domestic public finance insured losses in the third quarter were $43 million, largely due to an increase in Puerto Rico reserves related to higher loss expenses and assumption changes.

Ambac's bond insurance subsidiary, Ambac Assurance Corp., or AAC, has been in runoff since 2008 and has been working toward reducing uncertainties within its insured portfolios such as exposures to financially stressed municipal entities, including Puerto Rico. Ambac's 10-K outlines key strategies to reach its primary goal of maximizing shareholder value including active runoff of AAC and its subsidiaries through transaction terminations, commutations, restructurings and reinsurance with a focus on watch list credits and known and potential future adversely classified credits. Other key strategies include ongoing rationalization of Ambac's capital and liability structures and loss recovery "through active litigation management and exercise of contractual and legal rights."

**10-K Outlines Puerto Rico-Related Risks**

Ambac's 10-K outlines "numerous uncertainties and risks" regarding Puerto Rico's restructuring process - including plan of adjustment, litigation, demographics and economic outcomes - that could result in losses exceeding current reserves by a material amount and further increases to loss reserves.

"Even a negotiated restructuring to which Ambac agrees as part of mediation or other process may involve material losses in excess of current reserves," Ambac says in the 10-K. "While our reserving scenarios reflect a wide range of possible outcomes reflecting the significant uncertainty regarding future developments and outcomes, given our exposure to Puerto Rico and the economic, fiscal, legal and political uncertainties associated therewith, our loss reserves may ultimately prove to be insufficient to cover our losses, potentially by a material amount, and may be subject to material volatility."

Ambac in the 10-K cautions that it "is possible that certain restructuring process solutions, together with associated legislation, budgetary, and/or public policy proposals could be adopted and could significantly further impair our exposures," pointing also to "possible final legal determinations, including failing to recognize or properly differentiate legal structures and protections applicable to such exposures."

The 10-K cites the U.S. Court of Appeals for the First Circuit's affirmation of the Title III court's decision that found that under sections 928(a) and 922(d) of the U.S. Bankruptcy Code, municipal issuers of revenue bonds secured by special revenue are permitted, but not required, to apply special revenue to pay debt service on such revenue bonds during the pendency of bankruptcy proceedings for such municipal issuers. The monoline complainants, including Ambac, had sought an order compelling HTA, as the debtor, to continue to make debt service payments on its revenue bonds from pledged special revenue during the pendency of its Title III case, but the First Circuit affirmed the District Court's dismissals of the complaints, holding that it could not compel the issuer to make such payments. The monoline insurers sought Supreme Court review of the circuit court's decisions,

but the requests were denied.

"The First Circuit's decisions challenge what had been a commonly understood notion in the municipal finance marketplace that municipal revenue bondholders secured by special revenues (as defined in Chapter 9 of the U.S. Bankruptcy Code) would continue to receive payment during a bankruptcy of the municipal issuer," Ambac's 10-K reads, adding that while the First Circuit's decisions are binding only on federal district and bankruptcy courts in Maine, Massachusetts, New Hampshire, Puerto Rico and Rhode Island, "they introduce significant uncertainty into the public finance market, may make it more difficult for municipal instrumentalities to procure revenue bond financings in the future and increase the credit risk to bondholders of existing special revenue bonds, particularly those from weaker issuers."

Ambac says while it is unclear how these rulings may ultimately affect Ambac's revenue bond municipal exposures, inclusive of Puerto Rico, "potential impacts could include ratings downgrades, decreased or more costly access to capital markets for certain issuers to refinance their insured debt or raise new debt, and lower recoveries in a restructuring or bankruptcy."

This publication has been prepared by Reorg Research, Inc. or one of its affiliates (collectively, "Reorg") and is being provided to the recipient in connection with a subscription to one or more Reorg products. Recipient's use of the Reorg platform is subject to Reorg's Terms of Use or the user agreement pursuant to which the recipient has access to the platform (the "Applicable Terms"). The recipient of this publication may not redistribute or republish any portion of the information contained herein other than with Reorg's express written consent or in accordance with the Applicable Terms. The information in this publication is for general informational purposes only and should not be construed as legal, investment, accounting or other professional advice on any subject matter or as a substitute for such advice. The recipient of this publication must comply with all applicable laws, including laws regarding the purchase and sale of securities. Reorg obtains information from a wide variety of sources, which it believes to be reliable, but Reorg does not make any representation, warranty, or certification as to the materiality or public availability of the information in this publication or that such information is accurate, complete, comprehensive or fit for a particular purpose. Recipients must make their own decisions about investment strategies or securities mentioned in this publication. Reorg and its officers, directors, partners and employees expressly disclaim all liability relating to or arising from actions taken or not taken based on any or all of the information contained in this publication. © 2021 Reorg. All rights reserved. Reorg® is a registered trademark of Reorg Research, Inc.

© Copyright 2012 - 2021