UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.¹ | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**AAFAF'S RESPONSE TO AMBAC ASSURANCE CORPORATION'S MOTION FOR
ENTRY OF ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE
2004 CONCERNING COMMONWEALTH ASSETS [ECF 15802]**

---

¹ The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

# TABLE OF CONTENTS

                                                                                                                                 **Page**

PRELIMINARY STATEMENT .................................................................................................... 1

PROCEDURAL BACKGROUND & PRIOR PRODUCTIONS ..................................................... 6

ARGUMENT .................................................................................................................................. 8

       I.      The Requested Rule 2004 Examination Is Preposterously Burdensome Because AAFAF Has Already Produced A Voluminous "Core Body of Information" to Ambac. ................................................................................................................................ 8

      II.     The Requested Discovery from the Non-Debtor Public Corporations Is Beyond the Scope of Permissible Rule 2004 Discovery Because it Is Unrelated to the Commonwealth's Financial Condition. ................................................................................ 12

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**Cases**

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
  322 F.R.D. 350 (N.D. Iowa 2017) .................................................................................... 11

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  618 B.R. 642 (D.P.R. 2020) ............................................................................................ 14

*In re Kleynerman*,
  617 B.R. 122 (Bankr. E.D. Wis. 2020) ............................................................................ 12

*In re Mitchell*,
  2019 WL 1054715 (Bankr. D. Idaho Mar. 5, 2019) ........................................................ 12

*In re SunEdison, Inc.*,
  562 B.R. 243 (Bankr. S.D.N.Y. 2017) ......................................................................... 9, 15

*In re Table Talk, Inc.*,
  51 B.R. 143 (Bankr. D. Mass. 1985) ............................................................................... 12

*In re Transmar Commodity Grp.*,
  2018 WL 4006324 (Bankr. S.D.N.Y. Aug. 17, 2018) ................................................. 9, 12

*Murphy v. Kmart Corp.*,
  255 F.R.D. 497 (D.S.D. 2009) ......................................................................................... 11

*Ortiz v. Municipio de Naguabo*,
  108 D.P.R. 366, 8 P.R. Offic. Trans. 377 (1979) ............................................................ 14

**Statutes**

22 L.P.R.A. § 902 .................................................................................................................... 5

22 L.P.R.A. § 903 .................................................................................................................... 5

23 L.P.R.A. § 273 .................................................................................................................... 5

23 L.P.R.A. § 274(c) ........................................................................................................ 12, 15

23 L.P.R.A. § 278(g) ............................................................................................................. 13

23 L.P.R.A. § 311e ................................................................................................................ 12

23 L.P.R.A. § 311f .................................................................................................................. 5

23 L.P.R.A. § 311f(j) ....................................................................................................... 13, 15

28 L.P.R.A. § 242(c) ............................................................................................................. 12

# TABLE OF AUTHORITIES
## (Continued)

**Page**

28 L.P.R.A. § 247 .................................................................................................................. 5

28 L.P.R.A. § 261(j) ....................................................................................................... 13, 15

31 L.P.R.A. § 1025 ............................................................................................................. 13

48 U.S.C. § 2064(f) ............................................................................................................ 13

48 U.S.C. § 2163 ................................................................................................................ 12

48 U.S.C. § 2165 ................................................................................................................ 13

9 L.P.R.A. § 2004 ................................................................................................................. 4

**Other Authorities**

Act 26-2017 § 5.06 ............................................................................................................... 6

**Rules**

Fed. R. Bankr. P. 2004(b) ............................................................................................ 11, 12

To the Honorable United States Magistrate Judge Judith Gail Dein:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") hereby opposes *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* (ECF No. 15802)[2] ("Motion").

**PRELIMINARY STATEMENT**

1. Sixteen months ago, Ambac sought to propound Rule 2004 document requests on the Commonwealth seeking, among other things, all documents and communications since January 1, 2015 regarding any interest, restraint, or encumbrance on any property held by the Commonwealth or its instrumentalities. Original Rule 2004 Motion at 18-19 (Oct. 28, 2019) (ECF No. 9022). Ambac also sought all documents and communications regarding the use, intended use, and proceeds derived from the sale of such properties. *Id*. Judge Swain found these requests were "sweepingly broad" and would "impose an objectively unreasonable burden on the Commonwealth." Order at 9 (Jan. 23, 2020) (ECF No. 10332) ("January 2020 Order"). The Court ruled that while Ambac was "entitled to basic information concerning the financial condition of this Debtor," the Rule 2004 discovery process should enable the Commonwealth to "identify, organize, and disclose a core body of information in a manner that will not be unduly expensive or disruptive of operations." *Id.*

2. Over the past year, AAFAF has fulsomely complied with Judge Swain's order and provided extensive information regarding properties held by the Commonwealth and various instrumentalities, including public corporations. Notwithstanding this, Ambac wants documents and testimony from six government entities, including five entities that are independent from the Commonwealth, for all documents related to any interest in any real property—and any "thing of

---

[2] References to "ECF No. __" are to Case No. 17-3283 (D.P.R.) unless otherwise specified.

value"—those entities hold. Mot. Ex. B at 1 (definition of "Assets"), *id.* at 8 (document requests). Ambac's requests should be denied because they are inconsistent with the limits on discovery Judge Swain articulated in its January 2020 order, excessively burdensome, intrusive on the independence of these non-Commonwealth entities, and of little relevance to the Commonwealth's financial condition.

3. Without conceding their relevance, AAFAF has already provided Ambac with enormous amounts of responsive financial information on these topics. While no central inventory exists that would evidence every asset held by the Commonwealth or its instrumentalities, AAFAF directed Ambac to the Official Inventory maintained by the Real Property Review Board. Under Act No. 235-2014, that entity directed all Commonwealth agencies, instrumentalities, public corporations, and municipalities to register their real properties in the inventory, which is publicly available.[3]

4. Independent of Ambac's discovery requests, the Commonwealth's Real Property Evaluation and Disposal Committee ("CEDBI") requested that governmental instrumentalities submit a certification listing all of their real property assets. Mot. Ex. C. AAFAF has produced the memorandum setting forth this request and all of the responses CEDBI received. These 41 responses collectively disclose the existence of over 2,600 properties. These responses include information regarding property descriptions, locations, coordinates, and whether each property is in use. AAFAF has also provided Ambac with documents regarding 40 specific assets for which Ambac has sought additional information.

5. Certain government entities have not yet prepared their certifications to CEDBI in the ordinary course of their affairs because of their limited resources and the large number of

---

[3] *See* https://www2.pr.gov/JRPI/Pages/default.aspx. AAFAF also directed Ambac to additional publicly available government registries. *See* Jun. 19, 2020 Ltr (ECF No. 13723-3).

2

properties involved.[4] For the six entities subject to the Motion, AAFAF has provided Ambac with property inventories as they existed in those entities' records. These inventories collectively disclose over 16,000 individual real properties: roughly 1,500 properties for the Puerto Rico Industrial Development Company ("PRIDCO"),[5] 1,100 for the Puerto Rico Land Administration ("PRLA), 2,750 for the Puerto Rico Land Authority ("Land Authority"), 750 for the Puerto Rico Public Buildings Authority ("PBA"), 2,050 for the Puerto Rico Highways and Transportation Authority ("HTA") and 7,900 for the Puerto Rico Department of Transportation and Public works ("DTOP"). The records include information such as the property name, description or property number, as well as the address, plot number, or coordinates. This "core body of information" should end AAFAF's Rule 2004 obligations here, and the Court should deny Ambac's request for more.

6. Permitting Ambac to conduct any further discovery regarding every "thing of value" in which these six entities have had any interest since January 1, 2015 is unduly burdensome, expensive, and overly disruptive to government operations. Ambac has already received information regarding at least 16,000 individual properties implicated by Ambac's requests. That total does not include property interests the entities may have previously held but disposed-of. It also does not include other "thing[s] of value," a request which is facially absurd. The resources that would be required for these entities to collect "all documents" and to provide deposition testimony relating to thousands of individual real property holdings (as well as personal property) would be enormous. Moreover, the entities Ambac is targeting are already so

---

[4] The ongoing pandemic, which began approximately two months after CEDBI requested the real property information from government entities, has hindered the government entities' ability to access their in-office files in order to prepare their responses.
[5] AAFAF also directed Ambac to PRIDCO's online properties inventory, which is publicly available. *See* http://www.pridco.com/real-estate/Pages/Real-Estate-Catalog.aspx; May 19, 2020 Ltr (ECF No. 13192-3).

3

taxed that they have not completed their responses to CEDBI in the first instance. To subject these entities to Ambac's broad-ranging inquiries would be unduly disruptive of government operations that are already stretched.

7. This massive burden is also unjustified given the lack of relevance of the requested materials to a Commonwealth plan of adjustment—the guidepost for the discovery Judge Swain permitted and the premise of the Motion.[6] In its January 2020 Order, the Court contemplated reasonable discovery into the Commonwealth's real estate assets so that Ambac could "obtain a basic understanding of major aspects of the Commonwealth's financial condition that will be relevant to a plan of adjustment." January 2020 Order at 10.

8. Five of the six entities Ambac seeks discovery from are not part of the Commonwealth in its capacity as a debtor, but independent public corporations with their own property, their own creditors or obligations, and their own pressing responsibilities to achieve various critical public policy goals for the people of Puerto Rico. No matter how hard Ambac tries to obfuscate the issue, these entities are independent government entities either not subject to this Court's oversight at all or in their own Title III cases. Their assets are not available for the Commonwealth Title III plan. Their property is not the Commonwealth's (unlike the asset streams supporting the revenue bonds, for example, which *are* the Commonwealth's property), they do not hold debtor assets, and they will use their property to benefit the people of Puerto Rico, not Ambac.[7]

9. Specifically, HTA is both insolvent and responsible for the upkeep and operation

---

[6] The forthcoming filing on March 8, 2021 of the amended plan of adjustment is cause enough to deny Ambac's Motion. Discovery into plan issues should proceed in an organized, coordinated process for all creditors.
[7] As explained in the FOMB's brief, discovery into the non-cash assets of governmental entities is improper. The Commonwealth is not required—and cannot be forced by Ambac—to liquidate operating assets to satisfy creditors in the context of a Title III plan.

of an entire transportation system of roads, bridges and mass transit that the people of Puerto Rico rely on every day. *See* 9 L.P.R.A. § 2004. PRIDCO and PRLA are critical for Puerto Rico's economic development. PRIDCO (which has issued its own bonds and has its own creditors) has a specific mission: to create and retain jobs in Puerto Rico and improve its economy. PRIDCO among other things provides industrial rental space to enterprises and investors. 23 L.P.R.A. § 273.[8] PRLA promotes Puerto Rico's economic and social development by acquiring land and developing it to benefit the projects and endeavors of governmental entities. *Id.* § 311f.[9] PBA, like HTA, is an insolvent debtor with outstanding debts and unsatisfied creditors. PBA is charged with planning, designing, auctioning, building, and conserving physical facilities that a wide variety of Puerto Rico government entities (including AAFAF) use to provide public services. *See* 22 L.P.R.A. §§ 902, 903. The Land Authority is critical in managing Puerto Rico's agricultural resources, carrying out the Commonwealth's agricultural policy by among other things conserving and preserving lands of high agricultural value to make them accessible to agricultural entrepreneurs. *See* 28 L.P.R.A. § 247.[10] Ambac cannot force these entities to turn over their assets to the Commonwealth to satisfy the Commonwealth's creditors, when the entities have their own creditors to satisfy and important public policy missions to fulfill.

10. Thus Ambac's premise—discovery regarding these entities' real estate holdings could be relevant to the Commonwealth's financial condition because each entity might have an underutilized property that could be sold for the benefit of the Commonwealth's creditors— should be flatly rejected. The value of these entities' real property assets does not belong to the

---

[8] *See also* http://www.pridco.com/real-estate/Pages/Our-Services.aspx
[9] *See also* https://www.pr.gov/Directorios/Pages/InfoAgencia.aspx?PRIFA=177
[10] *See also* https://www.pr.gov/Directorios/Pages/InfoAgencia.aspx?PRIFA=165

Commonwealth, is not relevant to the Commonwealth's financial condition, and is certainly not a "major aspect" of such condition germane to a plan of adjustment. Accordingly, AAFAF respectfully requests that this Court deny Ambac leave to serve its requests.

## PROCEDURAL BACKGROUND & PRIOR PRODUCTIONS

11. On October 28, 2019, Ambac filed its Original Rule 2004 Motion seeking authorization to conduct discovery into the assets of the Commonwealth and its instrumentalities. The Court permitted Ambac some discovery, but recognized that Ambac's requests were "sweepingly broad and impose an objectively unreasonable burden on the Commonwealth" and ordered Ambac to propound "substantially narrower" requests. January 2020 Order at 9.

12. AAFAF and Ambac have conferred extensively regarding Ambac's requests for information relating to real property assets. AAFAF explained that no centralized list of all of the Commonwealth entities' assets existed, and AAFAF directed Ambac to online repositories containing voluminous information regarding its real property holdings and government contracts, including the Commonwealth's official inventory of real property, the Puerto Rico Property Registry and the Office of Comptroller's registry of government contracts in which real property transactions that involve Commonwealth entities are registered and recorded.

13. In addition, AAFAF produced to Ambac a November 25, 2019 memorandum sent by CEDBI[11] to government entities, requesting each entity provide a certification with a list of their real property holdings and certain specific information about each property. AAFAF has

---

[11] CEDBI has six statutory duties: to (i) "prescribe by regulations a uniform, efficient, and effective procedure for the disposal and transfer of the real property of the Executive Branch of the Government of Puerto Rico"; (ii) "coordinate … the preparation and/or update of an official inventory of all the real property of every agency, entity, instrumentality, and public corporation"; (iii) "obtain from the Real Property Reviewing Board a certification including every surplus real property available for disposal to be outfitted by any agency, entity, instrumentality, or public corporation"; (iv) "evaluate every request for purchase, lease, or other conveyance of ownership of real property submitted by any natural or juridical person"; (v) "conduct any type of study, inspection, analysis, or other transaction relating to real property"; and (vi) "appraise any real property subject to disposal." Act 26-2017 § 5.06.

6

produced to Ambac all of the responses CEDBI received, covering 41 entities identifying approximately 2,600 properties. Certain entities with a significant number of property holdings have not yet completed their responses. Consistent with its statutory obligation to gather such information, CEBDI is working on obtaining inventories from entities that have not responded, while recognizing that entities have a wide range of statutory and public policy responsibilities. AAFAF also produced to Ambac specific prioritized asset information including deeds, property registrations, letters, survey plans, valuations, and court resolutions, judgments, and documents.

14. On November 12, 2020, the Court denied Ambac's Original Rule 2004 Motion without prejudice. *See* Order (Nov. 12, 2020) (ECF No. 15093) (Dein, J.) ("November 2020 Order"). The Court explained that it was doing so "[i]n light of the substantial work the parties have done narrowing the issues and resolving the disputes initially presented in the [Original Rule 2004 Motion]." November 2020 Order at 2. The Court stated that Ambac could file a new motion "limited to the issues in dispute." *Id.* The parties continued to meet and confer.

15. On November 25, 2020, Ambac informed AAFAF that it intended to seek deposition testimony from nine entities that, at that time, had not provided a response to the November 25, 2019 memorandum. In the spirit of compromise, and without ever acknowledging the propriety of Ambac's discovery, AAFAF requested these entities to provide their certifications to CEDBI, or alternatively, to provide AAFAF with any real property inventories or lists that exist in the entities' business records. As a result of AAFAF's efforts, the Puerto Rico Aqueduct and Sewer Authority, the Government Development Bank of Puerto Rico, and the Puerto Rico Trade and Export Company provided certifications to CEDBI, which AAFAF produced to Ambac on January 31, 2021.

16. The six entities that are the subject of the Motion—HTA, PBA, PRIDCO, the

7

Land Authority, PRLA, and DTOP—provided AAFAF with property lists that exist in those entities' records, which AAFAF then produced to Ambac. While the entities are working with CEDBI, they may not be able to complete CEDBI inventories in the near-term considering other pressing governmental obligations in these unprecedented times.[12] AAFAF has agreed to produce the entities' responses once CEDBI receives them, but it is not feasible for these entities to prepare the property-by-property information required by the CEDBI memorandum, some of which is not currently readily available in the entities' records, on a more expedited timeline for a collective 16,000 properties without sacrificing other governmental priorities.

17. On February 4, 2021, Ambac filed the present Rule 2004 Motion seeking discovery regarding each and every real property interest the entities ever held since 2015, notwithstanding that AAFAF had already produced the property inventories that were available in each of those entities' records.

## ARGUMENT

### I. The Requested Rule 2004 Examination Is Preposterously Burdensome Because AAFAF Has Already Produced A Voluminous "Core Body of Information" to Ambac.

18. The Court held that while Ambac is "entitled to basic information concerning the financial condition of this Debtor," the Rule 2004 discovery process should enable the Commonwealth to "identify, organize, and disclose a core body of information in a manner that will not be unduly expensive or disruptive of operations." January 2020 Order at 9. In light of what AAFAF has produced to Ambac, the substantial burden associated with any additional discovery is unwarranted.

19. AAFAF has already produced the "core body of information" regarding properties

---

[12] PRLA has taken the position that pursuant to Article 5.03 of Act No. 26-2017, it is not required to respond to the CEDBI memorandum. Nevertheless, PRLA provided AAFAF a property list as it existed in its records.

8

held by the six entities at issue. Requiring the entities to produce all documents pertaining to every real property interest they held in the last six years, and to attempt the impossible task of preparing a Rule 30(b)(6) witness to testify about all of those interests, would be unduly burdensome, unduly expensive, and overly disruptive to government operations.

20. The benefit to the creditor of obtaining the requested information must be greater than the burden on the producing party. *See, e.g.*, *In re Transmar Commodity Grp.*, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018) ("Courts will not order Rule 2004 discovery when the burden on the producing party outweighs the benefits to the requesting party"); *In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) (Rule 2004 encompasses a proportionality requirement). The Rule 2004 Motion fails the balancing test and disregards this Court's January 2020 Order.

21. The Court instructed that any Rule 2004 discovery must "not be unduly expensive or disruptive of [government] operations." January 2020 Order at 9. The Rule 2004 requests are just that—and even more untenable because of the burden they seek to impose on non-debtors. The entities have already provided the responsive information that is readily available, and AAFAF has produced it to Ambac. Ambac already has the available property lists from the entities, disclosing roughly 16,000 properties. Yet Ambac demands all documents regarding any interest the entities had for six years not only with respect to these 16,000 properties, but also including any other "thing of value" that may have existed since 2015.

22. This Court has already rejected these kinds of requests as "sweepingly broad" when they were served on the Commonwealth itself. January 2020 Order at 9. Notwithstanding the Court's direction to propound "substantially narrower" requests, *id.*, Ambac has instead utterly disregarded the Court's instructions and propounded virtually identical ones:

9

| Original Rule 2004 Motion Requests | Current Rule 2004 Requests |
|---|---|
| **(Original Request 1)** Documents sufficient to identify any Property, or interests therein, held by the Commonwealth or its instrumentalities from January 1, 2015 to the present. | **(New Request 1)** Documents sufficient to identify any Assets or interests therein held by [Entity] from January 1, 2015 to present. |
| **(Original Request 2)** All documents and communications, from January 1, 2015 to the present, concerning the alienation of any Property, or interests therein, held by the Commonwealth, or its instrumentalities.<br><br>**(Original Request 3)** All documents and communications, from January 1, 2015 to the present, concerning the encumbrance of any Property, or interests therein, held by the Commonwealth, or its instrumentalities.<br><br>**(Original Request 5)** All documents and communications, from January 1, 2015 to the present, concerning any restraints on alienation or encumbrance of any Property, or interests therein, held by the Commonwealth, or its instrumentalities. | **(New Request 2)** All documents, from January 1, 2015 to present, concerning the identity, value, sale, alienation, or encumbrance of any Assets or interests therein held by [Entity]. |
| **(Original Request 4)** All documents and communications, from January 1, 2015 to the present, regarding the process for choosing and assessing which Property, or interests therein, held by the Commonwealth, or its instrumentalities would be alienated or encumbered. | **(New Request 3)** All documents, from January 1, 2015 to present, concerning the processes through which any Assets or interests therein held by [Entity] would or could be sold, alienated, or encumbered. |
| **(Original Request 6)** All documents and communications, from January 1, 2015 to the present, regarding any proceeds or revenue derived from the alienation or encumbrance of any Property, or interests therein, held by the Commonwealth, or its instrumentalities; including but not limited to documents showing the flow of funds and/or use of any revenue. | **(New Request 4)** All documents, from January 1, 2015 to present, concerning any proceeds or revenue derived from the sale, alienation, or encumbrance of any Assets or interests therein held by [Entity], including but not limited to documents showing the flow of funds and use of any such proceeds or revenue. |
| **(Original Request 7)** All documents and communications regarding the use and intended use of any proceeds or revenue derived from the alienation or encumbrance of any Property, or interests therein, held by the Commonwealth, or its instrumentalities. | **(New Request 5)** All documents, from January 1, 2015 to present, concerning the use or intended use of any proceeds or revenue derived from the sale, alienation, or encumbrance of any Assets or interest therein held by [Entity]. |
| **(Original Request 8)** All documents and communications, from January 1, 2015 to the | **(New Request 6)** All documents, from January 1, 2015 to present, concerning any |

10

| Original Rule 2004 Motion Requests | Current Rule 2004 Requests |
|---|---|
| present, regarding any assessment of the present, future, or contingent value of any Property, or interests therein, held by the Commonwealth, or its instrumentalities. | assessment of the present, future, or contingent value of any Assets or interests therein held by [Entity]. |

23. That Ambac has now limited the number of government instrumentalities implicated by its request does not address the fundamental problem that the requests as drafted are overbroad. This is particularly true in light of Ambac's definition of "Assets" to include any "thing of value, tangible or intangible," and Property as "any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." Mot. Ex. B at 1-2.

24. Ambac also demands 30(b)(6) deposition testimony from non-debtors that is largely coextensive with its expansive document requests. Its first deposition topic seeks testimony regarding the "identification, valuation, sale, alienation, or encumbrance of any Assets or interests therein held." *Id.* at 8.[13] It is unreasonable to expect any deponent to prepare to testify regarding every interest in the thousands of assets the entities have held since January 1, 2015. No one person could retain all of this information for purposes of regurgitating it at a deposition, nor would it be an appropriate or proportional use of government resources. *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 361-62 (N.D. Iowa 2017) (a "deposing party may not demand that a corporate designee be prepared to speak with encyclopedic authority" (citing *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009))). It could take an inordinate amount of time to conduct a deposition regarding "any thing of value" for even a single government entity. Such expensive and disproportionate discovery would also be

---

[13] Other topics seek similarly overbroad testimony regarding all persons with knowledge of the identity and value of any assets and any previous, ongoing or competed efforts to sell or otherwise monetize any assets.

11

purposeless, as explained below.

### II. The Requested Discovery from the Non-Debtor Public Corporations Is Beyond the Scope of Permissible Rule 2004 Discovery Because it Is Unrelated to the Commonwealth's Financial Condition.

25.   The Court's prior order was very clear: Ambac is entitled only to information "sufficient to obtain a basic understanding of major aspects of the Commonwealth's financial condition that will be relevant to a plan of adjustment." January 2020 Order at 10.

26.   This conclusion flows from governing law: Rule 2004 is targeted at information that will help the requesting party understand the debtor's financial condition. Fed. R. Bankr. P. 2004(b); *see also In re Table Talk, Inc.,* 51 B.R. 143, 145 (Bankr. D. Mass. 1985) (Rule 2004 examination "cannot stray into matters which are not relevant" to the debtor's financial condition); *In re Mitchell*, 2019 WL 1054715, at *5 (Bankr. D. Idaho Mar. 5, 2019) (same). For that reason, a third-party examination is improper if it would have "no relationship to the bankrupt's affairs or the administration of his estate." *In re Transmar Commodity Grp.*, 2018 WL 4006324, at *9; *see also In re Kleynerman*, 617 B.R. 122, 129 (Bankr. E.D. Wis. 2020) (movant cannot evade limits on third party discovery by "equating . . . separate entities").

27.   Ambac claims it cannot conduct a "meaningful evaluation" of the plan of adjustment "without an opportunity to explore the asserts of the At-Issue Prioritized Commonwealth Entities and evaluate the extent to which such assets can be (or have been) monetized, alienated, or encumbered." Mot. ¶ 22. Ambac deliberately (and misleadingly) conflates the Commonwealth and the non-debtor entities. Ambac provides no justification for the assumption embedded in its Motion that the property of non-debtor public corporations that are legally separate from the Commonwealth are the proper subject of Rule 2004 discovery in Title III. Nor could it. The assets of legally separate public corporations are not relevant to the Commonwealth's financial condition, as Rule 2004 requires. *See* Fed. R. Bankr. P. 2004(b).

12

Public corporations are separate legal entities with the right to acquire and to own property in their own names. They hold their property separately from the Commonwealth, and their assets are not available to Commonwealth creditors. *See, e.g.*, 23 L.P.R.A. § 274(c) ("The . . . property of [PRIDCO] . . . shall be deemed to be . . . not those of the Commonwealth Government."); 23 L.P.R.A. § 311e ("The . . . property of [PRLA] . . . shall be deemed to be . . . not those of the Commonwealth."); 28 L.P.R.A. § 242(c) ("The . . . property of [the Land Authority] . . . shall be understood as being . . . not of [] the Commonwealth.") As the Court knows, not only is HTA a separate corporation, HTA is the debtor in a separate Title III case, as is PBA. Case Nos. 17-03567 (D.P.R.), 19-05523 (D.P.R.). Each entity has its own creditors to satisfy and its own public policy missions; none is subject to court or creditor control. 48 U.S.C. § 2163 (Title III does not limit exercise of governmental or political powers); *id.* § 2165 (Title III court cannot limit use or enjoyment of debtor's property); *see also id.* § 2064(f) (precluding substantive consolidation of affiliated debtors).

28. In correspondence with AAFAF, Ambac has contended it is entitled to this discovery because "the Commonwealth owns all public property," citing 31 L.P.R.A. § 1025. Jan. 11, 2021 Ltr. (ECF No. 15690-1). That is a frivolous statutory argument. That statute does not provide that the Commonwealth owns the assets of public corporations. As the Puerto Rico Supreme Court has explained, the purpose of section 1025 "is to distinguish between property of public use, that is 'things whose use is common because of their very nature or the purpose to which they are devoted' and property that may be subject to appropriation and that in fact belongs to the State or to some municipality." [14] *Ortiz v. Municipio de Naguabo*, 108 D.P.R.

---

[14] Section 1025 provides that "the property of public use in Puerto Rico and the towns thereof comprises the Commonwealth and local roads, the squares, streets, fountains and public waters, walks, and public works for general use, paid for by the said towns or from the Treasury of Puerto Rico. All other property, possessed by either

13

366,, 8 P.R. Offic. Trans. 377, 378-79 (1979) (internal quotation marks omitted). Even if the statute could be read as broadly as Ambac argues (and it cannot), it must yield to more specific statutes providing this property is not the property of the Commonwealth.[15]

29. Second, Ambac has erroneously cited this Court's ruling in the CCDA lift stay proceedings for the proposition that "assets of the Commonwealth do not belong to its agencies, instrumentalities, and public corporations absent an explicit transfer of ownership." Jan. 11, 2021 Ltr (ECF No. 15690-1). This Court held no such thing. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 618 B.R. 642 (D.P.R. 2020). The Court addressed the ownership of hotel occupancy taxes, which the Commonwealth by statute had directed the Puerto Rico Tourism Company to impose and collect. *Id.* at 648. The Court held that the hotel occupancy tax revenues were collected under the Commonwealth's taxing power and, therefore, had always belonged to the Commonwealth (not the Tourism Company) because the Puerto Rico Constitution does not allow the Commonwealth to "divest itself of the power to impose and collect taxes." *Id*. at 658. The CCDA Order has no bearing on public corporations' ability under their enabling acts to own property separately from the Commonwealth.

30. Third, Ambac has argued that, because the Commonwealth's fiscal plan and budgets fund agencies, instrumentalities, and public corporations, the extent to which those entities have assets that could be monetized might affect the Commonwealth's financial condition. Specifically, Ambac argues that monetizing instrumentality assets could theoretically allow the Commonwealth to reduce line items to those instrumentalities. Jan. 11, 2021 Ltr (ECF No. 15690-1). But speculation that Commonwealth expenditures might be reduced if assets of

---

the Commonwealth of Puerto Rico or the municipalities thereof, is common property for the use of the general and municipal governments (bienes patrimoniales), and shall be governed by the provisions of this Code."
[15] *See, e.g.*, 23 L.P.R.A. § 278(g) ("The . . . property of [PRIDCO] . . . shall be deemed to be . . . not those of the Commonwealth Government."), *id.* § 311f(j) (same for PRLA), 28 L.P.R.A. § 261(j) (same for Land Authority).

14

public corporations are monetized, and if the proceeds are sufficient to reduce the Commonwealth's need to allocate money to those entities, is speculative and extremely contingent. It also ignores the entities' statutory missions, the purpose of independently owning their real property assets in connection with the services they provide to Puerto Rico's citizens and the historic severe underfunding of public corporations and agencies that led to Puerto Rico's economic decline. Ambac's speculation and desire to defund non-Commonwealth entities cannot justify the expansive Rule 2004 discovery Ambac demands. *In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017) (Rule 2004 requests "premature," where requests turned on events "unlikely" to occur or turned on actions that the debtor "may" decide to take). Nor could Ambac look to Act 26-2017 to force liquidation of the entities' assets for the reasons stated in the Oversight Board's brief. *See* ECF No. 15959 ¶ 28, n. 7.

31. To the extent Ambac claims properties of non-debtor independent corporations are "available resources" within the meaning of Article VI, Section 8 of the Puerto Rico Constitution that should be liquidated to pay Commonwealth debt, Ambac provides no legal support for that assertion. Nor could it, particularly given that the entities' enabling acts specifically dictate that the entities' properties are not property of the Commonwealth. 23 L.P.R.A. § 274(c) (PRIDCO); *id.* § 311e (PRLA); 28 L.P.R.A. § 261(j) (Land Authority).

## CONCLUSION

32. The requested Rule 2004 examination flouts this Court's January 2020 Order by seeking to propound extremely burdensome requests this Court has already rejected. Ambac has made no showing of good cause to require this overly broad discovery from third parties. Accordingly, AAFAF respectfully requests that the Court deny the Rule 2004 Motion. In the event this Court allows service of the subpoenas, AAFAF and the entities reserve all rights to interpose objection to the requests, including, but not limited to the objections raised above.

15

Dated: March 5, 2021
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Elizabeth L. McKeen*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*/s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
E:mail: cvelaz@mpmlawpr.com

MARINI PIETRANTONI MUÑIZ LLC
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*