**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| AMBAC ASSURANCE CORPORATION,<br><br>Movant,<br><br>-v-<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO,<br><br>Respondent. | No. 17-BK-3283-LTS<br><br>**Re: ECF No. 15802** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**OBJECTION TO AMBAC ASSURANCE CORPORATION'S MOTION FOR ORDER AUTHORIZING DISCOVERY UNDER BANKRUPTCY RULE 2004 CONCERNING COMMONWEALTH ASSETS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .......................................................................................................................... 4

      A.      Procedural Background............................................................................................ 4

      B.      The Parties' Efforts to Reach Resolution Regarding the Motions.............. 5

ARGUMENT................................................................................................................................. 6

      I.      Ambac Is Not Entitled to Discovery Unrelated to the Commonwealth's Title III Case ............................................................................................................ 7

            A.      Ambac is Not Entitled to the Requested Discovery Into Non-Cash Assets of Puerto Rico............................................................................................. 7

      II.      The Motion Should Be Denied Because It Is Based On The Premise That Assets Must Be Liquidated To Maximize Creditor Recovery............................. 10

CONCLUSION............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Faitoute Iron & Steel Co. v. City of Asbury Park*,
   316 U.S. 502 (1942)................................................................................................................2

*In re Eagle-Picher Indus., Inc.*,
   169 B.R. 130 (Bankr. S.D. Ohio 1994)...................................................................................7

*In re Enron Corp.*,
   281 B.R. 836 (S.D.N.Y. 2002).................................................................................................6

*In re Fin. Oversight and Mgmt. Bd. for P.R.*,
   361 F. Supp. 3d 203 (D.P.R. 2019)..................................................................................11, 12

*In re Fin. Oversight and Mgmt. Bd. for P.R.*,
   432 F. Supp. 3d 25 (D.P.R. 2020)....................................................................................10, 11

*In re Fin. Oversight and Mgmt. Bd. for P.R.*,
   954 F.3d 1 (1st Cir. 2020).......................................................................................................11

*In re Good Hope Refineries, Inc.*,
   9 B.R. 421 (Bankr. D. Mass. 1981) .....................................................................................7, 9

*In re Recoton Corp.*,
   307 B.R. 751 (Bankr. S.D.N.Y. 2004)..................................................................................7, 9

**STATUTES**

9 L.P.R.A. § 2002 ..........................................................................................................................9

9 L.P.R.A. § 2004 ..........................................................................................................................9

22 L.P.R.A. § 902 ..........................................................................................................................8

22 L.P.R.A. § 906 ..........................................................................................................................8

23 L.P.R.A. § 274(b).....................................................................................................................8

23 L.P.R.A. § 278(d).....................................................................................................................8

23 L.P.R.A. § 331(e).....................................................................................................................8

28 L.P.R.A. § 242(a).....................................................................................................................8

28 L.P.R.A. § 242(c).....................................................................................................................8

48 U.S.C.A. § 2164(f) ........................................................................................................................9

48 U.S.C. §§ 2101-2241 ...................................................................................................................1

48 U.S.C. § 2163 ............................................................................................................................10

48 U.S.C. § 2165 ............................................................................................................................10

Bankruptcy Code § 903 .................................................................................................................10

Bankruptcy Code § 904 ...........................................................................................................10, 12

Fed. R. Bankr. P. 2004(b) ................................................................................................................6

To the Honorable United States Magistrate Judge Judith Dein:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), in its capacity as the sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to § 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[2], respectfully submits this objection (the "Objection") to *Ambac Assurance Corporation's Motion for an Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* [ECF No. 15802] (the "Motion" or "Mot."), filed by Ambac Assurance Corporation ("Ambac") on February 4, 2021, and in support thereof, respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Motion seeks discovery related to the assets of six Commonwealth government entities, three of which are not Title III debtors. Ambac erroneously treats the Commonwealth as a holding company with subsidiaries whose assets can be liquidated to pay creditors. In particular, Ambac requests the right to seek discovery regarding the (1) Puerto Rico Land Administration; (2) Puerto Rico Public Buildings Authority ("PBA"); (3) Puerto Rico Land Authority; (4) Puerto Rico Industrial Development Company ("PRIDCO"); (5) Puerto Rico Department of Transportation and Public Works ("DTOP"); and (6) the Puerto Rico Highway and Transportation Authority ("HTA," and collectively, the "At-Issue Entities").

2. Ambac concedes its Motion is to determine whether there are "highly valuable assets that, *if sold or otherwise monetized*," could be used to compensate the Commonwealth's creditors. Mot. at 11 (emphasis added). Its Motion raises two threshold legal issues, one procedural and one substantive. The procedural issue is that in light of the expected filing of the

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

Commonwealth's amended proposed plan of adjustment on March 8, 2021, Ambac's plan-related discovery under Bankruptcy Rule 2004 is neither legal nor appropriate. There needs to be one organized discovery process for all creditors and the discovery must be governed by the Federal Rules of Civil Procedure–incorporated into contested matters under by Bankruptcy Rule 9014–not Bankruptcy Rule 2004 which may be used when untethered to any contested matter such as confirmation. The substantive issue is whether discovery into the Commonwealth's and its instrumentalities' non-cash assets has materiality and relevance in light of black-letter law that creditors are not entitled to monetization of Puerto Rico's assets to pay them. We respectfully submit Ambac's Motion should not be decided independently of rulings on the two threshold issues, both of which impact confirmation.

3. What Ambac attempts here was rejected by a unanimous Supreme Court decades ago. Ambac's motion turns on its purported right to the foreclosure value of Puerto Rico. Speaking for the Supreme Court, Justice Frankfurter did not rule the creditors in his case were entitled to the value of the assets owned by the City of Asbury Park, New Jersey. To the contrary, Justice Frankfurter ruled:

> The principal asset of a municipality is its taxing power and that, unlike an asset of a private corporation, can not be available for distribution. An unsecured municipal security is therefore merely a draft on the good faith of a municipality in exercising its taxing power. The notion that a city has unlimited taxing power is, of course, an illusion. A city cannot be taken over and operated for the benefit of its creditors, nor can its creditors take over the taxing power.

*Faitoute Iron & Steel Co. v. City of Asbury Park*, 316 U.S. 502, 509-510 (1942), *superseded by statute*, Act of July 1, 1946, Pub. L. No. 481, 60 Stat. 415, *as recognized in Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938 (2016) (noting that Congress preempted the field of municipal bankruptcy).

4. The Motion is the latest in a series of related motions Ambac has filed pursuant to Bankruptcy Rule 2004. In connection with its Original Cash and Assets Motions (defined below),

Ambac was permitted access to "core information sufficient to obtain a basic understanding of major aspects of the Commonwealth's financial condition that will be relevant to a plan of adjustment," but the Court found Ambac's prior requests to be "sweepingly broad" and to impose an "objectively unreasonable burden on the Commonwealth." *Memorandum Order Denying Motion to Strike Certain Rule 2004 Applications* [ECF No. 10332] (the "Strike Order"), at 9-10. The instant Motion runs afoul of the scope set by the Strike Order, seeking, among other information, documents and testimony concerning the valuation of "any Assets" held by the At-Issue Entities which, if "sold or otherwise monetized," could be used to benefit creditors. Mot. at 11; Mot., Ex. B at 7. This is far beyond the bounds set by the Strike Order, outside the bounds of Rule 2004 discovery, impossible to effectuate as a practical matter, and based on the erroneous premise that the Commonwealth must pay creditors the value of its instrumentalities as if Puerto Rico can be dismembered and cannibalized to pay creditors.

5. The discovery sought in the Motion is also improper for other reasons. First, at least five of the At-Issue Entities are separate from the Commonwealth. As separate, legally distinct entities, they own and control their own property.

6. Second, the Motion should be denied as to all of the At-Issue Entities because it is premised on the improper notion that government assets could be forced to be liquidated under Title III. But forced liquidation is inconsistent with the purpose of PROMESA, as well as chapter 9 of the Bankruptcy Code, from which many of PROMESA's provisions are drawn. As the First Circuit and this Court have recognized, PROMESA calls for a holistic approach to restructuring that prioritizes the ability of the Commonwealth and its instrumentalities to meet the needs of its citizens while providing proper recompense to creditors. It does not require the Commonwealth to give creditors Puerto Rico's beaches or to mortgage the beaches to pay creditors their value.

3

This is no different than the law in the States. A creditor of New York City cannot compel the City to pay it by auctioning off Central Park.

7. For the foregoing reasons, and as further described below, the Motion should be denied.

## BACKGROUND

### A. Procedural Background

8. On October 28, 2019, Ambac filed two Rule 2004 motions (the "Original Cash and Asset Motions"). One of the two sought discovery concerning Commonwealth assets [ECF No. 9022] (the "Original Assets Motion"), and the other sought discovery concerning the Commonwealth's available cash and analyses regarding restricted versus unrestricted cash (the "Original Cash Motion") [ECF No. 9023].[3]

9. The Original Assets Motion included expansive requests for information pertaining to all assets held, alienated, or encumbered by the Commonwealth and certain other Commonwealth entities in the past five years. *See* Original Assets Motion Requests 1-28.

10. On November 8, 2019, the Oversight Board moved to strike the Original Rule 2004 Motions. [ECF No. 9131] (the "Motion to Strike"). Ambac objected to the Motion to Strike on December 3, 2019. [ECF No. 9404].

---

[3] To date, Ambac has been a party to at least 44 adversary proceedings or contested matters against the Commonwealth and other Title III debtors. *See* 17-cv-01567; 17-cv-01568; 17-ap-159; 17-ap-133; 17-ap-151; 17-ap-152; 18-ap-149; 20-ap-003; 20-ap-004; 20-ap-005; 20-ap-007; 20-ap-068 (adversary proceedings); *In re Commonwealth of Puerto Rico*, No. 17-bk-3283-LTS (ECF Nos. 113, 370, 375, 1283, 1469, 1652, 1666, 1870, 1873, 2865, 6426, 7135, 7176, 7505, 7507, 7902, 8020, 8997, 9004, 9022, 9023, 10104, 10251, 10974, 11095, 12569, 12699, 13573, 13845) (contested matters); *In re Puerto Rico Highways and Transportation Authority*, No. 17-bk-3567-LTS (ECF Nos. 673, 906) (contested matters); *In re Puerto Rico Electrical Power Authority*, No. 17-bk-4780-LTS (ECF No. 583) (contested matter).

4

11. While the Court denied the Motion to Strike, it held the discovery requests were "sweepingly broad" and "objectively unreasonable." *Id.* at 9. The Court ordered the parties to confer to "identify parameters for disclosure that are substantially narrower" than the Original Cash and Asset Motions to "provide Ambac with core information sufficient to obtain a *basic understanding of major aspects* of the Commonwealth's financial condition that will be *relevant to a plan of adjustment*." *Id.* at 9-10 (emphasis added).

### B. The Parties' Efforts to Reach Resolution Regarding the Motions

12. The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Oversight Board (together, the "Government Parties") have been engaged in good-faith negotiations with Ambac, and the parties successfully resolved several areas of dispute.[4] From February 2020 to present, the Government Parties have worked diligently to, among other things, make materials available for production, including reviewing tens of thousands of documents and producing them on a rolling basis.

13. On November 5, 2020, the Parties filed a joint status report stating they had reached an impasse on certain issues, primarily regarding materials sought in the Original Cash Motion, and proposed placing any remaining disputes before the Court for decision. [ECF. No. 15025].

14. On November 12, 2020, the Court denied without prejudice the Original Cash and Asset Motions and directed Ambac to "file a new Rule 2004 motion limited to the issues in dispute." [ECF No. 15093].

15. As a result of the Court's order, Ambac filed two new Rule 2004 motions: (1) *Ambac Assurance Corporation's Motion for An Order Directing Cash Rule 2004 Discovery from*

---

[4] *See* ECF Nos. 10875, 11787, 12484, 12711, 13192, 13723, 14150, 14438, 15025, 15350, 15690.

*the Financial Oversight and Management Board for Puerto Rico* [ECF No. 15220] (the "New Cash Rule 2004 Motion")[5]; and (2) the instant Motion.

16. Ambac's current motion is centered on a memorandum, dated November 25, 2019, from the Executive Director of AAFAF to the heads of all agencies, instrumentalities, and public corporations of the Government of Puerto Rico (the "Real Property Memorandum"). Mot. at 5; Ex. C. In the Real Property Memorandum, AAFAF requested, pursuant to Act No. 26-2017, a certification detailing the real property assets held by these entities. *See infra*, Section I.

17. On June 9, 2020, Ambac requested production of all documents submitted in response to the Real Property Memorandum and any follow-up communications or analysis. *See* Mot., Ex. E, Ltr. from Ambac to the Government, dated June 9, 2020, at 2. In response, the parties continued to confer and AAFAF produced available certifications and related responsive documents. *See, e.g.*, *supra*, note 3; Mot., Ex. G, Ltr. from AAFAF to Ambac, dated Jan. 21, 2021.

18. This was not enough for Ambac. Indeed, in the Motion, Ambac's earlier request for documents related to the Real Property Memorandum has expanded into a request for documents regarding "any Assets or interest therein held by" any of the six At-Issue Entities, as well as related deposition testimony. *See* Mot., Ex. B, Deposition Topics and Documents Requested. "Assets" are defined as "any Property *or thing of value*, tangible or intangible," and "Property" is defined as broadly as possible to include "any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest." *Id.* at 1-2 (emphasis added).

---

[5] The New Cash Rule 2004 Motion has been fully briefed and is currently awaiting decision.

6

## ARGUMENT

### I. Ambac Is Not Entitled to Discovery Unrelated to the Commonwealth's Title III Case

19. Rule 2004 allows, upon order of the court, the "examination" of certain entities. That examination may relate "only to the acts, conduct, or property or to the liabilities and financial condition of the *debtor*, or to any matter which may affect the administration of the debtor's estate[.]" Fed. R. Bankr. P. 2004(b) (emphasis added). While permissible discovery under Rule 2004 is broad, it "is not unlimited." *See In re Enron Corp.*, 281 B.R. 836, 840 (S.D.N.Y. 2002). Further, requests should align with Rule 2004's purpose: to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *see also In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr. D. Mass. 1981) (primary purpose of a Rule 2004 examination is to permit party in interest to quickly ascertain extent and location of estate's assets). Ambac, as the party "seeking to conduct a 2004 examination, has the burden of showing good cause for the examination it seeks." *In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994).

20. Ambac ignores that there is no liquidation option (or even a hypothetical liquidation test) in PROMESA. Rather, PROMESA Title III only provides for a plan the Oversight Board proposes. Most importantly, the "best interests test" in Title III § 314(b)(6) provides that this Court will consider whether creditors could collect outside Title III under non-bankruptcy laws and under Puerto Rico's Constitution more than they recover under the plan of adjustment. Outside Title III, the Commonwealth's sovereignty bars creditors from seizing its land and other assets, or from forcing their sale. Municipalities and their instrumentalities are unavailable for liquidation and seizure. In other words, Ambac has no more right to Puerto Rico's buildings and beaches than

7

it has to its electric generators. Puerto Rico's non-cash assets cannot be foreclosed upon—they are reserved for current and future generations of its people. Ambac will be entitled to plan-related discovery—in the manner made available to all objecting parties—that would be "relevant to a plan of adjustment."

### A. Ambac is Not Entitled to the Requested Discovery Into Non-Cash Assets of Puerto Rico

21. The Motion goes far beyond the scope permitted by Rule 2004 because it seeks discovery from five entities legally separate from the Commonwealth as if they or their assets are available to Ambac. They are not.

22. Five of the six At-Issue Entities are organized pursuant to statutory structures under which they own and control their own property. Ambac has no claims against these entities as a Commonwealth creditor in connection with the Motion. Rather, Ambac is proceeding as if they are subsidiaries the Commonwealth must monetize for Ambac's benefit. They are not.

- **Puerto Rico Land Administration**: The Puerto Rico Land Administration was created by Act No. 13 of May 16, 1962 (the "Puerto Rico Land Administration Enabling Act"), as a public corporation with its own legal personality. The Puerto Rico Land Administration Enabling Act granted the Puerto Rico Land Administration the power to control its own property. Specifically, Article 6 of the Puerto Rico Land Administration Enabling Act provides that "[a]ll debts, obligations, contracts, bonds, notes, promissory notes, receipts, expenses, accounts, funds, prints, and properties of the Administration belong to the Administration and *not to the Commonwealth of Puerto Rico* or any other agency, public official or his/her employee." 23 L.P.R.A. § 331(e) (emphasis added).

- **Puerto Rico Public Buildings Authority:** The PBA was created pursuant to the Public Buildings Authority Enabling Act (the "PBA Enabling Act") in 1958. The PBA Enabling Act organized PBA as a public corporation legally separate from the Commonwealth. 22 L.P.R.A. § 902. In particular, the PBA Enabling Act affords PBA "complete control and supervision over each and every one of its properties and activities." 22 L.P.R.A. § 906.

- **Puerto Rico Land Authority**: The Puerto Rico Land Authority was created pursuant to Law No. 26 of April 12, 1941 (the "Puerto Rico Land Authority Enabling Act"), as a "public corporation or an autonomous governmental

8

instrumentality of the Commonwealth of Puerto Rico." 28 L.P.R.A. § 242(a). The Puerto Rico Land Authority Enabling Act provides the Puerto Rico Land Authority with a separate legal character from the Commonwealth, noting that "[t]he Authority and its subsidiaries shall, as public corporations, have legal existence and legal personality separate and apart from those of the Commonwealth of Puerto Rico, and, consequently, the debts, obligations, contracts, bonds, notes, promissory notes, receipts, expenditures, accounts, funds, printed matter, and property of the Authority and of its subsidiaries, as well as the officers, agents, or employees thereof, shall be understood as being of the said corporations and not of either the Commonwealth of Puerto Rico or any of the offices, bureaus, departments, commissions, dependencies, municipalities, branches, agents, officers, or employees thereof." 28 L.P.R.A. § 242(c).

- **Puerto Rico Industrial Development Company:** PRIDCO was created by Act 188-1942 (the "PRIDCO Enabling Act"). The PRIDCO Enabling Act provides that PRIDCO is a "public corporation having legal existence and personality separate and apart from that of the Government and of all officials thereof." 23 L.P.R.A. § 274(b). Additionally, the PRIDCO Enabling Act affords the PRIDCO "complete control and supervision of any and all of its property and activities. 23 L.P.R.A. § 278(d).

- **Puerto Rico Highways and Transportation Authority**: HTA was created pursuant to Act No. 74 of June 23, 1965 (the "HTA Enabling Act"). The HTA Enabling Act provides that HTA is a public corporation legally separate from the Commonwealth. 9 L.P.R.A. § 2002. In particular, the HTA Enabling Act makes clear that HTA shall have "complete control and supervision of any traffic or transportation facilities owned, operated, constructed or acquired by it." 9 L.P.R.A. § 2004.

23. These five At-Issue Entities have been granted the statutory authority to control their finances and own property apart from the Commonwealth. As a practical matter, whether the entities had been granted autonomy or not, Ambac is not entitled to their monetization. The proper scope of Rule 2004 discovery in this case is the "core information sufficient to obtain a basic understanding of major aspects of the *Commonwealth's* financial condition that will be relevant to a plan of adjustment." Strike Order at 9-10 (emphasis added); *see also In re Recoton Corp.*, 307 B.R. at 755 (purpose of Rule 2004 discovery is to "assist a party in interest in determining the nature and extent of the *bankruptcy estate*, revealing assets, examining transactions and assessing whether wrongdoing has occurred.") (emphasis added); *In re Good Hope Refineries, Inc.*, 9 B.R.

9

at 423 (primary purpose of a Rule 2004 examination is to permit party in interest to quickly ascertain extent and location of estate's assets). Assets not subject to liquidation and monetization are not relevant to the financial condition of the Commonwealth, and are therefore outside the scope of Rule 2004.[6]

## II. The Motion Should Be Denied Because It Is Based On The Premise That Assets Must Be Liquidated To Maximize Creditor Recovery

24. Independent of legal separateness, the Motion should be denied because, as explained above and shown by *Faitoute*, it is premised on the incorrect contention government assets must be identified for liquidation to maximize recovery to creditors. The Motion seeks invasive discovery into every "thing of value" held by the At-Issue Entities. The purpose of this request, Ambac concedes, is to seek information regarding "highly valuable assets that, *if sold or otherwise monetized*," could be used to compensate the Commonwealth's creditors. Mot. at 11 (emphasis added). In so arguing, Ambac mistakes PROMESA's Title III cases for a chapter 11 case. The Court should not allow Ambac, through this Motion, to set the stage for endless confirmation discovery about the value of assets the Commonwealth has no obligation to "monetize."

25. Like chapter 9, PROMESA "provides for significant deference to the prerogatives of the governmental debtors and of their statutory representative and makes clear that Congress intended to preserve governmental debtors' ability to initiate transactions affecting their assets." *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 432 F. Supp. 3d 25, 30 (D.P.R. 2020). Section 303

---

[6] With respect to HTA and PBA's assets in particular, what Ambac seeks to accomplish, in effect, is a substantive consolidation with the Commonwealth's assets. However, PROMESA § 304 affirmatively prohibits substantive consolidation. *See* 48 U.S.C.A. § 2164(f) (permitting the Oversight Board to file petitions or plans of affiliated debtors jointly but also stating that "nothing in this subchapter shall be construed as authorizing substantive consolidation of the cases of affiliated debtors").

10

of PROMESA, modeled on § 903 of the Bankruptcy Code, preserves the authority of territories to exercise "political or governmental powers." 48 U.S.C. § 2163. Section 305 of PROMESA, modeled on § 904 of the Bankruptcy Code, prohibits the Court from interfering, absent Oversight Board consent, with the political or governmental powers, property or revenues, or the use or enjoyment of any income-producing property by the Commonwealth or any Title III debtor. 48 U.S.C. § 2165. The "best interests test" in PROMESA § 314(b)(6) only considers what creditors could collect against the sovereign, under other applicable laws, outside Title III.

26. Together, these provisions are consistent with *Faitoute* and form the heart of the "obvious differences between governmental bankruptcies and commercial private party bankruptcies." *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 954 F.3d 1, 7 (1st Cir. 2020). Chief among these obvious differences are the unavailability of the Commonwealth's non-cash assets and the primary purpose of the restructuring. "Unlike a commercial bankruptcy, which attempts to 'balanc[e] the rights of creditors and debtors,' the 'principal purpose of Chapter 9,' and by analogy PROMESA, 'is to allow municipal debtors the opportunity to continue operations while adjusting or refinancing their creditor obligations.'" *Id.* at 7; *see also In re Fin. Oversight and Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 30 ("This Court and others have recognized that, unlike the commercial focus of bankruptcy cases of private entities, the 'primary purpose' of governmental insolvency proceedings 'is not future profit, but rather continued provision of public services.'") (citing *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 32 (Bankr. D. Colo. 1999)). As this Court recognized, "the goal of these PROMESA cases thus is not merely to maximize creditors' recoveries." *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 432 F. Supp. 3d at 30. "Rather, these restructuring cases require a more holistic approach that focuses on the continuation and future of

11

a government and its instrumentalities and their ability to meet the needs of the Commonwealth's residents as well [as] provide proper recompense of creditors." *Id.*

27. Under PROMESA, as with chapter 9, the "best interests of creditors" test differs substantially from the chapter 11 "best interests" test. *In re Fin. Oversight and Mgmt. Bd. for P.R.*, 361 F. Supp. 3d 203, 250 (D.P.R. 2019) (citing *In re City of Detroit, Mich.*, 524 B.R. 147, 212-13 (Bankr. E.D. Mich. 2014)). Chapter 11 requires the court to determine whether an individual creditor would receive more if the chapter 11 debtor were to liquidate its assets, while PROMESA requires this Court to consider "whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery of the creditors than is provided by the plan." *Id.*

28. A "holistic" approach to restructuring, focused on the continuation and future of the Commonwealth government and its instrumentalities, as well as their ability to meet the needs of the Commonwealth's residents, thus does not require a line-item accounting of the assets of the Puerto Rico government for creditors' benefit. The Government Parties have provided significant amounts of information regarding the Commonwealth's assets and unrestricted cash even though it has no relevance.[7] Enough is enough.

29. At bottom, this Motion is Ambac's latest attempt to push for unbounded and unending discovery, relying on arguments at odds with the statute and jurisprudence. Ambac cites

---

[7] Ambac may argue in its reply that because the law cited in the Real Property Memorandum, Act No. 26-2017, grants the Commonwealth certain powers related to property of the At-Issue Entities, that Ambac should be entitled to their requested discovery. That is no defense to *Faitoute* and Ambac's lack of entitlement to monetization of assets no matter who controls them. Any powers held by the Commonwealth pursuant to Act No. 26-2017, however, are not relevant to the dispute before the Court. Act No. 26-2017 does not abrogate the separate corporate structures of the separate At-Issue Entities or mandate that the At-Issue Entities are obligated to liquidate their property for the benefit of the Commonwealth's creditors as part of its own restructuring.

12

no "other available remedies under the non-bankruptcy laws and constitution" of Puerto Rico for why its Rule 2004 discovery is even relevant—because it is not. To the contrary, PROMESA § 305(2) expressly protects "any of the property or revenues of the debtor." Any claimed distinction between "core" assets which may be maintained by the debtor for the continued provision of public services and "non-core" assets which must be monetized solely for the benefit of creditors is illusory and unsupported by the law. By including § 305 of PROMESA, Congress expressed its clear intent to provide the Commonwealth with all of the protections that § 904 of the Bankruptcy Code affords municipalities. Among these is protecting the Commonwealth's property.

## **CONCLUSION**

30.     For the foregoing reasons, the Oversight Board respectfully requests the Motion be denied.

| | |
|---|---|
| Dated: March 5, 2021<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br>Carla García Benítez<br>USDC No. 203708<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br>Email: hermann.bauer@oneillborges.com<br>Email: carla.garcia@oneillborges.com<br><br>Martin J. Bienenstock (*pro hac vice*)<br>Margaret A. Dale (*pro hac vice*)<br>Michael T. Mervis (*pro hac vice*)<br>Laura E. Stafford (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>Email: mdale@proskauer.com<br>Email: mmervis@proskauer.com<br>Email: lstafford@proskauer.com<br><br>*Attorneys for the Financial Oversight and Management Board for Puerto Rico, on its own behalf and as representative of the Commonwealth of Puerto Rico* |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer

15