**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

RECEIVED & FILED

2021 MAR -9  AM 9: 32

CLERK'S OFFICE
U.S.DISTRICT COURT
SAN JUAN.P.R.

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 8027-1**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**This Stipulation relates only to the Commonwealth.** |



E.V.Q.

## STIPULATION MODIFYING THE AUTOMATIC STAY BETWEEN THE COMMONWEALTH OF PUERTO RICO AND ENRIQUE VÁZQUEZ QUINTANA

This stipulation (the "Stipulation") is made as of September 10, 2019, by and between the Commonwealth of Puerto Rico (the "Commonwealth") and Enrique Vázquez Quintana ("Movant" and together with the Commonwealth, the "Parties"), plaintiff in the case captioned

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Vázquez Quintana v. Liana Fiol Matta, et als.*, Civil No. 19-cv-1491 (JAG) (the "Litigation"), pending before the United States District Court for the District of Puerto Rico (the "District Court").[2]

## RECITALS

**WHEREAS**, on May 3, 2017, the Commonwealth, by and through the Oversight Board, as the Commonwealth's representative pursuant to PROMESA section 315(b), filed a petition under title III of PROMESA (the "Title III Case");

**WHEREAS**, on August 17, 2017, the District Court entered the *Order Amending Case Management Procedures* (the "Case Management Order"), which revised the *Notice, Case Management and Administrative Procedures* to implement a protocol (the "Lift Stay Protocol") for filing motions for relief from the automatic stay set forth in Bankruptcy Code sections 362(a) and 922(a),[3] made applicable to the Title III Case by PROMESA section 301(a) (the "Title III Stay") [ECF Nos. 1065, 1512, 2839, 3730, 3804, 4086, 4866, 7115, 8027];

**WHEREAS**, under the Lift Stay Protocol, Movant is required to (a) send notice (the "Lift Stay Notice") to counsel to the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") to advise them of Movant's intent to seek relief from the Title III Stay at least fifteen (15) business days prior to filing a motion seeking such relief

---

[2]  The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Commonwealth to enter into this Stipulation.

[3]  In a title III case, Bankruptcy Code section 922 extends the self-executing provisions of Bankruptcy Code section 362 to, among other things, actions against officers and inhabitants of the debtor to enforce claims against the debtor. *See Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] ("For the avoidance of doubt, the protections of Bankruptcy Code section 922(a)(1) with respect to officers and inhabitants of the Debtors, as set forth in paragraph 4(a) [of the Order], apply in all respects to the Debtors' officers in both their official and personal capacities with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors.").

(the "Lift Stay Notice Period") and (b) meet and confer with the Commonwealth during the Lift Stay Notice Period;

**WHEREAS**, on August 20, 2019, Movant sent his Lift Stay Notice to the Oversight Board and AAFAF seeking relief from the Title III Stay to allow Movant to continue with the Prepetition Action.

**WHEREAS**, during the Lift Stay Notice Period, the Commonwealth and Movant have resolved Movant's request for modification of the Title III Stay.

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among Commonwealth, through its counsel, and Movant, appearing *pro se*, each of whom represent and warrant they possess the requisite authority to bind the respective Parties hereto, as follows:

1.      The Title III Stay is hereby modified solely to the limited extent necessary to allow the Litigation to proceed to final judgment before the District Court; provided, however, the Title III Stay shall continue to apply in all other respects to the Prepetition Action, including, but not limited to, the execution and enforcement of any judgment for money damages or any other relief that entails the disbursement of funds by the Commonwealth or any other Title III Debtor, and provisional remedies against the Commonwealth or any other Title III Debtor.

2.      Nothing contained in this Stipulation shall operate as a waiver or modification of the Title III Stay so as to permit the prosecution against the Commonwealth or any of the other Title III Debtors of any claim or claims by anyone other than Movant as provided for herein and the Commonwealth reserves all rights, defenses, and protections with respect to any and all matters pending or that may arise in the Title III Case, including the treatment of any claim arising from the Prepetition Action under a plan of adjustment or otherwise in the Title III Case.

3.      The Commonwealth and Movant represent and warrant that they are properly and fully empowered to enter into and execute this Stipulation, that they know of no contractual commitment or legal limitation of, impediment to, or prohibition against their entry into this Stipulation, and that the Stipulation is legal, valid, and binding upon them.

4.      Neither this Stipulation nor any statement made, action, or position taken, or document prepared or executed in connection with the negotiation, execution, or implementation of this Stipulation shall be deemed to be, or construed as, (a) an admission by any party of any liability, wrongdoing, act, or matter or that any claim or defense has or lacks merit; (b) a waiver of the Commonwealth's rights to dispute, contest, setoff, or recoup any claim, including any claims asserted by Movant in the Prepetition Action, or assert any related rights, claims, or defenses and all such rights are reserved; (c) a waiver of Movant's or the Commonwealth's rights to determine and/or contest the applicability of a discharge to any judgment that may be issued in the Prepetition Action pursuant to 11 U.S.C. § 944, as made applicable to these proceedings by virtue of PROMESA section 301(a); or (d) an approval or assumption of any agreement or contract between the parties under Bankruptcy Code section 365.

5.      Nothing in this Stipulation shall be deemed or construed as (a) creating or conferring any right upon any persons or entities (other than Movant as expressly provided in this Stipulation), or (b) evidence of any willingness or obligation on the Commonwealth's part to consent to any other or future modifications of or relief from the Title III Stay with respect to any persons or entities.

6.      This Stipulation contains the entire agreement by and between the Parties with respect to the subject matter hereof, and all prior understandings or agreements, if any, are merged into this Stipulation.

4

7.      This Stipulation shall be construed and interpreted in accordance with the laws of Puerto Rico.  For purposes of construing this Stipulation, neither of the Parties shall be deemed to have been the drafter of the Stipulation.

8.      Electronic copies of signatures on this Stipulation are acceptable, and an electronic copy of a signature on this Stipulation is deemed an original. This Stipulation may be executed in counterparts, each of which is deemed an original, but when taken together constitute one and the same document.

9.      This Stipulation may not be modified other than by a signed writing executed by the parties hereto.

10.     The District Court shall retain jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.

11.     This Stipulation shall be immediately effective and enforceable upon execution by the Parties hereto.


*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF and in agreement herewith, the Commonwealth, by and through is counsel, and Movant have executed and delivered this Stipulation as of the date first set forth above.

Dated: September 10, 2019
      San Juan, Puerto Rico

Respectfully submitted,

**DENISSE N. LONGO-QUIÑONES**
Secretary of Justice

**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorney for the Commonwealth of Puerto Rico*

/s/ Enrique Vázquez Quintana M. D.
**ENRIQUE VÁZQUEZ QUINTANA**
*PRO SE*

Urb. El Remanso,
F15 Corriente St.,
San Juan, PR 00926-6108
Telephone: (787) 790-3091
Mobile: (787) 462-0658
evazquezmd@gmail.com

*Movant*

# United States Court of Appeals

## For the First Circuit

Dr. Enrique Vázquez Quintana         No. 20-1859

Plaintiff- Appellant,

v.

Hon. José Alberto Morales Rodríguez

Defendant-Appellee

Dr. Enrique Vázquez Quintana,  No. 20-1914

Plaintiff-Appellant

V

Hon. Liana Fiol Matta, et all

Defendants-Appellees

Order of Court

Entered: March 1, 2021

Preliminary Motion in Opposition of the Stay Under Promesa

Now come, Dr. Enrique Vázquez Quintana, Pro Se who states the following:

1. The United States Court of Appeals of Boston, thru the Secretary of the Court, Mrs. María R. Hamilton informed me on March 1, 2021 that this Honorable Court do not believe that the Title III court did not intend to lift the stay as to any appeal in this case. Consequently, these appeals shall be stayed.

2. I have not received any communication from this court about any petition from the defendant lawyers about the reactivation of the stay.

3. I have not been informed to react to such a petition, since no petition have been placed.

4. This court have been idle since November 17, 2019 when I placed a Motion of Reconsideration about your decision that the Mandamus is moot.

5. In fact, on January 16, 2021, I sent a motion to this court asking to expedite the course of my case.

6. Whoever revived the issue of the Stay is just trying to obstruct the rapid conclusion of this case.

7. I have followed your suggestion to return to the Title III court to permit this appeal to continue in the Boston Appeals court and even to the Supreme Court if needed. Today I submit my petition to the Hon. Judge Laura Taylor Swain.

8. This case is quite simple to decide, and it is to Dismiss the case with Prejudice in my favor. The seven judges of the Puerto Rico judiciary system and the Hon. Judge Jay García Gregory who joined those judges in the same aberrant, unscientific Sentence (Applying just to me) when he decided to dismiss the case in their favor when I presented a writ of Mandamus to this court. Judge García Gregory in an episode of rage dismissed the case in favor of all defendants, refused to recuse himself from the case and closed the case. This is clearly an abuse of power toward me who do not have a lawyer.

9. The three courts of Puerto Rico converted a lie from an expert witness and converted it into a judicial truth thru a crass judicial mistake just to punish me for having won a case against a lawyer who placed a frivolous suit against me.

10.  It is evident that the Hon. Judge García Gregory is biased against me. After he dismissed with prejudice in favor of the medical witness, this court ordered us to reach an agreement. We did that and the witness had to pay me a confidential amount of money to get out of the case.

11. During a new trial, the case within the case the defendants could not present scientific evidence to state that low calcium caused loss of memory to a patient. Such evidence does not exist, it is a simple as that.

I will submit to you as a Final Motion the decision of the Hon. Judge Laura Taylor Swain for the lifting of the stay.

Respectfully submitted,

*Enrique Vázquez Quintana M.D.*

Enrique Vázquez Quintana, MD

Pro Se

Copy sent to Mr. Carlos Lugo Fiol, Esq.

# United States Court of Appeals

## For the First Circuit

RECEIVED & FILED
MAR 5 AM 9: 30
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN P.R.

No. 20-1859

DR. ENRIQUE VAZQUEZ-QUINTANA,

Plaintiff - Appellant,

v.

HON. JOSE ALBERTO MORALES-RODRIGUEZ,

Defendant - Appellee,

HON. LIANA FIOL-MATTA; HON. ANABELLE RODRIGUEZ-RODRIGUEZ; HON.
MAITE D. ORONOZ-RODRIGUEZ; HON. ERICK V. KOLTHOFF-CARABALLO; HON.
ROBERTO FELIBERTI-CINTRON; HON. GLORIA M. SOTO-BURGOS,

Defendants.

---

No. 20-1914

DR. ENRIQUE VAZQUEZ-QUINTANA,

Plaintiff - Appellant,

v.

HON. LIANA FIOL-MATTA; HON. ANABELLE RODRIGUEZ-RODRIGUEZ; HON.
MAITE D. ORONOZ-RODRIGUEZ; HON. ERICK V. KOLTHOFF-CARABALLO; HON.
ROBERTO FELIBERTI-CINTRON; HON. GLORIA M. SOTO-BURGOS,

Defendants - Appellees,

HON. JOSE ALBERTO MORALES-RODRIGUEZ,

Defendant.

---

## ORDER OF COURT

Entered: March 1, 2021

RECEIVED & FILED

2021 MAR -9 AM 9: 37

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN P.R.

## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIRST CIRCUIT

**DR. ENRIQUE VAZQUEZ-
QUINTANA, MD PRO SE
PLAINTIFF APPELANT**

**VS.**

**HON. LIANA FIOL-MATTA, ET
ALS
DEFENDANT APPELLEES**

**HON. JOSÉ ALBERTO MORALES
RODRÍGUEZ**

**DEFENDANT**

**CASE NO. 20-1859
CASE NO. 20-1914**

2020 OCT 14 AM 9: 40

RECEIVED
US COURT OF APPEALS
FIRST CIRCUIT
CLERK'S OFFICE

## MOTION INFORMING THE COURT

Comes now Dr. Enrique Vázquez Quintana, plaintiff appellant Pro Se and
respectfully alleges and prays to the Honorable Court as follows:

1. We received two orders from the Honorable Court to show cause within 21

   days whether the automatic stay under PROMESA Act applies to this appeal.

   The orders are dated October 6 and October 7, 2020 respectively. On May 3,

   2017 the Commonwealth of Puerto Rico filed a petition under Title III of

   Promesa 48 USC Sec. 2161 et seq. for adjustment of the debts. Under Sec.

   2161A the bankruptcy stay provision of 11 USC Sec. 362 and 922 are

   incorporated into PROMESA.

2. A study of the docket of the case 3.19-CV-01491 (JAG) will show that on
07/30/2019 a notice of automatic stay was filed by the codefendants.
(Appendix 1) On July 9, 2019 we filed a motion in opposition to the stay by
PROMESA and asking for the lifting of the automatic stay. (Appendix 2)  On
09/10/2019 docket 22 the stay was lifted (Appendix 3) and the codefendant
filed a motion to reopen the case.   Attachment no. 1 is the stipulation
modifying the automatic stay between the Commonwealth of Puerto Rico and
Enrique Vazquez-Quintana the appearing party.     (Appendix 4) That
stipulation was signed by the Honorable Bankruptcy Judge.  On 10/01/2019
the Honorable Judge Jay A. García-Gregory signed an order granting the
motion to lift the automatic stay.

3. As we can see the Commonwealth of Puerto Rico signed a stipulation lifting
the automatic stay in the case 3.19 CV-01491 (JAG).

   **WHEREFORE,** it is respectfully requested to this Honorable Court to be
informed that the automatic stay of the case 3.19 CV-01491 (JAG) has been
lifted by a stipulated order signed by the Bankruptcy Judge and by the
presiding Federal District Court Judge.


I hereby certify that I sent copy of this motion by mail and electronically to
the following attorneys: Jose A. Morales Boscio PO BOX 4980 Caguas, P.R.

00726; jose.morales@himapr.com. and Juan C. Ramírez Ortiz, Department of

Justice,    PO    Box    9020192    San    Juan,    PR    00902-0192

juramirez@justicia.pr.gov .

**DR. ENRIQUE VAZQUEZ  QUINTANA**
**Email: evazquezmd@gmail.com**
OCTOBER, 13, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

*Appendix 1*

| | |
|---|---|
| ENRIQUE VÁZQUEZ QUINTANA, *pro se* | CIVIL NO. 19-1491 (JAG) |
| *Plaintiff,* | |
| v. | Civil Action |
| HON. LIANA FIOL-MATTA; HON ANABELLE RODRÍGUEZ-RODRÍGUEZ; HON. MAITE ORONOZ-RODRÍGUEZ; HON. ERICK KOLTHOFF-CARABALLO; HON. ROBERTO FELIBERTI-CINTRÓN, *et al.* | |
| *Defendants.* | |

RECEIVED
US COURT OF APPEALS
FIRST CIRCUIT
CLERK'S OFFICE
2020 OCT 14 AM 9: 6

NOTICE OF AUTOMATIC STAY AND OF PROCEDURES FOR FILING MOTIONS FOR
RELIEF FROM THE AUTOMATIC STAY IN THE
COMMONWEALTH OF PUERTO RICO'S TITLE III CASE

TO THE HONORABLE COURT:

COMES NOW, in a special appearance, the Department of Justice of the Commonwealth of

Puerto Rico, on behalf of co-defendants Maite D. Oronoz-Rodríguez; Erick V. Kolthoff-Caraballo;

Anabelle Rodríguez-Rodríguez; Roberto Feliberti-Cintrón; Liana Fiol-Matta; and Gloria M. Soto-

Burgos in their individual capacities;[1] through the undersigned attorney, without waving any right or

defense arising from Title III of "Puerto Rico Oversight, Management and Economic Stability Act"

("PROMESA"), 48 U.S.C. §§ 2101 et seq., and the Commonwealth's Petition under said Title or under

this case and without submitting to the Court's jurisdiction, and very respectfully STATE and PRAY:

---

[1] The Commonwealth of Puerto Rico guarantees legal representation to its officers, former officers, employees, and ex-employees who are sued for damages in their personal capacities if their acts or omissions are according to law and committed in good faith. Appearing co-defendants were purportedly served with process and either recently requested legal representation from the Department of Justice in their individual capacities. If and when legal representation pursuant to Commonwealth's Act No. 104 of June 25, 1955 (hereinafter, "Act No. 104") is granted, the Department of Justice may represent appearing co-defendants, in their individual capacities. The Department of Justice, however, cannot appear beyond the scope of this Notice of Automatic Stay and of Procedures for Filing Motions for Relief from the Automatic Stay in the Commonwealth of Puerto Rico's Title III case until such request for representation is granted. If legal representation under Act No. 104 is denied, the undersigning attorney would have to withdraw as legal representative to co-defendants in their individual capacities.

# IN THE UNITED STATES COURT
## OF APPEALS FOR THE FIRST CIRCUIT

| | |
|---|---|
| **ENRIQUE VAZQUEZ-QUINTANA, MD**<br>**PLAINTIFF PRO SE**<br>**APPELLANT**<br><br>**V.**<br><br>**HON. LIANA FIOL MATTA**<br>**DEFENDANTS APPELLEES** | **CASE NO. 20-1914** |

## MOTION AGAINST THE MOTION IN COMPLIANCE FILED BY THE CODEFENDANTS

Comes now plaintiff appellant Pro Se and respectfully alleges and prays to the Honorable Court as follows:

1. We believe that the motion filed by the codefendants on 10/27/2020 is wrong. This Honorable Court entered an order on October 07, 2020 in which requested the parties to show cause whether this appeal is affected by the filing by the Commonwealth of Puerto Rico of a petition for restructuring its debts under Title III of Promesa 48USC2012 et seq. Specifically the automatic stay provided by 42USC2161A in which Congress incorporated Section 362 and 922 of the Bankruptcy Code USC362922. A stipulation was signed by the lawyers of the Commonwealth of Puerto Rico and the appearing party. In the

1

aforesaid stipulation the automatic stay was modified solely to allow the litigation in the complaint filed in the Federal District Court 19-CV-1491 to proceed to the final judgment. The automatic stay will continue to apply to the execution and enforcement of any money judgments against the Commonwealth of Puerto Rico.   In other words, if there is any money judgment against the Commonwealth of Puerto Rico the execution of that money judgment against the Commonwealth of Puerto Rico will be stay.   In all other respects the litigation will be able to continue until final judgment including declaratory or injunctive relief against the codefendants Judges, justices, government employees of the Commonwealth of Puerto Rico and private parties.   The stipulation was signed by the Honorable Laura Taylor Swain and approved by the Federal District Judge on 10/01/2019 docket no. 29.   As we can see the lifting of the automatic stay authorizes the litigation in the case 19-CV-1491 until the final judgment of the District Court.   Only the execution of a money judgment against the Commonwealth of Puerto Rico is stay.   The Federal Appeal Courts don't have the authority to execute its judgments on appeal.   The only authority provided by Law to the Federal Appeals Courts is to send the Mandate to the Federal District Court which will be under the legal obligation to comply with the Mandate of the Appeals Court. According to the stipulation above mentioned the District Court cannot

2

execute a judgment of monetary damages against the Commonwealth of Puerto Rico. In all other respects the litigation can continue. This includes any appeal by the parties to the Appeals Court. The Appeals Court will have full authority to decide the appeal subject to the stipulation agreed and signed by the parties and signed by the Bankruptcy Judge and the District Court Judge that no execution of money judgment can be made against the Commonwealth of Puerto Rico. The motion filed by the codefendants in this case is preposterous and utterly without merit. Lawyers should not file motions with the only purpose of delaying the rapid decision of a complaint.

**WHEREFORE,** it is respectfully requested to this Honorable Court to dismiss the motion filed by the codefendants that wants this appeal to be submitted unnecessarily to the Bankruptcy Court.

3

I hereby certify that I sent copy of this motion by mail and electronically to the following attorneys: Jose A. Morales Boscio PO BOX 4980 Caguas, P.R. 00726; Carlos Lugo-Fiol, USCA No. 41677. PO Box 260150, San Juan, Puerto Rico 00926.  Tel. 787-645-4211.  Email: clugofiol@gmail.com.

**DR. ENRIQUE VAZQUEZ QUINTANA**
Corriente F15
Urb. El Remanso
San Juan, Puerto Rico 00926-6108
Email: evazquezmd@gmail.com
November 4, 2020

4

**IN THE FIRST CIRCUIT OF BOSTON, MASSACHUSETTS**

RECEIVED & FILED
'21 MAR -9  AM 9:36

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

EX-PARTE---ENRIQUE VÁZQUEZ-QUINTANA, MD

RE--Enrique Vázquez Quintana, MD
Plaintiff
Pro Se LITIGANT                              CASE # 3:19-cv-01491-JAG
              V

Hon Judge Liana Fiol Matta
Hon. Anabelle Rodríguez Rodríguez
Hon. Maite D. Oronoz Rodríguez
Hon. Eric V. Kolthoff Caraballo
Hon. Roberto Feliberti Cintrón
Hon. José A. Morales Rodríguez
Hon. Gloria M. Soto Burgos
Defendants

Hon. Judge Jay Garcia Gregory
Federal District Court
San Juan, PR

To the Honorable Court:

Comes now Enrique Vázquez-Quintana, MD, Pro Se and petitions the above-named
Court for a writ of mandamus to the Hon. Judge Jay García Gregory of the San Juan
Circuit Court and shows the following in support of this petition.

1. On May 23, 2019 I presented a lawsuit against seven judges of the Judiciary
System of Puerto Rico and an expert surgical witness Dr. Stephen A. Falk an ENT
surgeon from Connecticut. (Copy included)

2. This is the typical case within the case:

The Supreme Court of Puerto Rico, in a five to four vote, sentenced -on June 11,
2015 and after two reconsideration petitions, the last one solved on December 18,
2015 - that hypocalcemia is responsible for dementia in humans. The case in point
involves an operation I performed on a patient on June 26, 2000, at age 53 with
depression, high calcium levels (hyperparathyroidism) of 15-year duration, a left
thyroid nodule, and a right adrenal non-functioning tumor. Multiple Endocrine
Neoplasia (MEN II) was a possibility but the Aldosterone, renin and the
catecholamines were normal. A parathyroid adenoma and the left thyroid lobe were

removed in the year 2000. The patient developed hypocalcemia, (Low calcium) an inherent complication of this type of surgery, seen in 3 to 5% of cases. She was readmitted in July 5, 2000 because of hypocalcemia and administered IV calcium and Vitamin D. On follow-up in August 30, 2000, her calcium was 7.6 mg/ml, phosphorus 4.5 mgs/dl, and PTH 109 pg/ml. When last seen before the lawsuit on October 27. 2000, her calcium was 7.7 mgs/dl and phosphorus 4.6 mgs/dl.

On June 21, 2001, the patient filed a lawsuit on the grounds of having developed hypocalcemia as a result of my surgery. Ten years passed from the filing date to the beginning of the trial – in 2011 - at the Lower Court. This fact is initial evidence of an ineffective judicial system. Five years after the operation, in 2005, the patient developed Alzheimer's disease. Neurologists are clear on the fact that by the time the first symptoms of this disease are detected, the disease has been present for 5, 10, 15, 20, or even 30 years. Based on this medical knowledge, anyone must conclude that at the time of the operation the patient was already afflicted by Alzheimer's disease. The surgeon – in this case, myself - could not possibly have produced Alzheimer's disease or any other of the dementias on this woman.

An American otorhinolaryngologist, Dr. Stephen A. Falk, from Connecticut was allowed by the court to testify on the indications for surgery and the surgical technique. The patient's husband testified in court that she was unable to remember the names of her children, did not remember her church hymns, and once almost burned down the house; their sexual relations were down to less than once a month, and they could no longer go dancing or to the casino. In 2005, he took her to a local Private Community Health Center, she was diagnosed with Alzheimer's disease, and was started on Aricept and Namenda.

Surprisingly, this American expert witness was able to gauge the state of her mental health based on an interview with the patient at the lobby of his hotel, with her lawyer as interpreter. Inexplicably, the following day he testified that the hypocalcemia that resulted from my operation resulted in dementia to the patient. This unscientific statement violates the Daubert motion of the American Anglo-Saxon legal system (which excludes the presentation of unqualified evidence to a judge or jury), as well as Rule 702 of our Napoleonic system.

The discovery of evidence was also at fault: the suit was not amended from the initial reason of hypocalcemia to dementia. The lawyers concealed the chart evidencing that she was being treated for Alzheimer's disease, not at a local Public Health Center but at a private Community Health Center. This is a clear violation of the rules of discovery of evidence prior to a trial. Similar to a surgeon who is not willing

to tolerate surprises in the operating room for the well-being of the patient, courts - as a matter of legal principle - do not tolerate surprises in court proceedings. This act also violates the Attorneys' Code of Ethics.

We went to trial unaware that the patient had developed Alzheimer in 2005, and for this reason did not call in a neurologist to testify on my behalf as a true expert in this field. In a crude act of dehumanization, the plaintiffs' lawyer went as far as to allow the patient to testify. As would be expected of a person afflicted with this illness, her answers were incoherent. I did no permit my lawyer to cross-examine her owing to the fact that her Alzheimer's disease was evident.

I have a deep personal knowledge of Alzheimer's: my wife, died in June 15, 2006, after suffering the disease for eleven years. I wrote a book titled **Who Are You?** - in Spanish and English - that chronicles our experiences in dealing with the disease at home as a family of six children and a father and spouse (myself). In July 2016, we finished the filming a movie of the same title, based on the book. The movie was shown in San Juan, Puerto Rico in April 18, 219. The movie have subtitles in English.

The Lower Court Judge entirely rejected the opinion of my expert endocrinologist - Yale alumni, NIH grants recipient, and author of multiple publications - who illustrated on the blackboard the electric gradient between the brain cells and the interstitial space. He testified that a sudden drop in calcium could cause transient disorientation or **temporary** loss of memory, which is corrected permanently with the administration of calcium and vitamin D, and has never been known to cause Alzheimer's or any other type of dementia. I was sentenced and am obligated to pay a large amount of money in addition to the $100,000 paid by my insurance, to compensate the patient, the husband, and the lawyer for damages, including the cost of all the medications used by this patient from 2005 to the present. Among these medications are the ones prescribed for her pre-existing diseases, as well as the Alzheimer medications that are extremely expensive and ineffective, all for a disease I did not cause.

The Court has issued an arbitrary decision based on unsubstantial scientific arguments made by a witness belonging to the American College of Surgeons, who did not follow the guidelines that apply to an Expert Surgical Witness of the American College of Surgeons.

Justice erred in this case. This absurd decision by the Supreme Court of Puerto Rico has no application in any other country, much less the United States, of whom we

have been a colony for the last 122 years. But injustice is injustice regardless of where it is perpetrated.

Incidentally, I am the most experienced surgeon in thyroid and parathyroid surgery in Puerto Rico. I have published articles on the topic of thyroid, parathyroid and adrenal gland surgery. I retired from private practice on June 12, 2013, at age 75. As a result of this decision, I am forced to carry the false burden of having someone believe that my surgery was the cause of dementia in one of my patients. I find myself powerless, caught in an indefensible situation, and prohibited from any further appeals.

The Supreme Court of Puerto Rico is believed by many to be infallible. This is the same Highest Court that transformed a scientific lie into a judiciary truth by virtue of a crass judicial error, and by failing to behave in a prudent and reasonable manner.

I cannot underscore this enough: this ruling is intolerable and should not be tolerated by the academicians, not only in Puerto Rico but all over the world, for the undisputable fact is that the causes of the dementias are yet unknown.

3. The Lower Court decided that I caused dementia to the patient. The Hon. Judge Gloria A. Soto Burgos concluded that the testimony of Dr. Stephen Falk that low calcium caused a dementia was truthful and it was the accepted medical practice at the time. The expert witness upon questioning by my lawyer said that he has no scientific evidence to sustain his testimony, he was lying since no such evidence exists, nobody knows the causes of the dementias and Alzheimer's is one of the dementias. The judge did not even mention the testimony of my endocrinologist. The plaintiff lawyer asked if I had suit a lawyer in the past, a question not pertinent to the case. My lawyer did no object, so I answered that I presented a lawsuit against a lawyer who presented a frivolous suit against me, I won the case and she was supposed to pay me $184,000 for economic and emotional damage. She has paid nothing. My answer created animosity against me and ordered me to pay $280,000 to the patient and husband, $284,000 or the delay for temerity in the case that took 10 years from the suit to reach her court.

4. We appeal to the Appellate Court and in a decision rife with grotesque mistakes they ratified the Lower Court and impose me a fine of $6,000 for bringing a frivolous appeal. The ratification in at least four occasions says hypercalcemia (High calcium) instead of hypocalcemia (Low calcium), no one can understand such sentences. Even the name of the patient is misspelled, instead of Isabel Montañez Ortiz, they wrote Isabel Montañez Quintana, creating a hybrid or chimera between the patient and her surgeon.

5. We then appealed to the Supreme Court and they made a Sentence, not an opinion, in a 5 to 4 vote that I caused a dementia, not Alzheimer's to the patient. This is a finesse in diagnostic skills since at times the most experienced neurologists cannot tell what type of dementia is suffering the patient he/she is evaluating.

Complaint in the Federal Court of San Juan
On May 23, 2019 I presented Pro Se a complaint against seven judges of the Puerto Rico Judiciary System and against the expert witness Dr. Stephen A. Falk. (Copy included)
Events:
1. Mr. Juan Carlos Ramírez Ortiz presented a Motion of Stay under PROMESA Act, opposed that motion (Copy included) and the stay was lifted.
2. The Hon. Judge Jay García Gregory dismissed the case with prejudice in favor of Dr. Stephen A. Falk, indicating that I have nothing to claim under Article 1802 since the Dr. Falk was witness for the plaintiff and that he came to orient the court.
3. The reasoning of the Hon. García Gregory might be true, but the witness was never authorized to lie. We appealed to First Circuit Court in Boston and the court remand us to reach a settlement.
4. On February 19, 2019 we met with the Hon. Judge Charles A. Cordero and under the Rules of the Court of Appeals for the First Circuit Dr. Stephen A. Falk entered into an agreement with me paying a confidential amount of money, but much less than the $170,000 I had to pay to Triple-S Insurance for the excess of my policy. (Copy of the Settlement included)

This incident demonstrates that the Hon. García Gregory is not impartial and is prejudiced against me.

5. The Hon. Judge García Gregory dismissed the case with prejudice in favor of the Hon. José Alberto Morales Rodríguez on October 10, 2019. He must know that the Constitution of the United States provides for separation of religion and government. He did this in a single paragraph citing only one case, Goldstein v Galvin F.3d 16,24, 1st Cir. 2013. (Copy included) The Hon. García Gregory dispatched this important and unique case (That violates my Civil Rights, with lack of due process violating the 14 Amendment and violating Art. 1802) in a single sheet of paper without any explanation or justification for his decision. This is evidence of partialization and discrimination by the Hon. García Gregory.
6. The following day October 11, 2019 I submitted a Motion for Disqualification of the Hon. Jay García Gregory. (Copy included) No action has been taken.
6. I submitted a Motion of Reconsideration on October 16, 2019. (Copy included)

In addition for the revocation of the partial judgment emitted by the Hon. García Gregory I asked for assignment of a judge from the United States. Hon, García Gregory knows all the defendant judges in this case and he gives the impression that he is protecting them. No action has been taken by the Hon. García Gregory).

7. The American Alzheimer's Research Foundation states that there is no causal relationship between hypocalcemia and the dementias. (Exhibit 1)

8. The American Surgeon states that all female patient older than 50 years should take Calcium and Vitamin D to prevent osteoporosis, she was 53 at the time of surgery. (Exhibit 2)

9. Triple-S Insurance sent their report to the National Practitioner Data Bank in which states that I did not incurred in malpractice, the hypocalcaemia nor the cause of dementia is mentioned. It exonerates me of any wrongdoing. (Exhibit 3)

In view of the above evidence I respectfully request that this writ of Mandamus be accepted and so be ordered.

Respectfully yours,

Enrique V'3 for Quitane M. D.

Enrique Vázquez Quintana, MD, FACS
July 7, 2020

INTAKE DROP BOX
RECEIVED & FILED
RECEIVED & FILED

2020 JAN 16 AM 10: 58

CLERK'S OFFICE
U S DISTRICT COURT
SAN JUAN P R

IN THE UNITED STATES DISTRIC COURT
FOR THE DISTRICT OF PUERTO RICO

Enrique Vázquez Quintana, MD
Plaintiff  Pro Se

V

Hon Judge Liana Fiol Matta
Hon. Anabelle Rodríguez Rodríguez
Hon. Maite D. Oronoz Rodríguez
Hon. Eric V. Kolthoff Caraballo
Hon. Roberto Feliberti Cintrón
Hon. José A. Morales Rodríguez
Hon. Gloria M. Soto Burgos
Defendants

Hon. Judge Jay Garcia Gregory
Federal District Court
San Juan, PR

Case # 3:19-cv-01491-JAG


Motion to Expedite the case

Now comes, Dr. Enrique Vázquez Quintana, Pro Se, who respectfully solicits to this Hon. Judge Jay García Gregory to expedite the solution of this case.  I am planning to return to Puerto Rico from the United States soon. I suffer from multiple chronic diseases, the most severe Myelodysplasia (Pre-leukemia) acquired as a result of Agent Orange exposure while serving in the Republic of Vietnam in 1969. I am being treated at the San Juan Veterans Administration. Presently I am 82 3/12 years old, nobody can assure me how long I will continue to live. Therefore, the clear fact is that I would like this case to be solved as soon as possible. I would like that you reconsider your decision of Dismissal with Prejudice in favor of the Hon. Judge José Alberto Morales Rodríguez.  The decision of a panel of three judges from the Appellate Court presided by the Hon. Morales Rodríguez is rife with grotesque mistakes, even the name of the patient is

incorrect ounce. The last portion of that decision is a cut and paste of the expressions of the lower court decision.

I have requested that you inhibit yourself from the case. The decisions pending in the case is your inhibition from the case and the Reconsideration of your decision Dismising with Prejudice in favor of the Hon. Judge José Alberto Morales Rodríguez.

If you are disqualified from the case, I would appreciate if the United States District Court of Puerto Rico assign a judge from the United States to continue with the case.

I deserve my day in court when I will be able to prove my case to the Jury and yourself that the decisions of the three courts of Puerto Rico are incorrect, unfair, against all the scientific knowledge at the time and that their decisions were made to punish me since I am the only physician who has won a frivolous lawsuit presented against me by a lawyer. By reading the three decisions of the Lower Court, the Appellate Court and the Supreme Court you can perceive the animosity against me. The final nailing was made by the Supreme Court when the Hon. Judge Anabelle Rodríguez Rodríguez, whose mother sadly died from Alzheimer's disease voted against me, sentencing that I caused a dementia to a patient after an operation of the thyroid and parathyroid that resulted with low calcium. The happening of low calcium is an inherent complication of this type of operation, no matter the experience of the surgeon. It happens to be, that I am the most experienced surgeon in this type of surgery.  The Hon. Judge Anabelle Rodríguez Rodríguez should have known better about this disease, including the fact that there is a strong genetic or familial contribution to the disease. In a collegial body, she was obliged legally, ethically and morally to inform the other judges about her knowledge of this disease.

Please be aware that the surgical witness who testified that low calcium caused loss of memory to the patient could not provide scientific evidence to sustain his testimony, because his testimony is false, there is no such evidence. For that reason he had to settle with me for a confidential amount of money.

Then how in the world the judges could be so innocent as to believe and accept a scientific lie leading to sentence that I caused a dementia to the patient. Theirs

was not an opinion, the sentence applies only to me, confirming that the sentence was with the intention to punish me, not to make justice.

For the above, I respectfully request that case be expedite providing me with a day in court, so that we can start the discovery of evidence and depositions phase.

Respectfully submitted,

Enrique Vázquez Quintana, MD
Pro Se

Copy of this motion to be sent to:

Mr. Juan Carlos Ramírez Ortiz, Esq.

Mr. José Alberto Morales Boscio, Esq.

January 16, 2020

IN THE UNITED STATES DISTRIC COURT
FOR THE DISTRICT OF PUERTO RICO

RECEIVED & FILED
MAR -9  AM 9: 37
CLERK'S OFFICE
S.DISTRICT COURT
SAN JUAN PR

Enrique Vázquez Quintana, MD
Plaintiff  Pro Se
          V

Hon Judge Liana Fiol Matta
Hon. Anabelle Rodríguez Rodríguez
Hon. Maite D. Oronoz Rodríguez
Hon. Eric V. Kolthoff Caraballo
Hon. Roberto Feliberti Cintrón
Hon. José A. Morales Rodríguez
Hon. Gloria M. Soto Burgos
Defendants

Hon. Judge Jay Garcia Gregory
Federal District Court
San Juan, PR

Case # 3:19-cv-01491-JAG

Motion for Disqualification of Hon. Jay García Gregory

Now comes Pro Se litigant Dr. Enrique Vázquez Quintana and respectfully requests
the disqualification of the Hon. Judge Jay García Gregory from the above case. His
impartiality is reasonably questioned by the following:

1. He received a motion for dismissal of the case on October 10, 2019 from Esq.
José A. Morales Boscio and even before I received notification by regular mail the
Hon. Jay García Gregory dismissed the case with prejudice against me.

2. His notice of dismissal consist of a single sheet of paper without any comments
stating the legal reasons for such dismissal. Judges in Puerto Rico has a conditioned
immunity (Feliciano Rosado v Matos Jr.)  And in the US we have Pulliam v Allen  in
which a judge was sued and he had to pay at least the lawyer fees.  Even in the US

judges have no immunity in cases of declaratory judgment. When a court makes a decision without providing the process of appeal, judges lose their immunity.

3. What I am soliciting is the annulation of the Sentence emitted by the Supreme court of Puerto Rico that is absurd, an aberration of justice that violates my civil rights under Section 1983, not giving due process (Amendment 14 of the US Constitution), by not giving equal protection under the law and imposing a severe punishment violating Article 8 of the US Constitution. The annulation of this sentence restitutes the honor, prestige and confidence to the Supreme Court of PR, the highest court in the colony of PR. This is very generous and benevolent from my part. I do not want to cause damage to the judges but their sentence is the result of a crass judicial mistake. They changed a scientific lie into a judicial truth through a crass judicial mistake and that sentence should be eliminated from the records of the Hon. Supreme Court of Puerto Rico. That sentence destroyed all the prestige and recognition that I had accumulated in all my life as a surgeon and academic for my entire professional life; that I cannot tolerate. That is why I was obligated to place the complaint against the seven judges of our local judicial system.

It is preposterous to dismiss the case in a single sheet of paper without analyzing this case in more depth and intensity. Dismissal is the easiest way to erase me from the court without thinking in the importance and transcendence of this case.

The Sentence of the Supreme Court is contrary to the scientific knowledge at the time and presently. Their decision was based in discrimination, prejudice and with the intention of causing me harm. It seems that you have not read my allegations.

4. The Hon. Judge Jay García Gregory knows the judges of our local judiciary system and it is human nature the desire to protect that group that constitutes a brotherhood. (cofradía)

5. In the complaint I presented in the federal court against Dr. Stephen A. Falk, the Hon. Judge Jay García Gregory dismissed the case with prejudice against me stating that I had nothing to look under Article 1802. In reality, that article applies to all mischievousness a human being can cause against another human being.  The article does not apply only to medico-legal cases.

6. We appealed that decision to the First Circuit of Boston and they compelled us to reach an agreement. A settlement for a confidential amount was reached with the Hon. Judge Charles Cordero in the federal court in San Juan.

For the above reasons I request the disqualification of the Hon. Judge Jay García Gregory in this case, and that a judge from the United States be assigned for the continuation of this complaint.

Respectfully submitted,

*Enrique Vázquez Quintana M. D.*

Enrique Vázquez Quintana, MD

Copy of this motion was sent by regular mail to:

Hon. Dennise N. Longo Quiñones Secretary of Justice

Mr. José A. Morales Boscio, Esq.

Mr. Juan C. Ramírez Ortiz, Esq.

October 11, 2019

RECEIVED & FILED

IN THE UNITED STATES DISTRIC COURT MAR -9   AM 9: 33
FOR THE DISTRICT OF PUERTO RICO CLERK'S OFFICE
S. DISTRICT COURT
SAN JUAN, P.R.

Enrique Vázquez Quintana, MD
Plaintiff  Pro Se
　　　　V

Hon Judge Liana Fiol Matta
Hon. Anabelle Rodríguez Rodríguez
Hon. Maite D. Oronoz Rodríguez
Hon. Eric V. Kolthoff Caraballo
Hon. Roberto Feliberti Cintrón
Hon. José A. Morales Rodríguez
Hon. Gloria M. Soto Burgos
Defendants

Hon. Judge Jay Garcia Gregory
Federal District Court
San Juan, PR

## Case # 3:19-cv-1491-JAG

## Opposition to Motion of Stay

Now comes Dr. Enrique Vázquez Quintana, Pro Se, respectfully states his opposition to the Motion of Stay proposed by the lawyers of the seven defendant honorable judges of the judiciary system of Puerto Rico and respectfully alleges and prays as follows:

### MALFEASANCE BY THREE COURTS OF JUSTICE

It is my aim to present direct scientific evidence, with the assistance of medical experts and the appropriate documentation as well as circumstantial and/or indirect evidence to confirm that the sentence issued on December 18, 2015, by the Puerto Rico Supreme Court is absurd and denies all existing scientific knowledge.  It will become clear that actions taken, or opinions expressed by the judges of Puerto Rico's three courts of justice were intended to cause personal harm to me as defendant in the case of Isabel Montañez Ortiz v Enrique Vázquez

1

Quintana. By direct evidence based on scientific data and statements by a respected neurologist expert in dementias, as well as by circumstantial evidence - Rule 110 H, Colón González v K- Mart 2001 TSPR 95 and Bacó v Almacén Rosa Delgado 2000 TSPR 111 – I will demonstrate that the decisions of the three judicial courts were not based on justice: they were retaliatory actions for having had the audacity to bring suit and prevail against an attorney who had filed a frivolous lawsuit against the defendant.

## COURT OF FIRST INSTANCE (CFI)

1. SC p135: The CFI claims that hypocalcemia produces mental disorders such as confusion and memory problems. This asseveration is false.
2. SC p147: A footnote cites that I declared that during surgery the pathologist cannot determine if the parathyroid gland has hyperplasia or not. This is entirely false.
3. SC p148, k: Affirms that once Dr. Vázquez extracted the inferior parathyroid gland, he proceeded to remove a fragment of the thymus at the cervical area. In the revision of the pathology, not during the surgical procedure, a supposedly tiny fragment of the right parathyroid gland was identified. The thymus segment was removed since on occasion the parathyroid adenoma is found in the thymus. No permission is needed for this procedure. The surgeon has ample professional discretion in the treatment of a patient and does not overreach the boundaries of propriety if the treatment is within reasonable limits; in this case, to arrive at the correct diagnosis and the location of the pathology responsible for the illness.
4. SC p156, e1: The CFI Judge affirmed: "With respect to this point, Dr. Falk declared – gave a truthful testimony – that there is consensus in the medical community that low blood calcium levels (hypocalcemia) usually cause memory problems in patients such as the ones that Mrs. Isabel presents." This is totally false; an incorrect interpretation of Dr. Falk's testimony, which was untruthful. Dr. Falk lied. The case of Pueblo de PR vs Luciano Arroyo applies to our own. In his sentence, Judge Raúl Serrano Geyls affirmed: "We judges cannot be so innocent as to believe declarations that no one else would believe." Also, there is no such consensus in the medical community

2

as to low calcium levels causing memory loss. This last statement was added by the CFI judge.

5. SC p156: In the footnote, the judge twisted the truth by partially citing the declarations of my expert witness, Dr. Carlos Isales, when she pronounced that "patients with acute hypocalcemia may present memory problems such as those manifested by Mrs. Isabel in the postsurgical stage." The CFI judge failed to cite the entire text of Dr. Isales' testimony, in which he declared that "memory loss is temporary; calcium and vitamin D are administered, the patient returns to normal and no patient goes on to suffer from dementia."

6. SC p157: In the early stage of this action, the court states that "for her memory problems Mrs. Isabel was prescribed Aricept, also used in the treatment of the neurological disease known as Alzheimer. However, at the trial no evidence was presented to the effect that Mrs. Isabel has been diagnosed with said condition." This statement is incorrect. Aricept is a medication prescribed exclusively for the treatment of Alzheimer.

7. SC p157: The footnote indicates that this court, the CFI, concluded that Mrs. Isabel was found to be oriented in time, space and location. The CFI judge has no medical knowledge to make this asseveration. Aside from lacking the medical knowledge, this statement is prejudiced and discriminatory against the defendant.

8. SC p158, K: Reads: "Specifically the defendant established that Mrs. Isabel takes daily doses of Synthroid (hypothyroidism), Calcitriol (hypocalcemia), and Aricept (memory problems). Her memory loss was due to Alzheimer. Mrs. Isabel's husband testified that his wife was forgetful, unable to recognize her grandchildren, almost burnt down the house, forgot her church hymns, and that sexual intimacy between them had diminished to less than once a month. He testified that he took her to a treatment center in Levittown where they diagnosed her as suffering Alzheimer's disease and was placed on Aricept and Namenda, both medications used exclusively on Alzheimer patients.

9. SC p162, G: Reads "that Dr. Vázquez Quintana had the obligation to preserve the blood flow to the left parathyroid and he did not do so." No one could have preserved that gland since it was inside the thyroid lobe and could not be seen. This had nothing to do with the lobe's artery." P162, L reads: "if he

3

understood that he was unable to adequately treat the patient, Dr. Vázquez was required to consult the case with an endocrinologist, and he failed to do so." This statement is completely cynical, humiliating, unprofessional and uttered with the intent to harm me. During the trial (as described in my curriculum vitae) my vast experience in thyroid and parathyroid surgery was shown to be the most extensive among the island's surgeons.

10. SC p163: As to the number of malpractice cases on my record, Dr. Iguina included the name of the patient and his wife, another during my tenure as Health Secretary and a third case that I did not remember. He characterized me as absent-minded and a liar. The CFI judge allowed the lawyer's characterization of the defendant, again, in order to undermine my credibility. I answered that there had been six cases because that was the baseline number of cases for Triple-S to remove my name as a provider on January 2002. Dr. Iguina, however, did not mention that I prevailed in every lawsuit while I was insured by Triple-S and that I defended Triple-S' money as if it had been my own.

11. SCp176: In the first paragraph, the CFI judge, referring to Dr. Falk's testimony, indicates "above all for his truthful declaration merited the confidence of this court." The First Instance judge Gloria M. Soto Burgos due to her incapacity and lack of medical knowledge, accepted Dr. Falk's lie as truth.

12. SC p177: Article 3 indicates that the left inferior parathyroid gland, which was normal, had been removed. The gland could not have been observed during the operation since it was inside the left lobe of the thyroid, as reported in the pathology revision. There was no way to preserve that gland.

13. SC p179: Item 3 states that "the surgeon failed to order analyses or studies directed at discarding or confirming the MEN 2A diagnosis. In fact, those studies had already been performed by Dr. Julio César López, the endocrinologist who referred the patient to me.

14. SC p180: The second paragraph states that Dr. Vázquez removed the inferior right parathyroid gland in a deliberate manner and with full conscience of his act. This is totally false. In the surgical operative report, I describe that the inferior parathyroid glands were not identified. According to my best impression, I had removed the two superior parathyroid glands.

4

15. SC p183:  The first paragraph states: "In consideration of this evidence, it is inevitable to conclude that Dr. Vázquez did not remove the left inferior parathyroid gland inadvertently as he alleged in court."  I repeat: the gland was inside the left thyroid lobe and there was no human way possible to preserve it.

16. SC p184: In the second paragraph, the judge reiterates: "this court placed much weight on Dr. Falk's testimony, which deserved our utmost credibility." This witness admitted upon questioning by my lawyer that he had no scientific evidence to sustain his testimony that hypocalcemia caused loss of memory to the patient. That is so because there is no evidence in the medical literature to sustain his testimony. According to the American Alzheimer Research Foundation there is no causal relationship between hypocalcemia and Alzheimer's disease. Eventually, Dr. Stephen A. Falk, their witness, entered into a confidential economic settlement with me.

17. The CFI permitted herself to be impressed and deceived by a false declaration offered by an expert who is a paid witness. It is correct to say that hypocalcemia is an inherent risk of thyroid and parathyroid surgeries; it occurs in 3% to 5% of all cases, no matter the surgeon's level of experience.

18. SC p185:  Item 3 states  "hypocalcemia is the cause of mental disorders such as confusion and memory problems." This statement is false: hypocalcemia does not produce memory loss; this is confirmed by the medical literature.

19. SC p186: At the end of the second paragraph it is stated "Mrs. Isabel showed to the complete satisfaction of this court that she was oriented in time, space and location. Luckily for judicial idealism, Mr. Hermenegildo was able to supply many, if not all, of the answers to the questions that his wife, due to memory problems, could not offer." I am baffled by the knowledge of neurology of the Lower Court judge.  These statements are prejudiced and improper. It is unheard of for a court to permit the husband of a patient to supply answers to questions that she could not answer due to her memory loss.

20. SC p88: The plaintiffs' ties with family and friends have been affected,  Mrs. Isabel is irritated by the presence of her grandchildren, they cannot go to church, she was about to burn down the house, the frequency of the couple's sexual intimacy has decreased to less than once a month. These situations

5

are not due to low calcium levels but rather to Mrs. Isabel Montañez Alzheimer's disease and are certainly not a consequence of the surgery that I performed upon her.

21. SC pp195-96: The CFI judge Gloria M. Soto Burgos accepted as true the opinion of both plaintiff lawyers who indicated that Dr. Vázquez Quintana was not equipped to make an evaluation of Mrs. Isabel's mental capacity since he was completely biased and, no less important, he is not a specialist in the fields of neurology or psychiatry. This is totally false. The most knowledgeable about dementias and Alzheimer's during the trial was me, since my wife had suffered the disease for 11 years and I was the author of a book on the subject. No neurologist or psychiatrist has written a book about Alzheimer in Puerto Rico. The CFI judge made medical statements by indicating that the patient was oriented in time, space and location. In addition, she accepted the testimony of Dr. Falk, who is neither neurologist nor psychiatrist and who was there to testify as to the adequacy of the surgery and surgical technique. Also, his testimony that low calcium had caused loss of memory to the patient was based on a superficial interview in the lobby of his hotel, with the claimant's counsel as translator, without having read the lab results and without examining the patient. The actions of the CFI judge demonstrate bias and prejudice with intent to cause harm to me as defendant.

22. SC p197: The CFI concludes that the defendant did not make a reasonable effort to obtain Mrs. Isabel's medical records from the Levittown Treated and Diagnosis Center (TDC). This was the job of Attorney Jorge J. López López. On this point there is cause for confusion since Mrs. Isabel did not receive treatment at the public Levittown TDC but at the Levittown Medical Services Community Center, a private health center. It was the responsibility of the plaintiff to enter the correct name of the health center where the patient was being treated. In this sense we were surprised by new evidence which did not permit us to retain the services of a neurologist for the defense.

23. SC p198: Attorney López López, not the defendant, was responsible for presenting the medical malpractice insurance policy.

24. SC p199: The CFI judge imposed a fine of $284,000 and $2,000 for lawyer fees for the 10 years it took for the case to reach the CFI. This delay was due

6

to the inefficiency of the country's judicial system and was not my fault. Therefore, the fine is unfair, and it does not fall on me to pay it.

25. In her final sentence Judge Gloria M. Soto Burgos does not even mention the testimony of the endocrinologist, my expert witness, Dr. Carlos Isales who testified that an acute drop in calcium can cause disorientation and a temporary loss of memory. The correction of the calcium levels in the blood by giving calcium and Vitamin D corrects the symptoms of hypocalcemia and none of these patients go on to suffer dementias, much less Alzheimer's disease. That is the correct scientific knowledge at the time and presently. This action denotes prejudice from the part of Judge Gloria M. Soto Burgos.

All the actions of the CFI were meant to hurt the defendant, Dr. Enrique Vázquez Quintana.  The court's decision was based on prejudice, discrimination and the acceptance of unfounded testimonies meant to inflict harm on the defendant.

## APPELATE COURT (AC)

1. SC p5, i: States that hypocalcemia causes mental disturbances such as confusion and memory problems. This asseveration is false since there is no evidence in the medical literature to sustain that low calcium is responsible for mental disturbances such as confusion and memory loss.

2. The first 30 pages of the AC decision are an exact and faithful copy of the description given by the CFI. This denotes that the AC's analysis and evaluation of the case warrant no credibility.

3. SC p8, d:  States that Dr. Vázquez Quintana informed Mrs. Isabel "that she had to undergo surgery because she could develop cancer if she did not." This statement is false; it is an erroneous interpretation.  I never warned Mrs. Isabel of any such thing.

4. SC p15, J: States that "Dr. Vazquez identified the inferior right parathyroid gland and having identified it proceeded to attempt to remove it."  This interpretation is incorrect. When a specimen is sent for analysis by frozen section it is labeled with the name of that which the surgeon suspects and is sent in for confirmation. The circulating nurse labeled the specimen as parathyroid tissue; however, the pathologist informed the result as negative for parathyroid tissue in the frozen section analysis. I was unable to identify

7

the inferior parathyroid glands during the surgery, which I indicated in the surgical report.

5. SC p16, K:  Reads: "there was no clinical indication whatsoever to justify the removal of a piece of the thymus in Mrs. Isabel's cervical region." This denotes the lack of medical knowledge of the AC, since the parathyroid can be found at times inside the thymus that has been removed.  Also, the court allows the surgeon ample discretion in order to identify a pathology during the surgical procedure.

6. SC p17, 3:  Indicates that Dr. Vázquez removed the left inferior parathyroid gland, which was found to be normal. This statement is incorrect since I had previously explained that the gland was found inside the left thyroid lobe, which could not be observed and, therefore, was humanly impossible to preserve.

7. SC p23, e:  Indicates: "after the operation to which she was subjected, Mrs. Isabel began to suffer and presently suffers from mental problems in the form of memory loss and occasional disorientation." This asseveration is false and has nothing to do which calcium levels but rather with the Alzheimer's disease suffered by Mrs. Isabel.  In p23, I:  the AC again sustains that "Dr. Falk declared – in a truthful testimony – that there is consensus in the medical community that low calcium levels (hypocalcemia) ordinarily cause memory problems in patients such as those presented by Mrs. Isabel Montañez.  This statement is totally false and is at odds with the scientific knowledge available that year and at present.  No one knows the cause of dementias, but it is unanimously agreed that they are unrelated to low calcium.

8. SC p25, I: States that Mrs. Isabel is unable to fulfill various tasks she was once able to perform. This statement could be true; however, these limitations are due to her Alzheimer's disease and have nothing to do with her surgery.

9. SC p29, g:  Indicates that Dr. Vázquez "had the obligation to preserve the blood flow to the left parathyroid and he did not.  This is a cut and paste copy of the description by the CFI which I addressed earlier. P29, I is also a copy of a CFI statement and I have also refuted this claim.

10. SC p36:  The last paragraph reads: "While evaluating a medical doctor we must remember that these and other health professionals are allowed ample

8

professional discretion in their work." This same argument supports the principle that allowed me to identify and attempt to remove what could have most probably been the cause of the hypercalcemia, including removal of a segment of the thymus. This does not require special permission from the patient who is under anesthesia.

11. SC p37:  The last paragraph indicates: "the doctor does not incur in civil responsibility if the treatment given to his patient, even when erroneous, is contained within the limits of that which is reasonable and accepted by an ample sector of the medical profession."  Even when the AC is conscious of this, it decides to ratify a CFI decision that is incorrect for being counter to the scientific knowledge of the time.   The Appellate Court abused its discretion.

12. SC p40: The last paragraph reads: "Additionally, it is the established norm in this jurisdiction that the AC will not intervene with the appreciation of the evidence made by a CFI, in the absence of passion, prejudice, partiality or manifest error."  The AC makes a mistake by not identifying the gross error incurred by the CFI when it accepted as truthful a testimony that is not supported by scientific evidence. The dogma established by the former PR Supreme Court Judge Raúl Serrano Geyls, in Pueblo v Luciano Arroyo again applies here: "We judges cannot be so innocent as to believe declarations that no one else would believe." The AC has the obligation to fully revise the decisions of the CFI and to conduct oral hearings, such as established in Ramos Milano v Walmart (168 DPR 112, 123, 2006), Méndez v Morales (142 DPR 26, 36, 1996) and Cárdenas Maxán v Rodríguez Rodríguez (12 DPR 702, 712, 1990).

13. SC pp41-42: In 4 instances where it should read hypocalcemia, the text reads the opposite or hypercalcemia. This mistake alters the meaning of the sentence.  It is unpardonable that three AC judges would not be sufficiently careful and diligent as to review a document which they signed. It is inexcusable.

14. SC p45: The first paragraph reads: "We resolve that there was a causal nexus between the procedure performed on Mrs. Montañez Quintana and the health conditions that she has since then developed."  This asseveration is incorrect since there is no causal relation between low calcium and the

dementia suffered by Mrs. Isabel. Furthermore, it makes the crass mistake of incorrectly citing the patient's name: it should read Isabel Montañez Ortiz. The AC judges created a hybrid or a chimera between the patient and her surgeon. This is another mistake that shows the carelessness and lack of diligence in failing to evaluate and cite an error in a court document, even if that document is a CFI decision.

15. SC p45: The last paragraph indicates: "The CFI's sentence stated for the record that Mrs. Montañez Ortiz had at all times shown to be able to participate and understand the proceedings." Again, the CFI judge decided to practice medicine by writing a prejudiced opinion while lacking knowledge of this subject.

16. SC p48: The second paragraph indicates, and the AC accepts: "Therefore, during ten (10) years the defendant forced the plaintiff to immerse herself in an arid and protracted litigation." This asseveration wreaks of a very peculiar cynicism. The case was finally heard by the San Juan CFI after a ridiculous amount of time and this was exclusively the fault of the inefficient judicial system of this country. I had no part in the fact that after being assigned to six different judges one after the other, the case did not proceed until 10 years later.

17. SC p51: In the first paragraph the AC indicates that the CFI did not abuse its discretion by imposing a fine for temerity on the defendant. The AC abused its authority by ratifying the $284,000 fine. And the AC again abused its authority by imposing an added fine of $6,000 for presenting, according to them, a frivolous appeal before this court. This demonstrates a faulty work ethic and a diminished ability to perform the function for which the AC was created.

18. SC p56: The first paragraph includes a phrase that constitutes a serious bias: "It befalls on us to make use of our faculty to economically sanction one of the parts with the purpose of asserting our legal system, which is devoted to the highest values of justice and equity." This is a cynic expression and demonstrate that the supposed judicial immunity promotes the abuse by the judges of honest citizens who turn to the court in search of justice.

The AC has shown to be prejudiced and to have discriminated against the appellant, Dr. Vázquez Quintana, who approached the court in search of the justice that he

10

did not receive from the San Juan CFI. The actions of the AC were meant to inflict harm on the appellant; its decision was based on multiple unjustifiable and unpardonable mistakes.

## SUPREME COURT (SC)

1. P3: The first paragraph states that I told Mrs. Montañez that she could suffer cancer if she did not submit to the surgery. This is the patient's misinterpretation of our conversation and that the judge accepted as true. I never said this to the patient.

2. P3: At the end of the page it is stated that the court accepted that the defendant had performed 631 parathyroid surgeries. That is the highest number of this type of surgery performed by any surgeon in Puerto Rico. However, in another part of the sentence the court states that if I was not apt to treat the patient, I should have referred her to an endocrinologist. The court cannot adopt these two opposing views without contradicting itself.

3. P4, A: It is stated at the middle of the page that the defendant removed the left inferior parathyroid glands as well as a segment of the right inferior parathyroid, neither of which presented enlargement. It is interesting to read that the judges knew that the glands were not enlarged. In other words, that non-medical professionals would be able to discern this fact when an experienced surgeon doing the operation does not have that luxury since they are not visible without some portion of the glands being removed. The left inferior gland was contained inside the left thyroid lobe and no one could have spared it; at the right inferior side of the gland as a small segment that could possibly belong to the parathyroid was removed. This was discovered when the pathology report was reviewed once the patient returned for the post-surgery follow-up with low calcium levels.

4. P5: The end of the second paragraph reads: "Mrs. Montañez continued to visit Dr. Vázquez Quintana, but the doctor was unable to normalize her calcium levels." This assertion is false and denotes the judges' lack of medical knowledge. On her follow-up visits to my office, the patient's calcium levels fluctuated between 7.7 and 8 mg/dl. These levels are enough to control the

11

symptom of tingling in a patient's hands and lips. However, the Alzheimer symptoms will not be controlled since these are not related to calcium levels. It is not necessary to increase these calcium levels. Mrs. Montañez's medical file from the Levittown Medical Services Community Center records her blood calcium at acceptable levels, but the symptoms of Alzheimer are present since they have absolutely nothing to do with calcium levels.

5. P6: The first paragraph states: "the patient on occasions has been admitted to the Medical Center's Endocrinology Clinic. This statement is false since patients are not admitted to the Clinics; they are seen at the Ambulatory Clinics. There, her calcium levels were raised to above normal, which is not indicated. Mrs. Montañez has never been admitted to the University Hospital, where patients who arrive at the Medical Center are admitted only if need be.

6. P7: The Triple-S Insurance lawyer of record was negligent for failing to document and present a copy of the insurance policy as stipulated in the pre-trial meeting in 2009. The defendant had authorized the lawyer in writing, at the lawyer's request, to obtain and present a copy of his policy.

7. P8: At the end of the page it is again stated that low calcium levels caused the patient to suffer memory loss, disorientation and depression. The statement is false: low calcium levels do not cause these symptoms. The symptoms are due to her Alzheimer's disease and have nothing to do with low calcium.

8. P9: The CFI imposed a fine on the defendant on grounds of temerity and the AC ratified the fine of $180,000 plus lawyers' fees in the amount of $2,000. Also, the AC imposed an additional fine of $6,000 for burdening this court with a frivolous appeal.

9. P 13 The plaintiffs failed to comply with their obligation to continually amend their answers and to notify the defendant about all additional information obtained after the discovery of evidence and related to the evidence, according to Rule 23.1 of Civil Procedure (Berrios Falcón v Torres Merced, 175 DPR 962, 971, 2009). The plaintiffs surprised the defendant on the first day of trial when Attorney Antonio Iguina brandished a document from the Levittown Medical Services Community Center, not from the Levittown TDC, instructing me to continue paying for the use of Namenda and Aricept for

12

It is astounding that the SC would endorse such a statement, in fact allowing the CFI's bias.

15. It is interesting that the Honorable Supreme Court states that "The Court of First Instance did not properly weigh the arguments presented by the defendant in the context of the probationary presumptions that are pertinent to an action for medical malpractice." The statement implies that the CFI judge was unfair in her evaluation of our defense but nevertheless did not proceed to correct this mistake.

16. The SC removed the CFI's fine for temerity as well as the fine imposed by the AC for supposedly filing an unjustified appeal to that court. I am grateful to this Honorable Court for this action.

17. P38: The SC finally concludes, as did the CFI and the AC: "considering all the evidence, the hypocalcemia that appeared after the parathyroid surgery was the proximal and efficient cause which most probably brought on Mrs. Montañez Ortiz's health conditions. This decision is totally wrong and against all scientific knowledge. In fact the Supreme Court of Puerto Rico— "Converted a scientific lie into a judicial truth thru a crass judicial mistake".

All three Puerto Rico courts of justice are mistaken. Suppose, for the sake of argument, that the surgery in question was not performed on the neck but, instead, the gall bladder was removed and 4 or 5 years later the patient developed Alzheimer's disease. Would the surgeon be responsible for the patient's dementia because it occurred after the gall bladder surgery? This is not possible and is not backed by science.

The sentence handed down by this Honorable Court affirms that I am the only surgeon in the world who has caused dementia on a patient in a thyroid and parathyroid surgery. This is a judicial aberration based on a crass error by the country's three courts of law. This decision is equivalent to malfeasance or prevarication as defined in the penal code of many developed countries around the world – among which the U.S. and its judicial systems rank 20th for transparency and judicial propriety.

I can only conclude that the actions taken by the three judicial courts of Puerto Rico in tandem, without the due corrections to the preceding courts' statements and

opinions, were meant to inflict harm on the defendant (Perhaps an exemplary punishment?) The actions taken by all three courts of Puerto Rico were designed to harm the defendant; therefore, I affirm that the Puerto Rico Department of Justice has been rendered invalid to represent the judges who acted with malice and knowingly caused me harm, personal suffering and public disdain solely for having dared to sue and prevail over an attorney who had earlier filed a frivolous case against me. The 104 Act nor the 9 Act can be used to defend the seven judges of the Puerto Rico Judiciary System for their aberrant and crass judicial mistake similar to prevarication in the Penal Code of Spain and other Latin American countries.   With direct and indirect evidence, I will prove that the action taken by the PR Supreme Court was not based on judicial principles but rather on prejudice, discrimination and a quest for vengeance. The prejudice emanated from the lower court and worked its way up to the Supreme Court. Among the Supreme Court judges the Hon. Judge Anabelle Rodríguez Rodríguez's mother sadly died of Alzheimer's disease. Especially in a collegial body she had the legal, moral and ethical duty to orient her colleagues on the Supreme Court concerning the known facts about the disease. She clearly did not do so and voted against me, sentencing that I was guilty of causing dementia on a patient, a judgment that is unheard of and grossly unfair. This type of disregard for the truth is the reason I am compelled to file this lawsuit.  The most obvious evidence for doing harm to me is the fact that the Supreme Court made a Sentence, not an opinion, no jurisprudence is created. No other physician surgeon will ever be accused of causing a dementia to a patient after an operation.

My lawsuit is against the seven judges in their personal capacity, they have to defend themselves, not by Department of Justices. The Puerto Rico Justice Department can offer legal representation in their personal capacities to government officers under Act No. 104 of June 25, 1955 only if their acts or omissions are according to law and committed in good faith.  That was not the behavior of the judges in the present case, for that reason Act 104 does not apply. The judges have to represent themselves and respond for their bad faith decisions.

In the present lawsuit, Title 111 of the Puerto Rico Oversight, Management and Economic Stability Act, (PROMESA) does not apply to this case. No law can override the American Constitution in a case of violation of civil rights. The action of the three local courts was with the intention of causing me harm by discrimination, by not giving me the equal protection of the law and due process, by violating the Art.

16

1802 of our legal system and by the imposition of a severe sentence in violation of Article 8 of the United States Constitution.

Wherefore, the Plaintiff Pro Se Dr. Enrique Vázquez Quintana, respectfully prays this Honorable Court to reject the Motion of Stay presented by Mr. Juan C. Ramírez-Ortiz, Squire to five of the defendant judges.

Respectfully submitted.
In San Juan, Puerto Rico on this 9 day of July, 2019.

Enrique Vázquez Quintana, MD

I hereby certify that on this same date, I personally filed the foregoing with the Clerk of the Court. I also sent notification by electronic mail to:
Mr. Juan C. Ramírez Ortiz—juramirez@justicia.pr.gov
Mr. José A. Morales Boscio—jose.morales@himapr.com

17

RECEIVED & FILED
MAR -9  AM 9: 32
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN P.R.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

Enrique Vázquez-Quintana, MD
Plaintiff, Pro-Se Litigant

v

Hon. Liana Fiol Matta
Hon. Anabelle Rodríguez Rodríguez
Hon Maite D. Oronoz Rodríguez
Hon. Erick V. Kolthoff Caraballo
Hon. Roberto Feliberti Cintrón
Hon. José Alberto Morales Rodríguez
Hon. Gloria M. Soto Burgos
Defendants

COMPLAINT AGAINST SEVEN JUDGES OF THE JUDICIARY SYSTEM OF PUERTO RICO

I. Partiality in the application of the law, discrimination, violation of my civil rights under Section 1983 of the Civil Rights Act, (28 USC Section 1983) violation of Article 1802 and an unjustified and excessive punishment violating Article 8 of the US Constitution.

II. The defendants are:

    Hon. Judge Liana Fiol Matta
    Hon. Judge Anabelle Rodríguez Rodríguez
    Hon. Judge Maite D. Oronoz Rodríguez
    Hon. Judge Eerick V. Kolhtoff Caraballo
    Hon. Judge Roberto Feliberti Cintrón
    Hon. José Alberto Morales Rodríguez
    Hon. Gloria M. Soto Burgos

The address of the ex-president of the Supreme Court Hon. Liana Fiol Matta is: Urb. San Ignacio, 10 San Roberto St., San Juan, P. R. 00927.  The address of the remaining four judges of the Supreme Court is: 8 Ponce de León Ave., San Juan, Puerto Rico 00901.

The address of the sixth judge who presided the panel of three judges from the Appellate Court, Hon. José Alberto Morales Rodríguez is: Carr. 123, Km 15.7, Corral Viejo, Esq. Jesús T. Piñero, Ponce, PR 00730

The last address of the seventh judge, Hon. Gloria M. Soto Burgos is: at Tribunal de San Juan, Hato Rey, PR or PO Box 40440, Minillas Station, San Juan, PR 00940

III. The allegation against all the defendants is that in a malpractice suit case they sentenced that low calcium (hypocalcemia) that resulted from a thyroid and parathyroid operation was the cause of a dementia in a 53-year-old patient. Hypocalcemia is an inherent complication of this type of operation-- it happens in 3% to 5% of the cases. I never denied or discarded that hypocalcemia resulted from the operation that I performed on this patient. However, to conclude as the judges did that the hypocalcemia caused a dementia in the patient is a fantastic leap in the dark or a leap of faith. The Superior Court judge merely considered the opinion of a non-expert in Neurology, the American witness Dr. Stephen A. Falk. The witness based his testimony on the information he gathered at a meeting held in the lobby of a hotel with the patient and the plaintiff lawyer as interpreter, without any knowledge of the calcium levels in the blood and without having reviewed the medical records of the patient. He presented no scientific evidence to sustain his testimony, simply because there is no such evidence in the medical literature. He violated the Daubert requirement motion of the anglosaxon legal system and Rule 702 of our Napoleonic legal system. He also violated the Requirements for an Expert Surgical Witness of the American College of Surgeons of which he is a member.

In her sentence, the Hon. Judge Gloria M. Soto Burgos did not even mention the testimony of my expert medical witness, Dr. Carlos Isales. Judge Soto Burgos was biased and discriminated in the selection of the testimony of the American witness and discarding the testimony of my medical witness who testified about what is the scientific truth. This is evidence of intentional harm caused against me in this case.

The sentence reached by the Supreme Court is absurd, not verifiable by available scientific data. The Courts are not supposed to make absurd decisions that cannot be corroborated.

2

The Superior Court dismissed the expert testimony of my witness, Dr. Carlos Isales, an endocrinologist who trained in Yale University and is an expert in hypocalcemia and who stated that there is no causal relationship between hypocalcemia and any of the dementias that affect humans. He testified that an acute drop in calcium can produce disorientation or a "temporary loss of memory", and that after correcting the calcium levels with the administration of calcium and Vitamin D, none of the patients go on to develop dementia. In fact, the American Surgeon General recommends that all females over 50 years of age should receive calcium and vitamin D to prevent osteoporosis. The three courts - Superior, Appellate and Supreme - converted a scientific lie into a judicial truth via a crass judicial error. None of them behaved as prudent and reasonable human beings would.

A crass judicial error is defined as "a decision based on total ignorance, a grave mistake that has no exculpation and at times would need monetary compensation for the damage done to the affected person." A crass judicial error is equivalent to prevarication utilized in the Judicial Code of Spain and other Latin American countries. It is a mistake punishable with fines, the separation of the position of judge and even incarceration.

The sentence made by the Supreme Court is biased and based on discrimination and partiality against me.  Their decision is contrary to all scientific knowledge, since no one knows the causes of the dementias. The sentence emitted by the Supreme Court against me is another evidence of the intention to cause me damage.  I am the surgeon who has performed the highest number of thyroid and parathyroid operations in Puerto Rico and none of my cases have resulted in a dementia. The courts have created an unnecessary judicial controversy with the academic world.

The world literature about hypocalcemia and dementias was reviewed by three professors--Dr. María Collazo, librarian at the Library of the Medical School of the University of Puerto Rico; Dr. Heriberto Acosta, neurologist, and Dr. William Méndez Latalladi, Program Director of the Surgical Residency Program at the Department of Surgery of the UPR School of Medicine.  None of the three searches yielded a relationship between hypocalcemia and the dementias that affect humans.

3

The patient showed symptoms of Alzheimer's disease four years after the operation. Scientific studies confirm that Alzheimer's disease has been present in these patients from 5 to 30 years before the first symptoms are detected by the relatives. Accordingly, the patient in this case had Alzheimer's at the time of surgery. The American Alzheimer Research Foundation states that there is no causal relationship between hypocalcemia and the dementias that affect humans. The courts in Puerto Rico, particularly the Supreme Court, cannot pretend to know more than the scientists, physicians and the neurologists who are the true experts on this disease.

In Pueblo v Luciano Arroyo (83 D.P.R. 573 1961) former judge Raúl Serrano Geyls stated: "It is our reiterated norm to respect and accept the appreciation that the lower or instance judges make of the proof presented to them. We have only altered those judgments in cases of obvious error in fulfilling such function, when a thorough exam of all the proof convinces us that the judge unjustifiably discarded important probatory elements or based his criteria only on low value testimonies or inherently improbable or incredible. (Pueblo v Aponte. 77D.P.R., 917, 918, 1955) (Pueblo v Amadeo, 82 D.P.R. 102, 122, 122 1961). That is precisely what the Instance Judge Hon. Gloria M. Soto Burgos and subsequently the Apellate Court and the Supreme Court did when they ratified the testimony of Dr. Stephen A. Falk who testified falsely that low calcium causes loss of memory. The three courts discarded the testimony of my witness, the endocrinologist Dr. Carlos Isales, who truthfully testified that low calcium can cause a disorientation or "temporary loss of memory", but that those symptoms disappear by giving calcium and vitamin D and none of these patients go on to develop dementias, much less Alzheimer's disease. The three courts accepted a scientific lie and converted it into a judicial truth. The statement made by Former Judge Raúl Serrano Geyls can be perfectly applied to the present case: "Judges are not expected to innocently believe what a regular bystander citizen would not believe. It is as simple as that." Judges are educated professionals and should have at least some basic medical knowledge; if not, they are obligated to find it in order to reach the truth. This is the third instance of intentional damage toward me starting with the Lower Court.

The genetic factor is very important in Alzheimer's disease. The Supreme Court has nine judges. By simple statistical knowledge, one in five families has a relative with Alzheimer's and, therefore, statistically one or two of the judges has had or presently has a relative with the disease. I know that this was the case in the

4

Supreme Court. The judge with a relative affected by the disease would be more knowledgeable than the others and in a collegial forum it behooves her morally, ethically and legally to educate the other judges. I know that at least one of the judges had a relative who died from Alzheimer's disease. The Hon. Liana Fiol Matta, President of the Supreme Court, is married to Dr. Hamid Galib, National Poet and President of the Ateneo of Puerto Rico. She has a consultant at home.  She could have asked him if low calcium causes dementias. His answer would have been that there is no such association. Those two votes against me are the most extreme evidence that their decision was made with the intent to harm me. Surprisingly, both judges and three others voted against me in a Sentence, not an Opinion. What could be the explanation for such bizarre behavior, other than to chastise and punish me because I prevailed in a lawsuit against a lawyer who presented a frivolous case against me? That lawyer hid exculpatory evidence in my favor and lied to the judge on three occasions.  The Sentence of the Supreme Court in the patient with low calcium was tailored specifically for me-- I was framed in the case; again, intentional harm was done to me as defendant.

During the trial, Judge Gloria M. Soto Burgos also practiced medicine on at least two occasions. After she reviewed her notes, she returned to the bench and certified for the record that the patient was oriented in time and space. This comment is impertinent, impudent in trying to favor the plaintiff in the case. This is another evidence of prejudice with the intention of causing me harm.  Her final decision was that the hypocalcemia was responsible for the dementia in this patient.  This reveals a severe mental confusion and contradiction in the thinking of this judge. During the trial, in another occasion, she interpreted a physician's note and concluded that the patient was not suffering from Alzheimer's disease. The note dated February 7, 2005, reads: "the patient has symptoms of dementia and the calcium and phosphorus levels were adequate." The medical knowledge of Judge Gloria M. Soto Burgos is impressive.   Additionally, when I instructed my lawyer not to interrogate the patient, the patient's lawyer jumped from her seat and said: "Dr. Vázquez Quintana knows nothing about Alzheimer's disease, he is not a neurologist" and the other lawyer confirmed "nor a psychiatrist", and added: "I have known this patient for over ten years and she remains the same as when I met her".  She conveniently accepted the testimony of an otolaryngologist who is not an expert in Alzheimer's disease but has dubious knowledge about the disease. In yet another instance, the plaintiff lawyer asked me if I was losing my mind.  This line of questioning is improper, offensive and violates several rules of the Code of

5

Ethics of Lawyers on how to interrogate a defendant in court.  Among all those present in the courtroom, I was the one with more knowledge about Alzheimer's. My wife suffered the disease for eleven (11) years and I wrote a book entitled **Who Are You?** about how the affected family should deal with the patient and her or his relatives. We have just finished filming a movie of the same title.  It seems that in this case there were more judges and lawyers practicing medicine without license than judges searching for the truth to correctly adjudicate justice.

Judge Gloria M. Soto Burgos applied an excessive use of her power, reaching a mistaken decision and discriminating not only against me as defendant, but against all society that is affected by her decision.  From there on, the Appellate Court, in a document plagued by errors, such that at least in three occasions confused hypocalcemia for hypercalcemia and changed the name of the patient (Isabel Montañez Ortiz for Isabel Montañez Quintana) - producing a hybrid or chimera between the last name of the patient and mine, and perpetuating the original mistake arising from the Lower Court. The panel of judges from the Appellate Court were careless and non-vigilant when they signed their decision. Their decision is not an error, but an aberrant oversight.

The judicial responsibility is to establish the truth in any dispute. A well-known Spanish author stated that "more interesting to the reader of newspapers than a crime is a judicial error. The rehabilitation of an innocent consumes all sensibilities."

In Puerto Rico, Rule 43.2, as well as Colón v Lotería de Puerto Rico (167D.P.R.625, 2006), clearly states that a mistake made at a lower court does not exclude the ministerial function of the Appellate Court to review the case and evaluate the expert evidence and documents presented in the lower court. The Appellate Court is free to adopt their own criteria to analyze the arguments so that it is comparable to the Lower Court evaluation.   Both the Appellate and Supreme Court are empowered to conduct Oral Hearings to listen to arguments from both sides or citing experts to orient and educate them about matters they do not know.  Very rarely these courts conduct such oral hearings.

A crass judicial error is equivalent to a failure of justice and leaves the affected part without an acceptable alternative.

6

The Supreme Court added several errors of their own, such as stating that the patient resulted with a dementia that is not Alzheimer's. How can the Supreme Court have such finesse in a diagnosis that is complex even for the medical experts? It implies that they are knowledgeable about all different types of dementias. Again, the five judges from the Supreme Court who determined the sentence were practicing medicine.

During my testimony, the plaintiff lawyer asked me if I had presented a lawsuit against a lawyer. My lawyer did not object so my answer was in the affirmative. I stated: Not only did I present a lawsuit against a lawyer, but I prevailed and submitted a Claim to the Ethics Committee of the Supreme Court. The lawyer was separated Per Curiam for an indefinite period. This question, totally unrelated to the trial, had the effect of antagonizing the judge against me, and in that respect the plaintiff lawyer was successful. From there on, the Honorable Judge Gloria M. Soto Burgos comments and decision were with the intention of harming me.

It is widely known that Congress and President Obama assigned millions of dollars in the year 2010 to study the cause of Alzheimer's disease and produce effective medication for its treatment; the year 2025 is the target date for this accomplishment. In 2013 Congress again assigned additional millions to design a brain map to study Parkinson's disease, Alzheimer's disease, amyotrophic lateral sclerosis (Lou Gehrig disease), multiple sclerosis, autism and epilepsy. The cause of all these six diseases of the brain is yet unknown and, consequently, existing treatments are ineffective. It appears that the judges are again practicing medicine without a license as they did in the 1980s when they decided that all patients undergoing surgery must be treated with antibiotics. This decision was eventually revoked by the Hon. Judge Antonio Negrón García in a later case where the judge concluded that the previous dictum is revoked since physicians are the only ones who must determine when to use antibiotics.

But the present case will never replicate itself. It will not happen again since the Supreme Court Sentence is biased and against all scientific knowledge and made specifically to affect me.

In Supreme Court case CC-2012-0982, the Supreme Court of Puerto Rico violated my civil rights by denying me equal protection under the law by discriminating and refusing to evaluate my expert medical witness testimony. The Supreme Court

decision was a sentence, not an opinion. Why they made a sentence and not an opinion? Sentences are not published in Lex Juris, and they do not establish jurisprudence. The courts opt for sentences when they are uncertain of their knowledge in the matter being questioned or, it can be inferred, when they decide to punish the defendant in the previous lawsuit. Lawyers do not easily accept that they are fallible and can be subjected to lawsuits in cases of legal malpractice. No one is above the law, not even judges. By making a sentence leaving me without the opportunity for appeal is another evidence of their intent to harm me.

The operation on this patient was performed on June 26, 2000; she developed hypocalcemia. She and her husband filed a lawsuit against me in 2001 because of the hypocalcemia; curiously, six siblings were not included in the lawsuit. Did they perhaps know better and understood that the operation had nothing to do with the dementia affecting their mother? Ten years passed for the case to reach the Superior Court in 2011; six judges intervened in the case without taking a definite action. This is an obvious evidence of our island's inefficient judicial system.

During the trial, we were surprised by the testimony of her husband that the patient was suffering Alzheimer's disease. The lawsuit was not amended but Judge Gloria M. Soto Burgos accepted to hear the case without amending the suit, from hypocalcemia to dementia, again a giant step against me, evidence of prejudice and of use of excessive power. The discovery of evidence was at fault. The defendant lawyers hid evidence that demonstrated that the patient was suffering from Alzheimer's disease and stated that she was being treated at the CDT of Levittown (Diagnostic and Treatment Center). This was incorrect; she was treated at the Centro de Servicios Médicos de Levittown, a private center and was receiving Aricept and Namenda, medications prescribed exclusively for Alzheimer's disease. We did not know she was suffering from Alzheimer's disease. That was why we did not include a neurologist as part of our defense. The case ended on December 18, 2015, a total of 15 years since it was filed.

Following the suggestion of a prestigious lawyer, I asked Dr. Heriberto Acosta, prominent neurologist and the maximum authority in Puerto Rico on Alzheimer's disease, to evaluate the Supreme Court decision pointing out the medical mistakes. The resulting document titled: "In the Aid of the Supreme Court", was delivered to each of the Supreme Court judges with eleven medical references and letters from two (2) neurologists, two (2) psychiatrists, two (2) surgeons and one (1)

8

endocrinologist, all of whom stated that there was no causal association between low calcium and the dementias. The Supreme Court judges ignored the document and proceeded to dictate their sentence.

Judges have absolute autonomy and independence when dealing with and making decisions that affect the executive and legislative branches, since judges are not elected by direct vote. Judges are nominated by the executive with the consent of the Senate. This prevents the executive and legislative branches from meddling with judicial decisions when a suit is filed against the government or any of its agencies. The three branches of government serve to block the president or the governor from becoming a dictator. Judicial autonomy is vital to guarantee the liberty of a state. However, if judges are allowed total immunity in dealing with the common citizen who appears before their courts expecting justice, potentially we might end up with a judicial dictatorship as detrimental as any other form of dictatorship.

Most recently, with the decision by the Supreme Court of the United States in Sánchez Valle v People of Puerto Rico and the Puerto Rico Oversight, Management and Economic Stability Act (PROMESA) imposed by Congress and President Obama, it is evident that Puerto Rico is a colony and therefore the Federal Government has absolute control over the island. In addition, it is the federal government that is fighting against corruption in local government, including in the judicial system.

In the past, when I was President of the Civil Action Party, we took the State Electoral Commission to the local courts requesting to eliminate the requirement of an affidavit signed by a notary-lawyer for the endorsements to register a new political party. The local courts up to the Supreme Court denied the petition. We later presented our petition to the U.S. District Court in San Juan and it was granted; the Commission appealed. The case went to Boston and eventually to the Supreme Court—both decided in our favor. Clearly, this case set a precedent where the U.S. District Court overruled a decision of the local state courts. Therefore, the Federal Court can intervene in matters solved by the local courts, particularly if courts are utilizing unscientific data and, by way of a wrong decision, are punishing a citizen/physician who has committed no injury on his patient. The only adverse effect, if any, was that the patient in this case must take calcium and vitamin D daily, like any other female over 50 years of age. And, again, hypocalcemia is an inherent complication of the type of surgery done on this patient.

By submitting a SENTENCE, the Supreme Court is punishing me for having the courage to file a lawsuit against a lawyer and, worst of all, for winning the case. Judges should respond for their actions outside of their jurisdiction, most particularly when they make decisions based on animosity, hostility, bitterness and violating civil rights.  The sentence of the Supreme Court of Puerto Rico is absurd and excessive, in violation of Article 8 of the United States Constitution.

The Supreme Court also violates Article 1802 of the judiciary system of Puerto Rico that states that whoever causes harm is responsible to restitute the damage done and that decision was precisely taken by our Supreme Court in the case  Bonilla v Chardón, 18 P.R. Offic. Trans. 696, 709, 118 P.R. Dec. 599 (1987) and Ríos v Municipality of Guaynabo, 938 F. Supp. 2 235, 260 D.P.R. 2013, where it is stated "that the Supreme Court has held time and again that the scope of negligence under Article 1802 of the Puerto Rico Civil Code is broad—as broad as the behavior of human beings...including any fault that causes harm or injury".

On June 11, 2015, when I received the Sentence from the Supreme Court of Puerto Rico, I wept for the first time since the death of my parents and wife.  I went to see a psychiatrist who diagnosed me with depression, started me on anti-depressants and sleep medications.  Together with my wife and kids, they disarmed me of a pistol I kept at home.  We then entered two Motions of Reconsideration and the process ended on December 18, 2015.  On January 19, 2016, I wrote a pathetic letter to Judge Liana Fiol Matta implying that I might commit suicide soon, before her retirement on January 31, 2016.  They took no preventive action.  That day, I again broke down and I was swiftly admitted to First Hospital Panamericano in Cidra, Puerto Rico, from January 19 to January 26, 2016.  The diagnosis upon discharge was Severe Major Depression, Legal Problems as well as my pre-existing conditions: Diabetes mellitus, hypertension, Benign Prostatic Hypertrophy, Hypothyroidism, Sleep Apnea, Pancytopenia and Myelodysplasia.  Two antidepressants and sleep medications were prescribed. Close family supervision and a strict control of the medications was recommended.  To this date, I am still under psychiatric treatment.

The Supreme Court decision has also caused me severe economic and mental problems.

In January 12, 2016, I wrote to Sq. Margarita Mercado Echegaray, Attorney General of Puerto Rico, complaining about the behavior of the judges in this case. She did not answer my letter. On the same date, I also wrote to Judge Isabel Llompart Zeno, Director of OAT (Oficina de Administración de los Tribunales) again complaining about the conduct of the judges. Although I knew that her office responds to the Supreme Court, nevertheless I made a try. Her answer was that her office cannot evaluate or judge the Supreme Court judges. I responded that she can take action against Lower Court and Appellate Court judges and even refer them to the Special Judiciary Committee of three judges designated by the Hon. President of the Supreme Court, Liana Fiol Matta. To that last letter, I received no answer.

About the Immunity of the judges:

The U.S. Supreme Court in Randall v Brigham & Wall 523, 1869 offered its initial allegation in favor of an absolute judicial immunity doctrine. In the US the judicial immunity also rests upon Bradley v Fisher, 80 U.S. Wall, 335.35,20 L. Ed. 646, 1872 and Pierson v Ray 386 U.S. 547, 554, 1967. In both Bradley and Pierson any errors committed by the judges involved were open to correction on appeal. (435 U.S. 349,371). In Stump v Sparkman (1978), the Supreme Court startingly expanded the doctrine of judicial immunity. It is curious and unjustifiable for Stump v Sparkman to be used as a pivotal case to defend the allegation of judicial immunity for judges. The Supreme Court vote for Judge Stump was 5 to 3. The case and its controversial ruling have been the subject of legal scrutiny and debates in many forums, including the arts. The Supreme Court operates on the belief that when mistakes are committed the adequate remedy is appeal. If appeal is the method for challenging a mistaken decision, the court cannot extend immunity to a judge whose ruling is unappealable. The immunity doctrine, instead of guaranteeing that judges confer justice impartially and without fear, is responsible for malice, corruption and the capricious administration of justice. Judges cannot enjoy a privilege that places them above those citizens who are unfortunate enough to enter a prejudiced, corrupt and irresponsible court.

The Stump v Sparkman was decided by a 5 to 3 vote in favor of Judge Stump. The dissident judges including Justice Stewart stated that for a court--or a judge--to have immunity, three conditions must be met: notification, the right to be heard and a method of appeal. Of the three, the opportunity to appeal is foremost among them. The chance to appeal is the most important because it provides a mean of

11

curing defects in any due process violation. If a judge intentionally or intuitively considers that the accused might appeal and acts to obstruct this right, that judge or court will not be protected by immunity. By making a sentence in my case the judges obstructed my right to appeal. They left me impotent and incapacitated to appeal to a higher court to redress the damage produced by the court. For that reason the judicial defendants in my case cannot claim judicial immunity.

On the other hand, the judges of the judiciary system of Puerto Rico do not have absolute immunity, the immnunity is conditioned or partial. In the United States supposedly the judges claim to have absolute immunity. But after Pulliam v Allen (466 US 522, 1984) total immunity came into question. Belén A. Barbosa, Esq. in an interpretation of this case in a lecture before the Judicial Conference delivered in December 20, 1985 stated that the judicial immunity received a terrible blow and the Civil Rights Act, Section 1983 provides for actions against state judges in the federal court.

Following the Pulliam v Allen case, (466 US 522 (1984) where judicial immunity received a strong blow, total immunity of the judges has come into question. Civil Rights Act section 1983 provides for actions against state judges in the federal courts. Following Pulliam v Allen in 1984, the US Supreme Court took up Forrester v White (44 U.S. 219, 108 S. Ct. 538 1988). Judicial immunity was not given to Judge White, the court refused to apply even quasi-judicial immunity. Forrester like Pulliam make it clear that absolute judicial immunity is dead in American jurisprudence. Similarly, in Puerto Rico Feliciano Rosado v Matos Jr. refused to accept absolute judicial immunity. If errors are committed, the proper remedy is appeal (Pulliam v Allen) If appeal indeed is the proper method to challenge, the judiciary cannot justify granting immunity to judges who have prevented an appeal from occurring.

In Puerto Rico judges have no absolute immunity-- their immunity is conditioned or partial. In Feliciano Rosado v Matos Jr. (110 DPR 550, 1981) it was decided that the Supreme Court of Puerto Rico refused to incorporate in our judicial system the doctrine of absolute judicial immunity, but recognized, as a norm of exception under Article 1802 of the Civil Code, the civil responsibility of judges for their malicious or corrupt actions while delivering their judicial function. In that case the Hon. Judge Antonio Negrón García stated his well known quotation among lawyers: "In our society nobody, much less the judges, are above the empire of the law".

Comity:

Comity is defined as the practice among political entities (as nations, states, or courts of different jurisdictions), involving especially mutual recognition of legislative, executive and judicial acts. (Black's Law Dictionary 687 (9th ed. 2009) Comity between local and federal courts is not a frivolous or inconsequent concept. Comity is neither a matter of absolute obligation, on the one hand, nor a mere courtesy and good will, upon the other.  The mutual respect between state and federal courts affords the participants a timely resolution of matters and a sense of finality. Comity cannot be applied to the present case since the local judiciary judges are the defendants.

The Rooker-Feldman doctrine cannot be applied to this case since the plaintiff is not asking the Federal Court to reverse the judgment of the Puerto Rico Supreme Court; although they can revoke the Supreme Court of Puerto Rico.  The plaintiff is asking that the Supreme Court itself enters into a judiciary review process of its decision and revokes itself of that absurd, unscientific and irrational sentence; that affects the honor, prestige and credibility of the highest court of our territory.

Precedent for reconsideration and revocation of a sentence:

At the peak of the Vietnam War in 1969, a group of UPR students refused to register for compulsory selective service and vehemently objected the presence of the ROTC inside the state university campus. A student by the name of Edwin Feliciano Grafals was accused of refusing to register in his hometown. He was taken before Federal Judge Hiram R. Cancio Vilella (deceased) and was handed a one-year jail sentence.  When the hearing was over, Judge Cancio called for the student to approach the bench with one of his lawyers and the prosecutor and directly addressed Feliciano in Spanish (hence off the record) with words to this effect: "Judges frequently are saddened for sentencing a human being, even when the accused is a hardened criminal. Your case is more painful than any other that has appeared before me because I believe that you are not a criminal, but rather a person who, based on his ideas or ideals, has chosen to violate a law which he believes is unfair, invalid and unconstitutional. I know that you love Puerto Rico. I love Puerto Rico as much as you.  Our only difference is that we disagree on what is best for our country.  I would have liked for you to allow me the opportunity to avoid this sentence by accepting probation.  I think I understand why you did not

13

voluntarily accept any condition, and I am sorry for not having spared you from the sentence I have given you.  Good luck."

Feliciano's lawyers proceeded to file a Motion to Appeal at The United States **Court of Appeals** for the **First Circuit** in Boston.  Judge Cancio requested authorization for him to reconsider motu proprio his sentence in the case.  On April 15, 1970, federal prosecutor Blas C. Herrero petitioned the Boston court to return Feliciano Grafal's case file of appeal to the U.S. District Court for Puerto Rico. Judge Cancio then annulled the sentence and closed the case. The final sentence would be an hour in jail.

If a federal district court judge was courageous enough to revoke himself for a decision handed down through no fault of his own, in this case now before you a similar action from the Puerto Rico Supreme Court would be more than honorable. This court erroneously placed the blame for a patient's non-surgically related prospective illness on the shoulders of a physician who followed exactly what the best practice of medicine required of him. The court's sentence was neither mandated by law nor informed by scientific evidence. In the eyes of the country, a revocation of this sentence would serve to boost the respect and esteem traditionally held for our highest court.

On the humanistic aspect:

I am a veteran of the US Armed Forces. I served for two years with dignity, honor and valor in the US Army from 1968 to 1970.  I was stationed in Fort Polk, Louisiana and the Republic of Vietnam. Presently, I am being treated at the VA Hospital in San Juan for four diseases acquired as the result of Agent Orange exposure while I was defending the Constitution and democracy of the US in the Republic of Vietnam.
I am 81 years old; I retired from practice at age 75.  As the result of the absurd sentence of the Supreme Court, I am still carrying four lawsuits as collaterals to the wrong sentence of the highest court of Puerto Rico.  The sentence of the Supreme Court is wrong, scientifically incorrect since nobody knows the causes of the dementias that affect us humans.

I had a coronary bypass surgery on March 2, 2018.  I would not like to die with the unbearable burden over my conscience that I caused a dementia to one of my

patients-- insolite!! I deserve my day in court. I have been unable to find a lawyer to represent me for they are afraid of reprisals from the local judges in future cases. At the end, when everything is said and the entire history is concluded, I might have to say as Cool Hand Luke said in a movie to the warden in the last minutes before execution: "What we have got here is a failure of communication". This, because what the Supreme Court of Puerto Rico did to me was an execution, not physically but morally, emotionally and economically.

As Socrates, the Greek philosopher, said: "When you are the object of a perverse, contentious or vile action, your reaction has to be more aggressive, energetic, forceful, competitive and convincing, if you are to prevail over your opponent". Precisely, that is what I have been forced to do.

The sentence of the Supreme Court of Puerto Rico against me belongs in some legal hall of shame. When the law fails, we all lose.

The Federal Court has jurisdiction over the colonial government including the courts and as such they have the power to intervene by accepting the present claim.

IV. The relief I am seeking is: 1. Compensation from each defendant in the amount of $100,000.00 for economic loss, mental anguish, suffering and depression that led to my admission at a psychiatric hospital. 2. Restoration of my prestige and credibility among my colleagues and patients, and 3. That the Supreme Court enter into a judicial review of their decision and rescind that absurd decision that constitutes a terrible stain in the jurisprudence of Puerto Rico that induces the loss of credibility and prestige of the highest court of the territory of Puerto Rico.

V. Jury Trial

Note:
The original complaint was submitted on December 13, 2016. In view of the fact that I could not find a lawyer to represent me a Motion of Dismissal without prejudice was presented on January 30, 2017. This was followed by two yearly letters to interrupt the prescription date. Copy of those letters were delivered to this court.

Respectfully submitted,

Enrique Vázquez Quintana MD, FACS
Urb. El Remanso, F15 Corriente St.
San Juan, PR   00926-6108
(787) 462-0658, (787) 790-3091
e-mail: evazquezmd@gmail.com

May 23, 2019

16

RECEIVED & FILED

AM 9: 31

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

## IN THE FIRST CIRCUIT OF BOSTON, MASSACHUSETTS

EX-PARTE---ENRIQUE VÁZQUEZ-QUINTANA, MD

RE--Enrique Vázquez Quintana, MD
Plaintiff
Pro Se LITIGANT                          CASE # 3:19-cv-01491-JAG
       V

Hon Judge Liana Fiol Matta
Hon. Anabelle Rodríguez Rodríguez
Hon. Maite D. Oronoz Rodríguez
Hon. Eric V. Kolthoff Caraballo
Hon. Roberto Feliberti Cintrón
Hon. José A. Morales Rodríguez
Hon. Gloria M. Soto Burgos
Defendants

Hon. Judge Jay Garcia Gregory
Federal District Court
San Juan, PR

To the Honorable Court:

Comes now Enrique Vázquez-Quintana, MD, Pro Se and petitions the above-named
Court for a writ of mandamus to the Hon. Judge Jay García Gregory of the San Juan
Circuit Court and shows the following in support of this petition.

1. On May 23, 2019 I presented a lawsuit against seven judges of the Judiciary
System of Puerto Rico and an expert surgical witness Dr. Stephen A. Falk an ENT
surgeon from Connecticut. (Copy included)

2. This is the typical case within the case:

The Supreme Court of Puerto Rico, in a five to four vote, sentenced -on June 11,
2015 and after two reconsideration petitions, the last one solved on December 18,
2015 - that hypocalcemia is responsible for dementia in humans. The case in point
involves an operation I performed on a patient on June 26, 2000, at age 53 with
depression, high calcium levels (hyperparathyroidism) of 15-year duration, a left
thyroid nodule, and a right adrenal non-functioning tumor. Multiple Endocrine
Neoplasia (MEN II) was a possibility but the Aldosterone, renin and the
catecholamines were normal. A parathyroid adenoma and the left thyroid lobe were

removed in the year 2000. The patient developed hypocalcemia, (Low calcium) an inherent complication of this type of surgery, seen in 3 to 5% of cases. She was readmitted in July 5, 2000 because of hypocalcemia and administered IV calcium and Vitamin D. On follow-up in August 30, 2000, her calcium was 7.6 mg/ml, phosphorus 4.5 mgs/dl, and PTH 109 pg/ml. When last seen before the lawsuit on October 27. 2000, her calcium was 7.7 mgs/dl and phosphorus 4.6 mgs/dl.

On June 21, 2001, the patient filed a lawsuit on the grounds of having developed hypocalcemia as a result of my surgery. Ten years passed from the filing date to the beginning of the trial – in 2011 - at the Lower Court. This fact is initial evidence of an ineffective judicial system. Five years after the operation, in 2005, the patient developed Alzheimer's disease. Neurologists are clear on the fact that by the time the first symptoms of this disease are detected, the disease has been present for 5, 10, 15, 20, or even 30 years. Based on this medical knowledge, anyone must conclude that at the time of the operation the patient was already afflicted by Alzheimer's disease. The surgeon – in this case, myself - could not possibly have produced Alzheimer's disease or any other of the dementias on this woman.

An American otorhinolaryngologist, Dr. Stephen A. Falk, from Connecticut was allowed by the court to testify on the indications for surgery and the surgical technique. The patient's husband testified in court that she was unable to remember the names of her children, did not remember her church hymns, and once almost burned down the house; their sexual relations were down to less than once a month, and they could no longer go dancing or to the casino. In 2005, he took her to a local Private Community Health Center, she was diagnosed with Alzheimer's disease, and was started on Aricept and Namenda.

Surprisingly, this American expert witness was able to gauge the state of her mental health based on an interview with the patient at the lobby of his hotel, with her lawyer as interpreter. Inexplicably, the following day he testified that the hypocalcemia that resulted from my operation resulted in dementia to the patient. This unscientific statement violates the Daubert motion of the American Anglo-Saxon legal system (which excludes the presentation of unqualified evidence to a judge or jury), as well as Rule 702 of our Napoleonic system.

The discovery of evidence was also at fault: the suit was not amended from the initial reason of hypocalcemia to dementia. The lawyers concealed the chart evidencing that she was being treated for Alzheimer's disease, not at a local Public Health Center but at a private Community Health Center. This is a clear violation of the rules of discovery of evidence prior to a trial. Similar to a surgeon who is not willing

to tolerate surprises in the operating room for the well-being of the patient, courts - as a matter of legal principle -  do not tolerate surprises in court proceedings. This act also violates the Attorneys' Code of Ethics.

We went to trial unaware that the patient had developed Alzheimer in 2005, and for this reason did not call in a neurologist to testify on my behalf as a true expert in this field. In a crude act of dehumanization, the plaintiffs' lawyer went as far as to allow the patient to testify. As would be expected of a person afflicted with this illness, her answers were incoherent. I did no permit my lawyer to cross-examine her owing to the fact that her Alzheimer's disease was evident.

I have a deep personal knowledge of Alzheimer's: my wife, died in June 15, 2006, after suffering the disease for eleven years. I wrote a book titled **Who Are You?** - in Spanish and English - that chronicles our experiences in dealing with the disease at home as a family of six children and a father and spouse (myself).  In July 2016, we finished the filming a movie of the same title, based on the book. The movie was shown in San Juan, Puerto Rico in April 18, 219. The movie have subtitles in English.

The Lower Court Judge entirely rejected the opinion of my expert endocrinologist - Yale alumni, NIH grants recipient, and author of multiple publications - who illustrated on the blackboard the electric gradient between the brain cells and the interstitial space. He testified that a sudden drop in calcium could cause transient disorientation or **temporary** loss of memory, which is corrected permanently with the administration of calcium and vitamin D, and has never been known to cause Alzheimer's or any other type of dementia. I was sentenced and am obligated to pay a large amount of money in addition to the $100,000 paid by my insurance, to compensate the patient, the husband, and the lawyer for damages, including the cost of all the medications used by this patient from 2005 to the present.  Among these medications are the ones prescribed for her pre-existing diseases, as well as the Alzheimer medications that are extremely expensive and ineffective, all for a disease I did not cause.
The Court has issued an arbitrary decision based on unsubstantial scientific arguments made by a witness belonging to the American College of Surgeons, who did not follow the guidelines that apply to an Expert Surgical Witness of the American College of Surgeons.

Justice erred in this case. This absurd decision by the Supreme Court of Puerto Rico has no application in any other country, much less the United States, of whom we

have been a colony for the last 122 years. But injustice is injustice regardless of where it is perpetrated.

Incidentally, I am the most experienced surgeon in thyroid and parathyroid surgery in Puerto Rico. I have published articles on the topic of thyroid, parathyroid and adrenal gland surgery. I retired from private practice on June 12, 2013, at age 75. As a result of this decision, I am forced to carry the false burden of having someone believe that my surgery was the cause of dementia in one of my patients. I find myself powerless, caught in an indefensible situation, and prohibited from any further appeals.

The Supreme Court of Puerto Rico is believed by many to be infallible. This is the same Highest Court that transformed a scientific lie into a judiciary truth by virtue of a crass judicial error, and by failing to behave in a prudent and reasonable manner.

I cannot underscore this enough: this ruling is intolerable and should not be tolerated by the academicians, not only in Puerto Rico but all over the world, for the undisputable fact is that the causes of the dementias are yet unknown.

3. The Lower Court decided that I caused dementia to the patient. The Hon. Judge Gloria A. Soto Burgos concluded that the testimony of Dr. Stephen Falk that low calcium caused a dementia was truthful and it was the accepted medical practice at the time. The expert witness upon questioning by my lawyer said that he has no scientific evidence to sustain his testimony, he was lying since no such evidence exists, nobody knows the causes of the dementias and Alzheimer's is one of the dementias. The judge did not even mention the testimony of my endocrinologist. The plaintiff lawyer asked if I had suit a lawyer in the past, a question not pertinent to the case. My lawyer did no object, so I answered that I presented a lawsuit against a lawyer who presented a frivolous suit against me, I won the case and she was supposed to pay me $184,000 for economic and emotional damage. She has paid nothing. My answer created animosity against me and ordered me to pay $280,000 to the patient and husband, $284,000 or the delay for temerity in the case that took 10 years from the suit to reach her court.

4. We appeal to the Appellate Court and in a decision rife with grotesque mistakes they ratified the Lower Court and impose me a fine of $6,000 for bringing a frivolous appeal. The ratification in at least four occasions says hypercalcemia (High calcium) instead of hypocalcemia (Low calcium), no one can understand such sentences. Even the name of the patient is misspelled, instead of Isabel Montañez Ortiz, they wrote Isabel Montañez Quintana, creating a hybrid or chimera between the patient and her surgeon.

5. We then appealed to the Supreme Court and they made a Sentence, not an opinion, in a 5 to 4 vote that I caused a dementia, not Alzheimer's to the patient. This is a finesse in diagnostic skills since at times the most experienced neurologists cannot tell what type of dementia is suffering the patient he/she is evaluating.

Complaint in the Federal Court of San Juan

On May 23, 2019 I presented Pro Se a complaint against seven judges of the Puerto Rico Judiciary System and against the expert witness Dr. Stephen A. Falk. (Copy included)

Events:

1. Mr. Juan Carlos Ramírez Ortiz presented a Motion of Stay under PROMESA Act, opposed that motion (Copy included) and the stay was lifted.

2. The Hon. Judge Jay García Gregory dismissed the case with prejudice in favor of Dr. Stephen A. Falk, indicating that I have nothing to claim under Article 1802 since the Dr. Falk was witness for the plaintiff and that he came to orient the court.

3. The reasoning of the Hon. García Gregory might be true, but the witness was never authorized to lie. We appealed to First Circuit Court in Boston and the court remand us to reach a settlement.

4. On February 19, 2019 we met with the Hon. Judge Charles A. Cordero and under the Rules of the Court of Appeals for the First Circuit Dr. Stephen A. Falk entered into an agreement with me paying a confidential amount of money, but much less than the $170,000 I had to pay to Triple-S Insurance for the excess of my policy. (Copy of the Settlement included)

This incident demonstrates that the Hon. García Gregory is not impartial and is prejudiced against me.

5. The Hon. Judge García Gregory dismissed the case with prejudice in favor of the Hon. José Alberto Morales Rodríguez on October 10, 2019. He must know that the Constitution of the United States provides for separation of religion and government. He did this in a single paragraph citing only one case, Goldstein v Galvin F.3d 16,24, 1st Cir. 2013. (Copy included) The Hon. García Gregory dispatched this important and unique case (That violates my Civil Rights, with lack of due process violating the 14 Amendment and violating Art. 1802) in a single sheet of paper without any explanation or justification for his decision. This is evidence of partialization and discrimination by the Hon. García Gregory.

6. The following day October 11, 2019 I submitted a Motion for Disqualification of the Hon. Jay García Gregory. (Copy included) No action has been taken.

6. I submitted a Motion of Reconsideration on October 16, 2019. (Copy included)

In addition for the revocation of the partial judgment emitted by the Hon. García Gregory I asked for assignment of a judge from the United States. Hon, García Gregory knows all the defendant judges in this case and he gives the impression that he is protecting them. No action has been taken by the Hon. García Gregory).

7. The American Alzheimer's Research Foundation states that there is no causal relationship between hypocalcemia and the dementias. (Exhibit 1)

8. The American Surgeon states that all female patient older than 50 years should take Calcium and Vitamin D to prevent osteoporosis, she was 53 at the time of surgery. (Exhibit 2)

9. Triple-S Insurance sent their report to the National Practitioner Data Bank in which states that I did not incurred in malpractice, the hypocalcaemia nor the cause of dementia is mentioned. It exonerates me of any wrongdoing. (Exhibit 3)

In view of the above evidence I respectfully request that this writ of Mandamus be accepted and so be ordered.

Respectfully yours,

Enrique Vázquez Quintana, MD, FACS
July 7, 2020

IN THE UNITED STATES DISTRIC COURT
FOR THE DISTRICT OF PUERTO RICO

Enrique Vázquez Quintana, MD
Plaintiff  Pro Se
                V

Hon Judge Liana Fiol Matta
Hon. Anabelle Rodríguez Rodríguez
Hon. Maite D. Oronoz Rodríguez
Hon. Eric V. Kolthoff Caraballo
Hon. Roberto Feliberti Cintrón
Hon. José A. Morales Rodríguez
Hon. Gloria M. Soto Burgos
Defendants

Hon. Judge Jay Garcia Gregory
Federal District Court
San Juan, PR

Case # 3:19-cv-1491-JAG

Motion to Inform the Lifting of the Automatic Stay

Now comes Dr. Enrique Vázquez Quintana, Pro Se, and respectfully informs and
includes a copy of the Stipulation Modifying the Automatic Stay Between the
Commonwealth of Puerto Rico and Enrique Vázquez Quintana. The Stipulation was
signed by me on September 9, 2019.
Also included is copy of our position of Inapplicability of the Automatic Stay in my
case submitted to the PROMESA court on July 9, 2019.

Hon. Judge Jay García Gregory, please be advised that in my petition to the
PROMESA court as well as my opposition to the stay submitted by Mr. José. A
Morales Boscio, Esq. I expressed that the Justice Department of Puerto Rico is
legally incapable to represent and defend the seven defendant judges since all their
actions were made with the clear intention to make me harm. In that event the 104

Act is not applicable to defend the judges. Similarly the PROMESA Act does not apply to the present complaint. My complaint is against the judges in their personal capacity, and not against the government. I feel that all the judges must defend themselves. The Justice Department should respond and document what evidence they have in their possession to justify the defense of the judges accused of violating my Civil Rights, not giving me an equal protection under the law and due process as well as violating Article 1802.

I respectfully submit the Stipulation of stay as well as my opposition for the representation of the lawyers of the Department of Justice to participate in the defense of the seven judges of the judiciary system of Puerto Rio.

Respectuflly,

*Enrique Vázquez Quintana M.D.*

Enrique Vázquez Quintana, MD
Pro Se

I hereby certify that on this same date, I personally filed the foregoing with the Clerk of the Court. I also sent notification by electronic mail to:

Hon. Denisse Longo Quiñones---Secretary of Justice
Susana Peñagaricano, Esq.
Wandymar Burgos Vargas, Esq.
Juan C. Ramírez Ortiz, Esq.
José A. Morales Boscio, Esq.

# United States Court of Appeals
# For the First Circuit

RECEIVED & FILED

?? MAR -9 AE 9: 34

CLERK'S OFFICE
S. DISTRICT COURT

## No. 20-1752

## In Re: Enrique Vázquez Quintana

## Petitioner

## Before

## Howard, Chief Justice,

## Lynch and Kayatta, Circuit Judges

## Reconsideration of Mandamus

MOTION UNDER RULE 40 OF FEDERAL RULES OF APPELLATE PROCEDURE. PETITION
FOR PANEL REHEARING

Now comes, Dr. Enrique Vázquez Quintana, Pro Se who respectfully submits a
Reconsideration to the denial of the writ of Mandamus decided by this Honorable
Court on November 12, 2020. It is evident that I am not a lawyer, I know medicine,
not law, but I cannot go back on this case. This is a novel case, simple in medicine
but made too complex by judges ignorant in medicine. The case is menacing to
lawyers who do not dare represent me in court. Since 2015, I have been fighting
against the injustice when the Supreme Court of Puerto Rico sentenced on
December 18, 2015 that I caused a dementia to a lady after an operation of the
thyroid and parathyroid glands that resulted with hypocalcemia (Low calcium). The
Supreme Court of Puerto Rico made a crass judicial mistake when they ratified the
decision of the Appeals and Lower Court that accepted the untruthful testimony by
Dr. Stephen A. Falk an Ears, Nose and Throat physician from Connecticut who
testified that low calcium caused the loss of memory to this patient. He admitted
that he had no scientific evidence to sustain his testimony, since there is no such
evidence in the medical literature. The causes of dementia are unknown.

I placed a lawsuit in the Federal Court in San Juan against 7 judges of the local
judiciary system-- one from the Lower Court, one from the Appeals Court and five
from the Supreme Court. The suit was presented on May 23, 2029. (Appendix 1)
The judges transformed a scientific lie into a judicial truth through a crass judicial
mistake—equivalent to prevarication—something that cannot be corroborated by
any other means. The Hon. Judge Jay García Gregory took no action on the case
since October 2019. I presented a Mandamus to the First Circuit Appeals Court on
July 23, 2020, the document was received and activated on July 28, 2020. No
further documentation was requested from me.  On November 12, 2020 I received
an e mail informing me that: "After the mandamus was filed, the district court ruled
on the motions that are the subject of the mandamus petition. Accordingly, the
petition for a writ of mandamus is dismissed as moot".

The dictionary definition of moot is unresolved, unsettled, undecided,
disputable, controversial contestable or suppositional. In legal terms moot is
interpreted as something that does not need to be dealt with, because
something has happened that solved the issue: the court's decision became
moot when the plaintiff was found dead. I have to really interpret the term

2

moot in your partial decision as defined legally. In the **legal** system of the United States, a matter is **moot** if further **legal** proceedings with regard to it can have no effect, or events have placed it beyond the reach of the **law**. Thereby the matter has been deprived of practical significance or rendered purely academic.

In the Mandamus I asked the inhibition of the Hon. García Gregory and the pending motions to be solved. But we never asked for the whole motions pending to be dismissed totally against me. As very frequently happens courts decide on the easy part of a controversy but leaving the difficult aspect unsolved. This is exactly what this Honorable Court did, my petition of recusal of the Hon. Judge Jay García Gregory was not decided, not even mentioned. As I have learned a Mandamus is an extraordinary legally protected right that is presented to prevent a suspected prejudiced judge to make further damage to the plaintiff in a case. The Hon. Judge García Gregory one week after I personally delivered a copy of the Mandamus to the Clerk's Office he proceeded to file six motions into my docket dismissing all the motions pending against me. He even dismissed my petition to submit my motions electronically to prevent contagious from COVID19 white taking the documents personally to the court. This decision is perverse, abusive and denotes lack of humanism from an educated individual who feels that he is superior to other human beings. But death is the equalizer per excellence. His actions could be legal but is charged with no humanism, is abusing his power toward a Pro Se litigant, someone who lacks a lawyer since they are afraid of leading a case against a single judge, much less against seven judges.

The US Supreme Court in Haines v Kerner (U.S. 519,520, 1972) stated that the courts must be less rigorous with the allegations presented by Pro Se litigants. It is supposed that the court, including the judge be more lenient with Pro Se litigants. The Hon. García Gregory has declined to follow this jurisprudence.

Since I am not a lawyer I do not know of rules, regulations and jurisprudence and my legal motions are totally unorthodox. I would appreciate if you would put yourself in my shoes for the time it takes you to read this motion and the documents that accompany it, so that you can sympathize as to what happened to me as well as my arguments.

3

All lawyers must be defense lawyers, they must not represent one individual or institution, but justice. Similarly, a public attorney and a judge can also be defenders of justice, no matter the circumstances, novelty or the complexity of the case. Since ancient times the strategy of the powerful is to silence the opponent; that strategy is still in place and is being applied to me.

 When I took my case to the Federal District Court of San Juan I was hoping to obtain justice but I am been proven wrong. The Hon. Judge García Gregory dismissed the case in favor of his fellow judges, in effect he is joining the seven local judges as the highest sapiens individuals who found the cause of the dementias that nobody else knows in this world that we inhabit for a short and finite period of time.

I ask to this Honorable Court to review more consciously and in more detail my writ of Mandamus and if possible to reverse it. Still left unattended is the recusal of the Hon. Judge García Gregory who is undoubtedly bias against me in this case and the assignment of a judge from the United States to continue the case, so that an equal protection under the law be provided to me.

We believe this Honorable Court has jurisdiction of revoke the decision of the Hon. Judge García Gregory of not recusing himself.

I still have two appeals before this Honorable Court, I hope that I will be treated fairly and that justice prevails.

These are the complete facts of my case:

1. In 2000 I received a 53 year patient with a clinical profile that signaled the need for thyroid and parathyroid surgery. The surgery was performed that same year. At the time, the patient was already suffering from depression, one of the first symptoms of Alzheimer's. As a result of the surgery, the patient exhibited hypocalcemia (Low calcium). Hypocalcemia is a complication inherent to this type of surgery; it occurs in 3% to 5% of cases, no matter the experience of the surgeon and depends on the anatomic variables of the region. Hypocalcemia is eventually solved with medication and patients do not suffer any further complications, much less dementias.

Coincidentally, at the time of the patient's surgery, I had already performed over 10,000 thyroid surgeries and 750 parathyroid surgeries.

4

2. In 2001, I was sued by the patient and her husband for the low calcium that resulted from my operation.

3. Ten years passed before the case arrived at the lower court in 2011; 5 to 6 judges examined the case and came to no conclusion. At best, this indifference speaks to a deficient judicial system. My lawyer mistakenly – one of several serious missteps in my defense - failed to move for dismissal for lack of action within the stipulated 6-month timeframe.

4. Finally, in 2011 the case was heard by a lower court. During the trial (June 2011), the patient's husband testified that his wife began to show signs of memory loss in 2004. He also said that: she mistreated their grandchildren when they came to visit; she almost burned down their house; they could no longer attend church services because she forgot the hymns; they had stopped attending casinos or dancing, and their intimacy was reduced to once a month. He added that he had taken her to the Levittown Community Services Center, where she was diagnosed with Alzheimer. Doctors placed her on medications known as Aricept and Namenda, which are exclusively indicated in the treatment of the dementia called Alzheimer.

5. Mrs. Isabel Montañez Ortiz (the patient) then took the stand on the behest of the attorney for the plaintiffs, counselor Antonio Iguina. The woman had serious difficulties answering her attorney's questions. In the middle of her testimony they had to take her outside so she could rest in a separate room. Judge Gloria Soto Burgos retired to her chambers, later returned and stated for the record that the patient was oriented in space and time. Judge Soto Burgos is not a medical doctor and was, therefore, practicing medicine without any training.

6. At the end of the patient's testimony, counselor Mr. Iguina broke down and cried. Whether he cried to impress the judge I will never know. I remember telling my lawyer that I had never cried during an operation and certainly not in a courtroom. Judges must be accustomed to seeing winners and losers crying for whatever reasons.

5

7. When our lunch break was over, I asked my attorney to refrain from questioning the patient. I said that whatever she testified would not help or hurt me in any way. When he notified the judge of my decision, plaintiffs' second attorney, Maricele Rivera, abruptly stood up and argued that Dr. Vázquez Quintana knew nothing about Alzheimer's, that I was not a neurologist, the second attorney Mr. Antonio Iguina added that neither was I a psychiatrist! In truth, I was the only one present who was knowledgeable about Alzheimer's disease, since I had cared for my wife who suffered the illness for 11 years. I wrote a book on our experiences with Alzheimer ¿Quién eres tu? later translated into English. (Who are you?). And was at the time working on a film version of the book. The film was finally released on April 18, 2018.

8. The judge then called to the stand an Ear, Nose and Throat surgeon from Connecticut, Dr. Stephen A. Falk, who had been accepted as an expert to testify as to the indication for the surgery and the surgical technique applied by me.  It happened that Attorney Iguina had taken the patient to the Marriott Hotel lobby in Isla Verde, the evening before his testimony.   He served as translator to Dr. Falk, who immediately understood that the patient was suffering from memory loss. The next day, without recent lab results to compare with post-surgical calcium levels, the witness testified that low calcium was the reason for the patient's loss of memory. To the judge's question of whether his answer applied to cases in general or were specific to this patient, Dr. Falk replied that he was referring to this patient in particular. My attorney, Mr. Jorge Joaquin López López, asked if he had scientific evidence to back his testimony, to which the witness replied that he had no scientific evidence to this effect.

He had no evidence because no evidence existed at the time or presently. Both the judge and my lawyer should have challenged his testimony for being false, but they took no action. The judge accepted a testimony that did not comply with the Daubert Rule of the anglo saxon system or Article 702 of our Napoleonic system.

6

9. Next came my turn to describe the steps I took and my reasoning process during the surgery. I testified that I removed the enlarged right superior parathyroid and then proceeded to remove the left superior parathyroid so that the pathologist could confirm if the patient had parathyroid hyperplasia. Next, I removed the left lobule of the thyroid since it had a nodule. I was unable to identify the inferior parathyroid glands, reason for which I then removed a fragment of the thymus since the parathyroids are at times located there. The patient's lawyer Mr. Iguina was up in arms because I did not have permission to remove that fragment of the thymus. As a matter of fact, the surgeon has the discretion to search for abnormal tissue and does not need to waken the patient for their permission. His reaction clearly exposed the lawyer's lack of knowledge on the subject and was a textbook use of sophistry with the intention to arouse confusion.

For the record, as soon as my patient's lab analyses came back with a low calcium count, I ordered a redo of the pathology report and Dr. Raul Marcial, an excellent pathologist, concluded that the left inferior parathyroid gland had been found inside the thyroid's left lobule, and   there could be a tiny fragment of the right inferior parathyroid. It was impossible to preserve that left inferior parathyroid gland since it could not be seen.

10. Dr. Stephen A. Falk added that I had tied the left inferior parathyroid artery at its origin, thus depriving circulation to the left inferior parathyroid gland. This was negligent on his part since he had not examined neither the pathology results nor my surgical report. Attorney Mr. Iguina immediately announced in court that I was lying – the first of three times that he called a lie on me during the trial. His argument was that I lied because I knew that I had removed the inferior parathyroid glands without being enlarged, a flagrant lie meant to confuse the judge. How can he say that the left lower parathyroid was not enlarged since I was the surgeon and could not identify the lower parathyroid gland.

11. My expert witness was Dr. Carlos Isales, a Yale University-trained endocrinologist, and a multiple-grant recipient from the National Institutes of Health for research in endocrinology. He testified that the surgery I performed was indicated. He further explained that low calcium may provoke

7

disorientation or temporary loss of memory and that a course of Vitamin D and Calcium would return the calcium count to acceptable levels. He affirmed that none of these patients evolves toward dementia or Alzheimer. This is scientifically true. It was true then and it remains true to this day.

This testimony was never mentioned in Judge Gloria Soto Burgos' decision. Knowing that she did not write the decision but, as is often the practice, entrusted the winning attorney with this task, counselor Mr. Antonio Iguina wrote whatever he pleased. Judge Soto Burgos retired a short time later. We were never able to find a forwarding address for her from the Supreme Court or from the San Juan Superior Court where she had worked.

12. Attorney Mr. Antonio Iguina, in his questioning, inquired about the number of malpractice suits filed against me. I answered that there had been six (6). Six was the number Triple-S Insurance considered to revoke my insurance effective January 2, 2002. Mr. Iguina insisted that there had been ten (10), including a patient and his wife as separate cases, one protracted case since the time of my tenure as Health Secretary, and another which was not directed at me but at one of my private practice partners. He failed to mention that I had won six of the ten, had reached an agreement on another in 1996, and then a second in 2013 when I was about to retire. I won a lawsuit against a lawyer who presented a frivolous suit against me. I set the record straight about these cases but Mr. Iguina, following his initial strategy, insisted that this was my second lie.

13. At some point during his interrogation he also argued that I lied when I said I had performed thousands of parathyroid surgeries and I was now saying they were 750. To this I answered that he was confused, since thyroid and parathyroid are two different glands. In his quest to discredit me, he claimed that this had been my third lie on the stand. These three allegations of lying to the court would be repeated later before both the Appeals and the Supreme Court which, after reading the transcripts of the trial, concluded that I lacked credibility. I have never lied to a court. Never.

14. During the trial, the attorney for the plaintiffs asked if I had filed a lawsuit against a female lawyer. The question was not relevant to this trial. My lawyer, however, did not object. I answered that I had won a lawsuit against a lawyer who had filed a frivolous lawsuit against me. As a result, she was indefinitely

barred from the practice of her profession and was ordered to pay me the sum of $184,000 for monetary and emotional damages. She has never paid. This information turned Judge Gloria Soto Burgos against me and was handed down to the judges in the next phases of this case as described ahead.

The Hon. Superior Court Judge, Gloria M. Soto- Burgos ordered me to pay $280,000 to the patient and her husband to pay for medications of pre-existing disease and for the Alzheimer's—a disease I could not have caused. She also imposed a penalty and fine of $284,000, for temerity since the case took ten years the date of the lawsuit to the Superior Court. That is unfair since I had nothing to do for the delay.

Soon it became clear that the outcome of the case of a doctor vs. a lawyer did not sit well with the courts. My trial lawyer in my case against a lawyer was admonished by two judges for accepting the case and had to abandon the case. (Lawyers never sue other lawyers) Also, the lawyer whom I sued was readmitted to the bar six weeks prior to the final and firm decision in the case of the patient alleging my surgery had caused her dementia. She was able to regain her license by feeding false statements to the Supreme Court. The lawyer's reinstatement based on the Supreme Court file is a farce. One day the judges decide against reinstatement and two weeks later the opposing members turn their vote around. If this is the type of lawyer that meets the standards of our Supreme Court presided by the Hon. Maite D. Oronoz Rodríguez, then we are in for a total breakdown of our society.

15. I later sent an explanatory letter to Chief Justice Maite Oronoz Rodríguez concerning the case, to which an assistant responded that the decision was final and firm. (It seems that a private citizen should know better than to address a judge in writing.) By the way, Judge Oronoz did not participate in the process to reinstate to her practice the defective lawyer.

16. After the decision of the Superior Court that I caused dementia to the patient, we filed an appeal with the Appeals Court and the court ratified the lower court's decision based on a document rife with errors. In four instances the term "hypocalcemia" was incorrectly substituted with the term "hypercalcemia" – one is the opposite of the other – which alters the context of the sentence. In one instance, the document wrongly cites the patient's name, Isabel Montañez Ortiz to Isabel Montañez Quintana, a strange hybrid or chimera

between the patient and her surgeon. This faulty document was signed by the honorable appeals court judges José Alberto Morales Rodriguez, Félix Figueroa Cabán and Felipe Rivera Colón. They never took the time to carefully read the document before signing.

The panel of three judges failed to evaluate the deference the higher courts give to the evaluation of the evidence presented to the First Instance judge.

Evaluating expert witnesses' testimonies and adjudicating credibility to the same constitutes a routine judicial act which falls within the confines of the First Instance Court judges. But judges cannot be so naive as to accept a testimony that is contrary to the scientific knowledge of the time. **In my case this was not an innocent mistake, this wrong interpretation was done with the intent of punishing me and causing me harm.** But even if this interpretation of mine is not accepted, on appeal to the Appellate and Supreme Courts, these two courts should have followed the jurisprudence of Pueblo v Aponte (17 DPR, 917, 918, 1955) and Pueblo v Amadeo (82 DPR 102, 122, 1961) where it is stated: "it is our reiterated norm to respect the appreciation that the lower court judges make of the proof presented to them. We have only altered those judgments in cases of obvious error in fulfilling such function, when a thorough exam of all the proof convinces us that the judge unjustifiably discarded important probatory elements or based his criteria only on low value testimonies or inherently improbable or incredible". This is precisely what the Superior Court Judge Hon. Gloria M. Soto Burgos and subsequently the Appellate and the Supreme Courts did when they ratified the testimony of Dr. Stephen A. Falk who testified falsely that low calcium causes loss of memory. He admitted that he had no scientific evidence to sustain his testimony, therefore he admitted that he lied. A testimony in conflict with the scientific knowledge at that time and presently. The three courts discarded the testimony of my witness endocrinologist Dr. Carlos Isales who truthfully testified that low calcium can cause disorientation or "temporary loss of memory" but those symptoms disappear by giving calcium and vitamin D and none of these patients go on to develop dementias, much less Alzheimer's disease. (See, The Line Between Legal Error and Judicial Misconduct: Balancing Judicial Independence and Accountability--Hofra Law Review Vol. 32, Issue 4, Cynthia Gray 2004).

The Appeals Court imposed a penalty of $6,000.00 for supposedly filing a frivolous appeal to that honorable court. At this point, both the Court of First Instance and the Appeals Court had declared me guilty of causing dementia on a patient. It was a severe blow to my belief in the judicial system.

17. The case eventually reached the P.R. Supreme Court. By a 5-4 vote, on December 18, 2015, the Supreme Court handed down a Sentence (not an opinion) concluding that this defendant caused a dementia on a woman after a thyroid and parathyroid surgery which resulted in hypocalcemia (low calcium count). The sentence was handed down with prejudice.

The Supreme Court concluded that I provoked a dementia on the patient, however, not Alzheimer's disease. Such a degree of precision is not even awarded to the best neurologists who regularly treat patients for memory loss. The truth is that no one knows for sure what causes dementias, and Alzheimer's is the most frequent among them. Of every 100 dementia cases, 80 are defined as Alzheimer. It is known, however, that when the first symptoms appear, the disease has been present for anywhere from 5, 10, 15, 20 or 30 years. We can safely assume that when I operated on the patient she was already suffering Alzheimer's disease. During the hearing, references were made exclusively to Alzheimer. So, the Supreme Court in all its irreputable sapience, burdened me with the dubious reputation of being the only surgeon in the planet to cause dementia on a patient. This is unheard of, absurd, and defies scientific knowledge.

18. Prior to the Supreme Court ruling, Dr. Heriberto Acosta, the most experienced neurologist in the treatment of dementias in Puerto Rico, delivered a document to the Court – "In Assistance to the Supreme Court" – subscribed by two other neurologists, two psychiatrists, two surgeons and an endocrinologist who debunked the idea that there was a causal relationship between low calcium and dementias by citing 17 medical articles. The document was relayed to each one of the judges although we are not certain whether they read or even received the document. However, they felt knowledgeable enough to emit a totally erroneous sentence.

On receiving word of the initial Supreme Court sentence (June 11, 2015), I fell into a deep depression and consulted a psychiatrist who placed me on the antidepressant Prozac. My mental state was such that the psychiatrist alerted my family to remove the gun that I had kept in my home for many years. The depression lingered and I was interned to the psychiatric Hospital Panamericano

11

in Cidra from January 19 to 26 of 2016. Since then I have continued my psychiatric treatment and medications under the care of Dr. Francisco Amador.

19. Unwilling to accept the injustice rendered me by the highest court, I appealed not once but twice. The court finally rejected both motions for reconsideration and, as I have already mentioned, the sentence was declared final and firm on December 18, 2015.

20. The Supreme Court sentence against me spawned four additional lawsuits. My insurer, Triple-S Insurance, sued me for $170,000.00, which I paid in full. My new lawyer, Guillermo Ramos Luina, filed a lawsuit against Triple-S Insurance and against the AIG professional responsibility policy covering my original lawyer, Attorney José López López. Both lawsuits were dismissed by Judge Eric Ronda del Toro, former president of the Puerto Rico Judiciary Association. Note that my new lawyer never sued my former lawyer, but his insurance company. There is a definite pattern of lawyers not suing other lawyers.

21. The Appeals Court ratified the lower court. We followed with a motion for certiorari at the Supreme Court, which three separate panels of judges dismissed. It is evident that if they had accepted the motion, they would have had to face their own aberrant sentence. This is as close to double jeopardy for the same fault.  As the comic strip Pogos says-- We are looking for the enemy, and the enemy is us.

22. I took the witness Dr. Stephen A. Falk to court together with the seven judges of the local judiciary system. The Judge Jay García Gregory dismissed the case with prejudice in favor of Dr. Falk. Then we were off to the 1st District Appeals Court in Boston. That court ordered us to reach a settlement. So under the supervision of Judge Charles Cordero in San Juan, Dr. Falk had to settle for a confidential amount below the $170,000.00 I had paid Triple-S Insurance for the excess of my coverage. Since the lower court case, Triple-S was in solidarity with me given that my then-lawyer Attorney López Lopez was unable to document my policy with Triple-S. This was clearly a legal malpractice. Later I decided to let him off the hook and never required him to pay my insurer, although he had misrepresented me in every possible way.
The Motion of Dismissal made by the Hon. Judge Jay García Gregory in favor of the witness Dr. Stephen A. Falk denotes prejudice and bias against me. Judge

12

García Gregory accepted as true the false testimony of Dr. Stephen A. Falk. Unbelievable!!

23. Finally, the lawsuit I filed in San Juan Federal District Court against seven (7) P.R. court judges is still active. Hon. Judge Jay García Gregory dismissed the case with prejudice in favor of the Hon. Judge José Alberto Morales Rodríguez, represented by his son, Attorney José Alberto Morales Boscio. In his decision, he cites only one legal case in a half-page, without arguments or justification. I must add that our Constitution affirms the separation between church and state and here I get the impression that these two judges might be bound by their religious affinity. The remaining 6 judges are represented by Attorney Juan Carlos Ramírez Ortiz, assigned by Justice Secretary Wanda Vázquez Garced in July 2019, prior to becoming Governor. I requested Judge García Gregory to reconsider his decision in favor of Judge Morales Rodriguez and to recuse himself from the case for reasons of bias. These motions were entered in October 2019 and the court has yet to act on them.

24. My lawsuit against all seven (7) P.R. judges, where I am representing myself (Pro Se), is yet to be heard by the Federal Court of the District of Puerto Rico. Every lawyer I have consulted is fearful of the retaliations they could suffer in future cases. This fear of judges reinforces my theory that judges may decide cases not on their merits but for reasons of prejudice or discrimination.  If it happened to me, it can and does happen to others.

25. On July 28, 2020 I petitioned the 1st Circuit Appeals Court in Boston for a writ of Mandamus. On Friday, August 7, 2020 I personally presented a copy of the Mandamus to the office of Judge García Gregory, asking him to abstain himself in this case for lack of impartiality and for his familiarity with the judges who are being sued. I requested that a judge from the states be assigned to the case; someone who is not part of the local buddy system.

26. Surprisingly, on Friday, August 14, 2020, under a shut-down of the federal court because of COVID19, Judge García Gregory entered 6 motions into my file dismissing all my allegations. He dismissed the following motions:
a. He refused to inhibit himself from the case. (Docket 46)
b. He dismissed my motion of reconsideration on his decision of dismissal with prejudice in favor of Hon. Judge José Alberto Morales Rodríguez. (Docket 47)

c. He dismissed with prejudice in favor of the other six judges represented by Mr. Juan Carlos Ramírez Ortiz. (Docket 50)

d. He dismissed my motion to strike down the insulting comments made against me by Mr. José Alberto Morales Boscio who offended me by saying that I was unscrupulous. (Docket 48)

e. He signed a Memorandum and Order to dismiss with prejudice against me and in favor of the six other judges, for failure to state a claim. (Docket 50)

f. He found mute my petition to use electronic filing (Docket 44) of May 22, 2020, that he never decided before. The failure to decide my petition of May 22, 2020 placed me at risk of getting contagious with COVID19 while taking personally my motions to the Clerk's Office in San Juan. This action by the Hon. Judge Jay García Gregory denying my petition is totally abusive, inhuman and perverse.

These actions by the Hon. Judge Jay García Gregory are probably illegal; the main reason to present a Mandamus is to prevent further damage against a plaintiff by a bias and prejudiced judge. I am not a lawyer but common sense indicates that a Mandamus sets a stay in the case.

It is evident that these decisions confirms that the Hon. Judge Jay García Gregory is discriminating against me and that his decisions are heavily informed by his emotions. He totally closed the case. This is evidence of bias and use of excessive power against me.  He exhibited a temper tantrum typical of a three year old kid, at age 74; amazing!

27. I then submitted two notices of appeal to the First Circuit of Appeals of Boston. In this motion I address that issue.

For years I have borne the undeserved weight of the courts' decisions and the deep pain of knowing that justice toward me has never been served. I cannot bear to accept that I will go to my grave carrying the false claim that I have harmed a patient in a manner that is not possible according to accepted scientific knowledge.

However, there is a human dimension to this story:
I am 83. I served in the U. S. Army defending democracy and the Constitution of that country, did a tour in Vietnam, and was exposed to Agent Orange. As a result, I am suffering from Diabetes mellitus with neuropathy, incipient retinopathy,

pancytopenia (anemia, low white blood cells and platelets) and myelodysplasia (pre-leukemia). I have a 100% incapacity and am being treated at the V.A. Hospital in San Juan. Six months ago I developed a brownish discoloration of the skin on my left subcostal margin. Biopsy confirmed the diagnosis of Acanthosis Nigricans that could be associated to a hidden malignancy. I am presently being evaluated by my Hematologist-Oncologist with laboratory and x-rays to exclude the possibility of a hidden malignant tumor. So, my case could be interpreted as moot, since the plaintiff was found dead.

For my decades of practicing the medical profession with integrity and compassion, I deserve that my case be heard in federal court. At this hearing, the judges from the three local courts will be questioned at a deposition and asked to justify their knowledge of medicine, and to disclose whether a family member suffers or has suffered from Alzheimer's disease. Specifically, Hon. Judge Anabelle Rodríguez Rodríguez of the P.R. Supreme Court, must answer whether her mother who died of Alzheimer, had a low calcium levels, or ever had thyroid or parathyroid surgery. (The HIPAA Law is rendered moot after the death of the patient.) Judge Rodríguez Rodríguez had the legal, ethical, and moral responsibility in a collegial court to enlighten her colleagues about Alzheimer's disease, since it is fair to assume that she must have spoken with her mother's neurologist about the cause of Alzheimer's disease affecting her mother. This disease carries a strong genetic component, she could be at risk of developing Alzheimer's disease too. In Puerto Rico one out of five families has had or is having a family member who is suffering or died from Alzheimer's disease. We already know one of nine judges, by sure, we will find out if there are other judges with experience with this disease in their families.

Throughout this experience I have felt that I have hit the blue wall of the judicial system, analogous to the famous blue wall that protects police members from accountability for unlawful and harmful acts such as excessive use of force and other wrongdoings. The silent pact among the members is to have each other's back and never accuse another policeman regardless of what goes on. It is cronyism in its most destructive form. Judges known for their integrity are called to continually exemplify that integrity. In my case, the judges from three local courts did not rise to the level of integrity expected of them. They acted based on prejudice, discrimination, and with the intention of doing me harm for my "temerity" in winning a lawsuit against a lawyer who had entered a frivolous suit

15

against me. I am being punished by courts whose members conduct themselves as if they were part of a brotherhood.

The Supreme Court Sentence against me is not based on an existing precedent since the causes of dementia are unknown. Neither does the Sentence made by the Supreme Court of Puerto Rico establish precedent or jurisprudence; therefore, this ruling can only be interpreted as fiction or a fantasy that must be annulled for the reason that it harms the prestige and the credibility of our judicial system, and hurts the confidence of our citizens in their highest court. A lawyer, or any judge, might propose that a legal case to reverse the errors in tandem committed by the courts is necessary. That would be incorrect. My case will never be replicated and no one else will ever be accused in Puerto Rico of causing dementia by way of an operation. This false distinction is exclusively mine.

**Any judge who believes in justice will understand that the Supreme Court sentence ratifying the Appeals Court is a judicial aberration, unfair, incompatible with scientific knowledge, an abuse of power, and the result of a crass judicial error**. In countries such as Spain (whose civil code is the basis for our own) and Latin America this is considered as prevarication. A crass judicial error is a Sentence that cannot be corroborated under any other circumstances.
For the above reasons the lawyers do not have to deal with the supposedly immunity and impunity of the judges but with the fact that their decision in my case is an aberration, unscientific and a crass judicial mistake. But most important I was not provided with the due process and the equal protection under the law.

The US Congress and President Barack Obama, in 2010 assigned millions of dollars to investigate the cause of Alzheimer's disease and come up with an effective medication. They set the year 2025 for this accomplishment. In 2013, more money was assigned to make a brain mapping to study Alzheimer's, Parkinson, Amyotrophic lateral sclerosis, multiple sclerosis, autism, and epilepsy. All six conditions whose cause is not known and the treatment is not effective.

There is no one so innocent as to believe that highly educated judges would not know what everyone else knows: that the causes for dementia are still unknown. This reminds me of a similar expression by the illustrious Judge Raúl Serrano Geyls in the case of a lottery numbers scam by a "bolitero." In Pueblo de Puerto Rico v Luciano Arroyo (83 D.P.R. 573, 1961), he famously said: "We, the judges, cannot be

16

so innocent as to believe declarations that a regular bystander citizen would not believe." Judges are not medical experts; however, they are educated and read newspapers, magazines, and other sources of information. If they decide to do so, they can educate themselves on these and other medical issues by looking up the research or directly consulting the appropriate medical professionals. To arrive at a conclusion that is counter to scientific knowledge on a whim is immoral and unacceptable. Basing a ruling on a non-truth is a travesty.

For all the above described reasons, the judges being sued in federal court should accept the option of a settlement. The settlement must entail monetary retribution for economic loss and emotional damages. It must reestablish my credibility and prestige among my colleagues and patients, and the judges must agree to annul and eliminate from the country's jurisprudence a sentence that harms the good name of and the confidence, prestige and credibility of the public in their highest court of law. **In fact, there will be no need to tackle the issues of whether judges are immune, or if they are protected by impunity or infallibility.** Judicial immunity is not found in the Constitution of the United States, or the constitutions of the 50 states or the territory of Puerto Rico.

**The Hon. Judge García Gregory dismissed with prejudice all seven defendants on the basis that judges have absolute immunity and impunity.** Since that immunity is statutory he is in fact defending himself. He does not even mention that the Sentence of the Supreme Court is based on a crass judicial mistake; yes not only doctors make Crass medical mistakes, judges can also make Crass judicial mistakes.

Reflections on the Issues of Trust, Judicial Immunity, Integrity, and Miscarriage of Justice:
Lawyers and judges, in most cases, do their best to enable justice, help their clients, and arrive at fair and honest decisions that are not based on prejudice or discrimination. Even so, a recent poll conducted by NotiCel, a local e-paper news outlet, found that 65% of those interviewed did not believe in Puerto Rico's justice system. Our Constitution protects us from harm and injustice at the hands of other citizens and the government. However, there are lawyers and judges who accept and act upon the belief that they are shielded by absolute immunity, impunity, and infallibility. This is the reason why judges have no need to defend themselves from accusations brought on them by simple mortals.

Feliciano Rosado v Matos Jr. (110 DPR 550,1981), was decided by the Honorable Judge Hiram Torres Rigual as President of the Supreme Court with the concurrence of **Judge Antonio Negrón García, who stated that "In our society no one, not the least judges, is above the empire of the law. Absolute immunity is thus eliminated, and the concept of conditioned immunity is established."** This ruling should have put an end to the abuses of the system against defendants who are simply expecting a fair trial.  But still this is statutory, decisions made by the judges for the judges. Both in Puerto Rico and the United States are in need of a constitutional amendment to settle this problem permanently.

The U.S. Supreme Court has overruled 141 decisions in that same court from 1837 to 2018. As recently as in June 2020, the Supreme Court in Ramos v Louisiana ruled that criminal cases by jury must be decided unanimously and annulled the sentence in Apodaca v Oregon (1972). This opened the gates for criminal sentences to be overturned across the country.

Puerto Rico has a notorious case of an annulled ruling in Pueblo de Puerto Rico v Edwin Feliciano Grafals, a student who refused to register for the compulsory military service. Hon. Judge Hiram R. Cancio Vilella had originally sentenced the defendant to a year in prison. The student appealed to the Boston court and several months later P. R. Federal Prosecutor Blas C. Herrero requested the court to return the case to San Juan for Judge Cancio to overturn the sentence. Judge Cancio agreed to review his sentence and in its place ruled that the defendant should spend one day in jail. The moral compass of the judge, and of the federal prosecutor, eventually dictated a fair outcome for this case. **Judicial sentences are not written in stone; they can be annulled when there is a will to seek justice.**

This summarizes the state of my legal affairs.

This document addresses the following issues:

1. The aberrant, unscientific sentence of the Supreme Court of Puerto Rico stating that I caused a dementia to a 53 year old lady in whom I did a thyroid and parathyroid surgery.
2. The dismissal of the seven judges with prejudice made by the Hon. Judge Jay García Gregory of the San Juan Federal Court.

The following information and documents are pertinent allegations:

1. I lost the first case in the courts of Puerto Rico. I deserve my day in court to prove before a jury that the Sentence of the Supreme Court of Puerto Rico was totally wrong.

The Supreme Court of Puerto Rico **transformed a scientific lie into a judiciary truth by virtue of a crass judicial mistake, and by failing to behave in a prudent and reasonable manner.** A crass judicial mistake is equivalent to prevarication in the Spanish judicial system. It is a mistake that cannot be corroborated by any other means. Enclosed is a document from the Alzheimer's Disease Research stating that there is no causal relationship between low calcium and dementias. (Appendix 1) The American Surgeon General recommends that all ladies over 50 years should take calcium and Vitamin D orally to prevent osteoporosis. (Appendix 2). These are the medications that the patient is taking as the result of the operation I performed upon her. The report sent by Triple-S Insurance to the National Practitioner Data Bank (NPDB) states that the insured followed accepted standards of care in the management of this case, the outcome was a minor permanent injury, no damages resulted from the insured intervention, the consumption of calcium is recommended for any women above 40 years of age. (Appendix 3)

There is no precedent or publication or experiment in the world medical literature that confirm that hypocalcemia (Low calcium) causes loss of memory or dementia. What is the truth is, that the causes of the dementias are unknown. Enclosed are two documents written by two respected neurologist, professors in two of our medical schools (Appendix 4-5) testifying that there is no causal relationship between low calcium and the dementias, that the causes of the dementias are unknown and Alzheimer's is the most frequent of the dementias.   (Appendices listed but no included, to be used in the trial)

The damage inflicted on me will be proven by the record of my admission to the psychiatric Hospital Panamericano in Cidra, P, R. from January 19-26, 2016 as well as the testimony of my actual psychiatrist Dr. Francisco Amador.

After that new trial, I should be compensated for economic and emotional damages, my prestige and credibility restored among my patients and colleagues, and the Supreme Court judges should enter into a judicial revision and annul their Sentence that more than anyone else affect their honor, prestige, credibility and confidence of the people of Puerto Rico to the highest court of territory.

2. Motions of dismissal by the Hon. Judge Jay García Gregory on two separate dates in favor of the seven defendant judges of the local judiciary system.

I presented my complaint against the seven judges on May 23, 2019. The reason for the lawsuit was violation of my civil rights under Section 1983 of the Civil Rights Act, violation of Article 1802, discrimination and excessive punishment violating Article 8 of de American Constitution. In my complaint I preempted the concepts of commity and the Rooker-Feldman Doctrine. (See Appendix 1) Regarding commity the mutual respect between state and federal courts affords the participants a timely resolution of matters and a sense of finality. Commity cannot be applied to the present case since the local judiciary judges are the defendants. The Rooker-Feldman cannot be applied to this case since as plaintiff I am not asking the Federal Court to reverse the judgment of the Puerto Rico Supreme Court; although they can revoke the Supreme Court of Puerto Rico. **I am asking that the Supreme Court enter into a judicial review process of their decision and revoke themselves of that absurd, unscientific and irrational sentence that affects the honor, prestige and credibility of the highest court of our territory.**

I stated the following about the immunity of the judges. The U.S Supreme court in Randall v Brigham and Wall 523, 1869 offered its initial allegation in favor of an absolute judicial immunity doctrine. In the U.S. the judicial immunity also rests upon Bradley v Fisher, 80 U.S. Wall, 335. 35, 20 L. Ed 646, 1872 and Pierson v Ray 386 U.S. 547,554, 1967. In both Bradley and Pierson any errors committed by the judges were open to correction on appeal. (435 U.S. 349,371) In Stump v Sparkman (1978), the Supreme Court startingly expanded the doctrine of judicial immunity. It is curious and unjustifiable for Stump v Sparkman to be used as a pivotal case to defend the allegation of judicial immunity for judges. The case and its controversial ruling have been the subject of legal scrutiny and debates in many forums, including the arts. (Appendix 6, The Origin of Judicial Immunity) Stump v Sparkmam is one of the twenty four horrendous decisions of the Supreme Court of the United States as stated in, Worst Decisions of the Supreme Court by Professor Joel D. Joseph and foreword by Justice Thurgood Marshall. The Supreme Court operates on the belief that when mistakes are committed the adequate remedy is appeal. If appeal is the method for challenging a mistaken decision, the court cannot extend immunity to a judge whose ruling is unappealable. The immunity doctrine, instead of guaranteeing that judges confer justice impartially and without fear, is responsible for malice, corruption and the capricious administration of justice. Judges cannot enjoy a privilege that places them above those citizens who are unfortunate enough to enter a prejudiced, corrupt and irresponsible court.

To have immunity, three conditions must be met: notification, the right to be heard and a method of appeal. Of the three, the opportunity to appeal is foremost among

20

them. The chance of appeal is the most important because it provides a mean of curing defects in any due process violation. By making a Sentence in my case the judges obstructed my right to appeal. They left me impotent and incapacitated to appeal to a higher court to redress the damage produced by the court. For that reason the judicial defendants in my case cannot claim judicial immunity.

In Puerto Rico judges have no absolute immunity—their immunity is conditioned or partial. In Feliciano Rosado v Matos Jr. (110 DPR 550, 1981) it was decided that the Supreme Court of Puerto Rico refused to incorporate in our judicial system the doctrine of absolute immunity, but recognized, as a norm of exception under Article 1802 of the Civil Code, the civil responsibility of judge for their malicious or corrupt actions while delivering their judicial function. In that case the Hon. Judge Antonio Negrón García stated his well-known quotation among lawyers: "In our society nobody, much less the judges, are above the empire of the law".

In the United States, following Pulliam v Allen (466 US 552, 1984) judicial immunity received a strong blow, total immunity of the judges has come into question. Civil rights Act, Section 1983 provides for actions against state judges in the federal courts.  Following Pulliam v Allen in 1984, the US Supreme Court took Forrester v White (44 US 219, 108 S. Ct. 538, 1988). Judicial immunity was not given to Judge White, the court refused to apply even quasi-judicial immunity.

The Hon. Judge Jay García Gregory dismissed the case with prejudice in favor of the Hon. Judge José Alberto Morales Rodríguez on October 10, 2019, in a half sheet of paper citing only the case of Golstein v Galvin. The case of Goldstein was wrongly cited by the Honorable Judge García Gregory since the case deals with judicial immunity in damages under Section 1983.  A reading of that case will show that the plaintiff in that case filed a complaint in the Federal Court asking for damages against a quasi-judicial officer.  Also the same plaintiff under the same facts filed a complaint in the State Court asking for declaratory and injunctive relief against the quasi-judicial officer.  Under Section 1983 there is concurrent jurisdiction in the Federal Courts and in the State Courts.  In the state case <u>Bulldog Investor General Partnership v. Secretary of Commonwealth 1953 NE2d691 Massachusetts 2011</u> the case was decided on the merits against the same plaintiff in relation to the declaratory and injunctive remedies.  There was no immunity in relation to those remedies under Section 1983.   The case of <u>Bulldog, supra</u> was cited in the case used by the Honorable recused Judge, <u>Goldstein, supra.</u> The recused Judge has had enough time to decide that the judicial defendants in the case do not have judicial immunity in declaratory or injunctive relief.  I want to void the judgments made against me by the Court of First Instance of San Juan, the Appeals Court and the Supreme Court of the Commonwealth of Puerto Rico.

21

I objected to that motion on October 16, 2019. No action was taken by the Hon. Judge García Gregory until I placed the Mandamus to the Appeals Court of Boston. My petition of Mandamus was delivered by myself personally to the Clerk's Office of the Federal Court in Sana Juan on August 7, 2020. One week later with the court closed because of COVID19 the Hon. Judge García Gregory placed six motions to my docket on August 14, 2020. He was moved by animosity with the intention to punish me for presenting the Mandamus to prevent further discrimination against me in this case. With all due respect this shows in a reasonable way bias against me. Your animosity was such that you even dismissed my petition to strike from the record the offensive word, unscrupulous, made by Mr. José A. Morales Boscio against me. If you condone and allow such expressions in your court by a lawyer against his opponent, we as a society are doomed to fail. I am considering presenting a complaint for the unethical behavior of Mr. José A. Morales Boscio; the ethical complaints do not prescribe.

You conclude in your Memorandum and Order dated August 14, 2020, stating, "Therefore, this court lacks jurisdiction pursuant to the Rooker-Feldman doctrine and Plaintiff claims must be dismissed". That statement is totally wrong as you stated in your motion of dismissal of the case against Dr. Stephen A. Falk, footnote 5, that Rooker-Feldman does not apply to my case since I am not asking for your court to revoke the Sentence of the Supreme Court of Puerto Rico. You are trying to avoid your responsibility to adjudicate justice in this complex and unique case. It is awkward for you to express lack of jurisdiction of your court pursuant to the Rooker-Feldman Doctrine one year and three months after my complaint of May 23, 2019. In my complaint I preempted the Rooker-Feldam Doctrine as not applying to this case and as expressed by you in your Motion of Dismissal of Dr. Stephen A. Salk. It seems that you have not read my complaint or that you are selective in forgetting facts that favor my case. It is equally strange why you did not cite the Rooker-Feldman Doctrine to dismiss the case against your fellow judge Hon. José Alberto Morales Rodríguez, but you cite it on your dismissal of the other six judges on August 14, 2020, just one week after you received my Mandamus.  It is reasonable to believe that the way these decisions were made shows bias the decision can be voided. (See Capperton v AT Massey TSEU June 2009; UC v Microsoft 253F3d34; in Re Boston Children 244F3d164)

At the very last sentence of your Memorandum and Order you state, "If Plaintiff wanted to continue defending his rights, he had to seek certiorari before the Supreme Court, Federación de Maestros, 410 F. 3d at 21(Citing 28 U.S.C.1257-58)

22

Are you so naïve as to include that statement in your Memorandum and Order, that is preposterous. You know better than that, the US Supreme Court will not accept a certiorari based on a sentence against a citizen from our colony of Puerto Rico who is not known in the metropoli. That sentence against Dr. Vázquez Quintana has no interest or bearing in the courts of the colonizer. The Supreme Court receives thousands of cases and accepts only 1-2% and solves from 70 to 80 cases per year. Are you intending to confuse me and induce me to incur in further expenses? The time for that appeal expired. What is true is that I did not receive a fair and impartial trial in the local courts of Puerto Rico; for that reason I can appeal to the Federal Court of San Juan, Puerto Rico.

The human being is the only animal that can create fiction. The Supreme Court in the original case issued a Sentence, without precedent since it has never been published that low calcium causes dementia. Similarly, the Sentence against me only does not establish precedence or jurisprudence. So, that decision is a fiction or a fantasy that affects the prestige, credibility and confidence of the Supreme Court of Puerto Rico. For that reason it should be voided, annulled. **So this case can be solved without having to deal with the conflicting immunity, impunity and infallibility of the judges.**

This Hon. Court can reverse the Sentence of the Supreme Court of Puerto Rico. The precedent was established by two previous cases—Casiano Vélez v Schmer 274 F.2d 249, First Circuit, Jan, 1984 and Rafael Capella Rivera v Tomás Concepción 469 F.2d 17, First Circuit 1972. In both cases the First Circuit reversed or annuled the sentences of the Supreme Court of Puerto Rico.

**This lawsuit is above myself, I am requesting a redress of the damage the local courts cause to me but above all it deals with the restitution of the prestige, credibility and confidence of the Supreme Court of Puerto Rico.**

Wherefore, it is respectfully requested to this Honorable Court to dismiss the decisions made by the Hon. Judge Jay García Gregory, to recuse himself from the case and a judge from the United States be assigned to continue the case in the San Juan Federal Court. **The option of a settlement is always a possibility, but the decision must be made public.**

Judges with Integrity – as the subject of a painting stolen in 1934 from the Museum of Fine Arts in Ghent (Belgium) and never recovered – judges need to display

integrity in each one of their actions on and off the bench.    The painting is
mentioned in the novel The Fall by Albert Camus.

Respecfully submitted,

*Enrique Vázquez Quintana MD*

Enrique Vázquez Quintana MD, FACS

November 17, 2020

Copy of this document to be mailed to the Hon. Jay García Gregory, Mrs. María
Antongiorgi Jordán, Mrs. Carlos Lugo Fiol, Mr. Juan C. Ramírez Ortiz and Mr. José
A. Morales Boscio

24

RECEIVED & FILED

# IN THE UNITED STATES COURT OF APPELAS FOR THE FIRST CIRCUIT

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R

**INRE ENRIQUE VAZQUEZ-
QUINTANA, MD
PLAINTIFF PRO SE**

**CASE NO. 20-1752**

---

## MOTION UNDER RULE 40 OF FEDERAL RULES OF APPELLATE PROCEDURE. PETITION FOR PANEL REHEARING

Comes now petitioner Pro Se and respectfully alleges and prays to this Honorable Court as follows:

1. In this case we received a judgment of this Honorable Court made on November 12, 2020. In that judgment this Honorable Court dismissed the writ of Mandamus because it was moot. We respectfully disagree.

2. When we filed the petition of Mandamus 20-1752 on 08/28/2020 we made alternative pleadings. First we stated that the presiding Judge of the District Court refused to decide a recusal motion we filed on 05/22/2020 docket no. 43. Additionally we pleaded that the presiding Judge refused to decide a motion of reconsideration we filed on 10/16/2020 docket no. 29 against the judgment dismissing the complaint against codefendant former Appellate Judge Jose A. Morales Rodríguez. Additionally the presiding Judge refused

1

to decide a motion of dismissal filed by the other codefendants in the District Court case filed on 10/17/2019 docket no. 31. When we filed the writ of Mandamus 9 months have already transcurred. We pleaded in the alternative that if the presiding Judge after the filing of the writ of Mandamus but before the decision on the merits by this Honorable Court decided not to recuse himself. Then we asked this Court to revoke the aforesaid decision by the presiding District Judge. After filing the writ of Mandamus the presiding Judge rapidly with haste decided not to recuse himself on 08/14/2020 docket no. 46. Additionally dismissed our motion of reconsideration on 08/14/2020 docket no. 47. Also granted the motion of dismissal on 08/14/2020 docket no. 50. We believe this Honorable Court has jurisdiction to revoke the decision of the presiding Judge of not recusing himself. That decision of the presiding Judge was made after we filed the writ of Mandamus to prevent this Court from deciding the merits of the recusal. This legal technicality will force the appearing party either to file another writ of Mandamus to revise the recusal decision or to accept the recusal decision. Under the facts of this case we believe this Court has jurisdiction to decide the merits of the recusal decision.

3. It must be pointed out that the presiding Judge decided on 08/14/2020 docket no. 53 not to allow the filing electronically by me of motions in the Federal District Court. Later that decision was retracted. This was done on

2

09/01/2020 docket no. 63. I am 86 years old, retired medical surgeon. My wife and I should not be exposed to the Coronavirus due to our age. I served in the U.S. Army in Vietnam. I am a United States Army Veteran and put myself in harm's way during the Vietnam War. This is something that should be taken into consideration. Later on when the case was closed the presiding Judge retracted and allowed the electronic filing. This was academic because the case was closed unless the appeals I made cases 20-1859 and 20-1914 are decided in my favor.

4. The presiding Judge when he dismissed my complaint against codefendant Jose A. Morales Rodríguez on 10/142019 docket no. 20 decided a laconic one sentence judgment. He cited erroneously the case Goldstain v. Galvin 719F3d24 First Circuit 2013, that the doctrine of judicial immunity in damages prevented the Court from deciding the merits of my complaint. There is no judicial immunity under Section 1983 for declaratory judgments voiding the state judgments against me see, Allen v. Debello 861F3d433; Sully v. Lamb 437F3d1077. Additionally based on the same facts of the case cited, Goldstain, supra plaintiff filed in the State Court of Massachusetts a declaratory judgment against the defendant asking for a declaratory decree to void the judgment that was decided on the merits, see Bulldog Investors v. Secretary 1953 NE2d 691; Mass. 2011. Under Section 1983 complaints can

3

be filed in the Federal Court or in the State Court. When the presiding Judge dismissed my complaint against the other codefendants on 08/14/2020 docket no. 50 he decided that the Rooker-Feldman Doctrine was applicable. Only months before when he decided to dismiss my complaint against codefendant Jose A. Morales Rodríguez docket no. 28 and 29 he dismissed it based on the doctrine of judicial immunity of damages and not under the Rooker-Feldman Doctrine. In the case 16-3139 which I filed a complaint under Article 1802 of the Civil Code of Puerto Rico filed in the Federal Court asking for damages against the expert witness in the state case he decided that the Rooker-Feldman Doctrine wasn't applicable. The inconsistency of the reasoning of the presiding Judge shows bias. The manner in which he decided with haste after I filed the Mandamus shows bias. It must be pointed out that under 42USC455A only objective bias must be proven. If it is reasonable to believe that the way the decision was made shows bias the decision can be voided, see Capperton v. ATMassey TSEU June 2009; US v. Microsoft 253F3d34; InRe Boston Children 244F3d164.

**WHEREFORE**, it is respectfully requested to this Honorable Court to reconsider its decision to dismiss the writ of Mandamus because it was moot.

4

I hereby certify that I sent copy of this motion by mail and electronically to

the following attorneys: Jose A. Morales Boscio PO BOX 4980 Caguas, P.R.

00726; jose.morales@himapr.com. Carlos Lugo-Fiol, USCA No. 41677. PO

Box 260150, San Juan, Puerto Rico 00926. Tel. 787-645-4211. Email:

clugofiol@gmail.com.

*Enrique Vazquez Quintana M.D*

**DR. ENRIQUE VAZQUEZ
QUINTANA**
Corriente F15
Urb. El Remanso
San Juan, Puerto Rico 00926-
6108
Email: evazquezmd@gmail.com

5

**Enrique Vazquez-Quintana** <evazquezmd@gmail.com>
To: Hiram Perez <hperez1057@gmail.com>

[Quoted text hidden]

 **Stipulation-Vazquez Quintana (00022993xECB08).docx**
39K

---

**Enrique Vazquez-Quintana** <evazquezmd@gmail.com>                    Mon, Sep 9, 2019 at 4:01 PM
To: Hiram Perez <hperez1057@gmail.com>

Dear Squire Peñagaricano:
This is to inform you that I agree with the Stipulation Modifying the Automatic Stay between the Commonwealth of Puerto Rico and
Enrique Vázquez Quintana. Please proceed with the signature by the Commonwealth representative  and then sen it to me for my signature.
Thanks for your interest in this matter.

Sincerely yours,

Enrique Vázquez Quintana, MD
[Quoted text hidden]

*AVISO DE CONFIDENCIALIDAD: Esta comunicación de correo electrónico y cualquier documento adjunto contiene información que le pertenece al remitente, la cual podría ser confidencial y privilegiada bajo la ley aplicable. Esta información está dirigida al uso exclusivo del individuo o la entidad a la cual se le remitió este correo electrónico, según arriba indicado. Si usted no es el destinatario intencional, se le notifica por la presente que cualquier divulgación, reproducción, distribución, u otra acción tomada al tenor del contenido de la información comprendida en esta difusión, está estrictamente prohibida. Si usted ha recibido por error esta difusión, favor comunicarse con el remitente y elimine este mensaje. Gracias por su cooperación.*

*NOTICE OF CONFIDENTIALITY: This email communication and any attached document contains information that belongs to the sender, which could be confidential and privileged under the applicable law. This information is directed to the exclusive use of the individual or entity to which this email was sent, as indicated above. If you are not the intended recipient, you are hereby notified that any disclosure, reproduction, distribution, or other action taken in accordance with the content of the information included in this broadcast, is strictly prohibited. If you have received this broadcast by mistake, please contact the sender and delete this message. Thanks for your cooperation.*


Mail Logo

*AVISO DE CONFIDENCIALIDAD: Esta comunicación de correo electrónico y cualquier documento adjunto contiene información que le pertenece al remitente, la cual podría ser confidencial y privilegiada bajo la ley aplicable. Esta información está dirigida al uso exclusivo del individuo o la entidad a la cual se le remitió este correo electrónico, según arriba indicado. Si usted no es el destinatario intencional, se le notifica por la presente que cualquier divulgación, reproducción, distribución, u otra acción tomada al tenor del contenido de la información comprendida en esta difusión, está estrictamente prohibida. Si usted ha recibido por error esta difusión, favor comunicarse con el remitente y elimine este mensaje. Gracias por su cooperación.*

*NOTICE OF CONFIDENTIALITY: This email communication and any attached document contains information that belongs to the sender, which could be confidential and privileged under the applicable law. This information is directed to the exclusive use of the individual or entity to which this email was sent, as indicated above. If you are not the intended recipient, you are hereby notified that any disclosure, reproduction, distribution, or other action taken in accordance with the content of the information included in this broadcast, is strictly prohibited. If you have received this broadcast by mistake, please contact the sender and delete this message. Thanks for your cooperation.*


Mail Logo

*AVISO DE CONFIDENCIALIDAD: Esta comunicación de correo electrónico y cualquier documento adjunto contiene información que le pertenece al remitente, la cual podría ser confidencial y privilegiada bajo la ley aplicable. Esta información está dirigida al uso exclusivo del individuo o la entidad a la cual se le remitió este correo electrónico, según arriba indicado. Si usted no es el destinatario intencional, se le notifica por la presente que cualquier divulgación, reproducción, distribución, u otra acción tomada al tenor del contenido de la información comprendida en esta difusión, está estrictamente prohibida. Si usted ha recibido por error esta difusión, favor comunicarse con el remitente y elimine este mensaje. Gracias por su cooperación.*

*NOTICE OF CONFIDENTIALITY: This email communication and any attached document contains information that belongs to the sender, which could be confidential and privileged under the applicable law. This information is directed to the exclusive use of the individual or entity to which this email was sent, as indicated above. If you are not the intended recipient, you are hereby notified that any disclosure, reproduction, distribution, or other action taken in accordance with the content of the information included in this broadcast, is strictly prohibited. If you have received this broadcast by mistake, please contact the sender and delete this message. Thanks for your cooperation.*

 **Stipulation-Vazquez Quintana (00022993xECB08).docx**
39K

# United States Court of Appeals
## For the First Circuit

## No. 20-1752

## In Re: Enrique Vázquez Quintana,

## Petitioner

### Before

### Howard, Chief Justice,

### Lynch and Kayatta, Circuit Judges

## January 16, 2021

## Motion inquiring about status of the case

Now comes, Doctor Enrique Vázquez Quintana, Pro Se and respectfully inform this Honorable Court about pending decisions and ask about the status of his case before the Boston Court of Appeals. The information is as follows:

- On July 23, 2020 I submitted a Mandamus to this Honorable Court requesting the recusal of the Hon. Judge Jay García Gregory and the assignment of a judge from the United States to act on my lawsuit against seven judges of the Puerto Rican judicial system.

- On August 14, 2020 the Hon Judge García Gregory decided all the pending motions since October 2019, he decided all the motions against me. On that date he closed the case. He failed to send copy of his decisions to me by mail or electronically.

- The only motion he granted was that I could submit my motions electronically but only to the Civil Case 3:19-cv-1491-JAG. So, I was allowed to submit my motions to a case that he closed. That is an act of cynicism too hard to overcome.

- I placed a Motion of Appeal against the dismissal of the Hon. Judge José Alberto Morales Rodríguez by the Hon. Jay García Gregory. (Case No. 20-1859)

- I placed a Motion of Appeal against the dismissal of the other six judges, Judge Liana Fiol Matta et al (Case No 20-1914)

- This Honorable Court asked the Federal Court in San Juan to send copy of the docket of the Cases 20-1859 and 20-1914. The copies sent were incomplete, my motions on these cases were no included. What is rare is that this Honorable Court did no act to correct this bias. We noted this irregularity and sent to this court the complete docket.

- On November 12, 2020 this Honorable Court of Appeals decided—"That since the mandamus petition was filed, the

district court ruled on the motions that are subject of the mandamus petition. (Orders 46,47)" Accordingly, the petition for a writ of mandamus is dismissed as moot, this document is signe by the court's clerk, not by the judges.

- Your interpretation to declare moot the mandamus is incorrect. Docket 46 deals with the recusal of the Hon. Judge Jay García Gregory, that he refused. Docket 47 deals with the decision of dismissal in favor of Judge, José Alberto Morales Rodríguez. Your decision declaring moot the writ of mandamus did not evaluate the dismissal of the other six judges, my petition to submit motions electronically, my motion to strike insulting comments against me by Mr. José Alberto Morales Boscio representing his father, Judge José Alberto Morales Rodríguez.

- Your judgement to declare Moot the Mandamus was made on incomplete data that points that you are protecting the Hon. Judge Jay García Gregory.

- I presented a Motion of Reconsideration of the Mandamus on November 17, 2020, just 5 days after your judgement. Since then, I have not heard about this Honorable Court. The defendant lawyers have not been asked to react; rare and suspicious enough. As a non-lawyer I assume that my motion of Reconsideration of the Mandamus must be answered.

- At the beginning of the process this Court asked why the PROMESA act should not be applied. I submitted that a stay proposed by one of the defendant lawyers asked for a stay. I objected and the stay was lifted by a stipulation signed by the Secretary of Justice, Denisse Longo Quiñones, the Hon. Judge Laura Taylor Swain and myself. I sent copy of these documents to the Boston Court of Appeals and since then I have heard nothing from this court. One of the defendant lawyers answered, the other not, he was advised to respond but nothing has happened.

- The muteness of this Honorable Court resembles the muteness of the Hon. Jay García Gregory since October 2019 to August 14, 2020 when he reacted because of the writ of Mandamus.
- I have been consoling myself that this Honorable Court was mute because of the COVID-19 pandemia and the snow, and I refuse to believe that I am wrong.
- The Boston Court is open because you have recently decided at least another case about cock fights in Puerto Rico.

This case is unique to the Federal Court of San Juan and to the Boston Appeals Court. A case like this comes in a generation. This Honorable Court is not giving the importance this case merits. I think you do not want to grasp all the details of this case in trying to assist all the judges involved in the legal decisions wrongly made. If your time is short you just have to read by Motion of Reconsideration to the Mandamus dated November 17, 2020. You are experienced judges, and the document will show you the injustice of the Sentence of the Supreme Court of Puerto Rico based on a scientific lie that they accepted as true to punish me for having won a frivolous lawsuit presented by a lawyer against me. The decisions made by the Hon. Judge Jay García Gregory are wrong too and had the effect of protecting the brotherhood of judges. It would be beyond this world if the brotherhood has reached this Honorable Court. If that is so, we the citizens are not protected by the judiciary system of the biggest democracy of the planet.  The dictum that we are all equal before the law then can be discarded for being incorrect, a constitutional lie.

In fact, that decision made into a Sentence, just against me, not an Opinion with the clear intention of causing me harm qualify as a transgression of the law and punishable by the courts. I was given the doubtful privilege to be the only surgeon in this world that can cause dementias after operations of the thyroid and parathyroid glands

The decisions so far against me are malevolent, mischievous and hateful made with the clear intention of causing me harm. Those decisions represent an abuse of power at all levels because I am not a lawyer and have been unable to find one; lawyers are afraid of judges. In the document cited above I offer the possible solutions.

This Honorable Court should decide my two appeals—against one judge and six other judges respectively, the non-application of the PROMESA Act, an in depth evaluation of the Mandamus as well as the evaluation of my Reconsideration of the Mandamus.

If nothing happens and the case has been closed by an automatic rule, unknown to a Pro Se litigant this judicial system is a mockery and a travesty of the law and civil rights. The United States judiciary system can then be catalogued as a fraud or hoax. I refuse to believe that the case was closed in such impolite, insolent and crude manner.

I hope that my case is still open in this Honorable Court. I earnestly need to get news from you.

Respectfully submitted,

Enrique Vázquez Quintana, MD, FACS

January 16, 2021

Cc:

Hon. Jay A. García Gregory
Hon. María Antongiorgi Jordán, Clerk USDC for the District of Puerto Rico
Mr. Carlos Lugo Fiol, Esq.
Mr. Juan Carlos Ramírez Ortiz, Esq.
Mr. José Alberto Morales Boscio, Esq.

The parties have responded to this court's order to show cause as to whether the bankruptcy stay provisions of 11 U.S.C. §§ 362 and 922, as incorporated by PROMESA, apply to these appeals. Having reviewed the responses and the stipulation partially lifting the automatic stay, we do not believe it was clear that the parties and the Title III court intended to lift the stay as to any appeal in this case. Consequently these appeals shall be stayed and the parties shall file status reports every ninety days. The parties are free to return to the Title III court to seek modification of their Stipulation to permit these appeals to proceed.

By the Court:

Maria R. Hamilton, Clerk

cc:
Carlos Lugo-Fiol
Juan Carlos Ramirez-Ortiz
Enrique Vazquez-Quintana
Jose Alberto Morales-Boscio