## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
|     as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
|        Debtors.[1] | |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 20-0003-LTS |
|     as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
|     Plaintiff, | |
| v. | |
| AMBAC ASSURANCE CORPORATION, et al. | |
|     Defendants. | |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 20-0004-LTS |
|     as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
|     Plaintiff, | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

v.

AMBAC ASSURANCE CORPORATION, et al.

    Defendants.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

      Plaintiff,

v.

AMBAC ASSURANCE CORPORATION, et al.

    Defendants.

Adv. Proc. No. 20-0005-LTS

**RESPONSE OF THE GOVERNMENT ENTITIES AND THE OVERSIGHT BOARD TO
DEFENDANTS' MOTION TO COMPEL IN CONNECTION WITH THE PRIFA, CCDA,
AND HTA REVENUE BOND ADVERSARY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND AND PRIOR DOCUMENT PRODUCTIONS ............................ 5

ARGUMENT ....................................................................................................... 11

I.   BROAD EMAIL DISCOVERY IS INCONSISTENT WITH THE
CLEAR LIMITS SET IN THE RULE 56(D) ORDER. ...................................... 11

II.   THE GOVERNMENT PARTIES HAVE AGREED TO SEARCH FOR
AND PROVIDE ADDITIONAL MATERIALS TO COMPLY WITH
THE RULE 56(d) ORDER. .................................................................. 15

    A.   The Government Parties Agreed to Provide Discovery Regarding
the Infrastructure Fund.............................................................. 15

    B.   The Government Parties Have Agreed to Search for Documents
Sufficient to Show the "Use and Purpose" of the Commonwealth's
Accounting Designations for Rum Tax Remittances........................... 19

    C.   The Government Parties Agreed to Provide Discovery Identifying
the Accounts Referenced in the CCDA Bond Documents. .................... 20

    D.   The Government Parties Have Agreed to Provide Documents
Governing the HTA Bonds. ......................................................... 23

    E.   The Government Parties Have Agreed to Provide the Accounting-
Related Discovery Contemplated by the Rule 56(d) Order. .................. 24

    F.   The Government Parties Have Agreed to Provide Discovery into
the HTA Voucher Process. .......................................................... 25

III.   THIS COURT SHOULD REJECT DEFENDANTS' OTHER
REQUESTS MADE IN THEIR PROPOSED ORDER..................................... 26

CONCLUSION....................................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Fin. Oversight & Mgt. Bd. for P.R.*,
    618 B.R. 619 (D.P.R. 2020) ........................................................................ 13

*In re MarketXT Holdings Corp.*,
    No. 04-12078 (ALG), 2007 WL 680763 (Bankr. S.D.N.Y. Mar. 1, 2007) ............................... 4

*United States v. Vend Direct, Inc.*,
    No. 06-cv-02423-MSK-MEH, 2007 WL 2175026 (D. Colo. July 26, 2007) ........................... 4

**Statutes**

3 L.P.R.A. § 1914 ....................................................................................... 16

**Other Authorities**

Commonwealth 2014 Financial Statement, *Available at*
    http://www.hacienda.gobierno.pr/sites/default/files/Inversionistas/commonwealth_of_puerto_r
    ico_fy_2014_audited_financial_statements.pdf ....................................................... 18

To the Honorable United States Magistrate Judge Judith Gail Dein:

The Government Parties[2] respectfully oppose *Defendants' Motion to Compel Document Discovery from the Government in the Revenue Bond Adversary Proceedings*, filed March 3, 2021 in the above captioned proceedings, ECF No. 126, for the reasons set forth below.

## PRELIMINARY STATEMENT

1.      In opposing the Oversight Board's motions for partial summary judgment in these proceedings, Defendants sought expansive discovery under Rule 56(d).  Rather than giving Defendants broad license, Judge Swain directed "limited, targeted, proportional, and efficient discovery" on a narrow set of topics. *See* Rule 56(d) Order at 6.  The Court recognized significant discovery on similar and overlapping topics had already been provided in connection with the Lift Stay Motions.  *Id.* at 6 ("It is expected that the discovery permitted herein will not duplicate the discovery conducted pursuant to the March Orders.").  The Court's ruling permitted narrowly crafted discovery: for example, (i) documents "governing" the bonds and "governing" the flow of funds, (ii) policies and procedures regarding such flows, and (iii) similarly targeted and specific discovery of related issues.  The Court, however, rejected Defendants' request for discovery regarding many topics, including (1) "communications with Commonwealth and HTA auditors related to the Pledged Revenues," (2) the "Commonwealth's purported rationale for its 'retention' of the Excise Taxes," (3) any analysis the Commonwealth undertook to determine whether the

---

[2] The "Government Parties" are the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), as representative of the Commonwealth of Puerto Rico ("Commonwealth") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), as well as the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), in its own capacity, as successor to the Government Development Bank for Puerto Rico ("GDB") as fiscal agent, and as representative pursuant to Act 2-2017 of the Puerto Rico Department of Treasury ("Treasury"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing Authority ("PRIFA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Tourism Company ("Tourism Company") (together, the "Government Entities").  References to "ECF No. __" refer to Electronic Case Filing numbers in Case No. 20-00003 unless stated otherwise.  Further, unless indicated otherwise, the documents in Case No. 20-00003 that are cited in this Opposition have also been filed in Case Nos. 20-00004 and 20-00005.

conditions of "constitutional clawback" were satisfied, (4) the Commonwealth's "course of performance" under the PRIFA Enabling Act, and (5) the "organization of the Commonwealth's accounting systems, and its use of fund accounting generally and special funds in particular." HTA Declaration, Case No. 20-00005, ECF No. 97 at 20, 26; PRIFA Declaration, Case No. 20-00003, ECF No. 82 ¶¶ 31, 34, 39-40, CCDA Declaration, Case No. 20-0004, ECF No. 80, ¶¶ 41-43.

2.     The Government Entities either produced in the Lift Stay Motions, or have agreed to search for and produce here, documents identified in the Rule 56(d) Order.  But, Defendants ignored the guardrails Judge Swain imposed on this Rule 56(d) discovery, both by propounding a massive number of requests to the Government Parties as well as numerous third parties,[3] and by attempting to exceed the scope of what the Court authorized.  That Defendants seek this discovery for the purpose of delay and the imposition of burden is underscored by the fact they represented to the First Circuit that discovery was not even necessary to determine the parties' respective rights in the revenue streams at issue: "the face of the statutes and . . . the bond resolutions, that's all you need.  Discovery is just gravy."  ECF No. 122-1 (Ex. 5 at 9:20-24) (clerk time warning omitted).

3.     Not content with just a little "gravy," Defendants' requests go well beyond the topics the Court authorized.  For example, with respect to PRIFA, the Rule 56(d) Order allowed discovery into "[a]ll documents governing the flow of Rum Tax Remittances."  Rule 56(d) Order at 7.  Ignoring the word "governing," Defendants seek all email "[c]ommunications *concerning* the flow."  *See* Motion Ex. A ¶ 2.b (Proposed Order); *id.* ¶ 4.b (same) (emphasis added).[4]

---

[3] Defendants served voluminous requests for production of documents, requests for admission and interrogatories on the Oversight Board.  They also served 15 document subpoenas on nine government entities, and, as of March 10, 2021, 23 third-party subpoenas on 19 non-governmental entities, including five rum producers, five banks, six law firms and three auditors.  The subpoenas directed to the law firms seek communications most certainly protected by the attorney-client privilege.

[4] *See also* Mot, Ex. B (PRIFA Requests), Req. 2.d ("Documents . . . that relate to the . . . Flow of Funds."); *id.* Ex. C (CCDA Requests), Req. 2(d) ("Communications relating to the flow"); *id.* Ex. D (HTA Requests), Req. 3.g ("records concerning the Flow of Funds for Act 30 and 31 Revenues").

Similarly, for HTA, while the Rule 56(d) Order permits discovery of "documents governing Fund 278" and records "reflecting the flow of funds into and out of Fund 278," Defendants seek all documents and communications "concerning account designations and treatment for the Excise Taxes" including communications concerning the treatment of those revenues in the Commonwealth and HTA financial statements and "auditor workpapers relating thereto." *Compare* Rule 56(d) Order at 11, *with* Motion Ex. A ¶ 4.

4.      There are several broad categories of requested discovery this Court should decline to permit: email communications and audit-related papers and work materials.  First, the Rule 56(d) Order does not contemplate email discovery or even mention communications.  This makes sense because, as this Court already held, these disputes do not turn on what individuals may or may not have said in some email along the line. Tr. of Hearing at 230:22-24 (Mar. 4, 2020) ("No one is arguing ambiguity that's going to be straightened out by some e-mail that somebody sent someplace along the line."); *see also* Order (Mar. 5, 2020) (Case No. 17-3283, ECF No. 12080) (denying motion to compel for email discovery in lift stay proceeding).  Yet, Defendants requested expansive email discovery from multiple separate governmental entities over numerous years— sometimes, decades.  As the Court is well aware, email discovery in other Title III matters that involved much narrower disputes concerning fewer entities took months to complete.  If Judge Swain intended broad email discovery of communications on various issues, the Rule 56(d) Order would have said as much.  As explained below, these materials are neither necessary to inform the topics set forth by the Court nor would the search for them be "limited, targeted, proportional, and efficient."

5.      Defendants' demand for audit-related materials is similarly outside the scope of the Rule 56(d) Order. Judge Swain allowed discovery to explain the "purpose of account designations,

fund codes, and DeptIDs" from PRIFAS, the Commonwealth's accounting system (PRIFA), "documents governing Fund 278" and "[r]ecords reflecting the flow of funds into and out of Fund 278" (HTA). Rule 56(d) Order at 8, 11. The Government Parties are, in fact, searching for policies and procedures relating to the accounting of rum tax and excise tax revenues in PRIFAS (which is where these codes, including Fund 278) are used, searching for fund accounting statements relating to these revenues, and exporting the relevant data from PRIFAS. However, when Defendants expressly requested discovery of audit work papers in their Rule 56(d) Declarations, the Court declined to allow it. *Compare* HTA Declaration Case No. 20-00005, ECF No. 97 at 20, *with* Rule 56(d) Order at 7-8, 11. With good reason: working papers from an auditor or government employee will not be probative of the meaning of the statutes and bond documents at the core of these disputes. *See, e.g.*, *In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2007 WL 680763, at *4–5 (Bankr. S.D.N.Y. Mar. 1, 2007) ("[T]he manner in which . . . accountants treat[] transactions is not determinative" of "dominion and ownership."); FOMB Opp. to PRIFA Declaration ¶ 3, ECF No. 90; FOMB Opp. to CCDA Declaration ¶ 2, Case No. 20-00004, ECF No. 85; FOMB Opp. to HTA Declaration ¶ 3, Case No. 20-00005, ECF No. 104.

6.      Finally, this Court should reject Defendants' proposed order, which raises discovery disputes that were not discussed by the parties in their conferrals and are not even the subject of their Motion. *United States v. Vend Direct, Inc.*, No. 06-cv-02423-MSK-MEH, 2007 WL 2175026, at *2 (D. Colo. July 26, 2007) (stating that where the provisions of a proposed order go beyond what was argued in the underlying motion, the "permissibility of [the] provisions is not evident," and ordering the plaintiff to "[m]odify the proposed [order] to comport with the arguments presented"). For example, the proposed order demands for the first time a comprehensive inventory of multiple entities' accounting systems and their reporting capabilities.

4

7.      Judge Swain's directive that discovery be "limited, targeted, proportional and efficient," Rule 56(d) Order at 6, means what it says.  This Court should direct the parties to continue with their ongoing discovery efforts consistent with the instructions in the Rule 56(d) Order and deny the Movants' request for email communications, audit-related work papers, and matters beyond the scope of the Rule 56(d) Order.

### FACTUAL BACKGROUND AND PRIOR DOCUMENT PRODUCTIONS

8.      In connection with the Lift Stay Motions, the Government Parties produced over 8,000 documents totaling over 99,000 pages.  While the Government Parties do not contend that the discovery on the Lift Stay Motions satisfies the Rule 56(d) Order, the Rule 56(d) Order itself recognized overlap and expressly advised that "it is expected that the discovery authorized herein will not duplicate the discovery conducted in connection with" the Lift Stay Motions.  Rule 56(d) Order at 6, 7, 9, 11.  As shown in the chart below, the overlap, while not complete, is significant:

| Rule 56(d) Order Topic | Produced in Lift Stay Discovery |
| --- | --- |
| *PRIFA* ||
| **(i)** All documents governing the PRIFA bonds, including all versions of the Trust Agreement and any supplements thereto in effect during the relevant period, as well as inquiries tailored to addressing the seeming discrepancies identified in paragraphs 24-29 of the PRIFA Declaration, and documents identifying the signatories to and/or those bound by such agreements; | • Bound volume of PRIFA 2005 A, B, and C Series bond closing documents <br> • Original Trust Agreement dated October 1, 1988 |
| **(ii)** All documents governing the flow of Rum Tax Remittances from January 1, 2014, to present, including all versions of the Lockbox Agreement and agreements governing all accounts into or through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such | • Lockbox Agreement <br> • Bound volume of PRIFA 2005 A, B, and C Series bond closing documents <br> • Multiple contracts with rum producers <br> • Summary document explaining flow of funds from Jan. 2014 through March 2020 <br> • All available bank account statements from Jan. 2014 to February 2020, and account opening materials for the |

5

| Rule 56(d) Order Topic | Produced in Lift Stay Discovery |
|---|---|
| agreements; | following accounts, identified as part of the rum tax flow of funds: <br> • BPPR -9458 <br> • BPPR -2882 <br> • Citibank -9028 <br> • GDB -0006 <br> • GDB -0704 <br> • GDB -1891 <br> • GDB -6048 <br> • US Bank -0002 <br><br> • Executive Orders governing use of Rum Tax Remittances (publicly available) <br> • Certified Fiscal Plans governing use of Rum Tax Remittances (publicly available) <br> • Budgets governing use of Rum Tax Remittances (publicly available) |
| **(iii)** Resolutions related to the Bond Documents adopted by the Commonwealth or by PRIFA; | • Bound volume of PRIFA 2005 A, B, and C Series bond closing documents, which include Resolution No. 05-17 and Resolution No. 8386 |
| **(iv)** Discovery identifying the nature and location of the Infrastructure Fund and the restrictions placed upon moneys therein; | • 30(b)(6) deposition testimony on behalf of the Commonwealth and PRIFA regarding the identity of the Infrastructure Fund <br> • Summary document explaining flow of the first $117 million in Rum Tax Remittances required to be placed in the Infrastructure Fund funds from Jan. 2014 to March 2020 <br> • All available bank account statements from Jan. 2014 to February 2020, and account opening materials for the following accounts, identified as part of the flow of funds for the first $117 million of Rum Tax Remittances required to be placed in the Infrastructure Fund: <br> • BPPR -9458 <br> • BPPR -2882 <br> • Citibank -9028 <br> • GDB -0006 <br> • GDB -0704 |

| **Rule 56(d) Order Topic** | **Produced in Lift Stay Discovery** |
|---|---|
| | <ul><li>GDB -1891</li><li>GDB -6048</li><li>US Bank -0002</li></ul> |
| **(v)** Discovery relating to the accounting treatment of Rum Tax Remittances in general, including the use and purpose of account designations, fund codes, and DeptIDs; | <ul><li>All physical vouchers and transfer orders that could be located in Treasury records</li><li>Summary revenue reporting</li><li>Treasury's Regulation 49 (detailed explanation of all of the designations used by Treasury in its accounting system to identify legislative appropriations)</li><li>Workbook identifying the possible codes for various fields in PRIFAS</li></ul> |
| **(vi)** A comprehensive set of transmittal information for the exemplars of transfers and/or deposits of Rum Tax Remittances between the various bank accounts through which Rum Tax Remittances have historically flowed, as authorized by the March Orders. If a comprehensive set is not available for the exemplars previously identified by the parties, the parties shall meet and confer to identify additional exemplars; and | <ul><li>All physical vouchers and transfer orders that could be located in Treasury records</li><li>All cover over letters received from the U.S. Treasury in connection with the receipt of Rum Tax remittances that could be located in Treasury records.</li><li>All direction letters from the Lockbox Bank received in connection with the transfer of Rum Tax Remittances from the Lockbox Account to the TSA</li></ul> |
| **(vii)** Policies and procedures related to the flow of Rum Tax Remittances pursuant to the Bond Documents, Lockbox Agreement, Infrastructure Fund, and Enabling Act | <ul><li>PRIFA and Commonwealth budget memoranda;</li><li>Circular Letter No. 1300, detailing the PRIFAS voucher process.</li></ul> |
| *CCDA* | |
| **(i)** All documents governing the CCDA bonds, including all versions of the Assignment Agreement, the Pledge Agreement, the Trust Agreement, and the Supplemental Trust Agreement (collectively the "Bond Documents"), and documents identifying the signatories to and/or those bound by the Bond Documents; | <ul><li>Bound volume of CCDA Hotel Occupancy Tax Revenue Bonds Series A closing documents</li></ul> |
| **(ii)** All documents governing the flow of the Hotel Occupancy Tax from 2006 to the present, including all versions of documents governing the Transfer Account, Surplus Account and any other accounts into or | <ul><li>Summary of room tax flow of funds</li><li>Bank account statement and account opening materials for the following accounts, which are in the flow of</li></ul> |

7

| Rule 56(d) Order Topic | Produced in Lift Stay Discovery |
|---|---|
| through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements; | funds for room tax revenues from Jan. 2015 to Feb. 2020:<br>• GDB -9758<br>• GDB -9947<br>• GDB -0006<br>• GDB -6048<br>• Scotiabank -5142<br>• Scotiabank -5144<br>• Scotiabank -5138<br>• BPPR -6545<br>• BPPR -2306<br>• BPPR -9458<br>• FirstBank -2984<br>• FirstBank -3961 and<br>• BNY-Mellon Trustee Accounts<br>• Executive Orders governing use of Hotel Taxes (publicly available) |
| **(iii)** Resolutions of Commonwealth, Tourism Company, CCDA, and/or GDB related to the Bond Documents; | • Bound volume of CCDA bond closing documents |
| **(iv)** Account opening documents for GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -4958, FirstBank -2984, and FirstBank -3961; | • Account opening statements for:<br>• Scotiabank -5142<br>• Scotiabank -5144<br>• Scotiabank -5138<br>• BPPR -6545<br>• BPPR -2306<br>• BPPR -9458[5]<br>• FirstBank -2984<br>• FirstBank -3961 |
| **(v)** Policies and procedures related to the flow of Hotel Taxes pursuant to the Bond Documents and Hotel Occupancy Tax Act; | • CCDA and Commonwealth budget memoranda<br>• Executive Orders governing use of Hotel Taxes (publicly available) |
| **(vi)** Discovery identifying and explaining the purpose of transfers of Hotel Taxes from accounts identified in (iv) above to the Commonwealth; and | • Certain transfers were identified in our 3/13/2020 meet and confer letter |
| **(vii)** Discovery identifying the recipient of transfers identified in ¶ 40 of the CCDA Declaration. The parties shall meet and confer | • The bank account statements referenced in topic (ii) |

[5] As acknowledged in Defendants' amended CCDA subpoena to AAFAF, the BPPR -4958 referenced in the Rule 56(d) Order is a scrivener's error.

| Rule 56(d) Order Topic | Produced in Lift Stay Discovery |
|---|---|
| if CCDA identifies other significant transfers for which no recipient has been identified | <ul><li>Spreadsheets which detail 2015-2020 wire transfer histories from the Tourism Company's Scotiabank accounts</li><li>Resolution of Act 26 Committee re $15m one-time transfer from Tourism account</li></ul> |
| *HTA* | |
| **(i)** All documents governing the HTA bonds, including all versions of the Bond Resolutions, and documents identifying the signatories to and/or those bound by the Bond Resolutions; | <ul><li>The bound volumes of closing documents for the following HTA Bond issuances:<ul><li>Transportation Revenue Bonds Series A</li><li>Highway Revenue Refunding Bonds Series AA</li><li>Transportation Revenue Bonds Series G</li><li>Transportation Revenue Refunding Bonds Series H</li><li>Subordinated Transportation Revenue Bonds Series 2003</li><li>Transportation Revenue Refunding Bonds Series F</li><li>Transportation Revenue Bonds Series D</li><li>Transportation Revenue Refunding Bonds Series E</li><li>Transportation Revenue Refunding Bonds Series I</li><li>Transportation Revenue Bonds Series J</li><li>Transportation Revenue Bonds Series M</li><li>Transportation Revenue Refunding Bonds Series N</li><li>Highway Revenue Refunding Bonds Series CC</li><li>Revenue Bonds, Series Y</li><li>Revenue Bonds, Series Z</li><li>Subordinated Transportation Revenue Bonds Series 1998</li><li>Transportation Revenue Refunding Bonds Series L</li></ul></li><li>1968 Resolution</li></ul> |

| Rule 56(d) Order Topic | Produced in Lift Stay Discovery |
|---|---|
| | • 1998 Resolution |
| **(ii)** All documents governing the flow of Excise Taxes and HTA Pledged Revenues following their collection by the Commonwealth, including all documents governing Fund 278 and its sub-accounts, and any other accounts into or through which such funds are or have been transferred, including without limitation contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements thereto, and identifying the signatories to and/or those bound by such agreements; | • 1968 Resolution<br>• 1998 Resolution<br>• Summary reporting for revenues that have the "Fund 278" accounting designation, which include revenues that were used to repay bonds insured by the Monolines;<br>• All vouchers and transfer orders related to transfers of Excise Taxes that could be located in Treasury's records<br>• Executive Orders governing use of the excise tax proceeds and toll revenues historically used to pay debt service (publicly available)<br>• Certified Fiscal Plans governing use of the excise tax proceeds and toll revenues historically used to pay debt service (publicly available)<br>• Budgets governing use of the excise tax proceeds and toll revenues historically used to pay debt service (publicly available) |
| **(iii)** Records reflecting the flow of funds into and out of Fund 278 and its subaccounts, and any other accounts into which Excise Taxes and HTA Pledged Revenues have been deposited from January 2014 to the present; | • Treasury's Regulation 49, which provides a detailed explanation of all of the designations used by Treasury in its accounting system;<br>• Workbook identifying the possible codes for various fields in PRIFAS;<br>• Flow of funds document summarizing flow of excise tax revenues (other than Act 30/31 revenues pledge to GDB);<br>• All available bank account statements from January 2015 to January 2020 and account opening materials for the following accounts identified as part of the excise tax flow of funds:<br>  • Oriental Bank -9874<br>  • GDB -6048<br>  • GDB -0006<br>  • GDB -4276<br>  • GDB -3466<br>  • GDB -9839 |

| **Rule 56(d) Order Topic** | **Produced in Lift Stay Discovery** |
|---|---|
|  | <ul><li>BPPR -5191</li><li>BPPR -9458</li><li>BPPR -9857</li><li>BPPR -0303</li><li>BPPR -6438</li><li>BPPR -6411</li><li>BPPR -5116</li></ul> |
| **(iv)** Documents concerning the Treasury's role in the approval of transfers to HTA and the extent to which excise tax revenues were or have been made available to HTA; | <ul><li>All located vouchers and transmittal letters</li><li>Circular letter no. 1300, which details the voucher process</li></ul> |
| **(v)** Policies and procedures related to the flow of Excise Taxes and HTA Pledged Revenues pursuant to the Bond Documents | <ul><li>Treasury's Regulation 49</li><li>A workbook identifying the possible codes for various fields in PRIFAS</li><li>Budget Resolutions</li></ul> |

Any analysis of the sufficiency of the Government Parties' additional collection efforts should take into account these substantial efforts already undertaken on similar issues.

## ARGUMENT

## I.   BROAD EMAIL DISCOVERY IS INCONSISTENT WITH THE CLEAR LIMITS SET IN THE RULE 56(D) ORDER.

9.     Defendants purport to seek limited, targeted discovery on a few key issues: the Infrastructure Fund (PRIFA), the Transfer Account (CCDA), and Fund 278 (HTA).  *See generally* Motion ¶¶ 17-63.  But their proposed order proves otherwise.  For PRIFA, Defendants seek email discovery not only identifying the nature of the Infrastructure Fund, but also a search for any email communications "concerning the flow and accounting treatment of Rum Tax Remittances" including six different subtopics.  Motion Ex. A ¶ 2.b (Proposed Order).  For CCDA, Defendants seek email discovery for communications identifying the pledge account, which they concede is not subject to dispute.  Defendants also seek email communications concerning policies and procedures related to the flow of hotel taxes, *id.* ¶ 3.b, and email communications concerning account-opening documents for nine different accounts, notwithstanding that the Government

Parties already produced the opening materials for eight of them, *id.* ¶ 3.c.  For HTA, Defendants seek emails concerning the flow of excise taxes and Fund 278, *id.* ¶ 4.b, emails concerning accounting designations used for excise taxes, *id.* ¶ 4.c, emails concerning Treasury's role in approving transfers to HTA, *id.* ¶ 4.d, and emails regarding policies and procedures relating to the flow of funds, *id.* ¶ 4.e.

10.     Nothing about this is "limited, targeted, proportional, [or] efficient." *Cf.* Rule 56(d) Order at 6.  Judge Swain was quite clear in delineating the scope of discovery in these proceedings. If the Court intended to allow sweeping email discovery into one-off communications on these topics as Defendants demand, the Court would have specified as much.  And yet, the Rule 56(d) Order does not use the word "communications" once.  *See generally* Rule 56(d) Order.  Instead, the Court authorized discovery "governing" the bonds and the flow of funds thereunder, account opening statements, records "reflecting" the flow of funds into and out of Fund 278, discovery "identifying" the Infrastructure Fund and certain Hotel Tax transfers and their recipients, and policies and procedures.  The Government Parties either have produced or, to be clear, have agreed to produce all such materials they can locate.

11.     Defendants' protestation that they are entitled to emails because billions of dollars are at stake (Motion ¶ 34) is a non-sequitur.  The probative value of one-off email communications on these issues is minimal at best.  As Defendants represented to the First Circuit, Defendants "think that on the face of the statutes and on the face of the bond resolutions, that's all you need." ECF No. 122-1 (Ex. 5 at 9:20-24) (clerk time warning omitted).  Defendants were correct.

12.     This Court recognized as much in connection with the Lift Stay Motions, finding, "[n]o one is arguing ambiguity that's going to be straightened out by some e-mail that somebody sent someplace along the line."  *See* Tr. of Hearing at 230:22-24 (Mar. 4, 2020).  Here, while the

policies and procedures and the accounting code information the Court ordered to be produced may shed light on the official government positions as to how the government understood and operationalized the bond documents, discovery into one-off, informal email communications of rank and file government employees on these issues are not probative.  Accordingly, the burden required to search for these documents is disproportionate.

13.     Defendants contend email discovery is required to show the Commonwealth's subjective motivation for the accounting treatment used or for retaining excise taxes and rum tax revenues from HTA and PRIFA, respectively.  Motion ¶¶ 33, 59 n.14.  Nowhere in the Rule 56(d) Order did Judge Swain authorize discovery into the Commonwealth's subjective state of mind, *see generally* Rule 56(d) Order, despite the fact that Defendants specifically asked for that discovery in their Rule 56(d) Declarations.  HTA Declaration, Case No. 20-00005, ECF No. 97, ¶¶ 28, 49, 63.  The Rule 56(d) Order allowed discovery into the documents governing the flow of funds and related policies and procedures.  As Judge Swain and this Court already held in connection with the Lift Stay Motions, subjective state of mind is not relevant.  *In re Fin. Oversight & Mgt. Bd. for P.R.*, 618 B.R. 619, 636 (D.P.R. 2020) (Swain, J.) ("Regardless of how, as a factual matter, Fund 278 monies were treated, even implicit 'recognition' of authority cannot itself confer authority."); Tr. of Motion to Compel Hearing at 230:19-21 (Mar. 4, 2020) (Dein, Mag. J.) ("[I]t seems to me that state of mind is not an issue.  Individuals' understanding of things is not the issue.").  Of course, to the extent any governing documents or policies and procedures that the Rule 56(d) Order required to be produced reveal subjective motivations, those documents will be provided. Moreover, the statutes, executive orders, and fiscal plans that directed the retention are publicly available.  But email discovery to ascertain individual government employees' states of mind is plainly beyond the scope of what the Rule 56(d) Order allowed.

13

14.     The expense of email discovery, notwithstanding Defendants' halfhearted efforts to narrow the issues, is well-illustrated by two PREPA matters.  Consider the Rule 9019 motion to approve PREPA's RSA, which concerned a discrete set of financing agreements and a settlement agreement at one instrumentality.  AAFAF, PREPA, and the Oversight Board were ordered to expand their original document production to include a review of communications pertaining to negotiations on the RSA (which took place over a period of 14 months) and communications relating to fuel line credit facilities made to PREPA.  Notwithstanding the narrow scope of this undertaking, which was intended to be focused, the expanded effort took several months, and ultimately required the Government Parties' attorneys to review over 160,000 documents.  Here, there are three different issuers, and five different entities involved, and, as the proposed order from Defendants demonstrates, the issues for which email discovery is requested are not as narrow as Defendants claim.  It is entirely foreseeable that the discovery Defendants now seek would be more voluminous, more time-consuming, and more expensive than in the 9019 Motion—which is the antithesis of limited, targeted, and proportional.

15.     Defendants assert that e-mail discovery could be narrowed to just a few custodians, but their proposed order does not do that.  Even if Defendants limited themselves to just two custodians from each entity involved in the bond issuances or the flow of funds (Treasury, GDB, PRIFA, HTA and Tourism), that would be ten custodians.  That figure ignores the complicating factor of turnover of government administrations and personnel, not to mention the privilege review that would have to be undertaken.  Discovery in UTIER's Contracts Clause litigation (Case No. 17-00229) is also instructive.  In December 2019, PREPA agreed to conduct a reasonable email search for communications involving only a few discrete topics regarding the implementation and impact of challenged statutes.  While the subjects appeared narrow at the

outset, given the institutional turnover that had taken place since 2014, and the topics implicated multiple roles within PREPA, the search to capture the relevant information required a review of the files of 24 different custodians.  Completing the review took over 3 months and required a review of approximately 50,000 documents.

16.     This type of broad email discovery is not what the Court contemplated when it allowed "limited, targeted, proportional, and efficient" discovery, Rule 56(d) Order at 6, and entered an order directing production be completed by April 14, 2021.  Order Setting Discovery Schedule, ECF No. 119.

## II.   THE GOVERNMENT PARTIES HAVE AGREED TO SEARCH FOR AND PROVIDE ADDITIONAL MATERIALS TO COMPLY WITH THE RULE 56(d) ORDER.

17.     In an attempt to justify email discovery, Defendants suggest the Government Parties refused altogether to provide discovery required under the Rule 56(d) Order, and production of emails and auditor communications and workpapers are required to address the claimed deficiencies in what the Government Parties produced or agreed to search for.  *See* Motion ¶¶ 18-63.  For the reasons explained below, in connection with each of the issues raised by Defendants, the Government Parties' Lift Stay productions and production agreements already known to Defendants in these matters collectively more than satisfy the Rule 56(d) Order, and the Court should reject Defendants' attempt to compel discovery not reasonably tethered to the Court's Rule 56(d) Order.

### A.   The Government Parties Agreed to Provide Discovery Regarding the Infrastructure Fund.

18.     Defendants demand discovery of emails and audit work papers because they say the Government Parties have "never offered a coherent or cohesive explanation of what it thinks the Infrastructure Fund is," that the Oversight Board's interrogatory response was "cryptic" and

that the Government Parties did not provide "any meaningful discovery" on the identity of the Infrastructure Fund.  Motion ¶¶ 22-23, 28.  Defendants' claims are wrong.

19.     Defendants received significant, meaningful discovery regarding the Infrastructure Fund—they just do not like what it shows.  In order to identify the Infrastructure Fund for Defendants in connection with the PRIFA Lift Stay Motion, the Government Parties consulted with personnel from AAFAF, Ankura Consulting Group (a Commonwealth restructuring advisor that includes former GDB officials), Conway MacKenzie (a longstanding Commonwealth consultant on cash flow issues), PRIFA (including PRIFA's Chief Financial Officer and former Chief Financial Officer), and Treasury (including Treasury's Assistant Secretary).  Through these efforts, AAFAF determined that the term "Infrastructure Fund" was understood to refer to the first $117 million of rum tax revenues, which the Commonwealth historically allocated to PRIFA, consistent with pre-PROMESA budget resolutions and PRIFA's Enabling Act.  However, no bank account named the "Infrastructure Fund" appears to ever have existed.  The Government Parties conveyed this information to Defendants in writing, and PRIFA and Treasury provided 30(b)(6) deposition testimony on this issue.  Apr. 7, 2020 Ltr. at 14 (ECF No. 85-1); Dep. of T. Ahlberg at 309:20-22 ("[T]here's no specific bank account that is designated or known as the Infrastructure Fund.").

20.     Separately, the Government Parties traced the flow of funds of the first $117 million of rum tax revenues that the PRIFA Enabling Act directed be transferred to PRIFA.  *See* 3 L.P.R.A. § 1914.  Specifically, the Government Parties: (1) provided bank account statements and account opening documents for each deposit account that received those funds from 2014 to 2020, (2) provided vouchers and transfer letters corresponding to the transfer of those amounts between deposit accounts, and (3) provided Defendants with a summary diagram prepared by the

Commonwealth's financial advisors to facilitate their understanding of those materials and streamline deposition testimony. The Government Parties also produced audited financial statements and budget-related materials for both the Commonwealth and PRIFA.

21. Based on a review of these documents and the text of the PRIFA Enabling Act, the Government Parties came to the conclusion that the most logical answer to the question "what is the Infrastructure Fund?" is that the Infrastructure Fund historically existed across the two specific bank accounts that received the first $117 of rum tax revenues allocated to PRIFA: (1) an account called "AFI[6]-Bonds Debt Service" held at and in the name of GDB (PRIFA's fiscal agent at the time) that received $113 million and transferred those proceeds to the bond trustee; and (2) an account called "fondo general" (general fund) held at GDB in the name of PRIFA that received the remaining $4 million. Tr. of Prelim Hearing at 121:21-122:16 (June 4, 2020). Defendants have all of the documents and information the Government Parties relied upon to come to that conclusion. That Defendants disagree with this conclusion does not mean the Government Parties never provided a "coherent" explanation or "meaningful" discovery. *Cf.* Motion ¶¶ 22, 28. The mere fact that the Court allowed for limited, non-overlapping, additional discovery on this and other topics, does not open the floodgates to burdensome email discovery.

22. In this regard, Defendants contend that they are entitled to additional discovery of emails and auditor work papers based on mischaracterizations of the Commonwealth's financial statements. *Id.* ¶¶ 23-25. Defendants contend the Commonwealth's 2014 audited financial statement defines the Infrastructure Fund and suggest the presence of the definition in the *Commonwealth's* financial statement means the Infrastructure Fund is an accounting entity on the Commonwealth's books and records. *Id.* ¶¶ 21 n.4, 23 n.6. Based on this interpretation,

---

[6] AFI is PRIFA's Spanish acronym.

Defendants characterize the Board's interrogatory response as "cryptic" and insist emails and auditor workpapers must have information supporting their view that the Infrastructure Fund is an accounting entity that continues to exist within the Commonwealth (although they do not explain why this would be relevant to their defenses or proofs of claim). *Id.* ¶¶ 24-26.

23.       But Defendants' position is premised on the erroneous assumption that the financial statements represent the Infrastructure Fund is an entity within the Commonwealth when the statements say no such thing. As an initial matter, the 2014 Commonwealth Financial Statement never mentions the "Infrastructure Fund." The page Defendants rely on from the Commonwealth 2014 Financial Statement refers to the "Puerto Rico Infrastructure Financing Authority's Special Revenue Fund." Commonwealth 2014 Financial Statement[7] at 323. But even assuming PRIFA's Special Revenue Fund were the Infrastructure Fund, its mere mention in the Commonwealth financial statement does not make the Infrastructure Fund part of the TSA or otherwise property of the Commonwealth. Indeed, the statement confirms the fund is *not* property of the Commonwealth. The financial statement confirms this fund was included in the Commonwealth's financial statement not because the fund is property of the Commonwealth, but because PRIFA is a "blended component unit," which the statement explains are "entities that, while *legally separate from the Commonwealth*, meet the blending criteria under GASB to be reported as part of the Primary Government." *Id.* at 13, 54 (emphasis added). Defendants say the Government Parties have not produced any "meaningful discovery" on the identity of the Infrastructure Fund and have "stripped [Defendants] of their rights to obtain information" because they have not agreed to search for every email that may have mentioned the Infrastructure Fund in the hopes some one-off

---

[7] *Available at*
http://www.hacienda.gobierno.pr/sites/default/files/Inversionistas/commonwealth_of_puerto_rico_fy_2014_audited_financial_statements.pdf.

statement in an email could contradict both the cash flow documents and testimony of the Commonwealth and PRIFA. *Cf.* Motion ¶ 28. The parties' dispute as to the identity of the Infrastructure Fund should be resolved by following the money (exactly as has been done and will continue to be done), not pouring over one-off email communications between government personnel and/or auditors. *See* Tr. of Hearing at 230:22-24 (Mar. 4, 2020) (meaning of statutes and bond documents is not "going to be straightened out by some e-mail that somebody sent someplace along the line").

     **B.**    **The Government Parties Have Agreed to Search for Documents Sufficient to Show the "Use and Purpose" of the Commonwealth's Accounting Designations for Rum Tax Remittances.**

24.    The Rule 56(d) Order identified "the accounting treatment of Rum Tax Remittances in general, including the use and purpose of account designations, fund codes, and DeptIDs" as a topic for discovery on the PRIFA summary judgment motion. Rule 56(d) Order at 8. Defendants' contention that the Government Parties refused to provide anything on this topic beyond an export from PRIFAS, Treasury's accounting system, is incorrect. *Cf.* Motion ¶ 30.

25.    In connection with the PRIFA Lift Stay Motion, the Government Parties produced Treasury Regulation 49, which explains the designations used in PRIFAS, and all of the vouchers Treasury could locate in its records for transfers of the first $117 million of Rum Tax Remittances from the Commonwealth. These vouchers show the account designations, fund codes and DeptIDs used for those revenues. *See* Motion Ex. I at 3. Because vouchers were not located for every transaction from 2014 to the present, Government Parties are working with Treasury to export data from PRIFAS on transactions involving revenue code R4220, which is used for Rum Tax Remittances, since 2014. *See* Rule 56(d) Order at 8 (vi) (allowing discovery of a "comprehensive

set of transmittal information for the exemplars").[8]

26.    But that is not all the Government Parties agreed to produce.  The Government

Parties also agreed to search for any policies and procedures relating to accounting treatment of

the Rum Tax Remittances, including memoranda, instructions or other similar documents, and to

investigate whether Treasury has GASB 34 or GASB 54 fund account statements pertaining to the

Rum Tax Remittances as Defendants requested in meet and confer.  And, Defendants know this

information is being searched for, since it was discussed precisely in the meet and confer.

27.    These materials are more than sufficient to evidence the accounting treatment of

Rum Tax Remittances and the use and purpose of accounting designations as the Rule 56(d) Order

contemplated.  Defendants' speculation that these materials may not be sufficient to allow them to

map Treasury's accounting codes to the Commonwealth's audited financial reporting (Motion ¶¶

31-33) is no justification for unbridled broad discovery of all "documents and communications

concerning" the purpose and use of account designations, fund codes, and DeptIDs as Defendants'

demand (Motion Ex. A ¶ 2.b), including email and auditor work papers.

### C.    The Government Parties Agreed to Provide Discovery Identifying the Accounts Referenced in the CCDA Bond Documents.

28.    In connection with the parties' disputes regarding the identity of the Transfer

Account and the Surplus Account under the CCDA Bond documents, Defendants claim they are

entitled to discovery into "communications concerning the CCDA flow of funds . . . or any policies

---

[8] Defendants' accusation that AAFAF was untruthful in Lift Stay Discovery regarding PRIFAS's capabilities to produce information is incorrect.  *Cf.*  Motion ¶ 30, n.8.  As an initial matter, accounting discovery was beyond the scope of what was ordered in the Lift Stay Motions, and AAFAF never agreed to provide it.  After AAFAF's document production was complete, Defendants requested an export from PRIFAS of all vouchers relating to the first $117 million of Rum Tax Remittances or summary data recorded from those vouchers.  AAFAF relayed the information it received from Treasury: that the voucher images like those AAFAF produced are not stored in PRIFAS.  AAFAF specifically disclosed to Defendants that PRIFAS was capable of performing a query for transaction-related data associated with Revenue Code R4220 (which is not limited to the first $117 million), but did not agree to undertake the manual effort required to prepare a shareable file.  *See* Case No. 20-00004, ECF No. 111-4 at 3-4.  Following the Rule 56(d) Order, the Government Parties have agreed to, and are in the process of undergoing, precisely those efforts.

and procedures related thereto."  Motion ¶¶ 38−40.  Preliminarily, the Government Parties agreed to search for documents reflecting policies and procedures related to the flow of funds.  A production of all communications *concerning* the CCDA flow of funds or *concerning* these accounts, however, is beyond the scope of the Rule 56(d) Order.  *Compare id.* ¶ 38, *with id.* Ex. A ¶ 3.

29.    The Rule 56(d) Order stated that documents *governing* the flow of Occupancy Tax from 2006 to the present and *governing* the Transfer Account and Surplus Account are appropriate topics for discovery, along with the account opening documents for GDB -9758, Scotiabank -5142, Scotiabank -5144, Scotiabank -5138, BPPR -6545, BPPR -2306, BPPR -9458, FirstBank -2984 and FirstBank -3961.  Rule 56(d) Order at 9.  In connection with discovery on the CCDA Lift Stay Motion, the Government Parties produced the bound volume of CCDA bond closing documents and documents sufficient to evidence the flow of funds from 2015-2020, including bank account statements for all of the above-listed accounts and transfer orders for transfers between these accounts.  The Government Parties also prepared a flowchart summary of the flow of funds to inform Defendants' review of these documents.  Moreover, the Government Parties produced all of the account opening statements for the above-listed accounts that were available, after conferring with Tourism and the respective banks.  The only account-opening document of the accounts listed above that could not be located was for GDB -9758.

30.    Defendants contend that email discovery from two key custodians, Gustavo González Serrano, the Chief Financial Officer of the Tourism Company, and Brett Howard, a Conway MacKenzie consultant who works closely with Tourism on cash flow issues, "will shed light" on the identity of the Transfer Account.  Motion ¶¶ 38-40.  But statements in emails will not be instructive relative to the actual cash flow.  In connection with the Lift Stay Motion, the

Government Parties consulted with Mr. González Serrano and Mr. Howard, analyzed the flow of funds of Hotel Taxes against the text of the bond documents and determined that GDB -9758 must be the Transfer Account because it is the account that was funding the account all parties agree is the Pledge Account.  Sur-Reply in CCDA Lift Stay Proceeding, Case No. 17-03283, ECF No. 13160, ¶ 3.  The flow of funds and its implications will not change if there is a stray email that suggests to the contrary—and the Rule 56(d) Order did not contemplate such a search would be required.

31.     That said, in response to the Rule 56(d) Order, the Government Parties are working with Mr. González Serrano and Mr. Howard at Tourism, searching GDB's archived records, and working with third party banks to collect all available materials to allow them to trace the Hotel Tax flow of funds as close to 2006 (the date of the bond issuance) as is possible with available records.  This discovery will demonstrate which account is the Transfer Account by showing how the flow of funds changed between the bond issuance and the 2015 start of Lift Stay Discovery.

32.     These are targeted, proportional, and efficient efforts to develop the record on this issue.  Defendants' contention that the Tourism Company should be required to engage in email searches for informal correspondence that may refer to the Transfer Account is beyond the scope of what the Rule 56(d) Order contemplated.  That Defendants would prefer the Transfer Account to be an initial collection account at Scotiabank that continues to receive all Hotel Tax proceeds rather than a GDB account that no longer exists is not justification for burdensome email discovery.  Indeed, Defendants do not suggest anywhere that they would concede they are wrong if the Government Parties were to produce a one-off email from a GDB or Tourism employee referring to GDB -9758 as the Transfer Account.

D.     **The Government Parties Have Agreed to Provide Documents Governing the HTA Bonds.**

33.     The Motion suggests that the Government Parties are refusing to produce documents governing the HTA Bonds because they refused to adopt the legal conclusion embedded into Defendants' definition of "Bond Documents" as including documents like the official statements that are not governing documents. *Cf.* Motion ¶¶ 42-43. Defendants know full well that the Government Parties have already produced the bound volumes of closing documents on the HTA bonds, along with the governing 1968 and 1998 resolutions, and have agreed to review the archived HTA-related records of GDB, HTA's fiscal agent at the time the bonds were issued, for additional documents governing the HTA Bonds.

34.     The Motion also suggests that the Government Parties are refusing to provide discovery regarding the Executive Director's authority to execute the 2002 Security Agreement. Motion ¶ 44 & n.9. But the Government Parties agreed to search for any documents delineating the scope of the Executive Director's authority to enter into a security agreement—and Defendants are well aware of this as well. Ex. 1, Mar. 4, 2021 Ltr. at 13-14.

35.     Defendants' contention that email discovery is required on this point is meritless. The Rule 56(d) Order clearly allowed discovery into "all documents governing the HTA bonds," (i.e., documents of operative legal significance) not email communications between government employees concerning the bonds (which cannot "govern" the HTA bonds). *See* Motion ¶ 43. Moreover, Defendants' contention that they need email discovery to "develop the record" as to the terms of the bonds is incorrect. Public documents, not private communications, govern the terms of the bonds. The idea that Defendants insured billions of dollars' worth of bonds without receiving the documents governing those bonds or the right to access them from the trustee is not credible. Nor is the assertion that undisclosed email communications to which they were not a

party could "govern" bondholders' legal rights.  Neither is the suggestion that the scope of
Defendants' claimed security interest under those documents would be determined by some one-
off email rather than the operative legal documents.  ECF No. 122-1 (Ex. 5 at 9:20-24) ("We think
that on the face of the statutes and on the face of the bond resolutions, that's all you need.") (clerk
time warning omitted).

> ### E.   The Government Parties Have Agreed to Provide the Accounting-Related
> ### Discovery Contemplated by the Rule 56(d) Order.

36.   The Rule 56(d) Order authorized discovery in connection with "documents
governing Fund 278 and its sub-accounts, and any other accounts into or thorough which such
funds are or have been transferred," "[r]ecords reflecting the flow of funds into and out of Fund
278 and its subaccounts and any other accounts into which Excise Taxes and HTA Pledged
Revenues have been deposited from January 2014 to the present"; and "[p]olicies and procedures
related to the Flow of Excise Taxes and HTA Pledged Revenues pursuant to the Bond Documents."
Rule 56(d) Order at 11.

37.   Defendants assert that the Government Parties are refusing to produce discovery
regarding fund accounting, specifically with respect to Fund 278.  Motion ¶¶ 45-60.  Defendants'
suggestion that all the Government Parties have agreed to provide is a "PRIFAS printout" and
bank account statements is incorrect.  *Cf. id.* ¶¶ 50, 56.  In response to the Court's directing
discovery of "[r]ecords reflecting the flow of funds into and out of Fund 278" the Government
Parties have agreed to work with Treasury to prepare an export from PRIFAS, the system that
holds the Commonwealth's accounting transaction records pertaining to Fund 278, of all
transactions involving Fund 278 from 2014 to the present.  In response to Defendants' meet and
confer request, the Government Parties also agreed to investigate whether the government has
GASB 34 or GASB 54 fund account statements pertaining to the Excise Taxes as Defendants

requested in meet and confer. Ex. 1, Mar. 4, 2021 Ltr. at 3. The Government Parties have agreed

to search for any policies and procedures, including memoranda, instructions, or similar

documents, relating to Fund 278. *Id.*

38.     Requiring the Government Parties to produce all documents and communications

"concerning account designations and treatment for the Excise Taxes, HTA Pledged Revenues,

and Fund 278," including email and auditor work papers, to satisfy the Court's directive to produce

discovery regarding documents "governing" the flow of funds and "records reflecting" the flow of

funds into and out of Fund 278 is not consistent with the limits Judge Swain imposed. *See* Rule

56(d) Order at 11.

### F.     The Government Parties Have Agreed to Provide Discovery into the HTA Voucher Process.

39.     The Rule 56(d) Order allowed discovery into "[d]ocuments concerning Treasury's

role in the approval of transfers to HTA and the extent to which excise tax revenues were or have

been made available to HTA." Rule 56(d) Order at 11. The Government Parties have already

produced the vouchers used to effect these transfers. *See e.g.*, Motion Ex. I at 1. The Government

Parties also produced the Treasury circular letter governing the use of those voucher forms.

Moreover, the Government Parties have agreed to search for policies, procedures, and other similar

documents relating to the flow of Excise Taxes, including (to the extent they exist) any policies

governing the voucher process beyond the circular letter.

40.     Defendants seek all documents and communications, including emails, concerning

Treasury's role in the approval of transfers to HTA. Motion Ex. A ¶ 4.b. Defendants' demand for

comprehensive email discovery into communications regarding these transfers, notwithstanding

Judge Swain's ruling that the core documents already produced in Lift Stay Discovery disproved

Defendants' theory that HTA exercised plenary control over Fund 278, is improper. *Cf.*

Preliminary Lift Stay Order, Case No. 17-3283, ECF No. 13541, at 28. If Defendants have questions about the voucher process that cannot be answered by reviewing the circular letter and any related policies and procedures (to the extent they exist), then they can propound an interrogatory or ask deposition questions seeking more clarity. Requiring a search for (and review of) any emails mentioning the vouchers is not consistent with the Rule 56(d) Order's requirement that discovery be efficient.

### III.    THIS COURT SHOULD REJECT DEFENDANTS' OTHER REQUESTS MADE IN THEIR PROPOSED ORDER.

41.    Defendants slip additional requests into their proposed order that are not even tangentially discussed in their Motion nor subject to any meet and confer. These requests should be rejected.

42.    First, Defendants seek an order requiring the Government Parties to submit a custodian and search term proposal to locate the wide variety of communications they request within two business days of entry of the order. *See* Motion Ex. A ¶ 5. For the reasons discussed above, the request for communications should be denied, which would make this request moot. But if the Court is inclined to order any form of e-mail discovery (which, as noted, is beyond the limited discovery permitted by the Rule 56(d) Order), two business days is not sufficient time to prepare a proposed protocol. As explained above, Defendants' requests implicate multiple personnel across several different entities. It would take more than two business days to identify who the custodians should be and to work with IT personnel across multiple entities to determine to what extent email archives are available and for what time period. Indeed, this is an independent reason why email searches are without merit here, and certainly not targeted or efficient.

43.    Second, Defendants seek an order requiring the Government Parties to produce a list of all existing accounting or reporting systems from the Commonwealth, HTA, "CCDA-

26

Related Instrumentalities" (presumably CCDA and the Tourism Company) other than PRIFAS, and a comprehensive inventory of all "reports, ledgers, statements, schedules, reconciliations, compilations, charts of accounts, policies, procedures, controls or other tabulating, summarizing, or governing documents that may be produced" from these systems by March 19, 2021.  This is well beyond the scope of what the Rule 56(d) Order allowed.  For instance, the Rule 56(d) Order did not allow discovery into the accounting treatment of Hotel Taxes, nor did Defendants request any accounting-related discovery in connection with the CCDA bonds.  *See generally* Rule 56(d) Order; CCDA Declaration, Case No. 20-00004, ECF No. 80.  Defendants offer no explanation as to how they could possibly be entitled to such expansive discovery from the Tourism Company (which managed the flow of Hotel Taxes from collection to debt service payment), let alone CCDA, which never received Hotel Tax Revenues used for debt service payments.

44.     Similarly, the flow of funds materials the Government Parties produced for PRIFA demonstrate that the portion of the first $117 million of Rum Tax Revenues used for debt service never passed through accounts held by PRIFA—it went to an account held by GDB as PRIFA's fiscal agent.  *See* PRIFA Flow of Funds Summary at Case No. 17-3283, ECF No. 12998-12.  There is no reason PRIFA's accounting practices could possibly be at issue.  The same is true for HTA. Defendants' arguments make clear their contention is that the Commonwealth purportedly segregated revenues into Fund 278 *before* transferring them to HTA.  Motion ¶ 45.  They have articulated no reason as to how HTA's accounting practices are within the bounds of the Rule 56(d) Order.  *See generally* Motion.  Finally, with respect to the Commonwealth, the Government Parties have given 30(b)(6) deposition testimony on behalf of the Commonwealth that PRIFAS is the accounting system of record, Ahlberg Dep. 88:2-3, and have agreed to work with Treasury to determine what data can be exported from that system.  The Government Parties will produce the

export when it is ready and will meet and confer with Defendants regarding any follow up questions they have about it. There is no basis to require Treasury personnel to prepare a list of every type of report that could conceivably be generated.

45.     Third, the proposed order includes essentially a savings clause that would allow Defendants to bring seriatim motions on issues they chose not to raise in their Motion. Relatedly, the proposed order seeks to set a March 30, 2021 deadline for a status report on open discovery issues. These paragraphs are clearly intended to inject delay (and further motion practice) in the discovery process and should not be adopted.

## CONCLUSION

46.     For the foregoing reasons, the Motion should be denied.

*[Remainder of page intentionally left blank.]*

Dated: March 10, 2021
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Margaret Dale*
Martin J. Bienenstock
Stephen L. Ratner
Timothy W. Mungovan
Paul V. Possinger
Margaret A. Dale
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:    (310) 557-2900
Fax:    (310) 557-2193
Email: mfirestein@proskauer.com
       lrappaport@proskauer.com
*Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Debtors*

*/s/ Hermann D. Bauer*
Hermann D. Bauer (USDC No. 215205)
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
*Co-Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Debtors*

*/s/ Elizabeth L. McKeen*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Tel: (949) 823-6900
Fax: (949) 823-6994

*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*/s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

MARINI PIETRANTONI MUÑIZ LLC
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*