# EXHIBIT 1

March 4, 2021

**VIA E-MAIL**

Robert S. Berezin
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153

John Hughes, III
Atara Miller
MILBANK LLP
55 Hudson Yards
New York, New York 10001

William Natbony
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281

Martin Sosland
BUTLER SNOW LLP
5430 Lyndon B. Johnson Freeway, Suite 1200
Dallas, Texas 75240
1530 3rd Avenue South, Suite 1600
Nashville, Tennessee 37201

Re: *Discovery in Revenue Bond Adversary Proceeding, Nos. 20-00003, 20-00004, 20-00005*

Counsel:

We write in connection with the CCDA, PRIFA, and HTA revenue bond adversary proceedings to respond to your February 28, 2021 letter and to follow up on the parties March 1, 2021 meet and confer.

I. **The Government's Responses and Objections**

*Plaintiff's Discovery Obligations*.

Your February 28, 2021 letter asserts that Plaintiff in each adversary (in this case, the Oversight Board in its capacity as Title III representative of the Commonwealth) "has an obligation to provide the requested discovery—separate and apart from any subpoenas served on Commonwealth entities." The Oversight Board is aware of its discovery responsibilities, and believes its responses satisfy them. The Oversight Board objected and responded as provided for in the rules, and detailed the documents that would be produced subject to those responses and objections. As you correctly note, and in an effort to avoid duplicate productions—an outcome you acknowledge Defendants are not seeking—the Oversight Board referred Defendants to the "documents produced by the Government Entities…" as coextensive with its intended production. To be clear, these are the exact same Government Entities to whom the Oversight Board would have turned to collect responsive information, under PROMESA Section 104(c)(2) or otherwise. Thus, your reference to the statute does not change the scope of the Oversight Board's responses or the extent of the intended production. Should the Court determine that Defendants are entitled to additional information in response to the document requests at issue, the Oversight Board will comply with any such order in cooperation with, and with the assistance of, the Government Entities.

***Federal Rule of Civil Procedure 34(b)(2)(C)***. Your February 28, 2021 letter asserts that the Government's[1] responses and objections to Defendants' requests for production do not comply with Rule 34(b)(2)(C) and you request that the Government amend its responses "to indicate whether or not responsive materials are being withheld on the basis of the objection."

This request is misplaced. The Government's responses and objections fully comply with Rule 34(b)(2)(C) because they delineate the scope of the Government's intended search. The Advisory Committee Note to that rule explains that a statement describing the limitations of the search a party will use to collect responsive documents is an appropriate response to a request for production. Fed. R. Civ. P. 34, advisory committee note to 2015 amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'"); *see also Rowan v. Sunflower Electric Power Corp*., 2016 WL 3743102, at *5 (D. Kan. July 13, 2016) (holding Rule 34(b)(2)(C) was satisfied where party's "[search] limits are clearly stated in its [responses]").

***Specific Definitions, Instructions, and General Objections.*** In response to the issues raised in Appendix A of your February 28, 2021 letter, please find a responsive Appendix A to this letter as Defendants requested on our March 1, 2021 meet and confer. As a general point, while we are willing to meet and confer regarding concrete disputes as to the scope of production, we do not believe academic disputes regarding your views of the Government's objections are productive. For instance, it would be more productive to have a discussion regarding the scope of the Governments' search rather than to engage in debates regarding the proper definition of "communication."

## II. Requests for Communications

As discussed on our March 1, 2021 conference, notwithstanding defendants' articulation of a list of prioritized requests for custodial e-mail files by search terms, the Government will not conduct such a search because it is outside the scope of the Rule 56(d) Order.

The Rule 56(d) Order emphasized that discovery in these adversary proceedings must be "limited, targeted, proportional, and efficient." 56(d) Order at 6. Defendants' requests for email do not satisfy these criteria. Even defendants' "narrowed" requests for communications include at least 13 requests from custodians across at least 5 different entities. The time and effort involved to negotiate the custodians and search terms, collect the relevant files from multiple different entities, and review the documents would be inconsistent with the limited discovery contemplated in the Rule 56(d) Order.

For purposes of illustration and as we discussed on our call, in connection with the Rule 9019 motion to approve PREPA's RSA, which concerned a discrete set of financing agreements and a settlement agreement at one instrumentality, AAFAF and PREPA were ordered to review email communications pertaining to the RSA and relating to fuel line credit facilities made to PREPA. This review of emails took several months and ultimately required AAFAF to review over 650,000 pages (93,632 documents).

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Joint Status Report Regarding Discovery in the Revenue Bond Adversary Proceedings, dated February 25, 2021 [ECF No. 15889] (the "February 25 Joint Status Report").

The probative value of email discovery is minimal here. When this issue was raised in the context of the lift stay proceedings, Judge Dein agreed that the relevance was not apparent. *See* Tr. of Hearing at 230:22-24 (Mar. 4, 2020) ("No one is arguing ambiguity that's going to be straightened out by some e-mail that somebody sent someplace along the line."); *see also* Order (Mar. 5, 2020) (ECF 12080) (denying motion to compel for email discovery in lift stay proceeding).

### III. Other Outstanding Issues

Your February 28 Letter requests that the Government "identify the requests for which the Government would like Defendants to serve other forms of discovery, and explain why document discovery on those topics would not be appropriate." As explained in our February 23, 2021 call, and again when we provided you with comments to the parties' joint statement, it is not incumbent upon the Government to review the Monolines' expansive document requests to provide instructions on how to transform them into more narrowly tailored discovery. This is particularly true where Defendants' discovery requests are immensely overbroad and appear designed to create delay, rather than being targeted at a limited and targeted set of documents.

Your February 28, 2021 letter also requests further information on what the Government is willing to produce with respect to accounting documents including the Government's reasoning for using particular accounting designations. As your letter recognizes, the specifics of the Government's intended production is set forth in the responses and objections of the respective entities. The Court's Rule 56(d) Order allowed "discovery relating to the accounting treatment of Rum Tax Remittances in general, including the use and purpose of account designations, fund codes and DeptIDs" (PRIFA topic (v)) and "records reflecting the flow of funds into and out of Fund 278" (HTA topic (iii)). In addition to the transfer orders already produced in connection with discovery on the Lift Stay Motions, the Government will produce an export from PRIFAS of data regarding Fund 278 and Rum Tax Remittances. The Government will also search for policies and procedures relating to these issues, including memoranda, instructions, or similar documents. The Government will also investigate whether Treasury has fund account statements (as distinct to deposit account statements) exist pertaining to Fund 278 and the Rum Tax Remittances.

The additional discovery you have asked for (including communications with auditors and auditor work papers) falls outside the scope of what Judge Swain's order contemplates and requires.

Sincerely,

/s/ *Elizabeth L. McKeen*                              /s/ *Michael A. Firestein*

Elizabeth L. McKeen                                     Michael A. Firestein

Appendix A[2]

| | | Objections to Definitions | | |
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Government's Response** |
| Organizational Definitions | PRIFA: 11, 14, 15, 19-22, 24, 26<br><br>CCDA: 11, 13-15, 17, 19, 22, 24<br><br>HTA: 13, 22 | Defendants' requests define each entity (such as AAFAF, PRIFA, HTA, etc.) to include, *inter alia*, the entity's current and former employees, agents, and any other Person who acted on its behalf. The Government objected and states that it will construe the definitions of entities to include only the entity itself and "employees reasonably likely to possess information relevant to this proceeding." | Defendants would propose to use the framework used in the District of Massachusetts local rules, where a reference to an entity refers to the entity itself as well as "its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates." Please advise whether the government is amenable to this approach. (Note that, on this and other issues, Defendants are proposing to incorporate definitions from the District of Massachusetts local rules because the District of Puerto Rico local rules do not provide discovery definitions as other courts do.) | The Government's objection delineates the parameters of what constitutes a reasonably diligent search. The Government will search the centralized files where the relevant documents are likely to be. The Government does not agree to consult every potential individual and entity that might fall within Defendants' proposed definitions. Rather, the Government will consult with personnel reasonably likely to possess responsive information, which is sufficient to satisfy its obligations under the rules and under the Court's order. |
| Definitions of certain agreements and bond documents | PRIFA: 13, 28 | The Government objects to the definition of the Trust Agreement and Bond Documents contained in the PRIFA RFPs. | The Government's definition of Trust Agreement contradicts the Rule 56(d) Order, which provides for discovery into "all versions of the Trust Agreement and any supplements thereto."<br><br>Likewise, "Bond Documents" is defined in the Rule 56(d) Order by reference to the PRIFA Rule 56(d) Declaration, which defined Bond Documents as "the Trust Agreement and any related agreements or official statements related to the issuance of | The Government does not agree to the legal positions embedded in Defendants' definitions. To the extent the Government locates official statements or agreements related to the PRIFA, CCDA, or HTA bonds, it will produce them. |

---

[2] All the columns except for the rightmost column were taken from your February 28, 2021 letter, and by repeating the content of those columns here, the Government does not represent that the content is accurate.

| Dispute Category | Objection Numbers | Government's Objection | Defendants' Response | Government's Response |
|---|---|---|---|---|
| | | | the PRIFA bonds." | |
| | CCDA: 12 | The Government objects to the definition of the term "Bond Documents" to the extent it includes "any related Agreements, Resolutions, or official statements relating to the issuance of CCDA Bonds." | The Rule 56(d) Order defined "Bond Documents" to include "[a]ll documents governing the CCDA bonds" and allowed for discovery of Resolutions "related to the Bond Documents." | |
| | HTA: 12, 20 | The Government objects to the definition of "Bond Documents" and "Resolutions" to the extent it includes documents "relating to" the HTA bonds. | The Government's proposed definitions of "Bond Documents" and "Resolutions" are overly limiting in light of the Rule 56(d) Order. HTA issued other resolutions in addition to the 1968 and 1998 Resolutions governing the HTA bonds and pledging revenues, including supplemental resolutions. Judge Swain's 56(d) Order refers to "all versions" of documents governing the HTA Bonds, including :all versions" of Bond Resolutions.<br><br>With respect to all three credits (PRIFA, CCDA, and HTA), Defendants note that Judge Swain would not have ordered further discovery on these issues if she credited the Government's position that "all documents governing" the bonds means only a handful of documents which are already part of the record before the Court on the summary judgment motions. | |
| Definitions relating to the flow of funds | PRIFA: 17<br>CCDA: 18 | The Government objects that its review and production of documents regarding flow of funds | The Government defines "Flow of Funds" to include only the moneys historically used to service the relevant instrumentality's bonds. But the Rule | The Government does not agree that the Rule 56(d) Order intended to contemplate far-reaching discovery into rum tax revenues that were never used to pay the PRIFA Bonds. For example, under the |

5

| | | Objections to Definitions | | |
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Government's Response** |
| | HTA: 16, 17 | should not extend beyond "bank accounts" previously identified by the Government.<br><br>The Government further objects that its review should not extend beyond the moneys historically used to service the relevant instrumentality's bonds | 56(d) Order is not so limited. Footnote 2 of the Rule 56(d) Order incorporated by reference the definitions used in the Rule 56(d) declarations (the Hughes declarations for PRIFA and CCDA, and the Servais declaration for HTA).<br><br>• For PRIFA, the Rule 56(d) Order allowed discovery into the flow of "Rum Tax Remittances," which was defined in footnote 14 of the PRIFA 56(d) Declaration as all Rum Tax Remittances received by the Commonwealth. | Monolines' view, the Government would be required to produce five years of bank statements for accounts that never received proceeds from the first $117 million.<br><br>Nonetheless, AAFAF is working to collect any policies and procedures regarding the rum tax proceeds generally, and without limitation to the first $117 million, and to prepare a PRIFAS export that would cover all rum tax revenues.<br><br>To the extent Defendants seek documents governing all of the Rum Tax Remittances, the statutes are publicly available, and AAFAF has already produced the Lockbox Agreement. |
| | | | • For CCDA, the 56(d) Order allows for discovery into the flow of "Hotel Taxes," which was defined in the CCDA 56(d) Declaration as all Hotel Taxes received by the Commonwealth. | To the extent the Monolines intend to seek bank statements and transfer materials for accounts other than the ones we disclosed in the CCDA Flow of Funds Summary (or equivalent accounts that we identify, given the expanded time period back to 2006), we do not agree that such materials fall within the scope of the Rule 56(d) Order. |
| | | | • For HTA, and the definition of "Excise Taxes", the Rule 56(d) Order ordered discovery into "the flow of Excise Taxes *and* HTA Pledged Revenues[.]" (Rule 56(d) Order at 11 (emphasis added).) The HTA 56(d) Declaration defined Excise Taxes by incorporation as "special excise taxes consisting, among other things, of taxes on gasoline, | The Government has agreed, in the spirit of compromise, to include Act 30/31 revenues in the scope of the Governments' production.<br><br>Further, the HTA 56(d) Declaration does not provide a clear definition of "Excise Taxes." We disagree that Judge Swain intended to adopt the definition you have here, which is from your opposition to the Oversight Board's statement of facts in connection with the motion for summary judgment. |

6

| | | **Objections to Definitions** | | |
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Government's Response** |
| | | | diesel, crude oil, cigarettes, motor vehicle license fees, and other special excise taxes collected by the Commonwealth." | |
| | | | Furthermore, the flow of funds is not limited to "bank accounts." The governing statutes and Resolutions define the Flow of Funds in terms of "special funds," which are accounting entities, not bank accounts. The Rule 56(d) Order expressly grants discovery into the flow of funds within these accounting systems, not merely "bank accounts." | The Government requests that the Monolines explain what they believe the Government has not agreed to provide that should be provided. We are already producing an export from PRIFAS that will show accounting treatment. |
| Definition of "Communications" | PRIFA: 16<br><br>CCDA: 16<br><br>HTA: 6, 14 | The Government objects to the Defendants' definitions of "Communication" as vague and unduly broad. | Defendants are willing to substitute the definition of "Communication" from the Rule 26.5 of the Local Civil Rules for the District of Massachusetts, which provides that "[t]he term 'communication' means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)." Please advise if the Government is amenable to using this definition. (As with the organizational definitions, Defendants are proposing to use this court-approved definition, given that the local rules in Puerto Rico do not supply a definition.) | As a threshold matter, the Government is not agreeing to search for and produce all Communications regarding the topics in Defendants' requests. In the context of this litigation, even the revised definition renders the requests in which it appears overbroad and unduly burdensome. |
| Meaning of "Governing" | PRIFA: Objections to Requests 1, 2<br><br>CCDA: Objections to | The Government objects to the term "governing" as undefined and requiring a legal conclusion or determination. | The Rule 56(d) Order expressly authorizes discovery using the term "governing." The Government's objection to the use terms that Judge Swain used in the Rule 56(d) Order rings hollow, given the Government itself argued in the joint status report on scheduling that "Defendants [can] 'cut and paste' these detailed descriptions [from the Rule 56(d) Order] into formal discovery requests and serve them. Simpler still, | The Government disclosed precisely what it construes the word "governing" to mean because it anticipated a dispute would arise regarding what that term would entail. In particular, the Government does not agree with Defendants' contention that documents governing the bonds could include documents that are not legally operative. |

7

| Dispute Category | Objection Numbers | Government's Objection | Defendants' Response | Government's Response |
|---|---|---|---|---|
| | Requests 1, 2<br><br>HTA: Objections to Requests 1, 2 | | Defendants can advise the Oversight Board that their document requests are those expressly delineated in the Court's Limited Discovery Order at pages 7-11." (ECF No. 15801, at 24.) Defendants note that the Government's position appears to be particularly disingenuous given that the Government *also* objected to subparts requesting "concerning" certain topics—a neutral term that is commonly used to frame the topic on which documents should be produced. *See* D. Mass. Local Rule 26.5(c)(7); S.D.N.Y. Local Rule 26.3(c)(7). The cumulative effect of the Government's objections is to make it impossible to frame discovery requests that the Government does not regard as objectionable.<br><br>Defendants believe that "documents governing the . . . bonds" include any documents concerning rules (whether legally binding or otherwise) that control the parties' conduct with respect to the bonds; documents that "control, direct, or strongly influence the" conduct of the parties' with respect to the bonds; or documents that "determine, guide, [or] regulate" the parties' conduct under the bonds. *See* MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY; *see also* OXFORD ENGLISH DICTIONARY ("To exert a defining or controlling influence over"; "to hold sway over; to rule, control, determine"; "To serve as a precedent or a determining principle, rule, or standard for"). Defendants do not believe that "governing" requires a legal determination, | |

8

| | | Objections to Definitions | | |
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Government's Response** |
| | | | as it refers more generally to documents that influence or hold sway over the bonds, whether or not legally operative. | |
| | | | To the extent that the Government continues to object to the word "governing," Defendants are also amenable to substituting the word "concerning," as defined in the District of Massachusetts Local Rules. That is a neutral term commonly used to frame document requests. Indeed, some of Judge Swain's own topic descriptions used the term "concerning." *See* Rule 56(d) Order. | |
| Other HTA Definitions | HTA: 15, 19 | The Government objects to the Defendants' definition of "PRIFAS," "Fund," "Fund 278," and "HTA Accounts." | As to "PRIFAS," and with respect to both HTA and PRIFA, Defendants are entitled to the production of documents from any accessible accounting or fiscal control used by the Government. | Defendants defined "PRIFAS" to include systems other than "PRIFAS." To avoid confusion, the Government objected that the term PRIFAS should refer to the single system called "PRIFAS." To the extent the Government determines over the course of its investigation that another system houses data that fairly falls within the scope of the Rule 56(d) Order, the Government will search that system. |
| | | | As to "Fund," "Fund 278," and "HTA Accounts," the Government objection on the ground that particular accounting designations do not have the same documentation as deposit accounts misses the point. Whatever documents do exist concerning such designations should be produced. In particular, for example, policies and procedures and documents governing Fund 278 and its sub accounts must be produced, and these documents necessarily would include reporting and accounting standards adopted by the | The Government does not believe there is an actual dispute here. As we have stated on multiple occasions, the Government has agreed to search for policies and procedures and similar documents that relate to, among other things, Fund 278. To the extent Defendants are arguing that audit working papers, communications with auditors, and other communications relating to accounting treatment should be produced, the Government does not agree that those materials are fairly within the scope of the Rule 56(d) Order. |

9

| Objections to Definitions ||||||
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Government's Response** |
| | | | Commonwealth and HTA. | |

| Objections to Instructions ||||||
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Government's Response** |
| Privilege Logs and Objections | PRIFA: 6, 35  CCDA: 7, 31  HTA: 7, 28 | The Government states that it will only provide a privilege log if necessary and reserves its rights to provide a categorical privilege log. | Defendants expect that, consistent with the Governing Rules, the Government will inform them when the Government withholds a responsive document on an asserted basis of privilege. The Parties should agree to meet-and-confer regarding the substance and form of a privilege log, once the Parties conclude their discussions regarding responsiveness criteria.  Defendants reserve their right to contest any assertions of privilege, consistent with the applicable rules. | The Government agrees with your proposal, with the caveat that the parties' discussion regarding the form of a privilege log should take place after we have determined the volume of withholdings. Specifically, the Government specifically reserves the right to prepare a categorical log, as may be appropriate. |
| Time Period | PRIFA: 37  PRIFA: Document Requests 2; 5; 6; 7  HTA: Documents Requests 1; 2; 4; 5(a), (b), | The Government objects to discovery "farther back than the January 1, 2014 date authorized by the PRIFA 56(d) Order." | The Government's objection misreads the Rule 56(d) Order. Only PRIFA topic (ii) ("documents governing the flow of Rum Tax Remittances") and HTA topic (iii) are limited to January 1, 2014 to present. PRIFA topics (i) and (iii) – (vii) and HTA topics (i), (ii), (iv), and (v) did not contain any time period limitation. *See* READING LAW, canon no. 22 ("Material within an indented subpart relates only to that subpart . . . .").  Appellants note that the Government's suggestion that the time period limitation in PRIFA topic (ii) and HTA topic (iii) was intended to apply to the other parts of the PRIFA and HTA topics is contradicted by | The Government agrees that the Rule 56(d) Order does not provide a date range for every category of authorized discovery. However, the dates that the order does provide are illustrative of where the line should be drawn. To the extent that materials are located in centralized files and predate January 1, 2014, we will not withhold them. |

10

| Objections to Instructions |||||
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Government's Response** |
| | (c), (d), (e), (j), (k), (m) | | the Government's own reading of other portions of the requests. For example, the Government concedes that the phrase "governing the PRIFA Bonds" includes at least the Trust Agreement, which is dated as of 1997; there is no known version of the Trust Agreement that post-dated January 1, 2014. Indeed, *all* of the bonds at issue (HTA, PRIFA, CCDA) were issued prior to January 2014, so it would make no sense to limit all of the discovery topics to that time period. The Court plainly intended to allow discovery into "All documents governing the … bonds" (for PRIFA, CCDA, and HTA) and "Resolutions related to the Bond Documents" without a time period limitation given the importance of such documents to the litigation. Accordingly, the Parties should use the time period limitation Defendants proposed, except for any documents that are relevant solely to PRIFA topic (ii) and HTA topic (iii) of the Rule 56(d) Order. Finally, Defendants note that requests seeking documents from Fiscal Year 2014 to the present date back to July 1, 2013. | |

| Objections to Specific Requests |||||
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Talking Points** |
| Subparts of Requests for Production | **PRIFA: Document Requests 1(a)-(d), 2(a)-(f),** | The Government objects that the subparts of certain Requests | Defendants believe that all of the Request subparts fall squarely within the scope of the Rule 56(d) Order. However, to the extent the | The Government stands by its objections to the subparts. To the extent Defendants wish to meet and confer regarding specific issues, the |

11

| **Objections to Specific Requests** |
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Talking Points** |
| | 3(a), 4(a)-(h), 5(a)-(g), 6(a)-(d), 7(a) **CCDA: Document Requests 2(a)-(f), 3(a), 6(a)-(b), 7(b)-(e)** **HTA: Document Requests 1(a), (c), (d) (e); 2(a), (b), (c), (d), (e); 3(a), (c), (d), (f), (g), (h), (i), (k), (l), (m); Request 4 (all subparts); Request 5 (a)-(l), (n)** | are beyond the scope of discovery allowed in the Rule 56(d) Order. | Government's objections are unique to the specific Request subparts listed—rather than part of the Parties' overarching disputes, identified above—Defendants are willing to meet and confer to discuss the Government's subpart-specific objections and determine whether the Parties can come to a resolution. The subparts to document requests were intended to provide additional specificity about what documents Defendants believe are encompassed within the scope of the topic as framed by Judge Swain. | Government is willing to discuss further. |
| Use of the Term "Concerning" | **PRIFA: Document Requests 1(a), (c); 2(b), (d), (e); 3(a); 4(a)-(c), (e), (f).** **CCDA: Document Requests 4, 5, 7(a)** **HTA Document Requests 1; 2; 3(d), (f), (g), (j);** | The Government objects that Defendants' request for documents "concerning", "relating to", "in connection with", "regarding", "describing" or "pertaining" to a particular rather than "governing" | Judge Swain's Rule 56(d) Order states Defendants may propound discovery requests "directed to" certain topics, indicating Defendants are not limited to propounding the requests exactly as articulated by Judge Swain, but can propound discovery requests "directed to" the topics Judge Swain has identified. The dictionary definition of "directed to" is "to aim fixedly: *concern* or involve oneself primarily or totally with." MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY (definition of "direct"). In other words, | The Government's objection to the terms "concerning," etc., is that they are so broad as to render it unclear what the Monolines believe they are entitled to beyond what the Government has agreed to provide. We request that you make your requests with specificity. The term "concerning," read literally, would encompass every document anywhere that mentions a particular topic. If your position is that such is what you are entitled to, we request that you say so expressly. |

| Objections to Specific Requests ||||| 
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Talking Points** |
| | 4(a)-(d), 5(a)-(d), (m) | that topic is overly broad. | "concerning" is another word for "directed to," and a request seeking documents "concerning" a permissible topic is *ipso facto* "directed to" that topic—which is all the Court's order requires.<br><br>Indeed, given the Government's assertion that identifying documents "governing" a particular issue would require a legal conclusion, discovery requests are properly framed as documents "concerning" or "related to" a given topic. The Government's litigation position of what is actually relevant cannot determine the responsiveness criteria used for surfacing discovery material, since the Parties obviously do not agree about what is relevant or controlling. | We further disagree with your reading of the phrase "directed to" in the Rule 56(d) Order. Judge Swain was specific in what she did and did not allow, and given that Judge Swain specified that discovery must be "limited, targeted, proportional, and efficient," it would not make sense that the Court intended for the Monolines to be able to take the document categories and then broadly expand upon them through subparts. Our production agreements provide targeted, proportional discovery directed to the topics the Order identified. |
| Use of the Terms "Regarding", "Concerning" and "Related To" | **HTA: Document Request 4** | The Government asserts the use of the words "regarding" "concerning" and "related to" in HTA Document Request 4 attempt to broaden discovery to Excise Taxes generally | Defendants do not intend the expansion suggested by the Government, and will limit their inquiry to documents concerning Treasury's role in the approval of transfers to HTA and the extent to which excise tax revenues were or have been made available to HTA. | The Government appreciates this explanation and information. |
| Objections to Producing Documents in | **HTA Request 1(d)** | Government relied on general objections | Discovery regarding the 2002 Agreement, and whether it is a Governing Document or not, is | The Government agrees that if it finds any documents delineating the scope of the Executive Director's authority (or lack |

13

| | Objections to Specific Requests | | | | |
|---|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Talking Points** | |
| Response to HTA Request 1(d) ("any Resolution, act, approval or decision of HTA's Board of Directors issued concerning: (1) the authority of the Executive Director to enter into the Security Agreement, dated as of February 7, 2002, or (2) any security interest, pledge or other property interest in respect of the HTA Bonds") | | discussed above. | within the scope of the Rule 56(d) Order and bears on the interpretation of the original resolutions, based on the authority of the Executive Director and surrounding circumstances of its issuance and the resolution of which it was a part. Discovery regarding the 2002 Agreement was specifically addressed in the 56(d) Declaration. See HTA Rule 56(d) Declaration ¶ 77. | thereof) to enter into Security Agreements or any security agreements regarding the HTA Bonds that have not already been produced, it will produce them. | |
| Objections to Producing Policies and Procedures Related to Accounting Information Pertaining to | **HTA Request 5** | Government relied on general objections discussed above | The Rule 56(d) Order permits discovery not only into all documents governing the flow of Excise Taxes and HTA Pledged Revenues including Fund 278, and records reflecting the flow of funds into and out of Fund 278, but also into "[a]ll policies and procedures related to the flow of Excise Taxes and HTA | As the Government has stated on multiple occasions, the Government has agreed to produce policies and procedures relating to Fund 278 to the extent they exist. | |

14

| Objections to Specific Requests ||||||
|---|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** | **Talking Points** |
| Fund 278 and its subaccounts | | | Pledged Revenues." That topic obviously also includes policies and procedures related to Fund 278. Defendants' position is that policies and procedures regarding Fund 278 and its subaccounts must be produced, and because Fund 278 is an accounting entity, policies and procedures include documents that reflect accounting standards adopted by the Commonwealth and HTA as they relate to the Fund and any subaccount designations. | |