Hearing Date: **April 28, 2021, at 9:30AM (Atlantic Standard Time)**
Response Deadline: **April 14, 2021, at 4:00PM (Atlantic Standard Time)**

---

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

---

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**This filing relates to the Commonwealth.** |

---

## THREE HUNDRED TENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE AND DEFICIENT BOND CLAIMS

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth," or the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole Title III representative of the Commonwealth pursuant to section 315(b) of the *Puerto*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA", and together with the Commonwealth, COFINA, HTA, ERS, and PREPA, the "Debtors") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

*Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] files this three

hundred tenth omnibus objection (the "Three Hundred Tenth Omnibus Objection") to the duplicate

and deficient bond claims listed on **Exhibit A** hereto, each of which purports to be based, in part,

on bond claims that are duplicative of one or more master proofs of claim filed against the

Commonwealth on behalf of the holders of certain bonds.  The remaining portions of each of the

proofs of claim listed on **Exhibit A** hereto are deficient because they fail to provide sufficient

information to enable the Debtors to reconcile the proofs of claim.  In support of the Three Hundred

Tenth Omnibus Objection, respectfully represent as follows:

## JURISDICTION

1.     The United States District Court for the District of Puerto Rico has subject matter

jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA

section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.     The Bar Date Orders**

3.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the

Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof

(the "Commonwealth Title III Case").  On May 21, 2017 (the "Petition Date"), the Oversight Board

issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a

voluntary petition for relief for HTA and ERS, pursuant to PROMESA section 304(a),

commencing cases under Title III thereof (respectively the "HTA Title III Case" and the "ERS

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

Title III Case," and together with the Commonwealth Title III Case, the "Title III Cases").  On

June 29, 2017, the Court entered an order granting the joint administration of the Title III Cases

for procedural purposes only.  ECF No. 537.[3]

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2255] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing*

*Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of*

*Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief

requested in the Bar Date Motion and established deadlines and procedures for filing proofs of

claim in the Title III Cases.  Upon the informative motion of certain creditors, and the support of

the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs*

*of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with

the Initial Bar Date Order, the "Bar Date Orders"), extending these deadlines to June 29, 2018 at

4:00 p.m. (Atlantic Time).

**B.      Bond Debt Master Proofs of Claim – Commonwealth Title III Case**

5.      Pursuant to the Initial Bar Date Order, indenture trustees, fiscal agents, or any

similar agent or nominee for each respective series of bonds issued by one of the Debtors or a non-

debtor may file a master proof of claim against the applicable debtor on behalf of themselves and

all holders of bond claims for the respective series of bonds for obligations arising under the

respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).

As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in

---

[3] Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No.
17 BK 3283-LTS.

the Commonwealth Title III Case on behalf of the holders of certain bonds or notes of the Puerto

Rico Highways and Transportation Authority ("HTA"), the Puerto Rico Infrastructure Financing

Authority ("PRIFA"), the Employees Retirement System of the Commonwealth of Puerto Rico

("ERS"), and Puerto Rico Public Buildings Authority ("PBA").

6.      ***HTA*** — HTA is a public corporation and instrumentality of the Commonwealth

constituting a corporate and political entity independent and separate from the Commonwealth,

created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA

Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways

and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA

Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto,

HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (i)

Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (ii) Resolution No. 98-

06, adopted February 26, 1998 (the "1998 Resolution").  As of May 21, 2017, HTA's petition date,

approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain

outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998

Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.  On

behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the

Commonwealth Title III Case (the "HTA-CW Master Claims"), each asserting a "secured,

contingent and unliquidated claim against the Commonwealth on account of any and all claims,

causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the

Commonwealth arising at law or in equity . . . ."  *See* Addendum to Proof of Claim No. 121053,

4

¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No.
115380, ¶ 15.[4]

7.      **_PBA_** — PBA purportedly issued Revenue Bonds to finance office buildings and
other facilities leased to various departments, public agencies and instrumentalities of the
Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds
issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and
on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth
Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by
Prime Clerk, LLC, as Proof of Claim No. 62833.[5]  The PBA Master Claim asserts liquidated claims
for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid
interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated
and contingents claims for any and all amounts owed "on account of any and all claims the Fiscal
Agent has or may have relating to the outstanding Bond obligations, whether known or unknown
against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."
Rider to PBA Master Claim, ¶¶ 19-21.

8.      **_ERS_**—ERS is an agency of the government, separate and apart from the
Commonwealth government and its other instrumentalities.  *See* 3 L.P.R.A § 775.[6]  Purportedly
pursuant to that certain Pension Funding Bond Resolution, adopted on January 24, 2008, and
certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the

---

[4]  While BNYM initially filed three proofs of claim logged by Prime Clerk as Proofs of Claim Nos. 21286, 26541,
and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

[5]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the
Fiscal Agent.

[6]  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j)
and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case
under Title III thereof.

"ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[7]  BNYM

serves as the fiscal agent with respect to the ERS Bonds.  On behalf of the holders of ERS Bonds,

BNYM filed a master proof of claim in the Commonwealth Title III Case, which was logged by

Prime Clerk, LLC, as Proof of Claim No. 32004.[8]

9.    ***PRIFA***—PRIFA is an affiliate of the Government Development Bank ("GDB")

and is a government instrumentality of the Commonwealth.  PRIFA was created in 1988 by Act

No. 44-1988 (the "PRIFA Enabling Act").  PRIFA provides financial, administrative and other

types of assistance to the Commonwealth, its public corporations and other instrumentalities

responsible for developing and operating infrastructure facilities.  On behalf of the holders of

various bonds and notes issued by PRIFA (collectively, the "PRIFA Bonds"), master proofs of

claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by

BNYM, US Bank, and UMB Bank, N.A.  US Bank filed a master proof of claim with respect to

certain PRIFA Bonds, which was logged by Prime Clerk as Proof of Claim No. 13386, on behalf

of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C,

and Series 2006), asserting "claims for contingent, unliquidated amounts for interest payable in

the future, interest accrued and accruing in the future as to past due principal and interest, fees and

---

[7]  On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void.  On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*, and any other grounds set forth in the foregoing objections.  ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS Bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[8]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim.  See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775) [ECF No. 7075].  For the avoidance of doubt, this Three Hundred Tenth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents,

and all other amounts owed on account of any and all claims the Trustee has or may have relating

to the outstanding Bond obligations, amount not less than $249,099,446.17 . . . .”  Rider to Proof

of Claim No. 13386, ¶ 26.

**E.  Proofs of Claims Filed, Omnibus Objection Procedures, and Claim Objections**

10.     To date, approximately 179,000 proofs of claim have been filed against the Debtors

and logged by Prime Clerk, LLC.  Such proofs of claim total approximately $43.6 trillion in

asserted claims against the Debtors, in addition to unliquidated amounts asserted.

11.     Of the proofs of claim filed, approximately 115,000 have been filed in relation to,

or reclassified to be asserted against, the Commonwealth.  In accordance with the terms of the Bar

Date Orders, many of these claims need not have been filed at all, or suffer from some other flaw,

such as being subsequently amended, not putting forth a claim for which the Debtors are liable,

being duplicative of other proofs of claim, or failing to provide information necessary for the

Debtors to determine whether the claim is valid.

12.     To efficiently resolve as many of the unnecessary proofs of claim as possible, on

October 16, 2018, the Debtors filed with this Court their *Motion for Entry of an Order (A)

Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement of Bankruptcy

Rule 3007(e)(6), and (C) Granting Related Relief* [ECF No. 4052] (the “Omnibus Procedures

Motion”).  The Court granted the relief requested in the Omnibus Procedures Motion by order

dated November 14, 2018.  *See Order (A) Approving Limited Omnibus Objection Procedures, (B)

Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (C) Granting Related Relief* [ECF

No. 4230]; *Omnibus Objection Procedures* [ECF No. 4230-1] (collectively, the “Initial Omnibus

Objection Procedures”).  On November 29, 2018, the Court approved English and Spanish

versions of the forms of notice for omnibus objections to be filed in accordance with the Initial

Omnibus Objection Procedures. *See Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections* [ECF No. 4381] (the "Notice Order").

13.    In the continued interest of resolving any unnecessary proofs of claim in an efficient manner, on May 23, 2019, the Debtors filed an amended procedures motion seeking, among other things, to allow the Debtors to file omnibus objections on substantive bases, to further expand the number of claims that may be included on an objection, and to approve additional forms of notice. *Notice of Hearing with Respect to an Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7091]. On June 14, 2019, the Court granted the requested relief, by the *Order (A) Approving Amended Omnibus Objection Procedures, (B) Waiving Requirements of Bankruptcy Rule 3007(e), (C) Approving Additional Forms of Notice, and (D) Granting Related Relief* [ECF No. 7440] (the "Amended Omnibus Objection Procedures").

14.    Pursuant to the Initial Omnibus Objection Procedures and Amended Omnibus Objection Procedures, to date the Court has held over 12 hearings related to over 140 omnibus objections filed by the Commonwealth, the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Electric Power Authority ("PREPA"), HTA, and/or ERS. Based upon rulings and orders of the Court to date, approximately 56,000 claims asserting $43 trillion in liability against the Commonwealth, COFINA, HTA, PREPA, and ERS have been disallowed and will be expunged from the claims registry in the Title III proceedings upon entry of final orders.

15.    This Three Hundred Tenth Omnibus Objection is filed in accordance with the Court's Amended Omnibus Objection Procedures.

## OBJECTIONS TO PROOFS OF CLAIM

16.     Claims that are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" should be disallowed.  11 U.S.C. § 502(b)(1).  While a properly executed and filed proof of claim constitutes *prima facie* evidence of the validity of the claim, *see* Fed. R. Bankr. P. 3001(f), made applicable to this case by PROMESA section 310, the objecting party may overcome this *prima facie* evidence with evidence which, if believed, would refute at least one of the allegations essential to the claim.  *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[A] claim is presumed valid until an objecting party has introduced evidence sufficient to rebut the claimant's prima facie case." (citation omitted)).

17.     The Amended Omnibus Objection Procedures allow the Commonwealth to file an omnibus objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy Procedure 3007(d)(1)-(7), in addition to other substantive bases set forth in the Amended Omnibus Objection Procedures.

18.     The Three Hundred Tenth Omnibus Objection seeks to disallow, in accordance with the Amended Omnibus Objection Procedures, claims that (i) seek, in part, recovery for amounts which are duplicative of one or more master proofs of claim filed in the Commonwealth's Title III Case, and (ii) in part, fail to comply with the applicable rules for filing a claim by not providing a basis for asserting a claim against the Commonwealth or any other Title III Debtor.

19.     Each of the claims listed on **Exhibit A** hereto (collectively the "Claims to Be Disallowed"), provided as supporting documentation a copy of a brokerage account statement, a letter identifying bonds, or other supporting documentation containing information regarding bonds purportedly held by the claimant.  Upon a reasonable review of the supporting documentation for investments related to Puerto Rico bonds, the Commonwealth was able to

9

identify bonds that are duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of the holders of certain bonds issued by HTA, PBA, PRIFA, and/or ERS. With respect to certain of the Claims to Be Disallowed, however, the duplicative bond investments listed in the supporting documentation did not match the amounts listed in the claimant's proof of claim.

20. On August 13, 2019, the Court entered the *Order Granting in Part and Adjourning in Part Debtors' Motion for Entry of An Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, (C) Approving Proposed Mailing, and (D) Granting Related Relief* [ECF No. 8453] (the "Authorized Mailings Order"), which authorized the Debtors to send mailings "to any claimant who has not provided sufficient information to enable Debtors to process their claim." Authorized Mailings Order, ¶ 3.

21. Pursuant to the Authorized Mailings Order, "[i]f the Debtors mail the Proposed Mailing to a claimant, and the claimant either does not respond or responds but fails to provide sufficient information to permit Debtors to reconcile their claim, the Debtors are authorized to object to the claim as deficient." *Id.*

22. In accordance with the Authorized Mailings Order, the Commonwealth has sent at least one letter, substantially in the form of Exhibit 1 to the Authorized Mailings Order, to each claimant subject to this Three Hundred Tenth Omnibus Objection (the "Mailing"). Each Mailing provided, in relevant part:

> Additional information is required in order for the Debtors to continue with assessing your claim. The Debtors are unable to determine from the information you provided the basis for the claim you are attempting to assert against one or more of the Debtors. In responding to this letter, please ensure that you provide all of the information requested and as much detail as possible about your claim. The descriptions you put on your proof of claim were too vague for the Debtors to understand the claim you are trying to

10

assert, so please provide more detail and do not simply copy over
the same information.

*See* ECF No. 8453-1 at 2, 7.

23.     The Mailings received by the claimants subject to this Two Hundred Ninety-Second

Omnibus Objection directed the claimants to respond no later than October 23, 2019 (depending

on the date each Mailing was sent). *See id.* Furthermore, the Mailings cautioned the Claimants

that "[i]f you do not respond to this request and do not provide the requested information and

documentation in support of your claim, the Debtors may be forced to object to your claim."

24.     Each of the Claimants identified in **Exhibit A** either failed to respond to the

Mailings, or submitted a response that still did not contain information necessary to enable the

Commonwealth to reconcile the claim.  Accordingly, based upon the Commonwealth's review of

the documentation submitted with the proofs of claim or with the Mailings, the Commonwealth

understands the Claims to Be Disallowed assert, in part, investments in bonds which are

duplicative of one or more master proofs of claim filed against the Commonwealth on behalf of

the holders of certain bonds issued by HTA, PBA, PRIFA, and/or ERS.  Any failure to disallow

the duplicative portions of the Claims to Be Disallowed will result in the applicable claimants

potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment

of other stakeholders in the Commonwealth Title III Case.  The holders of the Claims to Be

Disallowed will not be prejudiced by the disallowance of their claims because the liabilities

associated with the Claims to Be Disallowed are subsumed within one or more Master Claims.

25.     Certain of the Claims to Be Disallowed also purport to assert, in part, additional

liabilities arising from investments, but does not provide critical information, such as CUSIP

numbers or amounts, necessary for the Debtors to reconcile the claims.  Those portions fail to

comply with the applicable rules for filing a claim because they do not provide a basis for asserting

11

a claim against the Commonwealth, ERS, or any other Title III Debtor. The Debtors are therefore unable to determine the basis for the liabilities the Claimants seek to assert, and are unable to determine the validity of the claims. Accordingly, the remaining portions of the Claims to Be Disallowed should be disallowed because they are deficient.

26.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Three Hundred Tenth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Duplicate and Deficient Bond Claims*, dated March 12, 2021, attached hereto as **Exhibit B**.

**NOTICE**

27.     In accordance with the Amended Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth, are providing notice of this Three Hundred Tenth Omnibus Objection to (a) the individual creditors subject to this Three Hundred Tenth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico. The notice for this Three Hundred Tenth Omnibus Objection is attached hereto as **Exhibit C**. Spanish translations of the Three Hundred Tenth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties. The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

**RESERVATION OF RIGHTS**

28.     This Three Hundred Tenth Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors or the rights of any other party in interest in the Title III Cases to object to the Claims to Be Disallowed or any other claims on any ground whatsoever. The Debtors expressly reserve all further substantive or procedural

objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of the Debtors or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

29.    No prior request for the relief sought in this Three Hundred Tenth Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting such other and further relief as is just.

Dated: March 12, 2021
     San Juan, Puerto Rico

Respectfully submitted,

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla García-Benítez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board for
Puerto Rico, as representative of the
Commonwealth of Puerto Rico*

**Fecha de la vista: 28 de abril de 2021, a las 9:30 a.m. (AST)**
**Fecha límite para responder: 14 de abril de 2021, a las 4:00 p.m. (AST)**

---

**REVISE DETENIDAMENTE LA PRESENTE OBJECIÓN Y LOS DOCUMENTOS ADJUNTOS PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

---

*In re*:

JUNTA DE SUPERVISIÓN Y ADMINISTRACIÓN FINANCIERA PARA PUERTO RICO,

　　　como representante del

ESTADO LIBRE ASOCIADO DE PUERTO RICO *et al*.,

　　　　　　　Deudores.[1]

PROMESA
Título III

Núm. 17 BK 3283-LTS

(Administrado Conjuntamente)

**La presente radicación guarda relación con el ELA.**

---

**TRICENTÉSIMA DÉCIMA OBJECIÓN GLOBAL (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO A RECLAMACIONES DUPLICADAS Y DEFICIENTES POR BONOS**

A la atención de su señoría, Juez del Tribunal de Distrito de los Estados Unidos, Laura Taylor Swain:

---

[1] Los Deudores en los presentes Casos de Título III, junto con el respectivo número de caso de Título III y los últimos cuatro (4) dígitos del número de identificación contributiva federal de cada Deudor, en su caso, son i) el Estado Libre Asociado de Puerto Rico (el "ELA") (Caso de Quiebra Núm. 17 BK 3283-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3481); ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de Quiebra Núm. 17 BK 3284-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 8474); iii) la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT") (Caso de Quiebra Núm. 17 BK 3567-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3808); iv) el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") (Caso de Quiebra Núm. 17 BK 3566-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 9686); v) la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE") (Caso de Quiebra Núm. 17 BK 4780-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3747); y vi) la Autoridad de Edificios Públicos de Puerto Rico (la "AEP", y junto con el ELA, COFINA, la ACT, el SRE y la AEE, los "Deudores") (Caso de Quiebra Núm. 19-BK-5523-LTS) (Últimos cuatro dígitos de la identificación contributiva federal: 3801) (Los números de los casos de Título III están enumerados como números de casos de quiebra debido a ciertas limitaciones en el programa informático).

El Estado Libre Asociado de Puerto Rico (el "ELA" o el "Deudor"), a través de la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"), como el único representante de Título III del ELA conforme a la sección 315(b) de la Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico ("PROMESA"),[2] radica esta tricentésima décima objeción global (la "Tricentésima décima objeción global") a las reclamaciones duplicadas y deficientes por bonos que aparecen en el **Anexo A** del presente documento, cada una de las cuales pretende basarse, en parte, en reclamaciones por bonos que están duplicadas con respecto de una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos. Las partes restantes de cada una de las evidencias de reclamaciones contenidas en el **Anexo A** del presente documento son deficientes, puesto que no brindan información suficiente para que los Deudores puedan reconciliar las evidencias de reclamaciones. En apoyo de la Tricentésima décima objeción global, manifiesta respetuosamente lo siguiente:

## JURISDICCIÓN

1.      El Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para atender la presente causa y el remedio en ella solicitado conforme a la sección 306(a) de PROMESA.

2.      La sede judicial de este distrito es la competente conforme a la sección 307(a) de PROMESA.

## ANTECEDENTES

**A.      Órdenes de Fecha Límite**

---

[2] PROMESA ha sido codificada en el Título 48 U.S.C., §§ 2101-2241.

2

3.       El 3 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el ELA conforme a la sección 304(a) de PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal (el "Caso de Título III del ELA"). El 21 de mayo de 2017 (la "Fecha de Petición"), la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones 104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para la ACT y el SRE conforme a la sección 304(a) de PROMESA, iniciando casos conforme al Título III del referido cuerpo legal (respectivamente, el "Caso de Título III de la ACT" y el "Caso de Título III del SRE", y junto con el Caso de Título III del ELA, los "Casos de Título III"). El 29 de junio de 2017, el Tribunal dictó una orden por la que concedió la administración conjunta de los Casos de Título III únicamente con fines procesales. ECF núm. 537.[3]

4.       El 16 de enero de 2018, los Deudores radicaron su *Moción de una orden que A) fije fechas límite y procedimientos para radicar evidencias de reclamaciones y B) apruebe la forma y la manera de su notificación* [ECF núm. 2255] (la "Moción de Fecha Límite"). Conforme a la *Orden que A) fija fechas límite y procedimientos para radicar evidencias de reclamaciones y B) aprueba la forma y la manera de su notificación* [ECF núm. 2521] (la "Orden Inicial de Fecha Límite"), el Tribunal concedió el remedio solicitado en la Moción de Fecha Límite y fijó fechas límite y procedimientos para radicar evidencias de reclamaciones en el marco de los Casos de Título III. Luego de la moción informativa de determinados acreedores, y del apoyo de los Deudores, el Tribunal dictó a continuación la *Orden que A) extendió fechas límite para radicar evidencias de reclamaciones y B) aprobó la forma y la manera de su notificación* [ECF núm. 3160]

---

[3] Salvo disposición en contrario contenida en el presente documento, las citas ECF harán referencia a documentos radicados en el marco del Caso de Quiebra Núm. 17 BK 3283-LTS.

3

(conjuntamente con la Orden Inicial de Fecha Límite, las "Órdenes de Fecha Límite"), extendiendo

dichas fechas límite hasta el 29 de junio de 2018, a las 04:00 p.m. (AST).

**B.    Evidencias de reclamaciones principales relativas a la deuda de los bonos: Caso de**

**Título III del ELA**

5.    Conforme a la Orden Inicial de Fecha Límite, fiduciarios autorizados, agentes

fiscales o cualquier otro agente o apoderado similar en relación con cada serie respectiva de bonos

emitidos por uno de los Deudores o por un no deudor, podrán radicar una evidencia de reclamación

principal contra el deudor pertinente, en su propio nombre y en el de todos los titulares de

reclamaciones por bonos para la respectiva serie de bonos en relación con las obligaciones surgidas

de los respectivos acuerdos de fideicomiso, resoluciones o documentos similares vinculados con

los bonos. Orden Inicial de Fecha Límite, ¶ 5(a). Como se explica más adelante, se han radicado

evidencias de reclamaciones principales (conjuntamente, las "Reclamaciones Principales") en el

marco del Caso de Título III del ELA en nombre de los tenedores de determinados bonos o pagarés

de la Autoridad de Carreteras y Transportación de Puerto Rico (la "ACT"), la Autoridad para el

Financiamiento de la Infraestructura de Puerto Rico (la "AFI"), el Sistema de Retiro de los

Empleados del Gobierno del Estado Libre Asociado de Puerto Rico (el "SRE") y la Autoridad de

Edificios Públicos de Puerto Rico (la "AEP").

6.    _ACT_: la ACT es una corporación pública e instrumentalidad del ELA, que

constituye una entidad corporativa y política independiente y aparte del ELA, creada en virtud de

la Ley núm. 74-1965 de la Asamblea Legislativa del ELA (la "Ley para crear la ACT"). La ACT

se encarga de la construcción, funcionamiento y mantenimiento de carreteras y otros sistemas de

transporte en el ELA. _Véase_ 9 L.P.R.A. § 2002. La Ley para crear la ACT autoriza a la ACT

a emitir bonos. _Véase_ 9 L.P.R.A. §§ 2004(g), (h), (l). Conforme a dicha normativa legal, la ACT

emitió varias series de bonos al amparo de dos resoluciones diferentes (los "Bonos de la ACT"):

4

i) la Resolución núm. 68-18, adoptada el 13 de junio de 1968 (la "Resolución de 1968"), y ii) la Resolución núm. 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998"). Desde el 21 de mayo de 2017, la fecha de petición de la ACT, aproximadamente $830 millones del monto principal de los bonos emitidos conforme a la Resolución de 1968 quedan pendientes de pago, y aproximadamente $3400 millones del monto principal de los bonos emitidos conforme a la Resolución de 1998 quedan igualmente pendientes de pago. BNYM actúa como agente fiscal con respecto a los Bonos de la ACT. En nombre de los tenedores de los Bonos de la ACT, BNYM radicó tres evidencias de reclamaciones principales en el marco del Caso de Título III del ELA (las "Reclamaciones Principales ACT-ELA"), cada una de las cuales alegaba "una reclamación garantizada, contingente y no liquidada contra el ELA en razón de la totalidad de las reclamaciones, causas de acción, derechos y/o remedios que el Agente Fiscal o los Propietarios puedan tener contra el ELA, conforme a derecho o equidad. . . ." *Véase* Adenda de la Evidencia de reclamaciones núm. 121053, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 120982, ¶ 15; Adenda de la Evidencia de reclamaciones núm. 115380, ¶ 15.[4]

7.     ***AEP***: la AEP presuntamente emitió Bonos de Renta para financiar edificios de oficinas y otras instalaciones arrendadas a varios departamentos, agencias públicas e instrumentalidades del ELA. US Bank y US Bank Trust actúan como agentes fiscales en relación con determinados bonos de renta emitidos por la AEP, conforme a lo explicado en la nota al pie 3 de la Evidencia de reclamación núm. 62833 (los "Bonos de la AEP") y, en nombre de los tenedores de los Bonos de la AEP, radicó una evidencia de reclamación principal en el marco del Caso de Título III del ELA por todos los montos pendientes de pago adeudados (la "Reclamación Principal

---

[4] Aunque BNYM radicó inicialmente tres evidencias de reclamaciones registradas por Prime Clerk como Evidencias de reclamaciones núms. 21286, 26541 y 35277, estas fueron sustituidas y enmendadas por las Evidencias de reclamaciones núms. 121053, 120982 y 115380.

5

de la AEP"), que fue registrada por Prime Clerk, LLC, como Evidencia de reclamación núm.
62833. [5] La Reclamación Principal de la AEP alega reclamaciones liquidadas por
aproximadamente $4000 millones en concepto de principal supuestamente impagado, $160
millones en concepto de intereses supuestamente impagados y reembolso de comisiones y gastos
de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por la totalidad de
los montos adeudados "en razón de la totalidad de las reclamaciones que el Agente Fiscal tenga o
pueda tener en relación con las Obligaciones de bonos pendientes, conocidos o por conocer, contra
el ELA y aquellos que pretendan actuar en nombre del ELA". . . ."  Cláusula Adicional de la
Reclamación Principal de la AEP, ¶¶ 19-21.

8.    ***SRE***: el SRE es un organismo gubernamental, aparte e independiente del Gobierno
del ELA y de sus demás instrumentalidades. *Véase* 3 L.P.R.A § 775.[6] Presuntamente conforme a
la Resolución sobre bonos para el financiamiento de pensiones, adoptada el 24 de enero de 2008,
y ciertas resoluciones complementarias, el SRE emitió unos bonos preferentes y subordinados para
el financiamiento de pensiones (los "Bonos del SRE"), por un monto total del principal de
aproximadamente $2900 millones.[7] BNYM actúa como agente fiscal con respecto a los Bonos del
SRE. Actuando en nombre de los tenedores de los Bonos del SRE, BNYM radicó una evidencia

---

[5]  La Evidencia de reclamación núm. 62833 enmendó y sustituyó a la Evidencia de reclamación núm. 13351, que fue
radicada inicialmente por el Agente Fiscal.

[6]  El 21 de mayo de 2017, la Junta de Supervisión emitió una certificación de reestructuración conforme a las secciones
104(j) y 206 de PROMESA, y radicó una petición voluntaria de remedio para el SRE conforme a la sección 304(a) de
PROMESA, iniciando un caso conforme al Título III de dicho cuerpo legal.

[7]  El 12 de marzo de 2019, el Comité Oficial de Acreedores no Asegurados radicó una *Objeción global a
reclamaciones radicadas por los tenedores de bonos emitidos por el SRE* [Caso núm. 17-3566, [ECF núm. 381],
basándose en que la emisión de los bonos supuso un exceso de la potestad legal del SRE, por lo que era *ultra vires*,
anulando de pleno derecho los Bonos del SRE. El 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre
Asociado de Puerto Rico radicó una *Objeción Global del Comité Oficial de Retirados del Estado Libre Asociado de
Puerto Rico, conforme al Código de Quiebras, artículo 502, y la regla 3007 de las Reglas de Quiebras, a
reclamaciones radicadas o alegadas por los tenedores de los Bonos del SRE contra el SRE y el ELA* [Caso núm. 17-
3283, [ECF núm. 6482], basándose, entre otras cosas, en que la emisión de los bonos fue *ultra vires*. El SRE se reserva
el derecho a impugnar la emisión de los bonos sobre cualquier motivo, incluso sobre el motivo de que los bonos del
SRE eran *ultra vires*, y cualquier otro motivo recogido en las objeciones precedentes.

6

de reclamación principal en el marco del Caso de Título III del ELA, que fue registrada por Prime

Clerk, LLC, como Evidencia de reclamación núm. 32004.[8]

9.     *AFI*: la AFI es una filial del Banco Gubernamental de Fomento (el "BGF") y

constituye una instrumentalidad del Gobierno del ELA. La AFI fue creada en 1988 mediante la

Ley núm. 44-1988 (la "Ley para crear la AFI"). La AFI brinda asistencia financiera, administrativa

y de otro tipo al ELA, a sus corporaciones públicas y a otras instrumentalidades encargadas del

desarrollo y del funcionamiento de las infraestructuras. Actuando en nombre de los tenedores de

varios bonos y pagarés emitidos por la AFI (conjuntamente, "Bonos de la AFI"), BNYM, US Bank

y UMB Bank, N.A. radicaron evidencias de reclamaciones principales contra el ELA

(conjuntamente, las "Reclamaciones Principales de la AFI"). US Bank radicó una evidencia de

reclamación principal en relación con determinados Bonos de la AFI, que fue registrada por Prime

Clerk como Evidencia de reclamación núm. 13386, en nombre de los tenedores de los Bonos de la

AFI relativos a impuestos sobre el ron (Bonos de renta de impuestos especiales, series 2005A,

2005B, 2005C y serie 2006), alegando "reclamaciones por montos contingentes y no liquidados

en relación con intereses pagaderos a futuro, intereses devengados y que se acumulen en el futuro

en lo referente a principal e intereses vencidos, tarifas y costos y reclamaciones por indemnización

del Fiduciario que se incurran en el futuro en virtud de los Documentos de los bonos, así como por

la totalidad de los montos adeudados en razón de todas las reclamaciones que tenga o pueda tener

el Fiduciario en relación con las Obligaciones de bonos pendientes, monto mínimo de

$249,099,446.17. . . ." Cláusula adicional de la Evidencia de reclamación núm. 13386, ¶ 26.

---

[8]  El 22 de mayo de 2019, el ELA radicó una objeción a la Evidencia de Reclamación Principal del SRE. Véase
Objeción de la Junta de Supervisión y Administración Financiera, conforme al artículo 502 del Código de Quiebras y
la regla 3007 de las Reglas de Quiebras, a las reclamaciones radicadas o alegadas contra el ELA por el Bank of New
York Mellon, como agente fiscal (Reclamación núm. 16775), [ECF núm. 7075]. En aras de la claridad, la presente
Tricentésima décima objeción global se radica sin perjuicio de los derechos de las partes en relación con dicha
objeción, lo que incluye cualesquiera derechos a intervenir, que quedan reservados.

**E.  Evidencias de reclamaciones radicadas, procedimientos relativos a objeciones globales y objeciones a reclamaciones**

10.     Hasta la fecha, se han radicado aproximadamente 179,000 evidencias de reclamaciones contra los Deudores, que han sido registradas por Prime Clerk, LLC. Dichas evidencias de reclamaciones ascienden a un total aproximado de $43.6 billones en reclamaciones radicadas contra los Deudores, además de los montos no liquidados reclamados.

11.     De las evidencias de reclamaciones radicadas, aproximadamente 115,000 han sido radicadas en relación con el ELA, o reclasificadas como radicadas contra el ELA. De conformidad con las condiciones de las Órdenes de Fecha Límite, muchas de estas reclamaciones no tenían que haber sido radicadas en absoluto o adolecen de otro tipo de vicios; por ejemplo, haber sido enmendadas posteriormente, no alegar una reclamación por la que los Deudores sean responsables, estar duplicadas en relación con otras evidencias de reclamaciones o no aportar información necesaria para que los Deudores determinen si la reclamación es válida.

12.     Para resolver eficazmente el mayor número posible de las evidencias de reclamaciones innecesarias, el 16 de octubre de 2018 los Deudores radicaron ante este Tribunal su *Moción para que se dicte una orden que A) apruebe procedimientos limitados relativos a objeciones globales, B) exima el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) conceda el remedio relacionado* [ECF núm. 4052] (la "Moción de Procedimientos Globales"). El Tribunal concedió el remedio solicitado en la Moción de Procedimientos Globales mediante la orden de fecha 14 de noviembre de 2018. *Véase la Orden que A) aprueba procedimientos limitados relativos a objeciones globales, B) exime el requisito contenido en la regla 3007(e)(6) de las Reglas de Quiebras, y C) concede el remedio relacionado* [ECF núm. 4230]; *Procedimientos relativos a Objeciones Globales* [ECF núm. 4230-1] (conjuntamente, los "Procedimientos Iniciales relativos a Objeciones Globales"). El 29 de noviembre de 2018, el

8

Tribunal aprobó las versiones en inglés y en español de los formularios de notificación relativos a las objeciones globales a efectos de radicarlas de conformidad con los Procedimientos Iniciales relativos a Objeciones Globales. *Véase Orden por la que se aprobaron las versiones en inglés y en español de los formularios de notificación relativos a objeciones globales* [ECF núm. 4381] (la "Orden de Notificación").

13. En aras del interés constante de resolver eficazmente cualesquiera evidencias de reclamaciones innecesarias, el 23 de mayo de 2019 los Deudores radicaron una moción relativa a procedimientos enmendados en la que solicitaron, entre otras cosas, que se les permitiera radicar objeciones globales sobre unas bases sustantivas, aumentar el número de reclamaciones que pudieran incluirse en una objeción y aprobar formas de notificación adicionales. *Notificación de vista en relación con una Orden que A) apruebe Procedimientos Enmendados relativos a Objeciones Globales, B) exima los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) apruebe formas de notificación adicionales y D) conceda el remedio relacionado* [ECF núm. 7091]. El 14 de junio de 2019, el Tribunal concedió el remedio solicitado por medio de la *Orden que A) aprueba Procedimientos Enmendados relativos a Objeciones Globales, B) exime los requisitos contenidos en la regla 3007(e) de las Reglas de Quiebras, C) aprueba formas de notificación adicionales y D) concede el remedio relacionado* [ECF núm. 7440] (los "Procedimientos Enmendados relativos a Objeciones Globales").

14. Conforme a los Procedimientos Iniciales relativos a Objeciones Globales y los Procedimientos Enmendados relativos a Objeciones Globales, el Tribunal ha celebrado hasta la fecha más de 12 vistas vinculadas con más de 140 objeciones globales radicadas por el ELA, la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA"), la Autoridad de Energía Eléctrica de Puerto Rico (la "AEE"), la ACT y/o el SRE. Sobre la base de las resoluciones y órdenes del Tribunal dictadas hasta la fecha, aproximadamente 56,000 reclamaciones que

9

reivindicaban $43 billones en responsabilidad contra el ELA, COFINA, la ACT, la AEE y el SRE fueron rechazadas y serán retiradas del registro de reclamaciones en el marco de los procedimientos radicados conforme al Título III una vez dictadas las órdenes finales.

15.    Esta Tricentésima décima objeción global se radica de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales del Tribunal.

## OBJECIONES A EVIDENCIAS DE RECLAMACIONES

16.    Las reclamaciones que sean "inejecutables contra el deudor y los bienes de este, en virtud de cualquier contrato o normativa legal aplicable" deben rechazarse. Título 11 U.S.C., § 502(b)(1). Aunque una evidencia de reclamación debidamente formalizada y radicada constituye una prueba *prima facie* de la validez de la reclamación, *véase* Fed. de Pr. de Quiebr. 3001(f), aplicable a este caso en virtud de la sección 310 de PROMESA, la parte objetante podrá superar dicha evidencia *prima facie* con evidencias que, de creerse, refutarían al menos una de las alegaciones esenciales para la reclamación. *In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir.), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *véase también Factors Funding Co. c. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. B.A.P. 2001) ("[S]e presume que una reclamación es válida hasta que una parte objetante haya introducido evidencias suficientes para refutar el caso *prima facie* del reclamante". (se omite cita)).

17.    Los Procedimientos Enmendados relativos a Objeciones Globales permiten al ELA radicar una objeción global a varias evidencias de reclamaciones sobre cualquiera de las bases recogidas en las reglas 3007(d)(1) a (7) de las Reglas Federales del Procedimiento de Quiebra (*Federal Rule of Bankruptcy Procedure*), así como sobre otras bases sustantivas establecidas en los Procedimientos Enmendados relativos a Objeciones Globales.

18.    La Tricentésima décima objeción global pretende rechazar, de conformidad con los Procedimientos Enmendados relativos a Objeciones Globales, reclamaciones que i) intenta

10

recuperar, en parte, montos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas en el marco del Caso de Título III del ELA, y ii) no cumplen, en parte, con las normas aplicables a la radicación de reclamaciones al no brindar base alguna para alegar una reclamación contra el ELA o cualquiera de los demás Deudores de Título III.

19.     Cada una de las reclamaciones que figuran en el **Anexo A** del presente (conjuntamente, las "Reclamaciones que han de ser rechazadas"), proporciona, como documentación justificativa, una copia del extracto de una cuenta de corretaje, una carta en la que se identifican los bonos u otra documentación justificativa que contiene información sobre los bonos que supuestamente obran en poder del reclamante. Tras un examen razonable de la documentación justificativa para inversiones vinculadas con los bonos de Puerto Rico, el ELA pudo identificar bonos que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales radicadas contra el ELA en nombre de los tenedores de determinados bonos emitidos por la ACT, la AEP, la AFI y/o el SRE. Con respecto a ciertas de las Reclamaciones que han de ser rechazadas, sin embargo, las inversiones en bonos duplicadas que aparecen en la documentación justificativa no coinciden con los montos que figuran en la evidencia de reclamación del Reclamante.

20.     El 13 de agosto de 2019, el Tribunal dictó la *Orden que concedió parcialmente y levantó parcialmente la Moción de los Deudores para dictar una orden que A) autorice procedimientos alternativos de resolución de controversias, B) apruebe formas de notificación adicionales, C) apruebe envíos propuestos y D) conceda el remedio relacionado* [ECF núm. 8453] (la "Orden de Envío Autorizado") que autorizó que los Deudores realizaran envíos "a cualquier reclamante que no haya proporcionado suficiente información que permitiera a los Deudores procesar sus reclamaciones". Orden de Envío Autorizado, ¶ 3.

21.     Conforme a la Orden de Envío Autorizado, "[s]i los Deudores realizan el Envío Propuesto al reclamante, y este último no responde o responde pero no aporta suficiente información que permita a los Deudores reconciliar su reclamación, los Deudores tendrán derecho a oponerse a la reclamación como deficiente". *Id.*

22.     De conformidad con la Orden de Envío Autorizado, el ELA ha enviado al menos una carta a cada reclamante objeto de la presente Tricentésima décima objeción global esencialmente en el formato que se adjunta a la Orden de Envío Autorizado como Anexo 1 (el "Envío"). Cada Envío, en la parte pertinente, rezaba lo siguiente:

> Se requiere información adicional para que los Deudores sigan examinando su reclamación. Los Deudores no pueden determinar a partir de la información que usted proporcionó cuál es la base de la reclamación que trata de alegar contra uno o más Deudores. Al responder a esta carta, rogamos se asegure de proporcionar toda la información solicitada, así como tantos detalles como sea posible aportar sobre su reclamación. Las descripciones que incorporó en su evidencia de reclamación eran demasiado vagas para que los Deudores comprendieran la reclamación que usted trata de alegar, de manera que rogamos proporcione más detalles y no se limite simplemente a copiar la misma información.

> *Véase* ECF núm. 8453-1 en 2, 7.

23.     Los Envíos recibidos por los reclamantes objeto de la presente Ducentésima nonagésima segunda objeción global exigían a los reclamantes responder antes del 23 de octubre de 2019 (dependiendo de la fecha en la que cada Envío fue realizado). *Véase id.* Además, en los Envíos se advertía a los Reclamantes de que "[s]i no responde a esta solicitud y no proporciona la información y la documentación requeridas para justificar su reclamación, es posible que los Deudores se vean en la obligación de oponerse a su reclamación."

24.     Cada uno de los Reclamantes identificados en el **Anexo A** o bien no respondió a los Envíos, o bien envió una respuesta que tampoco contenía la información necesaria que permita al ELA reconciliar la reclamación. En consecuencia, sobre la base del análisis realizado por el

12

ELA de la documentación sometida con las evidencias de reclamaciones o con los Envíos, el ELA

entiende que las Reclamaciones que han de ser rechazadas alegan, en parte, inversiones en bonos

que constituyen duplicados con respecto a una o más evidencias de reclamaciones principales

radicadas contra el ELA en nombre de los tenedores de determinados bonos emitidos por la ACT,

la AEP, la AFI y/o el SRE. Si dichas partes duplicadas de las Reclamaciones que han de ser

rechazadas no son rechazadas, ello resultaría en que los correspondientes reclamantes obtuvieran

potencialmente una recuperación duplicada no justificada contra el ELA, en detrimento de otras

partes interesadas en el Caso de Título III del ELA. Los titulares de las Reclamaciones que han de

ser rechazadas no se verán perjudicados por el hecho de que se rechacen sus reclamaciones, puesto

que las responsabilidades vinculadas con las Reclamaciones que han de ser rechazadas se incluyen

en una o más Reclamaciones Principales.

25.    Algunas de las Reclamaciones que han de ser rechazadas también pretende alegar,

en parte, responsabilidades adicionales surgidas de inversiones, pero no brinda información

esencial, tales como los números CUSIP o los montos, necesaria para que los Deudores puedan

reconciliar las reclamaciones. Dichas partes no cumplen con las normas aplicables a la radicación

de una reclamación ya que no brindan base alguna para alegar reclamaciones contra el ELA, el

SRE o cualquier otro Deudor de Título III. En consecuencia, los Deudores no pueden determinar

la base de las responsabilidades que los Reclamantes tratan de alegar, por lo que tampoco pueden

determinar la validez de las reclamaciones. Por lo tanto, las partes restantes de las Reclamaciones

que han de ser rechazadas deben ser rechazadas porque son deficientes.

26.    En apoyo de lo anterior, el ELA invoca la *Declaración de Jay Herriman en apoyo*

*de la Tricentésima décima objeción global (no sustantiva) del Estado Libre Asociado de Puerto*

*Rico a Reclamaciones duplicadas y deficientes por bonos*, de fecha 12 de marzo de 2021, adjunta

al presente como **Anexo B**.

13

## NOTIFICACIÓN

27.     De conformidad con los Procedimientos Enmendados relativos a Objeciones Globales y la Orden de Notificación del Tribunal, el ELA notifica la presente Tricentésima décima objeción global a) a los acreedores individuales objeto de esta Tricentésima décima objeción global, b) al U.S. Trustee, y c) a la Lista maestra de notificaciones (según se define en los *Procedimientos de administración de casos enmendados núm. 14* [ECF núm. 15894-1]), disponibles en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico. La notificación de esta Tricentésima décima objeción global se adjunta al presente como **Anexo C**. Las traducciones al español de la Tricentésima décima objeción global y de la totalidad de los anexos adjuntos al presente se están radicando con esta objeción y se trasladarán a las partes. El ELA sostiene que, dada la naturaleza del remedio solicitado, no es necesario enviar ninguna otra notificación.

## RESERVA DE DERECHOS

28.     La presente Tricentésima décima objeción global se limita a los motivos expuestos en este documento. En consecuencia, esta se radica sin perjuicio de los derechos de los Deudores, o de los derechos de cualesquiera otras partes interesadas en dichos Casos de Título III, a objetar a las Reclamaciones que han de ser rechazadas o a cualesquiera otras reclamaciones que fuere. Los Deudores se reservan expresamente el derecho a radicar toda otra objeción sustantiva o procesal. Ninguna disposición contenida en el presente documento, ni ninguna acción adoptada conforme a tal remedio, tienen por objetivo, ni se interpretarán en el sentido de que: a) constituyan una admisión en cuanto a la validez de cualesquiera reclamaciones contra los Deudores; b) constituyan una renuncia a los derechos de los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, a impugnar cualquier reclamación sobre la base de los motivos que fuere; c) constituyan una promesa o requisito para pagar cualquier reclamación; d) constituyan una solicitud

14

o autorización a asumir cualquier acuerdo, contrato o arrendamiento anteriores a la petición

conforme al artículo 365 del Código de Quiebras; o e) constituyan una renuncia a los derechos de

los Deudores, o de cualesquiera otras partes interesadas en los Casos de Título III, conforme a

PROMESA, el Código de Quiebras o cualquier otra normativa legal aplicable.

## <u>AUSENCIA DE SOLICITUDES PREVIAS</u>

29.    No se ha radicado ninguna solicitud de remedio previa a la presente Tricentésima

décima objeción global ni ante este Tribunal ni ante ningún otro órgano judicial.

[*El resto de la página se deja en blanco intencionadamente*]

POR LO QUE el ELA solicita respetuosamente que se dicte una orden, esencialmente en la forma de la orden propuesta que se adjunta al presente como **Anexo D**, 1) que conceda el remedio solicitado en el presente documento, y 2) que conceda cualesquiera otros remedios que se consideren justos.

Fecha: 12 de marzo de 2021
       San Juan (Puerto Rico)

Respetuosamente sometida,

[*Firma en la versión en inglés*]
Hermann D. Bauer
USDC núm. 215205
Carla García-Benítez
USDC núm. 203708
Gabriel A. Miranda
USDC núm. 306704
**O'NEILL & BORGES LLC**
250 Avenida Muñoz Rivera, local 800
San Juan, PR 00918-1813
Tel.:  (787) 764-8181
Fax:  (787) 753-8944

[*Firma en la versión en inglés*]
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
Nueva York, NY 10036
Tel.:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera para Puerto Rico, como representante del Estado Libre Asociado de Puerto Rico*

16