# **EXHIBIT L**

# Milbank

**JOHN J. HUGHES, III**

*Special Counsel*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5127
Jhughes2@milbank.com  |  milbank.com

February 28, 2021

**VIA EMAIL**

| | |
|---|---|
| Michael A. Firestein, Esq. | Elizabeth L. McKeen, Esq. |
| Lary A. Rappaport, Esq. | Ashley Pavel, Esq |
| Proskauer Rose LLP | O'Melveny & Myers LLP |
| 2029 Century Park East, Suite 2400 | 610 Newport Center Drive, 17th Floor |
| Los Angeles, CA 90067 | Newport Beach, CA 92660 |

Re:  Discovery in Revenue Bond Adversary Proceedings,
Nos. 20-00003, 20-00004, 20-00005.

Counsel:

I write on behalf of Defendants[1] to follow up on our telephonic meet-and-confer on February 23, 2021 (the "February 23 Meet-and-Confer") concerning Defendants' Revenue Bond Discovery Requests.

The Parties discussed certain overarching issues regarding discovery during the February 23 Meet-and-Confer. The current status of those discussions is reflected in the February 25 Joint Status Report. Accordingly, Defendants do not repeat here the substance of the Parties' discussion but simply follow up on other outstanding issues.

## I.   THE GOVERNMENT'S RESPONSES AND OBJECTIONS

During the February 23 Meet-and-Confer, the Parties agreed that Defendants would summarize in writing certain issues regarding the Government's responses and objections to the document requests. Those issues are set forth below.

***Plaintiff Has an Obligation to Provide Discovery.***  The Plaintiff in these Adversary Proceedings provided one set of responses and objections, and the various Commonwealth entities which had received subpoenas provided another set. The Plaintiff's responses, in each case,

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Joint Status Report Regarding Discovery in the Revenue Bond Adversary Proceedings*, dated February 25, 2021 [ECF No. 15889] (the "February 25 Joint Status Report").

Michael A. Firestein, Lary A. Rappaport  February 28, 2021
Elizabeth L. McKeen, Ashley Pavel

"refer[red] Defendants to the documents produced by the Government Entities and to the . . . Government Entities' Response[s] and Objection[s]."

Defendants would like to make clear, at the outset, their position that the Plaintiff has an obligation to provide the requested discovery—separate and apart from any subpoenas served on Commonwealth entities. PROMESA expressly provides that:

> the Oversight Board shall have the right to secure copies, whether written or electronic, of such records, documents, information, data, or metadata from the territorial government necessary to enable the Oversight Board to carry out its responsibilities under this chapter. At the request of the Oversight Board, the Oversight Board shall be granted direct access to such information systems, records, documents, information, or data as will enable the Oversight Board to carry out its responsibilities under this chapter.

PROMESA § 104(c)(2), 48 U.S.C. § 2124(c)(2). In light of PROMESA, there can be no question that all of the documents of the Commonwealth, and its territorial instrumentalities, are under the Plaintiff's possession, custody, or control. It is well-settled that documents that an entity has the "legal right" to obtain are within the entity's control. *See, e.g.*, *Quiñones v. University of Puerto Rico*, 2015 WL 3604152, at *5 n.4 (D.P.R. June 8, 2015) (collecting cases).

For this reason, all of the documents that Defendants are seeking from the Government are properly analyzed under the rubric of party discovery and the requirements of Federal Rule of Civil Procedure 34. As Defendants noted in their portion of the February 25 Joint Status Report, Defendants served subpoenas in order to avoid technical disputes about possession, custody, and control; to assist AAFAF's counsel, as a practical matter, in obtaining compliance from other government offices; and to reserve Defendants' rights under the scheduling order. But Defendants' position remains that all of the requested discovery is properly obtainable through requests served only on the Plaintiff.

Of course, Defendants are not seeking to duplicate efforts, and to the extent that the Board's counsel has determined that it would be more appropriate for AAFAF's counsel to act on behalf of the Plaintiff in responding to discovery requests, Defendants are happy to proceed in the manner that the Government considers most efficient. But Defendants wish to make clear that the Plaintiff will be liable under Federal Rule of Civil Procedure 37, and other applicable law, to the extent that any requested discovery is not provided. To the extent the Plaintiff does not receive access to responsive documents from the Commonwealth or its instrumentalities, the Plaintiff should seek prompt judicial relief to enforce its rights under PROMESA.

***Non-Compliance with Federal Rule of Civil Procedure 34(b)(2)(C).*** The various responses and objections provided by the Government did not comply with Rule 34(b)(2)(C), which requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." The Government made specific objections to each request but without indicating which objections are merely intended to reserve the Government's rights and in which cases documents responsive to a request are being withheld on the basis of the objection. Defendants would ask that the Government comply with Rule 34(b)(2)(C) and amend its specific

- 2 -

Michael A. Firestein, Lary A. Rappaport  
Elizabeth L. McKeen, Ashley Pavel  
February 28, 2021

objections to requests to indicate whether or not responsive materials are being withheld on the basis of the objection. Defendants are moving forward on Wednesday with motion practice where it is clear that responsive documents are being withheld, but note that without responses and objections that comply with Rule 34, it may be necessary to file additional motions to compel once the Government provides compliant responses and objections.

***Specific Definitions, Instructions, and General Objections.*** Defendants have prepared a table, attached hereto as **Appendix A**, that sets out additional specific issues and describes Defendants' position. This chart was prepared, further to the Government's request, to aid the meet-and-confer process and efficiently present certain issues that could be resolved more easily with a written summary. The chart does not purport to be an exhaustive listing of all issues and does not catalog other issues that the Parties have discussed separately. Defendants will raise other issues in the Parties' oral meet-and-confers.

## II. REQUESTS FOR COMMUNICATIONS

During the February 23 Meet-and-Confer, the Government requested that Defendants prepare a list of high-priority requests for communications and agreed to consider such a list. Here is a list of the high-priority topics:

*(1) Funds and Accounts Referenced from Bond Documents*

- PRIFA: Communications concerning the Infrastructure Fund, including, without limitation, its nature and location and the restrictions and controls upon moneys therein.

- CCDA: Communications concerning the Holding Fund, Transfer Account, Surplus Account, Pledge Account, including, without limitation, their nature and location and the restrictions and controls upon moneys therein.

- HTA: Communications concerning Fund 278, including, without limitation, its nature and location and the restrictions and controls upon moneys therein.

*(2) Fund Accounting/Flow*

- PRIFA: Communications concerning the accounting treatment of Rum Tax Remittances in general, including, without limitation, (i) the special revenue fund referenced in the Commonwealth's financial statements, (ii) the accounting treatment of the Infrastructure Fund, (iii) the flow of funds/accounting designations as money flows into and out of Commonwealth accounts and funds; and (iv) the manner in which the first $117 million of Rum Tax Remittances each fiscal year is transferred and accounted for.

- HTA: Communications concerning accounting designations and treatment for the Excise Taxes and Fund 278; concerning the treatment of Excise Taxes and Toll Revenues in Commonwealth and HTA financial statements; concerning the flow of funds/accounting designations as money flows into and out of Commonwealth accounts and funds; concerning the Treasury's role in the approval of transfers to

Michael A. Firestein, Lary A. Rappaport  February 28, 2021
Elizabeth L. McKeen, Ashley Pavel

> HTA, including, without limitation, procedures for transfer vouchers to HTA (SC-753 vouchers) and for approving transfers of Excise Taxes to HTA; concerning the extent to which the Excise Taxes were or have been made available to HTA.

### *(3) Other*

- PRIFA:  Communications concerning the Lockbox Agreement.
- CCDA:  Communications identifying and explaining the purpose of transfers of Hotel Taxes to the Commonwealth.
- HTA:  Communications concerning the 2002 Security Agreement (including any communications bearing on the Executive Director's authority to execute it).

Defendants expect that the parties would meet-and-confer regarding appropriate custodians for these topics, which should include appropriate custodians from the Commonwealth Treasury and GDB, not just custodians from the instrumentalities that issued the bonds.  Defendants reserve the right to timely request additional communications upon review of the production on these prioritized requests.

This list of high-priority requests is intended as a compromise proposal.  In the event that the Parties cannot agree on an appropriate scope for e-mail communications, Defendants reserve the right to move to compel for e-mail review on any document requests that called for production of Communications.

Defendants also request that the Government provide information regarding which potential custodians' e-mail has already been collected and for what time period; the time period for which the Government stores e-mail and the systems in which it is maintained; any analysis the Government has conducted to date of search term hits; and whether there is any reason the Government cannot use a managed review vendor to complete a responsiveness and privilege review of any e-mails that hit on search terms expeditiously and at minimal cost.

### III.  OTHER OUTSTANDING ISSUES

During the February 23 Meet-and-Confer, the Government indicated that it believed some of Defendants' discovery requests would be better suited for interrogatories, requests for admissions, or depositions.  The Government agreed to identify such requests to Defendants.  Please identify the requests for which the Government would like Defendants to serve other forms of discovery, and explain why document discovery on those topics would not be appropriate.

The Government also agreed to consider what it is willing to produce on accounting documents.  We understand from comment bubbles the Government added to the draft status report on Thursday that it is unwilling to produce anything beyond what it specifically said it would produce in the responses and objections.  Please explain the Government's position, as the comment bubbles the Government sent included no reasoning.

Michael A. Firestein, Lary A. Rappaport  
Elizabeth L. McKeen, Ashley Pavel

February 28, 2021

Very truly yours,

/s/ *John J. Hughes, III*  
John J. Hughes, III

cc:     Atara Miller  
        Martin A. Sosland  
        Robert S. Berezin  
        William Natbony

- 5 -

**Appendix A: Chart of Certain Discovery Disputes**

|  | Objections to Definitions |

| Dispute Category | Objection Numbers[1] | Government's Objection | Defendants' Response |
|---|---|---|---|
| Organizational Definitions[2] | **PRIFA: 11, 14, 15, 19-22, 24, 26**<br><br>**CCDA: 11, 13-15, 17, 19, 22, 24**<br><br>**HTA: 13, 22** | Defendants' requests define each entity (such as AAFAF, PRIFA, HTA, etc.) to include, *inter alia*, the entity's current and former employees, agents, and any other Person who acted on its behalf. The Government objected and states that it will construe the definitions of entities to include only the entity itself and "employees reasonably likely to possess information relevant to this proceeding." | Defendants would propose to use the framework used in the District of Massachusetts local rules, where a reference to an entity refers to the entity itself as well as "its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates." Please advise whether the government is amenable to this approach. (Note that, on this and other issues, Defendants are proposing to incorporate definitions from the District of Massachusetts local rules because the District of Puerto Rico local rules do not provide discovery definitions as other courts do.) |
| Definitions of certain agreements and bond documents | **PRIFA: 13, 28** | The Government objects to the definition of the Trust Agreement and Bond Documents contained in the PRIFA RFPs. | The Government's definition of Trust Agreement contradicts the Rule 56(d) Order, which provides for discovery into "all versions of the Trust Agreement and any supplements thereto."<br><br>Likewise, "Bond Documents" is defined in the Rule 56(d) Order by reference to the PRIFA Rule 56(d) Declaration, which defined Bond Documents as "the Trust Agreement and any related agreements or official statements related to the issuance of the PRIFA bonds." |

---

[1] Unless otherwise noted, "Objection Numbers" refer to the paragraph number of the Government's General Objections in the specified R&O.

[2] The Government has objected to Defendants' definitions of the following entities contained in the PRIFA RFPs: AAFAF, Citibank, Commonwealth, GDB, KPMG, McConnell Valdés, PRIFA, Sidley Austin, Treasury. The Government has objected to Defendants' definitions of the following entities contained in the CCDA RFPs: AAFAF, BPPR, CCDA, Commonwealth, FirstBank, GDB, Scotiabank, and Tourism Company. The Government has objected to Defendants' definitions of the following entities contained in the HTA RFPs: Banco Popular Puerto Rico and Treasury.

**Appendix A: Chart of Certain Discovery Disputes**

| | | Objections to Definitions | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers[1]** | **Government's Objection** | **Defendants' Response** |
| | **CCDA: 12** | The Government objects to the definition of the term "Bond Documents" to the extent it includes "any related Agreements, Resolutions, or official statements relating to the issuance of CCDA Bonds." | The Rule 56(d) Order defined "Bond Documents" to include "[a]ll documents governing the CCDA bonds" and allowed for discovery of Resolutions "related to the Bond Documents." |
| | **HTA: 12, 20** | The Government objects to the definition of "Bond Documents" and "Resolutions" to the extent it includes documents "relating to" the HTA bonds. | The Government's proposed definitions of "Bond Documents" and "Resolutions" are overly limiting in light of the Rule 56(d) Order. HTA issued other resolutions in addition to the 1968 and 1998 Resolutions governing the HTA bonds and pledging revenues, including supplemental resolutions. Judge Swain's 56(d) Order refers to "all versions" of documents governing the HTA Bonds, including :all versions" of Bond Resolutions.<br><br>With respect to all three credits (PRIFA, CCDA, and HTA), Defendants note that Judge Swain would not have ordered further discovery on these issues if she credited the Government's position that "all documents governing" the bonds means only a handful of documents which are already part of the record before the Court on the summary judgment motions. |
| Definitions relating to the flow of funds | **PRIFA: 17**<br><br>**CCDA: 18**<br><br>**HTA: 16, 17** | The Government objects that its review and production of documents regarding flow of funds should not extend beyond "bank accounts" previously identified by the Government. | The Government defines "Flow of Funds" to include only the moneys historically used to service the relevant instrumentality's bonds. But the Rule 56(d) Order is not so limited. Footnote 2 of the Rule 56(d) Order incorporated by reference the definitions used in the Rule 56(d) declarations (the Hughes declarations |

**Appendix A: Chart of Certain Discovery Disputes**

| | Objections to Definitions | | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers**[1] | **Government's Objection** | **Defendants' Response** |
| | | The Government further objects that its review should not extend beyond the moneys historically used to service the relevant instrumentality's bonds. | for PRIFA and CCDA, and the Servais declaration for HTA).<br><br>• For PRIFA, the Rule 56(d) Order allowed discovery into the flow of "Rum Tax Remittances," which was defined in footnote 14 of the PRIFA 56(d) Declaration as all Rum Tax Remittances received by the Commonwealth.<br><br>• For CCDA, the 56(d) Order allows for discovery into the flow of "Hotel Taxes," which was defined in the CCDA 56(d) Declaration as all Hotel Taxes received by the Commonwealth.<br><br>• For HTA, and the definition of "Excise Taxes", the Rule 56(d) Order ordered discovery into "the flow of Excise Taxes *and* HTA Pledged Revenues[.]" (Rule 56(d) Order at 11 (emphasis added).) The HTA 56(d) Declaration defined Excise Taxes by incorporation as "special excise taxes consisting, among other things, of taxes on gasoline, diesel, crude oil, cigarettes, motor vehicle license fees, and other special excise taxes collected by the Commonwealth."<br><br>Furthermore, the flow of funds is not limited to "bank accounts." The governing statutes and Resolutions define the Flow of Funds in terms of "special funds," which are accounting entities, not bank accounts. The Rule 56(d) Order expressly grants discovery into the |

**Appendix A: Chart of Certain Discovery Disputes**

| | | | |
|---|---|---|---|
| **Objections to Definitions** | | | |
| **Dispute Category** | **Objection Numbers**[1] | **Government's Objection** | **Defendants' Response** |
| | | | flow of funds within these accounting systems, not merely "bank accounts." |
| Definition of "Communications" | PRIFA: 16<br><br>CCDA: 16<br><br>HTA: 6, 14 | The Government objects to the Defendants' definitions of "Communication" as vague and unduly broad. | Defendants are willing to substitute the definition of "Communication" from the Rule 26.5 of the Local Civil Rules for the District of Massachusetts, which provides that "[t]he term 'communication' means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise)." Please advise if the Government is amenable to using this definition. (As with the organizational definitions, Defendants are proposing to use this court-approved definition, given that the local rules in Puerto Rico do not supply a definition.) |
| Meaning of "Governing" | PRIFA: Objections to Requests 1, 2<br><br>CCDA: Objections to Requests 1, 2<br><br>HTA: Objections to Requests 1, 2 | The Government objects to the term "governing" as undefined and requiring a legal conclusion or determination. | The Rule 56(d) Order expressly authorizes discovery using the term "governing." The Government's objection to the use terms that Judge Swain used in the Rule 56(d) Order rings hollow, given the Government itself argued in the joint status report on scheduling that "Defendants [can] 'cut and paste' these detailed descriptions [from the Rule 56(d) Order] into formal discovery requests and serve them. Simpler still, Defendants can advise the Oversight Board that their document requests are those expressly delineated in the Court's Limited Discovery Order at pages 7-11." (ECF No. 15801, at 24.) Defendants note that the Government's position appears to be particularly disingenuous given that the Government *also* objected to subparts requesting "concerning" certain topics—a neutral term that is commonly used to frame the topic on which documents should be produced. *See* D. Mass. |

**Appendix A: Chart of Certain Discovery Disputes**

| | | Objections to Definitions | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers**[1] | **Government's Objection** | **Defendants' Response** |
| | | | Local Rule 26.5(c)(7); S.D.N.Y. Local Rule 26.3(c)(7). The cumulative effect of the Government's objections is to make it impossible to frame discovery requests that the Government does not regard as objectionable. <br><br> Defendants believe that "documents governing the . . . bonds" include any documents concerning rules (whether legally binding or otherwise) that control the parties' conduct with respect to the bonds; documents that "control, direct, or strongly influence the" conduct of the parties' with respect to the bonds; or documents that "determine, guide, [or] regulate" the parties' conduct under the bonds. *See* MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY; *see also* OXFORD ENGLISH DICTIONARY ("To exert a defining or controlling influence over"; "to hold sway over; to rule, control, determine"; "To serve as a precedent or a determining principle, rule, or standard for"). Defendants do not believe that "governing" requires a legal determination, as it refers more generally to documents that influence or hold sway over the bonds, whether or not legally operative. <br><br> To the extent that the Government continues to object to the word "governing," Defendants are also amenable to substituting the word "concerning," as defined in the District of Massachusetts Local Rules. That is a neutral term commonly used to frame document requests. Indeed, some of Judge Swain's own topic descriptions used the term "concerning." *See* Rule 56(d) Order. |

Appendix A: Chart of Certain Discovery Disputes

| Objections to Definitions | | | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers**[1] | **Government's Objection** | **Defendants' Response** |
| Other HTA Definitions | HTA: 15, 19 | The Government objects to the Defendants' definition of "PRIFAS," "Fund," "Fund 278," and "HTA Accounts." | As to "PRIFAS," and with respect to both HTA and PRIFA, Defendants are entitled to the production of documents from any accessible accounting or fiscal control used by the Government.<br><br>As to "Fund," "Fund 278," and "HTA Accounts," the Government objection on the ground that particular accounting designations do not have the same documentation as deposit accounts misses the point. Whatever documents do exist concerning such designations should be produced. In particular, for example, policies and procedures and documents governing Fund 278 and its sub accounts must be produced, and these documents necessarily would include reporting and accounting standards adopted by the Commonwealth and HTA. |

| Objections to Instructions | | | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** |
| Privilege Logs and Objections | PRIFA: 6, 35<br><br>CCDA: 7, 31<br><br>HTA: 7, 28 | The Government states that it will only provide a privilege log if necessary and reserves its rights to provide a categorical privilege log. | Defendants expect that, consistent with the Governing Rules, the Government will inform them when the Government withholds a responsive document on an asserted basis of privilege. The Parties should agree to meet-and-confer regarding the substance and form of a privilege log, once the Parties conclude their discussions regarding responsiveness criteria. |

**Appendix A: Chart of Certain Discovery Disputes**

| Objections to Instructions ||||
|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** |
| | | | Defendants reserve their right to contest any assertions of privilege, consistent with the applicable rules. |
| Time Period | PRIFA: 37<br><br>PRIFA: Document Requests 2; 5; 6; 7<br><br>HTA: Documents Requests 1; 2; 4; 5(a), (b), (c), (d), (e), (j), (k), (m) | The Government objects to discovery "farther back than the January 1, 2014 date authorized by the PRIFA 56(d) Order." | The Government's objection misreads the Rule 56(d) Order. Only PRIFA topic (ii) ("documents governing the flow of Rum Tax Remittances") and HTA topic (iii) are limited to January 1, 2014 to present. PRIFA topics (i) and (iii) – (vii) and HTA topics (i), (ii), (iv), and (v) did not contain any time period limitation. *See* READING LAW, canon no. 22 ("Material within an indented subpart relates only to that subpart . . . .").<br><br>Appellants note that the Government's suggestion that the time period limitation in PRIFA topic (ii) and HTA topic (iii) was intended to apply to the other parts of the PRIFA and HTA topics is contradicted by the Government's own reading of other portions of the requests. For example, the Government concedes that the phrase "governing the PRIFA Bonds" includes at least the Trust Agreement, which is dated as of 1997; there is no known version of the Trust Agreement that post-dated January 1, 2014.<br><br>Indeed, *all* of the bonds at issue (HTA, PRIFA, CCDA) were issued prior to January 2014, so it would make no sense to limit all of the discovery topics to that time period. The Court plainly intended to allow discovery into "All documents governing the . . . bonds" (for PRIFA, CCDA, and HTA) and "Resolutions related to the Bond Documents" without a time period limitation, |

**Appendix A: Chart of Certain Discovery Disputes**

| | | Objections to Instructions | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** |
| | | | given the importance of such documents to the litigation. <br><br> Accordingly, the Parties should use the time period limitation Defendants proposed, except for any documents that are relevant solely to PRIFA topic (ii) and HTA topic (iii) of the Rule 56(d) Order. <br><br> Finally, Defendants note that requests seeking documents from Fiscal Year 2014 to the present date back to July 1, 2013. |

**Appendix A: Chart of Certain Discovery Disputes**

|  | Objections to Specific Requests |

| Dispute Category | Objection Numbers | Government's Objection | Defendants' Response |
|---|---|---|---|
| Subparts of Requests for Production | **PRIFA:** Document Requests 1(a)-(d), 2(a)-(f), 3(a), 4(a)-(h), 5(a)-(g), 6(a)-(d), 7(a)<br><br>**CCDA:** Document Requests 2(a)-(f), 3(a), 6(a)-(b), 7(b)-(e)<br><br>**HTA:** Document Requests 1(a), (c), (d) (e); 2(a), (b), (c), (d), (e); 3(a), (c), (d), (f), (g), (h), (i), (k), (l), (m); Request 4 (all subparts); Request 5 (a)-(l), (n) | The Government objects that the subparts of certain Requests are beyond the scope of discovery allowed in the Rule 56(d) Order. | Defendants believe that all of the Request subparts fall squarely within the scope of the Rule 56(d) Order. However, to the extent the Government's objections are unique to the specific Request subparts listed—rather than part of the Parties' overarching disputes, identified above—Defendants are willing to meet and confer to discuss the Government's subpart-specific objections and determine whether the Parties can come to a resolution. The subparts to document requests were intended to provide additional specificity about what documents Defendants believe are encompassed within the scope of the topic as framed by Judge Swain. |
| Use of the Term "Concerning" | **PRIFA:** Document Requests 1(a), (c); 2(b), (d), (e); 3(a); 4(a)-(c), (e), (f).<br><br>**CCDA:** Document Requests 4, 5, 7(a)<br><br>**HTA** Document Requests 1; 2; 3(d), (f), (g), (j); | The Government objects that Defendants' request for documents "concerning", "relating to", "in connection with", "regarding", "describing" or "pertaining" to a particular rather than "governing" that topic is overly broad. | Judge Swain's Rule 56(d) Order states Defendants may propound discovery requests "directed to" certain topics, indicating Defendants are not limited to propounding the requests exactly as articulated by Judge Swain, but can propound discovery requests "directed to" the topics Judge Swain has identified. The dictionary definition of "directed to" is "to aim fixedly: ***concern*** or involve oneself primarily or totally with." MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY (definition of "direct"). In other words, "concerning" is another word for "directed to," and a |

**Appendix A: Chart of Certain Discovery Disputes**

| | Objections to Specific Requests | | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** |
| | 4(a)-(d), 5(a)-(d), (m) | | request seeking documents "concerning" a permissible topic is *ipso facto* "directed to" that topic—which is all the Court's order requires.<br><br>Indeed, given the Government's assertion that identifying documents "governing" a particular issue would require a legal conclusion, discovery requests are properly framed as documents "concerning" or "related to" a given topic. The Government's litigation position of what is actually relevant cannot determine the responsiveness criteria used for surfacing discovery material, since the Parties obviously do not agree about what is relevant or controlling. |
| Use of the Terms "Regarding", "Concerning" and "Related To" | **HTA: Document Request 4** | The Government asserts the use of the words "regarding" "concerning" and "related to" in HTA Document Request 4 attempt to broaden discovery to Excise Taxes generally. | Defendants do not intend the expansion suggested by the Government, and will limit their inquiry to documents concerning Treasury's role in the approval of transfers to HTA and the extent to which excise tax revenues were or have been made available to HTA. |

**Appendix A: Chart of Certain Discovery Disputes**

| **Objections to Specific Requests** | | | |
|---|---|---|---|
| **Dispute Category** | **Objection Numbers** | **Government's Objection** | **Defendants' Response** |
| Objections to Producing Documents in Response to HTA Request 1(d) ("any Resolution, act, approval or decision of HTA's Board of Directors issued concerning: (1) the authority of the Executive Director to enter into the Security Agreement, dated as of February 7, 2002, or (2) any security interest, pledge or other property interest in respect of the HTA Bonds") | **HTA Request 1(d)** | Government relied on general objections discussed above. | Discovery regarding the 2002 Agreement, and whether it is a Governing Document or not, is within the scope of the Rule 56(d) Order and bears on the interpretation of the original resolutions, based on the authority of the Executive Director and surrounding circumstances of its issuance and the resolution of which it was a part. Discovery regarding the 2002 Agreement was specifically addressed in the 56(d) Declaration. *See* HTA Rule 56(d) Declaration ¶ 77. |
| Objections to Producing Policies and Procedures Related to Accounting Information Pertaining to Fund 278 and its subaccounts | **HTA Request 5** | Government relied on general objections discussed above. | The Rule 56(d) Order permits discovery not only into all documents governing the flow of Excise Taxes and HTA Pledged Revenues including Fund 278, and records reflecting the flow of funds into and out of Fund 278, but also into "[a]ll policies and procedures related to the flow of Excise Taxes and HTA Pledged Revenues." That topic obviously also includes policies and procedures related to Fund 278. Defendants' position is that policies and procedures regarding Fund 278 and its subaccounts must be produced, and because Fund 278 is an accounting entity, policies and procedures include documents that reflect accounting standards adopted by the Commonwealth and HTA as they relate to the Fund and any subaccount designations. |