IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, ET AL.<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17-BK-3283-LTS |
| LA LIGA DE CIUDADES DE PUERTO RICO<br><br>Plaintiff<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AUTORIDAD DE ASESORÍA FINANCIERA Y AGENCIA FISCAL ("AAFAF"); CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES ("CRIM"), ADMINISTRACIÓN DE SEGUROS DE SALUD DE PUERTO RICO ("ASES"), and LUIS M. COLLAZO RODRÍGUEZ, in his Official Capacity as Administrator of the Sistemas de Retiro de los Empleados del Gobierno y la Judicatura del Estado Libre Asociado de Puerto Rico<br><br>Defendants | Adversary No.: |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

TO THE HONORABLE COURT:

COMES NOW Plaintiff, La Liga de Ciudades de Puerto Rico (hereinafter "La Liga"), by and through its undersigned counsel, and respectfully states, alleges, and prays:

**1. Nature of the Action, Jurisdiction and Venue**

1.1. This is an action for declaratory and injunctive relief brought pursuant to Section 106(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), 48 U.S.C. § 2126(a).

1.2. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action asserts claims against The Financial Oversight and Management Board for Puerto Rico ("Oversight Board") or otherwise relates the Title III proceedings.

1.3. The Court also has supplemental jurisdiction over the Puerto Rico claims pursuant to 29 U.S.C § 2617 since the federal and the Puerto Rico claims asserted in this action are so interrelated as to form part of the same case and controversy and derive from a common nucleus of operative facts.

1.4. Venue is proper in this District pursuant to PROMESA § 106(a) because this action pertains to the covered territory of Puerto Rico. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs' claims arose within this judicial district.

1.5. This is an appropriate action for declaratory and injunctive relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, since there currently exists an actual, justiciable controversy between the Parties regarding the validity of the debts that Defendants claim that the Municipalities of Puerto Rico have for the monies that they were exempted from paying during the time that Puerto Rico Law 29-2019 (hereinafter "Law 29") was in effect.

**2. The Parties**

2.1. Plaintiff La Liga is a not-for-profit and nonpartisan corporation organized and existing pursuant to the Laws of the Commonwealth of Puerto Rico, whose members are Mayors of Municipalities of Puerto Rico from diverse ideological persuasions.

2.2. According to La Liga's By-Laws, La Liga's vision is "to unite local governments in a nonpartisan effort to improve the quality of life of the Puerto Rican people." Its mission is "to strengthen the capacity of local governments and communities in order to better face the various social, structural, fiscal and governance challenges." Consistent with that vision and mission, La Liga develops and implements various initiatives, tempered to the needs and realities of municipal governments and their communities. The most recent initiative developed and adopted by La Liga is to defend the decimated municipal finances from the onslaught of austere measures imposed by the Oversight Board.

2.3. La Liga has organizational standing to bring this action since the strengthening of the municipal finances is germane to La Liga's mission and purpose, the Municipalities that are headed by La Liga's members have suffered substantial economic losses as a result of the illegal withholding and diversion of municipal funds by Defendant Centro de Recaudación de Ingresos Municipales (hereinafter "CRIM") to off-set inexistent debts, and the participation of the individual La Liga members is not necessary for the issuance of the remedies herein requested.

2.4. Defendant Oversight Board is a legal entity that was created by Section 101(b)(1) of PROMESA, 48 U.S.C. sec. 2121(c)(1), with capacity to sue and to be sued.

2.5. Defendant Autoridad de Asesoría Financiera y Agencia Fiscal (hereinafter "AAFAF") is a public corporation and instrumentality of the Commonwealth of Puerto Rico that was created by Puerto Rico Law 2-2017 as amended, 3 L.P.R.A. §§ 9361 *et. seq.*, with capacity to sue and to be sued. Article 5(c) of Law 2-2017, 3 L.P.R.A. § 9365(c), expressly assigned to AAFAF "all the functions of fiscal agent, financial advisor and informative agent" that the now extinct Government Development Bank had pursuant to Puerto Rico Law 272-1945. Accordingly, AAFAF became the administrator of the Municipal Debt Redemption Fund that nourishes from the Additional Special Tax (hereinafter "CAE") that CRIM collects on behalf of the Municipalities and for their benefit. Likewise, AAFAF has the same fiduciary duties of the extinct Government Development Bank over the monies of Municipalities. *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873, 893 (1996).

2.6. Defendant CRIM is a legal entity, separate and independent from any other agency or instrumentality of the Commonwealth of Puerto Rico, that has capacity to sue and to be sued and that was originally created by the now repealed Puerto Rico Law 80-1991, 21 L.P.R.A. §5801 *et seq.*, as part of the municipal reform of 1991, whose purpose was to establish a new public policy with respect to the municipal finances and to grant Municipalities the necessary powers to assume a fundamental role in their urban, social and economic development.[1]

---

[1] At present, CRIM is regulated by Book VII of the Municipal Code of Puerto Rico, Puerto Rico Law 107-2020, as amended, entitled "Hacienda Municipal". The purpose of the Municipal Code was, as stated in the final paragraph of its Explanatory Preamble, "to establish the legal municipal framework of the 21st Century, with the goal that Municipalities renew themselves and search for real alternatives given the new worldly stage that they face."

2.7. The Legislative Assembly of Puerto Rico delegated to CRIM the administration of property taxes on behalf of the Municipalities. In compliance with that duty, CRIM must render fiscal services for the benefit of the Municipalities and is responsible to notify, appraise, collect, receive, and distribute the monies raised by the property taxes and any other funds destined by law to benefit the Municipalities. Accordingly, CRIM has a non-delegable fiduciary duty towards the Municipalities regarding the collection, management, and distribution of the municipal funds under its care and responsibility.

2.8. Defendant Administración de Seguros de Salud de Puerto Rico (hereinafter "ASES") is a public corporation with legal personality separate and distinct from the Commonwealth of Puerto Rico that was created by Puerto Rico Law 27-1993, 24 L.P.R.A. §7003 *et seq*. ASES was created to implement, manage and negotiate, through contracts with insurers and/or health services organizations, a health insurance system that provides the Puerto Rico residents access to hospital and medical care irrespective of their economic condition and ability to pay. According to ASES's enabling statute, the purpose is to provide a national health system consistent with constitutional duty of the Commonwealth of Puerto Rico to guarantee the health of and medical assistance for every citizen as mandated by Section 20, Article II, of the Puerto Rico Constitution.

2.9. Originally, Section 11 of Law 72-1993 established that the contributions of the Municipalities to defray the expenses of the national health system would be negotiated with each Municipality. Section 11 was amended by Puerto Rico Law 29-1997, which established a system of fixed contributions to ASES by the Municipalities and authorized CRIM to withhold funds from each Municipality to account for those

contributions. Thus, Law 29-1997 forced the Municipalities to subsidize the national health system through fixed contributions.

2.10. Defendant Luis M. Collazo Rodríguez (hereinafter "Collazo") is the Administrator of the Sistemas de Retiro de los Empleados del Gobierno y la Judicatura del Estado Libre Asociado de Puerto Rico (hereinafter "Retirement System") and is in charge of administering the funds that the Retirement Systems receive for the exclusive benefit of the retired government employees, including those that worked for the Municipalities. He is being sued in his official capacity.

**3. Law 29: its origin, purpose, and effect**

3.1. Prior to 2017, the Municipalities, in their capacity as employers, paid to the Retirement System all the contributions made by their employees and by them as required by law. In exchange for those contributions, municipal employees were worthy of the pension benefits provided by the Retirement System.

3.2. The Retirement System failed to properly administer the funds received and defaulted in its obligations. As a result, the Retirement System became insolvent.

3.3. In response the Retirement System's insolvency, the Oversight Board filed a petition seeking to allow the Retirement System to avail itself of the protections of Title III of PROMESA. "The filing of said petition under Title III of PROMESA began a restructuring process of said system's obligations under the supervision of the United States District Court for the District of Puerto Rico.:" 3 L.P.R.A. § 9533.

3.4. The Fiscal Plan for Puerto Rico that was certified by the Oversight Board on March 13, 2017 ("2017 Fiscal Plan") established a pension reform measure to "[s]witch to pay-as-you-go model". Fiscal Plan for Puerto Rico, certified on March 13, 2017, p. 22.

3.5. Thereafter, the Puerto Rico Legislative Assembly enacted Law 106-2017, which, among other respects, established the "*Pay Go*" system and forced the Municipalities to make additional contributions to the Retirement System to pay for the pensions of the retired municipal employees. Although the Municipalities had made all the required contributions for the retired municipal employees and those contributions were supposed to ensure payment of the pensions for all those employees, the "*Pay Go*" system requires the Municipalities to pay the pensions in full on a yearly basis.

3.6. Up until the enactment of Law 106-2017, payment of the pensions of the retired municipal employees was the exclusive responsibility of the Retirement System since the Municipalities had already made all the required contributions for those retirees while they were under the Municipalities' employ. Although the Municipalities had nothing to do with the Retirement System's insolvency, Law 106-2017 transferred that payment obligation to the Municipalities with utter disregard for the municipal finances.

3.7. By time of the certification of the 2017 Fiscal Plan and the enactment of Law 106-2017, the Municipalities were not designated as covered entities subject to oversight under PROMESA. Coincidentally, the Municipalities were designated as covered entities on May 9, 2019, the same day that the Presidents of both legislative bodies signed the bill that became Law 29. It bears to notice that as of today, the Oversight Board has only tried to oversee ten (10) Municipalities.

3.8. The fiscal impact of Law 106-2017 over the Municipalities was of such a magnitude that the Puerto Rico Legislative Assembly promulgated Law 29 as a means to alleviate the increased fiscal responsibility over the municipal finances. To that end, the first paragraph of Law 29's Explanatory Preamble recognized that historically the

Municipalities have been obliged "to assume responsibilities of the central government, without being accompanied with the corresponding allocation of funds."

3.9. Law 29, which was approved unanimously in the Senate and with only one vote against in the House of Representatives, became effective on May 17, 2019 and exempted the Municipality from making contributions to ASES and to the Retirement System under the "*Pay Go*" program.

3.10. Law 29 also provided that the Municipalities would make contributions to a special fund at the rate of 50% of the contributions previously made to ASES and of 90% of those previously made under the "*Pay Go*" program. CRIM was then required to distribute those funds to the Municipalities using the formula that had been devised for the distributions made from the "Fondo de Equiparación".

**4. Adversary No. 19-393 and its aftermath**

4.1. On July 3, 2019, the Oversight Board initiated a judicial action challenging the ability of the elected government of the Commonwealth of Puerto Rico (the "Commonwealth") to implement and enforce Law 29. The Oversight Board argued that Law 29 was enacted in violation of PROMESA and was inconsistent with the Oversight Board's fiscal policies and determinations. *See, In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, Adv. Proc. No. 19-00393-LTS, 616 B.R. 238 (D.P.R. 2020).

4.2. In Adversary No. 19-393-LTS, the Oversight Board sued the then Governor of Puerto Rico and AAFAF to preclude the implementation of Law 29. No Municipality was included as a party to that action.

4.3. Motions to intervene presented by the Federación de Alcaldes de Puerto Rico, the Asociación de Alcaldes de Puerto Rico and the Municipality of San Juan were opposed by the Oversight Board and denied by the Court.

4.4. CRIM requested leave to appear as *amicus curie* to present relevant information about the devastating impact that Law 106-2017 had on the municipal finances and the equally disastrous consequences of failing to implement Law 29. *Municipal Revenue Collection Center's (CRIM) Motion for Leave to File Amicus Curiae Brief in Support of Defendant's Opposition to Motion for Summary Judgment*, Adv. Proc. No. 19-00393-LTS, Dkt. 93. Yet, the Court denied the *amicus curie* appearance because it deemed that the analysis was not pertinent to the Court's consideration and determination of the issues which were about the relationship between the Oversight Board and Puerto Rico's territorial government. *Order Denying Municipal Revenue Collection Center's Motion for Leave to File Amicus Curiae Brief in Support of Defendants' Opposition to Motion for Summary Judgment*, Adv. Proc. No. 19-00393-LTS, Dkt. 99.

4.5. On April 15, 2020, the Court issued an Opinion and Order (hereinafter "April 15th O&O"), which declared Law 29 "unenforceable and of no effect" and "permanently enjoined [Defendants] from implementing and enforcing Law 29." Adv. Proc. No. 19-00393-LTS, Dkt. 107, p. 32. However, the Court delayed the effective date of the April 15th O&O until May 6, 2020.

4.6. The motions filed after the issuance of the April 15th O&O show that at the outset there has been controversy as to the effect and extent of the Court's ruling. Particularly, the Oversight Board stated that "[i]t appear[ed], however, that not everyone understood the meaning of the Court's Order", and that the CRIM intended to distribute

to the Municipalities their funds, while the Oversight Board opposed the distribution because it wanted a reimbursement of amounts allegedly owed by the Municipalities. *Informative Motion of Oversight Board Regarding Law 29 Issues*, Adv. Proc. No. 19-00393-LTS, Dkt. 108.

4.7. Given that the April 15th O&O became effective on May 6, 2020, Law 29 was in full force and effect from May 17, 2019 until May 6, 2020.

4.8. During that time span, the Municipalities did not make the contributions to ASES nor to the "Pay Go" program relying on the exemptions decreed by Law 29.

4.9. Thereafter, the Oversight Board propounded an incorrect interpretation of the April 15th O&O and began to demand CRIM, ASES and the Retirement System to collect form the Municipalities the contributions that Law 29 had exempted and that the Municipalities did not make. According to the Oversight Board, the April 15th O&O purportedly nullified everything that had been done during the time that Law 29 was in full force and effect as if Law 29 had never existed.

4.10. CRIM, ASES and the Retirement System caved-in to the pressure of the Oversight Board and adopted the incorrect interpretation that ascribed a retroactive effect to the April 15th O&O. Accordingly, they began to take steps to collect the contributions that the Municipalities would have been obliged to make from May 17, 2019 thru May 6, 2020 had Law 29 not been enacted.

4.11. When the Municipalities resisted, CRIM illegally withheld all disbursements to which the Municipalities were entitled and diverted the monies to the Retirement System and to ASES. The municipal funds illegally withheld and diverted by CRIM were

used to set-off the debt that the Municipalities purportedly had pursuant to the Oversight Board's incorrect interpretation of the April 15th O&O.

4.12. Due to those illegal withholdings and diversion of municipal funds, the Municipalities have seen their finances seriously hampered, all due to an incorrect interpretation of a judicial decision rendered in a judicial proceeding to which they were not parties and in which they were denied any participation.

4.13. While the adverse impact on the municipal finances caused by Defendant's actions as previously described has yet to be determined with mathematical certainty, La Liga conservatively estimates that Defendants have illegally deprived the Municipalities of not less than Three Hundred Forty Million Dollars ($340,000.00).

## 5. Bases for the requested remedies

5.1. The purported debts that CRIM, ASES, and the Retirement System claim, premised on the incorrect interpretation of the Oversight Board, are inexistent inasmuch as the April 15th O&O only has prospective effect. *See Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) ("[I]njunction is a forward-looking remedy.").

5.2. Moreover, neither CRIM nor the Municipalities were parties to Adversary No. 19-393, which means that the April 15th O&O has no binding effect over them. *See Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 48 n.12 (1st Cir. 2012) (noting that the Federal Declaratory Judgment Act "does not contain any provisions indicating that declaratory judgments are authoritative vis-à-vis nonparties to the litigation.").

5.3. Additionally, the April 15th O&O not only did not conclude nor declare that Law 29 was null and void *ab initio* but also could not do so. *See* Jonathan F. Mitchell, "*The Writ-Of-Erasure Fallacy*", 104 Virginia Law Review 933, 947 (2018) ("[N]either the

courts nor the executive has the power to prevent a duly enacted statute from taking effect. All that a court can do is decline to enforce the statute and enjoin the executive from enforcing it.").

5.4. Given that the acts undertaken by the Municipalities and CRIM during the time that Law 29 was in full force and effect are valid, the debts claimed by Defendants do not exist.

5.5. The continuous and illegal pressure of the Oversight Board to CRIM to withhold and divert the monies of the Municipalities to reimburse the allege debt constitutes a tortious interference with the fiduciary duties that both CRIM and AAFAF have towards the Municipalities.

5.6. In this case, the Oversight Board has imposed its will over CRIM and forced CRIM to act in detriment of the Municipalities and in breach of CRIM's fiduciary duties.

5.7. Moreover, the continuous and illegal pressure of the Oversight Board to CRIM in order to withhold the monies of the municipalities to reimburse the allege debt also violates Law 81-1991, which unequivocally established that no "amounts whatsoever may be spent or obligated in a fiscal year that exceed the appropriations and funds authorized by ordinances or resolutions for said year." 21 L.P.R.A. § 4354. No disbursement of municipal public funds shall be done if not budgeted.

5.8. "The mayor shall administer the general expenses budget" according to the provisions of Law 81-1991. 21 L.P.R.A. § 4308. Therefore, neither the CRIM nor the Oversight Board as its representative have authority to make decisions regarding the administration of municipal budget.

5.9. The unilateral decision of the Oversight Board requiring the CRIM to withhold and divert the monies of the Municipalities to reimburse the allege debt, when that expenditure was not in the budget of the Municipalities for fiscal year 2019-20, violated Law 81-1991, because non-budgeted expenditures are expressly prohibited and only the Mayors have the authority to administer municipal budgets.

5.10. PROMESA has no provision granting any authority to the Oversight Board over democratically elected Mayors.

WHEREFORE, La Liga respectfully requests the Honorable Court to:

a. enter a Declaratory Judgment decreeing that the debts claimed by CRIM, ASES and the Retirement System, premised of the Oversight Board's faulty interpretation of the April 15th O&O are inexistent and that the withholdings made by CRIM to purportedly offset those inexistent debts are illegal;

b. grant injunctive relief prohibiting Defendants from collecting from the Municipalities any of the monies that Law 29 exempted them to pay from May 17, 2019 thru May 6, 2020 and enjoining the Oversight Board from tortiously interfering with the fiduciary duties that CRIM and AAFAF have towards the Municipalities;

c. order the immediate disbursement of any funds that CRIM has withheld from any Municipality to offset the inexistent debts;

d. order the Retirement System and ASES to return to CRIM any and all monies that they received to purportedly pay for the inexistent debts;

e. tax defendants with costs and attorney's fees; and

f. grant any other and further relief as may be deemed just and proper.

In San Juan, Puerto Rico, this 14th day of March, 2021.

<u>*s/Tanaira Padilla Rodríguez*</u>
TANAIRA PADILLA RODRÍGUEZ
USDC-PR No. 227912
tanairapadilla@yahoo.com

Ponce de León Ave. 1225
VIG Tower Suite 1500
San Juan, PR 00907
Tel. 787-620-0527

<u>*S/Guillermo Ramos Luiña*</u>
GUILLERMO RAMOS LUIÑA
USDC-PR 204007
gramlui@yahoo.com

P. O. Box 22763, UPR Station
San Juan, PR 00931-2763
Tel. (787) 620-0527
Fax (787) 620-0039

*Attorneys for Plaintiff*

- 14 -