**Estimated Hearing Date**: April 28, 2021 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: April 8, 2021 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 19–BK–5523-LTS<br><br>**This Application relates only to PBA, and shall be filed in the lead case No. 17-BK-3283-LTS and PBA's Title III Case (Case No. 19-BK-5523-LTS)** |

## SUMMARY SHEET TO THIRD INTERIM FEE APPLICATION OF PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF THE DEBTOR, THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY, FOR THE PERIOD JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020 AND NOTICE OF ANNUAL RATE ADJUSTMENT PROVIDED IN ORIGINAL ENGAGEMENT LETTER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## Schedule 1

### Summary of Fees and Expenses Paid to Date and the Balance of Fees and Expenses for which Allowance and Payment is Requested for the Compensation Period

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | June 1, 2020 through September 30, 2020 (the "Compensation Period") |
| Amount of Fees Sought excluding Gross-Up Amount: | $27,642.00 |
| Gross-Up Amount:[2] | $2,764.20 |
| Amount of Expense Reimbursement Sought: | $0.00 |
| Total Fees and Expenses Sought for Compensation Period including Gross-Up Amount: | $30,406.20 |
| Proskauer's Incremental Fees for Compensation Period that Accrued, But Whose Payment Is Not Immediately Requested:[3] | $1,070.00 |

---

[2] Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257–2018) starting December 10, 2018 (the "Withholding"). But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date hereof, Proskauer has not yet requested payment of the Gross-Up Amount, but has recently received information indicating it may need to do so.

[3] Pursuant to the Engagement Letter dated November 25, 2016 between the Oversight Board and Proskauer (as defined below at footnote 7), Proskauer's rates under the Engagement Letter increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1–2). Effective January 1, 2020, the rate increase was 4%, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour. Pursuant to paragraph 2.c.2 of the Court's order dated June 26, 2019 [Case No. 17-3283, ECF No. 7678], Proskauer gave notice of this rate increase by filing a sworn certification, attached to Proskauer's First Interim Application as Exhibit A [Case No. 17-3283, ECF No. 12835]. Billed at these rates pursuant to the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $1,070.00, as detailed in the attached **Exhibit E**. The Oversight Board had requested, however, and Proskauer agreed not to request currently the allowance and payment of these incremental fees, along with the incremental fees under the Engagement Letter for the first and second compensation periods of $3,229.80 and $6,344.20, respectively. Proskauer intends to request payment of these incremental fees at a later date. Pursuant to the Engagement Letter, Proskauer's rates increased by an additional 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour. For fees accrued January 1, 2021

This is a(n) _____ Monthly __X__ Interim ___ Final Fee Application

This is the third interim fee application filed by Proskauer in the Debtor's Title III Case.  The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

and afterwards, the Oversight Board has terminated its request that Proskauer not request current payment of its full fees inclusive of rate increases under its Engagement Letter, and Proskauer again provides notice of such automatic rate adjustment under its Engagement Letter pursuant to paragraph 2.c.2 of the Court's order dated June 26, 2019 [Case No. 17-3283, ECF No. 7678].

### Third Interim Compensation Period
### June 1, 2020 – September 30, 2020

| Statement and Date Served | Period Covered | Total Fees Incurred | Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Tenth** 7/23/2020 | 6/1/20 to 6/30/20 | $13,415.40 | $12,073.86 | $0.00 | $12,073.86 | $0.00 |
| **Eleventh** 8/21/2020 | 7/1/20 to 7/31/20 | $5,988.90 | $5,390.01 | $0.00 | $5,390.01 | $0.00 |
| **Twelfth** 9/10/2020 | 8/1/20 to 8/31/20 | $6,466.20 | $5,819.58 | $0.00 | $5,819.58 | $0.00 |
| **Thirteenth** 10/5/2020 | 9/1/20 to 9/30/20 | $1,771.50 | $1,594.35 | $0.00 | $1,594.35 | $0.00 |
| **Totals:** | | **$27,642.00** | **$24,877.80** | **$0.00** | **$24,877.80** | **$0.00** |

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys: | $789.00[4] |
| Blended Rate in This Application for All Timekeepers: | $527.52 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $24,877.80 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed: | $0.00 |
| Number of Professionals Included in this Application:[5] | 12 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client:[6] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period: | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period: | 11 |
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No.  Proskauer's Engagement Letter with the Oversight Board provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent."  (Engagement Letter at 1–2).  As of January 1, 2020, the rate increase was 4%, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of |

---

[4]  This rate excludes non-attorneys (*e.g.*, paralegals) and includes e-discovery attorneys.

[5]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[6]  As noted in the Staffing Plan for the Compensation Period at Exhibit D-2 of the Application, the number of timekeepers expected to work on this matter during the Compensation Period was 37, and thus the actual number of timekeepers was 25 fewer than anticipated.

$820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour. Billed at these rates, as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $1,070.00, as detailed in the attached **Exhibit E**. Pursuant to the Oversight Board's request, Proskauer has not included a request for current payment of the amount attributable to the increase in its hourly rates provided for in its Engagement Letter with the Oversight Board. Instead, Proskauer is currently requesting the allowance and payment of the amount attributable to the preexisting prevailing rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals. For the first and second compensation periods, Proskauer similarly deferred payment of the incremental amounts of $3,229.80 and $6,344.20, respectively. Proskauer intends to request payment of these incremental fees at a later date.

The Oversight Board has terminated its request that Proskauer defer collection of incremental fees for fees accruing on and after January 1, 2021.

In addition, Proskauer again provides notice of Proskauer's automatic 2021 rate adjustment, pursuant to the Engagement Letter, equal to the lesser of Proskauer's actual percentage rate increase and 4%, pursuant to paragraph 2.c.2 of the Court's order dated June 26, 2019 [Case No. 17-3283, ECF No. 7678]. Although this Application does not cover fees accrued in 2021, pursuant to the Engagement Letter, Proskauer's rates increased 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour.

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period June 1, 2020 through September 30, 2020**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[7] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| **PARTNERS** | | | | |
| Mungovan, Timothy W. | Litigation – 1994 | $789 | 0.50 | 394.50 |
| Rosen, Brian S. | BSGR&B[8] – 1983 | $789 | 5.10 | 4,023.90 |
| **Total for Partners:** | | | **5.60** | **$4,418.40** |

[7] In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases. Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2. Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1. Proskauer's November 25, 2016 engagement letter with the Oversight Board (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent (a copy of the Engagement Letter is attached to the Application as **Exhibit F**).

Furthermore, the Engagement Letter provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1–2). As of January 1, 2020, the rate increase was 4%, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour. Billed at these rates as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $1,070.00, as detailed in the attached **Exhibit E**. Pursuant to the Oversight Board's request, however, Proskauer has not included a request for current payment of the amount attributable to the increase in its hourly rates provided for in its Engagement Letter with the Oversight Board, or the incremental amounts for the first and second compensation periods of $3,229.80 and $6,344.20 respectively. Instead, Proskauer is currently requesting the allowance and payment of fees calculated at the preexisting rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals. Proskauer intends to request payment of these incremental fees at a later date.

Pursuant to the Engagement Letter, Proskauer's rates increased 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour. Proskauer again provides notice of the automatic rate adjustment, pursuant to paragraph 2.c.2 of the Court's order dated June 26, 2019 [Case No. 17-3283, ECF No. 7678]. Pursuant to the Engagement Letter, the rate increase equals the lesser of Proskauer's actual percentage rate increase and 4%, pursuant to paragraph 2.c.2 of the Court's order dated June 26, 2019 [Case No. 17-3283, ECF No. 7678]. Although this Application does not cover fees accrued in 2021, pursuant to the Engagement Letter, Proskauer's rates increased 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour.

[8] Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| *ASSOCIATES* | | | | |
|---|---|---|---|---|
| Blackwell, Brooke H. | BSGR&B – 2018 | $789 | 11.00 | $8,679.00 |
| Bloch, Aliza H. | Litigation – 2019 | $789 | 0.60 | $473.40 |
| Carino, Elisa M. | Litigation – 2019 | $789 | 1.50 | $1,183.50 |
| Esses, Joshua A. | BSGR&B – 2017 | $789 | 1.60 | $1,262.40 |
| Ma, Steve | BSGR&B – 2014 | $789 | 0.50 | $394.50 |
| Stafford, Laura | Litigation – 2012 | $789 | 4.10 | $3,234.90 |
| Volin, Megan R. | BSGR&B – 2020 | $789 | 1.10 | $867.90 |
| **Total for Associates:** | | | **20.40** | **16,095.60** |
| *PARAPROFESSIONALS* | | | | |
| Adejobi, Olaide M. | Litigation Paralegal – N/A | $270 | 2.00 | $540.00 |
| Petrov, Natasha B. | BSGR&B Paralegal – N/A | $270 | 22.00 | $5,940.00 |
| Singer, Tal J. | BSGR&B Paralegal – N/A | $270 | 2.40 | $648.00 |
| **Total for Paraprofessionals:** | | | **26.40** | **$7,128.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys and Paraprofessionals Total:** | **52.40** | **$27,642.00** |

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period June 1, 2020 through September 30, 2020**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 0.80 | $631.20 |
| 202 | Legal Research | 0.60 | $162.00 |
| 204 | Communications with Claimholders | 1.10 | $867.90 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 0.90 | $710.10 |
| 206 | Documents Filed on Behalf of the Board | 12.50 | $9,862.50 |
| 207 | Non-Board Court Filings | 0.50 | $394.50 |
| 210 | Analysis and Strategy | 9.10 | $7,179.90 |
| 212 | General Administration | 5.00 | $1,350.00 |
| 218 | Employment and Fee Applications | 21.90 | $6,483.90 |
| | **Total for All Project Categories:** | **52.40** | **$27,642.00** |

### Schedule 4

**Summary of Actual and Necessary Expenses Incurred
for the Period June 1, 2020 through September 30, 2020**

| EXPENSE CATEGORY | AMOUNTS |
|---|---|
| N/A | 0.00 |
| **Total:** | **$0.00** |

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | **BILLED**<br><br>**Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy*** | **BILLED**<br><br>**In this fee application[9]** |
| Partners | $1,217 | $789 |
| Senior Counsel | $1,043 | N/A |
| Associates (7 or more years since first admission) | $951 | $789 |
| Associates (4–6 years since first admission) | $901 | $789 |
| Associates (1–3 years since first admission) | $752 | $789 |
| e-Discovery Attorneys | $739 | N/A |
| Paraprofessionals | $337 | $270 |
| **All Timekeepers Aggregated:** | **$928** | **$527.52** |

---

[9] *See supra* note 7.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17–BK–3283–LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br>Case No. 19–BK–5523-LTS<br><br>**This Application relates only to PBA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and PBA's Title III Case (Case No. 19-BK-5523-LTS)** |

# THIRD INTERIM FEE APPLICATION OF
# PROSKAUER ROSE LLP FOR COMPENSATION FOR SERVICES
# RENDERED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT
# AND MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE OF
# THE DEBTOR, THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY, FOR THE
# PERIOD JUNE 1, 2020 THROUGH SEPTEMBER 30, 2020 AND NOTICE OF ANNUAL
# RATE ADJUSTMENT PROVIDED IN ORIGINAL ENGAGEMENT LETTER

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and
Management Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the
Puerto Rico Public Buildings Authority (the "Debtor" or "PBA") pursuant to section 315(b) of the
*Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby
submits this third interim application (the "Application"),[3] pursuant to PROMESA sections 316
and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4]
Rule 2016–1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the
District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for
Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C.
§ 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United
States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this
Court's *Second Amended Order Setting Procedures for Interim Compensation and
Reimbursement of Expenses of Professionals* [ECF No. 3269][5] (the "Interim Compensation
Order"), for allowance of interim compensation for professional services performed by Proskauer
for the period commencing June 1, 2020 through and including September 30, 2020 (the
"Compensation Period"), in the amount of **$30,406.20**, which is comprised of (i) fees for
professional services rendered in the amount of $27,642.00, and (ii) the Gross-Up Amount in the
amount of $2,764.20.[6]  No expenses were incurred by Proskauer during the Compensation Period

---

[2]   PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]   The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not
address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of
other Title III debtors, or (b) outside the Title III process.

[4]   The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

[5]   Unless otherwise expressly indicated, ECF Numbers refer to the docket of the Commonwealth's Title III Case, Case
No. 17-BK-3283-LTS.

[6]   Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional
tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257–2018) starting

in connection with these services.  In support of the Application, Proskauer respectfully avers as follows:

## Jurisdiction

1.     The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

3.     The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

## Background

4.     On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's first seven voting members.

5.     Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.     On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

---

December 10, 2018 (the "Withholding").  But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date hereof, Proskauer has not yet requested payment of the Gross-Up Amount, but has recently received information indicating it may need to do so.

7.　　　On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

8.　　　By the letter dated September 25, 2019, and in light of the ongoing efforts in connection with the Joint Plan, as defined below, the Governor of Puerto Rico requested that the Oversight Board file a petition for PBA under Title III of PROMESA.

9.　　　On September 27, 2019, the Oversight Board issued the Debtor's restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PBA pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Debtor's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

10.　　On April 15, 2020, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Public Buildings Authority, for the Period September 1, 2019 through January 31, 2020 and Notice of Deferral of Request for Payment of Rate Increase* [ECF No. 12835] (the "First Interim Application").

11.　　On September 18, 2020, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Public Buildings Authority, for the Period February 1, 2020 through May 31, 2020* [ECF No. 14356] (the "Second Interim Application").

12.　　On July 23, 2020, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its tenth monthly fee statement for the period June 1, 2020 through June 30,

2020.  On August 21, 2020, Proskauer served on the Notice Parties its eleventh monthly fee statement for the period July 1, 2020 through July 31, 2020.  On September 10, 2020, Proskauer served on the Notice Parties its twelfth fee statement for the period August 1, 2020 through August 31, 2020.  On October 5, 2020, Proskauer served on the Notice Parties its thirteenth monthly fee statement for the period September 1, 2020 through September 30, 2020.

13.    In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$24,877.80** (payment of ninety percent (90%) of the compensation sought and reimbursement of one-hundred percent (100%) of expenses incurred) and has received $**24,877.80** with respect to fee statements filed during the Compensation Period.

### Summary of Services Rendered by Proskauer During the Compensation Period

14.    The instant Application is Proskauer's third application for interim compensation in the Debtor's Title III Case.  To make the review of Proskauer's fee applications in all the pending Title III cases more efficient for the Court and other readers, paragraphs 15 through 18 of the instant Application and the corresponding paragraphs 21 through 24 in each of Proskauer's tenth interim fee applications in the pending Commonwealth, ERS, HTA, and PREPA Title III cases are identical and cover the principal activities in all the Title III cases.

15.    Since the commencement of these Title III cases, Proskauer has achieved significant progress on behalf of the Oversight Board.[7]  Due to the global coronavirus outbreak and its spread throughout the United States and Puerto Rico, this Compensation Period presented unexpected and fundamental economic and administrative challenges to the Commonwealth and its covered instrumentalities.  During this challenging time, the Oversight Board has been focused

on preserving and improving the physical and financial well-being of the people of Puerto Rico,

assessing the impact of the COVID-19 pandemic, developing strategies to get the Commonwealth

through this unprecedented crisis, and working collaboratively with the Puerto Rico Government

and its agencies toward these ends.  Proskauer continued to provide legal and strategic advice to

the Oversight Board, considering as its main priority the health, safety, and economic welfare of

the people of Puerto Rico.  Among others, Proskauer's notable undertakings during this

Compensation Period included:

- <u>Development of the Amended Joint Plan and Disclosure Statement</u>.  On March 27, 2020, in response to the spread of the COVID-19 pandemic, the Title III Court granted the Oversight Board's request to adjourn the Disclosure Statement Hearing to an undetermined date to properly assess the ramifications of the pandemic, the measures being implemented by the Government, and their effect on the Debtors' Title III cases [ECF No. 12549].  During the Compensation Period, at the Court's direction, Proskauer, on behalf of the Oversight Board, provided the Court with three status reports in connection with omnibus hearings, summarizing the Oversight Board's activities and the status of the Debtors' Title III Cases [ECF Nos. 13337, 13874, and 14315], and with two status reports specifically addressing the effects of the Government's response to the pandemic, the fiscal year 2021 fiscal plans and budgets, and the timeline for the Debtors' Plan of Adjustment and Disclosure Statement [ECF Nos. 13660 and 14195].  On behalf of the Oversight Board, Proskauer, under the guidance of the Mediation Team led by the Honorable Judge Barbara J. Houser, resumed discussions with AAFAF, the Debtors' creditors, and other parties in interest regarding the existing terms of the Amended Plan of Adjustment and any proposed modifications or amendments.  On July 7, 2020, Ambac Assurance Corporation ("<u>Ambac</u>") filed its *Motion to Strike Certain Provisions of the Amended Plan Support Agreement by and among the Financial Oversight and Management Board for Puerto Rico, Certain GO Holders, and Certain PBA Holders* [ECF No. 13573], which was later joined by Assured Guaranty Corporation and Assured Guaranty Municipal Corporation (together, "<u>Assured</u>") [ECF No. 14091]. While the Court denied the motion, it required the Oversight Board to develop and disclose the contours of its proposed amended plan and propose a schedule for the path to confirmation by February 10, 2021 [ECF No. 14987].  This deadline was further extended to March 8, 2021 [ECF No. 15849]. On March 8, 2021, Proskauer filed the *Second Amended Title III Joint*

---

[7]  The First and Second Interim Applications contain an overview of Proskauer's progress on behalf of the Oversight Board from the commencement of the case until the end of the time period covered by the Second Interim Application.  *See* Case No. 19-5523, ECF Nos. 70 and 96.

*Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 15976] and related disclosure statement [ECF No. 15988].

- <u>New Fiscal Plans and Budgets</u>.  With the continuing global pandemic, the main focus of the Oversight Board remained on protecting and improving the physical and financial wellbeing of the people of Puerto Rico, providing ongoing reasonable, comprehensive, and sustainable solutions, and prudently and safely reopening critical businesses.  In addition to the $160 million of Puerto Rico's Emergency Reserve Fund, which the Oversight Board had previously authorized, the Oversight Board created a $787 million emergency measure support package. These emergency reserve financings were available because the Oversight Board had imposed and pursued sound budgeting practices and fiscal plans for the last three years. Proskauer attorneys advised the Oversight Board in its close work with the Puerto Rico Government on the most efficient ways of allocating these funds to ensure that the support reached as expeditiously as possible those who needed the funds most. To ensure the Government had the necessary funds to help the people of Puerto Rico, the Oversight Board proposed to increase the Emergency Reserve by $536 million, and granted access to Emergency Reserve funding for expenses in response to tropical storms Isaiah and Laura and the drought Puerto Rico experienced. In late May and June of 2020, Proskauer advised the Oversight Board on developing and certifying the latest Fiscal Plan for the Commonwealth, with a key focus on changes in the fiscal projections as a result of the pandemic and numerous earthquakes that occurred in the preceding months, allowing for a one year delay in the implementation of certain structural reforms and budgetary matters to permit the Government of Puerto Rico to concentrate on managing COVID-19 and its effects on the Puerto Rico economy.  During the Compensation Period, Proskauer worked diligently with the Oversight Board on reviewing and evaluating fiscal plans and budgets for eighteen additional entities, addressing the Government's outstanding obligations and granting certain extensions and requests for additional financing.

- <u>LUMA Energy Contract</u>.  Proskauer professionals, along with other Oversight Board advisors, devoted significant time and effort to negotiating a contract with LUMA Energy, LLC and LUMA Energy ServCo, LLC (collectively, "<u>LUMA Energy</u>"), for transitioning the maintenance and operation of the Puerto Rico Transmission and Distribution System (the "<u>T&D System</u>") to LUMA Energy, with the goal of providing safe, reliable, and affordable energy service to the island.  The Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement was approved by the Oversight Board and Governor Vazquez, and entered into by PREPA, the Puerto Rico Public-Private Partnerships Authority, and LUMA Energy on June, 22, 2020. On July 7, 2020, Proskauer, on behalf of the Oversight Board, joined other Government Parties in *PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement With LUMA Energy* (the "<u>LUMA Administrative Expense Motion</u>") [ECF No. 13583], requesting that the Title III Court allow an administrative expense claim for any

accrued and unpaid front-end transition obligations incurred by PREPA under the T&D Contract. Upon an urgent motion by the Official Committee of Unsecured Creditors (the "UCC"), Fuel Line Lenders (as defined in the motion) and Unión de Trabajadores de la Industria Eléctrica y Riego ("UTIER") [ECF No. 13602], the Court allowed the related discovery to proceed and scheduled the hearing on the LUMA Administrative Expense Motion for September 16, 2020. On August 12, 2020, the UCC, Cobra Acquisitions LLC, Whitefish Energy Holdings, LLC, Fuel Line Lenders, UTIER, and Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica ("SREAEE") filed their objections to the LUMA Administrative Expense Motion. Proskauer filed an omnibus reply to the objections on behalf of the Government Parties [ECF No. 14170], and defended the Oversight Board and PREPA's position at oral argument on September 16, 2020.  The LUMA Administrative Expense Motion was granted on October 14, 2020 [ECF No. 14609]. On October 26, 2020, UTIER and SREAEE appealed the Title III Court decision, *UTIER v. PREPA*, Case No. 20-2041 (1st Cir.).

16.     Throughout the Compensation Period, Proskauer continued its defense of the Title III Debtors' interests in numerous adversary proceedings and other contested matters brought by the Debtor's bondholders and monoline insurers, the Puerto Rico Government and its agencies, creditors, and other parties, analyzing and objecting to duplicative, incorrectly filed and otherwise deficient claims against the Debtors, negotiating and participating in a Court-ordered mediation process with creditors, bondholders, statutory committees, unions, and other parties to achieve the best possible outcome for the Debtors.  Among the major litigation matters in which Proskauer represented the Title III Debtors' interests during the Compensation Period are the following:

- Lift Stay Motions.  Certain insurers and holders of bonds issued by various Puerto Rico entities (Assured Guaranty Corporation, Assured Guaranty Municipal Corporation (both together, "Assured"), Ambac Assurance Corporation ("Ambac"), and Financial Guaranty Insurance Company ("FGIC"), collectively, the "Monolines"), filed several motions seeking relief from the automatic stay to allow them to seize certain Commonwealth revenues conditionally allocated under Puerto Rico law to HTA, PRIFA, and CCDA, in order to pay their prepetition bond claims (collectively, the "Lift Stay Motions").  Proskauer professionals defended the Oversight Board's position at the preliminary hearing on Lift Stay Motions on June 4, 2020, which concerned whether the movants had standing.  On July 2, 2020, the Title III Court issued its orders with respect to the Lift Stay Motions, holding that (i) in connection with HTA and PRIFA, the Monolines lacked even colorable claims to the liens and other property interests asserted in their Lift Stay Motions (other than in connection with revenues in certain specified bank accounts), and (ii) in connection with CCDA, the CCDA revenues were subject to the automatic stay and

the Monolines had a colorable claim to a security interest in certain bank accounts containing CCDA revenues.  The Court entered a scheduling order setting a further hearing on the Lift Stay Motions to resolve outstanding issues.[8] On July 20, 2020, the Monolines filed their *Consolidated Supplemental Brief Regarding Revenue Bond Lift Stay Motions* [ECF No. 13744], claiming that only a relief from stay could achieve a complete resolution of the issues and that such relief would not interfere with the Debtors' Title III Cases and would not prejudice other creditors, and additionally, that the CCDA movants lacked adequate protection. On behalf of the Oversight Board, Proskauer filed the *FOMB and AAFAF Consolidated Response to Movants' Consolidated Supplemental Brief Regarding Revenue Bond Lift Stay Motions* [ECF No. 13905], arguing that the Monolines had been and will be afforded due process in the Title III Court and the CCDA stay should remain in place because the movants alleged collateral was adequately protected and the stay should be maintained pending the resolution of the related CCDA adversary proceeding. On September 9, 2020, upon considering the supplemental briefing and other related submissions, including the Monolines' consolidated supplemental reply, the Court denied the HTA and PRIFA Stay Relief Motions [ECF No. 14186, Case No. 17-3567, ECF No. 921], and concluded that compelling circumstances existed to maintain the automatic stay as it applied to the CCDA, pending the resolution of the CCDA Adversary Proceeding [ECF No. 14187]. On September 23, 2020, the Monolines appealed the Title III Court decisions to the First Circuit Court of Appeals. *Assured Guaranty Corp. v. Commonwealth*, Case No. 20-1930 (1st Cir.); *Ambac Assurance Corp. v. Commonwealth*, Case No. 20-1931 (1st Cir.).  On February 4, 2021, the First Circuit heard oral argument on the HTA and PRIFA lift stay motions, and on March 3, 2021 affirmed the Title III Court's decision.

- <u>Claim Objections</u>.  In connection with proofs of claim filed against the Debtors,[9] Proskauer filed a total of 260 omnibus objections between October 1, 2019 and September 11, 2020.  Proskauer professionals dedicated a significant amount of time and effort to the careful review and analysis of the filed claims and preparing omnibus objections to those claims, as well as reviewing multiple responses and preparing replies in support of the objections.  Due to the COVID-19 pandemic-related restrictions, including the inability of the Court to hold in-person hearings, the Debtors were unable to prosecute certain pending omnibus objections to claims and Proskauer worked with the Title III Court to adjourn hearings on omnibus claim objections. Accordingly, over 177 omnibus objections to claims, affecting over 60,000 claimants, remained pending before the Court at the end of the Compensation Period. Proskauer worked diligently with the Court to establish a satellite hearing location at the Prime Clerk collection center in San Juan, where claimants would be able to appear and speak at a hearing, following strict public health and safety measures. The hearings on omnibus objections resumed on

---

[8] See *Order Scheduling Further Proceedings in Connection with the Revenue Bond Stay Relief Motions* [ECF No. 13607].

[9] Pursuant to the Bar Date Orders [Case No. 17-BK-3283-LTS, ECF Nos. 2521, 3160, 12260, and 13403], approximately 179,018 proofs of claim have been filed against the Debtors and logged by Prime Clerk, LLC.

October 29, 2020, with remote access for attorneys and the Satellite Site available to those claimants who chose to appear in person.

- Alternative Dispute Resolution (ADR). To promote the timely and cost-effective resolution of claims, Proskauer, on behalf of the Debtors, requested that the Title III Court approve amended procedures for alternative dispute resolution (the "ADR Procedures"). On April 1, 2020, the final ADR Procedures were approved by the Court.[10] On July 10, 2020, Proskauer submitted to the Court the *First Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 13609], and on August 24, 2020, the *Second Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14090]. On September 8, 2020, Proskauer filed the *First Alternative Dispute Resolution Status Notice* [ECF No. 14185], which provided an update to the Court regarding the status of the claims transferred into the ADR Procedures pursuant to the two notices, indicating that the First ADR Notice claims were in the offer-exchange phase (as defined in the ADR Order), and Proskauer professionals on behalf of the Debtors were preparing offer letters to the claimants listed in the Second ADR Notice.

- Administrative Reconciliation of Claims (ACR). To further facilitate the efficient and cost-effective resolution of the claims, Proskauer, on behalf of the Debtors, submitted to the Court that certain types of claims, such as claims for pension or retiree benefits, tax refunds, salaries and benefits owed to public employees, and union grievances, should remain within the auspices of the Debtors' administrative processes. The Court approved proposed ACR Procedures on March 12, 2020.[11] On July 10, 2020, Proskauer filed the *First Notice of Transfer of Claims to Administrative Claim Reconciliation* [ECF No. 13603], and on September 8, 2020, the *Second Notice of Transfer of Claims to Administrative Claim Reconciliation* [ECF No. 14182]. The First ACR Notice and the Second ACR Notice transferred 3,500 claims into Administrative Claims Reconciliation. On October 8, 2020, Proskauer filed the *Notice of Filing of First Administrative Claim Resolution Status Notice* [ECF No. 14515], which provided an update to the Court regarding the status of the claims transferred into the ACR Procedures pursuant to the two notices, and reported that 838 claims out of 1000 in the First ACR notice had been successfully resolved.

- Mandatory Court-Ordered Mediation. During the Compensation Period, Proskauer professionals diligently and actively participated in mandatory mediation sessions involving the Oversight Board, AAFAF, the UCC, the Puerto Rico Government, and other key stakeholders in these Title III Cases, competently and efficiently resolving multiple issues and disputes and facilitating the confirmability of the Amended Plan. Several stay orders entered by the Title III Court put on hold over twenty contested

---

[10] See  *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576].

[11] See *Order (A) Authorizing Administrative Reconciliation of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274].

matters and adversary proceedings and simultaneously directed parties to such proceedings and matters to engage in mandatory mediation under the direction of Judge Barbara Houser.[12]  On March 10, 2020, at the suggestion of the Amended Report of the Mediation Team, the Court added certain matters and adversary proceedings to the list of stayed matters.[13]  Proskauer's efforts advocating for the Debtors' best interests in Court-ordered mediation process remain ongoing.

17.    <u>First Circuit and Supreme Court Appeals</u>. During this Compensation Period, Proskauer defended a number of significant matters before the appellate courts, obtaining several critical judgments on behalf of the Oversight Board as Title III representative of the Debtors. Some of the appellate matters where Proskauer attorneys represented the interests of the Oversight Board included:

- <u>U.S. Supreme Court Appeals</u>:

  (1)  <u>Vázquez Garced v. FOMB, Case No. 19-1305 (U.S.)</u>:  On December 18, 2019, the First Circuit, affirming the Title III Court's decision, held (i) that the Oversight Board had the power to adopt a recommendation as a mandatory measure in a Fiscal Plan, even if it had been previously rejected by the Governor and (ii) that the bar on reprogramming the Oversight Board had included in its fiscal plan and budget was valid and consistent with PROMESA.  The Governor and AAFAF appealed to the U.S. Supreme Court, and on May 15, 2020, filed their petition for a writ of certiorari. Proskauer professionals devoted significant time and effort to thoroughly research the issues raised in the writ, and on July 20, 2020, Proskauer submitted its opposition on behalf of the Oversight Board.  The U.S. Supreme Court denied the Governor's petition on October 5, 2020.

  (2)  <u>Employees Retirement System v. Andalusian Global Designated, Case No. 20-126 (U.S.)</u>:  On January 30, 2020, the First Circuit affirmed the Title III Court's decision that under section 552 any security interest resulting from liens granted to the ERS bondholders prior to the commencement of the ERS Title III case do not attach to revenue received by ERS following the petition date.[14] After their petition to the First Circuit for rehearing was denied, the bondholder parties appealed the First Circuit judgment to the U.S. Supreme Court on July 31, 2020. On October 8,

---

[12] *See Order Regarding Stay Period and Mandatory Mediation* [ECF No. 8244], further extended by subsequent orders [ECF Nos. 9016, 9661 and 12189], (collectively, the "<u>Stay Orders</u>").  For a complete listing of the stayed contested matters and adversary proceedings *see* ECF No. 8244, Appendix I, ECF No. 9618, n. 3, and ECF No. 12189, Appendix A.

[13] See *Final Order Regarding (A) Stay Period, (B)Mandatory Mediation, and (C) Certain Deadlines Related Thereto* [ECF No. 12189].

[14] *See* January 30, 2020, *Judgment* and *Opinion,* Case Nos. 19-1699, 19-1700 (1st Cir.).

2020, Proskauer filed its opposition to the Andalusian petition for writ of certiorari, and the petition was denied on November 16, 2020.

- First Circuit Appeals:

(1) Rene Pinto-Lugo v. Commonwealth, Case No. 19-1181; Elliott v. Commonwealth, Case No. 19-1182; and Cooperativas v. COFINA, Case No. 19-1391:[15] On February 14, 2020, on behalf of the Oversight Board, Proskauer joined with AAFAF in its responsive appellate brief. The consolidated matters were fully briefed and Proskauer attorneys defended the Oversight Board's position, as a representative of the Commonwealth and COFINA, during oral argument on July 31, 2020. Subsequently, in response to the questions posed by the Court at the oral argument, Proskauer submitted relevant citations of supplemental authorities pursuant to Fed. R. App. P. 28(j) on August 2, 2020, August 4, 2020, and December 31, 2020. On February 8, 2021, the First Circuit affirmed the Title III Court's orders and dismissed the challenges to the Title III Court's confirmation of the Plan. The *Cooperativas* matter was remanded to the district court.

(2) UECFSE v. FOMB, Case No. 19-2028:[16] Appellants submitted their opening brief on December 16, 2019. On February 24, 2020, Proskauer tendered the Oversight Board's response brief, and on March 10, 2020, the appellants replied. Proskauer attorneys defended the Oversight Board's position, as a representative of the Commonwealth, during oral argument on July 27, 2020. On October 28, 2020, the First Circuit issued an opinion affirming the Title III Court dismissal of the appellant's complaint. On November 11, 2020, appellants filed their petition for rehearing, which was denied on December 11, 2020.

(3) UTIER v. Ortiz Vázquez, Case No. 20-1332:[17] On March 23, 2020, UTIER appealed the Title III Court order dismissing UTIER's petition for a writ of mandamus compelling PREPA to comply with certain provisions of health benefits-related Law No. 26-2017 and preventing PREPA from implementing a new contract with a healthcare manager to provide healthcare to PREPA's employees according to the provisions of the newly certified PREPA budget. On August 4, 2020, UTIER filed its opening brief. Proskauer, on behalf of the Oversight Board, responded on October 21, 2020. The case is fully briefed. On

---

[15] On February 22, 2019, three sets of appellants filed appeals of the order confirming the COFINA Plan of Adjustment including: (i) Rene Pinto-Lugo and Manuel Natal-Albelo (Pinto-Lugo v. Commonwealth, Case No. 19-1181 (1st Cir.)) ("Pinto-Lugo"), (ii) Mark Elliott, Lawrence B. Dvores, and Peter C. Hein (Elliott v. Commonwealth, Case No. 19-1182 (1st Cir.)) ("Elliott"), and (iii) Cooperativa de Ahorro y Credito Dr. Manuel Zeno Gandia, Cooperativa de Ahorro y Credito de Juana Diaz, and Cooperativa de Ahorro y Credito de Rincon (Cooperativas v. COFINA, Case No. 19-1391 (1st Cir.) (the "Cooperativas").

[16] On October 4, 2019, plaintiffs appealed the order entered by the Title III Court dismissing plaintiffs' first amended complaint challenging certain Puerto Rico labor related legislation and Fiscal Plan Compliance Act which affected the unions' collective bargaining agreements [Adv. Proc. No. 18-091, ECF No. 39].

[17] See *Memorandum Opinion and Order Granting Respondent Puerto Rico Electric Power Authority's Motion to Dismiss Plaintiff's Mandamus Petition Pursuant to Fed. R. Civ. P. 12 (b)(1) and 12(b)(6)* [Adv. Proc. No. 19-00298].

December 30, 2020, in accordance with the First Circuit's order, the case was submitted for a decision on the briefs and removed from the oral argument calendar. On January 15, 2021, the First Circuit affirmed the Title III Court's dismissal of the mandamus petition.

(4) <u>Ambac Assurance Corp. v. Commonwealth, Case No. 20-1657</u>: On February 20, 2020, Ambac filed in the District Court of Puerto Rico an action styled *Ambac Assurance Corporation v. Autopistas Metropolitanas de Puerto Rico, LLC*, Civil No. 20-cv-01094, seeking to rescind a certain concession extension agreement between the defendant and HTA. The Oversight Board filed a motion asking the Court to order Ambac to withdraw its complaint, arguing that Ambac's action of filing suit to rescind one of HTA's contracts violated the automatic stay imposed by 11 U.S.C. § 362(a).  On June 16, 2020, the Title III Court granted the Oversight Board's motion and ordered Ambac to withdraw the complaint.[18] Ambac appealed the order on June 30, 2020. On October 19, 2020, Ambac filed its opening brief. Proskauer filed the response on behalf of the Oversight Board on December 18, 2020. After been granted several extensions, Ambac filed its reply brief on February 12, 2021 and the matter was argued on March 8, 2021.

(5) <u>Campamento Contra las Cenizas en Peñuelas, Inc. v. FOMB, Case No. 20-1685; UTIER v. FOMB, Case No. 20-1709; and Windmar Renewable Energy, Inc. v. FOMB, Case No. 20-1710</u>:  On June 22, 2020, the Title III Court  granted PREPA's urgent motion for an order authorizing PREPA to assume its power purchase and fuel supply agreements with two energy providers on new, renegotiated terms, which were approved by PREPA's Governing Board, the Puerto Rico Energy Bureau, and the Oversight Board.[19] On July 3, 2020, UTIER and Widmar Renewable Energy, Inc. ("<u>Windmar</u>") appealed the Court's decision, and on July 10, 2020, certain environmental groups[20] filed their own appeal.  The cases were consolidated for the purposes of briefing on November 2, 2020. On December 14, 2020, UTIER filed its appellant's brief, which was joined by the Environmental Groups on the same date. Windmar filed its opening brief on December 15, 2020. Proskauer filed the responsive brief on behalf of the Oversight Board on February 16, 2021, and on March 8, 2021, UTIER filed its reply brief.

(6) <u>PRIFA & HTA Revenue Bonds Lift Stay Appeals: Assured Guaranty Corp. v.</u>

---

[18] *See Memorandum Order Granting Motion of Financial Oversight and Management Board Pursuant to Bankruptcy Code Sections 105(a) and 362 for Order Directing Ambac to Withdraw Complaint* [ECF No. 13447].

[19] *See Order Authorizing PREPA to Assume Certain Contracts with Ecoeléctrica, L.P. and Gas Natural Aprovisionamientos SDG, S.A.* [ECF No. 13470; Case No. 17-04780, ECF No. 2038] and *Memorandum Opinion Regarding PREPA's Urgent Motion For Entry On An Order Authorizing PREPA to Assume Certain Contracts With Ecoeléctrica, L.P. And Gas Natural Aprovisionamientos SDG, S.A.* [ECF No. 13471; Case No. 17-04780, ECF No. 2039].

[20] Comité Diálogo Ambiental, Inc., El Puente de Williamsburg, Inc. - Enlace Latino de Acción Climática, Comité Yabucoeño Pro-Calidad de Vida, Inc., Alianza Comunitaria Ambientalista del Sureste, Inc., Sierra Club and its Puerto Rico chapter, Mayagüezanos por la Salud y el Ambiente, Inc., Coalición de Organizaciones Anti-Incineración, Inc., Amigos del Río Guaynabo, Inc., Campamento Contra las Cenizas en Peñuelas, Inc., CAMBIO P.R., (collectively, the " Environmental Groups").

Commonwealth, Case No. 20-1930 (HTA Lift Stay Appeal); Ambac Assurance Corp. v. Commonwealth, Case No. 20-1931 (PRIFA Lift Stay Appeal): Following the Title III Court denial of the Lift Stay Motions on September 9, 2020, two appeals were filed by the Monolines on September 23, 2020.[21] Appellants' briefs in both matters were submitted on October 28, 2020. Proskauer filed responsive briefs on behalf of the Oversight Board in both matters on December 7, 2020. On December 21, 2020, the Monolines filed their reply briefs. The matters have been fully briefed and oral argument was held on February 4, 2021. On March 3, 2021, the First Circuit affirmed the Title III court's denial of the petitions for relief from the automatic stay.

18.    In addition to the above, Proskauer has defended the Oversight Board's and Title III Debtors' interests in numerous hearings and trials.  The following is a summary of major litigation matters in which Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- PREPA 9019 Motion.[22]  During the Compensation Period, Proskauer continued extensive communications with various parties to further the progress made towards the resolution of the 9019 Motion and related disputes, as well as strengthen the Oversight Board and PREPA's positon in the proposed restructuring process.  Proskauer held multiple conferences with the Board's other advisors, Government Parties, and creditors.  Proskauer professionals continued analyzing PREPA's finances and evaluating and assessing the impact of the COVID-19 pandemic and recent natural disasters on PREPA and its facilities. In response to Proskauer and other Government Parties' request to the Title III Court to further adjourn the PREPA 9019 Motion deadlines due to the COVID-19 pandemic, on May 22, 2020, the Court confirmed the indefinite adjournment of the 9019 Motion deadlines and the motions to dismiss [Case No. 17-04780, ECF No. 2006]. At the Title III Court's direction, the Government Parties' provided the Court with four joint status reports apprising the Court of PREPA's financial condition and proposing next steps with respect to the 9019 Motion and its pending motions to dismiss in certain PREPA adversary proceedings [Case No. 17-04780, ECF Nos.

---

[21] *See Opinion and Order in Connection with Preliminary Hearing Regarding Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection (Docket Entry No. 10102)* [ECF No. 13541; Case No. 17-3567, ECF No. 853] (the "Preliminary HTA Order"), *Opinion and Order in Connection with Preliminary Hearing Regarding Amended Motion of Ambac Assurance Corporation, Financial Guaranty Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and U.S. Bank National Trust Association, Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 13542] (the "Preliminary PRIFA Order"), and *Memorandum Opinion and Order Denying HTA and PRIFA Revenue Bond Stay Relief Motions* [ECF No. 14186, Case No. 17-3567, ECF No. 921] (the "Final HTA & PRIFA Order").

[22] A brief overview of Proskauer's progress on the PREPA 9019 Motion in the prior interim compensation periods can be found in the Eighth Fee Application at 8 n.13.

1992, 2002, 2111, and 2220].  On August 18, 2020, the UCC filed a motion to terminate the 9019 Motion and on August 28, 2020, the related urgent motion to compel discovery to determine whether the PREPA Restructuring Support Agreement (the "RSA") remained viable and could be renegotiated by the parties.[23]  The Government Parties opposed both motions on September 1, 2020.  The Title III Court denied the UCC's motion to compel on September 5, 2020, and denied the UCC's motion to terminate the PREPA 9019 Motion on November 4, 2020.  On December 4, 2020, the UCC appealed the Court's decisions related to the 9019 Motion.[24] *UCC v. FOMB*, Case No. 20-2162 (1st Cir.).

- FOMB v. Ambac Assurance Corp., Adv. Proc. Nos. 20-0003, 20-0004, and 20-0005:[25]   On March 10, 2020, the Title III Court entered its *Final Case Management Order for Revenue Bonds* [ECF No. 12186; Adv. Proc. No. 20-003, ECF No. 31], staying all revenue bond-related litigation and allowing only submission of motions for summary judgement on certain complaints' counts designated by the Court. After diligent legal research and analysis, on April 28, 2020, Proskauer submitted three motions for partial summary judgment on behalf of the Oversight Board. On July 16, 2020, the Monolines filed their opposition to the motions, and on August 31, 2020, Proskauer submitted the Oversight Board's replies to the opposition. The Court allowed the Monolines to file sur-replies, which they did on September 13, 2020, along with their responses to the Oversight Board's Rule 56(d) opposition. On the same date, the Monolines filed their informative motion requesting that the motions for summary judgment be considered and determined on the papers without oral argument. On July 15, 2020, Proskauer filed their opposition on the docket. The same day the Monolines request to forego oral argument was denied.  After careful preparation, Proskauer defended the motions for partial summary judgment at the September 23, 2020 hearing. The motions were taken under advisement by the Title III Court.

- UCC GO Priority Motion. On July 19, 2020, the UCC filed the *Urgent Motion of Official Committee of Unsecured Creditors to Lift Stay to Allow Committee to Pursue Objection to GO Priority* [ECF No. 13726]. Proskauer carefully analyzed

---

[23] *See Motion of Official Committee of Unsecured Creditors to Terminate Bankruptcy Rule 9019 Motion* [Case No. 17-04780, ECF No. 2144] and *Official Committee of Unsecured Creditors' Urgent Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* [Case No. 17-04780, ECF No. 2155].

[24] *See Order Denying the Official Committee of Unsecured Creditors' Motion to Terminate Rule 9019 Motion* [ECF No. 15020; Case No. 17-4780, ECF No. 2287], *Memorandum Order Regarding Official Committee of Unsecured Creditors' Urgent Objection to Magistrate Judge's September 5, 2020 Order on Motion to Compel Discovery in Connection with Motion to Terminate Bankruptcy Rule 9019 Motion* [ECF No. 14586; Case No. 17-4780, ECF No. 2252], and *Order on Motion to Compel* [ECF No. 14181; Case No. 17-4780, ECF No. 2177]

[25] On January 16, 2020, Plaintiff, the Oversight Board, acting in its capacity as representative of the Commonwealth and HTA, filed three actions in connection with bonds respectively issued by CCDA, PRIFA and HTA. In Adv. Proc. No. 20-0003, the Board challenged the proofs of claim filed against the Commonwealth and other lien claims by the holders and/or insurers of certain bonds issued by PRIFA. In Adv. Proc. No. 20-0004, the Board challenged proofs of claim filed against the Commonwealth and other lien claims asserted by the holders and/or insurers of certain bonds issued by CCDA. In Adv. Proc. No. 20-0005, the Board challenged the proofs of claim filed against the Commonwealth and other lien claims by the insurers and/or holders of HTA Bonds.

the issues raised in the motion and filed the Oversight Board's objection on September 1, 2020. The UCC replied on September 11, 2020. Proskauer further defended the Board's position at the omnibus hearing on September 16, 2020. The Court denied the GO Priority Motion on September 17, 2020. On October 1, 2020, the UCC filed its motion for reconsideration of the Court order, which was also denied on October 5, 2020. On October 16, 2020, UCC appealed both Title III Court orders.[26] *UCC v. FOMB*, Case No. 20-2014 (1st Cir.). On November 9, 2020, the First Circuit issued an order noting the issue of jurisdiction over this appeal, and on November 23, 2020 the UCC filed its response supporting the First Circuit's jurisdiction. Proskauer stated the Oversight Board's position that the challenged orders were not final and appealable on December 10, 2020.   On December 14, 2020, the UCC replied in support of their brief. On February 22, 2021, the First Circuit dismissed the appeal for lack of jurisdiction.

- ERS Bondholders' Claims and Administrative Expense Motions:[27] On March 17, 2020, the parties to this matter filed their joint motion requesting the Court set a briefing schedule with respect to the ERS Bondholders' Claims and Administrative Expense Motions. Pursuant to the subsequently entered schedule, on May 6, 2020, Proskauer filed ERS and the Commonwealth's motion requesting the Court to disallow and dismiss all claims asserted against the ERS and Commonwealth by the ERS Bondholder Claimants, except for their nonrecourse claims against ERS for unpaid principal and interest on the ERS Bonds.[28] The motion was supported by AAFAF and joined by the UCC. Proskauer tendered its reply in support of the motion on July 22, 2020. On June 10, 2020, certain beneficial owners of bonds issued by ERS represented by Jones Day, certain beneficial owners of bonds issued by ERS and The Bank of New York Mellon as fiscal agent for the bonds issued by

---

[26] *See Order Denying Urgent Motion of Official Committee of Unsecured Creditors to Lift Stay to Allow Committee to Pursue Objection to GO Priority* [ECF No. 14331] and *Order Denying Motion, Under Federal Rule of Bankruptcy Procedure 9023, of Official Committee of Unsecured Creditors for Reconsideration of September 17, 2020 Order Denying Motion to Lift Stay to Allow Committee to Pursue Priority Objection to GO Bond Claims* [ECF No. 14452].

[27] The Claims include those asserted by (a) certain ERS Bondholders in the (i) *ERS Bondholders' Motion and Request for Allowance and Payment of Post-Petition and Administrative Expense Claims* [ECF No. 9285 in Case No. 17-bk-3283 and ECF No. 707 in Case No. 17-bk-3566] and (ii) *ERS Bondholders' Motion and Request for Allowance and Payment of Post- Petition and Administrative Expense Claims* [ECF No. 9294 in Case No. 17-bk-3283 and ECF No. 710 in Case No. 17-bk-3566] (collectively, the "Bondholder Administrative Expense Motions"), (b) the Fiscal Agent in the *Joinder in ERS Bondholders' Motion for Allowance of Administrative Expense Claim* [ECF No. 9298 in Case No. 17-bk-3283 and ECF No. 712 in Case No. 17-bk-3566] (the "Fiscal Agent Joinder" and, together with the Bondholder Administrative Expense Motions, the "Administrative Expense Motions"), (c) the Claimants in the *ERS Bondholders' Supplement to Proofs of Claim and Motions for Allowance of Administrative Expense Claims* [ECF No. 12536 in Case No. 17-bk-3283 and ECF No. 848 in Case No. 17-bk-3566] (the "Supplement"), (d) the Fiscal Agent in proofs of claim numbers 16775, 16777, and 32004 (the "Fiscal Agent Proofs of Claim"), and (e) the ERS Bondholder Groups in the proofs of claim listed in Appendix 2 to the *Order Granting Urgent Joint Motion for Entry of a Schedule for Resolution of the ERS Bondholder Claims and Administrative Expense Motions* [ECF No. 12446 in Case No. 17-bk-3283 and ECF No. 838 in Case No. 17-bk-3566] (the "ERS Bondholder Groups Proofs of Claim" and, together with the Fiscal Agent Proofs of Claim, the "Proofs of Claim").

[28] *See Motion of the Commonwealth of Puerto Rico and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Disallow and Dismiss Claims Asserted or Filed by ERS Bondholders and the ERS Fiscal Agent Pursuant to Bankruptcy Rules 3007(b) & 7012(b)* [ECF No. 13054; Case No. 17-3566, ECF No. 891].

ERS (collectively, "ERS Bondholder Claimants") filed their *Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)* [ECF No. 13400; Case No. 17-3566, ECF No. 917], arguing that they were entitled to the recourse claims against the ERS and Commonwealth under Section 1111(b) of the Bankruptcy Code. Proskauer opposed the motion on July 8, 2020, and the ERS Bondholder Claimants replied on August 6, 2020. On September 11, 2020, Proskauer, together with counsel for the UCC, filed two motions for summary judgment certain ERS bondholders with respect to certain counts included in ERS's adversary complaints related to the scope of the bondholders' security interests in ERS.[29] On the same day, the bondholders filed their own motions for partial summary judgment on the lien scope issues.[30] The motions are now fully briefed.

- Monolines' Section 926 Motion. On July 17, 2020, the Monolines filed their urgent motion requesting that the Title III Court appoint them as trustees under section 926 of the Bankruptcy Code to pursue their claims on behalf of HTA against the Commonwealth (the "Section 926 Motion").[31] In the same motion, the Monolines requested that the Court enter a bridge order, preliminarily appointing them as trustees and allowing them to file an avoidance action on behalf of HTA against the Commonwealth. On July 22, 2020, Proskauer filed the Oversight Board's opposition to the proposed bridge order, and on July 31, 2020, its opposition to the Section 926 Motion. The Title III Court denied the bridge order request on July 24, 2020, and the motion for appointment of a section 926 trustee on August 11, 2020.[32] The Monolines appealed on August 25, 2020. *Assured v. FOMB*, Case No. 20-1847 (1st Cir.) (the "Section 926 Appeal"). On September 30, 2020, the Monolines filed a motion to hold the appeal in abeyance pending resolution of their appeal of the Title III Court opinion denying their Lift Stay Motion. On October 13, 2020, Proskauer, on behalf of the Oversight Board, filed an opposition to the appellants' motion to hold appeal in abeyance and cross-motion to dismiss the appeal as moot. The Monolines' motion was denied on December 22, 2020, and on January 8, 2021 the briefing schedule was set. On February 17, 2021, the monolines filed their appellants' brief, which was joined by the DRA Parties.

---

[29] *See* Case No. 19-366, ECF No. 91, and Case No. 19-367, ECF No. 107.

[30] *See* Case No. 19-366, ECF No. 95, and Case No. 19-367, ECF No. 111.

[31] See *Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* [ECF No. 13708; Case No. 17-3567, ECF No. 871].

[32] *See Order Denying Urgent Motion for Bridge Order, and Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* [ECF No. 13825; Case No. 17-3567, ECF No. 889] and *Memorandum Opinion and Order Denying Motion for Appointment as Trustees Under 11 U.S.C. § 926, of Ambac Assurance Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation* [ECF No. 14012; Case No. 17-3567, ECF No. 912].

- PREPA Omnibus PPOA Rejection Motion. On July 7, 2020, Proskauer filed a motion for an order authorizing PREPA to reject certain non-operational power purchase and operating agreements ("PPOAs") for renewable energy projects to avoid overpaying for power and imposing additional burdens on Puerto Rico ratepayers.[33] The motion was objected to by certain energy providers,[34] and Proskauer filed PREPA's omnibus reply in support of the motion. Proskauer defended the Oversight Board and PREPA's position at the omnibus hearing on September 16, 2020, and the motion was granted on September 17, 2020.[35] On September 18, 2020, one of the energy providers, EIF PR Resource Recovery, LLC, filed its motion for reconsideration. Proskauer objected on October 5, 2020, and the reconsideration was denied on November 4, 2020.

- Lift Stay Motions by Medical Centers. Proskauer professionals worked diligently to resolve motions for relief from the automatic stay filed by certain Puerto Rico medical and health centers seeking to liquidate their claims related to payment for providing medical services to the citizens of Puerto Rico.[36] Proskauer attorneys conferred with the Oversight Board, its other advisors, AAFAF, and the Puerto Rico Department of Justice, evaluated the medical centers' claims, reviewed settlement proposals from opposing counsel, and negotiated and drafted a joint stipulation consensually resolving Salud Integral en la Montaña's Lift Stay Motion [ECF No. 14093]. The negotiations with the Atlantic Medical Center parties are ongoing and Proskauer expects to resolve that motion consensually.

---

[33] See Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief [ECF No. 13579; Case No. 17-4780, ECF No. 2050].

[34] See Limited Objection and Reservation of Rights of Tradewinds Energy to Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief [Case No. 17-4780, ECF No. 2067], Objection of GS Fajardo Solar LLC to Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief [Case No. 17-4780, ECF No. 2100], and  Limited Objection and Reservation of Rights of GG Alternative Energy Corp to Omnibus Motion of Puerto Rico Electric Power Authority For Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief (Dockets Entry #2050, #2055) [Case No. 17-4780, ECF No. 2117].

[35] See Order Granting Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief [ECF No. 14334; Case No. 17-4780, ECF No. 2198] and Memorandum Opinion Regarding Omnibus Motion of Puerto Rico Electric Power Authority for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief (Docket Entry No. 13579) [ECF No. 14335; Case No. 17-4780, ECF No. 2199].

[36] See Motion of Atlantic Medical Center, Inc., Camuy Health Services, Inc., Centro de Salud Familiar Dr. Julio Palmieri Ferri, Inc., Ciales Primary Health Care Services, Inc., Corp. de Serv. Médicos Primarios y Prevención de Hatillo, Inc., Costa Salud, Inc., Centro de Salud de Lares, Inc., Centro de Servicios Primarios de Salud de Patillas, Inc., and Hospital General Castañer, Inc. Seeking (I) Enforcement of the Court's Prior Order and (II) Relief From The Automatic Stay [ECF No. 12918] and Motion of Salud Integral en la Montaña, Corporación de Servicios de Salud y Medicina Avanzada, NeoMed Center, Migrant Health Center, HPM Foundation, Morovis Community Health Center, and Concilio de Saludad Integral de Loiza for Allowance and Payment of Administrative Expense Claim, or, in the Alternative, Relief from the Automatic Stay [ECF No. 13582].

18

- <u>Six Laws Complaints. Vázquez Garced v. FOMB, Adv. Proc. Nos. 20-0080 – 20-0085</u>. On June 17, 2020, the Governor of Puerto Rico filed six complaints against the Oversight Board related to the Oversight Board's challenge to six Commonwealth laws enacted in 2019 and 2020. Proskauer, on behalf of the Oversight Board, sought to work with the Government to resolve issues related to those laws prior to the Government's filing of the complaints, but was not able to reach a resolution. After the Oversight Board notified the Government that it no longer intended to challenge the implementation of Act 90, the Government voluntarily withdrew the sixth complaint on July 16, 2020.[37] On July 17, 2020, the Oversight Board filed its answers and counterclaims to the Government's complaints, maintaining that the five laws were inconsistent with the Commonwealth fiscal plan and PROMESA. On July 30, 2020, pursuant to the unopposed motion by the Oversight Board, the five cases were consolidated. On August 3, 2020, the Government answered the counterclaims, and on October 5, 2020, the Oversight Board filed its motion for summary judgment. The motion was fully briefed, and on November 24, 2020 Proskauer attorneys defended the Oversight Board's position at oral argument. On December 23, 2020, the Court denied the Government's motions for summary judgment and granted in part the Oversight Board's motion, enjoining the Government from implementing and enforcing Acts 82, 138, 176, 181, and 47. The Court also issued an order to show cause why the remaining counts and counterclaims could not be dismissed as moot or for lack of subject matter jurisdiction. On January 4, 2021, in response to the order, the parties stipulated that the cases could be dismissed without prejudice, and on January 7, 2021 the Court issued the order dismissing the remaining counts and counterclaims and entered a judgment closing the cases. On January 21, 2021, the Government appealed the Title III Court's decisions. *Pierluisi v. FOMB*, Case No. 21-1071 (1st Cir.).

- <u>Ambac Bankruptcy Clause Challenge. Ambac Assurance Corp. v. FOMB, Adv. Proc. No. 20-00068</u>: On May 26, 2020, Ambac Insurance Corporation filed an action against the Oversight Board seeking to declare Titles I, II, and III of PROMESA unconstitutional and unenforceable, to enjoin the Oversight Board from taking any further action under Titles I, II, and III, and to dismiss the Debtors' pending Title III petitions. On the same date, Ambac filed a notice of constitutional challenge to a federal statute. On August 17, 2020, Proskauer filed a motion to dismiss on behalf of the Oversight Board and its individual members [Adv. Proc. No. 20-00068; ECF No. 37], which was subsequently joined and supported by the Retiree Committee and AAFAF. The United States also filed its memorandum in support of constitutionality of PROMESA. Proskauer argued the Oversight Board's position on January 12, 2020. The matter is currently *sub judice* before the Title III Court.

---

[37] *See Notice of Voluntary Dismissal of Adversary Complaint for Declaratory Relief Related to Act 90* [Case No. 20-0081, ECF No. 5].

19.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

20.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of **$30,406.20**, as (i) compensation for professional services rendered in the amount of $27,642.00, and (ii) the Gross-Up Amount of $2,764.20.[38] No expenses were incurred by Proskauer during the Compensation Period in connection with these services.  Notably, the Application reflects the sizeable discount embedded in Proskauer's Engagement Letter with the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the hourly rates of its most senior partners.

21.     Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor.   Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

22.     Proskauer's budget and staffing plan for the Compensation Period are attached hereto as **Exhibit D**.

23.     Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board with respect to the Debtor during

---

[38]  Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date hereof, Proskauer has not yet requested payment of the Gross-Up Amount, but has recently received information indicating it may need to do so.

the Compensation Period is set forth on **Schedule 2**.  The professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period required an aggregate expenditure of 5.60 recorded hours by Proskauer's partners; 20.40 recorded hours by associates; and 26.40 recorded hours by paraprofessionals.  As required by the Guidelines, **Exhibit C** to this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the aggregate recorded hours each professional incurred.  In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**.  The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board.  The standard rates Proskauer charges for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedules 2** and **5** show the rates Proskauer charges on an hourly basis are below the competitive market rates for bankruptcy and non-bankruptcy matters charged by the other professionals representing the Commonwealth and statutory committees.  No Proskauer rates are increased as a result of the geographic location of a bankruptcy case (or a Title III case).

24.     All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.  Each Project Category is organized in accordance with Guidelines

paragraph C.8.b.  If a Project Category does not appear in a particular application, Proskauer did

not bill time or expenses for that Project Category during the Compensation Period, but may bill

time for that Project Category in the future.   In addition, only Project Categories for which

Proskauer billed more than 10 hours during the Compensation Period are summarized in the

Application.   Project Categories for which Proskauer billed less than 10 hours are included in

**Exhibit B**.

### Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5

25.    The following answers are provided in response to the questions set forth in

Guidelines paragraph C.5:

| | |
|---|---|
| **Question**: | Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain. |
| Response: | As explained on page 5 and in footnotes 3 and 7 of the Summary above, Proskauer agreed not to request currently the allowance and payment of the amount attributable to the 4% rate increase as of January 1, 2020 provided in its Engagement Letter.  For fees accrued as of January 1, 2021, however, the Oversight Board terminated its request that Proskauer defer requesting collection of their full fees pursuant to their engagement letters. |
| **Question**: | If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? |
| Response: | The total fees sought in this Application did not exceed the total budgeted fees for the Compensation Period (the fees sought in this Application are 60.5% below the budgeted fees). |
| **Question**: | Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? |
| Response: | No. |
| **Question**: | Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does |

not include reasonable fees for preparing a fee application.).   If so, please quantify by hours and fees.

Response:   No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements.

**Question**:   Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?   If so, please quantify by hours and fees.

Response:   No time was spent redacting time records on account of privilege concerns.   However, the Application does include time related to reviewing time records to redact certain time entries pursuant to Court-ordered mediation confidentiality.   Proskauer paraprofessionals expended 0.40 hours and billed $108.00 for reviewing Proskauer's monthly fee statements related to Proskauer's second interim fee application for mediation related entries.

**Question**:   If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?   If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11–458?

Response:   Yes. Proskauer's Engagement Letter with the Oversight Board provides Proskauer's rates increase each year "on January 1 by the lower of the percentage rate increase we announce, and four percent." (Engagement Letter at 1–2).   As of January 1, 2020, the rate increase was 4%, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $820 per hour, for e-discovery attorneys of $405 per hour, and for paraprofessionals of $280 per hour.   Billed at these rates, as negotiated in the Engagement Letter, Proskauer's incremental fees for the Compensation Period total $1,070.00, as detailed in the attached **Exhibit E**. Pursuant to the Engagement Letter, Proskauer's rates increased 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $853 per hour, for e-discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour.   Proskauer again provides notice of the automatic rate adjustment, pursuant to paragraph 2.c.2 of the Court's order dated June 26, 2019 [Case No. 17-3283, ECF No. 7678]. Pursuant to the Engagement Letter, the rate increase equals the lesser of Proskauer's actual percentage rate increase and 4%, pursuant to paragraph 2.c.2 of the Court's order dated June 26, 2019 [Case No. 17-3283, ECF No. 7678.   Although this Application does not cover fees accrued in 2021, pursuant to the Engagement Letter, Proskauer's rates increased 4% effective January 1, 2021, yielding a new flat rate for attorneys (partners, senior counsel, and associates) of $853 per hour, for e-

23

discovery attorneys of $421 per hour, and for paraprofessionals of $291 per hour.

Proskauer, however, agreed for fees accrued prior to January 1, 2021, at the request of the Oversight Board, not to request currently the allowance and payment of the incremental fees based on the new rates. Instead, Proskauer is currently requesting payment of fees at the rates detailed in the Fifth Interim Application: $789 per hour for attorneys, $390 per hour for e-discovery attorneys, and $270 per hour for paraprofessionals. The Engagement Letter is not otherwise amended.

### Gross-Up Amount

26.     Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off-island. Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.

27.     On December 10, 2018, Puerto Rico enacted Act 257–2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed. Under Act 257–2018, all Proskauer fees incurred on or after December 10, 2018— regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.

28.     Proskauer requests approval now, as part of its fees and expenses, of Gross-Up Amount, in the amount of **$2,764.20** for the current Application, and additional amounts for prior Applications as set forth in the prior Applications, for a total of approximately $45,000. But Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date

hereof, Proskauer has not yet requested payment of the Gross-Up Amount, but has received information it may have to do so in the near term.

29.     Proskauer will also be entitled to an additional payment to offset the amount of Puerto Rico tax payable on net income earned for services rendered outside of the United States to the extent the United States objects to or determines negatively Proskauer's request for a foreign tax credit for the taxes paid to Puerto Rico on such income for the benefit of its partners.  The amount of the additional payment will be determined after taking into account all taxes payable in Puerto Rico and the United States on such additional payment, so Proskauer and its partners receive a net amount equal to the Puerto Rico taxes for which there was no credit.

### Professionals Billing Fewer Than Five Hours per Month

30.     The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary.  As a general matter, because of the size and complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services. Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and with specific adversary proceedings to deal with global strategic issues and ensure that positions taken by the Oversight Board are consistent across all the Title III cases.  Furthermore, occasionally the urgency of certain briefing schedules required pulling in professionals from different work streams to assist on time-sensitive matters.  In addition, given the limited number of total hours spent on PBA's Title III case during this

Compensation Period, it is not unusual that professionals billed fewer than five hours in certain months.[39]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Adejobi, Olaide M. | September | Ms. Adejobi is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Blackwell, Brooke H. | July | Ms. Blackwell is an associate in Proskauer's BSGR&B group who assisted with drafting the Debtor's third motion for entry of an order extending the deadlines for filing proofs of claim and related notices for publication. |
| Bloch, Aliza H. | June | Ms. Bloch is an associate in Proskauer's litigation department who assisted with research and analysis for the Debtor's third motion for entry of an order extending the deadlines for filing proofs of claim. |
| Carino, Elisa | June, July | Ms. Carino is an associate in Proskauer's litigation department who assisted with reviewing and revising Spanish-language translations of notices and media scripts in connection with the third extension of the Debtor's deadlines for filing proofs of claim. |
| Esses, Joshua A. | August, September | Mr. Esses is an associate in Proskauer's BSGR&B group who assisted with drafting of the Debtor's second motion for an order further enlarging the time to file notices of removal of civil actions under Bankruptcy Rule 9027(a). |
| Ma, Steve | June | Mr. Ma is an associate in Proskauer's BSGR&B group who assisted with analysis of the executive orders by Puerto Rico Governor in connection with drafting the Debtor's third motion for entry of an order extending the deadlines for filing proofs of claim. |
| Mungovan, Timothy W. | August | Mr. Mungovan is a partner in Proskauer's litigation department who advised on the Debtor's settlement with Triple S Insurance and related issues. |

---

[39] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III. Many of these professionals have also billed substantially more time on matters related to Proskauer's representation of the Oversight Board during prior Compensation Periods.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Petrov, Natasha | June, August, September | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer second interim fee application. |
| Rosen, Brian S. | June – September | Mr. Rosen is a partner in Proskauer's BSGR&B group who advised on analysis of IRS subsidy claims and on the Debtor's settlement with Triple S insurance. |
| Singer, Tal J. | August | Mr. Singer is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Stafford, Laura | June – August | Ms. Stafford is an associate in Proskauer's litigation department who advised on drafting the Debtor's third motion for an order extending the deadlines for filing proofs of claim and the second motion for an order further enlarging the time to file notices of removal of civil actions under Bankruptcy Rule 9027(a). |
| Volin, Megan R. | August, September | Ms. Volin is an associate in Proskauer's BSGR&B group who assisted with drafting the Debtor's second interim fee application. |

### Summary Description of Professional Services

31.     The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period.   Only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.  Project Categories for which Proskauer billed less than 10 hours during the Compensation Period are listed in **Exhibit B**.

**I.    Matter No. 33260.0083 (PROMESA Title III: PBA)**

32.     This matter number covers time spent relating to the core PBA Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and work on disclosure statements or plans of adjustment.

27

(a)   Documents Filed on Behalf of the Board (Project Category 206)
(Fees:  $9,862.50; Hours:  12.50)

33.  This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys spent time conducting research and analysis and drafting the Debtor's third motion for entry of an order extending the deadlines for filing proofs of claim due to COVID-19 related restrictions imposed by the Puerto Rico Government and related notices for publication, and the second motion for an order further enlarging the time within which PBA is required to file notices of removal of civil actions under Bankruptcy Rule 9027(a).

(b)   Employment and Fee Applications (Project Category 218)
(Fees:  $6,483.90; Hours: 21.90)

34.   This Project Category includes time spent on issues related to the compensation of Proskauer, and the retention and compensation of other Oversight Board professionals, including the preparation of interim fee applications. Specifically, Proskauer attorneys and paraprofessionals spent time drafting Proskauer's second interim fee application.

\*      \*      \*      \*

35.   The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

36.     In accordance with the factors enumerated in the Bankruptcy Code, the amount of
fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b)
the time expended; (c) the nature and extent of the services rendered; (d) the value of such
services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of
comparable services other than in a case under the Bankruptcy Code.

### Actual and Necessary Expenses of Proskauer

37.     Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and
necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor
during the Compensation Period. No expenses were incurred by Proskauer during the
Compensation Period in connection with these services.

### Compensation Paid and Its Source

38.     All services for which Proskauer seeks compensation were performed on behalf of
the Oversight Board as representative of the Debtor.  In connection with the matters covered by
this Application, Proskauer received no payment and no promises of payment for services
rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or
understanding between Proskauer and any other person, other than members of the firm, for the
sharing of compensation received for services rendered in this Title III case.

39.     PROMESA sections 316 and 317 provide for interim compensation of
professionals and govern the Court's award of such compensation.  PROMESA section 316
provides that a court may award a professional person employed by the Debtor or the Oversight
Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by
the professional person, or attorney and by any paraprofessional person employed by any such

person; and (2) reimbursement for actual, necessary expenses."  PROMESA § 316(a).  Section

316 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

40.     As noted above, the professional services for which Proskauer seeks compensation

in this Application were necessary and beneficial to the Oversight Board, as representative of the

Debtor, and included, among other things, anticipating or responding to the Oversight Board's

needs and assisting in the Oversight Board's navigation of the Debtor's very complex Title III

case.  The compensation requested herein is reasonable in light of the nature, extent, and value of

such services to the Oversight Board.  The Oversight Board has reviewed and approved this

Application.

**Reservations**

41.      To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

**Notice**

42.      Pursuant to the Interim Compensation Order and the *Fourteenth Amended Notice, Case Management and Administrative Procedures* [ECF No. 15894-1],  notice of this Application has been filed in the Debtor's Title III Case and the lead Commonwealth of Puerto Rico's Title III Case and served upon:

    (a) the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;

    (b) attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC,  250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges.com);

    (c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Peter Friedman, Esq. (pfriedman@omm.com), Nancy A. Mitchell, Esq. (mitchelln@omm.com), and Maria J. DiConza, Esq. (mdiconza@omm.com);

    (d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muñiz LLC, 250 Ponce de León Ave., Suite 900, San Juan, PR 00918, Attn.: Luis C. Marini-Biaggi, Esq. (lmarini@mpmlawpr.com), Carolina Velaz-Rivero, Esq. (cvelaz@mpmlawpr.com), and Iván Garau-González, Esq. (igarau@mpmlawpr.com);

(e) the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com), James Bliss, Esq. (jamesbliss@paulhastings.com), James Worthington, Esq. (jamesworthington@paulhastings.com), and G. Alexander Bongartz, Esq. (alexbongartz@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Suite 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com), Diana M. Batlle-Barasorda, Esq. (dbatlle@cstlawpr.com), Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com), and Ericka C. Montull-Novoa, Esq. (emontull@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin @jenner.com); and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine L. Steege, Esq. (csteege@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A piso 18, Ave. Ponce de León #416, Hato Rey, San Juan, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares@ hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda.pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo, Esq. (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler, Esq. (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the amount of **$30,406.20**, which is comprised of (i) fees for professional services rendered in the amount of $27,642.00 and (ii) the Gross-Up Amount to equal the amount to be submitted on electronic notice with a calculation by Proskauer,[40] (no expenses were incurred during the Compensation Period in connection with these services); (b) authorizing and directing the Debtor to pay promptly to Proskauer the difference between (i) the amount of interim compensation for professional services rendered during the Compensation Period allowed hereunder, and (ii) the amounts for such compensation previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application or which arise from the accrued incremental fees from increased rates in the Engagement Letter; and (d) granting Proskauer such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

---

[40] Proskauer will only request payment of the Gross-Up Amount from the Debtor if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date hereof, Proskauer has not yet requested payment of the Gross-Up Amount, but has recently received information indicating it may need to do so.

Dated: March 19, 2021
San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
ppossinger@proskauer.com
ebarak@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M.  Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and
Management Board as Representative of the
Debtor*

34