## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No.  17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No.  17 BK 4780-LTS<br><br>**This Motion relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

## GOVERNMENT PARTIES' MOTION
## FOR ORDER ALLOWING ADMINISTRATIVE
## EXPENSE CLAIM FOR AMOUNTS TO BE PAID
## TO LUMA ENERGY BY PREPA DURING INTERIM PERIOD
## UNDER SUPPLEMENTAL AGREEMENT AND THE T&D CONTRACT

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 2

JURISDICTION AND VENUE ............................................................................................... 5

BACKGROUND ...................................................................................................................... 6

    A.  PREPA Operations and Management ............................................................. 6

    B.  Overview of the T&D Transformation Process ............................................ 8

    C.  The Selection Process .................................................................................... 8

    D.  The Contract Approval Process ..................................................................... 9

    E.  Front-End Transition Period ........................................................................ 11

    F.  Front-End Administrative Expense Motion ................................................. 12

    G.  Commencement of Operation and Management ......................................... 13

    H.  The Supplemental Agreement ..................................................................... 15

RELIEF REQUESTED............................................................................................................ 16

BASIS FOR RELIEF .............................................................................................................. 17

NOTICE.................................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*,
   536 F.2d 950 (1st Cir. 1976) ...................................................................................22

*In re 1701 Commerce, LLC*,
   No. 12-41748-DML-11, 2014 WL 4657314 (Bankr. N.D. Tex. Sept. 17, 2014) ...................18

*In re Climax Chem. Co.*,
   167 B.R. 665 (Bankr. D.N.M. 1994) .......................................................................20

*In re Craig Cnty. Hosp. Auth.*,
   572 B.R. 340 (Bankr. N.D. Okla. 2017) .................................................................17

*In re Grant Broad. of Phila., Inc.*,
   71 B.R. 891 (Bankr. E.D. Pa. 1987) ......................................................................20

*In re Jartran, Inc.*,
   732 F.2d 584 (7th Cir.1984) ...................................................................................22

*In re Pulaski Highway Express, Inc.*,
   57 B.R. 502 (Bankr. M.D. Tenn. 1986) .................................................................23

*Kadjevich v. Kadjevich (In re Kadjevich)*,
   220 F.3d 1016 (9th Cir. 2000) ...............................................................................22

*Tex. Comptroller of Pub. Accounts v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.)*,
   163 F.3d 1063 (9th Cir. 1998) ...............................................................................22

*Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*,
   954 F.2d 1 (1st Cir. 1992) ...............................................................................17, 18

STATUTES

11 U.S.C. § 105........................................................................................... passim

11 U.S.C. § 502........................................................................................................22

11 U.S.C. § 503........................................................................................... passim

11 U.S.C. § 507...............................................................................................1, 17, 23

48 U.S.C. §§ 2101-2241, Puerto Rico Oversight, Management, and Economic
   Stability Act ...........................................................................................................1

48 U.S.C. § 2144 (PROMESA § 204) ........................................................................10

48 U.S.C. § 2161 (PROMESA § 301) ................................................................... passim

48 U.S.C. § 2163 (PROMESA § 303) ........................................................................17

48 U.S.C. § 2164 (PROMESA § 304) ..........................................................................6

48 U.S.C. § 2165 (PROMESA § 305) ........................................................................17

48 U.S.C. § 2166 (PROMESA § 306) ..........................................................................5

48 U.S.C. § 2167 (PROMESA § 307) ..........................................................................5

48 U.S.C. § 2174 (PROMESA § 314) ..........................................................................6

48 U.S.C. § 2175 (PROMESA § 315) ..........................................................................1

OTHER AUTHORITIES

2020 Fiscal Plan for the Puerto Rico Electric Power Authority (cert. June 29,
    2020), *available at* https://drive.google.com/file/d/1paRgy0dJBkUH4-
    5eev7z2SuR0diil8g9/view .................................................................................2, 6, 7

CENT. OFF. FOR RECOVERY, RECONSTRUCTION & RESILIENCY, ,,
    https://reliefweb.int/report/ TRANSFORMATION AND INNOVATION IN THE WAKE
    OF DEVASTATION, AN ECONOMIC AND DISASTER RECOVERY PLAN FOR PUERTO
    RICO (AUG. 8, 2018), https://reliefweb.int/sites/reliefweb.int/files/resources/pr-
    transformation-innovation-plan-congressional-submission-080818_0.pdf .............7

Contract Review, FIN. OVERSIGHT & MGMT. BD. FOR P.R.,
    https://oversightboard.pr.gov/contract-review/ (last visited Mar. 5, 2021) ...........10

LUMA Energy's report to PREB and the P3 Authority, *available at*
    https://aafaf.pr.gov/p3/projects ...............................................................................11

LUMA Monthly Report (February 2021) (Mar. 13, 2021), retrieved from
    https://app.reorg.com/documents/20210317/605229f1612f7.pdf...............11, 12, 13

Message to the People on Energy Transformation, La Fortaleza (Jan. 22, 2018),
    *available at* https://www.fortaleza.pr.gov/content/message-people-energy-
    transformation ...........................................................................................................8

Puerto Rico Electric Power System Transformation Act, Act No. 120-2018, H.B.
    1481, 18th Leg., 3d Reg. Sess. (P.R. 2018) .......................................................2, 8, 9

Puerto Rico Energy Public Policy Act, Act 17-2019, S.B. 1121, 18th Leg., 5th
    Reg. Sess. (P.R. 2019) ...............................................................................................2

*Puerto Rico One Year after Hurricanes Irma and María*, FEDERAL EMERGENCY
MANAGEMENT AGENCY (Sept. 6, 2018), https://www.fema.gov/zh-hans/news-
release/20200220/puerto-rico-un-ano-de-los-huracanes-irma-y-maria ....................................7

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's Title III representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[1] and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (PREPA, the Oversight Board and AAFAF are referred to collectively as  the "Government Parties"), respectfully submit this joint motion (the "Motion"), pursuant to sections 105(a), 503 and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this case pursuant to PROMESA section 301(a), for an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**: (a) allowing an administrative claim in favor of LUMA Energy, LLC and LUMA Energy ServCo, LLC (together, "LUMA Energy") for any accrued and unpaid amounts required to be paid by PREPA during the Interim Period (defined below) under (i) the Supplemental Agreement (defined below) and (ii) the Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement, dated June 22, 2020, entered into by and among PREPA, the Puerto Rico Public-Private Partnerships Authority (the "P3 Authority"), and LUMA Energy, as supplemented (the "T&D Contract"), a copy of which is attached as **Exhibit B** to the *Declaration of Omar J. Marrero*, dated July 7, 2020 [ECF No. 2053-2]  (the "Marrero Declaration" or "Marrero Decl."); and (b) ordering the effectuation of the foregoing. In support of this Motion, the Government Parties respectfully state as follows:

---

[1]   PROMESA is codified at 48 U.S.C. §§ 2101–2241.

## PRELIMINARY STATEMENT

1.    As the Government Parties demonstrated in their submissions and the Court found in connection with the Front-End Administrative Expense Order (defined below), the T&D Contract with LUMA Energy is a key component of the Government of Puerto Rico's and the Oversight Board's shared objective to restructure, transform and modernize Puerto Rico's energy system to deliver the safe, reliable, and affordable energy service the people and businesses of Puerto Rico deserve.  *See* Puerto Rico Electric Power System Transformation Act, Act No. 120-2018, H.B. 1481, 18th Leg., 3d Reg. Sess. (P.R. 2018) ("Act 120-2018"), Statement of Motives; 2020 Fiscal Plan for the Puerto Rico Electric Power Authority (June 29, 2020) ("PREPA 2020 Fiscal Plan");[2] *see also* Puerto Rico Energy Public Policy Act, Act 17-2019, S.B. 1121, 18th Leg., 5th Reg. Sess. (P.R. 2019)  (requiring the unbundling of the electric system through the transfer of operation and maintenance responsibilities of PREPA's transmission, distribution and generation assets to private operators.).  The T&D Contract furthers this goal, providing clear benefits to PREPA by, among other things, requiring LUMA Energy as an independent private operator to assume day-to-day operational responsibility over PREPA's transmission and distribution system (the "T&D System"), revitalize the T&D System, and implement industry standard practices.  This will improve service and quality, strengthen the T&D System against natural disasters, and assist PREPA with deployment of related federal funding.

2.    In connection with the Government Parties' Front-End Administrative Expense Motion (as defined below), the Court granted allowance of administrative expense priority claims for certain Front-End Transition Fees[3] (except late fees) LUMA Energy incurred performing its

---

[2]   *Available at* https://drive.google.com/file/d/1paRgy0dJBkUH4-5eev7z2SuR0diil8g9/view

[3]   Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the T&D Contract.

obligations under the T&D Contract during the Front-End Transition Period.  [ECF Nos. 2053, 2258].   In its decision granting the Front-End Administrative Expense Motion, the Court recognized that LUMA Energy's services in the Front-End Transition Period laid the groundwork for LUMA Energy to assume full control over the T&D System and that these services benefitted PREPA and therefore qualified as necessary costs and expenses of preserving PREPA.  [ECF No. 2258 at 19–20].  After months of performing the Front-End Services, LUMA Energy has informed PREB, through publicly filed status reports, that it intends to end the Front-End Transition Period and begin performing operational and management services with respect to the T&D System (as further defined below, the "O&M Services") on or about June 1, 2021.

3.      The T&D Contract initially envisioned PREPA would emerge from Title III before the date LUMA Energy completed the Front-End Transition Period and assumed full control of the T&D System (the "Service Commencement Date").   However, the parties entered into the Supplemental Agreement (attached to the T&D Contract as Exhibit B to the Marrero Declaration) to allow LUMA Energy to commence full services prior to confirmation of a PREPA plan of adjustment.  LUMA Energy's assumption of full control over the grid under the Supplemental Agreement is conditioned on an order granting administrative expense treatment for amounts required to be paid by PREPA under the Supplemental Agreement and the O&M Agreement during the Interim Period (i.e., the period after Interim Service Commencement and before PREPA's exit from Title III).  Supplemental Agreement §§ 2.3(b), 3.5.  As more fully detailed below, these obligations consist primarily of (i) the Interim Period Service Fee (defined below), (ii) indemnification of LUMA Energy during the Interim Period, and (iii) to the extent applicable, the Termination Fee (defined below) (collectively, the "Interim Obligations").  Accordingly, while PREPA intends to satisfy its obligations under the Supplemental Agreement and T&D Contract in

the ordinary course, the Government Parties seek an order granting to LUMA Energy an allowed administrative expense claim for accrued, unpaid amounts required to be paid by PREPA to LUMA Energy under the Supplemental Agreement and the O&M Agreement during the Interim Period to enable LUMA Energy to assume responsibility over operating the T&D System.

4.      LUMA Energy negotiated a lawful contract at arm's length and is performing under that contract under the supervision of the P3 Authority.  LUMA Energy cannot be expected to enter into and perform a contract of this magnitude, which is the subject of ongoing litigation, if doing what is required by the contract will not qualify as an administrative expense and constitute a necessary cost or expense of preserving PREPA's property.  For that reason, the Government Parties have agreed to seek to obtain administrative priority status for LUMA Energy's claims.

5.      The same reasons the Court gave for approving administrative-expense status for the Front-End Transition Fees apply with even more force to the O&M Services themselves.  The Front-End Transition Services were beneficial to PREPA because they provided the foundation and set the stage for commencement of the O&M Services.  Therefore, the O&M Services themselves—operating, repairing and remediating PREPA's T&D System during Title III—must certainly qualify for administrative-expense priority as the "necessary costs and expenses of preserving [PREPA]." 11 U.S.C. § 503(b)(1)(A).  Moreover, LUMA Energy's requirement that the Government Parties procure an order granting it administrative expense priority before LUMA Energy invests more time and resources to perform the O&M Services is eminently reasonable for a transaction and commitment of this size and complexity and given the objections lodged in connection with the Front-End Transition Fees.  Indeed, the costs and expenses to be incurred by LUMA Energy in assuming responsibility for PREPA's operations are precisely the types of

expenses Congress had in mind when it incorporated Bankruptcy Code § 503(b)(1)(A) into PROMESA.

6.      The commencement of the O&M Services will be the culmination of almost three years of collective efforts by the P3 Authority, PREPA, AAFAF and the Oversight Board.  LUMA Energy and PREPA have now expended considerable time and resources during the Front-End Transition Period to achieve this critical milestone.  PREPA's transformation is moving forward. A more efficient, reliable, and affordable power utility is not only critical for the economy of the Commonwealth, it will also support PREPA's restructuring and exit from Title III.  For these reasons, and as explained more fully below, the Government Parties respectfully request that this Court enter an order, substantially in the form of Exhibit A, allowing an administrative expense claim in favor of LUMA Energy.

## JURISDICTION AND VENUE

7.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Motion pursuant to PROMESA section 306(a).

8.      Venue is proper in this district pursuant to PROMESA section 307(a).

9.      The statutory predicates for the relief sought herein are sections 105(a), 503 and 507(a)(2) of the Bankruptcy Code, made applicable to this contested matter by PROMESA section 301(a).

## BACKGROUND[4]

10.      On July 2, 2017 (the "Petition Date"), the Oversight Board filed a voluntary petition

for relief for PREPA pursuant to section 304(a) of PROMESA, commencing a case under Title III

thereof (the "Title III Case").

11.      PROMESA section 301(a) incorporates sections 105(a), 503 and 507(a)(2) of the

Bankruptcy Code, which provide for the allowance of administrative expenses granted priority

over other unsecured claims in a Title III case.  PROMESA section 314(b)(4) further provides that

unpaid administrative expenses are required to be paid upon the effective date of a plan of

adjustment unless the claimholder agrees to different treatment.   Here, pursuant to the

Supplemental Agreement, PREPA is required to pay LUMA Energy when certain milestones or

obligations are satisfied regardless of whether a plan of adjustment has been confirmed.

### A.  PREPA Operations and Management

12.      Throughout its history, PREPA has operated as a government instrumentality and

vertically integrated monopoly.  Since 1981, PREPA has been the sole energy-distribution service

provider in Puerto Rico.  PREPA currently serves approximately 1,500,000 customers (91%

residential, 9% commercial, and <1% industrial).  Fiscal Plan § 2.6.[5]  PREPA serves its clients

through an extensive transmission and distribution system with approximately 2,600 miles of

---

[4]    The Government Parties are only seeking allowance of an administrative expense claim for the Interim Obligations, not approval of the T&D Contract or Supplemental Agreement from the Title III Court as no such approval is required under PROMESA.  The process through which LUMA Energy was selected as the winning bidder and information regarding approval of the T&D Contract by the Oversight Board, the P3 Authority, PREPA, PREB, and the Government of Puerto Rico pursuant to Puerto Rico law are set forth herein to provide the Court with background information only.  A more detailed recitation of the process is available in the Partnership Committee Report attached as Exhibit A to the Marrero Declaration.

[5]    References to the Fiscal Plan herein shall mean the 2020 Fiscal Plan for the Puerto Rico Electric Power Authority (cert. June 29, 2020), available at https://drive.google.com/file/d/1paRgy0dJBkUH4-5eev7z2SuR0diil8g9/view

.

transmission and sub-transmission lines (230 kV/115 kV/38 kV), over 16,000 miles of primary voltage distribution lines (13kV, 8kV, 4kV), and roughly 400 utility-owned substations. *Id*. § 2.4. Electricity is supplied by PREPA-owned generation plants and also procured from independent power producers under power purchase agreements. *Id*. § 2.5.

13.     For decades, PREPA has faced operational, strategic and financial challenges. Marrero Decl. ¶ 9.  In addition, Puerto Rico suffered catastrophic damage from Hurricane Irma and Hurricane Maria, which hit the island within weeks of each other in 2017.  The effects of the hurricanes left Puerto Rico's infrastructure, including energy systems, in critical need of recovery. *Id*.[6] These challenges have resulted in inefficient and unreliable power service prone to frequent blackouts, negatively impacting customers, the environment, and the Puerto Rico economy.

14.     Recognizing these issues, the Government of Puerto Rico and the Oversight Board have long been aligned in their determination that a complete transformation of the T&D System is required to bring safe, reliable, and modern T&D System services to Puerto Rico and to move Puerto Rico's electric system and broader economy forward.  *See* Marrero Decl. ¶ 10; PREPA 2020 Fiscal Plan § 3.1.  On January 22, 2018, consistent with the then certified fiscal plan for PREPA, then Governor Rosselló announced plans for the transformation of Puerto Rico's electric power system into one that is modern, sustainable, reliable, efficient, cost-effective, and more resilient to the ravages of nature.[7]

---

[6]     *See* CENT. OFF. FOR RECOVERY, RECONSTRUCTION & RESILIENCY, ,, https://reliefweb.int/report/ TRANSFORMATION AND INNOVATION IN THE WAKE OF DEVASTATION, AN ECONOMIC AND DISASTER RECOVERY PLAN FOR PUERTO RICO (AUG. 8, 2018), https://reliefweb.int/sites/reliefweb.int/files/resources/pr-transformation-innovation-plan-congressional-submission-080818_0.pdf; *Puerto Rico One Year after Hurricanes Irma and María*, FEDERAL EMERGENCY MANAGEMENT AGENCY (Sept. 6, 2018), https://www.fema.gov/zh-hans/news-release/20200220/puerto-rico-un-ano-de-los-huracanes-irma-y-maria.

[7]     Message to the People on Energy Transformation, La Fortaleza (Jan. 22, 2018), *available at* https://www.fortaleza.pr.gov/content/message-people-energy-transformation.

### B.  Overview of the T&D Transformation Process

15.     In furtherance of these transformation plans, on June 21, 2018, the Legislative Assembly of Puerto Rico enacted Act No. 120-2018, also known as the Puerto Rico Electric Power System Transformation Act.   Act 120-2018 establishes the legal framework for the sale, disposition, and/or transfer of the assets, operations, functions, and services of PREPA, including a transaction under which operations of the T&D System would be assumed by a private manager with ownership remaining at PREPA.  Act 120-2018 also establishes the necessary safeguards to ensure a fair and transparent process for obtaining bids for the private operation and management of the T&D System.

16.     Act 120-2018 further designates the P3 Authority as the government entity responsible for the functions, services, and facilities of public-private partnerships in the electric sector.  *See* Act 120-2018 § 5(a). In accordance with Act 120-2018, the P3 Authority established the Partnership Committee to evaluate and select qualified bidders and to negotiate the terms and conditions of any public-private partnerships in the electric sector. *See id.* § 5(c); *see also* Marrero Decl. ¶¶ 3, 5.

17.     Pursuant to this legislative authority and working in collaboration with the Oversight Board, on June 5, 2018, the P3 Authority launched a competitive process to award a long-term contract to a qualified operation and maintenance ("O&M") service provider for the T&D System.  Marrero Decl. ¶ 6 & Ex. A.

### C.  The Selection Process

18.     On October 31, 2018, the P3 Authority issued the *Request for Qualifications: Puerto Rico Electric Power Transmission and Distribution System (RFQ 2018-2)* (the "RFQ") pursuant to Sections 3 and 5 of Act 120-2018.  The RFQ sought statements of qualification ("SOQs") from companies and consortia interested in managing and operating Puerto Rico's T&D

System, including the administration of federal disaster recovery funding.  After the RFQ process concluded, on January 17, 2019, the Partnership Committee selected four experienced and reputable respondents (each such party, a "Qualified Respondent") to participate in the next stage of the process.  Marrero Decl. Ex. A, at 34–36.

19.     The P3 Authority then initiated the RFP process -- a robust, competitive, and transparent procurement process carried out in accordance with Act 120-2018 and its corresponding regulations -- that concluded on January 11, 2020. *See id.* at 37–57.  Through that process, the Partnership Committee selected a consortium comprised of ATCO Ltd. (succeeded by its affiliate, Canadian Utilities Limited), Quanta Services, Inc., and Innovative Emergency Management, Inc. as the preferred proponent to engage in exclusive discussions and negotiations with the P3 Authority pursuant to Act 120-2018.  This consortium formed LUMA Energy to be the T&D Contract counterparty and act as "Operator" under the contract.

### D. The Contract Approval Process

20.     Pursuant to PROMESA and applicable Puerto Rico law, the T&D Contract negotiated and approved by the Partnership Committee was subject to the further approval of (i) the Board of Directors of the P3 Authority, (ii) the Governing Board of PREPA, (iii) the Oversight Board, (iv) the PREB, and (v) the Government of Puerto Rico pursuant to the procedures set forth in Act 29-2009.

21.     On January 17, 2020, the Partnership Committee approved the final proposal of LUMA Energy and the form of the T&D Contract.  On March 3, 2020, the P3 Authority submitted that form of the T&D Contract to the Oversight Board for approval.

22.     Pursuant to, among others, PROMESA section 204(b)(2) (the "Contract Review Policy"),[8] and in accordance with PREPA's Fiscal Plan, the Oversight Board reviewed the form T&D Contract with the P3 Authority and suggested certain revisions, including a supplemental agreement to the T&D Contract[9] that contemplates, to the extent necessary, LUMA Energy assuming operation and maintenance services for a limited duration prior to confirmation of a Title III plan of adjustment (the "Supplemental Agreement").  On April 14, 2020, the Oversight Board voted to approve the updated T&D Contract, which includes the Supplemental Agreement, pursuant to its Contract Review Policy.  Following Oversight Board approval, on May 18, 2020, the P3 Authority filed the final T&D Contract with the PREB for regulatory approval.  On June 17, 2020, PREB entered a resolution and order (the "PREB Resolution and Order") issuing an Energy Compliance Certificate in connection with the T&D Contract.[10]

23.     Thereafter, on June 22, 2020 the Board of Directors of the P3 Authority, the PREPA Governing Board and the Government of Puerto Rico, pursuant to the procedures set forth in Act 29-2009, each approved the T&D Contract.  Following these approvals, the T&D Contract was signed by the parties on June 22, 2020 and the process immediately shifted to the "Front-End Transition" phase (as described below) to begin transitioning the T&D System functions to LUMA Energy.

---

[8]   Contract Review, FIN. OVERSIGHT & MGMT. BD. FOR P.R., https://oversightboard.pr.gov/contract-review/ (last visited Mar. 5, 2021).

[9]   The term "T&D Contract" as used in this Motion includes the Supplemental Agreement dated June 22, 2020, entered into by and among PREPA, the P3 Authority, and LUMA Energy, which is also included as part of Exhibit B to the Marrero Declaration.

[10]   *Available at* https://energia.pr.gov/wp-content/uploads/2020/06/Resolution-and-Order-NEPR-AP-2020-0002.pdf

### E. *Front-End Transition Period*

24.     The T&D Contract contemplates a phased approach to ensure an orderly transition of the responsibility for the management, operation, maintenance, repairs, restoration and replacement of the T&D System beginning with an initial twelve-month period (the "Front-End Transition Period").  During the Front-End Transition Period, which commenced on June 22, 2020, LUMA Energy has been responsible for assessment, analysis and planning to determine what work needs to be done, and in what sequence, so as to remediate, repair, replace and stabilize the T&D System equipment, systems, practices and services, among other things.  These services, in addition to other provided by LUMA Energy during the Front-End Transition Period (as defined in the T&D Contract, the "Front-End Transition Services"), lay the foundation for LUMA Energy to be able to perform the O&M Services in compliance with the T&D Contract and public policy.[11] *See* T&D Contract, Annex II.

25.     LUMA Energy has been performing the Front-End Transition Services to ensure an optimal and timely transition of operation and management services from PREPA to LUMA Energy.  LUMA Energy updates the P3 Authority and PREB with the status of the Front-End Transition Services on a monthly basis.[12]  Among the many complex transition items, LUMA Energy has (i) worked with storm response planning as well as developed plans to address critical safety and operational deficiencies, (ii) interviewed, hired, and trained certain key employees, and (iii) established an IT and communications plan.[13]  LUMA Energy has also received PREB certification as an electric service company.[14]  LUMA Energy has stated that it is on track to

---

[11]   A plan describing these services in greater detail is set forth in Annex II of the T&D Contract.

[12]   LUMA Energy's report to PREB and the P3 Authority, *available at* https://aafaf.pr.gov/p3/projects/.

[13]   *See* LUMA Monthly Report (February 2021) 4, 7, 24 & 31 (Mar. 13, 2021), retrieved from https://app.reorg.com/documents/20210317/605229f1612f7.pdf

[14]   *Available at* https://energia.pr.gov/en/dockets/?docket=nepr-ct-2020-0008.

complete all Front-End Transition Services and Commencement Date Conditions prior to June 1, 2021.[15]   The Government Parties do not expect that PREPA will have a confirmed plan of adjustment by that date.   Thus, the Supplemental Agreement will become effective, Interim Service Commencement will occur, and LUMA Energy will assume operational control over the T&D System under the Supplemental Agreement.

### F. Front-End Administrative Expense Motion

26.   In accordance with Section 4.1(c)(i) of the T&D Contract, on July 7, 2020 the Government Parties filed *PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (the "Front-End Administrative Expense Motion") [ECF No. 2053].   Several parties filed objections.[16]

27.   The Court heard the Front-End Administrative Expense Motion at the September 16, 2020 Omnibus hearing.   On October 19, 2020, the Court entered the *Memorandum Opinion Granting in Part and Denying in Part PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (the "Front-End Administrative Expense Opinion") [ECF No. 2258].   In its opinion, the Court held, as relevant here, (i) "the text and structure of PROMESA compel the conclusion that operating expenses of PREPA are eligible for administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code," despite objectors' argument to the contrary (*id.* at 15–16),

---

[15]   *See* LUMA Monthly Report (February 2021) 3 (Mar. 13, 2021), retrieved from https://app.reorg.com/documents/20210317/605229f1612f7.pdf

[16]   Several objecting parties sought discovery in connection with the Administrative Expense Motion.  The Government Parties produced approximately 7,800 pages. Subsequently, Judge Dein denied all requests for extended discovery because the parties failed to show that the information requested was "relevant or proportional to the narrow issue before the Court."  *See* Order on Discovery 10–11, ECF No. 2140.

and (ii) the Front-End Transition Service Fees qualify for administrative-expense priority under

section 503(b)(1)(A) because they "inure to PREPA's benefit" (*id.* at 19).  The Court entered an

Order consistent with its decision [ECF No. 2259].  UTIER appealed this order to the First Circuit

and briefing is ongoing.  *See Notice of Appeal*, [ECF No. 2269] and [ECF No. 2277] (appeal

docketed in the First Circuit as Case No. 20-2041).

### G.  *Commencement of Operation and Management*

28.     LUMA Energy continues to provide the Front-End Transition Services and the

Government Parties expect those services to be complete on or before June 1, 2021, which would

become the Interim Service Commencement Date.[17]  At that time, if all preconditions have been

met, LUMA Energy will assume full responsibility for the management, operation, maintenance,

repair, restoration, replacement and other related O&M Services for the T&D System.  These

services include electric transmission, distribution and load serving, long-term planning, dispatch,

asset management, community and media relations, public and employee safety, billing and

collection, reporting and record keeping, finance and accounting, emergency response, and

customer service, among others (collectively, the "O&M Services").  T&D Contract § 5.1 and

Annex I.

29.     In addition to the day-to-day operations and maintenance functions, and as part of

the O&M Services, LUMA Energy will play an integral role in executing PREPA's energy grid

modernization strategy, as well as actively participate and assist in the deployment of federal

funding for grid reconstruction.  *Id.* § 5.1.  As explained in connection with the prior motion, the

role of LUMA Energy is strategically important to PREPA given LUMA Energy's proven

---

[17]     *See* LUMA Monthly Report (February 2021) 3 (Mar. 13, 2021), retrieved from
https://app.reorg.com/documents/20210317/605229f1612f7.pdf.

experience and capacity to manage large federally-funded projects and the associated project management capacity needed to execute important reconstruction work on the island's grid. Marrero Decl. ¶ 14. LUMA Energy's role in this regard will reassure funding agencies that there is an independent operator with proven and verifiable experience to deploy grid modernization plans effectively, efficiently and in a compliant manner. *Id.* Delivering major grid modernization capital projects on time and on budget will be essential to protect Puerto Rico from future devastation from hurricanes and other natural disasters. No less critical, the O&M Services will also help improve everyday service quality, safety, and reliability. The O&M Services will benefit Puerto Rico and its residents, as well as PREPA and its commercial and industrial customers, as they will put PREPA's power grid on a path to becoming a more modern, sustainable, reliable, efficient, cost-effective, and resilient T&D System. The transition of control over the T&D System to LUMA Energy is the crucial first step in the overall transformation of Puerto Rico's energy sector. Marrero Decl. ¶ 11.

30. Pursuant to the T&D Contract, the parties intend and expect that LUMA Energy will achieve the following goals, among others:[18]

- Transform PREPA's T&D System into a modern, sustainable, reliable, efficient, cost-effective, and resilient electric system consistent with prudent utility practices to increase electric service quality;

- Increase T&D System resiliency, achieving performance in line with codes, specifications and standards consistent with mainland U.S. electric utilities;

- Increase T&D System reliability;

- Deploy new technologies; and

---

[18] *See* Marrero Decl. Ex. A, at 27–29.

- Implement industry best practices and operational excellence through managerial continuity and long-term planning.

### H. The Supplemental Agreement

31.     The T&D Contract, before taking into account the Supplemental Agreement, contemplates that handover to LUMA Energy and commencement of the O&M Services will occur upon completion of the Front-End Transition Services and completion of all Service Commencement Date Conditions.  *See* T&D Contract § 4.5.   Significantly, the Service Commencement Date Conditions includes a requirement that PREPA obtain necessary Title III Court approvals.  *Id.* § 4.5(o).

32.     The Oversight Board believed that in light of the status of PREPA's Title III case, PREPA might not be able to confirm and consummate a Title III plan of adjustment prior to Service Commencement.  Given the importance of the energy reforms contemplated by the T&D Contract, the Oversight Board wanted to avoid delaying the Service Commencement Date if confirmation of PREPA's Title III plan of adjustment had not occurred when all other conditions precedent to the Service Commencement Date were achieved.

33.     Thus, the Oversight Board requested that amendments be made to the T&D Contract to address the anticipated timing.  These amendments are included in the Supplemental Agreement (as an integral part of the T&D Contract).

34.     The Supplemental Agreement provides for the commencement of the O&M Services if Service Commencement Date Conditions, other than PREPA's exit from Title III and delivery of a certain tax opinion and reliance letter, are satisfied or waived (the "Interim Service Commencement Date").  Supplemental Agreement §§ 2.2 & 2.3.  The Interim Period Service Commencement Date begins a period (the "Interim Period") during which the Supplemental Agreement is in effect, and LUMA Energy will assume full control of the T&D System, until the

15

earlier of the "Service Commencement Date" (which will occur when a PREPA plan of adjustment is confirmed) or the "Interim Period Termination Date," which will occur eighteen months after the "Interim Service Commencement Date," unless extended by agreement of the parties. Supplemental Agreement § 7.1.

35.    The Supplemental Agreement provides as a condition to the Interim Service Commencement that the Title III Court has entered a final and non-appealable order[19] granting administrative expense treatment for the Interim Obligations.  Supplemental Agreement § 2.3(b).

36.    Under the Supplemental Agreement, the Interim Obligations primarily consist of: (a) compensation for the O&M Services during the Interim Period (the "Interim Period Service Fee"), in an annual fixed amount of $115 million (payable in monthly installments)  (Supplemental Agreement § 3.3); (b) indemnification of LUMA Energy and its affiliates primarily for any claims or damages against them arising from PREPA's operation of the utility (the "Indemnification Obligation"), similar to the indemnification obligation during the Front-End Transition Period (T&D Contract at § 18.2) and (c) a $115 million termination fee, payable upon the occurrence of the Interim Period Termination Date (the "Termination Fee")  (Supplemental Agreement § 7.2(c)).

## RELIEF REQUESTED

37.    By this Motion, the Government Parties seek an order allowing an administrative expense claim for any accrued and unpaid Interim Obligations of PREPA to LUMA Energy, pursuant to sections 105(a), 503, and 507(a)(2) of the Bankruptcy Code, made applicable to this proceeding by section 301 of PROMESA, and granting related relief.  To be clear, PREPA intends to satisfy its obligations under the T&D Contract and Supplemental Agreement on a timely basis

---

[19]   The requirement that the order be non-appealable can be waived by LUMA Energy.  LUMA Energy waived the parallel condition in connection with the Front-End Administrative Expense Order.

in the ordinary course. Additionally, the approval sought by this Motion is not approval of the Supplemental Agreement or any other portion of the T&D Contract, but rather solely the allowance of an administrative claim for PREPA's accrued and unpaid Interim Obligations.

## **BASIS FOR RELIEF**

38.     Section 503(b)(1)(A) of the Bankruptcy Code, made applicable by PROMESA section 301, provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Section 301(a) of PROMESA also expressly incorporates section 507(a)(2) of the Bankruptcy Code, which gives priority to administrative expenses allowed under section 503(b) of the Bankruptcy Code. 48 U.S.C. § 2161(c)(5). Section 301(c)(5) of PROMESA provides that "[t]he term 'property of the estate', when used in a section of [the Bankruptcy Code] made applicable in [Title III], means property of the debtor," (*Id.*), and "the Bankruptcy Code, as incorporated into PROMESA, makes administrative expense priority available for the 'necessary costs and expenses of preserving'" a Title III debtor (Front-End Administrative Expense Opinion [ECF No. 2258] at 18). In the First Circuit, allowance of administrative claims is determined by a narrow two-prong test, whereby "a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a post-petition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." *Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 5 (1st Cir. 1992) (citations omitted). Further, "[i]n light of the restrictions on judicial authority and the scope of PROMESA that are imposed by sections 303 and 305 of the statute, Oversight Board and debtor consent are also relevant considerations." Front-End Administrative Expense Opinion 19; *see also*

*In re Craig Cnty. Hosp. Auth.*, 572 B.R. 340, 350 (Bankr. N.D. Okla. 2017) (finding in the chapter 9 context, it would be the "equitable result" to grant administrative expense status for the "actual and necessary costs and expenses of preserving the operations of [the debtor]" where the debtor had "expressed an intention to give administrative, priority status to post-petition claimants that conferred actual benefit on [the debtor] during the course of this case.").

39.     The Interim Obligations meet all requirements for allowance as administrative expenses under § 503(b)(1)(A).  *First*, the Interim Obligations arise from the T&D Contract and the Supplemental Agreement, entered into post-petition, and will be incurred on account of O&M Services to be performed by LUMA Energy post-petition in operating the PREPA T&D System.

40.     *Second*, by performing what is required under a negotiated, lawful contract with the debtor, that was approved by the Government Parties, LUMA Energy's actions satisfy the second prong.  LUMA Energy doing what the debtor has asked pursuant to an approved contract must be deemed to benefit the debtor here.  LUMA Energy's satisfaction of its contractual obligations manifestly benefits the debtor, as well as the debtor's post-petition operation.  *See* Front-End Administrative Expense Opinion 19; *Woburn Assocs.*, 954 F.2d at 5 ("Preservation of the estate includes protection of the assets of the estate, as well as postpetition operation of the business of the debtor.").

41.     Further, the O&M Services provided by LUMA Energy will materially benefit PREPA, its operations, and, by extension, its stakeholders, by building on the Front-End Transition Services to make operational improvements to provide a modern, sustainable, reliable, efficient, cost-effective, and resilient T&D System.  Front-End Administrative Expense Opinion 19; *see also In re 1701 Commerce, LLC*, No. 12-41748-DML-11, 2014 WL 4657314, at *8 (Bankr. N.D. Tex. Sept. 17, 2014) (finding operation and management of the "Debtor's largest asset" were actual and

necessary expenses of preserving the estate under section 503(b)(1)).  The services LUMA Energy will provide in exchange for the fees incurred under the T&D Contract and Supplemental Agreement are extensive.  LUMA Energy's assumption of full responsibility for the day-to-day management, operation, maintenance, repair, restoration, and replacement of the T&D System includes electric transmission, distribution and load serving, long-term planning, dispatch, asset management, community and media relations, public and employee safety, billing and collection, reporting and record keeping, finance and accounting, emergency response, and customer service. *See* T&D Contract, Annex I.  LUMA Energy will also play an integral role in executing PREPA's energy grid modernization strategy, as well as actively participate and assist in the deployment of federal funding for grid reconstruction. The parties expect that these services will provide the substantial and material benefits to PREPA described in paragraph 30 above.

42.     Most importantly, this Court previously determined that the Front-End Transition Fees (except late fees) incurred in connection with LUMA Energy's provision of the Front-End Transition Services were eligible for administrative-expense priority because they benefit PREPA. Front-End Administrative Expense Opinion at 10.  Among the reasons the Court cited in support of its conclusion was its factual finding that the "services [are] an essential prerequisite to LUMA Energy's ability to assume full control over the T&D System and the commencement of the O&M Services." *Id.* at 19.  As the Front-End Transition Services were the important key to unlock the next phase of the T&D Contract, i.e., full O&M Services, the O&M Services are the vehicle driving PREPA's transformation of the T&D System.  Thus, the O&M Services themselves, which consist

of operating PREPA's T&D System during Title III, crystallize the benefits from the planning phase, and equally are entitled to administrative-expense priority status.

43.     The necessity and benefit of LUMA Energy's services is clear.  Absent assurance of payment, LUMA Energy has termination rights under the T&D Contract, and the Government Parties' shared objective to achieve private operation and transformation of the utility could fail. *See In re Grant Broad. of Phila., Inc.,* 71 B.R. 891, 897 (Bankr. E.D. Pa. 1987) (The policy behind giving priority to administrative expenses "is to encourage creditors to supply necessary resources to debtors post-petition.").  LUMA Energy's expenditure of new time and resources will preserve and improve PREPA, and will thus inure to the benefit of all PREPA's stakeholders. *See In re Climax Chem. Co.*, 167 B.R. 665, 667 (Bankr. D.N.M. 1994) ("When creditors supply [necessary] resources, the Debtor is allowed to operate its business for the benefit of pre-petition creditors and to attempt to effectuate a successful reorganization.").

44.     *Third*, the Government Parties consent to providing an administrative expense claim for any accrued and unpaid Interim Obligations owed to LUMA Energy for providing the services for which PREPA and the P3 Authority contracted and that both the Government of Puerto Rico and the Oversight Board approved.  Commencement and performance of the O&M Services is a crucial component of PREPA's operational restructuring, and the structural reform required under the Fiscal Plan. *See* Fiscal Plan, Ch. 3.

45.     In exchange for these myriad benefits, PREPA must comply with certain obligations under the Supplemental Agreement and other portions of the T&D Contract, including PREPA's commitment in the Supplemental Agreement to seek administrative expense priority for the Interim Obligations.  Supplemental Agreement § 3.5.  The reasonableness of the Interim Obligations is evidenced by the competitive bidding process, and the P3 Authority's thorough

negotiation and consideration of the T&D Contract.  It is further evidenced by the P3 Authority's determination that the bid proposed by LUMA Energy was more favorable to PREPA and its constituents than other bids and the Government Parties' determination that the T&D Contract is more beneficial to PREPA than PREPA's self-management of the T&D System.

46.    As an alternative to granting an administrative expense claim under section 503(b)(1)(A), the Court may grant the relief requested in the Motion as an administrative expense claim pursuant to section 503(b) generally.  The Court may order such relief pursuant to Bankruptcy Code section 105(a), made applicable by PROMESA section 301(a), to carry out the purposes of Title III—here, the purpose of Bankruptcy Code section 503(b), also made applicable by PROMESA under § 301(a).[20]  Section 503(b)'s preamble expressly provides there shall be allowed administrative expenses, "including," but not expressly limited to, the expenses listed in section 503(b).[21] *See Kadjevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016, 1019–20 (9th Cir. 2000) ("The Bankruptcy Code provides a nonexhaustive list of allowable administrative expenses; they include 'the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.'" (quoting 11 U.S.C. § 503(b)(1)(A)); *Tex. Comptroller of Pub. Accounts v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.)*, 163 F.3d 1063, 1071 (9th Cir. 1998) (explaining that the list of particular

---

[20]  11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

[21]  *See* 11 U.S.C. § 503(b) ("After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, ***including***— . . . .") (emphasis added).

administrative expenses contained in § 503(b) is nonexhaustive); *In re Flo-Lizer, Inc.*, 107 B.R.

143, 145 (S.D. Ohio 1989), *aff'd*, 916 F.2d 363 (6th Cir. 1990) (same).

47.     Accordingly, because the categories of expenses listed under section 503(b) is not

exclusive, the Court may allow additional administrative expenses not expressly listed, and is not

confined to expenses incurred in preserving the estate under subsection (1)(A).  Here, to carry out

Title III, it follows that the Court must have the power to provide assurances of payment to entities

doing business with the debtor.  *See Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*,

536 F.2d 950, 954 (1st Cir. 1976) ("[I]f a business is to be reorganized, third parties must be willing

to provide the necessary goods and services…[T]hey clearly will not do so unless their claims for

payment will be paid ahead of the pre-petition debts and liabilities of the debtor."); *see also In re

Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984) ("If a reorganization is to succeed, creditors asked

to extend credit after the petition is filed must be given priority so they will be moved to furnish

the necessary credit to enable the bankrupt to function"); *In re Pulaski Highway Express, Inc.*, 57

B.R. 502, 505 (Bankr. M.D. Tenn. 1986) ("Sections 503(b) and 507(a) grant priority status to

encourage the provision of goods and services to the estate, and to compensate those who expend

new resources attempting to rehabilitate the estate.").  Therefore, the Court is empowered to grant

LUMA Energy an administrative expense priority for any accrued and unpaid Interim Obligations.

48.     Objectors to the Front-End Administrative Expense Motion previously took issue

with certain aspects of the Supplemental Agreement, including the Termination Fee and LUMA

Energy's reasonable consent rights regarding a plan of adjustment for PREPA.  While objectors

have plucked these provisions out of context to argue that, standing alone, they do not benefit

PREPA, such arguments miss the mark, as these contractual requirements are part of the overall

economic bargain to unlock the benefits of the T&D Contract.  The Government Parties and the

P3 Authority carefully reviewed and approved the T&D Contract and the package of benefits and obligations thereunder.  LUMA Energy's limited consent rights and the Termination Fee are terms that the parties negotiated at arms' length and on which they agreed, and are thus "necessary" costs of the overall deal through which LUMA Energy provides services that preserve PREPA and improve access to reliable electricity for the island, its residents and its businesses.  Moreover, LUMA Energy's consent rights regarding a Title III plan and confirmation order are subject to a reasonableness qualifier (Supplemental Agreement § 6.1), and the Court will have jurisdiction to determine whether any hypothetical future withholding of consent by LUMA Energy is reasonable.

49.     For the reasons herein, the Interim Obligations qualify as administrative expenses under the provisions of 503 and 507(a)(2) of the Bankruptcy Code, as incorporated by PROMESA.

## NOTICE

50.     The Government Parties have provided notice of this Motion to (collectively, the "Notice Parties"): (i) LUMA Energy; (ii) the Office of the United States Trustee for the District of Puerto Rico; (iii) the indenture trustees and/or agents, as applicable, for PREPA's bonds; (iv) the administrative agent(s) for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank de Puerto Rico, and the lenders party thereto, as amended, and that certain Trade Finance Facility Agreement, dated as of July 20, 2012; (v) the statutory unsecured claimholders' committee appointed in this Title III Case; (vi) the Office of the United States

Attorney for the District of Puerto Rico; (vii) counsel to AAFAF; (viii) the Puerto Rico Department

of Justice; and (ix) all other parties who have sought notice of filings in PREPA's Title III case.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Government Parties respectfully request the Court enter the Proposed

Order (a) granting the Motion, and (b) granting PREPA such other relief as is just and proper.

Dated: March 26, 2021
     San Juan, Puerto Rico

Respectfully submitted,

*/s/   Martin J. Bienenstock*

Martin J.  Bienenstock (*pro hac vice*)
Paul V.  Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S.  Desatnik *(pro hac vice)*
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for the
Commonwealth of Puerto Rico and the Puerto
Rico Electric Power Authority*

**O'NEILL & BORGES LLC**

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis Marini*
Luis C. Marini-Biaggi
USDC No. 222301
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Tel:  (787) 705-2171
Fax:  (787) 936-7494

*Co-counsel for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*


**DÍAZ & VÁZQUEZ LAW FIRM, P.S.C**

*/s/ Katiuska Bolaños*
Katiuska Bolaños
USDC-PR No. 231812
290 Jesús T. Piñero Ave.
Oriental Tower, Suite 1105
San Juan, PR 00918
Tel.:  (787) 395-7133
Fax:  (787) 497-9664

*Counsel for Puerto Rico Electric Power
Authority*


**O'MELVENY & MYERS LLP**

*/s/ Elizabeth L. McKeen*

John J. Rapisardi
Nancy A. Mitchell
Maria J. DiConza
7 Times Square
New York, New York 10036
Tel:   (212) 326-2000
Fax:  (212) 326-2061

-and-

Peter Friedman
1625 Eye Street, NW
Washington, D.C. 20006
Tel:  (202) 383-5300
Fax:  (202) 383-5414

-and-

Elizabeth L. McKeen
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel:  (949) 823-6900
Fax:  (949) 823-6994

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority and Puerto
Rico Electric Power Authority*

26

## Exhibit A

Proposed Order

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[24] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY<br>("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF No. [x]**<br><br>**This Motion relates to PREPA<br>and shall be filed in Lead Case<br>No. 17 BK 3283-LTS and Case<br>No. 17 BK 4780-LTS.** |

**ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM
FOR AMOUNTS TO BE PAID TO LUMA ENERGY BY
PREPA DURING INTERIM PERIOD UNDER SUPPLEMENTAL
AGREEMENT AND THE T&D CONTRACT**

---

[24] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

Upon the Government Parties' *Motion for Order Allowing Administrative Expense Claim for Amounts to Be Paid to LUMA Energy By PREPA During Interim Period Under Supplemental Agreement and the T&D Contract* (the "Motion");[25] and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found that the Interim Obligations, to the extent incurred and payable under the T&D Contract, including the Supplemental Agreement, meet all applicable requirements for an administrative expense claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, made applicable to this Title III Case pursuant to section 301(a) of PROMESA; and the Oversight Board having consented to the allowance of the Interim Obligations as administrative expense claims; and that the relief requested in the Motion is in the best interests of PREPA, its creditors, and other parties in interest; and the Court having found that PREPA provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard the statements of counsel in support of the Motion at the hearing held before the Court on April 28, 2021 (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation and sufficient cause appearing therefor,

---

[25] Capitalized terms not otherwise defined herein shall have the meaning given to them in the Motion.

IT IS HEREBY ORDERED THAT:

1. The Motion is **GRANTED** as set forth herein.

2. Pursuant to sections 105(a), 503 and 507(a)(2) of the Bankruptcy Code, made applicable in this Title III Case pursuant to section 301(a) of PROMESA, LUMA Energy shall have an allowed administrative expense claim for its accrued and unpaid Interim Obligations incurred under the T&D Contract (including the Supplemental Agreement).

3. Notwithstanding any applicability of any Bankruptcy Rule to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. To the extent required, PREPA and the Oversight Board, as PREPA's representative in this Title III Case, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted in this Order in accordance with the Motion and without further order of this Court.

5. The Court shall retain jurisdiction to hear and determine any and all disputes related to or arising from the implementation, interpretation, and enforcement of this Order.

Dated: [___ ___], 2021

_____
HONORABLE LAURA TAYLOR SWAIN

3