**Hearing Date:** April 28, 2021 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline:** April 13, 2021 at 9:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

Case No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

    Debtor.

PROMESA
Title III

Case No. 17 BK 5523-LTS

(Jointly Administered)

-----------------------------------------------------------------------x

### NOTICE OF MOTION OF PUBLIC BUILDINGS AUTHORITY PURSUANT TO BANKRUPTCY CODE SECTION 105, PROMESA SECTION 315(a), AND BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT AGREEMENT WITH TRIPLE-S PROPIEDAD, INC., AND GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that the Puerto Rico Public Buildings Authority ("PBA"), by

and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566- LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Board"), is filing the *Motion of Public Buildings Authority Pursuant to Bankruptcy Code Section 105, PROMESA Section 315(a), and Bankruptcy Rule 9019 for Order Approving Settlement Agreement with Triple-S Propiedad, Inc. and Granting Related Relief* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion and the relief requested therein, if any, must be in writing, must conform to the Federal Rules of Bankruptcy Procedure and the *Thirteenth Amended Notice, Case Management and Administrative Procedures* [Case No. 17-03283-LTS, ECF No. 13512-1] (the "Case Management Procedures"), and must be filed with the Court (a) by registered users of the Court's case filing system, electronically in accordance with Rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, on a CDROM, in text-searchable portable document format (PDF), and served on (i) counsel for the Oversight Board, Proskauer Rose LLP, Eleven Times Square, New York, New York 10036-8299 (Attn: Martin J. Bienenstock, Esq., Brian S. Rosen, Esq.), and O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813 (Attn: Hermann D. Bauer, Esq.); (ii) counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, 7 Times Square, New York, New York 10036 (Attn: John J. Rapisardi, Esq., Nancy Mitchell, Esq., and Peter Friedman, Esq.) and Marini Pietrantoni Muñiz LLC, 250 Ponce de León Ave., Suite 900, San Juan, Puerto Rico 00918 (Attn: Luis C. Marini-Biaggi, Esq.); and (iii) the Office of the United States Trustee for Region 21, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, Puerto Rico 00901-1922, so as to be received no later than **April 13, 2021, at 4:00 p.m. (AST)**.

**PLEASE TAKE FURTHER NOTICE** that, if necessary, a hearing will be held before the Honorable Laura Taylor Swain, United States District Court Judge, in Room 3 of the United States District Court for the District of Puerto Rico, 150 Carlos Chardón Street, Federal Building,

Office 150, San Juan, Puerto Rico 00918-1767 (the "Court"), **April 28, 2021 at 9:30 a.m. (AST)** or telephonically as the Court deems appropriate.

PLEASE TAKE FURTHER NOTICE that the relief requested in the Motion may be granted without a hearing if no objection is timely filed, served, and received in accordance with the Case Management Procedures.

PLEASE TAKE FURTHER NOTICE that copies of the Motion and all documents filed in this Title III case are available (a) free of charge by visiting https://cases.primeclerk.com/puertorico or by calling +1 (844) 822-9231, and (b) on the Court's website at http://www.prd.uscourts.gov, subject to the procedures and fees set forth therein.

Dated:  March 29, 2021
San Juan, Puerto Rico

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla Garcia Benitez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email:  hermann.bauer@oneillborges.com
Email:  carla.garcia@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Joshua A. Esses (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
Email:  brosen@proskauer.com
Email:  jesses@proskauer.com

Marc Eric Rosenthal (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
**PROSKAUER ROSE LLP**
70 West Madison Suite 3800
Chicago, IL 60602-4342
Tel:  (312) 962-3550
Fax:  (312) 962-3551
Email:  mrosenthal@proskauer.com
Email:  ppossinger@proskauer.com

*Attorneys for the Financial Oversight and
Management Board as representative of the Puerto*

**Hearing Date:** April 28, 2021 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline:** April 13, 2021 at 9:30 a.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

-------------------------------------------------------------------x

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>        Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 5523-LTS<br><br>(Jointly Administered) |

-------------------------------------------------------------------x

## MOTION OF PUBLIC BUILDINGS AUTHORITY PURSUANT TO BANKRUPTCY CODE SECTION 105, PROMESA SECTION 315(a), AND BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT AGREEMENT WITH TRIPLE-S PROPIEDAD, INC. AND GRANTING RELATED RELIEF

To the Honorable United States District Court Judge Laura Taylor Swain:

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Puerto Rico Public Buildings Authority ("PBA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "FOMB" or "Oversight Board") as PBA's sole Title III representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), respectfully submits this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable in this Title III case by section 301(a) of PROMESA, PROMESA section 315(a), and Rule 9019 of the Federal Rules of Bankruptcy Procedure, made applicable in this Title III case by section 310 of PROMESA, requesting entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), providing for, among other things: (i) approval of that certain Settlement and Release Agreement, (the "Settlement Agreement"),[2] by and between PBA, FOMB, and Triple-S Propiedad, Inc. ("TSP"), a true and correct copy of which is attached hereto as **Exhibit B**; (ii) payment of $46,481,937.00 (the Settlement Payment, as defined below) to PBA by TSP in full and complete satisfaction of TSP's obligations under the Policies within twenty (20) days of entry of a final, non-appealable order granting the Motion and approving the Settlement Agreement; (iii) that no creditor of PBA or other party served with notice of and/or with the Motion shall have any liens, encumbrances, priorities, or other claims against TSP or under the Policies or for any portion of the $82,000,000 Settlement Amount (as defined below); and (iv) no third party served with notice of and/or with the Motion shall be permitted to interfere with the transfer of the Settlement Payment to PBA or PBA's use of the Settlement Amount.

---

[2]   Unless otherwise defined herein, all capitalized terms shall have the meanings set forth in the Settlement Agreement.

**Jurisdiction and Venue**

1.     The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.     Venue is proper pursuant to PROMESA section 307(a).

3.     The statutory predicate for the relief sought herein is Bankruptcy Code section 105(a), consistent with and in furtherance of PROMESA section 305, made applicable in this Title III case by PROMESA section 301(a), PROMESA section 315(a), and Rule 9019 of the Federal Rules of Bankruptcy Procedure, made applicable in this Title III case by PROMESA section 310.

**Background**

**I.     The Policies and Damage to PBA's Properties**

4.     TSP issued commercial property insurance policies, numbers CF 85034641 ("Policy 1") and CF 850346462 ("Policy 2" and, together with Policy 1, the "Policies") to PBA, effective for the period from June 30, 2017 to June 30, 2018, and which cover certain properties owned by PBA and located in different municipalities in Puerto Rico (the "Properties").  As set forth in the Policies, TSP insured PBA against all risks of direct physical loss or damage to the Properties as described and/or defined in the Policies pursuant to all terms, conditions, deductibles, exclusions, and endorsements contained in or attached to the Policies.

5.     Due to the catastrophic damage caused by Hurricane Maria, PBA made a claim (the "Claim") under the Policies for damages to the Properties resulting from Hurricane Maria (the "Loss").

**II.     The Repairs and Payments Made to Date**

6.     After the Loss, certain contractors (the "Contractors") conducted emergency repairs (the "Emergency Repairs") to several of the Properties caused by Hurricane Maria, specifically at

the Intendente Ramirez Treasury Department Building, which Emergency Repairs were authorized

by TSP as remediation works in order to mitigate and avoid further damage to the Properties.

7.      To date, TSP has issued several payments on account of the Claim:  (1) unallocated

advance payments of $35,000,000.00 to PBA; and (2) direct payments to one of the Contractors

in the amount of $518,063.00 for some of the Emergency Repairs, for a total of $35,518,063.00

(the "Prior Payment").

8.      As sanctioned and permitted under the *Loss Payment* provisions of Policy 1, TSP

will pay directly to the Contractors any unpaid remediation expenses associated with the

Emergency Repairs.

## III.    The Settlement Agreement

9.      After having conducted inspections of losses claimed, the Parties disagree as to the

nature and extent of coverage under the Policies for certain portions of the Claim, as well as other

disagreements concerning scope and cost of repairs.  For example, TSP contended that in order for

PBA to be entitled to the insurance limit of $90,000,000, PBA had to establish that the Properties

were being repaired.  If correct, PBA would recover only actual cash value (rather than

replacement cost) of the damaged properties.  TSP asserted PBA would therefore only be entitled

to a gross payment of $56,000,000, from which the Prior Payment would have to be deducted.  The

Parties engaged in negotiations to resolve this dispute and others pertaining to the Claim.

10.     These efforts culminated in the Settlement Agreement, pursuant to which the

Parties have agreed to fully and finally resolve any and all claims under the Policies.

11.     The Settlement Agreement provides, among other things, for the payment of a gross

settlement amount (the "Settlement Amount") of $82,000,000.00, comprised of the Prior Payment

and payment of the net amount of $46,481,937.00 (the "Settlement Payment").  The Settlement

Amount and payment of the Settlement Payment shall fully satisfy any and all claims or causes of

action whether known or unknown, potential or actual, by PBA and FOMB against TSP of any nature under the Policies.

12.    The Settlement Agreement also contains certain conditions precedent to payment of the Settlement Payment, including the entry of a non-appealable order approving the Settlement Agreement and granting the relief requested herein, substantially in the form of Exhibit A, and certain confirmations by the FOMB and PBA, including that (a) PBA has not assigned, pledged, or otherwise divested or encumbered all or any part of the Settlement Amount or any rights or obligations under the Policies, (b) no other person or entity has any interest in the Loss and Claim that are the subject of the Settlement Agreement, and (c) no additional or other insured, contractor, sub-contractor, loss payee, mortgagee, or lienholder has any interest in the Settlement Amount, other than, in each case, the ones specified in the Policies.  Therefore, except as described in the foregoing sentence, no person or entity other than PBA has any right, title, or interest in any of the proceeds to be paid on account of the damage suffered by PBA, and PBA is entitled to the full Settlement Amount free and clear of any third-party claims.

13.    PBA will utilize the Settlement Amount to pay for expenditures in connection with its business operations in accordance with its budget as certified by the FOMB.

## Relief Requested

14.    By this Motion, PBA and FOMB seek entry of an order providing, among other things:  (i) approval of the Settlement Agreement; (ii) payment of the Settlement Payment of $46,481,937.00 to PBA by TSP in full and complete satisfaction of TSP's obligations under the Policies within twenty (20) days of entry of a final, non-appealable order granting the Motion and approving the Settlement Agreement; (iii) that no creditor of PBA or other party served with notice of and/or with the Motion shall have any liens, encumbrances, priorities, or other claims against TSP or under the Policies or for any portion of the $82,000,000 Settlement Amount; and (iv) no

third party served with notice of and/or with the Motion shall be permitted to interfere with the transfer of the Settlement Payment to PBA or PBA's use of the full Settlement Amount.

**IV.    Approval of the Settlement Agreement**

15.    Section 363 of the Bankruptcy Code, governing the use of property, does not apply to PBA's Title III case.  The FOMB seeks entry of the requested order pursuant to section 105(a) of the Bankruptcy Code to carry out PROMESA Section 315(a), to prosecute PBA's Title III case by settling PBA's insurance claims.  Moreover, to the extent, if any, required under PROMESA Section 305, the Oversight Board has consented to the relief requested herein.

16.    Section 105(a) of the Bankruptcy Code provides, in relevant part, that:  "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Here, section 105 carries out PROMESA Section 315(a) authorizing the Oversight Board, among other things, to prosecute and submit filings in relation to PBA's Title III case.  Under section 105(a), the Court has expansive equitable powers to fashion any order or decree that carries out PROMESA.  *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Cooper Props. Liquidating Tr., Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

17.    Courts have relied upon section 105 of the Bankruptcy Code to fashion injunctive relief where appropriate.  *See*, *e.g.*, *Texas Comptroller of Public Accounts v. Adams*, 617 B.R. 84,

90-91 (N.D. Tex. 2020); *In re Birting Fisheries, Inc.*, 300 B.R. 489, 504 (B.A.P. 9th Cir. 2003)

("A discharge or injunction is sometimes negotiated as part of a settlement in order to prevent the

bringing of actions based upon the matter which has been settled in the bankruptcy case.") (citation

omitted); *In re The Billing Resource*, No. 07-bk-52890-ASW, 2007 WL 3254835, at *27 (Bankr.

N.D. Cal., Nov. 2, 2007).  Here, the Proposed Order seeks certain limited injunctive relief as it

relates to parties provided with notice of and/or the Motion.

18.     Bankruptcy Rule 9019(a) provides a court may approve a debtor's compromise and

settlement, and the First Circuit has emphasized that "[s]tipulations of settlement are favored by

the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factor[.]"

*United States v. Sterling Consulting Corp. (In re Indian Motorcycle Co.)*, 289 B.R. 269, 282

(B.A.P. 1st Cir. 2003); *see also Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d

45, 50 n.5 (1st Cir. 1998).

19.     The standard courts apply for approval of settlements under Rule 9019 is deferential

to the debtor's judgment and merely requires the Court to ensure the settlement does not fall below

the lowest point in the range of reasonableness in terms of benefits to the Debtor.  *See City of*

*Sanitation, LLC v. Allied Waste Servs. of Mass., LLC* (*In re Am. Cartage, Inc.*) 656 F.3d 82, 91–

92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass

the issues and see whether the settlement falls below the lowest point in the range of reasonableness

. . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially

costly litigation), his judgment is entitled to some deference.") (internal citations and quotations

omitted).

20.     The approval of settlements is within the court's wide discretion.  *See Jeremiah v.*

*Richardson*, 148 F.3d 17, 22 (1st Cir. 1998).  However, while a court should apply its own

independent judgment to determine whether to approve a settlement, it should also afford

deference to the judgment of the trustee or debtor in possession, or in this case the FOMB.[3]  *See*

*In re Receivership Estate of Indian Motorcycle Mfg., Inc.*, 299 B.R. 8, 21 (D. Mass. 2003) (the

court should give "substantial deference to the business judgment of a bankruptcy trustee when

deciding whether to approve a settlement"); *Hill v. Burdick (In re Moorhead Corp.)*, 208 B.R. 87,

89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for that

of the trustee, and the trustee's judgment is to be accorded some deference."  (citation omitted));

*City Sanitation, LLC, supra v.*; *In re Healthco Int'l, Inc.*, 136 F.3d at 50 n.5. ("the bankruptcy

judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to

be accorded some deference.  Compromises are favored in bankruptcy.") (internal citations and

quotations omitted).  Moreover, "[i]n evaluating a Rule 9019 settlement, a bankruptcy court need

not 'conduct a mini- trial to determine the probable outcome of any claims waived in the

settlement.'  Rather, the bankruptcy court must 'apprise [itself] of the relevant facts and law so

that [it] can make an informed and intelligent decision.'"  *Official Comm. of Unsecured Creditors

v. Moeller (In re Age Refining, Inc.)*, 801 F. 3d 530, 541 (5th Cir. 2015) (citations omitted).

21.    In determining the reasonableness of a settlement, courts in the First Circuit

consider the following four factors:  (i) the probability of success in the litigation being

compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the

complexity of the litigation involved, and the expense, inconvenience and delay attending it; and

(iv) the paramount interest of the creditors and a proper deference to their reasonable views in the

premise. *Jeffrey v. Desmond*, 70 F.3d at 183, 185 (1st Cir. 1995); *see also In re Indian Motorcycle*

---

[3]    The term "trustee" when used in a Bankruptcy Code section incorporated under Title III of PROMESA means
the FOMB in a case under Title III. PROMESA § 301(c)(7).

*Co.*, 289 B.R. at 283; *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, No. 04-cv-10585, 2009 Bankr. LEXIS 2846, at *9 (Bankr. D.P.R. Mar. 31, 2009); *In re C.P. del Caribe, Inc.*, 140 B.R. 320, 325 (Bankr. D.P.R. 1992).

### A.   Probability of Success

22.     In examining the probability of success, courts look to the legal and evidentiary obstacles to litigating the claim.  *In re Healthco Int'l, Inc.*, 136 F.3d at 50; *In re Hansen*, No. 12-11907-JMD, 2017 Bankr. LEXIS 1120, at *12 (Bankr. D.N.H. Apr. 25, 2017).  In addition, the probability of success is measured against the "definitive, concrete and immediate benefit" that a settlement provides against the uncertainty and delay of litigation.  *See Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi)*, 411 F. App'x. 342, 346-47 (1st Cir. 2011) (citing *In re Healthco Int'l, Inc.*, 136 F.3d at 50.  And, "th[e] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Id.* at 51.  Here, the settlement will provide PBA an immediate payment of $46,481,937.00 without the delay or expense of additional litigation, resulting in a total Settlement Amount of $82,000,000.

23.     The Claims asserted under the Policies are complex and fact intensive, and the results are uncertain.  While PBA believes it maintains valid claims under the Policies, TSP is well-represented and could raise various defenses with respect to the existence of liability and the amounts owed under the Policies.

### B.   Complexity of Litigation Involved and Expense, Inconvenience and Delay Attending It

24.     As explained above, the Claims asserted under the Policies are complex and fact intensive, and the results are uncertain.  Proceeding with litigation would be expensive and would divert PBA's and FOMB's attention from other important matters.  Moreover, any litigation would

be lengthy and would involve substantial discovery, including numerous depositions.  As such, PBA's and FOMB's decision to avoid the costs, inconvenience, uncertainty, and delay should be given substantial deference.

> [C]oupled with the bankruptcy court's inquiries and findings regarding the inconvenience and expense to the estate in attending the state court action, and the fact that the compromise would provide creditors with an immediate and certain payment of a large percentage of the outstanding debt, illustrates that the bankruptcy court did not abuse its discretion in approving the compromise.

*See Jeffrey*, 70 F.3d at 187 (1st Cir. 1995); *Bos v. Jalbert (In re ServiSense.com, Inc.)*, No. 02-cv-11987-PBS, 2003 U.S. Dist. LEXIS 17057, at *16 (D. Mass. Sept. 26, 2003) ("When augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously - and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle.") (quoting *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 212 F.3d 632 (1st Cir. 2000)); *In re Hunt*, No. 2:11-bk-58222, 2016 Bankr. LEXIS 1993, at *9 (Bankr. C.D. Cal. May 12, 2016) ("The certainty that the estate will receive funds now—as opposed to the uncertainty that the estate might obtain a recovery after protracted litigation—weighs in favor of approving the Settlement Agreement.").

### C.   Interests of Creditors

25.   The Settlement Agreement eliminates the risks and uncertainty associated with litigation and results in a substantial payment to PBA without the attendant delay of litigation. *See In re Am. Cartage, Inc.*, 656 F.3d at 93 (1st Cir. 2011) ("Finally, the bankruptcy court appropriately took into account the paramount interest of the creditors.  Settling quickly for $12,000 allowed the trustee to distribute something to creditors.  In bankruptcy, as in life, half a loaf is sometimes better than none.").

## V.    Related Relief

26.    The Proposed Order seeks certain findings and limited injunctive relief.  The findings are rooted in the certificates of service filed or to be filed in connection with this Motion.

27.    The Proposed Order seeks the following injunctive relief pursuant to Bankruptcy Code section 105:

> No creditor of PBA or other party, in each case to the extent served with notice of and/or with the Motion, shall have any liens, encumbrances, priorities, or other claims against TSP or under the Policies or for any portion of the Settlement Amount.  TSP shall not be subject to claims of any parties served with notice of and/or with the Motion with respect to the Policies or payment of the Settlement Amount to PBA in accordance with this Order.

*See* Proposed Order ¶ VI.  Based on (a) the representations and warranties of PBA in the Settlement Agreement and (b) the certificates of service filed or to be filed in connection with this Motion, PBA and FOMB respectfully submit that the limited injunctive relief sought is appropriate under the circumstances as it is limited to those parties that have received actual notice of this Motion.

### Notice

28.    PBA has provided notice of this Motion to:  (i) TSP; (ii) the Office of the United States Trustee for the District of Puerto Rico; (iii) the indenture trustees and/or agents, as applicable, for PBA's bonds; (iv) all claimholders in PBA's Title III case; (v) the statutory unsecured claimholders' committee appointed in this Title III Case; (vi) the Office of the United States Attorney for the District of Puerto Rico; (vii) counsel to AAFAF; (viii) the Puerto Rico Department of Justice; and (ix) all parties who have requested service in the Title III Cases of PBA and the Commonwealth.

**WHEREFORE**, PBA and FOMB respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as is just and proper.

Dated:  March 29, 2021
San Juan, Puerto Rico

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla Garcia Benitez
USDC No. 203708
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email:  hermann.bauer@oneillborges.com
Email:  carla.garcia@oneillborges.com

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Joshua A. Esses (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
Email:  brosen@proskauer.com
Email:  jesses@proskauer.com

Marc Eric Rosenthal (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
**PROSKAUER ROSE LLP**
70 West Madison Suite 3800
Chicago, IL 60602-4342
Tel:  (312) 962-3550
Fax:  (312) 962-3551
Email:  mrosenthal@proskauer.com
Email:  ppossinger@proskauer.com

*Attorneys for the Financial Oversight and*
*Management Board as representative of the Puerto*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

--------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

           Debtors.[1]

PROMESA
Title III

Case No. 17 BK 3283-LTS

(Jointly Administered)

--------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

           Debtor.

PROMESA
Title III

Case No. 17 BK 5523-LTS

(Jointly Administered)

--------------------------------------------------------------------x

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**ORDER GRANTING MOTION OF PUBLIC BUILDINGS AUTHORITY PURSUANT
TO BANKRUPTCY CODE SECTION 105, PROMESA SECTION 315(a),
AND BANKRUPTCY RULE 9019 FOR ORDER APPROVING
SETTLEMENT AGREEMENT WITH TRIPLE-S PROPIEDAD,
INC. AND GRANTING RELATED RELIEF**

Upon consideration of: (i) the motion [ECF No. ___] (the "Motion"),[2] filed by the Financial

Oversight and Management Board for Puerto Rico (the "FOMB"), as sole Title III representative

of the Puerto Rico Public Buildings Authority ("PBA") in this Title III case pursuant to section

315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),

48 U.S.C. §§ 2101–2241; (ii) the objections to the Motion, if any; and (iii) the arguments of

counsel made, and the evidence proffered or adduced, at the hearing on the Motion or submitted

in advance of the hearing on the Motion, if any; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it hereby is:

**FOUND AND DETERMINED THAT**:[3]

1.      This Court has subject matter jurisdiction over this matter pursuant to section

306(a) of PROMESA.

2.      Venue in this district is proper pursuant to section 307(a) of PROMESA.

3.      The relief requested in the Motion, the payment of an additional $46,481,937.00 to

PBA by TSP in full and complete settlement of PBA's claims relating directly or indirectly to the

claim for damage due to Hurricane Maria and to the Policies, and the other terms of the Settlement

Agreement, are in the best interests of PBA, its creditors, TSP, and any other parties in interest.

4.      Based upon the Certificates of Service filed in connection with the Motion, FOMB

and PBA provided adequate and appropriate notice of the Motion under the circumstances to:

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

(i) TSP; (ii) the Office of the United States Trustee for the District of Puerto Rico; (iii) the indenture trustees and/or agents, as applicable, for PBA's bonds; (iv) all claimholders in PBA's Title III case; (v) the statutory unsecured claimholders' committee appointed in this Title III Case; (vi) the Office of the United States Attorney for the District of Puerto Rico; (vii) counsel to AAFAF; (viii) the Puerto Rico Department of Justice; and (ix) all parties who have requested service in the Title III Cases of PBA and the Commonwealth. No other or further notice of the Settlement Agreement or Motion is required. Such parties served with notice of the Motion have been provided adequate and appropriate notice of the Settlement Agreement and Motion and afforded an opportunity to be heard with respect to the Motion, any potential claim to the Settlement Amount, and all other relief otherwise requested therein.

5.     As per the Settlement Agreement, payment of the Prior Payment of $35,518,063.00 and of the Settlement Payment of $46,481,937.00 (collectively, the "Settlement Amount") to PBA shall satisfy all of TSP's obligations under the Policies.

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:

I.     The Motion is GRANTED as set forth herein.

II.     The Settlement Agreement, in the form attached to the Motion as Exhibit B, is approved in its entirety. The failure to specifically describe or include in this Order any particular provision of the Settlement Agreement shall not diminish or impair the effectiveness of any such provision.

III.     With the consent of the FOMB, to the extent, if any, required pursuant to PROMESA section 305, PBA is authorized (i) to execute, deliver, implement and fully perform any and all obligations, instruments, documents, and papers provided for by the Settlement Agreement, and (ii) to take any and all actions reasonably necessary or appropriate to consummate, complete, execute and implement the Settlement Agreement.

IV.     This Order and the Settlement Agreement constitute and evidence the valid and binding obligations of the Parties thereto.

V.      TSP shall pay the Settlement Payment of $46,481,937.00 to PBA under the Policies within twenty (20) days of a final order granting the Motion and approving the Settlement Agreement becoming nonappealable.

VI.     No creditor of PBA or other party, in each case to the extent served with notice of and/or with the Motion, shall have any liens, encumbrances, priorities, or other claims against TSP or under the Policies or for any portion of the Settlement Amount.  TSP shall not be subject to claims of any parties served with notice of and/or with the Motion with respect to the Policies or payment of the Settlement Amount in accordance with this Order.

VII.    No party served with notice of and/or with the Motion shall interfere with the transfer of the Settlement Payment to PBA or PBA's use of the full Settlement Amount at its discretion.

VIII.   Upon entry of this Order, PBA is authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted herein.

IX.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order or the Settlement Agreement.

Dated:  _____

                                        _____
                                        HON. LAURA TAYLOR SWAIN
                                        United States District Judge

**<u>Exhibit B</u>**

**Settlement Agreement**