## SETTLEMENT AND RELEASE AGREEMENT

Settlement and Release Agreement (the "Agreement"), dated as of August __, 2020, by and between the PUERTO RICO PUBLIC BUILDING AUTHORITY ("PBA"), and Triple-S Propiedad, Inc. ("TSP"). PBA and TSP shall be referred to herein jointly as the "Parties," or separately as a "Party."

## WITNESSETH

WHEREAS, TSP issued Commercial Property policies number **CF 85034641** ("Policy 1") and **CF 85034642** ("Policy 2") (together, the "Policies") to PBA effective from June 30, 2017 to June 30, 2018;

WHEREAS, the Policies cover certain properties owned by PBA according to the schedule included as part of the Policies, located in different municipalities in Puerto Rico (the "Properties");

WHEREAS, on or about September 20, 2017, multiple insured structures of the Properties sustained damages as the result of Hurricane Maria (the "Loss");

WHEREAS, PBA made a claim under the Policies for damages to the insured structures resulting from Hurricane Maria and TSP assigned Claim No. 1351345 (the "Claim") and PBA made no claims under the business personal property nor the business interruption and extra expenses coverages;

WHEREAS, certain contractors ("the Contractors") conducted emergency repairs to several of the Properties after Hurricane María, specifically at the Intendente Ramírez Treasury Department Building (hereinafter "Emergency Repairs") and, according to the *Loss Payment* provisions of Policy 1, the Emergency Repairs were authorized by TSP as remediation works, in order to mitigate and avoid further damages to the Properties;

1

Scanned by CamScanner

**WHEREAS**, to date, TSP has issued several payments on account of PBA's Claim, that is, unallocated advance payments of $35,000,000.00 to PBA, and direct payments to one of the Contractors in the amount of $518,063.00 for some of the Emergency Repairs carried out and performed on one of the Properties, specifically the Intendente Ramírez Treasury Department Building, for a total of $35,518,063.00 (the "Prior Payment");

**WHEREAS**, PBA certified certain Emergency Repairs conducted on the Intendente Ramírez Treasury Department Building, as asserted in Attachment 1- Certification, dated August 17, 2018;

**WHEREAS**, as sanctioned and permitted under the *Loss Payment* provisions of Policy 1, TSP will pay directly to the Contractors any unpaid remediation expenses associated with the Emergency Repairs conducted at the Intendente Ramírez Treasury Department Building;

**WHEREAS**, after the parties having conducted inspections of the losses claimed, PBA and TSP disagree as to the nature and extent of coverage under the Policies for certain portions of the Claim, as well as other disagreements concerning scope and cost of repairs;

**WHEREAS**, on or about 2016, PBA was declared a covered entity under the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA");

**WHEREAS**, on September 27, 2019, the Financial Oversight and Management Board for Puerto Rico ("FOMB"), as representative of PBA, filed a voluntary petition for relief for PBA pursuant to Section 304(a) of PROMESA, commencing a case under Title III before the United States District Court for the District of Puerto Rico (the "Title III Court"), Case Number 19-bk-05523-LTS (herein "the Title III Case"); and

**WHEREAS**, PBA and TSP wish to fully and finally settle and resolve the Claim.

2

Scanned by CamScanner

**NOW, THEREFORE,** in consideration of the promises and the mutual covenants herein contained and intending to be legally bound hereby, PBA and TSP agree as follows:

1. The Claim shall be settled for the gross amount of EIGHTY-TWO MILLION DOLLARS ($82,000,000.00) (the "Settlement Amount") and, after deducting the Prior Payment, TSP shall pay, in accordance with the terms and provisions of Paragraph 3 hereof, the net amount of FORTY-SIX MILLION, FOUR HUNDRED AND EIGHTY-ONE THOUSAND, NINE HUNDRED AND THIRTY-SEVEN DOLLARS ($46,481,937.00) ("the Settlement Payment"). No part of the Settlement Amount or Prior Payment shall be subject to any reimbursement to TSP or any of its affiliates, subsidiaries or parents at any time, including, but not limited to, by way of retrospective premiums, deductibles, retentions, self-insured retentions, other insurance recoveries received by PBA or otherwise.

2. This Agreement is subject to the written confirmation from the FOMB certifying that PBA does not need further authorization from the FOMB, or need to comply with any other policies, rules, or regulations from the FOMB, in order to execute the settlement contemplated in this Agreement and/or for this Agreement to become valid and enforceable. Prior to the closing of the settlement and payments contemplated in this Agreement, and as a condition precedent to such closing, PBA, and the FOMB, as applicable, shall jointly request and obtain a final and unappealable order from the Title III Court: approving the settlement reached, and providing that (i) no liens, encumbrances, priorities, or other claims by creditors of PBA may be asserted against the insurance proceeds paid and to be paid under PBA's property insurance pursuant to this Agreement; (ii) PBA's insurer shall not be subject to claims of any parties to these proceedings ("Service Parties") with respect to the advances made and final payment to PBA on account of the property insurance.

3

Scanned by CamScanner

3. This Agreement shall become effective and enforceable once the conditions set forth in Paragraph 2 hereof are satisfied, and the Settlement Payment shall be paid within twenty (20) business days as follows:

   a. TSP shall pay the amount of FORTY-SIX MILLION, FOUR HUNDRED AND EIGHTY-ONE THOUSAND, NINE HUNDRED AND THIRTY-SEVEN DOLLARS ($46,481,937.00) jointly to PBA and to the order of the Loss Payees listed in the Policies, as their respective interests may appear; provided, however, that, to the extent applicable, should any Loss Payee execute a release in favor of TSP, and in form reasonably acceptable to TSP, waiving any and all rights to receive any payment under the Policies, any such Loss Payee shall be excluded from receiving payment for any part of the Claim.

   b. No payment shall be made by TSP until it receives (1) the written confirmation from the FOMB specified in Paragraph 2 hereof, and (2) written authorization from the Court as specified in Paragraph 2 hereof.

4. In consideration of the payment of the Settlement Amount, effective upon receipt of the Settlement Payment, each of the Parties on behalf of (a) itself; (b) its present and former affiliates of any kind; (c) all present and former agents, officers, directors, principals, and attorneys; and (d) any and all successors, assigns, executors and/or heirs of the aforementioned persons and entities (collectively, the "Releasors"), hereby irrevocably release and forever discharge, (a) each other and the FOMB; (b) each of the Parties' present and former affiliates, subsidiaries, or parents of any kind; (c) all present and former agents, officers, directors, employees, adjusters, accountants, experts, consultants, and attorneys of each of the Parties and the FOMB; and (d) any and all successors, assigns, executors and/or heirs of the aforementioned

4

Scanned by CamScanner

persons (collectively, the "Releasees") of and from all claims, demands, actions, and causes of action of every type or kind arising from, in connection with, or relating to, directly or indirectly to the Claim, the Policies, the insurance adjustment of the Claim, the performance of TSP's duties and obligations under the Policies. Each of the Parties shall also defend, indemnify and hold harmless each and every one of the Releasees against any and all liability for causes of action, claims, demands, losses, liens, liabilities, suits, damages, fines, costs or expenses of any nature whatsoever (including, without limitation, attorney's fees, others costs of legal defense, claims for personal injury and damage to property) arising from, in connection with, or relating to, directly or indirectly to the Claim and the Policies.

5. The Releasors further irrevocably release and forever discharge the Releasees of and from all claims, demands, actions, and causes of action of every type or kind, arising under, out of or in connection with the Claim, the Policies and the Loss under or in connection with the Policies- - more specifically including, but not limited to, claims for property damage, business income, extra expense, any other loss claimed or that could have been claimed under the Policies, as well as any related extra-contractual claims, bad faith claims, claims for consequential damages, statutory claims for extra-contractual damages, claims for attorneys' fees, claims for deceptive business acts, claims for unfair claim practices or acts, - - whether known or unknown at present, that the Releasors or anyone acting in their names now have or ever had, or may have in the future, including any other claim, demand, action, or cause of action that could be, or could have been, notified or asserted by the Releasors under, or in relation to, the Policies, whether or not related to the Claim. This is intended as a full settlement and compromise of each, every and all of the above-described claims, demands, actions and causes of action, of every kind and nature which any Releasor ever had, now has, or may have in the future against any Releasee, arising

5

Scanned by CamScanner

out of the Claim and the Policies, and as a full release of any and all obligations of the Releasees under the Policies, whether or not related to the Claim.

6. PBA represents and warrants that there has been no assignment, subrogation, or other transfer of (a) any interest in any of the matters released in this Agreement (the "Released Matters"), and (b) any obligations or rights under or in connection with the Policies.

7. The Parties intend that the execution and performance of this Agreement shall, as provided above, be effective as a full and final settlement of, and as a bar to, the Released Matters. The Parties hereto covenant and agree that if they hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this Agreement, it is nevertheless their intent hereby to settle and release fully and finally the matters released in the Released Matters. In furtherance of such intention, the releases set forth in this Agreement shall be and will remain in effect as releases notwithstanding the discovery of any such different or additional facts.

8. The Settlement Amount was agreed by the Parties as a compromise of a disputed claim and will be paid by TSP in order to avoid the cost and uncertainties of litigation, without any admission that the Settlement Amount or any other amounts were in fact due and payable under the terms of the Policies.

9. PBA acknowledges that the Settlement Amount constitutes a just and fair adjustment of the Claim and that it adequately satisfies any and all obligations of TSP under the Policies to compensate PBA for all loses related to the Claim, whether or not expressly included in the Claim or notified to TSP.

10. PBA represents and warrants that (a) it has not assigned, pledged, or otherwise divested or encumbered all or any part of the Settlement Amount or any rights or obligations under

6

Scanned by CamScanner

the Policies, (b) no other person or entity has any interest in the Loss and Claim that are the subject of this Agreement and (c) no additional or other insured, contractor, sub-contractor, loss payee, mortgagee, or lienholder has any interest in the Settlement Amount, other than, in each case, the ones specified in the Policies.

11. PBA and TSP acknowledge that the payment of the Settlement Amount being made in accordance with this Agreement is in compromise of disputed coverage demands and the payment is not an admission by the Parties regarding the coverage, scope, or availability of the Policies or any obligations that may exist under the Policies and/or otherwise, or as to the amount of Loss by PBA.

12. Nothing contained in this Agreement shall constitute an admission or concession by any Party or any of its respective representatives of any liability or wrongdoing, past, present, or future, nor shall any such liability or wrongdoing be implied by any payment made pursuant to this Agreement.

13. The validity, construction, interpretation, and enforceability of this Agreement shall be governed in all respects by the laws of the Commonwealth of Puerto Rico, without regard to its choice of law principles.

14. This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and cannot be altered or amended in any way except by written agreement signed by all Parties.

15. Each signatory below represents and warrants that he or she has full power and authority to sign on behalf of and legally bind to this Agreement his or her respective principal.

16. If any provision of this Agreement is held to be unenforceable, such provision shall be considered to be distinct and severable from the other provisions of this Agreement, and such

Scanned by CamScanner

unenforceability shall not affect the validity and enforceability of the remaining provisions. If any provision of this Agreement is held to be unenforceable as written, but may be made enforceable by limitation, then such provision shall be enforceable to the maximum extent permitted by applicable law.

17. This Agreement may be executed in any number of counterparts (including photocopies, faxes, electronic signatures, or .pdfs), each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument.

WITNESS WHEREOF, the legally authorized representatives for the respective Parties have executed this agreement.

PUERTO RICO PUBLIC BUILDING AUTHORITY

By _____

Dated: 11/febrero/2021

TRIPLE-S PROPIEDAD, INC.

By _____

Dated: 8/5/2020

Scanned by CamScanner