## LOAN AGREEMENT

This LOAN AGREEMENT is dated as of August 28, 2013, by and between the PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (the "Authority" or the "Borrower") and the GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO (the "Bank" or the "Lender"),

### W I T N E S S E T H

**WHEREAS**, the Authority has requested from the Bank a loan in an amount equal to Sixty One Million Eight Hundred Thirty Thousand Dollars ($61,830,000) (the "Loan") to cover operational costs incurred by the Authority;

**WHEREAS**, the Authority shall repay the Loan with the (a) revenues allocated to it by Act No. 30 and Act No. 31, both approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 ("Acts 30-2013 & 31-2013"); (b) proceeds from future bond issuances; (c) proceeds from public-private partnerships; and (d) revenues of the Authority;

**WHEREAS**, the Authority has agreed to pledge and grant a security interest in favor of the Bank over the revenues received pursuant to Acts 30-2013 & 31-2013 to secure all obligations under this Agreement;

**WHEREAS**, the Bank is willing to provide the Loan guaranteed by the aforementioned revenues subject to the terms and conditions set forth herein; and

**NOW, THEREFORE**, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### Article 1: Line of Credit

1.1 Subject to the terms and conditions contained herein, and relying on the representations, covenants, and warranties of the Borrower contained herein, the Lender hereby agrees to provide to the Borrower a non revolving line of credit in an amount not to exceed **SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000)** (the "Line of Credit"), to be used as follows:

(a) Sixty Million Dollars ($60,000,000) to cover operational costs incurred by the Authority; and

(b) One Million Eight Hundred Thirty Thousand Dollars ($1,830,000) to cover (i) the Financial Services Fee due and payable to the Bank, as defined below; and (ii) capitalized

29912 v.2

interest on the Loan due and payable on the Maturity Date, as defined below.

1.2 The Line of Credit will be evidenced by a Promissory Note in the principal amount of SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000) (the "Note"), substantially in the form attached hereto as Exhibit I, subscribed on this date by the Borrower and payable to the order of the Lender.

1.3 The Borrower will use the funds exclusively for the aforementioned purposes, as approved by Resolution No. 10132 duly adopted by the Bank's Board of Directors on August 21, 2013, and Resolution 2013-42 duly adopted by the Board of Directors of the Borrower on August 27, 2013.

1.4 The Loan shall mature and become due and payable on **February 28, 2014** (the "Maturity Date"). The President of the Bank is hereby authorized to extend the Maturity Date of the Loan for an additional one hundred twenty (120) days, if necessary. The Borrower hereby agrees to repay the outstanding aggregate principal amount of the Loan at the principal office of the Lender in San Juan, Puerto Rico, as set forth below.

1.5 The Borrower shall request drawings (each a "Drawing" and collectively, the "Drawings") from the Line of Credit by written notice to the Bank, signed by an authorized officer of the Borrower, and delivered to the Bank at least three (3) Banking Days' prior to the proposed date of such Drawing. The Borrower shall use the Notice of Drawing Form attached hereto as Exhibit II to request each Drawing. The Bank shall fund the requested Drawing on the date specified in such Notice of Drawing (which must be a Banking Day). A Notice of Drawing from the Borrower, once received by the Bank, shall be irrevocable. For the purposes of this Loan Agreement, "Banking Day" means any day on which commercial banks are open for business in San Juan, Puerto Rico. The Bank reserves the right to request from the Authority any additional information prior to disbursements from the Line of Credit, including, but not limited to, copies of invoices.

   (a) Disbursements from the Line of Credit are subject to compliance by the Authority with the Bank's Fiscal Agency Area regarding the terms and conditions of the Fiscal Oversight Agreement (FOA) in effect between the Bank and the Authority.

1.6 Each Drawing shall bear interest at a variable interest rate per annum, computed on a daily basis from the date such Drawing is funded until its repayment, equal to the Prime Rate plus one hundred and fifty (150) basis points, as determined from time to time in good faith by the Lender, or, upon written notice to the Borrower, at a variable interest rate per annum,

29912 v.2

- 2 -

which interest rate may be revised periodically, equal to the Lender's cost of funding for variable rate loan transactions or the cost of any other obligations or source of funds used to fund the Loan. For purposes of this Loan Agreement, such interest rate shall not exceed twelve (12) percent and shall not be less than six (6) percent. Interest shall be calculated on the basis of a three hundred and sixty (360) days year of twelve (12) actual day months. Interest for any period of less than one (1) calendar month shall be calculated on the basis of the actual number of days elapsed during that month. Interest shall be capitalized and payable on the Maturity Date

(a) The President of the Bank or the duly authorized Executive Vice President of the Bank may modify the interest rate at any time at their full discretion, depending on the interest rate market.

(b) If on the Maturity Date the Loan is not repaid in full, the Borrower hereby agrees to pay a default interest rate equal to two hundred (200) basis points over the otherwise applicable interest rate calculated on the outstanding principal amount (the "Default Rate").

1.7 If the Borrower does not pay the principal amount of the Loan when it becomes due and payable, or does not pay interest when due, the Lender may, at its sole option, without notice to Borrower and to the fullest extent allowed by law, set off and apply any other available moneys (including deposits of any kind) of the Borrower against any such unpaid principal amount or unpaid accrued interest.

### Article 2: Covenants

2.1 Simultaneously with the execution of this Agreement, the Borrower will execute and deliver to the Bank the (i) Promissory Note in the amount of $61,830,000; (ii) the Assignment and Security Agreement; and (ii) the UCC-1 Financing Statement (collectively, the "Loan Documents").

2.2 The principal amount of the Loan shall be payable from (a) the revenues funds assigned to the Borrower by Acts 30-2013 & 31-2013 (b) the proceeds from future bond issuances; (c) proceeds from public-private partnerships; and (d) as the future revenues of the Authority.

2.3 Prior to any Drawings, Borrower will provide the Bank a duly executed Notice of Drawing, as established in Section 4 of this Loan Agreement, substantially in the form attached as Exhibit II hereto.

2.4 The Borrower agrees to pay the Lender an amount equal to Thirty Thousand Dollars ($30,000) as financial services fee in connection with this Loan Agreement (the "Financial Services Fee").

2.5 The Authority hereby irrevocably pledges and grants a security interest in favor of the Bank over the revenues funds received pursuant to Acts 30-2013 & 31-2013 (the "Collateral") to secure the payment of all obligations due to the Bank under this Agreement. The Authority and the Bank shall enter into an Assignment and Security Agreement on the date hereof, which is a condition precedent o any Drawings under the Line of Credit. Upon full and complete payment of all amounts due hereunder, the Collateral shall be returned to the Authority free and clear of any and all claims by the Bank.

2.6 The Lender understands and agrees that the obligations of the Borrower hereunder with respect to the payment of principal and interest on the Loan from the revenues approved by Acts 30-2013 & 31-2013 is junior and subordinated in all respects to the payment of the outstanding bonds of the Borrower issued pursuant to (i) Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended, and (ii) Resolution No. 13-41, adopted by the Authority on August 28, 2013 (as modified, supplemented or amended from time to time and collectively, the "Bond Resolutions").

2.7 Notwithstanding the above, without the Bank's prior written consent, the Borrower will not incur, create, assume, permit or suffer to exist any additional lien over the funds received pursuant to Acts 30-2013 & 31-2013.

2.8 The Borrower shall from time to time, upon request by the Lender, promptly provide the Lender with such information as to its finances and operations as the Lender shall reasonably request.

2.9 As frequently as the Bank may require, the Borrower will execute or cause to be executed and delivered to the Bank such additional documents and will take such reasonable action as the Bank may request to perfect and keep in full force and effect the liens intended to be created by the Assignment and Security Agreement.

2.10 The Borrower has the power and authority to enter into and perform its obligations under this Agreement and the Loan Documents.

2.11 The execution, delivery, and performance of this Agreement and the other Loan Documents, and the performance of the transaction contemplated hereby and thereby (i) is within the authority of the Borrower; (ii) has been duly authorized; (iii) does not conflict or result in a

29912 v.2                                    - 4 -

material breach of contravention of any provision of any law, statute, rule, or regulation to which the Borrower is subject or any judgment, order, writ, injunction, license or permit applicable thereto; and (iv) does not conflict with any agreement or other instrument binding upon the Borrower.

### Article 3: Default

3.1 If the Authority fails, neglects or refuses to timely or fully satisfy its payment obligations under this Loan Agreement, the Bank may take any and all action at law or in equity necessary or desirable to collect the amounts then due and thereafter to become due hereunder or to enforce the performance and observance of any duty, covenant, obligation or agreement of the Authority hereunder available to it under applicable law, including but not limited to taking possession of the Collateral, in order to satisfy any and all payment obligations of the Authority due to the Bank pursuant to this Loan Agreement; *provided, however*, that the Bank agrees not to take possession of such Collateral unless it shall have received a favorable opinion from the bond counsel regarding the federal tax status of the Collateral.

3.2 If the Borrower defaults in making any payment when due under this Loan Agreement, the Lender may declare the Loan to be immediately due and payable, provided, however, that all repayments shall be on a basis junior, inferior and subordinate in all respects to the bonds issued under the provisions of the Bond Resolutions. In case of recourse to the courts by the Bank in order to collect the whole or any portion of the principal or interest due, the Borrower agrees to pay liquidated damages in a sum equal to ten percent (10%) of the amount of the Loan to cover expenses of such proceedings, court costs, disbursements and attorney's fees, which amount will become immediately due and payable upon the filing of such judicial proceedings.

### Section 4: Miscellaneous Provisions

4.1 The Authority may prepay the Loan at any time without premium or penalty.

4.2 Payment of principal of and interest on the Loan shall be made in any coin or currency of the United States of America, which at the time of payment shall be legal tender for the payment of public and private debts.

4.3 The Borrower waives the requirements of demand, presentment, protest, notice of dishonor, and, in general, any other legal formality

29912 v.2

- 5 -

4.4 This Agreement and the other Loan Documents to which the Borrower is a party have been duly executed and delivered by the Borrower and constitute legal, valid and binding obligations of the Borrower, enforceable in accordance with their respective terms and provisions hereof and thereof, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium, or other laws relating to or affecting generally the enforcement of creditors' rights, or by general principles of equity.

4.5 No representation or warranty made by the Borrower to the Bank in this Agreement, or any of the Loan Documents, or any other document furnished to the Bank by the Borrower or on behalf of the Borrower, in connection with the transaction contemplated herein, contains any untrue statement of material fact or omits to state a material fact necessary in order to make the statements contained therein, in light of the circumstances in which they are made, not misleading.

4.6 No amendment or waiver of any provisions of this Loan Agreement, or consent to any departure here from by the Borrower, shall be effective unless the same shall be in writing and signed by the Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

4.7 Any notices which may be given to either party hereunder shall be in writing, and if addressed to the Lender, sent to the offices of the Lender located at Roberto Sánchez Vilella Government Center, De Diego Avenue, San Juan, Puerto Rico 00940, Attn: Executive Vice President of Financing, or to such other address or person as the Lender may hereafter notify the Borrower in writing; and if addressed to the Borrower, sent to the offices of the Borrower, located at Roberto Sánchez Vilella Government Center, South Building, San Juan, Puerto Rico 00940, Attn: Executive Director, or to such other address or person as the Borrower may hereafter notify the Lender in writing. Any such notice, if delivered personally, by facsimile or electronic mail, shall be effective three Banking Days after posting.

4.8 This Loan Agreement is intended to be a declaration of official intent under U.S. Treasury Department Regulation Section 1.150-2.

4.9 This Loan Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns. The Lender may assign to any other financial institution all or any part of or any interest in the Lender's rights hereunder and in the Loan, and to the extent of such assignment such assignee shall have the same rights against the Borrower hereunder as does the Lender. The Borrower may not assign

any of its rights nor delegate any of its obligations hereunder without the Lender's prior written consent.

4.10 This Loan Agreement shall be governed by, and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the Commonwealth of Puerto Rico.

IN WITNESS WHEREOF, the Borrower and the Lender have caused this Loan Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico all as of the day and year first written above.

| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO | PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY |
|---|---|
| Jorge A. Clivillés Díaz<br>Executive Vice President<br>and Fiscal Agent | Javier E. Ramos Hernández<br>Executive Director of the Puerto Rico Highway and Transportation Authority |

Affidavit No. 868

Recognized and subscribed before me by Javier E. Ramos Hernández as Executive Director of the Puerto Rico Highway and Transportation Authority, of legal age, married, engineer and resident of Bayamón, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on August 28, 2013.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 869

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on August 28, 2013.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

# FIRST AMENDMENT TO
# ASSIGNMENT AND SECURITY AGREEMENT

This FIRST AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of March 31st, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.

## WITNESSETH

**WHEREAS**, on August 28, 2013, the Authority and the Bank executed a Loan Agreement (as amended by means of the First Amendment to Loan Agreement executed on January 31, 2014, and as it may be further modified, supplemented or amended from time to time, the "Loan Agreement") for the total principal amount of SIXTY ONE MILLION EIGHT HUNDRED THIRTY THOUSAND DOLLARS ($61,830,000) (the "Loan") to cover operational costs incurred by the Authority.

**WHEREAS**, pursuant to the Loan Agreement, the sources of payment for the principal and interest on the Loan are the revenues allocated to the Authority by Act No. 30 and Act No. 31, both approved by the Legislature of the Commonwealth of Puerto Rico on June 25, 2013 ("Acts 30-2013 & 31-2013"), as well as proceeds from future bond issuances, products of public-private partnerships and revenues of the Authority;

**WHEREAS**, as a condition for the approval of the Loan and as required under the Loan Agreement, the parties executed the Assignment and Security Agreement through which the Authority granted a security interest and assigned to the Bank the Revenues to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed to the Bank;

**WHEREAS**, the Authority requested the Bank to provide financial assistance from the Revenues in order to cover its operational costs and expenses during the upcoming months;

**WHEREAS**, in response to the Authority's request, on March 18, 2015 the Board of Directors of the Bank approved Resolution Number 10610 ("Resolution

31483 v.2

1

10610") authorizing to transfer to the Authority fifty percent (50%) of the Revenues allocated by Acts 30-2013 & 31-2013, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS,** accordingly, the Board of Directors of the Bank also approved under Resolution 10610 to amend the Assignment and Security Agreement in order to authorize the use of a portion of such Revenues to provide the financial assistance requested by the Authority, under the evaluation and authorization of the Bank's Fiscal Agency Area in compliance with the terms and conditions of the Fiscal Oversight Agreement (FOA) in effect between the Bank and the Authority;

**WHEREAS,** pursuant to Resolution Number 2015-18, adopted by the Board of Directors of the Authority on March 30th, 2015, the Authority has authorized to amend the Assignment and Security Agreement;

**NOW, THEREFORE,** in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree to execute this First Amendment to Assignment and Security Agreement (the "First Amendment") and therefore agree as follows:

1. Section 3.2 of the Assignment and Security Agreement is hereby amended to read hereinafter as follows:



"3.2    <u>Application of Revenues and Proceeds</u>.  The Revenues assigned and Proceeds acquired under the Collateral shall be applied by the Bank as follows:

(i) to the payment of the outstanding bonds of the Assignor issued pursuant to the Bond Resolutions;

(ii) any and all expenses and fees (including reasonable attorneys' fees) incurred by the Bank in obtaining the Collateral;

(iii) next, any surplus then remaining to the payment of the Obligations in the following order of priority:

(1) all interest accrued and unpaid owing on the Loan Agreement;
(2) the principal amount owing on the Loan Agreement;
(3) the fees then owing to the Bank; and
(4) all other outstanding Obligations then owing by the Assignor to the Bank;

31483 v.2

2

(a) Notwithstanding the order of priority established in Sub-Section 3.2(iii) above, as of the date of this First Amendment, the Bank shall transfer to the Assignor fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover operational costs and expenses of the Assignor for a period of up to three (3) months as of the date of the first transfer or until June 30, 2015, whichever occurs first.

The first transfer of funds to the Assignor shall be made from any available balance as of the date of the approval of Resolution 10610 existing in the Interest Bearing Account (IBA) maintained at the Bank for the deposit of the Revenues, after any corresponding deductions made for the payment of the outstanding commitments against such Revenues. Such transfer will be subject to the limits established in the previous paragraph of this Sub-Section 3.2(iii)(a).

Each month, the Bank's Fiscal Agency Area will asses and evaluate the Assignor's funding needs to cover its operations and will determine the amount to be transferred for those purposes. The Bank reserves the right to request from the Assignor any additional information prior to any transfer of funds under this Sub-Section 3.2(iii)(a) and all transfers shall be subject to compliance by the Assignor with the Bank's Fiscal Agency Area in compliance with the terms and conditions of the Fiscal Oversight Agreement (FOA) in effect between the Bank and the Authority. The Bank's management may withhold any transfer of funds to the Assignor to be made hereunder if determined necessary to preserve the financial condition and liquidity of the Bank.

(4) any surplus then remaining, if no other Obligation is outstanding, shall be paid to the Assignor, subject, however, to the rights of the holder of any then existing lien of which the Bank has actual notice (without investigation);

it being understood that the Assignor shall remain liable to the extent of any deficiency between the amount of the Proceeds and the aggregate amount of the sums referred to in clauses (i) and (ii) of this Section 3.2 with respect to the Bank."

2. This First Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents not inconsistent with this First Amendment, shall remain in full force and effect.

3

31483 v.2

3. In the event that any provision of this First Amendment is declared to be void or unenforceable, the remainder of this First Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this First Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

Carmen A. Villar Prados
Executive Director

Affidavit No. 702

Recognized and subscribed before me by Carmen A. Villar Prados as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me. In San Juan, Puerto Rico, on March 31, 2015.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Notary Public

Affidavit No. 703

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on March 31, 2015.

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Notary Public

31483 v.2

4

## SECOND AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This SECOND AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of April 21, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.

### WITNESSETH

**WHEREAS,** the Authority requested the Bank to provide financial assistance from the Revenues allocated by Acts 30-2013 & 31-2013 in order to cover its operational costs and expenses;

**WHEREAS,** on March 18, 2015, the Board of Directors of the Bank approved Resolution Number 10610 ("Resolution 10610") authorizing to transfer to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS,** pursuant to Resolution Number 2015-18 adopted by the Board of Directors of the Authority on March 30th, 2015, the Authority authorized its Executive Director to amend the Assignment and Security Agreement in order to proceed with the abovementioned transfer for a period of three (3) months and to execute all documents necessary to carry out the purposes included in Resolution 2015-18;

**WHEREAS,** in accordance with the foregoing, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement.

**WHEREAS,** on April 1, 2015, the Bank made the first transfer of funds to the Authority for the amount of $9,881,088.43. However, as it was originally represented to the management of the Bank, the Authority needed to receive the first transfer of funds to cover certain operational obligations corresponding to the month of March of 2015.

1

31545

**WHEREAS**, the Bank deemed necessary to clarify that the financial assistance approved under Resolution 10610 for a period of three (3) months will be provided for the months of March, April and May of 2015.

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 ("Resolution 10655") and amended Resolution 10610 to establish that the transfer of funds to the Authority will be provided solely for the months of March, April and May of 2015. Accordingly, Resolution 10655 authorized to further amend the Assignment and Security Agreement to include said terms.

**NOW, THEREFORE,** in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto execute this Second Amendment to Assignment and Security Agreement (the "First Amendment") and agree as follows:

1. The first paragraph of Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement is hereby amended to read hereinafter as follows:

> "(a) Notwithstanding the order of priority established in Sub-Section 3.2(iii) above, as of the date of this First Amendment, the Bank shall transfer to the Assignor fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover operational costs and expenses of the Assignor during the months of March, April and May of 2015."



2. This Second Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Second Amendment, shall remain in full force and effect.

3. In the event that any provision of this Second Amendment is declared to be void or unenforceable, the remainder of this Second Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**[SIGNATURES ON THE NEX PAGE]**

31545

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Second Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____
Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

_____
Carmen A. Villar Prados
Executive Director

Affidavit No. 1,028

Recognized and subscribed before me by Carmen A. Villar Prados as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me. In San Juan, Puerto Rico, on April 21, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 1,029

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me. In San Juan, Puerto Rico, on April 21, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

3

31545

## THIRD AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This THIRD AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of June 16, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.

### WITNESSETH

**WHEREAS**, the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS**, the Authority requested the Bank to provide financial assistance from the Revenues in order to cover its operational costs and expenses. On March 18, 2015, the Board of Directors of the Bank adopted Resolution Number 10610 authorizing to transfer to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS**, pursuant to Resolution Number 2015-18 adopted by the Board of Directors of the Authority on March 30th, 2015 ("Resolution 2015-18"), the Authority authorized its Executive Director to amend the Assignment and Security Agreement in order to proceed with the abovementioned transfer for a period of three (3) months and to execute all documents necessary to carry out the purposes of Resolution 2015-18.

**WHEREAS**, in accordance with the foregoing, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement.



1

31699

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, authorizing to amend the Assignment and Security Agreement to include said terms. Accordingly, on April 21, 2015, the Bank and the Authority executed a Second Amendment to Assignment and Security Agreement.

**WHEREAS**, the management of the Bank recommended to the Board of Directors of the Bank the engagement of FTI Capital Advisors, LLC ("FTI") to perform an assessment of the potential revenue/cost structure of the Authority if a potential concession of the PR-20, PR-52, PR-53 and PR-66 toll roads occurs (the "Services"). FTI's proposed fees and related expenses for the Services are for a total amount of Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500), with a timeline of three weeks or less to complete the Services.

**WHEREAS**, in order for the Authority to reimburse the Bank for FTI's fees and expenses, management also recommended to authorize a withholding of such amounts from the Revenues covered in the Assignment and Security Agreement.

**WHEREAS**, on May 20, 2015, the Board of Directors of the Bank adopted Resolution Number 10686 ("Resolution 10686"), authorizing to amend the existing contract between FTI and the Bank (Contract Number 2015-BGF149) with the purpose of including the Services and increasing the compensation amount by an additional Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500).

**WHEREAS**, in order for the Authority to reimburse the Bank for FTI's fees and expenses, Resolution 10686 authorized the Bank to withhold such amounts from the funds that will be disbursed to the Authority from the Revenues corresponding to the month of May 2015, and to further amend the Assignment and Security Agreement as deemed necessary to proceed with the above.

**NOW, THEREFORE,** in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority hereto execute this Third Amendment to Assignment and Security Agreement (the "Third Amendment") and agree as follows:



1. The Bank will withhold the amount of Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500) from the percentage of Revenues to be transferred to the Authority under Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement corresponding to the month of May 2015. The parties agree that the Bank will conduct such withholding of funds as reimbursement by the Authority for the payment of fees and expenses related to FTI's Services.

2

2. This Third Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Third Amendment, shall remain in full force and effect.

3. In the event that any provision of this Third Amendment is declared to be void or unenforceable, the remainder of this Third Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**[SIGNATURES ON THE NEXT PAGE]**



31699

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Third Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____
Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

_____
Carmen A. Villar Prados
Executive Director

Affidavit No. 1,033

Recognized and subscribed before me by Carmen A. Villar Prados as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, personally known to me.

In San Juan, Puerto Rico, on June 16, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

Affidavit No. 1,034

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, who is personally known to me.

In San Juan, Puerto Rico, on June 16, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

## FOURTH AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This FOURTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of July 30, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

**All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.**

### WITNESSETH

**WHEREAS,** the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS,** the Authority requested the Bank to provide financial assistance from the Revenues in order to cover its operational costs and expenses. On March 18, 2015, the Board of Directors of the Bank adopted Resolution Number 10610 authorizing to transfer to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), for a period of three (3) months as of the date of the first transfer of funds to the Authority.

**WHEREAS,** pursuant to Resolution Number 2015-18 adopted by the Board of Directors of the Authority on March 30, 2015 ("Resolution 2015-18"), the Authority authorized its Executive Director to amend the Assignment and Security Agreement in order to proceed with the abovementioned transfer for a period of three (3) months and to execute all documents necessary to carry out the purposes of Resolution 2015-18.

**WHEREAS,** in accordance with the foregoing, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement.



31795

1

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, authorizing to amend the Assignment and Security Agreement to include said terms. Accordingly, on April 21, 2015, the Bank and the Authority executed a Second Amendment to Assignment and Security Agreement.

**WHEREAS**, on May 20, 2015, the Board of Directors of the Bank adopted Resolution Number 10686 ("Resolution 10686"), authorizing to amend the contract between FTI Capital Advisors, LLC ("FTI") and the Bank (Contract Number 2015-BGF149) in order to perform an assessment of the potential revenue/cost structure of the Authority if a potential concession of the PR-20, PR-52, PR-53 and PR-66 toll roads occurs and increase the compensation amount by an additional Two Hundred Ninety One Thousand Five Hundred Dollars ($291,500).

**WHEREAS**, in addition, Resolution 10686 authorized the Bank to withhold from the transfer of funds to the Authority corresponding to the month of May 2015, the amounts necessary to reimburse the Bank for FTI's fees and expenses. Accordingly, on June 16, 2015, the Bank and the Authority executed a Third Amendment to Assignment and Security Agreement.

**WHEREAS**, the Authority has requested the Bank to continue providing such financial assistance to cover its operational costs and expenses until the totality of its outstanding Obligations are transferred to the Puerto Rico Infrastructure Financing Authority ("PRIFA") pursuant to Act 1-2015, as amended.

**WHEREAS**, the Authority currently owes the following amounts to the Bank: (i) $2,940,800 for services provided by FTI under contract number 2014-BGF104; (ii) $352,958.66 for services provided by FTI under contract number 2015-BGF149; and (iii) $3,264,807.55 for services provided by Álvarez & Marsal Business Consulting, LLC ("Álvarez & Marsal") under contracts number 2012-BGF124, 2013-BGF087, 2014-BGF044 and 2014-BGF076. The Bank's management recommended withholding the necessary amounts from the monthly transfers to the Authority in order to repay these amounts due to the Bank in a period of three (3) months.

**WHEREAS**, on June 17, 2015, the Board of Directors of the Bank adopted Resolution Number 10729 ("Resolution 10729") authorizing, among other terms and conditions, to continue transferring to the Authority fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover its operational costs and expenses until the totality of the Authority's Obligations are transferred to PRIFA pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues.



2

31795

**WHEREAS**, for the payment of services rendered by FTI and Álvarez & Marsal in benefit of the Authority, Resolution 10729 also authorized the Bank to withhold the necessary amounts from the monthly transfers to the Authority in order to repay the outstanding debt of approximately $6,558,566.21 due to the Bank in a period of three (3) months.

**WHEREAS**, by means of Resolution Number 2015-29 adopted on July 9, 2015, the Board of Directors of the Authority approved to amend the Assignment and Security Agreement in order to continue receiving the financial assistance as described above and authorized the Executive Director of the Authority to execute all documents necessary to carry out its purposes, including any amendments in accordance with any resolution duly adopted by the Board of Directors of the Bank and subject to the Bank's financial advice.

**WHEREAS**, in accordance with the foregoing, the Bank and the Authority agree to further amend the Assignment and Security Agreement to continue providing the financial assistance requested by the Authority and include the abovementioned terms and conditions regarding the authorized withholdings.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority execute this Fourth Amendment to Assignment and Security Agreement (the "Fourth Amendment") and agree as follows:

1. The Bank agrees to continue transferring to the Assignor fifty percent (50%) of the Revenues, up to a maximum monthly amount of Ten Million Dollars ($10,000,000), to cover operational costs and expenses of the Assignor. The parties agree that such transfers shall be made until all outstanding Obligations owed by the Assignor to the Bank are transferred to PRIFA pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues.

The parties specifically agree that all other terms and conditions established in Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, not inconsistent with the foregoing, shall remain unaltered and in full force and effect.

2. For the payment of the outstanding debt of approximately $6,558,566.21 owed to the Bank regarding services rendered by FTI and Álvarez & Marsal in benefit of the Assignor, the parties agree that the Bank will withhold the necessary amounts from the percentage of Revenues to be transferred to the Assignor under Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as herein amended, to repay such amounts due in a period of three (3) months.



3

31795

3. This Fourth Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Fourth Amendment, shall remain in full force and effect.

4. In the event that any provision of this Fourth Amendment is declared to be void or unenforceable, the remainder of this Fourth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Fourth Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

Jorge A. Clivillés Díaz
Executive Vice President
and Fiscal Agent

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

Carmen A. Villar Prados
Executive Director

Affidavit No. _1,038_

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Fiscal Agent of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, and Carmen A. Villar Prados, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on July _30_, 2015.

Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

31795

## FIFTH AMENDMENT TO
## ASSIGNMENT AND SECURITY AGREEMENT

This FIFTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of November 10, 2015, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

**All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.**

### WITNESSETH



**WHEREAS**, the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS**, on March 31, 2015, the Bank and the Authority executed a First Amendment to Assignment and Security Agreement (the "First Amendment") authorizing to transfer to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, for a period of 3 months as of the date of the first transfer of funds, with the purpose of providing financial assistance to the Authority to cover its operational costs and expenses. The First Amendment was executed pursuant to Resolution Number 10610 adopted on March 18, 2015 by the Board of Directors of the Bank and Resolution Number 2015-18 adopted on March 30, 2015 by the Board of Directors of the Authority.

**WHEREAS**, on April 15, 2015, the Board of Directors of the Bank approved Resolution Number 10655 to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, authorizing to amend the Assignment and Security Agreement to include said terms. Accordingly, on April 21, 2015, the Bank and the Authority executed a Second Amendment to Assignment and Security Agreement.

**WHEREAS**, on May 20, 2015, the Board of Directors of the Bank adopted Resolution Number 10686 authorizing the Bank to withhold from the transfer of funds to the Authority corresponding to the month of May 2015, the amounts necessary to

1

32075

reimburse the Bank for the payment of FTI Capital Advisors, LLC's ("FTI") fees and expenses, among other terms and conditions. Accordingly, on June 16, 2015, the Bank and the Authority executed a Third Amendment to Assignment and Security Agreement.

**WHEREAS**, on July 30, 2014, the Bank and the Authority executed a Fourth Amendment to Assignment and Security Agreement (the "Fourth Amendment") to: (i) continue transferring to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, to cover its operational costs and expenses until the totality of the Authority's Obligations are transferred to the Puerto Rico Infrastructure Financing Authority pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues; and (ii) to withhold the necessary amounts from the monthly transfers to the Authority in order to repay in a period of 3 months the outstanding debt of approximately $6,558,566.21 due to the Bank for services rendered by FTI and Álvarez & Marsal Business Consulting, LLC in benefit of the Authority.

**WHEREAS**, the Fourth Amendment was executed pursuant to Resolution Number 10729 adopted on June 17, 2015 by the Board of Directors of the Bank and Resolution Number 2015-29 adopted on July 9, 2015 by the Board of Directors of the Authority ("Resolution 2015-29").

**WHEREAS**, on September 23, 2011, the Bank and the Authority executed a Loan Agreement providing the Authority a loan in the amount of $400,000,000 (the "FRN Loan") to finance the purchase of certain of the Authority's Transportation Revenue Refunding Bonds, Series N (the "FRNs"), which were purchased by the Bank from Citibank, who negotiated the repurchase of the FRNs from holders.

**WHEREAS**, to secure repayment of the FRN Loan, the Authority delivered the FRNs to the Bank to be held as collateral for the FRN Loan and certain other loans provided by the Bank to the Authority.

**WHEREAS**, on August 29, 2013, the Authority repaid the FRN Loan with the proceeds of a bond anticipation note sold to RBC Capital Markets Inc. Notwithstanding, rather than cancelling the FRNs at the time of the issuance of said bond anticipation note, the FRNs were in turn pledged by the Authority to the Bank as collateral for the repayment of a portion of other unsecured loans of the Authority pursuant to an Amended and Restated Pledged, Custody and Security Agreement (the "Pledge Agreement") executed among the Authority, the Bank and The Bank of New York Mellon ("BNYM"), as custodian.

**WHEREAS**, MBIA Insurance Corporation and Ambac Assurance Corporation each insure a portion of the FRNs and have requested that the FRNs be cancelled in



2

accordance with the provisions of the Authority's Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "1998 Resolution"), which requires that bonds purchased by the Authority be delivered to the fiscal agent for cancellation.

**WHEREAS**, on November 9, 2015, the Bank, the Authority and BNYM executed a Termination Agreement (the "Termination Agreement"), pursuant to Resolution Number 10837 adopted on October 28, 2015 by the Bank's Board of Directors ("Resolution 10837"), and by which the Bank released its lien on the FRNs and terminated the Pledge Agreement.

**WHEREAS**, Resolution 10837 also authorized to further amend the Assignment and Security Agreement to withhold a quarterly amount of $750,000 from the up to $10,000,000 monthly transfers to the Authority from the Revenues. Each quarter, such withheld amount will be applied by the Bank for the payment of a portion of outstanding loans of the Authority in lieu of the payment that was previously received from the FRNs.

**WHEREAS**, in addition, Resolution Number 2015-29 authorized the Executive Director of the Authority to execute all documents necessary to carry out its purposes, including any amendments in accordance with any resolution duly adopted by the Board of Directors of the Bank and subject to the Bank's financial advice.

**WHEREAS**, in accordance with the foregoing, the Bank and the Authority agree to further amend the Assignment and Security Agreement to include the abovementioned terms and conditions regarding the authorized quarterly withholding in the amount of $750,000 from the funds to be transferred to the Authority, and to apply such funds for the payment of a portion of any other outstanding loans of the Authority with the Bank.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority execute this Fifth Amendment to Assignment and Security Agreement (the "Fifth Amendment") and agree as follows:

1. In lieu of the payments previously received by the Bank from the now released FRNs, the parties agree that the Bank will withhold a quarterly amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) from the percentage of Revenues to be transferred to the Assignor under Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, for the payment of a portion of any other outstanding loans of the Authority with the Bank.

3

32075

2. The parties specifically agree that all other terms and conditions established in Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, not inconsistent with the foregoing, shall remain unaltered and in full force and effect.

3. This Fifth Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Fifth Amendment, shall remain in full force and effect.

4. In the event that any provision of this Fifth Amendment is declared to be void or unenforceable, the remainder of this Fifth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.

**IN WITNESS WHEREOF**, the Bank and the Authority have caused this Fifth Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.



**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO**

_____
Karolee García Figueroa
Executive Vice President
and Chief Operating Officer

**PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY**

_____
Carmen A. Villar Prados
Executive Director

Affidavit No. 1,051

Recognized and subscribed before me by Karolee García Figueroa, as Executive Vice President and Chief Operating Officer of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, and Carmen A. Villar Prados, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on November 10, 2015.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

# SIXTH AMENDMENT TO
# ASSIGNMENT AND SECURITY AGREEMENT

This SIXTH AMENDMENT TO ASSIGNMENT AND SECURITY AGREEMENT dated as of January 19, 2016, between the **PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY** (the "Authority" or the "Assignor") and the **GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO** (the "Bank"), both public corporations and instrumentalities of the government of the Commonwealth of Puerto Rico and parties to the Assignment and Security Agreement executed on August 28, 2013 (as modified, supplemented or amended from time to time, the "Assignment and Security Agreement").

**All terms not otherwise defined hereof shall have the meanings ascribed to them in the Assignment and Security Agreement.**

## WITNESSETH

**WHEREAS**, the parties executed the Assignment and Security Agreement granting a security interest and assigning to the Bank the Revenues allocated by Acts 30-2013 & 31-2013, to secure the repayment of the outstanding bonds of the Authority issued under the Bond Resolutions, the Loan and any other amounts owed by the Authority to the Bank.

**WHEREAS**, on March 31, 2015, the parties executed a First Amendment to Assignment and Security Agreement (the "First Amendment") authorizing to transfer to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, for a period of 3 months as of the date of the first transfer of funds, with the purpose of providing financial assistance to the Authority to cover its operational costs and expenses. The First Amendment was executed pursuant to Resolution Number 10610 adopted on March 18, 2015 by the Board of Directors of the Bank and Resolution Number 2015-18 adopted on March 30, 2015 by the Board of Directors of the Authority.

**WHEREAS**, on April 21, 2015, the parties executed a Second Amendment to Assignment and Security Agreement to establish that the transfer of funds to the Authority would be provided solely for the months of March, April and May of 2015, as authorized pursuant to Resolution Number 10655 adopted on April 15, 2015 by the Board of Directors of the Bank.

**WHEREAS**, on June 16, 2015, the parties executed a Third Amendment to Assignment and Security Agreement to withhold from the transfer of funds to the Authority corresponding to the month of May 2015, the amounts necessary to reimburse the Bank for the payment of FTI Capital Advisors, LLC's ("FTI") fees and

1

32157

expenses, among other terms and conditions established in Resolution Number 10686 adopted on May 20, 2015 by the Board of Directors of the Bank.

**WHEREAS**, pursuant to Resolution Number 10729 adopted on June 17, 2015 by the Board of Directors of the Bank and Resolution Number 2015-29 adopted on July 9, 2015 by the Board of Directors of the Authority ("Resolution 2015-29"), a Fourth Amendment to Assignment and Security Agreement was executed by the parties on July 30, 2015 to: (i) continue transferring to the Authority 50% of the Revenues, up to a maximum monthly amount of $10,000,000, to cover its operational costs and expenses until the totality of the Authority's Obligations are transferred to the Puerto Rico Infrastructure Financing Authority pursuant to Act 1-2015, as amended, and after the corresponding deductions are made for the payment of the outstanding commitments against such Revenues; and (ii) to withhold the necessary amounts from the monthly transfers to the Authority in order to repay in a period of 3 months the outstanding debt of approximately $6,558,566.21 due to the Bank for services rendered by FTI and Álvarez & Marsal Business Consulting, LLC in benefit of the Authority.

**WHEREAS**, on November 10, 2015, the parties executed a Fifth Amendment to Assignment and Security Agreement in order for the Bank to withhold a quarterly amount of $750,000 from the up to $10,000,000 monthly transfers to the Authority, to be applied for the payment of a portion of outstanding loans of the Authority in lieu of the payment that was previously received from the Authority's Transportation Revenue Refunding Bonds, Series N, among other terms established in Resolution Number 1083 adopted on October 28, 2015 by the Board of Directors of the Bank.

**WHEREAS**, in accordance to Executive Order 2015-046 approved on November 30, 2015 ("EO 2015-046"), the Secretary of Treasury was ordered to, among other dispositions, withhold funds from the revenues assigned to various public corporations for the payment of certain obligations in order to provide the necessary resources for the payment of the public debt, while continuing to provide essential services to protect the health, security, education and public welfare of the people of Puerto Rico. In addition, EO 2015-46 established that said withholding of revenues shall not affect the funds necessary for the operations of these public corporations.

**WHEREAS**, in accordance with the foregoing, the Secretary of Treasury withheld to the Authority the revenues corresponding to November 2015, which were assigned pursuant Section 3060.11 of Act 1-2001, as amended, and Section 2301 of Act 22-2000, as amended, and will continue with such withholdings while EO 2015-046 remains in effect ("Clawback").

**WHEREAS**, along with a portion of the pledged toll revenues generated and collected by the Authority, certain amounts of the monthly transfers to the Authority now retained under the Clawback disposition are, at the same time, used to contribute

2

32157

monthly to the set asides for the payment of the outstanding bonds of the Authority issued pursuant Resolution No. 68-18, adopted by the Authority on June 13, 1968, and Resolution No. 98-06, adopted by the Authority on February 26, 1998, as amended (the "Set Asides").

**WHEREAS**, as a result of the Clawback, the Authority will have to send the trustee the totality of the toll revenues since the pledged portion alone is insufficient to meet the full amount of the Set Asides. Consequently, the Authority does not have its two main revenue sources to finance its operating costs and expenses.

**WHEREAS**, the Revenues allocated by Acts 30-2013 & 31-2013 transferred by the Treasury Department to the Bank, from which the Bank transfers to the Authority 50% of the funds, up to a maximum amount of $10,000,000 per month, constitutes the Authority's third main source of income not pledged for the payment of the Bonds issued on 1968 and 1998.

**WHEREAS**, as informed by the Authority to the Board of Directors of the Bank, its operating costs and expenses to provide essential services are approximately $19,700,000 per month. In accordance with the premises established in EO 2015-046 as not to affect the provision of essential services or the funds necessary for the operations of the Authority, as well as to only withhold the resources needed for payment of the public debt, it has been identified as a possible alternative to cover the Authority's operational costs and expenses with the Revenues allocated by Acts 30-2013 & 31-2013, which are transferred by the Department of Treasury to the Bank in accordance with the Assignment and Security Agreement.

**WHEREAS**, the Authority requested the Bank to amend the Assignment and Security Agreement in order to rescind the monthly amount limit of $10,000,000 for the transfers of funds made from the Revenues.

**WHEREAS**, by means of Resolution Number 10888 adopted on December 16, 2015 ("Resolution 10888"), the Board of Directors of the Bank has authorized to continue transferring to the Authority fifty percent (50%) of the Revenues to cover the operational costs and expenses that ensure the provision of essential services as provided in EO 2015-046. Furthermore, Resolution 10888 also authorized to amend the Assignment and Security Agreement in order to rescind the maximum monthly amount cap of $10,000,000, until the Board of Directors of the Bank determines otherwise.

**WHEREAS**, in addition, Resolution Number 2015-29 authorized the Executive Director of the Authority to execute all documents necessary to carry out its purposes, including any amendments to the Assignment and Security Agreement in accordance



3

32157

with any resolution duly adopted by the Board of Directors of the Bank and subject to the Bank's financial advice.

**WHEREAS**, in accordance with the foregoing, the Bank and the Authority agree to further amend the Assignment and Security Agreement to include the abovementioned terms and conditions.

**NOW, THEREFORE**, in consideration to the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Bank and the Authority execute this Sixth Amendment to Assignment and Security Agreement (the "Sixth Amendment") and agree as follows:

1. The Bank agrees to continue transferring monthly to the Assignor fifty percent (50%) of the Revenues allocated and sent by the Department of Treasury, in order to cover the Assignor's operational costs and expenses that guarantee the provision of essential services in accordance with Executive Order 2015-046. Until the Board of Directors of the Bank determines otherwise, the parties agree that the previous monthly cap of Ten Million Dollars ($10,000,000) established pursuant the Assignment and Security Agreement, as amended, shall be rescinded. Henceforth, the management of the Bank shall evaluate monthly the funding needs of the Authority to cover its operational costs and expenses, and will determine the amount to be transferred for such purposes.

2. The parties specifically agree that all other terms and conditions established in Sub-Section 3.2(iii)(a) of the Assignment and Security Agreement, as amended, not inconsistent with the foregoing, shall remain unaltered and in full force and effect.

3. This Sixth Amendment does not constitute a novation of the obligations set forth in the Assignment and Security Agreement, the Loan Agreement and the Loan Documents, and all provisions of the Assignment and Security Agreement, as amended, the Loan Agreement and the Loan Documents, not inconsistent with this Sixth Amendment, shall remain in full force and effect.

4. In the event that any provision of this Sixth Amendment is declared to be void or unenforceable, the remainder of this Sixth Amendment shall not be affected thereby and shall remain in full force and effect to the extent feasible in the absence of the void and unenforceable declaration.




**[SIGNATURES ON THE NEXT PAGE]**

32157

**IN WITNESS WHEREOF,** the Bank and the Authority have caused this Sixth Amendment to Assignment and Security Agreement to be executed and delivered by their respective officers thereunto duly authorized, in San Juan, Puerto Rico, as of the date first written above.

**GOVERNMENT DEVELOPMENT
BANK FOR PUERTO RICO**

**PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY**

_____
Jorge A. Clivillés Díaz
Executive Vice President
and Director of Administration,
Operations and Comptrollership

_____
Carmen A. Villar Prados
Executive Director

Affidavit No. *1,058*

Recognized and subscribed before me by Jorge A. Clivillés Díaz, as Executive Vice President and Director of Administration, Operations and Comptrollership of the Government Development Bank for Puerto Rico, of legal age, married and resident of San Juan, Puerto Rico, and Carmen A. Villar Prados, as Executive Director of the Puerto Rico Highways and Transportation Authority, of legal age, married and resident of Guaynabo, Puerto Rico, both personally known to me.

In San Juan, Puerto Rico, on January 19, 2016.

_____
Notary Public

EXENTO DEL PAGO DE ARANCEL
LEY 47 DE 4 DE JUNIO DE 1982

5

32157