COMMONWEALTH OF
# PUERTO RICO
Government Development Bank
for Puerto Rico

## CERTIFICATE AS TO RESOLUTION

**I, JOSÉ R. COLEMAN TIÓ,** Secretary of the Board of Directors of the Government Development Bank for Puerto Rico, **DO HEREBY CERTIFY**, that attached hereto is a true and correct copy of **Resolution 10351** which was duly adopted by the Board of Directors of this Bank at a meeting duly called and held on May 19, 2014, at which a quorum was present and acting throughout. Said Resolution has not been repealed, revoked, rescinded or amended, and is in full force and effect.

## RESOLUTION 10351

**TO AUTHORIZE THE GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO ("GDB") TO ENTER INTO A BANK BONDS PURCHASE AND ASSIGNMENT AGREEMENT (THE "ASSIGNMENT AGREEMENT") RELATING TO THE LETTER OF CREDIT AND REIMBURSEMENT AGREEMENT BETWEEN THE PUERTO RICO HIGHWAY AND TRANSPORTATION AUTHORITY AND THE *BANK OF NOVA SCOTIA* (THE "REIMBURSEMENT AGREEMENT") AND TO AUTHORIZE GDB TO ENTER INTO AMENDMENTS TO THE REIMBURSEMENT AGREEMENT AND TO TAKE ALL OTHER ACTIONS DEEMED NECESSARY IN THE DISCRETION OF THE OFFICERS OF GDB TO FURTHER THE INTENTIONS OF THIS RESOLUTION**

**WHEREAS,** the Highways and Transportation Authority (the "Authority") and the *Bank of Nova Scotia* ("Scotiabank") entered into a Standby Bond Purchase Agreement for $200,000,000 to provide liquidity to the Series A variable rates bonds (the "Series 1998A Bonds"), issued pursuant to the Authority's Resolution No. 98-06 adopted on February 26, 1998, as amended ("Resolution 98-06");

**WHEREAS,** effective on May 1, 2008, the Standby Bond Purchase Agreement was replaced by a direct pay letter of credit (the "Letter of Credit") and the Authority and the *Scotiabank* entered into a Reimbursement Agreement (as amended, the "Reimbursement Agreement") to secure the Authority's obligations with respect to the Letter of Credit;

**WHEREAS,** the Letter of Credit expires on May 27, 2014 and, in accordance with the provisions of the Reimbursement Agreement, the Series 1998A Bonds are subject to mandatory tender from a draw under the Letter of Credit on May 19, 2014;

PO Box 42001
San Juan, PR 00940-2001
Telephone (787) 722-2525



GDB's Board of Directors
Certificate as to Resolution 10351
Page 2 of 3
Approved on May 19, 2014

**WHEREAS,** upon such mandatory tender, the Series 1998A Bonds will become Bank Bonds (as such term is defined in the Reimbursement Agreement) and the principal and interest thereon will become due and payable in accordance with the terms of the Reimbursement Agreement (the "Reimbursement Obligation");

**WHEREAS,** the Authority's precarious financial situation will not allow it to pay the Reimbursement Obligation when due, which failure would result in an event of default under the Reimbursement Agreement;

**WHEREAS,** Act 164-2001, as amended ("Act 164-2001"), provides that Government Development for Puerto Rico ("GDB") can grant loans to any governmental entity that is not in a position to honor the payment of principal or interest on its obligations to bondholders and financial institutions;

**WHEREAS,** GDB has evaluated the provisions of Act 164-2001 and determined that the Authority's reimbursement obligation with respect to the terms on the Letter of Credit would qualify under relevant exceptions of Act 164-2001 related to the payment of principal and interest on a public corporation's financial obligations;

**WHEREAS,** the Board of Directors of GDB understands the Authority's critical need and is willing to purchase the Reimbursement Obligation from *Scotiabank* and to enter into an amendment of the Reimbursement Agreement to provide new repayment provisions for the Reimbursement Obligation;

**WHEREAS,** the Authority and GDB may to refinance the Reimbursement Obligation either under the Resolution 98-06, as amended, adopted by the Authority on July 23, 1998, or utilizing taxes granted to the Authority by revenues derived from Act 30 and Act 31 of 2013, including through the issuance of bonds by the Puerto Rico Infrastructure Financing Authority;

**WHEREAS,** GDB is relying on the Authority's express representation that it will allow the refinancing of the Reimbursement Obligation under Resolution 98-06 or pursuant to a structure payable from revenues derived from Act 30 and Act 31 of 2013;

**WHEREAS,** GDB is willing to grant this emergency financing in the context of an overall plan to make the Authority self-sufficient.  The financing proposed herein is necessary to provide a "bridge" toward the successful implementation of such plan; and

**NOW, THEREFORE, BE IT RESOLVED** by the Board of Directors of the Government Development Bank for Puerto Rico to authorize the purchase of the Reimbursement Obligation from the *Bank of Nova Scotia* ("*Scotiabank*") for a purchase price of $200,000,000, plus accrued interest to May 19, 2014:

38861

GDB's Board of Directors
Certificate as to Resolution 10351
Page 3 of 3
Approved on May 19, 2014

**SECTION 1.    DEFINITIONS.**  Capitalized terms used in this Resolution and not otherwise defined shall have the meaning set forth in the Reimbursement Agreement.

**SECTION 2.  CONSENT TO ASSIGNMENT AGREEMENT.**  The officers of GDB are hereby authorized to execute the Assignment Agreement relating to the Reimbursement Agreement by *Scotiabank* to GDB of any and all rights and obligations of *Scotiabank* thereunder.

**SECTION 3.  AMENDMENTS TO THE REIMBURSEMENT AGREEMENT.**  The officers of GDB are hereby authorized to execute such amendments to the Reimbursement Agreement as they deem to be in the best interests of GDB, including granting GDB, as holder of the Bank Bonds, a pledge of the revenues derived from Act 30 and 31 of 2013.

**SECTION 4.**  The officers of GDB are hereby authorized and directed to do all acts and things required of them by the Reimbursement Agreement and any agreements executed in accordance with this Resolution for the full, punctual and complete performance of all the terms, covenants, provisions and agreements of the Reimbursement Agreement and any agreements executed in accordance with this Resolution, and also to do all acts and things required of them by the provisions of this Resolution.

The provisions of this Resolution shall become effective immediately upon its approval.

**IN WITNESS WHEREOF I SET** my hand and the corporate seal of the Government Development Bank for Puerto Rico, this 19th day of May, 2014.

**JOSÉ R. COLEMAN-TIÓ**
**SECRETARY**

**(SEAL)**

38861

EXECUTION COPY

## BANK BOND PURCHASE AND ASSIGNMENT AGREEMENT

THIS BANK BOND PURCHASE AND ASSIGNMENT AGREEMENT (this *"Purchase & Assignment Agreement"*) is entered on May 19, 2014 (the *"Bond Purchase Date"*) among THE BANK OF NOVA SCOTIA, acting through its Hato Rey Branch (the *"Bank"*), the Government Development Bank for Puerto Rico, as purchaser and as assignee of certain of the rights under the hereinafter defined Reimbursement Agreement (the *"Purchaser"*) and the PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (the *"Authority"*).

### WITNESSETH:

WHEREAS, pursuant to Resolution No. 98-06, duly adopted on February 26, 1998, as amended by Resolution No. 98-07, adopted on February 26, 1998 and as further amended by that certain Resolution, adopted on May 23, 2008 (collectively, the *"Resolution"*), the Authority has previously issued its Transportation Revenue Bonds (Series A) (the *"Bonds"*);



WHEREAS, the Authority, the Bank and The Bank of Nova Scotia, acting through its New York Agency, as arranger, have previously entered into the Reimbursement Agreement, dated as of May 1, 2008 (the *"Original Agreement"*), as amended by the First Amendment to Reimbursement Agreement dated April 18, 2011 (the *"First Amendment"*), and as further amended by the Second Amendment to Reimbursement Agreement dated May 22, 2013 (the *"Second Amendment,"* the Original Agreement as amended by the First Amendment and the Second Amendment referred to herein as the *"Reimbursement Agreement"*), each between the Authority, the Bank, and The Bank of Nova Scotia, acting through its New York Agency, as arranger, pursuant to which the Bank issued its Irrevocable Transferable Letter of Credit No. 13185/S0015 dated May 27, 2008 (the *"Letter of Credit"*) in order to support the payment when and as due, of the principal and purchase price of and interest on the Bonds;

WHEREAS, as a result of the expiry of the Letter of Credit on May 27, 2014, all of the Bonds are subject to mandatory tender on the Bond Purchase Date;

WHEREAS, on or prior to the Bond Purchase Date, the Fiscal Agent submitted a liquidity drawing certificate to the Bank in an amount equal to $200,061,150.68 (which is equal to the principal of and accrued interest on all outstanding Bonds) and on the Bond Purchase Date the Bank purchased the Bonds with the proceeds of a Liquidity Drawing under the Letter of Credit and pursuant to the terms of the Reimbursement Agreement, such Bonds constitute Bank Bonds (as defined in the Reimbursement Agreement) thereunder and under the Resolution;

WHEREAS, on the Bond Purchase Date as a result of honoring the Liquidity Drawing under the Letter of Credit, the Bank owns Bank Bonds pursuant to the terms of the Reimbursement Agreement in a principal amount equal to $200,000,000 (the *"Principal Portion"*), and interest accrued thereon to the Bond Purchase Date in an amount equal to $61,150.68 (the *"Accrued Interest"* and together with the Principal Portion, referred to collectively herein as the *"Purchase Price"*);

WHEREAS, the Bank desires to sell and the Purchaser desires to purchase, on the terms and conditions hereinafter set forth, the Bank's entire interest in and to all Bank Bonds held by the Bank (or by the Fiscal Agent for the benefit of the Bank) under the Reimbursement Agreement and under the Resolution, all Liquidity Advances and all unreimbursed Liquidity Drawings, including, without limitation, the Authority's obligations to pay the Bank the principal of and interest on the Bank Bonds (including, without limitation, the Accrued Interest), all Liquidity Advances and all unreimbursed Liquidity Drawings (and the security therefor as provided in the Reimbursement Agreement and the Resolution) (collectively, the *"Bank Bond Obligations"*), and the Bank shall do all things necessary to ensure all such Bank Bonds are credited to or for the account of the Purchaser;

WHEREAS, the Purchaser desires to purchase and assume and the Bank desires to sell and assign, on the terms and conditions hereinafter set forth, the Bank's entire interest in and to its rights, obligations and liabilities under the Reimbursement Agreement (the *"Assigned Interest"*), *provided,* however, that notwithstanding the assignment of the Assigned Interest or the terms of this Purchase & Assignment Agreement, the Bank shall be deemed to be and shall remain a party to the Reimbursement Agreement to the extent, and shall be entitled to the benefit, of Sections 2.16, 7.7 and 7.8 of the Reimbursement Agreement which are referred to as the *"Bank's Reserved Rights"* until payment in full of all amounts due to the Bank that have arisen or may hereafter arise in connection with any such Bank's Reserved Rights;

WHEREAS, all capitalized words used herein and not otherwise defined shall have the meanings ascribed in the Reimbursement Agreement.

NOW, THEREFORE, in consideration of these premises and covenants, the parties hereto agree as follows:

Section 1.    *Purchase and Assignment.*    (a) The Bank hereby sells, without recourse (except as expressly set forth herein), and the Purchaser hereby purchases at the Purchase Price, all of the right, title and interest of the Bank in and to all, but not less than all, of the Bank Bond Obligations held by Bank on the Bond Purchase Date. This Agreement is intended by the parties hereto to effect an immediate purchase by the Purchaser and sale by the Bank of all its interests in all of the Bank Bond Obligations held by the Bank on the Bond Purchase Date and the Bank's interest in all of the security therefor, and it is not to be construed as a loan or a commitment to make a loan by the Purchaser to the Bank nor to create any type of partnership or joint venture between the Bank and the Purchaser. In the event that for any reason it is determined that the Reimbursement Agreement has not terminated, the Purchaser and the Authority acknowledges and agrees that the Bank has no further obligations or liabilities under the Letter of Credit or the Reimbursement Agreement. The Bank further agrees to perform all actions necessary to register the Bank Bonds in the name, or for the account, of the Purchaser (including, without limitation, causing the Fiscal Agent to make a direct registration electronic book-entry (A) crediting the DTC account designated by the Purchaser as its account in which to hold Bank Bonds purchased by the Purchaser pursuant to this Purchase & Assignment Agreement by the principal amount of the Bonds purchased hereunder by the Purchaser using the Bank Bond CUSIP number for such Bank Bonds; and (B) debiting the book-entry account of DTC for the Bonds by the principal

amount of the Bank Bonds purchased hereunder from the Bank by the Purchaser (referred to herein as the "*DTC Bank Bond Transfer*").

(b)     The Bank hereby sells and assigns, without recourse (except as expressly set forth herein), and the Purchaser hereby purchases and assumes, all of the right, title and interest of the Bank in and to the Assigned Interest.  This assignment shall become effective on the Bond Purchase Date.  This Purchase & Assignment Agreement is intended by the parties hereto to effect an immediate purchase and assumption by the Purchaser and sale and assignment by the Bank of all its interests in the Assigned Interest, and it is not to be construed as a loan or a commitment to make a loan by the Purchaser to the Bank nor to create any type of partnership or joint venture between the Bank and the Purchaser.

Section 2.     *Notices by the Bank.*  The Bank hereby notifies the Purchaser that:

(a)     The Bank shall have no obligation to repurchase the Bank Bond Obligations or the Assigned Interest from the Purchaser;

(b)     There will not be a short-term investment rating assigned to any Bank Bonds so long as it remains a Bank Bond pursuant to the terms of the Reimbursement Agreement and the Resolution; and



(c)     The Bank Bonds are subject to sale, and may cease to be Bank Bonds, as provided in the Reimbursement Agreement and the Resolution, if remarketed by the Remarketing Agent in accordance with the Remarketing Agreement and the Resolution.

Section 3.     *Agreements of the Purchaser.*  The Purchaser hereby agrees that:

(a)     The terms of the Reimbursement Agreement and the Resolution shall govern the terms and provisions of the Bank Bonds;

(b)     The Purchaser, as the holder of the Bank Bonds, has no right to tender any such Bank Bond to the Bank; and

(c)     Upon payment to the Bank of all amounts due and owing to the Bank with respect to the Bank Bond Obligations and the Assigned Interest, the Bank shall cease to be a party to the Reimbursement Agreement or have any further rights, obligations or liabilities thereunder, but the Bank shall continue to be entitled to the benefits of the Bank's Reserved Rights.

Section 4.     *Conditions to Purchase Date; Conditions Subsequent to Purchase Date.*  (a) This Agreement shall become effective on the Bond Purchase Date, subject to the satisfaction of the following conditions precedent:

(i)     Delivery by Bank, the Purchaser and the Authority of an executed counterpart to this Purchase & Assignment Agreement.

(ii)   Evidence satisfactory to the Purchaser that the DTC Bank Bond Transfer has occurred.

(iii)   Delivery of an executed copy of this Purchase & Assignment Agreement and notice of the purchase effected hereunder from the Bank to the Authority, the Fiscal Agent and the Remarketing Agent in the form attached hereto as Exhibit A.

(iv)   Payment by the Purchaser or the Authority, as applicable, and receipt by the Bank of the Purchase Price in immediately available funds in consideration for the purchase of the Bank Bond Obligations and the DTC Bank Bond Transfer.

(b)   *Condition Subsequent to Bond Purchase Date.*   Within five (5) Business Days after the Bond Purchase Date, the Authority shall pay to the Bank all other amounts and obligations payable to the Bank under the Reimbursement Agreement and the other Related Documents (including, without limitation, Letter of Credit Fees in an amount owing to the Bank as of the Bond Purchase Date equal to $1,083,589.70) and, to counsel to the Bank, the reasonable fees and expenses of counsel to the Bank thereunder.

*Section 5.*   *Effect of Purchase and Assignment.*   Subject to the satisfaction of the conditions precedent set forth in Section 4 hereof, from and after the Bond Purchase Date, and with respect to the Bank Bond Obligations purchased by the Purchaser hereunder, the Bank hereby releases its right to receive payments on the Bank Bond Obligations under the Reimbursement Agreement. The Purchaser shall enjoy all of the rights, security and privileges of the Bank under the Reimbursement Agreement as the terms thereof relate to the Bank Bond Obligations. From and after the Bond Purchase Date, and with respect to the Assigned Interest purchased by the Purchaser hereunder, the Bank hereby releases its rights with respect to the Assigned Interest under the Reimbursement Agreement but the Purchaser, the Authority and the Bank acknowledge and agree that the Bank shall maintain and be entitled to its Reserved Rights. The Purchaser shall enjoy all of the rights, security and privileges of the Bank under the Reimbursement Agreement as the terms thereof relate to the Assigned Interest.

*Section 6.*   *Representations and Warranties of Bank; Representations and Warranties of the Purchaser.*

(a)   *Representations and Warranties of Bank.*   The Bank represents and warrants to the Purchaser as follows:

(i)   The Bank has by valid corporate action duly authorized the execution and delivery of this Purchase & Assignment Agreement and the officers executing and delivering this Purchase & Assignment Agreement on behalf of the Bank have the full authority and power to do so;

(ii)   This Purchase & Assignment Agreement is a valid and binding obligation of the Bank, enforceable against the Bank in accordance with its terms, subject to any applicable bankruptcy, insolvency, debt adjustment, moratorium,

reorganization or other similar laws, judicial discretion and principles of equity relating to or affecting creditors' rights or contractual obligations generally.

(iii)    There has occurred an Event of Default under Section 6.1(i) of the Reimbursement Agreement which is continuing on the Bond Purchase Date and the Bank Bonds are currently accruing interest at the Default Rate (i.e., equal to the Alternative Base Rate from time to time in effect plus 4.0% per annum);

(v)    That as of the date hereof (A) Termination Date has occurred, (B) the aggregate outstanding principal amount of Bank Bonds purchased by the Bank under the Reimbursement Agreement that has not been repaid is $200,000,000 and (C) the accrued interest from and including May 1, 2014, to and including May 19, 2014 is equal to $61,150.68;

(vi)    That the Bank is the legal and beneficial owner of the Bank Bonds being sold by it hereunder and that such interest is free and clear of any adverse claim, lien, or encumbrance of any kind; and

(vii)    The transactions among the Bank, the Authority and the Purchaser are arm's length, commercial transactions in which the Bank is acting and has acted solely as a principal and for its own interest and the Bank has not made recommendations to the Authority or the Purchaser with respect to the transactions relating to the Bank Bond Obligations and the Assigned Interest. The Bank is not acting as a fiduciary for the Authority or the Purchaser or in the capacity of broker, dealer, placement agent, municipal securities underwriter, municipal advisor or fiduciary and has no fiduciary duty pursuant to Section 15B of the Securities Exchange Act of 1934 to the Authority or the Purchaser with respect to the transactions relating to the structuring, purchase, assignment or delivery of the Bank Bond Obligations or the Assigned Interest and the discussions, undertakings and procedures leading thereto.

(b)    *Representations and Warranties of Purchaser.*  The Purchaser represents and warrants to the Bank as follows:

(i)    That it is a sophisticated financial entity with experience purchasing governmental obligations such as the Bank Bond Obligations and the Assigned Interest and has knowledge and experience in financial and business matters that make it capable of evaluating the Authority and the risks associated with the purchase of the Bank Bond Obligations and the Assigned Interest;

(ii)    That it has conducted its own investigation of the financial condition of the Borrower, the security for the payment of the Bank Bond Obligations and the Assigned Interest, and is familiar with the Authority and its operations, financial condition and financial prospects and has received such information as it deems necessary to make an informed investment decision with respect to the purchase of the Bank Bond Obligations and the Assigned Interest;

(iii)     The Purchaser has by valid corporate action duly authorized the execution and delivery of this Purchase & Assignment Agreement and the officers executing and delivering this Purchase & Assignment Agreement on behalf of this Purchaser have the full authority and power to do so; and

(iv)     That this Purchase & Assignment Agreement is a valid and binding obligation of the Purchaser, enforceable against the Purchaser in accordance with its terms, subject to any applicable bankruptcy, insolvency, debt adjustment, moratorium, reorganization or other similar laws, judicial discretion and principles of equity relating to or affecting creditors' rights or contractual obligations generally.

*Section 7.     Payments to Purchaser; Payments to the Bank; Notice to Authority and Fiscal Agent.*  On the Bond Purchase Date, the Bank shall notify the Authority, the Fiscal Agent and the Remarketing Agent that, from and after the Bond Purchase Date, all payments on their respective parts required to be made under the Reimbursement Agreement with respect to the Bank Bond Obligations purchased hereunder shall be made to the Purchaser in immediately available funds to the account designated by the Purchaser in writing to the Fiscal Agent.

*Section 8.     Consent, Waiver and Agreement of Authority to the Terms of This Agreement.*  Notwithstanding anything set forth in the Reimbursement Agreement to the contrary, the Authority hereby agrees and consents to the terms of this Purchase & Assignment Agreement and waives any and all rights to consent to the Bank's ability to assign its rights or obligations under the Reimbursement Agreement and, for the avoidance of doubt, the Authority hereby approves the Purchaser as an assignee under the Reimbursement Agreement.

*Section 9.     Illegality.*  The illegality or unenforceability of any provision of this Purchase & Assignment Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Purchase & Assignment Agreement; *provided*, that this Purchase & Assignment Agreement continues to express, without material change, the original intention of the Bank and the Purchaser.

*Section 10.     Governing Law; Waiver of Trial by Jury.*  (a) GOVERNING LAW.  This Purchase & Assignment Agreement shall be construed in accordance with and governed by the laws of the Commonwealth of Puerto Rico.

(b) WAIVER OF JURY TRIAL.  THE PARTIES HERETO WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN ANY PARTIES ARISING OUT OF, CONNECTED WITH, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS PURCHASE & ASSIGNMENT AGREEMENT OR ANY OF THE OTHER RELATED DOCUMENTS OR THE TRANSACTIONS RELATED HERETO OR THERETO.  The scope of this waiver is intended to be all encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation, contract claims, tort claims, breach of duty claims, and all other common law and statutory claims. The Bank, the Purchaser and the Authority each acknowledge that this waiver is a material inducement to enter into a

business relationship, that each has already relied on the waiver in entering into this Purchase & Assignment Agreement and the other Related Documents, and that each will continue to rely on the waiver in their related future dealings. The Bank, the Purchaser and the Authority further warrant and represent that each has reviewed this waiver with its legal counsel, and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS PURCHASE & ASSIGNMENT AGREEMENT OR TO ANY OTHER RELATED DOCUMENT. In the event of litigation, this Purchase & Assignment Agreement may be filed as a written consent to a trial by the court.

(c) JURISDICTION; VENUE. The Authority, the Purchaser and the Bank hereby consent to the nonexclusive jurisdiction and venue of the state and federal courts located in the Borough of Manhattan in the County of New York for purposes of actions brought in contract arising out of, under and/or pertaining to this Purchase & Assignment Agreement, the Reimbursement Agreement or any document related hereto that are properly filed and served on the Authority, the Purchaser and/or the Bank, as the case may be, pursuant to the terms of this Purchase & Assignment Agreement or the Reimbursement Agreement. To the extent permitted by law, the parties hereto hereby irrevocably waive any objection, including, without limitation, any objection to the laying of venue or based on the grounds of *forum non conveniens*, which they may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions.



Section 11.    *Counterparts.*  This Purchase & Assignment Agreement may be executed in counterparts, each of which shall be effective as to the parties thereto and each of which shall be an original and all of which shall constitute one and the same instruments. This Purchase & Assignment Agreement may be delivered by the exchange of signed signature pages by facsimile transmission or by email with a pdf copy or other replicating image attached, and any printed or copied version of any signature page so delivered will have the same force and effect as an originally signed version of such signature page.

Section 12.    *Interpretation.*  Unless otherwise provided herein, all references herein to any Section shall constitute a reference to the corresponding Section of this Purchase & Assignment Agreement. All words used herein shall be construed to be of such gender or number as the circumstances require. All capitalized terms not defined herein shall have the meaning ascribed to such terms in the Reimbursement Agreement. Each of the parties hereto represents that it has reviewed this Purchase & Assignment Agreement and has had an opportunity to negotiate to amend or modify its terms, and accordingly, the rule of construction that any ambiguities are to be resolved against the drafting party or parties shall not be employed in the interpretation of this Purchase & Assignment Agreement.

[Remainder of page intentionally left blank]

-7-

[Signature page to Purchase & Assignment Agreement]

IN WITNESS WHEREOF, the parties set forth below have caused this Purchase & Assignment Agreement to be duly executed and delivered as of the 19th day of May, 2014.

Notice Address for Bank:

The Bank of Nova Scotia, Hato Rey Branch
273 Ponce de Leon Avenida, 2nd Floor
Hato Rey, Puerto Rico 00917
Attention: Dionor Ramirez or José A. Maldonado
Telephone: (787) 758-8989 ext. 7897 or 7820
Facsimile: (787) 766-7829
Reference: Puerto Rico Highways and
Transportation Authority (Series A)

THE BANK OF NOVA SCOTIA, acting through its Hato Rey Branch

By _____
Name: _____
Title: _____

By _____
Name: _____
Title: _____

Notice Address for Purchaser:

Government Development Bank for
  Puerto Rico
Roberto Sanchez Vilella Government Center
Avenida De Diego, Parada 22
San Juan, Puerto Rico 00940
Tax Identification Number: 660433808
Attention:    President
Telephone: (787) 722-2525, ext: 2001
Facsimile: (787) 721-1443

GOVERNMENT DEVELOPMENT BANK FOR
  PUERTO RICO

By _____
Name: _José V. Pagán_____
Title: _Interim President_____

Notice Address for Authority:

Puerto Rico Highways and Transportation
Authority
c/o Government Development Bank for
  Puerto Rico
Roberto Sanchez Vilella Government Center
Avenida De Diego, Parada 22
San Juan, Puerto Rico 00940
Tax Identification Number: 660433808
Attention:    President
Telephone:    (787) 722-2525, ext: 2001
Facsimile:    (787) 721-1443

Acknowledged and Agreed to the terms of this Purchase & Assignment Agreement:

PUERTO RICO HIGHWAYS AND TRANSPORTATION
  AUTHORITY

By _____
Name: _JAVIER E. RAMOS HERNANDEZ_____
Title: _PRHTA EXECUTIVE DIRECTOR_____

S-1

EXHIBIT A

Puerto Rico Highways and Transportation Authority
Transportation Revenue Bonds (Series A) (the *"Bonds"*)

May 19, 2014

Puerto Rico Highways and Transportation
Authority
c/o Government Development Bank for
  Puerto Rico
Roberto Sanchez Vilella Government Center
Avenida De Diego, Parada 22
San Juan, Puerto Rico 00940
Tax Identification Number: 660433808
Attention:     President
Telephone:    (787) 722-2525, ext: 2001
Facsimile: (787) 721-1443

The Bank of New York
101 Barclay Street, Suite 21W
New York, New York  10286
Attention:     Corporate Trust Administration
Division
Telephone:    (212) 815-6955
Facsimile:  (212) 815-5595

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas, 30th Floor
New York, New York  10020
Attention:     Municipal Short-Term Products
Telephone:    (212) 762-8263
Facsimile: (212) 507-1937

Ladies and Gentlemen:

Reference is made to that certain Reimbursement Agreement, dated as of May 1, 2008 (the *"Reimbursement Agreement"*), as amended, supplemented and otherwise modified to date, by and between Puerto Rico Highways and Transportation Authority (the *"Authority"*) and The Bank of Nova Scotia, acting through its Hato Rey Branch (the *"Bank"*), supporting the above-referenced Bonds.

The Bank hereby notifies the above referenced parties of the Bank's sale of its entire interest in and to all Bank Bonds, all Liquidity Advances and all unreimbursed Liquidity Drawings) (as each such term is defined in the Reimbursement Agreement) held by the Bank under the Reimbursement Agreement to Government Development Bank for Puerto Rico (the *"Purchaser"*) pursuant to the terms of that certain Bank Bond Purchase & Assignment Agreement dated as of May 19, 2014, between the Bank and the Purchaser.

In connection with the foregoing, from and after May 19, 2014, all payments due and owing the Bank with respect to Bank Bonds, all Liquidity Advances and all unreimbursed

Liquidity Drawings shall be made by you or the Fiscal Agent to the Purchaser in immediately available funds to the account designated by the Purchaser in writing to the Fiscal Agent.

THE BANK OF NOVA SCOTIA, acting through its
Hato Rey Branch

By: _____
    Name: _____
    Title: _____

EXECUTION COPY

## BANK BOND PURCHASE AND ASSIGNMENT AGREEMENT

THIS BANK BOND PURCHASE AND ASSIGNMENT AGREEMENT (this *"Purchase & Assignment Agreement"*) is entered on May 19, 2014 (the *"Bond Purchase Date"*) among THE BANK OF NOVA SCOTIA, acting through its Hato Rey Branch (the *"Bank"*), the Government Development Bank for Puerto Rico, as purchaser and as assignee of certain of the rights under the hereinafter defined Reimbursement Agreement (the *"Purchaser"*) and the PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY (the "*Authority*").

### WITNESSETH:

WHEREAS, pursuant to Resolution No. 98-06, duly adopted on February 26, 1998, as amended by Resolution No. 98-07, adopted on February 26, 1998 and as further amended by that certain Resolution, adopted on May 23, 2008 (collectively, the *"Resolution"*), the Authority has previously issued its Transportation Revenue Bonds (Series A) (the *"Bonds"*);

WHEREAS, the Authority, the Bank and The Bank of Nova Scotia, acting through its New York Agency, as arranger, have previously entered into the Reimbursement Agreement, dated as of May 1, 2008 (the *"Original Agreement"*), as amended by the First Amendment to Reimbursement Agreement dated April 18, 2011 (the *"First Amendment"*), and as further amended by the Second Amendment to Reimbursement Agreement dated May 22, 2013 (the *"Second Amendment,"* the Original Agreement as amended by the First Amendment and the Second Amendment referred to herein as the *"Reimbursement Agreement"*), each between the Authority, the Bank, and The Bank of Nova Scotia, acting through its New York Agency, as arranger, pursuant to which the Bank issued its Irrevocable Transferable Letter of Credit No. 13185/S0015 dated May 27, 2008 (the *"Letter of Credit"*) in order to support the payment when and as due, of the principal and purchase price of and interest on the Bonds;

WHEREAS, as a result of the expiry of the Letter of Credit on May 27, 2014, all of the Bonds are subject to mandatory tender on the Bond Purchase Date;

WHEREAS, on or prior to the Bond Purchase Date, the Fiscal Agent submitted a liquidity drawing certificate to the Bank in an amount equal to $200,061,150.68 (which is equal to the principal of and accrued interest on all outstanding Bonds) and on the Bond Purchase Date the Bank purchased the Bonds with the proceeds of a Liquidity Drawing under the Letter of Credit and pursuant to the terms of the Reimbursement Agreement, such Bonds constitute Bank Bonds (as defined in the Reimbursement Agreement) thereunder and under the Resolution;

WHEREAS, on the Bond Purchase Date as a result of honoring the Liquidity Drawing under the Letter of Credit, the Bank owns Bank Bonds pursuant to the terms of the Reimbursement Agreement in a principal amount equal to $200,000,000 (the "*Principal Portion*"), and interest accrued thereon to the Bond Purchase Date in an amount equal to $61,150.68 (the *"Accrued Interest"* and together with the Principal Portion, referred to collectively herein as the *"Purchase Price"*);

WHEREAS, the Bank desires to sell and the Purchaser desires to purchase, on the terms and conditions hereinafter set forth, the Bank's entire interest in and to all Bank Bonds held by the Bank (or by the Fiscal Agent for the benefit of the Bank) under the Reimbursement Agreement and under the Resolution, all Liquidity Advances and all unreimbursed Liquidity Drawings, including, without limitation, the Authority's obligations to pay the Bank the principal of and interest on the Bank Bonds (including, without limitation, the Accrued Interest), all Liquidity Advances and all unreimbursed Liquidity Drawings (and the security therefor as provided in the Reimbursement Agreement and the Resolution) (collectively, the *"Bank Bond Obligations"*), and the Bank shall do all things necessary to ensure all such Bank Bonds are credited to or for the account of the Purchaser;

WHEREAS, the Purchaser desires to purchase and assume and the Bank desires to sell and assign, on the terms and conditions hereinafter set forth, the Bank's entire interest in and to its rights, obligations and liabilities under the Reimbursement Agreement (the *"Assigned Interest"*), *provided,* however, that notwithstanding the assignment of the Assigned Interest or the terms of this Purchase & Assignment Agreement, the Bank shall be deemed to be and shall remain a party to the Reimbursement Agreement to the extent, and shall be entitled to the benefit, of Sections 2.16, 7.7 and 7.8 of the Reimbursement Agreement which are referred to as the *"Bank's Reserved Rights"* until payment in full of all amounts due to the Bank that have arisen or may hereafter arise in connection with any such Bank's Reserved Rights;

WHEREAS, all capitalized words used herein and not otherwise defined shall have the meanings ascribed in the Reimbursement Agreement.

NOW, THEREFORE, in consideration of these premises and covenants, the parties hereto agree as follows:

Section 1.    *Purchase and Assignment.* (a) The Bank hereby sells, without recourse (except as expressly set forth herein), and the Purchaser hereby purchases at the Purchase Price, all of the right, title and interest of the Bank in and to all, but not less than all, of the Bank Bond Obligations held by Bank on the Bond Purchase Date. This Agreement is intended by the parties hereto to effect an immediate purchase by the Purchaser and sale by the Bank of all its interests in all of the Bank Bond Obligations held by the Bank on the Bond Purchase Date and the Bank's interest in all of the security therefor, and it is not to be construed as a loan or a commitment to make a loan by the Purchaser to the Bank nor to create any type of partnership or joint venture between the Bank and the Purchaser. In the event that for any reason it is determined that the Reimbursement Agreement has not terminated, the Purchaser and the Authority acknowledges and agrees that the Bank has no further obligations or liabilities under the Letter of Credit or the Reimbursement Agreement. The Bank further agrees to perform all actions necessary to register the Bank Bonds in the name, or for the account, of the Purchaser (including, without limitation, causing the Fiscal Agent to make a direct registration electronic book-entry (A) crediting the DTC account designated by the Purchaser as its account in which to hold Bank Bonds purchased by the Purchaser pursuant to this Purchase & Assignment Agreement by the principal amount of the Bonds purchased hereunder by the Purchaser using the Bank Bond CUSIP number for such Bank Bonds; and (B) debiting the book-entry account of DTC for the Bonds by the principal



amount of the Bank Bonds purchased hereunder from the Bank by the Purchaser (referred to herein as the "*DTC Bank Bond Transfer*").

(b)     The Bank hereby sells and assigns, without recourse (except as expressly set forth herein), and the Purchaser hereby purchases and assumes, all of the right, title and interest of the Bank in and to the Assigned Interest.  This assignment shall become effective on the Bond Purchase Date.  This Purchase & Assignment Agreement is intended by the parties hereto to effect an immediate purchase and assumption by the Purchaser and sale and assignment by the Bank of all its interests in the Assigned Interest, and it is not to be construed as a loan or a commitment to make a loan by the Purchaser to the Bank nor to create any type of partnership or joint venture between the Bank and the Purchaser.

*Section 2.     Notices by the Bank.*  The Bank hereby notifies the Purchaser that:

(a)     The Bank shall have no obligation to repurchase the Bank Bond Obligations or the Assigned Interest from the Purchaser;

(b)     There will not be a short-term investment rating assigned to any Bank Bonds so long as it remains a Bank Bond pursuant to the terms of the Reimbursement Agreement and the Resolution; and

(c)     The Bank Bonds are subject to sale, and may cease to be Bank Bonds, as provided in the Reimbursement Agreement and the Resolution, if remarketed by the Remarketing Agent in accordance with the Remarketing Agreement and the Resolution.

*Section 3.     Agreements of the Purchaser.*  The Purchaser hereby agrees that:

(a)     The terms of the Reimbursement Agreement and the Resolution shall govern the terms and provisions of the Bank Bonds;

(b)     The Purchaser, as the holder of the Bank Bonds, has no right to tender any such Bank Bond to the Bank; and

(c)     Upon payment to the Bank of all amounts due and owing to the Bank with respect to the Bank Bond Obligations and the Assigned Interest, the Bank shall cease to be a party to the Reimbursement Agreement or have any further rights, obligations or liabilities thereunder, but the Bank shall continue to be entitled to the benefits of the Bank's Reserved Rights.

*Section 4.     Conditions to Purchase Date; Conditions Subsequent to Purchase Date.*  (a) This Agreement shall become effective on the Bond Purchase Date, subject to the satisfaction of the following conditions precedent:

(i)     Delivery by Bank, the Purchaser and the Authority of an executed counterpart to this Purchase & Assignment Agreement.

(ii)     Evidence satisfactory to the Purchaser that the DTC Bank Bond Transfer has occurred.

(iii)     Delivery of an executed copy of this Purchase & Assignment Agreement and notice of the purchase effected hereunder from the Bank to the Authority, the Fiscal Agent and the Remarketing Agent in the form attached hereto as Exhibit A.

(iv)     Payment by the Purchaser  or the Authority, as applicable, and receipt by the Bank of the Purchase Price in immediately available funds in consideration for the purchase of the Bank Bond Obligations and the DTC Bank Bond Transfer.

(b)     *Condition Subsequent to Bond Purchase Date.*  Within five (5) Business Days after the Bond Purchase Date, the Authority shall pay to the Bank all other amounts and obligations payable to the Bank under the Reimbursement Agreement and the other Related Documents (including, without limitation, Letter of Credit Fees in an amount owing to the Bank as of the Bond Purchase Date equal to $1,083,589.70) and, to counsel to the Bank, the reasonable fees and expenses of counsel to the Bank thereunder.

*Section 5.     Effect of Purchase and Assignment.*   Subject to the satisfaction of the conditions precedent set forth in Section 4 hereof, from and after the Bond Purchase Date, and with respect to the Bank Bond Obligations purchased by the Purchaser hereunder, the Bank hereby releases its right to receive payments on the Bank Bond Obligations under the Reimbursement Agreement.  The Purchaser shall enjoy all of the rights, security and privileges of the Bank under the Reimbursement Agreement as the terms thereof relate to the Bank Bond Obligations.  From and after the Bond Purchase Date, and with respect to the Assigned Interest purchased by the Purchaser hereunder, the Bank hereby releases its rights with respect to the Assigned Interest under the Reimbursement Agreement but the Purchaser, the Authority and the Bank acknowledge and agree that the Bank shall maintain and be entitled to its Reserved Rights. The Purchaser shall enjoy all of the rights, security and privileges of the Bank under the Reimbursement Agreement as the terms thereof relate to the Assigned Interest.

*Section 6.     Representations and Warranties of Bank; Representations and Warranties of the Purchaser.*

(a)     *Representations and Warranties of Bank.*   The Bank represents and warrants to the Purchaser as follows:

(i)     The Bank has by valid corporate action duly authorized the execution and delivery of this Purchase & Assignment Agreement and the officers executing and delivering this Purchase & Assignment Agreement on behalf of the Bank have the full authority and power to do so;

(ii)     This Purchase & Assignment Agreement is a valid and binding obligation of the Bank, enforceable against the Bank in accordance with its terms, subject to any applicable bankruptcy, insolvency, debt adjustment, moratorium,



reorganization or other similar laws, judicial discretion and principles of equity relating to or affecting creditors' rights or contractual obligations generally.

(iii)    There has occurred an Event of Default under Section 6.1(i) of the Reimbursement Agreement which is continuing on the Bond Purchase Date and the Bank Bonds are currently accruing interest at the Default Rate (i.e., equal to the Alternative Base Rate from time to time in effect plus 4.0% per annum);

(v)    That as of the date hereof (A) Termination Date has occurred, (B) the aggregate outstanding principal amount of Bank Bonds purchased by the Bank under the Reimbursement Agreement that has not been repaid is $200,000,000 and (C) the accrued interest from and including May 1, 2014, to and including May 19, 2014 is equal to $61,150.68;

(vi)    That the Bank is the legal and beneficial owner of the Bank Bonds being sold by it hereunder and that such interest is free and clear of any adverse claim, lien, or encumbrance of any kind; and

(vii)    The transactions among the Bank, the Authority and the Purchaser are arm's length, commercial transactions in which the Bank is acting and has acted solely as a principal and for its own interest and the Bank has not made recommendations to the Authority or the Purchaser with respect to the transactions relating to the Bank Bond Obligations and the Assigned Interest. The Bank is not acting as a fiduciary for the Authority or the Purchaser or in the capacity of broker, dealer, placement agent, municipal securities underwriter, municipal advisor or fiduciary and has no fiduciary duty pursuant to Section 15B of the Securities Exchange Act of 1934 to the Authority or the Purchaser with respect to the transactions relating to the structuring, purchase, assignment or delivery of the Bank Bond Obligations or the Assigned Interest and the discussions, undertakings and procedures leading thereto.

(b)    *Representations and Warranties of Purchaser.*  The Purchaser represents and warrants to the Bank as follows:

(i)    That it is a sophisticated financial entity with experience purchasing governmental obligations such as the Bank Bond Obligations and the Assigned Interest and has knowledge and experience in financial and business matters that make it capable of evaluating the Authority and the risks associated with the purchase of the Bank Bond Obligations and the Assigned Interest;

(ii)    That it has conducted its own investigation of the financial condition of the Borrower, the security for the payment of the Bank Bond Obligations and the Assigned Interest, and is familiar with the Authority and its operations, financial condition and financial prospects and has received such information as it deems necessary to make an informed investment decision with respect to the purchase of the Bank Bond Obligations and the Assigned Interest;

(iii)    The Purchaser has by valid corporate action duly authorized the execution and delivery of this Purchase & Assignment Agreement and the officers executing and delivering this Purchase & Assignment Agreement on behalf of this Purchaser have the full authority and power to do so; and

(iv)    That this Purchase & Assignment Agreement is a valid and binding obligation of the Purchaser, enforceable against the Purchaser in accordance with its terms, subject to any applicable bankruptcy, insolvency, debt adjustment, moratorium, reorganization or other similar laws, judicial discretion and principles of equity relating to or affecting creditors' rights or contractual obligations generally.

*Section 7.    Payments to Purchaser; Payments to the Bank; Notice to Authority and Fiscal Agent* On the Bond Purchase Date, the Bank shall notify the Authority, the Fiscal Agent and the Remarketing Agent that, from and after the Bond Purchase Date, all payments on their respective parts required to be made under the Reimbursement Agreement with respect to the Bank Bond Obligations purchased hereunder shall be made to the Purchaser in immediately available funds to the account designated by the Purchaser in writing to the Fiscal Agent.

*Section 8.    Consent, Waiver and Agreement of Authority to the Terms of This Agreement*. Notwithstanding anything set forth in the Reimbursement Agreement to the contrary, the Authority hereby agrees and consents to the terms of this Purchase & Assignment Agreement and waives any and all rights to consent to the Bank's ability to assign its rights or obligations under the Reimbursement Agreement and, for the avoidance of doubt, the Authority hereby approves the Purchaser as an assignee under the Reimbursement Agreement.

*Section 9.    Illegality*.    The illegality or unenforceability of any provision of this Purchase & Assignment Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Purchase & Assignment Agreement; *provided*, that this Purchase & Assignment Agreement continues to express, without material change, the original intention of the Bank and the Purchaser.

*Section 10.    Governing Law; Waiver of Trial by Jury*.    (a) GOVERNING LAW.    This Purchase & Assignment Agreement shall be construed in accordance with and governed by the laws of the Commonwealth of Puerto Rico.

(b) WAIVER OF JURY TRIAL. THE PARTIES HERETO WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, BETWEEN ANY PARTIES ARISING OUT OF, CONNECTED WITH, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THIS PURCHASE & ASSIGNMENT AGREEMENT OR ANY OF THE OTHER RELATED DOCUMENTS OR THE TRANSACTIONS RELATED HERETO OR THERETO.   The scope of this waiver is intended to be all encompassing of any and all disputes that may be filed in any court and that relate to the subject matter of this transaction, including without limitation, contract claims, tort claims, breach of duty claims, and all other common law and statutory claims. The Bank, the Purchaser and the Authority each acknowledge that this waiver is a material inducement to enter into a



business relationship, that each has already relied on the waiver in entering into this Purchase & Assignment Agreement and the other Related Documents, and that each will continue to rely on the waiver in their related future dealings.  The Bank, the Purchaser and the Authority further warrant and represent that each has reviewed this waiver with its legal counsel, and that each knowingly and voluntarily waives its jury trial rights following consultation with legal counsel. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS PURCHASE & ASSIGNMENT AGREEMENT OR TO ANY OTHER RELATED DOCUMENT.  In the event of litigation, this Purchase & Assignment Agreement may be filed as a written consent to a trial by the court.

(c) JURISDICTION; VENUE.  The Authority, the Purchaser and the Bank hereby consent to the nonexclusive jurisdiction and venue of the state and federal courts located in the Borough of Manhattan in the County of New York for purposes of actions brought in contract arising out of, under and/or pertaining to this Purchase & Assignment Agreement, the Reimbursement Agreement or any document related hereto that are properly filed and served on the Authority, the Purchaser and/or the Bank, as the case may be, pursuant to the terms of this Purchase & Assignment Agreement or the Reimbursement Agreement.  To the extent permitted by law, the parties hereto hereby irrevocably waive any objection, including, without limitation, any objection to the laying of venue or based on the grounds of *forum non conveniens*, which they may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions.

*Section 11.    Counterparts.*  This Purchase & Assignment Agreement may be executed in counterparts, each of which shall be effective as to the parties thereto and each of which shall be an original and all of which shall constitute one and the same instruments.  This Purchase & Assignment Agreement may be delivered by the exchange of signed signature pages by facsimile transmission or by email with a pdf copy or other replicating image attached, and any printed or copied version of any signature page so delivered will have the same force and effect as an originally signed version of such signature page.

*Section 12.    Interpretation.*  Unless otherwise provided herein, all references herein to any Section shall constitute a reference to the corresponding Section of this Purchase & Assignment Agreement.  All words used herein shall be construed to be of such gender or number as the circumstances require.  All capitalized terms not defined herein shall have the meaning ascribed to such terms in the Reimbursement Agreement.  Each of the parties hereto represents that it has reviewed this Purchase & Assignment Agreement and has had an opportunity to negotiate to amend or modify its terms, and accordingly, the rule of construction that any ambiguities are to be resolved against the drafting party or parties shall not be employed in the interpretation of this Purchase & Assignment Agreement.

[Remainder of page intentionally left blank]



[Signature page to Purchase & Assignment Agreement]

IN WITNESS WHEREOF, the parties set forth below have caused this Purchase & Assignment Agreement to be duly executed and delivered as of the 19th day of May, 2014.

Notice Address for Bank:

THE BANK OF NOVA SCOTIA, acting through its Hato Rey Branch

The Bank of Nova Scotia, Hato Rey Branch
273 Ponce de Leon Avenida, 2nd Floor
Hato Rey, Puerto Rico 00917
Attention: Dionor Ramirez or José A. Maldonado
Telephone: (787) 758-8989 ext. 7897 or 7820
Facsimile: (787) 766-7829
Reference: Puerto Rico Highways and
Transportation Authority (Series A)

By _____
Name: _____
Title: _____
RICARDO FISHMAN
Authorized Officer
The Bank of Nova Scotia

Notice Address for Purchaser:

GOVERNMENT DEVELOPMENT BANK FOR
 PUERTO RICO

Government Development Bank for
 Puerto Rico
Roberto Sanchez Vilella Government Center
Avenida De Diego, Parada 22
San Juan, Puerto Rico 00940
Tax Identification Number: 660433808
Attention:     President
Telephone: (787) 722-2525, ext: 2001
Facsimile: (787) 721-1443

By _____
Name: _____
Title: _____

Notice Address for Authority:

Acknowledged and Agreed to the terms of this Purchase & Assignment Agreement:

Puerto Rico Highways and Transportation
Authority
c/o Government Development Bank for
 Puerto Rico
Roberto Sanchez Vilella Government Center
Avenida De Diego, Parada 22
San Juan, Puerto Rico 00940
Tax Identification Number: 660433808
Attention:     President
Telephone:     (787) 722-2525, ext: 2001
Facsimile:     (787) 721-1443

PUERTO RICO HIGHWAYS AND TRANSPORTATION
 AUTHORITY

By _____
Name: _____
Title: _____



S-1

## EXHIBIT A

Puerto Rico Highways and Transportation Authority
Transportation Revenue Bonds (Series A) (the *"Bonds"*)

May 19, 2014

Puerto Rico Highways and Transportation
Authority
c/o Government Development Bank for
  Puerto Rico
Roberto Sanchez Vilella Government Center
Avenida De Diego, Parada 22
San Juan, Puerto Rico 00940
Tax Identification Number: 660433808
Attention:    President
Telephone:    (787) 722-2525, ext: 2001
Facsimile: (787) 721-1443

The Bank of New York
101 Barclay Street, Suite 21W
New York, New York  10286
Attention:    Corporate Trust Administration
Division
Telephone:    (212) 815-6955
Facsimile:  (212) 815-5595

Morgan Stanley & Co. Incorporated
1221 Avenue of the Americas, 30th Floor
New York, New York  10020
Attention:    Municipal Short-Term Products
Telephone:    (212) 762-8263
Facsimile: (212) 507-1937

Ladies and Gentlemen:

Reference is made to that certain Reimbursement Agreement, dated as of May 1, 2008 (the *"Reimbursement Agreement"*), as amended, supplemented and otherwise modified to date, by and between Puerto Rico Highways and Transportation Authority (the *"Authority"*) and The Bank of Nova Scotia, acting through its Hato Rey Branch (the *"Bank"*), supporting the above-referenced Bonds.

The Bank hereby notifies the above referenced parties of the Bank's sale of its entire interest in and to all Bank Bonds, all Liquidity Advances and all unreimbursed Liquidity Drawings) (as each such term is defined in the Reimbursement Agreement) held by the Bank under the Reimbursement Agreement to Government Development Bank for Puerto Rico (the *"Purchaser"*) pursuant to the terms of that certain Bank Bond Purchase & Assignment Agreement dated as of May 19, 2014, between the Bank and the Purchaser.

In connection with the foregoing, from and after May 19, 2014, all payments due and owing the Bank with respect to Bank Bonds, all Liquidity Advances and all unreimbursed



Liquidity Drawings shall be made by you or the Fiscal Agent to the Purchaser in immediately available funds to the account designated by the Purchaser in writing to the Fiscal Agent.

THE BANK OF NOVA SCOTIA, acting through its
Hato Rey Branch

By:_____

Name: _____

Title: _____



A-2