Objection deadline: April 13, 2021 at 4:00 pm AST
Hearing date: April 28, 2021 at 9:30 am AST

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al*., <br><br> Debtors.[1] | PROMESA <br> Title III <br><br> No. 17 BK 3283-LTS <br> (Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.,* <br><br> Defendants. | Adv. Proc. No. 20-00003-LTS <br><br> PROMESA <br> Title III |

---

[1] The Debtors in these jointly-administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE COMMONWEALTH OF PUERTO RICO, by and through THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    Movant,<br>        v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., FINANCIAL GUARANTY INSURANCE COMPANY, and U.S. BANK TRUST NATIONAL ASSOCIATION, as Trustee,<br><br>    Respondents. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00004-LTS<br><br>PROMESA<br>Title III |
| THE COMMONWEALTH OF PUERTO RICO, by and through THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    Movant,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, and THE BANK OF NEW YORK MELLON, as Fiscal Agent,<br><br>    Respondents. | |

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00005-LTS<br><br>PROMESA<br>Title III |
| THE COMMONWEALTH OF PUERTO RICO, by and through THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    Movant,<br>v.<br><br>AMBAC ASSURANCE CORPORATION, ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, PEAJE INVESTMENTS LLC, and THE BANK OF NEW YORK MELLON, as Fiscal Agent,<br><br>    Respondents. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE COMMONWEALTH OF PUERTO RICO, BY AND THROUGH THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, FOR ORDER GRANTING STAY RELIEF TO PERMIT PROSECUTION OF FURTHER <u>MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1
BASIS FOR RELIEF REQUESTED.................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Federated Dep't Stores, Inc.*,
  114 B.R. 501 (Bankr. S.D. Ohio 1990) ................................................................................. 12

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  No. 17 BK 3283-LTS, 2019 WL 4735362 (D.P.R. June 28, 2019) ........................................ 12

*In re Treco*,
  240 F.3d 148 (2d Cir. 2001) .................................................................................................... 3

*In re WR Grace & Co.*,
  729 F.3d 332 (3d Cir. 2013) ................................................................................................... 12

*Louisville Joint Stock Land Bank v. Radford*,
  295 U.S. 552 (1935) ................................................................................................................ 3

**STATUTES AND OTHER AUTHORITIES**

11 U.S.C. § 105(a) ............................................................................................ 1, 7, 11, 12

11 U.S.C. § 502 ....................................................................................................... 1, 7, 11

48 U.S.C. §§ 2101–2241 ................................................................................................... 1

2 Collier on Bankruptcy ¶ 105.01 (16th ed. 2021) ........................................................ 12

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the sole representative of the Commonwealth pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this Memorandum of Law to support its motion (the "Motion"), pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code") made applicable to these cases pursuant to PROMESA section 301(a), for entry of an order modifying the March 10, 2020 *Final Case Management Order for Revenue Bonds* [Case No. 17-3283, ECF No. 12186] (the "Revenue Bonds CMO") to grant relief from the stay currently imposed on specific counts of the *Complaint Objecting to Defendants' Claims and Seeking Related Relief* [Case Nos. 20-AP-003, ECF No. 1; 20-AP-004, ECF No. 1; and 20-AP-005, ECF No. 1] (the "Revenue Bond Complaints"), filed in each of the respective adversary proceedings (the "Revenue Bond Adversary Proceedings"), and granting the Commonwealth leave to prosecute partial summary judgment motions with respect to those counts. The litigation stay imposed by the Revenue Bonds CMO otherwise would remain in effect. In support of the Motion, the Commonwealth respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Defendants in the Revenue Bond Adversary Proceedings filed Proofs of Claim in the Commonwealth Title III Case regarding certain bonds issued by each of PRIFA, CCDA and HTA, respectively.[3] The Proofs of Claim assert the Commonwealth is liable to Defendants for (i) not appropriating and transferring certain taxes and fees levied and collected by the

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101–2241.
[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

Commonwealth, which historically were appropriated and transferred to CCDA and HTA, and (ii) not appropriating and transferring certain rum taxes covered into the Commonwealth Treasury by the United States Treasury, which historically were appropriated and transferred to PRIFA (collectively, the "Relevant Revenues"). The Proofs of Claim allege various theories purporting to render Defendants' claims allowable, including alleged statutory, contractual and equitable liens, purported violations of PROMESA, alleged violations of the Contract Clause, Due Process Clause and Takings Clause of the United States and Puerto Rico Constitutions, and common law breach of contract and torts.

2. The Oversight Board subsequently filed the Revenue Bond Complaints, after the Mediation Team and this Court found good cause existed to do so. The Revenue Bond Complaints objected to the Proofs of Claim and certain priorities asserted therein, objected to the validity and priority of certain liens asserted therein regarding the Relevant Revenues retained by the Commonwealth (commonly referred to as the "clawback" revenues), and sought to disallow the claims asserted against the Commonwealth in their entirety.

3. Upon the Mediation Team's recommendation, and following a hearing thereon, the Court issued the Revenue Bonds CMO and permitted the filing of narrowly tailored summary judgment motions to adjudicate certain counts corresponding to the then pending stay litigation, and staying the balance of the Revenue Bond Complaints. The counts on which summary judgment was permitted concern whether Defendants have a security or other protected property interest in the Relevant Revenues retained by the Commonwealth,[4] and whether Defendants have

---

[4] Assuming summary judgment was granted in favor of the Commonwealth on those counts, it would also dispose of other claims asserted against the Commonwealth regarding the Relevant Revenues, including Defendant's constitutional claims under the Takings Clause and Due Process Clause. Specifically, Defendants' purported Takings Clause claims depend on their ability to demonstrate the existence of a security or other protected property interest. *See In re Treco*, 240 F.3d 148, 161 (2d Cir. 2001) (citing *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 552, 602 (1935)) ("If the claim is unsecured, it is not 'property' for purposes of the Takings Clause"). Defendants' Due

2

any claims for purported violations of the Contract Clause or PROMESA Section 407. As the Mediation Team described in its Amended Report, obtaining the Court's ruling on these threshold issues before plan confirmation would impact the uses of the Relevant Revenues under a Commonwealth plan of adjustment. The Amended Report further observed the Court's ruling on the specified gating issues would streamline the plan confirmation process by resolving critical issues and facilitating amendment to the contemplated Commonwealth plan of adjustment, if necessary, before proceeding to confirmation.

4. The Commonwealth's 2020 Partial Summary Judgment Motions have now been briefed, and argued, and subject to any supplemental briefing and oral argument following the limited discovery permitted by the Court, will be fully submitted for the Court's determination.[5]

5. The Court subsequently directed further mediation sessions occur under the direction of the Mediation Team Leader, and set a deadline of February 10, 2021 for the Oversight Board to file a term sheet and/or a plan of adjustment. In accordance with the Court's order, the Oversight Board continued to participate in informational and negotiation mediation sessions, and informal sessions with the Commonwealth and many other parties, to establish a framework and a timeline for the development for a consensual restructuring. As the Oversight Board recently reported, on February 9, 2021, the Oversight Board and the principal parties to the then-existing

---

Process claims likewise are based on the same theories as their other constitutional claims, and therefore, should be disallowed for the same reasons those claims should be disallowed.

[5] As set forth in the Motion, pursuant to the Peaje Stay Order, all counts alleged against Peaje in the Commonwealth's adversary proceeding against Defendants regarding the HTA Bonds [20-AP-005] are stayed in their entirety, and the Court's adjudication of legal issues presented by the 2020 Partial Summary Judgment Motion, on any of the counts alleged against defendants other than Peaje, will be binding on the Commonwealth and Peaje with respect to the same legal issue presented in the corresponding Counts alleged against Peaje identified in the Revenue Bonds CMO. To the extent relief is granted to the Commonwealth as requested in the Motion, the Commonwealth also seeks leave to file a further motion for partial summary judgment regarding the counts alleged against Peaje specified herein that are like counts alleged against the other Defendants currently stayed by the Revenue Bonds CMO and the Peaje Stay Order. The Commonwealth will discuss with Peaje the possibility of entry of a similar order (like the Peaje Stay Order), to further streamline these proceedings.

plan support agreement reached an agreement in principle regarding the terms of a new plan support agreement and an amended plan of adjustment, subject to the execution of definitive documentation. *Urgent Motion of the Financial Oversight and Management Board for Puerto Rico Requesting Extension of Deadlines for Submission of Plan of Adjustment or Term Sheet with Respect Thereto,* [Case No. 17-3283, ECF No. 15821] ¶ 9. The Oversight Board requested an extension until March 8, 2021 to conduct additional sessions with parties in interest to further mediation discussions and continue efforts to increase the foundational support for a plan of adjustment. *Id.* ¶ 11. On February 16, 2021, the Court granted the extension [ECF No. 15849].

6. On March 8, 2021, the Oversight Board filed the proposed Amended Commonwealth Plan and corresponding proposed disclosure statement [ECF Nos. 15976, 15977], supported by claimholders party to the PSA, which for now also includes defendants AGC, AGMC, and National (although those parties retain the right to withdraw from the PSA under certain conditions and within a specified time frame). The remaining defendants named in the Revenue Bond Adversary Proceedings—Ambac, FGIC, Peaje, U.S. Bank (as Trustee) and BNYM (as Fiscal Agent)—are not parties to the PSA.

7. The current state of affairs creates a critical need now to address additional claim allowance issues in advance of a confirmation hearing: whether Defendants have any allowable claims, including unsecured claims of any priority, against the Commonwealth regarding the Relevant Revenues retained by the Commonwealth. A determination on these issues will have a significant impact on the potential success or viability of the plan: rulings unfavorable to creditors will provide clarity regarding their rights, if any, against the Commonwealth; rulings unfavorable to the Commonwealth could require a material modification to the proposed plan for it to move forward. The allowability of large unsecured claims will impact the Court's determination of

4

confirmation issues. And, delaying resolution of these additional gating issues could result in further time and expense associated with resolving Defendants' claims or the requisite plan modification and re-solicitation of creditors, and impede the plan confirmation process.

8. The absence of any allowable claims, including unsecured claims, against the Commonwealth regarding the Relevant Revenues is the subject of numerous other counts stated in the Revenue Bond Complaints, which are currently stayed pursuant to the Revenue Bonds CMO. The Commonwealth believes the remaining claims asserted in the Proofs of Claim should be disallowed in their entirety, and are subject to disposition on summary judgment. The Commonwealth submits a resolution on the merits of the specified remaining counts in the Revenue Bond Complaints will significantly simplify necessary determinations during the confirmation hearing and help expedite the Commonwealth's exit from Title III.

## BASIS FOR RELIEF REQUESTED

9. As noted above, with the guidance of the Mediation Team and the support of the claimholders party to the PSA, the Oversight Board filed the proposed Amended Commonwealth Plan on March 8, 2021. Support for the PSA reached 70% of the principal amount of the Commonwealth's GO Bonds and PBA Bonds outstanding by February 23, 2021. Consistent with the terms of the PSA, the PSA parties currently support the relief requested herein. However, certain of the defendants in the Revenue Bond Adversary Proceedings—Ambac, FGIC, Peaje, U.S. Bank (as Trustee) and BNYM (as Fiscal Agent)—are not parties to the PSA, and other parties to the PSA, including AGC, AGMC and National have the right to withdraw from the PSA under certain conditions and within a certain time to continue their respective pursuit of claims against the Commonwealth. As a result, all of Defendants' claims asserted in their Proofs of Claim against the Commonwealth regarding the Relevant Revenues retained by the Commonwealth that are not

addressed by the 2020 Partial Summary Judgment Motions will need to be resolved either before or as part of the confirmation process for the Amended Commonwealth Plan.

10. As described in the Mediation Team's Amended Report, merits rulings on any gating issues, including the allowability of any unsecured claims against the Commonwealth concerning the Relevant Revenues, could facilitate mediation and streamline the confirmation process. Amended Report at 12 [Case No. 17-3283, ECF No. 10756]. Upon considering the Amended Report, and in permitting the filing of the 2020 Partial Summary Judgment Motions, the Court implicitly recognized the importance of resolving threshold gating issues concerning the Relevant Revenues, which issues could impose a significant delay in confirmation proceedings, if not promptly resolved in advance thereof.

11. At the time the Revenue Bond CMO was entered, the Oversight Board supported focusing initially on resolution of whether Defendants had a secured claim or protected property interest against the Commonwealth regarding the Relevant Revenues retained by the Commonwealth, and addressing certain constitutional claims (e.g., Contract Clause counts) and statutory claims (counts regarding PROMESA Section 407), all of which, if resolved, would facilitate and expedite plan confirmation proceedings.

12. The Oversight Board indicated at the time, however, that numerous other counts in the Revenue Bond Complaints, addressing whether Defendants hold *any* allowable claims, including unsecured claims, would need to be resolved. *See Response of Financial Oversight and Management Board for Puerto Rico to Amended report and Recommendation of Mediation Team* [Case No. 17-3283, ECF No. 11492] ¶ 14. The Oversight Board further signaled in the 2020 Partial Summary Judgment Motions that, if the allowability of other claims, including Defendants' unsecured claims, became relevant, the Commonwealth would be able to show such claims are not

6

supported in law or fact. *See, e.g.*, *Memorandum of the Commonwealth of Puerto Rico, by and through the Financial Oversight and Management Board, in Support of Motion for Partial Summary Judgment Disallowing Claims* [Case No. 20-AP-005, ECF No. 56] at 3 n.8.

13. Accordingly, the Oversight Board submits it is now appropriate to obtain a merits-based determination on the additional gating issues of whether Defendants have any allowable claim, including unsecured claims, against the Commonwealth regarding the Relevant Revenues retained by the Commonwealth. The Commonwealth further submits Defendants' purported unsecured claims can be resolved as a matter of law, based on undisputed material facts, and therefore, are subject to disposition on summary judgment. Resolution of the specified remaining counts of the Revenue Bond Complaints will resolve the rest of the claims asserted against the Commonwealth in Defendants' Proofs of Claim. Rulings on those counts will provide clarity to the parties regarding Defendants' rights, if any, against the Commonwealth regarding the Relevant Revenues retained by the Commonwealth. If Defendants' claims are disallowed, as the Oversight Board believes they will be, Defendants will have no basis on which to object to the treatment of the Relevant Revenues retained by the Commonwealth in the Commonwealth plan of adjustment, thereby further reducing the issues to be resolved during plan confirmation. Conversely, if the claims are allowed, the Oversight Board needs to adjust its proposed plan of adjustment to make sure each allowed claim is treated as Title III requires.

14. In accordance with the Revenue Bonds CMO, by the Motion and this Memorandum, the Commonwealth requests entry of an order pursuant to Bankruptcy Code sections 105(a) and 502, modifying the Revenue Bonds CMO to lift the litigation stay currently imposed on the remaining counts of the Revenue Bond Complaints and granting the

Commonwealth leave to prosecute a partial summary judgment motion with respect to the respective counts in each of the Revenue Bond Adversary Proceedings, as follows:

**Adversary Proceeding No. 20-003 (Regarding PRIFA)**:

- Ambac Counts: 8 (Retained Revenues are Special Revenues), 11 (Preemption), 12 (Breach of non-impairment provision), 13 (Breach of contract), 14 (Common law torts), 19 (Takings Clause), 21 (Due Process Clause), 23 (Post-petition interest), 25 (Priority claims) and 26 (Security interest in post-petition revenues).

- AGC Counts: 34 (Retained Revenues are Special Revenues), 37 (Preemption), 38 (Breach of non-impairment provision), 39 (Breach of contract), 40 (Common law torts), 45 (Takings Clause), 47 (Due Process Clause), 49 (Post-petition interest), 51 (Priority claims) and 52 (Security interest in post-petition revenues).

- FGIC Counts: 60 (Retained Revenues are Special Revenues), 63 (Preemption), 64 (Breach of non-impairment provision), 65 (Breach of contract), 66 (Common law torts), 71 (Takings Clause), 73 (Due Process Clause), 75 (Post-petition interest), 77 (Priority claims) and 78 (Security interest in post-petition revenues).

- US Bank Trust N.A. Counts: 85 (Retained Revenues are Special Revenues), 87 (Preemption), 88 (Breach of non-impairment provision), 89 (Breach of contract), 90 (Common law torts), 95 (Takings Clause), 97 (Due Process Clause), 99 (Post-petition interest), 101 (Priority claims) and 102 (Security interest in post-petition revenues).

**Adversary Proceeding No. 20-004 (Regarding CCDA)**:

- Ambac Counts: 2 (Claims precluded by bond documents), 5 (Preemption), 6 (Breach of contract), 7 (Common law torts), 12 (Takings Clause), 14 (Due Process Clause), 16 (Post-petition interest), 19 (Priority claims) and 20 (Security interest in post-petition revenues).

- AGC Counts: Counts: 23 (Claims precluded by bond documents), 26 (Preemption), 27 (Breach of contract), 28 (Common law torts), 33 (Takings Clause), 35 (Due Process Clause), 37 (Post-petition interest), 40 (Priority claims) and 41 (Security interest in post-petition revenues).

- FGIC Counts: 44 (Claims precluded by bond documents), 47 (Preemption), 48 (Breach of contract), 49 (Common law torts), 54 (Takings Clause), 56 (Due Process Clause), 58 (Post-petition interest), 61 (Priority claims) and 62 (Security interest in post-petition revenues).

- BNYM, as fiscal agent, Counts: 64 (Claims precluded by bond documents), 66 (Preemption), 67 (Breach of contract), 68 (Common law torts), 73 (Takings Clause), 75 (Due Process Clause), 77 (Post-petition interest), 80 (Priority claims) and 81 (Security interest in post-petition revenues).

**Adversary Proceeding No. 20-005 (Regarding HTA)**:

- Ambac Counts: 5 (Preemption), 6 (Breach of Contract), 7 (Common law torts), 12 (Takings Clause), 14 (Due Process Clause), 16 (Post-petition interest), 19 (Priority claims), 20 (Security interest in post-petition

9

revenues), 21 (Retained revenues are Special Revenues) and 23 (Breach of non-impairment provision).

- AGC Counts: 28 (Preemption), 29 (Breach of Contract), 30 (Common law torts), 35 (Takings Clause), 37 (Due Process Clause), 39 (Post-petition interest), 42 (Priority claims), 43 (Security interest in post-petition revenues), 44 (Retained revenues are Special Revenues) and 46 (Breach of non-impairment provision).

- AGMC Counts: 51 (Preemption), 52 (Breach of Contract), 53 (Common law torts), 58 (Takings Clause), 60 (Due Process Clause), 62 (Post-petition interest), 65 (Priority claims), 66 (Security interest in post-petition revenues), 67 (Retained revenues are Special Revenues) and 69 (Breach of non-impairment provision).

- National Counts: 74 (Preemption), 75 (Breach of Contract), 76 (Common law torts), 81 (Takings Clause), 83 (Due Process Clause), 85 (Post-petition interest), 88 (Priority claims), 89 (Security interest in post-petition revenues), 90 (Retained revenues are Special Revenues) and 92 (Breach of non-impairment provision).

- FGIC Counts: 97 (Preemption), 98 (Breach of Contract), 99 (Common law torts), 104 (Takings Clause), 106 (Due Process Clause), 108 (Post-petition interest), 111 (Priority claims), 112 (Security interest in post-petition revenues), 113 (Retained revenues are Special Revenues) and 115 (Breach of non-impairment provision).

- Peaje Counts: [1968] 119 (Preemption), 120 (Breach of Contract), 121 (Common law torts), 126 (Takings Clause), 128 (Due Process Clause), 130 (Post-petition interest), 133 (Priority claims), 134 (Security interest in post-petition revenues), 135 (Retained revenues are Special Revenues), and 137 (Breach of non-impairment provision); [1998] 141 (Preemption), 142 (Breach of Contract), 143 (Common law torts), 148 (Takings Clause), 150 (Due Process Clause), 152 (Post-petition interest), 155 (Priority claims), 156 (Security interest in post-petition revenues), 157 (Retained revenues are Special Revenues) and 159 (Breach of non-impairment provision).

- BNYM, as fiscal agent, Counts: [1968] 162 (Preemption), 163 (Breach of Contract), 164 (Common law torts), 169 (Takings Clause), 171 (Due Process Clause), 173 (Post-petition interest), 176 (Priority claims), 177 (Security interest in post-petition revenues), 178 (Retained revenues are Special Revenues) and 180 (Breach of non-impairment provision); [1998] 183 (Preemption), 184 (Breach of Contract), 185 (Common law torts), 190 (Takings Clause), 192 (Due Process Clause), 194 (Post-petition interest), 197 (Priority claims), 198 (Security interest in post-petition revenues), 199 (Retained revenues are Special Revenues) and 201 (Breach of non-impairment provision).

The litigation stay otherwise would remain in effect.

15. Bankruptcy Code Section 502(a) provides for objections to proofs of claims. Section 105(a) allows the Court to issue orders to carry out sections of the Bankruptcy Code such as section 502. Section 105(a) codifies the Court's inherent authority to order and manage the

11

timely resolution of claims at issue. 11 U.S.C. § 105(a) ("The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."); 2 Collier on Bankruptcy ¶ 105.01 (16th ed. 2021) ("Bankruptcy courts, both through their inherent powers as courts and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief.")

16. Good causes exists for the relief requested herein, as the Court's ruling regarding whether Defendants have any allowable claims, including unsecured claims of any priority, against the Commonwealth with respect to the Relevant Revenues retained by the Commonwealth will streamline the confirmation process on the Amended Commonwealth Plan. Resolving these issues could also garner additional support for the Amended Commonwealth Plan. The relief requested here, therefore, is consonant with the general principle that the Commonwealth's restructuring should proceed expeditiously, and proceed to confirmation as quickly as is reasonably achievable. *See, e.g.*, *In re WR Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013) (finding that among the objectives and purposes of the Bankruptcy Code are "the expeditious liquidation and distribution of the bankruptcy estate to its creditors"); *see also In re Federated Dep't Stores, Inc.*, 114 B.R. 501, 503 (Bankr. S.D. Ohio 1990) (citation omitted) (recognizing in a Chapter 11 case, a "prime consideration" for the court "is the public interest in a prompt and successful reorganization of the Debtors . . . 'to restructure [the Debtors'] finances so that it may continue to operate, provide its employees with jobs, pay its creditors and produce a return for its stockholders'"); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK 3283-LTS, 2019 WL 4735362, at *5 (D.P.R. June 28, 2019) (recognizing "broad public interest in efficient and expeditious progress of the Title III cases"). Because the Revenue Bond Complaints were filed in response to and address all the

12

claims asserted in Defendants' Proofs of Claim, authorizing a path for resolution on the merits of Defendants' claims cannot prejudice Defendants.

WHEREFORE the Commonwealth respectfully requests the Court issue the accompanying Proposed Order granting the Motion and grant Movant such other relief as is just and proper.

Dated: April 6, 2021
San Juan, Puerto Rico

/s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Carla Garcia Benitez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944
Email: hermann.bauer@oneillborges.com
carla.garcia@oneillborges.com
gabriel.miranda@oneillborges.com

/s/ Martin J. Bienenstock
Martin J. Bienenstock
Jeffrey Levitan
Timothy W. Mungovan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
jlevitan@proskauer.com
tmungovan@proskauer.com
ebarak@proskauer.com

        Michael A. Firestein
Lary Alan Rappaport
(Admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:    (310) 557-2900
Fax:   (310) 557-2193
Email: mfirestein@proskauer.com
       lrappaport@proskauer.com

*Attorneys for the Financial Oversight and Management Board for Puerto Rico as Representative of the Commonwealth of Puerto Rico*

14