**Hearing Date: April 28, 2021 at 9:30 a.m. (AST)**
**Objection Deadline: April 13, 2021 at 4:00 p.m. (AST)**

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>THE COMMONWEALTH OF PUERTO RICO,<br>*et al.*<br><br>Debtors. | **)** PROMESA<br>**)** Title III<br>**)**<br>**)** No. 17 BK 3283-LTS<br>**)**<br>**)** (Jointly Administered)<br>**)**<br>**)**<br>**)**<br>**)** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br>PUERTO RICO ELECTRIC POWER<br>AUTHORITY ("PREPA")<br><br>Debtor.[1] | **)** PROMESA<br>**)** Title III<br>**)**<br>**)** No. 17 BK 4780-LTS<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)** |

## COBRA ACQUISITIONS LLC'S MOTION TO LIFT THE STAY ORDER

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT..................................................................................................1

BACKGROUND ....................................................................................................................5

RELIEF REQUESTED..........................................................................................................9

ARGUMENT ........................................................................................................................9

I.      THE INTERESTS OF JUSTICE FAVOR LIFTING THE STAY ON THE
        ADMINISTRATIVE EXPENSE MOTION ...........................................................9

        A.      The Applicable Factors Weigh in Favor of Lifting the Stay ................................10
        B.      The Hardship to the Government Parties in Lifting the Stay Is Overstated ..........13

CONCLUSION......................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re ATP Oil & Gas Corp.*,
No. 12-36187, 2014 WL 1047818 (Bankr. S.D. Tex. Mar. 18, 2014)..........................................15

*Austin v. Unarco Indus., Inc.*,
705 F.2d 1 (1st Cir. 1983) ......................................................................................................13

*D.R. v. Bigda*,
No. 20-CV-30085, 2021 WL 1080244 (D. Mass. Mar. 18, 2021) .................................................10

*Gonzalez v. Cruz*,
926 F.2d 1 (1st Cir. 1991) ........................................................................................................10

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)...............................................................................................................9, 14

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004) ..........................................................................................9, 10, 12, 13

*Ramirez Lluveras v. Pagan Cruz*,
No. 08-CV-1486 (FAB), 2010 WL 11679649 (D.P.R. Aug. 5, 2010) .........................................10

*SEC v. Dresser Indus., Inc.*,
628 F.2d 1368 (D.C. Cir. 1980)...............................................................................................12

*SEC v. Liberty*,
No. 18-CV-00139, 2019 WL 3752907 (D. Me. Aug. 8, 2019) .....................................................12

**Statutes**

Bankruptcy Code section 105(a)................................................................................................1

Bankruptcy Code section 503(b) ...........................................................................................4, 15

Cobra Acquisitions LLC ("Cobra"), by and through its counsel, respectfully submits this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these cases by PROMESA section 301, for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") lifting the stay applicable to Cobra's *Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-BK-3283-LTS, ECF No. 8789] (the "Administrative Expense Motion") in the Title III Case commenced by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") on behalf of the Puerto Rico Electric Power Authority ("PREPA" and, together with the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the "Government Parties").  In support of this Motion, Cobra respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Cobra files this Motion requesting that the Court lift the stay applicable to the Administrative Expense Motion because the interests of justice no longer support its continuance. For over two years, Cobra has been denied payment on work it successfully performed restoring Puerto Rico's power grid.  After months of stonewalling by PREPA, Cobra sought relief from the Court on September 30, 2019 by filing the Administrative Expense Motion.  Upon the Government Parties' request for what they described as a "limited stay," the Court stayed the Administrative Expense Motion on October 17, 2019—and has continued the stay at approximately six-month intervals—on the grounds that the outcome of either (i) a criminal indictment against three individuals (the "Criminal Matter"), including Cobra's former president but not Cobra, or (ii) an expected FEMA analysis of the rates PREPA agreed to pay Cobra for hurricane restoration work (the "FEMA Analysis") could affect Cobra's entitlement to payment for the work it performed at PREPA's direction. *See Order Granting Joint Urgent Motion of the Oversight Board, PREPA, and*

1

*AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-BK-3283-LTS, ECF No. 8886] (the "Initial Stay Order").  Now, two years after Cobra completed the work and over 18 months after the entry of the Initial Stay Order, whatever justification the Criminal Matter and the FEMA Analysis once may have provided for instituting a stay has fallen away.

2.      When the Court entered the Initial Stay Order, a jury trial in the Criminal Matter was imminent.  At that time, trial in the Criminal Matter was scheduled for December 9, 2019—a key point in the Government Parties' original arguments in favor of a stay.  *See Joint Urgent Motion of the Oversight Board, PREPA, and AAFAF to Extend All Applicable Deadlines to Cobra Acquisition LLC's Motion for Allowance and Payment of Administrative Expense Claims* [Case No. 17-3283, ECF No. 8838] (the "Gov't Parties Stay Motion") ("Notably, a limited stay until the January 29, 2020 omnibus hearing should give the criminal court enough time to try Ellison, Tribble and Patterson.").  But what once was imminent now is extended indefinitely.  In the intervening 16 months, the expected jury trial has been adjourned repeatedly.  Currently, no further hearings or status conferences are scheduled in the Criminal Matter and no date for a jury trial is on the horizon.

3.      Cobra, moreover, has continually questioned how dispositive the Criminal Matter is to the Administrative Expense Motion.  Among other things, the contracts in question provide PREPA a remedy only if *Cobra* is convicted or pleads guilty to certain crimes—neither of which has happened.  Now, with no jury trial even in sight, the balance of harms weighs heavily in favor of lifting what has become an open-ended stay.  Any jury trial, once scheduled,[1] may take months

---

[1]  Given the ongoing COVID-19 pandemic, the District Court has excluded all criminal cases from the Speedy Trial Act.  *See* Seventh Amended Order Continuing Civil and Criminal Proceedings ¶ 2, *In re Corona Virus (COVID19) Public Emergency*, Misc. No. 20-0088 (GAG) (D. P.R. Mar. 1, 2021).

to conclude and even longer for the parties to exhaust their appellate rights.  For the Government

Parties to prove their speculative theories on how the Criminal Matter may potentially affect

PREPA's liability to Cobra or Cobra's entitlements to an administrative expense claim will require

evidence likely far beyond what may ever be produced or testified to in the Criminal Matter.

Simply put, the Government Parties' speculations—which always have been short on specifics—

should no longer be used to halt Cobra's right to prosecute the Administrative Expense Motion.

*See, e.g.*, *Memorandum Order Denying Cobra Acquisitions LLC's Urgent Motion to Modify the*

*Stay Order and Allow the Undisputed Tax Claims* [Case No. 17-4780, ECF No. 2004] (the "Tax

Claims Order") at 10 (noting "PREPA's contractual arguments may well be strained").

4.     Similarly, the FEMA Analysis has been postponed far past its expected delivery

date of May 29, 2020.  As of now, Cobra is unaware of when FEMA may complete its review.

Against this uncertainty, two facts cannot be disputed:

- *First*, FEMA and the RAND Corporation (at FEMA's request) independently
  have concluded that the rates PREPA agreed to pay Cobra were reasonable.[2]
  The long-awaited FEMA Analysis, in other words, is now the *third* review of
  costs.[3]  As Cobra has observed before, it is incongruous and inequitable for

---

[2]   *See, e.g.*, Mammoth Energy Services, Inc., Current Report (Form 8-K) (June 9, 2020), Ex. 99.1 (copy of RAND
Report, dated as of March 28, 2019, and concluding that the Cobra contract was procured in a reasonable
procurement process and that Cobra's blended rates fell within the estimates ranges for all scenarios considered
for the emergency work performed); Mammoth Energy Services, Inc., *Mammoth Energy Releases Additional
Information Regarding Work Performed in Puerto Rico* (Mar. 17, 2021),
https://ir.mammothenergy.com/node/8326/pdf (highlighting a recently released memorandum from FEMA, dated
April 22, 2019, concluding that PREPA (i) awarded the contract in compliance with the emergency procurement
provisions of the Commonwealth of Puerto Rico and (ii) the contract rates were reasonable when compared with
other proposals available to PREPA at the time); Mammoth Energy Services, Inc., *Mammoth Energy Announces
Third Validation of Work Performed In Puerto Rico* (Dec. 8, 2020), https://ir.mammothenergy.com/node/8261/pdf
(providing 781-pages obtained from FEMA under FOIA requests that, among other things, highlight Cobra's
responsiveness to PREPA and the people of Puerto Rico).

[3]   Though it is insufficient to impose a stay in order for a defendant to build its case, PREPA has said that it also is
"conducting a review of Cobra's work and invoices to determine the validity of charges[.]"  Gov't Parties Stay
Mot. ¶ 6.  Cobra, for its part, has gone above and beyond to ensure not only that PREPA has the documents it needs
to verify the accuracy of its claims, *see, e.g.*, *Urgent Motion to Modify the Stay Order and Allow the Undisputed
Tax Claims* [Case No. 17-3283, ECF No. 12531] (the "Tax Claims Motion") ¶ 18, but also recently worked with
counsel for PREPA—at its own expense—to respond to information requests from FEMA for which PREPA did
not have the necessary supporting documentation.  In addition, Cobra has offered repeatedly to go to Puerto Rico

PREPA to subject Cobra to endless rounds of second-guessing by multiple parties down to the minutest details on the services it performed, while readily agreeing that claims in favor of LUMA Energy be pre-approved as administrative expenses. *See, e.g.*, *Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts To Be Paid to LUMA Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract* (the "Second LUMA Motion") [Case No. 17-3283, ECF No. 16241] ¶ 4 ("LUMA Energy cannot be expected to enter into and perform a contract of this magnitude, which is the subject of ongoing litigation, if doing what is required by the contract will not qualify as an administrative expense and constitute a necessary cost or expense of preserving PREPA's property.").

- *Second*, the FEMA Analysis will not be binding on the Court or the parties. Most importantly, it cannot substitute for the Court's independent judgment, as informed by all the evidence, in deciding whether the work performed by Cobra was "actual [and] necessary" within the meaning of Bankruptcy Code section 503(b). In that respect, it is notable that the FEMA Analysis focuses on whether *PREPA* and *FEMA*, not Cobra, acted on a reasonable and sound basis. The FEMA Analysis, whenever it becomes available, simply will be one more data point (on what is now a pile of after-the-fact reviews—all of which to date have found the rates were reasonable) that may aid the Court in assessing whether the complex work Cobra performed under exceedingly difficult circumstances was "necessary." After two years of waiting to even begin the process of resolving the Administrative Expense Motion, the value the FEMA Analysis may add to the Court's evaluation under section 503(b) is far outweighed by the substantial prejudice Cobra continues to suffer as a result of the stay.

5.      Cobra appreciates that the prejudice it has suffered from the stay must be weighed against countervailing factors, such as the hardship on PREPA and the interests of third parties. In that respect, the Government Parties previously have cited the costs of discovery and litigation while the Criminal Matter and the FEMA Analysis remain unresolved. But, ultimately, the Criminal Matter (in which, again, Cobra is not a defendant) will not be dispositive on the contractual and legal arguments that the Government Parties have raised. In other words, the litigation costs that concern the Government Parties likely will be incurred notwithstanding the final outcomes of the Criminal Matter and the FEMA Analysis—whenever that may occur. At

---

and help PREPA with any additional documentation that they need for FEMA, all in the spirit of working together to resolve any issues on billing or invoices.

best, the Government Parties' concerns suggest the parties should take a sensible approach to discovery and litigating the Administrative Expense Motion, not that the Administrative Expense Motion should be subject to an open-ended stay. Regardless, under any reasonable calculus, Cobra submits that litigation-related costs are dwarfed by the effect Cobra's potential and substantial administrative expense claims—which have accrued interest since March 2019 at a rate of nearly $3 million per month—may have on PREPA and its prepetition creditors.

6.      In light of these changed circumstances, Cobra files this Motion to lift the stay applicable to the Administrative Expense Motion. Cobra respectfully submits that, 18 months after entry of the Initial Stay Order, now is the time to begin the process of resolving the Administrative Expense Motion. The reasons in favor of a stay have long outlived their usefulness, and, as PREPA seeks to exit its Title III Case, PREPA and its stakeholders could surely benefit from more clarity as to the amount of administrative expense claims that must be satisfied. Ultimately, Cobra respectfully submits that the interests of justice no longer support continuing the stay of the Administrative Expense Motion.

## **BACKGROUND**

7.      When Cobra began its work under the October 19, 2017 Emergency Master Service Agreement for PREPA's Electrical Grid Repairs – Hurricane Maria (the "First Contract"), Puerto Rico had no power. Hurricanes Irma and Maria left Puerto Rico a Federal Disaster Zone, with critical infrastructure destroyed or severely damaged. Flooding, storm surge, landslides and the lack of cell phone service made travel and operations difficult. Housing was not available for the many workers needed to undertake the repair work. Hundreds of workers and tons of equipment to perform the work needed to be transported from the mainland. Cobra overcame these difficult conditions to perform the work it contracted to perform to restore Puerto Rico's electrical grid under the First Contract and then, after a competitive bid process, under the May 26, 2018 Master

Service Contract for PREPA's Electrical Grid Repairs Hurricane Maria (the "Second Contract," and, together with the First Contract, the "Contracts"). Cobra completed its contracted services in March 2019. PREPA has never disputed that Cobra's work was highly successful in restoring the island's electrical grid and otherwise meeting the goals for which PREPA hired Cobra.

8.      On September 30, 2019, Cobra filed a motion seeking an order allowing an administrative expense claim under Bankruptcy Code section 503(b)(1) of the Bankruptcy Code. *See* Admin. Expense Mot. ¶ 15. The Administrative Expense Motion asserts in excess of $200 million in claims for postpetition work performed by Cobra under the Contracts between Cobra and PREPA. These claims include withheld payments (i) for invoices to which PREPA has raised no substantive objection; (ii) based upon unsubstantiated "headcount" questions; (iii) for completed work erroneously claimed to be outside the scope of the agreements; (iv) for costs and work completed at PREPA's direction in preparation for Hurricane Beryl; (v) for extra mapping work completed at PREPA's direction; (vi) to reimburse Cobra's tax payments in excess of 8.5% of gross revenue (the "Tax Claims"); and (vii) for interest owed on late payments. Admin. Expense Mot. ¶¶ 42-62.

9.      On October 17, 2019, the Court granted the relief sought by the Government Parties Stay Motion, which Cobra opposed [Case No. 17-3283, ECF No. 8850] ("Cobra's Opposition to Stay Motion"), and stayed proceedings on the Administrative Expense Motion. *See* Initial Stay Order at 3. The Initial Stay Order was based on the notion that the outcomes of the pending Criminal Matter and the ongoing FEMA Analysis might affect Cobra's ability to recover the full amount it seeks in its Administrative Expense Motion. *Id.* at 2. At the time the Initial Stay Order was entered, the parties expected a jury trial in the Criminal Matter to begin on December 9, 2019 and for FEMA to complete the FEMA Analysis by May 29, 2020.

10.     On February 3, 2020, following a joint status report by Cobra and the Government Parties [Case No. 17-3283, ECF No. 10307], the Court entered an order continuing the stay until the June 2020 omnibus hearing [Case No. 17-4780, ECF No. 1894] (the "Second Stay Order").

11.     On March 25, 2020, Cobra filed the Tax Claims Motion.  By the Tax Claims Motion, Cobra sought to lift the stay solely as to the Tax Claims (in the amount of approximately $62 million), which seek reimbursement of taxes paid to Puerto Rico in 2018 as required by the First Contract.  Tax Claims Mot. ¶ 15.  On April 7, 2020, the Government Parties filed their opposition to the Tax Claims Motion [Case No. 17-4780, ECF No. 1959] ("Gov't Parties Opposition to Tax Claims Motion") and, on April 14, 2020, Cobra filed its reply in support of the Tax Claims Motion [Case No. 17-3283, ECF No. 12752] ("Cobra's Reply in Support of Tax Claims Motion").

12.     On May 21, 2020, the Court entered the Tax Claims Order.  The Tax Claims Order recognized that the "adjournment of the criminal trial until January 2021, at the earliest, constitutes a significant change in circumstances since the Court entered the Stay Orders."  Tax Claims Order at 9.  The Court also observed that "PREPA's contractual arguments may well be strained."  *Id.* at 10.  However, after taking account of other relevant factual and procedural considerations, the Court concluded that "Cobra has not demonstrated that there has been a material change warranting modification of the stay of litigation[.]"  *Id.* at 11.

13.     On June 5, 2020, following a joint status report by Cobra and the Government Parties [Case No. 17-3283, ECF No. 13253], the Court entered an order continuing the stay until the December 2020 omnibus hearing [Case No. 17-3283, ECF No. 13373] (the "Third Stay Order").

14.     On December 9, 2020, following a status report by the Government Parties [Case No. 17-4780, ECF No. 2314], the Court entered an order continuing the stay until the June 2021 omnibus hearing [Case No. 17-3283, ECF No. 15396] (the "Fourth Stay Order" and, together with the Initial Stay Order, the Second Stay Order and the Third Stay Order, the "Stay Order").

15.     On March 23, 2021, at the most recent status conference in the Criminal Matter, the district court heard a number of discovery-related motions, but "informed the parties that considering the pending issues in this case, setting Jury trial will remain in abeyance." *United States v. Tribble*, No. 19-CR-541 (FAB), ECF No. 193 (D.P.R. Mar. 23, 2021), at 3. There is no indication in the public record as to what the "pending issues" are or when jury trial might ultimately be set. The court also did not schedule any further hearings or status conferences.

16.     The target date for the release of the FEMA Analysis was May 29, 2020. According to a report issued by the Office of Inspector General ("OIG") on July 27, 2020, FEMA informed the OIG that it would not complete its analysis until the end of August 2020, with any resolution and closure of its recommendation not occurring until May 2021. *See* FEMA's Public Assistance Grant to PREPA and PREPA's Contracts with Whitefish and Cobra Did Not Fully Comply with Federal Law and Program Guidelines (OIG-20-57) (July 27, 2020), https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-57-Jul20.pdf. Cobra is unaware of any evidence that FEMA met the August 2020 date for completing its analysis. Given that the May 2021 completion date appears only in a footnote in the OIG's report and is not the result of a direct communication from FEMA, Cobra has no basis to evaluate whether the FEMA Analysis will, in fact, be complete by May 2021, and Cobra is not aware of any other public information on its status.

## RELIEF REQUESTED

17.    By this Motion, Cobra respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, lifting the stay applicable to the Administrative Expense Motion.

## ARGUMENT

### I.    THE INTERESTS OF JUSTICE FAVOR LIFTING THE STAY ON THE ADMINISTRATIVE EXPENSE MOTION

18.    The decision to stay proceedings calls for the trial court to exercise its judgment to "weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).   In *Landis*, the Supreme Court cautioned against "immoderate" stays without reasonable limits and instructed that, "once those limits have been reached, the fetters should fall off."   *Id*. at 257.   The Court of Appeals for the First Circuit, while acknowledging that this determination is "highly nuanced," has articulated the following seven factors "that typically bear on [a court's] decisional calculus" in staying proceedings:

> (i)    the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire;
>
> (ii)    the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem;
>
> (iii)    the convenience of both the civil and criminal courts;
>
> (iv)    the interests of third parties;
>
> (v)    the public interest;
>
> (vi)    the good faith of the litigants (or the absence of it); and
>
> (vii)    the status of the cases.

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004) (cleaned up).

A stay, as an extraordinary remedy, "should be granted only in rare circumstances."   *Ramirez*

*Lluveras v. Pagan Cruz*, No. 08-CV-1486 (FAB), 2010 WL 11679649, at *4 (D.P.R. Aug. 5, 2010) (citing *Gonzalez v. Cruz*, 926 F.2d 1, 3 (1st Cir. 1991)).

      **A.**      **The Applicable Factors Weigh in Favor of Lifting the Stay**

19.     Cobra submits that all relevant factors weigh strongly against continuing the stay of the Administrative Expense Motion.[4]

20.     The prejudice to Cobra has been and continues to be substantial. There can be no dispute of this fact. Cobra completed its work restoring Puerto Rico's power grid in March 2019. Despite Cobra's efforts since then to provide PREPA with any further documentation it requires or to engage in substantive discussions with PREPA on the unpaid receivable in excess of $200 million, PREPA has merely stonewalled Cobra. *See, e.g.*, Tax Claims Mot. ¶ 4. With the stay now in place for 18 months, Cobra has been prevented from even *beginning* to seek redress from the Court or address disputes by PREPA that will not be resolved by either the Criminal Matter or the FEMA Analysis. *See, e.g.*, *D.R. v. Bigda*, No. 20-CV-30085, 2021 WL 1080244, at *2 (D. Mass. Mar. 18, 2021) ("When a court has parallel proceedings such as those faced by [defendant] pending before it, the court should avoid imposing a general stay and should, instead, allow civil proceedings to progress as much as possible without prejudicing the relative interests of the litigants.") (citations omitted).

21.     The Government Parties have argued that there is minimal or no prejudice in the Stay Order to Cobra because PROMESA does not require administrative expense claims to be paid until the effective date of a plan of adjustment. *See, e.g.*, Gov't Parties Stay Mot. ¶ 33. This argument is nonsensical, and is belied by the Government Parties' own actions. Even if the Court cannot order PREPA to pay Cobra's claim immediately, substantial value exists in having an

---

[4]   Cobra does not contend that any of the parties have acted in bad faith, and, thus, this factor under *Microfinancial* does not affect the ultimate outcome of the analysis.

*allowed* administrative expense claim that would be paid on PREPA's exit from Title III.  Look no further than LUMA Energy, which has taken extensive precautions to avoid the treatment that Cobra has received.  *See* Second LUMA Motion ¶ 4 (noting that PREPA agreed to seek administrative priority status for LUMA Energy's claims because LUMA Energy cannot be expected to enter into and perform a material contract without that assurance).  It requires no leap of logic to infer that LUMA Energy, after witnessing what has happened to Cobra since it completed its services, does not wish to even begin performing without the certainty its work is entitled to administrative expense priority.  This certainty has immense, objective value, even if the Government Parties insist on pretending it does not.

22.     The Government Parties also unduly downplay the added costs, and the effect of those costs on third parties, that every day of delay brings.  Counsel for the Oversight Board has informed the Court that it is comfortable incurring the interest expense.  *See* June 3, 2020 Hr'g Tr. 31:2-7 (Court asking, and counsel for Government Parties confirming, that PREPA is willing to take the financial risk on the interest expense).  As of December 31, 2020, approximately $74 million in interest has accrued on the late payments.  Compared to this interest expense, the discovery and litigation costs attendant to the Administrative Expense Motion surely are nominal.[5]

23.     The Government Parties' judgment here is mystifying.  Even if the Government Parties are discounting the value of Cobra's claims to a mere 10% of the asserted amount—which would be entirely divorced from any facts or evidence known to Cobra —the choice to continue pushing for a stay, and thereby incurring the additional interest expense, effectively lessens the ultimate recoveries available for their creditors.  It is well within the Court's discretion to determine

---

[5]   Notably, many of outstanding amounts should be easily resolved.  For instance, approximately $62 million (or nearly one-third) of the unpaid amounts relate to the Tax Claims, which are a mechanical calculation.  Cobra already has provided PREPA with its tax returns, evidence that the taxes were paid to the Puerto Rico and supporting financial statements as well as offering PREPA access to the accountants that prepared the tax returns.

that incurring these avoidable costs no longer makes sense for the third parties that may bear the costs through reduced recoveries.[6] *Microfinancial*, 385 F.2d at 78.

24.     It is telling that the Government Parties try to have it both ways.  On the one hand, they are comfortable assuming the financial exposure if Cobra's claims are allowed in the full amount, plus interest.  On the other hand, they caution the Court that PREPA "was and remains financially incapable of undertaking the extensive grid repairs necessary after Hurricane Maria without public assistance from FEMA."  Gov't Parties Stay Mot. ¶ 28 n.6.  Said plainly, PREPA assumes that it will not face any financial consequences if Cobra's claims are allowed in full (or even partially), and therefore it is of no moment that PREPA's actions may prove deleterious to its creditors should FEMA not be there to pick up the bill.[7]  This cavalier posture as to other people's money should be concerning not only to the Court, but to PREPA's many creditor constituencies.

25.     Finally, Cobra is cognizant and respectful of minimizing any duplicative efforts on behalf of this Court and the court presiding over the Criminal Matter.  As courts have observed, the "strongest case" for a stay exists where a party is indicted for a criminal offense and must defend a civil action involving the same matter.  *See, e.g.*, *SEC v. Liberty*, No. 18-CV-00139, 2019 WL 3752907, at *2 (D. Me. Aug. 8, 2019) (citation omitted); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) (observing that the non-criminal proceeding, if not deferred, might undermine a party's Fifth Amendment privileges, expand the rights of criminal discovery, expose

---

[6]  *Microfinancial* also identified the public interest as one of the factors that courts should consider in imposing a stay.  While the disputes between PREPA and Cobra may not have a meaningful effect on the public interest other than the general public interest in the prompt resolution of litigation, *Microfinancial*, 385 F.3d at 79 n.4, it is relevant that the extensive delay that has transpired here is contrary to the general policy underlying section 503(b) of encouraging third-parties to continue providing goods and services to a debtor.

[7]  It is possible, for instance, that the FEMA Analysis *could* conclude PREPA's rates were reasonable, but that public assistance funding should no longer be available to PREPA due to factors outside of Cobra's control.  *See, e.g.*, *Puerto Rico government could lose access to $4.5 billion in federal recovery funds*, El Nuevo Día (Mar. 7, 2021), https://www.elnuevodia.com/english/news/story/puerto-rico-government-could-lose-access-to-45-billion-in-federal-recovery-funds/ (executive director of the Puerto Rico Central Office for Recovery, Reconstruction and Resiliency stating that it has until the end of this year to close emergency categories for Hurricane Maria).

the basis of the defense to the prosecution or otherwise prejudice the criminal case). That, of course, is not the case here. Instead, here, neither PREPA nor Cobra are party to the Criminal Matter and, while there may be underlying facts in common between the Criminal Matter and the Administrative Expense Motion, the ultimate legal questions in each proceeding will differ. No matter what evidence is produced in the Criminal Matter, the Government Parties will need additional discovery on the Administrative Expense Motion to prove the various theories they have offered to date, such as "deceit" or "illegal purpose" under Puerto Rico law and which were not alleged in the indictment. And while the Government Parties have raised the general specter of deponents in the civil proceeding invoking their rights under the Fifth Amendment, that does not warrant the drastic remedy of staying *all* litigation on the Administrative Expense Motion. *See, e.g.*, Gov't Parties Reply Br. in Support of Stay Mot. [Case No. 17-4780, ECF No. 1662] ¶ 5 ("PREPA would need discovery from Ellison and other Cobra employees, including on matters related to the alleged, fraudulent scheme that may impact some or all of PREPA's obligations to pay Cobra. This discovery will likely be impeded if Ellison or others at Cobra invoke the Fifth Amendment[.]"). Instead, it suggests that the parties could formulate a sensible discovery plan that minimized the potential overlapping issues as between the Criminal Matter and the Administrative Expense Motion.

**B.     The Hardship to the Government Parties in Lifting the Stay Is Overstated**

26.     In contrast to the substantial prejudice that Cobra continues to bear and the potential harm to creditors in PREPA's Title III Case is the minimal hardship on PREPA. Cobra respectfully submits that these concerns have been overstated and, at this point, surely fall far short of meeting the Government Parties' "heavy burden" of demonstrating a "clear case of hardship." *Microfinancial*, 385 F.3d at 77 (citing *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983)). The Government Parties have insisted that they would be prejudiced by having to litigate the

13

Administrative Expense Motion now without the benefit of having the Criminal Matter and the FEMA Analysis resolved. But the outcomes of these matters have proved to be moving goalposts, transforming a limited stay into one of indefinite duration and far outliving any reasonable bases for the Stay Order. *Landis*, 299 U.S. at 255-56 (a stay must be "kept within the bounds of moderation").

27.     The Government Parties' assertions on why the Criminal Matter and the FEMA Analysis both must be resolved before the Administrative Expense Motion is litigated fall into roughly two categories. The first category consists of various claims PREPA may have to terminate the Contracts or render them voidable. These grounds arise under both the Contracts (e.g., if Cobra is convicted or pleads guilty to certain public corruption crimes) and Puerto Rico law (e.g., under theories of "deceit" or "illegality"). *See, e.g.*, Gov't Parties Stay Mot. ¶ 4. The second category consists of potential counterclaims PREPA may have against Cobra (e.g., for violations of the duty of complete loyalty or claims based on the outcome of the FEMA Analysis). *See, e.g.*, Gov't Parties Opp'n to Tax Claims Mot. ¶¶ 45-46. Cobra has rebutted these generic conjectures at length on prior occasions. *See, e.g.*, Cobra's Opp'n to Stay Mot. ¶¶ 12-38; Cobra's Reply in Support of Tax Claims Mot. ¶¶ 16-25.

28.     For these purposes, it is sufficient to say that the Criminal Matter and the FEMA Analysis cannot carry the water for an indefinite stay of all litigation. The ongoing nature of the Criminal Matter does not prevent the Government Parties from building their defense now; as their own speculations show, there is certainly discovery to be taken that will far exceed any testimony

14

or evidence presented in the Criminal Matter.[8]  Any discovery plan can be crafted to avoid duplicative efforts by the courts.

29.    As to the FEMA Analysis, the Government Parties' position that its conclusions will be dispositive to the Administrative Expense Motion misses the mark.  The FEMA Analysis is focused on the conduct of PREPA and FEMA, not Cobra.  *See, e.g.*, *In re ATP Oil & Gas Corp.*, No. 12-36187, 2014 WL 1047818, at \*4 (Bankr. S.D. Tex. Mar. 18, 2014) (finding no justification or supporting case law to the debtor's argument that administrative expense claims should be disallowed because, in hindsight, the work may not have benefitted the estate, when such work was performed under contracts, at the authority and direction of the debtor).  The reasonableness analysis completed by FEMA may or may not be coextensive with the Court's evaluation of Cobra's claims as "actual [and] necessary" under Bankruptcy Code section 503(b).  And, regardless, if the FEMA Analysis concludes that rates were not reasonable, that conclusion will need to be weighed against the prior two independent conclusions by FEMA and the RAND Corporation (not to mention PREPA itself, which negotiated and agreed to pay Cobra's rates) that the rates were reasonable.

---

[8]    Discovery in the Criminal Matter is complete from the perspective of Cobra and its parent entity, Mammoth Energy Services, Inc.  Absent a new request from the Department of Justice, there are no additional documents that Cobra or Mammoth will be producing.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Cobra respectfully requests that this Court enter an order, substantially in form attached hereto as **Exhibit A**, granting the relief requested herein, and granting Cobra such other relief as this Court deems just and proper.


*[Remainder of page left blank intentionally.]*

Dated: April 6, 2021

Respectfully submitted,

REICHARD & ESCALERA, LLC

/s/ Rafael Escalera Rodríguez
Rafael Escalera Rodríguez
USDC-PR No. 122609
escalera@reichardescalera.com

/s/Sylvia M. Arizmendi
Sylvia M. Arizmendi
USDC-PR No. 210714
arizmendis@reichardescalera.com

/s/ Alana Vizcarrondo-Santana
Alana Vizcarrondo-Santana
USDC-PR No. 301614
vizcarrondo@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, PR 00917-1913
Telephone: (787) 777-8888

Ira S. Dizengoff (*pro hac vice*)
Abid Qureshi (*pro hac vice*)
Philip C. Dublin (*pro hac vice*)
Steven M. Baldini (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Tel: (212) 872-1000
Fax: (214) 872-1002
Email: idizengoff@akingump.com
　　　aqureshi@akingump.com
　　　pdublin@akingump.com
　　　sbaldini@akingump.com

--and--

Thomas P. McLish (*pro hac vice*)
Scott M. Heimberg (*pro hac vice*)
Allison Thornton (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, DC 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: tmclish@akingump.com
　　　sheimberg@akingump.com
　　　athornton@akingump.com

*Attorneys for Cobra Acquisitions LLC*

17

## CERTIFICATE OF SERVICE

We hereby certify that on this same date, we electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel

for the parties of record.

*/s/Alana M. Vizcarrondo-Santana*
USDC-PR 301614