# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT<br>BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT<br>BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK- 3567 (LTS) |

---

[1]  The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-3566 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

## MOTION BY THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH THE MEMBERS OF THE SPECIAL CLAIMS COMMITTEE, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ESTABLISH PROCEDURES <u>FOR THE APPROVAL OF SETTLEMENTS</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................................1

JURISDICTION, VENUE, AND STATUTORY BASES ..........................................................3

FACTUAL BACKGROUND.......................................................................................................3

    *A. Case Commencement and Investigation.* ............................................................ 3

    *B. Avoidance Actions Procedures Order.* .............................................................. 6

    *C. Diligence and Resolutions.* ............................................................................... 7

RELIEF REQUESTED.................................................................................................................9

PROPOSED PROCEDURES .......................................................................................................9

BASIS FOR RELIEF REQUESTED.........................................................................................11

NOTICE......................................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 110 Beaver St. P'ship*,
    355 F. App'x 432 (1st Cir. 2009)............................................................................11

*Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.*
    *)*, 656 F.3d 82 (1st Cir. 2011) .................................................................................11

*In re Ballard*,
    502 B.R. 311 (Bankr. S.D. Ohio 2013)..................................................................12

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992)...................................................................................11

*In re Indian Motocycle Co.*,
    289 B.R. 269 (B.A.P. 1st Cir. 2003) ......................................................................11

*Jeffrey v. Desmond*,
    70 F.3d 183 (1st Cir. 1995)l....................................................................................11

*Masonic Hall & Asylum v. Official Comm. of Unsecured Creditors (In re Refco,*
    *Inc.)*,
    2006 U.S. Dist. LEXIS 85691 (S.D.N.Y. Nov. 16, 2006) ......................................11

*In re Nortel Networks Inc.*,
    Case No. 09-10138, 2011 WL 6013113 (Bankr. D. Del. Oct. 12, 2011) ................12

*Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968)...............................................................................................11

*Robbins v. Fulton Bank, N.A.*,
    CV 17-2763, 2018 WL 1693386 (E.D. Pa. Apr. 6, 2018) ......................................12

*In re Servisense.com, Inc.*,
    382 F.3d 68 (1st Cir. 2004)....................................................................................11

*In re Walker*,
    195 B.R. 187 (Bankr. D.N.H. 1996) ......................................................................12

*In re Yacovi*,
    411 F. App'x 342 (1st Cir. 2011)...........................................................................11

ii

## Statutes

2 L.P.R.A. § 97 ................................................................................................................5

3 L.P.R.A. § 283h(a) ........................................................................................................5

11 U.S.C. § 105(a) ...............................................................................................3, 11, 12

11 U.S.C. § 544 ..........................................................................................................2, 4, 5

11 U.S.C. § 545 ................................................................................................................4

11 U.S.C § 547 ........................................................................................................2, 4, 5, 8

11 U.S.C § 548 ..........................................................................................................2, 4, 5

11 U.S.C. § 553 ................................................................................................................4

PROMESA § 301 ..............................................................................................................4

PROMESA § 305 ..........................................................................................................3, 11

PROMESA § 306(a) .........................................................................................................3

PROMESA § 307(a) .........................................................................................................3

PROMESA § 315 ..............................................................................................................4

## Other Authorities

Fed. R. Bankr. P. 9019 ............................................................................................7, 11, 14

Fed. R. Bankr. P. 9019(a) ...............................................................................................11

Fed. R. Bankr. P. 9019(b) .........................................................................................11, 13

To the Honorable United States Magistrate Judge Judith G. Dein:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), acting by and through the members of the Special Claims Committee (the "SCC," and hereinafter, the SCC may be more broadly referred to as the "Oversight Board"), and the Official Committee of Unsecured Creditors of all Title III Debtors (except PBA and COFINA) (the "Committee," and together with the Oversight Board, "Movants"), hereby file this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code")[1] and Rules 2002, 9006, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), all made applicable to these Title III cases by section 301 and 310 of the Puerto Rico Oversight and Management, and Economic Stability Act ("PROMESA"), requesting entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "Proposed Order"), approving the Oversight Board's proposed limited notice procedure which will apply to the resolution of certain potential avoidance claims held by the Title III Debtors and subject to tolling agreements in lieu of commencement of litigation against providers of certain goods and services (the "<u>Tolling Agreements</u>" with the "<u>Tolled Parties</u>" concerning "<u>Tolled Claims</u>").[2]  In support of this Motion, Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      In April and May 2019, to preserve causes of action on behalf of the Title III debtors, the Oversight Board and the Committee filed approximately 250 Vendor Avoidance

---

[1] 11 U.S.C. §§ 101 *et seq.*, as incorporated into these proceedings by PROMESA, defined above.

[2] For the avoidance of doubt, the Tolled Claims include all claims subject of any Tolling Agreement with any entity that provided goods or services to a Title III Debtor, other than Non-Vendors, whether or not such claims are claims for avoidance of transfers.  The Tolled Claims may include additional civil claims, including but not limited to tort and breach of contract claims.

Actions (defined below) after months of extensive investigation and review of the Debtors' pre-petition payment histories.

2.        The Vendor Avoidance Actions do not represent all of the claims investigated and pursued by the Oversight Board and Committee at that time.  Rather, the SCC conducted an extensive outreach program to the parties it viewed as potential Vendor Avoidance Action defendants (collectively, "Vendors"), and offered all an opportunity to toll the statute of limitations of avoidance claims to facilitate informal, out-of-court exchanges of information and resolution of such claims.  In a short span, the SCC negotiated approximately 100 Tolling Agreements. In addition, certain other claims have been brought against, or tolled by agreement with, providers of (i) fuel oil, (ii) financial services, and (iii) goods and professional services related to the foregoing (collectively, "Non-Vendors").[3]

3.        Shortly thereafter, the Court issued the *Order Granting Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, Acting by and Through the Members of the Special Claims Committee and the Official Committee of Unsecured Creditors to (I) Establish Litigation Case Management Procedures and (II) Establish Procedures for Approval of Settlements* [ECF No. 7941] (the "Avoidance Action Procedures Order;" Appendix II thereof, the "Avoidance Action Procedures") for the Vendor Avoidance Actions, which encouraged an out-of-court "Information Exchange" in lieu of formal discovery and litigation. The Oversight Board and Committee have resolved numerous Vendor Avoidance Actions consistent with the Avoidance Action Procedures.  Similarly, the Oversight Board and Committee have worked with the Tolled Parties to conduct the Information Exchange and treat such parties as if the subject claims were governed by the Avoidance Action Procedures.

---

[3]    *See* Adv. Pro. Nos. 19-280, 19-388 (actions against Non-Vendors).  The Oversight Board and Committee do not by this Motion seek relief pertaining to Non-Vendors or any tolling agreements or tolled claims related thereto.

4.     As a result of this process, several dozen Tolling Agreements have been permitted to expire without consideration, where the Information Exchange suggested no liability or collection potential on the part of the Tolled Party.  Approximately twenty-eight (28) Tolling Agreements remain in place with Vendors.[4]

5.     The Oversight Board and the Committee now anticipate that many of the remaining Tolled Parties will agree to resolve the claims subject to the Tolling Agreements for consideration.  The Tolled Claims are principally claims that might otherwise be brought under sections 544, 547 and 548 of the Bankruptcy Code and analogous Puerto Rico law.

6.     The Oversight Board and Committee now request permission to resolve the Tolled Claims through a notice and approval procedure analogous to that permitted under the Avoidance Action Procedures Order.  In sum, the Avoidance Action Procedures Order permits the Oversight Board and Committee to settle claims for a face amount below $10 million without further notice or approval, and claims above such face amount upon negative notice.  While a Tolled Claim by definition does not have a face amount stated in a complaint, the Oversight Board and Committee propose that the same principle apply and thus permit expeditious

---

[4]  A list identifying the Tolling Agreements with Vendors can be made available to the Court upon request.  The identity of tolled parties is confidential pursuant to the *Stipulation and Agreed Order by and Among Financial Oversight and Management Board, its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action* [ECF No. 6524].  Likewise, the Oversight Board and Committee submit that disclosure of such agreements could negatively impact settlement discussions with parties that have, in essence, bargained not to be publicly identified as defendants.  The Oversight Board and the Committee may be parties to additional tolling agreements with Non-Vendors, as to which no relief is sought by this Motion.[5]     All rights and obligations of, and as between, the Oversight Board and the Committee set forth herein shall be subject to the (i) Stipulation And Agreed Order Between Special Claims Committee Of Financial Oversight And Management Board And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Causes Of Action Of Puerto Rico Electric Power Authority, Case No. 17-3283, ECF No. 7749; (ii) Stipulation And Agreed Order By And Among Financial Oversight And Management Board, Its Special Claims Committee, And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Causes Of Action Of Puerto Rico Highways And Transportation Authority And Employees Retirement System Of The Government Of The Commonwealth Of Puerto Rico, Case No. 17-3283, ECF No. 6990; and (iii) Stipulation And Agreed Order By And Among Financial Oversight And Management Board, Its Special Claims Committee, And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Debtor Causes Of Action, Case No. 17-3283, ECF No. 6524.

3

resolution of Tolled Claims with Vendors, with minimal burden upon the Court and parties at interest.

## JURISDICTION, VENUE, AND STATUTORY BASES

7.    The Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA.

8.    Venue is proper pursuant to section 307(a) of PROMESA.

9.    The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 9006 and 9019, each as incorporated by PROMESA and subject to section 305 of PROMESA.

## FACTUAL BACKGROUND

### A. Case Commencement and Investigation.

10.    On May 3, 2017 (the "Commonwealth Petition Date"), the Oversight Board initiated a Title III debt adjustment proceeding on behalf of the Commonwealth of Puerto Rico (the "Commonwealth Title III Case").  On May 21, 2017 (the "ERS and HTA Petition Date"), the Oversight Board initiated a Title III debt adjustment proceedings on behalf of ERS and HTA (respectively, the "ERS Title III Case" and the "HTA Title III Case").  On July 2, 2017 (the "PREPA Petition Date," and together with the Commonwealth Petition Date and the ERS and HTA Petition Date, the "Petition Dates"), the Oversight Board filed a Title III debt adjustment proceeding on behalf of PREPA (the "PREPA Title III Case").

11.    PROMESA empowers the Oversight Board to act as the representative of Puerto Rico, its agencies, and instrumentalities as debtor entities, assuming the role ordinarily granted to a chapter 9 debtor or trustee.  *See* PROMESA §§ 301, 315.  To that end, PROMESA empowers the Oversight Board to pursue avoidance actions under sections 544, 545, 547, 548, and 553 of the Bankruptcy Code.  *See* PROMESA § 301.

4

12.     The Oversight Board retained Brown Rudnick LLP as counsel to the SCC to assist the SCC in the investigation of potential insolvency-related claims, i.e., claims airising under sections 544, 545, 547 and 548 of the Bankruptcy Code and applicable Puerto Rico law. To assist in this investigation, the Oversight Board retained the financial advisory firm DiCicco, Gulman, and Company, to assist Claims Counsel in its investigation (the "Financial Advisor").

13.     To investigate potential Vendor Avoidance Actions that the Title III debtors might hold, the Oversight Board, the Committee, and their respective professionals joined efforts in examining the pre-petition payment histories of the Title III debtors as requested by the Committee in its *Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery of Title III Debtors, Other Than COFINA, Concerning Potential Avoidance Actions*, ECF No. 4373 (the "2004 Examination"), which motion, was granted by this Court in December 2018.  *See Order Granting Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery of Title III Debtors, Other than COFINA, Concerning Potential Avoidance Actions,* ECF No. 4484.

14.     Pursuant to the Court's order, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") produced the 2004 Examination documents to the Oversight Board and the Committee.  The 2004 Examination production documents evidenced thousands of payments made by the Title III debtors to numerous entities, purportedly in exchange for goods and services.

15.     AAFAF produced the 2004 Examination documents and payment histories on a rolling basis from December 2018 to March 2019.  The Oversight Board, the Committee, and their respective professionals conducted an extensive review to determine whether the payments

disclosed therein complied with Puerto Rico law or are otherwise voidable under Puerto Rico law and the Bankruptcy Code.

16.     The investigation suggested that several thousand payments made to hundreds of vendors by the Title III debtors appeared to have been:

  i. Paid in the ninety days preceding the Petition Dates and were not paid in the ordinary course of business, and were thus "preferential" as described in § 547 of the Bankruptcy Code;

  ii. Paid in the absence of a contract that was duly registered with the Commonwealth's Office of the Controller in contravention of 2 L.P.R.A. § 97, thus rendering the payment *per se* recoverable under Puerto Rico law and additionally suggesting the respective Title III debtor did not receive "reasonably equivalent value" for the payment pursuant to §§ 544 and 548 of the Bankruptcy Code and Puerto Rico law; and/or

  iii. Paid in excess of permitted amounts under a registered contract, in contravention of 3 L.P.R.A. § 283h(a), likewise rendering the payment recoverable and suggesting that the respective Title III debtor did not receive "reasonably equivalent value."

17.     Furthermore, the investigation by the Oversight Board, the Committee, and their respective professionals suggests that the payments described above appear to have been made at a time when the Title III debtors were insolvent as that term is defined in the Bankruptcy Code, and accordingly and for other reasons previously disclosed, may be recoverable pursuant to the Bankruptcy Code and Puerto Rico law.

18.     During the course of the investigation and as feasible under the circumstances, the Oversight Board contacted hundreds of potential defendants and proposed that they sign agreements to toll the statute of limitations for the filing of a Vendor Avoidance Action to allow the Oversight Board, the Committee, and each potential defendant to resolve consensually any potential avoidance action.  Ultimately, approximately one hundred Tolling Agreements were executed.

19.    The Oversight Board has the duty to preserve causes of action on behalf of the Title III debtors and, therefore, filed approximately 250 actions (the "Vendor Avoidance Actions") on behalf of the Commonwealth, HTA, PREPA and ERS to date, against defendants who were unable or unwilling to sign tolling agreements by relevant deadlines.  The complaints in the Vendor Avoidance Actions state as a face amount of the claims at issue all or substantially all of the payments received by the defendants during relevant look-back periods.

**B.  Avoidance Actions Procedures Order.**

20.    After the filing of the Vendor Avoidance Actions, the Puerto Rican business community, understandably concerned about the burden that the Vendor Avoidance Actions might cause on their businesses and lives, urged an informal, out-of-court resolution process as the best means to resolve the Vendor Avoidance Actions.  Cognizant of these concerns, the Oversight Board, on May 31, 2019, launched an informal resolution process to resolve the Vendor Avoidance Actions out of court with minimal-to-no court intervention.

21.    On June 7, 2019, the SCC and the Committee filed the *Omnibus Motion by the Financial Oversight and Management Board for Puerto Rico, Acting by and through the Members of the Special Claims Committee, and the Official Committee of Unsecured Creditors to (I) Establish Litigation Case Management Procedures and (II) Establish Procedures for the Approval of Settlements*, ECF No. 7325.  On July 12, 2019, the Court entered the Avoidance Action Procedures Order, which was entered on the docket and served on each defendant in each Vendor Avoidance Action.

22.    In an effort to minimize the burden on this Court's resources and to establish an efficient and effective resolution process, the Avoidance Action Procedures Order, among other things, provides the Oversight Board and the Committee a streamlined process for the execution of Settlement Agreements (as defined below).  In sum, the Order permits that where the face

amount of a claim is below $10 million, the Oversight Board and Committee may resolve the litigation without notice or approval; where the face amount exceeds $10 million, the Oversight Board and Committee must file a notice of settlement, which is approved upon expiration of a 14-day notice period in the absence of objection.  Only if any party in interest objects would the Oversight Board then voluntarily submit the resolution for approval under Rule 9019.

23.     The Avoidance Action Procedures Order does not address the Tolled Claims, in large part because at the time the parties requested entry of the Order, they were unsure whether the claims would ever be pursued, how quickly such claims would be resolved, and what amounts might be sought or received in resolution of the claims, all of which factors implicate the standards for notice of approval of such settlements under applicable law.

**C.  Diligence and Resolutions.**

24.     In the nearly two years since the entry of the Avoidance Action Procedures Order, the Oversight Board and Committee have resolved approximately 180 Vendor Avoidance Actions and 70 Tolling Agreements without litigation.  There now remain approximately seventy (70) Avoidance Actions and twenty-eight (28) Tolled Claims, many of which are expected to be resolved in the coming weeks.  *See* ECF No. 16045 (describing status of Vendor Avoidance Action resolution process and Information Exchange and requesting extension of deadlines).

25.     The remaining Tolled Claims have not been resolved thus far due to, variously and generally, (i) bankruptcy and litigation stays imposed by this Court and others, (ii) ongoing diligence and discussion tied to contingencies affecting the Tolled Parties potential liability, and until relatively recently, (iii) delays caused by natural disasters and COVID-19 implicating the parties' ability to conduct diligence and negotiations.  At this time, however, certain matters largely confined to the latter category have been resolved and the parties are proceeding to

settlement of Tolled Claims largely consisting of Bankruptcy Code section 547 preference claims regarding payments received in denominations well below $10 million.

26.     Additionally, the Oversight Board proposes to transfer (i) the Tolled Claims, (ii) the Oversight Board's rights with respect to the Tolling Agreements, and (iii) the proceeds of any settlements with respect to the Tolled Claims to the "Avoidance Actions Trust" as defined in the Oversight Board's plan of readjustment.

27.     The Avoidance Action Procedures Order provides no guidance with respect to resolution of Tolled Claims.  By its own terms, the Avoidance Action Procedures Order applies only to specified Vendor Avoidance Actions that have been filed; thus, a certain measure of notice is given to all parties in interest in the Title III proceedings by the filing of a complaint. By contrast, Tolled Claims are not similarly disclosed.  Accordingly, the Tolled Claims require a separate notice procedure.  Because the Tolled Claims have not been heretofore disclosed and the Oversight Board and Committee intend to settle certain of the claims in the coming months, they have agreed to voluntarily submit the Tolled Claims and a potential settlement protocol for approval by the Court.

## RELIEF REQUESTED

28.     The Oversight Board and the Committee request that this Court establish guidelines that will govern potential out-of-court resolution of the Tolled Claims (the "Resolution Protocol").

29.     The Oversight Board and the Committee respectfully submit that the Resolution Protocol will allow the parties a cost-effective means to resolve the Tolled Claims, within the Oversight Board's authority under PROMESA and at minimal burden upon this Court and parties in interest.

## PROPOSED PROCEDURES

30.     The Oversight Board and the Committee respectfully request that the Court adopt

and implement the following Resolution Protocol:

i.      *Authority*

    a.   Subject to the standards and procedures set forth below, the Oversight Board
and the Committee may enter into written settlement agreements (the
"Settlement Agreements") with Tolled Parties,[5] which agreements shall be
enforceable and effective as provided below.

ii.     *Mandatory Settlement Standards*

    a.   Any Settlement Agreements executed by the Oversight Board pursuant to the
authority granted in the order approving and implementing the Resolution
Protocol must contain the following provisions (the "Settlement Standards"):

        (a)   The Oversight Board and the Committee will provide general,
mutual releases to each other relating to, or arising out of, the
Tolled Claims.

        (b)   The defendant shall submit to the United States District Court for
the District Court of Puerto Rico's jurisdiction with respect to the
enforcement of the Settlement Agreement.

        (c)   The Settlement Agreement shall be interpreted in accordance with
Puerto Rico law.

        (d)   The Oversight Board and the Committee will have the authority to
settle without further order of the Court any Tolled Claim which
would, in the reasonable judgment of the Oversight Board and the
Committee, as putative co-plaintiffs, have a face amount of ten
million dollars ($10,000,000.00) or less if pursued through an
adversary proceeding.

---

[5] All rights and obligations of, and as between, the Oversight Board and the Committee set forth herein shall be
subject to the (i) Stipulation And Agreed Order Between Special Claims Committee Of Financial Oversight And
Management Board And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Causes Of
Action Of Puerto Rico Electric Power Authority, Case No. 17-3283, ECF No. 7749; (ii) Stipulation And Agreed
Order By And Among Financial Oversight And Management Board, Its Special Claims Committee, And Official
Committee Of Unsecured Creditors Related To Joint Prosecution Of Causes Of Action Of Puerto Rico Highways
And Transportation Authority And Employees Retirement System Of The Government Of The Commonwealth
Of Puerto Rico, Case No. 17-3283, ECF No. 6990; and (iii) Stipulation And Agreed Order By And Among
Financial Oversight And Management Board, Its Special Claims Committee, And Official Committee Of
Unsecured Creditors Related To Joint Prosecution Of Debtor Causes Of Action, Case No. 17-3283, ECF No.
6524.

(e)     Where such face amount of the Tolled Claim, in the reasonable judgment of the Oversight Board and the Committee, would be greater than ten million dollars ($10,000,000.00), the Oversight Board and the Committee will file with this Court in the Commonwealth docket (Case No. 17-03283) a notice of settlement (the "Notice of Settlement") that will disclose the identity of the Tolled Party, the aforementioned face amount of the Tolled Claim, the dollar amount of the settlement, and the deadline for objection to the Notice of Settlement.[6]   If no objection to the Notice of Settlement is filed and served upon the Oversight Board and the Committee within fourteen (14) days after the filing, the Settlement Agreement will automatically become effective and binding on the parties.   If an objection is filed pursuant to the preceding sentence, the Oversight Board and the Committee shall file a response to the objection within fourteen (14) of filing the objection.   Thereafter, the Court shall in its discretion determine if a hearing on the objection is necessary.

(f)     To the extent the Oversight Board, Committee, and defendant, by agreement, choose to mediate a Tolled Claim, they shall be permitted to do so and section C.ii and C.iii.a-b of the Avoidance Actions Procedures Order shall apply to such Tolled Claim with regard to the selection of mediators and conduct of mediation.

## **BASIS FOR RELIEF REQUESTED**

31.     This Court has authority to approve, adopt, and implement the Resolution Protocol pursuant to section 105(a) of the Bankruptcy Code, Rule 9019, and PROMESA Section 305.

32.     Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Federal Rule of Bankruptcy Procedure 9019(b), in turn, provides that "[a]fter a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice."   In order to approve a compromise or settlement under Rule 9019, a court

---

[6]   To the extent there are any confidentiality concerns about a particular Settlement Agreement and applicable Notice of Settlement, the Court will address such concerns in due course.

must find that a trustee's proposed settlement is fair and equitable, reasonable and in the best interest of a debtor's estate. *See In re Yacovi,* 411 F. App'x 342, 347 (1st Cir. 2011); *Protective Comm. for Index. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).[7]  The Oversight Board and Committee are entitled to "a significant range of discretion" in satisfaction of this standard. *In re 110 Beaver St. P'ship*, 355 F. App'x 432, 436 (1st Cir. 2009).

33.     Furthermore, PROMESA endorses the principle that a Title III debtor is afforded discretion in administering its property in a manner that is consistent with PROMESA's objectives. *See* PROMESA § 305 ("Subject to the limitations set forth in subchapters I and II of this chapter, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with . . . (2) any of the property or revenues of the debtor.").

34.     Likewise, section 105(a) of the Bankruptcy Code provides that the "court may issue *any* order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (emphasis added); *see Robbins v. Fulton Bank, N.A.*, CV 17-2763, 2018 WL 1693386, at *6 (E.D. Pa. Apr. 6, 2018) (noting that section 105(a) reiterates court's inherent power to manage litigation); *In re Ballard*, 502 B.R. 311, 322 (Bankr. S.D. Ohio 2013) (noting that through section 105(a) Congress made sure that bankruptcy courts had the

---

[7]  To aid in that determination, courts consider whether the settlement falls below the lowest point in the range of reasonableness. *See Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.),* 656 F.3d 82, 92 (1st Cir. 2011); *In re Servisense.com, Inc*., 382 F.3d 68, 71 (1st Cir. 2004); *Masonic Hall & Asylum v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 2006 U.S. Dist. LEXIS 85691, at *21-22 (S.D.N.Y. Nov. 16, 2006). Courts may consider the following factors in determining whether a settlement falls within the range of reasonableness: (1) likelihood of success in the litigation; (2) the complexity of the litigation and respective expense; (3) difficulty to collect; and (4) the best interest of creditors. *In re Indian Motocycle Co.*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003); *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995)l; *In re Drexel Burnham Lambert Group, Inc*., 960 F.2d 285, 292 (2d Cir. 1992).

tools necessary to manage the litigation before them); *In re Walker,* 195 B.R. 187, 208 (Bankr. D.N.H. 1996) (noting that courts have inherent power to manage pending litigation).

35.     Given this discretion, courts have granted settlement procedures in large volume cases analogous to the Title III cases in breadth and scope. *See Agreed Order (I) Approving Procedures for Settling Certain Claims and Causes of Action Brought by or Against the Debtors, and (II) Granting Related Relief, In re Caesars Entertainment Operating Company, Inc., et al,* Case No. 15-01145 (ABG) (Bankr. N. D. Ill. 2015), ECF No. 996*; In re Nortel Networks Inc.,* Case No. 09-10138, 2011 WL 6013113 (Bankr. D. Del. Oct. 12, 2011)*; Order Pursuant To Section 105(A) Of The Bankruptcy Code And Rules 2002 And 9019 Of The Federal Rules Of Bankruptcy Procedure Granting Authority And Establishing Procedures For Settlement Agreements In Connection With Avoidance Actions Filed By The Trustee, In re Bernard L. Madoff,* Case No. 08-01789 (SMB) (Bankr. S.D.N.Y. 2010), ECF No. 3181.[8]

36.     Here, the Resolution Protocol requested would provide settlement approval to the Oversight Board and Committee in compliance with Rule 9019(b), to a limited extent consistent with the parties' authority as "trustees" within the meanings prescribed by PROMESA and the

---

[8] More generally, courts including this Court have entered similar orders regarding case management, to facilitate administration of large cases or large volumes of avoidance actions, because it is a prudent approach to such litigation. *See* Avoidance Actions Procedures Order; *Order Granting Debtors' Amended Motion For Order Pursuant To Bankruptcy Code Sections 102 And 105, Bankruptcy Rules 1015, 2002, 9007, And 9036, And Local Bankruptcy Rule 2002 Authorizing The Establishment Of Certain Notice, Case Management, And Administrative Procedures, In re SunEdison, Inc.,* Case No. 16-10992 (Bankr. S.D.N.Y. May 20, 2016), ECF 360; *Order (I) Approving Case Management Procedures, (II) Approving The Notice Thereof, and (III) Granting Related Relief, In re Caesars Entertainment Operating Company, Inc., et al,* Case No. 15-01145 (ABG) (Bankr. N. D. Ill. 2015), ECF No. 18; *Order Pursuant To Bankruptcy Code Section 105(A) And Bankruptcy Rule 1015(C) And 9007, Implementing Certain Notice And Case Management Procedures, In re GT Advanced Techs.,* Case No. 14-11916 (Bankr. D. N.H. Oct. 9, 2014), ECF No. 83; *Order Establishing Notice, Service, And Case Management Procedures Pursuant To 11 U.S.C. §§ 102(1)(A) And 105(A) And Bankruptcy Rule 2002(M), In re Jefferson Cty.,* Case No. 11-5736 (Bankr. N.D. Ala. Nov. 11, 2011), ECF No. 89; *See Order Establishing Certain Notice, Case Management, and Administrative Procedures, In re R&G Financial Corp.,* Case No. 10-04124 (Bankr. D.P.R. Nov. 15, 2011), ECF No. 59; *Order (1) Establishing Litigation Case Management Procedures For Avoidance Actions And (2) Amending The February 16, 2010 Protective Order, In re Bernard L. Madoff,* Case No. 08-01789 (SMB) (Bankr. S.D.N.Y. 2010), ECF No. 3141*; Amended Order Establishing Certain Notice, Case Management, And Administrative Procedures, In re UTGR, Inc.,* No. 09-12418, (Bankr. D.R.I. Oct. 06, 2009), ECF No. 337.

Bankruptcy Code and Rules.  The Resolution Protocol will ensure that the Settlement Agreements fall within the range of reasonableness and can be reached with Tolled Parties in an expedient manner without unnecessarily burdening the Court.  The Oversight Board and the Committee will consider all relevant circumstances in deciding whether to enter into any Settlement Agreement, such as: the merit of the would-be defendant's defenses, the role of the Commonwealth in the Oversight Board's and the Committee's inability to verify pre-Petition Dates payments to the defendant, the hardship that litigation may pose on the defendant, and the Oversight Board's likelihood of success at trial.  Particularly given the divergent interests and prerogatives of the Oversight Board and Committee outside of this collaboration—if any interested party were otherwise incentivized to object to settlements of avoidance claims, it would be the Committee—these assessments should be afforded wide discretion.

37.     It would not be efficient for the Oversight Board and the Committee to file a motion every time they negotiate a reasonable Settlement Agreement of a Tolled Claim.  By its nature, a Tolling Agreement permits the putative plaintiff to conduct substantial diligence without filing a complaint, thus reducing the amount of settlement consideration to the approximate value of the claim at issue and reducing the risk of harm to defendants through public allegations of liability.  Fulsome disclosure and presentation of evidence in support of Rule 9019 would thus constitute exactly the labor and potential harm that the Oversight Board and Committee and Tolling Parties sought to avoid by entry into Tolling Agreements.

38.     To minimize disruption to the Tolled Parties' businesses due to inaccurate reporting, the Oversight Board and the Committee believe that the Settlement Agreements should, in the first instance, not be disclosed.  However, where any Settlement Agreement seeks to resolve a Tolled Claim with a face amount in excess of $10 million, the Resolution Protocol

would afford interested parties an opportunity to object, and as necessary, obtain more information about the settlement.

39.     The Oversight Board and the Committee respectfully suggest that the Resolution Protocol is reasonable and appropriate given the parties' authority and obligations under PROMESA and should be approved.

## **NOTICE**

40.     The Oversight Board has provided notice of this Motion to: (i): the Chambers of the Honorable Laura Taylor Swain; (ii) the Chambers of the Honorable Magistrate Judge Judith G. Dein; (iii) the Office of the United States Trustee for Region 21; (iv) AAFAF; (v) counsel for AAFAF; (vi) counsel for the Oversight Board; (vii) Counsel for the Creditors' Committee; (viii) Counsel for the Retiree Committee; (ix) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims in COFINA's Title III case; (x) counsel to any other statutory committee appointed in these Title III Cases; and (xi) the Tolled Parties to whom this Motion and proposed order apply, through their counsel, if known, or through their resident agent or a representative.

WHEREFORE, Movants respectfully request that this Court enter an order substantially in the form attached hereto as Exhibit A granting the relief requested herein and granting Movants such other relief as this court deems just and proper.

Dated: April 9, 2021

Respectfully submitted,

| | |
|---|---|
| */s/ Sunni P. Beville* | */s/ Luc A. Despins* |
| **BROWN RUDNICK LLP** | **PAUL HASTINGS LLP** |
| Sunni P. Beville, Esq. (*Pro Hac Vice*) | Luc A. Despins, Esq. (*Pro Hac Vice*) |
| Tristan G. Axelrod, Esq. (*Pro Hac Vice*) | James R. Bliss, Esq. (*Pro Hac Vice*) |
| One Financial Center | Nicholas A. Bassett, Esq. (*Pro Hac Vice*) |
| Boston, MA 02111 | G. Alexander Bongartz, Esq. (*Pro Hac Vice*) |

15

Tel: (617) 856-8200
sbeville@brownrudnick.com
taxelrod@brownrudnick.com

*Counsel to the Special Claims Committee of the*
*Financial Oversight and Management Board, acting by*
*and through its members*

200 Park Avenue
New York, New York 10166
Telephone: (212)318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured*
*Creditors for all Title III Debtors (other than*
*COFINA) in Certain of the Avoidance Actions*

-and-

-and-

/s/ *Kenneth C. Suria*
**ESTRELLA, LLC**
Kenneth C. Suria (USDC-PR 213302)
Alberto Estrella (USDC-PR 209804)
Carlos Infante, Esq. (USDC-PR 301801)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Special Claims Committee of the*
*Financial Oversight and Management Board, acting by*
*and through its members*

/s/ *John Arrastia*
GENOVESE JOBLOVE & BATTISTA, P.A
John Arrastia, Esq. (*Pro Hac Vice*)
John H. Genovese, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jarrastia@gjb-law.com
jgenovese@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official*
*Committee of Unsecured Creditors for all Title*
*III Debtors (other than COFINA)*

-and-
/s/ *Juan J. Casillas Ayala*
CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq.,
          (USDC-PR 218312)
Israel Fernández Rodriguez, Esq.,
          (USDC-PR 225004)
Juan C. Nieves González, Esq.,
          (USDC-PR 231707)
Cristina B. Fernández Niggemann, Esq.
          (USDC-PR 306008)
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
jfernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

16

*Local Counsel to Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA)*

**<u>EXHIBIT A</u>**

**Proposed Order**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17-BK-3283 (LTS) |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| Debtors.[1] | |

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17-BK- 3567 (LTS) |
| as representative of | |
| THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY, | |
| Debtor. | |

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17-BK-3566 (LTS) |
| as representative of | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO, | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523 (LTS)) (Last Four Digits of Federal Tax ID: 3801).

Debtor.

_____

In re:

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

      as representative of

THE PUERTO RICO ELECTRIC POWER AUTHORITY,

      Debtor.

_____

PROMESA
Title III

Case No. 17 BK 4780-LTS

### ORDER GRANTING MOTION BY THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, ACTING BY AND THROUGH THE MEMBERS OF THE SPECIAL CLAIMS COMMITTEE, AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ESTABLISH PROCEDURES FOR THE APPROVAL OF SETTLEMENTS

Upon the motion dated March 9, 2021 (the "Motion") of the Oversight Board, acting by and through the members of the Special Claims Committee, and the Committee, pursuant to section 105(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 9019 and 9006 made applicable to this proceeding by sections 301(a) and 310 of the Puerto Rico Opportunity Management and Economic Stability Act of 2016 ("PROMESA"), 48 U.S.C. § 2161(a); and the Court having jurisdiction over this matter under 28 U.S.C. 1331, and under section 306(a)-(b) of PROMESA, 48 U.S.C. §2166(a)-(b); and venue being proper under section 307(a) of PROMESA, 48 U.S.C. § 2167(a); and due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and opposition thereto and having heard the statements of counsel at the hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is hereby **ORDERED** that:

1. The relief requested in the Motion is granted as provided herein.

2. For purposes of this Order, the term "Non-Vendor" shall mean any entity that provided either (a) financial services, (b) fuel oil, or (c) goods or laboratory or professional services related to the foregoing.

3. This order shall govern resolution of all claims subject of tolling agreements between the Oversight Board, Committee, and any entity that received payments purportedly in exchange for goods and services provided to a Title III Debtor, other than a Non-Vendor (any such entity, a "Tolled Party" to a "Tolling Agreement" regarding "Tolled Claims").

4. The Resolution Protocol is adopted as below and shall govern the Tolled Claims subject of the Tolling Agreements, as amended or supplemented.

5. The Oversight Board and the Committee are hereby granted authority to enter into Settlement Agreements[2] with the Tolled Parties, and to grant releases to such defendants in connection therewith without further Court approval, subject to the following Resolution Protocol:

    i. *Authority*

        a. Subject to the standards and procedures set forth below, the Oversight Board and the Committee may enter into written settlement agreements (the "Settlement Agreements") with Tolled Parties,[3] which agreements shall be enforceable and effective as provided below.

---

[2] Capitalized terms used herein and not otherwise defined shall have the definitions ascribed to them in the Motion.

[3] All rights and obligations of, and as between, the Oversight Board and the Committee set forth herein shall be subject to the (i) Stipulation And Agreed Order Between Special Claims Committee Of Financial Oversight And Management Board And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Causes Of

ii.     *Mandatory Settlement Standards*

b.   Any Settlement Agreements executed by the Oversight Board pursuant to the authority granted in the order approving and implementing the Resolution Protocol must contain the following provisions (the "Settlement Standards"):

(a)     The Oversight Board and the Committee will provide general, mutual releases to each other relating to, or arising out of, the Tolled Claims.

(b)     The defendant shall submit to the United States District Court for the District Court of Puerto Rico's jurisdiction with respect to the enforcement of the Settlement Agreement.

(c)     The Settlement Agreement shall be interpreted in accordance with Puerto Rico law.

(d)     The Oversight Board and the Committee will have the authority to settle without further order of the Court any Tolled Claim which would, in the reasonable judgment of the Oversight Board and the Committee, as putative co-plaintiffs, have a face amount of ten million dollars ($10,000,000.00) or less if pursued through an adversary proceeding.

(e)     Where such face amount of the Tolled Claim, in the reasonable judgment of the Oversight Board and the Committee, would be greater than ten million dollars ($10,000,000.00), the Oversight Board and the Committee will file with this Court in the Commonwealth docket (Case No. 17-03283) a notice of settlement (the "Notice of Settlement") that will disclose the identity of the Tolled Party, the aforementioned face amount of the Tolled Claim, the dollar amount of the settlement, and the deadline for objection to the Notice of Settlement.[4]   If no objection to the Notice of Settlement is filed and served upon the Oversight Board and the Committee within fourteen (14) days after the filing, the

---

Action Of Puerto Rico Electric Power Authority, Case No. 17-3283, ECF No. 7749; (ii) Stipulation And Agreed Order By And Among Financial Oversight And Management Board, Its Special Claims Committee, And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Causes Of Action Of Puerto Rico Highways And Transportation Authority And Employees Retirement System Of The Government Of The Commonwealth Of Puerto Rico, Case No. 17-3283, ECF No. 6990; and (iii) Stipulation And Agreed Order By And Among Financial Oversight And Management Board, Its Special Claims Committee, And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Debtor Causes Of Action, Case No. 17-3283, ECF No. 6524.

[4] To the extent there are any confidentiality concerns about a particular Settlement Agreement and applicable Notice of Settlement, the Court will address such concerns in due course.

4

Settlement Agreement will automatically become effective and binding on the parties.  If an objection is filed pursuant to the preceding sentence, the Oversight Board and the Committee shall file a response to the objection within fourteen (14) of filing the objection.  Thereafter, the Court shall in its discretion determine if a hearing on the objection is necessary.

(f)      To the extent the Oversight Board, Committee, and defendant, by agreement, choose to mediate a Tolled Claim, they shall be permitted to do so and section C.ii and C.iii.a-b of the Avoidance Actions Procedures Order shall apply to such Tolled Claim with regard to the selection of mediators and conduct of mediation.

6.  The Tolled Parties who enter into Settlement Agreements shall remain subject to this Court's jurisdiction with respect to enforcement of the Settlement Agreement.

7.  This Court shall retain jurisdiction with respect to all matters relating to this the interpretation and implementation of this Order.

Dated: [ ]

_____
Honorable Judith G. Dein
United States Magistrate Judge

63983255 v12