UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

---------------------------------------------------------------x
In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

    Debtor.

PROMESA
Title III

No. 17 BK 4780-LTS

**Court Filing Relates Only to PREPA
and Shall Only be Filed in Case No.
17-BK-4780 (LTS)**

---------------------------------------------------------------x

### LIMITED OBJECTION OF WHITEFISH ENERGY HOLDINGS, LLC TO GOVERNMENT PARTIES' MOTION FOR ORDER ALLOWING ADMINISTRATIVE CLAIMS FOR AMOUNTS TO BE PAID TO LUMA ENERGY BY PREPA DURING INTERIM PERIOD UNDER SUPPLEMENTAL AGREEMENT AND THE T&D CONTRACT

    Whitefish Energy Holdings, LLC ("WEH"), by and through its undersigned counsel,

hereby files this limited objection (the "Objection") to the *Government Parties' Motion for*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801).

4812-9306-5188.1

4812-9306-5188.3

*Order Allowing Administrative Claims for Amounts to be Paid to LUMA Energy by PREPA During Interim Period under Supplemental Agreement and the T&D Contract* (the "LUMA Motion") [Dkt. No. 2417]. WEH respectfully requests that this Court require PREPA to disclose how the new administrative claims proposed to be allowed under the LUMA Motion will impact WEH's administrative claims (as well as other existing administrative claims) and/or provide evidence that existing administrative claimants will be paid in full and not be negatively impacted by the addition of the contemplated amounts to be awarded to LUMA.[2]

## INTRODUCTION

Three and a half years ago, in the immediate aftermath of Hurricanes Maria and Irma, WEH was the first transmission line contractor engaged by PREPA in the field in Puerto Rico, working to repair the island-wide blackout. WEH's work has been praised as the most efficient and cost-effective of any contractor working on the island.[3] However, in the last *39 months*, WEH has not received a single payment from PREPA on account of the over $148 million owed to it.

WEH's swift action and willingness to provide services in Puerto Rico on an emergency basis, coupled with its unique ability to replace *transmission* lines (rather than just distribution lines), in remote areas accessible only by helicopter, provided necessary support to PREPA to help it survive the catastrophic damage of the hurricanes and the long-term disrepair of the

---

[2] WEH also filed an objection to PREPA's prior motion to allow certain administrative claims for LUMA for Front-End Transition Services. See Limited Objection of Whitefish Energy Holdings, LLC to PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services under Puerto Rico Transmission and Distribution System Operating and Maintenance Agreement with LUMA Energy (the "First Objection to LUMA Administrative Claim") [Dkt. No. 2138]. This document was filed under seal, but was later unsealed by the Court.

[3] *See, e.g.*, "How the US Turned Hurricane Maria from a Natural Disaster to a Manmade Tragedy, September 21, 2018"; available at: https://www.cnn.com/2018/09/21/us/puerto-rico-hurricane-maria-natural-disaster-human-catastrophe-weir/index.html ("Before leaving the island, the fired Whitefish Energy crews managed to repair five transmission lines faster and cheaper than other contractors, PREPA records show, and were given a 'favorable review' by FEMA's Inspector General and PREPA's new chief, José Ortiz.")

island's power grid. WEH repaired the five (5) transmission line segments assigned by PREPA to WEH in less than two months. <u>These were the most critical transmission lines that facilitated the restoration of power to hospitals, industry, and the City of San Juan.</u>

It is therefore indisputable that the actions of WEH preserved the Debtor's assets and maintained its ability to function as a going concern. However, PREPA still owes WEH in excess of $148 million on an administrative basis by PREPA. It has not received a single payment in over 39 months, causing significant financial strain. Through the LUMA Motion, PREPA seeks approval of many millions of dollars of administrative claims in addition to the millions LUMA has already received on an administrative basis, with no plan to pay its *other* administrative creditors, and no plan of adjustment on the horizon.

WEH is extremely concerned that the addition of significant new administrative claims to the already hundreds of millions of dollars of administrative claims will impact PREPA's ability to pay its current administrative claimants in full at the time of plan confirmation.[4] PREPA should be required to provide evidence to the Court that the addition of these new administrative claims will not jeopardize their ability to pay all of the outstanding administrative claims as part of any contemplated plan of adjustment.

## STATEMENT OF FACTS

*a. WEH's Administrative Claim*

1. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") filed a voluntary petition for relief pursuant to PROMESA section

---

[4] PREPA's long-delayed but still-pending motion for a settlement with its bondholder creditors (the "9019 Motion") also seeks to add many millions of dollars in administrative claims. WEH also filed a limited objection to the 9019 Motion [Dkt. No. 8730].

4812-9306-5188.3

304(a) (the "Title III Case"). Following this, the Oversight Board filed Title III cases for various entities, including the Puerto Rico Electric Power Authority ("PREPA") on July 2, 2017.

2. On September 26, 2017, after Puerto Rico was struck by two hurricanes, which severely damaged its electric grid, PREPA entered into a contract with WEH for the repair of the electrical system main structures (the backbone of the system) composed of approximately 200 miles of transmission lines and towers, many of which were located in the mountainous region of Puerto Rico's rugged interior (the "WEH Contract"). PREPA understood that the WEH team had the necessary experience to repair the 230kV transmission lines in remote areas with no access roads.

3. The WEH Contract, as amended, had a ceiling value of $300 million. The WEH Contract obligated PREPA to pay WEH for work PREPA asked it to perform and which work was actually performed on a time-and-materials basis.

4. On October 31, 2017, PREPA terminated the WEH Contract, effective November 30, 2017. The termination was unrelated to WEH's performance under the WEH Contract. In fact, the Office of the Comptroller General of the Commonwealth of Puerto Rico audited the WEH Contract and found no improprieties.

5. Prior to the November 30, 2017 termination date, WEH completed all of the work that had been requested by PREPA including, *inter alia*, the repair of the five (5) transmission line segments assigned by PREPA to WEH, which constitute part of the backbone of the transmission system in the area.[5]

6. More specifically, WEH completed the following:

---

[5] The chart detailing the restoration of transmission lines is part of PREPA's September 24, 2018 Disclosures to bondholders and other parties in this case (the "Disclosures"), on page 12. The Disclosure from September 24, 2018 can be found here: https://emma.msrb.org/ES1200256-ES937715-ES1338535.pdf.

4812-9306-5188.3

(a) The sum of the Whitefish Energy work covered more than 200 miles of transmission lines. In most areas, Whitefish Energy crews cleared the right-of-ways to reach structures and lines before damage assessment and work could even begin. That preliminary work also involved clearing access roads and helicopter staging areas so that repair equipment and manpower could be transported to repair sites;

(b) Over the course of that 200 miles of transmission line repair work, teams replaced over 50 towers, dismantled a like number of towers and inventoried parts for salvage and reuse, replaced structures, and completed corrective action on at least 200 other transmission structures; and

(c) Whitefish Energy also repaired over 200 miles of critical distribution line infrastructure. Restoring electricity to major residential and industrial areas was PREPA's top priority. Whitefish Energy restored the first electricity to San Juan, Caguas, Manati and Juncos customers. In doing so, Whitefish Energy replaced and repaired several hundred poles and re-wired critical distribution lines.

7. WEH submitted invoices to PREPA for work performed and for mobilization and demobilization costs totaling approximately $144 million, which includes amounts owed for work performed by WEH and its subcontractors.

8. As of the date of this Motion, WEH and its subcontractors are still owed $107,496,993.48 (the "Remaining Invoice Amounts")[6], exclusive of interest and fees, which continue to accrue under the WEH Contract. In its most recent event-based disclosure dated March 16, 2021, PREPA states that $105.2 million is owed to WEH on Page 11 (WEH believes the newly-submitted invoices largely account for this difference).[7] Therefore, there is no material dispute about the amount owed and herein claimed.

---

[6] The Remaining Invoice Amounts are subject to further reconciliation by PREPA and WEH. At this time, WEH understands that a small portion of its invoices are still being reconciled. In addition, on March 1, 2021, WEH submitted approximately $1.1 million to PREPA for additional cargo charges that were found as part of WEH's response to FEMA inquiries, increasing the Remaining Invoice Amounts.

[7] The March 16, 2021 Event-Based Disclosure is located at https://emma.msrb.org/P21446011-P21122544-P21534089.pdf.

5

4812-9306-5188.3

9. The federal government has authorized 100% federal cost share for emergency protective measures, including direct federal assistance, for 180 days from the start of the declaration on September 17, 2017.[8] All of the work performed by WEH and its subcontractors was performed within this 180-day period.

10. The WEH Contract acknowledged that, starting on October 25, 2017, Federal Emergency Management Agency ("FEMA") financial assistance will be used to fund the WEH Contract. Notwithstanding the foregoing, the WEH Contract provides, "Any failure to secure approvals or funding from FEMA or some other source . . . shall not relieve PREPA from its obligations for payment under this Contract."[9]

11. PREPA prepared the contract analysis, cost reasonableness analysis, and invoices that are required to seek reimbursement from FEMA for the work performed by WEH (collectively, the "FEMA Documentation").

12. WEH promptly and diligently responded to PREPA's requests for information and documentation to support PREPA's efforts in compiling the FEMA Documentation.

13. As reflected in PREPA's September 24, 2018 Weekly Disclosure, on June 29, 2018, PREPA submitted the FEMA Documentation to the Governor's Authorized Representative ("GAR") for review.

14. The GAR submitted the FEMA Documentation to FEMA on or about August 24, 2018, which is confirmed by the movement of the WEH Project Worksheet from the "pending" to the "submitted" portion of the chart in the August 24, 2018 Disclosure. PREPA then re-submitted the FEMA Documentation to FEMA on or about November 27, 2018, as indicated in

---

[8] https://www.fema.gov/news-release/2017/09/26/president-donald-j-trump-amends-puerto-rico-declaration

[9] The WEH Contract is in the possession of PREPA and is not attached hereto, but WEH will provide a copy to the Court upon request.

6

4812-9306-5188.3

PREPA's December 5, 2018 Disclosure.[10] PREPA's Disclosures, including its most recent Disclosure as of the date of this filing,[11] all reflect that the FEMA Documentation supported a request for reimbursement of $144.4[12] million (this amount includes the funds previously paid to WEH in 2017, which are to be reimbursed to PREPA by FEMA). This submission to FEMA by PREPA constitutes an admission by PREPA of what is an accurate statement of fact and a correct statement of the law (with the evidentiary quality of an admission) – that WEH performed the work and is owed payment pursuant to the WEH Contract, as supported by the FEMA Documentation.

15. FEMA has not yet responded to PREPA's submission. As a result, WEH does not have an estimated deadline for FEMA's review of PREPA's submission for WEH's work.

16. On July 27, 2020, the Office of Inspector General for the Department of Homeland Security issued a report (the OIG Report") finding that "PREPA complied with Federal procurement requirements for its noncompetitive procurement of the Whitefish contract."[13] OIG Report, p. 4. The OIG Report also noted that FEMA has not issued any PA Grants for WEH's work but has been reviewing information regarding it since November 2018. *Id*. at p. 7.

17. As reflected in PREPA's prior Weekly Disclosures and other disclosures, PREPA paid WEH $36.9 million, with the last payment received in *December 2017*. However, WEH is still owed the Remaining Invoice Amounts, plus finance charges, which continue to accrue in accordance with the WEH Contract at a rate of 1% per month for all overdue invoices (the "Finance Charges").

---

[10] https://emma.msrb.org/ES1221958-ES954127-ES1355088.pdf.
[11] https://emma.msrb.org/SS1370527-SS1067513-SS1474133.pdf.
[12] This includes the $1.1 million submitted in March 2021.
[13] https://www.oig.dhs.gov/sites/default/files/assets/2020-07/OIG-20-57-Jul20.pdf

4812-9306-5188.3

18. As of March 15, 2021, the Finance Charges totaled $41,010,389.86. The total amount of the administrative claim as of this date is $148,507,383.34, including $107,496,993.48 of unpaid invoices, and the Finance Charges as of March 15, 2021, plus additional Finance Charges accruing at a rate of 1% per month on all overdue invoices until the date WEH receives payment in full, as agreed under the terms and conditions of the agreement.

19. In sum, PREPA has failed to pay WEH over $100 million for post-petition work that no one disputes was performed and performed well, and was necessary to the continued operation of PREPA. In addition, since December 2017, the Finance Charges have been accruing at a rate of $1 million per month, bringing the total claim as of March 15, 2021 to $148,507,383.34.

20. On October 30, 2020, due to PREPA's ongoing refusal to pay any of the outstanding amounts, or even discuss WEH's claims in a meaningful manner, WEH filed its Motion of Allowance of Administrative Claim (the "Administrative Claim Motion") [Dkt. No. 2281], seeking an allowed administrative claim for the Remaining Invoice Amounts and the Finance Charges incurred through the date of payment of the claim.

21. Since WEH filed its Administrative Claim Motion, PREPA and WEH have had substantive discussions regarding WEH's administrative claim. Currently, the parties have stipulated to an extension of time for PREPA to respond to the Administrative Claim Motion, and such response is currently due on April 22, 2021.

*b. The Proposed Administrative Claims to LUMA Energy*

22. On March 26, 2021, PREPA filed the LUMA Motion, seeking this Court's approval to allow and pay LUMA Energy ("LUMA") an administrative claim of up to $230 million, not including currently unknown indemnity claims for which it also seeks allowance on

an administrative basis. Previously, this Court approved PREPA's motion to pay LUMA certain administrative expenses for front-end transition services of approximately $77 million. *See Memorandum Opinion Granting in Part and Denying in Part PREPA's Motion for Entry of an Order Allowing Administrative Expense Claim for Compensation for Front-End Transition Services Under Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement with LUMA Energy* (the "Front-End Administrative Expense Opinion") [Dkt. No. 2258].

### c. PREPA's Current Financial Situation and Status of a Plan of Adjustment

23. PREPA filed its most recent status report on March 10, 2021. *See Status Report of the Government Parties Regarding the COVID-19 Pandemic and the 9019 Motion* (the "COVID-19 Status Report") [Dkt. No. 2394]. Given the ongoing nature of the COVID-19 Pandemic, which has mitigated somewhat, the new Governor and Legislature being sworn in in January 2021, and the Commonwealth's effort to revise its own Plan of Adjustment, it appears that there are still ongoing negotiations with various parties to the 9019 Motion. The COVID-19 Status Report does not contain any information as to when PREPA expects to file its Plan of Adjustment, and therefore this case is likely to remain open for some time, while administrative expenses increase.

### **LIMITED OBJECTION**

24. Generally, WEH does not oppose the Motion or PREPA's goal of transforming the energy delivery system for Puerto Rico. In fact, WEH does not oppose PREPA incurring further administrative claims. However, there are significant risks to existing administrative claimants when PREPA takes on an additional $230 million of administrative claims (not including any indemnity claims) with no plan to satisfy the currently outstanding ones. WEH

continues to believe that the Court should take these other claimants into consideration when it evaluates the LUMA Motion.

25. PREPA's uncertain ability to provide payment in full to all administrative claimants is the basis for WEH's limited objection. Such uncertainty is caused by PREPA's failure to disclose to the Court and the creditors the relevant information regarding its ability to submit a confirmable Plan of Adjustment, which requires full payment to all administrative claimants, and a reasonable timeframe for the payment of these administrative expenses.

26. WEH holds one of the largest administrative claims in this case. As of the filing of this Limited Objection, PREPA owes WEH *over $148 million* in unpaid administrative claims. WEH has not received any payment on account of its administrative claims in *over 39 months*, despite repeated requests to PREPA.

27. PREPA argues that LUMA should be entitled to an administrative claim because it requires such assurances before providing necessary services to PREPA, in light of PREPA's financial condition. LUMA Motion, ¶¶ 42-43. WEH does not disagree. However, WEH (and other administrative creditors) have already provided PREPA with urgently needed services in the aftermath of two devastating natural disasters, even as PREPA was in bankruptcy. Rather than come to Court to advocate for the allowance and payment of WEH's administrative claims (or any other administrative claimants), PREPA has ignored WEH, only responding to WEH's repeated requests for information once WEH filed its Administrative Claim Motion. However, it has come to this Court twice in the past year to request over $300 million for LUMA on an administrative basis. PREPA relies on equitable arguments to support the payments it proposes to make to LUMA. Equity in the context of the case at hand would include payment to administrative priority creditors, such as WEH, as well.

10

28. PROMESA requires full payment of administrative claims in order to confirm a plan of adjustment. 48 U.S.C. § 2174(b)(4). However, the status of PREPA's negotiations with its bondholders, as outlined in its March 10, 2021 status report, is currently ongoing and there is no proposed timeline for filing a Plan of Adjustment. It is inequitable for PREPA to continue to accrue millions of dollars of administrative claims when there is no current plan to pay those amounts, and it does not appear PREPA will make any effort to pay them in the near term (other than LUMA's claims apparently). It is particularly painful for smaller companies, such as WEH, who provided emergency services to PREPA when no one else would. However, the addition of significant new administrative claims may result in PREPA's inability to pay all of these claims in full at the end of the case. WEH and other pre-existing administrative creditors are being asked to bear the risk of this uncertainty. The $230 million requested in the LUMA Motion only exacerbates this concern.

29. It is not yet clear what the impact of an additional $230 million of administrative claims will have on PREPA's ability to pay its existing outstanding administrative claims (in addition to the $77 million already approved for LUMA on an administrative basis). What is clear, however, is that PREPA's financial condition, credit, and its ability to exit this Title III proceeding has been of significant concern to LUMA. PREPA and the Oversight Board are required to seek administrative expense priority for these expenses in order for LUMA to perform its obligations under the contract. LUMA Motion, ¶45.

30. During negotiations with LUMA, PREPA and the Oversight Board, at a minimum, must have i) discussed and communicated about these issues internally, ii) communicated with LUMA regarding these issues, and iii) ultimately arrived at a mix of contract provisions and administrative claim treatment that satisfied LUMA's concerns, including the

11

4812-9306-5188.3

requirement to seek administrative priority for such amounts as detailed in the LUMA Motion. WEH's concerns were likely addressed in these deliberations, particularly because full payment of administrative claims is a prerequisite for a confirmed plan of adjustment (and an exit from Title III). PREPA and the Oversight Board should provide the same information to the Court so that it can evaluate the propriety of allowing additional administrative claims for LUMA against the backdrop of these other concerns. In addition, the Court should consider the equities of the situation, including the effect of further administrative claims on currently unpaid administrative claimants when there is no plan of adjustment on the horizon.

## CONCLUSION

As set forth above, WEH respectfully requests that this Court consider the effect of the relief sought through the LUMA Motion on existing administrative claimants, in light of PREPA's current financial situation and the lack of a timeline for a proposed plan of adjustment, and craft relief that addresses the equities as they concern such claimants. WEH reserves the right to further object to the relief sought in the Motion as additional evidence develops.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 12th day of April 2021.

**I HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the participants appearing in said record including the US Trustee, counsel for AAFAF, counsel for the Oversight Board, Counsel for the Creditor's Committee, and Counsel for the Retiree Committee.

Respectfully submitted,

*/s/ Michael J. Small*

4812-9306-5188.3

Michael J. Small (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street
Suite 3000
Chicago, IL 60654-4762
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
msmall@foley.com

Tamar N. Dolcourt (*pro hac vice*)
FOLEY & LARDNER LLP
500 Woodward Ave., Suite 2700
Detroit, MI 48226
Telephone (313) 234-7100
Facsimile (313) 234-2800
tdolcourt@foley.com
*Counsel for WEH*

and

**C. CONDE & ASSOC.**
*/s/Carmen D. Conde Torres*
Carmen D. Conde Torres, Esq.
USDC 207312
*/s/Luisa S. Valle Castro*
Luisa S. Valle Castro, Esq.
USDC No. 215611
254 San José Street, 5th Floor
Old San Juan, Puerto Rico 00901
Telephone: 787-729-2900
Facsimile: 787-729-2203
E-Mail: condecarmen@condelaw.com
    ls.valle@condelaw.com
*Counsel for WEH*

13

4812-9306-5188.3