**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>                      Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                      Debtor. | PROMESA<br>Title III<br><br>Case No. 17 BK 4780-LTS |

**DECLARATION OF MR. HÉCTOR ROSARIO-HERNÁNDEZ IN SUPPORT OF SREAEE' OBJECTION TO THE GOVERNMENT PARTIES' MOTION FOR ORDER ALLOWING ADMINISTRATIVE EXPENSE CLAIM FOR AMOUNTS TO BE PAID TO LUMA ENERGY BY PREPA DURING INTERIM PERIOD UNDER SUPPLEMENTAL AGREEMENT AND THE T&D CONTRACT**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**I, HÉCTOR ROSARIO-HERNÁNDEZ, PURSUANT TO 28 U.S.C. §1746, DECLARE AND STATE AS FOLLOWS:**

**I. What is the subject of your testimony?**

1. My testimony is in support of *SREAEE's Objection to the Government Parties' Motion for Order Allowing Administrative Expense Claim for Amounts to be Paid to Luma Energy by PREPA During Interim Period Under Supplemental Agreement and the T&D Contract*.

**II. What is you background?[2]**

2. My name is Héctor Rosario-Hernández, a certified public accountant (CPA), former Executive Director of the Puerto Rico Electric Power Authority ("PREPA"). I was PREPA's Chief Executive Officer ("CEO") from 2001 through 2005. As PREPA's CEO, I administrated the daily operations of the public corporation, an annual operational and capital improvements budget of over $3.5 billion and $400 million, respectively. Also, among many other duties, I was responsible for the decision making in all policy issues regarding capital improvement programs. From 1991 through 2001 I was PREPA's Treasurer. In such position, my responsibilities included directing all work related to investing and disbursement of PREPA funds. Additionally, I supervised the bond issuance process, made recommendations to PREPA's CEO and Governing Board on financing regulations. Likewise, I prepared cashflow projections, and coordinated the financing of $8 billion for the Capital Improvements Program, PREPA's Capacity Expansion Plan, the Transmission and Distribution Budget, and other administrative areas. Moreover, I was part of PREPA's team in charge of negotiating two power purchase agreements. From 1988 through 1991, I worked as PREPA's Auxiliary Treasurer, where I performed all the duties of the Treasurer. From

---

[2] Attached please find my Resume as Exhibit 1.

1972 -1987, I worked as PREPA's Supervisor on the Funds Management and Investing Department, Funds Disbursement Division, Customer Service, Bank Conciliation Unit, and as Cost Accountant III.

3. I worked as the Financial Advisor to the Mayor of the Municipality of Humacao during 1989 to restructure the municipality's debt and prepare the balanced budget for fiscal year 1989-1990.

4. I worked as a Municipal Legislator in the Municipality of Humacao from 1988 through 1994.

5. Additionally, from 2001 through 2005, I was member of the following Boards and Commissions: President of PREPA's Retirement System Board, Board of Directors of the Puerto Rico Aqueduct and Sewer Authority (PRASA), Port of Mayagüez Commission, President of *Comité de Supervisión y Evaluación del Programa de Inspección de Represas y Embalses* (Supervision and Evaluation Committee for the Inspection Program of Dams and Reservoirs)*,* Large Public Power Council, American Public Power Association's Board of Directors, and Palmas del Mar Utilities, Inc.

6. Furthermore, I workers as Treasurer of the Association of Financial Professionals, and member of *Colegio de Contadores Públicos Autorizados de Puerto Rico*.

7. Currently, I work as a consultant and advisor for public and private corporations in Puerto Rico and the Dominican Republic regarding strategic planning, finance and investing, power generation, and government and public affairs. Also, I have worked as a consultant for the negotiation of Power Purchase Agreements and Solar Projects.

**III.     How will the *Puerto Rico Transmission and Distribution System Operation and Maintenance Agreement* ("T&D Contract") impact PREPA's financials?**

8. The T&D Contract has a duration of 15 years and includes certain services fees that must be paid by PREPA to LUMA Energy, LLC and LUMA Energy ServCo, LLC (together as "LUMA Energy"), plus 1 one more year for the Front-End Transition period. These are:

    a. Annual fixed fee that fluctuates from $70 to $100 million during the first three years, and $105 million from the fourth year onwards, plus inflation adjustments. (T&D Contract § 7.1)

    b. Incentive fee for execution that fluctuates from $13 million to $17 million during the first three years, and $20 million from the fourth year onwards, plus inflation adjustments. (T&D Contract §7.1(c)(i)). Nonetheless, the T&D Contract does not provide for the imposition of penalties on LUMA Energy if it the expected metrics do not get accomplish for LUMA Energy's lack of execution.

    c. Reimbursement for the expenses incurred by LUMA Energy when complying with its contractual duties and obligations, including entertainment expenses. (T&D Contract §7.2). Between June 22, 2020 and January 31, 2021, LUMA Energy has claimed $52,346,102 in reimbursement for its expenses, in addition to the $36.5 millions for the fixed fee. This amounts for a total of $88,846,102 in only seven months. These expenses have been paid by PREPA without knowing the breakdown of them and the appropriate supporting documents. This can have implications upon bad use of public funds.

9. According to the 2020 Fiscal Plan for the Puerto Rico Electric Power Authority ("PREPA's Fiscal Plan"), as certified by the Financial Oversight and Management Board for Puerto Rico

("FOMB") on June 29, 2020,[3] it is projected that by June 2021, PREPA will have deficit of $132 million. This deficit is due to the Front-End transition fee to LUMA Energy.

10. Moreover, the accumulated deficit for the first six months of Fiscal Year ("FY") 2020-2021 ascends to $432.8 million.[4] This contrasts the original budgeted loss for FY 2020-2021 of $125,663,000, according to PREPA's Budget for such FY, as certified by the FOMB.[5] This means that up until January 2021, PREPA's deficit is 3.44 times higher than the certified budget for FY 2020-2021.

11. In fact, the FOMB filed a report before the Municipal Securities Rulemaking Board, on January 19, 2020[6], and established that PREPA will require a loan of more than $894 million to cover the deficiencies generated by the T&D Contract. This means that PREPA will have to get more indebted.

12. Additionally, according to PREPA's Fiscal Plan, PREPA diverted $153 million from its budget to guarantee payment to LUMA Energy.[7] These funds were destined to vegetation control and necessary maintenance expenses. Thus, leaving the electrical system more fragile to confront natural disasters.

13. The Public Partnership Committee's Report indicated that the present value of the fixed fee and the incentive fee of the T&D Contract in the term of fifteen years is $1,350 million (an absolute value of $1,940 million including the transition year, but without considering

---

[3] 2020 Fiscal Plan for the Puerto Rico Electric Power Authority ("PREPA's Fiscal Plan"), as certified by the Financial Oversight and Management Board for Puerto Rico on June 29, 2020 Available at: https://drive.google.com/file/d/1paRgy0dJBkUH4-5eev7z2SuR0diil8g9/view (last visit: April 9, 2021).

[4] Puerto Rico Electric Power Authority Fiscal Yar 2021 Certfied Budget. Available at https://drive.google.com/file/d/1yIV664F009bi3UeE9WBHi3J6U6r42tFQ/view (Last visit: April 9, 2021).

[5] Puerto Rico Electric Power Authority Fiscal Yar 2021 Certified Budget. Available at https://drive.google.com/file/d/1yIV664F009bi3UeE9WBHi3J6U6r42tFQ/view (Last visit: April 9, 2021).

[6] FOMB's CREDITOR MEDIATION CASH SUPPORT MATERIALS PRESENTATION at 3, 24 (December 17, 2020)(*available at* https://emma.msrb.org/P11450397-P11124337-P11535399.pdf) (last visit: April 10, 2021).

[7] PREPA's Fiscal Plan at 10.

inflation). Therefore, the saving's value of the T&D Contract has to be higher for the transaction to be beneficial for Puerto Rico. Considering the current deficit of PREPA, these fees could aggravate PREPA's financials and as a natural consequence, the Government of Puerto Rico.

14. According to the Puerto Rico Fiscal Agency and Financial Advisor Authority ("AAFAF") and the FOMB's projections, the T&D Contract's alleged savings will not overcome the additional costs to operate PREPA until the year of 2025. Of course, this is in an ideal scenario.[8]

15. These projections tend to be too optimists and fail by not including a sensitivity analysis to manage the uncertainty of important variables, such as the cost of fuel. In a realistic scenario, the situation could be negative. Anyway, to cover PREPA's deficit, the rates would have to be revised immediately.

16. The T&D Contract also establishes that PREPA will have to pay a series of expenses that are considered Pass-Through Expenditures. These expenses significantly increase the payments that PREPA must make to LUMA Energy.

17. Other costs related to the T&D Contract are those incurred by the Public-Private Alliance Authority ("P3") to administer such contract, since it would have to contract numerous advisors. It is worth mentioning that these advisors will be paid by PREPA, from the revenues obtained by its ratepayers.

18. As previously explained, the T&D Contract provides for the payment to LUMA Energy of an Incentive Fee, that can be up to $20 million annually if the expected performance metrics for a particular year are achieved. However, it does not provide that LUMA Energy has to pay

---

[8] FOMB's CREDITOR MEDIATION CASH SUPPORT MATERIALS PRESENTATION at 23 (December 17, 2020) (*available at* https://emma.msrb.org/P11450397-P11124337-P11535399.pdf) (last visit: April 10, 2021).

for penalties if the expected metrics are not achieved, unless they meet three Key Metrics for three or more consecutive years, where the T&D Contract could be terminated if the breach is for LUMA Energy's failure. This is a weak penalty to demand better performance of LUMA Energy. Moreover, three years of underperformance is too onerous for Puerto Rico.

19. The selection of the baseline metrics is of utmost importance since, according to the PREPA's Fiscal Plan, it was disclosed that in 2020 the de-pegging and maintenance of the electric system was abandoned to create a false surplus of $153 million that would be used for the payment of the LUMA Contract.

**IV.  What will be the impact of the T&D Contract upon PREPA's rate payers?**

20. Considering the Restructuring Support Agreement ("RSA") and the T&D Contract's cost to PREPA, the price of energy will be significantly higher.

21. The RSA contemplates a transition charge that will be added to the electric service rates and will be increasing for 24 years. According to the RSA, the transition charge will star at 2.768 cents per kWh and will increase up to 4.552 cents per kWh.

22. According to a calculation that we have made, the operational deficit of FY 2021 could mean an increase of 3 cents kWh in the cost of energy. Eventually, there will be an increase of up to 4.552 cents kWh that correspond to the RSA. If these fees are added to the 18.13 cents per kWh for the current cost of energy, plus 1 cent for PREPA's debt with its Retirement System, it will amount for 26.68 cents per kWh. This calculation does not consider the possible increases in the cost of fuel. This means, that energy costs could increase for 48%. Of course, this increase will be higher since PREPA needs a loan of $894 million to execute the T&D Contract, which will have to be repaid with interests. According to Institute for Energy Economics and Financials Analysis ("IEEFA"), the repayment of the $894 million will cost

around $60 million during the fifteen years of the T&D Contract.[9] This cost does not include the interests of the $894 million. Therefore, the amount of $60 million is going to be higher.

23. The IEEFA has indicated that it is probable that the T&D Contracts pushes the cost of energy up to 30 cents per kWh, due to the additional costs of the service debt, the price of fuel, public sponsorship, and bad negotiation.[10]

24. The increase in energy costs will affect PREPA's rate payers. Thus, it will impact energy consumption, which will decrease PREPA's revenues.

**V.     What conflicts of interests are present in the T&D Contract?**

25. LUMA Energy is not required to invest money into PREPA. However, LUMA Energy will analyze and make projections to determine the necessity of projects of capital improvements, including Generated Related Services, the Shared Services Agreement, and the need of PREPA to formalize new generation or energy purchase agreements. *See* T&D Contract §§5.3(d), 5.5.

26. These projects, as well as the projects that will be funded by federal funds, can be awarded by LUMA Energy's affiliates, subsidiaries, or parent companies. Similarly, one of LUMA Energy's parent companies, subsidiary, or affiliated could develop one of the projects of the new generation plants. This creates a potential conflict of interests in awarding the contract, as well as the moment of selecting the generation that will be dispatched to the Transmission and Distribution System in the Energy Control Center.

---

[9] IEEFA: Savings from Puerto Rico grid privatization off to a bad start, April 8, 2021. (Available at: https://ieefa.org/ieefa-savings-from-puerto-rico-grid-privatization-off-to-a-bad-start/) (Last visit: April 10, 2021).

[10] Tom Sanzillo, Contract Between Puerto Rico, LUMA Energy Sets up Full Privatization, Higher Rates for Island Grid, October 2020 (available at: https://ieefa.org/wp-content/uploads/2020/10/Contract-with-LUMA-Energy-Sets-up-Full-Privatization_Higher-Rates_October-2020.pdf) (last visit: April 9, 2021).

27. The conflict of interest is even higher if it is considered that the T&D Contract transfer to LUMA Energy the administration of the Energy Control Center. According to Law 57-2014, the Energy Control Center must be an independent and autonomous entity.

28. LUMA Energy has the duties of dispatch and programming of the generation assets that are available. Also, it has the duty of coordinating the demand and production of energy with independent producers and GenCo. These functions entail a future conflict of interest, since LUMA would be acting as an Independent System Operator (ISO), as described in laws 57-2014 and 17-2019, without being one.

29. Nonetheless, LUMA Energy cannot be an ISO due to the own generation assets that can be managed, dispatched and programed by LUMA Energy. Any subsidiary or affiliate of LUMA, Quanta Services or Canadian Utilities (ATCO) could eventually become a generator of electricity, interfering with LUMA's objectivity in performing economic dispatch. Objectivity in dispatching and prioritization could be compromised, preventing the most economic and/or secure dispatches from being developed, which may result in high energy costs and situations where reliable operation of the electric system is at risk. Current and future contract negotiations for energy supply could be compromised when an entity that manages assets and competes with independent producers sits down with them to negotiate the purchase of energy.

30. The function of administrating PREPA's generation assets, is subject to an agreement that has not yet been published and that will represent an additional cost to be paid to LUMA, which may also result in a rate increase. This is included in Section 4.5 of the T&D Contract.

**VI.     How does the T&D Contract dismantle PREPA?**

31. The T&D Contract establish that LUMA Energy will be designated as an agent of PREPA. This means that it will manage all the capital improvements, no matter if they are financed with federal funds or other funds. T&D Contract §5.2(b)(c)).

32. It is worth mentioning that under the T&D Contract, PREPA remains as the owner of the T&D System, because if otherwise, it will lose access to FEMA funds to reconstruct the grid in case of natural disasters. Therefore, it is expected that PREPA' top management officials will remain but without any decisional power, in violation to Act 83-1941. Also, these top management officials, including PREPA's Governing Board, will be receiving high compensations, but will not make any decision regarding the T&D Contract and the administration of the electric system. As a matter of fact, under the T&D Contract LUMA Energy will be entity responsible for implementing the public policy on energy. All of this, to keep receiving funds of FEMA. This raises doubt of whether this is legal under the Stafford Act, FEMA's organic law.

33. Section 406 of the Stafford Act establishes that FEMA's funds are destined to governmental entities or non-profit organizations that lend essential services to a public entity.

34. The T&D Contract gives LUMA Energy the responsibility of establishing plans, public policy, rates, assets administration, budget, auctions adjudication, public relations, and other financial matters. All these responsibilities lead to the conclusion that LUMA Energy is not an administrator. Rather, it is a for-profit corporation that has placed in PREPA's former positions, through the public corporation's dismantling. This represents a risk for the Government of Puerto Rico of losing FEMA funds.

**VII. What could happen in the event of a natural disaster or emergency?**

35. The T&D Contract provides different instances in which LUMA Energy can unilaterally terminate it. T&D Contract §14.5. One of these circumstances establish that LUMA Energy can unilaterally terminate the T&D Contract in the case that a *Force Majeure Event* continues for a period in excess of 18 months and materially interfered with, delays, or increases the cost of the Front-End Transition Services or the Operation and Management Services. In this case, Luma Energy would have to notify PREPA and P3 with no less than 120 days prior to terminating the T&D Contract.

36. A *Force Majeure Event* is defined under the T&D Contract as "[…] any event that causes any federal or Commonwealth Governmental Body to declare any portion of the geographic area of the T&D System part of a 'disaster zone', 'disaster area', 'state of emergency' or any similar pronouncement." T&D Contract § 4.5(c).

37. Additionally, in the case of a *Force Majeure Event*, Luma Energy could increase its rates and costs according to Section 17.2(c) of the T&D Contract.

**VIII. Does the T&D Contract open the door for the creation of an illegal private monopoly?**

38. The T&D Contract provides for the privatization of all the electric system of Puerto Rico in the hands of LUMA Energy, including the administration of generation, (for an initial period of at least three years), dispatch, transmission, and distribution of electric energy. This leads to a private monopoly, without any guarantee that the interest of the People of Puerto Rico will be protected, before LUMA Energy's own interest.

**IX. What will be the T&D Contract's impact upon the rights of PREPA's Employees and Retirees?**

39. The T&D Contract affects the acquired rights of PREPA's employees. The T&D Contract does not guarantee that the employees keep their regular positions at PREPA nor rights. This

is due to Section 5.8 of the T&D Contract which leaves to LUMA Energy's discretion the continuity of the employee on its position in PREPA.

40. Additionally, the T&D Contract does not establish specific guidelines or requirements that LUMA Energy must comply when interviewing, electing, and contracting the employees that potentially pass to work for them.

41. The option for the employees rejected by LUMA Energy is relocation with another governmental entity under the concept of sole employer. It is of common knowledge that this concept has not been implemented due to the complications that it entails, specifically for certain positions in PREPA that do not exist in other agencies. This would create a problem for the central government since it would have to absorb in its payroll all the employees not hired by LUMA Energy.

42. The T&D Contract bypasses the doctrines of the successor employer, corporate *alter ego*, single employer, and transfer of business in process. All of these doctrines have the purpose of avoiding that workers remain unprotected when its employer transfers the corporations' assets to other entity.

43. Likewise, PREPA's employees have been informed that they must quit PREPA and pass on to work for LUMA Energy. Nonetheless, Act 120-2018 does not incorporate in its text that PREPA's employees have to quit.

44. Also, the T&D Contract avoid the rights of PREPA's employees. It does not even analyze the contractual relations between PREPA and the unions, such as UTIER. Of course, this violates Section 15 of Act 120-2018.

45. Furthermore, the T&D Contract is silent upon the almost 10,000 retirees of PREPA that as of this date, receive their pensions.

### X. How transparent was the process in the negotiation of the T&D Contract?

46. The bidding process was made with only two bidders. LUMA Energy was not among these two bidders. As a matter of fact, LUMA Energy got incorporated on June 17, 2020, several days after LUMA Energy was selected as the winning bidder, which was on January 11, 2020.

47. Therefore, questions about the bidding process' legality have been raised.

48. It should be noted that the Governing Board of PREPA has questioned such bidding process. Specifically, the PREPA's Governing Board questioned how they must authorize the payment of excessive reimbursable expenses claimed by LUMA Energy, without reviewing how these funds were spent.

I declare under penalty of perjury under 28 U.S.C. §1746 that the foregoing is true and correct. Executed this 12th day of April 2021 at Ponce, Puerto Rico.

*[signature]*

Héctor Rosario-Hernández

# HÉCTOR R. ROSARIO HERNÁNDEZ, CPA, MBA

*285 Palmas Inn Way Num. 8-103*
*Humacao, Puerto Rico 00791-9687*
*Cel.787.508.1111*
[hrosariohernandez@hotmail.com](mailto:hrosariohernandez@hotmail.com)

*Education:*

**1991**  MBA-Accounting
*Magna Cum Laude,* 3.83 GPA
Interamerican University of Puerto Rico

**1987**  Accounting Board: Certified Public Accountant License (CPA)

**1975**  BBA-Accounting
University of Puerto Rico

*Work Experience:*

**2005-present**            *Consultant*

- Advisor to public and private companies in areas such as: strategic planning, finance and investing, strategic planning, power generation, government and public affairs.
- Clients include construction companies, municipalities, and other public and private corporations in Puerto Rico and the Dominican Republic.
- Waste to energy private projects including PPOA with PREPA.
- Solar residential project with net-metering technology.
- Solar Projects with PPOA with PREPA

**2001-March 2005**       *Puerto Rico Electric Power Authority (PREPA)*
Executive Director (CEO)

As Chief Executive Officer of PREPA, duties include the administration of the daily operations of the public corporation. Represents PREPA in media appearances, legislative hearings and federal agencies. Administrates an annual operational and capital improvements budget of over $3.5 billion and $400 million respectively.

Responsible for the elaboration of proposals for bond issuance in collaboration with the Government Development Bank for Puerto Rico. Evaluates the performance of each division in the Corporation, according to the established goals. Makes recommendations to the Governing Board regarding the operation of the corporation.

Responsible for the decision making in all policy issues regarding capital improvement programs. Establish the general guidelines that govern affairs related to the preparation, approval and modification of operational, conservation and permanent improvements budget to be submitted to

the Governing Board. Oversees the management and utilization of PREPA's funds, goods and properties.

*1991-2001*            *Puerto Rico Electric Power Authority*
Treasurer

Responsibilities include directing all work related to investing and disbursement of PREPA funds. Supervises all personnel in the Treasury Division and is responsible of planning and coordination of all investing and financing related activities in PREPA.

Supervises the bond issuance process and long and short term Financings documentation. Makes recommendations regarding financing regulations to the Executive Director and the Governing Board. Prepares cash flow projections (long and short term) and coordinates Financing for $8 billion needed for Capital Improvements Program, PREPA's Expansion Plan, Transmission and Distribution Budget, Electric System Budget and other administrative areas.

Member of the PREPA`s team in charge of negotiations of two power purchase agreements; one for a coal fueled power plant of 454MW and a natural gas fueled power plant of 507MW.

**May 1988-1991**            *Puerto Rico Electric Power Authority*
Auxiliary Treasurer

Performs all duties of the Treasurer.

**1972-1987**            *Puerto Rico Electric Power Authority*
Funds Management and Investing Department Supervisor
Funds Disbursement Division Supervisor
Customer Service Supervisor
Bank Conciliations Unit Supervisor
Cost Accountant III

**Activities:**

-Financial Advisor to the Mayor of the Municipality of Humacao during 1989; duties included restructuration of the municipal debt and preparation of a balanced budget for fiscal year 1989-1990.
-Municipal Legislator – Municipality of Humacao (1988-1994)
-Former Member of the following Boards and Commissions: (2001-2005):
- President of PREPA's Retirement System Board
- Board of Directors of the Puerto Rico Aqueduct and Sewer Authority (PRASA)
- Commissioner, Port of Mayagüez Commission
- President, *Comité de Supervisión y Evaluación del Programa de Inspección de Represas y Embalses*
- Member, Large Public Power Council (LPPC)
- Board of Directors, American Public Power Association (APPA)
- Palmas Del Mar Utilities, Inc.

Member or former member of the following professional associations:
- Association of Financial Professionals (Treasurer)
- Colegio de Contadores Públicos Autorizados de Puerto Rico