UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

         Debtors.

-------------------------------------------------------------------x

PROMESA
Title III


No. 17 BK 3283-LTS
(Jointly Administered)


**[Response to Docket #16332]**

**RESPONSE AND OBJECTION OF INDIVIDUAL BONDHOLDER TO DEBTORS'
JOINT MOTION FOR AN ORDER (I) SCHEDULING A HEARING TO CONSIDER
THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) ESTABLISHING THE
DEADLINE FOR FILING OBJECTIONS TO THE DISCLOSURE STATEMENT,
(III) APPROVING FORM OF NOTICE, AND (IV) ESTABLISHING DOCUMENT
DEPOSITORY PROCEDURES**


Dated:  April 13, 2021

# TABLE OF CONTENTS

Page

I.      SPECIFIC OBJECTIONS TO DOCKET #16332 ...............................................1

    A.      Disclosure Statement Depository..............................................................2

        (1)     Unjustified restrictions inhibiting access to even admittedly
*non*confidential information................................................2

        (2)     Debtors have not provided particularized justifications for
confidentiality. ...........................................................6

    B.      Schedule for Disclosure Statement hearing and setting of Disclosure
Statement objection deadline .....................................................9

        (1)     Individual bondholders who have filed notices of participation or
proofs of claim should be provided the proposed Disclosure
Statement (in its completed proposed form) at least 30 days before
a final objection deadline ........................................9

        (2)     Access to prior draft or preliminary versions is not sufficient..................10

        (3)     Hard copies of the proposed Disclosure Statement should be
provided to individual bondholders who filed notices of
participation or proofs of claim..........................................12

    C.      The proposed process to submit objections should be simplified for
individuals...............................................................13

    D.      All individual bondholders, including me, have an interest in facilitating
participation by other individual bondholders ......................................14

    E.      Failure to give notice to individual bondholders of the subject motion
(Docket #16332) .........................................................15

    F.      The court should promptly make publicly accessible by electronic means
the reasoning for bench rulings set forth in a hearing transcript...........................16

II.     RE-ASSERTION OF PRIOR OBJECTIONS ..................................................18

Peter C. Hein, pro se, submits this Response and Opposition to Debtors' Joint Motion

(Docket#16332) for an Order (i) scheduling a hearing to consider the adequacy of the Disclosure

Statement, (ii) establishing the deadline for filing objections to the Disclosure Statement,

(iii) approving form of notice, and (iv) establishing document depository procedures.  I hold GO

and Commonwealth guaranteed bonds.  *See* my claim 10696.

## I.    SPECIFIC OBJECTIONS TO DOCKET #16332

Puerto Rico sold its bonds to individual investors nationwide, including in the 50 states[1].

After this Court established a process in February 2019 whereby certain bondholders were given

the opportunity to file notices of participation (Docket#5143), approximately 1,700+ individual

bondholders filed notices of participation identifying their addresses and email addresses, to

which notice could be sent, and expressing their desire to participate in these proceedings[2].

Other individuals who held bonds that were not the subject of challenges (and therefore who may

not have filed a notice of participation) filed proofs of claim also identifying their addresses and

email addresses to which notices could be sent.[3]

However, the process proposed in Debtors' motion (Docket#16332) fails to

appropriately accommodate the interests of individual investors who have a right to participate in

---

[1] The fact that bonds were sold to individual investors nationwide is evident from the official statements (showing 12 to 20 broker-dealer firms, including firms with retail clienteles, as underwriters) as well as the trading histories (showing trades of as little as $5,000 par of bonds) posted on the Municipal Securities Rulemaking Board EMMA website (emma.msrb.org).  For example, search on that website for CUSIP 74514LWA1 from Series C sold in 2009.  Or search for CUSIP 74514LWM5 for Series A sold in 2011.  Or search for CUSIP 74514LB63 for Series A sold in 2012.

[2] Docket#7154-page-3&n.6-of-14;-#7540-page-4-to-5&n.2-of-19.  An example of the notice of participation (which I filed at Docket #5377) shows the content of the notices of participation filed by individual bondholders in these proceedings.  Participants provided contact information including name, email address, and mailing address.

[3] For example see my claim 10696 filed May 4, 2018; the proof of claim form asks claimant to specify in response to item 3 "where should notices … to the creditor be sent".

these proceedings, including the many individual bondholders who have filed notices of
participation and/or proofs of claim.

> **A.       Disclosure Statement Depository**

Debtors propose a Disclosure Statement Depository to which "relevant" information –
including "factual source materials underlying the Disclosure Statement" – would be posted to
facilitate access by interested parties and avoid duplicative requests for information.
(Docket#16332-page-19-to-20-of-44-¶¶38-39; #16332-page-28-of-44).  Having a depository of
documents accessible online makes sense and will satisfy Debtors' objective of avoiding
duplicative requests for information.

However, an online Disclosure Statement Depository for relevant information can be
established with**out** using that depository as a means of controlling or restricting access by
individual bondholders and without precluding access by analysts and by press and media
representatives who could prepare analyses of the depository materials that could be helpful to
individual bondholders.  There is no justification shown in Debtors' motion (Docket#16332), or
in the exhibits thereto concerning proposed Disclosure Statement Depository procedures, for
controlling or restricting access by individual bondholders or for denying access to admittedly
**non**confidential information by analysts and press and media representatives.  Nor do Debtors
establish a justification for a protective order limiting access to unspecified portions of the
information, and even an index to such unspecified information, on the theory that it is
supposedly "confidential".

> **(1)       Unjustified restrictions inhibiting access to even admittedly
> *non*confidential information.**

Debtors propose that access to the proposed depository of **non**confidential documents be
restricted to persons who go through a process to affirm their status as a creditors and provide
identifying information.  (Docket#16332-page-28-to-29-of-44 ¶4).  As contemplated by Debtors,
this will at a minimum delay and complicate access by individual bondholders who – after they
"first navigate" to the depository website – must then wait before they can access even

**non**confidential information.  (*Cf.* Docket#16332-page-29-of-44 ¶4 last sentence:  "Access requests will be processed as promptly as reasonably practical").

If the information is "relevant" to an investor's decision on whether to object, the nature of the objections that the investor may make and/or how to vote, or constitutes "factual source materials underlying the Disclosure Statement," that information should be made available to individual bondholders without preconditions, restrictions or delays.

Furthermore, access to **non**confidential information relevant to the court's consideration of the proposed Plan should not be restricted to "Eligible Creditors".  (Docket#16332-page-28-of-44).  Debtors are government entities; they are not private economic actors.  There is no legitimate reason for restrictions on access to **non**confidential information.

Indeed, Debtors state that the Depository may provide "a single location for access to documents that are publicly available on different websites and at numerous locations." (Docket#16332-page-20-of-44-¶39).  If documents are already "publicly available," what could warrant restricting or regulating access to these "publicly" available documents when collected in one place to constitute "factual source materials underlying the Disclosure Statement" (Docket#16332-page-28-of-44)?  Nowhere is that issue addressed in the moving papers.

The inappropriateness of imposing restrictions on access is underscored by the widespread group of creditors concededly entitled to access.  Thus, Exhibit 1 ¶3 – which states that the "Disclosure Statement Depository will be made available only to the following parties or their representatives" (Docket#16332-page-28-of-44-¶3) – goes on to say that such parties include "(i) current and former employees of the Commonwealth", "(ii) creditors of the Debtors for which a master proof of claim has been filed on such creditor's behalf", "(iii) creditors of the Debtors who have filed a proof of claim", "(iv) creditors who were not required to file a proof of claim pursuant to the Bar Date Orders".  With such a widespread group of creditors admittedly entitled to access – to include every current and former employee of the Commonwealth, as well as every bondholder – the proposed cumbersome process to restrict or limit access to even admittedly **non**confidential information is nothing but an attempt to deter and inhibit access by

3

individual bondholders to information they need in order to assess the proposed plan, decide whether to object and decide how to vote.

In addition, the proposed restrictions on access to even **non**confidential information would altogether preclude access by analysts, the press and media and similar parties who – if allowed access – could analyse and disseminate the information through the press or media and thereby make the information available to individual bondholders in a more understandable form.  Unlike institutional investors, who may have in-house analytical capabilities, individual bondholders may not have the capability of doing the necessary investigation and analysis themselves, and thus may be dependent upon analysts or members of the press or media doing investigations and analyses that could then be made public and benefit individual bondholders by distilling the available information into a more understandable form.

Notably, Commonwealth has yet to provide timely audited financial statements, and indeed Commonwealth's delays in providing audited financial statements have only gotten worse since PROMESA was enacted and the FOMB was installed.  The most recent audited financial statement disclosed by Commonwealth is for the year ended June 30, 2017, which was only belatedly disclosed after an extraordinary delay, on September 1, 2020, 1,158 days (over 3 years) after the fiscal year ended.  *See* MSRB EMMA website, type in CUSIP 74514LB63, click on "Disclosure Documents," scroll down to "Financial/Operating Filing(s)/Most Recent Financial Disclosures."  The latest iteration of the draft Disclosure Statement contains Exhibit K, "Latest Audited Financial Statements for Debtors".  But turn past the cover:  This "latest" statement is for fiscal 2017, which ended almost four years ago on June 30, 2017.  Docket#15988-11.

Commonwealth's failure to produce and make public, on a current basis, audited financial information should not and cannot be excused.  Commonwealth's failure to timely produce and make public the most basic required financial information indicates that Commonwealth is not voluntarily forthcoming about providing financial information and underscores why Commonwealth must not be permitted to inhibit or restrict either individual bondholders' ready access to important financial information concerning the Commonwealth and

the other Debtors or access by analysts, press and media whose reporting could be helpful to individual bondholders. The fact that FOMB has allowed the Commonwealth to fail to timely produce and make public on a current basis audited financial information likewise underscores that FOMB cannot be relied upon to ensure all pertinent information is forthcoming.

Permitting access by analysts and representatives of the press and media, and similar parties, is both desirable (to allow information to be reported and thus made as widely available to individual bondholders as possible) and is also required in order to at least partly compensate for the post-PROMESA failure of Commonwealth to disclose audited financial data on a timely basis. Even if Commonwealth suddenly did produce the current audited financial information that has long been delayed, the compressed time frame to analyze that information would underscore the need for analysts, press and media to have access to all nonconfidential information so that they could report on, and thereby make available to individual bondholders, pertinent information.

A yet further reason that public access is important here is that it is likely that some portion of the material pertinent to assessing the adequacy of the Disclosure Statement is in Spanish. For individual bondholders who do not speak Spanish the ability to benefit from analyses by analysts or members of the press or media is all the more important. Puerto Rico had offered its bonds in English language offering statements to investors throughout the 50 states (*see*, *e.g.*, note 1 above). It is inappropriate to shield Spanish-language material behind a restrictive shield that precludes access by analysts as well as the press and media who could make Spanish-language information available to English speaking bondholders.

Finally, Debtors acknowledge that the information to be included in the depository will not only be "relevant" to this court's consideration of the adequacy of the Disclosure Statement and the proposed Plan (Docket#16332-page-19-to-20-of-44), but will indeed include "factual source materials underlying the Disclosure Statement" (Docket#16332-page-28-of-44-¶1) the court is being asked to approve. Public access to such materials is required based on the public's right of access to court records.

### (2)  Debtors have not provided particularized justifications for confidentiality.

Access to a not-specified quantity of allegedly "confidential" information will, per Debtors' proposal, require an individual bondholder to execute a protective order subscription as a precondition to access.  (Docket#16332-page-29-of-44-¶5).  Indeed, individual bondholders will not even be told what information is on the index of documents with "confidential" information unless they first sign the protective order subscription.  (Docket #16332-page-29 to-30 of-44-¶6).  The process contemplated by Debtors will complicate as well as restrict access by individual bondholders.  Further, the need to go through the proposed process to obtain access to so-called "confidential" information may delay access by one business day if not longer.  (Docket#16332-page-29-of-44-¶5, last sentence.)

The effect of requiring a subscription to a protective order to access supposedly confidential information – indeed, even to access an *index* to "confidential" information (Docket#16332-page-29-to-30-of-44-¶6) – will be to prevent individual bondholders from conferring with other bondholders and obtaining advice from others in the investment community (such as a financial advisor or an analyst, who may be available to consult with but who is not an agent or representative of the bondholder).  The protective order will altogether preclude analysts and members of the press and media from accessing so-called "confidential" information and doing analyses that could otherwise be made public and available to individual investors.

The limits on disclosure of "confidential" information (Docket #16332-page-33-of-44-¶4), coupled with the requirement to file under seal any supposed "confidential" information in submissions to the court (page-34-of-44-¶6), will make it difficult for individual bondholders to address relevant supposed confidential information in their objections.

The likelihood is that many individual investors – faced with a requirement to sign on to a protective order restricting their use of information, complicating their submission of objections and imposing "return or destruction" obligations – will be deterred from accessing

6

confidential information at all, thereby compounding the information advantage that some participants in this process have had over others.  Furthermore, since analysts, the press and media will have no access to the supposed confidential information – or even to the index to the supposed confidential information – there will not be public reports that individual bondholders could use to assess whether the supposed confidential information may be important to their decision making.

Nothing in Debtors' motion (Docket #16332) establishes the legally required justification for confidentiality for any specific information and, given the fact the information relates to the affairs of government entities, it is hard to imagine what justification for confidentiality could exist.  Even if preconditions for access by individual bondholders, and complete exclusion from access of the public (including analysts, the press and media), could be justified in a proceeding involving a shareholder-owned corporate entity, Debtors do not explain how the restrictions on access they propose can possibly be justified for information pertaining to Plan confirmation for the Governmental parties who are Debtors here.

Among other things, there is no discussion in Debtors' moving papers of laws or procedures in Puerto Rico that provide for, or allow upon request, public access to Government data.  For example, Puerto Rico as a Government entity maintains a contract database accessible through the Internet, on which all contracts within certain parameters are required to be described, with copies linked and available for downloading.  https://contratos.ocpr.gov.pr/  If this level of detailed information is required to be made public under law as a matter of routine, what information pertaining to Plan confirmation could possibly be so confidential that it warrants restricted access?  Nowhere is this issue addressed in the moving papers.

If there actually is some very limited quantity of material for which the legally required showing to justify confidential protection can be made, that specific material should be identified, and the justification for confidentiality should be particularized, to allow the court to make particularized findings that each aspect of what is sought to be claimed as confidential is entitled to such treatment.

\*\*\*

Debtors do not specify any authority that sanctions (i) a cumbersome process requiring individuals to register even to access "relevant" **non**confidential information; (ii) precluding analysts, press and media from access to **non**confidential information; and (iii) permitting Debtors to shield unspecified quantities and types of information – including even an index to the shielded information - behind a protective order shield.

Debtors cite three cases for the asserted proposition that "the court has expansive equitable power" (Docket#16332-page-19-of-44), but none of those cases are even claimed to bear on the questions at hand here, *i.e.*, the propriety of restricting access by creditors, or precluding public access, to even **non**confidential materials placed in a depository by Government entities, and of allowing unparticularized supposedly confidential documents "relevant" to Plan confirmation to be placed behind a protective order shield.

Orders in three other cases are cited for the proposition that "[r]elief similar to that requested in this Motion has been granted in other large, complex bankruptcy cases in connection with confirmation" (Docket #16332-page-20-of-44-¶40).  But (i) none of these orders are reported opinions; and (ii) all apparently involved shareholder-owned companies in Chapter 11 as opposed to public Government entities.  Furthermore, Debtors do not specify what, if anything, in the three orders in the Chapter 11 cases they cite actually imposed limitations on access to materials "relevant" to Plan confirmation akin to those proposed here.  And Debtors' moving papers did not provide the court or parties in this case with copies of these unreported orders.

In short, Debtors are seeking relief on the pretense that it is ordinary to grant the relief they seek, yet without providing any appellate case law to support their position, or even reported district court or bankruptcy court decisions to support their position.

**B.     Schedule for Disclosure Statement hearing and setting of Disclosure
Statement objection deadline**

**(1)     Individual bondholders who have filed notices of participation or
proofs of claim should be provided the proposed Disclosure Statement
(in its completed proposed form) at least 30 days before a final
objection deadline**

Debtors' motion proposes that the Disclosure Statement objection deadline be set for

May 14, 2021 "as the deadline to file final (and not preliminary) objections" (Docket#16332-

page-14-of-44).

Rule 3017(a) and 2002(a) require "at least" or "not less than" 28 days notice.  Under the

circumstances present here, individual bondholders who have filed notices of participation or

proofs of claim should be provided a copy of the proposed Disclosure Statement, with its

exhibits, in its completed proposed form, at least 30 days in advance of any deadline for filing

"final" objections to the proposed Disclosure Statement.  In order for individual bondholders to

have a copy of the Disclosure Statement at least 30 days in advance of the deadline for "final"

objections, Debtors would need to provide the proposed Disclosure Statement to bondholders

who have provided addresses and email addresses in notices of participation and/or proofs of

claim no later than April 14, 2021.  Realistically, one should also allow at least a week for a

mailing of the proposed Disclosure Statement to arrive.  That would effectively necessitate the

mailing to occur at least 37 days before any "final and (not preliminary) objection" deadline, *i.e.*,

mailing by April 7, 2021, a date that has already passed.

Docket #16332-page-9-of-44 at ¶ 7 states that an amended Plan and Disclosure Statement

will be forthcoming, but the timing is not specified.  When will there be a completed proposed

Disclosure Statement, and when will copies actually be provided to individual bondholders who

have not been participants in the secret negotiations?  Debtors do not say.

It would appear that Debtors are contemplating an extraordinarily lengthy and complex

proposed disclosure statement of over 500 pages, with 1,500+ pages in addition of exhibits.  *See*

draft or preliminary versions at Docket#15988, #15977.  Individuals should be given an adequate

opportunity to review that material before being faced with a "final (and not preliminary)"

9

objection deadline.  If Debtors are not able to have the proposed Disclosure Statement in the hands of individual bondholders by April 14, 2021, the proposed May 14 deadline for "final" objections should be moved back.

Debtors have been negotiating in secret with selected creditors for years over terms of a Plan.  Now, Debtors propose to limit the time available to individual bondholders, who – despite filing notices of participation and/or proofs of claim  – have not been participants in those secret negotiations, to review and assess the adequacy of the proposed Disclosure Statement.  A "final (and not preliminary)" objection deadline (Docket#16322-page-14-of-44) should not be set until there actually is a completed proposed Disclosure Statement.

### (2)    Access to prior draft or preliminary versions is not sufficient

It is no answer to say that Debtors have previously filed earlier draft or preliminary versions of the proposed Disclosure Statement.

To begin with, some basic information is altogether absent from the draft or preliminary Disclosure Statements previously filed.  For example:

- Exhibit "L" "Best Interests Test Reports" is totally blank; there is just a footnote saying "The Best Interests Test Reports will be filed at a later date."  (Docket#15988-12).

- There are no audited financial statements for the fiscal years ended June 30, 2018, June 30, 2019 or June 30, 2020.  As noted, the latest iteration of the draft Disclosure Statement, Exhibit K, "Latest Audited Financial Statements for Debtors", includes only the financial statement for fiscal 2017, which ended almost four years ago on June 30, 2017.  Docket#15988-11.

Other basic information has likewise not yet been included in the draft or preliminary versions of the proposed Disclosure Statement.  By way of example only, absent from the draft or preliminary versions to date is information such as:

10

- "Estimated Claim Amount" and "Approx. Fixed Recovery (%)" for classes (including 48A, 48B, 48C, 48D, 48E and 49) with lower Constitutional payment priority than GO and Commonwealth guaranteed bonds (*e.g.*, Docket#15988-page-33-to-34-of-532),

- Whether there is any pending or contemplated request for a determination or ruling by the IRS with respect to tax treatment of the new bonds (*cf.* Docket#15988-page-40,484,487,492-of-532) (In the COFINA case, on December 14, 2018, FOMB had (secretly) requested a private letter ruling or closing agreement with the IRS that would let all new COFINA bonds be federally tax-exempt, including bonds distributable to recipients of the "on-island" Puerto Rico preference, but FOMB's request of the IRS was concealed from individual investors – as well as the court – until after the Plan was confirmed),[4]

- Specifically, whether there is any pending or contemplated request for a determination or ruling that would allow bonds initially issued as taxable to be exchanged for federally tax-exempt bonds (as noted, in the COFINA case on December 14, 2018 such a request was made but that was not disclosed to individual bondholders or to the court before the Plan was confirmed).

All of this information is required under, *inter alia*, 11 U.S.C. §1125. A complete proposed Disclosure Statement, which at least purports to include all required information, should be provided before a deadline for "final (and not preliminary)" objections to the proposed Disclosure Statement is set by the court.

Furthermore, none of the previous draft or preliminary versions of the proposed Disclosure Statement have been sent to individual bondholders by mail or by email. And in light of the fact individual bondholders – even those who filed notices of participation or proofs of claims – have not been privy to what is going on in the confidential mediation-negotiation

---

[4] Docket#5123-page-5-to-6-of-26-Recital-"E"; #6283-page-3-to-7-of-13;#6283-1;#6283-2-page-2-to-5-of-24; #7211-page-5-to-9-of-24;#7211-1-page-3-to-4-of-146; #8427-page-13-to-16-of-20;#8427-1-page-3-to-4,12(answering-Q11-¶2)-to-13-of-69.

process, it is unrealistic to expect individual bondholders to have studied hundreds or thousands of pages of turgid materials in draft or preliminary Disclosure Statements that are still in flux. Plus, even if one attempted to review the multiple changing draft or preliminary versions, absent redlines being furnished to individual bondholders, one needs to re-study the entirety of the ultimate proposed complete Disclosure Statement in any event.

> **(3)** **Hard copies of the proposed Disclosure Statement should be provided to individual bondholders who filed notices of participation or proofs of claim**

In the case of individuals who have actually provided their mailing address and/or email address in a notice of participation or proof of claim, their identity and address is actually known to Debtors, and they have expressed a desire to receive notices. There is no legitimate justification for Debtors not providing copies sufficiently in advance of the Disclosure Statement hearing to allow these individuals to review the material and submit objections.

Individual bondholders who filed notices of participation and/or proofs of claim providing their address and email address should be sent full copies of the proposed Disclosure Statement and exhibits that Debtors seek court approval of by mail or, alternatively, at least by email with file sizes that Gmail and other commonly used email vendors can accommodate. The current draft or preliminary version of the proposed Disclosure Statement and exhibits posted on Prime Clerk (Docket#159888) is approximately 2035 pages of material and will be cumbersome for most individuals to download and/or print.

Alternatively, at the very least: (1) the "Notice of Filing" (Docket #16332-page-39-to-44-of-44) should be reconfigured so that the right to request a copy of the Plan and Disclosure Statement by email or by telephone is clearly stated and highlighted at the outset on that five-page notice (this information is currently compressed into a turgid paragraph at the end of the proposed notice); (2) that "Notice of Filing" should be **emailed** to all bondholders who have provided an email address in a notice of participation or proof of claim; and (3) if a bondholder

requests a hard copy of the Disclosure Statement and other Plan documents and exhibits, that hard copy should be sent to them promptly.

If hard copies of the plan documents and exhibits are not initially mailed to individual bondholders, the time for "final" objections should be set to take into account the expected delay from the time an individual receives the initial mailing of the "Notice of Filing" with**out** the hard copy of the proposed Disclosure Statement and other Plan documents and exhibits and the time the individual bondholder is likely to receive the hard copies following a request therefor.

Simply sending individual bondholders a computer flash drive – as occurred December 2018 in the case of the COFINA plan – is not sufficient. Most individuals today are going to be highly suspect of a flash drive, and will legitimately fear that plugging a flash drive into their computer could introduce a computer virus. Furthermore, the flash drive mailed in the COFINA situation was so small it literally could fall out when one opened the envelope without one even noticing it was there. The only way to ensure individuals actually have a copy of the Disclosure Statement to review is to provide it in hardcopy form. Alternatively, at the very least, there ought to be a prominent reference up front in a covering letter accompanying any mailing of a computer flash drive that advises the recipient that they may request a full copy of the Disclosure Statement and exhibits, in hardcopy form, by emailing a specified email address (or calling a number) and such requests should be promptly handled.

### C.   The proposed process to submit objections should be simplified for individuals

Debtors propose a requirement that objectors serve their objections on a lengthy list of 23 parties or categories of parties. Literally 21 separate parties are enumerated, plus there are two bullets that require service on categories of parties for whom the names and addresses are not even given. (Docket#16332-page-41-to-43-of-44). Presumably all of these parties are on the Court's CM/ECF system. Debtors' proposed service requirement is being misused to deter individuals from objecting.

There should be a simplified process for individuals to submit objections, whereby objections can be submitted to an email address, perhaps maintained by the Commonwealth's agent Prime Clerk or a similar party, and Commonwealth's agent can then forward the objections to the Clerk of Court for filing, whereupon objections could be electronically distributed through the CM/ECF to all of the parties specified as those entitled to receive notice on Docket#16332-page-41-to-43-of-44.  In light of the fact that any papers docketed can be immediately electronically transmitted via CM/ECF to all of the parties listed in "(vi)" on page-41-to-43-of-44 there is no justification for forcing individuals to grapple with trying to make service on a lengthy list of counsel and other parties when those parties will be notified electronically through the court's CM/ECF system of a filing upon it being docketed.

Alternatively, individuals could be given the option to mail their objections by a specified date, perhaps a week in advance of the deadline, to a specified court address, with objections postmarked on or before such date being docketed and treated as timely filed and served (as upon being docketed they can be automatically transmitted to counsel participating in the CM/ECF system).

Or, alternatively, individuals could be given the option to file using the Court's CM/ECF system, as the District of Puerto Rico CM/ECM manual expressly permits (*see* I.H.1.c, "The Court may also grant a pro se litigant access to file electronically in a particular case"), and be notified that they have that option.

In any event, the courthouse address to which objections are to be sent for filing (now on Docket#16332-page-41-of-44) should be set out in block form so it is clear and stands out to an individual reading the notice.

### D.   All individual bondholders, including me, have an interest in facilitating participation by other individual bondholders

My interests are directly impacted if there are impediments to participation by other bondholders, including those who have already filed notices of participation and/or proofs of claims (as I have).  Under the latest version of the proposed Plan (Exhibit A to Docket#15988)

individual bondholders, including me, are segregated into "retail" classes in the proposed Plan.
The amount of consideration I receive will depend upon the vote of the bondholders in each of
those segregated retail classes.  Furthermore, the voting mechanism used means that my fate is
impacted by the votes and decisions of others.  I object to this aspect of the proposed plan
(among other aspects of the proposed Plan I object to) and to the voting mechanism, but in light
of these provisions, it becomes imperative from my point of view that each individual
bondholder have a full opportunity to participate in this process, articulate any concerns or
objections they have and cast a fully informed vote.

     In April 2019 I had moved to have a bondholder committee established to represent
individual and other modest-sized bondholders or, in the alternative, if there was to be one
committee to represent all GO bondholders, that there should be appropriate representation on
such committee of individual and other modest-sized bondholders, including individuals in the
50 states.  (Docket#6128, #6487).  If my motion had been granted, there would have been
members of a committee who would owe fiduciary duties to individual bondholders and be
responsible for directing actions on behalf of that committee in the best interests of individual
bondholders that the committee represented.

     Respectfully, the current situation – where major institutional bondholders have counsel
(effectively being funded by Debtors through special Consummation Costs and PSA Restriction
Fees to selected bondholders that far exceed such bondholders' reasonable costs of counsel), but
individual bondholders (as in the COFINA situation) are left unrepresented and without any
mechanism in place to ensure their interests are protected by a committee owing fiduciary duties
to them – could have been avoided had the requested committee been established.

### E.    Failure to give notice to individual bondholders of the subject motion (Docket #16332)

     It appears that no notice, even by email, has been given to individual bondholders of the
subject motion (Docket#16332) – not even to those who filed notices of participation and/or
proofs of claims, and thereby expressed their desire to receive notices and participate.  *Compare*

Docket#16332-page-21-of-44.  I object to this failure to give notice to all individual bondholders who have filed notices of participation and/or proofs of claim identifying their addresses and email addresses.  I also note that (with the sole exception of me, since I am allowed to electronically file, *see* Docket#11920) an individual bondholder who somehow learned of Debtors' Docket#16332 motion would be confronted with the requirement on Docket#16332-page-2-to-3-of-44 that it file its objection to Docket#16332 no later than April 13, 2021 at 4 PM "on a CDROM, in text-searchable portable document format (PDF)" and that service be made on multiple enumerated attorneys "so as to be received no later than April 13, 2021 at 4:00 p.m." Since Debtors filed their motion on April 6, 2021 at approximately 10:20 p.m., even those individuals who somehow learned of Debtors' motion (despite it not being served upon them) would face the effectively insurmountable burden of trying to prepare and file an objection in just a couple of business days (in order to dispatch it so it would be received by April 13) and could well throw up their hands when confronted with the requirement that it be filed "on a CDROM, in text-searchable portable document (PDF)" format.

### F.    The court should promptly make publicly accessible by electronic means the reasoning for bench rulings set forth in a hearing transcript

The court has in the past in these cases frequently read reasons for rulings from the bench into the transcript record at hearings, then issued orders of a summary nature referencing the reasons for the ruling that had been stated on the record.  *E.g.*, Docket#6534 ("For the reasons stated on the record at the Hearing…"; Docket#8694).  While the court's desire to read its rulings into the record may be understandable and efficient for the court, this has the perhaps unintended effect of delaying public disclosure of the court's reasoning to individual bondholders and members of the public who would like to follow proceedings in these cases for 90 days, until the transcript is public.

Respectfully, the court's reasoning for rulings read into the record from the bench should be promptly publicly filed at the same time the order is entered so it is available to all.  This could be done in a number of ways, including by the court simply directing that transcripts be

16

made promptly available on the court docket and through Prime Clerk rather than being withheld from public filing for 90 days as is presently the case.  Alternatively, the court could at least have the reasoning for any rulings or decisions by the court from the bench extracted from the transcripts and filed in the public record so they are immediately accessible without a 90-day delay.

Given today's technology, there is no reason hearing transcripts – much less transcripts reflecting the reasoning behind rulings by the court – should be unavailable to the public through online access for 90 days after the Court issues its ruling:

- The Supreme Court makes transcripts of arguments available on its website on a "same-day" basis.

- There is no bona fide concern about confidentiality:  Transcripts are currently withheld for 90 days even if no party requests redaction (plus, it is unclear what would justify redaction of court rulings made in open court or other proceedings in open court in this case).

- There is no physical impediment to making the transcripts available by electronic means – rather, the court withholds *existent* transcripts for 90 days.

Particularly in the context of this case, which affects individual bondholders throughout the country – including those who purchased pre-PROMESA and are now retroactively subjected to PROMESA's application – and which is of interest to many members of the public, the failure to provide prompt public access to hearing transcripts through electronic means violates due process and First Amendment and common law rights of public access to court records which, with today's technology, should entail remote electronic access.  *Cf. Press-Enterprise* v. *Superior Court*, 478 U.S. 1, 10-15 (1986); *Press-Enterprise* v. *Superior Court*, 464 U.S. 501, 510-13 (1984); *U.S.* v. *Smith*, 787 F.2d 111, 114-15, (3d Cir. 1986).

There may be no added cost to Debtors or the court to make the hearing transcripts promptly available to the public through online access.  If there is any incremental cost to Debtors, or if additional compensation to court reporters would be required, any such cost is

surely modest in comparison to the hundreds of millions of dollars paid by Debtors in this case to attorneys and a wide variety of consultants, including even a "communications advisor" to the UCC.  For example, any incremental cost to provide timely public electronic access to hearing transcripts would likely be much less than the court-approved $470,000+ paid for services through 5/15/2019 to "Kroma Advertising," "communications advisor" to the *un*secured creditors committee, which assertedly helped the *un*secured creditors committee publicize its efforts to challenge bond claims and assist with "public relations."[5]

## II.    RE-ASSERTION OF PRIOR OBJECTIONS

I have previously submitted both procedural and substantial objections to the mediation process, to the Court's stay orders and to the use of mediation instead of adjudication to resolve issues in this matter, and to other aspects of these proceedings.  I re-assert these prior objections, including those filed at Docket#11284, #11150, #11148, #10029, #9683, #9508, #9096, #9038, #8308, #7961, #7732, #7540, #6151, #6487 and #6128.

I also reiterate the need for steps to facilitate the ability of all pro se litigants – who do not enjoy the essentially unlimited litigation funding that FOMB and UCC are allowed – to participate in a meaningful way (as I have outlined in prior filings, including in Docket#9508-page-9-to-13-of-24; #7540-page-4-to-15-of-19; #7961-page-14-to-18-of-19; #7732-page-9-to-10-of-10; #6487; #6128).

And I reiterate my position that there should be no disbursements by the Commonwealth not in fact required for payment for truly essential current services until the contrived issues FOMB and UCC have raised are resolved and payment of the Commonwealth's GO debt resumes.  There is simply no justification for the ongoing expenditures of funds on advertisement, representation and artistic services contracts, other consulting contracts, Christmas bonuses to public employees, ongoing payment of fees of Debtors and *un*secured creditors, and other non-essential spending, while Constitutional irrevocable pledge/first claim

---

[5] Docket#8753-1-page-1-of-1;#8002-page-4-to-5,15-to-17-of-19.

debt goes unpaid.  These, and all other diversions of funds that the Commonwealth irrevocably pledged to bondholders, and on which bondholders have a first claim, must cease.[6]

Among other things, as previously noted, I object to any payment of any litigation expenses for counsel for FOMB, the Commonwealth or the UCC, until the default on the GO bonds (and Commonwealth guaranteed bonds) is cured and payments on the bonds are brought up to date.[7]

I refer the court to my position stated on the record on July 24, 2019 (transcript filed July 25, 2019 #8266-Tr.-85:23-to-86:9), and my prior filings, including #10029, #9508, #9096, #8308, #8146, #7961, #7732, #7540, #6487, #6151, #6128, #5377, #5103, #4913, as well as #8626, #8487, #8427, #7211, #6283, #5041, #4934, #4911, #4673, #4606, #4595, #4585.

My objections include violations of the Takings, Due Process, Contract, Ex Post Facto, Equal Protection, and Privileges and Immunities Clauses; the Bankruptcy Clause's uniformity requirement (PROMESA is unconstitutional because, among other reasons, it is not a "uniform" law "on the subject of bankruptcies throughout the United States"), the First Amendment public right of access to court proceedings; violations of the similar provisions of the Puerto Rico Constitution as well as Article VI, § 8, thereof; and violations of 48 U.S.C. §§737, 2174(b)(3), (6), (7) and 2141(b)(1)(N) and 2163, other provisions of PROMESA and the Bankruptcy Code.

---

[6] *See, e.g.*, Docket#9508-page-13-to-14, 15-to-19-of-24.

[7] *E.g.*, Docket#6128-1-page-6-of-11;#6151-page-2-of-3;#7540-page-10-to-11-of-19.

April 13, 2021

Respectfully Submitted,

/s/ Peter C. Hein
Peter C. Hein, pro se
101 Central Park West, Apt. 14E
New York, NY  10023
petercheinsr@gmail.com

**Declaration pursuant to 28 USC §1746**

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Executed on this 13th day of April 2021.

/s/ Peter C. Hein
Peter C. Hein