# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al*.,

      Debtors.[1]

------------------------------------------------------------------------ x

:
:
:
:   PROMESA
:   Title III
:
:   Case No. 17-BK-3283 (LTS)
:
:   (Jointly Administered)
:
:
:

## RENEWED MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF ORDER RECLASSIFYING CLASS 48A AND CLASS 55 CLAIMS <u>UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED MARCH 8, 2021</u>

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION AND VENUE .............................................................................................. 5

RELEVANT BACKGROUND ................................................................................................ 5

I.      FIRST AMENDED PLAN AND ORIGINAL RULE 3013 MOTION............................ 6

II.     APRIL 22 HEARING AND MEET AND CONFER ORDER ....................................... 6

III.    SECOND AMENDED PLAN AND RELATED DISCLOSURE STATEMENT............ 8

IV.     OVERSIGHT BOARD'S SCHEDULING MOTION.................................................... 9

V.      INSTANT RENEWED MOTION.................................................................................. 10

RELIEF REQUESTED............................................................................................................ 11

ARGUMENT ............................................................................................................................ 11

I.      CLASSIFICATION ISSUES RAISED BY RENEWED MOTION ARE RIPE
        FOR DETERMINATION............................................................................................ 11

II.     CLASSIFICATION SCHEME IN SECOND AMENDED PLAN CANNOT BE
        APPROVED UNDER FIRST CIRCUIT'S STRICT APPROACH TO
        CLASSIFICATION .................................................................................................... 14

NOTICE..................................................................................................................................... 17

NO PRIOR REQUEST ............................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 500 Fifth Ave. Assocs.*,
148 B.R. 1010 (Bankr. S.D.N.Y. 1993), *aff'd*, 1993 WL 316183 (S.D.N.Y.
May 21, 1993) ..................................................................................................................11, 12

*ACP Master, LTD. v. Puerto Rico*,
Case No. 18-1108 (1st Cir. Jul. 2, 2018) ...............................................................................9

*In re Barney & Carey Co.*,
170 B.R. 17 (Bankr. D. Mass. 1994) .....................................................................................15

*In re Bjolmes Realty Tr.*,
134 B.R. 1000 (Bankr. D. Mass. 1991) ................................................................................16

*In re Bos. Post Rd. Ltd. P'ship*,
21 F.3d 477 (2d Cir. 1994) ....................................................................................................15

*In re City of Detroit*,
No. 13-53846 (Bankr. E.D. Mich. Jan. 16, 2014) ..................................................................3

*In re DRW Prop. Co. 82*,
60 B.R. 505 (Bankr. N.D. Tex. 1986) ...................................................................................12

*In re G & C Foundry Co.*,
No. 06-30601, 2008 WL 4560741 (Bankr. N.D. Ohio Oct. 9, 2008) ....................................12

*Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*,
748 F.2d 42 (1st Cir. 1984) .................................................................................14, 15, 16, 17

*In re Hanish, LLC*,
570 B.R. 4 (Bankr. D.N.H. 2017) .........................................................................................15

*In re Highlands Grp. of Brunswick, LLC*,
No. 11-07628-8-SWH, 2012 WL 5385633 (Bankr. E.D.N.C. Nov. 1, 2012) ........................12

*In re Mirant Corp.*,
No. 03-46590-DML-11, 2005 WL 6440372 (Bankr. N.D. Tex. May 24, 2005)....................12

*In re Nat'l/Northway Ltd. P'ship*,
279 B.R. 17 (Bankr. D. Mass. 2002) .....................................................................................15

*In re Provident Royalties, LLC*,
No. 09-33886, 2010 WL 2404278 (Bankr. N.D. Tex. June 10, 2010) ...................................11

**Other Authorities**

9 *Collier on Bankruptcy* ¶ 3013.01 .............................................................................................4, 11

FED. R. BANKR. P. 3013 ...................................................................................................................12

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee"),[2] respectfully files
this renewed motion (the "Renewed Motion") pursuant to Rule 3013 of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules") requesting entry of an order, substantially in the
form attached hereto as **Exhibit A**, reclassifying Class 48A and Class 55 claims under the
proposed plan of adjustment, dated March 8, 2021 [Docket No. 15976] (the "Second Amended
Plan").  In support of the Renewed Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      In March of 2020, the Committee filed a motion (the "Original Rule 3013
Motion")[3] seeking a ruling that the classification scheme embodied in the then-current proposed
plan of adjustment was invalid as a matter of law pursuant to controlling case law in the First
Circuit.  The Committee also argued that this narrow and purely legal classification issue should
be determined prior to approval of a disclosure statement to avoid the needless waste of millions
of dollars and months of time spent soliciting and litigating a plan of adjustment predicted on a
legally flawed classification scheme.

2.      Just less than a year ago, the Court denied the Original Rule 3013 Motion without
prejudice, holding that the narrow, specific, and purely legal classification issues raised therein—
and in this Renewed Motion—should be heard prior to confirmation and ordering the parties to
meet and confer on a schedule for litigating classification issues prior to proposing any schedule
for litigating a disclosure statement.  Nonetheless, the Oversight Board did not engage with the

---

[2]   The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and
      COFINA.

[3]   *See Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure
      3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims Under Oversight Board's Plan of
      Adjustment Dated February 28, 2020* [Docket No. 11989].

Committee on the scheduling of the Renewed Motion, advising the Committee that it continued

to take the position that classification issues should be resolved at confirmation.  Consistent with

its position (but inconsistent with this Court's rulings), the Oversight Board filed, without any

advance notice to the Committee, a motion seeking approval of a proposed disclosure statement

schedule that makes no provision for the resolution of these classification issues.  Accordingly,

the Committee files the Renewed Motion and, by separate urgent motion,[4] respectfully requests

that the Court decide the classification issue prior to the Oversight Board's proposed deadline for

objections to the disclosure statement, *i.e.*, May 14, 2021.[5]

      3.      Four years into these Title III cases, the Oversight Board has filed the Second

Amended Plan and related disclosure statement (the "Second Amended Disclosure Statement")[6]

for the Commonwealth and certain other Debtors.  For purposes of this Renewed Motion, the

Second Amended Plan maintains the same basic structure and overall treatment as the previously

proposed plan, namely stratification of unsecured claims into (i) favored bond claims, (ii)

favored retirement and pension related claims, and (iii) greatly disfavored general unsecured

claims.

---

[4]    Contemporaneously herewith, the Committee has filed, on an urgent basis, a motion requesting that the Court
set a hearing date to consider the Renewed Motion prior to the deadline to object to the Second Amended
Disclosure Statement.  The Committee acknowledges that it has previously expressed a willingness to have the
narrow classification issues raised in the Renewed Motion resolved concurrently with a disclosure statement
hearing, and not necessarily at an earlier hearing.  While this remains true, the Committee also continues to
believe—for all the reasons articulated herein and in its papers in connection with the Original Rule 3013
Motion, the urgent motion, and the limited objection to the Debtors' disclosure statement scheduling motion—
that the most logical and most efficient path is to resolve the narrow legal issues presented by the Renewed
3013 Motion prior to the disclosure statement objection deadline.

[5]    The Debtors' scheduling motion asks the Court to set a June 16, 2021 hearing date on the adequacy of the
Second Amended Disclosure Statement.  Contemporaneously herewith, the Committee has filed an objection to
the Debtors' scheduling motion, as, among other things, the various deadlines proposed by the Debtors do not
comply with the statutory notice period required by the Bankruptcy Rules.

[6]    *See Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of
Puerto Rico, et al.* [Docket No. 15977].

4.      As explained in the Original Rule 3013 Motion, while the Committee believes

(and will demonstrate at the appropriate time) that the Second Amended Plan and the Second

Amended Disclosure Statement are deeply flawed and thus may not be approved by the Court,

the Oversight Board does get one thing right:  every effort should be taken to minimize the

impact of Puerto Rico's financial restructuring on its (almost exclusively) on-island creditors

who have contributed tremendous value to the Commonwealth and to Puerto Rico as a whole

and who, to borrow from Bankruptcy Judge Rhodes, played no role in the "hasty and imprudent

financial decision-making that" describes many of the Debtors' pre-petition financial

transactions and which "practices have already caused great harm to [Puerto Rico]'s creditors

and to its citizens."[7]  Accordingly, while any cuts to pensions paid to retired government workers

are regrettable, the Second Amended Disclosure Statement explains that the Oversight Board

proposes to pay the general unsecured claims of former government employees (the "Retirees")

between 92.5% and 100% of their claims under the Second Amended Plan.

5.      The Oversight Board completely ignores, however, that the other general

unsecured creditors—the overwhelming majority of whom live and work on Puerto Rico—are

equally "sons and daughters of Puerto Rico" who have provided, and (in some instances)

continue to provide, equal value to the Commonwealth, hold claims that are legally

indistinguishable from the Retirees' claims and are, therefore, entitled to the same treatment as

their retired brethren.  Instead of recognizing this, however, the Oversight Board proposes to

separately classify all of these general unsecured claims and (based on the Oversight Board's

prior estimation of the amount of allowed general unsecured creditors) pay thousands of local

Puerto Rico vendors, small business owners, service providers, and other creditors a recovery

---

[7]     *See* Hr'g Tr. at 20:16-25, 22:4-11, *In re City of Detroit*, No. 13-53846 (Bankr. E.D. Mich. Jan. 16, 2014)
[Docket No. 2521].

percentage in the low single digits.  Accordingly the Committee asks merely that—consistent
with First Circuit precedent—this Court ensure that the general unsecured claims in Class 55 are
classified together with the Retirees' claims such that, as required by First Circuit precedent, they
receive no less than the Oversight Board proposes to pay to Retirees.

6.      As discussed in greater detail below, the First Circuit has adopted a "strict
approach" to plan classification, which rejects any basis for the separate classification of
unsecured claims that have the same legal rights as against the debtor and its property.  The
separate classification of Retiree claims from all other general unsecured claims fails to satisfy
the "strict approach" because both are garden variety unsecured claims that have the same legal
rights against the Commonwealth and its property and, therefore, must be classified together
under controlling First Circuit precedent.

7.      In situations such as this, a bankruptcy court is not required to, and should not,
wait until confirmation only to find that a plan does not satisfy the classification requirements.
Bankruptcy Rule 3013, by its plain language, permits a bankruptcy court to "determine classes of
creditors" in advance of confirmation.  The policy underlying Rule 3013 is straightforward:
"there are occasions when classification issues may be so obvious and their resolution so central
to the confirmability of the plan that the question of proper classification is best addressed prior
to consideration of a plan at a confirmation hearing."  9 *Collier on Bankruptcy* ¶ 3013.01 (Alan
N. Resnick & Henry J. Sommers, 16th ed.).  Bankruptcy Rule 3013 allows a bankruptcy court to
avoid expending limited judicial and estate (or debtor) resources by allowing a plan to move to
the confirmation phase when the plan does not satisfy the classification requirements.

8.      This rationale rings even more true here.  If the Second Amended Disclosure
Statement is approved, the Oversight Board will have to send out solicitation materials for the

Second Amended Plan to tens of thousands of claimants, spending millions of dollars and asking tens of thousands of creditors to vote on a plan of adjustment that is based on a classification scheme that is contrary to First Circuit law, only to repeat this time consuming and expensive process if the Renewed Motion is granted (as the Committee believes it should be).

9.    In fact, and as the Meet and Confer Order (as defined herein) recognized may be the case, under these particular facts the best and most logical course is to determine the issues raised in the Renewed Motion before (and not simply concurrent with) the disclosure statement hearing.  The issues are narrow and purely legal, and all parties, including the Oversight Board, will save significant time and resources if the Renewed Motion is granted now as opposed to after approval of a disclosure statement, obviating the need to address the myriad of other issues that will need to be resolved at a contested disclosure statement hearing.

## JURISDICTION, VENUE, AND STATUTORY BASES

10.    The Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA.  Venue is proper pursuant to section 307(a) of PROMESA.

11.    The relief herein is requested pursuant to Bankruptcy Rule 3013, as made applicable to these Title III cases by section 310 of PROMESA.

## RELEVANT BACKGROUND

12.    The Committee represents, in a fiduciary capacity, the interests of all general unsecured creditors of the Commonwealth.  Among many others, its constituents include small business owners, trade vendors and service providers, and current employees of the Title III Debtors holding a range of unsecured claims.  Tens of thousands of general unsecured claims have been filed in these Title III cases, the vast majority of which are held by claimants who reside in Puerto Rico.

## I.      First Amended Plan and Original Rule 3013 Motion

13.      On February 28, 2020 the Oversight Board filed its amended plan of adjustment

[Docket No. 11946] (the "First Amended Plan") and a related amended disclosure statement[8]

reflecting proposed compromises reached with certain bondholder groups.

14.      In response to the legal infirmities inherent in the classification structure

embodied in the First Amended Plan, the Committee filed the Original Rule 3013 Motion,

requesting that the general unsecured claims in Class 41 of the Amended Plan be classified

together with the legally indistinguishable unsecured pension and retirement related claims.

15.      Because it raised only purely legal issues related to the structure of the First

Amended Plan, the Original Rule 3013 Motion did not address—and reserved all rights

regarding—any supposed factual, economic, or other justifications for the First Amended Plan's

vastly inferior treatment of general unsecured creditors as compared to other unsecured claims.

16.      Responding to objections filed by several parties, the Committee subsequently

filed its reply in support of the Original Rule 3013 Motion.[9]  In its reply, the Committee argued

that—contrary to assertion of certain objectors, including the Oversight Board—the Court had

the authority to consider the classification issues raised in the Original Rule 3013 Motion prior to

a confirmation hearing and, in fact, should do so.

## II.     April 22 Hearing and Meet and Confer Order

17.      The Court held a hearing on the Original Rule 3013 Motion on April 22, 2020

(the "April 22 Hearing").  At that hearing, the Court dismissed the Original Rule 3013 Motion

---

[8]      *See* Docket No. 11947.  The First Amended Plan and related disclosure statement modified earlier versions filed
in September of 2019.  *See Title III Joint Plan of Adjustment*, Sept. 27, 2019 [Docket No. 8765], and *Disclosure
Statement*, Sept. 27, 2019 [Docket No. 8766].

[9]      *See* Reply in Supp. of Original Rule 3013 Mot. [Docket No. 12872].

without prejudice to the Committee's rights to renew its arguments at the appropriate time, along

with any further relevant arguments.[10]

18.     Regarding when, precisely, that appropriate time would be, the Court stated that:

> I remain persuaded that taking these issues up again in conjunction and
> in coordination with a schedule that is leading into a determination on
> the disclosure statement and that is part of a continuum toward
> confirmation is appropriate, and more appropriate than taking them up
> now.
>
> I have heard the remarks and concerns today about the potential for
> determinations on these issues that have been characterized and cued
> up for the most part as classification issues, being potentially a lengthy
> and complicated trial turning on factual determinations as to the
> justification for various classifications.
>
> ***My intention is to take up, at the disclosure statement stage, the
> classification arguments, or the arguments that have been made here***
> that—I will use the word structural arguments that, as a matter of law,
> this can't be done, no matter how good, sincere, and economically
> rational the justification offered for a particular classification is.[11]

19.     In other words, the Court recognized that the First Amended Plan presented two

separate classification issues, which—notwithstanding the Oversight Board's assertions to the

contrary—could and should be determined separately:  <u>First</u>, whether, in the First Circuit, any

factual, economic, or even "governmental" justification could, as a matter of law justify the

separate classification of claims with similar priority under the Bankruptcy Code.  <u>Second</u>, even

if such separate classification is legally permissible, whether it is appropriate to do so under any

given set of facts or, instead, if the classes have been inappropriately gerrymandered.[12]  Unlike

---

[10]   A copy of the April 22 hearing transcript is attached as **<u>Exhibit B</u>** hereto.

[11]   April 22 Hr'g Tr. at 39:12-17 (emphasis added).

[12]   In so ruling, the Court implicitly overruled the Oversight Board's contention that "all of the classifications of
the all the 40 or so classes need to be on the table, understood, and -- so the Court can rule on classification
once and for all . . .".  April 22 Hr'g Tr. at 20:16-21.

the first issue, which is a narrow issue of law, the second issue requires extensive factual development.

20.     The Court's ruling was embodied in its related order, entered on April 23, 2020, which directed that "prior to the filing of any motion to reset deadlines in connection with the disclosure statement hearing, the parties are directed to meet and confer regarding whether it is necessary and appropriate for ***the classification issues raised in the [Original Rule 3013] Motion and related briefing to be addressed separately from, and in advance of, the disclosure statement hearing***."[13]

### III.     Second Amended Plan and Related Disclosure Statement

21.     The Oversight Board filed its Second Amended Plan and related disclosure statement on March 8, 2021.  As relevant to this Renewed Motion, the Second Amended Plan creates the following classes: (i) Classes 14 through 47, which include various claims for unsecured bonds issued or insured by the Commonwealth (the "GO Bond Classes"); (ii) Class 48A Retiree Claims ("Class 48A"); and (iii) Class 55 Commonwealth General Unsecured Claims ("Class 55").  Under the Second Amended Plan, creditors holding claims in the GO Bond Classes are slated to receive (depending on the year of issuance) a recovery of between 67.3% and 77.5%;[14] creditors in Class 48A are slated to receive a recovery between 92.5% and

---

[13]   See *Order Denying Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims Under Oversight Board's Plan of Adjustment Dated February 28, 2020* [Docket No. 12952] (the "Meet and Confer Order") (emphasis added).

[14]   *See Second Am. Disclosure Statement* at 20-21.  The Committee disagrees with the calculation of the estimates for the recovery percentages for the GO Bond Classes.  The Committee reserves all its rights in this regard.

100.0%;[15] and creditors in Class 55 are slated to receive a recovery exponentially less, likely between **2.27% and 3.57%**.[16]

22.     Neither the Second Amended Plan nor the Second Amended Disclosure Statement explain (or attempt to justify) why the claims of general unsecured creditors in Class 55 have been separately classified from the Class 48A Retiree Claims, which are also general unsecured claims. Indeed, the Oversight Board would be hard-pressed to do so in light of its repeated statements that "PROMESA only incorporates into Title III a single priority claim: administrative expense [claims]."[17]

## IV.     Oversight Board's Scheduling Motion

23.     Uncertain of the Oversight Board's plans regarding a schedule for a disclosure statement (and, following that, a confirmation) hearing, on February 4, 2021, the Committee

---

[15]   The Amended Disclosure Statement explains that holders of Class 48A Retiree Claims receive their benefits subject to an 8.5% reduction to the extent that monthly benefits exceed $1,200. In other words, Class 39A Retiree Claims will receive between 92.5% and 100% on their claims. Additionally, under certain circumstances Retirees may increase their recoveries through a "Benefit Restoration." *See* Second Am. Disclosure Statement at 377-80.

[16]   The Second Amended Disclosure Statement includes no estimate of the total value of the claims placed in Class 55, making it impossible to calculate an expected recovery percentage. However, utilizing the First Amended Plan's estimate of $5.5 billion of general unsecured claims, the Oversight Board's proposal provides general unsecured creditors a recovery of approximately 2.27%. Even if the claims pool has decreased **$2 billion**, for a total of $3.5 billion, general unsecured creditors would receive approximately 3.57% on their allowed claims. In any event, the lack of a claims estimate in the Second Amended Disclosure Statement is no accident. The Oversight Board is well aware that the aggregate amount of allowed general unsecured claims will likely be several billions of dollars, which will translate into a recovery rate in the low single digits.

[17]   *See Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guarantee Insurance Company for Relief from Automatic Stay or, in the Alternative, Adequate Protection [ECF No. 673]*, ¶ 87, Feb. 3, 2020, [Docket No. 10613]; *see also Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. 12(b)(1) and (b)(6)*, at 4-5, *Ambac Assurance Corp. v. Puerto Rico*, Adv. Proc. No. 17-159-LTS (Bankr. D.P.R. Jul. 28, 2017) [Docket No. 48] ("Ambac's Complaint pretends that Congress adopted Puerto Rico's claim priorities as PROMESA's claim priorities."); *Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. 12(b)(1) and (b)(6)*, at 15, *ACP Master, LTD. v. Puerto Rico*, Adv. Proc. No. 17-189-LTS (Bankr. D.P.R. Aug. 21, 2017), [Docket No. 35] ("It would have been easy for Congress to provide in PROMESA that the Title III priorities shall be the non-bankruptcy law priorities. Congress did not do that."); *Brief for Defendants-Appellees*, at 22, *ACP Master, LTD. v. Puerto Rico*, Case No. 18-1108 (1st Cir. Jul. 2, 2018) ("[PROMESA] incorporates only one priority into Title III: Bankruptcy Code § 507(a)(2), which grants priority to administrative claims. No other priorities exist in Title III.").

reached out to counsel for the Oversight Board pursuant to the Court's instruction that the

Committee and the Oversight Board meet and confer regarding the litigation of classification

issues.  The Committee, therefore, noted that to the extent the Oversight Board intended to file a

proposed disclosure statement litigation schedule, the Meet and Confer Order required that the

parties meet and confer prior to such a filing.

24.     In its March 11, 2021 response, counsel to the Oversight Board advised the

Committee that it continued to take the position that classification issues should be resolved in

connection with confirmation, and to ask if the Committee would agree to that sequencing,

which the Committee obviously declined, as it believes this is both incorrect and inconsistent

with this Court's prior rulings.[18]  On April 6, 2021, the Oversight Board filed a motion asking the

Court to approve a proposed disclosure statement schedule, including a hearing date and related

filing deadlines and notice procedures.[19]  The scheduling motion made no mention of the

classification issues raised by the Original Rule 3013 Motion, or the Court's stated intention to

resolve those issues prior to confirmation.

## V.     **Instant Renewed Motion**

25.     The Court has now been asked to approve a schedule for consideration of the

Second Amended Disclosure Statement.  The Committee believes that the most efficient,

expedient, and logical course is to address the narrow legal issues raised herein prior to the

---

[18]   The Committee believes that this was, at best, a "meet and confer" in name only.  The Meet and Confer Order
was clear that the only scheduling issue to be decided, and upon which the parties were ordered to confer, is
whether the classification issues raised herein should be heard at the disclosure stage or earlier.  The order did
not leave open the possibility of these issues being delayed until confirmation.  Nonetheless, in its "meet and
confer" with the Committee, and notwithstanding the Meet and Confer Order, the Oversight Board made clear
that there was nothing to discuss if the Committee was not willing to leave these issues until confirmation .

[19]   *See Debtors' Joint Motion for an Order (I) Scheduling a Hearing to Consider the Adequacy of Information
Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing  Objections to the Disclosure
Statement and  Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document
Depository Procedures in Connection Therewith, and (V) Granting Related Relief* [Docket No. 16332].

deadline to object to the Second Amended Disclosure Statement and, in any event, certainly not

after a hearing on the Second Amended Disclosure Statement.  The Committee, therefore, and

consistent with the Court's statements at the April 22 Hearing and in its Meet and Confer Order,

files this Renewed Motion seeking determination of the same legal issues raised in the Original

Rule 3013 Motion on that proposed schedule.

## RELIEF REQUESTED

26.      The Committee requests entry of an order, substantially in the form attached

hereto as **Exhibit A**, reclassifying together all claims in Class 48A and Class 55.

## ARGUMENT

**I.      Classification Issues Raised by Renewed Motion Are Ripe for Determination**

27.      As noted, the Court has already stated its intention to address the legal and

structural classification issues raised by this Renewed Motion (and by the Original Rule 3013

Motion) no later than the disclosure statement stage, and possibly earlier—and certainly not at

confirmation.  This conclusion is entirely consistent with the Bankruptcy Rules and the

applicable case law, as well as the policy underlying both.

28.      Bankruptcy Rule 3013 "provides a mechanism through which a party in interest

may seek determination of the status and classification of its claim."  *In re 500 Fifth Ave.*

*Assocs.*, 148 B.R. 1010, 1017 n.7 (Bankr. S.D.N.Y. 1993), *aff'd*, 1993 WL 316183 (S.D.N.Y.

May 21, 1993).[20]  The "utility of the procedure offered by [Bankruptcy Rule 3013] is in

addressing classification issues prior to the expense of the disclosure and plan confirmation

---

[20]   Any party in interest (not only the proponent of a plan) can seek relief pursuant to Rule 3013.  *See, e.g.*, *In re Provident Royalties, LLC*, No. 09-33886, 2010 WL 2404278, at *3 (Bankr. N.D. Tex. June 10, 2010) (motion brought by creditors committee); *In re 500 Fifth Ave. Assoc.*, 148 B.R. at 1021 (Rule 3013 motion brought by undersecured creditor); *see also* 9 Collier on Bankruptcy ¶ 3013.01 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

process." *In re G & C Foundry Co.*, No. 06-30601, 2008 WL 4560741, at * 3 (Bankr. N.D. Ohio Oct. 9, 2008) (quoting 1983 Advisory Committee Note to Rule 3013).[21]

29.     Thus, Rule 3013 is a valuable tool that allows courts to determine at an early stage whether the proposed classification of a claim or class of claims is permissible, and thus avoid the significant costs and inefficiencies of soliciting and attempting to confirm a flawed plan.  The proper classification of Class 48A and Class 55[22] is ripe for determination and should be determined prior to determination of the adequacy of the Second Amended Disclosure Statement.  Indeed, numerous courts have done just that.  *See, e.g.*, *In re Highlands Grp. of Brunswick, LLC*, No. 11-07628-8-SWH, 2012 WL 5385633, at *6 (Bankr. E.D.N.C. Nov. 1, 2012) (adjudicating creditors' Rule 3013 motion prior to disclosure statement hearing); *In re 500 Fifth Ave. Assocs.*, 148 B.R. at 1013 (granting creditors' Rule 3013 motion where "[j]ust before the hearing on [the Rule 3013] motion, the debtor submitted a draft 'skeletal' plan of reorganization and disclosure statement"); *see generally In re Mirant Corp.*, No. 03-46590-DML-11, 2005 WL 6440372, at *1 n.1 (Bankr. N.D. Tex. May 24, 2005) (adjudicating official creditors committee's Rule 3013 motion "in connection with consideration" of disclosure statement and ruling on Rule 3013 motion over four months prior to entry of order approving disclosure statement); *In re DRW Prop. Co. 82*, 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986)

---

[21]   The Advisory Committee Note to Rule 3013 states: "Sections 1122 and 1322(b)(1) set the standards for classifying claims and interests but provide that such classification is accomplished in the plan.  This rule does not change the standards; rather it recognizes that it may be desirable or necessary to establish proper classification before a plan can be formulated.  It provides for a court hearing on such notice as the court may direct."  FED. R. BANKR. P. 3013.  Indeed, the only logical purpose of Rule 3013 is to provide a mechanism to determine proper classification prior to plan confirmation, as a party in interest could always challenge classification at confirmation even if Rule 3013 had never been adopted.

[22]   The Committee continues to review and evaluate, and reserves all rights with regards to, the classification of all of the separate classes in the Second Amended Plan, including but not limited to the classification of the GO Bond Classes, the Dairy Producer Claims in Class 50, the Eminent Domain Claims in Class 51, the Energy Incentive Claims in Class 52, the Med Center Claims in Class 53, and the Gracia-Gracia claims in Class 65.

(adjudicating debtors' and investors committees' joint Rule 3013 motion prior to solicitation of votes).

30.     It would be a tremendous waste of time and resources for all parties involved if parties were required to consider the myriad of issues raised by the lengthy Second Amended Disclosure Statement, and prepare and file any related objections, prior to the resolution of the threshold, and narrow, legal issues raised in the Renewed Motion should the Court determine (as the Committee believes it should) that the classification scheme set forth in the Second Amended Plan is fundamentally flawed.

31.     Consideration of the Renewed Motion at the disclosure statement stage—instead of waiting until after solicitation materials are mailed to tens of thousands of creditors—will conserve Commonwealth and judicial resources and guard against waste.  Deferral of the Renewed Motion, as proposed by the Oversight Board, risks having to undertake an expensive and time-consuming re-solicitation of the Plan in the inevitable scenario that the classification scheme is deemed contrary to First Circuit precedent.  Furthermore, because the Oversight Board would not address classification until a confirmation hearing, addressing classification now will allow the Court to potentially save the time and expense not only of solicitation of a fundamentally flawed plan, but also of preparing for a contested confirmation hearing on that same fundamentally flawed plan.

32.     Moreover, the purely legal classification issues raised in the Renewed Motion are not subject to settlement under Rule 9019 at the confirmation stage, as the classification structure is either illegal or it is not.  Therefore, there is no question that the Court will have to rule on the classification issues raised in this Renewed Motion; the only question is when.  Accordingly, while there is an obvious and important benefit to determining classification now, there is no

downside to addressing the classification issue at this point.  Finally, the Committee notes that

because (as explained below) the First Circuit has adopted a purely legalistic standard to

classification, the issues raised in this Renewed Motion can be resolved particularly quickly.

## II.   Classification Scheme in Second Amended Plan Cannot Be Approved Under First Circuit's Strict Approach to Classification

33.      The seminal case in the First Circuit regarding the appropriate classification of

claims is *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748

F.2d 42, 46 (1st Cir. 1984).  In that case, a pension fund had a claim against the debtor for

withdrawal liability in connection with the debtor's withdrawal from a multiemployer pension

plan (the "Pension Fund Claim").  The debtor proposed a plan under which general unsecured

creditors would receive a 30% recovery, and the Pension Fund Claim would be paid at 15%—

reducing the Pension Fund Claim "by one-half of the percentage other unsecured creditors would

receive."  *Granada Wines,* 748 F.2d at 44.  On appeal to the First Circuit, the debtor asserted that

"separate classification was justified because the withdrawal liability claim would be treated

differently from other general unsecured claims in a Chapter 7 proceeding" under a provision of

ERISA that reduces by half an employer's withdrawal liability in a chapter 7 liquidation (but not

in a chapter 11 reorganization).  *Id*. 46.

34.      Rejecting this argument, the First Circuit explained that "separate classifications

for unsecured creditors are only justified where the legal character of their claims is such as to

accord them a status different from the other unsecured creditors."  *Granada Wines*, 748 F. 2d at

46 (internal quotation marks omitted).  The First Circuit held that the statutory reduction of the

Pension Fund Claim was not "a sufficient basis for distinguishing the Pension Fund claim from

other general unsecured claims."  *Id.* at 47.  Even if applicable, the "limitation of liability under

[ERISA] affects only the allowable amount of the withdrawal claim, not its legal nature."  *Id.*

Accordingly, the First Circuit concluded that the debtor "could not separately classify the

Pension Fund claim" from other unsecured claims and affirmed the bankruptcy court's ruling

requiring the debtor to increase its payment of the Pension Fund Claim so that it received "the

same percentage" as the debtor "will pay other unsecured creditors on their claims."  *Id.* at 43,

47.

35.     Since then, courts in the First Circuit have consistently explained that, under

*Granada Wines*, "the First Circuit has adopted a strict approach, namely, that all claims of equal

legal priority must be placed in the same class, subject to the administrative convenience

exception."  *In re Barney & Carey Co.*, 170 B.R. 17, 22 (Bankr. D. Mass. 1994) (citing *Granada*

*Wines,* 748 F.2d at 46).  Courts in other circuits may have "adopted a test less stringent than the

strict approach of *Granada Wines* and permit[] separate classification of claims based upon the

economic or business reasons advanced by a debtor."  *In re Nat'l/Northway Ltd. P'ship,* 279 B.R.

17, 30 (Bankr. D. Mass. 2002).  However, "[t]he strict approach of *Granada Wines* carves out no

such exemptions to the general rule for classifying claims in [the First C]ircuit."  *Id.*; *see also In*

*re Bos. Post Rd. Ltd. P'ship*, 21 F.3d 477, 482 (2d Cir. 1994) (citing *Granada Wines* in support

of proposition that "some courts have gone even further, holding that a plan **must** classify all

substantially similar claims together, regardless of the debtor's intent,") (emphasis in original).

36.     "Given that the First Circuit applies the strictest approach to classification, it

necessarily follows that other courts have accepted justifications for separate classification that

are simply inconsistent with" First Circuit law.  *In re Hanish, LLC*, 570 B.R. 4, 15 (Bankr.

D.N.H. 2017).  Moreover, the First Circuit's strict approach that separate classification requires a

difference in "legal character" cannot be satisfied by legal distinctions that are of no impact in a

bankruptcy case.  "*Granada Wines* requires a difference in rank concerning rights against the debtor or its property."  *In re Bjolmes Realty Tr.*, 134 B.R. 1000, 1003 (Bankr. D. Mass. 1991).

37.     In *Bjolmes Realty*, the debtor had classified an unsecured deficiency claim held by the FDIC separately from other unsecured claims.  After dismissing as inconsistent with First Circuit law the debtor's "fond references to decisions handed down in other jurisdictions permitting separate classification of claims based upon practical difference[s] among the classes," 134 B.R. at 1003, the court addressed the debtor's argument that (as required by *Granada Wines*), the FDIC claim was of a different legal nature than other unsecured claims due to "legal features of the FDIC unsecured claim which are not present in the trade debt" including the presence of personal guarantees and the benefit of a longer statute of limitations.  *Id.* However, the court rejected this argument as well, explaining that such non-bankruptcy differences in legal rights and obligations "are not enough" under *Granada Wines* and that "*Granada Wines* requires a difference in rank concerning rights against the debtor or its property."  *Id.*

38.     The Second Amended Plan separately classifies Class 48A from Class 55 notwithstanding that the claims in both classes are general non-priority unsecured claims.  The Oversight Board has not offered (nor can it offer) any "difference in rank concerning rights against the debtor or its property."  As such, as a matter of law, the proposed classification scheme cannot be approved under controlling First Circuit law.[23]

39.     Certainly, the Committee is cognizant of the critical contributions and value that were provided by all creditors in Class 48A and in Class 55, among others.  As the fiduciary for

---

[23]   Because the First Circuit has rejected any such considerations, there is no need to delve into the importance to Puerto Rico, the Commonwealth, or any proposed plan of adjustment of any creditor body weighed against any other, including any purported "governmental justifications" (whatever those may be).  April 22 Hr'g Tr. at 19:2-3.  The Committee reserves all rights in this regard.

all general unsecured creditors, the Committee is obligated, and will continue, to work to obtain

the highest possible recovery for its constituents consistent with all applicable legal

requirements.  Thus, the Committee asks merely that—just as the First Circuit did in *Granada

Wines*—this Court ensure that Class 55 general unsecured claims receive the same percentage on

their claims as the Oversight Board will pay the general unsecured claims in Class 48A.

### <u>NOTICE</u>

40.     Notice of this Renewed Motion has been provided to the following entities, or

their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the

District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and

Financial Advisory Authority; (v) counsel to certain ad hoc groups of holders of bonds issued or

guaranteed by the Debtors; and (vi) all parties that have filed a notice of appearance in the Title

III Cases.

### <u>NO PRIOR REQUEST</u>

41.     Other than in the Original Rule 3013 Motion, no previous request for the relief

requested herein has been made to this or any other court.


[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that the Court enter an order,

substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this

Renewed Motion and granting such other relief as the Court deems just and proper.


Dated: April 13, 2021                    By:  _/s/ Luc A. Despins_

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*


By:   _/s/ Juan J. Casillas Ayala_

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR
306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured
Creditors*