## **EXHIBIT B**

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 2 of 99

1

```
 1                      UNITED STATES DISTRICT COURT

 2                       DISTRICT OF PUERTO RICO

 3
       In Re:                      )      Docket No. 3:17-BK-3283(LTS)
 4                                  )
                                    )      PROMESA Title III
 5     The Financial Oversight and  )
       Management Board for         )
 6     Puerto Rico,                 )      (Jointly Administered)
                                    )
 7     as representative of         )
                                    )
 8     The Commonwealth of          )
       Puerto Rico and the          )
 9     Puerto Rico Electric         )
       Power Authority,             )      April 22, 2020
10                                  )
                        Debtors,    )
11
       _____
12

13
       In Re:                      )      Docket No. 3:17-BK-3566(LTS)
14                                  )
                                    )      PROMESA Title III
15     The Financial Oversight and  )
       Management Board for         )
16     Puerto Rico,                 )      (Jointly Administered)
                                    )
17     as representative of         )
                                    )
18     Employees Retirement System  )
       of the Government of the     )
19     Commonwealth of Puerto Rico, )
                                    )
20                        Debtor,   )

21     _____

22

23

24

25
```

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 3 of 99

2

```
 1  _____

 2                        OMNIBUS HEARING

 3    BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

 4               UNITED STATES DISTRICT COURT JUDGE

 5    AND THE HONORABLE U.S. MAGISTRATE JUDGE JUDITH GAIL DEIN

 6               UNITED STATES DISTRICT COURT JUDGE

 7  _____

 8  APPEARANCES:

 9  ALL PARTIES APPEARING TELEPHONICALLY

10  For The Commonwealth
    of Puerto Rico, et al.:  Mr. Martin J. Bienenstock, PHV
11                           Mr. Brian S. Rosen, PHV

12  For the Official
    Committee of Unsecured
13  Creditors:               Mr. Luc A. Despins, PHV
                             Mr. Shlomo Maza, PHV
14
    For the Puerto Rico
15  Fiscal Agency and
    Financial Advisory
16  Authority:               Mr. Peter Friedman, PHV
                             Mr. Luis C. Marini Biaggi, Esq.
17                           Mr. John Rapisardi, PHV

18  For Assured Guaranty
    Corp. and Assured
19  Guaranty Municipal Corp: Mr. William J. Natbony, PHV
                             Mr. Casey J. Servais, PHV
20
    For Ambac Assurance
21  Corporation:             Ms. Atara Miller, PHV

22  For the Lawful
    Constitutional
23  Debt Coalition:          Mr. Susheel Kirpalani, PHV

24

25
```

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 4 of 99

3

```
 1   APPEARANCES, Continued:

 2   For the Official
     Committee of Retired
 3   Employees of the
     Commonwealth of
 4   Puerto Rico:            Mr. Robert Gordon, PHV

 5   For AFSCME and AFT:     Mr. Kenneth Pasquale, PHV
                             Ms. Sherry Millman, PHV
 6
     For Employee Creditors: Ms. Ivonne Gonzalez Morales, Esq.
 7
     For the QTCB
 8   Noteholder Group:       Mr. Sabin Willett, PHV

 9   For the Special Claims
     Committee and UBS
10   Financial:             Mr. Paul Lockwood, PHV
                            Mr. Roberto Quinones Rivera, Esq.
11                          Mr. Harold Vicente, Esq.
                            Ms. Sunni P. Beville, PHV
12                          Ms. Chelsea E. Mullarney, PHV

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings recorded by stenography.  Transcript produced by
25   CAT.
```

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 5 of 99

4

```
 1                         I N D E X

 2   WITNESSES:                                    PAGE

 3        None offered.

 4

 5   EXHIBITS:

 6        None offered.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 6 of 99

5

```
 1                                    San Juan, Puerto Rico

 2                                    April 22, 2020

 3                                    At or about 9:29 AM

 4                         *      *      *

 5           THE COURT:  Buenos dias.  This is Judge Swain

 6   speaking.

 7           MS. GONZALEZ MORALES:  Good morning.

 8           THE COURT:  Good morning.

 9           Ms. Tacoronte, would you announce the case, please?

10           COURTROOM DEPUTY:  Absolutely, Your Honor.

11           In Re:  The Financial Oversight and Management Board

12   for Puerto Rico, as representative of the Commonwealth of

13   Puerto Rico, et al., debtors, PROMESA Title III, case No.

14   2017-BK-3283 is now in session.

15           THE COURT:  Again, good morning.

16           I'm sorry.  Did someone say something?  Hello?

17           All right.  And so buenos dias and good morning.

18   Welcome counsel, parties in interest and members of the public

19   and press.  Today's Omnibus Hearing is occurring against the

20   backdrop of circumstances that have no doubt been extremely

21   challenging for everyone attending this telephonic hearing.

22           These are difficult times for the United States and

23   for the world more generally, and our thoughts are with all of

24   the people on the island and on the mainland who are affected

25   directly and indirectly by the novel coronavirus pandemic.
```

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 7 of 99

6

1    And Puerto Rico continues to address challenges from the

2    recent earthquakes, hurricanes, and the ongoing financial

3    issues that bring us all together today.  At the same time,

4    despite these trying circumstances, or perhaps because of

5    them, it is critical that, to the extent possible, progress

6    continues to be made as much as possible in these cases for

7    the benefit of Puerto Rico, the other Title III debtors, and

8    their many stakeholders.

9          To ensure the orderly operation of today's telephonic

10   hearing and a clear record of that hearing, all parties on the

11   line must mute their phones when they are not speaking.  No

12   sound recording or retransmission of any aspect of the

13   proceeding is permitted.

14         I will be calling on each speaker during these

15   proceedings.  When I do, please identify yourself by name for

16   clarity of the record.  After the speakers listed on the

17   Agenda for each matter have spoken, I will provide an

18   opportunity for other parties in interest to address briefly

19   any issues raised during the course of the oral argument that

20   require further remarks.  If you wish to be heard under these

21   circumstances, please state your name clearly at the

22   appropriate time.  I will call on the speakers if more than

23   one person wishes to be heard.

24         Please don't interrupt each other or me during this

25   hearing.  If we interrupt each other, it is difficult to

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 8 of 99

7

1  create an accurate transcript of the proceedings.  Having said

2  that, I apologize in advance, because I will likely break this

3  rule.  I will interrupt if I have questions or if you go

4  beyond your allotted time.  However, if anyone has difficulty

5  hearing me or another participant, please say something

6  immediately.

7        The time allotments for each matter and the time

8  allocations for each speaker are set forth in the Agenda that

9  was filed by the Oversight Board on Monday, April 20th.  That

10  Agenda was filed as docket entry No. 12899 in case 17-3283,

11  and it is available to the public at no cost on Prime Clerk

12  for those interested.

13        I encourage each speaker to keep track of his or her

14  own time.  If there's anyone on a speaker phone or who hasn't

15  muted, please mute, because there's some interference.  I'm

16  not sure where it's coming from.  The Court will also be

17  keeping track of the time and will alert each speaker when

18  there are two minutes remaining with one buzz, and when time

19  is up, with two buzzes.  And here is an example of the buzz

20  sound that you will hear.

21        (Sound played.)

22        THE COURT:  If your allocation is two minutes or

23  less, you will just hear the final two buzzers.

24        If we need to take a break, I'll direct everyone to

25  disconnect and dial back in at a specified time.  Again, I

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 9 of 99

8

1    remind everyone that consistent with court and judicial

2    conference policies and the Orders that have been issued, no

3    recording or retransmission of the hearing is permitted by any

4    person, including but not limited to the parties, members of

5    the public, or the press.  Violations of this rule may be

6    punished with sanctions.

7          Our timetable for today is, for morning session, from

8    9:30 to 12:00 noon, and then to recommence at one o'clock and

9    go to five o'clock, if necessary.

10         Our first Agenda item is, as usual, status reports

11   from the Oversight Board and AAFAF.  As I requested in the

12   Procedures Order, these reports have been made in writing, in

13   advance of this telephonic hearing, and are available on the

14   public docket.

15         Did someone just try to speak?  Would you please mute

16   -- please mute your phones.

17         All right.  The status reports have been made in

18   writing in advance of the hearing, and they're available on

19   the public docket.  I thank the Oversight Board and AAFAF for

20   the care and detail reflected in the reports.  I find them

21   comprehensive, and I have no questions for counsel about them.

22         Do any counsel who are -- well, first of all, do the

23   representatives of the Oversight Board wish to add anything to

24   the report at this time?

25         Mr. Bienenstock, is there anything in addition?

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 10 of 99

9

1            MR. BIENENSTOCK:  In addition?

2            THE COURT:  Mr. Bienenstock, do you wish to say

3    anything in addition?

4            MR. BIENENSTOCK:  Nothing in addition.

5            THE COURT:  Thank you.

6            Mr. Rapisardi or Mr. Friedman, did you wish to say

7    anything in addition?

8            MR. RAPISARDI:  No, Your Honor.  We have nothing to

9    add in addition to the comments by the Court.

10           THE COURT:  And who is that speaking?

11           MR. RAPISARDI:  I'm sorry.  It's John Rapisardi.

12   Good morning.

13           THE COURT:  Good morning.  Thank you.

14           Do any other counsel who are on the line have any

15   questions or comments that they wish to make in connection

16   with the status reports?  State your name clearly now if you

17   do, and then wait for me to call on you to speak.

18           (No response.)

19           THE COURT:  All right.  We will now move on to the

20   next Agenda item, which is the UCC's motion under Rule 3013 to

21   reclassify certain claims, Class 39A and Class 41, which was

22   joined by a number of other parties.

23           Before I hear arguments from the parties, I'd like to

24   make a few comments and give you a preview of what my current

25   thoughts are regarding the most appropriate path forward with

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 11 of 99

10

1   respect to the Court's consideration of the motion and other

2   related requests for relief, with the expectation that you

3   might want to tailor your comments accordingly.

4          The Court understands from the UCC's Reply Brief that

5   the UCC is willing to have its motion heard in conjunction

6   with the disclosure statement litigation.  The Court had

7   signaled an inclination to coordinate this motion practice

8   with the disclosure statement proceedings when this motion was

9   discussed at the March Omni; and the Court is inclined to deny

10  the motion without prejudice at this time and cue up the

11  motion and other related applications in connection with the

12  anticipated disclosure statement hearing.

13         The Court recognizes that there are a number of

14  important and hotly disputed legal issues implicated by the

15  motion, including the extent to which *Granada Wines* is

16  controlling in this case.  The Court also recognizes that both

17  sides, generally speaking, there are two sides to this, have

18  raised colorable arguments in support of their respective

19  positions, and that, not withstanding the relatively narrow

20  relief sought by the UCC, a resolution on the merits of even

21  the motion itself will likely have meaningful implications for

22  the rights of many other parties in interest in these Title

23  III cases.

24         I also acknowledge the practical benefits associated

25  with making a merits determination on the motion and other

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript  Page 12 of 99

11

1   related disputes concerning classification in the context of a

2   concrete plan proposal, but before the vote solicitation

3   process on the relevant plan commences, to the extent that

4   that's possible.  Hence, my inclination to proceed in the

5   fashion that I have described.

6         And I look forward to hearing your reactions to these

7   comments, as well as any other argument that you feel

8   appropriate to offer at this time.  And so now I will turn it

9   over to begin with Mr. Despins and/or Mr. Maza, who have been

10   allocated a total of 23 minutes.

11         MR. DESPINS:  Good morning, Your Honor.  Luc Despins

12   with Paul Hastings.  I hope you can hear me clearly.

13         THE COURT:  Yes, I can.  Good morning, Mr. Despins.

14         MR. DESPINS:  Good morning.

15         Obviously I've prepared a long presentation that

16   would cover 23 minutes, but your comments, you know, make a

17   lot of that not necessary.  So I'm doing this on the fly,

18   because there are things that you raised at the end of your

19   comment that I need to understand.

20         But first, as we said in our Response, we are okay

21   with having this decided as part of the disclosure statement

22   hearing, but not later than that.  And, therefore, if Your

23   Honor, you know, wants to -- obviously you control your

24   docket.  And we think it would be okay to go forward today,

25   but if you -- if you feel more comfortable waiting for the

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 13 of 99

12

1    disclosure statement hearing, so that there's no possibility
2    that things change between now and then, we understand.  And
3    that's why we said that in our Reply.
4           This being said, we have not heard anything from the
5    Oversight Board that indicates that this issue is going to go
6    away.  But needless to say, you -- I mean, you've already
7    indicated your intention to rule, and therefore, I don't want
8    to spend -- waste a lot of the Court's time.
9           The part -- and I apologize for doing this, but the
10   part that I'm not sure I understood is that, at the end, you
11   said something about deciding this issue before the -- before
12   the voting process or -- and I'm sorry if the -- if you're --
13   the Court was indicating that you might defer this issue till
14   after this voting, then obviously we don't agree with that.
15   We think it's critical that it be decided before then, because
16   we're going to spend millions of dollars in that process.  But
17   again, I was -- I may not have heard Your Honor's comments
18   clearly on that.
19          So other than that, Your Honor, I mean, I was ready
20   to address the merits of the motion and all that, but I would
21   say also, in terms of -- instead of denying the motion, why
22   is it not adjourned to the disclosure statement hearing, so
23   we don't have to refile it or anything of the sort?  Because
24   the briefing is fairly complete.  Unless the Board is going
25   to change the Plan in a way that affects this issue, we would

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 14 of 99

13

1    just say, you know, let's adjourn that to that hearing date

2    rather than denying the motion at this time.

3            So these would be my opening comments, Your Honor.

4            THE COURT:  All right.  I thank you for your brevity,

5    and I will respond to a couple of the issues that you raised.

6            When I said that I believe these issues are better

7    entertained in connection with the disclosure statement, and I

8    think I included a couple of hedging words like "it's

9    possible," "to the maximum extent possible, determined in

10   advance of voting," I was quite serious.  I think that we need

11   to go into the disclosure statement and solicitation of votes,

12   assuming we get that far, with issues relating to proper

13   classification decided and those determinations reflected

14   appropriately in the solicitation materials.

15           There are arguments in the papers that have been

16   filed about 1122 issues and 1129 issues, and some

17   argumentation that some things may be premature even after the

18   disclosure statement stage.  Those are issues that I'll have

19   to take up and hear and determine.  I intend to do that in the

20   first instance in connection with the disclosure statement

21   hearing, but I can't say, not having heard everyone on the

22   merits and not having sought to determine the merits, I can't

23   promise you that I won't be persuaded that there's something

24   that, either for factual or legal reasons, needs to be left

25   open in some way, even going into the disclosure statement

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 15 of 99

14

1    hearing.  So that was the reason for that bit of a hedge.

2        When I speak about deciding any issues without

3    prejudice to renewal, I take into account the possibility that

4    the Plan may be further amended as proposed, that may or may

5    not make changes that are material to some or all of the

6    issues that have been raised here.

7        There have also been a variety of issues put onto the

8    basic structure of the motion initiated by the UCC.  I think

9    some unbundling of those issues may be appropriate when we

10   come back to them, by reason of changes in the Plan, by reason

11   of developments in the revenue bond litigation, and also,

12   frankly, for clarity.  And so my intended denial of the motion

13   without prejudice is also intended to create an opportunity

14   for updated and more discrete packaging of the issues of

15   various constituencies in relation to the disclosure statement

16   litigation.

17       So I hope that helps to clarify that.

18       MR. DESPINS:  Yes, Your Honor.  Thank you very much.

19   It's very clear.  Thank you.

20       THE COURT:  Thank you.

21       And so I will now call on Ms. Miller for Ambac.

22       MS. MILLER:  Good morning, Your Honor.  Atara Miller

23   for Milbank on behalf of Ambac.  We, like the UCC, have no

24   objection to Your Honor's proposed path forward.  We think

25   that, as the Court seems to be inclined to do, that it's

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 16 of 99

15

1    critical to decide the issue in connection with the disclosure

2    statement and before voting.

3             With that, there are only two brief points that I'd

4    like to make.  And one is that we still think that it's

5    critical that the Court consider and address, at the

6    preliminary stage, the Oversight Board's argument that the

7    Court simply doesn't have discretion to consider the

8    classification arguments raised under Rule 3013 because of

9    certain provisions under PROMESA.  We think that if we're

10   going to move forward with a 3013 classification dispute in

11   connection with the disclosure statement, that there should be

12   clear guidance from the Court regarding the scope of its

13   authority.  And I think that argument has been fully laid out

14   in the papers.

15            The second thing, and I think this is mooted,

16   although the Court didn't address it directly, so I'll just

17   make the argument that the Board seems to be requesting, in

18   its opposition papers, that the joinders of Ambac and Assured

19   be stricken.  That's obviously not procedurally proper, but

20   it's also, in our view, without legal basis.

21            And so to the extent that it's going to be adjourned,

22   our view is that all of the relief sought should be denied,

23   and everybody can refile at the appropriate time.  So unless

24   Your Honor has any questions, that's all we have to add.

25            THE COURT:  And so you're saying that a denial

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 17 of 99

16

 1   without prejudice works for you on that procedural bundling

 2   issue?

 3            MS. MILLER:  Correct.  Yeah.  I think it would be

 4   mooted in a second phase when everybody refiles, because

 5   frankly, I think it's just a procedural issue.  But -- so yes,

 6   it would be fine with us.

 7            THE COURT:  Thank you.

 8            Now let's turn to Assured.  Mr. Natbony.

 9            MR. NATBONY:  Thank you, Your Honor.  Bill Natbony.

10   I'll defer to Mr. Servais.

11            MR. SERVAIS:  Thank you, Your Honor.

12            THE COURT:  Hello, Mr. Servais.

13            MR. SERVAIS:  Hello, Your Honor.  This is Casey

14   Servais from Cadwalader on behalf of Assured.

15            Our position is essentially aligned with Ambac's

16   position.  We do support deferring these issues until the

17   disclosure statement hearing.  Obviously, we support the

18   relief requested in the Committee's motion, but we have

19   additional classification issues that go beyond those that

20   were the focus of the Committee's motion.  And we believe it

21   would be efficient if all of those different classification

22   issues could be addressed at the same time in connection with

23   the disclosure statement hearing.

24            So we are fully on board with Your Honor's procedural

25   proposal this morning.

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 18 of 99

17

1            THE COURT:  Thank you, Mr. Servais.

2            Mr. Natbony, did you want to add anything or is that

3   it for Assured?

4            MR. NATBONY:  That's it, Your Honor.  Thank you for

5   your time.

6            THE COURT:  Thank you.

7            And Ms. Gonzalez Morales for the Employee Creditors.

8            MS. GONZALEZ MORALES:  Yes, Your Honor.  Good

9   morning.

10            THE COURT:  Good morning.  Did you wish to make any

11   remarks?

12            MS. GONZALEZ MORALES:  At this time, no, Your Honor.

13            THE COURT:  Okay.  Thank you.

14            I'll turn then now to the Oversight Board.

15   Mr. Bienenstock.

16            Mr. Bienenstock, are you there?

17            MR. BIENENSTOCK:  Your Honor?  Can you hear me, Your

18   Honor?

19            THE COURT:  I can hear you now, yes.

20            MR. BIENENSTOCK:  Okay.  Thank you.

21            A few things.  First, on behalf of the Board, its

22   advisors, Proskauer and myself, we wanted to wish the Court,

23   its staff, all the people in Puerto Rico, all of the creditors

24   and their advisors here today good health and hopefully a

25   speedy return to when we can all be together.

1          In respect of today's argument and Your Honor's

2   preliminary comments, I -- our response is a little more

3   comprehensive than what you've heard so far for reasons I will

4   explain.  We clearly agree that the motion should not be

5   determined today.  And pushing it to the disclosure statement

6   hearing, or thereabouts, is definitely something we can

7   support, but in part.  And I want to explain why.

8          As Your Honor knows, the UCC, as well as the partial

9   joinders, have made a number of contentions in support of

10  their request that the Court find the existing classification

11  as unconfirmable under Section 1122.  Some of the reasons, for

12  instance, that they have each urged are gerrymandering.  The

13  Court will not know, at the disclosure statement stage,

14  whether there's any legs behind gerrymandering, because the

15  Court won't know if there are other unimpaired accepting

16  classes that would make acceptance of the Retiree class

17  irrelevant insofar as Bankruptcy Code Section 1129(a)(10)

18  goes.  You know, the provision requiring at least one impaired

19  accepting class.

20          Second, no one knows, maybe the Court knows, but

21  maybe not, how the Court will ultimately reason through and

22  determine this issue.  One of the many possibilities, which

23  the Oversight Board believes would be the correct one, is that

24  the Board will -- the Court will determine that separate

25  classification of unsecured claims, as long as it's not for

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 20 of 99

19

1     the purpose of gerrymandering, is okay.

2              And it's especially okay if there's a -- what we say

3     is a governmental justification, as opposed to in Chapter 11

4     cases, a business justification, because, as the Court knows,

5     this Court and the First Circuit have both observed several

6     times now that Title III cases are to make sure the territory

7     survives and is sustainable, and it's not exactly the same as

8     a Chapter 11 case, where maximization of profit or return has

9     a primary place.

10             So if, in fact -- I mean, we will be urging, whenever

11    this issue is heard, that there is ample governmental

12    justification, and we would want to prove that, which is one

13    of the primary reasons why our pleading explained that this

14    should really be taken -- this is a confirmation objection.

15    It should be taken up in connection with our confirmation when

16    the Court will have access to all of the evidence.

17             Now, we're totally sympathetic and understand the

18    notion that why go forward with the expense and time of voting

19    if the Court's going to determine the classification is wrong,

20    because that would be a waste.  I would say, though, that if

21    the Court looks at the Committee's proposed order on its 3013

22    motion, while in paragraph two of its proposed order it asks

23    the Court to require the classification together of classes

24    39A and 41, in paragraph four of its proposed order, it says,

25    "This is without prejudice to the Committee deciding that

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 21 of 99

20

1  there are other classification issues in the Plan that it can

2  take up whenever."

3        And so this notion of doing something for the

4  efficiency, both of the judicial efficiency and parties'

5  efficiency, it's eventually diluted, if not totally lost, by

6  the Committee's position.

7        We also urged in our pleading something very similar

8  to what I just said, which is that there's no such thing, as

9  we read 3013, as the Court taking two classes, when the Plan

10  has around 40 or 41 or so classes, and saying these two should

11  be together.  Well, how can the Court know that without

12  knowing what kinds of claims are in each of the other classes?

13        And so the point that we believe this leads to is

14  that whenever this is taken up, whether it's at confirmation

15  or at the disclosure statement stage, it needs to be

16  comprehensive if it's going to have meaning.  All of the

17  classifications of all the 40 or so classes need to be on the

18  table, understood, and -- so the Court can rule on

19  classification once and for all, and not subject to being

20  second-guessed later by other classification objections that

21  the Committee's proposed order proposes to reserve to itself.

22        Now, shifting issues a bit, Your Honor, we -- you

23  know, the Board has been accused by some of the movants and

24  partial movants, that we want to do everything to put off the

25  resolution on the merits, because, you know, we're worried

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 22 of 99

21

 1    about it; but we think it's close to confirmation; we have a

 2    better chance of success or some such thing.  I just want to

 3    say, as the Court would assume we would say, that is totally

 4    wrong from the Oversight Board's point of view.

 5           And frankly, if not for some of the issues I just

 6    mentioned, that the Court needs to know if there are other

 7    accepting classes, the Court needs to know what governmental

 8    justifications are, we would love to have this issue decided,

 9    for some of the same reasons as everyone else wants it

10    decided, so we don't go forward on a Plan that can't be

11    confirmed because of classification.  And we'd love to get

12    this out of the way.

13           Now, on that point, I want to make the following

14    observation that pulls together some of the arguments made by

15    the Oversight Board, the Retiree Committee, and others

16    supporting us, but pulls it together in a way that I think

17    didn't happen in the briefing, simply because everyone's been

18    making different arguments and thinking has evolved, et

19    cetera, and that's this point, that is so obvious, we didn't

20    say it as obviously as it is.  In the Retiree class, putting

21    aside how much we pay them to try to get them to the poverty

22    level -- that's not relevant for the point I'm about to make,

23    but in the retiree class, the treatment is to give each

24    retiree payments monthly for the duration of their lives, and

25    sometimes, depending on the law, or the contract, or the

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 23 of 99

22

 1   statute, their spouse's life.  And as the Court knows, under

 2   Bankruptcy Code Section 1123(a)(4), everyone in the class

 3   needs to have the same treatment, unless someone volunteers

 4   for a lesser treatment.

 5        So here's the issue.  If we take a commercial claim,

 6   whether it's Ambac's claim, a bondholders' claim, anyone's

 7   claim, and put it into the retiree class, the question is:

 8   For the duration of whose life should Ambac or a bondholder or

 9   anyone else get a series of payments?

10        Now, obviously that's crazy.  Commercial claims

11   aren't treated like that.  So the notion that commercial

12   claims need to be classified with pension claims is something

13   that, Your Honor, I don't think -- to my knowledge, it has

14   never happened in any Chapter 11 case.  You can consult all

15   the airline cases that have huge pension plans.  It's never

16   occurred in a Chapter 9 case.

17        No one would dream of treating a commercial claim the

18   way we're treating a pension claim; and in the reverse, no one

19   would dream of saying to the retirees, you're not going to get

20   monthly payments for the rest of your life; we're going to

21   give you a flat amount; and in the case of half of you, it

22   will last the rest of your life or longer; and in the case of

23   the other half of you, it won't.  That can't ever happen.  No

24   one's ever tried that, and no one ever would.

25        And, you know, if -- I don't know if, given the

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 24 of 99

23

1    direction of this, the hearing on this matter, either the UCC

2    or some of the other partial movants want to respond, but I'd

3    love to hear anyone give the Court -- explain to the Court how

4    the two commercial claims and retiree claims could ever be

5    combined in the same class with the same treatment, and

6    whether they've ever seen it before, including in the First

7    Circuit.  We haven't.  We can't imagine that that could ever

8    happen.

9          Now, on that basis alone, we frankly think the motion

10   could and has to be denied, whether that's today or at the

11   disclosure statement hearing, or at the confirmation hearing.

12   But the other point that that analysis demonstrates, we

13   believe, is that, as we said in our pleadings, although they

14   couch it as a 3013 motion, it's really unfair discrimination.

15         And not only is that our conclusion, but the Court

16   can look at some of the pleadings that the UCC and Ambac and

17   Assured filed, and they're asked -- for instance, the UCC

18   motion at paragraph 25 at page 11 says -- they ask that the

19   Class 41 general unsecured claims receive the same percentage

20   on their claims as the Oversight Board will pay the general

21   unsecured claims in Class 39A.

22         They worded that as they want equal treatment, not

23   that they should be in the same class, possibly because they

24   realize what I explained earlier.  You cannot put commercial

25   claims in the same class as retiree pension claims.  It just

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 25 of 99

24

1    doesn't work, and it makes no sense.

2         So I guess enough said.  I've made the point.  But

3    I'm making it now because I just want the Court to know that

4    at least from the Oversight Board's point of view, on that

5    basis, this motion can and should be decided any time.  If the

6    Court is going to go into further classification and go

7    through all the classes and ask for justifications, then

8    whenever that happens, whether at the disclosure statement

9    hearing or at confirmation, I want to -- I'll tell the Court

10   now that, you know, we will be asking to be able to make a

11   full record of the governmental justifications and all other

12   reasons why we think the separate classifications are

13   warranted and legal.

14        I obviously, as Mr. Despins had prepared, had a lot

15   of other remarks prepared.  We were -- I was going to rebut

16   the way the movants and partial movants purported to

17   distinguish the cases we cited.  We think they were clearly

18   wrong, but we know the Court reviews the cases.  And given the

19   direction of this hearing on this matter, I won't take the

20   Court and everyone else's time.

21        But suffice it to say, we submit that they have

22   misrepresented the cases that we've cited, showing that even

23   in the District of Puerto Rico, the rule they say applies has

24   not been applied; and, frankly, I think -- we think the First

25   Circuit would be shocked if anyone ever told it that, based on

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 26 of 99

25

 1  its observations in *Granada Wines,* that retiree claims have to

 2  be classified with commercial claims, you know.

 3         In that case, that was a claim for withdrawing from a

 4  pension plan.  It wasn't retirees in the plan --

 5         THE COURT:  Mr. Bienenstock.

 6         MR. BIENENSTOCK:  Yes.

 7         THE COURT:  Mr. Bienenstock, I'm interrupting you.  I

 8  do thank you for streamlining your remarks, and your

 9  confidence that I have read the papers, and that we have been

10  studying the cases, and the parties' arguments in relation to

11  the cases is well-founded.  I do intend not to engage the

12  merits today, but instead, to visit them on more briefing

13  focused on the plan disclosure statement proposal with which

14  you intend to go forward when that schedule is reset.

15         I do thank you for the remarks that were substantive

16  that you made insofar as I think that that may help with the

17  focus of the reformulation of the parties' arguments for the

18  presentation of the parties' arguments in connection with the

19  disclosure statement hearing.  You provided a bit more context

20  of the Oversight Board's thinking that, as you say, was not

21  quite as explicit or as patent in the written submissions.

22         MR. BIENENSTOCK:  Thank you, Your Honor.

23         Unless the Court had other questions of me, I think

24  those are all the remarks appropriate, again, given the

25  direction of this hearing.  So thank you.

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 27 of 99

26

 1              THE COURT:  Thank you, Mr. Bienenstock.  And thank

 2  you for your good wishes for all, which are also ones that the

 3  Court extends, too.

 4              Now let's turn to the Retirees Committee.

 5  Mr. Gordon.

 6              MR. GORDON:  Yes.  Good morning, Your Honor.  Robert

 7  Gordon of Jenner & Block on behalf of the Official Retirees

 8  Committee.

 9              Your Honor, I --

10              THE COURT:  Good morning.

11              MR. GORDON:  Good morning.

12              Your Honor, I'll be brief.  I wholly concur in the

13  comments of Mr. Bienenstock.  We do not have any objection to

14  adjourning, if you will, these issues, at least until the

15  disclosure statement hearing stage, with the caveat that I

16  would like to be able -- we would like to be able to still

17  argue at that point that it still is premature for all the

18  reasons that Mr. Bienenstock pointed out.

19              I think that the problem in this particular case is

20  it's virtually impossible to separate out the classification

21  issues from the -- what I'll call the business justifications

22  for separate classification.  Mr. Bienenstock refers to them

23  as governmental justifications.  And those justifications

24  require all sorts of evidence to be put on as to the thinking

25  of the Oversight Board, as the Plan proponent, and that,

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 28 of 99

27

 1  generally speaking, is not appropriate at the disclosure

 2  statement stage.

 3          So the Court will be left in a situation where it is

 4  trying to determine in a vacuum whether separate

 5  classification is appropriate without knowing the business

 6  justifications, and that smacks to me of being advisory.  The

 7  only basis I could see for a ruling on the narrow issue of

 8  whether retiree claims could be separate from all the others

 9  is the one that Mr. Bienenstock has very succinctly and

10  eloquently laid out regarding the difference in payment.

11          So, Your Honor, with that, again, we would agree to

12  an adjournment, reserving the right to argue that this -- all

13  of this can only really be addressed in conjunction with the

14  unfair discrimination issues as a practical matter at the

15  confirmation stage.  Thank you.

16          THE COURT:  Thank you, Mr. Gordon.

17          And now Mr. Willett, for the QTCB Debtholder Group.

18          MR. WILLETT:  Good morning, Your Honor.  Sabin

19  Willett of Morgan Lewis for the QTCB Group.

20          In light of Your Honor's --

21          THE COURT:  Good morning.

22          MR. WILLETT:  In light of Your Honor's colloquy with

23  counsel, I really have only one observation to make.  Exhibit

24  A to the Assured Reply includes PROMESA's legislative history.

25  At page 45, commenting on Section 201, the Committee notes

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 29 of 99

28

1    provide that retiree claims are not to be unduly favored.

2         It's worth chewing on that.  They can be favored,

3    just not unduly favored.  And if they can be favored, not only

4    can they be separately classified, it seems they have to be,

5    and not simply for the important reasons that Mr. Bienenstock

6    laid out.  What would be in need in Puerto Rico -- I would

7    expect you would need evidence, economists, labor experts, the

8    retirees themselves.  In other words, a confirmation rather

9    than a disclosure statement issue.

10        Your Honor, when Senate hearings dragged on, Harry

11   Reid used to comment that while everything necessary had been

12   said, not everyone had yet had a chance to say it.  In lieu of

13   the Court's comments, if I were to carry on, I'd soon earn

14   that description, so I'll stop here unless Your Honor has

15   questions.

16        THE COURT:  Thank you, Mr. Willett.

17        Now, for AFSCME and AFT, Mr. Pasquale or Ms. Millman.

18   I have you down for two minutes, but everybody's been brief.

19        MR. PASQUALE:  Yes, Your Honor.  This is Ken Pasquale

20   from Stroock & Stroock & Lavan for AFT and its local at MPR,

21   and AFSCME and its local, SPU.

22        Your Honor, in light of your comments, we will not

23   burden the record and just reserve for when this is taken up

24   by the Court.  Thank you.

25        THE COURT:  Thank you.

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript  Page 30 of 99

29

1                 And so I turn to Mr. Kirpalani for the LCDC.

2                 MR. KIRPALANI:  Hey.  Good morning, Your Honor.  It's

3       Susheel Kirpalani from Quinn Emmanuel representing the Lawful

4       Constitutional Debt Coalition.

5                 You know, thank you, Martin, for your comments about

6       how important it is in this time for us to focus on positives

7       and hopefully one day getting back together.  And thank you,

8       Judge, and to your staff, for accommodating such an enormous

9       number of parties in such an efficient way.

10                I also will -- I guess I'll hold my comments on the

11      merits to when this motion is cued up again.  I will say that

12      I am surprised that Your Honor thinks that the disclosure

13      statement might be the right time to consider classification.

14      It certainly is not a requirement to do that.  And in a case

15      like this, which is much more complicated than any of the

16      cases cited by the joinder parties for when classification

17      should be considered outside of a confirmation, it really does

18      seem to me that the mediator's recommendations to consider

19      classification as one of the many confirmation requirements

20      seems the better course.

21                It isn't as though the Committee or the monoline

22      groups are saying that if the Oversight Board and the Plan

23      proponents prevail on classification, then they have no

24      objection.  So they really just want more bites at the apple,

25      and that is, you know, frankly, not good cause to have these

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript  Page 31 of 99

30

1   confirmation-related litigation issues heard prior to

2   confirmation, which is what the Court previously Ordered.

3          Good cause is not simply, I believe I'm right.  Good

4   cause has to be that it actually serves some purpose.  And it

5   can't be the purpose that, well, if I were to win because my

6   arguments are so good, then we can go back to the drawing

7   board.  Frankly, as the out-of-the-money stakeholders, the

8   Unsecured Creditors, you know, really are trying to tell the

9   Oversight Board and the senior most creditors, which are our

10  clients, how to spend their money.  And whether or not this

11  would be better done prior to embarking on a confirmation plan

12  -- respectfully, it is our risk, and if the Committee is

13  right, that classification was wrong, it was our money that

14  will have been spent in vain.

15         And we're willing to take that risk, because we

16  believe that the classification team is proper and we believe

17  we will prevail at confirmation.  And resolving this piece

18  meal is not going to expedite the case.  Obviously we'll

19  reserve more argument for when we get there, but I just wanted

20  to give you those comments, Your Honor.

21         THE COURT:  Thank you for the preview.  Thank you,

22  Mr. Kirpalani.

23         So now it is time for any remarks in response or

24  rebuttal, and I'll turn again to the UCC.

25         MR. DESPINS:  Yes, Your Honor.  I'm not going to

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 32 of 99

31

1  engage Mr. Bienenstock on his points.  We've thought about

2  all these issues, and we have appropriate responses.  I would

3  just point out that 1122 is not solely based on

4  gerrymandering.  And in any event, their argument is that

5  there's no gerrymandering because the bondholder class will

6  accept the Plan.

7           And, of course, you know, there's an issue -- that's

8  why we have this paragraph in our Order that says we reserve

9  our rights to argue that there's also other improper

10  classification.  And of course that goes to the issue of the

11  bondholders, because we believe that bondholders are just mere

12  unsecured creditors just like us.  And that's why I welcome

13  Mr. Bienenstock's promise to have a full-blown classification

14  hearing, because that's the only way to do it.

15          And when I hear that we're spending their money,

16  that's really -- you know, it really -- the people of Puerto

17  Rico should not be put through a whole voting solicitation

18  process for something that may be dead on arrival.  And that's

19  why this issue should be decided before there's a solicitation

20  process.  It's not dependent on the results of that process,

21  and the legal issues are not dependent on that.

22          And that leads me to my final comment, Your Honor, in

23  the representation, which is it makes sense.  I heard Your

24  Honor that if there's movement on the Plan -- that we should

25  wait to see if there is such movement, but this issue should

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 33 of 99

32

1    be teed up, I would say, a few weeks or maybe a month before

2    the disclosure statement hearing, because it's going to be a

3    beast to deal with, aside from all the other disclosure

4    statement hearing issues.

5         So we don't know when that is, or we don't know the

6    future.  We don't know when the Board will say, we're going

7    forward with this plan, or we're going forward with a

8    different plan.  But in any event, it just would make a lot of

9    sense to have this issue not be premature, but certainly in

10   conjunction, or at the same time as the disclosure statement

11   hearing.  But we believe these should be two separate

12   hearings, because again, why go through the whole disclosure

13   statement brain damage if this issue doesn't go the way the

14   Oversight Board wants it to go.

15        So that would be our last recommendation.  You don't

16   need to decide that issue now, but we would urge the Court, in

17   scheduling this, to consider having this before the disclosure

18   statement hearing, not by months, but by a certain amount of

19   time, so that the parties don't have to spend a lot of time on

20   the disclosure statement when the disclosure statement hearing

21   may not go forward.

22        So that would be our suggestion, Your Honor.  Thank

23   you.

24        THE COURT:  Thank you.

25        Ms. Miller, anything further for Ambac?

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 34 of 99

33

1          MS. MILLER:  Your Honor, in light of your comments,

2    we're not going to respond.  The only thing I would like to do

3    is correct what I think may have been a misimpression created

4    by counsel for the QTCB holders when citing to the Committee

5    notes on page 45, which was reference to Section 201.  And the

6    discussion there of the Plan, and the treatment of retirees

7    under the Plan, was under the Fiscal Plan and was not at all

8    talking about plans of adjustment or classification

9    thereunder.

10         So with that, we have nothing further to add.

11         THE COURT:  Thank you.

12         And anything further for Assured?

13         MR. SERVAIS:  This is Casey Servais from Cadwalader.

14         Just briefly on the timing points, we do want to

15   raise the concern that a primary reason that the objectors may

16   be attempting to push these issues to the confirmation hearing

17   is because they would like to be in a position to argue that

18   confirmation of a plan has mooted our classification

19   challenges.  And that obviously would be prejudicial to the

20   movants, who should be able to appeal this issue prior to

21   confirmation of the Plan, and that would be facilitated by

22   hearing the classification issues earlier, either at the

23   disclosure statement hearing or even slightly prior thereto as

24   proposed by Mr. Despins.

25         With respect to specifically Mr. Bienenstock's

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 35 of 99

34

1    argument that gerrymandering cannot be decided until the

2    confirmation hearing, we cited numerous precedents to the

3    contrary in our Reply Brief.  And what's important to

4    understand here is that with respect to gerrymandering, the

5    burden is actually on the Plan proponents to establish a

6    legitimate nongerrymandering purpose for each classification

7    decision in the Plan, not just with respect to a single class

8    like Class 39A.

9         We've obviously suggested that there are other

10   classifications on which they're hoping to rely for an

11   impaired accepting class, such as specifically the

12   classification of the GO bonds, that those other

13   classifications are also invalid, so they can't rely on those

14   other invalid classifications to defeat our gerrymandering

15   challenge.  They need to, as a matter of law, establish a

16   legitimate, nongerrymandering purpose for each classification

17   in the Plan.  And that should all be done in a comprehensive

18   manner.

19        With respect to the idea that there is a business

20   justification for a separate classification, we defeated that

21   as well in our Reply.  If you look at footnote six, as a

22   matter of law, business justification is not a valid basis for

23   separate classification in the First Circuit.

24        So that's not something that's going to be a complex,

25   factual issue at confirmation, as Mr. Gordon suggested.  That

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 36 of 99

35

1    is not a valid basis, as a matter of law, and can easily be

2    decided at the disclosure statement stage, or even before, as

3    Mr. Despins suggested.

4            So I just wanted to -- and one further point.

5    Mr. Bienenstock also again suggested that treatment, the

6    separate treatment proposed for the retiree claims was a basis

7    for separate classification.  That's also thoroughly refuted

8    in our Reply where we show that treatment is not, in fact --

9    proposed treatment is not a basis for separate classification.

10           So I just wanted to not let those substantive points

11   go past and provide a response to them; but I do agree that

12   they should be addressed more fully in a comprehensive manner

13   with all of the related classification issues, either at the

14   disclosure statement hearing or slightly before.

15           Thank you.

16           THE COURT:  Thank you.

17           Did anyone else wish to be heard on these matters or

18   heard again?  If so, state your name clearly again.

19           MS. GONZALEZ MORALES:  Yes, Your Honor.  My name is

20   Ivonne Gonzalez.  I represent a group of creditors called Wage

21   Claims Accrued During the Course of Employment.

22           THE COURT:  Yes, Ms. Gonzalez.

23           MS. GONZALEZ MORALES:  Can I address the Court?  Yes.

24   What we have to say here --

25           THE COURT:  Yes, you may.

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 37 of 99

36

1           MS. GONZALEZ MORALES:    Uh-huh -- is that we seek the

2   Honorable Court to Order the cert to be classified together,

3   claims arising under the ordinary course of employment

4   matters, included arbitrarily in Class 41, with Class 40

5   claims.

6           And specifically, the group I represent asserts that

7   evaluation rests in that the amended plan, with a reasonable

8   basis, provides wage claims priority treatment and full

9   satisfaction and recovery for Class 40, an amount resulting

10  from the disposition of prepetition action brought pursuant to

11  the grievances and arbitration procedures, and by the other

12  hand, includes in Class 41, the wage claims presented by the

13  group of creditors, and thus treating their claims as if they

14  were equivalent to general unsecured claims with limited

15  recovery.

16          We sustain that the objected classification unfairly

17  discriminates against the dissenting group of creditors due to

18  the fact that the nature of the claims held in both groups of

19  employees are of equal rank since emerged from contractual

20  obligations created by a statutory framework that regulates

21  the public employment.

22          In view of the above, the amended plan also realized

23  the equal implementation of the law as to the employees.  For

24  that reason, we pray to this Honorable Court to order debtors

25  to classify together the claims arising under the ordinary

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 38 of 99

37

 1    course of employment matters included in the Class 41 with

 2    Class 40 claims.

 3            We thank the Honorable Court for the opportunity to

 4    address this issue today.

 5            THE COURT:  Thank you, Ms. Gonzalez.

 6            And so I have listened carefully to -- yes.  Who else

 7    would like to speak?

 8            MR. BIENENSTOCK:  This is Martin Bienenstock of

 9    Proskauer Rose, LLP, for the Oversight Board.  I just wanted

10    to make one additional, or two additional very brief comments,

11    if that's okay.

12            THE COURT:  Yes, Mr. Bienenstock.

13            MR. BIENENSTOCK:  Thank you.

14            I alerted the Court earlier to at least the need that

15    we perceive to be able to prove governmental justification,

16    lack of gerrymandering intent, et cetera, at whatever hearing

17    we have on classification.  I didn't mention another set of

18    evidence that would be necessary, and I raise it now simply

19    for the Court's ability to plan time.  Although some of the

20    movants and partial movants have accused us, the Oversight

21    Board, of gerrymandering all of the different bondholder

22    classes, in fact, those separate classifications represent

23    settlements of different challenges to each of those issues of

24    bonds.

25            The Court and everyone here knows that the Board's

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 39 of 99

38

1  Special Claims Committee has filed actions challenging the

2  validity of many different series of the GO bonds, and in

3  very large part, the separate classification of bondholders

4  into different classes reflects different settlements of the

5  challenges to those bonds, as well as to their asserted

6  priority.  That overlaps all of them, and I raise this just

7  to alert the Court that if we're going to have a claim -- a

8  separate hearing on classification to justify all those

9  separate classes, we would obviously need to show that --

10  what's being settled, and that the settlements can be

11  approved.  That's not a short hearing, but it's integral to

12  why the classification is the way it is.

13        And finally, I won't take the time to respond to

14  Assured's argument that treatment doesn't matter.  I'll simply

15  say that all of that argument assumes that *Granada Wines*'

16  observations about classification was a holding and it's

17  binding in this situation.  We think that is the furthest

18  thing from the truth, but that obviously is going to be for

19  another day.

20        But thank you for the additional time, Your Honor.

21        THE COURT:  Thank you.

22        Did anyone else wish to speak?

23        (No response.)

24        THE COURT:  All right.  Then I will continue here.  I

25  do appreciate very much all of these remarks and all of the

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 40 of 99

39

1   submissions.  I remain persuaded that taking these issues up

2   again in conjunction and in coordination with a schedule that

3   is leading into a determination on the disclosure statement

4   and that is part of a continuum toward confirmation is

5   appropriate, and more appropriate than taking them up now.

6          I have heard the remarks and concerns today about the

7   potential for determinations on these issues that have been

8   characterized and cued up for the most part as classification

9   issues, being potentially a lengthy and complicated trial

10  turning on factual determinations as to the justification for

11  various classifications.

12         My intention is to take up, at the disclosure

13  statement stage, the classification arguments, or the

14  arguments that have been made here that -- I will use the word

15  structural arguments that, as a matter of law, this can't be

16  done, no matter how good, sincere, and economically rational

17  the justification offered for a particular classification is.

18  And in its most blunt form, it's the argument that *Granada*

19  *Wines* would require -- would permit only two or three classes

20  here, and it would all be driven by the source of the payment

21  and whether there's security.

22         If that argument is correct, the proponents of that

23  argument say you can't separate -- well, the original

24  proponents of that argument, the UCC, and the retire -- and

25  the joining parties say you can't classify together unsecured

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 41 of 99

40

1    creditors and retirees who -- I'm sorry.  You can't classify

2    separately unsecured creditors and retirees who are being

3    treated separately.  You simply cannot do that in the First

4    Circuit, and therefore, there's no point in soliciting votes

5    on a plan that would propose to do that.

6         I wish to focus on issues of law like that, and

7    have -- if that argument is not one that the Court finds

8    persuasive, my expectation is to -- so if I don't find

9    persuasive that there is no room in this particular landscape

10   for a structure such as the one that is proposed here, I would

11   anticipate leaving for confirmation the question of whether,

12   if the structure is -- is feasible as a matter of law, is

13   acceptable as a matter of law, assuming that the factual case

14   is made for each of these different classes and buckets, those

15   factual determinations would be part of the confirmation

16   process as opposed to the disclosure statement process.

17        So I am denying without prejudice the motion, as

18   joined, here on the record.  It is without prejudice to

19   raising these issues in a manner consistent with the

20   litigation schedule that will be reestablished for contested

21   matters in connection with the hearing regarding the adequacy

22   of the disclosure statement for the currently proposed Amended

23   Plan or a further amended Plan.

24        The UCC may reassert any or all of the arguments made

25   in its motion, as well as any further arguments, if they're

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 42 of 99

41

1    germane to those arguments.  And to the extent any additional

2    parties in interest have classification related arguments,

3    arguments related to the confirmability of the relevant plan

4    that are, again, structural ones, or other pertinent

5    arguments, including arguments as to whether the issues raised

6    by the UCC should be evaluated in the context of Section 1129,

7    rather than under 1122, those should be raised in appropriate

8    papers directed to the proposed disclosure statement at that

9    time.

10          Any different constituencies who have concerns with

11   respect to particular elements of the classification should

12   target their own structure and address their issues in their

13   own separate pleadings.

14          What I would ask is that when the Oversight Board

15   proposes to restart the schedule, proposes to have the Court

16   set a schedule, that the parties meet and confer and focus not

17   only on the overall schedule, but on whether it is necessary

18   or appropriate to have a process that focuses separately on

19   these classification issues in advance of, or otherwise

20   separately from, the general disclosure statement hearing.

21          Again, my expectation and my goal is to deal with

22   these issues at the disclosure statement hearing on a legal

23   rather than factual basis, so that if I were to determine

24   that, under the law of the First Circuit, it is possible in

25   certain circumstances for a multi-class structure that deals

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 43 of 99

42

1  differently with different unsecured claims to be confirmed,

2  then I would be looking into the question of whether the

3  disclosure of the aspects of the Plan is adequate and meets

4  the other requirements at the disclosure statement stage.  And

5  I would leave -- expect to leave factual attacks on the

6  fairness of the classifications or other propriety issues as

7  to the classifications for confirmation.

8           And so keep that in mind when you meet and confer and

9  develop the proposals that I'm sure we'll then discuss at a

10  hearing, and we'll work out the precise schedule from there.

11          Are there any further comments or questions regarding

12  the 3013 motion?

13          (No response.)

14          THE COURT:  Okay.  Thank you.

15          So we will go on to the next Agenda item, which is

16  the renewed motion for relief from the automatic stay by UBS,

17  and that is docket entry No. 12561 in case 17-3283.  And we

18  will start with counsel for UBS Financial.

19          I have 15 minutes allocated for Messrs. Lockwood

20  and/or Quinones Rivera.

21          MR. LOCKWOOD:  Good morning, Your Honor.  This is

22  Paul Lockwood from Skadden Arps for UBS Financial Services of

23  Puerto Rico.  And I will be primarily making the argument,

24  Your Honor.

25          THE COURT:  Good morning, Mr. Lockwood.

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 44 of 99

43

 1          MR. LOCKWOOD:  Good morning.  You can hear me, I take

 2  it.

 3          THE COURT:  Yes, I can.

 4          MR. LOCKWOOD:  I'll primarily be making the argument,

 5  and Mr. Quinones can, if necessary, address any issues of

 6  Puerto Rico procedure or Puerto Rico law that may come up,

 7  although the argument is going to be focused on federal law,

 8  so I don't think that will be necessary.  But we're ready to

 9  address it as needed.

10          Your Honor, this is a renewed motion.  So, you know,

11  we were before Your Honor in December, so you may have some

12  recollection, but I think it may be helpful --

13          THE COURT:  Yes.

14          MR. LOCKWOOD:  -- to just sketch out the background

15  of what the case in the Commonwealth court is about.

16          So that lawsuit was filed in 2011 by two

17  beneficiaries of the ERS, the Employee Retirement System, and

18  they were suing derivatively on behalf of the retirement

19  system.  And the claims against UBS Financial, the party I'm

20  representing here in this motion, concerned underwriting

21  contracts, underwriting agreements between UBS Financial, who

22  served as the lead underwriter on three bond offerings for the

23  ERS in 2008.

24          And the case is almost nine years old, but it's

25  actually not nearly as far along as you would think, because

1    the first five years of litigation really turned on whether

2    those beneficiaries had standing to sue for breach of contract

3    on behalf of the ERS when they weren't parties to the contract

4    and they were acting derivatively.

5            So we won on that in the trial court.  It got

6    appealed.  On appeal -- and then after five years, the Puerto

7    Rico courts settled that and determined that those retirees

8    did have standing to sue derivatively on behalf of the ERS.

9    And almost no sooner than they had decided that, the issue

10   became moot, because the ERS then directly intervened in the

11   case and took over as the primary plaintiff.

12           They amended their complaint.  There was another two

13   years of litigation over those pleadings.  And now that gets

14   us to the spring of 2019.  And at that point, they amend their

15   complaint for the fifth time.  And we were answering the

16   Fourth Amended Complaint, and we decided in response to the

17   Fourth Amended Complaint, we are going to bring a counterclaim

18   based on the same contracts that they were suing us on.  The

19   counterclaim arises out of the same contracts that their

20   claims arise out of.

21           And we couldn't do that because of the automatic stay

22   in place from the PROMESA proceedings, so what we did is we,

23   in April, a year ago, started the process to lift the stay and

24   have discussions with the Oversight Board and AAFAF.  And

25   those went very slowly.  And we tried to be cooperative and

1    proactive, but it finally got to October, and we were getting

2    nowhere, so we filed a motion to lift the stay.

3           And candidly, Your Honor, we didn't think this was a

4    tough ask, because, as we've noted in our briefs, there's

5    many, many cases that say that if you're pursuing a case, you

6    have to allow a counterclaim arising out of the same facts,

7    you are essentially a defensive counterclaim, and to move

8    forward at the same time.  But they opposed it.

9           And then we had further discussions.  And when we got

10   to Your Honor in December, what was happening then is there

11   was negotiations going on about whether the entire case was

12   going to be saved or not.  All right.  Because that would, to

13   our minds, have been a fair result.  If you're concerned about

14   this case, shut the entire case down.  Don't shut down our

15   piece of it and go forward with your piece.

16          So we agreed to a compromise in December that

17   essentially would allow the parties to continue to negotiate

18   that point, but we get our claim on file so that the arguments

19   they were making that these were untimely, that risk would go

20   away for us.  Those negotiations didn't bear fruit.  We got to

21   February and the Oversight Board told us at that point they

22   were supporting the ERS going forward with its case in the

23   Commonwealth court.  They didn't want to stay the entire case.

24          So we said, then you've got to lift the stay, because

25   if you're going to prosecute your side of the case, we get to

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 47 of 99

46

1   prosecute our side of the case.  And they continue to oppose

2   that request.

3         And, Your Honor, to put that request in context,

4   essentially what they're saying is that the Commonwealth Court

5   can look at their piece of the contract that they like, but is

6   barred from looking at the other clauses of the contract that

7   support our position.  And the difficulty in the way that

8   they're parsing it isn't just that the counterclaim is

9   stopped.  But as an example, Your Honor, the same allegations

10  and theory support our ninth affirmative defense in the case,

11  which is that you have breeched the contract and, therefore,

12  that excuses our obligations to comply and to provide

13  performance under the contract and, therefore, you have no

14  damages.

15        Then the counterclaim takes that further and says,

16  you don't just have no damages, we have a right to receive

17  damages from you.  But that is -- in essence, the issue here

18  is how could one piece of the case go forward and not the

19  whole case.

20        Now, Your Honor, we have cited many cases that

21  support lifting the stay to pursue a counterclaim in this

22  context.  I'm just going to quote one of those cases for Your

23  Honor, which is the *In Re:  Overmyer* case from the Southern

24  District of New York Bankruptcy Court from 1983.  And I just

25  note, this is not new law.  It's well-settled law.  There's a

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 48 of 99

47

1 | long line of continuous cases for decades.

2 |     In *Overmyer*, the Court said, where a debtor seeks

3 | affirmative relief as a plaintiff in a lawsuit, and then

4 | invokes the protection of the automatic stay on a

5 | counterclaim, the situation warrants very careful scrutiny.

6 | In such instance, a Court must be cautious to avoid a decision

7 | which would convert Code Section 362 from a shield into a

8 | weapon.  A debtor should not be permitted to reap the benefits

9 | of litigation in one court, but circumvent the burdens in

10 | another forum.

11 |     And the concern we have here is that the Oversight

12 | Board and the ERS have, working together, sharpened the Lift

13 | Stay into a weapon and are using it against us.  And it

14 | creates a very unfair situation.  And essentially, their only

15 | defense to that is, well, our motion is premature, and Your

16 | Honor should wait until the Commonwealth Court rules on their

17 | Motion to Strike.

18 |     We filed our claim.  They moved to strike it.  The

19 | Court -- I'm feeling the Court is going to rule on that,

20 | because of the situation that we are all in right now.  But I

21 | do want to note one thing on that.  Their papers suggest that

22 | we timed this motion somehow unfairly to take advantage of the

23 | COVID-19 crisis.  And I would note, Your Honor, that we did

24 | not ask for the stay to be lifted in April of 2020.  We asked

25 | for the stay to be lifted in April of 2019, and it's been

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 49 of 99

48

1    continuously now -- for a year, sought to have the stay

2    lifted.  And their use of the stay to block us and to thwart

3    us has prejudiced us.  We've lost a year being able to pursue

4    that claim.

5          Now, as it turns out, Your Honor, there have been no

6    depositions taken in the case in the Commonwealth court.  The

7    Court directed the parties to work out a schedule for

8    depositions in February.  Events have subsumed that.  And I'm

9    not sure when the depositions will start, but we are all

10   hopeful that it will be soon.

11         And think about what's going to happen when those

12   depositions start.  If the stay is in place, counsel for the

13   ERS in that case, Mr. Vicente, he's going to complain question

14   by question as to whether a particular question about the

15   contract at issue goes to the counterclaim or goes to the

16   affirmative case, is it part of the case that's stayed or not.

17   And we risk violating the automatic stay as we pursue ordinary

18   discovery in that case, and would have to come back to Your

19   Honor to referee that very gray line as to where -- what piece

20   of the case is stayed and what piece of the case is not

21   stayed.

22         Your Honor, to proceed in this fashion is completely

23   inconsistent with due process.  It's designed to create an

24   unfair result.  It's basically tying our hands up while

25   allowing them to pursue their case.  And they can't cite any

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 50 of 99

49

1    authority in which a Court has stayed claims pertaining to

2    certain clauses of the contract and allowed the prosecution of

3    claims with respect to other provisions of a contract.  It's

4    an extraordinarily unfair way to proceed.

5           I'd also note, Your Honor, that the suggestion that

6    we had brought this claim to affect or influence Judge De Leon

7    in her decision on our counterclaim, it is contrary to the

8    party's position.  Our position in this Court is to let the

9    Commonwealth Court decide that case.  In the discretion of the

10   Commonwealth Court -- hello.  Discovery in that case, whatever

11   the counterclaims are in and out of that case, whatever the

12   scope of that case is, those issues should be presented to the

13   Commonwealth Court.

14          Now, the objectors here have said, well, the issue of

15   the validity of the bonds is not part of that case, and they

16   have quoted for Your Honor from a hearing in that case.  That

17   was a discovery conference.  The initial discovery conference

18   in the case.  Why had the issue of contracts -- the issue had

19   not been presented to the Judge.  And she did make an offhand

20   remark saying that, that issue isn't before me.  We hadn't

21   briefed that issue or presented it to her in any way.

22          But ultimately, the question of the scope of that

23   case should be for the judge in that case.  The question of

24   the issues in that case, the timing of that case, whether the

25   counterclaim's in or out of the case, whether there's a

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 51 of 99

50

1   summary judgment motion that gets heard and when and how

2   should be before that Court.

3          And, Your Honor, I ask you to keep in mind, as the

4   objectors present their reasons for the stay, to consider

5   whether each of those reasons should actually be presented to

6   Judge De Leon and not to Your Honor, because ultimately here

7   the decision was made by the Oversight Board and the Special

8   Claims counsel to keep that case going, to move forward in the

9   Commonwealth court.  And they have to accept both the benefits

10  and the burdens of that, and they can't have their case go

11  forward and our case stayed.

12         As I said, Your Honor, I wouldn't even know how you

13  could draw those lines given the interrelation of the claims

14  and the fact that all we're asking is that the Court in that

15  case be able to hear the entire transaction, the entire story,

16  the entire contract, when considering the other contract in

17  that case.

18         THE COURT:  Mr. Lockwood, let me ask you this.  As I

19  understood it from the papers, and I think this is consistent

20  with the presentation that you've made here, there is a motion

21  pending now by ERS to strike your counterclaims.  Have you

22  filed an opposition to that motion?

23         MR. LOCKWOOD:  Yes, Your Honor.  That then -- that we

24  are awaiting decision on that motion from the Commonwealth

25  Court.

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 52 of 99

51

1          THE COURT:  Okay.  And is there anything by way of

2    asserting opposition to that motion that you believe you are

3    precluded from doing by the Stay Order that is in place from

4    this Court at this point?

5          MR. LOCKWOOD:  Your Honor, I actually think the

6    entire motion is inconsistent with the Stay Order, because the

7    Stay Order provided for the presentation of our claim, and

8    then for the stay to go back in place.  We haven't pushed that

9    point because our view is the whole case should go forward.

10         And, Your Honor, to --

11         THE COURT:  So the Stay Order -- Mr. Lockwood, I must

12   interrupt you.

13         So the Stay Order speaks in terms of reimposing or

14   the continuation as a matter of law of the automatic stay.

15   The statutory automatic stay doesn't preclude the debtor from

16   doing things, does it?

17         MR. LOCKWOOD:  Your Honor, well, it's not just the

18   debtor who has opposed the motion.  It's also the individual

19   plaintiffs in that case.  But in any event --

20         THE COURT:  Are they asserting claims against the

21   debtor?

22         Again, I'm sorry.  When we have a collision, I always

23   win in this forum.

24         So those individual plaintiffs are not, by seeking to

25   strike the counterclaims, asserting claims against the debtor

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 53 of 99

52

1    or the debtor's property, are they?

2            MR. LOCKWOOD:  They are not, Your Honor.  But my

3    understanding of the Order, and just looking at it here, was

4    that further prosecution of the case would be stayed after the

5    presentation.  But in any event, Your Honor, if I'm wrong

6    about that, it doesn't matter from my perspective, because

7    we're not looking to shut the case down.

8            And what we're doing is -- this incremental approach

9    to the stay, which they cite no authority for, creates a lot

10   of problems for us, just practical problems.  So the first

11   problem was why the stay was in place, all right?  As I said,

12   depositions are going to go forward.  When the Court rules on

13   our motion, we won't know.  Sometimes motions in the courts in

14   Puerto Rico take months and months and months.

15           Now, if we're taking depositions while the stay is

16   hanging over us, we don't have priority as to the questions --

17   even if we lose the motion, the motion is struck, then we

18   would appeal.  Our right to appeal has got to come back to

19   this Court in order to pursue that.  And if the stay is lifted

20   just for the appeal, then we still have the overhang, or the

21   discovery of what's stayed and what's not stayed.  That never

22   goes away.  So --

23           THE COURT:  So that is -- Mr. Lockwood, that is what

24   was going to be my next question, which is about the state of

25   discovery.  So I gather that right now, under the emergency

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 54 of 99

53

1    orders, the court's operations, the Commonwealth court's

2    operations are shut down or suspended.  And you've mentioned

3    at the beginning of your remarks that the Commonwealth Court

4    had instructed the parties to negotiate a discovery schedule.

5           Is it your representation and understanding that

6    discovery is allowed by the Commonwealth court to go forward

7    even when it is shut down and not withstanding the pendency of

8    the Motion to Strike?

9           MR. LOCKWOOD:  Well, let me break that into two

10   parts, Your Honor.

11          THE COURT:  Yes.

12          MR. LOCKWOOD:  Because the first part deals with the

13   emerging crisis, and Mr. Quinones can correct me if I'm wrong

14   on this, but I think, as a practical matter, we're all

15   assuming that the depositions aren't going to be able to start

16   in the next couple of weeks, that we're going to have to sort

17   through matters.  So we're from -- our view is we want to get

18   a running start as soon as we're able to get started, but

19   we're not talking about taking depositions in April.  That's

20   just not feasible.

21          In terms of the latter piece of your question,

22   there's no need for the depositions to wait until the Court

23   rules on the counterclaim.  The ruling on the counterclaim, as

24   I said, could take months.  Like I also said, I don't think

25   there's -- the counterclaims really change the scope of the

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 55 of 99

54

1  case, because it's part of our defense.  And it's not just an

2  affirmative defense, but it's part of the overall story of the

3  transaction and the agreement.

4         And we're not going to be restrained, in our view, to

5  talk about particular clauses of the contract and not talk

6  about other clauses in the contract.  Contracts are

7  interpreted as a whole, and we would want to explore all of

8  these issues with respect to the matter.  And that's where the

9  stay is constantly a barrier.

10        And we've been at this for a year, and I don't

11 understand what ERS gains from keeping the same place, other

12 than to unfairly prejudice our presentation of the case,

13 because otherwise, kicking the can down the road doesn't serve

14 their interest either, unless their interests are to tie us

15 up.

16        And the last thing I'd say, Your Honor, is from what

17 I heard this morning, there's going to be plenty of things for

18 this Court to address in the future.  This issue has been

19 briefed.  It's been briefed twice.  We don't want to brief it

20 a third time.  We think it's ripe and ready for a decision.

21        Thank you, Your Honor.

22        THE COURT:  Thank you.

23        And now Mr. Vicente for the Retiree plaintiffs.

24        MR. VICENTE:  Yes.  Good morning, Your Honor.  This

25 is Harold Vicente.

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 56 of 99

55

1          THE COURT:  Good morning.

2          MR. VICENTE:  I'm glad to hear that you are here.

3          First things first, Your Honor, I would like to join

4     my -- the colleagues that spoke before I did this morning in

5     wishing you and your staff and everyone involved in this

6     litigation and their loved ones, a safe and healthy, you know,

7     condition and keeping away from this terrible thing that is

8     attacking us.

9          And I also would like to express my sincere

10    appreciation on behalf of myself and everyone here living in

11    Puerto Rico for all the efforts that you and your staff are

12    doing for the benefit of this island that is going through --

13    has gone through so much turmoil in the last two or three

14    years, including this most recent one, which has really

15    knocked us out.

16          Having said all of that, Your Honor, let me address

17    several things.  First of all, Mr. Lockwood is wrong in his

18    presentation with respect to the nature and extent of the

19    litigation before the Commonwealth Court.  This is not a

20    derivative suit by any means.  That has been determined both

21    by the Court of Appeals and the Supreme Court affirmed the

22    Court of Appeals in the sense that it denied a cert petition,

23    which declared that indeed the retirees, which I represent,

24    have standing, personal standing to pursue this claim.

25          In addition to that, the law that creates the

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 57 of 99

56

1    Retirement System of Puerto Rico expressly states -- was

2    amended to expressly state that the retirees have standing to

3    file suit directly against the tortfeasors that caused the

4    damages to the retirement system as a result of the issuance

5    of the bonds of 2008.  So this is not a case of a derivative

6    case at all.

7         In addition to that, Mr. Lockwood is totally wrong

8    when he asserts to this Court, as he has today and in his

9    filings, that this case involves a claim under the

10   underwriting contract.  That is not correct.  Mr. Lockwood

11   knows that, and we have briefed that abundantly in the past.

12   This is essentially a malpractice case, a tort action based on

13   the Security -- Uniform Securities Act of Puerto Rico, which

14   clearly provides that underwritings, and anyone acting as an

15   underwriter or an advisor in the securities field, has a

16   fiduciary duty, the highest -- bound to act within the highest

17   degree of fiduciary duty towards its customers and clients.

18        This case has nothing to do with the actual issuance

19   of the bonds or the validity of the bonds.  This has to do

20   with the advice that in breaching, the bending of FTSE's

21   obligation that UBS has with respect to the retirement system,

22   and prior, and I underscore prior to the issuance of the

23   bonds, they induced the retirement system to enter into an

24   issuance of the bonds in 2008 that several entities have

25   declared to have been a total error and should not -- never

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 58 of 99

57

1    have been recommended to the retirement system to go into this
2    grossly negligent effort in generating these bonds.

3             So the contracts came later.  And UBS' attempt to
4    induce both this Court and the local court into error should
5    not be tolerated.  We have stated, you know, in no uncertain
6    terms that the underwriting has nothing to do with it.  And
7    the Court knows this quite well, the trial Court.

8             Now, let me say the following, Your Honor.  Why are
9    we here again before you?  You will recall that in December,
10   the December Omnibus Hearing, UBS requested a partial lift of
11   the stay in order to file this counterclaim.  And you
12   correctly, and very wisely, advised UBS that the PROMESA Court
13   did not have, and would not in any -- under any circumstance
14   interfere with the authority of the Commonwealth Court to
15   allow or not allow the filing of the counterclaim.

16            I distinctly recall that we had this analysis that
17   you analyzed, and you corrected me by saying I'm only going to
18   allow the presentation, quote, unquote, of the Complaint.
19   Whether it is going to be accepted and filed is a
20   determination solely within the discretion of the Commonwealth
21   Court.  Well, that happened.  UBS went and filed, for example,
22   its counterclaim to the trial Court.  We opposed.  And then
23   this terrible lockdown occurred.

24            The Court has not ruled whether it is going to accept
25   the filing of the counterclaim.  And this is important,

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 59 of 99

58

1    because if the Court denies the filing of the counterclaim,

2    all of this argument having to do with the validity and

3    interpretation of the underwriting contract is going to be

4    outside the scope of the issues before the Court.

5           And so again, why are we here?  Why is UBS coming

6    back to you in the midst of this pandemic, and in the midst of

7    this lockdown, knowing full well that the Court has not

8    decided whether it's going to allow UBS to litigate its

9    counterclaims in the local court?

10          Well, the reason for that is, in my humble opinion,

11   is that UBS, when it has faced the very strong and powerful

12   opposition that the -- my clients filed with respect to the

13   allowance of the counterclaim to go forward, and the fact that

14   the Court, in a hearing that was held in November of last

15   year, when UBS indicated that it was intending to file a

16   counterclaim with respect to these issues, the Court

17   unequivocally, and in no uncertain terms, told UBS that those

18   issues were not before her.  And that is part of the record,

19   and I put those transcripts into my opposition.

20          When the -- now, UBS, realizing that the Court has

21   advanced that it is -- they're highly unlikely -- I'm sorry --

22   that it will allow this --

23          THE COURT:  That is the two minute warning.

24          MR. VICENTE:  Yeah.  I'm sorry.

25          Now, UBS is coming back before you because they want

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 60 of 99

59

1   to get accomplished what they couldn't accomplish during the

2   December hearing, and that was to get the PROMESA Court to

3   enter an order that would tend to influence or tell the Court

4   in the Commonwealth of Puerto Rico to accept the

5   counterclaims.

6        And again, Your Honor, for reasons of comity that you

7   very well identified during our last hearing, you should not

8   send that message.  You should not accept UBS' invitation to

9   accept that message and issue an order.  I respectfully submit

10  that Your Honor should simply continue to wait and see,

11  because if the trial Court, the Commonwealth Court, denies,

12  denies the filing of the counterclaims, there is no issue that

13  affects the PROMESA litigation.

14       Again, with that, I conclude my remarks and thank you

15  for the opportunity.  I hope that everyone is well and keeps

16  protected and away from this horrible disease that is

17  attacking us.

18       Thank you, Your Honor.

19       THE COURT:  Thank you, Mr. Vicente, for your remarks,

20  and also for the good wishes for all.

21       And now counsel for the Special Claims Committee.

22       MS. MULLARNEY:  Good morning, Your Honor.  This is

23  Chelsea Mullarney from Brown Rudnick on behalf of the Special

24  Claims Committee.  Can you hear me?

25       THE COURT:  Yes.  Good morning, Ms. Mullarney.

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 61 of 99

60

1    MS. MULLARNEY:  Your Honor, just one piece of

2  housekeeping.  My motion for pro hac vice admission remains

3  pending, so I just ask the Court's permission to speak on

4  behalf of the Special Claims Committee today.

5    THE COURT:  You have my permission.  Please

6  proceed.

7    MS. MULLARNEY:  Thank you, Your Honor.

8    Also on the line today is my colleague, Sunni

9  Beville.  As Your Honor may recall, Sunni presented at the

10  December 2019 Omnibus Hearing on behalf of the Special Claims

11  Committee on the first UBS Motion to Lift the Stay.  She's on

12  a line today, and she can also jump in to answer any questions

13  the Court may have.

14    Your Honor, this may --

15    THE COURT:  Good morning, Ms. Beville.

16    MS. BEVILLE:  Good morning, Your Honor.

17    MS. MULLARNEY:  Your Honor, this request by --

18    THE COURT:  You can --

19    MS. MULLARNEY:  My apologies.

20    THE COURT:  Go on, please.

21    MS. MULLARNEY:  This request by UBS Financial to

22  lift the stay is a pretty -- it's premature and an attempt to

23  circumvent the jurisdiction of the Commonwealth Court to

24  determine whether the delayed counterclaims filed by UBS

25  Financial are procedurally proper.

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 62 of 99

61

1              As Your Honor knows well, this is not UBS Financial's

2    first application for relief from stay.  At the December 2019

3    Omnibus Hearing, there was substantial discussion about UBS

4    Financial's initial request, and Your Honor helped the parties

5    draft a joint proposed order permitting UBS Financial to

6    present its proposed counterclaims to the Commonwealth Court.

7              The Lift Stay Order provided, in paragraph two, that,

8    "The Commonwealth Court shall have the sole discretion as to

9    any procedural requirements for presenting the counterclaim

10   and as to any litigation of the counterclaims in that court."

11             The Special Claims Committee and counsel for ERS and

12   the beneficiary plaintiffs in the ERS action understood the

13   on-the-record discussions and the Court's Lift Stay Order to

14   achieve the following.  First, to permit UBS Financial to

15   present their counterclaims to the Commonwealth Court.  And

16   second, to permit the Commonwealth Court to implement, in its

17   own discretion, the procedural process regarding the

18   presentation of their counterclaims and its own determination

19   as to whether to accept the proposed counterclaims.

20             And as a result of the Lift Stay Order, UBS Financial

21   presented its counterclaims to the Court on February 4th of

22   2020, and the plaintiffs in the ERS action filed a motion to

23   disallow the counterclaims in early March, which, as Your

24   Honor has heard, that motion to disallow has not yet been

25   decided by the Commonwealth Court.

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 63 of 99

62

1          Your Honor hit on this point in some of your

2     questions to counsel, Mr. Lockwood, but if we're here today

3     because UBS Financial is concerned that filing an opposition

4     to the pending Motion to Disallow in the ERS action would

5     violate the automatic stay, or that the Lift Stay Order was

6     drafted too narrowly to let that procedural process in the

7     Commonwealth court play out, then we think we can address

8     that, Your Honor.

9          The Special Claims Committee and ERS are prepared to

10    stipulate or submit an agreed upon proposed order, that the

11    intent of the parties is that the Lift Stay Order permit the

12    procedural process regarding the presentation of the proposed

13    counterclaim to play out in the Commonwealth court, but only

14    to permit a decision or any appeal of a decision regarding the

15    procedural propriety of those counterclaims, not to permit any

16    discovery or adjudication of the merits.

17         If, however, as we understand it, UBS is looking for

18    complete relief from stay, regardless of any future ruling of

19    the Commonwealth Court, that is an improper attempt to

20    circumvent the jurisdiction of the Commonwealth Court to

21    decide whether to accept the proposed counterclaims, and to

22    allow UBS to serve discovery and move forward on the merits of

23    its proposed counterclaims without waiting for direction from

24    the Commonwealth Court.

25         In short, UBS is looking for an end run around the

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 64 of 99

63

1    procedural process in the Commonwealth court regarding the

2    presentation of the proposed counterclaims, a process which

3    this Court already deferred to during the December Omnibus

4    Hearing.  UBS Financial has provided no explanation for why it

5    needs such drastic relief during a nearly complete shutdown of

6    the Commonwealth court due to coronavirus, and cannot wait for

7    direction from the Commonwealth Court.

8         It's certainly correct that the parties anticipated

9    that UBS Financial might make a second application for relief

10   from stay.  However, it was fully our view at the time of the

11   December Omnibus Hearing that such application would occur

12   after the Commonwealth Court ruled on the procedural propriety

13   of the proposed counterclaims.  Yet, UBS has created this

14   piecemeal litigation now before this Court by prematurely

15   bringing this second Lift Stay Motion.

16        In our view, it's not as simple as asking whether --

17   the Commonwealth Court to decide either that the counterclaims

18   are proper or are not proper.  Instead, the Commonwealth Court

19   will decide whether to permit any or all of the counterclaims

20   and what issues will be before the Commonwealth Court, if the

21   counterclaims are able to proceed.  As a result, we can't

22   adequately examine the harm or prejudice to the debtor's

23   estate until we understand what, if anything, UBS Financial

24   will be permitted to prosecute in the Commonwealth Court.

25        UBS tries to --

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 65 of 99

64

1            THE COURT:  Let me ask you --

2            MS. MULLARNEY:  Yes.

3            THE COURT:  Ms. Mullarney, I have a question for you.

4   I hear you loud and clear on the proposition that UBS

5   Financial shouldn't be able to take discovery in aid of claims

6   that have not yet been ruled inside the case.  Do you have any

7   issue with the proposition that UBS Financial is not

8   constrained from defending against the claims that have been

9   asserted against it?  So that if UBS could state in good faith

10  a position that certain questions at a deposition or certain

11  discovery is simply a matter of being able to defend itself

12  against ERS' claims, is there any argument that that would be

13  a violation of the automatic stay?

14           MS. MULLARNEY:  Your Honor, in our view, to answer

15  your question, we don't take issue with the proposition that

16  UBS is able to defend itself in the ERS action pending before

17  the Commonwealth Court.  And if there are disputes during the

18  course of discovery or other depositions about what is proper

19  within the scope of discovery in the ERS action as it

20  currently exists, those disputes would be brought to the

21  Commonwealth Court about what the scope of the issues are that

22  are within the ERS options currently.

23           THE COURT:  Thank you.  You may continue with your

24  argument.

25           MS. MULLARNEY:  Thank you, Your Honor.

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 66 of 99

65

1          UBS tries to muddy the waters by suggesting that

2    waiting for the Commonwealth Court to decide the motion to

3    disallow counterclaims would require this Court to oversee

4    discovery disputes in the ERS action.  As I just explained,

5    that is not the case.

6          What we understood the on-the-record discussion in

7    the Lift Stay Order to provide is that the Commonwealth Court

8    is permitted to exhaust its procedural process regarding the

9    submission of the proposed counterclaims.  There is no

10   discovery involved in that procedural process, and UBS does

11   not claim it would be entitled to any discovery during that

12   motion process.

13         Once that procedural process is exhausted and a final

14   decision is rendered regarding whether the Commonwealth Court

15   will accept the counterclaim, then the parties can adequately

16   assess what, if any, claims will proceed in the ERS action,

17   and what, if any, impact the prosecution of such claims will

18   have on the bankruptcy case.

19         In our papers, we go through the factors from *Sonnax*

20   *Industries* that UBS relies on in its Second Motion to Lift

21   Stay.  And unless Your Honor has any questions about the

22   Special Claims Committee's analysis, we'll rely on the

23   analysis we put forth in our papers.

24         THE COURT:  I have no questions about that.

25         MS. MULLARNEY:  Thank you, Your Honor.

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 67 of 99

66

1              Your Honor, just to conclude, we're in nearly the

2   same place that we were in in December, except now UBS

3   Financial has presented its proposed counterclaims to the

4   Commonwealth Court for consideration.  UBS Financial has not

5   provided an explanation for why it refuses to wait for the

6   Commonwealth Court to determine whether to accept the proposed

7   counterclaims before UBS Financial seeks relief from the

8   automatic stay.

9              At this stage, and under these circumstances, it is

10  premature for UBS Financial to seek relief from stay.  Thank

11  you, Your Honor.

12             THE COURT:  Thank you.

13             And now we'll return to Mr. Lockwood.

14             MR. LOCKWOOD:  Thank you, Your Honor.

15             Your Honor, the fundamental premise of the compromise

16  that was reached in December is just false, that we agreed

17  that we would not pursue a lifting of the stay until the

18  Commonwealth Court ruled on a -- on whether that claim was

19  properly presented to that court or not.

20             The reason why we accepted a partial resolution --

21  and Your Honor didn't adjudicate this issue.  This was

22  something we had, you know, agreed to with the Oversight Board

23  going into the hearing.  The reason why we did that is because

24  they said they needed some more time to negotiate and to

25  analyze and figure out what their position was going to be as

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 68 of 99

67

1   to whether they were going to seek a stay in the entire case

2   or whether they were going to allow the case to go forward.

3   Because we never would have accepted the incremental approach

4   that we did in that hearing.

5           The reason why we wanted just the right to file and

6   then for the stay to go back in place is due to there was an

7   argument being made by Mr. Vicente that our claims were

8   untimely.  So we needed to protect ourselves to get them on

9   file as soon as possible while the parties continued to

10  negotiate as to whether there would be a stay in the entire

11  case or whether the case would go forward.

12          So the premise that that Order contemplates that a

13  ruling will result from the Court before the stay is lifted is

14  just incorrect.  That wasn't the reason why the stay was put

15  in place.  I mean, the reason why that Order was put in place

16  was just to maintain a status quo through negotiations.  The

17  negotiations ended in February.  The ERS made its choice, it's

18  going to continue to prosecute the case.

19          We have case after case after case which say what the

20  consequences of that are, which is we get to prosecute our

21  side of the case.  The suggestion that we are trying to end

22  run the procedures in the Commonwealth court, we're trying to

23  influence the Commonwealth, they're the ones who insist on

24  entangling this Court up with the Commonwealth Court.  We want

25  this to be unshackled, and for the Commonwealth Court to have

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 69 of 99

68

1    the complete power to do as it wishes with respect to these

2    claims.

3              We are not asking Your Honor to weigh in on the

4    motion.  We think Your Honor can put appropriate language in

5    any order lifting stay making it clear that the decisions are

6    for the Commonwealth Court.  The decisions with respect to

7    discovery, the timing of discovery, when we can take that

8    discovery, all of those issues are for Judge De Leon and not

9    for the Federal Court.

10             And again, there is no explanation as to what the

11   harm to the debtor is from lifting the stay.  The suggestion

12   that they can't see that far ahead into the future, they can't

13   imagine what our claim will be, well, that's clear.  They have

14   the claim.

15             They can explain to Your Honor what the problems are.

16   They just don't have an answer.  They can't answer the

17   question, so they're punting.  They're punting and punting.

18   And the problem is we're now a year pushed down the line from

19   them.  A year.  And we think that's really unfair.

20             At this point, you know, justice delayed is justice

21   denied.  And we're being prejudiced every minute, because

22   really, we need to be ready to go when the Court opens back

23   up, and it will in a month or two or more before we get back

24   to Your Honor and get a Lift Stay Order.

25             What is the reason to put us two months behind their

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 70 of 99

69

1    case?  There isn't.  And this issue is ripe, and we ask you

2    for a decision.

3              Thank you, Your Honor.

4              THE COURT:  Thank you.

5              I read the submissions very carefully.  I've listened

6    very carefully today.  Under the Order that was put in place,

7    UBS Financial was permitted to present its counterclaims to

8    the Commonwealth Court for the Commonwealth Court's exercise

9    of its discretion in making a decision as to the treatment,

10   viability, and litigation of the counterclaims.

11             The counterclaims have been challenged.  UBS

12   Financial has responded to that challenge.  But a decision

13   hasn't been made yet, and so it does not seem to me that even

14   UBS Financial contends that the counterclaims are an active

15   part of that Commonwealth court litigation at this point.  And

16   so it is premature for this Court to issue an order that gives

17   UBS Financial wide-open permission, to engage in litigation of

18   counterclaims that are not yet in the Commonwealth case.

19             To the extent that there is any lack of clarity about

20   the effect of the current Order, it does not preclude UBS

21   Financial from opposing the Motion to Strike UBS'

22   counterclaims, or from appealing any such order striking the

23   counterclaims if an appeal is permitted under Commonwealth law

24   and procedures, nor does it hinder UBS Financial from

25   defending the claims that are being prosecuted against UBS

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 71 of 99

70

1    Financial in the Commonwealth litigation.

2          If there is any dispute as to whether discovery that

3    UBS wishes to pursue is within the scope of the litigation

4    that is being prosecuted against it in the Commonwealth court,

5    those issues should be presented to the Commonwealth Court.

6    And the Order that was issued in December is not an impediment

7    to that sort of litigation in the Commonwealth court.

8          Accordingly, the UBS Lift Stay Motion is denied in

9    all other respects, without prejudice to renewal if UBS

10   Financial's counterclaims survive the pending motion practice

11   in the Commonwealth court.  And the Court will enter a short

12   order memorializing this oral ruling.  Thank you.

13         The final item on the Agenda today is the preliminary

14   hearing on the Lift Stay Motion of Mr. Santana Baez, which is

15   docket entry No. 12516 in case No. 17-3283.  And let's see,

16   AAFAF intends to speak to the motion.

17         Is Mr. Marini Biaggi here?

18         MR. MARINI BIAGGI:  Yes.  Good morning, Your Honor.

19         THE COURT:  Thank you.

20         Before you begin speaking, I will ask, is there

21   anyone on the phone line who intends to speak for Mr. Santana

22   Baez?

23         (No response.)

24         THE COURT:  Mr. Santana Baez is proceeding pro se,

25   and it's my understanding that he is in custody.  And so it

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 72 of 99

71

1  doesn't surprise me that there's no one to speak, but I wanted

2  to make sure of that before we proceeded.

3         So at this point, I will ask Mr. Marini Biaggi to

4  speak for AAFAF.

5         MR. MARINI BIAGGI:  Good morning, Your Honor.  Luis

6  Marini Biaggi of Marini Pietrantoni Muniz for AAFAF.

7         Can you hear me, Your Honor?

8         THE COURT:  Yes.  Yes.  Good morning.

9         MR. MARINI BIAGGI:  Perfect.  Good morning.  Your

10 Honor, thank you for allowing us to present the presentation.

11 I will try to be brief and hopefully keep it below the

12 scheduled time.

13        In response to the Lift of Stay filed by movant, the

14 Commonwealth had presented through the Department of Justice

15 an urgent motion to extend the deadlines to respond to the

16 motion and to hold this preliminary hearing to set forth a

17 briefing schedule.

18        We put forth in the urgent motion the reasons why the

19 Commonwealth requested an adjournment and extensions, and I

20 would like to add only three additional points to support the

21 relief in our urgent motion.

22        First, one of the bases that the Commonwealth

23 asserted for the adjournment was due to the emergency order

24 that was in place at the time of the filing of the motion,

25 which limited the ability of the DOJ from accessing the

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 73 of 99

72

1  physical files of the litigation from which the stay relief is

2  requested.  I note that since the DOJ filed the motion, the

3  emergency order has now been extended through May 3rd.

4       Second, Your Honor, I think there's no prejudice to

5  the extension of the deadlines that we requested.  The movant

6  filed a tort claim in the local courts.  The local courts in

7  Puerto Rico are closed until at least May 3rd, and

8  adjournments are extended beyond that.

9       Third, and finally, Your Honor, one of the arguments

10  that the Commonwealth made in the urgent motion to support a

11  filing to extend the deadlines was based on the allegation

12  that the Commonwealth had a reasonable likelihood of

13  prevailing in its objections.  To support that argument, the

14  Commonwealth asserted that this Court had ruled on similar

15  requests to lift the stay made by the same movant, actually,

16  various litigations against the Commonwealth, and that the

17  Court had previously denied such request.

18       And I would only add the fact that this Court has

19  already denied a request by the same movant to lift the stay

20  in the same case, detailing the motion pending before Your

21  Honor.  That was in this Court's Memorandum Order under docket

22  7696.  I would submit that -- the same reasons that led the

23  Court to deny the motion to lift the stay in this case over a

24  year ago.  I would move the Court to deny the stay now when

25  the Commonwealth submits its objection.

Case:17-03283-LTS   Doc#:16396-2   Filed:04/13/21   Entered:04/13/21 15:32:49   Desc:
Exhibit B - April 22   2020 Hearing Transcript   Page 74 of 99

73

 1          With that said, Your Honor, the Commonwealth has made

 2     progress in light of the existing emergency conditions to

 3     compile and obtain the physical files of the underlying

 4     litigation and to be in a position to respond.  Thus, we

 5     request an extension of two weeks, a few days beyond the

 6     potential expiration of the existing emergency order, until

 7     May 6, 2020, to submit a response.

 8          Unless Your Honor has any questions, I don't have

 9     anything further, other than what the DOJ put in its motion.

10          THE COURT:  All right.  So thank you.  You've

11     provided additional information here and proposed a time

12     frame.  And so am I correct in understanding that it's the

13     DOJ's position that the Commonwealth is a defendant, and a

14     defendant as to which issue has been joined in this particular

15     case that Mr. Santana Baez has cited?  I think it's

16     DDT2016-0591?

17          MR. MARINI BIAGGI:  Yes, Your Honor.  Obviously, one

18     of the reasons for the extension is to be able to examine the

19     physical files and to confirm what is involved.  But the DOJ

20     understands that the Commonwealth is a party and that summons

21     was received.  I don't know if properly served or not, but the

22     Commonwealth is named in the litigation.

23          THE COURT:  And you believe that two weeks extension

24     of time to file your responsive papers will be sufficient, to

25     May 6?

Case:17-03283-LTS  Doc#:16396-2  Filed:04/13/21  Entered:04/13/21 15:32:49  Desc:
Exhibit B - April 22  2020 Hearing Transcript  Page 75 of 99

74

```
 1              MR. MARINI BIAGGI:  Yes, Your Honor.

 2              THE COURT:  All right.

 3         Okay.  So I will grant the extension to May 6 to

 4    respond, and I will provide -- given Mr. Santana Baez'

 5    incarceration, I will give him three weeks from that, which

 6    would be May 27th, to reply.  And I will set a final hearing,

 7    if necessary, for the June Omni, which I believe is June 3rd,

 8    but we'll get the precise date and we'll put that in an order.

 9              And I find that the circumstances of the emergency

10    measures and the inaccessibility of public documents create,

11    along with the apparent likelihood that the Commonwealth will

12    prevail against this Motion to Lift Stay, the necessary

13    compelling circumstances for extension of the time for the

14    final hearing until June 3rd, and for the final resolution of

15    the Lift Stay Motion through June 10th, which will give the

16    Court time after the final hearing to render its decision.

17              And so the automatic stay of the litigation is

18    extended in light of these compelling circumstances through

19    June 10th, with the final hearing set for the June 3rd Omni,

20    if the Court has not resolved the matter on the papers.

21              Are there any questions about that?

22              MR. MARINI BIAGGI:  Not from me, Your Honor.  Thank

23    you.

24              THE COURT:  Very well.  And the Court will issue a

25    short written order setting out the schedule and describing
```

Case:17-03283-LTS Doc#:16396-2 Filed:04/13/21 Entered:04/13/21 15:32:49 Desc:
Exhibit B - April 22 2020 Hearing Transcript Page 76 of 99

75

1  today's proceeding, which the Court will mail to Mr. Santana

2  Baez.

3          Does anyone wish to be heard as to any other matter

4  before we conclude this Omni?

5          (No response.)

6          THE COURT:  All right.  Then our day's Agenda has

7  been concluded.  The next scheduled hearing date is the

8  hearing in connection with the revenue bond Lift Stay Motions,

9  which is scheduled for May 13th.  I expect that that hearing

10  will occur telephonically as well, but the Court will issue a

11  procedures order providing appropriate logistical details

12  closer to the date of that hearing.

13          As always, I would like to thank the Court staff in

14  Puerto Rico, Boston, and New York for their work in preparing

15  for and in conducting today's hearing, and for their superb

16  ongoing support of the administration of these very complex

17  cases under very challenging circumstances.

18          And I thank everyone who continues to work in these

19  challenging circumstances toward a resolution of these

20  proceedings for Puerto Rico and its instrumentalities.  Stay

21  safe and keep well, everyone.  We are adjourned.

22          (At 11:37 AM, proceedings concluded.)

23                    *      *      *

24

25

```
 1  U.S. DISTRICT COURT    )

 2  DISTRICT OF PUERTO RICO)

 3

 4       I certify that this transcript consisting of 76 pages is

 5  a true and accurate transcription to the best of my ability of

 6  the proceedings in this case before the Honorable United

 7  States District Court Judge Laura Taylor Swain, and the

 8  Honorable United States Magistrate Judge Judith Gail Dein on

 9  April 22, 2020.

10

11

12

13  S/ Amy Walker

14  Amy Walker, CSR 3799

15  Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```

< Dates >
April 22, 2020 1:18,
  5:2, 76:9
December 2019 60:10,
  61:2
February 4th 61:21
June 3rd 74:7,
  74:14, 74:19
May 27th 74:6
May 3rd 72:3, 72:7
May 6 73:25, 74:3
May 6, 2020 73:7

< 1 >
10th 74:15, 74:19
11 19:3, 19:8,
  22:14, 23:18
1122 13:16, 31:3,
  41:7
1122. 18:11
1123(a)(4 22:2
1129 13:16, 41:6
1129(a)(10 18:17
11:37 75:22
12516 70:15
12561 42:17
12899 7:10
12:00 8:8
13th 75:9
15 42:19
17-3283 7:10
17-3283. 42:17,
  70:15
17-BK-3283(LTS 1:6
17-BK-3566(LTS 1:26
1983. 46:24

< 2 >
2008 56:24
2008. 43:23, 56:5
201 27:25
201. 33:5
2011 43:16
2017-BK-3283 5:14
2019 47:25
2019. 44:14
2020 61:22
2020. 47:24

20th 7:9
23 11:10, 11:16
25 23:18

< 3 >
3013 9:20, 15:8,
  15:10, 19:21,
  20:9, 23:14, 42:12
362 47:7
3799 76:14
39A 9:21, 19:24,
  23:21, 34:8
3: 1:6, 1:26

< 4 >
40 20:10, 20:17,
  36:4, 36:9, 37:2
41 9:21, 19:24,
  20:10, 23:19,
  36:4, 36:12, 37:1
45 27:25, 33:5

< 7 >
76 76:4
7696. 72:22

< 9 >
9 22:16
9:29 5:3
9:30 8:8

< A >
A. 2:19
AAFAF 8:11, 8:19,
  44:24, 70:16,
  71:4, 71:6
ability 37:19,
  71:25, 76:5
able 24:10, 26:16,
  33:20, 37:15,
  48:3, 50:15,
  53:15, 53:18,
  63:21, 64:5,
  64:11, 64:16,
  73:18

above 36:22
Absolutely 5:10
abundantly 56:11
accept 31:6, 50:9,
  57:24, 59:4, 59:8,
  59:9, 61:19,
  62:21, 65:15, 66:6
acceptable 40:13
acceptance 18:16
accepted 57:19,
  66:20, 67:3
accepting 18:15,
  18:19, 21:7, 34:11
access 19:16
accessing 71:25
accommodating 29:8
accomplish 59:1
accomplished 59:1
Accordingly 10:3,
  70:8
account 14:3
Accrued 35:21
accurate 7:1, 76:5
accused 20:23, 37:20
achieve 61:14
acknowledge 10:24
Act 56:13, 56:16
acting 44:4, 56:14
action 36:10, 56:12,
  61:12, 61:22,
  62:4, 64:16,
  64:19, 65:4, 65:16
actions 38:1
active 69:14
actual 56:18
actually 30:4, 34:5,
  43:25, 50:5, 51:5,
  72:15
add 8:23, 9:9,
  15:24, 17:2,
  33:10, 71:20,
  72:18
addition 8:25, 9:1,
  9:3, 9:4, 9:7,
  9:9, 55:25, 56:7
additional 16:19,
  37:10, 38:20,
  41:1, 71:20, 73:11
address 6:1, 6:18,
  12:20, 15:5,

15:16, 35:23,
37:4, 41:12, 43:5,
43:9, 54:18,
55:16, 62:7
addressed 16:22,
27:13, 35:12
adequacy 40:21
adequate 42:3
adequately 63:22,
65:15
adjourn 13:1
adjourned 12:22,
15:21, 75:21
adjourning 26:14
adjournment 27:12,
71:19, 71:23
adjournments 72:8
adjudicate 66:21
adjudication 62:16
adjustment 33:8
Administered 1:11,
1:31
administration 75:16
admission 60:2
advance 7:2, 8:13,
8:18, 13:10, 41:19
advanced 58:21
advantage 47:22
advice 56:20
advised 57:12
advisor 56:15
advisors 17:22,
17:24
Advisory 2:24, 27:6
affect 49:6
affected 5:24
affects 12:25, 59:13
affirmative 46:10,
47:3, 48:16, 54:2
affirmed 55:21
AFSCME 3:9, 28:17,
28:21
AFT 3:9, 28:17,
28:20
Agency 2:23
Agenda 6:17, 7:8,
7:10, 8:10, 9:20,
42:15, 70:13, 75:6
ago 44:23, 72:24
agree 12:14, 18:4,

27:11, 35:11
agreed 45:16, 62:10,
66:16, 66:22
agreement 54:3
agreements 43:21
ahead 68:12
aid 64:5
airline 22:15
al 2:14, 5:13
alert 7:17, 38:7
alerted 37:14
aligned 16:15
allegation 72:11
allegations 46:9
allocated 11:10,
42:19
allocation 7:22
allocations 7:8
allotments 7:7
allotted 7:4
allow 45:6, 45:17,
57:15, 57:18,
58:8, 58:22,
62:22, 67:2
allowance 58:13
allowed 49:2, 53:6
allowing 48:25,
71:10
almost 43:24, 44:9
alone 23:9
already 12:6, 63:3,
72:19
Although 15:16,
23:13, 37:19, 43:7
Ambac 2:34, 14:21,
14:23, 15:18,
16:15, 22:6, 22:8,
23:16, 32:25
amend 44:14
Amended 14:4, 36:7,
36:22, 40:22,
40:23, 44:12,
44:16, 44:17, 56:2
amount 22:21, 32:18,
36:9
ample 19:11
Amy 76:13, 76:14
analysis 23:12,
57:16, 65:22,
65:23

analyze 66:25
analyzed 57:17
and/or 11:9, 42:20
announce 5:9
answer 60:12, 64:14,
68:16
answering 44:15
anticipate 40:11
anticipated 10:12,
63:8
apologies 60:19
apologize 7:2, 12:9
apparent 74:11
appeal 33:20, 44:6,
52:18, 52:20,
62:14, 69:23
appealed 44:6
appealing 69:22
Appeals 55:21, 55:22
APPEARANCES 2:9, 3:1
APPEARING 2:11
apple 29:24
application 61:2,
63:9, 63:11
applications 10:11
applied 24:24
applies 24:23
appreciate 38:25
appreciation 55:10
approach 52:8, 67:3
appropriate 6:22,
9:25, 11:8, 14:9,
15:23, 25:24,
27:1, 27:5, 31:2,
39:5, 41:7, 41:18,
68:4, 75:11
appropriately 13:14
approved 38:11
April 7:9, 44:23,
47:24, 47:25,
53:19
arbitrarily 36:4
arbitration 36:11
argue 26:17, 27:12,
31:9, 33:17
argument 6:19, 11:7,
15:6, 15:13,
15:17, 18:1,
30:19, 31:4, 34:1,
38:14, 38:15,

39:18, 39:22,
39:23, 39:24,
40:7, 42:23, 43:4,
43:7, 58:2, 64:12,
64:24, 67:7, 72:13
argumentation 13:17
arguments 9:23,
10:18, 13:15,
15:8, 21:14,
21:18, 25:10,
25:17, 25:18,
30:6, 39:13,
39:14, 39:15,
40:24, 40:25,
41:1, 41:2, 41:3,
41:5, 45:18, 72:9
arise 44:20
arises 44:19
arising 36:3, 36:25,
45:6
around 20:10, 62:25
Arps 42:22
arrival 31:18
aside 21:21, 32:3
asks 19:22
aspect 6:12
aspects 42:3
asserted 38:5, 64:9,
71:23, 72:14
asserting 51:2,
51:20, 51:25
asserts 36:6, 56:8
assess 65:16
associated 10:24
assume 21:3
assumes 38:15
assuming 13:12,
40:13, 53:15
Assurance 2:34
Assured 2:29, 2:30,
15:18, 16:8,
16:14, 17:3,
23:17, 27:24,
33:12, 38:14
Atara 2:35, 14:22
attacking 55:8,
59:17
attacks 42:5
attempt 57:3, 60:22,
62:19

attempting 33:16
attending 5:21
Authority 1:18,
2:25, 15:13, 49:1,
52:9, 57:14
automatic 42:16,
44:21, 47:4,
48:17, 51:14,
51:15, 62:5,
64:13, 66:8, 74:17
available 7:11,
8:13, 8:18
avoid 47:6
awaiting 50:24
away 12:6, 45:20,
52:22, 55:7, 59:16


< B >
back 7:25, 14:10,
29:7, 30:6, 48:18,
51:8, 52:18, 58:6,
58:25, 67:6,
68:22, 68:23
backdrop 5:20
background 43:14
Baez 70:14, 70:22,
70:24, 73:15,
74:4, 75:2
Bankruptcy 18:17,
22:2, 46:24, 65:18
barred 46:6
barrier 54:9
based 24:25, 31:3,
44:18, 56:12,
72:11
bases 71:22
basic 14:8
basically 48:24
basis 15:20, 23:9,
24:5, 27:7, 34:22,
35:1, 35:6, 35:9,
36:8, 41:23
bear 45:20
beast 32:3
became 44:10
begin 11:9, 70:20
beginning 53:3
behalf 14:23, 16:14,
17:21, 26:7,

43:18, 44:3, 44:8,
55:10, 59:23,
60:4, 60:10
behind 18:14, 68:25
believe 13:6, 16:20,
20:13, 23:13,
30:3, 30:16,
31:11, 32:11,
51:2, 73:23, 74:7
believes 18:23
below 71:11
bending 56:20
beneficiaries 43:17,
44:2
beneficiary 61:12
benefit 6:7, 55:12
benefits 10:24,
47:8, 50:9
best 76:5
better 13:6, 21:2,
29:20, 30:11
BEVILLE 3:22, 60:9,
60:15, 60:16
beyond 7:4, 16:19,
72:8, 73:5
BIAGGI 2:26, 70:17,
70:18, 71:3, 71:5,
71:6, 71:9, 73:17,
74:1, 74:22
BIENENSTOCK 2:14,
8:25, 9:1, 9:2,
9:4, 17:15, 17:16,
17:17, 17:20,
25:5, 25:6, 25:7,
25:22, 26:1,
26:13, 26:18,
26:22, 27:9, 28:5,
31:1, 31:13,
33:25, 35:5, 37:8,
37:12, 37:13
Bill 16:9
binding 38:17
bit 14:1, 20:22,
25:19
bites 29:24
Block 26:7, 48:2
blunt 39:18
bond 14:11, 43:22,
75:8
bondholder 22:8,

31:5, 37:21
bondholders 22:6,
    31:11, 38:3
bonds 34:12, 37:24,
    38:2, 38:5, 49:15,
    56:5, 56:19,
    56:23, 56:24, 57:2
Boston 75:14
bound 56:16
brain 32:13
breach 44:2
breaching 56:20
break 7:2, 7:24,
    53:9
breeched 46:11
brevity 13:4
Brian 2:15
Brief 10:4, 15:3,
    26:12, 28:18,
    34:3, 37:10,
    54:19, 71:11
briefed 49:21,
    54:19, 56:11
briefing 12:24,
    21:17, 25:12,
    71:17
briefly 6:18, 33:14
briefs 45:4
bring 6:3, 44:17
bringing 63:15
brought 36:10, 49:6,
    64:20
Brown 59:23
buckets 40:14
Buenos 5:5, 5:17
bundling 16:1
burden 28:23, 34:5
burdens 47:9, 50:10
business 19:4,
    26:21, 27:5,
    34:19, 34:22
buzz 7:18, 7:19
buzzers 7:23
buzzes 7:19


< C >
C. 2:26
Cadwalader 16:14,
    33:13

call 6:22, 9:17,
    14:21, 26:21
called 35:20
calling 6:14
candidly 45:3
care 8:20
careful 47:5
carefully 37:6,
    69:5, 69:6
carry 28:13
cases 6:6, 10:23,
    19:4, 19:6, 22:15,
    24:17, 24:18,
    24:22, 25:10,
    25:11, 29:16,
    45:5, 46:20,
    46:22, 47:1, 75:17
Casey 2:32, 16:13,
    33:13
CAT 3:49
cause 29:25, 30:3,
    30:4
caused 56:3
cautious 47:6
caveat 26:15
cert 36:2, 55:22
certain 9:21, 15:9,
    32:18, 41:25,
    49:2, 64:10
certainly 29:14,
    32:9, 63:8
certify 76:4
cetera 21:19, 37:16
challenge 34:15,
    69:12
challenged 69:11
challenges 6:1,
    33:19, 37:23, 38:5
challenging 5:21,
    38:1, 75:17, 75:19
chance 21:2, 28:12
change 12:2, 12:25,
    53:25
changes 14:5, 14:10
Chapter 19:3, 19:8,
    22:14, 22:16
characterized 39:8
Chelsea 3:23, 59:23
chewing 28:2
choice 67:17

Circuit 19:5, 23:7,
    24:25, 34:23,
    40:4, 41:24
circumstance 57:13
circumstances 5:20,
    6:4, 6:21, 41:25,
    66:9, 74:9, 74:13,
    74:18, 75:17,
    75:19
circumvent 47:9,
    60:23, 62:20
cite 48:25, 52:9
cited 24:17, 24:22,
    29:16, 34:2,
    46:20, 73:15
citing 33:4
claim 22:5, 22:6,
    22:7, 22:17,
    22:18, 25:3, 38:7,
    45:18, 47:18,
    48:4, 49:6, 51:7,
    55:24, 56:9,
    65:11, 66:18,
    68:13, 68:14, 72:6
clarify 14:17
clarity 6:16, 14:12,
    69:19
Class 9:21, 18:16,
    18:19, 21:20,
    21:23, 22:2, 22:7,
    23:5, 23:19,
    23:21, 23:23,
    23:25, 31:5, 34:7,
    34:8, 34:11, 36:4,
    36:9, 36:12, 37:1,
    37:2
classes 18:16,
    19:23, 20:9,
    20:10, 20:12,
    20:17, 21:7, 24:7,
    37:22, 38:4, 38:9,
    39:19, 40:14
classifications
    20:17, 24:12,
    34:10, 34:13,
    34:14, 37:22,
    39:11, 42:6, 42:7
classified 22:12,
    25:2, 28:4, 36:2
classify 36:25,

39:25, 40:1
clauses 46:6, 49:2, 54:5, 54:6
clear 6:10, 14:19, 15:12, 64:4, 68:5, 68:13
clearly 6:21, 9:16, 11:12, 12:18, 18:4, 24:17, 35:18, 56:14
Clerk 7:11
clients 30:10, 56:17, 58:12
close 21:1
closed 72:7
closer 75:12
Coalition 2:39, 29:4
Code 18:17, 22:2, 47:7
colleague 60:8
colleagues 55:4
collision 51:22
colloquy 27:22
colorable 10:18
combined 23:5
comfortable 11:25
coming 7:16, 58:5, 58:25
comity 59:6
commences 11:3
comment 11:19, 28:11, 31:22
commenting 27:25
comments 9:9, 9:15, 9:24, 10:3, 11:7, 11:16, 12:17, 13:3, 18:2, 26:13, 28:13, 28:22, 29:5, 29:10, 30:20, 33:1, 37:10, 42:11
Commercial 22:5, 22:10, 22:11, 22:17, 23:4, 23:24, 25:2
Committee 2:18, 3:4, 3:18, 16:18, 16:20, 19:21, 19:25, 20:6, 20:21, 21:15,

26:4, 26:8, 27:25, 29:21, 30:12, 33:4, 38:1, 59:21, 59:24, 60:4, 60:11, 61:11, 62:9, 65:22
compelling 74:13, 74:18
compile 73:3
complain 48:13
Complaint 44:12, 44:15, 44:16, 44:17, 57:18
complete 12:24, 62:18, 63:5, 68:1
completely 48:22
complex 34:24, 75:16
complicated 29:15, 39:9
comply 46:12
comprehensive 8:21, 18:3, 20:16, 34:17, 35:12
compromise 45:16, 66:15
concern 33:15, 47:11
concerned 43:20, 45:13, 62:3
concerning 11:1
concerns 39:6, 41:10
conclude 59:14, 66:1, 75:4
concluded 75:7
concluded. 75:22
conclusion 23:15
concrete 11:2
concur 26:12
condition 55:7
conditions 73:2
conducting 75:15
confer 41:16, 42:8
conference 8:2, 49:17
confidence 25:9
confirm 73:19
confirmability 41:3
confirmation 19:14, 19:15, 20:14, 21:1, 23:11, 24:9, 27:15, 28:8,

29:17, 29:19, 30:2, 30:11, 30:17, 33:16, 33:18, 33:21, 34:2, 34:25, 39:4, 40:11, 40:15, 42:7
confirmation-related 30:1
confirmed 21:11, 42:1
conjunction 10:5, 27:13, 32:10, 39:2
connection 9:15, 10:11, 13:7, 13:20, 15:1, 15:11, 16:22, 19:15, 25:18, 40:21, 75:8
consequences 67:20
consider 15:5, 15:7, 29:13, 29:18, 32:17, 50:4
consideration 10:1, 66:4
considered 29:17
considering 50:16
consistent 8:1, 40:19, 50:19
consisting 76:4
constantly 54:9
constituencies 14:15, 41:10
Constitutional 2:38, 29:4
constrained 64:8
consult 22:14
contemplates 67:12
contends 69:14
contentions 18:9
contested 40:20
context 11:1, 25:19, 41:6, 46:3, 46:22
continuation 51:14
continue 38:24, 45:17, 46:1, 59:10, 64:23, 67:18
Continued 3:1, 67:9
continues 6:1, 6:6, 75:18

continuous 47:1
continuously 48:1
continuum 39:4
contract 21:25,
   44:2, 44:3, 46:5,
   46:6, 46:11,
   46:13, 48:15,
   49:2, 49:3, 50:16,
   54:5, 54:6, 56:10,
   58:3
Contracts 43:21,
   44:18, 44:19,
   49:18, 54:6, 57:3
contractual 36:19
contrary 34:3, 49:7
control 11:23
controlling 10:16
convert 47:7
cooperative 44:25
coordinate 10:7
coordination 39:2
coronavirus 5:25,
   63:6
Corp 2:31
Corp. 2:30
Corporation 2:35
Correct 16:3, 18:23,
   33:3, 39:22,
   53:13, 56:10,
   63:8, 73:12
corrected 57:17
correctly 57:12
cost 7:11
couch 23:14
counsel 5:18, 8:21,
   8:22, 9:14, 27:23,
   33:4, 42:18,
   48:12, 50:8,
   59:21, 61:11, 62:2
counterclaim 44:17,
   44:19, 45:6, 45:7,
   46:8, 46:15,
   46:21, 47:5,
   48:15, 49:7,
   49:25, 53:23,
   57:11, 57:15,
   57:22, 57:25,
   58:1, 58:13,
   58:16, 61:9,
   62:13, 65:15

couple 13:5, 13:8,
   53:16
Course 6:19, 29:20,
   31:7, 31:10,
   35:21, 36:3, 37:1,
   64:18
court. 61:10
COURTROOM 5:10
courts 44:7, 52:13,
   72:6
cover 11:16
COVID-19 47:23
crazy 22:10
create 7:1, 14:13,
   48:23, 74:10
created 33:3, 36:20,
   63:13
creates 47:14, 52:9,
   55:25
Creditors 2:19,
   3:12, 17:7, 17:23,
   30:8, 30:9, 31:12,
   35:20, 36:13,
   36:17, 40:1, 40:2
crisis 47:23, 53:13
critical 6:5, 12:15,
   15:1, 15:5
CSR 76:14
cue 10:10
cued 29:11, 39:8
current 9:24, 69:20
currently 40:22,
   64:20, 64:22
custody 70:25
customers 56:17


< D >
damage 32:13
damages 46:14,
   46:16, 46:17, 56:4
date 13:1, 74:8,
   75:7, 75:12
day 29:7, 38:19,
   75:6
days 73:5
DDT2016-0591 73:16
De 49:6, 50:6, 68:8
dead 31:18
deadlines 71:15,

72:5, 72:11
deal 32:3, 41:21
deals 41:25, 53:12
Debt 2:39, 29:4
Debtholder 27:17
Debtor 1:39, 47:2,
   47:8, 51:15,
   51:18, 51:21,
   51:25, 52:1,
   63:22, 68:11
Debtors 1:20, 5:13,
   6:7, 36:24
decades 47:1
December 43:11,
   45:10, 45:16,
   57:9, 57:10, 59:2,
   63:3, 63:11, 66:2,
   66:16, 70:6
decide 15:1, 32:16,
   49:9, 62:21,
   63:17, 63:19, 65:2
decided 11:21,
   12:15, 13:13,
   21:8, 21:10, 24:5,
   31:19, 34:1, 35:2,
   44:9, 44:16, 58:8,
   61:25
deciding 12:11,
   14:2, 19:25
decision 34:7, 47:6,
   49:7, 50:7, 50:24,
   54:20, 62:14,
   65:14, 69:2, 69:9,
   69:12, 74:16
decisions 68:5, 68:6
declared 55:23,
   56:25
defeat 34:14
defeated 34:20
defend 64:11, 64:16
defendant 73:13,
   73:14
defending 64:8,
   69:25
defense 46:10,
   47:15, 54:1, 54:2
defensive 45:7
defer 12:13, 16:10
deferred 63:3
deferring 16:16

definitely 18:6
degree 56:17
Dein 2:6, 76:8
delayed 60:24, 68:20
demonstrates 23:12
denial 14:12, 15:25
denied 15:22, 23:10,
   55:22, 68:21,
   70:8, 72:17, 72:19
denies 58:1, 59:11,
   59:12
deny 10:9, 72:23,
   72:24
denying 12:21, 13:2,
   40:17
Department 71:14
dependent 31:20,
   31:21
depending 21:25
deposition 64:10
depositions 48:6,
   48:8, 48:9, 48:12,
   52:12, 52:15,
   53:15, 53:19,
   53:22, 64:18
DEPUTY 5:10
derivative 55:20,
   56:5
derivatively 43:18,
   44:4, 44:8
described 11:5
describing 74:25
description 28:14
designed 48:23
Despins 2:19, 11:9,
   11:11, 11:13,
   11:14, 14:18,
   24:14, 30:25,
   33:24, 35:3
despite 6:4
detail 8:20
detailing 72:20
details 75:11
determination 10:25,
   39:3, 57:20, 61:18
determinations
   13:13, 39:7,
   39:10, 40:15
determine 13:19,
   13:22, 18:22,

18:24, 19:19,
   27:4, 41:23,
   60:24, 66:6
determined 13:9,
   18:5, 44:7, 55:20
develop 42:9
developments 14:11
dial 7:25
dias 5:5, 5:17
difference 27:10
different 16:21,
   21:18, 32:8,
   37:21, 37:23,
   38:2, 38:4, 40:14,
   41:10, 42:1
differently 42:1
difficult 5:22, 6:25
difficulty 7:4, 46:7
diluted 20:5
direct 7:24
directed 41:8, 48:7
direction 23:1,
   24:19, 25:25,
   62:23, 63:7
directly 5:25,
   15:16, 44:10, 56:3
Disallow 61:23,
   61:24, 62:4, 65:3
disconnect 7:25
Discovery 48:18,
   49:10, 49:17,
   52:21, 52:25,
   53:4, 53:6, 62:16,
   62:22, 64:5,
   64:11, 64:18,
   64:19, 65:4,
   65:10, 65:11,
   68:7, 68:8, 70:2
discrete 14:14
discretion 15:7,
   49:9, 57:20, 61:8,
   61:17, 69:9
discriminates 36:17
discrimination
   23:14, 27:14
discuss 42:9
discussed 10:9
discussion 33:6,
   61:3, 65:6
discussions 44:24,

45:9, 61:13
disease 59:16
disposition 36:10
dispute 15:10, 70:2
disputed 10:14
disputes 11:1,
   64:17, 64:20, 65:4
dissenting 36:17
distinctly 57:16
distinguish 24:17
District 1:1, 1:3,
   2:4, 2:5, 2:7,
   24:23, 46:24,
   76:1, 76:2, 76:7
Docket 1:6, 1:26,
   7:10, 8:14, 8:19,
   11:24, 42:17,
   70:15, 72:21
documents 74:10
doing 11:17, 12:9,
   20:3, 51:3, 51:16,
   52:8, 55:12
DOJ 71:25, 72:2,
   73:9, 73:13, 73:19
dollars 12:16
done 30:11, 34:17,
   39:16
doubt 5:20
down 28:18, 45:14,
   52:7, 53:2, 53:7,
   54:13, 68:18
draft 61:5
drafted 62:6
dragged 28:10
drastic 63:5
draw 50:13
drawing 30:6
dream 22:17, 22:19
driven 39:20
due 36:17, 48:23,
   63:6, 67:6, 71:23
duration 21:24, 22:8
During 6:14, 6:19,
   6:24, 35:21, 59:1,
   59:7, 63:3, 63:5,
   64:17, 65:11
duty 56:16, 56:17

< E >

E. 3:23
earlier 23:24,
   33:22, 37:14
early 61:23
earn 28:13
earthquakes 6:2
easily 35:1
economically 39:16
economists 28:7
effect 69:20
efficiency 20:4,
   20:5
efficient 16:21,
   29:9
effort 57:2
efforts 55:11
either 13:24, 23:1,
   33:22, 35:13,
   54:14, 63:17
Electric 1:17
elements 41:11
eloquently 27:10
embarking 30:11
emerged 36:19
emergency 52:25,
   71:23, 72:3, 73:2,
   73:6, 74:9
emerging 53:13
Emmanuel 29:3
Employee 3:12, 17:7,
   43:17
Employees 1:35, 3:5,
   36:19, 36:23
Employment 35:21,
   36:3, 36:21, 37:1
encourage 7:13
end 11:18, 12:10,
   62:25, 67:21
ended 67:17
engage 25:11, 31:1,
   69:17
enormous 29:8
enough 24:2
ensure 6:9
entangling 67:24
enter 56:23, 59:3,
   70:11
entertained 13:7
entire 45:11, 45:14,
   45:23, 50:15,

50:16, 51:6, 67:1,
   67:10
entities 56:24
entitled 65:11
entry 7:10, 42:17,
   70:15
equal 23:22, 36:19,
   36:23
equivalent 36:14
error 56:25, 57:4
ERS 43:17, 43:23,
   44:3, 44:8, 44:10,
   45:22, 47:12,
   48:13, 50:21,
   54:11, 61:11,
   61:12, 61:22,
   62:4, 62:9, 64:12,
   64:16, 64:19,
   64:22, 65:4,
   65:16, 67:17
especially 19:2
Esq 2:26, 3:12,
   3:20, 3:21
essence 46:17
essentially 16:15,
   45:7, 45:17, 46:4,
   47:14, 56:12
establish 34:5,
   34:15
estate 63:23
et 2:14, 5:13,
   21:18, 37:16
evaluated 41:6
evaluation 36:7
event 31:4, 32:8,
   51:19, 52:5
Events 48:8
eventually 20:5
everybody 15:23,
   16:4, 28:18
everyone 5:21, 7:24,
   8:1, 13:21, 21:9,
   21:17, 22:2,
   24:20, 28:12,
   37:25, 55:5,
   55:10, 59:15,
   75:18, 75:21
everything 20:24,
   28:11
evidence 19:16,

26:24, 28:7, 37:18
evolved 21:18
exactly 19:7
examine 63:22, 73:18
example 7:19, 46:9,
   57:21
except 66:2
excuses 46:12
exercise 69:8
exhaust 65:8
exhausted 65:13
Exhibit 27:23
EXHIBITS 4:9
existing 18:10,
   73:2, 73:6
exists 64:20
expect 28:7, 42:5,
   75:9
expectation 10:2,
   40:8, 41:21
expedite 30:18
expense 19:18
experts 28:7
expiration 73:6
explain 18:4, 18:7,
   23:3, 68:15
explained 19:13,
   23:24, 65:4
explanation 63:4,
   66:5, 68:10
explicit 25:21
explore 54:7
express 55:9
expressly 56:1, 56:2
extend 71:15, 72:11
extended 72:3, 72:8,
   74:18
extends 26:3
extension 72:5,
   73:5, 73:18,
   73:23, 74:3, 74:13
extensions 71:19
extent 6:5, 10:15,
   11:3, 13:9, 15:21,
   41:1, 55:18, 69:19
extraordinarily 49:4
extremely 5:20

< F >

faced 58:11
facilitated 33:21
fact 19:10, 35:8,
   36:18, 37:22,
   50:14, 58:13,
   72:18
factors 65:19
facts 45:6
factual 13:24,
   34:25, 39:10,
   40:13, 40:15,
   41:23, 42:5
fair 45:13
fairly 12:24
fairness 42:6
faith 64:9
false 66:16
far 13:12, 18:3,
   43:25, 68:12
fashion 11:5, 48:22
favored 28:1, 28:2,
   28:3
feasible 40:12,
   53:20
February 45:21,
   48:8, 67:17
Federal 43:7, 68:9
feel 11:7, 11:25
feeling 47:19
few 9:24, 17:21,
   32:1, 73:5
fiduciary 56:16,
   56:17
field 56:15
fifth 44:15
figure 66:25
file 45:18, 56:3,
   57:11, 58:15,
   67:5, 67:9, 73:24
filed 7:9, 7:10,
   13:16, 23:17,
   38:1, 43:16, 45:2,
   47:18, 50:22,
   57:19, 57:21,
   58:12, 60:24,
   61:22, 71:13,
   72:2, 72:6
files 72:1, 73:3,
   73:19
filing 57:15, 57:25,

58:1, 59:12, 62:3,
   71:24, 72:11
filings 56:9
final 7:23, 31:22,
   65:13, 70:13,
   74:6, 74:14,
   74:16, 74:19
finally 38:13, 45:1,
   72:9
find 8:20, 18:10,
   40:8, 74:9
finds 40:7
fine 16:6
First 8:10, 8:22,
   11:20, 13:20,
   17:21, 19:5, 23:6,
   24:24, 34:23,
   40:3, 41:24, 44:1,
   52:10, 53:12,
   55:3, 55:17,
   60:11, 61:2,
   61:14, 71:22
Fiscal 2:23, 33:7
five 8:9, 44:1, 44:6
flat 22:21
fly 11:17
focus 16:20, 25:17,
   29:6, 40:6, 41:16
focused 25:13, 43:7
focuses 41:18
following 21:13,
   57:8, 61:14
footnote 34:21
form 39:18
forth 7:8, 65:23,
   71:16, 71:18
forum 47:10, 51:23
forward 9:25, 11:6,
   11:24, 14:24,
   15:10, 19:18,
   21:10, 25:14,
   32:7, 32:21, 45:8,
   45:15, 45:22,
   46:18, 50:8,
   50:11, 51:9,
   52:12, 53:6,
   58:13, 62:22,
   67:2, 67:11
four 19:24
Fourth 44:16, 44:17

frame 73:12
framework 36:20
Frankly 14:12, 16:5,
   21:5, 23:9, 24:24,
   29:25, 30:7
Friedman 2:25, 9:6
fruit 45:20
FTSE 56:20
full 24:11, 36:8,
   58:7
full-blown 31:13
fully 15:13, 16:24,
   35:12, 63:10
fundamental 66:15
furthest 38:17
future 32:6, 54:18,
   62:18, 68:12


< G >
Gail 2:6, 76:8
gains 54:11
gather 52:25
general 23:19,
   23:20, 36:14,
   41:20
generally 5:23,
   10:17, 27:1
generating 57:2
germane 41:1
gerrymandering
   18:12, 18:14,
   19:1, 31:4, 31:5,
   34:1, 34:4, 34:14,
   37:16, 37:21
gets 44:13, 50:1
getting 29:7, 45:1
give 9:24, 21:23,
   22:21, 23:3,
   30:20, 74:5, 74:15
given 22:25, 24:18,
   25:24, 50:13, 74:4
gives 69:16
glad 55:2
goal 41:21
Gonzalez 3:12, 5:7,
   17:7, 17:8, 17:12,
   35:19, 35:20,
   35:22, 35:23,
   36:1, 37:5

Gordon 3:7, 26:5,
  26:6, 26:7, 26:11,
  27:16, 34:25
Government 1:36
governmental 19:3,
  19:11, 21:7,
  24:11, 26:23,
  37:15
Granada 10:15, 25:1,
  38:15, 39:18
grant 74:3
gray 48:19
grievances 36:11
grossly 57:2
Group 3:15, 27:17,
  27:19, 35:20,
  36:6, 36:13, 36:17
groups 29:22, 36:18
Guaranty 2:29, 2:31
guess 24:2, 29:10
guidance 15:12


< H >
hac 60:2
half 22:21, 22:23
hand 36:12
hands 48:24
hanging 52:16
happen 21:17, 22:23,
  23:8, 48:11
happened 22:14,
  57:21
happening 45:10
happens 24:8
harm 63:22, 68:11
Harold 3:21, 54:25
Harry 28:10
Hastings 11:12
health 17:24
healthy 55:6
hear 7:20, 7:23,
  9:23, 11:12,
  13:19, 17:17,
  17:19, 23:3,
  31:15, 43:1,
  50:15, 55:2,
  59:24, 64:4, 71:7
heard 6:20, 6:23,
  10:5, 12:4, 12:17,

13:21, 18:3,
  19:11, 30:1,
  31:23, 35:17,
  35:18, 39:6, 50:1,
  54:17, 61:24, 75:3
hearings 28:10,
  32:12
hedge 14:1
hedging 13:8
held 36:18, 58:14
Hello 5:16, 16:12,
  16:13, 49:10
help 25:16
helped 61:4
helpful 43:12
helps 14:17
Hence 11:4
highest 56:16
highly 58:21
hinder 69:24
history 27:24
hit 62:1
hold 29:10, 71:16
holders 33:4
holding 38:16
Honorable 2:4, 2:6,
  36:2, 36:24, 37:3,
  76:6, 76:8
hope 11:12, 14:17,
  59:15
hopeful 48:10
hopefully 17:24,
  29:7, 71:11
hoping 34:10
horrible 59:16
hotly 10:14
housekeeping 60:2
huge 22:15
humble 58:10
hurricanes 6:2


< I >
idea 34:19
identified 59:7
identify 6:15
III 1:8, 1:28, 5:13,
  6:7, 10:23, 19:6
imagine 23:7, 68:13
immediately 7:6

impact 65:17
impaired 18:18,
  34:11
impediment 70:6
implement 61:16
implementation 36:23
implicated 10:14
implications 10:21
important 10:14,
  28:5, 29:6, 34:3,
  57:25
impossible 26:20
improper 31:9, 62:19
inaccessibility
  74:10
incarceration 74:5
inclination 10:7,
  11:4
inclined 10:9, 14:25
included 13:8, 36:4,
  37:1
includes 27:24,
  36:12
including 8:4,
  10:15, 23:6, 41:5,
  55:14
inconsistent 48:23,
  51:6
incorrect 67:14
incremental 52:8,
  67:3
indicated 12:7,
  58:15
indicates 12:5
indicating 12:13
indirectly 5:25
individual 51:18,
  51:24
induce 57:4
induced 56:23
Industries 65:20
influence 49:6,
  59:3, 67:23
information 73:11
initial 49:17, 61:4
initiated 14:8
inside 64:6
insist 67:23
insofar 18:17, 25:16
instance 13:20,

18:12, 23:17, 47:6
Instead 12:21,
  25:12, 63:18
instructed 53:4
instrumentalities
  75:20
integral 38:11
intend 13:19, 25:11,
  25:14
intended 14:12,
  14:13
intending 58:15
intends 70:16, 70:21
intent 37:16, 62:11
intention 12:7,
  39:12
interest 5:18, 6:18,
  10:22, 41:2, 54:14
interested 7:12
interests 54:14
interfere 57:14
interference 7:15
interpretation 58:3
interpreted 54:7
interrelation 50:13
interrupt 6:24,
  6:25, 7:3, 51:12
interrupting 25:7
intervened 44:10
invalid 34:13, 34:14
invitation 59:8
invokes 47:4
involved 55:5,
  65:10, 73:19
involves 56:9
irrelevant 18:17
island 5:24, 55:12
issuance 56:4,
  56:18, 56:22,
  56:24
issued 8:2, 70:6
item 8:10, 9:20,
  42:15, 70:13
itself 10:21, 20:21,
  64:11, 64:16
Ivonne 3:12, 35:20


< J >
J. 2:14, 2:31, 2:32

Jenner 26:7
John 2:27, 9:11
join 55:3
joinder 29:16
joinders 15:18, 18:9
joined 9:22, 40:18,
  73:14
joining 39:25
joint 61:5
Jointly 1:11, 1:31
Juan 5:1
Judge 2:4, 2:5, 2:6,
  2:7, 5:5, 29:8,
  49:6, 49:19,
  49:23, 50:6, 68:8,
  76:7, 76:8
judgment 50:1
judicial 8:1, 20:4
Judith 2:6, 76:8
jump 60:12
June 74:7, 74:15,
  74:19
jurisdiction 60:23,
  62:20
Justice 68:20, 71:14
justification 19:3,
  19:4, 19:12,
  34:20, 34:22,
  37:15, 39:10,
  39:17
justifications 21:8,
  24:7, 24:11,
  26:21, 26:23, 27:6
justify 38:8


< K >
keep 7:13, 42:8,
  50:3, 50:8, 71:11,
  75:21
keeping 7:17, 54:11,
  55:7
keeps 59:15
Ken 28:19
Kenneth 3:9
kicking 54:13
kinds 20:12
Kirpalani 2:39,
  29:1, 29:2, 29:3,
  30:22

knocked 55:15
knowing 20:12, 27:5,
  58:7
knowledge 22:13
knows 18:8, 18:20,
  19:4, 22:1, 37:25,
  56:11, 57:7, 61:1


< L >
labor 28:7
lack 37:16, 69:19
laid 15:13, 27:10,
  28:6
landscape 40:9
language 68:4
large 38:3
last 22:22, 32:15,
  54:16, 55:13,
  58:14, 59:7
later 11:22, 20:20,
  57:3
latter 53:21
Laura 2:4, 76:7
Lavan 28:20
law 21:25, 34:15,
  34:22, 35:1,
  36:23, 39:15,
  40:6, 40:12,
  40:13, 41:24,
  43:6, 43:7, 46:25,
  51:14, 55:25,
  69:23
Lawful 2:37, 29:3
lawsuit 43:16, 47:3
LCDC 29:1
lead 43:22
leading 39:3
leads 20:13, 31:22
least 18:18, 24:4,
  26:14, 37:14, 72:7
leave 42:5
leaving 40:11
led 72:22
left 13:24, 27:3
legal 10:14, 13:24,
  15:20, 24:13,
  31:21, 41:22
legislative 27:24
legitimate 34:6,

34:16
legs 18:14
lengthy 39:9
Leon 49:6, 50:6,
   68:8
less 7:23
lesser 22:4
level 21:22
Lewis 27:19
lieu 28:12
life 22:1, 22:8,
   22:20, 22:22
Lift 44:23, 45:2,
   45:24, 47:12,
   57:10, 60:11,
   60:22, 61:7,
   61:13, 61:20,
   62:5, 62:11,
   63:15, 65:7,
   65:20, 68:24,
   70:8, 70:14,
   71:13, 72:15,
   72:19, 72:23,
   74:12, 74:15, 75:8
lifted 47:24, 47:25,
   48:2, 52:19, 67:13
lifting 46:21,
   66:17, 68:5, 68:11
light 27:20, 27:22,
   28:22, 33:1, 73:2,
   74:18
likelihood 72:12,
   74:11
likely 7:2, 10:21
limited 8:4, 36:14,
   71:25
line 6:11, 9:14,
   47:1, 48:19, 60:8,
   60:12, 68:18,
   70:21
lines 50:13
listed 6:16
listened 37:6, 69:5
litigate 58:8
litigation 10:6,
   14:11, 14:16,
   30:1, 40:20, 44:1,
   44:13, 47:9, 55:6,
   55:19, 59:13,
   61:10, 63:14,

69:10, 69:15,
   69:17, 70:1, 70:3,
   70:7, 72:1, 73:4,
   73:22, 74:17
litigations 72:16
little 18:2
lives 21:24
living 55:10
LLP 37:9
local 28:20, 28:21,
   57:4, 58:9, 72:6
lockdown 57:23, 58:7
LOCKWOOD 3:19,
   42:19, 42:21,
   42:22, 42:25,
   43:1, 43:4, 43:14,
   50:18, 50:23,
   51:5, 51:11,
   51:17, 52:2,
   52:23, 53:9,
   53:12, 55:17,
   56:7, 56:10, 62:2,
   66:13, 66:14
logistical 75:11
long 11:15, 18:25,
   47:1
longer 22:22
look 11:6, 23:16,
   34:21, 46:5
looking 42:2, 46:6,
   52:3, 52:7, 62:17,
   62:25
looks 19:21
lose 52:17
lost 20:5, 48:3
lot 11:17, 12:8,
   24:14, 32:8,
   32:19, 52:9
loud 64:4
love 21:8, 21:11,
   23:3
loved 55:6
Luc 2:19, 11:11
Luis 2:26, 71:5


< M >
Magistrate 2:6, 76:8
mail 75:1
mainland 5:24

maintain 67:16
malpractice 56:12
Management 1:10,
   1:30, 5:11
manner 34:18, 35:12,
   40:19
March 10:9, 61:23
MARINI 2:26, 70:17,
   70:18, 71:3, 71:5,
   71:6, 71:9, 73:17,
   74:1, 74:22
Martin 2:14, 29:5,
   37:8
material 14:5
materials 13:14
matter 6:17, 7:7,
   23:1, 24:19,
   27:14, 34:15,
   34:22, 35:1,
   38:14, 39:15,
   39:16, 40:12,
   40:13, 51:14,
   52:6, 53:14, 54:8,
   64:11, 74:20, 75:3
matters 35:17, 36:4,
   37:1, 40:21, 53:17
maximization 19:8
maximum 13:9
Maza 2:20, 11:9
meal 30:18
mean 12:6, 12:19,
   19:10, 67:15
meaning 20:16
meaningful 10:21
means 55:20
measures 74:10
mediator 29:18
meet 41:16, 42:8
meets 42:3
members 5:18, 8:4
Memorandum 72:21
memorializing 70:12
mention 37:17
mentioned 21:6, 53:2
mere 31:11
merits 10:20, 10:25,
   12:20, 13:22,
   20:25, 25:12,
   29:11, 62:16,
   62:22

message 59:8, 59:9
Messrs 42:19
midst 58:6
Milbank 14:23
MILLER 2:35, 14:21,
  14:22, 16:3,
  32:25, 33:1
millions 12:16
Millman 3:10, 28:17
mind 42:8, 50:3
minds 45:13
minute 58:23, 68:21
minutes 7:18, 7:22,
  11:10, 11:16,
  28:18, 42:19
misimpression 33:3
misrepresented 24:22
Monday 7:9
money 30:10, 30:13,
  31:15
monoline 29:21
month 32:1, 68:23
monthly 21:24, 22:20
months 32:18, 52:14,
  53:24, 68:25
moot 44:10
mooted 15:15, 16:4,
  33:18
MORALES 3:12, 5:7,
  17:7, 17:8, 17:12,
  35:19, 35:23, 36:1
Morgan 27:19
Motions 52:13, 75:8
movant 71:13, 72:5,
  72:15, 72:19
movants 20:23,
  20:24, 23:2,
  24:16, 33:20,
  37:20
move 9:19, 15:10,
  45:7, 50:8, 62:22,
  72:24
moved 47:18
movement 31:24,
  31:25
MPR 28:20
muddy 65:1
MULLARNEY 3:23,
  59:22, 59:23,
  59:25, 60:1, 60:7,

60:17, 60:19,
  60:21, 64:2, 64:3,
  64:14, 64:25,
  65:25
multi-class 41:25
Municipal 2:31
Muniz 71:6
mute 6:11, 7:15,
  8:15, 8:16
muted 7:15
myself 17:22, 55:10


< N >
name 6:15, 6:21,
  9:16, 35:18, 35:19
named 73:22
narrow 10:19, 27:7
narrowly 62:6
NATBONY 2:31, 16:8,
  16:9, 17:2, 17:4
nature 36:18, 55:18
nearly 43:25, 63:5,
  66:1
necessary 8:9,
  11:17, 28:11,
  37:18, 41:17,
  43:5, 43:8, 74:7,
  74:12
need 7:24, 11:19,
  13:10, 20:17,
  22:12, 28:6, 28:7,
  32:16, 34:15,
  37:14, 38:9,
  53:22, 68:22
needed 43:9, 66:24,
  67:8
needless 12:6
needs 13:24, 20:15,
  21:6, 21:7, 22:3,
  63:5
negligent 57:2
negotiate 45:17,
  53:4, 66:24, 67:10
negotiations 45:11,
  45:20, 67:16,
  67:17
New 46:24, 46:25,
  75:14
next 9:20, 42:15,

52:24, 53:16, 75:7
nine 43:24
ninth 46:10
No. 1:6, 1:26, 5:13,
  7:10, 42:17, 70:15
None 4:5, 4:11
nongerrymandering
  34:6, 34:16
noon 8:8
nor 69:24
note 46:25, 47:21,
  47:23, 49:5, 72:2
noted 45:4
Noteholder 3:15
notes 27:25, 33:5
Nothing 9:4, 9:8,
  33:10, 56:18, 57:6
notion 19:18, 20:3,
  22:11
novel 5:25
November 58:14
nowhere 45:2
number 9:22, 10:13,
  18:9, 29:9
numerous 34:2


< O >
o'clock 8:8, 8:9
objected 36:16
objection 14:24,
  19:14, 26:13,
  29:24, 72:25
objections 20:20,
  72:13
objectors 33:15,
  49:14, 50:4
obligation 56:21
obligations 36:20,
  46:12
observation 21:14,
  27:23
observations 25:1,
  38:16
observed 19:5
obtain 73:3
obvious 21:19
Obviously 11:15,
  11:23, 12:14,
  15:19, 16:17,

21:20, 22:10,
24:14, 30:18,
33:19, 34:9, 38:9,
38:18, 73:17
occur 63:11, 75:10
occurred 22:16,
57:23
occurring 5:19
October 45:1
offer 11:8
offered 4:5, 4:11,
39:17
offerings 43:22
offhand 49:19
Official 2:17, 3:3,
26:7, 76:15
Okay 11:20, 11:24,
17:13, 17:20,
19:1, 19:2, 37:11,
42:14, 51:1, 74:3
old 43:24
Omni 10:9, 74:7,
74:19, 75:4
Omnibus 2:3, 5:19,
57:10, 60:10,
61:3, 63:3, 63:11
on-the-record 61:13,
65:6
Once 20:19, 65:13
One 6:23, 7:18, 8:8,
15:4, 18:18,
18:20, 18:22,
18:23, 19:12,
22:17, 22:18,
22:24, 27:9,
27:23, 29:7,
29:19, 35:4,
37:10, 40:7,
40:10, 46:18,
46:22, 47:9,
47:21, 55:14,
60:1, 71:1, 71:22,
72:9, 73:17
ones 26:2, 41:4,
55:6, 67:23
ongoing 6:2, 75:16
open 13:25
opening 13:3
opens 68:22
operation 6:9

operations 53:1,
53:2
opinion 58:10
opportunity 6:18,
14:13, 37:3, 59:15
oppose 46:1
opposed 19:3, 40:16,
45:8, 51:18, 57:22
opposing 69:21
opposition 15:18,
50:22, 51:2,
58:12, 58:19, 62:3
options 64:22
oral 6:19, 70:12
Ordered 30:2
orderly 6:9
Orders 8:2, 53:1
ordinary 36:3,
36:25, 48:17
original 39:23
others 21:15, 27:8
otherwise 41:19,
54:13
ourselves 67:8
out-of-the-money
30:7
outside 29:17, 58:4
overall 41:17, 54:2
overhang 52:20
overlaps 38:6
Overmyer 46:23, 47:2
oversee 65:3
Oversight 1:9, 1:29,
5:11, 7:9, 8:11,
8:19, 8:23, 12:5,
15:6, 17:14,
18:23, 21:4,
21:15, 23:20,
24:4, 25:20,
26:25, 29:22,
30:9, 32:14, 37:9,
37:20, 41:14,
44:24, 45:21,
47:11, 50:7, 66:22
own 7:14, 41:12,
41:13, 61:17,
61:18


< P >

P. 3:22
packaging 14:14
PAGE 4:3, 23:18,
27:25, 33:5
pages 76:4
pandemic 5:25, 58:6
papers 13:15, 15:14,
15:18, 25:9, 41:8,
47:21, 50:19,
65:19, 65:23,
73:24, 74:20
paragraph 19:22,
19:24, 23:18,
31:8, 61:7
parsing 46:8
part 11:21, 12:9,
12:10, 18:7, 38:3,
39:4, 39:8, 40:15,
48:16, 49:15,
53:12, 54:1, 54:2,
58:18, 69:15
partial 18:8, 20:24,
23:2, 24:16,
37:20, 57:10,
66:20
participant 7:5
particular 26:19,
39:17, 40:9,
41:11, 48:14,
54:5, 73:14
PARTIES 2:11, 5:18,
6:10, 6:18, 8:4,
9:22, 9:23, 10:22,
20:4, 25:10,
25:17, 25:18,
29:9, 29:16,
32:19, 39:25,
41:2, 41:16, 44:3,
45:17, 48:7, 53:4,
61:4, 62:11, 63:8,
65:15, 67:9
parts 53:10
party 43:19, 49:8,
73:20
Pasquale 3:9, 28:17,
28:19
past 35:11, 56:11
patent 25:21
path 9:25, 14:24
Paul 3:19, 11:12,

42:22
pay 21:21, 23:20
payment 27:10, 39:20
payments 21:24,
  22:9, 22:20
pendency 53:7
pending 50:21, 60:3,
  62:4, 64:16,
  70:10, 72:20
pension 22:12,
  22:15, 22:18,
  23:25, 25:4
people 5:24, 17:23,
  31:16
perceive 37:15
percentage 23:19
Perfect 71:9
performance 46:13
perhaps 6:4
permission 60:3,
  60:5, 69:17
permit 39:19, 61:14,
  61:16, 62:11,
  62:14, 62:15,
  63:19
permitted 6:13, 8:3,
  47:8, 63:24, 65:8,
  69:7, 69:23
permitting 61:5
person 6:23, 8:4
personal 55:24
perspective 52:6
persuaded 13:23,
  39:1
persuasive 40:8,
  40:9
pertaining 49:1
pertinent 41:4
Peter 2:25
petition 55:22
phase 16:4
phone 7:14, 70:21
phones 6:11, 8:16
PHV 2:14, 2:15,
  2:19, 2:20, 2:25,
  2:27, 2:31, 2:32,
  2:35, 2:39, 3:7,
  3:9, 3:10, 3:15,
  3:19, 3:22, 3:23
physical 72:1, 73:3,

73:19
piece 30:17, 45:15,
  46:5, 46:18,
  48:19, 48:20,
  53:21, 60:1
piecemeal 63:14
Pietrantoni 71:6
place 19:9, 44:22,
  48:12, 51:3, 51:8,
  52:11, 54:11,
  66:2, 67:6, 67:15,
  69:6, 71:24
plaintiff 44:11,
  47:3
plaintiffs 51:19,
  51:24, 54:23,
  61:12, 61:22
plans 22:15, 33:8
play 62:7, 62:13
played. 7:21
pleading 19:13, 20:7
pleadings 23:13,
  23:16, 41:13,
  44:13
Please 5:9, 6:15,
  6:21, 6:24, 7:5,
  7:15, 8:15, 8:16,
  60:5, 60:20
plenty 54:17
point 20:13, 21:4,
  21:13, 21:19,
  21:22, 23:12,
  24:4, 26:17, 31:3,
  40:4, 44:14,
  45:18, 45:21,
  51:4, 51:9, 62:1,
  68:20, 71:3
point. 24:2, 35:4,
  69:15
pointed 26:18
points 15:3, 31:1,
  33:14, 35:10,
  71:20
policies 8:2
position 16:15,
  16:16, 20:6,
  33:17, 46:7, 49:8,
  64:10, 66:25,
  73:4, 73:13
positions 10:19

positives 29:6
possibilities 18:22
possibility 12:1,
  14:3
possible 6:5, 6:6,
  11:4, 13:9, 41:24,
  67:9
possibly 23:23
potential 39:7, 73:6
potentially 39:9
poverty 21:21
Power 1:18, 68:1
powerful 58:11
practical 10:24,
  27:14, 52:10,
  53:14
practice 10:7, 70:10
pray 36:24
precedents 34:2
precise 42:10, 74:8
preclude 51:15,
  69:20
precluded 51:3
prejudice 10:10,
  14:3, 14:13, 16:1,
  19:25, 40:17,
  40:18, 54:12,
  63:22, 70:9, 72:4
prejudiced 48:3,
  68:21
prejudicial 33:19
preliminary 15:6,
  18:2, 70:13, 71:16
premature 13:17,
  26:17, 32:9,
  47:15, 60:22,
  66:10, 69:16
prematurely 63:14
premise 66:15, 67:12
prepared 11:15,
  24:14, 24:15, 62:9
preparing 75:14
prepetition 36:10
present 50:4, 61:6,
  61:15, 69:7, 71:10
presentation 11:15,
  25:18, 50:20,
  51:7, 52:5, 54:12,
  55:18, 57:18,
  61:18, 62:12,

63:2, 71:10
presented 36:12,
  49:12, 49:19,
  49:21, 50:5, 60:9,
  61:21, 66:3,
  66:19, 70:5, 71:14
presenting 61:9
press 5:19, 8:5
pretty 60:22
prevail 29:23,
  30:17, 74:12
prevailing 72:13
preview 9:24, 30:21
previously 30:2,
  72:17
primarily 42:23,
  43:4
primary 19:9, 19:13,
  33:15, 44:11
Prime 7:11
prior 30:1, 30:11,
  33:20, 33:23,
  56:22
priority 36:8, 38:6,
  52:16
pro 60:2, 70:24
proactive 45:1
problem 26:19,
  52:11, 68:18
problems 52:10,
  68:15
procedural 16:1,
  16:5, 16:24, 61:9,
  61:17, 62:6,
  62:12, 62:15,
  63:1, 63:12, 65:8,
  65:10, 65:13
procedurally 15:19,
  60:25
procedure 43:6
Procedures 8:12,
  36:11, 67:22,
  69:24, 75:11
proceed 11:4, 48:22,
  49:4, 60:6, 63:21,
  65:16
proceeded 71:2
proceeding 6:13,
  70:24, 75:1
Proceedings 3:48,

6:15, 7:1, 10:8,
  44:22, 75:20,
  75:22, 76:6
process 11:3, 12:12,
  12:16, 31:18,
  31:20, 40:16,
  41:18, 44:23,
  48:23, 61:17,
  62:6, 62:12, 63:1,
  63:2, 65:8, 65:10,
  65:12, 65:13
produced 3:48
profit 19:8
progress 6:5, 73:2
PROMESA 1:8, 1:28,
  5:13, 15:9, 27:24,
  44:22, 57:12,
  59:2, 59:13
promise 13:23, 31:13
proper 13:12, 15:19,
  30:16, 60:25,
  63:18, 64:18
properly 66:19,
  73:21
property 52:1
proponent 26:25
proponents 29:23,
  34:5, 39:22, 39:24
proposal 11:2,
  16:25, 25:13
proposals 42:9
propose 40:5
proposed 14:4,
  14:24, 19:21,
  19:22, 19:24,
  20:21, 33:24,
  35:6, 35:9, 40:10,
  40:22, 41:8, 61:5,
  61:6, 61:19,
  62:10, 62:12,
  62:21, 62:23,
  63:2, 63:13, 65:9,
  66:3, 66:6, 73:11
proposes 20:21,
  41:15
proposition 64:4,
  64:7, 64:15
propriety 42:6,
  62:15, 63:12
prosecute 45:25,

46:1, 63:24,
  67:18, 67:20
prosecuted 69:25,
  70:4
prosecution 49:2,
  52:4, 65:17
Proskauer 17:22,
  37:9
protect 67:8
protected 59:16
protection 47:4
prove 19:12, 37:15
provide 6:17, 28:1,
  35:11, 46:12,
  65:7, 74:4
provided 25:19,
  51:7, 61:7, 63:4,
  66:5, 73:11
provides 36:8, 56:14
providing 75:11
provision 18:18
provisions 15:9,
  49:3
public 5:18, 7:11,
  8:5, 8:14, 8:19,
  36:21, 74:10
PUERTO 1:3, 1:11,
  1:16, 1:17, 1:31,
  1:37, 2:14, 2:22,
  3:7, 5:1, 5:12,
  5:13, 6:1, 6:7,
  17:23, 24:23,
  28:6, 31:16,
  42:23, 43:6, 44:6,
  52:14, 55:11,
  56:1, 56:13, 59:4,
  72:7, 75:14,
  75:20, 76:2
pulls 21:14, 21:16
punished 8:6
punting 68:17
purported 24:16
purpose 19:1, 30:4,
  30:5, 34:6, 34:16
pursuant 36:10
pursue 46:21, 48:3,
  48:17, 48:25,
  52:19, 55:24,
  66:17, 70:3
pursuing 45:5

push 33:16
pushed 51:8, 68:18
pushing 18:5
put 14:7, 20:24,
    22:7, 23:24,
    26:24, 31:17,
    46:3, 58:19,
    65:23, 67:14,
    67:15, 68:4,
    68:25, 69:6,
    71:18, 73:9, 74:8
putting 21:20


< Q >
QTCB 3:14, 27:17,
    27:19, 33:4
question 22:7,
    40:11, 42:2,
    48:13, 48:14,
    49:22, 49:23,
    52:24, 53:21,
    64:3, 64:16, 68:17
questions 7:3, 8:21,
    9:15, 15:24,
    25:23, 28:15,
    42:11, 52:16,
    60:12, 62:2,
    64:10, 65:21,
    65:24, 73:8, 74:21
Quinn 29:3
Quinones 3:20,
    42:20, 43:5, 53:13
quite 13:10, 25:21,
    57:7
quo 67:16
quote 46:22, 57:18
quoted 49:16


< R >
raise 33:15, 37:18,
    38:6
raised 6:19, 10:18,
    11:18, 13:5, 14:6,
    15:8, 41:5, 41:7
raising 40:19
rank 36:19
Rapisardi 2:27, 9:6,
    9:8, 9:11

rather 13:2, 28:8,
    41:7, 41:23
rational 39:16
Re 1:6, 1:26, 5:11,
    46:23
reached 66:16
reactions 11:6
read 20:9, 25:9,
    69:5
ready 12:19, 43:8,
    54:20, 68:22
realize 23:24
realized 36:22
realizing 58:20
really 19:14, 23:14,
    27:13, 27:23,
    29:17, 29:24,
    30:8, 31:16, 44:1,
    53:25, 55:14,
    68:19, 68:22
reap 47:8
reason 14:1, 14:10,
    18:21, 33:15,
    36:24, 58:10,
    66:20, 66:23,
    67:5, 67:14,
    67:15, 68:25
reasonable 36:7,
    72:12
reasons 13:24, 18:3,
    18:11, 19:13,
    21:9, 24:12,
    26:18, 28:5, 50:4,
    50:5, 59:6, 71:18,
    72:22, 73:18
reassert 40:24
rebut 24:15
rebuttal 30:24
recall 57:9, 57:16,
    60:9
receive 23:19, 46:16
received 73:21
recent 6:2, 55:14
reclassify 9:21
recognizes 10:13,
    10:16
recollection 43:12
recommence 8:8
recommendation 32:15
recommendations

29:18
recommended 57:1
record 6:10, 6:16,
    24:11, 28:23,
    40:18, 58:18
recorded 3:48
recording 6:12, 8:3
recovery 36:9, 36:15
reestablished 40:20
referee 48:19
reference 33:5
refers 26:22
refile 12:23, 15:23
refiles 16:4
reflected 8:20,
    13:13
reflects 38:4
reformulation 25:17
refuses 66:5
refuted 35:7
regarding 9:25,
    15:12, 27:10,
    40:21, 42:11,
    61:17, 62:12,
    62:14, 63:1, 65:8,
    65:14
regardless 62:18
regulates 36:20
Reid 28:11
reimposing 51:13
related 10:2, 10:11,
    11:1, 35:13, 41:2,
    41:3
relating 13:12
relation 14:15,
    25:10
relatively 10:19
relevant 11:3,
    21:22, 41:3
relief 10:2, 10:20,
    15:22, 16:18,
    42:16, 47:3, 61:2,
    62:18, 63:5, 63:9,
    66:7, 66:10,
    71:21, 72:1
relies 65:20
rely 34:10, 34:13,
    65:22
remain 39:1
remaining 7:18

remains 60:2
remark 49:20
remarks 6:20, 17:11,
  24:15, 25:8,
  25:15, 25:24,
  30:23, 38:25,
  39:6, 53:3, 59:14,
  59:19
remind 8:1
render 74:16
rendered 65:14
renewal 14:3, 70:9
renewed 42:16, 43:10
Reply 10:4, 12:3,
  27:24, 34:3,
  34:21, 35:8, 74:6
report 8:24
Reporter 76:15
reports 8:10, 8:12,
  8:17, 8:20, 9:16
represent 35:20,
  36:6, 37:22, 55:23
representation
  31:23, 53:5
representative 1:13,
  1:33, 5:12
representatives 8:23
representing 29:3,
  43:20
request 18:10, 46:2,
  46:3, 60:17,
  60:21, 61:4,
  72:17, 72:19, 73:5
requested 8:11,
  16:18, 57:10,
  71:19, 72:2, 72:5
requesting 15:17
requests 10:2, 72:15
require 6:20, 19:23,
  26:24, 39:19, 65:3
requirement 29:14
requirements 29:19,
  42:4, 61:9
requiring 18:18
reserve 20:21,
  28:23, 30:19, 31:8
reserving 27:12
reset 25:14
resolution 10:20,
  20:25, 66:20,

  74:14, 75:19
resolved 74:20
resolving 30:17
respect 10:1, 18:1,
  33:25, 34:4, 34:7,
  34:19, 41:11,
  49:3, 54:8, 55:18,
  56:21, 58:12,
  58:16, 68:1, 68:6
respectfully 30:12,
  59:9
respective 10:18
respects 70:9
respond 13:5, 23:2,
  33:2, 38:13,
  71:15, 73:4, 74:4
responded 69:12
Response 11:20,
  18:2, 30:23,
  35:11, 44:16,
  71:13, 73:7
response. 9:18,
  38:23, 42:13,
  70:23, 75:5
responses 31:2
responsive 73:24
rest 22:20, 22:22
restart 41:15
restrained 54:4
rests 36:7
result 45:13, 48:24,
  56:4, 61:20,
  63:21, 67:13
resulting 36:9
results 31:20
retire 39:24
Retired 3:4
Retiree 18:16,
  21:15, 21:20,
  21:23, 21:24,
  22:7, 23:4, 23:25,
  25:1, 27:8, 28:1,
  35:6, 54:23
Retirees 22:19,
  25:4, 26:4, 26:7,
  28:8, 33:6, 40:1,
  40:2, 44:7, 55:23,
  56:2
Retirement 1:35,
  43:17, 43:18,

  56:1, 56:4, 56:21,
  56:23, 57:1
retransmission 6:12,
  8:3
return 17:25, 19:8,
  66:13
revenue 14:11, 75:8
reverse 22:18
reviews 24:18
RICO 1:3, 1:11,
  1:16, 1:17, 1:31,
  1:37, 2:14, 2:22,
  3:7, 5:1, 5:12,
  5:13, 6:1, 6:7,
  17:23, 24:23,
  28:6, 31:17,
  42:23, 43:6, 44:7,
  52:14, 55:11,
  56:1, 56:13, 59:4,
  72:7, 75:14,
  75:20, 76:2
rights 10:22, 31:9
ripe 54:20, 69:1
risk 30:12, 30:15,
  45:19, 48:17
Rivera 3:20, 42:20
road 54:13
Robert 3:7, 26:6
Roberto 3:20
room 40:9
Rose 37:9
Rosen 2:15
Rudnick 59:23
Rule 7:3, 8:5, 9:20,
  12:7, 15:8, 20:18,
  24:23, 47:19
ruled 57:24, 63:12,
  64:6, 66:18, 72:14
rules 47:16, 52:12,
  53:23
ruling 27:7, 53:23,
  62:18, 67:13,
  70:12
run 62:25, 67:22
running 53:18


< S >
S. 2:15
S/ 76:13

Sabin 3:15, 27:18
safe 55:6, 75:21
San 5:1
sanctions 8:6
Santana 70:14,
    70:21, 70:24,
    73:15, 74:4, 75:1
satisfaction 36:9
saved 45:12
saying 15:25, 20:10,
    22:19, 29:22,
    46:4, 49:20, 57:17
says 19:24, 23:18,
    31:8, 46:15
schedule 25:14,
    39:2, 40:20,
    41:15, 41:16,
    41:17, 42:10,
    48:7, 53:4, 71:17,
    74:25
scheduled 71:12,
    75:7, 75:9
scheduling 32:17
scope 15:15, 49:12,
    49:22, 53:25,
    58:4, 64:19,
    64:21, 70:3
scrutiny 47:5
se 70:24
Second 15:15, 16:4,
    18:20, 61:16,
    63:9, 63:15,
    65:20, 72:4
second-guessed 20:20
Section 18:11,
    18:17, 22:2,
    27:25, 33:5, 41:6,
    47:7
Securities 56:13,
    56:15
Security 39:21,
    56:13
seek 36:1, 66:10,
    67:1
seeking 51:24
seeks 47:2, 66:7
seem 29:18, 69:13
seems 14:25, 15:17,
    28:4, 29:20
seen 23:6

Senate 28:10
send 59:8
senior 30:9
sense 24:1, 31:23,
    32:9, 55:22
separate 18:24,
    24:12, 26:20,
    26:22, 27:4, 27:8,
    32:11, 34:20,
    34:23, 35:6, 35:7,
    35:9, 37:22, 38:3,
    38:8, 38:9, 39:23,
    41:13
separately 28:4,
    40:2, 40:3, 41:18,
    41:20
series 22:9, 38:2
serious 13:10
Servais 2:32, 16:10,
    16:11, 16:12,
    16:13, 16:14,
    17:1, 33:13
serve 54:13, 62:22
served 43:22, 73:21
serves 30:4
Services 42:22
session 5:14, 8:7
set 7:8, 37:17,
    41:16, 71:16,
    74:6, 74:19
setting 74:25
settled 38:10, 44:7
settlements 37:23,
    38:4, 38:10
several 19:5, 55:17,
    56:24
shall 61:8
sharpened 47:12
Sherry 3:10
shield 47:7
shifting 20:22
Shlomo 2:20
shocked 24:25
short 38:11, 62:25,
    70:11, 74:25
shouldn't 64:5
show 35:8, 38:9
showing 24:22
shut 45:14, 52:7,
    53:2, 53:7

shutdown 63:5
side 45:25, 46:1,
    67:21
sides 10:17
signaled 10:7
similar 20:7, 72:14
simple 63:16
simply 15:7, 21:17,
    28:5, 30:3, 37:18,
    38:14, 40:3,
    59:10, 64:11
sincere 39:16, 55:9
single 34:7
situation 27:3,
    38:17, 47:5,
    47:14, 47:20
six 34:21
Skadden 42:22
sketch 43:14
slightly 33:23,
    35:14
slowly 44:25
smacks 27:6
sole 61:8
solely 31:3, 57:20
solicitation 11:2,
    13:11, 13:14,
    31:17, 31:19
soliciting 40:4
somehow 47:22
someone 5:16, 8:15,
    22:3
Sometimes 21:25,
    52:13
Sonnax 65:19
soon 28:13, 48:10,
    53:18, 67:9
sooner 44:9
sorry 5:16, 9:11,
    12:12, 40:1,
    51:22, 58:21,
    58:24
sort 12:23, 53:16,
    70:7
sorts 26:24
sought 10:20, 13:22,
    15:22, 48:1
Sound 6:12, 7:20,
    7:21
source 39:20

Southern 46:23
speaker 6:14, 7:8,
   7:13, 7:14, 7:17
speakers 6:16, 6:22
speaking 5:6, 6:11,
   9:10, 10:17, 27:1,
   70:20
speaks 51:13
Special 3:17, 38:1,
   50:7, 59:21,
   59:23, 60:4,
   60:10, 61:11,
   62:9, 65:22
specifically 33:25,
   34:11, 36:6
specified 7:25
speedy 17:25
spend 12:8, 12:16,
   30:10, 32:19
spending 31:15
spent 30:14
spoke 55:4
spoken 6:17
spouse 22:1
spring 44:14
SPU 28:21
staff 17:23, 29:8,
   55:5, 55:11, 75:13
stage 13:18, 15:6,
   18:13, 20:15,
   26:15, 27:2,
   27:15, 35:2,
   39:13, 42:4, 66:9
stakeholders 6:8,
   30:7
standing 44:2, 44:8,
   55:24, 56:2
start 42:18, 48:9,
   48:12, 53:15,
   53:18
started 44:23, 53:18
State 6:21, 9:16,
   35:18, 52:24,
   56:2, 64:9
stated 57:5
States 1:1, 2:5,
   2:7, 5:22, 56:1,
   76:7, 76:8
status 8:10, 8:17,
   9:16, 67:16

statute 22:1
statutory 36:20,
   51:15
stayed 48:16, 48:20,
   48:21, 49:1,
   50:11, 52:4, 52:21
stenography 3:48
stipulate 62:10
stop 28:14
stopped 46:9
story 50:15, 54:2
streamlining 25:8
stricken 15:19
Strike 47:17, 47:18,
   50:21, 51:25,
   53:8, 69:21
striking 69:22
strong 58:11
Stroock 28:20
struck 52:17
structural 39:15,
   41:4
structure 14:8,
   40:10, 40:12,
   41:12, 41:25
studying 25:10
subject 20:19
submission 65:9
submissions 25:21,
   39:1, 69:5
submit 24:21, 59:9,
   62:10, 72:22, 73:7
submits 72:25
substantial 61:3
substantive 25:15,
   35:10
subsumed 48:8
success 21:2
succinctly 27:9
sue 44:2, 44:8
suffice 24:21
sufficient 73:24
suggest 47:21
suggested 34:9,
   34:25, 35:3, 35:5
suggesting 65:1
suggestion 32:22,
   49:5, 67:21, 68:11
suing 43:18, 44:18
suit 55:20, 56:3

summary 50:1
summons 73:20
Sunni 3:22, 60:8,
   60:9
superb 75:15
support 10:18,
   16:16, 16:17,
   18:7, 18:9, 46:7,
   46:10, 46:21,
   71:20, 72:10,
   72:13, 75:16
supporting 21:16,
   45:22
Supreme 55:21
surprise 71:1
surprised 29:12
survive 70:10
survives 19:7
Susheel 2:39, 29:3
suspended 53:2
sustain 36:16
sustainable 19:7
Swain 2:4, 5:5, 76:7
sympathetic 19:17
System 1:35, 43:17,
   43:19, 56:1, 56:4,
   56:21, 56:23, 57:1

< T >
table 20:18
Tacoronte 5:9
tailor 10:3
target 41:12
Taylor 2:4, 76:7
team 30:16
teed 32:1
telephonic 5:21,
   6:9, 8:13
TELEPHONICALLY 2:11,
   75:10
tend 59:3
terms 12:21, 51:13,
   53:21, 57:6, 58:17
terrible 55:7, 57:23
territory 19:6
themselves 28:8
theory 46:10
thereabouts 18:6
thereto 33:23

thereunder 33:9
they've 23:6
thinking 21:18,
   25:20, 26:24
thinks 29:12
Third 54:20, 72:9
thoroughly 35:7
though 19:20, 29:21
thoughts 5:23, 9:25
three 39:19, 43:22,
   55:13, 71:20, 74:5
thwart 48:2
tie 54:14
till 12:13
timed 47:22
timetable 8:7
timing 33:14, 49:24,
   68:7
Title 1:8, 1:28,
   5:13, 6:7, 10:22,
   19:6
Today 5:19, 6:3,
   6:9, 8:7, 11:24,
   17:24, 18:1, 18:5,
   23:10, 25:12,
   37:4, 39:6, 56:8,
   60:4, 60:8, 60:12,
   62:2, 69:6, 70:13,
   75:1, 75:15
together 6:3, 17:25,
   19:23, 20:11,
   21:14, 21:16,
   29:7, 36:2, 36:25,
   39:25, 47:12
tolerated 57:5
took 44:11
tort 56:12, 72:6
tortfeasors 56:3
total 11:10, 56:25
totally 19:17, 20:5,
   21:3, 56:7
tough 45:4
toward 39:4, 75:19
towards 56:17
track 7:13, 7:17
transaction 50:15,
   54:3
Transcript 3:48,
   7:1, 76:4
transcription 76:5

transcripts 58:19
treated 22:11, 40:3
treating 22:17,
   22:18, 36:13
treatment 21:23,
   22:3, 22:4, 23:5,
   23:22, 33:6, 35:5,
   35:6, 35:8, 35:9,
   36:8, 38:14, 69:9
trial 39:9, 44:5,
   57:7, 57:22, 59:11
tried 22:24, 44:25
tries 63:25, 65:1
true 76:5
truth 38:18
try 8:15, 21:21,
   71:11
trying 6:4, 27:4,
   30:8, 67:21, 67:22
turmoil 55:13
turn 11:8, 16:8,
   17:14, 26:4, 29:1,
   30:24
turned 44:1
turning 39:10
turns 48:5
twice 54:19
two 7:18, 7:19,
   7:22, 7:23, 10:17,
   15:3, 19:22, 20:9,
   20:10, 23:4,
   28:18, 32:11,
   37:10, 39:19,
   43:16, 44:12,
   53:9, 55:13,
   58:23, 61:7,
   68:23, 68:25,
   73:5, 73:23
tying 48:24

< U >
UCC 9:20, 10:4,
   10:5, 10:20, 14:8,
   14:23, 18:8, 23:1,
   23:16, 23:17,
   30:24, 39:24,
   40:24, 41:6
ultimately 18:21,
   49:22, 50:6

unbundling 14:9
uncertain 57:5,
   58:17
unconfirmable 18:11
underlying 73:3
underscore 56:22
understand 11:19,
   12:2, 19:17, 34:4,
   54:11, 62:17,
   63:23
understanding 52:3,
   53:5, 70:25, 73:12
understands 10:4,
   73:20
understood 12:10,
   20:18, 50:19,
   61:12, 65:6
underwriter 43:22,
   56:15
underwriting 43:20,
   43:21, 56:10,
   57:6, 58:3
underwritings 56:14
unduly 28:1, 28:3
unequivocally 58:17
unfair 23:14, 27:14,
   47:14, 48:24,
   49:4, 68:19
unfairly 36:16,
   47:22, 54:12
Uniform 56:13
unimpaired 18:15
United 1:1, 2:5,
   2:7, 5:22, 76:6,
   76:8
Unless 12:24, 15:23,
   22:3, 25:23,
   28:14, 54:14,
   65:21, 73:8
unlikely 58:21
unquote 57:18
Unsecured 2:18,
   18:25, 23:19,
   23:21, 30:8,
   31:12, 36:14,
   39:25, 40:2, 42:1
unshackled 67:25
until 16:16, 26:14,
   34:1, 47:16,
   53:22, 63:23,

66:17, 72:7, 73:6,
74:14
untimely 45:19, 67:8
updated 14:14
urge 32:16
urged 18:12, 20:7
urgent 71:15, 71:18,
71:21, 72:10
urging 19:10
using 47:13
usual 8:10

< V >
vacuum 27:4
vain 30:14
valid 34:22, 35:1
validity 38:2,
49:15, 56:19, 58:2
variety 14:7
various 14:15,
39:11, 72:16
viability 69:10
vice 60:2
Vicente 3:21, 48:13,
54:23, 54:24,
54:25, 55:2,
58:24, 59:19, 67:7
view 15:20, 15:22,
21:4, 24:4, 36:22,
51:9, 53:17, 54:4,
63:10, 63:16,
64:14
violate 62:5
violating 48:17
violation 64:13
Violations 8:5
virtually 26:20
visit 25:12
volunteers 22:3
vote 11:2
votes 13:11, 40:4
voting 12:12, 12:14,
13:10, 15:2,
19:18, 31:17

< W >
Wage 35:20, 36:8,
36:12

wait 9:17, 31:25,
47:16, 53:22,
59:10, 63:6, 66:5
waiting 11:25,
62:23, 65:2
Walker 76:13, 76:14
wanted 17:22, 30:19,
35:4, 35:10, 37:9,
67:5, 71:1
wants 11:23, 21:9,
32:14
warning 58:23
warranted 24:13
warrants 47:5
waste 12:8, 19:20
waters 65:1
weapon 47:8, 47:13
weeks 32:1, 53:16,
73:5, 73:23, 74:5
weigh 68:3
Welcome 5:18, 31:12
well-founded 25:11
well-settled 46:25
whatever 37:16,
49:10, 49:11
whenever 19:10,
20:14, 24:8
whenever. 20:2
whole 31:17, 32:12,
46:19, 51:9, 54:7
wholly 26:12
wide-open 69:17
Willett 3:15, 27:17,
27:18, 27:19,
27:22, 28:16
William 2:31
willing 10:5, 30:15
win 30:5, 51:23
Wines 10:15, 25:1,
38:15, 39:19
wisely 57:12
wish 6:20, 8:23,
9:2, 9:6, 9:15,
17:10, 17:22,
35:17, 38:22,
40:6, 75:3
wishes 6:23, 26:2,
59:20, 68:1, 70:3
wishing 55:5
withdrawing 25:3

within 56:16, 57:20,
64:19, 64:22, 70:3
without 10:10, 14:2,
14:13, 15:20,
16:1, 19:25,
20:11, 27:5,
40:17, 40:18,
62:23, 70:9
withstanding 10:19,
53:7
WITNESSES 4:3
won 44:5
word 39:14
worded 23:22
words 13:8, 28:8
work 24:1, 42:10,
48:7, 75:14, 75:18
working 47:12
works 16:1
world 5:23
worried 20:25
worth 28:2
writing 8:12, 8:18
written 25:21, 74:25

< Y >
year 44:23, 48:1,
48:3, 54:10,
58:15, 68:18,
68:19, 72:24
years 43:24, 44:1,
44:6, 44:13, 55:14
York 46:24, 75:14
yourself 6:15