## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00005-LTS |

**AMBAC ASSURANCE CORPORATION, THE BANK OF NEW YORK MELLON, AND U.S. BANK TRUST NATIONAL ASSOCIATION'S MEMORANDUM OF LAW OPPOSING THE OVERSIGHT BOARD'S MOTION SEEKING STAY RELIEF IN <u>REVENUE BOND ADVERSARY PROCEEDINGS</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND .......................................................................................................................... 4

ARGUMENT ............................................................................................................................... 8

I.     THE COURT SHOULD DENY THE BOARD'S MOTION AND FIRST RESOLVE
WHETHER DEFENDANTS HAVE PROPERTY RIGHTS OR SECURED
CLAIMS. ............................................................................................................................ 8

       A.    The Board Identifies No Changed Circumstances That Would Warrant
Modifying or Reconsidering the Court's Existing Case Management Order......... 8

       B.    The Board's Piecemeal Approach Is Inefficient and Would Not Advance the
Resolution of These Cases. .................................................................................... 9

       C.    Contrary to the Board's Contention, the Ten New Issues Identified Cannot Be
Resolved as a Matter of Law Without Discovery. ............................................... 12

II.    ALTERNATIVELY, IF THE COURT IS INCLINED TO ALLOW ADDITIONAL
PROCEEDINGS, IT SHOULD LIFT THE STAY ENTIRELY TO ALLOW
COMPREHENSIVE LITIGATION RATHER THAN WASTING TIME ON A
SUBSET OF CLAIMS. .................................................................................................... 15

CONCLUSION........................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight
   & Mgmt. Bd. for P.R.),*
   989 F.3d 170 (1st Cir. 2021) ..................................................................7, 7 n.9, 13

*Carney v. Adams,*
   141 S. Ct. 493 (2020) .........................................................................................12

*MAZ Partners LP v. PHC, Inc. (In re PHC, Inc. S'holder Litig.),*
   762 F.3d 138 (1st Cir. 2014) ...........................................................................12 n.12

*Resolution Tr. Corp. v. N. Bridge Assocs., Inc.,*
   22 F.3d 1198 (1st Cir. 1994) ...............................................................................12

*Sanders v. York,*
   2008 WL 1925232 (E.D. Cal. Apr. 30, 2008) ...................................................12 n.12

*Watkins v. Monroe,*
   2019 WL 19869864 (E.D. Tex. Mar. 27, 2019) ...............................................12 n.12

**Statutes**

3 L.P.R.A. § 1913 ....................................................................................................13

9 L.P.R.A. § 2019 ....................................................................................................13

9 L.P.R.A. § 2021 ....................................................................................................13

9 L.P.R.A. § 5681 ....................................................................................................13

13 L.P.R.A. § 2271v .................................................................................................13

13 L.P.R.A. § 31751(a)(1)(D) ..................................................................................13

**Other Authorities**

Fed. R. Civ. P. 56(d) ........................................................................................ *passim*

P.R. Const., art. VI, § 8 .................................................................................... *passim*

Ambac Assurance Corporation ("Ambac"), The Bank of New York Mellon ("BNYM"), and U.S. Bank Trust National Association ("U.S. Bank," and collectively with Ambac and BNYM, "Defendants"), by and through their undersigned counsel, respectfully submit this opposition to the *Motion of the Commonwealth of Puerto Rico, by and through the Financial Oversight and Management Board, For Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment* (ECF No. 16326) and the accompanying memorandum in support (ECF No. 16327) (the "Motion" or "Mot.") filed by the Financial Oversight and Management Board for Puerto Rico (the "Board") in the above-captioned proceedings.[2]

## PRELIMINARY STATEMENT

1.      The Board's request that it be allowed to file a new round of partial summary judgment motions on some—but not all—of the remaining counts of the Revenue Bond Complaints[3] is the latest unprincipled shift in the Board's litigation strategy.

2.      More than a year ago, the Board argued, over Defendants' objection, that this Court should allow pre-discovery partial summary judgment motions regarding eight sets of claims, which the Board identified as the key "gating" issues that needed to be resolved in advance of disclosure statement and plan proceedings.  The Court accepted the Board's determination of the core issues that required early resolution, and gave the Board exactly what it asked for.  Now that the Court is close to being in a position to address those issues, the Board has suddenly reversed course and claims that it needs "a merits-based determination" on ten "additional gating issues" in

---

[2] Unless otherwise indicated, all ECF numbers referenced in this opposition refer to the docket in Case No. 17-BK-3283-LTS.

[3] "Revenue Bond Complaints" refers to the *Complaint Objecting to Defendants' Claims and Seeking Related Relief* filed in Adv. Proc. No. 20-00003, ECF No. 1; Adv. Proc. No. 20-00004, ECF No. 1; Adv. Proc. No. 20-00005, ECF No. 1.

each of the three revenue bond cases.  Its request is baseless and would achieve the opposite of the efficiency and quick merits determination the Board claims to seek.

3.     *First*, nothing has changed that would justify this late-stage reversal.  The Board's suggestion that if Defendants' *unsecured* claims "are allowed, the Oversight Board needs to adjust its proposed plan of adjustment" (Mot. ¶ 7) is baseless, as the current proposed plan of adjustment already includes a distribution on behalf of revenue bondholders' claims against the Commonwealth (albeit a profoundly inadequate one).  Even if the Board were right that a bondholder win on its unsecured claims would require overhauling the plan, it could have proposed to address such claims months ago after it had succeeded on the lift-stay motions, which addressed (at least preliminarily) whether Defendants have security or property interests in the revenue streams.  Instead, the Board remained silent for over six months.  Only after a new plan support agreement was signed and a revised deal with major stakeholders imminent did the Board shift strategy.  This is nothing more than a transparent attempt by the Board to jam Defendants and leverage its perceived advantage before this Court to pressure Ambac to accept pennies on the dollar.

4.     *Second*, the Board's approach would be inefficient and wasteful, because the Board wishes to address only some, not all, of the remaining claims.  For example, the Board omits from its proposal critical issues like the effect of Article VI, Section 8 of the Puerto Rico Constitution, and even which account is the Transfer Account (in the context of the CCDA bonds).  Rather than offering a proposal that will deal holistically with Defendants' remaining *claims*, the Board is trying to solicit advisory opinions on abstract legal *theories*.  Piecemeal merits rulings on abstract legal principles will not determine the basic dispute of whether bondholders have valid unsecured claims or not.  Only comprehensive litigation of the remaining issues will resolve those issues.

- 2 -

5.      *Third*, the Board has made no showing that the proposed motions are likely to succeed.  Nor could it.  While the parties have litigated whether or not Defendants have *secured* claims, the Board has offered no plausible theory that would allow the Court to hold that bondholders did not have *any* contractual or statutory rights that give rise even to unsecured claims.  Its far-fetched theories do not warrant expedited pre-discovery briefing.  These issues necessarily require factual development in any case, and cannot be decided as a pure matter of law.  Pre-discovery summary judgment motions are irregular and highly disfavored, because, as the Court's Rule 56(d) ruling illustrates, most claims in complex litigation involve factual underpinnings.  Several issues relevant to resolution of these claims—for example, whether the triggering conditions of Article VI, Section 8 are satisfied—would require factual development.

6.      For these reasons, the Board's motion should be denied outright and the Parties should conclude the existing briefing on the eight sets of claims that are already in progress.

7.      Alternatively, if the Court is inclined to entertain additional proceedings at this time, the Court should simply lift the stay entirely.  The Board should not be allowed to proceed only on its cherry-picked set of issues, while precluding discovery or counterclaims by Defendants in an effort to create a slanted and prejudicial playing field.  Instead, Defendants should be permitted to prosecute their motions to dismiss, file answers and counterclaims, and seek discovery.  If the Board wishes to bring another set of premature partial summary judgment motions, it could do so—but on a parallel track that allows Defendants to pursue their own motions and claims.  The Board offers no legal or practical basis to endorse its proposed one-sided litigation.  It is an untoward power play, plain and simple.  If lifted at all, the stay should be lifted in its entirety.

## BACKGROUND

8.    The Board's latest proposal is at least the sixth time the Board has tried to change the procedural framework in which substantive issues concerning revenue bonds may be litigated. Time and again, the Board has convinced this Court to endorse its newly devised strategy, and time and again it was proven deficient, wasting party and judicial resources at every turn.

9.    **Ambac Adversary Proceeding.**  Ambac filed separate adversary proceedings concerning the HTA revenues in 2017.  (Adv. Proc. Nos. 17-00156, 17-00159.)  At the time, the Board took the position that this Title III court did not have authority to resolve these substantive issues at all and should not do so.  (Adv. Proc. No. 17-00156, ECF No. 48, at 18; Adv. Proc. No. 17-00159, ECF No. 48 at 35.)  The First Circuit affirmed this Court's dismissal on that basis. (Adv. Proc. No. 17-00156, ECF No. 128; Adv. Proc. No. 17-00159, ECF No. 156.)

10.    **The Board's Original Adversary Proceedings.**  On May 20, 2019, reversing its prior position that the Title III Court should not decide substantive issues regarding the revenue bonds, the Board filed four separate adversary proceedings relating to HTA involving more than 100 defendants (*see* Adv. Proc. Nos. 19-00362 through 19-00365), as well as other motions involving the rights of PRIFA and CCDA bondholders.  The Court stayed these, and other proceedings, on July 24, 2019, and directed the parties to engage in mediation led by former Chief Bankruptcy Judge Barbara Houser (the "Mediation Team") to determine what procedural mechanism would be appropriate for future litigation (ECF No. 8244).

11.    **The Board's New Adversary Proceedings:  Motions to Dismiss.**  On November 29, 2019, the Mediation Team adopted a proposal (which the Board advocated for) under which the Board would file new Revenue Bond Complaints, apparently because the Board felt its own original complaints were unwieldy.  (*Interim Report and Recommendation of the Mediation Team*

(ECF No. 9365 at 4) (the "Interim Report").)  The Interim Report also included a recommendation

(reflecting the Board's wishes) that Defendants should answer or move to dismiss (and that the

Board would be allowed to move for judgment on the pleadings, if Defendants did not move to

dismiss).  (*Id.* at 6.)  Defendants filed motions to dismiss on February 27, 2020, in compliance

with the schedule in the Interim Report.  (*See* Adv. Proc. No. 20-00003, ECF No. 23; Adv. Proc.

No. 20-00004, ECF No. 22; Adv. Proc. No. 20-00005, ECF No. 34.)

   12. **The Board's New Adversary Proceedings:  Motions for Summary Judgment.**

Rather than sticking with the framework established in the Interim Report (which reflected the

Board's wishes), the Board subsequently shifted course for the fourth time and sought to file early

summary judgment motions on eight purported "gating" issues.  (ECF No. 11492 ¶¶ 11-15.)  At

the time, the Board said that it expected the lift stay motions could result in merits rulings and

described its summary judgment motions as a fallback option.  The Board said summary judgment

motions were necessary in case "the Lift Stay Motions [do] not resolve some or all of those issues

on the merits."  (ECF No. 11492 ¶ 12.)

   13. Defendants objected to the proposal to file early summary judgment motions,

arguing, among other things, that filing such motions before any discovery was inefficient and

unlikely to advance the litigation as compared with allowing discovery first and then having

summary judgment motions.  (*See Objection of Assured Guaranty Corp., Assured Guaranty

Municipal Corp., National Public Finance Guarantee Corporation, Ambac Assurance

Corporation and Financial Guaranty Insurance Company to Amended Report and

Recommendation of the Mediation Team (ECF No. 10756)* (ECF No. 11493) ¶¶ 25-29.)

   14. The Court allowed the Board's request for early summary judgment motions on

March 10, 2020, but cautioned that the Court would further consider Defendants' contentions that

the issues were factual issues requiring discovery in the context of Rule 56(d) objections.[4]  After

receiving extensive briefing on the eight summary judgment issues, the Court issued its Rule 56(d)

Order,[5] agreeing with Defendants that (contrary to the Board's assertion that the motions would

be limited to pure legal issues) the Board's summary judgment motions involved "factual issues"

on which discovery was "material."   The parties then met-and-conferred about next steps and

submitted a joint status report with proposals.  On February 5, 2021, the Court adopted the Board's

requested discovery timetable.  Joint Status Report[6] at 22; (*Order Setting Discovery Schedule* (ECF

No. 15809).)

15.     **Opposition to Merits Resolution in Context of Lift Stay Motion.**  While the

parties were briefing the summary judgment motions, Defendants' lift-stay motions were denied.

Defendants offered to stipulate that they would be bound by any adverse merits-based ruling the

First Circuit might make in the Lift Stay Appeals,[7] which could have obviated the need for further

---

[4] (*Final Case Management Order for Revenue Bonds* (the "Revenue Bond CMO") (ECF No. 12186);
*Transcript of Omnibus Hearing held on March 4, 2020* (ECF No. 12181) at 220 ("While the Court does
not yet have the benefit of full briefing on those issues, they appear potentially suited to adjudication without
extensive discovery, and the Oversight Board's counsel has represented that they will be cued on purely
legal grounds.  If any are cued up in a way that requires extensive discovery, they most likely will be put
on hold or on a different track.").)

[5] "Rule 56(d) Order" refers to *Order Regarding Discovery in Connection with Motions of the
Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant
to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims* (ECF No. 15656).

[6] "Joint Status Report" refers to *Joint Status Report of Ambac Assurance Corporation, Financial Guaranty
Insurance Company, Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public
Finance Guarantee Corporation, The Bank of New York Mellon, U.S. Bank Trust National Association,
And the Financial Oversight and Management Board for Puerto Rico, as Representative of the
Commonwealth of Puerto Rico Pursuant to the Court's January 20, 2021 Order* (Adv. Proc. No. 20-00003,
ECF No. 118; Adv. Proc. No. 20-00004, ECF No. 111; Adv. Proc. No. 20-00005, ECF No. 132).

[7] "Lift Stay Appeals" refers to Case Nos. 20-1930 and 20-1931 before the Court of Appeals for the First
Circuit.

proceedings on the summary judgment motions.[8]  But in (yet another) reversal from its prior position that the lift-stay motions could achieve merits rulings, the Board rejected Defendants' offer and demanded that the parties proceed with summary judgment motions rather than try to achieve a merits resolution in the context of the lift-stay motions (which could have been achieved quickly as the issues were already teed up for appellate review last year).  The Board then, shockingly, asked the First Circuit not to reach the merits at all,[9] a request the First Circuit granted, affirming the lift-stay motions on narrow procedural grounds without providing any guidance on the merits, which could have aided in the resolution of the pending summary judgment motions.

16.     This decision had the effect of largely nullifying the extensive efforts this Court had undertaken to provide a substantive decision on the lift-stay motions, because, as the First Circuit made clear, this Court "will not *and cannot*" rely on its lift-stay analysis in deciding any summary judgment motions in the adversary proceedings.  *See Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 989 F.3d 170, 182 (1st Cir. 2021) (emphasis added).  The Board's eleventh-hour shift in strategy before the First Circuit left the parties back at square one.  The First Circuit also made clear that the adversary proceedings would need to be decided on the basis of "a more complete record on which to make [a] final determination" including discovery.  *Id.*  Although the stay remains in place barring broad discovery, limited discovery is proceeding on a narrow set of issues identified by the Court in the 56(d) Order.

---

[8] (*See Joint Status Report with Respect to Further Proceedings Regarding the Revenue Bond Stay Relief Motions* (ECF No. 13601) ¶ 14.)

[9] Oral Argument at 22:30-24:05, *Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 989 F.3d 170 (1st Cir. 2021) (No. 20-1931) ("We think, as a matter of law and as our priority, the Court should simply determine that Judge Swain did not abuse her discretion because of what she wrote.  That allowing movements to start over in another forum would be against judicial economy, expeditious resolution, would interfere with this case . . . .").

17.     **Latest Proposal.**  Now pending before the Court is the Board's latest proposal, which the Board notified Defendants of on April 1, 2021.  On April 2, 2021, during a telephonic meet-and-confer, Defendants articulated a number of substantive objections to the Board regarding its proposal.  The Board did not meaningfully consider those objections or make any revisions to its proposal based on the parties' discussion.  Nor did the Board address in its brief any of the substantive objections that Defendants had articulated during the meet-and-confer process.

## ARGUMENT

**I.     THE COURT SHOULD DENY THE BOARD'S MOTION AND FIRST RESOLVE WHETHER DEFENDANTS HAVE PROPERTY RIGHTS OR SECURED CLAIMS.**

### A.     The Board Identifies No Changed Circumstances That Would Warrant Modifying or Reconsidering the Court's Existing Case Management Order.

18.     The Board's Motion asks the Court, in substance, to reconsider or modify the Revenue Bond CMO entered last year—but nothing has changed that would justify modifying or revisiting the Revenue Bond CMO at this time.

19.     While Defendants objected to the Court's decision to limit the revenue bond adversary proceedings to the eight issues that the Board selected last year, at this point, the parties have invested more than a year into resolving those issues—and are close to having them fully submitted to the Court for substantive resolution.  The Court should stay the course and finish what it started.

20.     The only reason the Board gives for seeking to inject ten new issues into each case is that an across-the-board victory by the Board on these new issues purportedly would leave Defendants "no basis on which to object" at the plan confirmation stage. (Mot. ¶ 13.) Eliminating or limiting potential confirmation objections that would not be fundamentally disruptive to the plan is not a basis to proceed with a second round of exceptional pre-discovery, partial summary

judgment motions.  Indeed, the draft plan already treats Defendants as unsecured creditors.  While that treatment clearly would need to be revised if Defendants are found to have allowed secured claims, the Board has not demonstrated how the treatment of Defendants under the plan necessarily would change if Defendants are found to have merely unsecured claims.

21.    Moreover, the notion that the Board can avoid a contested plan confirmation process by "zeroing out" revenue bond creditors is fanciful.  Even setting aside that the Board is very unlikely to succeed on all of these new claims, the Board does not even propose to seek judgment on all of the outstanding issues.  Even if the Board were to somehow prevail on the hand-picked theories it has chosen, Defendants would still have standing to object at the plan confirmation stage by virtue of other claims that the Board would leave unresolved.  The way to avoid a contested plan confirmation process is to meaningfully engage in good-faith negotiations and propose a plan that is fair and equitable to all creditors.

**B.    The Board's Piecemeal Approach Is Inefficient and Would Not Advance the Resolution of These Cases.**

22.    The Board's proposal for another round of pre-discovery, partial summary judgment motions is inefficient and a waste of resources because the Board does not actually propose to address all remaining claims.  While it purports to be seeking to address "substantially all" of Defendants' remaining claims, in fact, its proposal tries to address only slices of legal theories in an incomplete and piecemeal way that does not resolve any substantive disputes.

23.    Most notably, the Board suggests that the Court must rule on the "existence and magnitude of clawback claims" (Mot. ¶ 22) before plan confirmation—but the Board's proposal does not actually do this.  The Board omitted its "clawback" claims from the list of claims on which it will move for summary judgment.

24.     This is no oversight.  The Board clearly is concerned that *any* judicial ruling interpreting Article VI, Section 8 could hobble its plan of adjustment, because there is no way to square the Board's plan with any coherent reading of that provision.  Either the priorities of Article VI, Section 8 apply in PROMESA—in which case the plan would need to provide for payment of revenue bondholders before pensioners and other claims that have lower priority—or they do not, in which case the plan's preferential treatment of general obligation creditors is indefensible.

25.     In the hopes of avoiding any judicial analysis of Article VI, Section 8, the Board tries to somehow move forward with summary judgment motions while precluding Defendants from raising those issues.  But several of the claims the Board has included in its list necessarily require the Court to analyze Article VI, Section 8.  For example, the Board wants to disallow Defendants' "priority" claims,[10] but ignores that those claims are brought in part under Article VI, Section 8, so the Court would need to decide Defendants' claim to "priority" under that provision in order to rule on the "priority" claim that the Board has asserted.[11]

26.     Compounding the inefficiency of the Board's approach, the Board proposes to include a new motion for summary judgment regarding several claims on which the Board has *already* moved for summary judgment.  For example, preemption was one of eight sets of claims included in last year's summary judgment briefing, and it is included again in the new set.  The Board seems to envision that it would brief the same claims multiple times, on separate tracks— simply to make the point that the same legal theory precludes both Defendants' secured and

---

[10] *See* PRIFA Counts: 25, 77, 101;  CCDA Counts: 19, 61, 80; HTA Counts: 19, 111, 176, 197.

[11] Other claims on which the Board seeks to move also require resolution of the scope of Article VI, Section 8.  (*See* PRIFA Counts: 12, 13, 14, 19, 64, 65, 66, 71, 89, 90, 91, 96; CCDA Counts: 6, 7, 12, 48, 49, 54, 67, 68, 73; HTA Counts: 6, 7, 12, 98, 99, 104, 163, 164, 169, 184, 185, 190.)

unsecured claims.  This illustrates how the Board is dealing in a piecemeal manner with legal theories, rather than the substance of Defendants' claims.

27.     There are other issues the Board leaves on the table and would not address in its proposed framework.  For example, in the CCDA Adversary Proceeding, the Board is no longer seeking summary judgment on which bank account is the Transfer Account, a key issue the Court must resolve before it can determine the extent of bondholders' secured claims, because the Board concedes there are "triable" disputes of material fact concerning the identity of the Transfer Account.  (*See* Transcript for Hearing on Motions, dated September 23, 2020 (ECF No. 14416), comments of C. Kass, at 63:22 – 64:1 ("[W]e agree that the identity of the transfer account is a triable issue.  We are, therefore, not seeking summary judgment disallowing a claimed security interest as to funds that had been deposited into what is ultimately determined to be the transfer account.").)  That issue is addressed nowhere in the Board's new set of summary judgment issues.  Even if the Board were granted summary judgment on every CCDA-related count that it seeks leave to move on, it would not establish that the CCDA Defendants do not have a secured claim to the hotel taxes (let alone establish that they do not have an unsecured claim).

28.     Fundamentally, the Board is asking the Court to adopt a framework under which the Board could present slices of legal theories to the Court, in a selective and incomplete way, in the hopes that the Court might issue advisory opinions endorsing abstract legal propositions the Board favors—without actually resolving concrete dispute between the parties.  Rather than deciding, concretely, the size of CCDA bondholders' claim, the Board wants the Court to rule on abstract hypotheticals that certain *legal theories* cannot be the basis of an unsecured claim— without clearly deciding whether bondholders have an unsecured claim, and if so, in what amount.

29.     Addressing abstract legal theories in this way is both inefficient and beyond the power of Article III courts, which can only resolve concrete cases or controversies, not opine on abstract legal theories.  *E.g.*, *Carney v. Adams*, 141 S. Ct. 493, 498 (2020).  Without a ruling on *all* of the legal theories that could give Defendants allowable claims, the Board would not accomplish its stated goal of finally resolving Defendants' claims.

### C.     Contrary to the Board's Contention, the Ten New Issues Identified Cannot Be Resolved as a Matter of Law Without Discovery.

30.     The real goal of the Board's proposal is to undermine basic due process protections by continuing to deny Defendants discovery (and preclude Defendants from pursuing their own motions to dismiss and filing counterclaims).

31.     Motions seeking summary judgment prior to discovery are disfavored,[12] and with good reason.  As this Court's Rule 56(d) Order illustrates, most of the time, summary judgment motions present at least some factual issues that require discovery—and trying to decide such motions without first allowing for discovery into the claims involved can be a recipe for delay, when the Court later finds that discovery is needed.  (Rule 56(d) Order at 5-6); *see also Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994).

32.     There is no reason to think that the Board is likely to succeed on all of its claims. While the Court has identified issues regarding Defendants' *property* interests, nothing in this Court's prior analysis suggested that the statutes and bond documents do not at least give the

---

[12] *See, e.g.*, *Watkins v. Monroe*, 2019 WL 19869864, at *1 (E.D. Tex. Mar. 27, 2019) (courts "must not grant a summary judgment upon motion . . . before the service of an answer, unless in the situation presented, it appears to a certainty that no answer which the adverse party might properly serve could present a genuine issue of fact"); *Sanders v. York*, 2008 WL 1925232, at *4 (E.D. Cal. Apr. 30, 2008) ("The court will not allow defendants another 'bite at the apple' to file a second summary judgment motion . . . as it would waste court resources and delay resolution of this action.").  At the pre-discovery stage, the threshold to deem a fact material is especially low.  *See MAZ Partners LP v. PHC, Inc. (In re PHC, Inc. S'holder Litig.)*, 762 F.3d 138, 145 (1st Cir. 2014).

bondholders contractual and statutory rights. Indeed, the First Circuit appears to have interpreted this Court's decision to mean that the only issue in dispute was whether Defendants have "constitutionally protected *property* interests derived from their statutory and contractual rights," not *whether* Defendants have statutory and contractual rights at all. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 989 F.3d at 179 (quoting *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 485 F. Supp. 3d 351, 362 (D.P.R. 2020)). Bondholders plainly do have contractual and statutory rights under the Commonwealth's statutory non-impairment covenants. *See* 3 L.P.R.A. § 1913; 13 L.P.R.A. §§ 2271v, 31751(a)(1)(D); 9 L.P.R.A. §§ 2019, 2021, 5681. The Board has articulated no plausible theory on which such claims could be defeated.

33.    Moreover, many of the issues on which the Board seeks judgment require factual inquiries and thus cannot be resolved as a pure matter of law without discovery. As noted above, the Board's "priority" claim necessarily implicates Article VI, Section 8—which this Court has already held involves disputed factual issues that cannot be resolved on the existing record.[13] As Defendants have indicated previously,[14] before addressing Article VI, Section 8, Defendants will need discovery into whether the requirements of that provision were properly triggered, *i.e.*, whether "the available revenues including surplus for any fiscal year [were] insufficient to meet the appropriations made for that year." *See* P.R. Const., art. VI, § 8. Discovery into that issue has not been provided to Defendants in connection with the existing Rule 56(d) Order.

---

[13] (*See, e.g.*, *Memorandum Order Regarding CCDA Revenue Bond Stay Relief Motion* (ECF No. 14187) at 4 ("Movants argue that the conditions precedent under Article VI, Section 8, have never been triggered. However, because the CCDA Movants' argument rests at least in part on disputed factual contentions, the Court cannot determine at this time whether the CCDA Movants have met their burden of showing lack of equity, or whether the Commonwealth has met its burden of showing that the Alleged Transfer Account Monies are necessary for an effective reorganization.").)

[14] (*See* Adv. Proc. No. 20-00003, ECF No. 82 ¶¶ 39-41; Adv. Proc. No. 20-00004, ECF No. 80 ¶¶ 41-43; Adv. Proc. No. 20-00005, ECF No. 97 ¶¶ 63-67.)

34.     The Board's "preemption" claim similarly requires discovery.[15]  While Defendants submit that the Board's preemption theory is wrong as a matter of law, the Board itself has injected disputed factual assertions—through a factual declaration—to support its preemption claim.[16]  The Board claims that there are dozens of statutes that purport to "appropriate" Commonwealth revenues and that, if these statutes were not preempted, there would be no way to restructure the Commonwealth's debt.[17]   Bondholders are entitled to dispute these factual assertions through discovery regarding (i) which of these statutes have non-impairment covenants that give rise to statutory, contractual, or property rights in third parties, as opposed to being mere gratuitous appropriations that the Commonwealth was free to reverse at any time, (ii) which of these statutes involve special revenues as opposed to general revenues of the Commonwealth, which have a different status in bankruptcy, and (iii) what resources are available to the Commonwealth, and whether those resources are sufficient to allow a restructuring.  Thus, for the Court to even entertain the Board's preemption theory, it would have to authorize discovery and allow Defendants to test the Board's factual assertions.

35.     The Court should not again wait until Rule 56(d) declarations are filed to consider the need for additional discovery.  Allowing serial, summary judgment motions would simply waste judicial and party resources and delay a substantive resolution.  Discovery plainly will be needed on several of these issues, beyond what was provided under the existing Rule 56(d) Order.

---

[15] *See* PRIFA Counts 11, 63, 87; CCDA Counts 5, 47, 66; HTA Counts 5, 97, 162, 183.

[16] (Adv. Proc. No. 20-00003, ECF No. 48 ¶ 6; Adv. Proc. No. 20-00004, ECF No. 44 ¶ 6; Adv. Proc. No. 20-00005, ECF No. 58 ¶¶ 4, 6.)

[17] (Adv. Proc. No. 20-00003, ECF No. 44 n.15; Adv. Proc. No. 20-00004, ECF No. 41 n.6; Adv. Proc. No. 20-00005, ECF No. 56 n.9.)

- 14 -

## II.   ALTERNATIVELY, IF THE COURT IS INCLINED TO ALLOW ADDITIONAL PROCEEDINGS, IT SHOULD LIFT THE STAY ENTIRELY TO ALLOW COMPREHENSIVE LITIGATION RATHER THAN WASTING TIME ON A SUBSET OF CLAIMS.

36.     For the reasons above, Defendants believe the Board's Motion should be denied, and at this stage, the parties should complete the briefing on the eight sets of issues.  If the Court is inclined to allow any further proceedings at this time, however, it should not pick and choose what relief the parties are allowed to seek, as the Board proposes.  Instead, the Court should just lift the stay of the revenue bond adversary proceedings entirely, direct the parties to meet-and-confer under Rule 26(f) regarding a proposed scheduling order, and then set a date for a Rule 16 scheduling conference.  That could include a framework for efficiently moving forward not just on a subset of claims the Board identifies, but definitively resolving all open issues.  This approach would protect Defendants' due process rights, and fundamental fairness, by allowing motions to dismiss, answers, counterclaims, and plenary discovery to go forward.[18]

37.     While Defendants believe that early summary judgment motions serve no purpose and simply waste resources, if the Court is so inclined, it could include in the Rule 16 scheduling order an opportunity for the Board to file a new set of summary judgment motions.  But such motions should not come at the expense of Defendants' due process rights to pursue their own motions to dismiss and counterclaims, and to seek discovery.  The Board's summary judgment motions should move forward in parallel with a normal Rule 16 litigation schedule, with simultaneous discovery and progress on motions to dismiss, followed by answers and counterclaims.

---

[18] If the Court is inclined to pursue this path, and would like an affirmative motion requesting this relief, Defendants can promptly file an urgent motion seeking to vacate the stay of the revenue bond adversary proceedings, or alternatively meet-and-confer with the Board and submit a Rule 26(f) report with specific recommendations for discovery and other substantive litigation.

38.     At an absolute minimum, the Court should make clear that, if the Board is filing new summary judgment motions, those should be filed only after the discovery allowed by the Rule 56(d) Order is completed—and the new motions should reflect the Board's position on all claims it wishes to move on (including those that were subject to the Rule 56(d) Order).  As noted above, it would be inefficient for the parties to submit multiple different briefs, on parallel tracks, addressing the same issue (for example, having briefed "preemption" in the context of secured claims, then briefing it again in the context of unsecured claims).  If the Board is allowed to pursue additional summary judgment claims at this time, the Court should require it to file a comprehensive articulation of its position on all claims where it is seeking summary judgment.

39.     At a minimum, the Court should allow Defendants to submit a comprehensive position on all claims on which the Board is seeking summary judgment, so that Defendants can present one consolidated set of arguments rather than being forced to brief the same legal points multiple times on different tracks, which would result in a disorderly and confusing presentation to the Court.

## **CONCLUSION**

40.     For the foregoing reasons, Defendants respectfully request that the Court deny the Motion.

Dated:   April 13, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No.
219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
Dennis F. Dunne (admitted *pro hac vice*)
Atara Miller (admitted *pro hac vice*)
Grant R. Mainland (admitted *pro hac vice*)
John J. Hughes, III (admitted *pro hac vice*)
Jonathan Ohring (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile:  (212) 530-5219
Email: ddunne@milbank.com
amiller@milbank.com
gmainland@milbank.com
jhughes2@milbank.com
johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

- 17 -

**RIVERA, TULLA AND FERRER, LLC**

By:  /s/ *Eric A. Tulla*_____
      Eric A. Tulla
      (USDC-DPR No. 118313)
      Email: etulla@ riveratulla.com
      Iris J. Cabrera-Gómez
      (USDC-DPR No. 221101)
      Email: icabrera@ riveratulla.com
      Rivera Tulla & Ferrer Building
      50 Quisqueya Street
      San Juan, PR 00917-1212
      Telephone: (787) 753-0438
      Facsimile: (787) 767-5784

**SEPULVADO, MALDONADO & COURET**

By: /s/ *Albéniz Couret Fuentes*_____
      Albéniz Couret Fuentes
      (USDC-PR No. 222207)
      304 Ponce de León Ave. Suite 990
      San Juan, PR 00918
      Telephone: (787) 765-5656
      Facsimile: (787) 294-0073
      Email: acouret@smclawpr.com

**HOGAN LOVELLS US LLP**

By:  /s/ *Ronald J. Silverman*_____
      Ronald J. Silverman, Esq.
      Michael C. Hefter, Esq.
      390 Madison Avenue
      New York, NY 10017
      Telephone: (212) 918-3000
      Facsimile: (212) 918-3100
      ronald.silverman@hoganlovells.com
      michael.hefter@hoganlovells.com

***Attorneys for U.S. Bank Trust National Association, in its Capacity as Trustee to PRIFA Bondholders***

**REED SMITH LLP**

By: /s/ *Jared S. Roach*_____
      Luke A. Sizemore (admitted *pro hac vice*)
      Jared S. Roach (admitted *pro hac vice*)
      225 Fifth Avenue, Suite 1200
      Pittsburgh, PA 15222
      Telephone: (412) 288-3131
      Facsimile: (412) 288-3063
      Email: lsizemore@reedsmith.com
         jroach@reedsmith.com

***Attorneys for The Bank of New York Mellon, in its Capacity as Trustee to CCDA Bondholders***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email: rcamara@ferraiuoli.com
