# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

```
----------------------------------------------------------------  x
                                                                  :
In re: :                                                          :
                                                                  :   PROMESA
THE FINANCIAL OVERSIGHT AND                                       :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                                 :
                                                                  :   Case No. 17-BK-3283 (LTS)
             as representative of                                 :
                                                                  :   (Jointly Administered)
THE COMMONWEALTH OF PUERTO RICO, et al.,                          :
                                                                  :
             Debtors.¹                                            :
----------------------------------------------------------------  x
                                                                  :
In re:                                                            :
                                                                  :   PROMESA
THE FINANCIAL OVERSIGHT AND                                       :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                                 :
                                                                  :
             as representative of                                 :   Adv. Pro. No. 20-00003 (LTS)
                                                                  :
THE COMMONWEALTH OF PUERTO RICO,                                  :
                                                                  :
             Plaintiff,                                           :
                                                                  :
        v.                                                        :
                                                                  :
AMBAC ASSURANCE CORPORATION, et al.,                              :
                                                                  :
             Defendants.                                          :
                                                                  :
----------------------------------------------------------------  x
```

---

¹   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | |
| | : | PROMESA |
| THE FINANCIAL OVERSIGHT AND | : | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | |
| | : | |
| as representative of | : | Adv. Pro. No. 20-00004 (LTS) |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| ---------------------------------------------------------------- | x | |
| | : | |
| In re: | : | |
| | : | PROMESA |
| THE FINANCIAL OVERSIGHT AND | : | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | |
| | : | |
| as representative of | : | Adv. Pro. No. 20-00005 (LTS) |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| ---------------------------------------------------------------- | x | |

**LIMITED OBJECTION OF PSA CREDITORS TO THE MOTION OF THE
COMMONWEALTH OF PUERTO RICO, BY AND THROUGH THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD, FOR STAY RELIEF TO PROSECUTE
<u>FURTHER MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ...................................................................................................5

I.      The Plan Support Agreements ....................................................5

II.     The Revenue Bond Adversary Proceedings And Case Management Order........................8

ARGUMENT .......................................................................................................11

I.      The Court Should Maintain The Litigation Stay On The Issue Of Creditor
Priorities. ...........................................................................................11

II.     If The Court Addresses The Issue, It Should Conclude That PROMESA Does Not
Preempt Creditor Priorities ...............................................................13

RESERVATION OF RIGHTS ...............................................................................18

CONCLUSION....................................................................................................18

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) ............................................................................... 13

*Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico v. Fed. Deposit Ins. Corp.*,
   681 F. Supp. 981 (D.P.R. 1988) ........................................................... 13

*Dalton v. Little Rock Family Planning Servs.*,
   516 U.S. 474 (1996) ............................................................................... 14

*Fin. Oversight & Mgmt. Bd. for P.R. v. Andalusian Global Designated Activity Co.*,
   948 F.3d 457 (1st Cir. 2020) ................................................................. 17

*Freightliner Corp. v. Myrick*,
   514 U.S. 280 (1995) ............................................................................... 14

*Hawaiian Airlines v. Norris*,
   512 U.S. 246 (1994) ............................................................................... 14

*Jones v. Rath Packing Co.*,
   430 U.S. 519 (1977) ............................................................................... 14

*In re Kaiser Aluminum Corp.*,
   339 B.R. 91 (D. Del. 2006) ................................................................... 11

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470, 484-85 (1996) ................................................................ 17

*Regency Fin. Co. v. Trichilo (In re Trichilo)*,
   540 B.R. 547 (Bankr. M.D. Pa. 2015) ................................................ 13

*Shell Oil Co. v. Noel*,
   608 F.2d 208 (1st Cir. 1979) ................................................................. 13

*Sony BMG Music Entm't v. Tenenbaum*,
   660 F.3d 487 (1st Cir. 2011) ................................................................. 13

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ............................................................................... 14

**Statutory Authorities**

11 U.S.C. § 503(b) ....................................................................................... 15

11 U.S.C. § 507(a)(2)................................................................................................................ 15

**Additional Authorities**

Fed. R. Bankr. P. 7024 ............................................................................................................. 14

Fed. R. Civ. P. 24 ..................................................................................................................... 14

*Financial Oversight and Management Board for Puerto Rico PSA Statement*, Feb. 23, 2021,
    https://oversightboard.pr.gov/documents/................................................................................ 2

To the Honorable United States District Court Judge Laura Taylor Swain:

The PSA Creditors[2] hereby file this limited objection (the "Limited Objection") to the

Motion of the Commonwealth of Puerto Rico (the "Commonwealth"), by and through the

Oversight Board, pursuant to sections 105(a) and 502 of the Bankruptcy Code, made applicable to

these cases pursuant to PROMESA section 301(a), for entry of an order modifying the CMO (as

defined herein) to lift the litigation stay currently imposed on specific counts of the Revenue Bond

Complaints filed in each of the respective Revenue Bond Adversary Proceedings, and granting the

Commonwealth leave to file partial summary judgment motions with respect to those counts (ECF

No. 16326) (the "Lift Stay Motion"),[3] and in support of the Limited Objection, the PSA Creditors

respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Under the guidance of the Oversight Board, the Commonwealth of Puerto Rico has

lingered in bankruptcy for nearly four years.  During this time, the Title III cases have been

consumed with costly, protracted litigation over various contentious issues, including the priority

status of holders of Commonwealth-issued or guaranteed bonds ("Constitutional Debt") and the

---

[2]   The PSA Creditors are, collectively, the Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debt Group"), Ad Hoc Group of General Obligation Bondholders (the "GO Group"), Lawful Constitutional Debt Coalition (the "LCDC"), and QTCB Noteholder Group (the "QTCB Group"). The members of the Constitutional Debt Group and their respective holdings are set forth in the *Ninth Supplemental Verified Statement of the Ad Hoc Group of Constitutional Debtholders Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 15993).  The members of the GO Group and their respective holdings are set forth in the *Tenth Supplemental Verified Statement of the Ad Hoc Group of General Obligation Bondholders Pursuant to Bankruptcy Rule 2019* (ECF No. 16034).  The members of the LCDC and their respective holdings are set forth in the *Tenth Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* (ECF No. 15892). The members of the QTCB Group and their respective holdings are set forth in the *Eighth Supplemental Verified Statement of the QTCB Noteholder Group Pursuant Bankruptcy Rule 2019* (ECF No. 15968).  The PSA Creditors are parties to that certain plan support agreement, dated February 22, 2021 (the "the 2021 PSA"), with the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative, among others, of the Commonwealth of Puerto Rico and the PBA in their respective Title III cases.

[3]   The Lift Stay Motion was also filed in Adversary Proceeding Nos. 20-00003 (ECF No. 142), 20-00004 (ECF No. 133), and 20-00005 (ECF No. 154).  Capitalized terms used but not defined herein shall have the meanings set forth in the Lift Stay Motion and the Oversight Board' memorandum of law filed in support of its Lift Stay Motion (ECF No. 16327) (the "MOL").

treatment to be accorded such debt under a Title III plan of adjustment for the Commonwealth.  In an effort to end the overhang and cost of litigation, the PSA Creditors have engaged in lengthy, hard-fought negotiations, overseen by the Court-appointed Mediation Team, with the Oversight Board.  Over the last two years, these efforts have produced three separate plan support agreements with the Oversight Board, all of which were supported by the LCDC and the QTCB Group and the last two of which have been supported by all of the PSA Creditors.  Each iteration of the plan support agreement has garnered incremental creditor support with the 2021 PSA supported by holders of at least 70% of the outstanding Constitutional Debt.[4]  Under the 2021 PSA, the parties thereto agreed to the terms of a comprehensive compromise and settlement of all litigation concerning the validity, priority, and secured status of the Constitutional Debt, as well as an agreement by the PSA Creditors as to the treatment of different vintages of Constitutional Debt.  On March 8, 2021, the Oversight Board filed the proposed Amended Commonwealth Plan, incorporating the terms of the 2021 PSA, and corresponding proposed disclosure statement (ECF Nos. 15976, 15977).

2.      Now, through the Lift Stay Motion, the Oversight Board seeks to move forward with litigation in the Revenue Bond Adversary Proceedings against certain holders and insurers of revenue bonds issued by instrumentalities of the Commonwealth (the "Clawback Entities") who have filed proofs of claims against the Commonwealth.  The Revenue Bond Adversary Proceedings have been subject to a stay of litigation that the Court imposed while the parties sought to resolve or narrow disputes through the mediation process.  By the Lift Stay Motion, the Oversight Board seeks to modify the litigation stay in order to permit it to seek summary judgment

---

[4]      *See Financial Oversight and Management Board for Puerto Rico PSA Statement*, Feb. 23, 2021, https://oversightboard.pr.gov/documents/.

on certain counts of the Revenue Bond Adversary Proceedings.

3.     The Oversight Board states in the Lift Stay Motion that the PSA Creditors support the relief requested, but that is only partially correct.  To the extent that the Oversight Board seeks to disallow proofs of claims asserted against the Commonwealth because Defendants have no such claims, the PSA Creditors do not object to the Lift Stay Motion.  Similarly, the PSA Creditors do not oppose the Lift Stay Motion to the extent the Oversight Board seeks to litigate issues that are not addressed in the Amended Commonwealth Plan.  The PSA Creditors do object, however, to any effort by the Oversight Board to litigate issues that are proposed to be compromised and settled under the Amended Commonwealth Plan, including the impact of PROMESA on relative creditor priorities governed by applicable Puerto Rico law.

4.     Embedded in the Amended Commonwealth Plan are numerous, complex, interrelated compromises and settlements regarding creditor rights, defenses, and claims.  Among such compromises and settlements are the entitlements of holders of Constitutional Debt to be paid in full from all "available resources" of the Commonwealth on a priority basis under the Puerto Rico Constitution and statutory law (*i.e.*, the right of holders of Constitutional Debt to be paid in full before other expenses of the Commonwealth are paid).  PROMESA does not preempt state law priorities, but rather balances several competing interests of a financially stressed territory under Title II's fiscal plan requirements, which must be adhered to by the Oversight Board.  Except to the extent such requirements may impair a creditor's entitlements, Puerto Rico law must be respected.  And the respect for relative priorities among creditors is explicit and is carried into Title III as part of the requirements for confirming any plan of adjustment.  The PSA Creditors have not waived such entitlements and, in the event the Amended Commonwealth Plan is not confirmed, holders of Constitutional Debt would assert their right to full payment prior to expenses

3

of the Commonwealth that enjoy no similar priority.

5.      By seeking to litigate issues that are central to the compromise, the Oversight Board takes action that is inconsistent with the heavily negotiated standstill contained in the PSA.  The PSA Creditors therefore file this Limited Objection to address only the Oversight Board's request to lift the litigation stay in order to seek summary judgment on its argument that PROMESA preempts creditor priorities that are provided under the Puerto Rico Constitution and statutes.[5] This issue should be addressed in the context of the plan confirmation process, including as part of the approval process for settlements that are incorporated within the Amended Commonwealth Plan.  Litigating this issue now, outside of the plan confirmation process, would be an inefficient use of limited judicial resources and patently inconsistent with the PSA Creditors' agreement to stand still and not press the priority of Constitutional Debt.

6.      Accordingly, the PSA Creditors respectfully submit that the Court should decline to modify the litigation stay in order to address the Subject Counts at this time.  In the Revenue Bond Complaints, the Oversight Board has asserted several alternative grounds for seeking to disallow *in their entirety* the proofs of claims that Defendants have asserted against the Commonwealth.  Consequently, resolving the role of creditor priorities under PROMESA through the Revenue Bond Adversary Proceedings (which has potentially broader implications) is not necessary to the narrower question of whether the Defendants have any claims against the

---

[5]   The counts for which the PSA Creditors respectfully request that the Court maintain the litigation stay are the following counts: (A) Adversary Proceeding No. 20-00003 (PRIFA): Counts 25, 51, 77, 101; (B) Adversary Proceeding No. 20-00004 (CCDA): Counts 19, 40, 61, and 80; and (C) Adversary Proceeding No. 20-00005 (HTA): Counts 19, 42, 65, 88, 111, 133, 155, 176 and 197 (collectively, the "Subject Counts").  The Subject Counts rely upon the Oversight Board's incorrect assertion that PROMESA preempts creditor priorities provided under the Puerto Rico Constitution and statutes—an issue compromised under the Amended Commonwealth Plan.  This Limited Objection addresses why the Court should decline to modify the litigation stay to hear this argument and also explains why the Oversight Board's position is wrong.  The PSA Creditors do not oppose (and therefore do not address) the remainder of the arguments that the Oversight Board makes in seeking to disallow the Defendants' claims against the Commonwealth.

Commonwealth with respect to the Relevant Revenues.  Indeed, any decision regarding the role of Commonwealth creditor priorities under PROMESA before a determination of whether the Defendants are even creditors of the Commonwealth would amount to an advisory opinion.

7.     If the Court nonetheless decides to permit the Oversight Board to prosecute the Subject Counts in the Revenue Bond Adversary Proceedings, the PSA Creditors intend to move to intervene in order to protect their pecuniary interests and demonstrate to the Court why it should reject the Oversight Board's preemption argument on the merits.  Simply put, PROMESA does not preempt the priority afforded the Commonwealth's creditors; rather, it expressly *incorporates* priorities established by the Puerto Rico Constitution, which must therefore be given effect in any plan of adjustment for the Commonwealth, unless compromised by the classes of Constitutional Debt.  The Oversight Board and the PSA Creditors agreed to pursue exactly such a compromise through the Amended Commonwealth Plan.

## **BACKGROUND**

### I.     THE PLAN SUPPORT AGREEMENTS

9.     On February 9, 2020, the Oversight Board announced that it had entered into a plan support agreement with the PSA Creditors (the "2020 PSA").  The 2020 PSA provided a framework for a confirmable plan of adjustment that would settle all litigation concerning the Constitutional Debt as well as an agreement by the parties to the 2020 PSA to the proposed treatment of different vintages of Constitutional Debt.  The 2020 PSA was favorably received by the market and garnered support from holders of approximately $10.7 billion of Constitutional Debt claims that became parties to it, representing approximately 58% of outstanding Constitutional Debt claims.  On February 28, 2020, the Oversight Board filed a plan of adjustment (ECF No. 11946) (the "2020 Commonwealth Plan"), incorporating the terms of the 2020 PSA, and an accompanying disclosure statement (the "2020 Disclosure Statement") (ECF No. 11947).

10.     On February 28, 2020, the Oversight Board also filed a motion seeking approval of the 2020 Disclosure Statement, approval of solicitation procedures with respect to the 2020 Commonwealth Plan, and setting of related deadlines (ECF No. 11950) (the "Plan Solicitation Motion").  The Plan Solicitation Motion requested a hearing for the Court to consider approval of the 2020 Disclosure Statement on June 3, 2020 and confirmation of the 2020 Commonwealth Plan in October 2020.  In order to provide the Debtors with the opportunity to confirm the 2020 Commonwealth Plan without the overhang of premature plan-related litigation, the Court entered an Order maintaining the stay of litigation concerning the validity, priority, and secured status of the Constitutional Debt pending confirmation of the 2020 Commonwealth Plan.[6]  In the Stay Order, the Court concluded that the stay of plan-related issues "serves the interests of conservation of resources and judicial efficiency, as it will help to avoid the unnecessary litigation of issues that will be resolved if the Amended Plan is ultimately confirmed."  Stay Order at ¶ 3.

11.     In March 2020, the Oversight Board sought to adjourn the hearing on the 2020 Disclosure Statement and related deadlines *sine die*, stating that it needed to assess the impact on Puerto Rico of the global COVID-19 pandemic.[7]  Thereafter, the Oversight Board certified a new fiscal plan for the Commonwealth that, among other things, dramatically reduced projected revenues, not only over the near-term due to the pandemic but also over the full 30-year projection period.  Subsequently, the Oversight Board decided to renegotiate the terms of the 2020 PSA and 2020 Commonwealth Plan to address the Commonwealth's purported new economic reality. While the PSA Creditors disagreed with the Oversight Board's analysis as to the affordability of

---

[6]  *See Final Order Regarding (A) Stay Period and (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* (the "Stay Order") (ECF. No. 12189).

[7]  *Urgent Motion to Adjourn Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement and Related Deadlines* (ECF No. 12485).

the 2020 Commonwealth Plan, the PSA Creditors nonetheless tried in good faith to work within the Oversight Board's new fiscal plan, and engaged in months-long negotiations, under the supervision of the Mediation Team, to find a way forward through potential modifications to the 2020 Commonwealth Plan. Ultimately, those efforts proved successful, culminating in the 2021 PSA and Amended Commonwealth Plan. The 2021 PSA enjoyed even more support in the marketplace than the 2020 PSA with at least 70% of holders of Constitutional Debt joining the 2021 PSA, including major monoline insurers and revenue bondholders Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation.

12.     While the 2021 PSA provided for a change in the economics for holders of Constitutional Debt from what the 2020 PSA provided, it continued to establish a framework for a confirmable plan of adjustment that would settle all litigation relating to Constitutional Debt, including challenges that had been made to the validity, priority, and secured status of the Constitutional Debt. Towards that end, the Amended Commonwealth Plan continues to incorporate a proposed global compromise and settlement concerning the allowance, treatment, and priority status of Constitutional Debt, including by allowing the Commonwealth to use the Relevant Revenues to pay the claims of holders of Constitutional Debt.

13.     Cognizant that issues raised in the Revenue Bond Complaints could affect their rights (including rights proposed to be settled under the Plan), the PSA Creditors negotiated for and received a provision in the PSA designed to protect the integrity of the 2021 PSA and the interlocking settlements proposed therein and incorporated into the Amended Commonwealth Plan. Thus, under section 4.1(h) of the 2021 PSA, the Oversight Board is required to consult with the PSA Creditors, "prior to taking any action challenging the priority of recovery and the preemption of applicable laws based upon the enactment of PROMESA and the effect thereof upon

7

GO Bond Claims and CW Guarantee Bond Claims." *See* 2021 PSA § 4.1(h).  Despite this covenant, the Oversight Board did not consult with representatives of the PSA Creditors before filing its Lift Stay Motion seeking to litigate the preemption of creditor priorities.  Indeed, the Oversight Board's representation that the PSA Creditors support the relief requested in the Motion is wrong and the PSA Creditors have directed the Oversight Board to correct this representation in further pleadings to be filed on the Lift Stay Motion.

## II.   THE REVENUE BOND ADVERSARY PROCEEDINGS AND CASE MANAGEMENT ORDER

14.   The Revenue Bond Adversary Proceedings were commenced on January 16, 2020 when the Oversight Board filed the Revenue Bond Complaints.  The Revenue Bond Complaints contain hundreds of separate counts but essentially assert identical contentions against each of the Defendants.  The counts can be generally categorized as follows: (i) the Defendants lack standing in the Commonwealth case, (ii) the Defendants are not creditors of the Commonwealth because (a) the Commonwealth was entitled to keep the Relevant Revenues under applicable Puerto Rico law, and (b) any entitlement the Defendants may have in the Relevant Revenues is preempted under PROMESA, (iii) the Defendants have no property or security interest, whether consensual or otherwise, in or against the Relevant Revenues, (iv) the Defendants do not have any priority or administrative claims against the Commonwealth, and (v) the Defendants have no claims under the U.S. or Puerto Rico Constitutions against the Commonwealth.

15.   On March 10, 2020, the Court entered the *Final Case Management Order For Revenue Bonds* (the "CMO") (ECF No. 40 in Adv. Pro. 20-00005).  Pursuant to the CMO, the Court permitted parties to Revenue Bond Adversary Proceeding to file summary judgment motions in connection with a limited subset of the counts asserted in each Revenue Bond Adversary Proceeding.  The counts to be litigated through summary judgment practice were limited to claims arising out of the Commonwealth's retention of the Relevant Revenues (both retroactively and

prospectively), claims for impairment of contract under the U.S. and Puerto Rico Constitutions, claims for unlawful transfers under section 407 of PROMESA, and claims asserting any form of property interest against the Commonwealth.  The Court explained that it "does not intend to entertain at this stage summary judgment motion practice going beyond these boundaries nor summary judgment motion practice that is shown to have material disputed factual underpinnings." CMO at ¶ 2.  Excluded from the counts to be litigated were the Oversight Board's counts that seek to disallow the Defendants' alleged priority claim based on PROMESA's preemption of creditor priorities.

16.     On April 8, 2020, the Court entered the *Joint Stipulation to Modify Certain Deadlines in Connection With Lift Stay and Related Motions and Revenue Bond Complaints Set Forth in The Court's March 26, 2020 Order* (the "Amended Scheduling Order") (ECF No. 50 in Adv. Pro. 20-00005).  While it adjusted briefing deadlines, the Amended Scheduling Order did not alter the scope of the summary judgment motions, which was set forth in the CMO.  *See* Amended Scheduling Order at n.4.  Since neither the CMO nor the Amended Scheduling Order implicated the preemption of creditor priorities, the PSA Creditors did not seek to intervene in the litigation at that point.[8]

---

[8]     On or around the same date that the Oversight Board filed the Revenue Bond Complaints, certain Defendants filed lift stay motions seeking, *inter alia*, relief from the automatic stay to pursue claims against the Commonwealth concerning their rights to the Relevant Revenues.  *See e.g., Motion of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corporation, National Public Finance Guarantee Corporation, and Financial Guaranty Insurance Company for Relief from the Automatic Stay, or, in the Alternative, Adequate Protection* (ECF No. 10102).  In response to these motions, the Oversight Board argued, among other things, that PROMESA preempted the priority afforded Constitutional Debt.  The Court scheduled a hearing on these motions for June 4, 2020.  In connection with the Court's procedures order for the June 4, 2020 hearing, the LCDC filed an informative motion indicating that it intended to be heard on the Defendants' lift stay motions to address this argument. *See* ECF No. 13299.  However, prior to the hearing, and on the Court's order (*see* ECF No. 13306), the LCDC met and conferred with the Oversight Board concerning its PROMESA preemption of creditor priorities argument and the Oversight Board agreed it would "not be seeking any rulings regarding preemption of the constitutional priority for Constitutional Debt currently proposed to be compromised pursuant to the Plan of Adjustment" in connection with the disposition of the Defendants' lift stay motions.  *Informative Motion of the Lawful Constitutional Debt Coalition Regarding Argument in Connection with June 4, 2020 Preliminary Hearing on Revenue Bond Lift Stay Motions* (ECF

9

17.      On April 28, 2020 in accordance with the CMO and Amended Scheduling Order, the Oversight Board filed three motions for partial summary judgment in the Revenue Bond Adversary Proceedings.  *See* Adv. Proc. No. 20-00003, ECF No. 44; Adv. Proc. No. 20-00004, ECF No. 41; Adv. Proc. No. 20-00005, ECF No. 56 (collectively, the "2020 Partial Summary Judgment Motions").  The 2020 Partial Summary Judgment Motions sought summary judgment on the counts of the Revenue Bond Complaints that sought to disallow claims by the Defendants against the Commonwealth based upon a putative secured claim or some type of property interest in the Relevant Revenues.  All other counts—including counts predicated on preemption of creditor priorities—remained subject to the litigation stay.  On July 16, 2020, Defendants opposed the 2020 Partial Summary Judgment Motions and also asserted that discovery was needed before the Court could decide the motions.  On September 23, 2020, Court held argument on the 2020 Partial Summary Judgment Motions and took them under submission.  The Court subsequently held that, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, additional discovery was necessary in order to resolve the 2020 Partial Summary Judgment Motions.  *See, e.g.*, Adv. Pro. No. 20-00005, ECF No. 115.  That discovery remains pending, with fact discovery currently scheduled to conclude by May 19, 2021.  *See, e.g.*, *id.*, ECF No. 145.

18.      By the Lift Stay Motion, the Oversight Board now seeks to modify the litigation stay in order to seek summary judgment on a host of the remaining counts in the Revenue Bond Complaints, including the Subject Counts, which seek to disallow any priority claims asserted against the Commonwealth by the Defendants on the grounds that PROMESA preempts any creditor priorities provided for under the Puerto Rico Constitution and statutes.

---

No. 13359) at 4.  At the June 4, 2020 hearing,  the Oversight Board reiterated that it would not argue "preemption of the GO priority claim," and noted that "settlement of the GO priority claim is a very important component of the settlement" and "the last thing the Board would want is for such an important issue in the settlement to be highjacked and litigated when it may never have to be litigated."  June 4, 2020 Hr'g Tr. at 20:12-20; 21:11-12.

## ARGUMENT

I.  **THE COURT SHOULD MAINTAIN THE LITIGATION STAY ON THE ISSUE OF CREDITOR
    PRIORITIES.**

19.     The issue of whether PROMESA preempts creditor priorities is proposed to be
settled pursuant to the terms of the 2021 PSA, which have now been incorporated into the
Amended Commonwealth Plan.  Indeed, the compromise of this issue is a key component of the
interrelated settlements that led to the 2021 PSA and provides the foundation for the Amended
Commonwealth Plan.  This Court has previously held that plan-related issues should not be
separately litigated but should instead be addressed within the plan approval process because doing
so "serves the interests of conservation of resources and judicial efficiency [and] avoid[s] the
unnecessary litigation of issues that will be resolved if the . . . Plan is ultimately confirmed."  Stay
Order at ¶ 3; *see also Memorandum Order Terminating Objection of Official Committee of
Unsecured Creditors to Proof of Claim Number 18499 filed By U.S. Bank National Association,
in its Capacity as Trustee for Non-Recourse PREPA Bonds* (ECF No. 1855 in Case No. 17-4780)
("A requirement that the Court resolve claim objections prior to approving a settlement would
'undermine the important policy of promoting settlements in bankruptcy proceedings by requiring
the parties to litigate the very issues that the settlement seeks to resolve.'") (quoting *In re Kaiser
Aluminum Corp.*, 339 B.R. 91, 94 (D. Del. 2006)).

20.     For its part, the Oversight Board has not only acknowledged these considerations,
but has repeatedly advocated for them in these cases.  *See Reply in Support of Urgent Joint Motion
to Stay Certain Contested Matters and Adversary Proceedings Related to the Bonds Issued by the
Employees Retirement System of the Government of the Commonwealth of Puerto Rico* (ECF No.
16373) ¶ 2 ("[R]equiring resolution of claim objections prior to approving a settlement would
undermine public policy promoting settlements by forcing litigation of the issues to be settled.");

11

*Supplemental Brief of Government Parties in Connection with Objection of Official Committee of Unsecured Creditors to Proof of Claim Number 18449 Filed by U.S. Bank N.A. in its Capacity as Trustee for Non-Recourse PREPA Bonds* (ECF No. 1769 in Case No. 17-4780) at 2 ("[S]ettlements would be futile if parties in interest could preempt them by litigating the issues proposed to be settled."); June 4, 2020 Hr'g Tr. at 20:12-20 ("[T]he last thing the Board would want is for such an important issue [preemption of GO priority] in the settlement to be highjacked and litigated when it may never have to be litigated."). Accordingly, the Court should maintain the litigation stay on claims concerning the role of creditor priorities in PROMESA provided for under applicable Puerto Rico law and address such issues at confirmation. At that time, all parties that could be affected by that issue will have a full and fair opportunity to be heard and, in that context, the Court will determine the propriety of the compromises and settlements embodied in the Amended Commonwealth Plan.

21.    Further militating in favor of retaining the litigation stay on the issue of creditor priorities, the Oversight Board's preemption theory is not necessary for the Court to determine the extent of the rights held by the Defendants because the Revenue Bond Complaints contain threshold counts "addressing whether Defendants hold *any* allowable claims" that remain pending. MOL ¶ 12. The creditor priority counts were originally excluded by the CMO, and continuing that exclusion promotes judicial economy by ensuring there will be a determination on whether the Defendants have a claim against the Commonwealth *at all* before litigating the priority of any such claims.

22.    In fact, by entertaining the creditor priority argument before making a determination concerning whether the Defendants are even creditors of the Commonwealth, the Court would run the risk of issuing an advisory opinion, which is prohibited by Article III of the

U.S. Constitution.  *See Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 511 (1st Cir. 2011) ("Under Article III, judicial power is constrained to 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937))); *Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico v. Fed. Deposit Ins. Corp.*, 681 F. Supp. 981, 985-86 (D.P.R. 1988) ("Moreover, '[n]o matter what type of case, federal courts are not empowered to give plaintiff advisory opinions where there is no actual controversy." (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979))); *Regency Fin. Co. v. Trichilo (In re Trichilo)*, 540 B.R. 547, 551 (Bankr. M.D. Pa. 2015) ("Federal courts, including bankruptcy courts, are limited to deciding only cases or controversies and should not render advisory opinions.").

23.      Indeed, the aggregate amount of distributable value that the Oversight Board is making available for creditors under the Amended Commonwealth Plan demonstrates the hypothetical nature of the Subject Counts.  For the Subject Counts to ripen, the Court would first need to determine that value is available to pay holders of Constitutional Debt in full from other available resources, such that using the revenues of the Clawback Entities are unnecessary.  As it stands, the Amended Commonwealth Plan is based on the opposite premise, namely, that the revenues of the Clawback Entities must be repurposed to honor the priority of the Island's senior-most debt.  Given that the Constitutional Debt is unquestionably entitled to priority over debt of the Clawback Entities, unless the senior debt is being paid in full, the issue of priority of lower-rung creditors is irrelevant.

## II.      IF THE COURT ADDRESSES THE ISSUE, IT SHOULD CONCLUDE THAT PROMESA DOES NOT PREEMPT CREDITOR PRIORITIES

24.     If, notwithstanding the foregoing, this Court modifies the stay in order to hear the Subject Counts, the Court should conclude that PROMESA does not preempt creditor priorities.[9] In determining whether federal law preempts state or territorial law, "the purpose of Congress is the ultimate touchstone." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Preemption of another sovereign's laws will not be "lightly inferred." *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252 (1994). Instead, preemption will be found only where "the clear and manifest purpose of Congress" to preempt non-federal law is "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519 (1977). Implied preemption occurs only "[1] when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or [2] when state law is in actual conflict with federal law." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288 (1995). And even in the event of a direct conflict between federal and territorial law, the latter may be preempted only to the extent of the conflict because "[a] federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Dalton v. Little Rock Family Planning Servs.*, 516 U.S. 474, 478 (1996).

25.     Particularly in light of that exacting standard, PROMESA cannot fairly be read to preempt creditor priorities under Commonwealth law. As an initial matter, there is no "actual conflict" (*Freightliner Corp.*, 514 U.S. at 288) between PROMESA and the Constitutional Debt's priority under Puerto Rico law. The Oversight Board has urged that PROMESA itself expressly articulates only one set of claims with priority over others: administrative expenses. *See* 11 U.S.C.

---

[9]   As noted, if the Court determines to permit the Oversight Board to prosecute the Subject Counts at this time, the PSA Creditors intend to seek to intervene as a matter of right and by permission in the Revenue Bond Adversary Proceedings in order to be heard on this issue and protect their interests, which would not be adequately represented by either the Oversight Board or the Defendants. *See* Fed. R. Civ. P. 24; Fed. R. Bankr. P. 7024. The PSA Creditors have set out these arguments in summary form in order to assist the Court in understanding the perspective that the PSA Creditors would advance upon intervention.

§§ 503(b), 507(a)(2); PROMESA § 301(a).  But such a narrow reading of the operative provisions of PROMESA supports preemption only based on circular logic.  Other provisions of PROMESA expressly refer to and require respect for creditors' priorities and Congress evinced no intention to preempt such priorities in formulating and confirming a plan of adjustment.  Moreover, there is no reason that a plan of adjustment for the Commonwealth cannot satisfy administrative claims in full, as required by PROMESA, while *also* giving effect to the Constitutional Debt's priority under Puerto Rico law.

26.     Far from evidencing any congressional intent to eliminate creditor priorities, the federal statute affirmatively mentions and protects them.  Under PROMESA, the Oversight Board is required to certify a fiscal plan for the Commonwealth and a budget compliant with the certified fiscal plan.  PROMESA §§ 201, 202.  Subsection 201(b)(1)(N) mandates that the certified fiscal plan must "respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to the date of enactment of this Act."  Thus, this provision—which is not in the Bankruptcy Code—protects creditors by ensuring that the Commonwealth constitution and laws regarding creditor priority are respected.  Given that Congress knew when it enacted PROMESA, it was not writing on a clean slate and intended the statute to apply retroactively, it is entirely appropriate that it sought to protect settled creditor expectations on a relative basis.

27.     This respect for lawful priorities under a certified fiscal plan is incorporated into Title III and the requirements for confirmation of a plan of adjustment.  In particular, "[t]he Oversight Board may certify a plan of adjustment only if it determines, in its sole discretion, that it is consistent with the applicable certified Fiscal Plan."  PROMESA § 104(j)(3); *see also id.* § 312(a) ("Only the Oversight Board, after the issuance of a certificate pursuant to section 104(j) of

15

this Act, may file a plan of adjustment of the debts of the debtor.").  Similarly, "[t]he court shall confirm the plan if . . . the plan is consistent with the applicable Fiscal Plan certified by the Oversight Board under title II."  *Id.* § 314(b)(7) .  In short, the Oversight Board can file, and the Court can approve a plan of adjustment under Title III only if it complies with the certified fiscal plan formulated under Title II with the mandatory elements spelled out by Congress.  And as discussed above, the certified fiscal plan must respect the pre-existing creditor priorities established under Commonwealth law.  Put another way, the Oversight Board's view is that, although the Fiscal Plan must *respect* creditor priorities, the plan of adjustment can *ignore* them while (paradoxically) remaining consistent with the Fiscal Plan.  That makes no sense.

28.      To the extent there is any ambiguity in what was intended, Congress documented its purpose in incorporating Puerto Rico law priorities into the fiscal plan and requiring consistency between the fiscal plan and the plan of adjustment.  The stated goal was to ensure that a plan of adjustment would likewise respect those priorities:  "[T]he Committee has [by including Section 201(b)(1)(N)] ensured lawful priorities . . . , as provided for by the territory's constitution [and] laws . . . *will be respected in any debt restructuring*."  H.R. Rep. No. 114-602, pt. 1, at 50 (2016) (emphasis added).

29.      Other portions of PROMESA likewise evidence Congress's intent to retain, not displace, creditor priorities under Commonwealth law.  Title III's Section 301(e), for instance, provides that "[i]n determining whether claims are 'substantially similar' for the purpose of section 1122 of title 11, United States Code, made applicable in a case under this title by subsection (a), the Oversight Board shall consider whether such claims are secured and whether such claims have priority over other claims."  The Bankruptcy Code, of course, contains no similar provision.  Thus, Congress's inclusion of Section 301(e) confirms that—whatever the status of state-law priorities

16

in cases governed by the Bankruptcy Code—Puerto Rico law priorities must be given effect under PROMESA.[10]

30.    PROMESA also empowered the Oversight Board to rescind any Puerto Rico law that "alters pre-existing priorities of creditors in a manner . . . inconsistent with [Puerto Rico's] constitution or [its] laws . . . as of . . . May 4, 2016." PROMESA § 204(b)(3)(B). It is implausible that Congress would provide this sort of express protection for the pre-existing priorities established by Puerto Rico law while simultaneously preempting the same priorities *sub silentio* in a Title III proceeding.

31.    Thus, throughout PROMESA, Congress's intent was clear—to preserve the pre-existing priorities of creditors under Commonwealth law.[11] As Congress clearly designed PROMESA to protect creditor priorities under Commonwealth law, there is no serious argument that PROMESA sufficiently evidences the *opposite* intent to preempt those priorities. PROMESA's limited express preemption provision confirms that Congress harbored no such intent: "The provisions of this Act shall prevail over any general or specific provisions of territory

---

[10]    PROMESA also departs from the Bankruptcy Code by expressly requiring the court, before it confirms a plan of adjustment, to "consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan." PROMESA § 314(b)(6). The non-bankruptcy laws and Constitution of Puerto Rico include the priorities established by Puerto Rico law.

[11]    In connection with litigation concerning bonds issued by ERS (bonds which do not enjoy any priority under applicable Puerto Rico law), the First Circuit stated that section 201(b)(1)(N) "governs only the [Oversight] Board's Fiscal Plan, not the operation of Title III of PROMESA." *Fin. Oversight & Mgmt. Bd. for P.R. v. Andalusian Global Designated Activity Co.*, 948 F.3d 457, 477 (1st Cir. 2020), but that statement is inapposite here. While Section 201(b)(1)(N) does not itself govern the operation of Title III, it is still relevant to determining whether Congress intended to preempt Puerto Rico priorities because that inquiry requires the Court to consider "the structure and purpose of the statute as a whole." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484-85 (1996). Further, *other provisions* of PROMESA that the First Circuit did not address—Sections 104(j)(3), 301(e), 312(a), and 314(b)(7)—*do* govern a Title III plan of adjustment. Those sections require that the plan conform to the certified fiscal plan, and thus, regardless of whether Section 201(b)(1)(N) applies directly, in order to be confirmed the plan must respect creditor priorities, as they must be respected in the certified fiscal plan. In any event, the First Circuit held only that Section 201(b)(1)(N) did not displace PROMESA's "explicit command," 948 F.3d at 477, that its terms would apply to liens created before the statute's enactment. *See id.* ("We cannot read [section 201(b)(1)(N)] to find Congress did not intend for § 552 to apply retroactively, *in light of the express language earlier*." (emphasis added)). Because no provision of PROMESA expressly preempts Puerto Rico law priorities, the First Circuit's conclusion has no application here.

law, State law, or regulation that is *inconsistent with* this Act." PROMESA § 4. There is no inconsistency between PROMESA and the Commonwealth's creditor priority laws because both call for such priorities to be respected.

## RESERVATION OF RIGHTS

32.     This Court has already expressed a preference to address creditor priorities in connection with confirmation of the Amended Commonwealth Plan and ruled that the question is beyond the scope of the CMO. It should not lift the litigation stay to allow the Oversight Board to raise it here. If the Court determines that the stay should be lifted, the PSA Creditors reserve any and all rights with respect to creditor priority or any other issue, including the right to intervene in the Revenue Bond Adversary Proceedings.

## CONCLUSION

WHEREFORE, the PSA Creditors respectfully request that the Court enter an order (i) denying the Lift Stay Motion to the extent it seeks to address the issue of preemption of creditor priorities outside of or prior to the plan confirmation process for the Amended Commonwealth Plan, and (ii) granting any further relief the Court deems just and proper.


DATED: April 13, 2021

Respectfully submitted,

**REICHARD & ESCALERA**

**By :**   */s/ Rafael Escalera*
       **Rafael Escalera**
       USDC No. 122609
       escalera@reichardescalera.com

       **Sylvia M. Arizmendi**
       USDC-PR 210714
       arizmendis@reichardescalera.com

       **Carlos R. Rivera-Ortiz**
       USDC-PR 303409
       riverac@reichardescalera.com

       255 Ponce de León Avenue
       MCS Plaza, 10th Floor
       San Juan, Puerto Rico 00917-1913

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

**Susheel Kirpalani** (*pro hac vice*)
susheelkirpalani@quinnemanuel.com

**Daniel Salinas**
USDC-PR 224006
danielsalinas@quinnemanuel.com

**Eric Kay** (*pro hac vice*)
erickay@quinnemanuel.com

**Zachary Russell** (*pro hac vice*)
zacharyrussell@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1603

*Co-Counsel for the Lawful Constitutional Debt Coalition*

19

**G. CARLO-ALTIERI LAW OFFICES, LLC**

By: */s/ Gerardo A. Carlo*
Gerardo A. Carlo
USDC PR No. 112009
254 San Jose St., Third Floor
San Juan, Puerto Rico 00901
Telephone: (787) 247-6680
Facsimile: (787) 919-0527
gacarlo@carlo-altierilaw.com

**MORRISON & FOERSTER LLP**

By: */s/ Gary S. Lee*
James M. Peck (admitted *pro hac vice*)
Gary S. Lee (admitted *pro hac vice*)
Theresa A. Foudy (admitted *pro hac vice*)
Andrew R. Kissner (admitted *pro hac vice*)
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
jpeck@mofo.com
glee@mofo.com
tfoudy@mofo.com
akissner@mofo.com

*Counsel for the Ad Hoc Group of Constitutional Debtholders*

**JIMÉNEZ, GRAFFAM & LAUSELL**

/s/ *Ramón Rivera Morales*
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
Andrés F. Picó Ramírez
USDC-PR Bar No. 302114
P.O. Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Mark T. Stancil*
Mark T. Stancil (admitted *pro hac vice*)
1875 K Street, N.W.
Washington, DC 20006
Telephone: (202) 303-1133
Facsimile: (202) 303-2133
Email: mstancil@willkie.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

/s/ *Andrew N. Rosenberg*
Andrew N. Rosenberg (admitted *pro hac vice*)
Karen R. Zeituni (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Email: arosenberg@paulweiss.com

**ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP**

/s/ *Lawrence S. Robbins*
Lawrence S. Robbins (admitted *pro hac vice*)
Gary A. Orseck (admitted *pro hac vice*)
Donald Burke (admitted *pro hac vice*)
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: lrobbins@robbinsrussell.com

*Co-Counsel for the Ad Hoc Group of General Obligation Bondholders*

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/ Kurt A. Mayr*
Kurt A. Mayr (admitted pro hac vice)
David L. Lawton (admitted pro hac vice)
Shannon B. Wolf (admitted pro hac vice)
One State Street
Hartford, CT 06103-3178
Tel. (860) 240-2700
Fax: (860) 240-2701
kurt.mayr@morganlewis.com
david.lawton@morganlewis.com
shannon.wolf@morganlewis.com

Sabin Willett (admitted pro hac vice)
One Federal Street
Boston, MA 02110-1726
Tel: (617) 951-8775
sabin.willett@morganlewis.com

**CORREA-ACEVEDO & ABESADA LAW OFFICES, PSC**

Sergio Criado
USDC-PR No. 226307
Roberto Abesada-Agüet
USDC-PR No. 216706
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R.  00968
Tel. (787) 273-8300
Fax (787) 273-8379
ra@calopsc.com
scriado@calopsc.com

*Co-Counsel for the QTCB Noteholder Group*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

<u>/s/<i>Carlos R. Rivera-Ortiz</i></u>
USDC-PR 303409
