# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 20-00004-LTS |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Plaintiff, | |
| v. | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | |
| Defendants. | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 20-00005-LTS |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Plaintiff, | |
| v. | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | |
| Defendants. | |

**FINANCIAL GUARANTY INSURANCE COMPANY'S OBJECTION
AND MEMORANDUM OF LAW IN RESPONSE TO THE
MOTION OF THE COMMONWEALTH OF PUERTO
RICO, BY AND THROUGH THE FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD, FOR STAY RELIEF GRANTING LEAVE TO
<u>PROSECUTE FURTHER MOTIONS FOR PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 4

BACKGROUND AND PROCEDURAL HISTORY .................................................... 6

ARGUMENT ................................................................................................................. 12

I.     The Board cannot redefine "gating" issues this late in the litigation.................... 12

II.     FGIC generally agrees with the true "gating" issues but not the
procedural or jurisdictional posture. ...................................................... 13

A.     Defendants are prejudiced by the timing of the Board's
newest proposal.......................................................................... 14

B.     The Government Parties should focus on discovery instead
of ancillary issues..................................................................... 15

C.     Resolving the quantum of any unsecured claims is not
necessary prior to plan confirmation......................................... 16

III.     A mere objection to a proof of claim does not resolve equitable and
mandamus rights. ................................................................................ 17

CONCLUSION............................................................................................................. 18

CERTIFICATE OF SERVICE ................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*GMAC Mortg., LLC v. Orcutt*, 506 B.R. 52 (D. Vt. 2014) ........................................................... 18

*In re 50-Off Stores, Inc.*, 231 B.R. 592, 595 (Bankr. W.D. Tex. 1999) ........................................ 16

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 121 (1st Cir. 2019) ....................... 8

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 927 F.3d 597 (1st Cir. 2019) ....................... 9

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 989 F.3d 170 (1st Cir. 2021) ...................... 11

*In re PHC Inc. S'holder Litig.*, 762 F.3d 138 (1st Cir. 2014) ........................................................ 5

*Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938 (2016) .................................... 7

*Watkins v. Monroe*, No. 18-cv347, 2019 WL 1869864, at *1 (E.D. Tex. Mar. 27, 2019) ............. 5

**Statutes:**

11 U.S.C. § 101 ................................................................................................................................ 13

11 U.S.C. § 362 ................................................................................................................................ 14

11 U.S.C. § 922 .................................................................................................................................. 8

11 U.S.C. § 928 .................................................................................................................................. 8

13 L.P.R.A. § 2271v ........................................................................................................................... 6

13 L.P.R.A. § 31751 ........................................................................................................................... 6

23 L.P.R.A. § 6470 ............................................................................................................................. 6

23 L.P.R.A. § 671i .............................................................................................................................. 6

3 L.P.R.A § 1918 ................................................................................................................................ 6

3 L.P.R.A. § 1913 ............................................................................................................................... 6

3 L.P.R.A. § 1914 ............................................................................................................................... 6

48 U.S.C. § 2121 ................................................................................................................................ 8

48 U.S.C. § 2141 ........................................................................................................ 8

48 U.S.C. § 2194 ........................................................................................................ 8

48 U.S.C. § 314 ........................................................................................................ 14

9 L.P.R.A. § 2008 ....................................................................................................... 6

9 L.P.R.A. § 2019 ....................................................................................................... 6

9 L.P.R.A. § 5681 ....................................................................................................... 6

Fed. R. Civ. Pro. 30 .................................................................................................. 16

Fed. R. Civ. Pro. 56............................................................................................ 11, 14, 15

Puerto Rico Oversight, Management, and Economic Stability Act § 303................................. 8, 9

Puerto Rico Oversight, Management, and Economic Stability Act § 305........................... passim

Puerto Rico Oversight, Management, and Economic Stability Act § 405................................. 8

Puerto Rico Oversight, Management, and Economic Stability Act § 407........................... 8, 9, 12

**Other Authorities:**

17 McQuillin Mun. Corp. § 51:3 (3d ed.).................................................................. 13

2 Bankruptcy Litigation § 10:45 ............................................................................ 16

Financial Guaranty Insurance Company ("FGIC") objects to and submits this memorandum of law in response to the *Motion of the Commonwealth of Puerto Rico, by and through the Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute further Motion for Partial Summary Judgment* (ECF No. 16326, the "Partial MSJ Proposal").[2] FGIC states as follows:

## PRELIMINARY STATEMENT

1.      "Including all other counts addressing the question of whether the defendants hold unsecured claims against the Commonwealth would unduly burden the Court and the parties and be detrimental to the goal of obtaining a merits-based decision on critical gating issues expeditiously and efficiently." The Financial Oversight and Management Board for Puerto Rico (the "Board"), ECF No. 11492, ¶ 14. This clear statement by the Board should be front and center when this Court considers the Board's latest Partial MSJ Proposal. It is time for this litigation to proceed in the ordinary due course. The Rules of Civil Procedure in both form and substance matter. And, Defendants are entitled to file an answer, affirmative defenses, and counterclaims in these adversary proceedings. Defendants' motions to dismiss, filed on February 27, 2020, should be heard and determined. Defendants are entitled to discovery on the Board's factual allegations as well as their answer, affirmative defenses, and counterclaims. Indeed, FGIC filed an answer, affirmative defenses, and counterclaims against the Board and other third-party defendants on June 11, 2019. *See* Adv. Proc. 19-00363.  FGIC's attempts to litigate in the ordinary due course have been stayed over FGIC's objection for nearly two years. The current litigation posture, which will be worsened by the Board's newest proposal, denies FGIC and the other Defendants due process

---

[2] The Board consented to an extension for FGIC to file this Objection on or before April 14, 2014 at 5:00 p.m. AST.

in favor of rushed and uninformed partial summary judgment practice – a practice which has proven to be inadequate in obtaining a merits-based decision expeditiously and efficiently.

2.    It is axiomatic that the court must not grant a summary judgment upon motion "tendered before the service of an answer, unless in the situation presented, it appears to a certainty that no answer which the adverse party might properly serve could present a genuine issue of fact." *Watkins v. Monroe*, No. 18-cv347, 2019 WL 1869864, at *1 (E.D. Tex. Mar. 27, 2019). The threshold to deem a fact material at the pre-answer, pre-discovery stage is low. *See In re PHC Inc. S'holder Litig.*, 762 F.3d 138, 145 (1st Cir. 2014). In addition to contesting material facts, Defendants must be allowed to present affirmative defenses and counterclaims.

3.    The Board wanted a premature summary judgment procedure on eight hand-picked categories of claims in its complaints, which it characterized as "gating issues."[3] Defendants opposed this truncated summary judgment practice, and now the Court and the parties are not closer to a resolution than had the Court proceeded in the ordinary course of litigation. The Partial MSJ Proposal exacerbates the situations rather than advancing a decision material to the outcome of this Title III case. Further, the Board's request is untimely, burdensome, and disrupts the very process that it requested (over Defendants' objections) at a time when limited discovery is evidencing Defendants' arguments. The Board's motion must be denied.

---

[3] The complaints contain 102 counts related to bonds issued by the Puerto Rico Infrastructure Financing Authority ("PRIFA"), 82 counts related to bonds issued by the Puerto Rico Convention Center District Authority ("CCDA"), and 201 counts related to bonds issued by HTA. Such unwieldy complaints do not lend themselves to truncated summary judgment practice. Instead, partial summary judgment has resulted in piecemeal litigation that prejudices Defendants' rights and ability to present a comprehensive defense.

## **BACKGROUND AND PROCEDURAL HISTORY**

4.      FGIC insures bonds issued by HTA, PRIFA, and CCDA. On their face, these insured bonds were issued, marketed, and sold as "Revenue Bonds," "Tax Revenue Bonds," or "Special Tax Revenue Bonds." *See*, *e.g.*, *Official Statement for Series 2005 PRIFA Bonds*, ECF No. 47-2, Adv. Proc. 20-00003.   Such Revenue Bonds are secured by "pledged revenues." *Id*. The pledged revenues are governed by specific Commonwealth legislation that restricts their use. *See* 3 L.P.R.A. §§ 1913, 1914; 9 L.P.R.A. §§ 2019, 5681; 13 L.P.R.A. §§ 2271v, 31751. In addition, the pledged revenues are governed by specific bond instruments authorized by the same Commonwealth legislation. *See*, *e.g.*, *PRIFA Trust Agreement*, ECF No. 47-1, Adv. Proc. 20-00003. In addition, the Commonwealth legislation requires that the pledged revenues be placed in a statutory revenue stream controlled in accordance with fund accounting principles through certain special deposits, special funds, and special accounts in order to appropriately segregate the pledged revenues from other resources and assure that they are used in accordance with applicable law and contract. *See* 3 L.P.R.A. §§ 1914, 1918; 9 L.P.R.A. §§ 2008, 5681; 13 L.P.R.A. §§ 2271v, 31751; 23 L.P.R.A. §§ 671i, 6470.

5.      Unlike the COFINA bonds and late-issued general obligation bonds, no party disputes that (A) the Revenue Bonds were validly issued, (B) the Revenue Bonds are secured bonds (although the extent of the security is disputed), and (C) the relevant Commonwealth legislation controlling the revenue stream was in effect at the time the Revenue Bonds were issued. Factual disputes exist over the extent of security pledged (i.e., do the pledges include specific revenues, specific revenue streams, or merely specific funds or accounts at the end of the revenue stream?) and whether special deposits, special funds, and special accounts, which are created and required by applicable Commonwealth legislation, control the pledged revenues. For decades these

6

factual disputes did not exist because everyone, including the Commonwealth, understood that the pledged revenues were mandated by applicable Commonwealth legislation to be collected into the statutory revenue stream that includes the special deposits, special funds, and special accounts that indisputably secure the Revenue Bonds.

6.     In 2014, the Commonwealth attempted to restructure its debts, including certain Revenue Bonds, through its own local bankruptcy legislation, the *Puerto Rico Corporation Debt Enforcement and Recovery Act*. But bondholders successfully challenged the Recovery Act all the way through the United States Supreme Court. *See Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938 (2016).

7.     In 2015 the Governor of Puerto Rico unilaterally issued an unauthorized executive order directing that the pledged revenues be diverted from the existing statutory revenue streams and the special deposits, special funds, and special accounts that indisputably secure the Revenue Bonds, into the general coffers of the Commonwealth to be used for the Commonwealth's general purposes. *See*, *e.g.*, OE-2015-046. This executive order was *ultra vires* and is void *ab initio*. The Commonwealth then passed a series of moratorium laws in an effort to legitimize the Governor's original executive order and authorize continuing ones. *See*, *e.g.*, Act No. 21, adopted April 6, 2016, Act No. 5, adopted January 29, 2017, Act No. 46, adopted July 19, 2017, and Act No. 26, adopted April 29, 2017; *see also* EO-2016-18, EO-2016-30, EO-2016-31.[4] These moratorium laws and continuing executive orders were also *ultra vires* and are void *ab initio*.

---

[4] Additional executive orders have been entered extending the effect of the original executive orders. FGIC challenges all subsequent orders as well.

8.      Defendants and other holders of Revenue Bonds commenced lawsuits seeking to compel the pledged revenues remain in the statutory revenue streams. These lawsuits were disaggregated in non-bankruptcy forums, as is commonplace before a bankruptcy commences.

9.      On June 30, 2016, Congressed enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which was welcomed by many bondholders, who preferred a centralized federal forum that, among other things, would "respect the[ir] relative lawful priorities or lawful liens" while assuring that the Commonwealth achieves "fiscal responsibility and access to the capital markets." 48 U.S.C. § 2141(b)(1)(N). PROMESA § 405 stayed the disaggregated lawsuits. 48 U.S.C. § 2194. PROMESA § 407 protects the statutory revenue streams relied on by bondholders. The Board was created. 48 U.S.C. § 2121. And Title III of PROMESA created the bankruptcy-like proceedings that are currently before this Court.

10.      On May 9, 2017, the Board commenced the instant Title III case.

11.      On June 3 and 8, 2017, FGIC and other bond insurers quickly sued to restore the statutory revenue streams. *See* Adv. Proc. Nos. 17-00155, 17-00156, 17-00159. FGIC, National, and Assured brought claims solely pursuant to 11 U.S.C. §§ 922(d) and 928(a), which are incorporated into PROMESA. (ECF No. 1, Adv. Proc. No. 17-00156). Ambac sued under FGIC, National, and Assured's theory but also brought equitable actions under the Contracts Clause, the Takings Clause, Due Process Clause, PROMESA § 303, and PROMESA § 407. (ECF No. 1, Adv. Proc. No. 17-00159). Rather than litigate on the merits, the Board demurred and sought to dismiss the complaints by, among other defenses, wielding PROMESA § 305, which limits this Court's jurisdiction absent Board consent.  The Court, as affirmed by the First Circuit, held that §§ 922(d) and 928(a) do not give rise to an independent cause of action. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 121 (1st Cir. 2019) and 919 F.3d 121, 124 (1st Cir. 2019), *cert. denied*

8

*sub nom. Assured Guar. Corp. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 140 S. Ct. 855 (2020). And, the Court, as affirmed by the First Circuit, further held that PROMESA § 305 prevented adjudication of Ambac's actions under the Contracts Clause, Takings Clause, Due Process, and PROMESA § 303. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 927 F.3d 597 (1st Cir. 2019), *cert. denied sub nom. Ambac Assurance Corp. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 140 S. Ct. 856 (2020). The Court held the PROMESA § 407 action was unavailable because the automatic stay was in effect, and Ambac did not appeal this issue. (ECF No. 156, Adv. Proc. No. 17-00159).

12.     In May 2019 the Board filed a complaint, among other complaints, against Defendants and other bondholders challenging the Defendants' security in the HTA pledged revenues. (ECF No. 1, Adv. Proc. No. 19-00363). FGIC filed an expedited answer, affirmative defenses, and counterclaims seeking mandamus, injunctive, and declaratory relief, and was prepared to assert that the Board waived its § 305 defense by commencing the adversary proceeding. (ECF No. 4, Adv. Proc. No. 19-00363). Rather than proceed on its complaint and FGIC's counterclaims, the Board again demurred and sought and obtained a court-imposed stay of litigation that remains in place. (ECF Nos. 26, 51, Adv. Proc. No. 19-00363).

13.     In response to the holdings from the First Circuit in the early adversary proceedings, Ambac, later joined by FGIC and Assured, moved to lift the automatic stay as to PRIFA in July 2019. (ECF No. 7176, amended at ECF No. 10602). This lift stay litigation aimed to obtain stay relief so that Defendants could bring or continue their equitable and mandamus actions to enforce the statutory revenue stream, relief that could not be obtained in Title III because of PROMESA § 305.

14.     Later in July, the Court entered its *Order Regarding Stay Period and Mandatory Mediation*, which was later extended (ECF Nos. 8244, 9016). This stayed the PRIFA lift stay litigation, as well as all other pending matters related to the Revenue Bonds in order to facilitate mediation. During the stay, National and Assured moved for stay relief related to HTA. (ECF No. 8536).

15.     Following mediation, the Mediators submitted a report and the parties responded thereto. The Court, reviewing the filings and conducting a hearing, entered an *Interim Case Management Order for Revenue Bonds* (ECF No. 9620), ordering a dual track litigation. The lift stay motions would proceed and the Board would commence new adversaries objecting to the Defendants' proofs of claims related to HTA, PRIFA, and CCDA. Defendants would then be permitted to answer, move to dismiss, and /or assert counterclaims in the adversaries. (*Id*. at 7).

16.     In response to the Interim Case Management Order for Revenue Bonds, Defendants moved or amended motions for stay relief related to HTA, PRIFA, and CCDA in January 2020. (ECF Nos. 10102, 10104, 10602). The Board commenced four Revenue Bond adversaries, being Adv. Proc. Nos. 20-00003 (PRIFA – Commonwealth POC), 20-00004 (CCDA – Commonwealth POC), 20-00005 (HTA – Commonwealth POC), and 20-00007 (HTA – HTA POC). Defendants filed partial motions to dismiss the adversaries (ECF Nos. 20, 21, Adv. Proc. 20-00003; ECF No. 22, Adv. Proc. 20-00004; ECF No. 34, Adv. Proc. 20-00005; ECF No. 35, Adv. Proc. 20-00007).

17.     Rather than allow Defendants to present their lift stay motions and motions to dismiss in full, the Board requested and was granted (over Defendants' objection) a bifurcation of issues such that only the self-described "gating issues" of "secured status" and "standing" would be litigated in the lift stay litigation and similar and additional gating issues would be litigated through a limited summary judgment motion practice in the adversaries. (*Final Case Management*

10

*Order for Revenue Bonds*, ECF No. 12186). Despite the operative rules from the Interim Case Management Order, now Defendants would not be able to file an answer, affirmative defenses, and counterclaims or prosecute the motions to dismiss. (*Id*.).

18.     The lift-stay litigation proceeded, and the Court issued preliminary and final orders denying stay relief. (ECF Nos. 13540, 13541, 13542, 14186). Defendants appealed. The First Circuit affirmed denial of the stay relief for procedural reasons but did not address the gating issues of secured status and standing. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 989 F.3d 170, 182 (1st Cir. 2021). The First Circuit did not reach the merits on the Revenue Bonds, preferring to allow the adversaries to proceed on a "more complete record." *Id*. Specifically, the First Circuit directed that "the Title III court will not and cannot treat its earlier, summary determination about whether the [Defendants] had a colorable claim as conclusive [in the adversaries]." *Id*.

19.     In the adversaries, the Board filed partial summary judgment motions, arguing that its motion could be decided as a matter of law. Defendants refrained because they recognized disputed facts exist and summary judgment in this procedural posture is improper. Defendants then opposed and asserted Rule 56(d) defenses to the Board's motions, which were accepted by the Court in its *Order re Rule 56(d) Discovery*. (ECF No. 115, Adv. Proc. 20-00003; ECF No. 108, Adv. Proc. 20-00004; ECF No. 129, Adv. Proc. 20-00005). The Court permitted limited discovery into the factual disputes in the adversaries, which discovery is ongoing and proving fruitful.  The Court has not yet reconciled the current procedural posture with the First Circuit's directive for a "more complete record."

## ARGUMENT

**I.     The Board cannot redefine "gating" issues this late in the litigation.**

20.     The Court, through its *Final Case Management Order For Revenue Bonds*, established eight categories of claims to be litigated through partial summary judgment motions. (ECF No. 12186, ¶ 2). These "gating" issues as defined in the Mediator's Amended Report and adopted by the Court are: (1) Disallowance of claims for post-PROMESA unlawful retention of allocable revenues because allocable revenue statutes are preempted by PROMESA; (2) Disallowance of claims predicated on claims of violations of the Contracts Clause of the Commonwealth and the U.S. Constitutions because no contract was impaired; (3) Disallowance of claims predicated on claims of violations of the Contracts Clause of the Commonwealth and U.S. Constitutions because no legislation created an impairment; (4) Disallowance of claims predicated on claims of violations of the Contracts Clause of the Commonwealth and U.S. Constitutions because the Commonwealth's retention of the allocable revenues was due to PROMESA, not legislation; (5) Disallowance of claims premised on PROMESA § 407; (6) Disallowance of secured claims against the Commonwealth; (7) Disallowance of claims asserting perfected security interests against the Commonwealth; (8) Disallowance of claims of ownership in allocable revenues. (ECF No. 10756 at 15).

21.     The Board unequivocally supported this limited definition of the gating issues. (ECF No. 11492, ¶ 13 ("[T]he Oversight Board agrees with the Amended Report's selection of counts to be briefed in partial summary judgment motions.")). It opposed resolution of any "alleged unsecured claims," except "the Contracts Clause-related counts." (*Id*. ¶ 14). The Board went so far as to call litigation of these "alleged unsecured claims" "unduly burdensome" and "detrimental to the goal of obtaining a merits-based decision on ***critical gating issues***

expeditiously and efficiently." (*Id.* (emphasis added)). Now fourteen months later in the middle of contentious discovery on the true gating issues, the Board says the exact opposite. What was unduly burdensome and determinantal at the beginning of this litigation, most certainly remains unduly burdensome and detrimental now that discovery into the true "gating" issues is ongoing. Opening up additional claims now will frustrate determining the gating issue of whether the Commonwealth must continue to place the pledged revenues in the statutory revenue stream. Categories 1-5 address whether the Commonwealth has legal authority to divert pledged revenues away from the statutory revenue stream.  Categories 6-8 address whether bondholders have certain rights to enforce the statutory revenue stream. The Court expressed interest in these "gating" issues and should not change course in the middle of discovery that the Board wrongfully said and continues to say is unnecessary.

## II.    FGIC generally agrees with the true "gating" issues but not the procedural or jurisdictional posture.

22.    FGIC does not take issue with the current "gating" issues. However, a mere objection to a proof of claim without affirmative defenses and counterclaims will not resolve these "gating" issues. A bankruptcy "claim" is a legal right to payment. 11 U.S.C. § 101(5). Disallowance of FGIC's proof of claim only resolves whether FGIC has a right to payment from the Commonwealth through the plan of adjustment. It does not resolve whether FGIC has separate equitable and mandamus[5] rights to compel the Commonwealth to place the pledged revenues in the statutory revenue stream on an ongoing basis. And, it does not resolve whether the

---

[5] Mandamus is a special remedy unique to governmental entities and officials. "Mandamus may sometimes be characterized as a 'special proceeding' and distinguished from an action. The purpose of a writ of mandamus is to enforce an established right or compel a performance of duty." 17 McQuillin Mun. Corp. § 51:3 (3d ed.).

Commonwealth has legal authority to use the pledged revenues apart from placing them in the statutory revenue stream. Actions taken by government officials without legal authority are *ultra vires* and void *ab initio*. Whether FGIC has equitable and mandamus rights and whether the Commonwealth's actions are *ultra vires* are questions that may only be resolved upon the Board's waiving its PROMESA § 305 rights, FGIC being granted relief from the automatic stay under 11 U.S.C. § 362(d) to pursue its equitable and mandamus rights in another forum, or at confirmation of the plan of adjustment where the Court must resolve, among other things, whether the plan and the Commonwealth's actions are lawful and whether FGIC would receive a greater recovery by enforcing its equitable and mandamus rights under non-bankruptcy law. 48 U.S.C. § 314(b)(1), (2), (3), and (6).

23.      FGIC reaffirms Defendants' prescient position from February 2020 that premature summary judgment practice on a claim objection "will not result in the swift resolution of the Revenue Bond issues," will impose "additional burden," and is "incompatibl[e] with the Federal Rules of Civil Procedure and due process." (ECF No. 11493, ¶¶ 24-29). "Instead, it will result, at best, in additional, unnecessary motion practice [] and an additional, likely contested discovery process[.]" (*Id.*). All of this proved true after hundreds of pages of briefing and Rule 56(d) practice. It remains true as to the Board's newest proposal. Partial summary judgment on objections to claims will provide an incomplete resolution because the equitable and mandamus actions remain stayed and disputed facts exist.

**A.      Defendants are prejudiced by the timing of the Board's newest proposal.**

24.      Defendants would be prejudiced by being forced to litigate the Board's ancillary issues at substantially the same time as it conducts the present discovery and briefing on the true gating issues. Moreover, Defendants must also address disclosure statement and plan of adjustment

14

issues. Adding these ancillary issues will be unduly burdensome to Defendants and prejudice their ability to focus on the true gating issues and the discovery that the Court has ordered.

25.     And, discovery is proving fruitful. For example, the Commonwealth's financial statements in a note identified as "Pledges of Receivables and Future Revenues" expressly stated that "the Commonwealth has pledged part of the gross receipts of the gasoline excise taxes and one half of the diesel oil excise taxes [] derived from excise taxes over crude oil and its derivatives and $15 per vehicle per year from motor vehicle license fees for the repayment of the PRHTA Revenue Bonds." (Commonwealth of Puerto Rico Basic Financial Statements and Required Supplementary Information for the fiscal year ended June 30, 2013 at 122). And, this is not an isolated or meaningless statement. Defendants are receiving and reviewing productions of audit files and audit workpapers from the government's auditors that discredit the Board's factual and legal positions. As will become clear to the Court in the next stage of briefing on the true gating issues, initial and forthcoming discovery will substantiate that the pledged revenues are a segregated resource of the instrumentalities and not property of the Commonwealth. This discovery and the briefing on the true gating issues should be prioritized. The presentation of ancillary issues in new partial summary judgment motions are intended to water down Defendants forthcoming presentation of compelling factual evidence. It should not be lost on the Court that the Board's newest proposal was filed on the heels of Judge Dein compelling the Government Parties to comply with the Court's Rule 56(d) order. (ECF No. 16236).

    B.     **The Government Parties should focus on discovery instead of ancillary issues.**

26.     The Government Parties in a filing last week requested and were granted an extension of time related to the current discovery schedule. (ECF Nos. 16350, 16365). Their stated cause for the extension was "limited governmental resources and the need for each of the relevant

15

governmental entities to dedicate their attention over the immediate term to completion of audited financial statements and fiscal plans." (ECF No. 16350, ¶ 3). Adding additional counts to the gating issues at this stage of the litigation will further stretch already self-described "limited resources" of the government. The government parties should focus their limited resources on timely and adequately addressing their outstanding discovery obligations to Defendants, preparing Rule 30(b)(6) witnesses for forthcoming depositions, and then briefing the true "gating" issues they identified a year ago.

### C.    Resolving the quantum of any unsecured claims is not necessary prior to plan confirmation.

27.    Whether the Commonwealth has legal authority to deprive bondholders and the statutory revenue streams of the pledged revenues are gating issues, but the quantum of any unsecured claim is not. Here, the Board, through its plan of adjustment, is not offering a material distribution to unsecured creditors. And, the Court should not burden itself and the multitude of parties in these cases to resolving complex claim disputes that will not materially affect claim distributions.

> As a general rule, there is no benefit to be derived from prosecuting an objection to claim before it can be determined approximately what distribution will be made to the holder of that claim. Obviously, where there is a question regarding whether there will be any distribution made to that creditor, it would be a waste of limited judicial resources and the assets of the bankruptcy estate to litigate over the allowability of a claim which may receive no distribution even if it is allowed in full. Even in those cases in which it becomes clear that at least a small distribution will be made to the holder of an individual claim, practical considerations justify delaying objections to claims until the parties can more accurately estimate the extent of any such distribution. The resources put into litigating the merits of an individual claim should depend on the magnitude of the distribution which will be made on that claim.

Steinberg, Howard J., *Bankruptcy Litigation*, 2 Bankruptcy Litigation § 10:45; *see also In re 50-Off Stores, Inc.*, 231 B.R. 592, 595 (Bankr. W.D. Tex. 1999) (noting this general rule). Resolving the quantum of Defendants' unsecured claims is not purposeful at this time.

28.     The Board, grasping to justify this wasteful exercise, asserts "[r]esolving these issues could also garner additional support for the Amended Commonwealth Plan." (ECF No. 16327, ¶ 16). But it offers no factual support for this bald assertion. No benefiting claimants are identified, and there are no allegations as to how distributions would materially change. The Board has failed to demonstrate that litigating the quantum of any unsecured claims would meaningfully advance confirmation.

**III.     A mere objection to a proof of claim does not resolve equitable and mandamus rights.**

29.     The Board characterizes Defendants as having "unsecured claims, against the Commonwealth regarding the Relevant Revenues retained by the Commonwealth." (ECF No. 16327, ¶ 13). An unsecured claim is a right to payment with no collateral. A secured claim is a right to payment secured by collateral. Here, the Board is characterizing FGIC's claim as unsecured but with a right to payment "regarding" collateral – the "Relevant Revenues retained by the Commonwealth." This is nonsensical.

30.     Both FGIC and Ambac brought equitable and mandamus actions. Ambac first brought equitable actions in Adv. Proc. No. 17-00159, but the Court held, and was affirmed by the First Circuit, that it could not adjudicate those equitable actions because of PROMESA § 305. FGIC next brought equitable and mandamus actions as counterclaims to the Board's complaint in Adv. Proc. 19-00363. FGIC was prepared to argue that the Board consented to jurisdiction and waived PROMESA § 305 by filing the complaint. At the Board's request and over FGIC's objection, the Court stayed those equitable and mandamus actions. Defendants previously sought

and were denied the right to file similar equitable and mandamus actions as counterclaims in these adversaries. Defendants also moved for relief from stay to prosecute the equitable and mandamus actions outside the Title III case due to the Board's blocking use of PROMESA § 305. The Court denied stay relief because it did not want to prejudge whether the Board would use PROMESA § 305 to block Defendants' equitable and mandamus actions in these adversaries. Ambac's complaint in Adv. Proc. No. 17-00159, FGIC's counterclaims in Adv. Proc. 19-00363, the lift-stay litigation, and counterclaims here would all be viable ways to adjudicate the equitable and mandamus rights and defenses regarding the pledged revenues. Were the Board truly concerned with timely adjudication before plan confirmation, it could have agreed to any of those procedural mechanisms that it blocked.

31.     Instead, the Board continues to advance an improper "asymmetrical approach" that allows the Board to try Defendants' bankruptcy claims while precluding Defendants to plead equitable and mandamus defenses and counterclaims. *GMAC Mortg., LLC v. Orcutt*, 506 B.R. 52, 68 (D. Vt. 2014) (reversing bankruptcy court's "asymmetrical approach" that refused to permit defendant to raise equitable defenses in the claims allowance process). The Court must reject this asymmetrical approach and permit the Defendants to file their answer, affirmative defenses, and counterclaims, which will facilitate the "more complete record" directed by the First Circuit.

## **CONCLUSION**

32.     For the reasons stated above, the Court should reject the Board's Partial MSJ Proposal and either maintain the *status quo* or allow Defendants to file their answers, affirmative defenses, and counterclaims, which would allow for a complete and timely resolution of these adversaries.

Date: April 14, 2021
     San Juan, Puerto Rico

                REXACH & PICÓ, CSP

                By: /s/ *María E. Picó*
                    María E. Picó
                    (USDC-PR No. 123214)
                    802 Ave. Fernández Juncos
                    San Juan, PR 00907-4315
                    Telephone: (787) 723-8520
                    Facsimile: (787) 724-7844
                    Email: mpico@rexachpico.com

                BUTLER SNOW LLP

                By: /s/ *Martin A. Sosland*
                    Martin A. Sosland (admitted *pro hac vice*)
                    2911 Turtle Creek Blvd., Suite 1400
                    Dallas, TX 75219
                    Telephone: (469) 680-5502
                    Facsimile: (469) 680-5501
                    Email: martin.sosland@butlersnow.com

                    James E. Bailey III (admitted *pro hac vice*)
                    Adam M. Langley (admitted *pro hac vice*)
                    6075 Poplar Ave., Suite 500
                    Memphis, TN 38119
                    Telephone: (901) 680-7200
                    Facsimile: (901) 680-7201
                    Email: jeb.bailey@butlersnow.com
                          adam.langley@butlersnow.com

                  *Attorneys for Financial Guaranty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *María E. Picó*_____ _____ _____
María E. Picó
(USDC-PR No. 123214)
802 Ave. Fernández Juncos
San Juan, PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
Email: mpico@rexachpico.com