**Hearing Date**:  April 28, 2021 at 9:30 a.m. (AST).

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>No.  17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No.  17 BK 4780-LTS |

[*Caption continued on next page*]

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Re: ECF Nos. 2296, 2360, 2361

PUERTO RICO ELECTRIC POWER AUTHORITY,

      Movant,

v.

M SOLAR GENERATING, LLC, YFN YABUCOA
SOLAR, LLC

      Respondents.

**PREPA'S OMNIBUS REPLY
TO OPPOSITIONS OF M SOLAR AND YFN YABUCOA
TO PREPA'S OMNIBUS MOTION FOR ORDER (A) AUTHORIZING
PREPA TO REJECT CERTAIN POWER PURCHASE AND OPERATING
AGREEMENTS, AND (B) GRANTING RELATED RELIEF (ECF No. 2296)**

ii

## <u>TABLE OF CONTENTS</u>

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD............................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

   I.    PREPA DOES NOT REQUIRE PREB APPROVAL TO REJECT PPOAS UNDER
BANKRUPTCY CODE SECTION 365 OR PUERTO RICO LAW ...................................... 5

   II.   THE REJECTION MOTION IS RIPE ......................................................... 8

   III.   THE BUSINESS JUDGMENT STANDARD, NOT THE BALANCE OF EQUITIES
STANDARD, GOVERNS THE MOTION ...................................................................... 12

   IV.   REJECTION OF THE REJECTED PPOAS WAS A SOUND EXERCISE OF
PREPA'S BUSINESS JUDGMENT ............................................................................... 14

   V.   A REJECTION MOTION IS A SUMMARY PROCEEDING, NOT A FORUM TO
DEBATE QUESTIONS OF PUERTO RICO'S ENERGY POLICY ...................................... 16

# TABLE OF AUTHORITIES

**PAGE**

CASES

*Algonquin Gas Transmission, LLC v. Weymouth*,
 919 F.3d 54 (1st Cir. 2019) ................................................................................10, 11

*Allen Bradley Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers*,
 325 U.S. 797 (1945) ................................................................................................18

*Arizona v. United States*,
 567 U.S. 387 (2012) ..................................................................................................6

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
 45 F.3d 530 (1st Cir. 1995) ....................................................................................10

*Freightliner Corp. v. Myrick*,
 514 U.S. 280 (1995) ..................................................................................................6

*In re Airlift Int'l*,
 18 B.R. 787 (Bankr. S.D. Fla. 1982) ........................................................................5

*In re BankVest Cap. Corp.*,
 290 B.R. 443 (B.A.P. 1st Cir. 2003), *aff'd*, 360 F.3d 291 (1st Cir. 2004) ....................4, 12, 16

*In re BankVest Cap. Corp.*,
 360 F.3d 291 (1st Cir. 2004), *cert. denied*, 542 U.S. 919 (2004) ...........................19

*In re Curlew Valley Assocs.*,
 14 B.R. 506 (Bankr. D. Utah 1981) ..........................................................................5

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
 No. 17 BK 3283-LTS, 2020 WL 114518 (D.P.R. Jan. 7, 2020), *aff'd*, 954 F.3d
 1 (1st Cir. 2020) .......................................................................................................5

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
 618 B.R. 349 (D.P.R. 2020) ........................................................................2, 4, 13, 16

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
 621 B.R. 289 (D.P.R. 2020) ...............................................................................3, 10

*In re FirstEnergy Sols. Corp.*,
 945 F.3d 431 (6th Cir. 2019) ..................................................................................13

*In re Genco Shipping & Trading Ltd.*,
 509 B.R. 455 (Bankr. S.D.N.Y. 2014) ....................................................................19

iv

*In re Mirant*,
   378 F.3d 511 (5th Cir. 2004) ...........................................................................13, 14

*In re Old Carco LLC*,
   406 B.R. 180 (Bankr. S.D.N.Y. 2009) ...................................................................5

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir. 1993).............................................................................12, 19

*In re Pilgrim's Pride Corp.*,
   403 B.R. 413 (Bankr. N.D. Tex. 2009)...................................................................17

*In re Trans World Airlines, Inc.*,
   261 B.R. 103 (Bankr. D. Del. 2001) ..................................................................4, 15

*In re Vent Alarm Corp.*,
   2016 WL 1599599 (Bankr. D.P.R. Apr. 18, 2016).................................................19

*Las Cenizas v. PREPA*,
   No. 20-1710 (1st Cir. filed July 27, 2020) .............................................................12

*Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &
   Mgmt. Bd. for P.R.)*,
   916 F.3d 98 (1st Cir. 2019)......................................................................................6

*NLRB v. Bildisco & Bildisco*,
   465 U.S. 513 (1984)............................................................................................13, 14

*Richmond Leasing Co. v. Cap. Bank, N.A.*,
   762 F.2d 1303 (5th Cir. 1985) .............................................................................5, 10

*Riggs v. Curran*,
   863 F.3d 6 (1st Cir. 2017) .......................................................................................11

*Town of Barnstable v. O'Connor*,
   786 F.3d 130 (1st Cir. 2015) ...................................................................................11

*United States v. Socony-Vacuum Oil Co.*,
   310 U.S. 150 (1940)..................................................................................................17

*Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight &
   Mgmt. Bd. for P.R.)*,
   945 F.3d 3 (1st Cir. 2019)..........................................................................................6

*Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*,
   589 F.3d 458 (1st Cir. 2009)....................................................................................11

**STATUTES**

11 U.S.C. § 365................................................................................................... passim

11 U.S.C. § 365(a) ...................................................................................................4, 13

11 U.S.C. § 1113(c)(3) ..................................................................................................14

16 U.S.C. § 824(b)(1) ....................................................................................................14

48 U.S.C. §§ 2101-2241 ..................................................................................................1

PROMESA § 4..................................................................................................................6

PROMESA § 101(a) .......................................................................................................13

PROMESA § 301..............................................................................................................4

PROEMSA § 301(c)(7).....................................................................................................6

PROMESA § 305..............................................................................................................5

PROMESA § 315(b) .........................................................................................................1

Puerto Rico Energy Public Policy Act, § 5(u)iv Act 17-2019, S.B. 1121, 18th
   Leg., 5th Reg. Sess. (P.R. 2019) ................................................................................7

**PAGE**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Electric Power Authority ("PREPA"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as PREPA's sole representative pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[3] respectfully submits this omnibus reply (the "Reply") to the *Opposition by M Solar to Puerto Rico Electric Power Authority (PREPA) Omnibus Motion for Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* [ECF No. 2360 in Case No. 17-4780] (the "M Solar Opp."), filed by M Solar Generating, LLC ("M Solar") and the *Opposition by YFN Yabucoa/Solar to Puerto Rico Electric Power Authority (PREPA) Omnibus Motion for Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* [ECF No. 2361 in Case No. 17-4780] (the "YFN Yabucoa Opp." and collectively with the M Solar Objection, the "Oppositions"), filed by YFN Renewable Energy ("YFN Yabucoa" and collectively with M Solar, the "Objectors").  In support of the Reply, PREPA respectfully represents as follows:

## PRELIMINARY STATEMENT[4]

1.       PREPA filed the Rejection Motion seeking approval of its rejection of nine power purchase and operating agreements ("PPOAs").  No opposition or responsive pleading was filed relating to six of the PPOAs, and the Court entered an order approving their rejection.  [ECF No. 2318].  This Reply relates to two of the three remaining PPOAs with M Solar and YFN Yabucoa, both of which are non-operational but not yet terminated because they were the subject of

---

[3]   PROMESA is codified at 48 U.S.C. §§ 2101–2241.

[4]   Capitalized terms used but not otherwise defined herein shall have the meaning given to them in *Omnibus Motion of Puerto Rico Electric Authority for Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* [ECF No. 15178 in Case No. 17-3283 and ECF No. 2296 in Case No. 17-4780] (the "Rejection Motion").

1

renegotiations efforts.  Only M Solar and YFN Yabucoa submitted oppositions to the Rejection Motion.  The third of the remaining PPOAs, with Windmar, is in the process of being renegotiated and PREPA has determined to adjourn the Motion with respect to the Windmar PPOAs until a later date.  A revised proposed order rejecting solely the M Solar and YFN Yabucoa PPOAs is attached as **Exhibit A**.

2.      As explained in the Rejection Motion and accompanying Padilla Declaration [ECF No. 2297], PREPA moved to reject the M Solar and YFN Yabucoa PPOAs after the parties failed to reach terms following over a year of renegotiation efforts.  Neither the Oppositions nor the respective accompanying statements of Dellorfano and Hufstetler contest that (i) PREPA successfully renegotiated non-operational PPOAs with other counterparties at Board Determined Market Prices for renewable energy, (ii) M Solar and YFN Yabucoa submitted final proposals that were 14% and 20% higher, respectively, than the Board Determined Market Prices, and (iii) the M Solar and YFN Yabucoa PPOAs are non-operational and would not be ready to supply renewable energy to PREPA in the near term.  Based on these undisputed facts alone, PREPA has carried its burden to demonstrate that rejection of the M Solar and YFN Yabucoa PPOAs is a sound exercise of its business judgment and not the product of bad faith, whim, or caprice.

3.      The arguments raised in the Oppositions do not alter this outcome.  Objectors merely repackage arguments that (a) assumption or rejection of a power purchase agreement is held to a more rigorous standard, and (b) the Motion is not yet ripe, which this Court has previously rejected.  *See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico* 618 B.R. 349, 360–61 (D.P.R. 2020) (granting motion to assume two PPOAs under business judgment standard despite pending motions for reconsideration of PREB approval and objectors' argument that the balance of equities standard applies); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 621 B.R. 289, 297–

2

98 (D.P.R. 2020) (holding motion for allowance of administrative expense claim was ripe despite pending challenges to PREB decision approving underlying contract). Objectors provide no reason for the Court to depart from its prior determinations.

4.      *First*, Objectors argue regulatory approval of the Puerto Rico Energy Bureau (PREB) is required before PREPA can proceed with a rejection motion under § 365. Not so. Puerto Rico law does not require PREB to approve PREPA's rejection of contracts. The statutes and resolutions cited by Objectors all stand for the uncontroversial proposition that PREB must approve contracts that PREPA seeks to enter into – not terminate or reject. Even if Puerto Rico law did provide PREB with authority over contract rejections, it would be preempted by PROMESA which grants rejection authority solely to the Oversight Board and would not make PREPA's rejection motion unripe even if not preempted. Rejection is unique to Title III and the Bankruptcy Code. Rejection is the equivalent of a debtor determining not to include the contract as part of its property or estate. Even if PREB, a non-federal territorial instrumentality, could somehow control rejection (which no non-federal entity can do), the Title III court's approval of rejection would remain critical because the Bankruptcy Code section 365 renders rejection subject to the Title III court's approval. No law provides approval of rejection need be the last step in refusing to adopt an executory contract as property of the debtor or estate.

5.      *Second*, as this Court has previously held, the business judgment standard—the standard applicable, with very limited exceptions not applicable here, to all § 365 motions—and not the balance of equities standard, is the appropriate test. The relevant jurisprudence demonstrates the balance of equities standard is only applied in the exceptional circumstance where rejection of a contract conflicts with other federal policy implicated by rejection. Here, no federal policy is implicated by PREPA's rejection of the PPOAs, and no federal regulator, or even

3

territorial regulator, has any authority over the rejection of the PPOAs.  Moreover, neither the

Federal Energy Regulatory Commission ("FERC") nor PREB have appeared in this matter and

neither have asserted any regulatory authority in prior PREPA rejection motions.

6.      *Third*, Objectors do not controvert the core facts demonstrating that rejection is a

sound exercise of PREPA's business judgment.  Their assertion that PREPA requested terms that

are not 'market' is irrelevant as there is no requirement that a debtor's negotiation position be

market to reject a contract as burdensome.  Even if there were a "market price" requirement,

Objectors' concession that other PPOA counterparties accepted PREPA's terms demonstrates they

are market.

7.      *Finally*, the remainder of Objectors' arguments relate to whether PREPA's

rejection is good policy—both for Puerto Rico's energy initiatives and given the posture of

PREPA's Title III Case.  As this Court has previously held, this Court is not the forum to debate

public policy.  Such arguments merely attempt to inject a form of "balancing of the equities" in

the business judgment inquiry and should be rejected.

## LEGAL STANDARD

8.      Under Bankruptcy Code section 365(a), a debtor "subject to the court's approval,

may assume or reject any executory contract or unexpired lease."  11 U.S.C. § 365(a); PROMESA

§ 301 (incorporating 11 U.S.C. § 365).  Rejection of an executory contract is subject to review

under a deferential business judgment standard.  *See In re FOMB*, 621 B.R. 349, 358–61.  Under

this standard, a debtor's decision "must be summarily approved unless it is the product of bad

faith, or whim or caprice."  *In re Trans World Airlines, Inc.*, 261 B.R. at 121; *see also In re

BankVest Capital Corp.*, 290 B.R. 443, 447–48 (B.A.P. 1st Cir. 2003), *aff'd*, 360 F.3d 291 (1st Cir.

2004) (A motion to reject an executory contract "should be considered a summary proceeding,"

4

and "the only issue properly before a court is whether the assumption or rejection of the subject

contract is based upon a debtor's business judgment.").  The scope of a court's inquiry "does not

include an evaluation of whether the Debtors made the best or even a good business decision but

merely that the decision was made in an exercise of the Debtors' business judgment." *In re Old

Carco LLC*, 406 B.R. 180, 196 (Bankr. S.D.N.Y. 2009).  More exacting scrutiny would merely

"slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy

Code's provision for private control of administration of the estate, and threaten the court's ability

to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311

(5th Cir. 1985); *see also In re Airlift International, Inc.*, 18 B.R. 787, 789 (Bankr. S.D. Fla.

1982); *In re Curlew Valley Assocs.*, 14 B.R. 506, 509–514 (Bankr. D. Utah 1981).[5]

## **ARGUMENT**

## I.      **PREPA DOES NOT REQUIRE PREB APPROVAL TO REJECT PPOAS UNDER BANKRUPTCY CODE SECTION 365 OR PUERTO RICO LAW**

9.      In their lead argument, Objectors attempt to erect a procedural barrier to PREPA's

rejection of PPOAs under Bankruptcy Code § 365 by asserting PREB approval must first be

obtained.  As a preliminary matter, this argument fails because in a case under Title III of

PROMESA, the Oversight Board, as trustee, is the party who determines whether to assume or

reject a contract and only the Title III court is empowered to approve rejection.[6]  Any territorial

---

[5]    Such considerations are amplified in Title III, where the Oversight Board's governmental discretion is afforded deference beyond considerations such as returns for creditors, and the Court's ability to interfere with the debtor's operations is limited to those circumstances where the Oversight Board consents.  *See* PROMESA § 305; *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17 BK 3283-LTS, 2020 WL 114518, at *3 (D.P.R. Jan. 7, 2020), *aff'd*, 954 F.3d 1 (1st Cir. 2020) ("The Oversight Board has been given the responsibility of balancing and prioritizing the relevant issues and concerns in developing fiscal arrangements and plans of adjustment, and it is entitled to a measure of deference in carrying out this responsibility.").

[6]    Bankruptcy Code § 365 permits the "trustee" to assume or reject any executory contract or unexpired lease.  11 U.S.C. § 365.  PROMESA § 301(c)(7) provides that the Oversight Board serves as the trustee for purposes of Bankruptcy Code provisions, such as § 365, incorporated into PROMESA.

law purporting to provide an entity other than the Oversight Board authority over PREPA's determination to reject contracts is preempted.[7]  Such law directly conflicts with PROMESA because the Oversight Board may seek to reject a contract while PREB may seek to bar such rejection.[8]  Accordingly, even if PREB had authority under Puerto Rico law to approve PREPA's rejection—it does not—such authority would be preempted by PROMESA.

10.     The Court, however, need not reach the preemption issue because there is no inconsistent territorial law to preempt. Objectors point to no authority that PREB approval is required for termination or rejection of PPOAs because no such authority exists.  While Objectors cite a hodgepodge of Puerto Rico statutes and PREB Resolutions, they all establish what is not in dispute: PREB has authority to "evaluate and approve all [Puerto Rico] contracts between electric service companies, including independent power producers." M Solar Opp. at 2; YFN Yabucoa Opp. at 5.  None of them stand for the proposition Objectors advance:  that PREPA must obtain approval from PREB for any actions, including termination or rejection, which "affect energy contracts." M Solar Opp. at 11; YFN Yabucao Opp. at 10.  PREPA retains any powers that are not expressly subject to PREB oversight, including the power to terminate or reject contracts.[9]

---

[7]   *See* PROMESA § 4 ("provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act.") ; *see also Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.),* 916 F.3d 98, 116 (1st Cir. 2019) ("Under PROMESA's preemption provision, the grants of authority to the Board at §§ 201 and 202 to approve Fiscal Plans and Budgets 'prevail over any general or specific provisions of territory law' … that are 'inconsistent….'") (citation omitted); *Vázquez-Garced v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 945 F.3d 3, 8 (1st Cir. 2019) ("[I]f a certified budget is to have 'full force and effect,' subsection 202(e)(3)(C), there can be no spending from sources not listed in that budget, *regardless of what any territorial laws say*.") (emphasis added).

[8]   In addition to express preemption under PROMESA § 4, a law giving PREB authority over rejection would be impliedly preempted because (i) "compliance with both federal and state [law] is a physical impossibility;" and (ii) it would pose an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (impossibility preemption); *Freightliner Corp. v. Myric*k, 514 U.S. 280, 287 (1995) (obstacle preemption).

[9]   *See* Puerto Rico Energy Public Policy Act, § 5(u)iv Act 17-2019, S.B. 1121, 18th Leg., 5th Reg. Sess. (P.R. 2019) (PREPA has the power to "[a]cquire, hold, and dispose of…contracts,…and exercise any and all powers and rights that such interest allows; provided, that in the Board's judgment, such action is necessary, appropriate, or convenient to attain the Authority's purposes or to exercise its powers."

6

11.     Objectors' next rely on PREPA's Court-ordered procedures for assuming PPOAs (the "PPOA Protocol")[10] to argue that because PREB is involved in the assumption of PPOAs, it should also be involved in the rejection of PPOAs.  M Solar Opp. at 30; YFN Yabucao Opp. at 29. This argument also fails because (1) PREPA did not move under the PPOA Protocol, and (2) the protocol, by its plain terms, only applies to assumption of PPOAs.  Objectors cite nothing in the PPOA Protocol that provides a procedure for *rejecting* PPOAs nor that mandates PREB approval of PREPA's rejection of PPOAs.  In fact, the PPOA Protocol explicitly provides that it does not impact the Debtor's ability to subsequently terminate any particular PPOA, let alone a PPOA that was never assumed in the first place.  *See* ECF No. 1199 at 4.

12.     Objectors effectively concede there is no statute granting PREB authority over termination or rejection, instead imploring the Court to nevertheless determine that PREB *should* have such authority.  M Solar Opp. at 7; YFN Yabucao Opp. at 6.  Noting that PREB has power over contract approvals, Objectors ask "why [should it be] different when the impact on policy is due to a rejection [rather than assumption]"?  M Solar Opp. at 8; YFN Yabucao Opp. at 7. Whatever the policy rationale of the Legislature may be, the lack of statutory authority is determinative on this issue.  Moreover, it is clear there are substantial differences between entering into a PPOA versus rejecting a PPOA.  Unlike entering into a PPOA, which commits PREPA's resources and affects the composition of its energy portfolio, rejecting a PPOA frees up PREPA's commitments and gives it flexibility to find alternative providers for its energy needs.  PREPA's rejection of a contract does not "avoid" PREB's jurisdiction because (1) PREB has no jurisdiction over contract termination or rejection and (2) PREB must still approve any subsequent PPOA

---

[10]   *See* ECF No. 1162.  PREPA subsequently amended the proposed procedures [ECF No. 1194-1], and the Court entered an order setting forth the procedures [ECF No. 1199].

PREPA enters into to replace the resources that were otherwise committed under the Rejected PPOAs.  While it is true, as Objectors argue,[11] that PREB oversees contract prices, adjustments, and escalators, none of those matters are present where the contract no longer exists.

13.     Objectors' position is particularly inapposite in the context of the present dispute because it invents a procedural barrier in the form of PREB approval to force PREPA to accept *higher prices*.  How can it be in ratepayers' interest to have a creditor force PREPA to accept higher rates than those PREPA itself is willing to pay, particularly where other PPOA providers were willing to accept lower rates?

14.     The Court should decline Objectors' request to extend PREB's authority where no Puerto Rico law grants it such authority.  PREB has not appeared in this matter and Objectors have no authority to assert PREB's interests.  This Court has previously permitted PREPA to reject PPOAs without PREB approval,[12] and approved the rejection of six of the PPOAs in the instant motion.[13]  Objectors provide no reason to deviate from this practice.

## II.     THE REJECTION MOTION IS RIPE

15.     Objectors argue that not only is PREB approval required, but that the Rejection Motion is not ripe to proceed until it is obtained.  M Solar Opp. at 12–13; YFN Yabucao Opp. at 11–13.  This argument necessarily fails because it is predicated upon ripeness being required and PREB having approval rights over contract rejection under Puerto Rico law, which it does not and cannot have.

---

[11]  M Solar Opp. at 5–6; YFN Yabucao Opp. at 4–5.

[12]  *See Memorandum Opinion Regarding Omnibus Motion of Puerto Rico Electric Power Authority for Entry of An Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief (Docket Entry No. 13579)* [ECF No. 2199].

[13]  *See Order Granting in Part Omnibus Motion of Puerto Rico Electric Power Authority for (A) Approval of its Rejection of Certain Power Purchase and Operating Agreements, and (B) Related Relief* [ECF No. 2318].

16.     Objectors overlook the fact that ripeness is a component of the existence of a case
or controversy and that is irrelevant for rejection purposes.  Article III of the U.S. Constitution
limits exercise of the Article III judicial power to cases and controversies.  Cases and controversies
do not exist when the matter is not ripe.  But, even though the Title III Court is an Article III Court,
approval of a contract rejection does not require exercise of the Title III Court's judicial power.
One only has to look at non-Article III bankruptcy judges approving contract rejections on a daily
basis.  Non-Article III bankruptcy judges have approved rejection routinely precisely because
approving a rejection (effectively an abandonment of a contract out of the estate or debtor's
property) has never required Article III judicial power.  If it did require such power, then non-
Article III judges could not constitutionally approve rejections.

17.     Assuming, *arguendo*, PREB approval were required, it is not a procedural barrier
to proceeding with the Rejection Motion, and it certainly would not implicate the ripeness of the
motion even if ripeness were required.  Simply put, there is no reason why the Title III court cannot
determine PREPA's request for permission not to include contracts among its property, before
PREPA completes other requirements to abandon the property if any such other requirements exist
and are not preempted.  If the Title III Court's permission and PREB's permission to abandon a
contract were each required, one of them clearly has to go first.  It would be just as logical for
PREPA to request the Title III Court's permission to discard the contract before requesting PREB
to allow PREPA to discard it under Puerto Rico law, as it would be to obtain PREB's permission
before requesting the Title III Court's permission.  Put differently, if both permissions were
required, then it would be ripe to request either one.  Creditors can lodge objections to the rejection
motion even if the motion's determination would have to be followed by a request for PREB's

permission. *See Richmond*, 762 F.2d at 1310 (submission of the motion for court approval enabled "anyone [who] objects to the debtor's [rejection] of the contract" to make such objection).

18.    Even if the ripeness inquiry extended beyond these statutory requirements, Objectors' arguments would fail. Ripeness is determined based on (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Algonquin Gas Transmission, LLC v. Weymouth*, 919 F.3d 54, 62 (1st Cir. 2019)

19.    Under the "fitness" prong, the Court considers two questions: (i) the constitutional justiciability question of "whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all," which could render the resulting opinion advisory, and (ii) the prudential justiciability question of whether the case turns on "legal issues not likely to be significantly affected by further factual development." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 536 (1st Cir. 1995) (quotation marks and citation omitted). Here, the merits of the Rejection Motion are fit for judicial decision as they are neither contingent on future events nor based on any factual question in need of further development. Simply put, if there were a requirement to procure PREB's permission, there would be no purpose in requesting it if the Title III Court has not first authorized PREPA to reject. *See In re FOMB*, 621 B.R. 289, 298 (finding that administrative expense motion is ripe notwithstanding challenges to PREB's approval of the underlying contract because "[w]hile it is possible that PREB's decision could be reversed at a later date, that contingency does not render unripe a request for administrative expense priority treatment for amounts that are currently accruing and payable under an operative contract. PREPA."). That the Rejection Motion could become moot in the future—for example, PREPA and the Objectors could reach terms on renegotiation of the Rejected PPOAs—does not mean that it is not ripe for adjudication *now*. *See Town of Barnstable v. O'Connor*, 786 F.3d 130, 143 (1st

10

Cir. 2015) (where litigant's challenge to regulatory process approving contract was questioned on ripeness grounds because contract may have been invalidated by subsequent developments, dispute was ripe because when it was brought "all that [was] contingent and uncertain [was] the possibility that the dispute . . . may become moot").  Any other rule would mean that no motion could ever be ripe.  Importantly, the Rejection Motion does not seek judicial review of any PREB determination regarding the Rejected PPOAs, and this Court is not being asked to approve something contingent on the conclusion of a legal or political process.   PREB consideration of PREPA's rejection would not affect the core facts regarding whether PREPA's rejection is an exercise of its business judgment.  As explained below, those facts are not disputed.

20.    Several First Circuit cases illustrate the point that challenges to one regulatory hurdle are ripe even where the relevant project faces other regulatory obstacles.  From these cases the following rule emerges: where there are separate and independent regulatory approvals and one has not reached completion, challenges to the other are still ripe for adjudication provided such adjudication removes a "barrier[] to ultimate approval of the project." *Algonquin*, 919 F.3d at 63; *Riggs v. Curran*, 863 F.3d 6, 13 (1st Cir. 2017) (citation omitted); *Barnstable*, 786 F.3d at 143; *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 468–69 (1st Cir. 2009).

21.    Regarding the second prong, failure to adjudicate the Rejection Motion would result in substantial hardship to PREPA. As we have seen in parallel contexts, Objectors would almost certainly seek to exhaust every avenue to contest rejection of the contract before PREB, and then appeal such decision, prolonging PREPA's ability to reject the contract for years.[14]  Thus

---

[14]  *See, e.g.*, *Response to PREPA's Urgent Motion for Entry of an Order Authorizing PREPA to Assume Certain Contracts With Ecoelectrica, L.P., and Gas Natural Aprovisionamientos SDG, S.A.* [ECF No. 1973] (objecting to PREPA's assumption of the Ecoelectrica and Naturgy PPOAs) *and Brief of Appellant Windmar Renewable Energy, Inc.*, at *Campamento Contra Las Cenizas v. PREPA*, No. 20-1710 (1st Cir. filed July 27, 2020) (arguing against PREPA's

Objectors intend to use prolonged delay as a means to frustrate PREPA's operations and force PREPA back to the negotiation table, or else languish in rejection purgatory.

22.      Here, failure to permit the Rejection Motion to proceed by requiring PREB approval of all future PREPA rejections would cause substantial interference with PREPA's ongoing restructuring efforts.  If PREPA is prohibited from proceeding with the Rejection Motion while Objectors exhaust every avenue to challenge PREB's approval, PREPA will suffer real and tangible harm.  Any opponent to an energy contract that PREPA wishes to assume or reject in the future could grind PREPA's restructuring efforts to a halt by initiating meritless challenges to PREB's approval orders and declaring assumption or rejection unripe till they are resolved.  Such a result is contrary to bankruptcy policy, which seeks to provide a debtor with a swift means to administer and restructure its operations,[15] and PROMESA, which charges the Oversight Board with restoring fiscal responsibility and market access,[16] both of which require that PREPA have affordable renewable energy contracts.

## III.      THE BUSINESS JUDGMENT STANDARD, NOT THE BALANCE OF EQUITIES STANDARD, GOVERNS THE MOTION

23.      Objectors assert PREPA's rejection of the Rejected PPOAs should be evaluated under the "balance of equities standard," which is only used in exceptional circumstances, and not the business judgment standard typically applied to such motions.  M Solar Opp. at 29; YFN

---

assumption of two PPOAs, Appellant stated "[a]ny decision by the PREB on these reconsideration requests is not automatically final, but only after the 30-day period for appellate review has passed. Additionally, PREPA ignores the availability of judicial review in administrative proceedings up to the Supreme Court of Puerto Rico. Once the PREB decides on any or all of the motions, the adversely affected parties may exercise the right to judicial review before the state court of appeals, further delaying the finality of the PREB Order, regardless of the party in whose favor it rules. See P.R. Law ann. tit. 3 § 9671. Any determination of the Court of Appeals could be challenged by Certiorari in the Supreme Court of Puerto Rico.").

[15]   *See In re BankVest*, 360 at 302 ((quoting *In re Orion Pictures Corp*., 4 F.3d 1095, 1098–99 (2d Cir.1993)).

[16]   PROMESA § 101(a) ("The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets.").

12

Yabucoa Opp. at 28.  The Court recently rejected this very argument, observing that a departure from the ordinary business judgment standard is only warranted where the contract has a "special nature…under federal law" and the heightened balance of equities standard is needed to reconcile the conflict between the federal law and section 365(a).  *In re FOMB*, 618 B.R. at 359. Distinguishing the same cases Objectors rely on here, the Court found that (1) "[t]he Supreme Court's decision in *Bildisco* does not extend so far as to support the notion that any contract assumption that may have a significant public impact must be subjected to a higher standard of scrutiny; many decisions taken by many debtors [] can have far-reaching consequences for their stakeholders; (2) the cases of *Mirant* and *FirstEnergy* 'do not carve out energy supply as a general category requiring heightened scrutiny,' but only apply the balance of equity standard where section 365 could result in 'potential circumvention of a specific federal regulatory scheme that itself required consideration of the public interest.'" *Id.* at 359–60 (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984); *In re Mirant*, 378 F.3d 511 (5th Cir. 2004); and *In re FirstEnergy Sols. Corp.*, 945 F.3d 431 (6th Cir. 2019)).

24.     Objectors provide no persuasive reason why the analysis should change in the context of PREPA's rejection of PPOAs under Bankruptcy Code § 365.  Instead, they point to the fact that the Court's prior opinion dealt with contract assumption whereas here we are dealing with contract rejection.  That distinction is immaterial on this point because no federal, or even territorial regulator, has opposed rejection and no federal or territorial law conflicts with PREPA's rejection determination.  Additionally, the fact that the balance of equities standard has been applied to certain contract rejections and not to contract assumptions, does not even remotely suggest it should be applied here.

13

25.     Congress clearly knew how to impose a balance of equities standard when it wanted to impose it, as it did in Bankruptcy Code § 1113(c)(3) for rejection of collective bargaining agreements in chapter 11 cases.  But Congress did not incorporate this provision in Title III—even for the limited purposes of a collective bargaining agreement rejection.

26.     Here, the Rejection Motion does not deal with a collective bargaining agreement. There is no basis for application of any standard other than business justification because there is no federal or even Commonwealth policy that would be circumvented by the Court's approval of rejection of the Rejected Contracts.  The agreements PREPA seeks to reject are not contracts for the transmission or sale of electric energy in interstate commerce and hence are not subject to FERC's jurisdiction under the Federal Power Act, and Objectors do not contend FERC has jurisdiction.  *See* 16 U.S.C. §824(b)(1).  Further, as explained above, no approval by PREB is required for termination of the contracts and PREPA can comply with Puerto Rico energy law and policy without these contracts.  *Cf. NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984) *and In re Mirant*, 378 F.3d 511 (5th Cir. 2004).

## IV.     REJECTION OF THE REJECTED PPOAS WAS A SOUND EXERCISE OF PREPA'S BUSINESS JUDGMENT

27.      Objectors concede the business judgment standard is "the most deferential." M Solar at 33; YFN Yabucoa Opp. at 32.  Under this deferential standard, the debtor's decision should be summarily approved unless it is the product of "bad faith, or whim or caprice." *In re TWA,* 261 at 121.  As explained in the Rejection Motion, PREPA's determination to reject the Rejected PPOAs easily clears this low bar.

28.     Objectors do not controvert the core facts upon which PREPA based its rejection determination.  Indeed, their declarations confirm that:

14

- PREPA actively sought to renegotiate the contracts (*see, e.g.* M Solar Opp. ¶¶ 4–8 (describing numerous meetings, amendment proposals and counter-proposals), YFN Yabucoa Opp. ¶ 3, Hufstetler Statement ¶ 21);

- other PPOA counterparties accepted the renegotiated terms (Dellorfano Statement ¶ 51), Hufstetler Statement ¶ 25);

- Objectors refused to meet accept PREPA's offered terms;

- the PPOAs are not operational and not in a position to provide PREPA with any benefit in the present or short term;[17]

- PREPA is rejecting the contract because it determined the prices are *too high* relative to their target rate;[18]

All of these facts demonstrate PREPA's rejection determination was a considered exercise of business judgment and not the product of bad faith, whim, or caprice.

29.    Objectors arguments that none of the other PPOA counterparties could get financing (Dellorfano Statement ¶ 33) or the contractual terms PREPA offered were too low to allow PPOAs to generate a profit (*id.* ¶ 51) are irrelevant to the question of PREPA's business judgment in rejecting the PPOA.  If the parties reach impasse and terms cannot be reached that are mutually beneficial to both sides, then rejection is, by definition, an exercise of business judgment. It would be contrary to business judgment to force a debtor to accept a contract at *higher* prices than it is willing to accept just so its counterparty can be satisfied with its profit margin.  Such a rule would strip the debtor of its ability to cast off contracts it has determined are burdensome. *See In re BankVest*, 360 at 296 ("By permitting debtors to shed disadvantageous contracts but keep

---

[17]  *See, e.g.* M Solar Opp. at 37; YFN Yabucoa Opp. at 36 ("How can this Court agree to contract rejections based on the PPOA's facilities not been ready without knowing why they are not?").

[18]  The Dellorfano Statement demonstrates that it was M Solar who rejected PREPA's proposal because "the alternative proposals suggested by [PREPA] would not satisfy the level of return to [M Solar's] investors based on PREPA's financial condition." ¶ 49.

beneficial ones, § 365 advances one of the core purposes of the Bankruptcy Code: 'to give worthy

debtors a fresh start.'").

## V.    A REJECTION MOTION IS A SUMMARY PROCEEDING, NOT A FORUM TO DEBATE QUESTIONS OF PUERTO RICO'S ENERGY POLICY

30.    In an attempt to inject some form of "balancing" into the Court's analysis,

Objectors raise a number of policy arguments including that (i) PREPA's negotiation position was

not determined by a market process and is therefore "price fixing," (ii) PREPA's rejection would

complicate its ability to meet its renewable requirements, and (iii) its rejection decision was not

the product of open participation.  These arguments are irrelevant to the business judgment inquiry.

31.    As the Court previously held: "The concerns expressed by the Objecting Parties

regarding the substantive wisdom of the terms of the Contracts and the policy decisions underlying

the Contracts (such as, for example, Puerto Rico's continued reliance on fossil fuels) do not justify

a departure from the business judgment rule, and the Court thus will not second-guess the decisions

made by PREPA in its negotiation and execution of the Contracts."  *In re FOMB*, 618 B.R. at 361–

362.

32.    The Title III Court is not the forum, and an objection to a rejection motion is not

the vehicle, for Appellants to raise their energy policy concerns or theories regarding "price

fixing."  *See In re Pilgrim's Pride Corp.*, 403 B.R. 413, 425 (Bankr. N.D. Tex. 2009) ("If the

bankruptcy court must second-guess every choice by a trustee or debtor in possession that may

economically harm any given locale, the business judgment rule applicable to contract rejection

and many other decisions in the chapter 11 process will be swallowed by a public policy

exception.").  As Objectors themselves note, Section 6.4(C) of Act 57-2014 provides a forum for

them to air their grievances (which would still fail because PREB has no authority over rejection).

16

33.     In any event, Objectors' arguments miss the mark. There is no requirement that a debtor seeking to reject a motion must show that the prices it sought in negotiation are market. Even if there were, the uncontroverted fact that other PPOA counterparties accepted those terms demonstrates that they are market.  Similarly, there is no requirement under Puerto Rico law or the Bankruptcy Code that the debtor's decision to reject (or in this case, the Oversight Board's) be the product of open participation.

34.     Objectors' contention that PREPA's negotiation position amounts to "price fixing" is meritless.[19]  *First*, price fixing relates to an agreement among competitors to raise, lower, or stabilize prices, and thus has no application here.  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940) (defining price-fixing as any "combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce").  *Second*, PREPA's negotiation position is not "price fixing" because PPOAs that are successfully renegotiated must then be approved by PREB, as its independent regulator, which will then determine if the prices are in accordance with Puerto Rico's energy policy.  *Third*, concepts such as price fixing exist to protect consumers from high prices. *See, e.g., Allen Bradley Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers*, 325 U.S. 797, 806 (1945).  They do not work to confine an energy provider from negotiating *lower* prices with its PPOA counterparties to reduce energy rates for its customers.  Here, it follows that if PREB originally approved the M Solar and YFN Yabucoa PPOAs at higher prices, it would approve the PPOA at lower prices that benefit PREPA's customers.

---

[19]  While Objectors assert, without support, that PREPA's prices are not "market," the Hufstetler Statement (¶ 21) acknowledges that PREPA "commission[ed] additional market pricing and cost studies" during the course of the renegotiation.

35.     Regarding Objectors' argument that PREPA's actions would impede its ability to meet its renewable energy targets, (M Solar Opp. at 36; YFN Yabucoa Opp at 35), PREPA's actions actually promote its ability to meet this target.  Indeed, the PREB resolution cited by Objectors contemplates a similar situation to PREPA's rejection of the Rejected PPOAs: "If market prices offered in response to a solicitation are unduly higher than expected…[I]t could be a prudent course of action for PREPA to select fewer resources than expected, and defer capacity to a future procurement within the scheduled tranches as detailed in the Final Order." M Solar Opp. at 26; YFN Yabucoa Opp at 22.  Hence, PREPA has acted prudently by rejecting PPOAs it has determined are higher than expected and is thus freeing up capacity for future procurement.

36.     Objectors also seek to stall PREPA's rejection by asking for discovery and an evidentiary hearing and questioning why PREPA is moving forward with rejection when it has sought adjournments of its [Rule 9019] Motion in light of COVID.  M Solar Opp. at 47–52; YFN Yabucoa Opp at 46–51.  The Oversight Board is tasked with administering the Title III Case and has determined to proceed with the business of assuming beneficial PPOAs and rejecting burdensome PPOAs.  A motion to reject under § 365 is a summary proceeding and is not the place for prolonged discovery.[20]  An opposition to a motion is not the appropriate procedural posture to ask for an enlargement of deadlines.

37.     PREPA needs certainty regarding rejection of the Rejected PPOAs now so that it can assess its renewable energy portfolio and its compliance with the Fiscal Plan and IRP.  It is

---

[20]  A motion to assume triggers a summary proceeding "intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate." *In re BankVest Capital Corp.*, 360 F.3d 291, 302 (1st Cir. 2004*), cert. denied*, 542 U.S. 919 (2004). Accordingly, courts have long recognized that a proceeding on a motion to assume "is not the time or place for prolonged discovery or a lengthy trial with disputed issues." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1098–99 (2d Cir.1993) (vacating bankruptcy court judgment regarding merits of breach of contract claim as beyond the scope of the inquiry on a motion to assume); accord *In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014); *In re Vent Alarm Corp.*, 2016 WL 1599599, at *3 (Bankr. D.P.R. Apr. 18, 2016).

detrimental to keep contracts alive and the parties bound to their obligations thereunder if PREPA knows now that it ultimately will seek their rejection. Moreover, the stakes involved here are a far cry from the 9019 Motion, which seeks approval of a restructuring support agreement ("RSA") involving over $8 billion in PREPA bond debt and that would be a central component of a PREPA Title III Plan.  While the Oversight Board and Government are exercising prudence in examining the impact of the ongoing pandemic on the RSA, a similar evaluation is not necessary to make the determination to decommit resources under the M Solar and YFN Yabucoa PPOAs.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE PREPA respectfully requests the Court (1) overrule the Objections and (2)

enter the Proposed Order (a) granting the Urgent Motion, (b) approving PREPA's rejection of the

M Solar and YFN Yabucoa PPOAs, and (c) granting PREPA such other relief as is just and proper.

Dated: April 14, 2020
      San Juan, Puerto Rico

Respectfully submitted,

*/s/   Martin J. Bienenstock*

Martin J.  Bienenstock (*pro hac vice*)
Paul V.  Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel S.  Desatnik (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

Elliot R. Stevens (*pro hac vice*)
**PROSKAUER ROSE LLP**
One International Place
Boston, MA 02110
Tel:  (617) 526-9600
Fax:  (617) 526-9899

*Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Commonwealth of Puerto Rico and the Puerto*
*Rico Electric Power Authority*

**LUIS F. DEL VALLE-EMMANUELLI**

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.647.3503
Fax N/A
dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos

20

San Juan, PR 00918
Tel. (787) 751-6764/763-0565
Fax (787) 763-8260

*Co-Attorney for the Financial Oversight and
Management Board as representative of the
Debtor*

## Exhibit A

Revised Proposed Order

# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[21] | PROMESA<br>Title III<br><br>No.  17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>No.  17 BK 4780-LTS |
| PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Movant,<br><br>v.<br><br>M SOLAR GENERATING, LLC, YFN YABUCOA SOLAR, LLC<br><br>Respondents. | |

---

[21] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No.  17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No.  17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No.  17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

### ORDER GRANTING OMNIBUS MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY FOR ENTRY OF AN ORDER (A) APPROVING REJECTION OF CERTAIN POWER PURCHASE AND <u>OPERATING AGREEMENTS, AND (B) GRANTING RELATED RELIEF</u>

Upon *PREPA's Omnibus Motion for Entry of an Order (A) Authorizing PREPA to Reject Certain Power Purchase and Operating Agreements, and (B) Granting Related Relief* (the "<u>Motion</u>")[22]; and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found the rejection of the M Solar PPOA and YFN Yabucoa PPOA represents a sound exercise of PREPA's business judgment and that the relief requested in the Motion is in the best interests of PREPA, its creditors, its customers, and other parties in interest; and the Court having found that PREPA provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard the statements of counsel in support of the Motion at a hearing held before the Court (the "<u>Hearing</u>"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein,

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

---

[22]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

2

2.      Pursuant to section 365 of the Bankruptcy Code, made applicable in this Title III

Case pursuant to PROMESA section 301(a), PREPA's rejection is approved of the M Solar PPOA

and YFN Yabucoa PPOA as listed on **Exhibit A** (the "Rejected PPOAs") attached to the Motion,

effective upon entry of this Order.

3.      Any claims based on the rejection of the Rejected PPOAs, if any, must be filed on

or before 4:00 p.m. (Atlantic Standard Time) on the date that is the first business day that is thirty-

five (35) calendar days after the entry of this Order by the Court approving such rejection.

4.      Nothing herein is intended to, shall constitute, or shall be deemed to constitute

PREPA's or the Oversight Board's consent, pursuant to PROMESA section 305, to this Court's

interference with (a) any of the political or governmental powers of PREPA, (b) any of the property

or revenues of PREPA, or (c) the use or enjoyment of PREPA of any of its property.

5.      Notwithstanding any applicability of any Bankruptcy Rule, the terms and

conditions of this Order shall be immediately effective and enforceable upon its entry.

6.      PREPA and the Oversight Board, as PREPA's representative, are authorized to take

all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted

in this Order in accordance with the Motion.

7.      The Court shall retain jurisdiction to hear and determine any and all disputes related

to or arising from the implementation, interpretation and enforcement of this Order.


Dated: [_____], 2021

                                        _____
                                        HONORABLE LAURA TAYLOR SWAIN
                                        United States District Judge

3