# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

**JOINT STATUS REPORT OF AMBAC ASSURANCE CORPORATION AND THE
FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, AS
REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO, AND THE
PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY
<u>PURSUANT TO THE COURT'S MARCH 29, 2021 ORDER</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("<u>PBA</u>") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

To the Honorable United States Magistrate Judge Judith Gail Dein:

Ambac Assurance Corporation ("Ambac"), the Financial Oversight and Management Board for Puerto Rico (the "Board"), as sole Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth" or "Debtor") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF" and, together with the Board, the "Government Parties"),[2] respectfully submit this Joint Status Report pursuant to the Court's order dated March 29, 2021 (ECF No. 16247).[3]

## I.    PROCEDURAL BACKGROUND

1.    On October 28, 2019, Ambac filed *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* (ECF No. 9022) (the "Assets Motion"), and *Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis* (ECF No. 9023) (the "Cash Motion" and, together with the Assets Motion, the "Original Rule 2004 Motions").

2.    On November 8, 2019, the Government Parties filed the *Urgent Motion of Financial Oversight and Management Board for Puerto Rico and Puerto Rico Fiscal Agency and Financial Advisory Authority to Strike (A) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets [ECF No. 9022] and (B) Ambac Assurance Corporation's Motion for Entry of Order Authorizing*

---

[2] Ambac and the Government Parties are collectively referred to as the "Parties."

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Joint Status Report of Ambac Assurance Corporation and the Financial Oversight and Management Board for Puerto Rico, as Representative of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority Pursuant to the Court's March 8 and March 10, 2021 Orders* (ECF No. 16244) (the "March 26 Joint Status Report").

*Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis
[ECF No. 9023] and for Sanctions* (ECF No. 9131) (the "<u>Motion to Strike</u>").

3.       On January 23, 2020, the Court (Swain, J.) issued a memorandum order denying
the Motion to Strike (ECF No. 10332) (the "<u>Memorandum Order</u>").  The Memorandum Order
directed the Parties to meet and confer by February 3, 2020 concerning the scope and mechanics
of discovery responsive to the Original Rule 2004 Motions.  (*Id.* at 9.)

4.       On November 12, 2020, following the filing of numerous joint status reports
discussing the Parties' meet-and-confer efforts, the Court (Dein, M.J.) denied without prejudice
the Original Rule 2004 Motions, stating that "[i]n light of the substantial work the [P]arties have
done narrowing the issues and resolving the disputes initially presented in the [Original] Rule 2004
Motions[,] . . . and to avoid confusion of the record," Ambac should file "a new Rule 2004 motion
limited to the issues in dispute."  (*Order* (ECF No. 15093) at 2.)

5.       On November 20, 2020, Ambac filed its New Cash Rule 2004 Motion,[4] which
seeks an order directing the Board to produce certain documents related to the Commonwealth's
and the Board's publicly available cash restriction analysis.  The New Cash Rule 2004 Motion has
been fully briefed and remains *sub judice*.

6.       On February 4, 2021, Ambac filed its New Assets Rule 2004 Motion,[5] which
requests authorization under Bankruptcy Rule 2004 to seek discovery directly from six
"prioritized" Commonwealth entities regarding their assets.  The New Assets Rule 2004 Motion
has been fully briefed and remains *sub judice*.

---

[4] "<u>New Cash Rule 2004 Motion</u>" refers to *Ambac Assurance Corporation's Motion for an Order Directing
Cash Rule 2004 Discovery from the Financial Oversight and Management Board for Puerto Rico* (ECF
No. 15220).

[5] "<u>New Assets Rule 2004 Motion</u>" refers to *Ambac Assurance Corporation's Motion for Entry of Order
Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets* (ECF No. 15802).

7.      On March 26, 2021, the Parties filed the March 26 Joint Status Report.  On March 29, 2021, the Court ordered the Parties to file a further joint status report by April 16, 2021. (*Order* (ECF No. 16247).)

## II.    THE PARTIES' PROGRESS SINCE THE PREVIOUS UPDATE TO THE COURT

8.      Since the filing of the March 26 Joint Status Report, the Parties have continued to exchange correspondence[6] and met-and-conferred telephonically on April 14, 2021 (the "April 14 Meet-and-Confer").  The status of the Parties' discussions relating to Ambac's assets- and cash-related requests is as follows:

### A.    Status of Assets Requests (Directed Principally to AAFAF)

9.      As noted in the joint status report dated March 4, 2021 (ECF No. 15930) and the March 26 Joint Status Report, the Parties have reached an impasse with regard to certain of Ambac's requests that are unrelated to the New Assets Rule 2004 Motion, including the following requests relating to CRIM:  (i) requests related to statements made in CRIM's fiscal plan and information regarding tax arrears and liens; (ii) requests for documents and communications related to a 2017 third-party offer to purchase CRIM's tax arrears portfolio for $400 million; (iii) requests for information and documents concerning CRIM's ongoing effort to value and monetize its tax arrears and liens portfolio in connection with an RFP issued by AAFAF and CRIM, including (without limitation) responses submitted by external parties in response to the RFP; and (iv) requests for documents and communications regarding how the $400 million estimated value of CRIM's accounts receivable portfolio set forth in CRIM's most recent fiscal plan was determined.  The Parties also remain at an impasse with regard to Ambac's request for

---

[6] The Parties' positions with regard to each of Ambac's requests since the filing of the March 26 Joint Status Report are memorialized in the following correspondence:  (i) the Board's letter to Ambac dated March 30, 2021 (the "March 30 Letter") (attached hereto as Exhibit A).

documents related to the terms of any leases for the Prioritized Commonwealth Assets, as well as Ambac's request for deposition testimony on the foregoing issues.  The Parties' positions with regard to the foregoing requests remain unchanged since the filing of the March 26 Joint Status Report, and Ambac continues to reserve all rights to seek judicial intervention to compel discovery with respect to the foregoing issues.

10.     As noted in the March 26 Joint Status Report, the Board agreed during the Parties' March 23, 2021 telephonic meet-and-confer to consider Ambac's request concerning the Board's or its advisors' involvement in any efforts to identify, value, and/or potentially monetize Commonwealth properties.  During the April 14 Meet-and-Confer, in response to Ambac's request, the Board referred Ambac to the Fiscal Plan[7] and a publicly available letter from the Board to AAFAF and CRIM, dated March 1, 2021, regarding ongoing efforts to sell CRIM's tax arrears and liens portfolio,[8] but advised that it was not in a position to confirm that those materials constitute the entirety of the Board's or its advisors' involvement in efforts to identify, value, and/or potentially monetize Commonwealth properties.  The Board also reiterated its position that discovery going forward should, in its view, be in accordance with a plan confirmation schedule. As noted in the March 26 Joint Status Report and elaborated on *infra* at Section III.A., Ambac believes that the Court has already rejected a similar argument; that halting Rule 2004 discovery now would only delay it to a time when the Parties will be knee-deep in plan confirmation discovery on a multitude of significant issues, likely under a compressed schedule; that it would

---

[7] "Fiscal Plan" refers to *2020 Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity* (certified May 27, 2020), *available at* https://oversightboard.pr.gov/documents/.

[8] Ltr. from N. Jaresko to O. Marrero Díaz and R. Paniagua Latimer (Mar. 1, 2021), *available at* https://oversightboard.pr.gov/documents/.

be far more efficient for Rule 2004 discovery to continue; and that, in any event, the Court is not

being asked to order any relief on this issue at this time.  *See* March 26 Joint Status Report ¶ 12.

    **B.**      **Status of Cash Requests (Directed Principally to the Board)**

        **1.**    *Update Regarding Requests as to Which the Parties Continue to Make Progress.*

11.     Since the filing of the March 26 Joint Status Report, the Board has provided a

written response regarding the relationship between the December 2020 Presentation and the

presentation titled *Section 209 Requirements for Termination of the Oversight Board*, distributed

in connection with the Board's October 30, 2020 public meeting, and certain questions Ambac

posed regarding the March 2021 Disclosure Statement.   Ambac's review and analysis of the

Board's responses to Ambac's inquiries is ongoing.

12.     During the April 14 Meet-and-Confer, the Board advised that it intends to complete

its production of factual source materials and raw data underlying the March 2021 Disclosure

Statement by no later than April 23, 2021, and will produce such materials categorized by account.

        **2.**    *Update Regarding Requests for Which the Parties Have Reached an Impasse.*[9]

13.     As noted in the March 26 Joint Status Report, the Parties have reached an impasse

regarding Ambac's requests:  (i) that the Board review the documents it has produced to Ambac

---

[9] As noted in the joint status report dated February 15, 2021 (ECF No. 15846), the joint status report dated March 4, 2021 (ECF No. 15930), and the March 26 Joint Status Report, Ambac and the Board have reached an impasse regarding Ambac's request that the Board produce notations that the Board's advisors had applied to certain factual source materials and raw data underlying the Duff & Phelps Report and the October 2019 Presentations, which the Board removed from the documents prior to production.  In the March 30 Letter, the Board advised that, prior to producing factual source materials and raw data underlying the December 2020 Presentation, the Board removed its advisors' internal notes from 21 of those documents as well.  Ambac continues to believe that it is improper for the Board to remove these types of notations and/or notes from the materials it has produced, and reserves all rights to seek judicial intervention to compel production of complete copies of these documents with the notations and/or notes reinserted.  As the Board has previously stated, the factual source materials were produced to Ambac in the form the Board received them.  The Board maintains the notations have no bearing on whether any account is or is not

and identify from those materials documents underlying the Duff & Phelps Report that relate to nine categories of bank accounts previously identified by Ambac that, per the February 2020 Amended Disclosure Statement and/or the December 2020 Presentation, purportedly contain restricted funds; and (ii) for documents regarding any previous, ongoing, completed, or contemplated efforts to obtain external financing for the PREPA/LUMA transaction discussed in the December 2020 Presentation and the March 2021 Disclosure Statement.  The Parties have no further updates on these issues at this time, and Ambac continues to reserve all rights to seek judicial intervention to compel discovery with respect to the foregoing issues.

14.     During the April 14 Meet-and-Confer, the Parties reached an impasse regarding certain of Ambac's requests related to the December 2020 Presentation, including Ambac's requests regarding:  (i) monies classified as "potentially inaccessible[,]" "potentially unavailable[,]" or "unreviewed" in the December 2020 Presentation; (ii) COVID-19 and disaster-related expenses incurred by the Commonwealth that could potentially be reimbursed using federal funds; and (iii) the Commonwealth's $750 million disaster aid revolver.  Ambac reserves all rights to seek judicial intervention to compel discovery with respect to the foregoing issues.

## III.    PROPOSED NEXT STEPS

15.     As set forth below, Ambac and the Government Parties disagree as to whether the Parties should continue to meet-and-confer and submit joint status reports regarding Ambac's cash- and assets-related requests.

### A.    Ambac's Position

16.     Ambac believes that the Parties should continue to meet-and-confer and submit joint status reports regarding Ambac's cash- and assets-related requests that are unrelated to the

---

restricted, and therefore, the notations are not relevant to Ambac's understanding of the cash restriction analysis.

New Rule 2004 Motions,[10] and would propose to have an additional meet-and-confer no later than May 5, 2021 and to submit a further status report to the Court no later than May 7, 2021.

17.     The Government Parties' attempt to unilaterally cut off Rule 2004 discovery is inappropriate.  As noted above and addressed more fully in Ambac's reply in support of the New Assets Rule 2004 Motion (ECF No. 16085), the Court (Swain, J.) has already rejected the Board's argument that the mere filing of a plan of adjustment renders Rule 2004 discovery inappropriate. (Memorandum Order at 8 (rejecting the Government Parties' argument "that the mere pendency of a plan proposal constitutes initiation of a contested matter precluding the use of Rule 2004")).) Indeed, Judge Swain expressly held that "Rule 2004 discovery is the appropriate mechanism for use by creditors to obtain information concerning the financial health of the debtor" in this procedural context.  (*Id.* at 8-9.)  This rings all the more true given that the Board has indicated that a further amended plan of adjustment is forthcoming.

18.     Furthermore, it would be far more efficient to continue Rule 2004 discovery now rather than kicking the can down the road to a time when the Parties will be focused on plan confirmation discovery on numerous additional issues in an extremely compressed time period.[11]

---

[10] "New Rule 2004 Motions" refers, collectively, to the New Cash Rule 2004 Motion and the New Assets Rule 2004 Motion.

[11] In a footnote *infra*, the Board suggests that the requests in Ambac's New Rule 2004 Motions—which have been fully-briefed and pending before the Court since January 20, 2021 and March 16, 2021, respectively—should be pursued in connection with plan confirmation discovery.  To the extent the Board is suggesting that the Court deny the motions on this basis, it is difficult to imagine a more wasteful approach.  The Parties already met-and-conferred and reached an impasse on those issues, and a total of eight separate briefs were filed in connection with the New Rule 2004 Motions, each of which required substantial expenditures of time and resources.  Those motions are ripe for ruling on their merits.  To the extent the Government Parties are taking the position that any discovery granted in connection with the New Rule 2004 Motions should be pursued in connection with plan confirmation discovery, Ambac likewise disagrees and believes that would do nothing more than create an unnecessary, months-long delay, for the reasons discussed above.

The Parties should use the time they have now to address these issues, with any disputes raised with the Court.

19.     Notably, as discussed in Ambac's DS Scheduling Objection[12]—and as apparently conceded by the Board *infra*—the Board is contemplating ***no*** discovery in connection with its disclosure statement, presumably pushing all discovery to the confirmation phase, for which it has not even proposed a schedule.  That would mean that, if the Board were to have its way, there would be no further discovery for a period of at least several months, presumably after approval of a disclosure statement.  At that point, the Parties would essentially have to re-start discovery, with Ambac serving discovery requests, waiting for the Government Parties to respond, and then engaging in meet-and-confers on the very issues which the Parties have already been addressing in the Rule 2004 process (and as to many of which they have already reached an impasse).  There is no sense in that approach, particularly in light of all the other significant confirmation-related issues that will need to be addressed at that time.

20.     The Board's contention that combining all discovery in a single process that involves all parties-in-interest fares no better.  Among the Commonwealth's creditors, Ambac has taken the lead on cash- and assets-related discovery, expending enormous resources in doing so, and all of the materials Ambac has received have been shared with creditors that have joined Ambac's cash- and assets-related motions.  If the Board wants to ensure all parties-in-interest have access to the materials it produces, it could easily accomplish that goal by posting the materials in

---

[12] "Ambac's DS Scheduling Objection" refers to the *Objection of Ambac Assurance Corporation to Debtors' Joint Motion for an Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief* (ECF No. 16395).

the centralized electronic document depository it has proposed to create for disclosure-statement related materials.

21.     The Parties should be making every effort to further these proceedings as much as possible, and there is nothing to be gained by halting Rule 2004 discovery only so that similar discovery can recommence in a different form months down the line, when the Parties are jammed on confirmation-related issues.  For these reasons, Ambac requests that the Court issue an order requiring the Parties to have an additional meet-and-confer no later than May 5, 2021 and to submit a further status report to the Court no later than May 7, 2021.[13]

### B.     The Government Parties' Position

22.     To date, the Board has provided Ambac substantial discovery regarding the Commonwealth's cash accounts and the Board's cash restriction analysis.  As Ambac requested in its initial Cash Motion, which was denied without prejudice on November 12, 2020 (ECF No. 15093), the Board produced over 14,280 factual source materials and raw data underlying the Duff & Phelps Report and the October 2019 Presentations.  In response to follow-up requests from Ambac, the Board has produced over 6,200 factual source materials and raw data underlying subsequent iterations of its cash restriction analysis, including the February 2020 Amended Disclosure Statement and the December 2020 Presentation, and will produce factual source materials and raw data underlying the March 2021 Disclosure Statement (to the extent not already produced).  In response to additional follow up requests from Ambac, the Board also produced Calculation Back-Up materials underlying each iteration of its cash restriction analysis, and as a courtesy to Ambac, voluntarily undertook to prepare a "key" identifying the Ernst & Young

---

[13] To the extent the Court agrees with the Board's position, that would be all the more reason for the commencement of plan- and disclosure statement-related discovery immediately upon the filing of the Board's motion to approve the disclosure statement, to occur in an efficient, streamlined process to avoid creditors once again being prevented from getting relevant discovery in a timely manner.

identifier assigned to each account reviewed in connection with its ongoing cash restriction analysis, as well as an attempt to identify the corresponding identifier assigned to those accounts by Duff & Phelps.  Once the Board's production of documents underlying the March 2021 Disclosure Statement is complete, the Board will have not only produced to Ambac the materials it requested in its initial Cash Motion, but also substantively addressed each of Ambac's follow up requests.  Most importantly, the Board will have produced all of the materials its counsel considered in reaching their determinations as to what cash held in Commonwealth bank accounts is and is not restricted, thereby enabling Ambac's counsel to conduct the same review, make their own determinations and engage with the Board on any areas of disagreement.

23.   AAFAF has produced more than 500 documents, which contain information regarding nearly 20,000 individual real property assets.  AAFAF has produced all documents it agreed to produce in response to Ambac's asset requests—there are no open issues on which AAFAF and Ambac are continuing to meet and confer.

24.   Given positive developments to exit the Commonwealth from Title III, the Board believes further or additional Rule 2004 discovery with a limited subset of the Commonwealth's creditors is not appropriate.  As the Court is aware, on March 8, 2021, the Board filed the Second Amended Plan and the Second Amended Disclosure Statement,[14] and on April 6, 2021, the Board filed the DS Scheduling Motion,[15] which contemplates the creation of a depository containing

---

[14] "Second Amended Plan" refers to the *Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 15976), and "Second Amended Disclosure Statement" refers to the *Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (ECF No. 15977).

[15] "DS Scheduling Motion" refers to the *Debtors' Joint Motion for an Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III) Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief* (ECF No. 16332).

factual source materials underlying the Second Amended Disclosure Statement.  In the next few weeks, the Board expects to file both a third amended plan and disclosure statement and motions to, among other things, approve the disclosure statement for the third amended plan and set a confirmation schedule.  The Board believes that, to promote efficiency and to conserve both party and judicial resources, further discovery should be conducted in accordance with a plan confirmation schedule and in coordination with all parties-in-interest.  Coordinated discovery will avoid the need for the Government Parties to simultaneously respond to Rule 2004 requests and plan-related discovery requests on overlapping issues, and will ensure that all parties-in-interest have access to relevant discovery materials.  As noted in paragraph 10, the Court is not being asked to order the termination of Rule 2004 discovery because no motions are currently pending before the Court aside from the New Cash and Asset Motions.[16]  Although Ambac is asking the Court to order another meet and confer and status report, the Board believes that relief is not necessary because the Board and AAFAF have already responded to Ambac's inquiries.  Accordingly, the Board believes that there is no need to further meet and confer with Ambac on its initial Cash and Asset Motions or to file further status reports.[17]

---

[16] Should the Court determine that an affirmative motion is appropriate, the Board will bring such motion promptly.

[17] As noted above, Ambac's New Cash Rule 2004 Motion and New Assets Rule 2004 Motion are fully briefed and remain *sub judice*.  For the reasons noted in the Board's and AAFAF's oppositions, the Board believes both motions should be denied.  Further, to the extent the Court believes the issues raised by the motions are relevant to confirmation, Ambac may pursue its requests in connection with confirmation discovery.

Dated:  April 16, 2021
         San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
      Roberto Cámara-Fuertes (USDC-PR No.
      219002)
      Sonia Colón (USDC-PR No. 213809)
      221 Ponce de León Avenue, 5th Floor
      San Juan, PR 00917
      Telephone: (787) 766-7000
      Facsimile:  (787) 766-7001
      Email:  rcamara@ferraiuoli.com
              scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
      Dennis F. Dunne (admitted *pro hac vice*)
      Atara Miller (admitted *pro hac vice*)
      Grant R. Mainland (admitted *pro hac vice*)
      John J. Hughes, III (admitted *pro hac vice*)
      Jonathan Ohring (admitted *pro hac vice*)
      55 Hudson Yards
      New York, NY 10001
      Telephone: (212) 530-5000
      Facsimile:  (212) 530-5219
      Email: ddunne@milbank.com
             amiller@milbank.com
             gmainland@milbank.com
             jhughes2@milbank.com
             johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**PROSKAUER ROSE LLP**

By: /s/ *Martin J. Bienenstock*
     Martin J. Bienenstock
     Margaret A. Dale
     Michael T. Mervis
     Julia D. Alonzo
     Laura Stafford
     (Admitted *Pro Hac Vice*)
     Eleven Times Square
     New York, NY 10036
     Tel: (212) 969-3000
     Fax: (212) 969-2900

**O'NEILL & BORGES LLC**

By: /s/ *Hermann D. Bauer*
     Hermann D. Bauer (USDC No. 215205)
     250 Muñoz Rivera Ave., Suite 800
     San Juan, PR 00918-1813
     Tel: (787) 764-8181
     Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board as representative of the Commonwealth*

**O'MELVENY & MYERS LLP**

By: /s/ *Peter Friedman*
     John J. Rapisardi
     Times Square
     New York, NY 10036
     Tel: (212) 326-2000
     Fax: (212) 326-2061
     Email: jrapisardi@omm.com

     -and-

     Peter Friedman
     1625 Eye Street, NW
     Washington, DC 20006
     Tel: (202) 383-5300
     Fax: (202) 383-5414
     Email: pfriedman@omm.com

     -and-

     Elizabeth L. McKeen
     Ashley M. Pavel
     610 Newport Center Drive
     17th Floor
     Newport Beach, California 92660
     Tel: (949) 823-6900
     Fax: (949) 823-6994
     Email: emckeen@omm.com
          apavel@omm.com

**MARINI PIETRANTONI MUÑIZ LLC**

By: /s/ *Luis C. Marini-Biaggi*
     Luis C. Marini-Biaggi
     USDC No. 222301
     Email: lmarini@mpmlawpr.com
     Carolina Velaz-Rivero
     USDC No. 300913
     250 Ponce de León Ave.
     Suite 900
     San Juan, Puerto Rico 00918
     Tel: (787) 705-2173
     Fax: (787) 936-7494
     lmarini@mpmlawpr.com
     cvelaz@mpmlawpr.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email: rcamara@ferraiuoli.com