# **EXHIBIT A**

**Proskauer»**  Proskauer Rose LLP    Eleven Times Square    New York, NY 10036-8299

March 30, 2021

Margaret A. Dale
Member of the Firm
d +1.212.969.3315
f 212.969.2900
mdale@proskauer.com
www.proskauer.com

**VIA E-MAIL**
John J. Hughes III, Esq.
Jonathan Ohring
Milbank LLP
55 Hudson Yards
New York, NY 10001-2163

Re: **Commonwealth Cash Rule 2004 Requests**

Counsel:

I write (i) further to my correspondence dated February 10, 2021; (ii) in response to your February 25, 2021 letter (the "February 25 Letter") and your March 19, 2021 letter (the "March 19 Letter"), and (iii) to address the parties' recent meet and confer discussions, including the meet and confers held on March 2, 2021 and March 23, 2021.

1. ***Categories 1 and 2 (Documents relied upon in connection with certain October 2, 2019 presentations and in connection with Duff & Phelps' and/or Ernst & Young's investigations).***

    ***Inventory of Central Government's Bank Accounts.*** As explained on the parties' March 2 meet and confer, the Oversight Board has identified an updated inventory of central government bank accounts utilized in the cash restriction analysis. That inventory was produced on March 22.

    ***Calculation Back-Up for February 2020 Amended Disclosure Statement.***[1] As the Oversight Board also explained on the March 2 meet and confer, the Oversight Board has located Calculation Back-Up Material for the portion of the February 2020 Amended Disclosure Statement that relates to the cash restriction analysis. That Calculation Back-Up Material was also produced on March 22, with Bates number Ambac_Cash_2004_002_0044578.

    ***Categories of Bank Accounts Containing Restricted Funds.*** Ambac's November 25, 2020 and January 11, 2021 letters requested the Oversight Board produce documents supporting its restriction classifications regarding nine specific categories of bank accounts. In response, the Oversight Board agreed to identify documents in its productions that are relevant to the nine categories of bank accounts identified by Ambac, and it did so in its February 10, 2021 letter.

---

[1] "February 2020 Amended Disclosure Statement" refers to the *Disclosure Statement for the Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 11947].

**Proskauer»**

March 30, 2021
Page 2

Ambac now requests the Oversight Board identify documents underlying the Duff & Phelps Report that are related to the nine categories of bank accounts. As the Oversight Board explained on the March 2 and March 22 meet and confers, it is not obligated to review and categorize its production for Ambac. The Oversight Board's agreement to identify certain documents underlying those accounts was not intended to be a substitute for Ambac's own review of the Oversight Board's production. Ambac is capable of identifying documents relating to the nine categories of bank accounts by running its own targeted searches of the Oversight Board's productions. Accordingly, the Oversight Board declines to identify for Ambac documents underlying the Duff & Phelps Report that are related to the nine categories of bank accounts.

***December 2020 Presentation.*** The Oversight Board produced factual source materials and raw data underlying the December 2020 mediation presentation on March 5, 2021 and March 22, 2021. As with its earlier productions of factual source materials, 21 of those documents contained the Oversight Board's advisors' internal notes. Those notes were removed prior to production.

In the February 25 Letter, Ambac also requested documents regarding the eight numbered topics identified below. As the Oversight Board indicated on the March 22 meet and confer and in the parties' March 26 joint status report, the Oversight Board believes that further discovery requests should be made in accordance with a plan confirmation schedule and conducted in coordination with all parties-in-interest. Accordingly, while the Oversight Board is willing to respond to follow up questions regarding the discovery it has already committed to provide, it is not willing to respond to requests that exceed the scope of the documents and information it has previously agreed to provide.

1. *Documents regarding "potentially inaccessible" funds, including (without limitation) documents concerning: (i) why the Board, AAFAF, and/or their advisors contend that ~$8.1 billion in funds held by public corporations are "potentially inaccessible[;]" (ii) any legislation considered, proposed, or enacted for the purpose of enabling the Commonwealth to access funds held by public corporations; and (iii) why Commonwealth funds appropriated or transferred to public corporations have not been clawed back by, or otherwise transferred back to, the Commonwealth. (See December 2020 Presentation at 8, 11-16.)*

    a. The Oversight Board is not aware of non-privileged documents (*i.e.*, documents not protected by either the attorney-client or deliberative process privileges) regarding "potentially inaccessible" funds, which is a determination based upon legal analysis performed by counsel. That said, under Puerto Rico law, public corporations are distinct legal entities, separate from the Commonwealth Government, created by statute or pursuant to statutory authority. With respect to legislation enabling the Commonwealth to access funds held by public corporations, as Ambac is aware, Act 26-2017 contemplates potential access to funds held by public corporations. The Oversight Board is not in a better position than Ambac to understand what

**Proskauer»**

March 30, 2021
Page 3

> legislation has been considered or proposed. Further, Ambac's request for documents regarding why funds have not been "clawed back" by or otherwise transferred to the Commonwealth is not within the legitimate scope of Rule 2004 discovery or within the scope of the documents the Oversight Board already has agreed to provide.

2. *Documents regarding "potentially unavailable" funds, including (without limitation) documents concerning why the Board, AAFAF, and/or their advisors contend that: (i) $540 million in Commonwealth funds are "potentially unavailable[;]" and (ii) $151 million in funds held by public corporations are "potentially unavailable[.]" (See id. at 8, 18.)*

    a. We are not presently aware of any non-privileged documents (*i.e.*, documents not protected by either the attorney-client or deliberative process privileges) regarding these categorizations.

3. *Documents regarding why the Board, AAFAF, and/or their advisors contend that the $208 million in "unreviewed" Commonwealth funds should not be classified as unrestricted and potentially be made available to compensate the Commonwealth's creditors. (See id. at 7, 9.)*

    a. The Oversight Board, AAFAF, and their advisors have made no such determination or classification. Notably, the unreviewed accounts represent only approximately 1% of the cash held by the Commonwealth, ERS, and PBA, spread over several hundred accounts.

4. *Documents regarding why the Commonwealth is not using any of the $3.8 billion in federal COVID-related funds it has received to reimburse itself for the $392 million fully reimbursable and $44 million partially reimbursable expenses it incurred in connection with the COVID-19 pandemic. (See id. at 50.)*

    a. This request is not within the legitimate scope of Rule 2004 discovery or within the scope of the documents the Oversight Board already has agreed to provide.

5. *Documents regarding: (i) why the Commonwealth has not used the $92 million held in BPPR -6373 that, at least in part, is comprised of "[f]unds provided by FEMA for disaster relief use[,]" to reimburse disaster-related expenses incurred by the Commonwealth; and (ii) why the Puerto Rico Public Buildings Authority ("PBA") has not used the $10 million it holds, that is purportedly "reserved for FEMA disaster relief funds," to reimburse disaster-related expenses incurred by PBA. (See id. at 12, 39.)*

    a. This request is not within the legitimate scope of Rule 2004 discovery or within the scope of the documents the Oversight Board already has agreed to provide.

3

**Proskauer»**

March 30, 2021
Page 4

6. *Documents regarding why $293 million in Commonwealth funds held by the Office of Court Administration ("OCA") are classified as restricted while an additional $72 million in Commonwealth funds held by OCA are classified as unrestricted. (See id. at 9.)*

    a. Documents regarding the Oversight Board's restriction classifications with respect to these accounts have been produced. If Ambac does not agree with the Oversight Board's determination that certain accounts held by the OCA are restricted, the Oversight Board is willing to engage with Ambac on that issue.

7. *Documents regarding the portion of the $476 million expensed from the Commonwealth's emergency reserve that may qualify for FEMA reimbursement, including (without limitation) documents reflecting any previous, ongoing, completed, or contemplated efforts by the Commonwealth to seek or obtain FEMA reimbursement for such expenses. (See id. at 25.)*

    a. This request is not within the legitimate scope of Rule 2004 discovery or within the scope of the documents the Oversight Board already has agreed to provide.

8. *Documents regarding any previous, ongoing, completed, or contemplated efforts to obtain external financing for the Commonwealth's Disaster Aid Revolver, including any analysis comparing the costs associated with funding the Commonwealth's Disaster Aid Revolver using external financing and Commonwealth funds.*

    a. This request is not within the legitimate scope of Rule 2004 discovery or within the scope of the documents the Oversight Board already has agreed to provide.

***October 30, 2020 Presentation.*** Ambac has asked for clarification regarding purported discrepancies between the October 30, 2020 presentation and the December 2020 Presentation with respect to the: "(i) total amount of cash and investments held by the Commonwealth; (ii) funds held by Commonwealth public corporations; (iii) 'Adjusted Cash Balance as of 6/30/2020[;]' and (iv) 'FY20 ending cash balance[.]'"

1. *"Total amount of cash and investments held by the Commonwealth"*: The change from $24.075 billion to $24.740 billion in cash and investments held by the Commonwealth and the public corporations is attributable to the addition of funds for certain agencies ($709 million in funds for an account at ERS, $18 million for an account at Puerto Rico Housing Finance Authority and $5 million for an account at the Department of Housing) into the cash analysis based on newly obtained information, as well as the reduction of $67 million in funds held in an HFA account that was confirmed to be duplicative. The $709 million in funds at ERS comprise employee Defined Contribution withholdings that, as of the dates of the October 2019

4

**Proskauer»**

March 30, 2021
Page 5

>    Presentations and the February 2020 Disclosure Statement, were maintained in a segregated account at Hacienda. These funds were moved to a new account opened at Banco Popular on ERS's behalf in June 2020. However, as of the date of the October 30, 2020 Presentation, the Oversight Board had not yet received bank account statements confirming the transfer of funds into ERS's account, and for that reason, those funds were not included in the October 30, 2020 Presentation. With respect to the $18 million account at HFA and the $5 million account at Department of Housing, each of these accounts were previously reported to the Oversight Board as having been closed in July 2019 and June 2019, respectively. It was subsequently learned that these accounts were dormant, not closed. Once the account holder began reusing the account and reported the balance to the Oversight Board, the account was incorporated into subsequent iterations of the cash restriction analysis.
>
> 2. *"Funds held by Commonwealth public corporations"*: The change in assumed inaccessible cash held by public corporations is attributable to the increase of $709 million in funds held at ERS and the net reduction of $49 million in funds held at HFA.
>
> 3. *"Adjusted Cash Balance as of 6/30/2020"*: The change from $10.027 billion to $10.320 billion is due to the addition of $5 million in an account held by the Department of Housing, which was recorded as "Not Reviewed" in light of the due diligence threshold. Also, the December 2020 Presentation provided the "Adjusted Cash Balance as of 6/30/2020" on page 7 without incorporating the Timing Adjustment items and Emergency Reserve in order to reconcile to the total "Potential Eligible POA Cash" amount provided on page 8. The effects of the Timing Adjustment items and Emergency Reserve are incorporated after determining the "Adjusted Cash Balance as of 6/30/2020" for page 7 of the December 2020 Presentation.
>
> 4. *"FY20 Ending Cash Balance"*: The Oversight Board assumes this question relates to the FY21 Ending Cash Balance, not the FY20 Ending Cash Balance. The change from $10.470 billion to $9.557 billion is attributable to changes in the Timing Adjustment. As of the date of the October update, the analyses for the Timing Adjustment were not yet complete. Values taken into consideration for the Timing Adjustment increased because: (a) $935 million of FY20 appropriations were approved to be extended into FY21 for specific uses, and (b) the deferred revenue for FY20 to be collected in FY21 was originally an estimate of $400 million as of the October 2020 Presentation and increased to $480 million by December 2020.

Ambac has also asked whether the Oversight Board considers the October 30, 2020 presentation to be an "iteration" of the cash restriction analysis. The October 30, 2020 presentation contains certain high-level information regarding cash restrictions, but it does not include account-level detail, and accordingly, the Oversight Board does not consider it a separate iteration of the cash restriction analysis.

# Proskauer»

March 30, 2021
Page 6

      ***March 2021 Disclosure Statement.***[2] The Oversight Board produced Calculation Back-Up Materials relating to the March 2021 Disclosure Statement on March 25. As stated on the March 2 and March 23 meet and confers, the Oversight Board is willing to produce factual source materials and raw data underlying the March 2021 Disclosure Statement, including Exhibit J thereto.

      The March 19 Letter also requests (1) "production of the 'over 1,800 newly obtained documents from governmental entities regarding account classifications' that were reviewed in connection with the March 2021 Disclosure Statement"; (2) confirmation that the "over 9,000 documents provided by financial institutions, agencies, and other government entities" have been or will be produced, as well as clarification regarding the purported "discrepancy" between the 9,000 documents referenced in the March 2021 Disclosure Statement and the 16,000 documents produced to date in connection with Ambac's Cash 2004 Motion; and (3) "documents regarding any previous, ongoing, completed, or contemplated efforts to obtain external financing for the PREPA/LUMA transaction."

      The "over 1,800" documents regarding account classifications referenced in the March 2021 Disclosure Statement either have already been produced as part of the Oversight Board's productions of factual source materials and raw data underlying each iteration of the cash restriction analysis, or will be produced in connection with the Oversight Board's production of factual source materials underlying Exhibit J to the March 2021 Disclosure Statement.

      Likewise, the "over 9,000" documents provided by financial institutions, agencies, and other government entities have either already been produced, or will be produced in connection with the Oversight Board's forthcoming production. Further, the "over 9,000 documents" discussed in the March 2021 Disclosure Statement are the documents collected, reviewed, and processed by EY, in conjunction with Proskauer, O'Neill, and the Oversight Board, as part of the ongoing cash restriction analyses prepared following publication of the Duff & Phelps Report. At Ambac's request, the Oversight Board also produced several thousand additional documents underlying the now-superseded Duff & Phelps Report.

      With respect to the PREPA/LUMA transaction, as stated on the March 23 meet and confer, documents regarding the PREPA/LUMA transaction, including whether there are or have been any efforts to obtain external financing, are not within the scope of the materials the Oversight Board has agreed to provide in connection with Ambac's Cash 2004 Motion.

    2. *Category 4 (Document key).*

      The Oversight Board produced the "key" requested by Ambac on March 25. The "key" identifies the EY identifier assigned to each account reviewed in connection with the cash restriction analysis, to the extent an EY identifier was assigned to a particular account. For each

---

[2] "March 2021 Disclosure Statement" refers to the *Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (Corrected)* [ECF No. 15988].

**Proskauer»**

March 30, 2021
Page 7

account to which an EY identifier was assigned, the "key" also attempts to identify the D&P identifier assigned to that account. The mapping of D&P identifiers to EY identifiers was prepared based on the information presently available, and the Oversight Board makes no representations as to the accuracy or completeness of the "key."

Sincerely,

*/s/ Margaret A. Dale*

Margaret A. Dale