# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00005-LTS |

**JOINT STATUS REPORT REGARDING DISCOVERY
IN THE REVENUE BOND ADVERSARY PROCEEDINGS**

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

Ambac Assurance Corporation ("Ambac"), Financial Guaranty Insurance Company ("FGIC"), Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, "Assured"), National Public Finance Guarantee Corporation ("National"), The Bank of New York Mellon ("BNYM"), U.S. Bank Trust National Association ("U.S. Bank", and collectively with Ambac, FGIC, Assured, National, and BNYM, the "Defendants"), and the Financial Oversight and Management Board for Puerto Rico (the "Board"), as Title III representative of the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and the Government Entities[2] (together, with Plaintiff, the "Government"), respectfully submit this joint status report in response to the Court's Order dated February 5, 2021 (ECF No. 15809) regarding discovery in the adversary proceedings (the "Adversary Proceedings") regarding bonds issued by the Puerto Rico Infrastructure Finance Authority ("PRIFA"), the Puerto Rico Convention Center District Authority ("CCDA"), and the Puerto Rico Highways and Transportation Authority ("HTA").

## JOINT REPORT

## I.   PROCEDURAL BACKGROUND

1.   This Joint Status Report is submitted pursuant to the Court's February 5, 2021 *Order Setting Discovery Schedule* (ECF No. 15809) (the "February 5 Scheduling Order").

---

[2] "Government Entities" refers to the Commonwealth's agencies and instrumentalities on which Defendants served subpoenas in these Adversary Proceedings, including the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Puerto Rico Government Development Bank, the Puerto Rico Department of Treasury, HTA, PRIFA, CCDA, and the Puerto Rico Tourism Company. The Commonwealth, by and through the Board, as its Title III representative in these cases is the "Plaintiff." Unless otherwise indicated, all ECF numbers referenced herein refer to the docket in Case No. 17 BK 3283-LTS.

2.      Following briefing on *Defendants' Motion to Compel Document Discovery from the Government in the Revenue Bond Adversary Proceedings* (ECF No. 15914) (the "Motion to Compel"), a hearing on March 17, 2021, and the submission of the Parties' respective proposed orders in connection therewith (ECF Nos. 16167, 16168), the Court entered its order resolving the Motion to Compel on March 26, 2021 (the "Motion to Compel Order") (ECF No. 16326).

3.      Certain deadlines in the February 5 Scheduling Order were recently extended by 12 days in the Court's *Order Modifying Discovery Schedule* (ECF No. 16365) (the "April 8 Scheduling Order").   Under the current schedule, the Government's deadline to complete its document production is April 26, 2021, and the deadline for the completion of fact discovery is May 19, 2021.

## II.    THE PARTIES' PROGRESS SINCE THE MOTION TO COMPEL ORDER

4.      Since the Motion to Compel Order, the Parties have continued to exchange correspondence[3] and met-and-conferred telephonically on April 15, 2021 (the "April 15 Meet-and-Confer").  The status of the Parties' discussions and of the discovery efforts generally is as follows.

### A.    Document Discovery

5.      To date, the Government has made two productions of documents, on March 16 and March 30, 2021.  Those productions have consisted of, among other things, bank account statements relating to each of the three credits, and raw accounting data, as detailed below.  During the April 15 Meet-and-Confer, the Government advised that additional productions will be forthcoming and that the Government currently anticipates completing its production by the April

---

[3] (*See* Ex. A, Ltr. from Elizabeth L. McKeen to Robert S. Berezin, *et al.* (Mar. 30, 2021); Ex. B, Ltr. from Elizabeth L. McKeen to Robert S. Berezin, *et al.* (Apr. 6, 2021); Ex. C, Ltr. from John J. Hughes, III to Michael A. Firestein, *et al.* (Apr. 14, 2021).)

26, 2021 deadline, but that it is not in a position at this time to provide a more specific timeframe or to estimate the volume of additional information still to be produced.

6.    **Disclosures Regarding Scope of Searches.**  On April 6, 2021, the Government Entities provided certain disclosures required by paragraphs 1, 4, and 6 of the Motion to Compel Order concerning the parameters of the search undertaken by Government Entities, including the locations and custodians searched and the search terms applied.  (*See* Ex. B.)  On April 14, 2021, Defendants responded to the Government Entities' April 6 letter, following up on certain outstanding requests and providing a list of additional custodians that they believe are likely to have relevant information.  Defendants also provided a list of search terms that they asked the Government to consider.  (*See* Ex. C.)

7.    During the April 15 Meet-and-Confer, the Government requested that Defendants revise their proposed search terms because of concerns that some terms would identify irrelevant material.  Defendants agreed to do that.  The Government agreed to investigate the custodians identified by Defendants.  The Parties are continuing their discussions on these issues.

8.    **Audit Files and Work Papers.**  In the Motion to Compel Order, the Court ordered the Government to "search for and produce documents . . . including documents in audit files or work papers" in connection with both PRIFA and HTA.  (Motion to Compel Order at 5, 7-8.)  The Government has not yet made a production in response to this request but is in the process of collecting documents from its own records and coordinating with auditors for the Commonwealth, PRIFA, and HTA to collect documents to comply with the order.  The Government currently estimates those efforts will be complete by the April 26, 2021 deadline.

9.    **Accounting Data.**  In the Motion to Compel Order, the Court ordered that the Parties meet-and-confer regarding the specific parameters the Government is using to search

PRIFAS (its internal accounting and financial controls system), that the Government provide information about the types of reports and data that can be generated using PRIFAS, and that the Government consider in good faith requests made by Defendants regarding different or additional search terms. (Motion to Compel Order at 10.) The Government has produced the PRIFAS data for all transactions coded with Fund 278, revenue account code R4220, and expense code E6120 from January 1, 2014 onward. The Government agreed to provide the text of the queries that were used to generate the extracts the Government previously produced. The Government states that it has produced a data dictionary for PRIFAS and manuals explaining the use and purpose of various fields in PRIFAS. The Government has agreed to confirm with the Puerto Rico Treasury that there are no further documents identifying the data and fields available in PRIFAS beyond what have been already provided. Defendants believe additional information should be provided regarding the types of reports and data that can be generated using PRIFAS, and the Parties have agreed to continue discussing these issues.

### B.    Depositions

10.    On March 23, 2021, pursuant to the Rule 56(d) Scheduling Order, Defendants served notices of Rule 30(b)(6) depositions on the Government, and the Government served their responses and objections thereto on April 6, 2021. At the April 15 Meet-and-Confer, the Parties discussed certain disagreements over the allowable scope of Rule 30(b)(6) testimony. The Parties plan to continue to meet-and-confer over any disagreements regarding the scope and schedule of any depositions.

11.    Defendants intend to serve notices of individual fact witness depositions when the Parties conclude their discussions regarding document custodians. The Government does not concede that individual fact witness depositions of current or former government employees in addition to 30(b)(6) testimony from the entities that employ them would be appropriate or

consistent with this Court's directive that discovery be limited, targeted, proportional, or efficient. The Government, including Plaintiff, reserves all rights as to this issue.

### C.     Third-Party Discovery

12.     As noted in the last status report, Defendants also issued subpoenas *duces tecum* to third parties in connection with the Adversary Proceedings, including (i) banks at which relevant accounts were held, (ii) law firms that represented either PRIFA, HTA, CCDA, or underwriters in connection with those instrumentalities' bond issuances, (iii) accounting firms that audited the Commonwealth's or instrumentalities' financial statements, and (iv) in the PRIFA Adversary Proceeding, rum producers.

13.     Approximately fifteen entities have produced some responsive documents.  Several subpoenas (principally subpoenas addressed to banks) have already been complied with, and no follow-up requests are pending.  Defendants continue to meet-and-confer with a few remaining banks, as well as law firms, accounting firms, and rum producers, to resolve open issues.

14.     During the April 15 Meet-and-Confer, the Parties discussed a dispute concerning the third-party subpoenas, which is addressed in the Parties' respective statements below.

## III.     NEXT STEPS

15.     The Parties propose to submit another status report on April 29, 2021.

### DEFENDANTS' STATEMENT

## I.     RESERVATION OF RIGHTS CONCERNING SCHEDULE

16.     Defendants appreciate the Government's efforts to collect and produce documents to date.  Defendants note that a number of document requests remain outstanding, including the audit files and work papers that this Court ordered be produced in its Motion to Compel Order. The Government indicated during the April 15 Meet-and-Confer that it does not know the

remaining volume of information left to be produced, and does not currently have an expected timeframe for completing the remaining productions.

17. Defendants have informed the Government that receiving a substantial production of documents in the final days of the document discovery period would not leave Defendants sufficient time to translate Spanish-language documents, review the production, and prepare adequately for depositions. Defendants are asking the Government to continue to make rolling productions to the fullest extent possible.

18. As detailed below, Defendants also understand that the Government's insistence on reviewing third party documents is delaying the production of those materials by the subpoenaed third parties. Separate from questions regarding the propriety of the Government's actions in this regard, which are discussed below, the Government's actions are creating a bottleneck, putting pressure on the back-end of the discovery timeline. In considering the amount of time needed for depositions, Defendants assumed that the vast majority of the materials requested would be produced early in the process. Defendants are not seeking any change to the schedule at this time, but will continue to discuss timing with the Government and reserve the right to request a reasonable adjournment if it proves necessary.

## II. GOVERNMENT'S IMPROPER INTERFERENCE WITH SUBPOENAS SERVED BY DEFENDANTS ON THIRD PARTIES[4]

19. Earlier this week, Defendants learned that the Government has communicated with third parties that Defendant had served with subpoenas for the purpose of instructing those entities not to produce certain information responsive to the subpoenas. Defendants understand that, in certain instances, the Government has insisted on actually reviewing the responsive materials

---

[4] Assured and National, who are in the process of negotiating documentation concerning potential resolution of these cases, do not join in this section of Defendants' Statement, but reserve all rights with respect to the issues addressed herein.

collected by the third parties before allowing them to be produced. The Government's communications were not limited (as they should have been, under the applicable rules) to advising third parties of the Government's position on privileges controlled by the Government, or advising the third parties of any plans by the Government to file a motion to modify or quash the subpoenas. Instead, without notice to Defendants or authorization from the Court, the Government directed third parties to withhold documents based on the Government's subjective view of the appropriate scope of discovery.

20.    As described below, the Government declined to answer questions from Defendants regarding the Government's communications with subpoenaed entities at the April 15 Meet-and-Confer. As a result, Defendants do not yet have all the facts regarding the extent to which the Government interfered (and is continuing to interfere) with Defendants' effort to obtain information through third-party subpoenas. Accordingly, Defendants are asking that the Court direct the Government to disclose the substance of any communications it has had with subpoenaed entities, as well as which entities' documents it is reviewing.

21.    In its response below, the Government did not deny any specific factual assertions, instead merely asserting vaguely that Defendants are wrong about the facts or inferences to draw from them. But even if true, that weighs in favor of, not against, the relief that Defendants are requesting: disclosure of the communications so all parties and the Court are in a position to understand what happened.

### A.    Legal Standards

22.    A subpoena is a writ (a court order) issued by the clerk of court or counsel of record acting as an officer of the court. Failure to comply with a subpoena is "an act in defiance of a court order [that] exposes the defiant witness to contempt sanctions." Fed. R. Civ. P. 45, advisory committee's note, 1991 amendment. Rule 45 allows the person who receives a subpoena, and a

party to the litigation who "has a personal right or privilege to the information sought" in the subpoena, to protect their interest through a motion to quash or modify. *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 793-94 (E.D. Pa. 2012). Such motions are done on notice to all parties. Ultimately, the subpoena's scope is the prerogative of the Court, not that of any individual litigant.

23.     A litigant is not free to simply suggest to third parties that they should not comply with the subpoena. *Id.* Even sending letters "advising" subpoenaed entities of potential objections they might make is "willful bad faith" conduct, as *Price* illustrates:

> Nowhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command. Yet, that is exactly what happened here. [Plaintiff's counsel] took it upon himself to limit or attempt to 'quash' the subpoenas by sending his Advice Letters [which listed potential overbreadth, relevance, and privacy objections to the subpoenas]. In doing so he arrogated to himself a power assigned to the Court under the Rule. The violation is clear and it is sanctionable.

*Id.* Other courts have similarly ruled that e-mails "asking the non-parties to 'not prepare any documents, [or] release any information,'" are "in direct violation of the procedure set out in Rule 45." *Moses v. Am. Apparel Retail*, 2015 WL 4665968, at *13 (W.D. Tenn. Aug. 6, 2015). "It is the court's duty to rule on the validity of subpoenas and to direct the recipients to comply or not comply, not the attorney's . . . . [Counsel's] letters to the non-parties directing them not to respond to the subpoenas are 'clear evidence' of his bad faith and vexatious behavior, evincing a deliberate effort to usurp the authority of the court." *Fox Industries, Inc. v. Gurovich*, 2006 WL 2882580, at *8 (E.D.N.Y. Oct. 6, 2006).

### B.     Factual Background

24.     Defendants recently became aware of at least two instances where the Government has directly instructed third parties to withhold documents from Defendants.

25.     On April 14, 2021, counsel to Greenberg Traurig, LLP ("GT")—which was subpoenaed for bond documents in the HTA adversary proceeding—advised Defendants that the Government "has instructed GT to withhold eleven of the documents found in the collected files on the ground that they are not final documents 'governing' the HTA Bonds, and thus are beyond the scope of discovery in the above captioned action."  (*See* Ex. D, Ltr. from Kenneth C. Smurzynski to William J. Natbony (Apr. 14, 2021) (citation omitted).)

26.     The letter made clear that the Government had instructed GT to object on scope grounds—not merely on privilege grounds.  GT's counsel wrote:  "Because the documents are beyond the scope of discovery in the above captioned litigation, we have not prepared a privilege log.  Should the Court hold, or the parties to the litigation reach agreement, that the documents are subject to discovery, GT will provide a privilege log at that time."  (*Id*.)

27.     In other words, but for the Government's "scope" objection, Defendants at least would have been able to obtain production of a privilege log—which could have allowed Defendants to contest any claim of privilege and also would have been independently useful discovery.  But because the Government instructed GT to make "scope" objections, GT will not provide a privilege log unless the Government consents or Defendants bring a successful motion to compel.  (Of course, it is unclear whether there is any valid claim of privilege over these 11 documents, and the Government's conduct has made it impossible for Defendants to find out.)

28.     In a meet-and-confer on April 13, and a follow-up e-mail on April 15, 2021, Nixon Peabody LLP advised that the Government's counsel "is reviewing [documents it collected] ***for scope*** and privilege" and that it would "defer to [the Government's counsel] as to what is being produced."  (*See* Ex. E, E-mail from Robert N.H. Christmas, Partner, Nixon Peabody (Apr. 15,

2021, 12:41 EST) (emphasis added).)  This communication also evidences that the Government is directing third parties regarding scope objections, not confining itself to protecting its privileges.

29.     Even assuming the Government has some leeway to communicate with law firms that represented Government Entities to protect good-faith assertions of privilege, the Government's scope objections are very different.  The Government is instructing third parties that voluntarily identified certain documents as responsive, and provided them to the Government, to refuse to produce those same documents to Defendants (or even to log them as privileged) on the grounds that they do not comport with the Government's subjective perception of the appropriate scope of discovery in these adversary proceedings.

30.     These communications occurred without any notice to Defendants and discovered only when Defendants pressed these third parties to explain gaps in what they are producing.  Given the lack of disclosure concerning the Government's behind-the-scenes efforts to thwart Defendants' subpoenas, Defendants have concerns that the Government has had communications with other subpoenaed entities about potential objections—potentially including accounting firms, other law firms, and rum producers.  On Wednesday, for example, a third-party law firm served objections to a subpoena seeking deal documents, noting that the relevant lawyers were no longer at that firm.  But the law firm tellingly objected to one request on the grounds that "accounting designations, such as PRIFAS fund code 278, do not have the same documentation associated with deposit accounts"—an assertion that tracks one of the Government's merits arguments, but that a third-party law firm (not an accounting firm) would have no basis to assert, unless it was copying and pasting the Government's objections.  Objections like that one naturally raise the question of how extensive the Government's efforts to influence third parties have been.

31.     At the April 15 Meet-and-Confer, the Government declined to answer Defendants'
questions about (i) which subpoenaed entities the Government has communicated with,
(ii) whether the communications involved objections, and (iii) which subpoenaed entities have
provided documents to the Government but not to Defendants.  The Government was willing to
disclose that it did not receive and review documents from Bacardi (the rum producer) before those
documents were produced to Defendants.  But the Government was unwilling to make the same
statement with respect to other third parties—and also declined to indicate whether it has advised
Bacardi or any other third party on potential objections to interpose to the subpoenas.  The
Government also did not explain the underlying objection that caused it to instruct GT not to
produce these documents.[5]

### C.    The Government's Interference with the Third-Party Subpoenas Is Improper.

32.     The Government's instructions to third parties to withhold documents, on the basis
of the Government's subjective views of the proper scope, are improper for two reasons.

33.     *First*, as discussed above, numerous courts have held that it is improper for a party
to interfere with subpoenas served on third parties.  At least one court has sanctioned a litigant that
instructed its own accounting firm to object to a subpoena on the grounds that it exceed what the
court had allowed.  *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 3359998, at *1
(W.D.N.Y. Aug. 3, 2011).  In *Robbins & Myers*, after the Court resolved a discovery dispute
between the parties in a Decision and Order, defendants subpoenaed the plaintiff's auditor (Ernst

---

[5] In its response below, the Government faults Defendants for the limited time the Parties had to
meet-and-confer before this joint status report.  As the chronology above indicates, Defendants
only learned of this issue in the past few days.  The letter from GT was received on Wednesday
at 4:24 p.m., and the e-mail from Nixon Peabody was received on Thursday afternoon (with the
Government copied).  Defendants raised this issue at the earliest possible opportunity, a meet-
and-confer the Parties had previously scheduled for Thursday night at 6 p.m., and now present it
to the Court mindful of the need to expeditiously raise issues given the tight schedule.

& Young).   The Court sanctioned the plaintiff and its counsel for advising its auditor that the subpoena was impermissible under the court's Decision and Order, finding that "but for [Plaintiff]'s advice to E&Y that Defendants' subpoena should be dishonored as unauthorized by the [Decision & Order], E&Y would have timely complied without the necessity of the instant motion to compel."   *Id.* at *3.

34.     This situation is no different.   Based on its subjective interpretation of a court order, the Government is advising its professional services firms (and perhaps others) not to comply with subpoenas.   The Court could not have been clearer that its order partially granting Defendants' motion to compel discovery from the Government did not address third-party subpoenas.   At the hearing on that motion, the Government expressly asked the Court to rule that third-party subpoenas would be limited to the scope the Court was requiring of the Government.   The Court denied that request, noting that third-party subpoenas were not before the Court.[6]   The final order that the Court issued also made explicit that "[t]his order does ***not*** address discovery requests under the Rule 56(d) order as to which the Parties have not presented a ripe dispute to the Court." (Motion to Compel Order ¶ 7 (emphasis added).)   In many instances, third parties may be able to more efficiently and with minimal burden search for information that could be difficult for the Government to find; the Court did not preclude Defendants from seeking such information.

---

[6] (Ex. F, *Hearing on Motions* Tr. at 75:12-25 ("MR. FIRESTEIN: I have a – it's Michael Firestein, Your Honor.   I have a question on that.   I gather, so that we can avoid going through the exercise of dealing further on the KPMG subpoena, that that is the limit of the materials, or something - something different? THE COURT: That issue really isn't in front of me, and I don't begin to know what it looks like.   MR. FIRESTEIN: At least as it relates to this issue, though, that --  THE COURT: I don't know what to tell you on that --  MR. FIRESTEIN: All right.   THE COURT: -- so I don't want to go down that rabbit hole.").)

The Government's request at the motion to compel hearing that the Court limit the subpoenas came after the Government had requested an emergency hearing regarding the subpoenas—a request that also was not granted.   (*See Joint Status Report Regarding Discovery in the Revenue Bond Adversary Proceedings* [ECF No. 15889] ¶ 36.)

35.     The Government argues below that it is entitled to direct its former law firms as to how to respond to subpoenas seeking the Government's client file.  Whatever validity that assertion might have in the context of *privileged* documents, it does not extend to nonprivileged documents.  "Documents obtain no special protection because they are housed in a law firm" and "absent privilege, [a law firm's client files] are as susceptible to subpoena as those stored in a warehouse within the district court's jurisdiction." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170–71 (2d Cir. 2003).  Moreover, the Government's argument does not address whether the Government has communicated with accounting firms, rum producers, and others—a point on which the Government's silence speaks volumes.

36.     *Second*, the Government's conduct violates its agreement with Defendants regarding the scope of discovery.  After receiving the Government's responses and objections, Defendants asked the Government to specifically identify (as required by Rule 34(b)(2)(C)) whether any responsive documents would be withheld on the basis of the objections.[7]  In subsequent meet-and-confers, the Government explained that it was not planning to withhold responsive documents on the basis of objections it had lodged to definitions, instructions, and the scope of specific document requests.  The only real dispute from the Government's perspective was the scope of *collection* efforts the Government would be required to undertake.  In particular, the Government disputed whether it should have to collect and review (i) e-mails and (ii) audit work papers (a dispute that was subsequently presented to and resolved by the Court).  The Government agreed that, to the extent its collection efforts surfaced documents responsive to

_____

[7] Specifically, Defendants' requested that "the Government comply with Rule 34(b)(2)(C) and amend its specific objections to requests to indicate whether or not responsive materials are being withheld on the basis of the objection."  (Ex. G, Ltr. from John J. Hughes, III to Michael A. Firestein, *et al*. (Feb. 28, 2021) at 2-3.)

- 13 -

Defendants' document requests (as originally drafted), the Government would not withhold any

of those documents on the basis of written objections it had served.[8]

37.     The Court's Motion to Compel Order made clear that it was not limiting or

modifying the scope of what the Government had previously agreed to:  "In fashioning this order,

the Court accepted the Government's representations at the hearing as to the documents it was

searching for and had agreed to produce.  *Nothing herein shall limit the Government's*

*agreement[s] to produce in any way.*"  (Motion to Compel Order ¶ 2 (emphasis added).)  The

Government's instructions to third parties appear to be directly contrary to the  agreement the

Government made—and which the Court's order preserved.

38.     While the Government (or the relevant third party) was free to move to quash or

modify the third-party subpoenas in a timely manner when the subpoenas were issued, the

Government cannot simply decide for itself that the subpoenas should be limited—especially not

when the Government requested that relief from the Court, and the Court said no.   The

Government's conduct in trying to limit third-party productions is particularly noteworthy given

that the information Defendants have sought is targeted and limited.  GT had already specifically

identified a limited set of 11 documents as responsive and relevant, and was prepared to either

produce those documents or provide a log for any privileged documents—but the Government

---

[8] After the Parties exchanged letters, Defendants noted that the Government had suggested that some of the disputes over scope were "academic," and summarized the Government's position as follows:  "the Government is not planning to withhold documents on the basis of any of its objections—except that its search will be limited to central files, as described in greater detail in each of the specific objections the Government made to Defendants' document requests."  (Ex. H, Ltr. from John J. Hughes, III to Michael A. Firestein, *et al.* (Mar. 9, 2021) at 1.)  The Government responded that it agreed with Defendants' summation:  "our objections do have meaning: they delineate the scope of the agreed search and the documents we have agreed to provide pursuant to that search.  Nevertheless, we understand your March 9, 2021 letter to acknowledge that the parties do not have a specific pending dispute on the scope of the search or production agreement apart from the pending motion to compel."  (Ex. I, Ltr. from Elizabeth L. McKeen & Michael A. Firestein to Robert S. Berezin, *et al.* (Mar. 16, 2021) at 1.)

intervened to ensure they would not.  This intervention over 11 documents plainly is not about limiting burden.  It is a litigant trying to undermine and interfere with their adversaries' legitimate efforts to obtain discovery.

> **D.    The Government Should Be Ordered to Disclose Any Communications It Had with Third-Party Subpoena Recipients Concerning Objections.**

39.    It is impossible for Defendants to know at this time how extensive the Government's interference into the subpoena process has been.  None of the Government's communications have been on notice to Defendants or the Court.  Even though Defendants agreed—at the Government's insistence—to produce on a weekly basis documents received from third parties pursuant to subpoenas, it appears that the Government has received untold numbers of documents from third parties without any disclosure to Defendants or production of the documents received.  Defendants also are concerned that the Government may have "advised" third parties regarding potential objections—which also would violate the rules.

40.    To better understand what has occurred, Defendants ask that the Court enter the attached proposed order directing the Government to (i) disclose any communications the Government has had with subpoena recipients concerning objections to the subpoenas, how to respond to subpoenas, or whether to withhold documents, (ii) produce copies of any documents the Government has received from or sent to subpoena recipients in connection with these adversary proceedings, and (iii) refrain from any further communications concerning objections (except to advise on whether the Government is asserting or waiving privilege).

41.    Based on these disclosures, Defendants will then request an appropriate remedy from the Court.  The Rule 56(d) Order, and the tight schedule the Court imposed, were necessarily premised on the assumption that the Government would comply in good faith with its discovery obligations so that the Court could promptly reach the merits of these issues.  To the extent that

the Government has sought to undermine and interfere with the discovery process, appropriate remedies may include terminating the pending motions for summary judgment with prejudice, allowing the finder of fact to draw an adverse inference, or appropriate discovery sanctions.

42.    Defendants have attached a proposed order hereto as Exhibit J.  Defendants can make themselves available for a conference, or submit briefing on this issue, if the Court would find either helpful.

## **GOVERNMENT'S STATEMENT**

### I.    **GOVERNMENT'S POSITION REGARDING THE SCHEDULE**

43.    The Government is working to collect and produce the remaining documents required under the Rule 56(d) Order and this Court's order on Defendants' motion to compel. Defendants agreed, and this Court allowed an extension of the Government's deadline to complete its production until April 26, 2021.  That the production is not complete 10 days in advance of that deadline is entirely expected.

44.    The Government currently anticipates it will complete its production by the April 26, 2021 deadline.  It will also endeavor to make rolling productions to the extent possible in advance of that deadline.  The Government Parties do not agree, however, that Defendants would be prejudiced if the Government completes its production, or even makes a substantial production, on or near the document production deadline.  The Government has not pushed the document production toward the end of the document discovery period as Defendants suggest. The Government has already produced nearly 2,100 documents to date.  Nor has it unduly delayed responses to third-party subpoenas.  As Defendants concede, to date 15 entities have produced documents in response to Defendants' subpoenas. As detailed further below, it is entirely appropriate for the Government to review the proposed production *of its own documents* from the files of its lawyers before production.

45.     The Government will continue to confer with Defendants regarding the schedule, but at present do not foresee that any extension is necessary at this time.

## II.   DEFENDANTS' ATTEMPT TO EMBED A MOTION TO COMPEL INTO A STATUS REPORT ON A FEW HOURS' NOTICE IS ENTIRELY IMPROPER.

### A.   This Court Should Not Allow Defendants to Deprive the Government of its Right to Meaningfully Respond to Defendants' Accusations.

46.     This submission is to be a "Joint Status Report."  Instead, Defendants inserted what amounts to a nine-page legal brief and proposed order regarding a dispute over communications with subpoenaed third parties.  The parties have not substantively met and conferred on the issue, and the Government Parties have not had a meaningful opportunity to respond to Defendants' many misleading and false assertions and speculations.  A status report is not the place to litigate a discovery dispute, much less a vehicle through which the Court is asked without benefit of briefing or a hearing to enter an order that (i) controls who lawyers (in the zealous representation of their clients) may speak with, and (ii) for those they do speak with (including other lawyers for the same client), require disclosure of the contents of those conversations.

47.     When there is a discovery dispute, there is a process.  *First*, the parties meet and confer in an effort to reach resolution amongst themselves.  *Second*, if that fails, only then does the dispute get raised with the Court through a briefing schedule that gives each side a meaningful opportunity to lay out its position and respond to the other side's arguments.  That is what the Rules require; it is basic procedural due process.

48.     Defendants seek to circumvent both procedures.  Defendants first raised the issue with the Government Parties yesterday evening during a 6 p.m. Eastern Time meet and confer involving numerous issues.  Without previewing the issue, Defendants asked a single question during the meet and confer: have the Government Parties had communications with subpoenaed third parties?  Concerned with potentially revealing work product, the Government Parties advised

- 17 -

they would consider Defendants' request and revert.  Then, at noon Eastern Time on the day this status report was due, Defendants provided their draft including a full nine-page legal brief and proposed order full of speculation and incorrect assertions.

49.     Defendants' ambush tactics have blown their conspiracy theories far beyond anything related to reality.  That is because Defendants have not afforded the Government Parties any opportunity to respond to and correct Defendants' assertions.  Defendants' rush to accuse is no basis to request an order from the Court in the absence of a developed record or even true joinder of issue, as the parties have not fully met and conferred.  The Government Parties submit the more prudent approach is to continue the meet and confer process, and any resulting areas of impasse can be raised with the Court.  If Defendants wish to bring a baseless motion, then the Court can set a briefing schedule.  If the Court would like a status conference on the issue, the Government Parties can correct the record there.

**B.      Defendants Cannot Circumvent this Court's Discovery Orders by Seeking Discovery of the Governments' Documents from its Lawyers' Files—It is Entirely Proper for the Government's Current Lawyers to Articulate the Government's Legal Position.**

50.     Putting aside the procedural impropriety of Defendants seeking a draconian discovery order on mere hours' notice through a status report, Defendants' accusations of misconduct are baseless.  It is entirely proper for the lawyers representing the Government in this litigation to communicate a direction to current and former lawyers for the Government as to how to respond to a subpoena for the Government's client files.  It is equally proper for the Government's current lawyers to review potential productions of the Government's own documents and advise of the Government's legal position.

51.     Defendants' statement makes clear that it is Defendants, not the Government, that are flouting discovery rules.  Defendants have sought to frustrate the Government's assertion of

its own position regarding its own documents by seeking to obtain client files from law firms that
are not directly involved in litigating this dispute.  As the Court well knows, the Government
Parties have interposed objections to the production of certain materials belonging to the
Government.  The Defendants plainly seek to end-run those objections by subpoenaing
documents that belong to the Government that are in the possession of the Government's agents
(former and current law firms).  Now, the Defendants brazenly complain that they are having
trouble conducting their improper end-run around the Government's objections because the
Government's agents have been informed of the Government's legal position by its current
litigation counsel.  It is Defendants' attempt to gain possession of the Government's client files
over the Government's own objection that is the problem here; not the Government's attempt to
ensure that its own agents are consistently implementing its litigation position.

52.     Defendants argue that "documents obtain no special protection because they are
housed in a law firm" and that they are "as susceptible to subpoena as those stored" elsewhere.
This is precisely the Government's point:  Government documents housed at various law firms
are no different than Government documents housed at AAFAF or at Treasury or elsewhere.  To
the extent the Government has validly interposed objections regarding the production of such
documents, those objections do not evaporate just because Defendants have served subpoenas on
those law firms in an attempt to end-run the Government's own objections.  The Government has
never argued that documents are privileged simply because they are located at a law firm, and
Defendants' strawman argument on this point strains credulity.

53.     This Court should deny Defendants' request for an order precluding the
Government's current and former lawyers from communicating and demanding the production
of the Government's own materials from the Government's agents notwithstanding the

Government's legal position on the relevance of such documents.  If Defendants seek to compel
the production of additional documents from the Government's lawyers, they need to file a
motion to compel further production in response to those subpoenas.  At the very least, the Court
should order briefing on these issues that afford the Government a meaningful opportunity to
respond.[9]

---

[9] Defendants' suggest that the Government's "failure" to refute all of the allegations they throw down is
somehow an admission of their truth.  Nothing could be further from the truth.  Given the mere few hours
the Government had to respond to these new allegations, time did not permit a point-by-point refutation.
This is exactly why a complete meet-and-confer followed by proper briefing is the basic construct of due
process—not "order by ambush."   In the event applicable privileges do not protect the nature of the
communications in question, the Government will, at the appropriate time, debunk the conspiracy theories
espoused by Defendants.

Dated:  April 16, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No.
    219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
        scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com
        johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
        adam.langley@butlersnow.cow

*Attorneys for Financial Guaranty Insurance
Company*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

*Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**RIVERA, TULLA AND FERRER, LLC**

By:  /s/ *Eric A. Tulla*
    Eric A. Tulla
    (USDC-DPR No. 118313)
    Email: etulla@ riveratulla.com
    Iris J. Cabrera-Gómez
    (USDC-DPR No. 221101)
    Email: icabrera@ riveratulla.com
    Rivera Tulla & Ferrer Building
    50 Quisqueya Street
    San Juan, PR 00917-1212
    Telephone: (787) 753-0438
    Facsimile: (787) 767-5784

**HOGAN LOVELLS US LLP**

By:  /s/ *Ronald Silverman*
    Ronald Silverman, Esq.
    Michael C. Hefter, Esq.
    390 Madison Avenue
    New York, NY 10017
    Telephone: (212) 918-3000
    Facsimile: (212) 918-3100
    ronald.silverman@hoganlovells.com
    michael.hefter@hoganlovells.com

*Attorneys for U.S. Bank Trust National Association, in its Capacity as Trustee to PRIFA Bondholders*

**SEPULVADO, MALDONADO & COURET**

By:  /s/ *Albéniz Couret Fuentes*
    Albéniz Couret Fuentes
    (USDC-PR No. 222207)
    304 Ponce de León Ave. Suite 990
    San Juan, PR 00918
    Telephone: (787) 765-5656
    Facsimile: (787) 294-0073
    Email: acouret@smclawpr.com

**REED SMITH LLP**

By: /s/ *Jared S. Roach*
    Luke A. Sizemore (admitted *pro hac vice*)
    Jared S. Roach (admitted *pro hac vice*)
    225 Fifth Avenue, Suite 1200
    Pittsburgh, PA 15222
    Telephone: (412) 288-3131
    Facsimile: (412) 288-3063
    Email: lsizemore@reedsmith.com
       jroach@reedsmith.com

*Attorneys for The Bank of New York Mellon, in its Capacity as Trustee to CCDA Bondholders*

**O'NEILL & BORGES LLC**

/s/ *Hermann D. Bauer*
Hermann D. Bauer
USDC No. 15205
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:   (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

**PROSKAUER ROSE LLP**

/s/ *Michael A. Firestein*
Martin J. Bienenstock
Jeffrey Levitan
Ehud Barak
(Admitted *Pro Hac Vice*)

Eleven Times Square
New York, NY 10036
Tel:   (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
         jlevitan@proskauer.com
         ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *Pro Hac Vice*)
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:   (310) 557-2900
Fax:  (310) 557-2193
Email: mfirestein@proskauer.com
         lrappaport@proskauer.com

***Attorneys for the Financial
Oversight and Management Board,
as Representative of the Commonwealth***

**O'MELVENY & MYERS LLP**

/s/ *Peter Friedman*
John J. Rapisardi
(Admitted *Pro Hac Vice*)
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061
Email: jrapisardi@omm.com

Peter Friedman
(Admitted *Pro Hac Vice*)
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5300
Fax: (202) 383-5414
Email: pfriedman@omm.com

Elizabeth L. McKeen
Ashley M. Pavel
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (949) 823-6900
Fax: (949) 823-6994
Email: emckeen@omm.com
         apavel@omm.com

**MARINI PIETRANTONI MUÑIZ LLC**

/s/ *Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com
250 Ponce de León Ave.
Suite 900
San Juan, Puerto Rico 00918
Tel: (787) 705-2173
Fax: (787) 936-7494

***Attorneys for the Puerto Rico Fiscal Agency and
Financial Advisory Authority, as representative of
the Government Entities pursuant to Act 2-2017***

- 24 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email: rcamara@ferraiuoli.com