UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al.*,

    Debtors.[1]

PROMESA
Title III

Case No. 17 BK 3283-LTS

(Jointly Administered)

-----------------------------------------------------------------x

**OBJECTION BY SERVICE EMPLOYEES INTERNATIONAL UNION TO THE RENEWED MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF ORDER RECLASSIFYING CLASS 48A AND CLASS 55 CLAIMS UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATE MARCH 8, 2021**

Service Employees International Union ("SEIU"), on behalf of itself, its local affiliates in Puerto Rico and their members, through its undersigned counsel, respectfully submits this objection to the April 13, 2021 *Renewed Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of Order Reclassifying Class 48A and Class 55 Claims Under Oversight Board's Plan of Adjustment Dated March 8, 2021* ("Motion") [Docket Entry #16396].[2]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] SEIU represents approximately 1.2 million public service workers throughout North America. SEIU members employed by the Commonwealth belong to one of two SEIU local chapters: SEIU Local 1996/Sindicato

9611065.1

1. In its Motion, the Official Committee of Unsecured Creditors ("Committee") asks the Court to rewrite the proposed plan of adjustment, moving the claims in the general unsecured class (Class 55) into the Retiree class (Class 48A). *See* Motion ¶26. It insists that, as a matter of law, pension claims -- earned through an employee's career of service, and typically providing a retiree's sole means of subsistence in old age -- can never receive treatment better than the claims of vendors, businesses and other unsecured trade creditors. *See* ¶5. The Motion, however, cites no provision of PROMESA or the Bankruptcy Code prohibiting a plan from providing more favorable treatment to pension claims. Indeed, public-sector reorganizations almost uniformly provide far greater protection to the pension claims of active and retired employees, in recognition of both the importance to the government entity of a motivated and dedicated workforce, and the unique vulnerability of the aged pensioner. The Committee's contention that the law requires yoking pension claims to commercial claims would produce an outcome unprecedented in public-sector bankruptcies, and should be rejected.[3]

2. The Committee's Motion quotes Judge Rhodes in the *Detroit* case. *See* Motion ¶4. We agree that Judge Rhodes' analysis on this question is the place to begin. In *Detroit*, Judge Rhodes permitted better treatment for pension creditors than other unsecured creditors, based on what he termed "a substantial mission-related justification," noting that the

---

Puertoriqueno de Trabajadores y Trabajadores and SEIU Local 1199/Union General de Trabajadores. Approximately 18,000 SEIU members are employed by the Commonwealth or its instrumentalities.

SEIU is a member of the Official Committee of Unsecured Creditors. SEIU submits this objection in its individual capacity and not in its capacity as a Committee member, nor in any way on behalf of the Committee.

[3] SEIU opposes all cuts to retiree benefits in these Title III cases. SEIU's argument here that the Court may lawfully provide pension creditors better treatment than other unsecured creditors should in no way be construed as an endorsement by SEIU of any retiree benefit reductions.

city's "employees and retirees are and were the backbone of the structures by which the City fulfills its mission":

> The Court finds that the City has demonstrated *a substantial mission-related justification* to propose a higher recovery to its pension creditors. The City is a municipal service enterprise. Viewed broadly, its mission is to provide municipal services to its residents and visitors to promote their health, welfare and safety. *Its employees and retirees are and were the backbone of the structures by which the City fulfills its mission*. The City, therefore, has a strong interest in preserving its relationships with its employees, in enhancing their motivation, and in attracting skilled new employees, consistent with its financial resources. The City has reasonably and properly concluded that the discrimination in favor of the pension claims in its plan is necessary to its mission.
>
> In contrast, the City has no similar mission-related investment in its relationships with its other unsecured creditors in classes 14 and 15.

*In re City of Detroit*, *Michigan*, 524 B.R. 147, 257 (Bankr. E.D. Mich. 2014) (emphasis added); *see also In re City of Stockton, California*, 526 B.R. 35, 60-62 (Bankr. E.D. Cal. 2015) (rejecting objection of unsecured creditor and confirming plan that left City-sponsored pensions entirely unimpaired).

3. The public-sector workforce in this case is as much the "backbone" of the debtor's operations as it was in the *Detroit* case. It is the Commonwealth's employees who keep the wheels of government turning: processing papers, cleaning schoolhouses, maintaining buildings, preparing meals, and performing the countless other tasks that make it possible for the Commonwealth to serve the people of Puerto Rico. As this Court has noted, "the 'primary purpose' of governmental insolvency proceedings 'is not future profit, but continued provision of public services' … these restructuring cases require a more holistic approach that focuses on the continuation and future of a government and its instrumentalities and *their ability to meet the needs of the Commonwealth's residents* as well as provide proper recompense of creditors."

3

*Mem. Op. & Order Denying Renewed Motion of Certain Secured Creditors of the Employee Retirement System of the Gov't of the Commonwealth of Puerto Rico for Appointment as Trustees under 11 U.S.C. §926*, Docket Entry #9712 (Jan. 7, 2020) (Swain, J.), at 7-8 (citations omitted; emphasis added). Keeping the Commonwealth's workforce productive, efficient and motivated requires protecting their hard-earned pension benefits, and that goal more than justifies favorable treatment of current and retired employees.

        4.      The Committee cites not a single public-sector bankruptcy case prohibiting more favorable treatment of pension creditors than other general unsecured creditors. Rather, it hinges its novel argument entirely on its (mis)reading of one First Circuit case, *Granada Wines, Inc. v. New England Teamsters and Trucking Industry Pension Fund*, 748 F.2d 42 (1st Cir. 1984). *Granada* did not concern a public-sector insolvency, let alone PROMESA. Nor did it even concern pension claims by employees or retirees. In *Granada*, a multiemployer pension fund asserted a withdrawal liability claim that the plan of reorganization placed in the same class as other general unsecured creditors. *See id*. at 46. The only issue before the court was whether the plan could treat the pension fund's withdrawal liability claim *less* favorably than the claims of other general unsecured creditors. *See id.* at 44.[4] All discussion in the case that went beyond resolving that issue was pure dictum.

        5.      *Granada* recognized that treating certain unsecured creditors differently from others can be "justified 'where the legal character of their claims is such as to accord them a status different from the other unsecured creditors.'" *Id.* at 46 (internal citations omitted). In other words, the First Circuit did *not* require equal treatment of all unsecured creditors.

---

[4] The debtor in *Granada* argued that the statute governing withdrawal liability, 29 U.S.C. §4225(a), required a reduced recovery for the pension fund.

6. This Court's post-*Granada* decision in *In re National Paper & Type Co. of Puerto Rico*, 120 B.R. 624 (D.P.R. 19990), illustrates that point. There, the Court affirmed confirmation of a plan of reorganization that placed unsecured creditors in distinct categories, finding the classifications "justified because they foster the continued success of this business." *Id*. at 625-26.

7. Here, the future success of Puerto Rico's reorganization -- the overarching goal of these Title III proceedings -- justifies more favorable treatment of pension creditors. As noted above, the "substantial mission-related justification" articulated by Judge Rhodes, *In re City of Detroit, Michigan*, 524 B.R. at 257, recognizes the central role in the reorganization played by those who dedicate their careers to public service, often in the most modest vocations. But there are additional compelling reasons not to tie the recovery of pension creditors to that of commercial creditors. Retirees are uniquely vulnerable, typically relying entirely or almost entirely on their pensions to put food on the table and to keep a roof over their heads. In Puerto Rico, SEIU members who have retired from government service receive on average approximately $1,100 in pension benefits per month, and for many of them, it is their only source of income. Businesses, by contrast, typically have multiple customers, and sources of revenue other than the debtor, which shields them from the impact of claim reductions.[5] Retirees are also human beings, and if their pensions are cut to the point where they cannot sustain themselves, the government debtor has to step in with welfare or other aid. The government owes no such financial safety net to business enterprises. Moreover, the structure of the two

---

[5] Private-sector bankruptcies also recognize that retiree creditors are different. *See, e.g., In re Tower Automotive Inc.*, 241 F.R.D. 162, 167-68 (S.D.N.Y. 2006) (affirming bankruptcy court's decision upholding recovery for retirees, over objection of unsecured creditors committee that retirees were receiving favorable treatment, noting "Congress's special concern for the rights of retirees").

types of claims are strikingly different. Retirees receive a promised stream of income, typically paid in monthly increments, until their death or that of their survivor. Trade debt is generally a one-off matter.

8. The Committee's position, if adopted by the Court, would create a pernicious precedent. The Committee will insist that it seeks no reduction in pension claims, only an improvement in the treatment of trade claims. But the logic driving the Committee's position -- that treatment be equal -- could just as easily drag down pension claims as lift up trade recoveries. The resources of the Commonwealth are not limitless, and if forced to treat all unsecured creditors as it treats pensioner claimants, the debtors might decide to pay pension claimants less. The precedent that the Committee seeks here could thus threaten to throw retirees further into poverty, in this case or in the next municipal insolvency.

9. SEIU shares the Committee's concern about the meager recoveries offered in the proposed plan of adjustment to trade creditors. We would like to see adequate and appropriate recoveries for all creditors, especially those based on the Island. But the Committee's attempt to boost the recoveries of trade creditors by hitching them to that of pension creditors must be rejected.

For the foregoing reasons, the Motion should be denied.

Dated: April 20, 2021

**COHEN, WEISS AND SIMON LLP**

By: /s/ *Peter D. DeChiara*
Richard M. Seltzer *(pro hac vice)*
Peter D. DeChiara *(pro hac vice)*
Marie B. Hahn *(pro hac vice)*
900 Third Avenue, Suite 2100
New York, NY 10022-4869
(212) 563-4100

**MONSERRATE SIMONET & GIERBOLINI**

/s/ *Miguel Simonet Sierra*
Miguel Simonet Sierra
USDC # 210101
101 San Patricio Ave., Suite 1120
Guaynabo, PR 00968
Tel.: (787) 620-5300

*Counsel to SEIU*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of April 2021, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will notify all counsel of record by emailing a copy and caused it to be mailed, as provided in the Court-approved Case Management Procedures in this case.

/s/ *Marie B. Hahn*
Marie B. Hahn