# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| The Financial Oversight and Management Board for Puerto Rico, | No. 17 BK 3283 (LTS) |
| As representative of | (Jointly Administered) |
| The Commonwealth of Puerto Rico, the Employee Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority | |
| Debtors | |

### SUCESIÓN PASTOR MANDRY MERCADO'S, EXCEPTING JAVIER MANDRY MERCADO, OBJECTION TO "SECOND AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, ET. AL."

**TO THE HONORABLE COURT:**

By counsel, Oscar Adolfo Mandry Aparicio; María del Carmen Amalia Mandry Llombart; Selma Verónica Mandry Llombart; María del Carmen Llombart Bas; Oscar Adolfo Mandry Bonilla; Gustavo Alejandro Mandry Bonilla; Yvelise Helena Fingerhut Mandry; Margaret Ann Fingerhut Mandry; Victor Robert Fingerhut Mandry; Juan Carlos Esteva Fingerhut; Pedro Miguel Esteva Fingerhut; Mariano Javier McConnie Fingerhut; Janice Marie McConnie Fingerhut, Victor Michael Fingerhut Cochran; Michelle Elaine Fingerhut Cochran; Rosa Estela Mercado Guzmán: Eduardo José Mandry Mercado; Salvador Rafael Mandry Mercado; Margarita Rosa Mandry Mercado; Adrián Roberto Mandry Mercado (hereafter collectively designated as Sucesión "Sucesión Pastor Mandry Mercado"), creditor of the Commonwealth of Puerto Rico (the "Commonwealth") in the Commonwealth's Title III proceedings under the Puerto Rico Oversight

Management and Economic Stability Act ("PROMESA"), filed by the Financial Oversight Management Board of Puerto Rico on May 3, 2017, and states as follows for its objection to the Commonwealth's Second Amended Title III Joint Plan of Adjustment, filed on March 8, 2021 (the "Plan") under PROMESA and the Bankruptcy Code provisions incorporated thereby [**ECF 15976**], since the treatment of Sucesión Pastro Mandry Mercado's claim for the taking of its properties, without just compensation, as required by the Fifth Amendment to the Constitution of the United States, is not dealt with under the Plan or otherwise improperly dealt thereunder.

## Introduction

On April 19, 2018, Sucesión Pastor Mandry Mercado filed Prime Clerk Proof of Claim Number 6272, at that time in the amount of $30,000,000.00, premised the partial judgment of August 9, 2019, entered in its favor against the Commonwealth in the case styled *Salvador Eduardo Mandry Nones et. als. Plaintiffs v. Estado Libre Asociado de Puerto Rico e*t. als., defendants, Civil Number JAC 2008- 0853 (605), before the Court of First Instance of Puerto Rico, Superior Section of Ponce (the "State Court"), determining the existence of a taking of Sucesion Pastor Mandry Mecado's real properties at Ponce, Puerto Rico, without compensation by inverse condemnation or eminent domain (the "Claim")[1]. On August 6, 2019, the State Court entered a final judgment granting Sucesión Pastor Mandry Mercado's complaint for inverse condemnation of the real properties, awarding thereto $30,496,000.00 as just compensation (the "Judgment"), on appeal by the Commonwealth of Puerto Rico's Court of Appeals. Sucesión's Pastor Mandry Mercado objects the Plan because the Claim for the taking of its properties, without just compensation, is based on the

---

[1] Javier Mandry Mercado, a member of Sucesión Pastor Mandry Mercado was included as a defendant in Civil Number JAC 2018-0853, under the provisions of Rule 16.1 of the Puerto Rico Rules of Civil Procedure, equivalent to Fed. R. Civil P. 19(a).

2

Takings Clause of the Fifth Amendment[2] to the Constitution of the United States of America and Section 9 of Article II of the Constitution of the Commonwealth. The Claim, premised on an inverse expropriation is not classified in the Plan and in the event the Plan pretends to treat the Claim under Class 51, as a general unsecured claim, it would impair the same, when Sucesión Pastor Mandry Mercado is constitutionally entitled to be compensated for the full amount thereof without impairment, reduction or adjustment.

## Background and Description of the Claim

Pursuant to the modification of the automatic stay granted by the Court on July 7, 2017, to allow the State Court to determine all necessary damages to Sucesión Pastor Mandry Mercado in Case No. JAC 2008-0853 [**ECF 600**], the State Court decided that Sucesión Pastor Mandry Mercado's real properties object of the inverse expropriation proceedings, consisting of two joint parcels of land with the same characteristics and topography, to wit: property number 1,908 of 184.0889 "cuerdas"[3] and property number 4,751 of 12.93333 "cuerdas" for a combined area of 197.0232 "cuerdas" (the "Real Properies"), and that by their inclusion within the area that the Puerto Rico Legislature designated as the Natural Reserve Punta Cucharas ("NRPC"), through

---

[2] There has been substantial argument as to whether the Bill of Rights of the Constitution of the United States applies to the Commonwealth directly or through the Fourteenth Amendment. The Supreme Court has stated that "Puerto Rico is subject to the Due Process Clause of either the Fifth or the Fourteenth Amendment" *Posadas de Puerto Rico Assoc. vs. Tourism Co. of Puerto Rico*, 478 US 328, 331 n.1 (1986). In *Torres vs. Puerto Rico*, 442 US 465 (1979), Justice Brennan's concurrent opinion states that "whatever the validity of [the Insular Cases when] ...they were decided, these cases are clearly not authority for questioning the application of the Fourteenth Amendment, or any other provision of the Bill of Rights to the Commonwealth of Puerto Rico", *Torres*, 442 US at 475476. In its most recent decision applying a provision of the Bill of Rights to a citizen in Puerto Rico, *Commonwealth of Puerto Rico vs. Sánchez Valle*, 136 S. Ct. 1863 (2016), the Court did not discuss this issue because both parties had accepted that the Double Jeopardy Clause applied to the Commonwealth. The federal Government, however, in its brief, as amicus curiae, at page 10, n. 1, asserted that "...the Double Jeopardy Clause could not apply to Puerto Rico through the Due Process Clause of the Fourteenth Amendment, because the Fourteenth Amendment applies only to 'state[s]'. The Double Jeopardy Clause thus must apply to Puerto Rico based on its status as a territory belonging to the United States". There seems to be no question, in any case, that the fundamental guaranties of the Bill of Rights apply to all American citizens in Puerto Rico.

[3] A Cuerda is equivalent to 0.97 acres.

3

the enactment of Law Number 227 of August 9, 2008 ("Law 227"), and in the NRPC, the Commonwealth deprived Sucesión Pastor Mandry Mercado of all of the Real Properties' possible productive capabilities, constituting a taking thereof by Law 277, by imposing restrictions thereon, without previously undertaking a condemnation or expropriation proceeding, nor having consigned a proposed just compensation.

The State Court found that on June 2004, Puerto Rico's Department of Natural Resources (the "DNR") issued a report titled Report on the Natural Value of Punta Cucharas Natural Area, recommending its designation as a natural resource and as part of the DNR's endeavors directed to achieve that designation, the DNR demarcated its shoreline.

Thereafter, the Secretary of the DNR approved a blueprint titled Land Acquisition Plans for "La Matilde" Property, of which the Real Properties are part and where their shoreline was demarcated in property number 1,908 consisting of 134.0042 "cuerdas" and 7.214 "cuerdas" in property number 4,751.

The Real Properties are located in an area that was included in A Special Area Blueprint in the Territorial Management Plan named "PL E.2 LA MATILDE", Article 44.3 of which provides that it pretends to facilitate a residential, touristic and commercial development for the Matilde Area, conditioned on the protection of natural resources such as La Laguna Salinas (the "Salinas Lagoon") and a wetlands zone to the south of the identified area, and to the conversion of Puerto Rico Highway Number 2 ("PR2") in an express highway with the construction of marginal streets[4].

The State Court concluded that the demarcation of the shoreline as to the Real Properties didn't alter their permitted use, it being a fact that they continued to be of a private nature thereafter.

Citing *Velázquez Velázquez v. ELA*, 135 D.P.R. 84, 88-89, the State Court concluded that

---

[4] By the time of the approval of Law 227, PR2 had been converted into an expressway with the Real Properties having access thereto.

4

the *jure* and *de facto* taking of the Real Properties became effective from the time that they were frozen, the just compensation to be fixed based on their value at that time, that is upon the approval of Law 227, and entered the Judgment determining the just compensation to Sucesión Pastor Mandry Mercado for the taking of the Real Properties as $30,496,000.00, plus interest thereon as of August 9, 2008, until full payment, to be computed pursuant to Regulation 78-1 of the Office of the Commissioner of Financial Institutions of Puerto Rico[5].

## Argument

The Plan seeks to adjust and modify the Commonwealth's obligations to creditors whose claims are subject to impairment and reduction. By not listing the Claim in a separate Class encompassing and providing for its full payment, but presumably in Class 51 generally labelled as "Eminent Domain Claims"[6], the Commonwealth is totally impairing the same either by ignoring it or attempting to convert the Claim into a general unsecured claim, since it arises from an inverse condemnation proceeding in which the Claim was liquidated, as a result of the modification of the automatic stay by the Court, where no consignation or deposit as to just compensation was effected and therefore there are no funds on deposit with the State Court to be disbursed to Sucesión Pastor Mandry Mercado, presumably leaving the Claim to receive a "pro rate share" of the CW GUC Recovery[7] comprised of (a) $125,000,000.00 in cash, and (b) net

---

[5] **Exhibit A** hereto lists the appearing members' of Sucesión Pastor Mandry Mercado percentage participation therein.

[6] Defined in the Plan as "[a] claim arising from or related to an Eminent Domain Proceeding and a final order entered therein for an amount in excess of the amount deposited by the condemnor in accordance with the terms and provisions of 32 L.P.R.A. § 2907, including without limitation, interest accrued with respect thereto". In turn Eminent Domain Proceeding is defined in the Plan as "a condemnation action or proceeding by the Commonwealth or an agency or entity thereof in the Court of First Instance in accordance with the terms and provisions of 32 L.P.R.A. 2905 to obtain title to real property located on Puerto Rico.

[7] CW GUC Recovery is defined in the Plan as aggregate recovery by Holders of CW General Unsecured Claims consisting of (a) One Hundred Twenty-Five Million Dollars ($125,000,000.00) in cash, and (b) the net recoveries by the Avoidance Actions Trust allocable to the Avoidance Actions CW Interests".

5

recoveries by the Avoidance Actions Trust allocable to the avoidance actions CW Interests[8], which in any event would be constitutionally flawed as Sucesión Pastor Mandry Mercado is entitled to be paid the full amount awarded by the State Court, unimpaired and unabated, as an administrative expense claim under 11 U.S.C. § § 503(b) and 507(a)(2), or otherwise in full as provided in Article III of the Plan.

Sucesión Pastor Mandry Mercado submits that the Claim is not subject to impairment or reduction because it is a constitutionally protected claim by the Fifth Amendment of the Constitution of the United States of America, prohibiting the taking of property without just compensation, and therefore can't be affected by the bankruptcy powers of Congress, pursuant to which Congress enacted PROMESA[9].

Since *Louisville Joint Stock Land Bank vs. Radford*, 295 US 555 (1935), the United States Supreme Court (the "Supreme Court") has reaffirmed, at that time of a national emergency created by the economic crisis of the Great Depression, that Congress may not pass laws under its bankruptcy powers that would effect a taking of private property without just compensation. In *U.S. vs. Security Industrial Bank*, 459 US 70, 75 (1982), the Supreme Court, citing *Radford*, held:

> The bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation. [Citation to *Radford* omitted.] Thus, however "rational" the exercise of the bankruptcy power may be, that inquiry is quite separate from the question whether the enactment takes property within the prohibition of the Fifth Amendment[10].

---

[8] Defined in the Plan as "[t]he tranche of beneficial interests in the Avoidance Actions Trust allocated in accordance with the terms and provisions to the Plan CW GUC pool and relating only to net recoveries attributable to Avoidance Actions relating to the Commonwealth Title III Case".

[9] See Disclosure Statement for the Plan at pages 1-2: "Titles III and VI of PROMESA provide for debt restructurings, similar to bankruptcy cases and out of court restructurings, respectively for Puerto Rico and its instrumentalities." It does so by "incorporating many provisions of Title 11 of the United States Code (the 'Bankruptcy Code') into Title III of PROMESA, which provides for restructurings similar to those under chapters 9 and 11 of the Bankruptcy Code […]".

[10] As the Fifth Amendment Article II, Section 9 of the Constitution of the Commonwealth provides that "private property shall not be taken or damaged for public use except upon payment of just compensation in the manner provided by law".

In *Radford*, the Frazier-Lemke Act (the "Act"), which added Section 75 to the then Bankruptcy Act, was challenged as unconstitutional as it prevented banks from exercising rights over foreclosed properties, which they enjoyed before the challenged provisions of the Act were passed. After predicating that "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment"[11], 295 US at 589, and facing the question whether the Act, as applied, "has taken from the [petitioner] bank without just compensation, and given to [respondent] Radford, rights in specific [foreclosed] property which are of substantial value". 295 US at 601. In *Radford*, the Supreme Court held at page 602:

> [...] we must hold [the Act] void; for the Fifth Amendment commands that, however great the nation's need, private property shall not be thus taken for a wholly public use without just compensation. If the public interest requires and permits the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

Therefore, although Congress may authorize the Commonwealth under PROMESA to impair contractual and other claims pursuant to its bankruptcy powers, it may not authorize the taking of private property without just compensation in violation of the Fifth Amendment. See *U.S. vs. Security Industrial Bank*, 459 US at 80.

After *Radford*[12], other constitutional challenges to legislation approved under the bankruptcy powers of Congress, as contrary to the Takings Clause, have reached the Supreme

---

[11] Thus, if indeed, as stated before, "[t]he bankruptcy power, like the other great substantive powers of Congress is subject to the Fifth Amendment", *Radford*, 295 US at 589 and the power of Congress to legislate for the territories under Article IV, Section 4 of the Constitution of the United States, under which PROMESA was enacted, also a substantive power of Congress, it is self-evident that Congress may not legislate under the Territorial Clause in a manner inconsistent with the Fifth Amendment mandate either.

[12] Shortly after Radford, Congress amended the Frazier-Lemke Act to conform to its holding. In *Wright vs. Vinton Branch of Mountain Trust Bank*, 300 US 440 (1937), the Supreme Court found the Act as amended constitutional.

7

Court, who in each case has reaffirmed *Radford*, while avoiding to reach the constitutional questions raised therein.

*Blanchette vs. Connecticut General Insurance Corp.*, 419 U.S. 102 (1974), involved several consolidated challenges to the Regional Rail Reorganization Act of 1973, enacted to supplement Section 77 of the Bankruptcy Act. The statute required several railroads in reorganization to transfer their assets to Conrail, a newly created private corporation, in exchange for securities to be issued thereby and federally guaranteed obligations to be issued by the United States Railway Association, a governmental entity. Because the value of these securities could not be established, at the time of the reorganization, in order to be equivalent to that of the railroad assets to be transferred to Conrail, certain creditors claimed that any deficiency would amount to a taking under the Fifth Amendment.

The Supreme Court concluded that "any deficiency of constitutional magnitude in the compensation provided under the Rail Reorganization] Act will indeed be a taking of private property for public use", 419 US at 155, declining to hold the statute unconstitutional by reasoning that the Rail Reorganization Act was not meant by Congress to preclude an action under the Tucker Act for a cash award "to cover any constitutional shortfall" in the compensation required by the Takings Clause. *Id.*

*U.S. vs. Security Industrial Bank*, supra, involved several consolidated challenges to Section 522(f)(2) of the Bankruptcy Reform Act of 1978, 11 USC 522(f)(2), which allowed debtors to avoid nonpossessory, nonpurchase-money liens on household furnishings and appliances. Creditors who had loaned the debtors money with perfected nonpossessory, non purchase-money liens on the household goods prior to the enactment of Section 522(f)(2) sustained that it operated as a taking of property, as to their liens, without just compensation under the Takings Clause. The Supreme Court, after reaffirming *Radford* and other cases, recognized that "there is substantial

8

doubt whether the retroactive destruction of the [creditor's] liens in this case comports with the Fifth Amendment", but went on to consider "whether, as a matter of statutory construction, [Sec.] 522(f)(2) must necessarily be applied in that manner [...] because of the cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." 459 US at 78 (citations omitted). With this in mind, the Supreme Court interpreted the statute and decided that it had not been Congress' intention to retroactively "apply [Sec.] 522(f)(2) to property rights established before the enactment date ..." 459 US at 82 (footnote omitted), and it "decline[d] to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the Takings Clause." *Id.* (citations omitted).

The rule established by the Supreme Court in *Radford*, supra, and the other cases discussed above, that Congress under its bankruptcy powers may not pass laws effecting a taking of property without just compensation in violation of the Takings Clause, has been applied in a situation in tandem to the one at bench. In *In re City of Detroit,* 524 B.R. 147 (Bankr. E.D. Michigan 2014), decided by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division, where several creditors, relying on the above cited decisions, claimed that the Plan of Adjustment filed by the City of Detroit in its Chapter 9 bankruptcy proceedings was unconstitutional under the Takings Clause by treating their claims for takings of property without just compensation as impaired general unsecured claims under the plan. In its *Supplemental Opinion Regarding Plan Confirmation, Approving Settlements and Approving Exit Financing*, entered on December 31, 2014, [**ECF 9883**], the Court, through the Hon. Steven W. Rhodes, agreed. After discussing *Radford* and *Blanchette*, and citing *U.S. vs. Security Industrial Bank*, supra, acknowledged at page 304, that both "*Blanchette* and *Radford* establish that bankruptcy proceedings are subject to the Fifth Amendment's prohibition on public takings of private property

9

without just compensation." Furthermore, rejecting the city of Detroit's submission that in the Supreme Court cases it was the statute itself that effected the taking, not the plan of adjustment, the Bankruptcy Court insisted at page 306 that " [] all that matters under the Fifth Amendment is that the owner of private property must be justly compensated if that property was taken for public use, whenever and however that taking occurred", and the City of Detroit's plan of adjustment, "[i]f confirmed, [] would deny that just compensation. The plan would allow the City to impair the property owners' constitutional claim for just compensation after the City took their private property. That violates the Fifth Amendment."[13]

The Court in *City of Detroit*, in applying the maximum that courts should avoid "interpreting [a statute] [Chapter 9] in a manner that would render it clearly unconstitutional… if there is another reasonable interpretation available", considering the constitutional requirement of the Takings Clause, decided to exercise its discretion Section 944(c)(1) of the Bankruptcy Code, 11 USC 944(c)(1), and provided in the confirmation order that the valid claims of the Taking Clause creditors' were excepted from discharge stating "[t]his result harmonizes chapter 9 with the Fifth Amendment while giving full effect to the principle that the Court should avoid interpreting chapter 9 in such a way that renders it unconstitutional." *City of Detroit* at 307.

It can't be questioned that the Takings Clauses of the Fifth Amendment mandates that private property shall not be taken for public use, without just compensation and that the Fifth

---

[13] In *In re City of Stockton*, 909 F.3d 1256 (2018), the Court of Appeals for the Ninth Circuit, over a strong dissent by Judge Friedland, let stand a plan of adjustment that had been challenged because it impaired a claim for just compensation under the Fifth Amendment. The Bankruptcy Court had rejected the challenge and the creditor succeeded in having his appeal heard directly by the Court of Appeals. However, he did not however, seek a stay of plan confirmation before the Bankruptcy Court or the Court of Appeals and the plan was confirmed, became effective and was implemented while the appeal was pending. Since the plan had long been consummated the Court of Appeals dismissed the appeal, invoking the doctrine of equitable mootness. *City of Stockton* at 1266. Nevertheless, it went on to discuss the merits of the appeal and ultimately concluded, in what is quite clearly an advisory opinion founded on obiter dicta, that the creditor's claim could be adjusted. Judge Friedland, in his wellreasoned dissent, rejected the majority's views basing his opinion on the Takings Clause, the Supreme Court's decisions in Radford, Blanchette and Security Industrial Bank, and the Bankruptcy Court's decision in *City of Detroit*. *City of Stockton* at 1271-1273 and n.7.

10

Amendment is applicable to the states and to Puerto Rico, through the Fourteenth Amendment. *In re city of Detroit*, Supra, citing *Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994); *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978)

On June 21, 2019, the Supreme Court in *Knick v. Township of Scott, Pennsylvania*, 588 U.S.; 139. S. Ct. 2162; 204 L. Ed. 558 (2019), Case No. 17—647, recognizing the applicability of the Fifth Amendment to inverse condemnation proceedings[14], categorically stated that a property owner has an actionable Fifth Amendment takings claim when the government, be it federal or state, takes his property without paying for it, the Fifth Amendment right to full compensation arising at the time of the taking, as held in the Judgment, regardless of post taking remedies that may be available to the property owner.

*City of Detroit* decided prior to *Knick v. Township of Scott*, supra, must now be read in light of the unequivocal mandate of *Knick*, as discussed above, particularly when its reliance on *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), is no longer good law as overruled by *Knick*.

Consequently, the alternative utilized in *City of Detroit* determining the Takings Clause claims as non-dischargeable is not available here, since *Knick* categorically holds that "[C]ontrary to *Williamson County*", on which Judge Steven Rhodes relied, "a property owner has a claim for a violation of the Takings Clause as soon as the government takes his property for public use without paying for it. The Takings Clause provides '[N]or shall private property be taken for public use, without just compensation'. It does not say 'Nor shall private property be taken for public use,

---

[14] The Supreme Court defined inverse condemnation as "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the government defendant (citations omitted) standing in contrast to direct condemnation, in which the government initiates proceedings to acquire title under its eminent domain authority". As recognized by the Supreme Court, all states except Ohio, as Puerto Rico, provide for a state inverse condemnation action. Here the legislative and regulatory action of the Commonwealth, as held in the Judgment, destroyed the Properties' productive use

11

without an available procedure that will result in compensation'. If a local government takes private property without paying for it, that government has violated the Fifth Amendment---just as the Takings Clause says---without regard to subsequent state court proceedings." …. *Knick* at page 3.

In consonance with the aforesaid, the Supreme Court in *Knick* also stated "[T]he Fifth Amendment right to **full compensation** arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner. That principle was confirmed in *Jacobs v. United States*, 290 U.S. 13 (1933), where we held that a property owner found to have a valid takings claim is estimated to compensation as it had 'been paid contemporaneously with the taking'--- that is, the compensation must generally consist of the total value of the property, when taken, plus interest form that time (citation omitted)" Id.

The Supreme Court in *Knick*, referring to the decision of *First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304 (1987), decided two years after *Williamson County* holding that a property owner acquires an irrevocable right to just compensation immediately upon a taking, assented to a position taken by Justice Brennan earlier while disserting in *San Diego Gas & Elec. Co. v. San Diego*, 450 U.S. 621 (1981), where Justice Brennan explained that "once there is a 'taking' compensation must be awarded" because "[a]s soon as private property has been taken, whether through final condemnation proceedings, occupancy, physical invasion, or regulation, the landowner has already suffered a constitutional violation". *Knick* at page 4.

The case at bench involves a constitutional claim identical to the one considered and decided by the Bankruptcy Court in *City of Detroit*, following the doctrine established by the Supreme Court in *Radford* and *Blanchette*: As it happened in *City of Detroit*, here there was a taking of the Properties for public purposes by regulatory action, without compensation.

12

Thereafter, the Commonwealth filed its Title III proceedings under PROMESA, as did the *City of Detroit* under Chapter 9 of the Bankruptcy Code, not applicable to the Commonwealth for not being a municipality. The Commonwealth is treating the Claim as a general unsecured claim, to be dramatically impaired under the Plan, as happened in *City of Detroit* where the creditors raised the Takings Clause constitutional mandate, as Sucesión Pastor Mandry Mercado does here. The Plan as drafted violates the Takings Clause of the Fifth Amendment as to the Claim.

Moreover, the Claim is not subject to be classified under Class 51 of the Plan in view of the mandate of Section 1122(a) of the Bankruptcy Code as to Classification of Claims or Interests, made applicable to the captioned Title III Case by Section 301 of PROMESA, since Section 1122(a) states "[e]xcept as provided in section (b) of this section (inapplicable here), a plan may place a claim… in a particular class **only if such claim… is substantially similar to the other claims… of such class**". The Claim does not fit this mold.

Different from General Unsecured Claims, the Claim is not subject to a discharge inasmuch as it constitutes a money award for a Takings Action under the Fifth Amendment. Wherefore, Sucesión Pastor Mandry Mercado requests that its objection to the Plan, as set forth above, be granted by the Court and that its confirmation be denied, because the provisions of the Bankruptcy Code on which the Plan relies for the treatment of the Claim are unconstitutional, as applied thereto, since they are contrary to the Takings Clause of the Fifth Amendment. In the alternative, this Court may, pursuant to Section 1122(a) of the Bankruptcy Code direct the Commonwealth to classify the Claim in a different Class under the Plan providing for its full payment as an unimpaired claim, as is the case of the millions of dollars paid and to be paid in administrative expenses in the captioned case.

**CERTIFICATE OF SERVICE**: I hereby certify that on this date, I electronically filed the foregoing motion with the Clerk of the Court using the EM/ECF system, which will send a

notification to all attorneys of record.

**RESPECTFULLY SUBMITTED**.

San Juan, Puerto Rico, this 20th day of April 2021

<u>s/**CHARLES A. CUPRILL-HERNÁNDEZ**</u>
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices Counsel for Sucesión Pastor Mandry Mercado 356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel.: 787-977-0515
Fax: 787-977-0518
E-mail: ccuprill@cuprill.com