# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-03283 (LTS)<br><br>(Jointly Administered)<br><br>**Re: ECF No. 16397** |

### OBJECTION OF THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES TO THE URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO SCHEDULE HEARING ON RENEWED MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF ORDER RECLASSIFYING CLASS 48A AND CLASS 55 CLAIMS UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED MARCH 8, 2021

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

ARGUMENT ......................................................................................................................4

I. The Renewed Motion Is Again Premature................................................................4

II. The Scheduling Motion Will Not Achieve Any Efficiencies And Will Only Burden The Court. ......................................................................................................................9

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re City of Central Falls Rhode Island*,
  No. 11-bk-13105 (Bankr. D.R.I. Sept. 11, 2012), Dkt. 572-1 ...................................................7

*In re City of Detroit*,
  524 B.R. 147 (Bankr. E.D. Mich. 2014) ..................................................................................5

*In re City of San Bernardino*,
  No. 12-bk-28006 (Bankr. C.D. Cal. Feb. 7, 2017), Dkt. 2164 ..................................................5

*In re City of Stockton*,
  526 B.R. 35 (Bankr. E.D. Cal. 2015) ........................................................................................5

*In re City of Vallejo*,
  No. 08-26813 (Bankr. E.D. Cal. Aug. 4, 2011), Dkt. 1113 .......................................................5

*In re Curtis Ctr. Ltd. P'ship*,
  192 B.R. 648 (Bankr. E.D. Pa. 1996) .......................................................................................8

*In re Gato Realty Trust Corp.*,
  183 B.R. 15 (Bankr. D. Mass. 1995) ........................................................................................7

*In re Hyatt*,
  509 B.R. 707 (Bankr. D.N.M. 2014) ........................................................................................8

*In re Larsen*,
  09-02630-TLM, 2011 WL 1671538 (Bankr. D. Idaho May 3, 2011) .......................................8

*In re Mahoney Hawkes, LLP*,
  289 B.R. 285 (Bankr. D. Mass. 2002) ......................................................................................7

*Matter of Nat'l Paper & Type Co. of P.R.*,
  120 B.R. 624 (D.P.R. 1990) .....................................................................................................7

*In re P.J. Keating Co.*,
  168 B.R. 464 (Bankr. D. Mass. 1994) ......................................................................................7

*In re Rexford Properties LLC*,
  558 B.R. 352 (Bankr. C.D. Cal. 2016) ..............................................................................1, 2, 8

*In re Tribune. Co.*,
  972 F.3d 228 (3d Cir. 2020) .................................................................................................7, 8

**Statutes**

11 U.S.C. § 1129(b)(1) ...........................................................................................................1, 4, 8

48 U.S.C. § 2141(b)(1)(C) ...............................................................................................................6

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Retired Employees (the "**Retiree Committee**") hereby objects to the *Urgent Motion of Official Committee of Unsecured Creditors to Schedule Hearing on Renewed Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of Order Reclassifying Class 48A and Class 55 Claims Under Oversight Board's Plan of Adjustment Dated March 8, 2021* [Dkt. 16397] (the "**Scheduling Motion**" filed by the "**UCC**") and states:

## INTRODUCTION

1. The UCC's April 2021 Scheduling Motion tries to accomplish for a second time what this Court rejected in April 2020—a hearing *before* the Disclosure Statement hearing on the UCC's argument that retiree claims and general unsecured commercial claims must receive the exact same treatment under any plan. The mere passage of time, however, has done nothing to improve the motion's merits, and this Court should deny (again) the UCC's premature request for a hearing on plan confirmation issues for two primary reasons.

2. *First*, the proper time to address the UCC's argument is in connection with plan confirmation. While Rule 3013 may, in appropriate circumstances, allow for consideration of a plan's proposed class structure in advance of plan confirmation, it does not permit the consideration of plan confirmation issues. *In re Rexford Properties LLC*, 558 B.R. 352, 355 (Bankr. C.D. Cal. 2016). The UCC styles its request as a dispute over classification, but the UCC's substantive (though incorrect) argument is one of unfair discrimination under section 1129(b)(1). Specifically, the UCC complains that general unsecured creditors are "entitled to the same treatment" as and must "receive no less than" retirees. [Dkt. 16396 at ¶ 5.] It is well recognized, however, that this type of argument only can be resolved in connection with plan confirmation due to, among other reasons, the need to present evidence about why the proposed plan of adjustment

proposes differing treatment and how the differing treatment advances Puerto Rico's restructuring. *See, e.g.*, *Rexford Properties*, 558 B.R. at 365-66.

3.     *Second*, and contrary to the UCC's claim, granting the Scheduling Motion will not achieve the proffered benefit of "efficiency and conserving the resources and time of the Court and all parties in interest…." [Scheduling Motion at ¶ 11.] Instead, it will do the opposite. As the Court saw the last time the UCC attempted this maneuver, other parties in interest inevitably will ask this Court to address their preferred "gating" issue before the Disclosure Statement hearing causing piecemeal and premature litigation of various plan confirmation issues as well as untold expense as parties jockey for position. Moreover, the UCC's proposed hearing date—the same week that Disclosure Statement objections may be due—will in no way save any party time and expense in evaluating and preparing their own objections to the Disclosure Statement. The Court should see the Scheduling Motion for what it is—an attempt by the UCC to control the narrative as these cases potentially enter their end game—and deny the Scheduling Motion.

## FACTUAL BACKGROUND

4.     One year ago, the UCC filed its *Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 39A and Class 41 Claims Under Oversight Board's Plan of Adjustment Dated February 28, 2020* [Dkt. 11989] (the "**Rule 3013 Motion**"). The Rule 3013 Motion ostensibly requested that retiree claims be placed in the same class as general unsecured claims—*i.e.*, the Commonwealth's trade creditors. The true relief sought by the Rule 3013 Motion, however, was an order requiring that general unsecured creditors "receive no less than the Oversight Board proposes to pay to Retirees." [*Id*. at ¶ 2.] And, just like now, the UCC sought to have the Rule 3013 Motion heard and decided prior to any disclosure statement hearing.

2

5. At the April 13, 2020 Omnibus Hearing, the Court denied the Rule 3013 Motion without prejudice. [Dkt. 16396-2 at 10:4-11:5.] In doing so, the Court acknowledged the Retiree Committee's and Oversight Board's arguments that the Rule 3013 Motion was in reality a disguised objection to the then-proposed plan. [*Id*. at 13:6-14:16.] The Court noted the "variety of issues put onto the basic structure of the motion initiated by the UCC," that "some unbundling of those issues may be appropriate," and that the "denial of the motion without prejudice is also intended to create an opportunity for updated and more discrete packaging of the issues of various constituencies in relation to the disclosure statement litigation." [*Id*. at 14:7-16.]

6. On March 8, 2021, the Oversight Board filed the *Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [Dkt. 15977] (the "**Disclosure Statement**"). The UCC states that on March 11, 2021, the Oversight Board informed the UCC that the Oversight Board would not agree to a pre-confirmation hearing on whether retiree claims and general unsecured claims must receive the same treatment under a plan. [Dkt. 16396 at ¶ 24.]

7. On April 6, 2021, the Oversight Board filed a motion asking this Court, among other things, to set May 14, 2021 as the date for filing objections to the Disclosure Statement. [Dkt. 16332 at ¶ 6.] On April 13, 2021, the UCC filed the Scheduling Motion asking this Court to hold a hearing that same week ("during the week of May 10, 2021") to address its renewed request that this Court order the Oversight Board to classify the claims of general unsecured creditors with the retiree claims and provide general unsecured creditors with the same treatment under the proposed Plan of Adjustment. [Scheduling Motion at ¶ 1.] Concurrently with the filing of the Scheduling Motion, the UCC filed the *Renewed Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of Order*

*Reclassifying Class 48A and Class 55 Claims Under Oversight Board's Plan of Adjustment Dated March 8, 2021* [Dkt. 16396] (the "**Renewed Motion**").

## ARGUMENT

**I.     The Renewed Motion Is Again Premature.**

8.     Despite the UCC's chosen label, the Renewed Motion is a premature confirmation objection. While the UCC dresses the Renewed Motion in the cloak of Rule 3013, what it truly presses is an unfair discrimination argument. The UCC is explicit about this fact as it concludes the Renewed Motion with the following statement: "Thus, the Committee asks merely that … this Court ensure that Class 55 general unsecured claims receive the same percentage on their claims as the Oversight Board will pay [Class 48A Retiree Claims]." [Renewed Motion at ¶ 39; *see also id*. at ¶¶ 4-5, 21 (focusing almost exclusively on treatment not classification).] That "mere[]" ask, however, lays bare the true intent of the Renewed Motion. The UCC's objection, however misguided it may be, is not to classification, it is to treatment. This is a plan confirmation objection properly heard at confirmation, not in advance of a hearing to approve the Disclosure Statement. *See* 11 U.S.C. § 1129(b)(1).

9.     Other aspects of the Renewed Motion also give the UCC's real purpose away. For example, the UCC refers to the "basic structure and overall treatment" of the plan as the "stratification of unsecured claims" into "favored" and "greatly disfavored." [Renewed Motion at ¶ 3.] Similarly, the UCC states that general unsecured trade claims are "entitled to the same treatment" as retirees. [*Id*. at ¶ 5.] In addition, the UCC states that it "reserves all rights with regards to, the classification of all of the separate classes in the Second Amended Plan" and then lists a series of creditor classes composed of general unsecured claims or creditors that the UCC contends are general unsecured creditors, such as the GO Bondholders. [*Id*. at ¶ 29 n.22.] However, if the UCC were truly interested in just classification as opposed to the treatment of unsecured claims,

the UCC would be raising those issues now with respect to all unsecured claims and seeking to have all unsecured claims placed in the same class. Instead of doing so, the UCC's sole focus is on the retiree class, demonstrating that the UCC's real complaint concerns the relative percentage recovery under the plan and not classification.[2] While the Retiree Committee looks forward to demonstrating why there is no unfair discrimination against the general unsecured class, the time for presenting that evidence under section 1129 is the confirmation hearing, and not through unnecessarily expedited motion practice.

10. The UCC's attempt to litigate a plan confirmation issue months in advance of the confirmation hearing and before a disclosure statement is approved is not only procedurally improper, it also is untenable. There is simply no plausible argument that the Oversight Board is required to place retiree claims in the same class as commercial creditors. The Retiree Committee has not been able to locate any case from any court in any context where a debtor has ever done so, much less been compelled to do so by a court. In contrast, in the municipal context alone, the cases where retiree claims are separately classified from general unsecured claims are legion. *See, e.g.*, *In re City of San Bernardino,* No. 12-bk-28006 (Bankr. C.D. Cal. Feb. 7, 2017), Dkt. 2164, Plan Art. IV(H) (separately classifying retiree claims); *In re City of Stockton,* 526 B.R. 35, 61-62 (Bankr. E.D. Cal. 2015) (same); *In re City of Detroit*, 524 B.R. 147, 257 (Bankr. E.D. Mich. 2014) (same); *In re City of Vallejo,* No. 08-26813 (Bankr. E.D. Cal. Aug. 4, 2011), Dkt. 1113, Plan Art. III (same). The reason for this is obvious: retirees' treatment—regular monthly pension checks—is vastly different from how general unsecured creditors will be paid.

---

[2] Moreover, the UCC's singular focus on retirees, as opposed to the bonds and other unsecured creditor classes, makes no sense if the UCC's true purpose in filing its Scheduling Motion is to ensure that the parties not proceed to a Disclosure Statement hearing for a "classification scheme [that] is fundamentally flawed." [Scheduling Motion at ¶ 10.]

11. Moreover, even if the UCC is correct (and it is not) that the *dicta* in *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*—a case about treatment of creditors under a plan—somehow controls the outcome here, the UCC is misreading that *dicta*. 748 F.2d 42, 46 (1st Cir. 1984). *Granada Wines* states: "separate classifications for unsecured creditors are only justified 'where *the legal character* of their claims is such as to accord them a status different from the other unsecured creditors.'" *Id*. (emphasis added). Far from being a *per se* ban on separate classification of unsecured claims, *Granada Wines* acknowledges that separate classification is appropriate where **the legal character of the claims is different**.

12. Instead of engaging in an analysis of the "legal character" of retiree claims as compared to general unsecured claims, however, the UCC essentially ignores the point. The UCC's silence about the relevant analysis that it urges this Court to consider is telling. The failure to address this point is because the legal nature of a retiree's claim who receives a monthly pension check for life based on a complicated statutory scheme is markedly different from that of a commercial creditor who is paid a lump sum from the Commonwealth's general coffers in accordance with negotiated rates for goods provided or services rendered. The decidedly different "legal character" of these claims also is highlighted by PROMESA itself which mandates that the Plan of Adjustment "provide adequate funding" for retiree claims. 48 U.S.C. § 2141(b)(1)(C).[3] The Oversight Board also recognized this different legal character when it excluded retirees from the bar date for filing claims, recognizing that claim forms are not required for a retiree to continue to receive her pension. [*See* Dkt. 2521 at ¶ 6(f) (listing holders of "pension claims" as "persons not required to file proofs of claim").]

---

[3] Moreover, if the claims of retirees were legally indistinguishable from the claims of general unsecured creditors, there would be no need for the formation of retiree committees which are routinely formed in municipal bankruptcy cases.

13. The cases bear out these differences. The Retiree Committee has been unable to locate a single case that supports the UCC's proposed rule (and neither has the UCC), while at least one court in this Circuit post-*Granada Wines* confirmed a chapter 9 plan of adjustment that separately classified pension claims and general unsecured trade claims. *In re City of Central Falls Rhode Island*, No. 11-bk-13105 (Bankr. D.R.I. Sept. 11, 2012), Dkt. 572-1, Plan Art. III(G)-(L). What is more, courts in the First Circuit allow separate classification of unsecured claims based on differences much weaker than what is present here, which plainly disproves the UCC's argument that the First Circuit requires all unsecured claims to be placed in the same class. *See, e.g.*, *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 295-96 (Bankr. D. Mass. 2002) (allowing separate classification for malpractice claimants as they had access to insurance proceeds for payment that other unsecured creditors did not); *In SW Boston Hotel Venture, LLC*, 460 B.R. 38, 52-53 (Bankr. D. Mass. 2011) (upholding separate classification where unsecured creditor had unique rights under applicable state law) (*appealed and aff'd on other grounds by* 748 F.3d 393); *In re Gato Realty Trust Corp.*, 183 B.R. 15, 21 (Bankr. D. Mass. 1995) (allowing separate classification of claim based on creditor's right to make a § 1111(b) election and holding that the "legal character" inquiry requires a "broader examination of the legal rights of different unsecured claims"); *Matter of Nat'l Paper & Type Co. of P.R.*, 120 B.R. 624, 626 (D.P.R. 1990) (approving separate classification of general unsecured claims that were "supported by a reasonable business or economic justification").

14. Because of this contrary case law, the UCC frames (as it must) its argument as one that general unsecured claims should be treated the same as retiree claims under any plan. This, however, is a quintessential "unfair discrimination" argument. *See In re P.J. Keating Co.*, 168 B.R. 464, 470 (Bankr. D. Mass. 1994) (confirming plan over unfair discrimination objection, which

complained that the plan "treats [other claimants] better" than the objector); *In re Tribune Co.*, 972 F.3d 228, 242-43, 244-45 (3d Cir. 2020). The case law is clear that such arguments are decided at the confirmation hearing, and not before. As the court in *Rexford Properties* explained:

> Although Rule 3013 contemplates the consideration and approval of a proposed classification scheme in advance of the plan confirmation process, it does not contemplate the Court making advance determinations of other confirmation issues such as unfair discrimination. The question of unfair discrimination does not arise until and unless a debtor seeks confirmation of a plan notwithstanding its failure to satisfy Bankruptcy Code section 1129(a)(8).

558 B.R. at 355; *accord In re Hyatt*, 509 B.R. 707, 721-22 (Bankr. D.N.M. 2014) (rejecting classification objection and deferring unfair discrimination issues to confirmation hearing); *In re Curtis Ctr. Ltd. P'ship*, 192 B.R. 648, 662-63 (Bankr. E.D. Pa. 1996) (same); *In re Larsen*, 09-02630-TLM, 2011 WL 1671538, at *4 (Bankr. D. Idaho May 3, 2011) ("Whether the separate classification of Eaton/BMA with dissimilar treatment from other unsecured creditors is violative of section 1122 and section 1123(a)(4), and whether that in turn violates section 1129(a)(1)-(a)(3) or other applicable confirmation standards [including the prohibition on unfair discrimination], is an issue that will be presented and decided at the confirmation hearing").

15. This must be the rule given that section 1129(b)(1)'s "unfair discrimination" requirement only applies ***after*** voting on a plan has commenced. *See* 11 U.S.C. § 1129(b)(1) (unfair discrimination inquiry applies "with respect to each class of claims or interests that is impaired under, and has not accepted, the plan"). Consequently, even the UCC concedes that this Court will consider unfair discrimination issues after the approval of the disclosure statement. [Scheduling Motion at ¶ 5.] For this reason, the UCC's attempt to preemptively argue unfair discrimination under the guise of a classification motion is procedurally improper and the Scheduling Motion should be denied.

## II. The Scheduling Motion Will Not Achieve Any Efficiencies And Will Only Burden The Court.

16. Contrary to the UCC's arguments, an expedited hearing on the Scheduling Motion will not be more efficient. The UCC contends that it is entitled to expedited relief because "[i]t would be a tremendous waste of time and resources for all parties involved if parties were required to consider the myriad of issues raised by the lengthy Second Amended Disclosure Statement, and prepare and file any related objections" prior to the resolution of the Renewed Motion. [Scheduling Motion at ¶ 10.] The UCC is incorrect.

17. *First*, granting the Scheduling Motion will open the floodgates for more creditors to file their own motions stating their case for why the legal issue or issues nearest to their hearts should be decided before a hearing on the Disclosure Statement. How many more "threshold, and narrow, legal issues" lurk in other parties in interest's minds? [*Id.*] The Court need not go beyond this very dispute to prove this concern true. Shortly after the UCC filed its Rule 3013 Motion, Ambac, Assured, and Invesco all filed "joinders" seeking to expand the relief sought and litigate their own "classification" concerns. [*See* Dkts. 12687 and 12691.] What experience has shown is that granting the Scheduling Motion will turn these cases into a race to the courthouse as parties seek to have their pet issue heard first. Moreover, this process will not end at the Disclosure Statement hearing. Instead, the Court almost certainly will receive numerous similar requests in the months leading up to plan confirmation threatening to turn what is supposed to be the potential endgame of the Commonwealth's restructuring into a litigation quagmire.

18. *Second*, even if the UCC's request were considered in a vacuum, granting the Scheduling Motion still will not achieve the UCC's stated goal—saving parties in interest the time and expense of tackling the myriad other issues that are sure to be raised in connection with the Disclosure Statement. [Scheduling Motion at ¶ 10.] The UCC seeks a hearing on its Renewed

Motion during the week of May 10. The Oversight Board's proposed schedule sets a Disclosure Statement objection deadline of May 14, 2021. [Dkt. 16332 at ¶ 6.] It simply is not plausible that parties will wait until May 10 at the earliest (4 days before their Disclosure Statement objections are due) to begin their objection preparations in earnest on the mere possibility that the Court will grant the Renewed Motion.[4]

19. *Third*, the UCC's purported concern for efficiency rings hollow given their recitation of events. The UCC states that they became aware that the Oversight Board would not agree to have the Renewed Motion heard in connection with the Disclosure Statement hearing on March 11, 2020—three days after the filing of the Disclosure Statement. [Renewed Motion at ¶ 24.] Instead of seeking their relief then, the UCC waited over a month to file the Renewed Motion and Scheduling Motion. This unexplained delay strongly suggests that the UCC's purpose here is not efficiency but control over how these cases approach their end. The Court should not schedule the hearing on the Renewed Motion until the confirmation hearing. Only at that time will the Court be able to assess whether the issues the UCC raises are still ripe and have not been mooted. Hearing the Renewed Motion any earlier may only result in an advisory opinion, wasting the precious resources of this Court and the parties.

## CONCLUSION

For all of the foregoing reasons, the Retiree Committee requests that the Court deny the Scheduling Motion and grant such other relief as may be just.

---

[4] And while the UCC in another filing seeks to move the Disclosure Statement objection deadline by at least eleven days [*see* Dkt. 16398 at ¶ 8], that still would not provide nearly enough time to prevent parties in interest from commencing their preparations for their own objections in the event the UCC's extraordinary requested relief—the torpedoing of the plan—is not granted.

Dated: April 20, 2021

| JENNER & BLOCK LLP | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
|---|---|
| By: | By: |
| */s/ Robert Gordon* | */s/ A.J. Bennazar-Zequeira* |
| Robert Gordon (admitted *pro hac vice*)<br>Richard Levin (admitted *pro hac vice*)<br>919 Third Ave<br>New York, NY 10022-3908<br>rgordon@jenner.com<br>rlevin@jenner.com<br>212-891-1600 (telephone)<br>212-891-1699 (facsimile) | A.J. Bennazar-Zequeira<br>Héctor M. Mayol Kauffmann<br>Francisco del Castillo Orozco<br>Edificio Union Plaza,<br>1701 Avenida Ponce de León #416<br>Hato Rey, San Juan<br>Puerto Rico 00918<br>ajb@bennazar.org<br>hector.mayol@bennazar.com<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile) |
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>Landon Raiford (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>lraiford@jenner.com<br>312-222-9350 (telephone) | *Counsel for The Official Committee of Retired Employees of Puerto Rico* |