**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S URGENT MOTION TO COMPEL MILLIMAN, INC. TO COMPLY WITH SUBPOENA ISSUED PURSUANT TO THE COURT'S JANUARY 13, 2021 ORDER AUTHORIZING RULE 2004 DISCOVERY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Chambers of the Honorable Judith G. Dein:

Pursuant to Rules 7026, 7037, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Ambac Assurance Corporation ("Ambac") respectfully submits this urgent motion for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), compelling Milliman, Inc. ("Milliman") to comply with Ambac's subpoena *duces tecum* (the "Subpoena") issued pursuant to the Court's January 13, 2021 order (ECF No. 15589) (the "Milliman Order") and to produce a records custodian for deposition.

## PRELIMINARY STATEMENT

1. In the Milliman Order, the Court granted Ambac's unopposed motion seeking authorization to obtain Rule 2004 discovery from Milliman, which has acted as the Commonwealth's actuarial consultant for over thirteen years and, in that role, conducts annual valuations of the Commonwealth's pension liabilities.

2. For three months following service of the Subpoena on January 15, 2021, Ambac has requested that Milliman produce fundamental documents underlying Milliman's annual actuarial valuation reports (the "Actuarial Valuation Reports"). The Actuarial Valuation Reports are the sole source relied upon by the Financial Oversight and Management Board for Puerto Rico (the "Board") for its valuation of the Commonwealth's pension liabilities at $55.6 billion (as set forth in its certified fiscal plan for the Commonwealth) and, as such, are critical to an understanding of the Commonwealth's financial condition and projected liabilities.[2] Yet after substantial meet-and-confer efforts, Milliman has produced only 23 documents. Milliman has failed to produce *any* documents with respect to most of the requests in the Subpoena, and it has implausibly denied

---

[2] The "Actuarial Valuation Reports" are defined in the Subpoena as the valuation reports that Milliman prepared for the Commonwealth's Employees' Retirement System ("ERS"), Teachers' Retirement System ("TRS"), and Judiciary Retirement System ("JRS"). (*See* Ex. C (Subpoena, Exhibit A at 1-3.).)

1

the existence of whole categories of standard actuarial documents referenced and relied upon ***by Milliman in its own Actuarial Valuation Reports***. When confronted with these deficiencies, Milliman has failed to provide any explanation of how those documents could possibly not be within Milliman's possession, custody, or control, or any information concerning the efforts (if any) that Milliman has undertaken to locate them. Worse still, Milliman has refused to provide any clarity on what responsive documents it actually has, leaving Ambac to guess at what documents may exist.

3. In addition, while Milliman agreed to produce communications between Milliman and the Commonwealth, the Board, or the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," and together with the Board, the "Government Parties"), it subsequently informed Ambac that its review and production would be limited to the communications of one custodian with limited email domains, based on the unexplained assertion that that custodian was the "only point of contact" with the Commonwealth (an assertion that is proven incorrect by documents produced in the ERS litigation). Milliman has also stated, again without elaboration, that it may adjust its search parameters depending on volume. Meanwhile, Milliman still has not produced any communications, despite its agreement to do so.

4. Milliman's failure to comply has left Ambac no other choice but to move this Court to compel Milliman to (i) produce documents responsive to the Subpoena, to the extent the Court accepts Milliman's claims that no responsive documents exist, to provide detailed information regarding the searches it has undertaken in response to the Subpoena and its claims that no responsive documents exist, (ii) produce communications between Milliman and the Government

Parties concerning the Actuarial Valuation Reports, and (iii) produce a records custodian for deposition.[3]

5. For the foregoing reasons, and those set forth herein, the Motion should be granted.

## JURISDICTION

6. This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1331 and PROMESA § 306(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and PROMESA § 307(a).

## FACTUAL BACKGROUND

7. Over the past three years, Ambac has diligently sought information from the Government Parties relating to the Commonwealth's financial condition. Among the pension-related materials produced to date, the Government Parties produced the Actuarial Valuation Reports prepared by Milliman, which Milliman describes as estimates of the pensions systems' "financial condition." (*See* Ex. B (Puerto Rico Government Employees Retirement System, June 30, 2017 Actuarial Valuation Report, at 3.).)

8. The Actuarial Valuation Reports, which form the basis of the Board's $55.6 billion pension liability estimate for the Commonwealth (*see Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al. (Corrected)* (ECF No. 15988 at 159)), describe categories of assumptions made by Milliman in deriving these values. But information regarding the rationale, impact, and analysis underlying the assumptions and the valuation impact of such assumptions has never been produced.

---

[3] The Court has already authorized Ambac to issue a subpoena seeking deposition testimony from a Milliman representative pursuant to Federal Rule of Civil Procedure 30(b)(6) concerning the subject matter described in the Subpoena, with topics to be identified after a review of the produced materials. (*See* ECF No. 15589.) By this motion, Ambac is seeking authorization to issue a subpoena for a separate custodial deposition concerning Milliman's document search and review process, in light of the deficiencies in Milliman's response to the Subpoena.

9. After numerous meet-and-confers, the Government Parties maintained that they are not in possession of key information underlying Milliman's analyses, and refused to obtain the relevant information from Milliman for production to Ambac. Thus, Ambac sought relief from this Court for leave to seek this discovery directly from Milliman. (ECF No. 15342.) Ambac's motion was unopposed. (*See* ECF No. 15518.) On January 13, 2021, the Court granted the motion and authorized Ambac to issue its proposed subpoena *duces tecum* and a subpoena *ad testificandum* to Milliman. (ECF No. 15589.)

**The Subpoena and Milliman's Response**

10. Ambac served Milliman with the Subpoena on January 15, 2021. (Ex. C (Milliman Subpoena.).) The Subpoena contained 11 document requests concerning the bases for Milliman's Actuarial Valuation Reports. Milliman served its Response and Objections to the Subpoena on January 29, 2021. (Ex. D (Milliman's Response and Objections.).) In its Response and Objections, Milliman categorically refused to produce documents in response to Request Nos. 1, 3, and 6. Those requests are set forth below:

- Request No. 1: Documents and communications "concerning the pension liability of the Commonwealth's Pension Systems that the Commonwealth is projected to incur from fiscal year 2018" including concerning (a) "the methodology applied by the Pension Systems to determine their unfunded accrued actuarial pension liability, and the reasons selected for that methodology"; (b) "the amount and/or valuation of the Pension Systems' future annual required pay-as-you-go contributions"; (c) the effect of conversion to the pay-as-you-go system on the amount of the Pension Systems' liability for pensions obligations"; (d) the methodology applied by the Pension Systems to determine their future annual required pay-as-you-go contributions and the reasons for selection of that methodology."

- Request No. 3: Documents and communications "provided by the Commonwealth" to Milliman.

- Request No. 6: Documents and communications "concerning any guidelines, policies, procedures, practices, rules, staff instructions, or

>   standards applicable to the Pension Systems or used by the Pension Systems."

(*Id.* at Response to Req. Nos. 1, 3, and 6.)

11. With respect to certain other requests, Milliman responded that it had no responsive documents at all. (*Id.* at Response to Req. Nos. 4, 8, 10, and 11.) The only information Milliman agreed to produce in response to *any* request was "edited census data . . . and documents discussing the assumptions related to that edited census data." (*Id.* at Response to Req. Nos. 2, 5, 7 and 9.)

**The Meet-and-Confer Process**

12. On February 16, 2021, Ambac and Milliman held a telephonic meet-and-confer, during which Milliman agreed to produce edited census data and documents discussing the assumptions related to that data. The parties also agreed to continue to meet and confer regarding other requests in the Subpoena. On February 19, 2021, Milliman made its first and, thus far, only production. The production contained only 23 documents, comprised of edited census data and a small number of communications concerning the data that provide no clarity on Milliman's analysis.

13. On February 25, 2021, following a review of Milliman's production, Ambac requested the production of the following prioritized categories of responsive documents with respect to each of the three pension systems (ERS, TRS, and JRS):

>   (i) assumption studies or studies of demographic experience relied on in the Actuarial Valuation Reports, which would address, *inter alia*, assumptions regarding mortality, incidence of retirement and disability, and employee turnover;
>
>   (ii) analyses of plan experience (referred to in the Actuarial Valuation Reports as "experience studies");
>
>   (iii) results of death audits (reports to verify whether any beneficiaries are deceased);
>
>   (iv) identification of the software system/package used for the actuarial valuations;

5

(v) copies of the input screens for the valuation software showing plan provisions valued and assumptions used; and

(vi) communications with the Government Parties and the Commonwealth concerning the Actuarial Valuation Reports, the census data, and the assumptions Milliman used.

(*See* Ex. E (February 25, 2021 to March 12, 2021 email chain between A. Glenn and F. Harrison.).)

14. In response to Ambac's February 25 email, Milliman stated that it "has no responsive documents" to categories i, ii, iii, and v above. (*Id*.) With respect to category iv, Milliman stated that it uses the ProVal software system for the Actuarial Valuation Reports. (*Id*.) After further inquiry from Ambac regarding what documents show the assumptions that Milliman inputs into ProVal (which would be responsive to categories i and ii above), Milliman stated that it "does not have any documents or files showing the assumptions it input, [] they are contained in the valuation report itself." (*Id*.)

15. In response, Ambac provided Milliman with excerpts from ***Milliman's own reports*** referencing assumptions and experience studies relied upon by Milliman in the reports, and renewed its request for production of these materials. (*Id*.) As an example, Ambac directed Milliman to the ERS Actuarial Valuation Report, dated as of June 30, 2017, which states:

> Basis for demographic assumptions: The post-retirement health and disabled mortality assumptions used in this valuation *are based on a study of plan's experience from 2007 to 2012 and updated expectations regarding future mortality improvement*. Most other demographic assumptions used in this valuation are based on a *2009 experience study using data as of June 30, 2003, June 30, 2005, and June 30, 2007*. *Certain demographic assumptions (e.g. termination and retirement) were impacted by the Act 3 pension reforms and were revised based on the new retirement eligibility and expected future experience*. All assumptions were reviewed with PRGERS staff for reasonableness and are documented in this Section.

6

(Ex. B (Puerto Rico Government Employees Retirement System, June 30, 2017 Actuarial Valuation Report at 48.) (emphasis added).)

16. Similarly, Ambac directed Milliman to portions of the TRS Actuarial Valuation Report, dated as of June 30, 2017, which contains numerous references to experience studies relied on by Milliman:

> *Based on a 2004-2007 experience study* as well as the actuary's judgment and continual review of experience. . . .
>
> *Based on a 2004-2007 experience study* as well as the actuary's judgment and continual review of experience, including the impact of Act 160-2013 . . . .
>
> *Based on actuary's judgment and continual review of experience*, including the impact of Act 160-2013 . . . .
>
> *Based on a 2004-2007 experience study* as well as the actuary's judgment and continual review of experience . . . .
>
> Post-retirement Healthy Mortality: Rates which vary by gender are assumed for healthy retirees and beneficiaries *based on a study of plan's experience from 2007 to 2012* and updated expectations regarding future mortality improvements.
>
> Post-retirement Disabled Mortality: Rates which vary by gender are assumed for disabled retirees *based on a study of plan's experience from 2007 to 2012* and updated expectations regarding future mortality improvements.

(Ex. F (Puerto Rico Government Teachers' Retirement System June 30, 2017 Actuarial Valuation Report at 46-48.) (emphases added).)

17. Ambac also directed Milliman to portions of the JRS Actuarial Valuation Report, dated as of June 30, 2017, which references Milliman's reliance on experience studies and demographic assumptions:

> Basis for demographic assumptions: The mortality assumptions reflect standard industry tables that were selected based on the characteristics of the System's members. Most other demographic

7

>> assumptions used in this valuation are *based on a 2009 experience study* using data as of June 30, 2003, June 30, 2005, and June 30, 2007. *Certain demographic assumptions (e.g. termination and retirement) were impacted by the Act 162-2013 pension reforms and were revised based on the new retirement eligibility and expected future experience*. All assumptions were reviewed with PRJRS staff for reasonableness and are documents in this Section.

(Ex. G (Puerto Rico Government Judicial Retirement System, June 30, 2017 Actuarial Valuation Report at 40-41.)(emphasis added).)

18. In the face of this incontrovertible evidence that Milliman's Actuarial Valuation Reports reference and rely on assumptions and experience studies not explained or otherwise included in the report, Milliman nevertheless maintained that it "checked already and told [us that] Milliman does not have documents responsive to [Ambac's] request for experience studies." (Ex. E (February 25, 2021 to March 12, 2021 email chain between A. Glenn and F. Harrison.).)

19. Ambac then suggested that these materials should be accessible to Milliman as inputs into the ProVal system, the valuation software that Milliman uses to create its Actuarial Valuation Reports. (*Id*.) On March 5, 2021, Milliman "confirmed that the assumptions from those studies are contained in Milliman's reports but the studies are not uploaded into ProVal." (*Id*.) Milliman's last communication concerning the Actuarial Valuation Reports was on March 22, 2021, and contained similar conclusory and implausible assertions that Milliman is not in possession of the materials upon which it based its own Actuarial Valuation Reports. (*Id*.) Milliman did not provide any additional information regarding the nature or scope of its search.

20. With respect to Milliman's communications with the Government Parties and the Commonwealth (category vi above), Milliman stated that it would produce non-privileged documents responsive to the requests. (*Id*.) AAFAF subsequently informed Ambac, in the context of its own Rule 2004 discovery process with Ambac, that it was no longer willing to produce email

8

communications between Milliman and three retirement system employees – Ms. Cecile Tirado, Mr. Hector Roman, and Mr. Angel Diaz – because such discovery would be duplicative of the discovery Ambac would presumably receive from Milliman directly.

21. On March 12, 2021, Milliman informed Ambac that its document collection would be limited to emails of one custodian (a Milliman employee named Glenn Bowen) with certain email domains (retiro.pr.gov; srm.pr.gov; aafaf.pr.gov; ankura.com; hacienda.pr.gov; omm.com; and promesa.gov), and that "[p]arameters from there will depend on volume." (Ex. E. (February 25, 2021 to March 12, 2021 email chain between A. Glenn and F. Harrison.).) To justify its use of only one document custodian, Milliman represented that Mr. Bowen was the only point of contact with the Government Parties and the Commonwealth. (*Id.*) However, Ambac's review of emails produced in the ERS litigation has identified a number of other Milliman employees who were regularly in contact with the Government Parties and the Commonwealth, including on communications that did not include Mr. Bowen.[4]

22. In a further effort to obtain responsive documents without Court intervention, Ambac sent Milliman a letter on March 18, 2021, raising concerns about Milliman's search parameters and requesting confirmation that Milliman would promptly produce responsive documents. (Ex. H (Letter from A. Glenn to F. Harrison, dated March 18, 2021.).) By email dated March 22, 2021, Milliman simply stated that it "disagree[d] with just about everything" in Ambac's letter, but again failed to provide any explanation as to how it did not have responsive documents that were referenced in its own Actuarial Valuation Reports. (Ex. I (March 22, 2021 to April 19, 2021 email chain between A. Glenn and F. Harrison.).) And when Ambac identified

---

[4] *See, e.g.,* ERS_0090984, ERS_0078367. The preceding documents have been marked confidential by AAFAF, and therefore, Ambac has not attached them to its motion at this time. If necessary, Ambac can produce the materials to the Court under seal upon request.

9

the Milliman custodians it had identified in emails produced in the ERS litigation, Milliman erroneously asserted that Mr. Bowen "would be on any e-mails with [them]," without explaining the basis for that incorrect conclusion. (*Id.*)

23. Despite a representation from counsel that Milliman would make a production during the week of April 5, 2021, Milliman made no such production. (*Id.*) After Ambac followed up, counsel for Milliman failed to respond until April 19, 2021, at which point counsel represented that Milliman "should" have a production out by Friday, April 23, 2021. (*Id.*) At the time of the filing of this Motion, Ambac still has not received any of the emails Milliman has agreed to produce.[5]

24. Milliman still has not produced the emails it agreed to produce, despite a representation from counsel that he would do so during the week of April 5, 2021. (*Id*.) After Ambac followed up, counsel for Milliman responded on April 14, 2021, stating that he was "trying to get [Ambac] a realistic date today." (*Id*.) Ambac did not respond until April 19, 2021, representing that Milliman "should" have a production out by Friday, April 23, 2021. (*Id.*). However, as counsel has previously represented that Milliman will only produce a limited set of communications with *one* custodian, Ambac expects a production, *if* one is made, to be patently and unreasonably deficient.

25. During the meet and confer process, Ambac has sought in good faith to understand Milliman's bald assertions that it lacks documents and communications. By email dated April 7, 2021, counsel for Ambac requested information concerning Milliman's "representation that no documents exist concerning certain of the actuarial assumptions identified by Ambac and

---

[5] While Milliman has purportedly agreed to produce certain communications, it is limiting any such production to one custodian even after Ambac demonstrated that other Milliman employees have relevant documents. (*Id.*)

10

4820-0511-4079, v. 10.1

to potentially narrow the scope of any dispute that the Court must resolve" and asked Milliman to confirm whether Milliman has and will produce: "(i) a table of contents or summary of its files related to the pension valuation reports; (ii) any engagement letters relating to any pension-related services rendered for the Commonwealth; and (iii) any document retention policies in place during the period of Ambac's document requests." (Ex. J (April 7, 2021 email chain between F. Harrison and A. Glenn.).) Counsel for Milliman responded dismissively that it had "no responsive documents", refused to produce the other documents requested, including the document retention policies, and averred that Milliman should not have to produce more discovery. (*Id.*)

26. Milliman has left Ambac no choice but to file this motion to compel.

## ARGUMENT

27. Rule 2004 of the Bankruptcy Rules, made applicable to these Title III cases by section 310 of PROMESA, allows the Court to order an examination relating to the "acts, conduct or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bank. P. 2004(b). The scope of a Rule 2004 investigation is "very broad." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991); *In re China Fishery Grp. Ltd.*, 2017 WL 3084397, at *4 (Bankr. S.D.N.Y. July 19, 2017) (noting that Rule 2004 discovery can be "legitimately compared to a fishing expedition") (citation omitted). The Court granted Ambac's Rule 2004 motion to subpoena documents and deposition testimony from Milliman on January 13, 2021, and Ambac promptly served the Subpoena on Milliman.

28. To date, Milliman's response to the Subpoena has been wholly deficient. Milliman has represented that it does not have any documents showing (i) the assumptions relied on in the Actuarial Valuation Reports, including, but not limited to, assumptions regarding mortality,

11

incidence of retirement and disability, and employee turnover, (ii) analyses of plan experience (referred to in the Actuarial Valuation Reports as "experience studies"), (iii) results of death audits, or (iv) copies of the input screens for the valuation software showing plan provisions valued and assumptions used.

29. Milliman's blunt, unexplained representations strain credulity. With respect to assumptions and experience studies relied on in the reports, Milliman's own Actuarial Valuation Reports contain multiple references to such documents. *See supra* at 6-8. As to death audits, Milliman itself represents in publications to clients that such audits are a standard and common tool used to detect fraud, overpayment, and compliance risks within the pension system. *See* Milliman, DB Digest: Best Practices for Pension Administration, *Fiduciary Responsibilities: Wanted dead or alive* (2017), *available at* https://us.milliman.com/-/media/milliman/importedfiles/uploadedfiles/insight/periodicals/db-digest/pdfs/fiduciary-responsibilities-dead-or-alive.ashx ("[C]areful tracking of the life status of retirees through a continuous death audit is recommended."). And with respect to copies of ProVal input screens showing plan provisions valued and assumptions used, there is no plausible explanation for how Milliman could have no responsive documents showing these screens, which can be printed directly from the ProVal program. The Court should order Milliman to produce these materials.

30. To the extent Milliman continues to assert that it has no responsive documents, it should be ordered to explain, in meaningful detail, the efforts it has undertaken to locate them. Thus far, Milliman has failed to provide any response as to how documents referenced in its own Actuarial Valuation Reports could not be in its possession, custody, or control, nor has it provided information regarding the nature and scope of its search, such as which individuals it consulted,

12

the locations from which it collected documents, or any parameters it applied when undertaking its search.

31. Milliman should also be ordered to produce a records custodian for a deposition concerning its search for responsive documents to date. Without such information, Ambac is unable to evaluate Milliman's assertions that these indisputably responsive documents are not within its possession, custody, or control.

32. Finally, with respect to Milliman's communications with the Government Parties and the Commonwealth, Ambac has been awaiting Milliman's production for weeks. These email communications are essential to test the accuracy and assess the reasonableness of the Commonwealth's estimated $55 billion pension liability, especially in the face of Milliman's representations that it has no other documents showing assumptions or experience studies used in its analysis. This is exactly the kind of evidence that Rule 2004 is designed to elicit. *See, e.g.*, *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("[A]ssist[ing] a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, [and] examining transactions" is the very "purpose of a Rule 2004 examination."). Accordingly, Ambac requests that this Court order Milliman to produce the communications with Mr. Bowen that it previously agreed to produce. The Court should also order Milliman to produce any additional communications between Milliman personnel (including, but not limited to Mr. Bowen) with the three retirement system employees that AAFAF previously identified as having contact with Milliman. Ambac reserves all rights to seek additional communications from Milliman after it reviews any productions it receives from Milliman.

33. Milliman cannot delay production any longer. The Title III proceedings are at a critical stage. The materials requested in the Subpoena are necessary to evaluate the accuracy of

Milliman's conclusions, the integrity of the data on which Milliman relied, and the analytical process that led to Milliman's conclusions and ultimately, to the $55.6 billion pensions liability figure presented by the Board in the Commonwealth's fiscal plan (by far, the largest liability of the Commonwealth).

## **CERTIFICATION**

34. Pursuant to Paragraph I.H of the *Thirteenth Amended Notice, Case Management and* Administrative *Procedures* (Dkt. No. 13512), Ambac hereby certifies that it has carefully examined the matter and concluded that there is a true need for an urgent motion; has not created the urgency through any lack of due diligence; and has made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court.

35. Undersigned counsel hereby certifies that, prior to filing this motion, Ambac's counsel engaged in significant efforts to meet-and-confer with Milliman, including a telephonic meet-and-confer and several emails and letter correspondence. *See* Exhibits E, H, I, J. Ambac believes that the parties are at an impasse on the issues presented in this motion.

## **NO PRIOR REQUEST FOR RELIEF**

36. No previous request for the relief sought herein has been made by Ambac to this or any other Court.

4820-0511-4079, v. 10.1

Dated: April 20, 2021
       San Juan, Puerto Rico

                                        **FERRAIUOLI LLC**
                                        By: ***/s/ Roberto Cámara-Fuertes***
                                            Roberto Cámara-Fuertes (USDC-PR No. 219002)
                                            Sonia Colón (USDC-PR No. 213809)
                                            221 Ponce de León Avenue, 5th Floor
                                            San Juan, PR 00917
                                            Telephone: (787) 766-7000
                                            Facsimile: (787) 766-7001
                                            Email: rcamara@ferraiuoli.com
                                                           scolon@ferraiuoli.com

                                        **GLENN AGRE BERGMAN & FUENTES LLP**
                                        By: /s/ Andrew K. Glenn
                                            Andrew K. Glenn (admitted *pro hac vice*)
                                            Olga Fuentes-Skinner (admitted *pro hac vice)*
                                            Marissa E. Miller (admitted *pro hac vice)*
                                            55 Hudson Yards – 19th Floor
                                            New York, New York 10001
                                            Telephone: (212) 358-5600
                                            Email: aglenn@glennagre.com
                                                          ofuentes@glennagre.com
                                                          mmiller@glennagre.com

                                      ***Attorneys for Ambac Assurance Corporation***

4820-0511-4079, v. 10.1

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com