# EXHIBIT H

# GLENN AGRE BERGMAN & FUENTES LLP

Andrew K. Glenn
aglenn@glennagre.com
55 Hudson Yards, 20th Floor
New York, NY 10001
(212) 358-5600

March 18, 2021

**BY ELECTRONIC MAIL**

Frank S. Harrison, Esq.
Williams Kastner
601 Union Street, Suite 4100
Seattle, Washington 98101-2380

   Re: Failure to Comply with Subpoena to Milliman, Inc. ("Milliman")

Dear Frank:

  We represent Ambac Assurance Corporation ("Ambac"), a creditor of the Commonwealth of Puerto Rico (the "Commonwealth") in the Commonwealth's restructuring proceedings.  We write concerning the *Subpoena To Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Civil Action* served by Ambac on Milliman on January 15, 2021 (the "Subpoena").[1]  As set forth below, Milliman has failed to comply with the Subpoena, and Ambac intends to file a motion to compel unless Milliman voluntarily complies.

  The Second Amended Joint Plan of Adjustment and Disclosure Statement filed by the Board estimates the pension liability amount at $55.6 billion based on the 2016 Actuarial Valuation Reports[2] prepared by Milliman.  The Subpoena seeks, *inter alia*, documents Milliman used or relied upon in preparing the Actuarial Valuation Reports.  Milliman's response to date – a mere 22 documents produced alongside unsubstantiated and frankly implausible assertions that standard actuarial documents referenced in Milliman's own reports do not exist – is grossly inadequate.  We have tried repeatedly to meet and confer with you in good faith concerning the deficiencies in Milliman's response to the Subpoena to no avail.

---

[1] Prior to serving the Subpoena, Ambac sought these materials from the Financial Oversight and Management Board for Puerto Rico (the "Board") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF", and together with the Board, the "Government Parties").  The Government Parties informed Ambac that there are materials on which Milliman relied in its Actuarial Valuation Reports that Milliman has not provided to the Government Parties for production to Ambac.  Consequently, Ambac then sought and obtained leave from the Court to serve the Subpoena.

[2] The "Actuarial Valuation Reports" are defined in the Subpoena as the ERS, JRS and TRS valuation reports that Milliman prepared.  *See* Subpoena, Exhibit A at 1-3.

New York
San Francisco
www.glennagre.com

# GLENN AGRE BERGMAN & FUENTES LLP

Frank S. Harrison, Esq.
March 18, 2021
Page 2 of 4

The Subpoena contains 11 document requests concerning the bases for Milliman's Actuarial Valuation Reports.  These requests include, *inter alia*, standard actuarial documents, such as documents and communications "concerning the actuarial or other assumptions considered in connection with the Actuarial Valuation Reports" (Request No. 2) and documents and communications "considered and/or relied upon" by Milliman to determine or calculate pension and projected pension benefit obligations in Milliman's Actuarial Valuation Reports (Request No. 5).  On February 19, 2021, in Milliman's only production in the two months since receiving the Subpoena, Milliman produced 22 documents, comprised of census data and a small number of communications concerning pensions data.

Following the February 16, 2021 telephonic meet and confer and our review of Milliman's production, we promptly requested another meet and confer to address some of the more glaring deficiencies in Milliman's production.  Specifically, we requested immediate production of  (i) studies regarding the assumptions relied on in the Actuarial Valuation Reports, including but not limited to assumptions regarding mortality, incidence of retirement and disability, and employee turnover, (ii) analyses of plan experience (referred to in the Actuarial Valuation Reports as "experience studies"), (iii) results of death audits undertaken over the last ten years with respect to the participant data for each of the retirement systems, (iv) identification of software used for the Actuarial Valuation Reports, (v) copies of the input screens for the valuation software showing plan provisions valued and assumptions used, and (vi) communications with the Government Parties and the Commonwealth concerning Milliman's Actuarial Valuation Reports, the census data, and the assumptions Milliman used from 2016 to the present. (*See* Ex. A (February 25, 2021 to March 12, 2021 email chain between A. Glenn and F. Harrison).)

Communications

By email dated February 26, 2021, Milliman agreed to produce communications with the Government Parties and the Commonwealth concerning the Actuarial Valuation Reports, the census data, and the assumptions Milliman used from 2016 to the present.  However, Milliman subsequently informed Ambac that its document collection would be limited to emails of one custodian (a Milliman employee named Glenn Bowen) with certain email domains (retiro.pr.gov; srm.pr.gov; aafaf.pr.gov; ankura.com; hacienda.pr.gov; omm.com; and promesa.gov), and that "[p]arameters from there will depend on volume."  Milliman has not provided any additional information about the parameters of its review, including time frame or hit counts.  Milliman's proposed approach is wholly insufficient.

While Milliman stated that Mr. Bowen is the only point of contact with the Government Parties and the Commonwealth, a review of emails produced in the ERS litigation identifies a number of other Milliman employees, including Katherine Warren and Tim Nugent, who were regularly in contact with the Government Parties and the Commonwealth.  Ambac has also identified other relevant email domains, including bgfpr.com, onelinkpr.com, and fortaleza.pr.gov.

# GLENN AGRE BERGMAN & FUENTES LLP

Frank S. Harrison, Esq.
March 18, 2021
Page 3 of 4

These custodians and email domains should be included in any search.[3]  Ambac requests that the parties meet and confer as soon as possible regarding the appropriate search parameters for Milliman's email review and reserves all rights to seek additional communications from Milliman.

<u>Assumptions, Experience Studies, Death Audits, and Input Screens</u>

As we repeatedly advised you during our initial meet and confer on February 16, 2021, Ambac is seeking – and is entitled to – *inter alia*, the documents that support Milliman's Valuation Reports, which reports form the basis for the $55.6 billion pension liability claimed by the Commonwealth in the bankruptcy.  In response to our February 25th email requesting the experience studies and assumptions, you responded that "Milliman has no responsive documents." (*Id.*)  You later contended that "Milliman does not have any documents or files showing the assumptions it input, but they are contained in the valuation report itself." (Ex. A)

To facilitate Milliman's production of these highly relevant materials, we then sent you excerpts from *Milliman's own reports* which reference assumptions and experience studies relied upon by Milliman in those reports. (*Id.*) In the face of this incontrovertible evidence that Milliman's Actuarial Valuation Reports reference and rely on assumptions and experience studies, you maintain that you "checked already and told [us that] Milliman does not have documents responsive to [Ambac's] request for experience studies."[4] (*Id.*)  We suggested that these materials should be accessible to Milliman as inputs into the ProVal system, the valuation software that Milliman uses to create its Actuarial Valuation Reports. (*Id.*).  On March 5, 2021, you "confirmed that the assumptions from those studies are contained in Milliman's reports but the studies are not uploaded into ProVal." (*Id.*) Your last communication to us concerning the Actuarial Valuation Reports was on March 5, 2021, and you made similar conclusory and implausible assertions that Milliman is not in possession of the materials upon which it based its own Actuarial Valuation Reports.

Milliman cannot delay production any longer.  The Title III proceedings are at a critical stage with the Commonwealth having just filed its Second Amended Plan of Adjustment last week. The materials requested in the Subpoena are necessary to evaluate the accuracy of Milliman's conclusions, the integrity of the data on which Milliman relied, and the analytical process that led to Milliman's conclusions and ultimately, to the $55.6 billion in pensions liabilities estimated by the Commonwealth (which is, by far, the largest liability of the Commonwealth).

Please confirm the following by the close of business on March 22, 2021:

---

[3]       Ambac has also identified communications between Milliman employees and Commonwealth employees using gmail.com, yahoo.com, and msn.com domain names, which further indicates that Milliman's proposed search terms are insufficient to capture all relevant communications.

[4]       We note that your response throughout our correspondence only references experience studies; it has provided no explanation for Milliman's failure to produce documents concerning assumptions referenced in the Actuarial Valuation Reports, results of death audits, or copies of ProVal input screens that are likewise subject to the Subpoena.

New York
San Francisco
www.glennagre.com

## GLENN AGRE BERGMAN & FUENTES LLP

Frank S. Harrison, Esq.
March 18, 2021
Page 4 of 4

1. Milliman will produce the assumptions that are subject to the Subpoena and referenced in the Actuarial Valuation Reports, and advise on when we can expect production of the same;

2. Milliman will produce the experience studies input into ProVal for the Actuarial Valuation Reports referenced in the Subpoena, and advise on when we can expect production of the same;

3. Milliman will produce the results of death audits undertaken over the last ten years with respect to the participant data for each of the retirement systems, and advise on when we can expect production of the same;

4. Milliman will produce copies of the input screens for the ProVal valuation software showing plan provisions valued and assumptions used, and advise on when we can expect production of the same; and

5. Milliman will comply with the rest of the Subpoena, including requests for communications with the Government Parties, and advise on when we can expect production of the same.

Ambac reserves all rights.

Very truly yours,

Andrew K. Glenn