# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>        v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendant Objectors. | Adv. Proc. No. 20-00003-LTS<br><br>PROMESA<br>Title III |

---

[1]    The Debtors in these jointly administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 20-00004-LTS |
| as representative of | PROMESA<br>Title III |
| THE COMMONWEALTH OF PUERTO RICO, | |
| Plaintiff, | |
| v. | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | |
| Defendant Objectors. | |
| THE COMMONWEALTH OF PUERTO RICO, by and through THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 20-00005-LTS |
| Movant, | PROMESA<br>Title III |
| v. | |
| AMBAC ASSURANCE CORPORATION, *et al.*, | |
| Defendant Objectors. | |

**OBJECTION OF ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP., AND NATIONAL
PUBLIC FINANCE GUARANTEE CORPORATION TO OFFICIAL COMMITTEE OF
UNSECURED CREDITORS' (I) RESPONSE TO MOTION OF COMMONWEALTH OF
PUERTO RICO, BY AND THROUGH FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD, FOR STAY RELIEF GRANTING LEAVE TO PROSECUTE
FURTHER MOTIONS FOR PARTIAL SUMMARY JUDGMENT, AND (II) URGENT
CROSS-MOTION FOR STAY RELIEF FOR LEAVE TO FILE LIMITED OBJECTION,
OR IN THE ALTERNATIVE, TO INTERVENE (ECF NO. 16403)**

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .........................................................................................................................3

ARGUMENT ...............................................................................................................................6

I.       THE COMMITTEE'S PROPOSED CLAIM OBJECTIONS SHOULD
         NOT BE CONSIDERED UNTIL THIS COURT RULES ON THE
         PLANS OF ADJUSTMENT EFFECTUATING THE SETTLEMENT IN
         PRINCIPLE. .............................................................................................................6

II.      COUNTS AGAINST THE DEFENDANT OBJECTORS FALL
         OUTSIDE THE SCOPE OF THE COMMITTEE CROSS-MOTION,
         AND NO RELIEF SHOULD BE GRANTED AS TO SUCH COUNTS. ..............8

III.     THE COMMITTEE'S ALTERNATIVE REQUEST FOR EXPANDED
         INTERVENTION RIGHTS SHOULD ALSO BE DENIED. ................................9

         A.      The Committee's Alternative Intervention Request Should Be
                 Denied As An Improper Attempt To Interfere With The Settlement
                 In Principle. ...............................................................................................10

         B.      The Committee's Alternative Request For Expanded Intervention
                 Should Also Be Denied As Untimely. .......................................................11

CONCLUSION...........................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Assured Guaranty Corp. v. Fin. Oversight & Mgmt. Bd. of P.R.,
  872 F.3d 57 (1st Cir. 2017) ...........................................................................11

Banco Popular de Puerto Rico v. Greenblatt,
  964 F.2d 1227 (1st Cir. 1992) ...................................................................12, 13

Candelario–Del–Moral v. UBS Financial Services Inc. of P.R.(In re Efron),
  746 F.3d 30 (1st Cir. 2014) ...........................................................................12

Culbreath v. Dukakis,
  630 F.2d 15 (1st Cir. 1980) ...........................................................................13

Garrity v. Gallen,
  697 F.2d 452 (1st Cir. 1983) .........................................................................13

In re Heritage Org., L.L.C.,
  375 B.R. 230 (Bankr. N.D. Tex. 2007) .........................................................6

In re Kaiser Aluminum Corp.,
  339 B.R. 91 (D. Del. 2006) ...........................................................................7

R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.,
  584 F.3d 1 (1st Cir. 2009) ....................................................................11, 12, 13


**Statutes and Other Authorities:**

Fed. R. Civ. P. 24(a) .......................................................................................11

Assured Guaranty Corp. ("AGC"), Assured Guaranty Municipal Corp., ("AGM", and together with AGC, "Assured"), and National Public Finance Guarantee Corporation ("National") (together, the "Defendant Objectors"), solely in their capacities as defendants in the Revenue Bond Adversary Proceedings,[2] hereby submit this objection (the "Objection") to the *Official Committee of Unsecured Creditors' (I) Response to Motion of Commonwealth of Puerto Rico, By and Through Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute Further Motions For Partial Summary Judgment, and (II) Urgent Cross-Motion For Stay Relief For Leave To File Limited Objection, Or In the Alternative, To Intervene* (ECF No. 16403, the "Committee Cross-Motion"), and respectfully state as follows:

## PRELIMINARY STATEMENT

1.     The Committee Cross-Motion is a cross-motion to the *Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute Further Motions For Summary Judgment* (ECF No. 16326, the "FOMB Stay Relief Motion"), through which the Committee seeks authorization to file certain claim objections under Section 502 of the Bankruptcy Code (the "Proposed Claim Objections"), or, in the alternative, asks to expand its rights as an intervenor in the Revenue Bond Adversary Proceedings.[3]   The Proposed Claim Objections would purportedly be on the same schedule as the Motions for Partial Summary Judgment proposed in the FOMB Stay Relief Motion,

---

[2] On February 22, 2021, the Defendant Objectors conditionally joined a plan support agreement "solely in their capacities as insurers, and asserted holders, deemed holders, or subrogees with respect to GO Bonds and PBA Bonds," each as defined in that plan support agreement.  For the avoidance of doubt, the Defendant Objectors do not file this Objection in their capacities as insurers, and asserted holders, deemed holders, or subrogees with respect to GO Bonds and PBA Bonds.

[3] Capitalized terms used in this Objection but not defined herein shall have the meanings ascribed to them in the Committee Cross-Motion.  Unless otherwise indicated, ECF numbers referenced in this Objection refer to the docket in Case Number 17-3283-LTS.

and would be limited to arguments that relate to the counts at issue in FOMB's proposed Motions for Partial Summary Judgment.

2.   On April 12, 2021, FOMB announced that it had reached an "Agreement in Principle" with the Defendant Objectors to settle the Revenue Bond Adversary Proceedings and other Revenue-Bond-related issues and litigation (see "Exhibit A", attached hereto, the "Settlement in Principle").  The Defendant Objectors and FOMB are currently in the process of negotiating definitive documentation of the Settlement in Principle.  See, e.g. FOMB "Statement" dated April 20, 2021 (attached hereto as "Exhibit B").  Once implemented through plans of adjustment for the Commonwealth, CCDA, and HTA (collectively, the "Plans of Adjustment"),[4] the Settlement in Principle will resolve the Revenue Bond Adversary Proceedings as to the Defendant Objectors.  Moreover, the Defendant Objectors anticipate that, pending implementation of the Settlement in Principle through the Plans of Adjustment, FOMB's request to file additional Motions for Partial Summary Judgment will be stayed, withdrawn, or otherwise resolved as it relates to the Defendant Objectors.

3.   In light of the Settlement in Principle, the Committee Cross-Motion should be denied for a number of reasons.

4.   First, consistent with this Court's prior rulings in the PREPA, Commonwealth, and ERS cases, the Committee should not be permitted to pursue a claim objection with respect to claims that FOMB is proposing to settle.  Rather, the Committee's request to file Proposed Claim Objections should be denied or deferred pending this Court's consideration of the Settlement in Principle in the context of confirmation proceedings with respect to the Plans

---

[4] It is possible that elements of the Settlement in Principle could be implemented by means other than a plan of adjustment, such as through a "Qualifying Modification" under Title VI of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").

of Adjustment.  Permitting the Committee to proceed with the Proposed Claim Objections at this

time would undermine the important policy of promoting settlements in bankruptcy proceedings.

See Argument § I below.

5.      Second, the Proposed Claim Objections are coextensive with the counts of

the Revenue Bond Complaints with respect to which FOMB proposes to file new Motions for

Partial Summary Judgment.  In light of the Settlement in Principle, however, it is not anticipated

that FOMB will move forward with any Motions for Partial Summary Judgment with respect to

counts that relate to the claims of the Defendant Objectors.  For that reason, the Defendant

Objectors' claims fall outside the scope of the Committee Cross-Motion, and no relief should be

granted to the Committee with respect to the Defendant Objectors' claims or the corresponding

counts of the Revenue Bond Complaints.  See Argument § II below.

6.      Third, as an alternative to filing Proposed Claim Objections, the Committee

asks that it be granted expanded intervention rights, including the right to file its own summary

judgment motions.  The Committee's alternative request for expanded intervention rights should

also be denied, because (i) it represents an improper attempt to interfere with the Settlement in

Principle (see Argument § III.A below), and (ii) the Committee's request for intervention is not

"timely" as required by Federal Rule of Civil Procedure 24(a) (see Argument § III.B below).

7.      For all of these reasons and the additional reasons set forth below, the

Committee Cross-Motion should be denied.

## **BACKGROUND**

8.      The Defendant Objectors insure approximately $2.2 billion of revenue

bonds (collectively, the "Revenue Bonds") issued by (i) HTA, (ii) the Puerto Rico Convention

Center District Authority ("CCDA"), and (iii) the Puerto Rico Infrastructure Financing

Authority ("PRIFA").[5]

9.      On January 16, 2020, the Financial Oversight and Management Board for

Puerto Rico ("FOMB") filed complaints (the "Revenue Bond Complaints") commencing the

above-captioned adversary proceedings (the "Revenue Bond Adversary Proceedings").   The

Revenue Bond Complaints seek disallowance of Defendant Objectors' claims against the

Commonwealth related to the Revenue Bonds.

10.      On February 11, 2020, the Official Committee of Unsecured Creditors (the

"Committee") filed a motion to intervene in the Revenue Bond Adversary Proceedings.  See Adv.

Proc. No. 20-3-LTS, ECF No. 9; Adv. Proc. No. 20-4-LTS, ECF No. 11; Adv. Proc. No. 20-5-

LTS, ECF No. 9 (the "Intervention Motions" or "Intervention Mot.").

11.      On March 2, 2020, the Court entered orders granting the Committee limited

intervention rights in the Revenue Bond Adversary Proceedings.  See Adv. Proc. No. 20-3-LTS,

ECF No. 27; Adv. Proc. No. 20-4-LTS, ECF No. 25; Adv. Proc. No. 20-5-LTS, ECF No. 37 (the

"Intervention Orders").

12.      On March 10, 2020, the Court entered its *Final Case Management Order*

*for Revenue Bonds* (ECF No. 12186, the "Final Revenue Bonds Order").   The Final Revenue

Bonds Order authorized FOMB to seek summary judgment with respect to certain, limited counts

of the Revenue Bond Complaints, but otherwise generally stayed the Revenue Bond Adversary

---

[5] Under the applicable insurance agreements and insurance policies, Defendant Objectors are deemed to be the sole holders of the bonds that they insure for purposes of, or otherwise have control rights over, consents and other bondholder actions.   Under the applicable bond resolutions, trust agreements, insurance agreements, and/or insurance policies, Defendant Objectors are also recognized as third-party beneficiaries. In addition, Defendant Objectors have also collectively paid hundreds of millions of dollars in claims under their policies insuring the Revenue Bonds.   Defendant Objectors are now fully subrogated to the rights of the insured holders of the Revenue Bonds for the claims they have paid.

Proceedings.  The Final Revenue Bonds Order provided that "Parties may seek relief from any stay imposed by this Order upon a showing of good cause," and that "[t]he Court reserves the right to deny any such application summarily."  Id. ¶ 10.

13.     On February 22, 2021, FOMB and the Defendant Objectors entered into a plan support agreement (the "CW PSA"), dated as of February 22, 2021, in which the Defendant Objectors, in their capacity as holders and insurers of GO Bonds and PBA Bonds, conditionally agreed to support a Plan of Adjustment for the Commonwealth and PBA, subject to the Defendant Objectors' right to withdraw from the CW PSA in the event the Defendant Objectors and FOMB were unable to agree on a resolution of the Revenue Bond issues at stake in the Revenue Bond Adversary Proceedings by a specified date.

14.     On April 6, 2021, FOMB filed the FOMB Stay Relief Motion (ECF No. 16326).  The FOMB Stay Relief Motion sought relief from the stay imposed by the Final Revenue Bonds Order to permit FOMB to file additional summary judgment motions with respect to additional counts of the Revenue Bond Complaints.  Defendant Objectors filed a Reservation of Rights with respect to such motion on April 19, 2021 (ECF No. 16458).

15.     On April 12, 2021, the Puerto Rico Fiscal Agency and Financial Advisory Authority made a filing on the Electronic Municipal Market Access System, announcing terms of the Settlement in Principle between FOMB and the Defendant Objectors.  See Exhibit A.  In light of the proposed resolution of the Revenue Bond Adversary Proceedings and other Revenue-Bond-related issues through the Settlement in Principle, the Defendant Objectors have not exercised their right to terminate the CW PSA, and they remain parties to the CW PSA.  The deadline to terminate the CW PSA is currently April 22, 2021 at 5:00 PM EDT.

16.     On April 13, 2021, the Committee filed the Committee Cross-Motion (ECF No. 16403).

## ARGUMENT

**I.      The Committee's Proposed Claim Objections Should Not Be Considered Until This Court Rules On The Plans Of Adjustment Effectuating The Settlement In Principle.**

17.      Through the Committee Cross-Motion, the Committee inappropriately seeks to file objections to claims that are subject to the Settlement in Principle.  On three prior occasions, when the Committee sought to prosecute objections to claims that were subject to pending settlements, the Court properly rejected the Committee's requests, reasoning that it should not consider a claim objection before evaluating a proposed settlement.  The result here should be no different.

18.      First, the Committee sought to prosecute nearly identical claim objections to certain revenue bonds issued by PREPA and that were subject to a pending settlement.  See ECF No. 9060 (seeking disallowance of claims on basis that the bond claims were allegedly non-recourse).  This Court properly rejected the Committee's attempt to bring a claim objection with respect to claims that FOMB was proposing to settle.  See ECF No. 9695 (the "PREPA Order").  In the PREPA Order, this Court found that the Committee's claim objection should not be heard until after consideration of the proposed settlement.  In particular, in terminating the Committee's PREPA claim objection, the Court found instructive the reasoning in In re Heritage Org., L.L.C., which held that "[w]hile any party in interest has a statutory right to object to a claim, the **Trustee, as the representative of the estate, has the ability to compromise that objection**, as long as the objectant is given notice and an opportunity to be heard with respect to the fairness and wisdom of the compromise."[6]  PREPA Order, at 5 (quoting In re Heritage Org., L.L.C, 375 B.R. 230, 285 (Bankr. N.D. Tex. 2007)) (emphasis added).  Further, this Court emphasized the importance of settlements and noted that consideration of a claim objection prior to consideration of a proposed

---

[6] Although FOMB is not technically a "Trustee," it exercises certain functions similar to a traditional bankruptcy trustee, such as objecting to claims.

settlement would "undermine the important policy of promoting settlements in bankruptcy proceedings by requiring the parties to litigate the very issues that the settlement seeks to resolve." PREPA Order, at 6 (quoting In re Kaiser Aluminum Corp., 339 B.R. 91, 94 (D. Del. 2006)).

19. Second, for similar reasons, the Court later entered an order in the Commonwealth case denying the Committee's request to lift a litigation stay in order to pursue a claim objection against certain claims based on GO bonds. See ECF No. 14331 (the "GO Order"). The Court explained the reasoning behind this order at the September 16, 2020 omnibus hearing, where the Court stated that it was denying the Committee's request in order to permit FOMB and other stakeholders "to continue their efforts to negotiate a settlement that could form a basis for an amended and confirmable plan of adjustment, [while also preventing], or at least keep[ing] in abeyance, a scenario in which litigation flourishes and stymies forward movement." Tr. of Sept. 16, 2020 Omnibus Hr'g at 83:11-18.

20. Third, most recently, the Court re-affirmed the reasoning of the PREPA Order in its *Order (I) Granting Urgent Joint Motion to Stay Certain Contested Matters and Adversary Proceedings related to the Bonds issued by the Employees Retirement System of the Government of the Commonwealth of Puerto and (II) Adjourning April 29, 2021, Oral Argument* (ECF No. 16385, the "ERS Order"), which overruled the Committee's objection to a proposed stay of the Committee's ERS-related claim objections "for substantially the reasons set forth" in the PREPA Order. See ERS Order, at 6.[7]

---

[7] The Committee argues that its request to file the Proposed Claim Objections "should not be problematic, because the Court has already sanctioned litigating claim objections and adversary proceedings in parallel in the ERS context." See Committee Cross-Motion ¶ 5. This argument ignores the fact that the Court subsequently stayed *both* the claim objections *and* the adversary proceedings through the ERS Order once there was a settlement. The ERS precedent therefore weighs against permitting the Committee to continue litigating *either* claim objections *or* adversary proceedings here, given the Settlement in Principle.

21.     Given that the claims underlying the Committee's Proposed Claim Objections are likely to be resolved through the Settlement in Principle, this Court should follow its precedent in the PREPA Order, GO Order, and ERS Order, and deny the Committee Cross-Motion as to the Defendant Objectors pending the Court's consideration of the Settlement in Principle in the context of confirmation proceedings with respect to the Plans of Adjustment.  As in these prior orders, denying the Committee Cross-Motion will prevent FOMB and the Defendant Objectors from being forced to litigate claims that they are proposing to settle, and will therefore serve the important policy of promoting settlements in bankruptcy.

## II.    Counts Against The Defendant Objectors Fall Outside The Scope Of The Committee Cross-Motion, And No Relief Should Be Granted As To Such Counts.

22.     Importantly, the Proposed Claim Objections that the Committee seeks authority to file are "**limited to the matters addressed by the <u>counts</u> subject to [FOMB's] Motions for Partial Summary Judgment**." Committee Cross-Motion ¶ 16 (emphasis added). The Committee also states that the Proposed Claim Objections will "**not expand the scope of the litigation of the Oversight Board's Motions for Partial Summary Judgment** or interfere with its progress." <u>Id.</u> (emphasis added).

23.     Although FOMB can provide additional clarification as to the intended scope of its requested relief in the FOMB Stay Relief Motion, the Defendant Objectors' understanding is that FOMB does not intend to proceed with Motions for Partial Summary Judgment with respect to the counts of the Revenue Bond Complaints asserted against the Defendant Objectors in light of the Settlement in Principle.  Indeed, the FOMB Stay Relief Motion indicates on its face that FOMB intends to proceed with Motions for Partial Summary Judgment only with respect to the "Non-PSA Party Defendants," meaning Defendants who, unlike the Defendant Objectors, are not parties to the CW PSA.  <u>See</u> FOMB Stay Relief Motion ¶ 18.  The

FOMB Stay Relief Motion further indicates that FOMB would only "*potentially*" proceed with Motions for Partial Summary with respect to the Defendant Objectors' claims, namely in the event the Defendant Objectors were to exercise their right to terminate the CW PSA. Id. The Defendant Objectors have not terminated the CW PSA, however, and remain parties to the CW PSA at this time. See supra ¶ 15. As a result, the Defendant Objectors are not among the "Non-PSA Party Defendants" to whom FOMB's proposed Motions for Partial Summary Judgment will be directed.

24.     Because the Proposed Claim Objections are coextensive with the counts of the Revenue Bond Complaints on which FOMB proposes to file Motions for Partial Summary Judgment, and because FOMB does not appear to propose to file Motions for Partial Summary Judgment on any additional counts of the Revenue Bond Complaints asserted against the Defendant Objectors, the counts of the Revenue Bond Complaints directed against the Defendant Objectors' claims fall outside the scope of the relief requested in the Committee Cross-Motion. The Committee should therefore not be permitted to file any Proposed Claim Objections with respect to Defendant Objectors' claims.[8]

### III.    The Committee's Alternative Request For Expanded Intervention Rights Should Also Be Denied.

25.     As an alternative to filing the Proposed Claim Objections, the Committee requests that "it be allowed to intervene in certain counts in which the Committee has not already intervened and that the proposed order attached to the Oversight Board's Motion be modified to clarify that the Committee, as intervenor, may also move for partial summary judgment in the adversary proceedings." Committee Cross-Motion ¶ 18. The Committee's alternative request for

---

[8] Notably, each Revenue Bond Complaint asserts separate counts as against each Defendant. Therefore, the counts asserted against the Defendant Objectors are separate and distinct from the counts asserted against the "Non-PSA Party Defendants" and can easily be excluded from any relief to the Committee that might be considered with respect to the Committee Cross-Motion (although no such relief should be granted).

expanded intervention rights should be denied for the same reasons that its request to file Proposed

Claim Objections should be denied, and because the intervention request is untimely.

**A.      The Committee's Alternative Intervention Request Should Be Denied
As An Improper Attempt To Interfere With The Settlement In
Principle.**

26.      At its core, the Committee's alternative request for intervention is just

another attempt by the Committee to interfere with the Settlement in Principle.  Indeed, the

Committee's intervention request seems intended to bestow on the Committee a general ability to

"move for partial summary judgment in the adversary proceedings" (id.), even as to additional

counts not covered by FOMB's already-pending summary judgment motions.  This would

essentially permit the Committee to continue independently litigating counts of the Revenue Bond

Complaints that FOMB has decided to settle.

27.      Like the Committee's primary request for authorization to file Proposed

Claim Objections, the Committee's alternative request for intervention should also be denied based

on the reasoning of the PREPA, GO, and ERS Orders, because permitting the Committee to

independently pursue summary judgment on counts that FOMB is settling or otherwise not

pursuing would threaten the efficacy of the Settlement in Principle and thereby "undermine the

important policy of promoting settlements in bankruptcy proceedings" by requiring ongoing

litigation of "the very issues that the settlement seeks to resolve."  PREPA Order, at 6.

28.      Permitting the Committee to hijack the summary judgment process in this

manner, with the obvious goal of undermining the Settlement in Principle, would also be contrary

to the already existing limitations on the Committee's intervention rights set forth in the original

Intervention Orders, where the Court made clear that it did not intend to permit the Committee to

control or interfere with FOMB's ability to settle.  See, e.g., Intervention Orders at 7 (recognizing

that an intervening party "cannot preclude other parties from settling their own disputes.") (quoting

Assured Guaranty Corp. v. Fin. Oversight & Mgmt. Bd. of P.R., 872 F.3d 57, 64 (1st Cir. 2017)).

Consistent with this Court's prior Intervention Orders, and in order to prevent the Committee from

using its expanded intervention rights as a tool to impede settlements, the Court should deny the

Committee's request to file its own summary judgment motions, particularly with respect to counts

that FOMB intends to settle or has otherwise decided not to pursue.

### B.    The Committee's Alternative Request For Expanded Intervention Should Also Be Denied As Untimely.

29.    The Committee's alternative request for expanded intervention rights

should also be denied as untimely.  Specifically, although the Committee fails to expressly identify

the basis in the Federal Rules of Civil Procedure for its requested intervention, it seems clear that

the Committee is requesting intervention solely under Federal Rule of Civil Procedure 24(a),

which provides that a party may seek intervention as of right on a "timely motion."  Fed R. Civ.

P. 24(a).[9]  In determining timeliness, a court must consider: (i) the length of time that the putative

intervenor knew or reasonably should have known that his interests were at risk before he moved

to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice

to the putative intervenor should intervention be denied; and (iv) any special circumstances

militating for or against intervention.  See R & G Mortg. Corp. v. Federal Home Loan Mortg.

---

[9] Specifically, the Committee bases its entire one-paragraph argument in favor of intervention on the statement that "the Committee has **a statutory right to intervene** in these Counts consistent with First Circuit precedent."  Committee Cross-Motion ¶ 18 (emphasis added).  This statement indicates that the Committee is requesting to intervene pursuant to Federal Rule of Civil Procedure 24(a)(1), which permits intervention, "[o]n timely motion," to a party "given an unconditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(a)(1).  Notably, the Committee makes no request for, or argument in favor of, permissive intervention under Federal Rule of Civil Procedure 24(b), and any argument based on permissive intervention is therefore waived for purposes of the Committee Cross-Motion.  In the event the Court were to permit the Committee to belatedly raise arguments based on permissive intervention, the Defendant Objectors would request an opportunity to brief any arguments the Committee might be permitted to make with respect to that topic.  It should be noted, however, that Rule 24(b), like Rule 24(a), requires a "timely" motion, and Defendant Objectors' timeliness argument as to Rule 24(a) applies with equal force to Rule 24(b).

Corp., 584 F.3d 1, 7 (1st Cir. 2009).  Importantly, in "a motion to intervene as of right, the district

court's discretion is appreciable, **and the timeliness requirement retains considerable bite.**" Id.

at 8 (emphasis added).  Further, in determining the timeliness of an intervention request, "**the most**

**important factor** is the length of time that the putative intervenor knew or reasonably should have

known that his interest was imperilled [*sic*] before he deigned to seek intervention." Candelario–

Del–Moral v. UBS Financial Services Inc. of P.R. (In re Efron), 746 F.3d 30, 35 (1st Cir. 2014)

(emphasis added).

      30.    Given the Committee's delay of over a year in seeking intervention on

additional counts beyond the initial "Intervenor Counts," the Committee's request for additional

intervention rights should be denied based on the First Circuit's four Federal Home Loan Mortg.

Corp. factors:

- First, the Committee knew its rights may be affected as to the additional counts when the Intervention Motions were filed and waited an unreasonable amount of time to seek further intervention.  The First Circuit has stated, "the law contemplates that a party must move to protect its interest no later than when it gains some actual knowledge that a measurable risk exists" and that "[o]nce a potential intervenor has acquired such knowledge . . . [t]he applicant must then act reasonably promptly." See Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1231 (1st Cir. 1992).  Further, "[a]s a case progresses toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies." See R & G Mortg. Corp., 584 F.3d at 7. Here, the Committee was clearly aware that the Revenue Bond Adversary Proceedings could affect any potential interest it had in opposing the Revenue Bond claims.  The Committee first sought intervention over a year ago on February 11, 2020.  In the Intervention Motions, the Committee specified certain counts as to which it was intervening, expressly stating that it "**is also not seeking to intervene in any count to which an objection could be raised in a claim objection.**" See Intervention Motions ¶ 13.  Therefore, the Committee knew: (1) that additional counts in the Revenue Bond Complaints directly related to its ability to file claim objections as to the Revenue Bondholders; and (2) that it was not intervening on such counts.  Although the Committee did reserve the right to later seek intervention on those additional counts, waiting over a year to do so after its initial intervention is inappropriate and in no way indicative that it acted "reasonably promptly."  In fact, the Committee only sought intervention after the Settlement in Principle was announced.  Surely the Committee must have been aware that there was always a potential for the

parties to settle the Revenue Bond Adversary Proceedings.  It was therefore unreasonable for the Committee to lie in wait and refrain from requesting additional intervention rights until such time as its intervention request threatened to wreak maximum havoc on the Settlement in Principle.

- Second, the parties to the Revenue Bond Adversary Proceedings, especially the Defendant Objectors, would be severely prejudiced by a grant of the Committee's requested intervention.  The First Circuit has stated, "the purpose of the basic requirement that the application to intervene be timely is to prevent last minute disruption of painstaking work by the parties and the court." See Culbreath v. Dukakis, 630 F.2d 15, 22 (1st Cir. 1980) (finding proposed intervention prejudiced parties to the proceeding as the case was already subject to a settlement and noting "courts strongly favor resolution of suits such as this one by voluntary agreement").  Here, the Defendant Objectors entered into negotiations on the assumption that any settlement would resolve the Revenue Bond Adversary Proceedings against them entirely, including any and all claim objections that could be brought therein.  Therefore, permitting the Committee's intervention at this stage of the Revenue Bond Adversary Proceedings would disrupt FOMB and the Defendant Objectors' work in implementing the terms of the Settlement in Principle, thus causing severe prejudice not only to the Defendant Objectors, but potentially to FOMB, the Commonwealth, HTA, CCDA, and PRIFA as well.

- Third, the Committee will not be unduly prejudiced by a denial of further intervention rights.  In the First Circuit, this factor "requires that [the Court] determine whether the movant, had intervention been allowed, would have 'enjoy[ed] a significant probability of success on the merits.'"  See Banco Popular de Puerto Rico, 964 F.2d at 1232 (quoting Garrity v. Gallen, 697 F.2d 452, 457 (1st Cir. 1983)).  Here, FOMB, which is extremely knowledgeable about the issues at stake in the Revenue Bond Adversary Proceedings, has already agreed to settle those issues on the terms set forth in the Settlement in Principle.  It seems highly unlikely that the Committee, by perpetuating the litigation, would be able to achieve some outcome significantly better than the settlement already agreed to by FOMB, and FOMB, in agreeing to the Settlement in Principle, no doubt took into consideration the possibility that a litigated outcome could be far worse for the Commonwealth, HTA, CCDA, and PRIFA than the Settlement in Principle.  The Committee's likelihood of achieving a litigated outcome superior to the Settlement in Principle therefore appears to be low, and there is significant risk that further litigation could result in a merits ruling unfavorable to the Committee, FOMB, the Commonwealth, HTA, CCDA, and PRIFA.

- Fourth, the only special circumstances that exist here reinforce the need for denial of the Committee's request for additional intervention rights.  The First Circuit has stated, "[r]equests for post-settlement intervention are rarely granted."  R & G Mortg. Corp., 584 F.3d at 10 (finding that no special circumstances existed to justify intervention and suggesting that post-settlement intervention is itself an unusual "posture of the case" that would lead to denial of an intervention request). The Revenue Bond Adversary Proceedings are typical actions against claimholders

13

in restructuring proceedings.  No "special circumstance" exists in these cases that would suggest further intervention rights should be afforded to the Committee. Rather, the existence of the Settlement in Principle is a "special circumstance" that weighs against granting intervention.

31.     Therefore, application of the First Circuit's four-factor test dictates that the

Committee's alternative request for expanded intervention rights is untimely and should be denied.

## **<u>CONCLUSION</u>**

32.     WHEREFORE, the Committee Cross-Motion should be denied.

Dated:       April 21, 2021
             New York, New York

**CASELLAS ALCOVER & BURGOS P.S.C.**

/s/ Heriberto Burgos Pérez
Heriberto Burgos Pérez
USDC-PR No. 204,809
Ricardo F. Casellas-Sánchez
USDC-PR No. 203,114
Diana Pérez-Seda
USDC-PR No. 232,014
E-mail:   hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

P.O. Box 364924
San Juan, PR 00936-4924
Tel.:  (787) 756-1400
Fax:  (787) 756-1401

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ Eric Pérez-Ochoa
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ Luis A. Oliver-Fraticelli
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

*Attorneys for National Public Finance Guarantee Corp.*

**CADWALADER, WICKERSHAM & TAFT LLP**

/s/ Howard R. Hawkins, Jr.
Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William Natbony*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, New York 10281
Tel.:  (212) 504-6000
Fax:  (212) 406-6666
E-mail:  howard.hawkins@cwt.com
         mark.ellenberg@cwt.com
         bill.natbony@cwt.com
         thomas.curtin@cwt.com
         casey.servais@cwt.com

* admitted *pro hac vice*
*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ Robert S. Berezin
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
           gregory.silbert@weil.com
           robert.berezin@weil.com
           kelly.diblasi@weil.com
           gabriel.morgan@weil.com

*Attorneys for National Public Finance Guarantee Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, this 21st day of April, 2021.

By: _/s/ *Howard R. Hawkins, Jr.*_
Howard R. Hawkins, Jr.*
* admitted *pro hac vice*