**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Plaintiff,<br>          v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS<br><br>PROMESA<br>Title III |

---

[1] The Debtors in these jointly-administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

THE COMMONWEALTH OF PUERTO RICO, by
and through THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     Movant,

          v.

AMBAC ASSURANCE CORPORATION,
ASSURED GUARANTY CORP., FINANCIAL
GUARANTY INSURANCE COMPANY, and U.S.
BANK TRUST NATIONAL ASSOCIATION, as
Trustee,

     Respondents.

---

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Plaintiff,

          v.

AMBAC ASSURANCE CORPORATION, *et al.*,

     Defendants.

Adv. Proc. No. 20-00004-LTS

PROMESA
Title III

---

THE COMMONWEALTH OF PUERTO RICO, by
and through THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     Movant,

          v.

AMBAC ASSURANCE CORPORATION,
ASSURED GUARANTY CORPORATION,
FINANCIAL GUARANTY INSURANCE
COMPANY, and THE BANK OF NEW YORK
MELLON, as Fiscal Agent,

     Respondents.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Plaintiff,
             v.

AMBAC ASSURANCE CORPORATION, *et al.*,

     Defendants.

THE COMMONWEALTH OF PUERTO RICO, by
and through THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     Movant,

           v.

AMBAC ASSURANCE CORPORATION,
ASSURED GUARANTY CORP., ASSURED
GUARANTY MUNICIPAL CORP., NATIONAL
PUBLIC FINANCE GUARANTEE
CORPORATION, FINANCIAL GUARANTY
INSURANCE COMPANY, PEAJE INVESTMENTS
LLC, and THE BANK OF NEW YORK MELLON,
as Fiscal Agent,

     Respondents.

Adv. Proc. No. 20-00005-LTS

PROMESA
Title III

**REPLY MEMORANDUM (I) IN SUPPORT OF MOTION OF THE COMMONWEALTH
OF PUERTO RICO, BY AND THROUGH THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD, FOR ORDER GRANTING STAY RELIEF TO PERMIT
PROSECUTION OF FURTHER MOTIONS FOR PARTIAL SUMMARY JUDGMENT,
AND (II) IN RESPONSE TO OBJECTIONS OF AMBAC,
BANK OF NEW YORK MELLON, U.S. BANK AND FGIC**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .........................................................................................................................4

    A.    The Commonwealth Is Entitled to Rulings on its Objections to Defendants'
Claims Prior to Plan Confirmation ................................................................................4

    B.    Defendants' Objections to Resolving their Remaining Claims Against the
Commonwealth Through Further Summary Judgment Motions Are Meritless ......8

        1.    Defendants Object Because Not All Counts Of The Complaints Will Be
Resolved, Overlooking The Specified Counts Will Resolve All
Defendants' Remaining Claims ............................................................................8

        2.    Defendants' Contention The Commonwealth Is Unlikely To Prevail On Its
Further Motions for Summary Judgment Is Not A Ground On Which To
Preclude The Motions From Being Prosecuted .......................................10

        3.    No Further Discovery Should Be Required Regarding The Further
Summary Judgment Motions; In Any Event, Defendants May Seek
Appropriate Discovery If They Can Satisfy Rule 56(d)..........................11

    C.    Defendants Offer No Principled Reason for Lifting the Stay Entirely ................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.),*
297 F. Supp. 3d 269 (D.P.R. 2018), *aff'd,* 927 F.3d 597 (1st Cir. 2019) ...............................3

*CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.,*
259 F.R.D. 398 (D. Minn. 2009) ..........................................................................11

*Hawkes v. BSI Fin., Inc.,*
444 F. Supp. 3d 260 (D. Mass. 2020).................................................................11

*In re 50-Off Stores, Inc.,*
231 B.R. 592 (W.D. Tex. 1999)............................................................................8

*In re Fin. Oversight & Mgmt. Bd. for P.R.,*
485 F. Supp. 3d 351 (D.P.R. 2020), *aff'd, Assured Gaur. Corp. v. Fin.
Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.),*
989 F.3d 170 (1st Cir. 2021) ................................................................ 3, 8, 15

*Jones v. Me. Dep't of Corrections,*
No. 13-cv-00476-JAW, 2014 WL 3784240 (D. Me. July 31, 2014) .....................12

*MAZ Partners LP v. PHC, Inc. (In re PHC Inc. S'holder Litig.),*
762 F.2d 138 (1st Cir. 2014).............................................................................12

*Resol. Tr. Corp. v. N. Bridge Assocs., Inc.,*
22 F. 3d 1198 (1st Cir. 1994).............................................................................13

*Watkins v. Monroe,*
No. 18-cv-347, 2019 WL 1869864 (E.D. Tex. Mar. 27, 2019)............................12

STATUTES

11 U.S.C. § 922.................................................................................................3

11 U.S.C. § 928.................................................................................................3

PROMESA § 315(b) ...........................................................................................1

OTHER AUTHORITIES

Steinberg, Howard J., *Bankruptcy Litigation*, 2 Bankruptcy Litigation § 10:45...........................7

To the Honorable United States District Judge Laura Taylor Swain:

The Commonwealth,[1] by and through the Oversight Board, as the sole representative of the Commonwealth pursuant to PROMESA section 315(b), respectfully submits this memorandum in support of its Motion [ECF 16326][2], and in reply to the responses to the Motion by Ambac [ECF 16400] (the "Ambac Opp.") and FGIC [ECF 16419] (the "FGIC Opp.").

## PRELIMINARY STATEMENT

1.      It is common ground that HTA, PRIFA, and CCDA issued billions of dollars of bonds in the aggregate.  It is also common ground that the Commonwealth contemporaneously enacted statutes providing it was not liable for any of those bonds.  But, the bondholder representatives and entities guarantying the bond debt have nevertheless filed claims against the Commonwealth seeking to recover that debt.  Their proofs of claim asserted secured claims and other property interests, priorities, and general unsecured claims.

2.      If any of the claims are allowable, the claimholders will assert entitlements to certain distributions at the confirmation hearing.  The determination of whether the Commonwealth has liability in the first place, and whether it is secured cannot be left to be determined at or after the confirmation hearing.  To delay those determinations is to delay confirmation as the objectors well know.

3.      As explained in the Motion, the absence of any allowable claims, including unsecured claims, against the Commonwealth regarding the Relevant Revenues is the subject of numerous counts stated in the Revenue Bond Complaints currently stayed pursuant to the Revenue Bonds CMO.  The Commonwealth seeks leave to prosecute further partial summary judgment motions concerning those specified counts to disallow the remaining claims asserted in

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.
[2] ECF citations are to Case No. 17-3283 unless otherwise stated.

Defendants' Proofs of Claim.   The Commonwealth submits the further motions for partial summary judgment will (i) resolve all relevant remaining claims in the Proofs of Claim, (ii) significantly simplify necessary determinations during the confirmation hearing, and (iii) help expedite the Commonwealth's exit from Title III.[3]

4.     Ambac (with the Fiscal Agent and the Trustee) and FGIC object to the request to resolve the Commonwealth's claim objections at this time, but offer no principled reason for their objection, nor any expeditious alternative for resolving Defendants' claims. Instead, Defendants advocate "comprehensive litigation" and endless discovery. Ignoring the ongoing discussions overseen by the Mediation Team which have resulted in significant consensus with other parties, they urge the Oversight Board to engage in good faith negotiations which already exist.

5.     Defendants' primary argument appears to be that, because the Oversight Board sought to address Defendants' alleged secured and ownership interest claims as an initial gating issue, and the motions addressing those claims have not yet been decided, the Commonwealth is precluded from pursuing relief regarding Defendants' remaining claims.   There is no legal basis for this position.  The Commonwealth is entitled to timely resolution of its claim objections as set forth in the Revenue Bond Complaints.  The Commonwealth started litigating Defendants' secured claims because they were the main issue in the stay litigation where Defendants insisted the Court could not issue final rulings.  That it made sense to complete the resolution of Defendants' secured claims in no way diminishes the need to resolve the other claims.

6.     Defendants' other objections to the procedure by which the Commonwealth seeks

---

[3] To resolve the PSA Creditors' Limited Objection [ECF 16401] to the Motion (as set forth in the concurrently filed reply to same), the Oversight Board agreed that, if the Court otherwise granted the relief sought herein (to which the PSA Creditors did not object), the Oversight Board would withdraw its request for relief from the litigation stay to prosecute summary judgment motions against Defendants on the "priority" counts: Counts 25, 51, 77 and 101 (Adv. Proc. No. 20-00003), Counts 19, 40, 61 and 80 (Adv. Proc. No. 20-00004), and Counts 19, 42, 65, 88, 111, 133, 155, 176 and 197 (Adv. Proc. No. 20-00005).  Accordingly, the Oversight Board attaches hereto as Exhibit "B" a redline revised proposed order on the Motion deleting only the Subject Counts (on priority) from the requested relief.

to resolve Defendants' remaining claims are also without foundation.  Defendants contend the Oversight Board is taking a "piecemeal" (or "cherry-picked") approach because it seeks to prosecute fewer than all remaining counts in the Revenue Bond Complaints.  The Motion explains, however, the Oversight Board seeks to prosecute only the counts necessary to resolve whether Defendants have *any allowable* claims against the Commonwealth.

7.     Alternatively, Defendants oppose the Motion on the basis the Commonwealth is unlikely to prevail on the counts it seeks to prosecute via summary judgment.  Presumably Defendants had the same view with respect to numerous other positions the Oversight Board has taken, yet the Oversight Board was permitted to advance those positions, often successfully. Indeed, contrary to Ambac's attempt to portray the Oversight Board's current request as a "newly devised strategy," its requested relief is simply a timely, responsible, and predictable response to the claims Defendants filed against the Commonwealth.[4]

8.     Next, Defendants prematurely complain they will need discovery to defend their alleged unsecured claims.  The Oversight Board, however, submits the counts it seeks to prosecute

---

[4] *See* Ambac Opp. ¶¶ 8-17.  Ambac's purported "background" section is laden with irrelevant "facts" and revisionist history painting the Oversight Board's legal positions as a nefarious scheme, but which actually have been necessary responses to Defendants' litigation strategy, and repeatedly confirmed by the courts.  Yet, again, Ambac criticizes the Oversight Board for advising the Court it lacked subject matter jurisdiction and that Ambac's complaint failed to state a claim.  *Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 297 F. Supp. 3d 269, 298 (D.P.R. 2018), *aff'd*, 927 F.3d 597, 302-03 (1st Cir. 2019).  Such arguments only highlight Ambac's thinking that its desire to address the "substantive issues regarding the revenue bonds," Ambac Opp. ¶ 8, in the defective manners it fashioned, should prevail over Article III of the Constitution.  Notably, Ambac does not mention that its substantive claims under Bankruptcy Code §§ 922 and 928 that it did validly litigate were rejected and certiorari was denied by the Supreme Court.  Ambac offers no reason why it could litigate its substantive claims, but the Commonwealth cannot litigate its substantive defenses.  Likewise, when Defendants sought relief from the automatic stay to pursue further litigation that, if successful, would have resulted in a specifically enforceable, nondischargeable Commonwealth obligation concerning the revenue bonds, the Oversight Board, in its representative capacity, objected, and again, this Court and the First Circuit agreed.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 485 F. Supp. 3d 351 (D.P.R. 2020), *aff'd, Assured Gaur. Corp. v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 989 F.3d 170 (1st Cir. 2021) (the "Lift Stay Litigation").  Moreover, it was Defendants, not the Commonwealth, who contended the lift stay motions could not yield final rulings on Defendants' asserted property interests.  *See Joint Status Report with Respect to Further Proceedings Regarding the Revenue Bond Stay Relief Motions* [ECF 13601] ¶¶ 17-18.  In any event, Ambac does not contend the lift stay rulings could have been determinative regarding the unsecured claims the Commonwealth now seeks to disallow, and so Ambac's criticism is irrelevant.

can be decided as a matter of law.  Defendants agree, at least to some extent, as they assert they
have grounds to move to dismiss some of the counts, and freely admit others may be decided as a
matter of law.  Moreover, sequencing further summary judgment motions this way will not
prejudice Defendants.  Defendants are not precluded from seeking further discovery, if they
believe they need it, and the Court will be able to evaluate such a request in the context of the
issues presented by the Commonwealth's further motions.

9.     Intent on delaying the disposition of the claims they filed, Defendants alternatively
argue that, if the Commonwealth is permitted to seek summary judgment on the specified counts,
the stay should be lifted in its entirety.  Thus, while complaining about the resources required to
address targeted motions for summary judgment, Defendants also advocate for engaging in full-
throttle litigation.  This inconsistency aside, Defendants have stated all their alleged claims in their
Proofs of Claim, and the bar date has passed.  And, Defendants' more recently alleged remaining
theories of liability all boil down to the same issue—a demand for payment.  Whether Defendants'
claims against the Commonwealth for payment of the Revenue Bonds are allowable can be
adjudicated through the summary judgment motions the Commonwealth seeks to prosecute.

## ARGUMENT

### A.     The Commonwealth Is Entitled to and needs Rulings on its Objections to Defendants' Claims Prior to Plan Confirmation

10.     Defendants' primary objection to the Motion appears to be that the Oversight Board
first sought to resolve one set of gating issues, and resolution of those issues is currently
proceeding.  Under Defendants' leisurely approach, no other theory of claim disallowance should
commence until the earlier effort is concluded.  Indeed, Defendants assert the Oversight Board's
request to now seek resolution of Defendants' remaining claims is somehow a "course reversal."
Not so.  It is progress.

11.     In February 2020, the Oversight Board supported limited summary judgment briefing on a discrete set of counts "at this time"—*i.e.*, in February 2020. *Response of Financial Oversight and Management Board for Puerto Rico to Amended Report and Recommendation of Mediation Team* [ECF 11492] ¶ 14.  The Oversight Board agreed to first address Defendants' claims of security or other property interests in the Relevant Revenues, as those issues overlapped with issues to be addressed in the Lift Stay Litigation and were proceeding on parallel tracks because Defendants insisted the Lift Stay Litigation cannot result in definitive rulings. *Id.* ¶¶ 13-14.  The Oversight Board also agreed with the Amended Report's recommendation to address discrete counts in the Revenue Bond Complaints seeking disallowance of certain of Defendants' alleged claims based on alleged Contract Clause violations. *Id.* ¶ 14.  The Oversight Board acknowledged attempting to address all Defendants' claims *at that time*, including *all* alleged unsecured claims, could unduly burden the Court and the parties. *Id.*

12.     The Oversight Board recognized, however, as did the Mediation Team, that "an additional gating issue" of whether Defendants have "any allowed unsecured claim against the Commonwealth" respecting the Relevant Revenues would still need to be resolved. *Id.*  The Oversight Board anticipated the parties would subsequently address "some or all of the remaining counts" of the Revenue Bond Complaints. *Id.*  As the Oversight Board foreshadowed, one option for resolving whether Defendants have allowable unsecured claims would be "triaging the remaining counts prior to confirmation"—exactly what it now seeks to do. *Id.* ¶ 14 n.7.  Thus, it should come as no surprise to Defendants that the Oversight Board now seeks leave to prosecute its objections to Defendants' remaining claims against the Commonwealth.

13.     Ambac contends the Motion should be denied and the pending 2020 Partial Summary Judgment Motions should proceed to conclusion *first*, suggesting those motions will

inform the resolution of Defendants' remaining claims.  Ambac Opp. ¶ 6.  Whether Defendants

have a property interest in the Relevant Revenues retained by the Commonwealth is undoubtedly

dispositive as to some of Defendants' remaining claims; without it, for example, Defendants'

asserted takings claim against the Commonwealth must be disallowed.  Memorandum of Law at 2

n.4.  But, the existence of such an interest, if any, is not determinative of *all* claims asserted in

Defendants' Proofs of Claim.[5]  Accordingly, the Oversight Board now seeks to resolve whether

Defendants have *any* allowable claim against the Commonwealth.  And, to the extent such a

resolution requires some closure on the points raised in the 2020 Partial Summary Judgment

Motions, that is no reason to suspend prosecution of (or triaging) other objections given the

anticipated confirmation hearing later this year.  Ambac's motive is transparent.  Despite mouthing

words to the contrary, its goal is to delay confirmation and resolution of these issues as long as

possible.  But, that "goal" is antithetical to aiding the Commonwealth's exit from Title III, and

must be rejected.  Ambac nowhere explains why it can continue litigating its uniformity complaint,

while the Commonwealth should be restrained from defending against Ambac's proof of claim.

14.     And to avoid overlooking the obvious, all the bondholders and other monoline

insurers who have agreed to a restructuring clearly want Defendants' claims resolved so the

restructuring can result in a timely confirmed plan of adjustment.

15.     FGIC, for its part, characterizes the remaining claims the Oversight Board seeks to

resolve as "the Board's ancillary issues."  FGIC Opp. ¶ 24.   These so-called "ancillary issues"

only exist because Defendants asserted their claims against the Commonwealth.  FGIC also

contends permitting the Commonwealth to file further summary judgment motions will "frustrate"

---

[5] As one example, preemption of the statutes on which Defendants rely is a legal issue, which the Commonwealth has addressed respecting Defendants asserted secured claims. Now, the issue of preemption will be directed at Defendants' remaining alleged claims, including whether the "non-impairment" provisions of statutes that have been preempted can give rise to allowable claims.

the Court's ability to resolve the prior motions. *Id.* ¶ 21. But, like Ambac, FGIC fails to provide a cogent explanation for why the 2020 Partial Summary Judgment Motions must be resolved before initiating a resolution process for Defendants' remaining claims.

16.     In this regard, the Lift Stay Litigation is now concluded, and no longer burdens the Court or the parties. Further, the Court considered Defendants' asserted claims to a property or other security interest in the context of the Lift Stay Litigation, and already is well-versed on the issues presented in the 2020 Partial Summary Judgment Motions. Ambac itself acknowledges (at ¶ 19) those motions are close to being fully submitted to the Court. The Oversight Board simply proposes that both the remaining aspects of the 2020 Partial Summary Judgment Motions, and the remaining counts the Oversight Board now seeks to resolve, proceed on a dual track, much like what happened with the Lift Stay Litigation and 2020 Partial Summary Judgment Motions, to allow for plan confirmation and bring the Commonwealth's Title III case to a close.

17.     Defendants further complain the Oversight Board has not provided a reason to resolve Defendants' remaining claims. Of course, the Motion does articulate reasons to move forward as requested and it is obvious that if Defendants' claims are disallowed then the Commonwealth plan need not distribute value to them (which impacts the value available for allowable claims) and they lack standing to object to its confirmation. But, to be clear, the Commonwealth need not provide independent grounds for seeking to disallow claims filed against it. Indeed, the Commonwealth is entitled to rulings on its objections to those claims.[6] *See, e.g.,*

---

[6] Defendants' authorities (FGIC Opp. ¶ 27) do not support their argument that unsecured claims should not be resolved prior to confirmation. Treatises discussing the timing of claim objections address specific fact scenarios. One size does not fit all. Indeed here, the allowability of many general unsecured claims will be left for postconfirmation because their aggregate amount can be estimated and provided for. Conversely, Defendants assert claims that would require material renegotiations of the plan if the claims are allowable. *Bankruptcy Litigation* merely acknowledges resolution of claim objections *may* be delayed until more is known about whether there will be, and the magnitude of, a distribution to the supposed creditor. Steinberg, Howard J., *Bankruptcy Litigation*, 2 Bankruptcy Litigation § 10:45. The text recognizes, however, circumstances may counsel earlier resolution of the allowability of a particular creditor's claim—for example, where the creditor consistently opposes the debtor's reorganization efforts. *Id.* And,

*In re Fin. Oversight & Mgmt. Bd. for P.R.*, 485 F. Supp. 3d at 360 (recognizing the Oversight Board "is currently pursuing its objections to [Defendants'] claim in accordance with Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure").

18.    Regardless, Defendants' observation that the Amended Commonwealth Plan contemplates a distribution to revenue bondholders on account of their claims against the Commonwealth provides sufficient reason alone to pursue resolution of the Commonwealth's objections to Defendants' claims. Other revenue bondholders have settled with the Commonwealth, while Defendants have not.

**B.    Defendants' Objections to Resolving their Remaining Claims Against the Commonwealth Through Further Summary Judgment Motions Are Illogical**

1.    <u>Defendants Object Because Not All Counts Of The Complaints Will Be Resolved, Overlooking The Specified Counts Will Resolve All Defendants' Remaining Claims</u>

19.    Ambac challenges the requested relief because the Oversight Board does not seek to prosecute *all* remaining counts in each of the Revenue Bond Complaints, accusing the Oversight Board of having "cherry-picked" the issues to be resolved. Ambac Opp. ¶ 7. This argument conflates resolution of the remaining *counts* in the Revenue Bond Complaints with disallowance of the remaining *claims* asserted in the Proofs of Claim. Where there is more than one legal basis on which to disallow a particular claim asserted by Defendants, the Revenue Bond Complaints include more than one count addressing such claim. By way of example, in the 2020 Partial Summary Judgment Motions, the Oversight Board is prosecuting three separate counts seeking to disallow on different grounds Defendants' asserted Contract Clause claims. Resolution in favor

---

the "general rule" recognized in *In re 50-Off Stores, Inc.,* inuring to the benefit of the debtor, is that "objections to claims are not required to be filed prior to confirmation of a plan." 231 B.R. 592, 595-96 (W.D. Tex. 1999) (quoting *Council of Apartment Owners of Bellaire House Condos., Inc. v. Yentis (In re Yentis),* 125 B.R. 158, 162 (N.D. Tex. 1991). The case does not imply that resolution of objections to unsecured claims should not be obtained earlier where it would streamline a confirmation hearing.

of the Commonwealth on any one of the counts is sufficient to disallow such claims.

20.     The same is true with respect to the remaining counts in the Revenue Bond Complaints—more than one count may seek to disallow Defendants' claims on independent grounds.  The counts specified in the Motion, however, are sufficient to resolve Defendants' claims and, the Oversight Board submits, can be adjudicated as a matter of law.  Counts not specified are not presently necessary to resolve all of Defendants' claims—and although they may become important in the future, that will depend on the outcome on the counts at issue.  For example, the specified counts do not include counts seeking to disallow Defendants' claims as duplicative of those asserted in the Master Proofs of Claim.  While the Oversight Board believes Defendants' claims should be disallowed on that ground, resolution of such counts would not determine the merits of Defendants' asserted claims.  The same is true of the count concerning whether clawback was valid under the Puerto Rico Constitution.[7]  That count raises fact issues, which is why it was not included.  Additionally, it may never be necessary to litigate if the claims are disallowed for the many other reasons in the counts on which the Commonwealth is asking to prosecute.[8]

21.     On the other hand, Ambac complains the Oversight Board seeks to resolve *too many* counts, arguing (at ¶ 26) the Oversight Board proposes to move for summary judgment on "several claims" on which the Commonwealth has already moved for summary judgment.  The only count Ambac identifies, however, is "preemption."  The Commonwealth does not wish to re-

---

[7] Ambac misconstrues the Motion.  It argues, "the Board suggests that the Court must rule on the 'existence and magnitude of clawback claims' before plan confirmation" but, "the Board omitted its 'clawback' claims from the list of claims on which it will move for summary judgment."  Ambac Opp. ¶ 23.  In fact, the Motion explains "[r]esolution of the specified *counts* will resolve the magnitude of allowable unsecured *claims*, if any, arising from the clawback entities against the Commonwealth relating to the Relevant Revenues retained by the Commonwealth."  Mot. ¶ 20 (emphasis added).  The requested relief "will enable the Court to resolve issues at confirmation without guessing at the existence and magnitude of clawback claims against the Commonwealth."  *Id.* ¶¶ 21-22.

[8] Ambac also highlights (Ambac Opp. ¶ 27) its alleged claim to a security interest in funds held in a certain bank account related to CCDA is not included in the specified counts. This dispute, which requires a factual determination, will determine entitlement to a finite fund and will not hinder confirmation of a Commonwealth plan of adjustment.

9

litigate issues that have been addressed in the 2020 Partial Summary Judgment Motions—which focus on whether Defendants have allowable secured claims against the Commonwealth. It merely intends to demonstrate (as was inevitable) Defendants' unsecured claims, if any existed, including those arising from statutory non-impairment provisions, are likewise preempted by PROMESA. Simply put, the doctrine of preemption can apply to more than one count and can apply in different ways and based on different theories. The Commonwealth's requested relief is not driven by its legal theories, but by the claims Defendants elected to assert.

22.     As explained in the Motion, resolution of the specified counts will determine whether Defendants "have *any allowable* claims against the Commonwealth." Mot. ¶ 20. Ambac's "piecemeal" argument does not hold up. The use of the same theory for different purposes and different counts is not a logical reason to bar prosecution of any count.

> 2.     Defendants' Contention The Commonwealth Is Unlikely To Prevail On Its
> Further Motions for Summary Judgment Is Ambac's Opinion, Not A
> Ground For Denial

23.     While complaining the Oversight Board seeks to prosecute fewer than all remaining counts of the Revenue Bond Complaints, Ambac also argues there is no reason to think the Commonwealth is likely to succeed on *all* the counts it does seek to prosecute. Ambac Opp. ¶ 32. Plainly, the Oversight Board disagrees. In any event, whether a party "is likely to succeed" on summary judgment is not something the Court should evaluate at this point, and not a basis on which the Court should determine whether to permit further summary judgment motions.

24.     Relatedly, Ambac's reliance on the *absence* of anything in the Court's prior analysis to suggest the relevant statutes and bond documents do not give Defendants contractual and statutory rights is not instructive. *Id.* In the Lift Stay Litigation, the Court determined Defendants failed to demonstrate a colorable claim to a property or other security interest. Whether Defendants have any rights *at all* that give rise to allowable claims against the Commonwealth has

yet to be presented to or considered by the Court, which is why the Oversight Board seeks to prosecute counts addressing such claims now.  Moreover, if Ambac truly believes its assertion that Defendants "plainly do have contractual and statutory rights" (*id.*), then Ambac should welcome the opportunity to demonstrate it, as a matter of law, through the further summary judgment motions the Oversight Board (or Ambac) will prosecute.[9]

> ### 3.   No Further Discovery Should Be Required Regarding The Further Summary Judgment Motions; In Any Event, Defendants May Seek Appropriate Discovery If They Can Satisfy Rule 56(d)

25.     Defendants also assert resolution of the specified counts will require factual inquiry and discovery.  Again, the Oversight Board disagrees, given that all claims are based on documents and statutes.  If further discovery is needed, it will be better framed by the issues presented in the motions for summary judgment—not by conjecture or hyperbole in opposition to the Motion.

26.     As an initial matter, discovery need not be granted as of right prior to the filing of the summary judgment motions.  Rule 56 was amended in 2009 to "allow[] a party to move for summary judgment at any time, even as early as the commencement of the action," without any change to the substantive requirements.  Fed. R. Civ. P. 56 advisory committee's notes (2009 amendment); *see also id.* (2010 amendment) ("The standard for granting summary judgment remains unchanged.").  Consistent with Rule 56, courts have not hesitated to grant pre-answer summary judgment motions if there are no genuine disputes as to material facts.  *See, e.g.*, *Hawkes v. BSI Fin., Inc.*, 444 F. Supp. 3d 260, 263, 268 (D. Mass. 2020); *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 416–17 (D. Minn. 2009) (rejecting argument

---

[9] The fact that Ambac expresses certainty of its entitlement to such claims should not impact whether the Court grants the relief sought in the Motion.  In fact, there is no more basis to give credence to Ambac's self-professed entitlement than to Ambac's argument that the Commonwealth will fail at summary judgment.  This is exactly why the intended motions are important to file with the Court.  Frankly, if Ambac is so certain of its position, perhaps Ambac should file its own summary judgment motion on the issue—something to which the Commonwealth would not object.

summary judgment would be premature because Defendants "filed several briefs and voluminous supporting documents that respond substantively to [Plaintiff's] motion and the factual allegations that form the basis of its claims" prior to the filing of the answer); *Jones v. Me. Dep't of Corrections*, No. 13-cv-00476-JAW, 2014 WL 3784240, at *1, *5 (D. Me. July 31, 2014). Defendants' claim that summary judgment motions prior to discovery are disfavored is not supported by the authorities cited,[10] and the same argument, relying on the same authorities, was previously considered and rejected in connection with the issuance of the Revenue Bonds CMO.[11]

27.     Defendants' suggestion that an earlier Rule 56(d) motion was granted indicates further discovery would be necessary is without foundation. The Oversight Board rejects Ambac's characterization of the Rule 56(d) Order as "agreeing" that the 2020 Partial Summary Judgment Motions involved "factual issues." The Court merely held Defendants had "met their burden to show that limited rule 56(d) discovery is warranted." Rule 56(d) Order at 5. That ruling does not suggest further discovery on the bond documents or Relevant Revenues, which Defendants are currently pursuing, will be required to resolve Defendants' remaining claims concerning their purported contractual, statutory and other alleged rights.[12]

28.     In any event, after the motions are filed, if Defendants believe more discovery than was obtained through the Rule 56(d) Order and Lift Stay Litigation is needed, they can seek

---

[10] *Watkins v. Monroe*, No. 18-cv-347, 2019 WL 1869864, at *1 (E.D. Tex. Mar. 27, 2019), for example, recognizes a motion for summary judgment filed before an answer may be granted where "no answer which the adverse party might properly serve could present a genuine issue of fact." *MAZ Partners LP v. PHC, Inc. (In re PHC Inc. Shareholder Litigation)*, 762 F.2d 138 (1st Cir. 2014), addressed discovery sought pursuant to a Rule 56(d) motion—not whether summary judgment motions can or should be permitted prior to discovery. The Court determined further discovery was appropriate where the case "turn[ed] so largely on [plaintiffs'] ability to secure evidence within the possession." *Id.* at 145.

[11] *See Objection of Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, Ambac Assurance Corporation and Financial Guaranty Insurance Company to Amended Report and Recommendation of the Mediation Team* [ECF 11493] ¶ 25.

[12] The Oversight Board submits, as a result of the Rule 56(d) Order, Defendants are obtaining whatever discovery could be needed for their remaining claims given the legal issues that will be presented on the specified counts.

appropriate relief.  There is no prejudice.  Indeed, Defendants' contentions that they need discovery makes it all the more imperative to allow the litigation to proceed.

29.      Nor is there any basis for Defendants' assertion (at ¶ 31) permitting new summary judgment motions before considering if additional discovery is required would be a "recipe for delay."[13]   Defendants do not explain why this sequencing would cause greater delay than if discovery were conducted before the additional motions are filed.  To the contrary, if the Oversight Board is right that the specified counts can be resolved as a matter of law, significant time is saved by avoiding a lengthy and meandering discovery process.  If, however, Defendants seek and are permitted to conduct further discovery, its scope could be appropriately framed by the arguments presented in the Commonwealth's further motions for summary judgment.  A simple example raised by Ambac's objection proves the point.  Ambac complains the Oversight Board does not seek to prosecute counts addressing whether the clawback was validly invoked.  But as discussed, if the Court determines Defendants do not have any allowable claims against the Commonwealth as a result of preemption or otherwise, clawback is irrelevant and discovery on that point would be unnecessary.  There is no reason to engage in discovery on all Defendants' legal theories, before the Court determines whether Defendants are even creditors of the Commonwealth.

30.      Other than with respect to clawback, Defendants claim discovery would be required only as to counts seeking to disallow Defendants' claims based on preemption.  But, Defendants also contend the preemption theory "is wrong as a matter of law."  Ambac Opp. ¶ 34.  The Oversight Board submits preemption applies here, but agrees the issue can be decided as a matter

---

[13] Defendants' cited authorities do not support the proposition.  The Rule 56(d) Order (at 5-6) found Defendants had met their burden to permit "limited, targeted, proportional and efficient discovery" that should not duplicate discovery conducted in the Lift Stay Litigation.  *Resolution Trust Corp. v. North Bridge Associates, Inc.,* 22 F. 3d 1198, 1203 (1st Cir. 1994), refers to the "'delayed discovery' type of case," *i.e.,* one in which discovery is not completed before a motion for summary judgment is filed, but it does not suggest discovery granted in such cases causes undue delay.

of law.  Moreover, what Defendants assert is a factual issue—whether the Commonwealth's debt

could be restructured if the statutes were not preempted—is not an impediment to determining the

obvious legal question of whether Commonwealth statutes conflict with, and are therefore

preempted by, PROMESA. It cannot be disputed that a significant portion of Commonwealth

revenues are subject to statues appropriating them to Commonwealth instrumentalities and thus

contradict PROMESA's vesting budgetary authority in the Oversight Board. Defendants'

objection based on inadequate discovery is premature, and should be rejected.

### C.    Defendants Offer No Principled Reason for Lifting the Stay Entirely

31.     Ambac's final plea is to turn the orderly proceedings envisioned by the Revenue

Bonds CMO into a melee by lifting the stay entirely and allowing "motions to dismiss, answers,

counterclaims, and plenary discovery to go forward."  Ambac Opp. ¶ 36.  Ambac totally ignores

that its proof of claim is substantively the complaint, and the Oversight Board's complaint is

substantively an answer.  For Ambac to request leave to assert counterclaims is to ask to file late

claims.  And Ambac does not, and cannot, identify why it needs these procedural mechanisms to

defend the validity of the claims it has already asserted.

32.     Defendants' Proofs of Claim necessarily identify *all* purported amounts sought and

bases for recovery.  Defendants identify a laundry list of theories purporting to render their claims

allowable, including alleged statutory, contractual and equitable liens, violations of PROMESA,

violations of the Contract Clause, Due Process and Takings Clause of the United States and Puerto

Rico Constitutions, and common law breach of contract and torts.  Defendants have pled all they

can in support of their claims for money.  The bar date for filing new claims has long since passed.

33.     Through the Revenue Bond Complaints, the Commonwealth objected to

Defendants' Proofs of Claim, seeking to disallow them in their entirety.  The 2020 Partial

Summary Judgment Motions, and the Commonwealth's proposed further motions for summary

judgment, are the natural extension of the Revenue Bond Complaints, and seek the same result: disallowing Defendants' claims in their entirety.

34.     Ambac has the opportunity *now* to defend its Proofs of Claim in response to the Commonwealth's proposed motions for summary judgment (through contending the relevant counts fail to state a claim or otherwise), or by filing its own summary judgment motions on the same counts (to which the Commonwealth would not object).  No avenue remains for Ambac to raise new claims for different amounts or on different grounds.

35.     For similar reasons, FGIC's argument that objecting to the Proofs of Claim does not resolve its alleged "equitable and mandamus rights" fails.  FGIC Opp. ¶¶ 29-31.[14]  The same argument was made and rejected in the Lift Stay Litigation, where this Court found the Proofs of Claim, whether supported by equitable or mandamus rights or otherwise, "stem from their bond claims and . . . ultimately are vehicles for asserting rights to payment of amounts outstanding under various bond issues" and are thus "claims" under the Bankruptcy Code.  *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 485 F. Supp. 3d at 361-62.  FGIC's purported right to force payment of the Relevant Revenues to the clawback entities, or to Defendants, is merely another way to seek payment of amounts allegedly owed pursuant to the revenue bonds.  Its purported right to recover payment *under any theory* is premised first on an allowable claim, which is the subject of the Revenue Bond Complaints, the 2020 Partial Summary Judgment Motions, and the Commonwealth's proposed further motions for summary judgment.  Any of FGIC's purported defenses and counterclaims are subsumed in the resolution of the Commonwealth's counts to disallow Defendants' claims: either Defendants have a legal right to payment or they do not.

---

[14] FGIC takes issue with the characterization of its alleged unsecured claims against the Commonwealth as relating to "the Relevant Revenues retained by the Commonwealth."  FGIC Opp. ¶ 29.  But, as FGIC's Proof of Claim makes clear, its claims against the Commonwealth all relate to the revenue bonds it insures, which FGIC contends were secured by a pledge of Relevant Revenues the Commonwealth was obligated to transfer to the clawback entities.

Dated: April 21, 2021
San Juan, Puerto Rico

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205
Carla Garcia Benitez
USDC No. 203708
Gabriel A. Miranda
USDC No. 306704
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com
          carla.garcia@oneillborges.com
          gabriel.miranda@oneillborges.com

*/s/ Martin J. Bienenstock*
Martin J. Bienenstock
Jeffrey Levitan
Timothy W. Mungovan
Ehud Barak
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
            jlevitan@proskauer.com
            tmungovan@proskauer.com
            ebarak@proskauer.com

Michael A. Firestein
Lary Alan Rappaport
(Admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
Tel:     (310) 557-2900
Fax:     (310) 557-2193
Email: mfirestein@proskauer.com
          lrappaport@proskauer.com
*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
Representative of the Commonwealth of Puerto Rico*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

Dated: April 21, 2021

*/s/ Hermann D. Bauer*
Hermann D. Bauer

17