# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00005-LTS |

**AMBAC ASSURANCE CORPORATION, FINANCIAL GUARANTY INSURANCE COMPANY, THE BANK OF NEW YORK MELLON, AND U.S. BANK TRUST NATIONAL ASSOCIATION'S OPPOSITION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' URGENT CROSS-MOTION FOR STAY RELIEF FOR LEAVE TO FILE LIMITED OBJECTION, OR IN THE ALTERNATIVE, <u>TO INTERVENE</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ........................................................................................................................ 3

ARGUMENT .............................................................................................................................. 7

      I.      THE COURT SHOULD DENY THE CROSS-MOTION FOR THE SAME
             REASONS IT SHOULD DENY THE BOARD'S MOTION. ............................... 7

      II.     EVEN IF THE COURT WERE TO GRANT THE BOARD'S MOTION OR
             LIFT THE STAY ENTIRELY, THE CROSS-MOTION SHOULD BE
             DENIED. ................................................................................................................ 8

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Angell v. U.S. Army Corps of Engineers*,
   149 F. App'x 34 (2d Cir. 2005) ...................................................................................10

*Baker v. Gold Seal Liquors, Inc.*,
   417 U.S. 467 (1974)......................................................................................................10

*Candelario-Del Moral v. UBS Fin. Servs. Inc. of P.R.*,
   290 F.R.D. 336 (D.P.R. 2013), *aff'd sub nom. In re Efron*, 746 F.3d 30 (1st
   Cir. 2014) .....................................................................................................................12

*Global NAPS, Inc. v. Verizon New England Inc.*,
   603 F.3d 71 (1st Cir. 2010)...........................................................................................10

*Hubner v. Schoonmaker*,
   1990 WL 149207 (E.D. Pa. Oct. 2, 1990).....................................................................9

*In re Smith*,
   52 B.R. 792 (Bankr. E.D. Cal. 1985)...........................................................................10

*McKersie v. IU Int'l.*,
   120 F.R.D. 60 (N.D. Ill. 1988).....................................................................................11

*Philips Med. Sys. P.R. Inc., v. GIS Partners Corp.*,
   2017 WL 4863078 (D.P.R. Oct. 25, 2017) ...................................................................9

*United States v. Copar Pumice Co.*,
   2010 WL 11475731 (D.N.M. Nov. 12, 2010) ............................................................10

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1417
   (3d ed. 2021) ................................................................................................................10

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
   1921 (3d ed. 2021) ........................................................................................................9

Fed. R. Bankr. P. 7013...........................................................................................................9

Fed. R. Bankr. P. 7024.........................................................................................................10

Fed. R. Civ. P. 13...................................................................................................................9

Fed. R. Civ. P. 24..............................................................................................................5, 10

Ambac Assurance Corporation ("Ambac"), Financial Guaranty Insurance Company ("FGIC"), The Bank of New York Mellon ("BNYM"), and U.S. Bank Trust National Association ("U.S. Bank," and collectively with Ambac, FGIC, and BNYM, "Defendants"), by and through their undersigned counsel, respectfully submit this opposition to the *Official Committee of Unsecured Creditors' Urgent Cross-Motion for Stay Relief for Leave to File Limited Objection, or in the Alternative, to Intervene* (ECF No. 16403) (the "Cross-Motion" or "Cross-Mot."), filed by the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned proceedings.[2]

## PRELIMINARY STATEMENT

1. Nearly two years ago, in July 2019, the Court directed the parties to mediate to develop a framework for litigation over a range of issues, including revenue bond issues, to avoid the inefficiencies of litigating these Title III cases in "dozens of separate silos," each competing for the Court's attention, and often involving overlapping issues. After months of discussion with the parties, the mediation team recommended staying various cases and contested matters, and instead channeling litigation over revenue bond issues into the current adversary proceedings, so that the rights of revenue bondholders could be litigated in a comprehensive and efficient manner. The Committee voluntarily requested that it be permitted to intervene in these adversary proceedings, on specific issues that the Committee chose—a request that the Court granted.

2. Now, the Committee asks the Court to throw away the efficiencies that the mediation team sought to introduce by allowing it to bring a separate contested matter that would duplicate the existing adversary proceedings which numerous parties (including the Committee itself) have been litigating for more than a year. The Committee's proposal would require

---

[2] Unless otherwise indicated, all ECF numbers referenced in this opposition refer to the docket in Case No. 17-BK-3283-LTS.

- 1 -

Defendants, plus other interested parties like the Board, to file briefs arguing legal points in connection with the Committee's new claim objections—while simultaneously litigating many of the exact same issues in the context of revenue bond adversary proceedings. This ill-conceived proposal is rife with inefficiencies and duplication of effort. There is no reason to go down this path—particularly since, if one set of creditors (*i.e.*, the Committee) is given the unfettered ability to initiate new contested matters at will, then everyone else must be given the same opportunity. The Committee's request thus necessarily would open the floodgates for duplicative and inefficient litigation—putting the Court and all parties back into the uncoordinated stew of litigation that caused the Court to order mediation in the first place.

3. The Committee's request also ignores that, when the Committee voluntarily intervened as a party in the revenue bond adversary proceedings, the Committee was required to articulate any claims it wished to assert. Intervenors, like any other litigant, are required to assert *all* claims arising out of the same nucleus of operative fact. The Committee thus should have raised any and all claims it wished to assert at the time of its intervention motions. At the time, the Committee expressly told the Court that it merely wished to join certain, specified claims that the Board had pled. Having done so, the Committee's participation is now limited to those claims and limited to the adversary proceedings that it voluntarily joined. The Committee cannot become a plaintiff-intervenor in one case and later seek to bring a separate contested matter against the same defendants, litigating the same issues that are already presented in the case that it voluntarily joined.

4. Nor does the Committee have any basis to move for reconsideration of the Court's intervention order, or to expand the scope of its intervention. The Committee itself chose the claims on which it wanted to be allowed to intervene. The parties and the Court relied on the

- 2 -

Committee's representations as to which claims it wished to join when formulating the overall case management order at the outset. Had the Committee timely raised additional arguments that it wished to assert, the parties and the Court could have addressed any additional arguments the Committee might add in the context of the overall case management order. Having sat on its rights for more than a year, it is too late for the Committee to expand its intervention so it can raise new arguments it did not raise in a timely manner because doing so would prejudice other parties by delaying the resolution of these cases. The Committee will not be prejudiced in any way by denial of expanded intervention, because the Board is still pursuing all of the claims—and, as the Committee acknowledges, the Board has conferred with the Committee regarding potential arguments to include in briefing.

5. For these reasons, the Cross-Motion should be denied.

## BACKGROUND

6. The complex procedural history of the various revenue bond issues is set out at greater length in Ambac's Opposition[3] and FGIC's Opposition.[4] (Ambac's Opp. ¶¶ 8-17; FGIC's Opp. ¶¶ 4-19.)

7. As relevant to the Committee's Cross-Motion, after the Board filed numerous adversary proceedings involving hundreds of defendants and a variety of different issues, on July 24, 2019, the Court stayed further proceedings in dozens of adversary proceedings and contested

---

[3] "Ambac's Opposition" or "Ambac's Opp." refers to *Ambac Assurance Corporation, the Bank of New York Mellon, and U.S. Bank Trust National Association's Memorandum of Law Opposing the Oversight Board's Motion Seeking Stay Relief in Revenue Bond Adversary Proceedings* (ECF No. 16400).

[4] "FGIC's Opposition" or "FGIC's Opp." refers to *Financial Guaranty Insurance Company's Objection and Memorandum of Law in Response to the Motion of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment* (ECF No. 16419).

matters through the end of the year.[5] In entering the stay, the Court noted that "litigation in potentially dozens of separate silos, each of which is jostling for the Court's attention and has numerous potential intervenors concerned about collateral effects would be an inefficient use of judicial and debtor resources." *Excerpted Transcript of July 24, 2019 Omnibus Hearing* 55:20-24 (attached hereto as Exhibit A). The objective of the stay was to allow mediation "to identify key and gating issues, assess their crosscutting and collateral implications, seek to reach substantial consensus as to the prioritization of matters for litigation or mediation, and formulate a proposed schedule and appropriate notice and participation mechanisms that are as standardized and comprehensive as possible." *Id.* at 55:25-56:10; (*see also Order Regarding Stay Period and Mandatory Mediation*, dated July 24, 2019 (ECF No. 8244).)

8. On November 27, 2019, the mediation team filed an interim report recommending that the Board file the Revenue Bond Complaints[6] to streamline the presentation of revenue bond issues. (*Interim Report and Recommendation of the Mediation Team* (ECF No. 9365) at 6.)[7] The Board did so on January 16, 2020.

9. On February 11, 2020, the Committee sought leave to intervene in each of the revenue bond adversary proceedings. The Committee asked the Court to allow it to join ***only***

---

[5] The mediation stay was initially set to expire November 30, 2019, and was subsequently extended until December 31, 2019. (*Order Granting Urgent Joint Motion of Oversight Board and AAFAF for Order Extending (A) Stay Period, (B) Mandatory Mediation, and (C) Certain Deadlines Related Thereto* (ECF No. 9016) at 3.)

[6] "Revenue Bond Complaints" refers to the *Complaint Objecting to Defendants' Claims and Seeking Related Relief* filed in Adv. Proc. No. 20-00003-LTS, ECF No. 1; Adv. Proc. No. 20-00004-LTS, ECF No. 1; Adv. Proc. No. 20-00005-LTS, ECF No. 1.

[7] The mediation team's final report was subsequently filed on February 10, 2020. *See Amended Report and Recommendation of the Mediation Team* (ECF No. 10756).

certain specified counts that the Committee identified in the motion.[8] The Committee also indicated that it did not wish to file its own pleading, as it had a right to do under Rule 24(c) of the Federal Rules of Civil Procedure. Instead, the Committee chose to join certain identified counts of the Board's pleadings. (*See* Adv. Proc. No. 20-00003-LTS (ECF No. 9); Adv. Proc. No. 20-00004-LTS (ECF No. 11); Adv. Proc. No. 20-00005-LTS (ECF No. 9) (collectively, the "Intervention Motions")); *see also* Fed. R. Civ. P. 24(c).

10. On March 2, 2020, the Court (Dein, M.J.) granted the Committee leave to intervene with respect to the specific Intervenor Counts that the Committee had identified. (Intervention Order[9] at 3.) Once the Intervention Order was granted, the Committee became—at its own request—a full party to the revenue bond adversary proceedings, subject to the rules governing intervenors.

11. On March 10, 2020, the Court issued the Revenue Bond CMO[10] authorizing, *inter alia*, briefing on partial motions for summary judgment on certain counts at issue in the revenue bond adversary proceedings. (Revenue Bond CMO at 6-7.) Through its status as an intervenor-

---

[8] Specifically, the Committee sought to intervene with respect to ***only*** the following counts: (i) PRIFA: 3-9, 24, 26, 29-35, 50, 52, 55-61, 76, 78, 80-85, 100, and 102 (Adv. Proc. No. 20-00003-LTS (ECF No. 9) at 1 n.3); (ii) CCDA: 3, 17-18, 20-21, 24, 38-39, 41-42, 59-60, 62-63, 65, 78-79, and 81-82 (Adv. Proc. No. 20-00004-LTS (ECF No. 11) at 1 n.3); and (iii) HTA: 3, 17-18, 20-22, 26, 40-41, 43-45, 49, 63-64, 66-68, 72, 86-87, 89-91, 95, 109-110, 112-114, 131-132, 134-136, 153-154, 156-158, 174-175, 177-179, 195-196, 198-200 (Adv. Proc. No. 20-00005-LTS (ECF No. 9) at 1 n.3) (collectively, the "Intervenor Counts").

[9] "Intervention Order" refers to the *Order* issued in Adv. Proc. No. 20-00003-LTS, ECF No. 27; Adv. Proc. No. 20-00004-LTS, ECF No. 25; Adv. Proc. No. 20-00005-LTS, ECF No. 35. In addition to granting the Committee permission to intervene with respect to the Intervenor Counts, the Court, among other things, denied the Committee's request that it be allowed to block settlements between Defendants and the Board, or appeal rulings issued in the revenue bond adversary proceedings. (*See id.* at Sec. III.) The Committee objected to the limitations the Court placed on its appellate rights but then asked that its objection be held in abeyance. (*Order Regarding Official Committee of Unsecured Creditors' Limited Objection to Magistrate Judge's March 2, 2020 Order on Motion for Intervention*, Adv. Proc. No. 20-00003-LTS (ECF No. 33); Adv. Proc. No. 20-00004-LTS, ECF No. 30; Adv. Proc. No. 20-00005-LTS, ECF No. 43). The Committee's objection that it should have the right to appeal rulings in the revenue bond adversary proceedings has no bearing on any issue currently before the Court.

[10] "Revenue Bond CMO" refers to *Final Case Management Order for Revenue Bonds* (ECF No. 12186).

- 5 -

plaintiff with respect to those counts, the Committee filed limited joinders to those partial summary judgment motions, setting forth the portions of the Board's briefs to which the Committee joined. (*See* Adv. Proc. No. 20-00003-LTS (ECF Nos. 52, 92); Adv. Proc. No. 20-00004-LTS (ECF Nos. 51, 87); Adv. Proc. No. 20-00005-LTS (ECF Nos. 64, 106).) The Court issued its Rule 56(d) Order[11] on January 20, 2021. Discovery pursuant to that order is scheduled to be completed on May 19, 2021.[12]

12. The Board's Motion[13] for partial lifting of the stay in the revenue bond adversary proceedings was filed on April 6, 2021. Ambac's Opposition was filed on April 13, 2021. On the same day, the Committee filed its Cross-Motion. FGIC's Opposition was filed on April 14, 2021.

13. Although the Committee has already intervened as a plaintiff in the revenue bond adversary proceedings, and chose the specific counts of the Board's complaint it wished to join, the Committee now asks that it be permitted to file a *separate* claim objection articulating new legal theories—which the Committee could have raised in its Intervention Motions but chose not to. In the alternative, the Committee asks that it now be permitted to intervene as to a broader set of claims than those on which it previously requested intervention. The Cross-Motion does not explain why the Committee is seeking to join additional claims, after it previously specifically asked the Court to exclude those claims from the scope of its requested intervention.

---

[11] "Rule 56(d) Order" refers to *Order Regarding Discovery in Connection with Motions of the Commonwealth of Puerto Rico, By and Through the Financial Oversight and Management Board, Pursuant to Bankruptcy Rule 7056 for Partial Summary Judgment Disallowing Claims* (ECF No. 15656).

[12] (*Order Modifying Discovery Schedule*, Adv. Proc. No. 20-00003-LTS, ECF No. 145; Adv. Proc. No. 20-00004-LTS, ECF No. 136; Adv. Proc. No. 20-00005-LTS, ECF No. 157, at 3.)

[13] "Board's Motion" or "Board's Mot." refers to *Motion of the Commonwealth of Puerto Rico, by and through the Financial Oversight and Management Board, For Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment* (ECF No. 16326) and the accompanying memorandum in support (ECF No. 16327).

# ARGUMENT

**I. THE COURT SHOULD DENY THE CROSS-MOTION FOR THE SAME REASONS IT SHOULD DENY THE BOARD'S MOTION.**

14. The same arguments Defendants have put forward for opposing the Board's Motion apply equally to the Cross-Motion. The Court should resolve the eight "gating" issues that the parties have spent more than a year litigating, which are close to being fully submitted to the Court for substantive resolution, before taking up ten new issues. (*See* Ambac's Opp. at Arg. I; FGIC's Opp. at Arg. I.) Neither the Board nor the Committee have identified changed circumstances that would merit modifying or reconsidering the Court's existing Revenue Bond CMO, and their piecemeal approach would not only be inefficient but would fail to advance the resolution of these proceedings—as the Board itself has previously acknowledged. (*See* FGIC's Opp. ¶ 21; *see also* Ambac's Opp. at Arg. I.A., I.B.) In any event, pre-discovery partial summary judgment motions on those ten new issues would accomplish nothing because such issues cannot be resolved as a matter of law without discovery. (*See* Ambac's Opp. at Arg. I.C.)

15. If the Court is inclined to allow additional proceedings, it should simply lift the stay of the revenue bond adversary proceedings entirely, allowing the parties to move forward on all open issues rather than the subset of claims cherry-picked by the Board. Allowing plenary litigation is necessary to protect Defendants' due process rights and promote fundamental fairness. (*See id.* ¶ 36.) The Committee would have the right to participate in litigation over the counts of the Revenue Bond Complaints that it previously requested, and was allowed, to join. Allowing the Committee to brief new arguments—while precluding Defendants from moving forward on the issues they seek to raise—would compound the procedural unfairness of the Board's proposal, since it would allow other creditors to attack Defendants' claims from multiple angles while

- 7 -

continuing to deny Defendants any ability to defend themselves except by opposing summary judgment.

## II. EVEN IF THE COURT WERE TO GRANT THE BOARD'S MOTION OR LIFT THE STAY ENTIRELY, THE CROSS-MOTION SHOULD BE DENIED.

16. Even if the Court lifts the stay to permit the Board to file new summary judgment motions, or lifts the stay entirely, the Committee's Cross-Motion should still be denied in its entirety.

17. *First*, permitting the Committee to file separate claim objections or its own independent summary judgment motions would be grossly inefficient and directly contravene the goals the Court sought to accomplish through its imposition of the July 2019 mediation stay. The Committee admits that its claim objection would simply seek the exact "same ultimate relief" that the Board—and the Committee itself—are *already* seeking in adversary proceedings. (Cross-Mot. ¶ 2.) If the Committee's request were granted, the Board (and perhaps other creditors) would need to make filings regarding the Committee's claim objection to ensure that rulings there would not impact arguments other parties are seeking to make in the adversary proceedings. Meanwhile, the Committee would continue to file "joinders" or additional briefing in the revenue bond adversary proceedings regurgitating legal points it was raising in its own claim objection. While the Committee may intend to address only unsecured claims in its claim objection (while addressing secured claims in the adversary proceedings), there is significant overlap in the legal and factual issues relevant to secured and unsecured claims—so significant duplication would result from the Committee's proposal to create parallel proceedings.

18. This duplication of effort would fundamentally nullify the efficiency benefits that the Court sought to achieve when it entered the current Revenue Bond CMO. The Court's key objective was specifically to avoid "litigation in potentially dozens of separate silos, each of which

is jostling for the Court's attention and has **numerous potential intervenors** concerned about collateral effects . . . ." Ex. A at 55:20-23 (emphasis added). The mediation team's proposed solution, after months of deliberation, was that revenue bond issues should be teed up in adversary proceedings—which the Committee then requested, and was permitted, to join. The Committee offers no good reason for the Court to now toss months of negotiations, and more than a year of proceedings under that framework, out the window.

19. *Second*, the Committee's request is procedurally improper, because the Committee ignores that it is a party to the revenue bond adversary proceedings—and was therefore required to assert *all* of its claims when it intervened in such proceedings. The Committee cannot now bring a separate claim objection, nor does it have any basis to belatedly expand the scope of its intervention beyond what it requested and was granted.

20. Intervenors are bound by Rule 13 of the Federal Rules of Civil Procedure like any other litigant. *See* Fed. R. Civ. P. 13; Fed. R. Bankr. P. 7013; *Hubner v. Schoonmaker*, 1990 WL 149207, at *4 (E.D. Pa. Oct. 2, 1990) ("Rule 13 is not limited in application to original parties, but is applicable to all *parties*, those original and those brought in or who intervene." (internal quotation marks and citation omitted)); 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1921 (3d ed. 2021) (an "intervenor is required to assert [a compulsory counterclaim] or be forever barred"). An intervenor is thus obligated to plead all claims that arise out of the same transaction or occurrence, *i.e.*, claims that share a "common nucleus of operative fact." *Philips Med. Sys. P.R. Inc., v. GIS Partners Corp.*, 2017 WL 4863078, at *4 (D.P.R. Oct. 25, 2017) (quoting *TC Invs., Corp. v. Becker*, 733 F. Supp. 2d 266, 286 (D.P.R. 2017)). Where, as here, the Committee's "claims ultimately [arose] from a dispute over the same agreement" (*i.e.*,

the bond documents), they necessarily rely on a common nucleus of operative fact. *Global NAPS, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 85 (1st Cir. 2010).

21. Accordingly, when the Committee intervened in the revenue bond adversary proceedings, it was required to assert all claims related to the revenue bonds that it wished to pursue. If it wished to bring other claims, beyond those asserted by the Board, it could have—and should have—submitted its own pleading with its intervention motion stating the claims it wished to bring. *See* Fed. R. Civ. P. 24(c); Fed. R. Bankr. P. 7024. Instead, the Committee asked the Court to allow it to simply join certain, specified counts of the Board's pleading—thereby adopting the Board's allegations as to those counts as its own—and noted that it did *not* wish to assert any claims beyond those already pled by the Board. *See supra* ¶ 9 & n.8.

22. The Committee is now bound by its strategic decision to limit its intervention to those claims. Having participated as a party in the revenue bond adversary proceedings for over a year, it has no right to suddenly file *another* contested matter litigating the same issues that are teed up in the case in which it voluntarily intervened. "A counterclaim which is compulsory [under Rule 13(a)] but is not brought is thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) (citation omitted); *see also, e.g.*, *Angell v. U.S. Army Corps of Engineers*, 149 F. App'x 34, 36 (2d Cir. 2005) ("If a litigant fails to raise a compulsory counterclaim as defined by Rule 13(a), she is barred by the doctrine of *res judicata* from raising it in a subsequent suit."); *United States v. Copar Pumice Co., Inc.*, 2010 WL 11475731, at *7 (D.N.M. Nov. 12, 2010) ("In federal court, failure to assert a compulsory counterclaim will result in it being barred in any subsequent action." (internal quotation marks and citation omitted)); *In re Smith*, 52 B.R. 792, 796 (Bankr. E.D. Cal. 1985) ("A party who fails to raise a compulsory counterclaim is held to waive it . . . ."); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1417 (3d ed.

2021) ("A failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim.").

23. The Committee likewise has no right to intervene in new counts beyond those it has already joined or to articulate new theories that go beyond those the Board has pled. The Committee itself chose the counts on which it sought to intervene. It identifies no changed circumstances that would warrant the Court granting, in effect, reconsideration of the Intervention Order—let alone changed circumstances that would warrant allowing the Committee to belatedly seek intervention on counts as to which it made an intentional strategic decision not to intervene. *See McKersie v. IU Int'l*, 120 F.R.D. 60, 62 (N.D. Ill. 1988) (intervenors who chose to rely on the existing pleading of a party when intervening have no right to later "amend" or enlarge the scope of their intervention).

24. The Committee's purported "absolute statutory right to file objections to claims" (Cross-Mot. ¶ 3) does not excuse it from complying with the procedural rules to which all litigants are subject. The Committee does not have any right, statutory or otherwise, to file claims that become precluded or forfeited through its own strategic conduct during the litigation. The Committee's attempt to "reserve" the right to file a separate claim objection (Adv. Proc. No. 20-00003-LTS (ECF No. 9) at ¶ 13; Adv. Proc. No. 20-00004-LTS (ECF No. 11) at ¶ 13; Adv. Proc. No. 20-00005-LTS (ECF No. 9) at ¶ 13), was ineffective for the same reason. A litigant cannot "reserve" rights it does not have. The Committee cannot avoid the preclusive effect of its intervention any more than a plaintiff could "reserve" the right in their complaint to bring a new lawsuit against the same defendant regarding the same issue if the plaintiff loses the first time around. Having intervened in the adversary proceedings, the Committee was bound to raise all of its revenue bond claims there.

25. The Committee also should not be permitted to intervene now on new claims, because its request is untimely and would prejudice Defendants. *Candelario-Del Moral v. UBS Fin. Servs. Inc. of P.R.*, 290 F.R.D. 336 (D.P.R. 2013) (intervention denied as untimely where intervenor knew of the action for two years), *aff'd sub nom. In re Efron*, 746 F.3d 30 (1st Cir. 2014). The procedure for litigating revenue bond claims, and the specific claims that were to be the subject of early dispositive motions, were the subject of mediation. If the Committee had informed the parties (as it should have) that it wished to intervene as to additional claims and raise arguments beyond those articulated by the Board on those claims, the parties could have discussed the issues that the Committee's arguments would raise and requested that the mediation team, or the Court, establish a framework for addressing those arguments early in the context of the overall case management order. Having failed to present its new arguments up front, the Committee deprived the parties of an opportunity to deal with them in an orderly and timely manner. It should not now be permitted to delay these proceedings after sitting on its rights for so long.

26. While Defendants would be prejudiced by allowing the Committee to belatedly expand the scope of its intervention, the converse is not true: The Committee will suffer no prejudice if it is not permitted to intervene as to additional claims. The Board is already litigating these claims vigorously. None of the Committee's "me too" briefs, on the claims that it has been permitted to join, have added anything of substance to the analysis before the Court. The Committee has simply rehashed arguments already presented at great length by the Board, and added its imprimatur. The Court will receive the same substantive arguments in briefing from the Board, particularly given the Committee's acknowledgement that the Board has met-and-conferred with the Committee regarding additional arguments. (*See* Cross-Mot. ¶ 12).

## **CONCLUSION**

27. For the foregoing reasons, Defendants respectfully request that the Court deny the Cross-Motion.

Dated: April 21, 2021
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
           amiller@milbank.com
           gmainland@milbank.com
           jhughes2@milbank.com
           johring@milbank.com

***Attorneys for Ambac Assurance Corporation***

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
           adam.langley@butlersnow.cow

***Attorneys for Financial Guaranty Insurance Company***

| | |
|---|---|
| **RIVERA, TULLA AND FERRER, LLC** | **SEPULVADO, MALDONADO & COURET** |
| By: /s/ *Eric A. Tulla* <br> Eric A. Tulla <br> (USDC-DPR No. 118313) <br> Email: etulla@ riveratulla.com <br> Iris J. Cabrera-Gómez <br> (USDC-DPR No. 221101) <br> Email: icabrera@ riveratulla.com <br> Rivera Tulla & Ferrer Building <br> 50 Quisqueya Street <br> San Juan, PR 00917-1212 <br> Telephone: (787) 753-0438 <br> Facsimile: (787) 767-5784 | By: /s/ *Albéniz Couret Fuentes* <br> Albéniz Couret Fuentes <br> (USDC-PR No. 222207) <br> 304 Ponce de León Ave. Suite 990 <br> San Juan, PR 00918 <br> Telephone: (787) 765-5656 <br> Facsimile: (787) 294-0073 <br> Email: acouret@smclawpr.com |
| **HOGAN LOVELLS US LLP** | **REED SMITH LLP** |
| By: /s/ *Ronald J. Silverman* <br> Ronald J. Silverman, Esq. <br> Michael C. Hefter, Esq. <br> 390 Madison Avenue <br> New York, NY 10017 <br> Telephone: (212) 918-3000 <br> Facsimile: (212) 918-3100 <br> ronald.silverman@hoganlovells.com <br> michael.hefter@hoganlovells.com | By: /s/ *Jared S. Roach* <br> Luke A. Sizemore (admitted *pro hac vice)* <br> Jared S. Roach (admitted *pro hac vice*) <br> 225 Fifth Avenue, Suite 1200 <br> Pittsburgh, PA 15222 <br> Telephone: (412) 288-3131 <br> Facsimile: (412) 288-3063 <br> Email: lsizemore@reedsmith.com <br> jroach@reedsmith.com |
| *Attorneys for U.S. Bank Trust National Association, in its Capacity as Trustee to PRIFA Bondholders* | *Attorneys for The Bank of New York Mellon, in its Capacity as Trustee to CCDA Bondholders* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date a true and exact copy of this notice was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com