## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br>**RE: ECF No. 16332** |

*[Caption Continued on Next Page]*

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations) .

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, THE
EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO, AND THE PUERTO RICO PUBLIC
BUILDINGS AUTHORITY,

      Movant,

v.

PETER C. HEIN; SALUD INTEGRAL DE LA
MONTAÑA, INC.; AMBAC ASSURANCE
CORPORATION; THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS; AMERINATIONAL
COMMUNITY SERVICES, LLC AND CANTOR-
KATZ COLLATERAL MONITOR LLC; AND
FINANCIAL GUARANTY INSURANCE COMPANY

      Respondents.

**OMNIBUS REPLY OF THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO IN SUPPORT OF
DEBTORS' JOINT MOTION FOR AN ORDER (I) SCHEDULING
HEARING TO CONSIDER THE ADEQUACY OF INFORMATION
CONTAINED IN THE DISCLOSURE STATEMENT, (II) ESTABLISHING THE
DEADLINE FOR FILING OBJECTIONS TO THE DISCLOSURE STATEMENT
AND REPLIES THERETO, (III) APPROVING FORM OF NOTICE THEREOF,
(IV) ESTABLISHING DOCUMENT DEPOSITORY PROCEDURES
IN CONNECTION THEREWITH, AND (V) GRANTING RELATED RELIEF**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ........................................................................................................................ 2

    I.    Granting the Scheduling Motion Is in the Best Interests of the Title III
        Cases and Preserves Due Process Rights .................................................................. 4

        a.    Disclosure Statement Hearing Schedule, As Modified, Provides
               Creditors Ample Time to File Objections ........................................................ 4

        b.    The Disclosure Statement Depository Procedures Should Be Approved
               As Modified ..................................................................................................... 7

CONCLUSION ................................................................................................................ 11

i

**To the Honorable United States District Judge Laura Taylor Swain**:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

as sole representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the

Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"),

and Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of the *Puerto*

*Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] (the Commonwealth,

ERS, and PBA, are referred to as the "Debtors"), respectfully submits this omnibus reply (the

"Reply") in support of (1) the *Debtors' Joint Motion for an Order (I) Scheduling a Hearing to*

*Consider the Adequacy of Information Contained in the Disclosure Statement, (II) Establishing*

*the Deadline for Filing Objections to the Disclosure Statement and Replies Thereto, (III)*

*Approving Form of Notice Thereof, (IV) Establishing Document Depository Procedures in*

*Connection Therewith, and (V) Granting Related Relief* (the "Scheduling Motion") [ECF No.

16332] (the "Scheduling Motion")[3] and in response to:

1) the *Response and Objection of Individual Bondholder* to the Scheduling Motion, filed by Peter C. Hein [ECF No. 16387] (the "Hein Objection");

2) the *Limited Opposition* to the Scheduling Motion, filed by Salud Integral de la Montaña, Inc. ("SIM") [ECF No. 16388] (the "SIM Objection");

3) the *Objection of Ambac Assurance Corporation* to the Scheduling Motion, filed by Ambac Assurance Corporation ("Ambac") [ECF No. 16395] (the "Ambac Objection");

4) the *Limited Objection of Official Committee of Unsecured Creditors* to the Scheduling Motion, filed by the Official Committee of Unsecured Creditors (the "UCC") [ECF No. 16398] (the "UCC Objection"),

5) the *DRA Parties' Limited Objection* to the Scheduling Motion, filed by AmeriNational Community Services, LLC, as servicer for the GDB Debt Recovery Authority, and

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]   Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.  A revised proposed order and notice of Disclosure Statement Hearing is attached hereto as **Exhibits A and B**, respectively.

Cantor-Katz Collateral Monitor LLC (collectively, the "DRA Parties") [ECF No. 16402] (the "DRA Objection"), and

6) the *Objection of Financial Guaranty Insurance Company* to the Scheduling Motion, filed by Financial Guaranty Insurance Company ("FGIC" and, together with Peter C. Hein, SIM, Ambac, the UCC, and the DRA Parties, the "Objectors") [ECF No. 16423] (the "FGIC Objection" and, together with the Hein Objection, the SIM Objection, the Ambac Objection, the UCC Objection, and the DRA Objection, the "Objections").

In support of this Reply, the Oversight Board respectfully states as follows:

## ARGUMENT

1.      Following a one-year delay caused by the COVID-19 pandemic that changed the economic reality for the Commonwealth, the Oversight Board, with the assistance of the Court-appointed Mediation Team, reached agreement with very significant Commonwealth creditor groups on the proposed treatment of their claims in a plan of adjustment that addresses the new, COVID-19 reality the Commonwealth faces.  Building on this momentum, the Oversight Board continues to garner support for a plan of adjustment, recently entering into the ERS Stipulation on April 2, 2021, and announcing on April 12, 2021 an agreement in principle (subject to final documentation) with Assured Guarantee Corp., Assured Guaranty Municipal Corp. (collectively, "Assured"), and National Public Finance Guarantee Corporation ("National") regarding, among other things, the treatment of monies historically conditionally appropriated to certain Commonwealth instrumentalities (colloquially known as the "clawback claims"), which agreements will be incorporated into an amended Plan.

2.      Through the Scheduling Motion, the Oversight Board seeks to ensure these Title III cases continue to progress efficiently, while honoring the timeline set forth in the various settlements the Oversight Board has reached.  Namely, the PSA and the ERS Stipulation contemplate the effective date of the Plan shall occur on or before December 15, 2021, with the conditional extension upon the occurrence of limited events.  To fulfill its obligations under the

2

PSA and the ERS Stipulation, the Oversight Board intends to request a confirmation hearing to begin on or around October 18, with the likely length of approximately two weeks if held on a non-consensual basis.  Setting the Disclosure Statement Hearing on June 16, 2021, the currently-scheduled Omnibus Hearing date, will allow sufficient time for solicitation and briefing on confirmation of the Plan if the Disclosure Statement were approved shortly thereafter.   To accommodate various Objectors, the Oversight Board proposes to extend by seven (7) days the deadlines to file objections to the adequacy of the Disclosure Statement and for the Oversight Board to file a reply to May 21, 2021 and June 4, 2021, respectively.  The Oversight Board believes the proposed adjustments balance the need for sufficient time for parties to file objections, if any, to approval of the Disclosure Statement, while allowing the Oversight Board to meet the deadlines in the various settlements already reached.[4]

3.      The bulk of the remaining "scheduling" issues raised by the Objections relate to approval of the Disclosure Statement or confirmation.   Accordingly, these merits issues are appropriately addressed at the Disclosure Statement Hearing or, more likely, at confirmation—not in connection with a mere *scheduling* motion.

4.      In connection with the proposed Disclosure Statement Depository Procedures, the Oversight Board has made certain modifications to the Proposed Order, attached hereto as **Exhibit A**.   The remaining objections to the Disclosure Statement Depository Procedures exaggerate the low burden Eligible Creditors must meet to obtain access to the Depository. Eligible Creditors need only self-certify they are a creditor of the Debtors (and, with respect to

---

[4]   Assuming the amended Plan and Disclosure Statement are filed no later than April 28, 2021, parties will have at least twenty-three (23) days to review the amended Plan and Disclosure Statement before the proposed Objection Deadline of May 21, 2021.  A substantial portion of the amended Plan and Disclosure Statement will remain the same and has been available since its filing on March 8, 2021 [ECF Nos. 15976, 15977, 15988].  Given the need for the meet the various settlement deadlines, a reduction of the 28-day notice period by five (5) days is reasonable and permitted by Bankruptcy Rule 9006(c).

access to Confidential Information, agree to be bound by the terms of the Revised Proposed Protective Order) to obtain access to the Depository. Additionally, annexed hereto as **Exhibit C** is an omnibus reply chart responding to the various objections noted above, organized by subject matter.

5.        If the Scheduling Motion is not granted, and the Debtors are unable to meet the PSA and ERS Stipulation milestones, those agreements may be terminated, and the path to emergence from Title III would have to be reworked yet again. Moving these Title III cases forward expeditiously is in the Debtors' and the people of Puerto Rico's best interests. The Scheduling Motion accomplishes this while preserving parties' rights. Accordingly, we urge the Court to grant the Scheduling Motion.

## I.        Granting the Scheduling Motion Is in the Best Interests of the Title III Cases and Preserves Due Process Rights

### a.        Disclosure Statement Hearing Schedule, As Modified, Provides Creditors Ample Time to File Objections

6.        The PSA represents critical support for the Debtors' proposed Plan. The initial signatories to the PSA hold in excess of $11.76 billion in GO Bond Claims and PBA Bond Claims, and, as of February 23, 2021, support for the PSA has increased to include 70% of all GO Bonds and PBA Bonds claims.[5] Following entry into the PSA, the Oversight Board continued to garner support for the Plan with the entry into the ERS Stipulation on April 2, 2021 that incorporates, among other things, the proposed treatment for ERS Bonds, and the announcement on April 12, 2021, of an agreement in principle with Assured and National regarding certain "clawback claims."

---

[5]    *See* Statement dated February 23, 2021, Financial Oversight and Management Board for Puerto Rico, *available at* https://drive.google.com/file/d/11CDBFId11Fm7I8IBlTHK3TrjvAOHFjgz/view?usp=sharing. Pursuant to the PSA, only those bondholders who have joined the PSA before the 70% PSA Threshold Attainment (as defined in the PSA) are entitled to receive the PSA Restriction Fee. PSA § 6.1(b). The Oversight Board has received requests to join the PSA in excess of the 70% threshold.

7.     Although the Oversight Board continues to work with parties to gain additional support for the Plan, establishing a timeline for an orderly confirmation process right now is in the best interests of the Debtors' cases, and the Oversight Board should not be forced to choose between reaching additional agreements with creditors and moving towards a timely confirmation, as various Objectors would have it.  The Objectors' proposed delay in the confirmation process would impose significant costs of its own.  As a result of delaying the scheduling of the Disclosure Statement Hearing, the Debtors could lose the significant benefits of the various settlement agreements—perhaps something certain Objectors desire.  Were the agreements to be terminated, months of negotiations will have been wasted and additional months would be needed to achieve the same level of consensus, all at the expense of the Debtors and the people of Puerto Rico. Indeed, the longer the Title III cases remain pending, the longer the Debtors and their stakeholders are burdened by uncertainty and administrative costs.  The Scheduling Motion ensures the benefits of the various agreements reached are not threatened unnecessarily and these Title III cases are reasonably progressing towards conclusion.

8.     Indeed, the vast majority of the issues the Objectors raise will be addressed through filing of an amended Disclosure Statement or are properly considered at a confirmation hearing, not in response to a *scheduling* motion.  For example, Ambac and Mr. Hein argue any disclosure statement will be inadequate unless the latest certified fiscal plan and the Debtors' best interest test analysis are included.  *See* Ambac Obj. ¶¶ 26-28; Hein Obj. at 10.  The forthcoming Disclosure Statement to be distributed to creditors will include the latest certified fiscal plan and the Debtors' best interest test analysis, and parties will have sufficient time ahead of the confirmation hearing to review such documents.  Similarly, Ambac argues certain "gating issues" should be resolved before the Court considers the adequacy of the Disclosure Statement.  Certain "gating issues" such

as the revenue bondholders' rights identified by Ambac, Ambac Obj. ¶¶ 10-13, are proposed to be compromised and settled pursuant to the Plan as to Assured and National, and resolution of the issue as to Ambac can proceed on a dual track.  The issue of the Plan's theory of preemption identified by Ambac will be a material topic of the new motions for summary judgment the Oversight Board has requested stay relief to prosecute.  Ambac Obj. ¶¶ 20-24.

9.      Ambac and the UCC also argue issues regarding classification in connection with the UCC's motion pursuant to Bankruptcy Rule 3013 [ECF No. 11989, *see also* ECF No. 16396] should be resolved prior to the Court's consideration of the Disclosure Statement.  *See* Ambac Obj. ¶¶ 15-19; UCC Obj. ¶¶ 17-20.  As explained more fully in the *Objection of Financial Oversight and Management Board to Urgent Motion of Official Committee of Unsecured Creditors to Schedule Hearing on Renewed Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of Order Reclassifying Class 48A and Class 55 Claims under Oversight Board's Plan of Adjustment Dated March 8, 2021* [ECF No. 16483] (the "Objection to Renewed 3013 Motion"), Ambac and the UCC should first make a *prima facie* case relief pursuant to Bankruptcy Rule 3013 is legally possible before consideration of a briefing schedule in connection therewith.  Furthermore, (1) Bankruptcy Rule 3013 is technically not available to parties other than the plan proponent, and accordingly cannot be a basis for delaying the Disclosure Statement schedule, and (2) objections in connection with Bankruptcy Rule 3013 and classification are more properly unfair discrimination objections that should be considered in connection with confirmation.[6]  The Scheduling Motion simply seeks to establish a day for a hearing to consider the Disclosure Statement, among other things.

---

[6]   Nonetheless, as proposed in the Objection to Renewed 3013 Motion, if the Court wishes for the narrow legal issue on classification to proceed, the Oversight Board proposes the following briefing schedule:
    **Ambac/Committee Prima Facie Case:**  4:00 pm Atlantic Standard Time April 25, 2021
    **Oversight Board Response**:  4:00 pm Atlantic Standard Time May 1, 2021

10.     Likewise, similar to most plans of adjustment and plans of reorganization, parties will also have months to negotiate and will have the opportunity to file confirmation objections at the appropriate time.  As noted above, to allow the Oversight Board to meet the timeline under the PSA and the ERS Stipulation, and to accommodate the various Objectors' comments, the Oversight Board proposes to extend the deadlines to file objections and for the Oversight Board to file a reply by seven (7) days to May 21, 2021, and June 4, 2021, respectively.  The Scheduling Motion thus strikes a balance of moving the Title III cases forward, avoiding risks and costs associated with delay, and, at the same time, providing sufficient time for parties to object to approval of the Disclosure Statement.  Given the Court's authority to manage its docket and the harm the Debtors could face if they are unable to meet the milestones in the various agreements reached, as well as the harm to the people of Puerto Rico, the Debtors submit ample cause exists under these circumstances to grant the relief requested, including, shortening time for notice pursuant to Bankruptcy Rule 9006(c).[7]

**b. The Disclosure Statement Depository Procedures Should Be Approved As Modified**

11.     The Debtors proposed the Disclosure Statement Depository Procedures to provide Eligible Creditors timely, efficient access to documents and information that may assist them in evaluating the adequacy of the Disclosure Statement.[8]  The Procedures contemplate two levels of

---

Court to Rule Whether UCC Renewed Motion Goes Forward

**Joinder Deadline**: 4:00 p.m. Atlantic Standard Time on May 7, 2021.
**Objections and Responses Due**: 5:00 p.m., Atlantic Standard Time, on May 21, 2021.
**Reply Deadline**: 5:00 p.m., Atlantic Standard Time, on June 4, 2021.
**Hearing on Renewed 3013 Motion**: 9:30 a.m., Atlantic Standard Time, on June 16, 2021.

[7]   Courts often shorten the notice period for disclosure statement hearings.  *E.g.*, *In re Fla. Coastal Airlines, Inc.*, 2007 Bankr. LEXIS 411 (Bankr. S.D. Fla. Feb. 1, 2007), *amended by* 361 B.R. 286 (Bankr. S.D. Fla. 2007).

[8]   In response to certain issues raised by the Objectors, the Oversight Board has agreed to implement certain changes to the Disclosure Statement Depository Procedures. Those changes are reflected in the Revised Disclosure Statement Depository Procedures and Revised Proposed Protective Order, attached hereto as **Exhibit A**.

access to materials in the Depository: (1) access to non-confidential documents, which shall be provided to any individual or entity who self-certifies they are a creditor of the Debtors; and (2) access to confidential documents, which shall be provided to any individual or entity who is willing to be bound by the terms of the Revised Proposed Protective Order.  These minimal restrictions ensure reasonable access to materials relevant to the Disclosure Statement for any Eligible Creditor entitled to vote on the Plan.

12.    Mr. Hein objects to the requirement that individuals or entities wishing to access the Depository must self-certify they are creditors of the Debtors for two reasons: first, Mr. Hein claims requiring creditors to request access to the Depository will unnecessarily delay access to relevant information, and may therefore deter creditors from accessing the Depository, Hein Obj. at 2-3; and second, Mr. Hein contends the Depository should be made available to any member of the public, including "analysts, the press and media and similar parties," because those parties may prepare analyses and summaries that may assist creditors in determining whether to accept or reject the Plan.  *Id.* at 3-4.  Hein's first concern is unfounded.  The Debtors anticipate creditors will immediately obtain access to the Depository upon their self-certification that they are an Eligible Creditor.  Accordingly, the self-certification requirement will not result in any undue delay in creditor access.

13.    Further, limiting access to the Depository to Eligible Creditors is necessary to ensure the Depository remains available to individuals and entities entitled to vote on the Plan. The Revised Proposed Disclosure Statement Depository Procedures define "Eligible Creditors" broadly; well over 100,000 entities and individuals meet these criteria and will be entitled to access the Depository.  There are technological limitations, however, on the number of users who may access the website on which the Depository is hosted at any given time.  Making the Depository

available to the general public *in addition to* well over one hundred thousand Eligible Creditors could overload the Depository's site, thereby preventing any users, including Eligible Creditors, from accessing the site.  Restricting the Depository to Eligible Creditors is therefore necessary and appropriate to ensure Eligible Creditors have adequate access to the Depository.

14.     Moreover, the Depository is intended to facilitate creditors' ability to object to the adequacy of the information contained in the Disclosure Statement and propose any changes.  Mr. Hein does not explain why parties who *do not have standing*, such as the press, are entitled to receive such materials, or why the Debtors should bear the costs of facilitating such access to parties who do not have standing to participate in the Disclosure Statement approval process, all at the expense of the Debtors and their creditors.

15.     Both Hein and FGIC also object to the proposed restrictions on access to Confidential Information.  Hein contends that, prior to designating any material as confidential, the Debtors should be required to provide particularized justification of the need for confidential treatment, and the Court should review and determine whether the material is in fact entitled to such protection.[9]  Hein Obj. at 7.  This onerous procedure will impose unnecessary burdens on the Debtors and the Court, and will needlessly delay the provision of Confidential Information to Eligible Creditors through the Depository.  As the Revised Proposed Protective Order provides, the Debtors will designate material as confidential in good faith.  The Debtors intend to seek confidential treatment only for those limited documents whose public disclosure would have a

---

[9]    Mr. Hein also contends the proposed restrictions are inappropriate because the information "relates to the affairs of governmental entities," and is therefore "hard to imagine what justification for confidentiality could exist."  Hein Obj. at 7.  That argument is flatly contradicted by prior orders in these Title III cases, which make clear that, under appropriate circumstances, information relating to the Debtors' affairs must be treated as confidential.  *See, e.g.*, *Order on Motions to Seal*, Case No. 17-bk-3283, ECF No. 10069 (holding portions of deposition testimony relating to ongoing negotiations between PREPA and potential bidders for its assets were confidential because their public disclosure could disrupt PREPA's planned transformation).

detrimental effect on the Debtors or on third parties (for example, documents containing full account numbers of the Debtors' bank accounts). There is simply no need to require the Debtors to expend the resources of the parties and the Court preemptively seeking protection for such Confidential Information prior to its designation.

16. FGIC contends the Disclosure Statement Hearing should be "focus[ed] . . . on adequate information publicly available to parties in interest, not on limiting access to allegedly confidential materials in a database." FGIC Obj. ¶ 6. But, the Debtors' proposed procedures for granting access to Confidential Information are not burdensome—to obtain access to Confidential Information, Eligible Creditors need only agree to be bound by the terms of the Revised Proposed Protective Order. Indeed, appreciating a significant number of Eligible Creditors entitled to access the Depository may be unrepresented, the Debtors undertook to simplify and streamline the Proposed Protective Order to make it accessible to a broader audience and to reduce the burdens it imposes on Eligible Creditors. For that reason, the Proposed Protective Order is substantially shorter than other protective orders in these Title III Cases: the Proposed Protective Order here is only four and a half pages, whereas other protective orders entered in these Title III cases are well over 10 pages long.[10] Further, absent Eligible Creditors' agreement to be bound by the terms of the Revised Proposed Protective Order, the Debtors will not be able to provide Eligible Creditors with access to Confidential Information potentially relevant to creditors' consideration of the adequacy of the Disclosure Statement. Requiring Eligible Creditors who wish to obtain access to Confidential Information to first sign the Proposed Protective Order reasonably balances Eligible

---

[10] *See, e.g.*, *Confidentiality Agreement and Order in Connection with (A) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets [ECF No. 9022] and (B) Ambac Assurance Corporation's Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Cash Restriction Analysis [ECF No. 9023]*, ECF No. 12920 (17 pages long); *Stipulation and Protective Order*, Adv. Proc. No. 17-ap-229, ECF No. 84 (13 pages long).

Creditors' ability to obtain access to factual source materials and raw data underlying the Disclosure Statement with the need to maintain the confidentiality of non-public information.

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully request the Court grant the Motions and grant them such other relief as is just and proper.

Dated: April 21, 2021
San Juan, Puerto Rico

Respectfully submitted,

/s/  Brian S. Rosen
Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*

/s/  Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board for Puerto Rico as representative for the Debtors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record, and all CM/ECF participants in the case.

*/s/ Hermann D. Bauer*

Hermann D. Bauer

## Exhibit A-1

**Revised Proposed Order**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>           Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**ORDER (I) SCHEDULING A HEARING TO CONSIDER THE ADEQUACY OF
INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II)
ESTABLISHING THE DEADLINE FOR FILING OBJECTIONS
TO THE DISCLOSURE STATEMENT AND REPLIES
THERETO, (III) APPROVING FORM OF NOTICE THEREOF,
(IV) ESTABLISHING DOCUMENT DEPOSITORY PROCEDURES
IN CONNECTION THEREWITH, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] dated April 6, 2021, of the Commonwealth of Puerto

Rico (the "Commonwealth"), the Employees Retirement System of the Government of the

Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"),

by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Motion.

Board") and in its capacity as sole representative of the Commonwealth, ERS, and PBA (the
"Debtors" under PROMESA section 315(b)), requesting an order: (i) scheduling a Disclosure
Statement Hearing to consider the adequacy of the information contained in the Disclosure
Statement, (ii) establishing a deadline by which objections to the adequacy of the Disclosure
Statement and replies thereto must be filed, (iii) approving the form of notice of the Disclosure
Statement Hearing and related deadlines, (iv) establishing document depository procedures in
connection therewith, and (v) granting related relief, all as more fully set forth in the Motion; and
the Court having subject matter jurisdiction to consider the Motion and the relief requested therein
pursuant to PROMESA section 306(a); and it appearing that venue in this district is proper
pursuant to PROMESA section 307(a); and due and proper notice of the Motion having been
provided and it appearing that no other or further notice need be provided; and the Court having
determined the relief sought in the Motion is in the best interests of the Debtors, its creditors, and
all parties in interest; and the Court having determined the legal and factual bases set forth in the
Motion establish just cause for the relief granted herein, it is hereby ORDERED AS FOLLOWS:

1. The Motion is granted as modified herein.

2. The Disclosure Statement Notice is approved.

**Disclosure Statement Scheduling Procedures**

3. The following Disclosure Statement Scheduling Procedures are approved:

- **Disclosure Statement Hearing**: 9:30 a.m., Atlantic Standard Time, on June 16, 2021, as the time and date for the Disclosure Statement Hearing, as such date may be adjourned by the Court or the Debtors pursuant to a notice filed on the docket maintained in these Title III Cases;

- **Disclosure Statement Objection Deadline**: 5:00 p.m., Atlantic Standard Time, on May 21, 2021 as the deadline to file final (and not preliminary) objections to (i) the adequacy of the Disclosure Statement, and (ii) the relief requested in the Disclosure Statement Motion.  Objections of the adequacy of the Disclosure Statement must (i) state the name and address of the objector or entity proposing a

modification to the Disclosure Statement, and the amount (if applicable) of its claim or nature of its interest in the Debtors' cases, and (ii) specify the basis and nature of any objection and set forth the proposed modification to the Disclosure Statement, together with suggested language; and

- **Disclosure Statement Reply Deadline:** 5:00 p.m., Atlantic Standard Time, on June 4, 2021 as the deadline for the Debtors or other parties in interest to file replies or responses to the Objections.

**Disclosure Statement Depository**

4.      The Disclosure Statement Depository Procedures set forth on **Exhibit 1** hereto are approved.  The Debtors are authorized to establish and maintain the Disclosure Statement Depository in accordance with the Disclosure Statement Depository Procedures.

**Confidentiality**[3]

5.      The Debtors have established good cause for entry of an order, attached hereto as **Exhibit 2**, governing Confidential Information in connection with the Disclosure Statement Depository.  The Protective Order set forth on **Exhibit 2** hereto is approved in all respects.  The Debtors are authorized to implement the procedures and requirements set forth in the Protective Order, including execution of the Protective Order Subscription attached hereto as **Exhibit 3**.

6.      Pursuant to Federal Rule of Evidence 502(d), any inadvertent disclosure of Confidential Information (as defined in the Protective Order) by the Debtors in connection with the Disclosure Statement Depository shall not be deemed to comprise any waiver of any applicable privilege, with such order to be enforceable in any and all other federal and state court proceedings.

7.      No Warranty of Accuracy.  Each Eligible Creditor understands that the Producing Parties (as defined in **Exhibit 2** to this Order) will endeavor to include in the Confidential Information materials relevant for the purpose of evaluation of the Disclosure Statement, but each

---

[3]   Capitalized terms used in this "Confidentiality" section, but not otherwise defined herein shall have the meaning ascribed to those terms in **Exhibit 2** hereto.

Eligible Creditor acknowledges that the Producing Parties do not make any representation or warranty as to the accuracy or completeness of any Confidential Information so provided, and none of the Producing Parties shall have any liability to any Eligible Creditor or its representatives resulting from the use of such information by an Eligible Creditor or its representatives.

8.     <u>No Waiver</u>.   No failure or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

9.     Upon entry hereof, the Debtors shall serve a copy of this Order upon all parties entitled to service in accordance with the Local Rules.

**<u>Miscellaneous</u>**

10.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.     The Court shall retain jurisdiction with respect to all matters arising from or relating to the interpretation or implementation of this Order.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

13.     This Order resolves Docket Entry No. _____ in Case No. 17-3283


Dated: _____, 2021
       San Juan, Puerto Rico
                                        _____
                                        Laura Taylor Swain
                                        United States District Court Judge

## Exhibit 1

### Disclosure Statement Depository Procedures

1.     On or after April 28, 2021, the Debtors are authorized to establish and populate an electronic document depository (the "Disclosure Statement Depository") which shall include factual source materials and raw data underlying the Disclosure Statement (including but not limited to factual source materials and raw data underlying the cash restriction analysis, the best interest tests reports, and the Section 211 report attached to the Disclosure Statement), as well as documents relating to the nature of claims and classification under the Plan (collectively, the "Documents").

2.     Creditors may request access to the Disclosure Statement Depository by visiting titleiiiplandataroom.com.

3.     The Disclosure Statement Depository will be made available only to the following parties or their representatives (collectively, "Eligible Creditors"): (*i*) current and former employees of the Commonwealth (also known as "public employees"); (*ii*) creditors of the Debtors for which a master proof of claim has been filed on such creditor's behalf that has not otherwise been disallowed or expunged, (*iii*) creditors of the Debtors who have filed a proof of claim against one or more of the Debtors that has not been disallowed or expunged, (*iv*) creditors who were not required to file a proof of claim pursuant to the Bar Date Orders, or (*v*) creditors who are listed on the Debtors' creditor matrix [ECF Nos. 10709, 1817, 830, as may be modified], in an amount greater than $0.00.[1]

---

[1]   "Bar Date Orders" refers to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] and the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160].

4.      All Eligible Creditors wishing to access the Disclosure Statement Depository must first navigate to titleiiiplandataroom.com; request access to the site; designate whether they wish to have access to public documents only or to confidential documents as well; affirm they are or represent a creditor of the Debtors; provide certain biographical information, including their name, address, telephone number, email address, proof of claim number (if available), and identify their creditor type, and if they are not the creditor, the name of the creditor and, if applicable, the representative institution they are associated with; and certify that they are eligible for access to the Disclosure Statement Depository pursuant to categories (*i*)-(*iv*) in paragraph 3 above.  Access requests will be processed as promptly as reasonably practicable.

5.      Eligible Creditors granted access to the Disclosure Statement Depository will receive access to all non-confidential materials posted in the Disclosure Statement Depository.  To the extent Eligible Creditors also wish to access Confidential Information, such parties must agree to comply with the Protective Order annexed as Exhibit 2 to the Order, and execute the Protective Order Subscription annexed as Exhibit 3 to the Order.  The Protective Order Subscription will be available to creditors by visiting titleiiiplandataroom.com and requesting access to confidential documents.  Creditors will then be directed to OnTask, a secure signing service, in order to review the Protective Order and collect an Eligible Creditor's electronic signature on the Protective Order Subscription.  Any Eligible Creditor who executes the Protective Order Subscription shall be provided access to the Confidential portion of the Disclosure Statement Depository within one (1) business day of execution and submission thereof, or as soon as reasonably practicable thereafter.

6.      The Disclosure Statement Depository shall contain electronic indices of all documents in the Disclosure Statement Depository.  One such index will include the publicly available Documents in the Disclosure Statement Depository and shall be made available to all

2

Eligible Creditors once they are granted access to the Disclosure Statement Depository.  The second such index will include Documents in the Data Room containing Confidential Information, and will be made available only to Eligible Creditors who successfully request and receive access to Confidential Information by reviewing the Protective Order and signing the Protective Order Subscription.  The Debtors shall use their reasonable best efforts to place Documents in the Disclosure Statement Depository to categorize Documents by topic; provided, however, that the Disclosure Statement Depository shall contain a disclaimer expressly stating, among other things, that (i) the Debtors shall not be responsible for the mis-categorization of any particular Document and (ii) each Eligible Creditor should not rely upon the categorization of the Documents and should review all categories of Documents in their entirety.

7.     Notwithstanding the placement of any document in the Disclosure Statement Depository and the review of any such document by an Eligible Creditor, the Oversight Board and the Debtors shall maintain the right to object to the use or introduction of any document in the Disclosure Statement Depository in any matter or proceeding on relevance grounds or as otherwise permitted in accordance with the Federal Rules of Evidence and applicable law; provided, however, that, to the extent that a Document contained in the Disclosure Statement Depository has been created by the Debtors, such party shall have waived the right to object to the use or introduction of such document on the basis of authenticity.  Additionally, to the extent that the Debtors inadvertently include privileged materials in the Disclosure Statement Depository, it shall not be deemed to comprise any waiver of any applicable privilege.  Such protective measures are necessary to provide the requesting parties access to relevant materials in a timely and efficient manner.

8.     In order to streamline access to the Disclosure Statement Depository and prevent overloading the Disclosure Statement Depository's website, the Oversight Board may make some or all Documents included in the Disclosure Statement Depository available to some or all Eligible Creditors by other means, including but not limited to transmitting such Documents via a secure file transfer protocol.  The Oversight Board shall make the determination to provide Documents in such fashion in its own discretion, and all other terms of use and access to the Documents included in the Disclosure Statement Depository, whether provided via the depository or via secure file transfer protocol (including relating to the use of Confidential Information), shall be identical.

[*Remainder of Page Intentionally Left Blank*]

## **Exhibit 2**

### **Protective Order**

1.     <u>Definitions</u>:

      a.     "<u>Document</u>" means all documents and information in the Disclosure Statement Depository (the "<u>Data Room</u>").

      b.     "<u>Confidential Information</u>" means all Documents in the Data Room that the Debtors consider in good faith to contain personal, proprietary, or otherwise confidential information that would have a detrimental effect on the Debtors or other third parties if it was publicly disclosed.

2.     <u>Permissible Use of Confidential Information</u>.  All parties to this Protective Order, including their agents and representatives, agree to maintain the confidentiality and avoid improper disclosure of any Confidential Information in the Data Room.  This includes any information derived from the Confidential Information, such as summaries, copies, or presentations containing or referencing Confidential Information.  All Documents made available in the Depository shall be used only in connection with evaluating the adequacy of the Disclosure Statement and not for any other purpose.  Each Eligible Creditor will safeguard Confidential Information from unauthorized disclosure with the same standard of care each Eligible Creditor uses in maintaining the confidentiality of its own confidential information of a similar nature.

3.     <u>Confidentiality Subscription</u>.  Eligible Creditors who are interested in obtaining access to Confidential Information will be directed to sign a Protective Order Subscription utilizing OnTask, a secure signing service.  Before an Eligible Creditor or any of its agents or representatives may access Confidential Information, they must read this Protective Order and execute the Protective Order Subscription in the form attached as <u>Exhibit 3</u> via OnTask's secure signing service.

4.     <u>Disclosure of Confidential Information</u>.  Without obtaining the Debtors' prior written consent, Confidential Information may be disclosed only to the following persons:

a.     any mediator or court (or their representatives) taking part in the administration or adjudication of the Disclosure Statement (collectively, the "<u>Courts</u>"), in compliance with the procedures listed in paragraph 6 below;

b.     persons who are the authors, addressees, or recipients of documents containing Confidential Information if they have previously had lawful access to those documents;

c.     professional court reporters and their staff; and

d.     any Eligible Creditor's agents or representatives, including in house and outside counsel, professional personnel (including but not limited to IT staff), testifying or consulting experts, anticipated or actual witnesses testifying in connection with the Disclosure Statement, and translators or other outside litigation support vendors (collectively, "<u>Representatives</u>").  Eligible Creditors shall be responsible for ensuring their Representatives read this Protective Order and comply with its terms, and each Eligible Creditor shall be responsible for any breach of this Protective Order by any of their Representatives.  Attorneys for Eligible Creditors may only provide Confidential Information to their clients after their clients visit OnTask's secure signing service and execute the Protective Order Subscription on the OnTask site.

5.     <u>Demand for Confidential Information</u>.  If an Eligible Creditor or its Representatives are requested or required by court process or law to disclose Confidential Information, the Eligible Creditor will promptly give the Oversight Board written notice (to the attention of Martin J. Bienenstock, Esq. and Brian S. Rosen, Esq., Proskauer Rose LLP, Eleven Times Square, New York, New York 10036) of such request or requirement as far in advance of

2

any disclosure as is practicable so the parties may seek an appropriate protective order or waiver in compliance with provisions of this Protective Order.

6.      Submission of Confidential Information to the Court.  Any Confidential Information filed with or otherwise submitted to the Court shall be filed or submitted under seal consistent with the local rules for the United States District Court for the District of Puerto Rico, and any applicable case management procedures.  If any Confidential Information is used in any court proceeding, it shall not lose its designation through such use.  Confidential Information shall not be copied or reproduced in an Eligible Creditor's objection to the Disclosure Statement, unless it is reasonably necessary to include Confidential Information in such an objection.  If so, the Eligible Creditor's objection must be filed under seal in accordance with the requirements of the United States District Court for the District of Puerto Rico, all copies shall be subject to this Protective Order and must include a "CONFIDENTIAL" designation.

7.      Challenges to Designations of Confidentiality.  If an Eligible Creditor believes any documents contained in the Depository have been improperly designated by the Debtors as containing Confidential Information, the Eligible Creditor may, after attempting to resolve the matter by agreement, apply to the Court for a ruling that certain documents or testimony designated as Confidential Information, or the information therein, is not entitled to confidential status or protection.  The confidential status of the documents, testimony, or information at issue shall be maintained pending the Court's ruling on the motion and any appeal therefrom.  The Debtors' failure to designate Documents as "CONFIDENTIAL" shall not be deemed a waiver in whole or in part of the claim of confidentiality.  Upon prompt notice from the Oversight Board of a failure to designate, Eligible Creditors and their Representatives shall cooperate to restore the confidentiality of the Confidential Information.

8.      <u>Nonwaiver of Privileges</u>.  Disclosure of documents (including documents containing Confidential Information) pursuant to the terms of this Protective Order shall not be deemed to waive attorney-client privilege, work-product protection or other privilege or immunity that would otherwise attach to the document or information produced or to other documents or information.  If an Eligible Creditor or their Representative reviews any information in the Data Room that is either (i) subject to a good faith claim of privilege or (ii) upon reasonable review appear to be subject to a legally recognized privilege, the Eligible Creditor or their Representative shall provide immediate notice to the Debtors and shall not review the information.  Upon notification by the Debtors that any of the Debtors has inadvertently included information in the Depository that should not have been included (whether because of applicable privilege or otherwise), each Eligible Creditor shall certify that they have deleted or destroyed any downloaded or printed copies of such documents within twenty-four (24) hours of notification.

9.      <u>Return or Destruction of Confidential Information Upon Plan Confirmation</u>. Within sixty (60) days after the entry of a final order (or orders) confirming the Plan, or the exhaustion of any appeals relating thereto, Confidential Information and all copies of same, and all documents containing or referring to Confidential Information, and copies of any pleading or paper filed of record with the Court, shall either be returned to the Debtors or destroyed.

10.      <u>Application of Securities Laws</u>.  Any Eligible Creditor who signs a Protective Order Subscription understands that, as a result of the receipt of Confidential Information, he, she, or it may be deemed to be in possession of material, nonpublic information relating to the Debtors, and that the United States securities laws apply to such person.  If an Eligible Creditor or its Representative who signs a Protective Order Subscription also trades

4

securities, such person represents that it will ensure such trades do not violate any federal or state securities laws.

11.    <u>Remedies, Jurisdiction and Governing Law</u>.   Specific performance and injunctive relief are available as nonexclusive remedies upon proof of any breach of this Protective Order.  Each Eligible Creditor and the Debtors shall confer in good faith over any disagreement in connection with this Protective Order before claiming noncompliance to any third party or this Court, <u>provided</u> that the Debtors shall have the right to refuse continued access to the Data Room to such Eligible Creditor and its Representatives if the Debtors determine that such Eligible Creditor has breached its obligations.

*[Remainder of page intentionally left blank]*

**Exhibit 3**

**Protective Order Subscription**

I hereby certify to the Oversight Board,[1] the Commonwealth of Puerto Rico, the Employees
Retirement System of the Government of the Commonwealth of Puerto Rico, Puerto Rico Public
Buildings Authority, the PSA Parties,[2] and the ERS Parties[3], that I have read the *Order (I)
Scheduling a Hearing to Consider the Adequacy of Information Contained in the Disclosure
Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure Statement and
Replies Thereto, (III) Approving Form of Notice Thereof (IV) Establishing Document Depository
Procedures in Connection Therewith, and (V) Granting Related Relief*, dated ___, 2021 (the
"<u>Order</u>") and the Protective Order attached as <u>Exhibit 2</u> thereto, and that I understand that I may
not disclose any Confidential Information (as defined in the Protective Order) except as provided
in the Protective Order.  I further recognize that I am bound by the terms of the Protective Order
and I agree to comply with those terms and submit to the jurisdiction of the United States District
Court for the District of Puerto Rico for purposes of enforcement of the Order, the Protective
Order, and this Protective Order Subscription.

Dated: _____

                                                       _____
                                                       Signature

                                                       Name: _____

                                                       Address: _____

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Motion of Debtors
for an Order Establishing Discovery Procedures in Connection with Approval of Disclosure Statement and
Granting Related Relief.*

[2]  The "<u>PSA Parties</u>" shall mean the parties to the Plan Support Agreements, other than the Debtors.

[3]  The "<u>ERS Parties</u>" shall mean the Official Committee of Retired Employees of the Commonwealth of Puerto Rico;
certain groups of holders of bonds issued by ERS; and The Bank of New York Mellon, as fiscal agent for the ERS
Bonds.

**<u>Exhibit A-2</u>**

**Revised Proposed Order (Redline)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br><br>                      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**ORDER (I) SCHEDULING A HEARING TO CONSIDER THE ADEQUACY OF
INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II)
ESTABLISHING THE DEADLINE FOR FILING OBJECTIONS
TO THE DISCLOSURE STATEMENT AND REPLIES
THERETO, (III) APPROVING FORM OF NOTICE THEREOF,
(IV) ESTABLISHING DOCUMENT DEPOSITORY PROCEDURES
IN CONNECTION THEREWITH, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] dated April 6, 2021, of the Commonwealth of Puerto

Rico (the "Commonwealth"), the Employees Retirement System of the Government of the

Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority

("PBA"), by and through the Financial Oversight and Management Board for Puerto Rico (the

"Oversight Board") and in its capacity as sole representative of the Commonwealth, ERS, and

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four
(4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto
Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales
Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal
Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No.
17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four
Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-
BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority
("PBA") (Bankruptcy Case No. 19-BK-5233-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case
numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   Capitalized terms not otherwise defined herein shall have the meanings given to such terms in the Motion.

PBA (the "Debtors" under PROMESA section 315(b)), requesting an order: (i) scheduling a Disclosure Statement Hearing to consider the adequacy of the information contained in the Disclosure Statement, (ii) establishing a deadline by which objections to the adequacy of the Disclosure Statement and replies thereto must be filed, (iii) approving the form of notice of the Disclosure Statement Hearing and related deadlines, (iv) establishing document depository procedures in connection therewith, and (v) granting related relief, all as more fully set forth in the Motion; and the Court having subject matter jurisdiction to consider the Motion and the relief requested therein pursuant to PROMESA section 306(a); and it appearing that venue in this district is proper pursuant to PROMESA section 307(a); and due and proper notice of the Motion having been provided and it appearing that no other or further notice need be provided; and the Court having determined the relief sought in the Motion is in the best interests of the Debtors, its creditors, and all parties in interest; and the Court having determined the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby ORDERED AS FOLLOWS:

1.      The Motion is granted as modified herein.

2.      The Disclosure Statement Notice is approved.

**Disclosure Statement Scheduling Procedures**

3.      The following Disclosure Statement Scheduling Procedures are approved:

- **Disclosure Statement Hearing**: 9:30 a.m., Atlantic Standard Time, on June 16, 2021, as the time and date for the Disclosure Statement Hearing, as such date may be adjourned by the Court or the Debtors pursuant to a notice filed on the docket maintained in these Title III Cases;

- **Disclosure Statement Objection Deadline**: 5:00 p.m., Atlantic Standard Time, on May 14,21, 2021 as the deadline to file final (and not preliminary) objections to (i) the adequacy of the Disclosure Statement, and (ii) the relief requested in the Disclosure Statement Motion. Objections of the adequacy of the Disclosure Statement must (i) state the name and address of the objector or entity proposing a

modification to the Disclosure Statement, and the amount (if applicable) of its claim or nature of its interest in the Debtors' cases, and (ii) specify the basis and nature of any objection and set forth the proposed modification to the Disclosure Statement, together with suggested language; and

- **Disclosure Statement Reply Deadline:** 5:00 p.m., Atlantic Standard Time, on ~~May 28,~~ June 4, 2021 as the deadline for the Debtors or other parties in interest to file replies or responses to the Objections.

**Disclosure Statement Depository**

4.      The Disclosure Statement Depository Procedures set forth on **Exhibit 1** hereto are approved.  The Debtors are authorized to establish and maintain the Disclosure Statement Depository in accordance with the Disclosure Statement Depository Procedures.

**Confidentiality[3]**

5.      The Debtors have established good cause for entry of an order, attached hereto as **Exhibit 2**, governing Confidential Information in connection with the Disclosure Statement Depository.  The Protective Order set forth on **Exhibit 2** hereto is approved in all respects.  The Debtors are authorized to implement the procedures and requirements set forth in the Protective Order, including execution of the Protective Order Subscription attached hereto as **Exhibit 3**.

6.      Pursuant to Federal Rule of Evidence 502(d), any inadvertent disclosure of Confidential Information (as defined in the Protective Order) by the Debtors in connection with the Disclosure Statement Depository shall not be deemed to comprise any waiver of any applicable privilege, with such order to be enforceable in any and all other federal and state court proceedings.

7.      <u>No Warranty of Accuracy</u>.  Each Eligible Creditor understands that the Producing Parties (as defined in **Exhibit 2** to this Order) will endeavor to include in the Confidential Information materials relevant for the purpose of evaluation of the Disclosure Statement, but

---

[3]   Capitalized terms used in this "Confidentiality" section, but not otherwise defined herein shall have the meaning ascribed to those terms in **Exhibit 2** hereto.

3

each Eligible Creditor acknowledges that the Producing Parties do not make any representation

or warranty as to the accuracy or completeness of any Confidential Information so provided, and

none of the Producing Parties shall have any liability to any Eligible Creditor or its

representatives resulting from the use of such information by an Eligible Creditor or its

representatives.

8.      No Waiver.  No failure or delay in exercising any right, power or privilege

hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof

preclude any other or further exercise thereof or the exercise of any right, power or privilege

hereunder.

9.      Upon entry hereof, the Debtors shall serve a copy of this Order upon all parties

entitled to service in accordance with the Local Rules.

**Miscellaneous**

10.     The terms and conditions of this Order shall be immediately effective and

enforceable upon its entry.

11.     The Court shall retain jurisdiction with respect to all matters arising from or

relating to the interpretation or implementation of this Order.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation, or enforcement of this Order.

13.     This Order resolves Docket Entry No. _____ in Case No. 17-3283


Dated: _____, 2021
        San Juan, Puerto Rico            _____
                                         Laura Taylor Swain
                                         United States District Court Judge

4

**Exhibit 1**

**Disclosure Statement Depository Procedures**

1.       On or after April 28, 2021, the Debtors are authorized to establish and populate an electronic document depository (the "Disclosure Statement Depository") which shall include factual source materials and raw data underlying the Disclosure Statement (including but not limited to factual source materials and raw data underlying the cash restriction analysis, the best interest tests reports, and the Section 211 report attached to the Disclosure Statement), as well as documents relating to the nature of claims and classification under the Plan (collectively, the "Documents").

2.       Creditors may request access to the Disclosure Statement Depository by visiting titleiiiplandataroom.com.

3.       The Disclosure Statement Depository will be made available only to the following parties or their representatives (collectively, "Eligible Creditors"): (*i*) current and former employees of the Commonwealth (also known as "public employees"); (*ii*) creditors of the Debtors for which a master proof of claim has been filed on such creditor's behalf that has not otherwise been disallowed or expunged, (*iii*) creditors of the Debtors who have filed a proof of claim against one or more of the Debtors that has not been disallowed or expunged, (*iv*) creditors who were not required to file a proof of claim pursuant to the Bar Date Orders, or (*v*) creditors who are listed on the Debtors' creditor matrix [ECF Nos. 10709, 1817, 830, as may be modified], in an amount greater than $0.00.[1]

4.       All Eligible Creditors wishing to access the Disclosure Statement Depository must first navigate to titleiiiplandataroom.com; request access to the site; designate whether they

---

[1]   "Bar Date Orders" refers to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] and the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160].

wish to have access to public documents only or to confidential documents as well; affirm they are or represent a creditor of the Debtors; provide certain biographical information, including their name, address, telephone number, email address, proof of claim number (if available), and identify their creditor type, and if they are not the creditor, the name of the creditor and, if applicable, the representative institution they are associated with; and certify that they are eligible for access to the Disclosure Statement Depository pursuant to categories (*i*)-(*iv*) in paragraph 3 above.  Access requests will be processed as promptly as reasonably practicable.

5.      Eligible Creditors granted access to the Disclosure Statement Depository will receive access to all non-confidential materials posted in the Disclosure Statement Depository. To the extent Eligible Creditors also wish to access Confidential Information, such parties must agree to comply with the Protective Order annexed as <u>Exhibit 2</u> to the Order, and execute the Protective Order Subscription annexed as <u>Exhibit 3</u> to the Order.  The Protective Order Subscription will be available to creditors by visiting titleiiiplandataroom.com and requesting access to confidential documents.  Creditors will then be directed to OnTask, a secure signing service, in order to review the Protective Order and collect an Eligible Creditor's electronic signature on the Protective Order Subscription.  Any Eligible Creditor who executes the Protective Order Subscription shall be provided access to the Confidential portion of the Disclosure Statement Depository within one (1) business day of execution and submission thereof, or as soon as reasonably practicable thereafter.

6.      The Disclosure Statement Depository shall contain electronic indices of all documents in the Disclosure Statement Depository.  One such index will include the publicly available Documents in the Disclosure Statement Depository and shall be made available to all Eligible Creditors once they are granted access to the Disclosure Statement Depository.  The

2

second such index will include Documents in the Data Room containing Confidential Information, and will be made available only to Eligible Creditors who successfully request and receive access to Confidential Information by reviewing the Protective Order and signing the Protective Order Subscription.   The Debtors shall use their reasonable best efforts to place Documents in the Disclosure Statement Depository to categorize Documents by topic; provided, however, that the Disclosure Statement Depository shall contain a disclaimer expressly stating, among other things, that (i) the Debtors shall not be responsible for the mis-categorization of any particular Document and (ii) each Eligible Creditor should not rely upon the categorization of the Documents and should review all categories of Documents in their entirety.

7.      Notwithstanding the placement of any document in the Disclosure Statement Depository and the review of any such document by an Eligible Creditor, the Oversight Board and the Debtors shall maintain the right to object to the use or introduction of any document in the Disclosure Statement Depository in any matter or proceeding on relevance grounds or as otherwise permitted in accordance with the Federal Rules of Evidence and applicable law; provided, however, that, to the extent that a Document contained in the Disclosure Statement Depository has been created by the Debtors, such party shall have waived the right to object to the use or introduction of such document on the basis of authenticity.   Additionally, to the extent that the Debtors inadvertently include privileged materials in the Disclosure Statement Depository, it shall not be deemed to comprise any waiver of any applicable privilege.   Such protective measures are necessary to provide the requesting parties access to relevant materials in a timely and efficient manner.

8.      In order to streamline access to the Disclosure Statement Depository and prevent overloading the Disclosure Statement Depository's website, the Oversight Board may make

some or all Documents included in the Disclosure Statement Depository available to some or all

Eligible Creditors by other means, including but not limited to transmitting such Documents via

a secure file transfer protocol.  The Oversight Board shall make the determination to provide

Documents in such fashion in its own discretion, and all other terms of use and access to the

Documents included in the Disclosure Statement Depository, whether provided via the

depository or via secure file transfer protocol (including relating to the use of Confidential

Information), shall be identical.

[*Remainder of Page Intentionally Left Blank*]

**Exhibit 2**

**Protective Order**

1.      <u>Definitions</u>:

      a.      "<u>Document</u>" means all documents and information in the Disclosure Statement Depository (the "<u>Data Room</u>").

      b.      "<u>Confidential Information</u>" means all Documents in the Data Room that the Debtors consider in good faith to contain personal, proprietary, or otherwise confidential information that would have a detrimental effect on the Debtors or other third parties if it was publicly disclosed.

      2.      <u>Permissible Use of Confidential Information</u>.  All parties to this Protective Order, including their agents and representatives, agree to maintain the confidentiality and avoid improper disclosure of any Confidential Information in the Data Room.  This includes any information derived from the Confidential Information, such as summaries, copies, or presentations containing or referencing Confidential Information.  All Documents made available in the Depository shall be used only in connection with evaluating the adequacy of the Disclosure Statement and not for any other purpose.  Each Eligible Creditor will safeguard Confidential Information from unauthorized disclosure with the same standard of care each Eligible Creditor uses in maintaining the confidentiality of its own confidential information of a similar nature.

      3.      <u>Confidentiality Subscription</u>.  Eligible Creditors who are interested in obtaining access to Confidential Information will be directed to sign a Protective Order Subscription utilizing OnTask, a secure signing service.  Before an Eligible Creditor or any of its agents or representatives may access Confidential Information, they must read this Protective

Order and execute the Protective Order Subscription in the form attached as <u>Exhibit 3</u> via OnTask's secure signing service.

       4.    <u>Disclosure of Confidential Information</u>.  Without obtaining the Debtors' prior written consent, Confidential Information may be disclosed only to the following persons:

       a.    any mediator or court (or their representatives) taking part in the administration or adjudication of the Disclosure Statement (collectively, the "<u>Courts</u>"), in compliance with the procedures listed in paragraph 6 below;

       b.    persons who are the authors, addressees, or recipients of documents containing Confidential Information if they have previously had lawful access to those documents;

       c.    professional court reporters and their staff; and

       d.    any Eligible Creditor's agents or representatives, including in house and outside counsel, professional personnel (including but not limited to IT staff), testifying or consulting experts, anticipated or actual witnesses testifying in connection with the Disclosure Statement, and translators or other outside litigation support vendors (collectively, "<u>Representatives</u>").  Eligible Creditors shall be responsible for ensuring their Representatives read this Protective Order and comply with its terms, and each Eligible Creditor shall be responsible for any breach of this Protective Order by any of their Representatives.  Attorneys for Eligible Creditors may only provide Confidential Information to their clients after their clients visit OnTask's secure signing service and execute the Protective Order Subscription on the OnTask site.

       5.    <u>Demand for Confidential Information</u>.  If an Eligible Creditor or its Representatives are requested or required by court process or law to disclose Confidential

Information, the Eligible Creditor will promptly give the Oversight Board written notice (to the attention of Martin J. Bienenstock, Esq. and Brian S. Rosen, Esq., Proskauer Rose LLP, Eleven Times Square, New York, New York 10036) of such request or requirement as far in advance of any disclosure as is practicable so the parties may seek an appropriate protective order or waiver in compliance with provisions of this Protective Order.

6.    <u>Submission of Confidential Information to the Court</u>.   Any Confidential Information filed with or otherwise submitted to the Court shall be filed or submitted under seal consistent with the local rules for the United States District Court for the District of Puerto Rico, and any applicable case management procedures.   If any Confidential Information is used in any court proceeding, it shall not lose its designation through such use.   Confidential Information shall not be copied or reproduced in an Eligible Creditor's objection to the Disclosure Statement, unless it is reasonably necessary to include Confidential Information in such an objection.   If so, the Eligible Creditor's objection must be filed under seal in accordance with the requirements of the United States District Court for the District of Puerto Rico, all copies shall be subject to this Protective Order and must include a "CONFIDENTIAL" designation.

7.    <u>Challenges to Designations of Confidentiality</u>.   If an Eligible Creditor believes any documents contained in the Depository have been improperly designated by the Debtors as containing Confidential Information, the Eligible Creditor may, after attempting to resolve the matter by agreement, apply to the Court for a ruling that certain documents or testimony designated as Confidential Information, or the information therein, is not entitled to confidential status or protection.   The confidential status of the documents, testimony, or information at issue shall be maintained pending the Court's ruling on the motion and any appeal therefrom.   The Debtors' failure to designate Documents as "CONFIDENTIAL" shall not be

deemed a waiver in whole or in part of the claim of confidentiality.  Upon prompt notice from

the Oversight Board of a failure to designate, Eligible Creditors and their Representatives shall

cooperate to restore the confidentiality of the Confidential Information.

8.     Nonwaiver of Privileges.  Disclosure of documents (including documents

containing Confidential Information) pursuant to the terms of this Protective Order shall not be

deemed to waive attorney-client privilege, work-product protection or other privilege or

immunity that would otherwise attach to the document or information produced or to other

documents or information.   If an Eligible Creditor or their Representative reviews any

information in the Data Room that is either (i) subject to a good faith claim of privilege or (ii)

upon reasonable review appear to be subject to a legally recognized privilege, the Eligible

Creditor or their Representative shall provide immediate notice to the Debtors and shall not

review the information.   Upon notification by the Debtors that any of the Debtors has

inadvertently included information in the Depository that should not have been included

(whether because of applicable privilege or otherwise), each Eligible Creditor shall certify that

they have deleted or destroyed any downloaded or printed copies of such documents within

twenty-four (24) hours of notification.

9.     Return or Destruction of Confidential Information Upon Plan

Confirmation.  Within sixty (60) days after the entry of a final order (or orders) ~~approving the~~

~~Disclosure Statement~~confirming the Plan, or the exhaustion of any appeals relating thereto,

Confidential Information and all copies of same, and all documents containing or referring to

Confidential Information, and copies of any pleading or paper filed of record with the Court,

shall either be returned to the Debtors or destroyed.

10.    <u>Application of Securities Laws</u>.   Any Eligible Creditor who signs a Protective Order Subscription understands that, as a result of the receipt of Confidential Information, he, she, or it may be deemed to be in possession of material, nonpublic information relating to the Debtors, and that the United States securities laws apply to such person.   If an Eligible Creditor or its Representative who signs a Protective Order Subscription also trades securities, such person represents that it will ensure such trades do not violate any federal or state securities laws.

11.    <u>Remedies, Jurisdiction and Governing Law</u>.   Specific performance and injunctive relief are available as nonexclusive remedies upon proof of any breach of this Protective Order.   Each Eligible Creditor and the Debtors shall confer in good faith over any disagreement in connection with this Protective Order before claiming noncompliance to any third party or this Court, <u>provided</u> that the Debtors shall have the right to refuse continued access to the Data Room to such Eligible Creditor and its Representatives if the Debtors determine that such Eligible Creditor has breached its obligations.

*[Remainder of page intentionally left blank]*

5

**Exhibit 3**

**Protective Order Subscription**

I hereby certify to the Oversight Board,[1] the Commonwealth of Puerto Rico, the

Employees Retirement System of the Government of the Commonwealth of Puerto Rico, Puerto

Rico Public Buildings Authority, the PSA Parties,[2] and the ERS Parties[3], that I have read the

*Order (I) Scheduling a Hearing to Consider the Adequacy of Information Contained in the*

*Disclosure Statement, (II) Establishing the Deadline for Filing Objections to the Disclosure*

*Statement and Replies Thereto, (III) Approving Form of Notice Thereof (IV) Establishing*

*Document Depository Procedures in Connection Therewith, and (V) Granting Related Relief*,

dated ____, 2021 (the "Order") and the Protective Order attached as Exhibit 2 thereto, and that I

understand that I may not disclose any Confidential Information (as defined in the Protective

Order) except as provided in the Protective Order.  I further recognize that I am bound by the

terms of the Protective Order and I agree to comply with those terms and submit to the

jurisdiction of the United States ~~Bankruptcy~~District Court for the District of Puerto Rico for

purposes of enforcement of the Order, the Protective Order, and this Protective Order

Subscription.

Dated: _____

 

                             _____
                             Signature

                             Name: _____

                             Address: _____

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Motion of Debtors for an Order Establishing Discovery Procedures in Connection with Approval of Disclosure Statement and Granting Related Relief.*

[2]    The "PSA Parties" shall mean the parties to the Plan Support Agreements, other than the Debtors.

[3]    The "ERS Parties" shall mean the Official Committee of Retired Employees of the Commonwealth of Puerto Rico; certain groups of holders of bonds issued by ERS; and The Bank of New York Mellon, as fiscal agent for the ERS Bonds.

## **Exhibit B-1**

**Revised Disclosure Statement Notice**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, AND THE PUERTO RICO PUBLIC BUILDINGS AUTHORITY, | (Jointly Administered) |
| Debtors.[1] | |

## NOTICE OF FILING DISCLOSURE STATEMENT FOR THE THIRD AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.* AND HEARING THEREON

**PLEASE TAKE NOTICE** that, on April ____, 2021, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public Buildings Authority ("PBA"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[2] (the Oversight Board, in its capacity as sole representative of the Commonwealth, ERS, and PBA, is referred to as the "Debtors"), filed with the United States District Court for the District of Puerto Rico (the "Court"):

> (i)   the *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, [ECF No. ____] (as the same may be amended or modified, including all exhibits and attachments thereto, the "Plan"),

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

(ii)   the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, [ECF No. ___] (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"),

(iii)   the *Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. ____] (the "Disclosure Statement Motion"), and

(iv)   the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. ___] (the "Discovery Procedures Motion").

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Disclosure Statement, and any amendments, supplements, changes, or modifications thereto, for approval at a hearing before the Honorable Laura Taylor Swain on **June 16, 2021 at 9:30 a.m. (Atlantic Standard Time)** convened by telephonic hearing through CourtSolutions (the "Disclosure Statement Hearing").  The Disclosure Statement may be amended at any time prior to or at the Disclosure Statement Hearing.  The Disclosure Statement Hearing may be adjourned from time to time without further notice, except for the announcement of the adjourned date(s) through the agenda for the Disclosure Statement Hearing and/or at the Disclosure Statement Hearing or any continued hearing(s).

**PLEASE TAKE FURTHER NOTICE** that information relating to the adequacy of the information contained in the Disclosure Statement is available online in the Disclosure Statement Depository at titleiiiplandataroom.com.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the approval of the Disclosure Statement must:

(i)   be in writing,

(ii)   conform to the Federal Rules of Bankruptcy Procedures and the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1] (the "Case Management Procedures"),

(iii)   state the name and address of the objector or entity proposing a modification to the Disclosure Statement, and the amount (if applicable) of its claim or nature of its interest in the Debtors' cases,

(iv) specify the basis and nature of any objection and set forth the proposed modification to the Disclosure Statement, together with suggested language,

(v) be filed with the Clerk of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007 together with proof of service, **on or before May 21, 2021 at 5:00 p.m. (Atlantic Standard Time)** (the "Objection Deadline"), and

(vi) be served upon the following parties so as to be received on or before the Objection Deadline:

- the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Commonwealth of Puerto Rico);

- the attorneys for the Oversight Board as representative of the Debtors, Proskauer Rose LLP, 11 Times Square, New York, New York 10036, Attn: Martin J. Bienenstock, Esq., and Brian Rosen, Esq.;

- the co-attorneys for the Oversight Board as representative of the Debtors, O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq.;

- the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq., Peter Friedman, Esq., and Maria J. DiConza, Esq.;

- the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muniz, LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan PR 00917, Attn: Luis C. Marini-Biaggi, Esq. and Carolina Velaz-Rivero, Esq.;

- the attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq., Andrew V. Tenzer, Esq., Michael E. Comerford, Esq., and G. Alexander Bongartz, Esq.;

- the attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. and Alberto J.E. Añeses Negrón, Esq.;

- the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. and Richard Levin, Esq., and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine Steege, Esq. and Melissa Root, Esq.;

- the attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce de León, Hato Rey, PR 00918, Attn: A.J. Bennazar- Zequeira, Esq.; and

- all parties that have requested notice pursuant to Rule 2002 of the Bankruptcy Rules (available on the website maintained by the Debtors' claims and noticing agent (see "Master Service List"), https://cases.primeclerk.com/puertorico/).

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan and the Disclosure Statement may be obtained by visiting the website maintained by the Debtors' claims and noticing agent in the PROMESA Title III cases, https://cases.primeclerk.com/puertorico/; by sending a request to Prime Clerk LLC, at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com, or, for a fee, from the Court's website, https://www.prd.uscourts.gov/. A PACER login and password are required to access documents on the Court's website, and these can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov.   Hard copies of the Plan and the Disclosure Statement are available upon request to the Debtors' claims and noticing agent at the phone number or email address above.

Dated: April ____, 2021
    San Juan, Puerto Rico

Respectfully submitted,

*/s/* _____

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*/s/* _____

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

4

**<u>Exhibit B-2</u>**

**Revised Disclosure Statement Notice (Redline)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, THE<br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO, AND THE PUERTO RICO PUBLIC<br>BUILDINGS AUTHORITY,<br><br>                Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**NOTICE OF FILING DISCLOSURE STATEMENT FOR THE THIRD
AMENDED TITLE III JOINT PLAN OF ADJUSTMENT OF THE
COMMONWEALTH OF PUERTO RICO, *ET AL.* AND HEARING THEREON**

     **PLEASE TAKE NOTICE** that, on April ____, 2021, the Financial Oversight and
Management Board for Puerto Rico (the "Oversight Board"), as sole representative of the
Commonwealth of Puerto Rico (the "Commonwealth"), the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("ERS"), and the Puerto Rico Public
Buildings Authority ("PBA"), pursuant to section 315(b) of the *Puerto Rico Oversight,
Management, and Economic Stability Act* ("PROMESA")[2] (the Oversight Board, in its capacity
as sole representative of the Commonwealth, ERS, and PBA, is referred to as the "Debtors"),
filed with the United States District Court for the District of Puerto Rico (the "Court"):

     (i)    the *Third Amended Title III Joint Plan of Adjustment of the Commonwealth of
          Puerto Rico, et al.*, [ECF No. ____] (as the same may be amended or modified,
          including all exhibits and attachments thereto, the "Plan"),

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four
(4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto
Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales
Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal
Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No.
17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the
Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four
Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-
BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority
("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case
numbers are listed as Bankruptcy Case numbers due to software limitations).
[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

(ii) the *Disclosure Statement for the Third Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.*, [ECF No. ___] (as the same may be amended or modified, including all exhibits and attachments thereto, the "<u>Disclosure Statement</u>"),

(iii) the *Amended Joint Motion of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority for an Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice and Confirmation Schedule, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting, Election, and Confirmation Deadlines, and (VIII) Approving Vote Tabulation Procedures* [ECF No. ____] (the "<u>Disclosure Statement Motion</u>"), and

(iv) the *Motion of Debtors for an Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery in Connection Therewith* [ECF No. ___] (the "<u>Discovery Procedures Motion</u>").

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Disclosure Statement, and any amendments, supplements, changes, or modifications thereto, for approval at a hearing before the Honorable Laura Taylor Swain on **June 16, 2021 at 9:30 a.m. (Atlantic Standard Time)** convened by telephonic hearing through CourtSolutions (the "<u>Disclosure Statement Hearing</u>"). The Disclosure Statement may be amended at any time prior to or at the Disclosure Statement Hearing. The Disclosure Statement Hearing may be adjourned from time to time without further notice, except for the announcement of the adjourned date(s) through the agenda for the Disclosure Statement Hearing and/or at the Disclosure Statement Hearing or any continued hearing(s).

**PLEASE TAKE FURTHER NOTICE** that information relating to the adequacy of the information contained in the Disclosure Statement is available online in the Disclosure Statement Depository at <u>titleiiiplandataroom.com</u>.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the approval of the Disclosure Statement must:

(i) be in writing,

(ii) conform to the Federal Rules of Bankruptcy Procedures and the *Fourteenth Amended Case Management Procedures* [ECF No. 15894-1] (the "<u>Case Management Procedures</u>"),

(iii) state the name and address of the objector or entity proposing a modification to the Disclosure Statement, and the amount (if applicable) of its claim or nature of its interest in the Debtors' cases,

(iv) specify the basis and nature of any objection and set forth the proposed modification to the Disclosure Statement, together with suggested language,

(v) be filed with the Clerk of the United States District Court for the Southern District of New York, Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, NY 10007 together with proof of service, **on or before May ~~14,~~21, 2021 at 5:00 p.m. (Atlantic Standard Time)** (the "Objection Deadline"), and

(vi) be served upon the following parties so as to be received on or before the Objection Deadline:

- the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: In re: Commonwealth of Puerto Rico);

- the attorneys for the Oversight Board as representative of the Debtors, Proskauer Rose LLP, 11 Times Square, New York, New York 10036, Attn: Martin J. Bienenstock, Esq., and Brian Rosen, Esq.;

- the co-attorneys for the Oversight Board as representative of the Debtors, O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq.;

- the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq., Peter Friedman, Esq., and Maria J. DiConza, Esq.;

- the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muniz, LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan PR 00917, Attn: Luis C. Marini-Biaggi, Esq. and Carolina Velaz-Rivero, Esq.;

- ~~those creditors holding the 20 largest unsecured claims against the Debtors (on a consolidated basis);~~

- the attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq., Andrew V. Tenzer, Esq., Michael E. Comerford, Esq., and G. Alexander Bongartz, Esq.;

- the attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. and Alberto J.E. Añeses Negrón, Esq.;

- the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon,

Esq. and Richard Levin, Esq., and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine Steege, Esq. and Melissa Root, Esq.;

- the attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce de León, Hato Rey, PR 00918, Attn: A.J. Bennazar- Zequeira, Esq.;  and

- the attorneys for the LCDC, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, Attn: Susheel Kirpalani, Esq., and Eric Kay, Esq.;

- the attorneys for the QTCB Group, Morgan, Lewis & Bockius LLP, One State Street, Hartford, CT 06103, Attn: Kurt A. Mayr, Esq., David L. Lawton, Esq., and Shannon B. Wolf;

- the attorneys for the Ad Hoc Group of Constitutional Debtholders, Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019, Attn: Gary S. Lee, Esq., James A. Newton, Esq., and Andrew Kissner, Esq.;

- the attorneys for the GO Group, (i) Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Andrew Rosenberg, Esq. and Karen Zeituni, Esq.; (ii) Willkie, Farr & Gallagher LLP, 1875 K Street, NW, Washington, DC 20006, Attn: Mark Stancil, Esq.; and (iii) Robbins, Russell, Englert, Orseck, Untereiner & Sauber, LLP, 2000 K Street, NW, Washington, DC 20006, Attn: Donald Burke, Esq.;

- the PRIFA BANs Owner Representative, Silver Point Capital, L.P., 2 Greenwich Plaza, Greenwich, CT 06830, Attn: Derek Staples;

- the attorneys for AFSCME, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Kenneth Pasquale, Esq., and Sherry J. Millman, Esq.;

- the attorneys for Assured, Cadwalader, Wickersham & Taft, 20 Liberty Street, New York, NY 10281, Attn: Mark Ellenberg, Esq. and Casey Servais, Esq.;

- the attorneys for National, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Kelly DiBlasi, Esq., and Kirsten Erichsen, Esq.;

- the attorneys for Syncora, Norton Rose Fulbright US LLP, 1301 Avenue of the Americas, New York, NY 10019, Attn: Eric Daucher, Esq.;

- the attorneys for the Andalusian Funds, Jones Day, 250 Vesey Street, New York, NY 10281, Attn: Benjamin Rosenblum, Esq.;

4

- the attorneys for the Puerto Rico Funds, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10036, Attn: John K. Cunningham, Esq.;

- the attorneys for Whitehaven Credit Opportunities Master Fund, Ltd., Schulte, Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022, Attn: Douglas S. Mintz; and

- all parties that have requested notice pursuant to Rule 2002 of the Bankruptcy Rules (available on the website maintained by the Debtors' claims and noticing agent (see "Master Service List"), https://cases.primeclerk.com/puertorico/).

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan and the Disclosure Statement may be obtained by visiting the website maintained by the Debtors' claims and noticing agent in the PROMESA Title III cases, https://cases.primeclerk.com/puertorico/; by sending a request to Prime Clerk LLC, at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoinfo@primeclerk.com, or, for a fee, from the Court's website, https://www.prd.uscourts.gov/. A PACER login and password are required to access documents on the Court's website, and these can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov. Hard copies of the Plan and the Disclosure Statement are available upon request to the Debtors' claims and noticing agent at the phone number or email address above.

Dated: April ____, 2021            Respectfully submitted,
San Juan, Puerto Rico

/s/_____

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

/s/_____

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813

Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for the
Debtors*

## Exhibit C

**Omnibus Reply Chart**

| Party | Objection | Response |
|-------|-----------|----------|
| **Objections to Proposed Disclosure Statement Hearing Schedule** | | |
| Ambac | • The Court should refrain from scheduling a hearing on the Disclosure Statement at this time, and it instead should set a briefing schedule on objections regarding threshold issues, including:<br><br>   ○ determination of revenue bondholders' rights in revenues pledged toward payment of bonds issued by CCDA, PRIFA, and HTA,<br><br>   ○ the Plan's compliance with *Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 748 F.2d 42 (1st Cir. 1984), and<br><br>   ○ the legal viability of the Plan's theory of preemption.<br><br><br>• Consideration of the Disclosure Statement is premature because it cannot be appropriately considered without:<br><br>   ○ the issuance of a certified fiscal plan for the Commonwealth "that reflects the current state of play," and<br><br>   ○ the provision of a best interest test analysis. | • The Court can schedule these determinations concurrently with the Disclosure Statement Hearing.<br><br>   ○ The determination of revenue bondholders' rights will not affect the distributions agreed to with Assured and National. Resolution of the issue as to Ambac can proceed on a dual track.<br><br>   ○ As further discussed in the Objection to Renewed 3013 Motion, Ambac and the UCC must first demonstrate relief pursuant to Bankruptcy Rule 3013 is legally possible. Furthermore, (1) Bankruptcy Rule 3013 is not available to parties other than the plan proponent, and accordingly cannot be a basis for delaying the Disclosure Statement schedule, and (2) objections in connection with Bankruptcy Rule 3013 and classification are more properly unfair discrimination objections that should be considered in connection with confirmation.<br><br>   ○ The legal viability of preemption pursuant to the Plan is a confirmation objection that can be raised at the appropriate time in connection with confirmation of the proposed Plan. Furthermore, preemption be a material topic of the new motions for summary judgment the Oversight Board has requested stay relief to prosecute.<br><br><br>• The latest fiscal plan is scheduled to be considered by the Oversight Board and certified in early May, 2021. As a result, the certified fiscal plan for the Commonwealth, together with the Debtors' best interest test analysis (a corollary thereto) will be included in the Disclosure Statement to be distributed to creditors. Inclusion of such documents is itself adequate. Ambac's objection relates to confirmation of the Plan (*e.g.*, whether the Plan is consistent with the certified fiscal plan, Ambac Objection ¶ 26, and |

| Party | Objection | Response |
|-------|-----------|----------|
| | | satisfies the "best interests of creditors" test, <u>Ambac Objection</u> ¶ 28), and Ambac will have sufficient time to review the certified fiscal plan and the Debtors' best interest test analysis prior to the proposed confirmation hearing beginning October 18, 2021.  Accordingly, there is no reason to delay the Disclosure Statement Hearing based on objections to confirmation of the Plan. |
| | • Even if the Court allows for consideration of the Disclosure Statement, the proposed schedule should be modified.<br><br>   o The May 14 objection deadline does not give objectors sufficient time to prepare objections to the Disclosure Statement.  Ambac expects significant modifications in the forthcoming Disclosure Statement given that it will need to address the settlements with the ERS bondholders, and with Assured and National on HTA and CCDA-related issues.<br><br>   o Ambac's proposed modified schedule:<br>      ▪ Expedited Discovery: 4/28-6/4<br>      ▪ Disclosure Statement Objection Deadline: 6/11<br>      ▪ Reply Deadline: 6/25<br>      ▪ Disclosure Statement Hearing:  7/2 (or another date convenient for court) | • A revised Disclosure Statement will be filed before the April 28, 2021 hearing to consider the Scheduling Motion.<br><br>• To accommodate the various requests to extend the briefing schedule in connection with approval of the Disclosure Statement, while balancing the Debtors' need to meet the timelines established by the various settlements, the Debtors propose extending the briefing deadlines by seven (7) days as follows:<br><br>   o Objection Deadline: May 21, 2021<br><br>   o Reply Deadline, June 4, 2021<br><br>   o Disclosure Statement Hearing: June 16, 2021<br><br>• To the extent it is necessary to shorten the 28-day notice period required under Bankruptcy Rules 2002 and 3017, the Court may do so pursuant to Bankruptcy Rule 9006(c).  As noted above, the proposed modified schedule balances the requests to extend the briefing schedule, while allowing the Debtors to meet the timelines established by the various settlements.<br><br>   o Courts have shortened the notice period for disclosure statement hearings. *E.g.*, *In re Fla. Coastal Airlines, Inc.*, 2007 Bankr. LEXIS 411 (Bankr. S.D. Fla. Feb. 1, 2007), *amended by* 361 B.R. 286 (Bankr. S.D. Fla. 2007). |

| Party | Objection | Response |
|---|---|---|
|  | • The proposed schedule provides no time for creditors to obtain discovery. A number of issues will require discovery including, "[t]he financial position of the Commonwealth and its agencies, instrumentalities, and public corporations." Information akin to the following would be sought:<br><br>   o "Analysis underlying key Disclosure Statement and fiscal plan inputs, including (i) the Board's analysis of what constitutes 'essential services,' and (ii) the Board's cash restriction analysis."<br><br>   o "Basic information regarding the financial position of the Commonwealth, including the Commonwealth's necessary operating expenses, (ii) the costs of essential public services, and (iii) the Commonwealth's liquidity and minimum cash needs."<br><br>   o "Basic information regarding the financial position of public corporations of the Commonwealth, including the cash position of public corporations not reflected in the Disclosure Statement or fiscal plan (for example, the positions of those public corporations released publicly in the blowout of mediation materials)."<br><br>   o "Disclosures regarding non-cash resources of the Commonwealth and its agencies, instrumentalities, and public corporations, including (without limitation) real property, illiquid investments, and the Municipal Revenue Collection Center's anticipated sale of its tax arrears and liens portfolio for at least $400 million." [*Id.* at ¶ 33].<br><br>   o "Information regarding key settlements underpinning Plan treatment," specifically:<br><br>      ■ "Information regarding key classes treated in the Plan, especially when such treatment is premised on a settlement. For example, information regarding (i) the Pension Reserve Trust, contributions thereto, and the management thereof, and (ii) the Pension Reserve Fund described in the Retiree Committee PSA, including its establishment, funding, management, and projected investment guidelines and investment returns." | • Pursuant to Bankruptcy Rule 2004 and pending and completed litigations, Ambac has sought significant discovery from the Debtors over the course of these Title III cases, including discovery relating to the Oversight Board's cash restriction analysis, certain non-cash assets held by the Commonwealth, and the Commonwealth's calculation of its pension liabilities. There is no need for further discovery on these issues are this time.<br><br>   o Ambac's request for discovery regarding the financial position of and assets held by public corporations of the Commonwealth is inappropriate for the reasons set forth in the Oversight Board's *Objection to Ambac Assurance Corporation's Motion for Order Authorizing Discovery Under Bankruptcy Rule 2004 Concerning Commonwealth Assets*, ECF No. 15967.<br><br>   o Ambac's request for discovery regarding essential services or necessary operating expenses is inappropriate. The Oversight Board's position on essential services is set out, at length, in the Disclosure Statement, and no further or additional discovery on the subject is necessary. Disclosure Statement at 157-58. Further, with respect to "necessary operating expenses," the Oversight Board has repeatedly advised that discovery regarding this issue is inappropriate because it seeks discovery into the Oversight Board's certification determinations, which is not permissible pursuant to section 106(e).<br><br>   o Ambac's requests regarding the Pension Reserve Trust, the ERS assets to be sold to the Commonwealth pursuant to the ERS Stipulation, and allegations regarding improper solicitation are inappropriate at this stage as they are beyond the scope of the Disclosure Statement hearing. That hearing should focus only on the adequacy of the information contained in the Disclosure Statement, |

| Party | Objection | Response |
|---|---|---|
| | ▪ "Information regarding the calculation of the claim amount of pension claims addressed in the Plan." <br><br> ▪ "Information regarding the 'ERS assets' that are to be sold to the Commonwealth under the Board's proposed settlement with ERS bondholders. (ERS Stipulation ¶5(c)(i).)"  [*Id.* at ¶ 37]. <br><br> ○ And "[i]nvestigation regarding improper solicitation," warranting discovery on: <br><br> ▪ "Communications between the Board and the PSA signatories regarding (i) the termination of the 2020 PSA and (ii) the negotiation of the PSA." <br><br> ▪ "Communications between the Board and the parties to the ERS Stipulation regarding the negotiation of the ERS Stipulation." <br><br> ▪ "Communications between the Board and the Retiree Committee regarding the negotiation of the Retiree Committee PSA."  [*Id.* at ¶ 38]. | and not on issues that are only relevant to confirmation (to the extent they are relevant at all). <br><br> • Given this history, Ambac's purported need for discovery in connection with the approval of the Disclosure Statement is intended to leverage and delay the Plan process developed by the Mediation Team in the hopes of changing the outcome of negotiations regarding the Plan. <br><br> ○ If Ambac identifies material facts that should be disclosed, they can do so in their objection to the approval of the Disclosure Statement and the Oversight Board will consider them. <br><br> • Ambac's asserted need to investigate "improper solicitation" is merely unsupported conjecture, and is not a basis to delay the Oversight Board's proposed disclosure statement approval schedule. |
| UCC | • The Court should "(i) approve a briefing schedule, including an objection deadline, for litigating the Second Amended Disclosure Statement consistent with the notice provisions of Bankruptcy Rule 2002(b), (ii) direct the Oversight Board to file any further amended disclosure statement and/or any supplements thereto and serve notice of such filings no less than 28 days prior to the deadline to object thereto, (iii) direct the Oversight Board to populate the Disclosure Statement Depository by a date certain, with immediate access granted to the Committee and other notice parties . . . ."  UCC Obj. ¶ 21. <br><br><br><br> • The Court should "confirm that the Committee's Renewed 3013 Motion will be heard prior to the Disclosure Statement Objection Deadline and, in | • A revised Disclosure Statement will be filed before the April 28, 2021 hearing to consider the Scheduling Motion. <br><br> • As noted above, (a) to accommodate the various requests to extend the briefing schedule in connection with approval of the Disclosure Statement, while balancing the Debtors' need to meet the timelines established by the various settlements, the Debtors propose extending the briefing deadlines by seven (7) days, and (b) the Court may shorten notice pursuant to Bankruptcy Rule 9006(c). <br><br> • The Disclosure Statement Depository will be available beginning April 28, 2021, and the UCC will be provided access. <br><br> • See response to Ambac Objection above. |

| Party | Objection | Response |
|---|---|---|
| | any event, no later than a hearing on the Second Amended Disclosure Statement." *Id.* | |
| SIM | • "Movant believes that the deadlines should be moved 45-days to accommodate this need of careful examination." <u>SIM Obj.</u> ¶ 6. | • As noted above, to accommodate the various requests to extend the briefing schedule in connection with approval of the Disclosure Statement, while balancing the Debtors' need to meet the timelines established by the various settlements, the Debtors propose extending the briefing deadlines by seven (7) days. |
| DRA Parties | • The proposed schedule "impose an objection deadline and/or a Disclosure Statement approval hearing that is less than 28 days after the filing of the amended Disclosure Statement" as such deadline would violate Rules 2002(b) and 3017(a) of the Federal Rules of Bankruptcy Procedure. <u>DRA Obj.</u> ¶ 6. | • As noted above, (a) to accommodate the various requests to extend the briefing schedule in connection with approval of the Disclosure Statement, while balancing the Debtors' need to meet the timelines established by the various settlements, the Debtors propose extending the briefing deadlines by seven (7) days, and (b) the Court may shorten notice pursuant to Bankruptcy Rule 9006(c). |
| FGIC | • The proposed Disclosure Statement Hearing schedule fails to provide 28-days' notice pursuant to Bankruptcy Rule 2002, and the Debtors have not shown cause to shorten notice pursuant to Bankruptcy Rule 9006(c).<br><br>• "[N]o party in interest will have had a chance to consider the Disclosure Statement in conjunction with an updated certified fiscal plan." <u>FGIC Obj.</u> ¶ 4. | • See response to Ambac Objection above. |
| Peter Hein | • The proposed Disclosure Statement Hearing schedule fails to provide 28-days' notice pursuant to Bankruptcy Rule 2002, and the Debtors have not shown cause to shorten notice pursuant to Bankruptcy Rule 9006(c).<br><br>• "Basic information" required under 11 U.S.C. § 1125 is missing, including best interest test reports and certain audited financial statements. <u>Hein Obj.</u> at 10-12. | • See response to Ambac Objection above.<br><br>• The Disclosure Statement contains the most recent available audited financial statements. Nonetheless, such objection is to the adequacy of the Disclosure Statement and not the *scheduling* of the Disclosure Statement Hearing. |

| Party | Objection | Response |
|-------|-----------|----------|
| **Objections to Proposed Data Room Procedures** | | |
| Ambac | • Paragraph 7 of the Proposed DS Scheduling Order should be removed. Creditors "should not be forced to acknowledge that [the Debtors] are 'endeavor[ing] to include Confidential Information materials relevant for the purpose of evaluation of the Disclosure Statement' when creditors have no idea what materials are going to be made available . . . whether they are indeed relevant, or whether additional relevant materials have not been made available." Ambac Obj. ¶ 45<br><br>• Paragraph 7's proposed limitation of liability regarding the accuracy or completeness of any Confidential Information is unnecessary, as any disputes are hypothetical and should be addressed if and when they arise. Ambac Obj. ¶ 45 | • Paragraph 7 states: "Each Eligible Creditor understands that the Producing Parties (as defined in Exhibit 2 to this Order) will endeavor to include in the Confidential Information materials relevant for the purpose of evaluation of the Disclosure Statement, but each Eligible Creditor acknowledges that the Producing Parties do not make any representation or warranty as to the accuracy or completeness of any Confidential Information so provided, and none of the Producing Parties shall have any liability to any Eligible Creditor or its representatives resulting from the use of such information by an Eligible Creditor or its representatives."<br><br>• Nowhere in this paragraph are creditors obligated to acknowledge that the documents in the Depository are indeed relevant, or that the Depository contains the entire universe of documents a particular creditor may consider relevant.  Ambac's concerns regarding the scope of the paragraph 7 are therefore wholly unwarranted.<br><br>• Ambac also objects to the proposed language providing that the Debtors make no representations as to the accuracy or completeness of any Confidential Information because, according to Ambac, any disputes regarding accuracy or completeness are "hypothetical" and should be addressed to the extent they arise.  That objection is meritless.  The Debtors included this provision specifically because they do not intend to make any representations as to the accuracy or completeness of the Confidential Information; there is no reason to await disputes on this issue. |
| | • The Oversight Board should be required to provide "raw data" underlying the Disclosure Statement in the Depository.  Ambac Obj. ¶ 46. | • The Debtors are making certain factual source materials available to creditors through the Disclosure Statement Depository in an effort to enhance the efficiency of the Disclosure Statement hearing.  The Debtors are not required to make either factual source materials or raw data utilized to |

| Party | Objection | Response |
|---|---|---|
| | | draft the Disclosure Statement available in order for creditors to assess the adequacy of the information contained in the Disclosure Statement.<br><br>• However, because the Debtors intend to make certain raw data available to creditors in the Depository, the Debtors do not object to revising the Disclosure Statement Depository Procedures in order to reflect the inclusion of that raw data. The Revised Disclosure Statement Depository Procedures reflect this modification.  *See* **Exhibit A-1** attached to the Reply. |
| | • Creditors should be able to use information from the Depository for any purpose in connection with the Title III Cases, not just for purposes of the Disclosure Statement hearing.<br><br>  o Documents in the Depository may be relevant to other proceedings, including the revenue bond adversary proceedings (Adv. Proc. Nos. 20-00003, 20-00004, 20-00005, and 20-00007) or the confirmation hearing. | • There is no basis to permit the use of documents in the Disclosure Statement Depository in other, unrelated proceedings to which the documents in question may not be relevant.  To the extent any party in interest believes documents in the Depository are relevant to other matters, the Debtors will consider reasonable requests to agree to their use in those other matters.  Indeed, other protective orders agreed to by the parties and approved by the Court contain similar limitations.  *See, e.g., Stipulation and Amended Protective Order*, Adv. Proc. No. 20-00003-LTS, ECF No. 65, ¶ 8. |
| | • The limitation on creditors' ability to use confidential information in objecting to the Disclosure Statement should be stricken because there is no reason for imposing such an ambiguous requirement on creditors' ability to reference Confidential Information in their filings.  Any "concerns about the public revelation of Confidential Information are eliminated by the need for creditors to file any Confidential Information under seal under the Court's standing order governing such matters." <u>Ambac Obj.</u> ¶ 49. | • The requirement that creditors include Confidential Information in their objections to the Disclosure Statement only if "reasonably necessary" is appropriate because it will avoid unnecessary burdens on the Court's staff.  As this Court has recognized, sealed filings "impose[] an incredible administrative burden on the Court."  *Order Pursuant to Bankruptcy Rule 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders*, ECF No. 6384 at 7.  By requiring that parties include Confidential Information in their objections only where "reasonably necessary," the Revised Proposed Disclosure Statement Depository Procedures ensure that objections do not contain incidental or unnecessary references to Confidential |

| Party | Objection | Response |
|-------|-----------|----------|
| | | Information, which would necessitate sealing and impose additional, unnecessary burdens on the Court. |
| | • Creditors should not be required to destroy Confidential Information upon any approval of the Disclosure Statement. "Creditors should instead be able to retain Confidential Information for use in connection with the Title III cases, and should not be required to destroy Confidential Information until the exhaustion of any appeals relating to the Title III cases." <u>Ambac Obj.</u> ¶ 50. | • Permitting Eligible Creditors to retain Confidential Information through the exhaustion of any appeals relating to any aspect of these Title III cases is unnecessary. However, the Debtors are amenable to allowing Eligible Creditors to retain Confidential Information through the conclusion of a hearing on confirmation of the Plan, as well as the exhaustion of any appeals relating thereto. The Revised Proposed Disclosure Statement Depository Procedures reflect this modification. |
| | • The Proposed Protective Order Subscription should be modified such that the subscriber submits to the jurisdiction of the United States <u>District</u> Court for the District of Puerto Rico, not the United States <u>Bankruptcy</u> Court for the District of Puerto Rico. <u>Ambac Obj.</u> ¶ 51. | • The Revised Proposed Disclosure Statement Depository Procedures reflect this modification. |
| UCC | • Asks that the Court "confirm that approval of the Disclosure Statement Depositary [sic] does not excuse the Oversight Board from responding to discovery requests." <u>UCC Obj.</u> ¶ 21.<br><br>  o "Responses to the discovery served by the Committee and other parties in interest, along with the information posted by the Debtors, should also be included in the Disclosure Statement Depository." <u>UCC Obj.</u> ¶ 16. | • The establishment of the Disclosure Statement Depository does not preclude parties from seeking discovery, if warranted. To the extent the Oversight Board provides materials in connection with requested discovery, such materials will also be included in the Depository.<br><br>• However, it must be noted that "the requirement of a disclosure statement [] should not be read to infer a corresponding creditor right of a fishing expedition. Although the Debtor is required to disclose his finances in a formal written document, the role of creditors and other parties in interest in the disclosure process is neither supervisory nor participatory. . . . The sole question before the Court at a hearing held pursuant to 11 U.S.C. s 1125(b) is whether the disclosure statement contains 'adequate information' to enable a 'hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.'" *Matter of Georgetown of Kettering*, 17 B.R. 73 (S.D. Ohio 1981). |

| Party | Objection | Response |
|-------|-----------|----------|
| FGIC | • "FGIC asserts that due process requires . . . removing any restrictions from the Disclosure Statement Depository Procedures that would limit a party in interest's ability to access information relevant to considering the adequacy of the Disclosure Statement." <u>FGIC Obj.</u> ¶ 7. | • The Debtors anticipate creditors will obtain access to the Depository upon their self-certification that they are an Eligible Creditor. Accordingly, the self-certification requirement will not result in any undue delay to creditor access.<br><br>• The Debtors' proposed procedures for granting access to Confidential Information is not burdensome—a party need only agree to be bound by the terms of the Revised Proposed Protective Order to be provided access to such information. Such requirement reasonably balances providing access to Confidential Information with the need to maintain confidentiality. |
| Peter Hein | • "[I]nformation should be made available to individual bondholders without preconditions, restrictions or delays." <u>Hein Obj.</u> at 3.<br><br>• "Debtors have not provided particularized justifications for confidentiality." <u>Hein Obj.</u> at 6.<br><br>• "[A]ccess by analysts, the press and media and similar parties" should also be allowed, *inter alia*, to help "make the information available to individual bondholders in a more understandable form." <u>Hein Obj.</u> at 4. | • See above.<br><br><br>• Mr. Hein lacks standing to represent the public, press, and media. Also, providing open access to the Depository to the public could overload the Depository's site, thereby preventing any users, including Eligible Creditors, from accessing the site.<br><br>• Furthermore, the purpose of the Depository is to facilitate efficient access to documents and information to assist creditors in evaluating the adequacy of the information contained in the Disclosure Statement. The Debtors, and their creditors, should not bear the cost of providing access to materials in connection with the approval of the Disclosure Statement to parties that *do not have standing* to participate in the Disclosure Statement approval process. |

| Party | Objection | Response |
|-------|-----------|----------|
| **Miscellaneous Objections** | | |
| Peter Hein | • "Debtors propose a requirement that objectors serve their objections on a lengthy list of 23 parties or categories of parties." Hein Obj. at 13. Proposes several alternatives for submission of objections. *Id.* at 14. | • The Oversight Board has removed certain parties from the parties to be served with objections. *See* **Exhibit B-2** attached to the Reply. The objection procedures are consistent with the *Fourteenth Amended Notice, Case Management and Administrative Procedures* [ECF No. 15894] (the "CMO"), which requires all Documents to be served, in the manner described in the CMO, on the Master Service List (as defined in the CMO). CMO ¶ II.E. |
| UCC | • "The Committee also objects to the overly onerous requirement that any party that objects to the Second Amended Disclosure Statement serve its objection on 23 separate groups of creditors and parties in interests. . . . Particularly for small creditors, this requirement creates a significant expense, and may even prevent some creditors from exercising their right to object. Moreover, any objection will be publicly available on the Prime Clerk website." UCC Obj. ¶ 13 n.11. | • See above. |
| Ambac | • "The proposed order attached to the DS Scheduling Motion as Exhibit A…characterizes the proposed 'Disclosure Statement Hearing'… as a hearing 'to consider the adequacy of the information contained in the [Disclosure Statement].' While adequacy of information will no doubt be a central issue at any hearing on a motion for approval of a disclosure statement, Ambac at this point does not have enough information about what specific additional forms of relief such an as-yet-unfiled motion might seek … Therefore, in the event the Court were to enter a scheduling order notwithstanding this Objection, the order should at a minimum refrain from characterizing the Disclosure Statement hearing in a way that could be interpreted as pre-judging the scope of the issues to be considered at such a hearing…." Ambac Obj. ¶ 44. | • The Disclosure Statement Motion will be filed before the April 28, 2021 hearing, which will be substantially the same as the motion filed last year on February 28, 2020. *See* ECF No. 11950. |
| Peter Hein | • Hard copies of the proposed Disclosure Statement should be provided to individual bondholders who filed notices of participation or proofs of claim. Hein Obj. at 12. | • Providing hard copies to all individual bondholders is unnecessarily costly, given the over 2,000 pages of materials. The Notice of Disclosure Statement Hearing provides that hard copies can be requested from Prime Clerk. |

| Party | Objection | Response |
|---|---|---|
| Peter Hein[1] | • No notice of the Motion was provided to individual bondholders.  <u>Hein Obj.</u> at 15-16. | • Notice was provided in accordance with the CMO, which requires that all Documents be served, in the manner described in the CMO, on the Master Service List (each as defined in the CMO).  <u>CMO</u> ¶ II.E; *see also* Certificate of Service [ECF No. 16375]. |

---

[1]  Mr. Hein also raised various issues outside the scope of the Motion, including objections to approval of the Disclosure Statement and confirmation of the Plan, none of which is properly before this Court at this time and therefore not necessary to address in this Reply.  The Oversight Board reserves all rights, arguments, and defenses in connection therewith.