# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO**<br><br>As a representative of the **COMMONWEALTH OF PUERTO RICO**[1] | **CASE NO. 17-BK-3283 (LTS)**<br><br><br><br>**PETITION UNDER TITLE III OF THE PUERTO RICO OVERSIGHT, MANAGEMENT AND ECONOMIC STABILITY ACT** |
| **HON. RAFAEL HERNÁNDEZ-MONTAÑEZ,** in his official capacity as Speaker of the Puerto Rico House of Representatives<br><br>Plaintiff<br><br>V.S.<br><br>**HON. PEDRO PIERLUISI-URRUTIA,** in his official capacity as Governor of the Commonwealth of Puerto Rico; **PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO; HON. FRANCISCO ROSADO-COLOMER,** in his official capacity as President of the Puerto Rico State Elections Commission; **FRANCISCO PARÉS-ALICEA,** in his official capacity as Secretary of the Puerto Rico Treasury Department<br>Defendants | **ADV. NO.**<br><br><br><br><br><br>**DECLARATORY JUDGMENT; INJUNCTIVE AND OTHER EQUITABLE RELIEF** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567- LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780- LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** the above-captioned plaintiff, through the undersigned counsels and very respectfully **SETS FORTH** and **PRAYS:**

## I. INTRODUCTION

1.1. On June 30, 2016 Congress enacted the Puerto Rico Oversight, Management and Economic Stability Act, 48 U.S.C. § 2101, et seq. (hereinafter referred to as "PROMESA"), as a means to restructure Puerto Rico's substantial public debt. Unfortunately, the policy that ensued was one that stripped Puerto Rico's duly elected government of its constitutional prerogative of distributing public Commonwealth funds in favor of a seven-member appointed body that is accountable only to Congress.

1.2. Four years of this experiment have engendered the most complex bankruptcy case in history (i.e., the foregoing Title III consolidated case) and a considerable body of First Circuit jurisprudence. Recently the new governance scheme created under PROMESA came to a head with the most intense, persistent and controversial subject in all of Puerto Rican politics: its political status/relationship with the United States. To be sure, Section 402 of PROMESA, 48 U.S.C. § 2192 provides that "[n]othing in this Act shall be interpreted to restrict Puerto Rico's right to determine its future political status, including by conducting the plebiscite as authorized by Public Law 113-76". No precedent exists concerning the

   breadth and scope of this discrete provision in the statute, particularly regarding what actions would "restrict" Puerto Rico's self-determination rights.

1.3. The Governor and the former legislative majority seem to understand that Section 402 means that PROMESA's utterly restrictive budget provisions may be avoided by simply adding on the "this expenditure concerns political status" tag. The Financial Oversight and Management Board (hereinafter referred to as "FOMB" or "the Board") has adopted a surprising resolution, dated April 13, 2021, identifying that the impasse between the Governor and the Legislature concerning a budgetary re-appropriation to fund a May 16, 2021 election of "Congresspeople"[2] and decreeing that "the Board desires to allow the Commonwealth Government to adopt or not to adopt the Proposed Revised Budget **the same as would occur absent PROMESA**" (emphasis added). See **Exhibit 1**. The Governor promptly went on to invoke Puerto Rico Law 2-2017 and the authority granted thereunder to co-defendant Puerto Rico Fiscal Agency and Financial Advisory Authority (hereinafter referred to as "AAFAF" for its Spanish language acronym) to reallot budgetary items. As we speak, the Puerto Rico Treasury Department is illegally disbursing funds pursuant to this unauthorized readjustment and the State Elections

---

[2] Established under Law 167-2020, enacted on December 30, 2020, that is, after the November 2020 General Election's results were known to reveal that the party proposing this policy had lost control of both legislative chambers, albeit retaining control of the Executive Branch.

3

        Commission is spending said funds in anticipation of the May 16, 2021 special election.

1.4. Plaintiff understands that defendants all of whom (but for the members of the FOMB) are statehood supporters would wish to zealously and passionately take steps that, in their view, would promote Puerto Rico's incorporation as a state. Having said this, there should always be a bright and clear line separating the actions that one thinks would advance one's ideological goals and what its plausible under the applicable legal standard. This is the bare minimum that the Rule of Law demands.

1.5. The instant action requires this Honorable Court to answer the following important first impression issues:

1) Does PROMESA preempt all Puerto Rico law provisions regarding the approval and amendment of budgets?

2) Does the FOMB have discretion to exempt certain budgetary items from PROMESA's preemptive reach?

3) Does Section 402 of PROMESA require an exemption of said statute's budgetary provisions on any and all matters that are described as being related to Puerto Rico's right to choose its political status?

## II. JURISDICTIONAL STATEMENT

2.1. This Honorable Court has subject matter jurisdiction over the instant federal question action pursuant to both 28 U.S.C. § 1331 and 48 U.S.C. § 2166, as it arises under a federal statute and affects the legal interests of

4

the Commonwealth of Puerto Rico, currently a debtor undergoing reorganization under Title III of PROMESA.

### III. THE PARTIES

3.1. Plaintiff Hon. Rafael Hernández-Montañez represents District 11 in the Puerto Rico House of Representatives, also holding the position of the Speaker of the House and, as per Section 5.2(p) of the Puerto Rico House Regulations (House Resolution Number 161), he is authorized to appear in Court to claim relief for any deprivation of said Body's constitutional and statutory prerogatives.

3.2. Co-defendant Hon. Pedro Pierluisi-Urrutia is the Governor of the Commonwealth of Puerto Rico and, as such, the highest executive officer within that political body.

3.3. Co-defendant the Puerto Rico Fiscal Agency and Financial Advisory Authority is a territorial instrumentality created pursuant to Puerto Rico's Law Number 2-2017 which may be sued independently from the Commonwealth of Puerto Rico and that has broad delegated authority to manage the Commonwealth's financial and credit affairs.

3.4. Co-defendant the Financial Oversight and Management Board is a territorial entity[3] created under PROMESA that oversees the Commonwealth's compliance with said statute.

3.5. Co-defendant Francisco Parés-Alicea is the current Secretary of the Puerto Rico Treasury Department and, as such, responsible for disbursing funds

---

[3] As per the case of FOMB v. Aurelius Investment, LLC, 140 S. Ct. 1649 (2020).

   to cover budgeted expenditures, including expenditures under the illegally adjusted 2020-2021 budget.

3.6. Co-defendant Hon. Francisco Rosado-Colomer is a judge whose judicial duties are suspended while he undertakes the role of President of the Puerto Rico State Elections Commission, an agency of the Executive Branch that administers electoral events within the territory. Under Puerto Rico law, the Pursuant oversees preparations for electoral events and is currently spending funds derived from the illegal readjustment that is being challenged in the instant action.

## IV. THE FACTS

4.1. On July 25, 1898, United States troops invaded the then Autonomous Spanish Province of Puerto Rico as part of the Spanish-American War.

4.2. The Treaty of Paris ended the aforementioned war and included the transfer of Puerto Rico to American rule.

4.3. Two years of military rule were followed by the slow build of a self-government scheme through organic acts enacted on 1900 and 1917, ending with the 1952 ratification of a Constitution for the Commonwealth of Puerto Rico, which was the zenith of the Territory's self-rule.

4.4. Notwithstanding the above tension has always existed in Puerto Rico when it comes to what should be its relationship to the United States Government, the main options always being annexation through statehood, the preservation or slight development of the 1952 regime, the entering into a free-association regime and straightforward independence.

4.5. Puerto Rico's political status has been taken to the polls on several occasions, to wit: on 1967 (Commonwealth status prevailed); on 1993 (Commonwealth status prevailed); on 1998 (a majority of voters chose a "none of the above" option); on 2012 (statehood prevailed); on 2017 (statehood prevailed)[4] and 2020 (statehood prevailed).

4.6. The 2012, 2017 and 2020 events were approved by administrations led by the pro-statehood New Progressive Party (hereinafter referred to as "NPP") with an obvious tilt towards said party's preferred option and in exclusion of the rest of the ideological spectrum.

4.7. The most recent status voting took place on November 3, 2020, along with the Constitutionally-mandated General Election and was called for and organized under Puerto Rico Law 51-2020, which was presumptuously titled as an act for the "immediate" resolution of Puerto Rico's ancient political status quagmire.

4.8. Article 4.3 of Law 51-2020 explicitly provides how a result in favor of the statehood option (which was eventually certified) was to be implemented by the Governor and Puerto Rico's non-voting representative in Congress.

4.9. While statehood and the NPP's candidate for the office of Governor were able to obtain narrow electoral victories, said party lost control of both the Puerto Rico Senate and the Puerto Rico House of Representatives[5].

---

[4] This particular event was boycotted by all political parties but for the one advocating for statehood.
[5] The Popular Democratic Party (hereinafter referred to as "PDP") attained the narrowest possible majority (26 seats) in the House and in the Senate, no party achieved a majority with the PDP holding a 12-seat plurality.

7

4.10. The fully-NPP controlled government that had been elected on 2016 ended its term on December 31, 2020 with the new administration taking over on January 2, 2021[6].

4.11. On December 30, 2020, just as the sand was running out on its hourglass, the outgoing NPP legislative majority enacted statehood-oriented Laws 165-2020 and 167-2020.

4.12. Of particular importance to the instant case is Law 167-2020, which calls for a May 16, 2021 special election to select a faux, paid 6-member (two "senators" and four "representatives") to go to Washington, DC to lobby for Puerto Rico's admission as a state.

4.13. Contrary to what has been the Governor's consistent rhetorical beat, Law 167-2020 is not a consequence of the November 2020 plebiscite as the creation of a mock "congressional delegation" was not on the ballot nor was it contemplated in said election's organic act, Law 51-2020.

4.14. The additional government bureaucracy that Law 167-2020 intended to create and the electoral event that it called for, failed to comply with Section 204(a) of PROMESA, 48 U.S.C. § 2144(a), as it did not fit into neither the approved fiscal plan nor the approved budget.

4.15. The FOMB has traditionally been very aggressive in enforcing compliance with Section 204.  See e.g. FOMB v. Vázquez-Garced, 616 B.R. 238 (D.P.R. 2020) (The Board successfully challenged Law 29-2019 and a plethora of Joint resolutions on the basis of non-compliance with Section 204).

---

[6] January 1st is the New Year Holiday, which is why the official swearing in ceremonies are held the day after it.

4.16. Because the current budget for fiscal year 2020-2021 does not allot any moneys for the May 16, 2021 election, on February 2021, the Pierluisi administration requested the funds that it deemed that it needed through the **only** mechanism that was available to it, a reallocation under Section 204(c) of PROMESA, 48 U.S.C. § 2144(c), in what became reprogramming request No. 2021-20376.

4.17. Understandably, the plaintiff, in accordance with the Legislature's prerogatives under the aforementioned statute opposed the Governor's request.

4.18. The above promoted a tense exchange of letters between the Commonwealth's Executive Branch (which claimed Section 402 as a carte blanche provision) and the FOMB's Executive Director. See **Exhibit B** (March 10, 11 and 15, 2021 letters).

4.19. As required by PROMESA, the Board received the Governor's budget adjustment request and, analyzed it, submitting it to the Puerto Rico Legislature for approval.

4.20. On his March 15, 2021 letter to AAFAF's Executive Director, Mr. Omar Marrero, the FOMB's President, Mr. David A. Skeel, Jr., correctly announced that:

> Contrary to your letter, the Oversight Board does not contend, and it has not "concluded, that under PROMESA Section 204(c), *all* reprogramming requests must be approved by the Puerto Rico Legislative Assembly." There are reprogramming requests from the Governor that the Oversight Board may approve. Here, however, **given the unique circumstances of Act 167 and the Reprogramming Request, the Oversight Board believes the Governor must submit the Reprogramming Request to the**

9

**Legislative Assembly and the Oversight Board pursuant to PROMESA section 204(c). As we stated in our March 11 letter to the Director of the Office of Management and Budget, "Act 167 is a new law involving a new expenditure with no funding appropriation for its implementation provided in the law itself. In addition, the expenditure for the implementation of Act 167 is not included in either the Fiscal Plan or the Budget."**

The language you cite in the Fiscal Plan and Budget does not counsel otherwise. Those provisions simply confirm that **any reprogramming, including those the Governor may have had the authority to make without Legislative approval pre-PROMESA, must be approved by the Oversight Board**. Indeed, your letter correctly observes **"the certified Fiscal Plan suspended legal provisions that allowed the Executive Branch to authorize reprogramming requests**."

Finally, the Oversight Board fully supports the right of the people of Puerto Rico to determine Puerto Rico's future political status and has done nothing to restrict that right. **Contrary to your assertion, the Board's decision to defer a decision on the Reprogramming Request does not restrict the right of the people of Puerto Rico to determine its future political status. PROMESA § 402 thus has no bearing here. Even if it did, Section 402 does not require the Oversight Board to certify the Reprogramming Request as not inconsistent with the Fiscal Plan and Budget or to take any other action. Section 402 places no obligations on the Oversight Board; it merely instructs how PROMESA should be interpreted**.

**Exhibit B** (emphasis added)

    4.21.    The House of Representatives voted down the budget adjustment request and plaintiff so notified the FOMB[7].

    4.22.    Rather than following on its correct March 15, 2021 assessment to the effect that it had the ultimate authority to approve or deny any budgetary adjustment, the Board issued an April 13, 2021 resolution that ended with the following holding:

---

[7] The Board was also appraised of the fact that both legislative bodies passed House Bill No. 21 to repeal Laws 165-2020 and Law 167-2020. On April 18, 2021, Governor Pierluisi expressly vetoed said bill.

10

IT IS HEREBY FURTHER RESOLVED that, the Board determines that, in this circumstance, **Section 402 of PROMESA constrains it from adopting an interpretation of PROMESA that may restrict determination of Puerto Rico's future political status as impacted by the Proposed Revised Budget given that (i) Act 167-2020 appears to relate to issues involving Puerto Rico's future political status, (ii) the Governor and the Legislature have a fundamental political disagreement concerning funding for Law 167-2020, and (iii) the Board desires to allow the Commonwealth government to adopt or not to adopt the Proposed Revised Budget the same as would occur absent PROMESA**; and

IT IS HEREBY FURTHER RESOLVED that, as a result, the Board determines, in its sole discretion pursuant to PROMESA Section 202(e)(3), that the Original Commonwealth Budget will remain in effect without revision.

**Exhibit A** (emphasis added)

4.23. The FOMB's surprising "hands off" approach on this matter seems to contradict the position stated in its March 15, 2021 letter and is inconsistent with PROMESA which renders it an *ultra vires* action that must be addressed by this Honorable Court.

4.24. It is bad enough that PROMESA strips the Puerto Rico Legislative Assembly of its constitutional prerogative of distributing public funds through the budget but the facts of this case add insult to injury by stripping said Branch of its statutory prerogatives under Section 204(c)(2) of PROMESA to **adopt** a reprograming that has already been approved by the Board[8].

---

[8] The statue at issue provides that:

> **The Legislature shall not adopt a reprograming**, and no officer or employee of the territorial government may carry out any reprograming, until the Oversight Board has provided the Legislature with an analysis that certifies such reprograming will not be inconsistent with the Fiscal Plan and Budget.

48 U.S.C. § 2144(c)(2) (emphasis added)

11

4.25. It is patently clear that, although it is the FOMB's ultimate prerogative to **certify** the propriety of budgetary adjustments, **only the Legislature may adopt** said adjustments once they have been duly certified as compliant with the fiscal plan and the purposes of PROMESA.

4.26. The Puerto Rico House of Representatives, herein represented by its Speaker has suffered a concrete an actionable injury that entitled it to seek declaratory and injunctive relief based on findings that:

　　　a) Section 204(c) of PROMESA completely preempts Puerto Rico law on the matter of budgetary adjustments;

　　　b) The FOMB lacks discretion to exempt any budgetary expense from PROMESA; and

　　　c) Section 402 is simply a rule of statutory construction and does not create privileged expenditures that are exempted from PROMESA.

4.27. We shall now address the legal basis for said request.

### V. FIRST CAUSE OF ACTION (Preemption)

5.1. It is hornbook law that under the Supremacy Clause (Art. VI, Cl. 2), where Congress expressly or tacitly regulates an activity within its jurisdiction in a way that conflicts with state (or territorial law), federal law reigns supreme. See Kansas v. García, 140 S. Ct. 791, 801 (2020)

5.2. Congress left nothing to the imagination regarding its intent of vesting PROMESA with preemptive force, as Section 4 of the Act, 48 U.S.C. § 2103, provides that "[t]he provisions of this Act shall prevail over any general or

12

specific provisions of territory law, State law, or regulation that is inconsistent with this Act". See also Rosselló-Nevárez v. FOMB, 330 F. Supp. 3d 685, 704 (D.P.R. 2018)[9].

5.3. Section 202 of PROMESA, 48 U.S.C. § 2142, preempts any inconsistent Puerto Rico laws with regards to how budgets are approved for a covered territorial entity such as the Commonwealth and Section 204(c) of that same statute, 48 U.S.C. § 2144(c), preempts any inconsistent Puerto Rico laws with regards as to how budgets may be readjusted after they are already in effect.

5.4. Based on the above, Governor Pierluisi and AAFAF cannot invoke Law 2-2017 to unilaterally reallot items in the 2020-2021 budget that the Board approved for that fiscal year, as Section 204(c) provides the sole mechanism to perform such an operation and plaintiff is entitled to a judicial decree so stating.

## VI. SECOND CAUSE OF ACTION (PROMESA's Continued Applicability)

6.1. Contrary to what the Board held in its April 13, 2021 resolution, no expenditure is exempted from the budget provisions in Sections 202 and 204 of PROMESA.

---

[9] Holding that:

> A prior year authorization for spending that is not covered by the budget is inconsistent with PROMESA's declaration that the Oversight Board-certified budget for the fiscal year is in full force and effect, and is therefore preempted by that statutory provision by force of Section 4 of PROMESA.

13

6.2. Quite to the contrary, the Section 204(c) scheme applies to "the reprogramming of **any amounts** provided in a certified Budget". 48 U.S.C. § 2144(c)(1) (emphasis added).

6.3. The statute contains no caveats to the readjustment provisions.

6.4. Just as importantly, the broad range of powers delegated to the Board by Section 104 of PROMESA, 48 U.S.C. § 2124, and elsewhere in the statute do not even remotely suggest an ability to exclude a budgetary item or a controversy from the rigors of the statute's budget oversight scheme.

6.5. Plaintiff is entitled to a finding that the FOMB is without authority to suspend the application of PROMESA as it pertains to readjusting the 2020-2021 budget.

## VII. THIRD CAUSE OF ACTION (Section 402)

7.1. The People of Puerto Rico are undoubtedly entitled to decide their fate as a Nation and their future relationship to the United States of America.

7.2. Congress prudently provided that "[n]othing in this Act **shall be interpreted** to restrict Puerto Rico's right to determine its future political status, including by conducting the plebiscite as authorized by Public Law 113-76". 48 U.S.C. 2192 (emphasis added).

7.3. Simply put, what the statute says is that the creation of a debt-restructuring statutory scheme -undemocratic as it is- cannot be used to justify, in the name of austerity or prudence, the restriction of the Commonwealth's ability to conduct proceedings -such as plebiscites- to resolve its political status.

14

7.4. The statute plainly does not contain or remotely suggest any deviations from PROMESA or any exemptions to its applicability but rather its **plain language** is deliberately limited to adopt a rule of statutory construction. See Lamier v. U.S. Trustee, 540 U.S. 526, 534 (2004) (a statute's plain language is the starting point and often decisive factor in statutory construction).

7.5. Law 167-2020 does not call for any proceeding to define Puerto Rico's political status and, most importantly, does not contain any provisions that were validated by a majority vote on the 2020 Plebiscite, as it is a post-election enactment based exclusively on partisan policies.

7.6. The fact that statehood was favored in the last plebiscite does not mean that subsequent appropriations can be imposed under Section 402 to create **additional costly bureaucracy** (i.e., the faux Congressional delegation) because a sector of Puerto Rico's political community believes that such additional expense would somehow/some way further the result of that election.

7.7. The above is specially true where the 2020 Plebiscite's enabling act contained (at Article 4.3 thereof) its own mechanism for enforcing the result of the election.

7.8. Law 167-2020 failed to comply with Section 204(a) at the time of its enactment and thus inappropriately inserted an electoral event into the 2020-2021 fiscal year that was not contemplated in its budget and later failed to remedy the situation through lawful Section 204(c) means.

15

7.9. Section 402 of PROMESA does not exempt Law 167-2020 from having to comply with PROMESA.

7.10. The holding of an election to select six new public officials of the Commonwealth is not the type of proceeding that, from an objective point of view could, if not held "restrict Puerto Rico's right to determine its future political status" and thus bring it within the purview of Section 402.

7.11. Even if Section 402 applied, it only constrains the way in which PROMESA is interpreted not which of its provisions apply or how it is supposed to work.

7.12. Plaintiff is entitled to a declaration that Section 402 does not apply to the Law 167-2020 controversy and, if it does, it does not justify exempting a budgetary readjustment proceeding from the rigors of Section 204(c) of PROMESA.

## VIII. FOURTH CAUSE OF ACTION (Injunctive Relief)

8.1. As previously stated, the process to assess the propriety of readjusting the 2020-2021 budget to fund the May 16, 2021 special election went off the rails rather quickly with Governor Pierluisi quickly ordering the unilateral appropriation of funds within 48 hours after the Board announced that it was withdrawing from the process and somehow "excepting" the matter from the rigors of PROMESA.

8.2. The ensuing result is that the budget that was approved under PROMESA for fiscal year 2020-2021 has been amended without complying with the

mandatory proceeding provided in said statute which renders said amended an ineffectual nullity.

8.3. Notwithstanding the above, the Secretary of the Puerto Rico Treasury Department has began releasing the improperly approved funds and the President of the State Elections Commission has begun to illegally spend those monies, an illegal action that must be preliminarily and permanently enjoined by this Honorable Court.

**WHEREFORE** it is very respectfully requested from this Honorable Court that the relief sought herein be hereby **GRANTED**.

In San Juan, Puerto Rico this 20th day of April, 2021.

**RESPECTFULLY SUBMITTED,**

**M.L. & R.E. LAW FIRM**
Cobian's Plaza, Suite 404
1607 Ponce De León Ave.
San Juan, Puerto Rico 00909
Tel (787) 999-2972
Fax (787) 751-2221

*S/Jorge Martínez-Luciano*
**JORGE MARTÍNEZ-LUCIANO**
USDC-PR Number 216312
e-mail: jorge@mlrelaw.com

*S/Emil Rodríguez-Escudero*
**EMIL RODRÍGUEZ-ESCUDERO**
USDC-PR Number 224312
e-mail: emil@mlrelaw.com

## VERIFICATION

I, **RAFAEL HERNÁNDEZ-MONTAÑEZ**, of legal age, married, Speaker of the Puerto Rico House of Representatives and resident of Dorado, Puerto Rico, under pains and penalties of perjury (28 U.S.C. § 1746) do hereby **STATE**:

1. My name and personal circumstances are as above stated.

2. I have carefully read the pleadings asserted in this actions and find that they are true, to the best of my knowledge.

3. I have authorized the filing of the instant legal writ.

In testimony thereof, I hereby sign the forgoing this 20th day of April, 2021 in San Juan, Puerto Rico.

**RAFAEL HERNÁNDEZ-MONTAÑEZ**