**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------------------ x
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
     as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO, *et al*., : (Jointly Administered)
:
Debtors.[1] :
------------------------------------------------------------------------ x

**REPLY IN SUPPORT OF URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO SCHEDULE HEARING ON RENEWED MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3013 FOR ENTRY OF ORDER RECLASSIFYING CLASS 48A AND CLASS 55 CLAIMS UNDER OVERSIGHT BOARD'S PLAN OF ADJUSTMENT DATED MARCH 8, 2021**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5233 (LTS)) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

                                                                                                                                   **Page**

PRELIMINARY STATEMENT ........................................................................................ 1

REPLY ................................................................................................................................ 2

I.    RENEWED RULE 3013 MOTION IS RIPE, PRESENTS PURELY LEGAL ISSUES, AND IS NOT A DISGUISED CONFIRMATION OR UNFAIR DISCRIMINATION ARGUMENT .............................................................................. 3

II.   RENEWED RULE 3013 SHOULD BE HEARD PRIOR TO OBJECTION DEADLINE ON SECOND AMENDED DISCLOSURE STATEMENT ......................... 6

III.  WHETHER RULE 3013 IS AVAILABLE TO ALL PARTIES IN INTEREST, NOT MERELY THE OVERSIGHT BOARD, HAS NO BEARING ON INSTANT SCHEDULING MOTION .................................................................................. 8

IV.  COMMITTEE WAS NOT REQUIRED TO ADDRESS POTENTIAL, UNBRIEFED, OBJECTIONS IN ITS MOVING PAPERS .............................................. 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Franklin High Yield Tax-Free Income Fund v. City of Stockton (In re City of Stockton)*,
    542 B.R. 261 (9th Cir. B.A.P. 2015)..................................................................................4

*In re Hardeman Cty. Hosp. Dist.*,
    540 B.R. 229 (Bankr. N.D. Tex. 2015)..............................................................................8

*Nationwide Mut. Ins. Co. v. Optel, Inc. (In re Optel, Inc.)*,
    60 Fed.Appx. 390 (3d Cir.2003)......................................................................................10

**Statutes**

11 U.S.C. § 1123(a)(1)......................................................................................................3

11 U.S.C. § 1123(a)(4)......................................................................................................4

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee"),[2] respectfully files this reply (the "Reply") in support of the *Urgent Motion of Official Committee of Unsecured Creditors to Schedule Hearing on Renewed Motion of Official Committee of Unsecured Creditors Pursuant to Federal Rule of Bankruptcy Procedure 3013 for Entry of an Order Reclassifying Class 48A and Class 55 Claims Under Oversight Board's Plan of Adjustment Dated March 8, 2021* [Docket No. 16397] (the "Scheduling Motion")[3] and in response to the objections to the Scheduling Motion filed by the (i) Oversight Board [Docket No. 16483] (the "Oversight Board Objection") and (ii) Official Committee of Retired Employees of the Commonwealth of Puerto Rico [Docket No. 16486] (the "Retiree Objection" and, together with the Oversight Board Objection, the "Objections"). In support of this Reply, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Absent from the Objections is any claim that any party is prejudiced by the relief requested in the Scheduling Motion. This is not surprising, as the Scheduling Motion expressly does **not** seek to shorten notice of the requested hearing or the related objection deadline. Unable to assert any prejudice resulting from the limited relief the Committee seeks,[4] the Objectors instead rehash old arguments that, among other things, improperly focus on the merits

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Scheduling Motion or the Renewed Rule 3013 Motion (as defined in the Scheduling Motion), as applicable.

[4] The Retiree Objection asserts that the Committee is requesting to have the Renewed Rule 3013 Motion heard "through unnecessarily expedited motion practice," and mischaracterizes the Scheduling Motion as claiming that the Committee "is entitled to expedite relief." Retiree Obj. ¶¶ 9, 16. These assertions are simply inaccurate, as the Committee has not requested to shorten any statutory notice period or any of the briefing timing requirements set out by this Court in its case management orders.

of the Renewed Rule 3013 Motion and simultaneously argue that the Committee is not now, and possibly never is, entitled to a hearing on those merits.

2.  The Objectors' arguments are the same flawed contentions they made in connection with the Original Rule 3013 Motion. The Objectors repeat their assertions that only the Oversight Board may move under Bankruptcy Rule 3013; continue to rely on irrelevant case law from other circuits with more permissive classification rules; mischaracterize the Renewed Rule 3013 Motion as a confirmation or unfair discrimination objection; and cast aspersions on the Committee's motivations, as if seeking a better recovery for its constituents—which is the Committee's fiduciary obligation—is somehow improper.

3.  These arguments have no bearing on the Scheduling Motion, which is no more than the Committee's statement of its continued belief that the issues raised in the Renewed Rule 3013 Motion are best addressed prior to the deadline to object to the Second Amended Disclosure Statement and, in any event, certainly no later than a disclosure statement hearing. This request is directly responsive to the Court's directive in the Meet and Confer Order that the parties determine whether the issues raised in the Renewed Rule 3013 Motion should be "addressed separately from, and in advance of, the disclosure statement hearing."[5]

## REPLY

4.  Both of the Objections (i) repeat their earlier arguments that the Renewed Rule 3013 Motion is a disguised unfair discrimination challenge that should be heard at confirmation and (ii) argue that the requested separate hearing on the Renewed Rule 3013 Motion would not

---

[5] *See, e.g.*, Scheduling Mot. ¶ 6 (quoting Meet and Confer Order). As it acknowledges in its objection, the Oversight Board was unwilling to resolve this consensually, as its position continues to be that—regardless of the Meet and Confer Order and the Court's related statements at the April 22 Hearing—these issues should be resolved at confirmation. As such, the question asked in the Meet and Confer Order could, unfortunately, be answered only by the Court, necessitating both the Renewed Rule 3013 Motion and the instant Scheduling Motion.

2

create any efficiencies. The Oversight Board also argues that the Committee was obligated to respond to the arguments it previewed, but has never briefed, at the April 22 Hearing and renews its argument that Bankruptcy Rule 3013 is available only to itself.

5. Each of these arguments is wrong, has no bearing on the Scheduling Motion, ignores the Court's statements at the April 22 Hearing, or all three.

I. **Renewed Rule 3013 Motion Is Ripe, Presents Purely Legal Issues, and Is not a Disguised Confirmation or Unfair Discrimination Objection**

6. As explained in the Committee's reply in support of the Original Rule 3013 Motion (the "Original Reply"), all circuits recognize some limitations on a plan proponent's ability to separately classify "substantially similar" claims.[6] The Committee's position in the Renewed Rule 3013 Motion is simply that, in the First Circuit, claims that are "substantially similar" *must* be classified together, and *only* claims of different priority under the Bankruptcy Code may be separately classified. Whether the Committee is correct about this—*i.e.*, that the First Circuit has rejected separate classification of similar claims based on factual, economic, or even "governmental," justifications—is a pure issue of law that can be resolved without any discovery and without the need for expert testimony or an evidentiary hearing.

7. This narrow legal issue is entirely distinct from unfair discrimination, which examines the extent of and purported need for discriminatory treatment among claims of similar priority. The factual and evidentiary issues implicated by unfair discrimination concerns are relevant only if the underlying separate classification is, as a predicate matter, legally possible. This is because the Bankruptcy Code requires a plan to "provide the same treatment for each

---

[6] Moreover, compliance with section 1122 of the Bankruptcy Code is a confirmation requirement even for plans accepted by all classes. Section 1129(a)(1) provides that a plan must comply with the applicable provisions of the Bankruptcy Code, and section 1123(a)(1) requires that a plan "designate, *subject to section 1122* of this title, classes of claims" (emphasis added). 11 U.S.C. § 1123(a)(1).

3

claim or interest of a particular class." 11 U.S.C. § 1123(a)(4). Therefore, the only way a plan can treat claims differently is if it first places those claims in separate classes.

8. Moreover, and unlike unfair discrimination arguments, issues of proper classification can be raised even if all classes vote to confirm the plan. *See, e.g.*, *Franklin High Yield Tax-Free Income Fund v. City of Stockton (In re City of Stockton)*, 542 B.R. 261, 280-83 (9th Cir. B.A.P. 2015) (addressing classification arguments raised by dissenting creditor while noting that cramdown analysis is not required when "Franklin is merely a dissenting creditor in the accepting class of general unsecured creditors" and, therefore, declining to consider Franklin's unfair discrimination argument). Accordingly, and notwithstanding the Objections' claims to the contrary, issues of classification—including the purely legal issues raised in the Renewed Rule 3013 Motion—will not be mooted even if section 1129(a)(8) is satisfied.[7] For all of these reasons, and as the Committee has explained now in the Original Rule 3013 Motion, the Renewed Rule 3013 Motion, the Original Reply, and in the Scheduling Motion, the narrow and purely legal issues raised in the Renewed Rule 3013 Motion could and should be addressed no later than a disclosure statement hearing.

9. Indeed, this was, quite clearly, the Court's intention as expressed at the April 22 Hearing and in its related Meet and Confer Order.[8] At that hearing, the Court stated that:

> I remain persuaded that taking these issues up again in conjunction and in coordination with a schedule that is leading into a determination on the disclosure statement and that is part of a continuum toward confirmation is appropriate, and more appropriate than taking them up now.
>
> I have heard the remarks and concerns today about the potential for determinations on these issues that have been characterized and cued

---

[7] Unless the Oversight Board believes that every single creditor entitled to vote will vote in favor of its proposed plan.

[8] A copy of the April 22 Hearing transcript is attached as **Exhibit A** hereto.

4

up for the most part as classification issues, being potentially a lengthy and complicated trial turning on factual determinations as to the justification for various classifications.

> ***My intention is to take up, at the disclosure statement stage, the classification arguments, or the arguments that have been made here that—I will use the word structural arguments that, as a matter of law, this can't be done, no matter how good, sincere, and economically rational the justification offered for a particular classification is.***[9]

10. The Court recognized that the Committee's argument is that "You can't classify separately unsecured creditors and retirees who are being treated separately. You simply cannot do that in the First Circuit, and therefore, there's no point in soliciting votes on a plan that would propose to do that."[10] Therefore, and further elaborating on the demarcation of the purely legal issues raised by the Original Rule 3013 Motion (and, now, by the Renewed Rule 3013 Motion), the Court explained that:

> I wish to focus on issues of law like that, and have -- if that argument is not one that the Court finds persuasive, my expectation is to -- so if I don't find persuasive that there is no room in this particular landscape for a structure such as the one that is proposed here, I would anticipate leaving for confirmation the question of whether, if the structure is -- is feasible as a matter of law, is acceptable as a matter of law, assuming that the factual case is made for each of these different classes and buckets, those factual determinations would be part of the confirmation process as opposed to the disclosure statement process.[11]

11. In light of these comments, it is hard to understand the Oversight Board's and the Retiree Committee's continued insistence that the Renewed Rule 3013 Motion presents factual issues that are really confirmation or unfair discrimination objections that should be resolved at confirmation.

---

[9] April 22 Hr'g Tr. at 39:1-17 (emphasis added).
[10] *Id.* 40:1-5.
[11] *Id.* 40:6-16.

5

12. The Oversight Board, for its part, relies on this Court's statements at the March 4, 2020 hearing that the Court would determine at the (then-future) April 2020 hearing when the Original Rule 3013 Motion should be decided. The Oversight Board ignores, however, the decision actually reached at the April 22 hearing: that the issues raised in the Original Rule 3013 Motion should be heard at the disclosure statement hearing, if not earlier.

## II. Renewed Rule 3013 Should Be Heard Prior to Objection Deadline on Second Amended Disclosure Statement

13. The Oversight Board's assertion that the Committee has "already expressed agreement" that "there is no need to have a special hearing on the Renewed Rule 3013 Motion"[12] misrepresents the Committee's prior statements and positions, which are entirely consistent with the relief requested in the Scheduling Motion. It is true that the Committee has explained that it is willing to have the issues raised in the Renewed Rule 3013 Motion heard at the same time as the disclosure statement. However, the Committee has also always taken the position that the issues raised in the Renewed Rule 3013 Motion are best determined *prior* to a disclosure statement hearing. This remains true today.

14. The Objectors claim that resolving the Renewed Rule 3013 Motion prior to the objection deadline for the Second Amended Disclosure Statement will not reduce the time and expense of preparing such objections because the Committee has requested a hearing date too close to the Oversight Board's proposed objection deadline to create any efficiencies. However, these objections have been mooted by the Oversight Board's most recent proposed schedule, which seeks to push back the objection deadline an additional week, to May 21, 2021.[13]

---

[12] Oversight Board Obj. ¶ 24.
[13] *See* Docket No. 16507 (Oversight Board's Reply in Support of Discl. Statement Scheduling Mot.). Nor is there any guarantee that the new proposed objection deadline will be approved, as even that deadline provides, at most, only 23 days' notice (as opposed to the 28 days required by the Bankruptcy Rules), and possibly less, depending on when the Oversight Board files its next amended plan and disclosure statement. *See id.* at ¶ 2, n. 4.

6

Moreover, while the Committee has not objected to the Oversight Board's requested June 16 hearing date for the disclosure statement, numerous other parties have.

15. Even if the Court does approve the Oversight Board's proposed disclosure statement schedule, the parties will likely continue analyzing the Second Amended Disclosure Statement until the day of the hearing, including by reviewing what is sure to be a copious amount of documents produced by the Oversight Board either shortly before or even after the proposed objection deadline.

16. Nor will addressing the Renewed Rule 3013 Motion at the requested separate hearing open the proverbial floodgates. The motion raises a single, narrow issue that will require minimal additional effort to resolve: whether the separate classification of CW General Unsecured Claims and Retiree Claims is permissible under First Circuit law. The Committee has not asked the Court to opine on the classification of any other claims.[14] And, to the extent that a ruling granting the Renewed Rule 3013 Motion means that other classifications embedded in the Second Amended Plan are revealed to be equally impermissible even without resolving any factual issues, it would benefit all parties to know that.

17. Finally, the Retiree Committee takes aim at the Committee's "purported concern" that these issues be resolved in an efficient matter, complaining that the Committee should have filed the Renewed Rule 3013Motion no later than March 11, 2021—which was three days after the Oversight Board filed the Second Amended Disclosure Statement and the date that the

---

[14] Contrary to the Retiree Committee's assertions, the Committee does not have a "singular focus on retirees, as opposed to the bonds and other unsecured creditor classes." Retiree Obj., at 5 n.2. To the contrary, the Renewed Rule 3013 Motion specifically notes that the classification of the GO Bonds (and other unsecured classes) may be suspect. *See, e.g.*, Renewed R. 3013 Mot. ¶ 29, n.22. Nonetheless, the Committee has purposefully not challenged the classification of the GO bonds ***in the Renewed Rule 3013 Motion*** because— and unlike the retirees—holders of GO bonds have asserted that they have both secured and priority claims. If true, these claims may possibly be separately classified even under *Granada Wines*. Determining the proper classification of the GO bonds would, therefore, require the Court to address threshold issues that are not implicated by the Retiree Claims, and would change the Renewed Rule 3013 Motion from one that addresses only certain, very narrow and purely legal, issues.

7

Oversight Board advised the Committee that it believed these issues should be addressed at confirmation.[15]

18. What the Retiree Committee ignores is that the Committee's filing of the Renewed Rule 3013 Motion (and, certainly, the Scheduling Motion to which the Retiree Committee is actually objecting) was compelled, not by the filing of the Second Amended Disclosure Statement, but by the Oversight Board's filing of the Disclosure Statement Scheduling Motion on April 6, 2021.[16] Only then did it become impossible for the Committee (absent the Scheduling Motion) to have the Renewed Rule 3013 heard prior to the Oversight Board's proposed June 16, 2021 disclosure statement hearing, as that date was the next available omnibus hearing date.

### III. Whether Rule 3013 Is Available to All Parties In Interest, Not Merely the Oversight Board, Has No Bearing on Instant Scheduling Motion

19. Repeating its objection to the Original Rule 3013 Motion, the Oversight Board argues that only the Oversight Board can file a motion under Bankruptcy Rule 3013. The Committee has already responded to the substance of this argument in the Original Reply, and incorporates those arguments here.[17] More importantly, this is a substantive response to the Renewed Rule 3013 Motion itself, to be determined by this Court in the context of that motion. It has no bearing on the Scheduling Motion (to which the Oversight Board is purportedly objecting).

---

[15] *See* Retiree Obj. ¶ 19.

[16] As noted, the Oversight Board filed the Disclosure Statement Scheduling Motion without any advance notice to the Committee, which the Committee believes was inconsistent with the requirement (and certainly the spirit) of the Meet and Confer Order.

[17] The Committee does note that while the Oversight Board accuses the Committee of failing to cite any chapter 9 case "purporting to allow any party-in-interest to seek classification determinations," Oversight Bd. Obj. ¶ 18, the Oversight Board ignores the holding of *In re Hardeman Cty. Hosp. Dist.*, 540 B.R. 229, 234 (Bankr. N.D. Tex. 2015), that "application of §1122 in chapter 9 cases should be essentially the same as in chapter 11 cases."

8

20. The Oversight Board also claims that, because it has already proposed a plan, the Court should refrain from "put[ting] itself in the mix," arguing that if there are two or more potentially permissible classification structures, "what is the Court supposed to do? Should the Court identify all possible permutations of confirmable classification?"[18]

21. This borders on the inane. The Committee has presented a single and simple question that is ripe and important: is the classification structure actually proposed permissible? No one has asked the Court to consider and identify "all possible permutations," or to supplant the Oversight Board as plan proponent.[19] This does not change, however, that (i) only the Court can resolve the issues raised in the Renewed Rule 3013 Motion, (ii) the Court will have to do so at some point, and (iii) now is the most logical and efficient time to do so.

IV. **Committee Was Not Required to Address Potential, Unbriefed, Objections in Its Moving Papers**

22. The Renewed Rule 3013 Motion is the Committee's opening brief, and it more than adequately sets out the Committee's positions that (i) the First Circuit requires joint classification of all substantially similar claims and rejects classification based on economic, business, practical, or governmental justifications or rationales, (ii) the First Circuit permits separate classification only for claims that are different in legal character, (iii) in this context, a difference in legal character requires a difference in rank concerning rights against the debtor or

---

[18] Oversight Bd. Obj. ¶ 17.

[19] The Oversight Board argues that Rule 3013 is unique to itself because only it can propose a plan, and it claims that resolution of the Renewed Rule 3013 Motion would result in the Court supplanting the Oversight Board's role by identifying all possible permissible classifications, thereby acting as the plan proponent. Under this argument, no bankruptcy court would ever be able to rule on a Rule 3013 Motion, as even in chapter 11—where a debtor does not maintain eternal exclusivity—there is no circumstance in which the court itself can propose a plan.

9

its property, and (iv) based on these criteria, the retiree claims are not of a different legal nature than other general unsecured claims.[20]

23. Presumably, the Objectors intend to argue that the proposed difference in treatment in which certain claims receive a stream of payments while others a lump sum is, in and of itself, a legal difference in the claims themselves. Whatever the merits of this "timing of payments argument," it is a substantive response to the Committee's arguments (presumably, to point (iv) above).[21] The Objectors will have the opportunity to brief and argue this point on whatever briefing schedule the Court approves.

24. However, the Committee strongly disputes the notion that its moving papers are somehow deficient because the Committee did not brief its response to this "timing of payments argument." Indeed, the Objectors cite no authority in support of this proposition, and such a requirement would prejudice the Committee, as it would be forced to respond to an argument

---

[20] The Retiree Committee accuses the Committee of ignoring an analysis of the legal character of retiree claims as compared to general unsecured claims. *See* Retiree Obj. ¶ 12. Whatever the relevance of this assertion to the Scheduling Motion, it is demonstrably untrue. As with the Original Rule 3013 Motion (and the Original Reply) before it, the Renewed Rule 3013 Motion makes clear the Committee's position on this matter. *See, e.g.*, Renewed R. 3013 Mot. ¶¶ 35-38.

[21] The Committee will respond to all merit-based arguments in due time and in the proper procedural context, on whatever briefing schedule the Court puts in place. That being said, the assertion that claims for a stream of payments are legally distinct from claims for a lump sum is flawed. For one, it "is a basic tenant of the Bankruptcy Code that bankruptcy operates as the acceleration of the principal amount of all claims against the debtor." *Nationwide Mut. Ins. Co. v. Optel, Inc. (In re Optel, Inc.)*, 60 Fed.Appx. 390, 394 (3d Cir.2003) (quotation marks and citations omitted). The Oversight Board's proposal to pay retiree claims monthly amounts is, therefore, its proposed ***treatment*** of the retiree claims. It is not a feature of the claims themselves, and to claim otherwise is to argue that a claim's legal nature for classification purposes is determined by its proposed treatment under a plan. Indeed, if a prepetition entitlement to a stream of payments creates a claim that, for purposes of the Bankruptcy Code, is of a different legal nature than a prepetition entitlement to a lump sum payment, there would be no need for courts to grapple with questions arising from the separate (or joint) classification of trade claims and deficiency claims—yet such cases are legion. Finally, the Committee reserves all rights regarding the factual underpinnings of the Oversight Board's purported demarcation between general unsecured claims and retiree claims, including, for example, whether the general unsecured claims asserted in these cases and classified in Class 55 include claims based on prepetition contracts for a stream of payments over time (or, for that matter, whether any retiree claims are based on a prepetition entitlement to a lump sum payment).

10

that has not even been briefed.[22] As such, the Committee cannot agree to the Oversight Board's proposed briefing schedule,[23] or the implication that the Renewed Rule 3013 Motion is presumptively deficient and the parties cannot proceed with a regular briefing schedule. The Committee, however, does agree with the Oversight Board that (to the extent the Court denies the Scheduling Motion's request for a separate and earlier hearing) the Renewed Rule 3013 Motion should be heard at the June 16, 2021 hearing date.

[*Remainder of page intentionally left blank.*]

---

[22] In its objection, the Oversight Board claims that, at the April 22 Hearing, "the Court asked the Committee to respond [to the "timing of payments" argument] when it renewed its motion." Oversight Bd. Obj. ¶ 2. This is inaccurate. To the contrary, counsel for the Oversight Board first presented this argument at the hearing, noting that it was not in the briefing but that the Oversight Board's "thinking had evolved." April 22 Hr'g Tr. 21:13-20. Addressing these comments, the Court repeated that its intention "not to engage the merits today," and to thank counsel to the extent its remarks "may help with the focus of the reformulation of the parties' arguments" and the way in which they "provided a bit more context of the Oversight Board's thinking that, as you say, was not quite as explicit or as patent in the written submissions." *Id*. 25:15-21. At no time did the Court direct the Committee to address these "remarks" in its renewed motion, let alone do so without the benefit of the Oversight Board actually briefing its position. Finally, had the Oversight Board engaged with the Committee on a litigation schedule as part of the Court directed meet and confer process before filing its Disclosure Statement Scheduling Motion, the parties could have discussed, and hopefully resolved, the issue of when these "remarks" should be actually briefed and litigated.

[23] The Committee notes that the proposed order submitted with the Oversight Board Objection would have the Committee brief the "timing of payments" issue by April 25, 2021, or five days after the filing of the Oversight Board Objection, three days after the filing of this Reply, and, most remarkably, three days ***prior*** to the April 28, 2020 date the Court has set in connection with the Schedule Motion. *See* Docket No. 16408.

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A** to the Scheduling Motion, granting the relief requested therein and granting such other relief as the Court deems just and proper.

Dated: April 22, 2021                     By: /s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

By: /s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
crernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*