# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br>        v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>    Defendants. | Adv. Proc. No. 20-00003-LTS<br><br>PROMESA<br>Title III |

---

[1] The Debtors in these jointly-administered Title III cases, along with each Debtor's respective Title III case number (listed as a bankruptcy case number due to software limitations) and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17- BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00004-LTS <br><br> PROMESA <br> Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00005-LTS <br><br> PROMESA <br> Title III |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY IN SUPPORT OF URGENT CROSS-MOTION FOR STAY RELIEF FOR LEAVE TO FILE LIMITED <u>OBJECTION, OR IN ALTERNATIVE, TO INTERVENE</u>**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 2

ARGUMENT .................................................................................................................................. 3

I. Committee Should Be Permitted to File Proposed Objections .......................................... 3

    A. Committee Has Right to File its Own Claim Objections ....................................... 3

    B. Permitting Proposed Objections Will Not Expand Litigation ............................... 6

    C. Cross-Motion Is Timely and Proper ....................................................................... 7

    D. Cross-Motion Should Be Granted for Same Reasons as Oversight Board's Motion ................................................................................................................... 8

II. At Minimum, Committee Should Be Allowed to Intervene in Specified Counts ............. 8

    A. Permitting Committee to Intervene in Specified Counts Will Not Interfere with Settlement in Principle .................................................................................. 9

    B. Committee's Intervention Request Is Timely ...................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banco Popular de P.R. v. Greenblatt*,
   964 F.2d 1227 (1st Cir. 1992) ...................................................................................................10

*In re C.P. Hall Co.*,
   513 B.R. 540 (Bankr. N.D. Ill. 2014) ..........................................................................................4

*Candelario–Del–Moral v. UBS Financial Services Inc. of P.R. (In re Efron)*,
   746 F.3d 30 (1st Cir. 2014) ........................................................................................................10

*Culbreath v. Dukakis*,
   630 F.2d 15 (1st Cir. 1980) ........................................................................................................10

*In re DVR, LLC*,
   582 B.R. 507 (Bankr. D. Colo. 2018) .........................................................................................4

*In re Futterman*,
   No. 17-12899 (MEW), 2019 WL 2553614 (Bankr. S.D.N.Y. June 20, 2019) ...........................4

*McKersie v. IU Int'l.*,
   120 F.R.D. 60 (N.D. Ill. 1988) ..................................................................................................11

*In re Mechanicsburg Fitness, Inc.*,
   592 B.R. 798 (Bankr. M.D. Pa. 2018) ........................................................................................3

*In re QMect, Inc.*,
   349 B.R. 620 (Bankr. N.D. Cal. 2006) .......................................................................................4

*R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*,
   584 F.3d 1 (1st Cir. 2009) ...............................................................................................10, 11, 12

*In re Weinstein Co. Holdings, LLC*,
   595 B.R. 455 (Bankr. D. Del. 2018) ...........................................................................................4

**Statutes and Rules**

Bankruptcy Code Section 502 .................................................................................................. *passim*

Federal Rule of Civil Procedure 13 .................................................................................................7

Federal Rule of Civil Procedure 24(c) ............................................................................................7

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors (the "Committee")[2] respectfully submits this reply (the "Reply") in support of its *Urgent Cross-Motion for Stay Relief for Leave to File Limited Objection, or in Alternative, to Intervene* [Docket No. 16403] (the "Cross-Motion"), and in opposition to (i) the *Response of the Financial Oversight and Management Board, as Title III Representative of the Commonwealth of Puerto Rico, to Official Committee of Unsecured Creditors' (I) Response to Motion for Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment, and (II) Urgent Cross-Motion for Stay Relief for Leave to File Limited Objection, or in the Alternative, to Intervene* [Docket No. 16504] (the "Oversight Board's Objection"), (ii) the *Objection of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and National Public Finance Guarantee Corporation to Official Committee of Unsecured Creditors' (I) Response to Motion Of Commonwealth of Puerto Rico, by and Through Financial Oversight and Management Board, for Stay Relief Granting Leave to Prosecute Further Motions for Partial Summary Judgment, and (II) Urgent Cross-Motion for Stay Relief for Leave to File Limited Objection, or in the Alternative, to Intervene (ECF NO. 16403)* [Docket No. 16499] (the "PSA Defendants' Objection"), and (iii) *Ambac Assurance Corporation, Financial Guaranty Insurance Company, the Bank of New York Mellon, and U.S. Bank Trust National Association's Opposition to the Official Committee of Unsecured Creditors' Urgent Cross-Motion for Stay Relief for Leave to File Limited Objection, or in the Alternative, to Intervene* [Docket No. 16506] (the "Non-PSA Defendants' Objection"). In support of this Reply, the Committee respectfully states as follows:

---

[2] The Committee is the official committee of unsecured creditors for all Title III Debtors, other than PBA and COFINA.

**PRELIMINARY STATEMENT**

1.      The Committee seeks basic relief to which it is already statutorily entitled: the ability to file objections (the "Proposed Objections") to the Defendants' claims under section 502 of the Bankruptcy Code.  Indeed, the Committee ordinarily would not even need the Court's permission to file the Proposed Objections.  It seeks such relief here because of the current litigation stay, which the Oversight Board is also seeking to lift to continue its own litigation.  Given the Committee's clear statutory rights, and the fact that the Proposed Objections would not expand the scope of the Oversight Board's proposed litigation, it is hard to see why any party would take issue with the Cross-Motion.  Nevertheless, the Oversight Board and the Defendants all raise a host of objections to the Committee's request.  The Court should reject them all.

2.      As an initial matter, the Oversight Board is incorrect to assert that the right to file a claim objection under section 502 of the Bankruptcy Code vests with the Oversight Board alone.  This position is at odds with the plain language of the statute—which allows any "party in interest," including the Committee, to object to claims—and finds no support in the relevant case law.  Moreover, the Committee's claim objection rights under section 502 exist as to *all* the Defendants notwithstanding the fact that some (but not all) of them have entered into a "Settlement in Principle" to resolve their claims.

3.      The Proposed Objections will not, as the objectors assert, materially change the scope of the revenue bond litigation.  The Committee's Proposed Objections will (a) with one exception noted below, be limited to the matters at issue in the counts that will be subject to the Oversight Board's Motions for Partial Summary Judgment, (b) be subject to Section 9 of the Revenue Bonds CMO, so they will not be duplicative of the Motions for Partial Summary

2

Judgment, and (c) be considered on the same schedule as those motions. The objectors' stated concerns of inefficiencies and duplication of effort are thus grossly overstated.

4. Finally, the Cross-Motion is both procedurally proper and timely. Nothing in the Federal Rules of Civil Procedure or the Revenue Bonds CMO provides otherwise. The Committee put the Defendants on notice long ago, when it filed its initial motions to intervene in the adversary proceedings, that it intended to file the Proposed Objections, and then it did so without delay after the Oversight Board filed its motion to lift the stay.

5. Although the Committee believes it has an absolute right to file the Proposed Objections, if the Court denies that request, the Committee requests in the alternative an order permitting it to intervene in certain additional counts in the Revenue Bond Complaints. This intervention request is not, as the Defendants contend, untimely, nor will it permit the Committee to improperly interfere with the Oversight Board's litigation. Indeed, the Oversight Board itself does not object to the Committee's intervention request.

## ARGUMENT

### I. Committee Should Be Permitted to File Proposed Objections

#### A. Committee Has Right to File its Own Claim Objections

6. The Committee, as party in interest in these Title III cases, has a statutory right to object to claims. Section 502(a) of the Bankruptcy Code provides that a claim is "deemed allowed, unless a party in interest [which includes an official committee] . . . objects." 11 U.S.C. § 502(a). This right exists even if the debtor in possession or trustee declines to pursue an objection. *See In re Mechanicsburg Fitness, Inc.*, 592 B.R. 798, 807 (Bankr. M.D. Pa. 2018) ("The language of section 502(a) is clear and unambiguous. It plainly authorizes a party in interest to object to any claim or interest [and] [n]owhere is this right made subject to any other

3

provision of the Code or to the Trustee's refusal to pursue possible objections . . . .").[3] The Oversight Board's contention that it alone has the ability to pursue claim objections is at odds with the plain language of the statute and should be rejected by the Court.

7. The Oversight Board claims that the Committee should not be allowed to file the Proposed Objections because they seek to block the Settlement in Principle with the PSA Defendants. But this is untrue. The Committee seeks to file the Proposed Objections to exercise its statutory rights to seek disallowance of the Defendants' claims, not for any other purpose. In any event, the Oversight Board has not (and cannot) cite to any authority that a party's alleged motivation for a claim objection somehow deprives it of its statutory right to file that objection.

8. The Oversight Board cites to this Court's prior decisions in connection with the settlements of the PREPA, ERS, and GO bonds holding that the Committee does not have an absolute right to be heard on a claim objection pending the Court's approval of a settlement of the underlying claims. But these decisions are inapplicable to the present circumstances because the Oversight Board has not actually settled the Defendants' claims. As of filing of this Reply, no Rule 9019 motion has been filed, the PSA Defendants continue to have the right terminate the settlement, and the PSA Defendants characterize it as a mere "Settlement in Principle." *See* PSA Defendants' Objection ¶¶ 2, 15. Moreover, the Settlement in Principle involves only two of the

---

[3] *See also In re Weinstein Co. Holdings, LLC*, 595 B.R. 455, 463-64 (Bankr. D. Del. 2018) (rejecting argument that section 502 does not grant creditors standing to object to claims of other creditors and is, instead, cause of action belonging to the trustee that other creditors may only bring derivatively); *In re QMect, Inc.*, 349 B.R. 620, 625 (Bankr. N.D. Cal. 2006) (a "creditor or creditors' committee has standing independent of the trustee or debtor-in-possession to object to another creditor's claim"); *In re C.P. Hall Co.*, 513 B.R. 540, 543 (Bankr. N.D. Ill. 2014) ("Section 502 governs the allowance of claims and interests and permits any 'party in interest' to object."). Even courts that have allowed the trustee to settle claim objections brought by other creditors concede that section 502(a) grants those non-settling creditors standing to bring their objections in the first instance. *See In re Futterman*, No. 17-12899 (MEW), 2019 WL 2553614, at *3 (Bankr. S.D.N.Y. June 20, 2019) (non-settling creditor had standing to assert claim objection "because section 502 of the Bankruptcy Code provides that any 'party in interest' in a bankruptcy case has the right to object to a proof of claim"); *In re DVR, LLC*, 582 B.R. 507, 8 (Bankr. D. Colo. 2018) ("In § 502, Congress gave the broadest possible standing to bring a claim objection to any 'party in interest' . . . .").

4

Defendants, which means that litigation in the Revenue Bond Adversary Proceedings will remain outstanding as to the other Defendants even after the Settlement in Principle is finalized.[4]

9. The PSA Defendants cite this Court's prior observation in connection with the GO bonds settlement that barring the Committee from prosecuting the Proposed Objections would "at least keep in abeyance, a scenario in which litigation flourishes and stymies forward movement." PSA Defendants' Objection ¶ 19 (citing Tr. of Sept. 16, 2020 Omnibus Hr'g at 83:11-18). Here, however, the Oversight Board has made clear in its lift stay motion that it believes that litigation against the Defendants will not "stymie[] forward movement," but rather will help move these cases to resolution. *See* Oversight Board's Motion ¶ 18 (explaining that the Non-PSA Defendants' proofs of claim "will need to be resolved either before or as part of the confirmation process for the Amended Commonwealth Plan," and therefor noting that the Oversight Board "believes it must proceed on the dual tracks of negotiation and litigation").

10. The Oversight Board also argues that permitting the Committee to file the Proposed Objections "would not be beneficial" to the Title III cases because the Oversight Board has already sought to disallow the Defendants' claims against the Commonwealth as part of the Revenue Bond Adversary Proceedings. Oversight Board's Objection ¶ 16. Section 502, however, does not limit the Committee's claim objection rights to only those circumstances where the trustee or debtor in possession believes the objection will be "beneficial" to the bankruptcy case. In any event, the Proposed Objections will indeed benefit these Title III cases because the Committee may raise unique arguments for disallowance of the Defendants' claims not covered by the Oversight Board's motions for summary judgment.

---

[4] The Committee refers the Court to its prior briefing on why the Committee has the right to be heard on a claim objection notwithstanding the Oversight Board's proposed settlement of the claims at issue. *See, e.g.*, Docket Nos. 9424, 9287.

11. Indeed, the Committee's participation is particularly important given that the Oversight Board, in response to protests from the GO bondholders, has agreed to withdraw from its request to lift the stay the counts relating to Defendants' purported priority claims. Docket No. 16501 ¶ 4. This is a remarkable concession by the Oversight Board, especially since (i) the Oversight Board previously admitted (in filing its motion on these counts) that the priority issue should be resolve now, prior to confirmation, and (ii) not all bondholders have settled the priority issue with the Commonwealth and, thus, the Oversight Board is catering to the demands of a select group of bondholders to the exclusion of all others. This is exactly the type of situation—where the Oversight Board has tied its hands on a crucial issue that even it believes should be resolved now—in which the Committee's participation is most necessary.

12. Finally, the PSA Defendants claim that the Cross-Motion does not apply to claims asserted in the Revenue Bond Complaints against the PSA Defendants because the Oversight Board may not file Motions for Partial Summary Judgment against them. The Cross-Motion is clear, however, that the relief it seeks applies to all Defendants equally. *See* Proposed Order ¶ 1 ("The Revenue Bonds CMO is amended to permit the Committee to file limited objections (the "Objections") to the Proofs of Claim filed by the ***Defendants***.") (emphasis added). The Cross-Motion is in no way limited to seeking relief as to non-settling Defendants only.

B. <u>Permitting Proposed Objections Will Not Expand Litigation</u>

13. The Non-PSA Defendants' concerns that the filing of the Proposed Objections would lead to the litigation of issues in "dozens of separate silos" (Non-PSA Defendants' Objection ¶ 1) is wholly unfounded. With the exception of the priority dispute (which Oversight Board has suddenly decided to carve out of its motion), the Proposed Objections will be limited to the matters at issue in the counts subject to the Motions for Partial Summary Judgment; they will be litigated on the same schedule as those motions; and they will be subject to the

6

requirements of Section 9 of the Revenue Bonds CMO, which will ensure that they are not duplicative or repetitious of the Motions for Partial Summary Judgment.

14. The fact that the same issues will be raised in multiple adversary proceedings and claim objections does not in and of itself make litigation inefficient or duplicative. As noted in the Cross-Motion, in the ERS litigation, the parties effectively litigated the *ultra vires* and lien scope issues in tandem, even though they were raised and addressed in a mixture of adversary proceedings and claim objections. Cross-Motion ¶ 17. The Committee expects the same result here.[5] And although the Committee will now apparently be the only party addressing the priority dispute, that is a legal issue that should not overcomplicate the litigation.

### C. Cross-Motion Is Timely and Proper

15. The Defendants' arguments that the Cross-Motion should be denied for procedural reasons also fail. The Non-PSA Defendants first claim that the Cross-Motion should be denied because the Committee did not assert "all of its claims when it intervened in" the Revenue Bond Adversary Proceeding, citing Rule 13 of the Federal Rules of Civil Procedure and various cases. Non-PSA Defendants' Objection ¶¶ 22-24. But Rule 13, and all of the Non-PSA-Defendants cases, relate to counterclaims and cross-claims. The Committee is not seeking to assert any counterclaims or cross-claims; nor is it seeking to file its own pleading pursuant to Rule 24(c). Instead, the Committee is asking the Court to lift the litigation stay to permit the Committee to exercise its statutory right to file its own affirmative claim objections under Section 502 of the Bankruptcy Code. Likewise, while the Non-PSA Defendants assert that the Committee is "precluded" from filing, or has "forfeited" its statutory rights to file, claim

---

[5] The fact that the Oversight Board might not file its motions for summary judgment against the PSA Defendants does not mean the Proposed Objection to the PSA Defendants' claims would materially expand the scope of the proposed litigation. This is so because the issues presented by the PSA Defendants' claims are legal issues that are identical to those presented by the Non-PSA Defendants claims.

7

objections (Non-PSA Defendants' Objection ¶ 24), they do not provide any legal support for this assertion, much less any citation to an order of this Court, rule, statute, or case law.

16. The Non-PSA Defendants also argue that the Committee's right to file the Proposed Objections is foreclosed because it was not expressly dealt with in the Revenue Bonds CMO. But the Revenue Bonds CMO does not purport to direct the entirety of the revenue bonds litigation to judgment. Indeed, to a large extent, the preliminary steps established by the Revenue Bonds CMO have run their course. Since March 2020, when the Revenue Bonds CMO was filed, the lift stay motions have been fully briefed, argued, decided, appealed, briefed again, and then decided again. Likewise, the preliminary summary judgment motions have been fully briefed, argued, and are now in supplemental discovery. Indeed, in filing its lift stay motion and seeking to file the Motions for Partial Summary Judgment, the Oversight Board has shown that it agrees that it is time for the next stage of the revenue bond litigation to begin.

### D. Cross-Motion Should Be Granted for Same Reasons as Oversight Board's Motion

17. The Non-PSA Defendants argue that the Cross-Motion should be denied for the same reasons that the Oversight Board's Motion should be denied. Non-PSA Defendants' Objection ¶¶ 14-15. In response to these arguments, the Committee incorporates the Oversight Board's arguments on these same issues.

### II. At Minimum, Committee Should Be Allowed to Intervene in Specified Counts

18. If the Committee is not permitted to file the Proposed Objections, it should at the very least be allowed to intervene in the specified counts of the adversary proceedings in which it has not already intervened and on which the Oversight Board is proposing to move for summary judgment. The First Circuit has made clear that the Committee has a statutory right to intervene in adversary proceedings under the Bankruptcy Code, and no party contests this point.

19. Indeed, the Oversight Board does not object to the Committee's intervention request at all, as long as it is "subject to the current limitations." Oversight Board's Objection ¶ 1. As explained in the Cross-Motion, the Committee does not ask the Court to modify any of the limitations imposed by the March 2, 2020 orders granting the Committee's prior intervention motions (the "<u>Intervention Orders</u>"). *See* Docket No. 37 in Adv. Proc. 20-005; *see also* Cross-Motion ¶ 18 (noting that the Committee "expects that the intervention order would mirror, and contain all the same limitations as, the Court's prior intervention orders in the Revenue Bond Adversary Proceedings"). Accordingly, there is no dispute between the Oversight Board and the Committee as to the Committee's request for intervention.

20. The Defendants, however, object to the intervention request, arguing that it will permit the Committee to improperly interfere with the Settlement in Principle and that the request is untimely. As discussed below, these arguments are without merit.

A. <u>Permitting Committee to Intervene in Specified Counts Will Not Interfere with Settlement in Principle</u>

21. The PSA Defendants claim that the Committee's request for intervention is "just another attempt" to interfere with the Settlement in Principle. PSA Defendants' Objection ¶ 26. This argument, however, cannot be reconciled with the Committee's absolute, statutory right to intervene, subject only to whatever limitations the Court may impose. Moreover, the PSA Defendants' concerns are wholly unfounded. As the PSA Defendants acknowledge, the existing Intervention Orders clearly provide that the Committee, by intervening, "cannot preclude other parties from settling their own disputes," meaning that, although the Committee has the right to be heard in response to a proposed settlement, it has no automatic veto right. *Id.* ¶ 28. The requested additional intervention orders would contain this same language. The PSA Defendants' arguments on this issue are therefore entirely without merit.

9

B.     Committee's Intervention Request Is Timely

22.     The Defendants, citing to factors set forth in *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1 (1st Cir. 2009), argue that the Committee's intervention request is untimely. These factors are "(i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention." *Id*. at 7. Contrary to the Defendants' assertions, each of these factors resoundingly supports the timeliness of the Committee's request.

23.     First, the Committee has acted expediently in protecting its rights. The adversary proceedings were filed on January 16, 2020, and the Committee's initial motion to intervene was filed just a few weeks later, on February 11, 2020. *See* Docket Nos. 1 and 9 in Adv. Proc. 20-005. Judge Dein granted the motions to intervene on March 2, 2020. *See* Docket No. 37 in Adv. Proc. 20-005. Just eight days later, this Court issued the Revenue Bonds CMO staying "[t]he litigation of the Revenue Bond Complaints" indefinitely, subject to certain exceptions. Revenue Bonds CMO ¶ 2. The fact that the Committee did not seek intervention in the specified counts during the last year while the stay was in place cannot possibly be used to argue that the Committee failed to act diligently.

24.     Unsurprisingly, all of the Defendants' cases are distinguishable. In those cases, the party seeking to move to intervene was moving for the first time months or years after they knew or should reasonably have known that their rights were imperiled. *See, e.g.*, *Candelario–Del–Moral v. UBS Financial Services Inc. of P.R. (In re Efron)*, 746 F.3d 30 (1st Cir. 2014); *Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227 (1st Cir. 1992); *Culbreath v. Dukakis*, 630 F.2d 15 (1st Cir. 1980). In contrast, the Committee timely filed its opening motion to intervene

10

weeks after the adversary proceedings were filed, and filed its request to intervene in the specified counts just seven days after the filing of the Oversight Board's Motion.[6]

25. <u>Second</u>, the Defendants will not be prejudiced by allowing the Committee to intervene in the specified counts. The PSA Defendants argue that they entered into negotiations on the assumption that their settlement would resolve the Revenue Bond Adversary Proceedings and all claim objections. PSA Defendants' Objection ¶ 30. But the PSA Defendants knew that the Committee had intervened in the Revenue Bond Adversary Proceedings and that it had reserved its right in its initial motions to intervene to object to their claims on other grounds. *See* Docket No. 9 in Adv. Proc. 20-005 ("The Committee is . . . not seeking to intervene in any count to which an objection could be raised in a claim objection, and the Committee expressly reserves the right to do so in the future."). The PSA Defendants are also aware that the Committee has objected to the claims of the PREPA, GO, and ERS bondholders. That the Committee would similarly object to the revenue bond claims should not be surprising.

26. <u>Third</u>, the Committee would be severely prejudiced if it is not permitted to either file the Proposed Objections or intervene in the specified counts. The Committee has a statutory right to file claim objections under section 502, and the First Circuit has held that the Committee has a statutory right to intervene in adversary proceedings such as this one. If the Committee is not permitted to file a claim objection or to intervene in the specified counts, then it will have been divested of two separate statutory rights, which results in prejudice *per se*. In *R & G Mortg. Corp.*, the First Circuit denied a motion to intervene because it concluded the proposed

---

[6] The Non-PSA Defendants cite to *McKersie v. IU Int'l.*, 120 F.R.D. 60, 62 (N.D. Ill. 1988) to suggest that the Committee is precluded from asking this Court to expand its Intervention Orders to permit the Committee to be heard on the relevant claims. But in that case, the intervenors were trying to amend a complaint that had been filed by the named plaintiffs in a class action. Because the Committee is not asking to file its own complaint, or to amend the Oversight Board's complaint in any way, this case is inapposite.

11

intervenor would not be prejudiced where it "still has an adequate remedy. It may bring a separate action against R&G and/or Freddie Mac for money damages." 584 F.3d at 10. Here, Defendants are seeking to foreclose **all** of the Committee's avenues for seeking disallowance of the Defendants' unsecured claims.

27. Moreover, although it is possible that the Oversight Board will raise some or all of the arguments in its summary judgment motions that the Committee might raise in intervention, that is not known at this time. The only way for the Committee to protect its rights is through intervention (or by filing the Proposed Objections).[7]

28. <u>Fourth</u>, special circumstances exist that support the timeliness of the Committee's intervention. As discussed above, the Committee's request to intervene now, after the announcement of the Settlement in Principle, is not a function of any delay on the Committee's part but instead a result of the Revenue Bonds CMO, which stayed all litigation except as to certain claims. Indeed, if the time the stay has been in place is disregarded in assessing the timeliness of the Committee's intervention request (as it should be), the Committee has made its request less than two months after the filing of the adversary proceedings. The Defendants cannot cite to any case in which a Court has denied intervention under similar circumstances.[8]

---

[7] The Non-PSA Defendants claim that "[n]one of the Committee's 'me too' briefs, on the claims that it has been permitted to join, have added anything of substance to the analysis before the Court." Non-PSA Defendants' Objection ¶ 26. But that is exactly because the Committee has successfully worked with the Oversight Board, in accordance with Section 9 of the Revenue Bonds CMO. The Committee should not be penalized for following the Court's orders and doing as much as possible to ensure that there is no duplication of efforts.

[8] While the PSA Defendants' Objection cites *R & G Mortg. Corp.* for the proposition that "[r]equests for post-settlement intervention are rarely granted," the facts of that case are easily distinguishable. 584 F.3d at 10. In that case, the First Circuit held that the intervenor's only motion to intervene was unreasonably delayed under circumstances where the court had already approved a settlement that disposed of the entire litigation. Here, this Court has already granted the Committee's original motions to intervene, no settlement has been approved, and the proposed settlement applies only to certain defendants in any event. Moreover, in contrast to this case, *R & G Mortg. Corp.* did not involve a litigation stay that prevented the intervenor from filing its motion to intervene at an earlier time, prior to the settlement.

12

WHEREFORE the Committee respectfully requests the Court enter the Proposed Order granting the Cross-Motion and grant the Committee such other relief as is just and proper.

Dated: April 24, 2021

/s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. (*Pro Hac Vice*)
Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
G. Alexander Bongartz, Esq. (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212)318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured Creditors*

– and –

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, Puerto Rico 00919-5075
Telephone: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to Official Committee of Unsecured Creditors*