UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>Debtors.¹ | (Jointly Administered) |

-----------------------------------------------------------------x

**STATUS REPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD IN CONNECTION WITH APRIL 28–29, 2021 OMNIBUS HEARING**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Highways and Transportation Authority ("HTA"), the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Public Buildings Authority ("PBA," and together with the Commonwealth, HTA, ERS, and PREPA, the "Debtors"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as sole Title III representative of the Debtors pursuant to section 315(b) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), respectfully submit this Status Report in connection with

---

¹ The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17-BK-3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the April 28–29, 2021 omnibus hearing and in response to this Court's order, dated April 20, 2021 [ECF No. 16475].

**I.  General Status and Activities of the Oversight Board, Including Measures Taken in Response to the COVID-19 Pandemic**

1.  The Oversight Board and the Government of Puerto Rico (the "<u>Government</u>") continue to collaborate to protect the health and welfare of the people of Puerto Rico from the COVID-19 virus amid the recent increase in COVID-19 cases, while ensuring critical businesses may remain open to provide for the needs of the people of Puerto Rico. As set forth in previous Status Reports, the Oversight Board has already worked closely with the Government to define how to best utilize over $750 million in funding, with a clear focus on responding to and managing the pandemic. The Oversight Board is continuing to work with the Government to utilize effectively federal funding intended to cover expenses related to COVID-19.

2.  On March 11, 2021, the federal government passed the $1.9 trillion American Rescue Plan Act, which will aid the Government, individuals, and businesses in recovering from the impact of COVID-19 in Puerto Rico. The American Rescue Plan Act will provide Puerto Rico, its residents, and its instrumentalities with, among other things, (i) stimulus checks for residents, (ii) federal funding allocated to municipalities, the Commonwealth, and the education sector, (iii) an extension of unemployment benefits through September 2021, and (iv) certain tax incentives for individuals. The Oversight Board estimates that Puerto Rico's benefit from the American Rescue Plan Act is approximately $19.9 billion.

3.  The Oversight Board remains focused on achieving its mandates under PROMESA so that fiscal responsibility, access to capital markets, and economic prosperity and growth can return to Puerto Rico. To those ends, the Oversight Board (a) in consultation with the Governor and AAFAF, developed and drafted several proposed fiscal plans, including the Commonwealth's

fiscal plan, and certified it at a public meeting on April 23, 2021, (b) continued negotiating restructuring plans for the Commonwealth, ERS, and certain instrumentalities in efforts to reach consensus with more creditors, and (c) continued analyzing and discussing with AAFAF proposed laws impacting pensions, healthcare, and other important matters.

II. **General Status of Relations Among the Oversight Board and Commonwealth and Federal Governments**

4. The Oversight Board's relationship with the Government continues to be collaborative and, notwithstanding differences on several issues, the Oversight Board is working closely with new Puerto Rico Governor Pedro Pierluisi and the rest of the Commonwealth administration. The Oversight Board and Government remain in agreement that the health, safety, and economic welfare of the people of Puerto Rico must be the priority. Governor Pierluisi is serving as his own *ex officio* representative on the Oversight Board which affords more opportunity for direct interactions and sharing of viewpoints and insights on important issues.

5. The Oversight Board remains focused on developing and certifying revised fiscal plans and budgets for fiscal year 2022. At a March 26, 2021 public meeting, the Oversight Board addressed structural reforms included in the Commonwealth's fiscal plan, which are crucial to advance long-term fiscal sustainability for Puerto Rico. Among others things, these reforms are designed to (i) increase workforce participation by reducing barriers to employment and providing residents with the knowledge and skills needed to contribute to the economy; (ii) ensure access to education by safely reopening schools following multiple natural disasters and the COVID-19 pandemic, increasing access to technology needed for remote learning during the pandemic, and addressing gaps in education caused by school closures resulting from the earthquakes, hurricanes, and pandemic; (iii) increase investment by accelerating the process for approval of business permits, deregulating freight tariffs to reduce the cost of doing business in Puerto Rico, and

3

promoting Puerto Rico as an investment and tourism destination; (iv) reduce the cost and improve reliability of electricity; and (v) modernize the public transportation infrastructure. In addition, the Commonwealth fiscal plan includes nearly $800 million for comprehensive civil service reform, including a pilot program that will aim to improve workforce capabilities, recruiting and retention of talent, and employee development and training, among other things, to ensure more effective and efficient governance.

6. On April 23, 2021, the Oversight Board certified fiscal plans for the Commonwealth and the Municipal Revenues Collection Center. The fiscal year 2022 budget process will now continue on the basis of the Commonwealth certified fiscal plan. The Oversight Board has also received and reviewed proposed fiscal plans for other instrumentalities, including PREPA, HTA, the University of Puerto Rico, the Puerto Rico Aqueduct and Sewer Authority, the Puerto Rico Industrial Development Company, and Corporation for the Supervision and Insurance of Cooperatives of Puerto Rico, and has requested that certain revisions and additional supporting information be submitted to ensure these fiscal plans are compliant with the requirements of PROMESA. On April 16, 2021, the Oversight Board announced the end of a pilot program that began in May 2019, pursuant to which ten (10) municipalities were required to propose fiscal plans and budgets to the Oversight Board for certification. That requirement is currently suspended, however all municipalities still must take steps to fulfill their obligations under PROMESA and achieve fiscal responsibility, and they may be required to submit fiscal plans and budgets again in the future.

7. In addition, as discussed in previous status reports, the Oversight Board proposed reforms to the Puerto Rico Department of Education's payroll and attendance system, as flaws in this system have caused over $80 million in payroll disbursements to be made to employees who

4

were not working. These reforms have now been fully implemented, but the Oversight Board remains focused on ensuring that employees and supervisors comply with the reforms to ensure Puerto Ricans' tax dollars are used efficiently and honestly, and to ensure fiscal accountability.

**III.     General Status of Work Toward Plans of Adjustment**

8.      On March 8, 2021, the Oversight Board filed the *Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* (as may be amended, supplemented, or modified, the "Plan of Adjustment") [ECF No. 15976], and the *Disclosure Statement for the Second Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, et al.* [ECF No. 15988] (as may be amended, supplemented, or modified, the "Disclosure Statement"), following the Oversight Board's announcement of the terms of a new plan support agreement ("PSA") on February 23, 2021. Since that time, with the assistance of the Court-appointed Mediation team, the Oversight Board has continued to meet with parties in interest, with the goal of attaining further agreements with key stakeholders and reaching a fully consensual Plan of Adjustment. These efforts have paid off, as the Oversight Board has now reached a stipulation with bondholders holding in excess of 70% of the outstanding ERS Bonds, which provides for treatment of their claims and a stay of certain related litigation.

9.      On April 6, 2021, the Oversight Board filed a scheduling motion [ECF No. 16332] (the "Scheduling Motion") requesting, among other things, that the Court schedule a hearing to consider the adequacy of the information contained in the Disclosure Statement on June 16, 2021. The Scheduling Motion will be heard at the April 28–29, 2021 omnibus hearing. The Oversight Board intends to file an amended Plan of Adjustment and Disclosure Statement, along with motions requesting approval of such Disclosure Statement, solicitation procedures, a confirmation schedule, and discovery procedures in connection with the confirmation process. Although the

5

Oversight Board had intended to amend the Plan of Adjustment prior to the omnibus hearing, continuing negotiations have caused it to defer filing the amendment until shortly after the hearing. The Oversight Board will request that a confirmation hearing begin on or about October 18, 2021 pursuant to these motions.

IV. **General Status of ADR and ACR Processes, Anticipated Number of Matters Directed into ADR, and Anticipated Timetable for Initiation of ADR Procedures with Respect to Such Matters**

10. Pursuant to the *Order (A) Authorizing Administrative Resolution of Claims, (B) Approving Additional Form of Notice, and (C) Granting Related Relief* [ECF No. 12274] (the "ACR Order"), the Debtors have filed eleven notices transferring claims into Administrative Claims Reconciliation (as defined in the ACR Order), see *First Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 13603] (the "First ACR Transfer Notice"), *Second Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14182] (the "Second ACR Transfer Notice"), *Third Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 14785] (the "Third ACR Transfer Notice"), *Fourth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15027] (the "Fourth ACR Transfer Notice"), *Fifth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15086] (the "Fifth ACR Transfer Notice"), *Sixth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15116] (the "Sixth ACR Transfer Notice"), *Seventh Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15534] (the "Seventh ACR Transfer Notice"), *Eighth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15721] (the "Eighth ACR Transfer Notice"), *Ninth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 15948] (the "Ninth ACR Transfer Notice"), *Tenth Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16259] (the

"Tenth ACR Transfer Notice"), *Eleventh Notice of Transfer of Claims to Administrative Claims Reconciliation* [ECF No. 16514] (the "Eleventh ACR Transfer Notice", and collectively, the "ACR Transfer Notices"), and have transferred approximately 28,080 claims (collectively, the "ACR Designated Claims"), into Administrative Claims Reconciliation. The ACR Designated Claims will be resolved utilizing the Pension/Retiree Procedures, the Tax Refund Procedures, the Public Employee Procedures, and/or the Grievance Procedures (each as defined in the ACR Order), as set forth in the ACR Transfer Notices.

11. Subsequent thereto, the Debtors have filed notices, see *Notice of Filing of First Administrative Claims Resolution Status Notice* [ECF No. 14515] and accompanying *First Administrative Claims Resolution Status Notice* [ECF No. 14515-1] (the "First ACR Status Notice"), *Notice of Filing of Second Administrative Claims Resolution Status Notice* [ECF No. 15367] and accompanying *Second Administrative Claims Resolution Status Notice* [ECF No. 15367-1] (the "Second ACR Status Notice"), and *Notice of Filing of Third Administrative Claims Resolution Status Notice* [ECF No. 15812] and accompanying *Third Administrative Claims Resolution Status Notice* [ECF No. 15812-1] (the "Third ACR Status Notice"), and *Fourth Administrative Claims Reconciliation Notice* [ECF No. 16322] (the "Fourth ACR Status Notice"), wherein the Debtors reported the successful resolution of over 17,900 ACR Designated Claims. The Debtors' next ACR Status Notice (as defined in the ACR Order) is scheduled to be filed on June 4, 2021, and the Debtors anticipate reporting the successful resolution of hundreds of additional ACR Designated Claims.

12. With respect to certain ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants that the administrative files for their claims are incomplete, and requesting additional information in order to enable the Debtors to reconcile their

7

claims. Certain claimants have provided responses to these mailings, and the Debtors are evaluating the additional information received; the Debtors continue to await responses from additional claimants. With respect to the remaining ACR Designated Claims, mailings have been made, or are in the process of distribution, informing claimants of the initiation of the ACR process and the timetable for the resolution of their ACR-related claims. The Debtors' next ACR Transfer Notice (as defined in the ACR Order) is scheduled to be filed on July 2, 2021. The Debtors anticipate transferring additional claims into Administrative Claims Reconciliation on or before that date.

13. Pursuant to the *Order (A) Authorizing Alternative Dispute Resolution Procedures, (B) Approving Additional Forms of Notice, and (C) Granting Related Relief* [ECF No. 12576] (the "ADR Order"), the Debtors have filed twelve notices transferring claims into the ADR Procedures (as defined in the ADR Order), see *First Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 13609] (the "First ADR Notice"), *Second Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14090] (the "Second ADR Notice"), *Third Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14521] (the "Third ADR Notice"), *Fourth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 14786] (the "Fourth ADR Notice"), *Fifth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15085] (the "Fifth ADR Notice"), *Sixth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15113] (the "Sixth ADR Notice"), the *Seventh Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15217] (the "Seventh ADR Notice"), the *Eighth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15533], the *Ninth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15720], the *Tenth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 15861], the *Amended Eleventh*

*Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16540], and the *Twelfth Notice of Transfer of Claims to Alternative Dispute Resolution* [ECF No. 16517], and have transferred approximately 318 claims into the ADR Procedures.

14. Subsequent thereto, the Debtors have filed notices, see *First Alternative Dispute Resolution Status Notice* [ECF No. 14185] (the "First ADR Status Notice"), *Second Alternative Dispute Resolution Status Notice* [ECF No. 15028-1] (the "Second ADR Status Notice"), *Third Alternative Dispute Resolution Status Notice* [ECF No. 15551-1] (the "Third ADR Status Notice"), *Fourth Alternative Dispute Resolution Status Notice* [ECF No.15958-1] (the "Fourth ADR Status Notice"), indicating one claim is in Evaluative Mediation (as defined in the ADR Order), approximately fifty-seven (57) claims are currently in the Offer-Exchange (as defined in the ADR Order) phase of the ADR Procedures, and approximately nineteen (19) claimants have accepted the Debtors' offers. The Debtors are in the process of documenting the resolution of claims as to which offers have been accepted.

15. Since the filing of the Fourth ADR Status Notice, one claim was resolved via Evaluative Mediation. Further, the Debtors have either sent offers or Information Requests (as defined in the ADR Order) and are awaiting responses, or are in the process of preparing offers or making Information Requests to additional ADR Designated Claimants. In addition, the Debtors are evaluating additional responses received and attempting to engage claimants in the hopes of achieving a consensual resolution of the remaining claims currently in the Offer-Exchange procedures. The Debtors' next ADR Transfer Notice (as defined in the ADR Order) is due May 17, 2021, and the Debtors anticipate transferring additional claims into the ADR Procedures at that time.

9

16. The Debtors' review and analysis of the claims filed to date remains ongoing. At present, the Debtors continue to estimate conservatively that the maximum number of claims that might be transferred into the ADR Procedures is 7,000, while the actual number transferred might be as low as 1,000 claims. At this time, the Debtors cannot predict with certainty the timing for the initiation of ADR Procedures with respect to this population of claims, but anticipate additional accounts payable and litigation-related claims will be transferred into the ADR Procedures in the near term.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: April 27, 2021<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>*/s/ Martin J. Bienenstock*<br>Martin J. Bienenstock (*pro hac vice*)<br>Brian S. Rosen (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>       brosen@proskauer.com<br>       ppossinger@proskauer.com<br>       ebarak@proskauer.com<br><br>-and-<br><br>*/s/ Hermann D. Bauer*<br>Hermann D. Bauer<br>USDC No. 215205<br><br>*/s/ Ubaldo M. Fernández*<br>Ubaldo M. Fernández<br>USDC No. 224807<br>**O'NEILL & BORGES LLC**<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813<br>Tel: (787) 764-8181<br>Fax: (787) 753-8944<br><br>*Attorneys for the Financial Oversight and Management Board as Representative of the Debtor* |