# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>AMBAC ASSURANCE CORPORATION, *et al.*,<br><br>Defendants. | Adv. Proc. No. 20-00003-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801).

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00004-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, <br><br> Plaintiff, <br><br> v. <br><br> AMBAC ASSURANCE CORPORATION, *et al.*, <br><br> Defendants. | Adv. Proc. No. 20-00005-LTS |

### DEFENDANTS' MOTION TO COMPEL PRODUCTION OF WITHHELD DOCUMENTS IN THE REVENUE BOND ADVERSARY PROCEEDINGS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

FACTUAL BACKGROUND...........................................................................2

    I.      DEFENDANTS' DOCUMENT REQUESTS TO THE GOVERNMENT ..................2

          A.     The Government's Objections and Subsequent Meet-And-Confers................3

          B.     Resolution of the Meet-And-Confer Process....................................................5

    II.     DEFENDANTS' SUBPOENAS ON THIRD PARTIES ...........................................6

ARGUMENT ..................................................................................................9

    I.      THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE ANY NON-PRIVILEGED, WITHHELD DOCUMENTS. ..........................................................9

          A.     The Government Agreed Not to Withhold Responsive Documents Collected Based on Scope Objections. ............................................................................9

          B.     The Documents Are Within the Scope of the Rule 56(d) Order....................11

    II.     THE GOVERNMENT SHOULD DISCLOSE INFORMATION CONCERNING ITS COMMUNICATIONS WITH THIRD PARTIES. ..................................................13

         CONCLUSION ..........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank v. Graham*,
  2020 WL 2425732 (M.D. Fla. May 12, 2020) ...................................................................10

*Bucceri v. Cumberland Farms, Inc.*,
  2020 WL 58428 (D. Mass. Jan. 6, 2020) ..........................................................................9

*Caccamise v. Credit One Bank, N.A.*,
  2019 WL 1903219 (S.D. Cal. Apr. 26, 2019) ...................................................................9

*Fischer v. Forrest*,
  2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) .....................................................................9

*Price v. Trans Union, L.L.C.*,
  847 F. Supp. 2d 788 (E.D. Pa. 2012) ...............................................................................14

*Ratliff v. Davis Polk & Wardwell*,
  354 F.3d 165 (2d Cir. 2003) .............................................................................................15

*Robbins & Myers, Inc. v. J.M. Huber Corp.*,
  2011 WL 3359998 (W.D.N.Y. Aug. 3, 2011) ..................................................................14

*Song v. Drenberg*,
  2019 WL 5095744 (N.D. Cal. Oct. 11, 2019) ..................................................................10

**Other Authorities**

Federal Rule of Civil Procedure 34 ..........................................................................*passim*

OXFORD ENGLISH DICTIONARY 3d ed. (2015) ............................................................11

Restatement (Second) of Contracts § 20 (1981) ...........................................................9

**To the Honorable United States Magistrate Judge Judith Gail Dein:**

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7034, 7037, and 9014 and Federal Rules of Civil Procedure 26, 34, and 37, Defendants[2] respectfully submit this motion (the "Motion") requesting entry of an order, in the form of **Exhibit A**, compelling certain disclosures from the Government. Defendants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      Defendants move to enforce the Government's agreement that it would not rely on its written "scope" objections to withhold documents that it collects. At the outset of discovery, the Government interposed a laundry list of scope objections—many boilerplate, others reflecting disputes regarding the interpretation of the Rule 56(d) Order—but later indicated during meet-and-confers that its main objection was to searching beyond e-mails and audit work papers. In discussing specific scope objections, the Government said it would not rely on those objections to withhold responsive documents that it could identify from its central files. Defendants confirmed this understanding in writing and asked the Government to inform them if it planned to withhold any documents. The Government did not so inform Defendants.

2.      Just last week, Defendants learned that—notwithstanding its clear agreement—the Government had withheld (and instructed third parties to withhold) materials based on its scope

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Court's *Order on Defendants' Motion to Compel Document Discovery from the Government in the Revenue Bond Adversary Proceedings* [ECF 16236] (the "Motion to Compel Order"). Unless otherwise indicated, all ECF numbers referenced herein refer to the docket in Case No. 17 BK 3283-LTS. On February 22, 2021, Defendants Assured and National conditionally joined a plan support agreement (the "PSA") "solely in their capacities as insurers, and asserted holders, deemed holders, or subrogees with respect to GO Bonds and PBA Bonds." For the avoidance of doubt, Assured and National do not file this Motion in such capacities. In addition, on April 12, 2021, Assured, National and the Board reached an "Agreement in Principle" to settle the Revenue Bond Adversary Proceedings. Definitive documentation is in the process of being negotiated. If such documentation is completed and the "Agreement in Principle" is implemented, the positions and participation of Assured and National with respect to this motion may be impacted.

objections.  The Government cannot change its mind at this late stage.  The framework the Parties discussed was foundational to the discovery process.  A litigant cannot make one agreement, then secretly change its mind at the last minute to gain a tactical advantage.

3.     Setting aside the Government's agreement, its scope objections were waived because the Government declined to meaningfully meet-and-confer with Defendants about scope once it became clear that there was a dispute.  After an initial call last week, the Government refused to even describe what scope objections it was relying on or what types of documents it was withholding—unilaterally declaring that the Parties were at an impasse.

4.     The only example of a scope objection the Government offered is meritless.  The Government suggested that the portion of the Rule 56(d) Order authorizing Defendants to seek "documents governing" the bonds and flow of funds means Defendants cannot obtain any documents *other than* final, legally operative contracts.  But the word "governing" is not as narrow as the Government suggests—and in any event, Judge Swain authorized Defendants to "propound discovery requests directed to" the "governing documents" (and other topics).  Judge Swain did not merely order the Government to produce "governing documents" and nothing else.

5.     In addition to the foregoing issues, the Government has not directly answered certain questions regarding its communications with subpoenaed third parties.  Numerous courts have held that it is improper for litigants to "advise" third parties on potential objections or to influence third parties not to comply with a subpoena.  The Court and Defendants deserve answers to basic questions about the Government's communications.

## **FACTUAL BACKGROUND**

## I.     **DEFENDANTS' DOCUMENT REQUESTS TO THE GOVERNMENT**

6.     The Rule 56(d) Order authorized Defendants to "propound discovery requests directed to" several topics, including:   (i) "[a]ll documents governing" the relevant bonds,

including "all versions" of the PRIFA Trust Agreement, the CCDA Bond Documents, and the HTA Bond Resolutions; (ii) "documents governing the flow of" funds for each bond, (iii) "[p]olicies and procedures related to the flow of" funds, and (iv) in PRIFA, discovery "relating to the accounting treatment of Rum Tax Remittances" and into "the nature and location of the Infrastructure Fund and the restrictions placed upon moneys therein." (Rule 56(d) Order at 7–11.)

7. Defendants served requests on February 8, 2021, including requests based on the Rule 56(d) topics and subparts with greater specificity.

### A. The Government's Objections and Subsequent Meet-And-Confers

8. The Government objected to the requests on February 22, 2021. Among dozens of objections, the Government made two contradictory objections concerning requests for documents "governing" the bonds: On the one hand, the Government objected to any requests for documents "governing" the bonds "on the ground that the word 'governing' is undefined and requires the Government Entities to draw legal conclusions or make legal determinations." (*See, e.g.*, Ex. B, PRIFA R&Os at 14; Ex. C, CCDA R&Os at 15; Ex. D, HTA R&Os at 12.) On the other hand, the Government *also* objected to requests using any language *other than* "governing"—arguing, for example, that a request for documents "concerning" the bonds, "rather than documents *governing* the" bonds, exceeded the scope of permissible discovery. (*See, e.g.*, Ex. B, PRIFA R&Os at 15; Ex. D, HTA R&Os at 12.) This created a kind of Catch-22: According to the Government, Defendants could ask only for "governing" documents—but Defendants also could not ask for those, because it would require the Government to make a legal determination.

9. The Government further asserted that a request for "[a]ll documents governing the PRIFA Bonds"—the exact language Judge Swain used in the Rule 56(d) Order—referred to only a single document, the Trust Agreement, which had already been produced and addressed at length in briefing. (Ex. B, PRIFA R&Os at 14.) The Government construed corresponding language in

the CCDA and HTA cases as similarly limited to four and two documents, respectively, all previously produced.  (Ex. C, CCDA R&Os at 12; Ex. D, HTA R&Os at 12.)

10.     When the parties met-and-conferred on February 23, 2021, the Government did not directly defend its written objections (which Defendants noted their disagreement with).  Instead, the Government pivoted to make the point that it intended to search for documents relevant to the topics listed in the Rule 56(d) Order—but would narrowly confine the search to central files, excluding e-mails or audit work papers.

11.     On February 28, 2021, Defendants sent the Government a letter addressing specific "scope" objections that the Government had made.  Defendants also noted concerns that the Government's written objections did not comply with Federal Rule of Civil Procedure 34(b)(2)(C) because the Government did not "state whether any responsive materials are being withheld on the basis of [its] objections."  (Ex. E, Ltr. from John J. Hughes, III to Michael A. Firestein, *et al.* (Feb. 28, 2021) at 2 (quoting Fed. R. Civ. Pro. 34(b)(2)(C).)  Defendants asked the Government to make clear on which bases the Government planned to withhold documents.

12.     During the parties' March 1, 2021, meet-and-confer, the Government again explained that it intended to draw a line in the sand around searching audit workpapers and e-mails.  But the Government indicated it would search central files for documents responsive to the Rule 56(d) Order topics.  To make the discussion more concrete, Defendants asked about specific examples.  For example, Defendants asked if the Government would withhold a memorandum (if one were discovered) that related to whether excise taxes need to be placed in fund 278.  The Government said it would produce any such document if found (even though its written objections suggested otherwise).  Similarly, when asked if it would withhold responsive hard copy emails that it located, the Government said it would not.  The Government also stated that it would

produce any documents it located predating 2014—even though it might not specifically search for those, and the Government had objected to producing any documents prior to 2014.  The Government stated multiple times that it would not be "technical" in its collection efforts, but that e-mails searches and audit papers was where it was "drawing the line."

13.     On March 4, 2021, the Government responded to Defendants regarding specific "scope" issues in writing—but noted that the back-and-forth presented merely "academic disputes."  (Ex. F, Ltr. from Elizabeth L. McKeen & Michael A. Firestein to Robert S. Berezin, *et al.* at 2 (Mar. 4, 2021).)  The Government said the real issue was "the scope of the Governments' [*sic*] search," not "debates regarding the proper definition[s]" of certain terms.  (*Id*. at 2.)

### B.     Resolution of the Meet-And-Confer Process

14.     Defendants then sought to confirm in writing Defendants' understanding, based on the March 1 meet-and-confer and the Government's March 4 letter, that the Government did not plan to "withhold any documents it collects if those documents are responsive to Defendants' [document] requests as written," and that the Government's objections relate only "to the scope of the search the Government will undertake in collecting documents in the first place."  (Ex. G, Ltr. from John J. Hughes, III to Michael A. Firestein, *et al.* (Mar. 9, 2021) at 1-2.)   Citing Rule 34(b)(2)(C), Defendants asked the Government to "inform Defendants as soon as possible" if "the Government is seeking to withhold any documents that are responsive to Defendants' requests" that might be found in the central files that the Government was searching.  (*Id*. at 2.)

15.     The Government did not so inform Defendants.  Instead, it closed out the meet-and-confer process in a short follow-up letter that noted it believed its objections complied with Rule 34(b)(2)(C) but that "the parties do not have a specific pending dispute on the scope of the search or production agreement apart from the pending motion to compel."  (Ex. H, Ltr. from Elizabeth L. McKeen & Michael A. Firestein to Robert S. Berezin, *et al.* (Mar. 16, 2021) at 1.)

16.     Given that Defendants had specifically requested that the Government advise if it was planning to withhold any documents, and that it did not do so, Defendants understood the Government's March 16 letter as confirming Defendants' understanding.   Hence, the Parties' agreement was as follows:  There were certain specific documents the Government had "agreed to provide" (such as PRIFAS exports or additional bank account statements).  For other requests, where it was unclear what might be found, the Government intended to search through central files (but *not* e-mails or audit papers) to identify documents responsive to Defendants' requests—and the Government would not withhold responsive documents it found that way based on what the Government itself had characterized as "technical" or "academic" scope objections.

17.     Defendants then moved to compel on the issues where there was a dispute (audit papers and e-mails).  Had Defendants known the Government planned to withhold documents based on scope objections, Defendants would have addressed those issues in the initial motion to compel.

18.     The Motion to Compel Order expressly preserved the agreements to produce the Government had made.  (Motion to Compel Order at 4.)  The order also required the Government to "provide to Defendants more detailed information regarding the searches it is undertaking in response to Defendants' discovery requests."  (*Id.*)  The Government Entities provided a written disclosure, which did not mention any scope limitations.  (Ex. I, Ltr. from Elizabeth L. McKeen to Robert S. Berezin, *et al.* (Apr. 6, 2021).)

## II.    DEFENDANTS' SUBPOENAS ON THIRD PARTIES

19.     The Rule 56(d) Order authorized Defendants to seek discovery from "relevant third parties."  (Rule 56(d) Order at 6.)  Defendants concluded it was important to serve third parties directly because of past experiences with gaps in the Government's production.  For example, during lift-stay discovery, the Government was ordered to produce account-opening documents

for certain key accounts and to obtain such documents from banks if necessary. (*See* ECF 12080.) The Government produced a collection of materials lacking critical information—and insisted, even after Defendants followed up, that it had produced everything it had. (*See* Ex. J, Ltr. from Elizabeth L. McKeen to Gaspard Rappoport, *et al.* (Mar. 31, 2020); Ex. K, Ltr. from Elizabeth L. McKeen to Gaspard Rappoport, *et al.* (Apr. 7, 2020).) During this Rule 56(d) discovery process, Defendants served a subpoena on banks—and quickly received a number of documents that should have been included in the Government's lift-stay production but were not.

20.     Defendants gave notice to the Government, for each subpoena, before attempting service on the third party. The Government did not object when the subpoenas were noticed.

21.     As noted in the Parties' April 16, 2021 joint status report, Defendants learned in the days immediately before the report was filed that the Government's counsel had instructed two law firms to withhold documents on scope grounds. (*See* ECF 16460 at 8-11; Ex. L, Ltr. from Kenneth C. Smurzynski to William J. Natbony (Apr. 14, 2021); Ex. M, E-mail from Robert N.H. Christmas, Nixon Peabody (Apr. 15, 2021, 12:41 PM EST).) More recently, on April 20, 2021, Squire Patton Boggs indicated it was withholding documents because "the Government's position [is] that any documents in these categories are outside the scope of the limited Rule 56(d) discovery ordered by the Court." (Ex. N, E-mail from Charles Talisman, Squire Patton Boggs (Apr. 22, 2021, 9:18 AM EST).)

22.     The Government sent a letter on April 20, 2021, with some information about its communications with third parties—but lacking what Defendants considered important details. (Ex. O, Ltr. from E. McKeen & Michael A. Firestein to John Hughes, III, *et al.* (Apr. 20, 2021) at 2-4.) The Parties held one meet-and-confer later that day, where the Government revealed for the first time that it was withholding documents based on scope objections. Defendants asked the

Government to identify the scope objections it was relying on.  The Government agreed that was a "fair" request and said it would get back to Defendants.  Defendants agreed to send a letter with follow-up questions regarding the Government's communications.

23.     The Government provided additional information the next day—but still did not directly answer most of Defendants' questions.  (Ex. P, Ltr. from Elizabeth L. McKeen & Michael A. Firestein to John Hughes, III, *et al.* (Apr. 21, 2021).)  The Government would not disclose (i) whether its communications with rum producers or accounting firms involved discussion of potential objections, (ii) which counsel to the rum producers were on the call, and (iii) whether the Government or rum producers (and accounting firms) had initiated the communications.  The Government volunteered that it did not "direct" rum producers to assert specific objections—but of course it could not have done so, because it does not control the rum producers.  The issue Defendants were trying to understand was whether the Government initiated or continued communications with the rum producers for the purpose of influencing them to object to the subpoenas rather than cooperate—which would be improper.  (*See* ECF 16460 at 7-8.)

24.     After receiving the Government's letter, Defendants suggested that the Parties hold another meet-and-confer.  The Government made clear over e-mail that it was unwilling to do so, asserting the Parties were at an impasse.  (Ex. Q, E-mail from A. Pavel, O'Melveny & Myers (Apr. 22, 2021 5:29 PM EST) at 3-4.)  Despite its earlier agreement, the Government would not provide any further information on its bases for withholding documents or instructing others to do so.  (*Id.*)

# ARGUMENT

## I.   THE COURT SHOULD ORDER THE GOVERNMENT TO PRODUCE ANY NON-PRIVILEGED, WITHHELD DOCUMENTS.

### A.   The Government Agreed Not to Withhold Responsive Documents Collected Based on Scope Objections.

25.     As set forth above, the Government agreed not to withhold documents on the basis of scope objections, and the Court should enforce that agreement.  The Government now denies having made any such agreement, but that assertion is belied by the Parties' meet-and-confers and correspondence, including Defendants' March 9 letter, which very explicitly articulated the Government's agreement.  (*See* Ex. G.)

26.     Even assuming that there was some sort of good faith misunderstanding, that would not help the Government.  The Government knew from the March 9 letter (or at a minimum, had reason to know) that Defendants believed the Government was not planning to withhold responsive documents.  In such circumstances, the Government was bound to either correct Defendants' misunderstanding—or comply with it.  *Cf.* Restatement (Second) of Contracts § 20 (1981).  A litigant cannot remain silent, knowing that its adversary had a different understanding.  The Government had a duty to make its intentions clear.

27.     Indeed, Rule 34(b)(2)(C) puts the burden squarely on the responding party to "state whether any responsive materials are being withheld on the basis of [an] objection."  Rule 34 was amended in 2015 to make clear that it is not enough to interpose a laundry list of boilerplate objections or to merely state that a party will make a "reasonable search."  *Bucceri v. Cumberland Farms, Inc.*, 2020 WL 58428, at *4 (D. Mass. Jan. 6, 2020).  Instead, responses to document requests must "*clearly* state whether any documents are being withheld on the basis of those objections."  *Caccamise v. Credit One Bank, N.A.*, 2019 WL 1903219, at *3 (S.D. Cal. Apr. 26, 2019) (emphasis added); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017);

*Song v. Drenberg*, 2019 WL 5095744, at *2 (N.D. Cal. Oct. 11, 2019).  Where, as here, a party "fails to identify whether responsive materials are being withheld . . . leav[ing] [its adversary] guessing as to whether any responsive documents were withheld . . . the objection is improper and overruled."  *Bank v. Graham*, 2020 WL 2425732, at *1 (M.D. Fla. May 12, 2020).

28.     This principle has particular force here, because the Court has specifically raised concerns about insufficient communication in the meet-and-confer process.  In a colloquy with the Government at the last hearing, the Court observed that "part of the problem" was the Government's lack of transparency about discovery, and noted that there has "been a fundamental disconnect, I think, since we started discovery in this many, many years ago; and I think we need to spend a little time on how to make that a better communication."  (Ex. R, *Hearing on Motions* (Mar. 17, 2021) at 39:22, 40:5-12.)  This colloquy resulted in an order that the Government "provide to Defendants more detailed information regarding the searches it is undertaking." (Motion to Compel Order at 4.)  Even setting aside the requirements of Rule 34, given the specific Court order here, the Government certainly should have disclosed what it was withholding when it provided the disclosures the Court ordered it to make.  But there is no mention of any scope limitations in the Government's disclosure letter.  (*See* Ex. I.)

29.     Even if the Government had properly communicated its intention at the outset— and it did not—the Government's scope objections should be deemed waived for the additional reason that the Government declined to meaningfully meet-and-confer with Defendants once it became clear last week that the Parties had scope disputes.  The Government unilaterally declared that the Parties were at an "impasse" and did not directly respond to multiple requests from Defendants that the Parties schedule another meet-and-confer.  (*See* Ex. Q at 3-4.)  Defendants are prejudiced in even drafting this motion to compel because, while the Government presumably will

articulate a clearer and more nuanced position regarding what its scope objections are, Defendants do not know what they are because the Government refused to even explain its position.

30.     That the Government has refused to engage in meaningful meet-and-confers underscores that it has not heeded the Court's nudge at the last hearing to be more transparent. While Defendants recognize that communication is a two-way street, the record here could not be clearer that Defendants sought to understand the Government's position both in the early meet-and-confer process (as reflected in the March 9 letter) and again last week.  The Government also could have made its views clear through written disclosure.  Instead, in each case, the Government stymied progress by refusing to have an open and transparent discussion.  The Court should not entertain objections the Government could have clearly disclosed at multiple points but did not. At this stage, the Government should be ordered to produce the responsive documents.

**B.     The Documents Are Within the Scope of the Rule 56(d) Order**

31.     Even if the Government has not waived its objections, the only scope objection it has articulated—its interpretation of the word "governing"—is meritless for several reasons:

32.     *First*, the Government's crabbed interpretation of the word "governing" is nonsensical.  The Government itself objected to framing the required production in terms of what the "governing" documents are, because the Government said that would require an impermissible legal determination as to what documents are legally operative.  But the Government now asks the Court essentially to rule that its subjective (and disputed) view of which documents are legally operative should control what discovery is produced to Defendants.

33.     This is not what "governing" means, and it plainly is not what Judge Swain had in mind.  In legal contexts, "governing" means "to hold sway over; to rule, control, determine" or "[t]o serve as a precedent or a determining principle, rule, or standard for; *spec.* to have the power to decide (a case)."  OXFORD ENGLISH DICTIONARY 3d ed. (2015).  In other words, it is not strictly

limited to *legally operative contracts*, but includes any documents that could "hold sway over" or "control" the bonds or the flow of funds. Even documents such as the prospectus sent to investors is not a legally operative contract (a prospectus is merely a summary disclosure provided under the securities laws), but such documents "hold sway over" the bonds. While Judge Swain plainly intended for the Rule 56(d) Order to be "targeted," the use of the word "governing" does not require—as the Government seems to think—that every document other than legally operative documents be excised from the Government's production.

34.     *Second*, the Rule 56(d) Order did not state that *only* "documents governing" the bonds or the flow of funds could be produced. Instead, the Order said that "Defendants may propound discovery requests *directed to* [the topics described therein]." (Rule 56(d) Order at 7, 9, 11.) The purpose of the Rule 56(d) Order was to define the narrow topics that should be the focus on discovery—not, as the Government thinks, to affirmatively block Defendants from seeing a single document that did not fit into those narrow categories.

35.     Documents that are not themselves "governing" can be relevant and probative to *identifying* governing documents. For example, nonprivileged memoranda or due diligence documents could shed light on whether there are additional "contracts, side agreements, security interest agreements, account control agreements, deeds of trust on accounts, or supplements" that the Parties have not otherwise learned of. (Rule 56(d) Order at 7-8, 9, 11.) One of the reasons the Court ordered this discovery was that there are real concerns the Parties do not have a full set of transaction documents—an issue that the withheld materials could shed light on.

36.     *Third*, the documents Defendants are seeking are relevant to *other* authorized topics, besides the topics relating to "governing" documents. The Rule 56(d) Order authorized discovery into the "flow" of the relevant revenues—which turns on factual information that could

be elucidated by nonprivileged summaries provided to law firms in connection with these transactions. (*Id.* at 7, 9, 11.) In PRIFA, documents held by law firms might contain information about the "nature and location of the Infrastructure Fund." (*Id.* at 7.) In HTA, documents held by law firms might contain information about the HTA Executive Director's authority to execute the 2002 Security Agreement and thus whether HTA was "bound." (*Id.* at 11.)

37.     For these reasons, the Government's scope objections are meritless. There also is no burden in producing these documents. Defendants are seeking only documents that were actually collected but then affirmatively withheld. In the case of one law firm, this affects only 11 documents; presumably the other firms have a similarly narrow set of materials.

38.     While it is unclear what documents the Government itself has withheld or why, it certainly cannot be heard to complain about any small incremental burden it might incur, since it agreed to produce these documents at the outset. The Government no doubt has electronic copies of the documents it collected. The Government can simply review its document coding, pull up the documents it has already withheld on grounds other than privilege, and produce them.

## II.     THE GOVERNMENT SHOULD DISCLOSE INFORMATION CONCERNING ITS COMMUNICATIONS WITH THIRD PARTIES.

39.     As discussed above, the Government has declined to directly answer Defendants' questions concerning its communications with third parties. The Court should order the Government to disclose (i) whether its communications with any rum producers or accounting firms that received subpoenas included discussions regarding potential objections; (ii) who initiated these communications; and (iii) which counsel for the third parties were present.

40.     As Defendants noted in the April 16 joint status report, a number of courts have concluded that it is improper for the litigants to a case to instruct, or even "advise," third parties to interpose objections to subpoenas (other than assertions of privilege). (ECF 16460 at 10-11.) At

least one case has specifically imposed sanctions on a third party for advising its auditor to object

to a subpoena on the grounds that it exceeded the scope of discovery authorized by the court.

*Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 3359998, at *1 (W.D.N.Y. Aug. 3, 2011).

41.     Defendants' requested disclosures are relevant to whether the Government

contacted third parties for the purpose of influencing their responses to subpoenas.  While the

Government has said it did not *direct* rum producers on what objections to make, that does not

address the concern of whether there was an attempt to influence them to assert objections.  *Price*

*v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 793-94 (E.D. Pa. 2012).  Moreover, the issue here is

not merely that the discussions occurred, but that they were done without any notice to Defendants

(before or afterwards) and without any contemporaneous motion to either quash or obtain a

protective order.

42.     These disclosures are important for two key reasons:  *First*, to the extent that the

Government interfered with or influenced the information Defendants could obtain, that would be

a "reason[]" that Defendants "cannot present facts" relevant to the summary judgment issues.  *See*

Fed. R. Civ. P. 56(d).  *Second*, to the extent that the Government engaged in any conduct that has

been held improper under prior case law, the Court may consider appropriate remedies when new

Rule 56 motions are filed—which might include drawing an adverse inference.

43.     The Court need not make any determination now as to whether the Government's

communications with third parties were appropriate.  Indeed, it is impossible to do so without the

benefit of the information Defendants are requesting.  The purpose of Defendants' request is

merely to ensure that the Court and Defendants have a clear understanding of what occurred.

44.     That said, it is worth pointing out that the Government has not offered a persuasive

defense of its conduct.  At the April 20 meet-and-confer, the Government asserted it had "legal

control" over all documents held by law firms. Even if true, that would not address the Government's attempts to influence rum producers (or even accounting firms, who have a much different set of responsibilities vis-à-vis audit clients).

45.     Even with respect to law firms, that the Government has "legal control" over the documents held by law firms simply means these are documents that the Commonwealth could be *obliged* to produce if Defendants served a request on the Government. Fed. R. Civ. Pro. 34(a)(1). Having "control" does not give the Government a *veto* over production—certainly not one that can be exercised unilaterally, without notice to an adversary. Moreover, the Government's theory— that clients have the right to control *nonprivileged* documents held by their law firms to the same extent as they could control their own documents—is contrary to settled law. Clients control privilege, of course, and can demand copies of documents for successor counsel. But nonprivileged documents have no special protection simply because they are held by a law firm. *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170–71 (2d Cir. 2003) (a law firm's client files "are as susceptible to subpoena as those stored in a warehouse"). Indeed, even when documents cannot be obtained directly from the client (*e.g.*, because the client is not subject to the personal jurisdiction of the court), those documents can be obtained by serving a subpoena on a law firm that holds the documents. *See id.* The Government can protect its interest in nonprivileged documents held by its law firms by moving for a protective order or meeting-and-conferring with its opponents in litigation regarding disputes. Simply directing law firms not to comply with the subpoena, without discussing the issue with Defendants, is not the appropriate procedure.

## **CONCLUSION**

46.     For these reasons, Defendants respectfully request that this Court (i) enter the Proposed Order attached as Exhibit A hereto granting relief the requested herein, and (ii) grant Defendants such other relief as the Court deems just and proper.

- 15 -

Dated:  April 29, 2021
        San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile:  (787) 766-7001
    Email:  rcamara@ferraiuoli.com
        scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Atara Miller*
    Dennis F. Dunne (admitted *pro hac vice*)
    Atara Miller (admitted *pro hac vice*)
    Grant R. Mainland (admitted *pro hac vice*)
    John J. Hughes, III (admitted *pro hac vice*)
    Jonathan Ohring (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile:  (212) 530-5219
    Email: ddunne@milbank.com
        amiller@milbank.com
        gmainland@milbank.com
        jhughes2@milbank.com
        johring@milbank.com

*Attorneys for Ambac Assurance Corporation*

**REXACH & PICÓ, CSP**

By: /s/ *María E. Picó*
    María E. Picó
    (USDC-PR No. 123214)
    802 Ave. Fernández Juncos
    San Juan, PR 00907-4315
    Telephone: (787) 723-8520
    Facsimile: (787) 724-7844
    Email: mpico@rexachpico.com

**BUTLER SNOW LLP**

By: /s/ *Martin A. Sosland*
    Martin A. Sosland (admitted *pro hac vice*)
    2911 Turtle Creek Blvd., Suite 1400
    Dallas, TX 75219
    Telephone: (469) 680-5502
    Facsimile: (469) 680-5501
    Email: martin.sosland@butlersnow.com

    James E. Bailey III (admitted *pro hac vice*)
    Adam M. Langley (admitted *pro hac vice*)
    6075 Poplar Ave., Suite 500
    Memphis, TN 38119
    Telephone: (901) 680-7200
    Facsimile: (901) 680-7201
    Email: jeb.bailey@butlersnow.com
        adam.langley@butlersnow.cow

*Attorneys for Financial Guaranty Insurance Company*

**ADSUAR MUNIZ GOYCO SEDA & PEREZ-OCHOA PSC**

By: /s/ *Eric Pérez-Ochoa*
    Eric Pérez-Ochoa
    (USDC-PR No. 206314)
    Email: epo@amgprlaw.com

By: /s/ *Luis A. Oliver-Fraticelli*
    Luis A. Oliver-Fraticelli
    (USDC-PR No. 209204)
    Email: loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone: (787) 756-9000
    Facsimile: (787) 756-9010

**CASELLAS ALCOVER & BURGOS P.S.C.**

By: /s/ *Heriberto Burgos Pérez*
    Heriberto Burgos Pérez
    (USDC-PR No. 204809)
    Ricardo F. Casellas-Sánchez
    (USDC-PR No. 203114)
    Diana Pérez-Seda
    (USDC-PR No. 232014)
    P.O. Box 364924
    San Juan, PR 00936-4924
    Telephone: (787) 756-1400
    Facsimile: (787) 756-1401
    Email: hburgos@cabprlaw.com
        rcasellas@cabprlaw.com
        dperez@cabprlaw.com

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ *Robert S. Berezin*
    Jonathan D. Polkes (admitted *pro hac vice*)
    Gregory Silbert (admitted *pro hac vice*)
    Robert S. Berezin (admitted *pro hac vice*)
    Kelly DiBlasi (admitted *pro hac vice*)
    Gabriel A. Morgan (admitted *pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007
    Email: jonathan.polkes@weil.com
        gregory.silbert@weil.com
        robert.berezin@weil.com
        kelly.diblasi@weil.com
        gabriel.morgan@weil.com

***Attorneys for National Public Finance Guarantee Corp.***

**CADWALADER, WICKERSHAM & TAFT LLP**

By: /s/ *Howard R. Hawkins, Jr.*
    Howard R. Hawkins, Jr. (admitted *pro hac vice*)
    Mark C. Ellenberg (admitted *pro hac vice*)
    William J. Natbony (admitted *pro hac vice*)
    Thomas J. Curtin (admitted *pro hac vice*)
    Casey J. Servais (admitted *pro hac vice*)
    200 Liberty Street
    New York, NY 10281
    Telephone: (212) 504-6000
    Facsimile: (212) 504-6666
    Email: howard.hawkins@cwt.com
        mark.ellenberg@cwt.com
        bill.natbony@cwt.com
        thomas.curtin@cwt.com
        casey.servais@cwt.com

***Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.***

**RIVERA, TULLA AND FERRER, LLC**

By: _/s/ Eric A. Tulla_____
     Eric A. Tulla
     (USDC-DPR No. 118313)
     Email: etulla@ riveratulla.com
     Iris J. Cabrera-Gómez
     (USDC-DPR No. 221101)
     Email: icabrera@ riveratulla.com
     Rivera Tulla & Ferrer Building
     50 Quisqueya Street
     San Juan, PR 00917-1212
     Telephone: (787) 753-0438
     Facsimile: (787) 767-5784

**SEPULVADO, MALDONADO & COURET**

By: _/s/ Albéniz Couret Fuentes_____
     Albéniz Couret Fuentes
     (USDC-PR No. 222207)
     304 Ponce de León Ave. Suite 990
     San Juan, PR 00918
     Telephone: (787) 765-5656
     Facsimile: (787) 294-0073
     Email: acouret@smclawpr.com

**HOGAN LOVELLS US LLP**

By: _/s/ Ronald J. Silverman_____
     Ronald J. Silverman, Esq.
     Michael C. Hefter, Esq.
     390 Madison Avenue
     New York, NY 10017
     Telephone: (212) 918-3000
     Facsimile: (212) 918-3100
     ronald.silverman@hoganlovells.com
     michael.hefter@hoganlovells.com

***Attorneys for U.S. Bank Trust National
Association, in its Capacity as Trustee
to PRIFA Bondholders***

**REED SMITH LLP**

By: _/s/ Jared S. Roach_____
     Luke A. Sizemore (admitted *pro hac vice*)
     Jared S. Roach (admitted *pro hac vice*)
     225 Fifth Avenue, Suite 1200
     Pittsburgh, PA 15222
     Telephone: (412) 288-3131
     Facsimile: (412) 288-3063
     Email: lsizemore@reedsmith.com
        jroach@reedsmith.com

***Attorneys for The Bank of New York Mellon, in
its Capacity as Trustee to CCDA Bondholders***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date a true and exact copy of this notice was filed with

the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record.

<u>/s/ *Roberto Cámara-Fuertes*</u>
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email: rcamara@ferraiuoli.com
